UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re<br><br>Lehman Brothers Holdings Inc.,<br><br>Debtor. | Chapter 11 Case No.<br><br>08-13555 (JMP) |

## STATEMENT OF JPMORGAN CHASE BANK, N.A. IN SUPPORT OF MOTION OF LEHMAN BROTHERS HOLDINGS INC. FOR ORDER, PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE, CONFIRMING STATUS OF CLEARING ADVANCES

JPMorgan Chase Bank, N.A. (the "Bank"), by and through its undersigned attorneys, respectfully submits this Statement in Support of Debtor's Motion for Order Confirming Status of Clearing Advances (the "Motion") and represents as follows:

1.  The Bank (as successor to The Chase Manhattan Bank) is party to (a) that certain Clearance Agreement executed by the Bank as of June 15, 2000 (as amended, the "June 2000 Clearance Agreement"), with Lehman Brothers Holdings Inc. (the "Debtor"), Lehman Brothers Inc. ("LBI"), a registered broker-dealer with the Securities and Exchange Commission, Lehman Commercial Paper Inc., Lehman Brothers Holdings Inc., Lehman Brothers International (Europe), Lehman Brothers OTC Derivatives Inc. and Lehman Brothers Japan Inc. (each party to the June 2000 Clearance Agreement other than the Bank, the "June 2000 Lehman Parties"), (b) that certain Clearance Agreement dated as of September 10, 2008, with Lehman Brothers Bank, FSB, (c) that certain Clearance Agreement dated as of September 10, 2008, with Lehman Brothers Bankhaus Aktiengesellschaft, (d) that certain Clearance Agreement dated as of September 10, 2008, with Lehman Brothers Commercial Bank, and (e) that certain Global Custody and Clearance Agreement dated as of March 14, 2001, with LBI (the "Custody and

Clearance Agreement" and together with the other clearance agreements referred to in this paragraph, the "Clearance Agreements", and each party to the Clearance Agreements other than the Bank, the "Lehman Parties"), pursuant to which the Bank clears securities transactions for the Debtor and the other Lehman Parties, each of which other Lehman Parties is a subsidiary of the Debtor.

2. Pursuant to section 5 of each Clearance Agreement other than the Custody and Clearance Agreement and pursuant to Section 4 of the Custody and Clearance Agreement, the Bank may, in its sole discretion, make advances to or for the benefit of the applicable Lehman Party, which advances are payable by such Lehman Party upon demand by the Bank. Each June 2000 Lehman Party's obligations under the June 2000 Clearance Agreement are guaranteed by the Debtor pursuant to that certain Guaranty, dated as of August 26, 2008, by the Debtor in favor of the Bank and its successors and assigns (as amended, the "August Guaranty") and each Lehman Party's obligations under the applicable Clearance Agreement are guaranteed by the Debtor pursuant to that certain Guaranty, dated as of September 9, 2008, made by the Debtor in favor of the Bank and its affiliates, subsidiaries, successors and assigns (as amended, the "September Guaranty", and together with the August Guaranty, the "Guarantee Agreements"); the Debtor's obligations under the Guarantee Agreements are secured by collateral (including all proceeds thereof, whether arising prior to or after the filing of the Debtor's bankruptcy petition, the "Holding Company Collateral") pledged to the Bank pursuant to (x) in the case of the obligations pursuant to the August Guaranty, that certain Security Agreement dated as of August 26, 2008, by the Debtor in favor of the Bank and any of its successors and assigns party to the June 2000 Clearance Agreement (as amended, the "August Security Agreement") and (y) in the case of the obligations pursuant to the September Guaranty,

that certain Security Agreement dated as of September 9, 2008, by the Debtor in favor of the Bank and any of its affiliates, subsidiaries, successors and assigns (as amended, the "September Security Agreement", and together with the August Security Agreement, the "Security Agreements"). The Clearance Agreements, the Guarantee Agreements and the Security Agreements all constitute "securities contracts" as defined in Section 741(7)(v) and (xi) of the United States Bankruptcy Code (the "Code"). Copies of the Clearance Agreements, Guarantee Agreements and Security Agreements are annexed hereto as Exhibits A, B and C respectively.

3. To the Bank's knowledge, LBI is not the subject of a proceeding under the Securities Investor Protection Act, nor is it a debtor in a case under the Code. At the opening of the United States securities markets on September 15, 2008 (after the filing of the Debtor's bankruptcy petition), at the request of the Debtor and the Federal Reserve Bank of New York, and in order to avoid a disruption of the financial markets, in the exercise of its sole discretion under the Clearance Agreement, the Bank advanced (the "Petition Date Advance") approximately $87 billion to or for the benefit of LBI in order to clear, and facilitate the settlement of, certain securities transactions with customers or clients of LBI. This advance was repaid on the night of September 15th. On the following day, once again at the request of the Debtor and the Federal Reserve Bank of New York and in order to avoid a disruption of the financial markets, in the exercise of its sole discretion under the Clearance Agreement, the Bank advanced $51 billion (the "Second Day Advance"). In its sole discretion, the Bank may elect to make additional advances under the Clearance Agreements. All such advances now or hereafter made, including without limitation the Second Day Advance, and any other advances incidental to, and other amounts owing to the Bank in respect of the clearing process, are hereinafter referred to as the "Post-Petition Advances."

4.  Pursuant to the Guarantee Agreements and the Security Agreements, all Post-Petition Advances are guaranteed by the Debtor, and such guarantee is secured by the Bank's lien on the Holding Company Collateral. The Debtor's motion does not seek a validation of the Bank's guarantee from the Debtor or of the liens that secure that guarantee, nor does it seek a determination that the Bank is entitled to administrative expense status. Rather, it merely requests that the Court confirm that Clearing Claims (as defined in the Motion) arising from Post-Petition Advances or other transactions after the filing of the Debtor's bankruptcy petition will be allowed as claims under the Guarantee Agreements, and will be secured by the Holding Company Collateral, to the same extent as if they had been made prior to the filing of the Debtor's bankruptcy petition. Absent such relief, the Bank will be unable to continue to make Post-Petition Advances as it has been doing at the Debtor's request. The Bank submits that such relief is appropriate under section 105 of the Code, and respectfully requests that the Court approve the Motion and enter the order in the form attached thereto.

WACHTELL, LIPTON, ROSEN & KATZ

By: /s/ Harold S. Novikoff
Harold S. Novikoff
Amy R. Wolf
Richard G. Mason
Joshua A. Feltman

51 West 52nd Street
New York, New York 10019
(212) 403-1000

Attorneys for JPMorgan Chase Bank, N.A.