WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller, Esq.
Richard P. Krasnow, Esq.
Lori R. Fife, Esq.
Shai Y. Waisman, Esq.
Jacqueline Marcus, Esq.

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                          :

**In re**                         :    **Chapter 11 Case No.**
                         :

**LEHMAN BROTHERS HOLDINGS INC.**  :    **08-13555 (JMP)**
                         :

           **Debtor.**              :
                         :
                         :
-------------------------------------------------------------------x

**APPLICATION PURSUANT TO 28 U.S.C.**
**§ 156(c) AND LOCAL RULE 5075-1(a) FOR AUTHORIZATION TO**
**(i) EMPLOY AND RETAIN EPIQ BANKRUPTCY SOLUTIONS, LLC**
**CLAIMS AND NOTICING AGENT FOR THE DEBTOR, AND (ii) APPOINT EPIQ**
**BANKRUPTCY SOLUTIONS, LLC AS AGENT FOR THE BANKRUPTCY COURT**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc., as debtor and debtor in possession (the "Debtor"

and, together with its non-debtor affiliates, "Lehman"), respectfully represents:

**Background**

        1.      On September 15, 2008 (the "Commencement Date"), the Debtor

commenced with this Court a voluntary case under chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code"). The Debtor is authorized to operate its business and manage its

properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## Lehman's Business

2.      Lehman is the fourth largest investment bank in the United States, and for most of its 158 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.  Through its team of more than 25,000 employees, Lehman offers a full array of financial services in equity and fixed income sales, trading and research, investment banking, asset management, private investment management and private equity.  Its worldwide headquarters in New York and regional headquarters in London and Tokyo are complemented by a network of offices in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

3.      Additional information regarding the Debtor's business, capital structure, and the circumstances leading to this chapter 11 filing is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on the Commencement Date (the "First-Day Affidavit").

## Jurisdiction

4.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

5.      By this application (the "Application"), the Debtor seeks authorization to

employ Epiq Bankruptcy Solutions, LLC. ("Epiq") as the Debtor's claims and noticing agent

(the "Agent") in connection with the Debtor's chapter 11 case pursuant to the terms and

conditions of the Standard Bankruptcy Services Agreement, dated September 15, 2008, a copy of

which is annexed hereto as Exhibit A (the "Retention Agreement").

**The Retention of Epiq is Warranted**

6.      Section 156(c) of title 28 of the United States Code, which governs the

staffing and expenses of the Bankruptcy Court, authorizes the Court to use facilities other than

those of the Clerk's Office for the administration of chapter 11 cases.  It provides:

> [a]ny court may utilize facilities or services, either on or off the
> court's premises, which pertain to the provision of notices,
> dockets, calendars, and other administrative information to parties
> in cases filed under the provisions of title 11, United States Code,
> where the costs of such facilities or services are paid for out of the
> assets of the estate and are not charged to the United States.

28 U.S.C. § 156(c).

7.      Further, Local Rule 5075-1(a) of the Local Rules of the Bankruptcy

Procedure for the United States Bankruptcy Court for the Southern District of New York (the

"Local Rules") provides:

> The Court may direct . . . the use of agents either on or off the
> Court's premises to file Court records, either by paper or electronic
> means, to issue notices, to maintain case dockets, to maintain
> Judge's calendars, and to maintain and disseminate other
> administrative information where the costs of such facilities or
> services are paid for by the estate.

Local Rule 5075-1(a).

8.      The Debtor estimates that they have hundreds of thousands (if not more) of creditors. Noticing, receiving, docketing and maintaining proofs of claims from such a large number of creditors may be unduly time consuming and burdensome for the Clerk of the Court.

9.      The Debtor believes that the retention of Epiq as the Court's outside agent is in the best interests of its estate and parties in interest. As set forth more fully in the Affidavit of Daniel C. McElhinney, attached hereto as <u>Exhibit B</u> (the "<u>McElhinney Affidavit</u>"), Epiq is a nationally recognized specialist in chapter 11 administration and has vast experience in noticing and claims administration in chapter 11 cases in this and other districts, including, among others: *In re Steve & Barry's Manhattan LLC, et al.*, No. 08-12579 (ALG) (Bankr. S.D.N.Y. July 10, 2008) [Doc. No. 51]; *In re Lexington Precision Corp., et al.*, No. 08-11153 (MG) (Bankr. S.D.N.Y. April 2, 2008) [Doc. No. 24]; *In re PRC, et al.*, No. 08-10239 (MG) (Bankr. S.D.N.Y. Jan. 25, 2008) [Doc. No. 35]; *In re Global Crossing Ltd., et al.*, No 02-40188 (Bankr. S.D.N.Y. Jan. 29, 2002) [Doc. No. 31]; *In re Worldcom, Inc., et al.*, No. 02-13533 (Bankr. S.D.N.Y. July 25, 2002) [Doc. No. 102]; and *In re Enron Corp., et al.*, No. 01-16034 (Bankr. S.D.N.Y. Jan 30, 2002) [Doc. No. 1191].

## Scope of Services

10.     Subject to the Court's approval, Epiq has agreed to provide the following services among others at the Debtor's request in the Debtor's chapter 11 case:

(a)      notifying all potential creditors of the filing of the chapter 11 petitions and of the setting of the first meetings of creditors pursuant to section 341(a) of the Bankruptcy Code;

(b)      assisting with and maintaining an official copy of the Debtor's schedules of assets and liabilities and statements of financial affairs (collectively, the "<u>Schedules</u>"), listing the Debtor's known creditors and the amounts owed thereto;

(c)      designing, maintaining, and operating in conjunction with the Debtor a website, as a centralized location where the Debtor will

provide information about the Debtor's case, including, at the Debtor's discretion, certain orders, decisions, claims, or other documents filed in this chapter 11 case;

(d)    maintaining a copy service from which parties may obtain copies of relevant documents in this chapter 11 case;

(e)    notifying all potential creditors of the existence and amount of their respective claims as set forth in the Schedules;

(f)    furnishing a form for the filing of proofs of claim, after approval of such notice and form by this Court;

(g)    filing with the Clerk, within ten (10) days of service, a copy of the proof of claim notice, a list of persons to whom it was mailed (in alphabetical order), and the date the notice was mailed;

(h)    docketing all claims received, maintaining the official claims register (the "Claims Register") for the Debtor on behalf of the Clerk, and providing the Clerk with immediate web access to the Claims Register upon request;

(i)    specifying in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, and (iv) the classification of the claim (e.g., secured, unsecured, priority, etc.);

(j)    relocating, by messenger, all of the actual proofs of claim filed with the Court, if necessary to Epiq, not less than weekly;

(k)    recording all transfers of claims and providing any notices of such transfers required by Bankruptcy Rule 3001;

(l)    making changes in the Claims Register pursuant to Court Order;

(m)    upon completion of the docketing process for all claims received to date by the Clerk's office, turning over to the Clerk copies of the Claims Register for the Clerk's review;

(n)    maintaining the official mailing list for the Debtor of all entities that have filed a proof of claim, which list shall be available upon request by a party in interest or the Clerk;

(o)    thirty (30) days prior to the close of this case, submitting and Order dismissing the Agent and terminating the services of the Agent upon completion of its duties and responsibilities and upon the closing of this case; and

    (p)    at the conclusion of this chapter 11 case, boxing and transporting all original documents in proper format, as specified by the Clerk's Office, to the Federal Records.

## Compensation

11.    The Debtor requests authority to compensate and reimburse Epiq in accordance with the payment terms of the Retention Agreement for all services rendered and expenses incurred in connection with the Debtor's chapter 11 case.

12.    The Debtor believes that such compensation rates are reasonable and appropriate for services of this nature and comparable to those other providers charge for similar services. In an effort to reduce the administrative expenses related to Epiq retention, the Debtor seeks authorization to pay Epiq fees and expenses in accordance with the provisions of the Retention Agreement without Epiq filing formal fee applications.

13.    Epiq has acknowledged that it will perform its duties if the Debtor retains Epiq in the Debtor's chapter 11 case regardless of payment and to the extent that Epiq requires redress, Epiq will seek appropriate relief from the Court. Epiq will continue to perform the services as the Retention Agreement contemplates in the event that Debtor's chapter 11 case is converted to a chapter 7 case. In the event that Epiq services are terminated, Epiq shall perform its duties until the occurrence of a complete transition with the Clerk's Office or any successor claims/noticing agent.

## Epiq's Disinterestedness

14.    The Debtor has been advised that, except as set forth more fully in the McElhinney Affidavit, based on the results of the search performed to date (i) Epiq has no connection with the Debtor, its creditors or other parties in interest in this case, and (ii) Epiq does not hold or represent any interest adverse to the Debtor's estate.

15.    To the best of the Debtor's knowledge Epiq is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.  Epiq has represented to the Debtor that Epiq will not represent any entities or individuals other than the Debtor in this chapter 11 case or in connection with any matters that would be adverse to the interest of the Debtor.

16.    As set forth in the McElhinney Affidavit, the Debtor owes no amount to Epiq.

17.    Epiq has advised the Debtor that Epiq will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new facts or circumstances are discovered, Epiq will supplement its disclosure to the Court.

18.    Epiq has also advised the Debtor that, Epiq has agreed not to share with any person or firm, other than its own affiliates, partners, and employees, the compensation to be paid for professional services rendered in connection with this case.

19.    Because the claims-related services are necessary in this case, the Debtor believes that the employment of Epiq for the services set forth above is appropriate and in the best interests of the Debtor's estate.  The Debtor requests, therefore, authority to employ and retain Epiq on the terms and conditions set forth therein.

## Notice

20.    No trustee, examiner, or statutory creditors' committee has been appointed in this chapter 11 case.  The Debtor has served notice of this Motion on (i) the Office of the United States Trustee for the Southern District of New York, (ii) those creditors holding the thirty (30) largest unsecured claims against the Debtor's estate, (iii) the Securities and Exchange Commission, (iv) the Internal Revenue Service, and (v) the United States Attorney for

the Southern District of New York.  The Debtor submits that no other or further notice need be

provided.

21.     No previous request for the relief sought herein has been made by the

Debtor to this or any other Court.

WHEREFORE the Debtor respectfully requests that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  September 16, 2008
        New York, New York

_____
Harvey R. Miller, Esq.
Richard P. Krasnow, Esq.
Lori R. Fife, Esq.
Shai Y. Waisman, Esq.
Jacqueline Marcus, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007


Attorneys for Debtor
and Debtor in Possession

**EXHIBIT A**
**Retention Agreement**

P (646 282 2500  F (646 282 2501
757 THIRD AVENUE, NEW YORK, NY 10017
WWW.EPIQSYSTEMS.COM

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

STANDARD BANKRUPTCY SERVICES AGREEMENT

Between Epiq Bankruptcy Solutions, LLC (formerly known as Bankruptcy Services LLC), a New York limited liability company ("Epiq") and Lehman Brothers Holdings Inc. and related debtors (the "Customer" or "Debtor"), dated as of September 15, 2008.

In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**General Terms and Conditions**

1. <u>Services.</u>

In accordance with the charges, terms and conditions contained in this Agreement and in the schedule attached hereto (the "Agreement"), Epiq agrees to furnish Customer with computerized bankruptcy support services and bankruptcy administrative services according to the pricing schedule annexed hereto (the "Schedule"). This Schedule sets forth individual unit pricing for services provided by Epiq. The price listed for each service represents a bona fide proposal for that service and the Customer may accept separate Service components or may accept the Services listed in their entirety. Services will be provided when requested by the Customer. Services are mutually exclusive and are deemed delivered and accepted when provided by Epiq.

2. <u>Term.</u>

This Agreement shall become effective on the later of (i) the date of its acceptance by Epiq and (ii) the date of entry of an order by the Bankruptcy Court approving this Agreement (or such earlier date set by the Bankruptcy Court). **The Agreement shall remain in effect until terminated by the Customer on one (1) month's prior written notice received by Epiq and entry of an order of the Court discharging Epiq as claims agent or by Epiq upon three (3) month's prior written notice received by the Customer and entry of an order of the Court discharging Epiq as claims agent.**

3. <u>Charges.</u>

3.1 For services and materials furnished by Epiq under this Agreement, Customer shall pay the charges set forth in the schedule annexed hereto attached hereto and made a part of this Agreement. Epiq will bill Customer monthly. All invoices shall be due and payable upon receipt.

3.2 Epiq reserves the right to reasonably increase its prices, charges and rates annually on January 2nd of each year. However, if such increases exceed 10%, Epiq will be required to give sixty (60) days prior written notice to Customer.

3.3 Customer agrees to pay Epiq for all materials necessary for Epiq's performance under this Agreement, other than computer hardware and software, and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, postage and related items.



3.4  In addition to all charges for services and materials hereunder, Customer shall pay to Epiq all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by Epiq or paid by Epiq to taxing authorities.  This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income.

3.5  In addition to all other charges for services and materials hereunder, Customer shall pay to Epiq any actual charges related to, arising out of or as a result of any Customer error or omission, as mutually agreed by Epiq and Customer. Such charges shall include but not be limited to re-runs and any additional clerical work billed at the Epiq then prevailing standard rates, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the schedule annexed hereto.

3.6  Where the Customer requires measures that are unusual and beyond normal business practice of Epiq such as but not limited to CPA audit, errors and omissions insurance, or off premises storage of data, the cost of such measures, if provided by Epiq, shall be charged to the Customer at a competitive rate.

3.7  In the event of termination due to Customer's default, Customer shall be liable for all amounts then owing.

3.8  Customer shall pay Epiq a retainer in the amount of $25,000 to be applied against Epiq's final invoice for the services provided herein.

4.  Confidentiality.

All of Customer's data given to Epiq will be safeguarded by Epiq to the same extent that Epiq safeguards data relating to its own business; provided, however, that if data is publicly available, was already in Epiq's possession or known to it, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for disclosure.  Customer agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any material supplied by Customer to Epiq in the performance of this Agreement.

5.  Title to Property.

Epiq reserves all property rights in and to all materials, concepts, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by the Customer ("Property").  Charges paid by Customer do not vest in Customer any rights to the Property, it being expressly understood that the Property is made available to Customer under this Agreement solely for Customer's use during and in connection with each use of the Epiq equipment and services.  Customer agrees not to copy or permit others to copy any of the Property.

6.  Disposition of Data.

Any data, programs, storage media or other materials furnished by the Customer to Epiq in connection with this Agreement may be retained by Epiq until the services provided herein are paid for, or until this Agreement is terminated with the services provided herein having been paid for in full.  Customer shall remain liable for all charges imposed under this Agreement as a result of data or physical media maintained by Epiq.  Epiq shall dispose of the data and media in the manner requested by Customer.  Customer agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of the data or media.  After giving Customer thirty (30) days advance notice, Epiq reserves the right to dispose of data or media maintained by Epiq for Customer if Customer has not utilized the services provided herein for a period of at least ninety (90) days or if Customer has not paid all charges due to Epiq.

7.  Limitation of Liability, Warranty and Indemnity.

7.1  Except as provided herein, Epiq's liability to Customer or any person claiming through or under Customer for any claim, loss, damage, expense of any kind, or for any lost profits, loss of business or other consequential damages even



if Epiq has been advised of the possibility of such damages, whether direct or indirect and unless due to gross negligence or willful misconduct of Epiq shall be limited to the total amount billed or billable to Customer for the portion of the particular work which gave rise to the loss or damage.  In no event shall Epiq be liable to Customer for any special or consequential damages (including loss of anticipated profits) incurred by Customer in connection with or arising out of the services provided for in this Agreement.

7.2  Customer is responsible for the accuracy of the programs and data it submits for processing to Epiq and for the output.  Customer agrees to initiate and maintain backup files that would allow Customer to regenerate or duplicate all programs and data submitted by Customer to Epiq.

**7.3  Customer agrees that except as set forth in the paragraph 7.1 above, Epiq makes no representations or warranties, express or implied, including but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.**

7.4  The Customer shall indemnify and hold Epiq, its affiliates and each of their respective officers, members, directors, agents, consultants and employees (each an "Indemnified Person") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person.  The Customer shall notify Epiq in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which the Customer is aware with respect to the services provided by Epiq under this Agreement.  Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of the Customer and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

8.  Bank Accounts

At the Customer's request, Epiq shall be authorized to establish accounts with financial institutions in the name of and as agent for the Customer.  To the extent certain financial products are provided to the Customer pursuant to Epiq's agreement with certain financial institutions, Epiq may receive compensation from such financial institutions for the services Epiq provides pursuant to such agreement.

9.  Confidential On-Line Workspace

Epiq shall be authorized to: (a) establish a confidential on-line workspace with IntraLinks in connection with the provision of its services to the Customer pursuant to this Agreement; and (b) with the consent of the Customer and/or its designees, publish documents and other information to such confidential workspace.  By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

10.  General

10.1  No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

10.2  This Agreement may not be assigned by Customer without the express written consent of Epiq, which consent shall not be unreasonably withheld.  The services provided under this Agreement are for the sole benefit and use of Customer, and shall not be made available to any other persons.



10.3  This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.

10.4  The parties agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

10.5  Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by certified mail, postage prepaid, and addressed as follows:

        If to Epiq:

                Epiq Bankruptcy Solutions, LLC
                757 Third Avenue, Third Floor
                New York, New York 10017
                Attn:  Ron Jacobs

        If to Customer:

                Lehman Brothers Holdings Inc.
                745 Seventh Avenue
                Yew York, NY 10019

        With a copy to:

                Shai Waisman, Esq.
                Weil Gotshal & Manges, LLP
                767 Fifth Avenue
                New York, NY 10153

10.6  This Agreement shall be subject to approval of the United States Bankruptcy Court for the Southern District of New York.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

EPIQ BANKRUPTCY SOLUTIONS, LLC

Name:    Daniel C. McElhinney
Title:      Sr. Vice President, Director of Operations

LEHMAN BROTHERS HOLDINGS INC. AND RELATED DEBTORS

By:_____

Name:_____

Title:_____



# Pricing

Case Management Services:

| Title | Rate Range | Average Rate |
|---|---|---|
| Clerk | $34 - $51 per hour | $ 42.50 |
| Case Manager (Level 1) | $80 - $140 per hour | $110.00 |
| IT Programming Consultant | $100 - $161 per hour | $130.50 |
| Case Manager (Level 2) | $125 - $150 per hour | $137.50 |
| Senior Case Manager | $175 - $233 per hour | $204.00 |
| Senior Consultant | TBD | TBD* |

The level of Senior Consultant activity will vary by engagement. If such services are required, the capped rate will be $250 per hour. Please note that any additional professional services not specifically covered by this proposal will be charged at hourly rates, including any outsourced data input services performed under our supervision and control. Outside vendors may charge a premium for weekend and overtime work.

Claims Management Services:

| | |
|---|---|
| Database and System Access (No restriction on number of users) | $ .07 per record per month |
| Data Transfer | $ .06 per creditor |
| Manual Claims Input | $ .25 per claim |
| Document Storage | Waived |



# Pricing

Printing, Mailing and Noticing:

| | |
|---|---|
| Set up | Waived |
| Printing | $ .10 per image and/or page (including the envelope face) |
| Collate, fold and/or insert | $.07 per piece |
| Postage and overnight delivery | At cost |
| Electronic noticing | $ .02 per page |
| Legal notice publishing | Quote prior to publishing |
| Claim acknowledgement card | Waived |
| Fax | Waived |

Document Management/Imaging:

| | |
|---|---|
| Electronic imaging (scanning/bar coding) | $ .12 per image |
| Additional OCR capture | $ .10 per image |
| CD burning (mass document storage) | Varies upon requirements |
| Stand Alone Case Website Construction | $100.00 per hour (capped at $500) |
| Hosting Case Specific Site | $200.00 per month |
| Case Data Web Traffic | Waived |

Confidential Document Management:

| | |
|---|---|
| Standard Confidential on-line workspace | $1.30 per page per 9 months |

Voting Tabulation and Reports:

| | |
|---|---|
| Set-up, tabulation and vote verification | Applicable consulting fees only |
| Printing and mailing of ballots | Subject to unit pricing for mailing and noticing above |
| Solicitation and Notification of Public Securities Holders | Varies upon requirements |



# Pricing

Please note that Epiq will coordinate outside services for notice publication, printing and scanning upon request.  Reimbursable expenses including travel, envelopes and courier services are billed at cost.  Postage is payable in advance of any mailings.

Disbursements:

Transaction fees:

Per check or Form 1099          $1.50 each
Per record to transfer agent    $ .25 each

## EXHIBIT B

**Affidavit of Daniel C. McElhinney**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller, Esq.
Richard P. Krasnow, Esq.
Lori R. Fife, Esq.
Shai Y. Waisman, Esq.
Jacqueline Marcus, Esq.

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                    :
**In re**                                                           :    **Chapter 11 Case No.**
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**                                   :    **08-13555 (JMP)**
                                                                    :
         **Debtor.**                                                :
                                                                    :
                                                                    :
                                                                    :
-------------------------------------------------------------------x

### AFFIDAVIT OF DANIEL C. MCELHINNEY IN SUPPORT
### OF THE APPLICATION TO EMPLOY AND RETAIN EPIQ BANKRUPTCY
### SOLUTIONS, LLC AS CLAIMS AND NOTICING AGENT FOR THE DEBTOR

STATE OF NEW YORK        )
                         )          ss:
COUNTY OF NEW YORK   )

         Daniel C. McElhinney, being duly sworn, deposes and says:

         1.          I am Senior Vice President and Director of Operations of Epiq Bankruptcy

Solutions, LLC ("Epiq"), which provides chapter 11 claims management, noticing, case

administration and related services.  I submit this affidavit in support of the application (the

"Application") of Lehman Brothers Holdings Inc., as debtor and debtor in possession (the

"Debtor" and, together with their non-debtor affiliates "Lehman"), to employ and retain Epiq as claims and noticing agent in this chapter 11 case (the "Agent").

2.      The Application and that certain Standard Bankruptcy Services Agreement, dated as of September 15, 2008, attached to the Application as Exhibit A (the "Retention Agreement") and incorporated herein by reference, describe the services Epiq proposes to render as Agent.

3.      Epiq specializes in providing claims management, noticing, case administration and related services to chapter 11 debtors in connection with the administration, reconciliation and negotiation of claims and solicitation of votes to accept or reject plans of reorganization. Epiq specializes and has expertise in serving as outside claims agent to United States bankruptcy courts with respect to all aspects of claims administration, including docketing and storage of claims, maintenance of claims registers and related noticing services. Epiq has provided identical or substantially similar services to chapter 11 debtors in other cases, including, among others: *In re Steve & Barry's Manhattan LLC, et al.*, No. 08-12579 (ALG) (Bankr. S.D.N.Y. July 10, 2008) [Doc. No. 51]; *In re Lexington Precision Corp., et al.*, No. 08-11153 (MG) (Bankr. S.D.N.Y. April 2, 2008) [Doc. No. 24]; *In re PRC, et al.*, No. 08-10239 (MG) (Bankr. S.D.N.Y. Jan. 25, 2008) [Doc. No. 35]; *In re Global Crossing Ltd., et al.*, No 02-40188 (Bankr. S.D.N.Y. Jan. 29, 2002) [Doc. No. 31]; *In re Worldcom, Inc., et al.*, No. 02-13533 (Bankr. S.D.N.Y. July 25, 2002) [Doc. No. 102]; and *In re Enron Corp., et al.*, No. 01-16034 (Bankr. S.D.N.Y. Jan 30, 2002) [Doc. No. 1191]. Accordingly, I believe Epiq is well qualified to act as Agent for this case.

4.      Based upon information provided by Debtor, Epiq does not have or represent any interest materially adverse to the interests of the Debtor by reason of any direct or

indirect relationship to, or connection with, any class of creditors of the Debtor, or for any other reason. Epiq has no connection with the Debtor, its creditors or other parties in interest in this case. Further, Epiq does not hold or represent any interest adverse to the Debtor's estate.

5.    To the best of my knowledge, Epiq is a "disinterested person" as that term is defined in section 101(14) of Title 11 of the United States Code (the "Bankruptcy Code"), as modified by section 1107(b) of the Bankruptcy Code.

6.    Epiq will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new facts or circumstances are discovered, Epiq will supplement its disclosure to the Court.

7.    Epiq has not been retained to assist any entity or person other than the Debtor on matters relating to this chapter 11 case. If Epiq proposed retention is approved by this Court, Epiq will not accept any engagement or perform any service for any entity or person other than the Debtor in this chapter 11 case. Epiq may, however, provide professional services to entities or persons that may be creditors or parties in interest in this chapter 11 case, provided that such services do not relate to the Debtor or its chapter 11 case. In addition, Epiq may utilize services provided by vendors that may be creditors or parties in interest of the Debtor.

8.    To date, there are no outstanding amounts owed by the Debtor to Epiq.

9.    As compensation for Epiq services, Epiq will charge the rates set forth on the Pricing Schedule attached to the Retention Agreement. These rates are at least as favorable as those Epiq charges to other chapter 11 debtors for similar services. Epiq will comply with all requests of the office of the clerk of the bankruptcy court and follow the guidelines the Judicial Conference of the United States promulgated for the implementation of 28 U.S.C. § 156(c).

Epiq proposes to be paid by the Debtor in the ordinary course of its business without further application to this Court.

10.    Epiq will not share with any person or firm, other than Epiq own affiliates, partners, and employees, the compensation to be paid for professional services rendered in connection with this case.

11.    Epiq will comply with all of its obligations and responsibilities under the Protocol for the Employment of Claims Agents, dated May 8, 2006, issued by the Clerk of the Court. To that end, I am informed by counsel that proposals from three court-approved claims agents (including Epiq) were obtained and reviewed by the Debtor prior to selection of Epiq to serve as claims and noticing agent in this case.

12.    Epiq will perform its duties if it is retained in the Debtor's chapter 11 case regardless of payment. To the extent that Epiq requires redress, it will seek appropriate relief from the Court. Epiq will continue to perform the services as the Retention Agreement contemplates in the event that Debtor's chapter 11 case is converted to a chapter 7 case. In the event that Epiq services are terminated, Epiq shall perform its duties until the occurrence of a complete transition with the Clerk's Office or any successor claims/noticing agent.



Name:  Daniel C. McElhinney
Title:  Senior Vice President


Sworn to and subscribed before me, a notary public for the State of New York, County of New York, this _16_ th day of September, 2008.


Notary Public
Notary Public, State of New York
No.
Qualified in *Nassau Cty*
Commission Expires 10-22-2011

ELLI PETRIS
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01PE6175879
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES 10-22-2011

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                           :

In re                         :     **Chapter 11 Case No.**
                           :

**LEHMAN BROTHERS HOLDINGS INC.**    :    **08-13555 (JMP)**
                           :

       **Debtor.**          :
                           :

                           :
-------------------------------------------------------------------x

**ORDER PURSUANT TO 28 U.S.C. § 156(c)
AND LOCAL RULE 5075-1(a) (i) AUTHORIZING
THE EMPLOYMENT OF EPIQ BANKRUPTCY SOLUTIONS, LLC AS
CLAIMS AND NOTICING AGENT FOR THE DEBTOR, AND (ii) APPOINTING
EPIQ BANKRUPTCY SOLUTIONS, LLC AS AGENT OF THE BANKRUPTCY COURT**

Upon the application dated September 16, 2008 (the "Application") of Lehman Brothers Holdings Inc., as debtor and debtor in possession (the "Debtor" and, together with their non-debtor affiliates, "Lehman"), pursuant to section 156(c) of title 28 of the United States Code, for authority to employ Epiq Bankruptcy Solution, LLC ("Epiq") as noticing and claims agent, as more fully set forth in the Application; and upon consideration of Affidavit of Daniel C. McElhinney in Support of the Application to Employ and Retain Epiq as Claims and Noticing Agent for the Debtor, annexed to the Application as Exhibit B; and the Debtor has estimated that there are hundreds of thousands (if not more) creditors and other parties in interest exist in this chapter 11 case, many of which the Debtor expects to file proofs of claim; and it appearing that noticing, receiving, docketing and maintaining proofs of claim in this volume will be unduly time consuming and burdensome for the Clerk; and the Court being authorized under 28 U.S.C. § 156(c) and Local Rule 5075-1(a) of the Local Rules of the United States Bankruptcy Court for the Southern District of New York to utilize, at the Debtor's expense, outside agents and facilities to provide notices to parties in title 11 cases and to receive, docket, maintain, photocopy

and transmit proofs of claim; and the Court being satisfied that Epiq has the capability and

experience to provide such services and that Epiq does not hold an interest adverse to the Debtor

or the Debtor's estate with respect to the matters upon which Epiq is to be engaged; and the

Court having jurisdiction to consider the Application and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Application and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided to (i) the United States Trustee for the Southern District of

New York, (ii) those creditors holding the thirty (30) largest unsecured claims against the

Debtor's estate, (iii) the Securities and Exchange Commission, (iv) the Internal Revenue Service,

and (v) the United States Attorney for the Southern District of New York, and it appearing that

no other or further notice need be provided; and a hearing having been held to consider the relief

requested in the Application (the "Hearing"); and upon the Affidavit of Ian T. Lowitt Pursuant to

Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of

First-Day Motions and Applications, the record of the Hearing, and all of the proceedings had

before the Court; and the Court having found and determined that the relief sought in the

Application is in the best interests of the Debtor, its estate and creditors, and all parties in interest

and that the legal and factual bases set forth in the Application establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is hereby granted; and it is further

ORDERED that the Debtor is authorized to retain and employ Epiq, effective as of September 16, 2008, to perform the noticing and other services described in the Application and to receive, maintain, record, and otherwise administer the proofs of claim filed in this chapter 11 case; and it is further

ORDERED that Epiq is appointed as agent for the Clerk and custodian of court records and, as such, is designated as the authorized repository for all proofs of claim filed in this chapter 11 case and is authorized and directed to maintain an official claims registers for each of the Debtor and to provide the Clerk with a certified duplicate thereof on a monthly basis unless otherwise directed by the Clerk; and it is further

ORDERED that Epiq is authorized and directed to perform all related tasks to process the proofs of claim and maintain a claims register including, without limitation:

(a)    notifying all potential creditors of the filing of the chapter 11 petitions and of the setting of the first meetings of creditors pursuant to section 341(a) of the Bankruptcy Code;

(b)    assisting with and maintaining an official copy of the Debtor's schedule of assets and liabilities and statement of financial affairs (collectively, the "Schedules"), listing the Debtor known creditors and the amounts owed thereto;

(c)    designing, maintaining, and operating in conjunction with the Debtor a website, as a centralized location where the Debtor will provide information about the Debtor's case, including, at the Debtor's discretion, certain orders, decisions, claims, or other documents filed in this chapter 11 case;

(d)    maintaining a copy service from which parties may obtain copies of relevant documents in this chapter 11 case;

(e)    notifying all potential creditors of the existence and amount of their respective claims as set forth in the Schedules;

(f)    furnishing a form for the filing of proofs of claim, after approval of such notice and form by this Court;

(g)     filing with the Clerk, within ten (10) days of service, a copy of the proof of claim notice, a list of persons to whom it was mailed (in alphabetical order), and the date the notice was mailed;

(h)     docketing all claims received, maintaining the official claims register (the "Claims Register") for the Debtor on behalf of the Clerk, and providing the Clerk with immediate web access to the Claims Register upon request;

(i)     specifying in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, and (iv) the classification of the claim (e.g., secured, unsecured, priority, etc.);

(j)     relocating, by messenger, all of the actual proofs of claim filed with the Court, if necessary to Epiq, not less than weekly;

(k)     recording all transfers of claims and providing any notices of such transfers required by Bankruptcy Rule 3001;

(l)     making changes in the Claims Register pursuant to Court Order;

(m)     upon completion of the docketing process for all claims received to date by the Clerk's office, turning over to the Clerk copies of the Claims Register for the Clerk's review;

(n)     maintaining the official mailing list for each Debtor of all entities that have filed a proof of claim, which list shall be available upon request by a party in interest or the Clerk;

(o)     thirty (30) days prior to the close of this case, submitting and Order dismissing the Agent and terminating the services of the Agent upon completion of its duties and responsibilities and upon the closing of this case; and

(p)     at the conclusion of this chapter 11 case, boxing and transporting all original documents in proper format, as specified by the Clerk's Office, to the Federal Records.

ORDERED that Epiq is authorized to take such other action as is reasonably

necessary to comply with all duties set forth in the Application and this Order; and it is further

ORDERED that the Debtor is authorized to compensate Epiq on a monthly basis,

in accordance with the Standard Bankruptcy Services Agreement, dated September 15, 2008,

annexed to the Application as <u>Exhibit A</u>, upon receipt of reasonably detailed invoices setting

forth the services Epiq provided in the prior month and the rates charged for each service, and to

reimburse Epiq for all reasonable and necessary expenses Epiq may incur upon the presentation

of appropriate documentation and without the necessity for Epiq to file an application for

reimbursement with the Court; and it is further

        ORDERED if this case converts to a case under chapter 7, Epiq will continue to

be paid for its services until the claims filed in this chapter 11 case have been completely

processed; if claims agent representation is necessary in the converted chapter 7 case, Epiq will

continue to be paid in accordance with 28 U.S.C. §156(c) under the terms set out herein; and it is

further

        ORDERED that in the event Epiq is unable to provide the services set out in this

Order, Epiq will immediately notify the Clerk and the Debtor's attorneys and cause all original

proofs of claim and computer information to be turned over to another claims agent with the

advice and consent of the Clerk and Debtor's attorneys.

Dated: September __, 2008
     New York, New York

                                       _____
                                       UNITED STATES BANKRUPTCY JUDGE