**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
|  |  |
|---|---|
| In re | : Chapter 11 Case No. |
| **LEHMAN BROTHERS HOLDINGS INC.,** | : 08-13555 (JMP) |
| Debtor. | : |

-------------------------------------------------------------------x

### INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTIONS 363 AND 364 OF BANKRUPTCY CODE, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS TO POSTPETITION LENDERS PURSUANT TO SECTION 364 OF BANKRUPTCY CODE, AND (III) SCHEDULING FINAL HEARING

Upon the motion (the "*Motion*") dated September 16, 2008 of Lehman Brothers

Holdings, Inc. (the "*Debtor*"), (a) for the entry of this Interim Order and the Final Order (as

hereinafter defined) authorizing the Debtor to (i) obtain postpetition financing pursuant to

sections 105, 362, 363 and 364 of title 11 of the United States Code (the "*Bankruptcy Code*")

and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy

Rules*") by entering into (x) a senior secured superpriority debtor in possession credit agreement

(as the same may be amended, supplemented or otherwise modified from time to time, the

"*Postpetition Credit Agreement*"),[1] substantially in the form annexed to the Motion as Exhibit A,

among the Debtor, as borrower, the lenders from time to time parties thereto (collectively, the

"*Postpetition Lenders*"), Barclays Bank PLC, as administrative agent (in such capacity, the

"*Postpetition Administrative Agent*"), sole lead arranger, sole bookrunner, and sole syndication

agent (in such capacities, the "*Postpetition Lead Arranger and Syndication Agent,*" and together

---

[1] Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the Postpetition Credit Agreement.

with the Postpetition Administrative Agent, the "*Postpetition Agents*"), (ii) grant Liens and

superpriority claims to and on behalf of and for the benefit of the Postpetition Agents and the

Postpetition Lenders in the Collateral (as hereinafter defined and as defined in the Postpetition

Credit Agreement) in accordance with the Collateral Documents and this Interim Order and the

Final Order to secure any and all of the Postpetition Obligations (as hereinafter defined), and

(iiii) pending a final hearing on the Motion (the "*Final Hearing*"), (a) obtain emergency

postpetition loans under the Postpetition Credit Agreement to and including the date on which

the Final Order is entered (the "*Interim Facility*") and (b) in accordance with Bankruptcy Rule

4001(c)(2), requesting that this Court schedule the Final Hearing and approve notice with respect

thereto; and the Court having considered the Motion and the exhibits attached thereto, including,

without limitation, the Postpetition Credit Agreement; and a hearing to consider approval of the

Interim Facility having been held and concluded on September 17, 2008 (the "*Interim Hearing*");

and upon the record made at the Interim Hearing, the record of the Chapter 11 Case and the

Affidavit of Ian T. Lowitt in Support of the Debtor's Chapter 11 Petition and First Day Motion;

and upon all of the pleadings filed with the Court and all of the proceedings held before the

Court; and after due deliberation and consideration and good and sufficient cause appearing

therefor,

THE COURT HEREBY FINDS:

        A.      On September 15, 2008 (the "*Petition Date*"), the Debtor filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is continuing in the

management and possession of its business and properties as a debtor-in-possession pursuant to

sections 1107 and 1108 of the Bankruptcy Code.

B.     No request has been made for the appointment of a trustee or examiner and no statutory committee (a "*Committee*") has yet been appointed in the Chapter 11 Case.

C.     Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     An immediate and critical need exists for the Debtor to obtain funds in order to continue the orderly operation of its business, to maintain business relationships, to make payroll, to pay the costs of administration of its estate and to satisfy other working capital and operational needs.  The Debtor asserts that it is unable to obtain the required funds (i) in the forms of (w) unsecured credit or debt allowable under section 503(b)(1) of the Bankruptcy Code, (x) an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, or (y) unsecured debt having the priority afforded by section 364(c)(l) of the Bankruptcy Code, or (ii) on terms more favorable than those offered by the Postpetition Lenders under the Postpetition Credit Agreement, this Interim Order, the Final Order and all other agreements, documents, notes or instruments delivered pursuant hereto or thereto or in connection herewith or therewith, including, without limitation, the Commitments and the Fee Letter (each as defined in the Postpetition Credit Agreement) referred to in the Motion (collectively with the Postpetition Credit Agreement, this Interim Order and the Final Order, the "*Postpetition Financing Documents*").  The terms of the financing as contained in the Postpetition Financing Documents are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

3

F.     The Debtor has requested that, pursuant to the terms of the Postpetition Financing Documents, the Postpetition Lenders make loans and advances and provide other financial accommodations to the Debtor, to be used by the Debtor solely in accordance with the terms of the Postpetition Financing Documents.  The ability of the Debtor to continue its businesses, realize value from its assets and reorganize under chapter 11 of the Bankruptcy Code depends upon the Debtor obtaining such financing.  The Postpetition Lenders are willing to make such loans and advances and provide such other financial accommodations on a superpriority and first priority secured basis, as more particularly described herein, pursuant to the terms and conditions of the Postpetition Financing Documents.  Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtor's businesses, the management and preservation of its assets and properties, and is in the best interests of the Debtor, its estate and creditors.

G.     Based on the record before the Court, the terms of the Postpetition Financing Documents, pursuant to which the postpetition loans, advances and other credit and financial accommodations will be made or provided to the Debtor by the Postpetition Lenders, have been negotiated at arms' length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtor, its estate and creditors.  Based on the record presented to the Court by the Debtor, it appears the Postpetition Lenders, the Postpetition Agents, and their respective counsel, advisors, and consultants are entitled to a finding of "good faith" pursuant to section 364(e) of the Bankruptcy Code, and entitled to the full protection and benefits of the provisions of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision herein is vacated, reversed or modified, on appeal or otherwise.

4

H.       It is in the best interests of the Debtor's estate that it be allowed to finance

its operations under the terms and conditions set forth herein and in the Postpetition Financing

Documents.  The relief requested by the Motion is necessary to avoid immediate and irreparable

harm to the Debtor's estate, and good, adequate and sufficient cause has been shown to justify

the granting of the relief requested herein, and the immediate entry of this Interim Order.

I.       Notice of the relief sought by the Motion, and the hearing with respect

thereto was delivered on September 17, 2008 via facsimile to the following parties in interest:  (i)

the United States Trustee for the Southern District of New York (the "*U.S. Trustee*"); (ii) those

parties listed on the List of Creditors Holding Largest Thirty Unsecured Claims Against the

Debtor, as identified in the Debtor's chapter 11 petition; (iii) counsel to the Postpetition Agents;

(iv) counsel to the Administrative Agent Agents; (v) counsel to the Collateral Agent; (vi) the

office of the United States Attorney General for the Southern District of New York; (vii) the

Securities and Exchange Commission; (viii) the Securities Investor Protection Corporation; and

(ix) the Internal Revenue Service (collectively, the "*Interim Notice Parties*").  Given the nature

of the relief sought in the Motion, such notice constitutes sufficient and adequate notice of this

Interim Order pursuant to Bankruptcy Rules 2002, 4001(c) and (d) and 9014 and section 102(1)

of the Bankruptcy Code, as required by sections 363(b) and 364(c) of the Bankruptcy Code, and

no further notice of the Motion or this Interim Order is necessary or required.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.       The Motion is granted.  Any objections to the relief sought in the Motion

that have not been previously resolved or withdrawn are hereby overruled on their merits or, to

the extent applicable, deferred until the hearing on the Final Order.  This Interim Order shall

become effective immediately upon its entry and shall be valid and binding on all parties in interest.

2.       The Debtor is hereby (i) authorized and directed to enter into the Postpetition Credit Agreement, substantially in the form filed with the Court, and the other Postpetition Financing Documents and (ii) authorized to borrow funds, incur debt, reimbursement obligations and other obligations, grant Liens, make deposits, provide indemnities and perform its obligations in accordance with the terms and conditions of the Postpetition Financing Documents.  Prior to the entry of the Final Order, the Postpetition Financing Documents may be amended, modified, supplemented or the provisions thereof waived in accordance with their terms, without further order of this Court or notice to any party; *provided*, *however*, that notice of any such amendment, modification, or supplement shall be provided to the U.S. Trustee and counsel to any Committee, each of which shall have five (5) days from the date of such notice within which to object in writing to such amendment, modification or supplement, and upon any such timely written objection, such amendment, modification or supplement shall only be permitted pursuant to an order of this Court.  All obligations owed to any of the Postpetition Agents and/or Postpetition Lenders (collectively, the "*Postpetition Secured Parties*") under or in connection with the Postpetition Financing Documents, including, without limitation, all Obligations (as such term is defined in the Postpetition Credit Agreement), loans, advances and other indebtedness, obligations and amounts (contingent or otherwise) owing from time to time under or in connection with the Postpetition Financing Documents, and any and all other obligations at any time incurred by the Debtor to any of the Postpetition Secured Parties, are defined and referred to herein as the "*Postpetition Obligations*."

6

3.      Upon execution and delivery of the Postpetition Financing Documents, the Postpetition Financing Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms; *provided, however*, that notwithstanding any other provision of this Interim Order or of the other Postpetition Financing Documents, the Debtor shall not, prior to entry of a final order approving the Postpetition Financing Documents (the "*Final Order*"), incur Postpetition Obligations in the principal amount of more than $200,000,000 (the "*Interim Amount*"), and *provided further*, that the Interim Amount may only be borrowed under the Term Loan. No obligation, payment, transfer or grant of security under this Interim Order or the other Postpetition Financing Documents shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or any applicable nonbankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

4.      The Debtor shall use the loans or advances made under or in connection with the Postpetition Financing Documents solely as provided in this Interim Order and in the other Postpetition Financing Documents. From and after the Petition Date, amounts loaned and advanced under or in connection with the Postpetition Financing Documents and all proceeds of Collateral, including, without limitation, all of the Debtor's existing or future cash (collectively, "*Lender Funds*"), shall not, directly or indirectly, be used to pay expenses of the Debtor or otherwise disbursed except for (i) those expenses and/or disbursements that are expressly permitted under the Postpetition Financing Documents and any DIP Budget and Cash Flow Forecast (each as defined in the Postpetition Credit Agreement) approved by the Postpetition Administrative Agent (as such DIP Budget and Cash Flow Forecast may be extended, varied, supplemented or otherwise modified in accordance with the provisions of the Postpetition Financing Documents) and (ii) compensation and reimbursement of fees and expenses payable

pursuant to sections 330 or 331 of the Bankruptcy Code and awarded by this Court to attorneys, accountants, investment bankers, financial advisors or other professional persons retained by the Debtor or any Committee(s) pursuant to an order of this Court; *provided, however*, that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clause (ii) and shall not affect the right of any party in interest to object to the allowance and payment of any such amounts.  Subject to entry of the Final Order so providing, no administrative claims, including fees and expenses of professionals, shall be assessed against or attributed to any of the Postpetition Secured Parties with respect to their interests in the Collateral, and no right to surcharge shall be assessed against the Collateral (except solely for the benefit of the Postpetition Agents and the Postpetition Lenders), pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtor, without the prior written consent of the Postpetition Secured Parties, and no such consent shall be implied from any action, inaction or acquiescence by the Postpetition Secured Parties, or otherwise.  Except as set forth in the second sentence of this Paragraph, the Postpetition Secured Parties have not consented or agreed to the use of Lender Funds.

5.    Notwithstanding anything herein to the contrary, no Lender Funds may be used directly or indirectly by the Debtor, any Committee or any other person or entity to object to or contest in any manner the Postpetition Obligations or the Postpetition Liens, or to assert or prosecute any actions, claims or causes of action (including, without limitation, any claims or causes of action under chapter 5 of the Bankruptcy Code) against any of the Postpetition Secured Parties without the consent of the Postpetition Agents and the Postpetition Lenders or to obtain Liens that are senior to, or on a parity with the Liens of the Postpetition Agents, the Postpetition Lenders and the other Postpetition Secured Parties in the Collateral or any portion thereof.

8

6.    The Postpetition Administrative Agent may from time to time establish or modify availability reserves and/or eligibility reserves and otherwise modify the Borrowing Base in accordance with the Postpetition Credit Agreement.

7.    Interest on the Postpetition Obligations shall accrue at the rates (including any default rates) and shall be paid at the times as provided in the Postpetition Financing Documents.

8.    Any and all fees paid or required to be paid in connection with the Postpetition Financing Documents are hereby authorized and shall be paid in accordance with the terms and provisions of the Postpetition Financing Documents.

9.    All Postpetition Obligations (subject only to the Carve-Out (as defined below) hereby constitute under section 364(c)(1) of the Bankruptcy Code allowed superpriority administrative expense claims against the Debtor having priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c), and 1114 of the Bankruptcy Code, or otherwise, whether incurred in the Chapter 11 Case or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto, which superpriority claims shall, subject to the Carve-Out, be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof (including, upon entry of the Final Order, the proceeds of any avoidance actions under chapter 5 of the Bankruptcy Code).

10.    As security for the Postpetition Obligations, the Postpetition Collateral Agent is hereby granted pursuant to section 364(c)(2) of the Bankruptcy Code for the sole benefit of the Postpetition Secured Parties valid, binding, enforceable, first priority and perfected

Liens (the "*Postpetition Liens*") in (a) all equity interests of Neuberger Berman Holdings LLC

("*Neuberger Berman*"), directly owned or held by the Debtor, and all proceeds, products,

accessions, rents and profits of or in respect of the foregoing, and (b) a promissory note or other

debt instrument, if any, issued to the Debtor by Neuberger Berman to fund intercompany loans

from the Debtor to Neuberger Berman which, in any case, shall be limited to an aggregate

principal amount of $20 million (collectively, the "*Collateral*"), which Liens are subject only to

the Carve-Out.

11.    Subject to the Carve-Out, the Postpetition Liens shall not be (i) subject to

any Lien that is avoided and preserved for the benefit of the Debtor's estate under section 551 of

the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other Lien under

section 364(d) of the Bankruptcy Code or otherwise.  No claim or Lien having a priority superior

to or *pari passu* with those granted by this Interim Order with respect to the Postpetition

Obligations shall be granted or allowed until the indefeasible payment in full in cash and

satisfaction in the manner provided in the Postpetition Financing Documents of the Postpetition

Obligations.

12.    In connection with the postpetition financing, the Debtor further

acknowledges, represents, stipulates and agrees, among other things, that: (i) until the Full

Payment, the Debtor agrees that it will not prime or seek to prime the Liens provided to the

Postpetition Agents and the Postpetition Lenders under this Interim Order, the Final Order or the

Postpetition Financing Documents by offering a subsequent lender or other party a lien on the

Collateral; *provided*, that the Debtor may offer or provide a subsequent lender or other party a

lien on the Collateral only upon Full Payment and on the terms satisfactory to the Postpetition

Agents, in their discretion (subject to the written consent of all Postpetition Agents); and (ii) until

Full Payment, the Debtor shall not permit to exist any administrative expense claim against the

Debtor of any kind or nature whatsoever (other than the Carve-Out), that has a priority that is

equal or superior to the priority of the superpriority claims granted to the Postpetition Secured

Parties under this Interim Order.

13.    To the extent unencumbered funds are not available to pay administrative

expenses in full, the claims granted hereunder to the Postpetition Secured Parties, the

Postpetition Liens and any claims or Liens ranking *pari passu* with or junior in priority to such

claims of the Postpetition Secured Parties and the Postpetition Liens shall be subject to payment

of the Carve-Out.  As used in this Order, "Carve-Out" means (i) the unpaid fees of the Clerk of

the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a), (regardless of

whether there are unencumbered assets) and (ii) the unpaid and allowed fees and expenses

payable under sections 328, 330, 331 and 726 of the Bankruptcy Code to professional persons

retained pursuant to an order of the Court by the Debtor and any Committee, not to exceed

$6,000,000 in the aggregate; *provided, however*, that the Carve-Out shall not include, apply to or

be available for (a) any success fee or similar payment to any professionals or other persons

payable in connection with a restructuring or asset disposition with respect to the Debtor or

otherwise, or (b) any fees or expenses incurred by any party, including the Debtor or any

Committee, or its respective professionals in connection with, or relating to, the initiation or

prosecution of any claims, causes of action, adversary proceedings or other litigation against any

of the Postpetition Secured Parties, or the Postpetition Agents, including, without limitation,

challenging the amount, validity, perfection, priority or enforceability of or asserting any

defense, counterclaim or offset to, the Postpetition Obligations or the Postpetition Liens.  So long

as no Event of Default shall have occurred and be continuing, the Debtor shall be permitted to

11

pay compensation and reimbursement of expenses allowed and payable under sections 328, 330, 331 and 726 of the Bankruptcy Code, as the same may be due and payable, and the same shall not reduce the Carve-Out. The Postpetition Agents shall be entitled to reduce the Available Revolving Credit (by increasing reserves or otherwise) in connection with the Carve-Out, as permitted by the Postpetition Credit Agreement. Nothing herein shall be construed to impair the ability of any party in interest to object to any fees, expenses, reimbursement or compensation of any professionals.

14.    Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the rights of any of the Postpetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of the Postpetition Secured Parties to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Chapter 11 Case, conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner (including with expanded powers) or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan , or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the Postpetition Secured Parties.

15.    Notwithstanding anything herein or in the other Postpetition Financing Documents, on the Maturity Date (as defined in the Postpetition Credit Agreement), the Debtor shall no longer, pursuant to this Interim Order, the other Postpetition Financing Documents or otherwise, be authorized to borrow funds or incur indebtedness hereunder or under the other Postpetition Financing Documents or to use any proceeds of the Postpetition Obligations already received (and any obligations of the Postpetition Lenders to make loans or advances or issue

letters of credit hereunder or under the other Postpetition Financing Documents automatically

shall be terminated).

16.    Notwithstanding anything herein or the occurrence of the Maturity Date

(as defined in the Postpetition Credit Agreement), all of the rights, remedies, benefits and

protections provided to the Postpetition Secured Parties under this Interim Order and the other

Postpetition Financing Documents shall survive such Maturity Date (or Termination Event, if

earlier).  Upon such Maturity Date (or Termination Event, if earlier), the principal of and all

accrued interest and fees and all other Postpetition Obligations, shall be immediately due and

payable and the Postpetition Secured Parties shall have all other rights and remedies provided in

this Interim Order, the other Postpetition Financing Documents and applicable law.

17.    The automatic stay provisions of section 362 of the Bankruptcy Code are

hereby vacated and modified to the extent necessary to permit the Postpetition Secured Parties to

exercise, upon the occurrence and during the continuation of any Event of Default (as defined in

the Postpetition Credit Agreement) all rights and remedies provided for in the Postpetition

Financing Documents, and to take any or all of the following actions without further order of or

application to this Court:  (a) declare all Postpetition Obligations to be immediately due and

payable; (b) terminate the Revolving Loan Commitments and any unfunded Term Loan

Commitments under the Postpetition Credit Agreement; (c) set off and apply immediately any

and all amounts in accounts maintained by the Debtor with any Postpetition Secured Parties

against the Postpetition Obligations, and otherwise enforce rights against the Collateral in the

possession of any of the Postpetition Secured Parties for application towards the Postpetition

Obligations; and (d) take any other actions or exercise any other rights or remedies permitted

under this Interim Order, the other Postpetition Financing Documents or applicable law to effect

the repayment and satisfaction of the Postpetition Obligations; *provided, however*, that any

Postpetition Secured Party shall provide three (3) business days written notice (by facsimile,

telecopy, electronic mail or otherwise) to the U.S. Trustee, counsel to the Debtor and counsel to

any Committee prior to exercising any enforcement rights or remedies in respect of the Collateral

(other than the rights described in clauses (a), (b) and (c) above (to the extent they might be

deemed remedies in respect of the Collateral) and other than with respect to freezing any deposit

accounts); and *provided further*, that upon receipt of any such notice the Debtor may only make

disbursements in the ordinary course of business and with respect to the Carve-Out, but may not

disburse any other amounts; and *provided further*, that in any hearing after the giving of the

aforementioned notice, the only issue that may be raised by any party in opposition thereto being

whether, in fact, an Event of Default has occurred and is occurring.  The rights and remedies of

the Postpetition Secured Parties specified herein are cumulative and not exclusive of any rights

or remedies that the Postpetition Secured Parties may have under the other Postpetition

Financing Documents or otherwise.

        18.     If the Postpetition Secured Parties shall at any time exercise any of their

respective rights and remedies hereunder, under the other Postpetition Financing Documents or

under applicable law in order to effect payment or satisfaction of the Postpetition Obligations or

to receive any amounts or remittances due hereunder or under the other Postpetition Financing

Documents, including without limitation, foreclosing upon and selling all or a portion of the

Collateral, the Postpetition Secured Parties shall have the right without any further action or

approval of this Court to exercise such rights and remedies as to all or such part of the Collateral

as the Postpetition Secured Parties shall elect in their sole discretion, subject to the provision by

the Postpetition Secured Parties of the written notice as provided in the preceding paragraph.

14

The Postpetition Secured Parties shall be entitled to apply the payments or proceeds of the
Collateral in accordance with the provisions of this Interim Order and the other Postpetition
Financing Documents, and in no event shall any of the Postpetition Secured Parties be subject to
the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the
Collateral or otherwise.

19.    The failure or delay by any Postpetition Secured Party to seek relief or
otherwise exercise its rights and remedies under this Interim Order or any other Postpetition
Financing Documents shall not constitute a waiver of any of the rights of such Postpetition
Secured Party hereunder, thereunder or otherwise, and any single or partial exercise of such
rights and remedies against the Debtor or Collateral shall not be construed to limit any further
exercise of such rights and remedies against the Debtor and/or Collateral.

20.    Except as expressly provided in the Postpetition Financing Documents and
this Interim Order, the Debtor shall be enjoined and prohibited from at any time during the
Chapter 11 Case granting Liens in the Collateral or any portion thereof to any other parties
pursuant to sections 364(d), 503(b) or 507(b) of the Bankruptcy Code or otherwise.  The Debtor
shall be enjoined and prohibited from at any time using the Collateral or Lender Funds except
pursuant to the terms and conditions of this Interim Order and the other Postpetition Financing
Documents.

21.    The Fee Letter and the contents thereof shall be treated as confidential
information pursuant to Bankruptcy Rule 9019.  The Debtor shall provide a copy of the Fee
Letter to the Court, any Committee appointed in the Chapter 11 Case and the U.S. Trustee, but
shall not file the Fee Letter with the Court.  The parties that receive a copy of the Fee Letter shall

not disclose its contents to third parties, including, without limitation, in pleadings filed with the

Court or on the record in the Chapter 11 Case.

22.    The Debtor shall execute and deliver to the Postpetition Secured Parties all

such agreements, financing statements, instruments and other documents as the Postpetition

Agents or any of the Postpetition Lenders may reasonably request to evidence, confirm, validate

or perfect the Liens granted pursuant hereto.

23.    Without limiting the rights of access and information afforded to the

Postpetition Agents and the Postpetition Lenders under the Postpetition Financing Documents,

the Debtor, upon reasonable written notice and at such reasonable times during normal business

hours and as often as may reasonably be requested (and, after an Event of Default (as defined in

the Postpetition Credit Agreement) has occurred and is continuing, upon notice and at times that

are not limited to normal business hours), shall permit any representatives designated by the

Postpetition Agents or any Postpetition Lender to visit and inspect any of its properties, to

inspect, copy and take extracts from its financial and accounting records and to discuss its

affairs, finances and accounts with its officers and independent public accountants.

24.    All Liens granted herein and in the other Postpetition Financing

Documents to or for the benefit of the Postpetition Secured Parties shall pursuant to this Interim

Order be, and they hereby are, valid, enforceable and perfected, effective as of the date of the

entry of the Interim Order, and (notwithstanding any provisions of any agreement, instrument,

document, the Uniform Commercial Code or any other relevant law or regulation of any

jurisdiction) no further notice, filing or other act shall be required to effect such perfection, and

all Liens on any other deposit accounts shall, pursuant to this Interim Order be, and they hereby

are, deemed to confer "control" for purposes of sections 8-106, 9-104 and 9-106 of the New

16

York Uniform Commercial Code as in effect as of the date hereof in favor of the Postpetition

Secured Parties; *provided, however*, that if the Postpetition Agents shall, in their sole discretion,

choose to require the execution of and/or file (as applicable) such mortgages, financing

statements, notices of Liens and other similar instruments and documents, all such mortgages,

financing statements, notices of Liens or other similar instruments and documents shall be

deemed to have been executed, filed and/or recorded *nunc pro tunc* at the time and on the date of

the entry of the Interim Order.  Each and every federal, state and local government agency or

department is authorized and directed to accept the entry by this Court of this Interim Order as

evidence of the validity, enforceability and perfection on the date of entry of this Interim Order

of the Liens granted herein and in the other Postpetition Financing Documents to or for the

benefit of the Postpetition Secured Parties.

   25. The provisions of this Interim Order shall be binding upon and inure to the

benefit of each of the Postpetition Secured Parties and Debtor and their respective successors and

assigns (including any chapter 7 trustee or other trustee or fiduciary hereafter appointed as a

legal representative of the Debtor or with respect to the property of the estate of the Debtor).

The superpriority claims and the Liens granted to the Postpetition Agents and the Postpetition

Lender under this Interim Order shall continue in any superceding case for the Debtor under any

chapter of the Bankruptcy Code, and such liens and security interests shall maintain their priority

as provided in this Interim Order until the satisfaction in full of all obligations under the

Postpetition Financing Agreement.

   26. Based on the findings set forth in this Interim Order and in accordance

with section 364(e) of the Bankruptcy Code, which is applicable to the Interim Facility

contemplated by this Interim Order, in the event that any or all of the provisions of this Interim

Order or any other Postpetition Financing Documents are hereafter modified, amended or

vacated by a subsequent order of this or any other Court, no such modification, amendment or

vacation shall affect the validity, enforceability or priority of any Lien or claim authorized or

created hereby or thereby or any Postpetition Obligations incurred hereunder or thereunder.

Notwithstanding any such modification, amendment or vacation, any Postpetition Obligations

incurred and any claim granted to the Postpetition Secured Parties hereunder or under the other

Postpetition Financing Documents arising prior to the effective date of such modification,

amendment or vacation shall be governed in all respects by the original provisions of this Interim

Order and the other Postpetition Financing Documents, and the Postpetition Secured Parties shall

be entitled to all of the rights, remedies, privileges and benefits, including the Liens and priorities

granted herein and therein, with respect to any such Postpetition Obligations and claim.

      27.     The Debtor is authorized and directed to the extent necessary under

section 363 of the Bankruptcy Code, and the automatic stay imposed by section 362 of the

Bankruptcy Code is hereby lifted to the extent necessary, to do and perform all acts, to make,

execute and deliver all instruments and documents (including, without limitation, the execution

of additional security agreements, pledge agreements, control agreements, and financing

statements and the delivery of (a) certificates evidencing the membership interests, if any, in any

limited liability companies, which interests are pledged as Collateral, (b) evidence of registration

of the rights of the Postpetition Secured Parties in the limited liability interests on the books and

records of the relevant limited liability companies whose interests are pledged.), and (c) an

amendment to the limited liability company agreement of Neuberger Berman LLC in form and

substance satisfactory to the Administrative Agent, and to pay fees and expenses that may be

required or necessary for the Debtor's performance under the Postpetition Financing Documents,

including, without limitation, (i) the execution of the Postpetition Financing Documents and (ii)

the payment of the fees, indemnification obligations and other expenses described or provided in

the Postpetition Financing Documents as such become due, including, without limitation, agent

fees, commitment fees, and underwriting fees and reasonable attorneys', financial advisers' and

accountants' fees and disbursements as provided for in the Postpetition Financing Documents.

None of such postpetition secured parties, reasonable attorneys', financial advisers' and

accountants' fees and disbursements shall be subject to the approval of this Court or the U.S.

Trustee guidelines, and no recipient of any such payment shall be required to file with respect

thereto any interim or final fee application with this Court.  Notwithstanding the foregoing, the

Debtor shall, promptly before payment of invoices for any such fees and disbursements, provide

copies of same to the U.S. Trustee and counsel for any Committee.  In addition, subject to entry

of a Final Order so providing, the Debtor is hereby authorized and directed to indemnify the

Postpetition Secured Parties against any liability arising in connection with the Postpetition

Financing Documents to the extent provided in the Postpetition Financing Documents.  All such

fees, expenses and indemnities of the Postpetition Secured Parties shall constitute Postpetition

Obligations and shall be secured by the Postpetition Liens and afforded all of the priorities and

protections afforded to the Postpetition Obligations under this Interim Order and the other

Postpetition Financing Documents.

      28.    The obligations of the Debtor in respect of the Postpetition Obligations,

and the claims and Liens granted to or for the benefit of the Postpetition Secured Parties pursuant

to this Interim Order and the other Postpetition Financing Documents, shall not be discharged by

the entry of an order (a) confirming a chapter 11 plan in the Chapter 11 Case (and, pursuant to

section 1141(d)(4) of the Bankruptcy Code, the Debtor hereby waives such discharge) or (b)

converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.  Under no

circumstances shall any chapter 11 plan in this Chapter 11 Case be confirmed or become

effective unless such plan provides that the Postpetition Obligations shall be paid in full in cash

and satisfied in the manner provided in the Postpetition Financing Documents on or before the

effective date of such plan.

29.      Until all obligations and indebtedness owing to the Postpetition Secured

Parties shall have been indefeasibly paid in full in cash and satisfied in the manner provided in

the Postpetition Financing Documents, the Debtor shall not seek an order dismissing the Chapter

11 Case.  If an order dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code

or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and

349(b) of the Bankruptcy Code) that (i) the claims and Liens granted pursuant to this Interim

Order to or for the benefit of the Postpetition Secured Parties shall continue in full force and

effect and shall maintain their priorities as provided in this Interim Order until all obligations in

respect thereof shall have been indefeasibly paid in full in cash and satisfied in the manner

provided in the Postpetition Financing Documents (and that such claims and Liens shall,

notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall

retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and

Liens.

30.      The provisions of this Interim Order, including the grant of claims and

Liens to or for the benefit of the Postpetition Secured Parties, and any actions taken pursuant

hereto shall survive the entry of any order converting the Chapter 11 Case to a case under

chapter 7 of the Bankruptcy Code.

31.    The Administrative Agent and the Postpetition Lenders reserve their rights to place a credit bid pursuant section 363(k) of the Bankruptcy Code and/or applicable law in connection with a sale or disposition of assets in the Chapter 11 Case.

32.    The Debtor shall, on or before September 19, 2008, serve by United States mail, first class postage prepaid, copies of the Motion, this Interim Order and a notice of the Final Hearing (the "*Final Hearing Notice*") to be held on October 2, 2008 at 3:00 p.m. to consider entry of the Final Order on the Interim Notice Parties.  Copies of the Motion, this Interim Order and the Final Hearing Notice also shall be served upon all persons requesting service of papers pursuant to Bankruptcy Rule 2002 by United States mail, first class postage prepaid one business day following the receipt of such request.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the Final Order shall file written objections with the Court no later than 4:00 p.m. on September 25, 2008, which objections shall be served so that the same are received on or before such date and time by: (a) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq. and Jacqueline Marcus, Esq., counsel to the Debtor; (b) the Office of the United States Trustee, Attn: Andy Valez-Rivera, Esq.; and (c) Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attn: Lisa Schweitzer, Esq. and Lindsee Granfield, Esq., counsel to the Postpetition Lenders and the Postpetition Agents.

33.    Subject to entry of a Final Order so providing, any Affiliate (as defined by the Bankruptcy Code) of the Debtor that hereafter becomes a debtor in a case under chapter 11 of the Bankruptcy Code in this Court automatically and immediately, upon the filing of a petition for relief for such Affiliate, shall be deemed a "Debtor" hereunder in all respects, the chapter 11

21

case of such Affiliate shall be deemed to be a "Chapter 11 Case" hereunder in all respects and all

of the terms and provisions of this Interim Order, including, without limitation, those provisions

granting claims in the Chapter 11 Case, automatically and immediately shall be applicable in all

respects to such Affiliate and its chapter 7 or chapter 11 estate, as applicable.

34.     This Interim Order shall constitute findings of fact and conclusions of law.

35.     In the event that any provision of this Interim Order conflicts with any

term of the other Postpetition Financing Documents, this Interim Order shall govern.

Dated:  New York, New York
          September 17, 2008

                                                  _s/ James M. Peck_____
                                                  United States Bankruptcy Judge