Eduardo J. Glas, Esquire (# EG7027)
McCARTER & ENGLISH, LLP
245 Park Avenue
27th Floor
New York, New York  10167
(212) 609-6800 - Telephone
(212) 609-6921 - Facsimile
Attorneys for Occidental Energy Marketing, Inc.

Objection Date: September 18, 2008

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., et. al., | Case Nos. 08-13555 (JMP) |
|  | (Jointly Administered) |
| Debtor. |  |

**OCCIDENTAL ENERGY MARKETING, INC.'S OBJECTION TO DEBTORS' MOTION TO (A) SCHEDULE A SALE HEARING; (B) ESTABLISH SALES PROCEDURES; (C) APPROVE A BREAK-UP FEE; AND (D) APPROVE THE SALE OF THE PURCHASED ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF <u>CONTRACTS RELATING TO THE PURCHASED ASSETS [D.I. # 60]</u>**

Occidental Energy Marketing, Inc. (hereinafter "OEMI"), hereby objects to the Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets [D.I. # 60] (hereinafter the "Sale Motion") and in support thereof states as follows:

1

## BACKGROUND

1. Pursuant to a certain Base Contract for Sale and Purchase of Natural Gas (the "Contract"), OEMI sells natural gas to Eagle Energy Partners I, L.P. ("Eagle")[1]. Eagle has not filed for bankruptcy protection. A copy of the Agreement is attached as Exhibit A. Lehman Brothers Holdings Inc. guaranteed Eagle's debt under the Contract. See Exhibit B.

2. On September 15, 2008, (the "Petition Date"), Lehman Brothers Holdings Inc. (the "Debtor") filed for bankruptcy protection with the United States Bankruptcy Court for the Southern District of New York pursuant to Chapter 11 of Title 11 of the United States Code.

3. As of the Petition Date, Eagle owed OEMI no less than $7,000,000.00 for gas delivered during the month of August, which is due and payable on September 26, 2008.

4. On September 17, 2008, the Debtor filed the Sale Motion. The timing of the filing of the Sale Motion provided parties in interest with one business day to object and slightly more time prior to the hearing on the Sale Motion.[2]

## THE SALE MOTION

5. Pursuant to the Sale Motion, the Debtor proposes to sell certain "Purchased Assets" to Barclays Capital Inc. ("Purchaser") for $1.7 billion in cash plus the assumption of certain obligations and expenses. The Purchased Assets includes the Eagle business.

6. In addition to the sale of the Purchased Assets, the Purchaser "shall have the right, but not the obligation, to take assignment of contracts and leases which are designated for assumption and assignment by Purchaser." Debtors' Sale Motion at p.6 The Purchaser will have the opportunity to designate certain "Closing Date Contracts" which will be assumed and

---

[1] OEMI is also party to certain contracts and agreements with Lehman Brothers Commodity Services Inc. To the extent the Debtor seeks the same relief in the Sale Motion with respect to this entity, OEMI repeats and re-asserts the objections herein.

[2] OEMI reserves the right to further object to the timing and notice of the Sale Motion and Sale Hearing.

2

assigned on the Closing Date. Further, the Purchaser may then take sixty (60) days to decide whether it wants to pay the Cure Amounts and assume the obligations of certain other "Designated Contracts."

7. To date neither the Closing Date Contracts, nor the Designated Contracts, have been identified. However, the Sale Motion contemplates that at the conclusion of the Sale Hearing, the assumption and assignment of the Closing Date Contracts would be approved. In addition, the Sale Motion requests that the Court "find all anti-assignment provisions of the Closing Date contracts to be unenforceable under section 365(f) of the Bankruptcy Code." Debtors' Sale Motion at p.15-16

8. Although neither the Debtor nor the Purchaser have identified which contracts will be assumed and assigned to the Purchaser, a reading of the Sale Motion indicates that the Debtor may be attempting to assume and assign to the Purchaser certain non-debtor contracts. Such a proposed action is not permissible under the Bankruptcy Code.

9. Section 1.1. of the Asset Purchase Agreement (the "APA") defines "Purchased Assets" as including, among other things, "…(h) the Purchased Contracts….[and] (q) the equity interests and assets (at the election of Purchaser in its sole discretion prior to the entry of the Sale Order) of Eagle Energy Management LLC…"

10. Section 2.5 of the APA provides that

> "the Purchaser shall have the right upon notice to Seller to designate *any contract related to the assets purchased* from the Seller by Purchaser or its Affiliates (the "Related Contracts") as either (a) a Purchased Contract or (2) a Contract not designated as a Purchased Contract ("a Rejected Contract"). Until a Related Contract is so designated, Buyer shall be obligated to pay or cause to be paid ordinary course amounts due under such contracts in accordance with the terms thereof. If a Related Contract is designated as a Purchased Contract, such Purchased Contract shall be assigned to the Purchaser and upon such assignment Purchaser

3

shall be obligated to pay or cause to be paid the cure amount in respect of such Purchased Contract. If a Related Contract is designated as a Rejected Contract, Purchaser shall have no further obligations in respect thereof."

(emphasis added)

11. Neither the APA nor the Sale Motion provide any additional explanation of the breadth of what the parties believe to be a "contract related to the assets." However, under a cursory review of the documents, it can easily be inferred that the Debtors intend to (a) sell its interests in Eagle to the Purchaser; and (b) provide the Purchaser with the right to assume or reject any contracts by and between Eagle and any third-parties. This is simply not allowed.

## ARGUMENT

12. Section 365 of Title 11 of the Bankruptcy Code provides that the trustee or debtor may assume or reject any executory contract or unexpired lease *of the debtor*. 11 U.S.C. §365(a). The ability to assume or reject executory contracts and leases is a protection afforded through the Bankruptcy Code and is thus only available to debtors. Pursuant to the Sale Motion, the Debtors propose to sell its interests in Eagle and then allow the Purchaser to designate contracts between Eagle (a non-debtor entity) and third-parties for assumption or rejection. Nothing in the Bankruptcy Code (or applicable state law) or in the Debtors' moving papers permits this action.

13. The Bankruptcy Court's exclusive jurisdiction over a bankrupt debtor and its property does not extend to "a solvent independent subsidiary of the debtor merely because its stock is held by the debtor." *In re Beck Industries*, 479 F.2d 410, 415 (2d Cir.), *cert. denied*, 414 U.S. 858 (1973). Therefore, the Court does not have jurisdiction over the Contract between OEMI and Eagle and it cannot be part of the sale process.

4

14. Furthermore, simply because the bankruptcy parent owns the stock of the subsidiary does not make the subsidiary's assets property of the estate. *In re Mego International, Inc.* 30 B.R. 479, 481 (S.D. N.Y. 1983). *See also In re Beck Industries, Inc.*, 479 F.2d at 415. (internal citations omitted) (ownership of the non-debtor subsidiary's stock is not the equivalent of ownership of the subsidiary's property or assets). The OEMI Contract is with Eagle, not the Debtor, and as such, the Debtor cannot sell or assign the OEMI Contract to the Purchaser as part of a Section 363 sale or as part of a Section 365 assumption or rejection process.[3]

15. Put simply, the Contract between Eagle and OEMI cannot be rejected through the bankruptcy process. As a non-debtor entity, Eagle has not availed itself of the benefits or protections of the bankruptcy laws and cannot do so herein. Debtor's Sale Motion would in effect permit the Debtor to sell its interests in Eagle to the Purchaser and then allow the Purchaser to unilaterally cherry-pick any contracts with value, dismember the assets of the company, and leave any third-parties to deal with the remaining valueless enterprise. It is an improper attempt to apply bankruptcy protections to a non-debtor entity which is impermissible.

---

[3] A "parent company does not hold the assets of a subsidiary." *In re Insilco Technologies, Inc.*, 351 B.R. 313, 321 (Bankr. D. Del. 2006). *See also In re Murchison*, 54 B.R. 721, 728 (Bankr. N.D. Tex. 1985) (Title to corporate property is held by a corporation, and not by the shareholder.). That is, a parent company that is the sole shareholder of a subsidiary has no direct interest in the assets and liabilities of that subsidiary because "[i]t is an axiom of corporate law that '[t]he corporation is an entity, distinct form its stockholders even if the subsidiary's stock is wholly owned by one person or corporation.'" *In re Insilco Technologies, Inc.*, 351 B.R. at 321 (quoting *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 686-87 (Del. Ch. 1959)). It follows that, "[a]s a general rule, property of the [bankruptcy] estate includes the debtor's stock in a subsidiary but not the assets of the subsidiary." *In re Guyana Development Corp.*, 168 B.R. 192 (Bankr. S.D. Tex. 1994). Therefore, because a subsidiaries' assets are not property of the estate under Section 541, there is no authorization for the trustee to sell the assets of the subsidiary pursuant to section 363. *See In re Murchison*, 54 B.R. at 728 ("This application was apparently brought under the premise that the Court had jurisdiction under Code section 363(b)(1), which authorizes the trustee to sell "property of the estate". That term is in turn defined by § 541(a)(1), which states, in pertinent part, that "property of the estate" comprises "all legal or equitable interests of the debtor in property as of the commencement of the case". As explained below, Debtor had no interests in the particular property at issue; rather, he had an equitable interest in the entities which owned other entities, and so on, which ultimately owned an equitable interest in the partnership holding title to the property. Because the criterion of § 541(a)(1) has not been satisfied, § 363(b)(1) cannot apply. There being no authorization in § 363, or elsewhere, for a debtor in possession or trustee to sell property in which the estate has no interest, it must be concluded that the application is not based upon any provision in the Bankruptcy Code.").

15. Finally, to the extent that OEMI's Contract is determined to be a Closing Date Contract or other Purchased Contract, OEMI reserves the right to assert any and all amounts owed under the Contract as a Cure obligation.

## **CONCLUSION**

WHEREFORE, for the reasons stated above, OEMI objects to the relief requested in the Sale Motion to the extent cited above and respectfully requests that it be denied, and that the Court grant such other and further relief as deemed just and proper.

/s/ Eduardo J. Glas
Eduardo J. Glas, Esquire (# EG7027)
McCARTER & ENGLISH, LLP
245 Park Avenue
27th Floor
New York, New York  10167
(212) 609-6800 - Telephone
(212) 609-6921 - Facsimile
eglas@mccarter.com

and
Katharine L. Mayer, Esquire
McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19899
(302) 984-6300 - Telephone
(302) 984-6399 - Facsimile
kmayer@mccarter.com
Attorneys for Occidental Energy Marking, Inc.

Dated: September 18, 2008