# DIRECT CUSTODY AGREEMENT

## FOR CITIBANK, N.A., SUBSIDIARIES and AFFILIATES

### and

## LEHMAN BROTHERS INTERNATIONAL LTD.

Certified True Copy
of Original

*Sarah Cheeseman*

Sarah Cheeseman
Resident Vice President

LBIL

5/20/92

# TABLE OF CONTENTS

**SECTION**                                                                 **PAGE**

PREAMBLE................................................................. 1

1.  DEFINITIONS ......................................................... 2
2.  APPOINTMENT OF CUSTODIAN ............................... 4
3.  CITIBANK AFFILIATES ........................................... 4
4.  PROPERTY ACCEPTED ............................................ 5
5.  REPRESENTATIONS AND WARRANTIES ................. 5
6.  IDENTIFICATION AND SEGREGATION OF ASSETS ........ 6
7.  PERFORMANCE BY THE CUSTODIAN ..................... 7
    (a) Transactions not requiring Instructions .............. 7
    (b) Transactions requiring Instructions ................... 9
8.  REGISTRATION ..................................................... 10
9.  CLIENT DEPOSIT ACCOUNT PAYMENTS ............... 10
10. CUSTODY ACCOUNT AND DEPOSIT ACCOUNT PROCEDURES ....... 11
11. REPORTS, RECORDS, AFFIDAVITS AND ACCESS ........ 11
12. WITHDRAWAL AND DELIVERY ............................ 13
13. USE OF AGENTS, CLEARANCE SYSTEMS AND DEPOSITORIES ...... 13
14. CITICORP ORGANIZATION INVOLVEMENT .......... 14
15. SCOPE OF RESPONSIBILITY ................................. 15
16. INDEMNITY........................................................... 18
17. LIEN .................................................................... 19
18. FEES AND EXPENSES ........................................... 20
19. TERMINATION ..................................................... 20
20. ASSIGNMENT ....................................................... 21
21. DISCLOSURE ........................................................ 21
22. NOTICES .............................................................. 21
23. GOVERNING LAW ................................................ 21
    SIGNATURES ........................................................ 22
    COUNTRY SELECTIONS (Exhibit A) ..................... 23

LBIL                                                        5/20/92

# DIRECT CUSTODY AGREEMENT

**THIS DIRECT CUSTODY AGREEMENT** is made as of ___ Oct. 1992 by and among Citibank, N.A. (the "Bank") acting through its branch or office at 111 Wall Street, New York, New York 10043 as principal on its own behalf and as agent, with respect to signature, on behalf of each of the Citibank affiliates listed on the attached Exhibit A and selected by the Client (each a "Citibank Affiliate", which expression shall include any other Citibank affiliates as agreed between the Client as hereinafter defined and the Bank from time to time and any branch or office of Citibank, N.A. whether or not having separate legal personality or corporate existence as therein listed or as agreed as aforesaid) and Lehman Brothers International ltd. (the "Client") having its office or principal place of business at 1 Broadgate, London EC2M-7HA England.

## WITNESSETH

**THAT WHEREAS,** the Client wishes to open and maintain a custody account or accounts with the Bank and has selected certain Citibank Affiliates (if any) listed in the attached Exhibit A to hold certain assets in accordance with this Direct Custody Agreement and on such other terms and conditions as may be referred to in the Schedules attached hereto (if any) or as otherwise may be incorporated herein and amended from time to time upon prior wirtten notice to the Client (the Bank and the Citibank Affiliates selected by the Client from time to time are and each of them is hereafter referred to as the "Custodian").

**WHEREAS,** The Custodian wishes to establish such custody account or accounts under the terms and conditions of this Custody Agreement and the Schedules attached hereto, if any (this Custody Agreement and such Schedules as

LBIL                                1                        5/20/92



both may be amended from time to time, collectively, the "Agreement" or "Custody
Agreement");

   **NOW, THEREFORE,** in consideration of the premises and of the agreements
hereinafter set forth, the parties agree as follows:

1.   **DEFINITIONS**

   "Authorized Person(s)" means (i) any officers, employees or agents of the Client
as have been authorized by notice in writing to the Custodian to act on its behalf in
the performance of any acts or duties under this Agreement, or (ii) any other
person, firm or company holding a duly executed Power-of-Attorney from the Client
which is in a form acceptable to the Custodian.

   "Citicorp Organization" means Citicorp, Citibank, N.A., or any branches,
subsidiaries or affiliates thereof.

   "Clearance System" means Cedel, S.A., the Euro-clear System, the First
Chicago Clearing Center, the Depository Trust Company and such other clearing
agency, settlement system or depository as may from time to time be used in
connection with transactions relating to securities, and any depository or clearing
agency for any of the foregoing;

   "Instructions" means instructions from any Authorized Person received by the
Custodian, either orally or via telephone, telex (whether tested or untested),
facsimile transmission, bank wire or other teleprocess or electronic instruction
system acceptable to the Custodian which have been transmitted with proper testing
or authentication on such terms and conditions as the Custodian may specify,
provided that:

   (a)      Instructions shall continue in full force and effect until cancelled or
   superseded;

   (b)      if any Instructions are unclear and/or ambiguous, the Custodian may
   without any liability on its part, act upon what it reasonably believes in good



faith such instructions to be or, refuse to execute such Instructions until any ambiguity or conflict has been resolved to its satisfaction;

(c)    Instructions shall be provided and carried out subject to the operating procedures, marketing practices, rules and regulations of any relevant stock exchange, Clearance System, depository or market where they are to be executed, and can be acted upon by the Custodian only during banking hours and on banking days when the applicable financial markets are open for business.  All such Instructions shall be carried out subject to the local laws, regulations, customs, procedures and practices applicable at the place of performance of such Instructions or to which the Custodian is otherwise subject and shall be governed by and construed in accordance with the local law applicable at such place of performance; and

(d)    Instructions are to be given in the English language and the Custodian shall be entitled to rely upon the continued authority of any Authorized Person to give the same until the Custodian receives notice from the Client to the contrary; and the Custodian shall be entitled to rely upon any Instructions received in the manner prescribed it believes in good faith to have been given by any Authorized Person.

"Person" means any person, firm, company, corporation, government, state or agency thereof or any association or partnership (whether or not having separate legal personality) of two or more of the foregoing;

"Precious Metals" means gold, silver, platinum or such other metals as the parties hereto may from time to time agree, in bars, coins or other units and in form and weight that is customary for commercial transactions in such metals to be settled in London or New York (or, where the Client and the Custodian agree that delivery should take place in some other commercial center, that commercial center) and includes such metals whether allocated or unallocated, and any

certificates, receipts, warrants or other instruments (whether in registered or unregistered form) representing rights to receive, purchase or subscribe for any of the foregoing or evidencing or representing any other rights or interest therein.

"Property" means as the context requires, any Securities, Precious Metals, cash or any other property held by the Custodian under the terms of this Agreement.

"Securities" means bonds, debentures, notes, stocks, shares, units or other securities and all rights or property which may at any time accrue or be offered (whether by way of bonus, redemption, preference, option or otherwise) in respect of any of the foregoing or evidencing or representing any other rights or interests therein (including, without limitation, any of the foregoing not constituted, evidenced or represented by a certificate or other document but an entry in the books or other permanent records of the issuer, a trustee or other fiduciary thereof, or a Clearance System);

## 2. APPOINTMENT OF CUSTODIAN

The Client may authorize the Bank to establish on the terms of this Agreement a custody account or accounts (the "Custody Account") in the name of the Client and in the capacity as custodian, for the deposit of any Securities, Precious Metals and other property (apart from cash) from time to time received by the Bank for the account of the Client, and a deposit account or accounts (the "Client Deposit Account") in the name of the Client, for the deposit of funds in any currency from time to time received by the Bank for the account of the Client, whether by way of deposit or arising out of or in connection with any Securities, Precious Metals or other property in the Custody Account.

## 3. CITIBANK AFFILIATES

The Client authorizes and directs the opening of and the holding of all or any part of the Property in such further accounts forming part of the Custody Account and the Client Deposit Account, as the case may be, with each Citibank Affiliate as

selected by the Client in Exhibit A hereof or as otherwise agreed between the Client and the Bank from time to time, and agrees to execute such further documents and provide such materials and information as may be reasonably requested by such Citibank Affiliate to facilitate the opening and maintenance of such accounts.  The Client hereby understands and agrees that the opening of and the holding of all or any part of the Property in such accounts and the performance of any activities contemplated herein are subject to the local laws, regulations, customs, procedures and practices to which such Citibank Affiliate is subject and such further terms and conditions as may be referred to in the Schedules attached hereto (if any) or as otherwise may be incorporated herein and amended from time to time.  The Client understands and agrees that obligations and duties hereunder of any Citibank Affiliate selected by the Client shall be performed only by such selected Citibank Affiliate, and shall not be deemed obligations or duties of any other member of the Citicorp Organization.

4.    **PROPERTY ACCEPTED**

The Custodian agrees to accept for custody in the Custody Account at its discretion and subject to the conditions set forth herein:

(a)    Securities; and/or

(b)    Precious Metals; and/or

(c)    any other form of property (apart from cash) acceptable to the Custodian and capable of deposit under the terms of this Agreement including (without limitation) any physical assets, wine, works of art or similar items.

The Custodian agrees to accept for custody in the Client Deposit Account any cash in any currency (which shall if necessary be credited by the Custodian to different accounts in the currencies concerned).

5.    **REPRESENTATIONS AND WARRANTIES**

The Client hereby represents and warrants to Custodian that:

LBIL                                5                                5/20/92



(a)      during the term of this Agreement it (and any person on whose behalf it may act as agent or otherwise in a representative capacity) has and will continue to have full capacity and authority to enter into this Agreement and to carry out all the transactions contemplated herein, and has taken and will continue to take all action (including, without limitation the obtaining of all necessary governmental consents in any applicable jurisdiction) and customer consents (where applicable) to authorize the execution, delivery and performance of this Agreement; and

(b)      if a company or other corporate body, the resolutions of its Board of Directors or other managing body authorizing the execution, delivery and performance of this Agreement have been obtained and that these remain and will continue to remain in full force and effect as of the date hereof and during the term of this Agreement without revocation or amendment.

6.   **IDENTIFICATION AND SEGREGATION OF ASSETS**

With respect to Property in the Custody Account:

(a)      except as otherwise provided in this Agreement, the Custodian will separately identify on its records and, to the extent practicable, segregate all Property held on behalf of the Client by the Custodian or any other entity authorized to hold Property in accordance with Section 13 hereof.

(b)      the Custodian shall supply to the Client from time to time as mutually agreed upon a statement with respect to all of the Property in the Custody Account and the Client Deposit Account (such statement may be provided in the form of a printed statement or as electronically transmitted information).  In the event that the Client does not inform the Custodian in writing of any exceptions or objections within 60 days after the date of such statement, the Client shall be deemed to have approved such statement.

7.  **PERFORMANCE BY THE CUSTODIAN**

(a)    **Transactions not requiring instructions**

In the absence of contrary Instructions, the Custodian is authorized by the Client to carry out the following transactions relating to the Property without recourse to the Client:

(i)    to sign any affidavits, certificates of ownership or other certificates relating to the Property which may be required under any laws or regulations made by any tax authority or any other regulatory authority in any relevant jurisdiction, whether governmental or otherwise, and whether relating to ownership, income tax or capital gains, or any other tax, duty or levy (and the Client further agrees to ratify and to confirm or to do such things as may be necessary to complete or evidence the Custodian's actions under this Section 7(a)(i) or otherwise under the terms of this Agreement);

(ii)    (aa) to collect and receive, for the account of the Client, all income and other payments and distributions in respect of the Property, and (in the absence of contrary Instructions) credit the same to the Client Deposit Account;

(bb) to take any action necessary and proper in connection with the receipt of income and other payments and distributions as are referred to in Section 7(a)(ii)(aa) above, including (without limitation) the presentation of coupons and other interest items;

(iii)    (aa) to receive and hold for the account of the Client any capital arising out of or in connection with the Property whether as a result of its being called or redeemed or otherwise becoming payable (other than at the option of the holder thereof) and (in the

LBIL                          7                          5/20/92



absence of contrary Instructions) credit the same to Client Deposit Account;

(bb)  to take action necessary and proper in connection with the receipt of any capital as is referred to in Section 7(a)(iii)(aa) above, including (without limitation) the presentation for payment of any property which becomes payable as a result of its being called or redeemed or otherwise becoming payable (other than at the option of the holder thereof) and the endorsement for collection of checks, drafts and other negotiable instruments;

(iv)    to receive and hold for the account of the Client all Securities received by the Custodian as a result of a stock dividend, share subdivision or reorganization, capitalization of reserves or otherwise;

(v)    to exchange interim or temporary receipts for definitive certificates, and old or overstamped certificates for new certificates;

(vi)    to make cash disbursements for any expenses incurred in handling the Property and for similar items in connection with the Custodian's duties under this Agreement, and, (in the absence of contrary Instructions) debit the same to a designated fee account of the Client with the Custodian and;

(vii)    to deliver to the Client transaction advices and/or regular statements of account (such statments may be provided in printed form or as an electronic transmission) showing the Property held at such intervals as may be agreed between the parties hereto and to notify the Client of all notices, reports and other financial information relating to the Property when received by the



Custodian, and to seek Instructions as to any action to be taken in connection therewith.

(b)   **Transactions requiring Instructions**

The Custodian is authorized by the Client to carry out the following transactions relating to the Property upon receipt of specific Instructions;

(i)   to deliver Property sold by the Client against payment or as may be specified by the Client in its Instructions;

(ii)   to make payment for and to receive Property purchased by the Client, such payment to be made by the Custodian in accordance with the prevailing rules, operating procedures or market practice on any relevant stock exchange, Clearance System, depository or market, where or through which such payment is to be made, or as may be specified by the Client in its Instructions;

(iii)   to deal with bonus or scrip issues, warrants and other similar interests offered or received by the Custodian (or its nominee company or other agents) or to handle proxy forms, only as may be specified by the Client in its instructions;

(iv)   to exercise any voting rights attached to Securities and to forward proxy forms signed in blank by the Custodian (or its nominee company or other agent) or to destroy proxy forms, only as may be specified by the Client in its Instructions;

(v)   except as otherwise provided herein, to deliver or dispose of the Property only as may be specified by the Client in its Instructions; and



(vi)    to insure the Property on the Client's behalf provided that the Client makes available to the Custodian the cost of such insurance in advance or authorizes the Custodian to debit such cost to the Client Deposit Account or any other account of the Client with the Custodian.

## 8.    **REGISTRATION**

The Client agrees and understands that; except as may be specified by the Client in its Instructions, Property shall be registered as the Custodian may direct either in the name of the Custodian or its nominee company or its agent in the jurisdiction where the Property is required to be registered or otherwise held. Where feasible, the Custodian will arrange on written request by the Client for registration of Property with the issuer or its agent in the name of the Client or its nominee. The Client understands and agrees, however, that the Custodian shall have discretion to judge whether such direct registration is feasible.

## 9.    **CLIENT DEPOSIT ACCOUNT PAYMENTS**

Except as may be otherwise provided herein, the Custodian shall make, or cause its nominee company or agents to make, payments from the Client Deposit Account only:

(a)    in the connection with the purchase of Securities, Precious Metals and other Property for the account of the Client and their delivery to the Client, or their crediting to the Custody Account or other account of the Client;

(b)    for the payment for the account of the Client of taxes, management or supervisory fees, agents and other advisers' fees, distributions and operating expenses incurred under the terms of this Agreement;

(c)    for payments to be made in connection with the conversion, exchange or surrender of Property held in the Custody Account;

LBIL                          1 0                          5/20/92



(d)      for other proper purposes as may be specified by the Client in its Instructions; or

(e)      upon the termination of this Agreement on the terms hereof, **PROVIDED THAT** the payments referred to above do not exceed the funds available in the Client Deposit Account at any time and that nothing in this Agreement shall oblige the Custodian to extend credit, grant financial accommodation or otherwise advance moneys to the Client for the purpose of meeting any such payments or part thereof or otherwise carrying out any Instructions.

10.  **CUSTODY ACCOUNT AND DEPOSIT ACCOUNT PROCEDURES**

Unless otherwise agreed to by the Custodian and the Client, the Custodian shall, or shall instruct any other entity authorized to hold Property in accordance with Section 13 hereof to, receive or deliver Securities and credit or debit the Custody Account or Client Deposit Account, as the case may be, in accordance with proper Instructions.  The proceeds from the sale or exchange of Property and Property purchased or acquired will be credited to the Client Deposit Account or the Custody Account, as the case may be, on the date the proceeds or such Property, as the case may be, are actually received by the Custodian.

11.  **REPORTS, RECORDS, AFFIDAVITS AND ACCESS**

If the Custodian has in place a system for providing telecommunication access or other means of direct access by customers to the Custodian's reporting system for Property in the Custody Account or the Client Deposit Account, then, upon mutual agreement and arrangement between the Client and the Custodian, the Custodian shall provide the Client with such instructions and passwords and/or access codes as may be necessary in order for the Client to have such direct access through the Client's terminal device.

Except as otherwise provided in this Agreement, during the Custodian's regular banking hours and upon receipt of reasonable notice from the Client (that is deemed reasonable within the country conventions of the Custodian), any officer or employee of the Client, any independent accountant(s) selected by the Client and any person designated by any regulatory authority having jurisdiction over the Client shall be entitled to examine on the Custodian's premises, Property held by the Custodian on its premises and the Custodian's records regarding Property held hereunder deposited with entities authorized to hold Property in accordance with Section 13 hereof, but only upon the Client's furnishing the Custodian with Instructions to that effect, provided such examination shall be consistent with the Custodian's obligations of confidentiality to other parties. The Custodian's reasonable cost and expenses, which shall be documented, in facilitating such examinations and providing such reports and documents, including but not limited to the cost to the Custodian of providing personnel in connection with examinations shall be borne by the Client or by the person or agencies making such examinations or receiving such reports or documents, provided that such costs and expenses shall not be deemed to include the Custodian's costs in providing to the Client (a) the "single audit report" (if any) of the independent certified public accountant's engaged by the Custodian; and (b) such reports and documents as the Agreement contemplates that the Custodian shall furnish routinely to the Client.

The Custodian shall also, subject to restrictions under applicable law, seek to obtain from any entity with which the Custodian maintains the physical possession of any of the Property in the Custody Account and Client Deposit Account such records of such entity relating to the Custody Account or Client Deposit Account as may be required by the Client or its agents in connection with an internal examination by the Client of its own affairs. Upon a reasonable request from the Client, the Custodian shall use its best efforts to furnish to the Client such reports

(or portions thereof) of the external auditors of each such entity's system of internal accounting controls applicable to its duties under its agreement with the Custodian.

The Custodian shall supply to the Client from time to time, written operational procedures which shall govern the day to day operations of the account. Such operating procedures are hereby incorporated herein by reference.

12. **WITHDRAWAL AND DELIVERY**

The Client may at any time subject to Section 17 hereof, demand withdrawal of all or any part of the Property in the Custody Account and/or the Client Deposit Account. Payments of cash shall be made at the expense of the Client by banker's draft, telegraphic transfer, check or otherwise as may be agreed by the Custodian. Delivery of any Property other than cash will be made without undue delay at such locations as the parties hereto may agree at the expense of the Client. Where necessary, the Custodian will on withdrawal transfer any Property in the name of the Client or as it may direct at the expense of the Client. If the Client has deposited gold, silver or platinum or other metal coins of a standard commercial quantity, then the Client may request delivery thereof, but it is not entitled to request redelivery of specific coins or those of a specific year of minting.

13. **USE OF AGENTS, CLEARANCE SYSTEMS AND DEPOSITORIES**

The Client agrees and understands that:

(a)     the Custodian is authorized, subject to applicable laws, rules and regulations to appoint agents (including any member of the Citicorp Organization), whether in its own name or that of the Client, to perform any of the duties of the Custodian under this Agreement. The Custodian may delegate to any agent so appointed any of its functions under this Agreement, including (without limitation) the collection of all payments due on the Property and whether of an income or a capital nature;

LBIL                    1 3                    5/20/92



(b)    in selecting and appointing agents the Custodian shall use reasonable care to ensure that it appoints only persons it reasonably believes to be competent provided that the Custodian shall not be responsible (except as to the negligence in the selection of such agents) for the performance by such agents of any of the duties delegated to them under this Agreement;

(c)    if the Custodian appoints any agent pursuant to Section 13(a) above, it shall be entitled to pay all normal remuneration to such agent for the account of the Client;

(d)    the Custodian is entitled to deposit any Property at its discretion in any Clearance System reasonably deemed appropriate by the Custodian, and any Property so held shall be subject to the rules and operating procedures of such Clearance System and any applicable laws and regulations whether of a governmental authority or otherwise.

## 14.    CITICORP ORGANIZATION INVOLVEMENT

(a)    Subject to applicable laws, the Client hereby authorizes the Custodian without the need for the Custodian to obtain the Client's prior consent;

(i)    when acting on Instructions from the Client, to purchase and sell Securities, Precious Metals or any other Property from and to the Custodian or any other member of the Citicorp Organization and through any member of the Citicorp Organization, and from and to any other client of the Custodian; and

(ii)    to obtain and keep, without being liable to account to the Client, any commission payable by any third party or any other member of the Citicorp Organization in connection with dealings arising out of or in connection with the Custody Account and/or the Client Deposit Account.



(b)    The Client agrees and understands that if the Custodian, acting on Instructions from the Client arranges for investment in the name of the Custodian (but for the account of the Client) in any Securities, Precious Metals or any other Property, held, issued, or managed by any member of the Citicorp Organization, then such member of the Citicorp Organization may retain a profit (other than the charges, commissions, and fees payable by the Client under this Agreement) without being liable to account to the Client for such profit.

(c)    The Client agrees and understands that the Custodian may have banking relationships with companies whose Securities, Precious Metals or any other Property are held in the Client Custody Account and/or Client Deposit Account or which are purchased and sold for the Custody Account and/or Client Deposit Account.

15. **SCOPE OF RESPONSIBILITY**

The Client agrees and understands that:

(a)    subject to the terms hereof, the Custodian shall use all reasonable care in the performance of its duties under this Agreement and shall exercise the same standard of care that it exercises over its own assets in the safekeeping, handling, servicing and disposition of the Property, but shall not be responsible for any loss or damages suffered by the Client as a result of the Custodian performing such duties unless the same results from acts of negligence, fraud or wilful default on the part of the Custodian or its emplyees in which event the liability of the Custodian in connection with any Property shall not exceed the market value of such Property at the time of such negligence, fraud or willful default as afo-esaid together with reasonable legal costs incurred in such a recovery;

LBIL                                    1 5                          5/20/92

(b)        unless otherwise expressly agreed, the Custodian need not maintain any insurance on Property held under the terms of this Agreement;

(c)        upon receipt of each and every transaction advice and/or statement of account supplied to it by the Custodian pursuant to Section 7(a)(vii) hereof, the Client shall examine the same and notify the Custodian within sixty (60) days of the date of any such advice or statement of any discrepancy between Instructions given and the situation shown therein and/or of any other errors therein.  In the absence of any notification by the Client, the Custodian shall not (in the absence of negligence or willful default on its own part) be liable for the consequences of any discrepancy or error which was made or existed during the period covered by the statement or the transaction indicated by the advice, provided however, the Custodian shall not be liable for any such consequences during the period prior to the receipt of any such notification;

(d)        the Custodian or its nominee company or agents, as the case may be, after notification to the Client and receipt from the Client of its consent, may (but without being under any duty or obligation) institute or defend legal proceedings, or take or defend any other action arising out of or in connection with the Property provided that the Client indemnifies the Custodian against any reasonable costs, charges and expenses arising from such proceedings or other action and makes available to the Custodian such security in respect of such reasonable costs, charges and expenses as the Custodian in its absolute discretion deems necessary.  The Custodian shall not be entitled to the indemnification above if such legal proceeding or action is the result of its negligence or willful default.

(e)        (i)        the Custodian does not have any responsibility if for any reason or cause beyond its control, including (without limitation) nationalization, expropriation, currency restrictions, acts of war,

LBIL                                    16                            5/20/92

terrorism, insurrection, revolution, nuclear fusion, fission or acts of God, the operation of the Custody Account and/or Client Deposit Account and/or the Custodian's ability to carry out Instructions or account to the Client is restricted, removed or subject to delay in any way;

    (ii)    all collections of the Property and of any funds or other property paid or distributed in respect of the Property is made at the risk of the Client, provided that the Custodian has not acted in a negligent manner or in bad faith;

    (iii)    the Custodian shall not be liable for any loss resulting from or caused by, the carrying out of any Instructions of the Client;

(f)    the Client shall be responsible for all filings, tax returns and reports on any transactions undertaken pursuant to this Agreement which must be made to any relevant authority whether governmental or otherwise and for the payment of all unpaid calls, taxes (including without limitation any value added tax), imports, levies or duties due on any principal or interest, or any other liability or payment arising out of or in connection with the Property, and in so far as the Custodian is under any obligation (whether of a governmental nature or otherwise) to pay the same on behalf of the Client it may do so out of any monies or assets held by the Custodian pursuant to the terms of this Agreement;

(g)    the Custodian is not acting under this Agreement as investment manager or investment adviser to the Client and the Custodian's duty is solely to keep safe custody of the Property (with responsibility for the selection, acquisition and disposal of the Property remaining with the Client at all times) and;

(h)    the Custodian may rely in the performance of its duties under this Agreement and without liability on its part, upon any Instructions believed by it in good faith to be genuine and given by an Authorized Person.

## 16.  **INDEMNITY**

The Client agrees to indemnify the Custodian and each of the Custodian's nominees or other agents and to hold the Custodian and such nominees or agents harmless, against all reasonable costs, liabilities and expenses including (without limitation) any reasonable legal fees and disbursements, arising directly or indirectly:

(a)    from the fact that the Property is registered in the name of or held by the Custodian or any such nominees or agents;

(b)    without limiting the generality of Section 16 (a) above, from any act or thing including without limitation any overdraft or other financial accommodation which arises on the records of the Custodian (whether on an advised or unadvised basis), which the Custodian or such nominee or agent allows, takes or does or omits to allow, take or do in relation to the Property under or pursuant to the terms of this Agreement or as a consequence of the carrying out of any Instructions; or

(c)    from the Custodian or any such nominee or agent carrying out any Instructions believed by it in good faith to have been given by an Authorized Person,

**PROVIDED THAT** neither the Custodian, its nominees nor agents shall be indemnified against any liability arising out of the Custodian's or such nominee's or agent's own willful misfeasance, bad faith, negligence or reckless disregard of its duties under this Agreement.

17. **LIEN**

The Custodian hereby represents and agrees that (i) the Property held in accounts in the name of the Client for the benefit of its customers is not subject to, and the Custodian will not use or permit its agents to cause the same to become subject to, any lien, encumbrance or other claim of any kind in favor of the Custodian, any Clearance System in which the Property held in accounts in the name of the Client for the benefit of its customers is held or any creditor of any of them, except a claim of payment of their safe custody and administration; and (ii) the beneficial ownership of the Property held in accounts in the name of the Client for the benefit of its customers shall be freely transferable without the payment of money or other value other than for safe custody or administration.  Subject to the foregoing, the Custodian shall have a general lien on all other Property held by it under this Agreement until the satisfaction of all liabilities and obligations of the Client (whether actual or contingent) owned to the Custodian hereunder, provided, that such lien shall secure only the Client's obligations to the Custodian for the safe custody and administration of the Property.   In the event of failure by the Client to discharge any of such liabilities and obligations when due, such non performance remaining unremedied for a period of 10 days after notification by the Custodian to the Client the Custodian shall be entitled to sell, in a commercially reasonable manner after notice to the Client, or otherwise realize any such Property and to apply any moneys from time to time deposited with it under this Agreement and the proceeds of such sale or realization in the satisfaction of such liabilities and obligations; for the purpose of such application the Custodian may purchase with any moneys standing to the credit of any account such other currencies and at such rate(s) of exchange as may be necessary to effect such application.



## 18. FEES AND EXPENSES

Without prejudice to any of its liabilities and obligations under this Agreement, the Client agrees to pay to the Custodian from time to time such fees/commission for its services pursuant to this Agreement as may be notified by the Custodian to the Client from time to time and the Custodian's out-of-pocket or incidental expenses including (but without limitation) all those items referred to in Section 9 hereof, and to hold the Custodian harmless from any liability, loss or withholding, resulting from any taxes or other governmental charges, and any expenses related thereto, which may be imposed, or assessed in connection with or arising out of the Custody Account and/or the Client Deposit Account. Subject to specific Instructions from the Client to the contrary, the Custodian is further authorized to debit (as well after as before the date of any termination pursuant to Section 19 hereof) any designated fee account of the Client with the Custodian any amount owing to the Custodian from time to time under this Agreement.

## 19. TERMINATION

Either of the parties hereto may terminate this Agreement on giving not less than 30 days written notice to the other party. Upon the expiration of such notice the Custodian shall, subject to Section 17 hereof, account to the Client in accordance with the terms of Section 12 hereof, provided however, if the Custodian has effected any transaction on behalf of the Client the contractual settlement date of which is or is likely to extend beyond the expiration of such notice, then the Custodian and the Client shall mutually agree whether to close out or complete such transaction and the Custodian shall be entitled in its absolute discretion to retain sufficient funds from the Property for that purpose.



20. **ASSIGNMENT**

This Agreement shall bind and enure for the benefit of the parties hereto and their respective successors, and neither party may assign, transfer or charge all or any of its rights and benefits hereunder without the written consent of the other.

21. **DISCLOSURE**

The Client agrees and understands that the Custodian or its agent may disclose information regarding the Custody Account and/or the Client Deposit Account if required to do so by any court order or similar process in any relevant jurisdiction or by order of an authority having power to do so over the Custodian or its agents within the jurisdiction of such court or authority, provided that prior to making any such disclosure the Custodian advises the Client so that if the Client objects to such disclosure the Client may take appropriate action in the applicable court or with the appropriate authority.

22. **NOTICES**

Except as otherwise provided herein, all notices and other communications, to be given by under this Agreement, shall be in writing in the English language and shall be made either by telex or facsimile, or by letter addressed to the party concerned at the addresses set out above or, in the case of a Citibank Affiliate, in Exhibit A hereto (or at such other addresses as may be notified in writing by one party to any other party from time to time).

23. **GOVERNING LAW AND JURISDICTION**

As between the Bank and each Custodian, on the one hand, and the Client, on the other hand, this Agreement shall be governed by and construed in accordance with the laws of the country and state in which the Bank or such Custodian is located and performs its obligations hereunder. The Client agrees for the benefit of the Bank and each Custodian, without prejudice to the right of the Bank or any Custodian to take any proceedings in relation hereto before any other court of

**LBIL**                                    2 1                          5/20/92

competent jurisdiction, that (i) all actions and proceedings relating to or arising from, directly or indirectly this Agreement shall be brought in courts of competent jurisdiction located in the country and state in which the Bank or such Custodian is located and performs its obligations hereunder and (ii) the courts of the country and state in which the Bank or such Custodian is located and performs its obligations hereunder shall have jurisdiction to hear and determine any suit, action or proceeding and to settle any disputes which may arise out of or in connection with this Agreement, and, for such purposes, irrevocably submits to the non-exclusive jurisdiction of such courts.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement, including the country selections in Exhibit A hereto and the Schedules hereto (if any), to be executed by their respective officers thereunto duly authorized.

**CITIBANK, N.A. as Custodian**

**LEHMAN BROTHERS INTERNATIONAL LTD. as Client**

By: _Elizabeth G. Dempsey_

By: _Doos_

Title: _Vice President_

Title: _DIRECTOR_

Attest: _Niamh Kelleher_
VICE PRESIDENT

Attest: _N Walkes_
DIRECTOR

**Attachments**

