KLESTADT & WINTERS, LLP                                    Hearing Date: September 19, 2008
292 Madison Avenue, 17th Floor
New York, New York 10017
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Tracy L. Klestadt
John E. Jureller, Jr.
Sean C. Southard

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X           Chapter 11
In re:                                                      :
                                                            :           Case No. 08-13555 (JMP)
LEHMAN BROTHERS HOLDINGS INC., *et al.*,:                               (Jointly Administered)
                                                            :
                         Debtors.                           :
------------------------------------------------------------X

**OBJECTION OF OVERSTOCK.COM, INC., AND CERTAIN CURRENT OR
FORMER SHAREHOLDERS THEREOF, AND CERTAIN CURRENT OF FORMER
SHAREHOLDERS OF NOVASTAR FINANCIAL, INC., TO DEBTORS'
MOTION TO (A) SCHEDULE A SALE HEARING; (B) ESTABLISH SALE
PROCEDURES; (C) APPROVE A BREAK-UP FEE; AND (D) APPROVE
THE SALE OF THE PURCHASED ASSETS AND THE ASSUMPTION OF
<u>ASSIGNMENT OF CONTRACTS RELATING TO THE PURCHASED ASSETS</u>**

Overstock.com, Inc., and certain current or former shareholders thereof (collectively "Overstock"), and certain current or former shareholders of Novastar Financial, Inc. (collectively "Novastar Plaintiffs", and with Overstock, "Claimants"), by their counsel, hereby submit this objection to the Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sale Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Related to the Purchased Assets (the "Sale Motion"), hereby states the following:

      1.      During 2006 and 2007, prior to the filing of the Debtors' chapter 11 bankruptcy petitions, Overstock and Novastar Plaintiffs each separately filed an action in the Superior Court of the State of California, County of San Francisco, the first entitled "*Overstock.com, Inc, et al.*

1

*v. Lehman Brothers, Inc., et al.,* Civil Case No. CGC-07-460147" ("Overstock Action"), and the second entitled "*Joseph Avenius, et al. vs. Lehman Brothers, Inc., et al.,* Civil Action No. CGC-06-453422" (Novastar Action", and with the Overstock Action, the "Actions"). Each of the Actions include California state causes of action against a number of defendants, including non-debtor Lehman Brothers, Inc. ("LBI"), but not including the Debtors (as defined below), arising out of LBI's prime brokerage operations. Claimants, separately, allege that they were damaged by, *inter alia*, LBI's execution of illegal naked short sales in the stock of Overstock.com, Inc. and Novastar Financial, Inc.  A copy of the pending Second Amended Complaint in the Overstock Action is annexed hereto as Exhibit A.  A copy of the Second Amended Complaint in the Novastar Action is annexed hereto as Exhibit B. To date, the Actions have been proceeding in the California courts.

2. On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings, Inc. ("LBHI") and LB 745, LLC ("LB 745")(collectively the "Debtors") filed for bankruptcy protection with the United States Bankruptcy Court for the Southern District of New York pursuant to Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), and continue to operate their businesses as debtors and debtors in possession.

3. The Debtors have filed the Sale Motion seeking Court approval for the sale of certain assets of the LBHI's *non-debtor* subsidiary, LBI, to Barclays Capital Inc. ("Purchaser") for the estimated purchase price of $1.7 billion pursuant to a certain asset purchase agreement dated September 16, 2008 ("Asset Purchase Agreement").  LBI is identified in the Sale Motion as a broker-dealer non-debtor subsidiary of LBHI.

4. The Debtors' Sale Motion seeks Court approval for the proposed sale of certain assets and the assumption of certain liabilities of the Debtors and LBI, *i.e.* the "Purchased

Assets" and the "Assumed Liabilities," as defined in the Asset Purchase Agreement, which the Debtors propose to sell *free and clear of all liens* pursuant to section 363 of the Bankruptcy Code. However, it is respectfully submitted that the Sale Motion completely ignores the fact that LBI is not a debtor and thus its assets and liabilities are not subject to the protections of the Bankruptcy Code or the jurisdiction of the Bankruptcy Court. In fact, the Sale Motion and the Asset Purchase Agreement attempt to blur the corporate structures and commingle the parties, the assets and the liabilities in an effort to effectuate this sale under section 363 of the Bankruptcy Code. The Sale Motion proposes to sell non-estate assets while requesting bankruptcy estate asset protections.

5.  The Asset Purchase Agreement defines "Seller" as both the Debtors *and* LBI, and thereafter makes no further distinction between these separate and distinct entities. The proposed sale does not purport to sell any of the stock of LBI[1], rather only certain assets and liabilities of the company. Further, the proposed sale generically states, on the Closing Date "the Purchaser shall pay the Cash Amount to the Seller, which shall be paid by wire transfer of immediately available funds into an account designated by the Seller." (See Paragraph 3.3 of the Asset Purchase Agreement.) Again, there is no distinction between the sale of the assets of the Debtors versus those of LBI.

6.  Pursuant to the Asset Purchase Agreement, only certain liabilities of the Debtors and LBI will be assumed by Purchaser as part of the sale to Purchaser. Paragraph 2.3 of the Asset Purchase Agreement, entitled "Assumption of Liabilities," provides for Purchaser's assumption of, in pertinent part:

> (f)  All other Liabilities to the extent related to the Business, the Purchased Assets or the Transferred Employees arising *after* the Closing… (emphasis added)

---

[1] Although LBHI is purportedly the sole shareholder of LBI, the Asset Purchase Agreement specifically excludes the stock from the purchase as an "Excluded Asset".

3

7. On the other hand, Paragraph 2.4 of the Asset Purchase Agreement, entitled "Excluded Liabilities," provides that Purchaser shall not be liable for:

> (c) …Liabilities incurred in the Ordinary Course of Business existing prior to the filing of the Bankruptcy Case that are subject to compromise under the Bankruptcy Case…

8. The Asset Purchase Agreement defines the term "Business" as "U.S. and Canadian investment banking and capital markets businesses of Seller including the fixed income and equities cash trading, brokerage, dealing, trading and advisory businesses, investment banking operations and LBI's business as a futures commission merchant."

9. The Actions assert causes of action, i.e. "Claims", as that term is defined in 11 U.S.C. §101(5), against LBI for conversion, trespass of chattels, violations of California Corporations Code sections 5400, *et seq.*, and Unfair Business Practices (Cal. Bus. & Prof. Code Sectios 17200, *et seq.*, and Sections 17500, *et seq.* (the "Claims"). It is unclear to Claimants whether these Claims against LBI are Assumed Liabilities or Excluded Liabilities in the Asset Purchase Agreement, and whether the proposed sale is intended to be "free and clear" of any liability related to Claimants' Actions against the non-debtor LBI.

10. The Bankruptcy Code's exclusive jurisdiction over a debtor and the property of its estate does not extend to "a solvent independent subsidiary of the debtor merely because its stock is held by the debtor." In re Beck Industries, 479 F.2d 410, 415 (2d Cir.), *cert denied*, 414 U.S. 858 (1973). (See also In re Arlan's Dep't Stores, Inc., 615 F.2d 925, 940 (2d Cir. 1979) ("In each of those cases, since the subsidiary was a viable, self-sustaining entity, independent of the debtor-parent, its property interests were not subject to the jurisdiction of the court. The district court is generally without jurisdiction over proceedings involving the property of a non-filing subsidiary, but where the subsidiary is a mere sham, conduit or alter ego of the parent

4

corporation, the corporate veil may be pierced and the separate entity may be disregarded."); In re Murchison, 54 B.R. 721, 728 (Bankr. N.D. Tex. 1985)("[Debtor] is a mere shareholder in Texas Plaza Development Corporation, and as such, it cannot claim a property right in specific assets of a subsidiary. It is an elementary principle of corporate law that a corporation and its stockholders are separate entities and that title to corporate property is vested in the corporation and not in the owners of the corporate stock. Even where, as here, *one hundred percent* of a subsidiary's stock is owned by the shareholder in question, that shareholder has not acquired, and has no property interest in, specific assets of the subsidiary.")(emphasis added)(internal quotations omitted); In re Mego International, Inc., 30 B.R. 479 (S.D.N.Y. 1983)("ownership of a subsidiary by a bankrupt did not make that subsidiary the parent's property, unless the subsidiary was a mere sham or conduit rather than a viable entity.").

11.     "In determining whether Subsidiary or its assets constitute "property" of the debtor within the meaning of the [Bankruptcy Code] … Ownership of all of the outstanding stock of a corporation, however, is not the equivalent of ownership of the subsidiary's property or assets … Even though the value of the subsidiary's outstanding shares owned by the debtor may be directly affected by the subsidiary's disputes with third parties, Congress did not give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor's estate." In re Beck Industries, 479 F.2d at 415 (internal quotations omitted).  This District Court cannot simply lift the corporate veil because it would help the Debtors reorganize.  "The need to help [Debtor] in its effort to reorganize is an inappropriate basis both for Bankruptcy Court jurisdiction and for granting [wholly owned subsidiary] preliminary relief in a contract action." In re Mego International, Inc., 30 B.R. at 483.  "Absent proof that a subsidiary is a sham, therefore, the general rule that best serves the interests of bankrupts and creditors alike is that

5

entities that transact business with a nonbankrupt, economically viable subsidiary of a bankrupt can be subjected to the Bankruptcy Court's jurisdiction *only when they agree to submit to it*." In re Mego International, Inc. 30 B.R. at 484 (emphasis added).

12.     As such, this Court does not have jurisdiction to permit the sale free and clear of all claims as it relates to the non-debtor subsidiary LBI and its separate assets and liabilities.

13.     Alternatively, in the event the Sale Motion is approved, it is respectfully requested that such order approving the Sale Motion be made contingent upon the Asset Purchase Agreement being amended and restated to include any liabilities of LBI as an Assumed Liability.

14.     Due to the ambiguities contained in the Sale Motion and the Asset Purchase Agreement, Claimants seek a determination from this Court as to the meaning of the Asset Purchase Agreement with regard to whether the Actions are "Assumed Liabilities" or "Excluded Liabilities" under the Asset Purchase Agreement. The Claimants reserve the right to supplement this objection as appropriate once this issue has been determined by the Court.[2] Claimants' clarification request is of critical importance to the Actions, which will continue against LBI in any event. Neither LBI nor Purchaser is a bankrupt debtor, and Claimants should be entitled to know the proper identity of the entity that will be the real party-in-interest defendant in the Action and responsible party in the event of a judgment is entered in favor of Claimants.

15.     Further, to the extent the Sale Motion is approved and the Actions are deemed Excluded Liabilities, Claimants reserve the right to assert and enforce any judgments obtained against LBI as against the proceeds of such sale, to request an accounting as to the appropriate division or distribution of any proceeds between the Debtors and LBI with respect to the sale of

---

[2] To the extent LBI is subject to a proceeding under SIPA and/or the SIPA Trustee, if appointed, seeks to take advantage of any order approving the Sale Motion and the Asset Purchase Agreement and seeks a further order of this Court relative thereto, the Claimants reserve all rights to assert further and appropriate objections thereto.

6

their respective assets and assumption of their respective liabilities, and to request that the Court compel LBI to put such proceeds in escrow pending final determination of the Actions.

**CONCLUSION**

WHEREFORE, it is respectfully requested that the Sale Motion be denied, or in the alternative, that any order approving the Sale Motion be contingent upon the Asset Purchase Agreement being amended and restated to include all liability with respect to the Actions as an Assumed Liability, together with such other and further relief as this Court deems just.

To the extent the Sale Motion is granted, the Claimants request clarification as to whether the Claims and the Actions are "Assumed Liabilities" or "Excluded Liabilities" under the Asset Purchase Agreement, and the entity that will be the real party in interest to such Action.

Further, to the extent the Sale Motion is approved and the Actions are deemed Excluded Liabilities, Claimants reserve the right to assert and enforce any judgments obtained against LBI as against the proceeds of such sale, to request an accounting as to the appropriate division or distribution of any proceeds between the Debtors and LBI with respect to the sale of their respective assets and assumption of their respective liabilities, and to request the Court compel LBI to put such proceeds in escrow pending final determination of the Actions.

Dated: New York, New York
     September 18, 2008                       KLESTADT & WINTERS, LLP

                                              By: */s/ John E. Jureller, Jr.*
                                                  Tracy L. Klestadt
                                                  John E. Jureller, Jr.
                                                  Sean C. Southard
                                         292 Madison Avenue, 17th Floor
                                         New York, New York 10017
                                                  -and-
                                         STEIN & LUBIN LLP
                                         Theodore A. Griffinger, Jr.
                                         Dennis D. Miller
                                         600 Montgomery Street, 4th Floor
                                         San Francisco, CA94111
                                         (415) 981-0550

                                         Attorneys for Claimants