1  Theodore A. Griffinger, Jr. (SBN 66028)
   Ellen A. Cirangle (SBN 164188)
2  Daniel K. Slaughter (SBN 136725)
   STEIN & LUBIN LLP
3  600 Montgomery Street, 14th Floor
   San Francisco, California 94111
4  Telephone:   (415) 981-0550
   Facsimile:   (415) 981-4343
5  tgriffinger@steinlubin.com
   ecirangle@steinlubin.com
6  dslaughter@steinlubin.com

7  Attorneys for Plaintiffs
   OVERSTOCK.COM, INC., KEITH CARPENTER,
8  OLIVIER CHENG, MARY HELBURN,
   ELIZABETH FOSTER, HUGH D. BARRON,
9  DAVID TRENT and MARK MONTAG

ENDORSED
FILED
Superior Court of California
County of San Francisco

MAY 29 2008

GORDON PARK-LI, Clerk
BY: ____ MARIA SANCHEZ

10
11           SUPERIOR COURT OF THE STATE OF CALIFORNIA
12                     COUNTY OF SAN FRANCISCO
13

14  OVERSTOCK.COM, INC., a Delaware
    corporation; KEITH CARPENTER, an
15  individual; OLIVIER CHENG, an
    individual; MARY HELBURN, an
16  individual; ELIZABETH FOSTER, an
    individual; HUGH D. BARRON, an
17  individual; DAVID TRENT, an individual,
    and MARK MONTAG, an individual,

18           Plaintiffs,

19  v.

20  MORGAN STANLEY & CO.,
    INCORPORATED, THE GOLDMAN
21  SACHS GROUP, INC., BEAR STEARNS
    SECURITIES CORP., BANC OF
22  AMERICA SECURITIES LLC, THE
    BANK OF NEW YORK, CITIGROUP,
23  INC., CREDIT SUISSE (USA) INC.,
    DEUTSCHE BANK SECURITIES, INC.,
24  MERRILL LYNCH, PIERCE, FENNER &
    SMITH, INC., LEHMAN BROTHERS
25  INC., UBS SECURITIES LLC, and DOES
    2 through 100,

26
             Defendants.
27

Case No. CGC-07-460147

**SECOND AMENDED COMPLAINT FOR:**

**(1) CONVERSION**

**(2) TRESPASS TO CHATTELS**

**(3) VIOLATIONS OF CALIFORNIA CORPORATIONS CODE SECTIONS 25400,** *et seq.*

**(4) UNFAIR BUSINESS PRACTICES (CAL. BUS. & PROF. CODE SECTIONS 17200,** *et seq.* **AND SECTIONS 17500,** *et seq.***)**

Complaint filed: February 2, 2007

28
55790003/369532v1                                          Case No. CGC-07-460147
                     SECOND AMENDED COMPLAINT

Plaintiffs Overstock.com, Inc., a Delaware corporation ("Overstock"); David Trent, an individual; Elizabeth Foster, an individual; Keith Carpenter, an individual; Olivier Cheng, an individual; Mary Helburn, an individual; Hugh D. Barron, an individual and Mark Montag, an individual (collectively, Overstock and the individual Plaintiffs are referred to as "Plaintiffs") for their Complaint, allege as follows:

## NATURE OF THE CASE

1. Defendants have and continue to participate in a massive, illegal stock market manipulation scheme. Defendants control approximately 80% of the prime brokerage market. Among other things, Defendants have executed, as principal and agent, short sales of the stock of Overstock with no intention of delivering stock to settle the short sale. Rather, Defendants have intentionally failed to deliver Overstock stock to settle the short positions. Defendants' actions caused and continue to cause dramatic distortions with regard to the nature and amount of trading in Overstock securities, which have caused Overstock's securities' prices to drop. Defendants' conduct violates California's securities laws, common law, and constitutes unfair business practices under California law. Plaintiffs were harmed by Defendants' conduct.

## PARTIES

2. Overstock is a Delaware corporation with its principal place of business in Salt Lake City, Utah. Overstock's common stock trades on the NASDAQ National Securities Market ("NASDAQ) under the symbol "OSTK."

3. Plaintiff Keith Carpenter is an individual and resident of New York, New York, and is a current or former owner of Overstock securities at the relevant times herein.

4. Plaintiff Olivier Cheng is an individual and resident of New York, New York, and is a current or former owner of Overstock securities at the relevant times herein.

5. Plaintiff Mary Helburn is an individual and resident of Idaho, and is a current or former owner of Overstock securities at the relevant times herein.

6. Plaintiff Elizabeth Foster is an individual and resident of New York, and is a current or former owner of Overstock securities at the relevant times herein.

7. Plaintiff Hugh D. Barron is an individual and resident of Marin County,

California, and is a current or former owner of Overstock securities at the relevant times herein.

8. Plaintiff David Trent is an individual and resident of Los Angeles, California, and is a current or former owner of Overstock securities at the relevant times herein.

9. Plaintiff Mark Montag is an individual and resident of Blue Bell, Pennsylvania, and is a current or former owner of Overstock securities at the relevant times herein.

10. Defendant Morgan Stanley & Co., Incorporated ("Morgan Stanley") is a Delaware corporation. Morgan Stanley is qualified to and does do business in the state of California. Morgan Stanley is in the business of, among other things, providing prime brokerage services and securities lending. Upon information and belief, Morgan Stanley is the largest prime brokerage firm in terms of aggregate client assets (23.1% of the prime brokerage market). Morgan Stanley also engages in proprietary trading for its own benefit.

11. Defendant The Goldman Sachs Group, Inc. ("Goldman") is a Delaware corporation with its principal place of business in New York, New York. Goldman is qualified to and does do business in the state of California. Goldman is in the business of, among other things, providing prime brokerage services and securities lending. Upon information and belief, Goldman is the third largest prime brokerage firm in terms of aggregate client assets (16.5% of the prime brokerage market). Goldman also engages in proprietary trading for its own benefit.

12. Defendant Bear Stearns Securities Corp ("Bear Stearns") is a Delaware Corporation with its principal place of business in New York, New York. Bear Stearns is qualified to and does do business in the state of California. Bear Stearns is in the business of, among other things, providing prime brokerage services and securities lending. Upon information and belie, Bear Stearns is the second largest prime brokerage firm in terms of aggregate client assets (20.9% of the prime brokerage market). Bear Stearns also engages in proprietary trading for its own benefit.

13. Defendant Banc of America Securities, LLC, ("Banc of America") is a Delaware corporation, qualified to do business in California. Upon information and belief, Banc of America has a principal office in San Francisco, California. Banc of America is in the business

1  of, among other things, providing prime brokerage services and securities lending from its San
2  Francisco office. Upon information and belief, Banc of America is the tenth largest prime
3  brokerage firm in terms of aggregate client assets (2.0% of prime brokerage market). Banc of
4  America also engages in proprietary trading for its own benefit.
5       14.    Defendant The Bank of New York ("Bank of New York") is a New York
6  corporation. Bank of New York is qualified to and does do business in the state of California.
7  Bank of New York is in the business of, among other things, providing prime brokerage services
8  and securities lending. Bank of New York also engages in proprietary trading for its own benefit.
9       15.    Defendant Citigroup, Inc. ("Citigroup") is a Delaware Corporation.
10 Citigroup is qualified to and does do business in the state of California. Citigroup is in the
11 business of, among other things, providing prime brokerage services and securities lending.
12 Upon information and belief, Citigroup is the sixth largest prime brokerage firm in terms of
13 aggregate client assets (2.7% of the prime brokerage market). Citigroup also engages in
14 proprietary trading for its own benefit.
15      16.    Defendant Credit Suisse (USA) Inc. ("Credit Suisse") is a Delaware
16 corporation. Credit Suisse is qualified to and does do business in the state of California. Credit
17 Suisse is in the business of, among other things, providing prime brokerage services and
18 securities lending. Upon information and belief, Credit Suisse is the ninth largest prime
19 brokerage firm in terms of aggregate client assets (2.2% of the prime brokerage market). Credit
20 Suisse also engages in proprietary trading for its own benefit.
21      17.    Defendant Deutsche Bank Securities, Inc. ("Deutsche Bank") is a Delaware
22 corporation. Deutsche Bank is qualified to and does do business in the state of California.
23 Deutsche Bank is in the business of, among other things, providing prime brokerage services and
24 securities lending. Upon information and belief, Deutsche Bank is the eighth largest prime
25 brokerage firm in terms of aggregate client assets (2.5% of the prime brokerage market).
26 Deutsche Bank also engages in proprietary trading for its own benefit.
27      18.    Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch")
28 is a Delaware corporation. Merrill Lynch is qualified to and does do business in the state of

1  California. Merrill Lynch is in the business of, among other things, providing prime brokerage
2  services and securities lending. Upon information and belief, Merrill Lynch is the fifth largest
3  prime brokerage firm in terms of aggregate client assets (4.6% of the prime brokerage market).
4  Merrill Lynch also engages in proprietary trading for its own benefit.

5       19.    Plaintiffs were ignorant of a defendant's name, stated that fact in the
6  complaint, and designated the defendant by a fictitious name. That defendant's true name has
7  now been discovered and Plaintiffs hereby amend the complaint to substitute Defendant UBS
8  Securities LLC, ("UBS") a Delaware corporation, for DOE Number 1. Upon information and
9  belief, UBS is the fourth largest prime brokerage firm in terms of aggregate client assets (5.9% of
10 the prime brokerage market). UBS is qualified to and does do business in the state of California.
11 UBS also engages in proprietary trading for its own benefit.

12      20.    Defendant Lehman Brothers Inc. ("Lehman") is a Delaware corporation.
13 Upon information and belief, Lehman is the seventh largest prime brokerage firm in terms of
14 aggregate client assets (2.6% of the prime brokerage market). Lehman is qualified to and does do
15 business in the state of California. Lehman also engages in proprietary trading for its own
16 benefit.

17      21.    Upon information and belief, the activities of Defendants in the state of
18 California are an integral part of their prime brokerage business. Defendants each maintain
19 multiple offices in California in which, upon information and belief, they conduct prime
20 brokerage activities as well as proprietary trading activities, including the activities which form
21 the basis of this action.

22      22.    The names and capacities of the Defendants named as Does 2 through 100,
23 inclusive, are presently unknown to the Plaintiffs. Plaintiffs are informed and believe that Does 2
24 through 100, inclusive, did the same actions with the same intent as alleged against Defendants
25 herein, participated in those actions and/or are the affiliates, partners, co-venturers, co-
26 conspirators and/or aiders and abettors of the other Defendants, and each other, and Defendants
27 agreed, conspired and participated with the other Defendants in doing the things alleged herein,
28 and ratified and accepted the benefits of the acts of the other Defendants, such that they are in

1  some manner responsible for the acts and omissions complained of herein. Accordingly, these
2  Defendants, each of whom is legally responsible for the acts alleged herein, are sued by these
3  fictitious names. When the identities and capacities of Does 2 through 100, inclusive, are
4  ascertained, Plaintiffs will seek leave of Court to amend the Complaint accordingly.

## OVERSTOCK'S BUSINESS

6       23.    Overstock is a leading "closeout" retailer. It offers customers the
7  opportunity to shop conveniently online for brand name merchandise at heavily discounted prices,
8  and offers its suppliers an alternative means of inventory liquidation distribution. Overstock
9  launched its first website through which customers could purchase products in 1999. Since that
10 time, Overstock's overall business and gross revenues have grown steadily and consistently each
11 year since 2000. Overstock's annual revenues for the year ending December 31, 2005, were
12 approximately $804 million. Further, consistent with Overstock's strategy and business model,
13 traffic on the company's website has continued, and continues, to increase.

14      24.    Overstock's economic links to California are substantial. In 2005,
15 California sales amounted to over 15% of the company's overall sales. Overstock does business
16 with a significant number of California-based suppliers and buys a substantial amount of its
17 inventory from such suppliers. In 2005 and the first six months of 2006 alone, Overstock
18 purchased over $144 million in inventory from its California trading partners, which was 17% of
19 Overstock's total purchasing expenditure.

20      25.    Three large vendors in the San Francisco Bay Area accounted for more
21 than $19 million of Overstock's purchasing expenditures on California products during this 18
22 month time period. During that same time period, Overstock purchased over $57 million in
23 advertising services from California companies, including $18 million from San Francisco Bay
24 Area companies Google, Inc., Yahoo, Nextag, and Shopping.com.

25      26.    Each of Overstock's four public offerings was handled by one or more
26 investment banking firms headquartered in San Francisco, California. There are also a substantial
27 number of Overstock shareholders located in California, and California residents own shares of
28 Overstock in at least hundreds of brokerage accounts.

## DEFENDANTS' WRONGFUL ACTIONS

27. Collectively controlling approximately 80% of the prime brokerage market, Defendants act as settlement agents, providing custody for assets and financing for their clients who are hedge funds, money managers, market makers, arbitrageurs, specialists, and other professional investors. Defendants hold themselves out as assuring the proper accounting and settlement of stock trades, including short sales, and providing most of the lending of securities in the marketplace that settles short sales.

28. A "short sale" of stock is generally the sale of a stock the seller does not currently own or that the seller will borrow for delivery on the trade settlement date – the date on which payment is made to settle the stock sale. The seller speculates that the price of the stock will go down so that, if the price of the stock in fact drops by the trade settlement date, the short seller is then able to make a profit from the fall in price.

29. Generally speaking, in a short sale, a person sells stock that he or she does not then own by borrowing the stock and warranting to the stock lender – the broker-dealer – that the loan will be "covered" with shares purchased at a later date. The borrowed stock will come from either the broker-dealer's own inventory, the margin account of other firm clients, or another lender – and the broker-dealer will charge interest on the loan. Defendants, among other things, promise to locate shares of the shorted stock, borrow the stock, and deliver the stock. Defendants charge a fee to the short sellers for locating and delivering the borrowed shares.

30. If Defendants fail to deliver the shares within three days of the short sale, the sale becomes a "naked short sale" and the shares become "fails to deliver."

31. In a naked short sale, the sale to the buyer still occurs, but it is of phantom shares because real shares were never delivered.

32. Naked short selling destabilizes and depresses a company's share price because it removes any supply constraint on stock sales. An unlimited supply of any commodity, including a company's stock, places a downward pressure on the price of that commodity.

33. Since at least January 2005, large quantities of Overstock shares have been the subject of naked short selling. Indeed, there have been instances where the short position in

1  Overstock has exceeded the company's entire supply of outstanding shares.

2      34.    These persistent failures to locate and deliver have created immense downward pressure on the prices of Overstock's securities by creating an unlimited supply of stock for sale. With Defendants' failing to buy or borrow a security for settlement, naked short positions in Overstock have grown very large.

3      35.    Upon information and belief, the vast majority of Defendants' fails to locate and deliver Overstock stock are intentional, and not due to inadvertent errors. Defendants are motivated to intentionally fail to deliver stocks because this removes a core cost from their securities lending business – the cost of providing the security – thus allowing them to earn more money through the charging of fees, commissions and/or interest through phantom securities transactions. Upon information and belief, Defendants earn approximately $10 billion annually from their securities lending operations. Upon information and belief, Defendants also profit from naked short selling of Overstock securities for their own benefit. When Defendants engage in naked short selling on their own account, they are further motivated to intentionally fail to deliver stock to obtain the gains from a drop in price in Overstock stock for their own account.

4      36.    Overstock's securities prices are artificially depressed because of the oversupply caused by failing to settle transactions with shares issued by Overstock. Shares issued by Overstock in the normal course of raising capital as a public company are not being properly valued because of the dilutive effect of the phantom shares, which were not issued by Overstock. Selling but failing to deliver actual shares issued by Overstock has the effect of generating a virtually unlimited supply of Overstock shares for sale.

5      37.    Upon information and belief, Defendants' market manipulation took place in the State of California.

6      38.    Plaintiffs are informed and believe that Defendants and Does 2 through 100, individually and collectively, each and all of them agreed and conspired to engage in the unlawful, unfair, or fraudulent business acts or practices, and/or participated in those acts, and/or aided and abetted, as alleged herein, the acts of each other, and encouraged, ratified, and/or accepted the benefits of the acts of each other.

39. Defendants' wrongful actions have resulted in substantial harm to Plaintiffs. Among the harms Defendants' actions have caused Plaintiffs are: loss of the price of Overstock securities, which have declined substantially; and impairment of Overstock's securities' prices continued ability to grow at historic rates.

40. Each Plaintiff sold Overstock securities during the timeframes alleged herein that Defendants acted wrongfully at prices that were artificially depressed due to Defendants' wrongful conduct. Plaintiffs were damaged in an amount subject to proof at trial, which amount exceeds the jurisdictional minimum of this court.

## FIRST CAUSE OF ACTION
### (Conversion – Plaintiffs against All Defendants and DOES 2-100)

41. Paragraphs 1 through 40 and 49 through 54, inclusive, of this Complaint are incorporated by reference as if set forth in full herein.

42. Plaintiffs own specific property in the form of Overstock securities, which includes intangible benefits and prerogatives susceptible of disposition. Plaintiffs have a legitimate claim to the exclusive interest in each of their securities which are capable of precise definition as well as possession or control. By the conduct complained of, Defendants have substantially wrongfully interfered with Plaintiffs' rights to possession of their property. Plaintiffs have therefore been damaged by the loss of the value of those rights.

43. Plaintiffs are informed and believe that Defendants and Does 2 through 100, individually and collectively, each and all of them, agreed and conspired to engage in the conversion and/or aided and abetted, as alleged herein, the acts of each other, and encouraged, ratified, and/or accepted the benefits of the acts of each other.

## SECOND CAUSE OF ACTION
### (Trespass to Chattels – Plaintiffs against All Defendants and DOES 2-100)

44. Paragraphs 1 through 43 and 49 through 54, inclusive, of this Complaint are incorporated by reference as if set forth in full herein.

45. Defendants have intentionally interfered with Plaintiffs' rights in their Overstock securities, thereby proximately causing injury to Plaintiffs.

46. Plaintiffs are therefore entitled to recover their actual damages suffered by

1 the loss in value in Plaintiffs' Overstock securities and by reason of the impairment of the stock
2 rights they hold as well as the interference with the ordinary and intended operation and exercise
3 of those rights.

4     47.    Plaintiffs are informed and believe that Defendants and Does 2 through
5 100, individually and collectively, each and all of them, agreed and conspired to engage in the
6 trespass to chattels and/or aided and abetted, as alleged herein, the acts of each other, and
7 encouraged, ratified, and/or accepted the benefits of the acts of each other.

## THIRD CAUSE OF ACTION
(California Corporations Code §§ 25400, *et seq.* – Plaintiffs Against All Defendants and DOES 2-100)

10     48.    Paragraphs 1 through 47, inclusive, of this Complaint are incorporated by
11 reference as if set forth in full herein.

12     49.    By virtue of the allegations set forth above, Defendants violated California
13 Corporations Code Sections 25400(a) and (b) *et seq.*, Defendants' violations were committed
14 either directly or indirectly within California.

15     50.    Defendants knew that the transactions they were effecting would be
16 reported solely as sales, without corresponding purchases or changes in the beneficial ownership
17 of Overstock common stock. Defendants acted with the intent to and thereby did create a false or
18 misleading appearance with respect to the market for Overstock securities, in violation of Section
19 25400(a).

20     51.    Defendants effected repeated transactions in Overstock securities to create
21 actual or apparent active trading in Overstock and depress the price of Overstock with the
22 knowledge that such action would depress the price and to induce the sale of that stock by others
23 in violation of Section 25400(b).

24     52.    As a proximate result of Defendants' acts and omissions occurring in
25 California with regard to Overstock, as alleged, Overstock's stock price was manipulated
26 downward, and Plaintiffs were injured by such downward manipulation.

27     53.    Pursuant to the provisions of California Corporations Code Section 25500,
28 Plaintiffs are entitled to, and should be awarded, damages against Defendants for unlawful

1 | manipulation of the price of Overstock stock.

2 |     54. Plaintiffs are informed and believe that Defendants and Does 2 through 100, individually and collectively, each and all of them, agreed and conspired to engage in the violations of 25400 alleged herein and/or willfully, directly and materially participated in violating 25400 as alleged in the foregoing paragraphs 1 through 53, and encouraged, ratified, and/or accepted the benefits of the acts of each other. Defendants and Does 2 through 100 violated 25400 and/or willfully, directly and materially participated in violating 25400 by, for example: (1) effecting transactions in Overstock securities which involved no change in the beneficial ownership of those securities, with the intention of creating a false and misleading appearance with respect to the market for Overstock securities; and/or (2) effecting transactions in Overstock securities to create the actuality or appearance of active trading in Overstock securities or depress the price of Overstock securities; and/or (3) knowingly manipulating transactions in Overstock securities and the records relating to such transactions in order to effect such transactions, in violation of 25400.

**FOURTH CAUSE OF ACTION**
(Violation of California Business & Professions Code §§ 17200, *et seq.*
and §§ 17500, *et seq.* – Plaintiffs against All Defendants and DOES 2-100)

55. Paragraphs 1 through 54, inclusive, of this Complaint are incorporated by reference as if set forth in full herein.

56. Defendants' illegal stock market manipulation constituted unlawful, unfair, and/or fraudulent business acts or practices by the Defendants, and each of them, all in violation of California Business & Professions Code §§ 17200, *et seq.* and §§ 17500, *et seq.*

57. Plaintiffs have been injured by the Defendants' violations of California Business & Professions Code §§ 17200, *et seq.* and §§ 17500, *et seq.* and Defendants have been unjustly enriched at Plaintiffs' expense.

58. Overstock owns the exclusive right to create and issue new shares from its authorized Overstock stock and has a vested right to all ownership interest in such authorized, but un-issued shares ("Overstock's treasury shares"). Overstock is the only entity that has the right to issue from its treasury shares, shares that it may then sell through the medium of a public market

1  or by other means. Notwithstanding, Defendants' actions alleged herein have created phantom shares of Overstock stock, which the Defendants have effectively sold, and through such sale, have taken from Overstock the compensation it was rightly entitled to for the sale of these shares. In doing so, Defendants have stolen Overstock's vested interest in its treasury stock, stolen or otherwise diverted from Overstock the compensation that would otherwise have come to it from the sale of its stock, and Overstock is entitled to restitution from Defendants for the sales of shares of phantom Overstock stock Defendants have wrongfully created and sold.

59. Plaintiffs are informed and believe that Defendants and Does 2 through 100, individually and collectively, each and all of them, agreed and conspired to engage in the unlawful, unfair, or fraudulent business acts or practices, and/or aided and abetted, as alleged herein, the acts of each other, and encouraged, ratified, and/or accepted the benefits of the acts of each other.

60. Plaintiffs are entitled to preliminary and permanent injunctive relief restraining the Defendants and Does 2 through 100, individually and collectively, each and all of them from committing further unfair trade practices and Plaintiff Overstock is entitled to restitution from Defendants according to proof.

**PRAYER**

1. For general damages in an amount according to proof at trial, but of approximately $3,480,000,000.00, well in excess of the jurisdictional minimum of this Court.

2. For special damages in an amount according to proof at trial, in an amount in excess of the jurisdictional minimum of this Court.

3. For punitive damages.

4. For prejudgment interest.

5. For costs;

6. For other applicable remedies as provided in the Civil Code, Corporations Code and Business and Professions Code;

7. For injunctive relief; and

8. For such and further relief as the Court may deem appropriate.

| | |
|---|---|
| Dated: April 30, 2008 | STEIN & LUBIN LLP |
| | By: _____<br>Ellen Cirangle<br>Attorneys for Plaintiffs<br>OVERSTOCK.COM, INC., KEITH CARPENTER, OLIVIER CHENG, MARY HELBURN, ELIZABETH FOSTER, HUGH D. BARRON, DAVID TRENT and MARK MONTAG |

## PROOF OF SERVICE

I, Tina Clarence, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is Transamerica Pyramid, 600 Montgomery Street, 14th Floor, San Francisco, California 94111. On May 29, 2008, I served a copy of the within document(s):

> **SECOND AMENDED COMPLAINT FOR (1) CONVERSION; (2) TRESPASS TO CHATTELS; (3) VIOLATIONS OF CALIFORNIA CORPORATIONS CODE SECTIONS 25400, ET SEQ; (4) UNFAIR BUSINESS PRACTICES (CAL. BUS. & PROF. CODE SECTIONS 17200, *et seq* AND SECTIONS 17500, *et seq.*)**

[X]  (BY EMAIL) by attaching a .pdf copy of the document(s) listed above to an email addressed to overstock.service@dpw.com pursuant to Paragraph 2 of the September 20, 2007 Stipulation and Order Re Related Case Procedures and Electronic Service in this case.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 29, 2008, at San Francisco, California.

*/s/ Tina Clarence*
_____
Tina Clarence

55790003/355936v1                                                                 Case No. CGC-07-460147

PROOF OF SERVICE