```
 1  Theodore A. Griffinger, Jr. (SBN 66028)
    Ellen A. Cirangle (SBN 164188)
 2  Daniel K. Slaughter (SBN 136725)
    STEIN & LUBIN LLP
 3  600 Montgomery Street, 14th Floor
    San Francisco, California 94111
 4  Telephone:   (415) 981-0550
    Facsimile:   (415) 981-4343
 5  tgriffinger@steinlubin.com
    ecirangle@steinlubin.com
 6  dslaughter@steinlubin.com

 7  Attorneys for Plaintiffs
```

ENDORSED
FILED
Superior Court of California
County of San Francisco

MAY 29 2008

GORDON PARK-LI, Clerk
BY: _____MARIA SANCHEZ_____
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| JOSEPH AVENIUS, an individual; JUANITA AVENIUS, an individual; JOHN BRADSHAW, an individual; LIZABETH BRADSHAW, an individual; MARK BRADY, an individual; DAVID CONCORDIA, an individual; RICHARD CONTI, an individual; DYNAPURE TECHNOLOGIES, INC., a Nevada corporation; DAVID EVERSWICK, an individual; JOYCE EVERSWICK, an individual; LAWRENCE GRECO, an individual; FEB GRUMMAN, an individual; EDWARD HATCH, an individual; MARY HELBURN, an individual; DONNA HUTCHESON, an individual; LELA M. HUTCHESON, an individual; RAY HUTCHESON, an individual; DONALD JOHNSON, an individual; ANTHONY KEHLENBECK, an individual; MARK KOLESINSKY, an individual; D. KEVIN LESTER, an individual; DAVID LOUNDY, an individual; MICHAEL MATHER, an individual; PHILIP MATHEWS, an individual; DONALD MILLER, an individual; MARY ANNE MILLER, an individual; DANIEL PALERMO, an individual; QUINTET, LLC, a Nevada limited liability company; JEFFERY W. RHOADS, an individual; ROBIN RODABAUGH, an individual; PETER ROSEN, an individual; ALAN ROSS, an individual; DAVID RUBIN, an individual; ALLEN SHINN, an individual; RIZALINA SMART, an individual; MERIDETH | Case No. CGC-06-453422<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1) VIOLATIONS OF CALIFORNIA CORPORATIONS CODE SECTIONS 25400, *ET SEQ.*<br><br>2) UNFAIR BUSINESS PRACTICES (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.* AND §§ 17500, *ET SEQ.*)<br><br>**JURY TRIAL DEMANDED**<br><br>Complaint Filed: June 22, 2006 |

|   |   |
|---|---|
| 1 | SMYKOWSKI, an individual; ROBERT SMYKOWSKI, an individual; SPARTAN MARKING LTD a United Kingdom company; THOMAS VALLARINO, an individual; LEONARD VIDAL, an individual; VALERIE VIDAL, an individual; IRA WALTER, an individual; LINDA WALTER, an individual; NORMAN WALTER, an individual; DORIS WALTER, an individual; ROBERT WILEN, an individual; and JEFFREY WILLIAMS, an individual, |

Plaintiffs,

v.

BANC OF AMERICA SECURITIES LLC; THE BANK OF NEW YORK; BEAR, STEARNS SECURITIES CORP.; CITIGROUP, INC.; CREDIT SUISSE (USA) INC.; DEUTSCHE BANK SECURITIES, INC.; THE GOLDMAN SACHS GROUP, INC.; LEHMAN BROTHERS INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.; MORGAN STANLEY & CO., INCORPORATED; UBS SECURITIES LLC, and DOES 2 through 100,

Defendants.

Plaintiffs Joseph Avenius, Juanita Avenius, John Bradshaw, Lizabeth Bradshaw, Mark Brady, David Concordia, Richard Conti, DynaPure Technologies, Inc., David Everswick, Joyce Everswick, Lawrence Greco, Feb Grumman, Edward Hatch, Mary Helburn, Donna Hutcheson, Lela M. Hutcheson, Ray Hutcheson, Donald Johnson, Anthony Kehlenbeck, Mark Kolesinsky, D. Kevin Lester, David Loundy, Michael Mather, Philip Mathews, Donald Miller, Mary Anne Miller, Daniel Palermo, Quintet, LLC, Jeffery W. Rhoads, Robin Rodabaugh, Peter Rosen, Alan Ross, David Rubin, Allen Shinn, Rizalina Smart, Merideth Smykowski, Robert Smykowski, Spartan Marketing Ltd, Thomas Vallarino, Leonard Vidal, Valerie Vidal, Ira Walter, Linda Walter, Norman Walter, Doris Walter, Robert Wilen, and Jeffrey Williams ("Plaintiffs"), for their Complaint, allege as follows:

## NATURE OF THE CASE

1. Defendants participated in a massive, illegal stock market manipulation scheme, the effect of which has been to wrongfully manipulate the price of Novastar Financial, Inc. ("NFI") securities. Defendants control 83% of the prime brokerage market. At all relevant times herein, Defendants took orders for transactions in NFI's securities, acting both as principal and agent, including purchases, sales and short sales of the stock of NFI. Defendants had no intention of covering such orders with borrowed stock or with stock issued by NFI, as they are required to do. Rather, Defendants intentionally failed to deliver NFI stock for settlements of these positions, thereby effecting transactions in NFI that involve no change or improper change in the beneficial ownership of the security. Defendants' actions caused and continue to cause a false and misleading appearance of the market for NFI, deceiving investors about the pricing and availability of the supply of shares for sale while intentionally causing dramatic distortions with regard to the nature and amount of active trading in NFI securities, which have caused NFI's share price to drop. Plaintiffs, individual shareholders of NFI, were harmed by the drop in and depression of NFI's stock price. As set forth below, Defendants' illegal conduct gives rise to claims for (i) violations of California Corporations Code §§ 25400, *et seq.* and (ii) unfair business practices in violation of Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.*

## PARTIES

2. Joseph and Juanita Avenius, (collectively "Avenius") are individuals and residents of Hillsborough, New Jersey and are current or former owners of NFI securities.

3. John and Lizabeth Bradshaw (collectively "Bradshaw") are individuals and residents of Indianapolis, Indiana and are current or former owners of NFI securities.

4. Mark Brady ("Brady") is an individual and resident of Dallas, Texas and is a current or former owner of NFI securities.

5. David Concordia ("Concordia") is an individual and resident of Worcester, Massachusetts and is a current or former owner of NFI securities.

6. Richard Conti ("Conti") is an individual and resident of Martinez, Georgia and is a current or former owner of NFI securities.

7. DynaPure Technologies, Inc. ("DynaPure") is a Nevada corporation with its principal place of business in Carson City, Nevada and is a current or former owner of NFI securities.

8. David and Joyce Everswick (collectively "Everswick") are individuals and residents of Succasunna, New Jersey and are current or former owners of NFI securities.

9. Lawrence Greco ("Greco") is an individual and resident of Moraga, California and is a current or former owner of NFI securities.

10. Feb Grumman ("Grumman") is an individual and resident of Chicago, Illinois and is a current or former owner of NFI securities.

11. Edward Hatch ("Hatch") is an individual and resident of Granite Bay, California and is a current or former owner of NFI securities.

12. Mary Helburn ("Helburn") is an individual and resident of Idaho Falls, Idaho, and is a current or former owner of NFI securities.

13. Donna Hutcheson ("D. Hutcheson") is an individual and resident of Hideaway, Texas, and is a current or former owner of NFI securities.

14. Lela M. Hutcheson ("L. Hutcheson") is an individual and resident of Hideaway, Texas, and is a current or former owner of NFI securities.

15. Ray Hutcheson ("R. Hutcheson") is an individual and resident of Hideway, Texas, and is a current or former owner of NFI securities.

16. Donald Johnson ("D. Johnson") is an individual and resident of Casa Grande, Arizona and is a current or former owner of NFI securities.

17. Anthony Kehlenbeck ("Kehlenbeck") is an individual and resident of Northfork, California and is a current or former owner of NFI securities.

18. Mark Kolesinsky ("Kolesinsky") is an individual and resident of Laveen, Arizona and is a current or former owner of NFI securities.

19. D. Kevin Lester ("Lester") is an individual and resident of Fresno, California and is a current or former owner of NFI securities.

20. David Loundy ("Loundy") is an individual and resident of Glencoe, Illinois and is a current or former owner of NFI securities.

21. Michael Mather ("Mather") is an individual and resident of Mt. Pleasant, South Carolina and is a current or former owner of NFI securities.

22. Philip Mathews ("Mathews") is an individual and resident of San Francisco, California and is a current or former owner of NFI securities.

23. Donald Miller ("D. Miller") is an individual and resident of Duncanville, Texas and is a current or former owner of NFI securities.

24. Mary Anne Miller ("M. Miller") is an individual and resident of Dallas, Texas and is a current or former owner of NFI securities.

25. Daniel Palermo ("Palermo") is an individual and resident of Irvington, New York and is a current or former owner of NFI securities.

26. Quintet, LLC ("Quintet") is a Nevada limited liability company with its principal place of business in Reno, Nevada and is a current or former owner of NFI securities.

27. Jeffery W. Rhoads ("Rhoads") is an individual and resident of St. Charles, Missouri and is a current or former owner of NFI securities.

28. Robin Rodabaugh ("Rodabaugh") is an individual and resident of Atwater, Ohio and is a current or former owner of NFI securities.

29. Peter Rosen ("Rosen") is an individual and resident of Jersey City, New Jersey and is a current or former owner of NFI securities.

30. Alan Ross ("Ross") is an individual and resident of Camden E, Ontario, Canada and is a current or former owner of NFI securities.

31. David Rubin ("Rubin") is an individual and resident of Sequim, Washington and is a current or former owner of NFI securities.

32. Allen Shinn ("Shinn") is an individual and resident of London, England and is a current or former owner of NFI securities.

33. Rizalina "Glenda" Smart ("Smart") is an individual and resident of Fayetteville, Georgia and is a current or former owner of NFI securities with her late husband

Tom Smart.

34. Merideth Smykowski is an individual and resident of Poway, California and is a current or former owner of NFI securities.

35. Robert Smykowski ("Smykowski") is an individual and resident of Poway, California and is a current or former owner of NFI securities.

36. Spartan Marketing Ltd, (Spartan") is a private limited company incorporated in the United Kingdom with its primary place of business in London, England, and is a current or former owner of NFI securities.

37. Thomas Vallarino ("Vallarino") is an individual and resident of Manhattan Beach, California and is a current or former owner of NFI securities.

38. Leonard and Valerie Vidal (collectively "Vidal") are individuals and residents of Millersville, Maryland, and are current or former owners of NFI securities.

39. Linda Walter ("L. Walter") is an individual and resident of Tarrytown, New York and is a current or former owner of NFI securities.

40. Ira Walter ("I. Walter") is an individual and resident of London, England and is a current or former owner of NFI securities.

41. Norman and Doris Walter (collectively "N. Walter"), are individuals and residents of Southbury, Connecticut and are current or former owners of NFI securities.

42. Robert Wilen ("Wilen"), is an individual and resident of Palo Alto, California and is a current or former owner of NFI securities.

43. Jeffrey Williams ("Williams"), is an individual and resident of Houston, Texas and is a current or former owner of NFI securities.

44. Defendant Banc of American Securities LLC, ("Banc of America") is a Delaware corporation. Upon information and belief, Banc of America has its principal office in San Francisco, California. Upon information and belief, Banc of America is the tenth largest prime brokerage firm in terms of aggregate client assets (2.0% of prime brokerage market). Furthermore, Banc of America is a market specialist in NFI stock. Banc of America also engages in proprietary trading for its own benefit.

45.     Defendant The Bank of New York is a New York corporation. Bank of New York is in the business of, among other things, providing prime brokerage services and securities lending. The Bank of New York is qualified to and does do business in the state of California. The Bank of New York also engages in proprietary trading for its own benefit.

46.     Defendant Bear, Stearns Securities Corp. ("Bear Stearns") is a Delaware Corporation with its principal place of business in New York, New York. Upon information and belief Bear Stearns is the second largest prime brokerage firm in terms of aggregate client assets (20.9% of the prime brokerage market). Bear Stearns is qualified to and does do business in the state of California. Bear Stearns also engages in proprietary trading for its own benefit.

47.     Defendant Citigroup, Inc. ("Citigroup") is a Delaware Corporation. Upon information and belief Citigroup is the sixth largest prime brokerage firm in terms of aggregate client assets (2.7% of the prime brokerage market). Citigroup is qualified to and does do business in the state of California. Citigroup also engages in proprietary trading for its own benefit.

48.     Defendant Credit Suisse (USA) Inc. ("Credit Suisse") is a Delaware corporation. Upon information and belief, Credit Suisse is the ninth largest prime brokerage firm in terms of aggregate client assets (2.2% of the prime brokerage market). Credit Suisse is qualified to and does do business in the state of California. Credit Suisse also engages in proprietary trading for its own benefit.

49.     Defendant Deutsche Bank Securities, Inc. ("Deutsche Bank") is a Delaware corporation. Upon information and belief, Deutsche Bank is the eighth largest prime brokerage firm in terms of aggregate client assets (2.5% of the prime brokerage market). Deutsche Bank is qualified to and does do business in the state of California. Deutsche Bank also engages in proprietary trading for its own benefit.

50.     Defendant The Goldman Sachs Group, Inc. ("Goldman") is a Delaware corporation with its principal place of business in New York, New York. Upon information and belief, Goldman is the third largest prime brokerage firm in terms of aggregate client assets (16.5% of the prime brokerage market.) Goldman is qualified to and does do business in the state of California. Goldman also engages in proprietary trading for its own benefit.

1      51.    Defendant Lehman Brothers Inc. ("Lehman") is a Delaware corporation. Upon information and belief, Lehman is the seventh largest prime brokerage firm in terms of aggregate client assets (2.6% of the prime brokerage market). Lehman is qualified to and does do business in the state of California. Lehman also engages in proprietary trading for its own benefit.

    52.    Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") is a Delaware corporation. Upon information and belief, Merrill Lynch is the fifth largest prime brokerage firm in terms of aggregate client assets (4.6% of the prime brokerage market). Merrill Lynch is qualified to and does do business in the state of California. Merrill Lynch also engages in proprietary trading for its own benefit.

    53.    Defendant Morgan Stanley & Co., Incorporated ("Morgan Stanley") is a Delaware corporation. Upon information and belief Morgan Stanley is the largest prime brokerage firm in terms of aggregate client assets (23.1% of the prime brokerage market). Morgan Stanley is qualified to and does do business in the state of California.

    54.    Plaintiffs were ignorant of a defendant's name, stated that fact in the complaint, and designated the defendant by a fictitious name. That defendant's true name has now been discovered and Plaintiffs hereby amend the complaint to substitute Defendant UBS Securities LLC, ("UBS") a Delaware corporation, for DOE Number 1. Upon information and belief, UBS is the fourth largest prime brokerage firm in terms of aggregate client assets (5.9% of the prime brokerage market). UBS is qualified to and does do business in the state of California. UBS also engages in proprietary trading for its own benefit.

    55.    The names and capacities of the Defendants named as Does 2 through 100, inclusive, are presently unknown to the Plaintiffs. Plaintiffs are informed and believe that Does 2 through 100, inclusive, did the same actions with the same intent as alleged against Defendants herein, participated in those actions and/or are the affiliates, partners, co-venturers, co-conspirators and/or aiders and abettors of the other Defendants, and each other, and Defendants agreed, conspired and participated with the other Defendants in doing the things alleged herein, and ratified and accepted the benefits of the acts of the other Defendants, such that they are in

1  some manner responsible for the acts and omissions complained of herein. Accordingly, these
2  Defendants, each of whom is legally responsible for the acts alleged herein, are sued by these
3  fictitious names. When the identities and capacities of Does 2 through 100, inclusive, are
4  ascertained, Plaintiffs will seek leave of Court to amend the Complaint accordingly.

### NFI'S BUSINESS

56.   NovaStar Financial, Inc. (NYSE:NFI) is a specialty finance company that originates, purchases, sells, invests in and services residential nonconforming loans. Founded in 1996, NovaStar efficiently brings together the capital markets, a nationwide network of mortgage brokers, and American families financing their homes. NovaStar is headquartered in Kansas City, Missouri, and has lending operations nationwide including California.

57.   Structured as a Real Estate Investment Trust (REIT), NFI manages a long-term mortgage asset portfolio consisting of nonconforming mortgage loans acquired primarily from its wholly owned subsidiary, NovaStar Mortgage, Inc. ("NMI"), and mortgage securities retained in securitization transactions. NFI regularly securitizes the mortgage loans it originates by pooling mortgage loans to serve as collateral for asset-back bonds. From these securitizations, NFI generally retains certain mortgage securities, which primarily represent the right to receive the net cash flows of the underlying mortgage loan collateral in excess of bond expenses and cost of funding.

58.   NFI operates its mortgage lending operation through NMI. As NFI stated in its Form 10-K for 2003, "[t]he primary function of our mortgage lending operations is to generate nonconforming loans, the majority of which will serve as collateral for our mortgage securities." NMI has developed an independent nationwide network of loan brokers and mortgage lenders who submit mortgage loans to it.

59.   For 2005, NFI reported that its portfolio of loans under management was $14 billion, up 15% from 2004. Total nonconforming loan production was $9.3 billion, up 10% from 2004. Book value grew 21% between 2004 and 2005. For full-year 2005, NovaStar reported $132.5 million in net income available to common shareholders, up 21% from 2004. Earnings per share available to common stockholders was $4.42, a 4% increase on a larger

1  number of shares outstanding compared with $4.24 in 2004. Portfolio net interest income for 2005 was $219.9 million, an increase of 49%.

60. For full-year 2004, NFI reported that their total portfolio of loans under management had increased to $12.2 billion, up 69% from 2003's $7.2 billion. Total nonconforming loan production for 2004 was $8.4 billion, a 58% increase over 2003, which was in the upper-end of the range that NFI had projected at the beginning of the year - and more than double the $2.5 billion that NFI originated in 2002. Gross interest income from the portfolio of loans NFI manages was $224 million, $170 million, and $107 million for 2004, 2003 and 2002, respectively. Taxable income, the figure from which the dividend paid to shareholders must be calculated, was $250.5 million, $137.8 million, and $49.5 million for 2004, 2003 and 2002, respectively. Net (GAAP) income for the first 9 months of 2005 was $132.4 million, up from $109.1 million in 2004. The company's taxable income, originations, and profitability have continued to increase substantially every year since 2001. However, beginning in 2004 forward, NFI's share price unexpectedly dropped over fifty-percent.

## DEFENDANTS' WRONGFUL ACTIONS

61. Defendants are in the prime brokerage business. A prime broker acts as settlement agent, providing custody for assets and financing for its clients, who are hedge funds, money managers, market makers, arbitrageurs, specialists and other professional investors. Prime brokers are responsible for assuring the proper accounting and settlement of stock trades, including short sales. Prime brokers are responsible for most of the lending of securities in the marketplace that constitute short sales.

62. Collectively, Defendants control 83% of the prime brokerage market.

63. Generally speaking, in a short sale, a person sells stock that he or she does not then own, by borrowing the stock and warranting to the stock lender that the loan will be "covered" with shares purchased at a later date. The seller speculates that the price of the stock will go down so that, when the loan is "covered," he or she will profit from the drop in price.

64. The prime brokers are responsible in short sales for, among other things, locating shares of the shorted stock, borrowing the stock, and delivering the stock to the buyer.

65. Securities regulations generally require that sales of shorted stock must be borrowed from investors who hold their shares in margin accounts or that are otherwise made available for lending by institutions. Shares in cash accounts or retirement accounts cannot be borrowed as part of short sales, thus limiting the supply of shares that are available for short sales.

66. Prime brokers charge a fee to the short sellers for the service of delivering the borrowed shares to the buyer.

67. Prime brokers are required to deliver the stock within three days of the short sale. If the prime broker fails to deliver the security to the buyer within the normal three day settlement period, the shares become "fails to deliver" and the sale is a "naked short sale."

68. In a fail to deliver, the sale to buyer still occurs, but it is of phantom shares, because real shares were never borrowed and delivered.

69. Upon information and belief, the vast majority of fails to deliver where the fails are persistent, are intentional, and not due to inadvertent errors. Prime brokers are motivated to intentionally fail to deliver stocks because this removes a core cost from their securities lending business – the cost of providing the security, thus allowing them to earn more money through the charging of fees, commissions and/or interest through phantom securities transactions. Upon information and belief, the prime brokers earn approximately $10 billion annually from their securities lending operations. Upon information and belief, Defendants also profit from naked short selling of NFI securities for their own benefit. When Defendants engage in naked short selling for their own account, they are further motivated to intentionally fail to deliver stock to obtain the gains from a drop in price in NFI stock for their own account.

70. A persistent large number of fails to deliver create immense downward pressure on the price of a company's stock. Failing to deliver shares can create an unlimited supply of the stock for sale. Without supply side constraints, the markets for publicly traded stocks cannot price the stocks at their fair value. Without having to buy or borrow a security for settlement, naked short positions can grow very large, which puts further downward pressure on the stock's price.

71. "Fails to deliver" lists are prepared and published daily detailing each

company as to which there has been a substantial number of failures to deliver stock within the 'national clearance and settlement system' at the Depository Trust and Clearing Corporation ("DTCC") and its subsidiaries. Upon information and belief, these lists represent only a portion of the actual fails to deliver, as additional fails to deliver take place outside of the DTCC clearing system. These lists began to be published in January, 2005.

72. NFI has been on these lists consistently since they were first published meaning that large quantities of stock began failing to be properly delivered for settlements with shares issued by NFI since at least January 2005.

73. Upon information and belief, in the fourth quarter of 2004, failures to deliver ran as high as 12.5% of the shares issued by NFI, or one of every eight shares authorized to trade, and these fails are just what is reported through the DTCC system as fails. For 2005, the data show the failures to deliver running as high as 6.5% of NFI's shares. This pattern of substantial and persistent failures to deliver NFI stock continues in 2006.

74. Upon information and belief the Defendants, who control 83% of the prime brokerage market, have at all times alleged herein and continue to, intentionally fail to deliver NFI stock to buyers in short sales transactions.

75. These failures by Defendants to deliver NFI issued stock for proper settlement have created dramatic distortions with regard to the nature and amount of trading in NFI's securities.

76. NFI's share price is depressed because of the oversupply caused by failing to settle transactions with shares issued by NFI. Shares issued by NFI in the normal course of raising capital as a public company are not being properly valued because of the dilutive effect of the phantom shares, which were not issued by NFI. Selling but failing to deliver actual shares issued by NFI has the effect of generating a virtually unlimited supply of NFI shares for sale, which negatively alters normal supply side market constraints found in a properly functioning market.

77. Upon information and belief, Defendants' market manipulation took place in the state of California.

1    78.    Plaintiffs are informed and believe that Defendants and Does 2 through 100, individually and collectively, each and all of them, agreed and conspired to engage in the unlawful, unfair, or fraudulent business acts or practices, and/or participated in those acts, and/or aided and abetted, as alleged herein, the acts of each other, and encouraged, ratified, and/or accepted the benefits of the acts of each other.

## DAMAGE TO NFI SHAREHOLDERS RESULTING FROM DEFENDANTS' WRONGFUL CONDUCT

79.    Defendants' wrongful actions have resulted in substantial harm to Plaintiffs. Among the harms Defendants' actions have caused Plaintiffs are: loss of the price of NFI securities, and impairment of NFI's securities' continued ability to grow at historic rates.

80.    Plaintiffs sold NFI securities during the timeframes alleged herein that Defendants acted wrongfully at prices that were artificially depressed due to Defendants' wrongful conduct. Plaintiffs were damaged in an amount subject to proof at trial, which amount exceeds the jurisdictional minimums of this court.

## FIRST CAUSE OF ACTION
(California Corporations Code §§ 25400, et seq. – Plaintiffs Against All Defendants and Does 2-100)

81.    Paragraphs 1 through 79, inclusive, of this Complaint are incorporated by reference as if set forth in full herein.

82.    By virtue of the allegations set forth above, Defendants violated California Corporations Code Sections 25400(a) and (b) et seq. Defendants' violations were committed either directly or indirectly within California.

83.    Defendants knew that the transactions they were effecting would be reported solely as a sale, without a corresponding purchase or change in the beneficial ownership of NFI common stock. Defendants acted with the intent to and thereby did create a false or misleading appearance with respect to the market for NFI's securities, in violation of Section 25400(a).

84.    Defendants effected repeated transactions in NFI securities, creating actual or apparent active trading in NFI and depressing the price of NFI with the knowledge that such

action would depress the price and to induce the sale of that stock by others in violation of Section 25400(b).

85. As a proximate result of Defendants' acts and omissions occurring in California with regard to NFI, as alleged, NFI's securities' prices were manipulated downward, and Plaintiffs were injured by such downward manipulation.

86. Pursuant to the provisions of California Corporations Code § 25500, Plaintiffs are entitled to, and should be awarded, damages against Defendants for unlawful manipulation of the price of NFI securities.

87. Plaintiffs are informed and believe that Defendants and Does 2 through 100, individually and collectively, each and all of them, agreed and conspired to engage in the violations of 25400 alleged herein and/or willfully, directly and materially participated in violating 25400 as alleged in the foregoing paragraphs 1 through 86, and encouraged, ratified, and/or accepted the benefits of the acts of each other. Defendants and Does 2 through 100 violated 25400 and/or willfully, directly and materially participated in violating 25400 by, for example: (1) effecting transactions in NFI securities which involved no change in the beneficial ownership of those securities, with the intention of creating a false and misleading appearance with respect to the market for NFI securities; and/or (2) effecting transactions in NFI securities to create the actuality or appearance of active trading in NFI securities or depress the price of NFI securities; and/or (3) knowingly manipulating transactions in NFI securities and the records relating to such transactions in order to effect such transactions, in violation of 25400.

### SECOND CAUSE OF ACTION
(Violation of California Business & Professions Code §§ 17200, *Et Seq.* and §§ 17500, *Et Seq.* – Plaintiffs Against All Defendants and Does 2-100)

88. Paragraphs 1 through 86, inclusive, of this Complaint are incorporated by reference as if set forth in full herein.

89. Defendants' illegal stock market manipulation constituted unlawful, unfair, or fraudulent business acts or practices by the Defendants, and each of them, all in violation of California Business & Professions Code §§ 17200, *et seq.* and §§ 17500, *et seq.*

90. Plaintiffs have been injured by the Defendants violations of California Business & Professions Code §§ 17200, *et seq.* and §§ 17500, *et seq.* and Defendants have been unjustly enriched at Plaintiffs' expense.

91. Plaintiffs are informed and believe that Defendants and Does 2 through 100, individually and collectively, each and all of them, agreed and conspired to engage in the unlawful, unfair, or fraudulent business acts or practices, and/or aided and abetted, as alleged herein, the acts of each other, and encouraged, ratified, and/or accepted the benefits of the acts of each other.

92. Plaintiffs are entitled to preliminary and permanent injunctive relief restraining the Defendants and Does 2 through 100, individually and collectively, each and all of them from committing further unfair trade practices.

## **PRAYER**

WHEREFORE, Plaintiffs seek judgment against Defendants as follows:

1. For general damages in an amount according to proof at trial, but well in excess of the jurisdictional minimum of this Court.

2. For special damages in an amount according to proof at trial, in an amount in excess of the jurisdictional minimum of this Court.

3. For punitive damages.

4. For prejudgment interest.

5. For costs;

6. For other applicable remedies as provided in the Civil Code, Corporations Code and Business and Professions Code;

7. For injunctive relief; and

8. For such and further relief as the Court may deem appropriate.

1  Dated: April 30, 2008                    STEIN & LUBIN LLP

                                            By: _____
                                            Ellen Cirangle
                                            Attorneys for Plaintiffs

## PROOF OF SERVICE

I, Tina Clarence, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is Transamerica Pyramid, 600 Montgomery Street, 14th Floor, San Francisco, California 94111. On May 29, 2008, I served a copy of the within document(s) pursuant to the stipulation by the parties:

**SECOND AMENDED COMPLAINT FOR: (1) VIOLATIONS OF CALIFORNIA CORPORATIONS CODE SECTIONS 25400, *ET SEQ.*; (2) UNFAIR BUSINESS PRACTICES (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.* AND §§ 17500, *ET SEQ.*)**

[X]  (BY EMAIL) by attaching a .pdf copy of the document(s) listed above to an email addressed to avenius.service@dpw.com pursuant to Paragraph 2 of the September 20, 2007 Stipulation and Order Re Related Case Procedures and Electronic Service in this case.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 29, 2008, at San Francisco, California.

_____
Tina Clarence

54190002/355934v1                                                         Case No. CGC-06-453422

PROOF OF SERVICE