David W. Elrod
ELROD, PLLC
500 N. Akard Street
Suite 3000
Dallas, Texas  75201
(214) 855-5188 Telephone
(214) 855-5183 Facsimile
Attorney for TransCanada PipeLines
Limited and Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
|  | : | Chapter 11 |
|  | : |  |
| In re: | : | Case Nos. 08-13555 (JMP) |
|  | : |  |
| LEHMAN BROTHERS HOLDINGS | : | (Jointly Administered) |
| INC., et. al., | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
| Debtor. | : |  |

**TRANSCANADA PIPELINES LIMITED'S AND CERTAIN AFFILIATES'[1]
LIMITED OBJECTION TO DEBTORS' MOTION TO (A) SCHEDULE A SALE
HEARING; (B) ESTABLISH SALES PROCEDURES; (C) APPROVE A BREAK-UP
FEE; AND (D) APPROVE THE SALE OF THE PURCHASED ASSETS AND THE
ASSUMPTION AND ASSIGNMENT OF CONTRACTS RELATING TO THE
<u>PURCHASED ASSETS [D.I. # 60]</u>**

TransCanada Pipelines Limited and its Affiliates (collectively "TCPL"), hereby object to

the Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C)

---

[1] TransCanada Pipelines Limited and its affiliates, NOVA Gas Transmission Ltd., Foothills Pipe Lines Ltd., ANR Pipeline Company, Great Lakes Gas Transmission Limited Partnership, Northern Border Pipeline Company, Gas Transmission Northwest Corporation, CrossAlta Gas Storage & Services Ltd., and TransCanada Gas Storage Partnership shall be referred to herein collectively as "TCPL."

Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets [D.I. # 60] (hereinafter the "Sale Motion") and in support thereof states as follows:

## BACKGROUND

1. TCPL has significant contractual agreements with Lehman Brothers Commodity Services Inc., Eagle Energy Partnership, ULC, and Eagle Energy Partners I, LP (collectively referred to as "Eagle"), totaling in excess of $250 million.

2. On September 15, 2008, (the "Petition Date"), Lehman Brothers Holdings Inc. (the "Debtor") filed for bankruptcy protection with the United States Bankruptcy Court for the Southern District of New York pursuant to Chapter 11 of Title 11 of the United States Code.

3. On September 17, 2008, the Debtor filed the Sale Motion. The timing of the filing of the Sale Motion provided parties in interest with two business days to object and to appear at the hearing on the Sale Motion.[2]

## THE SALE MOTION

4. Pursuant to the Sale Motion, the Debtor proposes to sell certain "Purchased Assets" to Barclays Capital Inc. ("Barclay") for $1.7 billion in cash plus the assumption of certain obligations and expenses. The Purchased Assets appear to include Eagle.

5. In addition to the sale of the Purchased Assets, Barclay "shall have the right, but not the obligation, to take assignment of contracts and leases which are designated for assumption and assignment by Purchaser." Debtors' Sale Motion at p.6. Barclay will have the

---

[2] TCPL reserves the right to further object to the timing and notice of the Sale Motion and Sale Hearing.

**TRANSCANADA PIPELINES LIMITED'S AND CERTAIN AFFILIATES' LIMITED OBJECTION TO DEBTORS' MOTION TO (A) SCHEDULE A SALE HEARING; (B) ESTABLISH SALES PROCEDURES; (C) APPROVE A BREAK-UP FEE; AND (D) APPROVE THE SALE OF THE PURCHASED ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS RELATING TO THE PURCHASED ASSETS [D.I. # 60]    2**

opportunity to designate certain "Closing Date Contracts" which will be assumed and assigned on the Closing Date.  Further, Barclay may then take sixty (60) days to decide whether it wants to pay the Cure Amounts and assume the obligations of certain other "Designated Contracts."

6. To date, neither the Closing Date Contracts, nor the Designated Contracts, have been identified.  However, the Sale Motion contemplates that at the conclusion of the Sale Hearing, the assumption and assignment of the Closing Date Contracts would be approved.  In addition, the Sale Motion requests that the Court "find all anti-assignment provisions of the Closing Date contracts to be unenforceable under section 365(f) of the Bankruptcy Code." Debtors' Sale Motion at p.15-16.

7. Although neither the Debtor nor Barclay have identified which contracts will be assumed and assigned, the Sale Motion could be interpreted to permit the Debtor to assume and assign to Barclay certain non-debtor contracts.

8. Section 1.1. of the Asset Purchase Agreement (the "APA") defines "Purchased Assets" as including, among other things, ".. . (h) the Purchased Contracts... .{and] (q) the equity interests and assets (at the election of Purchaser in its sole discretion prior to the entry of the Sale Order) of Eagle Energy Management LLC..."

9. Section 2.5 of the APA provides that:

> "the Purchaser shall have the right upon notice to Seller to designate *any contract related to the assets purchased* from the Seller by Purchaser or its Affiliates (the "Related Contracts") as either (a) a Purchased Contract or (2) a Contract not designated as a Purchased Contract ("a Rejected Contract"). Until a Related Contract is so designated, Buyer shall be obligated to pay or cause to be paid ordinary course amounts due under such contracts in accordance with the terms thereof If a Related Contract is designated as a Purchased Contract, such Purchased Contract shall be assigned to the Purchaser and upon such assignment Purchaser shall be obligated to pay or cause to be paid the cure amount in respect

of such Purchased Contract. If a Related Contract is designated as a Rejected Contract, Purchaser shall have no further obligations in respect thereof."

(emphasis added)

10. Neither the APA nor the Sale Motion provide any additional explanation of the breadth of what the parties believe to be a "contract related to the assets." However, under a cursory review of the documents, it can easily be inferred that the Debtors intend to (a) sell its interests in Eagle to Barclay; and (b) provide Barclay with the right to assume or reject any contracts by and between Eagle and any third-parties. This is simply not allowed.

## ARGUMENT

11. Section 365 of Title 11 of the Bankruptcy Code provides that the trustee or debtor may assume or reject any executory contract or unexpired lease *of the debtor*. 11 U.S.C. §365(a). The ability to assume or reject executory contracts and leases is a protection afforded through the Bankruptcy Code and is thus only available to debtors.

12. The Bankruptcy Court's exclusive jurisdiction over a bankrupt debtor and its property does not extend to "a solvent independent subsidiary of the debtor merely because its stock is held by the debtor." *In re Beck Industries,* 479 F.2d 410, 415 (2d Cir.), *cert. denied,* 414 U.S. 858 (1973). Therefore, the Court does not have jurisdiction over the Contract between TCPL and Eagle and it cannot be part of the sale process.

13. Furthermore, simply because the bankruptcy parent owns the stock of the subsidiary does not make the subsidiary's assets property of the estate. *In re Mego International, Inc.* 30 B.R. 479, 481 (S.D. N.Y. 1983). *See also In re Beck Industries, Inc.,* 479 F.2d at 415. (internal citations omitted) (ownership of the non-debtor subsidiary's stock is not the equivalent of ownership of the subsidiary's property or assets). The TCPL Contracts are with Eagle, not the

Debtor, and as such, the Debtor cannot sell or assign the TCPL Contract to Barclay as part of a Section 363 sale or as part of a Section 365 assumption or rejection process.[3]

## CONCLUSION

WHEREFORE, for the reasons stated above, TCPL files this limited objection to the relief requested in the Sale Motion and requests that the Court grant such other and further relief as deemed just and proper.

Dated: September 18, 2008                                    Respectfully submitted,

                                                                              /s/ David W. Elrod
                                                             David W. Elrod
                                                             Texas State Bar No. 06591900
                                                             **ELROD, PLLC**
                                                             500 N. Akard Street, Suite 3000
                                                             Dallas, Texas 75201
                                                             Telephone:    214-855-5188
                                                             Facsimile:    214-855-5183

                                                             **ATTORNEYS FOR TRANSCANADA PIPELINES LIMITED**

---

[3] A "parent company does not hold the assets of a subsidiary." *In re Insilco Tech., Inc.,* 351 BR. 313, 321 (Bankr. D. Del. 2006). *See also In re Murchison,* 54 B.R. 721, 728 (Bankr. N.D. Tex. 1985) (Title to corporate property is held by a corporation, and not by the shareholder.). As a result, "property of the [bankruptcy] estate includes the debtor's stock in a subsidiary but not the assets of the subsidiary." *In re Guyana Dev.Corp.,* 168 B.R. 192 (Bankr. S.D. Tex. 1994). Accordingly, a subsidiaries' assets are not property of the estate under Section 541 and a trustee has no authority to sell the assets of the subsidiary pursuant to section 363. *See In re Murchison,* 54 B.R. at 728.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was provided to counsel for the Debtors via e-mail, to the United States Trustee via facsimile, and to all other parties-in-interest via the Court's ECF notification system on September 18, 2008.

                                                /s/ David W. Elrod
                                                David W. Elrod