AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York 10022-2524
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Daniel H. Golden (DG-5624)
Michael S. Stamer (MS-4900)
Abid Qureshi (AQ-4882)

Attorneys for the Informal
LBHI Bondholder Group

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                               :

In re:                                        :         Chapter 11 Case No.
                                               :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*  :         Case No. 08-13555 (JMP)
                                             :
                                  **Debtors.**    :         (Jointly Administered)
----------------------------------------------------------------x

**OBJECTION OF THE INFORMAL LBHI BONDHOLDER GROUP TO THE DEBTORS'
MOTION TO (A) SCHEDULE A SALE HEARING; (B) ESTABLISH SALES
PROCEDURES; (C) APPROVE A BREAK-UP FEE; AND (D) APPROVE THE SALE OF
THE PURCHASED ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF
<u>CONTRACTS RELATING TO THE PURCHASED ASSETS</u>**

       The Informal LBHI Bondholder Group, by and through its undersigned counsel, hereby

objects (the "<u>Objection</u>") to the Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish

Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased

Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets (the

"<u>Motion</u>").[1] In support of this Objection, the LBHI Bondholder Group respectfully represents as

follows:

---

[1] Unless otherwise defined herein, all capitalized terms used in this Objection shall have the same meaning ascribed to such terms in the Motion or related documents.

**PRELIMINARY STATEMENT**

1. By the Motion, the Debtors seek authority to consumate the emergency sale of billions of dollars in assets without having (a) engaged in a formal marketing process focused on the specific assets to be sold or (b) considered other potential viable alternatives to maximize the value of their estates in this changing economic climate. Specifically, the Debtors propose to sell their U.S. and Canadian capital markets and investment banking business (and certain unspecified assets used in connection with these businesses) as well as their world-wide headquarters to Barclays Capital Inc. ("Barclays") for an aggregate purchase price of approximately $1.7 billion (plus the assumption of certain liabilities).[2] The LBHI Bondholder Group is well aware of the extraordinary circumstances that precipitated the Debtors' chapter 11 filings and the asserted justifications for the speed of the sale. These exigencies, however, do not justify the proposed sale of the Purchased Assets at this time. Indeed, since the filing of the Motion, through unprecedented actions of the Federal government, the nation's economic landscape has the potential to change dramatically for the better. These actions may result in the stabilization of the Debtors' businesses, significant increase in the value of the Debtors' assets and the opportunity for numerous viable restructuring alternatives.

2. While the LBHI Noteholder Group understands that there are facts at play that may trump traditional notions of fiduciary duty and the goal of maximizing recoveries for creditors, the Debtors' failure to engage in a proper sale and marketing process for the Purchased Assets and the recent positive events for the nation's economy warrant disapproval of the Motion unless Barclays and the Debtors are prepared to renegotiate a purchase price adjustment or a

---

[2] Submitted with the Motion was a draft Asset Purchase Agreement that left many questions unanswered. Debtors' counsel previously promised to file an amended Asset Purchase Agreement on the evening of September 18. As of the filing of this Objection, the amended Asset Purchase Agreement has yet to be filed.

mechanism for such a purchase price adjustment so as to ensure a fair and appropriate exchange of value.

## BACKGROUND

3. As the Court is aware, late in the afternoon of September 18, the Debtors held a meeting to inform interested parties of the events leading up to the Sale and the terms of the proposed transaction. During this meeting, parties were advised that, as a result of the growing economic crisis, in the months prior to the commencement of these cases, the Debtors and their financial advisors engaged in a marketing process to sell the entirety of their businesses. After this sale process failed, the Debtors sought emergency funding from several governmental agencies, including the Federal Reserve Bank (the "Federal Reserve"), in an effort to solidify their liquidity position and ease the market's concern about Lehman's viability as a going concern. These efforts, likewise, were unsuccessful.

4. Upon information and belief, in the days prior to the Debtors' bankruptcy filings, the Federal Reserve took over all efforts to sell the Debtors' businesses (as a whole). According to the Debtors, the Federal Reserve identified only two potential suitors for the entirety of the Debtors' businesses --Bank of America and Barclays -- and limited its marketing efforts to these two financial institutions. The Federal Reserve's limited marketing efforts, like the Debtors', were unsuccessful. As a result, the Debtors were forced to seek chapter 11 protection. Within two days of the commencement of these cases, the Debtors filed the instant Motion which contemplates the sale of assets that have been "cherry picked" by Barclays at what appears to be a significant discount to fair market value.

## **OBJECTION**

5.      The Debtors have asserted that the justification for the approval of the sale is the stabilization of the Debtors' value and of the global capital markets.  The LBHI Bondholder Group does not dispute the veracity of the Debtors' intentions in this regard.  Since the filing of the Motion, however, the United States government has taken extraordinary steps to stem recent market volatility and ease investors' concerns over a growing world-wide financial crisis.  Indeed, the recent actions by the United States government, which have, among other things, caused a significant rebound in the nation's equity markets, may have a far-reaching positive impact on world-wide economics generally, and the value of the Debtors' assets specifically.  Until such time as the Debtors and their constituents have had a fair opportunity to evaluate the markets' reactions to the efforts of the Federal government, it is premature to approve the hastened sale of the Purchased Assets on the current terms.

6.      Even absent the recent positive market events, the Court should not approve the sale of the Purchased Assets on the current terms.  The law is well-settled that a debtor has a fiduciary obligation to maximize the value of their estates for the benefit of all stakeholders.  Commodity Futures Trading Com'n v. Weintraub, 471 U.S. 343, 352 (1985) ("The trustee is accountable for all property received and has the duty to maximize the value of the estate.") (internal quotations and citations omitted).  Accordingly, when seeking approval of a sale outside the ordinary course of business, a debtor is required to demonstrate that it obtained the highest and best price for the assets to be sold, regardless of whether the sale is to be conducted privately or through an open auction process .  See In re Integrated Resources, Inc., 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992) (holding that "[i]n general, to receive approval of a proposed sale of assets, the debtor will need to demonstrate to the bankruptcy court that the proffered purchase

prince is the highest and best offer"); In re Atlanta Packaging Products, Inc., 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) (holding that "[i]t is a well-established principle of bankruptcy law that the objective of bankruptcy sales and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."). The Debtors have not satisfied and cannot satisfy this burden. Indeed, the Debtors have acknowledged that (a) the specific assets to be sold were never marketed other than in the context of a sale of the entire Lehman enterprise; (b) the Federal Reserve, and not the Debtors, brokered the sale of the Purchased Assets to Barclays; and (c) since Barclays was identified as the proposed purchaser, no efforts have been made by anybody (the Debtors, their advisors or the Federal Reserve) to obtain higher and better offers for the Purchased Assets. The result is the Debtors' seeming indifference to creditors' rights and a transaction that cannot be approved.

7.      If, notwithstanding recent market events and the absence of an appropriate sales process, the Court, nevertheless, determines that the sale of the Debtors' broker-dealer business is necessary, the LBHI Bondholder Group respectfully submits that the assets to be sold must be limited to only those assets absolutely essential to the operation of the capital markets and investment banking businesses.[3]

8.      Despite this and other objections to the Motion, should the Court approve the sale, there can be no dispute that process undertaking here was flawed. This Court must ensure in connection with any future asset sales in these cases that the Debtors be held to the highest standards of fiduciary duty and be required to maximize the value of these estates for the benefit of their creditors.

---

[3] Given that, as of the filing of this Objection, the proposed amendment to the Asset Purchase Agreement has still not been filed, it is impossible to determine the scope of the assets being sold.

8062579                                                      5

**CONCLUSION**

For all of the foregoing reasons, the LBHI Bondholder Group respectfully requests that the Court: (i) deny the Motion absent material modification to the terms of the sale, and (ii) grant the LBHI Bondholder Group such other and further relief as the Court deems just, proper and equitable.

Dated: New York, New York
September 19, 2008

AKIN GUMP STRAUSS HAUER & FELD LLP

By: /s/ *Michael S. Stamer*
Daniel H. Golden (DG-5624)
Michael S. Stamer (MS-4900)
Abid Qureshi (AQ-4882)
Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue
New York, New York 10022-2524
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)

Attorneys for the Informal
LBHI Bondholder Group