**Hearing Date: Friday September 19, 2008 at 4 p.m.**

DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: 212.259.8000
Facsimile: 212.259.6333
Martin J. Bienenstock, Esq.
Irena Goldstein, Esq.

Attorneys for The Walt Disney Company

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x
                                                         :
In re                                                    :    Chapter 11 Case No.
                                                         :
LEHMAN BROTHERS HOLDINGS INC.,                           :    08-13555 (JMP)
*et al*.                                                 :
          Debtors.                                       :    (Jointly Administered)
                                                         :
-------------------------------------------------------- x

**RESPONSE OF THE WALT DISNEY COMPANY TO DEBTORS'
MOTION DATED SEPTEMBER 17, 2008 FOR SALE APPROVAL**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

The Walt Disney Company ("TWDC") submits this response (the "Response") to the proposed sale (the "Sale"), by Lehman Brothers Holdings Inc. ("LBHI") and LB 745 LLC ("LB 745"), as chapter 11 debtors and debtors in possession (collectively, the "Debtors"), and Lehman Brothers Inc. ("LBI"), pursuant to the motion dated September 17, 2008 (the "Sale Motion"), and respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. TWDC does not object to the Sale, as long as, to the extent any tangible or intangible assets of Lehman Brothers Commercial Corporation ("LBCC") are transferred as part of the sale, the rights and claims of TWDC and its affiliates arising out of the Sale are

unimpaired by the Sale and order approving it.  TWDC does object to any and all impairments of such rights and claims.

        2.      At the hearing on September 17, 2008, representatives of the debtors advised us that assets of nondebtor subsidiaries (other than LBI) were not being sold and references to same in the asset purchase agreement were erroneous.  To date, we have not received a corrected agreement.  Additionally, the debtors' representatives advised us that the debtors were not requesting relief that would impair TWDC's rights against nondebtors including Barclays, which rights would arise out of transfers by the nondebtors.  As long as that holds true, TWDC has no objection on these issues.

        3.      As of the date hereof, to our knowledge, neither LBCC nor Lehman Brothers Inc., nor any other indirect or direct subsidiary of LBHI, besides LB 745, has filed a case under the Bankruptcy Code or an insolvency proceeding under the Securities Investor Protection Act of 1970 ("<u>SIPA</u>").

**A.**      <u>**Relationship Between TWDC and the Debtors**</u>

        4.      On Monday September 15, 2008, settlement of TWDC payment obligations to LBCC occurred in the amount of approximately $107 million worth of foreign currencies, and on the same date, LBCC was required to pay TWDC approximately $107 million in US currency (net of various adjustments).  As of today, LBCC has not made such payment, and therefore LBCC is in default of its payment obligation to TWDC.  Payment obligations of LBCC owed to TWDC are guaranteed by LBHI.

**B.**      <u>**The Asset Purchase Agreement May Transfer Assets of Nondebtor Affiliates**</u>

        5.      The Asset Purchase Agreement is attached to the Sale Motion as exhibit 2.

6.     Under the APA, the purchase price is only payable to the sellers, and not to any other entities. APA § 3.2. The "Sellers" are defined to be only: LBHI, LBI and LB 745 LLC. APA, p. 1.

7.     <u>The APA Provides for Subsidiary Assets to be Sold</u>. Nevertheless, the APA includes numerous references implying assets of nondebtor subsidiaries of the Seller are being transferred. For instance, in section 2.7, Barclays waives compliance by Seller "and its Subsidiaries" with all bulk-transfer laws. "Subsidiaries" are defined to include all LBHI's subsidiaries which includes nondebtor subsidiaries. APA, p. 9. The definition of "Purchased Assets" provides it means "all of the assets of Seller and its Subsidiaries used in connection with the Business…," excluding the Excluded Assets. APA, p. 6. The Excluded Assets are not defined to mean all Subsidiaries' assets other than LBI's assets. Section 2.1 of the APA provides Seller shall transfer to Barclays "all of Seller's and its applicable Subsidiaries' right, title and interest in, to and under the Purchased Assets free and clear of all Liens…" Section 2.4 of the APA provides Barclays shall not be liable for "all Liabilities of Seller and its Subsidiaries to the extent they do not arise out of the Business and…all Liabilities arising out of Excluded Assets, including Contracts that are not Purchased Contracts…"

8.     The term "Excluded Assets" is defined in the Asset Purchase Agreement as including:

>   (b)   all cash, cash equivalents, bank deposits or similar cash items of LBI and its Subsidiaries (the "<u>Retained Cash</u>") other than $1.3 billion in cash, cash equivalents, bank deposits or similar cash items;
>
>   (c)   all intercompany receivables;

APA, p. 2-3.

9.     Section 2.1 of the Asset Purchase Agreement, provides Barclays shall purchase "all of Seller's and its applicable *Subsidiaries' right, title and interest in, to and under*

3

*the Purchased Assets free and clear of all* Liens pursuant to Section 363(f) of the Bankruptcy Code."

APA, § 2.1 (emphasis supplied).

10. Significantly, APA § 8.2(b) dictates how the Subsidiaries shall operate the Business pending closing.

**Reservations of Rights and Violations of Law if Nondebtor Assets are Being Sold Free and Clear of TWDC's Claims against Entities including Barclays**

11. TWDC has no objection to the Sale if LBHI makes clear that it is not transferring assets (tangible, intangible, and employees) of LBCC free and clear of claims of TWDC and its affiliates against any and all entities including Barclays. It is that simple. If, however, LBHI is requesting relief that would transfer assets of LBCC free and clear of claims against any entity, the relief requested would be illegal for multiple reasons, including the following.[1]

12. <u>Lack of Elemental Due Process</u>. Because the APA allows Barclays to designate assets to purchase for 60 days <u>after</u> the closing, and because the APA does not specify which assets, if any, of the Subsidiaries are being sold, it is impossible to know what the transaction is or the consequences on TWDC of the relief requested. Notice and hearing are the elemental components of procedural due process. Here, the notice is not calculated to provide TWDC with notice of the actual transaction being considered and the relief requested. Additionally, the Court can not know what relief is being requested because the transaction is still unknown for all the reasons explained above. Thus, the requirements of notice and hearing are not satisfied, even before one considers the hearing time of 4 p.m. Friday afternoon on

---

[1] The sale hearing is being held the second evening after the APA was filed. TWDC has had insufficient time to take adequate discovery and to prepare all the appropriate legal issues, and therefore reserves all its rights to supplement this pleading and to assert a lack of due process.

4

September 19, 2008. *See In re Savage Industries, Inc.,* 43 F.3d 714 (1st Cir. 1994) (fundamental notions of due process and the right to be heard apply to the Bankruptcy Code).

13. As stated in paragraph 12 above, LBHI can cure this defect by making the representations set forth there.

14. <u>The Relief Requested would be an Unconstitutional Use of the Bankruptcy Power</u>. It is fundamental that claims against an entity may only be constitutionally released or discharged when the entity's assets are fairly distributed to satisfy those claims to the extent the assets allow for satisfaction. Here, if nondebtor assets are being transferred and TWDC and its affiliates are being permanently enjoined from prosecuting its resulting claims against Barclays (for causes of action such as successor liability, fraudulent transfer, and tortious interference with contracts), then Barclays is receiving a discharge of TWDC's claims without any distribution of its assets whatsoever. That is illegal because it is unconstitutional. *See, e.g., Kuehner v. Irving Trust Co.*, 299 U.S. 445, 450, 452, 455 (1937).

15. <u>The Court Lacks Subject Matter Jurisdiction to Impair TWDC' Claims against Barclays or any Nondebtor</u>. This Court does not have subject matter jurisdiction over the approval of the sale of the assets of the Nondebtor Affiliates. Pursuant to 28 U.S.C. § 1334(b), the bankruptcy statutes do not give a bankruptcy court jurisdiction over property belonging to an entity owned in whole or in part by the bankrupt without first finding that the property also constitutes a part of the bankrupt's property." *Center Ltd. P'ship v. Smith* (*In re Holywell Corp.*), 118 B.R. 876, 879 (S.D. Fla. 1990); *see also In re Tower Automotive, Inc.*, 356 B.R. 598, 603 (Bankr. S.D.N.Y. 2006) (potential diminution in the value of a subsidiary's stock held by a debtor parent corporation did not bring the litigation the subsidiary was involved with into the bankruptcy court's jurisdiction).

16. <u>If the Bankruptcy Court is being Requested to Issue an Order Extinguishing the Rights of TWDC and its Affiliates against Third Party Nondebtors including Barclays, this Proceeding is Noncore and the Bankruptcy Court Lacks Power to Issue the Order</u>. If Barclays would have successor liability for taking nondebtors' cash, employees, infrastructure, and client relationships, the TWDC' claim against Barclays for successor liability would be a cause of action between two third parties for money damages. This is the classic action for money damages requiring an article III judge to wield judicial power. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982). The Bankruptcy Court, which lacks judicial power, can not constitutionally deprive TWDC of that cause of action, any more than the Bankruptcy Court can preside over the regulation of TWDC's rights as a creditor of a nondebtor against another nondebtor, namely Barclays.

17. <u>Bankruptcy Code Section 363(f) Does Not Apply to Nondebtors' Assets</u>. By its terms, section 363 only applies to property of the estate. Assets of a nondebtor subsidiary are not property of the estate. Therefore, section 363 as a whole and section 363(f) grants no power to the Bankruptcy Court to sell the assets free and clear of liens, claims, interests, or successor liability.

18. In *Equity Broadcasting Corp. v. Shubert* (*In re Winstar Communications, Inc.*), 284 B.R. 40 (Bankr. D. Del. 2002), two chapter 11 debtors, WNM and WCC, and a non-debtor affiliate, WBC, entered into a purchase agreement with a purchaser, EBC. After the sale was approved, the purchaser brought an adversary proceeding seeking to compel the debtors and WBC to transfer certain construction permits. *Id*. at 49. In denying relief, the court ruled:

> If the court were to find that this action was under the jurisdiction of the Bankruptcy Court, the decision would have the result of bringing every wholly owned subsidiary into every Bankruptcy case regardless of the circumstances and without the safeguards afforded by schedules, statements of financial affairs, notices to creditors, or meetings of

6

> creditors. *Further, such a decision could result in debtors and others abusing the system by withholding from Bankruptcy or bringing into Bankruptcy subsidiaries in a revolving door fashion. Therefore, the court finds that the ownership of all of the outstanding stock of WBC by the Trustee does not confer jurisdiction on the Bankruptcy Court to decide disputes involving WBC's assets.*

*Id*. at 52 (emphasis added).

19. Section 363(b) provides "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, *property of the estate*." 11 U.S.C. § 363(b). *In re 48th Street Steakhouse Inc.,* 835 F.2d 427 (2d Cir. 1987); *see also In re Signal Hill-Liberia Ave. Ltd. P'ship.*, 189 B.R. 648, 652 (Bankr. E.D. Va. 1995) ("[S]ales of property under § 363(f) are limited to sales of property of the estate."); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("[I]n order for assets to come within the auspices of § 363, they must be property of the estate"). Section 541 of the Bankruptcy Code defines "property of the estate." Not surprisingly, "property of the estate" under section 541 of the Bankruptcy Code includes the stock that a parent corporation would own in its subsidiary, but does not include the assets of a nondebtor affiliate. *In re Beck Industries, Inc.,* 479 F.2d 410 (2d Cir. 1973), *cert. denied,* 414 U.S. 858.

20. <u>The Sale Conceals Fraudulent Transfers from Nondebtor Subsidiaries to Debtors</u>. The nondebtor subsidiaries have presumably collected money after LBHI filed its petition. Pursuant to the APA, that money is transferred to Barclays with no payment to the nondebtor subsidiaries. That is a fraudulent transfer, the same way the transfer to Barclays of the nondebtor subsidiaries' key employees is a fraudulent transfer.

21. <u>If the Relief Requested Includes Sales of Nondebtor Assets Free and Clear of Claims, It Would Be an Illegal, Sub Rosa Substantive Consolidation</u>. That this Court can only order a sale of a *debtor's* property free and clear of liens and encumbrances is further supported

7

by the principle of substantive consolidation. If this Court grants the relief requested in the Sale Motion, it will effectively be allowing for the substantive consolidation of the Debtors' estates with the property of the Nondebtor Affiliates, without the Nondebtor Affiliates filing for relief under the Bankruptcy Court and seeking such consolidation and without ensuring a fair distribution scheme of sale proceeds to the creditors and stakeholders of the Nondebtor Affiliates. Because of the significant impact the substantive consolidation of estates can have on the rights of creditors, it is an extraordinary remedy and to be "used sparingly." *In re Auguie/Restivo Baking Co., Ltd.,* 860 F.2d 515, 518 (2d Cir. 1988) (citing *Chemical Bank New York Trust Co. v. Kheel*, 369 F.2d 845, 847 (2d Cir. 1966)); *In re Owens Corning*, 419 F.3d 195, 208 (3d Cir. Del. 2005). Here, none of the requirements for substantive consolidation are even alleged by the debtors.

## CONCLUSION

The Sale Motion should be granted as long as the sale and the order approving it does not transfer assets of LBCC and impair any and all of the rights of TWDC and its affiliates against third parties including Barclays related to their claims against the nondebtors. Otherwise, the Sale Motion should be denied and TWDC should be granted such other and further relief as is just.

Dated: New York, NY
September 19, 2008

DEWEY & LEBOEUF LLP

/s/ Martin J. Bienenstock
Martin J. Bienenstock
Irena Goldstein
1301 Avenue of the Americas
New York, NY 10019
Telephone: 212.259.8000
Facsimile: 212.259.6333

Attorneys for The Walt Disney Company

8