WACHTELL, LIPTON, ROSEN & KATZ LLP
51 West 52nd Street
New York, New York 10153
Telephone (212) 403-1000
Facsimile (212) 403-2000
Harold S. Novikoff
Amy R. Wolf
Philip Mindlin
Richard G. Mason
Joshua A. Feltman

Attorneys for JPMorgan Chase Bank, N.A.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 Case No. |
| Lehman Brothers Holdings Inc., | 08-13555 (JMP) |
| Debtor. | |

**LIMITED OBJECTION OF JPMORGAN CHASE BANK, N.A. TO DEBTOR'S MOTION TO APPROVE THE SALE OF THE PURCHASED ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS RELATING TO THE PURCHASED ASSETS**

JPMorgan Chase Bank, N.A. ("JPMC"), by and through its undersigned attorneys, submits this Limited Objection to Debtor's Motion to Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts relating to the Purchased Assets (the "Motion") and respectfully represents as follows:

1.  JPMC has been, and continues to be, fully supportive of the efforts to sell the Debtor's broker/dealer business as a going concern. As such, the transaction proposed in the

Motion may well be a beneficial one that, given adequate information, JPMC could support. Unfortunately, at this point, the information that has been provided about the transaction is so scanty as to require that JPMC file this limited objection to protect its rights.

2. JPMC is the principal clearing bank for Lehman Brothers Inc. ("LBI"). As the Court was advised in connection with the Debtor's Motion for Order, Pursuant to Section 105 of the Bankruptcy Code, Confirming Status of Clearing Advances, granted by order dated September 16, 2008, JPMC is party to a clearance agreement with LBI (including any related agreements, the "Clearance Agreement"), pursuant to which it had been providing tens of billions of dollars of intraday advances for the benefit of LBI pursuant to a tri-party repurchase arrangement. JPMC and its affiliates are also party to a multitude of other agreements with the Debtor and its subsidiaries, including repurchase agreements, foreign exchange agreements, securities lending agreements, and collateral management agreements (the "Other JPMC Agreements"). JPMC continues to handle a large volume of securities, cash and other transactions for the benefit of LBI through various operating, clearing, settlement and other accounts (the "Operating Accounts"), and is required to make substantial advances for LBI's benefit on a daily basis.

3. As of this morning, JPMC had an outstanding advance under the Clearance Agreement of $15.8 billion for the benefit of LBI on account of the tri-party repurchase arrangement. JPMC also had an outstanding "fail advance" under the Clearance Agreement of $7.4 billion which was made after the close of trading on September 18. Other transactions continue to occur through the Operating Accounts. All advances by JPMC pursuant

to the Clearance Agreement and obligations owing by LBI to JPMC under the Other JPMC Agreements are secured by cash, securities and other property in accounts maintained by JPMC (the "LBI Collateral").

4. All obligations to JPMC in respect of the Clearance Agreement and the Other JPMC Agreements are guaranteed by the Debtor pursuant to a Guarantee Agreement (the "Holding Company Guarantee"), and secured by securities which the Debtor (but not JPMC) values at $17.9 billion (the "Holding Company Collateral").

5. <u>Sale of LBI Collateral</u>. The Motion states that the Debtor will sell to Barclays Capital Inc. ("Barclays") the "Purchased Assets," constituting the (non-excluded) assets used in the Business. Although the identity of the particular securities to be sold is not specified in the draft Asset Purchase Agreement ("APA"), the term Purchased Assets appears to include the securities that are subject to the tri-party repurchase arrangement, which are part of the LBI Collateral, and it may include other assets that are part of the LBI Collateral. To the extent that the Debtor proposes to sell any of the LBI Collateral to Barclays, it must first discharge any outstanding advances made by JPMC that are secured by the LBI Collateral, and ensure that JPMC is relieved of any further obligations to make advances. Inasmuch as the transaction as currently proposed does not require that all of JPMC's existing advances be eliminated or that JPMC will be relieved of all ongoing obligations, JPMC objects to the Motion. Obviously, JPMC will not be adequately protected for $23.2 billion of advances if its lien is lifted as to its LBI Collateral and instead attaches to a pool of $1.7 billion of proceeds.

6. <u>Sale of Holding Company Collateral</u>. As stated, JPMC has liens on the Holding Company Collateral to secure the Holding Company Guarantee. JPMC is unable to determine at this time whether the Holding Company Collateral is included in the Purchased Assets. To the extent that it is, JPMC objects to the proposed transaction because it constitutes an unlawful taking of JPMC's interest in the Debtor's property. The Holding Company Collateral is valued by the Debtor at $17.9 billion, and the Debtor proposes to sell the Purchased Assets free and clear of liens, with the liens of all secured parties to attach to the proceeds, the same $1.7 billion in cash. It thus appears that the Holding Company Collateral is being used in the transaction to offset other liabilities being assumed by Barclays, to the detriment of JPMC. As the proceeds are only $1.7 billion in cash, and all secured parties, not only JPMC, are to receive a replacement lien on this cash, the requirements of section 363(f) are not satisfied and the transaction should not be approved in this regard.

7. <u>The Purchased Contracts</u>. The Motion states that all Contracts designated by Barclays within sixty (60) days after the closing of the sale contemplated by the Motion are to be assumed and assigned to Barclays. JPMC is unable to determine whether any of the Clearance Agreement or Other JPMC Agreements are included in the Purchased Contracts. In the event that any of its contracts are proposed to be assumed and assigned to Barclays, JPMC objects for, <u>inter alia</u>, the following reasons.

8. The Bankruptcy Code contains a number of special provisions (the "Safe Harbor Provisions") that are applicable to "securities contracts" as defined in section 741(7)(A), as well as to certain other types of financial contracts (such contracts, together with securities

contracts, "Qualified Financial Contracts"). In relevant part, section 741(7)(A) defines a "securities contract" as "(i) a contract for the purchase, sale, or loan of a security . . . ; (v) any extension of credit for the clearance or settlement of securities transactions . . . or (xi) any security agreement or arrangement or other credit enhancement related to any [securities contract], including any guarantee or reimbursement obligation . . ." The Clearance Agreement, the Other JPMC Contracts, the Holding Company Guarantee and the security agreement relating to the Holding Company Collateral are Qualified Financial Contracts.

9.   Qualified Financial Contracts are, to varying degrees, excluded from much of the Bankruptcy Code regime by the operation of the Safe Harbor Provisions. Of particular relevance here, the Safe Harbor Provisions include:[1]

   (a)   Section 555: "The exercise of a contractual right of a . . . financial institution . . . or securities clearing agency to cause the liquidation, termination, or acceleration of a securities contract, as defined in section 741 of this title, because of a condition of the kind specified in section 365(e)(1) of this title shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by order of a court . . ."

   (b)   Sections 556, 559 and 560: containing provisions similar to Section 555, but with respect to other Qualified Financial Contracts; and

---

[1] An order entered in a SIPA proceeding may stay the foreclosure of collateral for a Qualified Financial Contract to a limited extent, and the order commencing the SIPA proceeding of LBI does so to a limited extent. The proposed sale order would impermissibly constrain the exercise of rights under Qualified Financial Contracts if they are covered by its contract provisions.

(c) <u>Section 561(a)</u>: "the exercise of any contractual right, because of a condition of the kind specified in section 365(e)(1), to cause the liquidation, termination, or acceleration of or to offset or net termination values, payment amounts, or other transfer obligations arising under or in connection with one or more (or the termination, liquidation, or acceleration of one or more) - (1) securities contracts; [other Qualified Financial Contracts] . . . or (6) master netting agreements, shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by order of a court . . ."

10. Additionally, the Safe Harbor Provisions exclude certain actions in respect of Securities Contracts from the reach of the automatic stay. Section 362(b) states that "[t]he filing of a petition . . . does not operate as a stay --

(6) under subsection (a) of this section, of the exercise by a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency of any contractual right (as defined in section 555 or 556) under any security agreement or arrangement or other credit enhancement forming a part of or related to any . . . securities contract, or of any contractual right (as defined in section 555 or 556) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such contracts, including any master agreement for such contracts."

Sections 362(b)(7), (17) and (27) contain comparable carveouts from the automatic stay for the exercise of rights with respect to other Qualified Financial Contracts and under master netting agreements.

11. Section 362(o) makes clear that these activities in respect of Qualified Financial Contracts not only are not subject to the automatic stay, but they also may not be subjected to a court or agency-ordered stay:

> "(o) The exercise of rights not subject to the stay arising under subsection (a) pursuant to paragraph (6), (7), (17), or (27) of subsection (b) shall not be stayed by any order of a court or administrative agency in any proceeding under this title."

12. JPMC has been unable to determine whether the Clearance Agreement or Other JPMC Agreements are intended to be assigned to Barclays. To the extent that they are, JPMC objects to the Motion to the extent that it seeks to assume and assign such agreements without JPMC's consent. JPMC further objects to the Debtor's failure to provide JPMC with notice of its intentions, thereby depriving JPMC of the ability to determine whether to exercise any of its rights to terminate or accelerate the contracts, to exercise its contractual rights under any security agreements or other collateral arrangements relating thereto, or to net or offset any amounts owing to it under any of the contracts. JPMC further objects to any "cherry-picking" of valuable contracts by Barclays. JPMC also objects to Section 7 of the proposed Order, entitled "Injunction," which purports to enjoin any party with claims against the Debtor from asserting rights in respect of any assets transferred to Barclays. To the extent that any of the Clearance Agreement or Other JPMC Agreements are transferred to Barclays, JPMC's exercise of its rights as protected by the Safe Harbor Provisions may not be enjoined.

13. <u>Security Under Purchased Contracts</u>. The Motion proposes to sell all Purchased Assets free and clear of liens. As stated previously, JPMC holds LBI Collateral to

secure its advances for the benefit of LBI under its various agreements. To the extent, if any, that any of the Clearance Agreement or Other JPMC Agreements are transferred as part of the Purchased Assets, the sale cannot be free and clear of JPMC's liens. Rather, the Order must explicitly provide that JPMC's rights against the LBI Collateral will continue in full force and effect.

14.   *Adequate Assurance of Future Performance.* Even if the Clearance Agreement or Other JPMC Agreements were otherwise capable of being assumed and assigned, which they are not, JPMC would in any event be entitled to adequate assurance of future performance pursuant to sections 365(b) and (f). In the Motion, the Debtor proposes to provide such assurance through testimony to be offered at the Sale Hearing. While the Purchaser is defined as Barclays, the APA reserves the right to assign its rights and obligations to an affiliate. At this time, JPMC has no information to establish the creditworthiness of the proposed assignee, and therefore objects to the assignment of any of its contracts for failure to provide adequate assurance of future performance.

15.   *Financial Accommodations.* Even if the Clearance Agreement or Other JPMC Agreements were otherwise capable of being assumed and assigned, which they are not, JPMC objects to any attempt to require it to continue to provide advances to the Debtor, any of the Debtor's subsidiaries, or any assignee of the Debtor, on the basis that section 365(c)(2) prohibits the assumption or assignment of a "contract to make a loan, or extend other financing or financial accommodations, to or for the benefit of the debtor."

16.     <u>Non-Debtor Assets</u>.  It is impossible to determine from the Motion whether any of the Purchased Assets constitute assets of an entity other than the Debtor or LBI or contracts between JPMC and a non-debtor entity.  Any such non-debtor assets or contracts are not subject to the jurisdiction of this Court.  The Order should explicitly provide that no non-debtor assets or contracts with a non-debtor are being transferred to Barclays as part of the Purchased Assets.

17.     <u>JPMC's Ongoing Obligations to LBI</u>.  According to the Motion, prior to the Sale Hearing, the Debtor will commence a case for LBI under the Securities Investor Protection Act of 1970 ("SIPA").  Thereafter, the Debtor will ask this Court to approve the sale to Barclays of certain assets and businesses of LBI, but not LBI in its entirety.  Accordingly, after the closing of the sale, there will remain assets and businesses of LBI that will be subject to the SIPA case, and assets and businesses that will belong to Barclays.  JPMC anticipates that there will continue to be activities in the Operating Accounts that it has maintained for the benefit of LBI, and that it will be difficult if not impossible for JPMC to determine the correct owner of the securities, cash and other property it will be receiving in those accounts.  Moreover, JPMC may have no responsible party from whom to seek repayment of any advances, overdrafts or other liabilities arising in connection with the continued use of the Operating Accounts.  Absent a clear protocol agreed to by the SIPA Trustee and Barclays as to the treatment of property in the Operating Accounts, and satisfactory protection for JPMC from any exposure in connection with the Operating Accounts, JPMC will have no choice but to terminate the operation of the Operating Accounts.

WHEREFORE, JPMC requests that Debtor's Motion to Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts relating to the Purchased Assets be denied to the extent objected to herein.

Dated: New York, New York
September 19, 2008

WACHTELL, LIPTON, ROSEN & KATZ

By: _____
Harold S. Novikoff
Amy R. Wolf
Philip Mindlin
Richard G. Mason
Joshua A. Feltman

51 West 52nd Street
New York, New York 10019
(212) 403-1000

Attorneys for JPMorgan Chase Bank, N.A.

-10-