DAY PITNEY LLP
(MAIL TO) P.O. BOX 1945, MORRISTOWN, NJ 07962-1945
(DELIVER TO) 200 CAMPUS DRIVE, FLORHAM PARK, NJ 07932-0950
(973) 966-6300
RICHARD M. METH, ESQ. (RM7791)
HERBERT K. RYDER, ESQ. (HR5137)
- AND -
7 Times Square
New York, NY 10036-7311
(212) 297-5800

- AND -

GREENEBAUM DOLL & MCDONALD PLLC
3500 National City Tower
101 S. Fifth Street
Louisville, KY  40202
C.R. ("CHIP") BOWLES, JR., ESQ.
(502) 589-4200

ATTORNEYS FOR COMMUNITY TRUST BANCORP INC.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case Nos. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

## COMMUNITY TRUST BANCORP INC.'S OBJECTION TO DEBTORS' MOTION TO APPROVE THE SALE OF THE PURCHASED ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS RELATING TO THE PURCHASED ASSETS

Community Trust Bancorp Inc. ("CTB") hereby objects to the Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets (the "Sale Motion") and, in support thereof, states as follows:

## BACKGROUND

1.      On September 15, 2008, Lehman Brothers Holdings, Inc. ("LBHI") and LB 745 LLC ("745") (collectively LBHI and 745 are hereinafter referred to as the "Debtors") filed voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.      Lehman Brothers Inc. ("Lehman Brokerage"), a registered broker dealer, did not and could not file a Chapter 11 petition with the Debtors because it is subject to liquidation under the Securities Investor Protection Act of 1970 ("SIPA").  (*See* Sale Motion at Paragraph 12.)

3.      On September 16, 2008, the Debtors filed the Sale Motion (Document No. 68), seeking to sell to Barclays Capital Inc. ("Barclays") certain assets and businesses of Lehman Brokerage ("Non-Debtor Businesses") under the provisions of 11 U.S.C. §§ 105, 363 and 365.

4.      Or on about September 17, 2008, this Court entered an Order (I) Approving the Break-Up Fee and Expense Reimbursement, (II) Certain Matters Relating to Competing Bids, if any, (III) Approving the Form and Manner of Sale Notices and (IV) Setting the Sale Hearing Date in Connection with the Sale of Certain of the Debtors' Assets (Document No. 88).  The hearing on the sale of the Non-Debtor Businesses is scheduled for Friday, September 19, 2008, at 4:00 p.m.

5.      Under the terms of the Asset Purchase Agreement among the Debtors, Lehman Brokerage and Barclays (the "Asset Purchase Agreement"), the Debtors seek to sell certain businesses and other assets of Lehman Brokerage, a non-debtor entity, free and clear of liens, claims, encumbrances and interests.  It is unclear as to whether this request seeks a determination that the proposed sale of Non-Debtor Businesses purports to insulate Barclays from successor or other liability for the obligations of the Lehman Brokerage.   Under the Asset Purchase

Agreement, Barclays specifically excludes liabilities "incurred in the ordinary course of business existing prior to the filing of the Bankruptcy Case that are subject to compromise under the Bankruptcy Case" ("Compromised Liabilities").

## CTB CLAIM

6.      CTB has a claim against Lehman Brokerage for over $5,000,000.00, based on Lehman Brokerage's violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t, and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder, KRS § 292.320, *et seq.*, common law breach of contract, breach of fiduciary duties, violations of FINRA's Know Your Customer Rule, negligence/gross negligence and/or common law fraud in connection with their sale of approximately $5,000,000.00 of FHLMC Series S Securities (the "Securities") to CTB.  The Securities were comprised of Freddie Mac and Fannie Mae Preferred Stock.

7.      CTB has not yet been able to formally file its complaint against Lehman Brokerage.

## ARGUMENT

8.      Under 11 U.S.C. § 363(f), a trustee or debtor in possession may only sell property of the debtor's bankruptcy estates.  11 U.S.C. §§ 363(b), (c), and (f).  In this case the (Sale Motion explicitly admits that the assets being sold **are not property of the debtors**.  (Sale Motion at 2 ("LBHI's non-debtor subsidiary, Lehman Brothers Inc. ("LBI"), is a registered broker dealer");  *see also* Asset Purchase Agreement.)

9.      It is clear as a matter of law that a "parent company does not hold the assets of a subsidiary." *In re Insilco Technologies, Inc.*, 351 B.R. 313, 321 (Bankr. D. Del. 2006); s*ee also In re Murchison*, 54 B.R. 721, 728 (Bankr. N.D. Tex. 1985) (Title to corporate property is held by a corporation, and not by the shareholder.).  A parent company that is the sole shareholder of

a subsidiary has no direct interest in the assets and liabilities of that subsidiary because "[i]t is an axiom of corporate law that '[t]he corporation is an entity, distinct from its stockholders even if the subsidiary's stock is wholly owned by one person or corporation.'" *In re Insilco Technologies, Inc.,* 351 B.R. at 321 (quoting *Buechner v. Farbenfabriken Bayer Aktiengesellschaft,* 154 A.2d 684, 686-87 (Del. Ch. 1959)).  It follows that, "[a]s a general rule, property of the [bankruptcy] estate includes the debtor's stock in a subsidiary but not the assets of the subsidiary." *In re Guyana Development Corp.*, 168 B.R. 192 (Bankr. S.D. Tex. 1994).

10.    Therefore, because a subsidiary's assets are not property of the estate under Section 541 of the Bankruptcy Code, there is no authorization for the debtors to sell the assets of the subsidiary pursuant to section 363.  *See In re Murchison*, 54 B.R. at 725 ("This application was apparently brought under the premise that the Court had jurisdiction under Code section 363(b)(1), which authorizes the trustee to sell 'property of the estate.'  That term is in turn defined by § 541(a)(1), which states, in pertinent part, that 'property of the estate' comprises 'all legal or equitable interests of the debtor in property as of the commencement of the case.'  As explained below, Debtor had no interests in the particular property at issue; rather, he had an equitable interest in the entities which owned other entities, and so on, which ultimately owned an equitable interest in the partnership holding title to the property.  Because the criterion of § 541(a)(1) has not been satisfied, § 363(b)(1) cannot apply.  There being no authorization in § 363, or elsewhere, for a debtor in possession or trustee to sell property in which the estate has no interest, it must be concluded that the application is not based upon any provision in the Bankruptcy Code.").

11.      While a bankruptcy court has exclusive jurisdiction over a Chapter 11 debtor, the broad concept of a debtor's property under 11 U.S.C. § 541 does not extend to property owned by "a solvent independent subsidiary of the debtor merely because its stock is held by the debtor." *In re Beck Industries*, 479 F.2d 410, 415 (2d Cir.), *cert. denied*, 414 U.S. 858 (1973); *See also In re Arlan's Dep't Stores, Inc.,* 615 F.2d 925, 940 (2d Cir. 1979) ("In each of those cases, since the subsidiary was a viable, self-sustaining entity, independent of the debtor-parent, its property interests were not subject to the jurisdiction of the court.   The district court is generally without jurisdiction over proceedings involving the property of a non-filing subsidiary, but where the subsidiary is a mere sham, conduit or alter ego of the parent corporation, the corporate veil may be pierced and the separate entity may be disregarded."); *In re Murchison*, 54 B.R. 721, 728 (Bankr. N.D. Tex. 1985) ("[Debtor] is a mere shareholder in Texas Plaza Development Corporation, and as such, it cannot claim a property right in specific assets of a subsidiary.   It is an elementary principle of corporate law that a corporation and its stockholders are separate entities and that title to corporate property is vested in the corporation and not in the owners of the corporate stock.   Even where, as here, <u>one hundred percent</u> of a subsidiary's stock is owned by the shareholder in question, that shareholder has not acquired, and has no property interest in, specific assets of the subsidiary.")(emphasis added)(internal quotations omitted); *In re Mego International, Inc.*, 30 B.R. 479 (S.D.N.Y. 1983)("[O]wnership of a subsidiary by a bankrupt did not make that subsidiary the parent's property, unless the subsidiary was a mere sham or conduit rather than a viable entity.").

12.      As such, this Court does not have jurisdiction to permit the sale free and clear of all claims under 11 U.S.C. § 363 as it relates to a non-debtors businesses and their separate assets and liabilities.

13.    Furthermore, to the extent that the Debtors are seeking to sell the Non-Debtor Businesses under 11 U.S.C. § 363 free and clear of successor liability claims against Barclays, the Sale Motion should also be overruled.

14.    While there may be some issue as to whether a sale under 11 U.S.C. § 363 can effectively insulate a purchaser such as Barclay, from a possible suit for successor liability, if the sale involved the sale of a debtor's assets, *See, e.g., UMWA 1992 Ben. Plan v. Lecksie Smokeless Coal Co.*, 201 B.R. 163 (S.D. W.Va. 1992), *aff'd*, 99 F.3d 573 (4th Cir. 1996); *In re Fairchild Aircraft Corp.*, 184 B.R. 910 (Bankr. W.D. Tex. 1995), *rev'd on other grounds*, 220 B.R. 909 (Bankr. W.D. Tex. 1998); *Lefever v. K.P. Hovnanian Enters., Inc*., 160 N.J. 307 (1999), it is clear that a sale pursuant to 11 U.S.C. § 363 cannot protect a purchaser where the assets being sold are not property of the debtors.

15.    In the alternative, if the Sale Motion is approved, it is respectfully requested that such order approving the Sale Motion be made contingent upon the Asset Purchase Agreement being amended and restated to include any pre-petition liabilities of Lehman Brokerage as an assumed liability or with a determination that the order approving the Sale Motion has no impact on successor liability claims against Barclays.

16.    Due to the ambiguities contained in the Sale Motion and the Asset Purchase Agreement, CTB seeks a determination from this Court as to the meaning of the Asset Purchase Agreement with regard to whether the its claims against Lehman Brokerage are "Assumed Liabilities" or "Excluded Liabilities" under the Asset Purchase Agreement.  CTB reserves the right to supplement this objection as appropriate once this issue has been determined by the Court.[1]  As neither Lehman Brokerage nor Barclays is a debtor, CTB should be entitled to know

---

[1]    To the extent Lehman Brokerage is subject to a proceeding under SIPA and/or a SIPA Trustee, if appointed, seeks to take advantage of any order approving the Sale Motion and the Asset Purchase Agreement and seeks a further order of this court relative thereto, CTB reserves all rights to assert further and appropriate objections thereto.

the proper identity of the entity that will be the real party-in-interest defendant in the lawsuit CTB will be pursuing, and who the responsible party will be in the event a judgment is entered in favor of CTB.

17. Further, to the extent the Sale Motion is approved and CTB's claims are deemed Excluded Liabilities, CTB reserves the right to assert and enforce any judgments obtained against the proceeds of such sale, to request an accounting as to the appropriate division or distribution of any proceeds between the Debtors and Lehman Brokerage with respect to the sale of their respective assets and assumption of their respective liabilities, and to request that this Court compel Lehman Brokerage to put such proceeds in escrow pending final determination of the actions.

## **CONCLUSION**

WHEREFORE, it is respectfully requested that the Sale Motion be denied, or in the alternative, that any order approving the Sale Motion be contingent upon the Asset Purchase Agreement being amended and restated to include all pre-petition liabilities as an Assumed Liability, together with such other and further relief as this court deems just.

To the extent the Sale Motion is granted, CTB requests clarification as to whether CTB's claims are "Assumed Liabilities" or "Excluded Liabilities" under the Asset Purchase Agreement, and the entity that will be the real party in interest to CTB's lawsuit.

Furthermore, to the extent the Sale Motion is approved and CTB's claims against Lehman Brokerage are deemed Excluded Liabilities, CTB reserves the right to assert and enforce any judgments obtained against Barclays and/or Lehman Brokerage (as against the proceeds of such sale), to request an accounting as to the appropriate division or distribution of any proceeds between the Debtors and Lehman Brokerage with respect to the sale of their respective assets

and assumption of their respective liabilities, and to request this Court to compel Lehman

Brokerage to put such proceeds in escrow pending final determination of the CTB claims.

> C.R. BOWLES, JR.
> GREENEBAUM DOLL & MCDONALD PLLC
> 3500 National City Tower
> 101 South Fifth Street
> Louisville, KY  40202-3197
> Phone:  (502) 587-3746
> Fax:   (502) 587-3695
> crb@gdm.com
>
> and
>
> /s/ Richard M. Meth
> RICHARD M. METH (RM7791)
> HERBERT K. RYDER (HR5137)
> DAY PITNEY LLP
> (MAIL TO) P.O. BOX 1945, MORRISTOWN, NJ 07962-1945
> (DELIVER TO) 200 CAMPUS DR., FLORHAM PK., NJ  07932-0950
> Phone: (973) 966-6300
> Fax:   (973) 966-1015
> rmeth@daypitney.com
> hryder@daypitney.com
>
> Attorneys for COMMUNITY TRUST BANCORP INC.

Dated:  September 19, 2008
        Florham Park, NJ