UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re                                                                         CHAPTER 11

LEHMAN BROTHERS HOLDINGS INC.,            Case No.08-13555(JMP)

                                        Debtor.
-------------------------------------------------------x

OBJECTION TO ASSUMPTION AND ASSIGNMENT OF, AND AMOUNTS NECESSARY TO CURE DEFAULTS UNDER CONTRACTS AND LEASES TO BE ASSUMED AND ASSIGNED TO SUCCESSFUL PURCHASER

**CORPORATE PARK ASSOCIATES INC., ("CP ASSOC."),** hereby objects to the above captioned Debtors ("Lehmann") above referenced notice and underlying motion:

1.  On September 15, 2008 ("Petition Date"), Lehmann filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. (Bankruptcy Code").

2.  Subsequent to the Petition Date, the Debtors continue to occupy their premises and manage their properties as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.  Pursuant to a commercial single tenant lease (absolute net) executed by and between C P Assoc. and Lehmann, dated as of October 10 , 2005, CP Assoc. leased to Lehmann a certain commercial building of approximately 234,759 square fee, located at 40 Corporate Place South , Piscataway, New Jersey ("Property"). Parallel therewith and at the same time, the parties entered into a ground lease (absolute net) for the land on which the Property is located. (collectively referred to as (the "CP Leases").

4. Lehman has listed the sum of $154,704.35.  This sum represents only the fixed Base Rent under the CP Leases. Such sum would not cure other outstanding obligations under the CP Leases.

5.   Lehman is required by the CP Leases, in addition to its obligation to pay Base Rent, to pay "Additional Rent" consisting of all expenses of the Property. The CP Leases each read, in pertinent part, as follows:

> **Additional Rent.** This Lease is an absolute net lease and it is intended and agreed that Tenant shall pay, in addition to Base Rent, any and all costs, expenses and fees in operating,

maintaining and repairing the Property, and any and all real and personal property taxes and assessments levied with respect to the Property or any property therein. All amounts due and payable by Tenant pursuant to this Lease in addition to Base Rent shall be deemed "**Additional Rent**" and Landlord shall be entitled to exercise the same rights and remedies upon default in these payments, regardless of to whom such sums may be payable, as Landlord is entitled to exercise with respect to defaults in monthly Base Rent. The term "rent" means the Base Rent and Additional Rent.

Many items of Additional Rent, including but not limited to Real Property Impositions, Utilities, etc., are paid directly by Lehman to third parties. It is impossible for Landlord to determine and with specificity in a matter of hours what those outstanding liabilities may be.

6. With respect to the involved Leases, Lehmann lists only the rent amount due for the past month, does not list the probable rents due for the period of time going forward through the date of the anticipated assumption and assignment, and certainly omits to list the above referenced $3.2 million amount by reason of construction liens on the Property.

7. Lehmann is expressly responsible under the Leases for this amount and not the owner. The Leases provide, in pertinent part:

### Alterations and Improvements

Tenant may make alterations, changes, additions or improvements to the Building or cause the improvements located on the Property to be combined with improvements located on adjacent parcels (collectively, "Alterations"), subject to the provisions of this Section.

**Covenant Against Liens.** Tenant shall not have any right to subject Landlord's interest in the Property to any mechanic's lien or any other lien whatsoever. If any mechanic's lien or other lien, charge or order for payment of money shall be filed as a result of the act or omission of Tenant, Tenant shall cause such lien, charge or order to be discharged or appropriately insured over or bonded within thirty (30) days after notice from Landlord thereof, and Tenant shall indemnify and save Landlord harmless from all liabilities and costs resulting therefrom. If Tenant fails to do so within such 30-day period, Landlord may bond, insure over or otherwise discharge the lien and Tenant shall reimburse Landlord for any amount paid by Landlord in connection therewith, including, without limitation, reasonable attorneys' fees. Tenant shall not be responsible for the removal of liens derived from the performance

of work by Landlord. Notwithstanding the foregoing, Tenant shall have the right to contest any lien claimed through Tenant or any of its agents, in good faith, and in such case shall not be required to post a bond against any such lien during the course of such process, provided that such contest shall not (i) result in the certificate of occupancy for the Building being suspended or revoked, or (ii) require the Building to be vacated, or (iii) subject Landlord or its officers, directors, partners, members or employees to any criminal penalty or civil fines.

8. Lehman is required by the terms of the Leases to maintain the property free of liens and to indemnify and hold harmless CP Assoc. for any violation of this covenant. In fact, liens have already been filed against the Property in the aggregate amount in excess of $4 million. Since the contracts for improvement to the Property were between Lehman and its contractors, and CP Assoc. was not a party thereto, CP Assoc. has no way to estimate the amount of those potential lien claims at this time.

9. Given the nature of the lien and the activity of construction conducted on the Property at Lehmann's request and direction to third party contractors, it can be anticipated the other and greater amounts of liens may be filed. In this regard, Lehmann is believed to have ordered and placed on the premises or had services performed on the Property totaling $300+ million of which it is unknown how much will develop into improper liens against the Property for which Lehmann is responsible to cure prior to assumption. Copies of constructions liens now known to be filed as of yesterday are attached as exhibit "A".

10. On September 18, 2008, Lehmann filed a notice to cure defaults prior to and regarding leases to be assumed and assigned through a sale process scheduled for September 19, 2008. Together with the Notice was a listing of amounts which Lehmann claimed was the cure amount for the respective leases. The notice shifts the burden on the lessor's to file within less than 24 hours any cure amount that is higher than the cure amount listed by Lehmann in its Notice.

11. The Debtors are clearly required to cure all monetary defaults under the Leases as a condition of the assumption and assignment of the Leases pursuant to Section 365 (b)(1)(a), (4) and 365 (f) of the Bankruptcy Code. Based on the above the cure amount, for these Leases to be approved by this court, for assumption is in excess of $300 million. Lehmann may be attempting to shift the burden of proof off its shoulders and on to Lessors through a quick procedural device that deprives the CP Assoc. of its contract and Property rights without due process of law in violation of the U.S. Constitution, 5th amendment. Thus, the Leases cannot turn into a windfall to both Lehmann and the entity assuming the Property to the loss of the owner of the Property and lessor of the Property.

12. In the same regard, Lehmann has made no showing in its papers how it can cure this default prior to assumption. In addition, during the expense of the current administration, Lehmann is required to pay rent timely under section 365 (d)(3) and there is no showing that that immediate cash payment will be made by Lehmann or assumed by the successful bidder.

13. In addition, Lehman has made no showing in its papers to satisfy the requirements of adequate protection of future performance and especially given the size of the aggregate lien amounts based on actions of Lehmann.

14. In addition, CP Assoc. objects to any attempt to deprive it of having Lehmann prove adequate assurance of future performance under the Leases by the successful bidder for the Leases, who is at this time, perforce not known as the auction has yet to take place.

15. Further, CP Assoc. reserves its rights to supplement and modify this objection due to the insufficient notice time given and that facts are and will continue to evolve prior to the time of the sale hearing and therefore unable to be included in this present objection.

WHEREFORE **CORPORATE PARK ASSOCIATES INC.,** respectfully requests that the court deny the relief requested regarding the above referenced notice and motion in so far as it proposed to effect the interests of CORPORATE PARK ASSOCIATES INC. and to reject the proposed cure amount reflected by Lehmann in its listing as it relates to the Leases and grant such other and further relief as is just and proper.

**Dated: New York, New York**  CORPORATE PARK ASSOCIATES INC.,
**September 19, 2008**                    by its attorneys
                                         McLaughlin & Stern LLP

                                          s/ Paul H. Silverman
                                         Paul H. Silverman (PHS0538)
                                         260 Madison Avenue
                                         New York, New York 10016
                                              (212) 448-1100