# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., et al., | Case No. 08-13555 (JMP) |
| | (Jointly Administered) |
| Debtor. | |

-----------------------------------------------------------

## <u>DECLARATION OF DAN YORAM SCHWARZMANN</u>

Dan Yoram Schwarzmann, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States of America, as follows:

1.     I make this declaration in support of the Response of the Joint Administrators of the Lehman European Group Administration Companies (as defined below) to Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets [D.I. # 60] (the "Sale Motion"). I am over the age of 18. If called upon, I could competently testify to all matters set forth herein based on my personal knowledge, or based on reports made by personnel whom I supervise, Lehman Group staff at the London premises and the books and records of the Lehman European Group Administration Companies.

2.     On the 15th of September, 2008, the English High Court of Justice made four orders (the "Administration Orders", attached hereto as Exhibits 1-4) providing for the appointment of my colleagues Anthony Victor Lomas, Steven Anthony Pearson, and Michael John Andrew Jervis and I as Joint Administrators of Lehman Brothers Holdings plc, Lehman

Brothers Limited, LB UK RE Holdings Limited, and Lehman Brothers International (Europe) (together, the "Lehman European Group Administration Companies").

     3.    Messrs. Lomas, Pearson, and Jervis and I (collectively, the "Joint Administrators") are Partners at PricewaterhouseCoopers LLP, Plumtree Court, London EC4A 4HT.

English Administration Proceedings

     4.    The Joint Administrators derive their powers and duties from the English Insolvency Act 1986, as modified by the English Enterprise Act 2002. Administration is a proceeding for companies that are, or are likely to become, insolvent. It is similar in concept to Chapter 11 proceedings in the United States, but very different in detail.

     5.    Administrations under English law have three consecutive objectives:

- to "rescue" the company as a going concern; or,

- to achieve a better result for the company's creditors than would be achieved on a liquidation; or,

- if neither of the first two objectives are reasonably practicable and it does not unnecessarily harm the interests of the creditors of the company as a whole, to realize property to make a distribution to secured or preferential creditors.

     6.    After appointment, administrators take over management and control of the debtor company and have the power, on behalf of the company, to do all things necessary and expedient for the management of its affairs, business and property. The administrators may make distributions to creditors, subject in certain cases to court approval, and may make other payments that are likely to assist in achieving the purposes of the administration. They may pursue actions to set aside preferences and transactions at an undervalue as well as to

recover assets of the company that were wrongly disposed of. Administrators are agents of the company and officers of the English High Court.

7.    Administrators must act in the interests of the creditors of the company as a whole, and are obligated to make formal proposals and to report regularly to creditors. Creditors have the right to approve the administrators' proposals at creditors' meetings and to appoint a creditors' committee. Creditors may propose and agree upon modifications to the administrators' proposals.

The Lehman European Group

8.    The Lehman Brothers group of companies (the "Lehman Group"), of which the European Group is part, is a global investment bank. The business activities of the Lehman Group were organized in three segments which operate across the Group: capital markets, investment banking, and investment management. Those segments included businesses in equity and fixed income sales, trading and research, investment banking, asset management, private investment management and private equity. The Lehman Group is headquartered in New York, with regional headquarters in London and Tokyo, and other offices around the world. Because the Lehman Group's segments operate globally, the businesses of the different offices are closely intertwined.

9.    Indeed, as part of an international financial group, the Lehman Group's broker-dealer in the United Kingdom and its broker-dealer in the United States both benefited from a guarantee given by Lehman Brothers Holdings Inc. ("LBHI"). Many counterparties of the U.K. and U.S. broker-dealers relied on this guarantee for comfort in transacting business with them.

10.    The Lehman Group's interdependence was both financial and operational. For instance, as part of its global treasury management, the Lehman Group

operated a "cash sweep" system. Pursuant to that system, at the end of each trading day, cash in all of the companies within the Lehman Group was transferred to LBHI. During each trading day, LBHI would transfer cash to each of the Lehman Group companies to enable them to meet their cash requirements during that day. The companies within the Lehman Group were therefore reliant upon receipt of that cash from LBHI each day to enable them to make any payments.

11.    Lehman Brothers International (Europe) ("LBIE") was the principal trading company, and broker-dealer, within the Lehman Group in Europe. Its business involves the provision of a wide range of financial services, including trading and broking equity and fixed income instruments and financial derivatives. It carried out its business globally. LBIE's headquarters are in London, though it has offices in several other countries in Europe and Asia.

12.    LB UK RE Holdings Limited ("LBUKRE") is a holding company for the real estate division of the European Group. Its business consists primarily, both directly and through subsidiaries, of investing in real estate, funds, non-performing loans and sub-performing loans.

13.    Lehman Brothers Limited ("LBL") provides administrative services to fellow Group companies in the U.K. and European operations of Lehman, including the provision of property, employees and support services such as IT, clearance and settlement.

14.    Lehman Brothers Holdings plc ("LBH") holds fixed asset investments in a range of assets, the majority of which are held through investments in subsidiaries.

15.    Following the real estate crisis in the United States, the necessity for the Lehman Group to make a number of provisions and write-downs in its accounts, loss of investor and market confidence, the Chapter 11 filing of the Lehman Group's ultimate

holding company, LBHI, and other factors, the European Group companies listed above were forced to enter English administration proceedings.

The Joint Administrators' Activities To Date

16.    In the few days since the Appointment Orders were entered last Monday, the Joint Administrators have endeavored to investigate and to understand the far-flung operations of the Lehman European Group Administration Companies' businesses, which are by no means confined to Europe.    As described above, the Lehman European Group Administration Companies operated hand in hand with their U.S. counterparts, as well as providing financial services from a variety of offices in Europe, the Middle East, and Asia to clients across the world.

17.    The Joint Administrators have installed a team of approximately 200 PricewaterhouseCoopers LLP employees and 100 lawyers at the offices of the Lehman European Group Administration Companies to manage those companies' business and affairs, including gaining an understanding of the companies' businesses and financial status.    The Joint Administrators, our staff and the Lehman's employees have also had correspondence and notices from a vast number of creditors and counterparties in respect of their claims and other concerns.    The Joint Administrators and our staff must also address continuation of the businesses and employee retention.    Counsel for the Joint Administrators have met and spoken with counsel for the Debtors as well.    Although significant progress had been made, it is obvious that the investigation of the Lehman European Group Administration Companies' business and financial affairs will take a significant time to be completed.

18.    The investigation to date has, however, highlighted certain important considerations relating to the Asset Purchase Agreement dated as of September 16, 2008

("APA"). These issues arise from the intimate interconnection of the Lehman Group's global business segments.

19.     First, there appear to be a number of assets utilized by or in the name of LBI and/or the Debtors that are actually owned by one of the Lehman European Group Administration Companies (and/or their subsidiaries).   For example, certain Lehman European Group Administration Companies, predominantly LBL, employed approximately 900 IT staff, and engaged a further 100 or so independent individual IT contractors.  That large base of internal IT staff provided support and development for IT applications used not only in Europe, but around the world, including by Debtor LBHI and LBI.  Under English law, intellectual property rights ordinarily vest in the employer, and certain inter-company correspondence reviewed by the Joint Administrators' counsel appears to acknowledge ownership, in whole or part, by LBL of a number of software packages used by U.S. Lehman entities.  Several of those software packages, such as SUB M and LMX/LOB, are vital to the trading and investment banking activities of the Lehman Group and its constituent businesses. They represent extremely valuable property rights.

20.     In addition, there appear to be some client contracts which were or are jointly performed by LBI and/or the Debtors, on the one hand, and one or more of the Lehman European Group Administration Companies (and/or their subsidiaries), on the other. The Joint Administrators' investigation is still preliminary, and it is too early to know with certainty which U.S. or U.K. entity owns which items of jointly utilized intellectual property. Indeed, it is too early to know with certainty about the ownership of many jointly shared or otherwise utilized assets.

21.     Just as employees of the Lehman European Group Administration Companies (and/or their subsidiaries) created software applications used in the U.S., employees of LBI contributed to applications now used by the Lehman European Group

Administration Companies (and/or their subsidiaries). In the ordinary course of a separation between the U.K. and U.S. entities of the Lehman Group, the Lehman European Group Administration Companies (and/or their subsidiaries) would seek assurances that they could continue to use this software after closing of a sale of a U.S. entity. Without such assurances, the Lehman European Group Administration Companies' (and/or their subsidiaries') businesses cannot operate without infringing intellectual property rights. It appears from the Joint Administrators' preliminary investigation that no express written intra-group IP license was put in place, although it is the Joint Administrators' Counsel's view that an implied license would likely exist. To ensure the orderly continuation of the Lehman European Group Administration Companies' (and/or their subsidiaries') businesses and to prevent potentially serious disruption to the Joint Administrators discharging their functions, an appropriate perpetual and royalty-free license must be negotiated and agreed by the relevant parties.

22.    Second, in order to preserve the continuity and value of the Lehman European Group Administration Companies' businesses, there needs to be an agreement among the parties as to transitional services. LBI currently makes software applications and data storage facilities available to the Lehman European Group Administration Companies (and/or their subsidiaries) on its servers; for example the core Ebanker system used by the global investment banking group. Should the parties agree on a licensing arrangement, the Lehman European Group Administration Companies will require a period of time in which to transfer applications and data to their own servers, as well as the cooperation of the U.S. entities with that effort. Without such a transitional arrangement, the Lehman European Group Administration Companies' businesses and, consequently, the Joint Administrators' ability to deal with those businesses, will be significantly impaired.

Books and Records

23.    The Joint Administrators require access rights to the books and records to be retained by Seller and Purchaser to the extent reasonably required in the administration of the Lehman European Group Administration Companies.  The Joint Administrators must investigate and understand a complex business with a global reach, much of it directed and financed out of the United States headquarters.  The daily global cash sweep controlled by LBHI is only one example of funds flows into and out of the United States that the Joint Administrators must understand and reconcile for the benefit of the creditors of the Lehman European Group Administration Companies.  Without reasonable access to the books and records to be retained by Seller and Purchaser, the Joint Administrators will be impeded in our duties.

Confidentiality

24.    The IT systems and databases contain extensive proprietary and confidential information.  Given that the IT systems are so integrated and closely linked, as described above, in the absence of appropriate agreement or protection, that information is available to the Sellers, of which they may be able to make unrestricted use.  To protect that information and the Lehman European Group Administration Companies' interests in it, appropriate restrictions must be negotiated and agreed among the relevant parties. Consequently, the APA should include protections for the confidential information of the Lehman European Group Administration Companies (and their subsidiaries) as well as for the benefit of the Buyer.

Transfer of Lehman European Group Administration Companies' Funds

25.    The Joint Administrators' preliminary investigation over the first few days of the Administration has already revealed evidence of substantial transfers of securities

out of LBIE which merit close investigation. LBIE is the Administration Company entity that was the broker-dealer for the Lehman European Group. In its ordinary course of business before entering administration, LBIE held billions of dollars worth of securities. As the market lost confidence in the Lehman Group in recent weeks, many of its clients in the prime brokerage business began to transfer their securities from the Lehman Group to other prime brokers.

26.    In such cases, it appears, the securities were typically transferred from LBIE to LBI, the U.S. broker-dealer, then to another Lehman Group entity located in Luxembourg, and from there to the new prime broker. What was supposed to happen next was that the funds to reimburse LBIE in respect of the securities and any margin posted in connection with the client accounts were to flow from the new prime broker back through the chain of Lehman entities to LBIE. But in many cases, it appears, that did not happen. The Joint Administrators' understanding so far is that those funds were transferred from the new prime broker through the Luxembourg entity to LBI. It seems the funds never reached LBIE. In just the past few days, the Joint Administrators have identified more than $8 billion in such funds that are due to LBIE but that LBIE does not hold. As the investigation progresses, it is quite possible that the Joint Administrators will discover further transfers that may require investigation.

27.    Depending on the results of the Joint Administrators' investigations, transfers of this magnitude could have a significant effect on the creditors of LBIE, potentially depriving them of billions of dollars in recoveries. It will be our duty as the Joint Administrators to attempt to find and recover those funds. As counsel for the Joint Administrators have been informed by Debtors' counsel that LBI had negligible cash left at the Petition Date, it is likely that the funds referred to above have been disbursed to third parties in the days before these proceedings were commenced. Should the Joint

Administrators need to proceed against those third parties to recover assets, there should be no impediment to doing so by virtue of the proposed sale, if it is approved.

I certify pursuant to 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 19 day of September, 2008
In London, England

Dan Yoram Schwarzmann

# EXHIBIT 1

**IN THE HIGH COURT OF JUSTICE**

**CHANCERY DIVISION**

**COMPANIES COURT**

Before the Honourable Mr Justice Henderson

Monday the 15th day of September 2008

IN THE MATTER OF LEHMAN BROTHERS HOLDINGS PLC

AND IN THE MATTER OF THE INSOLVENCY ACT 1986

Nos 7942



---

~~DRAFT~~ ORDER



---

UPON THE UNISSUED APPLICATION of the directors of Lehman Brothers Holdings Plc
(company number 1854685) of 25 Bank Street, London E14 5LE (the "**Applicants**")

AND UPON HEARING Leading Counsel for the Applicants

AND UPON READING the evidence

AND UPON the Applicants undertaking, through Leading Counsel, to issue the Application
and to file the evidence as soon as is reasonably practicable

AND UPON the Court being satisfied on the evidence before it that the EC Regulation does
apply and that each and all of these proceedings are main proceedings as defined in Article
3 of the EC Regulation

IT IS ORDERED that:

1.  Anthony Victor Lomas, Steven Anthony Pearson, Dan Yoram Schwarzmann and
    Michael John Andrew Jervis (the "**Joint Administrators**") of PricewaterhouseCoopers
    LLP, Plumtree Court, London EC4A, 4HT be appointed as joint administrators of
    Lehman Brothers Holdings Plc;

2.    during the period for which this order is in force the affairs, business and property of the Companies be managed by the Joint Administrators in accordance with the Insolvency Act 1986;

3.    any act required or authorised under any enactment to be done by either or all of the Joint Administrators may be done by any one or more of the person for the time being holding that office;

4.    service of the Application on the Joint Administrators and Mable Commercial Funding Limited be dispensed with;

5.    the time for hearing the Application be abridged, pursuant to rule 12.9(2) of the Insolvency Rules 1986, so as to enable this to be heard today;

6.    the costs of and incidental to this Application be paid as an expense of the administration;

7.    the appointments of the Joint Administrators shall take effect from 07:56 an on 15 September 2008

Nos. ...7.9.4.3........



**IN THE HIGH COURT OF JUSTICE**

**CHANCERY DIVISION**

**COMPANIES COURT**

Before the Honourable Mr Justice
Henderson

Monday the 15th day of September 2008

**IN THE MATTER OF LEHMAN BROTHERS
HOLDINGS PLC**

**AND IN THE MATTER OF THE INSOLVENCY
ACT 1986**

---

~~DRAFT~~ ORDER

---

Linklaters
One Silk Street
London EC2Y 8HQ

Tel:    +(44) 207 456 2000

Ref:    Euan Clarke

# EXHIBIT 2

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

COMPANIES COURT



Nos .7.9.......of 2008

Before the Honourable Mr Justice Henderson

Monday the 15th day of September 2008

IN THE MATTER OF LEHMAN BROTHERS LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT 1986

---

**DRAFT ORDER**

---

**UPON THE UNISSUED APPLICATION** of the directors of Lehman Brothers Limited (company number 846922) of 25 Bank Street, London E14 5LE (the "**Applicants**")

**AND UPON HEARING** Leading Counsel for the Applicants

**AND UPON READING** the evidence

**AND UPON** the Applicants undertaking, through Leading Counsel, to issue the Application and to file the evidence as soon as is reasonably practicable

**AND UPON** the Court being satisfied on the evidence before it that the EC Regulation does apply and that each and all of these proceedings are main proceedings as defined in Article 3 of the EC Regulation

**IT IS ORDERED** that:

1.    Anthony Victor Lomas, Steven Anthony Pearson, Dan Yoram Schwarzmann and Michael John Andrew Jervis (the "**Joint Administrators**") of PricewaterhouseCoopers LLP, Plumtree Court, London EC4A, 4HT be appointed as joint administrators of Lehman Brothers Limited;

2.  during the period for which this order is in force the affairs, business and property of the Companies be managed by the Joint Administrators in accordance with the Insolvency Act 1986;

3.  any act required or authorised under any enactment to be done by either or all of the Joint Administrators may be done by any one or more of the person for the time being holding that office;

4.  service of the Application on the Joint Administrators be dispensed with;

5.  the time for hearing the Application be abridged, pursuant to rule 12.9(2) of the Insolvency Rules 1986, so as to enable this to be heard today;

6.  the costs of and incidental to this Application be paid as an expense of the administration;

7.  the appointments of the Joint Administrators shall take effect from .....07:56am..... on 15 September 2008



No. ............... of 2008

**IN THE HIGH COURT OF JUSTICE**

**CHANCERY DIVISION**

**COMPANIES COURT**

**Before the Honourable Mr Justice Henderson**

**Monday the 15th day of September 2008**

**IN THE MATTER OF LEHMAN BROTHERS LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT 1986**

---

~~DRAFT~~ ORDER

---

Linklaters
One Silk Street
London EC2Y 8HQ

Tel:    +(44) 207 456 2000

Ref:    Euan Clarke

# EXHIBIT 3

**IN THE HIGH COURT OF JUSTICE**

**CHANCERY DIVISION**

**COMPANIES COURT**

**Before the Honourable Mr Justice Henderson**

**Monday the 15th day of September 2008**

**IN THE MATTER OF LB UK RE HOLDINGS LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT 1986**



Nos ̶7̶9̶4̶4̶

---

~~DRAFT~~ ORDER

---

**UPON THE UNISSUED APPLICATION** of the directors of LB UK RE Holdings Limited (company number 5347966) of 25 Bank Street, London E14 5LE (the "**Applicants**")

**AND UPON HEARING** Leading Counsel for the Applicants

**AND UPON READING** the evidence

**AND UPON** the Applicants undertaking, through Leading Counsel, to issue the Application and to file the evidence as soon as is reasonably practicable

**AND UPON** the Court being satisfied on the evidence before it that the EC Regulation does apply and that each and all of these proceedings are main proceedings as defined in Article 3 of the EC Regulation

**IT IS ORDERED** that:

1.    Anthony Victor Lomas, Steven Anthony Pearson, Dan Yoram Schwarzmann and Michael John Andrew Jervis (the "**Joint Administrators**") of PricewaterhouseCoopers LLP, Plumtree Court, London EC4A, 4HT be appointed as joint administrators of LB UK RE Holdings Limited;

2.  during the period for which this order is in force the affairs, business and property of the Companies be managed by the Joint Administrators in accordance with the Insolvency Act 1986;

3.  any act required or authorised under any enactment to be done by either or all of the Joint Administrators may be done by any one or more of the person for the time being holding that office;

4.  service of the Application on the Joint Administrators be dispensed with;

5.  the time for hearing the Application be abridged, pursuant to rule 12.9(2) of the Insolvency Rules 1986, so as to enable this to be heard today;

6.  the costs of and incidental to this Application be paid as an expense of the administration;

7.  the appointments of the Joint Administrators shall take effect from 7.56 a.m on 15 September 2008

Nos. ..7944.......



**IN THE HIGH COURT OF JUSTICE**

**CHANCERY DIVISION**

**COMPANIES COURT**

Before the Honourable Mr Justice
Henderson

Monday the 15th day of September 2008

**IN THE MATTER OF LB UK RE HOLDINGS
LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY
ACT 1986**

---

~~DRAFT~~ ORDER

---

Linklaters
One Silk Street
London EC2Y 8HQ

Tel:     +(44) 207 456 2000

Ref:     Euan Clarke

# EXHIBIT 4

**IN THE HIGH COURT OF JUSTICE**

**CHANCERY DIVISION**

**COMPANIES COURT**

Before the Honourable Mr Justice Henderson

Monday the 15th day of September 2008

IN THE MATTER OF LEHMAN BROTHERS INTERNATIONAL (EUROPE)

AND IN THE MATTER OF THE INSOLVENCY ACT 1986

Nos 7942 of 2008



---

~~DRAFT~~ ORDER

---

**UPON THE UNISSUED APPLICATION** of the directors of Lehman Brothers International (Europe) (company number 2538254) of 25 Bank Street, London E14 5LE (the "**Applicants**")

**AND UPON HEARING** Leading Counsel for the Applicants and Leading Counsel for the Financial Services Authority

**AND UPON READING** the evidence

**AND UPON** the Applicants undertaking, through Leading Counsel, to issue the Application and to file the evidence as soon as is reasonably practicable

**AND UPON** the Court being satisfied on the evidence before it that the EC Regulation does not apply

**IT IS ORDERED** that:

1.    Anthony Victor Lomas, Steven Anthony Pearson, Dan Yoram Schwarzmann and Michael John Andrew Jervis (the "**Joint Administrators**") of PricewaterhouseCoopers LLP, Plumtree Court, London EC4A, 4HT be appointed as joint administrators of Lehman Brothers International (Europe);

2.  during the period for which this order is in force the affairs, business and property of the Companies be managed by the Joint Administrators in accordance with the Insolvency Act 1986;

3.  any act required or authorised under any enactment to be done by either or all of the Joint Administrators may be done by any one or more of the person for the time being holding that office;

4.  service of the Application on the Joint Administrators and on the FSA be dispensed with;

5.  the time for hearing the Application be abridged, pursuant to rule 12.9(2) of the Insolvency Rules 1986, so as to enable this to be heard today;

6.  the costs of and incidental to this Application be paid as an expense of the administration;

7.  the appointments of the Joint Administrators shall take effect from .07:56am... on 15 September 2008

Nos. 7942 .........  2008



**IN THE HIGH COURT OF JUSTICE**

**CHANCERY DIVISION**

**COMPANIES COURT**

**Before the Honourable Mr Justice Henderson**

**Monday the 15th day of September 2008**

**IN THE MATTER OF LEHMAN BROTHERS INTERNATIONAL (EUROPE)**

**AND IN THE MATTER OF THE INSOLVENCY ACT 1986**

---

~~[ DRAFT ]~~ ORDER

---

Linklaters
One Silk Street
London EC2Y 8HQ

Tel:    +(44) 207 456 2000

Ref:    Euan Clarke