**Requested Hearing Date:  October 2, 2008 at 3:00 p.m. (prevailing Eastern time)**
**Requested Objection Date:  October 1, 2008 at 4:00 p.m. (prevailing Eastern time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus
Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.     :    08-13555 (JMP)
                                          :
              Debtors.                    :    (Jointly Administered)
                                          :
-----------------------------------------------------------------x
```

### DEBTORS' MOTION PURSUANT TO SECTIONS 105, 365, AND 554(a) OF THE BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF PERSONAL AND NON-RESIDENTIAL REAL PROPERTY AND ABANDONMENT OF RELATED PERSONAL PROPERTY

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully represent:

### Background

1. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPA Trustee") is administering LBI's estate.

## Jurisdiction

4.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Lehman's Business

5.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.  Its headquarters in New York and regional headquarters in London and Tokyo are complemented by a network of offices in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

6.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District

of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Preliminary Statement**

7.        On September 16, 2008, certain of the Debtors, LBI, and Barclays Capital Inc. ("Purchaser") entered into an Asset Purchase Agreement (as amended and clarified from time to time, the "Purchase Agreement").  On September 20, 2008, the Court entered an order (the "Sale Order") approving the Purchase Agreement and the various transactions contemplated therein [Docket No. 258].[1]  The Bankruptcy Court entered a concurrent order approving the Purchase Agreement in LBI's proceeding under SIPA, thereby authorizing the SIPA Trustee to consummate the sale transaction on behalf of LBI.[2]

8.        The Purchase Agreement and Sale Order provide for the assumption and assignment of certain contracts and leases to the Purchaser.  Given the expedited nature of the sale transaction, the contracts and leases were divided into two categories.  The first category consisted of contracts and leases that the Purchaser required to be assumed and assigned to Purchaser on the Closing Date (the "Closing Date Contracts").  The second category consisted of the remaining contracts and leases that relate to the sale to the Purchaser (the "Related Contracts").  Section 2.5 of the Purchase Agreement provides that the Purchaser will have a sixty-day period following the Closing Date to designate any Related Contract for assumption and assignment as a "Purchased Contract,"[3] or for rejection as a "Rejected Contract."  Related Contracts may be rejected by the Debtors if not so designated.

---

[1]        Capitalized terms that are used but not defined in this Motion have the meanings ascribed to them in the Sale Order or the Purchase Agreement, as the case may be.

[2]        In the SIPA proceeding, on September 20, 2008, the Bankruptcy Court entered its Order Approving, And Incorporating By Reference For The Purposes Of This Proceeding, An Order Authorizing The Sale Of Purchased Assets And Other Relief In The Lehman Brothers, Holdings Inc. Chapter 11 Proceedings (the "SIPA Sale Order") [Docket #3].  References to the "Sale Order" herein include the SIPA Sale Order.

[3]        For purposes of this Motion, Purchased Contracts include PIM Leases (as such term is defined in that certain Clarification Letter with respect to the Purchase Agreement, dated September 20, 2008 (the "Clarification Letter") that are designated for assumption and assignment by the Purchaser in accordance with the terms of the Clarification Letter.

9.        Because the Debtors are obligated to assign the Purchased Contracts to the Purchaser and it would be unnecessarily burdensome and costly to prepare, file and serve an assumption motion with respect to each such Contract, procedures are necessary to provide counterparties to Related Contracts with sufficient notice of the proposed treatment of their agreements and to  provide an efficient mechanism for resolving any disputes as to the amount required to cure existing defaults ("Cure Amounts") for Related Contracts designated as Purchased Contracts.  The Debtors also would like to establish procedures to expedite the rejection of other contracts and leases not assigned to the Purchaser.

10.        The Debtors and LBI are parties to a large number of Financial Services Agreements (as defined below).[4]  The Purchaser believes that the Financial Services Agreements constitute an important part of the overall assets that were sold pursuant to the Purchase Agreement.  Unlike other contracts and leases assumed and assigned to the Purchaser, Financial Services Agreements frequently contain confidential or commercially sensitive information, relate to transactions that are time-sensitive in nature, and in some instances relate to transactions that are not otherwise publicly disclosed, which would render the procedures proposed for other Purchased Contracts impracticable.  Moreover, many counterparties to Financial Services Agreements require the immediate assumption and assignment of their agreements in order to foster certainty in connection with pending transactions, and the failure to obtain such immediate assumption and assignment could lead to the loss of substantial business for the Purchaser in connection with the Acquired Assets.  Accordingly, with respect to Purchased Contracts constituting Financial Services Agreements (defined below), the Purchaser and the SIPA Trustee have entered into that certain Stipulation and Order, dated September 25, 2008, setting forth the proposed mechanics for providing counterparties with notice of the assumption and assignment of Financial Services Agreements to Purchaser (the "Financial Services Agreement Stipulation").

---

[4]        The Debtors understand that LBI, rather than the Debtors, is party to the bulk of the Financial Services Agreements.  The procedures set forth herein include procedures for Financial Services Agreements as the Debtors are informed that the SIPA Trustee intends to file a concurrent motion adopting such procedures.

The Financial Services Agreement Stipulation provides that disputes regarding Cure Amounts
for Financial Services Agreements shall be resolved in accordance with the procedures set forth
in this motion for Purchased Contracts other than Financial Services Agreements.

## Relief Requested

11.     The Debtors respectfully request, pursuant to sections 105 and 365 of the
Bankruptcy Code, Rule 6006 of the Federal Rules of Bankruptcy Procedure, and Rule 6006-1 of
the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), an order,
substantially in the form attached hereto as Exhibit 1, approving (i) procedures for the Debtors'
assumption and assignment of, including resolution of Cure Amounts for, Purchased Contracts,
(ii) procedures for the Debtors' rejection of Rejected Contracts, and (iii) the form of notice to be
served upon counterparties to Purchased Contract or Rejected Contract, substantially in the
forms attached hereto as Exhibits A and B, respectively.  The Debtors submit the procedures
described below are reasonable and represent an appropriate exercise of their sound business
judgment.

## Procedures For Purchased Contracts

12.     The proposed procedures to assume and assign Purchased Contracts are as
follows:

a.      All Related Contracts pursuant to which the Debtors provide financial
services to third parties (each such contract, a "Financial Services
Agreement"), including, without limitation, agreements by the Debtors for
mandates or engagements for M&A advisory and other financial advisory
services, underwriting, placement, and distribution or remarketing of
securities, that are designated as Purchased Contracts shall be deemed a
Purchased Contract without further action by the Purchaser or the Debtors,
provided that (1) such Financial Services Agreement constitutes a Related
Contract pursuant to section 2.5 of the Purchase Agreement and (2) such
Financial Services Agreement constitutes an executory contract under
section 365 of the Bankruptcy Code.  The Cure Amount required to be
paid in connection with the assumption and assignment of a Financial
Services Agreement shall be $0.00, unless the Debtors and Purchaser
notify the counterparty of a different Cure Amount.   Purchaser shall
provide notice to the counterparty to the Financial Services Agreement of
the assignment, including the Cure Amount.

b.      For any Purchased Contract that is not a Financial Services Agreement, the Debtors will file on the docket of these chapter 11 cases[5] a notice (the "Assignment Notice") setting forth the designation of the Purchased Contract as an agreement assumed and assigned to Purchaser,[6] and will serve the Assignment Notice via Federal Express or other overnight mail delivery service and fax or email (where available) on:  (i) the non-Debtor party (and its counsel, if known) under the respective lease or contract at the last known address available to the Debtors, (ii) counsel for the Creditors' Committee, (iii) counsel for the Purchaser, (iv) the U.S. Trustee, and (v) counsel for the SIPA Trustee (collectively, the "Notice Parties").

c.      The Assignment Notice shall be substantially in the form of Exhibit A annexed hereto.  With respect to leases being assumed and assigned, the Assignment Notice shall set forth the following information, to the best of the Debtors' and Purchaser's information: (i) the street address of real property, or a description of the personal property, that is the subject of the lease, (ii) the name and address of the affected lessor, and (iii) the proposed Cure Amount, if any.  With respect to contracts being assumed and assigned, the Assignment Notice shall set forth the following information, to the best of the Debtors' and Purchasers' information:  (a) the name and address of the contract counterparty, (b) a brief description of the contract, and (c) the proposed Cure Amount, if any.  All Assignment Notices also shall set forth the deadlines and procedures for objecting and will be accompanied by a copy of the Order granting this Motion.

d.      Any party in interest that objects to the proposed assignment and/or Cure Amount must file and serve a written objection so that such objection is filed with the Court and actually received by the following parties (the "Objection Notice Parties") no later than ten (10) days after the date on which the notice of assignment is sent to the counterparty: (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Shai Y. Waisman); (ii) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis); (iii) the attorneys for the Purchaser, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York NY 10006 (Attn: Lindsee P. Granfield and Lisa M. Schweitzer); (iv) the attorneys for the Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Dennis F. Dunne, Luc A. Despins, and Wilbur F. Foster, Jr.); and (v) the

---

[5]     The Debtors anticipate that the SIPA Trustee will file a similar notice on the docket for LBI's SIPA proceeding in respect of leases and contracts involving LBI.

[6]     Consistent with Rule 6006(f) of the Federal Rules of Bankruptcy Procedure, however, no more than 100 executory contracts or unexpired leases will be contained on any one Assignment Notice.

attorneys for the SIPA Trustee, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 (Attn: James B. Kobak, David Wiltenburg, and Jeff Margolin).

e.     To the extent that any counterparty does not timely file an objection as set forth above, such counterparty is deemed to have consented to such Cure Amounts and the assumption and assignment of their respective Purchased Contracts to the Purchaser as set forth in the Assignment Notice.

f.     To the extent any objections to the Cure Amounts for such contracts are timely filed, the Debtors, Purchaser and the counterparty shall meet and confer in good faith to attempt resolve any such objection without Court intervention.  If the objecting party and the Purchaser determine that the objection cannot be resolved without judicial intervention, then such dispute will be determined by the Court upon written application by either party on 20 (twenty) days notice, with any response due to such an application 15 (fifteen) days after such application is filed.

g.     The Purchaser shall pay any Cure Amount as soon as reasonably practicable after the earliest of (i) the date on which the contracting counterparty consents in writing to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, (ii) the date on which the counterparty is deemed to have consented to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, or (iii) the date on which the Court enters an order determining the Cure Amount for such contract after the notice and hearing procedure set forth above.

## Procedures For Rejected Contracts

13.     The proposed procedures to reject the Rejected Contracts are as follows:

a.     The Debtors will file on the docket for these chapter 11 cases a notice[7] (the "Rejection Notice") setting forth the proposed rejection of one or more contracts and/or leases,[8] and will serve the Rejection Notice via Federal Express or other overnight mail delivery service and fax or email (where available) on the Notice Parties.

b.     The Rejection Notice shall be substantially in the form of Exhibit B annexed hereto.  With respect to leases to be rejected, the Rejection Notice shall set forth the following information, to the best of the Debtors' and

---

[7]     The Debtors anticipate that the SIPA Trustee will file a similar notice on the docket for LBI's SIPA proceeding in respect of leases and contracts involving LBI.

[8]     Consistent with Rule 6006(f) of the Federal Rules of Bankruptcy Procedure, however, no more than 100 executory contracts or unexpired leases will be contained on any one Rejection Notice.

Purchasers' information: (i) the street address of real property, or a description of the personal property, that is the subject of the lease and (ii) the name and address of the affected lessor.  With respect to contracts to be rejected, the Rejection Notice shall set forth the following information, to the best of the Debtors' and Purchasers' information:  (i) the name and address of the contract counterparty, and (ii) a brief description of the contract to be rejected.  All Rejection Notices will set forth the deadlines and procedures for objecting to such Rejection , the effective date of rejection and be accompanied by a copy of the Order granting this Motion.

c.      Should a party in interest object to the Debtors' proposed rejection of a contract or lease, such party must file and serve a written objection so that such objection is filed with this Court and underlined actually received by the Objection Notice Parties no later than ten (10) days after the date on which the notice of rejection is sent to the counterparty.

d.      If no objection to a Rejection Notice is timely filed, the Rejected Contract shall be deemed rejected on the effective date set forth in the Rejection Notice, or, if no such date is set forth, the date the Rejection Notice is filed with the Court (the "Rejection Date").

e.      If a timely objection to a Rejection Notice is filed and received in accordance with these proposed procedures for rejection, the Debtors shall schedule a hearing on such objection and shall provide at least five (5) days' notice of such hearing to the objecting party and the Objection Notice Parties.  If the Court ultimately upholds the Debtors' determination to reject the applicable lease or contract, then the applicable lease or contract shall be deemed rejected (a) as of the Rejection Date, or (b) as otherwise determined by the Court as set forth in any order overruling such objection.

f.      Claims arising out of Rejected Contracts must be filed with Epiq Bankruptcy Solutions, LLC,[9] the Court-approved claims processing agent, on or before the later of (i) the deadline for filing proofs of claim established by the Court in the Debtors' cases or (ii) forty-five (45) days after the applicable Rejection Notice is filed.  If no proof of claim is timely filed, such claimant shall be forever barred from asserting a claim for rejection damages.

---

[9]      Claims should be sent to the following addresses:

If by first-class mail:  Lehman Brothers' Claims Processing, c/o Epiq Bankruptcy Solutions, LLC, FDR Station, P.O. Box 5076, New York, New York 10150-5076.

If by hand delivery or overnight mail:  Epiq Bankruptcy Solutions, LLC, Attn:  Lehman Brothers' Claims Processing, 757 Third Avenue, 3rd Floor, New York, New York 10017.

g.      If the Debtors have deposited funds with the counterparty to a Rejected Contract as a security deposit or other arrangement, such counterparty may not setoff or otherwise use such deposit without the prior authority of the Court or agreement of the parties.

h.      The Debtors also request authority to remove any property from the premises that are the subject of any rejected lease, consistent with the Debtors' ownership rights or other property interests therein, personal property that the Debtors have installed in or about the leased premises (i.e., fixtures, furniture, equipment, and other property) that is either owned by the Debtors, leased by the Debtors from third parties, or subject to any equipment financing agreements with third parties.  To the extent that the Debtors determine that any interest of the Debtors in property has little or no value or that the preservation thereof will be burdensome to their estates compared with the expense of removing and storing such property, the Debtors request authority to abandon, in their sole discretion, such property remaining at the premises subject to a rejected lease as of the Rejection Date.  In the event the Debtors propose to abandon property, the foregoing notice and objection procedures will apply and the Debtors shall otherwise be excused from the requirements of Rule 6007-1 of the Local Rules for the Southern District of New York.  Absent a timely objection filed in accordance with these rejection procedures, the property will be deemed abandoned pursuant to section 554 of the Bankruptcy Code as of the Rejection Date and, except as set forth above, the landlord(s) may dispose of such abandoned property without liability to any third party claiming an interest in such abandoned property.

i.      If the Debtors propose to reject a lease of personal property pursuant to a Rejection Notice, such Rejection Notice shall provide a description of the leased property, the location of same, and the automatic stay shall be deemed modified to permit the respective personal property lessor to recover such leased property within ten (10) days of the Rejection Date (the "Collection Period").  If the lessor does not retrieve its property by the end of the Collection Period, the property shall be deemed abandoned without further order of this Court, free and clear of any interests, and the owner of the premises containing such property or its designee shall be free to dispose of same without liability to any party.

14.      In connection with the foregoing procedures, the Debtors also request that they be authorized to execute and deliver all instruments and documents, and take such other actions as may be necessary or appropriate to implement and effectuate these procedures as approved by this Court and that entry of the requested order be without prejudice to the Debtors'

right to seek further, other, or different relief regarding Purchased Contracts and/or Rejected
Contracts.

## **Basis for Relief Requested**

15.     Section 365(a) of the Bankruptcy Code empowers a debtor in possession,
"subject to the court's approval, [to] assume or reject any executory contracts or unexpired leases
of the debtor." 11 U.S.C. § 365(a). The proposed procedures set forth above should be approved
because they provide an efficient and orderly mechanism to implement the transactions this
Court approved in the Sale Order. Moreover, the proposed procedures are consistent with the
requirements of the Bankruptcy Code given the nature of the Debtors' business and the
circumstances of these chapter 11 cases.

16.     In determining whether to approve the assumption or rejection of contracts
and leases of the debtor, courts apply the "business judgment" standard. *See Nostas Assocs. v.
Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures Corp. v.
Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993). "More
exacting scrutiny would slow the administration of the debtor's estate and increase its cost,
interfere with the Bankruptcy Code's provision for private control of administration of the estate,
and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital
Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

17.     Here, the Debtors have agreed to sell certain of their operations to the
Purchaser as a going concern. The court has approved the sale transaction as embodied in the
Purchase Agreement and thus the Debtors must comply with the Purchase Agreement and the
Sale Order and assign to the Purchaser any contracts designated as Purchased Contracts. The
proposed procedures set forth herein provide for the resolution of issues relating to the
assumption and assignment of Purchased Contracts, including with respect to disputed Cure
Amounts. Any contract or lease counterparty that fails to object to the proposed terms of
assumption and assignment, including cure, should be deemed to consent to the treatment of its
Purchased Contract under section 365 of the Bankruptcy Code and the Sale Order. *See, e.g.,*

*FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002) (by failing to object to a sale motion of which it had adequate notice, a creditor is deemed to consent to the sale); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (same); *In re Elliot*, 94 B.R. 343 (E.D. Pa. 1988) (same). Counterparties that object are given an opportunity to be heard if the matter cannot be resolved consensually.

18.    Moreover, the proposed procedures for Rejected Contracts are consistent with the provisions of the Bankruptcy Code and Bankruptcy Rules. Any contracts or leases not purchased by the Purchaser will likely be burdensome and unnecessary to the Debtors' estates. As such, the Debtors seek approval of the Procedures to streamline the process of rejecting leases and contracts that remain in the Debtors' estates. Because these leases and contracts provide no benefit to the Debtors' estates, their rejection and the attendant reduction in the estates' administrative costs, reflects the Debtors' exercise of sound business judgment.

19.    The counterparties to the rejected leases and contracts will not be prejudiced by the Rejection Procedures because, upon receipt of a Rejection Notice, such counterparties will have received advance notice of the Debtors' intent to reject their respective lease or contract and of the effective date of the rejection. *See, e.g., In re Mid Region Petroleum, Inc.*, 111 B.R. 968, 970 (Bankr. N.D. Okla. 1990) (effective date of rejection of leases was the date the trustee gave notice to lessor of intent to reject); *In re Carlisle Homes, Inc.*, 103 B.R. 524, 535 (Bankr. D.N.J. 1988) (debtor may reject executory contract by clearly communicating intention to reject). The Debtors submit that the proposed rejection procedures balance the need for an expeditious reduction of burdensome costs to the Debtors' estates while providing due notice of the proposed rejection to the contract or lease counterparties.

20.    With respect to the Debtors' request for authority to abandon property, the Debtors submit that the standard set forth in section 554(a) of the Bankruptcy Code is satisfied. Section 554(a) provides that a debtor in possession may abandon, subject to court approval, "property of the estate that . . . is of inconsequential value and benefit to the estate." 11 U.S.C. §554(a). Before authorizing abandonment of property, a bankruptcy court must find either: (i)

the property is burdensome to the estate or (ii) the property is both of inconsequential value and inconsequential benefit to the estate.  *See, e.g., Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 497 (1986), *reh'g denied*, 475 U.S. 1091 (1986); *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877, 882 n.7 (Bankr. S.D.N.Y. 1990).  Here, the personal property that may be abandoned would consist of fixtures, advertising displays, or office equipment that is (a) of no value or benefit to the Debtors' estates and/or (b) burdensome insofar as the costs of removal and storage of such property is likely to exceed the net proceeds realizable from their sale.

21.    Finally, section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The Debtors submit that the implementation of the proposed procedures is appropriate in these chapter 11 cases, is well within the Court's equitable powers under sections 105 and 365 of the Bankruptcy Code, and is consistent with procedures for assumption and assignment or rejection of contracts and leases in other large chapter 11 cases. *See, e.g., In re Sharper Image Corp.*, Ch. 11 Case No. 08-10322 (KG) (Bankr. D. Del. Mar. 14, 2008); *In re Three A's Holdings, L.L.C., et al.*, Ch. 11 Case No. 06-10886 (RLS) (Jointly Administered) (Bankr. D. Del. Sept. 25, 2006);  *In re MTS Inc., et al.*, Ch. 11 Case No. 04-10394 (BLS) (Bankr. D. Del. Mar. 2, 2004); *In re WorldCom, Inc.*, Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Sept. 24, 2002) (granting similar relief).

22.    The establishment of procedures to govern the assumption, assignment, and cure, or rejection, of contracts and leases relating to the Purchase Agreement was an integral aspect of the Debtors' agreement with the Purchaser. Such procedures are necessary to allow for the efficient operation of the business transferred by the Debtors to the Purchaser and also to minimize the administrative burden on the Debtors, the SIPA Trustee and their respective professionals.

23.    The Debtors submit that the proposed procedures should be approved because they are in the best interests of the Debtors' estates and a proper exercise of the Debtors' business judgment.

## Notice

24.     No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on September 22, 2008 governing case management and administrative procedures for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the attorneys for the Debtors' postpetition lenders; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New York; (vii) the SIPA Trustee; and (viii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

25.     No previous request for the relief sought herein has been made to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested and such other and further relief as is just.

Dated:  September 26, 2008
        New York, New York

/s/ Shai Y. Waisman
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**EXHIBIT 1**
**Related Contract Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                            :
In re                                       :        **Chapter 11 Case No.**
                                            :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*  :        **08-13555 (JMP)**
                                            :
                 **Debtors.**                :        **(Jointly Administered)**
                                            :
-------------------------------------------------------------------x

**ORDER GRANTING DEBTORS' MOTION PURSUANT TO SECTIONS 105, 365,**
**AND 554(a) OF THE BANKRUPTCY CODE TO ESTABLISH PROCEDURES**
**FOR THE ASSUMPTION AND ASSIGNMENT OR REJECTION OF**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF NON-**
**RESIDENTIAL REAL PROPERTY AND ABANDONMENT**
**OF RELATED PERSONAL PROPERTY**

Upon the motion, dated September 26, 2008 (the "Motion"),[1] of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together

with their non-debtor affiliates, "Lehman"), for an order pursuant to 11 U.S.C. §§ 105,

365, and 554(a), Fed. R. Bankr. P. 6006, and Local Rule 6006-1 for an order approving

(i) procedures for the Debtors' assumption and assignment of Purchased Contracts, (ii)

procedures for the Debtors' rejection of Rejected Contracts, and (iii) the form of notice to

be served upon the counterparties to any Purchased Contract or Rejected Contract, all as

more fully described in the Motion; and the Court having jurisdiction to consider the

Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334

and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of

New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting

C.J.); and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

---

[1]    Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms
       in the Motion.

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having

been provided to (i) the United States Trustee for the Southern District of New York, (ii)

the attorneys for the Official Committee of Unsecured Creditors, (iii) the attorneys for the

Debtors' postpetition lenders, (iv) the Securities and Exchange Commission, (v) the

Internal Revenue Service, (vi) the United States Attorney for the Southern District of

New York, (vii) the SIPA Trustee and (viii) all parties who have requested notice in these

chapter 11 cases, and it appearing that no other or further notice need be provided; and a

hearing having been held to consider the relief requested in the Motion and the Objection;

and the Court having found and determined that the relief sought in the Motion is in the

best interests of the Debtors, their estates and creditors, and all parties in interest and that

the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, consistent with the Sale Order, the following procedures

(the "Assignment Procedures") for the assumption and assignment of Related Contracts

to the Purchaser pursuant to section 365 of the Bankruptcy Code are hereby approved and

established in the Debtors' chapter 11 cases:

> a.    All Related Contracts pursuant to which the Debtors provide
> financial services to third parties (each such contract, a "Financial
> Services Agreement"), including, without limitation, agreements
> by the Debtors for mandates or engagements for M&A advisory
> and other financial advisory services, underwriting, placement, and
> distribution or remarketing of securities, that are designated as
> Purchased Contracts[2] shall be deemed a Purchased Contract
> without further action by the Purchaser or the Debtors, provided

---

[2] For purposes of this Motion, Purchased Contracts include PIM Leases (as such term is defined in that
certain Clarification Letter with respect to the Purchase Agreement, dated September 20, 2008 (the
"Clarification Letter") that are designated for assumption and assignment by the Purchaser in accordance
with the terms of the Clarification Letter.

that (1) such Financial Services Agreement constitutes a Related Contract pursuant to section 2.5 of the Purchase Agreement and (2) such Financial Services Agreement constitutes an executory contract under section 365 of the Bankruptcy Code. The Cure Amount required to be paid in connection with the assumption and assignment of a Financial Services Agreement shall be $0.00, unless the Debtors and Purchaser notify the counterparty of a different Cure Amount. Purchaser shall provide notice to the counterparty to the Financial Services Agreement of the assignment, including the Cure Amount.

b.    For any Purchased Contract that is not a Financial Services Agreement, the Debtors will file on the docket of these chapter 11 cases a notice (the "<u>Assignment Notice</u>") setting forth the designation of the Purchased Contract as an agreement assumed and assigned to Purchaser,[3] and will serve the Assignment Notice via Federal Express or other overnight mail delivery service and fax or email (where available) on:  (i) the non-Debtor party (and its counsel, if known) under the respective lease or contract at the last known address available to the Debtors, (ii) counsel for the Creditors' Committee, (iii) counsel for the Purchaser, (iv) the U.S. Trustee, and (v) counsel for the SIPA Trustee (collectively, the "<u>Notice Parties</u>").

c.    The Assignment Notice shall be substantially in the form of <u>Exhibit A</u> annexed hereto. With respect to leases being assumed and assigned, the Assignment Notice shall set forth the following information, to the best of the Debtors' and Purchaser's information: (i) the street address of real property, or a description of the personal property, that is the subject of the lease, (ii) the name and address of the affected lessor, and (iii) the proposed Cure Amount, if any. With respect to contracts being assumed and assigned, the Assignment Notice shall set forth the following information, to the best of the Debtors' and Purchasers' information:  (a) the name and address of the contract counterparty, (b) a brief description of the contract, and (c) the proposed Cure Amount, if any. All Assignment Notices also shall set forth the deadlines and procedures for objecting and will be accompanied by a copy of the Order granting this Motion.

d.    Any party in interest that objects to the proposed assignment or Cure Amount must file and serve a written objection so that such

---

[3]    Consistent with Rule 6006(f) of the Federal Rules of Bankruptcy Procedure, however, no more than 100 executory contracts or unexpired leases will be contained on any one Assignment Notice.

objection is filed with the Court and <u>actually received</u> by the following parties (the "<u>Objection Notice Parties</u>") no later than ten (10) days after the date on which the notice of assignment is sent to the counterparty: (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Shai Y. Waisman); (ii) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis); (iii) the attorneys for the Purchaser, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York NY 10006 (Attn: Lindsee P. Granfield and Lisa M. Schweitzer); (iv) the attorneys for the Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Dennis F. Dunne, Luc A. Despins, and Wilbur F. Foster, Jr.); and (v) the attorneys for the SIPA Trustee,  Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 (Attn: James B. Kobak, David Wiltenburg, and Jeff Margolin).

e.      To the extent that any counterparty does not timely file an objection as set forth above, such counterparty is deemed to have consented to such Cure Amounts and the assumption and assignment of their respective Purchased Contracts to the Purchaser as set forth in the Assignment Notice.

f.      To the extent any objections to the Cure Amounts for such contracts are timely filed, the Debtors, Purchaser and the counterparty shall meet and confer in good faith to attempt resolve any such objection without Court intervention.  If the objecting party and the Purchaser determine that the objection cannot be resolved without judicial intervention, then such dispute will be determined by the Court upon written application by either party on 20 (twenty) days notice, with any response due to such an application 15 (fifteen) days after such application is filed.

g.      The Purchaser shall pay any Cure Amount as soon as reasonably practicable after the earliest of (i) the date on which the contracting counterparty consents in writing to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, (ii) the date on which the counterparty is deemed to have consented to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, or (iii) the date on which the Court enters an order determining the Cure Amount for such contract after the notice and hearing procedure set forth above; and it is further

18

ORDERED that the following procedures (the "Rejection Procedures") for the Debtors' rejection of Related Contracts pursuant to section 365 of the Bankruptcy Code and, as applicable, abandonment of related personal property pursuant to section 554 of the Bankruptcy Code, are hereby approved and established in the Debtors' chapter 11 cases:

    a.    The Debtors will file on the docket for these chapter 11 cases a notice (the "Rejection Notice") setting forth the proposed rejection of one or more contracts and/or leases,[4] and will serve the Rejection Notice via Federal Express or other overnight mail delivery service and fax or email (where available) on the Notice Parties.

    b.    The Rejection Notice shall be substantially in the form of Exhibit B annexed hereto.  With respect to leases to be rejected, the Rejection Notice shall set forth the following information, to the best of the Debtors' and Purchasers' information: (i) the street address of real property, or a description of the personal property, that is the subject of the lease and (ii) the name and address of the affected lessor.  With respect to contracts to be rejected, the Rejection Notice shall set forth the following information, to the best of the Debtors' and Purchasers' information:  (i) the name and address of the contract counterparty, and (ii) a brief description of the contract to be rejected.  All Rejection Notices will set forth the deadlines and procedures for objecting to such Rejection , the effective date of rejection and be accompanied by a copy of the Order granting this Motion.

    c.    Should a party in interest object to the Debtors' proposed rejection of a contract or lease, such party must file and serve a written objection so that such objection is filed with this Court and actually received by the Objection Notice Parties no later than ten (10) days after the date on which the notice of rejection is sent to the counterparty.

    d.    If no objection to a Rejection Notice is timely filed, the Rejected Contract shall be deemed rejected on the effective date set forth in the Rejection Notice, or, if no such date is set forth, the date the Rejection Notice is filed with the Court (the "Rejection Date").

---

[4]    Consistent with Rule 6006(f) of the Federal Rules of Bankruptcy Procedure, however, no more than 100 executory contracts or unexpired leases will be contained on any one Rejection Notice.

e.     If a timely objection to a Rejection Notice is filed and received in accordance with these proposed procedures for rejection, the Debtors shall schedule a hearing on such objection and shall provide at least five (5) days' notice of such hearing to the objecting party and the Objection Notice Parties.  If the Court ultimately upholds the Debtors' determination to reject the applicable lease or contract, then the applicable lease or contract shall be deemed rejected (a) as of the Rejection Date, or (b) as otherwise determined by the Court as set forth in any order overruling such objection.

f.     Claims arising out of Rejected Contracts must be filed with Epiq Bankruptcy Solutions, LLC,[5] the Court-approved claims processing agent, on or before the later of (i) the deadline for filing proofs of claim established by the Court in the Debtors' cases or (ii) forty-five (45) days after the applicable Rejection Notice is filed.  If no proof of claim is timely filed, such claimant shall be forever barred from asserting a claim for rejection damages.

g.     If the Debtors have deposited funds with the counterparty to a Rejected Contract as a security deposit or other arrangement, such counterparty may not setoff or otherwise use such deposit without the prior authority of the Court or agreement of the parties.

h.     The Debtors are authorized to remove any property from the premises that are the subject of any rejected lease, consistent with the Debtors' ownership rights or other property interests therein, personal property that the Debtors have installed in or about the leased premises (i.e., fixtures, furniture, equipment, and other property) that is either owned by the Debtors, leased by the Debtors from third parties, or subject to any equipment financing agreements with third parties.  To the extent that the Debtors determine that any interest of the Debtors in property has little or no value or that the preservation thereof will be burdensome to their estates compared with the expense of removing and storing such property, the Debtors are authorized to abandon, in their sole discretion, such property remaining at the premises subject to a rejected lease as of the Rejection Date.  In the event the Debtors

---

[5]     Claims should be sent to the following addresses:

If by first-class mail:  Lehman Brothers' Claims Processing, c/o Epiq Bankruptcy Solutions, LLC, FDR Station, P.O. Box 5076, New York, New York 10150-5076.

If by hand delivery or overnight mail:  Epiq Bankruptcy Solutions, LLC, Attn:  Lehman Brothers' Claims Processing, 757 Third Avenue, 3rd Floor, New York, New York 10017.

propose to abandon property, the foregoing notice and objection procedures will apply and the Debtors shall otherwise be excused from the requirements of Rule 6007-1 of the Local Rules for the Southern District of New York.  Absent a timely objection filed in accordance with these Rejection Procedures, the property will be deemed abandoned pursuant to section 554 of the Bankruptcy Code as of the Rejection Date and, except as set forth above, the landlord(s) may dispose of such abandoned property without liability to any third party claiming an interest in such abandoned property.

i.    If the Debtors propose to reject a lease of personal property pursuant to a Rejection Notice, such Rejection Notice shall a provide a description of the leased property, the location of same, and the automatic stay shall be deemed modified to permit the respective personal property lessor to recover such leased property within ten (10) days of the Rejection Date (the "Collection Period").  If the lessor does not retrieve its property by the end of the Collection Period, the property shall be deemed abandoned without further order of this Court, free and clear of any interests, and the owner of the premises containing such property or its designee shall be free to dispose of same without liability to any party; and it is further

ORDERED that, pursuant to section 365 of the Bankruptcy Code, the Debtors' assumption and assignment of any Purchased Contract to Purchaser in accordance with the Assignment Procedures set forth in this Order is hereby approved; and it is further

ORDERED that, pursuant to section 365 of the Bankruptcy Code, the Debtors' rejection of any Rejected Contract in accordance with the Rejection Procedures set forth in this Order is hereby approved; and it is further

ORDERED that, pursuant to section 554(a) of the Bankruptcy Code, the Debtors are authorized to abandon any personal property, furniture, fixtures, and/or equipment remaining at premises subject to a rejected lease of real property in accordance with the procedures set forth in this Order; and it is further

21

ORDERED that the Debtors are hereby authorized to execute and deliver all instruments and documents, and take such other actions, as may be necessary or appropriate to implement and effectuate the Assignment Procedures and the Rejection Procedures as approved by this Order; and it is further

ORDERED that entry of this Order is without prejudice to the rights of the Debtors, including, but not limited to, the right to seek further, other, or different relief regarding the unexpired leases and executory contracts pursuant to, among other things, section 365 of the Bankruptcy Code; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: _____, 2008
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**
Assumption and Assignment Notice

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                            :

In re                         :          **Chapter 11 Case No.**
                            :

**LEHMAN BROTHERS HOLDINGS INC.,**   :          **08-13555 (JMP)**
*et al.*                     :
          **Debtors.**        :          **(Jointly Administered)**
                            :
----------------------------------------------------------------x

## NOTICE OF ASSUMPTION AND ASSIGNMENT
## OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

        **PLEASE TAKE NOTICE** that, on September 20, 2008, the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court") entered an order (the "Sale Order") which, among other things, approved an Asset Purchase Agreement (the "Purchase Agreement") in the above-referenced chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors").

        **PLEASE TAKE FURTHER NOTICE** that, in accordance with the Sale Order and Section 2.5 of the Purchase Agreement, Barclays Capital, Inc. (the "Purchaser") has the right to designate certain of the Debtors' unexpired leases and executory contracts for assumption and assignment to Purchaser (collectively, the "Purchased Contracts").[1]

        **PLEASE TAKE FURTHER NOTICE** that, on September __, 2008, the Bankruptcy Court entered an order (the "Procedures Order") which, among other things, approved expedited procedures for the assumption and assignment of Purchased Contracts to the Purchaser.

        **PLEASE TAKE FURTHER NOTICE** that the Debtors and the Purchaser hereby provide notice of the (i) assumption and assignment of the Purchased Contracts identified below as of the date hereof, and (ii) cure costs, if any, to be paid (the "Cure Amounts") pursuant to 11 U.S.C. § 365(b)(1)(A) in connection with the assumption and assignment of such Purchased Contracts.

---

[1]    For purposes of this Notice and the Procedures Order (defined below), Purchased Contracts include PIM Leases (as such term is defined in that certain Clarification Letter with respect to the Purchase Agreement, dated September 20, 2008 (the "Clarification Letter")) that are designated for assumption and assignment by the Purchaser in accordance with the terms of the Clarification Letter.

**PLEASE TAKE FURTHER NOTICE** that any party in interest that objects to the proposed assignment or Cure Amount must file and serve a written objection so that such objection is filed with the Court and <u>actually received</u> by the following parties (the "<u>Objection Notice Parties</u>") no later than ten (10) days after the date on which this notice of the assignment was sent to the counterparty: (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Shai Y. Waisman); (ii) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis); (iii) the attorneys for the Purchaser, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York NY 10006 (Attn: Lindsee P. Granfield and Lisa M. Schweitzer); (iv) the attorneys for the Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Dennis F. Dunne, Luc A. Despins, and Wilbur F. Foster, Jr.); and (v) the attorneys for the SIPA Trustee,  Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 (Attn: James B. Kobak, David Wiltenburg, and Jeff Margolin).

**PLEASE TAKE FURTHER NOTICE** that, to the extent that any counterparty does not timely file an objection as set forth above, such counterparty is deemed to have consented to their respective Cure Amount and the assumption and assignment of their respective Purchased Contract to the Purchaser as set forth in the Assignment Notice, and shall be forever barred from objecting to the Cure Amount set forth above, including, without limitation, the right to assert any additional Cure Amounts or any other amounts with respect to the leases and contracts to be assumed and assigned.

**PLEASE TAKE FURTHER NOTICE** that, to the extent any objections to the Cure Amounts for such contracts are timely filed, the Debtors, Purchaser and the counterparty must meet and confer in good faith to attempt resolve any such objection without Court intervention.  If the objecting party and the Purchaser determine that the objection cannot be resolved without judicial intervention, then such dispute will be determined by the Court upon written application by either party on 20 (twenty) days notice, with any response due to such an application 15 (fifteen) days after such application is filed.  The Purchaser shall pay any Cure Amount as soon as reasonably practicable after the earliest of (i) the date on which the contracting counterparty consents in writing to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, (ii) the date on which the counterparty is deemed to have consented to the assumption and assignment of its Purchased Contract to the Purchaser and to the Cure Amount for such contract, or (iii) the date on which the Court enters an order determining the Cure Amount for such contract after the notice and hearing procedure set forth above.

Dated: _____, 2008
New York, New York

**LEASES**

| Address of Subject Property | Landlord Name / Address | Cure Amount, If Any |
|---|---|---|
|  |  |  |

**CONTRACTS**

| Contract Counterparty (Name / Address) | Description of Contract | Cure Amount, If Any |
|---|---|---|
|  |  |  |

**EXHIBIT B**

Rejection Notice

NY2:\1916639\10\152VZ10!.DOC\73683.0145

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
                                                        :
In re                                                   :    Chapter 11 Case No.
                                                        :
LEHMAN BROTHERS HOLDINGS INC., *et al.*                 :    08-13555 (JMP)
                                                        :
                    Debtors.                            :    (Jointly Administered)
                                                        :
---------------------------------------------------------------------x

## NOTICE OF REJECTION OF
## EXECUTORY CONTRACTS OR UNEXPIRED LEASES

  **PLEASE TAKE NOTICE** that, on September __, 2008, the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court") entered an order (the "Procedures Order") in the above-referenced chapter 11 cases of in the above-referenced chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors"), among other things, approving expedited procedures (the "Rejection Procedures") for the rejection of executory contracts and unexpired leases of the Debtors.

  **PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Procedures Order, the Debtors hereby provide notice of their intent to reject the leases and/or contracts identified below.  Pursuant to the terms of the Procedures Order, unless a written objection is filed and served in accordance with the terms of the Procedures Order, the following leases and/or contracts will be rejected pursuant to 11 U.S.C. § 365(a), and property relating to any such leases may be abandoned pursuant to 11 U.S.C. § 554(a), effective as of (a) the effective date otherwise set forth in this Notice or, if no such date is set forth for your lease or contract, (b) the date of this Rejection Notice (the "Rejection Date").

  **PLEASE TAKE FURTHER NOTICE** that any party in interest that objects to the proposed rejection of its contract or lease must file and serve a written objection so that such objection is filed with the Court and actually received by the following parties (the "Objection Notice Parties") no later than ten (10) days after this notice of rejection was sent to the counterparty: (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Shai Y. Waisman); (ii) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis); (iii) the attorneys for the Purchaser, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York NY 10006 (Attn: Lindsee P. Granfield and Lisa M. Schweitzer); (iv) the attorneys for the Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Dennis F. Dunne, Luc A. Despins, and Wilbur F. Foster, Jr.); and

(v) the attorneys for the SIPA Trustee,  Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 (Attn: James B. Kobak, David Wiltenburg, and Jeff Margolin).

PLEASE TAKE FURTHER NOTICE that, if a timely objection to this Notice is filed and received in accordance with the Procedures Order, the Debtors shall schedule a hearing on such objection and shall provide at least five (5) days' notice of such hearing to the objecting party and the Objection Notice Parties.  If the Court ultimately upholds the Debtors' determination to reject the applicable lease or contract, then the applicable lease or contract shall be deemed rejected (a) as of the Rejection Date, or (b) as otherwise determined by the Court as set forth in any order overruling such objection.

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Procedures Order, for any claim that you may assert against the Debtors as a result of the rejection of any contract or lease, you must submit a proof of claim for damages arising from such rejection, if any, to Epiq Bankruptcy Solutions, LLC,[16] the Court-approved claims processing agent, on or before the later of (i) the deadline for filing proofs of claim established by the Court in the Debtors' cases or (ii) forty-five (45) days after the filing of this Notice.  A proof of claim form is available at http://chapter11.epiqsystems.com/lehman.  If you do not timely file such proof of claim, you shall be forever barred from asserting a claim for rejection damages arising from the rejection of the above-referenced Lease or Contract.

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Procedures Order, if the Debtors have deposited monies with a contract or lease counterparty as a security deposit or otherwise, the contract or lease counterparty may not setoff or otherwise use such deposit without the prior authorization of the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that, the Debtors are authorized to remove any property from the premises that are the subject of any rejected lease, consistent with the Debtors' ownership rights or other property interests therein, personal property that the Debtors have installed in or about the leased premises (i.e., fixtures, furniture, equipment, and other property) that is either owned by the Debtors, leased by the Debtors from third parties, or subject to any equipment financing agreements with third parties.  To the extent that the Debtors determine that any interest of the Debtors in property has little or no value or that the preservation thereof will be burdensome to their

---

[16] Claims should be sent to the following addresses:

If by first-class mail:  Lehman Brothers' Claims Processing, c/o Epiq Bankruptcy Solutions, LLC, FDR Station, P.O. Box 5076, New York, New York 10150-5076.

If by hand delivery or overnight mail:  Epiq Bankruptcy Solutions, LLC, Attn:  Lehman Brothers' Claims Processing, 757 Third Avenue, 3rd Floor, New York, New York 10017.

estates compared with the expense of removing and storing such property, the Debtors are authorized to abandon, in their sole discretion, such property remaining at the premises subject to a rejected lease as of the Rejection Date.  Absent a timely objection filed in accordance with these Rejection Procedures, the property will be deemed abandoned pursuant to section 554 of the Bankruptcy Code as of the Rejection Date and, except as set forth above, the landlord(s) may dispose of such abandoned property without liability to any third party claiming an interest in such abandoned property.

**PLEASE TAKE FURTHER NOTICE** that, to the extent the Debtors have proposed to reject a lease of personal property pursuant to this Rejection Notice, a description of the leased property and the location of same are provided below, and the automatic stay shall be deemed modified to permit the respective personal property lessor to recover such leased property within ten (10) days of the Rejection Date (the "Collection Period").  If the lessor does not retrieve its property by the end of the Collection Period, the property shall be deemed abandoned without further order of this Court, free and clear of any interests, and the owner of the premises containing such property or its designee shall be free to dispose of same without liability to any party.

Dated: _____, 2008
New York, New York

**LEASES**

| Address and/or Description of Subject Property | Lessor Name / Address | Effective Date of Rejection |
|---|---|---|
|  |  |  |

**CONTRACTS**

| Contract Counterparty (Name / Address) | Description of Contract | Effective Date of Rejection |
|---|---|---|
|  |  |  |