AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York 10022-2524
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Michael S. Stamer (MS-4900)
Philip C. Dublin (PD-4919)
Meredith A. Lahaie (ML-1008)

*Counsel for the Informal Noteholder Group*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                          :
**In re:**                                :         **Chapter 11 Case No.**
                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.* :    **08-13555 (JMP)**
                                          :
                              **Debtors.** :         **(Jointly Administered)**
-------------------------------------------------------------x


**LIMITED OBJECTION OF THE INFORMAL NOTEHOLDER GROUP TO
DEBTOR'S MOTION FOR ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN
POSTPETITION FINANCING PURSUANT TO SECTIONS 363 AND 364 OF
BANKRUPTCY CODE, (II) GRANTING LIENS AND SUPERPRIORITY
CLAIMS TO POSTPETITION LENDERS PURSUANT TO SECTION 364 OF
<u>BANKRUPTCY CODE, AND (III) SCHEDULING FINAL HEARING</u>**


TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

  The Informal Noteholder Group (the "<u>Informal Noteholder Group</u>"), consisting of certain

unaffiliated holders of senior and subordinated notes issued by Lehman Brothers Holdings Inc.

("<u>LBHI</u>" and, together with its debtor affiliates, the "<u>Debtors</u>"), by and through its undersigned

counsel, hereby files this limited objection (the "<u>Limited Objection</u>") to the Debtor's Motion for

Final Order: (I) Authorizing Debtor to Obtain Postpetition Financing Pursuant to Sections 363

and 364 of Bankruptcy Code, (II) Granting Liens and Superpriority Claims to Postpetition

Lenders Pursuant to Section 364 of Bankruptcy Code, and (III) Scheduling Final Hearing (the

"Motion").  In support of this Limited Objection, the Informal Noteholder Group respectfully

represents as follows:[1]

## LIMITED OBJECTION

1.      By the Motion, the Debtors seek final authorization to borrow up to $450 million

in secured debtor in possession financing (the "DIP Facility") from Barclays Bank plc (in such

capacity, the "DIP Lender").[2]  The DIP Facility is comprised of (a) a $200 million revolving

credit facility and (b) a $250 million term loan.  The proceeds of the DIP Facility are to be used

by the Debtors to fund operating expenses, professional fees, personnel expenses, and non-

personnel expenses of the Debtors and their operating subsidiaries, in accordance with an agreed

upon budget (the "Budget").  The Informal Noteholder Group submits that a number of

provisions of the DIP Credit Agreement are unduly burdensome and provide the DIP Lender with

undue control over the administration of these cases to the detriment of the Debtors' estates and

their creditors.  Accordingly, the Court should require a number of material modifications to the

DIP Credit Agreement and/or Final DIP Order in connection with approving the DIP Facility on

a final basis.

2.      Specifically, the Court should require the following modifications to the DIP

Credit Agreement and/or Final DIP Order:

- Reimbursement of Intercompany Advances.  Section 2.7 of the DIP Credit
  Agreement provides that if DIP Facility proceeds are used to pay the operating expenses
  of a subsidiary, such expenses shall be reimbursed promptly thereafter.  The Informal

---

[1] All terms not otherwise defined herein shall have the meaning ascribed to them in the Motion and this
Court's Interim Order (I) Authorizing the Debtor to Obtain Postpetition Financing Pursuant to Sections 363 and 364
of Bankruptcy Code, (II) Granting Liens and Superpriority Claims to Postpetition Lenders Pursuant to Section 364
of Bankruptcy Code, and (III) Scheduling Final Hearing dated September 17, 2008 (the "Interim DIP Order").

[2] Upon information and belief, Barclays Bank plc currently is the sole lender under the DIP Facility.  The
Informal Noteholder Group, however, understands that Barclays Bank plc may syndicate the DIP Facility, in which
case there will be multiple DIP Lenders.

Noteholder Group is concerned that, in the absence of a Court-ordered cash management protocol ensuring that LBHI will be reimbursed for postpetition advances to its affiliates, DIP Facility borrowings will be made for the benefit of such affiliates and not repaid at all, let alone "promptly" as is required by the DIP Credit Agreement. Moreover, given the uncertainty and lack of transparency surrounding the Debtors' ongoing operations and obligations of LBHI's subsidiaries, it is possible that a benefited subsidiary may not have sufficient liquid assets to "promptly reimburse" the Debtors, thus triggering a default under the DIP Facility. The Final DIP Order and/or DIP Credit Agreement should be modified to institute iron-clad protections to ensure that LBHI is repaid for any amounts advanced to its affiliates and such protections should govern the intercompany obligations among such parties. These protections should dictate whether an event of default under the DIP Facility has occurred, and not solely the failure of an affiliate to "promptly reimburse" LBHI for DIP Facility borrowings advanced to such affiliate.

- **Sale of Assets**. Section 2.17 of the DIP Credit Agreement requires a mandatory prepayment of the DIP Facility following the sale of assets by the Debtors and/or their subsidiaries. There will almost certainly be restrictions on the Debtors' ability to access sale proceeds including, without limitation, restrictions on the ability of a subsidiary to upstream sale proceeds to LBHI. A default under the DIP Facility may be triggered as a result of these restrictions. The DIP Credit Agreement should be modified to recognize such limitations. The Informal Noteholder Group also understands that, notwithstanding the provisions of section 2.17 of the DIP Credit Agreement, the Debtors and Barclays Bank plc have reached an agreement pursuant to which the proceeds of the sale of the Debtors' U.S. and Canadian capital markets and investment banking business (and certain unspecified assets used in connection with these businesses) and world-wide headquarters to Barclays Capital Inc. ("Barclays") will not be used to prepay borrowings under the DIP Facility. To the extent the foregoing is accurate, an express waiver of the mandatory prepayment requirements should be included in the Final DIP Order. To the extent proceeds from the sale to Barclays will be used to prepay the DIP Facility, the Debtors and the DIP Lender should be required to affirm under oath that no premiums or penalties will be assessed in connection with such prepayment.

- **Adversary Proceedings**. Section 4.12 of the DIP Credit Agreement provides that, other than the Debtors' chapter 11 cases, there are no unstayed adverse proceedings, pending or threatened, against or affecting the Debtors or any subsidiary, that could have a materially adverse effect. As noted above, there is a complete lack of clarity and transparency in the market as to the current operations of the Debtors' affiliates. Thus, it is impossible to discern the risks associated with the inclusion of this provision in the DIP Credit Agreement. Accordingly, absent a sworn affirmation from an authorized representative of the Debtors that the representations set forth in section 4.12 are accurate, this provision must be removed from the DIP Credit Agreement.

- **CRO Replacement**. Section 5.16 of the DIP Credit Agreement requires the appointment of Brian Marsal as the Debtors' chief restructuring officer. The Informal Noteholder Group understands that Mr. Marsal is currently serving the Debtors in this capacity. The DIP Credit Agreement, however, should be modified to provide a

reasonable period of time for the retention of an acceptable replacement in the event Mr. Marsal can no longer serve as the Debtors' chief restructuring officer.

- **Budget Variance.** Section 5.19 of the DIP Credit Agreement does not allow for any variance from the DIP Facility budget. The DIP Credit Agreement should be modified to permit a reasonable variance percentage as is common for postpetition credit facilities.

- **Sale of Assets/363(k) Rights.** Section 6.9 of the DIP Credit Agreement contains a covenant by the Debtors that the Debtors will not, and will not permit any subsidiaries to, consolidate, liquidate or convey all or any part of their businesses, assets or property (other than purchases or other acquisitions of inventory, materials and equipment and capital expenditures in the ordinary course of business) without the approval of the DIP Lender. This provision, when read together with paragraph 31 of the Interim DIP Order (which provides that the DIP Lender shall retain all of its rights under Bankruptcy Code section 363(k)), grants the DIP Lender undue control over the Debtors. Given the requirement in the DIP Credit Agreement that, absent the consent of the DIP Lender, all asset sale proceeds must be used to prepay the DIP Facility, section 6.9 of the DIP Credit Agreement should be deleted.

- **Reasonable Grace Period.** Section 8.1(a) of the DIP Credit Agreement makes it an event of default if the Debtors fail to make any payment when due under the DIP Credit Agreement. The Informal Noteholder Group submits that this provision should be revised to provide the Debtors with a reasonable grace period in connection with the Debtors' payment obligations.

- **Cross-Default Provisions.** Section 8.1(b) of the DIP Credit Agreement contains cross-default provisions such that if the Debtors default on any postpetition debt in excess of $1 million, or any subsidiary defaults on a prepetition or postpetition debt in excess of $100,000, it will be an event of default under the DIP Facility. This provision is unduly burdensome and could be triggered by, among other things, the filing of a voluntary petition by one or more of the Debtors' affiliates. Additionally, if any subsidiary debt documents contain cross-default provisions that are triggered by the Debtors' chapter 11 petitions, this event of default may have already been triggered. Accordingly, the DIP Credit Agreement must be modified to carve out such instances where a default is the direct result of the filing of a chapter 11 petition by an affiliate of LBHI.

- **Voluntary/Involuntary Bankruptcy.** Sections 8.1(f) and (g) of the DIP Credit Agreement provide that the voluntary or involuntary bankruptcy of any "Material Subsidiary" of the Debtors is an event of default under the DIP Facility. As it is likely that one or more of the Debtors' Material Subsidiaries may file a chapter 11 petition to, among other things, facilitate the disposition of assets, this provision should be deleted or amended to permit such filings.

- **Automatic Stay.** Section 8.1(p)(v) of the DIP Credit Agreement provides that the entry of an order granting relief from or modifying the automatic stay of section 362 to allow any creditor to execute upon or enforce a lien on any DIP Facility collateral in

excess of $50,000 is an event of default.  An order for relief from the automatic stay may
be entered for any number of reasons that would not materially impact the Debtors'
ability to meet their obligations under the DIP Facility; thus, the provision should be
modified to increase the threshold amount or a material adverse effect qualification
should be added.

• <u>Waiver of Mandatory Prepayment</u>.  Section 10.5 of the DIP Credit Agreement
requires approval of 100% of the DIP Lenders to waive a mandatory prepayment of the
DIP Facility and/or an event of default.  This provision appears to be acceptable if the
DIP Facility is not syndicated.  However, if the DIP Facility is syndicated, the DIP Credit
Agreement should be modified to provide a less burdensome mechanism for such
waivers.

• <u>Indemnification</u>.  The indemnification provisions and the definition of
"Indemnified Liabilities" require the Debtors to indemnify the DIP Lender from any
transaction related to the DIP Facility, which arguably could include the recent sale of the
Debtors' main broker dealer subsidiary, Lehman Brothers Inc., to Barclays.  These
provisions are overly broad and should be limited solely to the DIP Facility.

• <u>Notices</u>.  The DIP Credit Agreement permits modifications thereof without further
Court approval after notice only to the Debtors, the Creditors' Committee and the U.S.
Trustee.  The DIP Credit Agreement should be modified to provide the Informal
Noteholder Group with the same notice and opportunity to object as provided to such
parties or should require that modifications not be permitted absent prior Court approval.

• <u>Prepayment Premiums/Penalties</u>.  Notwithstanding the terms of the DIP Credit
Agreement as filed, to the extent the Debtors are required to pay a premium or penalty in
connection with the prepayment of any obligations under the DIP Facility, the Debtors
should be required to disclose such obligations and such obligations should be thoroughly
vetted by the Court.

• <u>Reimbursement of DIP Lender's Fees and Expenses</u>.  The DIP Lender is entitled
to reimbursement for all postpetition fees and expenses, without review by this Court and
without the filing of interim or final fee applications.  The Informal Noteholder Group
requests that the DIP Lender be required to provide the Debtors, the Creditors'
Committee, the U.S. Trustee and the Informal Noteholder Group with copies of all
invoices for which payment is requested.  The Informal Noteholder Group further
submits that each of the foregoing parties should be afforded the opportunity to object to
any such invoices, with disputes resolved by this Court.

3.      As of the date of this Limited Objection, a proposed Final DIP Order and

amended DIP Credit Agreement have not been filed with the Court.  Accordingly, the Informal

Noteholder Group reserves its rights to supplement this Limited Objection based on the proposed

terms thereof.

4.      Based on the foregoing, the Informal Noteholder Group respectfully requests that the Court condition final approval of the DIP Facility on the incorporation of the above modifications into the DIP Credit Agreement and/or Final DIP Order.

## CONCLUSION

For all of the foregoing reasons, the Informal Noteholder Group respectfully requests that the Court (i) deny final approval of the DIP Facility, absent the modification thereof as discussed herein, and (ii) grant the Informal Noteholder Group such other relief as is just, proper and equitable.

Dated:   New York, New York
         September 29, 2008

By:       _____/s/ Philip C. Dublin_____
          Michael S. Stamer (MS-4900)
          Philip C. Dublin (PD-4919)
          Meredith A. Lahaie (ML-1008)
          Akin Gump Strauss Hauer & Feld LLP
          590 Madison Avenue
          New York, New York 10022-2524
          (212) 872-1000 (Telephone)
          (212) 872-1002 (Facsimile)
          mstamer@akingump.com
          pdublin@akingump.com
          mlahaie@akingump.com

          *Counsel for the Informal Noteholder Group*