Jeffrey W. Levitan (JL 6155)
Michael T. Mervis (MM 0306)
Karen D. Coombs (KC 3538)
PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036-8299
(212) 969-3000

*Attorneys for Markit Group Limited*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC. et al., | § § § | Case No. 08-13555 (JMP) (Jointly Administered) |
| Debtors, | § § | |
| SECURITIES INVESTOR PROTECTION CORPORATION | § § § | Adversary No. 08-01420 (JMP) |
| Creditor, | § § | |
| v. | § § | |
| LEHMAN BROTHERS, INC. | § § § | |
| Defendant, | § § | |

## DECLARATION OF BOAZ ZILBERMAN

BOAZ ZILBERMAN affirms the following to be true under penalty of perjury:

1.      I am the Director of Business Development of Markit Group Limited, formerly known as Mark-it Partners, Limited ("Markit"). I submit this Declaration in support of Markit's

Motion Limited To (1) Clarify So Much Of The September 19, 2008 Order Authorizing And Approving The Sale Of Assets As Relates To The Assumption And Assignment Of The Data Services Agreement Between Lehman Brothers, Inc. And Mark-It Partners Limited Or, (2) To The Extent Necessary, Modify So Much Of That Order As Approved The Assignment Of That Agreement To Purchaser Without MarkIt's Consent.

    2.    On or about December 3, 2002, Markit entered into a "Founding Customer Data Services Agreement," with Lehman Brothers Inc. ("LBI") (that agreement, hereafter, the "Markit License"). I respectfully refer the Court to that Markit License, a copy of which is annexed as Exhibit A to the accompanying Motion, for a full description of its terms and conditions.

    3.    I am advised that, on or about September 19, 2008, this Court entered an Order approving the motion of Debtors for the sale of certain assets to Barclay Capital, including the assumption and assignment of certain contracts to Barclay Capital (the "Sale Order"). It is unclear whether the Debtors intended to include the Markit License in the list of contracts to be so assumed and assigned. To the extent the Sale Order does so, I explain below that Markit did not receive adequate notice of the proposed assumption and assignment, and does not consent to such assumption and assignment.

    4.    The Markit License contains an express notice provision, requiring any notice to be sent to Markit via hand delivery, fax, or overnight delivery service to the following address:

> Barn A, New Barnes Mill, Cottonmill Lane, St. Albans,
> Hertfordshire
> AL1 2HE
> Fax: +44 1727 834068
> Attn: Lance Uggla

Ex. A, § 17.1.1a

5. The Debtors sent Markit a two-page document, titled "Notice of Assumption and Assignment of, and Amounts Necessary to Cure Defaults Under Contracts and Leases to Be Assumed and Assigned to Successful Purchaser" (the "Assumption Notice"), by overseas courier to 2 More London Riverside, London United Kingdom. A copy of that Assumption Notice is annexed to Markit's Motion as Exhibit B. However, Markit did not receive that Assumption Notice until September 22, three days *after* the Sale Hearing.

6. Nor did the Debtors send a facsimile notice to the UK fax number expressly set forth in the "Notice" provision of the Markit License. The Claims and Noticing Agent did send an Assumption Notice by fax to a White Plains, New York office of "Communicator, Inc.," a company that had been acquired by an affiliate called Markit North America, Inc.. Markit North America, Inc. is engaged in an entirely different line of business, has no involvement with the Markit License, and, indeed, Communicator, Inc. had its own contract with Debtors. Thus, nothing in the faxed Assumption Notice, sent to White Plains at 5:34 p.m. on September 18, 2008, could have placed the recipient on notice that the Assumption Notice was intended for Markit or could be applicable to the Markit License. Accordingly, the faxed Assumption Notice was not brought to the attention of Markit in sufficient time for Markit to object to any attempt to assume and assign the Markit License in advance of the Sale Hearing.

7. Even had Debtors provided Markit with the Assumption Notice prior to the Sale Hearing, that Assumption Notice would not have provided Markit with adequate information to put it on notice that the Debtors proposed to assume and assign the Markit License. The Assumption Notice does not specifically identify the Markit License, or any other contract. Rather, it directs recipients to a website operated by Epiq Bankruptcy Solutions. That website contains a link to a list, titled "List of IT Closing Date Contracts" and spanning 109 pages, which

appears to (a) list all "IT Closing Date Contracts" to which the Debtors are parties and (b) highlight those contracts which were proposed to be assigned to the Purchaser. An excerpt of this list is annexed to Markit's Motion as Exhibit C. The List includes a reference to "Markit Group Limited" as a "Vendor" of a Closing Date Contract to be assigned. However, where many, if not most of the other Closing Date Contracts are described in a column on the Closing Date Contracts List titled "Type II," the entry for "Markit Group Limited" in the "Type II" column reads only "TBD." There is no reference anywhere on the Closing Date Contracts List to the Markit License or the Markit Addenda.

8.    For the reasons set forth above, Markit did not receive notice of the proposed assumption and assignment of the Markit License in advance of the Sale Hearing. Thus, Markit was deprived of the opportunity to advise this Court that it does not consent to the proposed assumption and assignment.

[signature on next page]

-5-

Executed this 29 day of
September, 2008
London, United Kingdom

_____
BOAZ ZILBERMAN