**Exhibit A**

Pg 2 of 6

# DnB NOR

## LEHMAN BROTHERS HOLDINGS INC

## US$25,000,000 REVOLVING CREDIT FACILITY

### Loan Agreement

1 March, 2008

| | |
|---|---|
| **Borrower:** | Lehman Brothers Holdings Inc or Lehman Brothers Holding Inc (UK Branch) (the "Borrower"). |
| **Lender** | DnB NOR Bank ASA |
| **Facility:** | A three year revolving credit facility (the "**Facility**") in an amount up to $25,000,000 or its equivalent in Available Currencies ("**Facility Amount**"), provided on a committed basis and available by way of loan ("**Loan**"). |
| **Facility End Date:** | The Lender's commitments will terminate 3 years after the date of signing of this Loan Agreement (the "**Signing Date**"). |
| **Security:** | All obligations of the Borrower under the Facility will be unsecured and rank *pari passu* with all other senior unsecured obligations of the Borrower. |
| **Available Currencies:** | Any freely available currency mutually acceptable to the Borrower and the Lender. |
| **Facility Purpose:** | The purpose of the Facility is to provide funding for general corporate purposes. |
| **Interest Payments:** | Interest on the Loan will be payable at a rate of **LIBOR** plus 0.50 per cent on the amount of the Loan outstanding and shall be payable in arrears on the Loan maturity date. "**LIBOR**" is the applicable London Inter Bank Offered Rate as quoted on page 3750 of the Telerate Service or, if such rate is not available, then the arithmetic mean of the LIBOR quoted by each of the Reference Banks |
| **Voluntary Cancellation:** | The Borrower may, by giving not less than three Business Days' prior notice to the Lender, cancel the Facility in whole or in part. |
| **Facility Fee:** | A rate of 0.10 per cent per annum calculated (actual/360 basis) on the un-cancelled Facility Amount, whether drawn or un-drawn, payable annually in arrears. |
| **Upfront Fee:** | Within 5 days of the signing date, the Borrower will pay the Lender 0.05 per cent calculated on the facility amount. |

LEHMAN BROTHERS HOLDING INC
US$25,000,000 REVOLVING CREDIT FACILITY

| | |
|---|---|
| *Calculations:* | Any interest or fee accruing from day to day and is calculated on the basis of the actual number of days elapsed and a year of 360 days (or 365 days in the case of any interest or fee accruing in Sterling) or otherwise, depending on what is market practice at the relevant time. |
| *Utilisation:* | The Borrower shall provide notice for drawdowns by 11:00 a.m. (London time) two business days prior to the date of each Loan. The Borrower has the option to draw Euros, Sterling and US Dollar Loans for same day settlement by providing notice for drawdown by 9.30 a.m. on that day. |
| *Representations:* | The Borrower makes the following representations (with appropriate materiality and other exceptions set out in the **Appendix**): |

    (1)    Organisational Status;

    (2)    Powers and Authority;

    (3)    Valid, legal and binding obligations;

    (4)    No violation/conflict;

    (5)    Consents and Governmental Approvals;

    (6)    No Material Litigation;

    (7)    Pari Passu; and

    (8)    No Event of Default

| | |
|---|---|
| *Information Covenants:* | <u>Financial Statements</u>: The Borrower shall deliver to the Lender annual audited balance sheet and income statement in within 180 days after the close of each fiscal year. |
| | <u>Default or Litigation</u>: The Borrower will notify the Lender of any material Default or material litigation. |
| *General Covenants:* | The Borrower will continue to engage in businesses of the same general type as those businesses at the commencement of the Facility. |
| *Events of Default:* | The following Events of Default shall apply: |

    (a)    Payment defaults under the Facility (subject to agreed upon grace periods, including 2 business days grace for principal of any Loan, 3 business days grace period for interest and fees on any Loan and 10 business days for other payments);

    (b)    Any representation made in connection with the Facility found to be incorrect in any material respect when made;

LEHMAN BROTHERS HOLDING INC
US$25,000,000 REVOLVING CREDIT FACILITY

---

|  |  |
|---|---|
|  | (c) Failure to comply with covenants (with cure periods as appropriate); |
|  | (d) Cross default for non-payment of other Indebtedness of the Borrower aggregating at least $75,000,000; |
|  | (e) Cross acceleration to other indebtedness of the Borrower aggregating at least $75,000,000; |
|  | (f) Bankruptcy, including voluntary or involuntary receivership or bankruptcy filing, and insolvency of the Borrower; |
|  | (g) Invalidity or ineffectiveness of this Loan Agreement |
| *Taxes:* | Customary provisions to the effect that all payments will be made free and clear of any taxes, duties, withholding or other deductions whatsoever. Tax gross-up, tax indemnity and tax credit language will apply. |
| *Governing Law:* | English Law |
| *Jurisdiction:* | Courts of England (for the benefit of the Lender) |

This Loan Agreement shall not become a binding agreement among the Borrower and the Lender until both parties have signed below.

Accepted and agreed as of the
date first written above:

Lehman Brothers Holdings Inc
By: *[signature]*
Name: Julie Boyle
Title: SVP

Lehman Brothers Holdings Inc
(UK Branch)
By: *[signature]*
Name:     Paolo Tonucci
          Managing Director
Title:    Global Treasurer

Accepted and agreed as of the
date first written above:

DnB NOR Bank ASA
By: *[signature]*
Name: TORGEIR STORØ
Title: SVP

DnB NOR Bank ASA
By: *[signature]*
Name: ROLF NAGEL DNUC
Title: SVP

-3-

LEHMAN BROTHERS HOLDING INC
US$25,000,000 REVOLVING CREDIT FACILITY

## APPENDIX

### 1.1 Organisational Status

(a) The Borrower:

   (a) is a duly organised and validly existing corporation in good standing under the laws of the jurisdiction of its incorporation; and

   (b) has the power and authority to own its property and assets and to transact the business in which it is engaged.

(b) The Borrower is duly qualified as a corporation and is in good standing in each jurisdiction where the ownership, leasing or operation of property or the conduct of its business requires such qualification, except where the failure to be so qualified would not be likely to result in a material averse change.

### 1.2 Powers and authority

(a) The Borrower:

   (a) has the corporate power and authority to execute, deliver and perform the terms and provisions of the loan agreement; and

   (b) has taken all necessary corporate action to authorise the execution, delivery and performance by it of the loan agreement.

(b) The Borrower has duly executed and delivered the Loan Agreement and such Loan Agreement constitutes its legal, valid and binding obligations enforceable in accordance with its terms, except as the enforceability thereof may be limited by applicable bankruptcy, insolvency, reorganisation or other similar laws affecting creditors' rights generally and by general equitable principles (regardless of whether the issue of enforceability is considered in a proceeding in equity or at law).

### 1.3 No violation

Neither the execution, delivery or performance by The Borrower of the Loan Agreement, nor compliance by it with the terms and provisions of such Loan Agreement, will (nor will the use of the proceeds of the Loan in any material respect):

(a) contravene any provision of any law, statute, rule or regulation or any order, writ, injunction or decree of any court or governmental instrumentality by which it or any of its properties or assets is bound;

(b) conflict or be inconsistent in any material respect with or result in any material breach of any of the terms, covenants, conditions or provisions of, or constitute a material default under, or result in the creation or imposition of (or the obligation to create or impose) any lien upon any of the material property

LEHMAN BROTHERS HOLDING INC
US$25,000,000 REVOLVING CREDIT FACILITY

or assets of the Borrower pursuant to the terms of any indenture, mortgage, deed of trust, credit agreement, loan agreement or any other material agreement, contract or instrument to which either Obligor is a party or by which it or any of its material property or assets is bound or to which it may currently be subject; or

(c)    violate any provision of the constitutional documents of the Borrower.

### 1.4 Consents, governmental approvals

No consent of any person, including, without limitation, stockholders and creditors of the Borrower, and no order, consent, approval license, authorisation or validation of, or filing, recording or registration with, or exemption by (except as have been obtained or made prior to the Signing Date and which remain in full force and effect) any governmental or public body or authority, or any subdivision thereof, is required to authorise, or is required in connection with he execution, delivery and performance of the Loan Agreement; or the legality, validity, binding effect or enforceability of the Loan Agreement.

### 1.5 Litigation

Except as set forth in the latest financial statements of the Borrower or as disclosed to the Lender prior to the date of this Agreement, there are no actions, suits or proceedings pending or, to the best knowledge of the Borrower, threatened,

(a)    with respect to the Loan Agreement; or

(b)    that have resulted or, in the best judgment of the Borrower, are reasonably likely to result, in a material adverse change.

### 1.6 Pari Passu

Under applicable laws in force at the date hereof, the claims and rights of the Lender against the Borrower under the Loan Agreement will not be subordinate to, and will rank at least pari passu in all respects with, the claims and rights of any other senior unsecured creditors of the Borrower except as limited by applicable law.

### 1.7 No Default

No event has occurred and is continuing, or would result from the making of a Loan requested hereunder, that constitutes or would constitute an Event of Default.