**Interim Hearing Date and Time: October 2, 2008 at 3:00 p.m. (Prevailing Eastern Time)**
**Final Hearing Date and Time:  November 5, 2008 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  October 31, 2008 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
In re                                                :        **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,        :        **08-13555 (JMP)**
:
Debtors.                    :        **(Jointly Administered)**
:
:
------------------------------------------------------------------x

**NOTICE OF DEBTORS' MOTION PURSUANT TO
SECTIONS 105(a), 362(d), 363(b) AND 503(b) OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULES 4001, 6003 AND 6004 SEEKING
AUTHORITY TO (A) (i) CONTINUE THE DEBTOR'S WORKERS'
COMPENSATION PROGRAMS AND ITS LIABILITY, PROPERTY, AND
OTHER INSURANCE PROGRAMS AND (ii) PAY ALL PREPETITION
OBLIGATIONS IN RESPECT THEREOF, AND (B) SCHEDULE A FINAL HEARING**

PLEASE TAKE NOTICE THAT Lehman Brothers Holdings Inc. ("LBHI") and

its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in

possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman")

in the above-captioned chapter 11 cases in the United States Bankruptcy Court for the Southern

District of New York (the "Bankruptcy Court") filed a motion, dated October 1, 2008 (the

"Motion"), pursuant to sections 105(a), 362(d), 363(b), and 503(b) of chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code") and Rules 4001, 6003 and 6004 of the Federal

Rules of Bankruptcy Procedure, for authority to (a) (i) continue their workers' compensation

programs (the "Workers' Compensation Programs") and their liability, product, property, and

other insurance programs (together with the Workers' Compensation Programs, the "Insurance

Programs") including but not limited to those set forth on the schedule annexed to the Motion as

Exhibit A, (ii) pay all prepetition obligations in respect thereof, on an uninterrupted basis,

consistent with their practices in effect prior to the commencement of the Debtors' chapter 11

cases, including the payment of all premiums, claims, deductibles, administrative expenses, and

all other charges incurred, whether relating to the period prior to or after the commencement of

these chapter 11 cases (collectively, "Insurance Obligations"), (iii) modify the automatic stay

solely and for the limited purpose of permitting employees with claims under the Workers'

Compensation Program to proceed with their claims in accordance with such program in the

appropriate judicial or administrative forum; and (B) schedule a hearing to consider the relief

requested on a permanent basis (the "Final Hearing").

       PLEASE TAKE FURTHER NOTICE that objections or responses, if any, to the

Final Hearing on the Motion must be in writing, must conform to the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court

for the Southern District of New York, must set forth the name of the objecting party, the nature

and amount of claims or interests held or asserted by the objecting party against the Debtors'

estates or property, the basis for the objection and the specific grounds therefor, and must be

filed no later than **October 31, 2008 at 4:00 p.m. (Prevailing Eastern Time)** with the

Bankruptcy Court electronically in accordance with General Order M-242 (General Order M-242

and the User's Manual for the Electronic Case Filing System may be found at

www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the

Bankruptcy Court's case filing system, and by all other parties in interest on a 3.5 inch disk,

preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word

processing format (with a hard copy delivered directly to Chambers), in accordance with General

Order M-182, and be served upon:  (i) the chambers of the Honorable James M. Peck, One

Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP,

767 Fifth Avenue, New York, New York 10153, Attn:  Richard P. Krasnow, Esq., Lori R. Fife,

Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the

Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street,

21st Floor, New York, New York 10004, Attn:  Andy Velez-Rivera, Paul Schwartzberg, Brian

Masumoto, Linda Riffkin, and Tracy Hope Davis; (iv) Milbank, Tweed, Hadley & McCloy LLP,

1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis

O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured

creditors appointed in these cases; and (v) Cleary Gottlieb LLP, One Liberty Plaza, New York,

NY 10006, Attn: Lindsee P. Granfield, Esq.  and Lisa Schweitzer, Esq. and Sullivan & Cromwell

LLP, 125 Broad Street, New York, NY 10004, Attn:  Robinson B. Lacy, Esq. and Hydee R.

Feldstein, Esq., attorneys for the Debtors' postpetition lenders, so as to be received no later than

**October 31, 2008, at 4:00 p.m. (prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that a hearing to consider the relief requested in the Motion on an interim basis shall be held before the Honorable James M. Peck, United States Bankruptcy Judge, on **October 2, 2008 at 3:00 p.m. (prevailing Eastern Time)** and the Final Hearing to consider the relief requested in the Motion shall be held on **November 5, 2008 at 10:00 a.m.**, each at the United States Bankruptcy Court, Room 601, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004 or as soon thereafter as counsel may be heard.

Dated:  October 1, 2008
        New York, New York

/s/ Shai Y. Waisman
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Interim Hearing Date and Time: October 2, 2008 at 3:00 p.m. (Prevailing Eastern Time)
Final Hearing Date and Time: November 5, 2008 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: October 31, 2008 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                :
**In re**                :       **Chapter 11 Case No.**
                :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :      **08-13555 (JMP)**
                :
          **Debtors.**     :      **(Jointly Administered)**
                :
                :
-------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO SECTIONS**
**105(a), 362(d), 363(b) AND 503(b) OF THE BANKRUPTCY CODE**
**AND BANKRUPTCY RULES 4001, 6003 AND 6004 SEEKING AUTHORITY**
**TO (A) (i) CONTINUE THE DEBTOR'S WORKERS' COMPENSATION**
**PROGRAMS AND ITS LIABILITY, PROPERTY, AND OTHER**
**INSURANCE PROGRAMS AND (ii) PAY ALL PREPETITION**
**OBLIGATIONS IN RESPECT THEREOF AND (B) SCHEDULE A FINAL HEARING**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully represent:

## Background

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its direct and indirect subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

## Lehman's Business

4.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.  Its headquarters in New

York and regional headquarters in London and Tokyo are complemented by a network of offices

in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

5.        Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit

of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District

of New York in Support of First-Day Motions and Applications, filed on September 15, 2008

[Docket No. 2].

## Jurisdiction

6.        This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

7.        In connection with the operation of their businesses, the Debtors maintain

certain workers' compensation programs and various liability, property, and other insurance

programs and policies (collectively, the "Insurance Programs") through several different

insurance carriers (the "Insurance Carriers").  By this Motion, the Debtors request authority,

pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Rules 4001,

6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to (i)

continue their Insurance Programs on an uninterrupted basis; (ii) pay, in the Debtors' discretion,

the undisputed prepetition obligations thereunder (the "Insurance Obligations"); (iii) modify the

automatic stay solely and for the limited purpose of permitting employees with claims under the

Workers' Compensation Program to proceed with their claims in accordance with such program

in the appropriate judicial or administrative forum; and (iv) schedule a final hearing (the "Final

Hearing") to consider the relief requested herein on a permanent basis.  A summary of the

programs and policies under the Insurance Programs are listed on the schedule annexed hereto as

Exhibit A.

## I.
## Workers' Compensation Programs

8.      The laws of the various states in which the Debtors operate require it to

maintain workers' compensation policies and programs to provide their employees with workers'

compensation benefits for claims arising from or related to their employment with the Debtors.

The Debtors maintain their current workers' compensation coverage through a fully insured,

third-party insurance program (the "AIG Policy") provided by American International

Group/American Home Assurance Co. ("AIG") and various statutorily required programs

administered by certain states (the "State Programs" and together with the AIG Policy, the

"Workers Compensation Programs") that provide coverage up to the statutory awards limit in

each state (the "Statutory Limit").

### A.      The AIG Policy

9.      Unless otherwise required by state law, workers' compensation coverage

for the Debtors' employees is provided through a fully-insured, workers' compensation policy

provided by AIG.  The AIG Policy covers all of the Debtors' domestic employees who are not

otherwise covered by one of the State Programs.  Under the AIG Policy, the Debtors pay an

annual premium to AIG, subject to a "true-up" (discussed below), regardless of the number of

claims filed.  The AIG Policy carries a $250,000 deductible per claim.

10.     The AIG Policy currently in place obliged the Debtors to pay an annual

premium in the amount of $3,612,198 (the "Estimated Premium") for the period of September

30, 2007 through September 30, 2008. The Estimated Premium was paid in full on or about the inception of the AIG Policy.

11. At the conclusion of each policy year, AIG performs an audit of the premium based on (i) an average of the initial base employee count provided at the commencement of the policy period and the actual number of employees for each subsequent quarter and (ii) the actual annual payroll for the policy period. If the number of the Debtors' quarterly employees exceed those used to calculate the Estimated Premium, the Debtors are required to pay an additional premium to AIG in a "true-up." At this time, there is an outstanding audit payment of $995,950 for the policy years 2002-2003, 2003-2004, 2004-2005, and 2005-2006. The audit payment for the policy year 2006-2007 has not been determined. Accordingly, following the annual audit, and at some point subsequent to the Commencement Date, AIG may have a liquidated claim arising from periods before the Commencement Date. The Debtors are seeking the Court's authorization to pay such claims, in their discretion, as they come due.

12. The Debtors are billed on a monthly basis for any claims arising during the policy period. The Debtors have established a reserve account (the "Reserve Account Funds") and use the funds therein to pay claims as they are processed and invoiced to the Debtors. The reserve account is funded with approximately $5 million and an additional amount of cash equal to the estimated amount of claims for the current policy year. To further secure the Debtors' repayment obligations, the Debtors have caused a letter of credit for the benefit of AIG to be issued in the approximate amount of $2.3 million. As of the Commencement Date, no amounts have been drawn against the letter of credit.

13.     Originally, on September 12, 2008, the Debtors authorized their broker, Marsh & McLennan Companies, Inc. ("Marsh"), to renew the AIG Policy for the 2008-2009 policy year.  The premium for the renewed AIG Policy would have been approximately $1,442,948 and provided for coverage that is substantially similar to the coverage of the current AIG Policy.  However, after the sale of LBI's broker-dealer business and the transfer of thousands of employees, the Debtors and Marsh began discussions with AIG regarding a workers' compensation policy that provides the appropriate coverage for the Debtors after the sale and reflecting their largely reduced asset base and workforce.

14.     AIG has agreed to renew the Debtors' workers compensation policy for a period of one year that provides coverage that represents insurance needs of the Debtors' reduced work force.  Like the current AIG Policy, the renewed policy would commence on September 30, 2008 and the Debtors would be required to pay the premium in full in the approximate amount of $705,350 on or before October 3, 2008.  If the Debtors choose to cancel the policy at anytime prior to the expiration date, AIG has agreed to waive any short rate penalty, meaning that the premium paid would be pro rated to the date the policy was cancelled and the balance refunded to the Debtors.  The premium will also be subject to an audit after the policy expires and adjusted based on actual exposures.

**B.     The State Programs**

15.     In Ohio, North Dakota, West Virginia, Washington, and Wyoming, state statutes require the Debtors to utilize specific workers compensation programs.  These state specific workers' compensation programs provide coverage up to the statutory awards limit in each state (the "Statutory Limit").  As a result, the Debtors' employees in these states are not

covered by the AIG Policy for Statutory Limits and are instead covered by the Workers'

Compensation Program required in the state in which they work.

16.      The State Programs are guaranteed cost programs in which the Debtors

pay an estimated premium on or around the commencement of each policy.  There are no further

premiums or claims due under these policies.  To the extent any amounts are owing with respect

to the policies under the State Programs, the Debtors are seeking the Court's authorization to pay

such claims, in their discretion, as they come due.

### C.    Expired Workers' Compensation Policies

17.      The policies under the Debtors' Workers' Compensation Programs

generally are in effect for a period of one year.  The Debtors, however, continue to receive

coverage under policies that expire for the claims that accrue during the period in which such

policy was in effect.  Prior to AIG, the Debtors' Workers' Compensation Program was insured

by Travelers, Royal & SunAlliance, among others.  In addition with respect to the State of New

York, the Debtors were also self-insured from 1994-2005.  As claims accrue under these

policies, the Debtors are liable for such claims up to the retention amount, which in the period of

2007 to 2008 is $250,000 per claim.  To secure the Debtors' repayment obligations, the Debtors

caused letters of credit to be issued for the benefit of Travelers (approximately $1.8 million),

Royal SunAlliance (approximately $260,000) and the NYS Workers' Compensation Board

(approximately $2.6 million).  As of the Commencement Date, no amounts have been drawn

against these letters of credit.  Accordingly,  at some point subsequent to the Commencement

Date, the Insurance Carriers under the Workers' Compensation Programs may have a liquidated

claim arising from periods before the Commencement Date that relate to expired policies.  The

Debtors are seeking the Court's authorization to pay such claims, in their discretion, as they

come due.

### D.    Payment of Workers' Compensation Obligations is Warranted

18.    Payment of the premiums for the Workers' Compensation Programs and

the payment of prepetition workers' compensation claims is essential to the continued operation

of the Debtors' business.  As of the Commencement Date, there may be outstanding obligations

under the Workers' Compensation Programs.  Moreover, at some time subsequent to the

Commencement Date, certain Insurance Carriers may have liquidated claims arising from

policies under the Workers' Compensation Program for periods prior to the Commencement

Date for true-ups or claims arising under the applicable policy.  Therefore, the Debtors request

authority to pay, in their discretion, any and all undisputed amounts due and owing with respect

to any Workers' Compensation Program as they come due in the ordinary course of these chapter

11 cases.

### E.    The Automatic Stay Should Be Waived for Workers' Compensation Claims

19.    Section 362(a) of the Bankruptcy Code, commonly known as the

"automatic stay," operates to stay

> the commencement or continuation, including the issuance or employment of
> process, of a judicial, administrative, or other action or proceeding against the
> debtor that was or could have been commenced before the commencement of the
> case under this title, or to recover a claim against the debtor that arose before the
> commencement of the case under this title.

11 U.S.C. § 362(a)(1).  Section 362, however, permits a debtor or other parties in interest to

request a modification or termination of the automatic stay for "cause."  *Id.* § 362(d)(1).

20.    To the extent the Debtors' employees hold valid workers' compensation

claims, the Debtors seek authorization, under section 362(d) of the Bankruptcy Code, to permit

these employees to proceed with their claims in the appropriate judicial or administrative forum.

The Debtors believe cause exists to modify the automatic stay because prohibiting the Debtors' employees from proceeding with their claims could have a detrimental effect on the financial well-being and morale of such employees and lead to their departure. As discussed above, such departures could cause a severe disruption in the Debtors' businesses to the detriment of all parties in interest.

21.    To this end, and solely with respect to workers' compensation claims covered under the Workers' Compensation Programs, the Debtors seek to modify the automatic stay as it relates to workers' compensation claims; provided that such claims are pursued in accordance with the Workers' Compensation Program and recoveries, if any, are limited to the proceeds from the applicable Workers' Compensation Program. All other claims, including any relating to matters covered by other Insurance Programs, will remain subject to the automatic stay. To effectuate the aforementioned modification of the automatic stay, the Debtors request that the Court waive the stay of a judgment under Bankruptcy Rule 7062 and the requirements under Bankruptcy Rule 9014 relating to contested matters with respect to claims under the Workers' Compensation Programs.

22.    Pursuant to this Motion, the Debtors do not seek a waiver, termination, or modification of the automatic stay with respect to any other claims or matters.

## II.

## Liability and Property Insurance Programs

### A.    Liability and Property Insurance

23.    The Debtors maintain various liability and property related insurance programs, which provide the Debtors with insurance coverage for liabilities including, but not limited to, general liability (including third-part bodily injury, property damage, person and advertising injury), professional liability, automobile liability, general foreign liability,

international liabilities, directors' and officers' liability, fiduciary liability, employment practices

liability, special risk liability, employer's liability, property and personal contents coverage,

terrorism coverage, commodities and property and liability coverage, financial institution crime

liability, aviation hull and liability, fine arts coverage, charterers liability, umbrella and excess

liability, and various other general and property-related liabilities (collectively, the "Liability and

Property Insurance Programs").  The policies under the Liability and Property Insurance

Programs are set forth on the schedule annexed hereto as Exhibit A.  Continuation of these

policies is essential to the ongoing operation of the Debtors' business.

24.    The Debtors are required to pay premiums under the Liability and

Property Insurance Programs based upon fixed rates established by the applicable Insurance

Carrier.  The annual premiums for the Workers' Compensation Programs and Liability and

Property Insurance Programs currently in effect aggregate approximately $52 million.  The

Debtors pay these premiums directly to the Insurance Carriers or any applicable broker.

25.    The Debtors' current primary general liability insurance coverage (the

"General Liability Policy") is provided by AIG.  The Debtors paid an annual premium of

approximately $380,000 directly to AIG via Marsh on or around the commencement of the

policy.  The General Liability Policy has a term which began on September 30, 2007 and runs

through September 30, 2008.

26.    Originally on September 12, 2008, the Debtors authorized Marsh, to

renew the General Liability Policy for the 2008-2009 policy year.  The premium for the renewed

AIG Policy would have been approximately $368,040 and provided substantially similar

coverage  that was being provided under the current General Liability Policy.  However, after the

sale of LBI's broker-dealer business and the transfer of thousands of employees to Barclays, the

Debtors and Marsh began discussions with AIG regarding a general liability policy that provides the appropriate coverage for the reduced size of the Debtors' asset base after the sale.

27.     AIG has agreed to renew the Debtors' General Liability Policy for a period of one year and the policy will provide coverage that represents the appropriate insurance coverage for the Debtors' largely reduced asset base and workforce.  Like the current General Liability Policy, the renewed policy would commence on September 30, 2008 and the Debtors would be required to pay the premium in full in the approximate amount of $242,000 on or before October 3, 2008.  If the Debtors choose to cancel the policy at anytime prior to the expiration date, AIG has agreed to waive any short rate penalty meaning that the premium paid would be pro rated to the date the policy was cancelled and the balance refunded to the Debtors. The premium will also be subject to an audit after the policy expires and adjusted based on actual exposures.

28.     In addition to the renewal for the General Liability Policy, the Debtors and AIG have also agreed to renew the annual programs for their automobile liability policy (the "Automobile Liability Policy") and paying the applicable surcharges.  The renewed Automobile Liability Policy would commence on September 30, 2008 and the Debtors would be required to pay the premium in full in the approximate amount of $23,100 on or before October 3, 2008. The surcharges associated with the General Liability Policy and the Automobile Liability Policy are approximately $3,633 and also payable on or before October 3, 2008.

29.     Along with the renewals discussed above, the Debtors are also renewing their umbrella and excess liability (the "Umbrella Policy") and energy liability policies (the "Energy Policy"), each for a two month term.  The Umbrella Policy is provided by AIG, Liberty, Zurich, and ACE Bermuda.  Like the other policies to be renewed, the Umbrella Policy provides

coverage for a two-month period beginning September 30, 2008 and the Debtors are required to pay the premium in full in the approximate amount of $158,633 on or before October 3, 2008. Similarly, the Energy Policy is being renewed for the two month period beginning September 30, 2008 and the Debtors are required to pay the premium in full in the approximate amount of $53,136 on or before October 3, 2008.  As other policies expire, the Debtors will assess their insurance needs and renew policies as appropriate.

30.      In addition to the annual premiums, pursuant to certain of the Liability and Property Insurance Programs, the Debtors are required to pay various deductibles for claims asserted under the policies.  Generally speaking, under the Debtors' Liability and Property Insurance Programs if a claim is filed against a policy that has a deductible, the provider will pay the claim less the amount of the deductible, rather than pay the full amount of the claim and charge the Debtors for the amount of the deductible.  The Debtors believe that, as of the Commencement Date, there may be accrued and outstanding amounts with respect to deductibles under the Liability and Property Insurance Program.  Moreover, at some time subsequent to the Commencement Date, deductibles for claims relating to the period prior to the Commencement Date may arise.  Accordingly, the Debtors are seeking the Court's authorization to pay such undisputed claims, in their discretion, as they come due.

**B.    Omitted Insurance Programs**

31.      The Debtors have made an extensive and good-faith effort to identify all of the Debtors' Insurance Programs on Exhibit A; however, due to the complex corporate organizational structure, certain Insurance Carriers that currently provide insurance coverage under the Debtors' Insurance Programs may not be listed on Exhibit A.  To the extent that the Debtors identify additional Insurance Programs not listed on Exhibit A, the Debtors seek the

authority to continue such Insurance Programs uninterrupted and pay, in the Debtors' discretion,

the Insurance Obligations relating thereto.  Upon identifying Insurance Programs not listed on

<u>Exhibit A</u>, the Debtors will promptly file an amendment to <u>Exhibit A</u> and serve a copy of this

Motion and any order approving this Motion on such Insurance Carrier.  The Debtors request

that the order approving this Motion be binding on all Insurance Carriers and Insurance

Programs.

## III.

### Insurance Brokers

32.     The Debtors employ various insurance brokers to assist them with the

procurement and negotiation of their Insurance Programs and the processing of claims, and, in

certain circumstances, to remit payment to the Insurance Carriers on behalf of the Debtors.  The

brokers are paid a fee by the Debtors or a commission by the Insurance Carriers or a combination

of both.  Accordingly, there will be fees and/or commissions due to the brokers associated with

the September 30, 2008 renewals and such fees and/or commissions will be paid as part of the

premiums associated with such renewals.  Otherwise, the Debtors do not owe any fees or

commissions to their brokers relating to the prepetition period.

## IV.

### Debtors' Request Authority to (i) Continue the
### Insurance Programs and (ii) Pay All Obligations in Respect Thereof

33.     Pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy

Code and Bankruptcy Rules 4001, and 6004, the Debtors seek authority to continue, in their sole

discretion, the Insurance Programs on an uninterrupted and same basis, and in accordance with

the same practices and procedures as were in effect prior to the Commencement Date.

Furthermore, the Debtors seek authority to pay, in their sole discretion, all undisputed premiums,

deductibles, administrative fees, and other obligations arising under the Insurance Programs, as applicable, that were or are due and payable, or related to the period before or after, the Commencement Date.

34.    Pursuant to section 503(b)(1) of the Bankruptcy Code, a debtor may incur, and the court, after notice and a hearing, shall allow as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). In addition, pursuant to section 363(b) of the Bankruptcy Code, a debtor may, in the exercise of their sound business judgment and after notice and a hearing, use property of the estate outside of the ordinary course of business. *Id.* § 363(b). The Debtors submit that the use of estate funds for payment of the Insurance Obligations is permitted by sections 503(b)(1) and 363(b) of the Bankruptcy Code as necessary costs of preserving the estates.

35.    Furthermore, to supplement these explicit powers, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Id.* § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re *Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." In re *NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).

36.    In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g., Miltenberger v.*

*Logansport C. & S.W. Ry. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); *Dudley v. Mealey*, 147 F.2d 268 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

       37.     The "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See* In re *Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize the payment of pre-petition claims if such payment was essential to the continued operation of the debtor); In re *Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation). The doctrine is frequently invoked early in a chapter 11 case, particularly in connection with the payment of prepetition claims. The court in *In re Structurelite Plastics Corp.* indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of pre-petition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (quoting *Chateaugay Corp.*, 80 B.R. at 287). The court stated that "a *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *Id.* at 932. The rationale for the doctrine of necessity rule is consistent with the paramount goal of chapter 11 – "facilitating

the continued operation and rehabilitation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176.

Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to

grant the relief requested herein.

38.     Moreover, numerous courts in this jurisdiction have granted the relief

requested herein in other chapter 11 cases. *See*, *e.g.*, *In re Lexington Precision Corp.*, Case No.

08-11153 (MG) (Bankr. S.D.N.Y. Apr. 22, 2008) [Docket No. 80]; *In re Fortunoff Fine Jewelry*

*and Silverware, LLC*, Case No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 29, 2008) [Docket No.

312], (Bankr. S.D.N.Y. Feb. 5, 2008) [Docket No. 42]; *In re PRC, LLC*, Case No. 08-10239

(MG) (Bankr. S.D.N.Y. Jan. 25, 2008) [Docket No. 37]; *Silicon Graphics, Inc., et. al.*, Case No.

06-10977 (BRL)  (Bankr. S.D.N.Y May 31, 2006) [Docket No. 144], (Bankr. S.D.N.Y May 10,

2006) [Docket No. 49]; *In re Atkins Nutritionals, Inc., et al.*, Case No. 05-15913 (ALG) (Bankr.

S.D.N.Y. Aug. 1, 2005) [Docket No. 32].

39.     The nature of the Debtors' businesses and the extent of their operations

make it essential for the Debtors to maintain their Insurance Programs on an uninterrupted basis.

The nonpayment of any premiums, deductibles, or related fees under one of the Insurance

Programs could result in one or more of the Insurance Carriers declining to renew their insurance

policies or refusing to enter into new insurance agreements with the Debtors in the future.  If the

Insurance Programs lapse without renewal, the Debtors could be exposed to substantial liability

for personal and/or property damages to the detriment of all parties in interest.  Furthermore, the

Debtors would then be required to obtain replacement policies on an expedited basis at a

significant cost to the estates.

40.     Moreover, the Insurance Programs are vital to all aspects of the Debtors'

operations.  Applicable state law mandates that the Debtors maintain workers' compensation

coverage for their employees.  Failure by the Debtors to pay the premiums associated with their

Workers' Compensation Programs would jeopardize their coverage and expose the Debtors to

substantial liability in fines by various state workers' compensation boards.

41.    In addition, the risk that eligible workers' compensation claimants will not

receive timely payment for prepetition employment-related injuries could have a devastating

effect on the financial well-being and morale of the Debtors' current employees.  Departures by

employees at this critical time may result in a severe disruption of the Debtors' businesses with a

substantially adverse impact on the Debtors, the value of their assets and their businesses.  The

retention of the Debtors' qualified and dedicated senior management also is linked to the

continued effectiveness of the directors' and officers' liability insurance policies.

42.    Finally, pursuant to the terms of the guidelines established by the U.S.

Trustee, the Debtors are obligated to remain current with respect to their primary Insurance

Programs.  Therefore, the continuation of the Insurance Programs, on an uninterrupted basis, and

the payment of all undisputed prepetition and postpetition Insurance Obligations arising under

the Insurance Programs are essential to preserve the Debtors' business and preserve the value of

the Debtors' estates for all creditors.  Accordingly, the Debtors are seeking the Court's

authorization to continue the Insurance Program and related policies as such practices, programs,

and policies were in effect as of the date of the commencement of the Debtors' chapter 11 cases

and authorize, but not direct, the Debtors to pay any undisputed prepetition claims arising under

the Insurance Program as they come due.

43.    To the extent any Insurance Program or related agreement is deemed an

executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do

not, at this time, seek to assume any such contract.  Accordingly, if the Court authorizes the

payments described above, such payments should not be deemed to constitute a postpetition

assumption or adoption of the programs, policies, or agreements as executory contracts pursuant

to section 365 of the Bankruptcy Code.  The Debtors are in the process of reviewing these

matters and reserve all of their rights under the Bankruptcy Code with respect thereto.

Moreover, authorization to pay all amounts on account of the Insurance Obligations shall not

affect the Debtors' right to contest the amount or validity of these obligations.

## Interim Relief Should Be Granted

44.    The Debtors seek authority to continue the Insurance Programs and to pay

those obligations that are or become due and payable prior to the Final Hearing.  In particular,

the Debtors intend to pay the premiums associated with the renewals of the AIG Policy, General

Liability Policy, Automobile Liability Policies, Umbrella Policy, and Energy Policy as described

above.  AIG and the other insurers for the foregoing policies have agreed to extend the payment

deadline for the premiums associated with the foregoing policies until October 3, 2008 and will

not renew such policies unless and until the Debtors tender payment.  The Debtors are required

by law to have appropriate insurance coverage and their estates could be irreparably harmed if

they are not permitted to make these payments.  Accordingly, the Debtors' are seeking the

Court's authorization to pay the premiums associated with the policies.  In addition, the Debtors

request that the automatic stay be waived for workers' compensation claims on an interim basis.

45.    The Debtors submit the facts cited herein illustrate that the interim relief

requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and

their estates.  Based on the foregoing, Bankruptcy Rule 6003 has been satisfied.

46.     Furthermore, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the stay of the order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).[1]

**Notice**

47.     No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on September 22, 2008 governing case management and administrative procedures for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) counsel for the Creditors' Committee; (iii) counsel for those lenders making daily postpetition clearing advances to the Debtors pursuant to the Order Confirming Status of Clearing Advances; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New York; and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

---

[1]     Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General Order M-308 of the United States Bankruptcy Court for the Southern District of New York, signed on October 11, 2005 by Chief Judge Stuart M. Bernstein.

48.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  October 1, 2008
         New York, New York

/s/ Shai Y. Waisman
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# EXHIBIT A

**(Insurance Programs)**

NY2:\1915023\14\151N314!.DOC\58399.0003

**Lehman Brothers Holdings Inc., et al.**                                          **EXHIBIT A**

| | CARRIER | POLICY NUMBER | BROKER | EFFECTIVE DATE | EXPIRATION DATE | LIMITS | DEDUCTIBLE | POLICY PREMIUM | ANNUAL PREMIUM | GEOGRAPHIC SCOPE |
|---|---|---|---|---|---|---|---|---|---|---|
| UK Engineering Inspection Coverage | Royal & Sun Alliance | CY/EKD7000537 | Marsh UK | 5/1/2008 | 9/29/2008 | Statutory | N/A | GBP 3,204.81 | GBP6,549.58 | UK |
| LBCS Cargo Insurance | Lloyds of London | JC715106 | Marsh - Portland | 1/9/2007 | 9/30/2008 | $50mm for named location; $10mm for any one conveyance and/or pipeline; $5mm for unnamed location | $100,000 per occurrence | $25,000 minimum & deposit | $25,000 minimum & deposit | Worldwide |
| LBCS Energy Liability | Lloyds of London | B0509HB177007 (Primary); B0509HE307607 (Excess) | Marsh | 8/1/2007 | 9/30/2008 | $100mm Primary ; $150 xs $100 Excess (total limits: $250mm) | $50,000 SIR; $100,000 SIR for Oil Trading | $136,920 (primary $100mm); $173,400 (Excess$150mm) | $136,920 (primary $100mm); $173,400 (Excess$150mm) | Worldwide |
| Canadian General Liability | ACE | CGL323128 | Integro | 9/30/2007 | 9/30/2008 | $!,000,000 per occ. | Nil | $2,500 | $2,500 | Canada |
| Auto Liability | AIG | AL 1607101 | Marsh | 9/30/2007 | 9/30/2008 | $1MM Liability; PIP statutory; $10,000 Medial payments | N/A | $107,691 | $107,691 | USA |
| General Liability (Commercial) | AIG | 1595543 | Marsh | 9/30/2007 | 9/30/2008 | $1MM/loss $10MM aggregate | $0 | $381,031 | $381,031 | USA |
| Punitive Damages Wrap Around Coverage | AIG CAT | TBD | Marsh Bermuda | 9/30/2007 | 9/30/2008 | $25MM excess of Primary | N/A | $35,000 | $35,000 | Global |
| Umbrella/Excess Liability | AIG, Liberty Mutual, Zurich, ACE Bermuda | Various | Marsh | 9/30/2007 | 9/30/2008 | $250MM/loss, excess of scheduled underlying limits | N/A | $939,896 | $939,896 | Worldwide |

Lehman Brothers Holdings Inc., et al.                                    EXHIBIT A

| | CARRIER | POLICY NUMBER | BROKER | EFFECTIVE DATE | EXPIRATION DATE | LIMITS | DEDUCTIBLE | POLICY PREMIUM | ANNUAL PREMIUM | GEOGRAPHIC SCOPE |
|---|---|---|---|---|---|---|---|---|---|---|
| Workers Compensation and Employers Liability | AIG | 5455585(FL); 5455585(CA); 5455586(AOS); 5455587(NY); 5455588(AR,MA,TN,VA); 5455589(MI,WI); 5455590(OR); 5455591(TX) | Marsh | 9/30/2007 | 9/30/2008 | Workers Compensation statutory benefits for states covered. Employers Liability $1MM each accident and each employee. | $250,000 | $3,612,198 | $3,612,198 | USA |
| Aviation Finance Group Contingent Hull & Liability (Corporate Aircraft) | AIG Aviation | FI-1859476-01 | AON Aviation | 10/25/2007 | 10/25/2008 | $200mm per occ with various sublimits | N/A | $17,500 | $17,500 | Worldwide |
| Aviation Hull and Liability (including Non-Owned Aircraft and Excess Coverage for the fractional) | AIG Aviation, National Union -(Fractional Policy) | TBD | Aon Aviation | 10/30/2007 | 10/30/2008 | Aircraft Hull: 1995 Gulfstream IV $34,170,000 2001 Gulfstream IV $38,760,000 1998 Sikorsky $8,800,000 | N/A | $437,550 | $437,550 | Global |
| Fine Arts Liability | Travelers | QT-660-3077B165-FA 103107 | Dewitt Stern Group | 10/31/2007 | 10/31/2008 | $12MM scheduled locations; $1MM transit; $3MM any other location world wide | $1,000 in transit; $15,000 all other | $26,145 | $26,145 | Global |

**Lehman Brothers Holdings Inc., et al.**                                        **EXHIBIT A**

| | CARRIER | POLICY NUMBER | BROKER | EFFECTIVE DATE | EXPIRATION DATE | LIMITS | DEDUCTIBLE | POLICY PREMIUM | ANNUAL PREMIUM | GEOGRAPHIC SCOPE |
|---|---|---|---|---|---|---|---|---|---|---|
| Petrol Properties GL | Lexington | 107253 | Integro | 11/18/2007 | 11/18/2008 | $2MM aggregate; $2MM products/oper; $1MM/loss; $1MM personal injury; $50K Fire Damage; Legal Excluded Medical Payments | $10,000/occurrence | $27,000 (Minimum and Deposit) | $25,000 | USA |
| Non 40 Act Asset Management - D&O/E&O | AIG, XL, Chubb, HCC, Arch, Travelers, Starr, PIA, ACE USA, Axis USA | AIG: 003019007, XL: ELU101620-07, Chubb: 68005473, HCC: 24MGU07A15762, Arch: IAP0018995-01, Travelers: 0590CM3054, Starr: 349-4864, PIA: U707-60579, ACE USA: DOX | Willis | 11/30/2007 | 11/30/2008 | $100MM | $0 Individual; Corporate Reimbursement $3MM | $2,302,752 | $2,302,752 | Global |
| Private Equity D&O and E&O | Chubb, AIG, XL | Chubb: 70434566, AIG: 003029441, XL: ELU101654-07 | Marsh | 11/30/2007 | 11/30/2008 | $30MM | $0 Individual; Corporate Reimbursement $500,000 | $481,750 | $481,750 | Global |
| Pro Bono Professional Liability | Lloyds of London | 86335 | Complete Equity Markets | 1/10/2008 | 1/10/2009 | $1MM aggregate (sub-limits for certain coverages) | $500 per claim | $1,979 plus taxes ($2,054.20 with taxes) | $1,979 plus taxes ($2,054.20 with taxes) | |
| Aviation Finance Group Contingent Hull & Liability | Lloyds of London | B0823AM0852581 | AON | 1/16/2008 | 1/16/2009 | $500mm plus various sublimits | $10k for All Risk; $1,250 for Baggage/personal effects | $441,216 Deposit | $441,216 Deposit | Worldwide |
| Comprehensive Crime (Fidelity Coverage) including Computer Crime | Lloyds & Various U.S. insurers | B0509QA005308/1 Primary | Marsh | 1/31/2008 | 1/31/2009 | $175MM per loss subject to $175MM aggregate | $10MM per claim | $4,001,734 | $4,001,734 | Global |
| Comprehensive Crime Mortgage Bank Excess In-fill | AIG | Bond: 003002193 Computer: 003008225 | Marsh | 1/31/2008 | 1/31/2009 | $5MM excess of $5MM retention | $5MM/loss | $74,767 | $74,767 | |
| Terrorism Coverage (Nuclear, Biological and Chemical) | Wharf Reinsurance | 2008-NBC-01 | Marsh | 2/11/2008 | 2/11/2009 | $1.425B | $1MM | $2,720,938 | $2,720,938 | USA |

Lehman Brothers Holdings Inc., et al.                                    EXHIBIT A

| | CARRIER | POLICY NUMBER | BROKER | EFFECTIVE DATE | EXPIRATION DATE | LIMITS | DEDUCTIBLE | POLICY PREMIUM | ANNUAL PREMIUM | GEOGRAPHIC SCOPE |
|---|---|---|---|---|---|---|---|---|---|---|
| Excess SIPC Surety Bond | Customer Asset Protection Company | 2002-02, 1002-03lbi, 1003-03nb | Marsh | 2/16/2008 | 2/16/2009 | N/A | N/A | $904,243 | | LBI, NB LLC, LBIE |
| All Risk & NBCR Excess (excluding UK) | Wharf Reinsurance | XS-002 | Marsh | 12/31/2007 | 3/15/2009 | $575MM per occ for NBC; $300MM per occ /agg for Global All Risk (excl. UK); $100MM Flood except $25MM for high hazard flood zones, | Excess underlying policies | All Risk= $57,744 NBC=$115,488 | All Risk= $48,000 NBC=$96,000 | Global |
| ALS/BNC/LBB/LBSBF/PML Mortgage Impairment Policy | Lloyd's | B066408164A07     B066408164B07 | Integro | 12/31/2007 | 3/15/2009 | $30MM A1 & A2; $25MM CA Earthquake | $5,000, except $10K for windstorm & flood, $1M for direct loss of damages from balance of perils | $1,198,766 GBP30,075 for PML | $996,480 GBP25,000 for PML | Global |
| Global Property, Business Interruption and Boiler and Machinery | Zurich, Chubb, Lexington, Lloyds, ACE USA, Max Bermuda, AWAC, Arch, Allianz, Montpelier RE, GEP, Axis US, Swiss RE, Lancashire, ACE | Various | | 12/31/2007 | 3/15/2009 | $1.4 B w/various sub limits | $1MM/occurrence all loss except, 5% for CA Quake and Named Windstorm with $1mm minimum, 24 hours waiting period for service interruption | $6,142,640.37 | $5,106,102.40 | Global |

Lehman Brothers Holdings Inc., et al.                                    EXHIBIT A

| | CARRIER | POLICY NUMBER | BROKER | EFFECTIVE DATE | EXPIRATION DATE | LIMITS | DEDUCTIBLE | POLICY PREMIUM | ANNUAL PREMIUM | GEOGRAPHIC SCOPE |
|---|---|---|---|---|---|---|---|---|---|---|
| Terrorism Standalone - International (exlcuding US, UK) | Lexington | 9406835 | Marsh | 12/31/2007 | 3/15/2009 | Limits of Liability per location not to exceed the amounts shown in Property and BI columns respectively for each location, for each | $5MM/occurrence as respects to property damage. 3 days as respects BI and Extra Expense | $111,149 | $92,393 | Global (excluding US,UK) |
| TRIPRA | Wharf Reinsurance | 2008-T-02 | Marsh | 12/31/2007 | 3/15/2009 | $2 B | $1MM/occurrence all loss | $1,904,789.00 | $1,583,366.00 | USA |
| UK All Risk Property Policy | Wharf Reinsurance | 2008PRIUK-01 | Marsh | 12/31/2007 | 3/15/2009 | $1.7 B USD with various sublimits | $1MM per occurrence with a 24 hour waiting period with respect to service interruption | $515,786 | $428,750 | UK |
| UK Terrorism -Pool RE Endorsement | Wharf Reinsurance | Attaches to Policy 2008-PRIUK-01 | Marsh | 12/31/2007 | 3/15/2009 | $1.7B with various sublimits | $1MM per occurrence with a 24 hour waiting period with respect to service interruption | $1,043,736 | $867,611 | UK |
| Special Risk | Great American Insurance Co. | SCI273610130-06 | Marsh | 3/30/2006 | 3/30/2009 | $50MM per Insured Event subject to sub-limits | $0 (NIL) | $60,795 | $20,265 | Global |
| Directors and Officers Liability | XL, Chubb, HCC, Axis, Zurich, Lloyds, ACE Bda, Arch, AIG Cat Excess/AWAC, Liberty, AIG, Endurance, RSUI, CNA, AIG, Axis, ACE | ELU104715-08, 7043-0876, 24-MGU-08-A16690, MNN713535/01/2008, DOC7995104-10, B0509QA027108, LEH-11930D, 00DOX0112000403, ELU1047515-08, C002007/006, 078365-018, 005082352, | Marsh | 5/16/2008 | 5/16/2009 | $180MM - A&B $250MM - A | (A) Individual coverage $0;   (B) Company reimbursement $25MM | $11,756,796.00 | $11,756,796.00 | Global |
| Employment Practices Insurance | XL, ACE Bermuda, AWAC, Axis Bermuda, Endurance | BM00023596EP08A, LEHM-11929E, C006345/002, 1131670108QA, P006960002 | Marsh Bermuda | 5/16/2008 | 5/16/2009 | $100MM | $10MM | $1,821,408 | $1,821,408 | Global |
| Fiduciary Liability (Pension Trust) | AIG, St. Paul Travelers, CNA, HCC, Zurich | 507-47-13, EC09001745, 169856703, 14-MGU-08-A16695, FLC5979655-04 | Marsh | 5/16/2008 | 5/16/2009 | $50MM | $250K for; $2.5M for derivative or class representative action; $10M for all loss in connection with any Claim made against any | $593,909 | $593,909 | Global |

Lehman Brothers Holdings Inc., et al.                         EXHIBIT A

| | CARRIER | POLICY NUMBER | BROKER | EFFECTIVE DATE | EXPIRATION DATE | LIMITS | DEDUCTIBLE | POLICY PREMIUM | ANNUAL PREMIUM | GEOGRAPHIC SCOPE |
|---|---|---|---|---|---|---|---|---|---|---|
| Charterers Legal Liability | International Marine Underwriters | N5JH01111 | Integro | 5/31/2008 | 5/31/2009 | $5MM | $10,000 any one loss or occurrence | $5,000 | $5,000 | Global |
| Global Real Estate Group Liability (General Liability, Liquor Liability, Auto Liability, & Garage Liability) | AIG | GL 4571645 LIQ 4572469 CA 1469944 CA 4576013 | Integro | 8/1/2008 | 8/1/2009 | $1mm per occ/$2mm agg per location; $1mm for non-owned & Hired Auto; $1mm for Liquor Liability | N/A | $851,213 | $851,213 | per scheduled locations |
| Global Real Estate Group Property | Lexington, ACE, CNA, Glacier, Inter Hannover, Liberty Mutual, Swiss Re, Zurich | Various | Integro | 8/1/2008 | 8/1/2009 | $250mm with various sublimits | $25k; $100k for Garden Apts; $250k or 5% for Flood, Named Storm, Flood as a result of Named Storm & CA Earthquake | $3,301,467 plus applicable taxes | $3,301,467 plus applicable taxes | per scheduled locations |
| Global Real Estate Group Umbrella/Excess Liability | AIG, Lexington, ACE Westchester, AIG CAT Excess, Chubb, Fireman's Fund | 6081831, 7769720, G23810815002,9497745, 93635835, SHX 00079403960 | Integro | 8/1/2008 | 8/1/2009 | $200mm per occ / agg Per location | $25,000 SIR | $1,157,460 plus applicable taxes | $1,157,460 plus applicable taxes | per scheduled locations |
| Cranford Storage Tank Liability | ACE | G21861492002 | Marsh | 8/15/2008 | 8/15/2009 | $1mm per pollution incident; $1mm aggregate legal defense expense; $1mm aggregate limit | $5,000 | $473 | $473 | USA |
| International Casualty | Ace | PHFD37282236 | Integro | 9/30/2007 | 9/30/2009 | $1MM CGL; $2MM Auto; $1MM Employers Liability | $1,000 for EBL; N/A for all others | $261,895 | $130,948 | Global ex US |
| Excess Securities (J) | Lloyd's | 509/ZF003708 | Marsh | 1/31/2008 | 1/31/2011 | $325MM each and every loss | Excess of underlying $175M Bond Aggregate | $532,500 | $177,500 | Global |
| Mail (Lehman Brothers) | Chubb | | Marsh | Continuous (7/30 anniversary date) | Continuous (7/30 anniversary date) | $50MM subject to sub-limits | $0 (NIL) | $35,000 | $35,000 | Global |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
:
In re                                                 :      Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :      08-13555 (JMP)
:
Debtors.                            :          (Jointly Administered)
:
:
--------------------------------------------------------------------x

**INTERIM ORDER PURSUANT TO SECTIONS 105(a), 362(d), 363(b),**
**AND 503(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES**
**4001, 6003 AND 6004 FOR ORDER (A) (i) AUTHORIZING DEBTOR TO**
**CONTINUE ITS WORKERS' COMPENSATION PROGRAMS AND ITS**
**LIABILITY, PRODUCT, PROPERTY, AND OTHER INSURANCE PROGRAMS,**
**(ii) AUTHORIZING DEBTOR TO PAY ALL PREPETITION OBLIGATIONS**
**IN RESPECT THEREOF, (B) AUTHORIZING FINANCIAL INSTITUTIONS**
**TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO**
**SUCH OBLIGATIONS, AND (C)  SCHEDULING A FINAL HEARING**

Upon the motion, dated October 1, 2008 (the "Motion"), of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and,

together with their non-debtor affiliates, "Lehman"), for entry of an order, pursuant to

sections 105(a), 362(d), 363(b), and 503(b) of chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code") and Rules 4001, 6003 and 6004 of the Federal Rules of

Bankruptcy Procedure, for authority to (a) (i) continue their workers' compensation

programs (the "Workers' Compensation Programs") and their liability, product, property,

and other insurance programs (together with the Workers' Compensation Programs, the

"Insurance Programs") including but not limited to those set forth on the schedule

annexed hereto as Exhibit A, (ii) pay all prepetition obligations in respect thereof, on an

uninterrupted basis, consistent with their practices in effect prior to the commencement of

the Debtors' chapter 11 cases, including the payment of all premiums, claims,

deductibles, administrative expenses, and all other charges incurred, whether relating to

the period prior to or after the commencement of these chapter 11 cases (collectively,

"Insurance Obligations"), (iii) modify the automatic stay solely and for the limited

purpose of permitting employees with claims under the Workers' Compensation Program

to proceed with their claims in accordance with such program in the appropriate judicial

or administrative forum; and (B) schedule a hearing to consider the relief requested on a

permanent basis (the "Final Hearing"), all as more fully described in the Motion; and the

Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings

Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion

and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Motion having been provided in accordance with the

procedures set forth in the order entered September 22, 2008 governing case management

and administrative procedures (the "Case Management Order") to (i) the United States

Trustee; (ii) counsel for the Creditors' Committee; (iii) counsel for those lenders making

daily postpetition clearing advances to the Debtors pursuant to the Order Confirming

Status of Clearing Advances (the "Postpetition Lenders"); (iv) the Securities and

Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Attorney

for the Southern District of New York; and (vii) all parties who have requested notice in

these chapter 11 cases, and it appearing that no other or further notice need be provided;

and a hearing having been held to consider the relief requested in the Motion (the

"Interim Hearing"); and upon the Affidavit of Ian T. Mowitt Pursuant to Rule 1007-2 for

the Local Bankruptcy Rules of the Southern District of New York in Support of First-Day

Motions and Applications, sworn to on September 14, 2008, the record of the Interim

Hearing, and all of the proceedings had before the Court; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their

estates and creditors, and all parties in interest and that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis; and it is further

ORDERED that the Debtors are authorized and empowered to maintain

their Insurance Programs including but not limited to those set forth on the schedule

annexed hereto as Exhibit A without interruption, on the same basis, and in accordance

with the same practices and procedures that were in effect prior to the commencement of

the Debtors' chapter 11 cases; and it is further

ORDERED that the Debtors are authorized, but not required, to pay, in

their sole discretion, all Insurance Obligations that are or become payable prior to the

Final Hearing, including, without limitation, all premiums, claims, deductibles, excess,

retrospective adjustments, administrative and brokers' fees, and all other obligations

arising under the Insurance Programs, including those Insurance Obligations that (i) were

due and payable or related to the period before the commencement of these chapter 11

cases, without further Order of the Court, and (ii) are or become due and payable or

related to the period after the commencement of these chapter 11 cases; and it is further

ORDERED that, pursuant to section 362(d) of the Bankruptcy Code, to the extent any of the Debtors' employees hold claims under the Debtors' Workers' Compensation Programs, these employees are authorized, at the Debtors' discretion, to proceed with their workers' compensation claims through and including the collection of any judgment in the appropriate judicial or administrative forum under the Workers' Compensation Programs; provided, that the prosecution of such claims is in accordance with the Workers' Compensation Program and the recoveries are limited to the proceeds available under the Workers' Compensation Program; and it is further

ORDERED that nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to the Debtors' Insurance Programs; and it is further

ORDERED that, to the extent that any Insurance Program or any related contract or agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither this Order nor any payments made in accordance with this Order shall constitute the postpetition assumption of any such Insurance Program, contract, or related agreement pursuant to section 365 of the Bankruptcy Code; and it is further

ORDERED that Bankruptcy Rule 6003(b) has been satisfied; and it is further

ORDERED that notwithstanding any applicability of Rules 6004(h),[1]

7062, or 9014 of the Bankruptcy Rules, the terms and conditions of this Order shall be

immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed

good and sufficient notice of such Motion and the requirements of Bankruptcy Rules

4001(d) and 6004(a) are waived; and it is further

ORDERED that the Final Hearing to consider entry of an order granting

the relief requested in the Motion on a permanent basis shall be held on October 16, 2008

at 10:00 a.m. (Prevailing Eastern Time); and any objections to entry of such order shall

be in writing, filed with the Court in accordance with General Order M-242, and served

upon (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York,

New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue,

New York, New York 10153, Attn:  Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai

Y. Waisman, Esq., and Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office

of the United States Trustee for the Southern District of New York, 33 Whitehall Street,

21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Paul Schwartzberg,

Brian Masumoto, Linda Riffkin, and Tracy Hope Davis; (iv) Milbank, Tweed, Hadley &

McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F.

Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official

committee of unsecured creditors appointed in these cases; and (v) Cleary Gottlieb LLP,

One Liberty Plaza, New York, NY 10006, Attn: Lindsee P. Granfield, Esq.  and Lisa

---

[1]    Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General Order M-308 of the United States Bankruptcy Court for the Southern District of New York, signed on October 11, 2005 by Chief Judge Stuart M. Bernstein.

Schweitzer, Esq. and Sullivan & Cromwell LLP, 125 Broad Street, New York, NY

10004, Attn:  Robinson B. Lacy, Esq. and Hydee R. Feldstein, Esq., attorneys for the

Debtors' postpetition lenders, so as to be received on or before 4:00 p.m. on October 13,

2008; and it is further

       ORDERED that the Debtors shall serve this Order within three business

days of its entry on and due and proper notice of the Motion having been provided to the

Standard Parties and the Insurance Carriers set forth on the schedule that is annexed

hereto as Exhibit A.

Dated:  October __, 2008
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

**(Insurance Programs)**

**Lehman Brothers Holdings Inc., et al.**                    EXHIBIT A

| | CARRIER | POLICY NUMBER | BROKER | EFFECTIVE DATE | EXPIRATION DATE | LIMITS | DEDUCTIBLE | POLICY PREMIUM | ANNUAL PREMIUM | GEOGRAPHIC SCOPE |
|---|---|---|---|---|---|---|---|---|---|---|
| UK Engineering Inspection Coverage | Royal & Sun Alliance | CY/EKD7000537 | Marsh UK | 5/1/2008 | 9/29/2008 | Statutory | N/A | GBP 3,204.81 | GBP6,549.58 | UK |
| LBCS Cargo Insurance | Lloyds of London | JC715106 | Marsh - Portland | 1/9/2007 | 9/30/2008 | $50mm for named location; $10mm for any one conveyance and/or pipeline; $5mm for unnamed location | $100,000 per occurrence | $25,000 minimum & deposit | $25,000 minimum & deposit | Worldwide |
| LBCS Energy Liability | Lloyds of London | B0509HB177007 (Primary); B0509HE307607 (Excess) | Marsh | 8/1/2007 | 9/30/2008 | $100mm Primary ; $150 xs $100 Excess (total limits: $250mm) | $50,000 SIR; $100,000 SIR for Oil Trading | $136,920 (primary $100mm); $173,400 (Excess$150mm) | $136,920 (primary $100mm); $173,400 (Excess$150mm) | Worldwide |
| Canadian General Liability | ACE | CGL323128 | Integro | 9/30/2007 | 9/30/2008 | $!,000,000 per occ. | Nil | $2,500 | $2,500 | Canada |
| Auto Liability | AIG | AL 1607101 | Marsh | 9/30/2007 | 9/30/2008 | $1MM Liability; PIP statutory; $10,000 Medial payments | N/A | $107,691 | $107,691 | USA |
| General Liability (Commercial) | AIG | 1595543 | Marsh | 9/30/2007 | 9/30/2008 | $1MM/loss $10MM aggregate | $0 | $381,031 | $381,031 | USA |
| Punitive Damages Wrap Around Coverage | AIG CAT | TBD | Marsh Bermuda | 9/30/2007 | 9/30/2008 | $25MM excess of Primary | N/A | $35,000 | $35,000 | Global |
| Umbrella/Excess Liability | AIG, Liberty Mutual, Zurich, ACE Bermuda | Various | Marsh | 9/30/2007 | 9/30/2008 | $250MM/loss, excess of scheduled underlying limits | N/A | $939,896 | $939,896 | Worldwide |

Lehman Brothers Holdings Inc., et al.                    EXHIBIT A

| | CARRIER | POLICY NUMBER | BROKER | EFFECTIVE DATE | EXPIRATION DATE | LIMITS | DEDUCTIBLE | POLICY PREMIUM | ANNUAL PREMIUM | GEOGRAPHIC SCOPE |
|---|---|---|---|---|---|---|---|---|---|---|
| Workers Compensation and Employers Liability | AIG | 5455585(FL); 5455585(CA); 5455586(AOS); 5455587(NY); 5455588(AR,MA,TN,VA); 5455589(MI,WI); 5455590(OR); 5455591(TX) | Marsh | 9/30/2007 | 9/30/2008 | Workers Compensation statutory benefits for states covered. Employers Liability $1MM each accident and each employee. | $250,000 | $3,612,198 | $3,612,198 | USA |
| Aviation Finance Group Contingent Hull & Liability (Corporate Aircraft) | AIG Aviation | FI-1859476-01 | AON Aviation | 10/25/2007 | 10/25/2008 | $200mm per occ with various sublimits | N/A | $17,500 | $17,500 | Worldwide |
| Aviation Hull and Liability (including Non-Owned Aircraft and Excess Coverage for the fractional) | AIG Aviation, National Union -(Fractional Policy) | TBD | Aon Aviation | 10/30/2007 | 10/30/2008 | Aircraft Hull: 1995 Gulfstream IV $34,170,000 2001 Gulfstream IV $38,760,000 1998 Sikorsky $8,800,000 | N/A | $437,550 | $437,550 | Global |
| Fine Arts Liability | Travelers | QT-660-3077B165-FA 103107 | Dewitt Stern Group | 10/31/2007 | 10/31/2008 | $12MM scheduled locations; $1MM transit; $3MM any other location world wide | $1,000 in transit; $15,000 all other | $26,145 | $26,145 | Global |

Lehman Brothers Holdings Inc., et al.                    EXHIBIT A

| | CARRIER | POLICY NUMBER | BROKER | EFFECTIVE DATE | EXPIRATION DATE | LIMITS | DEDUCTIBLE | POLICY PREMIUM | ANNUAL PREMIUM | GEOGRAPHIC SCOPE |
|---|---|---|---|---|---|---|---|---|---|---|
| Petrol Properties GL | Lexington | 107253 | Integro | 11/18/2007 | 11/18/2008 | $2MM aggregate; $2MM products/oper; $1MM/loss; $1MM personal injury; $50K Fire Damage; Legal Excluded Medical Payments | $10,000/occurrence | $27,000 (Minimum and Deposit) | $25,000 | USA |
| Non 40 Act Asset Management - D&O/E&O | AIG, XL, Chubb, HCC, Arch, Travelers, Starr, PIA, ACE USA, Axis USA | AIG: 003019007, XL: ELU101620-07, Chubb: 68005473, HCC: 24MGU07A15762, Arch: IAP0018995-01, Travelers: 0590CM3054, Starr: 349-4864, PIA: U707-60579, ACE USA: DOX | Willis | 11/30/2007 | 11/30/2008 | $100MM | $0 Individual; Corporate Reimbursement $3MM | $2,302,752 | $2,302,752 | Global |
| Private Equity D&O and E&O | Chubb, AIG, XL | Chubb: 70434566, AIG: 003029441, XL: ELU101654-07 | Marsh | 11/30/2007 | 11/30/2008 | $30MM | $0 Individual; Corporate Reimbursement $500,000 | $481,750 | $481,750 | Global |
| Pro Bono Professional Liability | Lloyds of London | 86335 | Complete Equity Markets | 1/10/2008 | 1/10/2009 | $1MM aggregate (sub-limits for certain coverages) | $500 per claim | $1,979 plus taxes ($2,054.20 with taxes) | $1,979 plus taxes ($2,054.20 with taxes) | |
| Aviation Finance Group Contingent Hull & Liability | Lloyds of London | B0823AM0852581 | AON | 1/16/2008 | 1/16/2009 | $500mm plus various sublimits | $10k for All Risk; $1,250 for Baggage/personal effects | $441,216 Deposit | $441,216 Deposit | Worldwide |
| Comprehensive Crime (Fidelity Coverage) including Computer Crime | Lloyds & Various U.S. insurers | B0509QA005308/1 Primary | Marsh | 1/31/2008 | 1/31/2009 | $175MM per loss subject to $175MM aggregate | $10MM per claim | $4,001,734 | $4,001,734 | Global |
| Comprehensive Crime Mortgage Bank Excess In-fill | AIG | Bond: 003002193 Computer: 003008225 | Marsh | 1/31/2008 | 1/31/2009 | $5MM excess of $5MM retention | $5MM/loss | $74,767 | $74,767 | |
| Terrorism Coverage (Nuclear, Biological and Chemical) | Wharf Reinsurance | 2008-NBC-01 | Marsh | 2/11/2008 | 2/11/2009 | $1.425B | $1MM | $2,720,938 | $2,720,938 | USA |

Lehman Brothers Holdings Inc., et al.                              EXHIBIT A

| | CARRIER | POLICY NUMBER | BROKER | EFFECTIVE DATE | EXPIRATION DATE | LIMITS | DEDUCTIBLE | POLICY PREMIUM | ANNUAL PREMIUM | GEOGRAPHIC SCOPE |
|---|---|---|---|---|---|---|---|---|---|---|
| Excess SIPC Surety Bond | Customer Asset Protection Company | 2002-02, 1002-03lbi, 1003-03nb | Marsh | 2/16/2008 | 2/16/2009 | N/A | N/A | $904,243 | | LBI, NB LLC, LBIE |
| All Risk & NBCR Excess (excluding UK) | Wharf Reinsurance | XS-002 | Marsh | 12/31/2007 | 3/15/2009 | $575MM per occ for NBC; $300MM per occ /agg for Global All Risk (excl. UK); $100MM Flood except $25MM for high hazard flood zones, | Excess underlying policies | All Risk= $57,744 NBC=$115,488 | All Risk= $48,000 NBC=$96,000 | Global |
| ALS/BNC/LBB/LBSBF/PML Mortgage Impairment Policy | Lloyd's | B066408164A07     B066408164B07 | Integro | 12/31/2007 | 3/15/2009 | $30MM A1 & A2; $25MM CA Earthquake | $5,000, except $10K for windstorm & flood, $1M for direct loss of damages from balance of perils | $1,198,766 GBP30,075 for PML | $996,480 GBP25,000 for PML | Global |
| Global Property, Business Interruption and Boiler and Machinery | Zurich, Chubb, Lexington, Lloyds, ACE USA, Max Bermuda, AWAC, Arch, Allianz, Montpelier RE, GEP, Axis US, Swiss RE, Lancashire, ACE | Various | | 12/31/2007 | 3/15/2009 | $1.4 B w/various sub limits | $1MM/occurrence all loss except, 5% for CA Quake and Named Windstorm with $1mm minimum, 24 hours waiting period for service interruption | $6,142,640.37 | $5,106,102.40 | Global |

4

Lehman Brothers Holdings Inc., et al.                                    EXHIBIT A

| | CARRIER | POLICY NUMBER | BROKER | EFFECTIVE DATE | EXPIRATION DATE | LIMITS | DEDUCTIBLE | POLICY PREMIUM | ANNUAL PREMIUM | GEOGRAPHIC SCOPE |
|---|---|---|---|---|---|---|---|---|---|---|
| Terrorism Standalone - International (exlcuding US, UK) | Lexington | 9406835 | Marsh | 12/31/2007 | 3/15/2009 | Limits of Liability per location not to exceed the amounts shown in Property and BI columns respectively for each location, for each | $5MM/occurrence as respects to property damage.  3 days as respects BI and Extra Expense | $111,149 | $92,393 | Global (excluding US,UK) |
| TRIPRA | Wharf Reinsurance | 2008-T-02 | Marsh | 12/31/2007 | 3/15/2009 | $2 B | $1MM/occurrence all loss | $1,904,789.00 | $1,583,366.00 | USA |
| UK All Risk Property Policy | Wharf Reinsurance | 2008PRIUK-01 | Marsh | 12/31/2007 | 3/15/2009 | $1.7 B USD with various sublimits | $1MM per occurrence with a 24 hour waiting period with respect to service interruption | $515,786 | $428,750 | UK |
| UK Terrorism -Pool RE Endorsement | Wharf Reinsurance | Attaches to Policy 2008-PRIUK-01 | Marsh | 12/31/2007 | 3/15/2009 | $1.7B with various sublimits | $1MM per occurrence with a 24 hour waiting period with respect to service interruption | $1,043,736 | $867,611 | UK |
| Special Risk | Great American Insurance Co. | SCI273610130-06 | Marsh | 3/30/2006 | 3/30/2009 | $50MM per Insured Event subject to sub-limits | $0 (NIL) | $60,795 | $20,265 | Global |
| Directors and Officers Liability | XL, Chubb, HCC, Axis, Zurich, Lloyds, ACE Bda, Arch, AIG Cat Excess/AWAC, Liberty, AIG, Endurance, RSUI, CNA, AIG, Axis, ACE | ELU104715-08, 7043-0876, 24-MGU-08-A16690, MNN713535/01/2008, DOC7995104-10, B0509QA027108, LEH-11930D, 00DOX0112000403, ELU1047515-08, C002007/006, 078365-018, 005082352, | Marsh | 5/16/2008 | 5/16/2009 | $180MM - A&B $250MM - A | (A) Individual coverage $0;    (B) Company reimbursement $25MM | $11,756,796.00 | $11,756,796.00 | Global |
| Employment Practices Insurance | XL, ACE Bermuda, AWAC, Axis Bermuda, Endurance | BM00023596EP08A, LEHM-11929E, C006345/002, 1131670108QA, P006960002 | Marsh Bermuda | 5/16/2008 | 5/16/2009 | $100MM | $10MM | $1,821,408 | $1,821,408 | Global |
| Fiduciary Liability (Pension Trust) | AIG, St. Paul Travelers, CNA, HCC, Zurich | 507-47-13, EC09001745, 169856703, 14-MGU-08-A16695, FLC5979655-04 | Marsh | 5/16/2008 | 5/16/2009 | $50MM | $250K for; $2.5M for derivative or class representative action; $10M for all loss in connection with any Claim made against any | $593,909 | $593,909 | Global |

Lehman Brothers Holdings Inc., et al.                    EXHIBIT A

| | CARRIER | POLICY NUMBER | BROKER | EFFECTIVE DATE | EXPIRATION DATE | LIMITS | DEDUCTIBLE | POLICY PREMIUM | ANNUAL PREMIUM | GEOGRAPHIC SCOPE |
|---|---|---|---|---|---|---|---|---|---|---|
| Charterers Legal Liability | International Marine Underwriters | N5JH01111 | Integro | 5/31/2008 | 5/31/2009 | $5MM | $10,000 any one loss or occurrence | $5,000 | $5,000 | Global |
| Global Real Estate Group Liability (General Liability, Liquor Liability, Auto Liability, & Garage Liability) | AIG | GL 4571645 LIQ 4572469 CA 1469944 CA 4576013 | Integro | 8/1/2008 | 8/1/2009 | $1mm per occ/$2mm agg per location; $1mm for non-owned & Hired Auto; $1mm for Liquor Liability | N/A | $851,213 | $851,213 | per scheduled locations |
| Global Real Estate Group Property | Lexington, ACE, CNA, Glacier, Inter Hannover, Liberty Mutual, Swiss Re, Zurich | Various | Integro | 8/1/2008 | 8/1/2009 | $250mm with various sublimits | $25k; $100k for Garden Apts; $250k or 5% for Flood, Named Storm, Flood as a result of Named Storm & CA Earthquake | $3,301,467 plus applicable taxes | $3,301,467 plus applicable taxes | per scheduled locations |
| Global Real Estate Group Umbrella/Excess Liability | AIG, Lexington, ACE Westchester, AIG CAT Excess, Chubb, Fireman's Fund | 6081831, 7769720, G23810815002,9497745, 93635835, SHX 00079403960 | Integro | 8/1/2008 | 8/1/2009 | $200mm per occ / agg Per location | $25,000 SIR | $1,157,460 plus applicable taxes | $1,157,460 plus applicable taxes | per scheduled locations |
| Cranford Storage Tank Liability | ACE | G21861492002 | Marsh | 8/15/2008 | 8/15/2009 | $1mm per pollution incident; $1mm aggregate legal defense expense; $1mm aggregate limit | $5,000 | $473 | $473 | USA |
| International Casualty | Ace | PHFD37282236 | Integro | 9/30/2007 | 9/30/2009 | $1MM CGL; $2MM Auto; $1MM Employers Liability | $1,000 for EBL; N/A for all others | $261,895 | $130,948 | Global ex US |
| Excess Securities (J) | Lloyd's | 509/ZF003708 | Marsh | 1/31/2008 | 1/31/2011 | $325MM each and every loss | Excess of underlying $175M Bond Aggregate | $532,500 | $177,500 | Global |
| Mail (Lehman Brothers) | Chubb | | Marsh | Continuous (7/30 anniversary date) | Continuous (7/30 anniversary date) | $50MM subject to sub-limits | $0 (NIL) | $35,000 | $35,000 | Global |