Jeff J. Friedman
Merritt A. Pardini
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

*Attorneys for NYFIX, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
                                                                   :
In re:                                                             :   Chapter 11
                                                                   :
LEHMAN BROTHERS HOLDINGS, INC., et al.,                            :   Case No. 08-13555(JMP)
                                                                   :
                    Debtors.                                       :
                                                                   :
------------------------------------------------------------------ x

## OBJECTION OF NYFIX, INC. TO ASSERTED CURE AMOUNTS AND RESERVATION OF RIGHTS

NYFIX, Inc. and certain of its affiliates (collectively, "NYFIX"), by and through the undersigned counsel, files this objection in connection with the assumption and assignment of executory contracts by debtor Lehman Brothers Holdings, Inc. ("LBHI") to Barclays Capital, Inc. and in support thereof, respectfully represents as follows:

### Objection in Connection with Identified Closing Date Contracts

1.  NYFIX has reviewed the three lists of Closing Date Contracts[1] located at http://chapter11.epiqsystems.com/lehman and has identified three contracts thereon to which it is

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in this Court's Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases (the "Sale Order").

a party. The below table summarizes NYFIX's objections in connection with those three contracts. A copy of the first page of each of these contracts (redacted as necessary) and, where available, supporting invoices and other documentation, are attached as Exhibit "A" hereto.

| List | Contract / Asserted Cure Amount | Objection |
|---|---|---|
| Non-IT Closing Date Contracts (excluding Corporate Real Estate) | Contract: NYFIX Inc. (NYFIX Javelin)<br><br>Asserted Cure: $493,816.17<br><br>NYFIX believes that this entry refers to a **Subscription Agreement** between NYFIX, and Lehman Brothers Inc. dated June 5, 2000. | The correct cure amount, as of October 1, 2008, is $975,399.46. |
| Non-IT Closing Date Contracts (excluding Corporate Real Estate) | Contract: NYFIX Millennium<br><br>Asserted Cure: $49,499.50<br><br>NYFIX believes that this entry refers to a **Broker-Dealer Agreement**, dated October 30, 2002, between NYFIX Millennium LLC and Lehman Brothers Inc. | The correct cure amount, as of October 1, 2008 is $62,184.00 |
| IT Closing Date Contracts (Excluding Corporate Real Estate) | Contract: FIX CITY LIMITED Master Agreement<br><br>Asserted Cure: None listed<br><br>NYFIX (as parent company of FIX City Limited) believes that this entry refers to a **Sell-Side License Agreement** between Fix City Limited (subsidiary of NYFIX) and Lehman Brothers International (Europe) dated 14 October 2004. | The correct cure amount, as of October 1, 2008, is $42,278.61<br><br>LBHI is not a party to this contract. Accordingly, NYFIX objects to any purported attempt by LBHI to assume and assign this agreement. |

## Objection in Connection With Other Contracts

2. In addition to the above three Closing Date Contracts, NYFIX's affiliate (NYFIX USA LLC, successor by merger to Jevelin Technologies, Inc.) and Lehman Brothers Inc. are parties to a **License Agreement**, effective November 20, 2001, which provides for the licensing of, and continued maintenance of, software believed necessary to the operations of the businesses being sold pursuant to the Sale Order. A copy of the first page of this contract (redacted as necessary) is attached as Exhibit "B" hereto. While no amounts are currently due under that License Agreement, NYFIX reserves its right to demand payment of any amounts that may become due in the future under that agreement should it ultimately become a Purchased Contract.

## Reservation of Rights

3. NYFIX has attempted, to the best of its understanding, to correlate the contracts identified by the Debtor as Closing Date Contracts with its own books and records. The above-listed cure amounts reflect that understanding. To the extent NYFIX has misidentified any particular contract, it reserves its right to amend this objection as necessary. Additionally, NYFIX reserves its rights to collect payments due under the above contracts, after the dates listed above, as either Cure Amounts or as administrative expenses.

Dated: New York, New York
      October 3, 2008

KATTEN MUCHIN ROSENMAN LLP
*Attorneys for NYFIX, Inc.*

By: _____
    Jeff J. Friedman
    Merritt A. Pardini
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-880

## CERTIFICATE OF SERVICE

I, Merritt A. Pardini, an attorney duly admitted to practice before this Court and the courts of the State of New York, hereby certify that on the 3rd day of October, 2008 I caused to be served, by hand delivery, a true and correct copy of the prefixed OBJECTION OF NYFIX, INC. TO ASSERTED CURE AMOUNTS AND RESERVATION OF RIGHTS upon:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119
Attn: Lori R. Fife, Esq. and Shai Y. Waisman, Esq.

Hughes Hubbard & Reed LLP
One Battery Park Plaza New
York, NY 10004
Attn: Jeffery S. Margolin, Esq.

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York NY 10006
Attn: Lindsee P. Granfield, Esq. and Lisa M. Schweitzer, Esq.

Dated: New York, New York
October 3, 2008

_____
Merritt A. Pardini

# EXHIBIT A

## SUBSCRIPTION AGREEMENT
## NYFIX, INC. EQUIPMENT and SERVICE

NYFIX, Inc.                                                                  DATE: June 5, 2000

(Here in after called " NYFIX")

Gentlemen:

Please furnish to Lehman Brothers Inc., hereinafter called "Subscriber", 3 World Financial Center, New York, N.Y. 10285 Equipment and Services listed in any subsequent Schedule(s) and any attachments, hereof (hereinafter referred to as: "Equipment and Services"). Any subsequent attached Schedules must be duly signed by both parties and refer to this Agreement as follows: "This Schedule is incorporated as part of an Agreement signed on June 5, 2000, between Lehman Brothers Inc. and NYFIX, Inc., and is subject to terms thereof except for terms otherwise stated in such Schedule". In the event of conflict between the Agreement and the subsequent Schedule, the Schedule prevails provided; both parties as stated above have duly signed the Schedule.

NYFIX will deliver and, if applicable, install the Equipment and Services at the locations specified by Lehman on the date(s) specified in each Schedule, hereafter referred to as the installation date. Subscriber will pay NYFIX any Start-Up or Installation fees listed in this Agreement and any duly executed subsequent Schedule(s) within thirty- (30) days of Subscriber's receipt of NYFIX's invoice.  Upon the expiration or termination of this Subscription Agreement, other than termination by Subscriber arising from default hereunder by NYFIX, Subscriber will be responsible for the cost of shipping and handling the Equipment and Services from the place of installation to the NYFIX plant.

Subscriber will provide, at its own expense, the requisite electric power and outlets for operation, installation and connection of the Equipment and Services and all expenses required at any time for the Equipment and Services to comply with the Occupational Safety and Health Act of 1970 or similar laws.  NYFIX shall not be responsible for faulty operation of the Equipment and Services caused by or resulting from the use therewith of paper and/or accessories, which do not meet specifications, supplied by NYFIX.

NYFIX agrees to make available, on a subscription basis, the Equipment and Services to Subscriber and Subscriber agrees to subscribe to the Equipment and Services from NYFIX upon the terms and conditions set forth herein and in Schedules attached hereto and any subsequent Schedules incorporated herein.

1. Subject to termination as provided for herein, the initial subscription term of agreement is for a period of twenty-four (24) months per Schedule, which term shall commence on the date of the production ready installation of the Equipment and Services listed in the Schedule(s). ~~Either party has the option after twelve months to cancel this agreement with Ninety- (90) days written notice to the other party.~~

2. The aggregate monthly subscription fees for the Equipment and Services subscribed to hereunder is the total of the monthly charges for the items listed in any duly executed Schedule. NYFIX may invoice Subscriber for such monthly subscription fees, quarterly in advance, during the term of the Agreement. In addition, Subscriber shall pay all sales, use, property and similar taxes whether chargeable to NYFIX or otherwise applicable to any of the said items of Equipment or Services performed by NYFIX; provided however that in no event should Subscriber be responsible for any tax based on NYFIX's net income or employees or any franchise tax.

3.      NYFIX warrants and represents that the prices with respect to the Equipment and Services provided pursuant to this Agreement or any Schedule are comparable to or better than the prices offered prior to and as of the effective date of this Agreement or the applicable Schedule by



# NYFIX

1372 - I01010080215 3 - Lehman Brothers, Inc. - 10/01/2008

**Bill To:**
Image Processing Systems (1372)
Equities Brokerage
PO Box 2397
SECAUCUS, NJ, 07096
United States

Att : C/O Lehman Brothers -Cristian Grullon

**Ship To:**
Lehman Brothers, Inc.
745 Seventh. Avenue
2nd Floor
NEW YORK, NY, 10019
United States

Att : Greg Krikorian CAO      PO 15867

**Payable To:**
NYFIX, INC.
100 Wall Street, 26th Floor
New York, NY 10005
USA
Tel: 212-809-3542

NYFIX, INC.
100 Wall Street, 26th Floor
New York, NY 10005,
USA
Tel: 212-809-3542

Image Processing Systems
Ref # I01010080215 3
02153         NY-TRADING DESK
Date Of Invoice    01-Oct-08

| **Invoice #:** | I01010080215 3 |
|---|---|
| Billing Date | 01-Oct-08 |
| Company | Image Processing Systems |
| Location | NY-TRADING DESK    2153 |
| Bill Type | October Billing |

Wire Instructions:
Bank of New York
ABA Number : 021000018
Account Number : 8900652950
Account Name : NYFIX Master Account
SWIFT : IRVTUS3N

- - - - - - Please separate here & return with payment - - - - - -

### Charges

| | Invoice | Credit Memo | Discount | Net |
|---|---|---|---|---|
| Total One Time Charges: | $5,000.00 | | $0.00 | $5,000.00 |
| Total ProRata New Services: | $4,717.50 | | ($750.87) | $3,966.63 |
| Total Disconnect Charges: | $125.00 | | | $125.00 |
| Total Recurring Charges: | $534,825.00 | | ($63,375.00) | $471,450.00 |
| Total Maintenance Charges: | $37,102.50 | | ($32,332.50) | $4,770.00 |
| Sales Tax @ 8.3750%: | | | | $40,644.85 |
| **Total Charges - I01010080215 3** | | | | **$525,956.48** |

### Credits

| | | | | |
|---|---|---|---|---|
| Total Cancellation Credits : | | ($45.83) | $45.84 | $0.01 |
| Sales Tax @ 8.3750%: | | | $0.00 | $0.00 |
| **Total Credits - C01010080215 3** | | | | **$0.01** |

**Statement Net Total    $525,956.49**

System: 9/16/2008    1:35:39 PM
User Date: 9/16/2008

# DETAIL HISTORICAL AGED TRIAL BALANCE
## NYFIX, USA
### Receivables Management

Page: 1
User ID: THOWARD

**Ranges:**
Customer ID: 1372 - 1372    First - Last
Customer Class: CUST - CUST    First - Last
Salesperson ID: First - Last
Sales Territory: First - Last

Account Type: Open Item
Aging Date: 9/16/2008
Print Currency In: Reporting (Z=US$ 1.0")
Exclude: Zero Balance, No Activity, Fully Paid Documents, Unposted Applied Credit Documents, Multicurrency Info

\* - Indicates an unposted credit document that has been applied.

**Customer:** 1372    **Name:** Lehman Brothers, Inc.    **Account Type:** Open Item

Account Manager: Neil Neuwald    Salesperson: Neil Neuwald    Credit: Unlimited    State:
Contact: Greg Krikorian CAO    Territory: John Mendez    Telephone:
Phone: (000) 000-0000 Ext. 0000    Terms: Net 30    ZIP Code:
Document: PO 15867
Customer: by Customer ID
Document: by Document Date
Document Date: First - 9/16/2008

| Document Number | Type | Date | Amount | Writeoff | 0 - 30 Days | 31 - 60 Days | 61 - 90 Days | 91 - 120 Days | 121 - 150 Days | 151 - 180 Days | 181+ Days |
|---|---|---|---|---|---|---|---|---|---|---|---|
| INV008070215 | SLS | 8/1/2007 | $18,243.49 | | | | | | | | $18,243.49 |
| CRM120702153 | | 12/1/2007 | ($287,636.35) | | | | | | | | ($1,507.31) |
| CRM003070215 | | 3/1/2007 | | | | | | | | | ($0.01) |
| CRM004070215 | | 4/1/2007 | | | | | | | | | ($881.45) |
| CRM006070215 | | 6/1/2007 | | | | | | | | | ($758.63) |
| CRM009070215 | | 9/1/2007 | | | | | | | | | ($493.11) |
| CRM010702153 | | 10/1/2007 | | | | | | | | | ($240.23) |
| CRM011070215 | | 11/1/2007 | | | | | | | | | ($7,371.29) |
| PYMNT010095 | | 12/23/2005 | | | | | | | | | ($1,975.55) |
| C010020802153 | CR | 2/1/2008 | ($2,174.72) | | | | | | | | ($2,174.72) |
| C010040802153 | CR | 4/1/2008 | ($644.83) | | | | | | ($644.83) | | |
| C010070802153 | CR | 7/1/2008 | ($708.05) | | | | ($708.05) | | | | |
| I010070802153 | SLS | 7/1/2008 | $478,986.79 | | | | $478,986.79 | | | | |
| C010080802153 | SLS | 8/1/2008 | $1,137.94 | | | $1,137.94 | | | | | |
| CR011080802153 | CR | 8/1/2008 | ($59.03) | | | ($59.03) | | | | | |
| CR012080802153 | CR | 8/1/2008 | ($1,196.97) | | | ($1,196.97) | | | | | |
| I010090802153 | SLS | 9/1/2008 | $15,537.43 | | $15,537.43 | | | | | | |

| | Totals: | $15,537.43 | ($118.06) | $478,278.74 | $0.00 | $0.00 | ($644.83) | ($43,610.31) | | | |

| | | | | | | | | | | | **Balance** |
| | | | | | | | | | | | ($46,451.50) |
| | | | | | | | | | | | $449,442.97 |

| | | | **0 - 30 Days** | **31 - 60 Days** | **61 - 90 Days** | **91 - 120 Days** | **121 - 150 Days** | **151 - 180 Days** | **181+ Days** | **Balance** |
|---|---|---|---|---|---|---|---|---|---|---|
| **Grand Totals:** | Customer(s) 1 | | $15,537.43 | ($118.06) | $478,278.74 | $0.00 | $0.00 | ($644.83) | ($43,610.31) | $449,442.97 |



# NYFIX Millennium Broker-Dealer Agreement

This AGREEMENT ("Agreement") is executed and entered into as of this 30th day of October, 2002 (the "Effective Date") by and between NYFIX Millennium, L.L.C. ("Millennium"), a Delaware limited liability company, with its executive office located at 100 Wall Street, New York, New York 10005, and

Broker-Dealer: Lehman Brothers Inc. (together with its affiliates) ("Broker-Dealer")

Address: 745 7th Avenue

City, State, Zip: New York, New York 10019

Dated as of: October 30, 2002

1. **Defined Terms.**

    1.1 **Millennium ATS System.** All the services, market data, computer software, hardware, telecommunications and other networking or computer components which comprise the order routing, execution, and reporting systems of Millennium and the Millennium Alternative Trading System and as defined in Section 3 herein, and all updates, versions, releases, enhancements and modifications thereto that are provided by Millennium.

    1.2 **Clearing Firm.** Banc of America Securities LLC provides all clearing functions for NYFIX-Millennium.

    1.3 **Conditional Order.** An order which resides in the Millennium ATS System and has one or more execution constraints that restrict matching price, quantity, and/or eligibility.

    1.4 **Directed Order.** An order for which the execution destination is directed by the Broker-Dealer.

    1.5 **Pass Through Order.** An order which is sent to the Millennium ATS System seeking a match for execution. If no match is found the order is subsequently routed to another market center for execution.

    1.6 **Market Data.** All market information provided or generated through the Millennium ATS System, including, but not limited to quotation, order, and execution data.

Broker-Dealer's Initials: _SU_

- 1 -

***INVOICE***


MILLENNIUM

Image Processing Systems C/O Lehman Brothers  
Equities Brokerage-Cristian  
P.O. Box 2397  
Secaucus    NJ    07094

PERIOD  
09/01/2008 - 09/30/2008  
Invoice #:  
INV4009089999

| DESCRIPTION | SHARES EXEC'D | COMMS | RATE | Exec'd Revenue |
|---|---|---|---|---|
| Mill Executions | 19,480,200 | | .004 | $77,921.00 |
| X-Credit Agreement - Sept 200 | | | | ($29,921.00) |
| | | | Total Due | $48,000.00 |

For Billing Questions Call

**Payable By Check To:**  
NYFIX Millennium LLC  
Attn: Accounts Receivable  
100 Wall Street, 26th Floor  
New York, NY 10005-3703

**For Domestic Wire Payments, Please send to:**  
Bank Name: The Bank of New York  
ABA Number: 021000018  
Account Name: NYFIX Millennium LLC  
Account Number: 890-0529-261

**Please include invoice number on your remittance**  
For Transaction Detail send your request to brian.carr@nyfix.com

| System: | 10/2/2008 | | | | | DETAIL HISTORICAL AGED TRIAL BALANCE | | | | | | Page: | 1 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| User Date: | 10/2/2008 11:39:57 AM | | | | | NYFIX Millennium, LLC. | | | | | | User ID: | JMENDEZ |
| | | | | | | Receivables Management | | | | | | | |

**Ranges:**
| Customer ID: | LEHMAN - LEHMAN | | | | | | | | | | | | |
| Customer Class: | First - Last | | | | | | State: | First - Last | | | | | |
| Salesperson ID: | First - Last | | | | | | Telephone: | First - Last | | | | | |
| Sales Territory: | First - Last | | | | | | ZIP Code: | First - Last | | | | | |

Account Type: All
Aging Date: 9/30/2008
Print Currency In: Functional (Z-US$)
Exclude: Zero Balance, No Activity, Fully Paid Documents, Unposted Applied Credit Documents, Multicurrency Info

\* - Indicates an unposted credit document that has been applied.

| Customer: | LEHMAN | | Name: | Lehman Brothers (Mill) | | | Account Type: | Open Item | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| User-Defined 1: | | | Salesperson: | | | | | | | | | |
| Contact: | [redacted] | | Territory: | | | Credit: | Unlimited | | | | | |
| Phone: | | | Terms: | Net 30 | | | | | | | | |

| | | | | Customer: | by Customer ID | | | | | | | |
| | | | | Document: | by Document Number | | | | | | | |
| | | | | Posting Date: | 9/30/2008 | | | | | | | |

| Document Number | Type | Date | Amount | Writeoff | 0 - 30 Days | 31 - 60 Days | 61 - 90 Days | 91 - 120 Days | 121 - 150 Days | 151 - 180 Days | 181+ Days | Balance |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| INV400080074 | SLS | 8/31/2008 | $128,264.50 | | $128,264.50 | | | | | | | |
| CREDT00000000470 | | 8/31/2008 | | | ($78,765.00) | | | | | | | |
| PYMNT00000005742 | | 7/3/2008 | | | ($35,315.50) | | | | | | | |
| | | Totals: | | | $14,184.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $14,184.00 |

| | Customer(s) | 0 - 30 Days | 31 - 60 Days | 61 - 90 Days | 91 - 120 Days | 121 - 150 Days | 151 - 180 Days | 181+ Days | Balance |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Grand Totals: | 1 | $14,184.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $14,184.00 |

08-13555-mg   Doc 572   Filed 10/03/08   Entered 10/03/08 10:50:27   Main Document
Pg 12 of 14

# ioinet
Indications of Interest

Sell-Side License Agreement

Agreement Reference __IOINET/LEHMAN__

This Agreement is made between FIX CITY Limited (FIX CITY) with registered address at Financial House, 14 Barclay Road, Croydon, Surrey CR0 1JN and Lehman Brothers International (Europe) of 25 Bank St, London E14 5LE (THE CLIENT) on 14th October 2004 (Agreement Date)

WHEREAS:

FIX CITY is an entity engaged in the business of providing computer and technology services to the financial services industry. These services include an electronic interface to enable the transmission of indications of interest (IOIs) and other financial information such as trade adverts between participants in securities markets, and

The Client is an entity authorised to undertake securities trading who wishes to use FIX CITY in the delivery of information to its own clients or its own nominated third parties.

NOW IT IS AGREED as follows:

1) DEFINITIONS

2) The following terms will have the following meanings:

"Agreement" means this agreement together with the schedule and addendum as agreed in writing by both parties from time to time;

"Associated Company" means subsidiary or holding company (as defined in Section 736 of the Companies Act 1985 as amended) of the Client or company with a holding company in common with the Client (and the plural shall be construed accordingly);

"Data" means electronic indications of interest ("IOIs") and FIX format messages and other reference data sent by the Client to FIX CITY to be made available on behalf of the Client for use by others in accordance with this Agreement.

"Electronic Interface" means the electronic interface to be supplied by FIX CITY to enable the transmission of the Data between the Client and the intended recipients of such Data;

"Commencement Date" means the date at which both parties have signed this Agreement;

"Intellectual Property Rights" means;
    a. patents, trade marks, service marks, registered designs, applications for any of those rights, trade and business names, unregistered trade marks and service marks, copyrights, know-how, rights in designs and inventions;
    b. the database right for the maker of a database to prevent extraction or re-utilisation or both of the whole or a substantial part of the contents of that database, as described in the Copyright and Rights in Databases Regulations 1997 (SI 1997/2032); and
    c. rights of the same or similar effect or nature as or to those in paragraphs (a) and (b); in each case in any jurisdiction.

"Services" means the services envisaged to be provided by FIX CITY to the Client under this agreement as more specifically defined in the Schedule.

3) References in this Agreement to any statute or regulation are references to that statute or regulation as amended or re-enacted from time to time.

4) The headings in this Agreement are for ease of reference only and do not affect its interpretation.

THE SERVICE

5) FIX CITY hereby undertakes to provide the Client with the Electronic Interface and the Services, with effect from the Commencement Date and after necessary setup is completed.

6) FIX CITY grants the Client, together with its Associated Companies, all necessary rights by way of licence to use the Electronic Interface in accordance with this Agreement.

7) Unless otherwise agreed in writing FIX CITY will retain all rights in the nature of intellectual property rights and copyright that it is entitled to under law (IPR Items). For the avoidance of doubt this shall include all software programs and specifications created by FIX CITY or its consultants.

8) FIX CITY agrees to maintain a history of Data transmitted by the Client through the Electronic Interface, for a reasonable period of time; and to make such records available for the Client's inspection, on reasonable notice, for the purposes of verifying the time and content of any message(s). Without prejudice to the aforegoing, in the event FIX CITY determines to destroy or otherwise discontinue its maintenance of such a history, FIX CITY shall provide the Client with prior notice of such a determination so that the Client may arrange for the continuance of such maintenance thereafter.

9) Both parties agree that the Data is difficult to value. FIX CITY shall have no liability for Data that is deleted or lost as a result of circumstances beyond its reasonable control or the reasonable control of those third parties under the direction, control or supervision of FIX CITY.

10) Subject to the terms of Clause 8 above, FIX CITY will delete or remove Data in accordance with regular housekeeping under rules published from time to time. No Data will be returnable to the Client unless the Client elects to maintain the same in accordance with Clause 8.

THE TERM

11) This Agreement will begin on the Commencement Date and will continue until terminated on the expiry of not less than three month's written notice given by either party. This Agreement may also be terminated in accordance with Clause 35.

CHARGES AND PAYMENT

12) The Client shall pay FIX CITY a charge, as set out in the Schedule hereto. Unless otherwise stated in the Schedule, the charges are inclusive of all out-of-pocket expenses, which may be incurred by FIX CITY in connection with the provision of the Service. The Schedule may only be amended with the written agreement of both parties.

13) All charges will be invoiced by FIX CITY to the Client and shall be payable within thirty (30) days following delivery of a valid VAT invoice by FIX CITY to the Client. In addition the Client will pay value-added tax and other taxes that are required to be paid by the Client as required under law. Invoices will be marked for the attention of Accounts Payable.

14) If payment is not made by the Client within (60) days following delivery of a valid and undisputed VAT invoice from FIX CITY, FIX CITY shall for the purposes described herein under Termination be entitled to suspend the

---
Sell-Side License Agreement      © FIX CITY Ltd 2003-2005      Page 1 of 7

# EXHIBIT B

# LICENSE AGREEMENT

This Agreement is made by and between Javelin Technologies, Inc. ("Licensor") and the licensee listed below (together with its affiliates, "Licensee"). All terms set forth in this Agreement apply to the attached schedule(s) and any appendices attached hereto, which contain additional terms that are specific to the transaction contemplated and the subject matter herein. The terms of this Agreement, the attached schedule(s), and any appendices thereto are referred to collectively as the "Agreement", which shall be effective when executed by Licensor ("**Effective Date**").

| Licensee: | Lehman Brothers Inc. | Contact: | | |
|---|---|---|---|---|
| Address: | 101 Hudson Street, 21st Floor | | | |
| City: | Jersey City | State/Country: NJ | | Zip: 07302 |
| Telephone Number: (646) 836-3201 | | Fax Number: (646) 836-3464 | | |
| Email: | | Effective Date: November 20, 2001 | | |

## 1. DEFINITIONS.

1.1. "Authorized Business Group" shall mean the only entity, division or business group identified in the attached Schedule A.

1.2. "Authorized Site" shall mean that single server or server cluster running from a single location within the physical site address(es) authorized pursuant to this Agreement. The location and address of the Authorized Site(s) is identified in Schedule A.

1.3. "Backup Instance" shall mean each single idle and non-operative installation of the Licensed Product (defined below) which may be used solely for non-commercial backup purposes by the Authorized Business Group at the Authorized Site.

1.4. "Development Instance" shall mean each single operable installation of the Licensed Product solely for non-commercial internal development by the Authorized Business Group at the Authorized Site.

1.5. "Licensed Product" shall have the meaning set forth in the attached Schedule A.

1.6. "Production Instance" shall mean each single operable installation of the Licensed Product for commercial "Use" (defined below) by the Authorized Business Group at the Authorized Site. It is understood and agreed that no Production Instance may be used for development purposes.

1.7. "Service Bureau" shall mean a for-profit service that provides network connectivity to third parties via any protocol (e.g. Financial Information Exchange ("FIX"), SWIFT, etc.).

1.8. "Source Code" shall mean the human readable code, which when compiled produces the machine executable code (object code) of the Licensed Product. Source Code shall not include any third party software development tools.

1.9. "Support" shall have that meaning set forth in Schedule B.

1.10. "Use" shall mean the copying of any part of the instructions or data of the Licensed Product into a central processing unit ("CPU") solely for use by an Authorized Business Group for its own regular internal business purposes at the Authorized Site, and otherwise consistent with the terms and conditions of this Agreement.

## 2. LICENSE SCOPE.

2.1. Grant. Subject to Licensee's timely payment of fees and compliance with all the terms and conditions in this Agreement, Licensor grants to Licensee a non-exclusive, non-assignable (except as provided herein), non-transferable (except as provided herein) and revocable (as provided herein) license during the Term of this Agreement for a certain number (in Schedule A) of Backup Instances, Development Instances, and Production Instances of the Licensed Product at a certain throughput and number of connections as specified in Schedule A. For the avoidance of doubt, an additional license is required for any Use of the Licensed Product outside of the Authorized Site, by any entity other than the Authorized Business Group, for any Use in excess of the throughput or number of connections specified in Schedule A, or otherwise than as explicitly provided for in this Agreement.

Notwithstanding the confidentiality, non-disclosure and restriction of usage provisions contained in this Agreement, Licensee may provide access to the Licensed Product to its authorized consultants, agents, auditors, counsel and other representatives for the purpose of providing assistance to Licensee in the ordinary course of Licensee's operation of such Licensed Product, provided that any such third party shall be bound by nondisclosure obligations consistent with the terms of this Agreement.

2.2. Restrictions. Licensee shall not (a) reverse compile, reverse assemble or create derivative works of the Licensed Product or any portion thereof; (b) export the Licensed Product in violation of any law or regulation, including the regulations of the United States Department of Commerce; (c) use the Licensed Product to offer, incorporate it as part of, design, architect, compile, produce, perform or development test a Licensee or Licensee affiliate created communications, server, software application or service or otherwise in any manner which constitutes a violation of Licensor's confidential information or intellectual property rights; (d) use the Licensed Product in connection with a Service Bureau; or (e) except as expressly set forth herein, copy (except that Licensee may make a reasonable number of copies of the Licensed Product solely for archival, training and disaster recovery purposes), distribute, disclose, market, rent, sublicense, or transfer (except as provided herein) the Licensed Product or any portion thereof to any third party. This License does not include any access to Source Code, except as set forth in Section 8 (*Source Code Escrow*). Any violation of the terms of this Section 2 shall be automatically deemed to be a material breach of the Agreement.

## 3. TERM AND TERMINATION.

3.1. Term. This Agreement shall remain in effect until terminated; provided that the term of this Agreement with respect to Support and Maintenance shall commence on the Effective Date and shall continue for twelve (12) months (the "Initial Term"). Not less than ninety (90) days prior to the expiration of the then current