**bigdough.com.inc ("Bigdough")**

User Access & License Agreement – Amendment

**CON000000029053**

| "LICENSOR": | "LICENSEE": |
|---|---|
| **bigdough.com.inc.**<br>4833 Rugby Avenue, Suite 600<br>Bethesda, Maryland 20814<br>**Please fax signed agreement to:**<br>**1-603-720-6054**<br>**Attention: Karen West** | Company Name: Lehman Brothers Inc.<br>Contact Name: Camille Hyatt<br>Contact Title: Market Data<br>Contact Email: Camille.Hyatt@Lehman.com<br>Contact Telephone: 646.333.9009<br>Contact Facsimile: 212-526-5971<br>Company Address: 1271 Avenue of Americas New York, NY 10019<br>Company Website: www.lehman.com |

The User Access & License Agreement signed on 2/05/02, as amended on 2/06/03, 2/04/04, 2/18/05, and 3/28/07 is hereby amended only to the following extent:

1. The term of the agreement is renewed, and the pricing and Users for the renewal term are established, as follows:

| | |
|---|---|
| **Contract Start & Expiration Dates** | Contract Begins: February 5th, 2008<br>Contracts Ends: February 4th, 2009 - 1 year |
| **Permitted Users**<br><br>**Up To 130 (One Hundred Thirty) ONLY** | Please list by individual name, department and e-mail address<br><br>Note: Permitted Users must be employees of Licensee working in an "authorized department" of Licensee. An "authorized department" of Licensee shall be any department other than investment banking, corporate finance, library, Mergers & Acquisitions, stock loan and prime brokerage functions, and money management.<br><br>**Library License: In addition to the rights granted in the Agreement, Authorized Users that are part of the Business Information Services Unit ("BIS Unit") of Subscriber may, from time to time, in the ordinary course of business, provide the data from the Service for internal research purposes only to the Investment Banking Department of Subscriber for which the BIS Unit services; provided that Subscriber has in effect a current subscription agreement for Lionshares data with Factset Research Systems that permits Subscriber and its Investment Banking Department to use such data.** |
| **Payment Terms:**<br><br>**Please European Ownership Data and/or Asian Pacific Data and/or Profile Builder** | This license agreement includes North American Ownership and Contact Data and European Contact Data.<br><br>$131,250 (U.S.) to be invoiced on contract anniversary date.<br><br>____Include European Ownership Data at $17,500 (U.S.).<br><br>____Include Asian Pacific Contact and Ownership Data at $40,000 (U.S.).<br><br>____Include Profile Builder at $50,000 (U.S.) for non-deal profiles only. |
| **Additional Provisions** | This license covers North American based users only. Additional North American based users can be added for the remaining term of this agreement for $750(U.S.) annually pro-rata. An additional license is necessary for European and/or Asian based users.<br><br>For purposes of this Agreement, "Insubstantial Amounts of Contact Data" means an amount of the Database Contacts data that (A) has no independent commercial value, (B) could not be used by Licensee as a substitute for the Service or a discrete or substantial part of it, (C) is not marketed or re-sold by Licensee, and (D) is not regularly or systematically retrieved from the |

| | |
|---|---|
| | Database by Licensee; and "Licensee's Reports" shall include the reports, documents, materials and/or other communications created by Licensee in the ordinary course of its business that may be distributed to Licensee's employees and certain third parties and that contain Insubstantial Amounts of Contact Data information embedded therein and combined with other information in such a manner that neither Licensor, nor the Database are recognizable as the source of such embedded Database Contact Data information."<br><br>Section 2(b) of the agreement is hereby amended in its entirety as follows: "(b) Licensee agrees to abide by the following restrictions on the use of the Database: (i) Licensee may not create a "local" copy of any portion of the Database on any computer, system, form of media or otherwise (other than Insubstantial Amounts of Contact Data included in Licensee's Reports; (ii) Licensee may not permit any third party or any personnel of Licensee other than Permitted Users to use Licensee's password or otherwise have access to the Database; (iii) Licensee may not disclose any information from the Database to any third party at any time, nor may Licensee redistribute any information obtained from the Database (other than Insubstantial Amounts of Contact Data included in Licensee's Reports); (iv) unless otherwise specifically set forth in Exhibit A, Licensee may not use information from the Database to create investor profiles for external distribution or otherwise; (v) Licensee may not use information from the database to update its own internal Database except Licensee may use "Insubstantial Amounts of Contact Data" to update its own internal database; and (vi) after termination or expiration of this license, Licensee may not use any information obtained from the Database for any purpose, including, but not limited to, sending any fax, e-mail or mailing to any Database Contacts.<br><br>These terms expire on May 14, 2008, unless accepted by Licensee by this date.<br><br>Permitted Users may not share their license and password with others. |

ACCEPTED AND AGREED:

bigdough.com.inc

By: [signature]
Name: Joseph Brzopka
Title: Controller
Date: May 14, 2008

Company Name: Lehman Brothers Inc.

By: [signature]
Name: Robert L. Davie
Title: VP – GSDM (Market Data)
Date: 5/14/08

RENEWCAPMKTS0108

# bigdough.com.inc ("Bigdough")

## User Access & License Agreement – Amendment

| "LICENSOR": | "LICENSEE": |
|---|---|
| **bigdough.com.inc.**<br>4833 Rugby Avenue, Suite 600<br>Bethesda, Maryland 20814<br><br>**Please fax signed agreement to:**<br><br>**1-603-720-6054**<br><br>**Attention: Peter Maglione** | Company Name: Lehman Brothers, Inc.<br>Contact Name: Mary-Elizabeth MacNaughton<br>Contact Title: VP - Business Info Services<br>Contact Email: mmacnaug@lehman.com<br>Contact Telephone: 212-320-6263<br>Contact Facsimile: 212-526-5971<br>Company Address: 745 Seventh Ave.<br>New York, NY 10019<br><br>Company Website: www.lehman.com |

The User Access & License Agreement signed on 02/05/02, as amended on 02/06/03, as amended on 02/04/04, as amended on 02/18/2005 is hereby further amended only to the following extent:

1. The term of the agreement is renewed, and the pricing and Users for the renewal term are established, as follows:

| | |
|---|---|
| **Contract Start & Expiration Dates** | Contract Begins: February 5th, 2007<br>Contracts Ends: February 4th, 2008 |
| **Permitted Users**<br>**Up To 130 ONLY** | Please list by individual name and e-mail address<br>*Existing non-US users will be permitted use under this license without extra license fees and charges (PM)* |
| **Payment Terms** | This license agreement includes North American Contact and Ownership Data and European Contact Data..<br><br>$125,000 (U.S.) to be invoiced upon receipt of signed agreement. Licensee receives a substantial discount from the standard pricing for 60 users and agrees to keep pricing absolutely confidential. |
| **Please Select European Site License and/or European Ownership Data and/or Asian Pacific Data and/or BigdoughMail** | ____Include European Site License at $6,250 (U.S.) annually.<br><br>____Include European Ownership Data at $5,000 (U.S.) annually.<br><br>____Include Asian Pacific Contact and Ownership Data at $10,000 (U.S.) annually.<br><br>____Include BigdoughMail at $5,000 (U.S.) annually. |
| **Additional Provisions** | Additional users can be added for the remaining term of this agreement for $750 (U.S.) annually pro-rata.<br><br>Third party redistribution of data is strictly prohibited. Use of data to create investor profiles for external distribution or in a manner other than in accordance with the use restrictions herein is strictly prohibited.<br><br>These terms expire on February 27th, 2007, unless accepted by Licensee by this date.<br><br>Permitted Users may not share their license and password with others. |

ACCEPTED AND AGREED:
bigdough.com.inc

By: *[signature]*
Name: *Joseph Ragha*
Title: *Controller*
Date: *March 28, 2007*

Company Name: Lehman Brothers, Inc.

By: *[signature]*
Name: *Robert L Davie*
Title: *VP*
Date: *3/28/07*

RENEWCAPMK'S112006

CONTRACT NO. 004010-LEHNY-2005

**bigdough.com.inc**

User Access & License Agreement – Amendment

| "LICENSOR": | "LICENSEE": |
|---|---|
| **bigdough.com.inc.**<br>4833 Rugby Avenue, Suite 600<br>Bethesda, MD 20814<br>**Please fax signed agreement to:**<br>**1-603-720-6054**<br>**Attention: James Dean** | Company Name: Lehman Brothers, Inc.<br>Contact Name: Mary-Elizabeth MacNaughton<br>Contact Title: VP - Business Information Services<br>Contact Email: mmacnaug@lehman.com<br>Contact Telephone: 212-526-8923<br>Contact Facsimile: 212-526-5971<br>Company Address: 745 Seventh Ave. New York, NY 10019<br>Company Website: www.lehman.com |

The User Access & License Agreement signed on 02/05/02, as amended on 02/06/03, as amended on 02/04/04 is hereby further amended only to the following extent:

1. The term of the agreement is renewed, and the pricing and Users for the renewal term are established, as follows:

| | |
|---|---|
| **Contract Start & Expiration Dates** | Contract Begins: 02/05/05<br>Contracts Ends: 02/04/07 |
| **Permitted Users**<br>**Up To 130 ONLY** | Please list by individual name and e-mail address |
| **Payment Terms**<br><br>**Please Select European Ownership Data and/ or bigdoughMail** | $88,000 (U.S.) to be invoiced on receipt of signed agreement and $125,000 to be invoiced on contract anniversary date. Licensee receives a substantial discount from the standard pricing and agrees to keep pricing absolutely confidential. Licensor will notify Licensee of the following cancellation option on 11/04/05. Licensee will have a one-time option to cancel the second year of the contract if bigdough is notified in writing no later than 12/19/05; otherwise, the balance of $125,000 is due and payable on 02/04/06 for the remaining 12 months. If the option to cancel is exercised, a termination fee of $20,000 shall be due on 02/04/06.<br><br>____Include European Ownership Data at $5,000 annually.<br><br>____Include bigdoughMail at $5,000 annually. |
| **Additional Provisions** | Additional users can be added for the remaining term of this agreement for $750 annually pro-rata.<br><br>These terms expire on 02/19/2005, unless accepted by Licensee by this date.<br><br>Permitted Users may not share their license and password with others. |

ACCEPTED AND AGREED:

bigdough.com.inc

By: [signature]
Name: Michael McGahey
Title: VP / Chief Financial Officer
Date: February 18, 2005

Company Name: Lehman Brothers, Inc.

By: [signature]
Name: Mary Elizabeth Schaub
Title: Vice President
Date: 2/19/2005

RENEWCAPMKTS05112004



| Customer Name | Invoice # | Invoice Date | # Users | Contract Term | Amount |
|---|---|---|---|---|---|
| Lehman Brothers | 4340 | 02/05/04 | 16 | 2/5/04-2/4/05 | $ 39,522.00 |
| 20 desk top license | 4337 | 02/05/04 | 1 | | $ 775.00 |
| 18+20=38 | 5453 | 11/15/04 | 1 | | $ 3,230.00 |

**bigdough.com.inc**

User Access & License Agreement – Amendment

| "LICENSOR": | "LICENSEE": |
|---|---|
| **bigdough.com.inc.**<br>4833 Rugby Avenue, Suite 600<br>Bethesda, MD 20814<br>**Please fax signed agreement to:**<br>**1-603-720-6054**<br>**Attention: James Dean** | Company Name: Lehman Brothers, Inc.<br>Contact Name: Thomas Fearon<br>Contact Title: VP<br>Contact Email:<br>Contact Telephone: 212.526.6923<br>Contact Facsimile:<br>Company Address: 745 Seventh Avenue<br>New York, NY 10019<br>Company Website: www.lehman.com |

The User Access & License Agreements signed on 2.05.02 ~~and 2.06.03~~ (as amended on) is hereby further amended only to the following extent: [initialed]

1. The term of the agreement is renewed, and the pricing and Users for the renewal term are established, as follows:

| | |
|---|---|
| **Contract Start & Expiration Dates** | Contract Begins: 2.05.04<br>Contracts Ends: 2.04.05 |
| **Users**<br>**Up To 16 ONLY** | Please list by individual name:<br>To be supplied by Lehman Brothers, Inc. May be changed from time to time. |
| **Payment Terms**<br><br>**Please Select European Ownership Data and/ or bigdoughMail** | $39,522 (U.S.) to be invoiced on contract anniversary date.<br><br>____Include European Ownership Data at $6,000 annually.<br>____Include bigdoughMail at $5,000 annually. |
| **Additional Provisions** | Additional users can be added during the term of this agreement for $775 annually pro-rata.<br>These terms expire on 2.04.04, unless accepted by Licensee by this date.<br>In addition to the above and contingent upon the execution thereof, Licensor will make available to Lehman Brothers an additional 20 desk top licenses, to be assigned for one year, as a good faith carry-over from the lapsed Neuberger Berman license. |

ACCEPTED AND AGREED:

bigdough.com.inc

By: [signature]
Name: Michael McGahey
Title: VP / Chief Financial Officer
Date: 2/5/04

Company Name: Lehman Brothers, Inc.

By: [signature]
Name: ~~Thomas Fearon~~ M.E. MacNaughton
Title: VP
Date: 4 Feb 2004

RENEWCAPMKTS10152003

02/05/2003 10:44 LEHMAN → 913015543797 NO.588 P01

212 526 6775
02/05/2003 09:44 LEHMAN → 55971 NO.686 P01

**bigdough.com.Inc**
<u>User Access & License Agreement – Amendment</u>

| Licensor: | Licensee: |
|---|---|
| bigdough.com.Inc.<br>6933 Rugby Avenue, Suite 500<br>Bethesda, MD 20814 | Company Name: Lehman Brothers Inc.<br>Contact Name. Mary Elizabeth MacNaughton<br>Company Address: 745 Seventh Avenue, New York, NY 10019<br>Telephone: 212.526.6923<br>Facsimile: |

The User Access & License Agreement signed on 2.05.02 is hereby amended only to the following extent:

1. The term of the agreement is renewed, and the pricing and Users for the renewal term are established, as follows:

| Contract Start & Expiration Dates | Contract Begins: February 5, 2003<br>Contracts Ends: February 4, 2004 |
|---|---|
| Users<br><br>15 ONLY | Please list by individual name:<br><br>Steve Alpes<br>Ramon Alvarez<br>Stephanie Borynack<br>Melanie Crader<br>Caroline Dykes<br>John Doefler<br>Mairead Kenny<br>Beth Owen<br>Alan Borish<br>Guy Wyles<br>Richard Lewinski<br>Andrew Lieberman<br>TBA1<br>TBA2<br>TBA3 |
| Payment Terms | $38,025. |
| Additional Provisions | Additional users may be added for $760.25 per year, prorated, at any time during this agreement.<br>Licensee is responsible for any applicable federal, state or local sales taxes resulting from the execution of this Agreement, excluding income, personal and corporate franchise. |

<u>ACCEPTED AND AGREED:</u>

bigdough.com.inc

By: [signature]
Name: Michael McGahey
Title: VP / Chief Financial Officer
Date: 2/4/03

Company Name: Lehman Brothers Inc.

By: [signature]
Name: [handwritten]
Title: VP
Date: 2-4-03

**bigdough.com,inc ("bigdough")**
User Access & License Agreement

| LICENSOR: | LICENSEE: |
|---|---|
| bigdough.com,inc.<br>4833 Rugby, Suite 600<br>Bethesda, MD 20814 | Company Name: Lehman Brothers Inc.<br>Contact Name:<br>Company Address: 399 Park Avenue<br>New York, NY 10022<br><br>Telephone:<br>Facsimile:<br>Email: |

1) License.

a) You (together with your affiliates, "Licensee") are granted a license to access and use the Database (defined below) on the following terms: (a) access will be limited to the Permitted Users set forth on Exhibit A; (b) your rights are non-transferable (except as expressly set forth herein), non-sublicensable, non-exclusive; and (c) access may be terminated and this license revoked by Licensor upon any breach by you of this User Access & License Agreement (the "Agreement"). Licensor shall provide one or more passwords or other information necessary to permit access. The term "Database" shall mean the information collected and compiled by Licensor, as accessed via the Internet on the Licensor's web site at www.bigdough.com (the "Site"). The Database and all other services provided by bigdough are the "Services". Notwithstanding the confidentiality, non-disclosure and restriction of usage provisions contained in this Agreement, Licensee may provide access to the Database to its authorized consultants, agents, auditors, counsel and other representatives for the purpose of providing assistance to Licensee in the ordinary course of Licensee's operation of such Database, provided that any such third party shall be bound by nondisclosure obligations consistent with the terms of this Agreement.

b) By posting messages, uploading information, inputting data or engaging in any other form of communication to the Site, you hereby grant to bigdough a license to store, transmit or display such materials, solely in connection with those functions or Services requested by you.

2) Limitations on Use.

a) You may access and use the Database solely for the following purposes: (i) to view any of the information in the Database; (ii) to send information or materials to persons or institutions found in the Database ("Database Contacts") through the "Blast Fax" and "Blast E-Mail" features on the Site or via regular mail or courier, provided that such information and materials are related to the business of the persons to whom such messages are sent; (iii) to download information from the Database through the "Excel Download" feature on the Site; and (iv) to print limited portions of the Database.

b) You agree to abide by the following restrictions on the use of the Database: (i) other than spreadsheet and other downloads expressly enabled by the bigdough.com web site and printing of selected entries, you may not duplicate any significant portion of the database digitally or in print for your own use or use by others; (ii) other than spreadsheet and other downloads expressly enabled by the bigdough.com web site, you may not create a "local" copy of any portion of the Database on any computer; (iii) you may not permit any third party to use your password or otherwise have access to the Database; (iv) you may not disclose any information from the Database to any third party at any time, nor may you redistribute any information obtained from the Database, except for limited extracts provided to your clients and potential clients; and (v) after termination or expiration of your license, you may not use any Database information for any purpose, including, but not limited to, sending any fax, e-mail or mailing to any Database Contacts.

3) Ownership. Licensor, and its providers, are the sole owners of the content, layout, functions, features, code, appearance, trademarks and other intellectual property (collectively, the "bigdough.com Intellectual Property") comprising the Database and the interface that is made available to you on the bigdough.com web site. The Database contains information that is created and maintained by Licensor at great effort and expense, and the database structure created and maintained by Licensor, under which the information is stored and retrieved, is unique and highly valuable. Subject to Section 1(b), you do not and will not have any ownership rights in the Database. Information from the Database that you print, save or incorporate into other materials is solely licensed (not transferred) to you. You agree that the Database information constitutes a valid trade secret of Licensor and that the bigdough.com Intellectual Property constitutes protectable, proprietary assets of Licensor. You agree not to use the "bigdough.com" trademark or trade name in any manner without Licensor's prior consent.

4) Warranties and Representations.

a) Licensor represents and warrants to Licensee that: (i) it has the right to furnish the Services free of all liens, claims, encumbrances and other restrictions; (ii) the license furnished by Licensor, and Licensee's use of the Services in accordance with the terms of this Agreement, do not and will not violate, infringe or misappropriate any patent, published patent application, copyright, trade mark, service mark, trade secret or other intellectual property or industrial property rights of any third party (collectively, "Intellectual Property Rights") or the laws or regulations of any governmental or judicial authority; (iii) Licensee shall be entitled to use the Services subject to, and in accordance with, the terms of this Agreement; (iv) Licensee's use of the Services in accordance with the terms of this Agreement shall not be adversely affected, interrupted or disturbed by Licensor or any entity asserting a claim under or through Licensor; and (v) Licensee's use, of the Services in accordance with the terms of this Agreement shall not be subject to any third party rights, interests or license or support fees.

b) You represent and warrant that you shall not upload, post or transmit to or distribute or otherwise publish through the bigdough Services any materials which knowingly (i) restrict or inhibit any other user from using and enjoying the Site, (ii) are unlawful, threatening, abusive, libelous, defamatory, obscene, vulgar, offensive, harassing, pornographic, profane, sexually explicit or indecent, (iii) constitute or encourage conduct that would constitute a criminal offense, give rise to civil liability or otherwise violate law, (iv) violate, plagiarize or infringe the rights of third parties including, without limitation, copyright, trademark, patent, rights of privacy or publicity or any other proprietary right, (v) contain a virus, Trojan horse, worms, time bombs, robots or other harmful component intended to disrupt or interfere with the intended operation of the Site or any other site on the World Wide Web, or (vi) constitute or contain false or misleading indications of origin or statements of fact.

c) EXCEPT AS EXPRESSLY SET FORTH HEREIN, THE SITE, AND ANY INFORMATION INCLUDED ON THE SITE, AND SERVICES ARE PROVIDED "AS IS" WITHOUT ANY CONDITION OR WARRANTY WHATSOEVER. LICENSOR AND ITS PROVIDERS MAKE NO WARRANTY THAT THE SITE OR SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE. YOUR USE OF THE SITE IS AT YOUR OWN RISK, AND YOUR RELIANCE ON ANY INFORMATION OR DATA POSTED ON THE SITE IS AT YOUR OWN RISK. EXCEPT AS EXPRESSLY SET FORTH HEREIN, LICENSOR EXPRESSLY DISCLAIMS ALL EXPRESS, IMPLIED AND STATUTORY WARRANTIES, INCLUDING WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. FURTHER, LICENSOR AND ITS PROVIDERS DO NOT WARRANT THAT THE SERVICES WILL MEET YOUR REQUIREMENTS OR THAT THE SERVICES WILL OPERATE IN COMBINATION WITH OTHER SOFTWARE OR SERVICES.

d) The Site may contains links and pointers to the other related World Wide Web Internet sites. Bigdough is not responsible for any content of such Web sites or the privacy or other commercial practices of such Web sites, unless otherwise stated. The links do not imply bigdough's endorsement of, or association with, the linked sites, unless otherwise stated.

5) Limitation of Liability. IN NO EVENT WILL EITHER PARTY BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, INDIRECT, EXEMPLARY, PUNITIVE OR SPECIAL DAMAGES ARISING FROM THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, LOSS OF REVENUE OR ANTICIPATED PROFITS OR BUSINESS OR SALES INTERRUPTION, EVEN IF SUCH PARTY, OR AN AUTHORIZED REPRESENTATIVE THEREOF, HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE PARTIES AGREE THAT EACH PARTY'S MAXIMUM LIABILITY, UNDER ANY THEORY OF LIABILITY, INCLUDING CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE, SHALL BE THE TOTAL AMOUNT OF FEES THAT YOU HAVE PAID TO US UNDER THIS AGREEMENT. THE LIMITATIONS OF LIABILITY SET FORTH IN THIS SECTION SHALL NOT APPLY TO: (A) LICENSOR'S INDEMNIFICATION OBLIGATIONS, (B) BREACH BY LICENSOR OF ITS CONFIDENTIALITY OBLIGATIONS, AND (C) GROSS NEGLIGENCE AND WILLFUL MISCONDUCT OF LICENSOR.

6) Fees

a) Payment of fees is due upon thirty (30) days of Licensee's receipt of invoice, except for disputed amounts. Failure to pay undisputed fees when due may result in revocation of this License pursuant to Section 7. Invoices shall be sent to Licensee at the following address: Lehman Brothers Inc., 101 Hudson Street, 29th Floor, Jersey City, NJ 07302, Attn: Expense Control Division.

b) Licensee shall have the sole option of renewing this Agreement for additional one year periods upon the expiration of the initial term at a price not to exceed the lesser of (a) 105% of the applicable fee (per user, as applicable) for substantially the same Service(s) for the during the immediately preceding twelve (12) month period or (b) the fee for the immediately preceding twelve (12) month period adjusted for any increase in the Consumer Price Index during such period. For purposes of this Section, "Consumer Price Index" means Consumer Price Index for All Items, U.S. City Average, All Urban Consumers (base year 1982-1984=100), published by the United States Bureau of Labor Statistic of the U.S. Department of Labor.

c) Licensor warrants and represents that, as of the effective date of this Agreement, the discount or prices with respect to the products and/or services provided pursuant to this Agreement are comparable to or better than the discount or prices offered prior to and as of the effective date by Licensor to any of its commercial customers who are similarly situated to Licensee with respect to similar products and/or services.

7) Term and Termination.

a) The term of this Agreement is specified in Exhibit A. Not more than one hundred and twenty (120) days and not less than ninety (90) days prior to the expiration of the then current term, Licensor shall notify Licensee in writing as to the upcoming expiration. Licensee shall have the option of renewing this Agreement by providing a written renewal notice to Licensor; provided, however, that Licensee shall be entitled to renew this Agreement regardless of whether or not Licensor has provided timely notice in accordance with this paragraph.

b) In the event of any material breach of this Agreement by either party, the non-defaulting party may (reserving cumulatively all other remedies and rights under this Agreement, in law and in equity) terminate this Agreement, in whole or in part, by giving sixty (60) days' prior written notice thereof, provided, however, that this Agreement shall not terminate at the end of said sixty (60) day notice period if the party in breach has cured the breach of which it has been notified prior to the expiration of said sixty (60) days. For the purposes of this Agreement, either party shall be deemed to be in material breach of this Agreement in circumstances including but not limited to where such party (i) is liquidated, dissolved, or adjudged to be in a state of bankruptcy or receivership, (ii) is insolvent, unable to pay its debts as they become due, or makes an assignment to or for the benefit of its creditors, or (iii) ceases to conduct business for any reason on an on-going basis leaving no successor in interest.

c) Upon expiration or termination of your license, you agree that your access to the Database will be automatically terminated, and you agree to return, destroy or delete any printouts or downloads of Database information and any compilations or other documents containing Database information.

d) Sections 4, 7, 9, 11 and 13 shall survive the expiration or earlier termination of this Agreement.

8) Governing Law. This Agreement is governed by the laws of the State of New York, as an agreement entered into and performed in New York. We both agree that any action to enforce this Agreement may only be brought in a state or federal court in New York, and we both submit to the personal jurisdiction of those courts and waive the right to claim that jurisdiction is inconvenient.

9) Indemnification.

a) Licensor warrants and represents that any information contained in the Database will not violate any patent, copyright, trade secret, trademark, trade dress, or other intellectual property right of any third party. Within ten days after the date of Licensor's receipt of a notice from Licensee that a written claim has been made by a third party against Licensee asserting that the information contained in the Database infringes on, violates or misappropriates the patent, copyright, trade secret, trademark or other intellectual property rights of such third party, Licensor shall notify Licensee of Licensor's election, at its own discretion and expense, to either: (a) procure for Licensee the right to continue using the Database, (b) modify the Database to make it non-infringing, or (c) refund any previously paid but unearned portions of the annual license fee for the Database (the cutoff date for determining the refund shall be the date that Licensor receives a copy of Licensee's infringement claim notice). Licensor shall complete the remedy it has elected within thirty days after the date of its notice to Licensee indicating its election of one of the foregoing exclusive remedies. Licensor shall indemnify Licensee, its affiliates and their respective successors, assigns, officers, directors and employees (collectively, "Indemnitees") against and hold harmless from, damage, loss, liability, costs and expenses of any kind (including reasonable attorneys' fees) (collectively, "Loss") relating to or arising out of any claim that the Services or the information contained in the Database infringes on, violates or misappropriates any U.S. patent, copyright, trade secret, trademark or other intellectual property right of any other entity. Licensee agrees to notify Licensor promptly in writing of such claim; provided, however, that no failure to so notify Licensor shall relieve Licensor of its obligations under this Agreement except to the extent that it can demonstrate damages directly attributable to such failure. Licensor shall have the option to control the conduct of the claim, and Licensee shall reasonably cooperate in the conduct of such claim at the expense of Licensor. Licensee may, if it wishes and at its own expense, retain counsel to participate in the claim, and in such event Licensor and its counsel shall reasonably cooperate with Licensee and its counsel. In no event, however, may Licensor agree to any settlement of any claim or action for which it has agreed to provide indemnification under this Agreement, where such settlement would adversely affect the Services or the rights of Licensee under this Agreement, or otherwise bind Licensee, without its prior written consent. THE FOREGOING STATES THE ENTIRE LIABILITY OF LICENSOR FOR PATENT, COPYRIGHT, TRADEMARK OR OTHER INTELLECTUAL PROPERTY RIGHTS INFRINGEMENT BY ANY PRODUCT OR SERVICE FURNISHED UNDER THIS AGREEMENT.

b) Licensor assumes sole and full responsibility for the acts of its personnel and shall indemnify and save harmless

Indemnitees from Loss with respect to any and all claims on account of any act or lack of action on the part of Licensor or its personnel, including but not limited to any Loss resulting from breach of any duty or theft of material or services by any such person; provided however, that Licensor's obligation to indemnify shall not apply to any loss or liability caused solely by the misconduct or negligence of Indemnitee's employees or of other individuals not directly employed or engaged by Licensor. Licensor agrees and represents that it is an independent contractor and its personnel are not Licensee's agents or employees for federal, state, and local tax purposes or any other purposes whatsoever, and are not entitled to any Licensee employee benefits. Licensor shall indemnify and hold harmless Indemnitees from Loss relating to or arising out of any assertion that Indemnitees should be deemed the "employer" or "joint employer" of any of the individuals performing services under this Agreement. Licensor represents that each of its personnel providing services under this Agreement is an employee of Licensor and that Licensor will withhold and pay all applicable income and payroll taxes with respect to such personnel. Licensor, and not Licensee, is solely responsible for the compensation of personnel assigned to perform services hereunder, and payment of workers' compensation, disability and other similar benefits, unemployment and other similar insurance, for withholding income and payroll taxes and for verifying the work eligibility of each person performing services hereunder, including the completion and maintenance of Form I-9. Licensor will comply with all applicable requirements of Executive Order 11246, the Vietnam Veterans' Readjustment Assistance Act of 1974, as amended, the Rehabilitation Act of 1973, as amended, and the applicable implementing regulations and reporting requirements under each of the foregoing, each of which is incorporated herein by reference.

c) Licensor shall defend, indemnify and hold harmless Indemnitees from Loss incurred by or asserted against such Indemnitees and arising from physical injury to persons or property caused by the fault or negligence of Licensor's officers, employees, agents or representatives.

10) Insurance. Licensor agrees to obtain and maintain and keep in full force and effect at Licensor's expense statutory workers' compensation, disability, unemployment insurance and the like for those of its employees performing services under this Agreement. In addition, Licensor agrees to obtain and maintain professional, commercial general and business auto liability and excess and umbrella insurance.

11) Confidentiality.

a) "Confidential Information" means any non-public information obtained by a party to this Agreement (the "Receiving Party") as a result of this Agreement which relates to the past, present or future business activities of the other party (the "Disclosing Party"), its subsidiaries and affiliates or their respective employees, customers or third party contractors, including (i) any information relating to the plans, pricing, methods, methodologies, processes, financial data, lists, customer information, apparatus, statistics, programs, research, development, information technology or related information and (ii) any personal contact information collected from your users during the registration process.

b) Confidential Information shall not include information that is (i) previously known to the Receiving Party, free from any obligation to keep it confidential as demonstrated by its written records maintained in the ordinary course of business or actual prior use, (ii) publicly disclosed by the Disclosing Party either prior to or subsequent to the receipt by the Receiving Party of such information, (iii) independently developed by the Receiving Party without any access to the Confidential Information of the other, (iv) rightfully obtained from a third party lawfully in possession of the Confidential Information who is not under confidentiality obligations to the Disclosing Party, or (v) required to be disclosed under applicable law, rule or order; provided the Receiving Party, where reasonably practicable and to the extent legally permissible, provides the Disclosing Party with prior written notice of the required disclosure. The Receiving Party shall hold all the Disclosing Party's Confidential Information in trust and confidence for the Disclosing Party, its subsidiaries and affiliates. Except as may be authorized by the Disclosing Party in writing, the Receiving Party shall not disclose to any person, firm or enterprise, or use for its own benefit, any such Confidential Information, and even when so authorized by the Disclosing Party, the Receiving Party shall limit access and disclosure to the Receiving Party's personnel on a "need to know" basis only. Licensor agrees that Licensee may disclose Confidential Information to consultants performing services for Licensee's benefit, provided that such consultants are bound by non-disclosure obligations consistent with this Agreement.

c) Each party further acknowledges and agrees that, in the event of a breach or threatened breach by it of the provisions of this Section, the Disclosing Party may have no adequate remedy in money or damages and, accordingly, may be entitled to an injunction against such breach. However, no specification in this Agreement of a specific legal or equitable remedy shall be construed as a waiver or prohibition against any other legal or equitable remedies in the event of a breach of a provision of this Agreement.

12) Security. Licensor shall maintain for the term of this Agreement sufficient physical and electronic security procedures (which procedures may be revised from time to time) to safeguard Licensee's data and shall ensure that the Database and Licensee's computer stored data transmitted over the network are protected from unauthorized access and disclosure.

13) No Publicity. Licensor shall not use the name or marks, refer to, or identify "Lehman Brothers" or any Licensee entity in publicity releases, promotional or marketing materials, announcements, customer listings, testimonials, or advertising.

14) Miscellaneous.

a) This Agreement constitutes the entire agreement between you and the Licensor and supercedes any term or representation in all other documents. This Agreement may only be amended in a writing designated as such and signed by both parties.

b) You agree that during the term of this Agreement and until one (1) year after termination or expiration, Licensor, at its discretion, may request documentation from you or enter your premises to perform reasonable audit and inspection procedures to confirm that you are in compliance with the terms and conditions of this Agreement; provided, however, that such audits occur no more often than once annually, are upon reasonable notice, are at Licensor's sole expense, and are on dates and at times mutually agreed by the parties during Licensee's regular business hours. The auditors shall protect Licensee's Confidential Information, abide by Licensee's reasonable security regulations and conduct the audit in manner that causes a minimum of disruption to Licensee's business.

c) If any provision of this Agreement is held unenforceable or invalid, the remaining provisions shall nevertheless be binding upon the respective parties hereto with the same effect as though the invalid or unenforceable provision was deleted.

d) No delay by either party in the enforcement of, or failure to enforce, any provision or right hereunder shall operate as a waiver of such right.

e) Neither this Agreement nor any part hereof may be assigned (whether by operation of law or otherwise) by either party without the other party's prior written consent and any such assignment shall be void. Notwithstanding the foregoing, Licensee may assign this Agreement and any of its rights and/or obligations hereunder upon written notice to Licensor, to any of its affiliated companies or to an entity with or into which it is merged or consolidated or to which it sells all or substantially all its capital stock or assets, without the consent of Licensor. This Agreement shall be binding upon the parties' respective successors and assigns.

f) Neither party to this Agreement shall be liable for delays caused by an event of natural disaster, casualty, acts of God, riots, governmental acts or such other event of similar nature that is beyond the delaying party's control; provided however that such party shall not have contributed in any way to such event. Licensor shall maintain commercially reasonable disaster recover measures to cure such an event; provided however that if such event continues beyond ten (10) calendar days, Licensee shall nonetheless have the right to terminate this Agreement with no further liability.

g) All notices relating to this Agreement shall be in writing and delivered personally, by overnight delivery service or first class prepaid mail with return receipt requested, (a) in the case of Licensor, to the address set forth above and (b) in the case of Licensee, to Lehman Brothers Inc., 399 Park Avenue, New York, New York 10022, Attention: Global Purchasing Manager, with a copy to the attention of General Counsel.

h) The headings in this Agreement are for purposes of reference only and shall not in any way limit or affect the meaning or interpretation of any of the terms hereof.

EXHIBIT A

| | |
|---|---|
| Contract Start & Expiration Dates | Contract Begins: February 5, 2002<br>Contracts Ends: February 5, 2003 |
| Permitted Users<br>15 ONLY | Licenses to be used in the following departments: E-commerce Initiatives, Equity Derivative Sales, Equity Soft Dollar Sales, Institutional Equity Sales, Private Client Services and Market Data Services. Individual user names to be supplied by Lehman Brothers. Users may be changed from time to time by licensee. |
| Payment Terms | $37,500 |
| Additional Provisions | 1. PASSWORDS MAY NOT BE SHARED, EXCEPT AS SPECIFICALLY APPROVED BY BIGDOUGH.<br>2. Additional users in the above-listed departments may be added for $750, pro rated, at any time during the term of this license.<br>3. The additional licenses will be added only according to procedures approved by Lehman.<br>4. Includes training as needed, 24/7 customer service, and all bigdough data sets.<br>5. Licensor and licensee acknowledge that more than 600 persons work in the six Lehman departments listed, and that there is potential for sharing which is in violation of this agreement. Licensor and licensee will use their best efforts to assure that such sharing does not take place and that licenses are used only by those persons to whom assigned. |

ACCEPTED AND AGREED:

bigdough.com Inc.

By: Michael McGahey
Name: Michael McGahey
Title: Vice President / CFO
Date: 2/5/02

Licensee: Lehman Brothers Inc.

By: [signature]
Name: James [illegible]
Title: VP Global [illegible]
Date: 2/5/02

**bigdough.com.inc**

User Access & License Agreement – Amendment

| "LICENSOR": | "LICENSEE": |
|---|---|
| **bigdough.com.inc.**<br>4833 Rugby Avenue, Suite 600<br>Bethesda, MD 20814<br>**Please fax signed agreement to:**<br>**1-603-720-6054**<br>**Attention: James Dean** | Company Name: Lehman Brothers, Inc.<br>Contact Name: Thomas Fearon<br>Contact Title: VP<br>Contact Email:<br>Contact Telephone: 212.526.6923<br>Contact Facsimile:<br>Company Address: 745 Seventh Avenue<br>New York, NY 10019<br>Company Website: www.lehman.com |

The User Access & License Agreements signed on 2.05.02, ~~and 2.06.03,~~ as amended on 2.06.03, is hereby further amended only to the following extent: MEM MM

1. The term of the agreement is renewed, and the pricing and Users for the renewal term are established, as follows:

| | |
|---|---|
| **Contract Start & Expiration Dates** | Contract Begins: 2.05.04<br>Contracts Ends: 2.04.05 |
| **Users**<br>**Up To 16 ONLY** | Please list by individual name:<br>To be supplied by Lehman Brothers, Inc. May be changed from time to time. |
| **Payment Terms**<br><br>**Please Select European Ownership Data and/ or bigdoughMail** | $39,522 (U.S.) to be invoiced on contract anniversary date.<br><br>____Include European Ownership Data at $6,000 annually.<br>____Include bigdoughMail at $5,000 annually. |
| **Additional Provisions** | Additional users can be added during the term of this agreement for $775 annually pro-rata.<br>These terms expire on 2.04.04, unless accepted by Licensee by this date.<br>In addition to the above and contingent upon the execution thereof, Licensor will make available to Lehman Brothers an additional 20 desk top licenses, to be assigned for one year, as a good faith carry-over from the lapsed Neuberger Berman license. |

ACCEPTED AND AGREED:

bigdough.com.inc

By: [signature]
Name: Michael McGahey
Title: VP / Chief Financial Officer
Date: 2/5/04

Company Name: Lehman Brothers, Inc.

By: [signature] ME MacNaughton
Name: ~~Thomas Fearon~~ ME MacNaughton
Title: VP
Date: 4 Feb 2004

RENEWCAPMKTS10152003

02/05/2003 10:44 LEHMAN → 917016549797 NO.688 002

02/05/2003 09:44 212 526 6775 LEHMAN → 59971 NO.688 001

**bigdough.com.inc**
User Access & License Agreement – Amendment

| Licensor: | Licensee: |
|---|---|
| bigdough.com.inc,<br>4833 Rugby Avenue, Suite 500<br>Bethesda, MD 20814 | Company Name: Lehman Brothers Inc.<br>Contact Name: Mary Elizabeth MacNaughton<br>Company Address: 745 Seventh Avenue, New York, NY 10019<br>Telephone: 212.526.6923<br>Facsimile: |

The User Access & License Agreement signed on 2.05.02 is hereby amended only to the following extent:

1. This term of the agreement is renewed, and the pricing and Users for the renewal term are established, as follows:

| Contract Start & Expiration Dates | Contract Begins: February 5, 2003<br>Contracts Ends: February 4, 2004 |
|---|---|
| Users<br>15 ONLY | Please list by individual name:<br>Steve Alpin<br>Ramon Alvarez<br>Stephanie Borynack<br>Melanie Crader<br>Caroline Dykes<br>John Goetler<br>Mairead Keany<br>Beth Owen<br>Alan Sorkin<br>Guy Wyles<br>Richard Lesnieski<br>Andrew Lieberman<br>TBA1<br>TBA2<br>TBA4 |
| Payment Terms | $38,025. |
| Additional Provisions | Additional users may be added for $760.23 per year, prorated, at any time during this agreement.<br>Licensee is responsible for any applicable federal, state or local sales taxes resulting from the execution of this Agreement, excluding income, personal and corporate franchise. |

**ACCEPTED AND AGREED:**

bigdough.com.inc

By: [signature]
Name: Michael McGahey
Title: VP / Chief Financial Officer
Date: 2/6/03

Company Name: Lehman Brothers Inc.

By: [signature]
Name: [signature]
Title: VP
Date: 2-6-03

**bigdough.com.inc ("bigdough")**
User Access & License Agreement

| LICENSOR: | LICENSEE: |
|---|---|
| bigdough.com.inc.<br>4833 Rugby, Suite 600<br>Bethesda, MD 20814 | Company Name: Lehman Brothers Inc.<br>Contact Name:<br>Company Address: 399 Park Avenue<br>New York, NY 10022<br><br>Telephone:<br>Facsimile:<br>Email: |

1) License.

a) You (together with your affiliates, "Licensee") are granted a license to access and use the Database (defined below) on the following terms: (a) access will be limited to the Permitted Users set forth on Exhibit A; (b) your rights are non-transferable (except as expressly set forth herein), non-sublicensable, non-exclusive; and (c) access may be terminated and this license revoked by Licensor upon any breach by you of this User Access & License Agreement (the "Agreement"). Licensor shall provide one or more passwords or other information necessary to permit access. The term "Database" shall mean the information collected and compiled by Licensor, as accessed via the Internet on the Licensor's web site at www.bigdough.com (the "Site"). The Database and all other services provided by bigdough are the "Services". Notwithstanding the confidentiality, non-disclosure and restriction of usage provisions contained in this Agreement, Licensee may provide access to the Database to its authorized consultants, agents, auditors, counsel and other representatives for the purpose of providing assistance to Licensee in the ordinary course of Licensee's operation of such Database, provided that any such third party shall be bound by nondisclosure obligations consistent with the terms of this Agreement.

b) By posting messages, uploading information, inputting data or engaging in any other form of communication to the Site, you hereby grant to bigdough a license to store, transmit or display such materials, solely in connection with those functions or Services requested by you.

2) Limitations on Use.

a) You may access and use the Database solely for the following purposes: (i) to view any of the information in the Database; (ii) to send information or materials to persons or institutions found in the Database ("Database Contacts") through the "Blast Fax" and "Blast E-Mail" features on the Site or via regular mail or courier, provided that such information and materials are related to the business of the persons to whom such messages are sent; (iii) to download information from the Database through the "Excel Download" feature on the Site; and (iv) to print limited portions of the Database.

b) You agree to abide by the following restrictions on the use of the Database: (i) other than spreadsheet and other downloads expressly enabled by the bigdough.com web site and printing of selected entries, you may not duplicate any significant portion of the database digitally or in print for your own use or use by others; (ii) other than spreadsheet and other downloads expressly enabled by the bigdough.com web site, you may not create a "local" copy of any portion of the Database on any computer; (iii) you may not permit any third party to use your password or otherwise have access to the Database; (iv) you may not disclose any information from the Database to any third party at any time, nor may you redistribute any information obtained from the Database, except for limited extracts provided to your clients and potential clients; and (v) after termination or expiration of your license, you may not use any Database information for any purpose, including, but not limited to, sending any fax, e-mail or mailing to any Database Contacts

3) Ownership. Licensor, and its providers, are the sole owners of the content, layout, functions, features, code, appearance, trademarks and other intellectual property (collectively, the "bigdough.com Intellectual Property") comprising the Database and the interface that is made available to you on the bigdough.com web site. The Database contains information that is created and maintained by Licensor at great effort and expense, and the database structure created and maintained by Licensor, under which the information is stored and retrieved, is unique and highly valuable. Subject to Section 1(b), you do not and will not have any ownership rights in the Database. Information from the Database that you print, save or incorporate into other materials is solely licensed (not transferred) to you. You agree that the Database information constitutes a valid trade secret of Licensor and that the bigdough.com Intellectual Property constitutes protectable, proprietary assets of Licensor. You agree not to use the "bigdough.com" trademark or trade name in any manner without Licensor's prior consent.

4) Warranties and Representations.

a) Licensor represents and warrants to Licensee that: (i) it has the right to furnish the Services free of all liens, claims, encumbrances and other restrictions; (ii) the license furnished by Licensor and Licensee's use of the Services in accordance with the terms of this Agreement do not and will not violate, infringe or misappropriate any patent, published patent application, copyright, trade mark, service mark, trade secret or other intellectual property or industrial property rights of any third party (collectively, "Intellectual Property Rights") or the laws or regulations of any governmental or judicial authority; (iii) Licensee shall be entitled to use the Services subject to, and in accordance with, the terms of this Agreement; (iv) Licensee's use of the Services in accordance with the terms of this Agreement shall not be adversely affected, interrupted or disturbed by Licensor or any entity asserting a claim under or through Licensor, and (v) Licensee's use, of the Services in accordance with the terms of this Agreement shall not be subject to any third party rights, interests or license or support fees.

b) You represent and warrant that you shall not upload, post or transmit to or distribute or otherwise publish through the bigdough Services any materials which knowingly (i) restrict or inhibit any other user from using and enjoying the Site, (ii) are unlawful, threatening, abusive, libelous, defamatory, obscene, vulgar, offensive, harassing, pornographic, profane, sexually explicit or indecent, (iii) constitute or encourage conduct that would constitute a criminal offense, give rise to civil liability or otherwise violate law, (iv) violate, plagiarize or infringe the rights of third parties including, without limitation, copyright, trademark, patent, rights of privacy or publicity or any other proprietary right, (v) contain a virus, Trojan horse, worms, time bombs, robots or other harmful component intended to disrupt or interfere with the intended operation of the Site or any other site on the World Wide Web, or (vi) constitute or contain false or misleading indications of origin or statements of fact.

c) EXCEPT AS EXPRESSLY SET FORTH HEREIN, THE SITE, AND ANY INFORMATION INCLUDED ON THE SITE, AND SERVICES ARE PROVIDED "AS IS" WITHOUT ANY CONDITION OR WARRANTY WHATSOEVER. LICENSOR AND ITS PROVIDERS MAKE NO WARRANTY THAT THE SITE OR SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE. YOUR USE OF THE SITE IS AT YOUR OWN RISK, AND YOUR RELIANCE ON ANY INFORMATION OR DATA POSTED ON THE SITE IS AT YOUR OWN RISK. EXCEPT AS EXPRESSLY SET FORTH HEREIN, LICENSOR EXPRESSLY DISCLAIMS ALL EXPRESS, IMPLIED AND STATUTORY WARRANTIES, INCLUDING WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. FURTHER, LICENSOR AND ITS PROVIDERS DO NOT WARRANT THAT THE SERVICES WILL MEET YOUR REQUIREMENTS OR THAT THE SERVICES WILL OPERATE IN COMBINATION WITH OTHER SOFTWARE OR SERVICES.

d) The Site may contains links and pointers to the other related World Wide Web Internet sites. Bigdough is not responsible for any content of such Web sites or the privacy or other commercial practices of such Web sites, unless otherwise stated. The links do not imply bigdough's endorsement of, or association with, the linked sites, unless otherwise stated.

5) Limitation of Liability. IN NO EVENT WILL EITHER PARTY BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, INDIRECT, EXEMPLARY, PUNITIVE OR SPECIAL DAMAGES ARISING FROM THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, LOSS OF REVENUE OR ANTICIPATED PROFITS OR BUSINESS OR SALES INTERRUPTION, EVEN IF SUCH PARTY, OR AN AUTHORIZED REPRESENTATIVE THEREOF, HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE PARTIES AGREE THAT EACH PARTY'S MAXIMUM LIABILITY, UNDER ANY THEORY OF LIABILITY, INCLUDING CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE, SHALL BE THE TOTAL AMOUNT OF FEES THAT YOU HAVE PAID TO US UNDER THIS AGREEMENT. THE LIMITATIONS OF LIABILITY SET FORTH IN THIS SECTION SHALL NOT APPLY TO: (A) LICENSOR'S INDEMNIFICATION OBLIGATIONS, (B) BREACH BY LICENSOR OF ITS CONFIDENTIALITY OBLIGATIONS, AND (C) GROSS NEGLIGENCE AND WILLFUL MISCONDUCT OF LICENSOR.

6) Fees

a) Payment of fees is due upon thirty (30) days of Licensee's receipt of invoice, except for disputed amounts. Failure to pay undisputed fees when due may result in revocation of this License pursuant to Section 7. Invoices shall be sent to Licensee at the following address: Lehman Brothers Inc., 101 Hudson Street, 29th Floor, Jersey City, NJ 07302, Attn: Expense Control Division.

b) Licensee shall have the sole option of renewing this Agreement for additional one-year periods upon the expiration of the initial term at a price not to exceed the lesser of (a) 105% of the applicable fee (per user, as applicable) for substantially the same Service(s) for the during the immediately preceding twelve (12) month period or (b) the fee for the immediately preceding twelve (12) month period adjusted for any increase in the Consumer Price Index during such period. For purposes of this Section, "Consumer Price Index" means Consumer Price Index for All Items, U.S. City Average, All Urban Consumers (base year 1982-1984=100), published by the United States Bureau of Labor Statistic of the U.S. Department of Labor.

c) Licensor warrants and represents that, as of the effective date of this Agreement, the discount or prices with respect to the products and/or services provided pursuant to this Agreement are comparable to or better than the discount or prices offered prior to and as of the effective date by Licensor to any of its commercial customers who are similarly situated to Licensee with respect to similar products and/or services.

7) Term and Termination.

a) The term of this Agreement is specified in Exhibit A. Not more than one hundred and twenty (120) days and not less than ninety (90) days prior to the expiration of the then current term, Licensor shall notify Licensee in writing as to the upcoming expiration. Licensee shall have the option of renewing this Agreement by providing a written renewal notice to Licensor; provided, however, that Licensee shall be entitled to renew this Agreement regardless of whether or not Licensor has provided timely notice in accordance with this paragraph.

b) In the event of any material breach of this Agreement by either party, the non-defaulting party may (reserving cumulatively all other remedies and rights under this Agreement, in law and in equity) terminate this Agreement, in whole or in part, by giving sixty (60) days' prior written notice thereof, provided, however, that this Agreement shall not terminate at the end of said sixty (60) day notice period if the party in breach has cured the breach of which it has been notified prior to the expiration of said sixty (60) days. For the purposes of this Agreement, either party shall be deemed to be in material breach of this Agreement in circumstances including but not limited to where such party (i) is liquidated, dissolved, or adjudged to be in a state of bankruptcy or receivership, (ii) is insolvent, unable to pay its debts as they become due, or makes an assignment to or for the benefit of its creditors, or (iii) ceases to conduct business for any reason on an on-going basis leaving no successor in interest.

c) Upon expiration or termination of your license, you agree that your access to the Database will be automatically terminated, and you agree to return, destroy or delete any printouts or downloads of Database information and any compilations or other documents containing Database information.

d) Sections 4, 7, 9, 11 and 13 shall survive the expiration or earlier termination of this Agreement.

8) Governing Law. This Agreement is governed by the laws of the State of New York, as an agreement entered into and performed in New York. We both agree that any action to enforce this Agreement may only be brought in a state or federal court in New York, and we both submit to the personal jurisdiction of those courts and waive the right to claim that jurisdiction is inconvenient.

9) Indemnification.

a) Licensor warrants and represents that any information contained in the Database will not violate any patent, copyright, trade secret, trademark, trade dress, or other intellectual property right of any third party. Within ten days after the date of Licensor's receipt of a notice from Licensee that a written claim has been made by a third party against Licensee asserting that the information contained in the Database infringes on, violates or misappropriates the patent, copyright, trade secret, trademark or other intellectual property rights of such third party, Licensor shall notify Licensee of Licensor's election, at its own discretion and expense, to either: (a) procure for Licensee the right to continue using the Database, (b) modify the Database to make it non-infringing, or (c) refund any previously paid but unearned portions of the annual license fee for the Database (the cutoff date for determining the refund shall be the date that Licensor receives a copy of Licensee's infringement claim notice). Licensor shall complete the remedy it has elected within thirty days after the date of its notice to Licensee indicating its election of one of the foregoing exclusive remedies. Licensor shall indemnify Licensee, its affiliates and their respective successors, assigns, officers, directors and employees (collectively, "Indemnitees") against and hold harmless from, damage, loss, liability, costs and expenses of any kind (including reasonable attorneys' fees) (collectively, "Loss") relating to or arising out of any claim that the Services or the information contained in the Database infringes on, violates or misappropriates any U.S. patent, copyright, trade secret, trademark or other intellectual property right of any other entity. Licensee agrees to notify Licensor promptly in writing of such claim, provided, however, that no failure to so notify Licensor shall relieve Licensor of its obligations under this Agreement except to the extent that it can demonstrate damages directly attributable to such failure. Licensor shall have the option to control the conduct of the claim, and Licensee shall reasonably cooperate in the conduct of such claim at the expense of Licensor. Licensee may, if it wishes and at its own expense, retain counsel to participate in the claim, and in such event Licensor and its counsel shall reasonably cooperate with Licensee and its counsel. In no event, however, may Licensor agree to any settlement of any claim or action for which it has agreed to provide indemnification under this Agreement, where such settlement would adversely affect the Services or the rights of Licensee under this Agreement, or otherwise bind Licensee, without its prior written consent. THE FOREGOING STATES THE ENTIRE LIABILITY OF LICENSOR FOR PATENT, COPYRIGHT, TRADEMARK OR OTHER INTELLECTUAL PROPERTY RIGHTS INFRINGEMENT BY ANY PRODUCT OR SERVICE FURNISHED UNDER THIS AGREEMENT.

b) Licensor assumes sole and full responsibility for the acts of its personnel and shall indemnify and save harmless

Indemnitees from Loss with respect to any and all claims on account of any act or lack of action on the part of Licensor or its personnel, including but not limited to any Loss resulting from breach of any duty or theft of material or services by any such person; provided however, that Licensor's obligation to indemnify shall not apply to any loss or liability caused solely by the misconduct or negligence of Indemnitee's employees or of other individuals not directly employed or engaged by Licensor. Licensor agrees and represents that it is an independent contractor and its personnel are not Licensee's agents or employees for federal, state, and local tax purposes or any other purposes whatsoever, and are not entitled to any Licensee employee benefits. Licensor shall indemnify and hold harmless Indemnitees from Loss relating to or arising out of any assertion that Indemnitees should be deemed the "employer" or "joint employer" of any of the individuals performing services under this Agreement. Licensor represents that each of its personnel providing services under this Agreement is an employee of Licensor and that Licensor will withhold and pay all applicable income and payroll taxes with respect to such personnel. Licensor, and not Licensee, is solely responsible for the compensation of personnel assigned to perform services hereunder, and payment of workers' compensation, disability and other similar benefits, unemployment and other similar insurance, for withholding income and payroll taxes and for verifying the work eligibility of each person performing services hereunder, including the completion and maintenance of Form I-9. Licensor will comply with all applicable requirements of Executive Order 11246, the Vietnam Veterans' Readjustment Assistance Act of 1974, as amended, the Rehabilitation Act of 1973, as amended, and the applicable implementing regulations and reporting requirements under each of the foregoing, each of which is incorporated herein by reference.

c) Licensor shall defend, indemnify and hold harmless Indemnitees from Loss incurred by or asserted against such Indemnitees and arising from physical injury to persons or property caused by the fault or negligence of Licensor's officers, employees, agents or representatives.

10) Insurance. Licensor agrees to obtain and maintain and keep in full force and effect at Licensor's expense statutory workers' compensation, disability, unemployment insurance and the like for those of its employees performing services under this Agreement. In addition, Licensor agrees to obtain and maintain professional, commercial general and business auto liability and excess and umbrella insurance.

11) Confidentiality.

a) "Confidential Information" means any non-public information obtained by a party to this Agreement (the "Receiving Party") as a result of this Agreement which relates to the past, present or future business activities of the other party (the "Disclosing Party"), its subsidiaries and affiliates or their respective employees, customers or third party contractors, including (i) any information relating to the plans, pricing, methods, methodologies, processes, financial data, lists, customer information, apparatus, statistics, programs, research, development, information technology or related information and (ii) any personal contact information collected from your users during the registration process.

b) Confidential Information shall not include information that is (i) previously known to the Receiving Party, free from any obligation to keep it confidential as demonstrated by its written records maintained in the ordinary course of business or actual prior use, (ii) publicly disclosed by the Disclosing Party either prior to or subsequent to the receipt by the Receiving Party of such information, (iii) independently developed by the Receiving Party without any access to the Confidential Information of the other, (iv) rightfully obtained from a third party lawfully in possession of the Confidential Information who is not under confidentiality obligations to the Disclosing Party, or (v) required to be disclosed under applicable law, rule or order; provided the Receiving Party, where reasonably practicable and to the extent legally permissible, provides the Disclosing Party with prior written notice of the required disclosure. The Receiving Party shall hold all the Disclosing Party's Confidential Information in trust and confidence for the Disclosing Party, its subsidiaries and affiliates. Except as may be authorized by the Disclosing Party in writing, the Receiving Party shall not disclose to any person, firm or enterprise, or use for its own benefit, any such Confidential Information, and even when so authorized by the Disclosing Party, the Receiving Party shall limit access and disclosure to the Receiving Party's personnel on a "need to know" basis only. Licensor agrees that Licensee may disclose Confidential Information to consultants performing services for Licensee's benefit, provided that such consultants are bound by non-disclosure obligations consistent with this Agreement.

c) Each party further acknowledges and agrees that, in the event of a breach or threatened breach by it of the provisions of this Section, the Disclosing Party may have no adequate remedy in money or damages and, accordingly, may be entitled to an injunction against such breach. However, no specification in this Agreement of a specific legal or equitable remedy shall be construed as a waiver or prohibition against any other legal or equitable remedies in the event of a breach of a provision of this Agreement.

12) Security. Licensor shall maintain for the term of this Agreement sufficient physical and electronic security procedures (which procedures may be revised from time to time) to safeguard Licensee's data and shall ensure that the Database and Licensee's computer stored data transmitted over the network are protected from unauthorized access and disclosure.

13) No Publicity. Licensor shall not use the name or marks, refer to, or identify "Lehman Brothers" or any Licensee entity in publicity releases, promotional or marketing materials, announcements, customer listings, testimonials, or advertising.

14) Miscellaneous.

a) This Agreement constitutes the entire agreement between you and the Licensor and supercedes any term or representation in all other documents. This Agreement may only be amended in a writing designated as such and signed by both parties.

b) You agree that during the term of this Agreement and until one (1) year after termination or expiration, Licensor, at its discretion, may request documentation from you or enter your premises to perform reasonable audit and inspection procedures to confirm that you are in compliance with the terms and conditions of this Agreement; provided, however, that such audits occur no more often than once annually, are upon reasonable notice, are at Licensor's sole expense, and are on dates and at times mutually agreed by the parties during Licensee's regular business hours. The auditors shall protect Licensee's Confidential Information, abide by Licensee's reasonable security regulations and conduct the audit in manner that causes a minimum of disruption to Licensee's business.

c) If any provision of this Agreement is held unenforceable or invalid, the remaining provisions shall nevertheless be binding upon the respective parties hereto with the same effect as though the invalid or unenforceable provision was deleted.

d) No delay by either party in the enforcement of, or failure to enforce, any provision or right hereunder shall operate as a waiver of such right.

e) Neither this Agreement nor any part hereof may be assigned (whether by operation of law or otherwise) by either party without the other party's prior written consent and any such assignment shall be void. Notwithstanding the foregoing, Licensee may assign this Agreement and any of its rights and/or obligations hereunder upon written notice to Licensor, to any of its affiliated companies or to an entity with or into which it is merged or consolidated, or to which it sells all or substantially all its capital stock or assets, without the consent of Licensor. This Agreement shall be binding upon the parties' respective successors and assigns.

f) Neither party to this Agreement shall be liable for delays caused by an event of natural disaster, casualty, acts of God, riots, governmental acts or such other event of similar nature that is beyond the delaying party's control; provided however that such party shall not have contributed in any way to such event. Licensor shall maintain commercially reasonable disaster recover measures to cure such an event; provided, however that if such event continues beyond ten (10) calendar days, Licensee shall nonetheless have the right to terminate this Agreement with no further liability.

g) All notices relating to this Agreement shall be in writing and delivered personally, by overnight delivery service or first class prepaid mail with return receipt requested, (a) in the case of Licensor, to the address set forth above and (b) in the case of Licensee, to Lehman Brothers Inc., 399 Park Avenue, New York, New York 10022, Attention: Global Purchasing Manager, with a copy to the attention of General Counsel.

h) The headings in this Agreement are for purposes of reference only and shall not in any way limit or affect the meaning or interpretation of any of the terms hereof.

bigdough.com
User Access and License Agreement

**EXHIBIT A**

| | |
|---|---|
| **Contract Start & Expiration Dates** | Contract Begins: February 5, 2002<br><br>Contracts Ends: February 5, 2003 |
| **Permitted Users**<br><br>**15 ONLY** | Licenses to be used in the following departments: E-commerce Initiatives, Equity Derivative Sales, Equity Soft Dollar Sales, Institutional Equity Sales, Private Client Services and Market Data Services. Individual user names to be supplied by Lehman Brothers. Users may be changed from time to time by licensee. |
| **Payment Terms** | $37,500 |
| **Additional Provisions** | 1. PASSWORDS MAY NOT BE SHARED, EXCEPT AS SPECIFICALLY APPROVED BY BIGDOUGH.<br>2. Additional users in the above-listed departments may be added for $750, pro rated, at any time during the term of this license.<br>3. The additional licenses will be added only according to procedures approved by Lehman.<br>4. Includes training as needed, 24/7 customer service, and all bigdough data sets.<br>5. Licensor and licensee acknowledge that more than 600 persons work in the six Lehman departments listed, and that there is potential for sharing which is in violation of this agreement. Licensor and licensee will use their best efforts to assure that such sharing does not take place and that licenses are used only by those persons to whom assigned. |

ACCEPTED AND AGREED:

bigdough.com Inc

By: [signature]
Name: Michael McGahey
Title: Vice President / CFO
Date: 2/5/02

Licensee: Lehman Brothers Inc.

By: [signature]
Name: Tony Johnson
Title: VP Global Marketing
Date: 2/1/02