# EXHIBIT "A"

## MASTER AGREEMENT FOR SERVICES

Vendor (Name and Address):   The Locator Services Group Ltd.
316 Newbury Street, Boston MA 02115

Tax ID: 04-323-9149
Telephone #: 617 859-0600
Fax #:  617 859-0640

Effective Date: November 17, 2003

This Master Agreement for Services ("Agreement") is made as of the Effective Date specified above between Lehman Brothers Inc., with an office at 745 Seventh Avenue, New York, New York 10019 (together with its affiliates, "Lehman"), and the Vendor specified above.

1. <u>Scope of Services</u>: Vendor agrees to provide, under the terms and conditions of this Agreement, the mutually agreed upon services (the "Services") which are described herein and on attachments to this Agreement, which are substantially in the form of the attached <u>Exhibit 1</u> hereto (each a "Schedule"). The Services shall at a minimum consist of the following: Vendor shall pursue the identification and location of assets legally and beneficially belonging to Lehman and affect the recovery of these assets. Vendor shall have no authority to bind Lehman by any promise or representation without Lehman's prior written consent (each, a "Letter of Authorization"). All decisions with respect to whether Vendor shall pursue the recovery of such assets and each specific manner thereof shall be made by Lehman in writing its sole discretion. In the event Lehman elects to pursue recovery of any assets, a Limited Power of Attorney form, (in the form attached hereto as <u>Exhibit 2</u>) shall be required to be signed by Lehman, and notarized for each specific asset prior to commencement of any recovery efforts by Vendor. Lehman shall not be responsible for any actions take by Vendor. Any Letter of Authorization or Limited Power of Attorney by Lehman shall be revocable at will by Lehman at anytime.

2. <u>Schedules</u>:  Schedules should be consecutively numbered for identification and once signed by both parties will be incorporated into and form a part of this Agreement. If there is a conflict between this Agreement and any Schedule, the terms of the Schedule will govern the provision of the Services involved. Each Schedule should include a full and complete description of the Services to be performed, the deliverables, documentation or other materials to be produced (the "Deliverables"), the schedule for completion of each of the foregoing, the applicable fixed price or time and materials charges, and such additional information as the parties agree upon.

3. <u>Work Policy/Personnel</u>:

For each Schedule, each party will designate a Project Manager ("Project Manager") as the main interface between them. The scope and specific conduct of Vendor's Services must be coordinated with Lehman's Project Manager at all times. Vendor will ensure the continuity of Vendor's employees and any other individual expected to assist in the performance of Services or expected to work on Lehman premises ("Assigned Contractor"). Vendor agrees and represents that it is an independent contractor and its personnel (including any Assigned Contractor) are not Lehman's agents or employees for federal, state and local tax purposes or any other purposes whatsoever, and are not entitled to any compensation from Lehman or any Lehman employee benefits. Vendor acknowledges and agrees that its personnel (including any Assigned Contractor) are solely employees of Vendor. Vendor assumes sole and full responsibility for the acts of its personnel and shall indemnify and save harmless Lehman, Lehman's affiliates and their successors, officers, directors and employees ("Indemnitees") from loss, liability costs and expenses (including reasonable attorneys' fees) with respect to any and all claims on account of any act or lack of action on the part of Vendor or its personnel, including but not limited to any liability or damages resulting from breach of any duty or theft of material or Services by any such person, provided however, that Vendor's obligation to indemnify shall not apply to any loss or liability caused solely by the misconduct or negligence of Lehman's employees or of other individuals not directly employed or engaged by Vendor. Notwithstanding the foregoing, Vendor shall indemnify and hold harmless Indemnitees with respect to claim, loss or liability of any kind (including reasonable attorneys' fees) relating to or arising out of (i) Vendor's actions as an employer of its personnel (including any Assigned Contractor), (ii) any assertion that Indemnitees should be deemed the "employer" or "joint employer" of any of Vendor's personnel (including any Assigned Contractor), or (iii) any claim arising from Vendor's failure to comply with applicable laws. Vendor and its personnel have no authority to make commitments or enter into contracts on behalf of, bind or otherwise obligate Lehman in any manner whatsoever. Vendor, and not Lehman, is solely responsible for the compensation of personnel assigned to perform Services hereunder, and payment of

1

workers' compensation, disability and other similar benefits, unemployment and other similar insurance, for withholding income and payroll taxes and for verifying the work eligibility of each Assigned Contractor, including the completion and maintenance of Form I-9 (for purposes of determining authorization to work in the United States). Vendor will comply with all applicable employment laws and will further comply with the requirements of Executive Order 11246, the Vietnam Veterans' Readjustment Assistance Act of 1974, as amended, the Rehabilitation Act of 1973, as amended, and the applicable implementing regulations and reporting requirements under each of the foregoing, each of which are incorporated herein by reference.

4.   Acceptance: Each Deliverable shall be subject to a verification of acceptability by Lehman ("Acceptance") to ensure that such deliverable satisfies Lehman's requirements. Unless otherwise specified on the Schedule, the acceptability of any Deliverable will be based on Lehman's satisfaction or non-satisfaction with the Deliverable, in Lehman's sole discretion. If any deliverable is not acceptable, Lehman shall notify Consultant specifying its reasons in reasonable detail. If within thirty (30) days of such Lehman notification, any deliverable is still not acceptable, Lehman may at any time thereafter, at its option and without obligation or liability of any kind, terminate the Schedule involved.

5.   Indemnification:   Vendor will defend, indemnify and hold harmless Lehman Brothers, its affiliates and their respective successors, assigns, officers, directors and employees from and against any and all claims, actions, damage, loss, liability, costs and expenses of any kind (including reasonable attorneys' fees) arising out of any Services provided by Vendor pursuant to this Agreement.

6.   Pricing and Terms of Payment:

The applicable fees will be specified on the Schedule. Vendor will invoice Lehman for applicable fees upon Lehman's Acceptance of Services and receipt of recovered assets. All invoices, except amounts disputed by Lehman, shall be payable within thirty (30) days of receipt. Vendor agrees to pay all expenses it incurs which are necessary in the recovery of theses assets; provided however:

(a) If any asset to be recovered requires a bond to be issued and Lehman decides and instructs the Vendor in writing to post such bond, the cost of the bond will be shared by both the Vendor and Lehman

(b) Should it be necessary to undertake outside legal counsel to perfect and collect on a claim for Lehman, the final approval to use outside legal counsel lies with Lehman. Legal fees for outside counsel will be shared by the Vendor (20%) and Lehman (80%). Should the asset not be recovered, the Vendor will not be compensated for its legal fee expenses nor will it be responsible for the legal fee expenses incurred by Lehman.

If Lehman, for whatever reason, has to give up any of its moneys, in whole or in part, recovered by Vendor, Vendor will return any fees it has received from Lehman for the claim. If the third party claims any appreciation on the moneys returned and if mutually agreed between Vendor and Lehman that this appreciation is appropriate, Vendor will return its prorated share of appreciation if its is paid to the third party.

7.   Warranties: Vendor warrants that:  (a) it has the authority to enter into this Agreement and perform Services and provide materials, information and Deliverables hereunder and that its obligations hereunder are not in conflict with any other Vendor obligations; (b) each of its employees has the proper skill, training and background necessary to accomplish their assigned tasks;  (c) all Services will be performed in a high quality, professional manner by qualified personnel, and are and at all times will be, with respect to quality, timeliness and qualification of personnel performing the Services, comparable to or better than services offered by Vendor to any of its commercial customers who are similarly situated to Lehman Brothers with respect to types and volumes of services purchased; (d) neither any Deliverables, nor the performance of any Services do or will violate, infringe or misappropriate any patent, published patent application, copyright, trademark, service mark, trade secret or other intellectual property or industrial property rights of any third party or the laws or regulations of any governmental or judicial authority and Lehman shall receive free and clear title to all works, materials, information and Deliverables prepared and/or developed in connection with this Agreement; (e) Lehman shall have the right to use for its own purposes, any ideas, methods, techniques, materials and information developed as a result of the Services without

2

restriction, liability or obligation, except as may be specified herein; and (f) at the time of acceptance, each deliverable will conform to its specifications and Lehman's requirements and that for ninety (90) days following Lehman's acceptance, Vendor shall correct and repair, at no cost to Lehman, any defect, malfunction or nonconformity which prevents such deliverable from conforming and performing as warranted.

8.  LIMITATION OF LIABILITY: UNDER NO CIRCUMSTANCES WILL EITHER PARTY BE LIABLE FOR LOST PROFITS OR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OF ANY KIND, HOWSOEVER CAUSED; PROVIDED THAT THE FOREGOING LIMITATION ON LIABILITY WILL NOT APPLY TO (A) VENDOR'S INDEMNIFICATION OBLIGATIONS, (B) LOSS OF OR DAMAGE TO DATA ACCESSIBLE BY THE LICENSED SOFTWARE OR ANY DELIVERABLE CAUSED BY VENDOR OR A FAILURE OF THE LICENSED SOFTWARE OR ANY DELIVERABLE.

9.  Term and Termination: This Agreement shall commence as of the Effective Date above and shall continue in full force and effect thereafter unless and until terminated in accordance with the provisions of this Agreement. Notwithstanding any provision of this Agreement to the contrary, Lehman may terminate this Agreement or any Schedule immediately without written notice. Lehman agrees to pay Vendor for Services performed up to the effective date of termination at the agreed upon rates. In addition to the termination rights set out in this Section, Lehman will be entitled to terminate any Services in accordance with the terms of this Agreement.

10.  Confidential Information:

(a)  "Confidential Information" means any information obtained by Vendor that relates to the past, present or future business activities of Lehman, its subsidiaries and affiliates or their respective employees, customers or third party contractors, including any information relating to the plans, pricing, methods, methodologies, processes, financial data, lists, Intellectual Property Rights, customer information, apparatus, statistics, programs, research, development, information technology, the terms and existence of this Agreement or related information.

(b)  Vendor and its personnel will hold all Confidential Information in confidence for Lehman and, except as set forth in this Agreement or as otherwise may be authorized by Lehman in writing, Vendor will not disclose to any person, firm or enterprise, or use for its own benefit, any Confidential Information. Vendor may disclose Confidential Information to its employees solely as required in order for Vendor to perform its obligations under this Agreement. Vendor may disclose Confidential Information if required to do so under applicable law, rule or order; provided that Vendor, where reasonably practicable and to the extent legally permissible, provides Lehman with prior written notice of the required disclosure so that Lehman may seek a protective order or other appropriate remedy; and provided further that Vendor discloses no more Confidential Information than is reasonably necessary in order to respond to the required disclosure.

(c)  At any time upon the request of Lehman, and in the event of termination of this Agreement, Vendor shall return, or destroy if so directed by Lehman, all Confidential Information, including all copies thereof and notes and other materials incorporating the Confidential Information, whether in physical or electronic form.

(d)  In the event of a breach or threatened breach of the provisions of this Section, Lehman may have no adequate remedy in money or damages and, accordingly, may seek an injunction against such breach.

11.  Insurance: Vendor agrees to obtain and maintain insurance including but not limited to all risk property insurance, fidelity bond/employee dishonesty insurance (including third party liability or client coverage), business auto liability, professional liability, commercial general liability that includes premises operations, product and completed operations, contractual liability and personal and advertising injury coverage, and umbrella liability of an amount as is consistent with Vendor's ordinary course of business. All such insurance shall name Lehman as a Loss Payee or Additional Insured, as appropriate, by endorsement. All insurance shall be maintained with an insurer having a rating of at least "A-" in the most currently available Best's Insurance Reports

12.  GOVERNING LAW & INTERPRETATION: THIS AGREEMENT WILL BE GOVERNED BY AND CONSTRUED UNDER THE LAWS OF THE STATE OF NEW YORK EXCLUDING ITS CONFLICT OF LAWS RULES. THE PARTIES IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE COURTS

OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN, NEW YORK, NEW YORK, AND THE APPELLATE COURTS THEREOF.

13. No Publicity: Vendor will not use the name or marks, refer to, or identify "Lehman Brothers" or any Lehman affiliate in publicity releases, promotional or marketing materials, announcements, customer listings, testimonials, or advertising.

14. Force Majeure: Neither party to this Agreement will be liable for any delay or failure to perform its obligations hereunder caused by an event of natural disaster, casualty, acts of God, riots, terrorism, governmental acts or such other event of similar nature that is beyond the reasonable control of the party seeking to rely on this Section 14 to excuse its delay or failure; provided, however, that such party will not have contributed in any way to such event. Vendor will maintain commercially reasonable disaster recovery measures to prevent or cure the delay or failure. If the delay or failure continues beyond ten (10) calendar days, Lehman may terminate this Agreement in whole or in part with no further liability, and shall receive a pro-rata refund of any prepaid fees unearned as of the time of termination.

15. Assignment: Neither this Agreement nor any part hereof may be assigned (whether by operation of law or otherwise) by either party without the other party's prior written consent and any such assignment will be void. Notwithstanding the foregoing, Lehman may assign this Agreement or any of its rights or obligations hereunder upon written notice to Vendor, to any of its affiliated companies or to an entity with or into which it is merged or consolidated or to which it sells all or substantially all its capital stock or assets. This Agreement will be binding upon the parties' respective successors and assigns. Without limiting the foregoing, Vendor will not subcontract any Services without Lehman's prior written consent. If Lehman consents to subcontracting, Vendor will remain primarily liable for the performance of such obligations, and will be responsible for the acts and omissions of its permitted subcontractors as if such acts and omissions were those of its employees.

16. Notice: All notices relating to this Agreement will be in writing and delivered personally, by overnight delivery Service or first class prepaid mail with return receipt requested to (a) in the case of Vendor, its address as first set forth above and (b) in the case of Lehman, to Director of Global Procurement Services, 745 Seventh Avenue, New York, New York 10019, with a copy marked to the attention of the General Counsel at the same address. Invoices will be sent to: Lehman Brothers Inc., Attention: Expense Control Division, 70 Hudson Street, 10th Floor, Jersey City, New Jersey 07302. Any notice hereunder will be effective upon receipt by the party to which such notice is addressed.

17. Entirety: This Agreement (including Exhibit 1, Exhibit 2 and each Schedule that is executed by the parties in accordance with Section 1, each of which is hereby expressly incorporated by reference herein) is the entire agreement of the parties and supersedes all previous and contemporaneous communications, presentations, proposals, or agreements regarding the subject matter hereof. This Agreement cannot be amended or waived except by a physical writing manually signed by both parties. Terms contained in any documentation that purport to address the legal rights or obligations of the parties or otherwise conflict with this Agreement shall be of no force or effect. All shrink wrap and click wrap licenses that purport to govern the use of any Service or Deliverable provided by Vendor to Lehman pursuant to this Agreement or otherwise shall be void.

18. Waiver; Remedies Non-Exclusive. No failure or delay on the part of any party in exercising any right or remedy provided in this Agreement will operate as a waiver thereof, nor will any single or partial exercise of or failure to exercise any such right or remedy preclude any other or further exercise thereof or the exercise of any other right or remedy provided herein or at law or in equity. Except as expressly provided herein, no remedy specified in this Agreement is intended to be exclusive of any other remedy, and each and every remedy will be cumulative and in addition to every other right or remedy provided herein or available at law or in equity.

19. Enforceability. If any provision of this Agreement is held to be unenforceable, the remaining provisions of this Agreement will be unimpaired and will remain in full force and effect.

20. Counterparts. This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

4

21.    Facsimile Copy.  A facsimile of a signed copy of this Agreement or other copy made by reliable mechanical means may be relied upon as an original. If there is any inconsistency between the facsimile and a subsequently received hard copy, the facsimile will control.

22.    Headings. The headings in this Agreement are for purposes of reference only and will not in any way limit or affect the meaning or interpretation of any of the terms hereof.

23.    Survival. Section 3,, Section 5, Sections 7-13, and Section 16-23 will survive any termination of this Agreement.

The parties have caused this Agreement to be executed by their respective authorized representatives.

The Locator Services Group Ltd.               LEHMAN BROTHERS INC.

By: _____              By: _____

Name: __Kim Souzer__                           Name: __Penny S P Wong__
       (Type or Print)                                  (Type or Print)
Title: __President & General Counsel__   Title: __Vice President__

Date: __11/17/03__                             Date: __11/19/03__

SIGN HERE

5

## ATTACHMENT A TO SCHEDULE

Description of Services and/or Deliverables:

Milestone/Implementation Schedule:

Schedule of Payments (if applicable):

Other Additional Terms and Conditions:

7

## EXHIBIT 2

## LIMITED POWER OF ATTORNEY

KNOWN ALL MEN BY THESE PRESENTS, that Lehman Brothers Inc.

Hereby appoint _____ ("Vendor"") as my lawful attorney-in-fact to seek recovery of the undistributed, unclaimed, or undelivered tenders of funds of:

Lehman Brothers Inc. in the amount of _____,

Held by the United States, by a state, or by any agency or instrumentality of either, hereby revoking all previous powers of attorney in this regard to whomever granted.

I further grant Vendor to do whatever is necessary and proper pursuant to the Master Agreement for Services as fully as I might or could do if personally present hereby confirming all that Vendor shall lawfully do or cause to be done. Nevertheless, Vendor shall have no authority to incur any financial obligation or to make any expenditure on my behalf, other than an expenditure payable from any sums recovered by virtue of Vendor's actions.

In constructing this instrument where the context requires the singular includes the plural. This Power of Attorney and Vendor's authority and entitlement hereunder shall terminate automatically and become null and void upon Lehman's receipt of the funds.

Signed this _____ day of _____, 2003

Affix
Corporate Seal

_____
Signature

Lehman Brothers Inc. Taxpayer ID #_____

State of _____ County of _____, 2003

The above named_____known to me to be the Individual described in [and holding the position designated in] the foregoing instrument, appeared before me and acknowledged the execution therefore to be his/her free act and deed.

Before me:_____
Notary Public

Notary Seal

My commission expires:_____

8

Vendor: The Locator Services Group Ltd.                    Schedule No.: 1

This Schedule is issued pursuant to the Master Agreement for Services between Lehman Brothers Inc. ("Lehman") and the above-named Vendor dated November 17, 2003 (the "Agreement"). Any term not otherwise defined herein shall have the meaning specified in the Agreement.

Engagement Start Date:    11/17/03        End Date:    11/16/04

Lehman Project Manager:                                Bill Wallace

Vendor Project Manager:                                Scott Hefter

**Status Reports:**

    N/A

**Fees:**

    Lehman and Vendor agree that in consideration of Vendor's efforts in both locating the financial assets and in assisting in the recovery of such assets to which Lehman is entitled, Lehman agrees to pay Vendor a fee equal to ten percent (10%) of the value of the assets which Lehman in fact recovers.

See Attachment A for a complete description of the Services and Deliverables, a listing of the documentation to be provided, the milestone or implementation schedule, a schedule of payments applicable to this Schedule and any other applicable information.

| The Locator Services Group Ltd. | LEHMAN BROTHERS INC. |
|---|---|
| By: _____ | By: _____ |
| Name: _____ (Type or Print) | Name: *Penny S.P. Wong* (Type or Print) |
| Title: _King Joy_ | Title: *Vice President* |
| Date: 11/17/03 | Date: 11/19/03 |

SIGN HERE

## ATTACHMENT A TO SCHEDULE NO. 1

Description of Services and/or Deliverables:
As set forth in Section 1 of the Agreement

Milestone/Implementation Schedule:
One Year from November 17, 2003 through November 16, 2004

Schedule of Payments (if applicable):
N/A

Other Additional Terms and Conditions:
N/A

10

-2-

## ATTACHMENT A TO SCHEDULE NO. 2

Description of Services and/or Deliverables:
As set forth in Section 1 of the Agreement


Milestone/Implementation Schedule:
One Year from March 1, 2004 through February 28, 2005


Schedule of Payments (if applicable):
N/A


Other Additional Terms and Conditions:
N/A

# SCHEDULE - III

This Schedule is issued pursuant to the Master Agreement for Services between <u>Lehman Brothers Inc.</u> with an office at 745 Seventh Avenue, New York, NY 10019 ("Lehman") and <u>The Locator Services Group Ltd</u> with a principal place of business at 316 Newbury Street, Boston, MA – 02115 ("Vendor") dated November 17, 2003 (the "Agreement"). Any term not otherwise defined herein shall have the meaning specified in the Agreement.

Lehman Project Manager:  <u>Bill Wallace</u>

**Status Reports:** [Insert Applicable Frequency]
N/A

**Pricing:**
Lehman and Vendor agree that in consideration of Vendor's efforts in both locating the financial assets and in assisting in the recovery of such assets to which Lehman is entitled, Lehman agrees to pay Vendor a fee equal to ten percent (10%) of the value of the assets which Lehman in fact recovers.

**Term:**
The term of this Schedule starts at the point of expiration of Schedule II through December 31, 2007. Regardless the expiration of this Agreement, it is understood that Lehman will pay Vendor its ten percent (10% ) fee of any assets which are identified by Vendor prior to the termination of this Agreement but paid to Lehman subsequent the expiration of this Agreement.

**Description of Services and Deliverables:**
As set forth in Section 1 of the Agreement.

**Milestone/Implementation Schedule (if applicable):**

**Schedule of Payments (if applicable):**
N/A

| The Locator Services Group Ltd | Lehman Brothers Inc. |
|---|---|
| By: _____ | By: _____ |
| Name: <u>Kim Sawyer</u> | Name: Patrick Costel |
| Title: <u>President</u> | Title: Authorized Signatory |
| Date: 6/19/07 | Date: 6-20-2007 |

1

## SCHEDULE - IV

This Schedule is issued pursuant to the Master Agreement for Services between <u>Lehman Brothers Inc.</u> with an office at 745 Seventh Avenue, New York, NY 10019 ("Lehman") and <u>The Locator Services Group Ltd</u> with a principal place of business at 316 Newbury Street, Boston, MA – 02115 ("Vendor") dated November 17, 2003 (the "Agreement"). Any term not otherwise defined herein shall have the meaning specified in the Agreement.

Lehman Project Manager: <u>Bill Wallace</u>

**Status Reports:** [Insert Applicable Frequency]
N/A

**Pricing:**
Lehman and Vendor agree that in consideration of Vendor's efforts in both locating the financial assets and in assisting in the recovery of such assets to which Lehman is entitled, Lehman agrees to pay Vendor a fee equal to ten percent (10%) of the value of the assets which Lehman in fact recovers.

**Term:**
The term of this Schedule starts at the point of expiration of Schedule III through December 31, 2008.
Regardless the expiration of this Agreement, it is understood that Lehman will pay Vendor its ten percent (10%) fee of any assets which are identified by Vendor prior to the termination of this Agreement but paid to Lehman subsequent the expiration of this Agreement.

**Description of Services and Deliverables:**
As set forth in Section 1 of the Agreement. In addition Locator Services Group has the approval under the terms of this contract to search for Neuberger Berman in ALL states.

**Milestone/Implementation Schedule (if applicable):**
N/A

**Schedule of Payments (if applicable):**
N/A

**Other Term:**
Customer (Lehman) may terminate this Schedule without fees owed immediately if Supplier does not pass the background screening investigation conducted by First Advantage.

| **The Locator Services Group Ltd** | **Lehman Brothers Inc.** |
|---|---|
| By: _____ | By: _____ |
| Name: <u>Kim Sawyer</u> | Name: PATRICK COSTER |
| Title: <u>President</u> | Title: **AUTHORIZED SIGNATORY** |
| Date: 11/8/08 | Date: 1·18·2008 |

1