**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 Case No. |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | : | 08-13555 (JMP) |
| | : | |
| | : | (Jointly Administered) |
| Debtors, | : | |
| | : | Related Docket Nos. 107 and 258 |

-----------------------------------------------------------------x

**OBJECTION TO PROPOSED CURE AMOUNT FOR ACCESS DATA CORP. CONTRACTS SUBMITTED IN ACCORDANCE WITH THE PROVISIONS OF THE ORDER UNDER 11 U.S.C. §§ 105(a), 363 AND 365 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 6006 AUTHORIZING AND APPROVING (A) THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF LIENS AND OTHER INTERESTS AND (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Access Data Corp. ("Access Data") files this objection ("Cure Objection") in accordance with the provisions of the Order Under 11 U.S.C. §§ 105(a), 363 and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases (Docket No. 258) ("Sale Order") to the proposed cure amount identified under the Notice of Assumption and Assignment of, and Amounts Necessary to Cure Defaults Under Contracts and Leases to be Assumed and Assigned to Successful Purchaser (Docket No. 107) ("Cure Notice"). In support of the Cure Objection, Access Data states as follows:

1.  On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"). On September 16, 2008, LB 745 LLC ("LB 745") filed a voluntary petition for relief under the Bankruptcy Code. (LBHI and LB 745 are collectively referred to hereinafter as the "Debtors" and the days on which the bankruptcy petitions were filed are collectively referred to as the "Petition Date".)

2.      Prior to the Petition Date, Access Data and LBHI entered into that certain General Terms and Conditions: IT Products and Services effective September 18, 2006 ("Access Data Master Agreement").  Further, prior to the Petition Date, Access Data and LBHI entered into that certain Application Service Provider Supplement effective September 18, 2006 ("Access Data Supplemental Agreement").  Also, prior to the Petition Date, Access Data and LBI entered into that certain Application Service Provider Transaction Schedule ordered on March 12, 2008 and identified as Transaction Schedule No. 3 ("Access Data Transaction Schedule # 3," together with Access Data Master Agreement and Access Data Supplemental Agreement, collectively are the "Access Data Agreements").

3.      On September 17, 2008, the Debtors filed the Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets (Docket No. 60) ("Sale Motion") seeking authority from this Court to sell certain of LBHI's assets together with certain assets of LBHI's wholly-owned subsidiary, Lehman Brothers, Inc. ("LBI"), to Barclays Capital Inc. ("Purchaser").  In connection with the Sale Motion, the Debtors and LBI sought to assume certain contracts and assign the same to the Purchaser.

4.      In the Sale Motion, the Debtors designated certain contracts that the Purchaser 'required' to be assumed and assigned on the proposed closing date of the sale (the "Closing Date Contracts").  See Sale Motion, ¶ 28.  The Access Data Agreements have been designated as Closing Date Contracts.

5.      On September 18, 2008, the Debtors filed and served the Cure Notice.  The Cure Notice provided notice contract parties with a website address (http://chapter11.epiqsystems.com/lehman) that contract parties were required to visit to determine (i) if their contract was being assumed in conjunction with the proposed sale to Purchaser and (ii) the proposed cure amount for contracts designated for assumption and assignment.

6.      The Debtors proposed the cure amount for the Access Data Agreements to be $10,000.

2

7. Originally, per the Cure Notice, contract parties had until September 19, 2008 at 4:00 pm (EST) to object to the proposed cure amount (or parties could do so at the sale hearing scheduled for that time).

8. On September 19, 2008, a hearing on the proposed sale of the Debtors' assets was held. Counsel for Access Data attended. During the hearing it was announced that objections to proposed cure amounts could be filed through October 3, 2008.

9. On September 20, 2008, the Court approved the proposed sale and granted the Sale Motion.

**Objection**

10. As of the date of this filing, Access Data was owed $158,373.81 ("Access Data Cure Amount") as reflected by the unpaid invoices attached hereto as Exhibit "A." The Debtors' proposed cure claim amount of $10,000, which the Debtors have associated with the Access Data Agreements, is incorrect. In accordance with section 365(b)(1)(A), the cure claim to be paid in conjunction with the assumption of Access Data Agreements is $158,373.81.

11. Section 365 of the Bankruptcy Code, 11 U.S.C. § 365, provides, in pertinent part:

> (b)(1) If there has been a default in an executory contract or unexpired lease . . . of the debtor, the trustee may not assume such contract . . . unless, at the time of assumption of such contract, the trustee
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . .

11 U.S.C. § 365(b)(1)(A).

12. Access Data has continued to perform its obligations under the Access Data Agreements on a post-petition basis and charges and expenses associated with such performance continue to accrue. For instance, a milestone payment of $30,650 for services provided under the Access Data Agreements is due on October 9, 2008 for services provided. Access Data believes the sale approved by this Court in the Sale Order has closed, however, to the extent it has not closed the Access Data Cure Amount may increase by $30,650 on October 9, 2008 (if this amount is not paid). To that end, Access Data reserves

3

the right to amend this Cure Objection and/or the Access Data Cure Amount to the extent that Access Data determines, *inter alia*, that any other or additional cure amounts are due and/or additional cure obligations arise after the date of filing this Cure Objection.

WHEREFORE, Access Data Corp. respectfully requests that this Court enter an order (a) requiring the Debtors (or, if applicable, the Purchaser) to immediately pay the Access Data Cure Amount and (b) granting such further relief as this Court deems just and proper.

Dated:  October 3, 2008    McGUIREWOODS LLP

_/s/ Michael J. Roeschenthaler__
Michael J. Roeschenthaler (admitted *pro hac vice*)
William C. Price (*pro hac vice* application pending)
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222
Tel: 412-667-6000
mroeschenthaler@mcguirewoods.com
wprice@mcguirewoods.com

*Counsel for Access Data Corp.*

\6612088.3