ISRAEL GOLDOWITZ
Chief Counsel
KAREN L. MORRIS
Deputy Chief Counsel
STEPHANIE THOMAS
Assistant Chief Counsel
SARA B. EAGLE
COLIN B. ALBAUGH (*Pro Hac Vice*)
Attorneys
PENSION BENEFIT GUARANTY
  CORPORATION
Office of the Chief Counsel
1200 K Street, N.W.
Washington, D.C.  20005-4026
Ph: (202) 326-4020, extension 3176
Fax: (202) 326-4112

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., et al., | Case No. 08-13555 (JMP) |
| | Jointly Administered |
| Debtors. | |

**LIMITED OBJECTION OF THE PENSION BENEFIT GUARANTY CORPORATION TO DEBTOR'S MOTION FOR ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTIONS 363 AND 364 OF BANKRUPTCY CODE, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS TO POSTPETITION LENDERS PURSUANT TO SECTION 364 OF BANKRUPTCY CODE, AND (III) SCHEDULING FINAL HEARING**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

   The Pension Benefit Guaranty Corporation ("PBGC") files this limited objection to the

motion of Lehman Brothers Holdings Inc. ("LBHI") (collectively with LBHI's debtor affiliates,

"Debtors") for an Order: (I) Authorizing Debtor To Obtain Postpetition Financing Pursuant To

Sections 363 and 364 Of Bankruptcy Code, (II) Granting Liens and Superpriority Claims To Postpetition Lenders Pursuant To Section 364 Of Bankruptcy Code, and (III) Scheduling Final Hearing.  LBHI seeks final authority to enter into a Senior Secured Superpriority Debtor in Possession Credit Agreement ("DIP Facility") with Barclays Bank PLC and Barclays Capital Inc. (collectively "Barclays").  The DIP Facility suggests that LBHI may intend to upstream proceeds from the sale of nondebtor Subsidiary[1] assets with no provision for the prior satisfaction of statutory pension liabilities arising against those nondebtor assets, thus inappropriately elevating its equity rights above the superior rights of the Subsidiary's creditors.

## BACKGROUND

1.	PBGC is the United States government agency created to administer the defined benefit pension plan termination insurance program under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), <u>as</u> <u>amended</u>, 29 U.S.C. §§ 1301-1461 (2000 & Supp. V 2005).  The termination insurance program covers more than 44 million workers participating in over 35,000 private sector defined benefit pension plans.

2.	PBGC invariably is appointed statutory trustee of terminated, underfunded pension plans.  The agency is responsible for paying a terminated plan's benefits, subject to statutory limitations.[2]

3.	The sponsor of a PBGC-covered plan that is terminated and every other member of that sponsor's controlled group, as defined in 29 U.S.C. § 1301(a)(14), are jointly and

---

[1] Herein, "Subsidiary" and "Subsidiaries" are defined as they are in the Senior Secured Superpriority Debtor-in-Possession Credit Agreement filed by the Debtors.

[2] 29 U.S.C. §§ 1322, 1342, 1361.

2

severally liable for the total shortfall between the plan's assets and promised benefits as of the plan's termination date (Unfunded Benefit Liability "UBL").[3] Regardless of whether a plan terminates, those parties are also jointly and severally liable for minimum funding contributions owed to the plan and insurance premiums owed to PBGC.[4] PBGC routinely files and pursues joint and several claims for UBL, minimum funding contributions, and premiums in the bankruptcy cases of plan sponsors and their controlled group members.[5]

### FACTS

4.    LBHI sponsors and administers the Lehman Brothers Holdings Inc. Retirement Plan ("Pension Plan"), a defined benefit plan covered by Title IV of ERISA. LBHI and all members of its controlled group are responsible for the Pension Plan. All of the Debtors and many, if not all, of the Subsidiaries are members of LBHI's controlled group.

5.    To date, the Debtors have not stated their intentions regarding the Pension Plan. They have not identified any entity that will assume sponsorship of the Pension Plan once LBHI liquidates its assets. Debtors also have not indicated whether they intend to use the proceeds of the assets sales of nondebtor Subsidiaries to fund the Pension Plan in the amount necessary to meet the criteria for a standard termination.

6.    PBGC estimates that the Pension Plan is underfunded on a termination basis by $72,500,000. If the Plan is not funded for a standard termination, upon termination and

---

[3] 29 U.S.C. §§ 1301(a)(18), 1362(b).

[4] See 26 U.S.C. § 412(c)(11); 29 U.S.C. §§ 1082(c)(11), 1307.

[5] See generally 29 U.S.C. §§ 1342(d), 1362(c).

trusteeship by PBGC, the Debtors' controlled group members, including the nondebtor Subsidiaries, will be jointly and severally liable for that underfunding.

7. With its motion, LBHI seeks final approval to enter the DIP Facility and borrow up to $450 million in senior secured debtor-in-possession financing from Barclays. The DIP Facility includes a term loan facility of $250 million and a revolving loan facility of $200 million.

8. Section 2.17(a) of the DIP Facility requires that LBHI prepay to Barclays an amount equal to the "Net Asset Sale Proceeds" following the receipt of proceeds from an asset sale by LBHI's Subsidiaries. "Net Asset Sale Proceeds" is defined under the DIP to include proceeds from an asset sale by LBHI's Subsidiaries less certain costs, including: taxes on the sale; "payment of the outstanding principal amount of, premium or penalty, if any, and interest" for any "Indebtedness" that must be repaid due to the Subsidiary's asset sale; and certain indemnifications resulting from the asset sale. The DIP Facility further defines "Indebtedness" to include, *inter alia*:

> [A]ny obligation owed for all or any part of the deferred purchase price of property or services (excluding any such obligations incurred under ERISA), which purchase price is (a) due more than six months from the date of incurrence of the obligation in respect thereof or (b) evidenced by a note or similar written instrument. (emphasis added).

## ARGUMENT

PBGC objects to the proposed DIP Facility's treatment of proceeds from asset sales by LBHI's nondebtor Subsidiaries. It is well settled that upon an entity's liquidation, its creditors

must be paid in full prior to the payment of shareholders.  See, e.g., DEL. CODE ANN. tit. 8 § 278 (providing that upon winding-up their affairs, corporations are to "discharge their liabilities and to distribute to shareholders any remaining proceeds."); N.Y. BUS. CORP. LAW § 1005 (providing that after payment of liabilities, a dissolved corporation can distribute any remaining assets to shareholders).  It is also well settled that the Debtors and each of their Subsidiaries are jointly and severally liable for the Pension Plan-related claims that PBGC and the Pension Plan will have upon a termination of the Pension Plan.  See Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 142, 144 (2d Cir. 1992) (in approving sale of controlled group member's business and escrow of sale proceeds, Second Circuit recognized joint and several nature of PBGC's claims).

Only LBHI is liable to Barclays under the DIP Facility.  Barclays has no direct claim to the assets of the nondebtor Subidiaries, but can only access such proceeds to the extent that LBHI can establish a claim to the proceeds as equity holder of the Subsidiary.  The joint and several claims of the PBGC and the Pension Plan – as creditors – are superior to any equity interests of LBHI.

Section 2.17 of the DIP Facility requires LBHI to make prepayments to Barclays upon the occurrence of specified events.  Importantly, Section 2.17(a) of the DIP Facility requires that LBHI prepay to Barclays an amount equal to the "Net Asset Sale Proceeds" following the receipt of proceeds from an asset sale by LBHI or LBHI's Subsidiaries.

The DIP Facility does not appear to provide for the payment to Barclays of the actual net proceeds of the asset sales of any Subsidiary, but rather an amount "equal to" the net proceeds. Indeed, LBHI **cannot** use the proceeds of Subsidiary asset sales until after all the Subsidiary's

5

creditors are paid. See Regency Holdings (Cayman), Inc. v. Microcap Fund, Inc. (In re Regency Holdings (Cayman), Inc.), 216 B.R. 371, 375 (Bankr. S.D.N.Y. 1998) ("The parent's ownership of all of the shares of the subsidiary does not make the subsidiary's assets the parent's.").

In the event that LBHI does mean to upstream as equity the actual Net Asset Sale Proceeds from the sales of Subsidiaries to prepay the DIP lending, it violates the rights of PBGC and the Pension Plan as creditors of the Subsidiaries. The DIP Facility's definition of "Indebtedness," although less than clear, appears to disregard the statutorily required payment of the nondebtor Subsidiaries' Pension Plan-related liabilities, allowing the upstreaming of asset sale proceeds through LBHI to Barclays, without paying the superior claims of all creditors of the nondebtor Subsidiaries. The DIP Facility thereby circumvents the rights of PBGC and the Pension Plan against the nondebtor Subsidiaries.

Thus far, the Debtors have failed to provide for the continuation or the termination of the Pension Plan, leaving it in limbo while the DIP Facility apparently guts the Pension Plan's and PBGC's joint and several claims against the non-debtor Subsidiaries, leaving only empty shells against which to ultimately collect any pension related liabilities. To avoid unfairly prejudicing PBGC and the Pension Plan, the Court should modify the DIP Facility to require that sale proceeds from an asset sale of any of LBHI's Subsidiaries, rather than being immediately upstreamed to LBHI for payment to Barclays, be held in escrow until LBHI provides for the assumption or standard termination of the Pension Plan, or satisfaction of termination-related pension liabilities.

## CONCLUSION

For the foregoing reasons, PBGC objects to the DIP Facility on the limited grounds stated herein, and respectfully asks the Court to modify the DIP Facility to include provisions for payment of Pension Plan liabilities from nondebtor Subsidiary asset sale proceeds prior to any payment to LBHI or Barclays.

Dated: Washington, D.C.  
      October 3, 2008

Respectfully submitted,

  /s/ Colin B. Albaugh
ISRAEL GOLDOWITZ
Chiefl Counsel
KAREN L. MORRIS
Deputy Chief Counsel
STEPHANIE THOMAS
Assistant Chief Counsel
SARA EAGLE
COLIN B. ALBAUGH (*Pro Hac Vice*)
Attorneys
PENSION BENEFIT GUARANTY
  CORPORATION
Office of the Chief Counsel
1200 K Street, N.W.
Washington, D.C. 20005-4026
Ph: (202) 326-4020, extension 3176
Fax: (202) 326-4112
Emails: albaugh.colin@pbgc.gov
        efile@pbgc.gov

Attorneys for the Pension Benefit Guaranty
  Corporation

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Limited Objection of the Pension Benefit Guaranty Corporation to Debtors's Motion For Order: (I) Authorizing Debtor To Obtain Postpetition Financing Pursuant To Sections 363 and 364 Of Bankruptcy Code, (II) Granting Liens And Superpriority Claims To Postpetition Lenders Pursuant To Section 364 Of Bankruptcy Code, and (III) Scheduling Final Hearing was served electronically and/or by first class mail this 3rd day of October 2008, on the following:

The Honorable James M. Peck
United States Bankruptcy Court
 for the Southern District of New York
One Bowling Green
New York, N.Y. 10004
Courtroom 601

Richard P. Krasnow, Esq.
Lori R. Fife, Esq.
Shai Y. Waisman, Esq.
Jacqueline Marcus, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Andy Velez-Rivera, Esq.
Paul Swartzberg, Esq.
Brian Masumota, Esq.
Linda Riffkin, Esq.
Tracy Hope Davis, Esq.
Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004

Dennis F. Dunne, Esq.
Dennis O'Donnell, Esq.
Evan Fleck, Esq.
Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, NY 10005

Lindsee P. Granfield, Esq.
Lisa Schweiger, Esq.
Cleary Gottlieb LLP
One Liberty Plaza
New York, NY 10006

Robinson B. Lacy, Esq.
Hydee R. Feldsteen, Esq.
Sullivan & Cromwell, LLP
125 Broad Street
New York, NY 10004

/s/ Colin B. Albaugh
Colin B. Albaugh (*Pro Hac Vice*)
Attorney for the Pension Benefit Guaranty
 Corporation