Objection Deadline: October 3, 2008 at 4:00 p.m.

Shelley C. Chapman
Thomas H. Golden
Shaunna D. Jones
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

Attorneys for Bloomberg L.P.,
Bloomberg Finance L.P. and their Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

――――――――――――――――――――――――――

| | |
|---|---|
| **In re** | Chapter 11 |
| **LEHMAN BROTHERS HOLDINGS INC., <u>et al.</u>** | Case No. 08-13555 (JPM) |
| **Debtors.** | (Jointly Administered) |

――――――――――――――――――――――――――

**SUPPLEMENT TO LIMITED OBJECTION OF BLOOMBERG L.P.
AND BLOOMBERG FINANCE L.P. TO THE DEBTORS'
MOTION TO: (A) SCHEDULE A SALE HEARING; (B) ESTABLISH SALES
PROCEDURES; (C) APPROVE A BREAK-UP FEE; AND (D) APPROVE
THE SALE OF THE PURCHASED ASSETS AND THE ASSUMPTION AND
ASSIGNMENT OF CONTRACTS RELATING TO THE PURCHASED ASSETS, AND
OBJECTION TO DEBTORS' NOTICE OF ASSUMPTION AND ASSIGNMENT OF,
AND AMOUNTS NECESSARY TO CURE DEFAULTS UNDER, CONTRACTS
<u>AND LEASES TO BE ASSUMED AND ASSIGNED TO SUCCESSFUL PURCHASER</u>**

Bloomberg L.P., Bloomberg Finance L.P. and their affiliates (collectively, "<u>Bloomberg</u>")[1] hereby submit this supplement to their Limited Objection to the Debtors' Motion To: (A) Schedule a Sale Hearing; (B) Establish Sale Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion and Limited Objection.

4493452.3

Contracts Relating to the Purchased Assets [Docket No. 60] (the "Sale Motion"), and objection to Debtors' Notice of Assumption and Assignment of, and Amounts Necessary to Cure Defaults under, Contracts and Leases to be Assumed and Assigned to Successful Purchaser [Docket No. 107] (the "Supplemental Objection"). In support of this Supplemental Objection, Bloomberg respectfully states as follows:

**Background**

1. As set forth in the Limited Objection, Bloomberg was party to various executory contracts (collectively, the "Bloomberg Contracts") to provide the Bloomberg Products[2] to Lehman Brothers Inc. ("LBI") and its affiliates (collectively with LBI, "Lehman"). The Bloomberg Contracts collectively govern: (a) service subscriptions for the use of Bloomberg Products by Lehman and its employees, and products and services provided in connection with these subscriptions (the "Hard Dollar Contracts"); (b) service subscriptions for the use of Lehman's customers, which are paid for by Lehman (the "Soft Dollar Contracts"); and (c) Lehman's use of Other Bloomberg Products. During 2007, Bloomberg derived approximately $80 million in revenue from the Bloomberg Contracts.

2. On September 15, 2008 and September 16, 2008 (the "Commencement Dates"), Lehman Brothers Holdings Inc. ("LBHI") and LB 745 LLC ("LB 745") commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers, Inc.

---

[2] The Bloomberg Products are provided by: (i) Bloomberg Finance L.P.; (ii) Bloomberg L.P.; (iii) Bloomberg Data Services (India) Pvt. Ltd.; (iv) Bloomberg Korea Ltd.; (v) Bloomberg Bermuda Limited; and (vi) other affiliates of Bloomberg Finance L.P.

- 2 -

4493452.3

("LBI," and collectively with LBHI and LB 745, the "Debtors").  A trustee appointed under the SIPA (the "SIPA Trustee") is administering LBI's estate.

        3.        The Debtors have provided a list of executory contracts (the "Designated Contracts") that they proposed to assume and assign in connection with the Sale (the "Cure Schedule").  "Bloomberg," "Bloomberg L.P." and "Bloomberg Tradebook Options" were listed on the Cure Schedule, indicating that at least some of the Bloomberg Contracts would be assumed and assigned in connection with the Sale.  The Debtors attributed no Cure Amount with respect to agreements with "Bloomberg" and "Bloomberg Tradebook Options," and a negative Cure Amount with respect to agreements with Bloomberg L.P., presumably indicating that the Debtors believe that they have no outstanding obligations to Bloomberg under any of the Bloomberg Contracts and Bloomberg L.P. owes the Debtors money under certain of them.

        4.        Bloomberg filed its Limited Objection to the Debtors' Motion To: (A) Schedule a Sale Hearing; (B) Establish Sale Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets [Docket No. 164] on September 19, 2008.  In its Limited Objection, Bloomberg objected to the proposed Cure Amounts (or the absence thereof) for the Bloomberg Contracts, and asserted that significant amounts are due and owing under the Bloomberg Contracts.  However, for various reasons, including the lack of information from the Debtors and Barclays Capital, Inc. ("Barclays" or the "Purchaser") as to whether it was their intention was to assume and assign all of the Bloomberg Contracts, or only a subset thereof, it was impossible for Bloomberg to conduct sufficient diligence to ascertain the exact Cure Amounts owed to Bloomberg by the Debtors and their affiliates prior to the Sale Hearing.

4493452.3

Accordingly, Bloomberg reserved its right to supplement the Limited Objection once it determined the accurate Cure Amounts owed to Bloomberg.

       5.       On September 20, 2008, the Bankruptcy Court entered the Order Under 11 U.S.C. §§ 105(a), 363, 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) The Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases (the "<u>Sale Order</u>") [Docket No. 258].  The Sale was consummated on September 22, 2008 (the "<u>Closing Date</u>").

       6.       The Sale Order provides for the transfer of the Purchased Assets by the Debtors to Barclays.  In connection with the transfer of the Purchased Assets, the Debtors assumed and assigned the Designated Contracts to Barclays as of the Closing Date.  The Sale Order extended the deadline for filing an objection to the Cure Amounts until October 3, 2008 (the "<u>Cure Amount Objection Deadline</u>").

       7.       Since the filing of the Limited Objection, Bloomberg has had the opportunity to conduct additional diligence with respect to the Bloomberg Contracts and the appropriate Cure Amounts associated with each.

## **Cure Amount Objection**

       8.       As stated in the Limited Objection, Bloomberg believes that the continued use of the Bloomberg Products is critical to the preservation of the purchased capital markets and investment banking operations and to ease the transition of operations to Barclays.  The Bloomberg Products provide critical financial market information, analytics and functionality to enable such capital markets and investment banking operations to function.

       9.       While the Cure Schedule indicates that the Debtors assumed and assigned at least some of the Bloomberg Contracts, the Cure Schedule contains insufficient detail to

4493452.3

enable Bloomberg to accurately identify the Bloomberg Contracts which the Debtors have assumed and assigned. Bloomberg's counsel has contacted both Debtors' counsel and Barclays' counsel but, to date, no additional identifying information has been provided. Given the absence of any specificity from the Debtors or Barclays as to whether all of the Bloomberg Contracts, or only a subset thereof, were assumed and assigned, Bloomberg has assumed for the purposes of this Supplemental Objection that all Bloomberg Contracts to which any of the Debtors, including LBI,[3] was a party have been assumed and assigned to Barclays (the "LBI Bloomberg Contracts").

10.  The Sale Order provides that the Purchaser shall pay any Cure Amount as soon as reasonably practicable after (i) the date on which the contracting counterparty consents in writing to the Cure Amount, (ii) the date on which the counterparty is deemed to have consented, or (iii) the date on which the Court enters an order determining the Cure Amount. (Sale Order, ¶ T) As stated above, the Cure Schedule indicated that the Debtors believe that they have no outstanding obligations to Bloomberg under any of the Bloomberg Contracts. To the contrary, Bloomberg's records reflect significant amounts that were due and owing under the LBI Bloomberg Contracts as of the Closing Date. Accordingly, Bloomberg requests Barclays

---

[3]  Upon information and belief, Barclays purchased LBI's operations located in the U.S. Certain of the LBI Bloomberg Contracts to which LBI or LBHI is a party govern the provision of Bloomberg Products to locations outside of the United States. Due to the lack of clarity of the Cure Schedule, Bloomberg has included amounts related to such Bloomberg Products in its Proposed Cure Amount. If it is Barclays' position that the related LBI Bloomberg Contracts do not constitute Designated Contracts, Bloomberg is willing to attempt to resolve consensually these matters with Barclays. Bloomberg reserves all of its rights with respect to submitting claims for rejection damages or otherwise related to any Bloomberg Contract that is not assumed and assigned to Barclays.

pay Bloomberg an aggregate amount of $ 20,851,531.17 (the "Proposed Cure Amount"), to cure defaults existing under the LBI Bloomberg Contracts as of the Closing Date.[4]

11.  In addition to the Cure Amounts, under the Purchase Agreement, Bloomberg is entitled to payment of all additional amounts which have accrued or otherwise become due and owing under the Bloomberg Contracts as of the date hereof.  The executed Asset Purchase Agreement (the "Purchase Agreement") among Barclays and the Debtors, dated September 22, 2008, provides that during the 60-day period after Closing (the "Post-Closing Period"), the Purchaser will pay all ordinary course amounts due under the Bloomberg Contracts. (Purchase Agreement, § 2.5)  Accordingly, Bloomberg expects that Barclays will pay all amounts due and owing under the Bloomberg Contracts as of the Closing Date, regardless of when such obligations were incurred, and regardless of whether any individual Bloomberg Contract is assumed and assigned.

12.  Bloomberg reserves the right to supplement this Supplemental Objection and assert additional amounts required to cure defaults under the assigned Bloomberg Contracts, pursuant to section 365 of the Bankruptcy Code, and additional amounts owing under the Bloomberg Contracts that are required to be paid by Barclays under the Purchase Agreement.

---

[4] Information regarding the Proposed Cure Amount for the LBI Bloomberg Contracts, including the Lehman contract party, associated account number, Bloomberg Product provided, and if applicable, location of terminal is set forth on Exhibits A1-A3 hereto.

4493452.3

WHEREFORE, Bloomberg respectfully requests that the Court (a) determine that all of the Bloomberg Contracts to which the Debtors were a party to prior to the Closing have been assigned to Barclays, (b) require payment of the Cure Amounts listed herein in lieu of the amounts listed on the Cure Schedules, (c) require payment of all additional amounts which have accrued or otherwise become due and owing under the Bloomberg Contracts prior to Closing, and (d) grant Bloomberg such other relief that is just and proper.

Dated: New York, New York
October 3, 2008

**WILLKIE FARR & GALLAGHER LLP**
*Attorneys for Bloomberg L.P., Bloomberg Finance L.P., and their Affiliates*

By: /s/ Shelley C. Chapman
Shelley C. Chapman
Thomas H. Golden
Shaunna D. Jones

787 Seventh Avenue
New York, New York 10019
(212) 728-8000