SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Sally McDonald Henry

Attorneys for Chicago Mercantile Exchange Inc.,
New York Mercantile Exchange, Inc., Board of Trade
of the City of Chicago, Inc., CME Group Inc.,
Commodity Exchange, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| In re LEHMAN BROTHERS HOLDINGS INC., et al., | : | Chapter 11 |
| | : | Case No. 08-13555 (JMP) |
| Debtors. | : | |
| | : | (Jointly Administered) |

---

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | : | |
| Plaintiff, | : | Adversary Proceeding No. 08-01420 (JMP) |
| v. | : | |
| LEHMAN BROTHERS INC. | : | |
| Debtor. | : | |
| Debtors. | : | |

---

**SUPPLEMENTAL OBJECTION OF THE CHICAGO MERCANTILE EXCHANGE TO CURE AMOUNTS IN CONNECTION WITH THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS**

Chicago Mercantile Exchange, Inc. and its subsidiaries and affiliates[1] (collectively, "CME") respectfully submit this supplemental objection (the "Supplemental Objection") to the Notice of Assumption and Assignment of, and Amounts Necessary to Cure Defaults under Contracts and Leases to be Assumed and Assigned to Successful Purchaser, dated September 18 and 19, 2008 (the "Cure Notices"), posted by Lehman Brothers Holdings Inc. ("LBHI"), LB 745 LLC, and Lehman Brothers Inc. ("LBI" and collectively, with LBHI and LB 745 LLC, the "Debtors"), and in support thereof represent as follows:

## BACKGROUND

1. CME is a financial and commodity derivative exchange with its corporate headquarters based in Chicago. CME trades several types of financial instruments, including interest rates, equities, currencies, and commodities. It also offers trading in alternative investments such as weather and real estate derivatives. Trading is conducted in one of two methods: (1) an open outcry format and (2) the CME Globex electronic trading platform.

2. CME is currently a party to certain contracts with the Debtors, under which CME provide services to the Debtors, including services in connection with the clearing trades facilitated by Lehman as a clearing firm, and other related services such connectivity, market data, data lines, deliveries, office space, and trading floor booth rentals (the "CME Contracts").

3. Prior to the sale hearing on September 19, 2008, the Debtors posted on their website (http://chapter11.epiqsystems.com/lehman) the lists of contracts to be assumed and

---

[1] Included, but not limited to Chicago Mercantile Exchange Inc., New York Mercantile Exchange, Inc. Board of Trade of the City of Chicago, Inc., CME Group Inc., and Commodity Exchange, Inc.

assigned to Barclays Capital Inc. (the "Purchaser"), and the proposed cure amount for such contracts, which included contracts to which CME is a counterparty.

4. As a result of the limited time between the posting of the Cure Notices and the Sale Hearing, on September 19, 2008, CME filed the Reservation Of Rights And Limited Objection Of The Chicago Mercantile Exchange To Debtors' Motion To Approve The Sale Of The Purchased Assets And The Assumption And Assignment Of Contracts Relating To The Purchased Assets (the "Limited Objection") to allow CME additional time to review the Notices.

5. Moreover, on October 1, 2008, the Debtors posted revised lists of contracts to be assumed and assigned on their website (the "Revised Lists"). In addition, on October 1, 2008, the Debtors filed the Notice Of Revisions To Schedules Of Certain Contracts And Leases Assumed And Assigned To Purchaser (the "Revised Notices" and collectively, with the Cure Notices, the "Notices"). A schedule of Notices posted by the Debtors and possibly related to CME is attached hereto as <u>Exhibit A.</u>

**OBJECTION**

6. As made clear in <u>Exhibit A</u>, the Notices posted on the Debtors' website do not provide adequate information to properly identify which CME Contracts are being assumed and assigned to the Purchaser. Specifically, as reflected in <u>Exhibit A</u>, the Notices do not provide the name of the agreements, the date of execution, the name of the Lehman entity that is a counterparty (in some instances), or a description of the CME Contracts. This ambiguity and lack of information does not allow CME to properly (i) identify which CME contracts are being assumed and assigned[2] and (ii) review its books and records to determine whether it agrees with

---

[2] In addition, given the difficulty of determining which contracts are being assumed, the CME reserves its rights to assert these contracts are not executory, and consequently, not subject to assumption.

3

the Debtors' proposed cure amounts. Consequently, CME does not have sufficient information to determine whether the proposed assumption and assignment of the CME Contracts satisfies the requirements of section 365 of the Bankruptcy Code.

7. Since it is not possible to identify from the Notices which of the CME Contracts the Debtors are seeking to assume and assign, CME cannot verify whether any cure amounts set forth in the Notices are accurate.[3] CME currently believes, based on its initial preliminary review of its books and records, and the limited information provided by the Debtors, that the Debtors are obligated to pay no less than $8,476,992 in order to cure existing payment defaults under the CME Contracts. Because the CME Contracts to be assumed and assigned are not adequately identified, CME cannot be certain that there are not additional amounts due and therefore reserves its rights to further clarify the amounts due at a reasonable time after the Contracts are clearly identified. Invoices that support the cure amounts are attached hereto as Exhibit B.

8. Section 365(b)(1) of the Bankruptcy Code provides if "there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee . . . cures, or provide adequate assurance that the trustee will promptly cure, such default . . . ." 11 U.S.C. § 365(b)(1)(A). Butler v. Bellwest Mgmt. Corp., (In re Butler), 14 B.R. 532, 535 (S.D.N.Y. 1981) ("The Court assumes that 'promptly' in this statutory context means reasonably soon."). Accordingly, the Debtors must cure all outstanding amounts under the CME Contracts in full promptly upon the assumption and assignment of such contract.

---

[3] Prior to the filing of this Supplemental Objection, the CME requested additional information from the Debtors' representatives in connection with the CME Contracts. The CME was unable to obtain any information from the Debtors' representatives which would clarify the ambiguities of the Notices.

4

9.	Though CME recognizes that the Debtors' extraordinary circumstances, contract parties cannot be denied their right to due process. As a result, CME respectfully requests that the Court direct the Debtors to identify the CME Contracts with specific identifiable information which will allow CME to properly calculate cure amounts. Indeed, the Notices do not comply with Federal Rules of Bankruptcy Procedure. Specifically, Federal Rule 6007(f) provides, in part, that an omnibus "motion to assume or assign multiple executory contracts or unexpired leases that are not between the same parties shall: . . . (2) list parties alphabetically and identify the corresponding contract or lease; (3) specify the terms, including the curing of defaults, for each requested assumption or assignment." Fed. R.Bankr.P. 6006(f).

10.	CME intends to meet and confer with the Debtors and their representatives "in good faith" to resolve the Objection "without Court intervention" pursuant to the Court's Order Under 11 U.S.C. §§ 105(A), 363, And 365 And Federal Rules Of Bankruptcy Procedure 2002, 6004 And 6006 Authorizing And Approving (A) The Sale Of Purchased Assets Free And Clear Of Liens And Other Interests And (B) Assumption And Assignment Of Executory Contracts And Unexpired Leases (the "Sale Order"), dated September 19, 2008. After the Debtors provide additional information, CME will need additional time to ascertain the exact cure amounts. In the alternative, if these discussions are not productive, CME will request, pursuant to the Sale Order, that the Court schedule a hearing to address any dispute between CME and the Debtors and/or the Purchaser with respect to the CME Contracts. See In re 611 Sixth Avenue Corp., 191 B.R. 295 (Bankr. S.D.N.Y. 1996) ("The bankruptcy court frequently resolves disputes regarding [cure] amounts when deciding assumption motions, and fixes the amounts that the debtor must pay immediately, or at the latest promptly, to assume the lease.").

5

## **CONCLUSION**

WHEREFORE, CME respectfully requests that, unless the parties reach an agreement with the Debtors with respect to the CME Contracts, this Court (i) enter an order requiring that debtors to specifically identify the CME Contracts for assumption and or assignment to the Purchaser and directing the Debtors to pay any cure amounts, and (ii) grant CME such other and further relief as this Court deems just and proper.

Dated: New York, New York
October 3, 2008

                                              SKADDEN, ARPS, SLATE, MEAGHER
                                                      & FLOM LLP

/s/ Sally McDonald Henry
Sally McDonald Henry
Four Times Square
New York, New York 10036
(212) 735-3000