SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Sally McDonald Henry

Attorneys for The NASDAQ OMX Group, Inc.
and its subsidiaries and affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
: 
In re LEHMAN BROTHERS : Chapter 11
   HOLDINGS INC., et al., : Case No. 08-13555 (JMP)
: 
   Debtors. : 
: (Jointly Administered)
------------------------------------------------------------:
: 
: 
: 
SECURITIES INVESTOR PROTECTION :
CORPORATION, :
   Plaintiff, : Adversary Proceeding No.
: 08-01420 (JMP)
   v. :
LEHMAN BROTHERS INC. :
   Debtor. :
: 
   Debtors. :
: 
------------------------------------------------------------:

**OBJECTION OF NASDAQ TO CURE AMOUNTS IN CONNECTION WITH THE**
**ASSUMPTION AND ASSIGNMENT OF CONTRACTS**

The NASDAQ OMX Group, Inc. and its subsidiaries and affiliates[1] (collectively, the "NASDAQ") respectfully submit this objection (the "Objection") to the Notice of Assumption and Assignment of, and Amounts Necessary to Cure Defaults under Contracts and Leases to be Assumed and Assigned to Successful Purchaser, dated September 18 and 19, 2008 (the "Cure Notices"), posted by Lehman Brothers Holdings Inc. ("LBHI"), LB 745 LLC, and Lehman Brothers Inc. ("LBI" and collectively, with LBHI and LB 745 LLC, the "Debtors"), and in support thereof represent as follows:

## BACKGROUND

1.     The NASDAQ OMX Group, Inc. is the world's largest exchange company. It delivers trading, exchange technology and public company services across six continents, and with over 3,900 companies, it is number one in worldwide listings among major markets. NASDAQ OMX offers multiple capital raising solutions to companies around the globe, including its U.S. listings market; the OMX Nordic exchanges, including First North; and the 144A PORTAL Market. The company offers trading across multiple asset classes including equities, derivatives, debt, commodities, structured products and ETFs. NASDAQ OMX technology supports the operations of over 60 exchanges, clearing organizations and central securities depositories in more than 50 countries.

2.     NASDAQ currently provides various services to the Debtors under various contracts, including market connectivity, trade execution, trade reporting, clearance and settlement, market data distribution, and other ancillary products and services (collectively, the

---

[1] Including, but not limited to The NASDAQ OMX Group, Inc., The NASDAQ Stock Market LLC, Nasdaq Options Services LLC, NASDAQ OMX PHLX, Inc., NASDAQ OMX Holding AB, OMX AB, PBOT, Inc., Nasdaq Technology Services, LLC, Shareholder. Com (B.V.), The NASDAQ Options Market LLC, Nasdaq Execution Services, LLC, and Shareholder.com, Inc.

"NASDAQ Contracts"). The fees for services provided under the vast majority of NASDAQ Contracts are established only after a review and approval process conducted by the United States Securities and Exchange Commission and are set forth in the NASDAQ Rule 7000 Series, a copy of which is attached hereto as <u>Exhibit A</u>. In addition, NASDAQ's fee structure also encompasses a process for providing rebates to market participants that provide trading liquidity to the marketplace which is funded by approved execution fees imposed by NASDAQ.[2]

3. Prior to the sale hearing on September 19, 2008, the Debtors posted on their website (http://chapter11.epiqsystems.com/lehman) the lists of contracts to be assumed and assigned to Barclays Capital Inc. (the "Purchaser"), and the proposed cure amount for such contracts, which included contracts to which NASDAQ is a counterparty.

4. Moreover, on October 1, 2008, the Debtors posted revised lists of contracts to be assumed and assigned on their website (the "Revised Lists"). In addition, the Debtors filed the Notice Of Revisions To Schedules Of Certain Contracts And Leases Assumed And Assigned To Purchaser (the "Revised Notices" and collectively, with the Cure Notices, the "Notices"). A schedule of Notices posted by the Debtors and possibly related to NASDAQ is attached hereto as <u>Exhibit B</u>.

## OBJECTION

5. As made clear in <u>Exhibit B</u>, the Notices posted on the Debtors' website do not provide adequate information to properly identify which NASDAQ Contracts are being assumed and assigned to the Purchaser. Specifically, the Notices do not provide the name of the agreements, the date of execution, the name of the Lehman entity that is a counterparty (in some

---

[2] In light of the fact that the NASDAQ is unable to determine which contracts will be assumed and which contracts will be rejected, if any, NASDAQ reserves the right to recoup any amounts associated with liquidity rebates.

3

instances), or a description of the NASDAQ Contracts.  It is not clear whether all of the NASDAQ Contracts are among the contracts to be assumed and assigned to the Purchaser.  This ambiguity and lack of information does not allow NASDAQ to properly (i) identify which NASDAQ Contracts are being assumed and assigned[3] and (ii) review its books and records to determine whether it agrees with the Debtors' proposed cure amounts.  Consequently, NASDAQ does not have sufficient information to determine whether the proposed assumption and assignment of the NASDAQ Contracts satisfies the requirements of section 365 of the Bankruptcy Code.

6. Since it is not possible to identify from the Notices which of the NASDAQ Contracts the Debtors are seeking to assume and assign, NASDAQ cannot verify whether any cure amounts set forth in the Notices are accurate.  However, based on NASDAQ's preliminary review of its books and records, NASDAQ objects to the cure amounts proposed by the Debtors in the Notices.

7. NASDAQ currently believes, based on its initial, preliminary review of its books and records, and the limited information provided by the Debtors, that the Debtors are obligated to pay no less than $14,951,248.81 in order to cure existing payment defaults under the NASDAQ Contracts.[4]  Because the NASDAQ Contracts to be assumed and assigned are not adequately identified, NASDAQ cannot be certain that there are not additional amounts due and therefore reserves its rights to further clarify the amounts due at a reasonable time after the Contracts are clearly identified.  A preliminary summary of the amounts owed is attached hereto Exhibit C.  Invoices that support the cure amounts are attached hereto as Exhibit D.

---

[3]   In addition, given the difficulty of determining which contracts are being assumed, NASDAQ reserves its rights to assert these contracts are not executory, and consequently, not subject to assumption.

8. Section 365(b)(1) of the Bankruptcy Code provides if "there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee . . . cures, or provide adequate assurance that the trustee will promptly cure, such default . . . ." 11 U.S.C. § 365(b)(1)(A). Butler v. Bellwest Mgmt. Corp., (In re Butler), 14 B.R. 532, 535 (S.D.N.Y. 1981) ("The Court assumes that 'promptly' in this statutory context means reasonably soon."). Accordingly, the Debtors must cure all outstanding amounts under the NASDAQ Contracts in full promptly upon the assumption and assignment of such contract.

9. Though NASDAQ recognizes that the Debtors' extraordinary circumstances, contract parties cannot be denied their right to due process. As a result, NASDAQ respectfully requests that the Court direct the Debtors to identify the NASDAQ Contracts with specific identifiable information which will allow NASDAQ to properly calculate cure amounts. Indeed, the Notices do not comply with Federal Rules of Bankruptcy Procedure. Specifically, Federal Rule 6007(f) provides, in part, that an omnibus "motion to assume or assign multiple executory contracts or unexpired leases that are not between the same parties shall: . . . (2) list parties alphabetically and identify the corresponding contract or lease; (3) specify the terms, including the curing of defaults, for *each* requested assumption or assignment." Fed. R.Bankr.P. 6006(f) (emphasis added).

10. NASDAQ intends to meet and confer with the Debtors and their representatives "in good faith" to resolve the Objection "without Court intervention" pursuant to the Court's Order Under 11 U.S.C. §§ 105(A), 363, And 365 And Federal Rules Of Bankruptcy

---

*(cont'd from previous page)*
4    This amount does not take into account rebates held by NASDAQ.

Procedure 2002, 6004 And 6006 Authorizing And Approving (A) The Sale Of Purchased Assets Free And Clear Of Liens And Other Interests And (B) Assumption And Assignment Of Executory Contracts And Unexpired Leases (the "Sale Order"), dated September 19, 2008. After the Debtors provide additional information, NASDAQ will need additional time to ascertain the exact cure amounts. In the alternative, if these discussions are not productive, NASDAQ will request, pursuant to the Sale Order, that the Court schedule a hearing to address any dispute between NASDAQ and the Debtors and/or the Purchaser with respect to the NASDAQ Contracts. See In re 611 Sixth Avenue Corp., 191 B.R. 295 (Bankr. S.D.N.Y. 1996) ("The bankruptcy court frequently resolves disputes regarding [cure] amounts when deciding assumption motions, and fixes the amounts that the debtor must pay immediately, or at the latest promptly, to assume the lease.").

11. Further, some of the NASDAQ Contracts are comprised of master agreements that enable the Debtors to obtain critical services. See In re Fleming Companies, Inc. 499 F3.d 300, 308 (3d Cir. 2007) (holding that it is axiomatic that an executory contract may be assumed *cum onere*); Kopel v. Pasquale Companile (in Re Kopel), 232 B.R. 57, 63 (Bankr. S.D.N.Y 1999)(stating that it is "axiomatic" that an executory contract "must be assumed *cum oenere*"). At this time, it is not clear whether the Debtors intend to assume Master Agreements in whole or in part. Consequently, NASDAQ expressly reserves its right to assert that the Debtors are required to assume such contracts in their entirety.

## **CONCLUSION**

WHEREFORE, NASDAQ respectfully requests that, unless the parties reach an agreement with the Debtors with respect to the NASDAQ Contracts, this Court (i) enter an order requiring that debtors to specifically identify the NASDAQ Contracts for assumption and or assignment to the Purchaser and directing the Debtors to pay any cure amounts, and (ii) grant NASDAQ such other and further relief as this Court deems just and proper.

Dated: New York, New York
October 3, 2008

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

/s/ Sally McDonald Henry
Sally McDonald Henry
Four Times Square
New York, New York 10036
(212) 735-3000