BIALSON, BERGEN & SCHWAB
2600 El Camino Real, Suite 300
Palo Alto, California 94306
Telephone: (650) 657-9500
Lawrence M. Schwab, Esq. (Calif. Bar No. 085600)
Thomas M. Gaa, Esq., (Calif. Bar No.  130720)
Kenneth T. Law, Esq., (Calif. Bar No.  111779)

Attorneys for Cisco Systems, Inc. and
Cisco Systems Capital Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re: | Chapter 11 Case No. |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC.. *et al.*, | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**STATEMENT OF CURE AMOUNT AND RESERVATION OF RIGHTS OF
CISCO SYSTEMS, INC. AND CISCO SYSTEMS CAPTIAL CORPORATION
TO ORDER AUTHORIZING AND APPROVING
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
<u>CONTRACTS AND UNEXPIRED LEASES</u>**

TO: HONORABLE JAMES M. PECK, United States Bankruptcy Judge:

Cisco Systems, Inc. ("Cisco Inc.") and Cisco Systems Capital Corporation ("Cisco Capital") (collectively, "Cisco") hereby file this *Statement of Cure Amount And Reservation of Rights Of Cisco, Inc.  To Order Authorizing And Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases* (the "Statement of Cure Amount And Reservation of Rights") pursuant to the *Order Under 11 U.S.C. §§ 105(a), 363 And 365 And Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing And Approving (A) The Sale of Purchased Assets Free and Clear of Liens and Other Interests And (B) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases* (the "Sale And Assumption

Order") entered by the Court on September 20, 2008 (Docket No. 258).[1]

## SALE AND ASSUMPTION ORDER REQUIREMENTS

The Sale and Assumption Order provides, in pertinent part, that (1) all right, title and interest of Lehman Brothers Holdings Inc. ("LBHI") and LB 745 LLC ("LB 745"), debtors and debtors-in-possession (collectively, the "Debtors"), in certain Purchased Assets shall vest in Barclays Capital, Inc. (the "Purchaser") free and clear of all Liens, Excluded Liabilities and Interests and (2) the Debtors are authorized to assume the Contracts (including the Closing Date Contracts) to which they are a party and to assign such contracts and unexpired leases to the Purchaser pursuant to certain procedures set forth in this order.[2]

More specifically, the Sale and Assumption Order provides that (1) any objections to the Cure Amounts the Debtors have contended are due and owing with respect to any of the Closing Date Contracts must be filed by the non-debtor counterparty to such contract not later than October 3, 2008 (the so-called "Cure Amount Objection Deadline") and (2) if the Debtors, the Purchaser and the non-debtor counterparty to any of the Closing Date Contracts cannot agree on the correct Cure Amount, the aggrieved party may seek a judicial determination of the dispute.

## RELIEF REQUESTED

Cisco seeks entry of an order by the Court (1) establishing that, as of October 3, 2008, the Cure Amount owed to Cisco with respect to the Cisco Contracts (as defined hereinafter) is not less than $13,759,662.19, plus such further amounts as may accrue from and after that date until such contracts are assumed and assigned to the Purchaser and subject to Cisco's right to amend such

---

[1] Capitalized terms used herein but which are not defined herein shall have the meaning ascribed to such term in the Sale and Assumption Order.

[2] *See* Finding of Fact ¶N and ¶4 of the Order (sale of Purchased Assets), and Finding of Fact ¶T and ¶12 (assumption and assignment of Contracts of the Sale and Assumption Order.

amount as set forth in the Reservation of Rights (as hereinafter defined), (2) ordering payment of the Cure Amount, in full, to Cisco as required by the Sale and Assumption Order, (3) reserving all of Cisco's rights, interests and claims related to the Cisco Contracts and any other executory contract that ultimately is determined to be a Closing Date Contract, including without limitation the right (a) to assert a Cure Amount with respect to any such contracts, including any executor contract that, ultimately, is determined to be a Closing Date Contract, a Designated Contract or any other Contract, (b) to commence and maintain an action to enforce such rights in any appropriate forum or jurisdiction, and (c) to take such other actions as may be permitted at law or equity with regard to any such contract and/or enforcement of such rights, and (4) affording such other and further relief as may be necessary to protect Cisco's rights and interests in this matter.

## BACKGROUND

1.    Cisco Systems, Inc. is a California corporation with offices at 170 West Tasman, San Jose, California 94134 and, among other activities, it is in the business of manufacturing equipment and providing various services.

2.    Cisco Systems Capital Corporation is a Nevada corporation with offices at 170 West Tasman, San Jose, California 94134 and, among other activities, it is in the business of leasing equipment and providing various services.

3.    Prior to the commencement of this case, Cisco entered into certain executory contracts with the Debtors, including without limitation the Cisco Contracts.

4.    On September 17, 2008, the *Debtors' Motion To (A) Schedule A Sale Hearing; (B) Establish Sales Procedures; (C) Approve A Break-Up Fee; and (D) Approve The Sale Of The Purchased Assets And The Assumption And Assignment Of Contracts Relating To The Purchased*

*Assets* (the "Sale and Assumption Motion") was filed. The Sale and Assumption Motion sought, in pertinent part, to assume and assign certain executory contracts that are categorized as either the so-called "Closing Date Contracts" or the "Designated Contracts" by the Debtors.

5. On September 19, 2008, the Debtors caused a list (the "Final Consolidated IT (Revised) List") to be filed that identified certain executory contracts (the so-called "Closing Date Contracts") that may be assumed by the Debtors and assigned to the Purchaser as the closing of the Asset Sale (or thereafter) and, further, asserted the monetary cures that it contends are owed with respect to each identified executory contract.[3] The Final Consolidated IT (Revised) List identifies the executory contracts sought to be assumed as follows:

a. The following contracts are listed as being subject to assumption and the Vendor Contact is listed as "Cisco":

(i) Type II: Amendment/Addendum/Schedule (with no date included); Vendor Address: 170 West Tasman Drive Mailstop SJC-13, 3rd Floor, San Jose, CA 95134; Lehman Entity: Unknown

(ii) Type II: Amendment/Addendum/Schedule (with no date included); Vendor Address: Customer Services, 170 West Tasman Drive Mailstop SJC-13, 3rd Floor, San Jose, CA 95134; Lehman Entity: Unknown

(iii) Type II: Master Agreement (no date included); Vendor Address: 170 West Tasman Drive Mailstop SJC-13, 3rd Floor, San Jose, CA 95134; Lehman Entity: Unknown

(iv) Type II: Amendment/Addendum/Schedule (with no date included); Vendor Address: Customer Services, 1525 O'Brien Drive Menlo Park CA 94025, Lehman Entity: Unknown

---

[3] *See* the website of Epiq Systems - Bankruptcy Solutions [http://chapter11.epiqsystems.com/Documents.aspx].

(v) Type II: Amendment/Addendum/Schedule (with no date included); Vendor Address: Customer Services, 1525 O'Brien Drive Menlo Park CA 94025, Lehman Entity: Unknown

(vi) Type II: Side Letter (no date included); Vendor Address: General Counsel, 170 West Tasman Drive, San Jose, CA 95134; Lehman Entity: Unknown

b.   The following contracts are listed as being subject to assumption and the Vendor Contact is listed as "Cisco Systems, Inc." (Smartnet): Type II: (no identification); Vendor Contact: Cisco Systems, Inc., ATTN: Customer Services, 180 Baytech Drive, San Jose CA 95134; Lehman Entity: LBI

c.   The following contracts are listed as being subject to assumption and the Vendor Contact is listed as "Cisco Systems, Inc." (Smartnet): Type II: (no identification); Vendor Contact: Cisco Systems, Inc., ATTN: Customer Services, 180 Baytech Drive, San Jose CA 95134; Lehman Entity: LBI

d.   The following contracts are listed as being subject to assumption and the Vendor Contact is listed as WebEx Communications, Inc.: Type II: (no entry); Vendor Contact: WebEx Communications, Inc., 3979 Freedom Circle, Santa Clara, CA 95054; Lehman Entity: LBI

6.   With regard to the Contracts listed on the Final Consolidated IT (Revised) List to which Cisco is identified as the non-debtor counterparty, the Debtors state that the Cure Amount for all such contracts is **$0.00** and that such amount is owed Cisco.

7.   Although the Debtors recognized their legal obligation to cure all monetary defaults as a condition of assuming and assigning the Contracts, Cisco objected (the "Limited Objection") to the Sale and Assumption Motion and sought entry of an order requiring the

Debtors to provide Cisco a more definitive description of the Closing Date Contracts sought to be assumed and assigned.[4]

    **8.**    On September 20, 2008, the above-captioned Court entered the Sale and Assumption Order denying the Limited Objection and providing, in pertinent part, that (a) all right, title and interest of the Debtors in the Purchased Assets shall vest in the Purchaser free and clear of all Liens, Excluded Liabilities and Interests and (2) the Debtors are authorized to assume the Contracts (including the Closing Date Contracts) identified in the Final Consolidated IT (Revised) List to which they are a party and to assign such contracts and unexpired leases to the Purchaser.

    **9.**    The Sale and Assumption Order further provides that (1) any objections to the Cure Amounts with respect to any of the Closing Date Contracts must be filed by the non-debtor counterparty not later than the Cure Amount Objection Deadline and (2) if the parties to any of the Closing Date Contracts cannot agree on the correct Cure Amount, the aggrieved party may file an application seeking judicial determination of the matter on twenty (20) days notice and with any response to such application due fifteen (15) days after the application is filed.  *See* ¶12 of the Sale and Assumption Order.

    10.    On October 1, 2008, the Debtors caused a second list (the "Updated Final Consolidated IT (Revised) List") of executory contracts (including the Closing Date Contracts) to be filed.[5]   The Updated Final Consolidated IT (Revised) List did not amend, modify, expand, alter, add or delete any information pertaining to the executory contracts the Debtors contend Cisco is the non-debtor counterparty and that it seeks to assume and to assign; likewise, this list did not modify or otherwise change the amount of the monetary default that the Debtors contend has to be cured as

---

[4] *See* the *Limited Objection Of Cisco Systems, Inc. and Cisco Systems Capital Corporation To Debtors' Motion Seeking, Among Other Things, An Order Authorizing And Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases* (the "Limited Objection") filed on September 19, 2008.

a condition of assuming and assigning the executory contracts to which Cisco is the non-debtor counterparty.

11.    In the absence of any further identification of the Closing Date Contracts to be assumed and assigned by the Debtors, Cisco has reviewed its executory contracts and understands that <u>only the executory contracts (collectively, the "Cisco Contracts") listed in this paragraph are the Closing Date Contracts to which it is a non-debtor counterparty and that the Debtors seek to assume and assign</u>:

(a)    the *U.S. Master Agreement to Lease Equipment, Contract No. 5939*, and all supplements, schedules, purchase orders and amendments thereto, by and between Cisco Systems Capital Corporation and Lehman Brothers Holding, Inc., dated December 12, 2006 (collectively, "US MLA No. 5939"); and

(b)    Schedule No. SC001-0, Supplement to US MLA No. 5939, and all supplements, schedules, purchase orders and amendments thereto, by and between Cisco Systems Capital Corporation and Lehman Brothers Holding, Inc., dated July 16, 2008 (collectively, "Schedule No. SC001-0"); and, the Smartnet Services agreement and all supplements, schedules, purchase orders and amendments thereto as identified on the Final Consolidated IT (Revised) List and the Updated Final Consolidated IT (Revised) List as a Closing Date Contract (collectively, the "Smartnet Agreement") (collectively, the Schedule No. SC001-0 and the Smartnet Agreement constitute the "Cisco Service Contract").

12.    With regard to the Cisco Contracts, the aggregate Cure Amount that must be paid to Cisco is $13,759,62.19, which consists of a monetary default of (a) not less than $259,662.19 (as of October 3, 2008) on account of US MLA No. 5939, (b) not less than $13,500,000.00 (as of

---

[5] *See* the Epiq Systems - Bankruptcy Solutions website [which is situated at: http://chapter11.epiqsystems.com/Documents.aspx].

October 3, 2008) on account of the Cisco Service Contract, plus such further amounts that accrue from and after that date until the Cisco Contracts assumed and assigned to Purchaser and subject to Cisco's right to amend such amount as set forth on the Reservation of Rights set forth hereinafter.

13.    Cisco's statement of its Cure Amount (as set forth herein) is without prejudice to, and Cisco reserves all legal rights and arguments concerning whether, (i) the Debtors' designation of contracts to be assumed and assigned is specific enough to include any given contract between Cisco and one or more of the Debtors, (ii) any contract designated by the Debtors is a contract between Cisco and a non-debtor over which the Bankruptcy Court has no jurisdiction, and (iii) a contract designated by the Debtors' is executory so as to be covered by the terms of the Sale Order.  Cisco specifically reserves all of its rights, interests and claims related to any other executory contracts that exist by and between Cisco, its affiliates and subsidiaries and the Debtors, the Non-Debtor Lehman Entities, and their respective affiliates and subsidiaries, including without limitation the right to assert a Cure Amount with respect to any such contract as hereinafter is determined to be a Closing Date Contract, a Designated Contract or any other Contract, to commence and maintain an action in any appropriate forum or jurisdiction, and to take such other actions as may be permitted at law or equity with regard to any such contract (the "Reservation of Rights").

WHEREFORE, Cisco hereby requests that the Court enter its order (1) establishing the Cure Amount with respect to the Cisco Contracts is not less than $13,759,62.19 (as of October 3, 2008), plus such further amounts that accrue from and after that date until such contract is assumed and assigned to Purchaser and subject to Cisco's right to amend such amount as set forth in the Reservation of Rights, (2) ordering payment of the Cure Amount, in full, to Cisco as required by the

Sale and Assumption Order, (3) reserving all of Cisco's rights, interests and claims related to the Cisco Contracts and any other executory contract that ultimately is determined to be a Closing Date Contract, including without limitation the right (a) to assert a Cure Amount with respect to any such contracts, including any executor contract that, ultimately, is determined to be a Closing Date Contract, a Designated Contract or any other Contract, (b) to commence and maintain an action to enforce such rights in any appropriate forum or jurisdiction, and (c) to take such other actions as may be permitted at law or equity with regard to any such contract and/or enforcement of such rights, and (4) affording such other and further relief as may be necessary to protect Cisco's rights and interests in this matter.

Dated: October 3, 2008

Respectfully submitted,
BIALSON, BERGEN & SCHWAB
Attorneys for Cisco Systems, Inc. and
Cisco Systems Capital Corporation

By: /s/ Thomas M. Gaa_____
Thomas M. Gaa, Esq.