**EXHIBIT "B"**

# Allen Matkins

Allen Matkins Leck Gamble Mallory & Natsis LLP
Attorneys at Law
1900 Main Street, 5th Floor | Irvine, CA 92614-7321
Telephone: 949.553.1313 | Facsimile: 949.553.8354
www.allenmatkins.com

James A. Timko
E-mail: jtimko@allenmatkins.com
Direct Dial: 949.851.5460   File Number: A0045-136/OC856442.01

**Via Email/US Postal**

October 3, 2008

Lisa M. Schweitzer, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006

Re:   **In re Lehman Brothers Holdings Inc., et al.
USBC Case No. 08-13555 (JMP)**

Dear Lisa:

As you know, we represent various SunGard entities in connection with the above-referenced bankruptcy case. This letter is sent to you regarding the assumption by Lehman Brothers Holdings, Inc. or Lehman Brothers, Inc. (the "Debtors") of various contracts between the respective SunGard entities and the Debtors and the assignment of the contracts to Barclays Capital, Inc. ("Barclays") that were described as "Closing Date Contracts" under the Court's sale order dated September 20, 2008 (the "Sale Order").

### Our September 28, 2008 Conversation

As you will recall, on Sunday, September 28, 2008, we discussed the SunGard entities' concerns regarding our inability to discern from the lists of contracts filed by the Debtors with the Court on September 19, 2008 (the "Assumption Notices"), which SunGard entities' contracts were to be assumed by the Debtors and assigned to Barclays. By this letter, the SunGard entities renew their request that Barclays specifically identify which contracts that they assert are Closing Date Contracts.

During our September 28th conversation, we also discussed the SunGard entities' concerns that the Debtors were not the actual parties to some of the contracts included in the Assumption Notices. In response, you asked that we provide a list of contracts between any SunGard entity and the Debtors and the cure amounts owed under the contracts. Additionally, you acknowledged that the Bankruptcy Court did not have the necessary jurisdiction to cause a contract to which the Debtors are not a party to be assumed by the Debtors and assigned to Barclays.


EXHIBIT B

Allen Matkins Leck Gamble Mallory & Natsis LLP
Attorneys at Law

Lisa M. Schweitzer, Esq.
October 3, 2008
Page 2

Another topic we addressed during our September 28th conversation is the SunGard entities' concerns regarding the confidentiality of the agreements to be assumed and assigned and the potential harm that filing those agreements with the Court could be suffered by the SunGard entities, the Debtors, Barclays, and non-debtor third parties. In light of these concerns, you agreed to accept a letter from the SunGard entities sent directly to you as Barclays' counsel, rather than having the SunGard entities file a formal objection with the Court. A copy of your email confirming our agreement to forego a formal filing with the Court is attached hereto as Exhibit "A".

### Barclays' Attempts to Receive an Assignment of Agreements Where the Debtors Are Not a Party

After our September 28th conversation, in direct contradiction to our earlier conversations, it appears that Barclays is impermissibly seeking to receive an assignment of at least two contracts to which the Debtors are not contracting parties. The first contract is that certain Software License Support and Services Agreement dated December 19, 2003, by and between SunGard Business Integration (UK) and Lehman Brothers Limited (along with any schedules thereto, the "Mint Agreement"). The second contract is that certain Software License by and between SunGard Securities Finance International Inc.'s predecessor in interest, K-Tek Limited, and Lehman Brothers Limited dated June 2, 1994 (along with any schedules thereto, the "Global One Contract"). SunGard objects to any attempt to assign any contract to Barclays to which the Debtors are not a party.

First, the Bankruptcy Court does not have jurisdiction over contracts to which the Debtors are not parties. SunGard asserts that the Court has no jurisdiction over these contracts; these contracts cannot be subject to the Sale Order; and SunGard asserts and reserves its rights to take any actions necessary to protect SunGard's and its customers' rights with respect to these contracts. Further, even if the Court had jurisdiction over these contracts, the Debtors are required to pay a cure of £248,587.50 under the Global One Contract.

Second, Lehman Brothers Limited is currently subject to the United Kingdom's (the "UK") equivalent to a bankruptcy proceeding. As a result, any attempt by the Debtors to assume and assign any contract to which Lehman Brothers Limited is a party is a potential violation of Lehman Brothers Limited's rights under the contracts and under the laws of the UK. Further, it is SunGard's understanding that Lehman Brothers Limited has asserted its rights to the contracts in question. The conflicting claims regarding the rights under these contracts places SunGard in the untenable position of being in the middle of a dispute where there could be conflicting rights under the Bankruptcy Code, UK law, and the contract. To the extent that the Debtors and Barclays seek to assume and assign any contracts or acquire any rights under a contract to which Lehman Brothers Limited is a party, SunGard requests that the Debtors and Barclays engage in negotiations with both Lehman Brothers Limited and SunGard and take the necessary steps to ensure that any resulting agreement comply with all applicable laws.

Allen Matkins Leck Gamble Mallory & Natsis LLP
Attorneys at Law

Lisa M. Schweitzer, Esq.
October 3, 2008
Page 3

Third, in regards to the Mint Agreement, the use of the software license is limited to only Lehman Brothers Limited and its affiliates. Therefore, regardless of whether the Debtors were utilizing the SunGard entities' services under the Mint Agreement as affiliates of Lehman Brothers Limited, the Debtors themselves never acquired any independent rights under the Mint Agreement and, thus, the Debtors cannot assume or assign the Mint Agreement to Barclays. Further, as Barclays is not an affiliate of Lehman Brothers Limited, Barclays has no present rights under the Mint Agreement.

Based on the foregoing, please take notice that should Barclays seek to utilize any contract to which the Debtors are not a party, SunGard may be required to take the necessary and appropriate actions to protect SunGard's and/or its customers' rights.

### The Contracts and Cure Amounts

In an effort to cooperate with the Debtors and Barclays in order to determine which contracts are Closing Date Contracts for purposes of the Sale Order, we have attached hereto as Exhibit "B" a list of contracts whereby a SunGard entity is a party to a contract with one of the Debtors where SunGard does not assert that a cure is due and owing as of the Closing Date. The contracts where a cure is due and owing as of the Closing Date are addressed herein below. *If a contract is not listed in this letter that the Debtors or Barclays believe was included in the Assumption Notices, it is due to the fact that the contract in question is between SunGard and a non-debtor entity and is not subject to the terms of the Sale Order. If your records indicate that this letter is inaccurate, please contact me immediately.* Nothing in this letter should be viewed as an explicit or implicit waiver of any of the SunGard entities' rights with respect to the assumption and assignment of any contract.

### Advanced Portfolio Technologies, Inc. ("APT")

APT and Lehman Brothers, Inc. are parties to that certain APT System License Agreement dated January 31, 2003, and several schedules and addendums thereto (collectively, the "APT Agreement"). By the terms of the APT Agreement, Lehman Brothers, Inc. is obligated to pay for the license to use certain software at certain of Lehman Brothers, Inc.'s or its affiliates' sites around the world. Lehman Brothers, Inc. is also required to pay for, among other things, the maintenance, support and training provided by APT as necessary to keep the software running at an optimal level. As of the Closing Date, the Debtor owes APT £60,941.76 for various services and charges provided under the APT Agreement. The invoices attached hereto as Exhibit "C" reflect these amounts.

### Automated Securities Clearance LLC f/k/a SunGard Expert Solutions, Inc. ("ASC")

The Debtors owe ASC cure payments under two separate contracts. The first contract is that certain Broker Audit Software License Agreement dated February 20, 2003, entered into by and between ASC's predecessor in interest, Protegent, Inc., and Lehman Brothers, Inc. The proposed cure amount listed in the Assumption Notices under the name SunGard Expert Solutions is $7,157.

Allen Matkins Leck Gamble Mallory & Natsis LLP
Attorneys at Law

Lisa M. Schweitzer, Esq.
October 3, 2008
Page 4

This amount is incorrect. As reflected by the invoices attached hereto as <u>Exhibit "D"</u>, the actual cure required is **$28,743.75**.

The second contract is that certain Service Bureau Agreement dated October 14, 1998, by and between the predecessor in interest of ASC, Automated Securities Clearance, Ltd, and Lehman Brothers, Inc. (as amended, the "SBA"). Under the SBA, Lehman Brothers, Inc. is required to pay certain licensing fees and other charges in connection with Lehman Brothers, Inc.'s use of the BRASS Transmission Service that is instrumental to the trading of securities. As of the Closing Date, the Debtor owes ASC **$418,359.20** for various services and charges provided under the SBA. The invoices attached hereto as <u>Exhibit "E"</u> reflect these amounts.

### SunGard Asset Management Systems a Division of SunGard Business System, Inc. ("Management Systems")

The Assumption Notices list "SunGard Asset Management" and "SunGard Asset Management Systems" a total of five times and the Debtors admit they owe a cure amount of at least $1,065,956.80. SunGard is still investigating the circumstances surrounding these contracts and any proposed cure. SunGard asserts and reserves its rights to dispute this cure and raise any other objections regarding the assumption and assignment of any Management Systems contract.

### SunGard Availability Services LP ("Availability")

Availability and Lehman Brothers Holdings, Inc. are parties to that certain Master Agreement for U.S. Availability Services dated September 28, 2007. The Assumption Notices list a proposed cure in the amount of **$112,695**. Availability has confirmed that this amount is correct and does not object to this proposed cure.

### SunGard Institutional Brokerage Inc. ("SIBI")

SIBI, Securities Management Research, Inc., and Lehman Brothers, Inc. are parties to that certain STN Post Execution Services Soft Dollar Payment Agreement dated June 24, 2002 (the "STN Agreement"). Under the terms of the STN Agreement, Lehman Brothers, Inc. was assigned, on behalf of a third party, the obligation to pay and discharge to SIBI all charges, fees and taxes as they come due under the STN Agreement. The Assumption Notices list two proposed cure amounts for this agreement of $0.00 and $80,683.02. These amounts are incorrect. The correct cure amount to assume the STN Agreement is **$147,081.63**, as reflected in the invoices attached hereto as <u>Exhibit "F"</u>.

### SunGard Investment Systems LLC ("SIS")

SIS and Lehman Brothers Holdings, Inc. are parties to that certain Software License Agreement for the Investran Product Suite dated January 24, 2007 (as amended, the "Investran Agreement"). By the Investran Agreement, SIS granted to Lehman Brothers Holdings, Inc. a

Allen Matkins Leck Gamble Mallory & Natsis LLP
Attorneys at Law

Lisa M. Schweitzer, Esq.
October 3, 2008
Page 5

license to use certain software and for SIS to provide the services necessary to implement, maintain and support that software. The Assumption Notices list a proposed cure for the Investran Agreement of $0.00. This amount is incorrect. As of the Closing Date, Lehman Brothers Holdings, Inc. owes **$191,235.80** under the Investran Agreement as reflected in the invoices attached hereto as Exhibit "G".

### SunGard Reference Data Solutions, Inc. ("Reference")

Reference, as successor in interest to FAME Information Services, Inc., and Lehman Brothers, Inc. are parties to that certain License Agreement dated May 15, 1999. Reference and Lehman Brothers, Inc. are also parties to several addendums and schedules to the License Agreement. By the License Agreement, Lehman Brothers, Inc. is granted a license to use certain software and granted access to certain databases. Further, Reference provides support and other services. As of the Closing Date, as reflected by the invoices attached hereto as Exhibit "H", Lehman Brothers, Inc. owes Reference **$89,000.73** for the use of certain licenses and related software maintenance.

### SunGard Securities Finance LLC ("Securities Finance")

Securities Finance and Lehman Brothers, Inc. are parties to that certain Loanet Application Service Provider (ASP) Agreement dated January 24, 2006, and that certain System Services Schedule to Loanet Application Service (ASP) Agreement dated January 24, 2006 (the "ASP Agreements"). This service is used in connection with, among other things, the approval or rejection of certain credit approval requests. As of the Closing Date, as reflected by the invoices attached hereto as Exhibit "I", Lehman Brothers, Inc. owes **$21,000** to Securities Finance under the ASP Agreements.

Securities Finance, as successor in interest to Loanet, Inc., and Lehman Brothers, Inc., as successor in interest to Shearson Lehman Brothers, are parties to that certain letter agreement dated June 8, 1988 (the "Loanet Agreement"). By the Loanet Agreement, and pursuant to several subsequent written requests made by Lehman Brothers, Inc. under the Loanet Agreement, Securities Finance has agreed to provide certain services including, allowing Lehman Brothers, Inc. to participate in the Loanet Automated Mark System along with other Loanet clients. As reflected in the invoices attached hereto as Exhibit "J", as of the Closing Date, Lehman Brothers, Inc. owes Securities Finance **$1,309,713.59** under the Loanet Agreement.

### Wall Street Concepts LLC ("WSC")

The Assumption Notices list a proposed cure amount in the amount of $41,715.27. This amount is incorrect, as it appears to include amounts owed to WSC in connection with contracts that are with a non-debtor entity Neuberger & Berman, LLC. There are four contracts between WSC and Lehman Brothers, Inc. under which a cure is due and owing. The first contract is that certain letter agreement dated April 26, 2002 (collectively with all addendums thereto, the "WSC Letter

Allen Matkins Leck Gamble Mallory & Natsis LLP
Attorneys at Law

Lisa M. Schweitzer, Esq.
October 3, 2008
Page 6

Agreement") whereby WSC agreed to, among other things, complete specific IRS forms on behalf of Lehman Brothers, Inc. As reflected in the invoices attached hereto as Exhibit "K", as of the Closing Date, Lehman Brothers, Inc. owes WSC $14,400 under the WSC Letter Agreement.

The second agreement is that certain REMIC & Collateralized Debt Obligation (CDO) Reporting Service Agreement dated February 14, 2001 (collectively with all addendums thereto, the "CDO Agreement") by and between WSC and Lehman Brothers, Inc. By way of this agreement, WSC provides certain reporting services to Lehman Brothers, Inc. As reflected in the invoices attached hereto as Exhibit "L", as of the Closing Date, Lehman Brothers, Inc. owes WSC $1,176.25 under the CDO Agreement.

The third agreement is that certain Rates Plus – OID Rate Database Service Agreement dated May 26, 2002 (the "Rates Plus Agreement") by and between WSC and Lehman Brothers, Inc. By way of this agreement, WSC provides certain software and software related services to Lehman Brothers, Inc. As reflected in the invoices attached hereto as Exhibit "L", Lehman Brothers, Inc. owes $1,975.00 under the Rate Plus Agreement.

The fourth agreement is that certain REIT & RIC Income Reallocation Service Agreement dated February 16, 2001 (the "REIT Agreement") by and between WSC and Lehman Brothers, Inc. Under the REIT Agreement, WSC provides certain database related services to Lehman Brothers, Inc. As reflected in the invoices attached hereto as Exhibit "L", Lehman Brothers, Inc. owes $1,675.00 under the REIT Agreement.

### MicroHedge LLC ("MicroHedge")

MicroHedge LLC as the successor in interest to MicroHedge, Inc. and Lehman Brothers, Inc. are parties to that certain MicroHedge License Agreement dated June 11, 2008 (the ("MicroHedge Agreement"). By way of the MicroHedge Agreement, MicroHedge provides certain software and software related services to Lehman Brothers, Inc. As reflected in the invoices attached hereto as Exhibit "M", Lehman Brothers, Inc. owes a cure in the amount of $35,908.53 under the MicroHedge Agreement.

We have not included copies of the above agreements under the assumption that copies are already immediately available to you. Please let us know if you need copies of any agreements and/or if you have any questions or comments, please do not hesitate to call.

Very truly yours,

James A. Timko

JAT:kjr
Enclosures