# *EXHIBIT A*

## INTERNAP NETWORK SERVICES
## TERMS AND CONDITIONS OF SERVICE

# INTERNAP NETWORK SERVICES
# TERMS AND CONDITIONS OF SERVICE

This Agreement is made and entered into this day of January 31, 2000, by and between InterNAP Network Services Corporation, a Washington Company ("InterNAP"), 601 Union Street, Suite 1000, Seattle, Washington 98101, and Lehman Brothers Inc., a Delaware corporation, having its office at 3 World Financial Center, New York, NY 10285 ("Customer"). When referred to collectively, InterNAP and Customer shall be referred to as the "Parties".

**1.   Scope of the Services.**

A.   **Service.** Customer agrees to purchase from InterNAP, and InterNAP agrees, subject to the terms and conditions of this Agreement, to provide the service ("Service") described on the Sales Order Form and in the Service Description, both of which are attached hereto and incorporated herein by reference.

B.   **Support Services.** InterNAP will provide Customer with a policies and procedures document which discusses standard technical support relative to the Service, and instructs Customer how to contact InterNAP, and the InterNAP technical support staff, by means of telephone, email, and pager. The InterNAP Network Operations Center ("NOC") will monitor the service being provided to Customer for purposes of ensuring that TCP/IP connectivity relating to the Service is maintained, and also for providing reasonable and appropriate outage response and trouble-shooting related to the maintenance of such connectivity. In the event of an outage or failure of connectivity relating to the Service, the InterNAP NOC will follow InterNAP's standard outage response and trouble-shooting protocols which will include notification to Customer in a manner consistent to a notification process mutually agreed upon between the Parties. Customer may be asked to attempt a Customer Installation Form which outlines trouble contacts and Service configuration details to InterNAP prior to scheduling of the Service installation. Information provided on the Customer Installation Form will remain in effect until amended or rescinded by Customer in writing.

Further, InterNAP will provide Customer with an emergency access telephone number/contact information pursuant to InterNAP's NOC guide. InterNAP will not (i) intentionally disrupt, modify, delete, damage, deactivate, disable, harm or otherwise impede in any manner, including aesthetic disruptions or distortions, the operation of the Customer's computer system, or any other associated products, firmware, hardware, computer system or network, (ii) disable the Service or impair in any way its operation based on the elapsing of a period of time, or (iii) place on the Customer's computer systems any harmful, malicious or hidden procedures, routines or mechanisms which would cause such systems to cease functioning or to damage or corrupt data, storage media, programs, equipment or communications, or otherwise interfere with operations. Customer agrees to use this emergency number/contact such designee only in instances which could reasonably be described as emergency in nature, and which have occurred through no fault of Customer. InterNAP reserves the right, at its sole discretion, to bill Customer for all non-emergency calls directed to InterNAP via the InterNAP emergency number. In the event that Customer requires a non-standard form of technical support, where such non-standard form of support is not in the nature of an emergency, Customer may make special contractual arrangements with InterNAP to provide such non-standard service under terms and conditions to be mutually agreed upon between the Parties.

**2.   Contract Term and Termination.**

A.   The term of the Agreement shall commence on the above date, and shall continue for a minimum period of one (1) year, unless specified as a longer term under the formerly quoted terms on the attached Sales Order Form provided to Customer and incorporated herein by reference. Not more than one hundred and twenty (120) days and not less than ninety (90) days prior to the expiration of the then current term, InterNAP shall notify Customer in writing as to the upcoming expiration. Customer shall have the option of renewing this Agreement by providing a written renewal notice to InterNAP; provided, however, that Customer shall be entitled to renew this Agreement regardless of whether or not InterNAP has provided timely notice in accordance with this paragraph. In the event Customer does not provide InterNAP with notice of exercise of its renewal option or of its decision not to renew, this Agreement term shall nonetheless continue on a month-to-month basis upon the same terms and conditions, subject to termination by either party upon thirty (30) days' prior written notice.

B.   This Agreement may be terminated upon thirty (30) days written notice after the occurrence of any of the following: 1) Any material breach of this Agreement, provided that the breaching party is not engaged in a good faith effort to cure such breach, and further provided that Customer's failure to pay invoiced amounts shall not be considered a material breach until sixty (60) days have elapsed from the date of such invoice; 2) either party's failure to continue to function as a going concern, or to operate in the ordinary course of business; 3) any assignment by either party for the benefit of creditors; 4) any filing of either voluntary or involuntary bankruptcy by either party or either party's creditors; 5) a failure by either Party hereto to honor any non-disclosure or confidentiality obligations arising under this Agreement or failing to honor the employee recruitment restrictions set forth within this Agreement below.

C.   In the event that Customer elects to terminate or cancel this Agreement prior to the expiration of the then current term of the Agreement, and does so without the express written consent of InterNAP, then Customer shall be liable to InterNAP for an early cancellation penalty in an amount equal to fifty percent (50%) of the dollar amount, in USD currency, that Customer would otherwise be paying to InterNAP over the remainder of such current term. In such a case, Customer agrees to pay said penalty amount within thirty (30) days of invoice by InterNAP.

D.   This Agreement may be terminated in writing by Customer.

**3.   Service Fees and Invoicing.**

A.   Customer agrees to pay InterNAP all recurring and non-recurring fees in connection with the Service as detailed in the Sales Order Form attached hereto.

provided or at the end of the month if the Service is usage-based. Payment terms for any invoices to Customer by InterNAP are net thirty (30) days, unless stated otherwise in the Sales Order Form.

C.   Upon request, InterNAP agrees to provide Customer with a schedule of any additional fees that Customer may, from time to time, incur for services not covered under this Agreement. Customer acknowledges and agrees that InterNAP reserves the right to price certain services, which shall be described and indicated in any such Schedule, in accordance with the reasonable circumstances which might give rise to the provision of any such services.

D.   InterNAP reserves the right to reclassify service levels, publish revised formal descriptions of standard InterNAP products or services, and to modify any and all published prices on an annual basis; provided, however, that any such modification of published prices shall not affect the price Customer pays for the Service during the term of this Agreement. Any such modifications shall be subject to the requirement that InterNAP provide Customer with a written notice of such changes at least sixty (60) days prior to such changes or modifications taking effect. After such term, any increase in prices payable by Customer for the Service shall not exceed the lesser of (i) 105% of the prices payable during the immediately preceding term, or (ii) the prices payable for the immediately preceding term adjusted for any increase in the applicable U.S. Consumer Price Index or indices during such term, provided that InterNAP's cost per megabit does not increase. In the event that InterNAP and Customer fail to agree on a reclassification of service, or any price modification consequent thereto, then either Party hereto may terminate this Agreement in accordance with the termination procedures stated herein. Upgrades in service requested by Customer may result in additional set-up fees.

**4.   Service Delivery.**

InterNAP shall schedule the delivery of the Service in accordance with the delivery date specified in the Sales Order Form attached hereto, unless an alternative installation date is agreed upon between the Parties and expressed in a further writing which may be incorporated herein by reference. InterNAP will allow one Customer-requested delay in the delivery date, provided that such a delay does not exceed thirty (30) calendar days from the original delivery date specified in the Sales Order Form. InterNAP receives Customer's requested delay in writing no less than five (5) working days prior to the original delivery date, and Customer agrees to pay any additional charges or costs to InterNAP resulting from the requested delay. Should Customer delay delivery of the Service for more than thirty (30) calendar days beyond the original specified delivery date, then InterNAP shall invoice Customer for all applicable charges for the Service effective thirty (30) calendar days from the originally specified delivery date unless InterNAP receives Customer's written notice to cancel the affected Services on or before the date which is thirty (30) calendar days from the original delivery date, subject to InterNAP's standard cancellation charges under this Agreement. In the event InterNAP has completed all installation provisions and is ready to deliver service to Customer, and Customer imposes further delays that exceed twenty (20) business days from the date of InterNAP being ready to deliver service, InterNAP shall have the right to bill Customer for an initial month of service equal to the entry level of service which the Customer has ordered.

**5.   Non-disclosure/Confidentiality/Non-interference.**

A.   InterNAP and Customer acknowledge that during the course of dealing with each other leading up to and during the existence of this Agreement, each party (the "Recipient"), including each such party's consultants and advisors, may be provided with information about the other party (the "Disclosing Party") which is confidential or proprietary in nature ("Confidential Information"). Confidential Information does not include that information which (i) is already lawfully in the Recipient's possession, (ii) becomes generally available to the public through no fault or breach of the Recipient, (iii) is required to be disclosed by the Recipient as a matter of law, provided that the Recipient will use all reasonable efforts to provide the Disclosing Party with prior notice of such disclosure and an opportunity to appear and object to such disclosure, (iv) is disclosed by the Recipient with the Disclosing Party's approval, or (v) is independently developed or received by the Recipient without any use of Confidential Information. Therefore, the Parties agree to take all reasonable steps necessary to maintain the confidentiality of any such information, to protect any such information as confidential, and not to disclose any such information to any third party without the prior written consent of the Disclosing Party hereto, unless such third party is an authorized agent or employee having the need to know such information in the normal course of their work on behalf of either party hereto.

B.   The Parties agree to not use any information disclosed within the business relationship between the Parties, or under this Agreement, for any purpose other than to effectuate and bring about the contractual purposes of this Agreement.

C.   The Parties hereto agree to not solicit for employment or any other financial relationship the employees, advisors, and consultants of the other Party to this agreement.

D.   The Parties hereto agree that their obligations under Section 5 of this Agreement shall continue for the duration of the Agreement, and for a period of one (1) year beyond any termination of this Agreement. Failure to comply with any provision in this Section on the part of one Party shall entitle the other Party to recovery of reasonable damages and attorneys fees for any legal action in which an injured Party prevails.

A.    InterNAP shall provide, install, operate, and maintain the Service in accordance with the descriptions of the Service provided within the Sales Order Form and Service Description, and in accordance with the terms and conditions of this Agreement. Unless agreed to in writing by the Parties, InterNAP shall not be responsible for any equipment or cabling that connects equipment of any kind that is not provided by InterNAP in conjunction with delivery of the Service.

B.    InterNAP warrants that the Service will be in good working order and will, in all material respects, conform to the requirements of the Service Description attached hereto, as well as those of the terms and conditions contained in this Agreement. Customer's sole remedy for performance or nonperformance of delivery of the Service in accordance with the terms and conditions of this Agreement shall be repair or replacement of the Service. THE FOREGOING WARRANTIES ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. Nothing contained within this Section shall limit Customer's damages that they may be entitled to by law.

C.    InterNAP shall bear all risk of loss or damage to products shipped to Customer by InterNAP. In the event of any such loss or damage, InterNAP shall, at Customer's request, replace the lost or damaged products at InterNAP's expense.

D.    InterNAP agrees and represents that it is an independent contractor and its personnel are not Customer's agents or employees for federal, state, and local tax purposes or any other purposes whatsoever, and are not entitled to any Customer employee benefits. InterNAP shall indemnify and hold harmless Customer, Customer's affiliates and their successors, officers, directors and employees (collectively 'Indemnitees') with respect to claim, loss or liability of any kind (including reasonable attorneys' fees) relating to or arising out of any assertion that Indemnitees should be deemed the 'employer' or 'joint employer' of any of the individuals performing services under this Agreement. InterNAP represents that each of its personnel providing services under this Agreement is an employee or independent contractor of InterNAP and that InterNAP will withhold and pay, or will cause to withhold and be paid, all applicable Income and payroll taxes with respect to such personnel. InterNAP and its independent contractors, and not Customer, are solely responsible for the compensation of personnel assigned to perform services hereunder, and payment of worker's compensation, disability, and other similar benefits, unemployment and other similar insurance, for withholding income and payroll taxes and for verifying the work eligibility of each person performing services hereunder, including the completion and maintenance of Form I-9.

E.    InterNAP will comply with all provisions of Exhibit A, the terms of which are incorporated herein.

7.    Duties and Responsibilities of Customer.

A.    Customer shall, at its own expense, provide all necessary preparations required to comply with InterNAP's installation and maintenance specifications for delivery of the Service. Customer shall be responsible for the costs of relocation or removal of connectivity that results from the negligence or willful misconduct of Customer, and shall provide InterNAP, or its agents, with reasonable access to Customer's premises to perform any acts required by the terms and conditions of this Agreement.

B.    Customer agrees to take reasonable measures to prevent the improper and unlawful use of the Service. Customer shall be liable for any and all damages to InterNAP property that may be located on Customer's premises, excluding reasonable wear and tear and those damages which are beyond the reasonable control of Customer. Upon expiration or termination of this Agreement, Customer shall surrender to InterNAP any equipment or other property owned by InterNAP that has been provided to Customer.

C.    Customer shall not knowingly (i) permit or assist others to, without the permission of InterNAP, use the Service for any purpose other than that for which it is intended; (ii) fail to maintain a suitable technical environment in accordance with either InterNAP's, or the relevant equipment manufacturer's, specifications; or (iii) alter, tamper with, adjust, or repair the Service. Upon the occurrence of any of the above, InterNAP shall, to the extent such occurrence is not caused by the negligence or willful misconduct of InterNAP, be completely released from any liability or obligation (including any warranty or indemnity obligations) to Customer relative to the Service, and Customer shall be liable to InterNAP for costs or damages incurred by InterNAP resulting therefrom.

D.    Customer shall not knowingly utilize, nor knowingly permit others to utilize, the Service for any unlawful purpose. Customer shall not knowingly, nor shall it knowingly permit or assist others to, abuse or fraudulently use the Service, including but not limited to the following circumstances: 1) obtaining or attempting to obtain service by any means or device with intent to avoid payment; 2) unauthorized access to, alteration, destruction of, or any attempt thereof, of any information of another InterNAP customer by any means or device; 3) using the Service so as to interfere with the use of the InterNAP network by other customers or authorized users, or in violation of the law, or in aid of any unlawful act; 4) using the Service in a manner which is not in accordance with the generally accepted rules of Internet conduct and etiquette.

E.    Upon the occurrence of any of the foregoing violations of Customer's responsibilities, InterNAP may suspend its performance and/or terminate the Agreement with no further obligation to Customer.

8.    Systems Not Provided by InterNAP.

A.    InterNAP shall not be responsible for the installation, operation, or maintenance of hardware or software not provided by InterNAP unless specifically agreed to in writing between the Parties. Further, InterNAP shall not be responsible for the transmission or reception of information by such hardware or software in conjunction with the Service.

B.    Customer shall be responsible for the selection, use, and compatibility of hardware or software not provided by InterNAP. In the event that such hardware or software impairs Customer's use of the Service, Customer shall nonetheless be liable for payment to InterNAP for provision of the Service. Upon notice from InterNAP that the hardware or software not provided by InterNAP is causing, or is likely to cause, a hazard, interference, or obstruction of the Service, Customer shall eliminate such hazard, interference, or Service obstruction. InterNAP reserves the right to disconnect the Service until such hazard, interference, or Service obstruction is removed. If requested by Customer, InterNAP may, at its then current rates, trouble-shoot difficulties caused by

hardware or software not provided by InterNAP in the event that such trouble-shooting is outside the scope of Service to be provided by InterNAP to Customer.

C.    InterNAP shall not be responsible if any changes in the Service cause hardware or software not provided by InterNAP to become obsolete, require modification or alteration, or otherwise affect performance of such hardware or software.

D.    If Customer provides its own router in conjunction with the Service, such as in the case of a remote frame relay or private line connection from Customer's premises to an InterNAP facility, then Customer is fully responsible for the installation, maintenance, and configuration of such Customer-provided router, unless otherwise agreed to in writing between the Parties hereto. InterNAP must approve in advance the make, model, and/or software revision of a Customer-provided router, and InterNAP shall have the right, in cooperation with Customer, to set the initial configuration for the router interface into the Service should this be agreed to between the Parties.

9.    Limitation of Liability.

A.    Unless carried out by an employee, consultant, or advisor to, or caused by the negligence or willful misconduct of InterNAP, under no circumstances shall InterNAP be liable, either in contract or in tort, for unauthorized access to Customer's network or transmission facilities or Customer-premise equipment, or for the unauthorized access to or alteration, theft, or destruction of Customer's data files, programs, procedure, or information through accident, fraudulent means or devices, or any other method.

B.    Except to the extent caused by the negligence or willful misconduct of InterNAP, its employees, advisors, or consultants, InterNAP shall not be liable for claims or damages resulting from or caused by: (i) Customer's fault, negligence or failure to perform Customer's responsibilities; (ii) claims against Customer by any other party; (iii) any act or omission of any other party; and (iv) equipment or services furnished by a third party.

C.    For any claim arising under or related to a provision of the Service, Customer's damages, if any, shall be limited to those actually proven as directly attributable to InterNAP, subject to the following limitations: InterNAP will not be liable under any circumstances for any indirect, incidental, or consequential damages including, but not limited to, lost profits, even if InterNAP has been advised of the possibility of such damages.

10.    Indemnities.

A.    If the Service provided by InterNAP and used by Customer infringes on a United States patent or copyright, InterNAP will defend such action at its expense and will pay any and all fees, costs, or damages that may be finally awarded in such action or resulting settlement. In the event that a final injunction is obtained against Customer prohibiting use of the Service by reason of infringement of the United States patent or copyright, InterNAP will, at its option and expense, either procure the right for Customer to continue using the Service; procure alternative Service which furnishes equivalent functionality; or, direct Customer to return or rescind the Service provided by InterNAP, and in such event, terminate by mutual consent this Agreement for the Service and refund to Customer a pro-rata amount of any fees paid for the returned or rescinded Service.

B.    Each party will be indemnified and saved harmless by the other party from and against all loss, liability, damage, and expense, including reasonable attorneys fees, caused by negligent acts or omissions of officers, employees, agents, vendors or contractors of the other party which result in claims or demands for damages to property or for injury or death to persons, including payments made under any Worker's Compensation Law or under any claim for employee's disability or death benefits, any claims arising from information, data, or messages transmitted over InterNAP's network by Customer including, but not limited to, claims for libel, slander, invasion of privacy, infringement of copyright, and invasion and/or alteration of private records or data; claims for infringement of patents arising from the use of hardware or software not provided by InterNAP in connection with the Service, and; any damages or loss incurred directly by InterNAP as a result of a failure of any piece of Customer-provided equipment that may be installed within InterNAP's facilities in conjunction with provision of the Service by InterNAP to Customer including, but not limited to, failures resulting in fire, electrical, heat, and/or water resulting from any such failure, even when such equipment is installed with the permission of, or assistance of, InterNAP. InterNAP further agrees to indemnify and hold Customer harmless for the

tortions or criminal acts of any InterNAP officer, employee, agent, vendor or contractor, which are committed while on Customer premises.

C.    InterNAP agrees to obtain and maintain and keep in full force and effect at InterNAP's expense statutory worker's compensation, disability, unemployment insurance, and the like for those of its employees performing services under this Agreement. In addition, InterNAP agrees to obtain and maintain professional, commercial general and business auto liability and excess and umbrella insurance. The limits of such insurance shall not be less than five million dollars ($5,000,000) combined single limit. Each such insurance policy shall (a) be maintained with an insurer having a rating of at least an A- in the most currently available Best's Insurance Reports; (b) name Customer as additional insured and additional loss payee, where applicable; and (c) shall provide for at least thirty (30) days' prior notice in the event of any modification or cancellation. InterNAP shall also notify Customer at least thirty (30) days in advance if InterNAP desires to modify or cancel any such insurance.

11.    Spam and Unsolicited Electronic Mail.

A.    Customer will take all reasonable precautions to prevent the distribution or transmission of unsolicited e-mail of any kind, regardless of the content or nature of such messages being commercial, noncommercial, political, social, or otherwise, also known as "spam" email, by its employees, as well as the posting or transmission of such types of unsolicited email messages to one or more news groups, as well as excessive cross-posting or multiple-posting to Usenet news groups.

B.    In the event that Customer knowingly violates this spam email prohibition, InterNAP reserves the right to cancel all services being provided by InterNAP to Customer

upon ten (10) days notice. Further, Customer agrees to indemnify and hold InterNAP harmless from any and all liabilities or costs of civil litigation defense that may result from Customer's violation of this spamming prohibition. In addition, Customer agrees to indemnify and hold harmless InterNAP in the event that Customer's conduct and violation of this spamming prohibition, negligently or otherwise, results in any civil or criminal proceedings brought against InterNAP by state or federal governmental authorities seeking to enforce spamming prohibitions, or prohibitions of unsolicited email, under applicable state and federal law.

**12.   Miscellaneous Terms and Conditions.**

A.    Either Party may assign this Agreement and any of its rights and/or obligations hereunder, upon written notice to the other Party, to its parent company or to one of its subsidiaries or affiliated companies or to an entity with or into which it is merged or consolidated, without the consent of the other Party.

B.    Neither party will be responsible for performance of its obligations under this Agreement where delayed or hindered by war, riots, embargoes, strikes, casualties, accidents or other occurrence beyond its control. Each Party shall notify the other Party in the event of any of the foregoing occurrences. Should such occurrences continue for more than sixty (60) days, either Party may cancel this Agreement with no further liability.

C.    Provision of the Service hereunder is subject to InterNAP's continuing approval of Customer's credit-worthiness. Customer shall furnish financial information as InterNAP may, from time to time, reasonably request to determine Customer's credit-worthiness.

D.    The terms and conditions of this Agreement may not be modified, except by written amendment by the Parties hereto. No agent, employee, or representative of InterNAP or Customer has the authority to bind the Parties to any representation or warranty unless such is specifically included in the terms and conditions of this Agreement, or within any written amendments thereto.

E.    Notice to the Parties hereto of any modifications of the Service, modifications to pricing, changes of address, disputes, or intentions to terminate this Agreement shall be sent by registered mail to the address of the Party being notified which is shown within the first paragraph of this Agreement. All other notices may be sent by regular mail between the Parties.

F.    This Agreement, including all Attachments, Sales Order Forms, and other documents that are incorporated herein by reference, shall be construed and enforced in accordance with, and the laws of the State of New York shall govern the validity and performance, without regard to its conflict of laws provisions.

G.    If at any time during the term of this Agreement, Customer shall contract, or have contracted, with InterNAP for Service at an enhanced volume or level, Customer shall be entitled to a discount from InterNAP's standard list prices for such enhanced volume or level of the Service equal to or greater than the discount applicable to the Service contained herein.

H.    This Agreement consists only of the document upon which the authorized representatives of the Parties have affixed their signatures, these specific terms and conditions, and those documents specifically incorporated herein by reference or formally executed Addenda. This Agreement, as so constituted, is the entire Agreement between the Parties with respect to the Service, and may not be modified in any way unless such modification is by means of written Addendum, signed and dated by the duly authorized representatives of the Parties hereto.

I.    InterNAP shall not use the name or marks, refer to, or identify "Lehman Brothers Inc." or any Customer entity in advertising or publicity releases, promotional or marketing materials, announcements, customer listings, testimonials, or advertising.

*Sales:documents/terms&cond9.99*

InterNAP Network Services Corporation
By:

Name: JOE C'im'TILE
Title: BRANCH MGR.
Date: 1/31/2000

Lehman Brothers Inc.
By:

*Daphne Aronson*

Name: Daphne Aronson
Title: VP
Date: 2/4/00

Exhibit A

AGREEMENT AND CERTIFICATION OF COMPLIANCE
WITH FEDERAL LAWS AND REGULATIONS

I.    EXECUTIVE ORDER 11246 – EQUAL OPPORTUNITY CLAUSE
(If the value of the contract exceeds, or is expected to exceed, $10,000 in any twelve-month period and InterNAP is not otherwise exempt).

InterNAP agrees to comply with the "equal opportunity clause" set forth in § 202 of Executive Order 11246 and 41 C.F.R. § § 60-1.4 (a) and the applicable regulations issued under the Executive Order, 41 C.F.R. Section 60-1 – 60-60, and to include the equal opportunity clause by reference in every non-exempt contract, agreement and purchase order entered into with subcontractors of InterNAP.

II.   CERTIFICATION OF NON SEGREGATED FACILITIES  (if the value of the contract exceeds, or is expected to exceed, $10,000 in any twelve-month period and InterNAP is not otherwise exempt).

InterNAP certifies that it does not and will not maintain any facilities provided for its employees in a segregated manner, or permit its employees to perform their services at any location under InterNAP's control, where segregated facilities are maintained.  InterNAP further agrees that InterNAP will obtain from subcontractors that are not exempt from the provisions of the equal opportunity clause of Executive Order 11246 identical certifications in advance of subcontract award.  As used in this certification, the term "segregated facilities" means any waiting rooms, work areas, restaurants and other eating areas, time clocks, restrooms, washrooms, locker rooms, and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees that are segregated on the basis of race, color, religion or national origin, either by reason of written or oral policies or because of employee custom.

III.  EMPLOYER INFORMATION REPORT EEO-1 (if the value of the contract or purchase order equals or exceeds $50,000, InterNAP employs 50 or more people and InterNAP is not otherwise exempt).

InterNAP further agrees that InterNAP will file a complete and accurate report on Standard Form 100 (EEO-1) with the Joint Reporting Committee at the appropriate address per the current instructions within thirty (30) days of the contract award (unless InterNAP has submitted such a report within twelve months preceding the contract award) and otherwise comply with the reporting requirements set forth under Executive Order 11246.

IV.   WRITTEN AFFIRMATIVE ACTION PROGRAMS (if the value of the contract equals or exceeds $50,000, InterNAP employs 50 or more people and InterNAP is not otherwise exempt).

InterNAP further agrees that InterNAP will develop and maintain a written Affirmative Action Compliance Program or Programs for each of its establishments, within 120 days from the commencement of this contract, as required by regulations issued under Executive Order 11246, the Vietnam Veterans' Readjustment Assistance Act of 1974, as amended, and the Rehabilitation Act of 1973, as amended.

V.    AFFIRMATIVE ACTION FOR SPECIAL DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA (if the value of the contract or purchase order is, or is expected to equal, $2,500 or more and InterNAP is not otherwise exempt).

InterNAP agrees to comply with the provisions of the "affirmative action clause" set forth in 41 C.F.R. § 60-250 pursuant to Section 402 of the Vietnam Veterans' Readjustment Assistance Act of 1975, and the additional obligations set forth in 41 C.F.R. § 60-250, relating to the employment of veterans and reporting on the employment of veterans.

VI.   AFFIRMATIVE ACTION FOR HANDICAPPED PERSONS (if the value of the contract or purchase order is, or is expected to equal, $2,500 or more and InterNAP is not otherwise exempt).

InterNAP agrees to comply with the provisions of the "affirmative action clause" set forth in 41 C.F.R. § 60-741 pursuant to Section 503 of the Rehabilitation Act of 1973, as amended, relating to the employment of handicapped persons.

# *EXHIBIT A-1*

# Sales Order # 10000027103

# Internap

## SALES ORDER # 10000027103

### Add

| | | |
|---|---|---|
| Company Name: | Lehman Brothers, Inc 1-27388 | |
| Company Address: | 745 7th Avenue<br>New York, NY 10019 USA | |
| Technical Contact: | Michael Boccio | |
| Phone: | 201-793-2607 | |
| Email: | Michael.Boccio@lehman.com | |
| Fax: | | |

| | | |
|---|---|---|
| Customer PO: | | |
| Billing Address: | c/o TnT Partners LLC<br>PO Box 3129<br>Newton, CT 06470 USA | |
| Billing Contact: | Michael Bodetti | |
| Phone: | 203-426-3023 | |
| Email: | mbodetti@tntpartners.com | |
| Fax: | 203-364-0248 | |

| Item | Qty | Activity | Service Description | Request Date | PNAP | One-Time Fees | One-Time Total | Monthly Recurring Fees | Monthly Recurring Total |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | ADD | CPE Service - IDSU | Apr 30, 2002 | NYM | 0.00 | 0.00 | 250.00 | 250.00 |

*Customer Provided Access (CPA) - Customer is responsible for all local access support and must work directly with the access provider to resolve all issues.

| | | |
|---|---|---|
| TOTAL INTERNAP, not including usage-based pricing below | 0.00 | 250.00 |

### Telco Quote

| Item | Telco | Activity | Service Description | Expiration Date | PNAP | One-Time Fees | One-Time Total | Recurring Fees | Recurring Total |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL ESTIMATED TELCO | | | | | | | 0.00 | | 0.00 |

**Comments/Special Notes:**

| Billing Terms | Contract Term |
|---|---|
| Balances are due Net 30 from Lehman's receipt of the invoice.<br>Internap charges begin when the circuit is activated.<br>Telco Charges and secondary services will be billed upon delivery.<br>Sales Order not valid unless signed and dated by both parties at least 5 business days prior to the date the Telco loop quote(s) expires. | 1 Year |

THE PARTIES AGREE TO BE BOUND BY THE SALES TERMS STATED HEREIN AND BY THE INTERNAP NETWORK SERVICES TERMS AND CONDITIONS, INCLUDING ALL ATTACHMENTS THERETO, OF WHICH THIS SALES ORDER IS DEEMED TO BE A PART AND INCORPORATED THEREIN BY REFERENCE.

_____     4/26/02
authorized customer signature         date

_____     4/26/02
Joe Cimitile   NY Market Manager

## INTERNAL USE ONLY

| account executive: | technical consultant: | customer account specialist: |
|---|---|---|
| Michael Dietze | Elio Gualano | Stacy Serota |

# *EXHIBIT A-2*

# Sales Order # 10000031933

# Internap

## SALES ORDER # 10000031933

### Add

| | |
|---|---|
| Company Name: | Lehman Brothers Inc. 5 - 51767 |
| Company Address: | 745 7th Avenue New York, NY 10019 USA |
| Technical Contact: | Rob Morrello |
| Phone: | 201-499-4390 |
| Email: | rmorrell@lehman.com |
| Fax: | |

| | |
|---|---|
| Customer PO: | |
| Billing Address: | Lehman Brothers Inc. c/o Tnt Partners, LLC PO Box 3129 Newton, CT 06470 USA |
| Billing Contact: | Lara Cuente |
| Phone: | 203-364-0800 |
| Email: | lcuente@tntpartners.com |
| Fax: | |

| Item | Qty | Activity | Service Description | Request Date | PNAP | One Time Fees | One Time Total | Monthly Recurring Fees | Monthly Recurring Total |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | ADD | T1 (1.54 Mbps) | Jan 31, 2003 | NYC | 500.00 | 500.00 | 900.00 | 900.00 |

*Customer Provided Access (CPA) - Customer is responsible for all local access support and must work directly with the access provider to resolve all issues.

| TOTAL INTERNAP, not including usage-based pricing below | | | | | | 500.00 | | | 900.00 |
|---|---|---|---|---|---|---|---|---|---|

**Telco Quote**

| Item | Telco | Activity | Service Description | Expiration Date | PNAP | One Time Fees | One Time Total | Monthly Recurring Fees | Monthly Recurring Total |
|---|---|---|---|---|---|---|---|---|---|
| 1 | MFS | ADD | Local Loop (T-1) - internap POP: c/o Telehouse, New York, NY | Feb 3, 2003 | NYC | 100.00 | 100.00 | 166.75 | 166.75 |

| TOTAL ESTIMATED TELCO | | | | | | | 100.00 | | 166.75 |
|---|---|---|---|---|---|---|---|---|---|

**Comments/Special Notes:**

| Billing Terms | Contract Term |
|---|---|
| Balances are due Net 30 days from Lehman's receipt of the invoice Internap port charges begin when the circuit is activated. Telco Charges and secondary services will be billed upon delivery. Sales Order not valid unless signed and dated by both parties at least 5 business days prior to the date the Telco loop quote(s) expires. | 1 Year |

THE PARTIES AGREE TO BE BOUND BY THE SALES TERMS STATED HEREIN AND BY THE INTERNAP NETWORK SERVICES TERMS AND CONDITIONS, INCLUDING ALL ATTACHMENTS THERETO, OF WHICH THIS SALES ORDER IS DEEMED TO BE A PART AND INCORPORATED THEREIN BY REFERENCE.

_____          1/17/03
authorized customer signature                              date

_____          1/21/03
authorized INTERNAP signature                            date

| INTERNAL USE ONLY | | |
|---|---|---|
| account executive:<br>Michael Dietze | technical consultant:<br>Elio Gualano | customer account specialist:<br>Stacy Serota |

# *EXHIBIT A-3*

# Sales Order # 10000050851

04/28/2005 17:08 FAX  212 635 5481          INTERNAP NYC          → DEMETRA          ☒001/002

Sales Order 10000050851

# Internap

# SALES ORDER # 10000050851
## Add

| Company Name: | Lehman Brothers 1-27388 | | Customer PO: | |
|---|---|---|---|---|
| Company Address: | 745 7th Avenue<br>New York, NY 10019 USA | | Billing Address: | c/o Tnt Partners, LLC<br>PO Box 3129<br>Newton, CT 06470 USA |
| Technical Contact: | Neil Saiff | | Billing Contact: | Michael Bodetti |
| Phone: | 201-499-6888 | | Phone: | 203-426-3023 |
| Email: | | | Email: | mbodetti@tntpartners.com |
| Fax: | | | Fax: | 203-364-0248 |

| Item | Qty. | Activity | Service Description | Request Date | PNAP | Design & Engineering Fees | Design & Engineering Total | Recurring Fees | Recurring Total |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | ADD | Fractional DS3 (09Mbps) | Jun 1, 2005 | NYC | 500.00 | 500.00 | 1,080.00 | 1,080.00 |

*Customer Provided Access (CPA) - Customer is responsible for all local access support and must work directly with the access provider to resolve all issues.

| TOTAL INTERNAP, not including usage-based pricing below | | | | | | 500.00 | | 1,080.00 |

### Telco Quote

| Item | Telco | Activity | Service Description | Expiration Date | PNAP | Design & Engineering Fees | Design & Engineering Total | Recurring Fees | Recurring Total |
|---|---|---|---|---|---|---|---|---|---|
| 1 | MFS | ADD | Local Loop (DS3) - internap POP: c/o Telehouse, New York, NY | May 12, 2005 | NYC | 200.00 | 200.00 | 920.00 | 920.00 |
| TOTAL ESTIMATED TELCO | | | | | | 200.00 | | 920.00 | |

### Comments/Special Notes:

After the Initial term, the term of this Sales Order Form shall automatically renew for one-month periods absent contrary written notice provided by either party at least sixty days in advance of renewal. Where these comments directly conflict with the billing terms below, these comments shall control, but only to the extent they are directly in conflict and only related to the Service being ordered by the Customer in this Sales Order Form.

Customer location: 2 PeachTree Hill Rd, Livingston, NJ

### Billing Terms                                                    Contract Term

Payments are due net thirty (30) days from the date of Internap's invoice.
Billing for Internap or Internap provided third party connectivity services, including all associated fees and charges, commences upon the earlier of (a) delivery of the local loop/Telco connection; or (b) availability of the port circuit at the Internap or connectivity partner service point for Customer Provided Access orders. Billing for Internap colocation or Internap provided partner services including all associated fees and charges commences upon the delivery of the specified products and services.
The Term of this Sales Order shall automatically renew for one-year periods absent contrary written notice provided by either party at least ninety days in advance of renewal.
Sales Order not valid unless signed and dated by both parties at least five (5) business days prior to the date the Telco loop quote(s) expires.

1 Year

THE PARTIES AGREE TO BE BOUND BY THE SALES TERMS STATED HEREIN AND BY THE INTERNAP STANDARD TERMS AND CONDITIONS, INCLUDING ALL ATTACHMENTS THERETO, OF WHICH THIS SALES ORDER IS DEEMED TO BE A PART AND INCORPORATED THEREIN BY REFERENCE. PROVISION OF THE SERVICES HEREUNDER IS SUBJECT TO INTERNAP'S CONTINUING APPROVAL OF CUSTOMER'S

04/28/2005 17:10 FAX 9 212 635 5461    INTERNAP NYC    → DEMETRA    @002/002

Sales Order 10000050851

CREDIT-WORTHINESS.

_Janet Bradley_    4-28-05
_____    _____
authorized customer signature                       date

Janet Bradley, VP
_____

print name


_____ Delmith    4/29/05
authorized INTERNAP signature   MANGED MGR    date

INTERNAL USE ONLY

account executive:          technical consultant:          customer account specialist:
Michael Dietze             Vincent Wienczorkowski           Demetra Georgatselis

# *EXHIBIT A-4*

# Sales Order # 10000057778

Sales Order 10000057778                                              Page 1 of 2

# Internap

## SALES ORDER # 10000057778
### Add

| | | |
|---|---|---|
| Company Name: | Lehman Brothers 1-27388 | Customer PO: |
| Company Address: | 745 7th Avenue<br>New York, NY 10019 USA | Billing Address: c/o Tnt Partners, LLC<br>PO Box 3129<br>Newton, CT 06470 USA |
| Technical Contact: | Jason Tavares | Billing Contact: Michael Bodetti |
| Phone: | (201) 499-4393 | Phone: 203-426-3023 |
| Email: | | Email: mbodetti@tntpartners.com |
| Fax: | | Fax: 203-364-0248 |

| Item | Qty | Activity | Service Description | Request Date | PNAP | Design & Engineering Fees | Design & Engineering Total | Recurring Fees | Recurring Total |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | ADD | T1 Port Loop Bundle | Feb 1, 2006 | NYC | 400.00 | 400.00 | 725.00 | 725.00 |

*Customer Provided Access (CPA) - Customer is responsible for all local access support and must work directly with the access provider to resolve all issues.

TOTAL INTERNAP, not including usage-based pricing below                           400.00                725.00

**Telco Quote**

| Item | Telco | Activity | Service Description | Expiration Date | PNAP | Design & Engineering Fees | Design & Engineering Total | Recurring Fees | Recurring Total |
|---|---|---|---|---|---|---|---|---|---|
| 1 | MFS | ADD | Access Charges - internap POP 212-785: c/o Telehouse, New York, NY | Feb 5, 2006 | NYC | 100.00 | 100.00 | 0.00 | 0.00 |

TOTAL ESTIMATED TELCO                                                       100.00                0.00

**Comments/Special Notes:**
Service address: 70 Hudson Street, 12th floor, Jersey City, NJ 07302

**Billing Terms**                                                                   **Contract Term**
Payments are due net thirty (30) days from the date of Internap's invoice.
Billing for Internap or Internap provided third party connectivity services, including all associated fees and
charges, commences upon the earlier of (a) delivery of the local loop/Telco connection; or (b) availability
of the port circuit at the Internap or connectivity partner service point for Customer Provided Access
orders. Billing for Internap colocation or Internap provided partner services including all associated fees    1 Year
and charges commences upon the delivery of the specified products and services.
The Term of this Sales Order shall automatically renew for one-year periods absent contrary written notice
provided by either party at least ninety days in advance of renewal.
Sales Order not valid unless signed and dated by both parties at least five (5) business days prior to the
date the Telco loop quote(s) expires.

THE PARTIES AGREE TO BE BOUND BY THE SALES TERMS STATED HEREIN AND BY THE INTERNAP
STANDARD TERMS AND CONDITIONS, INCLUDING ALL ATTACHMENTS THERETO, OF WHICH THIS
SALES ORDER IS DEEMED TO BE A PART AND INCORPORATED THEREIN BY REFERENCE. PROVISION OF
THE SERVICES HEREUNDER IS SUBJECT TO INTERNAP'S CONTINUING APPROVAL OF CUSTOMER'S
CREDIT-WORTHINESS.

Sales Order 10000057778

authorized customer signature

*Janet Bradley*

date

*1-6-06*

print name

*Janet Bradley*

authorized INTERNAP signature

*JOE Cmith*
*MARKET MGR*

date *1/6/06*

**INTERNAL USE ONLY**

account executive:
Michael Dietze

technical consultant:
Fabrizio Martorello

customer account specialist:
Demetra Georgatselis

# *EXHIBIT A-5*

# Sales Order # 10000065957

Sales Order 10000065957

# Internap

## SALES ORDER # 10000065957
### Add

| | |
|---|---|
| Company Name: | Lehman Brothers 1-27388 |
| Company Address: | 745 7th Avenue<br>New York, NY 10019 USA |
| Technical Contact: | Jason Tavares |
| Phone: | (201) 499-4393 |
| Email: | jwtavare@lehman.com |
| Fax: | |

| | |
|---|---|
| Customer PO: | |
| Billing Address: | c/o Tnt Partners, LLC<br>PO Box 3129<br>Newton, CT 06470 USA |
| Billing Contact: | Michael Bodetti |
| Phone: | 203-426-3023 |
| Email: | mbodetti@tntpartners.com |
| Fax: | 203-364-0248 |

| Item | Qty | Activity | Service Description | Request Date | DNAP | Design & Engineering Fees | Design & Engineering Total | Recurring Fees | Recurring Total |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | ADD | OC3 Flat Rate | Nov 1, 2006 | NYC | 1,000.00 | 1,000.00 | 9,825.00 | 9,825.00 |

*Customer Provided Access (CPA) - Customer is responsible for all local access support and must work directly with the access provider to resolve all issues.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL INTERNAP, not including usage-based pricing below | | | | | | 1,000.00 | | | 9,825.00 |

### Telco Quote

| Item | Qty | Activity | Service Description | Expiration Date | DNAP | Design & Engineering Fees | Design & Engineering Total | Recurring Fees | Recurring Total |
|---|---|---|---|---|---|---|---|---|---|
| 1 | ALS | ADD | Local Loop (OC3) - internap POP 212-785: c/o Telehouse, New York, NY | Nov 10, 2006 | NYC | 125.00 | 125.00 | 3,302.80 | 3,302.80 |
| TOTAL ESTIMATED TELCO | | | | | | | 125.00 | | 3,302.80 |

**Comments/Special Notes:**

After the Initial term, the term of this Sales Order Form shall automatically renew for one-month periods absent contrary written notice provided by either party at least sixty days in advance of renewal. The services shall be billed on a net 45 day basis. The parties agree to be bound by the T&Cs previously entered into between Internap and Customer. There is no Customer Provided access being provided under this Sales Order Form. Where these comments directly conflict with the billing terms below, these comments shall control, but only to the extent they are directly in conflict and only related to the Service being ordered by the Customer in this Sales Order Form.

This order is replacing cancelled so# 10000065412. Lehman can not use the Verizon Business (MFS) quote submitted.....due some diversity issues with another circuit.

**Billing Terms:**                                                                              **Contract Term**

Payments are due net thirty (30) days from the date of Internap's invoice.
Billing for Internap or Internap provided third party connectivity services, including all associated fees and charges, commences upon the earlier of (a) delivery of the local loop/Telco connection; or (b) availability of the port circuit at the Internap or connectivity partner service point for Customer Provided Access orders. Billing for Internap colocation or Internap provided partner services including all associated fees and charges commences upon the delivery of the specified products and services.                                1 Year
The Term of this Sales Order shall automatically renew for one-year periods absent contrary written notice, provided by either party at least ninety days in advance of renewal.
Sales Order not valid unless signed and dated by both parties at least five (5) business days prior to the date the Telco loop quote(s) expires.

THE PARTIES AGREE TO BE BOUND BY THE SALES TERMS STATED HEREIN AND BY THE INTERNAP STANDARD TERMS AND CONDITIONS, INCLUDING ALL ATTACHMENTS THERETO, OF WHICH THIS

10/17/2006 14:39 FAX                                                                    ☒002

                                                                                     Page 2 of 2

Sales Order 10000065957

SALES ORDER IS DEEMED TO BE A PART AND INCORPORATED THEREIN BY REFERENCE. PROVISION OF
THE SERVICES HEREUNDER IS SUBJECT TO INTERNAP'S CONTINUING APPROVAL OF CUSTOMER'S
CREDIT-WORTHINESS.

_____         _____
                   _Janet Bradley_                            10-17-06

authorized customer signature    Janet Bradley, VP                date

print name

_____         _____
authorized INTERNAP signature                            date  10/16/06

INTERNAL USE ONLY

account executive:              technical consultant:        customer account specialist:
Ariel Gerby                     Vincent Wienczorkowski        Demetra Georgatselis

# *EXHIBIT A-6*

## Sales Order # 10000071141

Sales Order 10000071141

# Internap

# SALES ORDER # 10000071141
## Add

| | | | | |
|---|---|---|---|---|
| Company Name: | Lehman Brothers 1-27388 | Customer PO: | TSR958727/CON22239 | |
| Company Address: | 745 7th Avenue<br>New York, NY 10019 USA | Billing Address: | c/o Tnt Partners, LLC<br>PO Box 3129<br>Newton, CT 06470 USA | |
| Technical Contact: | Jason Tavares | Billing Contact: | Michael Bodetti | |
| Phone: | (201) 499-4393 | Phone: | 203-426-3023 | |
| Email: | jwtavare@lehman.com | Email: | mbodetti@tntpartners.com | |
| Fax: | | Fax: | 203-364-0248 | |

| Item | Qty | Activity | Service Description | Request Date | Design & PNAP Engineering Fees | Design & Engineering Total | Recurring Fees | Recurring Total |
|---|---|---|---|---|---|---|---|---|
| 1 | 1 | ADD | MAN Gigabit Ethernet (300Mb Min-500Mb Limit) | Aug 1, 2007 | NYC 750.00 | 750.00 | Usage-based | Usage-based |

*Customer Provided Access (CPA) - Customer is responsible for all local access support and must work directly with the access provider to resolve all issues.

| | | | |
|---|---|---|---|
| TOTAL INTERNAP, not including usage-based pricing below | | 750.00 | 0.00 |

## Internap Usage-based Service Pricing per Month

MAN Gigabit Ethernet (300Mb Min-500Mb Limit)

| | Contract Price |
|---|---|
| Usage | |
| Tier 2 - MAN Gigabit Ethernet 300 – Mpbs | 70.00 |
| Tier 1 - MAN Gigabit Ethernet (300Mb Min) | 16,500.00 |

### Telco Quote

| Item | Telco | Activity | Service Description | Expiration Date | Design & PNAP Engineering Fees | Design & Engineering Total | Recurring Fees | Recurring Total |
|---|---|---|---|---|---|---|---|---|
| 1 | null | ADD | Local Loop (Gigabit MAN) - internap POP 212-785: c/o Telehouse, New York, NY | Aug 3, 2007 | NYC 2,675.00 | 2,675.00 | 8,136.25 | 8,136.25 |

| | | | |
|---|---|---|---|
| TOTAL ESTIMATED TELCO | | 2,675.00 | 8,136.25 |

## Comments/Special Notes:

Location= Cranford Location MDR (RCN as local carrier)

Lehman will be utilizing the Tier-1 commit level of $16,500.00 and Local Loop of $8,136.25 for a Total $24,636.25

## Billing Terms:

| | Contract Term |
|---|---|
| Payments are due net thirty (30) days from the date of Internap's invoice.<br>Billing for Internap or Internap provided third party connectivity services, including all associated fees and charges, commences upon the earlier of (a) delivery of the local loop/Telco connection; or (b) availability of the port circuit at the Internap or connectivity partner service point for Customer Provided Access orders. Billing for Internap colocation or Internap provided partner services including all associated fees and charges commences upon the delivery of the specified products and services.<br>The Term of this Sales Order shall automatically renew for one-year periods absent contrary written notice provided by either party at least ninety days in advance of renewal. | 3 Years |

Sales Order 10000071141                                          Page 2 of 2

Sales Order not valid unless signed and dated by both parties at least five (5) business days prior to the
date the Telco loop quote(s) expires.

THE PARTIES AGREE TO BE BOUND BY THE SALES TERMS STATED HEREIN AND BY THE INTERNAP
STANDARD TERMS AND CONDITIONS, INCLUDING ALL ATTACHMENTS THERETO, OF WHICH THIS
SALES ORDER IS DEEMED TO BE A PART AND INCORPORATED THEREIN BY REFERENCE. PROVISION OF
THE SERVICES HEREUNDER IS SUBJECT TO INTERNAP'S CONTINUING APPROVAL OF CUSTOMER'S
CREDIT-WORTHINESS.

_____                  7-11-07
authorized customer signature                    date

_Janet Bradley_____
print name

authorized INTERNAP signature                    date

INTERNAL USE ONLY

account executive:          technical consultant:           customer account specialist:
Ariel Gerby                 Vincent Wienczorkowski           Demetra Georgatselis

# *EXHIBIT A-7*

# Sales Order # 10000065412

Sep 29 06 04:46p     Bradley                908-464-4810                    p.1

Sales Order 10000065412                                        Page 1 of 2

TSR # 916025

# Internap

# SALES ORDER # 10000065412
## Add

| | |
|---|---|
| Company Name: | Lehman Brothers 1-27388 |
| Company Address: | 745 7th Avenue<br>New York, NY 10019 USA |
| Technical Contact: | Jason Tavares |
| Phone: | (201) 499-4393 |
| Email: | jwtavare@lehman.com |
| Fax: | |

| | |
|---|---|
| Customer PO: | |
| Billing Address: | c/o Tnt Partners, LLC<br>PO Box 3129<br>Newton, CT 06470 USA |
| Billing Contact: | Michael Bodetti |
| Phone: | 203-426-3023 |
| Email: | mbodetti@tntpartners.com |
| Fax: | 203-364-0248 |

| Item | Qty | Activity | Service Description | Request Date | PNAP | Design & Engineering Fees | Design & Engineering Total | Recurring Fees | Recurring Total |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | ADD | OC3 Flat Rate | Dec 1, 2006 | NYM007 | 1,000.00 | 1,000.00 | 9,700.00 | 9,700.00 |
| 2 | 1 | ADD | OC3 Flat Rate | Dec 1, 2006 | NYC | 1,000.00 | 1,000.00 | 9,825.00 | 9,825.00 |

*Customer Provided Access (CPA) - Customer is responsible for all local access support and must work directly with the access provider to resolve all issues.

| TOTAL INTERNAP, not including usage-based pricing below | | 2,000.00 | 19,525.00 |
|---|---|---|---|

**Telco Quote**

| Item | Telco | Activity | Service Description | Expiration Date | PNAP | Design & Engineering Fees | Design & Engineering Total | Recurring Fees | Recurring Total |
|---|---|---|---|---|---|---|---|---|---|
| 1 | MFS | ADD | Local Loop - internap POP 212-981: c/o Switch & Data, New York, NY | Oct 20, 2006 | NYM007 | 100.00 | 100.00 | 1,800.00 | 1,800.00 |
| 2 | MFS | ADD | Local Loop (OC3) - internap POP 212-785: c/o Telehouse, New York, NY | Oct 20, 2006 | NYC | 125.00 | 125.00 | 1,675.00 | 1,675.00 |

| TOTAL ESTIMATED TELCO | | 225.00 | 3,475.00 |
|---|---|---|---|

**Comments/Special Notes:**

After the Initial term, the term of this Sales Order Form shall automatically renew for one-month periods absent contrary written notice provided by either party at least sixty days in advance of renewal. The services shall be billed on a net 45 day basis. The parties agree to be bound by the T&Cs previously entered into between Internap and Customer. There is no Customer Provided access being provided under this Sales Order Form. Where these comments directly conflict with the billing terms below, these comments shall control, but only to the extent they are directly in conflict and only related to the Service being ordered by the Customer in this Sales Order Form.

Customer locations:
1. 85 10th Ave, NY, NY
2. 2 PeachTree Hill Rd, Livingston, NJ

| Billing Terms | Contract Term |
|---|---|
| Payments are due net thirty (30) days from the date of Internap's invoice.<br>Billing for Internap or Internap provided third party connectivity services, including all associated fees and charges, commences upon the earlier of (a) delivery of the local loop/Telco connection; or (b) availability of the port circuit at the Internap or connectivity partner service point for Customer Provided Access orders. Billing for Internap colocation or Internap provided partner services including all associated fees | 1 Year |

Sales Order 10000065412

and charges commences upon the delivery of the specified products and services.
The Term of this Sales Order shall automatically renew for one-year periods absent contrary written notice provided by either party at least ninety days in advance of renewal.
Sales Order not valid unless signed and dated by both parties at least five (5) business days prior to the date the Telco loop quote(s) expires.

THE PARTIES AGREE TO BE BOUND BY THE SALES TERMS STATED HEREIN AND BY THE INTERNAP STANDARD TERMS AND CONDITIONS, INCLUDING ALL ATTACHMENTS THERETO, OF WHICH THIS SALES ORDER IS DEEMED TO BE A PART AND INCORPORATED THEREIN BY REFERENCE. PROVISION OF THE SERVICES HEREUNDER IS SUBJECT TO INTERNAP'S CONTINUING APPROVAL OF CUSTOMER'S CREDIT-WORTHINESS.

*Janet Bradley*                                          9-29-06

authorized customer signature                            date

*Janet Bradley*

print name

*Joe Cimulli*
*Vice President*
authorized INTERNAP signature                    date 9/29/06

**INTERNAL USE ONLY**

| account executive: | technical consultant: | customer account specialist: |
|---|---|---|
| Michael Dietze | Vincent Wienczorkowski | Demetra Georgatselis |