**Hearing Date: October 16, 2008 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date: October 14, 2008 at 5:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                                        :
In re                                                   :         Chapter 11 Case No.
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,            :         **08-13555 (JMP)**
                                                        :
        Debtors.                                        :         **(Jointly Administered)**
                                                        :
                                                        :
-----------------------------------------------------------------x

**NOTICE OF DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 345(b), 363(b), 363(c) AND 364(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003 AND 6004 (A) FOR AUTHORIZATION TO (i) CONTINUE USING EXISTING CENTRALIZED CASH MANAGEMENT SYSTEM, AS MODIFIED, (ii) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED TO THE USE OF THE CASH MANAGEMENT SYSTEM, AND (iii) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS; AND (B) FOR AN EXTENSION OF TIME TO COMPLY WITH SECTION 345(b) OF THE BANKRUPTCY CODE**

PLEASE TAKE NOTICE that an interim hearing on the annexed Motion of

Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to sections

105(a), 345(b), 363(b), 363(c) and 364(a) of chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), (A) for authorization to (i) continue to use the Debtors' centralized

cash management system (the "Cash Management System"); (ii) honor certain prepetition

obligations related to the Cash Management System; (iii) maintain and utilize existing bank

accounts (the "Bank Accounts") and business forms (the "Business Forms"); and (iv) modify the

Cash Management System, including the closing of any existing Bank Account(s) and the

opening of any new bank accounts, as may be necessary in connection with section 345 of the

Bankruptcy Code; (B) for authorization and directing financial institutions to honor the Debtors'

request to open or close, as the case may be, the Bank Accounts or additional bank or investment

accounts; (C) an extension of the time to comply with section 345(b) of the Bankruptcy Code,

and (D) to schedule a final hearing granting the relief requested in the Motion on a final basis, all

as more fully described in the Motion, will be held before the Honorable James M. Peck, United

States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs

House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy

Court"), on **October 16, 2008 at 10:00 a.m.** (Prevailing Eastern Time) or as soon thereafter as

counsel may be heard (the "Hearing").

PLEASE TAKE FURTHER NOTICE that any objection or response to the

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules for the United States Bankruptcy Court for the Southern District of New York, and

shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242

(General Order M-242 and the User's Manual for the Electronic Case Filing System can be

found at http://www.nysb.uscourts.gov, the official website for the Bankruptcy Court), by

registered users of the Bankruptcy Court's case filing system and, by all other parties in interest,

on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other

Windows-based word processing format (with a hard-copy delivered directly to Chambers), and

shall be served in accordance with General Order M-242, upon (i) the chambers of the Honorable

James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil

Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, (Attn:  Richard P.

Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq.),

attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of

New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn:  Andy Velez-

Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis); (iv)

Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York

10005, (Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.), attorneys

for the official committee of unsecured creditors appointed in these cases; (v) Cleary Gottlieb

LLP, One Liberty Plaza, New York, NY 10006, (Attn: Lindsee P. Granfield, Esq.  and Lisa

Schweitzer, Esq.) and Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004,

(Attn:  Robinson B. Lacy, Esq. and Hydee R. Feldstein, Esq.), attorneys for the Debtors'

postpetition lenders; and (vi) any person or entity entitled to receive notice of the Motion in these

cases, so as to be received no later than **October 14, 2008 at 5:00 p.m.** (Prevailing Eastern

Time) (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  October 3, 2008
       New York, New York

/s/ Alfredo Perez
Harvey R. Miller, Esq.
Richard P. Krasnow, Esq.
Lori R. Fife, Esq.
Shai Y. Waisman, Esq.
Jacqueline Marcus, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007


Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                        :

**In re**                   :      **Chapter 11 Case No.**

                        :

**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,  :      **08-13555 (JMP)**

                        :

            **Debtors.**     :      **(Jointly Administered)**

                        :

                        :
------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 345(b), 363(b), 363(c) AND
364(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003 AND 6004 (A)
FOR AUTHORIZATION TO (i) CONTINUE USING EXISTING CENTRALIZED CASH
MANAGEMENT SYSTEM, AS MODIFIED, (ii) HONOR CERTAIN PREPETITION
OBLIGATIONS RELATED TO THE USE OF THE CASH MANAGEMENT SYSTEM,
AND (iii) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS; (B)
FOR AN EXTENSION OF TIME TO COMPLY WITH SECTION 345(b) OF THE
BANKRUPTCY CODE, AND (C) TO SCHEDULE A FINAL HEARING**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "<u>Debtors</u>" and,

collectively with their non-debtor affiliates, "<u>Lehman</u>"), file this Motion and respectfully

represent:

## Background

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

## Jurisdiction

4.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Lehman's Business

5.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.  Its headquarters in New

York and regional headquarters in London and Tokyo are complemented by a network of offices

in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

6.     Additional information regarding the Debtors' business, capital structure,

and the circumstances leading to this chapter 11 filing is contained in the Affidavit of Ian T.

Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New

York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Doc. No.

2].

## **Relief Requested**

7.     To manage their businesses efficiently and seamlessly, Lehman utilizes a

centralized cash management systems (collectively, the "Cash Management System") to collect

and transfer the funds generated by its operations and disburse those funds to satisfy the

obligations required to operate their businesses.  The Cash Management System facilitates

Lehman's cash monitoring, forecasting, and reporting, while ensuring compliance with various

regulatory provisions.  In connection with the Cash Management System, the Debtors maintain

control over the administration of their bank accounts (the "Bank Accounts") located at the

banks (the "Banks") listed on Exhibit A annexed hereto.

8.     By this Motion, pursuant to sections 105(a), 345(b), 363(b), 363(c), and

364(a) of the Bankruptcy Code and Bankruptcy Rule 6004, the Debtors request (i) authority to

continue to operate the Cash Management System, including to fund the operations of the

Debtors and other Lehman entities in which the Debtors have an interest in the ordinary course

of business, consistent with their prepetition practices, as modified herein, (ii) authority to honor

certain prepetition obligations related to the use of the Cash Management System, (iii) authority

to maintain existing business forms, (iv) an extention of time to comply with section 345 of the

Bankruptcy Code, and (iv) to schedule a final hearing granting the relief requested herein on a final basis.

## I.

## The Cash Management System

**A.      Prepetition Cash Management System**

9.      In the ordinary course of business prior to the Commencement Date, Lehman used the Cash Management System, which is similar to those utilized by other large companies, to collect, transfer, and distribute funds generated by Lehman's business operations efficiently.  In the ordinary course of business, Lehman accurately recorded such collections, transfers, and disbursements as they were made.

10.      LBHI has historically acted essentially as a central banker for Lehman, aggregating excess cash for investment and advancing money to certain subsidiaries to cover shortfalls, primarily through its main operating account at Citibank (the "Main Operating Account").  Given the complexity of the Cash Management System and the thousands of Lehman bank accounts, this Motion describes the highlights of the Cash Management System and does not discuss every Bank Account.

11.      Not all of LBHI's subsidiaries operated under the Cash Management System.  The subsidiaries described in this motion (the "Subsidiaries") are those that operate under the Cash Management Motion.  Some Subsidiaries were highly integrated into the Cash Management System and dependent on LBHI, while others were less integrated and relied on LBHI only on occasion.[1]  In addition, LBHI's role was different for its regulated Subsidiaries (generally broker-dealers) (the "Regulated Subsidiaries") and its unregulated Subsidiaries (the

---

[1] For example, Lehman Brothers Commercial Bank had its own sources of liquidity and generally managed its cash independently from LBHI with its own bank accounts.

"Unregulated Subsidiaries").  Lehman in most respects managed the Regulated Subsidiaries

separately from LBHI and the Unregulated Subsidiaries.

(1)    *Collection*

12.    Historically, in the United States, LBHI generally collected cash through

(i) the daily upstream of excess cash generated by its Unregulated Subsidiaries, (ii) occasional

cash paydown of intercompany debt by its Regulated Subsidiaries,[2] (iii) interest income on

investments and principal payments from maturity on investments, (iv) debt issuances, and (v)

asset sale proceeds.  This cash is collected into the Main Operating Account.

13.    Many domestic Subsidiaries maintained their own bank accounts.  Cash

collected from the business operations of these Subsidiaries went into their own collection

accounts (the "Subsidiary-Owned Accounts").  One such Subsidiary-Owned Account was an

LBI operating account (the "LBI Operating Account") that collected funds on behalf of most of

the broker/dealer business.  Certain domestic Subsidiaries, such as Debtor LB 745 LLC, did not

maintain their own collection or disbursement bank accounts.  Rather, collections on their behalf

were made into collection accounts at other Lehman entities  (the "Other Subsidiary Accounts"

---

[2] Regulated entities, such as LBI, cannot lend money to non-regulated affiliates like LBHI.  As a
consequence, LBHI has historically provided loans to the Regulated Subsidiaries, as necessary,
in essence to prefund obligations that LBI was to pay on LBHI's and the Unregulated
Subsidiaries' behalf.  Therefore, LBI and the other Regulated Subsidiaries are generally in a
debtor/borrower position (and never in a creditor position) vis-à-vis certain of the unregulated
Lehman entities.  As described below, LBI as paymaster made payments (e.g. payroll and vendor
payments) on behalf of other entities; payments by LBI to third parties on behalf of LBHI
generally decreased the intercompany payable (the loan) from LBI to LBHI.  Lehman's
regulatory group required the intercompany payable to remain above a certain level.
Approximately monthly, if the payable was in excess of the required level LBI used its cash to
pay down the intercompany payable.  Historically, LBI and the other regulated entities also
transferred cash to LBHI as a dividend (however, in light of recent losses, no dividends were
made recently).

and together with the Subsidiary-Owned Accounts, the "U.S. Subsidiary Collection/Disbursement Accounts").

14.       In Europe, the UK "branch" of LBHI (which is technically in the LBHI entity but operated out of a different office) served the same function as LBHI in the United States using Bank Accounts in Europe.  Most European Subsidiaries did not maintain separate bank accounts.  Rather, LBHI maintained Bank Accounts on behalf of those Subsidiaries in their native currency (the "LBHI Foreign Subsidiary Accounts").  Collections from those Subsidiaries, on account of revenues and debt proceeds, were made into these LBHI Foreign Subsidiary Accounts.  For all European business conducted in U.S. currency, collections were directed into LBHI's main U.K. operating account at Bank of America (the "UK Operating Account").  Several European Subsidiaries are currently in insolvency proceedings or administration, and it is unclear whether these Subsidiaries will continue to operate within the Cash Management System.

15.       LBI also maintained bank accounts.  Certain transactions, including derivative, futures, and foreign exchange transactions, of LBI and non-Debtor Lehman Brothers Commercial Corporation (the "LBI/LBCC Transactions") settled into certain LBI bank accounts (the "LBI FX Accounts").  Similar transactions involving Lehman Brothers Special Financing Inc. and Lehman Brothers International Europe (the "LBSF/LBIE Transactions") also settled into the LBI FX Accounts.  However, as described below, the LBI/LBCC Transactions did not generally rely on LBHI funding, while the LBSF/LBIE Transactions did to some degree.

(2)       *Concentration*

16.       Cash from the Unregulated Subsidiaries is concentrated in the Main Operating Account.  At the end of each business day, if the Unregulated Subsidiary ended the

day with a positive cash flow, the excess cash in the U.S. Subsidiary Collection/Disbursement Accounts was either swept into the Main Operating Account (and invested by LBHI in the manner described below) or held by the Unregulated Subsidiary. At the end of each day, if an Unregulated Subsidiary, had a negative cash position, LBHI funded the subsidiary by moving money from the Main Operating Account into the relevant U.S. Subsidiary Collection/Disbursement Account. For example, LBHI would fund shortfalls in cash or sweep excess cash generated from the accounts of Lehman Brothers Finance and Lehman Commercial Paper Inc.

17.    The Regulated Subsidiaries on occasion up streamed cash to LBHI to pay down the intercompany debt (as long as the payable to LBHI was above the required level) or received money from LBHI to fund shortfalls.

18.    Similarly, in Europe, the Main Operating Account swept daily excess cash from the UK Operating Account and funded daily cash shortfalls in the UK Operating Account. Excess cash in the LBHI Foreign Subsidiary Accounts was generally swept into the Main Operating Account, directly or indirectly, and the Main Operating Account generally funded daily cash shortfalls in the LBHI Foreign Subsidiary Accounts, directly or indirectly.

19.    If the LBI/LBCC Transactions produced a positive cash flow in a particular day, the excess cash was transferred to an LBI bank account. Shortfalls in the LBI FX Accounts on account of the LBI/LBCC Transactions were funded through the LBI Operating Account. If the LBSF/LBIE Transactions produced a positive cash flow in a particular day, the excess cash was transferred to the UK Operating Account, except for excess cash from U.S. dollar transactions for LBSF, which was transferred to the Main Operating Account. Shortfalls

in the LBSF/LBIE Transactions were funded through the UK Operating Account, except for U.S.

dollar transactions for LBSF, which were funded through the Main Operating Account.

20.     In addition, LBHI occasionally funded subsidiaries outside of the United

States and Europe as needed.

(3)     *Disbursement*

21.     LBI has historically been the "paymaster" for most of Lehman's domestic

operations.  As such, much of Lehman's (including the Debtors') expenses (for example, payroll)

were paid out of bank accounts of LBI (and not the Debtors' Bank Accounts) the ("LBI

Paymaster Accounts").  The LBI Paymaster Accounts were tied to sophisticated software and

computer systems necessary to process payroll and accounts payable (the "Payroll/Payable

System").  The LBI Paymaster Accounts were funded through the LBI Operating Account.

Certain disbursements for some U.S. Subsidiaries were made out of the other U.S. Subsidiary

Collection/Disbursement Accounts.

22.     In Europe, LBHI has historically been the "paymaster" for most of the

company's European operations.  Disbursements on account of the European Subsidiaries'

expenses in U.S. currency were made out of the UK Operating Account, while disbursements on

account of the European Subsidiaries' foreign currency expenses were made through the LBHI

Foreign Subsidiary Accounts.

(4)     *Intercompany Accounting*

23.     The movement of cash between, as well as the payment of expenses on

account of, the various legal entities was accounted for through intercompany accounting.  The

intercompany accounts reflect real debts that are due and owing among subsidiaries.  In general,

the intercompany accounts accrue interest and are reflected on the individual balance sheets of

the various subsidiaries.  For example, if LBHI transferred cash to a bank account of Subsidiary

X, the intercompany accounts recorded an intercompany payable in such amount from

Subsidiary X to LBHI (and LBHI would have a corresponding intercompany receivable).

24.    Many Lehman entities, including those that are valuable to the Debtors,

could not function without the Cash Management System, particularly the transfer of cash from

LBHI to fund those companies' operations on a particular day, which the Debtors intend to

continue (as described below).

## A.    Proposed Postpetition Cash Management System

25.    Given the complexity of the existing Cash Management System and the

confusion and inefficiency that would be caused by trying to change it, the Debtors have

determined to continue their prepetition cash management practices in the postpetition period to

a large extent.

26.    The status of the Cash Management System postpetition is complicated by

two factors.  First, on September 22, 2008, in accordance with an order of this Court, the Debtors

and LBI sold a substantial part of their businesses to Barclays Capital Inc. ("Barclays").  In

connection therewith, Barclays purchased much of the infrastructure relating to those businesses,

including the Payroll/Payable System.  In light of the integration of the sold businesses and the

retained businesses, the Debtors and Barclays entered into a Transition Services Agreement (the

"TSA") that provided for each party to provide certain necessary equipment and services to the

other party for specified periods of time, including for Barclays to process the Debtors' payroll

and payables on the Payroll/Payable System.[3]

---

[3] For example, the TSA provides, in general terms, that each party shall have access to the
other's Information System for ninety days, and Barclays shall provide LBHI with reasonable
acess to all former LBHI employees for a period of two years.

27.     The second factor is the SIPA Proceeding, which put all LBI assets under the control of the SIPC Trustee.  Because the Payroll/Payable System is connected to the LBI bank accounts and it will take some time for Barclays to establish its own bank accounts, Barclays is also affected by the SIPC Trustee's control over the LBI bank accounts.

28.     The Debtors and the SIPC Trustee have accordingly worked diligently and cooperatively to coordinate certaion of their efforts.  Namely, to ensure minimal disruption to the Debtors' existing businesses and Barclays' newly acquired businesses, the Debtors and certain former Lehman personnel (now employees of Barclays) met with the SIPC Trustee on September 22, 2008, the business day following his appointment, to discuss coordination on various issues, including the Cash Management System.  A task force of people representing the various interested groups was established to handle issues relating to the Cash Management System.  The task force began meeting on September 23, 2008 and established a protocol for cash management issues.

29.     The result of these meetings was the SIPC Trustee agreed that LBI could continue to serve as the paymaster for Lehman and Barclays until Lehman and Barclays establish their own bank accounts, on the condition that Lehman and Barclays prefund any amounts that LBI would pay as paymaster on behalf of those entities.  In addition, the SIPC Trustee will review and approve all payments through LBI accounts.  Other than the SIPC Trustee review, LBI will simply act as a pass-through intermediary and mere conduit in the Cash Management System.[4]  The Securities Investor Protection Corporation has been part of these discussions, and consents and agrees with this arrangement.

---

[4] As a consequence of the sale of Lehman's broker-dealer business to Barclays and the coordinated transfer of LBI's subisidiaries out of the LBI corporate structure in exchange for a secured note payable from LBHI to LBI, LBI's expenses are primarily expenses of liquidation,

30.     The Debtors are attempting to establish Bank Accounts that can be connected to the Payroll/Payable System as soon as possible, with the intent in the future to establish their own system for payroll and payables that is not connected to Barclays.  If the Debtors are able to establish those Bank Accounts shortly, then Barclays will continue to process payroll and payables of the Debtors out of those Bank Accounts until the Debtors are able to function without the Payroll/Payable System.  It may, however, take a while for the Debtors to establish Bank Accounts that can connect to the Payroll/Payable System, in which case Barclays, once it establishes its own bank accounts, will continue to process payroll and payables of the Debtor out of Barclays' bank accounts, as long as the Debtors prefund or reimburse Barclays for all such expenses.  The Debtors will eventually set up their own Bank Accounts and systems for processing payroll and accounts payable and will no longer need the Barclays bank accounts or the Payroll/Payables System.

31.     To the extent revenues from Lehman's unregulated businesses are insufficient to cover Lehman's expenses, the Debtors will fund those expenses through cash proceeds from the sale of the broker-dealer business to Barclays and other asset sales, which are located in LBHI's Bank Account at Barclays and LB 745's bank account at Barclays (collectively, the "Sale Proceeds Account").  The Cash in the Sale Proceeds Account will be transferred to the Main Operating Account in the Cash Management System.[5]  However, certain payments have been and will be made directly from the Sale Proceeds Account, as appropriate, rather than through the LBI paymaster accounts, as appropriate.

---

including recovering and marshalling assets and transferring securities customer accounts to other brokers and satisfying customer claims, paid  under the supervision of the SIPC Trustee and the Securities Investor Protection Corporation.

[5] Citibank has frozen most of the Debtors' accounts, including the Main Operating Account.  The Debtors will not use the Main Operating Account until Citibank unfreezes it.

32.     The prepetition intercompany accounts between each Debtor and each

other entity will be frozen (i.e. the books will be closed) as of the applicable Commencement

Date.  Postpetition intercompany movement of cash and collection/disbursement activity will be

accounted for in the same manner as it was prepetition under the supervision of Alvarez and

Marsal.  In addition, entities with postpetition intercompany receivables from the Debtors will be

entitled to an administrative expense claim under section 503(b)(1) of the Bankruptcy Code in

the same manner as other creditors that extend credit to the Debtors postpetition.

## II.

### Continuation of the Debtors' Centralized Cash Management System Is in the Best Interests of the Debtors, Their Estate, and All Parties in Interest

33.     The Debtors' Cash Management System constitutes ordinary course,

essential business practices providing significant benefits to the Debtors including, inter alia, the

ability to (i) control corporate funds, (ii) ensure the availability of funds when necessary, and (iii)

reduce costs and administrative expenses by facilitating the movement of funds and the

development of more timely and accurate account balance information.  Any disruption of the

Cash Management System could have a severe and adverse impact upon the Debtors' value.

34.     The Debtors will maintain their books and records relating to the Cash

Management System to the same extent the books and records were maintained before the

Commencement Date.  In this way, all transfers and transactions will be properly documented,

and accurate intercompany balances will be maintained.  As a result, the Debtors will be able to

accurately document and record the transactions occurring within the Cash Management System,

including intercompany transfers, for the benefit of all parties in interest.

35.     Based on the foregoing, the Debtors believe that maintenance of the

existing Cash Management System is in the best interests of their estate and all parties in interest.

Therefore, the Debtors seek authority to maintain and use their Cash Management System during their chapter 11 cases.

36.    Section 363(c)(1) of the Bankruptcy Code authorizes the debtors in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).  The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtors in possession with the flexibility to engage in the ordinary course transactions required to operate their business without unneeded oversight by their creditors or the court. Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne), 114 F.3d 379, 384 (2d Cir. 1997); In re Enron Corp., No. 01-16034 (ALG), 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. Mar. 21, 2003); Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.), 207 B.R. 406, 409 (S.D.N.Y. 1997).  Included within the purview of section 363(c) is a debtors' ability to continue the "routine transactions" necessitated by a debtors' cash management system.  Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.), 75 F.3d 1447, 1453 (10th Cir. 1996).  Accordingly, the Debtors seek authority under section 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, and disbursement, including intercompany transfers, of cash pursuant to their Cash Management System described above.

37.    To the extent the Debtors' continued funding of non-debtors affiliates is out of the ordinary course of business, it is justified by the unique facts and circumstances of these cases.  The Debtors' most valuable asset is likely their equity interests in (and intercompany receivables from) their subsidiaries and affiliates.  If the Subsidiaries are not funded and cannot meet their obligations, there is a strong likelihood that they will decreases substantially in value, causing great harm to the Debtors, their estates, and their creditors.  As

such, it is in the best interests of the Debtors' estates for the Debtors to continue funding those

subsidiaries they believe have value and the funding of which may benefit the Debtors' estates.

38.    Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that

"[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course

of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy

Code further provides:

> The court may issue any order, process, or judgment that is necessary or
> appropriate to carry out the provisions of this title.  No provision of this
> title providing for the raising of an issue by a party in interest shall be
> construed to preclude the court from, *sua sponte*, taking any action or
> making any determination necessary or appropriate to enforce or
> implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

39.    As this Court has stated, "[w]here the debtor articulates a reasonable basis

for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts

will generally not entertain objections to the debtor's conduct."  Comm. of Asbestos-Related

Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr.

S.D.N.Y. 1986).  When a valid business justification exists, the law vests the debtor's decision to

use property out of the ordinary course of business with a strong presumption that "'in making a

business decision the directors of a corporation acted on an informed basis, in good faith and in

the honest belief that the action taken was in the best interests of the company.'"  Official

Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147

B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

40.    The Bankruptcy Code also provides a debtor in possession the freedom to

obtain unsecured credit and incur unsecured debt in the ordinary course of business without

notice and hearing.  11 U.S.C. § 364(a); see, e.g., In re Amdura Corp., 75 F.3d at 1453 (10th Cir.

1996); <u>LNC Inv., Inc. v. First Fidelity Bank</u>, 247 B.R. 38, 45 (S.D.N.Y. 2000); <u>Mulligan v.</u>

<u>Sobiech</u>, 131 B.R. 917, 921 (S.D.N.Y. 1991).  The Debtors, therefore, seek authorization, to the

extent necessary, to obtain unsecured credit and incur unsecured debt in the ordinary operation of

their Cash Management System.

41.    The Court may exercise its equitable powers to grant the relief requested

herein.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process,

or judgment that is necessary to carry out the provisions of this title."  11 U.S.C. § 105(a).

Continuing the Cash Management System is vital to the efficient and economic administration of

these chapter 11 cases, and the automatic transfers are necessary to allow meaningful use of the

Cash Management System.  Therefore, it is within the Court's equitable power under section

105(a) to approve the continued use of the Cash Management System, as modified herein.

42.    These procedures are similar to those employed by comparable corporate

enterprises.  Moreover, the relief requested herein is routinely granted in other chapter 11 cases.[6]

<u>See</u>, <u>e.g.</u>, <u>Lexington Precision Corp.</u>, Case No. 08-11153 (MG) (Bankr. S.D.N.Y. Apr. 2, 2008)

[Doc. No. 25]; <u>In re PRC, LLC</u>, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. Jan. 25, 2008) [Doc.

No. 36]; <u>Silicon Graphics, Inc.</u>, Case No. 06-10977 (BRL) (Bankr. S.D.N.Y. May 10, 2006)

[Doc. No. 47], (Bankr. S.D.N.Y. July 19, 2006) [Doc. No. 375]; <u>Atkins Nutritionals, Inc.</u>, Case

No. 05-15913 (ALG) (Bankr. S.D.N.Y. Aug. 1, 2005) [Doc. No. 36]; <u>In re Footstar, Inc.</u>, Case

No. 04-22350 (ASH) (Bankr. S.D.N.Y. Mar. 3, 2004) [Doc. No. 43], (Bankr. S.D.N.Y. Mar. 31,

2004) [Doc. No. 250]; and <u>In re Loral Space & Commc'ns LTD.</u>, Case No. 03-41710 (RDD)

---

[6] Because of the voluminous nature of the unreported orders cited herein, they are not annexed to
this Motion.  Copies of these orders are available upon request of Debtors' counsel, including at
the hearing to consider the Motion.

(Bankr. S.D.N.Y. July 16, 2003) [Doc. No. 26].  Similar authorization is appropriate in these chapter 11 cases.

## III.

### Honoring Certain Prepetition Obligations of the Debtors Related to the Cash Management System Is in the Best Interests of the Debtors, Their Estate, and All Parties in Interest

43.    In connection with their use of the Cash Management System, the Debtors incur periodic service charges and other fees to the Banks for the maintenance of the Cash Management System (the "Service Charges").  The Debtors are unaware of any unpaid prepetition Service Charges as of the Commencement Date.  However, out of abundance of caution, the Debtors hereby request authority to pay the prepetition Service Charges, if any, that remain unpaid as of the Commencement Date.  Payment of the prepetition Services Charges is in the best interests of the Debtors, their estates and all parties in interest as it will prevent any disruption to the Cash Management System.  Because the Banks have setoff rights with respect to the Service Charges, payment of any prepetition Service Charges would not affect unsecured creditors and the issue of paying any prepetition Service Charges would just be a matter of timing.

44.    Accordingly, by this Motion, the Debtors seek authority, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6003 and 6004 to pay, at the Debtors' sole discretion, the prepetition Service Charges, if any.  Based on the foregoing, Bankruptcy Rule 6003 has been satisfied.

45.    Furthermore, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the stay of the order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## IV.

## Section 345(b) of the Bankruptcy Code

46.     Section 345 of the Bankruptcy Code governs a debtor's cash deposits

during a chapter 11 case and authorizes deposits of money as "will yield the maximum

reasonable net return on such money, taking into account the safety of such deposit or

investment."  11 U.S.C. § 345(a).  For deposits that are not "insured or guaranteed by the United

States or by a department, agency, or instrumentality of the United States or backed by the full

faith and credit of the United States," section 345(b) requires the estate to obtain from the entity

with which the money is deposited a bond in favor of the United States and secured by the

undertaking of an adequate corporate surety, unless the Court for cause orders otherwise.  11

U.S.C. § 345(a)-(b).  In the alternative, the estate may require the entity to deposit governmental

securities pursuant to 31 U.S.C. § 9303.  Section 9303 provides that when a person is required by

law to give a surety bond, that person, in lieu of a surety bond, may provide a governmental

obligation.  31 U.S.C. § 9303.

47.     Lehman has historically deposited its excess cash nightly in overseas

investment accounts.  Many of these Banks refused to return the Debtors' overnight deposits

immediately prior to the filing.  As such, since the Commencement Date, the Debtors have not

made any such investments.  The Debtors have not yet determined whether their Bank Accounts

are maintained at banks that have been approved by the U.S. Trustee as authorized bank

depositories.  Moreover, it is likely that some of their Bank Accounts contain funds in excess of

the amounts insured by the Federal Deposit Insurance Corporation (the "FDIC").   To the extent

funds in the Bank Accounts at Banks exceed the amounts insured by the FDIC, the Debtors

believe that such amounts will be secure.  Among other considerations, the Banks are highly

rated and secure federally chartered banks subject to supervision by federal banking regulators, and the Debtors generally retain the right to remove funds held at such banks.

48.     Nonetheless, the Debtors propose to engage in discussions with the U.S. Trustee to determine what modifications, if any, to the Bank Accounts and other investment guidelines would be appropriate under the circumstances.  Accordingly, the Debtors request a 30-day extension (or such additional time to which the U.S. Trustee may agree) of the time period in which to either come into compliance with section 345(b) of the Bankruptcy Code or to make other arrangements that would be acceptable to the U.S. Trustee.  The Debtors believe that the benefits of the requested extension far outweigh any harm to the estate.  See generally In re Serv. Merchandise Co., Inc., 240 B.R. 894 (Bankr. M.D. Tenn. 1999) (noting that some of the factors to consider in determining whether cause exists "for relief from the strictures of § 345(b)" is whether benefits to the debtors outweigh the harm, if any, to the estate).

49.     If pursuant to the foregoing discussions with the U.S. Trustee, it shall become necessary to modify the Cash Management System, the Debtors request authority to make such modifications to the Cash Management System.  The Debtors anticipate that the modifications to the Cash Management System may include, without limitation, the opening of new bank or investment accounts.

50.     The Debtors request that the Court authorize and direct financial institutions to honor the Debtors' request to open or close, as the case may be, the Bank Accounts or additional bank or investment accounts as may be necessary in connection with the foregoing.

## V.

### Maintenance of the Debtors' Existing Bank
### Accounts and Business Forms Is Warranted

51.      As part of the Cash Management System, the Debtors maintain numerous

Bank Accounts.  The Debtors routinely deposit and withdraw funds from the Bank Accounts by

checks, wire transfers, and automated clearinghouse transfers.

52.      Rigid adherence to the U.S. Trustee's "Operating Guidelines and

Reporting Requirements For Debtors in Possession and Trustees" (the "Guidelines") would

require, as of the Commencement Date, the closure of the Debtors' prepetition bank accounts,

the opening of new accounts, and the immediate printing of new checks with a "Debtors in

Possession" designation on them.  The Debtors believe, however, that their transition to chapter

11 will be smoother, less costly, and more orderly, and disruption and harm to their Cash

Management System will be minimized, if the Bank Accounts are continued following the

commencement of these cases with the same account numbers; provided, however, that checks

issued or dated prior to the Commencement Date will not be honored absent a prior order of the

Court.

53.      Unless otherwise ordered by this Court, no Bank shall honor or pay any

check issued on account of a prepetition claim.  The Banks may honor any checks issued on

account of prepetition claims only where this Court has specifically authorized such checks to be

honored.  Furthermore, notwithstanding anything to the contrary in any other "first day" order or

other order of this Court, the Debtors request the Banks be authorized to accept and honor all

representations from the Debtors as to which checks should be honored or dishonored consistent

with any order(s) of this Court, whether or not the checks are dated prior to, on, or subsequent to

the Commencement Date.  The Banks shall not be liable to any party for following the Debtors'

instructions or representations regarding which checks should be honored or for implementing

the automatic transfer of funds between their Bank Accounts.

54.     By preserving business continuity and avoiding disruption and delay to the

Debtors' disbursement obligations, including payroll, that would necessarily result from closing

the Bank Accounts and opening new accounts, all parties in interest, including employees,

vendors, and customers, will be best-served.  The confusion that would otherwise result, absent

the relief requested herein, would ill-serve the Debtors' rehabilitative efforts.

55.     Accordingly, the Debtors respectfully request authority to maintain the

Bank Accounts in the ordinary course of business, to continue utilizing the Cash Management

System to manage cash in a manner consistent with prepetition practices, and to pay any ordinary

course bank fees that may be incurred in connection with the Bank Accounts or any other new

bank account that may be opened pursuant to an order of this Court following the

Commencement Date.

56.     In addition, to minimize expenses, the Debtors further request they be

authorized to continue to use their correspondence and business forms, including, but not limited

to, purchase orders, multi-copy checks, letterhead, envelopes, promotional materials, and other

business forms (collectively, the "Business Forms"), substantially in the forms existing

immediately before the Commencement Date, without reference to their status as debtors in

possession.  Because most of the Debtors' payments were made out of LBI bank accounts, to the

extent they use LBI bank accounts for payroll and vendor payments, they are requesting to

continue to use LBI check stock; provided, however, that the Debtors shall commence marking

"Debtors in Possession" and the chapter 11 case number under which these cases are being

jointly administered on their own existing check stock and wire transfer instructions instead of

having new stock printed with such marking.[7]  The Debtors intend to open their own Bank

Accounts.  When they do so, they will order new check stock and shall print "Debtors in

Possession" and the chapter 11 case number under which these cases are being jointly

administered on the stock.

       57.    If the Debtors are not permitted to maintain and utilize their current Bank

Accounts and their existing Business Forms, including the bank accounts and check stock of LBI

and Barclays, the resultant prejudice will include significant (i) disruption to the Debtors'

ordinary financial affairs and business operations, (ii) delay in the administration of the Debtors'

estate, and (iii) cost to the estates to set up new systems, open new accounts, print new business

forms, and print new checks.

       58.    In other chapter 11 cases, bankruptcy courts have recognized that strict

enforcement of the requirement that a debtor in possession close their bank accounts does not

serve the rehabilitative process of chapter 11.  Accordingly, these courts have waived such

requirements and replaced them with alternative procedures similar to those proposed here.[8]  See

e.g., Lexington Precision Corp., Case No. 08-11153 (MG) (Bankr. S.D.N.Y. Apr. 2, 2008) [Doc.

No. 25]; In re PRC, LLC, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. Jan. 25, 2008) [Doc. No.

36]; Silicon Graphics, Inc., Case No. 06-10977 (BRL) (Bankr. S.D.N.Y. May 10, 2006) [Doc.

No. 47], (Bankr. S.D.N.Y. July 19, 2006) [Doc. No. 375]; Atkins Nutritionals, Inc., Case No. 05-

15913 (ALG) (Bankr. S.D.N.Y. Aug. 1, 2005) [Doc. No. 36]; In re Footstar, Inc., Case No. 04-

22350 (ASH) (Bankr. S.D.N.Y. Mar. 3, 2004) [Doc. No. 43], (Bankr. S.D.N.Y. Mar. 31, 2004)

---

[7] LBHI has check stock, but does not use it often.

[8] Because of the voluminous nature of the unreported orders cited herein, they are not annexed to
this Motion.  Copies of these orders are available upon request of Debtors' counsel, including at
the hearing to consider the Motion.

[Doc. No. 250]; and In re Loral Space & Commc'ns LTD., Case No. 03-41710 (RDD) (Bankr.

S.D.N.Y. July 16, 2003) [Doc. No. 26].  Similar authorization is appropriate in these chapter 11

cases.

59.     Several of their Banks have been denying the Debtors access to

information relating to their Bank Accounts (for example, information on which of their checks

cleared, etc.) and the LBI bank accounts that the Debtors used prepetition.  The Debtors request

that the Court order that all Banks provide the Debtors with complete and unfettered access to

information relating to their Bank Accounts and their Subsidiaries' bank accounts to the same

extent as they had access prepetition.

## The Relief Requested is Appropriate

60.     Based upon the foregoing, the Debtors submit that the relief requested

herein is essential, appropriate, and in the best interest of the Debtors' estates and creditors, and

therefore, should be granted.

## Notice

61.     No trustee or examiner has been appointed in these chapter 11 cases.  The

Debtors have served notice of this Motion in accordance with the procedures set forth in the

order entered on September 22, 2008 governing case management and administrative procedures

for these cases [Doc. No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

Committee; (iii) the attorneys for the Debtors' postpetition lenders; (iv) the Securities and

Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Attorney for the

Southern District of New York; (vii) the attorneys for the SIPC Trustee; and (viii) all parties who

have requested notice in these chapter 11 cases.  The Debtors submit that no other or further

notice need be provided.

62.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  October 3, 2008
        New York, New York

/s/ Alfredo Perez
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## <u>EXHIBIT A</u>

## BANK ACCOUNTS

## LBHI

| Bank | Acct. Num. | Account Title |
|------|-----------|---------------|
| | | |
| Bank of America, New York | 6550-1-61536 | LB HOLDINGS INC, UK BRANCH |
| Citibank | 40615202 | LBHI Main Operating Account |
| Citibank | 3062-2222 | Lehman Brothers Holdings Inc. |
| J.P. Morgan Chase & Co. | 066-650682 | Lehman Brothers Holdings Inc. |
| Citibank | 3062-4711 | Lehman Brothers Holdings Inc. |
| Australia and New Zealand Banking Group Limited | 463034NZD00001 | LB HOLDINGS INC, UK BRANCH |
| Citibank, A.S. | 201492017 | LB HOLDINGS INC, UK BRANCH |
| Citibank Rt. | 201834007 | LB HOLDINGS INC, UK BRANCH |
| Citibank, A.S. | 91803003 | LB HOLDINGS INC, UK BRANCH |
| DnB NOR Bank ASA | 7966.02.01268 | LB HOLDINGS INC, UK BRANCH |
| First National Bank | 9015175 | LB HOLDINGS INC, UK BRANCH |
| HSBC BANK PLC | 400515 57401113 | LB HOLDINGS INC, UK BRANCH |
| Israel Discount Bank | 518-61-950092 | LB HOLDINGS INC, UK BRANCH |
| Royal Bank of Canada | 000022732758 | LB HOLDINGS INC, UK BRANCH |
| Citibank Handlowy | PL02103015080000000300759009 | LB HOLDINGS INC, UK BRANCH |
| Bank of America | 6014-30058013 | LB HOLDINGS INC, UK BRANCH |
| Bank of America | 6064-20805010 | LB HOLDINGS INC, UK BRANCH |
| Banco Nacional de Mexico S.A. | 0009720006 | Lehman Brothers Holdings Inc MXN FX Account |
| National Commercial Bank | 88310027000106 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan AG | 611-16-00729 | Lehman Brothers Holdings Inc UK Branch |
| SEB | 5295-0017001256 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| Citibank Pty Limited | 0-206441-054 | Lehman Brothers Holdings Inc UK Branch |
| ABN-AMRO | 264100254726 | LEHMAN BROTHER HOLDINGS INC UK BRANCH |
| Landsbanki Islands | 0100-27-090375 | LEHMAN BROTHERS HOLDINGS INC (UK BRANCH) |
| HSBC Bank Middle East Ltd | 021-110309-437 | LBHIUK Funding Account |
| Ceskoslovenska Obchodni Banka AS | 255030893 | Lehman Brothers Holding Inc (UK Branch) |
| ZAO Citibank | 40807810500501370001 | LBHI (UK Branch) |
| HSBC Bank Kazakhstan | 001-006873-175 | LBHIUK |
| HSBC Bank Kazakhstan | 001-006873-170 | LBHIUK Cash USD |
| ING Sofia | BG56 INGB 9145 1002 4460 14 | LBHIUK |
| Swedbank | 17608 | LBHIUK |
| Vilnius Bankas | LT22 7044 0600 0636 9498 | LBHIUK |
| Hansabanka | LV37HABA0551021211699 | LBHIUK |
| Citibank, N.A. | 028 780 000000 0400557519 71 | LBHIUK |
| Zagrebacka Banka | 5180002060191 | LBHIUK |
| Citibank, N.A. | 11953788 | LBHIUK |
| HSBC Bank Middle East Ltd | 002-297299-200 | LBHIUK |

| Citibank, N.A. | 3046-6725 | LBHI-Expat USD Account |
|---|---|---|
| Citibank | 3856-9112 | LBHI Flexible Spending |
| Citibank | 3889-3991 | LBHI CP Settlement Account |
| Citibank | 4074-3925 | LBHI Administrative Services Only |
| Bank One NA | 7046324 | LB Holdings Inc, UK Branch |
| Citibank | | Lehman Brothers OTC Derivatives Inc. |
| Lehman Brothers Bank | 10007987 | LBHI-Trustee Of P & I For Various GNMA MBS |
| Lehman Brothers Bank | 16003196 | LBHI-Trustee Of Servicers' Escrow For GNMA MBS Cur |
| Lehman Brothers Bank | 17004417 | LB Futures Asset Management Company |
| Lehman Brothers Bank | 508000142689 | Trico VII Dealer Note Payments |
| Toronto Dominion Bank Financial Group | 2501-0301924 | Lehman Brothers Holding Inc. |
| Toronto Dominion Bank Financial Group | XXPlaceholderXX | Lehman Brothers Holding Inc. |
| Citibank | 3054-5554 | LBHI Bank Loans |
| J.P. Morgan Chase & Co. | 066614864 | LBHI-TRUSTEE OF P&I CUSTODIAL ACCT |
| J.P. Morgan Chase & Co. | 066907527 | LBHI-TRUSTEE OF P&I CUSTODIAL DISBURSEMENT ACCT |
| Bank of America, West Coast | 12334-10604 | Lehman Brothers Holdings Inc. Fed Funds |
| J.P. Morgan Chase | 475-025970 | Lehman Brothers Group Insurance Plan - MetLife Dental Program |
| Citibank | 3057-3934 | LBH Equity Deriv for the benefit of LBF NA |
| Mellon Bank NA | 0224098 | Lehman Brothers Holdings Inc. - Equipment |
| Mellon Bank NA | 0224127 | Lehman Brothers Holdings Inc. - Leasehold Improvements |
| Lehman Brothers Bank | 508000162133 | Lehman Brothers Holdings Inc. |
| Mellon Tr Co of NE | 012-9533 | Lehman Brothers Holdings Inc. – Piscataway Leasehold Improvements |
| Mellon Tr Co of NE | 012-9605 | Lehman Brothers Holdings Inc. – Piscataway Equipment |
| Lehman Brothers Bank | 508000150211 | LBHI as Agent for Boise Land & Timber II, LLC Collateral Account |
| J.P. Morgan Chase Bank, N.A. | 2900113594 | JP Morgan Chase Bank N.A., Lehman Brothers Holdings Inc., Cash Collateral Account. |
| HSBC Bank USA | 0487667463 | Lehman Brothers Holdings Inc. |
| Bank of America, New York | 6550914465 | Lehman Brothers Holdings Inc. |
| Spafid S.p.a. | 1776/01 | Lehman Brothers Holdings Inc |
| Standard Chartered Bank | ID0000062673 | Lehman Brothers Co-Investment Group Cayman AIV I, L.P. |
| Standard Chartered Bank | ID0000062680 | Lehman Brothers Co-Investment Capital Partners Cayman AIV I, L.P. |
| Standard Chartered Bank | ID0000062694 | Lehman Brothers Co-Investment Partners Cayman AIV I, L.P. |
| J.P. Morgan Chase & Co. | LCE | Lehman Brothers Holdings Inc. |
| HSBC Bank USA | 10-878-814 | Lehman Brothers Holdings Inc. (Escrow Account - US Underwriters) |
| HSBC Bank USA | 10-878-816 | Lehman Brothers Holdings Inc. (Escrow Account - UK Underwriters) |
| J.P. Morgan Chase & Co. | 753-881-366 | Lehman Brothers Holdings Inc., by Tishman Speyer, as Agent |
| J.P. Morgan Chase & Co. | 066-141-605 | Holdings Check Swap |
| Citibank EAB Branch | 002-056-893 | Lehman Brothers Holdings Inc. |
| Lehman Brothers Bank | 17004425 | Lehman Brothers Holdings Inc. |

| | | |
|---|---|---|
| Euroclear | 24909 | LBHI UK Tri-Party |
| Euroclear | 24909 | LBHI UK Tri-Party |
| Euroclear | 24909 | LBHI UK Tri-Party |
| Euroclear | 24909 | LBHI UK Tri-Party |
| Euroclear | 24909 | LBHI UK Tri-Party |
| J.P. Morgan Chase & Co. | LXH | Lehman Brothers Holding Inc. - Segregated |
| Lehman Brothers Asset Management | 10-878-817 | HSBC as trustee for Lehman Brothers Holdings Inc. (Trust Account - UK Underwriters) |
| ABN Amro/SEI Global Fund | ABN002721 | ABN AMRO Global Liquidity Euro Fund |
| Pioneer Investments | LMB0000004 | Plurifond |
| Merrimac Funds Group | 3829 | Lehman Brothers Holdings Inc. |
| Black Rock | 24911 | Lehman Brothers Holdings Inc. |
| Scudder Investments Service Company | 240002335 | Waterferry |
| Strong Capital Management | 2490000859 | Waterferry |
| J.P. Morgan Fleming Asset Management | 5015137 | Waterferry |
| Citigroup Asset Management | 454329 | Lehman Brothers Holdings Inc. |
| Nations Funds | 4000161655 | Waterferry |
| Prudential Mutual Fund Services | 2808243303 | Waterferry |
| Nations Funds | 4000136616 | Waterferry |
| One Group Mutual Funds | 707002302 | Lehman Brothers Holdings Inc. |
| Barclays Global Investors Funds | 3599 | Lehman Brothers Holdings Inc. |
| AMR Investment Services, Inc. | 133216325 | Waterferry |
| Black Rock | 23644 | Waterferry |
| Citigroup Asset Management | 454329 | Waterferry |
| Deutsche Bank Asset Management | 168724629 | Waterferry |
| Dreyfus Service Corporation | 5100031514 | Waterferry |
| Evergreen Investments Management Company, LLC | 1009323568 | Waterferry |
| Federated Investors, Inc. | 4551148 | Waterferry |
| Fidelity Investments | 503380743 | Waterferry |
| Merrill Lynch Investment Management | 3386194 | Waterferry |
| Phoenix Investment Partners | 39073309 | Waterferry |
| Merrill Lynch Investment Management | 3386195 | Waterferry |
| Merrill Lynch Investment Management | 3386196 | Waterferry |
| Morgan Stanley Investment Management Inc. | 756001081 | Waterferry |
| Scudder Investments Service Company | 240002673 | Waterferry |
| Merrill Lynch Investment Management | 121 | Lehman Brothers Holdings Inc. |
| Black Rock | 16 | Lehman Brothers Holdings Inc. |
| Wells Fargo Funds | 2430000614 | Waterferry |
| US Bancorp Asset Management, Inc. | 9400051318 | Waterferry |
| Lehman Brothers Asset Management | 143122911-6 | Waterferry |
| Northern Trust Corporation | 8490010482 | Lehman Brothers Holdings Inc. |
| The Reserve Funds | 79933848 | Waterferry |
| The Reserve Funds | 79933849 | Waterferry |
| Northern Trust Corporation | 8450016588 | Lehman Brothers Holdings Inc. |
| Northern Trust Corporation | 8460010916 | Lehman Brothers Holdings Inc. |

| | | |
|---|---|---|
| Northern Trust Corporation | 8470017836 | Lehman Brothers Holdings Inc. |
| Northern Trust Corporation | 8480012183 | Lehman Brothers Holdings Inc. |
| Northern Trust Corporation | 8860010314 | Lehman Brothers Holdings Inc. |
| The Reserve Funds | 80831931 | Waterferry |
| Bank of New York | 125735 | Lehman Brothers Holdings Inc. |
| AMR Investment Services, Inc. | GE0000015-00 | Waterferry |
| SunTrust Bank | 7916865 | Waterferry |
| UBS Global Asset Management | 300285 | Waterferry |
| The Reserve Funds | 81713431 | Waterferry |
| Lehman Brothers Asset Management | 1000370 | Lehman Brothers Holdings Inc. |
| Utendahl Capital Management, L.P. | 1956-30088 | Waterferry |
| The Reserve Funds | 82981648 | Waterferry |
| The Reserve Funds | 82981649 | Waterferry |
| Russell Investments | 10468511 | Lehman Brothers Holdings Inc. |
| National Bank of Kuwait | 0800194390101 | LBHIUK |
| Citibank | 30775763 | LBHI (UK Branch) |
| HSBC BANK PLC | 59972077 | LBHI AIG Escrow |
| HSBC BANK PLC | 59972085 | LBHI AIG Escrow |
| HSBC BANK PLC | 59972093 | LBHI AIG Escrow |
| HSBC BANK PLC | 993316 | LBHI AIG Escrow |
| J.P. Morgan Chase Bank, N.A. | 32500601 | LEHMAN BROTHER HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 32500602 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 32500603 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 32500604 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 32500605 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 32500606 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 32500607 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 32500608 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 32500609 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 32500610 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 32500611 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 32500612 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 32500613 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 32500614 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 32500615 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 32500616 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 32500617 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 32500618 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| J.P. Morgan Chase Bank, N.A. | 37492601 | LBHI UK Pledge 1 |
| JP Morgan | 37492603 | Local Government Pension Institution Pledge (LBHIUK) |

| Bank of America, New York | 7009761536 | LBHIUK USD Automatch account |
| J.P. Morgan Chase Bank, N.A. | 32500619 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| Euroclear | 24909 | LBHI UK TRI PARTY |
| Euroclear | 24909 | LBHI UK TRI PARTY |
| Euroclear | 24909 | LBHI UK Tri-Party |
| DWS Group | C5846459 | LB HOLDINGS INC, UK BRANCH |
| Deutsche Bank | L-002270 | Deutsche Global Liquidity Series |
| Banca Intesa | IT19B0306912707073456886853 | LBHI UK Nextra fund - MONEY FUND WASH ACCOUNT |
| JPM Fleming AM | ILS0000816 | JPMF Euro Enhanced Yield Fund |
| Credit Lyonnais Asset Management | 0000999109U cle 10 | CLAM Eonia Investment |
| Standard Life Investments | 10030 | Money Market Funds |
| Deutsche DWS Investment SA | C6124599 | Deutsche Asset Management |
| Pioneer Investments | 1099266 | Activest |
| Generali Asset Management SGR S.p.A. | 386126 | Generali Euro Short Term Yield Plus fund |
| Lehman Brothers Liquidity Fund Plc | 1000260 | Lehman Liquidity Fund: LBCF4 |
| HSBC BANK PLC | 0000860 | HSBC Liquidity Plus Fund |
| HSBC BANK PLC | 0000860 | HSBC Liquidity Fund |
| ABN-AMRO | 9785 | ABN AMRO Interest Growth Fund |
| ABN-AMRO | ABN002721 | ABN AMRO global Liquidity Funds |
| Lehman Brothers Liquidity Fund Plc | 1000364 | Lehman Brothers Capital Funding V |
| JP Morgan Administration Services Ireland (Ltd) | LEHA100231 | LEHMAN BROTHERS HOLDINGS INC UK BRANCH |
| BlackRock | 4236366 | Blackrock Liquidity Fund |
| JP Morgan Asset Management (Europe) S.a.r.l | ILF0001952 | JP Morgan Liquidity Fund |
| Morley Liquidity Funds Plc | 00000733 | Morley Sterling Liquidity Fund |
| Pioneer Investments | 24462 | Pioneer Institutional Fund 19 |
| Northern Trust Global Investments | 14117 | Nothern Trust Liquidity Pool |
| BNP Asset Management London | 101720 | BNP Insticash EUR - LBHI |

## LB 745 LLC

| Bank | Acct. Num. | Account Title |
| --- | --- | --- |
| J.P. Morgan Chase & Co. | 066-624436 | LB 745 LLC Promissory Note |

## PAMI STATLER ARMS LLC

no bank accounts

## CONTACT INFORMATION FOR BANKS

| Bank | Relationship Contact | Address | City | State | Country | Zip | Phone | Fax | Email |
|------|------|------|------|------|------|------|------|------|------|
| **ABN-AMRO [Royal Bank of Scotland]** | Alan Davis | 101 Park Avenue | New York | NY | USA | 10178 | 203-618-6571 | | alan.davis@rbsgc.com |
| **AMR Investment Services, Inc.** | Mason Martin | 601 Montgomery St, Ste 1800 | SF | CA | USA | 94111 | 415-248-5646 | | mason.martin@icdfunds.com |
| **Australia and New Zealand Banking Group Limited** | Vincent Sabatino | 55 Collins Street | Melbourne | Victoria | Australia | 3001 | 61 392 732 574 | 61 392 273 265 | |
| **Banca Intesa** | Noemi Oslo | 90 Queen Street | London | | UK | EC4N 1SA | 44 0 20 7651 3174 | 44 0 20 7651 3207 | noemi.oslo@bancaintesa.co.uk |
| **Banco Nacional de Mexico S.A.** | Katherine Lukas | 388 Greenwich Street 24th Floor | New York | NY | USA | 10013 | 212-816-6413 | 212-816-6296 | katherine.lukas@citigroup.com |
| **Bank of America** | B. J. MAZZELLA | 335 Madison Avenue | New York | NY | USA | 10017 | (212) 503-7761 | (212) 503-7030 | bernadette.mazzella@bankofamerica.com |
| **Bank of New York Dividend Trust** | Terence R. Law | One Wall Street 41st Floor | New York | NY | USA | 10286 | 212-635-6829 | 212-635-1194 | terencelaw@bankofny.com |
| **Bank One NA [JPMorgan Chase]** | Mark Doctoroff | 277 Park Avenue | New York | NY | USA | 10017 | 212-622-1878 | | mark.g.doctoroff@jpmorgan.com |
| **Barclays Global Investors Funds** | Melissa Haave | 45 Fremont Street | San Francisco | CA | USA | 94105 | 415.402.4941 | 415.618.5728 | melissa.haave@barclaysglobal.com |
| **Black Rock** | Carrie Murray | 100 Bellevue Parkway | Wilmington | DE | USA | 19809 | 800-441-7450 | 302-797-2366 | carrie.murray@blackrock.com |
| **BNP Paribas** | Frank Sodano | 787 7th Ave. | New York | NY | USA | 10019 | 212-841-2084 | 212-841-2717 | frank.sodano@americas.bnpparibas.com |
| **Ceskoslovenska Obchodni Banka AS** | Timea Zimkova | Lehotskeho 3 | Bratislava | | Slovakia | 81225 | 4217 5966 8418 | 4217 5966 8400 | tzimkova@scob.sk |
| **Citibank** | Kate Lukas | 388 Greenwich Street-22nd | New York | NY | USA | 10013 | (212) 816-6413 | | katherine.lukas@citigroup.com |

| Bank | Relationship Contact | Address | City | State | Country | Zip | Phone | Fax | Email |
|---|---|---|---|---|---|---|---|---|---|
| | | Floor | | | | | | | |
| **Citigroup Asset Management** | Kate Lukas | 388 Greenwich Street- 22nd Floor | New York | NY | USA | 10013 | (212) 816-6413 | | katherine.lukas @citigroup.com |
| **Credit Lyonnais Asset Management** | Terry Grant | 1301 Avenue of the Americas | New York | NY | USA | 10019 | 212-261-7783 | 212-261-3401 | tgrant@clamericas.com |
| **Deutsche Bank** | John Estrada | 60 Wall Street, 28th Floor | New York | NY | USA | 10005 | (212) 250-1636 | (212) 797-0343 | john.estrada@db.com |
| **DnB NOR Bank ASA** | Elaine Christiansen | Stranden 21, Aker Brygge | Oslo | | Norway | NO-0021 | 47 22 48 18 29 | 47 22 48 28 46 | elaine.christiansen@dnb.no |
| **Dreyfus Service Corporation** | Lou Bazata | 200 Park Avenue | New York | NY | USA | 10166 | 516-338-3503 | 516-338-3642 | n/a |
| **DWS Group** | Rainer Habisch | 2 Boulevard Konrad Adenauer | Luxembourg | | | BP766 | 49 69 71909 8581 | 49 69 71909 8289 | rainer.habisch@db.com |
| **Euroclear** | Julien Piron | 1, Boulevard du Roi Albert II | Brussels | | Belgium | B-1210 | +32 2 326 2812 | +32 2 326 2645 | julien.piron@euroclear.com |
| **Evergreen Investments Management Company, LLC** | Sarah Ellen Henderson | 200 Berkeley Street 18th floor | Boston | MA | USA | 02116 | (704)374.6869 | (704)383.4960 | shenderson@evergreeninvestments.com |
| **Federated Investors, Inc.** | Jennifer Skruch | 5800 Corporate Drive | Pittsburgh | PA | USA | 15237 | (412) 358-2247 | | jskruch@federatedinv.com |
| **Fidelity Investments** | Marissa B. Hedge | 500 Salem Street OS1N2 | Smithfield | RI | USA | 02917 | 973 401-1872 | 508-263-3979 | Marissa.Hedge@fmr.com |
| **First National Bank** | Ms. Shonette Kruger | 4 FirstPlace Bank, 5th floor | Johannesburg | | South Africa | 2001 | 27 11 371 7156 | 27 11 371 6765 | shonette.kruger @fnbcorporate.co.za |
| **Generali Asset Management SGR S.p.A.** | Cinzia Montuoro | Direzione Commerciale - Roma | Rome | | Italy | | 0039 065 0573349 | 0039 06 50573 405 | Cinzia.Montuoro@AM.Generali.com |

| Bank | Relationship Contact | Address | City | State | Country | Zip | Phone | Fax | Email |
|---|---|---|---|---|---|---|---|---|---|
| Hansabanka | Mr. Ilze Kokorevica | Roma | Riga | | Latvia | | 371 74445812 | 371 7444400 | ilze.kokorevica@hansabanka.lv |
| HSBC | Paul Lopez | Italy | New York | NY | USA | 10018 | 212-525-6662 | 212-525-8370 | paul.lopez@us.hsbc.com |
| ING Sofia | Ms. Katya Maneva | 12 Emil Bersinski | Sofia | | Bulgaria | | 359 2 917 6584 | 359 2 917 65 78 | katya.maneva@ingbank.com |
| Israel Discount Bank | Ken Walters | 511 Fifth Avenue | New York | NY | USA | 10017 | (212) 551-8820 | | kwalters@idbny.com |
| J.P. Morgan Chase & Co. | Mark Doctoroff | 277 Park Avenue | New York | NY | USA | 10017 | 212-622-1878 | | mark.g.doctoroff@jpmorgan.com |
| Landsbanki Islands | Mr. BJORN SIGURDSSON | Laugavegur 77 | Reykjavik | | Iceland | 155 | (354) 560-6404 | (354) 552-9882 | bjorn.sigurdsson@landsbanki.is |
| Lehman Brothers Asset Management | Bob Swidey | 125 High Street 17 Floor | Boston | MA | USA | 02110-2704 | +1 617 342 4259 | 646-834-0368 | robert.swidey@lehman.com |
| Lehman Brothers Bank | Gail Stawicki | 1000 North West Street, Suite 200 01 Floor | Wilmington | DE | USA | 19801 | +1 302 552 2110 | 212-520-9767 | Gstawicki@lehmanbank.com |
| Lehman Brothers Liquidity Fund Plc | Bob Swidey | 125 High Street 17 Floor | Boston | MA | USA | 02110-2704 | +1 617 342 4259 | 646-834-0368 | robert.swidey@lehman.com |
| Mellon | Eddie Hubbard | 110 Sherburn Road | Severna Park | MD | USA | 21146 | (410) 384-7224 | | hubbard.e@mellon.com |
| Merrill Lynch Investment Management | Joseph Conklin | 800Scudders Mill Road | Plainsboro | NJ | USA | 08536 | 609-282-6041 | | joseph_conklin@ml.com |
| Merrimac Funds Group | Robert Swidey | 260 Franklin Street | Boston | Massachusetts | USA | 02110 | (617) 342 - 4259 | (646) 834 - 0368 | robert.swidey@lehman.com |
| Morgan Stanley Investment Management Inc. | Franco D'Urso Jr. | 100 Front Street, 8th Floor | West Conshohocken | PA | USA | 19428 | +1 610 260-7381 | | Franco.D'Urso@morganstanley.com |
| Morley Liquidity | Colin Cookson | No. 1 Poultry | London | n/a | UK | EC2R | 44 20 7809 | 44 20 7809 6543 | colin.cookson@morleyfm.com |

| Bank | Relationship Contact | Address | City | State | Country | Zip | Phone | Fax | Email |
|---|---|---|---|---|---|---|---|---|---|
| Funds Plc | | | | | | 8EJ | 6357 | | |
| National Bank of Kuwait | Rakan Al-Ghanim | P.O. Box 95 | Safat | n/a | Kuwait | 13001 | 965-259-5325 | 965-224-6977 | rakang@nbk.com |
| National Commercial Bank | Sami Wafa | P.O. Box 3555, Jeddah 21481, Saudi Arabia | | | Saudi Arabia | | 966 (-2) - 6464025 | | s.wafa@alahli.com' |
| Nations Funds | jeff stallard | 101 South Tryon Street | Charlotte | NC | USA | 28255 | 704-388-1784 | 704-348-0866 | jeff.stallard@columbiamanagement.com |
| Northern Trust Corporation | Scott Henderson | 50 South LaSalle Street | Chicago | IL | USA | 60675 | (312) 444-5909 | (312) 630-0717 | SH59@NTRS.com |
| One Group Mutual Funds | Doug Applegate | 1111 Polaris Parkway | Columbus | OH | USA | 43271 | 877-691-1118 | 614-213-2302 | |
| Phoenix Investment Partners | Lori Weller | 101 Munson Street | Greenfield | MA | USA | 01302-0088 | 800-243-1574 ext 4592 | 413-772-4592 | lori.weller@phxinv.com |
| Pioneer Investments | Michael Curran | George Quay Plaza, Dublin 2 | Dublin | n/a | Ireland | 2 | 353 1 480 2107 | 353 1 449 5107 | michael.curran@pioneerinvestments.com |
| Prudential Mutual Fund Services | Gerri McAteer | Two Gateway Center | Newark | New Jersey | USA | 07102 | (973) 367-9329 | | |
| Royal Bank of Canada | Alison Barnard | 200 Bay Street | Toronto | Ontario | Canada | M5J 2J5 | (416) 974-7735 | (416) 974-8838 | alison.barnard@rbc.com |
| Russell Investments | Matthew Clay | 909 A. Street | Tacoma | WA | USA | 98402 | 253-439-4750 | 253-779-1106 | MClay@russell.com |
| Scudder Investments Service Company | John Larkin | One south Street | Baltimaore | Maryland | USA | 21202 | 800 730 1313 | | |
| SEB | Lasse Larsen | P.O. Box 2098 | Copenhagen | n/a | Denmark | DK-1014 | 45 3376 1219 | 45 3376 1250 | lasse.larsen@seb.dk |
| Spafid S.p.a. | Salvatore Guardino | Via Filodrammatici, 10 | Milano | n/a | Italy | | 00 39 02 8829 826 | | salvatore.guardino@mediobanca.it |
| Standard Chartered Bank | Bill Huges | 1 Madison Ave. | New York | NY | USA | 10010 | 212-667-0355 | (212) 667-0251 | bill.hughes@us.standardchartered |
| Standard Life Investments | Liz Davidson | 1 George Street | Edinburgh | n/a | UK | EH2 2LL | 0131 245 2984 | | |

| Bank | Relationship Contact | Address | City | State | Country | Zip | Phone | Fax | Email |
|---|---|---|---|---|---|---|---|---|---|
| **Strong Capital Management** | Levi Lura | 100 Heritage Reserve | Menomonee Falls | WI | USA | 53051 | 800-733-2274 | | |
| **SunTrust Bank** | Patrick Mason | 50 Hurt Plaza, Suite 1400 | Atlanta | GA | USA | 30303 | 404-581-1495 | | Patrick.Mason@truscocapital.com |
| **Swedbank** | Lena Hallen | 8 Brunkebergstorg | Stockholm | n/a | Sweden | S-105 34 | 46 (0)8 585 913 21 | 46 8 723 71 47 | lena.hallen@swedbank.se |
| **The Reserve Funds** | Brandon Semilof | 1250 Broadway | New York | NY | USA | 10001 | 212-401-5731 | | Brandon_Semilof@reservefunds.com |
| **Toronto Dominion Bank Financial Group** | SHARON CARO | 77 King Street West, 19th Floor | Toronto | Ontario | Canada | M5K 1A2 | (416) 982-6579 | (416) 982-7838 | caros@tdcibg.com |
| **UBS Global Asset Management** | Raymond Otero | 51 West 52nd St. 15th Floor | New York | NY | USA | 10019 | 212-882-5917 | 212-882-5114 | ray.otero@ubs.com |
| **US Bancorp Asset Management, Inc.** | Rochelle Genetti | 800 Nicollet Mall | Minneapolis | MN | USA | 55402 | 612-303-3251 | 612-303-4210 | rochelle.geneti@usbank.com |
| **Utendahl Capital Management, L.P.** | Terry Prince | 30 Broad St. 21st Floor | New York | NY | USA | 10004 | 646-438-2169 | | tprince@ucmpartners.com |
| **Vilnius Bankas** | Alma Kamarauskaite | Gedimino Ave 12 | Vilnius | n/a | Lithuania | LT-01103 | 370 5 2681109 | | alma.kamarauskaite@seb.lt |
| **Wells Fargo Funds** | Michael Giese | 90 South Seventh Street 7th Floor, MAC N9305-075 | Minneapolis | MN | USA | 55402-3903 | (612) 667-0509 | (612) 667-7251 | michael.j.giese@wellsfargo.com |
| **Zagrebacka Banka** | Igor Livojevic | Savska 60/4 | Zagreb | n/a | Croatia | 10000 | 38 51 630 5332 | 38 51 617 6275 | igor.livojevic@zaba.hr |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                             :

In re                                 :        Chapter 11 Case No.
                                             :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :      08-13555 (JMP)
                                             :

           Debtors.                     :      (Jointly Administered)
                                             :
                                             :
------------------------------------------------------------------x

**INTERIM ORDER PURSUANT TO SECTIONS 105(a), 345(b), 363(b), 363(c) AND
364(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003
AND 6004 (A) AUTHORIZING DEBTORS TO (i) CONTINUE TO USE
EXISTING CENTRALIZED CASH MANAGEMENT SYSTEM, AS
MODIFIED, (ii) HONOR CERTAIN PREPETITION OBLIGATIONS
RELATED TO THE USE OF THE CASH MANAGEMENT SYSTEM, AND (iii)
MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS; (B)
EXTENDING THE DEBTORS' TIME TO COMPLY WITH SECTION 345(b) OF THE
BANKRUPTCY CODE; AND (C) SCHEDULING A FINAL HEARING**

Upon the motion, dated October 3, 2008 (the "Motion"), of Lehman Brothers Holdings Inc.

("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and

debtors-in-possession (collectively, the "Debtors"), pursuant to sections 105(a), 345(b), 363(b),

363(c) and 364(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")

and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), (A) for authorization to (i) continue to use the Debtors' centralized cash management

system (the "Cash Management System"); (ii) honor certain prepetition obligations related to the

Cash Management System; (iii) maintain and utilize existing bank accounts (the "Bank

Accounts") and business forms (the "Business Forms"); and (iv) modify the Cash Management

System, including the closing of any existing Bank Account(s) and the opening of any new bank

accounts, as may be necessary in connection with section 345 of the Bankruptcy Code; (B) for

authorization and directing financial institutions to honor the Debtors' request to open or close,

as the case may be, the Bank Accounts or additional bank or investment accounts; (C) an

extension of the time to comply with section 345(b) of the Bankruptcy Code, and (D) to schedule

a final hearing (the "Final Hearing") granting the relief requested in the Motion on a final basis,

all as more fully described in the Motion; and the Court having jurisdiction to consider the

Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the

Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York

Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the Motion having been provided in accordance with the

procedures set forth in the order entered September 22, 2008 governing case management and

administrative procedures [Doc. No. 285] to (i) the United States Trustee for the Southern

District of New York (the "U.S. Trustee"); (ii) the attorneys for the Official Committee of

Unsecured Creditors; (iii) the attorneys for the Debtors' postpetition lenders; (iv) the Securities

and Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Attorney for

the Southern District of New York; (vii) all parties who have requested notice in these chapter 11

cases; and (viii) all Banks listed on Exhibit A, and it appearing that no other or further notice

need be provided; and a hearing having been held to consider the relief requested in the Motion

on an interim basis; and the Court having found and determined that the relief sought in the

Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest

and that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis; and it is further

ORDERED that the Debtors are authorized and empowered, pursuant to sections 105(a) and 363(c) of the Bankruptcy Code, to continue to manage their cash pursuant to the Cash Management System maintained by the Debtors prior to the commencement of their chapter 11 cases (the "Commencement Date"), as modified by this Order, and to collect, concentrate, and disburse cash in accordance with the Cash Management System, including intercompany funding; and it is further

ORDERED that the Debtors are authorized to continue to use bank accounts of Lehman Brothers Inc. and Barclays Capital Inc. as appropriate in conjunction with their Cash Management System; and it is further

ORDERED that pursuant to section 105(a) of the Bankruptcy Code, each of the banks listed on Exhibit A hereto (the "Banks") are authorized and directed to continue to honor transfers as directed by the Debtors of funds among their Bank Accounts and to the Debtors; and it is further

ORDERED that the Debtors shall maintain accurate records of all transfers within the Cash Management System so that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors prior to the Commencement Date; and it is further

ORDERED that the Debtors are authorized to: (i) designate, maintain and continue to use any or all of their existing Bank Accounts listed on Exhibit A, annexed to the Motion, in the names and with the account numbers existing immediately prior to the Commencement Date, (ii) deposit funds in and withdraw funds from such accounts by all usual means including, without limitation, checks, wire transfers, automated clearinghouse transfers and other debits, (iii) pay any bank fees or charges associated with the Bank Accounts, and (iv)

treat their prepetition Bank Accounts for all purposes as debtors in possession accounts; and it is further

ORDERED that except as otherwise provided in this Order, all financial institutions in which the Debtors maintain the Bank Accounts as of the commencement of their chapter 11 cases are authorized and directed to continue to maintain, service, and administer such Bank Accounts without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all checks, drafts, wires, or other transfers by the holders or makers thereof, as the case may be; provided, however, that nothing contained herein shall authorize any such financial institution to honor any check, draft, wire, or other transfer issued or dated prior to the Commencement Date, except as otherwise provided by further order of this Court; provided further, however, that any such financial institution may rely on the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Commencement Date should be honored pursuant to an order of this Court, and such bank shall not have any liability to any party for relying on such representation by the Debtors as provided for herein; and it is further

ORDERED that with respect to those Bank Accounts which are not located in Banks that are Authorized Bank Depositories and with respect to any of their investments, the Debtors shall have 30 days (or such additional time as the U.S. Trustee may agree to) from the entry of this Order (the "Extension Period") to either come into compliance with section 345(b) of the Bankruptcy Code or to make such other arrangements as agreed with the U.S. Trustee; and it is further

ORDERED, that nothing contained herein shall prevent the Debtors from opening any additional bank accounts, or closing any existing Bank Account(s) as it may deem necessary

and appropriate, and the Banks and other financial institutions are directed to honor the Debtors'

request to open or close, as the case may be, such Bank Accounts or additional bank accounts;

and it is further

ORDERED that the Debtors shall mark "Debtors in Possession" and the chapter

11 case number under which these cases are being jointly administered on their check stock,

business form stock, and wire transfer instructions and shall not be required to order new stock

with such marking until it exhausts their current stock; and it is further

ORDERED that, pursuant to section 364(a) of the Bankruptcy Code, the Debtors

are authorized in connection with the ordinary course of their Cash Management System to

obtain unsecured credit and incur unsecured debt in the ordinary course of business without

notice and a hearing; and it is further

ORDERED that the Debtors are authorized to continue to use their Cash

Management System to fund non-Debtors affiliates as they did prior to the Commencement

Date; and it is further

ORDERED that the Banks are directed to provide the Debtors with access to

information relating to the Bank Accounts and their Subsidiaries' bank accounts to the same

extent as the access provided to the Debtors prepetition; and it is further

ORDERED that the Debtors are authorized, but not directed, to pay prepetition

amounts outstanding as of the Commencement Date, if any, owed to the Banks as service

charges for the maintenance of the Cash Management System; and it is further

ORDERED that Bankruptcy Rule 6003(b) has been satisfied; and it is further

ORDERED that notwithstanding any applicability of Bankruptcy Rules 6004(h),[1]

7062, or 9014, the terms and conditions of this Order shall be immediately effective and

enforceable upon their entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion and the requirements of Bankruptcy Rules 6004(a) are

waived; and it is further

ORDERED that the Final Hearing to consider entry of an order granting the relief

requested in the Motion on a final basis shall be held on _____, 2008 at __:00 _.m.

(prevailing Eastern Time); and any objections to entry of such order shall be in writing, filed

with the Court in accordance with General Order M-242, and served upon those parties entitled

to receive service of objections under the Cash Management Order, in each case so as to be

received no later than 4:00 p.m. (prevailing Eastern Time) on October _, 2008; and it is further

---

[1] Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General
Order M-308 of the United States Bankruptcy Court for the Southern District of New York,
signed on October 11, 2005 by Chief Judge Stuart M. Bernstein.

ORDERED that the Debtors shall serve this Order within three business days of their entry on (i) the U.S. Trustee, (ii) the attorneys for the Creditors' Committee, (iii) the attorneys for the Debtors' postpetition lenders, (iv) the Securities and Exchange Commission, (v) the Internal Revenue Service, (vi) the United States Attorney for the Southern District of New York, and (vii) the Banks listed on Exhibit A to the Motion; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: October [__], 2008
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE