**Objection Deadline: October 3, 2008**

David S. Rosner (DR-4214)
Andrew K. Glenn (AG-9934)
KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Attorneys for Bay Harbour Management L.C., Bay Harbour Master Ltd.,
Trophy Hunter Investments, Ltd., BHCO Master, Ltd.,
MSS Distressed & Opportunities 2 and Institutional Benchmarks

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., et al. | Case No. 08-13555 (JMP) |
| Debtor. | (Jointly Administered) |
| SECURITIES INVESTOR PROTECTION CORPORATION, Plaintiff, | |
| v. | Adversary Proceeding Nos. 08-01420 (JMP) |
| LEHMAN BROTHERS INC., | |
| Debtor. | |

**OBJECTION OF BAY HARBOUR MANAGEMENT L.C., BAY HARBOUR MASTER LTD., TROPHY HUNTER INVESTMENTS, LTD., BHCO MASTER, LTD., MSS DISTRESSED & OPPORTUNITIES 2 AND INSTITUTIONAL BENCHMARKS TO CURE AMOUNT**

Bay Harbour Management L.C., Bay Harbour Master Ltd. ("BHML"), Trophy Hunter Investments, Ltd. ("TH"), BHCO Master, Ltd. ("BHCO"), MSS Distressed & Opportunities 2 and Institutional Benchmarks (collectively, "Bay Harbour"), creditors of Lehman Brothers Inc.

("LBI") and counterparties to contracts with Lehman Brothers Holdings Inc. ("LBHI" or the "Debtor") and Lehman Brothers International (Europe) ("LBIE"), hereby submit this cure objection and claim (the "Objection") in accordance with the *Order Under 11 §§ U.S.C. 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases*, entered September 20, 2008 (the "Sale Order")[1] and respectfully represents as follows:

## INTRODUCTION

1. BHML, TH, and BHCO Master, Ltd. are investment funds. MSS Distressed & Opportunities 2 and Institutional Benchmarks are managed accounts. The Bay Harbour entities are customers of, and have prime brokerage accounts (the "BH Customer Accounts") with, LBI and its affiliate LBIE, and, as set forth below, are parties to executory contracts with LBI.

2. Pursuant to the Sale Order and the Purchase Agreement (as defined below), Barclay's purchased all of LBHI and LBI's customer accounts, including prime brokerage accounts (collectively, the "Customer Accounts"). The BH Customer Accounts are subject to the BH Customer Agreements (defined below). The Sale Order provides, in part, that "Sellers are hereby authorized to assume and assign the "Closing Date Contracts," ***including customer account agreements***, to which they are a party to the Purchaser." The Debtors did not list individual Customer Accounts as not being assumed and assigned such that, under the Sale Order and under the Purchase Agreement, Barclays (defined below) assumed all customer account agreements including those with Bay Harbour.

---

[1] Capitalized Terms not otherwise defined herein shall have the meanings set forth in the Sale Order. Bay Harbour's compliance with the Sale Order is not a waiver of its pending appeal therefrom as to which each of Bay Harbour's rights is reserved.

3.     Bay Harbour disputes any cure amount less than the full amount contained in or as to which any Lehman entity was required to redeliver into its customer accounts at the time of assignment to and assumption by Barclays, which amounts to $190,629,504.

## BACKGROUND

4.     LBHI filed a voluntary chapter 11 petition on September 15, 2008 (the "Petition Date"). LB 745 LLC filed a voluntary chapter 11 petition on September 16, 2008. PAMI Statler Arms LLC (together with LBHI and LB 745 LLC, the "Debtors") filed a voluntary chapter 11 petition on September 23, 2008 (collectively the "Chapter 11 Cases). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

5.     On September 17, 2008, the United States Trustee appointed an Official Committee of Unsecured Creditors.

6.     On September 19, 2008, the Securities Investor Protection Corporation ("SIPC") filed a complaint and application (the "SIPA Application") in the United States District Court for the Southern District of New York (the "District Court"), seeking an order adjudicating that customers of Lehman Brothers, Inc. ("LBI") were in need of the protections afforded under the Securities Investor Protection Act of 1970 ("SIPA"). The District Court granted the SIPA Application, entered an Order Commencing Liquidation of LBI (the "Liquidation Order"), and appointed James W. Giddens, Esq. as SIPA trusted (the "SIPA Trustee") of the LBI SIPA proceeding (the "SIPA Proceeding").

7.     The District Court then transferred the SIPA Proceeding to this Court. This Court now oversees, separately, (i) the Chapter 11 Cases, and (ii) the SIPA Proceeding.

8. On Wednesday, September 17, 2008, the Debtors filed their Motion to Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets (the "Sale Motion"), seeking (among other relief) the Court's authorization and approval of the sale (the "Sale") of the "Purchased Assets" (as defined in the Purchase Agreement) free and clear of all liens, claims, encumbrances, and interests, and the assumption and assignment of certain pre-petition contracts and unexpired leases relating to the Purchased Assets pursuant to a certain Asset Purchase Agreement among LBHI, LBI, LB 745 LLC and Barclays Capital Inc. ("Barclays"), dated September 16, 2008, as amended and supplemented by the First Amendment thereto, dated September 19, 2008, and that certain "Clarification Letter", dated September 20, 2008 (collectively, the "Purchase Agreement").

9. The Purchase Agreement defines "Purchased Assets" to include:

> ... (iv) all prime brokerage business and accounts and repurchase agreement operations and securities lending operations of the Business (for the avoidance of doubt, other than those that are part of the IMD Business)

Clarification Letter, § 1(a)(iv).

Additionally, the Purchase Agreement provides:

> 8. Transfer of Customer Accounts. **All customer accounts of LBI (other than customer[s] who are Affiliates of LBI) shall be transferred to Purchaser.** In connection therewith, Purchaser shall receive (i) for the account of the customer, any and all property of any customer, including any held by or on behalf of LBI to secure the obligations of any customer, whose account(s) are being transferred to Purchaser as part of the Business and (ii) to the extent permitted by applicable law, and as soon as practicable after the Closing, $769 million of securities, as held by or on behalf of LBI on the date hereof pursuant to Rule 15c3-3 of the Securities Exchange Act of 1934, as amended, or securities of substantially the same nature and value. Liabilities arising under Seller's arrangements with DTC and its affiliated clearing organizations shall be Excluded Liabilities.

4

Clarification Letter, § 8 (emphasis added)

> (c) .... Except as otherwise specified in the definition of "Purchased Assets," "Excluded Assets" shall include any cash, cash equivalents, bank deposits or similar cash items of Seller and its Subsidiaries; **provided that "Excluded Assets" shall not include any and all property of any customer, or maintained by or on behalf of LBI to secure the obligations of any customer, whose account(s) are being transferred to Purchaser as part of the Business.**

Clarification Letter, § 1(c) (emphasis added).

10. On September 19, 2008, the Court approved the Sale subject to modifications made on the record at the hearing (presumably as set forth in the Clarification Letter), by an opinion read into the record and entered the Sale Order in the Chapter 11 Cases and an accompanying order in the SIPA Proceeding (which incorporates by reference the Sale Order).

11. The Sale Order provides that the "Sellers are hereby authorized to assume and assign the Closing Date Contracts, *including customer account agreements*, to which they are a party to the Purchaser" Sale Order at 16 (emphasis added). "Closing Date Contracts" are the contracts to be assumed and assigned as listed on http://chapter11.epiqsystems.com/Lehman (the "Closing Date Contracts Schedule"). Sale Order at 11.

12. The Court set October 3, 2008 as the deadline for all counterparties to Closing Date Contracts to file an objection to the cure amounts of their respective Closing Date Contracts." Sale Order at 10.

13. The Sale was consummated on September 23, 2008 (the "Closing Date").

## CURE AMOUNT OBJECTION

14. Pursuant to the Sale Order and Purchase Agreement, Barclays purchased all Customer Accounts, including the BH Customer Accounts, and the Purchase Agreement required the transfer to Barclays on the Closing Date. Further the Purchase Agreement requires

5

that customer property, including Bay Harbour's customer property, follow Bay Harbour's contract with the sale.

16. The BH Customer Accounts are governed by a series of executory contracts among the Lehman entities and Bay Harbour entities (collectively, the "BH Customer Agreements")[2] as follows:

(i) Customer Account Agreement Prime Brokerage among Bay Harbour Master Ltd., Lehman Brothers Inc., Lehman Brothers Holdings Inc. and certain of their affiliates;

(ii) Customer Account Agreement Prime Brokerage among Trophy Hunter Investments, Ltd., Lehman Brothers Inc., Lehman Brothers Holdings Inc. and certain of their affiliates;

(iii) Customer Account Agreement Prime Brokerage among BHCO Master Ltd., Lehman Brothers Inc., Lehman Brothers Holdings Inc. and certain of their affiliates.

16. The amount owed by LBI to Bay Harbour under the BH Customer Agreements is not less than $190,629,504 in the aggregate (the "Cure Amount").[3]

17. Bay Harbour does not object to the assumption and assignment of the BH Customer Agreements so long as its customer property accompanies the assignment and is made available to Bay Harbour. In accordance with the Purchase Agreement, the Sale Order, and Sections 365(b) and 365(f) of the Bankruptcy Code, the Debtors must (i) cure, or provide adequate assurance that they will promptly cure, any default in the executory contract, (ii) compensate, or provide adequate assurance that they will promptly compensate, the counterparty

---

[2] The corresponding account numbers for the BH Customer Accounts are as follows: 05602687, 05602688, 05602689, 05602690, 05602691, 05602692.

[3] Due to the lack of clarity with respect to the relationships and conduct of Lehman entities prior to and after the bankruptcy filing and prior to and after the entry of the Sale Order, among other reasons, Bay Harbour also has sought recovery of its property from LBIE. Bay Harbour submits this Cure Objection in accordance with the Sale Order to regain from Barclays its property in accordance with Barclays' purchase and acceptance of assignment of the BH Customer Agreements. However, by doing so, Bay Harbour is not waiving and is expressly reserving each and every right, claim, cause of action, and remedy against any and all Lehman entities including its right that it is pursuing to recover its property from LBIE.

to the executory contract for any actual pecuniary loss to such party resulting from such defaults, and (iii) provide adequate assurance of future performance under such contract.

18. Accordingly, Barclays must cure (by replacing in Bay Harbour's customer accounts or by paying over to Bay Harbour) all amounts owed to and/or the property of Bay Harbour under the BH Customer Agreements to be assumed and assigned to Barclays as contemplated by the Sale Order and the Purchase Agreement.[4]

## CONCLUSION

WHEREFORE, Bay Harbor respectfully requests that the Court enter an order for the payment of the Cure Amount by Purchaser and grant such other and further relief in favor of Bay Harbour as is deemed just and proper.

Dated: October 3, 2008
      New York, New York

By: /s/ David S. Rosner
David S. Rosner (DR-4214)
Andrew K. Glenn (AG-9934)
KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile:  (212) 506-1800

Attorneys for Bay Harbour Management L.C.., Bay Harbour Master Ltd., Trophy Hunter Investments, Ltd., BHCO Master, Ltd., MSS Distressed & Opportunities 2 and Institutional Benchmarks

---

[4] The Bay Harbour counterparties to the BH Customer Agreements can be contacted through undersigned counsel.