| | |
|---|---|
| FARRELL FRITZ, P.C.<br>1320 RexCorp Plaza<br>Uniondale, NY 11556-0120<br>(516) 227-0700<br>Ted A. Berkowitz<br>Patrick Collins | Hearing Date and Time:<br>November 5, 2008 at 10:00 a.m. |

*Attorneys for Cargill Investment Group, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
: 
In re : Chapter 11
: 
Lehman Brothers Holdings, Inc., *et al.*, : Case No. 08-13555 (JMP)
: 
: 
Debtors. : Jointly Administered
-----------------------------------------------------------x
: 
SECURITIES INVESTOR PROTECTION :
CORPORATION, :
: 
Plaintiff-Applicant, : Adv. Proc. No. 08-01420
: 
v. : SIPA Liquidation Proceeding
: 
Lehman Brothers, Inc. :
: 
Defendant. :
: 
-----------------------------------------------------------x

**MOTION FOR RELIEF FROM AUTOMATIC STAY**
**TO TERMINATE MANAGEMENT AGREEMENT**
**AND FOR ALLOWANCE AND PAYMENT OF**
**<u>ADMINISTRATIVE EXPENSE CLAIM</u>**

Cargill Investment Group Ltd. ("CIG"), by its attorneys, Farrell Fritz, P.C., hereby move,

pursuant to Section 362(d)(1) of the Bankruptcy Code and Rule 4001 of the Federal Rules of

Bankruptcy Procedure, for entry of an order modifying the automatic stay to permit CIG to

(i) demand and convene a meeting with Lehman Brothers Inc. and James W. Giddens, in his capacity as the court-appointed Trustee for the liquidation of the business of LBI, to resolve LBI's material breach of its obligations under a management agreement between CIG and LBI and (ii) terminate the management agreement in the event LBI's breach of the management agreement continues.  CIG also requests allowance and payment of its administrative expense claim for services rendered under the management agreement after the date of commencement of LBI's proceeding under the Securities Investor Protection Act.  CIG respectfully represents as follows:

## BACKGROUND

1. CIG and LBI are parties to a Second Management Agreement, dated July 1, 2007.[1]  Pursuant to the Second Management Agreement, CIG provides asset management services in connection with six funds (the "Funds"), each of which owns limited partnership interests in certain partnerships (the "Property Partnerships").  Each of the Property Partnerships owns multi-family rental real property that is eligible for low income housing tax credits.  In the aggregate, the Funds hold interests in partnerships that own 57 low income rental properties. Cargill Dec., ¶ 2.

2. Each of the Funds is a limited partnership in which Lehman Housing Capital Inc. ("LHCI") and its affiliates are general partners and Lehman Tax Credit Advisor Inc. ("LTCA") is a special limited partner.  CIG understands that, contrary to the recitals in the Second Management Agreement, LHCI is a wholly owned subsidiary of Lehman Brothers

---

[1] A redacted copy of the Second Management Agreement is annexed as Exhibit "A" to the Declaration of Linda Cargill (the "Cargill Dec.") submitted with this Motion.  A non-redacted copy shall be provided to chambers and counsel for (i) the Debtors, (ii) the SIPA Trustee for LBI, (iii) the Official Committee of Unsecured Creditors, (iv) Barclays and (v) the Office of the United States Trustee.  The Second Management Agreement became effective upon the expiration of a Management Agreement, dated June 8, 2004 between CIG and LBI, the terms of which are, in large part, identical to the terms of the Second Management Agreement.

2

Holdings Inc. ("LBHI") and not a subsidiary of LBI. The limited partners in the Funds (the "Investors") are the investors in the Funds—primarily consisting of Fortune 500 companies. Cargill Dec., ¶ 3.

3. Among the services provided by CIG is to monitor compliance by the Partnership Property general partners with all applicable partnership, loan and regulatory documents and, where the general partners are not in compliance, develop and "execute LHCI-approved workout strategies". *See* Exhibit AM-3 to Second Management Agreement. At the Property Partnership level, CIG also (i) reconciles each Property Partnership's federal income tax returns with actual results of operations, (ii) reviews, and participates in the process of approval for, each Property Partnership's audited financial statements, (iii) monitors the Property Partnership's compliance with applicable tax credit rules and calculates the annual tax benefits generated by each Property Partnership and (iv) prepares reports analyzing and summarizing the transactions of LHCI and its affiliates with each of the Property Partnerships. *Id.*

4. On the Fund level, CIG (i) prepares and distributes Fund operating and financial information to the Investors, (ii) arranges for the issuance of audited financial statements and preparation and filing of tax returns, (iii) arranges for the preparation and distribution to Investors of k-1 tax reporting forms and (iv) communicates with Investors regarding performance of the Funds and the status of properties in which the Funds hold an interest. *Id.*

5. The Second Management Agreement provides that "[a]ll activities and plans of Manager shall be coordinated" with employee or officers of LBI designated by LBI. *Id.*, § 7. Conversely, LBI is required to provide CIG with access to its and LHCI's information and property as may be reasonably necessary to permit CIG to carry out its obligations. *Id.*, § 5.

3

6.   As a practical matter, CIG cannot provide many of the contracted-for services without participation and cooperation from LBI, LHCI and/or LTCA.  CIG has not been authorized to enter into contracts on LBI's and LHCI's behalf and Lehman personnel were the only authorized signatories on the bank accounts maintained by the Funds.  Workouts necessitating decision-making by the Funds on a daily basis are ongoing with respect to a number of the properties held by the Property Partnerships.   Notably, as a result of some of the workouts, LHCI or its affiliates are the general partners of several of the Property Partnerships directly responsible for managing the operations of those Property Partnerships.  Cargill Dec., ¶ 4.

7.   Since the date of commencement of LHBI's bankruptcy case, LBI and LHCI have effectively ceased to communicate with CIG regarding affairs of the Funds.  In response to CIG's numerous requests for (i) authorization to carry out Fund business and (ii) issuance of checks in payment of expenses of the Funds, the Lehman personnel to whom CIG had previously been instructed to report informed CIG that they were not currently permitted to provide substantive responses to such requests.  Beginning on September 22, 2008, these persons informed CIG that they were now employed by Barclays for all intents and purposes.  Cargill Dec., ¶ 5.

8.   Since September 15, 2008, and as a result of LBI's failure to cooperate with CIG's efforts to manage the Funds and those Property Partnerships in which LHCI or its affiliates are the general partner, CIG has been unable to (i) pay accountants to finalize the 2007 federal and state income tax returns of certain of the Funds, or other professionals who provide services to the Funds and certain of the Property Partnerships, (ii) provide guidance and authorization to attorneys handling active litigation on behalf of the Funds and LTCA and (iii)

4

engage and pay a contractor to perform necessary repairs on buildings owned by a Property Partnership in which an affiliate of LHCI is the general partner responsible for operating and maintaining that property.  Cargill Dec., ¶ 6.

9.  LBI is obligated to pay CIG (i) asset management fees, (ii) work-out fees and (iii) monitoring fees for the services rendered by CIG under the Second Management Agreement. Second Management Agreement, § 3(a).  LBI is required to pay the fees quarterly on the last day of each calendar quarter.  *Id.*, § 3(b).  CIG has not received any of the approximately $350,000 in fees due under the Second Management Agreement for the 3rd quarter of 2008 and has received no indication from LBHI, LHCI, LBI or James W. Giddens, in his capacity as the court-appointed Trustee under the Securities Investor Protection Act ("SIPA") for LBI, that CIG will be paid the fees owed under the Second Management Agreement for services provided during the 4th quarter of 2008.  Cargill Dec., ¶ 7.

10.  The Second Management Agreement is not included on the list of executory contracts designated for assumption and assignment to Barclays Capital, Inc. ("Barclays") in connection with the Asset Purchase Agreement between LHBI, LBI, LB 745 LLC and Barclays. Based on CIG's reading of the Asset Purchase Agreement, the First Amendment thereto and the Clarification Letter, it appears that LHCI's interests in the Funds are presently Excluded Assets not slated to be conveyed to Barclays.

11.  Pursuant to Section 4(c) of the Second Management Agreement, CIG has provided LHCI, who is not the subject of a bankruptcy proceeding or proceeding under SIPA, with notice of LBI's material breach of its duty of cooperation under Section 5 of the Second Management Agreement.[2]  Cargill Dec., ¶ 8.  As contemplated by Section 4(c) of the Second

---

[2] Section 4(c) of the Second Agreement provides that:

5

Management Agreement, CIG desires to (i) convene a meeting with LBI and James W. Giddens, in his capacity as the court-appointed Trustee for the liquidation of the business of LBI, to resolve LBI's breach and (ii) to terminate the Second Management Agreement in the event that LBI's breach of the Second Management Agreement continues.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, 15 U.S.C. §§ 78eee(a)(3), (b)(2) and (b)(4) and the Standing Order of Referral of Cases to Bankruptcy Judges for the Southern District of New York, dated July 10, 1984 (Ward, acting C.J.). Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Debtors' cases and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is Section 362(d)(1) of the Bankruptcy Code, as complemented by Bankruptcy Rule 4001 and Section 503(b)(1) of the Bankruptcy Code .

## RELIEF REQUESTED

13. CIG respectfully requests entry of the annexed proposed order modifying the automatic stay in effect in LHBI's bankruptcy case and LBI's proceeding under SIPA pursuant to Bankruptcy Code Section 362(d)(1) to permit CIG to terminate the Second Management Agreement in the event LBI's breach of Second Management Agreement continues.

14. CIG also requests this Court to direct that relief from the automatic stay be effective immediately upon entry of an order granting this Motion and that the 10-day stay,

---

Manager may terminate this Agreement upon the occurrence of any material breach by Lehman of any of its obligations hereunder if such breach continues for thirty (30) days after the parties have met to resolve such material breach following receipt by LHCI of notice specifying such breach in reasonable detail.

6

provided under Rule 4001(a)(3), of orders granting motion for relief from the automatic stay shall not apply.

15.   CIG also requests allowance and payment of an administrative expense claim pursuant to 11 U.S.C. § 503(b) for the prorated amount of the fees due for the 3rd quarter of 2008 under the Second Management Agreement attributable to the September 19 through September 30, 2008 period falling after the date of commencement of LBI's SIPA proceeding.

## ARGUMENT AND AUTHORITIES

16.   As an initial matter, CIG recognizes for purposes of this motion, that LBI's interest in the Second Management Agreement is property of the LBI's estate that is protected by the automatic stay. *See In re Enron Corp.*, 300 B.R. 201, 212 (Bankr. S.D.N.Y. 2003) (debtors' interest in employment contract is subject to protection of automatic stay, enjoining nondebtor party from taking action to terminate contract).

17.   However, pursuant to Section 362(d)(1) of the Bankruptcy Code, a bankruptcy court, after notice and a hearing, may terminate, annul, modify or condition the Section 362(a) automatic stay "for cause, including the lack of adequate protection of an interest in property" of the party seeking relief. 11 U.S.C. § 362(d)(1).[3] Except for the "lack of adequate protection" circumstance provided in Section 362(d)(1), the term "cause" is not defined in the Bankruptcy Code. *In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir. 2002). Whether cause exists for relief from the automatic stay must be determined on a case-by-case basis based on the totality of circumstances. *Id.*; *In re Enron Corp.*, 306 B.R. 465, 476 (Bankr. S.D.N.Y. 2004). Generally speaking, affirmative harm to the movant from the continuance of the automatic stay constitutes grounds for relief from the stay, *In re Boodrow*, 192 B.R. 57, 60 (Bankr. N.D.N.Y. 1995), *aff'd*

---

[3] To the extent consistent with SIPA, chapters 1, 3 and 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply in SIPA liquidation proceedings. 15 U.S.C. §§ 78fff(b).

7

*sub nom Capital Communications Federal Credit Union v. Boodrow*, 197 B.R. 409 (N.D.N.Y. 1996), *aff'd*, 126 F.3d 43 (2d Cir. 1997), *cert. denied*, 522 U.S. 1117 (1998), and the court should assess the impact of the stay to all parties and balance the harms as among them. *Bogdanovich*, 292 F.3d at 110. Bankruptcy courts have consistently held that a failure to perform under a contract postpetition, is cause to lift the automatic stay. *See In re Davis*, 64 B.R. 358, 359 (Bankr. S.D.N.Y. 1986) (debtor's failure to make mortgage payments is grounds for lifting the stay); *In re Uvaydov*, 354 B.R. 620, 623 (Bankr. E.D.N.Y. 2006) (collecting cases).

18.   CIG is being harmed by the continuance of the automatic stay since the stay prevents CIG from exercising its contractual right to terminate the Second Management Agreement on account of LBI's failure to provide CIG with the authorization and access to funds its needs to carry out its obligations under the Second Management Agreement. CIG's right to terminate the Second Management Agreement will, in effect, be forfeited if CIG is not permitted to exercise its right to demand that LBI cure its material breach of the agreement or else suffer termination of that agreement. Keeping the automatic stay in place in this instance would be tantamount to the bankruptcy court rewriting the Second Management Agreement to remove the provisions conferring the right of termination. Such a result would contravene the well-settled law that the filing of a bankruptcy case does not confer upon the debtor greater rights under the contract than exist outside of bankruptcy. *See, e.g.*, *In re Penn Traffic Co.*, 322 B.R. 63, 72 (Bankr. S.D.N.Y. 2003) (citing cases), *affd' in part and rev'd in part on other grounds*, 2005 WL 2276879 (S.D.N.Y. Sept. 16, 2005), *appeal dismissed*, 466 F.3d 75 (2d Cir. 2006); *In re M.J. & K. Co., Inc.*, 161 B.R. 586, 593 (Bankr. S.D.N.Y. 1993).

19.   Granting the relief requested by CIG will not unduly prejudice LHBI, LBI or their estates. CIG merely seeks to exercise its contractual right to terminate the Second

8

Management Agreement on account of LBI's utter failure to live up to its obligations under that agreement. LBI is not entitled to the benefits of a contract that it has materially breached.

20. Bankruptcy Rule 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay . . . is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise." CIG requests the Court to order that the 10-day stay provided under Rule 4001(a)(3) shall not apply with respect to the notice of termination to be served by CIG if LBI's breach of the Second Management Agreement is not cured.

## REQUEST FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

21. CIG hereby moves for allowance and payment of an administrative expense claim pursuant to Section 503(b)(1)(A) of the Bankruptcy Code for the prorated amount of the fees due for the 3rd quarter of 2008 under the Second Management Agreement attributable to the September 19 through September 30, 2008 period (the "Stub Period") falling after the date of commencement of LBI's SIPA proceeding. CIG continues to provide services under the Second Management Agreement that are "actual, necessary costs and expenses of preserving [LBI's] . . . estate." 11 U.S.C. § 503(b)(1)(A). CIG estimates that the prorated amount of fees due for the Stub Period are $45,800.

## WAIVER

22. Because this Application does not present any novel issues of law, CIG respectfully requests that the Court waive and dispense with the requirement set forth in Local Bankruptcy Rule 9013-1(b) that a separate memorandum of law be filed in support of this Motion. CIG reserves the right, however, to submit a reply memorandum of law in the event objections to this Application are filed.

9

**NOTICE**

23.  CIG is serving this Motion by ECF upon all parties that have filed papers in the Debtors' cases by ECF.  CIG is also causing this Motion to be served by fax, overnight mail and/or hand delivery upon LHBI, LBI, bankruptcy counsel for LBHI, counsel for the Trustee, counsel for Barclays, proposed counsel for the Official Committee of Unsecured Creditors, and the Office of the United States Trustee.

24.  No previous application for the requested relief has been made to this or any other court.

**RESERVATION OF RIGHTS**

25.  CIG expressly reserves all rights and remedies under the Second Management Agreement and applicable law, including (i) the right to seek payment on an administrative expense priority basis for services rendered under the Second Management Agreement after September 30, 2008 and (ii) the right to file a proof of claim for amounts owed to CIG under the Second Management Agreement for services rendered prior to the commencement of LBI's SIPA proceeding.

**WHEREFORE,** CIG respectfully requests entry of an Order, substantially in the form of the proposed order annexed hereto (i) granting CIG relief from the automatic stay to permit CIG to terminate the Second Management Agreement in the event that LBI does not cure its breach of that agreement, (ii) directing that relief from the automatic stay shall be effective immediately and that the 10-day stay provided under Rule 4001(a)(3) shall not apply, (iii) allowing, and directing LBI and/or the Trustee to pay, CIG's administrative expense claim for services rendered after the date of commencement of LBI's SIPA proceeding and (iv) granting CIG such other relief as the Court may deem just and proper.

Dated: Uniondale, New York
October 4, 2008

                        **FARRELL FRITZ, P.C.**
                        *Attorneys for Cargill Investment Group, Ltd.*

                    By:   /s/ Patrick Collins
                          Ted A. Berkowitz
                          Patrick Collins
                          1320 RexCorp Plaza
                          Uniondale, New York 11556-0120
                          (516) 227-0700

Interwoven\871302.2