UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                              :     Chapter 11

LEHMAN BROTHERS HOLDINGS INC., *et al.*   :     Case No. 08-13555 (JMP)

                           Debtors.         :     (Jointly Administered)

                                                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

### ORDER (I) APPROVING THE BIDDING PROCEDURES, (II) APPROVING THE SELLER TERMINATION FEE AND THE REIMBURSEMENT AMOUNT, (III) APPROVING THE FORM AND MANNER OF SALE NOTICES AND (IV) SETTING THE AUCTION AND SALE HEARING DATE IN CONNECTION WITH THE SALE OF CERTAIN DEBTOR ASSETS

### (The "Bid Procedures Order")

Upon the motion, dated October 6, 2008 (the "Motion"),[1] of Lehman Brothers Holdings

Inc. (the "Debtor" and collectively with its affiliated debtors in the above-referenced chapter 11

cases, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 105, 363, 364, 365 and 503 and Fed.

R. Bankr. P. 2002, 6004, 6006 and 9014 (I) authorizing and approving, among other things,

(A) the bidding procedures set forth herein and attached hereto as Exhibit A (the "Bidding

Procedures"), (B) the Seller Termination Fee and the Reimbursement Amount as set forth in the

Purchase Agreement,  (C) the form and manner of sale notices  in connection with the Auction

and Sale Hearing  (each as defined below) and (D) a date for the Auction and Sale Hearing, and

(II) (A) authorizing and approving the sale and related transactions contemplated by the Purchase

Agreement (the "Transaction") of the Debtors' assets free and clear of all liens, claims and

encumbrances, (B) authorizing and approving the assumption and assignment of certain

Purchased Contacts and Transferred Real Property Leases (each as defined in the Purchase

---

[1]    Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the Motion.

Agreement) to IMD Parent LLC (together with any of its designees, the "Purchaser") or the

Successful Bidder(s) and (C) granting related relief; and upon the Court's consideration of the

Motion, the record of the hearing held on [●], 2008 with respect to the Motion (the "Hearing"),

including the testimony and evidence admitted at the Hearing and the objections filed and raised

at the Hearing; and upon all of the proceedings had before the Court; and after due deliberation

thereon, and sufficient cause appearing therefor,

      IT IS HEREBY FOUND AND DETERMINED THAT:[2]

      A.    The Court has jurisdiction over this matter and over the property of the Debtors

and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.  This matter is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).  The statutory predicates

for the relief sought herein are 11 U.S.C. §§ 105, 363, 364, 365 and 503 and Fed. R. Bankr. P.

2002, 6004, 6006 and 9014.  Venue of this case and the Motion is proper pursuant to 28 U.S.C.

§§ 1408 and 1409.

      B.    The relief requested in the Motion is in the best interests of the Debtors, their

estates, their stakeholders, and other parties-in-interest.

      C.    The notice of the Motion and the Hearing given by the Sellers constitutes due and

sufficient notice thereof.

      D.    The Debtors have articulated good and sufficient reasons for the Court to

(i) approve the Bidding Procedures, (ii) approve the Seller Termination Fee and the

Reimbursement Amount as provided in the Purchase Agreement and in this Order, (iii) approve

certain matters relating to competing bids, (iv) approve the form and manner of notice of the

---

[2]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  See Fed. R. Bankr. P. 7052.

Motion, the Sale Hearing, and the assumption and/or assignment of the Purchased Contracts and

Transferred Real Property Leases and (v) set the date of the Auction and the Sale Hearing.

      E.      The Seller Termination Fee and the Reimbursement Amount shall be payable in

accordance with the terms, conditions, and limitations of the Purchase Agreement.  The Seller

Termination Fee and the Reimbursement Amount (i) if triggered, shall be deemed actual and

necessary costs and expenses of preserving the Debtors' estates, (ii) are of substantial benefit to

the Debtors' estates, (iii) are reasonable and appropriate, including in light of the size and nature

of the Transaction, the necessity to announce a sale transaction for IMD, and the efforts that have

been and will be expended by the Purchaser, (iv) have been negotiated by the parties and their

respective advisors at arms' length and in good faith and (v) are necessary to ensure that the

Purchaser will continue to pursue the proposed Transaction.  Each of the Seller Termination Fee

and the Reimbursement Amount, individually and collectively, is a material inducement for, and

condition of, the Purchaser's entry into the Purchase Agreement.  The Purchaser is unwilling to

commit to purchase the Purchased Assets under the terms of the Purchase Agreement unless the

Purchaser is assured of payment of the Seller Termination Fee and the Reimbursement Amount.

Assurance to the Purchaser of payment of the Seller Termination Fee and the Reimbursement

Amount promotes more competitive bidding.  Further, because the Seller Termination Fee and

the Reimbursement Amount induced the Purchaser to submit a bid that will serve as a minimum

or floor bid for other bidders, the Purchaser has provided a benefit to the Debtors' estates by

increasing the likelihood that the price at which the Purchased Assets are sold will reflect their

true worth.  Finally, absent authorization of the Seller Termination Fee and the Reimbursement

Amount, the Debtors may lose the opportunity to obtain the highest or otherwise best available

offer for the Purchased Assets.

F.      The Bidding Procedures are reasonable and appropriate and represent the best

method for maximizing the realizable value of the Purchased Assets.

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is granted, as provided herein.

2.      All objections filed in response to the Motion, to the extent not resolved as set

forth herein, are hereby overruled.

<u>The Stalking Horse Bid</u>

3.      The Transaction contemplated by the Purchase Agreement (as it may be amended

prior to the Auction) is designated as the "<u>Stalking Horse Bid</u>."

<u>Bidding Procedures</u>

4.      The bidding procedures, as set forth on <u>Exhibit A</u> attached hereto and

incorporated herein by reference, are hereby approved and shall govern all proceedings relating

to the Transaction.

5.      The Sellers (a) may determine which Qualified Bid (as defined in the Bidding

Procedures), if any, is the highest or otherwise best offer and (b) may reject, at any time, any bid

(other than the Purchaser's bid under the Purchase Agreement, which is found and determined to

be a Qualified Bid) that is (i) inadequate and insufficient, (ii) not in conformity with the

requirements of the Bankruptcy Code, the Bidding Procedures or the terms and conditions of the

Transaction or (iii) contrary to the best interests of the Debtors, their estates and their

constituencies, as determined by the Debtors in their sole discretion.

6.      The failure specifically to include or reference a particular provision of the

Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

The Bidding Procedures are hereby authorized and approved in their entirety as modified by this

Order.

<u>Auction and Sale Hearing</u>

7.      The Auction shall be held on [THE FIRST BUSINESS DAY 61 DAYS AFTER

ENTRY OF THE BIDDING PROCEDURES ORDER] at the offices of Weil, Gotshal & Manges

LLP, 767 Fifth Avenue, New York, New York 10153  at 10:00 a.m. (New York time).  The

Court shall hold a hearing on [THE FIRST BUSINESS DAY THAT IS TWO DAYS

FOLLOWING THE AUCTION,  OR AS SOON THEREAFTER AS THE COURT MAY

PERMIT] at [●] (New York time) (the "<u>Sale Hearing</u>") in the United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, New York, New York 10004, at

which time the Court shall consider the approval of the sale as set forth in the Motion, approve

the Successful Bidder(s), and confirm the results of the Auction, if any.  Objections to the

Motion, if any, shall be filed and served on each of the Notice Parties (defined below) no later

than 4:00 p.m. (New York time) on [5 BUSINESS DAYS BEFORE THE SALE HEARING],

2008 (the "<u>Objection Deadline</u>").

8.      The failure of any objecting person or entity to file and serve an objection to the

Motion by the Objection Deadline shall be a bar to the assertion by such creditor, counterparty or

other party in interest in these chapter 11 cases, at the Sale Hearing or thereafter, of any

objection to the Motion, the Transaction, or the Debtors' consummation and performance of the

Purchase Agreement and Ancillary Agreements (including, without limitation, the transfer of the

Purchased Assets, the Purchased Contracts and the Transferred Real Property Leases, and the

assumption and sublease of the Subleased Real Property Leases free and clear of liens, claims,

and encumbrances).

9.      The Sale Hearing may be adjourned by the Debtors from time to time without

further notice to creditors or parties-in-interest other than by announcement of the adjournment

in open court or an entry of an order on the Court's docket; provided, however, that any such

adjournment shall be without prejudice to Purchaser's rights under Section 3.3 of the Purchase

Agreement.

Seller Termination Fee and Reimbursement Amount

10.    The Debtors are authorized and directed to pay the Seller Termination Fee and the

Reimbursement Amount as provided under the Purchase Agreement without further order of the

Court.  The Seller Termination Fee shall be equal to $70,000,000, and shall be paid in the

manner provided in the Purchase Agreement upon the occurrence of any of the conditions set

forth in Sections 3.3 and 3.5 of the Purchase Agreement.  In addition, the Debtors are authorized

and directed to pay the Reimbursement Amount, subject to an aggregate cap of $35,000,000,

after the occurrence of the conditions set forth in Sections 3.3 and 3.5 of the Purchase

Agreement, and no later than two (2) business days after delivery of an invoice to the Debtors.

11.    The Debtors' obligation to pay the Seller Termination Fee upon the occurrence of

the conditions set forth in Sections 3.3 and 3.5 of the Purchase Agreement and to pay the

Reimbursement Amount, as provided by the Purchase Agreement, shall be joint and several with

the other Sellers, shall survive termination of the Purchase Agreement, shall constitute a

superpriority administrative claim against the Debtors pursuant to sections 105(a), 503( b) and

364(c)(1) of the Bankruptcy Code and shall be senior to, and have priority over, all other claims

against the Debtors; provided, however, that the Debtors and the Sellers shall allocate (without

affecting the joint and several obligations of the Debtors and the Sellers to the Purchaser of the

Seller Termination Fee and the Reimbursement Amount) the liability for any such amounts paid

in accordance with the allocation of the Purchase Price.  Without limiting the foregoing, in the

event that the Seller Termination Fee or the Reimbursement Amount is payable pursuant to

Section 3.3 and 3.5 of the Purchase Agreement and a Competing Transaction is consummated

prior to the payment of the Seller Termination Fee or the Reimbursement Amount, the proceeds

(or right to the proceeds) in an amount equal to the unpaid portion of the Seller Termination Fee

or the Reimbursement Amount shall be remitted directly to the benefit of the Purchaser or held in

trust for the Purchaser and shall not become property of such Debtors' estates until all

obligations under the Purchase Agreement are paid in full pursuant to this Order and the

Purchase Agreement.

Authorization

12.     The Debtors are authorized to take such actions as contemplated by the Purchase

Agreement prior to the Auction and the Sale Hearing, including, without limitation, actions to

notify creditors, customers, regulators or other interested parties regarding the Transaction and to

obtain any necessary consents or approvals regarding the Transaction.

Notice

13.     Notwithstanding anything in the Purchase Agreement to the contrary, notice of (a)

the Motion, (b) the Auction, (c) Sale Hearing and (d) the proposed assumption and/or assignment

of the Purchased Contracts Transferred Real Property Leases to the Purchaser pursuant to the

Purchase Agreement or to a Successful Bidder shall be good and sufficient, and no other or

further notice shall be required, if given as follows:

(a)     Notice of Sale Hearing:  Within five (5) days after entry of the Bid
Procedures Order, the Sellers (or their agents) shall:

1.     provide notice, in substantially the form attached to
the proposed Bid Procedures Order (the "Sale Notice"), of the proposed sale, this
Order, the Sale Motion, the Purchase Agreement and the proposed Sale Order by
email, mail, facsimile or overnight delivery service, upon (i) the U.S. Trustee, (ii)
counsel for the Purchaser, (iii) counsel for the Creditors' Committee, (iv) all
entities known to have asserted any lien, claim, interest or encumbrance in or
upon LBHI, (v) the Office of the United States Attorney for the Southern District
of New York, (vi) the United States Department of Justice, (vii) the Securities and
Exchange Commission, (viii) the Federal Reserve Bank of New York, (ix) the
Securities Investor Protection Corporation, (x) the Internal Revenue Service and
applicable federal and state taxing authorities, (xi) the U.S. Commodities Futures
Trading Commission, (xii) the Pension Benefit Guaranty Corporation and all

regulatory authorities of the Debtors' foreign pension plans, including the U.K. Pension Regulator, (xiii) all persons, if any, who have filed objections to the Motion, (xiv) all persons who have filed a notice of appearance in the Debtors' bankruptcy cases, and (xv) all persons who Purchaser may reasonably request; provided, however, that, in the event that any Seller or any member of the Company Group becomes subject to a Bankruptcy Case prior to the Sale Hearing, such entity shall provide a Sale Notice, to the extent not already provided, to all entities known to have asserted any lien, claim, interest or encumbrance against the new debtor or its property; and

2.      cause the Sale Notice to be published on http://chapter11.epiqsystems.com/lehman (the "Website").

(b)      Assumption, Assignment and Cure Notice.  Within five (5) business days after receiving a Designation Notice, the Debtors shall file with this Court and serve on each counterparty to a Purchased Contract, Transferred Real Property Lease or Subleased Real Property Lease by email, mail, facsimile or overnight delivery service, a notice of assumption, assignment and cure substantially in the form attached hereto as Exhibit C (the "Assumption, Assignment and Cure Notice") for any Purchased Contract, Transferred Real Property Lease, or Subleased Real Property Lease that has been designated, as of the date of such notice, as a Purchased Contract, Transferred Real Property Lease or Subleased Real Property Lease to be assumed and subleased or assumed and assigned to the Purchaser at Closing (collectively, the "Designated Contract").  The Assumption, Assignment and Cure Notice shall include the Debtors' calculation of the cure amount (the "Cure Amount") for each such Designated Contract. A list of the Designated Contracts, including Cure Amounts with respect thereto, will be posted on the Website and updated as modified.

(c)      Any counterparty to a Designated Contract shall file and serve on the Notice Parties any objections to (i) the proposed assumption and sublease or assumption and assignment to the Purchaser (and must state in its objection, with specificity, the legal and factual basis of its objection) and (ii) if applicable, the proposed Cure Amount (and must state in its objection, with specificity, what Cure Amount is required with appropriate documentation in support thereof), no later than five (5) days before the Sale Hearing.  If no objection is timely received, (x) the counterparty to a Designated Contract shall be deemed to have consented to the assumption and sublease or assumption and assignment of the Designated Contract to the Purchaser and shall be forever barred from asserting any objection with regard to such assumption or assignment, and (y) the Cure Amount set forth in the Assumption, Assignment and Cure Notice shall be controlling, notwithstanding anything to the contrary in any Designated Contract, or any other document, and the counterparty to a Designated Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Designated Contract against the Debtors or the Purchaser, or the property of any of them.

(d)      Successful Bidder Other Than Purchaser.  If the Purchaser is not the Successful Bidder at the Auction, then no later than [[●] ([●])] business days after the Auction, the Debtors shall send a subsequent Assumption, Assignment and Cure Notice to each non-Debtor party to a Purchased Contract identifying the Successful Bidder.

14.    This Order shall be binding on each Seller and its successors, including, without limitation, any Seller that becomes subject to a bankruptcy or insolvency proceeding following entry of this Order.  In the event that any Seller becomes subject to any proceeding under the Bankruptcy Code or the Securities Investor Protection Act following entry of this Order, such debtor or any successor shall be authorized and directed to comply with the Bidding Procedures as set forth herein to the maximum extent permitted by law.

15.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: New York, New York
       _____, 2008


_____
THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

### BIDDING PROCEDURES FOR THE SALE
### OF
### LEHMAN BROTHERS HOLDINGS INC.
### INVESTMENT MANAGEMENT DIVISION

The Bidding Procedures set forth herein govern the proposed sale by Lehman Brothers Holdings Inc. (the "Debtor," together with certain of its debtor affiliates, the "Debtors," and together with its selling affiliates, the "Sellers") of the assets owned, held, or used primarily in connection with the Sellers' investment management business, including certain partnerships, limited liability companies, and investment vehicles to which a Seller or its affiliate provides investment advisory services or serves as the general partner, managing member, or any similar capacity.

A more complete listing of the assets available for sale is included in that certain Amended and Restated Purchase Agreement, dated October 3, 2008 (the "Purchase Agreement" or the "Stalking Horse Bid"), among IMD Parent LLC (the "Purchaser") and the Sellers, a copy of which is available on the internet at http://chapter11.epiqsystems.com/lehman or by request to the Debtor's noticing agent at [800 number].

**Any interested bidder should contact [____].**

The Bidding Procedures set forth herein describe, among other things, the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined below), the ultimate selection of the Successful Bidder(s) (as defined below), and Court approval thereof (collectively, the "Bidding Process").

### Participation Requirements

Any person who wishes to participate in the Bidding Process must submit a bid that satisfies each of the requirements set forth herein (such person, a "Qualified Bidder," and such bids, a "Qualified Bid.").

Any person who wishes to conduct diligence in connection with the Bidding Process must will enter into a confidentiality agreement, which shall inure to the benefit of any purchaser of the Purchased Assets, and shall be on terms that are not less favorable to the Sellers or more favorable to such potential bidder than the terms of the Confidentiality Agreement (as defined in the Purchase Agreement).

### Bid Deadline

A Qualified Bidder who desires to make a bid must deliver the Required Bid Documents (as defined below) so as to be received not later than 12 noon (New York Time) on [2 DAYS BEFORE THE AUCTION] (the "Bid Deadline") to [●], Attention: [●], with copies to (a) Sellers' counsel: Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attention: Lori R. Fife, Esq. and Michael E. Lubowitz, Esq., (b) Sellers' financial advisor: [●], and (c) counsel to the Creditors' Committee: Milbank, Tweed, Hadley & McCloy

LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attention:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.  The Sellers may extend the Bid Deadline.  If the Sellers extend the Bid Deadline, the Sellers will promptly notify all Qualified Bidders of such extension.

The Sellers will promptly provide written notice to the Purchaser of any bids in addition to the Stalking Horse Bid and shall provide copies of each such bid to the Purchaser.

Bid Requirements

All bids must include the following (the "Required Bid Documents"):

(a)    a letter stating that the bidder's offer is irrevocable until the conclusion of the Sale Hearing;

(b)    a duly authorized and executed purchase agreement, including the purchase price for the Purchased Assets, together with all exhibits and schedules marked to show those amendments and modifications to the Purchase Agreement (a "Marked Agreement") and the proposed Sale Order; and

(c)    written evidence of a firm commitment for financing, or other evidence of ability to consummate the proposed transaction without financing, that is satisfactory to the Sellers after consultation with the Creditors' Committee.

A bid will be considered only if the bid:

(a)    identifies the assets to be purchased and the contracts and leases to be assumed;

(b)    is not conditioned on obtaining financing or on the outcome of unperformed due diligence or corporate, stockholder or internal approval;

(c)    provides evidence, satisfactory to the Sellers, in their reasonable discretion (after consultation with the Creditors' Committee) of the bidder's financial wherewithal and operational ability to consummate the transaction; and

(d)    is received on or before the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "Qualified Bid" only if it includes all of the Required Bid Documents and meets all of the above requirements. Notwithstanding the foregoing, the Purchaser shall be deemed a Qualified Bidder and the Purchase Agreement shall be deemed a Qualified Bid for all purposes in connection with the Bidding Process.

A Qualified Bid will be valued based upon several factors including, without limitation, items such as the net value and recovery to constituents provided by such bid after pre- and post-closing adjustments, the amount and availability of distributions to stakeholders, consideration for any Seller Termination Fee and the Reimbursement Amount payable to the Purchaser under the Purchase Agreement, the number of transactions that would be required to consummate the bid, the number of counterparties to such transactions, the amount of assets included or excluded from the bid, and the likelihood and timing of consummating such transactions, each as determined by the Sellers with the assistance of their financial and legal advisors.

Debtors will promptly advise Purchaser orally and in writing of (a) any offer or proposal for a Competing Transaction, (b) any request for nonpublic information relating to the Purchased Assets or access to the properties, books or records with respect to the Purchased Assets, other than requests in the ordinary course of business and unrelated to an offer or proposal relating to a Competing Transaction, or (c) any inquiry or request for discussions or negotiations regarding an offer or proposal relating to a Competing Transaction.

<u>Seller Termination Fee and Expense Reimbursement</u>

Recognizing the Purchaser's expenditure of time, energy, and resources, the Sellers have agreed that if the Purchaser is not the Successful Bidder, the Sellers will, in certain circumstances, pay to the Purchaser a Seller Termination Fee and a Reimbursement Amount. The payment of the Seller Termination Fee and Reimbursement Amount will be governed by the provisions of the Purchase Agreement and the Bid Procedures Order.

<u>Auction</u>

Sellers will conduct an auction in accordance with the Bidding Procedures (the "Auction") of the Purchased Assets upon notice to all Qualified Bidders who have submitted Qualified Bids at  [●], a.m. (New York time) on [THE FIRST BUSINESS DAY 61 DAYS AFTER ENTRY OF THE BIDDING PROCEDURES ORDER], at [●].

(a)     Only the Sellers, the Purchaser, any representative of the Creditors' Committee, and any Qualified Bidder which has submitted a Qualified Bid (and the legal and financial advisers to each of the foregoing), will be entitled to attend the Auction, and only the Purchaser and Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

(b)     Prior to the Auction, the Sellers will provide copies of the Qualified Bid or combination of Qualified Bids which the Sellers believe is the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders which have informed the Sellers of their intent to participate in the Auction.  In order for a Qualified Bid (other than the Stalking Horse Bid) to be the Starting Bid, such Qualified Bid shall have a value to the Sellers, either individually or, in conjunction with any other Qualified Bid, greater than or equal to net amount the Sellers would receive under the Purchase Agreement, <u>plus</u> the amount of the Seller Termination Fee,  <u>plus</u> the amount of the Reimbursement Amount, <u>plus</u> $50 million, as determined by the Sellers in their sole discretion.

(c)     After giving effect to a credit for the amount of the Seller Termination Fee and the Reimbursement Amount payable to the Purchaser, the Purchaser shall have the opportunity to increase its offer to (x) a level at least $1 million in excess of the Starting Bid, or (y) to otherwise modify the terms of its offer to be more favorable or consistent with such offer, and thus become the Starting Bid.

(d)     The Sellers may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, <u>provided</u> that such rules are (i) not inconsistent with the Bid Procedures Order, the Bankruptcy Code, or any

order of the Bankruptcy Court entered in connection herewith, and (ii) disclosed
to each Qualified Bidder.

(e)    Bidding at the Auction will begin with the Starting Bid and continue, in one or
more rounds of bidding, so long as during each round at least one subsequent bid
is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's
immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Sellers
determine that such Subsequent Bid is (a) for the first round, a higher or otherwise
better offer than the Starting Bid, and (b) for subsequent rounds, a higher or
otherwise better offer than the Leading Bid (defined below).  The first minimum
incremental bid at the Auction shall have a purchase price of at least $25 million
over the Starting Bid, with any subsequent bid increases of bids to be made in
minimum increments of at least $25 million.  After the first round of bidding and
between each subsequent round of bidding, the Sellers shall announce the bid
(and the value of such bid) that it believes to be the highest or otherwise better
offer (the "Leading Bid").  A round of bidding will conclude after each
participating Qualified Bidder has had the opportunity to submit a Subsequent Bid
with full knowledge and written confirmation of the Leading Bid.  For the
purpose of evaluating the value of the consideration provided by Subsequent Bids
(including any Subsequent Bid by the Purchaser), the Sellers will give effect to
the Seller Termination Fee and the Reimbursement Amount that may be payable
to the Purchaser under the Purchase Agreement.  Any Subsequent Bid submitted
by the Purchaser shall be credited in full with the amount of the Seller
Termination Fee and the Reimbursement Amount.

(f)    If Sellers do not receive any Qualified Bid other than the Purchaser's Qualified
Bid at the conclusion of the Auction, Sellers shall seek approval of the Purchase
Agreement at the Sale Hearing.

<u>Selection Of Successful Bid</u>

The Sellers reserve the right to (i) determine in their reasonable discretion (after
consultation with the Creditors' Committee) which bid is the highest or best (the "Successful
Bid(s)" and the bidder(s) making such bid(s), the "Successful Bidder(s)") and (ii) reject at any
time prior to entry of a Court order approving an offer, without liability, any offer, other than the
Stalking Horse Bid, that the Sellers in their reasonable discretion (after consultation with the
Creditors' Committee) deem to be (x) inadequate or insufficient, (y) not in conformity with the
requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set
forth therein or herein, or (z) contrary to the best interests of the Sellers, the Debtors, and their
estates.

The Sellers will sell the Purchased Assets for the highest or otherwise best Qualified Bid
to the Successful Bidder(s) upon the approval of such Qualified Bid by the Court after the Sale
Hearing.  The Sellers' presentation of a particular Qualified Bid to the Court for approval does
not constitute the Sellers' acceptance of the bid.  The Sellers will be deemed to have accepted a
bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

<u>The Sale Hearing</u>

The Sale Hearing will be held before the Honorable Judge James M. Peck on [THE FIRST BUSINESS DAY THAT IS TWO DAYS FOLLOWING THE AUCTION, OR AS SOON THEREAFTER AS THE COURT MAY PERMIT] at [●] (New York time) in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004.  The Sale Hearing may be adjourned without further notice by an announcement of the adjourned date at the Sale Hearing.  If the Sellers do not receive any Qualified Bids (other than the Qualified Bid of the Purchaser), the Sellers will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Purchased Assets to the Purchaser following entry of the Sale Order in accordance with the terms of the Purchase Agreement.  If the Sellers do receive additional Qualified Bids, then, at the Sale Hearing, the Sellers will seek approval of the Successful Bid(s), and, at the Sellers' election, one or more next highest or best Qualified Bid(s) (the "<u>Alternate Bid(s)</u>," and such bidder(s), the "<u>Alternate Bidder(s)</u>"); provided, however, the Sellers may only designate the Stalking Horse Bid as an Alternative Bid with the express written consent of the Purchaser.

The Sellers' presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) will not constitute the Sellers' acceptance of either of any such bid(s), which acceptance will only occur upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing. Following approval of the Sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of (a) failure of a condition precedent beyond the control of either the Sellers or the Successful Bidder(s) upon which occurrence the Sellers have filed a notice with the Bankruptcy Court advising of such failure or (b) a breach or failure to perform on the part of such Successful Bidder(s) upon which occurrence the Sellers have filed a notice with the Bankruptcy Court advising of such breach or failure to perform, then the Alternate Bid(s) will be deemed to be the Successful Bid(s) and the Sellers will be authorized, but not directed, to effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such Alternate Bidder(s) without further order of the Bankruptcy Court.

**EXHIBIT B**

NY2:\1923352\04\1582G04!.DOC\58399.0003

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                              :        Chapter 11
                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*             :        Case No. 08-13555 (JMP)
                                                    :
              Debtors.                              :        (Jointly Administered)
                                                    :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### NOTICE OF SALE OF CERTAIN EQUITY INTERESTS AND ASSETS RELATED TO LEHMAN BROTHERS' INVESTMENT MANAGEMENT DIVISION

On September 29, 2008, Lehman Brothers Holdings Inc. ("LBHI") and its affiliates listed on Schedule I to the Agreement (as defined below) (collectively with LBHI, "Lehman") entered into a Purchase Agreement, which was subsequently amended and restated on October 3, 2008 (as amended and restated, the "Agreement") with IMD Parent LLC (together with any of its designees, the "Purchaser"), under which Lehman has agreed to sell to Purchaser (or subsidiaries of the Purchaser) certain assets (as defined in the Agreement, the "Purchased Assets"), and Purchaser has agreed to assume (or cause certain of its subsidiaries to assume) certain liabilities, related to Lehman's investment management business.  IMD Parent LLC is jointly controlled by private investment funds sponsored by Bain Capital Partners, LLC and Hellman & Friedman, which have agreed to provide all of the funding required to close the transaction.

**A more complete listing of the assets available for sale is included in the Agreement.**

Because LBHI, as a debtor-in-possession under chapter 11 of the Bankruptcy Code, is a party to the Agreement, the Agreement must be approved by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in which LBHI's above-captioned chapter 11 case is pending.  The sale of the Purchased Assets is subject to higher or better offers. On October 6, 2008, LBHI filed a motion (the "Sale Motion") seeking approval of (i) certain "Bidding Procedures" to govern the sale of the Purchased Assets and (ii) the sale of the Purchased Assets to the Purchaser.

By order, dated October [_], 2008 (the "Bid Procedures Order"), the Bankruptcy Court approved certain "Bidding Procedures" that govern the sale of the Purchased Assets.

LBHI has requested the Bankruptcy Court enter a "Sale Order," substantially in the form of the one attached to the Sale Motion as Exhibit 3.  The proposed Sale Order provides, among other things, for the sale of assets free and clear of liens, claims, encumbrances and other interests, to the extent permissible by law, and the assumption by Purchaser of certain assumed liabilities of the Sellers.  A separate notice will be provided to counterparties to executory contracts with the Sellers.

**Copies of the Agreement, the Bid Procedures Order, the Bidding Procedures, and the proposed Sale Order are available upon request to LBHI's noticing agent at [800 number] on the internet at http://chapter11.epiqsystems.com/lehman (the "Website").**

**ANY INTERESTED BIDDER SHOULD CONTACT [___].**

**PLEASE TAKE NOTE OF THE FOLLOWING IMPORTANT DEADLINES:**

- **The deadline to submit a Qualified Bid (as defined in the Bidding Procedures) is [___].**

- **An auction for the assets of the Purchased Assets has been scheduled for [___].**

- **The deadline to lodge an objection with the Bankruptcy Court to the proposed sale is [___].**

- **The Bankruptcy Court will conduct a hearing to consider the proposed sale on [___].**

**PLEASE TAKE NOTICE THAT THE FAILURE TO ABIDE BY THE PROCEDURES AND DEADLINES SET FORTH IN THE BID PROCEDURES ORDER AND THE BIDDING PROCEDURES MAY RESULT IN THE FAILURE OF THE BANKRUPTCY COURT TO CONSIDER A COMPETING BID OR AN OBJECTION TO THE PROPOSED TRANSACTION.**

Dated: October __, 2008
     New York, New York

                              _____

                              Harvey R. Miller
                              Richard P. Krasnow
                              Lori R. Fife
                              Shai Y. Waisman
                              Jacqueline Marcus
                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York 10153
                              Telephone: (212) 310-8000
                              Facsimile: (212) 310-8007

                              Attorneys for the Sellers

**Exhibit C**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                                    :    **Chapter 11**
                                                          :
                                                          :    **Case No. 08-13555 (JMP)**
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,              :    **(Jointly Administered)**
                                                          :
        Debtors.                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE AMOUNT
### WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES
### RELATED TO LEHMAN BROTHERS' INVESTMENT MANAGEMENT DIVISION

On September 29, 2008, Lehman Brothers Holdings Inc. ("LBHI") and its affiliates listed on Schedule I to the Agreement (as defined below) (collectively with LBHI, "Lehman") entered into a Purchase Agreement, which was subsequently amended and restated on October 3, 2008 (as amended and restated, the "Agreement") with IMD Parent LLC (together with any of its designees, the "Purchaser"), under which Lehman has agreed to sell to Purchaser (or subsidiaries of the Purchaser) certain assets (as defined in the Agreement, the "Purchased Assets"), and Purchaser has agreed to assume (or cause certain of its subsidiaries to assume) certain liabilities, related to Lehman's investment management business. IMD Parent LLC is jointly controlled by private investment funds sponsored by Bain Capital Partners, LLC and Hellman & Friedman, which have agreed to provide all of the funding required to close the transaction.

On October 6, 2008, LBHI and its affiliated debtors in the above-referenced chapter 11 cases (collectively, the "Debtors") filed a motion (the "Motion") to (a) establish sales procedures, (b) approve certain stalking horse bidder protections, and (c) approve the sale of the Purchased Assets and the assumption and sublease or assumption and assignment of certain contracts and leases relating thereto free and clear of all liens, claims, encumbrances and other interests.

Pursuant to the Motion, the Debtors sought authorization to assume and sublease or assume and assign certain executory contacts and unexpired leases relating to the Purchased Assets upon consummation of the transaction contemplated in the Agreement. **A list of the Purchased Contracts, Transferred Real Property Leases and Subleased Real Property Leases (each as defined in the Agreement and collectively, the "Designated Contracts") is [attached hereto as Exhibit A]/[available on the internet at http://chapter11.epiqsystems.com/lehman (the "Website"), or upon request to LBHI's noticing agent at [800 number]].** The Debtors and the Purchaser reserve the right to remove any Designated Contracts prior to consummation of the transaction contemplated in the Agreement.

You are receiving this Notice because you may be a party to a Designated Contract (or represent a party to a Designated Contract).

The Debtors have determined the appropriate cure amount (the "Cure Amount") for each Designated Contract and have listed such Cure Amounts on [Exhibit A hereto and] the Website.

**To the extent that a non-Debtor counterparty objects to (i) the assumption and sublease or
assumption and assignment to the Purchaser of such party's respective Designated
Contract or (ii) the Cure Amount, the non-Debtor counterparty must file and serve an
objection upon the following parties, so as to be received by no later than [__], 2008, at 4:00
p.m. (New York Time): [_____].**

If an objection challenges a Cure Amount, the Debtors have requested that they nonetheless be
authorized to move forward to assume, assume and sublease, or assume and assign the contract
or lease that is the subject of a Cure Amount objection, provided that the Cure Amount asserted
by the objector is held in reserve.  If the Debtors receive an objection to a Cure Amount, the
Debtors reserve the right to decide to reject the contract or lease at issue if the Cure Amount is
ultimately determined by order of the Court to be higher than the Cure Amount set forth in this
Notice.

**If no objection to the Cure Amount of a Designated Contract is timely filed and served, the
Debtors may assume and sublease or assume and assign that Designated Contract, and the
Cure Amount set forth on [Exhibit A]/the Website shall be binding upon the respective
non-Debtor counterparty to the Designated Contract for all purposes in the Debtors'
chapter 11 cases, and such non-Debtor counterparty shall be forever barred from objecting
to the Cure Amount, including, without limitation, the right to assert any additional cure
or other amount with respect to their respective Designated Contract.**

Dated:  New York, New York
               _____, 2008

                                         _____
                                         Harvey R. Miller
                                         Richard P. Krasnow
                                         Lori R. Fife
                                         Shai Y. Waisman
                                         Jacqueline Marcus
                                         WEIL, GOTSHAL & MANGES LLP
                                         767 Fifth Avenue
                                         New York, New York 10153
                                         Telephone: (212) 310-8000
                                         Facsimile: (212) 310-8007

                                         Attorneys for Debtors and
                                          Debtors In Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

### ORDER UNDER 11 U.S.C. §§ 105(a), 363, AND 365 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 6006 AUTHORIZING AND APPROVING (A) THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF INTERESTS AND (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the motion, dated October 6, 2008 (the "Motion"), of Lehman Brothers Holdings

Inc. ("LBHI"), as debtor and debtor in possession (collectively, with its debtor affiliates, the

"Debtors") for orders pursuant to 11 U.S.C. §§ 105, 363, 364(c)(1) and 365 and Fed. R. Bankr.

P. (the "Bankruptcy Rules") 2002, 6004, 6006, 9008 and 9014 (A) approving the Amended and

Restated Purchase Agreement, dated October 3, 2008, among LBHI and certain of its

subsidiaries (collectively, the "Sellers"), and IMD Parent LLC (or its designee, the "Purchaser")

(as same may be subsequently modified, amended or clarified, the "Agreement")[3] and the

transactions contemplated thereby; (B) authorizing the Purchased Assets free and clear of all

Interests (as defined below) in accordance with, and on the terms of, the Agreement (the

"Transaction"); (C) authorizing the Sellers' assumption and assignment to Purchaser, pursuant to

and in accordance with the Agreement, of those executory contracts and unexpired leases

identified as Purchased Contracts and Transferred Real Property Leases, free and clear of all

Interests; and (D) authorizing the assumption and sublease of the Subleased Real Property

Leases free and clear of all Interests; and (E) authorizing the assumption by Purchaser of certain

---

[3]   Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the Agreement.

liabilities of the Sellers pursuant to and solely to the extent provided in the Agreement; and the

Court having entered an order on [●] (Docket No. [●]) (the "Bid Procedures Order") approving

(i) bidding procedures, (ii) the Seller Termination Fee and the Reimbursement Amount, (iii) the

form and manner of the notice of the Transaction, and (iv) the form and manner of the notice of

the assumption and assignment of the Purchased Contracts and Transferred Real Property Leases

and the assumption and sublease of the Subleased Real Property Leases; and the Auction having

been held on [●], 2008 for the consideration of Qualified Bids and the selection of a Successful

Bidder (each as defined in the Bid Procedures Order); and upon the Court's consideration of the

Motion and the record of the hearing held on [●], 2008 with respect to the Motion (the "Sale

Hearing"), including the testimony and evidence admitted at the Sale Hearing; and after due

deliberation thereon, and sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:[4]

A.    **Jurisdiction and Venue**.  This Court has jurisdiction to consider this Motion

under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue

of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion

are Bankruptcy Code sections 105(a), 363, 364(c)(i) and 365, Bankruptcy Rules 2002, 6004,

6006, 9008 and 9014 and the applicable Local Rules for the United States Bankruptcy Court for

the Southern District of New York (the "Local Rules").

C.    **Notice**.  As evidenced by the affidavits of service filed with this Court and based

upon the representations of counsel at the Sale Hearing and as approved under the Bid

Procedures Order:  (i) due, proper, timely, adequate and sufficient notice of the Motion, the Sale

---

[4]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be
construed as findings of fact to the fullest extent of the law.  See Fed. R. Bankr. P. 7052.

Hearing and the Transaction, including the assumption and assignment of any Purchased

Contract and Transferred Real Property Lease, the assumption and sublease of the Subleased

Real Property Leases (the "Subleases") designated by the Purchaser prior to the date hereof and

identified on Exhibit [____] attached hereto (collectively, the Purchased Contracts, the

Transferred Real Property Lease and the Subleased Real Property Leases and the corresponding

Subleases, the "Designated Contracts") and the Cure Amounts (as defined below) with respect

thereto, has been provided; (ii) it appearing that no other or further notice need be provided; (iii)

such notice was and is good, sufficient and appropriate under the circumstances of the Debtors'

chapter 11 cases; and (iv) no other or further notice of the Motion, the Sale Hearing or the

Transaction, is or shall be required.

      D.      **Opportunity to Object**.  A reasonable opportunity to object and to be heard with

respect to the Transaction, the Motion and the relief requested therein has been given to all

interested persons and entities, including, without limitation, the following: (i) the Office of the

United States Trustee for the Southern District of New York, (ii) counsel for the Purchaser, (iii)

counsel for the Official Committee of Unsecured Creditors appointed in these chapter 11 cases

(the "Committee"), (iv) all entities known to have asserted any claims against the Purchased

Assets or the Sellers' interest in the Purchased Assets and other entities known to have asserted a

lien, interest or encumbrance in or upon the Purchased Assets, (v) all counterparties to Purchased

Contracts, Transferred Real Property Leases and the Subleased Real Property Leases, (vi) the

Office of the United States Attorney for the Southern District of New York, (vii) the United

States Department of Justice, (viii) the Securities and Exchange Commission, (ix) the Federal

Reserve Bank of New York, (x) the Securities Investor Protection Corporation, (xi) the Internal

Revenue Service and applicable federal and state taxing authorities, (xii) the U.S. Commodities

Futures Trading Commission, (xiii) the Pension Benefit Guaranty Corporation and all regulatory authorities of the Debtors' foreign pension plans, including the U.K. Pension Regulator, (xiv) all persons, if any, who have filed objections to the Motion, and (xv) all persons who have filed a notice of appearance in these cases.

E.      **Auction.**    The Sellers extensively marketed the Purchased Assets.  Potential bidders had the full and fair opportunity to submit bids and participate in the Auction.  The Auction was conducted fairly and in good faith, without collusion and in accordance with the Bidding Procedures Order.  At the Auction, Purchaser was selected as the Successful Bidder. The Debtors' determination that the Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

F.      **Arm's-Length Sale**.    The Agreement and Ancillary Agreements, were negotiated, proposed and entered into by the Sellers and the Purchaser without collusion, in good faith and from arm's-length bargaining positions.  Neither the Purchaser nor any of its Affiliates or their respective Representatives is an "insider" of any of the Debtors, as that term is defined in Bankruptcy Code section 101(31).  None of the Debtors, the Purchaser or their respective Affiliates or Representatives (each as defined in the Agreement) has engaged in any conduct that would cause or permit the Agreement or any Ancillary Agreements to be avoided under Bankruptcy Code section 363(n) or has acted in any improper or collusive manner with any person.  The terms and conditions of the Agreement, Ancillary Agreements and the Transactions, including without limitation the consideration provided in respect thereof, is fair and reasonable and shall not be avoided under Bankruptcy Code section 363(n).

G.      **Good Faith Purchaser**.    The Purchaser, its Affiliates and their respective Representatives have proceeded in good faith and without collusion in all respects in connection

with this proceeding.  Such persons are therefore entitled to all of the benefits and protections of

Bankruptcy Code section 363(m).  Accordingly, the reversal or modification on appeal of the

authorization provided herein to consummate the Transaction shall not affect the validity of the

Transaction (including, without limitation, the Ancillary Agreements and the assumption and

assignment of the Purchased Contracts and the Transferred Real Property Leases and the

assumption and sublease of the Subleased Real Property Leases) with Purchaser, unless such

authorization is duly stayed pending such appeal prior to the Closing.

H.    **Corporate Authority**.  The Debtors (i) have full corporate power and authority to

execute the Agreement, Ancillary Agreements and all other documents contemplated thereby,

and the Transaction has been duly and validly authorized by all necessary corporate action,

(ii) have all of the corporate power and authority necessary to consummate the Transaction, (iii)

have taken all corporate action necessary to authorize and approve the Agreement, Ancillary

Agreements and the Transaction, and (iv) no consents or approvals, other than those expressly

provided for in the Agreement and Ancillary Agreements, are required to consummate such

Transaction.

I.    **Sale in Best Interests**.  Good and sufficient reasons for approval of the

Agreement, Ancillary Agreements and the Transaction have been articulated, and the relief

requested in the Motion is in the best interests of the Debtors, their estates, their creditors and

other parties in interest.

J.    **Business Justification**.  The Debtors have demonstrated both (i) good, sufficient

and sound business purposes and justifications and (ii) compelling circumstances for the

Transaction other than in the ordinary course of business under Bankruptcy Code section 363(b)

before, and outside of, a plan of reorganization in that, among other things, the immediate

approval by the Bankruptcy Court of the Transaction with the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates, particularly given the wasting nature of the Purchased Assets. Entry of an order approving the Agreement and the Ancillary Agreements, and all the provisions thereof is a necessary condition precedent to the Purchaser's consummation of the Transactions.

K.   **Consideration**.   The consideration provided by the Purchaser to the Sellers pursuant to the Agreement constitutes reasonably equivalent value or fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia. The Agreement represents a fair and reasonable offer to purchase the Purchased Assets under these circumstances. No other person or entity or group of persons or entities, other than the Purchaser, has offered to purchase the Purchased Assets for an amount that would give greater value to the Sellers. Approval of the Motion, the Agreement, the Ancillary Agreements and the Transaction by this Court is in the best interests of the Debtors, their creditors and all other parties in interest.

L.   **Free and Clear**.   The transfer of the Purchased Assets to the Purchaser under the Agreement will be a legal, valid, and effective transfer, and vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Liens (as defined in the Agreement), Claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, options, rights, restrictions, contractual commitments, rights of first refusal, rights of setoff, or interests of any kind or nature whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or

subsequent to the commencement of these chapter 11 cases, whether imposed by agreement,

understanding, law, equity or otherwise (collectively, including without limitation, Liens, Claims

and other interests, the "Interests"), including, but not limited to, (i) those that purport to give to

any party a right or option to effect a setoff against or any forfeiture, modification or termination

of the Debtors' interests in the Purchased Assets, or any similar rights, (ii) all Excluded

Liabilities, including without limitation, those relating to taxes arising under or out of, in

connection with, or in any way relating to the operation of the Debtors' business or any tax

liability of the Debtors arising under or out of, in connection with, or in any way relating to the

cancellation of debt, (iii) those arising under all mortgages, deeds of trust, security interests,

conditional sale or other title retention agreements, pledges, liens, judgments, demands,

encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not

limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any

attributes of ownership, and (iv) those arising in connection with any agreements, acts, or

failures to act, of any of the Sellers or any of the Sellers' predecessors, affiliates, or

Representatives including, but not limited to, Interests arising under any bulk-transfer laws,

doctrines of successor liability or similar theories.  For the avoidance of doubt, without limiting

the effect of the foregoing, the assumption and assignment, transfer or sublease of any Purchased

Contract, Transferred Real Property Lease, or Subleased Real Property Lease are free and clear

of all Interests.

     M.    **Free and Clear Findings Needed by Purchaser**.  The Purchaser asserts that it

would not have entered into the Agreement and would not consummate the Transaction, thus

adversely affecting the Debtors, their estates and their creditors, if the sale of the Purchased

Assets to the Purchaser, the assumption and assignment or transfer of the Purchased Contracts

and Transferred Real Property Leases, and the assumption and sublease of the Subleased Real

Property Leases to the Purchaser was not free and clear of all Interests of any kind or nature

whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Interests.

N.    **Satisfaction of Section 363(f) Standards**.    The Sellers may sell the Purchased

Assets free and clear of any Interests of any kind or nature whatsoever because in each case, one

or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been

satisfied.  The person or entity with any Interest in the Purchased Assets:  (i) has, subject to the

terms and conditions of this Sale Order, consented to the Transaction or is deemed to have

consented to the Transaction; (ii) could be compelled in a legal or equitable proceeding to accept

money satisfaction of such Interest; or (iii) otherwise falls within the provisions of section 363(f)

of the Bankruptcy Code.  Those holders of Interests who did not object to the Motion are

deemed, subject to the terms of this Sale Order, to have consented pursuant to section 363(f)(2)

of the Bankruptcy Code.  All holders of Interests are adequately protected by having their

Interests attach to the proceeds ultimately attributable to the Purchased Assets against or in

which such Interests are asserted, subject to the terms of such Interests, with the same validity,

force and effect, and in the same order of priority, which such Interests now have against the

Purchased Assets or their proceeds, subject to any rights, claims and defenses the Sellers or their

estates, as applicable, may possess with respect thereto.

O.    **No Liability Findings Needed by Purchaser**.    Purchaser asserts that it will not

consummate the Transaction unless the Agreement specifically provides, and the Bankruptcy

Court specifically orders, that none of the Purchaser Releasees (as defined below) or the

Purchased Assets will have any liability whatsoever with respect to or be required to satisfy in

any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or

indirectly, any Interest or Excluded Liability.

        P.      **No Fraudulent Transfer**.  The Agreement and Ancillary Agreements were not

entered into for the purpose of hindering, delaying or defrauding creditors of the Sellers under

the Bankruptcy Code and under the laws of the United States, any state, territory, possession

thereof, or the District of Columbia.  Neither Sellers nor Purchaser are entering into the

Transaction contemplated by the Agreement fraudulently for the purpose of such statutory and

common law fraudulent conveyance and fraudulent transfer claims.

        Q.      **No Substantive Consolidation**.  There is no factual or legal basis to order the

substantive consolidation of the Debtors with any of the Sellers or Acquired Subsidiaries (as

defined in the Agreement) that are not Debtors, if any.

        R.      **No Successor Liability**.  Except for the Assumed Liabilities, the transfer of the

Purchased Assets to the Purchaser under the Agreement shall not result in any Purchaser

Releasee or the Purchased Assets having any liability or responsibility for (i) any Interest against

the Sellers or against an insider of the Sellers, or (ii) the satisfaction in any manner, whether at

law or in equity, whether by payment, setoff or otherwise, directly or indirectly, of any Interest

or Excluded Liability, or (iii) to third parties or the Sellers except as is expressly set forth in the

Agreement.  Without limiting the effect or scope of the foregoing, the transfer of the Purchased

Assets from the Sellers to the Purchaser does not and will not subject the Purchaser or its

affiliates, successors or assigns or their respective properties (including the Purchased Assets) to

any liability for Interests against the Sellers or the Sellers' Interests in such Purchased Assets by

reason of such transfer under the laws of the United States or any state, territory, possession

thereof, or the District of Columbia applicable to such Transactions, including, without

limitation, any bulk-transfer laws, successor liability or similar theories.

S.    **Cure/Adequate Assurance**.  The assumption and assignment or transfer of the

Purchased Contracts and Transferred Real Property Leases, and the assumption and the sublease

of the Subleased Real Property Leases pursuant to the terms of this Sale Order is integral to the

Agreement, does not constitute unfair discrimination, and is in the best interests of the Debtors

and their estates, creditors and all other parties in interest, and represents the reasonable exercise

of sound and prudent business judgment by the Sellers.  The Sellers' contractual obligation to

pay the Cure Amounts (as defined below) and the Purchaser's contractual obligation to perform

the obligations under the Purchased Contracts, Transferred Real Property Leases, and Subleases

after the Closing shall constitute adequate assurance of future performance.  Purchaser has

demonstrated adequate assurance of future performance with respect to the Purchased Contracts,

Transferred Real Property Leases, and Subleases and has satisfied the requirements of the

Bankruptcy Code, including, without limitation, sections 365(b)(1) and (3) and 365(f)(2)(B) to

the extent applicable.

T.    [**Personally Identifiable Information**.  The sale includes the transfer of

"Personally Identifiable Information" (as defined in section 101(41A) of the Bankruptcy Code.

The United States Trustee is directed to appoint a Customer Privacy Ombudsman pursuant to

sections 332 and 363(b)(1) of the Bankruptcy Code.  The transfer of Personally Identifiable

Information shall not be effective until a Consumer Privacy Ombudsman is appointed, issues its

findings, and the Court has an opportunity to review the findings and issue any rulings that are

appropriate.]

NOW, THEREFORE, IT IS ORDERED THAT:

1.     **Motion is Granted**.  The Motion and the relief requested therein is GRANTED
and APPROVED, as set forth herein.

2.     **Objections Overruled**.  Any objections to the entry of this Sale Order or the
relief granted herein and requested in the Motion that have not been withdrawn, waived, or
settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and
overruled on the merits with prejudice.

3.     **Approval**.  The Agreement and the Ancillary Agreements and all of the terms and
conditions thereto are hereby approved.  Sellers are hereby authorized to (i) execute the
Agreement and the Ancillary Agreements, along with any additional instruments or documents
that may be reasonably necessary or appropriate to implement the Agreement, *provided* that such
additional documents do not materially change its terms; (ii) consummate the Transaction in
accordance with the terms and conditions of the Agreement, the Ancillary Agreements, and the
other agreements contemplated thereby; (iii) assume and assign to Purchaser the Purchased
Contracts and Transferred Real Property Leases; (iv) assume and sublease to Purchaser the
Subleased Real Property Leases; and (v) take all other and further actions as may be reasonably
necessary to implement the Transaction.

4.     **Valid Transfer**.  As of the Closing, (i) the Transaction effects a legal, valid,
enforceable and effective sale and transfer of the Purchased Assets to Purchaser, and shall vest
Purchaser with title to such Purchased Assets free and clear of all Interests of any kind
whatsoever and (ii) the Agreement, the Ancillary Agreements, the Transaction and any
instruments contemplated thereby shall be enforceable against and binding upon, and not subject
to rejection or avoidance by, the Sellers or any successor trustee appointed with respect thereto.

5.      **General Assignment**.  On the Closing, this Sale Order shall be construed and

shall constitute for any and all purposes a full and complete general assignment, conveyance and

transfer of the Sellers' interests in the Purchased Assets.  Each and every federal, state, and local

governmental agency or department is hereby directed to accept any and all documents and

instruments necessary and appropriate to consummate the Transaction.

6.      **Exculpation and Release.**  None of the Purchaser, the Acquired Subsidiaries or

their respective affiliates, successors and assigns, and each of their respective current affiliates,

officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents

and representatives (collectively, the "Purchaser Releasees") shall have or incur any liability to,

or be subject to any action by any Debtor or Sellers, their respective affiliates, or any of their

predecessors, affiliates, successors and assigns, and each of their respective current and former

affiliates, officers, directors, employees, managers, partners, members, financial advisors,

attorneys, agents and representatives (collectively, the "Releasing Parties"), arising out of the

negotiation, investigation, preparation, execution, delivery of the Agreement and Ancillary

Agreements and the entry into and consummation of the Transaction, except as expressly

provided in the Agreement, the Ancillary Agreements and this Sale Order.

7.      **Indemnification**.  The Sellers are authorized, from and after the Closing, and up

to nine (9) months after the date thereof, to indemnify and hold Purchaser, its Affiliates

(including the Acquired Subsidiaries), and their respective directors, officers, employees,

stockholders, agents, attorneys, representatives, successors and permitted assigns harmless from

and against any Losses arising or resulting from, or relating to, any Excluded Liabilities as set

forth in Article IX of the Agreement.  The liabilities of the Sellers for indemnification under the

Agreement shall not be subject to objection or disallowance under section 502(e) of the

Bankruptcy Code.

8.        **Injunction**.  Except as expressly permitted by the Agreement or by this Sale

Order, all persons and entities, including, but not limited to, all debt security holders, equity

security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation

claimants and other persons, holding Interests of any kind or nature whatsoever against or in the

Sellers or the Sellers' interests in the Purchased Assets (whether known or unknown, legal or

equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated,

asserted or unasserted, whether arising prior to or subsequent to the commencement of these

chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise),

arising under or out of, in connection with, or in any way relating to, the Sellers, the Purchased

Assets, the operation of the Sellers' businesses before the Closing or the transfer of the Sellers'

interests in the Purchased Assets to the Purchaser, shall be and hereby are forever barred,

estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing Interests

against the Purchaser Releasees, their respective property, or the interests of the Sellers in such

Purchased Assets.  Following the Closing, no holder of an Interest against the Sellers shall

interfere with Purchaser's title to or use and enjoyment of the Sellers' interests in the Purchased

Assets based on or related to such Interests, and all such Interests, if any, shall be, and hereby are

transferred and attached to the proceeds from the Transaction in the order of their priority, with

the same validity, force and effect which they have against such Purchased Assets as of the

Closing, subject to any rights, claims and defenses that the Sellers' estates and Sellers, as

applicable, may possess with respect thereto.

9.      **No Successor Liability**.  No Purchaser Releasee shall as a result of the

consummation of the Transaction:  (i) be a successor to the Sellers or the Debtors' estates; (ii)

have, de facto or otherwise, merged or consolidated with or into the Sellers or the Debtors'

estates; or (iii) be a continuation or substantial continuation of the Sellers or any enterprise of the

Sellers.  Except for the Assumed Liabilities, the transfer of the Purchased Assets to Purchaser

under the Agreement shall not result in (i) any Purchaser Releasee or the Purchased Assets

having any liability or responsibility for any Interest against the Sellers or against an insider of

the Sellers, (ii) any Purchaser Releasee or the Purchased Assets having any liability whatsoever

with respect to or be required to satisfy in any manner, whether at law or in equity, whether by

payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability, or (iii) any

Purchaser Releasee or the Purchased Assets, having any liability or responsibility to the Sellers

except as is expressly set forth in the Agreement.

10.      Without limiting the effect or scope of the foregoing, as a result of the closing of

the Transaction, the Purchaser shall have no successor or vicarious liabilities of any kind or

character, including, but not limited to, federal, state or other tax liabilities, U.S. or foreign

pension liabilities, or liabilities based on any theory of antitrust, environmental, labor law, alter

ego, veil piercing, continuity of enterprise, mere continuation, product line, de facto merger or

substantial continuity, whether known or unknown, legal or equitable, matured or unmatured,

contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising

prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by

agreement, understanding, law, equity or otherwise with respect to the Sellers or any obligations

of the Sellers, including, but not limited to, in the case  of liabilities on account of any taxes

arising, accruing or payable under, out of, in connection with, or in any way relating to the

operation of the Purchased Assets prior to the Closing or any taxes in connection with, or in any

way relating to the cancellation of debt of the Sellers or their Affiliates.

11.    **Assumption and Assignment.**  Pursuant to Bankruptcy Code sections 105(a),

363 and 365, and subject to and conditioned upon the Closing, the Sellers' assumption and

assignment to the Purchaser of the Purchased Contracts and Transferred Real Property Leases,

and the Purchaser's acceptance of such assignment on the terms set forth in the Agreement, and

the assumption and sublease to the Purchaser of the Subleased Real Property Leases, are hereby

approved.  On the Closing, the Purchased Contracts, Transferred Real Property Leases and

Subleased Real Property Leases whether entered into before or after the Petition Date, shall be

transferred to or subleased to the Purchaser, free and clear of all Interests of any kind or nature

whatsoever other than the Assumed Liabilities, and shall remain in full force and effect for the

benefit of the Purchaser in accordance with their respective terms, notwithstanding any provision

in any such Purchased Contract, Transferred Real Property Lease or Subleased Real Property

Leases (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy

Code) that prohibits, restricts, or conditions such assignment, transfer or sublease.  Pursuant to

Bankruptcy Code section 365(k), the Sellers shall be relieved from any further liability with

respect to the Purchased Contracts and Transferred Real Property Leases after such assignment

to the Purchaser.  Sellers are hereby authorized to execute and deliver to the Purchaser such

documents or other instruments as may be necessary to assign, transfer or sublease the Purchased

Contracts, Transferred Real Property Leases or Subleased Real Property Leases to the Purchaser

at Closing.

12.    **Payment of Cure Amounts.**  The Sellers shall be obligated to pay or cause to be

paid any and all amounts accrued or otherwise owed (collectively, the "Cure Amounts") under

any Purchased Contract, Transferred Real Property Lease or Subleased Real Property Lease

(including, without limitation, any Designated Contracts and any Purchased Contracts assumed

by the Debtors and assigned to the Purchaser following entry of this Sale Order).  The Sellers

shall pay any Cure Amount for each Purchased Contract, Transferred Real Property Lease or

Subleased Real Property Lease as soon as reasonably practicable after (i) the date on which the

contracting counterparty consents in writing to the Cure Amount, (ii) the date on which the

counterparty is deemed to have consented, or (iii) the date on which the Court enters an order

determining the Cure Amount.  The Sellers' obligation to pay the Cure Amounts and the

Purchaser's promise to perform the obligations under the Purchased Contracts, Transferred Real

Property Leases and Subleases after the Closing shall constitute adequate assurance of future

performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).

13.    **Cure Amounts for Designated Contracts.**  The Cure Amounts set forth on the

Exhibit [●] attached hereto with respect to each Designated Contract shall constitute findings of

the Court and shall be final and binding on parties to such Designated Contracts (and their

successors and designees), and shall not be subject to further dispute or audit based on

performance prior to the time of assumption and assumption and assignment, irrespective of the

terms and conditions of such Designated Contracts.  Each counterparty to a Designated Contract,

whether entered before or after the Petition Date, is hereby forever barred, estopped, and

permanently enjoined from (i) asserting against the Sellers or the Purchaser, or the property of

either of them, any default existing as of Closing; or, against the Purchaser, any counterclaim,

defense, setoff or any other Interest asserted or assertable against the Debtors; and (ii) imposing

or charging against Purchaser or its Affiliates any accelerations, assignment fees, increases or

any other fees as a result of the Sellers' assumption and assignments or assumption and sublease

to Purchaser of the Designated Contracts. To the extent that any counterparty failed to object to

the Cure Amount with respect to a Designated Contract prior to the date hereof, such

counterparty is deemed to have consented to such Cure Amounts and the assignments of such

Designated Contract to the Purchaser.

14.      **Ipso Facto Clauses Ineffective**.  Upon the Debtors' assignment of the Purchased

Contracts and Transferred Real Property Leases and the sublease of the Subleased Real Property

Leases to the Purchaser under the provisions of this Sale Order, no default shall exist under any

Purchased Contract, Transferred Real Property Lease or Subleased Real Property Lease, and no

counterparty to any Purchased Contract, Transferred Real Property Lease or Subleased Real

Property Lease shall be permitted to declare a default by the Debtor or Purchaser thereunder or

otherwise take action against the Purchaser as a result of any Debtor's financial condition,

bankruptcy or failure to perform any of its obligations under the relevant Purchased Contract,

Transferred Real Property Lease or Subleased Real Property Lease.  Any provision in a

Purchased Contract, Transferred Real Property Lease or Subleased Real Property Lease that

prohibits or conditions the assignment or sublease of such Purchased Contract, Transferred Real

Property Lease or Subleased Real Property Lease (including without limitation, the granting of a

lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty,

condition on renewal or extension, or modify any term or condition upon such assignment or

sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and

effect.  The failure of the Sellers or the Purchaser to enforce at any time one or more terms or

conditions of any Purchased Contract, Transferred Real Property Lease or Subleased Real

Property Lease shall not be a waiver of such terms or conditions, or of the Sellers' and

Purchaser's rights to enforce every term and condition of the Purchased Contract, Transferred

Real Property Lease or Subleased Real Property Lease.

15.    **Binding Effect of Order**.  This Sale Order shall be binding upon and shall

govern the acts of all entities, including without limitation all filing agents, filing officers, title

agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds,

administrative agencies, governmental departments, secretaries of state, federal, state and local

officials, and all other persons and entities who may be required by operation of law, the duties

of their office, or contract, to accept, file, register or otherwise record or release any documents

or instruments, or who may be required to report or insure any title or state of title in or to any of

the Purchased Assets.  The terms and provisions of the Agreement, the Ancillary Agreements

and this Sale Order shall be binding in all respects upon the Sellers, the Debtors' estates, all

creditors of (whether known or unknown) and holders of equity interests in either the Sellers,

Purchaser and their respective affiliates, successors and assigns, and any third parties,

notwithstanding any subsequent appointment of any trustee of the Debtors under any chapter of

the Bankruptcy Code or the Securities Investor Protection Act, as to which trustee(s) such terms

and provisions likewise shall be binding.

16.    **Release of Interests**.  This Sale Order (i) shall be effective as a determination

that, on the Closing, all Interests of any kind or nature whatsoever existing as to the Purchased

Assets prior to the Closing have been unconditionally released, discharged and terminated, and

that the conveyances described herein have been effected, and (ii) shall be binding upon and

shall govern the acts of all entities including without limitation, all filing agents, filing officers,

title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds,

administrative agencies, governmental departments, secretaries of state, federal, state, and local