Hearing Date: November 5, 2008 at 10:00 a.m.
Objection Deadline: October 31, 2008 4:00 p.m.

**TUCKER ARENSBERG, P.C.**
Bradley S. Tupi, Esq. (BST 1202)
Beverly Weiss Manne, Esq. (PA 34545)
Michael A. Shiner, Esq. (PA 78088)
Gary P. Hunt, Esq. (PA 23556)
1500 One PPG Place
Pittsburgh, Pennsylvania 15222
Phone: 412-594-5525
Fax: 412-594-5619
Email: btupi@tuckerlaw.com
         bmanne@tuckerlaw.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
| | |
|---|---|
| In re: | ) Chapter 11 Case |
| | ) |
| LEHMAN BROTHERS HOLDINGS, INC., et al. | ) Case No. 08-13555 (JMP) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Relates to Document No. 258 |
| | ) |

-----------------------------------------------------------------x

**MOTION OF THE FEDERAL HOME LOAN BANK OF PITTSBURGH FOR CLARIFICATION, AND RELIEF FROM JUDGMENT PURSUANT TO FED. R. CIV. P. 60(b), SECTION 105(a) OF THE BANKRUPTCY CODE, REGARDING THE COURT'S ORDER APPROVING THE SALE OF ASSETS TO BARCLAYS CAPITAL INC. WITH RESPECT TO NON-DEBTOR ASSETS.**

**TO: THE HONORABLE JAMES M. PECK**
**UNITED STATES BANKRUPTCY JUDGE**

The Federal Home Loan Bank of Pittsburgh ("FHLB") files this motion for clarification

and reconsideration (the "Motion") pursuant to Fed. R. Civ. P. 60(b), made applicable by Federal

Rules of Bankruptcy Procedure 9024 and Section 105(a) of the Bankruptcy Code. FHLB seeks

relief from the Sale Order entered on September 20, 2008 (Doc. 258) for the limited proposition

and holding that the Sale Order did NOT transfer or sell assets of non-Debtors, including, *inter alia* assets of FHLB or assets of non-Debtor affiliates including affiliate Lehman Brothers Special Financing, Inc. ("LBSF") (LBSF has since filed Chapter 11). In support of this Motion, FHLB respectfully represents as follows:

## **PRELIMINARY STATEMENT**

By this Motion, FHLB seeks clarification from this Court that the sale to Barclays Capital did not include the cash that is the property of FHLB which was pledged to and held by LBSF pursuant to certain derivatives agreements. The cash consists of "Posted Collateral" which was required to be held in a separate segregated bank account. After the termination of the derivative contracts, FHLB demanded the return of its cash. LBSF wrongfully failed to return FHLB's cash. Due to unconfirmed allegations of cash transfers by Debtors, FHLB has become concerned that possession of FHLB's cash may have been improperly transferred by LBSF to Lehman Brothers Holdings, Inc. ("LBHI") or other LBHI Debtors on the eve of LBHI's bankruptcy filing. Accordingly, out of an abundance of caution, FHLB seeks clarification and modification of the Sale Order to reflect that assets of non-Debtors and assets of LBHI's non-debtor affiliates were not part of the assets sold to Barclays.

FHLB had no opportunity to bring this issue to Court's attention at the time of its Sale Order, because the Sale Order was entered before FHLB was aware that its cash might have been transferred. Accordingly, FHLB lacked notice so as to form a basis for an objection with respect to the Sale Motion prior to entry of the Sale Order or for reconsideration within the ten days following entry of the Sale Order. Accordingly, FHLB is entitled to relief under Rule 60(b) of the Federal Rules of Civil Procedure.

**BACKGROUND**

1. On September 16, 2008, LBHI, Lehman Brothers, Inc. ("LBI"), and LB 745 LLC ("LB 745"), filed Chapter 11 petitions in this Court, which are being jointly administered at Bankruptcy No. 08-13555 (JMP). The Debtor is authorized to continue to operate its businesses and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On Friday evening, October 3, 2008, LBSF filed a chapter 11 Petition at Bankruptcy Case No. 08-13888 (JMP).

3. On September 17, 2008, LBHI and LB 745 filed a Motion (the "Sale Motion") seeking approval to sell certain assets to Barclays Capital Inc. ("Barclays").

4. The Sale Motion and proposed Order filed were significantly modified during a hearing conducted on September 19, 2008 (the "Sale Hearing").

5. On September 20, 2008, the Court entered an Order approving "Debtors Motion for orders pursuant to 11 U.S.C. §§ 105, 363, 364(c)(1) and 365 and Fed. R. Bankr. P. (the "Bankruptcy Rules") 2002, 6004, 6006 and 9014 (A) scheduling a final sale hearing (the "Sale Hearing") with respect to that certain Asset Purchase Agreement, dated September 16, 2008, among the Debtors, Lehman Brothers Inc. ("LBI" and, collectively with the Debtors, the "Seller") and Barclays Capital, Inc. (the "Purchaser"), collectively with that First Amendment Clarifying Asset Purchase Agreement dated September 19, 2008 and that letter agreement clarifying and supplementing the Asset Purchase Agreement dated September 20, 2008 (as same may be subsequently modified or amended or clarified, the "Purchase Agreement"); (B) establishing sales procedures; (C) approving a break-up fee; and (D) authorizing and approving the sale of certain of the Seller's assets (the "Purchased Assets") free and clear of all liens, claims, encumbrances and interests" etc. (hereinafter referred to as the "Sale Order").

6. The Sale Order provides that the Purchased Assets consist only of assets of which the Debtors and LBI were the sole and lawful owners.

7. The APA provides that Barclays did not purchase assets that were not owned by the Sellers.

8. FHLB seeks confirmation and clarification from this Court that the Purchased Assets did not include the assets of FHLB (the "Posted Collateral," as further defined below) and a modification to the Sale Order to reflect the same.

### The FHLB's Assets

9. FHLB transacted business with LBSF for more than eleven years.

10. Specifically, FHLB and LBSF were counterparties to certain derivative transactions (the "Transactions") pursuant to an International Swap Dealers Association, Inc. ("ISDA") Master Agreement dated as of June 26, 1997 and amended as of April 21, 2003 and certain schedules and annexes, including a Credit Support Annex (the "CSA"), and amendments thereto (collectively the "Master Agreement").

11. LBHI was a credit support provider, as set forth in the Master Agreement, LBHI guarantying LBSF's obligations to the FHLB under the Master Agreement.

12. The CSA required LBSF and FHLB to provide collateral to secure their respective obligations to the other party in connection with the Transactions contemplated by the Master Agreements (the "Posted Collateral").

13. The CSA provided that the Posted Collateral was to be held in "a segregated account, apart from any account which holds [LBSF's] own cash or securities. A segregated account shall at all times indicated (sic) that property held therein is property of the Pledgor." This point bears repeating: the Posted Collateral remained at all times property of FHLB and LBSF had no ownership interest whatsoever in the Posted Collateral.

**FHLB Requests The Return of the Posted Collateral**

14.     The CSA also requires the immediate return of all collateral provided by a Pledging Party, plus interest thereon, upon the occurrence or designation of an "Early Termination Date" resulting from an "Event of Default".

15.     The Bankruptcy of LBHI as a "Credit Support Provider" constituted an Event of Default under the Master Agreement.

16.     As provided for under the Master Agreement, due to the occurrence of the Event of Default, FHLB as the non-defaulting party designated September 19, 2008 as an Early Termination Date in respect of all outstanding Transactions under the Master Agreement. FHLB provided notice of the Event of Default and Early Termination Date to LBSF by letter dated September 19, 2008.

17.     As of September 19, 2008, the Posted Collateral was in an amount in excess of $316,000,000.

18.     On October 2, 2008, pursuant to the Master Agreement, FHLB sent a final settlement notice to LBSF FHLB authorized payment of approximately $275 million to LBSF from the Posted Collateral and demanded return of the balance of the Posted Collateral, approximately $41 million, plus default interest (the "FHLB Collateral").

**LBSF Does Not Return the FHLB Collateral**

19.     FHLB failed to return the balance of the FHLB Collateral to FHLB on October 3, 2008 as required under the Master Agreement and CSA.

20.     LBSF has not returned phone calls or responded to other FHLB inquiries concerning the return of the FHLB Collateral.

21.     During the eve of October 3, 2008, LBSF filed a chapter 11 petition.

22. Additionally, at or about that time, certain allegations as to transfers of monies by LBSF came to the attention of FHLB, including allegations that LBSF may have transferred cash maintained in custodial accounts to LBHI immediately prior to or contemporaneously with LBHI's bankruptcy filing.

23. Specifically, on or about October 3, 2008, LBHI filed a Motion to Continue Using Existing Centralized Cash Management System wherein LBHI, *inter alia*: (a) acknowledged that it engaged in the practice of sweeping cash from the accounts maintained by subsidiaries into a central operating account; (b) that the transactions involving LBSF did rely upon the cash management system to some degree; and (c) that "excess cash" from the LBSF Transactions were transferred to either the main operating account of Lehman Brothers Holdings Inc. or to an account referred to as the United Kingdom Operating Account, depending upon whether the cash was generated through U.S. transactions or European transactions.

## **RELIEF REQUESTED**

24. The netting out and settlement under the Master Agreement did not occur until more than 10 days after entry of the Sale Order. Moreover, the Asset Purchase Agreement provides that the Purchased Assets would not include non-debtor assets. Thus parties with dealings with LBSF would not be reasonably be on notice that assets such as the Posted Collateral could be affected by the Sale Order. If, however, the Posted Collateral was transferred or converted to the use and possession of LBHI, it is critical that the Court confirm that the FHLB Collateral, and any proceeds thereof: (i) was not property of LBHI; (ii) could not be sold by LBHI to Barclays; (iii) did not constitute "Purchased Assets"; and (iv) was not authorized to be transferred pursuant to the Sale Order.

## JURISDICTION

25. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## LEGAL AUTHORITY

26. Because the facts and allegations have come to FHLB's attention following entry of the Sale Order, FHLB files this Motion for Clarification of the Sale Order, and for the Court to alter or amend the Sale Order, as set forth above, pursuant to Rule 60(b).

27. Rule 60(b) provides that a court may relieve a party or its legal representative from a final judgment, order, or proceeding for (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. The Motion must be made within a reasonable time. Fed R. Civ Proc R 60. Moreover, Rule 60(b) is "a remedial rule to be liberally construed." *Altschul v. Paine Webber, Inc.*, 488 F. Supp 858, 859 (S.D.N.Y. 1980)

28. Under Rule 60(b), both intentional and unintentional misrepresentations and failures to disclose provide for a sufficient basis for relief. *See DiPirro v. United States*, 189 F.R.D. 60, 65 (W.D.N.Y. 1999); *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995). The court must then consider the evidence by balancing "the competing policy interests of the finality of judgment against fundamental fairness in light of all of the facts." *Lonsdorf*, 47 F.3d at 897 (citations omitted); *DiPirro*, 189 F.R.D. at 66.

29. Rule 60(b)(4) provides that a judgment may be void when the court "acted in a manner inconsistent with due process of law." A lack of sufficient notice to an interested party may constitute a due process violation and justify deeming a judgment void under Rule 60(b)(4). See, *Folger Adam Sec., Inc. v. Dematteis/Macgregor, JV*, 209 F.3d 252, 265 (3d Cir. 2000). ("Due process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.")

30. A surreptitious transfer of custodial monies surely would constitute the type of misconduct addressed by Rule 60(b)(3). Any transfer of FHLB funds by LBSF was done without notice to FHLB or anyone else – including this Court, in direct violation the Master Agreement. Certainly, this Court would not have authorized a sale of cash by LBHI consisting of funds transferred from LBSF's custodial accounts including the Posted Collateral.

31. Moreover, the concept that the counterparty in possession of custodial accounts pursuant to ISDA Master Agreements could surreptitiously transfer such monies and then have them "sold" in an improper attempt to cut off ownership rights is inconsistent with the entire credit market and terms of the standardized derivatives agreements.

32. Furthermore, there are significant due process issues, because the Sale Motion did not provide notice to FHLB that was reasonably calculated to put FHLB on notice that FHLB's ownership rights and interests in the Posted Collateral were being effected, since there was no notice or reasonable disclosure to FHLB that Purchased Assets could possibly include the Posted Collateral.

33. The Motion is timely. Indeed, other parties have sought reconsideration of the Sale Order under both Rules 59 and 60, and at least one notice of appeal has been filed.

34. Moreover, if the Posted Collateral or proceeds were not transferred and the FHLB Collateral remains in the designated segregated account at the JP Morgan Chase, it is of little or no consequence to the purchaser. Protecting FHLB's property is consistent with the Sale Order requirement that the Purchased Assets include only assets of which the Seller Debtors were the sole and lawful owners. Given the balancing of interests and the intended protection to be afforded under Rule 60, clarification and /or modification of the Sale Order is warranted under Rule 60(b).

WHEREFORE, for the reasons articulated above, the Federal Home Loan Bank of Pittsburgh respectfully requests that this Court grant FHLB's Motion for Relief from Judgment and enter an Order stating that the Purchased Assets do not include the FHLB Collateral or any proceeds, including cash proceeds thereof, and that this Court grant such other and further relief as is just and proper.

Dated: October 7, 2008

Respectfully submitted,

TUCKER ARENSBERG, P.C.

*/s/ Bradley S. Tupi*
Bradley S. Tupi, Esq. (BST1202)
Beverly Weiss Manne, Esq. (PA ID 34545)
Michael A. Shiner, Esq. (PA ID 78088)
Gary P. Hunt, Esq. (PA ID 23556)
Michael J. Stauber, Esq. (PA ID 201022)
1500 One PPG Place
Pittsburgh, PA 15222
(412) 566-1212
bmanne@tuckerlaw.com
btupi@tuckerlaw.com
mshiner@tuckerlaw.com
ghunt@tuckerlaw.com
mstauber@tuckerlaw.com

Counsel for Federal Home Loan Bank of Pittsburgh