Interim Hearning Date and Time: October 16, 2008 at 10:00a.m. (prevailing Eastern time)
Final Hearing Date and Time:  November 5, 2008 at 10:00 a.m. (prevailing Eastern time)
Objection Date:  October 31, 2008 at 4:00 p.m. (prevailing Eastern time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtor
And Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------------------X | : | |
| In re: | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC., et al.** | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |
| ------------------------------------------------------------------------X | | |

**NOTICE OF HEARING REGARDING DEBTORS'**
**APPLICATION PURSUANT TO  SECTIONS § 327(a) AND § 328(a) OF THE**
**BANKRUPTCY CODE FOR AUTHORIZATION TO EMPLOY AND RETAIN**
**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP AS CONFLICTS COUNSEL**
**FOR THE DEBTORS, _NUNC PRO TUNC_, TO THE DATE OF ITS ENGAGEMENT**

PLEASE TAKE NOTICE that an interim hearing on the annexed Application of

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases (together, the "Debtors") for entry of an order, pursuant to Sections 327(a) and

328(a) of Title 11 of the United States Code, as amended (the "Bankruptcy Code"), and Rule

2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the

Debtors' retention and employment of Curtis, Mallet-Prevost, Colt & Mosle LLP ("CMP") as

conflicts counsel, under a general retainer, for the Debtors, _nunc pro tunc_ to the date of its

engagement by the Debtors (the "Engagement"), all as more fully described in the Application, will be held on **October 16, 2008 at 10:00 a.m. (Prevailing Eastern Time)**, and the final hearing to consider the relief requested in the Application will be held on **November 5, 2008 at 10:00 a.m.**, or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that both the Interim Hearing and the Final Hearing will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Application shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck ("Chambers"), One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Andy Velez-Rivera, Paul

Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; (v) Cleary Gottlieb LLP, One Liberty Plaza, New York, NY 10006, Attn: Lindsee P. Granfield, Esq.  and Lisa Schweitzer, Esq. and Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, Attn:  Robinson B. Lacy, Esq. and Hydee R. Feldstein, Esq., attorneys for the Debtors' postpetition lenders; and (vi) Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, NY 10178, Attn: Steven J. Reisman, Esq., L.P. Harrison 3rd, Esq., and Jerold L. Bregman, so as to be received no later than **October 31, 2008, at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Application is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: October 8, 2008
     New York, New York

/s/ Shai Y. Waisman
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Interim Hearning Date and Time: October 16, 2008 at 10:00a.m. (prevailing Eastern time)
Final Hearing Date and Time:  November 5, 2008 at 10:00 a.m. (prevailing Eastern time)
Objection Date:  October 31, 2008 at 4:00 p.m. (prevailing Eastern time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

|  |  |  |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |
|  | : |  |

-----------------------------------------------------------------x

## DEBTORS' APPLICATION PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO EMPLOY AND RETAIN CURTIS, MALLET-PREVOST, COLT & MOSLE LLP AS CONFLICTS COUNSEL FOR THE DEBTORS, *NUNC PRO TUNC* TO THE DATE OF ITS ENGAGEMENT

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases (collectively, the "Chapter 11 Cases"), as debtors and debtors in

possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"),

apply to the Court (the "Application") for entry of Interim and Final[1] Orders, pursuant to

Sections 327(a) and 328(a) of Title 11 of the United States Code, as amended (the "Bankruptcy

Code"), and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), authorizing the Debtors' retention and employment of Curtis, Mallet-Prevost, Colt &

Mosle LLP ("CMP") as conflicts counsel, under a general retainer, for the Debtors, *nunc pro

tunc* to the date of its engagement by the Debtors (the "Engagement").  In support of this

Application, the Debtors submit the affidavit of Steven J. Reisman, a partner of CMP (the

"Reisman Affidavit"), attached hereto as **Exhibit B**, and respectfully state as follows:

### Jurisdiction

1.        The Court has subject matter jurisdiction over this matter pursuant to 28

U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2.        Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.        The statutory predicates for the relief requested herein are Sections 327(a)

and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a).

### Background

4.        Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its direct and indirect subsidiaries

commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The

Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly

administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their

---

[1] A proposed form of Interim Order is attached hereto as **Exhibit A**.

6

businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to Section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPA Trustee") is administering LBI's estate.

7.      Lehman was formerly the fourth largest investment bank in the United States.  For more than 150 years, Lehman was a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.  Lehman's headquarters in New York and regional headquarters in London and Tokyo were complemented by a network of offices in North America, Europe, the Middle East, Latin America, and the Asia Pacific region.

8.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the filing of these Chapter 11 Cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Relief Requested

9.      The Debtors seek Court approval, pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a), to employ and retain CMP as their conflicts counsel in connection with the Chapter 11 Cases, effective, *nunc pro tunc* to the date of

its Engagement, to handle matters that are not appropriately handled by Debtors' lead bankruptcy counsel, Weil, Gotshal & Manges, LLP ("Weil"), or other counsel to the Debtors, because of actual or potential conflict of interest issues or, alternatively, which the Debtors, Weil, or other counsel to the Debtors, request be handled by CMP.

10.    The Debtors have been informed that Steven J. Reisman and Lynn P. Harrison 3rd, members of CMP, as well as other members of, counsel to, and associates of CMP who will be employed in these Chapter 11 Cases, are members in good standing of the Bar of the State of New York and the United States District Court for the Southern District of New York among others courts.

11.    The Debtors have selected CMP as conflicts counsel because the retention of CMP will enhance the ability of Weil to represent the Debtors generally and assist them in carrying out their duties in the Chapter 11 Cases.  The Debtors believe that rather than resulting in any extra expense to the Debtors' estates, the retention of CMP as conflicts counsel will promote the effective and economical representation of the Debtors in these Chapter 11 Cases. Weil and CMP will coordinate their efforts and function cohesively to ensure that the legal services provided to the Debtors by each firm are not duplicative.  Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors request that the Court approve the retention of CMP, under a general retainer, as their conflicts counsel, to perform services that will be necessary during these cases in accordance with CMP's normal hourly rates and policies in effect when CMP renders the services or incurs the expenses.

12.    CMP has been involved in other significant chapter 11 cases where it served as conflicts counsel in this District.  CMP has found that the relationship works best when the debtors or their counsel promptly inform CMP of any matter where there is involvement of

another client of the relevant counsel's firm, even if the debtors' counsel are not adverse to that client.  It is anticipated that as soon as CMP is notified of a transaction, motion or litigation affecting a client of Weil, or such other counsel to the Debtors, where such counsel is adverse to their client, CMP will be responsible for advising the Debtors on such transaction, motion or litigation as it affects such other counsel's client.  This best serves the Debtors' fiduciary obligation to all creditors.  For those matters in which the Debtors' other counsel are clearly adverse to any client of such other counsel, CMP will be responsible for advising the Debtors.

13.     The employment of CMP under a general retainer is appropriate and necessary to enable the Debtors to faithfully execute their duties in the Chapter 11 Cases, and to implement the restructuring and/or reorganization of the Debtors.

## Scope of Services

14.     Subject to this Court's approval, CMP will render professional services to the Debtors for certain discrete matters, which may include, but are not limited to, the following matters where Weil or other counsel for the Debtors may not be able to act as a result of an actual or potential conflict of interest or where the Debtors, Weil, or other counsel to the Debtors, have requested that CMP:

(a)     advise the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their business and properties;

(b)     attend meetings and negotiate with representatives of creditors and other parties in interest;

(c)     take necessary action to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors and representing the Debtors' interests in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the estates;

(d)    prepare motions, applications, answers, orders, appeals, reports and papers necessary to the administration of the Debtors' estates;

(e)    take any necessary action on behalf of the Debtors to obtain approval of a disclosure statement and confirmation of one or more chapter 11 plans;

(f)    represent the Debtors in connection with obtaining postpetition financing;

(g)    advise the Debtors in connection with any potential sale of assets;

(h)    advise the Debtors on the rights of offset and the applicability of the "safe harbor" provisions from the automatic stay;

(i)    appear before the Court, any appellate courts and the United States Trustee, and protect the interests of the Debtors' estates before those Courts and the United States Trustee;

(j)    consult with the Debtors regarding tax matters; and

(k)    perform other necessary legal services and provide other necessary legal advice to the Debtors in connection with these cases, including (i) the analysis of the Debtors' leases and executory contracts and the assumption, rejection or assignment thereof, (ii) the analysis of the validity of liens against the Debtors, and (iii) advice on corporate, litigation, employment, intellectual property, governmental investigatory, regulatory and environmental matters.

15.    The Debtors seek to retain CMP as their conflicts counsel because CMP has extensive expertise, experience and knowledge in the field of debtors' and creditors' rights and business reorganization under chapter 11 of the Bankruptcy Code as well as other areas of the law where the Debtors may need legal advice.  CMP also possesses extensive experience in practicing before this Court and other bankruptcy courts throughout the United States.

16.    CMP has been actively involved in major bankruptcy cases throughout the United States, including some of the largest cases before this Court.  For example, CMP has been involved as conflicts/special counsel in In re Calpine Corporation, et al., Bankr. S.D.N.Y. Case No. 05-60200 (BRL), In re Parmalat Finanziaria S.p.A., et al., Case No. 04-14268 (RDD) (Bankr. S.D.N.Y. 2004), In re Silicon Graphics, Inc., et al., Bankr. S.D.N.Y. Case No. 06-10977

(BRL), <u>In re Musicland Holding Corp., et al.</u>, Bankr. S.D.N.Y. Case No. 06-10064 (SMB), <u>In re Northwest Airlines Corporation, et al.</u>, Bankr. S.D.N.Y. Case No. 05-17930 (ALG) and <u>In re Lodgian, Inc., et al.</u>, Bankr. S.D.N.Y. Case No. 01-16345 (BRL).

17.    The Debtors believe that CMP is both well-qualified and uniquely able to perform as conflicts counsel to the Debtors in the Chapter 11 Cases in an effective, efficient and timely manner.

**<u>Terms of Retention</u>**

18.    The Debtors understand that CMP intends to apply for compensation for professional services rendered in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York (the "<u>Local Rules</u>"), the guidelines established by the Office of the U.S. Trustee (the "<u>Guidelines</u>"), and further orders of this Court, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges that CMP incurs on the Debtors' behalf.

19.    Pursuant to Section 328(a) of the Bankruptcy Code, the Debtors may retain CMP on any reasonable terms and conditions.  The Debtors submit that the most reasonable terms and conditions are those on which CMP is retained by clients on a regular basis in a competitive market for legal services.  Therefore, the Debtors and CMP have agreed that CMP shall be paid its customary hourly rates for services rendered that are in effect from time to time, as set forth below and in the Reisman Affidavit, and shall be reimbursed according to CMP's customary reimbursement policies consistent with the Bankruptcy Code, Bankruptcy Rules, Local Rules, the Guidelines and such other procedures as may be fixed by order of this Court.  CMP's hourly rates are based on, among other things, the individual professional's level of expertise and experience.

20.    The current hourly rates charged by CMP for each of the above-referenced services to be provided on an hourly basis are, subject to change from time to time, $675 to $785 for partners, $525 to $595 for counsel, $290 to $575 for associates, $170 to $210 for paraprofessionals, $415 for managing clerks, and $55 to $325 for other support personnel.

21.    These hourly rates are subject to periodic adjustments to reflect economic and other conditions.  The rates set forth above are at a level designed to fairly compensate CMP for the work of its attorneys and paraprofessionals and to cover fixed and routine overhead expenses.  The hourly rates and corresponding rate structure to be utilized by CMP in these cases are equivalent to the hourly rate structure predominantly used by CMP for bankruptcy, restructuring, insolvency and comparable matters, and similarly complex corporate, securities and litigation matters whether in court or otherwise, regardless of whether a fee application is required.

22.    It is CMP's policy to charge its clients for all expenses incurred in connection with the client's account.  The expenses charged to clients include, among other things, telephone toll and other charges, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, expenses for "working meals," computerized research, messengers, couriers, postage and non-ordinary overhead expenses such as overtime for secretaries and others.  CMP will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to CMP's other clients but reduced and limited as necessary to comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, the Guidelines, and further orders of this Court.  CMP believes that it is more equitable to charge these expenses to the clients incurring such expenses, as opposed to increasing hourly rates and spreading the expenses among all clients.

23.     Subject to the Court's approval, and in accordance with Sections 328(a), 330(a) and 331 of the Bankruptcy Code, the applicable provisions of the Bankruptcy Rules and the Local Rules, the Guidelines and further orders of this Court, CMP intends to apply to the Court for payment of compensation and reimbursement of expenses.  CMP shall submit with its fee applications detailed daily time entries for each individual in one-tenth (.10) of an hour increments explaining the services provided, as well as a categorized summary of all disbursements and expenses for which CMP is seeking reimbursement.

24.     As of the Commencement Date, the Debtors do not owe CMP any amounts for legal services rendered before the Commencement Date.

### CMP's Disinterestedness

25.     To the best of the Debtors' knowledge, and except as disclosed in the Reisman Affidavit, CMP does not hold or represent any interests adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants.  CMP is a "disinterested person," as that phrase is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code, and CMP's employment is necessary and in the best interests of the Debtors and the Debtors' estates.  The Debtors have been informed that CMP will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, CMP will supplement its disclosure to the Court.

### Interim Relief Should Be Granted

26.     The Debtors seek approval of the Application on an interim basis in order to retain conflicts counsel as expeditiously as possible while providing parties in interest with an opportunity to object to the relief requested herein.

## Notice

27.      No trustee or examiner has been appointed in these Chapter 11 Cases,

except the SIPA Trustee who was appointed in LBI's case, as set forth above.  The Debtors have

served notice of this Application in accordance with the procedures set forth in the Order entered

on September 22, 2008 governing case management and administrative procedures for these

cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee;

(iii) the attorneys for the Debtors' postpetition lenders; (iv) the Securities and Exchange

Commission; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern

District of New York; (vii) the attorneys for the SIPA Trustee; and (viii) all parties who have

requested notice in these Chapter 11 Cases.  The Debtors submit that no other or further notice

need be provided.

## No Prior Request

28.      No prior application for the relief requested herein has been made to this

or any other court.

08-13555-mg    Doc 761    Filed 10/08/08    Entered 10/08/08 15:09:56    Main Document
Pg 15 of 41

WHEREFORE, the Debtors respectfully request entry of interim and final orders, the interim form of which is attached hereto as **Exhibit A**, (a) authorizing the Debtors to employ and retain CMP as their conflicts counsel, on a general retainer, effective, *nunc pro tunc* to the date of its Engagement and (b) granting such other further relief as is just and proper.

Dated:  October 8, 2008
        New York, New York

Lehman Brothers Holdings, Inc.
(for itself and on behalf of its affiliated
Debtors and Debtors in Possession)


By: /s/ Bryan Marsal
    Name:  Bryan Marsal
    Title:   Chief Restructuring Officer

## **EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                              :
In re                                         :    Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,      :    08-13555 (JMP)
                                              :
                          Debtors.            :    (Jointly Administered)
                                              :
------------------------------------------------------------------x

### INTERIM ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF CURTIS, MALLET-PREVOST, COLT & MOSLE LLP AS CONFLICTS COUNSEL FOR THE DEBTORS, *NUNC PRO TUNC* TO THE DATE OF ITS ENGAGEMENT

Upon the application, dated October 8, 2008 (the "Application"),[1] of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their

non-debtor affiliates, "Lehman"), pursuant to Sections 327(a) and 328(a) of the Bankruptcy

Code, and Rule 2014(a) of the Bankruptcy Rules, for entry of an order authorizing the Debtors to

employ and retain Curtis, Mallet-Prevost, Colt & Mosle LLP ("CMP") as their conflicts counsel,

under a general retainer, *nunc pro tunc* to the date of its Engagement, all as more fully described

in the Application; and upon consideration of the affidavit of Steven J. Reisman, a partner of

CMP (the "Reisman Affidavit"), and the Court having jurisdiction to consider the Application

and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing

Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Application having been provided in accordance with the

procedures set forth in the Order entered September 22, 2008 governing case management and

administrative procedures [Docket No. 285] to (i) the United States Trustee for the Southern

District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii)

the attorneys for the Debtors' postpetition lenders; (iv) the Securities and Exchange Commission;

(v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of

New York; (vii) the attorneys for the SIPA Trustee; and (viii) all parties who have requested

notice in these Chapter 11 Cases, and it appearing that no other or further notice need be

provided; and a hearing (the "Hearing") having been held to consider the relief requested in the

Application; and upon the Court being satisfied based on the representations made in the

Application and the Reisman Affidavit that the partners, counsel and associates of CMP who will

be in engaged in the Chapter 11 Cases represent no interest adverse to the Debtors' estates with

respect to the matters upon which it is to be engaged; that they are disinterested persons as that

term is defined under Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b)

of the Bankruptcy Code; and the Court having found and determined that the relief sought in the

Application is in the best interests of the Debtors, their estates and creditors, and all parties in

interest and that the legal and factual bases set forth in the Application establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

hereby ORDERED:

    1.      The Application is approved on an interim basis.

    2.      Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors are

authorized to employ and retain CMP as their conflicts counsel, under a general retainer, on the

terms set forth in the Application and the Reisman Affidavit, in accordance with CMP's normal hourly rates and disbursement policies, effective, *nunc pro tunc* to September 26, 2008, the date of CMP's Engagement.

3.      CMP will render professional services to the Debtors for certain discrete matters, which may include, but are not limited to, the following matters where Weil or other counsel for the Debtors, may not be able to act as a result of an actual or potential conflict of interest or where the Debtors, Weil, or other counsel to the Debtors, have requested that CMP:

(a)      advise the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their business and properties;

(b)      attend meetings and negotiate with representatives of creditors and other parties in interest;

(c)      take necessary action to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors and representing the Debtors' interests in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the estates;

(d)      prepare motions, applications, answers, orders, appeals, reports and papers necessary to the administration of the Debtors' estates;

(e)      take any necessary action on behalf of the Debtors to obtain approval of a disclosure statement and confirmation of one or more chapter 11 plans;

(f)      represent the Debtors in connection with obtaining postpetition financing;

(g)      advise the Debtors in connection with any potential sale of assets;

(h)      advise the Debtors on the rights of offset and the applicability of the "safe harbor" provisions from the automatic stay;

(i)      appear before the Court, any appellate courts and the United States Trustee, and protect the interests of the Debtors' estates before those Courts and the United States Trustee;

(j)      consult with the Debtors regarding tax matters; and

       (k)      perform other necessary legal services and provide other necessary legal advice to the Debtors in connection with these cases, including (i) the analysis of the Debtors' leases and executory contracts and the assumption, rejection or assignment thereof, (ii) the analysis of the validity of liens against the Debtors, and (iii) advice on corporate, litigation, employment, intellectual property, governmental investigatory, regulatory and environmental matters.

4.      CMP shall be compensated in accordance with the procedures set forth in Sections 330(a) and 331 of the Bankruptcy Code, the applicable provisions of the Bankruptcy Rules and the Local Rules, the Guidelines and such other procedures as may be fixed by order of this Court.

5.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application and the terms of any engagement letter executed by the Debtors and CMP consistent with this Order as approved by the Court.

6.      The final hearing to consider entry of an order granting the relief requested in the Application on a permanent basis shall be held on November 5, 2008 at 10:00 a.m. (prevailing Eastern Time); and any objections to entry of such order shall be in writing, filed with the Court in accordance with General Order M-242, and served upon (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys

for the official committee of unsecured creditors appointed in these cases; and (v) Cleary

Gottlieb LLP, One Liberty Plaza, New York, NY 10006, Attn: Lindsee P. Granfield, Esq., and

Lisa Schweitzer, Esq. and Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004,

Attn:  Robinson B. Lacy, Esq. and Hydee R. Feldstein, Esq., attorneys for the Debtors'

postpetition lenders, so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on

October 31, 2008.

7.    The Debtors shall serve this Order within three business days of its entry on

(i) the U.S. Trustee, (ii) the attorneys for the Creditors' Committee, (iii) the attorneys for the

Debtors' postpetition lenders, (iv) the Securities and Exchange Commission, (v) the Internal

Revenue Service, (vi) the United States Attorney for the Southern District of New York, and

(vii) all parties who have requested notice in these chapter 11 cases.

8.    The Court retains jurisdiction with respect to all matters arising from, or related

to, the interpretation and implementation of this Order.

9.    Notice of the Application as provided herein shall be deemed good and sufficient

notice of the Application.

Dated: New York, New York

_____, 2008

_____

UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT B</u>**

**CURTIS, MALLET-PREVOST,**
**COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman (SR 4906)
L. P. Harrison 3rd (LH 5540)
Jerrold L. Bregman (JB 0784)

Proposed Conflicts Counsel for the
Debtors and Debtors In Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                      :
In re                                                 :        **Chapter 11 Case No.**
                                                      :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :        **08-13555 (JMP)**
                                                      :
                                   Debtors.            :        **(Jointly Administered)**
                                                      :
------------------------------------------------------------------x

**AFFIDAVIT OF STEVEN J. REISMAN PURSUANT TO**
**BANKRUPTCY CODE SECTIONS 327, 328(a), 329 AND 504 AND FEDERAL**
**RULES OF BANKRUPTCY PROCEDURE 2014(a) AND 2016(b) IN SUPPORT OF**
**DEBTORS' APPLICATION FOR AUTHORIZATION TO EMPLOY AND RETAIN**
**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP AS CONFLICTS COUNSEL**
**FOR THE DEBTORS,** *NUNC PRO TUNC*  **TO THE DATE OF ITS ENGAGEMENT**

STATE OF NEW YORK      )
                                        ) ss:
COUNTY OF NEW YORK   )

        I, Steven J. Reisman, being duly sworn, deposes and says:

        1.        I am an attorney duly admitted to practice before this Court.  I am a Member of

the firm of Curtis, Mallet-Prevost, Colt & Mosle LLP ("CMP" or the "Firm").  CMP is a multi-

national law firm with principal offices located at 101 Park Avenue, New York, New York

10178-0061.  CMP maintains regional offices in Washington, D.C.; Stamford, Connecticut;

Houston, Texas; Paris, France; London, England; Frankfurt, Germany; Milan, Italy; Mexico City, Mexico; Muscat, Sultanate of Oman; Istanbul, Turkey; Almaty, Kazakhstan; and Astana, Kazakhstan.

2.      I submit this affidavit (the "Affidavit") in support of the application (the "Application")[1] of the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned Chapter 11 cases (collectively, the "Chapter 11 Cases"), pursuant to Sections 327, 328(a), 329 and 504 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"), for entry of an order authorizing the employment and retention of CMP as conflicts counsel for the Debtors in the Chapter 11 Cases at CMP's normal hourly rates in effect from time to time, and in accordance with their normal reimbursement policies, and to provide the disclosures required under Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.      To the best of my knowledge, after due inquiry, and except as set forth herein, neither I, CMP, nor any member of, counsel to or associate of the Firm represents any creditor, party in interest or entities other than the Debtors in connection with the Chapter 11 Cases.

4.      CMP is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code, in that CMP and its members, counsel and associates:

   (a)    are not creditors, equity security holders, or insiders of the Debtors;

   (b)    are not and were not, within two years before the Commencement Date, a director, officer or employee of the Debtors;

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

(c)     do not have an interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason; and

(d)     have not represented any party in connection with the Chapter 11 Cases, except as set forth herein, although CMP has certain relationships with other parties in interest, and other professionals involved in the Chapter 11 Cases in connection with matters wholly unrelated to the Debtors.

5.      Certain interrelationships exist among the Debtors and among the Debtors and their non-debtor affiliates. The Debtors have advised CMP that the relationships among the Debtors and among their non-debtor affiliates do not pose any conflict of interest because of the general unity of interest among the Debtors and their non-debtor affiliates. Insofar as I have been able to ascertain, I know of no conflict of interest that would preclude CMP's representation of the Debtors in these cases, and, as necessary, the non-debtor affiliates in matters relating to these Chapter 11 Cases.

## CMP'S PREPETITION RELATIONSHIP WITH THE DEBTORS

6.      Subsequent to the Commencement Date, the Debtors retained CMP to represent and advise them to handle matters that are not appropriately handled by Debtors' lead bankruptcy counsel, Weil, Gotshal & Manges, LLP ("Weil"), or other counsel to the Debtors, because of actual or potential conflict of interest issues or, alternatively, which the Debtors, Weil, or other counsel to the Debtors, request be handled by CMP.

7.      CMP is not a creditor of the Debtors. CMP did not receive a retainer from the Debtors prior the Commencement Date.

## CONNECTIONS WITH CREDITORS OF THE
## DEBTORS AND OTHER INTERESTED PARTIES

8.      In preparing this affidavit, I have been provided with, and have examined, the list provided by the Debtors of: (i) the Debtors' 50 largest bondholders; (ii) the Debtors' 100 largest

unsecured creditors other than bondholders; (iii) the Debtors' bank lenders; (iv) the Debtors' significant lessors and lessees; (v) the Debtors' secured creditors; (vi) certain government and state regulatory agencies; (vii) members of the *ad hoc* or unofficial creditors' committees formed prior to the Commencement Date, to the extent known at the Commencement Date; (viii) the Debtors' significant stockholders; (ix) the Debtors' current and former directors and officers during the past three years; (x) the underwriting investment bankers for the Debtors' securities for all securities issued or outstanding on the Commencement Date or during the three years prior to the Commencement Date; (xi) the Debtors' accountants employed or retained during the two years prior to the Commencement Date; (xii) certain entities related to the Debtors; (xiii) former Lehman Brothers Holdings Inc. entities; (xiv) certain other potential parties in interest; (xv) affiliations of outside directors; (xvi) professionals employed by the Debtors; (xvii) litigation and non-litigation claimants; (xviii) the 100 largest holders of the Debtors' trade debt; (xix) professionals retained by significant creditor groups in these Chapter 11 Cases; (xx) the Debtors' utilities providers; (xxi) the Debtors' competitors; (xxii) the Debtors' strategic partners; and (xxiii) members of the official committee of unsecured creditors (collectively, the "Searched Parties").

### CMP'S DISCLOSURE PROCEDURES

9.     CMP employs over 250 attorneys worldwide and presently represents, and may in the future represent, entities that are claimants of, or interest holders in, the Debtors in matters unrelated to the Chapter 11 Cases.  Some of these entities are, or may consider themselves to be, creditors or parties in interest in the Chapter 11 Cases although the Debtors are unaware of such claims or interests.

10.     In that regard, I used a set of procedures developed by CMP to comply with the requirements of the Bankruptcy Code and the Bankruptcy Rules and the Local Rules regarding the retention of professionals by a debtor under the Bankruptcy Code (the "CMP Disclosure Procedures").  Pursuant to the CMP Disclosure Procedures, I caused a search to be performed of CMP's computerized database consisting of all client, matter, cross-referenced and related information from 1980 to present.

11.     To the best of my knowledge after my review of the Firm's records, with one limited exception described in **Exhibit 2**, CMP has no connections with the Searched Parties with respect to the Chapter 11 Cases.  CMP does have connections with certain Searched Parties in matters unrelated to these Chapter 11 Cases as described below.

## CMP'S CONNECTIONS WITH PARTIES IN INTEREST
## IN MATTERS UNRELATED TO THESE CHAPTER 11 CASES

12.     After diligent efforts, CMP has identified the client connections disclosed below. The connections are categorized as follows:

>    (a)     clients for which CMP has rendered services in the prior two (2) years and is presently rendering services ("Current Clients");

>    (b)     clients for which CMP has rendered services in the prior two (2) years and which engagement was closed within the prior two (2) years ("Former Clients");

>    (c)     entities that are related to, or may be related to, a current client for which CMP has rendered services in the prior two (2) years and is presently rendering services; and

>    (d)     entities that are related to, or may be related to, a former client for which CMP has rendered services in the prior two (2) years and which engagement was closed within the prior two (2) years.

13.     All client connections were diligently reviewed by an attorney working under my supervision.

14.     From such review, I determined that, with respect to each connection between CMP and such parties, CMP does not hold or represent an interest that is adverse to the Debtors' estates, and CMP is a "disinterested person" as such term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code, for the reasons discussed below.

**Current Clients – Exhibit 1**

15.     CMP has currently rendered services and may, in the future, render services to the Current Clients set forth on **Exhibit 1** hereto and their respective affiliates in matters unrelated to the Debtors.

16.     To the best of my knowledge and information, the annual fees paid to CMP by any of the Current Clients and their respective affiliates for either of the last two calendar years did not exceed 1% (one percent) of the annual gross revenue of CMP for such year.

17.     CMP has not, does not and will not represent any of the Current Clients or their respective affiliates in the Chapter 11 Cases or in other matters adverse to the Debtors during the pendency of these Chapter 11 Cases.

**Former Clients – Exhibit 2**

18.     CMP has rendered services to the following Former Clients set forth on **Exhibit 2** hereto, within the prior two (2) years and CMP's engagement was formally concluded within such period.  CMP may, however, in the future, render services to the Former Clients or their affiliates or subsidiaries in matters unrelated to the Debtors and the Chapter 11 Cases.  If any Former Client becomes a Current Client during the pendency of these Chapter 11 Cases, CMP will make the appropriate supplemental disclosures to the Court.

**Entities That Are Related or May Be Related to Current Clients – Exhibit 3**

19.    In addition, the entities set forth on **Exhibit 3** hereto either (i) have a name similar to a client in the client database, or (ii) are or may be related to a current client (collectively, the "Potential Clients").  In certain instances, after a diligent effort, CMP was unable to determine whether the similarity of names was, in fact, a coincidence or whether, and to what extent, the Potential Clients are related to a current client.  However, out of an abundance of caution, CMP has confirmed that, similar to the Current Clients and Former Clients identified above, CMP does not represent any of the Potential Clients set forth on **Exhibit 3** in matters related to the Chapter 11 Cases.

**Entities That Are Related or May Be Related to Former Clients – Exhibit 4**

20.    Similarly, the entities set forth on **Exhibit 4** hereto either (i) have a name similar to a former client in the client database, or (ii) are or may be related to a former client. After a diligent effort, CMP was unable to determine whether the similarity of names was, in fact, a coincidence or whether, and to what extent, such entity is related to a former client in the client database.  However, out of an abundance of caution, CMP has confirmed that, similar to the Current Clients, Former Clients, and Potential Clients identified above, CMP does not represent any of the entities set forth on **Exhibit 4** in matters related to the Chapter 11 Cases.

21.    To the best of my knowledge, neither I, CMP, nor any member or associate of CMP, insofar as I have been able to ascertain, has in the past represented the Searched Parties or any other party in interest in the Chapter 11 Cases in any matter that would conflict with CMP's duties in the Chapter 11 Cases or create any interest adverse to the interests of the Debtors in respect of the matters on which CMP is to be employed in these Chapter 11 Cases.

22.    As the record in these proceedings reflects, these Chapter 11 Cases are by far the largest reorganization cases commenced in the history of the Bankruptcy Code.  Formally one of

the largest investment banks in the United States, the Debtors have a myriad of creditors and commercial relationships throughout the world.  As additional information concerning the Debtors' creditors and relationships that have material connections with the Debtors develops, CMP will continue to apply the CMP Disclosure Procedures and will file appropriate supplemental disclosures with the Court.  To the best of my knowledge, CMP has not represented and will not represent any parties other than the Debtors in these cases or in connection with any matters that would be adverse to the Debtors related to these cases in respect of the matters on which CMP is to be employed in these Chapter 11 Cases.

## CONNECTIONS WITH PROFESSIONALS

23.      As part of its practice, CMP regularly appears in cases, proceedings, and transactions involving many different attorneys, accountants, financial consultants, real estate consultants, and investment bankers including other professionals representing the Debtors or other parties in interest in the Chapter 11 Cases.  CMP may have worked with or presently works with the professionals involved or to be retained in the Chapter 11 Cases, on cases, proceedings or transactions in matters unrelated to the Debtors.  From time to time, CMP has referred work to other professionals involved or to be retained in these Chapter 11 Cases.  Likewise, certain such professionals have referred work to CMP.  In certain instances, such professionals may be clients of CMP.  In addition, CMP has in the past represented and currently appears in matters in which CMP represents the same entity, a related entity, or an adverse entity to those represented by other professionals in this case.

24.      CMP has not and will not represent any such entities in relation to the Debtors in these Chapter 11 Cases and CMP does not have any relationship with such entities that would be adverse to the Debtors or its estates in the matters upon which CMP is to be employed in these Chapter 11 Cases.

## CONNECTIONS WITH US TRUSTEE AND THIS COURT

25.     Insofar as I have been able to ascertain, CMP has no connection with the United States Trustee in this Judicial Circuit or any person known to be employed by the Office of the United States Trustee in this Judicial Circuit (other than CMP formerly employing Greg Zipes in 1998 through 1999 immediately prior to his joining the Office of the United States Trustee), except as set forth in this Affidavit.[2]

26.     I am not related, and to the best of my knowledge, no attorney at the Firm is related, to any United States Bankruptcy Judge in this District or to the United States Trustee for this District, or any employee thereof.

## CMP RATES AND BILLING PRACTICES

27.     All compensation for services rendered by CMP and reimbursement of expenses incurred by CMP in these cases shall be subject to the approval of this Court, and CMP shall seek this Court's approval for the payment of such compensation pursuant to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable orders of this Court.

28.     Subject to such provisions and orders, compensation will be payable to CMP on an hourly basis at its customary hourly rates for professional services rendered that are in effect from time to time, plus reimbursement of actual, necessary expenses incurred by CMP.  CMP's hourly rates for its New York office, subject to periodic firm-wide adjustment in the ordinary course of CMP's practice, which generally become effective September 1st of each year, are

---

[2]  Jerrold L. Bregman, counsel at CMP, and Andrew D. Velez-Rivera, of the U.S. Trustee's office, previously worked together first as Summer Associates and then as Associates at the law firm of Sidley & Austin from approximately 1990 until 1994, and in or about 1995, Mr. Velez-Rivera, on a contract basis, prepared a fee application on behalf of Mr. Bregman's former law firm in connection with a Chapter 11 case.  Messrs. Bregman and Velez-Rivera are professional acquaintances; they have not communicated regarding this case to date.

$675 to $785 for partners, $525 to $595 for counsel, $290 to $575 for associates, $170 to $210 for paraprofessionals, $415 for managing clerks and $55 to $325 for other support personnel.

29.    In connection with the reimbursement of actual, necessary expenses, it is CMP's policy to charge its clients in all areas of practice for expenses incurred in connection with the client's cases.  The expenses charged to CMP's clients include, among other things, telephone and telecopier toll and other charges, U.S. mail and overnight mail charges, special or hand delivery charges, document word processing charges, photocopying charges, travel expenses, expenses for "working meals," computerized research, transcription costs, court filing fees, as well as non-ordinary overhead expenses such as secretarial and other overtime directly attributable to the representation of a particular client.

30.    CMP believes it is more fair and equitable to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.  CMP will charge the Debtors for these expenses in a manner and at rates consistent with charges made to CMP's other clients and as allowed by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and by orders of this Court.

31.    The Debtors' Application requests, pursuant to section 328(a) of the Bankruptcy Code, approval of the retention of CMP on rates, terms and conditions consistent with what CMP charges non-chapter 11 debtors, namely, prompt payment of its hourly rates as adjusted from time to time and reimbursement of out-of-pocket disbursements at cost or based on formulae that approximate the actual cost where the actual cost is not easily ascertainable.  Subject to these terms and conditions, CMP intends to apply pursuant to section 330 of the Bankruptcy Code for allowances of compensation for professional services rendered in these Chapter 11 Cases and for reimbursement of actual and necessary expenses incurred in connection therewith.

## CMP IS DISINTERESTED

32.     CMP is an "disinterested person" as such term is defined in Section 101(14), as modified by Section 1107(b) of the Bankruptcy Code, and, except as stated herein, does not hold any interest adverse to the Debtors, its estate or the Debtors' creditors or equity holders.  Thus, I know of no reason why CMP cannot properly act as conflicts counsel to the Debtors pursuant to the Application.

33.     The Debtors have applied to retain Weil as their lead bankruptcy counsel under a general retainer in these Chapter 11 Cases.  Nonetheless, I understand the Debtors believe conflicts counsel is required because the Debtors may encounter matters which are not appropriately handled by Weil or other counsel for the Debtors due to actual or potential conflict of interest issues or which the Debtors, Weil, or other counsel to the Debtors, believe should be handled by CMP.  I believe the retention of CMP as conflicts counsel will avoid unnecessary litigation and reduce the overall expense of administering these Chapter 11 Cases.  Thus, the Debtors seek to engage CMP as conflicts counsel, on a general retainer.

34.     Weil and CMP will carefully coordinate their efforts and clearly delineate their duties to prevent any duplication of effort.  I concur with the Debtors' belief that, rather than resulting in any extra expense to the Debtors' estates, the efficient coordination of efforts of counsel will greatly add to the effective and efficient administration of these Chapter 11 Cases and will result in overall lower costs to the Debtors' estates.

## CMP PERSONNEL INQUIRY

35.     As set forth above, CMP has over 250 attorneys and many other employees.  It is possible that certain CMP attorneys or employees hold interests in mutual funds or other investment vehicles that own the Debtors' securities.  No CMP partner has filed a Schedule 13G or Schedule 13D with the Securities and Exchange Commission with respect to the Debtors.  An

e-mail was sent to all of CMP's employees inquiring as to whether any CMP employee or any member of their immediate family owned any debt or equity security of the Debtors or their affiliates or is (or was) an officer, director or employee of the Debtors or their affiliates in the past two years.  As of now, the responses I have received, as set forth on **Exhibit 5**, indicate that several employees of CMP own minor debt and/or equity interests in the Debtors.  It is possible that additional CMP attorneys or employees own small amounts of the Debtors' securities.

36.    CMP will continue to apply the CMP Disclosure Procedures as additional information concerning entities having a connection with the Debtors is developed and will file appropriate supplemental disclosure with the Court.

37.    No promises have been received by CMP or any member, counsel or associate thereof as to compensation in connection with these Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of this Court.

38.    CMP further states that pursuant to Bankruptcy Rule 2016(b), it has not shared nor agreed to share (a) any compensation it has received or may receive in connection with the services rendered in these Chapter 11 Cases with another party or person, other than with the partners, counsel, associates and contract attorneys associated with CMP or (b) any compensation another person or party has received or may receive.

39.    I am one of two partners at CMP who will be primarily responsible for the representation of the Debtors as conflicts counsel in these cases.  I have read, and am generally familiar with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules.

40.    The foregoing constitutes the statement of CMP pursuant to Sections 327(a),

328(a) and 504 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016(b).

41.    I certify that the foregoing statements are true and correct to the best of my

knowledge, information and belief.


Dated: New York, New York
        October 8, 2008

                     /s/ Steven J. Reisman
                          Steven J. Reisman
                          A Member of the Firm


SWORN TO AND SUBSCRIBED
before me this 8th day of October, 2008


/s/ Beth Foreman
             Notary Public

           BETH FORMAN
    Notary Public, State of New York
        NO. 01FO6095302
     Qualified in New York County
    Commission Expires July 7, 2011

## INDEX OF EXHIBITS TO AFFIDAVIT OF STEVEN J. REISMAN

| | |
|---|---|
| EXHIBIT 1 | CURRENT CLIENTS OF CMP |
| EXHIBIT 2 | FORMER CLIENTS OF CMP |
| EXHIBIT 3 | ENTITIES THAT ARE RELATED OR MAY BE RELATED TO CURRENT CLIENTS OF CMP |
| EXHIBIT 4 | ENTITIES THAT ARE RELATED OR MAY BE RELATED TO FORMER CLIENTS OF CMP |
| EXHIBIT 5 | CMP PERSONNEL AND THEIR CONNECTION TO THE DEBTORS OR THE DEBTORS' AFFILIATES |

## EXHIBIT 1

### CURRENT CLIENTS OF CMP[1]

| Name of Entity Searched | Relationship to Debtors | Relationship to CMP |
|---|---|---|
| JPMorgan Chase Bank, N.A.[2] | Secured Creditor Bank Lender | Current Client in matters unrelated to Debtors |
| Merrill Lynch | Underwriting Investment Bankers | Current Client in matters unrelated to Debtors |
| PricewaterhouseCoopers | Accountant | Current Client in matters unrelated to Debtors |
| Royal Bank of Scotland, Plc | Bank Lender | Current Client in matters unrelated to Debtors |

---

[1] Several of the Current Clients have either executed a waiver letter or indicated that they will execute a waiver allowing CMP to act adversely to their interests on all matters unrelated to the matter(s) on which we are acting for them. CMP does not act for any Current Clients on any matter related to the Debtors. In addition, CMP has represented two overseas clients in evaluating claims that may be made against such clients by non-Lehman entities related to Lehman's insolvency proceedings. CMP has not and will not represent Lehman in matters related to such clients.

[2] JPMorgan Chase Bank, N.A. is a Current Client on limited matters unrelated to the Debtors (the "Limited Matters"). At the time of its engagement, CMP obtained an advanced waiver from JPMorgan Chase Bank, N.A. that allows CMP to act adverse to JPMorgan Chase Bank, N.A. so long as any adverse matter is not substantially related to the Limited Matters.

## EXHIBIT 2

### FORMER CLIENTS OF CMP

| Name of Entity Searched | Relationship to Debtors | Relationship to CMP |
|---|---|---|
| HSBC Bank | Unsecured Creditor | Former Client in matters unrelated to the Debtors |
| HSBC Securities (USA) Inc. | Competitor | |
| Lloyds Bank | Unsecured Creditor | Former Client in matters unrelated to Debtors |
| New York Stock Exchange[1] | Government and State Regulatory | Former Client in matter related to the Debtors |
| Wilmington Trust Company | Bank Lender | Former Client in matters unrelated to Debtors |

---

[1] As a one-time courtesy, CMP represented NYSE Euronext, Inc. and its affiliates (collectively, "NYSE") in these cases for the sole purpose of protecting NYSE's cure claim with respect to contracts assigned to Barclays Capital, Inc. in connection with the sale of Lehman's broker-dealer business and real estate.  CMP obtained a waiver from NYSE that allows it to act adverse to NYSE on any engagement related to these cases or otherwise.  CMP no longer represents the NYSE in this matter.

## EXHIBIT 3

### ENTITIES THAT ARE RELATED OR MAY BE
### RELATED TO CURRENT CLIENTS OF CMP

| Name of Entity Searched | Relationship to Debtors | Relationship to CMP |
|---|---|---|
| AIG Global Investment Corporation | Potential Party in Interest | Affiliate of current client in matters unrelated to Debtors |
| BNP Paribas | Unsecured Creditor | Affiliate of current client in matters unrelated to Debtors |
| BNP Paribas Securities Corp. | Competitor | |
| Deloitte & Touche USA LLP[1] | Accountant | Affiliate of current client in matters unrelated to Debtors |
| Deutsche Bank Securities, Inc. | Competitor Significant Lessor/Lessee | Affiliate of current client in matters unrelated to Debtors |
| ING Bank, FSB | Potential Party in Interest | Affiliate of current client in matters unrelated to Debtors |
| ING Investment LLC | Bond Holder | |
| Merrill Lynch Governmental Securities Inc. | Competitor | Affiliate of current client in matters unrelated to Debtors |
| NATIXIS Asset Management Advisors | Bond Holder | Affiliate of current client in matters unrelated to Debtors |
| The Bank of NY Mellon | Bank Lender | Affiliate of current client in matters unrelated to Debtors |
| UBS Financial Services | Potential Party In Interest | Affiliate of current client in matters unrelated to Debtors |
| UBS Financial Services of Puerto Rico | Potential Party In Interest | |
| UBS International Inc. | Potential Party In Interest | |
| UBS Investment Bank | Underwriting Investment Banker | |
| UBS Investment KAG | Bond Holder | |
| UBS International Inc. | Potential Party In Interest | |
| UBS Securities LLC | Competitor | |

---

[1] CMP is currently representing a partner of Deloitte & Touche USA LLP in a matter unrelated to the Debtors and is being compensated by Deloitte & Touche USA LLP.

## EXHIBIT 4

### ENTITIES THAT ARE RELATED OR MAY BE
### RELATED TO FORMER CLIENTS OF CMP

| Name of Entity Searched | Relationship to Debtors | Relationship to CMP |
|---|---|---|
| Bank of America Plaza STE 3500 | Unsecured Creditor | Affiliate of former client in matters unrelated to Debtors |
| Bank of America Securities LLC | Competitor | |
| Hewlett Packard AP (HONG KONG) LIMITED | Trade Debt | Affiliate of former client in matters unrelated to Debtors |
| Hewlett Packard Company | Unsecured Creditor | |
| NYSE Market, Inc. | Unsecured Creditor | Affiliate of former client in matters related to Debtors |

**EXHIBIT 5**

**CMP PERSONNEL AND THEIR CONNECTION TO THE DEBTORS
OR THE DEBTORS' AFFILIATES**

| Name | Position | Connection to the Debtors or the Debtors' Affiliates |
|---|---|---|
| Antoinette N. Ceisler | Special Counsel | Husband is currently employed as a Managing Director at an affiliate of the Debtors and owns approximately 1500 shares of Lehman common stock. |
| Stanley Horowitz | Employee Benefits Consultant | Owns approximately 200 shares of Lehman common stock. |
| Townsend J. Knight | Counsel | Wife has money management accounts with an affiliate of the Debtors.  An affiliate of the Debtors invests in trusts in which Mr. Knight is the trustee. |
| Turner P. Smith | Partner | Owns 33 shares of LBHI's common stock. |
| Herbert Stoller | Counsel | Has money management accounts with an affiliate of the Debtors. |
| Dora Straus | Associate | Husband owns approximately 35 shares of Lehman's common stock. |
| Yuriy Teyf | Marketing Applications Developer | Owns 109 shares of LBHI's common stock. Wife is currently employed as a Risk Control Associate at LBI and owns 41 shares of LBHI's common stock. |
| Rodrigo Valverde | Partner | Owns bonds issued by LBHI in the principal face amount of $200,000 due in 2011 through a joint account with his father and brother. |
| Martin Wendel | Partner | Son and daughter-in-law own a de minimis number of shares of common stock in Lehman.  Son was formally the Vice President of Credit Sales at an affiliate of the Debtors and daughter-in-law was formally an employee in the Charitable Giving Group at an affiliate of the Debtors. |
| H. Michael Zografakis | Associate | Owns 100 shares of LBHI's common stock. |