Dennis F. Dunne
Luc A. Despins
Wilbur F. Foster, Jr.
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone:  (212) 530-5000

-and-

Paul Aronzon
Gregory A. Bray
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone:  (213) 892-4000

Proposed Counsel for Official
Committee of Unsecured Creditors
of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : | 08-13555 (JMP) |
| Debtors. | : | (Jointly Administered) |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO JOINT MOTION OF THE DEBTORS AND BARCLAYS CAPITAL INC. FOR ENTRY OF AN ORDER AUTHORIZING TO FILE UNDER SEAL CERTAIN SCHEDULES TO THE ASSET PURCHASE AGREEMENT**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases (the "Chapter 11 Cases") of Lehman Brothers Holdings Inc. and its affiliated debtors (other than Lehman Brothers Inc.) (collectively, the "Debtors") hereby files this limited objection (the "Objection") to the Joint Motion of the Debtors and Barclays Capital Inc. ("Barclays", and together with the Debtors, the "Movants") For Entry of

An Order Authorizing To File Under Seal Certain Schedules To the Asset Purchase Agreement, dated September 29, 2008 (Docket No. 430, the "Motion"), and respectfully states as follows:

## BACKGROUND

1. On September 15, 2008 and periodically thereafter (the "Petition Date"), the Debtors commenced the Chapter 11 Cases. The Debtors have been authorized to operate their businesses and manage their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Committee. No trustee or examiner been appointed in the Chapter 11 Cases.

2. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPA Trustee") is administering LBI's estate.

3. On September 16, 2008, the Debtors, LBI, and Barclays entered into an Asset Purchase Agreement (as amended and clarified, the "Purchase Agreement") for the purchase and sale of LBI's assets, three real properties including Lehman's headquarters, and two data centers. On September 20, 2008, the Court entered an order (Docket No. 258, the "Sale Order")[1] approving the Purchase Agreement and various transactions contemplated therein, and entered a concurrent order approving the Purchase Agreement with respect to LBI in the SIPA proceeding.

4. On September 22, 2008, the Debtors filed a Notice of Filing of Purchase Agreement Approved By Order Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory

---

[1] Capitalized terms not otherwise defined in this Objection shall have the meanings ascribed to them in the Sale Order and Purchase Agreement.

Contracts and Unexpired Leases (Docket No. 380, the "Notice").  Attached as Exhibit C to the Notice is a clarifying letter agreement, dated as of September 20, 2008 (the "Clarifying Letter"), which purports to clarify, supplement, and amended the Purchase Agreement.  Section 1(a)(ii) of the Clarifying Letter provides that the Purchased Assets shall include: (i) securities owned by LBI and transferred to Purchaser or Affiliates under the Barclays Repurchase Agreement, as specified on Schedule A delivered to Barclays ("Schedule A"), and (ii) securities and other assets held in LBI's "clearance boxes" at the time of the Closing as specified on Schedule B delivered to Barclays ("Schedule B," and together with Schedule A, the "Schedules").

5. On September 29, 2008, the Debtors and Barclays filed the Motion, seeking to file the Schedules under seal.

**LIMITED OBJECTION**

6. The Motion raises two potentially competing interests: (i) the judicial principle and presumption favoring public access and disclosure; and (ii) the rights of individual parties in interest to protect confidential commercial information.  The "preference for public access is rooted in the public's first amendment right to know about the administration of justice.  It helps safeguard the integrity, quality, and respect in our judicial system, and permits the public to keep a watchful eye on the workings of public agencies."  Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.), 21 F.3d 24, 26 (2d Cir. 1994) (citations omitted).  "This policy of open inspection, codified generally in § 107(a) of the Bankruptcy Code, evidences congress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings."  Id.  Indeed, this Court has commented, at prior hearings, on the need for greater transparency.

7. It is possible that Barclays could meet its burden of showing that the level

of detail in the Schedules contains confidential commercial information. Barclays may, thus, be entirely within its right to so contend and to seek the maximum available protection for such information. This, however, is not the end of story: as the Court recently acknowledged, chapter 11 cases generally, and the Debtors' Chapter 11 Cases in particular, require transparency as to any transactions proposed by the Debtors and approved by the Bankruptcy Court.

8. Numerous creditors and parties in interest have expressed frustration at the level of disclosure to date. The sealing of the Schedules will only further exacerbate this concern. This problem should -- the Committee respectfully submits -- be addressed by requiring the Debtors, with the consent of Barclays, to disclose a substantial and meaningful amount of information about the contents of the Schedules in order to enable creditors to determine precisely what assets have been sold and transferred to Barclays and what assets have not been transferred.

9. For example, the Debtors could be directed to prepare and file on the docket a document that summarizes the different types of securities and other assets sold to Barclays.[2] The foregoing solution (or any comparable solution adopted by the Court) would both provide a level of detail about the assets sold to Barclays that is more in line with that expected in the ordinary section 363 sale context while protecting Barclays from unwarranted disclosure of any proprietary trading positions, if they can show that the information in the Schedules constitutes protected information under section 107(b) of the Bankruptcy Code.

---

[2] Confronted with a similar conflict between the need for public disclosure and safeguarding proprietary trading position information, the court in the Refco case similarly directed the debtors to make publicly available "a listing of the aggregate market values of the assets held by or on behalf of [the debtor] as of a specified date. . . in each of the following categories." Order Staying "Estate Property Issue" Proceedings dated November 28, 2005 (Case No. 05-60006 Docket No. 634).

4

**WHEREFORE**, the Committee respectfully requests that the Court (i) deny the Motion to the extent that it seeks to preclude meaningful disclosure of the contents of the Schedules; (ii) direct the Debtors to file a summary description of the information contained in the Schedules; and (iii) grant such other relief as is just.

Dated:   New York, New York
         October 8, 2008

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By: /s/ Dennis F. Dunne
Dennis F. Dunne
Luc A. Despins
Wilbur F. Foster, Jr.
1 Chase Manhattan Plaza
New York, NY 10005
Telephone:  (212) 530-5000

-and-

Paul Aronzon
Gregory A. Bray
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone:  (213) 892-4000

Proposed Counsel for Official
Committee of Unsecured Creditors
of Lehman Brothers Holdings Inc., et al.