HEARING DATE: Wednesday, November 5, 2008 at 10:00 a.m.
OBJECTION DEADLINE: Monday, October 27, 2008 at 4:00 p.m.

Lindsee P. Granfield
Lisa M. Schweitzer
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for Barclays Capital Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                                                :
**In re**                                                       :    Chapter 11 Case No.
                                                                :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.***,**                :    08-13555 (JMP)
                                                                :
        **Debtors.**                                            :    (Jointly Administered)
                                                                :
                                                                :
----------------------------------------------------------------x

**MOTION OF BARCLAYS CAPITAL INC. FOR RELIEF**
**CONCERNING CERTAIN CONTRACTS ERRONEOUSLY**
**POSTED WITH THE "CLOSING DATE CONTRACTS"**

Barclays Capital Inc. ("Barclays") hereby moves under Federal Rule of Civil Procedure 60(b), made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for certain limited relief from this Court's (i) Order Under 11 U.S.C. §§ 105(a), 363, And 365 And Federal Rules of Bankruptcy Procedure 2002, 6004 And 6006 Authorizing And Approving (A) The Sale of Purchased Assets Free And Clear of Liens And Other Interests And (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, dated September 19, 2008 (D.I. 258) (the "Sale Order"); and (ii) Order (I) Approving the Break-Up Fee and Expense Reimbursement, (II) Certain Matters Relating to Competing Bids, if

any, (III) Approving the Form and Manner of Sale Notices, and (IV) Setting the Sale Hearing Date in Connection with the Sale of the Debtors' Assets (D.I. 88) (the "Sale Procedures Order").

## PRELIMINARY STATEMENT

1.  This motion concerns certain contracts not designated as contracts to be assumed and assigned to Barclays on the closing date of the Asset Purchase Agreement among Lehman Brothers Holdings Inc. ("LBHI"), Lehman Brothers Inc., LB 745 LLC (collectively, the "Debtors"), and Barclays (the "Closing Date Contracts"), which were erroneously included on the list of Closing Date Contracts posted to http://chapter11.epiqsystems.com/lehman (the "Website") on September 18, 2008. Because of an error that occurred in reformatting the list for electronic posting, the non-IT list of Closing Date Contracts Barclays posted to the Debtors' website late in the evening on September 18, 2008 included approximately 179 contracts Barclays had not designated as Closing Date Contracts, but had in fact expressly declined to designate as such. As soon as counsel and Barclays discovered this error on October 1, 2008, Barclays began taking steps to correct the error, including posting a revised list of non-IT Closing Date Contracts the very same day, with notice to the affected parties. This Court has previously recognized the exigent circumstances surrounding the Sale Order and the harm to the financial markets that would have resulted had this deal not been completed quickly. In light of those exigent circumstances, Barclays requests that the Court correct the record to accurately reflect Barclays' actual designations and confirm that those agreements that were erroneously posted are not Closing Date Contracts.

**JURISDICTION AND VENUE**

2.     This Court has jurisdiction over this motion under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

**FACTS AND PROCEDURAL HISTORY**

3.     On Monday, September 15, 2008, LBHI commenced a voluntary case under Chapter 11 of title 11 of the United States Code (the "Bankrupcty Code"); LB 745 LLC soon commenced its own voluntary case under Chapter 11 of the Bankruptcy Code. The cases of LBHI and LB 745 LLC are jointly administered.

4.     On Wednesday, September 17, 2008, the Debtors moved the Court to schedule a sale hearing at which the Court would, inter alia, approve the sale of certain assets and the assumption and assignment of contracts relating to the purchased assets.[1] In their moving papers, the Debtors explained the exigent circumstances surrounding the proposed sale, and emphasized that time was "of the essence" because their assets were losing value every day in a turbulent financial market. See Sale Motion ¶¶ 6-7.

5.     After holding a hearing on the Sale Motion on Wednesday, the Court issued an Order scheduling a hearing on the Sale Order for Friday, September 19, 2008. This Sale Procedures Order required, inter alia, that the Debtors file and serve at least one day before the sale hearing a notice of assumption, assignment and cure, which would direct parties to a website on which they could ascertain whether their contract was proposed for assumption and assignment to Barclays. Sale Procedures Order ¶ 12(b). Taken together, this gave Barclays a

---

[1]     See Debtor's Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets (D.I. 60) (the "Sale Motion").

3

very short period of time to analyze and identify contracts that would be proposed for assumption as of the close of the transaction, and to post the resulting list to the Debtor's website.

6. A representative of Barclays sent an Excel spreadsheet containing the list of designated non-IT Closing Date Contracts to counsel at 7:48 p.m. on Thursday, September 18, 2008. See Declaration of Eszter Farkas, dated October 9, 2008 (the "Farkas Decl."), ¶ 3. This spreadsheet contained nearly 1,000 rows with more than 24,000 individual cells, and had to be reformatted and converted into a PDF document for purposes of posting on the website that same day. Id. ¶ 4, Ex. A; Declaration of Mario Mendolaro, dated October 9, 2008 ("Mendolaro Decl."), ¶ 2. At 11:37 p.m., counsel sent the converted PDF document for posting on the Website, as required under the Sale Procedures Order. Farkas Decl. ¶ 5, Ex. B.

7. After a lengthy hearing lasting until the early morning of Saturday, September 20, 2008, the Court issued the Sale Order, which recognized "the exigent circumstances of these cases" and found that the Debtors' estates would "suffer immediate and irreparable harm if the relief requested in the Motion [were] not granted on an expedited basis … , particularly given the wasting nature of the Purchased Assets." Sale Order at 2-3.

8. On the morning of October 1, 2008, while working to post revised cure amounts for some of the contracts, counsel discovered that the non-IT list that was posted on September 18, 2008 had inadvertently included approximately 179 contracts that Barclays had not designated as Closing Date Contracts. Declaration of Luke A. Barefoot, dated October 9, 2008 (the "Barefoot Decl."), ¶ 4. Barclays had in fact marked approximately 173 of these contracts as "hidden" on the original Excel spreadsheet sent to counsel, so that they would not appear on the list of Closing Date Contracts when it was posted. Farkas Decl. ¶ 6, Exs. A, D.

4

These hidden rows contained contracts that Barclays had chosen not to designate as Closing Date Contracts, as evidenced by the "N" for "No" appearing in Column Z of the spreadsheet, labeled "Critical." Id. ¶ 6, Ex. D.[2] In addition to the approximately 173 hidden rows that contained "N" in the critical column, there were several additional rows designated "N" that had not been hidden. The "N" designation shows that, just as with the hidden rows, Barclays had not designated these contracts as Closing Date Contracts, but had expressly chosen not to so designate them. Upon investigation on October 1, 2008, counsel discovered that the reformatting of the Excel spreadsheet before converting it into a PDF document for posting (including the deletion of the column containing the "N" designation) had erroneously caused the hidden rows on the Excel spreadsheet to reappear, and to do so without the "N" designation. Farkas Decl. ¶ 7. Because of this mistake, the posted schedule included approximately 179 contracts that Barclays had not designated as Closing Date Contracts. Id. ¶ 8, Ex. C.

9.   As soon as Barclays discovered the mistake, it acted quickly to rectify the problem. On October 1, 2008, the very same day it discovered the mistake, Barclays filed a Notice of Revisions to Schedules of Certain Contracts and Leases Assumed and Assigned to Purchaser (D.I. 504) (the "Notice"), which noted that it had removed certain contracts from the schedules. This Notice specifically listed those counterparties that were affected by the removal on an exhibit, and directed them to review the corrected schedules on the Website. Barefoot Decl. ¶ 5.[3] The corrected schedules excluded those non-IT contracts that were previously posted in error. Id. The Notice (and subsequent revisions thereto) was also served directly on the

---

[2] The "Critical" column contained a "Y" for "Yes" for those contracts Barclays intended to designate as Closing Date Contracts, and an "N" for "No" for those it did not. Farkas Decl. ¶¶ 3, 6, Exs. A, D.

[3] Barclays made subsequent revisions to this Notice in order to include all counterparties that were affected by changes to the schedules. See Notice of Revised Exhibit A to Notice of Revisions to Schedules of Certain Contracts and Leases Assumed and Assigned to Purchaser, dated October 2, 2008 (D.I. 564); Notice of Extension of Deadline to Object to Revised Schedules for Certain Counterparties (D.I. 708), dated October 6, 2008.

5

affected counterparties, who were given an extension of the applicable objection deadline in order to allow them to review the corrected schedules.[4]  Id.

11. 10. Barclays now seeks an order from this Court for a limited modification of the Sale Order and the Sale Procedures Order to remove from the schedule of Closing Date Contracts that was posted on September 18, 2008 those agreements that were erroneously included in the schedule.

## ARGUMENT

11. By this Motion, Barclays asks this Court for a limited modification of the Sale Order and Sale Procedures Order solely in order to reflect Barclays' actual designations as to which contracts would be Closing Date Contracts.  As set forth in the Farkas Declaration, Barclays plainly did not designate the contracts at issue here as Closing Date Contracts.  Indeed, Barclays unequivocally designated them as not being Closing Date Contracts by inserting the letter "N" in the "Critical" column for each of them.  See Farkas Decl. ¶ 6, Ex. D.  Thus, by this motion, Barclays is asking this Court to correct the Sale Order and Sale Procedures Order to reflect Barclays' actual designations as to which contracts would be Closing Date Contracts.

12. As this Court is aware, extraordinary circumstances in the financial markets prompted this transaction.  This Court has already recognized that it was critical to complete this deal as quickly as possible.  See, e.g., Sale Order ¶¶ 2, 3.  Had the sale not closed as quickly as it did, there could have been disastrous repercussions for these estates and in the global financial markets.  With these possible consequences in mind, the parties were working literally around the clock on an extremely compressed schedule to complete the deal.

---

[4] Parties whose agreements were removed from the corrected schedules were granted an extension of the objection deadline until October 13, 2008 or October 16, 2008 (as applicable).  However, should such parties have objections concerning their removal from the schedules and/or the relief sought herein, those objections will be heard in connection with this motion, and should be filed in accordance with the schedule set forth in the accompanying notice of hearing.

6

13. In light of these exigent circumstances, the error that resulted in the inclusion of the contracts Barclays did not designate on the list of Closing Date Contracts is precisely the type of "mistake" or "excusable neglect" that this Court is authorized to correct under Fed. R. Civ. P. 60(b), which is made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024. Rule 60(b)(1) authorizes a court to "relieve a party or its legal representative from a final judgment, order, or proceeding" in cases of "mistake, inadvertence, surprise, or excusable neglect."

14. Granting relief under Rule 60(b) is soundly within the Court's discretion. United States v. Temporary Options, Inc., No 92 CIV. 7491 (LMM), 1994 WL 263555, at *2 (S.D.N.Y. June 6, 1994); see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993) (holding that court considering whether neglect of a deadline under Bankruptcy Rule 9006(b)(1) qualifies as "excusable neglect" must consider "all relevant circumstances").[5] Here, as noted above, the relevant circumstances included an extremely complex deal being completed, out of necessity, in an extraordinarily short time period. Notwithstanding the tight deadlines, Barclays diligently scoured the list of contracts and chose which ones to designate as Closing Date Contracts. In the process of posting the list received from Barclays to the Website, in an effort to provide counterparties with as much notice as practicable under the circumstances, a mistake was made that caused contracts Barclays had expressly designated <u>not</u> to be Closing Date Contracts to be included in the list of Closing Date

---

[5] The Second Circuit has applied the <u>Pioneer</u> Court's analysis of the meaning of "excusable neglect" to other Federal Rules, including Rule 60(b)(1). See, e.g., Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 250 (2d Cir. 1997).

Contracts.[6]  As soon as Barclays discovered the mistake, it acted diligently to rectify it, posting a revised schedule on notice to affected parties the very same day it discovered the mistake.

15.    While the general rule may be that parties are held responsible for their attorneys' mistakes, "to preclude in a blanket fashion a client's relief 'from his attorney's mistakes' . . . would serve to effectively read Rule 60(b)(1) out of the Federal Rules." Temporary Options, 1994 WL 263555, at *3; see also Wells v. Tamarkin (In re Wells), 87 B.R. 862, 864 (Bankr. E.D. Pa. 1988) (granting relief under Rule 60(b) and noting that "'[t]here is a [qualitative] distinction between inadvertence that occurs despite counsel's affirmative efforts to comply and inadvertence which results from counsel's lack of diligence'") (quoting Consol. Freightways Corp. of Del. v. Larson, 827 F.2d 916, 919 (3d Cir. 1987)).  Given the exigent circumstances surrounding Barclays' conduct here and the nature of the mistake at issue (the fact that the actions taken to convert the Excel spreadsheet into a format appropriate for posting had the unwitting effect of including contracts that Barclays had designated not to be Closing Date Contracts), this is precisely the type of case in which a party should be granted relief.  Moreover, aside from the extreme time pressures the parties and counsel were acting under here, this Court should remain mindful, as it has throughout these proceedings, of the current conditions in global financial markets.  In these turbulent financial times, parties are acting quickly to complete deals with far-reaching effects on the global financial markets.  Recognizing that Barclays acted diligently to designate only those Closing Date Contracts it wished to assume, this Court should modify the Sale Order and Sale Procedures Order accordingly.

---

[6]    A proposed order filed as Exhibit A hereto identifies those contracts that were mistakenly posted to the Debtor's Website on September 18, 2008.

16.     Barclays has incorporated its memorandum of law into this motion and respectfully requests that this Court waive the requirement under LBR 9013-1(b) that a separate memorandum of law be filed in support of this motion.

### **REQUEST FOR RELIEF**

WHEREFORE, for the reasons set forth herein and in the accompanying Declarations, Barclays respectfully requests that this Court: (a) grant its motion for relief under Federal Rule of Civil Procedure 60(b); (b) order that notwithstanding anything in the Sale Order, Sale Procedures Order, and/or any notices filed pursuant thereto to the contrary, those agreements identified in the attached proposed order which were erroneously posted have not been assumed and assigned to Barclays; and (c) grant such other and further relief as this Court may deem just or proper.

Dated: New York, New York
       October 10, 2008

                            Respectfully submitted,

                            CLEARY GOTTLIEB STEEN & HAMILTON LLP

                            By:        s/Lisa M. Schweitzer
                                Lindsee P. Granfield
                                Lisa M. Schweitzer

                            One Liberty Plaza
                            New York, New York 10006
                            (212) 225-2000

                            *Attorneys for Barclays Capital Inc.*

<u>Exhibit A</u>

**Proposed Order**

08-13555-mg    Doc 809    Filed 10/10/08    Entered 10/10/08 15:00:42    Main Document
Pg 10 of 12

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                 :
In re                                                            :    Chapter 11 Case No.
                                                                 :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                         :    08-13555 (JMP)
                                                                 :
        Debtors.                                                 :    (Jointly Administered)
                                                                 :
                                                                 :
-----------------------------------------------------------------x

### ORDER GRANTING BARCLAYS' MOTION FOR CERTAIN LIMITED RELIEF FROM THE SALE ORDER AND THE SALE PROCEDURES ORDER

Upon the motion, dated October 10, 2008 (the "Motion"),[7] of Barclays Capital Inc. for entry of an order, pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), granting certain limited relief from this Court's Sale Order and Sale Procedures Order (as more fully described in the Motion); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, proper and sufficient notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the Court having found and determined that it should exercise its discretion in accordance with the relief requested in the Motion and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

---

[7]    Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Motion.

ORDERED that, pursuant to Bankruptcy Rule 9024 the Motion is granted; and it is further

ORDERED that, notwithstanding any prior order of this Court to the contrary, or any notice given by Barclays or the Debtors, those contracts set forth on Exhibit 1 hereto, which were erroneously included in the schedule of Non-IT Closing Date Contracts posted to the Debtor's Website on September 18, 2008: (i) do not Constitute Closing Date Contracts, (ii) have not been assumed and assigned to Barclays, and (iii) remain subject to future assumption, assignment, and/or rejection; and it is further

ORDERED that, notwithstanding any prior order of this Court to the contrary, nor any notice given by Barclays or the Debtors, Barclays shall have no obligation or liability for payment of cure amounts with respect to those contracts set forth on Exhibit 1 hereto; and it is further

ORDERED that Barclays and the Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that the Court retains jurisdiction to enforce this Order.

Dated:  November __, 2008
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE