WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
|  | : |  |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |
|  | : |  |
|  | : |  |

------------------------------------------------------------------x

### DEBTORS' OBJECTION TO THE MOTION
### OF WILLIAM KUNTZ III FOR AN ORDER LIFTING OR
### MODIFYING THE AUTOMATIC STAY IN THESE CHAPTER 11 CASES

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this objection (the "Objection") to the motion of William Kuntz, III ("Kuntz"), filed September 18, 2008 (the "Motion"), for an order lifting or modifying the automatic stay in these chapter 11 cases. In support of this Objection, the Debtors respectfully represent as follows:

## Preliminary Statement

1.      The Motion fails to set forth that Kuntz has any interest in these chapter 11

cases let alone a basis for relief.  Kuntz seeks a modification of the automatic stay to pursue

purported claims against Grand Union Capital ("Grand Union") – a wholly unrelated entity that

reorganized under the supervision of the Delaware Bankruptcy Court in 1995.  Kuntz has failed

to allege, let alone prove, how his purported relationship with Grand Union can give rise to a

claim against the Debtors.

2.      Kuntz's *pro se* status should not lead the Court to believe he is unfamiliar

with the judicial system.  Kuntz has participated in <u>hundreds</u> of judicial proceedings all over the

country in both the federal and state systems at both the trial court and appellate levels, including

numerous appearances in bankruptcy proceedings.  There exists at least 72 published and

unpublished decisions that cite Kuntz's <u>active</u> participation.  Almost without exception, courts

find that Kuntz has asserted claims that had no merit and that his *pro se* status was no excuse for

his failure to comply with the procedures and timelines imposed by courts.

3.      Accordingly, Kuntz has failed to demonstrate he has any interest in these

chapter 11 cases and an application of the well-established *Sonnax* factors unquestionably

demonstrates that the stay should remain in effect.

## Kuntz's Grand Union Claim

4.      Kuntz suggests that he somehow has an interest in these cases by virtue of

his purported claim against Grand Union – an entity that has no affiliation with the Debtors or

Lehman and was the subject of a chapter 11 proceeding in Delaware commenced on January 25,

1995 and confirmed by final order on May 31, 1995.  Although difficult to discern, Kuntz

appears to suggest – and asks this Court to accept without a shred of evidence – that he holds a

claim in an unspecified amount against some unidentified Lehman entity on account of a constructive trust arising from an extension of credit by such unnamed Lehman entity to reorganized Grand Union.  *See* Motion ¶ 16.  Kuntz has proven no claim against these estates.

5.    Kuntz asserts that he was a creditor of Grand Union and was entitled to, but did not receive, a distribution from that estate under Grand Union's confirmed plan of reorganization.  *See* Motion ¶ 12.  While wholly irrelevant to these chapter 11 cases, Kuntz has provided no evidence to support his claim against Grand Union.  According to Kuntz, in connection with Grand Union's plan confirmation, a settlement sum was specifically escrowed (the "Escrow") to satisfy a certain class of claims asserted by a group of zero coupon noteholders (the "Zero Coupon Noteholders") to which Kuntz purports to have belonged.[1]  While it is unclear, Kuntz appears to suggest that subsequent to Grand Union's confirmation, an unidentified Lehman entity made a loan to reorganized Grand Union and Grand Union used the Escrow (allegedly $5 million) to repay that loan.  Manifestly, Kuntz has not proven he has any claim against these estates.

6.    Notwithstanding the fact that Kuntz readily admits he rejected and abstained from the settlement agreement with the Zero Coupon Noteholders, *see* Motion ¶ 8, Kuntz now alleges that he has a constructive trust over those settlement funds allegedly deposited into the Escrow.  *See* Motion ¶ 13.

---

[1] Kuntz's unsubstantiated allegations of the Escrow are plainly contradicted by a description of the settlement agreement in Grand Union's brief to the Third Circuit in response to Kuntz's appeal, which reveals that the noteholder group Kuntz refers to received a combination of warrants under Grand Union's plan and makes no reference to the Escrow.  *See* Brief for Appellees at 5, *Kuntz v. Grand Union Co.*, Case No. 96-7195 (3d Cir. Sept. 26, 1996) (attached hereto at Exhibit A).

7.      Kuntz alleges no other interest in the Debtors' chapter 11 estates, and, in fact, concedes that although he once was a shareholder of Lehman, he has sold all of his equity interest in Lehman.  *See* Motion ¶ 18.

## Standard for Section 362(d)(1) of the Bankruptcy Code

8.      The automatic stay is one of the fundamental protections afforded to debtors under the Bankruptcy Code.  *See Midatlantic Nat'l Bank v. New Jersey Dep't of Envt'l Protection,* 474 U.S. 494, 503 (1986).  The automatic stay provides the debtor with a "breathing spell" after the commencement of a chapter 11 case, shielding it from creditor harassment and from a multitude of litigation in a variety of forums at a time when a debtor's personnel should be focusing on restructuring.  *See, e.g., E. Refactories Co. v. Forty Eight Insulations,* 157 F.3d 169 (2d Cir. 1998); *Teachers Ins. & Annuity Ass'n of Am. v. Butler,* 803 F.2d 61, 64 (2d Cir. 1986); *Taylor v. Slick,* 178 F.3d 698, 702 (3d Cir. 1999), *cert. denied,* 528 U.S. 1079 (2000); *In re Univ. Med. Ctr.,* 973 F.2d 1065, 1074 (3d Cir. 1992).  The United States Court of Appeals for the Second Circuit has stated that the automatic stay

> is a crucial provision of bankruptcy law.  It prevents disparate actions against debtors and protects creditors in a manner consistent with the bankruptcy goal of equal treatment . . . by ensuring that no creditor receives more than an equitable share of the bankrupt's estate.

*Lincoln Sav. Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n)*, 880 F.2d 1540, 1545 (2d. Cir. 1989), *cert. denied,* 110 S.Ct. 869 (1990), quoted in*, In re Drexel Burnham Lambert Group, Inc.*, No. 90B-10421, 1990 WL 302177 at *5 (Bankr. S.D.N.Y. Dec. 14, 1990).

9.      Moreover, the automatic stay is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtors' estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas."  *See SEC v.*

*Brennan*, 230 F.3d 65, 71 (2d Cir. 2000); *see also In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1992).

10.     In order to prevail, Kuntz must demonstrate that he has some interest that is affected by the automatic stay and that "cause" exists to modify the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code.  Consequently, Kuntz has the heavy burden of showing extraordinary circumstances justifying relief from the stay.  *See e.g., In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 45 (Bankr. S.D.N.Y. 1990).

11.     Although the Bankruptcy Code does not specify what constitutes "cause" to modify the automatic stay, the Second Circuit has developed a list of 12 factors to be considered when determining whether the stay should be modified to permit litigation of a prepetition claim in another forum.  *See In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (listing the 12 factors to be considered); *see also In re Bogdanovich*, 292 F.3d 104, 110 (Bankr. S.D.N.Y. 2005) (same); *In re New York Med. Group, P.C.*, 265 B.R. 408, 412-13 (Bankr. S.D.N.Y. 2001) (same).  These factors are as follows:

> (i)     whether relief from the stay would result in a partial or complete resolution of the issues;

> (ii)    whether the proposed action has any connection with or interferes with the bankruptcy case;

> (iii)   whether the stayed proceeding involves the debtor as a fiduciary;

> (iv)    whether a specialized tribunal has been established to hear the stayed cause of action;

> (v)     whether the debtors' insurer has assumed full responsibility for defending the stayed action;

> (vi)    whether the stayed action primarily involves third parties;

> (vii)   whether litigation in another forum would prejudice the interests of other creditors;

(viii)    whether any judgment claim arising from the proposed action would be subject to equitable subordination;

(ix)    whether the movant's success in the stayed action would result in a judicial lien avoidable by the debtor;

(x)    whether the interests of judicial economy and the expeditious and economical resolution of litigation are served by lifting the stay;

(xi)    whether the parties are ready for trial in the proposed action; and

(xii)    the impact of the stay on the parties and the balance of harms.

*See In re Sonnax Indus.*, 907 F.2d at 1286.  Not all of these factors are relevant to every instance in which relief from the automatic stay is sought.  *In re Bogdanovich*, 292 F.3d at 110.

12.    The fact that Kuntz is acting *pro se* does not change the only issue before the Court:  whether Kuntz has satisfied his burden to demonstrate that he is entitled to relief from the automatic stay.  The clear answer to that question is no.  While the style and format of Kuntz's Motion might be held to a lesser standard, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), Kuntz's *pro se* status does not exempt him "from compliance with the relevant rules of procedural and substantive law."  *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983); *see also Belford v. Martin-Trigona (In re Anthony R. Martin-Trigona)*, 763 F.2d 503, 506 (2d Cir. 1985) (affirming default judgment against defendant on fraudulent conveyance action and finding that the defendant, "a law school graduate and 'perhaps the most prolific litigator in this circuit's history,' . . . can hardly expect the special allowance this court sometimes makes for pro se litigants who forfeit legal rights by inadvertent procedural mistakes.") (internal citations omitted).

## The Motion is Without Merit and Should be Denied With Prejudice

13.     The Motion fails to state any basis to modify the automatic stay.  Kuntz

has articulated no interest in these proceedings.  Kuntz concedes that he has no equity interest in

the Debtors or any other Lehman entity.  *See* Motion ¶ 18.  Kuntz alleges, without any evidence

in support, that he may be a creditor of the Debtors or a non-debtor entity (Kuntz himself is not

even sure) on account of a constructive trust arising from an unidentified entity's extension of

credit to reorganized Grand Union and satisfaction of such debt from the Escrow set aside to pay

Grand Union's pre-petition bankruptcy claims.

14.     Having conceded that he abstained from the settlement agreement -- and

would, therefore, have no right to the Escrow funds -- Kuntz continues to assert a claim against

these estates.  Kuntz has failed to provide any evidence or support that the Escrow was created,

that a Lehman entity made a loan to Grand Union, that Grand Union used the Escrow to repay

the loan, or that Kuntz had an interest in the unsubstantiated Escrow.  Accordingly, granting

Kuntz's Motion will serve no purpose but to reward Kuntz's disruptive actions and unnecessarily

raise costs.

15.     An application of the relevant *Sonnax* factors unequivocally demonstrates

that Kuntz has utterly failed to carry his burden, and, therefore, the Motion should be denied.

Granting relief from the stay will not result in a complete resolution of the issues.  Indeed, the

Debtors still have not been able to determine precisely what claim or interest Kuntz has in these

estates.  In any event, no alternate proceeding is currently pending against the Debtors with

respect to Kuntz's constructive trust claim.  Although Kuntz alleges that he has commenced a

proceeding in New York state court against Grand Union, that proceeding (to the extent there is one)[2] is unaffected by the Debtors' bankruptcy.

16.    Kuntz's ability to continue to pursue his claim against Grand Union will not result in piecemeal litigation because Kuntz's alleged claim against the Debtors is unrelated to the underlying facts of his claim against Grand Union.  Kuntz alleges that he has a constructive trust claim against the Debtors as a result of Grand Union's actions.  His claim against Grand Union is based upon an unpaid distribution from Grand Union's bankruptcy estate.  Thus, no harm will fall upon Kuntz if the stay remains in place and his claim against the Debtors, to the extent he has any, is adjudicated by this Court at the appropriate time.

17.    It must be noted that Kuntz has had more than his day in court with respect to his purported claim against Grand Union.  According to the pleadings filed in connection with Kuntz's appeal to the Third Circuit, Kuntz actively contested Grand Union's plan confirmation and its settlement with the Zero Coupon Noteholders.  *See* Br. for Appellees at 5-7 (attached hereto at Exhibit A).  In fact, Kuntz appealed the Delaware Bankruptcy Court's orders to the District Court, which affirmed, and then again to the Third Circuit, where he was once again unsuccessful.  Assuming that Kuntz had a claim against Grand Union, such claim has been finally adjudicated and Kuntz may not re-litigate his claims against Grand Union here.  *See Kuntz v. Grand Union Co.*, (*In re Grand Union Co.*), 106 F.3d 385 (Table) (3d Cir. 1996).

---

[2] In paragraph 15 of the Motion, Kuntz alleges that he "began to take steps in NY State Supreme Court, Westchester County, to obtain his First Judgment against Grand Union Capital [and] Grand Union Holding." (citing Ex. 4 and 5).  There is no exhibit 4 attached to the Motion.  Exhibit 5 is a self-addressed e-mail from Kuntz describing the purported terms of certain notes due from Grand Union Capital, which makes no reference to a proceeding commenced against Grand Union in New York state court.  However, there is an attachment to Exhibit 8 that appears to be an application for an index number for an action between Kuntz and Grand Union.

18.     If the stay is lifted, Kuntz is likely to commence a proceeding in a separate forum against one of the Debtors or attempt to bring the Debtors into his action in New York state court against Grand Union, which will have a negative impact on the Debtors' chapter 11 cases and their ability to effectively administer these cases, especially when Kuntz has failed to show he has any claim or interest affected by the automatic stay.  As explained below, Kuntz has a reputation throughout the courts of the United States to blindly pursue his agenda – often with no regard to the underlying merits – causing his adversaries to incur unnecessary and significant costs and expenses by responding to meritless pleadings and then litigating the same issues on appeal.

19.     The Debtors are not party to any action commenced by Kuntz with respect to the issues raised in the Motion nor has any other tribunal been made aware of Kuntz's alleged claim against the Debtors.  Moreover, to the extent there is a pending New York state court action against Grand Union, Kuntz admits that he only "began to take steps" with respect to that action in August 2008.  *See* Motion ¶ 14.  Because there is no stay against Grand Union, and to the extent Kuntz wishes to proceed against Grand Union, his rights are not impaired by the Debtors chapter 11 filings.  Thus, Kuntz is in no worse position if the stay remains in effect.

20.     A balancing of the harms, including the impact on creditors of the estates, weighs in favor of denying the Motion.  The Debtors are in the early stages of their reorganization efforts in the largest chapter 11 filing in history.  Remarkably, at the time of the return date on the Motion, the Debtors' cases will be only one month old.  To say that the Debtors have been focused on preserving value at a frenetic pace would be an understatement.  Simply put, the Debtors cannot afford to be distracted by Kuntz's incomprehensible allegations.

21.     For all the foregoing reasons, the Court should deny the Motion.

### The Court Should Give No Weight to Kuntz's *Pro Se* Status

22.    The Court should give no weight to Kuntz's status as a *pro se* litigant.

Kuntz is no stranger to the formal procedures or rules imposed by courts, including bankruptcy

courts.  In a decision issued by the District Court for the Southern District of New York <u>over 14</u>

<u>years ago</u>, the court found that

> Kuntz's status as a *pro se* litigant is of little import. During his fourteen-year
> participation in the underlying Grant bankruptcy proceedings, Kuntz has amassed
> litigation experience that would embarrass the majority of associates, and some
> partners, at large New York law firms.  He has already filed no fewer than eight
> appeals, all unsuccessful, with six dismissed as either untimely or for failure to
> prosecute.  I had to adjourn one conference in this action because Kuntz had an
> argument before the Second Circuit.  Although I am unsure what significance to
> give to the ten years that Kuntz purportedly spent in law school, I find that his
> failure to comply with court rules, procedures, and deadlines is the result of
> conscious disregard, and not because of unfamiliarity with the courts.
> Throughout the proceedings, Kuntz has demonstrated a consistent pattern of
> vexatious litigation and little respect for the courts or other parties.  The acts
> required of Kuntz were within his complete control and there was no acceptable
> reason for the delay.

*Kuntz v. Pardo*, 160 B.R. 35, 39 (S.D.N.Y. 1993).  The court further stated that

> Kuntz's dilatory conduct throughout his participation in the Grant case evinces
> bad faith.  Apart from the lack of merit to his appeals, he has repeatedly failed to
> abide by the rules of the court and repeatedly fails to prosecute the appeals that he
> has filed.  By contrast to cases holding that a party should not be penalized
> without considering the relative culpability of the appellant and his or her
> attorney, Kuntz has elected to appear *pro se* and thus the culpability is all his.
> There is no injustice manifest in allowing Kuntz to bear the brunt of his own
> neglect.

*Kuntz v. Pardo*, 160 B.R. at 39 (internal citations omitted).

23.    Most recently, Judge Lifland of this Court entered an order denying

Kuntz's attempt to reinstate his claim six months after it was expunged.  There the Court found

that Kuntz's "extensive legal experience, unlike many other pro se litigants, invokes little

sympathy from this Court . . .."  *In re Silicon Graphics, Inc. et al.*, Case No. 06-10977 (Bankr.

S.D.N.Y. June 20, 2007) (Mem. Decision Denying Mot. of William Kuntz III For An Order

Reinstating His Proof of Claim, at 6) [Docket No. 877], *aff'd*, Case No. 07-7698 (DAB)

(S.D.N.Y. Sept. 29, 2008) [Docket No. 9].

   24.  A simple search on Westlaw using Kuntz's full name generated

approximately 72 decisions from jurisdictions all over the country denying the relief he was

seeking as a plaintiff, objectant, or appellant.  In these decisions, the courts commonly deny the

relief sought because Kuntz either failed to state a claim or follow the timelines and procedures

employed by the court, just as the courts did in *Silicon Graphics* and *Kuntz v. Pardo*.

   25.  In 1999, the Bankruptcy Court of the Northern District of Oklahoma noted

in its decision that Kuntz has considerable experience with federal law and his *pro se* status is

not something the court considered relevant.  *In re Commercial Financial Services, Inc.*, 238

B.R. 479, 484 n.7 (Bankr. N.D. Okla. 1999).  In *Commercial Financial*, the court noted that

> [a]t the hearing, Kuntz objected to questions, required the admission of exhibits,
> effectively cross-examined witnesses, articulated arguments in favor of his
> positions, such as his theory as to why the Judgment was invalid, etc.  In the
> pleadings filed with this Court, Kuntz liberally cites federal statutes and
> Bankruptcy Rules, and evidences a conversant knowledge of bankruptcy law and
> procedure, as well as appellate procedure.

*Commercial Financial*, 238 B.R. at 484 n.7.  The court also documented Kuntz's extensive

litigation experience.[3]

---

[3] The court in *Commercial Financial* listed some of the published and unpublished decisions that Kuntz
has been an active party:

> *Kuntz v. DASU LLC*, (*In re Cray Computer Corp.*), 145 F.3d 1345 (Table) (10th Cir.
> 1998); *Kuntz v. Cray Computer Corp.* (*In re Cray Computer Corp.*), 107 F.3d 880
> (Table) (10th Cir. 1997); *Kuntz v. Grand Union Co.* (*In re Grand Union Co.*), 106 F.3d
> 385 (Table) (3d Cir. 1996); *Kuntz v. Saul, Ewing, Remick & Saul*, 200 B.R. 101 (D. Del.
> 1996) (Kuntz sanctioned for pursuing a frivolous appeal, notwithstanding his *pro se*
> status, because of Kuntz's extensive appellate experience – listing failed federal and state
> appeals); *Kuntz v. Cray Computer Corp.* (*In re Cray Computer Corp.*), 97 F.3d 1464
> (Table) (10th Cir. 1996); *Kuntz v. Nova Vista Industries, Inc.* (*In re Nova Vista*

26.    As explained above, even if the Court were to disregard the Motion's

informal presentation, Kuntz's *pro se* status does not relax the applicable standards that Kuntz

must satisfy to obtain relief from the automatic stay.

---

*Industries, Inc.*), 1992 WL 60395 (S.D.N.Y. 1992); *In re Adirondack Railway*, 1990 WL
124225 (N.D.N.Y. 1990); *Ehre v. State of New York* (*In re Adirondack Railway*), 93 B.R.
867 (N.D.N.Y. 1998); *In re W.T. Grant Co.*, 85 B.R. 250 (Bankr. S.D.N.Y. 1988), *aff'd
in part*, *reversed in part*, 119 B.R. 898 (S.D.N.Y. 1990) (denial of Kuntz's request for
fees and expenses); *In re One Westminister Co.*, 74 B.R. 37 (D. Del. 1987); *In re W.T.
Grant Co.*, 4 B.R. 53 (Bankr. S.D.N.Y. 1980).

Kuntz brought an action in connection with the fate of The Peter Kuntz Company, a
company apparently founded by his grandfather, against six banks, an investment firm,
and John and Jane Does 1-299, alleging a conspiracy to dismantle the company.  *See
Kuntz v. Shawmut Bank of Boston*, 1987 WL 11172 (S.D.N.Y. 1987).

Kuntz also sued the New York State Senate, the New York State Board of Elections,
various individuals, and numerous John and Jane Does, claiming constitutional violations
in connection with Kuntz's attempt to run as an independent candidate for the United
States House of Representatives in 1992. *See Kuntz v. New York State Board of Elections*,
924 F. Supp. 364 (N.D.N.Y. 1996); *Kuntz v. New York State Senate*, 113 F.3d 326 (2d
Cir. 1997).

Kuntz has filed complaints against the New York Stock Exchange (motion for leave to
appeal denied, 92 N.Y.2d 877 (1998)); the Board of Governors of the Federal Reserve,
*see* 1997 WL 150062 (D.C. Cir. 1997); the City of Dayton, Ohio, see 99 F.3d 1139
(Table) (6th Cir. 1996); the Department of Energy (1995); and the United States Postal
Service (1993).  Kuntz has also been to Tax Court, although not *pro se*.  *See Kuntz v.
Commissioner*, 64 T.C.M 1258 (1992).

Further, Kuntz has unsuccessfully petitioned to the United States Supreme Court for writs
of certiorari in numerous cases, including *Kuntz v. Fadness*, 519 U.S. 996 (1996); *Kuntz
v. Shawmut Bank of Boston*, 501 U.S. 1252 (1991); *Kuntz v. Manley, Burke and Fischer,
L.P.A.*, 500 U.S. 918 (1991); *Kuntz v. City of Dayton*, 499 U.S. 962 (1991); *Kuntz v.
Society Bank, N.A.*, 498 U.S. 1089 (1991); *Kuntz v. Little Miami Railroad Co.*, 498 U.S.
1027 (1991); *Kuntz v. City of Dayton*, 488 U.S. 1008 (1989); *Kuntz v. Shawmut Bank of
Boston*, 488 U.S. 952 (1988); *Kuntz v. Winters National Bank and Trust Co.*, 465 U.S.
1080 (1984).

*Commercial Financial*, 238 B.R. at 484 n.7.

WHEREFORE the Debtors respectfully request that the Court deny the Motion in its entirety, with prejudice, and grant the Debtors such other and further relief as may be just.

Dated:  October 10, 2008
      New York, New York

/s/ Shai Y. Waisman
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**<u>Exhibit A</u>**

**(Brief for Appellees, *Kuntz v. Grand Union Co.*, Case No. 96-7195 (3d Cir. Sept. 26, 1996))**

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE THIRD CIRCUIT

| | |
|---|---|
| IN RE: GRAND UNION COMPANY, d/b/a Big Star; GRAND UNION CAPITAL CORPORATION; GRAND UNION HOLDINGS CORPORATION, <br><br>       Debtors <br>————————————————<br> WILLIAM KUNTZ, III, <br><br>       Appellant <br><br>     v. <br><br> GRAND UNION COMPANY; GRAND UNION CAPITAL CORPORATION <br><br>       Appellees <br><br> JOHN R. STONITSCH, <br><br>       Trustee | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 96-7195<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

RECEIVED
SEP 27 1996
U.S.C.A. 3rd. CIR.

On Appeal from the United States
District Court for the District
of Delaware C.A. Nos. 95-529, 95-530,
95-531, 95-591, 95-592 (Consolidated)

## BRIEF FOR APPELLEES

> YOUNG, CONAWAY, STARGATT & TAYLOR
> James L. Patton, Jr. (No. 2202)
> Laura Davis Jones (No. 2436)
> S. David Peress (No. 2679)
> Scott D. Cousins (No. 3079)
> 11th Floor, Rodney Square North
> P.O. Box 391
> Wilmington, Delaware 19899-0391
> (302) 571-6600

-and-

IN THE UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

IN RE: GRAND UNION COMPANY,       )
d/b/a Big Star; GRAND UNION       )
CAPITAL CORPORATION; GRAND        )
UNION HOLDINGS CORPORATION,       )
                                  )
          Debtors                 )
                                  )
_____)
                                  )
WILLIAM KUNTZ, III,               )
                                  )
          Appellant               )
                                  )
     v.                           )        No. 96-7195
                                  )
GRAND UNION COMPANY;              )
GRAND UNION CAPITAL               )
CORPORATION                       )
                                  )
          Appellees               )
                                  )
JOHN R. STONITSCH,                )
                                  )
          Trustee                 )
                                  )


On Appeal from the United States
District Court for the District
of Delaware C.A. Nos. 95-529, 95-530,
95-531, 95-591, 95-592 (Consolidated)


BRIEF FOR APPELLEES

YOUNG, CONAWAY, STARGATT & TAYLOR
James L. Patton, Jr. (No. 2202)
Laura Davis Jones (No. 2436)
S. David Peress (No. 2679)
Scott D. Cousins (No. 3079)
11th Floor, Rodney Square North
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

          -and-

WILLKIE FARR & GALLAGHER
Brian E. O'Connor
One Citicorp Center
153 East 53rd Street
New York, New York 10022
(212) 821-8000

Co-Counsel for The Grand Union Company

SAUL, EWING, REMICK & SAUL
Norman L. Pernick (No. 2290)
Mark Minuti (No. 2659)
222 Delaware Avenue
Suite 1200
P.O. Box 1266
Wilmington, Delaware 19899
(302) 421-6824

        -and-

PATTERSON, BELKNAP, WEBB &
TYLER, LLP
David W. Dykhouse
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

Co-Counsel for Grand Union Capital
  Corporation and Grand Union Holdings
  Corporation


Dated:    September 26, 1996

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Certain other decisions rendered in the Appellees'
bankruptcy proceedings have been appealed to the District
Court.  Those decisions, however, are not related to the
instant appeal.  Further, with one exception, none of those
decisions has been appealed to this Court.  On August 12,
1996, the Appellant filed a notice of appeal from a District
Court Order, dated July 10, 1996, denying the Appellant's
appeal from an Order of the Bankruptcy Court, dated March
27, 1996, dismissing the bankruptcy cases of Grand Union
Capital Corporation and Grand Union Holdings Corporation.
By letter dated September 10, 1996, this Court notified the
Appellant that his appeal was being reviewed for dismissal
as untimely.  (C.A. No. 96-7517).  Counsel is not otherwise
aware of any related case or proceeding that is completed,
pending, or about to be presented before this Court or any
other court or agency, state or federal.

TABLE OF CONTENTS

                                                                        Page

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . iv

I.    STATEMENT OF SUBJECT MATTER
      AND APPELLATE JURISDICTION . . . . . . . . . . . . 1

II.   STATEMENT OF ISSUES FOR REVIEW . . . . . . . . . 2

III.  STANDARD OF APPELLATE REVIEW . . . . . . . . . . 3

IV.   STATEMENT OF THE CASE  . . . . . . . . . . . . . 3

      A.   Statement of Facts . . . . . . . . . . . . . 3

               1.   The Settlement Order  . . . . . . . . . 5
               2.   The Confirmation Order  . . . . . . . . 7
               3.   The SERP and Waterford Orders . . . . . 7
                    (a)   The SERP Motion . . . . . . . . 7
                    (b)   The Waterford Motion  . . . . . . 8

      B.   The Debtors' Motion to Dismiss
           and the District Court Opinion  . . . . . . . 10

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . 13

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . 14

POINT I

      THE DISTRICT COURT PROPERLY DISMISSED KUNTZ'S
      APPEALS FROM THE SETTLEMENT ORDER AND THE SERP
      ORDER ON THE GROUND THAT HIS NOTICES OF APPEAL
      WERE JURISDICTIONALLY DEFECTIVE  . . . . . . . . . 14

      A.   Dismissal of Kuntz's
           Appeal From the Settlement Order  . . . . . . 15

      B.   The Dismissal of Kuntz's
           Appeal from the SERP Order  . . . . . . . . . 22

POINT II

      THE DISTRICT COURT PROPERLY EXERCISED ITS
      DISCRETION IN DISMISSING KUNTZ'S APPEALS FROM
      EACH OF THE BANKRUPTCY COURT ORDERS BECAUSE
      OF HIS FAILURE TO DESIGNATE THE RECORDS ON
      APPEAL ON A TIMELY BASIS . . . . . . . . . . . . . 23

WP2: N:\DOCS2\PUBL2\249\PLEAD\52082-1                            49810.1001

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 28

ADDENDUM . . . . . . . . . . . . . . . . . . . . . . 30

(iii)

## TABLE OF AUTHORITIES

CASES                                                              Page

Brent v. Superintendent,
    34 Fed. Rules Serv. 2d 367 (4th Cir. 1982)  . .  16-19, 30

Cape May Greene, Inc. v. Warren,
    698 F.2d 179 (3d Cir. 1983) . . . . . . . . . . . 18-19

Century Laminating, Ltd. v. Montgomery,
    595 F.2d 563 (10th Cir.), cert. granted,
    444 U.S. 897, cert. dismissed,
    444 U.S. 987 (1979) . . . . . . . . . . . . . . . . . 20

Cleaver v. Elias,
    852 F.2d 266 (7th Cir. 1988)  . . . . . . . . . . . . 20

In re Comer,
    716 F.2d 168 (3d Cir. 1983) . . . . . . . . . . . . . 24

In re Continental Airlines,
    91 F.3d 553 (3d Cir. 1996)  . . . . . . . . . . . 3, 13

Dayton Arcade Community Dev. Corp. v. Dayton,
    No. CA 10109, 1987 WL 6251
    (Ohio Ct. App. Feb. 6, 1986)  . . . . . . . . . . . . 25

Deposit Guar. Nat'l. Bank v. Roper,
    445 U.S. 326 (1980) . . . . . . . . . . . . . . . . . 21

In re Dykes,
    10 F.3d 184 (3d Cir. 1993)  . . . . . . . . . . . . . 21

FMC Corp. v. United States Dep't of Commerce,
    29 F.3d 833 (3d Cir. 1994)  . . . . . . . . . . . . . . 3

Griggs v. Provident Consumer Discount Co.,
    459 U.S. 56 (1982)  . . . . . . . . . . . . . . . . . 19

In re Harbour House Operating Corp.,
    724 F.2d 1 (1st Cir. 1983)  . . . . . . . . . . . . . 20

Knight v. Brown Transport Corp.,
    806 F.2d 479 (3d Cir. 1986) . . . . . . . . . . . . . 18

In re Kuntz,
    No. CA 9723, 1986 WL 14771
    (Ohio Ct. App. Dec. 17, 1986) . . . . . . . . . . . . 25

Kuntz v. Board of Assessment of Westport,
    621 N.Y.S.2d 942 (3d Dep't 1995)  . . . . . . . . . . 25

WP2: N:\DOCS2\PUBL2\249\PLEAD\52082-1                              49810.1001

Kuntz v. Nova Vista Indus., Inc.,
    91 CIV 7222, 1992 WL 60395 (S.D.N.Y. Mar. 9, 1992),
    aff'd, 14 F.3d 590 (2d Cir. 1993) . . . . . . . . . . 25

Kuntz v. Pardo,
    160 B.R. 35 (S.D.N.Y. 1993) . . . . . . . . . . . . . 26

In re Lifeco Inv. Group Inc.,
    173 B.R. 478 (Bankr. D. Del. 1994) . . . . . . . . . 22

Mondrow v. Fountain House,
    867 F.2d 798 (3d Cir. 1989) . . . . . . . . . . . . . 21

O'Shea v. Littleton,
    414 U.S. 488 (1974) . . . . . . . . . . . . . . . . . 21

In re Solis,
    95 Civ 0356, 1995 WL 311781
    (S.D.N.Y. May 19, 1995) . . . . . . . . . . . . . . . 24

Szostek v. Hart,
    123 B.R. 719 (E.D. Pa. 1991),
    aff'd in part and appeal dismissed in part,
    941 F.2d 242 (3d Cir. 1991) . . . . . . . . . . . . . 15

Travelers Ins. Co. v. H.K. Porter Co.,
    45 F.3d 737 (3d Cir. 1995) . . . . . . . . . . . . . 22

Universal Minerals, Inc. v. C.A. Hughes & Co.,
    669 F.2d 98 (3d Cir. 1981) . . . . . . . . . . . . . 3

In re Universal Minerals, Inc.,
    755 F.2d 309 (3d Cir. 1985) . . . . . . . . . 15-16, 23

Venen v. Sweet,
    758 F.2d 117 (3d Cir. 1985) . . . . . . . . . . . . . 19

Warth v. Seldin,
    422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . 21

In re One Westminster Co.,
    74 B.R. 37 (D. Del. 1987) . . . . . . . . . . . . . . 25

Whitemere Dev. Corp. v. Township of Cherry Hill,
    786 F.2d 185 (3d Cir. 1986) . . . . . . . . . . . 14-16

OTHER AUTHORITIES

Federal Rules of Bankruptcy Procedure 8001 . . . 12, 14, 24

Federal Rules of Bankruptcy Procedure 8002 . . . . . passim

Federal Rules of Bankruptcy Procedure 8006 . . . . . passim

(v)

## I.  STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Appellees The Grand Union Company ("Grand Union"),
Grand Union Capital Corporation ("Capital"), and Grand Union
Holdings Corporation ("Holdings") (collectively, the
"Debtors") submit this brief in opposition to the appeal of
Appellant William Kuntz, III ("Kuntz") from an Order, dated
February 29, 1996 (McKelvie, J.) (the "Order"), of the
United States District Court for the District of Delaware,
dismissing Kuntz's consolidated appeal from: (1) Order
Approving Settlement Concerning Claims By Zero Coupon
Noteholders Pursuant To Bankruptcy Rule 9019 (the
"Settlement Order") of the United States Bankruptcy Court
for the District of Delaware (Walsh, J.) (the "Bankruptcy
Court") entered in Case Nos. 95-84, 95-130 and 95-172; (2)
Findings of Fact, Conclusions Of Law And Order Under 11
U.S.C. § 1129 Confirming Second Amended Plan Of
Reorganization Proposed By The Grand Union Company (the
"Confirmation Order") of the Bankruptcy Court entered in
Case No. 95-84; (3) Order Approving Rejection of Leases For
The Waterford, New York Distribution Center (the "Waterford
Order") of the Bankruptcy Court entered in Case No. 95-84;
and (4) Order Approving Continuation of Supplemental
Retirement Program For Key Employees And Executive Severance
Program (the "SERP Order") of the Bankruptcy Court entered
in Case No. 95-84 (collectively, the "Bankruptcy Court
Orders").  A copy of the District Court's Memorandum, dated

February 29, 1996 (the "Memorandum"), and the Order is included in the Addendum hereto.

The jurisdiction of the Bankruptcy Court was derived from 28 U.S.C. § 1334. The proceedings giving rise to each of the Bankruptcy Court Orders were core proceedings under 28 U.S.C. § 157(b)(2)(A) and/or (L). Each of the Bankruptcy Court Orders constituted a final order over which the District Court had appellate jurisdiction pursuant to 28 U.S.C. §§ 158(a) and 1334(a).

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d), which gives the courts of appeals jurisdiction over "final decisions, judgments, orders and decrees" entered pursuant to 28 U.S.C. § 158(a).

## II.  **STATEMENT OF ISSUES FOR REVIEW**

1.   Did the District Court properly dismiss Kuntz's appeals from the Settlement Order and the SERP Order as jurisdictionally defective because of Kuntz's failure to file timely notices of appeal?

2.   Did the District Court properly exercise its discretion in dismissing Kuntz's appeals from each of the Bankruptcy Court Orders because of Kuntz's failure to file timely designations of items for inclusion in the record on appeal from each Order?

Appellees submit that the Order of the District Court was correct in all respects and should be affirmed.

III.  **STANDARD OF APPELLATE REVIEW**

The Court of Appeals exercises plenary review of the legal conclusions reached by the district courts, <u>FMC Corp. v. United States Dep't of Commerce</u>, 29 F.2d 833, 838 (3d Cir. 1994), but reviews findings of fact for clear error.  <u>Universal Minerals, Inc. v. C.A. Hughes & Co.</u>, 669 F.2d 98, 101-02 (3d Cir. 1981).  In reviewing a determination that involves a discretionary balancing of equitable and prudential factors, such as dismissal of an appeal pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure, this Court reviews the decision of the District Court for abuse of discretion.  <u>In re Continental Airlines</u>, 91 F.3d 553, 560 (3d Cir. 1996).

IV.  **STATEMENT OF THE CASE**

A.   <u>Statement of Facts</u>

On January 25, 1995, Grand Union filed a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  A9.[1]  Grand Union was a wholly-owned subsidiary of Capital.  A9.  Capital was, in turn, a wholly-owned subsidiary of Holdings.  A9. Capital's only significant asset was its ownership interest in Grand Union.  A9.

On February 6, 1995, certain members of a then-unofficial subcommittee of holders of 15% Senior Zero Coupon Notes Due 2004, Series A and B, and 16.5% Senior

---

[1]    References to "A__" refer to the Appendix filed by Appellees.

Subordinated Zero Coupon Notes Due 2007, Series A and B (the "Zero Notes") issued by Capital and guaranteed by Holdings (the "Informal Zero Committee") filed an involuntary chapter 11 petition against Capital. A10. Capital consented to the entry of an Order for relief on February 16, 1995, in the Capital case. A10. On February 16, 1995, Holdings filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A10. Capital and Holdings remained in possession of their respective assets and continued to manage their affairs as debtors and debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. A10-11. Subsequent to the issuance of the Bankruptcy Court Orders, Capital's and Holdings' bankruptcy cases were dismissed and those corporations were dissolved. A copy of the Bankruptcy Court Order dismissing these cases and the corporations' respective certificates of dissolution are included in the Addendum.

On February 6, 1995, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Grand Union case (the "Official Committee"). A11. The U.S. Trustee appointed an official committee of unsecured creditors in the Capital case (the "Capital Committee") on March 3, 1995.

On February 23, 1995, the Informal Zero Committee filed a Motion to Substantively Consolidate the Chapter 11 Cases of Grand Union and Capital (the "Substantive Consolidation Motion") in the Capital case, requesting that

the Bankruptcy Court substantively consolidate the Grand
Union case and the Capital case. A11.  Shortly after the
U.S. Trustee appointed the Capital Committee, the Capital
Committee adopted the Substantive Consolidation Motion.
A11.

On April 19, 1995, the Bankruptcy Court approved
the disclosure statement for the Second Amended Chapter 11
Plan of The Grand Union Company, dated as of April 19, 1995
(as confirmed, the "Plan"). A11.

1.   The Settlement Order

After Grand Union and the Capital Committee
engaged in extensive document and deposition discovery in
connection with the Substantive Consolidation Motion, they
reached a proposed settlement (the "Settlement"). A12.  The
Settlement provided for, inter alia, Grand Union's issuance,
under the Plan and subject to certain conditions, of two
series of warrants (the "Warrants") to holders of Zero
Notes.  Both series of Warrants have a term of five (5)
years from the effective date of the Plan. A12.  Series 1
Warrants consist of 300,000 Warrants with an exercise price
of $30.00 per share of new common stock. A12.  Series 2
Warrants consist of 600,000 Warrants with an exercise price
of $42 per share of new common stock. A12.  Approximately
seventy percent of the outstanding Zero Notes were held by
members of the Capital Committee who were signatories to the
Settlement Agreement. A12.

A hearing was scheduled for May 18, 1995 to consider the Debtors' Joint Motion for an Order Approving Settlement Concerning Claims By Zero Noteholders Pursuant To Bankruptcy Rule 9019 (the "9019 Motion"). A13-14.  On May 16, 1995, two days before the hearing on the 9019 Motion, Kuntz -- who purportedly owns Zero Notes -- filed a "notice of appeal," dated May 8, 1995, from the then non-existent Settlement Order.[2]  A13.  After hearing from all interested parties and from Kuntz at the hearing on May 18, the Bankruptcy Court granted the 9019 Motion and signed the Settlement Order.  A13.

On May 19, the Clerk of the Bankruptcy Court entered the Settlement Order in the Grand Union and Capital cases.  A13.  On May 30, 1995, the Clerk of the Bankruptcy Court entered the Settlement Order in the Holdings case. A13.  Kuntz did not file a notice of appeal from the Settlement Order after the Bankruptcy Court's announcement of its decision to grant the 9019 Motion on May 18 or after the entry of the Settlement Order in the Grand Union and Capital cases on May 19 or in the Holdings case on May 30. A13.  Nor did Kuntz seek either a stay of the Settlement Order pending his appeal or an expedited appeal.  A14. Kuntz filed a designation of the items to be included in the record on appeal from the Settlement Order on May 31, 1995,

---

[2]    Kuntz advised the Bankruptcy Court at the May 18 hearing that he purchased Zero Notes post-petition. A60-63.

fifteen days after he filed his "notice of appeal." A17;
A64.

### 2. The Confirmation Order

On May 31, 1995, the Bankruptcy Court confirmed
the Plan and signed the Confirmation Order. A14. Grand
Union declared the Plan effective on June 15, 1995. A15.
The Clerk of the Bankruptcy Court entered the Confirmation
Order on May 31, 1995. A14. On June 12, 1995, twelve days
after entry of the Confirmation Order, Kuntz filed a notice
of appeal from the Order of the Bankruptcy Court entered "on
or about the 31st of May, 1995." He did not seek a stay of
the Confirmation Order or an expedited appeal. A14. On
June 26, 1995, fourteen days after he filed his notice of
appeal, Kuntz filed his designation of items for inclusion
in the record on appeal from the Confirmation Order. A14.

### 3. The SERP and Waterford Orders

#### (a) The SERP Motion

On April 1, 1993, Grand Union implemented a
Supplemental Retirement Program for Key Employees (the
"Retirement Program") to encourage and enable Grand Union to
attract, motivate and retain key executives and, at the same
time, recognize executives' years of loyal service and
contribution to Grand Union's success. A226. In addition,
Grand Union implemented an Executive Severance Program (the
"Severance Program," together with the Retirement Program,
the "Programs") to ensure that a dedicated, qualified, and
productive group of key employees and executives continued

in Grand Union's employ.  A226.  Grand Union determined that
it was in the best interest of the Grand Union estate and
its creditors to continue the Programs with certain
modifications.  A226.  Accordingly, on May 9, 1995, Grand
Union filed a Motion For Order Authorizing And Approving (A)
Continuation As Modified Of Debtor's (i) Supplemental
Retirement Program For Key Employees And (ii) Executive
Severance Program And (B) The Debtor's Entry Into Revised
Non-Competition Agreements With Certain Key Employees, Each
Subject To Confirmation Of The Plan (the "SERP Motion").
A226; A321.

> (b)   The Waterford Motion

Grand Union operated a warehouse facility in
Waterford, New York, in which it stored grocery, frozen food
and perishable goods for distribution to over 100 of its
stores located in Vermont, New Hampshire and upstate New
York (the "Facility").  A227.  Grand Union operated the
Facility pursuant to three leases (grocery, frozen foods and
perishables) with three separate landlords.  A227.  After
reviewing the operation of the Facility, Grand Union
determined that it was no longer economical to operate the
Facility pursuant to the leases, and it would be more
economical to outsource distribution services to a third
party.  A227.  In addition, Grand Union concluded that, due
to the Facility's unique nature and isolated location, no
market existed for the leases.  A227.  As a result, Grand
Union determined to cease operations at the Facility and, on

May 9, 1995, it filed a Motion For Order Authorizing Rejection Of Certain Unexpired Leases For Property At The Waterford, New York Distribution Center (the "Waterford Motion"). A227.

The Bankruptcy Court held hearings on the SERP Motion and the Waterford Motion on May 18, 1995. At the conclusion of these hearings, the Bankruptcy Court granted each motion. A226; A229. On May 19, 1995, the Clerk of the Bankruptcy Court entered the SERP Order. A230. The Clerk of the Bankruptcy Court entered the Waterford Order on June 7, 1995. On May 24, 1995, Kuntz filed a motion for extension of time "until the second week of June" to file a notice of appeal from the Waterford and SERP Orders (the "Extension Motion"). A231. On June 19, 1995, Kuntz filed a notice of appeal from the Waterford and SERP Orders. A231. Kuntz did not seek a stay of, or expedited appeal from, the Waterford or SERP Orders. A231.

On June 30, 1995, the Bankruptcy Court denied Kuntz's Extension Motion as moot. A232; A559. The Bankruptcy Court found that even if it had granted Kuntz's Extension Motion, Kuntz would have been required to file his notices of appeal by June 16, 1995, whereas Kuntz did not file his notice of appeal until June 19, 1995. A561. On July 24, Kuntz filed his designations of items for inclusion in the record on appeal from the SERP Order and the Waterford Order. A232.

B.   The Debtors' Motion to Dismiss
     and the District Court Opinion

On September 11, 1995, the Debtors filed a Joint
Motion To Consolidate Appeals And Dismiss Consolidated
Appeal, pursuant to which they sought consolidation of
Kuntz's appeals from the Settlement Order and the
Confirmation Order and dismissal of the consolidated appeal
(the "Consolidation and Dismissal Motion").  In the
Consolidation and Dismissal Motion, the Debtors sought
dismissal of Kuntz's appeals from the Settlement Order and
the Confirmation Order on the grounds that: (1) the notice
of appeal from the Settlement Order was jurisdictionally
defective; (2) Kuntz lacked standing to appeal from the
Settlement Order and the Confirmation Order in the Grand
Union case; (3) the designations of the records on appeal
from the Settlement Order and the Confirmation Order were
untimely; and (4) the appeals from the Settlement Order and
the Confirmation Order were moot due to the substantial
consummation of the Settlement and the Plan since the filing
of the notices of appeal.  A4.

Thereafter, on October 19, 1995, Grand Union filed
its Motion To Dismiss Appeal, pursuant to which it sought to
dismiss Kuntz's appeal from the SERP Order and the Waterford
Order on the grounds that: (1) the notice of appeal from the
SERP Order was filed untimely; (2) the record designations
for the appeal from the SERP Order and the Waterford Order
were untimely; (3) Kuntz lacked standing to appeal from the

SERP Order and the Waterford Order; and (4) the appeal from the Waterford Order was moot due to events occurring subsequent to, and in reliance on, the Waterford Order. A218.

On October 20, 1995, the District Court consolidated all four appeals, and then dismissed the consolidated appeal in the Order.  The District Court dismissed Kuntz's appeals from the Settlement Order and the SERP Order on the ground that Kuntz's notices of appeal from those orders were jurisdictionally defective.  It held that Kuntz's notices of appeal were not filed within the time prescribed by Rule 8002(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Memorandum at 7 & 9. With respect to the Settlement Order, the District Court concluded that:

> Kuntz filed his notice of appeal of the Settlement order two days before the Bankruptcy Court announced it would issue the order.  This does not fall within the time prescribed by FRBP 8002(a).  While FRBP 8002(a) does provide that a notice of appeal filed after announcement of an Order but before entry of the Order shall be treated as filed after the entry of the order, this "safe harbor" provision does not apply to Kuntz.  He filed his notice of appeal before the announcement of the Settlement Order.

Id. at 7.  With respect to the SERP Order, the District Court found that the notice of appeal was filed "long after the time allowed by FRBP 8002(a)."  Id. at 9.

In addition, the District Court dismissed Kuntz's appeals from each of the Bankruptcy Court Orders on the ground that Kuntz had not timely filed his designations of the records on appeal pursuant to Bankruptcy Rule 8001(a). The District Court concluded:

> Kuntz was nearly a week late with the designations for the appeals of the Settlement and Confirmation Orders, and he was nearly a month late with the designations for the appeals for the Waterford and SERP Orders. The only explanation Kuntz offers in his otherwise evasive and pejorative answering brief is that he cannot afford to send documents to the court by overnight mail. If Kuntz cannot afford overnight mail, then he has an obligation to send his filings by regular U.S. Mail so that they will arrive in a timely manner. Moreover, Kuntz's protestations of poverty are ironic in juxtaposition with the vague hints in his answering brief that he may own as much as $8 million in GUCC securities.
>
> Kuntz's status as a pro se plaintiff provides him with no excuse for failing to abide by the procedural rules of this court and the Bankruptcy Court. Kuntz has considerable litigation experience. In one case alone, a district court judge commented that Kuntz "has amassed litigation experience that would embarrass the majority of associates, and some partners, at large New York law firms." <u>Kuntz</u>, 160 B.R. at 39. In addition Kuntz has had many of his cases dismissed for failure to abide by procedural rules or for other abuses of the appellate system. . . . Thus, Kuntz was aware of FRBP 8006, and it was within his ability to comply with the rule.

Memorandum at 11-13 (citations omitted). The District Court, therefore, found that Kuntz had acted in bad faith in

failing to file timely record designations for his appeals from each of the Bankruptcy Court Orders.  Id. at 13.[3]

## SUMMARY OF ARGUMENT

The District Court properly dismissed Kuntz's appeals from the Settlement Order and the SERP Order on the ground that his notices of appeal were jurisdictionally defective.  The District Court correctly held that Kuntz's "notice of appeal" from the Settlement Order was premature and that his notice of appeal from the SERP Order was late under Rule 8002 of the Bankruptcy Rules.

In addition, the District Court properly exercised its discretion in dismissing Kuntz's appeals from each of the Bankruptcy Court Orders because of Kuntz's failure to

---

[3]    The District Court did not reach the issues of Kuntz's standing to appeal or the mootness of his appeals from the Settlement Order, the Confirmation Order and the Waterford Order.  However, in a Memorandum Opinion, dated August 27, 1996, the District Court dismissed Kuntz's appeal from an Order of the Bankruptcy Court, dated September 19, 1995, awarding professional fees and expenses in the Grand Union case.  There, the District Court dismissed Kuntz's appeal on the ground of equitable mootness, as recently articulated by this Court in In re Continental Airlines, 91 F.3d 553 (3d Cir. 1996).  In doing so, the District Court concluded that Grand Union's "reorganization plan has been substantially, if not entirely, consummated." Memorandum at 8.  The District Court also concluded that Kuntz's appeal was frivolous and that Kuntz "deliberately delayed the disposition of this frivolous appeal by failing to comply with the rules of procedure."  Id. at 13.  The District Court further ruled that, upon the request of any of the appellees, it will hold a hearing to determine whether Kuntz should be sanctioned under Rule 38 of the Federal Rules of Appellate Procedure.  A copy of the District Court's Memorandum and its Order, dated August 27, 1996, is included in the Addendum.

file record designations on a timely basis. Dismissal of
Kuntz's appeals under Bankruptcy Rule 8001(a) was
appropriate in light of Kuntz's chronic, unjustifiable
failure to abide by procedural rules with which he is well-
versed.

## ARGUMENT

### POINT I

#### THE DISTRICT COURT PROPERLY DISMISSED KUNTZ'S APPEALS FROM THE SETTLEMENT ORDER AND THE SERP ORDER ON THE GROUND THAT HIS NOTICES OF APPEAL WERE JURISDICTIONALLY DEFECTIVE

The District Court properly dismissed Kuntz's·
appeals from the Settlement Order and the SERP Order as
jurisdictionally defective. Bankruptcy Rule 8001(a) governs
appeals from the bankruptcy courts and provides, in
pertinent part: "An appeal from a final judgment, order, or
decree of a bankruptcy judge to a district court or
bankruptcy appellate panel shall be taken by filing a notice
of appeal with the clerk within the time allowed by Rule
8002." Bankruptcy Rule 8002(a) provides in pertinent part:
"The notice of appeal shall be filed with the clerk of the
bankruptcy court within 10 days of the date of the entry of
the judgment order or decree appealed from."

This Court has strictly construed the ten-day time
limit imposed by Bankruptcy Rule 8002 and has consistently
held that failure to file a timely notice of appeal is a
jurisdictional defect barring appellate review. _Whitemere_

<u>Dev. Corp. v. Township of Cherry Hill</u>, 786 F.2d 185, 187 (3d Cir. 1986) (affirming dismissal of debtors' appeal from April 20, 1984 bankruptcy court order because appeal was filed on November 9, 1984); <u>In re Universal Minerals, Inc.</u>, 755 F.2d 309, 310 (3d Cir. 1985) (dismissing appeal when notice of appeal was filed four days late); <u>Szostek v. Hart</u>, 123 B.R. 719 (E.D. Pa. 1991) (dismissing appeal when notice was filed from three separate orders and was two days late with respect to one order), <u>aff'd in part and appeal dismissed in part</u>, 941 F.2d 242 (3d Cir. 1991).

A.    Dismissal of Kuntz's
      <u>Appeal From the Settlement Order</u>

The Bankruptcy Court announced its decision to grant the 9019 Motion on May 18 and signed the Settlement Order that same day. The Settlement Order was entered by the Clerk of the Bankruptcy Court in the Grand Union and Capital cases on May 19 and in the Holdings case on May 30. A13. Kuntz never filed a notice of appeal from the Settlement Order after the Bankruptcy Court announced its decision to grant the 9019 Motion. Nor was a notice of appeal filed within ten days of entry of the Settlement Order, as required by Bankruptcy Rule 8002(a). A13.

Kuntz's "notice of appeal" was filed on May 16 -- two days <u>before</u> the hearing on the 9019 Motion. It purported to appeal from a then <u>non-existent</u> order entered:

> ON OR ABOUT THE 18TH OF MAY, 1995 OR
> SHORTLY THEREAFTER WITH REGARDS TO A
> NOTICE OF HEARING SET ON THE 18TH OF
> MAY, 1995 WITH REGARDS TO A SETTLEMENT

> BETWEEN THE HOLDERS OF CERTAIN 0% NOTES
> WHO COMPRISE THE OFFICIAL COMMITTEE OF
> THE 0% NOTEHOLDERS WHO PURPORT TO
> REPRESENT THE BEST INTEREST OF THE
> NOTEHOLDERS.

The transmittal letter, dated May 8, 1995, that accompanied this "notice of appeal" states: "ENCLOSED PLEASE FIND NOTICE OF APPEAL TO US DISTRICT COURT WITH REGARDS TO THE PROPOSED SETTLEMENT ON THE 0% NOTES OF GRAND UNION CAPITAL CORPORATION." A55. Thus, Kuntz purported to appeal from the Settlement Order -- or, more accurately, from the proposed Settlement -- ten days in advance of the May 18 hearing on the 9019 Motion. Kuntz never appealed from the Settlement Order itself. Kuntz's "notice of appeal" was, therefore, a nullity, and the District Court properly dismissed his appeal from the Settlement Order as jurisdictionally defective. Memorandum at 6 & 7.

Although research has not revealed any decision addressing this unusual procedural posture under Bankruptcy Rule 8002(a), an analogous case was decided under Rule 4(a)(2) of the Federal Rules of Appellate Procedure (the "Appellate Rules") -- which served as the model for Bankruptcy Rule 8002(a).[4]  In <u>Brent v. Superintendent</u>, 34

---

[4]    Rule 8002(a)'s "savings" provision is substantially identical to Rule 4(a)(2), which was added in 1979. The Advisory Committee's note to Rule 8002 states that Rule 8002 is "an adaptation of Rule 4(a) of the Federal Rules of Appellate Procedure." <u>See also</u> <u>Universal Minerals</u>, 755 F.2d at 312. Furthermore, "[t]he Bankruptcy Rules are designed to be as consistent with the Rules of Civil Procedure as bankruptcy subject matter allows." <u>Whitemere</u>, 786 F.2d at 197.

Fed. Rules Serv. 2d 367 (4th Cir. 1982),[5] a pro se plaintiff
filed a petition for a writ of habeas corpus to review a
state criminal conviction.  After a series of letters from
Brent requesting an evidentiary hearing on his petition, the
district court informed the parties that it did not consider
an evidentiary hearing necessary at that time.  Brent
immediately filed a "Motion for Leave to File Petition for
Common Law Writ of Certiorari" on June 11, 1981.
Thereafter, the district court denied Brent's petition and
entered its order on June 23, 1981.

On September 2, 1981, Brent refiled his "Motion,"
which the district court construed as a notice of appeal.
Although the district court concluded that the notice of
appeal was untimely, it granted a certificate of probable
cause to permit the Fourth Circuit to determine whether the
June 11 "Motion," although filed prematurely, was sufficient
to bring the order of the district court denying the
petition up for review.  In dismissing Brent's appeal as
untimely, the Fourth Circuit held:

> Rule 4(a)(1) of the Federal Rules of
> Appellate Procedure provides that a
> notice of appeal shall be filed with the
> clerk of the district court within
> thirty days after entry of the judgment.
> Nevertheless, it has been suggested that
> an appeal should not be dismissed as
> technically premature if in fact an
> appealable order was entered below, the
> appellant clearly manifests an intent to
> appeal that order, and the opposing

---

[5]   A copy of the Fourth Circuit's opinion in <u>Brent</u> is
included in the Addendum.

party claims no prejudice from the
prematurity of the notice . . . .Thus, a
premature notice of appeal may be
considered effective if filed after the
decision of the court is announced, but
prior to the formal entry of the
judgment, Rule 4(a)(2), Fed R App P;
<u>Lemke v. United States</u>, 346 US 325
(1953); <u>Matter of Grand Jury Empanelled
January 21, 1975</u>, 541 F2d 373 (3d Cir.
1976); <u>Hodge v. Hodge</u>, 507 F2d 87 (3d
Cir. 1975).

We are aware that this court must
liberally view the sufficiency of a
notice of appeal, <u>see</u> <u>Foman v. Davis</u>,
371 US 178 (1962); however, "since the
jurisdiction of the appellate court is
determined by the timeliness and
specific terms of the notice, it cannot
be modified to cover a judgment not
included by any reasonable
interpretation." <u>Gunther v. E.I. DuPont
de Nemours & Co.</u>, 255 F2d 710, 717 (4th
Cir 1958). <u>Here, the documents which
would be considered as a notice of
appeal predate not only the judgment,
but also any indication of the eventual
disposition of the action. Because of
the prematurity, Brent could not
indicate his intent to appeal a
specified judgment of the district
court. Brent had the opportunity to
file a timely notice of appeal and
failed to do so. The "Motion" of June
11, 1981, does not constitute an
effective notice of appeal of the
district court judgment of June 23,
1981</u>.

<u>Id.</u> at 367-68 (emphasis in original and added).[6]  The

---

[6]    This Court's decisions in <u>Knight v. Brown Transport
Corp.</u>, 806 F.2d 479 (3d Cir. 1986), and <u>Cape May
Greene, Inc. v. Warren</u>, 698 F.2d 179 (3d Cir. 1983),
are not to the contrary.  In <u>Knight</u> and <u>Cape May
Greene</u>, this Court held that a notice of appeal filed
<u>after</u> announcement and entry of a non-final order that
became final subsequent to the filing of the notice of
appeal and before the this Court addressed the appeal
became effective when the order became final, in the
(continued...)

District Court properly relied on <u>Brent</u> in holding that Kuntz's "notice of appeal" was jurisdictionally defective. Memorandum at 8 & 9.

The District Court's decision was also consistent with fundamental policy considerations. First, to construe Kuntz's notice of appeal as effective when filed on May 16 would have the anomalous effect of rendering the Settlement Order a nullity. "The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the [appellate court] and divests the [trial] court of its control over those aspects of the case involved in the appeal." <u>Griggs v. Provident Consumer Discount Co.</u>, 459 U.S. 56, 58 (1982); <u>Venen v. Sweet</u>, 758 F.2d 117 (3d Cir. 1985) (dismissing appeal from, and vacating, orders entered in district court after notice of appeal filed). If Kuntz's notice of appeal were not premature, but effective, on May 16, it would have divested the bankruptcy court of jurisdiction to hear the 9019 Motion and to issue the Settlement Order, rendering the Settlement Order a nullity. Were that the law, a party anticipating an adverse decision could prematurely file a notice of appeal and thereby divest the court of jurisdiction, precluding the issuance of an anticipated adverse order or judgment. To

---

[6](...continued)
    absence of prejudice to the appellees.    <u>Knight</u> and <u>Cape May Greene</u> have no applicability here.

permit such conduct would wreak havoc on the ability of trial courts to control their dockets.

For obvious reasons, appellate courts have routinely refused to condone such abusive conduct.  See Cleaver v. Elias, 852 F.2d 266 (7th Cir. 1988) (dismissing premature appeal and imposing sanctions under Rule 38 of the Appellate Rules, stating:  "A premature notice of appeal disrupts proceedings in the district court.  That court must put the case aside and wait for [the appellate court] to send the record back.  Such a notice also imposes unjustified costs on the adversary, whose lawyers must monitor the case and file papers in two courts at once, and on the judges who must set things straight.");  Century Laminating, Ltd. v. Montgomery, 595 F.2d 563, 568 (10th Cir.), cert. granted, 444 U.S. 897, cert. dismissed, 444 U.S. 987 (1979) (dismissing premature appeal stating: "Litigants -- appellees as well as appellants -- have a right to rely upon conformity by their adversaries with applicable statutes and rules, especially when compliance with the rule is a jurisdictional prerequisite to the appeal itself.  Expense, inconvenience, and what a litigant may believe to be injustice, are unavoidable consequences of failure to abide by a statute or rule, e.g., a statute of limitation");  In re Harbour House Operating Corp., 724 F.2d 1, 2 (1st Cir. 1983) (appeal of nonfinal judgment dismissed as premature because "[n]eglecting [the final judgment] rule results in the theoretical inconsistency of two courts

exerting simultaneous jurisdiction over a single case, with
the concomitant practical problem of two courts deliberating
simultaneously on the merits of an order").[7]

Finally, to construe Kuntz's notice of appeal as
effective on May 16 would also run counter to the threshold
requirement that a party have standing before he may be
heard in court.  Under Article III of the Constitution,
federal courts have jurisdiction to entertain a case or
controversy when a party has suffered "some threatened or
actual injury," Warth v. Seldin, 422 U.S. 490, 498-99
(1975), which, "must be both 'real and immediate' not
'conjectural' or 'hypothetical.'" O'Shea v. Littleton, 414
U.S. 488, 494 (1974) (citations omitted).  The requirement
that a party suffer a threatened or actual injury in order
to have standing applies in both trial and appellate courts.
See Deposit Guar. Nat'l. Bank v. Roper, 445 U.S. 326, 333
(1980) (party must be "aggrieved" by district court judgment
or order in order to have standing to appeal).  In In re
Dykes, 10 F.3d 184, 187 (3d Cir. 1993), this Court stated
that a person must be "aggrieved" to have standing to appeal
from a bankruptcy court's ruling and held that a person is

---

[7]     Of course, if a notice of appeal is found to have been
premature, it is a nullity and does not divest the
district court of jurisdiction. See, e.g., Mondrow v.
Fountain House, 867 F.2d 798 (3d Cir. 1989).  Here,
Kuntz's notice of appeal from the Settlement Order was
premature and, therefore, did not divest the Bankruptcy
Court of jurisdiction to grant the 9019 Motion and
issue the Settlement Order.

aggrieved "if the order diminishes their property, increases their burdens, or impairs their rights."[8]

On the date Kuntz's notice of appeal was filed, May 16, the Bankruptcy Court had not announced its decision on the 9019 Motion. In fact, it had not yet even held a hearing on the 9019 Motion and had expressed no view on the merits of the motion. As a result, Kuntz could not possibly have been injured or aggrieved in any way when his notice of appeal was filed. Even if Kuntz, for reasons known only to himself, had anticipated that the Bankruptcy Court would grant the 9019 Motion on May 18, his purported injury on May 16 when his notice of appeal was filed was at best "conjectural" and "hypothetical." Such a "conjectural" and "hypothetical" injury is insufficient, as a matter of law, to render Kuntz aggrieved for purposes of entitling him to file a notice of appeal at that point in time.

B.    The Dismissal of Kuntz's
      Appeal from the SERP Order

The Clerk of the Bankruptcy Court entered the SERP Order on May 19, 1995. A12. Pursuant to the ten-day

---

[8]    In fact, "the standing requirement in bankruptcy appeals is more restrictive than the 'case or controversy' standing requirement of Article III, which need not be financial and need only be 'fairly traceable' to the illegal action." Travelers Ins. Co. v. H.K. Porter Co., Inc., 45 F.3d 737, 741 (3d Cir. 1995) (citations omitted); see also In re Lifeco Inv. Group, Inc., 173 B.R. 478, 487 (Bankr. D. Del. 1994) (bankruptcy court denied motions made by creditor of creditor for lack of standing and "reject[ed] the proposition that anyone with an economic stake in the outcome of a bankruptcy case has standing to participate in that case").

requirement of Bankruptcy Rule 8002(a), Kuntz was required
to file his notice of appeal with the Clerk of the
Bankruptcy Court on or before May 29, 1995.  Kuntz did not
file his notice of appeal from the SERP Order until June 19,
1995, twenty-one days late.  A16.  Kuntz's "[f]ailure to
file a timely notice of appeal thus deprive[d] the district
court of jurisdiction to review the Bankruptcy Court's order
or judgment."  <u>Universal Minerals</u>, 755 F.2d at 312.  The
District Court, therefore, properly dismissed Kuntz's appeal
from the SERP Order as jurisdictionally defective.[9]
Memorandum at 9 & 10.

### POINT II

THE DISTRICT COURT PROPERLY<br>
EXERCISED ITS DISCRETION IN DISMISSING<br>
KUNTZ'S APPEALS FROM EACH OF THE BANKRUPTCY<br>
COURT ORDERS BECAUSE OF HIS FAILURE<br>
<u>TO DESIGNATE THE RECORDS ON APPEAL ON A TIMELY BASIS</u>

The District Court properly exercised its
discretion in dismissing Kuntz's appeals from each of the
Bankruptcy Court Orders for failure to designate the items
for inclusion in the record on appeal on a timely basis.
Bankruptcy Rule 8006 provides that "within 10 days after
filing the notice of appeal . . . the Appellant shall file
with the clerk and serve on the appellee a designation of
the items to be included in the record on appeal and a

---

[9]    Although Kuntz did move for an extension of time to
file his notice of appeal from the SERP Order, the
Bankruptcy Court properly denied the motion as moot
because Kuntz filed his notice of appeal even later
than the date he requested in his Extension Motion.
Memorandum at 9 & 10.

statement of the issues to be presented." Pursuant to
Bankruptcy Rule 8001(a), failure of an appellant to file a
timely designation of the record gives the district court
discretion "for such action as the district court
. . . deems appropriate, which may include dismissal of the
appeal." Bankruptcy Rule 8001(a); In re Solis, 95 Civ 0356,
1995 WL 311781 (S.D.N.Y. May 19, 1995) (dismissing appeal
for failure to file timely designation of record).

Kuntz filed his "notice of appeal" from the
Settlement Order on May 16, 1995. Accordingly, pursuant to
Rule 8006, his designation of items to be included in the
record should have been filed on or before May 26, 1995.
Kuntz did not file his designations until May 31 -- five
days late. A13. Kuntz filed his notice of appeal from the
Confirmation Order on June 12, 1995. He did not file his
designation of items to be included in the record on that
appeal until June 26 -- four days late. A14. Finally,
Kuntz filed his notice of appeal from the SERP and Waterford
Orders on June 19, 1995. He did not file his designation of
items to be included in the record on appeal from those
Orders until July 24, 1995-- 35 days late. A231.

In determining whether to dismiss an appeal based
on an untimely designation of the record on appeal under
Bankruptcy Rule 8006, courts focus on whether the
appellant's delay was due to bad faith or if the delay
caused prejudice to the appellee or third parties. In re
Comer, 716 F.2d 168, 177 (3d Cir. 1983). Here, the District

Court properly focused on whether Kuntz's failure to comply
with Bankruptcy Rule 8006 was attributable to inadvertence
or, instead, to bad faith.  As the District Court noted,
Kuntz is no stranger to the federal courts or to the rules
of bankruptcy procedure.  Kuntz has regularly had his
appeals dismissed for failing to comply with timing
requirements or for otherwise ignoring or abusing appellate
procedure.  See Kuntz v. Board of Assessment of Westport,
621 N.Y.S.2d 942 (3d Dep't 1995) (appeal dismissed as
untimely, and Kuntz's "conduct in moving to reargue a
patently meritless issue constituted frivolous conduct");
Kuntz v. Nova Vista Indus., Inc., 91 Civ 7222, 1992 WL 60395
(S.D.N.Y. Mar. 9, 1992) (appeal dismissed as abandoned
because Kuntz failed to serve and file brief in support of
his appeal, and despite notice, Kuntz failed to appear for
pretrial conference), aff'd, 14 F.3d 590 (2d Cir. 1993);  In
re One Westminster Co., 74 B.R. 37 (D. Del. 1987) (motion
dismissed for lack of jurisdiction because Kuntz failed to
seek timely stay pending appeal); Dayton Arcade Community
Dev. Corp. v. Dayton, No. CA 10109, 1987 WL 6251 (Ohio Ct.
App. Feb. 6, 1986) (judgment of trial court affirmed because
Kuntz filed appeal ten months after entry of final judgment,
and Kuntz "failed to provide this reviewing court with
anything of substance to portray the alleged error"); In re
Kuntz, No. CA 9723, 1986 WL 14771 (Ohio Ct. App. Dec. 17,
1986) (upon Kuntz's third appeal in same case, court
overruled each assignment of error because there was

"absolutely nothing in record . . . to support Kuntz's allegation [of error]").

Kuntz v. Pardo, 160 B.R. 35 (S.D.N.Y. 1993), is particularly apposite. In Pardo, the bankruptcy court entered a final order, and Kuntz filed a notice of appeal but failed to file a timely designation of the record pursuant to Bankruptcy Rule 8006. The district court dismissed the appeal. When Kuntz finally did file his designation of the record -- three weeks late -- the district court declined to reinstate the appeal. The court found no excusable neglect, and found that Kuntz's "consistent pattern of vexatious litigation and little respect for the courts or other parties . . . [and] Kuntz's dilatory conduct throughout his participation in the [case] evinced bad faith." Id. at 38.

Here, the record amply supports the District Court's exercise of discretion under Rule 8006 of the Bankruptcy Rules in dismissing Kuntz's appeals from each of the Bankruptcy Court Orders. As the District Court held:

> Kuntz was nearly a week late with the designations for the appeals of the Settlement and Confirmation Orders, and he was nearly a month late with the designations for the appeals of the Waterford and SERP Orders. The only explanation Kuntz offers in his otherwise evasive and pejorative answering brief is that he cannot afford to send documents to the court by overnight mail. If Kuntz cannot afford overnight mail, then he has an obligation to send his filings by regular U.S. Mail so that they will arrive at the court in a timely manner.

Memorandum at 11.    In sum, no reason exists to disturb the District Court's exercise of discretion, and the Order should be affirmed in all respects.

08-13555-mg    Doc 830    Filed 10/11/08    Entered 10/11/08 13:18:34    Main Document
Pg 50 of 111

## CONCLUSION

For the foregoing reasons, Appellees The Grand Union Company, Grand Union Capital Corporation, and Grand Union Holdings Corporation respectfully request that this Court affirm the District Court's Order dismissing Appellant's appeals from the Bankruptcy Court Orders, together with such other and further relief as the Court deems just and proper.

YOUNG CONAWAY STARGATT & TAYLOR

James L. Patton, Jr. (No. 2202)
Laura Davis Jones (No. 2436)
S. David Peress (No. 2679)
Scott D. Cousins (No. 3079)
11th Floor, Rodney Square North
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

-and-

WILLKIE FARR & GALLAGHER
Brian E. O'Connor
One Citicorp Center
153 East 53rd Street
New York, New York 10022
(212) 821-8000

Co-Counsel for The Grand
Union Company

SAUL, EWING, REMICK & SAUL
Norman L. Pernick (No. 2290)
Mark Minuti (No. 2659)
222 Delaware Avenue
Suite 1200
P.O. Box 1266
Wilmington, Delaware 19899
(302) 421-6824

-and-

PATTERSON, BELKNAP, WEBB &
TYLER, LLP
David W. Dykhouse
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

Co-Counsel for Grand Union Capital
Corporation and Grand Union
Holdings Corporation


DATED:    September 26, 1996

IN THE UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

IN RE: GRAND UNION COMPANY,     )
d/b/a Big Star; GRAND UNION     )
CAPITAL CORPORATION; GRAND      )
UNION HOLDINGS CORPORATION,     )
                                )
                Debtors         )
————————————————————————————    )
                                )
WILLIAM KUNTZ, III,             )
                                )
                Appellant       )
                                )
        v.                      )    No. 96-7195
                                )
GRAND UNION COMPANY;            )
GRAND UNION CAPITAL             )
CORPORATION                     )
                                )
                Appellees       )
                                )
JOHN R. STONITSCH,              )
                                )
                Trustee         )


On Appeal from the United States
District Court for the District
of Delaware C.A. Nos. 95-529, 95-530,
95-531, 95-591, 95-592 (Consolidated)

CERTIFICATE OF SERVICE


I, S. David Peress, Esquire hereby certify that on September
26, 1996, I caused two copies of the Brief for Appellees to
be served on the following listed below as indicated:

**BY U.S. POSTAL SERVICE, EXPRESS MAIL**

William Kuntz, III
Box 461; Olympic Station
Lake Placid, New York  12946-0461

S. David Peress  (No. 2679)

## ADDENDUM

1.   Memorandum, dated February 29, 1996, and Order, dated February 29, 1996, of the United States District Court for the District of Delaware (McKelvie, J.)

2.   Memorandum Opinion Dismissing William Kuntz, III's Appeal From The Order Of The Bankruptcy Court, dated September 19, 1995, Awarding Professional Fees And Expenses In The Grand Union Company Chapter 11 Bankruptcy Proceeding, dated August 27, 1996, of the United States District Court for the District of Delaware (McKelvie, J.)

3.   Order Granting Joint Motion of Grand Union Capital Corporation And Grand Union Holdings Corporation To Dismiss Chapter 11 Cases And Cross-Motion of Grand Union Capital Corporation To Dismiss Motion Of William Kuntz, III For Appointment Of An Examiner, dated March 27, 1996, of the United States Bankruptcy Court for the District of Delaware  (Walsh, J.)

4.   Certificate of Dissolution of Grand Union Capital Corporation

5.   Certificate of Dissolution of Grand Union Holdings Corporation

6.   Brent v. Superintendent, 34 Fed. Rules Serv. 2d 367 (4th Cir. 1982)

RECYCLED

ALL-STATE® LEGAL   800-222-0510   EG11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIAM KUNTZ, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 95-529-RRM |
| | ) | |
| THE GRAND UNION COMPANY, | ) | CONSOLIDATED |
| also d/b/a Big Star, | ) | |
| | ) | |
| Appellee. | ) | |
| | | |
| WILLIAM KUNTZ, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 95-530-RRM |
| | ) | |
| THE GRAND UNION COMPANY, | ) | |
| also d/b/a Big Star, | ) | |
| | ) | |
| Appellee. | ) | |
| | | |
| WILLIAM KUNTZ, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 95-531-RRM |
| | ) | |
| GRAND UNION CAPITAL | ) | |
| CORPORATION, | ) | |
| | ) | |
| Appellee. | ) | |

WILLIAM KUNTZ,                            )
                                          )
      Appellant,              )
                                          )
  v.                                     )  Civil Action No. 95-591-RRM
                                          )
THE GRAND UNION COMPANY,                  )
also d/b/a Big Star,                      )
                                          )
      Appellee.               )

WILLIAM KUNTZ,                            )
                                          )
      Appellant,              )
                                          )
  v.                                     )  Civil Action No. 95-592-RRM
                                          )
THE GRAND UNION COMPANY,                  )
also d/b/a Big Star,                      )
                                          )
      Appellee.               )

---

## MEMORANDUM OPINION

---

William Kuntz, III, *pro se* appellant

James L. Patton, Esquire, Laura Davis Jones, Esquire, and S. David Peress, Esquire, Young, Conaway, Stargatt & Taylor, Wilmington, Delaware; Brian E. O'Connor, Esquire, and Steven I. Loew, Esquire, Willkie, Farr & Gallagher, New York, New York; Norman L. Pernick, Esquire, and Mark Minuti, Esquire, Saul, Ewing, Remick & Saul, Wilmington, Delaware; David W. Dykhouse, Esquire, Patterson, Belknap, Webb & Tyler LLP, New York, New York, for appellees The Grand Union Company, Grand Union Capital Corporation, and Grand Union Holdings Corporation

Stuart B. Hertzberg, Esquire, David B. Stratton, Esquire, and David. M. Fournier,
Esquire, Pepper, Hamilton & Scheetz, Wilmington, Delaware; William F. McCarthy,
Esquire, and James M. Wilton, Esquire, Ropes & Gray, Boston, Massachusetts, for
intervenor Official Committee of Unsecured Creditors of The Grand Union Company

Kevin Gross, Esquire, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington,
Delaware; Danial H. Golden, Strook & Strook & Lavan, New York, New York, for
intervenor Informal Committee of Senior Secured Noteholders of The Grand Union
Company

---

Wilmington, Delaware

Date:  February 29, 1996

McKELVIE, District Judge

This is a consolidation of four bankruptcy appeals. *Pro se* appellant William Kuntz is the alleged holder of certain unspecified zero coupon notes issued by appellee Grand Union Capital Corporation ("GUCC"). Appellee The Grand Union Company ("GU") is a wholly owned subsidiary of appellee GUCC, which is a wholly owned subsidiary of appellee Grand Union Holdings Corporation ("GUHC").

On January 25, 1995, GU filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "GU Case"). On February 6, 1995, a then informal committee of holders of zero coupon notes issued by GUCC filed an involuntary petition for relief under Chapter 11 against GUCC (the "GUCC Case"). On February 16, 1995, GUCC consented to entry of an order of relief in response to the involuntary petition. On that same day, GUHC filed a voluntary petition for relief under Chapter 11 (the "GUHC Case"). All of these bankruptcy proceedings are now pending in the United States Bankruptcy Court for the District of Delaware.

Kuntz filed notices of appeal relating to four orders of the Bankruptcy Court in these proceedings. Thereafter, the Official Committee of Unsecured Creditors of The Grand Union Company (the "Unsecured Committee") and the Informal Committee of Senior Secured Noteholders of The Grand Union Company (the "Secured Committee") each filed a motion to intervene in these appeals and to consolidate them. Kuntz and the appellees also filed motions to consolidate the appeals. On October 20, 1995, this court

1

consolidated these appeals.

The appellees have filed a joint motion to dismiss all of Kuntz's consolidated appeals. The Secured and Unsecured Committees have each filed a motion joining appellees' joint motion to dismiss. This is the court's decision on the Secured and Unsecured Committees' motions to intervene and the appellees' and Secured and Unsecured Committees' joint motion to dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The court draws the following facts from the briefs filed by Kuntz, the appellees, and the Secured and Unsecured Committees in connection with the motions to intervene and the joint motion to dismiss. Kuntz appeals four orders issued by the Bankruptcy Court in conjunction with the bankruptcy proceedings below: 1) Order Approving Settlement Concerning Claims by Zero Coupon Noteholders Pursuant to Bankruptcy Rule 9019 (the "Settlement Order"); 2) Findings of Fact, Conclusions of Law and Order Under 11 U.S.C. § 1129 Confirming the Second Amended Chapter 11 Plan of Reorganization By The Grand Union Company (the "Confirmation Order"); 3) Order Approving Rejection of Leases For The Waterford, New York Distribution Center (the "Waterford Order"); and 4) Order Approving Continuation of Supplemental Retirement Program For Key Employees and Executive Severance Program (the "SERP Order"). The substance of these orders is irrelevant to the disposition of these appeals. Only the procedural

2

aspects of Kuntz's appeals are relevant.

A.    The Settlement Order

On May 16, 1995, Kuntz filed a notice of appeal with this court "with regards to a settlement between the holders of certain 0% notes who comprise the official committee of the 0% noteholder who purport to represent the best interest of the noteholders." Kuntz apparently was attempting to appeal the Settlement Order, which he stated in his notice that the Bankruptcy Court would issue "on or about the 18th of May, 1995 or shortly thereafter with regards to a notice of hearing set." Kuntz did not file any subsequent notices of appeal with regards to the Settlement Order.

On May 18, 1995, the Bankruptcy Court held a hearing on a settlement agreement between appellee The Grand Union Company and the holders of zero coupon notes issued by GUCC (the "settlement agreement"). On that same date, the Court issued the Settlement Order, which approved the settlement agreement. Also that day, Kuntz obtained a copy of his notice of appeal from the Clerk of the Bankruptcy Court's office and paid his filing fee. Kuntz attached to his answering brief a receipt dated May 18, 1995, for the payment of his filing fee. On May 19, 1995, the Clerk entered the Settlement Order in the GU and GUCC Cases. On May 30, 1995, the Clerk entered the Settlement Order in the GUHC Case. On May 31, 1995, Kuntz filed his designation of items for the record on appeal of the Settlement Order.

3

B.    The Confirmation Order

On May 31, 1995, the Bankruptcy Court issued the Confirmation Order. On June 12, 1995, Kuntz filed a notice of appeal of the Confirmation Order. On June 26, 1995, Kuntz filed his designation of items for the record on appeal of the Confirmation Order.

C.    The Waterford and SERP Orders

On May 18, 1995, the Bankruptcy Court issued the Waterford and SERP Orders. On May 19, 1995, the Clerk entered the SERP Order. On May 24, 1995, Kuntz filed a motion for extension of time "until the second week of June" to file a notice of appeal of the Waterford and SERP Orders (the "extension motion"). On June 7, 1995, the Clerk entered the Waterford Order. On June 19, 1995, Kuntz filed a notice of appeal from the Waterford and SERP Orders.

On June 30, 1995, the Bankruptcy Court denied Kuntz's extension motion as moot. The Bankruptcy Court found that Kuntz's extension motion required Kuntz to file his notices of appeal by June 16, 1995, whereas Kuntz did not file the notices until June 19, 1995. On July 24, 1995, Kuntz filed his designation of items for the record on appeal of the Waterford Order.

II. DISCUSSION

The appellees and the Secured and Unsecured Committees argue, among other

4

things, that this court lacks jurisdiction to hear Kuntz's appeals from the Settlement and

SERP Orders pursuant to Rule 8002(a) Federal Rules of Bankruptcy Procedure ("FRBP")

because Kuntz failed to file timely notices of appeal. In addition, they argue that the

court should use its discretionary power pursuant to FRBP 8001(a) to dismiss all of

Kuntz's appeals because he failed to file timely designations of items for the record on

appeal of each order.

Kuntz's 44-page, single-spaced answering brief largely ignores the arguments

made by the appellees and the Secured and Unsecured Committees. Instead, his brief

contains long and irrelevant expositions of facts about the appellees, the securities

markets, and ostensibly the merits of the underlying appeals. In addition, Kuntz makes

many snide comments about the appellees, their management, and their attorneys.

Finally, Kuntz refuses to state the type and amount of GUCC zero coupon notes that he

allegedly owns, and he refuses to describe adequately the relief he seeks on appeal. He

merely states that he wants "a financial hot foot for [underwriter] Bankers Trust, lifting

the Indemnification Provisions and allowing the 0% Noteholders to proceed against [the

appellees' management], Goldman Sachs and others."

In response to the argument that he failed to file timely notices of appeal from the

Settlement and SERP Orders, Kuntz argues that his filing fee receipt dated May 18, 1995,

demonstrates that he did file a timely notice of appeal of the Settlement Order. As to the

SERP Order, he appears to argue that because he filed his FRBP 8002(c) extension

5

motion within the 10-day limit prescribed by FRBP 8002(a), and because he filed his

notice of appeal within the maximum 20-day extension that FRBP 8002(c) permits the

Bankruptcy Court to grant, that he filed a timely notice of appeal of the SERP Order.

In response to the argument that the court should dismiss Kuntz's appeals because

he failed to file timely designations of the record on appeal of each order, Kuntz responds

that he is a *pro se* litigant who lives in New York and cannot afford to send his filings by

overnight mail to this court. In addition, Kuntz argues that allowing the appeals will not

prejudice anyone involved in the bankruptcy proceeding.

A.    Does This Court Have Jurisdiction to Hear Kuntz's Appeals of the
      Settlement and SERP Orders?

FRBP 8002(a) states: "The notice of appeal shall be filed with the clerk of the

bankruptcy court within 10 days of the date of the entry of the judgment, order or decree

appealed from." The Third Circuit strictly construes the 10-day requirement of FRBP

8002(a). In re Universal Minerals, 755 F.2d 309, 311 (3d Cir. 1985) (citing cases).

Failure to file a timely notice of appeal deprives a district court of jurisdiction to review a

bankruptcy court's order. Id. at 312.

1.    Did Kuntz file a timely notice of appeal of the Settlement Order?

The Bankruptcy Court held a hearing on the settlement agreement and issued the

Settlement Order on May 18, 1995. Kuntz filed a purported notice of appeal of the

Settlement Order on May 16, 1995. The May 18, 1995 date on Kuntz's filing fee receipt

is irrelevant. A notice of appeal is considered "filed" when it is received by the bankruptcy court clerk's office. See <u>United States v. Solly</u>, 545 F.2d 874, 876 (3d Cir. 1976) (holding that a notice of appeal is "filed" under Rule 4(b) of the Federal Rules of Appellate Procedure ("FRAP") when it is received by the district court clerk's office); <u>Gould v. Members of the New Jersey Division of Water Policy and Supply</u>, 555 F.2d 340, 342 (3d Cir. 1977) ("The Clerk's office shall upon tender of every notice of appeal whether or not accompanied by the filing fee enter the date and time of receipt upon the docket sheets."). The docket sheet clearly states that the Clerk's office received Kuntz's notice of appeal on May 16, 1995.

Kuntz filed his notice of appeal of the Settlement Order two days before the Bankruptcy Court announced that it would issue the order. This does not fall within the time prescribed by FRBP 8002(a). While FRBP 8002(a) does provide that a notice of appeal filed <u>after</u> announcement of an order but before entry of that order shall be treated as filed after the entry of the order, this "safe harbor" provision does not apply to Kuntz. He filed his notice of appeal <u>before</u> the announcement of the Settlement Order.

It appears no case exists that addresses this unusual procedural posture under FRBP 8002(a). However, several Circuit Courts of Appeals have addressed the premature filing of a notice of appeal in the context of FRAP 4(a)(2). The Advisory Committee's Note to Rule 8002 states that FRBP 8002 is "an adaptation of Rule 4(a) of the Federal Rules of Civil Procedure." See also <u>Universal Minerals</u>, 755 F.2d at 312

7

(quoting the Advisory Committee's Note to Rule 8002). Therefore, cases interpreting

FRAP 4(a)(2) provide appropriate guidance in interpreting FRBP 8002(a).

In Brent v. Superintendent, 34 Fed. Rules Serv. 2d 367 (4th Cir. 1982), the Court

of Appeals for the Fourth Circuit held that a notice of appeal filed on June 11, 1981, was

ineffective under FRAP 4(a)(2) to appeal an order denying a petition for a writ of habeas

corpus entered on June 23, 1981. The Court stated that the "notice of appeal predate[d]

not only the judgment, but also any indication of the eventual disposition of the action.

Because of the prematurity, [the appellant] could not indicate his intent to appeal a

specified judgment of the district court." Id. at 368. Other Circuit Courts of Appeal

similarly have held that a notice of appeal filed before the announcement of a final

judgment is ineffective under FRAP 4(a)(2). See, e.g., United States v. Hansen, 795 F.2d

35, 38 (7th Cir. 1986) ("To disregard the limitations in [Rule 4(a)(2)] would be to rewrite

it rather too boldly for our tastes."); General Television Arts, Inc. v. Southern Railway

Company, 725 F.2d 1327, 1330-31 (11th Cir. 1984); United States v. Taylor, 632 F.2d

530, 531 (5th Cir. 1980) (per curiam); cf. Cape May Greene, Inc. v. Warren, 698 F.2d

179 (3d Cir. 1983) (holding that a notice of appeal filed after the announcement of a

nonfinal judgment but before the entry of a final judgment becomes effective under

FRAP 4(a)(2) when the judgement becomes final); Knight v. Brown Transport

Corporation, 806 F.2d 479 (3d Cir. 1986) (same).

The language of FRBP 8002(a), like that of FRAP 4(a)(1), does not specifically

8

authorize parties to file notices of appeal before the announcement of an order or decision

by a court. Moreover, a rule allowing such premature filings would cause parties to

bombard the Clerk's office with vague, and often unnecessary, notices of appeal

whenever those parties perceive that the court may announce an adverse decision.

Kuntz's May 16, 1995 notice of appeal of the May 18, 1995 Settlement Order was

untimely because he filed it before the court held a hearing on the settlement agreement

or indicated in any way that it would issue the Settlement Order. Thus, this court lacks

jurisdiction to consider his appeal of the Settlement Order.

    2.    Did Kuntz file a timely notice of appeal of the SERP Order?

The Bankruptcy Court issued the SERP Order on May 18, 1995. The Clerk

entered the order on May 19, 1995. Kuntz filed his notice of appeal on June 19, 1995,

long after the time allowed by FRBP 8002(a). Although Kuntz filed within the 10-day

limit of FRBP 8002(a) a motion pursuant to FRBP 8002(c) to extend the time to file his

notice of appeal, the Bankruptcy Court denied the motion as moot because Kuntz's notice

of appeal was filed after the date he requested in his extension motion. Therefore,

Kuntz's notice of appeal of the SERP Order was untimely.

Even if the Bankruptcy Court had granted Kuntz's extension motion, Kuntz's June

19, 1995 notice of appeal of the SERP Order would have been untimely. The Court

found that by asking for an extension "until the second week of June," Kuntz only

requested until June 16, 1995, to file his notice of appeal. The Court apparently

9

discounted the first week in June, which started on a Thursday, and counted the week

beginning Monday, June 12, and ending Friday, June 16, as the second week in June.

Therefore, interpreting Kuntz's extension motion as requiring Kuntz to file his notice of

appeal by June 16, 1995, is not clearly erroneous. See Fed. R. Bankr. P. 8013; In re

Brown, 951 F.2d 564, 567 (3d Cir. 1991) (stating that a district court reviews a

bankruptcy court's factual findings under the clearly erroneous standard). Thus, this

court lacks jurisdiction to consider Kuntz's appeal of the SERP Order.

> B.    Should the Court Dismiss Kuntz's Appeals For Failing to File Timely
>       Designations of the Record on Appeal of Each Case?

FRBP 8006 requires an appellant to file a designation of the items for the record

on appeal within 10 days of filing a notice of appeal. Kuntz consistently failed to file his

designations of the record on appeal within this 10-day limit. Kuntz filed his designation

for the appeal of the Settlement Order 5 days late, and he filed his designation for the

appeal of the Confirmation Order 4 days late. In addition, he filed his designations for the

appeals of the Waterford and SERP Orders 25 days late. Kuntz's lateness is aggravated

further because his notice of appeal of the SERP Order was already 21 days late.

FRBP 8001(a) describes the effect of failing to file a timely designation of the

record on appeal:

> Failure of an appellant to take any step other than the timely filing of a notice
> of appeal does not affect the validity of the appeal, but is ground only for such
> action as the district court or bankruptcy appellate panel deems appropriate,

which may include dismissal of the appeal.

A district court has discretion to dismiss a bankruptcy appeal pursuant to FRBP 8001(a) when an appellant has failed to file a timely designation of the record on appeal if the appellant has acted in bad faith or has prejudiced the appellees or other interested parties by his delay. See In re Comer, 716 F.2d 168, 177 (3d Cir. 1983); see also In re SPR Corporation, 45 F.3d 70, 74 (4th Cir. 1994); Kuntz v. Pardo, 160 B.R. 35, 37 (S.D.N.Y. 1993).

Kuntz was nearly a week late with the designations for the appeals of the Settlement and Confirmation Orders, and he was nearly a month late with the designations for the appeals of the Waterford and SERP Orders. The only explanation Kuntz offers in his otherwise evasive and pejorative answering brief is that he cannot afford to send documents to the court by overnight mail. If Kuntz cannot afford overnight mail, then he has an obligation to send his filings by regular U.S. Mail so that they will arrive at the court in a timely manner. Moreover, Kuntz's protestations of poverty are ironic in juxtaposition with the vague hints in his answering brief that he may own as much as $8 million in GUCC securities.

Kuntz's status as a *pro se* plaintiff provides him with no excuse for failing to abide by the procedural rules of this court and the Bankruptcy Court. Kuntz has considerable litigation experience. In one case alone, a district judge commented that Kuntz "has amassed litigation experience that would embarrass the majority of associates, and some

11

partners, at large New York law firms." <u>Kuntz</u>, 160 B.R. at 39. In addition, Kuntz has

had many of his cases dismissed for failure to abide by procedural rules or for other

abuses of the appellate system. <u>See Kuntz v. Board of Assessment</u>, 621 N.Y.S.2d 942

(N.Y. App. Div. 1995) (dismissing appeal as untimely and frivolous); <u>Kuntz v. Nova

Vista Industries, Inc.</u>, 91 CIV. 722, 1992 WL 60395 (S.D.N.Y. March 9, 1992)

(dismissing appeal as abandoned because of untimely brief and failure to appear at status

conference), <u>aff'd</u>, 14 F.3d 590 (1993); <u>In re Westminster Co., Inc.</u>, 74 B.R. 37 (D. Del.

1987) (dismissing motion for a stay pending appeal as untimely); <u>Dayton Arcade

Community Development Corp. V. Dayton</u>, 1987 WL 6251 (Ohio Ct. App. Feb. 6, 1987)

(dismissing appeal as untimely and devoid of merit); <u>In re Kuntz</u>, 1986 WL 14771 (Ohio

Ct. App. Dec. 17, 1986) (dismissing appeal as devoid of merit). Finally, a District Court

for the Southern District of New York has dismissed a bankruptcy appeal by Kuntz for

the exact same conduct involved in this case -- failing to file a timely designation of items

for the record on appeal. <u>Kuntz</u>, 160 B.R. at 39 (finding that Kuntz's "failure to comply

with court rules, procedures, and deadlines is the result of conscious disregard . . . . Kuntz

has demonstrated a consistent pattern of vexatious litigation and little respect for the

courts or other parties."). Thus, Kuntz was aware of FRBP 8006, and it was within his

ability to comply with the rule.

Based on the above, the court finds that Kuntz has acted in bad faith in failing to

file timely designations of items for the record on appeal of each order. Therefore, the

12

court will exercise its discretion pursuant to FRBP 8001(a) to dismiss all of Kuntz's

consolidated appeals.

The appellees have also argued in their joint motion to dismiss that Kuntz lacks

standing to pursue these consolidated appeals and that the appeals are moot.  Because the

court is dismissing the consolidated appeals based on Kuntz's procedural errors, it does

not address these further arguments.

The court will issue an Order in accordance with this memorandum opinion.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WILLIAM KUNTZ,                              )
                                           )
          Appellant,                       )
                                           )
     v.                                    )  Civil Action No. 95-529-RRM
                                           )
THE GRAND UNION COMPANY,                   )  CONSOLIDATED
also d/b/a Big Star,                       )
                                           )
          Appellee.                        )

WILLIAM KUNTZ,                             )
                                           )
          Appellant,                       )
                                           )
     v.                                    )  Civil Action No. 95-530-RRM
                                           )
THE GRAND UNION COMPANY,                   )
also d/b/a Big Star,                       )
                                           )
          'Appellee.                       )

WILLIAM KUNTZ,                             )
                                           )
          Appellant,                       )
                                           )
     v.                                    )  Civil Action No. 95-531-RRM
                                           )
GRAND UNION CAPITAL                        )
CORPORATION,                               )
                                           )
          Appellee.                        )

WILLIAM KUNTZ,                          )
                                        )
            Appellant,                  )
                                        )
    v.                                  ) Civil Action No. 95-591-RRM
                                        )
THE GRAND UNION COMPANY,                )
also d/b/a Big Star,                    )
                                        )
            Appellee.                   )

WILLIAM KUNTZ,                          )
                                        )
            Appellant,                  )
                                        )
    v.                                  ) Civil Action No. 95-592-RRM
                                        )
THE GRAND UNION COMPANY,                )
also d/b/a Big Star,                    )
                                        )
            Appellee.

## FINAL ORDER DISMISSING CONSOLIDATED APPEALS

For the reasons stated in the court's February 29, 1996 Memorandum Opinion,

IT IS HEREBY ORDERED as follows:

1) The Official Committee of Unsecured Creditors of The Grand Union

Company's (the "Unsecured Committee") motion to intervene in these consolidated

appeals is granted.

2) The Informal Committee of Senior Secured Noteholders of The Grand Union

Company's (the "Secured Committee") motion to intervene in these consolidated appeals

2

is granted.

3) Appellees The Grand Union Company, Grand Union Capital Corporation, and Grand Union Holdings Corporation's and the Secured and Unsecured Committees' joint motion to dismiss these consolidated appeals is granted.

4) The Clerk shall dismiss all of Kuntz's consolidated appeals (Civil Actions Nos. 95-529, 95-530, 95-531, 95-591, and 95-592).


UNITED STATES DISTRICT JUDGE

Date: February 29, 1996

3

WKFIL3N

DATE:

ADDRESSEE/CC LIST:

# 2

AUTHOR:

COUNTRY CODE:

SUBJECT:

WKFIL3N

WKFIL3N

CLIPS

BOX No.

No. PAGES:

PREP. INITIAL:

WKFIL3N

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re: GRAND UNION COMPANY,  )
                                  )
        Debtor,  )
                                  )
——————————————————  )
                                  )
WILLIAM KUNTZ, III  )
                                  )
        Appellant,  )
                                  )
       v.  )       Civil Action No. 95-726-RRM
                                  )
SAUL, EWING, REMICK & SAUL,  )
PATTERSON, BELKNAP, WEBB &  )
  TYLER, LLP,  )
MARCUS MONTGOMERY P.C.,  )
WILLIAMS, HERSHMAN &  )
  WISLER, P.A.,  )
PETERSON CONSULTING, L.P., and  )
ARGOSY GROUP, L.P.,  )
                                  )
        Appellees.  )

---

## MEMORANDUM OPINION

---

William Kuntz, III, Lake Placid, New York, *pro se* appellant.

Norman L. Pernick, Esquire and Mark Minuti, Esquire, Saul, Ewing, Remick & Saul, Wilmington, Delaware; David W. Dykhouse, Esquire and Lisa M. Napoletano, Esquire, Patterson, Belknap, Webb & Tyler LLP, New York, New York, for appellees Saul, Ewing, Remick & Saul and Patterson, Belknap, Webb & Tyler LLP.

Jeffrey C. Wisler, Esquire, Williams, Hershman & Wisler, P.A., Wilmington, Delaware;
Neil P. Forest, Esquire, Marcus Montgomery P.C., New York, New York, for appellees
Marcus Montgomery P.C., Williams, Hershman & Wisler, P.A., Peterson Consulting,
L.P., and Argosy Group. L.P.

---

Wilmington, Delaware

August 27, 1996

McKELVIE, District Judge

This is a bankruptcy appeal. Debtor Grand Union Company ("GU") is a wholly owned subsidiary of Grand Union Capital Corporation ("GUCC"), which is a wholly owned subsidiary of Grand Union Holdings Corporation ("GUHC"). *Pro se* appellant is the purported holder of certain unspecified zero coupon notes issued by GUCC. Appellees are various professionals involved in GU's bankruptcy proceeding in the United States Bankruptcy Court for the District of Delaware.

On November 28, 1995, appellant filed a notice of appeal challenging the Bankruptcy Court's September 19, 1995 order awarding professional fees and expenses in the GU bankruptcy proceeding (the "fee order"). On December 22, 1995, appellant filed a motion to stay the briefing schedule in this appeal. In an Order dated April 18, 1996, the court denied appellant's motion and stated that it would dismiss this appeal if appellant did not file his brief by May 3, 1996. Appellant filed his brief on that date.

On May 16, 1996, appellees Saul, Ewing, Remick & Saul (the "Saul, Ewing firm") and Patterson, Belknap, Webb & Tyler LLP (the "Patterson, Belknap firm") filed a joint motion to dismiss this appeal as frivolous and to award sanctions to them under Rule 38 of the Federal Rules of Appellate Procedure ("FRAP"). On May 17, 1996, appellees Marcus Montgomery P.C., Williams, Hershman & Wisler, P.A (the "Williams, Hershman firm"), Peterson Consulting, L.P. ("Peterson"), and Argosy Group, L.P. ("Argosy"), filed an answering brief seeking dismissal of this appeal as frivolous.

1

This is the court's decision on whether to dismiss this bankruptcy appeal and whether to sanction appellant for filing this appeal.

## I.    FACTUAL BACKGROUND

This appeal arises from the Chapter 11 cases of GU, GUCC, and GUHC.  In order to finance an earlier recapitalization of GU, GUCC issued a total of approximately $1 billion in zero coupon notes (the "notes").  GUCC's sole asset was the common stock of GU, which had been pledged to secure GU's debt obligations.  GUHC owned all of GUCC's common stock and was also the guarantor of the notes.

In December of 1994, GU organized the various creditor constituencies of GU, GUCC, and GUHC, including the noteholders, into committees in order to develop a consensual plan for restructuring the debt of GU.  The members of the noteholder committee held approximately 70% of the outstanding notes.  In January of 1995, GU reached an agreement with these creditor constituencies, except for the noteholder committee, on the terms of a plan of reorganization for GU.  This plan proposed to distribute all of the equity of GU to one class of GU's bondholders and to eliminate GUCC's equity interest in GU, which would make the notes valueless.

On January 25, 1995, GU filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.  On February 6, 1995, GU filed a plan and disclosure statement that sought to implement the terms of its plan.  Pursuant to the terms of the indentures

2

governing the notes, GU's Chapter 11 filing constituted a default and the notes became

due immediately. The noteholder committee then formally requested that GUCC file

under Chapter 11. When GUCC failed to do so, the noteholder committee filed an

involuntary petition against GUCC on February 6, 1995.

GUCC consented to the entry of an order for relief on February 16, 1995. On that

same date, GUHC voluntarily filed under Chapter 11 as well. Also on that same date,

GUCC and GUHC submitted applications to retain appellees the Saul, Ewing firm and the

Patterson, Belknap firm as counsel in the bankruptcy proceeding. On February 24, 1995,

the Bankruptcy Court ordered the retention of these firms *nunc pro tunc* to February 16,

1995.

On March 3, 1995, the United States Trustee appointed an official committee of

unsecured creditors in the GUCC case (the "GUCC committee"). The GUCC committee

consisted of all of the members of the noteholder committee and two additional

noteholders. Appellees Marcus Montgomery, the Williams, Hershman firm, Peterson,

and Argosy (collectively, the "GUCC committee professionals") had already been

advising the noteholder committee. The GUCC committee submitted applications to

retain the GUCC committee professionals in the bankruptcy proceeding, and the

Bankruptcy Court approved all of these applications.

As a result of various efforts of the Saul, Ewing firm, the Patterson, Belknap firm,

the GUCC committee, and the GUCC committee professionals, GU and the GUCC

3

committee negotiated a settlement agreement to resolve the GUCC committee's

objections and to propose a consensual plan of reorganization (the "reorganization plan").

Under the settlement agreement, the reorganization plan would provide that noteholders

could exchange their notes for warrants to purchase the common stock of the reorganized

GU (the "warrants"). The settlement agreement also provided that GU would pay the

fees and expenses of the Saul, Ewing firm, the Patterson, Belknap firm, and the GUCC

committee professionals up to $750,000. After notice and a hearing, the Bankruptcy

Court entered an order approving the settlement agreement on May 18, 1995 (the

"settlement order").

The Bankruptcy Court also subsequently approved the disclosure statement

relating to the proposed reorganization plan, including the terms of the settlement

agreement, in the GU Chapter 11 case. The reorganization plan and the disclosure

statement were circulated to GU's creditors and the noteholders. It appears that appellant

was the only noteholder who voted against the reorganization plan. After notice and a

hearing, the Bankruptcy Court entered an order confirming the reorganization plan on

May 31, 1995 (the "confirmation order"). The reorganization plan became effective on

June 15, 1995.

Appellees each filed fee and expense applications to the Bankruptcy Court. It

appears that the fee applications, and the notice of the hearing on the applications, were

properly filed and served. On September 13, 1995, the Bankruptcy Court held the

4

hearing as noticed. Appellant was present and presented the following objection:

> It appears that the Grand Union Capital Corp Professionals have made an application under the wrong case Number. Objectant is not aware of any Notice being made under 85-130 GRAND UNION CAPITAL CORP and thus all Fee Request[s] for those Professionals should be Renotice[d] under the Correct Case Number with proper service.

Appellant did not object to the amount of the fees or the service provided by appellees.

The Bankruptcy Court overruled appellant's objection and entered the fee order.

GU subsequently paid $750,000 for the fees and expenses of appellees pursuant to the reorganization plan and the settlement agreement. The tendering and exchange of the various debt instruments of the reorganized GU and of GUCC occurred in the months following the plan. It appears that substantially all of the noteholders, except for appellant, have tendered their notes in exchange for warrants under the reorganization plan. In addition, GUCC's ownership of GU's common stock has been canceled, and the stock of the reorganized GU has been distributed to former creditors of GU pursuant to the terms of the reorganization plan.


II.    DISCUSSION

Appellant raises six issues on appeal: 1) that the professional fees were excessive in relation to the benefit conferred on the debtor; 2) that the fee applicants failed to serve notice of the applications; 3) that the professionals sought and were awarded fees under the wrong case number; 4) that the reorganization plan did not allow the professionals to

5

petition for payments in the GU Chapter 11 case; 5) that a pre-petition payment of $100,000 to Argosy warranted a denial of a fee; and 6) that the Bankruptcy Court did not enter an order allowing the retention of the GUCC committee professionals.

All appellees argue that the court should dismiss this appeal under the doctrine of "equitable mootness." In addition, they argue that appellant's claims are legally and factually frivolous because the fee order was proper. Appellees the Saul, Ewing firm and the Patterson, Belknap firm also argue separately that appellant did not raise five of these six issues before the Bankruptcy Court and thus may not raise those issues on appeal. These two appellees seek sanctions, including attorney fees and double costs, pursuant to FRAP 38 due to the frivolous nature of appellant's claims.

A.    Should the Court Dismiss This Bankruptcy Appeal Under the Doctrine of Equitable Mootness?

The Court of Appeals for the Third Circuit recently adopted a doctrine applicable to bankruptcy cases known as "equitable mootness." See In re Continental Airlines, No. 94-7748, 1996 WL 426802 (3d Cir. July 31, 1996). The doctrine of equitable mootness allows a district court to dismiss a bankruptcy appeal for equitable and prudential reasons even when the court could afford some relief. Id. at *4-7. Thus, equitable mootness differs from constitutional mootness, which results from the inability of the court to provide relief. Id.. This court need not reach the merits of this appeal if it may properly dismiss the appeal under the doctrine of equitable mootness. Id.; In re Box Brothers

6

Holding Co., 194 B.R. 32 (D. Del. 1996).

The Court of Appeals identified five factors to consider in determining whether to

dismiss a bankruptcy appeal under the doctrine of equitable mootness:

> (1) whether the reorganization plan has been substantially consummated,
> (2) whether a stay has been obtained,
> (3) whether the relief requested would affect the rights of parties not before
> the court,
> (4) whether the relief requested would affect the success of the plan, and
> (5) the public policy of affording finality to bankruptcy judgments.

Continental, 1996 WL 426802 at *7; see also Box Brothers, 194 B.R. at 39.  The court

will address each of these factors in turn.

1.    Has the reorganization plan been substantially consummated?

The foremost consideration in applying the doctrine of equitable mootness is

whether the reorganization plan has been substantially consummated.  Continental, 1996

WL 426802 at *8; Box Brothers, 94 B.R. at 39.  The Bankruptcy Code defines

"substantial consummation" as:

> (A)  transfer of all or substantially all of the property proposed by the plan
> to be transferred;
> (B) assumption by the debtor or by the successor to the debtor under the
> plan of the business or of the management of all or substantially all of the
> property dealt with by the plan; and
> (C) commencement of distribution under the plan

11 U.S.C. § 1101(2).

In the present case, the Bankruptcy Court confirmed the reorganization plan on

May 31, 1995.  The reorganization plan became effective on June 15, 1995.  Pursuant to

7

the terms of the reorganization plan, GUCC's ownership of GU's common stock has been

canceled, and the common stock of the reorganized GU has been distributed to former

creditors of GU. Therefore, the only asset that could have supported GUCC's ability to

repay the notes, its equity interest in GU, no longer exists. In addition, the reorganized

GU has issued new common stock, new bonds, and the warrants. Thus, it appears that the

reorganization plan has been substantially, if not entirely, consummated.

2.    Did Kuntz obtain a stay of the Bankruptcy Court's order?

The existence or absence of a stay is a critical factor in determining whether to

dismiss an appeal under the doctrine of equitable mootness. Continental, 1996 WL

426802 at *9-10; Box Brothers, 94 B.R. at 39-40. The Bankruptcy Court entered the

settlement order on May 18, 1995, the confirmation order on May 31, 1995, and the fee

order on September 19, 1995. Kuntz failed to seek a stay of any these orders.

Consequently, the reorganization plan has been substantially consummated, and GU has

paid the professional fees. Moreover, the former creditors of GU, the public investors in

the reorganized GU, and the appellees have proceeded in reliance on the Bankruptcy

Court's orders for over one year.

3.    Would the relief requested affect the rights of parties not before the court or
the success of the plan?

Kuntz fails to specify the relief that he seeks pursuant to this appeal. To the extent

he seeks to reverse the fee order, however, such relief could jeopardize the rights of third

8

parties and the success of the reorganization plan. It appears that the members of the noteholder committee agreed to pay their own professional fees, which amounted to $750,000, with the understanding that GU would reimburse them pursuant to the settlement agreement and the reorganization plan. Moreover, the provision for the payment of professional fees and expenses is explicitly stated in the reorganization plan. A reversal of the fee order might undermine the settlement agreement, which in turn might undermine the reorganization plan itself. In addition, it would undermine the reasonable reliance placed by the noteholders on the settlement agreement, which has been in place for over a year and a half, and expose them to potential liability for the professional fees.

4.     <u>Does the public policy of affording finality to Bankruptcy Court judgments suggest that the court should dismiss this appeal?</u>

The public policy of affording finality to Bankruptcy Court judgments suggests that the court should dismiss this appeal. The reorganization plan has been in place for nearly a year and a half. Most if not all of the noteholders, except for appellant, have agreed with the settlement agreement and the reorganization plan and have exchanged their notes for warrants. Appellant is the sole individual to have appealed the confirmation, settlement, or fee orders, and he has never sought to stay any of these orders. Moreover, appellant specifically delayed the presentation of this appeal by failing to file his appellate brief until this court ordered him to do so almost six months after he

9

filed his notice of appeal.

For the reasons set out above, the court finds that it would be unfair and imprudent to reverse the fee order. Thus, the court will dismiss the bankruptcy appeal pursuant to the doctrine of equitable mootness.

B.   Should the Court Sanction Appellant for Filing This Appeal?

Appellees the Saul, Ewing firm and the Patterson, Belknap firm argue that the court should award attorney fees and double costs to them pursuant to Rule 38 of the Federal Rules of Appellate Procedure ("FRAP") because this appeal is frivolous. In support of this contention, they argue that appellant has raised new issues on appeal and that none of appellant's claims have any legal or factual merit.

When reviewing a Bankruptcy Court order, this court sits as an appellate court and may apply the FRAP. See 28 U.S.C. § 158; Cianchette v. Bank of New England, 123 B.R. 675, 686 n.19 (D. Maine 1991); Warsco v. Graves, 70 B.R. 535, 540 (N.D. Ind. 1987). FRAP 38 states:

> Rule 38. Damages and Costs for Frivolous Appeals
> If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

An appeal is frivolous if it is wholly without merit. Quiroga v. Hasbro, Inc., 943 F.2d 346, 347 (3d Cir. 1991). The applicable test is whether a reasonable attorney would

10

conclude, following a thorough analysis of the record and the applicable law, that the appeal is frivolous. Id.

1.    Is this appeal frivolous?

It appears that this appeal is frivolous. Appellant never presented to the Bankruptcy Court five of the six issues he now raises on appeal. Thus, appellant has not properly preserved these issues for appeal. See Singleton v. Wulff, 428 U.S. 106, 120 (1976); Newark Morning Ledger Co. v. U.S., 539 F.2d 929, 932 (3d Cir. 1976). Even if appellant had properly raised his claims in the Bankruptcy Court, however, none of them appear to have any legal merit.

A bankruptcy court has broad discretion to award fees and approve settlements. Anderson v. Anderson, 936 F.2d 199, 204 (5th Cir. 1991). This court reviews an award of fees in a bankruptcy case for abuse of discretion. Zolfo, Cooper & Co. v. Sunbeam-Oster Co., 50 F.3d 253, 261 (3d Cir. 1995). Appellant does not allege that the professionals failed to perform the services for which they were compensated, that the rates they charged were unreasonable, or that the parties did not require their services See 11 U.S.C. § 330. Rather, appellant makes a number of frivolous arguments.

Appellant argues that the fees were excessive because they are disproportionate to the current alleged value of the warrants. He cites no cases in support of this argument, nor is the court aware of any such cases. Moreover, he provides no factual basis for his valuation of the warrants. It appears that the Bankruptcy Court considered the proper

11

factors under § 330. Appellant seeks to have the Bankruptcy Court condition the payment of professional fees based on speculation as to the value of long-term securities such as the warrants. This would be improper and practically impossible.

Appellant also argues that the fee applications were not properly served and that the professionals sought fees under the wrong case number. Bankruptcy Rule 2002(a)(7) only requires notice of hearings for fee and expense applications in excess of $500. GU's counsel served notice of the September 18, 1995 hearing on the fee applications, and appellant admits that he received such notice. As to his wrong case number theory, appellant neither alleges nor demonstrates any prejudice from this alleged error. Moreover, the reorganization plan authorized the payment of the fee awards in the GU case, and it appears that the Bankruptcy Court entered the fee order in the GU and GUCC Chapter 11 cases.

Appellant next argues that the reorganization plan did not authorize GU to pay the professional's fees and expenses. This is a misstatement of the facts. Section 2.03 of the reorganization plan specifically states:

> The reasonable fees and expenses incurred on or after the Filing Date by the Capital Committee Advisors or the Informal Zero Committee Advisors with respect to this Chapter 11 Case or the GUCC Chapter 11 Case shall be paid by the Reorganized Grand Union after notice and a hearing in accordance with the procedures established by the Bankruptcy Court for the professionals employed by the Debtor or the Official Committee . . . .

The reorganization plan identifies appellees as the "Capital Committee Advisors" and the

12

"Informal Zero Committee Advisors." Thus, the Bankruptcy Court properly approved GU's payment of these professional fees pursuant to the reorganization plan.

Finally, appellant appears to argue that appellees were not properly retained as professionals by order of the Bankruptcy Court and that a pre-petition payment to Argosy created a conflict of interest. Contrary to appellant's assertions, the Bankruptcy Court approved the retention of all the professionals and their fees. As to the conflict of interest allegation, appellant fails to cite any relevant authority or to make any coherent legal argument.

2.    <u>Should the court excuse appellant's filing of this appeal conduct because he is proceeding *pro se?*</u>

*Pro se* litigants deserve patience and tolerance because they usually lack the education, knowledge, and experience of licensed practitioners. However, a litigant's *pro se* status does not shield him or her from sanctions for filing a frivolous appeal. <u>Anderson v. Steers, Sullivan, McNamar & Rogers</u>, 998 F.2d 495, 496 (7th Cir. 1993), cert. denied, 114 S. Ct. 1060 (1994); <u>Stelly v. Commissioner of Internal Revenue</u>, 761 F.2d 1113, 1116 (5th Cir. 1985). The circumstances of this case suggest that despite the fact that appellant is proceeding *pro se*, an award of sanctions may be warranted.

Appellant has deliberately delayed the disposition of this frivolous appeal by failing to comply with the rules of procedure. He filed a motion to extend the time in which to file his appellate brief <u>after</u> the brief was due. When appellant finally did file his

13

brief, it was over six months late. The court further observes that appellant may have never filed his brief if the court had not ordered him to do so. Finally, when appellant did file his brief, he raised five issues never raised in the Bankruptcy Court. Appellant's procedural defaults have unnecessarily prolonged this proceeding, thereby casting a cloud over the reorganization plan and causing appellees to incur additional costs and expenses in responding to appellant's frivolous claims.

Although appellant is proceeding *pro se*, he cannot explain his procedural defaults and his frivolous claims due to inexperience or lack of knowledge. As one court has observed:

> [Appellant] has amassed litigation experience that would embarrass the majority of associates, and some partners, at large New York law firms. . . . I find that his failure to comply with court rules, procedures, and deadlines is a result of conscious disregard, and not because of unfamiliarity with the courts.

Kuntz v. Pardo, 160 B.R. 35, 39 (S.D.N.Y. 1993). In those proceedings, appellant filed eight unsuccessful appeals, six of which the court dismissed for procedural defaults. Id. In this bankruptcy proceeding, appellant has now filed a total of seven unsuccessful appeals, six of which this court has dismissed for procedural defaults. See In re: Grand Union Capital Corp., C.A. No. 96-258-RRM (D. Del. July 9, 1996) (Order); In re: Grand Union Co., C.A. No. 95-532-RRM (D. Del. June 12, 1996) (Order); William Kuntz v. The Grand Union Co., C.A. No. 95-529-RRM (D. Del. February 29, 1996) (Memorandum Opinion) (dismissing four consolidated appeals).

14

Appellant has pursued unsuccessful appeals in at least three other bankruptcy proceedings, at least two of which involved procedural errors of some sort. See Kuntz v. Nova Vista Indus., Inc., No. 91 Civ. 7222 (PKL), 1992 WL 60395 (S.D.N.Y. March 9, 1992) (dismissing a bankruptcy appeal for failure to file a timely appellate brief pursuant to Rule 8009 of the Federal Rules of Bankruptcy Procedure); In re Adirondack Railway Corp., Nos. 89-CV-1489, 90-CV-0050, 1990 WL 124225 (N.D.N.Y. Aug. 23, 1990) (dismissing a bankruptcy appeal on the merits); In re One Westminster Co., Inc., 74 B.R. 37 (D. Del. 1987) (denying an improper motion for a stay pending an appeal for lack of jurisdiction).

The court further observes that appellant's procedural defaults and assertions of meritless claims are not limited to bankruptcy proceedings. See Kuntz v. Board of Assessment, 621 N.Y.S.2d 942 (N.Y. App. Div. 1995) (dismissing an appeal as untimely and frivolous); Kuntz v. Lake Placid Olympic Organizing Committee of 1980, Inc., 561 N.Y.S.2d 518 (N.Y. Supr. Ct. 1990) (dismissing appellant's attempt to use a pending bankruptcy case as an excuse for failure to serve a complaint); Kuntz v. Shawmut Bank of Boston, No. 86 Civ. 6771 (MGC), 1987 WL 11172 (S.D.N.Y. May 12, 1987) (dismissing appellant's improper attempt to bring a *pro se* derivative action); Dayton Arcade Community Development Corp. V. City of Dayton, No. CA 10109, 1987 WL 6251 (Ohio Ct. App. Feb. 6, 1987) (dismissing an appeal as untimely and devoid of merit); In re Kuntz, No. CA 9723, 1986 WL 14771 (Ohio Ct. App. Dec. 17, 1986) (dismissing an

appeal as devoid of merit).

The court is aware of only one other *pro se* litigant who has such a well documented history of abusing the court system. Appellant's pattern of conduct depicts an individual who is familiar with the rules of procedure and yet chooses to disregard these rules as it suits him. Moreover, this pattern of conduct depicts an individual who brings frivolous lawsuits and appeals either knowingly or with wilful ignorance. Against this backdrop, appellant's procedural abuses and meritless arguments in the present case suggest that appellant's main purpose in bringing this appeal is to harass the appellees and to disrupt the implementation of the reorganization plan, not to vindicate his rights. Thus, for the reasons set out above, the court finds that an award of sanctions may be warranted in this case.

Due process requires the court to give notice to a litigant facing potential sanctions of the bases for the imposition of the sanctions and an opportunity to be heard on those issues. Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies Inc., 57 F.3d 1215, 1225-27 (3d Cir. 1995); Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1357 (3d Cir. 1990). This Memorandum Opinion shall serve as notice to appellant that he faces sanctions under FRAP 38 for filing this frivolous appeal. The court will schedule a hearing at which appellant may be heard on these issues and appellees may present evidence of their attorney fees and costs.

The court shall issue an Order in accordance with this Memorandum Opinion.

16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re: GRAND UNION COMPANY,  )
                            )
      Debtor,            )
————————————————  )
                            )
WILLIAM KUNTZ, III      )
                            )
      Appellant,      )
                            )
     v.                )    Civil Action No. 95-726-RRM
                            )
SAUL, EWING, REMICK & SAUL,  )
PATTERSON, BELKNAP, WEBB &  )
  TYLER, LLP,        )
MARCUS MONTGOMERY P.C.,  )
WILLIAMS, HERSHMAN &  )
  WISLER, P.A.,      )
PETERSON CONSULTING, L.P., and  )
ARGOSY GROUP, L.P.,    )
                            )
      Appellees.      )

**ORDER DISMISSING APPEAL**

For the reasons set out in the court's August 27, 1996 Memorandum Opinion,

IT IS HEREBY ORDERED as follows:

1) Appellant Kuntz's appeal from the Bankruptcy Court's September 19, 1995 order awarding professional fees and expenses in the Grand Union Company Chapter 11 bankruptcy proceeding is dismissed.

2) Upon request by any of appellees, the court will hold a hearing to determine

17

whether the court should award sanctions to appellees pursuant to Rule 38 of the Federal

Rules of Appellate Procedure due to the frivolous nature of this appeal.  At the hearing,

appellant may present argument as to why the court should not impose sanctions upon

him for filing this appeal.  Appellees may present evidence as to their reasonable attorney

fees and costs.


UNITED STATES DISTRICT JUDGE

Date:  August 27, 1996

RECYCLED

ALLSTATE® LEGAL  800-222-0510  (2)1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GRAND UNION CAPITAL CORPORATION | ) | Case No. 95-130 (PJW) |
| (Tax I.D. No. 06-1342796), | ) | |
| | ) | |
| Debtor. | ) | |

## ORDER GRANTING JOINT MOTION OF
## GRAND UNION CAPITAL CORPORATION
## AND GRAND UNION HOLDINGS CORPORATION TO
## DISMISS CHAPTER 11 CASES AND
## CROSS-MOTION OF GRAND UNION CAPITAL CORPORATION
## TO DISMISS MOTION OF WILLIAM KUNTZ, III
## FOR APPOINTMENT OF AN EXAMINER

Upon the joint motion of Grand Union Capital Corporation ("Capital") and Grand Union Holdings Corporation ("Holdings") for an order dismissing their respective Chapter 11 cases, and upon the motion of Capital to dismiss the motion of William Kuntz, III for the appointment of an examiner dated May 9, 1995 (the "Examiner Motion") for his failure to prosecute the Examiner Motion, and upon a hearing duly held on notice to all parties in interest, and good and sufficient cause appearing therefor, it is hereby:

ORDERED, that the joint motion of Capital and Holdings seeking dismissal of their respective Chapter 11 cases and the cross-motion of Capital seeking dismissal of the Examiner Motion are hereby granted; and it is further

ORDERED, that the Examiner Motion is dismissed with prejudice; and it is further

ORDERED, that the Chapter 11 case of Capital is dismissed; and it is further

ORDERED, that the officers, directors and agents of Capital are authorized to do or cause to be done all such acts and things, including, without limitation, payment of any final

123

fees of the United States Trustee in connection with its Chapter 11 case, which in their sole

discretion they deem necessary, advisable or appropriate to carry out the purposes and intent of

this Order; and it is further

ORDERED, that the Clerk of the Bankruptcy Court is hereby instructed to enter

this Order on the docket and do such other acts and things as are necessary to effect the dismissal

of the Examiner Motion and this Chapter 11 case.

Dated:  Wilmington, Delaware
        March 27, 1996

UNITED STATES BANKRUPTCY JUDGE

0117022.01

Sup. Orig. :  D. Dykhouse, Esq. 3/27/96 in court

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GRAND UNION HOLDINGS CORPORATION | ) | Case No. 95-172 (PJW) |
| (Tax I.D. No. 13-3526806), | ) | |
| | ) | |
| Debtor. | ) | |

### ORDER GRANTING JOINT MOTION OF GRAND UNION CAPITAL CORPORATION AND GRAND UNION HOLDINGS CORPORATION TO DISMISS CHAPTER 11 CASES

Upon the joint motion of Grand Union Capital Corporation ("Capital") and Grand Union Holdings Corporation ("Holdings") for an order dismissing their respective Chapter 11 cases, and upon a hearing duly held on notice to all parties in interest, and good and sufficient cause appearing therefor, it is hereby:

ORDERED, that the joint motion of Capital and Holdings seeking dismissal of their respective Chapter 11 cases is hereby granted; and it is further

ORDERED, that the Chapter 11 case of Holdings is dismissed; and it is further

ORDERED, that the officers, directors and agents of Holdings are authorized to do or cause to be done all such acts and things, including, without limitation, payment of any final fees of the United States Trustee in connection with its Chapter 11 case, which in their sole discretion they deem necessary, advisable or appropriate to carry out the purposes and intent of this Order; and it is further

ORDERED, that the Clerk of the Bankruptcy Court is hereby instructed to enter this Order on the docket and do such other acts and things as are necessary to effect the dismissal of this Chapter 11 case.

Dated:  Wilmington, Delaware
        March 17, 1996

_____
UNITED STATES BANKRUPTCY JUDGE

0117086.01

2

Dup. Orig.: D. Dykhouse, Esq. 3/27/96 in court

### State of Delaware

## Office of the Secretary of State

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF DISSOLUTION OF "GRAND UNION CAPITAL CORPORATION", FILED IN THIS OFFICE ON THE TWENTY-SEVENTH DAY OF MARCH, A.D. 1996, AT 9 O'CLOCK A.M.

A CERTIFIED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS FOR RECORDING.



*Edward J. Freel, Secretary of State*

2297487   8100

960089651

7885376

AUTHENTICATION:

DATE:   03-27-96

CERTIFICATE OF DISSOLUTION
OF
GRAND UNION CAPITAL CORPORATION
(under Section 275 of the General Corporation Law)

GRAND UNION CAPITAL CORPORATION, a corporation organized and existing under the General Corporation Law of the State of Delaware (the "Corporation"), DOES HEREBY CERTIFY AS FOLLOWS:

1. The name of the Corporation is Grand Union Capital Corporation.

2. The date the dissolution was authorized is March 5, 1996.

3. The dissolution of the Corporation has been duly authorized by the Board of Directors and sole Stockholder of the Corporation in accordance with subsections (a) and (b) of Section 275 of the General Corporation Law of the State of Delaware.

4. The following is a list of the names and addresses of the directors of the Corporation:

| Name | Address |
| --- | --- |
| Martin A. Fox | 411 Theodore Fremd Avenue Rye, New York 10580 |
| Gary D. Hirsch | 411 Theodore Fremd Avenue Rye, New York 10580 |
| Joseph J. McCaig | 201 Willowbrook Boulevard Wayne, New Jersey 07470 |

2

5.     The following is a list of the names and addresses of the officers of the Corporation:

| Name | Office(s) | Address |
|------|-----------|---------|
| Gary D. Hirsch | Chairman | 411 Theodore Fremd Avenue<br>Rye, New York 10580 |
| Joseph J. McCaig | President | 201 Willowbrook Boulevard<br>Wayne, New Jersey 07470 |
| Martin A. Fox | Vice President,<br>Secretary and<br>Treasurer | 411 Theodore Fremd Avenue<br>Rye, New York 10580 |
| Glenn L. Goldberg | Vice President,<br>Assistant Secretary<br>and Assistant Treasurer | 411 Theodore Fremd Avenue<br>Rye, New York 10580 |
| James A. Lash | Assistant Secretary | 411 Theodore Fremd Avenue<br>Rye, New York 10580 |

IN WITNESS WHEREOF, the undersigned officers have executed this Certificate of Dissolution as of March 7, 1996.

GRAND UNION CAPITAL CORPORATION

By:  _____
Name: Martin A. Fox
Title: Director, Vice President,
Secretary and Treasurer

Attest

Assistant Secretary

State of Delaware                    PAGE 1

*Office of the Secretary of State*

---

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF DISSOLUTION OF "GRAND UNION HOLDINGS
CORPORATION", FILED IN THIS OFFICE ON THE TWENTY-EIGHTH DAY OF
MARCH, A.D. 1996, AT 9 O'CLOCK A.M.

A CERTIFIED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO
THE NEW CASTLE COUNTY RECORDER OF DEEDS FOR RECORDING.

Edward J. Freel, Secretary of State

2192486  8100                      AUTHENTICATION: 7891176

960091452                          DATE: 04-01-96

FILED 08:00 AM 01/29/1996
960031432 - 2193406

## CERTIFICATE OF DISSOLUTION
## OF
## GRAND UNION HOLDINGS CORPORATION
### (under Section 275 of the General Corporation Law)

GRAND UNION HOLDINGS CORPORATION, a corporation organized and existing under the General Corporation Law of the State of Delaware (the "Corporation"), DOES HEREBY CERTIFY AS FOLLOWS:

1.    The name of the Corporation is Grand Union Holdings Corporation.

2.    The date the dissolution was authorized is March 5, 1996.

3.    The dissolution of the Corporation has been duly authorized by the Board of Directors and a majority of the Stockholders of the Corporation in accordance with subsections (a) and (b) of Section 275 of the General Corporation Law of the State of Delaware.

4.    The following is a list of the names and addresses of the directors of the Corporation:

| Name | Address |
|------|---------|
| Marilo A. Fox | 411 Theodore Fremd Avenue<br>Rye, New York 10580 |
| Gary D. Hirsch | 411 Theodore Fremd Avenue<br>Rye, New York 10580 |
| Claude J. Incaudo | 1200 State Fair Boulevard<br>P.O. Box 4737<br>Syracuse, New York 13221 |
| Joseph J. McCaig | 201 Willowbrook Boulevard<br>Wayne, New Jersey 07470 |

2

5.   The following is a list of the names and addresses of the officers of the Corporation:

| Name | Office(s) | Address |
|---|---|---|
| Gary D. Hirsch | Chairman | 411 Theodore Fremd Avenue Rye, New York 10580 |
| Joseph J. McCaig | President | 201 Willowbrook Boulevard Wayne, New Jersey 07470 |
| Martin A. Fox | Vice President, Secretary and Treasurer | 411 Theodore Fremd Avenue Rye, New York 10580 |
| Glenn L. Goldberg | Vice President, Assistant Secretary and Assistant Treasurer | 411 Theodore Fremd Avenue Rye, New York 10580 |
| James A. Lash | Vice President, Assistant Secretary and Assistant Treasurer | 411 Theodore Fremd Avenue Rye, New York 10580 |

IN WITNESS WHEREOF, the undersigned officers have executed this Certificate of Dissolution as of March 7, 1996.

GRAND UNION HOLDINGS CORPORATION

By: _____
Name: Gary D. Hirsch
Title: Director and Chairman

Attest

_____
Secretary

**WKFIL3N**

DATE:

ADDRESSEE/CC LIST:

# 6

AUTHOR:

COUNTRY CODE:

SUBJECT:

WKFIL3N

WKFIL3N

CLIPS

BOX No.

No. PAGES:

PREP. INITIAL:

WKFIL3N

## 34 FEDERAL RULES SERVICE 2d—CASES

### BRENT v. SUPERINTENDENT, PATUXENT INSTITUTION

US Court of Appeals, Fourth Circuit, May 14, 1982
34 Fed Rules Serv 2d 367; Unpublished No. 81–7000*

AP–3c.12, AP–4a.2  Premature notice of appeal; sufficiency of designation of judgment.

While an appeal should not be dismissed as technically premature if in fact an appealable order was entered below, the appellant clearly manifests an intent to appeal that order, and the opposing party claims no prejudice from the prematurity of the notice, a "motion for leave to file petition for common law writ of certiorari," complaining of the denial of a hearing in a habeas corpus proceeding could not be considered as a notice of appeal where the "motion" was filed not only before the entry of judgment denying habeas corpus relief but also before any indication of the eventual disposition of the action. Because of the prematurity of the "motion," petitioner could not indicate his intention to appeal a specified judgment of the district court.

---

Appeal from the District of Maryland.  Before HALL, MURNAGHAN, and ERVIN, Circuit Judges.

Charles Brent, appellant pro se.

Stephen H. Sachs, Attorney General; Alexander L. Cummings, Assistant Attorney General, for appellee.

PER CURIAM.  Charles Brent filed this petition for a writ of habeas corpus pursuant to 28 USC § 2254 on December 19, 1980. He claimed that the direct appeal of his criminal conviction was improperly delayed by the court reporter's failure to complete preparation of the trial transcript.

After a series of letters from Brent requesting an evidentiary hearing, the district court informed Brent and counsel for the state that it did not consider a hearing necessary at that time. Brent then filed a "Motion for Leave to File Petition for Common Law Writ of Certiorari" directed to this court on June 11, 1981. This filing was construed as a petition for a writ of mandamus, and was returned to Brent with instructions to comply with Rule 21 of the Federal Rules of Appellate Procedure. The district court entered its order denying habeas corpus relief on June 23, 1981.

On September 2, 1981, seventy-one days after judgment was entered, Brent refiled his "Motion." As it appeared that Brent intended these documents to act as his notice of appeal, the materials were forwarded to the district court clerk. Rule 4(a)(1), Fed R App P. The district court correctly concluded that this filing was too late to constitute an effective notice of appeal because it was received more than sixty days after the entry of judgment. However, the district court granted a certificate of probable cause to permit this court to determine whether the "Motion" of June 11, although filed prematurely, would be sufficient to bring the judgment of the district court before us for review. We conclude that it does not.

Rule 4(a)(1) of the Federal Rules of Appellate Procedure provides that a notice of appeal shall be filed with the clerk of the district court within thirty

---

* [The opinion in No. 81–7000 was designated by the Fourth Circuit Court of Appeals as "Unpublished." See Fourth Circuit Rule 18(d) on citation of unpublished opinions.—ED.]

days *after* the entry of judgment. Nevertheless, it has been suggested that an appeal should not be dismissed as technically premature if in fact an appealable order was entered below, the appellant clearly manifests an intent to appeal that order, and the opposing party claims no prejudice from the prematurity of the notice. Jackson v. Tennessee Valley Authority, 595 F2d 1120 (6th Cir 1979); 9 Moore's Federal Practice ¶ 204.14 (2d ed 1975); but see Century Laminating, Ltd. v. Montgomery, 595 F2d 563 (10th Cir), cert dismissed, 444 US 987 (1979). Thus, a premature notice of appeal may be considered effective if filed after the decision of the court is announced, but prior to the formal entry of judgment, Rule 4(a)(2), Fed R App P; Lemke v. United States, 346 US 325 (1953); Matter of Grand Jury Impanelled January 21, 1975, 541 F2d 373 (3d Cir 1976); Hodge v. Hodge, 507 F2d 87 (3d Cir 1975).

We are aware that this court must liberally view the sufficiency of a notice of appeal, see Foman v. Davis, 371 US 178 (1962); however, "since the jurisdiction of the appellate court is determined by the timeliness and specific terms of the notice, it cannot be modified to cover a judgment not included by any reasonable interpretation." Gunther v. E.I. DuPont de Nemours & Co., 255 F2d 710, 717 (4th Cir 1958). Here, the documents which would be considered as a notice of appeal predate not only the judgment, but also any indication of the eventual disposition of the action. Because of the prematurity, Brent could not indicate his intent to appeal a specified judgment of the district court. Brent had the opportunity to file a timely notice of appeal and failed to do so. The "Motion" of June 11, 1981, does not constitute an effective notice of appeal of the district court judgment of June 23, 1981.

To the extent that Brent's filing can be considered an appeal of the district court's decision to forego an evidentiary hearing, such an appeal must be dismissed. That decision is neither a final judgment under 28 USC § 1291, nor an appealable interlocutory order under 28 USC § 1292. If Brent's filing is construed as a mandamus petition to compel a decision by the district court, it has become moot.

Accordingly, as the dispositive issues recently have been decided authoritatively, we dispense with oral argument. The appeal is dismissed for lack of jurisdiction.[**]

## MORGAN v. ROBERTS

US Dist Ct, MD Fla, April 6, 1982
Case No. 81–34–Civ–Ft. M–WC
34 Fed Rules Serv 2d 368

26b.436, 45b.315  Discovery of news material prepared by television stations.

In an action arising out of plaintiff's forcible ouster from a public meeting of county commissioners, plaintiff was entitled to discovery from two nonparty television stations of tapes, soundtracks, transcripts of the hearing, cassette tapes, audio tapes and broadcast tapes of the commissioners' meeting. No First Amendment issue was involved since the materials sought were mere mechanical recordations of a public event which were ultimately disseminated, albeit in an edited form, to the general public as part of the stations' respective news broadcasts.

---

[**] Because of our disposition of this action, Brent's motion for a temporary restraining order is denied. See 28 USC § 2283.

## CERTIFICATION OF BAR MEMBERSHIP

I, S. David Peress, hereby certify that I have been admitted as an attorney of the United States Court of Appeals for the Third Circuit.

_____
S. David Peress

## CERTIFICATE OF SERVICE

I, Scott D. Cousins, Esquire hereby certify that on September 26, 1996, I caused two copies of the foregoing Brief for Appellees, Appendix to Answering Brief of Appellees and Motion for Leave to File an Appendix to be served on the following listed below as indicated:

**BY U.S. POSTAL SERVICE, EXPRESS MAIL**

William Kuntz, III
Box 461; Olympic Station
Lake Placid, New York  12946-0461

Scott D. Cousins  (#3079)