MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
Alan Marder (AM-0114)
Jil Mazer-Marino (JM-6470)
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York  11530-9194
Telephone:  516.741.6565
Facsimile:  516.741.6706

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
Michael S. Greger (CA 156525)
James A. Timko (CA 220140)
1900 Main Street, Fifth Floor
Irvine, CA  92614-7321
Telephone:  949.553-1313
Facsimile:  949.553-8354
Email:  mgreger@allenmatkins.com
         jtimko@allenmatkins.com

Attorneys for Creditor
Constellation Place, LLC

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**CONSTELLATION PLACE, LLC'S OBJECTION TO DEBTOR'S PROPOSED CURE AMOUNT AS REQUIRED BY ORDER UNDER 11 U.S.C. SECTIONS 105(a), 363, AND 365 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 6006 AUTHORIZING AND APPROVING (A) THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF LIENS AND OTHER INTERESTS AND (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**I.    PRELIMINARY STATEMENT**

On September 17, 2008, the Court entered its Order (I) Approving the Break-Up Fee and Expense Reimbursement, (II) Certain Matters Relating to Competing Bids, if Any, (III) Approving the Form and Manner of Sale Notices and (IV) Setting the Sale Hearing Date in Connection with the Sale of Certain of the Debtors' Assets (the "Sale Procedures Order").  The Sales Procedures

Order requires non-debtor parties to contracts assumed and assigned by Lehman Brothers Holdings, Inc. (the "Debtor") to Barclays Capital Inc. ("Barclays") to file objections to the Debtor's cure statement with respect to such contracts.  Accordingly, Constellation Place, LLC ("Constellation") hereby objects to the Cure Amount asserted by the Debtor with respect to its lease of nonresidential real property assumed by the Debtor and assigned to Barclays.  The Debtor asserts a Cure Amount of $60,887.60 with respect to its lease with Constellation.  As of the Closing Date of September 22, however, the Debtor owed Constellation at least $97,600.84 in rent and other charges under the lease.  Additionally, as of October 1, 2008, an additional $191,610.09 in rent and other charges became due and owing under the lease.  See Declaration of Patrick J. Meara filed concurrently herewith, at Exh. B.

In addition to resolving the amount of cure and compensation due to Constellation upon the Debtor's assumption of the lease, another issue remains as to the effect of the assignment of the lease to Barclays and the performance of all obligations owed thereunder to Constellation. Constellation objected to section 2.3(g) of the Asset Purchase Agreement (the "APA"), because it stated that Barclays would only be responsible for liabilities under the Lease "from the Closing Date forwards."  At the hearing and thereafter, the Debtor and Barclays have asserted various positions as to the effect of assignment of contracts under the APA:  in certain instances taking the position that the assignment would only obligate Barclays to perform obligations arising after the Closing Date; while at other times acknowledging that the effect of assumption and assignment under the Bankruptcy Code is to require Barclays to perform all obligations under the contracts assigned to it.  Bankruptcy Code section 365 expressly protects Constellation's rights under the Lease upon assumption and assignment, ensuring that all obligations under the lease are performed fully by either the Debtor, through a cure of existing defaults and compensation for any losses, or by Barclays as it is required to take the lease with all of its benefits and burdens in place and perform all obligations under the lease upon assignment.

Under the lease, the tenant has a number of obligations that may not have given rise to defaults that must be cured as of the Closing Date, but are continuing in nature and require performance by Barclays upon assignment.  For example, the lease requires the tenant to maintain

the premises free from any mechanics' liens related to tenant improvements; maintain various insurance policies, and indemnify Constellation. Each of these obligations under the lease are ongoing, and past acts or occurrences that may not have ripened into events of default under the lease as of the Closing Date nevertheless will require future performance by Barclays under the terms of the lease. As set forth in Constellation's timely objection to the sale and as raised at the sale hearing, then, assignment of the lease to Barclays under Bankruptcy Code section 365(f) requires Barclays to perform all unperformed obligations under the lease.

## II.    FACTUAL BACKGROUND

### A.    The Lease

Constellation, as landlord, and the Debtor, as tenant, are parties to that certain Office Lease dated December 28, 2004 (the "Lease") whereby the Debtor leased nonresidential real property located on the 24th and 25th floors of the building known as the MGM Tower and located at 10250 Constellation Boulevard, Los Angeles, California (the "Premises").

### B.    The Sale Procedures Order and Sale Hearing

By way of the Sale Procedures Order, among other things, the Court set a hearing on the sale of the Debtor's broker/dealer assets for Friday, September 19, 2008, and required that any holders of leases that were to be assumed and assigned by the Debtors to either appear at the sale hearing or file written objections. The Debtors provided a list of contracts and leases to be assumed along with the proposed cure amounts for each contract (the "Assumption Notice") on the same day as the sale hearing at 1:00 a.m.

### C.    Constellation's Limited Objection and Reservation of Rights

Through its counsel, Constellation made an appearance at the sale hearing and filed its Limited Objection and Reservation of Rights to Debtors' Motion to Approve the Sale of Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets (the "Objection"). [Docket No. 187] Due to the quick pace of the proceedings, Constellation did not have the necessary time to fully analyze the proposed assumption and assignment of the Lease. As a result, by way of the Objection and oral argument, Constellation explicitly reserved its rights to, among other things, address the various issues regarding its cure claims.

Further, by way of the Objection and oral argument, Constellation objected to several aspects of the assumption and assignment of the Lease.  <u>First</u>, Constellation objected to the stated cure amount in the assumption notice.  Indeed, under the terms of the Lease, the Debtor is obligated to pay at least $97,600.84 in rent and other charges under the lease as of the Closing Date.  Meara Decl. ¶ 5.  In addition, Constellation asserted that the Debtor must fully satisfy all obligations relating to any and all mechanics' lien that have been or will be asserted against the Premises due to the Debtor's failure to pay its contractors for its improvement project.  Further, Constellation also sought the right to its attorneys' fees and costs in connection with Constellations' efforts to protects and enforce its rights under the Lease.

<u>Second</u>, Constellation objected to section 2.3(g) of the APA because it stated that Barclays would only be responsible for liabilities under the Lease "from the Closing Date forwards."  This clause purports to exculpate Barclays from liabilities that may arise in the future, but relate to the pre-Closing Date period.

<u>Third</u>, Constellation objected to section 8.14(a) of the APA, which impermissibly allowed for the subleasing of the Premises in a manner inconsistent with the terms of the Lease.

In response to Constellation's and other objecting creditors' arguments, counsel for Barclays, Lindsay Granfield, made the following statements before this Court:

> We obviously realize we have to live within the bounds of 365 in terms of assuming a full contract, can't break up the contract, have to pay the full cure cost. Plus, in terms of any accrued amounts, when we assume the contract, even if accrued amounts aren't due yet but then the due date comes up, that going to be for our account.  So that's pretty much the comfort I can give at this time.
> [Transcript pg. 231 lines 5-11].

### D.     The Clarification Letter

After the hearing, the Debtor, Lehman Brothers, Inc, and Barclays, entered into a letter agreement (the "Clarification Letter"), that apparently was intended to clarify the asset purchase agreement and reflect the Debtor 's and Barclays' willingness to comply with section 365 of the Bankruptcy Code.  Among other things, the Clarification Letter specifically addresses Constellation's concern that the APA impermissibly shielded the Debtor from fully curing its defaults and obligations owed under the Lease and exculpates Barclays from any responsibility for

obligations that related to the period before the Closing Date, but may not give rise to an event of default until after the Closing Date. Specifically, section 16(a) of the Clarification Letter, states, in pertinent part:

> (a) As contemplated in the Agreement, on the closing date, (i) the underlying leases that affect the Chicago Property, the LA Property [the Premises], and the Boston Property shall be assumed by LBHI or LBI in connection with its bankruptcy proceeding and each of such leases shall be assigned by Seller to Purchaser and Purchaser shall assume all of Sellers' obligations thereunder pursuant to assignment and assumption agreements mutually acceptable to Seller and Purchaser . . .

### E.   The Assignment Agreement

As referenced in the Clarification Letter, the Debtor, as assignor and Barclays, as assignee, entered into that certain agreement entitled Assignment and Assumption of Leases – LBHI and dated September 22, 2008 (the "Assignment Agreement"). By way of the Assignment Agreement the Debtor and Barclays agreed to the assignment of the Lease, among others.

Paragraph 2 of the Assignment Agreement states:

> Assignee hereby expressly assumes all of the obligations imposed upon the tenant under the Leases which accrue <u>from and after the date hereof</u>. Assignee shall indemnify Assignor from any liability cost and or expense incurred by Assignor due to Assignee's failure to perform under the Leases <u>after the date hereof</u>.

### F.   Certain Continuing Obligations of the Tenant Under the Lease which May Not Have Given Rise to Events of Default to Be Cured as of the Closing Date

#### 1.   Payment of Taxes

Article 4 of the Lease provides that the tenant is responsible to pay its share of taxes attributable to the Premises. With respect to real property taxes, the tenant is required to pay such taxes when invoiced or no later than 30 days prior to the date payment is due to the taxing authority. Accordingly, certain real property taxes may relate to the period prior to the Closing Date, but were not payable by the tenant as of the Closing Date.

### 2. Covenant Against Liens

Article 9 of the Lease provides that the tenant shall protect, defend, indemnify and hold harmless Constellation with respect to any claim of lien on the Premises related to any tenant work, and that tenant shall remove any such liens.

In August 2008, the Debtor commenced construction of certain leasehold improvements in part of the Premises at an estimated aggregate cost of $1,400,000. Meara Decl. ¶ 6. In connection therewith, Constellation is informed and believes that although the Debtor's contractor, and certain subcontractors, commenced work at the Debtor's request, the Debtor has recently instructed such contractors to cease work. Meara Decl. ¶ 6. Moreover, Constellation is informed and believes that as of the petition date, the Debtor had not fully paid at least one of its contractors or subcontractors for the work they had performed and/or the materials they had delivered to the Debtor at the Premises. Meara Decl. ¶ 6. As a result of the stoppage of work and nonpayment, Constellation understands that the contractors and/or subcontractors either have or intend to record mechanics' liens against the Premises. Meara Decl. ¶ 6. At present, Constellation does not have complete information as to the aggregate amount of such liens and/or potential liens. Since the Closing Date, however, at least one lien against the Premises has been recorded in favor of M. Arthur Gensler Jr. & Associates, Inc. in the amount of $122,446.04, and another lien in favor of Clay Dunn Enterprises, Inc. dba Air-Tec has been released (indicating a prior lien recordation against the Premises).

### 3. Insurance and Indemnity Obligations

Article 10 of the Lease requires the tenant to maintain various types of insurance including insurance of all Tenant Improvements and furniture fixtures and equipment, commercial general liability insurance, property damage insurance, and workers compensation insurance. To the extent that the Debtor and Barclays intend somehow to bifurcate obligations under the Lease pursuant to section 2.3(g), Barclays must maintain the insurance required under the Lease such that there is no gap in coverage resulting from bifurcation.

Article 10 of the Lease also provides that the tenant indemnifies Constellation in connection with the Premises. Assumption of the Lease preserves this obligation and Barclays must continue to indemnify Constellation to the full extent required of the tenant under the Lease.

### III. ARGUMENT

#### A. The Bankruptcy Code's Requirements Regarding the Assumption and Assignment of a Lease are Unequivocal

The Bankruptcy Code allows for the assumption and assignment of unexpired leases, but provides very specific protections to the landlord whose lease is being assumed and assigned without its consent. The protections provided are specifically designed to ensure that, while the Debtor may be assuming and assigning the lease to a third party, all the obligations under the lease will be performed. The intent of Congress to protect a landlord's rights in the assumption and assignment context is reflected throughout section 365 as well as the relevant case law interpreting this section. For example, section 365(b) requires that a debtor assume a lease or executory contract *cum onere*. In re Village Rathskellar, Inc., 147 B.R. 665, 671 (Bankr. S.D.N.Y. 1992); In re Nitec Paper Corporation, 43 B.R. 492, 498 (Bankr. S.D.N.Y. 1984). The protections of landlords is also reflected in Bankruptcy Code section 365(b)(1)'s requirements that (1) the debtor cure any defaults in the contract before assuming the contract; (2) that the debtor compensate or provide adequate assurance of compensation to the landlord for any pecuniary loss due to any default; and (3) provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1).

Pursuant to Bankruptcy Code section 365(b), Constellation asserts that the Debtor must pay as a condition to assumption of the Lease the amount of $97,600.84 due and owing under the Lease plus Constellations' attorneys' fees and costs incurred in connection with the Debtor's defaults under the Lease and the assumption and assignment of the Lease.[1]

---

[1] Section 29.21 of the Lease requires the award to a prevailing party of attorneys' fees and costs in connection with any "bankruptcy litigation" necessary to enforce the terms of a Lease. Courts have awarded attorneys' fees and costs in the context of a cure dispute under Section 365: See Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co., 127 S.Ct. 1199 (2007) (creditor was not precluded from filing unsecured claim for contractual attorney fees, merely by virtue of fact that fees sought had been incurred in litigating issues of federal bankruptcy law).

### **B.      By Taking an Assignment of the Lease, Barclays Is Required to Perform All Obligations Thereunder**

Additionally, the assignment of a lease to a third party is also subject to specific protections under the Bankruptcy Code designed to protect the landlord. For example, section 365(f) requires that any lease to be assigned must be assumed subject to all requirements of section 365 and that adequate assurance of future performance by the assignee is provided. 11 U.S.C. § 365(f)(1)(2). Section 365(f)(3) prevents the modification of a lease in connection with it being assumed or assigned. 11 U.S.C. 365(f)(3). There is no authority under the Bankruptcy Code (and no provision under the Lease) for the Debtor to assign only certain obligations under the Lease to Barclays. Consequently, the effect of an assignment of the Lease under Bankruptcy Code section 365(f) is that Barclays will be obligated to perform all unperformed obligations under the Lease, regardless of the Closing Date assigned by the parties.

Nothing in the Asset Purchase Agreement or the Assignment Agreement can result in the exculpation of Barclays from fully performing all obligations under the Lease. Indeed, the language in the APA and the Assignment Agreement which purports to exculpate Barclays is a complete disavowal of Barclay's future performance of certain obligations under the Lease in direct violation of section 365. Ms. Granfield's in-court representation and admission that performance coming due post-Closing Date would be Barclays responsibility acknowledges this problem. The terms of the Clarification Letter also reflect these basic bankruptcy principals regarding the assumption and assignment of a lease under section 365.

As stated in the Objection and at the sale hearing, Barclays must take on all of the obligations of the Lease, even if they arose prior to the sale, but came due post-sale. Thus, in addition to the cure and compensation owed by the Debtor, Barclays must:

- Pay all charges under the Lease incurred before the Closing Date that are not yet due under the terms of the Lease. These charges include, but are not limited to, "Operating Expenses," "Additional Rent," and "Tax Expenses" as defined in the Lease;

- Provide proof of insurance that conforms to the requirements of the Lease, that will protect Constellation from any claims may have arisen prior to the sale, but are made after the sale. This insurance must cover, among other things, claims arising from the Debtor's tenant improvement project, commercial general liability claims defined in the Lease, and property damage insurance; and

- Protect, defend, indemnify and hold harmless Constellation with respect to any claim of lien on the Premises related to any tenant work and remove any such liens recorded against the Premises pursuant to the terms of the Lease.

Even to the extent that the APA's language that purportedly limits Barclay's assumption of obligations and liabilities under the Lease is given any effect, bankruptcy courts recognize that the effect is limited and impose upon assignees all obligations that exist as of the assignment date but do not require performance until after such date. See, e.g., Orix PLC Houston Venture v. Victor (In re Jillian's Entm't Holdings), 327 B.R. 342, 348-49 (Bankr. W.D. Ky. 2007).

### C. The Assignment Agreement is Subject to Court Approval

By the Assignment Agreement, yet again the Debtor and Barclays offer conflicting terms regarding the assumption and assignment of the Lease. Contrary to the Clarification Letter and the statements of Barclays' counsel at the sale hearing, paragraph 2 of the Assignment Agreement states that the only obligations assigned to Barclays are "obligations imposed by the tenant under the Lease which accrue from and after the date hereof." This paragraph in the Assignment Agreement result is a material change to the APA as clarified by the Clarification Letter and counsel's statements. As it is a material change, the Assignment Agreement is subject to Court approval. As it has not been approved by this Court, it cannot govern the sale that is subject to these proceedings.

### D. Any Sublease Must Be Subject to the Strict Terms of the Lease

As discussed above, section 365(f)(3) protects Constellation from any modifications of the Lease. Section 8.14(b) of the APA provides that immediately following Barclays' assumption of the Lease, it is required to sublease some undisclosed portion of the Premises on undisclosed terms back to the Debtor or a designee of the Debtor. The APA further provides that such

sublease will be subject to Constellation's consent <u>or</u> this Court's approval. Constellation submits that the Code does not authorize Barclays to vary from the terms of the Lease with respect to any proposed sublease. Thus, any such sublease must be in accordance with the terms and conditions of the Lease, including, to the extent applicable, any rights to recapture in connection with any subleasing of the Premises.

**IV.     CONCLUSION**

The Debtor and Barclays cannot use the frenzied, complex, and historical nature of this sale to trample Constellations rights under the Lease. The Debtor must pay all amounts owing under the Lease as of the Closing Date and Barclays must perform all obligations that come due after the Closing Date and all continuing obligations imposed under the Lease.

Dated:  October 12, 2008                    MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By:     */s/ Alan Marder*
    Alan Marder (AM-0114)
    Jil Mazer-Marino (JM-6470)
    990 Stewart Avenue, Suite 300
    P.O. Box 9194
    Garden City, New York, 11530-9194
    Telephone:  516.741.6565
    Facsimile:  516.741.6706

    - and-

    Michael S. Greger
    James A. Timko
    Allen Matkins Leck Gamble Mallory
      & Natsis LLP
    1900 Main Street, Fifth Floor
    Irvine, California  92614-7321
    Telephone:  949.553-1313
    Facsimile:  949.553-8354

    Attorneys for Creditor
    Constellation Place, LLC