Landlord makes no representation or warranty with respect to such UPS System.  At Landlord's option, Landlord may require that Tenant remove the UPS System and all related facilities upon the expiration or earlier termination of this Lease and repair all damage to the Building resulting from such removal, at Tenant's sole cost and expense.  The terms of the preceding sentence shall survive the termination or earlier expiration of this Lease.  The UPS System shall be deemed to be a part of the Premises for purposes of the indemnification and insurance provisions of this Lease.

## ARTICLE 7

## REPAIRS

**7.1**    **In General**.  Landlord shall maintain in first-class condition and operating order and keep in good repair and condition the structural portions of the Building, including the foundation, floor/ceiling slabs, roof, curtain wall, exterior glass and mullions, columns, beams, shafts (including elevator shafts), stairs, parking areas, landscaping, fountains, water falls, exterior Project signage, stairwells, elevator cabs, plazas, art work, sculptures, Building mechanical, electrical and telephone closets, and all common and public areas, including base building restrooms and washrooms (collectively, **"Building Structure"**) and the "Base Building" (as that term is defined in Section 1 of the Tenant Work Letter) mechanical, electrical, life safety, plumbing, sprinkler systems and HVAC systems which were not constructed by Tenant Parties (collectively, the **"Building Systems"**).  Notwithstanding anything in this Lease to the contrary, Tenant shall be required to repair the Building Structure and/or the Building Systems to the extent required because of Tenant's use of the Premises for other than normal and customary business office operations, unless and to the extent such damage is covered by insurance carried or required to be carried by Landlord pursuant to Article 10 and to which the waiver of subrogation is applicable (such obligation to the extent applicable to Tenant as qualified and conditioned will hereinafter be defined as the **"BS/BS Exception"**).  Tenant shall, at Tenant's own expense, pursuant to the TCCs of this Lease, including without limitation Article 8 hereof, keep the Premises, including all Tenant Improvements, Alterations, as defined in Section 8.1 of this Lease, fixtures, and the floor or floors of the Building on which the Premises are located, in good order, repair and condition at all times during the Lease Term (but such obligation shall not extend to the Building Structure and the Building System except pursuant to the BS/BS Exception but Tenant's obligation under this Section 7.1 shall not be construed or enforced to require Tenant to keep or leave the Premises in better condition than Tenant would be obligated to leave the Premises at the end of the Lease Term pursuant to Section 8.5 of this Lease).  In addition, except as provided as part of Landlord's repair obligations set forth above or elsewhere in this Lease, Tenant shall, at Tenant's own expense, but under the supervision and subject to the prior approval of Landlord, and within any reasonable period of time specified by Landlord, pursuant to the TCCs of this Lease, including without limitation Article 8 hereof, promptly repair all damage to the Premises and replace or repair all damaged, broken, or worn fixtures and appurtenances (but such obligation shall not extend to the Building Structure and the Building System except pursuant to the BS/BS Exception), except for damage caused by ordinary wear and tear or beyond the reasonable control of Tenant; provided however, that, at Landlord's option, but only if Tenant fails to make such repairs and replacements within five (5) business days following Tenant's receipt of Notice of such failure, Landlord may, but need not, make such repairs and replacements, and Tenant shall pay Landlord the cost thereof, sufficient to reimburse

Landlord for all fees and other costs or expenses arising from Landlord's involvement with such repairs and replacements, to the extent not duplicative of Direct Expenses and to the extent the work is not performed by people whose salaries are paid out of Direct Expenses, forthwith upon being billed for same. Landlord may, but shall not be required to, enter the Premises (but except during emergencies, Landlord may not enter "Secured Areas", as defined in Article 27 of this Lease) at all reasonable times to make such repairs, alterations, improvements or additions to the Premises or to the Project or to any equipment located in the Project as Landlord shall desire or deem necessary or as Landlord may be required to do by Applicable Law; provided, however, except for emergencies, any such entry into the Premises by Landlord shall be performed in a manner so as not to materially or adversely interfere with Tenant's use of, or ingress or egress to, the Premises. Except as specifically set forth in <u>Section 7.2</u> of this Lease, Tenant hereby waives any and all rights under and benefits of Section 1 of Section 1932 and Sections 1941 and 1942 of the California Civil Code or under any similar law, statute, or ordinance now or hereafter in effect.

   **7.2    <u>Tenant's Right to Make Repairs</u>**. Notwithstanding any of the TCCs set forth in this Lease to the contrary, if Tenant provides Notice to Landlord of an event or circumstance which requires the action of Landlord with respect to repair and/or maintenance required on any full floor of the Building on which the Premises are located, including the Building Structure and/or Building System, which event or circumstance with respect to the Building Structure or Building System materially or adversely affects the conduct of Tenant's business from the Premises, and Landlord fails to commence corrective action within a reasonable period of time, given the circumstances, after the receipt of such Notice, but in any event not later than thirty (30) days after receipt of such Notice, then Tenant may proceed to take the required action upon delivery of an additional ten (10) business days' Notice to Landlord specifying that Tenant is taking such required action (provided, however, that the initial thirty (30) day Notice and the subsequent ten (10) business day Notice shall not be required in the event of an "Emergency," as that term is defined herein, but rather the thirty (30) day period and ten (10) business day period shall be replaced by a one (1) business day period), and if such action was required under the TCCs of this Lease to be taken by Landlord and was not commenced by Landlord within such ten (10) business day period (or one (1) business day period, in the event of an emergency) and thereafter diligently pursued to completion, then Tenant shall be entitled to prompt reimbursement by Landlord of Tenant's reasonable costs and expenses in taking such action plus interest thereon at the Interest Rate. For the purposes of this <u>Section 7.2</u> only, the defined term "Notice" shall include oral notices when given in the event of an "Emergency" as referred to in this <u>Section 7.2</u>. In the event Tenant takes such action, Tenant shall use only those contractors used by Landlord in the Building for work unless such contractors are unwilling or unable to perform, or timely perform, such work, in which event Tenant may utilize the services of any other qualified contractor which normally and regularly performs similar work in Comparable Buildings. Promptly following completion of any work taken by Tenant pursuant to the TCCs of this <u>Section 7.2</u>, Tenant shall deliver a detailed invoice of the work completed, the materials used and the costs relating thereto. If Landlord does not deliver a detailed written objection to Tenant within thirty (30) days after receipt of an invoice from Tenant, then Tenant shall be entitled to deduct from Rent payable by Tenant under this Lease, the amount set forth in such invoice. If, however, Landlord delivers to Tenant, within thirty (30) days after receipt of Tenant's invoice, a written objection to the payment of such invoice, setting forth with reasonable particularity Landlord's reasons for its claim that such action did not have to be taken by Landlord pursuant to

the TCCs of this Lease or that the charges are excessive (in which case Landlord shall pay the amount it contends would not have been excessive), then Tenant shall not be entitled to such deduction from Rent, and if so elected by Tenant, Tenant may proceed to claim a default by Landlord or, if elected by either Landlord or Tenant, the matter shall proceed to resolution by the selection of an arbitrator to resolve the dispute, which arbitrator shall be selected and qualified pursuant to the procedures set forth in Section 29.17 of this Lease. If Tenant prevails in the arbitration, the amount of the Award (which shall include interest at the Interest Rate from the time of each expenditure by Tenant until the date Tenant receives such amount by payment or offset and attorneys' fees and related costs) may be deducted by Tenant from the Rent next due and owing under this Lease. For purposes of this Section 7.2, an **"Emergency"** shall mean an event threatening immediate and material danger to people located in the Building or immediate, material damage to the Building, Building Systems, Building Structure, Tenant Improvements, or Alterations, or creates a realistic possibility of an immediate and material interference with, or immediate and material interruption of a material aspect of Tenant's business operations.

## ARTICLE 8

## ADDITIONS AND ALTERATIONS

**8.1    Landlord's Consent to Alterations.** Tenant shall have the right, without Landlord's consent but upon ten (10) business days prior Notice to Landlord, to make strictly cosmetic, non-structural additions and alterations (**"Cosmetic Alterations"**) to the Premises that do not (i) involve the expenditure of more than Three Hundred Fifty Thousand Dollars ($350,000.00) in the aggregate in any Lease Year; (ii) affect the exterior appearance of the Building, or (iii) affect the Building Systems or the Building Structure. Notwithstanding anything in this Section 8.1, Tenant shall not be required to obtain the Landlord's consent to repaint and/or carpet the Premises. Except in connection with Cosmetic Alterations, Tenant may make improvements, alterations, additions or changes to the Premises (including the Base Building and the Building Systems located within the Premises), (the **"Alterations"**) only upon first procuring the prior written consent of Landlord to such Alterations, which consent shall be requested by Tenant not less than ten (10) business days prior to the commencement thereof, and which consent or approval shall not be withheld, conditioned or delayed by Landlord, unless a Design Problem exists. In the event Landlord fails to grant or deny consent to the proposed Alterations within such ten (10) business day period, and Landlord does not cure such failure within two (2) business days following Landlord's receipt of a Notice from Tenant which indicates such failure, the proposed Alterations shall be deemed approved by Landlord. A **"Design Problem"** is defined as, and will be deemed to exist if such Alteration will (i) affect the exterior appearance of the Building; (ii) adversely affect the Building Structure; (iii) adversely affect the Building Systems; (iv) unreasonably interfere with any other occupant's normal and customary office operation or (v) fail to comply with Applicable Laws. The construction of the Tenant Improvements to the Premises shall be governed by the TCCs of the Tenant Work Letter and not the TCCs of this Article 8. Subject to the terms of Article 23 of this Lease, any signage installed by Tenant shall comply with the TCCs of this Article 8, provided, however, that item (i) in the definition of Design Problem set forth above shall be deleted.

**8.2    Manner of Construction.** Landlord may impose, as a condition of its consent to any and all Alterations or repairs of the Premises or about the Premises, reasonable requirements

(provided that the same shall in any event be consistent with the TCCs of this Lease and, as to the design of the Alterations, shall not impose stronger requirements on Tenant than the Design Problem criteria). If any Alterations will involve the use of or disturb Hazardous Materials existing in the Premises, Tenant shall comply with Landlord's rules and regulations concerning such Hazardous Materials; provided, however, if such Hazardous Materials existed in the Premises prior to the Lease Commencement Date, and same was not put therein by Tenant, Landlord shall pay any incremental extra costs incurred by Tenant in connection with the Alteration resulting from the presence of the Hazardous Materials. Tenant shall construct such Alterations and perform such repairs (i) using contractors selected by Tenant and reasonably approved by Landlord; (ii) in a good and workmanlike manner, in conformance with any and all Applicable Laws, and (iii) in conformance with Landlord's reasonable written construction rules and regulations, which rules do not conflict with any provisions of this Lease. In the event Tenant performs any Alterations in the Premises which require or give rise to governmentally required changes to the Base Building pursuant to the terms of Article 24 of the Lease, Landlord shall make such changes, at Tenant's expense. In performing the work of any such Alterations, Tenant shall have the work performed in such manner so as not to obstruct access to the Project or any portion thereof, by any other tenant of the Project, and so as not to obstruct the business of Landlord or other tenants in the Project. Tenant shall not use (and upon Notice from Landlord shall cease using) contractors, services, workmen, labor, materials or equipment that, in Landlord's reasonable judgment, would disturb labor harmony with the workforce or trades engaged in performing other work, labor or services in or about the Building or the Project Common Areas. In addition to Tenant's obligations under Article 9 of this Lease, upon completion of any Alterations, at Landlord's request, Tenant agrees to prepare and Landlord shall execute if factually correct, and Tenant shall cause a Notice of Completion to be recorded in the office of the Recorder of the County of Los Angeles in accordance with Section 3093 of the Civil Code of the State of California or any successor statute, and Tenant shall deliver to the Project management office and Landlord will sign a reproducible copy of the "as built" drawings of the Alterations as well as all permits, approvals and other documents issued by any governmental agency in connection with the Alterations.

      **8.3**    **Payment for Improvements**. Tenant shall reimburse Landlord for Landlord's reasonable out-of-pocket costs and expenses reasonably incurred and paid to third parties in connection with Landlord's review of any Alterations made subsequent to the initial construction performed in accordance with the terms of the Tenant Work Letter attached hereto as **Exhibit B**.

      **8.4**    **Construction Insurance**. In addition to the requirements of Article 10 of this Lease, in the event that Tenant makes any Alterations, prior to the commencement of such Alterations, Tenant shall provide Landlord with evidence that Tenant or Tenant's contractor carries "Builder's All Risk" insurance in an amount reasonably approved by Landlord covering the construction of such Alterations, and such other insurance as Landlord may reasonably require, it being understood and agreed that all of such Alterations shall be insured by Tenant pursuant to Article 10 of this Lease immediately upon completion thereof. In addition, Landlord may, in its reasonable discretion, require a Transferee as such term is defined and permitted pursuant to the TCCs of Article 14 of this Lease (other than a Transfer to an Affiliate), to obtain a lien and completion bond or some alternate form of security satisfactory to Landlord in an amount reasonably sufficient to ensure the lien-free completion of such Alterations and naming Landlord as a co-obligee.

**8.5    Landlord's Property**.  All Alterations, improvements, and/or appurtenances which may be permanently installed or placed in or about the Premises, from time to time, shall be at the sole cost of Tenant (subject to receipt of certain allowances) and shall be the property of Landlord.   Notwithstanding the foregoing, Tenant may remove any Tenant Improvements, Alterations or furniture, fixtures and/or equipment (regardless of whether the same is built-in or free standing), provided Tenant repairs any damage to the Premises and Building caused by any such removal or by replacing the same in connection with a subsequent Alteration.   At the termination or earlier expiration of this Lease, Tenant shall not have the right to remove any Tenant Improvements, other than those which Tenant can substantiate to Landlord have not been paid for with any Tenant Improvement Allowance funds provided to Tenant by Landlord. Tenant shall remove, as of the Lease Expiration Date or the earlier termination of this Lease any Alterations or other improvements located at the Building which were not part of the Tenant Improvements and which are atypical for normal and customary office purposes (such as internal stairways or private restrooms, to the extent the same were not a part of the initial Tenant Improvements) (provided, however, Tenant may leave floor and wall coverings in their then existing "as is" condition and shall have no obligation to repaint, install new floor covering or to repair or patch normal wall and floor penetrations and Tenant shall have no obligation to remove any inter-connecting stairwells and/or staircases which were constructed as part of the initial Tenant Improvements); provided, however, in the event that in Tenant's request for approval of such Alterations, Tenant requests a determination by Landlord (the **"Designation Notice"**) as to whether or not Tenant shall be required to remove such Alteration or other improvements upon the expiration or earlier termination of the Lease, in accordance with the terms hereof, then Landlord shall include in its consent (if granted) notice as to whether such Alteration or other improvements shall be required to be removed prior to the expiration or earlier termination of this Lease, and corresponding repairs made.  After such removal, Tenant shall repair any damage caused by the removal of any such Alterations or improvements, and return the affected portion of the Building to a building standard tenant improved condition or base building standard condition, as the case may be, as determined by Landlord.  If Tenant fails, within five (5) business days of receipt of Notice from Landlord, to commence to perform and thereafter proceed to diligently complete such removal and restoration, then at Landlord's option, Landlord may elect to do so and may charge the actual, reasonable and documented cost thereof to Tenant, and, provided that Landlord promptly commences such removal and restoration and diligently proceeds to complete the same, Tenant shall be deemed to be holding over in the Premises and Rent shall continue to accrue in accordance with the terms of Article 16, below, until such work shall be completed.

## ARTICLE 9

## COVENANT AGAINST LIENS

Notwithstanding anything in this Lease to the contrary, if any liens or encumbrances are placed against the Project, Building or the Premises arising out of the work performed, materials furnished or obligations incurred by Tenant, then to the extent same did not arise as a result of Landlord's failure to fulfill its obligations under this Lease, the Tenant shall protect, defend, indemnify and hold Landlord harmless from and against any claims, liabilities, judgments or costs (including, without limitation, reasonable attorneys' fees and costs) arising out of same or in connection therewith.  Tenant shall give Landlord Notice at least twenty (20) days prior to the

commencement of any such work on the Premises (or such additional time as may be necessary under Applicable Laws) to afford Landlord the opportunity of posting and recording appropriate notices of non-responsibility. If Tenant so causes a lien on the Premises, Building or Project, Tenant reserves the right to contest such lien, provided that Tenant shall, at its sole cost and expense, provide a bond in accordance with the California Civil Code, Section 3143. If Tenant does not timely exercise its right to contest such lien, Tenant shall remove any such lien or encumbrance by bond or otherwise within ten (10) days after Notice by Landlord, and if Tenant shall fail to do so, Landlord may pay the amount necessary to remove such lien or encumbrance, without being responsible for investigating the validity thereof. The amount so paid shall be deemed Additional Rent under this Lease payable upon demand, without limitation as to other remedies available to Landlord under this Lease. Nothing contained in this Lease shall authorize Tenant to do any act which shall subject Landlord's title to the Building or Premises to any liens or encumbrances whether claimed by operation of law or express or implied contract. Any claim to a lien or encumbrance upon the Building or Premises arising in connection with any such work or respecting the Premises not performed by or at the request of Landlord shall be null and void, or at Landlord's option shall attach only against Tenant's interest in the Premises and shall in all respects be subordinate to Landlord's title to the Project, Building and Premises.

## ARTICLE 10

## INSURANCE

**10.1    Indemnification and Waiver**.    Because Tenant is required to insure all of its Tenant Improvements and its furniture, fixtures and equipment and because of the requirements to provide waivers of subrogation, Tenant hereby assumes all risk of damage to property in its Premises, unless caused by the negligence or willful misconduct of the "Landlord Parties," as that term is defined in this Section 10.1, subject to the TCCs of the waiver of subrogation set forth below. Tenant hereby assumes all risk of injury to persons in, upon or about the Premises from any cause whatsoever unless caused by the negligence or willful misconduct of the Landlord Parties. Tenant agrees that Landlord, its partners, subpartners, parent organization, affiliate, subsidiary, and their respective officers, directors, legal representatives, successors, assigns, agents, servants, employees, and independent contractors and each of them (collectively, **"Landlord Parties"**) shall not be liable to Tenant for, and are hereby released from any responsibility to Tenant for, any damage either to person in the Premises or property of Tenant in the Premises or resulting from the loss of use thereof, which damage is sustained by Tenant or by other persons claiming through Tenant, except for damage to property which Landlord insures or is required to insure pursuant to the TCCs of this Lease and except to the extent caused by the negligence or willful misconduct of the Landlord Parties or breach by Landlord of any obligations set forth in this Lease. Tenant shall indemnify, defend, protect, and hold harmless the Landlord Parties from any and all loss, cost, damage, expense and liability (including without limitation court costs and reasonable attorneys' fees) (collectively, **"Claims"**) incurred in connection with or arising from any cause in or on the Premises or any acts, omissions or negligence of Tenant or of any person claiming by, through or under Tenant or its partners, subpartners, parent organization, affiliate, subsidiary and their respective officers, directors, contractors, agents, servants, employees, invitees or licensees of Tenant and each of them (collectively, **"Tenant Parties"**) or any such person, in or on the Project, either prior to or during, the Lease Term. Notwithstanding the foregoing, Tenant shall not be required to

indemnify, defend and hold Landlord or the Landlord Parties harmless from any Claims by any person, company or entity resulting from the negligence or willful misconduct of the Landlord or the Landlord Parties in connection with the Landlord Parties' activities in the Building or the Project and Landlord hereby so indemnifies, defends and holds Tenant and Tenant Parties harmless from any such Claims and from any Claim resulting from injuries to persons caused by the negligence of willful misconduct of Landlord and/or Landlord Parties. Furthermore, because Landlord is required to maintain insurance on the Building and the Project and Tenant compensates Landlord for such insurance as part of Tenant's Share of Direct Expenses and because of the existence of waivers of subrogation set forth in Section 10.5 of this Lease, Landlord hereby indemnifies and holds Tenant harmless from any Claim to any property to the extent such Claim is covered by such insurance (or would have been covered if Landlord had carried the insurance required hereunder), even if resulting from the negligent acts, omissions, or willful misconduct of the Tenant Parties. Similarly, since Tenant must carry insurance pursuant to this Article 10 to cover its personal property within the Premises, its Alterations, the Tenant Improvements, and the "Original Improvements," as that term is defined in Section 10.3.2 of this Lease, Tenant hereby indemnifies and holds Landlord harmless from any Claim to any property within the Premises, to the extent such Claim is covered by such insurance (or would have been covered if Tenant had carried the insurance required hereunder), even if resulting from the negligent acts, omissions or willful misconduct of the Landlord or the Landlord Parties. Pursuant to this Article 10, Tenant's agreement to indemnify and hold Landlord and the Landlord Parties harmless, and Landlord's agreement to indemnify and hold Tenant and the Tenant Parties harmless are not intended to and shall not relieve any insurance carrier of its obligations under policies required to be carried by Landlord or Tenant, respectively, pursuant to results of such acts, omissions or willful misconduct. The provisions of this Section 10.1 shall survive the expiration or sooner termination of this Lease with respect to any Claims or liability arising in connection with any event occurring prior to such expiration or termination.

Notwithstanding anything to the contrary contained in this Lease, nothing in this Lease shall impose any obligations on Tenant or Landlord to be responsible or liable for, and each hereby releases the other from all liability for, consequential damages other than those damages incurred by Landlord in connection with Tenant's actions pursuant to Section 7.2 of this Lease or a holdover of the Premises by Tenant after the expiration or earlier termination of this Lease which might sometimes be referred to as consequential damages.

**10.2    Landlord's Fire and Casualty Insurance**. Landlord shall insure the Building (including the Building Structure and Building Systems) and the Project during the Lease Term under (a) Special Form coverage ("all risks" form), and (b) a Commercial General Liability and Umbrella Liability. Such coverage shall be in such amounts, from such companies, and on such other TCCs, as Landlord may from time to time reasonably determine, provided that to the extent consistent with the practices of landlords of the Comparable Buildings, such "all risks" coverage shall (i) be for full replacement of the Building and the Project in compliance with all then existing Applicable Law; (ii) provide for rent continuation insurance equal to twelve months rent; and (iii) be with companies and have policies meeting the criteria set forth in Section 10.4(iii) of this Lease, and (iv) such liability coverage shall be in amounts not less than $5,000,000.00 per occurrence. Additionally, at the sole option of Landlord, such insurance coverage may include a rental loss endorsement and one or more loss payee endorsements in favor of the holders of any mortgages or deeds of trust encumbering the interest of Landlord in

the Building or the ground or underlying lessors of the Building, or any portion thereof. Notwithstanding the foregoing TCCs of this Section 10.2, the coverage (not including earthquake and flood insurance) and amounts of insurance carried by Landlord in connection with the Building shall at a minimum be comparable to the coverage and amounts of insurance which are carried by reasonably prudent landlords of Comparable Buildings, and Worker's Compensation and Employee's Liability coverage as required by Applicable Law.  Upon inquiry by Tenant, from time to time, Landlord shall inform Tenant of all such insurance carried by Landlord. Tenant shall, at Tenant's expense, except with respect to the Building  Structure and Building System which is governed by Section 7.1 of this Lease, comply with all customary insurance company requirements pertaining to the use of the Premises.  If Tenant's conduct or use of the Premises other than for the Permitted Use causes any increase in the premium for such insurance policies then Landlord shall notify Tenant of the same, and if Tenant does not discontinue such use within (30) days after such notification, Tenant shall reimburse Landlord for any such increase. Tenant, at Tenant's expense, shall comply with all rules, orders, regulations or requirements of the American Insurance Association (formerly the National Board of Fire Underwriters) and with any similar body.

10.3    **Tenant's Insurance**.    Tenant shall maintain the following coverages in the following amounts.

10.3.1    **Commercial General Liability**.    Commercial General Liability Insurance covering the insured against Claims of bodily injury, personal injury and property damage (including loss of use thereof) arising out of Tenant's operations, and contractual liabilities:

| | |
|---|---|
| Bodily Injury and | $5,000,000 each occurrence |
| Property Damage Liability | $5,000,000 annual aggregate |
| | |
| Personal Injury Liability | $5,000,000 each occurrence |
| | $5,000,000 annual aggregate |
| | 0% Insured's participation |

10.3.2    **Property Damage**.  Physical Damage Insurance covering (i) all office furniture, business and trade fixtures, office equipment, free-standing cabinet work, movable partitions, merchandise and all other items of Tenant's property on the Premises installed by, for, or at the expense of Tenant, (ii) the "Tenant Improvements," as that term is defined in Section 2.1 of the Tenant Work Letter, and any other improvements which exist in the Premises as of the Lease Commencement Date (excluding the Base Building, Building Structure and Building Systems) (the "**Original Improvements**"), and (iii) all other improvements, Alterations and additions to the Premises.  Such insurance shall be written on an "all risks" of physical loss or damage basis, for the full replacement cost value (subject to reasonable deductible amounts) new without deduction for depreciation of the covered items and in amounts that meet any co-insurance clauses of the policies of insurance and shall include coverage for damage or other loss caused by fire or other peril including, but not limited to, vandalism and malicious mischief, theft, water damage of any type, including sprinkler leakage, bursting or stoppage of pipes, and explosion, and providing business interruption coverage for a period of one year which do not comprise the Building Structure or the Building Systems.

**10.3.3    Worker's Compensation**. Worker's Compensation and Employer's Liability or other similar insurance pursuant to all Applicable Law, provided that Tenant shall be entitled to self insure its obligations under this Section 10.3.3.

**10.4    Form of Policies**. The minimum limits of policies of insurance required of Tenant and Landlord under this Lease shall in no event limit the liability of Tenant and Landlord under this Lease. Such insurance shall (i) as to insurance carried by Tenant under Section 10.3.2, above, name Landlord, and any other party with an insurable interest in the Project which the Landlord so specifies by Notice to Tenant, as an additional insured, including Landlord's managing agent, if any, and as to Landlord, name Tenant, and any of Tenant's Parties specified by Tenant by Notice to Landlord, as an additional insured on Landlord's Commercial General Liability Insurance Policy; (ii) as to Tenant, cover the liability assumed by Tenant under Section 10.1 of this Lease and as to Landlord cover the liability assumed by Landlord under Section 10.1 of this Lease; (iii) be issued by an insurance company having a rating of not less than A-VII in Best's Insurance Guide or which is otherwise acceptable to Landlord and licensed or approved or permitted to do business in the State of California; (iv) as to insurance carried by Tenant, be primary insurance as to all Claims thereunder and provide that any insurance carried by Landlord is excess and is non-contributing with any insurance requirement of Tenant; (v) be in form and content reasonably acceptable to Landlord; and (vi) provide that said insurance shall not be canceled unless thirty (30) days' prior Notice shall have been given to Landlord Tenant and any mortgagee of Landlord, the identity of whom has been provided to Tenant in writing. Tenant shall deliver said certificates thereof or reasonable evidence that such insurance is in place to Landlord on or before the Lease Commencement Date and at least ten (10) business days before the expiration dates thereof. Landlord and Tenant may fulfill their insurance obligations under Sections 10.2 and Section 10.3.1, above, respectively, through "blanket" insurance. In the event Tenant shall fail to procure such insurance, or to deliver such certificate, Landlord may, at its option upon fifteen (15) business days Notice to Tenant, procure such policies for the account of Tenant unless Tenant provides same within such fifteen (15) day period or as soon thereafter as practical, and the cost thereof shall be paid to Landlord within fifteen (15) days after delivery to Tenant of bills therefor.

**10.5    Subrogation**. Landlord and Tenant intend that their respective property loss risks shall be borne by reasonable insurance carriers to the extent above provided, and Landlord and Tenant hereby agree to look solely to, and seek recovery only from, their respective insurance carriers in the event of a property loss to the extent that such coverage is agreed to be provided hereunder or if higher, to the extent such insurance has been obtained. The parties each hereby waive all rights and claims against each other for such losses, and waive all rights of subrogation of their respective insurers, provided such waiver of subrogation shall not affect the right to the insured to recover thereunder from the insurer. The parties agree that their respective insurance policies are now, or shall be, endorsed such that the waiver of subrogation shall not affect the right of the insured to recover thereunder. If Landlord or Tenant fail to carry the amounts and types of insurance required to be carried pursuant to this Article 10, in addition to any remedies Landlord or Tenant may have under this Lease, such failure shall be deemed to be a covenant and agreement by the party failing to carry such insurance to self-insure with respect to the type and amount of insurance such party so failed to carry, with full waiver of subrogation with respect thereto.

10.6    **Additional Insurance Obligations**.  Tenant shall carry and maintain during the entire Lease Term, at Tenant's sole cost and expense, increased amounts of the insurance required to be carried by Tenant pursuant to this Article 10 and such other reasonable types of insurance coverage and in such reasonable amounts covering the Premises and Tenant's operations therein, as may be reasonably requested by Landlord but in no event shall such increased amounts of insurance or such other reasonable types of insurance be in excess of that generally required by landlords of Comparable Buildings.  Notwithstanding anything to the contrary contained in this Lease, in the event of any termination of this Lease pursuant to Articles 11 or 13 of this Lease, Tenant shall assign and deliver to Landlord (or to any party designated by Landlord) that portion of any insurance proceeds payable to Tenant based upon the insurance carried by Tenant under Section 10.3.2(ii) of this Lease for the unamortized value of the Tenant Improvements (to the extent paid for with the Tenant Improvement Allowance) (**"Landlord's TI Proceeds"**).  Any such amortization shall be calculated on a straight-line basis throughout the Lease Term.

## ARTICLE 11

## DAMAGE AND DESTRUCTION

11.1    **Repair of Damage to Premises by Landlord**.  To the extent Landlord does not have actual knowledge of same and Tenant does have such knowledge, Tenant shall promptly notify Landlord of any damage to the Premises resulting from fire or any other casualty.  If the Premises, the Building Structure, the Building Systems, or any Common Areas serving or providing ingress/egress to the Premises shall be damaged by fire or other casualty, Landlord shall promptly and diligently, subject to reasonable delays for insurance adjustment or other matters beyond Landlord's reasonable control, and subject to all other TCCS of this Article 11, restore the Base Building (inclusive of the Buildings Structure and Building Systems) and such Common Areas.  Such restoration shall be to substantially the same condition of the Base Building and the Common Areas prior to the casualty, except for modifications required by zoning and building codes and other Applicable Laws or as reasonably required by the holder of a mortgage on the Building or Project (and which does not materially adversely affect the Premises) or any other modifications to the Common Areas deemed desirable by Landlord and approved by Tenant, which approval shall not be unreasonably withheld, conditioned or delayed, and provided that ingress/egress to the Premises and the parking facilities shall not be materially impaired.  Upon the occurrence of any damage to the Premises, if the Lease is not terminated, Tenant shall put into a third party escrow account reasonably acceptable to Landlord (which escrow shall be jointly paid for by Landlord and Tenant) for distribution to Landlord (or to any party designated by Landlord) on a progress payment basis upon receipt of the appropriate conditional and/or unconditional lien releases, all insurance proceeds payable to Tenant under Tenant's insurance required under Sections 10.3.2(ii) and (iii) of this Lease, and Landlord shall repair any injury or damage to the Tenant Improvements, subsequent Alterations and the Original Improvements installed in the Premises and shall return such Tenant Improvements, Alterations and Original Improvements to their original condition; provided that (a) if the cost of such repair by Landlord with respect to Tenant Improvements, Alterations and Original Improvements exceeds the amount of insurance proceeds received by Landlord from Tenant's insurance carrier, the incremental cost differential of such repairs shall be paid by Tenant to the third party escrow account prior to Landlord's commencement of repair of the damage, and

(b) Tenant's insurance proceeds shall be disbursed for all costs and expenses incurred by Landlord in connection with the repair of any such damage pursuant to a disbursement procedure mutually approved by Landlord and Tenant. As long as the Tenant Improvements, subsequent Alterations, and Original Improvements in the Premises are rebuilt, Tenant shall be entitled to retain any portion of the proceeds of the insurance described in Sections 10.3.2 (ii) and (iii) in excess of the cost of such restoration, or, if this Lease terminates, Tenant will receive all of such insurance proceeds to the extent such proceeds exceed Landlord's TI Proceeds. Prior to the commencement of construction, if this Lease does not terminate pursuant to Section 11.2 below or for any other reason, Tenant shall submit to Landlord, for Landlord's review and approval, all plans, specifications and working drawings relating thereto, and Landlord shall select non-affiliated independent third party contractors to perform such improvement work. Landlord shall not be liable for any inconvenience or annoyance to Tenant Parties, or injury to Tenant's business resulting in any way from such damage or the repair thereof; provided however, that if such fire or other casualty shall have damaged the Premises or Common Areas necessary for Tenant to access its Premises and/or to reasonably conduct Tenant's Permitted Use, Landlord shall allow Tenant a proportionate abatement of Rent, during the time and to the extent the Premises are unfit for occupancy for the Permitted Use under this Lease, and not occupied by Tenant as a result thereof, as more specifically described in Section 19.6.2 of this Lease.

**11.2    Landlord's Option to Repair.**  Notwithstanding the TCCs of Section 11.1 of this Lease, Landlord may elect not to rebuild and/or restore the Premises, Building and/or Project, and instead terminate this Lease, by notifying Tenant in writing of such termination within forty-five (45) days after the date of discovery of such damage, such Notice to include a termination date giving Tenant one hundred twenty (120) days to vacate the Premises which period will be extended by a "Force Majeure Event," as that term is defined in Section 29.16 of this Lease, on a day for day basis, but Landlord may so elect only if (a) the Building or Project shall be damaged by fire or other casualty or cause, whether or not the Premises are affected, and (b) one or more of the following conditions is present: (i) in the reasonable judgment of a reputable contractor, registered architect or licensed engineer, repairs cannot reasonably be completed within eighteen (18) months after the date of discovery of the damage (when such repairs are made without the payment of overtime or other premiums); (ii) the holder of any mortgage on the Building or Project with respect to the Building or Project shall require that the insurance proceeds or any portion thereof in excess of the "Landlord Contribution," as that term is defined herein, be used to retire the mortgage debt and (a) Tenant does not agree to fund the amount in excess of Landlord's Contribution required to complete the appropriate repairs, (b) Landlord elects not to commence rebuilding or reconstructing within one (1) year from the date of discovery of such damage and destruction, and (c) the Landlord elects to terminate the lease of all other tenants of the Project similarly affected by the damage and destruction; (iii) the damage is caused by an earthquake or a terrorist act and is not fully covered, except for the Landlord Contribution, by Landlord's insurance policies (or by the insurance Landlord is required to carry under this Lease) and Landlord elects not to commence rebuilding or reconstructing within one (1) year from the date of discovery of such damage and destruction and elects to terminate the leases of all other tenants of the Project similarly affected by the damage and destruction; or (iv) the damage occurs during the last twenty-four (24) months of the Lease Term and such damage would require more than thirty (30) days to repair; provided, however, that if Landlord does not elect to terminate this Lease pursuant to Landlord's termination right as provided above, and the repairs cannot, in the reasonable opinion of a licensed engineer, a registered architect or a reputable contractor

mutually and reasonably agreed upon by Landlord and Tenant, be completed within eighteen (18) months after the damage or destruction is discovered (which period shall not be subject to extension as a result of any Force Majeure Event), or the damage occurs during the last twenty-four (24) months of the Lease Term and such damage would require more than thirty (30) days to repair, Tenant may elect, no earlier than forty-five (45) days after the date of the discovery of such damage and not later than ninety (90) days after the date of discovery of such damage, to terminate this Lease by Notice to Landlord effective as of the date specified in the Notice. At any time, from time to time, after the date occurring forty-five (45) days after the date of the damage, Tenant may request that Landlord provide Tenant with a certificate from the architect or contractor described above setting forth such architect's or contractor's reasonable opinion of the date of completion of the repairs and Landlord shall respond to such request within five (5) business days. For purposes of this Section 11.2, the "Landlord Contribution" shall initially mean Five Million Dollars ($5,000,000.00); provided, however, that such amount shall be reduced by an amount equal to $500,000.00 on the first day of each month following the last day of the fifth (5th) Lease Year.

   **11.3   Waiver of Statutory Provisions**.   The TCCs of this Lease, including this Article 11, constitute an express agreement between Landlord and Tenant with respect to any and all damage to, or destruction of, all or any part of the Premises, the Building or the Project, and any statute or regulation of the State of California, including, without limitation, Sections 1932(2) and 1933(4) of the California Civil Code, with respect to any rights or obligations concerning damage or destruction in the absence of an express agreement between the parties, and any other statute or regulation, now or hereafter in effect, shall have no application to this Lease or any damage or destruction to all or any part of the Premises, the Building or the Project.

## ARTICLE 12

## NONWAIVER

   Except as otherwise provided for herein as a "deemed waiver," no provision of this Lease shall be deemed waived by either party hereto unless expressly waived in a writing signed by such waiving party. The waiver by either party hereto of any breach of any TCC herein contained shall not be deemed to be a waiver of any subsequent breach of same or any other TCC herein contained. The subsequent acceptance of Rent hereunder by Landlord or payment of Rent by Tenant shall not be deemed to be a waiver of any preceding breach by Tenant or Landlord of any TCC of this Lease, other than the failure of Tenant to pay the particular Rent so accepted, regardless of Landlord's or Tenant's knowledge of such preceding breach at the time of acceptance or payment of such Rent. No acceptance of a lesser amount than the Rent herein stipulated shall be deemed a waiver of Landlord's right to receive the full amount due, nor shall any endorsement or statement on any check or payment or any letter accompanying such check or payment be deemed an accord and/or satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the full amount due. No receipt of monies by Landlord from Tenant or by Tenant from Landlord after the termination of this Lease shall in any way alter the length of the Lease Term or of Tenant's right of possession hereunder, or after the giving of any Notice shall reinstate, continue or extend the Lease Term or affect any Notice given Tenant or Landlord prior to the receipt of such monies, it being agreed that after the service of Notice or the commencement of a suit, or after final judgment for possession of the

Premises, Landlord may receive and collect any Rent due and Tenant may receive or collect any payment due, and the payment of said Rent or payment shall not waive or affect said Notice, suit or judgment. Tenant's payment of any Rent hereunder shall not constitute a waiver by Tenant of any default by Landlord under this Lease nor shall Landlord's payment of monies due Tenant hereunder constitute a waiver by Landlord of any Default by Tenant under this Lease.

## ARTICLE 13

## CONDEMNATION

If the whole or any part of the Premises, Building or Project shall be taken by power of eminent domain or condemned by any competent authority for any public or quasi-public use or purpose, or if any adjacent property or street shall be so taken or condemned, or reconfigured or vacated by such authority in such manner as to require the use, reconstruction or remodeling of any part of the Premises, Building or Project and if as a result thereof Tenant cannot conduct its business operations in substantially the same manner such business operations were conducted prior to such taking while still retaining substantially the same  material rights and benefits it bargained to receive under this Lease, or if Landlord shall grant a deed or other instrument in lieu of such taking by eminent domain or condemnation as a result thereof, Landlord and Tenant shall each have the option to terminate this Lease on ninety (90) days Notice to the other party effective as of the date possession is required to be surrendered to the authority. Tenant shall not because of such taking assert any claim against Landlord or the authority for any compensation because of such taking and Landlord shall be entitled to the entire award or payment in connection therewith, except that Tenant shall have the right to file any separate claim available to Tenant for any taking of Tenant's personal property and fixtures belonging to Tenant and removable by Tenant upon expiration of the Lease Term pursuant to the TCCs of this Lease, and for moving expenses and such claim is payable separately to Tenant or is otherwise separately identifiable. Notwithstanding anything in this Article 13 to the contrary, Landlord and Tenant shall each be entitled to receive fifty percent (50%) of the "bonus value" of the leasehold estate in connection therewith, which bonus value shall be equal to the difference between the Rent payable under this Lease and the sum established by the condemning authority as the award for compensation. All Rent shall be apportioned as of the date of such termination. If any part of the Premises shall be taken, and this Lease shall not be so terminated, the Rent shall be proportionately abated. Tenant hereby waives any and all rights it might otherwise have pursuant to Section 1265.130 of The California Code of Civil Procedure. Notwithstanding anything to the contrary contained in this Article 13, in the event of a temporary taking of all or any portion of the Premises for a period of one hundred and eighty (180) days or less, then this Lease shall not terminate but the Base Rent and the Additional Rent shall be abated for the period of such taking in proportion to the ratio that the amount of rentable square feet of the Premises taken bears to the total rentable square feet of the Premises. Landlord shall be entitled to receive the entire award made in connection with any such temporary taking.

# ARTICLE 14

## ASSIGNMENT AND SUBLETTING

**14.1    Transfers**.    Tenant shall not, without the prior written consent (except as otherwise provided in this Section 14.1, or in Sections 14.6 or 14.8 below) of Landlord, which consent will not be conditioned, withheld or delayed except for the reasons set forth in Section 14.2, below, assign, mortgage, pledge, hypothecate, encumber, or permit any lien to attach to and be executed upon, or otherwise voluntarily transfer, this Lease or any interest hereunder, sublet the Premises or any part thereof, or enter into any license or concession agreements or otherwise permit the occupancy or use of the Premises or any part thereof in violation of this Article 14 by any persons other than Tenant and its employees (including, without limitation, full-time employees, part-time employees, and temporary help) and contractors (all of the foregoing are hereinafter sometimes referred to herein individually as a **"Transfer"**, and collectively as **"Transfers"** and any person to whom any Transfer is made or sought to be made is hereinafter sometimes referred to as a **"Transferee"**).    If Tenant desires Landlord's consent to any Transfer, Tenant shall notify Landlord in writing, which Notice (the **"Transfer Notice"**) shall include (i) the proposed effective date of the Transfer, which shall not be less than fifteen (15) days after the date of delivery of the Transfer Notice, (ii) a description of the portion of the Premises to be transferred (the **"Subject Space"**), (iii) all of the TCCs of the proposed Transfer and the consideration therefor, (and upon Landlord's request, shall provide reasonable information as required to allow Landlord to calculate the **"Transfer Premium"**, as that term is defined in Section 14.3 below), in connection with such Transfer, the name and address of the proposed Transferee, a copy of any existing executed and/or proposed documentation pertaining to the proposed Transfer, including any existing operative documents to be executed to evidence such Transfer or the agreements incidental or related to such Transfer but only to the extent that any such documentation and/or documents actually exist; (iv) current financial statements of the proposed Transferee certified by an officer, partner or owner thereof, business credit, bank and personal references and history (if any) of the proposed Transferee; (v) information with regard to the nature of the business such proposed Transferee intends to operate in the Subject Space and how long the proposed Transferee has operated such business, and (vi) an executed estoppel certificate from Tenant in the form attached hereto as **Exhibit E**.    Landlord shall grant or withhold consent to the proposed Transfer within ten (10) business days (the **"Review Period"**) after Landlord's receipt of the applicable Transfer Notice.    In the event that Landlord fails to notify Tenant in writing of such consent or denial of consent within such Review Period Landlord shall be deemed to have approved such Transfer.    Any Transfer requiring Landlord's consent hereunder which is made without Landlord's prior written consent shall, at Landlord's option, be null, void and of no effect.    Whether or not Landlord consents to any proposed Transfer, Tenant shall, within thirty (30) days after written request by Landlord, reimburse Landlord for all reasonable and actual out-of-pocket costs and expenses incurred by Landlord in connection with its review of a proposed Transfer.

**14.2    Landlord's Consent**.    Landlord shall not unreasonably withhold, condition or delay its consent to any proposed Transfer of the Subject Space to the Transferee on the TCCs specified in the Transfer Notice.    The parties hereby agree that reasonable reasons under this Lease and under any Applicable Law for Landlord to withhold consent to any proposed Transfer shall be limited to the following:

**14.2.1**    **Character/Reputation**.  The Transferee is of a character or reputation or engaged in a business which is not consistent with the quality of the Building or the Project as reflected by the then existing tenants of the Project with respect to comparable space and of the Comparable Buildings;

**14.2.2**    **Use**.  The Transferee intends to use the Subject Space for purposes which are not permitted under this Lease;

**14.2.3**    **Governmental Entities**.  The Transferee is either a governmental agency or instrumentality thereof unless Landlord, with respect to the Project, has leased space to, or approved subleases with, comparable (in terms of use, security issues, express or implied power of eminent domain, reputation, character and size of space in the Project) governmental agencies or instrumentalities thereof;

**14.2.4**    **Intentionally Deleted**.

**14.2.5**    **Financial Worth**.  The Transferee is not a party of reasonable financial worth and/or financial stability in light of the responsibilities to be undertaken in connection with the Transfer on the date consent is requested; provided that the terms of this Section 14.2.5 shall not apply to the extent Tenant continues to remain an "investment-grade" credit tenant; or

**14.2.6**    **Exclusives**.  The proposed Transfer would cause a violation of an exclusive right granted by Landlord in good faith in another lease for space in the Project, or would give an occupant of the Project a right to cancel its lease as a result of the proposed use to be made of the space by the sublessee or assignee, provided that upon request from Tenant, Landlord shall provide Notice of all applicable exclusive rights;

**14.2.7**    **Other Restrictions**.  The Project is less than ninety percent (90%) leased, Landlord has sufficient space in the Project available to reasonably meet the needs of such proposed Transferee, and either the proposed Transferee, or any person or entity which directly or indirectly, controls, is controlled by, or is under common control with, the proposed Transferee, (i) occupies space in the Project at the time of the request for consent, which space is not contiguous to the Premises (either on the same floor, or directly above or below a full floor of the Premises), or (ii) is in active, good faith negotiations with Landlord to lease space in the Project at such time, or (iii) has been in active, good faith negotiations with Landlord during the thirty (30) day period immediately preceding the Transfer Notice.

If Landlord consents to any Transfer pursuant to the TCCs of this Section 14.2 (and does not exercise any recapture rights Landlord may have under Section 14.4 of this Lease), Tenant may within nine (9) months after Landlord's consent, but no later than the expiration of said nine (9) month period, enter into such Transfer of the Premises or portion thereof, upon TCCs not materially different than those set forth in the Transfer Notice furnished by Tenant to Landlord pursuant to Section 14.1 of this Lease, provided that if there are any material changes in the TCCs from those specified in the Transfer Notice such that Landlord would initially have been entitled to refuse its consent to such Transfer under this Section 14.2, Tenant shall resubmit to Landlord such revised Transfer Notice.  Notwithstanding anything to the contrary in this Lease,

if Tenant claims that Landlord has unreasonably withheld or delayed its consent under Section 14.2 or otherwise has breached or acted unreasonably under this Article 14, Tenant's sole remedies shall be a declaratory judgment and an injunction for the relief sought together with monetary damages (including attorneys' fees and costs as set forth in Section 29.21), and Tenant hereby waives all other remedies, including, without limitation, any right at law or equity to terminate this Lease, on its own behalf and, to the extent permitted under all applicable laws, on behalf of the proposed Transferee..

    **14.3    Transfer Premium**.  If Landlord consents to a Transfer, as a condition thereto which the parties hereby agree is reasonable, Tenant shall pay to Landlord fifty percent (50%) of any "Transfer Premium," as that term is defined in this Section 14.3, actually received by Tenant from such Transferee; provided, however, that Tenant shall not be required to pay to Landlord any Transfer Premium until such time as Tenant has recovered all applicable "Subleasing Costs," as that term is defined in this Section 14.3.  **"Transfer Premium"** shall mean all rent, additional rent or other consideration payable (in lieu of or in addition to rent) by such Transferee in connection with the Transfer in excess of the Rent and Additional Rent payable by Tenant under this Lease during the term of the Transfer on a per rentable square foot basis if less than all of the Premises is transferred, after deducting the reasonable expenses incurred by Tenant in connection with such Transfer for (i) any improvement allowance or other economic concessions (space planning allowance, moving expenses, etc.) paid by Tenant to Transferee in connection with such Transfer; (ii) any   brokerage commissions in connection with the Transfer; (iii) reasonable attorneys' fees incurred by Tenant in connection with the Transfer or paid to Landlord pursuant to Section 14.1; (iv) any lease takeover incurred by Tenant in connection with the Transfer; (v) out-of-pocket costs of advertising the space subject to the Transfer; and (vi) the aggregate amount of Base Rent and Additional Rent paid by Tenant during the period prior to the commencement of the term of the transfer during which Tenant does not occupy the Subject Space, commencing on and after the Downtime Start Date (as defined below) (collectively, **"Subleasing Costs"**).  The **"Downtime Start Date"** shall mean the later of (A) the date which Tenant vacates and does not reoccupy the Subject Space and delivers Notice of the same to Landlord, and (B) the date Tenant enters into a listing agreement for the Subject Space with a reputable broker, and provides Landlord with Notice thereof.  "Transfer Premium" shall also include, but not be limited to, key money, bonus money or other cash consideration paid by Transferee to Tenant in connection with such Transfer, and any payment in excess of fair market value for services rendered by Tenant to Transferee or for assets, fixtures, inventory, equipment, or furniture transferred by Tenant to Transferee in connection with such Transfer.  Under no circumstances shall Landlord be paid any Transfer Premium until Tenant has recovered all Subleasing Costs for such Transferred Space, it being understood that if in any year the gross revenues, less the deductions set forth and included in Subleasing Costs, are less than any and all costs actually paid in assigning or subletting the affected space (collectively **"Transaction Costs"**), the amount of the excess Transaction Costs shall be carried over to the next year and then deducted from net revenues with the procedure repeated until a Transfer Premium is achieved.

    **14.4    Landlord's Option as to Subject Space**.  Notwithstanding anything to the contrary contained in this Article 14, in the event that Tenant contemplates any Transfer (**"Contemplated Transfer"**), in excess of one (1) full floor or all of the space leased by Tenant on a multi-tenant floor, then Tenant shall give Landlord notice (**"Intention to Transfer Notice"**)

of such Contemplated Transfer.  The Intention to Transfer Notice shall specify the portion and amount of rentable square feet of the Premises which Tenant intends to transfer ("**Contemplated Transfer Space**"), the corridor and/or demising wall, to the extent applicable, which are to be constructed, the contemplated date of the commencement of the Contemplated Transfer ("**Contemplated Effective Date**"), and the contemplated length of the term of such Contemplated Transfer, and shall specify that such Intention to Transfer Notice is delivered to Landlord pursuant to this <u>Section 14.4</u> in order to allow Landlord to elect to recapture the Contemplated Transfer Space which, when aggregated with any prior Transfers, exceeds one (1) full floor, or all of the space leased by Tenant on a multi-tenant floor, which portion that is subject to recapture shall be specified by Tenant, as long as such portion is in a commercially reasonable configuration, in the Intention to Transfer Notice.  Thereafter, Landlord shall have the option, by giving written notice to Tenant within fifteen (15) days after receipt of such Intention to Transfer Notice, to recapture such Contemplated Transfer Space upon the basic terms and conditions specified in the Intention to Transfer Notice (the "**Recapture Notice**").  In the event such option is exercised by Landlord, and Tenant does not elect to rescind the Intention to Transfer Notice in accordance with the terms of this <u>Section 14.4</u>, this Lease shall be suspended (or when appropriate, canceled and terminated if the last day of the term of the Contemplated Transfer is the last day of the Lease Term) with respect to the Contemplated Transfer Space commencing as of the date stated in the Intention to Transfer Notice as the Contemplated Effective Date for a period ending upon the last day of the term of the Contemplated Transfer, at which time the Lease shall be reinstated and revived as to the Contemplated Transfer Space.  If Landlord timely exercised its right to recapture by sending Tenant a Recapture Notice, Tenant may rescind the Intention to Transfer Notice upon the delivery of written notice to Landlord given within ten (10) business days of Tenant's receipt of the Recapture Notice.  In the event of a recapture by Landlord, if this Lease shall be suspended without liability to Tenant, or, when appropriate, canceled, with respect to less than the entire Premises, (i) the Rent reserved herein shall be reduced by an amount equal to the product of the number of rentable square feet which is the subject of the Contemplated Transfer times the rental rate or rates under this Lease applicable to such Contemplated Transfer Space, and this Lease as so amended shall continue thereafter in full force and effect, and upon the request of either party, the parties shall execute written confirmation of the same, (ii) Landlord shall install, on a commercially reasonable basis, any corridor and/or demising wall, at Landlord's expense, which is required as a result of the suspension or cancellation of the Lease with respect to less than a full floor of the Premises, and (iii) Landlord shall restore the Contemplated Transfer Space to its condition prior to such recapture upon the reinstatement of this Lease as to the Contemplated Transfer Space.  If Landlord fails to timely elect to recapture the Contemplated Transfer Space under this <u>Section 14.4</u>, then, for a period of six (6) months ("**Six Month Period**") commencing on the last day of such thirty (30) day period, Landlord shall not have any right to recapture the Contemplated Transfer Space with respect to any Transfer made during the Six Month Period, and Tenant may transfer the Contemplated Transfer Space provided that any such Transfer is upon terms not materially inconsistent with the terms set forth in the Intention to Transfer Notice; provided, however, that any such Transfer shall be subject to the remaining terms of this <u>Article 14</u>.  If such a Transfer is not so consummated within the Six Month Period (or if a Transfer is so consummated, then upon the expiration of the term of the Transfer for such Contemplated Transfer Space consummated within such Six Month Period), Tenant shall again be required to submit a new Intention to Transfer Notice to Landlord with respect to any Contemplated

Transfer, as provided in this <u>Section 14.4</u>.  Tenant may deliver a Transfer Notice and an Intention to Transfer Notice simultaneously or at different times and the periods provided for Landlord's approval following its receipt of the same, as set forth in <u>Sections 14.2 and 14.4</u>, respectively, shall commence upon Landlord's receipt of each such notice notwithstanding the fact that such periods may overlap.

      **14.5    <u>Effect of Transfer</u>**.  If Landlord consents to a Transfer, (i) the TCCs of this Lease shall in no way be deemed to have been waived or modified, (ii) such consent shall not be deemed consent to any further Transfer by either Tenant or a Transferee, (iii) Tenant shall deliver to Landlord, promptly after execution, an original executed copy of all documentation pertaining to the Transfer; (iv) Tenant shall furnish upon Landlord's request not more often than once every twelve (12) months a complete statement, certified by an independent certified public accountant, or Tenant's chief financial officer, setting forth in detail the computation of any Transfer Premium Tenant has derived and shall derive from such Transfer, and (v) no Transfer relating to this Lease or agreement entered into with respect thereto, whether with or without Landlord's consent, shall relieve Tenant from any liability under this Lease, including, without limitation, in connection with the Subject Space.  Landlord or its authorized representatives shall have the right at all reasonable times to audit the books, records and papers of Tenant relating to any Transfer, and shall have the right to make copies thereof.

      **14.6    <u>Occupancy by Others</u>**.    Notwithstanding any contrary provision of this <u>Article 14</u>, Tenant shall have the right without the payment of a Transfer Premium and without the receipt of Landlord's consent, and without prior Notice to Landlord, to permit the occupancy of portions of the Premises to any individual(s) or entities with a business relationship with Tenant (**"Tenant's Occupants"**) on an subject to the following conditions: (i) all such individuals or entities shall be of a character and reputation consistent with the types of people generally rendering similar types of services in the legal or business profession; (ii) such occupancy shall not be a subterfuge by Tenant to avoid its obligation under this Lease or the restrictions on Transfers pursuant to this <u>Article 14</u>, (iii) in the aggregate, such Tenant's Occupants do not occupy more than twenty percent (20%) of the Premises; (iv) such Tenant's Occupants do not have a separately demised space or separate exclusive entrance to their space. Tenant shall promptly supply Landlord with any document or information reasonably requested by Landlord regarding any such individuals or entities.  Any occupancy permitted under this <u>Section 14.6</u> shall not be deemed a Transfer under this <u>Article 14</u>.  Notwithstanding the foregoing, no such occupancy shall relieve Tenant from any liability under this Lease.

      **14.7    <u>Occurrence of Material Default</u>**.  Any Transfer hereunder shall be subordinate and subject to the TCCs of this Lease, and if this Lease shall be terminated during the term of any Transfer, Landlord shall have the right, except as provided by <u>Section 14.9</u> to (i) treat such Transfer (other than a Transfer by assignment of the entire Lease) as canceled and repossess the Subject Space by any lawful means, or (ii) require that such Transferee attorn to and recognize Landlord as its landlord under any such Transfer.  If Tenant shall be in Material Default under this Lease, Landlord is hereby irrevocably authorized, as Tenant's agent and attorney-in-fact, to direct any Transferee to make all payments under or in connection with the Transfer directly to Landlord (which Landlord shall apply towards Tenant's obligations under this Lease) until such Material Default is waived or cured.  Such Transferee shall rely on any written representation by Landlord that Tenant is in Material Default hereunder, without any need for confirmation thereof

by Tenant. Upon any assignment, the assignee shall assume in writing all obligations and covenants of Tenant thereafter to be performed or observed under this Lease. No collection or acceptance of rent by Landlord from any Transferee shall be deemed a waiver of any provision of this Article 14 or the approval of any Transferee or a release of Tenant from any obligation under this Lease (other than with respect to the obligation covered by the collection or acceptance of rent by Landlord), whether theretofore or thereafter accruing. Except to the extent necessary to prevent a double recovery (so Landlord cannot recover the same amount twice), in no other event shall Landlord's enforcement of any TCC of this Lease against any Transferee be deemed a waiver of Landlord's right to enforce any TCC of this Lease against Tenant or any other person.

**14.8    Non-Transfers.**    Notwithstanding anything to the contrary contained in this Lease, an assignment or subletting to, or use or occupancy of, all or a portion of the Premises by, (a) an affiliate of Tenant (an entity which directly or indirectly, through one or more intermediaries, is controlled by, controls or is under common control, as such term is defined in California General Corporations Code ("**CGCC**") Sections 160 and 5045, with, Tenant); (b) an entity which merges with or acquires or is acquired by, Tenant or a parent of Tenant, or a subsidiary, of Tenant's parent or Affiliate, or (c) a transferee of all, substantially all, or a significant portion of the assets of Tenant, (d) Neuberger Berman, or (e) any other entity which will qualify as an "affiliate" under CGCC 150 and 5031 (a, b, c, d and e to be collectively be referred to herein as an "**Affiliate**"), may occur freely without restriction and without any need for any consents or approval by Landlord, shall not be deemed a Transfer under this **Article 14**, and no Transfer Premium shall be payable, and shall not result in such party being deemed or considered a Transferee hereunder, provided that such assignment or sublease is not a subterfuge by Tenant to avoid its obligations under this Lease. For purposes of this Section 14.8: (i) "control" of an entity shall mean the possession, direct or indirect, of the power to direct or cause the direction of the management or policies of such entity; (ii) a "parent" of an entity shall mean the owner of fifty percent (50%) or more of the voting power of such entity or an entity otherwise possessing the power, indirectly or directly, to direct the management or policies of such entity; and (iii) a "subsidiary" of an entity shall mean an entity of which at least fifty percent (50%) of its voting power is owned directly or indirectly through one or more subsidiaries of the specified entity.

**14.9    Landlord's Recognition of Transfers Upon Lease Termination.**    At Tenant's written request, Landlord shall, concurrently with the granting of Landlord's consent to the Sublease, execute a commercially reasonable recognition agreement (the "**Recognition Agreement**") in favor of a Transferee who is a subtenant of Tenant (the "**Subtenant**"), which provides that in the event this Lease is terminated, Landlord shall recognize the sublease between such Subtenant and Tenant (the "**Sublease**") and not disturb such Subtenant's possession of the Premises or applicable portion thereof (the "**Sublease Space**"), due to such termination; provided that (i) at the time of Tenant's request for Landlord's execution of the Recognition Agreement, such Transfer contains the same economic Rent set forth in this Lease, subject to equitable modifications based on the number of rentable square feet contained in the Sublease Space provided, however, the economic terms of such Transfer may be more favorable to Landlord than those set forth in this Lease; or the Sublease provides that upon a Material Default by Tenant under this Lease which results in the termination of this Lease, the Subtenant receiving the Recognition Agreement shall be subject to the same TCCs set forth in this Lease, subject to

equitable modifications based on the number of rentable square feet contained in the Subleased Space; (ii) the Sublease Space consists of only full floors of the Premises; (iii) the sublease is not contiguous on both sides to floors of the Building containing a portion of the Premises which is not a part of such sublease; (iv) Landlord shall not be liable for any act or omission of Tenant; (v) Landlord shall not be subject to any offsets or defenses which the Subtenant might have as to Tenant or to any claims for damages against Tenant, nor shall Landlord be obligated to fund to, or for the benefit of, Subtenant, any undisbursed tenant improvement or refurbishment allowance or other allowances or monetary concessions unless same has been granted to Tenant and transferred to Subtenant; (vi) Landlord shall not be required or obligated to credit the Subtenant with any rent or additional rent paid by the Subtenant to Tenant; (vii) Landlord shall not be bound by any TCCs of the Sublease which are inconsistent with the TCCs of this Lease; (viii) such recognition shall be effective upon, and Landlord shall be responsible for performance of only those covenants and obligations of Tenant pursuant to the Sublease accruing after, the termination of this Lease; (ix) as a condition to Landlord's obligation to enter into the Recognition Agreement, Landlord shall have the right to reasonably approve the creditworthiness and financial strength of the Subtenant, which reasonable approval shall be based upon the creditworthiness and financial strength then generally required by Landlord and landlords of the Comparable Buildings of a new tenant who is leasing space of a rentable area comparable to the rentable area of the Sublease Space for a term equal to the remaining Lease Term, who is granted concessions comparable to the concessions, if any, granted to the Subtenant, and who is assuming the monetary obligations under the Sublease; and (x) the Subtenant shall make full and complete attornment to Landlord, as lessor, pursuant to a written agreement executed by Landlord and the Subtenant, so as to establish direct privity of contract between Landlord and the Subtenant with the same force and effect as though the Sublease was originally made directly between Landlord and the Subtenant. Upon Landlord's written request given any time after the termination of this Lease, the Subtenant shall execute a lease for the space subject to the applicable Sublease upon the same TCCs as set forth in the Recognition Agreement. In the event Landlord enters into a Recognition Agreement with any particular Subtenant pursuant to the TCCs of this <u>Section 14.9</u>, Tenant hereby acknowledges and agrees that, for purposes of calculating the damages due Landlord following Tenant's breach and Landlord's termination of this Lease, with respect to any such Sublease Space, Landlord shall be deemed to have adequately mitigated its damages in accordance with Applicable Law for the portion of the Premises covered by an applicable Recognition Agreement(s).

## ARTICLE 15

## SURRENDER OF PREMISES; OWNERSHIP AND REMOVAL OF TRADE FIXTURES

**15.1    Surrender of Premises**. No act or thing done by Landlord Parties or Tenant Parties during the Lease Term shall be deemed to constitute an acceptance by Landlord of a surrender of the Premises unless such intent is specifically acknowledged in writing by Landlord and Tenant. The delivery of keys to the Premises to any Landlord Parties shall not constitute a surrender of the Premises or effect a termination of this Lease, whether or not the keys are thereafter retained by Landlord, and notwithstanding such delivery Tenant shall be entitled to the return of such keys at any reasonable time upon request until this Lease shall have been properly terminated. The voluntary or other surrender of this Lease by Tenant, whether accepted by Landlord or not, or a mutual termination hereof, shall not work a merger, and at the option of

Landlord shall operate as an assignment to Landlord of all subleases or subtenancies affecting the Premises or terminate any or all such sublessees or subtenancies except as provided in Section 14.9 above. Nothing in this Lease shall require Tenant to repair or patch normal holes or indentations in walls, floors, wall coverings and/or floor coverings or to remove inter-connecting stairwells and/or staircases.

15.2   **Removal of Tenant Property by Tenant**. Upon the expiration of the Lease Term, or upon any earlier termination of this Lease, Tenant shall, subject to the TCCs of this Article 15 and Section 8.2 and Section 8.5 of this Lease, quit and surrender possession of the Premises to Landlord in as good order and condition as when Tenant took possession and as thereafter improved by Landlord and/or Tenant, reasonable wear and tear and repairs which are specifically made the responsibility of Landlord hereunder, and damage from casualty excepted. Tenant shall remove all debris and rubbish, and such items of furniture, equipment, business and trade fixtures, free-standing cabinet work, movable partitions and other articles of personal property owned by Tenant or installed or placed by Tenant at its expense in the Premises. Upon such expiration or termination, Tenant shall provide Landlord with a notice of vacation ("**Vacation Notice**"). Within thirty (30) days after Landlord's receipt of such Vacation Notice, Landlord shall contact Tenant for the purpose of conducting an exit walk-through of the Premises with Tenant. The walk-through shall occur within forty-five (45) days after Landlord's receipt of such Vacation Notice. The exit walk-through is to be conducted on a date and time mutually acceptable to Landlord and Tenant; however, if the parties are unable to agree on a time and date, such walk-through shall be conducted at 10:00 a.m. on the forty-fifth (45th) day after such Vacation Notice; except if such day falls on a Holiday, Saturday or Sunday in which case such walk-through shall be conducted on the next business day. Within five (5) business days after such walk-through, Landlord will provide Tenant with a list of items, if any, that are Tenant's responsibility pursuant to this Section 15.2 or Section 8.5 of this Lease. If Tenant concurs with such list, Tenant shall proceed to comply with same. If Tenant disagrees with Landlord, Landlord and Tenant shall attempt to agree and modify the list in accordance with such agreement. In the event Landlord and Tenant cannot agree on such list, either party may submit such dispute to arbitration pursuant to Section 29.17 of this Lease.

## ARTICLE 16

## HOLDING OVER

16.1   **Rent During Holdover**. If Tenant holds over after the expiration of the Lease Term or earlier termination thereof, such tenancy shall be from month-to-month only, and shall not constitute a renewal hereof or an extension for any further term, and in such case Rent shall be payable at a monthly rate equal to 150% (the "**Percentage Increase**") of the Rent applicable during the last rental period of the Lease Term under this Lease; provided, however, that during the first sixty (60) days of the holdover, the Percentage Increase shall be one hundred twenty-five percent (125%). Such month-to-month tenancy shall be subject to every other applicable term, covenant and agreement contained herein. Nothing contained in this Article 16 shall be construed as consent by Landlord to any holding over by Tenant, and Landlord expressly reserves the right to require Tenant to surrender possession of the Premises to Landlord as provided in this Lease upon the expiration or other termination of this Lease. The provisions of this Article 16 shall not be deemed to limit or constitute a waiver of any other rights or remedies

of Landlord provided herein or at law. If Tenant fails to surrender the Premises within thirty (30) days following the termination or expiration of this Lease, then in addition to any other liabilities to Landlord accruing therefrom, Tenant shall protect, defend, indemnify and hold Landlord harmless from all loss, costs (including reasonable attorneys' fees) and liability resulting from such failure, including, without limiting the generality of the foregoing, any claims made by any succeeding tenant founded upon such failure to surrender and any lost profits to Landlord resulting therefrom.

     **16.2**   **Short-Term Lease Extension**. Notwithstanding anything to the contrary set forth in <u>Section 16.1</u>, above, Tenant shall have the right, upon the expiration of the initial Lease Term or any Option Term, to extend the Lease Expiration Date for a period of thirty (30) days, by giving written notice to Landlord of such election not less than twelve (12) months prior to the scheduled Lease Expiration Date. Upon such election, the Lease Term shall be extended for a period of thirty (30) days on all of the terms and conditions of this Lease (the "**Approved Hold Over Period**"), provided that the Base Rent payable during the Approved Hold Over Period shall be equal to 110% of the Base Rent payable immediately prior to the scheduled Lease Expiration Date.

**ARTICLE 17**

**ESTOPPEL CERTIFICATES**

     Within fifteen (15) business days following a request in writing by Landlord or Tenant, Tenant or Landlord, as the case may be, shall execute, acknowledge and deliver to the requesting party (the "**Requesting Party**"), an estoppel certificate, which, as submitted by the Requesting Party, shall be substantially in the reasonable form of **Exhibit E**, attached hereto (or such other commercially reasonable form as may be required by any prospective mortgagee or purchaser of the Project, or any portion thereof, or any assignee or sublessee), indicating therein any exceptions thereto that may exist at that time, and shall also contain any other information reasonably requested by the Requesting Party or Landlord's mortgagee or prospective mortgagee or Tenant's Transferee, as the case may be. Neither party shall make such a request more than two (2) times in any twelve (12) month period (unless required more often as a result of a pending bona fide sale or financing of the Project, or a Tenant financing). The appropriate modification shall be made to **Exhibit E** when Tenant is the Requesting Party Any such certificate may be relied upon by any prospective mortgagee or purchaser of all or any portion of the Project. At any time during the Lease Term, but no more than two times in any twelve (12) month period (unless required more often as a result of a pending bona fide sale or financing of the Project or Building), Landlord may require Tenant to provide Landlord with the most recent financial statements of Tenant and financial statements of Tenant for the two (2) years prior to the most recent financial statement of Tenant. Such statements shall be prepared in accordance with generally accepted accounting principles and shall be audited by an independent certified public accountant. Failure of Tenant or Landlord, as the case may be, to timely execute, acknowledge and deliver such estoppel certificate or other instruments upon five (5) additional business days Notice from the Requesting Party advising the other party of the consequences of a non-response, shall constitute an acceptance of the premises stated herein and an acknowledgment by the other party that statements included in the estoppel certificate are true and correct, without exception.

# ARTICLE 18

## SUBORDINATION

Landlord shall cause Landlord's current lender to provide a non-disturbance agreement, in a form reasonably satisfactory to Tenant, to Tenant. Subject to Tenant's receipt of an appropriate non-disturbance agreement(s) as set forth below, this Lease shall be subject and subordinate to all present and future ground or underlying leases of the Building or Project and to the lien of any mortgage, trust deed or other encumbrances now or hereafter in force against the Building or Project or any part thereof, if any, and to all renewals, extensions, modifications, consolidations and replacements thereof, and to all advances made or hereafter to be made upon the security of such mortgages or trust deeds, unless the holders of such mortgages, trust deeds or other encumbrances, or the lessors under such ground lease or underlying leases, require in writing that this Lease be superior thereto. Landlord's delivery to Tenant of commercially reasonable non-disturbance agreement(s) (the **"Nondisturbance Agreement"**) in favor of Tenant from any ground lessors, mortgage holders or lien holders of Landlord who later come into existence at any time prior to the expiration of the Lease Term shall be in consideration of, and a condition precedent to, Tenant's agreement to be bound by the TCCs of this Article 18. Tenant and Landlord acknowledge that the form of Nondisturbance Agreement attached hereto as **Exhibit G** is a commercially reasonable Nondisturbance Agreement, but that such form is subject to reasonable modifications. Such commercially reasonable non-disturbance agreement(s), except as set forth in **Exhibit G** to the contrary, shall include the obligation of any such successor ground lessor, mortgage holder or lien holder to recognize Tenant's rights specifically set forth in this Lease to offset certain amounts against Rent due hereunder (failure to pay allowances, arbitration awards, commissions, etc.) and Landlord's obligations to comply with the TCCs of this Lease, or to otherwise receive certain credits against Rent as set forth herein. Subject to Tenant's receipt of the non-disturbance agreement(s) described above, Tenant covenants and agrees in the event any proceedings are brought for the foreclosure of any such mortgage or deed in lieu thereof (or if any ground lease is terminated), to attorn to the lienholder or purchaser or any successors thereto upon any such foreclosure sale or deed in lieu thereof (or to the ground lessor), to recognize such purchaser or lienholder or ground lessor as the lessor under this Lease, provided such lienholder or purchaser or ground lessor shall agree to accept this Lease and not disturb Tenant's occupancy, so long as Tenant is not in Material Default of this Lease. Landlord's interest herein may be assigned as security at any time to any lienholder. Tenant shall, within ten (10) days of request by Landlord, execute such further instruments or assurances as Landlord may reasonably deem necessary to evidence or confirm the subordination or superiority of this Lease to any such mortgages, trust deeds, ground leases or underlying leases in accordance with the TCCs of this Article 18. Subject to Tenant's receipt of the Nondisturbance Agreement described herein, Tenant waives the provisions of any current or future Applicable Law which may give or purport to give Tenant any right or election to terminate or otherwise adversely affect this Lease and the obligations of the Tenant hereunder in the event of any foreclosure proceeding or sale.

# ARTICLE 19

## DEFAULTS; REMEDIES

**19.1    Events of Default**.  The occurrence of any of the following shall constitute a default of this Lease by Tenant (a "**Default**"):

**19.1.1    Payments**.  Any failure by Tenant to pay any Base Rent or Tenant's Share of Direct Expenses, within five (5) business days after Notice that the same was not paid when due, or any failure by Tenant to pay any other material amount of Rent or any other charge required to be paid under this Lease, or any part thereof, when due unless such failure is cured within ten (10) business days after Notice that the same was not paid when due; or

**19.1.2    Performance Obligations**.  Any failure by Tenant to observe or perform any other TCC of this Lease to be observed or performed by Tenant where such failure continues for thirty (30) days after Notice thereof from Landlord to Tenant; provided that if the nature of such failure is such that the same cannot reasonably be cured within a thirty (30) day period, Tenant shall not be deemed to be in Default if it diligently commences such cure within such period and thereafter diligently proceeds to rectify and cure such failure as soon as reasonably possible; or

**19.1.3    Estoppels and Subordination**.  The failure by Tenant to observe or perform according to the TCCS of Articles 17 or 18 of this Lease where such failure continues for more than five (5) business days after notice from Landlord; or

**19.1.4    Use and Transfer**.  The failure by Tenant to observe or perform according to the TCCS of Articles 5 or 14 of this Lease where such failure continues for more than fifteen (15) business days after notice from Landlord.

The Notice periods provided herein are in addition of, and not in lieu of, any notice periods provided by Applicable Law.  As used in this Lease, the term "**Material Default**" shall mean any Default under Section 19.1.1, above, and any material Default under any other provision of this Section 19.1.

**19.2    Remedies Upon Default**.  Upon the occurrence of any event of Default by Tenant, Landlord shall have, in addition to any other remedies available to Landlord at law or in equity (all of which remedies shall be distinct, separate and cumulative), the option to pursue any one or more of the following remedies, each and all of which shall be cumulative, to the extent not resulting in a duplicative recovery, and nonexclusive, without any notice or demand whatsoever.

**19.2.1    Termination of Lease**.  Terminate this Lease, in which event Tenant shall immediately surrender the Premises to Landlord, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which it may have for possession or arrearages in Rent, after due process of law, enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying the Premises or any part thereof, without being liable for prosecution or any claim or damages therefor; and Landlord may recover from Tenant the following:

(i)        The worth at the time of award of any unpaid rent which has been earned at the time of such termination; plus

(ii)        The worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that Tenant proves could have been reasonably avoided; plus

(iii)        The worth at the time of award of the amount by which the unpaid rent for the balance of the Lease Term after the time of award exceeds the amount of such rental loss that Tenant proves could have been reasonably avoided; plus

(iv)        Any other amount necessary to compensate Landlord for all the detriment proximately caused by Tenant's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom, specifically including but not limited to, brokerage commissions and advertising expenses incurred, expenses of remodeling the Premises or any portion thereof for a new tenant, whether for the same or a different use, and any special concessions made to obtain a new tenant but in no event including consequential damages; and

(v)        At Landlord's election but subject to the provisions of this Lease, such other amounts in addition to or in lieu of the foregoing as may be permitted from time to time by Applicable Law.

As used in Sections 19.2.1(i) and (ii), above, the "worth at the time of award" shall be computed by allowing interest at the rate set forth in Article 25 of this Lease, but in no case greater than the maximum amount of such interest permitted by law.    As used in Section 19.2.1(iii) above, the "worth at the time of award" shall be computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award plus one percent (1%).

    **19.2.2    1951.4 Remedy**.    Landlord shall have the remedy described in California Civil Code Section 1951.4 (lessor may continue lease in effect after lessee's breach and abandonment and recover rent as it becomes due, if lessee has the right to sublet or assign, subject only to reasonable limitations).  Accordingly, if Landlord does not elect to terminate this Lease on account of any Default by Tenant, Landlord may, from time to time, without terminating this Lease, enforce all of its rights and remedies under this Lease, including the right to recover all Rent as it becomes due.

    **19.2.3    Remedies Available at Law**.    Landlord shall at all times have the rights and remedies (which shall be cumulative with each other and cumulative and in addition to those rights and remedies available under Sections 19.2.1 and 19.2.2, above, or any law or other provision of this Lease), without prior demand or notice except as required by applicable law and this Lease, to seek any declaratory, injunctive or other equitable relief, and specifically enforce this Lease, or restrain or enjoin a violation or breach of any provision hereof.

    **19.3    Subleases of Tenant**.    Whether or not Landlord elects to terminate this Lease on account of any Default by Tenant, as set forth in this Article 19, Landlord shall have the right to terminate any and all subleases, licenses, concessions or other consensual arrangements for