possession entered into by Tenant and affecting the Premises or may, in Landlord's sole discretion, succeed to Tenant's interest in such subleases, licenses, concessions or arrangements; provided, however, the rights of Landlord to terminate are subject to Section 14.9 regarding Recognition Agreement.  In the event of Landlord's election to succeed to Tenant's interest in any such subleases, licenses, concessions or arrangements, Tenant shall, as of the date of Notice by Landlord of such election, have no further right to or interest in the rent or other consideration receivable thereunder.

    **19.4**   **No Waiver of Redemption by Tenant**.  Nothing herein shall be deemed to constitute a waiver of Tenant's right to redeem, by order or judgment of any court or by any legal process or writ, Tenant's right of occupancy of the Premises after any termination of this Lease.

    **19.5**   **Rights of Tenant and Landlord to Specific Performance**.  Landlord and Tenant shall at all times have the rights and remedies (which shall be cumulative with each other and cumulative and in addition to those rights and remedies available under Sections 19.2.1 and 19.2.2, above, or any law or other TCC of this Lease), without prior demand or Notice except as required by Applicable Law and this Lease, to seek any declaratory, injunctive or other equitable relief, and specifically enforce this Lease, or restrain or enjoin a violation or breach of any provision hereof.

    **19.6**   **Landlord Default.**

        **19.6.1**   **General**.  Notwithstanding anything to the contrary set forth in this Lease, Landlord shall be in default in the performance of any obligation required to be performed by Landlord pursuant to this Lease if (i) in the event a failure by Landlord is with respect to the payment of money, Landlord fails to pay such unpaid amounts within ten (10) business days of Notice from Tenant that the same was not paid when due; (ii) the failure of Landlord to perform according to the TCCs of Article 17 of this Lease for more than five (5) business days after Notice from Tenant; or (iii) in the event a failure by Landlord is other than (i) and (ii) above, Landlord fails to perform such obligation within thirty (30) days after the receipt of Notice from Tenant specifying in detail Landlord's failure to perform; provided, however, if the nature of Landlord's obligation is such that more than thirty (30) days are required for its performance, then Landlord shall not be in default under this Lease if Landlord commences such performance within such thirty (30) day period and thereafter diligently pursues the same to completion.  Upon any such default by Landlord under this Lease, Tenant may, except as otherwise specifically provided in this Lease to the contrary, exercise any of its rights provided at law or in equity.

        **19.6.2**   **Abatement of Rent**.  In the event that Tenant is prevented from using, and does not use, the Premises or any portion thereof, as a result of (i) any repair, maintenance or alteration performed by Landlord, or which Landlord failed to perform, after the Lease Commencement Date and required by this Lease, which substantially interferes with Tenant's use of or ingress to or egress from the Building, Project, or Premises or the parking facility; (ii) any failure by Landlord to provide services, utilities or ingress to and egress from the Building, Project, or Premises; or (iii) the presence of Hazardous Materials not brought on the Premises by Tenant Parties (any such set of circumstances as set forth in items (i) through (iii),

above, to be known as an "**Abatement Event**"), then Tenant shall give Landlord Notice of such Abatement Event, and if such Abatement Event continues for five (5) consecutive business days after Landlord's receipt of any such Notice, or occurs for ten (10) non-consecutive business days in a twelve (12) month period (provided Landlord is sent a Notice pursuant to <u>Section 29.18</u> of this Lease of each of such Abatement Event) (in either of such events, the "**Eligibility Period**"), then the Base Rent, Tenant's Share of Direct Expenses and Tenant's obligation to pay for parking shall be abated or reduced, as the case may be, after expiration of the Eligibility Period for such time that Tenant continues to be so prevented from using, and does not use, the Premises, or a portion thereof, in the proportion that the rentable area of the portion of the Premises that Tenant is prevented from using, and does not use ("**Unusable Area**"), bears to the total rentable area of the Premises (taking into account that the Base Rent payable with respect to each portion of the Premises) and Landlord shall pay to Tenant, to the extent covered by insurance retained by Landlord, any incremental reasonable, out-of-pocket expense that Tenant incurs in relocating the functions previously performed in the Unusable Area to a different location. For this purpose, an incremental expense shall be any expense that Tenant incurs in relocating from the Unusable Area to a temporary location and then relocating back to the Unusable Area after such area has been repaired or restored in accordance with the terms of this Lease, which costs Tenant would not have had to incur but for such relocation. In the event that Tenant is prevented from using, and does not use, the Unusable Area for a period of time in excess of the Eligibility Period and the remaining portion of the Premises is not sufficient to allow Tenant to effectively conduct its business therein, and if Tenant does not conduct its business from such remaining portion, then for such time after expiration of the Eligibility Period during which Tenant is so prevented from effectively conducting its business therein, the Base Rent and Tenant's Share of Direct Expenses for the entire Premises shall be abated for such time as Tenant continues to be so prevented from using, and does not use, the Premises. If, however, Tenant reoccupies any portion of the Premises during such period, the Rent allocable to such reoccupied portion, based on the proportion that the rentable area of such reoccupied portion of the Premises bears to the total rentable area of the Premises, shall be payable by Tenant from the date Tenant reoccupies such portion of the Premises. Such right to abate Base Rent and Tenant's Share of Direct Expenses shall be Tenant's sole and exclusive remedy at law or in equity for an Abatement Event; provided, however, that if Landlord has not cured such Abatement Event within eighteen (18) months after receipt of Notice from Tenant, Tenant shall have the right to terminate this Lease during the first ten (10) business days of each calendar month following the end of such eighteen (18) months period until such time as Landlord has cured the Abatement Event, which right may be exercised only by delivery of thirty (30) days' notice to Landlord (the "**Abatement Event Termination Notice**") during such ten (10) business-day period, and shall be effective as of a date set forth in the Abatement Event Termination Notice (the "**Abatement Event Termination Date**"), which Abatement Event Termination Date shall not be less than thirty (30) days, and not more than one (1) year, following the delivery of the Abatement Event Termination Notice. Notwithstanding anything contained in this <u>Section 19.6.2</u> to the contrary, Tenant's Abatement Event Termination Notice shall be null and void (but only in connection with the first notice sent by Tenant with respect to each separate Abatement Event) if Landlord cures such Abatement Event within such thirty (30) day period following receipt of the Abatement Event Termination Notice. If Tenant's right to abatement occurs under <u>Articles 11 or 13</u> of this Lease because of an eminent domain taking, condemnation and/or because of damage or destruction to the Premises, the Project's parking facility, and/or the Project, Tenant's abatement period shall continue until

Tenant has been given sufficient time, and sufficient ingress to, and egress from the Premises, to rebuild such portion it is required to rebuild, to install its property, furniture, fixtures, and equipment to the extent the same shall have been removed as a result of such damage or destruction or temporary taking and to move in over a weekend. To the extent Tenant is entitled to abatement because of an event covered by Articles 11 or 13 of this Lease, then the Eligibility Period shall not be applicable. Except as provided in this Section 19.6.2, nothing contained herein shall be interpreted to mean that Tenant is excused from paying Rent due hereunder. Nothing stated in this Section 19.6.2 shall cause the Lease Term to continue if, according to other TCCs of the Lease, this Lease is to be terminated or ended.

19.6.3    **Efforts to Relet**. No re-entry or repossession, repairs, maintenance, changes, alterations and additions, reletting, appointment of a receiver to protect Landlord's interests hereunder, or any other action or omission by Landlord shall be construed as an election by Landlord to terminate this Lease or Tenant's right to possession, or to accept a surrender of the Premises, nor shall same operate to release Tenant in whole or in part from any of Tenant's obligations hereunder, unless express written notice of such intention is sent by Landlord to Tenant.

19.6.4    **Landlord Bankruptcy Proceedings**. In the event that the obligations of Landlord under this Lease are not performed during the pendency of a bankruptcy or insolvency proceeding involving Landlord as the debtor, or following the rejection of this Lease on behalf of Landlord in accordance with Section 365 of the United States Bankruptcy Code, then notwithstanding any provision of this Lease to the contrary, Tenant shall have the right to set off against the Rent next due and owing under this Lease (a) any and all damages caused by such non-performance of Landlord's obligations under this Lease by Landlord, debtor-in-possession, or the bankruptcy trustee, and (b) any and all damages caused by the non-performance of Landlord's obligations under this Lease following any rejection of this Lease in accordance with Section 365 of the United States Bankruptcy Code.

## ARTICLE 20

## COVENANT OF QUIET ENJOYMENT

Landlord covenants that Tenant, until this Lease terminates as a result of Default, shall, during the Lease Term, peaceably and quietly have, hold and enjoy the Premises subject to the TCCs hereof without interference by any other tenant, by Landlord or Landlord's agents, by persons lawfully claiming by or through Landlord, or by persons claiming that Landlord does not have title to the Project. The foregoing covenant is in lieu of any other covenant express or implied, except for those covenants expressly set forth in this Lease.

## ARTICLE 21

## INTENTIONALLY DELETED

## ARTICLE 22

## STORAGE AREA

**22.1    Storage Area**.    Commencing as of the Lease Commencement Date and continuing throughout the initial Lease Term and the Option Terms (if applicable), Tenant shall have the right to lease from Landlord and Landlord shall lease to Tenant, up to Tenant's Share of the storage area in the Building (the "**Storage Area**"), provided that, if Tenant does not elect to lease up to Tenant's Share of the Building storage area within three (3) months after the Lease Commencement Date, Tenant's right to lease Storage Area shall be limited to such areas as are reasonably available as determined by Landlord.    The Storage Area shall be delivered by Landlord to Tenant in its "as-is" condition, provided that it shall be adequately separately demised, with reasonable lighting and ventilation, and in broom clean condition. Notwithstanding anything to the contrary contained herein, Tenant shall have the right, at any time, to terminate its lease of the Storage Area by giving Landlord not less than thirty (30) days prior written notice of such termination.

**22.2    Annual Storage Rent**.    The monthly rental rate for the Storage Area ("**Monthly Storage Rent**") shall be equal to $2.00 per usable square foot per month, with annual three percent (3%) increases throughout the Lease Term, and without any obligation to pay Direct Expenses for such Storage Area.    Such Monthly Storage Rent shall be payable on the first day of each month in advance during the Lease Term at the same time and in the same manner as Base Rent for the Premises.    In the event the Monthly Storage Rent is not paid when due, Landlord shall have the same rights as provided in Article 19 of this Lease for unpaid Rent.    Tenant's Share shall not be increased as a result of Tenant's leasing of the Storage Area.

**22.3    Use of Storage Area**.    Except as herein expressly provided, Tenant agrees not to store any flammable or highly combustible materials in the Storage Area.    Tenant also agrees not to store excess or highly concentrated waste in the Storage Area; it shall be Tenant's responsibility to obtain from Landlord the tolerable limits thereof.    Tenant agrees to use the Storage Area solely for storage purposes (e.g., files, clerical supplies, business forms) and not as office space.    Tenant agrees that Landlord and its agents may enter and inspect the Storage Area and any goods stored therein during regular business hours upon giving not less than three (3) business days prior notice to Tenant and so long as accompanied by a representative of Tenant. Tenant shall, at its sole cost and expense, deliver to Landlord a key for any locks installed by Tenant for Landlord's emergency entrance purposes.    Landlord shall have no obligation to maintain or repair the Storage Area, except to the extent it is damaged by a casualty or the negligence of Landlord and/or the agents or contractors of Landlord.

**22.4    Assignment and Sublease**.    The Storage Area may not be separately assigned or subleased by Tenant or otherwise transferred by Tenant, except in connection with any transfer permissible pursuant to the terms of Article 14 of this Lease.

**22.5    Incorporation of Lease Provisions**.  The provisions of this Lease with regard to the Premises, to the extent applicable and not inconsistent with the provisions of this Article 22, shall be deemed to apply to the Storage Area as though the Storage Area is part of the Premises, and as though the Annual Storage Rent is part of the Base Rent.

### ARTICLE 23

### SIGNS

**23.1    Full Floors**.  Tenant, if the Premises comprise an entire floor of the Building above the ground level of the Building, at its sole cost and expense, may install identification signage anywhere in the Premises including in the elevator lobby and corridors of the Premises, provided that such signs must not be visible from the exterior of the Building.

**23.2    Multi-Tenant Floors**.  If other tenants occupy space on the floor on which the Premises is located, Tenant's identifying signage shall be provided by Landlord, at Tenant's cost, and such signage shall be comparable to that used by Landlord for other similar floors in the Building and shall comply with Landlord's Building standard signage program.

**23.3    Directory Signage**.  Landlord shall provide, at Landlord's expense, space for up to one and four-tenths (1.4) names per each one thousand (1,000) rentable square feet of the Premises on the Building directory in the Building lobby, for designation of Tenant and its employees.  Tenant shall have the directory signage rights set forth in Section 1.1.4 of this Lease, and shall have its pro-rata share of directory signage in the Building lobby.

**23.4    Monument Signage.**

**23.4.1    Tenant Strip on Monument**.  In addition to the rights afforded Tenant in this Section 23, above, and except as hereafter provided, Tenant shall be entitled to install, commencing on the date of Tenant's occupancy of the Building, a sign identifying Tenant (the **"Tenant Monument Sign"**) on an exclusive monument to be constructed at Tenant's expense at the location shown on **Exhibit J** (the **"Monument"**).  To the extent the design, size, color, materials, lighting, etc., of the Tenant Monument Sign are shown on **Exhibit J**, such specifications are deemed approved.  All aspects of the Monument, including without limitation the size, style, materials and design of the Monument shall be subject to Landlord's prior written approval, which approval may be withheld by Landlord in Landlord's reasonable discretion. Tenant acknowledges and agrees that (i) the size of the Monument cannot in any event be larger than the size of the monument maintained by **ILFC** or its successor, and (ii) the location of the Monument cannot in any event be more prominent than the location of the monument maintained by ILFC or its successor, in accordance with the terms of Landlord's lease with ILFC.  Tenant's right to maintain Tenant's Monument Sign shall be conditioned upon Tenant, at all times during the Lease Term, leasing not less than two (2) full floors of the Building, and Tenant's physical occupancy of not less than one (1) full floor of the Building.  Landlord shall only permit a Competitor of Tenant to install a sign on a monument sign at the Project to the extent such Competitor leases and physically occupies at least two hundred percent (200%) of the total square footage then-occupied by Tenant.  Once a Competitor of Tenant installs a sign on the Monument in accordance with the terms of this Section 23.4.1, such Competitor of Tenant shall

continue to have the right to maintain such sign, regardless of whether Tenant thereafter increases the amount of square footage it physically occupies. For the purposes of this Lease, a "**Competitor**" of Tenant shall be defined as any of the entities set forth on **Exhibit L**, attached hereto.

      **23.4.2**   **Installation, Maintenance and Removal**. The costs of the Tenant Monument Sign and the costs of installation, design and maintenance and repair thereof, shall be the sole responsibility of Tenant. At such time as Tenant's right to the Tenant Monument Sign terminates, or at the termination or expiration of this Lease, Tenant shall remove the Tenant Monument Sign, and repair any damage to the Monument caused by the installation or removal thereof, at Tenant's sole cost and expense.

      **23.5**   **Prohibited Signage and Other Items**. Except as specifically set forth in this Article 23, Tenant may not install any signs on the exterior or roof of the Project or the Common Areas. Except as otherwise provided in this Article 23, any signs or other items visible from the exterior of the Premises or Building shall be subject to the prior approval of Landlord, in its sole discretion. Any such signs, notices, logos, pictures, names or advertisements which are installed and that have not been separately approved by Landlord may be removed upon two (2) business days notice by Landlord to Tenant at the sole expense of Tenant.

**ARTICLE 24**

**COMPLIANCE WITH LAW**

      Tenant shall not do anything or suffer anything to be done in or about the Premises or the Project which will in any way conflict with any law, statute, ordinance, decree, code, common law, judgment, order, ruling, award or other governmental or quasi-governmental rule, regulation or requirement now in force or which may hereafter be enacted or promulgated including any "Environmental Laws" as that term is defined in Section 29.40.1 of this Lease ("**Applicable Law**"). At its sole cost and expense, Tenant shall promptly comply with all such governmental measures to the extent that such governmental measures relate to Tenant's use of the Premises. Should any standard or regulation now or hereafter be imposed on Landlord or Tenant by a state, federal or local governmental body charged with the establishment, regulation and enforcement of occupational, health or safety standards for employers, employees, landlords or tenants, then Tenant agrees, subject to Article 7 of this Lease, at its sole cost and expense, to comply promptly with such standards or regulations to the extent such standards or regulations relate to Tenant's use of the Premises; provided that, notwithstanding the foregoing, Landlord shall comply with any standards or regulations which relate to the Base Building or the Building Structure or Building Systems, unless such compliance obligations are triggered by the use or improvement of the Premises for other than normal and customary business office purposes, in which event such compliance obligations shall be at Tenant's sole cost and expense. The judgment of any court of competent jurisdiction or the admission by either party hereto in any judicial action, regardless of whether this other party is a party thereto, that such other party has violated any of said governmental measures, shall be conclusive of that fact as between Landlord and Tenant. Landlord shall comply with all Applicable Laws relating to the Project, Base Building and Building Systems, provided that compliance with such Applicable Laws is not the responsibility of Tenant under this Lease, and provided further that Landlord's failure to comply therewith

would prohibit Tenant from obtaining or maintaining a certificate of occupancy for the Premises, or would unreasonably and materially affect the safety of Tenant's Parties or create a significant health hazard for Tenant's Parties or otherwise materially interfere with or materially affect Tenant's Permitted Use and enjoyment of the Premises. Landlord shall be permitted to include in Operating Expenses any costs or expenses incurred by Landlord under this Article 24 to the extent consistent with, and amortized to the extent required by, the TCCs of Section 4.2.4 of this Lease.

## ARTICLE 25

### LATE CHARGES

If any installment of Base Rent shall not be received by Landlord or Landlord's designee within five (5) business days after receipt of a Notice from Landlord that said amount was not paid when due, then Tenant shall pay to Landlord a late charge equal to two percent (2%) of the overdue amount plus any reasonable attorneys' fees incurred by Landlord by reason of Tenant's failure to pay Rent and/or other charges when due hereunder. The late charge shall be deemed Additional Rent and the right to require it shall be in addition to all of Landlord's other rights and remedies hereunder or at law and shall not be construed as liquidated damages or as limiting Landlord's remedies in any manner. In addition to the late charge described above, any Rent or other amounts owing hereunder which are not paid by Landlord or Tenant to the other within ten (10) business days after the date they are due shall bear interest from the date when due until paid at a rate per annum equal to the lesser of (i) the annual **"Bank Prime Loan"** rate cited in the Federal Reserve Statistical Release Publication G.13(415), published on the first Tuesday of each calendar month (or such other comparable index as Landlord and Tenant shall reasonably agree upon if such rate ceases to be published) plus two (2) percentage points, and (ii) the highest rate permitted by Applicable Law.

## ARTICLE 26

### LANDLORD'S RIGHT TO CURE DEFAULT; PAYMENTS BY TENANT

**26.1   Landlord's Cure**. All TCCs to be kept or performed by Tenant under this Lease shall be performed by Tenant at Tenant's sole cost and expense and without any reduction of Rent, except to the extent, if any, otherwise expressly provided in this Lease. If Tenant shall fail to perform any obligation under this Lease, and such failure shall continue in excess of the time allowed under Section 19.1.2, above, then upon three (3) additional days Notice from Landlord, Landlord may, but shall not be obligated to, make any such payment or perform any such act on Tenant's part without waiving its rights based upon any Default of Tenant and without releasing Tenant from any obligations hereunder.

**26.2   Tenant's Reimbursement**. Except as may be specifically provided to the contrary in this Lease, Tenant shall pay to Landlord, upon delivery by Landlord to Tenant of statements therefor sums equal to expenditures reasonably made and obligations reasonably incurred by Landlord in connection with the remedying by Landlord of Tenant's Default pursuant to the TCCs of Section 26.1.

# ARTICLE 27

## ENTRY BY LANDLORD

Landlord reserves the right at all reasonable times and upon reasonable prior Notice to Tenant (except in the case of an emergency) to enter the Premises to (i) inspect them; (ii) show the Premises to prospective purchasers, mortgagees or tenants, or to current or prospective mortgagees, ground or underlying lessors or insurers; (iii) post notices of nonresponsibility; or (iv) alter, improve or repair the Premises, or the Building (including the premises of other tenants of the Building), or for structural alterations, repairs or improvements to the Building Structure or the Building Systems and equipment as required or permitted under this Lease. Notwithstanding anything to the contrary contained in this Article 27, Landlord may enter the Premises at any time to (A) perform services required of Landlord, including janitorial service; (B) take possession due to any Default by Tenant in the manner provided herein; and (C) subject to the TCCs of Section 26.1, perform any covenants of Tenant which Tenant fails to perform. Landlord may make any such entries without the abatement of Rent, except as expressly provided in Section 19.6.2, and may take such reasonable steps as required to accomplish the stated purposes; provided, however, except for emergencies, any such entry shall be performed in a manner so as not to unreasonably interfere with Tenant's use of the Premises and shall be performed after Business Hours if reasonably practical. Except as otherwise set forth in Section 19.6, Tenant hereby waives any claims for damages or for any injuries or inconvenience to or interference with Tenant's business, lost profits, any loss of occupancy or quiet enjoyment of the Premises, and any other loss occasioned thereby. For each of the above purposes, Landlord shall at all times have a key with which to unlock all the doors in the Premises, excluding Tenant's vaults, safes and special security areas designated in advance by Tenant. In an emergency, Landlord shall have the right to use any means that Landlord may deem proper to open the doors in and to the Premises. Notwithstanding anything to the contrary set forth in this Article 27, Tenant may designate certain limited areas of the Premises as "Secured Areas" should Tenant require such areas for the purpose of securing certain valuable property or confidential information. In connection with the foregoing, Landlord shall not enter such Secured Areas except in the event of an emergency. Landlord need not clean any area designated by Tenant as a Secured Area and shall only maintain or repair such Secured Areas to the extent (i) such repair or maintenance is required in order to maintain and repair the Building Structure and/or the Building Systems; (ii) as required by Applicable Law, or (iii) in response to specific requests by Tenant and in accordance with a schedule reasonably designated by Tenant, subject to Landlord's reasonable approval. Any entry into the Premises by Landlord in the manner hereinbefore described shall not be deemed to be a forcible or unlawful entry into, or a detainer of, the Premises, or an actual or constructive eviction of Tenant from any portion of the Premises. No TCCs of this Lease shall be construed as obligating Landlord to perform any repairs, alterations or decorations except as otherwise expressly agreed to be performed by Landlord herein.

# ARTICLE 28

## TENANT PARKING

**28.1    Tenant Parking Passes**.  Tenant shall have the right, but not the obligation, to rent from Landlord, commencing on the Lease Commencement Date, up to the amount of parking passes set forth in Section 9 of the Summary (the "**Allotment**"), on a monthly basis throughout the Lease Term, which parking passes shall pertain to the Project parking facility. Except as provided in this Article 28, Tenant may increase or decrease the number of parking passes it elects to rent (but may not increase such number in excess of the Allotment) on forty-five (45) days prior Notice to Landlord from time to time and at anytime.  Tenant shall pay to Landlord for automobile parking passes on a monthly basis the prevailing rate charged from time to time at the location of such parking passes; provided, however, that such rates shall not increase by more than eight percent (8%) each Lease Year.  Tenant shall abide by all reasonable rules and regulations which are prescribed from time to time for the orderly operation and use of the parking facility where the parking passes are located, including any sticker or other identification system established by Landlord, Tenant's cooperation in seeing that Tenant's employees and visitors also comply with such rules and regulations and Tenant not being in default under this Lease.

**28.2    VIP Executive Parking**.  Tenant shall have the right, but not the obligation, to rent from Landlord, commencing on the Lease Commencement Date, up to eight (8) parking spaces ("**VIP Spaces**") in the "**VIP Executive Parking Area**", which area, together with the exact location of such VIP Spaces allocated to Tenant, are designated on **Exhibit A-3** attached hereto, on a monthly basis throughout the Lease Term.  The number of VIP Spaces leased by Tenant shall be deducted from the number of unreserved parking passes allocated to Tenant pursuant to the terms of Section 28.1, above.  Tenant shall pay to Landlord for such spaces on a monthly basis the prevailing rate charged from time to time at the location of such spaces. During the Lease Term, Tenant shall have the right to reduce the number of VIP Spaces leased by Tenant, provided that Tenant shall not thereafter have the right to increase the number of VIP Spaces leased by Tenant, and if as of February 25, 2008, Tenant fails to rent one or more of the VIP Spaces to which Tenant is entitled pursuant to this Section 28.2, then Tenant shall thereafter only have the right to rent such unused VIP Spaces as available (as determined by Landlord).

**28.3    Visitor Validations**.  Tenant may purchase validations for visitor parking from Landlord or Landlord's parking operator and may elect to validate such parking for its visitors. Tenant shall have the right to purchase visitor validations at a price which is fifteen percent (15%) less than the prevailing rate charged by Landlord for such validations in the Project parking facility at the time the validations are used, provided that such discounted validations are purchased (i) during the first eleven (11) Lease Years of the initial Lease Term, in blocks of not less than Fifteen Thousand Dollars ($15,000.00), and (ii) during the twelfth (12th) Lease Year of the initial Lease Term, and during the Option Terms, if applicable, in blocks of not less than Five Thousand Dollars ($5,000.00).  Parking rates for evenings and weekends shall be a reduced rates comparable to the reduced rates charged at Comparable Buildings.

**28.4    Other Terms**.  Subject to Tenant's express rights under this Lease, Landlord specifically reserves the right to change the size, configuration, design, layout and all other

aspects of the Project parking facility at any time and Tenant acknowledges and agrees that Landlord may, without incurring any liability to Tenant and without any abatement of Rent under this Lease, from time to time, close-off or restrict access to the Project parking facility for purposes of permitting or facilitating any such construction, alteration or improvements. Landlord may delegate its responsibilities hereunder to a parking operator in which case such parking operator shall have all the rights of control attributed hereby to the Landlord. The parking passes rented by Tenant pursuant to this Article 28 are provided to Tenant solely for use by Tenant, Tenant's Occupants, and Tenant's Personnel and such passes may not be transferred, assigned, subleased or otherwise alienated by Tenant (other than in connection with a Transfer made in accordance with the terms of Article 14, above) without Landlord's prior approval. Tenant may validate visitor parking by such method or methods as the Landlord may establish, at the validation rate from time to time generally applicable to visitor parking.

28.5    **Valet Parking**.  To the extent that Landlord makes valet parking available at the Porte Cochere area during the Lease Term, such valet parking shall be available to Tenant on a non-discriminatory basis, at rates as determined by Landlord.

28.6    **Parking Procedures**.  The parking passes initially will not be separately identified; however Landlord reserves the right in its sole and absolute discretion to separately identify by signs or other markings the area to which Tenant's parking passes relate, but not in violation of Section 28.2, above, and in no event in a manner which discriminates against Tenant vis a vis other tenants.  Landlord shall not be responsible to Tenant for any loss or damage to any vehicle or other property or for any injury to any person.  Tenant's parking passes shall be used only for parking of automobiles no larger than full size passenger automobiles, sport utility vehicles or pick-up trucks.  Tenant shall comply with all reasonable rules and regulations which may be adopted by Landlord from time to time with respect to parking and/or the parking facilities servicing the Project, which are applied to all other tenants on a non-discriminatory basis, and which do not alter the rights specifically granted Tenant under this Lease.  Tenant shall not at any time use more parking passes than the number so allocated to Tenant or park its vehicles or the vehicles of others in any portion of the Project parking facility not designated by Landlord as a non-exclusive parking area.  Tenant shall not have the exclusive right to use any specific parking space.  If Landlord grants to any other tenant the exclusive right to use any particular parking space(s), Tenant shall not use such spaces.  All trucks (other than pick-up trucks) and delivery vehicles shall be (i) parked at the loading dock of the Building, (ii) loaded and unloaded in a manner which does not interfere with the businesses of other occupants of the Project, and (iii) permitted to remain on the Project only so long as is reasonably necessary to complete loading and unloading.  In the event Landlord is required by any law to limit or control parking, whether by validation of parking tickets or any other method of assessment, Tenant agrees to participate in such validation or assessment program under such reasonable rules and regulations as are from time to time established by Landlord.

## ARTICLE 29

## MISCELLANEOUS PROVISIONS

29.1    **Terms; Captions**.  The words "Landlord" and "Tenant" as used herein shall include the plural as well as the singular.  The necessary grammatical changes required to make

the provisions hereof apply either to corporations or partnerships or individuals, men or women, as the case may require, shall in all cases be assumed as though in each case fully expressed. The word "person" shall also include "entities". The captions of Articles and Sections are for convenience only and shall not be deemed to limit, construe, affect or alter the meaning of such Articles and Sections. Notwithstanding the foregoing, whenever in this Lease a reference is made to an Article, such reference shall include all Sections in such Article and whenever a reference is made to a Section, all such references shall include all subsections with the same pre-numeric identification. The term "Lease" shall include all Exhibits which are attached to this Lease which are by this reference deemed incorporated into this Lease.

**29.2    Binding Effect**.  Subject to all other TCCs of this Lease, each of the TCCs of this Lease shall extend to and shall, as the case may require, bind or inure to the benefit not only of Landlord and of Tenant, but also of their respective heirs, personal representatives, successors or assigns, provided this clause shall not permit any assignment by Tenant contrary to the provisions of Article 14 of this Lease.

**29.3    No Air Rights**.  Except as otherwise set forth in the Base Building Plans or otherwise approved by Tenant, which approval shall not be unreasonably withheld, and except as required by applicable law, Landlord will not build anything on the Project (excluding on the roof of the parking garage) which will unreasonably obstruct Tenant's view above the second floor of the Building.  If at any time any windows of the Premises are temporarily darkened or the light or view from windows is obstructed by reason of any repairs, improvements, maintenance or cleaning in or about the Project, the same shall be without liability to Landlord and without any reduction or diminution of Tenant's obligations under this Lease, except as provided in Section 19.6.2.

**29.4    Modification of Lease**.  Should any current or prospective mortgagee or ground lessor for the Building or Project require a modification of this Lease, which modification will not cause an increased cost or expense to Tenant or in any other way materially and adversely change any rights and obligations of Tenant hereunder, then and in such event, Tenant agrees that this Lease may be so modified and agrees to execute whatever documents are reasonably required therefor and to deliver the same to Landlord within twenty (20) days following a request therefor.

**29.5    Transfer of Landlord's Interest**.  Tenant acknowledges that Landlord has the right to transfer all or any portion of its interest in the Project or Building and in this Lease so long as such transfer is not a subterfuge to avoid Landlord's obligations under this Lease, and Tenant agrees that in the event of any such transfer, provided that the transferee assumes the applicable obligations, Landlord shall automatically be released from all liability (to the extent such obligations are assumed by the transferee) under this Lease not accrued as of the date of the transfer and Tenant agrees to look solely to such transferee for the performance of Landlord's obligations hereunder after the date of transfer upon agreement by such transferee to fully assume and be liable for all obligations of this Lease to be performed by Landlord which first accrue or arise after the date of the conveyance, and Tenant shall attorn to such transferee. Tenant further acknowledges that Landlord may assign its interest in this Lease to a mortgage lender as additional security.  Such transfer shall not release Landlord from its obligations

hereunder and that Tenant shall continue to look to Landlord for the performance of its obligations hereunder.

**29.6    Prohibition Against Recording**.  Except as provided in Sections 18 and 29.4 of this Lease, neither this Lease, nor any memorandum, affidavit or other writing with respect thereto, shall be recorded by Tenant with the Los Angeles County Recorder's Office or by anyone acting through, under or on behalf of Tenant.

**29.7    Landlord's Title**.  Except to the extent provided to the contrary in this Lease, Landlord's title is and always shall be paramount to the title of Tenant.

**29.8    Relationship of Parties**.  Nothing contained in this Lease shall be deemed or construed by the parties hereto or by any third party to create the relationship of principal and agent, partnership, joint venturer or any association between Landlord and Tenant.

**29.9    Application of Payments**.  Unless Tenant, by Notice to Landlord, specifically restricts how such payment is to be applied, Landlord shall have the right to apply payments received from Tenant pursuant to this Lease, regardless of Tenant's designation of such payments, to satisfy any obligations of Tenant hereunder, in such order and amounts as Landlord, in its sole discretion, may elect.  Provided, however, while Landlord must accept payments made under protest, Landlord is not obligated to accept a payment made with other restrictions, and such payment, if not accepted by Landlord, shall be returned to Tenant within five (5) business days of demand by Tenant.

**29.10    Time of Essence**.  Time is of the essence with respect to the performance of every TCCs of this Lease in which time of performance is a factor.  Whenever in the Lease a payment is required to be made by one party to the other, but a specific date for payment is not set forth or a specific number of days within which payment is to be made is not set forth, or the words "immediately," "promptly," and/or "on demand," or their equivalent, are used to specify when such payment is due, then such payment shall be due thirty (30) days after the date that the party which is entitled to such payment sends Notice to the other party demanding such payment.

**29.11    Partial Invalidity**.  If any term, provision or condition contained in this Lease shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term, provision or condition to persons or circumstances other than those with respect to which it is invalid or unenforceable, shall not be affected thereby, and each and every other term, provision and condition of this Lease shall be valid and enforceable to the fullest extent possible permitted by law.

**29.12    No Warranty**.  In executing and delivering this Lease, Tenant has not relied on any representations, including, but not limited to, any representation as to the amount of any item comprising Additional Rent or the amount of the Additional Rent in the aggregate or that Landlord is furnishing the same services to other tenants, at all, on the same level or on the same basis, or any warranty or any statement of Landlord which is not set forth herein or in one or more of the exhibits, schedules, appendices, attachments attached hereto.

**29.13    Exculpation**.  The liability of Landlord or the Landlord Parties to Tenant for any default by Landlord under this Lease or arising in connection herewith or with Landlord's

operation, management, leasing, repair, renovation, alteration or any other matter relating to the Project or the Premises shall be limited solely and exclusively to an amount which is equal to the interest of Landlord in the Building (including any insurance proceeds which Landlord receives). The limitations of liability contained in this Section 29.13 shall inure to the benefit of Landlord's and the Landlord Parties' present and future partners, beneficiaries, officers, directors, trustees, shareholders, agents and employees, and their respective partners, heirs, successors and assigns. Notwithstanding any contrary provision herein, except for Article 16, neither Landlord nor the Landlord Parties or Tenant nor the Tenant Parties shall be liable under any circumstances for injury or damage to, or interference with, Tenant's or Landlord's business, including but not limited to, loss of profits, loss of rents or other revenues, loss of business opportunity, loss of goodwill or loss of use, in each case, however occurring.

**29.14    Entire Agreement**.  It is understood and acknowledged that there are no oral agreements between the parties hereto affecting this Lease and this Lease constitutes the parties' entire agreement with respect to the leasing of the Premises and supersedes and cancels any and all previous negotiations, arrangements, brochures, agreements and understandings, if any, between the parties hereto or displayed by Landlord to Tenant with respect to the subject matter thereof, and none thereof shall be used to interpret or construe this Lease.  None of the TCCs of this Lease can be modified, deleted or added to except in writing signed by the parties hereto.

**29.15    Right to Lease**.  Except as otherwise expressly set forth in this Lease, Landlord reserves the absolute right to effect such other tenancies in the Project as Landlord in the exercise of its sole business judgment shall determine to best promote the interests of the Building or Project.  Tenant does not rely on the fact, nor does Landlord represent, that any specific tenant or type or number of tenants shall, during the Lease Term, occupy any space in the Building.

**29.16    Force Majeure**.  Any prevention, delay or stoppage due to strikes, lockouts, labor disputes, inability to obtain services, labor, or materials or reasonable substitutes therefor, governmental actions, civil commotions, acts of public enemy, sabotage, explosion, war, fire, invasion, insurrection, rebellion, riots, Acts of God, and other causes beyond the reasonable control of the party obligated to perform, except with respect to the obligations imposed with regard to Rent and other charges to be paid by Tenant pursuant to this Lease and except as to Tenant's obligations under Articles 5 and 24 of this Lease and Section 19.6.2 (collectively, a "**Force Majeure**" or "**Force Majeure Event**"), notwithstanding anything to the contrary contained in this Lease, shall excuse the performance of such party for a period equal to any such prevention, delay or stoppage and, therefore, if this Lease specifies a time period for performance of an obligation of either party, that time period shall be extended by the period of any delay in such party's performance caused by a Force Majeure Event.

**29.17    Arbitration.**

**29.17.1    General Submittals to Arbitration**.    With the exception of the arbitration provisions which shall specifically apply to the determination of the Fair Rental Value, the provisions of this Section 29.17 contain the sole and exclusive method, means and procedure to resolve any and all disputes or disagreements, including whether any particular matter constitutes, or with the passage of time would constitute, a Default.  The parties hereby irrevocably waive any and all rights to the contrary and shall at all times conduct themselves in

strict, full, complete and timely accordance with the provisions of this Section 29.17.  Any and all attempts to circumvent the provisions of this Section 29.17 shall be absolutely null and void and of no force or effect whatsoever.  As to any matter submitted to arbitration to determine whether it would, with the passage of time, constitute a Default and/or a Material Default, such passage of time shall not commence to run until any such affirmative determination, so long as it is simultaneously determined that the challenge of such matter as a potential ·Default and/or a Material Default was made in good faith, except with respect to the payment of money.  With respect to the payment of money, such passage of time shall not commence to run only if the party which is obligated to make the payment does in fact make the payment to the other party.  Such payment can be made "under protest," which shall occur when such payment is accompanied by a good-faith notice stating why the party has elected to make a payment under protest.  Such protest will be deemed waived unless the subject matter identified in the protest is submitted to arbitration as set forth in the following:

    29.17.2    **Arbitration Panel**.  Within ninety (90) days after delivery of written notice ("**Notice of Dispute**") of the existence and nature of any dispute given by any party to the other party, and unless otherwise provided herein in any specific instance, the parties shall each: (i) appoint one (1) lawyer (the "**Advocate Arbitrator**") actively engaged in the licensed and full-time practice of law, specializing in real estate leasing work, in the County of Los Angeles for a continuous period immediately preceding the date of delivery ("**Dispute Date**") of the Notice of Dispute of not less than ten (10) years, but who has at no time ever represented or acted on behalf of any of the parties, and (ii) deliver written notice of the identity of such lawyer and a copy of his or her written acceptance of such appointment and acknowledgment of and agreement to be bound by the time constraints and other provisions of this Section 29.17.2 ("**Acceptance**") to the other parties hereto.  Each party shall have the right to consult with his or her Advocate Arbitrator prior to or subsequent to selection, but neither party may consult with the Neutral Arbitrator, as defined below, directly or indirectly, prior to or subsequent to the selection of the Neutral Arbitrator.  In the event that any party fails to so act, such arbitrator shall be appointed pursuant to the same procedure that is followed when agreement cannot be reached as to the third arbitrator.  Within ten (10) days after such appointment and notice, unless otherwise agreed to, the Advocate Arbitrators shall appoint a third lawyer (such third lawyer, the "**Neutral Arbitrator**", and together with the first two (2) lawyers, "**Arbitration Panel**") of the same qualification and background and shall deliver written notice of the identity of such Neutral Arbitrator and a copy of his or her written Acceptance of such appointment to each of the parties. In the event that agreement cannot be reached on the appointment of a Neutral Arbitrator within such period, such appointment and notification shall be made as quickly as possible by the Presiding Judge of any court of competent jurisdiction, with consultation, as necessary, from any professional association of lawyers in existence for not less than ten (10) years at the time of such dispute or disagreement and the geographical membership boundaries of which extend to the County of Los Angeles. Any such court shall be entitled either to directly select such Neutral Arbitrator or to designate in writing, delivered to each of the parties, an individual who shall do so.  In the event of any subsequent vacancies or inabilities to perform among the Arbitration Panel, the lawyer or lawyers involved shall be replaced in accordance with the provisions of this Section 29.17 as if such replacement· was an initial appointment to be made under this Section 29.17, and, unless otherwise agreed, within the time constraints set forth in this Section 29.17, measured from the date of notice of such vacancy or inability, to the person or persons

required to make such appointment, with all the attendant consequences of failure to act timely if such appointed person is a party hereto.

    **29.17.3 Duty.** Consistent with the provisions of this Section 29.17, the members of the Arbitration Panel shall utilize their utmost skill and shall apply themselves diligently so as to hear and decide, by majority vote, the outcome and resolution of any dispute or disagreement submitted to the Arbitration Panel as promptly as possible, but in any event (unless otherwise agreed) on or before the expiration of thirty (30) days after the appointment of all the members of the Arbitration Panel. None of the members of the Arbitration Panel shall have any liability whatsoever for any acts or omissions performed or omitted in good faith pursuant to the provisions of this Section 29.17.

    **29.17.4 Authority.** The Arbitration Panel shall (i) enforce and interpret the rights and obligations set forth in the Lease to the extent not prohibited by law, (ii) fix and establish any and all rules as it shall consider appropriate in its sole and absolute discretion to govern the proceedings before it, including any and all rules of discovery, procedure and/or evidence, and (iii) make and issue any and all orders, final or otherwise, and any and all awards, as a court of competent jurisdiction sitting at law or in equity could make and issue, including the awarding of monetary damages (but the Arbitration Panel shall not be empowered to award consequential damages to either party, nor to award punitive damages except in situations involving knowing fraud or egregious conduct condoned by, or performed by, the person who, in essence, occupies the position which is the equivalent of the chief executive officer of the party against whom damages are to be awarded), the awarding of reasonable attorneys' fees and costs in such manner as determined by the Arbitration Panel and the issuance of injunctive relief. The final award of the Arbitration Panel shall be in writing and shall state the bases of the award, and include findings of fact and conclusions of law. The final award of the Arbitration Panel as issued is hereinafter referred to as the **"Arbitration Award."** If the party against whom the award is issued complies with the award, within the time period established by the Arbitration Panel, then no Default will be deemed to have occurred, unless the Default pertained to the non-payment of money by Tenant or Landlord, and Tenant or Landlord failed to make such payment under protest.

    **29.17.5 Appeal.** The Arbitration Award shall be final and binding, and may be confirmed and entered as a judgment by any court of competent jurisdiction at the request of any party. Notwithstanding the foregoing or any California statute to the contrary, in addition to existing statutory or decisional grounds for vacating or modifying and arbitral award, the parties expressly agree and intend that the Arbitration Award, and/or the judgment entered as a result thereof, may be appealed to any appellate (or higher, when appropriate) court of competent jurisdiction or otherwise pursuant to the same procedures and on the same basis as a judgment issued by a judge in connection with a lawsuit filed in the Los Angeles Superior Court, or on the basis of a misapplication of applicable law or clearly erroneous findings of fact.

    **29.17.6 Compensation.** Each member of the Arbitration Panel (i) shall be compensated for any and all services rendered under this Section 29.17 at a rate of compensation equal to the sum of (a) Five Hundred Dollars ($500.00) per hour and (b) the sum of Ten Dollars ($10.00) per hour multiplied by the number of full years of the expired Term under the Lease, plus reimbursement for any and all expenses incurred in connection with the rendering of such

services, payable in full promptly upon conclusion of the proceedings before the Arbitration Panel. Such compensation and reimbursement shall be borne by the nonprevailing party as determined by the Arbitration Panel in its sole and absolute discretion.

**29.18    Notices**. All notices, requests, demands, statements, designations, approvals or other communications (collectively, **"Notices"**) given or required to be given by either party to the other hereunder or by law shall be in writing, shall be (A) sent by United States certified or registered mail, postage prepaid, return receipt requested (**"Mail"**), (B) transmitted by telecopy, if such telecopy is promptly followed by a Notice sent by Mail, (C) delivered by a nationally recognized overnight courier, or (D) delivered personally. Any Notice shall be sent, transmitted, or delivered, as the case may be, to Tenant at the appropriate address set forth in Section 10 of the Summary, or to such other place as Tenant may from time to time designate in a Notice to Landlord, or to Landlord at the addresses set forth below, or to such other places as Landlord may from time to time designate in a Notice to Tenant. If personally delivered, such Notice shall be effective upon delivery. If Notice is sent by telex or fax transmission or other form of electronic transmission, such Notice shall be effective upon transmission (if prior to 6:00 p.m. in the recipient's time zone. If after 6:00 p.m., the Notice shall be effective at 9:00 a.m. on the next business day after such transmission). If mailed, Notice shall be deemed given on the third day after it is deposited in the mail in accordance with the foregoing. Any correctly addressed Notice that is refused, unclaimed or undelivered because of an act or omission of the party to be notified shall be considered to be effective as of the first date that the Notice was refused, unclaimed or considered undeliverable by the postal authorities, messenger, officer of the law or overnight delivery service. If Tenant receives Notice of the identity and address of Landlord's mortgagee or ground or underlying lessor, Tenant shall give to such mortgagee or ground or underlying lessor written notice of any default by Landlord under the TCCs of this Lease by registered or certified mail, and such mortgagee or ground or underlying lessor shall be given a reasonable opportunity to cure such default prior to Tenant's exercising any remedy available to Tenant. As of the date of this Lease, any Notices to Landlord must be sent, transmitted, or delivered, as the case may be, to the following addresses:

>   Constellation Place, LLC
>   c/o JMB Realty Corporation
>   900 North Michigan Avenue
>   Chicago, Illinois  60611-1575
>   Attention:  General Counsel

>   and

>   Allen Matkins Leck Gamble & Mallory LLP
>   1901 Avenue of the Stars, Suite 1800
>   Los Angeles, California 90067
>   Attention: Anton N. Natsis, Esq.

**29.19    Joint and Several**. If there is more than one Tenant/Landlord, the obligations imposed upon Tenant/Landlord under this Lease shall be joint and several.

    **29.20** **Authority**. If Tenant or Landlord is a corporation, trust or partnership, each individual executing this Lease on behalf of Tenant or Landlord hereby represents and warrants that Landlord or Tenant, as appropriate is a duly formed and existing entity qualified to do business in California and that Landlord or Tenant, as appropriate, has full right and authority to execute and deliver this Lease and that each person signing on behalf of Landlord or Tenant, as appropriate, is authorized to do so.

    **29.21** **Attorneys' Fees**. In the event of any arbitration or suit under this Lease, reasonable attorneys' fees and costs may be awarded by a court or arbitrator and any such award of fees is to be included in any judgment or award. In addition, the Prevailing Party shall be entitled to recover reasonable attorneys' fees and costs incurred in enforcing any judgment arising from a suit or arbitration under this Lease including but not limited to post judgment motions, contempt proceedings, garnishment, levy and debtor and third party examinations, discovery and bankruptcy litigation, without regard to schedule or rule of court purporting to restrict such award. This post judgment or award of attorneys' fees and costs provision shall be severable from any other provisions of this Lease and shall survive any judgment/award on such suit or arbitration and is not to be deemed merged into the judgment/award or terminated with the Lease. For the purpose of this provision, the term "attorneys' fees" or "attorneys' fees and costs" shall mean the fees and expenses of legal counsel (including external counsel and, to the extent fulfilling functions of an attorney at law, excluding de minimis administrative activities of, in-house counsel) to the parties hereto, which include without limitation, printing, photocopying, duplicating, mail, overnight mail, messenger, court filing fees, cost of discovery, fees billed for law clerks, paralegals, investigators and other persons not admitted to the bar but performing services under the supervision or direction of an attorney.

    **29.22** **Governing Law; WAIVER OF TRIAL BY JURY; ARBITRATION**. This Lease shall be construed and enforced in accordance with the laws of the State of California. IN ANY ACTION OR PROCEEDING ARISING HEREFROM, LANDLORD AND TENANT HEREBY CONSENT TO (I) THE JURISDICTION OF ANY COMPETENT COURT WITHIN THE STATE OF CALIFORNIA, (II) SERVICE OF PROCESS BY ANY MEANS AUTHORIZED BY CALIFORNIA LAW, AND (III) IN THE INTEREST OF SAVING TIME AND EXPENSE, TRIAL WITHOUT A JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES HERETO AGAINST THE OTHER OR THEIR SUCCESSORS IN RESPECT OF ANY MATTER ARISING OUT OF OR IN CONNECTION WITH THIS LEASE, THE RELATIONSHIP OF LANDLORD AND TENANT, TENANT'S USE OR OCCUPANCY OF THE PREMISES, AND/OR ANY CLAIM FOR INJURY OR DAMAGE, OR ANY EMERGENCY OR STATUTORY REMEDY, AND (IV) TO ARBITRATION WHERE PROVIDED FOR IN THIS LEASE.

    **29.23** **Submission of Lease**. Submission of this instrument for examination or signature by Tenant or Landlord does not constitute a reservation of, option for or option to lease, and it is not effective as a lease or otherwise until full execution and delivery by both Landlord and Tenant.

    **29.24** **Brokers**. Landlord and Tenant hereby warrant to each other that they have had no dealings with any real estate broker or agent in connection with the negotiation of this Lease, excepting only the real estate brokers or agents specified in <u>Section 12</u> of the Summary (the

"**Brokers**"), and that they know of no other real estate broker or agent who is entitled to a commission in connection with this Lease. Each party agrees to indemnify and defend the other party against and hold the other party harmless from any and all claims, demands, losses, liabilities, lawsuits, judgments, costs and expenses (including without limitation reasonable attorneys' fees) with respect to any leasing commission or equivalent compensation alleged to be owing on account of any dealings with any real estate broker or agent, other than the Brokers, occurring by, through, or under the indemnifying party. Landlord shall, and Tenant shall not, pay all fees due the Brokers pursuant to separate written agreements between Landlord and the Brokers (each, a "**Written Agreement**"). If Landlord does not make payment to the Brokers pursuant to the terms of the Written Agreements with respect to the Premises leased by Tenant pursuant to the TCCs of this Lease, Tenant may send a factually correct Notice to Landlord of such failure and if Landlord fails to pay the Brokers within thirty (30) days following receipt of such Notice, Tenant may, at its option, make such payment and deduct such payment, together with interest at the Interest Rate, from the Rent next due and owing under this Lease from the date of such payment to the date of the deduction. Any amounts so paid by Tenant to the Brokers and offset from Rent shall no longer be owed from Landlord to the Brokers pursuant to the terms of the Written Agreements. The TCCs of this <u>Section 29.24</u> shall survive the expiration or earlier termination of the Lease Term.

**29.25    Independent Covenants.** This Lease shall be construed as though the covenants herein between Landlord and Tenant are independent and not dependent and Tenant hereby expressly waives the benefit of any statute to the contrary and agrees that if Landlord fails to perform its obligations set forth herein, Tenant shall not be entitled to make any repairs or perform any acts hereunder at Landlord's expense or to any setoff of the Rent or other amounts owing hereunder against Landlord, except as specifically provided in this Lease to the contrary.

**29.26    Intentionally Omitted.**

**29.27    Counterparts.** This Lease may be executed in counterparts with the same effect as if both parties hereto had executed the same document. Both counterparts shall be construed together and shall constitute a single lease.

**29.28    Intentionally Omitted.**

**29.29    Transportation Management.** Tenant shall comply with any future governmentally mandated programs intended to manage parking, transportation or traffic in and around the Building, and in connection therewith, Tenant shall take responsible action for the transportation planning and management of all employees located at the Premises by working directly with Landlord, any governmental transportation management organization or any other transportation-related committees or entities.

**29.30    Building Renovations.** It is specifically understood and agreed that Landlord has made no representation or warranty to Tenant and has no obligation and has made no promises to alter, remodel, improve, renovate, repair or decorate the Premises, Building, or any part thereof and that no representations respecting the condition of the Premises or the Building have been made by Landlord to Tenant except as specifically set forth in this Lease or in the Tenant Work Letter. However, Tenant hereby acknowledges that Landlord will be commencing, and then

completing the construction of the Building and Project, and may during the Lease Term renovate, improve, alter, or modify (collectively, the **"Renovations"**) the Project, the Building and/or the Premises including without limitation the parking structure, common areas, systems and equipment, roof, and structural portions of the same, which Renovations may include, without limitation, (i) installing sprinklers in the Building common areas and tenant spaces, (ii) modifying the common areas and tenant spaces to comply with applicable laws and regulations, including regulations relating to the physically disabled, seismic conditions, and building safety and security, and (iii) installing new floor covering, lighting, and wall coverings in the Building common areas, and in connection with any Renovations, Landlord may, among other things, on a temporary basis, erect scaffolding or other necessary structures in the Building, limit or eliminate access to portions of the Project, including portions of the common areas, or perform work in the Building, which work may create noise, dust or leave debris in the Building. Except as specifically provided in this Lease, Tenant hereby agrees that Renovations and Landlord's actions in connection with such Renovations shall in no way constitute a constructive eviction of Tenant nor entitle Tenant to any abatement of Rent. Except as specifically provided in this Lease, Landlord shall have no responsibility or for any reason be liable to Tenant for any direct or indirect injury to or interference with Tenant's business arising from the Renovations, nor shall Tenant be entitled to any compensation or damages from Landlord for loss of the use of the whole or any part of the Premises or of Tenant's personal property or improvements resulting from the Renovations or Landlord's actions in connection with such Renovations, or for any inconvenience or annoyance occasioned by such Renovations or Landlord's actions. Landlord shall use commercially reasonable efforts to have all such work performed on a continuous basis, and once started, to be completed reasonably expeditiously, with such work being organized and conducted in a manner which will minimize any interference to Tenant's business operations in the Premises.

     **29.31**  <u>No Violation</u>. Tenant and Landlord hereby respectively warrant and represent to the other that neither its execution of nor performance under this Lease shall cause Tenant or Landlord, as appropriate, to be in violation of any agreement, instrument, contract, law, rule or regulation by which Tenant or Landlord, as appropriate, is bound, and Tenant or Landlord, as appropriate, shall protect, defend, indemnify and hold the other harmless against any claims, demands, losses, damages, liabilities, costs and expenses, including, without limitation, reasonable attorneys' fees and costs, arising from Tenant's or Landlord's, as appropriate, breach of this warranty and representation.

     **29.32**  <u>**Communications and Computer Lines**</u>. Tenant may install, maintain, replace, remove or use any communications or computer wires and cables (collectively, the **"Lines"**) at the Project in or serving the Premises, provided that (i) Tenant shall obtain Landlord's prior written consent which shall be granted unless a Design Problem arises, use an experienced and qualified contractor approved in writing by Landlord, and comply with all of the other provisions of Articles 7 and 8 of this Lease; (ii) an acceptable number of spare Lines and space for additional Lines shall be maintained for existing and future occupants of the Project, as determined in Landlord's reasonable opinion as long as Tenant receives Tenant's Share of all lines available for use by tenants of the Building; (iii) the Lines therefor (including riser cables) shall be appropriately insulated to prevent excessive electromagnetic fields or radiation, and shall be surrounded by a protective conduit reasonably acceptable to Landlord; (iv) as a condition to permitting the installation of new Lines, Landlord may require that Tenant remove existing Lines

located in or serving the Premises and repair any damage in connection with such removal, as necessary to ensure that Landlord will continue to have a reasonable ability to service the tenants and occupants in the Building through the Building riser system; (v) any new or existing Lines servicing the Premises shall comply with all Applicable Laws and regulations, and (vi) Tenant shall pay all costs in connection therewith. Landlord reserves the right to require that Tenant remove any Lines located in or serving the Premises which are installed in violation of these TCCs, or which are at any time in violation of any Applicable Laws or represent a dangerous or potentially dangerous condition. Landlord shall provide Tenant with enough space in the Building risers to accommodate at least two (2) four inch (4") conduits for installation of the Lines. In the event that Tenant reasonably demonstrates to Landlord that Tenant has an actual planned use in the Premises which will require additional conduit for Lines, Landlord shall provide Tenant with space for one (1) additional four inch (4") conduit.

### 29.33    Development of the Project.

29.33.1    Subdivision. Landlord reserves the right to further subdivide all or a portion of the Project. Tenant agrees to execute and deliver, upon demand by Landlord and in the form requested by Landlord, any additional documents needed to conform this Lease to the circumstances resulting from such subdivision, as long as Tenant's rights are not reduced, and Tenant's obligations are not increased as a result thereof.

29.33.2    The Other Improvements. If portions of the Project or property adjacent to the Project (collectively, the "Other Improvements") are owned by an entity other than Landlord, Landlord, at its option, may enter into an agreement with the owner or owners of any or all of the Other Improvements to provide (i) for reciprocal rights of access and/or use of the Project and the Other Improvements, (ii) for the common management, operation, maintenance, improvement and/or repair of all or any portion of the Project and the Other Improvements, (iii) for the allocation of a portion of the Direct Expenses to the Other Improvements and the operating expenses and taxes for the Other Improvements to the Project, and (iv) for the use or improvement of the Other Improvements and/or the Project in connection with the improvement, construction, and/or excavation of the Other Improvements and/or the Project. Landlord may exercise the foregoing rights only to the extent that as a result thereof Tenant's rights are not materially reduced, and Tenant's obligations are not materially increased as a result thereof. Nothing contained herein shall be deemed or construed to limit or otherwise affect Landlord's right to convey all or any portion of the Project or any other of Landlord's rights described in this Lease.

### 29.34    Window Washing/Window Washing Equipment. Landlord shall furnish as a service for the Building window washing in accordance with the Janitorial Specifications attached to this Lease in **Exhibit F**. In the event that Landlord stores and/or operates any window washing equipment along certain portions of the ledges surrounding the floor(s) of the Building on which the Premises are located, Landlord agrees that during all times that such equipment is not in use, such equipment shall be concealed from view from any and all employees, invitees and guests of Tenant from any portion of the Premises. Landlord further agrees that no window washing personnel shall enter the Premises in order to access the exterior of the Building. Otherwise, Landlord agrees that the operation of such window washing

equipment shall be conducted in a manner (and during times) consistent with the practices of Comparable Buildings.

**29.35  Occupancy Requirements.**  Wherever in this Lease any of Tenant's rights or privileges are conditioned upon Tenant occupying a certain amount of space and/or a portion of the Premises, any occupancy by Tenant's Occupants, Affiliates, and/or any of their employees, agents, independent contractors, officers, directors, and the like, shall be deemed to be occupancy by Tenant.

**29.36  Calendar Days.**  All references made in this Lease to the word "days," whether for Notices, schedules or other miscellaneous time limits, shall at all times herein be deemed to mean calendar days, unless specifically references as "business" or "working" days.  Business or working days shall mean the days Monday-Friday, excluding Holidays.

**29.37  Covenants and Conditions.**  It is agreed that each of the provisions of this Lease shall be terms, covenants, as well as conditions, and the failure of Tenant or Landlord to comply with any of the terms, covenants or conditions of this Lease shall entitle Tenant or Landlord to exercise the remedies of Tenant on default or Landlord on default as set forth in this Lease.

**29.38  Telecommunication Equipment.**  At any time during the Lease Term, Tenant may install and operate for Tenant's exclusive use, at Tenant's sole cost and expense, one (1) satellite dish of up to one (1) meter in diameter upon the roof of the Building, together with related structural platforms, if any, and cabling and other equipment incidental thereto (collectively, the **"Telecommunication Equipment"**), within an area designated by Landlord on the roof of the Building for the installation of such Telecommunication Equipment (the **"Telecommunication Space"**), without the payment of any additional Base Rent, except that Tenant shall pay for all utilities necessary to Tenant's operation of the Telecommunication Equipment.  Tenant shall not have the right to use more than Tenant's Share of the Telecommunication Space, and Tenant shall not install Telecommunication Equipment that will interfere with Landlord's operation and maintenance of the Building, or with the use by other tenants and occupants of the Building of other portions of the Telecommunication Space.  Tenant shall submit to Landlord, for Landlord's prior written approval, all plans and specifications for the installation of the Telecommunication Equipment, which approval may not be unreasonably withheld or delayed, provided it shall be unreasonable for Landlord to withhold its approval unless any proposed Telecommunication Equipment will create a Design Problem (not related to the fact that the Telecommunication Equipment may be visible from above the roof level of the Building).  Once Landlord has approved Tenant's plans and specifications for the Telecommunication Equipment, Tenant may not alter or modify such plans and specifications, or the actual installation of the Telecommunication Equipment, without Landlord's prior written consent, which consent shall be granted or withheld in accordance with the standards set forth in this Section 29.38.  Tenant shall not store any materials on the roof of the Building.  Tenant shall use the roof of the Building solely for the Telecommunication Equipment and not for any other purpose.  Landlord and its agents may enter and inspect the roof of the Building at any time in the event of an emergency, and otherwise at any reasonable time upon reasonable prior notice and without any unreasonable interference with Tenant's operations.  Concurrently with Tenant's installation of any locks to secure the Telecommunication Equipment, Tenant shall deliver to Landlord a key for any such locks.  Tenant agrees and acknowledges that it shall use the roof of

the Building at its sole risk, and Tenant absolves and fully releases Landlord and the Landlord Parties from any and all cost, loss, damage, expense, liability, and cause of action, whether foreseeable or not, arising from any cause (i) that Tenant may suffer to is personal property located on the roof of the Building, or (ii) that Tenant may suffer as a direct or indirect consequence of Tenant's use of the roof of the Building, the Telecommunication Equipment, or access areas to the roof of the Building, unless caused by the gross negligence or willful misconduct of Landlord. Landlord has made no warranty or representation that any Telecommunication Equipment will be permitted by law and Tenant assumes all liability and risk in obtaining all permits and approvals necessary for the installation and use of any Telecommunication Equipment, but Landlord shall reasonably cooperate with Tenant, at Tenant's sole cost and expense, in connection with Tenant's efforts to obtain required governmental approval and consents. Landlord does not warrant or guaranty that Tenant will receive unobstructed transmission or reception to or from the Telecommunication Equipment and Tenant assumes all risk involved in the transmission and reception to and from the Telecommunication Equipment. Tenant's installation and use of the Telecommunication Equipment shall be subject to compliance with any and all Applicable Law, including, but not limited to, satisfying all applicable requirements of the Federal Communications Commission and the Federal Aviation Administration. Tenant shall maintain such Telecommunication Equipment in good condition and repair, at Tenant's sole cost and expense. Tenant's installation, maintenance and use of the Telecommunication Equipment shall be further subject to all applicable terms and conditions of this Lease, including, but not limited to, the indemnification and insurance provisions set forth in Article 10 of this Lease. Prior to the expiration or earlier termination of this Lease, Tenant shall, at Tenant's sole cost and expense, remove all of Tenant's Telecommunication Equipment and repair any and all damage caused by Tenant's installation or removal of such equipment. If Tenant fails to complete such removal or fails to repair any damage caused by such installation or removal by the expiration or earlier termination of this Lease, then Landlord may perform such work and charged the reasonable cost thereof to Tenant, which amounts shall be immediately payable by Tenant. Landlord shall reasonably cooperate with Tenant to identify space on the roof of the Building suitable for Tenant's use and will use commercially reasonable efforts not to grant rights to another tenant of the Building on the roof which will unreasonably interfere with Tenant's use of the Telecommunications Equipment.

   **29.39  Survival of Provisions Upon Termination of Lease**. Any term, covenant or condition of this Lease which requires the performance of obligations or forbearance of an act by either party hereto after the termination of this Lease shall survive such termination of this Lease. Such survival shall be to the extent reasonably necessary to fulfill the intent thereof, or if specified, to the extent of such specification, as same is reasonably necessary to perform the obligations and/or forbearance of an act set forth in such term, covenant or condition. Notwithstanding the foregoing in the event a specific term, covenant or condition is expressly provided for in such a clear fashion as to indicate that such performance of an obligation or forbearance of an act is no longer required, then the specific shall govern over this general provision of this Lease.

   **29.40  Hazardous Substances.**

      **29.40.1    Definitions**. For purposes of this Lease, the following definitions shall apply: "Hazardous Material(s)" shall mean any substance or material that is described as a

toxic or hazardous substance, waste, material, pollutant, contaminant or infectious waste, or any matter that in certain specified quantities would be injurious to the public health or welfare, or words of similar import, in any of the "Environmental Laws," as that term is defined below in this Section 29.40.1, or any other words which are intended to define, list or classify substances by reason of deleterious properties such as ignitability, corrosivity, reactivity, carcinogenicity, toxicity or reproductive toxicity and includes, without limitation, asbestos, petroleum (including crude oil or any fraction thereof, natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel, or any mixture thereof), petroleum products, polychlorinated biphenyls, urea formaldehyde, radon gas, radioactive matter, medical waste, and chemicals which may cause cancer or reproductive toxicity. "**Environmental Laws**" shall mean all federal, state, local and quasi-governmental laws (whether under common law, statute or otherwise), ordinances, decrees, codes, rulings, awards, rules, regulations and guidance documents now or hereafter be enacted or promulgated as amended from time to time, in any way relating to or regulating Hazardous Materials.

      **29.40.2    Compliance with Environmental Laws**.  Landlord covenants that during the Lease Term, Landlord shall comply with all Environmental Laws in accordance with, and as required by, the terms of Article 24 of this Lease.

      **29.40.3    Indemnifications**.  Landlord agrees to indemnify, defend, protect and hold harmless the Tenant Parties from any and all Claims arising from any Hazardous Materials to the extent placed in, on, under or about the Project either by Landlord or the Landlord Parties. Tenant agrees to indemnify, defend, protect and hold harmless the Landlord Parties from any and all Claims arising from any Hazardous Materials to the extent placed in, on, under or about the Premises or the Project by Tenant or Tenant Parties.

      **29.41    Good Faith; Reasonableness**.  Except (i) for matters for which there is a standard of consent or discretion specifically set forth in this Lease; (ii) matters which could have an adverse effect on the Building Structure or the Building Systems, or which could affect the exterior appearance of the Building, or (iii) matters covered by Article 4 (Additional Rent), Article 10 (Insurance), or Article 19 (Defaults; Remedies) of this Lease (collectively, the "**Excepted Matters**"), any time the consent of Landlord or Tenant is required under this Lease, such consent shall not be unreasonably withheld or delayed, and, except with regard to the Excepted Matters, whenever this Lease grants Landlord or Tenant the right to take action, exercise discretion, establish Rules and Regulations or make an allocation or other determination, Landlord and Tenant shall act reasonably and in good faith.

      **29.42    Restrictions Relating to Building Name**.

      **29.42.1    In General**.  Tenant is not permitted to use in its signs at the Building, in any manner whatsoever (except to identify the Building and Project), the name, trademark or logo of Metro-Goldwyn-Mayer Studios Inc., a Delaware corporation ("**MGM**"), without MGM's written consent.

      **29.42.2    Tenant Termination Right**.  In the event Landlord elects to (i) install a Building top sign with the name of a Competitor of Tenant, or (ii) re-name the Building with the name of a Competitor of Tenant, Landlord shall deliver written notice to Tenant of such

election (the "**Competitor Sign Notice**") not less than six (6) months prior to Landlord's installation of the Building top sign or renaming of the Building. The Original Tenant and a Qualified Tenant only shall have the right, upon written notice to Landlord delivered within ten (10) days following Tenant's receipt of the Competitor Sign Notice to terminate this Lease (the "**Termination Notice**"), provided that Tenant is not then in Default under this Lease. In the event Tenant delivers the Termination Notice during the initial Lease Term, then Landlord shall, within sixty (60) days following Landlord's receipt of the Termination Notice, deliver to Tenant an amount (the "**Termination Fee**") equal to the sum of (A) the unamortized cost of the design and construction of the Tenant Improvements in excess of the Tenant Improvement Allowance and (B) an amount equal to three (3) months of the then-current Base Rent in effect as of the "Termination Date," as that term is defined below. No Termination Fee shall be payable to Tenant in the event Tenant delivers the Termination Notice following the expiration of the initial Lease Term. Provided that Tenant terminates this Lease pursuant to the terms of this Section 29.42, this Lease shall automatically terminate and be of no further force or effect and Landlord and Tenant shall be relieved of their respective obligations under this Lease as of the date set forth in the Termination Notice (the "**Termination Date**"), except those obligations set forth in this Lease which specifically survive the expiration or earlier termination of this Lease, including, without limitation, the payment by Tenant of all amounts owed by Tenant under this Lease, up to and including the Termination Date. The rights contained in this Section 29.42 shall be personal to the Original Tenant and a Qualified Tenant and may only be exercised by the Original Tenant or a Qualified Tenant (and not any sublessee or other transferee of the Original Tenant's interest in this Lease) if the Original Tenant or a Qualified Tenant, together with Tenant's Occupants, occupies at least fifty percent (50%) of the Premises.

### 29.43  Office and Communications Services.

29.43.1    The Provider. Landlord has advised Tenant that certain office and communications services may be offered to tenants of the Building by a concessionaire under contract to Landlord ("**Provider**"). Tenant shall be permitted, but not obligated, to contract with Provider for the provision of any or all of such services on such terms and conditions as Tenant and Provider may agree.

29.43.2    Other Terms. Tenant acknowledges and agrees that: (i) Landlord has made no warranty or representation to Tenant with respect to the availability of any such services, or the quality, reliability or suitability thereof; (ii) the Provider is not acting as the agent or representative of Landlord in the provision of such services, and Landlord shall have no liability or responsibility for any failure or inadequacy of such services, or any equipment or facilities used in the furnishing thereof, or any act or omission of Provider, or its agents, employees, representatives, officers or contractors; (iii) Landlord shall have no responsibility or liability for the installation, alteration, repair, maintenance, furnishing, operation, adjustment or removal of any such services, equipment or facilities; and (iv) any contract or other agreement between Tenant and Provider shall be independent of this Lease, the obligations of Tenant hereunder, and the rights of Landlord hereunder, and, without limiting the foregoing, no default or failure of Provider with respect to any such services, equipment or facilities, or under any contract or agreement relating thereto, shall have any effect on this Lease or give to Tenant any offset or defense to the full and timely performance of its obligations hereunder, or entitle Tenant to any abatement of rent or additional rent or any other payment required to be made by Tenant

hereunder, or constitute any accrual or constructive eviction of Tenant, or otherwise give rise to any other claim of any nature against Landlord.

**29.44  Counterparts**.    This Lease may be executed in any number of original counterparts.  Any such counterpart, when executed, shall constitute an original of this Lease, and all such counterparts together shall constitute one and the same Lease.  The transmission by telecopy of the executed pages of this Lease by each party to the other party shall constitute full execution and delivery of this Lease as of the time of such transmission.

IN WITNESS WHEREOF, Landlord and Tenant have caused this Lease to be executed the day and date first above written.

**"Landlord"**:

CONSTELLATION PLACE, LLC,
a Delaware limited liability company

By: _Petil Mu_

Its: _VICE PRESIDENT_

**"Tenant"**:

LEHMAN BROTHERS HOLDINGS INC.,
a Delaware corporation

By: _[signature]_

Its: _Mark Marcucci - Vice President_

By: _/_

Its: _/_