1 lock set (w/2 each lever handles)

1 dummy lever (w/inactive strike)

1 set automatic flush bolts

2 door closers

2 door stops

1 threshold (if required by code)

1 astragal seal

2 door sweeps (if required by code)

1 coordinator

### Quality Standard Specifications For All Premises

The following specifications are minimum specifications, which must at a minimum be complied with by the appropriate components of the Tenant Improvements.

### Interior Door Assembly

- *Door*

    3'0" x full height, solid core, 5-ply w/ ¾" deep solid edge inserts, "Maple" veneer, plain-sliced, natural, to match Building Standard Premium Grade.

- *Door Frame*

    As to the corridor side only: ACI, 3'-0" x full height, extruded aluminum. Clear anodized aluminum finish to match door hardware. Snap-in trim section at head and jamb.

- *Painted Surfaces – Partitions*

    Two coats satin finish washable latex paint by Frazee, or approved equal. One accent color, one base color. Color to be selected from manufacturer's standards.

- *Fabric Wallcovering*

    Innovations, Allegory, color:A15 Mist, 9 oz., 52/54", wide class "A",ASTM E-84, paper-backed.

    21 oz., 54" width, non-directional vinyl wallcovering by Wolf Gordon, Summit, or approved equal.

580913.09/WLA
J4321-029/1-11-05/ejs/gsp

SCHEDULE 1 TO
EXHIBIT B
-6-

MGM TOWER
[Lehman Brothers Holdings Inc.]

- *Carpet*

    Constantine Commercial, Raw Silk, 100% ultron vip, dense textured tip-shear, 55oz tufted yarn weight, 153 Gauge x Stitch Rate x tufts/stitch,12' width,  Colors to be selected from manufacturer's standards or Building Standard carpet above over 3/8" pad.

- *Vinyl Composition Tile*

    12" X 12" X 1/8" vinyl floor tiles, commercial grade, Armstrong Excelon or equal.  Colors to be selected from manufacturer's standards.

- *Resilient Base*

    3" straight or coved base by Johnsonite.  Colors to be selected from manufacturer's standards.

- *Recessed Downlight/Wall Washer*

    Recessed low voltage square downlight 30 degree adjustable wallwasher, with a MR16 lamp.  (20, 42, or 50 watt), white finish, installed with remote transformer.  Lovo-lok soft wiring used in accessible ceilings.  (CSL #2075 or equal.)

    Open reflector fluorescent 277 volt downlight 277 volt, 2-lamp #PL (13 watt) high power factor ballasts.

    Spread lens fluorescent 277 volt 277 volt, 2-lamp #PL (13 watt) high power factor ballasts.

580913.09/WLA
J4321-029/1-11-05/ejs/gsp

SCHEDULE 1 TO
EXHIBIT B
-7-

MGM TOWER
[Lehman Brothers Holdings Inc.]

## SCHEDULE 2 TO EXHIBIT B

## APPROVED CONTRACTORS

1. **Environmental Contracting Corporation**
   Mr. Peter Horgan
   611 West Sixth Street, Suite 3110
   Los Angeles, California 90017
   Phone: (213) 489-7440
   Fax: (213) 489-7722

2. **Hathaway-Dinwiddie Construction**
   Mr. Richard Baptie
   811 Wilshire Boulevard, Suite 1500
   Los Angeles, California 90017
   Phone: (213) 236-0500
   Fax: (213) 236-0501

3. **InnerSpace Construction**
   Mr. Steve McDannold
   2250 South Central Avenue
   Rancho Dominguez, California 90220
   Phone: (310) 763-2112
   Fax: (310) 763-5108

4. **Turner Construction Company**
   555 West Fifth Street
   Suite 3700
   Los Angeles, California 90013

580913.09/WLA
J4321-029/1-11-05/ejs/gsp

SCHEDULE 2 TO
EXHIBIT B
-1-

MGM TOWER
[Lehman Brothers Holdings Inc.]

# EXHIBIT C

## CONSTELLATION PLACE

## NOTICE OF LEASE TERM DATES

To: _____
_____
_____
_____

Re: Office Lease dated _____, 200_ between Constellation Place, LLC, a Delaware limited liability company ("Landlord"), and Lehman Brothers Holdings **[PLEASE PROVIDE EXACT TENANT NAME AND ENTITY]** ("Tenant") concerning Suite _____ on floor(s) _____ of the office building located at _____, Los Angeles, California.

Gentlemen:

In accordance with the Office Lease (the "Lease"), we wish to advise you and/or confirm as follows:

1. The Lease Term shall commence on or has commenced on _____, 200_ for a term of twelve (12) years ending on _____ (subject to termination rights set forth in the Lease).

2. Rent commenced to accrue on _____, in the amount of _____.

3. If the Lease Commencement Date is other than the first day of the month, the first billing will contain a pro rata adjustment. Each billing thereafter, with the exception of the final billing, shall be for the full amount of the monthly installment as provided for in the Lease.

4. Your rent checks should be made payable to _____ at _____.

5. The exact number of rentable square feet within the Premises is _____ square feet.

6. The exact number of rentable square feet in the Building is _____.

7. If the Lease Commencement Date is other than the first day of the month, the first billing will contain a pro rata adjustment. Each billing thereafter, with the

exception of the final billing, shall be for the full amount of the monthly installment as provided for in the Lease.

8. Tenant's Share as adjusted based upon the exact number of rentable square feet within the Premises is _____%..

"Landlord:

_____,
a_____

By: _____
Its: _____

Agreed to and Accepted
as of _____, 2004

"Tenant":

Lehman Brothers Holdings ,
a [PLEASE PROVIDE EXACT TENANT NAME AND ENTITY]

By: _____
Its: _____

# EXHIBIT D

## CONSTELLATION PLACE

## RULES AND REGULATIONS

Landlord agrees that it will not unreasonably modify, amend, change or enforce these Rules and Regulations in any unreasonable manner or in a manner which will unreasonably and materially interfere with the Permitted Use pursuant to the TCCs of Article 5 of this Lease. Tenant shall observe and comply with the Building rules and regulations ("Rules and Regulations"), and all reasonable modifications and additions to the Rules and Regulations from time to time put into effect by Landlord; provided, however, that no Rule or Regulation or any modifications or additions to the Rules and Regulations shall unreasonably or materially interfere with Tenant's Permitted Use of the Premises as set forth in Section 7 of the Summary and Article 5 and no modifications or additions to the Rules and Regulations shall increase the Base Rent to be paid by Tenant hereunder. Landlord's cost in connection with subsequently modified or added Rules and Regulations shall be included as part of Operating Expenses to the extent permitted pursuant to the terms of Article 4 of the Lease. Landlord shall enforce and apply the Rules and Regulations in a reasonable and non-discriminatory manner, and Tenant shall not be required to observe and comply with any addition to the Rules and Regulations unless and until Tenant shall have received ten (10) business days Notice thereof from Landlord. In the event any other tenant or occupant of the Building fails to comply with the Rules and Regulations and such non-compliance materially or unreasonably interferes with Tenant's Permitted Use of the Premises, Landlord shall use commercially reasonable efforts to make such other tenants and/or occupants comply with the Rules and Regulations (provided that Landlord shall not be required to commence litigation in connection therewith). In the event of a conflict between any provision of this Lease (including Exhibits) and a Rule and Regulation, the provisions of the Lease and **Exhibit B** shall prevail over the Rules and Regulations.

1. Tenant shall not alter any lock or install any new or additional locks or bolts on any doors of the Premises without obtaining Landlord's prior written consent. Tenant shall bear the cost of any lock changes or repairs required by Tenant. Twenty-five (25) key cards ("Keys") per floor of the Premises will be furnished by Landlord at no cost to Tenant, for the Premises, and any additional keys required by Tenant must be obtained from Landlord at Landlord's Actual Cost. Upon the termination of this Lease, Tenant shall restore to Landlord all keys of stores, offices, and toilet rooms, either furnished to, or otherwise procured by, Tenant and in the event of the loss of keys so furnished, Tenant shall pay to Landlord the cost of replacing same. Card keys shall be substituted in place of traditional keys.

2. All doors opening to public corridors shall be kept closed at all times except for normal ingress and egress to the Premises, except that on full floors leased by Tenant, doors may be kept open at Tenant's election to the extent permitted by applicable laws.

3. Landlord reserves the right to close and keep locked (but Tenant shall have access by key) all entrance and exit doors of the Building during such hours as are customary Comparable Buildings in the Los Angeles County, California area. Tenant and Tenant Parties

must be sure that the doors to the Building are securely closed and locked when leaving the Premises if it is after the Business Hours. Any Tenant or Tenant Parties entering or leaving the Building at any time when it is so locked, or any time when it is considered to be after Business Hours, may be required to sign the Building register. Access to the Building may be refused unless the person seeking access has proper identification or has a previously arranged pass for access to the Building. Landlord will furnish passes to persons for whom Tenant requests same in writing. Landlord and the Landlord Parties shall in no case be liable to Tenant for damages for any error with regard to the admission or exclusion from the Building or Project of any person. In case of invasion, mob, riot, public excitement, or other commotion, Landlord reserves the right to prevent access to the Building or the Project during the continuance thereof by any means it deems appropriate for the safety and protection of life and property.

4. Landlord shall have the right to prescribe the weight, size and position of all safes and other heavy property brought into the Building and also the times and manner of moving the same in and out of the Building. Safes and other heavy objects shall, if considered necessary by Landlord to prevent a Design Problem, stand on supports of such thickness as is necessary to properly distribute the weight.

5. Except in connection with the initial move-in to the Premises, no furniture, packages, supplies, equipment or merchandise will be received in the Building or carried up or down in the elevators, except between such hours, in such specific elevator and by such personnel as shall be designated by Landlord.

6. Tenant shall not disturb, solicit, peddle, or canvass any occupant of the Project and shall cooperate with Landlord and Landlord Parties to prevent same.

7. The toilet rooms, urinals, wash bowls and other apparatus shall not be used for any purpose other than that for which they were constructed, and no foreign substance of any kind whatsoever shall be thrown therein.

8. Tenant shall not overload the floor of the Premises.

9. Except for vending machines intended for the sole use of Tenant and Tenant Parties, no vending machine or machines other than customary and normal office machines shall be installed, maintained or operated upon the Premises without the written consent of Landlord.

10. Subject to <u>Article 5</u> of this Lease, Tenant shall not use or keep in or on the Premises, the Building, or the Project any kerosene, gasoline, explosive material, corrosive material, material capable of emitting toxic fumes, or other inflammable or combustible fluid chemical, substitute or material. Tenant shall provide material safety data sheets for any Hazardous Material used or kept on the Premises.

11. Tenant shall not use, keep or permit to be used or kept, any foul or noxious gas or substance in or on the Premises, or permit or allow the Premises to be occupied or used in an offensive or objectionable manner. Tenant shall not throw anything out of doors, windows or skylights or down passageways.

12. Except in areas designated by Landlord, Tenant shall not bring vehicles into the Project.

13. Tenant shall not bring into or keep within the Project, the Building or the Premises any animals (other than seeing eye or bomb-sniffing dogs), birds, aquariums, or, except in areas designated by Landlord, bicycles.

14. No cooking will be allowed on the Premises except in designated kitchens with Underwriters' Laboratory-approved equipment and microwave ovens and otherwise in compliance with Applicable Laws; provided, however, this rule shall not be applicable to special events provided that Tenant complies with all Applicable Laws.

15. Landlord reserves the right to exclude or expel from the Project any person who, in the judgment of Landlord, is intoxicated or under the influence of liquor or drugs.

16. Tenant shall store all its trash and garbage within the interior of the Premises. No material shall be placed in the trash boxes or receptacles if such material is of such nature that it may not be disposed of in the ordinary and customary manner of removing and disposing of trash and garbage in at the Comparable Buildings, without violation of any law or ordinance governing such disposal. All trash, garbage and refuse disposal shall be made only through entry-ways and elevators provided for such purposes at such times as Landlord shall designate. If the Premises is or becomes infested with vermin as a result of the use or any misuse or neglect of the Premises by Tenant or Tenant Parties, Tenant shall forthwith, at Tenant's expense, cause the Premises to be exterminated from time to time to the satisfaction of Landlord and shall employ such licensed exterminators as shall be approved in writing in advance by Landlord.

17. Tenant shall comply with all safety, fire protection and evacuation procedures and regulations established by any governmental agency.

18. Any persons employed by Tenant to do janitorial work shall be subject to the prior written approval of Landlord, and while in the Building and outside of the Premises, shall be subject to and under the control and direction of the Building manager (but not as an agent or servant of such manager or of Landlord). Landlord shall from time to time and upon the request of Tenant approve a reasonable number of sources of such services to provide Tenant with a reasonable selection, but only in such instances and to such extent as Landlord in its judgment shall consider consistent with the security and proper operation of the Building.

19. No awnings or other projection shall be attached to the outside walls of the Building without the prior written consent of Landlord, and no curtains, blinds, shades or screens shall be attached to or hung in, or used in connection with, any window or door of the Premises other than Landlord standard window coverings. All electrical ceiling fixtures hung in the Premises or spaces along the perimeter of the Building must be fluorescent and/or of a quality, type, design and a warm white bulb color approved in advance in writing by Landlord. Neither the interior nor exterior of any windows shall be coated or otherwise sunscreened without the prior written consent of Landlord.

20. The sashes, sash doors, skylights, windows, and doors that reflect or admit light and air into the halls, passageways or other public places in the Building shall not be covered or obstructed by Tenant.

21. Tenant must comply with all applicable "NO SMOKING" or similar ordinances. If Tenant is required under the ordinance to adopt a written smoking policy, a copy of said policy shall be on file in the office of the Building.

22. Tenant hereby assumes all responsibility for the protection of Tenant and its Tenant Parties, and the property thereof, from acts of third parties, including keeping doors locked and other means of entry to the Premises closed, even though Landlord shall provide security services in accordance with the TCCs of this Lease. Tenant further assumes the risk that any safety and security devices, services and programs which Landlord provides may not be effective, or may malfunction or be circumvented by an unauthorized third party, and Tenant shall, in addition to its other insurance obligations under this Lease, obtain its own insurance coverage to the extent Tenant desires protection against losses related to such occurrences. Tenant shall cooperate in any reasonable safety or security program developed by Landlord or required by law.

23. Tenant shall install and maintain, at Tenant's sole cost and expense, an adequate, visibly marked and properly operational fire extinguisher next to any duplicating or photocopying machines or similar heat producing equipment, which may or may not contain combustible material, in the Premises.

24. No auction, liquidation, fire sale, going-out-of-business or bankruptcy sale shall be conducted in the Premises without the prior written consent of Landlord.

Subject to the introductory paragraph of this **Exhibit D**, Landlord reserves the right at any time to change or rescind any one or more of these Rules and Regulations, or to make such other and further reasonable Rules and Regulations as in Landlord's judgment may from time to time be necessary for the management, safety, care and cleanliness of the Premises, Building, the Common Areas and the Project, and for the preservation of good order therein, as well as for the convenience of other occupants and tenants therein. Landlord may waive any one or more of these Rules and Regulations for the benefit of any particular tenants, but no such waiver by Landlord shall be construed as a waiver of such Rules and Regulations in favor of any other tenant, nor prevent Landlord from thereafter enforcing any such Rules or Regulations against any or all tenants of the Project. Tenant shall be deemed to have read these Rules and Regulations and to have agreed to abide by them as a condition of its occupancy of the Premises.

## EXHIBIT E

## CONSTELLATION PLACE

## FORM OF TENANT'S ESTOPPEL CERTIFICATE

The undersigned as Tenant under that certain Constellation Place Office Lease (the "Lease") made and entered into as of _____, 2004 by and between Constellation Place, LLC, a Delaware limited liability company, as Landlord, and the undersigned as Tenant, for Premises (as such term is defined in the Lease) on the 24th and 25th floor(s) of the office building located at 10250 Constellation Boulevard, Los Angeles, California 90067, certifies, as follows:

1. Attached hereto as Schedule 1 is a true and correct copy of the Lease and all amendments and modifications thereto. The documents contained in Schedule 1 represent the entire agreement between the parties as to the Premises.

2. The undersigned currently occupies the Premises described in the Lease, the Lease Term (as such term is defined in the Lease) commenced on _____, and the Lease Term expires on _____, unless extended pursuant to the terms of Section 2.2 of the Lease.

3. Base Rent (as such term is defined in the Lease) became payable on _____.

4. The Lease is in full force and effect and has not been modified, supplemented or amended or modified in any way except as provided in Schedule 1.

5. Tenant has not transferred, assigned, or sublet any portion of the Premises nor entered into any license or concession agreements with respect thereto except as follows:

6. No modification of the documents contained in Schedule 1 without the prior written consent of Landlord's mortgagee shall be binding on Landlord's mortgagee.

7. All monthly installments of Base Rent, all Additional Rent and all monthly installments of estimated Additional Rent have been paid when due through _____. The current monthly installment of Base Rent is $_____.

8. Except as set forth on any schedule attached hereto, to Tenant's actual knowledge all conditions of the Lease to be performed by Landlord necessary to the enforceability of the Lease have been satisfied and Landlord is not in default thereunder. In addition, the undersigned has not delivered any notice to Landlord regarding a default by Landlord thereunder except as follows:

9. No rental has been paid more than thirty (30) days in advance and no security has been deposited with Landlord except as provided in the Lease.

10. To the undersigned's actual knowledge, as of the date hereof, there are no existing matured defenses or offsets that the undersigned has against Landlord.

11. If Tenant is a corporation or partnership, each individual executing this Estoppel Certificate on behalf of Tenant hereby represents and warrants that Tenant is a duly formed and existing entity qualified to do business in California and that Tenant has full right and authority to execute and deliver this Estoppel Certificate and that each person signing on behalf of Tenant is authorized to do so.

12. Other than in compliance with all applicable laws and incidental to the ordinary course of the use of the Premises, the undersigned has not used or stored any hazardous substances in the Premises.

13. Except as set forth on any schedule attached hereto, to the undersigned's actual knowledge, all tenant improvement work to be performed by Landlord under the Lease has been completed in accordance with the Lease and has been accepted by the undersigned and all reimbursements and allowances due to the undersigned under the Lease in connection with any tenant improvement work have been paid in full.

The undersigned acknowledges that this Estoppel Certificate may be delivered to Landlord or to a prospective mortgagee or prospective purchaser, and acknowledges that said prospective mortgagee or prospective purchaser will be relying upon the statements contained herein in making the loan or acquiring the property of which the Premises are a part and that receipt by it of this certificate is a condition of making such loan or acquiring such property.

Executed at _____ on the _____ day of , 20___.

"Tenant":

a _____

By: _____

Its: _____

By: _____

Its: _____

Note: This form shall be revised accordingly if it is to be used as Landlord's Estoppel Certificate.

# EXHIBIT F

## JANITORIAL SPECIFICATIONS

I. **OFFICE AREAS**

**A. Daily**

1. Empty, clean and damp dust all waste receptacles and remove waste paper and rubbish from the Leased Premises five nights per week; replace plastic lining on an as needed basis but in no event less than one (1) time per week.

2. Vacuum, sweep, or dry mop all floor areas in the premises, lobbies and corridors. Remove matter such as gum, staples, paper clips, etc. which has adhered to the floor.

3. Nightly hand dust and wipe clean with damp or treated cloth all office furniture, files, fixtures. Desk-top papers and accessories are not to be moved unless indicated by a "Please Clean" placard left by the desk occupant.

4. Damp wipe all glass furniture tops.

5. Remove finger marks and smudges from vertical surfaces, including doors, door frames, glass around light switches, private entrance glass and partitions.

6. Wash clean all water coolers.

7. Sweep all private stairways; vacuum if carpeted.

8. Damp mop spillage in non-carpeted office and public areas.

9. Damp dust all telephones, including dials and crevices.

10. Dust all baseboards.

11. Dust all grillwork within reach.

12. Spot clean all interior partitions, walls, glass, glass windows, and glass entrance doors.

13. Push Tenant employee's chair up to the desk.

14. Clean restrooms Monday, Tuesday, Wednesday, Thursday and Friday evenings, and, at least two (2) times per day Monday through Friday, empty trash receptacles and clean area below the urinals.

15. Clean pantry areas by damp wiping countertops, sinks and microwave.

### B. Weekly

1. Clean chair mats.

2. Wet mop and buff all hard surface flooring. Wipe all baseboards and furniture legs clean after mopping.

3. Clean all window sills and ledges.

4. Dust in place all picture frames, charts, graphs and similar wall hangings.

### C. Monthly

1. Scrub, strip and wax all hard surface flooring using a buffable non-slip type floor finish. Wipe all baseboards and furniture legs clean after finishing floor.

2. Vacuum all ceiling air supply and exhaust diffusers or grills.

3. Wash all vinyl and metal kick plates on doors.

4. Vacuum upholstered furniture.

5. Dust all paneled walls and doors and other similar surfaces not reached in nightly or weekly cleaning.

### D. Quarterly

1. High dust all horizontal and vertical surfaces not reached in the nightly cleaning, such as pipes, light fixtures, door jambs, and other wall hangings.

2. Damp wash diffusers, vents, grills and other such items, including surrounding wall or ceiling areas that are soiled.

3. Clean partition glass and interior glass doors.

## II. WASHROOMS

### A. Daily

1. Sweep, mop with a germicide, rinse with clear water, dry and buff floors.

2. Scrub floors as necessary.

3. Clean and polish all mirrors, bright work, chrome, soap dispensers and enameled surfaces.

4. Wash and disinfect all basins, urinals and bowls.

5. Wash both sides of all toilet seats.

6. Damp wipe and wash partitions, tile walls and outside surface of dispensers and receptacles.

7. Empty and sanitize receptacles and sanitary disposals; replace plastic and paper liners. Thoroughly clean and wash at least once per week.

8. Fill toilet tissue, soap, towel, and sanitary napkin dispensers.

9. At least twice during normal business hours to maintain the function of the washrooms throughout the day, check washrooms for toilet tissue replacement, paper towel replacement, soap replacement, and sanitary napkin replacement.

10. At least twice during normal business hours, check washrooms for general cleanliness and maintain their appearance throughout the day, including wet mopping floor if needed, and wiping down counters if needed.

**B. Weekly**

1. Clean and disinfect floor drains.

2. Scrub floor area with germicidal solution.

3. Vacuum all louvers, ventilating grills and dust light fixtures.

**C. Monthly**

1. Wash diffusers (both supply and return), grills, toilet stalls, door and tile walls with detergent and disinfectant.

III. **COMMON SPACE**

A. **Daily**

1. The lobby floors will be swept, mopped and buffed to insure a high luster appearance. Damp mop marble.

2. Vacuum all carpeted areas. Remove stains with carpet stain remover as per manufacturer specifications and remove any gum, staples, paper clips, etc. which has adhered to the surface.

3. Clean all baseboard ledges, molding, directory, depositories and window frames.

4. Clean all water fountains with a germicidal cleanser and polish.

5. Spot clean all doors, door frames, wall and light switches to remove fingerprints, spills and other markings.

6. Sweep and dry mop all hard surface flooring. Remove matter such as gum and tar which has adhered to the floor.

7. Clean and polish lobby directory.

8. Clean and polish lobby security desk.

9. Clean and polish all lobby chrome or anodized metal finishes.

10. Clean and polish all entry thresholds.

11. Dust all mullions and sills.

12. Dust all planters and benches.

13. Clean and polish all elevator door thresholds.

14. Empty all waste receptacles and replace plastic liners where required. Plastic liners to be replaced on an as-needed basis but no less than one time per week.

15. Sweep and wet mop all basement corridors and the stairwells between lobby and basement.

16. Clean all signage in corridors and common areas.

17. Wipe down all light and electrical plates.


**B. Weekly**

1. Dust with treated cloth all doors and ventilating louvers.

2. Wet mop and buff all hard surface flooring.

3. Sweep all stairwells and dust all hand railing.