Hearing Date: October 16, 2008, at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (JMP) |
| Debtors. | : | (Jointly Administered) |

**DEBTORS' OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND
OTHERS TO CONDUCT EXAMINATIONS UNDER BANKRUPTCY RULE 2004**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("*LBHI*") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors in possession (together, the "*Debtors*"), hereby file this opposition (the "*Opposition*") to: (i) Motion of Harbinger Capital Partners Special Situations Fund and Harbinger Capital Partners Master Fund I, Ltd., f/k/a Harbert Distressed Investment Master Fund, Ltd. (collectively, "*Harbinger*") for Leave to Conduct Rule 2004 Discovery of LBHI (the "*Harbinger Motion*") [Docket No. 373]; (ii)

Motion of Newport Global Opportunities Fund LP, Newport Global Credit Fund (Master) L.P., PEP Credit Investor L.P., and Providence TMT Special Situations Fund L.P. (collectively, "*Newport*") for Leave to Conduct Rule 2004 Discovery of LBHI and Other Entities (the "*Newport Motion*") [Docket No. 435]; (iii) Response and Joinder of Federal Home Loan Bank of Pittsburgh ("*FHLBP*") to the Harbinger Motion [Docket No. 691]; (iv) Response and Joinder of FHLBP to the Newport Motion [Docket No. 692]; (v) Response and Joinder of Wells Fargo Bank, N.A. and Wells Fargo & Co. (collectively, "*Wells Fargo*") to the Harbinger Motion [Docket No. 770]; (vi) Response and Joinder of Fir Tree Value Master Fund, L.P. and Fir Tree Capital Opportunity Master Fund, L.P. (collectively, "*Fir Tree*") to the Harbinger Motion [Docket No. 782], (vii) Response and Joinder of the Federal Home Loan Bank of Seattle ("*FHLBS*") to the Harbinger Motion [Docket No. 806]; (viii) Omnibus Statement of the Informal Noteholder Group (the "*Informal Noteholder Group*") with Respect to (I) the Harbinger Motion and (II) the Newport Motion [Docket No. 814]; (ix) Joinder of Airlie Opportunity Master Fund, Ltd. ("*Airlie*") to the Harbinger Motion [Docket No. 822]; and (x) Joinder of Global Thematic Opportunities Fund LP, Panton Master Fund, L.P., CFIP Master Fund, Ltd., Cura Fixed Income Arbitrage Master Fund, Ltd., and Turnberry Leveraged Credit Master Fund, L.P. ("*Global Thematic*") to the Motions for Leave to Conduct Rule 2004 Discovery of LBHI and Others [Docket No. 823] (together with (i) – (ix), the "*Rule 2004 Motions*"), and respectfully represent:

## Background

1. Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced voluntary cases under chapter 11 of title

11 of the United States Code (the "*Bankruptcy Code*").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.  On September 17, 2008, the United States Trustee for the Southern District of New York appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

3.  On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("*SIPA*") with respect to Lehman Brothers Inc. ("*LBI*"), a registered broker/dealer that maintained the accounts of customers.  A trustee, James Giddens, Esq., was appointed under SIPA and is administering LBI's SIPA case.

4.  On September 26, 2008, Harbinger filed the Harbinger Motion requesting authority to conduct examinations of LBHI and others pursuant to Bankruptcy Rule 2004 ("*Rule 2004*").  On September 29, 2008, Newport filed the Newport Motion also requesting authority to conduct examinations of LBHI and others under Rule 2004. On October 6, 2008, FHLBP filed two joinders, one to the Harbinger Motion and the other to the Newport Motion.  On October 8, 2008, Wells Fargo filed its joinder to the Harbinger Motion.  On October 9, 2008, Fir Tree filed its joinder to the Harbinger Motion.  On October 10, 2008, (i) FHLBS and Airlie each filed its joinder to the Harbinger Motion, (ii) Global Thematic filed its joinder to the Harbinger Motion and the

Newport Motion, and (iii) the Informal Noteholder Group filed its statement requesting the discovery requested in the Harbinger Motion and the Newport Motion.

### Lehman's Business

5.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.  Its headquarters in New York and regional headquarters in London and Tokyo are complemented by a network of offices in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

6.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

### Opposition to the Rule 2004 Motions[1]

7.      The Rule 2004 Motions are addressed to the discretion of the Court.  They are all inappropriate uses of Rule 2004 in the context of these exceptional and extremely complex chapter 11 cases involving many thousands of creditors, employees and hundreds of professionals.  Harbinger, Newport, FHLBP, Wells Fargo, Fir

---

[1]    The Debtors, and certain of their professionals, have individually reviewed each motion, including all joinders, requesting discovery under Rule 2004 that was filed before October 11, 2008.  This Opposition is also raised, as applicable, to any joinders to the Rule 2004 Motions that may be filed on or after October 11, 2008.

Tree, FHLBS, the Informal Noteholder Group, Airlie, and Global Thematic each seek broad fishing expedition examinations and oppressive documents production that are inconsistent with the objectives and underlying rational for Rule 2004 examinations and the establishment of an orderly administration of these chapter 11 cases. Accordingly, in the exercise of the Court's discretion, the examinations should be denied at this time.

8. None of the Rule 2004 Motions meets its burden to show that the broad examinations sought under Rule 2004 is justified. Neither Harbinger, Newport, FHLBP, Wells Fargo, Fir Tree, FHLBS, the Informal Noteholder Group, Airlie, or Global Thematic has established a necessity for such information, or a necessary nexus between the examinations requested and the Debtors. The records and data requested are in the process of being collected. None of the Rule 2004 Motions has provided good cause for the examinations requested, other than reliance upon unverified press reports and suppositions. In addition, FHLBP has commenced an adversary proceeding against the Debtors and it should be relegated to normal discovery under the Federal Rules of Civil Practice, as incorporated into the Bankruptcy Rules.

9. The burden on the Debtors and their professionals to respond to the examinations requested in each of the Rule 2004 Motions would outweigh any benefits to Harbinger, Newport, FHLBP, Wells Fargo, Fir Tree, FHLBS, the Informal Noteholder Group, Airlie, and Global Thematic. Specifically, as explained more fully in the Declaration of Bryan Marsal (attached hereto as <u>Exhibit A</u>), the discovery requested under any of the Rule 2004 Motions would be disruptive and would divert limited resources from essential tasks related to asset protection and maximization.

**Reservation of Rights**

10. Nothing contained herein, or in the Memorandum of Law filed in connection herewith, is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' right to dispute any claim, or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code.

**Memorandum of Law**

11. Pursuant to the requirement contained in Rule 9013-1(b) of the Local Rules of Bankruptcy Procedure for the Southern District of New York, the Debtors have separately submitted a memorandum of law in support of this Opposition.

**Adoption of Supporting Declaration**

12. The Declaration of Bryan Marsal, attached as Exhibit A to this Opposition, is adopted herein by reference as if set forth in full in this Opposition.

WHEREFORE the Debtors respectfully request entry of an order denying the Rule 2004 Motions and all joinders thereto in their entirety, and granting the Debtors such other and further relief as is just.

Dated: October 12, 2008
      New York, New York

          */s/ Harvey R. Miller*
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# EXHIBIT A

Declaration of Bryan Marsal in Support of Opposition to the Motions of Harbinger Funds and Others to Conduct Examinations under Bankruptcy Rule 2004 (Oct. 12, 2008).

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                              :
**In re**                                     :   **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :   **08-13555 (JMP)**
                                              :
           **Debtors.**                       :   **(Jointly Administered)**
                                              :
                                              :
------------------------------------------------------------------x

**DECLARATION OF BRYAN MARSAL IN SUPPORT OF OPPOSITION TO THE
MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
<u>UNDER BANKRUPTCY RULE 2004</u>**

Under penalty of perjury, Bryan Marsal hereby declares pursuant to section 1746 of title 28 of the United States Code:

1.    I am over 21 years of age, and I can testify to the following facts based on my personal knowledge, my review of the above-captioned Debtors' business records, or my consultation with current and former employees of these Debtors, along with employees of Alvarez & Marsal North America, LLC ("*A&M*").

2.    I am the Co-Chief Executive Officer of A&M, a firm specializing in, among other things, turnaround management and restructuring-related services. During the

evening of September 14, 2008, I was appointed the Chief Restructuring Officer of Lehman Brothers Holding Inc. ("*LBHI*"). I and employees of A&M have been providing restructuring and general operational and managerial services to LBHI and its affiliates (together, the "*Debtors*" and, collectively with their non-debtor affiliates, "*Lehman*") in connection with the pending chapter 11 cases.

3.   I have reviewed the following motions requesting examinations of one or more of the Debtors pursuant to Federal Rule of Bankruptcy Procedure 2004 ("*Rule 2004*"): (i) Motion of Harbinger Capital Partners Special Situations Fund and Harbinger Capital Partners Master Fund I, Ltd., f/k/a Harbert Distressed Investment Master Fund, Ltd. (collectively, "*Harbinger*") for Leave to Conduct Rule 2004 Discovery of Debtor Lehman Brothers Holdings Inc. (the "*Harbinger Motion*") [Docket No. 373]; (ii) Motion of Newport Global Opportunities Fund, LP, Newport Global Credit Fund (Master) L.P., PEP Credit Investor L.P., and Providence TMT Special Situations Fund L.P. (collectively, "*Newport*") for Leave to Conduct Rule 2004 Discovery of LBHI and Other Entities (the "*Newport Motion*") [Docket No. 435]; (iii) Response and Joinder of Federal Home Loan Bank of Pittsburgh ("*FHLBP*") to the Harbinger Motion [Docket No. 691]; (iv) Response and Joinder of FHLBP to the Newport Motion (together with (iii) the "*FHLBP Joinders*") [Docket No. 692];[1] (v) Response and Joinder of Wells Fargo Bank, N.A. and Wells Fargo & Co. (collectively, "*Wells Fargo*") to the Harbinger Motion (the "*Wells Fargo Joinder*") [Docket No. 770]; (vi) Response and Joinder of Fir Tree Value Master Fund, L.P. and Fir Tree Capital Opportunity Master Fund, L.P. (collectively, "*Fir Tree*") to the Harbinger Motion (the "*Fir Tree Joinder*") [Docket No. 782], (vii) Response and Joinder of the

---

[1]   Though the FHLBP Joinders are separately filed pleadings, their substance is nearly identical. Where pinpoint citations are made herein, the applicable language can be found in such paragraph(s), or page(s), in either joinder filed by FHLBP.

HO1:\364926\14\7TK%14!.DOC\58399.0003            2

Federal Home Loan Bank of Seattle ("*FHLBS*") to the Harbinger Motion [Docket No. 806]; (viii) Omnibus Statement of the Informal Noteholder Group (the "*Informal Noteholder Group*") with Respect to (I) the Harbinger Motion and (II) the Newport Motion (the "*Informal Noteholder Group Statement*") [Docket No. 814]; (ix) Joinder of Airlie Opportunity Master Fund, Ltd. ("*Airlie*") to the Harbinger Motion (the "*Airlie Joinder*") [Docket No. 822]; and (x) Joinder of Global Thematic Opportunities Fund LP, Panton Master Fund, L.P., CFIP Master Fund, Ltd., Cura Fixed Income Arbitrage Master Fund, Ltd., and Turnberry Leveraged Credit Master Fund, L.P. (collectively, "*Global Thematic*") to the Motions for Leave to Conduct Rule 2004 Discovery of LBHI and Others (the "*Global Thematic Joinder*," and together with (i) – (ix), the "*Rule 2004 Motions*") [Docket No. 823].

4. I submit this declaration in support of the Debtors' Opposition to the Motions of Harbinger Funds and Others to Conduct Examinations under Bankruptcy Rule 2004 (the "*Opposition*").

**I. Contractual Relationships Between the Lehman Entities and Each Party Filing a Rule 2004 Motion**

5. Harbinger alleges that it is a party to certain swap agreements, dated July 28, 2006 and May 20, 2005, with Lehman Brothers Special Financing, Inc. ("*LBSF*") (the "*Harbinger Agreements*"). Harbinger Motion ¶ 8. The Harbinger Agreements allegedly contain an unconditional guaranty by LBHI relating to any amounts payable by LBSF. *Id.* at n.2.

6. Newport alleges LBSF, Lehman Brothers International (Europe) ("*LBIE*"), and "other members of the Lehman Brothers group of companies" are parties with at least one Newport entity pursuant to certain prime brokerage and margin lending agreements. Newport Motion ¶ 7. The exhibits to the Newport Motion document an allegedly scheduled and

authorized transfer of funds held by LBIE, and these funds do not appear to belong to any of the Debtors.  Newport Motion at Exs. A-D.

7. Two parties joined in the requests of both the Harbinger Motion and the Newport Motion, FHLBP, and the Informal Noteholder Group.  FHLBP alleges it and LBSF are parties to a purported ISDA Master Agreement dated June 26, 1997.  FHLBP Joinders ¶ 3.  The Informal Noteholder Group alleges it consists of certain unaffiliated, and unspecified, holders of senior and subordinated notes purportedly issued by LBHI.  Informal Noteholder Group Statement 1.  As for FHLBP, I am informed that it has commenced an adversary proceeding against the Debtors.  Therefore, I am advised that FHLBP should resort to discovery that may be allowed in that adversary proceeding and not the improper use of Rule 2004.

8. Five parties filed pleadings joining with the discovery requests contained in the Harbinger Motion, Wells Fargo, Fir Tree, FHLBS, Airlie and Global Thematic.  Wells Fargo alleges it and LBSF, Lehman Brothers Finance S.A., and Lehman Brothers, Inc. are parties to certain unspecified swap agreements.  Wells Fargo Joinder ¶ 1.  Similarly, Fir Tree, FHLBS, and Airlie each independently allege it and LBSF are parties to certain swap agreements, some of which are guaranteed by LBHI.  Airlie Joinder ¶ 1; FHLBS Joinder ¶ 2; Fir Tree Joinder ¶ 1.  Lastly, Global Thematic alleges it is party to (a) prime brokerage agreements with Lehman Brothers, Inc. ("*LBI*") and "several of its affiliates" including LBHI, (b) margin lending and securities lending agreements with LBIE, and/or (c) other agreements, including swap agreements, with an undetermined number Debtors that are guaranteed by LBHI (collectively and together with all the agreements described in paragraphs 5-8 herein, the "*Agreements*").  Global Thematic Joinder ¶ 1.

9.  As described in the Rule 2004 Motions, each of the specified Lehman affiliates listed as counterparties is one of the Debtors, except LBI and LBIE. However, none of the Rule 2004 Motions attach any one of the Agreements referenced therein. A&M has conducted a search of the Debtors' records and has been unable to obtain copies of the Agreements in the short time between the filing of the Rule 2004 Motions and the date hereof.

### III.   Administrative Difficulty in Fulfilling Rule 2004 Request

10.  The Debtors comprise an investment bank with global operations. In the period prior to the Debtors' bankruptcy, intercompany transfers were a necessary and regular part of the Debtors' ordinary course of business. Consequently, the Debtors' businesses involved an extraordinarily large number of transactions each day. For example, a portion of the Debtors' business related to the sale of derivatives alone involves approximately 1,500,000 transactions, with approximately 8,000 counterparties. Approximately 600,000 of these transactions have been cancelled within the last 21 days. Given the likely volume of the documents relating to the Rule 2004 Motions' broad requests, even a cursory review of documents for production would require a significant expenditure of time and resources.

11.  The requests of Harbinger,[2] Newport, FHLBP, Wells Fargo, Fir Tree, FHLBS, the Informal Noteholders Group, Airlie, and Global Thematic for depositions of certain employees presents additional administrative difficulty. Specifically, LBHI, LBI, and LB 745 LLC, as sellers, and Barclays Capital, Inc. ("_Barclays_"), as purchaser, are parties to that certain Asset Purchase Agreement, dated September 16, 2008 (as amended and clarified, the "_Asset Purchase Agreement_"). In addition, LBHI and Barclays are parties to that certain Transition

---

[2]   Harbinger filed a supplement to the Harbinger Motion that attaches a letter purporting to limit the scope of the discovery, but the changes in syntax do not materially change the onerous and ill-timed burdens imposed upon the Debtors for the reasons discussed herein. _See_ Docket No. 816.

Services Agreement, dated September 22, 2008 (the "_TSA_"). The TSA provides time for both parties in an attempt to facilitate the transfer of records and other necessary data. Pursuant to both the Asset Purchase Agreement and the TSA, approximately 9,100 employees were transitioned from the Debtors to Barclays. Currently, the Debtors and Barclays are working together to orderly transition the employees, but it will take time to establish satisfactory operational methods and any necessary sharing of personnel and records. Accordingly, neither the Debtors, nor their professionals, as of the date hereof, have access to much of the information transferred pursuant to the Asset Purchase Agreement. In addition, as a result of the commencement of the proceedings pursuant to the Securities Investor Protection Act ("_SIPA_") against LBI, the registered broker/dealer, on September 19, 20008, the records and relevant data related to customer accounts and transfers are under the control of the SIPA Trustee.

12.     The procedures outlined in the TSA are not yet fully functional, and the Debtors cannot access the sort of information requested by the Rule 2004 Motions until those procedures take full effect. Consequently, it appears that fulfilling the Rule 2004 Motions' broad requests requires a production of an unknown number of documents, and the deposition of an unknown number of the Debtors', and their non-debtor affiliates', employees – many of which are in the process of transitioning to new employment to an entity not related to the Debtors.

### IV.    Other Ongoing Investigations and Proceedings

13.     The Debtors commenced their chapter 11 cases less than a month from the date hereof with schedules showing approximately $639 billion in assets and $613 billion in liabilities on a consolidated basis. At this early stage of the chapter 11 process, the Debtors, their employees, and their professionals are responding to the thousands of issues that must be addressed each day to stabilize these extraordinary chapter 11 cases and preserve and protect the Debtors' assets and their value.

14. Separately, certain of the Debtors' foreign affiliates are involved in insolvency proceedings outside of the United States. These proceedings have administrators and other appointed entities who have prohibited unfettered access to the Debtors' foreign affiliates' records and documents.

15. For example, on September 15, 2008, PricewaterhouseCoopers LLP was appointed as joint administrators to LBIE in their currently pending insolvency proceeding in the United Kingdom. One of the joint administrators, Mr. Dan Yoram Schwarzmann, filed a declaration stating that $8 billion in funds "never reached LBIE" that are "due to LBIE," but there has been no allegation by the joint administrators that anything improper was done by LBI or LBHI in connection with such funds. Indeed, the declaration of Mr. Schwarzmann was made in the context of requesting that no impediment should be created in the Barclays' transaction to their efforts as the joint administrators to recover assets from third parties.

16. In addition, the Debtors' employees are complying with the numerous investigations that have been commenced by local, state, and federal governmental units. Consequently, in order to fulfill any of the Rule 2004 Motions' requests, the Debtors, and their professionals would have to divert personnel from business operations, preparation of material related to the administration of these cases, and/or ongoing investigations.

### V.    Securities Investor Protection Corporation Trustee's Report

17. At a hearing held on September 21 – 22, 2008, the SIPA Trustee reported that the Debtors' records were in reasonably good condition. The SIPA Trustee also noted that all intercompany transactions were recorded and such records are maintained and preserved. Those records are not currently accessible by the Debtors because, among other things, the procedures in the TSA have not yet become fully operational, and the joint administrators in foreign insolvency proceedings have not granted the Debtors unfettered access to records.

18.     On September 22, 2008, the Debtors and certain former employees (now employees of Barclays) met with the SIPA Trustee to discuss, among other things, coordination of the Debtors' cash management system.  As a result of this discussion, as well as future meetings, the SIPA Trustee agreed that prepetition intercompany accounts between Debtor entities will be frozen as of the applicable commencement date.  Postpetition intercompany movement of cash and collection/disbursement activity is accounted for in the same manner, but under the supervision of A&M.  These discussions, and their results, are more fully described in the Debtors' motion for, among other things, approval of their cash management procedures [Docket No. 669].

### VI.     Discovery Requested is Not Practical Now

19.     The discovery requested in the Rule 2004 Motions is not a reasonable use of precious human resources at this stage of the above-referenced Chapter 11 proceedings.  If granted, the Rule 2004 Motions would require the Debtors to incur significant expense as they would have to divert limited resources to fulfilling the Rule 2004 examination requests.  Much higher priorities must be attached to other critical functions, such as (a) protecting, preserving, and storing information concerning the Debtors' historical transactions; (b) dealing with assets that have a risk of significant loss of value; (c) mitigating significant liabilities, that if not addressed, could result in a significant increase in claims.  Addressing these priorities will ultimately benefit Harbinger, Newport, FLHBP, Wells Fargo, Fir Tree, FHLBS, the Informal Noteholders Group, Airlie, and Global Thematic as well as the Debtors' bankruptcy estates and other creditors.

20.     In my opinion, none of the parties filing the Rule 2004 Motions have provided sufficient information that demonstrates a need for the required discovery.  Entering into certain counterparty agreements, a cursory description of which is all that was provided,

does not reflect or reveal any need for the discovery asserted in the Rule 2004 Motions. Furthermore, the discovery permeates many different, nearly independent, sections of the Debtors' businesses, and would be very difficult, if not impossible, to collect, much less to review and organize at this juncture in the bankruptcy cases.

21. In due course, as systems are implemented and cancelled transactions are cleared, information about individual transactions will become available, and Harbinger and Newport should be able to determine, along with all of the other parties joining in and requesting similar discovery, details about the suspension of activities related to their accounts. There is no practical way the discovery sought in the Rule 2004 Motions can increase the pace of this process, and the only effect of undertaking the discovery sought in the Rule 2004 Motions, from an administrative standpoint, will be diversion of resources from activities that are more critical to the estate and that should be completed earlier in the logical sequence of estate management.

Dated:   October 12, 2008
         New York, New York

                                                      */s/ Bryan Marsal*
                                                        Bryan Marsal