**Hearing Date: October 16, 2008, at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
　　　　　　　　　　　　　　　　　　　　　:
**In re**　　　　　　　　　　　　　　　　: 　**Chapter 11 Case No.**
　　　　　　　　　　　　　　　　　　　　　:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, 　:　**08-13555 (JMP)**
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　**Debtors.**　:　**(Jointly Administered)**
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
---------------------------------------------------------------x

### DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS UNDER BANKRUPTCY RULE 2004

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................... 2

PROCEDURAL BACKGROUND ............................................................................................... 7

BACKGROUND TO THE RULE 2004 MOTIONS ................................................................ 10

ARGUMENT .............................................................................................................................. 14

      A.     The Requested Relief Attempts to Circumvent the Objectives of Rule
           2004................................................................................................................... 15

      B.     The Rule 2004 Motions Fail to Show Good Cause For the Examination ........... 18

           1.     The Rule 2004 Motions Do Not Demonstrate Necessity......................... 18

           2.     The Rule 2004 Motions Reveal No Nexus Between the Discovery
                and the Debtors' Estates......................................................................... 21

      C.     A Rule 2004 Examination Now Could Jeopardize Administration of the
           Estate................................................................................................................. 23

CONCLUSION............................................................................................................................26

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                i

# TABLE OF AUTHORITIES

*In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*,
    258 B.R. 580 (Bankr. S.D.N.Y. 2001) .......................................................................15, 20

*In re Coffee Cupboard, Inc.*,
    128 B.R. 509 (Bankr. E.D.N.Y. 1991)..........................................................................17

*Commodity Futures Trading Comm'n v. Weintraub*,
    471 U.S. 343 (1985)(internal citation omitted)................................................16

*In re Dinubilo*,
    177 B.R. 932 (E.D. Cal. 1993)........................................................................18

*In re Drexel Burnham Lambert Group, Inc.*,
    123 B.R. 702 (Bankr. S.D.N.Y. 1991)..........................................................23

*In re Eagle-Picher Indus., Inc.*,
    169 B.R. 130 (Bankr. S.D. Ohio 1994)........................................................18

*In re Enron Corp.*,
    281 B.R. 836 (Bankr. S.D.N.Y. 2002)................................................15, 18, 22

*In re Express One Int'l, Inc.*,
    217 B.R. 215 (Bankr. E.D. Tex. 1998) .............................................16, 17, 24

*In re GHR Energy Corp.*,
    35 B.R. 534 (Bankr. D. Mass.1983) .............................................................18

*In re Hilsen*,
    No. 87-11261 (JMP), 2008 WL 2945996 (Bankr. S.D.N.Y. July 25, 2008) ....................21

*In re Ionosphere Clubs, Inc.*,
    156 B.R. 414 (S.D.N.Y. 1993)........................................................................17

*In re Iridium Operating LLC*,
    478 F.3d 452 (2d Cir. 2007)...........................................................................16

*In re Valley Forge Plaza Assocs.*,
    109 B.R. 669 (Bankr. E.D. Pa. 1990) ...........................................................17

*Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*,
    945 F. Supp. 603 (S.D.N.Y. 1996)...........................................................14, 15

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                                    ii

Lehman Brothers Holdings Inc. ("*LBHI*"), and its affiliated debtors (the "*Debtors*" and, collectively with their non-debtor affiliates, "*Lehman*"), submit this Memorandum of Law in Opposition to the following motions for authority to conduct examinations under Federal Rule of Bankruptcy Procedure 2004 ("*Rule 2004*"): (i) Motion of Harbinger Capital Partners Special Situations Fund and Harbinger Capital Partners Master Fund I, Ltd., f/k/a Harbert Distressed Investment Master Fund, Ltd. (collectively, "*Harbinger*") for Leave to Conduct Rule 2004 Discovery of LBHI (the "*Harbinger Motion*") [Docket No. 373]; (ii) Motion of Newport Global Opportunities Fund LP, Newport Global Credit Fund (Master) L.P., PEP Credit Investor L.P., and Providence TMT Special Situations Fund L.P. (collectively, "*Newport*") for Leave to Conduct Rule 2004 Discovery of LBHI and Other Entities (the "*Newport Motion*") [Docket No. 435]; (iii) Response and Joinder of Federal Home Loan Bank of Pittsburgh ("*FHLBP*") to the Harbinger Motion [Docket No. 691]; (iv) Response and Joinder of FHLBP to the Newport Motion [Docket No. 692] (together with (iii), the "*FHLBP Joinders*"),[1] (v) Response and Joinder of Wells Fargo Bank, N.A. and Wells Fargo & Co. (collectively, "*Wells Fargo*") to the Harbinger Motion (the "*Wells Fargo Joinder*") [Docket No. 770]; (vi) Response and Joinder of Fir Tree Value Master Fund, L.P. and Fir Tree Capital Opportunity Master Fund, L.P. (collectively, "*Fir Tree*") to the Harbinger Motion (the "*Fir Tree Joinder*") [Docket No. 782]; (vii) Response and Joinder of the Federal Home Loan Bank of Seattle ("*FHLBS*") to the Harbinger Motion (the "*FHLBS Joinder*") [Docket No. 806]; (viii) Omnibus Statement of the Informal Noteholder Group (the "*Informal Noteholder Group*") with Respect to (I) the Harbinger Motion and (II) the Newport Motion (the "*Informal Noteholder Group*

---

[1]    Though the FHLBP Joinders are separately filed pleadings, their substance is nearly identical.  Where pinpoint citations are made herein, the applicable language can be found in such paragraph(s), or page(s), in either joinder filed by FHLBP.

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003

*Statement*") [Docket No. 814]; (ix) Joinder of Airlie Opportunity Master Fund, Ltd. ("*Airlie*") to

the Harbinger Motion (the "*Airlie Joinder*") [Docket No. 822]; and (x) Joinder of Global

Thematic Opportunities Fund LP, Panton Master Fund, L.P., CFIP Master Fund, Ltd., Cura

Fixed Income Arbitrage Master Fund, Ltd., and Turnberry Leveraged Credit Master Fund, L.P.

(collectively, "*Global Thematic*") to the Motions for Leave to Conduct Rule 2004 Discovery of

LBHI and Others (the "*Global Thematic Joinder*") [Docket No. 823] (together with (i) – (ix), the

"*Rule 2004 Motions*"), and respectfully represent:

## PRELIMINARY STATEMENT

The Rule 2004 Motions are inappropriate, unjustified, and destructive.  In the

initial phase of these extraordinary chapter 11 cases involving the financial collapse of one of the

largest investment banking firms in the world, the Rule 2004 Motions demand the right to

conduct fishing expedition examinations of the Debtors that would divert critical attention from

the priorities of administration confronting the Debtors.  The Rule 2004 Motions seek to examine

LBHI and others as to among other things:

> (1) the flow, movement, and transfer of funds, cash, securities, repurchase agreements, swap agreements, derivative securities, and/or other property after August 15, 2008 between LBHI or its wholly owned subsidiary Lehman Brothers, Inc. ("*LBI*") (a debtor that is subject to a proceeding under the Securities Investor Protection Act) and affiliates and other subsidiaries of LBHI, including but not limited to, Lehman Brothers Special Financing, Inc. ("*LBSF*") and Lehman Brothers International (Europe) ("*LBIE*") (an entity subject to insolvency proceedings in the United Kingdom) (the "*Transferred Property*"); and

> (2) the disposition, use, transfer, and/or current custody of  the Transferred Property to LBHI or LBI.

(Harbinger Mot. Sched. A).  In addition, the Rule 2004 Motions demand the following
production of documents:

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    2

    (1) documents sufficient to show the flow, movement and transfer of the Transferred Property;

    (2) internal work papers, emails and/or similar documents that refer to the reasons and rationale for the flow, movement and transfer of the Transferred Property;

    (3) documents sufficient to show the disposition, use, transfer and/or current custody of the Transferred Property; and

    (4) an accounting of all material Transferred Property.

(*Id.*)

The demanded examination and production of documents relating to hundreds of thousands, if not millions, of transactions would consume thousands of hours of time and the efforts of the limited personnel available to LBHI to perform the important tasks of preserving and protecting the assets and records of the Debtors. The essence of the Rule 2004 Motions is an attempt by Harbinger, Newport, FHLBP, Wells Fargo, Fir Tree, FHLBS, the Informal Noteholder Group, Airlie, and Global Thematic to seek information to enable them to pursue their individual claims. It is an inappropriate use of Rule 2004. The Rule 2004 Motions ignore the appointment and functioning of a statutory Creditors' Committee (as defined herein) as the representative of the general unsecured creditor constituency. The Creditors' Committee is diligently pursuing the rights of unsecured creditors. It has engaged two financial advisory firms (Houlihan Lokey Howard & Zukin and FTI Consulting, Inc.) and two law firms (Milbank Tweed Hadley & McCloy LLP and Quinn Emanuel Urquhart Oliver & Hedges LLP). The Creditors' Committee is actively participating in the administration of this relatively young and exceptional set of chapter 11 cases.

By their own admissions, each of these motions seeks information to pursue individual claims, but Rule 2004 is not intended to supplant the function of the Creditors'

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003       3

Committee and the orderly administration of the bankruptcy estates.  The stated purpose of each

of the Rule 2004 Motions is thus an inappropriate use of Rule 2004.  *See infra* pp. 14-17.

Harbinger, Newport, FHLBP, Wells Fargo, Fir Tree, FHLBS, the Informal Noteholder Group,

Airlie, and Global Thematic each has the burden to show the need for the discovery it seeks

under Rule 2004, and not one of the Rule 2004 Motions does so.  Each of these parties has also

failed to justify its sweeping requests, particularly at this critical, early stage of a chapter 11

proceeding with unprecedented dimensions.  *See infra* pp. 17-22.  Moreover, in light of the

complex structure of these Debtors and the magnitude of these chapter 11 cases, the enormity of

the tasks required to comply with these requests would be destructive and prejudicial to the

orderly administration of the Debtors' bankruptcy estates and harmful to the interests of all

economic stakeholders.  *See infra* pp. 22-25.

There are currently nine separate sets of requests for Rule 2004 examinations

regarding property transfers pending.  In the first, Harbinger seeks an order from this Court for

authority to conduct what amounts to extraordinarily broad discovery in the form of (i) the

deposition of "LBHI's Chief Financial Officer and/or any other person(s) most knowledgeable at

LBHI," about property movement between and among LBHI and its affiliates, during the entire

month preceding the filing of these cases, and (ii) the production of documents by LBHI

concerning "the movement of property" between and among LBHI and affiliates during the same

time frame.  (*See* Harbinger Mot. ¶ 15.)[2]  Harbinger's claims, however, are limited to what it

generally characterizes as "substantial indebtedness" from a single entity, Lehman Brothers

---

[2]        By Supplement dated October 10, 2008, Harbinger has contracted the scope of its requested examination.
The contraction does not materially change the burden upon the Debtors.  *See* Docket No. 816.

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                                    4

Special Financing, Inc. ("*LBSF*").[3]  (Harbinger Mot. ¶ 8.)  Harbinger apparently hopes to uncover evidence that might, in some unspecified way, assist in pursuing its own claims against the Debtors, including LBSF (and perhaps nondebtors), or in initiating an adversary proceeding to recover certain funds for ultimate distribution solely for its unique benefit.  (*See* Harbinger Mot. ¶ 22.)  Harbinger's opportunistic strategy is impermissible because it has failed to meet its initial burden to show good cause for the examinations it seeks, and it has failed to show that the burden to the estate is outweighed by any benefits Harbinger might receive.

Like Harbinger, Newport seeks information to pursue its own individual claims, at the expense of creditors as a whole.  Specifically, Newport seeks an order from this Court for authority to conduct what amounts to extraordinarily broad discovery in the form of (i) the deposition of LBHI regarding the transfer of securities, cash, or other property held by or for Lehman Brothers International (Europe) ("*LBIE*"), (ii) the production of documents by LBHI concerning such documents, and (iii) discovery from any third parties that received a transfer from LBIE or the Debtors that included any property for which Newport has an interest for the 60-day period prior to the filing of these bankruptcy cases.  (Newport Mot. 1-2.)  Additionally, the Newport Motion should be denied as it relates to assets that are subject to a pending foreign insolvency proceeding that has its own independent procedural parameters.  Newport has failed to justify its sweeping and overly-burdensome requests.

At least seven separate parties filed joinders to either or both the Harbinger Motion and/or the Newport Motion.  FHLBP filed two motions, separately joining in both Harbinger's and Newport's broad discovery requests.  Like those parties, FHLBP has failed to

---

[3]    LBSF filed for Chapter 11 protection on October 6, 2008. *See* Voluntary Pet., Case No. 08-13888 (Bankr. S.D.N.Y. filed Oct. 6, 2008).

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    5

establish good cause for the discovery it seeks. (*See* FHLBP Joinders ¶ 8.) Moreover, FHLBP

has commenced an adversary proceeding against the Debtors and, as a consequence, should be

precluded from the use of Rule 2004 to obtain discovery. Like FHLBP, the Informal Noteholder

Group and Global Thematic support both the Harbinger Motion and the Newport Motion, and

neither established good cause for the discovery it seeks. (*See* Informal Noteholder Statement

¶ ¶ 1-3; Global Thematic Joinder ¶ 6.) Wells Fargo, Fir Tree, FHLBS, and Airlie each filed a

joinder to the Harbinger Motion, but none explains why the unduly burdensome discovery is

necessary. (*See* Wells Fargo Joinder ¶ 7; Fir Tree Joinder ¶ 6; FHLBS Joinder ¶ 4; Airlie Joinder

¶ 7.)

       The Rule 2004 examinations requested by Harbinger, Newport, FHLBP, Wells

Fargo, Fir Tree, FHLBS, the Informal Noteholder Group, Airlie, and Global Thematic are

extraordinarily and unnecessarily disruptive to the orderly administration of these atypical and

hugely complex chapter 11 cases involving global financial systems and multiple insolvency

proceedings. Manifestly, the process under the Bankruptcy Code requires an appropriate period

to stabilize and organize the administration of a case under chapter 11. In a case of the

magnitude of the instant chapter 11 cases, it is critical that the Debtors not be diverted from the

purposes of protecting and preserving the assets and values of the Debtors. The Rule 2004

Motions, if allowed, would prohibit the Debtors from attending to these critical duties by

requiring the production of documents, and forcing the deposition of certain of the Debtors'

employees (in some cases, ex-employees) to satisfy the inappropriate request of—at most—a

handful of creditors. There is no showing that granting Rule 2004 examinations at this stage in

the chapter 11 cases would provide any significant help to Harbinger, Newport, FHLBP, Wells

Fargo, Fir Tree, FHLBS, the Informal Noteholder Group, Airlie, or Global Thematic in

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    6

supporting their respective claims.  In contrast, allowing such an examination will most certainly work to destabilize the Debtors' efforts to return to their normal business operations.  (*See* Declaration of Bryan Marsal in Support of Opposition to the Motions of Harbinger Funds and Others to Conduct Examinations under Bankruptcy Rule 2004 ¶¶ 10 – 19, 21) (the "*Decl.*") (attached as Exhibit "*A*" to Debtors' Opposition to the Motions of Harbinger Funds and Others to Conduct Examinations under Rule 2004 (the "*Opposition*")).

Accordingly, the relief requested in the Rule 2004 Motions should be denied because such relief (i) violates the objectives of a Rule 2004 examination by allowing a few isolated, unsecured creditors to circumvent the use of an adversary proceeding, the claims resolution process, and the Creditors' Committee, (ii) has not been justified by any of the Rule 2004 Motions, and (iii) jeopardizes the administration of the estate by forcing the Debtors to expend their very limited resources to respond to a request for documents and prepare for depositions rather than allowing them to continue to stabilize their day-to-day business operations.

## PROCEDURAL BACKGROUND

Commencing on September 15, 2008 (the "*Petition Date*") and, in some instances periodically thereafter, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On October 6, 2008, LBSF commenced its bankruptcy case, which will be administered in conjunction with the Debtors' bankruptcy cases.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

Pursuant to its authority under section 1102 of the Bankruptcy Code, on September 17, 2008, the United States Trustee for the Southern District of New York appointed

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    7

an official committee of unsecured creditors (the "*Creditors' Committee*").  Additionally, since

September 15, 2008, employees of Alvarez & Marsal North America, LLC ("*A&M*"), a firm

specializing in, among other services, turnaround management and restructuring, have provided

such services to Lehman.  (Decl. ¶ 2.)

The Debtors commenced their bankruptcy cases less than a month ago.  LBHI

reported consolidated assets and liabilities of May 28, 2008 at approximately $639 billion and

$613 billion respectively.  (Decl. ¶ 13.)  These are the largest chapter 11 cases ever filed under

the Bankruptcy Code and the most complex because of the nature of the businesses of the

Debtors.  Consequently, at this early stage of the chapter 11 process, the Debtors, their

employees, and their professionals are responding to the many thousands of issues that must be

addressed each day to stabilize the Debtors' businesses and preserve their value.  (*Id.*)

On September 22, 2008, in accordance with an order of this Court, the Debtors

and LBI sold a substantial part of their businesses to Barclays Capital Inc. ("*Barclays*").  In that

transaction, Barclays purchased much of the infrastructure relating to those businesses, including

the Payroll/Payable System, computer operating systems, and data stores.  In light of the

integration of the sold businesses and the retained businesses, the Debtors and Barclays entered

into a Transition Services Agreement (the "*TSA*").  *See* Lehman Brothers Holdings, Inc., Current

Report (Form 8-K), Ex. 10.5 (Sept. 22, 2008), *available at* http://www.sec.gov/cgi-bin/browse-

edgar?action=getcompany&CIK=0000806085.  When the TSA is fully implemented, each party

will provide certain necessary equipment and services to the other party for specified periods of

time, including Barclays processing the Debtors' payroll and payables on the Payroll/Payable

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    8

System.[4]  Once the TSA is fully operational, the Debtors should be able to access historical records and other information, but at this time, the Debtors do not have access to such information.  (Decl. ¶ 12.)

Separately, certain of the Debtors' foreign affiliates, including LBIE, are involved in insolvency proceedings outside of the United States.  (Decl. ¶ 14.)  These proceedings have administrators and other appointed entities that have so far prohibited unfettered access to the Debtors' foreign affiliates' records and documents.  (*Id*.)  On September 15, 2008, PricewaterhouseCoopers LLP was appointed as joint administrators (the "*Administrators*") to LBIE in their currently pending insolvency proceeding in the United Kingdom.  In a declaration filed by the Administrators in connection with the Barclay's sale, it was stated that LBIE "does not hold" $8 billion in funds "due to LBIE" for securities transferred from LBIE to Lehman Brothers Incorporated ("*LBI*").  (*See* Declaration of Dan Yoram Schwarzmann ¶¶ 25 – 26) (the "*Schwarzmann Decl.*") [Docket 223].  Unlike the press reports that distorted these statements of Mr. Schwarzmann, nothing in his Declaration suggests that anything improper or inappropriate had occurred.  Indeed, a preliminary investigation in connection with the purported transfer has not uncovered any transaction outside the ordinary course of business among the entities. Further, as stated, the records, etc. of LBI are within the control of the Securities Investor Protection Act Trustee (the "*SIPA Trustee*") and those of LBIE are under the control of the Administrators, and more information may be forthcoming. The only request of the Administrators was to avoid any "impediment" if the Administrators later determined a "need to proceed against … third parties to recover assets…" (*Id*. ¶ 27.)  No impediment has been

---

[4]        For example, the TSA provides, in general terms, that each party shall have access to the other's Information System for ninety days, and Barclays shall provide LBHI with reasonable access to all former LBHI employees for a period of two years.  TSA, § 3.07(a).

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    9

enacted.  The purported transfer does not serve as a basis to permit multiple Rule 2004 examinations.

## BACKGROUND TO THE RULE 2004 MOTIONS

*The Harbinger Motion*

The root of Harbinger's assertion that it is a party in interest is an alleged $250 million claim based upon certain counterparty agreements to which Harbinger and LBSF are parties.  In particular, LBSF and the Harbinger Capital Partners Special Situation Fund, L.P. are parties to that certain Master Agreement dated July 28, 2006.  Separately, LBSF and Harbinger Master Fund I, Ltd. are parties to that certain Master Agreement dated May 20, 2005 (collectively, the "*Harbinger Agreements*").  Notwithstanding the existence of these specific counterparty agreements between Harbinger and LBSF, for which Harbinger may pursue claims in due course and through appropriate procedural mechanisms in these proceedings, or in other jurisdictions during the course of unrelated proceedings, Harbinger tries to demand expansive discovery from the Debtors at the inception of these proceedings regarding the transfer and movement of essentially all property among LBHI and its affiliates during the entire month prior to the Petition Date.  (Harbinger Mot. at 1-2.)  Significantly, the Harbinger Motion and its exhibits show absolutely no nexus between Harbinger's $269 million purported claim, based on the Harbinger Agreements with LBSF, and $8 billion in funds that "LBIE does not hold," as explained in the Schwarzmann Declaration.  (Schwarzmann Decl. ¶ 26.)

*The Newport Motion*

Newport contends it is a party in interest to the Debtors' chapter 11 cases due to certain brokerage agreements (the "*Newport Agreements*") to which Newport and the Lehman entities, including non-debtor foreign affiliates, are parties.  (Newport Mot. ¶7.)

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    10

Notwithstanding the existence of the Newport Agreements, for which Newport may pursue claims in due course and through appropriate procedural mechanisms in these proceedings, or in the insolvency proceedings in the United Kingdom, Newport purports to need broad discovery from Debtors now regarding all property transfers of the Debtors and their affiliates during the 60-day period prior to the Petition Date.  (Newport Mot. ¶ 17.)  Like Harbinger's requests, much of Newport's requested discovery relates to an allegedly scheduled transfer of an unspecified amount of the Newport Funds' assets held by LBIE.  (Newport Mot. ¶8; Exs. A-D) (the "*LBIE Discovery Request*").  As the Newport Motion, and its accompanying exhibits, make clear, the undetermined amount of these assets were held by LBIE, not any of the Debtors.

*The FHLBP Joinders*

FHLBP avers it is a creditor of LBHI by virtue of LBHI's alleged guaranty of certain obligations of its affiliates, and the FHLBP Joinders specifically reference that certain ISDA Master Agreement, dated June 26, 1997, between LBSF and FHLBP.  (*See* FHLBP Joinders ¶¶ 1, 3.)  Notwithstanding the existence of these specific counterparty agreements between FHLBP and the Debtors, for which FHLBP may pursue claims in due course and through appropriate procedural mechanisms in these proceedings, FHLBP purports to need broad discovery from Debtors now.  In addition to joining the already broad discovery requests of both Harbinger and Newport, FHLBP also asks for (i) the deposition of "corporate designee(s) for LBHI affiliates from whom and/or to whom assets were transferred, including, inter alia, LBSF . . .," (ii) "production of documents concerning the movement of assets by and among LBHI [and] its affiliates . . .," and (iii) discovery as to the status of such property.  (FHLBP Joinders ¶ 9.)  As noted, FHLBP has commenced an adversary proceeding against certain Debtors.  Consequently,

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003          11

it should be relegated to normal discovery under the Federal Rules of Civil Procedure as incorporated into the Bankruptcy Rules.

*The Wells Fargo Joinder*

Like Harbinger, Newport, and FHLBP, Wells Fargo is also party to certain specified agreements with certain of the Debtors that were allegedly guaranteed by LBHI (the "*Wells Fargo Agreements*").  (Wells Fargo Joinder ¶ 1.)  The Wells Fargo Agreements have been terminated, and there appears to be no nexus between the examinations it seeks and these terminated agreements.  (*Id*. ¶ 2.)  Nevertheless, Wells Fargo asks for broad Rule 2004 examination, similar to the other requests, relating to (i) the assets and liabilities of the Debtors, and (ii) the transfer of assets or funds (a) between the Debtors, (b) from third parties to the Debtors, and (c) from the Debtors to third parties.  (*Id*. ¶ 6.)

*The Fir Tree Joinder*

Like Harbinger, Newport, FHLBP, and Wells Fargo, Fir Tree is also party to certain specified agreements with certain of the Debtors that were allegedly guaranteed by LBHI (the "*Fir Tree Agreements*").  (Fir Tree Joinder ¶ 1.)  The Fir Tree Agreements have been terminated, and there appears to be no nexus between the discovery Fir Tree seeks and these terminated Agreements.  (*Id*. ¶ 2.)  Nevertheless, in a manner very similar to Wells Fargo, Fir Tree asks for broad discovery relating to (i) the assets and liabilities of the Debtors, and (ii) the transfer of assets or funds (a) between the Debtors, (b) from third parties to the Debtors, and (c) from the Debtors to third parties.  (*Id*. ¶ 5.)

*The FHLBS Joinder*

Like Harbinger, Newport, FHLBP, Wells Fargo, and Fir Tree, FHLBS is also party to certain specified agreements with certain of the Debtors that were allegedly guaranteed

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    12

by LBHI (the "*FHLBS Agreements*").  (FHLBS Joinder ¶ 2.)  The FHLBS Agreements have

been terminated, and there appears to be no nexus between the discovery FHLBS seeks and these

terminated Agreements.  (*Id.* ¶ 2.)  Nevertheless, in a manner very similar to Wells Fargo and Fir

Tree, FHLBS asks for broad discovery relating to the transfer of assets or funds between and

among the Debtors and others.  (*Id.* ¶ 4.)

*The Informal Noteholder Group Statement*

The Informal Noteholder Group provides no specific information about any

agreements between or among its constituents and any of the Debtors, except that they are

"certain unaffiliated holders of senior and subordinated notes issued by LBHI."  (Informal

Noteholder Group Statement 1).  There appears to be no nexus between the discovery the

Informal Noteholder Group endorses and its relationship to the Debtors.  (Informal Noteholder

Group Statement ¶ 1.)  Nevertheless, in a manner very similar to the other Rule 2004 Motions,

the Informal Noteholder Group supports broad discovery relating to the transfer of assets or

funds between and among the Debtors and others.  (*Id.*)

*The Airlie Joinder*

Like Harbinger, Newport, FHLBP, Wells Fargo, Fir Tree, and FHLBS, Airlie is

also party to certain specified agreements with certain of the Debtors that were allegedly

guaranteed by LBHI (the "*Airlie Agreements*").  (Airlie Joinder ¶ 1.)  The Airlie Agreements

have been terminated, and there appears to be no nexus between the discovery Airlie seeks and

these terminated Agreements.  (*Id.* ¶ 2.)  Nevertheless, similar to Wells Fargo, Fir Tree, and

FHLBS, Airlie asks for broad discovery relating to (i) the assets and liabilities of the Debtors,

and (ii) the transfer of assets or funds (a) between the Debtors, (b) from third parties to the

Debtors, and (c) from the Debtors to third parties.  (*Id.* ¶ 6.)

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    13

*The Global Thematic Joinder*

Like Harbinger, Newport, FHLBP, Wells Fargo, Fir Tree, FHLBS, the Informal Noteholder Group, and Airlie, Global Thematic is also party to certain specified agreements with certain of the Debtors that were allegedly guaranteed by LBHI (the "*Global Thematic Agreements*"). (Global Thematic Joinder ¶ 2.) There appears to be no nexus between the discovery Global Thematic seeks and the Global Thematic Agreements. (*Id.* ¶ 5.) Nevertheless, in a manner very similar to Wells Fargo and Fir Tree, FHLBS, and Airlie, Global Thematic asks for broad discovery relating to (i) the assets and liabilities of the Debtors, and (ii) the transfer of assets or funds (a) between the Debtors, (b) from third parties to the Debtors, and (c) from the Debtors to third parties. (*Id.* ¶ 6.)

*Joinders Filed After October 10, 2008*

The Debtors and certain of their professionals have individually reviewed each motion, including all joinders, requesting discovery under Rule 2004 that was filed before October 11, 2008. The Debtors intend to oppose, using the arguments discussed herein as may be applicable, any joinders to the Rule 2004 Motions that may be filed on or after October 11, 2008.

## ARGUMENT

The Opposition should be sustained and the Rule 2004 requests of Harbinger, Newport, FHLBP, Wells Fargo, Fir Tree, FHLBS, the Informal Noteholders Group, Airlie, and Global Thematic for examination should be denied because the Rule 2004 Motions are inappropriate, unjustified, and destructive to the Debtors' estates. The recognized purpose of title 11 is to give a debtor a "breathing spell" so that it can get its affairs in order and systematically provide similar treatment to similarly situated creditors. *Variable-Parameter*

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    14

*Fixture Dev. Corp. v. Morpheus Lights, Inc.*, 945 F. Supp. 603, 608 (S.D.N.Y. 1996) ("[The Bankruptcy Code] is meant to give the debtor a breathing spell from his creditors and permit the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.") (internal quotation and citation omitted).  If granted, the Rule 2004 Motions would be disruptive and prejudicial to the orderly administration of the Debtors' chapter 11 cases to the detriment of economic stakeholders.

### A.    The Requested Relief Attempts to Circumvent the Objectives of Rule 2004.

A request for discovery under Rule 2004 is committed to the sound discretion of the bankruptcy court.  *See In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.,* 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) ("Rule 2004 provides that the Court 'may' order disclosure thereunder, giving the Court significant discretion.").  While Rule 2004 is undoubtedly broad and authorizes what some courts have termed "fishing expeditions," it is precisely because of that breadth that courts have recognized the need to impose limits and safeguards to keep the rule from being abused.  *See In re Enron Corp.*, 281 B.R. 836, 840-41 (Bankr. S.D.N.Y. 2002).  The Court should exercise its discretion to deny the Rule 2004 Motions not only because each motion fails to satisfy its burdens under Rule 2004, as discussed below, *see infra* Parts IV.B, C, but because to do otherwise in this case would be destructive of the administration and functioning of these huge, complex, and unprecedented cases.  These are the largest bankruptcy case in history.  Even the previous contenders for that distinction pale by comparison.  They present the most difficult of  businesses to comprehend and administer because of the very nature of a financial institution engaged in thousands upon thousands of transactions each day on a global basis.  As a consequence, individual creditors should not be permitted to interrupt the vast business of an estate of this magnitude, during the infancy of the cases, demanding the individual attention of

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    15

the management, the professionals and others in order to respond to an overly broad Rule 2004

request that will serve only the interests of those particular creditors at the expense of the estate

and the creditor body as a whole.  This is particularly true here, where the estates are being

administered by an independent Chief Restructuring Officer and his team with oversight by a

statutory committee of unsecured creditors with its extensive team of professionals.  The Rule

2004 Motions ignore that a debtor-in-possession "bear[s] essentially the same fiduciary

obligation to creditors and shareholders as would the trustee for a debtor out of possession," and

that courts leave debtors in possession based upon "an assurance that the officers and managing

employees can be depended upon to carry out the fiduciary responsibilities of a trustee."

*Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) (internal citation

omitted).  Similarly, the Rule 2004 Motions ignore that the Creditors' Committee "has a

fiduciary duty to maximize their recovery of the Estate's assets."  *In re Iridium Operating LLC*,

478 F.3d 452, 466 (2d Cir. 2007) (internal citation omitted).  With these protections in place,

Harbinger, Newport, FHLBP, Wells Fargo, Fir Tree, FHLBS, the Informal Noteholder Group,

Airlie, and Global Thematic cannot explain how their need to "get to the facts*,*" (Harbinger Mot.

¶ 23.)—so they can satisfy their curiosity and evaluate potential claims against the Debtors, as

well as nondebtors—takes precedence over the need for an orderly administration of the estates.

The Rule 2004 Motions improperly seek to allow a few unsecured creditors to hasten an

otherwise orderly and systematic claims-resolution process and circumvent the authority of the

Creditor's Committee.

        The potential disruption to the administration of the Debtors' case is unjustified.

The relief sought is contrary to the purpose of Rule 2004, which is "to show the condition of the

estate and to enable the Court to discover its extent and whereabouts, and to come into

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003          16

possession of it, that the rights of the creditor may be preserved." *In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) (citing *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991)); *see also In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993); *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 675 (Bankr. E.D. Pa. 1990) (stating that the purpose of Rule 2004 is "to allow a trustee, or others interested in accomplishing the same ends, to discover and investigate how to bring to light possession of assets of the debtor."). Far from preserving the rights of creditors, the Rule 2004 Motions would only dissipate the available resources, disrupt their orderly administration, and potentially interfere with investigations that will be conducted as to the affairs of the Debtors and their financial collapse.

Granting the requested relief would be akin to allowing a handful of privileged refugees to step to the front of the line of those waiting for water after a natural disaster. When a financial disaster like the collapse of Lehman Brothers Holdings Inc. occurs, individual creditors like Harbinger, Newport, and others must understand that they cannot step to the front of the line, but that relief workers will attend to their claims, like those of all creditors, as quickly and efficiently as they can. Particularly in a case in which the complexity and magnitude of claims far exceeds that of any other bankruptcy in history, allowing a few individual creditors to highjack the estates and their resources by forcing them to respond to broad Rule 2004 examinations would be contrary to the best interests of all economic stakeholders.

The Court should exercise its discretion to deny the Rule 2004 Motions. Harbinger, Newport, FHLBP, Wells Fargo, Fir Tree, FHLBS, the Informal Noteholder Group, Airlie, and Global Thematic cannot show good cause for the examinations requested, and they

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    17

certainly cannot show that any need they have for the examinations outweighs the sizeable

burdens their requests would impose on the Debtors.

### B.    The Rule 2004 Motions Fail to Show Good Cause For the Examination.

Harbinger, Newport, FHLBP, Wells Fargo, Fir Tree, FHLBS, the Informal

Noteholder Group, Airlie, and Global Thematic have each failed to justify the discovery

requested because they have made no showing of necessity.  Moreover, they have failed to

establish the necessary nexus between the discovery they seek and the administration of these

bankruptcy cases.  "Despite the breadth of Bankruptcy Rule 2004, 'it must *first* be determined

that the examination is proper.'"  *In re Enron Corp.,* 281 B.R. at 842 (quoting *In re GHR Energy

Corp.*, 35 B.R. 534, 538 (Bankr. D. Mass.1983) (emphasis in original)).  The party seeking to

conduct a Rule 2004 examination carries the burden of showing good cause for the examination.

*In re Express One Int'l*, 217 B.R. at 217 (citing *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130,

134 (Bankr. S.D. Ohio 1994)).  Good cause exists where the "examination sought is necessary to

establish the claim of the party seeking the examination, or the denial of such request would

cause the proposed examiner undue hardship or injustice."  *In re Express One Int'l*, 217 B.R. at

217 (citing *In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1993)).  Because the Rule 2004 Motions

do not provide a showing of necessity or a nexus between the Debtors or the administration of

their estates and the discovery they seek, they fail to demonstrate good cause.

### *1.    The Rule 2004 Motions Do Not Demonstrate Necessity.*

Contrary to the conclusory statements made in the Rule 2004 Motions, none of

the Rule 2004 Motions attempts to establish how the examinations they seek are "necessary" to

establish any claim or explain how denial of their request would cause them undue hardship or

injustice.  Rather, as an example, Harbinger simply contends, without any support, there is an

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    18

"urgent need to get to the facts." (Harbinger Mot. ¶ 23.) Similarly, Newport contends, also without support, there is a "paucity of relevant information" so creditors must seek to obtain facts. (Newport Mot. ¶ 14.) Neither of these conclusions provide good cause for the examinations their respective motions seek. The joinders by FHLBP, Wells Fargo, Fir Tree, FHLBS, the Informal Noteholder Group, Airlie, and Global Thematic provide no additional proof that examinations are necessary, or that denial of their discovery requests would cause undue hardship or injustice. In addition to joining in such requests, FHLBP, Wells Fargo, Fir Tree, FHLBS, the Informal Noteholder Group, Airlie, and Global Thematic request information that may be provided upon the Debtors filing their bankruptcy schedules and statements—filings that come during the course of a chapter 11 proceeding. (*See, e.g.*, FHLBP Joinders ¶ 9 (requesting discovery on the current status of the Debtors' property); Wells Fargo Joinder ¶ 6 (requesting a listing of the assets and liabilities of the Debtors); Fir Tree Joinder ¶ 5 (same)). Also, the Harbinger Motion and the Newport Motion state, as evidence for the need for Rule 2004 discovery, that the Debtors have not described their existing cash-management system. (Harbinger Mot. ¶ 21; Newport Mot. ¶ 13.) But the Debtors have filed a motion, scheduled to be heard on October 16, 2008, which, among other things, describes their existing cash-management system. *See* Docket No. 669.

Not only do Harbinger, Newport, FHLBP, Wells Fargo, Fir Tree, FHLBS, the Informal Noteholder Group, Airlie, and Global Thematic fail to prove that good cause exists, the Rule 2004 Motions specifically provide an alternative avenue involving non-debtor, unaffiliated sources that could be use to obtain the information requested. (*See, e.g.*, Harbinger Mot. ¶ 9; Newport Mot. ¶¶ 8-10; FHLBP Joinders ¶ 6.) Because the requested information could be fulfilled by ascertainable third parties, the Rule 2004 Motions do not demonstrate the necessity

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    19

required to show good cause.  Similarly, the Newport Motion, as joined by FHLBP, propounds a

discovery request relating to LBIE assets that Newport believes "have been transferred to one or

more third parties. . . ."  (Newport Mot. ¶ 15.)  By its own admission, Newport states the assets

were held by LBIE.  (Newport Mot. ¶ 8.)  As stated herein, LBIE is subject to pending

insolvency proceedings in the United Kingdom, and requests relating to the discovery of LBIE

assets should be addressed using the procedural parameters established in that proceeding.  *See*

*In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. at 584-587 (denying Rule 2004

examination where discovery was sought in connection with separate foreign arbitration

proceeding).  There is simply no showing in the Rule 2004 Motions of necessity because the

results of the requested discovery may be obtainable from other parties.

Moreover, the Rule 2004 Motions' requests cannot be justified by the need to

force the estates to preserve records.  The Rule 2004 Motions' assertion that immediate harm

would arise if assets are not immediately located and recovered is simply unfounded.  (*See, e.g.*,

Newport Mot. ¶ 16.)  Contrary to this bald assertion is the statement made by the SIPA Trustee,

during the hearing held on September 21-22, 2008, that the records of the Debtors appear to be in

reasonably good condition.  (Decl. ¶17.)  All intercompany transactions were recorded and such

records are maintained and preserved, but they are not readily accessible to the Debtors at this

time.  (*Id*.)  In any event, the Debtors already are bound to preserve all such records, as set forth

in paragraph 31 of this Court's preservation order, dated September 20, 2008:

> **Preservation of Certain Records**.  Subject to further order of the
> Court, the Seller and the Purchaser are hereby ordered to take
> appropriate measures to maintain and preserve, until the
> consummation of any chapter 11 plan for the Debtors, the books
> and records and any other documentation, including tapes or other
> audio or digital recordings and data in or retrievable from
> computers or servers, relating to or reflecting the records held by it
> or its Affiliates relating to the Business, including the accounts,

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    20

property and trading records of the customers of the Seller. In addition, the Debtors and Committee shall promptly identify reasonable procedures for preserving information in the Seller or Purchaser's possession related to potential tax or financial audits of, government investigations of, or claims against Seller, as well as any claims that the Debtors may have against third parties, and the Seller and Purchaser shall maintain and reserve such information, subject to further order of the Court until the consummation of any chapter 11 plan for the Debtors.

Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases ¶ 31 (the "*Sale Order*") [Docket No. 258]. Accordingly, contrary to the allegations that documents relating to potential claims may never be located, the Debtors' records have been, and will continue to be, adequately preserved.

### 2. The Rule 2004 Motions Reveal No Nexus Between the Discovery and the Debtors' Estates.

In addition to showing the necessity of any examination requested under Rule 2004, parties seeking such examinations must, as this Court recently recognized, provide "a reasonable nexus to the debtor and the administration of the debtor's case." *In re Hilsen*, No. 87-11261 (JMP), 2008 WL 2945996, at *1 (Bankr. S.D.N.Y. July 25, 2008). This they have not done. As the text of Rule 2004 makes clear, examinations "may relate *only* to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." *Id.* (quoting FED. R. BANKR. P. 2004 (emphasis added)). Contrary to this requirement, Harbinger essentially asks for discovery concerning the movement of *all property* between and among LBHI and its affiliates, regardless of the purpose or context, for the month prior to the Petition Date. (Harbinger Mot. ¶ 15.) Similarly, Newport asks for any transfer between the Debtors and

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                                    21

third parties of "securities, cash, or other property . . . [for] the period commencing 60 days prior to the Petition Date to the present."  (Newport Mot. ¶ 17.)

The Rule 2004 Motions explicitly reject a nexus with the Debtors or the administration of these bankruptcy cases where they seek to ascertain the location of property of non-debtor affiliates and third-party transferees.  (Harbinger Mot. ¶¶ 10-12; Newport Mot. ¶ 17; FHLBP Joinders ¶ 9; Wells Fargo Joinder ¶ 7; Fir Tree Joinder ¶ 6; FHLBS Joinder ¶ 7; the Informal Noteholder Group Joinder ¶ 3; Airlie Joinder ¶ 7; and Global Thematic Joinder ¶ 7.) Specifically, Harbinger avers, in a manner similar to Newport and FHLBP, that the requested discovery is "vital" to their "decisions" concerning "LBHI's non-debtor affiliates, . . . other LBHI affiliates subject to proceedings in other jurisdictions [presumably LBIE], or unaffiliated transferees."  (Harbinger Mot. ¶ 22; *see, e.g.* Newport Mot. ¶ 29) (reserving the right to seek additional discovery from any third party as Newport deems necessary); FHLBP Joinders ¶ 9 (seeking discovery from nondebtor "JP Morgan Chase.").  Such broad requests for information concerning all prepetition property transfers among the Debtors, their non-debtor affiliates, and unaffiliated transferees, so that Harbinger, Newport, FHLBP, Wells Fargo, Fir Tree, FHLBS, the Informal Noteholder Group, Airlie, or Global Thematic is able to "consider" what actions they may or may not take against certain nondebtors, is beyond the legitimate scope and purpose of Rule 2004.  *See In re Enron Corp.*, 281 B.R. at 842 (recognizing that Rule 2004 should not be used to obtain information for use in unrelated proceedings).  Accordingly, the Rule 2004 Motions fail to show good cause for the discovery they seek, and therefore, they should be denied.

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                22

C.    **A Rule 2004 Examination Now Could Jeopardize Administration of the Estates.**

Even if the Rule 2004 Motions provided good cause for the discovery they seek, which they do not, the Rule 2004 Motions must prove that the benefit to allowing such discovery outweighs the burden to the Debtors and the estates.  Compliance with the Rule 2004 Motions' requests, particularly at this stage in the proceeding, would be harmful to the interests of all constituencies of the estates.  The examinations requested are not a reasonable use of limited human and financial resources.  Much higher priorities must be attached to other critical functions, such as asset marshalling and protection, continued preservation of personnel, and administration of the bankruptcy estates, which will ultimately benefit Harbinger, Newport, and others, *as well as*, the estates, and other creditors.  In due course, as systems are implemented and cancelled transactions are cleared, information about individual transactions will become available, and each of these parties should be able to determine, along with other stakeholders, details about the suspension of activities related to their accounts.  There is no practical way the examinations sought in the Rule 2004 Motions can increase the pace of this process, and the only effect of undertaking such examinations, from an administrative standpoint, will be diversion of resources from activities that are more critical to the estates and should be completed earlier in the logical sequence of estate management.  (Decl. ¶ 19.)

Harbinger and Newport both specifically acknowledge Rule 2004 requires the "balanc[ing] [of] the competing interest of the parties, weighing the relevance of and necessity of the information sought by the examination."  *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991).  (*See* Harbinger Mot. ¶ 18; Newport Mot. ¶ 24.) Under such a balancing test, the substantial burdens the requested examinations would place on the Debtors and their estates far outweigh any speculative benefits to Harbinger, Newport,

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    23

FHLBP, Wells Fargo, Fir Tree, FHLBS, the Informal Noteholder Group, Airlie, and Global

Thematic.  "[I]f the cost and disruption to the examinee attendant to a requested examination

outweigh the benefits to the examiner, the request should be denied."  *In re Express One Int'l*,

217 B.R. at 217.  Due to the breadth, complexity, and diversity of the Debtors' operations, the

integrated funds flow and cash-management system that functioned between LBHI and the

Lehman entities before they filed for financial protection, and the lack of ready access to

personnel and data of former affiliates, the Debtors are not physically able to gather and prepare

the financial documentation that the Rule 2004 Motions seek at this time.  To gather and

organize those financial documents and statements, the Debtors must compile information from

books, records, computers, and other documents relating to thousands of affiliates and a

multitude of transactions.  For example, the Debtors were involved in approximately 1.5 million

transactions that involved the "transfer of property" each day.  (Decl. ¶ 10.)  The derivatives

transaction book of business alone involves over 1 million transactions, with approximately

8,000 counterparties, of which approximately 600,000 transactions have been cancelled.  (*Id*.)

Given the great cost and disruption to the Debtors that would be caused by granting the requests

of Harbinger, Newport, and the others, the burdens clearly outweigh any possible benefit.

Amid the massive effort to stabilize the Debtors' business that is underway,

Harbinger, and by joinder, FHLBP, Wells Fargo, Fir Tree, FHLBS, the Informal Noteholder

Group, Airlie, and Global Thematic request access to "the Chief Financial Officer and/or

knowledgeable senior corporate representative" for a period long enough to document all

intercompany transfers among all Lehman entities during the entire month before the Petition

Date.  (Harbinger Mot. ¶ 15; *see also* Newport Mot. ¶ 17 (seeking similar information but for 60

days prior to the Petition Date).)

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    24

Such broad examinations, encompassing enormous intercompany activity of what will likely amount to millions of transactions, would divert limited resources away from the estates' administration and consume the Debtors' senior management and professionals for weeks or months, at a time when the Debtors' fate, and the fate of thousands of employees is still in unsettled.  (*See* Decl. ¶ 21.)  Not only would the collection efforts require a substantial expenditure of time and effort on the part of the Debtors' employees and retained professionals, the Debtors do not have access to much of the information that is requested in the Rule 2004 Motions or the human resources necessary to access such information.  (Decl. ¶ 11-12, 21.)  Over 9,100 LBHI employees were transferred to Barclays as a result of the consummation of the Barclays Sale.  (Decl. ¶ 11.)  As part of the Barclays Sale, the parties to the transaction entered into the TSA; however, before the smooth functioning of the TSA can be realized, the parties must establish satisfactory operational methods and guidelines for the sharing of personnel and information.  *See* TSA at 1.  At this time, the TSA is not fully functional, and it is not yet clear where the requested information would exist, who would have knowledge of that information, and what the best resources would be to obtain such information.  (Decl. ¶ 12.)

The commencement and initial administration of these cases is consuming enormous amounts of both the Debtors' and the Debtors' retained professionals', as well as the Creditors' Committee and its retained professionals, time and attention.  (Decl. ¶ 13.)  In addition to the administration of the estate, there are also currently pending several investigations by governmental units that require dedication of significant resources, personnel, and time.  (Decl. ¶ 16.)  Neither the Debtors nor their professionals are able to simultaneously administer these chapter 11 cases through their early stages while also gathering and preparing the requested documents for a particularized advantage to Harbinger, Newport, FHLBP, Wells Fargo, Fir Tree,

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    25

FHLBS, the Informal Noteholder Group, Airlie, or Global Thematic.  Likewise, the Debtors'

senior management and employees cannot simultaneously assist in the initial administration of

these chapter 11 cases and prepare for and attend the depositions sought by the Rule 2004

Motions.  Accordingly, the burdens that the Rule 2004 Motions would impose on Debtors and

their professionals far outweigh any purported benefit to Harbinger, Newport, FHLBP, Wells

Fargo, Fir Tree, FHLBS, the Informal Noteholder Group, Airlie, or Global Thematic.

## <u>CONCLUSION</u>

These chapter 11 cases were precipitated by events outside the Debtors' control,

and they were filed on an emergency basis on behalf of Debtors whose businesses are extremely

complex and operated at high-speed.  To distract from the Debtors' efforts to organize and

efficiently administer these cases in order to allow individual creditors to undertake unrestricted

examinations so that they can prepare to take action against either Debtors or non-debtor

affiliates would be extremely prejudicial to the administration of these cases and detrimental to

the interests of all economic stakeholders.  The conclusory Rule 2004 Motions have failed to

meet their burden to establish that such examinations are justified at this point in time.  For these

reasons, the Rule 2004 Motions should be denied.


**[REMAINDER OF PAGE INTENTIONALLY BLANK, SIGNATURE PAGE FOLLOWS.]**

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003          26

Dated: New York, New York
       October 12, 2008

                              _____/s/ Harvey R. Miller_____
                              Harvey R. Miller
                              Richard P. Krasnow
                              Lori R. Fife
                              Shai Y. Waisman
                              Jacqueline Marcus
                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York 10153
                              Telephone: (212) 310-8000
                              Facsimile: (212) 310-8007

                              Attorneys for Debtors
                              and Debtors in Possession

DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF HARBINGER FUNDS AND OTHERS TO CONDUCT EXAMINATIONS
UNDER BANKRUPTCY RULE 2004

HO1:\365121\14\7TQ914!.DOC\58399.0003                    27