Hearing Date: October 16, 2008, at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
In re                                                                    :     Chapter 11 Case No.
                                                                         :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :    08-13555 (JMP)
                                                                         :
            Debtors.                                                :    (Jointly Administered)
                                                                         :
                                                                         :
------------------------------------------------------------------x

**RESPONSE TO SUPPLEMENT TO MOTION OF THE HARBINGER FUNDS
FOR LEAVE TO CONDUCT RULE 2004 DISCOVERY
OF DEBTOR LEHMAN BROTHERS HOLDINGS INC.**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("*LBHI*") and its affiliated debtors (collectively, the "*Debtors*"), respond to the Supplement to Motion of the Harbinger Funds for Leave to Conduct Rule 2004 Discovery of Debtor Lehman Brothers Holdings Inc. and respectfully shows:

1. On October 11, 2008, the Debtors received the Harbinger Funds Supplement dated October 10, 2008.

2. The Harbinger Funds allege that the Debtors have refused to provide it with any information "regarding the flow of funds and other property." The accusation is false and misleading.

3. The Harbinger Funds assert in Paragraph 3 of the Supplement that the Debtors participated in a conference call on October 3, 2008[1] to discuss the pending Bankruptcy Rule 2004 Motions and that the Debtors refused to compromise or provide information as requested by the Harbinger Funds and other Movants that participated in the conference call. The Harbinger Funds do not disclose that the purpose of the conference call was to discuss the burdens that the Rule 2004 Motions, if granted, would impose upon the Debtors and the efficient and orderly administration of the chapter 11 cases, as well as the demands of the Movants.

4. Nevertheless, it appears that as a result of the conference call, the Harbinger Funds have revised the requested Rule 2004 examinations. Attached to the Supplement is a copy of the letter addressed to Harvey R. Miller, an attorney representing the Debtors, dated October 7, 2008. Attached hereto as <u>Exhibit A</u> is a copy of Mr. Miller's response dated October 11, 2008 to the letter of October 7, 2008.

5. The Debtors maintain that the revised requested Rule 2004 examinations requested by Harbinger Funds are inappropriate, unjustified and would be detrimental and prejudicial to the interests of the Debtors and all economic stakeholders and the efficient, expeditious administration of the Debtors' estates.

---

[1] The Supplement mistakenly identifies the conference call as occurring on October 2, 2003.

WHEREFORE the Rule 2004 Motions filed by Harbinger Funds and others should be denied and the Debtors granted such other and further relief as is just.

Dated: New York, New York
October 12, 2008

*/s/ Harvey R. Miller*
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## Exhibit A

Letter from Harvey R. Miller, counsel to Lehman Brothers Holdings, Inc., to Sabin P. Willett, counsel to Harbinger Capital Partners Special Situations Fund (Oct. 11, 2008).

# WEIL, GOTSHAL & MANGES LLP

767 FIFTH AVENUE
NEW YORK, NY 10153
(212) 310-8000
FAX: (212) 310-8007

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
SINGAPORE
WARSAW
WASHINGTON, D.C.

HARVEY R. MILLER
DIRECT LINE (212) 310-8500
E-MAIL: harvey.miller@weil.com

October 11, 2008

**Via Electronic Mail & U.S. Mail**
Sabin P. Willett, Esq.
Bingham McCutchen LLP
399 Park Avenue
New York, New York 10022

Re:   **LBHI, et al / Harbinger Funds Rule 2004 Motion**

Dear Sabin:

      I have your letter of October 7, 2008, which was received on October 10, 2008. Unfortunately, your email transmission of the letter received at 5:34 p.m. on October 7, 2008, during the eve of the Jewish holiday, did not reach my desk until October 10, 2008.

      In any event, your recognition of the impropriety of your client's September 26, 20008 demands for examinations and productions of documents, etc. under Rule 2004 is gratefully acknowledged. However, unfortunately, it still appears that you fail to comprehend the substantive and administrative difficulties that continue to confront the Debtors in their efforts to effectuate an orderly, efficient and comprehensive administration of the chapter 11 cases. The progress that has been made in these first four weeks of these chapter 11 cases is remarkable given the chaos that occurred as a result of the commencement of insolvency proceedings involving Lehman entities in the United Kingdom and in Asia, as well as the commencement of the LBHI chapter 11 case on September 15, 2008 and the Securities Investor Protection Act proceedings against Lehman Brothers Inc. ("LBI") on September 19, 2008.

      As you are well aware, the commencement of that chapter 11 case was not planned or within the control of LBHI. As a result, the financial systems of the Lehman

NY2:\1925830\01\159Z@01!.DOC\58399.0003

**WEIL, GOTSHAL & MANGES LLP**

Sabin P. Willett, Esq.
October 11, 2008
Page 2

enterprise, which functioned well as long as the investment bank was an active, functioning entity, was disrupted and its integration effectively terminated, thereby limiting access to information and data. The Debtors, under the leadership of their Chief Restructuring Officer, Bryan Marsal, and over 100 representatives of Alvarez & Marsal, together with the Debtors' professionals, have worked prodigiously to rehabilitate those financial systems and to create an efficient, orderly and comprehensive administration of the chapter 11 cases. Apparently, you disbelieve the representations made by the Alvarez & Marsal team during our conference call of October 3, 2008. Your revised demands, i.e. revised Schedule A, does not materially change the onerous and ill-timed burden that you would impose upon the Debtors.

Moreover, we fail to understand the need or objectives of your clients, particularly in light of what you describe as the core of your clients' inquiry. Unless we are mistaken, it appears from the information which you furnished, that your clients were parties to two transactions with Lehman entities, each of which was the subject of an ISDA Agreement. Your clients elected to declare an Event of Default and Designation of Early Termination Date as to each transaction based upon the commencement of the chapter 11 case by LBHI as the alleged guarantor of the obligations of the particular Lehman entity. As a result of the closeout of each transaction, after netting the debits and credits as to each transaction, it appears that your clients are asserting that LBHI is liable to your clients in the aggregate of approximately $269 million.

If the foregoing is accurate, your clients may have claims against LBHI and the particular Lehman entity. Unfortunately, your clients are among the many thousands of entities who have suffered by reason of the ill-conceived decision of higher powers to allow LBHI, formerly an icon in the financial community, to fail. In due course LBHI and its affiliated debtors will file schedules of their assets and liabilities and otherwise comply with the provisions of the Bankruptcy Code. In that perspective, why is it necessary to burden a very difficult and extraordinary administration of these exceptional chapter 11 cases with multiple and ill-founded Rule 2004 fishing expedition examinations? How are the interests of your clients, whose transactions have been closed out, benefited by diverting the Debtors from the critical tasks confronting them?

You state that the core of your clients' inquiry "is to understand whether Lehman Brothers International (Europe), Lehman Brothers Special Financing Inc., and other key Lehman affiliates transferred approximately $8 billion, or any material sum, whether in cash or some form, on or about September 12, 2008 to some other entity and whether the transferred funds or other property was subsequently transferred, and if so, to what entity?" Please explain how your clients' claims and the Rule 2004 demands relate to the foregoing.

NY2:\1925830\01\159Z@01!.DOC\58399.0003

WEIL, GOTSHAL & MANGES LLP

Sabin P. Willett, Esq.
October 11, 2008
Page 3

    Your entire inquiry, as stated, is based upon "certain unverified information in the press and statements made in the Debtors' recent cash management motion,***" and you would like an understanding of material net transfers.

    First, based upon the preliminary investigation pursued by the Debtors, there is no evidence of any out of the ordinary course of transfers among Lehman entities on or about September 12, 2008. Second, there has been no proof of any kind of any transfer of $8 billion uncovered to date. Those "certain unverified" press statements [that you have relied upon] have not disclosed their sources or any reliable information to support the allegations. Surely you do not deem such reports as proof! As you were informed, the Lehman enterprise used a classic cash management system. LBHI acted as the financial hub of the Lehman enterprise, as described in the Cash Management Motion.

    You also fail to take into account that the financial systems and data of LBIE is under the control of the Joint Administrators appointed in the insolvency proceedings pending in the United Kingdom. The Debtors access to those systems and the LBIE premises has been restricted by the Joint Administrators. Moreover, the Joint Administrators have refrained from making any further statements as to the purported $8 billion transfer that in anyway amplifies or adds credibility to the assertion that $8 billion was transferred from LBIE to LBHI or LBI on or about September 12, 2008 in some nefarious way. As demonstrated by the information set forth in the Rule 2004 Motion of Newport Global Opportunities Fund LP, et al, the Joint Administrators are not particularly responsive to requests for information made by customers of LBIE. The Debtors have not been treated any more favorably, although efforts are underway to achieve a protocol with the Joint Administrators.

    Likewise, you fail to comprehend and acknowledge that much of the information concerning customer day to day transactions are under the control of James Giddens, Esq., as the Trustee appointed in the Securities Investor Protection Act case of LBI. Although the Debtors and Mr. Giddens are attempting to work together, there are two separate proceedings and Mr. Giddens is dedicated to discharging his responsibilities under the Securities Investor Protection Act to protect public customers and serve their needs first.

    In the context of all of the above, we still fail to understand the objective of your clients' Rule 2004 Motion. Are your clients intent upon discovering information that may be used in plenary or other actions? Why are the interests of your clients not protected and represented by the statutory Unsecured Creditors' Committee? Surely you recognize that multiple Rule 2004 fishing expeditions by their very nature must be burdensome, diverting and, particularly in this case, ill-timed.

WEIL, GOTSHAL & MANGES LLP

Sabin P. Willett, Esq.
October 11, 2008
Page 4

      Your conclusion that the information exists in electronic form and is easily retrievable is mistaken. As Mr. Lakhani of Alvarez & Marsal stated to you during the conference call of October 3, 2008, the computer records of LBHI and its affiliates consist of two petabytes of information encompassing millions of transactions and more than 2700 applications. As he stated and Mr. Suckow confirmed, they are not easily retrieved and there is no electronic button that can be pressed that would produce the information as you contemplate it.

      Finally, the implication that there is a desire to withhold information from the public is totally in error. The Debtors will comply with their obligations under the Bankruptcy Code. However, your clients' reluctance to execute a confidentiality agreement to access information from the Creditors' Committee as contemplated by section 1102(b)(3) of the Bankruptcy Code is perplexing. As you are well aware, confidentiality agreements do not cover information that is in the public realm or deemed non-confidential. In any event, the choice is your clients.

      We expect that you will persist in the Rule 2004 Motion.

Very truly yours,

Harvey R. Miller

HRM/jp

cc:    Dennis C. O'Donnell, Esq.
        Dennis F. Dunne, Esq.
        Andrew S. Dash, Esq.
        David J. Molton, Esq.
        Andrew K. Glenn, Esq.
        David S. Rosner, Esq.

NY2:\1925830\01\159Z@01!.DOC\58399.0003