**Hearing Date: October 16, 2008 at 10:00 a.m.**
**Objection Deadline: October 13, 2008 at 4:00 p.m.**

Edward S. Weisfelner, Esq. (EW 5581)
David J. Molton, Esq. (DM 1106)
Andrew Dash, Esq. (AD 7913)
**BROWN RUDNICK LLP**
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

Counsel to Newport Global Opportunities Fund LP,
Newport Global Credit Fund (Master) L.P.,
PEP Credit Investor L.P. and
Providence TMT Special Situations Fund L.P.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                                             :
In re                                                        :    Chapter 11
                                                             :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                     :    Case No. 08-13555 (JMP)
                                                             :
                              Debtors.                       :    (Jointly Administered)
                                                             :
------------------------------------------------------------ x

**SUPPLEMENT TO MOTION OF NEWPORT GLOBAL OPPORTUNITIES
FUND LP, NEWPORT GLOBAL CREDIT FUND (MASTER) L.P., PEP CREDIT
INVESTOR L.P. AND PROVIDENCE TMT SPECIAL SITUATIONS FUND L.P.
FOR LEAVE TO CONDUCT RULE 2004 DISCOVERY OF DEBTOR LEHMAN
BROTHERS HOLDINGS INC. AND OTHER ENTITIES**

Newport Global Opportunities Fund LP, Newport Global Credit Fund (Master) L.P., PEP Credit Investor L.P. and Providence TMT Special Situations Fund L.P. (collectively, the "Funds"),[1] by and through their undersigned counsel, hereby submit this supplement to their motion (the "Rule 2004 Motion"), pursuant to section 105(a) of title

---

[1] Newport Global Opportunities Fund LP and Newport Global Credit Fund (Master) L.P. shall be defined herein as "Newport". PEP Credit Investor L.P. and Providence TMT Special Situations Fund L.P. shall be defined herein as "PEP".

1

11 of the United States Code (as amended, the "Bankruptcy Code") and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order authorizing and directing discovery in the form of: (i) a deposition of Lehman Brothers Holdings Inc. ("LBHI") (together with certain of its affiliates, the "Debtors") regarding the transfer of securities, cash, or other property held by or for Lehman Brothers International (Europe) ("LBIE"); (ii) document production concerning such transfers; and (iii) document and deposition discovery of any third parties that received a transfer from LBIE or the Debtors, or any person or entities on their behalf, of securities, cash, or other property in which either or both of PEP and Newport held an ownership or other interest.

In support of this supplement, the Funds state as follows:

1. As set forth more fully in the Rule 2004 Motion, the Funds made numerous inquiries and requests of the Debtors, SIPA Trustee and Joint Administrators regarding the location and status of their assets prior to seeking invention of this Court.

2. Having made no progress with these parties and, more importantly, facing the potential of imminent harm, the Funds filed the Rule 2004 Motion on September 29, 2008. The Rule 2004 Motion is incorporated by reference herein.

3. On October 3, 2008, the Debtors held a meet and confer telephone conference with counsel for the Funds, along with counsel for Harbinger Capital Partners Special Situations Fund, L.P. and Harbinger Capital Partners Master Fund I, Ltd (collectively, "Harbinger"), which similarly sought Rule 2004 discovery from the Debtors and related entities regarding transfer and/or disposition of assets. During this conference, the Debtors described the impediments that allegedly would confront the Debtors should they be required to respond to certain of the requests contained in the

Rule 2004 Motion. During this same conference, counsel for the Funds advised that the Funds would voluntarily modify and limit the scope of their Rule 2004 requests regarding the Funds' specific securities.

4. Accordingly, on October 8, 2008, Brown Rudnick sent a letter to Debtors' counsel confirming that the Funds would narrow the scope of the document requests set forth in the Rule 2004 Motion to include only those requests relating specifically to the Funds' securities. A true and accurate copy of the October 8, 2008 letter to Debtors' counsel is attached hereto as Exhibit A.

5. By this supplement, the Funds now formally limit the scope of their Rule 2004 Motion and request, pursuant to section 105(a) Bankruptcy Code and Rule 2004 of the Bankruptcy Rules, an order authorizing and directing (a) the production of documents responsive to the document requests set forth on Amended Schedule A attached hereto, and (b) the deposition of the person(s) within the Debtors most knowledgeable with regard to the topics listed in Amended Schedule B.

6. The Funds reserve their right to request and/or to conduct any other discovery, pursuant to Rule 2004 or other applicable law, from any person or entity, including, without limitation, the Debtors and the SIPA Trustee, and including the discovery regarding the topics now withdrawn from the instant motion.

Dated: New York, New York
October 13, 2008

**BROWN RUDNICK LLP**

By: /s/ Edward S. Weisfelner
Edward S. Weisfelner, Esq. (EW 5581)
David J. Molton, Esq. (DM 1106)
Andrew Dash, Esq. (AD 7913)
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel to Newport Global Opportunities Fund LP, Newport Global Credit Fund (Master) L.P., PEP Credit Investor L.P. and Providence TMT Special Situations Fund L.P.*

## **AMENDED SCHEDULE A**

### **DEFINITIONS**

1. As used herein, the term "document" is used in the broadest sense and includes, but is not limited to, the following items, whether printed or recorded or reproduced by any other mechanical process, or written or produced by hand, and whether sent or received or neither, and further includes any and every manner of information recordation, storage, transmission or retrieval, including, but not limited to (a) typing, handwriting, printing, or any other form of writing or marking on paper or other material, (b) tape recordings, microfilms, microfiche, photocopies, and (c) any electronic, magnetic, or electromagnetic means of information storage and/or retrieval, including, but not limited to, electronic mail, optical storage media, computer memory chips, computer tapes, hard disks, compact discs, floppy disks, and any other storage medium used in connection with electronic data processing (together with the programming instructions and all other material necessary to understand or to use such tapes, disks, or other storage materials), namely: contracts; agreements and understandings; communications, including intracompany communications; memos; statements; handwritten or other types of notes; correspondence; telegrams; memoranda; notices; records; books; summaries, notes, or records of telephone conversations; summaries, notes or records of personal conversations or interviews; diaries; forecasts; statistical statements; accountants' work papers; graphs; charts; ledgers; journals; books or records of account; summaries of accounts; balance sheets; income statements; minutes or records of meetings or conferences; desk calendars; appointment books (including pocket appointment books); reports and/or summaries of interviews; reports and/or summaries of investigations; rough or scratch pad notes; records, reports or

5

summaries of negotiations; studies; brochures; pamphlets; circulars; press releases; contracts; projections; drafts of any documents; working papers; marginal notations; doodlings; photographs; drawings; checks (front and back); invoices, bills of lading and other commercial papers; tape or video recordings; computer printouts; data processing input and output; microfilms; check stubs or receipts; and any other document or writing of whatever description. As used herein, "document" means the original and any non-identical copy. Handwritten notations of any kind on the original or any copy of a document render same non-identical.

2.    As used herein, the terms "relating to" or "referring to" or "pertaining to" or the like means and includes all documents that in any manner or form are relevant in any way to or bear upon the subject matter in question, including, without limitation, all documents which contain, record, reflect, summarize, evaluate, comment upon, transmit, refer to, or discuss that subject matter or that in any manner state the background of, or where the basis or bases for, or that record, evaluate comment upon, or were referred to, relied upon, utilized, generated, transmitted, or received in arriving at your conclusions, opinions, estimates, calculations, positions, decisions, beliefs, assertions or allegations, undermine, contradict, or conflict with your conclusions, opinions, calculations, estimates, positions, beliefs, assertions, or allegations, concerning the subject matter in question.

3.    As used herein, the term "derivative securities" is defined as it is 17 C.F.R. § 240.16a-1(c)

4.    As used herein, the term "PEP" shall mean PEP Credit Investor L.P. and Providence TMT Special Situations Fund L.P., including their directors, officers, agents,

6

Pg 7 of 12

employees, attorneys, servants, subsidiaries, affiliates, representatives, investment bankers and/or anyone acting on the instruction of or on behalf of or in active concert or participation with PEP.

5. As used herein, the term "Newport" shall mean Newport Global Opportunities Fund LP and Newport Global Credit Fund (Master) L.P., including their directors, officers, agents, employees, attorneys, servants, subsidiaries, affiliates, representatives, investment bankers and/or anyone acting on the instruction of or on behalf of or in active concert or participation with Newport.

6. As used herein, the term "Funds" shall mean PEP and Newport.

7. As used herein, the term "LBHI," "you" and "yours" shall mean Lehman Brothers Holdings, Inc, including its directors, officers, agents, employees, attorneys, servants, subsidiaries, affiliates, representatives, investment bankers and/or anyone acting on the instruction of or on behalf of or in active concert or participation with LBHI.

8. As used herein, the term "Debtors" shall mean LBHI and its affiliated entities, as debtors and debtors-in-possession in the above-captioned jointly administered chapter 11 cases.

9. As used herein, the term "LBI" shall mean Lehman Brothers, Inc, including its directors, officers, agents, employees, attorneys, servants, subsidiaries, affiliates, representatives, investment bankers and/or anyone acting on the instruction of or on behalf of or in active concert or participation with LBI.

10. As used herein, the term "LBSF" shall mean Lehman Brothers Special Financing, Inc., including its directors, officers, agents, employees, attorneys, servants, subsidiaries, affiliates, representatives, investment bankers and/or anyone acting on the

7

instruction of or on behalf of or in active concert or participation with LBSF.

11. As used herein, the term "LBIE" shall mean Lehman Brothers International (Europe), including its directors, officers, agents, employees, attorneys, servants, subsidiaries, affiliates, representatives, investment bankers and/or anyone acting on the instruction of or on behalf of or in active concert or participation with LBIE.

12. As used herein, the term "Credit Suisse" shall mean Credit Suisse, including its directors, officers, agents, employees, attorneys, servants, subsidiaries, affiliates, representatives, investment bankers and/or anyone acting on the instruction of or on behalf of or in active concert or participation with Credit Suisse.

13. As used herein, the term "Fund Property", shall mean cash, securities, repurchase agreements, swap agreements, derivative securities and/or other property held by LBI pursuant to Customer Account Agreements – Prime Brokerage and Margin Lending Agreements with PEP and Newport, respectively.

14. As used herein, the term "Discovery" shall mean information of any nature disclosed, formally or informally, between parties to a lawsuit or obtained from a non-party through the issuance of a subpoena or otherwise including, but not limited to document requests, interrogatories, requests for admissions, responses to document requests, answers to interrogatories, answers to requests for admissions, documents, video tapes and deposition transcripts.

15. The uniform definitions contained in Rule 26.3 of the Local Civil Rules for the Southern and Eastern Districts of New York (incorporated by reference by Local Bankruptcy Rule 7026-1) are hereby incorporated by reference.

## INSTRUCTIONS

1. This discovery is to be deemed continuing and any information secured subsequent to the service of the response hereto must be furnished with supplemental responses immediately upon receipt of such information.

2. If any document requested in any request for production is withheld because of a claim or privilege or otherwise, state the following:

    (a) the privilege or other grounds upon which you rely to protect the document from disclosure;

    (b) the date of the document;

    (c) the name, address, telephone number, title and occupation of each of the individuals who prepared, produced, or reproduced, or who were recipients of, said document;

    (d) a description of the document sufficient to identify it; and

    (e) each and every fact or basis upon which you claim any such privilege or other grounds for non-disclosure.

3. If a document was prepared in several copies or if additional copies were thereafter made, and if any such copies were not identical or are no longer identical by reason of any notation or modification of any kind whatsoever, including without limitation notations on the front or back of any of the pages thereof, then each such non-identical copy is a separate document and must be produced.

4. Documents are to be produced for inspection as they are kept in the usual course of business, with delineation of the files from which they were produced, or organized and labeled to correspond with the categories in the request.

5. In producing documents, furnish all documents known or available to you, regardless of whether such documents or things are possessed directly by you or by your

attorneys or their agents, employees, representatives or investigators.

6. If any portion of any document is responsive to any request, then the entire document must be produced. If any requested document cannot be produced in full, produce the document to the extent possible, specifying each reason for your inability to produce the remainder and stating whatever information, knowledge or belief you do have concerning the unproduced portion.

7. If any document responsive to any request was at one time in existence, but is no longer in existence, then so state, specifying for each document:

    (a) the type of document;

    (b) the type(s) of information contained therein;

    (c) the date upon which it ceased to exist;

    (d) the circumstances under which it ceased to exist;

    (e) the identity of all persons having knowledge of the circumstances under which it ceased to exist; and

    (f) the identity of all persons having knowledge or who had knowledge of the contents thereof.

8. Documents shall be produced in the order in which they appear in their files, and shall not be shuffled or otherwise rearranged. Documents that, in their original condition, were stapled, clipped, or otherwise fastened together shall be produced in such form.

9. Unless otherwise indicated, all requests cover the period from July 15, 2008 through and including the present date.

## DOCUMENTS REQUESTED

1. All documents that concern, refer, relate to or evidence the flow, movement and/or transfer of the Fund Property, including the proceeds or cash equivalent thereof.

2. All documents that concern, refer, relate to or evidence the disposition, use, transfer and/or current custody of the Fund Property, including the proceeds or cash equivalent thereof.

3. All documents that concern, refer, relate to or evidence requests made by the Funds to transfer the Fund Property to Credit Suisse.

## AMENDED SCHEDULE B

## DEPOSITION TOPICS

1. Requests made by the Funds to transfer Fund Property to Credit Suisse.

2. The flow, movement and/or transfer of Fund Property.

3. The disposition, use, transfer and/or current custody of Fund Property, including the proceeds or cash equivalent thereof.

4. An accounting of all Fund Property.

# 1604190 v1 - HARRISRL - 027898/0001