GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
Telephone:   (212) 801-9200
Facsimile:   (212) 801-6400
John W. Weiss, Esq.
David Y. Wolnerman, Esq.
weissjw@gtlaw.com
wolnermand@gtlaw.com

Attorneys for Nomura Holding America, Inc.,
and certain of its direct and indirect subsidiaries
and affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                            :
In re                                                       :       **Chapter 11**
                                                            :
**LEHMAN BROTHERS HOLDINGS INC., et al.** :       **Case No. 08-13555 (JMP)**
                                                            :
             **Debtors.**                            :        **(Jointly Administered)**
                                                            :
-----------------------------------------------------------------x

**OBJECTION OF NOMURA HOLDING AMERICA, INC.,** *ET AL.*
**TO DEBTORS' PROPOSED ASSUMPTION AND ASSIGNMENT OF, AND**
**AMOUNTS NECESSARY TO CURE DEFAULTS UNDER, CONTRACTS**
**AND LEASES TO BE ASSUMED AND ASSIGNED TO PURCHASER**

Nomura Holding America, Inc., on its own behalf and on behalf of certain of its

direct and indirect subsidiaries and affiliates, including, but not limited to Instinet Incorporated

and Instinet Europe Limited (collectively "Nomura"), by and through its undersigned counsel,

hereby submits this objection (the "Objection") in connection with the proposed assumption and

assignment by Lehman Brothers Holdings Inc. and its affiliated debtors of, and amounts

necessary to cure defaults under, contracts and leases to Barclays Capital, Inc.   In support of

this Objection, Nomura respectfully represents as follows:

NY 239,163,475v2 10-13-08

## BACKGROUND

1.      Commencing on September 15, 2008, and continuing thereafter, LBHI and certain of its subsidiaries (collectively, the "Chapter 11 Debtors") commenced with this Court voluntary cases for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").   The Chapter 11 Debtors continue to manage and operate their businesses as debtors in possession pursuant to 11 U.S.C. § 1107(a) and 1108.

2.      The Chapter 11 Debtors' chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and this Court's related Order entered September 17, 2008. No trustee or examiner has been appointed.   On September 17, 2008, the Office of the United States Trustee for the Southern District of New York appointed an official committee of unsecured creditors.

3.      On September 19, 2008, the Securities Investor Protection Corporation commenced a proceeding in the United States District Court for the Southern District of New York (the "District Court") seeking an order adjudicating that customers of Lehman Brothers, Inc. ("LBI," and together with the Chapter 11 Debtors, the "Debtors") required the protection of the Securities Investor Protection Act of 1970 ("SIPA").   A trustee appointed under SIPA is administering LBI's estate.   The District Court subsequently transferred the SIPA proceeding to this Court, which is now presiding over both the bankruptcy proceedings and the SIPA proceeding.

4.      On September 17, 2008, the Debtors filed a motion with the Bankruptcy Court seeking, *inter alia,* an order approving a sale (the "Sale") of certain assets to Barclays Capital Inc. (the "Purchaser"), which assets included certain contracts designated, or to be designated, for assumption and assignment at the closing of the Sale (the "Assumed Contracts").

5.      On September 18, 2008, the Debtors filed a notice with this Court, which

stated that the Debtors would communicate their lists of Assumed Contracts, along with proposed cure amounts, to their creditors by posting such lists (the "Schedules") on the internet at http://chapterll.epiqsystems.com/lehman (the "Website"). Subsequently, the Debtors designated certain executory contracts and unexpired leases for assumption and assignment to the Purchaser by posting certain information relating to such contracts and leases on the Website.

6. On October 1, 2008, the Debtors filed with this Court a notice of revisions to the Schedules of contracts and leases assumed and assigned to the Purchaser. (Docket No. 504). Exhibit A to this notice, annexed hereto as Exhibit A, listed those counterparties affected by the revisions, including "Instinet" and an entity referred to as "NMS Linkage Fee." On the same day, the Debtors filed with this Court another notice of revisions to the Schedules of contracts and leases assumed and assigned to the Purchaser. (Docket No. 564). Exhibit A to this latter notice, annexed hereto as Exhibit B, again listed those counterparties affected by the revisions, including "Instinet" and an entity referred to as "NMS Linkage Fee."

7. The Schedules posted on the Website include a list of "IT contracts" to be assumed and assigned as well as a list of "non-IT contracts" to be assumed and assigned. The Schedule of IT contracts annexed hereto in pertinent part as Exhibit C provides, among other things, that a "Standalone Agreement" under which "Instinet Corporation" is the purported counterparty is to be assumed and assigned to the Purchaser. The proposed cure amount for the "Standalone Agreement" is alleged to be $0.00. There is no entity in the Nomura family of companies named Instinet Corporation. In addition, the Schedule of IT contracts provides that a "Master Agreement" under which "Instinet Europe Limited" is the purported counterparty is to be assumed and assigned to the Purchaser. The proposed cure amount for the "Master

Agreement" is alleged to be $0.00.   Instinet Europe Limited is an affiliate of Nomura.

8.      The Schedule of non-IT contracts annexed hereto in pertinent part as Exhibit D provides, among other things, that an unidentified agreement with "Instinet" is to be assumed and assigned to the Purchaser.   The related proposed cure amount is alleged to be $116,421.11 (having been reduced by $86,431.50 from the related cure amount originally alleged by the Debtors to be owing on account of such agreement).   The Schedule of non-IT contracts is completely unclear as to which actual Instinet entity is being referred to in the non-IT contract Schedule, and which Instinet agreement is proposed to be assumed and assigned to the Purchaser.

9.      In addition, the Schedule of non-IT contracts provides that an unidentified agreement with an entity referred to as "NMS Linkage Fee" is to be assumed and assigned to the Purchaser.   The related proposed cure amount is alleged to be $0.00.   It is currently unclear whether NMS Linkage Fee is a Nomura affiliate, although a number of Nomura entities could potentially be referred to by the acronym "NMS."   Thus, Nomura is objecting to this assumption until further related clarification is provided by the Debtors to Nomura.

## ARGUMENT

10.      Under Sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code, a debtor in possession which seeks to assume and assign an executory contract must (i) cure, or provide adequate assurance that it will promptly cure, any defaults in the executory contract, (ii) compensate the counterparty to the executory contract for any actual pecuniary loss to such party resulting from such defaults, and (iii) provide adequate assurance of future performance under such contract.   11 U.S.C. §§ 365(b)(1), 365(f)(2).   It is axiomatic that in order for a counterparty to properly evaluate a proposed assumption and cure pursuant to section 365 of the Bankruptcy Code, such counterparty must be fully apprised regarding the identity of the contract to be

assumed.   Moreover, the debtor must disclose the identity of the counterparty to the contract to be assumed.

11.    Nomura has attempted, to the best of its ability, to correlate the contracts and entities referenced in the Schedules with its and its affiliates' records.   Various Nomura entities are counterparties to a host of agreements with the Debtors.   Unfortunately, the identification of the aforementioned contracts in the Schedules to be assumed is simply too vague and insufficient for Nomura to identify the Nomura contracts to be assumed, to identify any Nomura entities that are counterparties to any such agreements, or to make an informed decision as to the appropriateness of the proposed cure amounts.

12.    In accordance with the Order, dated October 3, 2008, establishing procedures for the assumption and assignment of executory contracts and unexpired leases, Nomura is willing to meet and confer with the representatives of LBI, the Debtors and the Purchaser to resolve issues relating to the identity of any Nomura contracts proposed to be assumed, and the related proposed cure amounts.[1]   Nomura hereby requests that counsel to the relevant parties contact the undersigned attorneys in an effort to resolve this Objection without Court intervention, if possible.

## RESERVATION OF RIGHTS

13.    Nomura reserves the right to demand payment of any amounts that are due and/or that may become due in the future under any agreement between any Nomura entity, on the one hand, and LBI, the Debtors and/or the Purchaser, on the other hand, as either cure amounts, administrative expenses or otherwise.   To the extent Nomura has failed to identify any particular agreement listed in the Schedules as not being a contract to which a Nomura

---

[1] Counsel to Nomura has been in contact with Seth J. Kleinman, Esq., of Cleary Gottlieb Steen & Hamilton LLP, counsel to Barclays Capital, Inc., to raise the issues and objections set forth herein.   Mr. Kleinman indicated that he has recorded this Objection, is seeking the information requested herein by Nomura, and will advise Nomura in due course.   Nomura has filed this Objection to preserve its rights pending further discussions with, and receipt of information from, counsel to Barclays Capital, Inc.

NY 239,163,475v2 10-13-08

entity is a counterparty, Nomura reserves the right to interpose an objection to the proposed assumption, assignment and cure amount relating to any such contract.   Nomura further reserves the right to supplement or amend this Objection based upon additional facts learned through meeting and conferring with the Debtors, LBI and/or the Purchaser, or any such parties' professionals or agents.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Nomura respectfully objects to the proposed assumption and cure amounts set forth in the Schedules insofar as they relate to Nomura or its affiliates, requests that the Court order LBI, the Debtors and the Purchaser to accurately and clearly identify to Nomura the Nomura contracts to be assumed as part of the Sale or otherwise, and the Nomura counterparties to such contracts.   Absent identification and settlement of these issues to Nomura's satisfaction, Nomura requests that the Motion be denied insofar as it relates to Nomura or its affiliates, and requests that the Court grant Nomura such other and further relief as this Court deems appropriate.

Dated: October 13, 2008
     New York, New York

**GREENBERG TRAURIG, LLP**

By: /s/ John W. Weiss
    John W. Weiss, Esq.
    David Y. Wolnerman, Esq.
    weissjw@gtlaw.com
    wolnermand@gtlaw.com
    200 Park Avenue
    New York, New York 10166
    Telephone:   (212) 801-9200
    Facsimile:   (212) 801-6400

    Attorneys for Nomura Holding America, Inc., and certain of its direct and indirect subsidiaries and affiliates.