# Exhibit 1

<u>MASTER SALES AGREEMENT</u>

This Master Sales Agreement ("Agreement") is effective on (the "Effective Date"), by and between Spiral Binding Company, Inc. ("VENDOR"), and Lehman Brothers Inc. (together with its affiliates, "Lehman"), 745 7th Avenue, New York, NY 10019.

Now, therefore, in consideration of the mutual covenants hereinafter set forth and other good and valuable consideration, the parties hereto agree as follows:

1.  Definitions: As used in this Agreement, the following terms are defined:
    1.1  "Business Day" shall mean any day that is not a Saturday, Sunday, or day on which the New York Stock Exchange is closed.
    1.2  "Contract Product(s)" are all Products set forth in Exhibit A, which is attached and incorporated into this Agreement by reference.
    1.3. "Off-Contract Product(s)" are all Products required by Lehman which are sold by VENDOR and which are not Contract Products.
    1.4  "Products" shall mean the aggregate of all Contract Products and Off-Contract Products.
    1.5  "Proprietary Products" are products that are manufactured to Lehman Brother's unique specifications.
    1.6  "Distribution Center" are Vendor facilities that warehouse or ship products to Lehman Brothers or Third Party locations.
    1.7  "Initial Term" shall mean the initial three (3) year term of this Agreement.

2.  Purchases and Sale. In consideration of the mutual promises stated in this Agreement, Lehman agrees to purchase from VENDOR, and VENDOR agrees to sell to Lehman various Products as required by Lehman during the term of this Agreement. Unless otherwise agreed upon in writing by the parties, the terms and conditions stated herein shall govern all orders of Products by Lehman from VENDOR. It is clarified that, this Agreement does not in any way preclude Lehman, either during the term of this Agreement or otherwise, from purchasing products similar to the Products, from any other vendor or third party, including without limitation competitors of VENDOR.

3.  Catalogs. VENDOR shall produce for and distribute to Lehman, at VENDOR's own expense, a customized web catalog ("Web Catalog") and order form for all Contract Products. The Web Catalog shall include a description and picture of each Contract Product as well as the price set forth in Exhibit A and unit of issue. The Web Catalog will be supplied to each respective authorized purchaser as soon as possible following commencement of this Agreement, but in no event later than and on each January 1 thereafter during the Initial Term or any renewal term.

4.  Term and Termination. This Agreement is effective on the Effective Date and shall expire at midnight on the third anniversary thereof, unless earlier terminated in accordance with the terms of this Agreement. At the end of the Initial Term, Lehman may extend this Agreement for one additional one (1) year term upon written notice to VENDOR sixty (60) days prior to expiration of the Initial Term. In the event Lehman does not provide VENDOR with notice of exercise of its renewal option or of its decision not to renew, this Agreement shall nonetheless continue on a month-to-month basis upon the same terms and conditions, subject to termination by either party upon ninety (90) days' prior written notice. Lehman may terminate this Agreement upon ninety (90) days' prior written notice to VENDOR at any time during the Initial Term or any renewal term.

5.  Ordering.
    5.1  Lehman Brothers may order Products from VENDOR through the use of (i) VENDOR's toll-free customer service phone number and/or fax number, or (iii) VENDOR's web-based order entry and tracking system as more fully described in Exhibit D hereto or (ii) any other system as mutually agreed upon by the parties.
    5.2  Only Lehman Brothers has the authority to issue orders for the manufacture of Proprietary Products ("Blanket Purchase Orders"). Any manufacture of Proprietary Products that is not authorized by a Lehman Brothers Blanket Purchase Order is the responsibility of Vendor. Proprietary Product(s) will be manufactured by Vendor to Lehman Brother's specifications, which may be amended by Lehman Brothers from time to time.

Page 1 of 13

Lehman Brothers or specified Third Party may release proprietary product by means of issuing an inventory release order ("PO"). Any PO(s) issued by Third Party must be submitted by Vendor to Lehman Brothers for Lehman Brothers approval, which may be withheld at Lehman Brother's discretion, prior to fulfillment of said PO(s) by Vendor. Lehman Brothers or Third Party may order and Vendor will release non-proprietary product without additional authorization from Lehman Brothers. Vendor will advise and Lehman Brothers will determine the maximum and minimum inventory for each proprietary product to be held by Vendor at designated local Vendor Distribution Center(s). Vendor is responsible for the shipping of product to, the storage of product at, and the measurement of inventory of product at designated local Vendor Distribution Center(s). Vendor will notify Lehman Brothers within one (1) business day when any product inventory has reached pre-determined minimum inventory levels at any Distribution Center

6. Delivery.

    6.1    VENDOR guarantees to ship all stocked Products to Lehman within 1 to 3 Business Days of VENDOR's receipt of order. All orders received after 4:00 pm local time shall be considered received by VENDOR on the next business day. All deliveries shall be FOB shipping point and billed freight will be itemized on each invoice. VENDOR warrants, the conveyance of good title to Lehman in regards to all Products and further warrants that all Products received by Lehman will be free from damage of any sorts. In the event of any loss or damage, VENDOR agrees, at Lehman's request, to replace the lost or damaged products at VENDOR's sole expense. The VENDOR account manager working out of VENDOR's New York office will be the single point of contact for all shipping and Product quality discrepancies. The Lehman account manager will cooperate with VENDOR in filing and collecting loss, damage, and shortage claims from the carriers used to transport the Products. Lehman must notify the VENDOR account manager within reasonable time not to exceed 15 Business Days of any shipping or Product quality discrepancy in order for VENDOR to file a claim. VENDOR will not be responsible for any shipping or Product quality discrepancy if Lehman does not provide such timely notice.

    6.2    Vendor shall, at no cost to Lehman Brothers, track and provide to Lehman Brothers at the end of each calendar month all relevant data required by Lehman Brothers to measure Vendor's performance pursuant to this Agreement as well as all relevant data Lehman Brothers may request from time to time. Reports will be sent electronically to the designated Lehman Brothers contact in Excel format. Such reports shall include, without limitation, reports detailing the following for purchases and inventories of Lehman Brothers and Third Parties:

        6.2.1    status of orders (monthly reports, which shall include, without limitation back-order information);

        6.2.2    activity details (monthly reports, which shall include, without limitation, products item numbers, price, quantity, storage charge, shipping charge, shipping method, names of end users who placed the orders, order date, shipping date, delivery date, returns, if any);

        6.2.3    order delivery details (monthly reports, which shall include, without limitation, instances of on-time and late deliveries); and

        6.2.4    then current quantities of proprietary products in Vendor's warehouse(s) (monthly reports which shall include, without limitation, Vendor's recommendation of quantities of each item of proprietary products to be reordered to assure a ninety (90) day supply).

7. Warranty and Limitation of Liability.

    7.1    Product Warranty. VENDOR warrants that VENDOR is the legal and rightful owner of the Products or that it is legally licensed and/or authorized to sell and/or distribute Products being purchased hereunder by Lehman. All Products delivered under this Agreement will be free and clear of any and all encumbrances of any kind. VENDOR will not reproduce for anyone other than Lehman, the Lehman customized branded products.

Lehman acknowledges that VENDOR has advised Lehman that VENDOR is not the manufacturer of any of the Products purchased hereunder. Lehman shall be entitled to all manufacturers' product and patent infringement warranties, associated with Products purchased by Lehman hereunder.

THIS WARRANTY SUPERSEDES ALL INCONSISTENT PROVISIONS OF ANY AND ALL PURCHASE ORDERS, INVOICES, ACKNOWLEDGMENTS, OR OTHER WRITINGS OR STATEMENTS, WRITTEN OR OTHERWISE. EXCEPT AS SET FORTH IN THIS

AGREEMENT, VENDOR DISCLAIMS ALL OTHER EXPRESS OR IMPLIED WARRANTIES AND PRODUCT LIABILITY, SPECIFICALLY INCLUDING THE IMPLIED WARRANTY OF NON INFRINGEMENT, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE.

7.2 <u>Limitation of Liability.</u> In no event will either party be liable for any indirect, special, incidental, or consequential damages, whether based on contract, tort, or any other legal theory. In addition, nothing in this Section shall be construed to hold VENDOR liable for the Year 2000 non-Compliance of any third party's systems, including without limitation VENDOR's vendors and service providers. The Limitations of Liability in this section shall not apply to: (a) VENDOR's indemnification obligations hereunder, (b) VENDOR's breach of its confidentiality obligations hereunder, and (c) gross negligence and willful misconduct of VENDOR.

8. <u>Returns.</u> For all orders, Lehman may return to VENDOR any defective Products at any time and of all other Products if in resalable condition, if in the original packaging, and if made within 30 days of original receipt of Product. VENDOR shall issue credit memos to Lehman in the following billing cycle or the current billing cycle which ever comes first

9. <u>Prices.</u> Prices for Contract Products are specified in Exhibit A. At each anniversary, VENDOR may increase prices provided that any such percentage price increase does not exceed the lesser of three percent (3%) per year or VENDOR's actual, substantiated raw material costs increase. Lehman will receive a minimum of a fifteen percent (15%) discount from manufacturer's list price on all Products.

9.1 In order to support Lehman's initiative to leverage total expenditure, VENDOR will provide the following volume incentives: If total annual spend exceeds $250,000 (exclusive of tax and freight) Lehman will receive a 1% rebate. If total annual spend exceeds $500,000 (exclusive of tax and freight) Lehman will receive a 1.5% rebate. If total annual spend exceeds $1 million (exclusive of tax and freight) Lehman will receive a 2% annual rebate. The rebate percentage is calculated on all sales for the preceding year and will be paid on an annual basis, within thirty (days) from the anniversary date.

9.2 All incentives will be calculated on a dollar one basis and will not be combined, substituted or tiered. For example: If the annual spend is $350,000, Lehman will receive a rebate of 1% equal to $3,500 (.01 X 350,000 = 3,500). If the annual spend is $600,000, Lehman will receive a rebate of 1.5% equal to $9,000 (.015 X 600,000 = 9,000).

10. <u>Invoicing Procedure.</u> All payments are due and payable as follows: net thirty (30) days from receipt of invoice provided Lehman has received the products. VENDOR shall submit to the requesting department of Lehman an invoice for Products shipped specifying the order number, department delivery location, detailed descriptions, unit price, total price sales tax, and grand total. VENDOR will invoice Lehman in the format provided in Exhibit D.

11. <u>Account Representatives.</u> VENDOR shall provide, at its expense, dedicated account representatives, as well as customer service personnel to adequately accommodate order entry, order inquiries, and the handling of other order-related issues with Lehman.

12. <u>Order Size.</u> There will be no minimum order requirement for purchase of any Product under this Agreement. However, if Lehman places 10 or more orders under one hundred fifty dollars ($150) in any calendar month, the parties will negotiate a minimum order requirement for the balance of the term of this Agreement.

13. <u>Independent Contractor and Personnel.</u> VENDOR acknowledges that it is an independent contractor and not an employee, legal representative, or agent of Lehman and that this Agreement is not intended to create an agency relationship of any kind, apparent or actual, between the parties. Additionally, VENDOR agrees and represents that it is an independent contractor and its personnel are not Lehman's agents or employees for federal, state, and local tax purposes or any other purposes whatsoever, and are not entitled to any Lehman employee benefits. VENDOR represents that each of its personnel providing services under the agreement is an employee of VENDOR and that VENDOR will withhold and pay all applicable income and payroll taxes with respect to such personnel. VENDOR, and not Lehman, is solely responsible for the compensation of personnel assigned to perform services hereunder, and payment of worker's compensation, disability, and other similar benefits, unemployment and other similar insurance, for withholding income and payroll taxes and for verifying the work eligibility of each person performing services hereunder, including the completion and maintenance of Form I-9.

14. **Notices.** Any notice or demand required or permitted to be given under the terms of this Agreement shall be in writing and deemed to have been duly given or made if given by any of the following methods:

    14.1    Deposited in the United States mail, in a sealed envelope, postage prepaid, by registered or certified mail, return receipt requested, or hand delivered, respectively addressed as follows:

| | |
|---|---|
| To VENDOR: | Spiral Binding Company, Inc. |
| Attention: | Ann Marie Boggio |
| | One Maltese Drive |
| | Totowa, NJ 07511 |
| | Fax _973-256-5981 |
| | Telephone _973-256-0666 x1231 |
| | |
| With a copy to: | Spiral Binding Company, Inc. |
| | Attention: Richard Alvino |
| | 520 8th Avenue, 10th Floor, Suite 101 |
| | New York, NY |
| | Fax_212-594-7698 |
| | Telephone _212-563-6260 x2200 |
| | |
| To Lehman: | Lehman Brothers Inc. |
| | Attention: Director of Global Purchasing |
| | 745 7th Avenue |
| | New York, New York 10019 |
| | |
| With a copy to: | Lehman Brothers Inc. |
| | Attention: General Counsel |
| | 745 7th Avenue |
| | New York, New York 10019 |

    14.2    Sent to the above address via an established national overnight delivery service (such as Federal Express), charges prepaid; or if to VENDOR, sent via any electronic communications method, provided the sender obtains written confirmation of receipt of the communication by the electronic communication equipment at the VENDOR office listed above; provided also that, if this method is used, Lehman shall immediately follow such notice with a second notice in one of the methods set forth in Section 14.1 or 14.2 above.

    14.3    Notices shall be effective on the third (3) Business Day after posting if sent by mail, on the next Business Day after posting if sent by express courier and on the day of dispatch if manually delivered within regular business hours on any Business Day or if transmitted within regular business hours on any Business Day by electronic communication methods.

15. **Default.** Except as otherwise set forth in this Section 15, in the event of any material breach of this Agreement by either party, the non-defaulting party may terminate this Agreement by giving sixty (60) days' prior written notice thereof, provided, however, that this Agreement shall not terminate if the party in breach has cured the breach of which it has been notified prior to the expiration of such sixty (60) days.

In the event that Lehman fails to make any payment within thirty (30) days of receipt of the applicable invoice per the Invoicing Procedures set forth in Section 10, other than amounts being disputed in good faith by Lehman, and if such failure continues for a period of thirty (30) days after Lehman's receipt of written notice that payment is past due, VENDOR shall have the right to terminate this Agreement upon sixty (60) days' written notice unless such payment default has been cured before the end of such sixty (60) day period.

Either party shall be deemed to be in material breach of this Agreement and the other party shall be entitled to terminate this Agreement with immediate effect and without notice if such party: (a) is liquidated, dissolved, or adjudged to be in a state of bankruptcy or receivership; (b) is insolvent, unable to pay its debts as they become due, or makes an assignment to or for the benefit of its creditors; or (c) ceases to conduct business for any reason on an on-going basis leaving no successor in interest.

Upon such termination, (a) Lehman shall pay to VENDOR the full balance due of all non-disputed outstanding invoices for Products shipped to Lehman; (b) the Storage Agreement shall also terminate; (c) Lehman shall pay VENDOR for custom Contract Products, raw materials for custom Contract Products where such materials cannot practically be used

in the manufacture of Vendor's standard line of products, and custom work in progress for custom Contract Products; and (d) VENDOR shall deliver to Lehman all such custom Contract Products, raw materials for custom Contract Products, and work in progress for custom Contract Products. The remedies stated in this Section and the remedies stated in the Storage Agreement shall be in addition to all other remedies available under applicable law.

16.     Invalid Provisions. If any of the provisions of this Agreement are held to be invalid, illegal, or unenforceable, the provisions shall remain in effect to the extent allowed by law and the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

17.     Integration/Modification. This Agreement constitutes the entire agreement between the parties and shall replace and supersede all prior, and contemporaneous oral, agreements, negotiations, and representations between the parties with respect to the subject matter hereof. This Agreement shall not be modified or changed in any manner, except by a written amendment signed by both parties and specifically designated as an Amendment hereto. The parties agree that the terms and conditions stated on any purchase orders shall be superseded by the terms and conditions stated herein and shall be of no force and effect.

18.     Assignment. Neither party shall have the right to assign this Agreement (including by operation of law or otherwise) without the prior written consent of the other party, such consent not to be unreasonably withheld; except that Lehman may assign this Agreement and any of its rights and/or obligations hereunder upon written notice to VENDOR to any of its affiliated companies which own more that 50% of, or are more than 50% owned by, Lehman or to an entity with or into which it is merged or consolidated, without the consent of VENDOR. This Agreement shall be binding upon the parties' respective successors and permitted assigns.

19.     Force Majeure. If either party is prevented from performing any of its obligations required by this Agreement by reason of fire, flood, windstorm, earthquake, other act of God, civil disturbance, labor dispute, riot, order of any court or administrative body, computer downtime, or any other cause beyond the control of either party (any such event, a "Force Majeure Event") and without default on the part of such party, the time for performance of such obligations that are so prevented shall be extended one day for each day of such delay. Upon discovery of a Force Majeure Event by a party, it shall, to the extent reasonably practicable, notify the other party in writing of the existence of such event within 24 hours after the beginning of such period and of the termination of such period within 24 hours after it ceases to prevent performance.

20.     Confidentiality. "Confidential Information", means any information obtained by a party to this Agreement (the "Receiving Party") that relates to the past, present or future business activities of the other party (the "Disclosing Party"), its subsidiaries and affiliates or their respective employees, customers or third party contractors, including any information relating to the plans, pricing, methods, methodologies, processes, financial data, lists, Intellectual Property Rights, customer information, the terms and existence of this Agreement or related information. The parties agree that each party shall refrain from disclosing such Confidential Information to (i) third parties or (ii) individuals within its own organization who do not have a strict need to know. Confidential Information shall include any non-public information obtained by a party to this Agreement (the "Receiving Party") as a result of this Agreement which relates to the past, present or future business activities of the other party (the "Disclosing Party"), its subsidiaries and affiliates or their employees, customers, or third party contractors or vendors, including, but not limited to, any information relating to the pricing, methods, processes, financial data, lists, apparatus, statistics, programs, research, development, information technology or related information, and/or the terms or the provisions of this Agreement, except that any information obtained by Lehman shall not qualify as Confidential Information of VENDOR unless it is disclosed in writing and labeled as confidential or proprietary or, in the case of information that is disclosed orally by VENDOR, confirmed as confidential or proprietary. Notwithstanding the foregoing, the nondisclosure obligations herein shall not apply to information that: (i) is publicly disclosed by the Disclosing Party either prior to or subsequent to the receipt by the Receiving Party of such information, (ii) is independently developed by the Receiving Party without access to any Confidential Information or received from a third party having a right to disclose the information, (iii) is already in the possession of the Receiving Party at the time of the disclosure, or (iv) is required to be disclosed pursuant to applicable law, rule or order; provided the Receiving Party, where reasonably practicable and to the extent legally permissible, provides the Disclosing Party with written notice of such disclosure. Notwithstanding anything to the contrary, the terms and conditions of this Agreement, including but not limited to pricing information, shall be considered Confidential Information of both parties.

Lehman agrees that each party (and each of their respective employees, representatives, or agents) is permitted to disclose to any and all persons, without limitation of any kind, the structure and tax aspects of the transactions contemplated herein, and all materials of any kind (including opinions or other tax analyses) that relate to such structure and tax aspects. In this regard, the parties acknowledge and agree that any disclosure of the structure or tax aspects of the transactions contemplated by this Agreement is not limited in any way by an express or implied understanding or agreement, oral or written (whether or not such understanding or agreement is legally binding). The foregoing is intended solely to comply with the presumption set forth in Treasury Regulation 1.6011-4T(b)(3)(iv)) and is not intended to permit the disclosure of any information to the extent such disclosure is not required in order to avoid the transactions contemplated by this Agreement being treated as a "reportable transaction" within the meaning of Treasury Regulation 1.6011-4T(b).

21.  Section Headings. The section headings in this Agreement are for convenience only and are not intended to be inclusive, definitive, or to affect the meaning of the contents or script of this Agreement.

22.  Third-Party Beneficiaries. VENDOR and Lehman intend that this Agreement shall not benefit or create any right or cause of action in, against, or on behalf of any person or entity other than the parties hereto.

23.  Governing Law. This Agreement shall be governed and construed according to the laws of the state of New York, without regard to its choice of law provisions. The parties irrevocably submit to the exclusive jurisdiction of the courts of the State of New York and the United States district court located in the borough of Manhattan, New York, New York, and the appellate courts thereof.

24.  Amendment of Contract Products List. Lehman reserves the right to substitute and or amend the list of Contract Products in Exhibit A from time to time with thirty (30) days written notice.

25.  Insurance. VENDOR agrees to obtain and maintain and keep in full force and effect at VENDOR's expense statutory worker's compensation, disability, unemployment insurance, and the like for those of its employees performing services under this Agreement. In addition, VENDOR agrees to obtain and maintain commercial general and business auto liability and excess and umbrella insurance. The limits of such insurance shall not be less than two million dollars ($2,000,000) combined single limit. Each such insurance policy shall: (a) be maintained with an insurer having a rating of at least an A- in the most currently available Best's Insurance Reports; (b) name Lehman as additional insured and additional loss payee, where applicable; and (c) shall provide for at least thirty (30) days' prior notice to Lehman in the event of any modification or cancellation. VENDOR shall also notify Lehman at least thirty (30) days in advance if VENDOR desires to modify or cancel any such insurance. VENDOR shall furnish Lehman with certificates of insurance to evidence its compliance with the provisions hereof.

26.  Right to Audit. Lehman, its agents or its employees shall have access at all reasonable times during the term of any agreement, to Vendor's records, including, without limitation, information contained in data processing systems, for the purpose of verifying the accuracy of any charges submitted for services and/or equipment provided under the terms of the agreement. Vendor shall preserve all such materials for a period of three (3) years after the termination of the agreement, or for a period of time mandated under any applicable law or regulation, whichever is longer, for the purpose of auditing and verifying the rates charged to Lehman by Vendor.

27.  Indemnification:  Vendor agrees to indemnify, hold harmless, and defend Lehman, its affiliates and their respective assigns, directors, officers, and employees, and the users of Products sold by Vendor to Lehman (collectively, the Indemnified Parties) from and against claims, damages, loss, liability, costs and expenses (including reasonable attorney fees) (collectively, "Loss") arising from injury to any person or damage to or loss of any property, to the extent such injury or property loss or  damage was caused by Vendor's Products, or by Vendor personnel, agents or subcontractors. Vendor further agrees to indemnify, hold harmless and defend Lehman and the Indemnified Parties if any of Vendor's Products infringes on intellectual property rights of any third party and which infringement results in Lehman incurring any Loss as a result.  Loss shall not include any consequential damages Lehman may incur in the form of lost profits.

28.     <u>Compliance with Federal Rules and Regulations</u>. At its own expense, VENDOR will comply with all applicable laws, regulations, rules, ordinances and orders governing its activities related to this Agreement, including but not limited to all applicable requirements of Executive Order 11246, the Vietnam Veterans' Readjustment Assistance Act of 1974, as amended, the Rehabilitation Act of 1973, as amended, and the applicable implementing regulations and reporting requirements under each of the foregoing, each of which is incorporated herein by reference.

29.     <u>No Publicity</u>. Neither party shall use the name of the other party or any affiliated entity of the other party in publicity releases, promotional materials, announcements, customer listings, testimonials, or advertising.

30.     <u>Survival</u>. Any respective obligations of VENDOR or Lehman hereunder which by their nature would continue beyond the termination, cancellation, or expiration of this Agreement will survive such termination, cancellation, or expiration and will include but not be limited to the Confidentiality, Indemnification, Warranty and Limitation of Liability, Right to Audit and No Publicity obligations set forth herein.

31.     <u>Miscellaneous</u>. This Agreement represents the entire agreement between the parties. This Agreement may not be modified without the written consent of the parties. IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written

SPIRAL BINDING COMPANY, INC.

By: _____

Name:  Ann Marie Boggio

Title:   Director of National Accounts

Date: __3/6/07__

LEHMAN BROTHERS INC.

By: _____

Name: _PATRICK COSTER_

Title: _AUTHORIZED SIGNATURE_

Date: __3/7/2007__

EXHIBIT A

Custom Imprinted Product Price List

| PRODUCT CODE | DESCRIPTION | UOM | Rate per UOM |
|---|---|---|---|
| **GREEN COMBS w/ LOGO** | | | |
| 2391274-170 | 3/8" | 100 | $9.92 |
| 2391275-170 | 1/2" | 100 | $12.00 |
| 2391276-170 | 3/4" | 100 | $20.49 |
| 2391277-170 | 5/8" | 100 | $15.82 |
| 2391278-170 | 1" | 100 | $27.96 |
| 2391279-170 | 2" | 100 | $40.52 |
| **3-RING BINDERS - PORTRAIT** | | | |
| 2391273 | 1" Portrait Binders | 22 | $79.86 |
| 2391271 | 2" Portrait Binders | 14 | $57.75 |
| **3-RING BINDERS - LANDSCAPE** | | | |
| 2391272 | 1" Landscape Binders | 22 | $79.86 |
| 2391270 | 2" Landscape Binders | 14 | $57.75 |
| **POCKETFOLDERS - STANDARD** | | | |
| 2391283-170 | 12 x 9 Folder w/4" Pockets | 250 | $134.80 |
| 2392346 | 12 x 9 Folder w/4" Pockets - Die Cut Window | 250 | $134.80 |
| **POCKETFOLDERS - CAPACITY** | | | |
| 2391284-170 | 12 x 9 Folder w/ 1/2" Pockets | 50 | $40.25 |
| 2392315 | 12 x 9 Folder w/ 1/4" Pockets - Die Cut Window | 50 | $40.25 |

**TABS**
(Tabs are packaged 1000 per pack; All tabs must be ordered in full packs; Tabs are 1/5 cut.)

**TABS - PORTRAIT**

| Product Code | Description | UOM | Rate per UOM |
|---|---|---|---|
| 2390800 | I | 1000 | $71.56 |
| 2390801 | II | 1000 | $71.56 |
| 2390802 | III | 1000 | $71.56 |
| 2390803 | IV | 1000 | $71.56 |
| 2390804 | V | 1000 | $71.56 |
| 2390805 | VI | 1000 | $71.56 |
| 2390806 | VII | 1000 | $71.56 |
| 2390807 | VIII | 1000 | $71.56 |
| 2390808 | IX | 1000 | $71.56 |
| 2390809 | X | 1000 | $71.56 |
| 2390816 | A | 1000 | $71.56 |
| 2390817 | B | 1000 | $71.56 |
| 2390818 | C | 1000 | $71.56 |
| 2390819 | D | 1000 | $71.56 |

| | | | |
|---|---|---|---|
| 2390820 | E | 1000 | $71.56 |
| 2390821 | F | 1000 | $71.56 |
| 2390822 | G | 1000 | $71.56 |
| 2390823 | H | 1000 | $71.56 |
| 2390824 | I | 1000 | $71.56 |
| 2390825 | J | 1000 | $71.56 |

**TABS - LANDSCAPE**

| | | | |
|---|---|---|---|
| 2390853 | I | 1000 | $71.56 |
| 2390854 | II | 1000 | $71.56 |
| 2390855 | III | 1000 | $71.56 |
| 2390856 | IV | 1000 | $71.56 |
| 2390857 | V | 1000 | $71.56 |
| 2390858 | VI | 1000 | $71.56 |
| 2390859 | VII | 1000 | $71.56 |
| 2390860 | VIII | 1000 | $71.56 |
| 2390861 | IX | 1000 | $71.56 |
| 2390862 | X | 1000 | $71.56 |
| 2390869 | A | 1000 | $71.56 |
| 2390870 | B | 1000 | $71.56 |
| 2390871 | C | 1000 | $71.56 |
| 2390872 | D | 1000 | $71.56 |
| 2390873 | E | 1000 | $71.56 |
| 2390874 | F | 1000 | $71.56 |
| 2390875 | G | 1000 | $71.56 |
| 2390876 | H | 1000 | $71.56 |
| 2390877 | I | 1000 | $71.56 |
| 2390878 | J | 1000 | $71.56 |

**TABS - BLANK**

| | | | |
|---|---|---|---|
| 2390784 | Position 1 | 1000 | $71.56 |
| 2390785 | Position 2 | 1000 | $71.56 |
| 2390786 | Position 3 | 1000 | $71.56 |
| 2390787 | Position 4 | 1000 | $71.56 |
| 2390788 | Position 5 | 1000 | $71.56 |

**COVERS - GREEN W/ LOGO**

| | | | |
|---|---|---|---|
| 2391280-170 | 9 x 11 Hemlock Horizontal | 500 | $121.97 |
| 2391281-170 | 9 x 11 Hemlock Veritcal | 500 | $121.97 |
| 2391371-170 | 8 1/2 x 11 Hemlock Horizontal | 500 | $121.97 |
| 2391372-170 | 8 1/2 x 11 Hemlock Vertical | 500 | $121.97 |

**BACKS - GREEN**

| | | | |
|---|---|---|---|
| 2391282-170 | 9 x 11 Hemlock Green | 500 | $95.97 |
| 2391373-170 | 8 1/2 x 11 Hemlock Green | 500 | $95.97 |

EXHIBIT B

Stock Product Price List

**Clearview Binders**

**White - Round Ring**                                                                Price

| | 1/2" | Box | 12 | $ | 1.79 |
|---|---|---|---|---|---|
| | 3/4" | Box | 12 | $ | 1.90 |
| | 1" | Box | 12 | $ | 1.90 |
| | 1 1/2" | Box | 12 | $ | 2.17 |
| | 2" | Box | 12 | $ | 2.63 |
| | 2 1/2" | Box | 12 | $ | 3.03 |
| | 3" | Box | 12 | $ | 3.18 |

**Black - Round Ring**

| | 1/2" | Box | 12 | $ | 1.79 |
|---|---|---|---|---|---|
| | 1" | Box | 12 | $ | 1.90 |
| | 1 1/2" | Box | 12 | $ | 2.17 |
| | 2" | Box | 12 | $ | 2.63 |
| | 2 1/2" | Box | 12 | $ | 3.03 |
| | 3" | Box | 12 | $ | 3.18 |

**Deluxe Angle D 3-Ring**

| White | 1" | Box | 12 | $ | 2.27 |
|---|---|---|---|---|---|
| | 1 1/2" | Box | 12 | $ | 2.51 |
| | 2" | Box | 12 | $ | 2.90 |
| | 2 1/2" | Box | 12 | $ | 3.29 |
| | 3" | Box | 12 | $ | 3.58 |
| | 4" | Box | 6 | $ | 5.27 |

**E-Z Load**

| White | 1" | Box | 12 | $ | 3.93 |
|---|---|---|---|---|---|
| | 1 1/2" | Box | 12 | $ | 4.15 |
| | 2" | Box | 12 | $ | 4.57 |
| | 2 1/2" | Box | 12 | $ | 5.00 |

**Economy Clearview Binders**

| White | 1/2" | Box | 12 | $ | 1.59 |
|---|---|---|---|---|---|
| | 3/4' | Box | 12 | | n/a |
| | 1" | Box | 12 | $ | 1.74 |

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  | 1 1/2" | Box | 12 | $ | 1.90 |
|  | 2" | Box | 12 | $ | 2.28 |
|  | 2 1/2" | Box | 12 | $ | 2.59 |
|  | 3" | Box | 12 | $ | 2.70 |

**Spiral Comb**

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| Black w/out Logo | 1/4" | Box | 100 | $ | 1.98 |
|  | 5/16" | Box | 100 | $ | 2.21 |
|  | 3/8" | Box | 100 | $ | 2.33 |
|  | 7/16" | Box | 100 | $ | 3.07 |
|  | 1/2" | Box | 100 | $ | 3.24 |
|  | 9/16" | Box | 100 | $ | 3.93 |
|  | 5/8" | Box | 100 | $ | 5.22 |
|  | 3/4" | Box | 100 | $ | 6.04 |
|  | 7/8" | Box | 100 | $ | 7.20 |
|  | 1" | Box | 100 | $ | 9.58 |
|  | 1 1/8" | Box | 100 | $ | 11.82 |
|  | 2" | Box | 50 | $ | 7.40 |

<u>EXHIBIT C</u>

**Customer Storage**

VENDOR agrees to temporarily store Lehman's Custom Products as requested by Lehman.

1. <u>The Products</u>. The Products include all items ordered under this Master Sales Agreement. VENDOR is required to maintain all Products until releases are requested by Lehman via written Release Purchase Order. Lehman will be invoiced as the Products are shipped ("Storage-and-Carry Products"). The Products will be stored by VENDOR at VENDOR facility(s) located at (One Maltese Drive, Totowa, New Jersey) for the term of the Agreement.

2. <u>Risk of Loss Responsibility</u>. Vendor shall bear all risk of loss or damage to products stored by VENDOR and shipped to Lehman by VENDOR. In the event of any such loss or damage, VENDOR shall, at Lehman's request, replace the lost or damaged products at VENDOR's expense.

3. <u>At the End Date</u>. VENDOR shall invoice Lehman for the remainder of the unshipped Storage-and-Carry Products. At the End Date, Lehman has the option to instruct VENDOR to ship the Storage-and-Carry Products to Lehman freight collect, to hold the Storage-and-Carry Products at Lehman's sole cost and expense, or to tender the Storage-and-Carry Products to a warehouse for storage at Lehman's sole cost and expense.

4. <u>Transfer of Products</u>. For all Storage-and-Carry Products sent by Lehman's prior supplier to VENDOR for storage and distribution which remain at VENDOR location for more then 3 months, VENDOR shall invoice Lehman $35 per pallet per month on remaining inventory incurred in storing.

## EXHIBIT D

### Web Based Ordering System

Spiral Binding agrees to develop and host a custom online ordering portal (www.spiralbinding.com) that will enable Lehman to process orders for document finishing supplies and equipment.

Once orders are placed on the web site, they are then securely transmitted to Spiral Binding for order fulfillment. Invoice/Order/Shipping Details and Package Contents will be available online (under Order History & Tracking) once the order has been shipped and posted as an invoice against the account.

Approval process functionality will be set up on an individual basis per instructions from Lehman on who should have permission to order and who should have permission to approve.

A summary billing statement and hard copies of actual invoices will be sent at the end of every month to Lehman. Invoice details for each user are also available on-line for viewing and printing.

Electronic detailed management reports can be customized to meet Lehman's requirements and supplied to Lehman on a monthly basis or on-demand. Ordering reports by location can also be made available on-line and secured so that only approved users can view them.

The web based ordering system and invoicing requirements will be developed in cooperation between Lehman and VENDOR and shall be amended to this Agreement when complete.