**EXHIBIT C**

## CONSENT TO SUBLEASE AND SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

AGREEMENT (hereinafter called this "**Agreement**") made as of the 21 day of August, 2006 between 1301 PROPERTIES OWNER, L.L.C., a Delaware limited liability company, (hereinafter called "**Landlord**"), WASSERSTEIN PERELLA GROUP HOLDINGS, LLC, (hereinafter called "**Tenant**" or "**Sublandlord**"), and LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation (hereinafter called "**Subtenant**");

W I T N E S S E T H.

WHEREAS, Landlord is the landlord under that certain lease dated as of August 17, 1999, as amended by that certain First Amendment dated as of March 19, 2001 and by that certain Second Amendment dated as of July 19, 2001 between Landlord, as lessor, and Tenant, as lessee (hereinafter called the "**Overlease**"), covering certain premises (hereinafter called the "**Demised Premises**") in the building situated at 1301 Avenue of the Americas, New York, New York (hereinafter called the "**Building**"); on land more particularly described in Exhibit A attached hereto and made a part hereof; and

WHEREAS, Tenant, as sublessor, and Subtenant, as sublessee, have entered into that certain sublease agreement dated as of July 26, 2006 (hereinafter called the "**Sublease**"), covering a portion of the Demised Premises comprised of the entire rentable area located on the 12th floor of the Building as shown on Exhibit B attached hereto and made a part hereof (hereinafter called the "**12th Floor Sublease Premises**"); and

WHEREAS, Tenant and Subtenant have requested Landlord's consent to the Sublease and that Landlord enter into a non-disturbance and attornment agreement for the benefit of Subtenant and Landlord has agreed to the foregoing upon the terms and conditions contained in this Agreement.

NOW, THEREFORE, in consideration of the foregoing, the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.  (i) Landlord hereby consents to the execution, delivery and performance of the Sublease by Tenant and Subtenant pursuant to the terms and conditions contained herein and Landlord acknowledges that its consent given in this Agreement shall be deemed to fulfill the requirement of Tenant's obtaining Landlord's consent to a sublease as provided for in Article 12 of the Overlease.

(ii) Tenant and Subtenant hereby represent that a true and complete copy of the Sublease is attached hereto and made a part hereof as **Exhibit C**. Tenant and Subtenant agree that the Sublease shall not be modified without Landlord's prior written consent, which consent shall not be unreasonably withheld, delayed or conditioned, provided that no such amendment shall reduce the fixed rent or additional rent payable under the Sublease, modify the 12th Floor Sublease Premises, change the term of the Sublease, or increase any obligations (or decrease any rights) of Landlord in the event of an attornment by Subtenant to Landlord pursuant to the provisions of this Agreement.

2.  Tenant hereby represents and warrants that Tenant (i) has full power and authority to sublease the 12th Floor Sublease Premises to Subtenant, (ii) has not transferred or

modified in any respect. Without limiting the scope of the preceding sentence, any construction or alterations performed in or to the 12th Floor Sublease Premises shall be performed with Landlord's prior written approval (to the extent such approval is required under the terms of the Overlease), which approval as to non-structural alterations which do not affect Building systems shall not be unreasonably withheld or delayed, and in any event in accordance with the terms and conditions of the Overlease. Notwithstanding the foregoing, Subtenant shall have the right to perform painting, wall covering and carpeting in the 12th Floor Sublease Premises without first obtaining Landlord's prior approval but Subtenant's performance of such tasks shall be subject to all of the other terms and conditions contained in the Overlease governing Alterations (as such term is defined in Article 3 of the Overlease). It is hereby acknowledged and agreed that any provisions in the Sublease which limit the manner in which Tenant may amend the Overlease are binding only upon Tenant and Subtenant as between such parties. Landlord shall not be bound in any manner by such provisions and may rely upon Tenant's execution of any agreements amending or terminating the Overlease subsequent to the date hereof notwithstanding any contrary provisions in the Sublease. Notwithstanding the foregoing, and consistent with Section 4.4 of the Sublease, Landlord and Tenant covenant that, so long as Subtenant is not in default under the Sublease (beyond any required notice and applicable cure period specified in the Sublease), they will not amend the Overlease so as, materially and adversely, to affect Subtenant's rights to use, operate in, access and/or alter the 12th Floor Sublease Premises, or to increase Subtenant's obligations with respect thereto.

7. (a) To the extent that Landlord is obligated under the EOP Lehman Lease to furnish any Building services and materials to or with respect to the space in the Building which is leased and demised to Subtenant under the EOP Lehman Lease, Landlord agrees to furnish such services and materials to Subtenant with respect to the 12th Floor Sublease Premises in accordance with the EOP Lehman Lease as if the 12th Floor Sublease Premises were included in the premises leased and demised to Subtenant under the EOP Lehman Lease. Subtenant hereby agrees to pay to Landlord, as additional rent under the EOP Lehman Lease, Landlord's charges for all such services and materials furnished by Landlord to or with respect to the 12th Floor Sublease Premises at the rates and otherwise in accordance with the terms and conditions applicable to such services and materials set forth in the EOP Lehman Lease. Landlord shall invoice Subtenant on a monthly basis for such services and materials; provided, however, that neither the failure by Landlord to invoice Subtenant for any such amounts nor any error contained in any such invoice shall in any way relieve Subtenant of its obligation to pay for such services and materials furnished to the 12th Floor Sublease Premises. If Subtenant shall fail to pay for such services and materials on a timely basis as provided in the EOP Lehman Lease, Landlord shall have and shall be entitled to exercise all of the rights and remedies provided for Landlord in the EOP Lehman Lease in the case of a default by Subtenant in the payment of additional rent due and payable by Subtenant as tenant under the EOP Lehman Lease. Landlord hereby releases Sublandlord from any and all liability under the Overlease associated with the delivery of services (including, without limitation, electricity) to the 12th Floor Sublease Premises by Landlord at the request of Subtenant, and Landlord agrees to look solely to Subtenant for the payment of all charges for such services (including, without limitation, electricity) during the term of the Sublease; provided, however, that if Subtenant's net worth as calculated in accordance with generally accepted accounting principles consistently applied is less than One Billion Dollars ($1,000,000,000) at any time, then Subtenant shall deposit with Landlord additional security reasonably satisfactory to Landlord in respect of charges that may come due relating to the delivery of services (including, without limitation, electricity) to the 12th Floor Sublease Premises.

C:\Documents and Settings\makrina\Temporary Internet Files\OLK87\1301 Lehman EOP Consent LL 081006 doc
8/15/2006
Matter ID Number 26118

3

Exhibit C

Sublease

# AGREEMENT OF SUBLEASE

between

## WASSERSTEIN PERELLA GROUP HOLDINGS, LLC

Sublandlord

and

## LEHMAN BROTHERS HOLDINGS INC.

Subtenant

Entire Tenant Rentable Area
of the 12th Floor
1301 Avenue of the Americas
New York, New York 10019

as of July 26, 2006

1301 Lehman.072706

in all of Subtenant's policies the same endorsements and/or policy provisions for giving notice to Sublandlord and other Insured Parties of the same matters and circumstances of which notice is required to be given to Landlord pursuant to the provisions of the EOP Lehman Lease (including, without limitation Section 14.01 of the EOP-Lehman Lease), (vi) to cause all of Subtenant's policies of property, fire, and extended coverage insurance to include endorsements for waiver of subrogation in order to make effective the waiver of subrogation provisions of set forth in Section 10.5 of the Lease as incorporated into this Sublease, and (vii) to deliver to Sublandlord certificates evidencing Subtenant's maintenance of all required insurance coverages (and the payment of all premiums therefor) not later than the Commencement Date, and thereafter as set forth in Section 9.4 of this Sublease, subject to such adjustment of the timing of such delivery as may be provided in Section 14.01 of the EOP-Lehman Lease as incorporated into this Sublease, but only for so long as such incorporation into this Sublease is in full force and effect in accordance with the foregoing provisions of this Section 9.9.

9.10   If at any time Subtenant shall fail to maintain with respect to the Demised Premises the insurance coverages required to be obtained and maintained by Subtenant as tenant under and with respect to Section 14.01 of the EOP-Lehman Lease (as set forth in clause (D) of Section 9.8 of this Sublease) which fully satisfies the provisions and requirements of the EOP Lehman Lease with respect to such insurance, *then* (i) Subtenant shall prior to the lapse of any applicable time period specified in this Sublease for the curing of such default (but in any event within twenty (20) days after the occurrence of such default) and without notice obtain and maintain for the balance of the Term the insurance coverages required by Section 9.2 of this Sublease and comply with all provisions of this Article 9 of this Sublease (including, without limitation, the delivery to Sublandlord of the Policies or certificates of insurance as required by Section 9.4 of this Sublease) without regard to Section 14.01 of the EOP-Lehman Lease and (ii) Subtenant shall indemnify hold harmless and defend Sublandlord from and against any and all claims, liabilities, damages, costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements and the cost of restoring Sublandlord's insurance coverage for the Demised Premises as required by the Lease) resulting from or related to such failure by Subtenant to maintain with respect to the Demised Premises such insurance coverages required under and with respect to Section 14.01 of the EOP-Lehman Lease.

10.   Services

10.1   Notwithstanding anything contained in this Sublease or in the Incorporated Provisions to the contrary, Sublandlord shall have no obligation to (a) perform or furnish any services (including, without limitation, cleaning, electricity, water, elevator service, heating, ventilation, air-conditioning and condenser water), (b) make any repairs or restorations or alterations, (c) comply with any laws or Requirements of any Governmental Authority applicable to the Demised Premises, (d) except to the extent required by Section 9.6 of this Sublease, provide any insurance with respect to the Building, the Demised Premises or the improvements therein or (e) take any other action that Landlord is obligated to provide, make, comply with or take or cause to be done, under the Lease (collectively "Services"). The only Services or rights thereto to which Subtenant is entitled under this Sublease are those to which Sublandlord is entitled as "Tenant" under the Lease and Subtenant shall look solely to the Landlord for all such Services and rights (including, without limitation, cleaning, electricity,

1301.Lehman.072706                                - 29 -

water, elevator service, heating, ventilation, air-conditioning, condenser water and repairs) and shall pay Landlord directly therefor as additional rent under the EOP-Lehman Lease. Nothing contained in this Article 10 shall be deemed a waiver of Sublandlord's rights to receive Services from Landlord. In no event shall Sublandlord be liable to Subtenant for any failure of Subtenant to receive any of the Services or any right thereto, nor shall any such failure entitle Subtenant to terminate this Sublease or entitle Subtenant to any abatement, reduction, rebate or refund of Base Rent, Additional Rent or any other amount payable hereunder.

10.2    Subtenant acknowledges that electricity is supplied to and for the benefit of the Demised Premises pursuant to Article 13 of the Lease, that such electricity is measured by multiple submeters and that the charge payable for such electricity is prescribed in Article 13 of the Lease. In connection with the continued supply of electricity to the Demised Premises, Subtenant hereby covenants and agrees to pay directly and timely to Landlord, as additional rent under the EOP-Lehman Lease, in monthly installments one hundred per cent (100%) of the total amount (including without limitation all fuel surcharges, taxes, and Landlord's administrative fees or other additions) payable under the Lease, for the aggregate demand and consumption of electricity to or for the benefit of the Demised Premises (including, without limitation, electricity used by all ventilation and air-conditioning equipment serving the Demised Premises) as measured by all such submeters, collectively, in accordance with the provisions of Section 13.2 of the Lease. The amount payable by Subtenant for electricity pursuant to this Section 10.2 is herein referred to as the "Electricity Charge". If at any time and for any reason electricity is no longer supplied to the Demised Premises (or may no longer in accordance with then applicable Requirements or regulations of the applicable utility company be supplied to the Demised Premises) in the manner described in the foregoing provisions of this Section 10.2 or if Landlord is no longer permitted to charge for such electricity in the manner described in Article 13 of the Lease and the foregoing provisions of this Section 10.2, then within thirty (30) days after becoming aware of such circumstances, Subtenant shall make all necessary arrangements to obtain electricity directly from a utility company authorized to supply electricity to the Demised Premises in accordance with Section 13.3 of the Lease, and the Electricity Charge payable to Landlord shall be abated and Subtenant shall pay such utility company directly for the supply of electricity to and for the benefit of the Demised Premises.

10.3    Subtenant shall indemnify, hold harmless and defend Sublandlord from and against any and all damages, liabilities, costs and expenses (including, without limitation, the reasonable fees and disbursements of attorneys designated by Sublandlord for this purpose) resulting from or otherwise arising in connection with (i) the supply of Services and materials to the Demised Premises during the Term and/or the failure of Subtenant to make full and timely payment therefor as provided in the Lease and in this Sublease, and/or (ii) the supply of electricity to the Demised Premises during the Term and/or the failure of Subtenant to make full and timely payment of the Electricity Charge and any other charges therefor as provided in the Lease and in this Sublease. In consideration of Subtenant's covenant to indemnify, hold harmless and defend Sublandlord as provided in the immediately preceding sentence, Sublandlord, at Subtenant's request and at Subtenant's sole cost and expense, will cooperate with Subtenant and will take commercially reasonable action to cause Landlord to supply Services, materials and electricity to the Demised Premises as and to the extent provided in the Lease and in this Sublease.

1301.Lehman 072706                              - 30 -