AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York 10022-2524
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Michael S. Stamer (MS-4900)
Philip C. Dublin (PD-4919)
Sarah Link Schultz (admitted *pro hac vice*)

*Counsel for the Informal Noteholder Group*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
In re: : Chapter 11 Case No.
: 
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.* : 08-13555 (JMP)
: 
Debtors. : (Jointly Administered)
---------------------------------------------------------------x

**OBJECTION OF THE INFORMAL NOTEHOLDER GROUP TO DEBTORS' MOTION
FOR ENTRY OF ORDER PURSUANT TO SECTIONS 105, 363, AND 365 OF THE
BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE
2002, 6004, 6006, AND 9019 (I) APPROVING EQUITY INTERESTS PURCHASE
AGREEMENT; (II) AUTHORIZING DEBTORS TO COMPROMISE, SETTLE, AND
RELEASE RELATED CLAIMS; AND (III) GRANTING CERTAIN RELATED RELIEF**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

The Informal Noteholder Group (the "Informal Noteholder Group"), consisting of certain unaffiliated holders of senior and subordinated notes issued by Lehman Brothers Holdings Inc. ("LBHI" and, together with its debtor affiliates, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the Debtors' Motion for Entry of Order Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 6004, 6006, and 9019 (i) Approving Equity Interests Purchase Agreement; (ii) Authorizing Debtors to

Compromise, Settle, and Release Related Claims; and (iii) Granting Certain Related Relief (the "Motion"). In support of this Objection, the Informal Noteholder Group respectfully represents as follows:[1]

## PRELIMINARY STATEMENT

1. By the Motion, the Debtors seek authority, on an expedited basis, to consummate the private sale of their direct and indirect interests in the R3 Capital Partners Master, L.P. investment fund (the "Master Fund"). Specifically, on only 8 days' notice, the Debtors propose to engage in a series of highly complex transactions to transfer their interests in the Master Fund (valued at approximately $1.1 billion in May 2008) to what appear to be related parties for consideration alleged to be worth $500 million. In support of the extraordinary relief requested in the Motion, the Debtors assert that (a) "exigent circumstances surrounding these chapter 11 cases support the Debtors' decision to pursue a private sale," (b) a public sale "would only entail unwarranted delay and additional expense" and (c) the Debtors have determined that the sale price is reasonable. Motion at ¶ 22. The Debtors, however, have failed to provide the Court and other parties in interest with necessary information regarding the terms of the sale to determine whether the relief requested is in the best interests of the Debtors' estates. Similarly, the Debtors' conclusory statements regarding the need for an expedited private sale to prevent dissipation in the value of the assets to be sold, without more, does not justify the speed with which the Debtors propose to consummate the sale of the Master Fund. Accordingly, the Motion must be denied.

---

[1] All terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

## BACKGROUND

2. The Debtors are the direct or indirect owners of the following interests (the "Equity Interests") in the Master Fund:[2]

- membership interests (the "Manager Interests") in R3 Capital Management, LLC (the "Manager"),

- Class B Shares (the "GP Shares") of R3 Capital GenPar MGP, Ltd. (the "GP"),

- Class B Shares (the "SLP Shares") of R3 Capital SLP MGP, Ltd. (the "SLP"), and

- limited partnership interests (the "B Feeder Fund Interests") in R3 Capital Partners (B), L.P. (the "B Feeder Fund" and, together with the Manager, the GP, and the SLP, the "Buyers").[3]

3. The foregoing Equity Interests were acquired by LB R3 Holdings L.P. (the "Investor")[4] on May 28, 2008 (the "Investment Transaction") pursuant to a master transaction agreement (the "Master Transaction Agreement"). In connection with the Investment Transaction, the Investor made a seed capital investment of approximately $1.1 billion (the "Seed Capital Investment"), representing an indirect 45% nonvoting equity interest in the Master Fund, and also committed to make an unspecified capital contribution to the B Feeder Fund.

4. In a separate transaction, LBHI sold assets (primarily corporate bonds and loans) and transferred derivative risk of approximately $4.5 billion at allegedly fair value to the Master Fund during the second quarter of 2008. *See* Lehman Brothers Holdings Inc., Quarterly Report (Form 10-Q), at 67 (May 31, 2008).

5. The Buyers have asserted that, in connection with the Investor's original acquisition of the Equity Interests, the Investor agreed to ensure that: (i) a Lehman Brothers'

---

[2] The Master Fund was established by at least one former Lehman executive.

[3] The B Feeder Fund is one of two feeder funds that feed into the Master Fund.

[4] The Investor is an indirect wholly-owned subsidiary of LBHI.

3

affiliate would serve as prime broker for funds related to the Master Fund (as set forth in a side letter) (the "R3 Funds"); (ii) a Lehman Brothers' affiliate would arrange financing for the R3 Funds; and (iii) a Lehman Brothers' affiliate would provide marketing services to the R3 Funds. *Id*. at ¶ 10. The Buyers also assert, and the Debtors dispute, that certain restrictions on the assignment of the Equity Interests may be enforceable in bankruptcy. *Id*. at ¶ 17.

6. The Purchase Agreement contemplates two transactions which will have the effect of (a) reducing LBHI's ultimate investment in the Master Fund, (b) rolling the remaining portion of LBHI's investment from the B Feeder Fund to a new feeder fund, R3 Capital Partners (A), L.P. (the "New Feeder Fund"), that also feeds into the Master Fund (the "New LP Investment") and (c) eliminating certain income streams LBHI received through its participation in the GP, the SLP and the Manager.

7. As part of the proposed sale, LBHI will: (a) receive (i) a cash payment of $125 million and (ii) a $125 million promissory note (the "Promissory Note") from the Master Fund; (b) roll $250 million of interests in the B Feeder Fund (based on net asset values as of September 30, 2008) into the New Feeder Fund; and (c) grant and receive mutual releases of certain claims including, *inter alia*, avoidance actions under chapter 5 of the Bankruptcy Code.

## **OBJECTION**

8. The law is well-settled that a debtor has a fiduciary obligation to maximize the value of its estate for the benefit of all stakeholders. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985) (holding that the trustee has a fiduciary duty to "maximize the value of the estate") (internal quotations and citations omitted). Accordingly, when seeking approval of a sale outside the ordinary course of business, the debtor is required to demonstrate that it obtained the highest and best price for the assets to be sold, regardless of whether the sale is to be conducted privately or through an open auction process. *See, e.g.*, *In re Integrated Res.,*

4

*Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992) (holding that, for the bankruptcy court to approve a proposed sale of assets, a debtor must generally prove that the "proffered purchase price is the highest and best offer"). To meet this burden, the Debtors must provide sufficient information to allow the Court and creditors to perform an adequate analysis for the proposed asset transfer. *In re Silver Bros. Co.*, 179 B.R. 986, 1002 (Bankr. N.H. 1995) citing *In re Correa Rodriguez*, 123 B.R. 153, 155 (Bankr. D. Puerto Rico, 1991) (noting that in connection with a private sale, "where a record reveals gaping holes in background of the information, the parties have not met their burden of providing the Court with sufficient facts sorted out in a reasonable fashion to permit an adequate analysis of whether the agreement is in the best interest of all creditors"). Despite the foregoing precedent, the Debtors have failed to provide (a) material terms and documents necessary for this Court and parties in interest to evaluate properly the proposed sale and related transactions or (b) sufficient justification for approval of the expedited private sale of the Equity Interests.

9. Specifically, the following information, which is necessary to evaluate the proposed sale, has not been provided:

- Any appraisals, valuation reports or other information evidencing that the Lehman entities are receiving fair value for the Equity Interests;

- The New Side Letter (as defined in the Motion) and the organizational documents of the New Feeder Fund that will govern the terms of LBHI's investment in the New Feeder Fund;

- The Promissory Note;

- Documents governing the B Feeder Fund including, but not limited to, the applicable organizational documents, global side letter and the fund side letter;

- The Redemption and Contribution Agreement;

5

- The Master Transaction Agreement and sufficient information to assess the composition and terms of LBHI's initial investment in the Master Fund;

- Sufficient information concerning any financing or other transactions between LBHI and its affiliates, on the one hand, and the Master Fund, the Buyers and their affiliates, on the other hand, including, but not limited to, on information and belief, that certain transfer of $4.5 billion of assets from a Lehman entity to one of the R3 funds;

- Sufficient information to assess the value of the claims being released;

- The Assignment Agreement (as defined in the Purchase Agreement); and

- The other agreements set forth in the definition of LB Released Claims in the Purchase Agreement.

10. In the absence of the foregoing information and documentation, it is impossible for the Court or creditors to determine whether the proposed transactions are in the best interests of the Debtors' estates and their creditors.

11. In addition to failing to provide information and documentation sufficient to evaluate the proposed transactions, the Debtors also have failed to establish that an expedited private sale is necessary. Although no provision in the Bankruptcy Code explicitly requires a public auction, *In re Woodscape Ltd. Partnership, 134 B.R. 165, 174 (Bankr. D. Md. 1991), c*.f. Fed. R. Bankr. P. 6004(f), public auctions are favored because the purchase price usually more closely reflects the true market value of the assets sold. *See In re Integrated Res., Inc.* 135 B.R. 746, 750 (Bankr. S.D.N.Y.), *aff'd*, 147 B.R. 650 (S.D.N.Y. 1992) (holding that for a sale to be approved, the debtor must demonstrate that the purchase price is the highest and best offer); *see also In re Nicole Energy Servs.*, 385 B.R. 201, 234-35 (Bankr. S.D. Ohio 2008) (acknowledging that in asset sales with only one bidder, prices offered were less likely to be reliable and should be approved only after "careful and heightened scrutiny"). Accordingly, courts will examine a private sale that does not provide for a competitive bidding process with heightened scrutiny to

6

ensure that the purchaser is not receiving a "sweetheart deal." *In re Embrace Sys. Corp.*, 178 B.R. 112, 126 (Bankr. W.D. Mich. 1995). Further, where a debtor seeks approval of a sale on an expedited basis, the court will examine, *inter alia*, whether the asset is deteriorating in value. *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) (noting that when examining a request to sell property outside the ordinary course of business, "a bankruptcy judge must not blindly follow the hue and cry of the most vocal special interest groups; rather, he should consider all salient factors pertaining to the proceeding . . . .").

12. In support of the expedited request to sell the Equity Interests privately, the Debtors contend that the uncertainty in the marketplace regarding the impact of the Debtors' chapter 11 cases on LBHI's operations could erode the value of the Equity Interests. Motion at ¶ 13. Accordingly, LBHI and the Investor Parties allege that they entered into a Purchase Agreement with the Buyers to maximize the value of the Seed Capital Investment. *Id*. at ¶ 15. The Debtors further assert that the market for the Equity Interests is limited and that any delay caused by a competitive bidding process and litigation regarding the alleged anti-assignment provisions with respect to the Equity Interests could further erode the value of the proposed transactions. Motion at ¶¶ 13, 17. The Debtors, however, have failed to provide the Court with any evidence to establish that absent an immediate sale, the value of the Equity Interests will decrease substantially. Similarly, the Debtors fail to provide the documents necessary for the Court and creditors to assess the validity of the Buyers' assertions regarding the anti-assignment provisions. Absent this information, the Court and parties in interest simply lack the information necessary to approve a private sale of the Equity Interests on an expedited basis.

13. The Motion also lacks sufficient information with respect to the valuation of the Equity Interests, the New LP Investment and the Promissory Note, and the breadth of the

7

marketing efforts undertaken by the Debtors to obtain the highest and best offer for the Equity Interests.  As a result, the Debtors have failed to provide the Court with sufficient information to evaluate the proposed sale.  Thus, the Debtors have failed to establish that a private sale, conducted on an expedited basis to a potentially related entity, is in the best interests of the Debtors and their estates.  Accordingly, the Motion must be denied.

## **CONCLUSION**

For all of the foregoing reasons, the Informal Noteholder Group respectfully requests that the Court: (i) deny the Motion and (ii) grant the Informal Noteholder Group such other relief as is just, proper and equitable.

Dated:  New York, New York
October 13, 2008

AKIN GUMP STRAUSS HAUER & FELD LLP

By:     /s/ *Michael S. Stamer*
Michael S. Stamer (MS-4900)
Philip C. Dublin (PD-4919)
Sarah Link Schultz (admitted *pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue
New York, New York 10022-2524
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
mstamer@akingump.com
pdublin@akingump.com
sschultz@akingump.com

*Counsel for the Informal Noteholder Group*

8