Hearing Date:  October 16, 2008, at 10:00 a.m. (Prevailing Eastern Time)

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
Telephone (212) 403-1000
Facsimile (212) 403-2000
Harold S. Novikoff (HN 3898)
Amy R. Wolf (AW 6646)

Attorneys for JPMorgan Chase Bank, N.A.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 Case No. |
| **Lehman Brothers Holdings Inc., et al.,** | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF JPMORGAN CHASE BANK, N.A. TO MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC. FOR LEAVE TO CONDUCT DISCOVERY OF JPMORGAN CHASE BANK, N.A. PURSUANT TO 11 U.S.C. §§ 105(a) AND 1103(c) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

JPMorgan Chase Bank, N.A. ("JPMC"), by and through its undersigned attorneys, objects to the Motion of Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc. for Leave to Conduct Discovery of JPMorgan Chase Bank, N.A. Pursuant to 11 U.S.C. §§ 105(a) and 1103(c) and Federal Rule of Bankruptcy Procedure 2004 (the "Rule 2004 Motion"), and respectfully represents as follows:

Preliminary Statement

1.      JPMC acknowledges the boilerplate law cited by the Committee to the effect that Bankruptcy Rule 2004 is a broad discovery device designed to facilitate investigation of assets of the estate.  JPMC also acknowledges that it played a significant role in the activities of Lehman Brothers Holdings, Inc. ("LBHI") and its subsidiaries (collectively, "Lehman") prior to the commencement of these cases and that, as a result of its role as Lehman's clearing bank, large positions in Lehman's assets ran through the bank.

2.      However, in filing this Rule 2004 Motion in the second week of this case, the Committee apparently failed to recognize certain crucial matters.  The Committee failed to recognize that as a result of its role as Lehman's clearing bank, JPMC is engaged in an extraordinary level of Lehman-related activity.  First, JPMC is engaged in the careful and labor-intensive liquidation of billions of dollars of securities that serve as collateral for its clearing advances and derivatives contract exposures with Lehman.  Second, in accordance with the Asset Purchase Agreement approved by this Court, JPMC has been engaged in an unprecedented exercise in moving the assets of the broker/dealer, Lehman Brothers, Inc. ("LBI"), to Barclays Capital, Inc. ("BarCap") and other transferees designated by the trustee (the "SIPA Trustee") appointed in LBI's liquidation proceedings under the Securities Investor Protection Act.  In addition to the transfer of thousands of customer accounts and billions of dollars of securities to BarCap, JPMC is required, pursuant to the directions of the SIPA Trustee, to move all of the remaining customer accounts not purchased by BarCap that are fully paid for customer property not subject to a lien in favor of JPMC or a third party.  These activities have required the active

involvement of hundreds of JPMC personnel, from the most senior levels of the bank on down, and constant communication with the SIPA Trustee, his attorneys and his staff, responding on a daily basis to numerous requests for action, information, and the like.

3. In connection with these activities, JPMC has afforded online access to Lehman accounts to the SIPA Trustee and his staff, the SEC, The Federal Reserve Bank, and the Securities Investor Protection Commission ("SIPC"), subject to appropriate confidentiality arrangements. JPMC also continues to work with the SIPA Trustee to further increase and improve the flow of information. However, the identity and amount of securities being held for liquidation by JPMC is extremely confidential market-sensitive information, and it is critically important that such access not be expanded beyond the entities and persons to whom it is currently being provided.

4. With all of the activity in which JPMC is currently engaged to facilitate the collateral liquidation, the asset sale to Barclays, and the transfer of customer accounts, coupled with the extraordinary level of access that has been afforded to the SEC, The Federal Reserve Bank, SIPC and the SIPA Trustee, the Committee's position that it is entitled to engage in a "fishing expedition" at JPMC is unreasonable. JPMC understands that there will be a need to account for the many transactions in which JPMC is currently engaged. There will be an appropriate time, but it is certainly not now, the very time in which JPMC is expending so much

effort to fulfill the requests of the SIPA Trustee and governmental agencies. The Rule 2004 Motion should be denied, with leave to refile in the future, if appropriate.[1]

JPMC's Purported Role in the Events Leading to
LBHI's Bankruptcy Filing

5.  While there is no issue currently before the Court as to the propriety of JPMC's actions in relation to Lehman's bankruptcy filing, the Committee's preemptive attacks on JPMC in the Rule 2004 Motion should not go unanswered. In essence, the Committee seeks to cast the blame on JPMC as the purported cause of Lehman's liquidity crisis. The Committee's assertions disregard what is already on the record in this case and fly in the face of reality.

6.  As this Court may recall, the very first non-administrative motion that the Court heard in the LBHI case was the Motion for Order Confirming Status of Chase's Clearing Advances, dated September 16, 2008, in which LBHI requested entry of a "comfort order" for JPMC's benefit. The reason for this request was that JPMC had, on days one and two of this chapter 11 case, made discretionary advances of **$87 billion** and **$51 billion**, respectively, under the Clearing Agreements with LBI.[2] JPMC made tens of billions of dollars of discretionary advances thereafter until the commencement of LBI's SIPA liquidation proceeding. JPMC had extended this extraordinary level of credit to LBI even after the bankruptcy filing of LBHI, which had guaranteed the advances, though JPMC had absolutely no obligation to do so. JPMC

---

[1] JPMC has issued a hold notice to all relevant personnel to retain documents.

[2] The Committee's motion misstates that JPMC made clearing advances to LBHI during the relevant period; there were no such advances. LBHI's principal liability to JPMC arises under its guaranties of the obligations of its subsidiaries to JPMC.

-4-

made these discretionary advances -- in response to the request of The Federal Reserve Bank -- because it understood the significance to Lehman and the financial markets generally that public mutual funds and other tri-party repurchase investors not bear the brunt of a LBI default. These advances afforded LBI an opportunity for an orderly wind-down, and later afforded an opportunity for a transfer of much of LBI's business as a going concern to BarCap. The indisputable reality that JPMC has gone to extraordinary lengths to provide tens of billions of dollars of critical financing for the benefit of Lehman -- while, as well chronicled by the Committee's own motion, all other parties were fleeing from exposure to Lehman -- clashes head-on with the Committee's unfounded assertions that JPMC was somehow at fault for depriving Lehman of liquidity.

7. The Committee's suggestions that there was anything inappropriate about JPMC's actions during the period immediately prior to LBHI's bankruptcy filing are similarly unfounded. As already noted, advances under the Clearing Agreements were entirely at JPMC's option. Given Lehman's increasing financial distress, the only prudent course for JPMC when determining whether to make optional advances was to seek to be adequately collateralized for such advances. Accordingly, JPMC requested and was given collateral by LBHI consisting of cash and securities to secure LBHI's guarantees of advances made to LBI and JPMC's exposure to other subsidiaries. It was these LBHI collateral accounts that were held by JPMC during the prepetition period; no LBHI operating accounts were frozen. The Committee's use of the term "frozen" was intended (successfully) to grab media attention, but does nothing to accurately inform this Court.

8.   The extent of the advances made by JPMC under its many agreements with LBI and various other Lehman subsidiaries in the weeks prior to the filing was enormous. At the same time, the value of the securities pledged as collateral by LBI and other subsidiaries to JPMC was and continues to be subject to market fluctuations, mostly in a negative direction. For that reason, JPMC could not prudently continue to make billions of dollars in advances without some additional level of comfort. That comfort was provided through guaranties and security agreements entered into by LBHI on August 26 and September 9, 2008. The Committee places a value on the collateral securing the guaranties at $17 billion; JPMC has no knowledge of the basis for that figure, and believes that it substantially overstates the amount of collateral that it has been provided by LBHI. In any event, the notion that JPMC should have released any of its collateral at the same time that it was making tens of billions of advances to an entity about to enter bankruptcy is divorced from any semblance of financial reality.

9.   Whether the collateral will prove to be sufficient to cover JPMC's exposure to Lehman and the Lehman subsidiaries is unknown and perhaps unknowable at this time. JPMC is engaged in a steady, careful and time-consuming effort to liquidate the collateral in a commercially reasonable manner. Only once the extraordinary level of work in which JPMC is currently engaged is accomplished will it be possible to determine whether and to what extent JPMC will be required to call on its LBHI guaranties, as well as how much the collateral for those guaranties is worth.

10.   Significantly, among the many critical matters that the Committee failed to acknowledge in its Rule 2004 Motion is that the "safe harbor provisions" of the Bankruptcy

Code immunize virtually all transfers to JPMC in this case. The vast bulk of JPMC's exposure to Lehman relates to (a) its clearing advances under the Clearance Agreements to settle securities transactions for LBI, and (b) claims arising under derivatives contracts for amounts owing upon termination and for failure of Lehman entities to return collateral posted by JPMC. Under section 741(7) of the Bankruptcy Code, clearing advances, and related guaranties and security agreements, constitute securities contracts. Derivatives contracts, and related guaranties and security agreements, constitute swap agreements as defined in section 101(53B) of the Code. Transfers to a financial institution in respect of securities contracts and swap agreements are exempted from avoidance as preferences or constructively fraudulent transfers pursuant to sections 546(e) and 546(g). As a result, the likelihood of the Committee's recovering any amounts from JPMC on account of avoidance claims of the type that the Committee speculates may exist is slim indeed.

Scope of Any Rule 2004 Discovery

11. While JPMC believes that the Rule 2004 Motion was filed prematurely and should be denied at this time, a few comments on the attached Requests for Production are in order. In the first instance, it would be appropriate for the Committee to seek many of the documents it requests from the Debtor rather than from JPMC.[3] Moreover, there is no basis for

---

[3] Request for Production No. 1 certainly can be obtained from the Debtor, as can be much of what is sought in Request No. 2.

the Committee's overbroad requests for documents concerning Lehman entities other than LBHI, the only Lehman entity whose creditors are represented by the Committee.[4]

12. In addition, the proposed order submitted by the Committee is inappropriate in that it would require JPMC to respond in 20 days, a patently unreasonable period of time given the massive scope of this matter, the size of JPMC, and the absence of any reason for such expedition. Moreover, it is unclear whether the Committee is attempting to have the Court prejudge any objections to discovery by providing in the proposed Order that the Committee "is authorized to compel production in accordance with Rule 9016 of the Bankruptcy Rules." That provision should be stricken. JPMC reserves the right to object on any appropriate grounds to document or deposition subpoenas that may be served upon it at such time, if ever, that authority to conduct Rule 2004 discovery is granted.

Conclusion

13. There was no need for the Committee to seek Rule 2004 discovery of JPMC two weeks after the filing of the LBHI bankruptcy case. JPMC is actively working with

---

[4] For example, Request No. 4 seeks discovery of Lehman Brothers' accounts at JPMC. Request No. 10 seeks documents "concerning any requests by Lehman Brothers for credit." Request Nos. 7, 10 and 11 seek documents relating to "Lehman Brothers" generally. All such requests should be limited to LBHI.

Other requests make little sense in light of the facts. The Committee requests online access to the collateral "in the same manner provided to LBHI" in Request No. 3, but JPMC does not believe that LBHI ever had online access to the collateral securing the LBHI guarantee. As to Request No. 5, JPMC has not attempted to liquidate any assets of LBHI following the Petition Date. As to Request No. 8, there were no clearing advances to LBHI between September 12 and September 16.

and under the supervision of the Debtor, the SIPA Trustee and the federal regulators to transfer and liquidate Lehman's assets.  JPMC respectfully requests that the Rule 2004 Motion be denied at this time, with leave to renew at a more appropriate time in the future.

WHEREFORE, JPMorgan Chase Bank, N.A. respectfully requests that the Motion of Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc. for Leave to Conduct Discovery of JPMorgan Chase Bank, N.A. Pursuant to 11 U.S.C. §§ 105(a) and 1103(c) and Federal Rule of Bankruptcy Procedure 2004 be denied.

Dated:    New York, New York
          October 13, 2008

                              WACHTELL, LIPTON, ROSEN & KATZ


                              By: _____
                                  Harold S. Novikoff  (HN 3898)
                                  Amy R. Wolf  (AW 6646)

                              51 West 52nd Street
                              New York, New York  10019
                              (212) 403-1000

                              Attorneys for JPMorgan Chase Bank, N.A.