BLANK ROME LLP  
Attorneys for Thomson Reuters PLC  
and Thomson Reuters Corporation  
The Chrysler Building  
405 Lexington Avenue  
New York, New York 10174  
(212) 885-5000  
Edward J. LoBello (EL 3337)  
Michael Z. Brownstein (MB 9379)  
Melissa S. Vongtama (MV 9402)  

Objection Deadline: October 13, 2008 at 4:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **LEHMAN BROTHERS HOLDING INC.,** *et al.*, | Case No. 08-13555 (JMP) |
| | Jointly Administered |
| Debtors. | Re: Dkt. No. 60, 191 |

**SUPPLEMENTAL CURE AMOUNT OBJECTION AND RESERVATION OF RIGHTS OF THOMSON REUTERS PLC AND THOMSON REUTERS CORPORATION WITH RESPECT TO DEBTORS' MOTION TO (A) SCHEDULE A SALE HEARING; (B) ESTABLISH SALES PROCEDURES; (C) APPROVE A BREAK-UP FEE; AND (D) APPROVE THE SALE OF THE PURCHASED ASSETS AND THE ASSUMPTION AND <u>ASSIGNMENT OF CONTRACTS RELATING TO THE PURCHASED ASSETS</u>**

**TO:    THE HONORABLE JAMES M. PECK,**
         **UNITED STATES BANKRUPTCY JUDGE**

Thomson Reuters PLC and Thomson Reuters Corporation (collectively with their affiliates, including but not limited to TradeWeb Markets LLC and its affiliates and Omgeo LLC, "Thomson Reuters"), by its counsel, Blank Rome LLP, hereby submits this supplement (the "Supplemental Objection") to its Cure Amount Objection and Reservation of Rights (the "Cure Amount Objection") with respect to the motion (the "Sale Motion") of the above captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order approving:

1

(a) the sale (the "Proposed Sale") of certain Purchased Assets,[1] free and clear of liens, claims and encumbrances, to Barclays Capital Inc. ("Barclays"); and (b) the assumption and assignment of certain executory contracts and unexpired leases related to the Purchased Assets (collectively, the "Contracts"), pursuant to section 365 of the Bankruptcy Code, and respectfully represents:

## BACKGROUND

1. Thomson Reuters is the world's leading provider and source of intelligent information for businesses and professionals. Thomson Reuters provides essential products and services for the global market by creating transparency and by providing insight through independent news and content. The services and products provided by Thomson Reuters are instrumental for the functionality and ongoing business continuity of the business segments that Barclays has purchased from the Debtors.

2. Thomson Reuters and Debtor Lehman Brothers Holding Inc., and certain of its domestic and foreign subsidiaries ("LBHI"), are parties to certain intellectual property content, license, maintenance, support and other agreements, including: (1) that certain "Global Reuters Services Contract" dated January 1, 2002, between Reuters Limited and LBHI; (2) that certain "System Purchase and Support Agreement" dated September 29, 2000, between Reuters Limited and LBHI; (3) that certain "Global Master Agreement for Thomson Financial Services" dated November 23, 2004, between Thomson Financial Inc. and LBHI; (4) certain contracts between TradeWeb Markets LLC and its affiliates ("TradeWeb") and LBHI; (5) certain contracts between Reuters Transaction Services Limited and LBHI; and (6) potentially other contracts that have not yet been identified at the time of filing of this Supplemental Objection (collectively, all of the foregoing referred to in this paragraph, as amended from time to time, together with any other

---

[1] Capitalized terms not defined in this Supplemental Objection shall have the meaning ascribed to them in the Sale Motion.

amendments, addenda, supplements or related invoices, purchase orders, or other documents, the "Thomson Reuters Contracts").[2]

## PROCEDURAL HISTORY

3. The Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on September 15, 2008 and on various dates thereafter, and filed their Sale Motion on September 17, 2008.

4. On September 18, 2008, in connection with their Sale Motion, the Debtors posted the Lists of Closing Date Contracts on the Website. The Lists identified Thomson Reuters as a vendor whose contracts with the Debtors were to be assumed and assigned to Barclays as of the Closing Date. Although the Lists lacked sufficient detail to enable Thomson Reuters to definitively determine whether all of the Thomson Reuters Contracts were so designated, Thomson Reuters has a reasonable basis to believe that the global master agreements have been assumed and assigned.

5. On September 19, 2008, Thomson Reuters timely filed its Cure Amount Objection which, among other things, requested that the Debtors provide more detailed information regarding the contracts included in the Lists.[3] Thomson Reuters further asserted that, with respect to all Thomson Reuters Contracts, the aggregate cure amount was in excess of $14 million as performed on a global basis, and approximately $10.4 million as performed on a domestic basis.

---

[2] Copies of the Thomson Reuters Contracts are not attached hereto because the agreements are (i) voluminous and (2) proprietary such that the terms and information contained therein are confidential. If required, copies can be submitted under seal or otherwise made available to this Court for in camera review.

[3] Also on September 19, 2008, TradeWeb submitted its own objection to the Sale Motion (Docket No. 190).

3

6. On October 1, 2008, the Debtors posted updated Lists of Closing Date Contracts (the "Updated Lists") on the Website. Again, the Updated Lists neither identify with specificity nor clarify which of the Thomson Reuters Contracts the Debtors are seeking to assume and assign. However, it appears that the Debtors have not removed from the Updated Lists any Thomson Reuters Contracts that were identified on the original Lists. Therefore, Thomson Reuters has again assumed for the purpose of this Supplemental Objection that the Debtors are seeking to assume and assign all Thomson Reuters Contracts. However, it appears that the Debtors seek to reduce the cure amounts with respect to some of the Thomson Reuters Contracts, and are now proposing an aggregate cure amount of approximately $8.1 million (the "Debtors' Proposed Cure Amount").

7. On October, 1, 2008, the Debtors also filed a *Notice of Revisions to Schedules of Certain Contracts and Leases Assumed and Assigned to Purchaser* which, for certain parties, including Thomson Reuters, extended the deadline for objecting to the Debtors' assumption and assignment of Closing Date Contracts from October 3 to October 13, 2008.[4]

## CURE AMOUNT OBJECTION

8. Thomson Reuters objects to the Debtors' Proposed Cure Amount. Since the filing of the Cure Amount Objection, Thomson Reuters has had an opportunity to conduct a more thorough review of its books and records, and has determined that the actual aggregate cure amount is approximately $16.2 million with respect to all Thomson Reuters Contracts as performed on a global basis. This revised amount reflects various adjustments made by Thomson Reuters to, among other things, account for the Debtors' numerous checks that were

---

[4] Thomson Reuters timely asserted and preserved its objection to the Sale Motion by filing the Cure Amount Objection. This Supplemental Objection is submitted only to supplement such objection and to update this Court concerning what has since transpired regarding the Thomson Reuters Contracts.

4

returned unpaid, or which have since cleared and, further, for amounts owed under soft dollar arrangements.[5]  Thomson Reuters reserves its right to revise its aggregate cure amount as it continues to review its books and records, and in the event that additional checks are returned as unpaid.

9. Thomson Reuters and the Debtors have engaged in a dialogue in an attempt to resolve their disagreements as to the cure amount.  In connection therewith, on October 3, 2008, in good faith and in further support of its position, Thomson Reuters provided the Debtors with a detailed spreadsheet analysis which detailed key information with respect to hundreds of invoices.  The parties' dialogue is continuing, but the parties have yet to achieve a consensus.

10. Thomson Reuters remains hopeful that the parties will reach a consensus. However, Thomson Reuters reiterates its objection with respect to the lack of clarity and precision with which the Debtors have identified contracts assumed and assigned to Barclays on the Closing Date.  Thomson Reuters has a reasonable basis to believe that its global master agreements have been assumed and assigned.  Moreover, Thomson Reuters objects to any attempt by the Debtors or Barclays to effectively assume and assign only portions of the Thomson Reuters Contracts, or to unlawfully subdivide any Thomson Reuters Contract for the benefit of multiple purchasers of the Debtors' businesses or assets.

11. In the event the parties' efforts to achieve a consensus are unsuccessful, Thomson Reuters requests that this Court schedule a hearing to determine the applicable cure amount.

---

[5] Pursuant to the Thomson Reuters Contracts, Thomson Reuters provides products and services (i) directly to the Debtors and (ii) to the Debtors' customers at the Debtors' request and expense (soft dollar arrangements).

130668.01600/6675576v.4

**RESERVATION OF RIGHTS**

12. <u>First</u>, under the Bankruptcy Code, the Debtors are not authorized to assume and assign the Thomson Reuters Contracts without Thomson Reuters' consent. See 11 U.S.C. § 365(c)(1); see also 3 Collier on Bankruptcy ¶ 365.06[1] (15th ed. rev.) (noting that "if a contract is of a type that could not be assigned under applicable law, it may not be assumed or assigned by a trustee or debtor in possession"). It is well-established that nonexclusive software license agreements are not assignable under federal copyright law absent the licensor's consent. <u>In re Patient Education Media, Inc.</u>, 210 B.R. 237, 240 (Bankr. S.D.N.Y. 1997) ("[T]he nonexclusive license is personal to the transferee . . . and the licensee cannot assign it to a third party without the consent of the copyright owner."). Similarly, Thomson Reuters reserves its rights to assert that the Debtors do not have the right to sublicense Thomson Reuters' intellectual property, nor should they be permitted to accomplish indirectly what they cannot do directly. Moreover, Thomson Reuters reserves its rights to assert that certain of the TradeWeb contracts are terminable and not assignable pursuant to the terms and provisions thereof, applicable law, and section 365(c)(1).

13. <u>Second</u>, in light of the sparse amount of information supplied by the Debtors through the Updated Lists, it is unclear whether the Debtors have assumed and assigned all of the integrated agreements in their entirety. Again, Thomson Reuters has a reasonable basis to believe that all of its global master agreements have been assumed and assigned. Some of the Thomson Reuters Contracts are comprised of master agreements coupled with multiple order forms which, among other things, enable the Debtors' affiliates to obtain critical services. The master agreements and their related order forms comprise integrated agreements, which must be assumed and assigned as a whole. See <u>In re Exide Techs.</u>, 340 B.R. 222, 228 (Bankr. D. Del. 2006) (holding that all of the contracts that comprise an integrated agreement must either be

6

assumed or rejected as a whole). The Debtors are required to assume such integrated contracts in their entirety, and are not allowed to "cherry pick" pieces of an agreement by assuming some provisions and rejecting others. See In re Fleming Companies, Inc., 499 F.3d 300, 308 (3d Cir. 2007) (holding that it is axiomatic that an executory contract must be assumed *cum onere*); Pieco, Inc. v. Atlantic Computer Sys., Inc. (In re Atlantic Computer Sys., Inc.), 173 B.R. 844, 849 (S.D.N.Y. 1994) ("under Section 365 of the Code, a debtor may not 'cherry pick' pieces of contracts it wishes to assume").

14.    Third, Thomson Reuters reserves all of its rights with respect to the acquisition of certain of Lehman's businesses and assets by third parties, including Nomura Holdings, Inc. ("Nomura"). Nomura has publicly announced its acquisition of certain of Lehman's businesses in the Asia Pacific region, Europe, the Middle East and India. Thomson Reuters reserves its rights with respect to the sale of Lehman's businesses to Nomura or any other third party, including its right to assert that the Debtors and their estates are liable for the entirety of the cure amounts due under the Thomson Reuters Contracts, and that each Thomson Reuters' master agreement, coupled with the order forms thereunder, comprise a single integrated agreement which must be assumed or rejected in its entirety. Moreover, neither the Debtors nor Barclays can unlawfully effectuate a de facto subdivision of any Thomson Reuters Contract for the benefit of multiple purchasers of the Debtors' business. Any arrangement by Barclays and/or Lehman to allow a third party to use infrastructure or software which is provided by Thomson Reuters to Lehman, or any redistribution of content supplied by Thomson Reuters to Lehman under its agreements, requires the consent of Thomson Reuters and its third party suppliers. Any sale or arrangement whereby there is an unauthorized use by a third party of Thomson Reuters' infrastructure or software, or unauthorized redistribution of Thomson Reuters' content or third

130668.01600/6675576v.4

party supplier content, may result in potential claims from Thomson Reuters' third party suppliers. In this regard, Thomson Reuters reserves its rights against the Debtors, their estates, Barclays, and any other purchaser for indemnification of Thomson Reuters or its third party suppliers.

15. <u>Fourth</u>, in accordance with section 2.5 of the Asset Purchase Agreement dated September 22, 2008 between the Debtors and Barclays, and statements made in open Court at the Sale Hearing on behalf of the Debtors and Barclays, Thomson Reuters expects that Barclays will pay all ordinary course amounts due under the Thomson Reuters Contracts during the sixty day period after Closing, irrespective of whether any Thomson Reuters Contract has been assumed and assigned. Thomson Reuters reserves its rights against Barclays, the Debtors, and the estates if Thomson Reuters is not paid all amounts due and owing thereunder.

16. Finally, Thomson Reuters reserves all of its rights to further supplement its objection, including but not limited to, its right to assert that additional amounts are required to be paid by reason of the assumption and assignment of the Thomson Reuters Contracts under section 365 of the Bankruptcy Code.

**WHEREFORE**, Thomson Reuters respectfully requests that the Court (a) determine the appropriate cure amount with respect to the Thomson Reuters Contracts and (b) grant Thomson Reuters such other and further relief as is just and proper.

Dated: New York, New York
October 13, 2008

Respectfully Submitted,

**BLANK ROME LLP**

By:  */s/ Edward J. LoBello*
Edward J. LoBello (EL 3337)
Michael Z. Brownstein (MB 9379)
Melissa S. Vongtama (MV 9402)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel: (212) 885-5000
Fax: (212) 885-5001

*Attorneys for Thomson Reuters PLC and Thomson Reuters Corporation*

9