KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
Thomas Moers Mayer
P. Bradley O'Neill
Amy Caton

Attorneys for The Bank of New York Mellon Trust Company, N.A., as Indenture Trustee

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| In re: | ) |
| | ) |
| LEHMAN BROTHERS HOLDINGS INC., et al. | ) Chapter 11 |
| | ) |
| | ) Case No. 08-13555 |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |

_____
_____

| | |
|---|---|
| In re: | ) |
| | ) |
| LEHMAN BROTHERS COMODITY SERVICES INC. | ) Chapter 11 |
| | ) |
| | ) Case No. 08-13885 |
| | ) |
| Debtor. | ) |
| | ) |

_____

**LIMITED OBJECTION OF THE BANK OF NEW YORK MELLON TRUST
COMPANY, N.A. AS INDENTURE TRUSTEE, TO DEBTORS' MOTION FOR ENTRY
OF AN ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY
CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 6004, 6006 AND 9019
AUTHORIZING LEHMAN BROTHERS HOLDINGS INC. TO (A) ENTER INTO A
PARTNERSHIP INTERESTS PURCHASE AGREEMENT, (B) COMPROMISE AND
RELEASE A PORTION OF AN INTERCOMPANY LOAN, AND (C) ASSIGN THE
<u>REMAINDER OF SUCH INTERCOMPANY LOAN TO PURCHASERS</u>**

The Bank of New York Mellon Trust Company, N.A. (formerly known as The

Bank of New York Trust Company, N.A.), as trustee for the holders of the Bonds (as defined

below) (the "Trustee"), by and through its undersigned counsel, respectfully submits this limited objection to the Sale (as defined below) and the proposed payment of proceeds to LBHI (as defined below) in connection with the Sale.[1] In support of this objection, the Trustee states as follows.

## PRELIMINARY STATEMENT

On October 1, 2008, Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated Debtors filed a motion (the "Sale Motion"), seeking authority to sell all of the Debtors' indirectly held partnership interests in Eagle Energy Partners I L.P., a Texas limited partnership ("Eagle LP"), to certain third-party purchasers in exchange for $230 million in cash (the "Sale").[2] Upon knowledge and belief, it appears that Lehman Brothers Commodity Services Inc. ("Commodities"), a debtor in these proceedings as of October 3, 2008, is the majority limited partner owner of Eagle LP. However, rather than distributing the $230 million in proceeds of the Sale to Commodities, as well as Eagle LP's other limited partners, LBHI seeks authority to transfer the $230 million in cash proceeds to itself, in return for canceling what it alleges is a valid intercompany "debt" against Eagle LP of approximately $663 million.

As further explained below, the Trustee has a claim of over $700 million against Commodities to repay public municipal bonds that are now in default. The bonds were publicly

---

[1] Upon information and belief, some of the assets to be sold in the Sale (as defined below) are property of the bankruptcy estate of Lehman Brothers Commodity Services Inc. In the interest of notice to all parties, this Limited Objection is being filed on both dockets, and will be served to both Bankruptcy 2002 lists (if such separate lists exist on the date hereof).

[2] The Sale is to be made pursuant to that certain Purchase Agreement, dated as of September 26, 2008 (the "Purchase Agreement"), by and among LBHI, Eagle Energy Management, LLC (the "GP Seller"), Commodities, LBMB Fund Eagle Energy Holdings LLC ("Main Holdings"), LBMB Partners Eagle Energy Holdings LLC ("Institutional Holdings"), LBMB Fund (B) Eagle Energy Holdings LLC ("B Holdings"), LBMB Capital Partners V Eagle Energy Holdings LLC ("Employee CoInvest Holdings", and together with the GP Seller (in its capacity as a limited partner of the partnership), Commodities, Main Holdings, Institutional Holdings and B Holdings, the "LP Sellers" and together with LBHI and the GP Seller (in its capacity as general partner of the Partnership), the "Sellers"), EDF Trading North America Management LLC and EDF Trading North America Inc. (the "Purchasers").

-2-

issued to investors in April 2008, and the overwhelming majority of the proceeds from the bond issuance (at least $682 million) was transferred directly to Commodities. As a creditor of Commodities, the Trustee and the bondholders it represents (the "Holders") reasonably expected that they would be paid first from the proceeds of any assets sold by Commodities, including its partnership interests in Eagle LP. However, the Sale Motion seeks authority for the Debtors to bypass Commodities' creditors entirely and transfer the $230 million of Sale proceeds directly to Commodities' ultimate equity owner and parent, LBHI.

Therefore, at the direction of and on behalf of certain Holders, the Trustee objects to the Sale to the extent that any proceeds from the Sale are transferred to LBHI. These proceeds should, under the fundamental priority scheme of the Bankruptcy Code, be distributed to Commodities and the other partners of Eagle LP. While the Sale Motion asserts that LBHI is entitled to receive the proceeds in satisfaction of a purported intercompany claim against Eagle LP, this argument is unsubstantiated. The Debtors have provided no evidence as to the existence or validity of the LBHI intercompany claim against Eagle LP other than a two-sentence assertion in the Sale Motion that LBHI extended "credit" to Eagle LP to fund its operations, and therefore Eagle LP "owes" LBHI approximately $663 million under what is alleged to be an intercompany "note." The Debtors have not provided the Court or, to the best of the Trustee's knowledge, any of Commodities' creditors with a copy of this intercompany note, or any other documentation or testimony to support the validity of this intercompany claim.

Furthermore, even if appropriate documentation exists to support this purported intercompany claim, it is likely that any intercompany transfers by LBHI to Eagle LP would more properly be characterized as equity infusions rather than true debt. The proper characterization of intercompany transfers among commonly controlled companies often

-3-

presents complex questions of fact and law. Before allowing any proceeds from the Sale to flow up to LBHI, the Court will need to make a legal and factual determination, based upon the myriad of intercompany transactions between and among LBHI, Eagle LP, Commodities, and potentially other related subsidiaries, as to whether intercompany transfers by LBHI to Eagle LP constitute "debt" rather than capital contributions.

To that end, the Trustee attaches a document request to the Debtors seeking further information about the alleged LBHI intercompany note, as well as other intercompany transfers between and among LBHI, Eagle LP, Commodities, and other potentially related subsidiaries. The Trustee requests that the Court enter a discovery, deposition and briefing schedule on these issues to allow the Court to determine the validity and appropriate characterization of LBHI's intercompany transfers to Eagle LP.

In addition, the Trustee is concerned that Commodities may lack sufficient independent oversight over its operations and collections to protect the interests of its separate creditors. That Commodities entered into the Purchase Agreement to sell one of its primary assets, and is receiving virtually no consideration in return, is sufficient to raise a serious question as to whether Commodities' creditors have appropriate representation in these cases. Despite reasonable investigation, the Holders and their representatives have been unable to determine how Commodities operates, whether Commodities and LBHI have separate, independent boards of directors, or whether these directors independently approved the Sale and examined the intercompany transactions. In addition, it has not been determined what funds, including the over $682 million in proceeds received by Commodities from the April bond issuance, have been upstreamed from Commodities to LBHI or other Lehman subsidiaries. Therefore, the Trustee seeks discovery on these issues as well. If it appears that Commodities

does not have appropriate independent oversight and review of its intercompany transfers and relationships, the Trustee requests that the Court consider appointing a separate fiduciary or unsecured creditors committee for Commodities' creditors.

While it may be true, as the Sale Motion asserts, that it is in these estates' overall best interests to permit the Sale to go forward given the current conditions of the credit markets (leaving aside the appropriate disposition of the proceeds), the Trustee notes that it is highly unusual to approve a sale of one of the major assets of a chapter 11 debtor with no auction, and without even an evidentiary showing that the purchase price is the best available for these assets. In addition, the Purchase Agreement was signed and the Sale Motion was filed several days after LBHI filed for chapter 11 protection but <u>before</u> Commodities (the effective owner of the asset being sold) filed its bankruptcy petition. The Sale Motion is not filed on Commodities' docket, and it is not clear that Commodities' separate creditors received notice of the Sale Motion or the relief sought therein. Certainly, no independent Commodities creditor is on the LBHI creditors' committee, and therefore there has been no independent review of this motion by a fiduciary for unsecured creditors of Commodities. Pending a further showing on the merits of the transaction and whether appropriate notice has been provided, the Trustee objects to the Sale Motion on these grounds as well.

Finally, if the Court approves the Sale and transfer of the proceeds to LBHI, the Trustee objects to the Sale Motion on the basis that such sale cannot be a "free and clear" sale. It appears that this Sale may, from Commodities' standpoint, constitute a fraudulent transfer, as its assets are being transferred for virtually no consideration at a time when it appears to be insolvent. Appropriate carve-outs from the Sale order will need to be made to ensure that Commodities' claims against the Purchasers and LBHI are preserved.

For all of these reasons, the Trustee submits that it is not appropriate to permit the proposed Sale to go forward unless the Debtors agree, at a minimum, to escrow the Sale proceeds pending a final determination as to the validity of the purported LBHI intercompany claim and other issues potentially affecting the appropriate disposition of the Sale proceeds, and enter an order scheduling a discovery and briefing schedule with respect to these issues.[3]

## BACKGROUND

1. As set forth in the Sale Motion, upon information and belief, Commodities and certain of its affiliates acquired all of the partnership interests of Eagle LP on or about May 9, 2007, for an undisclosed amount.

2. The Trustee's claims against Commodities are based on municipal revenue bonds issued in order to monetize Commodities' long-term gas supply contracts for the supply of natural gas to certain municipalities. As part of these transactions, Commodities entered into a Gas Purchase Agreement ("Gas Purchase Agreement") dated as of April 1, 2008, with Main Street Natural Gas, Inc. ("Main Street"), under which Commodities agreed to provide a thirty-year daily gas supply to Main Street (and, effectively, the end-user municipalities), in exchange for receiving a prepayment of approximately $682 million for such supply. The Gas Purchase Agreement provides that (subject to certain exceptions not applicable here) in the event that Commodities fails to deliver gas to Main Street or otherwise defaults under the Gas Purchase Agreement, Commodities is liable to Main Street (and the Trustee) for a termination fee in an amount sufficient to redeem the Bonds.[4]

---

[3] In addition, the Trustee incorporates by reference all of the objections raised in the Objection by the Ad Hoc Committee of Bondholders to the Sale (Docket #903).

[4] The Gas Purchase Agreement also provides Main Street with the right to demand the posting of collateral to secure the obligations of Commodities under the Gas Purchase Agreement if certain downgrades of the rating for

3. In certain events, including nonpayment, LBHI unconditionally guaranteed Commodities' required payments to Main Street (and the Trustee) under a separate guaranty agreement.

4. As part of these same transactions, Main Street issued public municipal revenue bonds (the "Bonds") in the total face amount of approximately $709 million under an indenture dated April 1, 2008 (the "Indenture"), for which the Trustee is the indenture trustee. Approximately $682 million from the sale of the Bonds was transferred to Commodities to finance a prepayment for Commodities' thirty-year supply of natural gas to Main Street (and then to end-user municipalities). The Bonds were to be repaid from payments from the end-user municipalities following Commodities' delivery of gas. The Bonds are limited obligations of Main Street, and are payable solely from the "Trust Estate", which primarily include Main Street's claims against Commodities and LBHI for nonpayment under the Gas Purchase Agreement.

5. On September 18, 2008, Commodities ceased delivering gas under the Gas Purchase Agreement. On September 22, 2008, Main Street served Commodities with a default notice under Section 4.4 of the Gas Purchase Agreement for a Persistent Delivery Default, and a notice of termination of Main Street's obligations under the Gas Purchase Agreement as of September 24, 2008. Upon such termination, the Bonds became subject to mandatory redemption as of September 30, 2008, and, on October 1, 2008, the Trustee sent a notice of default under Sections 8.01(a) and 8.01(b) of the Indenture for the failure to redeem the Bonds.[5]

---

LBHI's unsecured indebtedness occur. Upon information and belief, the rating of LBHI's long term indebtedness was downgraded on September 15, 2008. Following such a qualifying downgrade, Commodities had ten days to post sufficient collateral or face early termination. However, it appears that Commodities failed to post any such collateral.

[5] The Trustee will provide copies of the various default notices referenced herein upon request.

6. Pursuant to Section 13 of the Gas Purchase Agreement, Commodities has acknowledged and consented to Main Street's assignments of its rights under the Gas Purchase Agreement to the Trustee.

7. On October 1, 2008, LBHI and its then-affiliated Debtors filed the Sale Motion, seeking an order approving the sale of Eagle LP to the Purchasers. Eagle LP is an operating company that is engaged in the acquisition, management and delivery of natural gas and electric power throughout the United States and Canada. Pursuant to and in reliance on Exhibit 21.01 to the Form 10-K filed by LBHI for 2007 fiscal year, Eagle LP is the only "significant subsidiary" of Commodities, as that term is defined in Regulation S-X.

8. On October 3, 2008, Commodities filed a voluntary petition under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

## ARGUMENT

**1. The Sale Proceeds Should Be Escrowed Pending Resolution of Significant Issues Regarding Their Appropriate Disposition**

9. As the majority holder of the limited partnership interests of Eagle LP, Commodities is presumptively entitled to the proceeds of a sale of its sole "significant subsidiary," and Commodities' creditors therefore have a potential interest in the Sale proceeds ahead of LBHI. Whether LBHI could have a valid claim to the Sales proceeds depends on its ability to demonstrate that it is a legitimate creditor of Eagle LP, and not merely a parent company that invested capital in its subsidiary.

10. The proper characterization of LBHI's payments to Eagle LP will turn, among other things, on an understanding of LBHI's cash management system, a subject that has already engendered uncertainty and controversy in these cases. Numerous creditors have already

-8-

launched discovery aimed at determining how intercompany financial support under the Lehman umbrella worked pre-petition. (See Rule 2004 Motions set forth in Docket Nos. 373, 435, 691, 770, 806, 814 and 818.) Until the Trustee's similar discovery can be completed, the Court and the parties cannot blindly accept the Debtors' assertion that an ultimate parent (LBHI) would fund a fifth-tier subsidiary (Eagle LP) directly, outside traditional corporate ownership channels, on a daily basis and that such financial support should be treated as debt instead of a capital contribution.

11.    Accordingly, the Court must make a full factual and legal determination of the validity and characterization of LBHI's alleged intercompany claim against Eagle LP, including reviewing documentation of the transfers from LBHI to Eagle LP, as well as transfers from Eagle LP to LBHI, and Commodities to LBHI. Insider claims must be given "rigorous scrutiny" in determining whether they are entitled to be treated as valid intercompany debt or rather as capital contributions. See Pepper v. Litton, 308 U.S. 295, 306 (1939). Given that the transfers between alleged "lender" and "borrower" were being recorded and characterized by one party in control of making such determinations, a review of the facts and circumstances of the intercompany transfers to and from Eagle LP (as well as Commodities) could very well lead to the conclusion that the purported intercompany "debt" was, in fact, a capital contribution.

12.    When faced with the decision of whether to recharacterize purported debt as an equity contribution, courts have considered the following factors, none of which is singularly determinative:

> (1)    the names given to the instruments, if any, evidencing the indebtedness;
>
> (2)    the presence or absence of a fixed maturity date and schedule of payments;
>
> (3)    the presence or absence of a fixed rate of interest and interest payments;

(4)  the source of repayments;

(5)  the adequacy or inadequacy of capitalization;

(6)  the identity of interest between the creditor and the stockholder;

(7)  the security, if any, for the advances;

(8)  the corporation's ability to obtain financing from outside lending institutions;

(9)  the extent to which the advances were subordinated to the claims of outside creditors;

(10) the extent to which the advances were used to acquire capital assets; and

(11) the presence or absence of a sinking fund to provide repayments.

Bayer Corp. v. Mascotech, Inc. (In re Autostyle Plastics, Inc.), 269 F.3d 726, 749-50 (6th Cir. 2001) (citing Roth Steel Tube v. Comm'r, 800 F.2d 625, 630 (6th Cir. 1986)); see also In re Hyperion Enter., Inc., 158 B.R. 555 (D. R.I. 1993) (adopting the eleven factors and adding two additional factors: (1) the ratio of shareholder loans to capital; and (2) the degree of shareholder control).

13. Here, the Debtors' mere assertion that Eagle LP, a subsidiary with an alleged enterprise value of $230 million was permitted to incur more than $660 million of "debt", even from a benevolent parent, tends to undercut any argument that LBHI's financial support was in fact "debt." To the contrary, it appears to the Trustee that, judged from the standpoint from a third-party lender, this was an improvident "loan" or series of loans for LBHI to have made, and it therefore appears that these intercompany transfers were likely equity contributions. See In re Micro-Precision Technologies, Inc., 303 B.R. 238, 247 (Bankr. D.N.H. 2003) (the degree of affiliation between a creditor and debtor will be positively correlated with the level of scrutiny to which the transactions are subjected in recharacterization requests); Algonquin Power Income

Fund v. Ridgewood Heights, Inc. (In re Franklin Indus. Complex, Inc.), No. 01-67457, 2007 Bankr. LEXIS 3004 at *49-50 (Bankr. N.D.N.Y. Aug. 30, 2007).

14.     The Trustee is not yet in possession of sufficient facts to fully apply the Autostyle test.  Thus, it is important that the Trustee be permitted to complete discovery of the Debtors as set forth in the document requests in Exhibit A and the deposition notice attached in Exhibit B, as well as further discovery that the Trustee determines may be necessary, to gain a complete understanding of the transfers between and among Eagle LP, LBHI and Commodities, as well as the other issues discussed herein.  In addition, even if it is ultimately determined that the LBHI intercompany transfer to Eagle LP was in fact a loan, the additional intercompany transactions, including fraudulent transfers and preference claims with respect to Eagle LP and other seller entities would need to be resolved prior to LBHI receiving any distribution.

15.     Finally, as stated above, the Trustee is concerned that Commodities may have insufficient independent oversight over its operations and collections for the benefit of its independent creditors.  It is unclear whether Commodities and LBHI have separate, independent boards of directors, and whether these directors independently approved the Sale and examined the intercompany transactions.  The limited information available to the Trustee shows that the same officer signed the Purchase Agreement on behalf of LBHI and Commodities (as well as the other Lehman entities), and that LBHI and Commodities share at least the same chief restructuring officer. (See Docket No. 760; LBCS Pet. Case No. 08-13885).[6]  Whether the Sale was approved by the independent members of the Commodities' board of directors, in their independent business judgment, would be important information for creditors of Commodities as

---

[6]     In addition, Section 7.14 of the Purchase Agreement purports to designate LBHI as agent for all of the Sellers (including Commodities) in the Sale and related transactions, including with respect to allocating the administrative expenses of the Sale.  The Trustee objects to granting LBHI such discretion with respect to Commodities.

-11-

they evaluate the Sale. Therefore, the Trustee seeks discovery on these issues as well. In addition, if it appears that Commodities does not have appropriate independent oversight and review of its intercompany transfers and relationships, the Trustee requests that the Court consider appointing a separate fiduciary or unsecured creditors committee for Commodities' creditors to assure appropriate representation in these cases.

## 2. The Sale Motion and Sale Process are Procedurally Defective

16.     The non-ordinary course sale of Commodities' partnership interests in Eagle LP, which appear to be a large asset of Commodities, requires notice to certain stakeholders of Commodities in accordance with the Bankruptcy Code and Federal Rules of Bankruptcy Procedure. See FED. R. BANKR. P. 6004. In accordance with Section 363 of the Bankruptcy Code and pursuant to Rule 6004, creditors must be afforded twenty day's notice by first class mail. While the Trustee cannot be certain of the Debtors' compliance with these strictures, it appears unlikely that Commodities' distinct pool of creditors was served with the Sale Motion, given that the Sale Motion was filed on the docket of a different case prior to the commencement of Commodities' chapter 11 case.

17.     In addition, it is not clear that the proposed Sale process meets the standards for a non-ordinary course sale under Section 363 of the Bankruptcy Code or Rule 6004. There is no evidence in the record to support the Debtors' assertion that an "extensive search" was conducted to find a buyer, and that $230 million is a fair price for the partnership interests of Eagle LP. In addition, it does not appear that any independent fiduciary of Commodities or its creditors reviewed and approved the Sale. The Debtors' further disclosure with respect to the marketing process for Eagle LP, a description of its recent operations and finances, as well as the original purchase price for Eagle LP (an acquisition by Commodities that occurred less than eighteen

months ago), would be helpful to the Court and the parties in determining the validity of the Debtors' assertions that the sale of Eagle LP is in the best interest of its estates.

18. In the Sale Motion, despite the very real procedural defects and lack of Bankruptcy Court and creditor oversight of the marketing of Eagle LP, the Debtors state an urgent need to complete the Sale in order to "stabilize [Eagle LP's] operations", as without LBHI's purported financial support through daily loan advances, Eagle LP's "operations [would be] put at risk." (See Sale Mot. ¶¶ 9, 11.) However, it is not clear that there is a driving need to obtain immediate Bankruptcy Court approval of the Sale, as the deadline to obtain such approval is not until November 30, 2008, and the deadline to close the Sale is not until December 31, 2008. (See Purchase Agreement. ¶ 9.1.) Assuming the Debtors' concerns were to justify immediate approval of the Sale, there is no such pressing need to distribute the proceeds of the Sale at this time. Prior to any distribution to LBHI from the Sale proceeds, the creditors of Commodities must be given a full opportunity to review the alleged intercompany transfers between Eagle LP, LBHI and Commodities, as well as the other facts and circumstances surrounding these intercompany relationships, and the Court must make a full determination as to the validity and characterization of LBHI's alleged intercompany claims against Eagle LP.

19. Finally, if and to the extent that the Court approves the transfer of the Sale proceeds to LBHI, the Trustee objects to the "free and clear" nature of this sale. Without LBHI establishing that it has a valid debt claim against Eagle LP that is not subject to offset and which is permitted to be paid under the various agreements between the parties, it appears that the Sale is a fraudulent transfer.[7] That is, the assets of Commodities (its partnership interests) are being

---

[7] The sole consideration being granted to Commodities for the sale of its partnership interests is its pro rata share of $100 and the cancellation of an alleged and unsubstantiated $19 million intercompany "transfer" from Eagle LP to Commodities.

transferred at a time where Commodities appears to be insolvent, with the consideration for the Sale flowing to a third party (LBHI).  See, e.g., N.Y.D.C.L. § 273 ("[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration"); 6 Del. C. §§ 1304, 1305.  Therefore, the Court cannot approve the Sale to the Purchasers free and clear of Commodities' fraudulent transfer claims against both LBHI and the Purchasers that arise from the sale of these assets.

WHEREFORE, the Trustee respectfully requests that the Court: (1) deny the Sale Motion unless the relief requested herein is granted, (2) grant certain discovery requests as identified in Exhibits A and B; (3) order that a discovery and briefing schedule be set with respect to these issues; and (4) grant such other or further relief as is just and proper.

Dated: October 14, 2008

    KRAMER LEVIN NAFTALIS & FRANKEL LLP

    By: /s/ Amy Caton
        Amy Caton
        Thomas Moers Mayer
        P. Bradley O'Neill
        1177 Avenue of the Americas
        New York, New York 10036
        (212) 715-9100

    Attorneys for The Bank of New York Mellon Trust Company, N.A., as Indenture Trustee