WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtor
And Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------X
| | : | |
|---|---|---|
| **In re:** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC., et al.** | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-----------------------------------------------------------------------X

**NOTICE OF HEARING REGARDING**
**APPLICATION OF THE DEBTORS PURSUANT TO SECTIONS 327(e) AND 328(a)**
**OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO EMPLOY,**
***NUNC PRO TUNC*, McKEE NELSON LLP AS SPECIAL TAX COUNSEL**

PLEASE TAKE NOTICE that a hearing on the annexed application (the

"Application") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the

above-referenced chapter 11 cases (together, the "Debtors"), pursuant to sections 327(e) and

328(a) of the Bankruptcy Code for authorization to employ, *nunc pro tunc*, McKee Nelson LLP

as special tax counsel, all as more fully described in the Application, will be held before the

Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy

Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York,

New York 10004 (the "Bankruptcy Court") on **November 5, 2008 at 10:00 a.m. (Prevailing**

**Eastern Time)** or as soon thereafter as counsel may be heard.

        PLEASE TAKE FURTHER NOTICE that objections, if any, to the Application

shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of

New York, shall set forth the name of the objecting party, the basis for the objection and the

specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance

with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users

of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch

disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based

word processing format (with two hard copies delivered directly to the chambers of the

Honorable James M. Peck ("Chambers")), and shall be served upon: (i) Chambers, One Bowling

Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767

Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., Lori R. Fife, Esq.,

Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office

of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33

Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Paul

Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis; (iv) Milbank, Tweed,

Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis

F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official

committee of unsecured creditors appointed in these cases; and (v) Cleary Gottlieb LLP, One

Liberty Plaza, New York, NY 10006, Attn: Lindsee P. Granfield, Esq. and Lisa Schweitzer, Esq.

and Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, Attn: Robinson B.

Lacy, Esq. and Hydee R. Feldstein, Esq., attorneys for the Debtors' postpetition lenders, so as to be received no later than **October 31, 2008 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Application is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: October 14, 2008
     New York, New York

/s/ Richard P. Krasnow
Harvey R. Miller, Esq.
Richard P. Krasnow, Esq.
Lori R. Fife, Esq.
Shai Y. Waisman, Esq.
Jacqueline Marcus, Esq.
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for the Debtor
And Debtor in Possession

**Hearing Date and Time:  November 5, 2008 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline:  October 31, 2008 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtor
And Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
                                         :

| | | |
|---|---|---|
| In re: | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC., et al.** | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------------------X

**APPLICATION OF THE DEBTOR AND DEBTOR IN POSSESSION**
**LEHMAN BROTHERS HOLDINGS, INC. PURSUANT TO SECTIONS 327(e) AND**
**328(a) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO EMPLOY,**
***NUNC PRO TUNC,* McKEE NELSON LLP AS SPECIAL TAX COUNSEL**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

        The application of Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated

debtors in possession (together, the "<u>Debtors</u>" and, collectively with their non-debtor affiliates,

"<u>Lehman</u>"), to employ McKee Nelson LLP as special tax counsel, represents:

<u>**Background**</u>

        1.      Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "<u>Commencement Date</u>"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "<u>Creditors' Committee</u>").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("<u>SIPA</u>") with respect to Lehman Brothers Inc. ("<u>LBI</u>").  A trustee appointed under SIPA (the "<u>SIPC Trustee</u>") is administering LBI's estate.

### Jurisdiction

4.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Lehman's Business

5.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients, and individuals worldwide.  Its headquarters in New York and regional headquarters in London and Tokyo are complemented by a network of offices in North America, Europe, the Middle East, Latin America, and the Asia Pacific region.

6.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit

2

of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

### Relief Requested

7.       The statutory predicate for the relief sought herein is 11 U.S.C. § 327(e) and § 328(a).  By this Application, the Debtors seek entry of an order, pursuant to section 327(e) of the Bankruptcy Code, authorizing the employment and retention of McKee Nelson LLP ("McKee" or the "Firm") as special tax counsel to continue to perform certain necessary legal services pertaining to the Debtors' tax controversy matters and related investigations, effective as of the Commencement Date.

### Basis for Relief

8.       The Debtors' knowledge, information, and belief regarding the matters set forth in this Application are based on, and made in reliance upon, the Declaration of Rajiv Madan (the "Madan Declaration"), which is attached hereto as Exhibit A.

9.       The retention of McKee under the terms described herein is appropriate under Bankruptcy Code sections 327(e), 328(a), and 1107(b).  Section 327(e) provides for the appointment of special counsel for a specific purpose where the proposed counsel does not possess any interest materially adverse to the debtor with regard to the matter(s) that will be handled by counsel.  Section 327(e) provides:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

10.    Moreover, section 1107(b) provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).  Simply put, section 327(e) of the Bankruptcy Code authorizes the retention of counsel who previously represented a debtor prepetition provided that:  (a) the appointment is in the best interest of the debtor's estate; (b) counsel does not hold an interest adverse to the estate with respect to the matter for which counsel is to be employed; and (c) the specified special purpose for which counsel is being retained does not rise to the level of conducting the bankruptcy case for the debtor in possession.  *See In re DeVlieg, Inc.*, 174 B.R. 497 (N.D. Ill. 1994); *see also In re AroChem Corp.*, 176 F.3d 610, 622 (2d Cir. 1999) (noting that "where the interest of the special counsel and the interest of the estate are identical <u>with respect to the matter for which special counsel is retained</u>, there is no conflict and the representation can stand") (emphasis in original).

### McKee Holds No Adverse Interest and its Retention is in the Best Interests of the Estate

11.    To the best of the Debtors' knowledge, McKee does not represent or hold any interest adverse to the Debtors or their estates with respect to the matters as to which McKee is to be employed, except as may be set forth in the Madan Declaration.  *See In re AroChem Corp.*, 176 F.3d at 622 (emphasizing that, under section 327(e) of the Bankruptcy Code, potential conflicts must be evaluated only with respect to the scope of the proposed retention). The Debtors have been informed that McKee will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise and, if any new relevant facts or relationships are discovered, McKee will supplement its disclosure to the Court.  *See* Madan Declaration at ¶ 1.

4

12.    Based on the foregoing and the disclosures set forth in the Madan Declaration, McKee does not hold or represent an interest adverse to the Debtors' estates that would impair McKee's ability to perform professional services for the Debtors, objectively and in accordance with section 327(e) of the Bankruptcy Code, regarding the matters on which McKee is proposed to be engaged.  *See* Madan Declaration at ¶¶ 7-13.

13.    To the best of the Debtors' knowledge, neither McKee nor any partner, associate, or counsel thereof has any connection with, or any interest adverse to, the Debtors, their creditors, the United States Trustee or any of its employees, or any other party in interest or their respective attorneys and accountants, with respect to the matters for which McKee is to be employed.  *See* Madan Declaration at ¶ 8.

14.    The Debtors also seek to retain McKee because: (a) McKee is well qualified to act as special tax counsel; (b) prior to the Commencement Date, McKee actively represented the Debtors and their affiliates with regard to various matters, including tax controversy matters; and (c) the Debtors believe that continuation of such representation is in the best interest of the estates.  With offices in New York and Washington, D.C., McKee is a nationally recognized law firm of approximately 200 attorneys serving the complex legal needs of market-leading institutions, including several major financial institutions, in five focused areas: Tax Controversy, Tax Advisory Services, Capital Markets, White Collar/Enforcement and General Litigation.  *See* Madan Declaration at ¶ 2.  The Debtors have selected McKee as special tax counsel because of McKee's extensive knowledge and experience in tax controversy matters. With one of the largest tax groups of any law firm in the United States, McKee specializes in handling significant tax controversy matters for Fortune 500 companies at all levels of tax

controversy, including IRS audits, IRS appeals, trial and appellate litigation.   *See* Madan

Declaration at ¶ 3.

15.    Since 2005, McKee has represented the Debtors and their affiliates in tax

controversy matters involving a range of complex tax issues, a voluminous factual record

(hundreds of thousands of pages of documents), and tax years that span eleven years (1997 –

2007).  These tax controversy matters will continue during the administration of these chapter 11

cases.

16.    As a result of its prepetition representation, McKee's attorneys are

familiar with the Debtors' complex tax controversy matters, including the relevant factual and

legal issues, and are in the best position to assist the Debtors in handling the matters before the

IRS and in litigation.   *See* Madan Declaration at ¶¶ 4-6.  The Debtors believe that, given

McKee's experience and familiarity with the Debtors' tax issues, it would be imprudent and

inefficient to lose the knowledge base and experience of McKee with respect to these ongoing

matters during these chapter 11 cases.  Given the specialized nature of the work performed and

McKee's long-standing engagement on the Debtors' and their affiliates' tax controversy matters,

if the Debtors were required to retain counsel other than McKee in connection with the matters

on which McKee is to be employed as provided herein, the Debtors, the estates, and all parties in

interest would be unduly burdened by the time and expense necessary for such counsel to

become familiar with the intricacies of the Debtors' tax issues and business operations.

17.    McKee has stated its desire and willingness to represent the Debtors in

these matters and to render the necessary professional services as special tax counsel to the

Debtors.  Based on the foregoing, the Debtors submit that the relief requested is necessary and

appropriate, is in the best interests of the estates and creditors, and should be granted in all respects.  A form of proposed order is annexed hereto as Exhibit B.

### Professional Compensation

18.     The Debtors understand that McKee hereinafter intends to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the local rules of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Local Rules"), and orders of this Court for all services performed and expenses incurred after the Commencement Date.  Given the magnitude of the tax matters and the significant amount of work that must be done, it is anticipated that fees and expenses may range as high as between $500,000.00 and $1,000,000.00 per month for some period of time.  *See* Madan Declaration at ¶ 6.

19.     In the one year prior to the commencement of this case, McKee received from Lehman Brothers, Inc. ("LBI"), an affiliate of the Debtors, $21,817,895.25 for services rendered to LBHI and its affiliates in five practice areas (Tax Controversy, Tax Advisory Services, Capital Markets, White Collar, and General Litigation) and related expenses.  During the 90 days prior to the initiation of LBI's SIPA proceeding, McKee received payments from LBI in the aggregate amount of $9,713,088.27.  McKee is owed an additional estimated amount of $2.1 million for work performed for the Debtors and certain of their affiliates prior to the Commencement Date. *See* Madan Declaration at ¶ 13.

20.     The Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and further orders of the Court, propose to compensate McKee at the Firm's regular hourly rates for legal and non-legal personnel, and to

reimburse McKee for all reasonable and necessary expenses pursuant to the provisions of sections 330 and 331 of the Bankruptcy Code.  The current hourly billing rates for McKee professionals range from $620 to $995 for partners, $395 to $645 for associates and counsel, and $215 to $305 for paralegals.  These rates are subject to periodic adjustment for normal rate increases and promotions.  In lieu of separate charges for expenses for such items as photocopying, messenger and delivery or other courier service, computerized research charges, long distance telephone and telecopy charges, and secretarial overtime, McKee charges clients an amount equal to two percent of the firm's fees.  McKee bills separately, however, for travel expenses, court filing fees, and similar third-party charges.  *See* Madan Declaration at ¶ 15.  The Debtors submit that such rates and charges are reasonable.

21.     To the extent that any affiliates of the Debtors subsequently commence a chapter 11 case, which are jointly administered with these cases, the Debtors request that the relief herein apply to such affiliates and their respective chapter 11 estates.  McKee agrees to file such additional disclosure as necessary pursuant to sections 327(e) and 328(a) of the Bankruptcy Code.  *See* Madan Declaration at ¶ 1.

### *Nunc Pro Tunc*

22.     McKee has continued to perform work on the Debtors' tax controversy matters in good faith after the Commencement Date to properly advance and protect the interests of the Debtors.  McKee performed this work at the direction of the Debtors.  Accordingly, it is appropriate that McKee be retained *nunc pro tunc*.  *See* Madan Declaration at ¶¶ 4-6.

### Notice

23.     No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the

8

order entered on September 22, 2008 governing case management and administrative procedures for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the attorneys for the Debtors' postpetition lenders; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New York; and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

24.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: October 14, 2008
       New York, New York

                          Lehman Brothers Holdings, Inc.
                          (for itself and on behalf of its affiliated
                          Debtors and Debtors in Possession)


                    By:  /s/ *David Coles*
                          David J. Coles

                    Title: Chief Financial Officer

## Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS, INC., et al.** | : | **Case No. 08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DECLARATION OF RAJIV MADAN, ESQ. IN SUPPORT OF APPLICATION OF THE DEBTORS PURSUANT TO SECTIONS 327(e) AND 328(a) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO EMPLOY, *NUNC PRO TUNC*, McKEE NELSON LLP AS SPECIAL TAX COUNSEL

RAJIV MADAN, being duly sworn, deposes and says:

1.      I am an attorney and member of the firm McKee Nelson LLP ("McKee" or the "Firm"), proposed special tax counsel for Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors"), and am duly authorized to make this declaration on the firm's behalf.  McKee maintains its offices at 1919 M Street N.W., Suite 200, Washington, District of Columbia 20036 and One Battery Plaza, 34th Floor, New York, New York 10004.  I submit this Declaration in support of the Debtors' Application pursuant to § 327(e) and § 328(a) of title 11 of the United States Code (the "Bankruptcy Code") for Authorization to Employ, *Nunc Pro Tunc*, McKee Nelson LLP as Special Tax Counsel (the "Application") and to comply with § 329 and § 504 of the Bankruptcy Code and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Except as otherwise indicated, I have personal knowledge of the matters

set forth herein, and, if called as a witness, would testify competently thereto.[1]  I will supplement

this declaration if additional relevant information becomes available concerning any relationship

between the creditors or interest holders of the Debtors and McKee.

### McKee's Prepetition Relationship with the Debtors and the Nature of Retention

2.      With offices in New York and Washington, D.C., McKee is a nationally

recognized law firm of approximately 200 attorneys serving the complex legal needs of market-

leading financial institutions and other major institutions in other market sectors in five focused

areas: Tax Controversy, Tax Advisory Services, Capital Markets, White Collar/Enforcement, and

General Litigation.  McKee has served as counsel to LBHI and its affiliates in all of its practice

areas.

3.      With one of the largest tax groups of any law firm in the United States,

McKee specializes in handling significant tax controversy matters for Fortune 500 companies

before the United States government.  Our tax lawyers have expertise in a range of areas within

tax, including international tax, partnership tax, corporate tax, transfer pricing, administrative

dispute resolution, and litigation.  Many of the partners in the firm's tax group are former senior

officials from the Department of Treasury or former tax litigators from the Department of Justice

and the Internal Revenue Service ("IRS").  I am a former tax litigator from the IRS's New York

office.  The firm represents a range of major domestic and foreign institutions, including several

financial institutions, at all levels of tax controversy, including IRS audits, IRS appeals, trial and

appellate litigation.  The firm's tax litigators have appeared before the U.S. Tax Court, U.S.

Court of Federal Claims, Bankruptcy Court, and numerous U.S. District Courts and U.S. Courts

of Appeals.

---

[1]      Certain of the disclosures herein relate to matters within the knowledge of other attorneys at
McKee and are based on information provided by them.

4.      LBHI is a consolidated taxpayer and therefore files one combined tax return for itself and all of its affiliates.  Since March 2005, McKee has represented LBHI and its affiliates in a range of tax controversy matters (through an engagement with Lehman Brothers, Inc. ("LBI"), an affiliate of the Debtors).   These tax controversy matters will continue in bankruptcy.  Given that these tax controversy matters involve ongoing IRS audits and potential litigation, we are constrained in the level of detail we can provide in these papers regarding these matters.   Nevertheless, the ongoing tax controversy matters involve: more than twenty different transactions, a range of complex tax issues, a voluminous factual record (hundreds of thousands of pages of documents), and tax years that span eleven years (1997 – 2007).   The amount at stake in these matters could be in excess of $2 billion (inclusive of the Debtors' refund claims).

5.      With respect to the current IRS audits of the Debtors and their affiliates, the IRS has assigned more than 25 IRS officials to work on these audits, including IRS revenue agents, subject matter specialists, and IRS counsel.  In addition, the IRS is coordinating several of the issues with its National Office.  Since 2005, McKee has been involved in all aspects of the Debtors' and their affiliates' tax controversy defense, including managing the substantial document discovery sought by the IRS, making formal presentations to the IRS, defending depositions, responding to interrogatories, drafting Protests (legal memoranda), setting forth factual and legal rebuttals to the IRS positions, and negotiating with the IRS.

6.      More specifically, McKee represents the Debtors and their affiliates with respect to four distinct tax controversy matters:

a.      The first matter involves a claim for refund of over $500 million where the Debtors will be seeking from the IRS a refund of taxes, penalties and interest paid for the 1997-2000 tax years (the "1997-2000 Refund Claim").  The Debtors' refund claim relates to

3

three significant issues and four subsidiary issues.  The Debtors may need to litigate all three of the significant issues in order to recover from the United States the taxes, penalties and interest paid.  With respect to all seven issues, McKee served as counsel throughout the IRS administrative process.  Many of the issues implicated in the Debtors' claim for refund carry over into future years.  Consequently, the Debtors have a significantly larger potential exposure (than the approximately $500 million already paid) with respect to the 1997-2000 Refund Claim.

b.    In the second matter, McKee has assisted Lehman's Tax Department in managing a significant IRS audit of the 2001-2005 tax years (the "2001-2005 Audit").  The IRS has been conducting this audit for approximately twenty-one months and is scrutinizing numerous issues.  While it is difficult to provide an estimate of potential exposure given that the audit is not yet complete, based on feedback from the IRS, we expect the IRS to make adjustments resulting in a substantial tax deficiency and implicating a dozen or more transactions.  Once the audit is complete, the Debtors may have the opportunity to settle some of the issues.  It is possible that the Debtors will need to litigate one or more of the contested issues arising from the 2001-2005 Audit against the United States.

c.    The IRS has two other ongoing audits with respect to the Debtors and their affiliates, involving specific aspects of their business (the "Transaction Audits").  These other audits are in the final stages of discovery.  While the Transaction Audits involve a narrower group of transactions, they have required and may continue to require a substantial allocation of resources in order to defend the Debtors' position.

d.    After the Commencement Date, the IRS opened an audit of the Debtors' 2006-2007 tax returns (the "2006-2007 Audit").  We anticipate that the IRS will carefully scrutinize a variety of transactions, some of which, but not all, are carryover

4

transactions from the 2001-2005 Audit.  As with the 2001-2005 Audit, the Debtors may have the opportunity to settle some of the issues; however, there is a possibility that some issues will need to be litigated.

    e.  In a letter dated October 2, 2008, the IRS informed Lehman that, due to the 180-day period for a governmental unit to file a proof of claim under section 502(b)(9) of the Bankruptcy Code, the IRS plans a significant increase in its examination efforts across all of Lehman's IRS audits.  Accordingly, we expect a concentrated effort over the next several months, including requests for documents, interrogatories, and potentially, IRS interviews of former employees.

    f.  The Debtors can anticipate that the tax controversy matters will take more than one year to resolve.  Given the range of tax controversy issues facing the Debtors and the depth and breadth of the IRS's audits, the Debtors can expect needing to allocate significant resources both to obtain their refund for the tax issues in the 1997-2000 period and to defend their positions with respect to the four ongoing audits.  Given the magnitude of the tax matters and the significant amount of work that must be done, it is anticipated that fees and expenses may range between $500,000.00 and $1,000,000.00 per month for some period of time.

### McKee's Relationship with Other Parties-in-Interest

    7.  McKee maintains a database containing the names of current and former clients and certain other parties related to such clients.  I caused McKee to review and analyze the conflict database as necessary in connection with this application.

    8.  Based upon this research, and to the best of my knowledge, information, and belief, neither I nor any attorney of McKee represents any entity (or its attorneys or accountants) in this chapter 11 case or in matters directly related to this chapter 11 case other

than the Debtors.  To the best of my knowledge, neither McKee nor any attorney at the firm holds or represents any interest adverse to the estate with respect to the tax matters on which McKee is to be retained.

9.    As part of its comprehensive legal practice, McKee's partners, associates, and counsel have represented in the past and may currently represent certain of the Debtors' creditors, equity security holders and other parties in interest (including subsidiaries and other related entities).  These representations may include, among other things, advising with respect to transactions in which the Debtors and/or their affiliates participated.  However, such representations are not directly related to this Chapter 11 case.  McKee's partners, associates, and counsel may in the future represent certain of the Debtors' creditors, equity security holders, and other parties-in-interest (including subsidiaries and other related entities), but will not undertake a representation directly related to these chapter 11 cases.

10.    To be retained as special counsel pursuant to section 327(e), McKee is not required to meet the "disinterested" standard that would be necessary for retention pursuant to section 327(a).  Nevertheless, I have compared the list of the Debtors' 30 largest unsecured creditors against the list of current McKee clients.  Citibank N.A., The Bank of New York Mellon Corp., Mizuho Corporate Bank Ltd., Svenksa Handelsbanken, KBC Bank, and ANZ Banking Group Ltd. are current McKee clients.  Each of these accounted for less than 1% of McKee's revenue since January 1, 2008.

11.    I am not related, and, to the best of my knowledge, no other McKee attorney is related, to any United States Bankruptcy or District Judge for the Southern District of New York or to the United States Trustee in this chapter 11 case.

12.    In the one year prior to the commencement of this case, McKee received

6

from LBI $21,817,895.25 for services rendered to the Debtors and their affiliates in five practice areas (Tax Controversy, Tax Advisory Services, Capital Markets, White Collar, and General Litigation) and related expenses.  During the 90 days prior to the initiation of LBI's SIPA proceeding, McKee received payments from LBI in the aggregate amount of $9,713,088.27.

13.    There remains an outstanding balance of approximately $2 million due to McKee for time accrued through the Commencement Date for prepetition work performed on behalf of the Debtors and their affiliates.

**Professional Services Compensation**

14.    McKee does not hold or represent an interest adverse to the Debtors' estates in the matters upon which McKee is to be employed.  McKee is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code with respect to these matters.

15.    During the course of this case, McKee will invoice the Debtors no less frequently than monthly for services rendered and charges and disbursements incurred.  For professional services, McKee's fees are based on its guideline hourly rates, which are periodically adjusted.  Presently, McKee's hourly rate structure ranges from $620 to $995 for partners, $395 to $645 for associates and counsel, and $215 to $305 for paralegals.  In lieu of separate charges for expenses for such items as photocopying, messenger and delivery or other courier service, computerized research charges, long distance telephone and telecopy charges and secretarial overtime, McKee charges clients an amount equal to two percent of the firm's fees.  McKee bills separately, however, for travel expenses, court filing fees and similar third-party charges.

16.    Consistent with the firm's policy with respect to its other clients, McKee

7

will continue to charge the Debtors for all services, charges and disbursements provided and/or incurred by third parties in the rendition of services. These services, charges and disbursements include, among other things, costs for travel, business meals, messengers, couriers, expert consulting services, information technology services and witness fees and other fees related to trials and hearings.

17.     McKee has agreed to accept as compensation such sums as may be allowed by the Court on the basis of the professional time spent, the rate charged for such services, the necessity of such services to the administration of the estate, the reasonableness of the time within which the services were performed in relation to the results achieved and the complexity, importance and nature of the problems, issues or tasks addressed. McKee intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in connection with its engagement in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Orders of this Court. McKee will seek compensation for the hourly rates set forth above, subject to periodic increases in the normal course of the firm's business, often due to the increased experience of a particular professional. McKee will seek compensation for the services of each attorney and paraprofessional acting on behalf of the Debtors at the then-current rate charged for such services, as set forth above.

18.     No promises have been received by McKee, or any attorney of the firm, as to payment or compensation for this case other than in accordance with the provisions of the Bankruptcy Code. McKee has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under § 504(b)(1) of the Bankruptcy Code.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration was executed on October 8, 2008.

/s/ Rajiv Madan
Rajiv Madan, Esq.
Partner
McKee Nelson LLP

## **Exhibit B**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
                                                        :

In re:                                         :          Chapter 11 Case No.
                                              :

LEHMAN BROTHERS HOLDINGS INC., et al. :     08-13555 (JMP)
                                            :

                Debtors.              :          (Jointly Administered)
                                              :
-------------------------------------------------------------------------X

## ORDER GRANTING APPLICATION OF
## THE DEBTORS PURSUANT TO § 327(e) AND § 328(a) OF THE
## BANKRUPTCY CODE FOR AUTHORIZATION TO EMPLOY, *NUNC PRO TUNC*,
## McKEE NELSON LLP AS SPECIAL TAX COUNSEL

Upon consideration of the Application of Lehman Brothers Holdings Inc. ("LBHI") and

its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors"), pursuant

to § 327(e) and § 328(a) of the Bankruptcy Code for Authorization to Employ, *Nunc Pro Tunc*,

McKee Nelson LLP as Special Tax Counsel (the "Application"); and upon the declaration of

Rajiv Madan, Esq. (the "Madan Declaration"), which is annexed to the Application; and the

Court being satisfied, based on the representations made in the Application and the Madan

Declaration, that McKee Nelson LLP ("McKee" or the "Firm") represents no interest adverse to

the Debtors or the Debtors' estates with respect to the matters upon which it is to be engaged,

under section 327 of the Bankruptcy Code as modified by section 1107(b); and the Court being

satisfied, based on the representations made in the Application and the Madan Declaration, that

the employment of McKee is necessary and would be in the best interests of the Debtors and

their estates; and it appearing that the Court has jurisdiction to consider the Application; and it

appearing that due notice of the Application has been given and no further notice need be given;

and upon the proceedings before the Court; and good and sufficient cause appearing: and after

due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is approved; and it is further

ORDERED that, pursuant to sections 327(e) and 328(a) of the Bankruptcy Code, the Debtors are authorized to employ and retain McKee as special tax counsel to the Debtors, effective as of the Commencement Date, for the matters identified in the Application in accordance with McKee's normal rates in effect from time to time and its disbursement policies; and it is further

ORDERED that McKee shall be compensated in accordance with the substantive standards set forth in section 328(a) of the Bankruptcy Code and shall file applications in compliance with the Bankruptcy Code, applicable Federal Rules of Bankruptcy Procedure, local rules of the Court and such other procedures as may be fixed by order of this Court.

Dated: November __, 2008
       New York, New York

_____
THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE