Hearing Date: October 16, 2008 at 10:00 a.m. EST

Howard J. Weg (Cal. State Bar No. 91057)
David B. Shemano (DS 1224)
PEITZMAN, WEG & KEMPINSKY LLP
10100 Santa Monica Blvd., Suite 1450
Los Angeles, CA  90067
Tel. (310) 552-3100
Fax. (310) 552-3101

Rosanne Thomas Matzat (RM-6937)
HAHN & HESSEN LLP
350 Fifth Avenue
New York, New York 1018
212-736-1000

Attorneys for Avista Corporation and Powerex Corp.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| LEHMAN BROTHERS HOLDINGS INC., et al. ) | No. 08-13555 (JMP) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |

**RESPONSE OF AVISTA CORPORATION AND POWEREX CORP.
TO DEBTORS' MOTION FOR AUTHORIZATION TO CONTINUE USING
<u>EXISTING CASH MANAGEMENT SYSTEM AND OTHER RELIEF</u>**

Avista Corporation and Powerex Corp. (collectively, the "Interested Parties"), hereby submit their response to the motion of the above-captioned debtors (the "Debtors") for authorization to continue using their existing cash management system and other relief (the "Motion").

# I.

## THE CLAIMS OF THE INTERESTED PARTIES

Avista Corporation ("Avista") and Lehman Brothers Commodity Services, Inc. ("LBCS") are parties to the Western Power Pool Agreement (the "Pool Agreement") and engaged in series of trading transactions pursuant to the Pool Agreement. Pursuant to a separate guaranty, Lehman Brothers Holdings, Inc. ("LBHI") guaranteed the obligations of LBCS. As a result of the bankruptcy filing by LBHI, Avista terminated all pending transactions with LBCS effective September 16, 2008. On September 17, 2008, Avista delivered a demand to LBCS for payment of a termination amount of $3,478,931. Avista has not received any payment from LBCS.

Powerex Corp. ("Powerex") and LBCS are parties to a certain ISDA Master Agreement (the "Powerex Master Agreement") and engaged in series of trading transactions pursuant to the Powerex Master Agreement. Pursuant to a separate guaranty, LBHI guaranteed the obligations of LBCS. As a result of the bankruptcy filing by LBHI, Powerex terminated all pending transactions with LBCS effective September 16, 2008. On September 18, 2008, Powerex delivered a demand to LBCS for payment of a termination amount of $4,792,665.98. Powerex has not received any payment from LBCS.

# II.

## THE MOTION SHOULD NOT BE GRANTED UNLESS AND UNTIL THE DEBTORS PROVIDE INFORMATION CONCERNING INTERCOMPANY TRANSFERS

From the commencement of the LBHI case on September 15, the Interested Parties repeatedly attempted to obtain information from one or more individuals at LBHI, LBCS, or Lehman Brothers Special Finance Inc. ("LBSF"), which is the parent of LBCS, concerning the

status of their contracts, collateral and transactions with LBCS and/or LBSF, especially with respect to intercompany transfers of cash and collateral provided by counter-parties to trading transactions. The efforts of the Interested Parties to obtain any, let alone responsive, information were met with either silence or a statement that no information could be provided.

The Interested Parties expected that if and when the Debtors filed a cash management motion, the Debtors would adequately address issues concerning intercompany transfers, including the status of prior transfers or cash and collateral, and the consequences of future transfers of cash and collateral. Unfortunately, while the Motion discloses that intercompany transfers occurred and requests that such transfers be permitted to continue to occur, the Motion is devoid of any detail that would allow the Court and creditors to consider the consequences of the Motion, let alone any demonstration that the Debtors maintain verifiable documentation, controls and supervision regarding past transfers and proposed future transfers that will ensure that creditors will not be prejudiced by the continued intercompany transfers.

Most significantly, Paragraph 16 of the Motion discloses that if an Unregulated Subsidiary such as LBCS or LBSF had excess cash at the end of a day, the excess cash would be swept into an LBHI account. As creditors of LBCS, the Interested Parties are very interested in what cash and other assets of LBCS and LBSF may have been transferred and are proposed to be transferred to other entities. At minimum, to consider the consequences of the Motion, the Debtors should be required to answer the following fundamental questions:

1. What were the intercompany receivables between LBCS and LBSF and other Lehman entities on September 15?

2. How much cash was in the LBCS and LBSF accounts on September 15?

3. How much cash was swept from the LBCS and LBSF accounts from September 15 through October 3?

4. What were the intercompany receivables between LBCS and LBSF and other Lehman entities on October 3?

5. How much cash was in the LBCS and LBSF accounts on October 3?

6. How much cash has been swept from the LBCS and LBSF accounts since October 3?

7. What are the existing intercompany receivables between the entities?

8. What accessible records exist that document past intercompany transfers and when will creditors have access to the records?

9. Who will be supervising future intercompany transfers and what records will be maintained? When will creditors have access to the supervising individuals and the records?

Furthermore, the Debtors cavalierly represent that postpetition intercompany receivables will be accounted for and entities holding the intercompany claims will be entitled to an administrative expense claim under section 503(b). However, what if a secured creditor holds a security interest in the assets of the entity that owes the intercompany receivable (presumably LBHI)? Will that secured creditor have the right to assert a lien on the newly received assets and thereby have the right to preclude payment of this administrative expense? What if cash is swept and transferred to a bank account in which the depository institution has the right to exercise a

setoff? Will the setoff right be subordinate to the administrative expense claim?

The Interested Parties very much appreciate that the bankruptcy filings have created very unique burdens on the Debtors and that granting the Motion may help to ease the administrative burden on the Debtors. However, the Debtors should be required to answer fundamental questions raised by the Motion as a condition to receiving the requested relief.

### III.

### CONCLUSION

For all the foregoing reasons, the Interested Parties request that the Court deny the Motion unless the Debtors adequately answer the fundamental questions set forth above that are raised by the Motion.

Dated: Los Angeles, California
   October 14, 2008

**PEITZMAN, WEG & KEMPINSKY LLP**
Attorneys for Avista Corporation and
Powerex Corp.

By:  /s/ David B. Shemano
    David B. Shemano (DS 1224)
    10100 Santa Monica Blvd.
    Suite 1450
    Los Angeles, California 90067
    (310) 552-3100

    and

Dated: New York, New York
      October 14, 2008

**HAHN & HESSEN LLP**
Attorneys for Avista Corporation and
Powerex Corp.

By:   /s/ Rosanne Thomas Matzat
      Rosanne Thomas Matzat (RM-6937)
      350 Fifth Avenue
      New York, New York 1018
      212-736-1000