**BINGHAM McCUTCHEN LLP**
399 Park Avenue
New York, NY 10022
(212) 705-7000
Jeffrey S. Sabin
Ronald J. Silverman
Sabin Willett, *admitted pro hac vice*
Rheba Rutkowski, *admitted pro hac vice*

Counsel to Harbinger Capital Partners Special
Situations Fund, L.P. and Harbinger Capital
Partners Master Fund I, Ltd. (f/k/a Harbert
Distressed Investment Master Fund Ltd.)

Hearing Date: October 16, 2008, 10:00 a.m.
Objection Deadline: October 14, 2008, 5:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
In re                                              :    Chapter 11
:
LEHMAN BROTHERS HOLDINGS INC., *et al.,*           :    Case No. 08-13555 (JMP)
:
Debtors.                         :    (Jointly Administered)
:
---------------------------------------------------------------x

**LIMITED OBJECTION OF THE HARBINGER FUNDS TO DEBTORS' MOTION
PURSUANT TO SECTIONS 105(A), 345(B), 363(B), 363(C) AND 364(A) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 6003 AND 6004 (A) FOR
AUTHORIZATION TO (I) CONTINUE USING EXISTING CENTRALIZED CASH
MANAGEMENT SYSTEM, AS MODIFIED, (II) HONOR CERTAIN PREPETITION
OBLIGATIONS RELATED TO THE USE OF THE CASH MANAGEMENT SYSTEM,
AND (III) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS; (B)
FOR AN EXTENSION OF TIME TO COMPLY WITH SECTION 345(B) OF THE
<u>BANKRUPTCY CODE; AND (C) TO SCHEDULE A FINAL HEARING</u>**

Harbinger Capital Partners Special Situations Fund, L.P. and Harbinger Capital Partners Master Fund I, Ltd., f/k/a Harbert Distressed Investment Master Fund, Ltd., (collectively, the "<u>Harbinger</u> <u>Funds</u>") submit this limited objection to the Debtors' Motion pursuant to sections 105(a), 345(b), 363(b), 363(c) and 364(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 (A) for authorization to (i) continue using existing centralized cash management system, as modified, (ii) honor certain prepetition obligations related to the use of the cash

A/72686565

management system, and (iii) maintain existing bank accounts and business forms; (B) for an extension of time to comply with section 345(b) of the Bankruptcy Code; and (C) to schedule a final hearing (the "Cash Management Motion"). In support of this objection, the Harbinger Funds state as follows:

1. The Harbinger Funds are substantial creditors of Lehman Brothers Holdings Inc. ("LBHI"). They are obligees under counterparty arrangements with Lehman Brothers Special Financing Inc. ("LBSF"). LBSF has substantial indebtedness to the Harbinger Funds, in the amount of $269,051,317 million[1], pursuant to certain International Swap Dealers Association, Inc. ("ISDA") swap agreements, including that certain Master Agreement dated as of July 28, 2006 by and between LBSF and Harbinger Capital Partners Special Situations Fund, L.P., and that certain Master Agreement dated as of May 20, 2005 by and between LBSF and Harbinger Capital Partners Master Fund I, Ltd. (f/k/a Harbert Distressed Investment Master Fund, Ltd.). That indebtedness is, in turn, guaranteed by LBHI.[2]

2. The Cash Management Motion was filed on October 3, 2008. It requests (*inter alia*) "authority to continue to operate the Cash Management System, including to fund the operations of the Debtors and other Lehman entities in which the Debtors have an interest in the ordinary course of business, consistent with their prepetition practices, as modified herein, (ii) authority to honor certain prepetition obligations related to the use of the Cash Management System, (iii) authority to maintain existing business forms, (iv) an extension of time to comply

---

[1] This figure is exclusive of accrued interest, expenses and other costs and charges (whether arising by contract, applicable law or otherwise) and the Harbinger Funds reserve the right to revise this figure in the future.

[2] LBHI executed guarantees that unconditionally guaranteed "the due and punctual payment of all amounts payable" by LBSF to the Harbinger Funds under the swap agreements. *See* Guarantee at ¶ A (Exhibit A to ISDA Agreement).

with section 345 of the Bankruptcy Code, and (iv) to schedule a final hearing granting the relief requested herein on a final basis." Cash Management Motion ¶ 8.

3.     Cash management motions are common where an operating debtor group intends to continue pre-petition business operations in the post-petition period.  Ordinarily these orders assist affiliated debtors to avoid disruption in customer relations, accounting function, business operations, and banking.  Here, we understand that the Debtors have ceased all but certain discrete operations in the process of sale.  The major cash entities, the U.S. and European broker-dealers, are no longer part of the estates, and other significant entities are slated for sale.  Their banks have frozen accounts.  Thus, at the outset, the Debtors have not explained why cash-management relief is appropriate in the present circumstances.  Indeed, certain of the relief they seek seems to be (an appropriate) *departure* from the pre-petition regime -- such as, for example, the use of Lehman Brothers, Inc. ("LBI") as a pass-through in matters related to closing the Barclays transaction,  *see* Cash Management Motion ¶ 29, and the establishment of *new* payroll accounts, *Id*. ¶ 30.

4.     One indicator of the need for cash-management relief is timing.  Typically the motion is filed in the first-day suite of motions, because of the debtor's urgent desire to avoid disruption in its operations.  Here, the Cash Management Motion was not filed until 19 days after LBHI's chapter 11 case had been commenced, and after its most substantial operation had been sold.

5.     Another unusual feature of these chapter 11 cases is the wholesale departure of senior personnel, including accounting personnel.  The Debtors advise that they are now largely reliant on professionals at Alvarez & Marsal.  Given the disruption that already exists in the accounting function, and the absence of significant ongoing customer relations, it is not at all

apparent what purpose will be served by continuing the pre-petition cash-management regime. There may be legitimate explanations, at least as to the need for some relief, related to some accounts and some entities. While the Debtors provide information about various of their systems pre-petition, they do not explain which of these would survive the SIPA trusteeship, the Barclays sale, and the other slated sales.

6. During the first three weeks of these cases, many creditors, including the Harbinger Funds advised the Debtors of concerns directly related to pre-petition, inter-Debtor cash-management. The opacity of an apparent multi-billion dollar sweep of cash and cash equivalents just prior to chapter 11 was central. The Cash Management Motion, with its continuing lack of disclosure (discussed below), reinforces, rather than allays initial concerns that movements of cash may impair certain estates at the expense of others.

7. It is not clear from the Cash Management Motion which Lehman entities will continue to be funded under the cash management system. *See* Cash Management Motion ¶ 37. The Debtors must clearly identify all such entities and explain the business reasons why the pre-petition regime continues to be necessary today.

8. The Harbinger Funds contacted counsel for the Committee of Unsecured Creditors (the "Creditors' Committee"), to ascertain whether the objections set forth below will be addressed, either through a formal objection or negotiations. As of the filing of this objection, we understand negotiations between Milbank, Tweed and Debtors' counsel are continuing. It is necessary to file this objection in order to preserve the rights of the Harbinger Funds. Prior to the hearing of the Cash Management Motion on October 16, 2008, the Harbinger Funds will ascertain whether the efforts, or position of the Creditors' Committee have resolved their objections in whole or in part.

9.      To ensure the sufficient protection of creditor rights, the Debtors must be required to provide additional information with respect to the pre-petition cash management system and the proposed modifications to that system to be adopted in the post-petition environment. Furthermore, certain modifications to the relief sought in the Cash Management Motion are necessary.

*(i)     The Debtors must be required to explain the post-petition cash-management regimen and how it will operate to protect creditor rights.*

10.     We need to begin with basics. Which components of the pre-petition cash-management regime will be carried into the post-petition chapter 11 cases? What operations or other administrative needs are served by the continuation of those arrangements? On these basic points, no substantive disclosure has been provided.

11.     The Cash Management Motion refers to the Debtors' cash management system as constituting "ordinary course, essential business practices providing significant benefits to the Debtors". Cash Management Motion ¶ 33. The Debtors request authority to continue utilizing the system and to maintain "Bank Accounts" (as defined) in the ordinary course of business. Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The Cash Management Motion is silent on the nature of post-petition transfers to be made in the ordinary course of business. We understand that some Debtors have no further operations and are in the process of selling off assets. Which non-debtor affiliates (or recently filed debtors) are continuing operations that would fall within the cash-management regimen is undisclosed. It is essential that the Debtors be required to explain, with sufficient particularity, the uses for which intercompany transfers have been made in the post-petition period, and will continue to be made.

12. We understand that there is a substantial cutover between former management and the Alvarez & Marsal personnel serving as the current stewards of the estates. With the commencement of SIPA proceedings and the sale to Barclays it would appear that the lion's share of pre-petition cash-management arrangements will have terminated. What arrangements are to continue, and why, are not explained. One firm serves as counsel to the debtors in possession, and only one statutory committee has been appointed for the Debtors. The Debtors do not disclose how cash-management transfers will be monitored so as to protect the rights of the various discrete debtors. In other megacases in this district, inter-debtor cash-management issues have sometimes been thought appropriate for examiner review.[3] The Harbinger Funds have not sought that relief, but do request that sufficient disclosure and protections be put in place to protect the legitimate concerns of creditors.

*(ii)   The Cash Management Motion provides no protections at all for transactions with non-Debtors.*

13. The Cash Management Motion provides that the "prepetition intercompany accounts between each Debtor and each other entity will be frozen (i.e. the books will be closed) as of the applicable Commencement Date. Postpetition intercompany movement of cash and collection/disbursement activity will be accounted for in the same manner as it was prepetition under the supervision of Alvarez & Marsal. In addition, entities with postpetition intercompany receivables from the Debtors will be entitled to an administrative expense claim under section 503(b)(1) of the Bankruptcy Code in the same manner as other creditors that extend credit to the

---

[3] *See generally In re Enron Corp., et al.*, USDC SDNY Bankr. No. 01-16834 (AJG), Interim Cash Management Report of Harrison J. Goldin, the Court-Appointed Examiner in the Enron North America Corp. Bankruptcy Proceeding (Dkt. No. 2867, filed April 9, 2002).

Debtors postpetition." Cash Management Motion ¶ 32. This entitlement should be expanded to include such other protections as the factual disclosure shows to be necessary.

14.     There are no similar protections with respect to post-petition transfers from a Debtor to a non-Debtor entity. To the extent the disclosure sought above shows such transfers appropriate, the cash-management arrangement should include orders that (a) any such post-petition transfer to a non-Debtor include the grant of a security interest (sufficient to satisfy the underlying claim associated with the transfer) by the non-Debtor in favor of the Debtor (transferor); and (b) a representation from the Chief Restructuring Officer that s/he believes the transfer will be fully repaid in accordance with its terms.

*(iii)    The Debtors have made no disclosure as to the apparent multi-billion dollar sweep of cash and cash equivalents to LBHI and between Lehman group affiliates just prior to commencement of the chapter 11 cases.*

15.     Cash-management issues cannot be understood without some disclosure of the pre-petition transfers that have been the subject of requests for information from the Debtors. The Court is familiar with the issue through the motions and oppositions seeking Rule 2004 examinations. A recent press account has revealed that the Lehman board signed off on more than $100 million (£59 million) in payouts to five top executives just three days prior to the commencement of LBHI's chapter 11 case. The payoffs, approved on September 12, 2008 by Lehman's compensation committee, included over $24 million in severance packages to the collapsed firm's top three London executives.[4] The separate motion for Rule 2004 discovery filed by the Harbinger Funds (Dkt. No. 373 and Dkt. No. 816) is seeking to verify the accuracy

---

[4] *See* Danny Fortson and Maurice Chittenden, *Failing Lehman in $100m Payout Plan*, The Sunday Times (London), October 12, 2008.

of this account, however, it is also imperative to ensure that the Cash Management Motion does not operate so as to ratify or otherwise protect such pre-petition payout approval.

*(iv)    The Cash Management Motion (and any orders made thereunder) must not be taken to ratify or otherwise protect any pre-petition transfers.*

16.    Any order approving cash-management arrangements should confirm there is no ratification or other protection given with regard to pre-petition, or non-ordinary-course and unapproved post-petition transfers involving the Debtors.

## REQUEST FOR WAIVER OF MEMORANDUM OF LAW

17.    As there are no novel issues of law presented, the Harbinger Funds respectfully request that the Court waive the requirement that the Harbinger Funds file a memorandum of law in support of this Limited Objection pursuant to Local Bankruptcy Rule 9013-1(b).

## CONCLUSION

For the foregoing reasons, the Harbinger Funds respectfully request that the Court (i) modify the Debtors' draft interim order (that accompanied the Cash Management Motion) to take account of the objections set forth above; and (ii) grant such other, further relief as the Court deems just and proper.

Dated: New York, New York
October 14, 2008

**BINGHAM McCUTCHEN LLP**

By: /s/ Ronald J. Silverman
Jeffrey S. Sabin
Ronald J. Silverman
Sabin Willett, *admitted pro hac vice*

Rheba Rutkowski, *admitted pro hac vice*
399 Park Avenue
New York, New York 10022
Telephone No.: (212) 705-7000
Facsimile No.: (212) 752-5378

*Counsel to Harbinger Capital Partners Special Situations Fund L.P. and Harbinger Capital Partners Master Fund I, Ltd. (f/k/a Harbert Distressed Investment Master Fund Ltd.)*