**BINGHAM McCUTCHEN LLP**
399 Park Avenue
New York, NY 10022
(212) 705-7000
Jeffrey S. Sabin
Ronald J. Silverman
Sabin Willett, *admitted pro hac vice*
Rheba Rutkowski, *admitted pro hac vice*

Counsel to Harbinger Capital Partners Special
Situations Fund, L.P. and Harbinger Capital
Partners Master Fund I, Ltd. (f/k/a Harbert
Distressed Investment Master Fund Ltd.)

Hearing Date: October 16, 2008 at 10:00 a.m.
Objection Deadline: October 13, 2008 at 4:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                              :
In re                                         :    Chapter 11
                                              :
LEHMAN BROTHERS HOLDINGS INC., *et al.,*      :    Case No. 08-13555 (JMP)
                                              :
                              Debtors.        :    (Jointly Administered)
                                              :
---------------------------------------------------------------x

**REPLY OF THE HARBINGER FUNDS TO DEBTORS' OBJECTION TO
RULE 2004 DISCOVERY OF DEBTOR LEHMAN BROTHERS HOLDINGS INC.**

Harbinger Capital Partners Special Situations Fund, L.P. and Harbinger Capital Partners Master Fund I, Ltd., f/k/a Harbert Distressed Investment Master Fund, Ltd., (collectively, the "Harbinger Funds") reply to the Debtors' Objection to Rule 2004 discovery [Dkt. No. 837].

1. On September 26, 2008, the Harbinger Funds filed their Motion for Leave to Conduct Rule 2004 Discovery of Debtor Lehman Brothers Holdings Inc. (the "2004 Motion") [Dkt. No. 373]. On October 10, the Harbinger Funds filed a supplement to the 2004 Motion, significantly narrowing the discovery sought ("Supplement") [Dkt. No. 816]. All reasonable burden objections were addressed by the Supplement.

2. We are almost a month into these chapter 11 cases. Scores of professionals are

A/72687391

devoting thousands of hours a week to the matter. Yet the facts concerning the apparent eve-of-bankruptcy movement of $8 billion in cash or securities remain a secret so closely guarded that the Debtors have devoted their senior lawyer and financial advisor to its defense.

3. Whether the smoke of press accounts denotes the fire of facts or something else is the question raised by discovery and incapable of answer without it. What we do know of the smoke is that there is more of it. Over the weekend, the Times of London reported that more than $100 million in bonus payments to insiders were either inked or possibly *paid* on or about September 12, 2008 (the article is unclear as to whether payments were actually made). *See* **Exhibit A** hereto. For obvious reasons, such payments, if made to individuals, would be at high risk of dissipation or transfer beyond effective recovery.

4. Rule 2004 discovery is often granted without any showing at all. A series of plausible public accounts, of which this is only the latest, is certainly enough on which to base a limited inquiry.

5. Harbinger has been criticized for not explaining what the discovery has to do with its particular claims against Lehman Brothers Holdings Inc. ("LBHI"), and then criticized for pursuing claims-related discovery under Rule 2004. Putting aside their incoherence, each of these criticisms is wrong. Eight billion dollars in affiliate transfers on the eve of a chapter 11 filing would be of the essence of information broadly significant to the administration of the cases.[1] Information on the subject would lead wherever it leads, which may be to the benefit or detriment of specific creditor claims.

6. Rule 2004 discovery would make this information available to all creditors.

---

[1] Similar circumstances in the Enron case led to the appointment of an examiner. *See generally In re Enron Corp., et al.*, USDC SDNY Bankr. No. 01-16834 (AJG), Interim Cash Management Report of Harrison J. Goldin, the Court-Appointed Examiner in the Enron North America Corp. Bankruptcy Proceeding (Dkt. 2867, filed April 9, 2002).

A/72687391                                2

Indeed, *all* Rule 2004 discovery which the Court may permit (other creditors, and the Committee itself, have requested such relief) should be made available to creditors generally, except where a showing is made as to a genuine proprietary reason for confidentiality.[2]

7. The Debtors have deflected us to the SIPA Trustee. The Harbinger Funds have asked the Trustee's counsel if he now has better access to LBHI's information than LBHI has itself. But that is no excuse for the Debtors' refusal to make basic disclosures. If it really is the case that LBHI has no idea what happened to $8 billion and no way to know, we may need more serious relief, and in any case the time has come to start with deposition testimony.

8. No showing has been made that the information sought could possibly be considered confidential. It is essential that it be made available to creditors.

9. At the outset of this dispute, the Court directed the parties to explore compromise. The Harbinger Funds convened a conference call, exchanged correspondence, and unilaterally reduced the scope of their requests. We have received no substantive response from the Debtors, other than dudgeon and the invitation to go away. It appears that we can obtain no information at all unless the Court intervenes.

10. There is considerable dissonance in the Debtors' positions as to cash management and the 2004 Motion. In opposition to *this* motion, the Debtors say that they have lost key personnel and cannot, even after 30 days, provide the basic entity-transfer information sought by our supplement. At the same time the Debtors have sought entry of cash management relief that requires, among other showings, that they fully understand and demonstrate the pre-petition cash

---

[2] As an example of matters in which confidentiality may be appropriate, the Harbinger Funds note that a sealing order was sought with regard to certain schedules to the Barclays Capital sale. We understand that those schedules set out trading positions, and that competitive advantage might be gained by creditors competing in the trading marketplace. The Harbinger Funds agree that that sort of information may well be appropriate for confidentiality, and accordingly have not challenged the sealing order. However, broad eve-of-bankruptcy movements of cash and other value between estates of debtors should not be granted confidentiality.

management systems to be preserved. To explain how they will continue to operate in the post-petition period, they will need at least to understand how they operated on the weekend prior to the first chapter 11 filing. The Debtors note that they depend on Alvarez & Marsal here; yet it appears that Alvarez & Marsal is to provide the cash management showing. Either Alvarez & Marsal has, after thirty days, uncovered reliable data and achieved a good understanding of how the systems worked in the pre-petition period (as seems highly likely), and therefore can respond to our discovery request, or the debtors are not in a position to demonstrate that cash management relief is appropriate.

11.    The Official Committee of Unsecured Creditors (the "Committee") has filed an objection to the 2004 Motion ("Committee Objection") [Dkt. No. 869]. The 2004 Motion and numerous joinders illustrate the broad need for disclosure on the subject of the 2004 Motion. The Committee itself notes that the issues "plainly warrant investigation." Committee Objection at ¶ 4.

12.    The Harbinger Funds have no objection to the provision of the discovery they seek by the Debtors to the Committee, and thence to such interested creditors as wish to see it. But there are two problems. First, the Debtors' assertions as to inaccessibility of information, although implausible, suggest that the Committee must not have received the information sought in the 2004 Motion.[3] Second, the Committee provides no details as to its investigation -- what information it has sought, and when it would receive that information. In addition, it is essential that paragraph 3 of the Stipulation and Agreed Order Between the Debtors and the Official Committee of Unsecured Creditors Regarding Creditor Access to Information dated October 1, 2008 be strictly enforced at all times to ensure the Harbinger Funds receive all such information,

---

[3] *See* Debtors' Cash Management Motion dated October 3, 2008 at ¶ 7 [Dkt. No. 669].

even where it is provided to the Committee informally.

13. Subject to the proviso set forth in the preceding paragraph, the Harbinger Funds do not object to the Committee having the lead role at deposition, with the Harbinger Funds and other creditors inquiring only as needed.

WHEREFORE, the Harbinger Funds request that the Court (i) grant the 2004 Motion (as supplemented) in its entirety; and (ii) grant such other, further relief as the Court deems just and proper, including an order permitting the Harbinger Funds access to relevant discovery obtained by the Committee and to participate as necessary at deposition. In the event any responsive information is channeled through the Committee, it should be disclosed by the Committee to the creditors generally.

Dated: New York, New York
October 14, 2008

**BINGHAM McCUTCHEN LLP**

By: /s/ Ronald J. Silverman
Jeffrey S. Sabin
Ronald J. Silverman
Sabin Willett, *admitted pro hac vice*
Rheba Rutkowski, *admitted pro hac vice*
399 Park Avenue
New York, New York 10022
Telephone No.: (212) 705-7000
Facsimile No.: (212) 752-5378

*Counsel to Harbinger Capital Partners Special Situations Fund L.P. and Harbinger Capital Partners Master Fund I, Ltd. (f/k/a Harbert Distressed Investment Master Fund Ltd.)*