# EXHIBIT 1

## UNSECURED CONTINUING REIMBURSEMENT AGREEMENT

*6/5/08*
*KGF*

# LEHMAN BROTHERS

UNSECURED CONTINUING REIMBURSEMENT AGREEMENT

June 5, 2008

Lloyds TSB Bank plc
1251 Avenue of the Americas, 39th Floor
New York, NY 10020
Fax: 212-930-5098

Attention: Letters of Credit

Ladies and Gentlemen:

In consideration of your issuance from time to time of one or more standby letters of credit, undertakings, bid or performance bonds or other similar instruments or, at Bank's option, any pre-advice thereof (each a "**Credit**" and, collectively, the "**Credits**") from time to time by order or for the account of **Lehman Brothers Holdings Inc.**, a corporation organized under the laws of the State of Delaware ("**Lehman**"), Lehman hereby agrees (and by your countersignature of the enclosed copy of this Agreement you agree) as follows:

1. Definitions. The following terms shall have the meanings set forth below:

(a) "**Application**" means the application for a Credit submitted by Lehman pursuant to Section 2 hereof, as such Application may be amended or modified from time to time in accordance with this Agreement, signed by [one][two] or more persons that the Bank reasonably believes in good faith to be Authorized Persons.

(b) "**Authorized Person**" means any officer, director or employee of Lehman authorized to provide Instructions on behalf of Lehman with respect to this Agreement, any Application or Credit hereunder or any Instrument or document pertaining thereto or hereto, as evidenced by a Secretary's Certificate of Lehman delivered to Bank (which may be modified by Lehman from time to time by delivery of similar Secretary's Certificate).

(c) "**Bank**" means Lloyds TSB Bank plc, an English Banking Corporation,.

(d) "**Bank Indemnified Person**" and "**Lehman Indemnified Person**" have the meanings ascribed to them in Section 8 hereof.

(e) "**Federal Funds Rate**" for any day will be the rate for Federal Funds as published in H.15 (519) under the heading "Federal Funds (Effective)," as this rate is displayed on the Bridge Telerate, Inc. on page 120, or any successor service or page ("Telerate Page 120") on such day or if such day is not a business day, for the next preceding business day; provided however that if such rate is not displayed for any day which is a business day, then the "Federal Funds Rate" will the rate which the Bank determines to be its overnight cost of funds for such day..

(f) "**Instructions**" means oral or written instruction(s) given or transmitted (by telephone or letter or by facsimile, SWIFT, tested telex or such other authenticated electronic transmission system agreed upon in writing by both parties) on behalf of Lehman by one or more persons that the Bank reasonably believes in good faith to be Authorized Persons. Before acting on any Instructions transmitted by telephone or facsimile (promptly after receipt of such Instructions), the Bank will confirm such Instructions by calling and receiving the authorization of a confirming representative who is an Authorized Person but separate from the originating caller or the signing parties.

(g) "**Instrument**" means any draft, or electronically transmitted acceptance or other written or electronically transmitted demand or claim for payment under a Credit.

(h) "**Uniform Customs and Practice**" means the Uniform Customs and Practice for Documentary Credits (1993 Revision), International Chamber of Commerce Publication No. 500, and any subsequent revision thereof on the date the Credit is issued.

2. **Applications for the Issuance, and Issuance, of Credits.** Lehman shall request the issuance of a Credit pursuant to this Agreement by submitting a completed Application for such Credit. Unless agreed otherwise, each Application for a Credit shall be in the form of Annex I hereto. Each Application shall constitute a certification by Lehman that (a) each representation, warranty or commitment made by Lehman in this Agreement is true and correct as of the date of such Application and (b) no Event of Default has occurred and is continuing or would result from the issuance of the Credit set forth in the Application. The issuance of any requested Credit hereunder shall be solely within the discretion and at the option of Bank.

3. **Payment Terms.** (a) Lehman will pay Bank, on demand, in immediately available funds at the New York Branch of the Bank or as specified by the Bank:

(i) any amount paid by Bank on an Instrument; provided that if the Instrument is in non-United States currency ("foreign currency"), Lehman shall pay the United States dollar equivalent of the amount paid by the Bank on such Instrument computed at Bank's then current selling rate for cable transfers of such foreign currency to the place of payment of such Instrument on the date of payment, or of Bank's settlement of its obligation, as Bank may require; provided, further, that if, for any reason, Bank has no selling rate for cable transfers of such currency to such place on the date of payment or settlement, as the case may be, Lehman will pay Bank on demand an amount in United States currency equivalent to Bank's actual cost of settlement of its obligation however or whenever Bank shall make such settlement;

(ii) interest on each amount to be paid by Lehman under Section 3(a)(i) for each day from but excluding the date such amount is paid by Bank on an Instrument through the date of payment by Lehman to the Bank, at a rate per annum equal to Bank's "prime" lending rate as established from time to time to be in effect at its principal office in New York City plus two percent (2%);

(iii) Bank's commission and fees for issuance and maintenance of each Credit hereunder, which shall be as specified in Annex II hereto; and

(iv) all charges, costs, expenses, liabilities and obligations paid or incurred by Bank or its correspondents or for which Bank or its correspondents may become liable, including the reasonable fees and charges of outside counsel, in connection with the enforcement of any of Bank's remedies under this Agreement, with interest, from but excluding the date paid or incurred through the date of payment by Lehman, at the rate per annum referred to in Section 3(a)(ii) hereof. Any payment received by the Bank hereunder after 3:00p.m. on any business day shall be deemed to be received, for the purpose of calculating interest, on the next succeeding business day. "Business day" means a day other than a Saturday, Sunday or a day on which the New York Branch of the Bank is authorized or required by law or official proclamation to remain closed.

(b) If, as a result of the implementation of the European Monetary Union, (i) any currency ceases to be lawful currency of the nation issuing the same and is replaced by a European common currency, or (ii) any foreign currency and a European common currency are at the same time recognized by the central bank or comparable authority of the nation issuing such foreign currency as lawful currency of such nation and Bank shall so request in a notice delivered to the Lehman, then any amount payable hereunder by Lehman in such foreign currency shall instead be payable in the European common currency, and the amount so payable shall be determined by translating the amount payable in such foreign currency to such European common currency at the exchange rate recognized by the European Central Bank for the purpose of implementing the European Monetary Union. Prior to the occurrence of the event or events described in clause (i) or (ii) of the preceding sentence, each amount payable under Credits in any foreign currency will continue to be payable only in that foreign currency.

(c) All payments hereunder shall be made free and clear of and without deduction for any present or future taxes, levies, imposts, deductions, charges, withholdings, setoff and all liabilities with respect thereto, other than

franchise taxes and taxes imposed on or measured by Bank's net income by the jurisdiction (or any political subdivision thereof) under the laws of which Bank is organized or maintains a lending office ("Bank Taxes"). Lehman shall pay all withholding, stamp and other taxes or duties imposed by any taxing authority on payments under the Credits and this Agreement (other than Bank Taxes, which shall be withheld and deducted from such payments and paid to the relevant taxing authority by Lehman as required by law) and shall indemnify Bank against all liabilities, costs, claims, and expenses resulting from any omission to pay or delay in paying any such duty or tax (other than Bank Taxes).

(d) Lehman's payment obligations under this Section 3 are absolute, unconditional and irrevocable and shall be performed strictly in accordance with the terms of this Section irrespective of (i) any lack of validity, enforceability or legal effect of any Credit or this Agreement, or any term or provision therein or herein or in any Instrument or other document relating hereto or thereto, (ii) the sufficiency, genuineness or form of any such Instrument or document or the identity of any signer thereto(unless the Bank has committed gross negligence or engaged in willful misconduct), (iii) the authority of any signer of any such Instrument or document, (iv) any inaccuracy or misstatement or omission (other than an omission of information expressly required by the terms of the Credit) in any Instrument or other document presented under any Credit, (v) failure of any document (other than documents expressly required to be presented under such Credit) to accompany any Instrument at negotiation, or failure of any person to note the amount of any Instrument or draw under a Credit on the reverse of such Credit, or to surrender or take up a Credit or to forward documents apart from Instruments required by the terms of a Credit, (vi) Bank or any of its affiliates being the beneficiary of the Credit, (vii) honor of a presentation or other demand without regard to any nondocumentary condition(s) in the Credit; (viii) honor of a presentation or other demand up to the amount available under the Credit against a draft or other documents claiming amounts in excess of the amount available under the Credit; (ix) any release or amendment or waiver of or consent to departure from the terms of any guarantee, for all or any of Lehman's obligations, (x) Bank or any other Bank Indemnified Person accepting and/or making payment upon any Instrument or other document otherwise in order signed, or issued by, a person (or a transferee of such person) reasonably believed by the Bank to be a successor of the party authorized under a Credit to draw or issue such Instrument or other document, including, without limitation, an administrator, executor, trustee in bankruptcy, debtor in possession, assignee for the benefit of creditors, liquidator, receiver or other legal representative or successor by merger, consolidation or operation of law; or (xi) any other circumstance whatsoever in making any payment under any Credit which does not constitute the gross negligence or willful misconduct of Bank; or (xii) the occurrence of the events, circumstances or conduct set forth in Section 5(a).

(e) If any change in any law, regulation or regulatory guideline, or in the interpretation thereof by any court or administrative or governmental authority charged with the administration thereof shall either (i) impose on, modify or deem applicable to, the Bank any reserve, special deposit, capital adequacy or similar requirement or guideline against standby letters of credit issued by the Bank or (ii) impose on the Bank any other condition therefor, and the result of any event referred to in clause (i) or (ii) above shall be to increase, by an amount deemed by the Bank in its sole discretion to be material, the cost (other than an increase resulting from a change in any net income tax imposed upon the Bank) to the Bank of issuing or maintaining the Credit, then, within ten (10) days following demand by the Bank, accompanied by the certificate referred to in the following sentence, Lehman shall immediately pay to the Bank, from time to time as specified by the Bank, additional amounts which shall be sufficient to compensate the Bank for such increased cost. A certificate as to such increased cost incurred by the Bank as a result of any event mentioned in clause (i) or (ii) above, submitted by the Bank to Lehman and including a statement in reasonable detail as to the reason for and calculation of such increase, shall, absent manifest error, be conclusive as to the amount thereof

4. **Instructions.**    Notwithstanding anything to the contrary herein,

(a) the issuance of a requested Credit is solely within the discretion of Bank; Bank may, at its option refuse to act on any request without incurring any responsibility for any loss, liability or expense arising out of such refusal; and

(b) Bank shall be fully protected in, and shall incur no liability to Lehman for, acting upon any valid Instruction or Application for a Credit given or made as provided herein which Bank reasonably believes in good faith to have been given or made by an Authorized Person. Bank may, at its option, use any reasonable means of verifying any Instruction or communication received by it.

3

5. **No Liability.** (a) The parties hereto agree that in the absence of gross negligence or willful misconduct on the part of Bank (as finally determined by judicial proceeding pursuant to Section 11), Bank shall be deemed to have acted with diligence and care, and none of Bank nor any of its affiliates, subsidiaries or correspondents shall be deemed to have acted with gross negligence or willful misconduct or to have any liability or responsibility under any circumstances solely by reason of:

(i) any of the circumstances referred to in Section 3 (d) (i) or (iii) - (xi);

(ii) interruptions or delays in transmission or in delivery of any Instructions or message by mail, telex, cable, telegraph, wireless or other teletransmission or computer transmission, whether or not they may be in cipher;

(iii) any act, error, neglect or default, omission, insolvency or failure in business of any of its correspondents or the insolvency or failure in business of the beneficiary of a Credit;

(iv) any consequence arising from causes beyond the control of Bank;

(v) Bank or any Indemnified Person honoring a previously dishonored presentation under any Credit pursuant to court order with respect to any claim that it wrongfully dishonored (and Bank or such Indemnified Person shall be entitled to reimbursement to the same extent (if any) as if it had initially honored plus reimbursement of any interest paid by it); and/or

(vi) any payment under, failure to make payment under, any amendment of, or transfer of, or any other act or failure to act under or in connection with, or any other circumstance arising out of or relating to, any Credit which does not constitute the gross negligence or willful misconduct of the Bank.

(b) Without limiting any other provision of this Agreement, Bank, its affiliates, subsidiaries and correspondents:

(i) shall not be responsible for the effectiveness or suitability of any Credit for Lehman's purpose; and

(ii) shall not be responsible for determining the identity of anyone appearing in any transfer request respecting any Credit or any other instrument of transfer or for the validity or correctness of any transfer made pursuant to documents that appear on their face to be in accordance with the terms of a Credit.

6. **Limitation on Remedies.** Neither Bank nor any other Bank Indemnified Person nor Lehman nor any other Lehman Indemnified Person shall be liable for any punitive, consequential, indirect or special damages or losses, even if foreseeable.

7. **Amendment, Change, Modification, Waiver.** Requests to amend any Application or any Credit issued by Bank shall be made in the form set forth in Annex I. Bank shall not be deemed to have amended, changed or modified any term of any Credit, nor shall Bank or Lehman be deemed to have amended, changed or modified any term of any Application or of this Agreement or to have waived any of its rights hereunder or thereunder, unless the party to be charged shall have consented to such amendment, change or modification in writing or signed such waiver. No such waiver, unless expressly stated therein, shall be effective as to any transaction which occurs subsequent to the date of such waiver, nor as to any continuance of a breach after such waiver. Bank's or Lehman's consent to any amendment, change, waiver, or modification shall not be deemed to mean that Bank or Lehman, as the case may be, will consent or has consented to any other or subsequent request to amend, change, modify, or waive a term of this Agreement or any Application or Credit.

8. **Agreements and Acknowledgments; Indemnification.** The Uniform Customs and Practice shall be binding on Lehman and Bank except to the extent both parties have otherwise expressly agreed in writing, herein or elsewhere. It is also agreed that:

(a) user(s) of any Credit shall not be deemed agents of Bank;

4

(b) in the event that Bank shall pre-assign a letter of credit number or numbers to Lehman, Lehman shall keep such number(s) confidential and shall not disclose any such number to any person until the Credit to which such number relates has been approved by Bank;

(c) Lehman shall indemnify and hold harmless Bank, each affiliate and subsidiary of Bank, its correspondents and their respective directors, officers, employees and agents (each a "Bank Indemnified Person"), from and against any and all claims, losses, fines, penalties, liabilities or damages, including reasonable outside counsel fees, arising from or in connection with this Agreement or any Credit, except to the extent that such claims, losses, fines, penalties, liabilities, damages or costs are caused directly or indirectly by the gross negligence, willful misconduct of or breach of this Agreement or any Credit either by Bank or any Bank Indemnified Person it being understood that, without its having any responsibility for further investigation, regardless of any notice or information to the contrary, the Bank may conclusively rely upon, presume the genuineness and authenticity of and honor documents conforming to Exhibits I and II to the Credit (with blanks completed) when presented to it by telefacsimile transmission, and such honor shall in no event be deemed to constitute gross negligence, willful misconduct or breach of this Agreement on the part of the Bank; and

9. **Events of Default; Obligations Due; Remedies.** (a) Upon the occurrence of any of the following events (each an "Event of Default"):

(1) any material statement or representation made by Lehman in this Agreement or any Application shall have proved to be false or misleading in any material respect; or

(2) Lehman shall fail to pay any amount paid by Bank on an Instrument within five (5) business days after demand therefor from Bank; or

(3) Lehman shall fail to pay any amount due and payable under this Agreement in respect of interest within ten (10) business days after receipt by Lehman of written notice from Bank of such failure; or

(4) Lehman shall fail to pay any amount due and payable under this Agreement in respect of fees within ten (10) business days after receipt by Lehman of written notice from Bank of such failure; or

(5) any other material obligation of Lehman to be performed under this Agreement shall not be performed within thirty (30) days after written demand therefor from Bank; or

(6) the dissolution or winding up of Lehman; or

(7) (A) a receiver, trustee or other similar official shall be appointed over Lehman or a material part of its assets and such appointment shall remain uncontested for twenty (20) days or shall not be dismissed or discharged within sixty (60) days; or (B) Lehman shall become insolvent or generally fail to pay, or admit in writing its inability to pay, its debts as they become due, subject to applicable grace periods, if any; or (C) Lehman shall make a general assignment for the benefit of creditors; or (D) Lehman shall file a petition for relief under any bankruptcy, insolvency or similar law (domestic or foreign); or (E) an involuntary proceeding shall be commenced or filed against Lehman under any bankruptcy, insolvency or similar law (domestic or foreign) and such petition shall not be dismissed within sixty (60) days after commencement or filing; or

(8) (A) Lehman shall merge or consolidate with or into any other person, unless Lehman is the surviving entity of such merger or consolidation and no other Event of Default shall have occurred and be continuing after giving effect thereto, provided that in no event shall a merger or consolidation of Lehman with any entity of which Lehman Brothers Holdings Inc. owns and controls, directly or indirectly, at least 51% of the aggregate ordinary voting power represented by the issued and outstanding capital stock or equity interests thereof be deemed an Event of Default, or (B) Lehman shall sell or otherwise dispose of all or substantially all of its assets in one or a series of transactions;

then (whether or not a drawing, claim or demand for payment has been made under any Credit) any and all obligations and liabilities of Lehman to Bank hereunder, matured or unmatured, shall be due and payable forthwith without notice or demand, and Bank may (i) charge, debit and/or setoff against any account of Lehman (other than

5

an account described in Section 9(d)) maintained at any office of Bank or at any subsidiary or affiliate of Bank (now or in the future, whether general or special, time or demand, matured or unmatured, absolute or contingent, whether now existing or hereafter incurred) for the amounts so due and payable, (ii) demand that Lehman deliver, transfer or assign to Bank cash (not exceeding the aggregate amount available to be drawn under all Credits then issued and unexpired, less any amounts already drawn and repaid by Lehman, plus all amounts then due and owing from Lehman hereunder) as security for all such obligations and liabilities, and/or (iii) by notice to Lehman, terminate this Agreement with respect to the issuance of additional Credits.

(b) Upon the exercise by the Bank of the right specified in clause (ii) of Section 9(a), Lehman shall, at its option, either (i) cause the issued and unexpired Credits to be terminated and delivered to Bank for cancellation or (ii) without necessity of further act by Bank, be and become thereby unconditionally obligated to deliver, transfer or assign to Bank the cash (up to such maximum amount) so demanded or other property of a value and character satisfactory to Bank, together with executed financing statements in such form as Bank may reasonably require. Amounts paid and property delivered to the Bank pursuant to this subsection, together with all proceeds thereof, shall be held by Bank in a segregated account solely as security for, and applied against, the obligations and liabilities of Lehman to Bank hereunder. Cash amounts in such account shall bear interest at a per annum rate equal to for each day the Federal Funds Rate for such day minus ten (10) basis points. The Bank agrees that it will, upon the earlier of (A) the date on which any Credit for which Lehman has paid funds or delivered property to the Bank in accordance with this subsection shall be returned to the Bank for cancellation and (B) the expiration or cancellation date of such Letter of Credit, refund or return to Lehman (or deliver at its direction) cash or property received by the Bank pursuant to this subsection in value equal to the amount available to be drawn under such Credit at the time of the Bank's original demand, subject to any further obligation of Lehman to deliver collateral under this clause (b) and less amounts, if any, which the Bank has applied against the obligation of Lehman to reimburse the Bank for drawings under such Credit or other Credits and accrued interest thereon. The Bank shall be entitled to retain an amount, reasonably determined by the Bank, to secure payment of any interest and fees owing or to be owing by Lehman to the Bank in connection with such Credit and any reasonable costs and expenses of collection and enforcement thereof. The Bank shall review the amount of interest in the account at least quarterly to determine whether the Bank, in its sole discretion, is willing to release any such interest.

(c) In addition, if there shall occur any material adverse change in the condition (financial or otherwise), business or operations of Lehman and its subsidiaries taken as a whole, Bank may, upon notice to Lehman, terminate this Agreement with respect to the issuance of additional Credits.

(d) Notwithstanding any rights provided herein or any common law or statutory rights of setoff of Bank, Bank agrees that it shall have no right of charge, debit or setoff against any account held by Bank in a trustee or other fiduciary capacity or containing cash and/or securities or commodities held in segregation on behalf of Lehman's customers, in accordance with the Securities Exchange Act of 1934 and the rules promulgated thereunder by the Securities and Exchange Commission and regulations promulgated pursuant thereto by self regulatory organizations, and the Commodity Exchange Act and the rules promulgated thereunder by the Commodity Futures Trading Commission and regulations promulgated pursuant thereto by self regulatory organizations, or otherwise.

(e) Any notice or demand specified in this Section 9 by Bank to Lehman must be delivered as specified in Section 16 and must clearly specify in conspicuous type that it is a notice of default or demand for payment under this Section.

10. **Continuing Rights and Obligations.** No delay, extension of time, renewal, compromise or other indulgence which may occur or be granted by Bank shall impair Bank's rights hereunder.

11. **Jurisdiction and Venue; Service of Process.** Lehman and Bank each hereby irrevocably consents for itself, with respect to any actions, suits or proceedings arising out of or relating to this Agreement or any Application or Credit or the breach, dishonor, termination or invalidity thereof, to the nonexclusive jurisdiction of (i) any court of record located in the City, County and State of New York and (ii) the United States District Court for the Southern District of New York sitting in the Borough of Manhattan, and agrees that (1) each such court shall be a proper forum for any such action or suit and (2) a final judgment in any such action or suit shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided in law. Service of process in any such action or suit may be made upon Lehman or Bank by mailing a copy of the summons to it either at the address set forth below or such other address as it may have notified the other party in writing. In

addition, if Bank is organized or incorporated in a jurisdiction outside the United States of America and does not operate a branch of the Bank in the State of New York, Bank designates the Consul General or equivalent official of the country of incorporation of Bank as the true and lawful agent and attorney-in-fact of Bank for receipt of summons, writs and notices in connection with any such action or suit.

12. **Confidentiality.** Bank agrees to maintain the confidentiality of (a) all credit, customer, business and other information provided to it by or on behalf of Lehman under this Agreement or any Application or Credit and (b) the terms and conditions of this Agreement and all Applications and Credits, and Bank shall not use any such information other than for purposes of carrying out this Agreement, except to the extent such information (i) was or becomes generally available to the public other than as a result of disclosure by Bank, (ii) was or becomes available on a non-confidential basis from a source other than Lehman, provided that such source is not bound by a confidentiality agreement with Lehman or any of its affiliates known to Bank, or (iii) was known to Bank prior to the its receipt from Lehman and is not subject to any other confidentiality agreement between Bank or any of its affiliates and Lehman or any of its affiliates; provided, however, that Bank may disclose such information (A) pursuant to any requirement of any governmental authority to which the Bank is subject or in connection with an examination of Bank by any such authority; (B) pursuant to subpoena or other court process; (C) when required to do so in accordance with the provisions of any applicable law; (D) to the extent reasonably required in connection with the exercise of any remedy hereunder; (E) to Bank's independent auditors and other professional advisors or to any permitted participant or assignee of Bank's rights hereunder, actual or potential, provided that each such person agrees in writing to keep such information confidential to the same extent required of Bank hereunder.

13. **Assignment.** Bank may not assign or sell participations in all or any part of any Credit or this Agreement without the prior written consent of Lehman, which will not be unreasonably withheld in the case of an Eligible Assignee (as defined in the 364-Day Revolving Credit and Competitive Bid Facility Agreement dated as of April 13, 2001 among Lehman Brothers Holdings Inc., the Bank and certain other parties), except that Bank may without such consent (but upon written notice to Lehman) assign any or all of its rights and/or obligations hereunder (provided, with respect to any Credit, that such is permitted under the terms of such Credit) to any other entity engaged in the business of commercial banking of of which Lloyds TSB Group plc owns and controls at least 51% of the aggregate ordinary voting power represented by the issued and outstanding capital stock or equity interests thereof, which has a credit rating on its long-term debt securities equal to or greater than that of Bank from Moody's Investors Service and Standard & Poor's and which agrees in writing to be bound by the terms and conditions of this Agreement (to the extent of the obligations so assigned). This Agreement may not be assigned by Lehman without the prior written consent of Bank

14. **Applicable Law.** This Agreement and all rights, obligations and liabilities arising hereunder shall be binding upon and inure to the benefit of Bank and Lehman and their respective successors and permitted assigns and shall be governed by, and construed in accordance with, the laws of the State of New York. The provisions, definitions, interpretations and practices of the Uniform Customs and Practice are incorporated by reference as an aid to the interpretation of this Agreement. To the extent permitted by applicable law, this Agreement shall prevail in case of conflict with the Uniform Customs and Practice or the Uniform Commercial Code, and the Uniform Customs and Practice shall prevail in case of conflict between the Uniform Customs and Practice and the Uniform Commercial Code.

15. **No Third Party Benefits.** This Agreement confers no right or benefit upon any person other than the parties to this Agreement and their respective permitted successors and assigns.

16. **Notices.** Notices and demands hereunder shall be in writing and will be sufficient if delivered by hand, by first class mail or nationally recognized courier service postage prepaid, or by tested cable, or facsimile transmission (if promptly followed by telephonic confirmation of receipt), at the following addresses, or to such other address as the recipient shall have designated to the sender by written notice hereunder.

If to Lehman:
    Lehman Brothers Holdings Inc.
    745 Seventh Avenue, 14th Floor
    New York, NY 10019
    Attn: Creditor Relations
    Fax # 646 758 3162

If to the Lender:
Lloyds TSB Bank plc
1251 Avenue of the Americas, 39th Floor
New York, NY 10020
Attention: Letters of Credit
Fax: (212-930-5098

17. Representations and Warranties. (a) Lehman hereby represents and warrants that: (i) it is authorized to enter into this Agreement; (ii) it has obtained all authorizations, consents and approvals required for it to enter into this Agreement; (iii) this Agreement constitutes the legal, valid and binding obligation of Lehman, enforceable against it in accordance with its terms; (iv) the execution, delivery and performance of this Agreement by Lehman does not and will not contravene (A) its charter, by-laws or other organizational documents, (B) any order or writ binding on or affecting Lehman or its properties, or (C) any agreement or arrangement to which Lehman is party or by which it or its properties may otherwise be bound, the contravention of which agreement or arrangement would have a material adverse effect on Lehman; (v) no material information now or hereafter furnished by Lehman to Bank in connection with this Agreement or any Credit is or shall be materially false or misleading when furnished; and (vi) the use of each Credit by Lehman complies with all applicable laws and regulations applicable to Lehman.

(b) Bank hereby represents and warrants that: (i) it is authorized to enter into this Agreement; (ii) it has obtained all authorizations, consents and approvals required for it to enter into this Agreement; (iii) this Agreement constitutes the legal, valid and binding obligation of Bank, enforceable against it in accordance with its terms; and (iv) the execution, delivery and performance of this Agreement by Bank does not and will not contravene (A) its charter, by-laws or other organizational documents, (B) any order or writ binding on or affecting Bank or its properties, or (C) any agreement or arrangement to which Bank is party or by which it or its properties may otherwise be bound, the contravention of which agreement or arrangement would have a material adverse effect on Bank.

Very truly yours,
LEHMAN BROTHERS HOLDINGS INC.
(Lehman)
745 Seventh Avenue, 14th Floor
New York, NY 10019

By: _____
Name: JANET BIRNEY
Title: Senior Vice President

Date: June 5, 2008

Accepted and Agreed:

LLOYDS TSB BANK PLC
1251 Avenue of the Americas, 39th Floor
New York, NY 10020

By: _____
Name: Matthew S.R. Tuck
Title: Director
Financial Institutions, USA
T020

Date: 5th June 2008

JULIE BOYLE
Senior Vice President

Michael J. Gilligan
Managing Director
Financial Institutions, USA
G311

8

## ANNEX I TO CONTINUING REIMBURSEMENT AGREEMENT

APPLICATION FOR STANDBY LETTER OF CREDIT/REQUEST FOR AMENDMENT OF STANDBY LETTER OF CREDIT

THIS APPLICATION OR AMENDMENT, AS THE CASE MAY BE, IS SUBJECT TO AND GOVERNED BY THE CONTINUING REIMBURSEMENT AGREEMENT DATED, _____, 200__, BETWEEN LEHMAN _____ AND _____ (the "CONTINUING AGREEMENT").

APPLICATION

    TO: [Name of Bank]
        [Address]
        ("Issuer")

The undersigned hereby request(s) that you issue your irrevocable letter of credit by:

☐ Airmail    ☐ Teletransmission (Specify means_____)    ☐ Courier Service
*IN FAVOR OF: TO BE ADVISED THROUGH:*    ☐ CHECK BOX

                                                              IF ALSO TO BE
                                                              CONFIRMED BY

        ADVISING BANK

_____  _____

_____  _____

_____  _____
("Beneficiary")

By order of_____
    ("Order Party")

For account of_____
    ("Account Party")

Up to an aggregate amount of_____

Available by (complete A or B, NOT both):

    A. ☐ Drafts at sight on the Issuer payable at the Issuer's counters accompanied by:

    B. ☐ Tested Telex Demand to the Issuer stating:

EXPIRATION DATE:

Drafts and documents must be dated and presented to, or Tested Telex Demand received by, the Issuer at the address set forth above not later than_____.

☐ Credit to obtain "Evergreen" clause with no less than _____ days' notice of non-renewal to the Beneficiary.

☐ Partial drawings prohibited.

☐ Unless otherwise stated herein, the negotiating/paying bank (if any) is authorized to send all documents to you in one airmail or courier service, if available.

☐ **Special Instructions:** Specify below. If additional space is needed, include additional sheets. These sheets form an integral part of this Application.

THE FOLLOWING IS TO BE EXECUTED IF THE LETTER OF CREDIT IS TO BE ISSUED FOR THE ACCOUNT OF A PERSON OTHER THAN THE PERSON SIGNING THE CONTINUING AGREEMENT:

AUTHORIZATION AND AGREEMENT OF ADDITIONAL PARTY NAMED AS ACCOUNT PARTY

To: THE ISSUER OF THE CREDIT

We join in the above Application, naming us as Account Party, for the issuance of an irrevocable letter of credit and, in consideration thereof, we irrevocably agree (i) that the above Order Party has sole right to give instructions and make agreements with respect to this Application, the Continuing Agreement, each Credit, and the disposition of documents, and we have no right or claim against you, any of your affiliates or subsidiaries, or any correspondent in respect of any matter arising in connection with any of the foregoing, (ii) to pay when due any amount or amounts owing to you in respect of each Credit requested by the above Application or payments or acceptances thereunder on demand therefor and (iii) to be bound by the Continuing Agreement as fully as if we had signed and were party to it. The Order Party is authorized to assign or transfer to you all or any part of any security held by the Order Party for our obligations arising in connection with this transaction and, upon any such assignment or transfer, you will be vested with all powers and rights in respect of the security transferred or assigned to you and you may enforce your rights under the Continuing Agreement against us in accordance with the terms of the Continuing Agreement. Our obligations hereunder shall be joint and several with those of the Order Party.

_____
(ACCOUNT PARTY)

_____
(ADDRESS)

_____
(AUTHORIZED SIGNATURE) (TITLE)

_____
(DATE)

*******************************************************************************

REQUEST FOR AMENDMENT

    TO:    [Name of Bank]
              [Address]

    Date:_____

The undersigned hereby request(s) that you amend your irrevocable letter of credit number_____ in favor of_____ by:

☐   Airmail   ☐                                                Teletransmission
(Specify means_____)                                          ☐  Courier
Service
(if none specified, Issuer may choose)
Amend Amount: Current Amount: $_____
    Amended Amount: $_____
Amend Expiration Date:   Current Expiration Date:_____
    Amended Expiration Date:_____
Other Amendment:

For account of:_____
    [Name of Account Part]y

_____
    (Name of Order Party)

By:_____
Name:
Title:

## ANNEX II TO CONTINUING REIMBURSEMENT AGREEMENT

### FEE SCHEDULE

Lehman shall pay Bank quarterly in arrears a fee for each Credit issued by Bank equal to the following percentages, calculated on a per annum basis, on the daily undrawn amount of each issued and unexpired Credit, based on a 360-day year and the actual number of days such amount remains undrawn:

| Undrawn Amount of Each Credit | Percentage per Annum |
|---|---|
| Any amount | To be negotiated at time of issuance |