Objection Deadline: October 14, 2008 at 5:00 p.m.

Marc Abrams
Shelley C. Chapman
Roger D. Netzer
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

Attorneys for Fir Tree Value Master Fund, L.P. and Fir Tree Opportunity Master Fund, L.P.; Royal Charter Properties - East, Inc.; Quantum Partners LDC; and OppenheimerFunds, Inc., Oppenheimer Strategic Income Fund and certain other funds and accounts advised or sub-advised by OppenheimerFunds, Inc. and its affiliates

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | ) Chapter 11 |
| | ) |
| **LEHMAN BROTHERS HOLDINGS INC., et al.** | ) Case No. 08-13555 (JMP) |
| | ) |
| **Debtors.[1]** | ) (Jointly Administered) |
| | ) |

**OBJECTION OF (A) FIR TREE VALUE MASTER FUND, L.P. AND FIR TREE OPPORTUNITY MASTER FUND, L.P., (B) ROYAL CHARTER PROPERTIES - EAST, INC., (C) QUANTUM PARTNERS LDC, AND (D) OPPENHEIMERFUNDS, INC., OPPENHEIMER STRATEGIC INCOME FUND AND CERTAIN OTHER FUNDS AND ACCOUNTS ADVISED OR SUB-ADVISED BY OPPENHEIMERFUNDS, INC. AND ITS AFFILIATES TO THE DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 345(b), 363(b), 363(c) AND 364(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003 AND 6004 (A) FOR AUTHORIZATION TO (i) CONTINUE USING EXISTING CENTRALIZED CASH MANAGEMENT SYSTEM, AS MODIFIED, (ii) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED TO THE USE OF THE CASH MANAGEMENT SYSTEM, AND (iii) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS; AND (B) FOR AN EXTENSION OF TIME TO COMPLY WITH SECTION 345(b) OF THE BANKRUPTCY CODE**

---

[1] As of the date of the filing of this Objection, the Debtors in these cases are: (i) Lehman Brothers Holdings Inc.; (ii) Lehman Brothers Derivative Products Inc.; (iii) Lehman Commercial Paper Inc.; (iv) Lehman Brothers Commercial Corporation; (v) Lehman Brothers Financial Products Inc.; (vi) Fundo de Investimiento Multimercado Credito Privado; (vii) Lehman Scottish Finance L.P.; (viii) CES Aviation LLC ; (ix) CES Aviation V LLC; (x). CES Aviation IX LLC; (xi) East Dover Limited; (xii) Lehman Brothers Commodity Services Inc.; (xiii) Lehman Brothers Finance SA; (xiv) Lehman Brothers Special Financing Inc.; (xv) Lehman Brothers OTC Derivatives Inc.; (xvi) PAMI Statler Arms LLC; and (xvii) LB 745 LLC.

Fir Tree Value Master Fund, L.P. and Fir Tree Opportunity Master Fund, L.P. (together, "Fir Tree"), Royal Charter Properties – East, Inc. ("RCPE"), Quantum Partners LDC ("Quantum"), and OppenheimerFunds, Inc., Oppenheimer Strategic Income Fund and certain other funds and accounts advised or sub-advised by OppenheimerFunds, Inc. and its affiliates ("Oppenheimer," and, together with Fir Tree, RCPE, and Quantum, the "Objecting Parties") hereby submit this objection (the "Objection") in their respective individual capacities as objectors to the Debtors' Motion Pursuant to Sections 104(a), 345(b), 363(b), 363(c) and 364(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 (A) for Authorization to (i) Continue Using Existing Centralized Cash Management System, as Modified, (ii) Honor Certain Prepetition Obligations Related to the Use of the Cash Management System, and (iii) Maintain Existing Bank Accounts and Business Forms; and (B) for an Extension of Time to Comply with Section 345(b) of the Bankruptcy Code (the "Cash Management Motion" or the "Motion").  In support of this Objection, each of the Objecting Parties respectfully states as follows:

## BACKGROUND

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holding Inc. ("LBHI") and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Certain of the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[2]  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2] On October 11, 2008, the Debtors filed their Motion Pursuant to Rule 1015(B) of the Federal Rules of Bankruptcy Procedure Requesting Joint Administration of Chapter 11 Cases, seeking joint administration for the cases of the remaining Debtors [Docket No. 831]. An order has not yet been entered granting such motion.

- 2 -

4510883

2. On September 17, 2008, the United States Trustee for the Southern District of New York appointed a statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

3. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

4. On October 3, 2008, the Debtors filed the Cash Management Motion. By the Motion, the Debtors are requesting, among other things, authority to continue to operate their centralized cash management system (the "Cash Management System"), including to fund the operations of the Debtors and other non-debtor Lehman entities (collectively, "Lehman") in which the Debtors have an interest in the ordinary course of business, consistent, to a large extent, with their prepetition practices. Specifically, the Motion states that, during the postpetition period, the Debtors seek authority to continue to fund their non-debtor affiliates in the manner prior to the Commencement Date and that, "to the extent such continued funding of non-debtor affiliates is out of the ordinary course of business, it is justified by the unique facts and circumstances of these cases." See Cash Management Motion at ¶37. The Motion further states that Lehman entities with postpetition intercompany receivables from the Debtors will be entitled to administrative claims under section 503(b)(1) of the Bankruptcy Code, in the same manner as other creditors that extend credit to the Debtors postpetition, id. at ¶32; the proposed Order, however, contains no language conferring such status on intercompany receivables.

4510883

## JURISDICTION

5.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE OBJECTING PARTIES

Fir Tree

6.      Fir Tree is a party to various ISDA master agreements (the "Swap Agreements") with Lehman Brothers Special Financing Inc. ("LBSF"). LBHI guaranteed the obligations of LBSF under the Swap Agreements. All of the transactions between Fir Tree and LBSF under the Swap Agreements have been terminated. As a result, Fir Tree has substantial claims (in excess of $14 million) against LBSF based on the Swap Agreements and the LBHI guarantees.

RCPE

7.      RCPE is a not-for-profit corporation which develops and manages real estate for the benefit of The New York and Presbyterian Hospital (the "Hospital") and other charitable organizations affiliated with the Hospital. In connection with the financing of a mixed use facility to be used primarily for housing the Hospital's nurses, resident doctors, clinical fellows and other employees and staff members, RCPE is party to two Rate Cap Agreements with Lehman Brothers Derivative Products Inc. ("LBDP"), dated as of June 20, 2005 and November 15, 2006. On September 18, 2008, RCPE provided formal notice to LBDP of a termination event and, in accordance with the Rate Cap Agreements, set a date for settlement of the termination of the rate caps. Pursuant to applicable provisions of the Rate Cap Agreements, damages in the amount of approximately $8,329,000 are payable by LBDP to RCPE.

- 4 -

4510883

Quantum

8.  Quantum and certain of its affiliated entities, in their individual capacities, are party to various financial contracts (including, but not limited to, ISDA Master Agreements), with both non-debtor Lehman entities and one or more of the Debtors in these cases. As of the date of this Objection, the individual amounts owed to Quantum and its affiliates by one or more of the Debtors pursuant to their financial contracts are undetermined.

Oppenheimer

9.  Oppenheimer, in their individual capacities, are party to various financial contracts (including, but not limited to, ISDA Master Agreements) and/or various transactions and/or agreements, with both non-debtor Lehman entities and one or more of the Debtors in these cases. As of the date of this Objection, the individual amounts owed to Oppenheimer by one or more of the Debtors pursuant to their financial contracts and/or various transactions and/or agreements are undetermined.

## OBJECTION

10. The Cash Management Motion lacks sufficient information with respect to the movement of funds between Debtors and between Debtors and non-debtor Lehman entities. A number of motions (and joinders to such motions) have been filed in the past few weeks seeking leave to conduct Rule 2004 discovery of the Debtors in order to investigate the prepetition movement of cash between and among Debtor and non-debtor Lehman entities (collectively, the "2004 Discovery Motions").[3] The 2004 Discovery Motions have expressed

---

[3]  See, e.g. Motion of Harbinger Funds for Leave to Conduct Rule 2004 Discovery of Debtor Lehman Brothers, Inc. [Docket No. 373]; Motion of Newport Global Opportunities Fund LP, Newport Global Credit Fund (Master) L.P., PEP Credit Investor L.P. and Providence TMT Special Situations Fund L.P. For Leave to Conduct Rule 2004 Discovery of Debtor Lehman Brothers Holdings Inc. and Other Entities [Docket No. 435]; Response and Joinder of Federal Home Loan Bank of Pittsburgh to the Motion of the Harbinger Funds for Leave to Conduct Rules 2004 Discovery of Debtor Lehman Brothers Holdings Inc. [Docket No. 692]; Response and Joinder of Wells Fargo Bank, N.A. and Wells Fargo & Co. to the Motion of the Harbinger Funds for Leave to Conduct Rule 2004 Discovery of Debtor Lehman Brothers Holdings Inc. [Docket No. 770];

- 5 -

great concern regarding this movement of cash and the lack of transparency available to third parties. It has also come to light that there are approximately 4,000 entities operating under the "Lehman" umbrella,[4] but the structure of the Lehman enterprise and the detailed movement of intercompany transfers between entities has not been disclosed. Inasmuch as the Cash Management Motion seeks authority to continue the operation of the Debtors' pre-petition cash management system, the information sought via the 2004 Discovery Motions has heightened relevance to an understanding of how and where cash can be expected to move between and among Lehman entities.

11.     Lehman's centralized Cash Management System, which allows for the postpetition intercompany movement of cash (a) between Lehman Debtor entities; (b) between Lehman Debtors, on the one hand, and Lehman non-debtors, on the other hand; and (c) between Lehman non-debtor entities, does not provide sufficient procedural and substantive safeguards to protect Debtors and non-debtors from the degradation of the value of intercompany receivables. Notwithstanding, the Debtors seek bankruptcy court authority to continue to operate such system. Given the magnitude of the intercompany transfers in question in this case, the need for safeguards regarding the Cash Management System is manifest.

12.     In particular, the Motion fails to provide adequate protection to each of the Debtors' estates in connection with intercompany transactions. Indeed, the Motion is utterly silent as to how a "lending" Lehman Debtor can be assured that a "borrowing" Lehman Debtor or non-debtor has and will continue to have the ability to repay the intercompany loans contemplated in the Motion. An entitlement to a mere "administrative expense claim" status for

---

Response and Joinder of Fir Tree Value Master Fund, L.P. and Fir Tree Capital Opportunity Master Fund, L.P. to the Motion of the Harbinger Funds for Leave to Conduct Rule 2004 Discovery of Debtor Lehman Brothers Holdings Inc. [Docket No. 782].

[4]     See October 6, 2008 Hr'g Tr. 47:7-8.

- 6 -

4510883

a Lehman entity with a postpetition intercompany receivable from a Debtor, as requested by the Motion, is insufficient to protect the rights of creditors of such entity. Moreover, the Motion proposes no protections with respect to the opposite scenario – a transfer of funds from a Lehman Debtor to a Lehman non-debtor. Each of the Objecting Parties submits that any order approving the Motion must explicitly provide that all postpetition intercompany claims of a Debtor or non-debtor against any Debtor be given superpriority administrative claim status pursuant to section 364(c)(1) of the Bankruptcy Code, and liens and other forms of adequate protection be put in place for all postpetition intercompany claims of a Debtor against any non-debtor before any intercompany transfers can be made.

13. Each of the Objecting Parties further submits that it is imperative to require an accounting of the Cash Management System to determine the movement of funds since the Commencement Date, particularly to ensure that the Debtors do not use, disburse, transfer, encumber, or otherwise dispose of cash or securities which are not property of their estates without first seeking court authority and/or consent of the owner. The Debtors should be required to file an accounting with the Bankruptcy Court reflecting: (a) the cash positions and intercompany account balances as of the Commencement Date and (b) the movement of cash from the Commencement Date to present. Any subsequent transfers made through the Cash Management System should take into account a constructive trust remedy which may have existed but for the interim and continued operation of the Cash Management System, and the right to such a remedy should not be destroyed by transfers within the system.[5] Cash or

---

[5] Under New York law, among other elements, a party seeking the imposition of a constructive trust must establish the existence of a trust *res* to which a constructive trust may attach. In order to establish the existence of a trust *res*, it is necessary for the claimant to be able to trace the funds at issue. Accordingly, as parties seeking to impose a constructive trust with respect to their property currently in the possession of a Debtor must be able to trace such property, any unauthorized transfer of those funds to affiliates or to third parties of the Debtor may be extremely detrimental to a constructive trust claim.

4510883

securities in which the Debtors' customers and contract counterparties have ownership rights should be segregated and protected until the Court determines the parties' rights to them. The Debtors' estates would be unjustly enriched were they permitted to commingle and utilize third party property in their cash management scheme, and, without a Court determination, the Debtors should not be permitted to subvert creditor rights.[6]

14.    Finally, the management of the Debtors is arguably conflicted insofar as the same parties are managing multiple Debtor interests as well as non-debtor interests, which are not aligned. In the apparent absence of independent fiduciaries acting for each estate, there is a risk that the various Lehman Debtors may not be acting in the respective best interests of their estates' creditors. As conflicted insiders, the Debtors and particularly any transfers of cash among the Debtors and their non-debtor affiliates must be subjected to heightened scrutiny rather than a deferential "business judgment" standard of review. See In re Biderman Indus. U.S.A., Inc., 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997); In re Angelika Films 57th, Inc., 1997 U.S. Dist. LEXIS 7463 at *22 (S.D.N.Y. 1997). The Debtors bear the burden of proving transactions are "fair" for each of the Debtors. In re Regensteiner Printing Co., 122 B.R. 323, 326 (N.D. Ill. 1990). With respect to the intercompany transactions and practices sought to be continued through the operation of the Cash Management System, the Debtors offer no proof as to the ability of a borrowing Debtor, or, more troubling, a borrowing non-debtor affiliate, to repay any claim arising from intercompany transfers taking place during the postpetition period. The creditors of a lending Debtor have no assurances that such lending Debtor will ever be repaid. Accordingly, the Debtors have failed to satisfy their burden to justify the fairness of the

---

[6]    Certain of the Objecting Parties may not have a basis to assert entitlement to a constructive trust remedy and, accordingly, each of the Objecting Parties reserves its rights to object to the assertion of constructive trust arguments in future proceedings in these cases.

4510883

intercompany transactions for which the Motion seeks permission to continue in the ordinary course.

[remainder of page intentionally left blank]

4510883

## CONCLUSION

WHEREFORE, each of the Objecting Parties respectfully requests that the Court deny the Motion unless modified by the relief requested herein and grant such further relief as the Court deems just and proper.

Dated: New York, New York
October 14, 2008

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Shelley C. Chapman
    Marc Abrams
    Shelley C. Chapman
    Roger D. Netzer

787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Attorneys for Fir Tree Value Master Fund, L.P. and Fir Tree Opportunity Master Fund, L.P.; Royal Charter Properties – East, Inc.; Quantum Partners LDC; and OppenheimerFunds, Inc., Oppenheimer Strategic Income Fund and certain other funds and accounts advised or sub-advised by OppenheimerFunds, Inc. and its affiliates*