HEARING DATE: Wednesday, November 5, 2008 at 10:00 a.m.
OBJECTION DEADLINE: Monday, October 27, 2008 at 4:00 p.m.

Michael Feldberg
Laura Martin
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 610 6300

*Attorneys for Barclays Capital Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                    :
In re                                               :    Chapter 11 Case No.
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.***,**    :    08-13555 (JMP)
                                                    :
        Debtors.                                    :    (Jointly Administered)
                                                    :
                                                    :
-----------------------------------------------------------------x

**MOTION OF BARCLAYS CAPITAL INC. FOR RELIEF
CONCERNING AN AMERICAN EXPRESS CONTRACT ERRONEOUSLY
<u>POSTED WITH THE CLOSING DATE CONTRACTS</u>**

Barclays Capital Inc. ("Barclays") hereby moves under Federal Rule of Civil Procedure 60(b), made applicable to bankruptcy cases by Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for certain limited relief from this Court's (i) Order Under 11 U.S.C. §§ 105(a), 363, And 365 And Federal Rules of Bankruptcy Procedure 2002, 6004 And 6006 Authorizing And Approving (A) The Sale of Purchased Assets Free And Clear of Liens And Other Interests And (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, dated September 19, 2008 (D.I. 258) (the "Sale Order"); and (ii) Order (I) Approving the Break-Up Fee and Expense Reimbursement, (II) Certain Matters Relating to Competing Bids, if any, (III) Approving the Form and Manner of Sale Notices, and (IV) Setting

the Sale Hearing Date in Connection with the Sale of the Debtors' Assets (D.I. 88) (the "Sale Procedures Order").

## PRELIMINARY STATEMENT

1.  This motion concerns a contract between Lehman Brothers Holding Inc. ("LBHI") and American Express Travel Related Services Company, Inc. ("American Express") that relates to a series of travel-related contracts between the companies (the "American Express Contract") that was erroneously designated as a contract to be assumed by and assigned to Barclays pursuant to the list of Closing Date Contracts (the "Closing Date Contracts") posted to http://chapter11.epiqsystems.com/lehman (the "Website") on September 18, 2008 in connection with the closing of the Asset Purchase Agreement among LBHI, Lehman Brothers Inc., LB 745 LLC (collectively, the "Debtors") and Barclays.

2.  The American Express Contract was not a critical contract required to continue operating the assets being purchased by Barclays and American Express had stopped performing services related to this Contract prior to LBHI's filing its petition for relief under Chapter 11 of the U.S. Bankruptcy Code (the "Code"). As a result, Barclays would not have designated the American Express Contract as a Closing Date Contract but for an error that occurred in reducing a broader-formulated list of contracts to the list of Closing Date Contracts that Barclays would assume. As soon as Barclays discovered that a mistake had occurred in listing the American Express Contract, it immediately informed American Express—four days after the list of Closing Date Contracts had been posted—of this fact and informed American Express that the matter required further consideration. After such further consideration, Barclays posted a revised list on October 1, 2008 that did not designate the American Express Contract as a

Closing Date Contract, and gave American Express notice of this change and extended American Express's objection deadline.

3. This error was due to the extreme time pressure involved in closing this complex transaction. This Court has previously recognized the exigent circumstances surrounding the Sale Order and the harm to the financial markets that would have resulted had this deal not been completed quickly.

4. American Express has suffered no prejudice in having the American Express Contract listed as a Closing Date Contract for 4 days until it was notified that a mistake had occurred and until it was ultimately removed from the list on October 1, 2008. In light of the exigent circumstances surrounding the transaction and the absence of any prejudice to American Express, Barclays requests that the Court correct the record and confirm that the American Express Contract was erroneously posted as a Closing Date Contract.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this motion under 28 U.S.C. § 1334 and Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## FACTS AND PROCEDURAL HISTORY

6. On Monday, September 15, 2008, LBHI commenced a voluntary case under Chapter 11 of the Bankruptcy Code; LB 745 LLC soon commenced its own voluntary case under Chapter 11 of the Bankruptcy Code. The cases of LBHI and LB 745 LLC are jointly administered.

7.  On Wednesday, September 17, 2008, the Debtors moved the Court to schedule a sale hearing at which the Court would, <u>inter alia</u>, approve the sale of certain assets and the assumption and assignment of contracts relating to the purchased assets.[1]  In their moving papers, the Debtors explained the exigent circumstances surrounding the proposed sale, and emphasized that time was "of the essence" because their assets were losing value every day in a turbulent financial market.  <u>See</u> Sale Motion ¶¶ 6-7.

8.  After holding a hearing on the Sale Motion on Wednesday, September 17, 2008, the Court issued the Sale Procedures Order, scheduling a hearing on the Sale Order for Friday, September 19, 2008. This Order required, <u>inter alia</u>, that the Debtors file and serve at least one day before the sale hearing a notice of assumption, assignment and cure, which would direct parties to a website on which they could ascertain whether their contract was proposed for assumption and assignment to Barclays.  Sale Procedures Order at ¶ 12(b).  Taken together, this gave Barclays a very short period of time to analyze and identify contracts that would be proposed for assumption as of the close of the transaction, and to post the resulting list to the Website.

9.  Barclays prepared three lists of Closing Date Contracts:  IT Closing Date Contracts, non-IT Closing Date Contracts and real estate Closing Date Contracts.  <u>See</u> Declaration of Patrick Coster, dated October 14, 2008 (the "Coster Decl.") ¶ 2.  A representative of LBHI sent an Excel spreadsheet containing the list of non-IT Closing Date Contracts to counsel representing Barclays, which was posted to the Website on Thursday, September 18,

---

[1] <u>See</u> Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets (D.I. 60) (the "Sale Motion").

4

2008.  Id. ¶¶ 3, 4.  This list included the American Express Contract and provided a cure amount of $18 million.  Id.

10.     After a lengthy hearing lasting until the early morning of Saturday, September 20, 2008, the Court issued the Sale Order, which recognized "the exigent circumstances of these cases" and found that the Debtors' estates would "suffer immediate and irreparable harm if the relief requested in the Motion [were] not granted on an expedited basis … particularly given the wasting nature of the Purchased Assets."  Sale Order at 2-3.

11.     On September 22, 2008, American Express contacted counsel for LBHI and stated that it consented to the assignment of the American Express Contract, subject to certain terms.  Declaration of Lindsee P. Granfield, dated October 14, 2008 ("Granfield Decl.") ¶ 5 and Ex. A.  On September 23, 2008—within one day of receiving this correspondence—counsel for Barclays informed counsel for American Express that a mistake had occurred in the listing of the American Express Contract with the cure amount of $18 million, and that Barclays would need to consider the matter further.  Id. ¶ 6.

12.     American Express responded by purporting to consent to the assumption and assignment.  Id. ¶ 7 and Exs. B and C.  Counsel for Barclays again contacted counsel for American Express in order to reiterate that the listing of the American Express Contract with the cure amount of $18 million had been a mistake and was under review.  Id. ¶ 8 and Ex. D.

13.     On October 1, 2008, Barclays filed a Notice of Revisions to Schedules of Certain Contracts and Leases Assumed and Assigned to Purchaser (D.I. 504) (the "Notice"), which notified parties whose contracts were affected by corrected lists of Closing Date Contracts that had been posted to the Website.  This Notice specifically listed American Express as a counterparty affected, and directed American Express to review the corrected schedules on the

5

Website.[2]  The corrected schedules excluded the American Express Contract from those being assigned to and assumed by Barclays.  The Notice (and subsequent revisions thereto) was also served directly on American Express, which was also given an extension of the applicable objection deadline in order to allow it to review the corrected schedules.

14.     The American Express Contract was not a critical contract that Barclays needed to assume in order to continue the operations of the assets being purchased.  Coster Decl. ¶ 5.  It related to a number of contracts involving travel services that had been previously provided prior to LBHI's filing of its Chapter 11 case.  Id.  In addition, American Express had terminated its services under this contract prior to LBHI's filing its Chapter 11 case and has provided no services subsequent to the filing.  Id.

15.     On October 10, 2008, Barclays filed a motion for relief for a limited modification of the Sale Order and the Sale Procedures Order to remove from the schedule of Closing Date Contracts (posted on September 18, 2008) those contracts that were erroneously included due to an error that occurred in reformatting the list of non-IT Closing Date Contracts for electronic posting.  See Motion of Barclays Capital Inc. for Relief Concerning Certain Contracts Erroneously Posted with the "Closing Date Contracts" (D.I. 809).

16.     Barclays seeks further relief by this motion for an additional limited modification of the Sale Order and the Sale Procedures Order to remove from the schedule of Closing Date Contracts (posted on September 18, 2008) the American Express Contract on the ground that it was included by mistake and that American Express has suffered no prejudice as a

---

[2]     Barclays made subsequent revisions to this Notice in order to include all counterparties that were affected by changes to the schedules.  See Notice of Revised Exhibit A to Notice of Revisions to Schedules of Certain Contracts and Leases Assumed and Assigned to Purchaser, dated October 2, 2008 (D.I. 564); Notice of Extension of Deadline to Object to Revised Schedules for Certain Counterparties (D.I. 708), dated October 6, 2008.

result of its contract being briefly listed as a Closing Date Contract prior to being notified of the error and subsequent correction of the list.

17.     This motion has been filed separately from Barclays' October 10, 2008 motion solely due to the professional obligations of Barclays' counsel, Cleary Gottlieb Steen & Hamilton LLP.

**ARGUMENT**

18.     Rule 60(b) of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases by Rule 9024 of the Bankruptcy Rules, gives bankruptcy courts the discretion to "relieve a party or its legal representative from a final judgment, order, or proceeding" in cases of "mistake, inadvertence, surprise, or excusable neglect."  The "excusable neglect" standard has been liberally construed by courts to include, where appropriate, the mistake of a party. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 388 (1993) (explaining that the term "excusable neglect," as used in Rule 9006(b) of the Bankruptcy Rules pertaining to relief that may be granted for late filings, means "where appropriate, . . . mistake, or carelessness," and "intervening circumstances beyond the party's control."); Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 250 (2d Cir. 1997) (applying Pioneer's interpretation of "excusable neglect" to Rule 60(b)).  A court has the discretion to grant this relief when justified by the circumstances. Pioneer Inv. Servs., 507 U.S. at 395 (stating that a court in considering whether the conduct at issue qualifies as "excusable neglect" must consider "all relevant circumstances"); American Alliance Insurance Co., Ltd v. Eagle Insurance Co., 92 F.3d 57 (2d Cir. 1997) (granting relief under Rule 60(b) for a default judgment due to the absence of bad faith, the presentation of a meritorious defense and the lack of prejudice to the other party affected by the vacatur of the default judgment); Compania Transatlantica Espanola, S.A. v.

Hartford Accident & Indemnity Co., 950 F.2d 105, 107 (2d Cir. 1991) (granting relief under Rule 60(b) for a stipulation and order that terminated an appeal when the parties only intended that the stipulation would postpone the appeal).

    19.  Under Rule 60(b), courts have the discretion to relieve a party from an order approving the assumption of contracts under Section 365 of the Code if the party promptly notifies the counterparty of the error and the counterparty has not been prejudiced by the order, as is illustrated by the Seventh Circuit's affirmation of a bankruptcy court's vacatur of an order approving the assumption of three leases in the UAL Corporation Chapter 11 proceedings. In re UAL Corporation, 411 F.3d 818 (7th Cir. 2005). At the time of filing its Chapter 11 case, United Airlines had been leasing approximately 460 aircraft. United Airlines assigned at least 20 people to study the leases and advise it which leases to abandon and which to keep, a task that was complex and difficult to complete within the 60-day time period permitted. With respect to three aircraft with leases administered by U.S. Bank, the team advising United Airlines believed that United owed no money on those leases and, as a result, advised United to retain them. In fact, United owed several million dollars on those leases. Without being aware of this error, United sought the approval of the court to retain the three leases, which the court granted. United realized the error when U.S. Bank demanded payment under the leases and promptly asked the bankruptcy court to vacate the order. The bankruptcy court granted this relief under Rule 60(b)(1) for excusable neglect. The Seventh Circuit affirmed this ruling on the same grounds and further found that contract cases involving rescission after certain unilateral mistakes of a party provided additional support for the bankruptcy court's decision. Id. at 823-24 ("When an innocent mistake can be rectified without harm to anyone (loss of windfall is not the kind of harm that a court should endeavor to avert), it should be.").

20. The circumstances underlying the motion before this Court are even more exigent than the United Airlines case, and demonstrate that the relief requested from the Sale Order and Sale Procedures Order under Rule 60(b) clearly falls within this Court's discretion. Barclays mistakenly designated the American Express Contract as a Closing Date Contract due to the extremely short time period within which the purchase of certain of the Debtors' assets had to occur and, as such, constitutes excusable neglect. As explained by Mr. Patrick Coster in his declaration, the American Express Contract was not critical to the ongoing operations being purchased by Barclays and had been terminated by American Express prior to LBHI's filing.[3] Coster Decl. ¶ 5. The inclusion of the American Express Contract was directly the result of an mistake that occurred when the broader list of contracts was reduced to the list of contracts being assigned and assumed, a process that occurred very quickly in order to comply with the Sales Procedures Order. Id.

21. As this Court is aware, extraordinary circumstances in the financial markets prompted this transaction. This Court has already recognized that it was critical to complete this deal as quickly as possible. See, e.g. Sale Order at ¶¶ 2, 3. Had the sale not closed as quickly as it did, there could have been disastrous repercussions for these estates and in the global financial markets. With these possible consequences in mind, the parties were working literally around the clock on an extremely compressed schedule to complete the deal.

22. As soon as Barclays discovered that a mistake had occurred in the listing of the American Express Contract, it notified American Express and informed American Express

---

[3] Given that American Express had stopped performing under the American Express Contract, the American Express Contract may not have been available for assumption under Section 365 of the Code. See e.g., In re Adler, Coleman Clearing Corp., 247 B.R. 51 (Bankr. S.D.N.Y. 1999) ("A contract is no longer executory if one party has breached the contract prepetition and the other party has no further duty to perform."); 3 COLLIER ON BANKRUPTCY ¶ 365.02 (15th Ed. Rev.) ("Section 365 applies only if the contract or lease is in existence at the commencement of the case. If the contract or lease has expired by its own terms or has been terminated under applicable law before the commencement of the bankruptcy case, there is nothing left for the trustee to assume or assign.").

9

that the matter required further review. Barclays acted diligently to rectify the error, posting a revised schedule on notice to American Express on October 1, 2008, which removed the American Express Contract from the contracts being assumed by Barclays at closing.

23. American Express was not prejudiced by this error of which it was quickly notified. American Express has not provided services under the American Express Contract at any time since the filing of LBHI's Chapter 11 case, has been provided extensions by which to respond to the revised schedule of Closing Date Contracts and has not been procedurally or substantively prejudiced in the Debtors' Chapter 11 case.

24. In light of these exigent circumstances and absence of any prejudice to American Express, the erroneous inclusion of the American Express Contract on the list of Closing Date Contracts is precisely the type of mistake or excusable neglect that this Court should exercise its discretion to correct under Rule 60(b). In re UAL Corporation, 411 F.3d at 822 and 823-24; Compania Transatlantica Espanola, S.A., 950 F.2d at 107.

25. For these reasons, Barclays requests that the Court grant it relief from the Sale Order and Sale Procedure Order to remove from the schedule of non-IT Closing Date Contracts (as posted on September 18, 2008) the American Express Contract.[4] Given the exigent circumstances surrounding Barclays' conduct here and the nature of the mistake at issue, this is precisely the type of case in which a party should be granted relief.

26. Barclays has incorporated its memorandum of law into this motion and respectfully requests that this Court waive the requirement under Rule 9013-1(b) of the Local

---

[4] Barclays has not addressed in this Motion the additional inaccuracy of the cure amount of US$18 million listed for the American Express Contract on the schedule of Closing Date Contracts. See Coster Decl. ¶ 6. If this Court does not grant the relief requested herein, Barclays will provide notice of the correct cure amount and give American Express an opportunity to respond.

10

Bankruptcy Rules for the Southern District of New York that a separate memorandum of law be filed in support of this motion.

## REQUEST FOR RELIEF

WHEREFORE, for the reasons set forth herein and in the accompanying Declarations, Barclays respectfully requests that this Court: (a) grant its motion for relief under Federal Rule of Civil Procedure 60(b); (b) order that notwithstanding anything in the Sale Order, Sale Procedures Order, and/or any notices filed pursuant thereto to the contrary, the American Express Contract was erroneously posted and has not been assumed by and assigned to Barclays; and (c) grant such other and further relief as this Court may deem just or proper.

Dated: New York, New York
October 14, 2008

Respectfully submitted,

Allen & Overy LLP

By:         s/ Michael S. Feldberg

Michael S. Feldberg
Laura Martin

1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 610 6300
Facsimile: (212) 610 6399

*Attorneys for Barclays Capital Inc.*

HEARING DATE: Wednesday, November 5, 2008 at 10:00 a.m.
OBJECTION DEADLINE:  Monday, October 27, 2008 at 4:00 p.m.

Exhibit A

**PROPOSED ORDER**

08-13555-mg    Doc 959    Filed 10/14/08    Entered 10/14/08 17:55:05    Main Document
Pg 12 of 14
HEARING DATE: Wednesday, November 5, 2008 at 10:00 a.m.
OBJECTION DEADLINE:  Monday, October 27, 2008 at 4:00 p.m.

Exhibit A

**PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
: 
In re                                                   :    Chapter 11 Case No.
                                                        :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                :    08-13555 (JMP)
                                                        :
    Debtors.                                            :    (Jointly Administered)
                                                        :
                                                        :
---------------------------------------------------------------x

**ORDER GRANTING BARCLAYS' MOTION FOR CERTAIN LIMITED RELIEF
FROM THE SALE ORDER AND THE SALE PROCEDURES ORDER**

Upon the motion, dated October 14, 2008 (the "Motion"),[5] of Barclays Capital Inc. for entry of an order, pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), granting certain limited relief from this Court's Sale Order and Sale Procedures Order (as more fully described in the Motion); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, proper and sufficient notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the Court having found and determined that it should exercise its discretion in accordance with the relief requested in the Motion and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

---

[5]     Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Motion.

ORDERED that, pursuant to Bankruptcy Rule 9024 the Motion is granted; and it is further

ORDERED that, notwithstanding any prior order of this Court to the contrary, or any notice given by Barclays or the Debtors, the contract designated as "American Express Travel Related" on the schedule of Non-IT Closing Date Contracts posted to the Debtors' Website on September 18, 2008: (i) does not a constitute Closing Date Contract, (ii) has not been assumed and assigned to Barclays, and (iii) remains subject to future assumption, assignment, and/or rejection; and it is further

ORDERED that, notwithstanding any prior order of this Court to the contrary, nor any notice given by Barclays or the Debtors, Barclays shall have no obligation or liability for payment of cure amounts with respect to this contract; and it is further

ORDERED that Barclays and the Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that the Court retains jurisdiction to enforce this Order.

Dated: New York, New York
    November __, 2008

_____
UNITED STATES BANKRUPTCY JUDGE