**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 310-3999
Lindsee P. Granfield
Lisa M. Schweitzer
Attorneys for Barclays Capital Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Lehman Brothers Holdings Inc., et al.<br><br>  Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |

**REPLY OF BARCLAYS CAPITAL INC. TO OBJECTIONS TO ORDER
AUTHORIZING THE DEBTORS AND BARCLAYS CAPITAL INC. TO FILE UNDER
SEAL CERTAIN SCHEDULES TO THE ASSET PURCHASE AGREEMENT**

Barclays Capital Inc. ("Barclays") respectfully submits the following reply (the "Reply") to the Limited Objection Of The Official Committee Of Unsecured Creditors To Joint Motion Of The Debtors And Barclays Capital Inc. For Entry Of An Order Authorizing To File Under Seal Certain Schedules To The Asset Purchase Agreement (the "UCC Limited Objection") and the Objection Of The Informal Noteholder Group To The Motion Of The Debtors And Barclays Capital Inc. For Entry Of An Order Authorizing The Debtors To File Under Seal Certain Schedules To The Asset Purchase Agreement (the "Informal Noteholder Objection", and together with the UCC Limited Objection, the "Objections"):

## BACKGROUND

1. On September 29, 2008, the Debtors and Barclays filed the Joint Motion [Doc. No. 430] seeking to file under seal Schedules A and B to the Clarifying Letter to the Asset Purchase Agreement, and to provide creditors access to the Schedules upon execution of a confidentiality agreement[1] which, <u>inter alia</u>, restricts use of the Schedules to such creditor's role as a creditor in the Chapter 11 Cases.[2]

2. On October 3, 2008, the Debtors and Barclays filed the Notice Of Presentment with respect to the Joint Motion [Doc. No. 568].

3. On October 8, 2008, the Informal Noteholder Group filed the Informal Noteholder Objection [Doc. No. 755] and the Official Committee of Unsecured Creditors (the "<u>Committee</u>") filed the UCC Objection [Doc. No. 763].

## REPLY IN FURTHER SUPPORT OF THE JOINT MOTION[3]

4. The Objections essentially boil down to two points: (i) the Debtors and Barclays have not yet met their burden of proof that the information contained in the Schedules constitutes "commercial information" within the meaning of section 107(b) of the Bankruptcy Code; and (ii)

---

[1] The proposed form of confidentiality agreement is attached hereto as <u>Exhibit A</u>.

[2] Capitalized terms that are used but not defined in this Reply have the meanings ascribed to them in the Joint Motion Of The Debtors And Barclays Capital Inc. For Entry Of An Order Authorizing To File Under Seal Certain Schedules To The Asset Purchase Agreement [Doc. No. 430], the Sale Order or the Asset Purchase Agreement, as the case may be.

[3] On October 10, 2008, the Informal Noteholder Group served upon counsel to Barclays a Notice of Deposition seeking to take the deposition "of any or all person whose testimony Barclays Capital, Inc. may rely upon at the hearing in connection with the Debtors' and Barclays Capital, Inc.'s "Joint Motion." On October 13, 2008, Barclays sent a letter to counsel to the Informal Noteholder Group explaining that: (i) Barclays has no intent to offer testimonial evidence with respect to the Joint Motion at the hearing scheduled for October 16, 2008, and (ii) Rule 9014-2 of the Local Rules of the Bankruptcy Court for the Southern District of New York prohibits offering testimonial evidence at this first hearing in a contested matter. To the extent that after the initial hearing an evidentiary hearing in support of the Joint Motion becomes necessary, Barclays reserves all rights to present evidence at that time.

2

general concern with the level of public disclosure in the Chapter 11 Cases. The Committee indicated in its reply that it would be satisfied with the public disclosure of a written summary of the Schedules, while the Informal Noteholder Group alternatively requested public disclosure of the Schedules or at least a written summary thereof.

5.    Barclays understands and appreciates the objectors' concerns that in general there be full public disclosure of information in the Chapter 11 Cases. However, even in bankruptcy cases, such interest in disclosure must be balanced against competing interests of the debtor or other entities in protecting sensitive information. Section 107(b) of the Bankruptcy Code expressly requires, upon request, protection of "commercial information" from public disclosure. See Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.), 21 F.3d 24, 27 (2d Cir. 1994) ("[I]f the information fits any of the specified categories, the court is *required* to protect a requesting interested party and has no discretion to deny the application.") (emphasis in original); In re Frontier Group, L.L.C., 226 B.R. 711, 773 (Bankr. E.D. Tenn. 2000) ("The mandatory language of § 107(b) requires a court to protect confidential commercial information.").

6.    Courts have found "commercial information" under section 107(b) of the Bankruptcy Code to be "information that would cause an unfair advantage to competitors by providing them with information as to the commercial operations of the [movant]." Orion, 21 F.3d at 27; see also In re Global Crossing, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003) (stating that the purpose of Bankruptcy Rule 9018 is to "protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury.").

3

7.   Courts have recognized a variety of circumstances in which the public dissemination of commercial information would cause an unfair advantage to competitors. For example, in In re Farmland Industries, Inc., 290 B.R. 364, 368-70 (Bankr. W.D. Mo. 2003), the bankruptcy court granted a motion to seal an amendment to the debtors' DIP credit agreement because the amendment described assets being sold by the debtor, and the dates by which such sales were to take place. In that case, the court found that public disclosure of this information would "unfairly benefit the Debtors' competitors by providing them with critical, strategic marketing information." Id. at 369. In Frontier, the court granted the debtor's motion to seal a list of creditors, comprised mostly of the debtor's customers, because of the unfair disadvantage the debtor would face if its customer lists were provided to competitors. 256 B.R. at 773-74.

8.   Likewise, the Schedules contain lists of securities positions acquired by Barclays from the Sellers in the recently approved section 363 sale. The public disclosure and dissemination of these securities positions without confidentiality restrictions would cause substantial competitive harm to Barclays by providing competitors (particularly including any traders in these securities) with insights into the confidential financial activities and positions of Barclays. Disclosure of Barclays' securities positions could reveal to competitors (and potential competitors) of Barclays information about the internal business and business strategies, transactions, and competitive positions of Barclays, and could enable them to take trading positions, based on this information, that would cause financial harm to Barclays and disadvantage its ability to trade in the financial markets. Furthermore, if such information were publicly disclosed, Barclays would be placed at a competitive disadvantage with respect to its competitors because they are not required to and do not publicly reveal their own securities

inventories. Such a result would be extremely prejudicial to Barclays and would run counter to the mandate in section 107(b) of the Bankruptcy Code that commercial information be protected upon request.

9. Barclays understands the need to share information, even sensitive information, as part of the Chapter 11 Cases. As set forth in the Joint Motion, Barclays is more than willing to provide the Schedules to creditors who sign a confidentiality agreement which would restrict a creditor to use the Schedules in connection with such creditor's role as a creditor in the Chapter 11 Cases. Barclays believes this compromise effectively balances the need for disclosure with the need for protection of Barclays' sensitive commercial information.

*[The remainder of this page has been left blank intentionally]*

## CONCLUSION

10. For all of the foregoing reasons, Barclays respectfully requests that the Court enter the Order (a) authorizing the Movants to file under seal the Schedules; and (b) granting such other and further relief as the Court deems appropriate.

Dated: October 15, 2008　　　　　　　　　　　　Respectfully submitted,
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　CLEARY GOTTLIEB STEEN & HAMILTON LLP

　　　　　　　　　　　　　　　　　　　　　　By: /s/ Lisa M. Schweitzer
　　　　　　　　　　　　　　　　　　　　　　　　Lindsee P. Granfield
　　　　　　　　　　　　　　　　　　　　　　　　Lisa M. Schweitzer
　　　　　　　　　　　　　　　　　　　　　　One Liberty Plaza
　　　　　　　　　　　　　　　　　　　　　　New York, New York 10006
　　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 225-2000
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 225-3999

　　　　　　　　　　　　　　　　　　　　　　Counsel to Barclays Capital Inc.

# EXHIBIT A

## PROPOSED FORM OF CONFIDENTIALITY AGREEMENT

## Barclays Capital Inc.

October [--], 2008

**[Creditor name]**
**[Address]**

Re:     <u>Confidentiality Agreement</u>

Ladies and Gentlemen:

The **[Creditor]** (the "<u>Receiving Party</u>") will receive from Barclays Capital Inc. (together with its subsidiaries and affiliates, "<u>BarCap</u>") (i) Schedules A and B to the clarifying letter dated as of September 20, 2008 to the Asset Purchase Agreement, dated as of September 16, 2008, as amended and supplemented, among Lehman Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC and BarCap and (ii) other information designated by BarCap as confidential (such schedules and other information, the "<u>Confidential Material</u>") in connection with the Receiving Party's involvement in (a) <u>In re Lehman Brothers Holdings, Inc., et al.</u>, Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered); (b) <u>Securities Investor Protection Corporation v. Lehman Brothers, Inc.</u>, Adversary Proceeding No. 08-01420 (JMP); or (c) as a creditor with respect to the estate of Lehman Brothers Holdings Inc. or Lehman Brothers Inc. (clauses (a) through (c) together, the "<u>Proceedings</u>"). In consideration thereof, and as a condition to being furnished the Confidential Material by BarCap, the Receiving Party agrees, as set forth in this letter agreement (this "<u>Agreement</u>"), to treat as confidential all Confidential Material that BarCap, its agents or its representatives (including its employees, attorneys and financial advisors) furnish to the Receiving Party or the Receiving Party's directors, officers, employees, agents, advisors, or affiliates or representatives of the Receiving Party's agents, advisors or affiliates (each of the foregoing, other than the Receiving Party, a "<u>Receiving Party's Representative</u>"), whether furnished before or after the date of this Agreement.

The Receiving Party is being furnished with and may make use of the Confidential Material solely in connection with its role as creditor in the Proceedings. It is understood that the Receiving Party may disclose the Confidential Material to those of the Receiving Party's Representatives that may require it in connection with the Proceedings. The Receiving Party agrees that the Confidential Material will be kept confidential by the Receiving Party and the Receiving Party's Representatives and, except with the prior written consent of BarCap or as expressly otherwise permitted herein, will not be disclosed by the Receiving Party or any Receiving Party's Representative to any person or entity. The Receiving Party agrees that the Receiving Party and the Receiving Party's Representatives will not file the Confidential Material with the court presiding over the Proceedings, or any other tribunal, except under seal and subject to a confidentiality agreement in a form and substance reasonably satisfactory to BarCap, and solely to the extent necessary in connection with the Proceedings. The Receiving Party agrees that it is responsible to the Disclosing Party for any action or failure to act that would constitute a breach or violation of the preceding sentence or any of the other terms of this

Agreement by any Receiving Party's Representative. The Receiving Party further agrees that the Receiving Party and the Receiving Party's Representatives will not use the Confidential Material for any reason or purpose other than as necessary in connection with the Proceedings. The Receiving Party further agrees to promptly notify BarCap of any actual or suspected misuse, misappropriation or unauthorized disclosure of any the Confidential Material.

  Without the prior written consent of BarCap, the Receiving Party and the Receiving Party's Representatives will not disclose to any person the fact that the Confidential Material has been made available to the Receiving Party or any Receiving Party's Representative or that the Receiving Party or any Receiving Party's Representative has inspected the Confidential Material. Notwithstanding anything in this paragraph to the contrary, the Receiving Party may make such disclosures if, in the written opinion of its counsel, it is required to do so under applicable law.

  The provision of the Confidential Material by BarCap to the Receiving Party shall not confer on the Receiving Party any rights over such Confidential Material whatsoever beyond those contained in this Agreement.

  Notwithstanding anything in this Agreement to the contrary, in the event that the Receiving Party or any Receiving Party's Representative is required, by interrogatories, subpoena, civil investigative demand or similar legal process or applicable law or regulation, to disclose the Confidential Material, it is agreed that the Receiving Party and any such Receiving Party's Representative will provide BarCap with prompt notice of such event so that BarCap may seek a protective order or other appropriate remedy or waive compliance with the applicable provisions of this Agreement by the Receiving Party or such Receiving Party's Representative. In the event BarCap determines to seek such protective order or other remedy, the Receiving Party and any such Receiving Party's Representative will cooperate with BarCap in seeking such protective order or other remedy. In the event that such protective order or other remedy is not obtained and disclosure of the Confidential Material is required under law, or BarCap grants a waiver hereunder, the Receiving Party or such Receiving Party's Representative, as the case may be, (i) may, without liability hereunder furnish that portion (and only that portion) of the Confidential Material which, in the written opinion of counsel to the Receiving Party or such Receiving Party's Representative, as the case may be, the Receiving Party or such Receiving Party's Representative is legally required to disclose and (ii) will exercise its best efforts to have confidential treatment accorded the Confidential Material so furnished.

  As soon as the Receiving Party is no longer a party to the Proceedings, or upon the written request of BarCap, the Receiving Party will promptly deliver or cause to be delivered to BarCap (or destroy, with such destruction to be certified to BarCap) all documents or other matter furnished by BarCap or its agents or representatives to the Receiving Party or the Receiving Party's Representatives constituting the Confidential Material, together with all copies thereof in the possession of the Receiving Party or the Receiving Party's Representatives. In such event, all other documents or other matter constituting the Confidential Material prepared by the Receiving Party or the Receiving Party's Representatives will be destroyed, with any such destruction certified to BarCap.

2

As used in this Agreement, the term "person" shall mean any individual, corporation, company, association, partnership, joint venture, trust or other unincorporated organization or entity.

This Agreement may be modified or amended only by a separate writing signed by BarCap and the Receiving Party expressly so modifying or amending this Agreement.

This Agreement supersedes all prior oral or written agreements or understandings that may exist between any of the parties hereto in respect of the Confidential Material.

The Receiving Party hereby agrees to indemnify and hold harmless BarCap from any damage, loss, cost or liability (including, without limitation, legal fees and the cost of enforcing this indemnity) arising out of or resulting from any unauthorized use or disclosure by the Receiving Party or the Receiving Party's Representatives of the Confidential Material. The Receiving Party also acknowledges that money damages would be both incalculable and an insufficient remedy for any breach of this Agreement by the Receiving Party or any Receiving Party's Representative and that any such breach would cause BarCap irreparable harm. Accordingly, the Receiving Party also agrees that in the event of any breach or threatened breach of this Agreement, BarCap, in addition to any other remedies at law or in equity it may have, shall be entitled to equitable relief, including injunctive relief and specific performance, without the requirement of posting a bond or other security.

It is understood and agreed that no failure or delay by BarCap in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect to the fullest extent permitted by law.

The Receiving Party agrees and consents to personal jurisdiction and venue in any federal or state court within the Borough of Manhattan, in the City of New York, having subject matter jurisdiction, for the purposes of any action, suit or proceeding arising out of or relating to this Agreement. To the fullest extent permitted by law, the Receiving Party and BarCap hereby agree to waive trial by jury in any action proceeding or counterclaim brought by or on behalf of either party with respect to any matter whatsoever relating to this Agreement.

This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be performed within that state.

This Agreement may be executed in two or more counterparts, and by the different parties hereto in separate counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same instrument.

If you are in agreement with the foregoing, please sign and return one copy of this letter, which thereupon will constitute a binding agreement between us with respect to the subject matter hereof.

3

[New York #1958168 v1]

       Please acknowledge your agreement to the foregoing by executing this Agreement in the space set forth below.

                        Very truly yours,

                        BARCLAYS CAPITAL INC.

                        By:_____
                           Name:
                           Title:

Confirmed and agreed to as of the date first above written:

**[Creditor]**

By:_____
   Name:
   Title:

4