Hearing Date and Time: October 16, 2008 at 10:00 a.m.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                        :
In re                                                   :    Chapter 11 Case No.
                                                        :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :    08-13555 (JMP)
                                                        :
               Debtors.                                 :    (Jointly Administered)
                                                        :
                                                        :
------------------------------------------------------------------x

**DEBTORS' OMNIBUS REPLY TO THE OBJECTIONS AND LIMITED OBJECTIONS
OF VARIOUS PARTIES TO THE DEBTORS' MOTION FOR ENTRY
OF AN ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY
CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 6004, 6006 AND 9019
AUTHORIZING LEHMAN BROTHERS HOLDINGS INC. TO (A) ENTER INTO A
PARTNERSHIP INTERESTS PURCHASE AGREEMENT, (B) COMPROMISE AND
RELEASE A PORTION OF AN INTERCOMPANY LOAN, AND (C) ASSIGN THE
<u>REMAINDER OF SUCH INTERCOMPANY LOAN TO PURCHASERS</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

       Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "<u>Debtors</u>" and, collectively with their non-debtor affiliates, "<u>Lehman</u>"), respectfully represent:

**PRELIMINARY STATEMENT**

1. Through the instant Motion,[1] the Debtors seek to maximize the value of their assets and avoid rapid erosion in value. If approved by the Court, the Purchase Agreement will result in the payment of approximately $230 million to LBHI by the Purchasers and the forgiveness of approximately $20 million in outstanding debt owed by Lehman Brothers Commodity Services, Inc. ("Commodity") to Eagle. Without this transaction, Eagle's value will quickly diminish, LBHI will recover substantially less, if anything, on account of its Loan to Eagle, and Commodity will remain one of Eagle's largest debtors.

2. The plain language of section 363(b) of the Bankruptcy Code provides a debtor with the unfettered right to dispose of any or all of its assets. While courts have upheld a debtor's right to dispose of assets through section 363(b) of the Bankruptcy Code, they generally require a showing that the disposition of assets is being conducted pursuant to the debtor's sound business judgment and that the purchaser acted in good faith. *See Licensing by Paolo, Inc. v. Sinatra (In re Paolo Gucci)* 126 F.3d 380, 389-90 (2d Cir. 1997).

3. In the instant proceeding, there is no question raised regarding the Purchasers' good faith. Rather, the Objectors[2] – all but one of which appears to lack standing under settled law because they merely hold an interest in one of the Debtors' creditors[3] – focus

---

[1] Capitalized terms that are used but not defined herein have the meanings ascribed to them in the Debtors' Motion, dated October 1, 2008, for Entry of an Order Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019 Authorizing Lehman Brothers Holdings Inc. to (A) Enter into a Partnership Interests Purchase Agreement, (B) Compromise and Release a Portion of an Intercompany Loan, and (C) Assign the Remainder of Such Intercompany Loan to Purchasers [Docket No. 503].

[2] The Objectors are: (i) EnergyCo Marketing and Trading, LLC [Docket No. 879]; The Bank of New York Mellon Trust Company, N.A. [Docket No. 914]; and Ad Hoc Committee of Bondholders [Docket No. 903]. In addition, the Debtors received a Response from the Pension Benefit Guaranty Corporation ("PBGC") but have been informed that the PBGC will not oppose the Motion.

[3] Other than EnergyCo Marketing and Trading, LLC, the Objectors all hold bonds issued by Main Street Natural Gas, Inc. In the Second Circuit, a creditor of, or investor in, a creditor of a debtor is not a "party in interest" in the debtor's chapter 11 case. *In re REFCO, Inc.*, 505 F.3d 109, 118-19 (2d Cir. 2007).

primarily on the Debtors' business judgment by contending that LBHI receives too much from this transaction while Commodity receives too little.  In the Objectors' view, LBHI's loans to Eagle should be recharacterized as capital contributions and, due to LBHI's structural subordination, Commodity should receive most of the sale proceeds.  One Objector accuses LBHI of "structur[ing] the Sale in an attempt to prefer itself and its claims ahead of creditors of the other Sellers."[4]  Several Objectors bolster these assertions by contending that the Debtors have neither adequately disclosed the transaction with the Purchasers nor have they provided evidence that the sale is fair and reasonable.  Some Objectors also complain of inadequate notice.

4. The Court should overrule these objections because they ignore the law and impose unreasonable procedural expectations on the Debtors.  There is no presumption against allowing intercompany obligations under state or federal law.  Instead, LBHI's intercompany claim is presumed valid.  Without any evidence, the Objectors urge the Court to extinguish that debt and elevate equity in violation of the absolute priority rule.  The Debtors' books and records reflect a valid intercompany debt of $663 million that is owed by Eagle to LBHI.  Under settled principles of absolute priority, Eagle must satisfy that claim before making distributions on account of the partnership interests held by the partners, including Commodity.[5]  In any event, this is not the appropriate time to determine the characterization of the intercompany obligation.

5. Furthermore, the Objector's arguments regarding lack of evidence and lack of notice are not reasonable.  The Debtors provided all of the material terms of the Purchase

---

[4]  Obj. of Ad Hoc Committee at ¶ 15.

[5]  *See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 463-64 (2d Cir. N.Y. 2007) (holding that pre-plan settlements under Bankruptcy Rule 9019 should always comport with the Bankruptcy Code's priority scheme unless the court makes specific findings that the circumstances warrant a departure from that scheme in some minor respect).

Agreement with the Motion. The Debtors will introduce additional evidence in support of the Motion at the hearing. And notice of the Motion was given in accordance with the Court's case management order, which is all that is required here.

6. The Objectors' arguments should, therefore, be overruled and the Motion should be granted.

## ARGUMENT

### I. LBHI's Intercompany Loan Is A Valid Debt

7. A claim is deemed allowed under section 502(a) of the Bankruptcy Code unless it is challenged.[6] The party objecting to a claim has the burden of putting forth the evidence sufficient to negate the *prima facie* validity of the claim by refuting one or more of the facts in the claim.[7] Once this burden of production has been met, the ultimate burden of persuasion rests with the claimant.

8. Intercompany obligations are legally the same as all other obligations and are generally allowed by courts absent reasons not to give them effect. For example, in *Allegheny Health*, the debtor sought to avoid as a fraudulent transfer the cancellation of an intercompany payable formerly owed to it.[8] The court acknowledged that the elimination of an intercompany debt constitutes a transfer and is potentially voidable under the state fraudulent transfer statute.[9] However, the court found that there was no fraudulent transfer in that case because the cancellation of the intercompany payable was matched by the simultaneous

---

[6] *See In re Johnsbury Trucking Company, Inc.*, 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997), aff'd, 173 F.3d 846 (2d Cir. 1999).

[7] *Id.*

[8] *Allegheny Health, Educ. and Research Found. v. Philadelphia Health Care Trust (In re Allegheny Health, Educ. and Research Found.)*, 253 B.R. 157 (Bankr. W.D. Penn. 2000).

[9] *Id.* at 171.

cancellation of an intercompany receivable; thus there was reasonably equivalent value for the elimination of the intercompany payable.[10]

9. This case is illustrative of the fact that simply because a claim is between related companies rather than between third parties does not, as a matter of law, mean that it is treated less favorably than other types of debt. It is only where the intercompany obligations are not true obligations, but are created merely for tax or other non-operational purposes, that courts do not consider them valid.[11] The case most applicable to determining the validity of the Loan at issue here is *Celotex*.[12] In that case, the parent caused the sale of assets of the subsidiary and then used the proceeds of the sales of the assets to pay off a large intercompany payable owed to the parent. Asbestos litigants suggested that the sales and application of the proceeds were done in a manner intended to deny recovery to the asbestos litigants.[13] The court determined that the parent did not wrongly apply the funds received through the sale of the subsidiary's assets, but rightfully used them to pay intercompany debts that were based on a complex intercompany accounting system.[14] The court held that "…if the evidence indicates that an advance otherwise

---

[10] *Id.*

[11] *See, e.g, Murphy v. Meritor Savings Bank (In re the O'Day Corporation)*, 126 B.R. 370 (Bankr. D. Mass. 1991) (finding that cancellation of intercompany notes did not constitute fair consideration under Massachusetts fraudulent conveyance law when the notes were created solely for tax purposes and the signatories to the notes did not contemplate repayment).

[12] *Celotex Corporation v. Hillsborough Holdings Corporation (In re Hillsborough Holdings Corporation)*, 176 B.R. 223 (M.D. Fla. 1994).

[13] *Id.* at 227-29.

[14] *Id.* at 251-53.

complies with normal business practices and arm's length dealing, a court may properly characterize the advance as a debt."[15]

10. The intercompany accounting system in *Celotex* was similar to that utilized by Lehman. In that case, the parent established a centralized cash management system for paying the expenses of the subsidiaries, downstreamed loan advances, and provided legal and other services to the subsidiaries, keeping track of all intercompany payables and receivables through intercompany ledger entries.[16] Here, as in *Celotex*, LBHI loaned money to Eagle in order to fund its operations. These intercompany receivables have been recorded in the books and records as valid obligations owed by Eagle to LBHI. There is simply no legal or factual basis for the Court to impose a different treatment on these obligations. Furthermore, there is no need to determine the validity of intercompany obligations at this time.

## II.  Eagle Must Satisfy Debt Owed To LBHI Before Paying Partners

11. The turbulence in the financial sector over the past several months has had a devastating effect upon LBHI and its subsidiaries. Apart from the sale at issue here, the survival of Eagle as a going concern would be placed in jeopardy. As a result, the equity interests held by Eagle's partners, including those held by Commodity, must be subordinated to the recovery of Eagle's creditors. Indeed, court's have long recognized that when "the assets of the company are insufficient to pay its debts, and the remaining equity is underwater, whatever remains of the company's assets will be used to pay creditors, usually either by seniority of debt

---

[15] *Id.* at 248-49 (internal citations omitted); *see also The Bennett Funding Group, Inc. v. Patrick R. Bennett (In re Bennett)*, 220 B.R. 743 at 768 (N.D.N.Y. 1997) (citing *Celotex* for the proposition that "entry of an advance on corporate books is sufficient to evidence an intercompany loan").

[16] *Celotex*, 176 B.R. at 228.

or on a pro rata basis among debtors of equal priority."[17]  That is the case here.  At present, there simply is no prospect of providing a return to the partners because their equity is "underwater."

12.  Furthermore, the transaction at issue here invokes Bankruptcy Rule 9019 because LBHI is forgiving more than $430 million in debt in order to realize an immediate recovery for its estate and creditors.  As such, the Second Circuit in *Iridium* has clarified that the absolute priority rule is "the most important factor for courts to consider when deciding whether to approve a settlement under Rule 9019."[18]  That is, the "court must be certain that parties to a settlement have not employed a settlement as a means to avoid the priority strictures of the Bankruptcy Code."[19]

13.  The settlement presented to this Court for approval is fully consistent with the Second Circuit's holding in *Iridium*.  By contrast, the Objectors urge the Court to ignore the Second Circuit's clear mandate to respect priorities when distributing funds under a settlement so that the proceeds of this transaction will go to equity.  There is no legal basis for that contention and thus these objections should be overruled.[20]

### III. The Purchase Agreement Is Adequately Disclosed And Notice Was Given

14.  Several Objectors contend that the Debtors have not adequately informed parties in interest about the transaction.  Similarly, these Objectors maintain that the Motion is

---

[17]  *See*, *e.g.*, *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 205 (Del. Ch. 2006) (citations omitted).

[18]  *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 463 n.18 (2d Cir. N.Y. 2007).

[19]  *Id.* at 464.

[20]  Equally erroneous is the contention that LBHI has "engineered a '*de facto*' substantive consolidation."  *See* Ad Hoc Bondholder Obj. at ¶ 16.  Substantive consolidation forces a creditor of one debtor to share equally with creditors of another debtor by merging assets and liabilities.  Here, by contrast, the Debtors' transaction maintains and respects the separate assets and liabilities of each entity.

procedurally defective because it was filed before Commodity's chapter 11 case commenced, and thus creditors of Commodity have not been notified. These objections are erroneous.

15. The Debtors explained all material terms of the Purchase Agreement in the Motion and attached the forty-page Purchase Agreement. Although the Objectors complain that schedules to the Purchase Agreement were not attached, those schedules are not necessary for any creditor to make an informed decision about the Purchase Agreement. A copy of the schedules will be made available at the hearing for *in camera* review at the Court's request. Most of the information contained in the schedules is devoted to listing Eagle's material operating contracts and leases. This proprietary information has no bearing on the issues raised by the Objectors.

16. Furthermore, these cases are being jointly administered. Notice of the Motion was given in accordance with the procedures set forth in the order the Court entered on September 22, 2008 governing case management and administrative procedures for these cases [Docket No. 285]. Indeed, the Objectors' own opposition illustrates the effectiveness of the notice given. No other or further notice is required here.

WHEREFORE the Debtors respectfully request that the Court overrule the objections and grant the relief requested in the Motion.

Dated: October 15, 2008
      New York, New York

    /s/ *Alfredo R. Pérez*
    Harvey R. Miller
    Richard P. Krasnow
    Lori R. Fife
    Shai Y. Waisman
    Jacqueline Marcus

    WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007

    Attorneys for Debtors
    and Debtors in Possession