Hearing Date and Time: October 16, 2008 at 10:00 a.m.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
**In re** : **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.* : **08-13555 (JMP)**
:
Debtors. : **(Jointly Administered)**
:
------------------------------------------------------------------x

**OMNIBUS REPLY OF DEBTORS TO OBJECTIONS TO DEBTORS'
MOTION FOR ENTRY OF ORDER PURSUANT TO SECTIONS
105, 363, AND 365 OF THE BANKRUPTCY CODE AND
FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004, 6006, AND
9019 (I) APPROVING EQUITY INTERESTS PURCHASE AGREEMENT;
(II) AUTHORIZING THE DEBTORS TO COMPROMISE, SETTLE, AND
RELEASE RELATED CLAIMS; AND (III) GRANTING RELATED RELIEF**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors in possession (together, the "Debtors" and,

collectively with their non-Debtor affiliates, "Lehman"), as and for their reply to the

objections interposed to the Debtors' motion (the "Motion") for authorization and

approval of, among other things, (i) a Purchase Agreement, dated October 8, 2008,[1] for the sale of the Purchased R3 Interests; (ii) an Assignment Agreement, dated October 8, 2008; (iii) the Debtors' settlement and exchange of mutual Releases of related claims; and (iv) certain related relief, all as more fully described in the Motion, respectfully represent:

### Reply in Support of the Motion

1. The Debtors received various informal inquiries and/or responses to the proposed order approving the Motion largely requesting "clean up" or protective changes. Those comments have been incorporated into the revised proposed order (the "Order"), attached hereto at Exhibit "A."

2. In addition, the Debtors received two formal objections to the Motion. The first, filed by the Pension Benefit Guaranty Corporation (the "PBGC"), is entirely protective in nature and seeks the inclusion of certain language in the proposed order (the "PBGC Objection"). The Debtors have resolved the PBGC Objection by incorporating the language proposed by the PBGC in the Order.

3. The second objection, filed by an informal noteholder group (the "Informal Noteholder Group"), basically is a request for additional information regarding the transaction (the "ING Objection"). Almost immediately upon receipt of the ING Objection, the Debtors reached out to counsel for the Informal Noteholder Group and engaged in discussions regarding the information requested. Since that time, Debtors' counsel and Buyers' counsel have been providing counsel to the Informal Noteholder

---

[1] Capitalized terms that are used but not defined in this Reply have the meanings ascribed to them in the Motion.

Group the documents and information requested in its Objection, subject to confidentiality agreements. The Debtors will continue to provide the requested information to the Informal Noteholder Group and believe that such information should sufficiently resolve the Objection.

4. To the extent the ING Objection is not withdrawn, however, it should be overruled. The Debtors submit that the Motion provides sufficient information, including a complete copy of the Purchase Agreement and a detailed four-page single-spaced summary of the material terms of the transaction, to allow parties in interest to make an informed judgment. *See* Motion ¶ 16. Moreover, the Creditors' Committee – the Court-appointed fiduciary in these cases – actively participated in the arm's-length negotiations surrounding this transaction and supports the Motion. *See* Motion ¶ 24.

5. The Debtors' entry into the Purchase Agreement is a sound exercise of their business judgment. The transaction enables the Debtors to recover $250 million in cash (approximately 25% of their initial contribution) and avoid any further erosion of the $1.1 billion Seed Capital Investment. Moreover, the Debtors have secured a limited partnership interest in the New Fund of $250 million, which will enable their creditors to reap any prospective benefits to the extent market conditions improve. The Purchase Agreement also resolves and settles significant claims that likely would be raised by the Buyers for alleged breach of LBHI's agreement to provide support services to the Fund, including providing brokerage services, financing, and marketing services.

6. The ING Objection erroneously suggests that the Debtors have not established the need for an immediate private sale. As explained in the Motion, there is significant uncertainty in the marketplace about the impact of the Debtors' chapter 11

filings on the Fund's operations. As a result, the Debtors' Seed Capital Investment, which is otherwise incapable of being easily withdrawn, is being held captive to the volatile fluctuations of the market while such uncertainties are being resolved. In addition, the Buyers have asserted an intention to enforce contractual restrictions on the assignment of LBHI's interest in the Fund. Although the Debtors disagree with those assertions, any auction process necessarily will be tainted by a cloud of litigation over LBHI's ability to assign its interest in the Fund making it highly unlikely that another purchaser would be identified.

7. Lastly, the Objection fails to recognize the global transaction at hand. LBHI is not only obtaining the benefits of the Purchase Agreement, but also receiving the unique benefits of a release of significant claims against the estates and an assignment of claims against various Lehman entities – both held solely by the Buyers, which no third party could duplicate. Accordingly, a private sale is warranted under these circumstances.

WHEREFORE the Debtors respectfully request (i) that the PBGC Objection and the ING Objection be overruled, to the extent they are not otherwise withdrawn; (ii) entry of the Order granting the Motion in its entirety; and (iii) such other or further relief as is just.

Dated: October 15, 2008
       New York, New York

/s/ Alfredo R. Pérez
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Exhibit A**
**(Revised Order)**

NY2:\1926923\03\15@TN03!.DOC\58399.0003

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                                :
In re                                                           :    Chapter 11 Case No.
                                                                :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                        :    08-13555 (JMP)
                                                                :
                    Debtors.                                    :    (Jointly Administered)
                                                                :
                                                                :
------------------------------------------------------------------x

**ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF ORDER
PURSUANT TO SECTIONS 105, 363, AND 365 OF THE BANKRUPTCY CODE
AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004, 6006,
AND 9019 (I) APPROVING EQUITY INTERESTS PURCHASE AGREEMENT;
(II) AUTHORIZING THE DEBTORS TO COMPROMISE, SETTLE, AND
RELEASE RELATED CLAIMS; AND (III) GRANTING RELATED RELIEF**

Upon the motion, dated October 8, 2008 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authorization and approval of, among other things, (i) a Purchase Agreement, dated October 8, 2008[1] for the sale of the Purchased R3 Interests; (ii) an Assignment Agreement, dated October 8, 2008; (iii) the Debtors' settlement and exchange of mutual Releases of related claims; and (iv) certain related relief, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested

---

[1] Capitalized terms that are used but not defined in this Order have the meanings ascribed to them in the Motion.

therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the order entered September 22, 2008 governing case management and administrative procedures [Docket No. 285] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the attorneys for the Debtors' postpetition lenders; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New York; (vii) the Buyers; (viii) any party with an interest in the Sub-Sublease; and (ix) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

        FOUND that:

        A.    **<u>Arm's-Length Transaction</u>**.  The Purchase Agreement and the Releases were negotiated, and entered into by the Debtors, the Investor Parties, and the Buyers without collusion, in good faith and from arm's-length bargaining positions.  The

Buyers are not "insiders" of the Debtors or the Investor Parties, as that term is defined in section 101(31) of the Bankruptcy Code.

  B. **Business Justification**.  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications and compelling circumstances for the relief requested in the Motion and the approval of the transactions contemplated thereby.

  C. **Fair and Reasonable**.  The Releases are an integral aspect of the Purchase Agreement.  The Debtors have demonstrated that the probability of success in litigation regarding the claims resolved by the Releases would be complex and extremely costly.  In light of the substantial recovery afforded to the Debtors' estates by the Purchase Agreement, the compromise and settlement of claims pursuant to the Releases rises well above the lowest range of reasonableness.

  D. **Good Faith**.  The Buyers are good faith purchasers of the Purchased R3 Interests within the meaning of section 363(m) of the Bankruptcy Code and are, therefore, entitled to all of the protections afforded thereby.  The Buyers have proceeded in good faith in all respects in connection with this proceeding and will be acting in good faith in closing the transactions contemplated by the Purchase Agreement.

  E. **Consideration**.  The consideration to be provided by the Buyers constitutes reasonably equivalent value or fair consideration, as the case may be (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code), and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The Purchase Agreement represents a fair and

reasonable offer to purchase the Purchased R3 Interests under the circumstances of these chapter 11 cases.

  F. **Net Asset Value**.  The Net Asset Value of the New LP Investment reflects a reasonable reduction of the Net Asset Value of the Seller's Fund Interests in light of the circumstances.

  G. **Free and Clear**.  After the Merger, LBHI will be the sole and lawful owner of the Purchased R3 Interests.  The transfer of the Purchased R3 Interests to the Buyers pursuant to the Purchase Agreement will be a legal, valid, and effective transfer of the Purchased R3 Interests, and vests or will vest the Buyers with all rights and title to the Purchased R3 Interests free and clear of all liens, claims (as defined in section 101(5) of the Bankruptcy Code), and encumbrances.

  H. **Satisfaction of 363(f) Standards**.  LBHI may sell the Purchased R3 Interests free and clear of any interests because one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.

  I. **Private Sale**.  The exigent circumstances surrounding these chapter 11 cases support the Debtors' decision to pursue a private sale.  A public auction for the Purchased R3 Interests would entail unwarranted delay, risk, and expense.

  J. **Prompt Consummation**.  The prompt consummation of the sale of the Purchased R3 Interests is in the best interests of the Debtors, their estates, and their creditors.

  NOW, THEREFORE, IT IS ORDERED THAT:

  1. The Motion is GRANTED.

2.    Pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rules 6004, 6006, and 9019, the Purchase Agreement and the Assignment Agreement are approved, and the Debtors are authorized to consummate all the transactions contemplated thereby, including but not limited to (i) the merger of the Investor Parties with and into LBHI; (ii) the Buyers' purchase from LBHI of the Purchased R3 Interests; (iii) the exchange of mutual Releases contemplated in section 3.4.2(a) by and between the Participating R3 Release Parties and the Participating LB Release Parties as well as the Releases contemplated in section 3.4.2(b) of the Purchase Agreement by and between Participating LB General Release Parties and Eligible R3 General Release Parties; and (iv) the contribution of the Seller's Master Fund Interests to the New LP Investment in the New Fund.

3.    Any objections to the entry of this Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

4.    LBHI is authorized to accept the instruction of the Buyers, if any, to terminate the Sub-Sublease without liability of the Buyer to the Seller or any of the Seller's successors and assigns arising from such early termination of the Sub-Sublease. The Sub-Sublease shall be expressly excluded from any assumption and rejection procedures established in the chapter 11 cases.  Without further Court order, LBHI is authorized and directed to perform all ordinary course duties and fulfill all obligations with respect to the Sub-Sublease, including, but not limited to, the delivery and installation of office furniture and the payment of all related charges.

5. Pursuant to section 363(f) of the Bankruptcy Code, the sale of the Purchased R3 Interests to the Buyers shall be free and clear of any and all liens, claims, and encumbrances, with such liens, claims, and encumbrances (if any) to attach to the proceeds of the Sale with the same force, effect, and priority as such liens, claims, and encumbrances have on the Purchased R3 Interests as appropriate, subject to the rights and defenses of the Debtors and any party in interest with respect thereto.

6. Except as expressly permitted by the Purchase Agreement or by this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding interests or claims of any kind or nature whatsoever against or in the Debtors, the Investor Parties, or the Purchased R3 Interests (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Investor Parties, the Purchased R3 Interests, the Purchase Agreement, the Merger, the Investment Transaction, the Master Transaction Agreement, and all related agreements, shall be and hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing against the Participating R3 Release Parties, their property, their successors and assigns, their affiliates, or the Purchased R3 Interests, such persons' or entities' interests or claims.

7. The terms and provisions of the Purchase Agreement, including, but not limited to, the Releases, and this Order shall be binding in all respects upon (i) the Debtors and their estates, (ii) the Investor Parties, (iii) all creditors of (whether known or

unknown) and holders of equity interests in, the Debtors, (iv) the Buyers and their respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee of the Debtors under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.  This Order and the Purchase Agreement shall inure to the benefit of the Debtors and their estates and their creditors, the Investor Parties, the Buyers, the Participating R3 Releasing Parties, and the respective successors and assigns of each of the foregoing.

8. Nothing in this Order or in the Purchase Agreement (i) releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order; or (ii) should be construed to give the Buyers any more protection against any government unit than it is otherwise entitled to under 11 U.S.C. § 363(f)(1), (3), (4), or (5).  Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under law.

9. The Pension Benefit Guaranty Corporation shall, notwithstanding a merger of LBHI and each of LB R3 Holdings GP, LLC and LB R3 Holdings L.P., be entitled to assert any and all claims it may have arising under the Employee Retirement Income Security Act of 1974, as amended, against the assets of LBHI obtained by reason of such mergers (the "Proceeds"), including the proceeds from the redemption of LBHI's remaining interest in the Fund and its limited partner interest in the New Fund, to the same extent as if such merger had not occurred and each of the Investor Parties remained

a separate nondebtor entity.  For the purposes of this paragraph, the Proceeds shall be treated as a separate member of LBHI's controlled group, as defined in 29 U.S.C. § 1301(a)(14).

10. Each of the Buyers are granted the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code.

11. The Debtors are authorized to execute and deliver such assignments, conveyances, and other documents, and instruments of transfer and to take such other actions as may be reasonably necessary to consummate the Sale.

12. This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed pursuant to Bankruptcy Rule 6004(g).

13. The jurisdictional provisions of the Purchase Agreement shall be binding on the parties thereto.  This Court shall retain jurisdiction to interpret and enforce this Order,.

Dated: October __, 2008
       New York, New York

                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE