| | |
|---|---|
| Madlyn Gleich Primoff (MP-1701)<br>Lauren Attard (LA-5083)<br>Kaye Scholer LLP<br>425 Park Avenue<br>New York, New York 10022<br>Telephone: (212) 836-8000<br>Facsimile: (212) 836-6157 | Hearing Date: October 16, 2008, at 10:00 a.m. |

*Attorneys for Wells Fargo Bank, N.A. and*
*Wells Fargo & Co.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
In re                                                   :         Chapter 11 Case No.
                                                        :
LEHMAN BROTHERS HOLDINGS INC., *et al.*  :         08-13555 (JMP)
                                                        :
                              Debtors.                  :         (Jointly Administered)
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY OF WELLS FARGO BANK, N.A. AND WELLS FARGO & CO.**
**TO OPPOSITIONS OF THE DEBTORS AND THE COMMITTEE**
**TO MOTION OF THE HARBINGER FUNDS FOR**
<u>**LEAVE TO CONDUCT RULE 2004 DISCOVERY**</u>

    Wells Fargo Bank, N.A. and Wells Fargo & Co. (collectively, "<u>Wells Fargo</u>"), by their undersigned attorneys, for their reply to (i) the Debtors' Opposition to the Motions of Harbinger Funds and Others to Conduct Examinations Under Bankruptcy Rule 2004 (the "<u>Debtors' Opposition</u>") and (ii) the limited objection (the "<u>Committee's Limited Objection</u>") of the Official Committee of Unsecured Creditors (the "<u>Committee</u>") to the motions of the Harbinger Funds and others for leave to conduct Rule 2004 discovery, respectfully state as follows:

31737455.DOC

1. Upon information and belief, Wells Fargo has nearly $400 million in claims against the Lehman Entities,[1] including nearly $200 million in claims based on various Swap Agreements with LBSFI and LBFSA.

2. Wells Fargo believes, but has been unable to confirm, that LBSFI and LBFSA were the principal derivatives trading entities of the Debtors and their affiliates. Since the filing of LBHI's chapter 11 petition on September 15, 2008, there has been a dearth of information available regarding LBSFI and LBFSA. The fact that LBSFI and LBFSA themselves filed petitions for relief under chapter 11 of the Bankruptcy Code on October 3, 2008 and October 5, 2008, respectively, did nothing to ameliorate the lack of information available regarding these Debtors.

3. The Debtors and the Committee are not entitled to conduct these cases under a veil of secrecy. As a substantial creditor of these Debtors, Wells Fargo is entitled to an opportunity to participate in these chapter 11 cases. In order for Wells Fargo's participation to be **meaningful**, Wells Fargo requires and is entitled to fundamental information about the Lehman Entities, including LBSFI and LBFSA.

4. It is not at all clear to Wells Fargo that the Debtors or the Committee have even begun to focus on issues of concern to creditors of LBSFI or LBFSA. These cases are big and complex; and, the Debtors and their affiliates were involved in a broad array of different business operations within the financial services arena. The fact that the Debtors and the Committee are focused on their own agendas at the present time, and that their attention is

---

[1] Any capitalized term used herein but not defined herein has the meaning given to such term in the Response and Joinder of Wells Fargo Bank, N.A. and Wells Fargo & Co. to the Motion of the Harbinger Funds for Leave to Conduct Rule 2004 Discovery (the "Wells Fargo Joinder"), which is incorporated herein in its entirety by reference.

diverted from issues of concern to creditors of LBSFI and LBFSA, should not preclude Wells Fargo and the other creditors of LBSFI and LBFSA from examining or analyzing issues of concern to them regarding LBSFI and LBFSA.

5.   Wells Fargo has a responsibility to its own investors and employees to pursue and protect its claims against the Lehman Entities.  As the largest AAA rated bank remaining in the United States, Wells Fargo takes this responsibility seriously.  In this connection, Wells Fargo has a critical need for information relating to the Lehman Entities for purposes of Wells Fargo's planning, budgeting, accounting and regulatory processes.

6.   To this end, and as set forth in the Wells Fargo Joinder, Wells Fargo is most interested in obtaining information and reviewing documents relating to the following subjects (the "Subjects"):  (a) the assets and liabilities of the Lehman Entities and (b) the transfer of assets or funds (i) between and among the Lehman Entities, (ii) to the Lehman Entities from other entities and (iii) to other entities from the Lehman Entities.  Accordingly, Wells Fargo seeks (a) to participate in the deposition of LBHI's Chief Financial Officer and/or any other person(s) most knowledgeable at LBHI, (b) to participate in any other or further depositions to be conducted involving any one or more of the Subjects and (c) production of any and all documents produced by any of the Lehman Entities to the Harbinger Funds or any other person, party or entity relating to or concerning the Subjects.

7.   Wells Fargo is willing to be practical and not impose undue burdens on the Debtors or their personnel.  Wells Fargo believes that the most efficient way for Wells Fargo and other creditors seeking Rule 2004 discovery to obtain fundamental information about the Lehman Entities is for Wells Fargo and these other creditors to take the deposition of LBHI's Chief Financial Officer.  If LBHI's Chief Financial Officer truly cannot be made available for

deposition at this time, Wells Fargo would be willing, instead, to take the depositions of officers of LBSFI and LBFSA that have knowledge of the Subjects. Wells Fargo is willing to cooperate fully with the Committee and other creditors seeking Rule 2004 discovery regarding the conduct of these depositions.

8. Provided that the depositions sought above proceed promptly and without prejudice to Wells Fargo's right to resume the depositions and take further depositions after the documents sought are produced, Wells Fargo would be willing to forego production of documents to it at this time (but not if documents are to be produced to other creditors).

9. Given the lack of information available to creditors in these cases, the use of the Rule 2004 discovery process by Wells Fargo and other creditors is plainly appropriate. It is a matter of black letter law that Rule 2004 is essential to the bankruptcy process, as it is the "basic discovery device" in bankruptcy cases. 9 Collier On Bankruptcy ¶ 2004.01[1] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) *cited with approval in In re Muy Bueno Corp.*, 257 B.R. 843, 851 n.12 (Bankr. W.D. Tex. 2001). The purpose of a Rule 2004 examination is to ascertain the nature and extent of the bankruptcy estate, reveal assets and examine transactions. *See In re Recoton Corp*, 307 B.R. 751, 755 (S.D.N.Y. 2004); *e.g., Cameron v. United States*, 231 U.S. 710, 717 (1914); *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991).

10. Contrary to the well-established practice in bankruptcy cases of permitting creditors to avail themselves of their rights to conduct Rule 2004 discovery, the Debtors allege that the discovery requested in the Harbinger Motion is an "inappropriate use[] of Rule 2004 in the context of these exceptional and extremely complex chapter 11 cases involving many thousands of creditors." Debtors' Opposition, at 4. The Debtors have cited no case that absolves them of their duty to provide creditors with information or submit to the Rule 2004 process

simply because these cases are big. Having chosen voluntarily to file these cases and obtain the benefits of chapter 11, the Debtors should not be permitted to escape the burdens imposed by chapter 11, including reasonably tailored discovery under Rule 2004. The conduct of a deposition is efficient, reasonably tailored discovery.

11. While the Debtors argue that the Rule 2004 discovery requested is a "fishing expedition" -- because they are attempting to detract attention from their palpable lack of disclosure in these cases, the Debtors ignore the fact that the Rule 2004 discovery sought by Wells Fargo is well within the ambit of what Rule 2004 allows. Rule 2004 clearly permits the examination of an entity as it relates to the "property or to the liabilities and financial condition of the debtor." Fed. R. Bankr. P. 2004(b). Indeed, the scope of Rule 2004 is "very broad" and often is compared to a "fishing expedition." 9 Collier On Bankruptcy ¶ 2004.02[1] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

12. The Debtors' argument that no nexus exists between the Wells Fargo claims and the information that Wells Fargo seeks is devoid of merit. Wells Fargo, which has multiple claims against LBSFI, LBFSA and the other Lehman Entities, has begun the process of determining its potential recovery and ways to maximize its recovery, as any creditor would in any liquidation. In order to make that determination, discovery about the assets, liabilities and transfers of assets or funds into or out of LBSFI, LBFSA and the other Lehman Entities is imperative. For example, the Debtors' Opposition discloses that a "portion of the Debtors' business related to the sale of derivatives alone involves approximately 1,500,000 transactions, with approximately 8,000 counterparties." *See* Affidavit of Bryan Marsal, at ¶ 10. Wells Fargo might assume that at least some of these transactions could result in funds flowing into LBSFI and/or LBFSA. But, Wells Fargo has no concrete information at all to evaluate in this regard.

13. While the Committee[2] agrees that discovery of the Subjects is necessary, the Committee objects on a limited basis because it believes that the pursuit of a Rule 2004 investigation is within the sole province of the Committee. Rule 2004, however, authorizes all "parties in interest" to conduct discovery, including Wells Fargo and the other creditors seeking discovery.

14. In any event, Wells Fargo is not trying to supplant the Committee's right to conduct its investigation. Wells Fargo simply wants to ensure that an investigation of matters relating to LBSFI and LBFSA occurs promptly. Since a deposition is the most efficient way to conduct discovery, Wells Fargo requests the right to participate in the deposition of LBHI's Chief Financial Officer or, alternatively, any officers of LBSFI and LBFSA that are knowledgeable about the Subjects.

*[remainder of page intentionally left blank]*

---

[2] The Debtors and the Committee assert that Wells Fargo's interests are being cared for by the Committee. However, the Committee was formed prior to the chapter 11 filings of LBSFI and LBFSA. Accordingly, Wells Fargo does not have sufficient assurance at this time that the Committee is representative of the interests of creditors of LBSFI and LBFSA.

WHEREFORE, for the reasons set forth above and in the Wells Fargo Joinder, Wells Fargo respectfully requests that this Court enter an order granting the relief requested herein and in the Wells Fargo Joinder, and granting Wells Fargo such other and further relief as this Court deems just and proper.

Dated: October 15, 2008
      New York, New York

                          KAYE SCHOLER LLP

                          By: */s/ Lauren Attard*
                              Madlyn Gleich Primoff (MP-1701)
                              Lauren Attard (LA-5083)
                              425 Park Avenue
                              New York, NY  10022

                          *Counsel for Wells Fargo Bank, N.A. and Wells Fargo & Co.*