Steven E. Fineman (SF 8481)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY 10017-2024
Tel.: (212) 355-9500

Elizabeth J. Cabraser (*pro hac vice* admission pending)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Tel.: (415) 956-1000

*Counsel for the Certified Class in Austin v. Chisick*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS, INC.,** *et al.,* | : | **Case No. 08-13555 (JMP)** |
| | : | |
| Debtors. | : | <u>**Jointly Administered**</u> |

---------------------------------------------------------------

| | | |
|---|---|---|
| **SECURITIES INVESTOR PROTECTION CORPORATION,** | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| | : | |
| v. | : | **Adv. Proc. No. 08-01420 (JMP)** |
| | : | |
| **LEHMAN BROTHERS INC.,** | : | **SIPA Liquidation Proceeding** |
| | : | |
| Defendant. | : | |

---------------------------------------------------------------

| | | |
|---|---|---|
| **In re:** | : | |
| | : | |
| **LEHMAN COMMERCIAL PAPER, INC.,** | : | **Case No. 08-13900 (JMP)** |
| | : | |
| Debtor. | : | |

---------------------------------------------------------------

### DECLARATION OF ELIZABETH J. CABRASER
### IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAYS
### TO PROCEED WITH CLASS ACTION SETTLEMENT

I, Elizabeth J. Cabraser, declare under penalty of perjury that the following statements are true and correct to the best of my knowledge:

1.    I am a member in good standing of the State Bar of California and a partner in Lieff, Cabraser, Heimann & Bernstein, LLP, one of the firms appointed as plaintiffs' Class Counsel in *Austin, et al. v. Chisick, et al.*, Case No. SA CV 01-0971 DOC (*"Austin v. Chisick"*), pending in the United States District Court for the Central District of California before the Honorable David O. Carter (the "District Court"). I submit this declaration in support of the *Austin v. Chisick* certified Class's Motion for Relief from Automatic Stays to Proceed with Class Action Settlement. I have personal knowledge of the facts set forth herein, some of which I obtained from consultation with my fellow counsel who are, together with me, involved in the *Austin v. Chisick* action.

2.    On June 16, 2003, the jury in *Austin v. Chisick* returned a verdict deeming Lehman Brothers Inc. ("LBI") and Lehman Commercial Paper, Inc. ("LCPI") responsible for 10 percent of a $50,913,928 total damages award to plaintiffs, for LBI and LCPI's aiding and abetting First Alliance Mortgage Company's ("First Alliance") fraudulent lending practices in originating mortgage loans. On November 19, 2003, the District Court entered judgment, ordering and adjudging, "All persons who acquired mortgage loans from First Alliance Mortgage Company ('First Alliance') from May 1, 1996 through March 31, 2000, which were used as collateral for First Alliance's warehouse credit line with Lehman Commercial Paper, Inc. or were securitized in transactions underwritten by Lehman Brothers, Inc., except for those individuals who have requested to be excluded from the Class, are members of the Plaintiff Class in the

Austin v Chisick matter." The Court further ordered and adjudged, "The members of the Class who acquired mortgage loans from First Alliance from December 30, 1998 through March 23, 2000, shall recover the sum of $5,091,392.80 from Defendants on their claim for aiding and abetting fraud" and the Class would "recover nothing on its other claims." Attached hereto as Exhibit A is a true and correct copy of the District Court's November 19, 2003 judgment.

3.    On December 8, 2006, the Ninth Circuit Court of Appeals issued its decision in *In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006), which addressed plaintiffs' and the Lehman defendants' cross-appeals. The Ninth Circuit, among other things, affirmed the District Court's holding imposing liability on LBI and LCPI for aiding and abetting a class-wide fraud perpetrated by First Alliance, but vacated the damages verdict and remanded for further proceedings on the proper calculation of damages.

4.    Counsel for plaintiffs and counsel for the Lehman defendants subsequently entered into arm's-length settlement negotiations, which resulted in a settlement agreement. Attached hereto as Exhibit B is a true and correct copy of the settlement agreement.

5.    Under the proposed settlement, which is subject to final approval by the District Court, LBI and LCPI have agreed to provide relief to Class members in the amount of $2,000,000 and to pay for reimbursement of up to $1,500,000 of the costs and expenses Class Counsel have incurred on behalf of the Class (subject to approval by the District Court). Class Counsel agreed not to seek attorneys' fees. Any award of costs and expenses would not come from the $2,000,000 recovery.

6.    By order dated June 6, 2008, the District Court granted preliminary approval of the settlement and, among other things, set a schedule for final approval, directing: (i) notice should be mailed to Class members on or before July 16, 2008; (ii) Class members

- 2 -

785558.2

were permitted to object in writing to the proposed settlement until August 30, 2008; (iii) the

deadline for Class members to return claim forms was September 24, 2008; (iv) Class members

seeking to appear at the final approval hearing must file an objection with the District Court and

send a copy to counsel on or before October 14, 2008; (v) the motion for final approval was to be

submitted on or before October 8, 2008; and (vi) the final approval hearing was set for

October 27, 2008 at 8:30 a.m.  Attached hereto as Exhibit C is a true and correct copy of the

District Court's June 6, 2008 Minute Order ("June 6, 2008 Order").

       7.     On July 16, 2008, under the direction of Class Counsel, CPT Group, Inc.

("CPT Group"), the claims administrator, distributed the Notice to Class Members of Settlement

and of Class Plaintiffs' Counsel's Request for Reimbursement of Costs and Expenses ("Notice")

and claim forms to approximately 7,300 Class members who are believed to be eligible to

receive a recovery pursuant to the settlement.  Attached hereto as Exhibit D is a true and correct

copy of the Notice.

       8.     On or about September 5, 2008, under the direction of Class Counsel, CPT

Group sent a "reminder" postcard to approximately 4,400 Class members who had not yet

returned claim forms.

       9.     The cost of the claims administration process thus far exceeds $55,000.

Class Counsel are responsible to pay claims administration expenses.

       10.    As of October 2, 2008, CPT Group reported that more than 50 percent of

Class members who had received the Notice and claim form had submitted valid claims.

785558.2

11.     To date Class Counsel are not aware of any written objections to the

settlement, and no objections appear on the District Court's electronic docket for the case.


Dated: New York, New York                    */s/ Elizabeth J. Cabraser*
      October 15, 2008                             Elizabeth J. Cabraser

# EXHIBIT A



✓ Priority
✓ Send
✓ Clsd
✓ Enter
✓ JS-5/JS-6
___ JS-2/JS-3

**FILED**

NOV 19 2003

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

In Re FIRST ALLIANCE
MORTGAGE COMPANY, et al.,

    Related Debtors

MICHAEL and BARBARA AUSTIN,
WALTER AND HARRIET
BERRINGER; GEORGE and
JOSEPHINE JEROLEMON;
individually and on behalf of all others
similarly situated,

    Plaintiffs,

    v.

BRIAN CHISICK; LEHMAN
COMMERCIAL PAPER, INC.;
LEHMAN BROTHERS, INC.,

    Defendants.

OFFICIAL JOINT BORROWERS
COMMITTEE,

    Plaintiffs,

    v.

**CASE NO. SA CV 01-971 DOC**
Consolidated with SA CV01-1111 DOC

**JUDGMENT**

**ENTERED**

NOV 19 2003

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA OFFICE
BY_____ DEPUTY

ENTER ON ICMS

NOV 19 2003

500

```
 1                                        )
 2   LEHMAN COMMERCIAL CREDIT,            )
     INC.; LEHMAN BROTHERS, INC.;         )
 3   LEHMAN BROTHERS HOLDINGS,            )
     INC.; BRIAN CHISICK; SARAH           )
 4   CHISICK; MERRILL BUTLER;             )
     GEORGE GIBBS; JEFFREY SMITH;         )
 5   ALBERT LORD; MARK MASON;             )
     FRANCISCO NEBOT,                     )
 6                                        )
                  Defendants.             )
 7   ------------------------------------ )
```

8

9      These matters were tried simultaneously before a judge and the Court commencing on

10 February 13, 2003, the Honorable David O. Carter presiding. The <u>Austin v. Chisick</u> matter was

11 duly submitted to the jury by means of a special verdict consisting of a series of questions. On

12 June 16, 2003, the jury returned its verdict, and on July 30, 2003, the Court rendered its decision

13 in both matters.

14      IT IS ORDERED AND ADJUDGED that:

15      1.      All persons who acquired mortgage loans from First Alliance Mortgage Company

16            ("First Alliance") from May 1, 1996 through March 31, 2000, which were used as

17            collateral for First Alliance's warehouse credit line with Lehman Commercial

18            Paper, Inc. or were securitized in transactions underwritten by Lehman Brothers,

19            Inc., except for those individuals who have requested to be excluded from the

20            Class, are members of the Plaintiff Class in the <u>Austin v Chisick</u> matter. Attached

21            hereto is the list of individuals who have requested to be excluded from the Class.

22      2.      The members of the Class who acquired mortgage loans from First Alliance from

23            December 30, 1998 through March 23, 2000, shall recover the sum of

24            $5,091,392.80 from Defendants on their claim for aiding and abetting fraud.

25      3.      The Class shall recover nothing on its other claims.

26      4.      Kenneth Henry, Liquidating Trust Trustee, successor in interest to the Official

27            Joint Borrowers Committee, is denied the relief sought on all of his claims.

28 ///

5.    Class Plaintiffs shall recover costs of suit from the Defendants in the amount of $_____, as taxed by the Clerk of the Court.

6.    The judgment will bear interest at the judgment rate from the date it is entered until the date it is fully satisfied.

IT IS SO ORDERED.

DATED: NOVEMBER 19, 2003

_____
DAVID O. CARTER
United States District Judge

# EXHIBIT B

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement") is made and entered into as of August 15, 2007, by and among Lehman Brothers Inc. ("LBI") and Lehman Commercial Paper, Inc. ("LCPI") (collectively "Lehman" or "Defendants"), on the one hand, and Michael Austin, Barbara Austin, Walter Berringer, Harriet Berringer, and George Jerolemon, individually and on behalf of the Class, as defined below, (together with the Class, "Plaintiffs") on the other hand, by and through their respective authorized counsel of record.

## RECITALS

1.    On or about August 10, 2001, a class action complaint was filed in the adversary proceeding captioned Aiello v. Lehman Commercial Paper Inc., Case No. 8:01-ap-01463-JB, in the United States Bankruptcy Court for the Central District of California.

2.    On or about October 16, 2001, the plaintiffs in the Aiello action moved to withdraw the reference of the Aiello action from the Bankruptcy Court. By order dated November 5, 2001, the United States District Court for the Central District of California ("Court") granted the motion and the action was subsequently re-captioned Austin v. Chisick, Case No. SA-CV-01-971 DOC.

3.    On August 22, 2002, Lead Plaintiffs filed their Second Amended Complaint ("SAC") asserting claims against Lehman for: (i) equitable subordination pursuant to 11 U.S.C. § 510(c); (ii) aiding and abetting FAMCO's alleged fraudulent scheme; and (iii) unfair competition in violation of California Business & Professions Code § 17200, et seq. ("UCL"). Lead Plaintiffs sought compensatory and punitive damages, equitable and injunctive relief (including equitable subordination), and costs and attorneys' fees.

4.    By order dated November 25, 2002, the Court certified the Certified Class (defined in Paragraph 1.3), designated Plaintiffs as representatives for the Certified Class, and appointed the Scruggs Law Firm as Lead Counsel for the Certified Class.

5.    By order dated February 7, 2003, the Court granted summary judgment as to the Certified Class' claim under the UCL

and the Certified Class' aiding and abetting claim covering the period from January 1, 1997 to December 30, 1998.

6.    Plaintiffs' aiding and abetting claim was tried to a jury from February 14, 2003 to May 12, 2003.    Plaintiffs' equitable subordination claim was tried concurrently to the Court.

7.    By order dated May 12, 2003 and entered on June 16, 2003, the Court granted Lehman summary judgment as to Plaintiffs' claim for punitive damages.

8.    On June 16, 2003, the jury returned a verdict awarding Plaintiffs $50,913,928 and allocating 10% of fault to Lehman.

9.    On July 30, 200, in In re First Alliance Mortgage Co., 298 B.R. 652 (C.D. Cal. 2003), the Court issued its findings of fact and conclusions of law denying Plaintiffs' equitable subordination claim.

10.    On November 19, 2003, the Court entered judgment, ordering that "The members of the Class who acquired mortgage loans from First Alliance from December 30, 1998 through March 23, 2000, shall recover the sum of $5,091,392.80 from Defendants on their claim for aiding and abetting fraud. [] The Class shall recover nothing on its other claims."

11.    On December 8, 2006, in In re First Alliance Mortgage Company, 471 F.3d 977 (9th Cir. 2006), the Ninth Circuit Court of Appeals issued its decision in the Parties' appeals, affirming in part and vacating in part the judgment in this action and remanding for a determination of damages under the correct "out-of-pocket" measure of damages.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed between and among the Parties as follows.

SETTLEMENT

1.   DEFINITIONS:   The following terms, which are in addition to other terms defined in the body of this Agreement, shall have the following meanings when used in this Agreement:

1.1   "Action" means the class action entitled Michael and Barbara Austin, et al. v. Brian Chisick, et al., Case No. SA-CV-01-971 DOC, pending in the United States District Court for the Central District of California.

1.2   "Class" means and refers to all persons who acquired mortgage loans from First Alliance from December 30, 1998 through March 31, 2000, which were used as collateral for First Alliance's warehouse credit line with Lehman Commercial Paper, Inc. or were securitized in transactions underwritten by Lehman Brothers, Inc. Excluded from the Class are those persons who timely and properly opted out of the Certified Class.

1.3   "Certified Class" means and refers to the class certified by the Court pursuant to its order dated November 25, 2002: "all persons who acquired mortgage loans from First Alliance from May 1, 1996 through March 31, 2000, which were used as collateral for First Alliance's warehouse credit line with Lehman Commercial Paper, Inc. or were securitized in transactions underwritten by Lehman Brothers, Inc."

1.4   "Class Member" means a Person who falls within the definition of the Class as set forth in Paragraph 1.2.

1.5   "Class Period" means the period between December 30, 1998, and March 31, 2000, inclusive.

1.6   "Court" means the United States District Court for the Central District of California or such other court to which the Action may hereafter be transferred or reassigned.

1.7   "Effective Date" means the date this Settlement becomes effective as between Lehman and Plaintiffs in accordance with the provisions of Paragraph 3.7.

1.8   "FAMCO" or "First Alliance" means First Alliance Mortgage Company and its Related Persons.

1.9   "Final" means, with respect to any court order, including but not limited to the Judgment, that either (a) the time to appeal therefrom has expired (*i.e.*, 60 days after entry of the Judgment and no appeal has been taken), or (b) an appeal therefrom has been taken or other challenge thereto has been made, and that all such appeals or challenges have been finally disposed of in a manner that affirms the Judgment in its entirety and the time for further appeal or challenge, including petition for a writ of certiorari, has expired.

1.10   "Judgment" means the Order and Final Judgment to be entered by the Court pursuant to Paragraph 3.5.

1.11   "Lead Plaintiffs" means Michael Austin, Barbara Austin, Walter Berringer, Harriet Berringer, and George Jerolemon, collectively.

1.12   "Parties" means, collectively, Lehman and Plaintiffs.

1.13   "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, agents or assigns.

1.14   "Plaintiff" and/or "Plaintiffs" means Michael and Barbara Austin, Walter and Harriet Berringer, and George Jerolemon, individually and as representatives of the Class, and includes all Class Members.

1.15   "Plaintiffs' Counsel" means those law firms and their attorneys that represent any Plaintiff in this Action, including Plaintiffs' Lead Counsel.

1.16   "Plaintiffs' Lead Counsel" means The Scruggs Law Firm.

1.17   "Preliminary Approval Order" means the order entered by the Court pursuant to the motion set forth in Paragraph 3.2.

1.18 "Related Person" means any Person's past or present directors, officers, employees, partners, members, principals, agents, servants, attorneys, accountants, auditors, advisors, associates, underwriters, trustees, consultants, investment bankers, investment advisors, insurers, co-insurers, reinsurers and excess insurers, predecessors, successors, parents, subsidiaries, divisions, assigns, and related or affiliated entities, and the successors, assigns, representatives, heirs, executors, and administrators of each of them.

1.19 "Released Claims" means any and all claims, causes of action, demands, rights, actions, suits, liabilities, and requests for equitable, legal and administrative relief of any kind or nature whatsoever ("Claims") that have been or could have been asserted in any forum by any Plaintiff against any of the Released Persons, arising from or relating to: (i) any of the allegations, transactions, facts, events, matters, occurrences, acts, representations or omissions involved, set forth, alleged or referred to in this Action or that could have been alleged based upon the facts alleged in this Action, including without limitation any and all Claims that were or could have been asserted against Lehman under federal, state, local, statutory or common law, including but not limited to, unfair competition statutes and common law principles, unjust enrichment principles, or any other common law, statutory or equitable theory; and (ii) the purchase or other acquisition of any FAMCO mortgage loan during the Class Period, and any other matters released by Plaintiffs and Plaintiffs' Lead Counsel as set forth in Paragraph 4 of this Agreement.

1.20 "Released Persons" means Lehman and any of their Related Persons.

1.21 "Settlement" means the settlement of this Action and related claims effectuated by this Agreement between the Parties.

1.22 "Settlement Funds" means the amounts to be paid by Lehman pursuant to Paragraph 2.1.

1.23 "Settlement Administrator" means an independent administrator selected by Plaintiffs' Lead Counsel and appointed by the Court to administer the Settlement Funds.

31318381.5    5 of 18

2.   SETTLEMENT CONSIDERATION

2.1   Payment By Lehman.   In full and complete settlement of all of the Released Claims against all of the Released Persons, Lehman shall:

(a)   within twenty (20) business days after the Judgment complying with the provisions of Paragraph 3.5 becomes Final, wire transfer the sum of $2,000,000 (Two Million Dollars) (the "Settlement Amount") to Plaintiffs' Lead Counsel or the Settlement Administrator, as directed by Plaintiffs' Lead Counsel or the Court; and

(b)   within twenty (20) business days after the Costs Order as set forth in Paragraph 2.6 becomes Final, wire transfer the sum awarded by the Court pursuant to the Costs Order (the "Costs Amount") to Plaintiffs' Lead Counsel or the Settlement Administrator, as directed by Plaintiffs' Lead Counsel or the Court.   In no event shall the Costs Amount exceed $1,500,000 (One Million Five Hundred Thousand Dollars).

2.2   Lehman's Sole Financial Obligation.   The payments referenced in Paragraph 2.1 set forth Lehman's sole financial obligation to Plaintiffs and Plaintiffs' Counsel under this Agreement and under no circumstances shall Lehman have any obligation to make any other or greater payment to Plaintiffs and Plaintiffs' Counsel for any purpose pursuant to this Agreement.

2.3   Judgment of Dismissal.   In consideration of the mutual covenants contained herein, including Lehman's payment of the amounts set forth in Paragraph 2.1, Plaintiffs agree to the entry of a judgment of dismissal in this Action, with prejudice as to Lehman, in accordance with Paragraph 3.5 below.

2.4   No Liability Relating To Allocation Or Distribution Of Settlement Funds.   Lehman and the Released Persons shall have no responsibility for, and no liability whatsoever with respect to, the allocation and/or distribution of the Settlement Funds between or among Plaintiffs, Plaintiffs' Counsel and/or any other person or entity that may assert a claim thereto, or the payment or non-payment of any amounts from the Settlement Funds to any of them.   Lehman takes no position with respect to such matters, including whether any

incentive awards can or should be awarded to Lead Plaintiffs or the amount of any such incentive awards. Under no circumstances may Lehman and the Released Persons be subjected to any Claim based upon the conduct of the Settlement Administrator or the allocation and/or distribution of any amounts pursuant to the Settlement.

2.5   <u>Attorneys' Fees</u>.   Plaintiffs and Plaintiffs' Counsel expressly waive any and all rights to any attorneys' fees from Lehman in this Action.

2.6   <u>Costs and Expenses</u>.

(a)   Plaintiffs and/or Plaintiffs' Lead Counsel may submit an application to the Court for costs and expenses. Any order of the Court awarding costs and expenses to Plaintiffs and/or Plaintiffs' Counsel shall not exceed $1,500,000 (One Million Five Hundred Thousand Dollars) (the "Costs Order").

(b)   Consideration of any application for costs and expenses by the Court shall be separate from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Agreement.

(c)   Any order by the Court on any application by Plaintiffs or Plaintiffs' counsel for costs and expenses, or any appeal from such an order, shall not affect or delay the finality of the Judgment approving the Settlement of this Action.

3.   SETTLEMENT APPROVAL PROCEDURES

3.1   <u>Best Efforts</u>.   The Parties agree to recommend approval of this Agreement to the Court, and to undertake their best efforts, including all steps and efforts contemplated by this Agreement and any other steps and efforts that may be reasonably necessary or appropriate, by order of the Court, or otherwise, to carry out the terms of this Agreement, including joint cooperation to have the Judgment entered and all required notices given in such a manner as to ensure that the Judgment becomes Final at the earliest possible time. Any dispute regarding forms of notices and other documents necessary to implement the Settlement contained in the Agreement, if not timely resolved among the Parties, shall be referred to the Court.

31318381.5

3.2   Preliminary Approval.   On or before August 31, 2007, Plaintiffs shall submit a motion, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for entry of an order in a form to be mutually agreed upon by Lehman and Plaintiffs (the "Preliminary Approval Order"):

(a)   granting preliminary approval of the Settlement;

(b)   directing the form, manner, and timing of providing notice of the Settlement (including but not limited to the Release of Claims in Paragraph 4 hereof) to the Class in a manner that complies with the requirements of due process and federal law ("Notice");

(c)   specifying procedures for Class Members to follow in objecting to or commenting upon the Settlement, and the deadline for such comments or objections;

(d)   setting a Final Approval Hearing after Notice is given to consider whether the Settlement should be approved and whether the Judgment should be entered; and

(e)   staying all proceedings in the Action as against Lehman and prohibiting Class Members from instituting or prosecuting any further actions against Lehman asserting claims that are Released Claims under this Agreement.

3.3   Class Notice.   Notice of the Settlement (including but not limited to the Release of Claims in Paragraph 4 hereof) shall be provided to the Class in the form and manner and at the time(s) directed by the Court in the Preliminary Approval Order to be entered pursuant to Paragraph 3.2 above.   The cost of providing Notice shall be paid by Plaintiffs ("Notice Expenses").

3.4   Objection Procedures.

(a)   Any Class Member may appear at the Final Approval Hearing and show cause why the Court should not approve this Settlement and dismiss the Action with prejudice as to Lehman, and may appear at the hearing to support or oppose Plaintiffs' Lead Counsel's application for expenses and costs provided, however, that no Class Member shall be heard unless his, her or its objection or opposition is made in writing, signed by each individual member of

the Class so objecting, and is filed, together with any papers or briefs in support of such objections, with the Court on or before the deadline to be fixed by the Court. All such written objections and papers shall be copied to Plaintiffs' Lead Counsel and counsel for Lehman, by first-class mail, postage prepaid on or by the deadline to be fixed by the Court.

(b)   The objection shall include: (i) the complete name and residence or business address of the individual Class Member so objecting (giving the address of any lawyer who represents the Class Member is not sufficient); (ii) a statement, signed under penalty of perjury by the objecting Class Member, that the member obtained a FAMCO mortgage loan during the Class Period; and (iii) each ground for comment or objection and any supporting papers the Class Member desires the Court to consider. These provisions shall be included in the form of order to be provided to the Court pursuant to Paragraph 3.2 above.

3.5   <u>Final Approval/Order and Final Judgment</u>. If, after the Final Approval Hearing, the Court finally approves the Settlement, Plaintiffs shall seek entry of an order and judgment in a form to be mutually agreed upon by the parties ("Order and Final Judgment"):

(a)   determining that the Parties have submitted to the jurisdiction of the Court and that the Court has subject matter jurisdiction to approve the Agreement;

(b)   finding that the Notice given pursuant to this Agreement satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process;

(c)   approving finally the Settlement and its terms as being in good faith and a fair, reasonable and adequate settlement as to Plaintiffs and the Class, and directing the Settlement's consummation pursuant to its terms;

(d)   finding that each Class Member is bound by the terms of the Settlement including the Release of Claims set forth in Paragraph 4 hereof, regardless of whether any such Class Member ever seeks or obtains by any means, including, without limitation, by submitting a proof of claim, any amounts from the Settlement Funds;

(e)    dismissing the Action with prejudice as to Lehman;

(f)    finding that Plaintiffs and Plaintiffs' Counsel are not entitled to attorneys' fees or costs and expenses, except as allowed in the Costs Order;

(g)    providing that the Court shall retain jurisdiction to enforce this Agreement as between Lehman and Plaintiffs until performance in full of its terms, including the administration and distribution of the Settlement Funds;

(h)    determining that there is no just reason for delay and ordering that the Judgment of dismissal of the Action shall be final and appealable;

(i)    incorporating the releases set forth below (in Paragraph 4 of this Agreement) and forever releasing and discharging the Released Persons from the Released Claims; and

(j)    barring, enjoining and prohibiting any Class Member from instituting or prosecuting, as a class member or otherwise, any further action or proceeding, in any jurisdiction, against the Released Persons asserting any Released Claims.

3.6    Effect of Court Disapproval.    If the Court for any reason determines not to approve the Settlement and enter the Judgment in substantially the form agreed upon by the Parties pursuant to Paragraph 3.5, or conditions its approval on any modification of this Agreement that is not mutually acceptable to the Parties, or if the Court's approval is reversed or set aside on appeal, then this Agreement shall terminate and become null and void, except as otherwise provided in this Agreement.

3.7    Effective Date.    The effective date of the Settlement shall be the date on which the last of each of the following conditions precedent occur are satisfied:

(a)    the Court shall have entered a Preliminary Approval Order substantially in accordance with Paragraph 3.2 of this Agreement and the Class shall have been provided with Notice and an opportunity to object in accordance with such Notice;

(b)    the Court shall have entered the Judgment in accordance with Paragraph 3.5 of this Agreement, which Judgment shall have become Final;

(c)    the time for Lehman to exercise its right of termination under Paragraph 5.2 below has expired or Lehman has given written notice to the other Parties that it will not exercise such right; and

(d)    the payments required by Paragraph 2.1 of this Agreement have been made.

3.8    <u>Lehman Has No Administration Responsibilities</u>.  Neither Lehman nor the Released Persons shall have any responsibility for, interest in, or liability whatsoever with respect to the providing of any notice, the investment or distribution of the Settlement Funds, any plan of distribution, the determination, administration, or calculation of claims, the payment or withholding of any taxes, or any losses incurred in connection therewith.

4.    <u>RELEASES AND COVENANTS</u>

4.1    <u>Releases</u>.  Upon the Effective Date, Plaintiffs and each and every Class Member for themselves, their attorneys, spouses, executors, representatives, heirs, successors, and assigns, in consideration of the relief set forth herein, the sufficiency of which consideration is expressly acknowledged, fully and finally release and forever discharge the Released Persons from all Released Claims, whether or not such Class Member executes and delivers any proof of claim or release or otherwise shares in the Settlement Funds.

4.2    <u>Release of Attorneys' Fees Claims</u>.    Plaintiffs and Plaintiffs' Counsel in this Action hereby release all claims for attorneys' fees against the Released Persons.

4.3    <u>Third Party Beneficiaries</u>.  No person or entity other than the Released Persons shall be entitled to the benefits of, or entitled to enforce, the releases provided for in this Agreement.

4.4    <u>Section 1542 Waiver</u>.  To the fullest extent permitted by law, Plaintiffs, on behalf of themselves and each and every Class Member, expressly waive the benefits of any statutory provision or

common law rule that provides, in sum or substance, that a release does not extend to claims which the releasor does not know or suspect to exist in its favor at the time of executing the release, which if known by it, would have materially affected its settlement with the other party. In particular, but without limitation, Plaintiffs, on behalf of themselves and each and every Class Member, understand the provisions of California Civil Code Section 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs, on behalf of themselves and each and every Class Member, with the advice of counsel, hereby agree that (i) the provisions of California Civil Code Section 1542 are hereby knowingly and voluntarily waived and relinquished, and (ii) the provisions of all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction, to the extent that they are found to be applicable herein, also are hereby knowingly and voluntarily waived and relinquished. Notwithstanding the foregoing waiver of California Civil Code Section 1542, the Parties acknowledge that the releases set forth in this Agreement are specific to the matters set forth in the releases, although they include unknown claims, and are not intended to create general releases as to all claims, or potential claims, between the releasing and Released Persons.

4.5    Covenant Not to Sue.    Upon the Effective Date, each Class Member covenants and agrees to not seek to establish liability, or institute, maintain, collect, proceed, or otherwise assert any claims, demands, actions, or causes of action of any nature under federal or state law, on behalf of itself or any other person, entity or class, against any of the Released Persons, in whole or in part, for any of the Released Claims. The Parties agree that this covenant may be pled as a full and complete defense to any action, suit or other proceeding that may be instituted, prosecuted or attempted with respect to any of the Released Claims.

5.    TERMINATION

5.1    Events of Termination.    Lehman shall have the right and option to terminate this Agreement in the event that any of the following events (each an "Event of Termination") shall have occurred:

(a)    The Court does not approve all material aspects of the Settlement and does not enter the Judgment in the form required by Paragraph 3.5; or

(b)    The Judgment is modified before or after entry by the Court, or there is a material change to the terms of the Settlement not agreed to by Lehman; or

(c)    The Judgment is withdrawn, rescinded, reversed, vacated or modified by the Court or on appeal.

5.2    Exercise of Right of Termination.

(a)    Following an Event of Termination, Lehman may terminate the Settlement by providing a written notice of termination ("Notice of Termination") to Plaintiffs' Lead Counsel within 15 calendar days following Lehman's receipt of notice of such Event of Termination.

(b)    Notice of Termination will be deemed to have been timely provided to Plaintiffs' Lead Counsel upon any of the following actions:  (i) service of the Notice of Termination upon Plaintiffs' Lead Counsel delivered personally or (ii) deposit by Lehman of the Notice of Termination with an overnight courier or (iii) transmission of the Notice of Termination to Plaintiffs' Lead Counsel by facsimile or via electronic mail, followed by certified mail.

5.3    Effect of Termination.    Unless otherwise ordered by the Court, in the event that the Effective Date does not occur or this Agreement should terminate, or be cancelled, or otherwise fail to become effective for any reason, including, without limitation, in the event that the Settlement is not approved by the Court or the Judgment is reversed or vacated following any appeal taken therefrom, or Lehman exercises its right to terminate this Agreement pursuant to Paragraph 5.2 above, then:

(a)   the Parties shall be restored to their respective positions in this Action as of the date the Agreement was entered into, with all of their respective claims and defenses preserved as they existed on that date;

(b)   the terms of this Agreement, with the exception of Paragraphs 6.1 and 6.3 (which shall continue in full force and effect) shall be null and void and shall have no further force or effect with respect to the Parties, and neither the existence nor the terms of this Agreement (nor the negotiations preceding this Agreement nor any acts performed pursuant to, or in furtherance of, this Agreement) shall be used or offered in evidence in the Action or in any other action or proceeding for any purpose (other than to enforce the terms remaining in effect); and

(c)   any judgment or order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc.*

## 6.   GENERAL PROVISIONS

6.1   <u>No Admission</u>.  It is expressly understood and agreed that this Agreement does not, in any way, embody, reflect, or imply any wrongdoing on the part of any of the Released Persons, and the Parties may not represent or claim that it does in any public statement and may not use it for that purpose in any subsequent legal proceeding or otherwise.  This Agreement reflects compromises of matters that are disputed – including whether the Class was damaged and, if so, the amount of any damages – and neither this Agreement nor any actions or proceedings undertaken in accordance with the terms of this Agreement shall be construed as, or deemed to be evidence of, or an admission or concession of, any wrongdoing by any of the Released Persons or of the validity of any of the Released Claims.  Neither this Agreement, nor any of its provisions, nor any statement made, document filed or action undertaken in connection with the Settlement, shall be filed, offered, received in evidence or otherwise used for any purpose in any action or other proceeding, except in connection with the applications for approval or applications for enforcement of this Agreement and all proceedings incident thereto.

6.2   <u>No Penalty or Fine</u>.   The Parties agree and acknowledge that nothing paid in respect of this Agreement constitutes or shall in any way be deemed a payment of a penalty or a fine of any kind.

6.3   <u>No Prejudice to Parties</u>.

(a)   In the event that the Settlement does not become Final in accordance with its terms, the Parties expressly reserve all of their rights and preserve all applicable defenses.

(b)   If the Settlement does not become Final in accordance with its terms, the Action shall revert to its procedural and substantive status prior to the date of execution of this Agreement and shall proceed as if this Agreement, and all other related orders and papers, had not been executed.

(c)   The provisions of this Paragraph 6.3 shall survive and continue to apply to each Party, even if the Court does not approve the Settlement, or if the Court's approval of the Settlement is set aside, or if Lehman terminates the Agreement pursuant to the provisions of Paragraph 5 of this Agreement.

6.4   <u>Binding Effect</u>.   The terms of this Agreement shall be binding on, and inure to the benefit of, the Parties and their respective successors and assigns.   The Parties expressly disclaim any intention to create rights under this Agreement that may be enforced by any other person under any circumstances whatsoever, except as provided in this Agreement.

6.5   <u>Entire Agreement</u>.   This Agreement contains the entire, complete and integrated statement of each and every term and provision agreed to by the Parties, and is not subject to any conditions not provided for in this Agreement.   There are no additional promises, understandings or terms of the Settlement other than those contained herein.   This Agreement supersedes and renders of no effect all other oral or written communications concerning the subject matter hereof.   Each Party represents and warrants to the others that, in entering into this Agreement, it has not relied upon any representations or promises not contained in this Agreement.

31318381.5

6.6    <u>Modification and Waiver</u>.    After the Court's entry of the Preliminary Approval Order in accordance with Paragraph 3.2, the terms and provisions of this Agreement may not be changed, waived, modified, or varied in any manner whatsoever unless in a writing duly signed by the Parties and approved by the Court.  Any failure by any Party to insist upon the strict performance by any other Party of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, and that Party, notwithstanding that failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Agreement to be performed by the other Party.

6.7    <u>Governing Law</u>.    This Agreement, including, but not limited to, the releases contained herein, shall be governed by and construed in accordance with Federal Law, including Rule 23 of the Federal Rules of Civil Procedure.   To the extent not covered by Federal Law, this Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed in the State of California, and the rights and obligations of the Parties shall be construed and enforced in accordance with, and governed by, the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

6.8    <u>No Party is the Drafter</u>.    This Agreement shall be deemed to have been mutually prepared by the Parties and shall not be construed against any of them solely by reason of authorship.

6.9    <u>Authority</u>.    Each person signing this Agreement hereby represents and warrants that he or she is authorized to enter into this Agreement on behalf of that Party.   Plaintiffs' Lead Counsel, on behalf of the Class, are expressly authorized by the Lead Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to this Agreement to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to this Agreement on behalf of the Class which they deem appropriate.

6.10  <u>Execution in Counterparts</u>.   The signatories to this Agreement may execute this Agreement in counterparts, and the execution of counterparts shall have the same effect as if all counsel had signed the same instrument.   Facsimile signatures shall be considered as valid signatures as of the date of this Agreement.

6.11  <u>Jurisdiction</u>.   The Court shall have exclusive jurisdiction over all provisions and terms of the Settlement, including the administration of the Settlement and the Settlement Funds and the acts to be undertaken pursuant to this Agreement and any and all disputes of any kind relating to or arising out of this Agreement.

6.12  <u>Enforcement</u>.   Once effective, this Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims.   The Parties agree that for any such proceeding, the Court or any court of competent jurisdiction may enter an injunction restraining prosecution of such proceeding.

6.13  <u>Notice</u>.   Any and all notices, requests, consents, directives, instructions or communications by any Party intended for any other Party shall be in writing and shall, unless expressly provided otherwise herein, be delivered personally, or sent by Federal Express, or facsimile transmission (followed by U.S. Mail, first-class postage prepaid), and shall be addressed as follows:

<u>If to the Class</u>:

Richard F. Scruggs
Sidney A. Backstrom
D. Zachary Scruggs
SCRUGGS LAW FIRM
120A Courthouse Square
P.O. Box 1136
Oxford, MS  38655
Tel:  (662) 281-1212
Fax:  (662) 281-1312

If to Defendants:

Helen L. Duncan
Joseph H. Park
FULBRIGHT & JAWORSKI LLP
555 S. Flower St., 41st Fl.
Los Angeles, California 90071
Tel:   (213) 892-9200
Fax:   (213) 892-9494

Any of the Parties may, from time to time, change the address to which such notices, requests, consents, directives or communications are to be delivered, by giving the other Parties prior written notice of the changed address, in the manner herein above.

IN WITNESS WHEREOF, the Parties, by and through their authorized counsel of record, have agreed to this Agreement.


FULBRIGHT & JAWORSKI L.L.P.
*Attorneys for Defendants Lehman
Brothers Inc. and Lehman
Commercial Paper, Inc.*

By: _____
Name: Helen L. Duncan
Date: August _____, 2007

THE SCRUGGS LAW FIRM
*Lead Counsel for Plaintiffs and the
Class*

By: _____
Name: Richard F. Scruggs
Date: August _28_, 2007

<u>If to Defendants:</u>

Helen L. Duncan
Joseph H. Park
FULBRIGHT & JAWORSKI LLP
555 S. Flower St., 41st Fl.
Los Angeles, California  90071
Tel:  (213) 892-9200
Fax: (213) 892-9494

Any of the Parties may, from time to time, change the address to which such notices, requests, consents, directives or communications are to be delivered, by giving the other Parties prior written notice of the changed address, in the manner herein above.

IN WITNESS WHEREOF, the Parties, by and through their authorized counsel of record, have agreed to this Agreement.

FULBRIGHT & JAWORSKI L.L.P.
*Attorneys for Defendants Lehman Brothers Inc. and Lehman Commercial Paper, Inc.*

THE SCRUGGS LAW FIRM
*Lead Counsel for Plaintiffs and the Class*

By: *HL Duncan*
Name:  Helen L. Duncan
Date: August __15__, 2007

By: _____
Name:  Richard F. Scruggs
Date: August _____, 2007

# EXHIBIT C

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No. SA CV 01-0971 DOC                               Date: June 6, 2008

Title: MICHAEL & BARBARA AUSTIN; WALTER & HARRIET BERRINGER; GEORGE &
JOSEPHINE JEROLEMON, individually and on behalf of all other similarly situated v. BRIAN
CHISICK, LEHMAN COMMERCIAL PAPER, INC. & LEHMAN BROTHERS, INC.

---

DOCKET ENTRY
    [I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
                                  Date:_____   Deputy Clerk: _____

---

PRESENT:

## THE HONORABLE DAVID O. CARTER, JUDGE

    Kristee Hopkins                        Not Present
    Courtroom Clerk                       Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

     NONE PRESENT                    NONE PRESENT

---

PROCEEDING (IN CHAMBERS): GRANTING PLAINTIFFS' MOTION FOR ORDER: (1)
                              PRELIMINARILY APPROVING SETTLEMENT; (2)
                              DIRECTING DISTRIBUTION OF NOTICE; (3) SPECIFYING
                              OBJECTION PROCEDURES; (4) SETTING SCHEDULE FOR
                              FINAL APPROVAL PROCESS; AND (5) STAYING
                              PROCEEDINGS

       Plaintiffs, Michael and Barbara Austin, Walter and Harriet Berringer, George and
Josephine Jerolemon, and all others similarly situated, ("Plaintiffs") filed this Motion seeking an Order:
a) preliminarily approving the settlement; b) directing distribution of notice; c) specifying objection
procedures; d) setting a schedule for the final approval process; and e) staying the proceedings. The
Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-
15.  After considering the moving papers, the Court hereby GRANTS Plaintiffs' Motion and ORDERS
Plaintiffs to submit a revised notice to the Court within 14 days.

---

MINUTES FORM 11 DOC                         Initials of Deputy Clerk _kh_
CIVIL - GEN                                    Page 1 of 8

## I.    BACKGROUND

This suit arises out of the fraudulent lending practices of subprime lender, First Alliance Mortgage Co. ("First Alliance'). Defendants Lehman Brothers, Inc. and Lehman Commercial Paper, Inc. (collectively "Lehman" or "Defendants") acted as a lender to First Alliance and as an underwriter for First Alliance's securitized debt. Plaintiffs, borrowers defrauded by First Alliance, brought a class action suit against Lehman on the theory that Lehman aided and abetted First Alliance's fraud.

First Alliance engaged in a campaign of targeting potential borrowers with substantial home equity and little income through telemarketing and in-person visits. Once First Alliance's sales personnel were in a borrower's home, they would give a detailed presentation from a memorized script developed by First Alliance. The presentation, while not including outright lies, was designed to mislead consumers and cause them to believe that they were being offered more favorable loans than they actually received. The key to this program was that sales representatives would refer to the "amount financed" as the "loan amount," thus hiding the fact that a number of origination fees or other "junk" fees were included in the loan.

These loans provided collateral for First Alliance to obtain revolving lines of credit from investment banking firms such as Lehman. First Alliance used these lines of credit to fund the mortgages to consumers. At some point, First Alliance began to publicly issue bonds and notes secured by the repayment streams from its loans to consumers. It used these bonds and notes, underwritten by the same investment banking firms (including Lehman), to repay the lines of credit. Once the lines of credit were repaid, First Alliance's creditors released their liens on the underlying loans, and First Alliance received the proceeds.

When First Alliance and Lehman began business in the mid-1990s, Lehman's investigators found that First Alliance had been accused of fraudulent lending practices, and was a party to a substantial number of lawsuits. Further, Lehman was aware of First Alliance's unethical business practices. With this information in hand, Lehman loaned First Alliance $25,000,000 in 1996, and engaged in four securitization transactions with First Alliance in 1996 and 1997. Subsequently, when other lenders withdrew financing from First Alliance as a result of its unsavory practices, Lehman loaned First Alliance more money –$500,000,000 between 1998 and 2000 – and became First Alliance's sole lender and underwriter.

In March 2000, a New York Times article and a segment on the ABC News program "20/20" exposed First Alliance's predatory practices. The New York Times article was also critical of the investment banking firms, such as Lehman, that funded First Alliance. Soon thereafter First Alliance filed a petition seeking Chapter 11 bankruptcy, leaving Lehman holding the bag for First Alliance's fraud.

This suit involves borrowers' claims against Lehman for aiding and abetting First

08-13555-mg   Doc 1030-1   Filed 10/15/08   Entered 10/15/08 17:04:27   Cabraser
Case 8:04-cv-00971-DOC   Document 603   Filed 06/06/2008   Page 3 of 8
Declaration (with Exhibits)   Pg 33 of 45

Alliance in fraudulent lending practices from 1998 to 2000. It was tried to a jury from February 14, 2003 to May 12, 2003. The jury returned a verdict in Plaintiffs' favor. Relying on an average of "benefit-of-the-bargain" and "out-of-pocket" measures of damages, the jury found that Plaintiffs were injured in the amount of $50,913,928, with Lehman bearing 10% fault. Accordingly, the Court ordered Defendants to pay $5,091,392.80 to the class members. The parties cross-appealed.

On appeal, the Ninth Circuit upheld the jury verdict as to liability and apportionment of fault, but reversed on the issue of damages. *See In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006). The Circuit found that an appropriate measure of damages was "out-of-pocket" damages rather than "benefit-of-the-bargain." As a result, the Circuit remanded the case for a trial on damages.

Subsequently, the parties negotiated an arms-length proposed settlement agreement. Under the terms of the agreement, class members are to receive a fund of $2,000,000, with $5,000 set aside for each of the three couples that acted as class representatives. Plaintiffs' attorneys have agreed to seek no fees in this matter, and to limit their request for unreimbursed costs to $1,500,000 – less than the sum already spent in pursuing this case.

The fund is to be distributed by claims administrators, CPT Group, Inc. ("CPT"). Under the procedure outlined in the proposed settlement, CPT will send notice to class members. The notice will lay out procedures for submitting a claim form, which includes the amount of origination fees paid by the class member, or for formally objecting to the settlement. The parties will then make a motion for final approval of the settlement and have a hearing on that motion. Any formal objectors will be given an opportunity to be heard.

If the Court does grant final approval, the fund will be distributed among class members who return claim forms in proportion to the origination fees they paid.

Plaintiffs now seek preliminary approval of the settlement.

## II.    LEGAL STANDARD

Because Plaintiffs' class is already certified, the Court need only determine whether the settlement is "fair, adequate and reasonable." Fed. R. Civ. P. 23(e)(2), To determine if a settlement is fair, some or all of the following factors should be considered: (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and duration of further litigation; (3) the risk of maintaining class certification; (4) the amount of settlement; (5) investigation and discovery; (6) the experience and views of counsel; and (7) the reaction of class members to the proposed settlement. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (1998); *Stanton v. Boeing Co.*, 327 F.3d 938, 959 (2003). To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out. *See Armstrong v. Bd. of Sch. Dirs. of the*

*City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

## III.   DISCUSSION

In broad strokes the Court finds, based on the evidence before it, that the proposed settlement is fair and reasonable taking into account the potential award, risks of future litigation, cost and potential delay. Accordingly, the Court will grant preliminary approval of the settlement. However, the proposed settlement raises concerns on two points: 1) whether class members will be given the opportunity to opt out; and 2) whether class members should be given more time to object or to file claims forms. Accordingly, the parties are also ordered to meet and confer and to submit a joint statement addressing these concerns.

### 1.   Strength of Plaintiffs' Case

It can be difficult to ascertain with precision the likelihood of success at trial. The Court cannot and need not determine the merits of the contested facts and legal issues at this stage, *see Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982), and to the extent courts assess this factor, it is to "determine whether the decision to settle is a good value for a relatively weak case or a sell-out of an extraordinarily strong case." *Livingston v. Toyota Motor Sales USA*, 1995 U.S. Dist. LEXIS 21757 (N.D. Cal. 1995). There is nothing present to suggest that the instant case falls into the latter category.

The class has already tried this case to a jury and received a favorable verdict. The only remaining issue on remand is the proper amount of damages. The jury awarded damages against Defendants in the amount of $5,091,392.80. However, on appeal the Ninth Circuit remanded on the issue of damages, indicating that this amount was improper and strongly suggesting that a lower amount was appropriate. Additionally, both parties agree that there is a real possibility that the class will be limited to an "out-of-pocket" measure of damages. If this is the case, damages may fall far short of the $2,000,000 offered in settlement of its claims. Indeed, at the previous trial Plaintiffs' expert indicated that "out-of-pocket" damages were, at most, approximately $15,000,000. This suggests that Plaintiffs' may receive $1,500,000 or less depending on the outcome of litigation.

Given the upper limitation on the potential damage award as well as the risk that the damage award will be significantly less than the potential settlement, Plaintiffs' case is not extraordinarily strong such that the settlement appears as a "sell-out."

### 2.   Risk, Expense, Complexity, and Duration of Future Litigation

There is some level of risk any time the parties are faced with the prospect of litigation. Here, as both parties recognize, there is a substantial risk that, if litigation continues, this Court will rule

that Plaintiffs' damages are limited to a measure of "out-of-pocket" expenses. Therefore, it is possible that Plaintiffs' recovery will be "substantially undermined," even though liability has been established.

      If this Court does find that "out-of-pocket" damages are appropriate, the parties will be put to the expense of proving these damages. This may well require expensive expert testimony and preparation. In addition, there is a significant chance that if the settlement is not approved, the issue of damages will be tried to a jury, and the parties could well appeal the verdict. The parties are presently faced with the prospect of a long and expensive second phase of litigation. Finally, costs in this matter presently exceed $1,500,000 with a substantially limited prospective recovery. These facts support the fairness of the present settlement.

### 3.    Amount of Settlement

      The proposed settlement provides for $2,000,000 in recovery to the class. It also provides that Plaintiffs' counsel will seek no attorneys fees, and any request for costs will be limited to $1,500,000. Any costs awarded will be taken separately from the $2,000,000 fund which will go to class members only. Finally, the proposed settlement sets aside $5,000 for each of the three couples that served as class representatives.

      The $2,000,000 figure represents approximately two-fifths of the recovery obtained at trial, which the Ninth Circuit characterized as "improper." Again, the approximately $5,000,000 recovery will likely act as an upper limit on damages, and if this Court finds that Plaintiffs are entitled only to an "out of pocket" measure of damages, even the $2,000,000 recovery could be "substantially undermined." In fact, if the Court does adopt the "out-of-pocket" measure of damages, Plaintiffs' own expert testified that they are limited to approximately $15,000,000 total (or $1,500,000 for Lehman's 10% fault). Given the limited expected value of the suit going forward, and the cost in calculating and proving damages, as well as the possibility of appeals from any ruling, $2,000,000 appears to be within the range of reasonableness.

      Typically, the Ninth Circuit uses 25% of the common fund as a benchmark for attorneys' fees. *See Torrisi v. Tuscon Electric Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *see also Ellmore v. Ditech Funding*, case no. SA CV 01-93 DOC (ANx). Under this method of computation, which would be abundantly reasonable given that this case was tried and appealed, Plaintiffs' counsel would be entitled to $500,000. However, they have agreed not to seek any attorneys' fees. This demonstrates that the attorneys are not unduly favored through the settlement, but instead, are being exceedingly benevolent and generous in their protection of the class.

      In addition, fees and costs have been paid by Plaintiffs' counsel. Plaintiffs' counsel further agreed to pay the future costs of administering the fund through CPT. However, Plaintiffs' counsel does not seek to recover any costs from the $2,000,000 set aside for the class. Instead, it will separately request costs in an amount not more than $1,500,000. This sum represents less than the

amount already spent in litigation before adding administration fees. Accordingly, this aspect of the settlement also appears quite reasonable.

Finally, each couple acting as a class representative will receive $5,000 for their services as representatives. The $15,000 total set aside is modest compared to the overall settlement of $2,000,000. Additionally, the representatives have participated in full discovery and trial of this action. All of the couples took part in responding to discovery requests, a number of the individuals were deposed, and two were called to testify at trial. Accordingly, the amount of $2,500 per person, or $5,000 per couple, appears reasonable in light of the substantial time and effort needed to participate in this litigation, their agreement to represent unnamed class members, and the need to incentivize class representation. *See In re Continental Illinois Sec. Litigation*, 962 F.2d 566, 571 (7th Cir. 1992) ("A class representative is entitled to some compensation for the expense he or she incurred on behalf of the class lest individuals find insufficient inducement to lend their names and services to the class action.")

Class members seeking recovery will be required to submit a claim form listing the amount of loan origination fees they paid to Defendants. The proceeds will be distributed to those filing claims forms based on their proportion of loan origination fees. Because the Ninth Circuit has potentially limited recovery to "out-of-pocket" damages, it is fair and reasonable to tie total recovery to the amount of origination fees. While the individuals submitting claim forms would likely recover more than they would if damages were limited to fees alone, this method of distributing the excess funds comports with fundamental fairness in that it distributes the fund according to the harm suffered.

The Settlement will release Defendants from any liability arising from the wrongs alleged in the suit, including any claim that could have been brought under the facts alleged. While Federal Rule 23 permits a court to reject a settlement for failure to provide an opt out procedure, doing so in this case is unwarranted for a number of reasons. First, class members have previously been given an opportunity to opt out. They will also be given the opportunity to formally object to the settlement. Further, the other factors weigh heavily in favor of overall fairness. Finally, most of the issues in the case have been fully litigated, limiting the potential realm of recovery and the grounds for class members to opt out.

**4.    Investigation and Discovery**

The parties have had a full trial and appeal in this matter. The issues of liability and percentage fault have been established. The extensive preparation and factual determinations already completed in this case support the fairness of the proposed settlement.

**5.    Experience and Views of Counsel and Reaction of Class Members**

Counsel in the present case have considerable experience in litigating class action suits. Both Plaintiffs and Defendants have agreed to the proposed settlement after a full trial, an appeal, and

08-13555-mg    Doc 1030-1    Filed 10/15/08    Entered 10/15/08 17:04:27    Cabraser
Case 8:01-cv-00971-DOC    Document 903    Filed 06/06/2008    Page 7 of 8
Declaration (with Exhibits)    Pg 37 of 45

extensive negotiations. There have been no formal objections. While the parties have not yet sent out notice identifying the procedure for formal objections, these objections, if any, will be thoroughly considered at the final approval hearing. Accordingly, there is no apparent reason to deny preliminary approval.

### 6.    Fraud or Collusion

The Court finds no evidence of fraud or collusion. This case was hard-fought through a full trial and an appeal. The parties have come to an arms-length settlement rather than pursue another round of litigation on the issue of damages. Finally, Plaintiffs' counsel has agreed to forgo attorneys' fees altogether. These facts suggest the lack of collusion or fraud.

### C.    Distribution of Settlement Notices

The proposed settlement provides that Plaintiffs will employ CPT as a claims administrator to mail notice to class members. CPT has twice sent out notice in this action, and so likely possesses fairly current information on the class. Additionally, Plaintiffs' counsel will provide updated information to CPT within 20 days of preliminary approval, and when they become aware of changes in that information. CPT will also update the information through the National Change of Address system. These efforts to locate class members appear reasonable. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Further, CPT will resend all returned undeliverable notices to the most recent address available for that class member.

The form of notice recommend by the parties is acceptable under Rule 23(c)(2). Given CPT's prior experience giving notice to the class, there is little risk that distribution of settlement notices will present difficulty. Accordingly, no additional notice is necessary.

### D.    Final Approval Hearing

Finally, Plaintiff asks that the Court set a schedule for the final approval process. The Court suggests the following:

Notice should be mailed within 40 days of the issuance of this Order (July 16, 2008). Class members will then be given 45 to object in writing (August 30, 2008). Further, class members seeking to appear at the Final Approval Hearing will be given 90 days to file an objection with the Court and send a copy of the same to counsel (October 14, 2008). The deadline for claims forms will be 70 days from the mailing (September 24, 2008). Per the parties' suggestion, the Motion for Final Approval will be due two weeks following the deadline for claim forms (October 8, 2008). The final approval hearing will be set for October 27, 2008.

### E.    Disposition

For the reasons set forth above, the Court hereby GRANTS Plaintiffs' Motion for Preliminary Approval of the Settlement and DIRECTS distribution of notice on or before March 4, 2008. Further the Court hereby SPECIFIES the following Objection Procedure:

Any Class Member may appear at the Final Approval Hearing and show cause why the Court should not approve the Settlement and dismiss the Action with prejudice as to Lehman, and may appear at the hearing to support or oppose Plaintiffs' Lead Counsel's application for expenses and costs provided, however, that no Class Member shall be heard unless his, her or, its objection or opposition is made in writing, signed by each individual member of the Class so objecting, and is filed, together with any papers or briefs in support of such objections, with the Court on or before October 14, 2008. All such written objections and papers shall be copied to Plaintiffs' Lead Counsel and counsel for Lehman, by first-class mail, postage prepaid, on or before October 14, 2008.

The objection shall include: (i) the complete name and residence or business address of the individual Class Member so objecting (giving the address of any lawyer who represents the Class Member is not sufficient); (ii) a statement, signed under penalty of perjury by the objecting Class Member, that the member obtained a FAMCO mortgage during the Class Period; and (iii) each ground for comment or objection and any supporting papers the Class Member desires the Court to consider.

The Court hereby SETS the following Schedule for Final Approval:

Notice should be mailed on or before July 16, 2008. Class members will be permitted to object in writing until August 30, 2008. The deadline for claims forms will be September 24, 2008. Class members seeking to appear at the Final Approval Hearing must file an objection with the Court and send a copy to counsel on or before October 14, 2008. The Motion for Final Approval shall be submitted on or before October 8, 2008. The final approval hearing shall be set for October 27, 2008 at 8:30 a.m.

Further, the Court hereby GRANTS Plaintiffs' Motion to Stay the Proceedings and ORDERS the parties to amend the proposed notice to reflect this schedule and to submit a copy thereof to the Court within 14 days of the issuance of this ORDER.

The Clerk shall serve this minute order on all parties to the action.

EXHIBIT D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| In Re FIRST ALLIANCE MORTGAGE COMPANY, a California Corporation, et al.<br><br>Related Debtors. | Case No. SA CV 01-971 DOC<br><br>**NOTICE TO CLASS MEMBERS OF SETTLEMENT AND OF CLASS PLAINTIFFS' COUNSEL'S REQUEST FOR REIMBURSEMENT OF COSTS AND EXPENSES** |
| MICHAEL and BARBARA AUSTIN; WALTER and HARRIET BERRINGER; and GEORGE JEROLEMON, individually and on behalf of all others similarly situated,<br>                    Plaintiffs,<br><br>vs.<br><br>BRIAN CHISICK; LEHMAN COMMERCIAL PAPER, INC., a New York Corporation; and LEHMAN BROTHERS, INC., a Delaware Corporation,<br>                    Defendants. | |

TO:   ALL PERSONS WHO ACQUIRED HOME MORTGAGE LOANS FROM FIRST ALLIANCE MORTGAGE COMPANY ("FIRST ALLIANCE") FROM DECEMBER 30, 1998 THROUGH MARCH 23, 2000

**THIS NOTICE MAY AFFECT YOUR RIGHTS.  PLEASE READ IT CAREFULLY.**

This Notice is being sent to you, as ordered by the United States District Court for the Central District of California, to advise you of the preliminary approval of the settlement of *Austin, et al. v. Lehman Brothers, Inc., et al.*, Case No. SA CV 01-971 DOC (the "*Austin* Class Action").  The purpose of this Notice is to provide you with a summary of the proposed settlement and to advise you of your rights as a member of the Class with respect to the proposed settlement.

### IMPORTANT DEADLINES

- **To participate in the monetary relief provided by the settlement and receive any money to which you may be entitled, you must mail a Claim Form to the Claims Administrator postmarked no later than September 24, 2008.  A Claim Form and return envelope are included in this Notice packet.**

- **If you want to object to the settlement, or some part of the settlement, you must mail your written objection to the Claims Administrator, Class Counsel, and Defendants' counsel postmarked by August 30, 2008.**

### WHAT IS THIS CASE ABOUT?

As previously disclosed in the Notice of Pendency dated December 16, 2002, mailed to Class Members (the "Notice of Pendency"), and in the Notice to Class Members of Judgment Following Trial in Class Action

1

and of Class Plaintiffs' Counsel's Request for Attorneys' Fees, dated June 30, 2004, the *Austin* Class Action is about whether Defendants Lehman Commercial Paper, Inc. and Lehman Brothers, Inc. (collectively "Lehman" or "Defendants") aided and abetted First Alliance's alleged fraudulent lending practices. In other words, this case is about whether First Alliance engaged in fraudulent lending practices in originating mortgage loans to Plaintiffs and the Class, and whether Defendants substantially assisted First Alliance and are liable to Plaintiffs and the Class. First Alliance, which is now bankrupt, was not a defendant in the *Austin* Class Action.

### WHAT HAS BEEN THE RESULT OF THE *AUSTIN* CLASS ACTION LITIGATION TO THIS POINT?

The trial of the *Austin* Class Action started on February 13, 2003, in the United States District Court for the Central District of California. On June 16, 2003, the jury returned its verdict in favor of Plaintiffs and the Class.

Pursuant to the Judgment, among other things, the members of the Class who acquired mortgage loans from First Alliance from December 30, 1998 through March 23, 2000, would have recovered the sum of $5,091,392.80 from Defendants on the claim for aiding and abetting fraud. That judgment was to bear interest from the date it was entered until the date it was fully satisfied.

In a decision filed on December 8, 2006, however, the United States Court of Appeals for the Ninth Circuit reversed that verdict as to the amount of recovery. The Court of Appeals determined that the method that the jury had used in calculating damages was improperly advantageous to Plaintiffs and the Class. It ordered that the case be returned to the District Court for further proceedings and, likely, for a new trial.

### WHO IS IN THE CLASS?

The Class defined in the Judgment consists of "all persons who acquired mortgage loans from First Alliance Mortgage Company from May 1, 1996 through March 31, 2000, which were used as collateral for First Alliance's warehouse credit line with Lehman Commercial Paper, Inc. or were securitized in transactions underwritten by Lehman Brothers, Inc., except for those persons who requested to be excluded from the Class." However, the Judgment provided that only members of the Class who acquired mortgage loans from First Alliance from December 30, 1998 through March 23, 2000, would recover on the Judgment.

The persons who excluded themselves from the Class in response to the prior Notice of Pendency were listed on an attachment to the Judgment.

### CAN I RECEIVE ANY MONEY FROM THE SETTLEMENT?

Subject to final Court Approval of the settlement, if you acquired your mortgage loan from First Alliance from December 30, 1998 through March 23, 2000, and you did not exclude yourself from the Class, you are entitled to receive a share of the relief collected for the Class. According to the terms of the settlement, Defendants have agreed to provide relief in the amount of $2,000,000. Among those members of the Class who are entitled to recovery and who timely submit Claim Forms, the $2,000,000 settlement amount will be allocated in proportion to the amount of loan origination fees paid as to mortgage loans from First Alliance from December 30, 1998 through March 23, 2000. Five thousand dollars will, however, be set aside for each of the couples that served the Class by representing them as named Plaintiffs in this legal action.

Class Members are urged to report any change of their address to the following: Austin v. Lehman Bros. Litigation, CPT Group, Inc., 16630 Aston Street, Irvine, CA 92606.

2

## WHAT WILL PLAINTIFFS' COUNSEL BE PAID?

Under the terms of the settlement, Plaintiffs' Counsel will not seek any attorneys' fees for this action. They may seek recovery of a portion of their unreimbursed costs and expenses up to a maximum of $1,500,000. Their actual costs and expenses already far exceed that amount and continue to grow. Any award of costs and expenses would be subject to Court approval and would not be deducted from the award to members of the Class.

## HOW DO I MAKE A CLAIM FOR MONEY?

If you are a Class Member, then you may be eligible to receive money from this settlement. You will receive money only if you submit a written Claim Form to the Claims Administrator, signed under oath, and postmarked no later than September 24, 2008. If you do not submit a Claim Form postmarked by September 24, 2008, then you will not receive any money from the settlement. However, even if you do not submit a Claim Form, you will still be bound by the settlement and release if it receives final approval by the Court.

A Claim Form and return envelope are included in this Notice Packet. You should review the information on the Claim Form carefully, and correct any information that is incorrect. Make sure to provide all of the information requested on the Claim Form, sign and date the Claim Form, and return it in the return envelope postmarked no later than September 24, 2008.

Those Claim Forms that are submitted on time will be evaluated by a Claims Administrator, and payments will be made to Class Members on the basis of (1) whether you acquired a mortgage loan from December 30, 1998 through March 23, 2000, (2) whether you excluded yourself from the Class, and (3) the dollar amount of loan origination fees that you paid with respect to your mortgage loan.

## RELEASE OF CLAIMS

If the Court grants final approval of the settlement, then all Class Members will release the Defendants for all claims certified by the Court in the legal action. When claims are "released," that means that a person covered by the release cannot sue the Defendants for any of the claims that are covered by the release.

The exact terms of the release are as follows:

4.1    Releases. Upon the Effective Date, Plaintiffs and each and every Class Member for themselves, their attorneys, spouses, executors, representatives, heirs, successors, and assigns, in consideration of the relief set forth herein, the sufficiency of which consideration is expressly acknowledged, fully and finally release and forever discharge the Released Persons from all Released Claims, whether or not such Class Member executes and delivers any proof of claim or release or otherwise shares in the Settlement Funds.

4.2    Release of Attorneys' Fees Claims. Plaintiffs and Plaintiffs' Counsel in this Action hereby release all claims for attorneys' fees against the Released Persons.

4.3    Third Party Beneficiaries. No person or entity other than the Released Persons shall be entitled to the benefits of, or entitled to enforce, the releases provided for in this Agreement.

4.4    Section 1542 Waiver. To the fullest extent permitted by law, Plaintiffs, on behalf of themselves and each and every Class Member, expressly waive the benefits of any statutory provision or common law rule that provides, in sum or substance, that a release does not extend to claims which the releasor does not know or suspect to exist in its favor at the time of executing the release, which if known by it, would have materially affected its settlement with the other party. In particular, but without limitation, Plaintiffs, on behalf of

3

themselves and each and every Class Member, understand the provisions of California Civil Code Section 1542, which provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs, on behalf of themselves and each and every Class Member, with the advice of counsel, hereby agree that (1) the provisions of California Civil Code Section 1542 are hereby knowingly and voluntarily waived and relinquished, and (ii) the provisions of all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction, to the extent that they are found to be applicable herein, also are hereby knowingly and voluntarily waived and relinquished. Notwithstanding the foregoing waiver of California Civil Code Section 1542, the Parties acknowledge that the releases set forth in this Agreement are specific to the matters set forth in the releases, although they include unknown claims, and are not intended to create general releases as to all claims, or potential claims, between the releasing and Released Persons.

4.5    Covenant Not to Sue.  Upon the Effective Date, each Class Member covenants and agrees to not seek to establish liability, or institute, maintain, collect, proceed, or otherwise assert any claims, demands, actions, or causes of action of any nature under federal or state law, on behalf of itself or any other person, entity or class, against any of the Released Persons, in whole or in part, for any of the Released Claims. The Parties agree that this covenant may be pled as a full and complete defense to any action, suit or other proceeding that may be instituted, prosecuted or attempted with respect to any of the Released Claims.

"Plaintiff" and/or "Plaintiffs" means Michael and Barbara Austin, Walter and Harriet Berringer, and George Jerolemon, individually and as representatives of the Class, and includes all Class Members.

"Effective Date" means the date this Settlement becomes effective as between Lehman and Plaintiffs in accordance with the provisions of Paragraph 3.7.

"Class" means and refers to all persons who acquired mortgage loans from First Alliance from December 30, 1998 through March 31, 2000, which were used as collateral for First Alliance's warehouse credit line with Lehman Commercial Paper, Inc. or were securitized in transactions underwritten by Lehman Brothers, Inc. Excluded from the Class are those persons who timely and properly opted out of the Certified Class.

"Class Member" means a Person who falls within the definition of the Class as set forth in Paragraph 1.2.

"Released Claims" means any and all claims, causes of action, demands, rights, actions, suits, liabilities, and requests for equitable, legal and administrative relief of any kind or nature whatsoever ("Claims") that have been or could have been asserted in any forum by any Plaintiff against any of the Released Persons, arising from or relating to: (i) any of the allegations, transactions, facts, events, matters, occurrences, acts, representations or omissions involved, set forth, alleged or referred to in this Action or that could have been alleged based upon the facts alleged in this Action, including without limitation any and all Claims that were or could have been asserted against Lehman under federal, state, local, statutory or common law, including but not limited to, unfair competition statutes and common law principles, unjust enrichment principles, or any other common law, statutory or equitable theory; and (ii) the purchase or other acquisition of any FAMCO mortgage loan during the Class Period, and any other matters released by Plaintiffs and Plaintiffs' Lead Counsel as set forth in Paragraph 4 of this Agreement.

"Released Persons" means Lehman and any of their Related Persons.

4

"Settlement" means the settlement of this Action and related claims effectuated by this Agreement between the Parties.

"Settlement Funds" means the amounts to be paid by Lehman pursuant to Paragraph 2.1.

"Action" means the class action entitled Michael and Barbara Austin, et al. v. Brian Chisick, et al., Case No. SA-CV-01-971 DOC, pending in the United States District Court for the Central District of California.

## THE SETTLEMENT PROCESS AND FINAL FAIRNESS HEARING

Every class action settlement must be approved by the court that presided over the class action. Thus far, the Court has decided only that the proposed settlement may be fair and so justifies the distribution of this Notice. In order to decide whether to give final approval to the proposed settlement, the Court will consider related papers and comments submitted by the parties or others and hold a hearing in open court. A Final Approval Hearing will be held on October 27, 2008, at 8:30 a.m., in the Courtroom of Judge David O. Carter, United States District Court, Central District of California, 411 W. Fourth Street, Santa Ana, California, Courtroom 9D. You may, but are not required, to attend this hearing. You may also enter an appearance in this case through your own attorney, at your own expense, if you so desire.

### OBJECTING TO THE SETTLEMENT

You may submit any objections to the proposed settlement in writing. For any such objections to be considered, they must be mailed to the Claims Administrator, Class Counsel (see p. 6 below), and Lehman's counsel (Fulbright & Jaworski LLP) by first class U.S. mail, postage prepaid, and postmarked by August 30, 2008. The Court has specified the following objection procedure:

Any Class Member may appear at the Final Approval Hearing and show cause why the Court should not approve this Settlement and dismiss the Action with prejudice as to Lehman, and may appear at the hearing to support or oppose Class Plaintiffs' Counsel's request for reimbursement of costs and expenses provided, however, that no Class Member shall be heard unless his, her or its objection or opposition is made in writing, signed by each individual member of the Class so objecting, and is filed, together with any papers or briefs in support of such objections, with the Court on or before October 14, 2008. All such written objections and papers shall be copied to Plaintiffs' Lead Counsel and counsel for Lehman, by first-class mail, postage prepaid, on or before October 14, 2008.

The objection shall include: (i) the complete name and residence or business address of the individual Class Member so objecting (giving the address of any lawyer who represents the Class Member is not sufficient); (ii) a statement, signed under penalty of perjury by the objecting Class Member, that the member obtained a FAMCO mortgage loan during the Class Period; and (iii) each ground for comment or objection and any supporting papers the Class Member desires the Court to consider.

### IF THE SETTLEMENT IS NOT APPROVED

If the settlement is not approved by the Court, it will be voided, no money will be paid, and the case will likely proceed to trial as directed by the Court of Appeals. If that happens, however, there is no assurance that the verdict at trial, if any, would be as favorable to the members of the Class as this settlement or that any such verdict would be upheld if any appeal were filed.

## CLASS COUNSEL

The Court has approved and appointed a number of firms to represent all members of the Class. Class Counsel can be reached at the following telephone number: (800) 546-4021. Class Counsel are the Scruggs Law Firm (Lead Counsel); Lieff, Cabraser, Heimann & Bernstein, LLP; Milberg LLP (f/k/a Milberg Weiss Bershad Hynes & Lerach LLP); Carroll, Warren & Parker; the Law Offices of Sheila Canavan; the Law Offices of Ashley Hutchings Hendren, PLLC; Jenkins & Mulligan; the Law Office of David B. Zlotnik; and Berger & Montague, P.C.

## FURTHER INFORMATION ABOUT THE SETTLEMENT

If you have any questions concerning this settlement or your options described in this Notice, you may contact free of charge the Claims Administrator by calling toll free (877) 846-9640, or by writing to Austin v. Lehman Bros. Litigation, CPT Group, Inc., 16630 Aston Street, Irvine, CA 92606.

You may also contact Plaintiffs' Counsel at the following address and telephone number:

Lieff, Cabraser, Heimann & Bernstein, LLP
780 Third Avenue, 48th Floor
New York, NY 10017-2024
(888) 321-1510

PLEASE DO NOT CONTACT THE COURT EXCEPT AS SPECIFIED ABOVE.

This Notice provides only a summary of matters about this action. You may seek the advice and guidance of your own private attorney, at your own expense, if you wish.

DATED: _____July 16, 2008_____.

734336.8

6