**Hearing Date and Time: November 5, 2008 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  October 31, 2008 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                                    :
In re                                               :          **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,        :          **08-13555 (JMP)**
                                                    :
                              **Debtors.**          :          **(Jointly Administered)**
                                                    :
                                                    :
----------------------------------------------------------------x

## NOTICE OF DEBTORS' MOTION FOR
## ENTRY OF AN ORDER PURSUANT TO SECTION
## 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF
## BANKRUPTCY PROCEDURE 6004 AUTHORIZING LEHMAN BROTHERS
## HOLDINGS INC. TO ENTER INTO A SALE AND PURCHASE AGREEMENT

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases (together, the "Debtors") for entry of an order, pursuant to section 363 of title 11 of the

United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") approving the Debtors' entry into an aircraft sale and

purchase agreement, dated October 13, 2008, as more fully described in the Motion, will be held

before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States

Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **November 5, 2008 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck ("Chambers"), One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn:  Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; (v) the attorneys for any other official committee(s) appointed in these chapter cases; (vi) Cleary Gottlieb LLP, One Liberty Plaza, New York, NY 10006, Attn:

Lindsee P. Granfield, Esq.  and Lisa Schweitzer, Esq. and Sullivan & Cromwell LLP, 125 Broad

Street, New York, NY 10004, Attn:  Robinson B. Lacy, Esq. and Hydee R. Feldstein, Esq.,

attorneys for the Debtors' postpetition lenders; and (vii) any person or entity with a

particularized interest in the Motion, so as to be received no later than **October 31, 2008, at 4:00**

**p.m. (prevailing Eastern Time)** (the "Objection Deadline").

        PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

        PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  October 15, 2008
      New York, New York

                          /s/ Alfredo R. Perez
                          Harvey R. Miller
                          Richard P. Krasnow
                          Lori R. Fife
                          Shai Y. Waisman
                          Jacqueline Marcus

                          WEIL, GOTSHAL & MANGES LLP
                          767 Fifth Avenue
                          New York, New York 10153
                          Telephone: (212) 310-8000
                          Facsimile: (212) 310-8007

                          Attorneys for Debtors
                          and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                          :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
| | : | |

----------------------------------------------------------------x

**DEBTORS' MOTION FOR ENTRY
OF AN ORDER PURSUANT TO SECTION 363 OF
THE BANKRUPTCY CODE AND FEDERAL RULE OF
BANKRUPTCY PROCEDURE 6004 AUTHORIZING LEHMAN BROTHERS
HOLDINGS INC. TO ENTER INTO A SALE AND PURCHASE AGREEMENT**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

         Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully

represent:

## Background

1.       Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.       On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.       On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

## Jurisdiction

4.       This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Lehman's Business

5.       Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.  Its headquarters in New

York and regional headquarters in London and Tokyo are complemented by a network of offices

in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

6.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit

of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District

of New York in Support of First-Day Motions and Applications, filed on September 15, 2008

[Docket No. 2].

### The CES Aviation, LLC Transaction

7.      CES Aviation, LLC (the "Seller"), a Delaware limited liability company,

was formed in 2001.  It is a direct, wholly-owned subsidiary of LBHI.  Seller filed for chapter 11

protection on October 5, 2008.  Seller's principal asset and business was to hold this Aircraft.

The Aircraft provided business facilitation transportation for LBHI prior to these chapter 11

cases.

8.      In June 2008, Seller initiated a competitive Request for Proposal Process

with six brokers for the sale of Seller's aviation assets.  The selected bidding brokers were

chosen based on a market-knowledge survey, their aviation industry sales experience, references,

and proposed commission fees.  The six brokers provided Seller with commission bids that

differed in price by over $100,000.  Seller ultimately selected the broker, Bloomer de Vere

Group Avia Inc. (the "Broker"), who Seller felt best-fit all criteria, and whose commission bid

was also the lowest.  During final contract negotiations, Seller and Broker agreed to a sliding

scale commission rate, which provided further incentive for Broker to seek the highest bid

possible for Seller's aviation assets.

9.      Seller then focused on a competitive bidding process to sell its aircraft, a Gulfstream Aerospace G-IV bearing Manufacturer's Serial Number 1448 and U.S. Registration Mark N300LB (the "Aircraft").[1] Seller received a range of bids for the Aircraft from various interested parties. Seller ultimately agreed to a transaction with Pegasus AV, LLC (the "Purchaser"), a Delaware limited liability company on September 25, 2008, and a Letter of Intent was signed on September 27, 2008. The Aircraft was moved to Scottsdale, Arizona on September 29, 2008, at Purchaser's expense, for Purchaser's visual inspection. Thereafter, with Purchaser's expressed intention to go to contract, the Aircraft was moved to its current location, Long Beach, California, where final inspection is to occur and delivery is to be made.

10.      As set forth above, prior to Seller's petition for bankruptcy, Seller and Purchaser had engaged in extensive arms'-length negotiations, and were just days away from signing when Seller filed for chapter 11 protection. However, negotiations continued postpetition, and Seller and Purchaser entered into an Aircraft Sale and Purchase Agreement (the "Sale Agreement") on October 13, 2008. Pursuant to the Sale Agreement, the Seller will transfer, and the Buyer will purchase, the Aircraft in exchange for Twenty Five Million Four Hundred Thousand Dollars ($25,400,000) (the, "Purchase Price"). A true and correct copy of the Sale Agreement is annexed hereto as Exhibit 1.

11.      The Sale Agreement includes the following salient provisions:[2]

- Purchase and Sale of Asset. The Seller shall sell or cause to be sold and deliver the Aircraft to Purchaser, and the Purchaser shall purchase and

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Sale Agreement. Insofar as there are any inconsistencies between this summary description of the Sale Agreement and the Sale Agreement, the terms of the Sale Agreement shall control.

[2] To the extent there are any inconsistencies between the summary description of the Sale Agreement contained herein and the terms and conditions of the Sale Agreement, the terms of the Sale Agreement control.

accept delivery of the Aircraft, on and subject to the terms and condition
set forth in the Sale Agreement.

- Deposit.  Purchaser wire transferred the Deposit in the amount of Two
  Hundred Fifty Thousand Dollars ($250,000) to the Escrow Agent on
  October 14, 2008 and the Escrow Agent has confirmed receipt thereof.
  The Deposit shall be held by the Escrow Agent and shall be applied
  towards the Purchase Price at the Closing except as otherwise set forth
  in the Sale Agreement. Upon Purchaser's transmittal of its Technical
  Acceptance/Rejection Letter setting forth the acceptance of the technical
  condition of the Aircraft, the Deposit shall be non-refundable to Purchaser,
  except as otherwise set forth herein.

- Aircraft Condition and Inspection.  It shall be a condition to Purchaser's
  obligation to consummate the transaction that the Aircraft shall be in the
  Delivery Condition, as defined in the Sale Agreement, on the Closing
  Date.

  - The Aircraft shall be subjected to an Inspection by the Inspection
    Facility, which shall be undertaken at Purchaser's sole cost and
    expense and in a manner set forth in the Sale Agreement, in order to
    verify that the Aircraft is in the Delivery Condition.  Purchaser's
    financial responsibility associated with the Inspection shall be limited
    to (i) the Movement Costs and (ii) in the event the Sale Agreement is
    terminated due to Purchaser's inability to satisfy certain Conditions
    Precedent, the sum of Ten Thousand Dollars ($10,000) representing
    the cost associated with returning the Aircraft to its prior location.

  - The Inspection shall be performed at the Inspection Facility. Seller, at
    its sole cost and expense, except for the Movement Costs (which shall
    be the responsibility of Purchaser), shall deliver the Aircraft and the
    Aircraft Documents to the Inspection Facility as soon as practicable.

  - Within two (2) Business Days after the completion of the Inspection,
    Purchaser will (i) accept the Aircraft, (ii) accept the Aircraft, subject to
    repair of all Discrepancies, or (iii) reject the Aircraft if  the Inspection
    Facility determines that the Aircraft cannot be made to comply with
    the Delivery Condition.

- Termination.  The Sale Agreement is terminated at anytime prior to
  Closing if, *inter alia*, the Purchaser rejects the Aircraft following the
  Inspection, or the Bankruptcy Court has not entered an order approving
  the Sale Agreement within thirty (30) calendar days of October 13, 2008,
  and the Purchaser terminates the Agreement upon written notice to Seller
  and Escrow Agent within five (5) calendar days. In the event Purchaser
  has not provided the foregoing notice of termination and the Bankruptcy

Court has not entered an order approving the transaction contemplated by the Sale Agreement within forty-five (45) calendar days of October 13, 2008, either party may terminate the Sale Agreement upon written notice to the other party and Escrow Agent.

- Irrevocable Financing Commitment. Purchaser shall have obtained an irrevocable commitment from The Northern Trust Company to finance the Purchase Price of the Aircraft upon terms and conditions acceptable to Purchaser, in its sole discretion. In the event the foregoing condition is not satisfied on or before October 27, 2008, Purchaser shall give written notice thereof to Seller and Escrow Agent, whereupon Escrow Agent shall forthwith return the Deposit to an account designated by Purchaser, without any consent of Seller or other party being required, and this Agreement shall be automatically terminated.

- Balance of Purchase Price. Prior to the Closing, Purchaser shall deliver, or cause to be delivered, the Balance of the Purchase Price, plus one-half of the Escrow and Title Search Fee, plus all Movement Costs.

- Delivery of Aircraft. Prior to the Closing, Seller shall position the Aircraft at the Delivery Location and Purchaser shall reimburse Seller the Movement Costs with respect to such flight.

- Conditions Precedent. Sellers obligation to sell and deliver the Aircraft and Purchaser's obligation to purchase and accept delivery on the Closing Date shall be subject to several conditions precedent.

- Release of Liens. At the time of Closing, Seller represents and warrants that Seller shall own good and marketable title to the Aircraft, free and clear of all Liens.

- Limitation of Liability. Except as otherwise noted in the Purchase Agreement, the Aircraft is being sold and delivered in "as is, where is, with all faults" condition, and all delivery conditions specified in the Sale Agreement shall expire and be of no further force or effect as of the Closing.

- Taxes. Purchaser shall pay any sales, use, excise and other similar taxes as a result of the sale, delivery or transfer of the Aircraft to Purchaser, or the ownership, possession, use or storage of the Aircraft by Purchaser.

- Third-Party Warranties and Maintenance Program/Service Plans Contracts. All effective rights under warranties from manufacturers and service providers or suppliers with respect to the Aircraft are assigned and transferred to Purchaser effective at the time of the Closing.

- <u>Seller's Right to Continue Marketing the Aircraft</u>.  Seller will continue to market the Aircraft through Broker until the irrevocable financing commitment is satisfied.

- <u>Transaction Costs and Expenses</u>.  Seller shall be solely responsible for the fees of the Broker, which fees Seller may direct Escrow Agent to pay to the Broker at Closing out of the Purchase Price proceeds. Purchaser and Seller shall each pay one-half (½) of the Escrow and Title Search Fee relating to the transactions contemplated hereby.

12.    Should the transaction not be consummated, LBHI will incur certain costs related to movement of the Aircraft (other than Movement Costs, as defined in the Sale Agreement), of approximately thirty thousand dollars ($30,000), which will be reimbursed to the Purchaser, and the cost of retrieving the plane from California, an estimated forty thousand dollars ($40,000).  Seller believes the proposed sale to be meritorious based on an extensive bidding process, the sale being a cash transaction, the transparency of the end buyer, and in light of what is an increasingly soft market.

### Extraordinary Provisions in the Sale Agreement

13.    Certain aspects of the Sale Agreement may contain Extraordinary Provisions, as defined in General Order M-331, dated September 5, 2006:

- <u>Private Sale/No Competitive Bidding</u>.  The Sale Agreement does not provide for competitive bidding.  Seller actively engaged in a competitive bidding process prior to filing for chapter 11 protection and is satisfied that all interested, qualified buyers were afforded the opportunity to bid on the Aircraft. The time and effort associated with marketing the Aircraft for sale at a public auction would needlessly duplicate the previous efforts made by Seller in negotiating this Sale and would far exceed any benefit to be derived therefrom.

### Outstanding Invoices

14.    In addition to approval of the Sale Agreement, Debtors also seek permission to pay certain outstanding invoices.  These invoices reflect flight support activity expenses incurred in the ordinary course of business of operating the Aircraft and are

summarized as follows:  (i) aircrew training expenses in the amount of $27,621.06; (ii) travel and

preparation for aircrew expenses in the amount of $491.79; (iii) hangar, fuel, and maintenance

expenses in the amount of $21,624.72; (iv) expenses incurred in positioning the Aircraft in

Scottsdale, Arizona for Purchaser's inspection in the amount of $20,046.28; and (v) various other

operating expenses in the amount of $41,265.45.  The outstanding invoices are listed in greater

detail in a Schedule annexed hereto as <u>Exhibit 2</u>.

15.    At the time of Closing, Seller represents and warrants that Seller shall own

good and marketable title to the Aircraft, free and clear of all liens. The invoices reflect ordinary

course expenses, the nonpayment of which could result in a lien (or liens) on the Aircraft.  Thus,

the payment of these outstanding invoices is necessary to the successful sale of this Aircraft.

## **<u>Broker Fees</u>**

16.    Debtors respectfully request permission to pay the fees of the Broker in

the amount of One Hundred Fifty-Eight Thousand Five Hundred Dollars ($158,000) in

connection with the sale of the Aircraft.  Seller retained Broker based on Broker's market-

knowledge, aviation industry sales experience, references, and proposed commission fee, which

was the lowest fee proposed to Seller.  Broker assisted Seller in obtaining competitive bids for

the Aircraft from qualified purchasers, which ultimately led to the Sale Agreement with

Purchaser.  In accordance with the Sale Agreement, Seller agrees to be solely responsible for the

fees of the Broker, which fees Seller may direct Escrow Agent to pay to the Broker at Closing

out of the Purchase Price proceeds.  Should Debtors not pay the fees of the Broker, Seller will be

in violation of the Sale Agreement.  Thus, it is in Debtor's best interest to pay the fees of the

Broker.

**Relief Requested**

17.     The Debtors respectfully request entry of an order pursuant to sections 363 of the Bankruptcy Code and Bankruptcy Rule 6004 approving the Sale Agreement and authorizing the Debtors to consummate the transactions contemplated therein.

**The Proposed Sale is an Appropriate**
**Exercise of the Debtors' Business Judgment and Should be Approved**

18.     Ample authority exists for approval of the proposed sale.  Section 363 of the Bankruptcy Code provides, in relevant part, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Although section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, courts in the Second Circuit and others, in applying this section, have required that it be based upon the sound business judgment of the debtor.  *See In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same).

19.     Moreover, Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."  Courts often allow a chapter 11 debtor to sell assets outside the ordinary course of business by private sale when the debtor demonstrates that the sale is permissible pursuant to section 363(b) of the Bankruptcy Code.  *See, e.g., In re Loral Space & Communications Ltd., et al.*, Case No. 03-41710 (RDD) (Bankr. S.D.N.Y. Sep. 30, 2005); *In re International Wire Group, Inc., et al.*, Case No. 04-11991 (BRL) (Bankr. S.D.N.Y. June 10, 2004); *Palermo v. Pritam Realty, Inc. (In re Pritam Reality,*

*Inc.),* 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Wieboldt Stores, Inc.*, 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale); *In re Condere Corp.*, 228 B.R. 615 (Bankr. S.D. Miss. 1998) (approving a private sale of a chapter 11 debtor's assets where the standards of section 363(b) were met). Here, as mentioned above, the Broker had an incentive to seek the highest possible bid for the Aircraft and an extensive bidding process took place. Thus, Seller believes all potential, qualified bidders were afforded the opportunity to bid on the Aircraft and that the purchase price is fair and reasonable.

20.     Moreover, the exigent circumstances surrounding these chapter 11 cases support the Debtors' decision to pursue a private sale. The time and effort associated with marketing the Aircraft for sale at a public auction would needlessly duplicate the previous efforts made by Seller in negotiating this Sale Agreement and would far exceed any benefit to be derived therefrom. The Debtors therefore submit that holding a public auction for the Aircraft is unnecessary and would only entail unwarranted delay and additional expense.

21.     For all these reasons, the Debtors believe that the proposed payment of Twenty Five Million Four Hundred Thousand Dollars ($25,400,000) in exchange for the Aircraft is both reasonable and in the best interests of the Debtors, their estates, and their creditors. The Sale Agreement, therefore, should be approved pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 6004.

### Sale of the Aircraft Free and
### Clear of Liens, Claims, Encumbrances, and Interests

22.     Although Seller is unaware of any lien on the Aircraft, it is appropriate for the Aircraft to be sold to the Purchaser free and clear of liens, claims, encumbrances, and interests pursuant to section 363(f) of the Bankruptcy Code, with any such liens, claims,

encumbrances, or interests to attach to the net sale proceeds of the sale of the Aircraft. *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition.); *Circus Time, Inc. v. Oxford Bank & Trust (In re Circus Time, Inc.)*, 5 B.R. 1, 8 (Bankr. D. Me. 1979) (finding the Court's power to sell property free and clear of liens has long been recognized); *see also In re Riverside Inv. P'ship*, 674 F.2d 634, 640 (7th Cir. 1982) ("Generally, in a 'free and clear' sale, the liens are impressed on the proceeds of the sale and discharged at the time of sale….").

23.     Any lien, claim, encumbrance, or interest in the Aircraft will be adequately protected by attachment to the net proceeds of the sale, subject to any claims and defenses the Debtors may possess with respect thereto. *See In re Circus Time, Inc.*, 5 B.R. at 7. Moreover, any party that may hold a lien on the Assets (and the Debtors are not aware of such a lien) could be compelled to accept a monetary satisfaction of such interests, satisfying section 363(f)(5) of the Bankruptcy Code. Thus, sale of the Aircraft free and clear of liens, claims, encumbrances, and interests will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code. Accordingly, the Aircraft is to be transferred to Purchaser free and clear of all liens, claims, encumbrances, and interests, with any such liens, claims, encumbrances, and interests to attach to the net sale proceeds realized from the sale.

### Good Faith Purchasers

24.     Section 363(m) of the Bankruptcy Code protects the sale of a debtor's property to a good faith purchaser. Section 363(m) provides,

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such

> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m).

25.     Here, the terms and conditions of the sale of the Aircraft to the Purchaser
were negotiated by the Seller and the Purchaser at arms'-length and in good faith.  Accordingly,
the Debtors request the Court determine that the Purchaser is acting in good faith and entitled to
the protections afforded to good faith purchasers under section 363(m) of the Bankruptcy Code.

**Relief Under Bankruptcy Rule 6004(g)**

26.     Bankruptcy Rule 6004(g) provides that an "order authorizing the use, sale
or lease of property . . . is stayed until expiration of 10 days after entry of the order, unless the
Court orders otherwise."  Fed. R. Bankr. P. 6004(g).  The Debtors request that any order
authorizing the Debtors to enter into the Sale Agreement be effective immediately.   Everyday
the Debtors risk losing valuable business opportunities, as well as employees with critical
knowledge of the business.  Accordingly, the parties wish to begin preparing for the Closing
without delay.

**Notice**

27.     No trustee or examiner has been appointed in these chapter 11 cases.  The
Debtors have served notice of this Motion in accordance with the procedures set forth in the
order entered on September 22, 2008 governing case management and administrative procedures
for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'
Committee; (iii) the attorneys for the Debtors' postpetition lenders; (iv) the Securities and
Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Attorney for the

Southern District of New York; and (vii) the all parties who have requested notice in these

chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

28.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  October 15, 2008
        New York, New York

/s/ Alfredo R. Perez
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## **EXHIBIT 1**

## **THE SALE AGREEMENT**

**EXECUTION COPY**

# AIRCRAFT SALE AND PURCHASE AGREEMENT

Dated as of the 13th day of October 2008

between

CES Aviation, LLC,

as Seller,

and

Pegasus AV, LLC,

as Purchaser,

concerning the aircraft Gulfstream Aerospace G-IV (Gulfstream G-IVSP) bearing

Manufacturer's Serial Number 1448

and

U.S. Registration Mark N300LB

## AIRCRAFT SALE AND PURCHASE AGREEMENT

This **AIRCRAFT SALE AND PURCHASE AGREEMENT** (this **"Agreement"**) is made and entered into as of the 13th day of October 2008 by and between CES Aviation, LLC, a Delaware limited liability company (**"Seller"**), and Pegasus AV, LLC, a Delaware limited liability company or its permitted assignee/designee (**"Purchaser"**).

### W I T N E S S E T H :

**WHEREAS,** Seller owns the Aircraft described and referred to herein and wishes to sell the Aircraft to Purchaser;

**WHEREAS,** Purchaser desires to purchase the Aircraft from Seller; and

**WHEREAS,** Purchaser desires that the acquisition of the Aircraft qualify as a like kind exchange within the meaning of Section 1031 of the Internal Revenue Code of 1986, as amended (**"IRC"**), and the Treasury Regulations promulgated thereunder.

**NOW, THEREFORE,** in consideration of these premises and the mutual covenants and agreements herein contained, the parties agree as follows:

### ARTICLE I. DEFINITIONS

1.1    The following terms shall have the following meanings for all purposes of this Agreement:

**"Aircraft"** means the Gulfstream Aerospace model Gulfstream G-IV (commonly known as Gulfstream G-IVSP) (described on the International Registry drop-down menu with manufacturer designation: Gulfstream, model designation: G-IV (G-IVSP) aircraft, bearing manufacturer's serial number 1448 and U.S. registration mark N300LB (the **"Airframe"**), together with two (2) installed Rolls Royce Tay MK611-8 (described on the International Registry drop-down menu with manufacturer's designation: Rolls Royce, model designation: TAY 611) engines, bearing manufacturer's serial number 18026 (Left) and 18024 (Right) (the **"Engines"**), (i) one (1) installed Garrett model GTCP 36-100G auxiliary power unit bearing manufacturer's serial number P-879 (the "APU"), (ii) all appurtenances, appliances, parts, avionics, instruments, components, accessions, furnishings, items of equipment and accessories installed thereon, (iii) loose equipment specifically included on the Aircraft Specification and/or the Inventory Listing, and (iv) all Aircraft Documents.

**"Aircraft Documents"** means all documents and records relating to or required to be maintained with respect to the Aircraft, including, without limitation, a current and valid Airworthiness Certificate, all Airframe, Engine, APU and accessory logbooks, manuals, flight records, weight and balance manuals, tags, technical records, traceability records, task cards, information, overhaul records, maintenance records, maintenance contracts, computerized maintenance programs, airframe and aircraft component warranties, engine warranties, auxiliary power unit warranties, avionics warranties, wiring diagrams, drawings, data, completion manuals and all issued FAA Form 337's and any and all other records related to the Aircraft that are in Seller's possession and control.

**"Aircraft Protocol"** means the official English language text of the Protocol to the Convention.

**"Aircraft Registration Application"** means an FAA Aeronautical Center Form 8050-1 Aircraft Registration Application.

**"Aircraft Specification"** means the Aircraft Specification set forth on <u>Exhibit A</u> attached hereto.

**"Airworthiness Certificate"** means an FAA Standard Airworthiness Certificate (FAA Form 8100-2).

**"APU JSSI"** means the JSSI Program 100% with respect to the APU of the Aircraft.

**"Balance of the Purchase Price"** means the amount of Twenty Five Million One Hundred Fifty Thousand Dollars ($25,150,000.00), *i.e.,* the Purchase Price minus the Deposit received by the Escrow Agent.

**"Bankruptcy Court"** has the meaning set forth in Subsection 4.1.5.

1

**"Business Day"** means any day of the year in which (i) banks are not authorized or required to close in the State of New York and/or California; and (ii) the FAA is open for filing title documents.

**"CMP"** means the Gulfstream's Computerized Maintenance Program applicable to the Aircraft.

**"Cape Town Convention"** means, collectively, the Convention and the Aircraft Protocol.

**"Closing"** means the consummation of the purchase and sale transaction contemplated by this Agreement.

**"Closing Date"** means the date the Closing occurs.

**"Convention"** means the official English language text of the Convention on International Interests in Mobile Equipment, adopted on 16 November 2001, at a diplomatic conference in Cape Town, South Africa.

**"Delivery Condition"** means that the Aircraft at the Closing shall satisfy, comply and be consistent with the required items and conditions set forth in Exhibit B attached hereto.

**"Delivery Flight"** means the flight necessary to relocate the Aircraft from the Inspection Facility to the Delivery Location.

**"Delivery Location"** means Portland International Airport (KPDX), Portland, Oregon or such other location within the 48 contiguous states of the continental United States mutually agreed between Seller and Purchaser.

**"Delivery Receipt"** means an Aircraft Delivery Receipt in the form of Exhibit D attached hereto.

**"Deposit"** means a purchase money deposit in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00), which is refundable, subject to the terms and conditions of this Agreement.

**"Discrepancy" or "Discrepancies"** means any defect, the correction of which is necessary to cause the Aircraft to be in the Delivery Condition, but does not include "cosmetic" defects to any part of the Aircraft resulting from normal wear and tear associated with prior usage of the Aircraft.

**"Dollar, dollar, US$, $"** means the lawful currency of the United States of America from time to time.

**"Engines JSSI"** means JSSI Program 100% with respect to the Engines of the Aircraft.

**"Escrow Agent"** means Insured Aircraft Title Service, Inc., 4848 S.W. 36th Street, Oklahoma City, OK 73179; tel: (800) 654-4882 or (405) 681-6663 (Attn: Joan Roberts).

**"Escrow and Title Search Fee"** means an amount not to exceed the sum of Nine Thousand Dollars ($9,000.00).

**"FAA"** means the Federal Aviation Administration.

**"FAA Bill of Sale"** means an FAA Aeronautical Center Form 8050-2 Aircraft Bill of Sale.

**"FAA Civil Aviation Registry"** means the FAA Civil Aviation registry, Aircraft Registration Branch, Mike Monroney Aeronautical Center, 6500 South MacArthur Boulevard, Oklahoma City, Oklahoma  73169.

**"FAR"** means the Aeronautics Regulations of Title 14, Parts 1 to 399 of the United States Code of Federal Regulations, as amended.

**"Inspection"** means the Gulfstream Aircraft/Records and Condition Survey.

**"Inspection Facility"** means the Gulfstream Aerospace Corporation Long Beach Service Center located at Long Beach/Daugherty Field (KLGB), California .

**"International Interest"**   has the meaning given to it in the Convention.

**"International Registry"** means the international registry located in Dublin, Ireland, established pursuant to the Cape Town Convention.

2

**"International Registry Procedures"** means the official English language text of the Procedures of the International Registry issued by the supervisory authority thereof pursuant to the Cape Town Convention.

**"International Registry Regulations"** means the official English language text of the Regulations of the International Registry issued by the supervisory authority thereof pursuant to the Cape Town Convention.

**"Inventory Listing"** means an inventory of parts, loose equipment, engine covers, tool kits, and spares, if any, pertaining to the Airframe and Engines to be prepared jointly by Purchaser and Seller during the Inspection.

**"Lien"** means any lien, mortgage, security interest, lease or other demand, charge or encumbrance or claim or right of others, including, without limitation, rights of others under any engine or parts interchange, loan, lease, or pooling agreement, and any air navigation (*e.g.,* Transport Canada, EuroControl), or other similar over flight charges, and any domestic or foreign, taxes, imposts or assessments and any International Interests, relating to the period prior to the Closing Date and not created by or through Purchaser.

**"Material Corrosion"** means corrosion to the Aircraft the repair of which constitutes a Material Damage or materially adversely affects the value of the Aircraft.

**"Material Damage"** means any damage to the Aircraft or any part thereof that requires, required or would have required (i) the issuance of an FAA Form 337; (ii) any deviation from the approved manufacturer's aircraft build specifications or standard production configuration; or (iii) an alteration or repair, which would constitute a "major repair" as such term is defined in 14 C.F.R., Part 43, Appendix A and/or recorded in a manner prescribed by 14 C.F.R., Part 43, Appendix B, or otherwise in the log books or records of the Aircraft or in an insurance claim or otherwise.

**"Movement Costs"** means with respect to the ferry flight to the Inspection Facility, the test flight(s) conducted as part of the Inspection and the ferry flight to the Delivery Location, only the cost of the fuel and any other consumables consumed during each of such flights, the Engines JSSI and the APU JSSI charges applicable to the foregoing flights, any landing and ground handling fees related thereto and hotel accommodations for the flight crew, if applicable.

**"Purchase Price"** means the amount of Twenty Five Million Four Hundred Thousand Dollars ($25,400,000.00).

**"Seller's Broker"** means Bloomer deVere Group Avia Inc.

**"Technical Acceptance/Rejection Letter"** means an Aircraft Technical Acceptance/Rejection Letter in the form of Exhibit C attached hereto.

**"Warranties Assignments"** means collectively the Gulfstream Aerospace Corporation Assignment of Warranties in the form of Exhibit E attached hereto or such other form of assignment customarily used by Gulfstream Aerospace Corporation with respect to the manufacturer's warranties in effect for the Aircraft and the Assignment of Warranties in the form of Exhibit E-1 attached hereto with respect to any and all other applicable warranties and maintenance and service contracts and programs relating to the Aircraft.

**"Warranty Bill of Sale"** means a Warranty Bill of Sale for the Aircraft in the form of Exhibit F attached hereto.

### ARTICLE II. AGREEMENT TO PURCHASE AND SELL

2.1     **Agreement**.  For and in consideration of the Purchase Price, on the Closing Date, Seller shall sell or cause to be sold and deliver the Aircraft to Purchaser, and Purchaser shall purchase and accept delivery of the Aircraft from Seller, on and subject to the terms and conditions set forth herein.

2.2     **Deposit**.  Purchaser shall wire transfer the Deposit to the Escrow Agent in immediately available funds within two (2) Business Days of the execution of this Agreement by both parties.  The Deposit shall be held by the Escrow Agent and shall be applied towards the Purchase Price at the Closing except as otherwise set forth herein.  Upon Purchaser's transmittal of its Technical Acceptance/Rejection Letter setting forth the acceptance of the technical condition of the Aircraft, the Deposit shall be non-refundable to Purchaser, except as otherwise set forth herein.

3

## ARTICLE III. AIRCRAFT CONDITION AND INSPECTION

3.1     **Aircraft Condition**. It shall be a condition to Purchaser's obligation to consummate the transaction contemplated herein that the Aircraft shall be in the Delivery Condition on the Closing Date.

3.2     **Inspection Authority**. The Aircraft shall be subjected to an Inspection by the Inspection Facility, which shall be undertaken at Purchaser's sole cost and expense, in order to verify that the Aircraft is in the Delivery Condition, including a video boroscope inspection of the Engines and the APU, a ground power run of the Engines to confirm that each Engine is able to produce its rated take-off thrust, a hard landing inspection, a complete records review, and a flight test of no more than three (3) hours duration, subject to an additional test flight if required by the Inspection Facility to verify the correction or repair of all Discrepancies. Purchaser's financial responsibility for costs associated with the foregoing test flight(s) shall be limited to (i) the Movement Costs and (ii) in the event this Agreement is terminated due to Purchaser's inability to satisfy any of the conditions precedent set forth in Section 4.2 (other than as  set forth in Subsection 4.2.6), the sum of Ten Thousand Dollars ($10,000) representing the cost associated with returning the Aircraft to its prior location. Prior to commencement of the Inspection, Purchaser shall open the work order of the Inspection Facility for its account and pre-pay the quoted cost of the Inspection by the Inspection Facility, provide Seller proof of payment thereof, and Seller shall authorize the Inspection Facility to perform the Inspection. All test flights shall be in accordance with the Inspection procedures, reference flight evaluation checklist and operational checks of the Inspection Facility and shall be flown by Seller's pilots or pilots provided and approved by the Inspection Facility. Seller shall have and retain "operational control" of the Aircraft as defined in the applicable FAR (operational control as defined in FAR § 1.1, means, with respect to a flight, the exercise of authority over initiating, conducting or terminating a flight) and exclusive possession, command and control over the Aircraft. The pilot-in-command shall have final and complete authority to postpone or cancel any flight for any reason or condition which, in his or her judgment, will compromise the safety of the flight. The parties further acknowledge and agree that only personnel essential to the safe and reasonable conduct of the test flights shall be on board the Aircraft, including three (3) technical representatives of Purchaser (with one pilot occupying the jump seat).

3.3     **Inspection Location and Commencement**. The Inspection shall be performed at the Inspection Facility. Seller, at its sole cost and expense, except for the Movement Costs (which shall be the responsibilities of Purchaser), shall deliver the Aircraft and the Aircraft Documents to the Inspection Facility as soon as practicable. After commencement of the Inspection and until Closing or earlier termination of this Agreement, Seller shall not operate the Aircraft for any purpose whatsoever, other than the test flight(s).

3.4     **Aircraft Acceptance/Rejection.** Within two (2) Business Days after the completion of the Inspection, Purchaser will (i) accept the Aircraft, (ii) accept the Aircraft, subject to repair of all Discrepancies, or (iii) reject the Aircraft if the Inspection Facility determines that the Aircraft cannot be made to comply with the Delivery Condition, by delivering to Seller, with a copy to Escrow Agent, a completed, executed Aircraft Technical Acceptance/Rejection Letter with the applicable line marked to show Purchaser's acceptance or rejection. In the event Purchaser rejects the Aircraft following the Inspection as set forth in Section 3.2, upon confirmation that Purchaser has paid or made satisfactory arrangements for the payment of the costs and expenses of the Inspection and the Movement Costs, the Deposit shall immediately be refunded to Purchaser, and this Agreement shall terminate and be of no further force or effect and neither party shall have any further liability or obligation hereunder. In the event Purchaser accepts the Aircraft as set forth hereinabove under (i) or (ii), the Deposit shall become nonrefundable subject to the repair of all Discrepancies required to make the Aircraft comply with the Delivery Condition.

3.5     **Correction of Discrepancies**. If Purchaser has not rejected the Aircraft pursuant to the Aircraft Acceptance/Rejection Letter, Seller, at its cost and expense, shall cause all Discrepancies to be corrected to the satisfaction of the Inspection Facility. Any other items which are not Discrepancies shall be the sole responsibility of Purchaser and their corresponding corrective action may not extend the Closing Date.

## ARTICLE IV.  CLOSING PROCEDURES

4

4.1    **Pre-Closing Obligations**.

4.1.1.  Within two (2) Business Days following opening of escrow, Escrow Agent shall prepare and deliver to Purchaser and Seller title reports for the Aircraft and each of the Aircraft's Engines, which reports shall include relevant information from both the FAA Civil Aviation Registry and the International Registry.

4.1.2.  Prior to the Closing, Seller shall cause to be delivered to Escrow Agent:

4.1.2.1  an undated, but otherwise fully executed, FAA Bill of Sale, which shall include the description of the Engines, conveying title from Seller to Purchaser;

4.1.2.2  an undated, but otherwise fully executed, Warranty Bill of Sale conveying title from Seller to Purchaser;

4.1.2.3  releases of all Liens, if any, affecting title to the Aircraft or the Engines; and

4.1.2.4  fully executed Warranties Assignments

4.1.3  Prior to the Closing, Purchaser shall deliver, or cause to be delivered, to Escrow Agent:

4.1.3.1  an undated, but otherwise fully executed, Aircraft Registration Application for the Aircraft; and

4.1.3.2  the Balance of the Purchase Price, plus one-half of the Escrow and Title Search Fee, plus all Movement Costs to the extent not previously paid by Purchaser or reimbursed by Purchaser to Seller.

4.1.4  Prior to the Closing, Seller shall position the Aircraft at the Delivery Location and Purchaser shall reimburse Seller the Movement Costs with respect to such flight.  Purchaser shall have the right to have up to two (2) of its technical representatives on board the Aircraft during the Delivery Flight.

THE PRE-POSITIONING OF ANY DOCUMENT OR THE BALANCE OF THE PURCHASE PRICE WITH THE ESCROW AGENT IS FOR THE CONVENIENCE OF THE PARTIES ONLY SO THAT THEY MAY BE RELEASED AT THE ORAL OR WRITTEN DIRECTION OF THE DEPOSITING PARTIES FOLLOWING SATISFACTION OF ANY CONDITIONS CONTAINED HEREIN, AND SHALL NOT BE CONSTRUED AS OR IMPLY ACCEPTANCE OF THE AIRCRAFT OR CONVEYANCE OF TITLE THERETO, WHICH MAY ONLY OCCUR AS SPECIFICALLY PROVIDED IN THIS AGREEMENT.

4.1.5  The United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") shall have entered an order approving the transactions contemplated by this Agreement (which order shall (a) be in form and substance satisfactory to Purchaser and Seller and (b) shall not be subject to a stay pending appeal), and such order shall be in full force and effect.  In the event the Bankruptcy Court fails to enter an order approving the transactions contemplated by this Agreement within thirty (30) calendar days of the date hereof, Purchaser may terminate this Agreement upon written notice to Seller and Escrow Agent, whereupon Escrow Agent shall forthwith return the Deposit to an account designated by Purchaser, without any consent of Seller or other party being required. In the event Purchaser has not provided the foregoing notice of termination within five (5) calendar days of the expiration of said thirty (30) calendar days period and the Bankruptcy Court has not entered an order approving the transactions contemplated by this Agreement within forty-five (45) calendar days of the date hereof, either party may terminate this Agreement upon written notice to the other party and Escrow Agent, and Escrow Agent shall thereafter forthwith return the Deposit to an account designated by Purchaser, without any consent of Seller or other party being required.

4.1.6  Purchaser shall have obtained an irrevocable commitment from The Northern Trust Company to finance the Purchase Price of the Aircraft upon terms and conditions acceptable to Purchaser, in its sole discretion.  In the event the foregoing condition is not satisfied on or before October 27, 2008, Purchaser shall give written notice thereof to Seller and Escrow Agent, whereupon Escrow Agent shall forthwith return the Deposit to an account

5

designated by Purchaser, without any consent of Seller or other party being required, and this Agreement shall be automatically terminated.

4.2     **Conditions Precedent to Seller's Obligations.**  Seller's obligation to sell and deliver the Aircraft to Purchaser on the Closing Date shall be subject to the following conditions precedent:

      4.2.1     Purchaser shall not be in breach or default of any of Purchaser's obligations arising under this Agreement;

      4.2.2     All of Purchaser's representations set forth in Section 5.2 shall be true and accurate as of the time of Closing;

      4.2.3     Purchaser shall have delivered or cause to be delivered the items identified in Subsection 4.1.3 required to be delivered by it;

      4.2.4     Purchaser's obligations set forth in Section 8.22 shall have been complied with;

      4.2.5     Purchaser shall have deposited with the Escrow Agent the Balance of the Purchaser Price, plus one-half of the Escrow and Title Search Fee;

      4.2.6     The obligation set forth in Subsection 4.1.5 shall have been satisfied;

      4.2.7     The irrevocable financing condition set forth under Subsection 4.1.6 shall have been satisfied; and

      4.2.8     Purchaser shall have performed and complied with all of the terms, conditions and covenants required by this Agreement to be performed or complied with by it prior to or at the Closing.

4.3     **Conditions Precedent to Purchaser's Obligations.**  Purchaser's obligation to purchase and accept delivery of the Aircraft from Seller on the Closing Date shall be subject to the following conditions precedent:

      4.3.1     Seller shall not be in breach or default of any of Seller's obligations arising under this Agreement;

      4.3.2     All of Seller's representations set forth in Section 5.1 shall be true and accurate as of the time of Closing;

      4.3.3     Seller shall have delivered or caused to be delivered the items identified in Subsection 4.1.2 required to be delivered by it;

      4.3.4     Seller shall have positioned the Aircraft at the Delivery Location;

      4.3.5     Seller shall have corrected or repaired all Discrepancies;

      4.3.6     All applicable maintenance contracts, including but not limited to Engines JSSI, APU JSSI, and CMP shall be paid up to the Closing Date and transferable to Purchaser at Purchaser's expense.  At the time of the Closing (or if there is a difference between the fully paid up status at the time the Aircraft completes the Inspection and the Closing Date, Seller shall credit such difference against the Balance of the Purchase Price or pay such difference to Purchaser at the Closing or offset it against the applicable charges included in the Movement Costs) and Seller, at the time of the Closing, shall assist Purchaser as more specifically described in Section 8.1.

      4.3.7     The Aircraft shall be in the required Delivery Condition;

      4.3.8     Seller's obligations expressed in Section 8.22 shall have been complied with;

      4.3.9     The obligation set forth in Subsection 4.1.5 shall have been satisfied;

      4.3.10     The irrevocable financing condition set forth under Subsection 4.1.6 shall have been satisfied; and

6

4.3.11    Seller shall have performed and complied with all of the terms, conditions and covenants required by this Agreement to be performed or complied with by it prior to or at the Closing.

4.4    **Closing**.    The Closing shall occur within three (3) Business Days after the Aircraft has been returned to unrestricted service by the Inspection Facility with all Discrepancies repaired and corrected, subject to the conditions set forth in Section 4.2 and Section 4.3. Seller, at its sole cost and expense (except for the Movement Costs which shall be the responsibility of the Purchaser), will position the Aircraft at the Delivery Location prior to the Closing. At the time of the Closing, the parties shall perform the following closing deliveries in the order presented, all of which collectively shall constitute the Closing:

4.4.1.    Seller shall confirm to Purchaser and Escrow Agent that the Conditions Precedent to Seller's Obligations as set forth in Section 4.2 have been satisfied or waived;

4.4.2.    Purchaser shall confirm to Seller and Escrow Agent that the Conditions Precedent to Purchaser's Obligations as set forth in Section 4.3 have been satisfied or waived;

4.4.3    Seller shall deliver or cause to be delivered, the Aircraft to Purchaser at the Delivery Location;

4.4.4    Seller and Purchaser shall commence a conference call with Escrow Agent during which:

4.4.4.1    The Escrow Agent shall confirm that the conditions set forth in Section 4.1.1 have been satisfied, that procedures set forth in Section 8.22 have been followed, that Priority Search Certificates from the International Registry addressed to Purchaser indicate that there is no International Interest registered on the International Registry with respect to the Aircraft or, if there is, Escrow Agent has been irrevocably authorized to discharge the same contemporaneous with Closing;

4.4.4.2    The Escrow Agent shall confirm that it is in receipt of the Purchase Price, plus one-half of the Escrow and Title Search Fee from Purchaser;

4.4.4.3    Purchaser shall, concurrently with Seller's instruction in Subsection 4.4.4.4, instruct the Escrow Agent to date and file the Aircraft Registration Application in the FAA Civil Aviation Registry and to release the Purchase Price to Seller;

4.4.4.4    Seller shall, concurrently with Purchaser's instruction in Subsection 4.4.4.3, instruct the Escrow Agent to date and file the FAA Bill of Sale and any Lien releases in the FAA Civil Aviation Registry, and to deliver the Warranty Bill of Sale and the Warranties Assignments to Purchaser, which instruction by Seller is subject only to receipt by Seller from Escrow Agent of a Federal Reference number evidencing the release of the Purchase Price to or at the direction of Seller. Seller's obligations in this Subsection 4.4.4.4 shall be subject to any necessary instructions to the Escrow Agent by any Lien holder but which shall not in any event relieve Seller of its obligation to transfer the Aircraft to Purchaser free and clear of Liens; and

4.4.4.5    Purchaser and Seller shall simultaneously authorize Escrow Agent to register the International Interest arising from the contract of sale for the Aircraft and the Engines, on the International Registry as set forth in paragraph 8.22 below.

4.4.5    Purchaser shall accept delivery of the Aircraft from Seller at the Delivery Location, and shall simultaneously deliver to Seller a fully executed and completed Delivery Receipt setting forth the time of the FAA filing of the FAA Bill of Sale as provided by Escrow Agent.

## ARTICLE V. REPRESENTATIONS AND WARRANTIES

5.1    **Seller's Representations and Warranties**.    Seller hereby represents and warrants that, as of the date hereof, and as of the Closing:

7

5.1.1    Seller is a limited liability company duly formed, validly existing, and in good standing under the laws of the State of Delaware having the capacity to sue and be sued in its own name, having full power, legal right and authority to carry on its business as currently conducted, and to execute, deliver and perform the provisions of this Agreement;

5.1.2    The execution, delivery, and performance by Seller of this Agreement, and the sale of the Aircraft, has been duly authorized by all necessary action on behalf of Seller and do not conflict with or result in any breach of any of the terms or constitute a default under any document, instrument, or agreement to which Seller is a party;

5.1.3    The person executing this Agreement on behalf of Seller has full power and authority to do so;

5.1.4    This Agreement constitutes the legal, valid and binding obligations of Seller and is enforceable against Seller in accordance with its terms subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and similar laws affecting the enforceability of contractual obligations and creditors' rights generally and by the application of equitable principles by courts of competent jurisdiction, sitting at law or in equity;

5.1.5    Seller, at the time of Closing, shall own good and marketable title to the Aircraft, free and clear of all Liens;

5.1.6    At the time of the Closing, Seller shall convey to Purchaser good and marketable title to the Aircraft, free and clear of all Liens, and Seller will warrant and defend such title forever against all claims and demands whatsoever; and

5.1.7    Seller has not entered into any agreement (other than this Agreement) pursuant to which Seller is or may be contractually and/or legally obligated to sell, lease, rent, assign or otherwise transfer the Aircraft or any interest in the Aircraft to any party other than Purchaser, however, Seller will continue to market the Aircraft through Seller's Broker until the irrevocable financing commitment set forth in Subsection 4.1.6 is satisfied.

5.2    **Purchaser's Representations and Warranties**.  Purchaser hereby represents and warrants that, as of the date hereof, and as of the Closing:

5.2.1    Purchaser is a limited liability company duly formed, validly existing, and in good standing under the laws of the State of Delaware, having the capacity to sue and be sued in its own name, having full power, legal right and authority to carry on its business as currently conducted, and to execute, deliver and perform the provisions of this Agreement;

5.2.2    The execution, delivery, and performance by Purchaser of this Agreement, and the acquisition of the Aircraft, has been duly authorized by all necessary action on behalf of Purchaser and do not conflict with or result in any breach of any of the terms or constitute a default under any document, instrument, or agreement to which Purchaser is a party;

5.2.3    The person executing this Agreement on behalf of Purchaser has full power and authority to do so;

5.2.4    This Agreement constitutes the legal, valid and binding obligations of Purchaser and is enforceable against Purchaser in accordance with its terms subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and similar laws affecting the enforceability of contractual obligations and creditors' rights generally and by the application of equitable principles by courts of competent jurisdiction, sitting at law or in equity; and

## ARTICLE VI. DISCLAIMER

6.1    **DISCLAIMER AND LIMITATION OF LIABILITY**. EXCEPT AS OTHERWISE SET FORTH IN THIS AGREEMENT, PURCHASER ACKNOWLEDGES THAT THE AIRCRAFT IS BEING SOLD AND DELIVERED TO PURCHASER IN "AS IS, WHERE IS, WITH ALL FAULTS" CONDITION, AND THAT

ALL DELIVERY CONDITIONS SPECIFIED IN THIS AGREEMENT SHALL EXPIRE AND BE OF NO FURTHER FORCE OR EFFECT AS OF THE CLOSING. SELLER DOES NOT MAKE, GIVE, OR EXTEND, AND PURCHASER HEREBY DISCLAIMS AND RENOUNCES, ANY AND ALL WARRANTIES AND REPRESENTATIONS OF ANY KIND OR NATURE WHATSOEVER, EXPRESS OR IMPLIED, WHETHER ARISING IN LAW, IN EQUITY, IN CONTRACT, OR IN TORT, AND INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY, AIRWORTHINESS, DESIGN, CONDITION, OR FITNESS FOR A PARTICULAR USE.

6.2    UNDER NO CIRCUMSTANCES SHALL EITHER PARTY BE LIABLE FOR LOST PROFITS, LOSS OF BUSINESS, LOSS OF USE OR ANY OTHER INCIDENTAL, INDIRECT, CONSEQUENTIAL OR SPECIAL DAMAGES ARISING OUT OF OR RELATED TO THE CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR ANY DELAY IN CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED HEREBY, AND EACH PARTY HEREBY WAIVES ANY RIGHT IT MAY HAVE TO SUCH DAMAGES.

## ARTICLE VII. TAXES

7.1    **Seller's Taxes.** Seller has paid, and shall defend, indemnify and hold Purchaser harmless from and against, any and all sales, use, excise and other similar taxes, and any and all taxes, fees, duties, interest, penalties, charges, invoices, claims, assessments and statements imposed or imposable by any federal, state, county, local, foreign or other governmental authority, entity or party arising from any purchase, sale, lease, delivery, transfer, possession, use, storage, operation, maintenance, consumption, or registration of the Aircraft prior to the Closing. In the event Purchaser receives notice of any audit, claim, assessment or proposed assessment of any tax for which Seller may be responsible under this Section 7.1. Purchaser shall within ten (10) Business Days notify Seller thereof, and Seller and Purchaser shall reasonably cooperate to manage and/or defend any such audit, claim, assessment or proposed assessment.

7.2    **Purchaser's Taxes.** Purchaser shall bear, and shall defend, indemnify and hold Seller harmless from and against any and all sales, use, excise and other similar taxes, and any taxes, fees, duties, interest, penalties, charges, invoices, claims and statements relating thereto, which may be imposed by any federal, state, county, local or other governmental authority as a result of the sale, delivery or transfer of the Aircraft to Purchaser, or the ownership, possession, use or storage of the Aircraft by Purchaser, except for any taxes imposed on or measured by Seller's income or imposed, assessed or assessable prior to the Closing. In the event Seller receives notice of any audit, claim, assessment or proposed assessment of any tax for which Purchaser may be responsible under this Section 7.2, Seller shall within ten (10) Business Days notify Purchaser thereof, and Seller and Purchaser shall reasonably cooperate to manage and/or defend any such audit, claim, assessment or proposed assessment.

## ARTICLE VIII. MISCELLANEOUS

8.1    **Third-Party Warranties and Maintenance Program/Service Plans Contracts**.  To the extent that any warranties from manufacturers and service providers or suppliers with respect to the Aircraft are in effect and are assignable, all rights under such warranties are hereby assigned and transferred to Purchaser effective at the time of the Closing and Seller shall evidence the foregoing assignments by executing the Warranties Assignments and delivering or causing to be delivered the Warranties Assignments to Purchaser upon the Closing. In addition, without limitation to the foregoing, Seller, at the time of the Closing, shall reasonably assist Purchaser in connection with the transfer of the service policies, plans and/or product agreements with respect to the Aircraft, including the Engines JSSI, the APU JSSI and CMP, and any follow on contracts, provided Purchaser shall be responsible for any fees, charges, costs and expenses pertaining to such assignments and transfers.

Without limiting the generality of the foregoing, effective upon the Closing, Seller hereby assigns to Purchaser:

8.1.1    All rights to enforce or compel performance under any such warranty and agreement;

8.1.2    All rights to receive any services, property, or moneys due and that hereafter become due under or pursuant to any such warranty and agreement, and to receive proceeds of any insurance, indemnity, guaranty, or collateral security with respect to any such warranty and agreement; and

9

8.1.3    All claims for damages arising out of or for breach or default under any such warranty and agreement, and all rights to exercise any remedy for breach or default under any such warranty and agreement that may be available under such warranty and agreement, at law or in equity.

8.2    **Risk of Loss, Damage or Destruction of Aircraft.**

8.2.1    **Risk of Loss.**  Title to, and risk of loss, injury, destruction or damage to the Aircraft, shall pass from Seller to Purchaser on the later to occur of the time that (i) the FAA Bill of Sale is filed with the FAA Civil Aircraft Registry, and (ii) the Purchase Price is released to Seller by Escrow Agent.

8.2.2    **Destruction or Damage.**  Notwithstanding any contrary provision of this Agreement, if at any time after the date hereof and prior to the Closing the Aircraft is destroyed or is damaged in such a manner that constitutes Material Damage, either party may terminate this Agreement upon written notice to the other and the Deposit shall immediately be refunded to Purchaser, and this Agreement shall terminate and be of no further force or effect.

8.3    **Default.**

8.3.1    **Seller's Default.**  This Agreement may be terminated by Purchaser in the event of a material breach by Seller of any provision of this Agreement (provided that Purchaser is in compliance with its material obligations under this Agreement) which breach is not cured within five (5) Business Days of the delivery to Seller of written notice thereof from Purchaser or which breach by its nature cannot be cured prior to Closing.  If Purchaser elects to terminate this Agreement under this Subsection 8.3.1, the Deposit shall be immediately refunded to Purchaser, Seller shall reimburse Purchaser for its actual out-of-pocket cost of the Inspection (including costs and expenses incurred as a result of test flight(s)) paid by Purchaser to the Inspection Facility), the Movement Costs paid or reimbursed to Seller and the reasonable documented costs, expenses and fees of consultants and attorneys incurred by Purchaser in connection with the transactions contemplated by this Agreement, within five (5) Business Days of written demand by Purchaser, and thereafter this Agreement shall be of no further force or effect.  Purchaser's rights to receive the amounts expressly set forth in this Subsection 8.3.1 shall be the sole remedy available to Purchaser in the event Seller defaults on Seller's obligations under this Agreement, and Purchaser waives any other remedies that may be available to Purchaser at law or in equity.

8.3.2    **Purchaser's Default.**  This Agreement may be terminated by Seller in the event of a material breach by Purchaser of any provision of this Agreement (provided that Seller is in compliance with its material obligations under this Agreement) which breach is not cured within five (5) Business Days of the delivery to Purchaser of written notice thereof from Seller or which breach by its nature cannot be cured prior to Closing.  If Seller elects to terminate this Agreement under this Subsection 8.3.2, Escrow Agent shall pay the Deposit to Seller as liquidated damages, and this Agreement shall be of no further force or effect.  Seller acknowledges and represents that the liquidated damages amount provided for in this Subsection 8.3.2 is a reasonable estimate of the damages that would be incurred by Seller in the event Purchaser defaults on Purchaser's obligations under this Agreement.   Seller's rights to receive the Deposit as liquidated damages shall be the sole remedy  available to Seller in the event Purchaser defaults on Purchaser's obligations under this Agreement, and Seller waives any other remedies that may be available to Seller at law or in equity.

8.4    **Force Majeure.**  The term **"Force Majeure"** means any cause beyond a party's reasonable control that prevents a party from meeting its obligations (other than the payment of money) under this Agreement, including, but not limited to, acts of God or the public enemy, acts of terrorism, war or other outbreak of hostilities, civil commotion, strikes, lockouts, and labor disputes.  A party shall promptly notify the other party that it will be unable to perform its obligations hereunder due to a Force Majeure.  In such event, the time for such party's performance shall be extended for the pendency of such event, provided, however, that should such non-performance extend beyond thirty (30) days, the unaffected party may at its option terminate this Agreement upon written notice to the other party.  In such event, the Escrow Agent shall: (i) deduct from the Deposit and pay to itself one-half of any agreed upon Escrow Fees payable to the Escrow Agent; and (ii) remit the balance of the Deposit to Purchaser.  Thereafter, neither party shall have any obligation or liability to the other with respect to the subject matter of this Agreement, except that Purchaser shall remain liable for the cost of the Inspection (excluding the cost of repairing any

Discrepancies) and Movement Costs.   In the event that all Discrepancies are not repaired within thirty (30) days after delivery of the Technical Acceptance/Rejection Letter to Seller, either party shall have the right to treat the same as a Force Majeure event applicable to Seller and to terminate this Agreement as aforesaid.

8.5     **Amendments**.  The provisions of this Agreement may not be waived, altered, modified, amended, supplemented or terminated in any manner whatsoever except by written instrument signed by both parties hereto.

8.6     **Severability**.  Any provision of this Agreement that may be determined by competent authority to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

8.7     **Assignment**.  This Agreement may not be assigned by any party without the prior written consent of the other party; provided, however, Purchaser shall have the right to: (i) assign this Agreement to a wholly owned or controlled affiliate or to any party related to Purchaser or any of its members or managers, provided that the Purchaser, as assignor, shall remain primarily obligated for the payment and performance of its obligations hereunder; (ii) assign its rights under this Agreement to a financial institution providing lease or mortgage financing of the Aircraft or the Purchase Price; (iii) assign its rights to an institutional trustee such as Wells Fargo Bank Northwest, NA or Wilmington Trust Company for purposes of registration within the United States; and (iv) assign this Agreement to a qualified intermediary or other accommodation title holder as set forth in Section 8.8 in connection with the consummation of a 1031 tax deferred exchange upon written notice to Seller; provided, however, in the case of any such assignment, the assignor shall remain primarily obligated for its assignee's payment and performance of assignor's obligations hereunder.

8.8     **Like Kind Exchange.**  Purchaser intends to treat the acquisition of the Aircraft hereunder as a component of an exchange for other property of like-kind and qualifying use, within the meaning of IRC Section 1031 and the Treasury Regulations promulgated thereunder. Purchaser expressly reserve the right to assign its rights, but not its obligations, hereunder, to a qualified intermediary or qualified exchange accommodation titleholder of its choosing, as provided in IRC Reg. 1.1031 (k)-(1)(g)(4) and in Revenue Procedure 2000-37, Cumulative Bulletin-Final Print 2000-2 CB 308, no later than two (2) Business Days before the transfer of the Aircraft.  All fees to facilitate and effect any tax deferred exchange shall be paid by Purchaser.

8.9     **Successor and Assigns**.  This Agreement shall inure to the benefit of and be binding upon each of the parties hereto and their respective successors and permitted assigns.

8.10    **Headings and References**.  The division of this Agreement into sections, and the insertion of headings, are for convenience of reference only and shall not affect the construction or interpretation of this Agreement.

8.11    **Counterparts**.  This Agreement may be fully executed in two or more counterparts by each of the parties hereto, such counterparts together constituting but one and the same instrument.  Such counterparts may be exchanged via facsimile or other electronic transmission.

8.12    **Notices**.  All communications, declarations, demands, consents, directions, approvals, instructions, requests and notices required or permitted by this Agreement shall be in writing and shall be deemed to have been duly given or made when delivered personally or transmitted electronically by facsimile, receipt acknowledged, or in the case of documented overnight delivery service or registered or certified mail, return receipt requested, delivery charge or postage prepaid, on the date shown on the receipt therefor, in each case at the address set forth below:

If to Purchaser:          Pegasus AV, LLC
                          c/o Scheuer, Yost & Patterson
                          125 Lincoln Avenue, Suite 223
                          Santa Fe, NM  87501
                          Attn: Ralph Scheuer, Esq.
                          Telephone:  (505) 982-9911
                          Facsimile Number:  (505) 982-1621
                          Email: rhs@santafelawyers.com

If to Seller:                CES Aviation, LLC
                             c/o Lehman Brothers
                             745 Seventh Avenue, 30th Floor
                             New York, NY 10019
                             Attn: Gary Hoffman
                             Telephone: (212) 526-0846
                             Telefax: (646) 346-8274
                             Email: egary.hoffman@lehman.com


If to Escrow Agent:          Insured Aircraft Title Service, Inc.
                             4848 S.W. 36th Street
                             Oklahoma City, OK  73179
                             Attn:  Ms. Joan Roberts
                             Tel:  (800) 654-4882
                             Fax:  (405) 682-0818
                             Email: jroberts@insuredaircraft.com

8.13    **Non–Waiver**.  Any failure at any time of either party to enforce any provision of this Agreement shall not constitute a waiver of such provision or prejudice the right of such party to enforce such provision at any subsequent time.

8.14    **Entire Agreement**.  The parties agree that the terms and conditions of this Agreement constitute the entire agreement between the parties with respect to the subject matter hereof.  This Agreement supersedes all prior agreements between the parties, express or implied.

8.15    **Transaction Costs and Expenses**.  Except as otherwise set forth herein, each party to this Agreement shall bear its own transaction costs and expenses, including, without limitation, any brokers' commissions and/or attorneys' fees.  Seller shall be solely responsible for the fees of Seller's Broker, which fees Seller may direct Escrow Agent to pay to Seller's Broker at Closing out of the Purchase Price proceeds.  Each party hereto agrees to indemnify and hold the other harmless from and against any claims made by any broker, consultant or other party claiming an interest in the Aircraft or the purchase price arising from an actual or alleged relationship or agreement with the indemnifying party.  Purchaser and Seller shall each pay one-half (½) of the Escrow and Title Search Fee relating to the transactions contemplated hereby.

8.16    **Survival**.  The representations, warranties, and indemnification obligations of Purchaser and Seller shall survive the Closing in perpetuity; provided, however, that any of the same pertaining to the technical condition of the Aircraft, if any, shall terminate at Closing.

8.17    **Time is of the Essence**.  Time shall be of the essence for all events contemplated hereunder.

8.18    **Further Assurances**.  Each of the parties hereto covenants and agrees to execute such other and further documents relating to the matters set forth herein and to take or cause to be taken such other and further actions, as may be reasonably necessary or appropriate to carry out the purposes and intent of this Agreement, and to consummate the transactions contemplated hereby.

8.19    **Attorney Fees**.  In the event it becomes necessary to enforce the terms of this Agreement by litigation or otherwise, the prevailing party shall be entitled to recover its reasonable attorney fees and court costs, including any such fees or costs arising from subsequent appeals and efforts to execute on any judgment.

8.20    **Governing Law**.  THIS AGREEMENT SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, UNITED STATES OF AMERICA, WITHOUT REFERENCE TO PRINCIPLES OF CONFLICTS OF LAW OTHER THAN SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

8.21    **Dispute Resolution.**  Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or

12

applicability of this agreement to arbitrate, shall be determined by arbitration in New York, New York, before one (1) arbitrator. The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

8.22    **Cape Town Convention**.

8.22.1    Prior to the Closing, Purchaser shall become a "transacting user entity" and Seller shall become a "transacting user entity" with the International Registry. Each of Purchaser and Seller shall bear its own expense in doing so.

8.22.2    Each party shall provide to the other, as a condition to Closing, evidence that it has been approved by the International Registry as a "transacting user entity" and has duly registered with, is authorized to make filings with and has received all approvals from the International Registry, and has appointed an "administrator" (as such term is defined and used in the International Registry Procedures and International Registry Regulations).

8.22.3    Each party shall, as a condition to Closing, authorize Escrow Agent to act as, and shall designate Escrow Agent as, a "professional user entity" (as such term is defined and used in the International Registry Procedures and International Registry Regulations) to effect, amend, discharge and consent to registrations with respect to the Aircraft (including the Airframe and the Engines) on its behalf. Neither Seller nor Purchaser shall revoke such authorization until after the earlier to occur of (i) registration of a Contract of Sale of the Aircraft with the International Registry following the filing with the FAA of the Bill of Sale conveying the Aircraft from Seller to Purchaser or (ii) termination of this Agreement in accordance with its terms. Without Seller's prior written consent, Purchaser and Purchaser's lender (if applicable) shall not effect or cause to effect a prospective International Interest on the Aircraft (including the Airframe and the Engines) and shall upon such registration of any such prospective International Interest take all necessary actions to discharge or cause to discharge such registration.

8.22.4    Purchaser and Seller shall cooperate to cause Escrow Agent, as a professional user entity, to register a Contract of Sale of the Aircraft with the International Registry immediately after filing of the FAA Bill of Sale with the FAA. Escrow Agent shall prepare and cause to be filed with the FAA an AC Form 8050-135 in form reasonably satisfactory to Purchaser and Seller. Seller and Purchaser each hereby expressly consents to the registration of the International Interest arising from the Contract of Sale with respect to the Aircraft (including the Airframe and the Engines).

8.22.5    Immediately prior to Closing, the Escrow Agent shall obtain a Priority Search Certificate (as such term is defined and used in the International Registry Procedures and the International Registry Regulations) from the International Registry with respect to the Aircraft (including the Airframe and the Engines) confirming that no prior International Interest exists that will not be otherwise discharged at Closing with respect to the Aircraft (including the Airframe and the Engines). Any Priority Search Certificate obtained by the Escrow Agent from the International Registry with respect to the Aircraft shall identify the Purchaser and the Seller as having the benefit of the search.

8.23    **Agreement Negotiated.** The parties to this Agreement are sophisticated and have been represented or had the opportunity to be represented by an attorney in connection with the negotiation and performance of this Agreement. The parties agree that no presumptions relating to the interpretation of contracts against the drafter of any particular clause should or may be applied in this case and, therefore, waive their effects.

8.24    **Confidentiality**. The terms and conditions of this Agreement, and all writings, discussions, and negotiations in connection with the transaction contemplated by this Agreement (including, without limitation, the fact that discussions and negotiations have been conducted by the parties), shall remain strictly confidential and shall not be disclosed by either party, without the prior written consent of the other party, except that each party shall be entitled to disclose the terms and conditions of this Agreement (i) as may be required by law or legal process; (ii) to such party's attorneys, accountants, consultants, and other advisors performing services for such party with respect to or affected by the transaction contemplated by this Agreement including Escrow Agent and Inspection

13

Facility and their personnel; (iii) to each party's employees with a need to know; and (iv) as may be required to permit such party to pursue all available remedies for breach of this Agreement by the other party.

8.25    **Continuing Obligations**.  Each party shall take, or cause to be taken, such actions, and will execute and deliver, or cause to be executed and delivered, such additional documents and instruments, and will do, or cause to be done, all such actions as are necessary, in conjunction with, and after the Closing, to effectuate the transactions contemplated in this Agreement.

**[SIGNATURES APPEAR ON FOLLOWING PAGE]**

**IN WITNESS WHEREOF**, the undersigned parties have caused this Aircraft Sale and Purchase Agreement to be executed, delivered and effective as of the date first above written.

Seller:

CES Aviation, LLC

By: _Francine S. Kittredge_
Print: Francine S Kittredge
Title: Managing Director

Purchaser:

Pegasus AV, LLC

By: _____
Print: _____
Title: _____

Agreement of Escrow Agent

Purchaser and Seller hereby appoint Escrow Agent as document holder and stakeholder for the sale and purchase of the Aircraft, and Escrow Agent accepts such appointment for and in consideration of the Escrow and Title Search Fee. The parties acknowledge that Escrow Agent is acting as a document holder and stakeholder only, its duties being purely ministerial, at their request and for their convenience, that Escrow Agent shall not be deemed to be the agent or trustee for either of the parties, and that Escrow Agent shall not be liable to either of the parties for any act or omission unless it involves willful misconduct or negligence on its part.

The undersigned does hereby consent to and join in the foregoing Agreement hereby agreeing to act as Escrow Agent in accordance with the provisions of the Agreement applicable to Escrow Agent.

INSURED AIRCRAFT TITLE SERVICE, INC.

By: _____
Name: _____
Title: _____

**IN WITNESS WHEREOF**, the undersigned parties have caused this Aircraft Sale and Purchase Agreement to be executed, delivered and effective as of the date first above written.

**Seller:**

CES Aviation, LLC

By: _____
Print: _____
Title: _____

**Purchaser:**

Pegasus AV, LLC

By: _____
Print: Ursula Gebert
Title: _____

### Agreement of Escrow Agent

Purchaser and Seller hereby appoint Escrow Agent as document holder and stakeholder for the sale and purchase of the Aircraft, and Escrow Agent accepts such appointment for and in consideration of the Escrow and Title Search Fee. The parties acknowledge that Escrow Agent is acting as a document holder and stakeholder only, its duties being purely ministerial, at their request and for their convenience, that Escrow Agent shall not be deemed to be the agent or trustee for either of the parties, and that Escrow Agent shall not be liable to either of the parties for any act or omission unless it involves willful misconduct or negligence on its part.

The undersigned does hereby consent to and join in the foregoing Agreement hereby agreeing to act as Escrow Agent in accordance with the provisions of the Agreement applicable to Escrow Agent.

INSURED AIRCRAFT TITLE SERVICE, INC.

By: _____
Name: _____
Title: _____

15

EXHIBIT A

## AIRCRAFT SPECIFICATIONS



**BLOOMER deVERE**
G R O U P   A V I A   I N C .

## 2001 Gulfstream IV/SP
## Serial Number 1448

**AIRFRAME:** 2582 Hours
**Landings:** 1342

**APU:** 1666 Hours
*APU on JSSI Program 100%*

**ENGINES: Rolls Royce Tay Mark 611-8**
*Engines on JSSI Program 100%*
**Engine 1:** 2582 Hours   1342 Cycles
**Engine 2:** 2582 Hours   1342Cycles

### AVIONICS

- Honeywell SPZ-8400
- Allied Signal EGPWS
- Triple Honeywell NZ-2000 FMS
- Triple Honeywell HG1075AE IRU
- Dual Honeywell 12 Channel GPS
- Honeywell TCAS 2000  with Change 7
- Allied Signal AFIS System w/Printer and VHF and Satcom Links
- Honeywell MCS-6000 Plus Satcom
- Fairchild/Loral F-1000 FDR
- Honeywell P-880 Weather Radar
- Fairchild/Loral F-100 CVR
- Airshow  Passenger Flight Information System w/Satellite Maps

- BF Goodrich ADI-335 Emergency Horizon w/ ILS
- Aerosonic 3-in-1 Cabin Pressure Indicator
- Honeywell DL-900 Data Loader
- RVSM Certified
- Artex 406 ELT w/Nav Interface
- Triple Collins VHF-422D
- Coltech CSD-714 Five Channel SELCAL
- Dual Rockwell Collins RTU-4220 Radio Tuning Units 8.33kHz Capable
- Dual Collins HF-9000
- Honeywell DL-900 Data Loader
- Dual Emergency Vision Assurance Systems
- Dual Mode "S" Transponders--

### ADDITIONAL FEATURES

- Panasonic Digital DVD Player
- Sony 10 Stack CD Changer
- JVC VHS Player
- Airshow with Cockpit Monitor
- Two Imagik 18" Monitors
- Nature Pure Water Sterilizer
- One 22" Imagik LCD Monitor
- Forward Crew Lavatory

- Baker Cabin Speakers
- Tail Logo light
- Actron Key Locks for all external doors
- AirCell Axxess Irridium Phone
- Forward crew Lavatory
- Brother MFC-970MC Fax  Machine
- Wiring, supports, and brackets provided for future installation of Honeywell HUD 2020 and EVS

### INTERIOR

New January 2001 - Interior features 13 passenger forward galley configuration.  Aft cabin includes four place conference area seating with a "Hi-Lo" table across from a credenza.  A veneer bulkhead ius installed aft of the mid-cabin grouping of a three place berthable divan opposite two club chairs. The forward cabin features four single club chairs. The single chairs are leather and the divan is a complementary fabric.

### EXTERIOR

New September 2001 - Matterhorn White with Green and Gold Stripes - Excellent condition.

*Specifications/descriptions are provided as introductory information and do not constitute representations or warranties of Bloomer deVere or Bloomer deVere client(s). Accordingly, you should rely on your own inspection of the aircraft. Any proposed transaction is subject to final execution of a contract acceptable in form and substance to Bloomer deVere, its client(s), and their counsel.*

## EXHIBIT B

### DELIVERY CONDITION OF AIRCRAFT

At the Closing, the Aircraft shall be delivered in full conformity and complying with all the items and conditions set forth below, collectively constituting the required "**Delivery Condition**":

1.  Free and clear of all Liens;

2.  With an FAA Form 8050-2 and a Warranty Bill of Sale;

3.  In airworthy condition, with a valid and current Airworthiness Certificate issued by the FAA without restrictions and limitations and on the FAA Civil Aviation Registry;

4.  Conforming in all material respects to the Aircraft Specification, including all equipment currently required for operations pursuant to FAR Part 91 and all additional loose and safety equipment currently used or maintained for use on the Aircraft (other than personal items);

5.  With all systems and installed equipment functional and in proper working order and serviceable condition meeting manufacturer's specifications and tolerances for return to unrestricted service - for purposes hereof, "proper working order and serviceable condition" shall mean a condition which (a) is consistent with the maintenance manuals limitations, measurements, or operational criteria applicable to the Aircraft systems, equipment, units and parts; and (b) does not require a modification to the normal life limitation, overhaul or inspection interval or normal operating procedures, except as modified by an Airworthiness Directive or Service Bulletin; and with each engine able to produce its rated takeoff thrust in a ground power run, in accordance with the engine manufacturer's applicable specifications and tolerances;

6.  With all Aircraft Documents original (except that copies shall be acceptable in the case that originals are not required by Gulfstream and the FAA), complete and continuous, up to date, printed or published in English and in compliance with manufacturer requirements and FAR Part 91;

7.  With all inspections, maintenance and repairs performed in accordance with the manufacturer's maintenance, technical or operations manual, and current on its maintenance in accordance with the manufacturer's approved maintenance plan and CMP and in compliance with all calendar and hourly inspections, landing inspections, time-limited components, applicable FAA Airworthiness Directives and with all Customer Alerts and mandatory Service Bulletins, with effective compliance dates complied with on or prior to the Closing Date;

8.  With customary assignments of all remaining manufacturers' warranties (including Airframe, Engines, APU and avionics) and the Gulfstream Assignment of Warranties executed by Seller, Purchaser and Gulfstream and with the enrollment in the JSSI Program 100% with respect to the Engines and the APU transferable, current, in good standing and fully paid up as of the Closing Date;

9.  With no Material Damage or history of Material Damage;

10. With no Airframe, Engines or APU corrosion beyond allowable limits or in excess of manufacturer's tolerances as stated in the maintenance, technical and/or operations manuals or which otherwise requires a repair constituting Material Damage;

11. In compliance with respect to RVSM, MNPS, RNP5, RNP10, FM Immunity and 8.33 COM performed and completed and the Aircraft Transponder shall meet the Mode S Enhanced Surveillance (EHS) for European operations; and

12. With all Discrepancies corrected, remedied or repaired by the Inspection Facility and no parts, systems or components on the Aircraft which are on temporary loan.

Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to such terms in the Agreement.

# EXHIBIT C

## AIRCRAFT TECHNICAL ACCEPTANCE/REJECTION LETTER

Date: _____ ____, 2008

TO:    CES Aviation, LLC
       Attn: Gary Hoffman
       c/o Lehman Brothers
       745 Seventh Avenue, 30th Floor
       New York, NY 10019

          **Re:**     **Completion of Inspection**

Dear Mr. Hoffman:

Pursuant to that certain Aircraft Sale and Purchase Agreement (the "**Agreement**") dated as of 13th day of October 2008, by and between CES Aviation, LLC ("**Seller**") and Pegasus AV, LLC ("**Purchaser**"), pertaining to the Gulfstream Aerospace model Gulfstream G-IV (G-IVSP) aircraft, bearing manufacturer's serial number 1448 and U.S. registration mark N300LB, together with two installed Rolls Royce Tay MK611-8 engines, bearing manufacturer's serial number 18026 (Left) and 18024 (Right) (i) one installed Garrett model GTCP 36-100G auxiliary power unit bearing manufacturer's serial number P-879 (the "**Aircraft**"), Purchaser by checking the following applicable box hereby confirms that the Inspection has been completed and Purchaser elects as follows:

CHECK ONE:

_____ ACCEPTS the technical condition of the Aircraft.

_____ ACCEPTS the technical condition of the Aircraft, subject to the correction or repair by Seller, at Seller's sole cost and expense, of all Discrepancies listed on Annex "A" hereto, in accordance with the terms of the Agreement.

_____ REJECTS the technical condition of the Aircraft in accordance with Subsection 3.4. of the Agreement.

Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to such terms in the Agreement.

                 Sincerely,

                 Pegasus AV, LLC

                 By:  _____
                 Print: _____
                 Title: _____

ANNEX "A"

**DISCREPANCIES TO BE CORRECTED**

# EXHIBIT D

## AIRCRAFT DELIVERY RECEIPT

Pegasus AV, LLC (**"Purchaser"**) hereby acknowledges acceptance of delivery of that Gulfstream Aerospace model Gulfstream G-IVSP (G-IVSP) aircraft bearing U.S. registration mark N300LB and manufacturer's serial number 1448 (the **"Aircraft"**) from CES Aviation, LLC (**"Seller"**), at _____ o'clock (am / pm) Pacific Daylight Time on the _____ day of _____, 2008, at _____, pursuant to the terms and conditions of the Aircraft Sale and Purchase Agreement dated as of October 13, 2008, between Purchaser and Seller (the **"Agreement"**). Purchaser hereby acknowledges that the Aircraft satisfies all of the requirements, terms and conditions of the Agreement. By reason of the execution and delivery by Purchaser of this Aircraft Delivery Receipt, it is conclusively presumed that (i) Purchaser has approved and accepted the Aircraft "as is, where is" in its then-current condition and state of repair, with all faults, limitations and defects (whether hidden or apparent), regardless of cause; and (ii) except as expressly set forth in the Agreement and except for Seller's warranty of title to the Aircraft and freedom from liens or encumbrances, Seller has not made with respect to the condition of the Aircraft any representation, warranty or guaranty of any kind, express or implied, whether arising in law, in equity, in contract, or in tort, including, without limitation, any implied warranty of merchantability, airworthiness, design, condition, or fitness for a particular use.

TOTAL TIME AIRFRAME AT DELIVERY: _____ hours

AIRCRAFT LANDINGS AT DELIVERY: _____

TOTAL TIME ENGINES AT DELIVERY:
        Engine P126151: _____ hours _____ cycles
        Engine P126152: _____ hours _____ cycles

TOTAL TIME APU AT DELIVERY: _____ hours

**PURCHASER**:

Pegasus AV, LLC

By: _____
Print: _____
Title: _____

State of _____ )
                                                    )ss.
County of _____ )

      On _____, 2008, before me, the undersigned, a Notary Public for said state, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Signature _____

My commission expires on

_____

## EXHIBIT E

## GULFSTREAM AEROSPACE CORPORATION

## ASSIGNMENT OF WARRANTIES

The following shall constitute an assignment of Aircraft Warranties and consent to assignment of Aircraft Warranties (the **"Assignment of Warranties"**) by and among Gulfstream Aerospace Corporation ("**GULFSTREAM**"), CES Aviation, LLC. ("**ASSIGNOR**") and Pegasus AV, LLC ("**ASSIGNEE**").

WHEREAS, ASSIGNOR wishes to assign its rights and obligations under the Gulfstream G150 aircraft original manufacturer Warranties to ASSIGNEE, and ASSIGNEE wishes to assume ASSIGNOR's said rights and obligations; and

WHEREAS, GULFSTREAM, the original manufacturer, wishes to give its consent to such assignment;

NOW, THEREFORE, the parties to this Assignment of Warranties agree as follows:

1.    All unexpired warranties on Gulfstream Aerospace G-IV/SP Serial Number 1448 are assigned from ASSIGNOR to ASSIGNEE.

2.    GULFSTREAM agrees and consents to this assignment.

3.    The ASSIGNEE agrees to all terms and conditions contained in Definitions, Warranties, and Miscellaneous, of the Sales Agreement Conditions, a copy of which articles are attached hereto and are made a part hereof by this Assignment of Warranties by reference, and further agrees to perform all obligations of BUYER thereunder.

4.    From the date hereof, ASSIGNOR shall have no further warranty benefits or liabilities regarding Gulfstream Aerospace G-IV/SP Serial Number 1448 and the ASSIGNEE shall assume all of ASSIGNOR's warranty rights, duties and liabilities associated with this aircraft.

IN WITNESS WHEREOF, the parties hereto have caused this Assignment of Warranties to be executed on this ___ day of _____, 2008, by their duly authorized representatives.

**GULFSTREAM AEROSPACE CORPORATION**

**("GULFSTREAM")**

BY: _____

TITLE: _____


**CES AVIATION, LLC**

**("ASSIGNOR")**

BY: _____

TITLE: _____


**PEGASUS AV, LLC**

**("ASSIGNEE")**

BY: _____

TITLE: _____

## EXHIBIT E-1

### ASSIGNMENT OF WARRANTIES

Pursuant to the Aircraft Sale and Purchase Agreement (the "**Agreement**") dated as of the October 13, 2008, by and between CES Aviation, LLC, a Delaware limited liability company (**"Seller"**), and Pegasus AV, LLC, a Delaware limited liability company (**"Purchaser"**), Seller, without representation or warranty, hereby assigns to Purchaser such rights as Seller may have under (i) any warranty (express or implied), or otherwise, with respect to the, and all other instruments or equipment installed in or attached to the airframe, engines and auxiliary power unit (collectively, the "**Aircraft**"); and (ii) any service policies, maintenance plans and programs or product agreements with respect to the Aircraft, in each case to the extent the same exist in favor of Seller and are capable of being assigned by Seller or otherwise available to Purchaser, including but not limited to Engines JSSI, APU JSSI, and CMP (collectively, the "**Assigned Rights**").

Purchaser acknowledges that it shall be solely responsible for any fees, charges, costs and expenses with respect to the transfer of the Assigned Rights and the processing of any claims or services thereunder.

Seller hereby acknowledges Purchaser's right to enforce in its own name such Assigned Rights as Seller may have with respect to the Aircraft to the extent assigned to Purchaser by Seller hereunder.

Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to such terms in the Agreement.

IN WITNESS WHEREOF, Seller and Purchaser have caused this instrument to be executed by their duly authorized officer this _____ day of _____ 2008.


**Seller:**                                                **Purchaser:**

CES Aviation, LLC                                          Pegasus AV, LLC

By:  _____             By:   _____
Print: _____           Print: _____
Title: _____           Title: _____

## EXHIBIT F

### WARRANTY BILL OF SALE

**KNOW ALL PERSONS BY THESE PRESENTS:**

**THAT CES Aviation, LLC,** a Delaware limited liability company (**"Seller"**), is the lawful owner of the full legal and beneficial title to the following tangible personal property:

that certain Gulfstream Aerospace model Gulfstream G-IV (commonly known as Gulfstream G-IVSP) (described on the International Registry drop-down menu with manufacturer designation: Gulfstream, model designation: G-IV (G-IVSP) aircraft, bearing manufacturer's serial number 1448 and U.S. registration mark N300LB (the **"Airframe"**), together with two (2) installed Rolls Royce Tay MK611-8 (described on the International Registry drop-down menu with manufacturer's designation: Rolls Royce, model designation: TAY 611) engines, bearing manufacturer's serial number 18026 (Left) and 18024 (Right) (the **"Engines"**), (i) one (1) installed Garrett model GTCP 36-100G auxiliary power unit bearing manufacturer's serial number P-879 (the "**APU**"), and all appurtenances, appliances, parts, avionics, instruments, components, accessions, furnishings, items of equipment and accessories, Engine covers and tool kits installed thereon and loose equipment associated therewith and all Aircraft Documents (collectively, the **"Aircraft"**); and

all documents and records relating to or required to be maintained with respect to the Aircraft, including, without limitation, a current and valid Airworthiness Certificate, all Airframe, Engines, APU and accessory logbooks, manuals, flight records, weight and balance manuals, tags, technical records, traceability records, task cards, information, overhaul records, maintenance records, maintenance contracts, computerized maintenance programs, airframe and aircraft component warranties, Engine warranties, APU warranties, avionics warranties, wiring diagrams, drawings, data, and all issued FAA Form 337's and any and all other records related to the Aircraft that are in Seller's possession and control (collectively, the **"Aircraft Documents"**).

**THAT**, for $10.00 and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Seller does as of the date provided below, grant, convey, transfer, deliver and set over all right, title and interest in and to the Aircraft and the Aircraft Documents unto Pegasus AV, LLC, a Delaware limited liability company (**"Purchaser"**), and unto Purchaser's successors and assigns forever.

**THAT**, Seller hereby warrants to Purchaser, its successors and assigns, that there is hereby conveyed to Purchaser on the date hereof good and marketable title to the Aircraft and the Aircraft Documents free and clear of any and all mortgages, liens, claims, encumbrances and rights of others, and Seller shall warrant and defend such title forever against all claims and demands whatsoever.

**IN WITNESS WHEREOF**, Seller has caused this instrument to be executed and delivered by its duly authorized signatory as of this ___ day of _____, 2008.

CES Aviation, LLC

By: _____
Name:
Title:

State of _____   )
                                                              )ss.
County of _____)

On _____, 2008, before me, the undersigned, a Notary Public for said state, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Signature _____

My commission expires on

_____

## EXHIBIT 2

## SCHEDULE OF OUTSTANDING INVOICES OF CES AVIATION LLC

| ACTIVITY DATE | VENDOR | AMOUNT | PURPOSE | AIRCRAFT | INVOICE NUMBER |
|---|---|---|---|---|---|
| 7/30-9/19/2008 | EFI | $27,621.06 | Training for Aircrew | GIV-SP, SN 1448 | 33536, 33537, 33591, 33638, 33539, 33587 |
| 8/15-9/16/2008 | EFI | $491.79 | Travel & Preparation for Aircrew | GIV-SP, SN 1448 | 33592, 33549, 33570, 33635B |
| 8/2-9/30/2008 | EFI | $21,624.72 | Hangar, Fuel & Maintenance | GIV-SP, SN 1448 | 33632, 33512, 33513, 33621, MONTHLY MGT STATEMENT |
| 9/29/2008 | EFI | $20,046.28 | Position Aircraft to Scottsdale, AZ for showing | GIV-SP, SN 1448 | 33629 |
| 6/20-9/14/2008 | EFI | $41,265.45 | Various Other Expenses for Aircraft Operation | GIV-SP, SN 1448 | 33606, 33533, 33532, 33548, 33542, 33534, 33607, 33535, 33633, 33608, 33590, 33613 /33543, 33543, 33614, 33635A, 33620 |
| | Total | $111,049.30 | | | |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
:
In re                                                                    :          **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,         :          **08-13555 (JMP)**
:
Debtors.                                  :          **(Jointly Administered)**
:
:
----------------------------------------------------------------x

### ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004 AUTHORIZING LEHMAN BROTHERS HOLDINGS INC. TO ENTER INTO A SALE AND PURCHASE AGREEMENT

Upon the motion, dated October 15, 2008 (the "Motion"), [3] of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-

debtor affiliates, "Lehman"), pursuant to section 363 of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") for authorization and approval of a certain Sale and Purchase Agreement,

as more fully described in the Motion; and the Court having jurisdiction to consider the Motion

and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing

Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided in accordance with the procedures set forth in

---
[3] Capitalized terms that are used but not defined in this Order have the meanings ascribed to them in the Motion.

the order entered September 22, 2008 governing case management and administrative procedures

[Docket No. 285] to (i) the United States Trustee for the Southern District of New York; (ii) the

attorneys for the Official Committee of Unsecured Creditors; (iii) the attorneys for the Debtors'

postpetition lenders; (iv) the Securities and Exchange Commission; (v) the Internal Revenue

Service; (vi) the United States Attorney for the Southern District of New York; (vii) the

Purchaser; and (viii) all parties who have requested notice in these chapter 11 cases, and it

appearing that no other or further notice need be provided; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their estates

and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is hereby

ORDERED that the Motion is GRANTED; and it is further

ORDERED that, pursuant to section 363(b) of the Bankruptcy Code and

Bankruptcy Rule 6004, the Sale Agreement, dated October 13, 2008, is approved and the

Debtors are authorized to consummate all of the transactions contemplated thereby, including but

not limited to, the sale of Seller's aircraft, Gulfstream Aerospace G-IV  bearing Manufacturer's

Serial Number 1448 and U.S. Registration Mark N300LB (the "Aircraft"), to Pegasus AV, LLC;

and it is further

ORDERED that, pursuant to section 363(f) of the Bankruptcy Code, the sale of

the Aircraft to the Purchasers (the "Sale") shall be free and clear of any and all liens, claims and

encumbrances, with such liens, claims and encumbrances (if any) to attach to the proceeds of the

Sale with the same force, effect, and priority as such liens, claims and encumbrances have on the

Assets, as appropriate, subject to the rights and defenses of the Debtors and any party in interest

with respect thereto; and it is further

ORDERED that the Purchaser is granted the protections provided to a good faith

purchaser under section 363(m) of the Bankruptcy Code; and it is further

ORDERED that the Debtors are authorized to execute and deliver such

assignments, conveyances, and other documents, and instruments of transfer and to take such

other actions as may be reasonably necessary to consummate the Sale; and it is further

ORDERED that Debtors are authorized to pay the following outstanding invoices

relating to flight support activities, as more fully described in the Motion: (i) aircrew training

expenses in the amount of $27,621.06; (ii) travel and preparation for aircrew expenses in the

amount of $491.79; (iii) hangar, fuel, and maintenance expenses in the amount of $21,624.72;

(iv) expenses incurred in positioning the Aircraft in Scottsdale, Arizona for Purchaser's

inspection in the amount of $20,046.28; and (v) various other operating expenses in the amount

of $41,265.45.

ORDERED that Debtors are authorized to pay the fees of Seller's Broker in the

amount of One Hundred Fifty-Eight Thousand Five Hundred Dollars ($158,000).

ORDERED that that this Court shall retain jurisdiction to interpret and enforce this

Order.

Dated:  October __, 2008
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE