**Hearing Date: October 16, 2008 at 10:00 a.m.**
**Objection Deadline: October 13, 2008 at 4:00 p.m.**

Edward S. Weisfelner, Esq. (EW 5581)
David J. Molton, Esq. (DM 1106)
Andrew Dash, Esq. (AD 7913)
**BROWN RUDNICK LLP**
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

Counsel to Newport Global Opportunities Fund LP,
Newport Global Credit Fund (Master) L.P.,
PEP Credit Investor L.P. and
Providence TMT Special Situations Fund L.P.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                           :
In re                                                      :    Chapter 11
                                                           :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                   :    Case No. 08-13555 (JMP)
                                                           :
                                        Debtors.           :    (Jointly Administered)
                                                           :
---------------------------------------------------------- x

**REPLY OF NEWPORT GLOBAL OPPORTUNITIES FUND LP, NEWPORT
GLOBAL CREDIT FUND (MASTER) L.P., PEP CREDIT INVESTOR L.P. AND
PROVIDENCE TMT SPECIAL SITUATIONS FUND L.P. TO DEBTORS'
OPPOSITION TO MOTION OF HARBINGER FUNDS AND OTHERS TO
CONDUCT EXAMINATIONS UNDER BANKRUPTCY RULE 2004**

Newport Global Opportunities Fund LP, Newport Global Credit Fund (Master)

L.P., PEP Credit Investor L.P. and Providence TMT Special Situations Fund L.P.

(collectively, the "Funds"),[1] by and through their undersigned counsel, hereby submit this

---
[1] Newport Global Opportunities Fund LP and Newport Global Credit Fund (Master) L.P. shall be defined herein as "Newport". PEP Credit Investor L.P. and Providence TMT Special Situations Fund L.P. shall be defined herein as "PEP".

1

reply (the "Reply") to Debtors' Opposition to Motions of Harbinger Funds and Others to Conduct Examinations under Bankruptcy Rule 2004 (the "2004 Opposition").

In support of the Reply, the Funds state as follows:

### I.  BACKGROUND

1. Having failed to receive adequate responses to their numerous inquiries and requests of the Debtors, SIPA Trustee and Joint Administrators regarding the location and status of their assets, the Funds filed a motion for Rule 2004 discovery in the chapter 11 cases on September 29, 2008 (the "Fund 2004 Motion") [Docket no. 435]. The Fund 2004 Motion seeks discovery in the form of: (i) deposition testimony from the Debtors regarding the transfer of securities, cash, or other property held by or for Lehman Brothers International (Europe) ("LBIE"); (ii) document production concerning such transfers; and (iii) document and deposition discovery of any third parties that received a transfer from LBIE or the Debtors, or any person or entities on their behalf, of securities, cash, or other property in which either or both of PEP and Newport held an ownership or other interest (the "Fund Property").

2. On October 3, 2008, the Debtors held a meet and confer telephone conference with counsel for the Funds, along with counsel for Harbinger Capital Partners Special Situations Fund, L.P. and Harbinger Capital Partners Master Fund I, Ltd (collectively, "Harbinger"),[2] which similarly sought Rule 2004 discovery from the Debtors and related entities regarding transfer and/or disposition of assets. During this conference, counsel for the Funds advised that the Funds would voluntarily modify and

---

[2] Harbinger has filed a Reply to Debtors' Objection to Rule 2004 Discovery of the Debtor Lehman Brothers Holdings Inc. (the "Harbinger Reply"). The Funds join in and incorporate by reference herein the arguments set forth in the Harbinger Reply.

2

limit the scope of their Rule 2004 application to requests specifically pertaining to the Fund Property.

3. Accordingly, on October 8, 2008, Brown Rudnick LLP ("Brown Rudnick"), counsel to the Funds, sent a letter to Debtors' counsel confirming that the Funds would narrow the scope of the document requests set forth in the Fund 2004 Motion to include only those requests relating specifically to Fund Property. A true and accurate copy of the October 8, 2008 Brown Rudnick letter to Debtors' counsel is attached hereto as Exhibit A.

4. On October 13, 2008, the Funds filed a supplement to the Rule 2004 Motion (the "Supplemental 2004 Motion") [Docket no. 857], with the October 8, 2008 letter from Brown Rudnick attached thereto as an exhibit. Through the Supplemental 2004 Motion, the Funds formally (and unilaterally) limited the scope of their Rule 2004 Motion and requested documents and deposition testimony from the Debtors relating specifically to Fund Property.

5. On October 13, 2008, the Debtors filed the 2004 Opposition in which they object to nine (9) sets of requests for Rule 2004 examinations (including joinders) regarding property transfers (collectively, the "Rule 2004 Motions"). With respect to the Funds, the Debtors contend that the Fund 2004 Motion is "sweeping", "overly-broad" and should be denied "as it relates to assets that are subject to a pending foreign insolvency proceeding that has its own procedural parameters." See 2004 Opposition, p. 5. More generally, the Debtors submit that the relief requested in the Rule 2004 Motions should be denied because such relief (i) violates the objectives of a Rule 2004 examination by allowing a "few isolated, unsecured creditors to circumvent the use of an

3

adversary proceeding, the claims resolution process, and the Creditors' Committee, (ii) has not been justified by any of the Rule 2004 Motions, and (iii) jeopardizes the administration of the estate by forcing the Debtors to expend their very limited resources to respond to a request for documents and prepare for depositions rather than allowing them to continue to stabilize their day-to-day business operations." See id. at p.7.

## II.  ARGUMENT

### A.  The Debtors Have Ignored The Supplemental 2004 Motion.

6.  Much is made in the 2004 Opposition about the alleged overly broad and unduly burdensome discovery requests contained in the Rule 2004 Motions. However, conspicuous by its absence in the 2004 Opposition is any reference to the Supplemental 2004 Motion. The Debtors were fully aware that the Funds had taken steps to respond to the Debtors' concerns about the purported burden of discovery by revising limiting the requests to information relating solely to Fund Property (as opposed to all transfers made by the Debtors within 60 days of the petition date). Indeed, the Funds advised the Debtors as early as October 3 that they were willing to voluntarily narrow the scope of their 2004 requests. This representation was subsequently confirmed in a letter to Debtors' counsel on October 8 (see Exhibit A) and formally incorporated in the Supplemental 2004 Motion filed on October 13. Thus, in view of these circumstances, the 2004 Opposition is disingenuous and misleading on its face.

7.  In addition, the Debtors suggest that this proceeding is not the appropriate forum for the Funds to seek information relating to the Fund Property. See 2004 Opposition, p. 7. Yet, the Debtors can offer no definitive guidance as to where else the Funds should look, and this is certainly not due to a lack of effort by the Funds, which

4

have expended considerable time and resources searching – to no avail – for the Fund Property. In this regard, the Funds first attempted to resolve this issue through cooperative and non-litigious methods. When their letters and telephone calls went largely unanswered, the Funds interposed discovery requests in each of the three pending insolvency proceedings involving Lehman. Notwithstanding these diligent efforts, the exact location of the Fund Property remains eminently unclear. To make matters worse, the Debtors and their affiliates continue to point fingers at each other, thereby leading the Funds on a proverbial wild goose chase. See, e.g., Letter dated October 9, 2008 from Weil Gotshal & Manges LLP ("Weil Gotshal"), counsel to the Debtors, to Brown Rudnick ("Accordingly, your requests are directed to the wrong parties. As we have stated to you previously, if appropriate in the circumstances that apply to those proceedings, you should be addressing the SIPC Trustee and the PwC Joint Administrators."), a copy of which is attached hereto as Exhibit B; Letter dated October 14, 2008 from Hughes Hubbard & Reed LLP ("Hughes Hubbard"), counsel to the SIPA Trustee, to Bingham McCutchen LLP, counsel Harbinger ("Persons, such as your clients, . . . should address their concerns to appropriate entities, not the [SIPA] Trustee."), a copy of which is attached hereto as Exhibit C. Until such time that the Funds receive reliable information regarding the location and/or disposition of the Fund Property, they have no choice but to exhaust all available remedies.

### B. The Fund 2004 Motion Is Consistent With Bankruptcy Rule 2004.

8. Generally, the purpose of a Rule 2004 examination is to "discover assets, examin[e] transactions, and determine whether wrongdoing has occurred." See In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); see also Fed. R. Bankr. P.

5

2004(b) (examination may relate to, among other things, "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate"). By its express terms, the Fund 2004 Motion seeks information related to transfers of Fund Property by and among Debtors and its affiliates. To be sure, these transfers are not only relevant to the administration of Debtors' estates, but also, more importantly, (i) to enable the Funds to ascertain whether and what action is or may be required to protect the Fund Property, to preserve the status quo and/or to seek return of the Fund Property, and (ii) to determine whether any wrongdoing has occurred with respect to the Fund Property. In fact, the information ascertained through the 2004 discovery process may give rise to potential causes of actions (and the initiation of an adversary proceeding) by the Funds against, among others, the Debtors. As such, it is an entirely appropriate use of the rule. See In re Handy Andy Home Improvement Ctrs., 199 B.R. 376, 380 (Bankr. N.D. Ill. 1996) (Rule 2004 is substantially a "pre-litigation device for assessing whether grounds exist to commence an action..."). For Debtors to suggest that the Funds should prosecute their request for simple discovery as to the status and location of the Fund Property by way of an adversary proceeding turns the 2004 process (and the economies thereof) on its head (as Debtors would no doubt advise the Court in much stronger terms if the Funds had initiated an adversary proceeding against the Debtors for the relief now requested in the Funds 2004 Motion).

   9.  Furthermore, the Funds have demonstrated good cause for discovery under Rule 2004, despite the Debtors' protestations to the contrary. "[G]ood cause is shown if the [Rule 2004] examination is necessary to establish the claim of the party seeking the

6

examination, or if denial of such request would cause the examiner undue hardship or injustice." See ePlus, Inc. v. Katz (In re Metiom, Inc.), 318 B.R. 263, 268 (S.D.N.Y. 2004); In re Drexel Burnham Lambert Group, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) ("Good cause may ordinarily be sustained by a claim that the requested documents are necessary to establishment of the moving party's claim or that denial of production would cause undue hardship or injustice."). Again, this issue is directly addressed in the Fund 2004 Motion. Specifically, the Funds state that there is a substantial risk of imminent harm to the Funds (and their investors) if they do not obtain information regarding the location and/or disposition of the Fund Property. See Fund 2004 Motion, ¶¶ 16 and 28. This harm is exacerbated by the likelihood of further dissipation, commingling, possible liquidation or transfer of the Fund Property, all of which would make recovery of these assets an even more dubious prospect. See id. at ¶ 27.

10. The Debtors also assert that the Funds "ignore the appointment and functioning of the Creditors' Committee as the representative of the general unsecured creditor constituency and that the Creditors' Committee is "diligently pursuing the rights of unsecured creditors." See Opposition, p. 3. However, this is of no consequence to the Fund 2004 Motion. "The fact that an investigation by a creditors' committee, debtor, examiner, or trustee is ongoing regarding the subject matter of a proposed Rule 2004 examination does not preclude the use of Rule 2004 by a party in interest." See Enron Corp., 281 B.R. at 843 n. 7. If the Debtors' position was adopted, it would render Rule 2004 a nullity for individual parties any time a statutory creditors' committee is appointed in a chapter 11 case. Moreover, the Creditors' Committee, which also filed an objection to the Fund 2004 Motion, has provided no details as to its investigation,

7

including what information it has sought and when it would receive that information. Therefore, the Funds can ill-afford to stand idle and defer to the Creditors' Committee, which we understand has much on its plate at the moment and may not be focused on assisting in ascertaining the status and location of the Fund Property.

### C.  The Funds' Situation Is Unique And Requires Immediate Attention.

11.  At its core, the Debtors' position with respect to the Rule 2004 Motions is that *all* interested parties should wait patiently in line and any attempt by an individual party to expedite matters or otherwise distinguish themselves will be deemed "inappropriate, unjustified and disruptive." See 2004 Opposition, p. 2.  Suffice it to say, the Debtors' steadfast refusal to recognize any difference in the nature of the customer claims has materially disadvantaged the Funds.  Unlike the vast majority of other customers, the Fund Property was in the process of being transferred at the time of the bankruptcy filing and indications are that some of the Fund Property may have been returned to Lehman (or, if pledged by Lehman, the pledges had been discharged).  The Funds simply do not know which Lehman entity, if any, is in possession of the Fund Property.  Nothing that has happened in the month since the filing has lent any clarity to this issue and, as a result, the Funds have had file pleadings in three different proceedings.  The same cannot be said of most other entities that also may be unaware of the status and location of their property.

12.  Since filing the Fund 2004 Motion, the Funds, through their counsel in the United States and London, have pressed the Debtors, the Joint Administrators and the SIPA Trustee to either complete the transfer of the Fund Property to Credit Suisse or, in the very least, inform the Funds as to the status of the Fund Property.  The

8

correspondence has included, without limitation, the following:

- On October 1, 2008, Hughes Hubbard, contacted the Funds and advised that Funds were one of the "first ten in the queue" and that the accounts were in the process of being reviewed in order of receipt.

- On October 1, 2008, Linklaters LLP ("Linklaters"), counsel to PricewaterhouseCoopers LLP ("PwC") in its capacity as Joint Administrators advised Brown Rudnick via e-mail that the Joint Administrators needed time to investigate the issues by the Funds and, moreover, that the Joint Administrators needed to treat all creditors equally and, thus, could not prioritize the claims of one over any other.  See E-mail dated October 1, 2008 from Linklaters to Brown Rudnick, attached hereto as Exhibit D.

- On October 3, 2008, Brown Rudnick sent a letter to Linklaters emphasizing (again) the urgency of the matter for the Funds by referencing the damage to their business caused by the inability to access the Fund Property.  See Letter dated October 3, 2008 from Brown Rudnick to Linklaters, attached hereto as Exhibit E.

- On October 3, 2008, the Debtors held a meet and confer with counsel for Harbinger and the Funds with regard to the 2004 discovery in the chapter 11 cases.  During this conference, in which counsel for the Funds informed Debtors of their intent to limit their motion to inquiry concerning the Funds' assets, the Debtors suggested that the Fund Property may be in the possession of LBI and/or the SIPA Trustee.

- On October 3, 2008, the Funds commenced litigation in connection with the administration proceedings in the High Court of Justice, Chancery Division, Companies Court, seeking an order for information with respect to the location of the Securities.

- On October 7, 2008, Linklaters sent a letter to Brown Rudnick advising of PwC's claimed inability to provide the Funds with information relating to the location and/or disposition of the Fund Property.  See Letter dated October 7, 2008 from Linklaters to Brown Rudnick, attached hereto as Exhibit F.

- On October 8, 2008, Brown Rudnick sent a letter to counsel for the Debtors advising that the Funds had narrowed the scope of the document requests set forth in the Rule 2004

9

> Bankruptcy Motion to include only those requests relating specifically to the Fund Property. See Exhibit A.

- On October 9, 2008, Brown Rudnick sent a letter to Hughes Hubbard, requesting (i) that the SIPA Trustee produce to the Funds any information the SIPA Trustee may have regarding any assets of the Funds residing at LBI; and (ii) the SIPA Trustee's assurance and confirmation of the preservation of these assets until delivery to Credit Suisse as instructed is completed. See Letter dated October 9, 2008 from Brown Rudnick to Hughes Hubbard, attached hereto as Exhibit G.

- On October 9, 2008, Debtors' counsel advised the Funds that the requests for documents and related information pertaining to the Securities were "directed to the wrong parties" and, consequently, the Funds should address their inquiries to the SIPA Trustee and the Joint Administrator. See Exhibit B.

13. In sum, as the Funds have unique positions, they require an immediate and efficient mechanism to ensure that the Fund Property is not transferred or liquidated while the parties adjudicate the substantive issues underlying the disposition of the Fund Property.

14. Finally, the Debtors' claims about having to expend their "very limited resources" responding to the Rule 2004 Motions strains credulity. Lehman is one of the largest financial institutions in the world and is being assisted by the most sophisticated professionals (legal and financial). Ultimately, interested parties are asking no more from these Debtors than what has been required of countless other – and infinitely smaller – debtors-in-possession. The Debtors chose this forum, and wrought significant damage along the way. They need not cry foul when parties are merely trying to track down hundreds of millions of dollars worth of missing assets.

Dated: New York, New York
October 15, 2008

**BROWN RUDNICK LLP**

By: /s/ Edward S. Weisfelner
Edward S. Weisfelner, Esq. (EW 5581)
David J. Molton, Esq. (DM 1106)
Andrew Dash, Esq. (AD 7913)
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel to Newport Global Opportunities Fund LP, Newport Global Credit Fund (Master) L.P., PEP Credit Investor L.P. and Providence TMT Special Situations Fund L.P.*

# 1604491 v2 - HARRISRL - 027898/0001