# EXHIBIT F

Dear Sirs

**Lehman Brothers International (Europe) (in administration) - Newport**

We refer to your first letter of 3 October 2008. In that letter you explain your clients' views on the significance of the transfer instructions issued on 11/12 September, and (together with paragraphs 6 and 7 of your Application dated 3 October 2008) you seek information regarding the whereabouts of securities provided by your clients to LBIE.

With this letter we respond to what you say concerning the transfer instructions and we provide the information on your clients' accounts and securities holdings which is readily available to LBIE. We also explain why it is not possible to undertake further investigations into the matters you and numerous other clients raise without diverting essential resource away from the work being undertaken urgently by the administrators and their advisers on the management of the LBIE businesses, the collation of data and realisation of assets for the creditors of LBIE as a whole.

**The effect of the instructions to transfer securities**

In your letter and in the first statement of Mr Reeg enclosed with your second letter of 3 October 2008 you explain your clients' views of the relevance of facts concerning the issue by your clients of transfer instructions to Lehman Brothers Inc. ("LBI"), an entity which is now in an insolvency process in the US.

Neither we nor our clients have access to factual information from LBI concerning the dialogue which took place on 11 and 12 September to which you refer, and so we are not able to confirm its accuracy. However, your analysis of the effect of the alleged acceptance by LBI of the transfer instructions appears to be over-simplistic. Even if it is the case that your clients' instructions were somehow accepted or confirmed by LBI, such acceptance would not necessarily mean that LBIE had somehow "*appropriated them to and for the benefit of*" your clients. Nor is it certainly correct to say that the securities in question were thenceforth held in an account, free of all encumbrances, awaiting transfer. The reasons for this include the following.

First, we understand that some of the securities lodged by your clients with LBIE as collateral were re-used via transfer to third parties as collateral for other transactions or to meet obligations under short sales or other third party transactions. Such securities could not simply be "earmarked" for transfer. It would probably be necessary for LBI/LBIE to recall them and/or to purchase replacements in the marketplace, a process which – had LBIE not gone into administration on 15 September - may well have delayed any settlement of the transfer.

Second, as your clients will be aware, the fact that LBIE is now in administration changes considerably the position as regards the feasibility of the return to your clients of their securities. It is necessary for the administrators to undertake detailed investigations and to gather extensive information before a transfer of any securities to which your clients may be entitled may take place.

By way of example, since securities which have not been re-used are held in pooled client custody accounts with third party custodians, other clients may also have claims on the pool of any given security in the relevant custodian account. Until all client claims have been received by the administrators and a reconciliation has been effected with the relevant custodians, sub-custodians and depositaries it is impossible for the administrators to know with certainty whether the securities can be returned to your clients in their full amount (if that it what they are entitled to) or whether a

shortfall existed which would have to be allocated pro rata across all client holdings. Initial investigations have revealed that your clients have securities holdings in common with in excess of 70 other clients, and accordingly it would be necessary to perform a reconciliation of these clients' holdings in common stocks, making adjustments for the large number of failed trades and pending transactions, in order to determine the aggregate position and enable our clients to return all such securities.

**Information concerning your clients' accounts**

We note that your clients' principal desire at this stage is for information concerning the status of their accounts. To that end, and without admission of any entitlement on the part of your clients to demand this or any other information, we enclose schedules containing detailed information on your clients' accounts and securities holdings, sourced from LBIE's database. The enclosed information contains details of long and short market positions, indebtedness, re-use of securities and margin transactions.

We must emphasise that this data should be treated with care. It is the most recent information available to the administrators from LBIE's systems, and was current as at 12 September 2008, the last working day before LBIE went into administration. It does not take account of more than 140,000 failed pending trades to which LBIE was party and which need to be unwound or otherwise resolved before LBIE's database can be updated. The data has not yet been reconciled with data from the relevant exchanges, clearing houses and third party custodians. Additionally LBIE's market counterparties have taken actions to close out certain obligations to and from LBIE and the impact of these actions can not yet be analysed since the data is still being collated. For these reasons, if your clients choose to rely on this information, they must do so entirely at their own risk. The administrators can accept no liability which may result. We regret that LBIE is not able to provide data from its own systems that is as final and conclusive as your clients would like, but we hope that they will understand the reasons why definite and verified information is simply not available on the LBIE systems at this time.

The information we enclose with this letter is the information which is readily available to the administrators on LBIE's systems. In order to provide this information, the relevant LBIE staff have reviewed the records held on their systems for your clients' accounts and have generated the enclosed reports.

The enclosed information satisfies some of the requests which you have made in paragraph 6 of your application dated 3 October 2008. Other categories of information sought in your application are not set out on the enclosed information: for example, where and by whom the securities are being held, whether there is any third party entitlement and so forth. This information is not readily available from the LBIE database, and it would need to be the subject of specific investigation. Specifically, it would be necessary to investigate the records held by the LBIE collateral management team and to obtain data and records from the relevant third party custodians, depositaries and other parties. This is difficult for a number of reasons:

(i) This investigation process is being undertaken across the entire LBIE prime brokerage client universe, in an ordered and systematic way. The intention is that custodians be asked to provide information in respect of all holdings in each of the relevant securities accounts. Making separate enquiries to each custodian for each client holding is unworkable for both LBIE and for the custodian.

(ii) A number of custodians, depositaries and stock lending / borrowing counterparties are refusing to comply with demands for information, provide details of actions taken or confirm that they would be ready to transfer assets on demand.

(iii)   The administrators are only able to call upon limited LBIE resources. As the LBIE businesses are sold off or closed down, many key staff cease to be available. The administrators need to achieve as much as possible for the benefit of all creditors with the remaining LBIE resources in the limited time available.

(iv)    Even after making these enquiries of the LBIE collateral management teams and external custodians and depositaries, our clients would not be able to provide verified data within the categories sought by your clients until a full reconciliation of the relevant positions had been conducted.

The administrators would not be able properly to discharge their statutory functions if they were to divert resources to conduct the type of investigations which would be necessary in order to obtain the information requested by Newport and by other clients in a like position who have made (or in the future make) similar requests.

**Exercise of voting rights**

In your first letter of 3 October you refer to the exercise of voting rights in respect of certain securities lodged by your clients with LBIE as collateral. As you may be aware, the securities in question had been wholly re-used, some via transfer to LBI and some via transfer to third party custodians. For the reasons we have explained, your clients have no contractual entitlement to require that LBIE take any steps in relation to voting entitlements on securities which have been re-used.

Without prejudice to that position LBIE has sought to take steps to give effect to your clients' instructions to exercise voting rights in respect of those securities, in view of what you and your clients have said concerning the importance of the vote on the restructuring of the company in question. We are been informed that your clients have contacted LBI directly, and that LBIE staff have put you in contact with one of the two custodians. The other custodian has, we understand, voted in accordance with the instructions you issued.

As we have explained above, with this letter we have provided the information sought by your clients which is readily available on LBIE's systems. The administrators are not in a position to provide the remaining information sought by Newport without the diversion of resources and disruption to the work being undertaken for the benefit of LBIE creditors as a whole.

Further, in our view it is not necessary or appropriate that the information provided be verified by sworn statement.

In the premises, we therefore ask that you withdraw tomorrow's application.

Yours faithfully


Linklaters LLP