ALSTON & BIRD LLP
Martin G. Bunin
William Hao
90 Park Avenue
New York, New York 10016
Telephone: (212) 210-9400
Fax: (212) 210-9444

and

John C. Weitnauer
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Fax: (404) 881-7777

*Attorneys for Main Street Natural Gas, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
| In re: | : | Chapter 11 |
|---|---|---|
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., e*t al.* | : | Case No 08-13555 (JMP) |
| | : | |
| | : | Jointly Administered |
| Debtors. | : | |

---------------------------------------------------------X

**MAIN STREET NATURAL GAS INC.'S JOINDER IN THE LIMITED OBJECTION OF THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A. AS INDENTURE TRUSTEE, TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 6004, 6006 AND 9019 AUTHORIZING LEHMAN BROTHERS HOLDINGS INC. TO (A) ENTER INTO A PARTNERSHIP INTERESTS PURCHASE AGREEMENT, (B) COMPROMISE AND RELEASE A PORTION OF AN INTERCOMPANY LOAN, AND (C) ASSIGN THE <u>REMAINDER OF SUCH INTERCOMPANY LOAN TO PURCHASERS</u>**

Main Street Natural Gas, Inc. ("<u>Main Street</u>"), a party-in-interest in these chapter 11 cases, by and through its undersigned counsel, respectfully submits this joinder (the "Joinder") in the limited objection (the "<u>Indenture Trustee Objection</u>," Docket No. 914) of The Bank of New York Mellon Trust Company, N.A., as indenture trustee (the "<u>Indenture Trustee</u>") to the Sale (as defined below) and the proposed payment of proceeds to LBHI (as defined below)

in connection with the Sale, as set out below. In support of this Joinder, Main Street states as follows:

## BACKGROUND

*The Chapter 11 Cases and Sale Motion*

1. Commencing on September 15, 2008, and periodically thereafter, Lehman Brothers Holdings Inc. ("LBHI") and certain of its subsidiaries, including Lehman Brothers Commodity Services Inc. ("Commodities" and together with their affiliated debtors, the "Debtors"), commenced with the Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. On October 1, 2008, Debtors filed a motion (the "Sale Motion," Docket No. 503), seeking authority to sell all of LBHI's indirectly held partnership interests in Eagle Energy Partners I L.P., a Texas limited partnership ("Eagle LP"), to certain third-party purchasers in exchange for $230 million in cash (the "Sale"). Upon knowledge and belief, it appears that Commodities, a debtor in these proceedings as of October 3, 2008, is the majority limited partner owner of Eagle LP.

*The Gas Purchase Agreement*

3. Main Street is a Georgia non-profit corporation. Main Street was created by the Municipal Gas Authority of Georgia, a public body corporate and politic, a public corporation and instrumentality of the State of Georgia. Main Street was formed to acquire, finance and manage supplies of natural gas for sale to municipal and other governmental entities that are customers of Main Street.

4. Main Street is a party to that certain Trustee Indenture dated as of April 1, 2008 (the "Indenture") between Main Street and the Indenture Trustee. Proceeds of the Bonds

-2-

issued pursuant to the Indenture were used to prepay the purchase price of a thirty year supply of natural gas from Commodities, a subsidiary of LBHI, under an Agreement for Purchase and Sale of Natural Gas (the "Purchase Agreement" or the "Gas Purchase Agreement"), dated as of April 1, 2008, by and between Main Street and Commodities.

5. The Gas Purchase Agreement was terminated pursuant to the provisions of § 4.4. Under the Gas Purchase Agreement, Commodities owes Main Street "an amount equal to, without duplication, the Replacement Value of Gas not delivered prior to the Section 4.4 Termination Date, plus the Reimbursement Amount,[1] plus the Unearned Amount,[2] in each case determined as of the Section 4.4 Termination Date (such sum being the "Section 4.4 Termination Amount")." § 4.4(b) of the Gas Purchase Agreement.

6. Commodities' obligations under the Purchase Agreement are guaranteed by LBHI pursuant to a Guaranty dated April 1, 2008.

7. Per § 4.01 of the Indenture, the Bonds and the premium, if any, and the interest thereon are limited obligations of Main Street and are payable solely from the Trust Estate (as that term is defined in the Indenture), which has been pledged and assigned to the

---

[1] The Reimbursement Amount is defined by the Gas Purchase Agreement as follows:

"Reimbursement Amount" means an amount equal to the Redemption Price, plus any termination value of the Guaranteed Investment Contract owed by Purchaser, or minus any termination value of the Guaranteed Investment Contract to the extent irrevocably paid to Purchaser, plus any net amounts under Purchaser's Commodity Swap owed by Purchaser, or minus any net amounts under Purchaser's Commodity Swap to the extent irrevocably paid to Purchaser, less the current balances in the Debt Service Fund and the Operating Reserve Fund, and plus any incidental or direct costs incurred by Purchaser as a result of termination of this Agreement.

Pursuant to the Gas Purchase Agreement, "Redemption Price" is given the meaning set forth in the Indenture, and the Indenture defines Redemption Price to mean "with respect to any Bond, the amount payable upon redemption thereof pursuant to such Bond or this Trust Indenture other than any amounts due as accrued but unpaid interest."

[2] The Unearned Amount is defined by the Gas Purchase Agreement as follows:

"Unearned Amount" means the present value of the aggregate savings yet to be realized by Purchaser from delivery of Gas under this Agreement, discounted to the date of termination of this Agreement at a fixed rate equal to the true interest cost on the Bonds.

Trustee pursuant to the Indenture to secure payment of the Bonds and the premium, if any, and the interest on the Bonds.[3] The "Trust Estate" includes, <u>inter</u> <u>alia</u>, all of Main Street's rights, title and interest in, to and under the Gas Purchase Agreement, which includes, without limitation, Main Street's claim against Commodities for the Section 4.4 Termination Amount.

***The Indenture Trustee's Objection to the Sale***

8.  On October 14, 2008, the Indenture Trustee filed the Indenture Trustee Objection to the Sale. On October 15, 2008, the Debtors filed an omnibus reply (the "<u>Debtors' Reply</u>," Docket No. 1003) to the several objections filed to the Sale, including the Indenture Trustee Objection. The Debtors' Reply suggests, among other things, that the Indenture Trustee lacks standing to object to the Sale because the Indenture Trustee merely holds bonds issued by Main Street. (Debtors' Reply at fn.3.). However, for all intents and purposes, the Indenture Trustee, as the representative of the holders of the Bonds, is the true party-in-interest under the Gas Purchase Agreement, as acknowledged by Commodities in Section 13 of the Gas Purchase Agreement.

9.  Main Street has agreed to cooperate with the Indenture Trustee's efforts to foreclose on its collateral under the Indenture, including but not limited to all of Main Street's rights, title and interest in, to and under the Gas Purchase Agreement.

---

[3] The Indenture also provides (at § 4.01) that:

> The Bonds, the premium, if any, and the interest thereon shall not be deemed to constitute a pledge of the faith and credit of the State of Georgia or any political subdivision thereof, including Main Street, the Gas Authority or the other Customers.
>
> Neither the State of Georgia nor any political subdivision thereof, including the Gas Authority or the other Customers, shall be obligated to pay the principal of or premium, if any, or interest on the Bonds or other costs incident thereto, and neither the faith and credit nor the taxing power of the State of Georgia or any political subdivision thereof, including Gas Authority and the other Customers, is pledged to the payment of the principal of or premium, if any, or interest on the Bonds or other costs incident thereto.

**JOINDER**

10. Main Street agrees with the arguments, points and objections set forth in the Indenture Trustee Objection. Because the Indenture Trustee's foreclosure on Main Street's claims against Commodities under the Gas Purchase Agreement has not yet occurred, Main Street hereby joins in and incorporates by reference all of the arguments, points and objections set forth in the Indenture Trustee Objection. Main Street also hereby authorizes the Indenture Trustee to argue on Main Street's behalf at the hearing on the Sale Motion, and to act on behalf of Main Street with respect to the Sale Motion and the claims against Commodities under the Gas Purchase Agreement.

WHEREFORE, Main Street respectfully requests that the Court: (i) deny the Sale Motion unless the relief requested in the Indenture Trustee Objection is granted; (ii) grant certain discovery requests as set forth in the Indenture Trustee Objection; (iii) order that a discovery and briefing schedule be set with respect to those issues; and (iv) grant such other and further relief as is just and proper.

Dated: October 15, 2008

        ALSTON & BIRD LLP

        By:   s/Martin G. Bunin
            Martin G. Bunin
            William Hao
            90 Park Avenue
            New York, New York 10016
            Telephone: 212) 210-9400
            Fax: (212) 210-9444

        and

        John C. Weitnauer
        1201 West Peachtree Street
        Atlanta, Georgia 30309
        Telephone: (404) 881-7000
        Fax: (404) 881-7777

Attorneys for Main Street Natural Gas, Inc.