Hearing Date and Time: November 5, 2008 at 10:00 a.m.
Objection Deadline: October 29, 2008 at 4:00 p.m.

RICHARDS KIBBE & ORBE LLP
One World Financial Center
New York, NY 10281
Telephone: (212) 530-1800
Facsimile: (212) 530-1801
Michael Friedman
Joon P. Hong

Attorneys for the parties listed on Exhibit A hereto

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re                                                        : Chapter 11
                                                             :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                 : Case No. 08-13555 (JMP)
                                                             :
                                    Debtors.                 : Jointly Administered
------------------------------------------------------------ x

**MOTION FOR AN ORDER COMPELLING LEHMAN COMMERCIAL PAPER INC. TO ASSUME OR REJECT EXECUTORY CONTRACTS PURSUANT TO SECTIONS 105(d)(2)(A) AND 365(d)(2) OF THE BANKRUPTCY CODE**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

The parties listed on Exhibit A hereto (collectively, the "Movants"), by their undersigned attorneys, hereby file this motion (the "Motion") seeking entry of an order compelling Lehman Commercial Paper Inc. ("LCPI")[1] to assume or reject certain contracts between Movants and LCPI for

---

[1] For the avoidance of doubt, LCPI includes its branch in the United Kingdom.

NY470910.10/344-01676

the purchase and sale of commercial loans on or before November 7, 2008. In support of this Motion, the Movants respectfully represent as follows:

## PRELIMINARY STATEMENT

1.  Prior to the commencement of its bankruptcy case, LCPI entered into (i) various oral and written standard "LSTA"[2] trade confirmations with the Movants for the purchase and sale of commercial loans or participations therein (such agreements, the "LSTA Trade Confirmations"),[3] and (ii) oral trade confirmations with the Movants for the purchase and sale of claims against various third parties (such agreements, the "Trade Claim Confirmations" and, together with the LSTA Trade Confirmations, the "Trade Confirmations").[4] Pursuant to the Trade Confirmations, LCPI agreed to either sell to or purchase from Movants certain commercial loans, participations or claims at agreed upon purchase prices.

2.  The Trade Confirmations set out the salient economic terms of the transaction or "trade" between the parties and, in most cases, were subject only to the entry by the parties into transfer documentation, i.e., a form assignment agreement for "par" trades, an LSTA purchase and sale agreement and form of assignment agreement for sales or purchases of "distressed" loans, and an assignment agreement for the sale of claims. The Trade Confirmations represent binding

---

[2] LSTA refers to The Loan Syndications & Trading Association, Inc., a not-for-profit trade organization whose members include participants in the market for corporate loans and other similar private debt, which periodically promulgates certain standard forms to be used in the secondary bank loan market, including trade confirmations, purchase and sale agreements and assignment and acceptance agreements.

[3] Under section 5-701 of the New York General Obligation Law, oral contracts for the "assignment, sale, trade, participation, or exchange of indebtedness or claims . . . arising in the course of the claimant's business or profession (including but not limited to commercial and/or bank loans ...)" are binding so long as there is a form of written or electronic corroboratory evidence.  See N.Y. Gen. Oblig. Law § 5-701 (McKinney 2008).

[4] Certain Trade Confirmations are based on the Loan Market Association ("LMA") standard form documentation for use in the European secondary bank loan market. The framework and standard terms of an LMA Trade

2

NY470910.10/344-01676

agreements between the parties.[5] Furthermore, the Trade Confirmations constitute executory contracts until such time as the parties enter into definitive transfer documentation and consummate such transactions.

3. The Movants request that this Court compel LCPI to either (i) assume the Trade Confirmations, i.e., enter into definitive transfer documentation and consummate such transactions, (ii) reject the Trade Confirmations or (iii) assume some of the Trade Confirmations and reject the remaining Trade Confirmations. Absent such relief, Movants will be in the untenable position of bearing all of the risk relating to the market prices of the loans being purchased or sold pursuant to the Trade Confirmations exposing the Movants to potentially huge losses while permitting LCPI to essentially play the market and decide, after the fact, whether to assume or reject the Trade Confirmations.

4. In essence, absent the requested relief, the Movants will be in the position of having to wait an undefined and potentially extended period of time for LCPI to determine whether it wishes to assume or reject the Trade Confirmations after which point LCPI will only assume those Trade Confirmations in which it is "in the money" i.e., market prices have moved in a direction favorable to LCPI and unfavorable to the applicable Movant, and reject those Trade Confirmations in which it is "out of the money", i.e., market prices have moved in a direction unfavorable to LCPI

---

Confirmation are substantially similar to the LSTA framework.

[5] Certain of the Trade Confirmations indicated by an asterisk on Exhibit A hereto have been terminated by the Movant party to such Trade Confirmations prior to the Petition Date and therefore are no longer binding obligations of such Movant or LCPI (the "Terminated Trade Confirmations"). Therefore, the relief requested herein with respect to the Terminated Trade Confirmations is protective in nature and is being sought only to the extent the Terminated Trade Confirmations are deemed not to have been terminated prior to the Petition Date. Nothing herein shall be deemed to imply that such Movant has waived any rights to assert that the Terminated Trade Confirmations

and favorable to the applicable Movant. The Movants will therefore unfairly be subject to a classic "lose/lose" situation and will be severely prejudiced and suffer significant damage. Movants will be required to bear this risk during a period in which all financial markets, including the secondary market for commercial loans, are experiencing unprecedented volatility.

5. Moreover, a prolonged delay in determining whether to assume or reject the Trade Confirmations will likely cause damage to parties beyond Movants. To the extent Movants are unable to consummate a purchase of a loan from LCPI, Movants may also be unable to fulfill obligations they have themselves entered into to sell such loans to other trade counterparties. Therefore, in order to avoid such an inequitable result and damages to Movants and other loan market participants, LCPI should be compelled to either assume or reject each of the Trade Confirmations on an expedited basis.[6]

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory predicates for the relief sought herein are sections 105(d)(2)(A) and 365(d)(2) of title 11 of the United States Code (as amended, the "Bankruptcy Code").

---

have been terminated and are no longer binding obligations of such Movant or LCPI.

[6] Although the relief requested herein is sought with respect to the Trade Confirmations only, Movants would have no objection to this Court compelling LCPI to assume or reject all of its open trade confirmations with all market counterparties.

4

NY470910.10/344-01676

## BACKGROUND

8.     Commencing on September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its subsidiaries, including LCPI (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. LCPI filed its voluntary chapter 11 petition on October 5, 2008 (the "Petition Date"). The Debtors have continued to manage their properties and operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. By order of the Court, the Debtors' chapter 11 cases are being jointly administered for procedural purposes only.

9.     The Debtors sold their U.S. and Canadian Capital Markets and Investment Banking businesses, including the fixed income and equities cash trading, brokerage, dealing, trading and advisory businesses, investment banking operations and Lehman Brothers Inc.'s business as a futures commission merchant, to Barclays Capital Inc. ("Barclays"). The sale to Barclays closed on September 22, 2008.

**Prepetition Trade Confirmations for the
Purchase and Sale of Commercial Loans**

10.     Each Movant is a party to various prepetition Trade Confirmations with LCPI for the purchase or sale of commercial loans. A list of the Trade Confirmations showing the applicable Movant as well as other identifying details of the Trade Confirmations is attached hereto as Exhibit B.

11.     Generally, trades of commercial loans and claims begin as oral trades between the parties. These oral trades are then confirmed with a trade confirmation, i.e., a written trade

5

NY470910.10/344-01676

confirmation executed by the parties setting forth the salient terms of the "trade". Finally, these trades are consummated and settled upon the execution of agreed upon transfer documentation and payment of the applicable purchase price by the purchaser to the seller.

12. Pursuant to standard market conventions in the secondary loan trading market, transactions for the purchase and sale of commercial loans are usually targeted to close and settle within seven business days of the trade date for "par" trades, i.e., trades of performing loans at or near the "par" price for the loan. Such trades are usually settled simply through the execution of an assignment and acceptance agreement, typically a form document that is attached as an exhibit to the underlying credit agreement and receipt of all required consents and/or acknowledgments.

13. On the other hand, "distressed" trades (trades of distressed or non-performing loans or claims at a price that may be substantially below the par price of the loan or claim) are settled through the execution of a purchase and sale or similar agreement, which contains extensive representations, warranties, covenants, indemnifications and other negotiated provisions, frequently requires a longer period of time to negotiate and consummate and are usually targeted to close and settle within twenty business days[7] of the trade date.[8]

14. While the "targeted" timeframes for purchase and sale of commercial loans are not binding, they do represent a market expectation and the start date for the "delay compensation" framework instituted by the LSTA. LSTA trade settlement data for the second quarter of 2008

---

[7] With respect to LMA trades, the targeted closing dates are ten days for "par" trades and twenty days for "distressed" trades.

[8] Trades of distressed commercial loans also require the execution of an assignment and acceptance agreement used for "par" trades.

6

suggests that the average time to complete a par and distressed trade (from trade date to settlement) has lengthened to 19 business days and 40 business days, respectively. Almost all of the Trade Confirmations are close to or in excess of the already extended LSTA averages for trade settlement.

**LCPI's Prepetition Statements Regarding the Trade Confirmations**

15.     During the three-week period prior to the Petition Date, some of the Movants contacted responsible parties at LCPI with apparent authority to direct the settlement process. On Friday, October 3, 2008, just two days before the Petition Date, at the explicit request of LCPI, the LSTA circulated the following statement from LCPI via e-mail to all market participants in the bank loan market:

> We have received numerous inquiries regarding the status of Lehman Commercial Paper Inc. ("LCPI") and its ability to continue to close open trades. Please take notice that LCPI has not commenced a case under title 11 of the United States Code (the "Bankruptcy Code"). LCPI continues to operate its business and is authorized to perform its obligations in accordance with the terms of the various agreements to which it is party. In that regard, we are continuing to close open loan trades as expeditiously as possible. For instance, in the past week LCPI closed approximately 60 trades.
>
> Please note that any action taken or purportedly taken by a counterparty to any trade on the basis that Lehman Brothers Holdings Inc. has commenced a case under the Bankruptcy Code would be in violation of the applicable agreements. LCPI will consider all of its options with respect to any entity which acts in contravention of the agreements.

A copy of the October 3, 2008 e-mail statement is attached hereto as <u>Exhibit C</u>.

16.     Previously, on September 17, 2008, LCPI had confirmed to the participants in the bank loan market through the LSTA that it was fulfilling all duties as administrative agent under credit agreements where LCPI acted in that capacity. Again, LCPI cautioned all market participants

7

NY470910.10/344-01676

to strictly adhere to their contractual obligations and threatened that lenders that failed to comply with such obligations would be considered defaulting lenders under the relevant credit agreement. A copy of the September 17, 2008 e-mail statement is attached hereto as <u>Exhibit D</u>.

17. Despite these assurances, however, LCPI was unable to settle a majority of its outstanding trades with the Movants. While LCPI did permit certain Movants to "net" certain purchases from LCPI with certain sales to LCPI, despite LCPI's public assertion as noted in the e-mail described above in paragraph 15, LCPI did not settle any purchases, which would result in LCPI having to wire monies to Movants.

18. At all times Movants were, and today are, ready, willing and able to settle and consummate the Trade Confirmations with LCPI. However, Movants have not received any meaningful guidance from LCPI regarding closing or settling these trades or even whether LCPI intends to assume or reject the Trade Confirmations.

## RELIEF REQUESTED

19. The Movants respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit E</u>, compelling LCPI to either assume or reject each of the Trade Confirmations on or before November 7, 2008 and, to the extent LCPI fails to assume any of the Trade Confirmations by such date, deeming such Trade Confirmations to be rejected as of such date.

## BASIS FOR THE RELIEF REQUESTED

**The Court Should Compel LCPI to**
<u>**Assume or Reject the Trade Confirmations**</u>

20. Under section 365(d)(2) of the Bankruptcy Code, a debtor generally may assume or

8

NY470910.10/344-01676

reject an executory contract any time before confirmation of a plan of organization.[9] However, the breathing space afforded the debtor for the assumption or rejection of executory contracts is not without limits. Section 365(d)(2) itself provides that a court may, on the request of a party to such contract, shorten the period of time within which the debtor must make a decision regarding whether to assume or reject such contract. In this regard, section 365(d)(2) of the Bankruptcy Code provides:

> In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, <u>on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease</u>.

11 U.S.C. § 365(d)(2) (emphasis added).

21.     Furthermore, pursuant to section 105(d)(2) of the Bankruptcy Code, courts have authority to enter an order compelling debtors to assume or reject executory contracts by a date certain. 11 U.S.C. § 105(d)(2)(A) (courts have the authority to issue various kinds of orders, including an order that "sets the date by which the trustee must assume or reject an executory contract or unexpired lease").

22.     Indeed, Congress also recognized that the purpose of section 365(d) is to "prevent parties in contractual or lease relationships with a debtor from being left in doubt concerning their

---

[9] The Trade Confirmations are executory contracts subject to section 365 of the Bankruptcy Code because obligations remain on the part of both parties - one party must pay the purchase price and the other party must deliver the applicable commercial loans - and the failure to perform by either party would constitute material breach excusing performance of the other. <u>South Chicago Disposal, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)</u>, 130 B.R. 162, 164 (S.D.N.Y. 1991), citing Countryman, <u>Executory Contracts in Bankruptcy, Part I</u>, 57 Minn. L. Rev. 439, 460 (1973).

9

NY470910.10/344-01676

status vis-à-vis the estate." House Report No. 95-595, 95th Cong. 1st Sess. at 348 (1977); Senate Report No. 989, 95th Cong., 2d Sess. at 59 (1978); see also In re University Medical Center, 973 F.2d 1065, 1078-79 (3d Cir. 1992); In re Beker Indus. Corp., 64 B.R. 890 (Bankr. S.D.N.Y. 1986).

23. Although the general rule is that the debtor is afforded a reasonable time within which to decide whether to assume or reject an executory contract, See In re Enron Corp., 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002), what constitutes reasonable time is left to the bankruptcy court's discretion, to be determined on a case by case basis in light of the broad purposes of the entire Bankruptcy Code. Theatre Holding Corp. v. Mauro, 681 F.2d 102 (2d Cir. 1982); In re Teligent, Inc., 268 B.R. 723, 738 (Bankr. S.D.N.Y. 2001).

24. In determining whether to accelerate the debtor's decision, the court must balance the interests of the non-debtor contracting party against the interests of the debtor and the bankruptcy estate. In re Physician Health Corp., 262 B.R. 290, 292 (Bankr. D. Del. 2001); In re Midtown Skating Corp., 3 B.R. 194, 198 (Bankr. S.D.N.Y. 1980).

25. In balancing these interests, relevant considerations include (i) the damage the non-debtor party will suffer beyond the compensation available under the Bankruptcy Code, (ii) the importance of the contract to the debtor's business and reorganization and (iii) whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan. In re Teligent, Inc., 268 B.R. at 738. The list of factors is, however, not exhaustive and there may be other factors that a bankruptcy court should consider. South Street Seaport Limited Partnership v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755 (2d Cir. 1996); In re Dana Corp., 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006) (listing various factors,

10

including the balance of hurt to the litigants, the good to be achieved and the safeguards afforded the litigants); In re St. Mary Hosp., 89 B.R. 503, 513 (Bankr. E.D. Pa. 1988) (a motion to compel a debtor to assume or reject an executory contract "must be resolved by weighing the nature of the interests at stake, the balance of the hurt to the litigants, the good to be achieved, and the safeguards afforded those litigants"); N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 551-52 (1984) (in certain circumstances, the rights of the non-debtor party to an executory contract to know its position with respect to the debtor and the contract at issue would outweigh the need of the debtor in possession for unlimited flexibility and breathing space). Applying these factors to the facts at hand, it is clear that the balance of interests and hurt of the Movants and LCPI favors compelling LCPI to promptly assume or reject the Trade Confirmations.

A.    The Movants Will Suffer Damages Unless LCPI is
      Compelled to Assume or Reject the Trade Confirmations

26.    Absent the relief requested herein, the Movants would bear all the risk of market volatility and fluctuation in price of the commercial loans and claims that are the subject of the Trade Confirmations. Absent an order compelling LCPI to assume or reject the Trade Confirmations, LCPI can play the market at no risk to themselves, waiting to see which direction the market price of various commercial loans and claims moves and essentially gamble at the expense of the Movants. This would be wholly inequitable and contrary to the spirit and goals of the Bankruptcy Code. Taunton Municipal Lighting Plant v. Enron Corp. (In re Enron Corp.), 354 B.R. 652, 660 (S.D.N.Y. 2006) (the existence of a "mechanism to compel such an expedited determination by the debtor, within the procedures established under Section 365(d)(2), provides creditors . . . with a means of avoiding being subjected to the fluctuations of market prices for the

11

NY470910.10/344-01676

goods at issue in their contracts, while furthering the overall goal of the Bankruptcy Code to enable the debtor to arrange its affairs and start anew.").

27.    If LCPI is not compelled to assume or reject the Trade Confirmations shortly, the Movants would be severely prejudiced and very likely suffer damages. Therefore, it is imperative that the Movants obtain some certainty regarding the intentions of LCPI with respect to the Trade Confirmations. Further delay would only cause uncertainty and subject Movants to the fluctuations of the market price for the commercial loans and claims at issue. See In re Beker Indus. Corp., 64 B.R. 890, 898 (Bankr. S.D.N.Y. 1986) (particular weight should be given to the non-debtor's request to compel assumption or rejection when the "delay adds uncertainty and threatens the obligee with additional post-petition costs").

    B.    Timely Decision to Assume or Reject the Trade Confirmations Is Critical to the Debtors' Reorganization

28.    The Debtors have sold a significant portion of their businesses and assets to Barclays and are in the process of further liquidating their businesses and assets and unwinding their operations.[10] Accordingly, if LCPI either intends to "re-start" its business or decides to exit the secondary loan trading arena, the question of closing the Trade Confirmations or rejecting them in a timely manner is critical to both sides of the issue. The participants in the secondary loan market are unlikely to transact with a counterparty who refuses to make a timely decision. In addition, if the market prices move against the position of LCPI's estate, damage claims by counterparties against

---

[10] LCPI, in its bankruptcy proceeding, recently obtained authorization from this Court to elevate participations and sub-participations in the ordinary course of its business. See Order Pursuant to Sections 105(a), 363(b), 363(c), and 541(d) of the Bankruptcy Code and Bankruptcy Rule 6004 Authorizing Debtor to (A) Continue to Utilize Its Agency Bank Account, (B) Terminate Agency Relationships, and (C) Elevate Loan Participations, entered on

the estate will only increase in amount, thereby impairing recoveries for creditors. A quick resolution of this issue is necessary for a reorganization of LCPI or the Debtors.

### C. LCPI has had Sufficient Time to Value the Trade Confirmations

29. LCPI has also had reasonable time to determine whether to assume or reject the Trade Confirmations. The determination of whether to assume or reject the Trade Confirmations is not a complex or difficult task and LCPI can readily ascertain whether the Trade Confirmations are of net benefit to its estate. LCPI can determine today whether the positions it is purchasing or selling under the Trade Confirmations are "in the money" or "out of the money" or whether it needs to assume any Trade Confirmations in order to fulfill obligations it may have to other parties under separate trade confirmations. In fact, making such determinations was the business of LCPI and it should not be permitted to further profit from, or cause distress to the Movants arising from, any delay in exercising its business judgment to make these determinations.

### The Balance of Equities Favor Granting Relief Sought by Movants

30. As discussed, LCPI will not suffer significant harm if the Court compels them to promptly assume or reject the Trade Confirmations. In fact, compelling assumption or rejection of the Trade Confirmations would provide certainty to LCPI, the Movants and the secondary loan market in general by locking in the gain or loss on such trades and establishing the amount of any claims that may be asserted by Movants against LCPI and freeing parties to either consummate the transactions or engage in alternate transactions.

---

October 6, 2008. [Docket No. 11].

13

NY470910.10/344-01676

31.     However, further delaying LCPI's decision whether to assume or reject the Trade Confirmations would likely cause the Movants significant harm. The longer LCPI takes to decide whether to assume or reject the Trade Confirmations, the longer the Movants will be subject to further purchase price fluctuations in respect of the loans and claims that are the subject of the Trade Confirmations. This is particularly significant because the financial markets, including the secondary market for commercial loans are experiencing almost unprecedented volatility exposing market participants to substantial price fluctuations.

32.     If, during the period LCPI is making the determination whether to assume or reject, the price of a particular loan or claim subject to a sale to LCPI declines to a price below the purchase price in the applicable Trade Confirmation, LCPI would likely reject the Trade Confirmation whereupon Movant will have borne the entire risk of the price decline. Conversely, if, during such same period, the price of such loan or claims increases to a price higher than the purchase price set forth in the Trade Confirmation, LCPI will likely assume such contract and reap the benefits of the higher price.

33.     As a result, absent the relief requested in this Motion, regardless of whether the price of the loan increases or decreases, Movants can only suffer losses and there will never be any circumstance under which it would be in a position to reap any benefit. Conversely, LCPI, unfairly and contrary to the underlying intent of section 365 of the Bankruptcy Code, would be in a position to only benefit from price fluctuations without being required to bear any risk. Such a result would be inequitable and is cause for this Court to grant the requested relief.

34.     Moreover, even if the Movants tried to mitigate damages today by either selling the

14

underlying loans subject to pending sales or purchasing loans subject to pending purchases from LCPI, such actions would still leave the Movants exposed to further damages from fluctuations in market prices. For example, if a Movant sold a loan and the price of the loan increased at a later date and LCPI assumed the Trade Confirmation, the Movant would be required to purchase the loan at the higher market price and fulfill its obligations under the Trade Confirmation to sell the loan to LCPI at the lower purchase price contained in the Trade Confirmation. Thus, even attempted mitigation by Movants could result in increased damages to Movants.

**Absent the Relief Requested in this Motion the
Secondary Loan Market May Be Adversely Impacted**

35.    In addition to the significant harm that is likely to be suffered by Movants, allowing LCPI to delay its determination will likely have widespread repercussions on the secondary loan market. Even with respect to the Trade Confirmations, such repercussions are likely to extend beyond the Movants because to the extent Movants are unable to consummate a purchase of a loan from LCPI, Movants may also be unable to fulfill obligations it itself has entered into to sell such loans to other trade counterparties.

36.    Moreover, the necessity of the relief requested is even more urgent since LCPI is not merely a counterparty but acted as a dealer with respect to hundreds of trades of commercial loans in the secondary market and any prolonged delay will impact hundreds if not thousands of market participants. Therefore, in order to avoid such an inequitable result and damages to Movants and other loan market participants, LCPI should be compelled to either assume or reject each of the Trade Confirmations on an expedited basis.

15

NY470910.10/344-01676

## CONCLUSION

37. For all of the reasons set forth above, the Movants respectfully request that this Court compel LCPI to either assume or reject each of the Trade Confirmations on or before November 7, 2008 and, to the extent LCPI fails to assume any of the Trade Confirmations by such date, deem such Trade Confirmations to be rejected as of such date.

## NOTICE

38. Notice of this Motion has been provided in accordance with the procedures set forth in the order entered on September 22, 2008 governing case management and administrative procedures for the Debtors' cases [Docket No. 285]. No other or further notice need be provided.

39. No previous request for the relief sought herein has been made by the Movants to this or any other court.

WHEREFORE, Movants request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: New York, NY
      October 17, 2008

                              /s/ Michael Friedman
                              Michael Friedman
                              Joon P. Hong

                              RICHARDS KIBBE & ORBE LLP
                              One World Financial Center
                              New York, New York 10281
                              Telephone: (212) 530-1800
                              Facsimile: (212) 530-1801

                              Attorneys for the parties listed on
                              Exhibit A hereto

NY470910.10/344-01676