# Exhibit A

**DEBTORS' MOTION PURSUANT TO SECTION 365 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 6006 AND 9014
FOR AUTHORIZATION TO REJECT CONTINGENT MANAGEMENT
AGREEMENT WITH WESTLB AG
[Docket No. 1130]**

## CONTINGENT MANAGEMENT AGREEMENT

CONTINGENT MANAGEMENT AGREEMENT made as of this 5th day of January, 1999 (the "Agreement"), by and between Lehman Brothers Financial Products Inc. ("LBFP"), a Delaware corporation, and Westdeutsche Landesbank Girozentrale (New York Branch), including any affiliate thereof that Westdeutsche Landesbank Girozentrale (New York Branch) directs to perform its obligations hereunder (the "Contingent Manager").

### W I T N E S S E T H:

WHEREAS, LBFP desires to retain the Contingent Manager to render services to LBFP in the manner and on the terms and conditions set forth below; and

WHEREAS, the Contingent Manager desires to provide services to LBFP in the manner and on the terms and conditions set forth below;

NOW, THEREFORE, in consideration of the premises and the covenants contained herein, LBFP and the Contingent Manager hereby agree as follows:

1.    Definitions. All capitalized terms used herein that are not defined in this Agreement or in Appendix A hereto shall have the meanings assigned thereto in the Operating Guidelines. A copy of the Operating Guidelines has been provided to the Contingent Manager. In case of any inconsistency or conflict between the definitions or the provisions of this Agreement on one hand, and the definitions or provisions of the Operating Guidelines or any other agreement or document whether or not between the parties hereto, on the other hand, the definitions and provisions of this Agreement shall prevail.

2.    Contingent Manager Responsibilities.

a.    Management Period. LBFP shall notify the Contingent Manager of the occurrence of a Trigger Event and the commencement of a Management Period on the day of such occurrence. Subject to the oversight, direction and control by the Board of Directors, during the Management Period, the Contingent Manager will direct LBFP's employees and act directly as LBFP's agent, in accordance with the detailed policies reflected in the Operating Guidelines. Without limiting the generality of the foregoing sentence, during the Management Period, the Contingent Manager shall act as set forth below in the following areas:

(i)    LBFP Portfolio. The Contingent Manager shall use its best efforts to hedge or, if necessary, liquidate the LBFP Portfolio, which in the case of Qualified Transactions and Qualified Hedges shall mean that the Contingent Manager will act with the sole purpose of reducing market risks, including interest rate and foreign exchange risks. In so hedging or liquidating, the LBFP Portfolio, the Contingent Manager shall act as LBFP's agent or, in the sole discretion of the Contingent Manager, as a principal to LBFP. The

0324937.08

Contingent Manager shall also advise LBFP as to the manner in which rights pertaining to LBFP Portfolio securities shall be exercised.

     (ii)    Other Assets.  The Contingent Manager shall provide LBFP with advice relating to the proper deployment of LBFP Qualified Capital Investments other than the LBFP Portfolio (including, but not limited to, the proceeds from the sale of LBFP's common stock and retained earnings) and provide advice, from time to time, as to which securities shall be purchased, sold or exchanged and what portion of such Qualified Capital Investments of LBFP shall be held in various securities, all in accordance with the policy relating to permissible investments established by the Board of Directors and the detailed policies reflected in the Operating Guidelines.

     (iii)    Relationships.  Subject to the confidentiality provisions of Section 10 of this Agreement and any other limitations contained herein, the Contingent Manager shall maintain any relationships necessary or desirable to fulfill its obligations under this Section 2(a), including those with LBFP counterparties, employees, third-party service providers and vendors and shall enter into any new relationships necessary or desirable to fulfill its obligations under this Section 2(a).

     b.    Limited Management Period.  LBFP shall notify the Contingent Manager of the occurrence of a Holding's downgrade and the commencement of a Limited Management Period on the day of such occurrence. Subject to the oversight, direction and control by the Board of Directors, during the Limited Management Period, the Contingent Manager will direct LBFP's employees to enter only into risk reducing transactions and, if necessary, will act directly as LBFP's agent to enter only into risk reducing transactions, in accordance with the detailed policies reflected in the Operating Guidelines.

     c.    Services Period.  LBFP shall notify the Contingent Manager of the commencement of a Services Period on the day of such commencement.  During any Services Period, the Contingent Manager shall increase its familiarity with the business, systems and operations of LBFP, through review of the Contingent Manager Report and Independent Verifier Report provided by LBFP pursuant to Sections 3(b) and 3(c) hereof respectively, shall initiate contact with the Board of Directors to establish LBFP's course of conduct during any Services Period, shall review and update with LBFP any Transition Plan established pursuant to Section 4 hereof and shall otherwise cooperate with LBFP in LBFP's performance of its obligations to the Contingent Manager during any Services Period pursuant to this Agreement in preparation for the provision of services by the Contingent Manager during a Management Period or Limited Management Period, as set forth in this Agreement.

     d.    General.  The Contingent Manager shall have no authority to act for or represent LBFP in any way or otherwise be deemed an agent of LBFP, except as expressly authorized herein in the Contingent Manager's capacity as Contingent Manager hereunder. LBFP hereby appoints the Contingent Manager as its agent or attorney-in-fact for the purpose of carrying out in the name of LBFP or otherwise, all acts and transactions whatsoever,

including exercising all rights and remedies and utilizing all collateral and guarantees available to LBFP, which may be required or desirable for the purpose of performing the Contingent Manager's obligations hereunder, and LBFP hereby ratifies and confirms all that the Contingent Manager may do pursuant to this Agreement. To this end, LBFP agrees to execute and deliver to the Contingent Manager any agreements, documents or deeds and to do whatever is necessary or desirable to enable the Contingent Manager to perform its obligations hereunder consistent with the policies reflected in the Operating Guidelines, and to exercise all rights and remedies on behalf of LBFP, including utilizing all collateral and guarantees available to LBFP.

LBFP acknowledges and agrees that (i) any recommendation or advice by the Contingent Manager hereunder will be based upon information obtained from sources believed by the Contingent Manager to be reliable, however, the Contingent Manager makes no representation, warranty or guaranty as to the accuracy or completeness of any such information or recommendation furnished to LBFP or as to the tax, accounting or other consequences of any such information and recommendation; (ii) the Contingent Manager, or one or more of its affiliates, including their respective officers, directors, employees, or agents, may, in the sole discretion of the Contingent Manager, enter into any of the transactions contemplated hereunder (including without limitation, derivatives and securities transactions) with LBFP or others as principal, or any of the foregoing may have a position in, intend to, and may enter into any such transactions with third parties and that any such positions or transactions may or may not be consistent with the recommendations or advice furnished to LBFP hereunder; (iii) the Contingent Manager shall be entitled to rely and shall be fully protected and held harmless in relying upon all notices, instructions and other communications that the Contingent Manager reasonably believes to have been given by an Authorized Person; (iv) the Contingent Manager will act as an agent and not as a fiduciary of LBFP; and (v) all claims of the Contingent Manager hereunder shall rank equal in priority of payment and satisfaction with the claims of all other unsecured creditors of LBFP. All obligations and responsibilities of the Contingent Manager to be performed under this Agreement shall be subject to, and limited by, applicable law and the relevant interpretations thereof, including all applicable bankruptcy laws.

3.    LBFP Responsibilities.

a.    LBFP Systems and Equipment. LBFP shall obtain or lease through third-party vendors the various systems (including software and hardware and payments and hedging systems) and equipment necessary to the conduct of its business. The availability of such items to LBFP and the Contingent Manager will not depend on the availability of the personnel, systems or equipment of LBFP's affiliates. LBFP will maintain full appropriate disaster recovery equipment, software and facilities, including customary off-site disaster recovery facilities, for the foregoing systems with entities not affiliated with LBFP, which equipment, software and facilities will be available to the Contingent Manager.

b.    Independent Verifier Reports. During the Term of this Agreement, LBFP shall provide (or cause the Independent Verifier to provide) to the Contingent Manager

3

the reports of the Independent Verifier ("Independent Verifier Reports") in respect of LBFP's compliance with the current Operating Guidelines. Such reports shall be prepared as frequently as required under the Operating Guidelines and shall be provided to the Contingent Manager promptly after their preparation.

      c.    Contingent Manager Report.  During the Term of this Agreement, LBFP shall provide the Contingent Manager with the unaudited financial statements of LBFP on a quarterly basis and shall provide the Contingent Manager on a quarterly basis with a copy of the portfolio report provided to the Board of Directors which report shall consist of no less information concerning LBFP's business than is set forth in Appendix B hereto ("Portfolio Report") (the unaudited financials and the Portfolio Report together constitute the "Contingent Manager Report").

      d.    Changes to Operating Guidelines.  During the Term of this Agreement, LBFP will promptly notify the Contingent Manager of all material changes to the Operating Guidelines.

      e.    LBFP Dividends.  In addition to acting in accordance with the dividend policy reflected in the Operating Guidelines, during the Term of this Agreement LBFP will only make dividends during the Management Period after obtaining the consent of the Contingent Manager, which consent will not be unreasonably withheld.

      f.    LBFP Indemnity.  LBFP agrees to, and shall, indemnify, defend and hold the Contingent Manager, and its affiliates and their respective directors, officers, agents and employees harmless from any and all claims, actions, demands, losses, obligations, liabilities, reasonable costs and expenses, and other amounts of every kind and nature, as incurred, including, without limitation, court costs, other related expenses and reasonable attorney's fees arising from any claims against the Contingent Manager, its affiliates or their respective directors, officers, agents or employees related to this Agreement or any performance by the Contingent Manager hereunder unless such claim arises solely from the Contingent Manager's willful misfeasance, gross negligence or reckless disregard of its obligations and duties hereunder.  The provisions of this Section 3(f) shall survive the termination of this Agreement.

      g.    Obligations During the Management Period. During the Management Period, LBFP shall cooperate fully with the Contingent Manager to enable the Contingent Manager to fulfill its obligations under Section 2(a) hereof.  Promptly following the commencement of the Management Period, and thereafter during the Management Period, LBFP shall (i) cause the Independent Verifier to (A) provide the Contingent Manager with all relevant systems information, including transaction data and LBFP's risk management and operating systems in electronic form and in hard copy format, except that computer programs may be furnished in electronic form only and (B) verify continued compliance with the current Operating Guidelines of LBFP; (ii) provide the Contingent Manager with specific detailed policies relating to the asset mix and duration of LBFP's assets; and (iii) provide any other services, information (including, but not limited to, documentation, computer software,

dealing records and accounting information), employees and third party services providers, including but not limited to counsel, as the Contingent Manager may reasonably deem necessary to facilitate the fulfillment of the Contingent Manager's duties and obligations during the Management Period.

       h.    <u>Obligations During the Limited Management Period</u>.   During the Limited Management Period, LBFP shall cooperate fully with the Contingent Manager to enable the Contingent Manager to fulfill its obligations under Sections 2(b) and 4 hereof. Promptly following the commencement of the Limited Management Period, LBFP shall deliver to the Independent Verifier and the Contingent Manager LBFP's transaction data and copies of LBFP's current risk management and operating systems in electronic form and hard copy form, except that computer programs may be furnished in electronic form only. LBFP shall also review and update, with the Contingent Manager, the Transition Plan established pursuant to Section 4 hereof.

       i.    <u>Obligations During the Services Period</u>.   During the Services Period, LBFP shall cooperate fully with the Contingent Manager to enable the Contingent Manager to fulfill its obligations under Section 2(c) hereof.  During the Services Period, LBFP shall deliver to the Independent Verifier, to be held in escrow, LBFP's transaction data and copies of LBFP's current risk management and operating systems in electronic form. LBFP shall also review and update, with the Contingent Manager, the Transition Plan established pursuant to Section 4 hereof.

       j.    <u>LBFP Personnel</u>.  During the Term of this Agreement, LBFP shall make an adequate number of appropriate LBFP personnel available to the Contingent Manager, as reasonably required by the Contingent Manager to fulfill its obligations hereunder.

       4.    <u>Transition Plan</u>.  The Contingent Manager and LBFP agree to work together to develop and document a detailed transition plan that will govern the actions to be taken by each party in the event a Limited Management Period or Management Period occurs ("<u>Transition Plan</u>"). The Transition Plan shall include the provision of a Summit system site at the premises of the Contingent Manager, a test hook-up of such site, a procedure for retesting during normal operations and at increased frequency during any Limited Management Period, and LBFP's oversight of the transfer of any futures positions to a new futures commission merchant. As set forth in Sections 2(c) and 3(h) hereof, the parties will work together to review and update the Transition Plan upon the commencement of a Limited Management Period.

5.      Allocation of Charges and Expenses.

a.      The Contingent Manager assumes and shall only pay for maintaining the existing employees that the Contingent Manager would use in order to perform its obligations under this Agreement.

b.      LBFP assumes and shall pay or cause to be paid all of its expenses, including, without limitation: compensation of its employees, custodian fees, fees and actual out-of-pocket expenses of members of the Board of Directors, accounting and operational costs, software license fees, computer hardware expenses (including maintenance costs), occupancy costs of LBFP's premises, and all costs associated with the Transition Plan.

6.      Fees and Expenses of Contingent Manager.   LBFP will pay the following fees to the Contingent Manager during the Term of this Agreement: $250,000 per annum during any Services Period, payable semi-annually in advance on the first day of each such semi-annual period, with the first such payment to occur on the first day of the commencement of any such Services Period; $900,000 per annum during a Limited Management Period, payable monthly in advance in twelve equal installments on the first day of each month with the first such payment to occur on the first day of the commencement of any such Limited Management Period; and a fee per annum equal to the product of $1,250,000 and the Notional Factor during the Management Period, payable in full annually in advance, with the first such payment to occur on the first day of the commencement of such Management Period, and the subsequent payments to occur in advance on the yearly anniversary of such commencement date.   LBFP shall pay or reimburse the Contingent Manager on demand for all costs and expenses incurred by the Contingent Manager in connection with this Agreement promptly following receipt of a reasonably detailed invoice therefor, other than the costs and expenses referred to in Section 5(a).   Such costs and expenses shall include, without limitation, the costs and expenses relating to liquidating, hedging or assigning the LBFP Portfolio and retaining consultants, independent contractors, agents, including attorneys, and any necessary hardware or software expenses, fees and commissions.

The "Notional Factor" is based on the aggregate notional amount of LBFP's portfolio of Qualified Transactions as of the first day of the Management Period.

| Aggregate Notional | Notional Factor |
| --- | --- |
| Less than $50 billion | 80% |
| $50 billion or more, but less than $150 billion | 100% |
| $150 billion or more | 120% |

6

In the event that a Management Period occurs during the Term of this Agreement, LBFP will also pay, on the Incentive Fee Determination Date, an incentive fee of $2,000,000 if the Market Value of the LBFP Portfolio satisfies the standards specified in Appendix C.

The provisions of this Section 6 shall survive the termination of this Agreement.

7.    Limitation of Liability of the Contingent Manager.   All profits and losses arising out of or relating to activities conducted by the Contingent Manager, its affiliates and their respective directors, officers, agents and employees, hereunder or the transactions contemplated hereunder shall be for the account of LBFP.  The Contingent Manager and its affiliates and their respective directors, officers, agents and employees shall not be liable in contract, tort or otherwise for any error of judgment or mistake of law or for any loss, cost, expense, or liability whatsoever arising out of any investment or for any act or omission in the provision to LBFP of advisory and other services hereunder, except for willful misfeasance or gross negligence in the performance of its duties, or by reason of reckless disregard of its obligations and duties hereunder.  The provisions of this Section 7 shall survive the termination of this Agreement.

8.    Open Communication; Cooperation.   LBFP and the Contingent Manager will maintain ongoing open communication concerning the administration of this Agreement and the development of operational implementation plans.  By reasonable notice, the Board of Directors or the Contingent Manager may initiate a meeting with the other to discuss matters of material concern relating to this Agreement.  LBFP shall cooperate with the Contingent Manager, and the Contingent Manager shall cooperate with LBFP, to enable the other to fulfill its obligations under this Agreement.

9.    Opinions.   The Contingent Manager will be entitled to rely on the legality, federal securities and commodities laws, and structural opinions relating to LBFP. The Contingent Manager will be entitled to such other commercially reasonable legal opinions as it desires.

10.    Confidentiality.   The Contingent Manager acknowledges that the Operating Guidelines, the documents set forth in Appendix D hereto and any information relating to LBFP's business that the Contingent Manager obtains or otherwise becomes aware of solely in connection with performing its duties hereunder are highly confidential.  The Contingent Manager agrees to maintain the confidentiality of such information during the term hereof and for a term of two years after the termination of this Agreement and shall not disclose such information, except that the Contingent Manager may disclose such information: (i) to such of the Contingent Manager's officers, directors, employees, agents and representatives as need to know such information in connection with the services to be performed by the Contingent Manager hereunder; (ii) to the extent that the Contingent Manager may be required by applicable laws or regulations or by any subpoena or legal

7

process to disclose such information; (iii) to the extent such information becomes publicly available or was available to the Contingent Manager on a non-confidential basis prior to its disclosure to the Contingent Manager by LBFP; or (iv) to the extent LBFP shall have consented to such disclosure. Except to the extent the conditions in (iii) or (iv) of the preceding sentence have been met, the Contingent Manager further agrees not to use such information (a) to establish its own (or to assist a third party in establishing) special purpose vehicle that has materially the exact same structure as LBFP, and (b) following the commencement of a Limited Management Period hereunder, and until the earlier of (i) the commencement of a Management Period hereunder or (ii) the second anniversary of the termination of this Agreement, not to compete with LBFP by using proprietary information regarding structured derivative transactions unique to LBFP and LBFP affiliates, and which has been obtained by the Contingent Manager solely as a result of acting as a Contingent Manager hereunder, and which is not otherwise available to the Contingent Manager. Subject to the above, the Contingent Manager's ability to enter into transactions with respect to the accounts of itself, its affiliates and clients (collectively, the "Accounts"), including without limitation swap transactions, option transactions, other derivatives transactions, and securities transactions, and the Contingent Manager's ability to provide services to others, directly or through a derivatives business vehicle or company it may choose to form, shall in no way be impaired by its acting as Contingent Manager hereunder, and the Contingent Manager or such vehicle or company may enter into such transactions with others and act in a contingent management or similar capacity or as service provider for entities other than LBFP.

11.    Duration and Renewal.

a.    This Agreement shall be a binding agreement as of the date hereof, and shall terminate on January 18, 2004 (the "Termination Date") unless (i) the LBFP Portfolio has been liquidated upon the occurrence of a Trigger Event, in which case, this Agreement will terminate upon liquidation of the LBFP Portfolio, (ii) this Agreement is terminated in accordance with Section 12, (iii) this Agreement is extended by mutual agreement in accordance with Section 11(b), or (iv) this Agreement is extended in accordance with Section 11(c).

b.    The parties may agree to extend the Termination Date by mutual agreement on not less than 60 days notice prior to the expiration date set forth in Section 11(a).

c.    During any Services Period or Limited Management Period, LBFP shall notify the Contingent Manager, not less than 60 days prior to the Termination Date, in the event that LBFP intends to obtain a replacement Contingent Manager. Notwithstanding anything contained in this Agreement, if LBFP fails to obtain a replacement Contingent Manager acceptable to Moody's and S&P prior to the expiration of this Agreement pursuant to this Section 11 or termination of this Agreement pursuant to Section 12 hereof, this Agreement shall continue in effect until the earlier of (i) LBFP obtaining a replacement Contingent Manager acceptable to Moody's and S&P or (ii) liquidation of the entire LBFP

☒010

Portfolio at the direction of LBFP.  During any such Service Period or Limited Management Period in which this Agreement shall continue in effect because of the absence of a replacement Contingent Manager acceptable to Moody's and S&P, the Contingent Manager shall be entitled to 125% of such compensation as and when would otherwise be owed to the Contingent Manager under Section 6.  During any Management Period in which this Agreement shall so continue, the Contingent Manager shall be entitled to 100% of the compensation as and when it would otherwise be owed to the Contingent Manager under Section 6.

      12.    Termination.

      a.    LBFP shall have the immediate right to terminate this Agreement, upon notice to the Contingent Manager, upon the rating of the Contingent Manager falling below the Required Rating.

      b.    LBFP shall have the right to terminate this Agreement without cause at any time on or after January 18, 2001 upon not less than 60 days prior written notice to the Contingent Manager.

      13.    Amendments and Waivers.  No amendment of any provision of this Agreement shall be effective unless the same shall be in writing and designated as an amendment to this Agreement and signed by each party hereto.  No waiver of any provision of this Agreement nor consent to departure herefrom by any party hereto shall be effective unless the same shall be in writing and signed by the party against whom enforcement of such waiver or consent is sought and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

      14.    Notices.

      a.    Except as otherwise expressly provided herein, all notices and other communications provided for hereunder shall be in writing (including telex or facsimile communication) and mailed or transmitted or delivered at the addresses set forth below.  Any such notice or communication shall be deemed to have been given (i) if delivered personally, on the date so delivered (or, if not a Business Day on the next following Business Day), (ii) if sent by recognized overnight delivery service, on the Business Day on which it is received, (iii) if sent by registered mail, postage prepaid, on the Business Days on which it is received, or (iv) if sent by telecopy, upon verbal telephone confirmation of receipt by an individual authorized to receive telecopy communications at the above-specified telecopy number.

If to LBFP:

>       Lehman Brothers Financial Products Inc.
>       3 World Financial Center
>       9th Floor
>       New York, NY 10285-1200
>       Attention:       Anthony Lazanas
>       Telephone:       (212) 526-8882
>       Facsimile:       (212) 528-6139

If to Contingent Manager:

>       Westdeutsche Landesbank
>       1211 Avenue of Americas
>       23rd Floor
>       New York, NY  10036
>       Attention:       Jiro Okochi
>       Telephone:       (212) 597-8500
>       Facsimile:       (212) 597-8590

    b.    LBFP shall provide (i) Moody's and S&P with prompt notice of (A) any expiration of this Agreement without renewal and (B) any other termination of this Agreement; and (ii) Moody's and S&P with prompt notice of any material amendment to this Agreement, in each case at the applicable following address:

>       Moody's Investors Service, Inc.
>       99 Church Street, 4th Floor
>       New York, New York 10007
>       Attention:       Jeremy Gluck, telephone (212) 553-3698
>                        William May, telephone (212) 553-3868
>       Facsimile:       (212) 553-0355

>       Standard & Poor's
>       25 Broadway
>       New York, New York 10004
>       Attention:       Reza Bahar, telephone (212) 208-8526
>                        Jack Frischberg, telephone (212) 208-5210
>       Facsimile:       (212) 412-0528

    15.    <u>Governing Law</u>.  This Agreement shall be construed in accordance with the laws of the State of New York applicable to agreements made and to be performed in such state.

16.    Entire Agreement.  This Agreement embodies the entire agreement and understanding between LBFP and the Contingent Manager and supersedes all prior agreements and understandings between LBFP and the Contingent Manager relating to the subject matter hereof.

17.    Counterparts.    This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

18.    Assignment; Binding Effect.  This Agreement may not be assigned by either of the parties without the prior written consent of the other party.  This Agreement is binding upon the parties hereto and their respective successors and permitted assigns; provided, however, that, notwithstanding any other provision herein, the parties understand that LBFP is seeking the approval of Moody's and S&P with respect to this Agreement and this Agreement will become effective only upon LBFP obtaining the approval of Moody's and S&P.

19.    Headings.  Headings used herein are for convenience of reference only and are not to be taken into consideration in interpreting this Agreement.

20.    No Waiver, Cumulative Remedies.  No failure to exercise and no delay in exercising, any right, remedy, interest, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, interest, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, interest, power or privilege.  Except as expressly otherwise provided herein, the rights, remedies, interests, powers and privileges herein provided are cumulative and not exhaustive of any rights, remedies, interests, powers and privileges provided by law or equity.

21.    Severability.  In case any provision of this Agreement shall be declared or held invalid, illegal or unenforceable, in whole or in part, whether generally or in any particular jurisdiction, such provision shall be deemed amended to the extent, but only to the extent, necessary to cure such invalidity, illegality or unenforceability, and the validity, legality and enforceability of the remaining provisions of this Agreement, both generally and in every other jurisdiction, shall not in any way be affected or impaired thereby.

[The balance of this page is intentionally blank.]

11

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the day and year first above written.

LEHMAN BROTHERS FINANCIAL PRODUCTS INC.

By: _____

    Name:
    Title:    Michael Gelband

              Managing Director

WESTDEUTSCHE LANDESBANK GIROZENTRALE
(NEW YORK BRANCH)

By: _____

    Name:
    Title:

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the day and year first above written.

LEHMAN BROTHERS FINANCIAL PRODUCTS INC.

By: _____

    Name:

    Title:

WESTDEUTSCHE LANDESBANK GIROZENTRALE
(NEW YORK BRANCH)

By: _____

    Name: JIRO OKOCHI

    Title: DIRECTOR

By: _____

    Name: EMMANUEL SANZ

    Title: ASSISTANT DIRECTOR

12

## APPENDIX A.  DEFINITIONS

Capitalized terms used in the Agreement and not defined below or in the Agreement, shall have the meanings assigned in the Operating Guidelines.

"Authorized Person" means any officer of LBFP holding the rank of Vice President or higher.

"Board of Directors" means the Board of Directors of LBFP.

"Business Day" means any day other than a Saturday or a Sunday on which banks in New York City are not required or authorized by law to be closed.

"Counterparty" means each counterparty to a Transaction with LBFP.

"Holdings" means Lehman Brothers Holdings Inc.

"Incentive Fee Determination Date" means the 60th Business Day after the Trigger Event Early Termination Date.

"Independent Verifier" means Ernst & Young acting pursuant to the Independent Verification Agreement, or any successor or replacement accounting firm retained by LBFP to act as Independent Verifier.

"LBFP Portfolio" means, at any time, LBFP's portfolio of Qualified Transactions, Qualified Hedges, Offsetting Transactions and Offsetting Hedges.

"LBSF" means Lehman Brothers Special Financing Inc.

"Limited Management Period" means any period during the Term of this Agreement, prior to the occurrence of a Trigger Event, during which the short-term obligations of Holdings are rated lower than P-2 by Moody's and A-2 by S&P.

"Management Period" means the period during the Term of this Agreement which begins on the occurrence of a Trigger Event and ends when the LBFP Portfolio has been liquidated.

"Market Value" means the replacement cost in U.S. dollars, as of the close of business on a day that "Market Value" is calculated, of a Transaction calculated jointly by LBFP and the Contingent Manager on the basis of methods of valuation consistent with industry practice using mid-market swap and volatility rates and foreign exchange rates and zero coupon yield curves for the purpose of discounting to present value.  In the case of Qualified Hedges related to securities positions, "Market Value" shall include the cost, if any, of converting any related financing arrangements to an overnight basis bearing the overnight repo rate flat as published by the Federal Reserve Board.  In the case of Qualified Hedges which are futures positions, "Market Value" shall include original margin and any

13

amount owed or to be received on the next day in respect of variation margin on such positions, and shall exclude any excess amounts then held for LBFP by the futures commission merchant. A positive Market Value shall mean that LBFP is exposed to the Counterparty and a negative Market Value shall mean that the Counterparty is exposed to LBFP.

"Moody's" means Moody's Investors Service, Inc.

"Net Market Value" means the sum (whether positive or negative) of the Market Values for all Transactions.

"Operating Guidelines" means, at any time, the then-current Operating Guidelines of LBFP.

"Qualified Counterparty" shall at any time have the meaning set forth in the then-current Operating Guidelines of LBFP.

"Qualified Counterparty Master Agreement" means the Qualified Counterparty Master Agreement entered into between LBFP and each Qualified Counterparty, including all schedules and confirmations thereto.

"Required Rating" means (a) a long-term senior unsecured debt of at least A3 by Moody's and (b) a long-term senior unsecured debt rating of at least A- or a short-term rating of at least A-1 by S&P.

"S&P" means Standard and Poor's Rating Group, a division of the McGraw-Hill Companies, Inc.

"Services Period" means any period during the Term which is not a Limited Management Period or a Management Period.

"Term" means the period commencing January 18, 1999 and ending on the date this Agreement is terminated.

"Transaction" means any Qualified Transaction, Qualified Hedge, Offsetting Transaction or Offsetting Hedge.

"Trigger Event" means an Event of Default as defined in either the Offsetting Transaction Master Agreement or the Offsetting Hedge Master Agreement (each the "Master Agreement").

"Trigger Event Early Termination Date" means the early termination date of either Master Agreement, which in no event shall be later than the eleventh Business Day after the occurrence of a Trigger Event, except that if a Trigger Event under either Master Agreement occurs with respect to LBFP, the Trigger Event Early Termination Date shall be deemed to be a date that will be eleven Business Days after the occurrence of such Trigger Event.

14

**APPENDIX B.**    <u>PORTFOLIO REPORT</u>

- Transaction Volume (US$ equivalent notional amount)

- Counterparty Credit Quality (% of notional)

- Product Composition (% of notional)

- Currency Composition (% of notional)

- Maturity Profile (% of notional)

- Number of Counterparties and Geographical Distribution

## APPENDIX C.    INCENTIVE FEE

The incentive fee of $2,000,000 provided for in Section 6 of the Agreement will be payable if (A) the sum of (i) the Net Market Value on the Incentive Fee Determination Date and (ii) the net amount, positive or negative, of all cash payments made or received by LBFP in respect of liquidation of Transactions during the period from the Trigger Event Early Termination Date through the Incentive Fee Determination Date, equals or exceeds (B) the Net Market Value on the Trigger Event Early Termination Date.

APPENDIX D.  <u>DOCUMENTS PROVIDED TO CONTINGENT MANAGER</u>

- Intermediation Agreement

- Form of Qualified Counterparty Schedule and Confirmation

- Independent Verifier Agreement

- Agency Agreements

- Administration Agreement

17

## EXTENSION AND AMENDMENT AGREEMENT

This Extension and Amendment Agreement, dated as of January 12, 2004 (this "Agreement"), by and between Lehman Brothers Financial Products Inc. ("LBFP") and WestLB AG (formerly Westdeutsche Landesbank Girozentrale) acting through its New York Branch) (the "Contingent Manager") relates to the Contingent Management Agreement, dated as of January 5, 1999, by and between LBFP and the Contingent Manager (the "Contingent Management Agreement"). Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Contingent Management Agreement.

## W I T N E S S E T H :

WHEREAS, LBFP and the Contingent Manager entered into the Contingent Management Agreement in which the Contingent Manager agreed to provide certain services to LBFP upon the terms and conditions specified therein; and

WHEREAS, the Contingent Management Agreement is due to expire on January 18, 2004 (the "Initial Expiration Date") and the parties hereto desire to extend the term of the Contingent Management Agreement and make such other modifications as specified herein.

NOW, THEREFORE, in consideration of the premises and the mutual covenants hereinafter set forth, the parties hereto, intending to be legally bound, hereby agree as follows:

Section 1    Extension and Amendment of the Contingent Management Agreement.

(a)    The parties hereto agree to extend the Termination Date by amending and replacing the reference to "January 18, 2004" in Section 11(a) of the Contingent Management Agreement with "January 18, 2005". The parties hereto hereby waive any and all notice requirements in connection with such extension.

(b)    Section 6 of the Contingent Management Agreement is hereby amended by replacing the phrase "LBFP will pay .... commencement of any such Services Period;" at the start of the first sentence thereof with the following:

"LBFP will pay the following fees to the Contingent Manager during the Term of this Agreement: (i) $250,000 per annum during any Services Period commenced prior to the Initial Expiration Date; and (ii) $350,000 per annum during any Services Period commencing on or after the Initial Expiration Date, payable semi-annually in advance on the first day of each such semi-annual period (or if any such day is not a Business Day, the next succeeding Business Day), with the first such payment to occur on the first day of the commencement of any such Services Period;"

(c)    Appendix A is hereby amended by adding the following definition after the definition of "Independent Verifier":

"Initial Expiration Date" means January 18, 2004.

(d)    Appendix A is hereby amended by adding the following  definition after the definition of "Counterparty":

"First Amended Expiration Date" means January 18, 2005.

(e)    Section 14(a) of the Contingent Management Agreement is hereby amended by replacing the notice details of LBFP in their entirety with the following:

Lehman Brothers Financial Products Inc.
745 Seventh Avenue, 4th Floor
New York, New York 10019
Attention:    Neville Nagarwalla
Telephone:    (212) 526-6697
Facsimile:    (646) 758-2083

Section 2    Limited Effect.  Except as expressly amended and modified by this Agreement, the Contingent Management Agreement shall continue to be, and shall remain, in full force and effect in accordance with its terms.

Section 3    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be considered an original.

**SECTION 4 <u>GOVERNING LAW</u>.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED IN SUCH STATE.**

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the day and year first above written.

LEHMAN BROTHERS FINANCIAL PRODUCTS INC.

By:_____
    Name:
    Title:

WESTLB AG acting through its NEW YORK BRANCH

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:

### SECOND EXTENSION AND AMENDMENT AGREEMENT

This Second Extension and Amendment Agreement, dated as of November 18, 2004 (this "Agreement"), by and between Lehman Brothers Financial Products Inc. ("LBFP") and WestLB AG (formerly Westdeutsche Landesbank Girozentrale) acting through its New York Branch) (the "Contingent Manager") relates to the Contingent Management Agreement, dated as of January 5, 1999, by and between LBFP and the Contingent Manager (the "Contingent Management Agreement"). Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Contingent Management Agreement.

### W I T N E S S E T H:

WHEREAS, LBFP and the Contingent Manager entered into the Contingent Management Agreement in which the Contingent Manager agreed to provide certain services to LBFP upon the terms and conditions specified therein; and

WHEREAS, the Contingent Management Agreement is due to expire on January18, 2005 (the "Initial Expiration Date") and the parties hereto desire to extend the term of the Contingent Management Agreement and make such other modifications as specified herein.

NOW, THEREFORE, in consideration of the premises and the mutual covenants hereinafter set forth, the parties hereto, intending to be legally bound, hereby agree as follows:

Section 1    Extension and Amendment of the Contingent Management Agreement.

(a)    The parties hereto agree to extend the Termination Date by amending and replacing the reference to "January 18, 2005" in Section 11(a) of the Contingent Management Agreement with "January 18, 2006". The parties hereto hereby waive any and all notice requirements in connection with such extension.

(b)    Section 6 of the Contingent Management Agreement is hereby amended by replacing the phrase "LBFP will pay … commencement of any such Services Period;" at the start of the first sentence thereof with the following:

> "LBFP will pay the following fees to the Contingent Manager during the Term of this Agreement: $200,000 per annum during any Services Period commencing on or after the Initial Expiration Date, payable semi-annually in advance on the first day of each such semi-annual period (or if any such day is not a Business Day, the next succeeding Business Day), with the first such payment to occur on the first day of the commencement of any such Services Period;"

(c)    Section 6 of the Contingent Management Agreement is hereby amended by replacing the phrase "$900,000 per annum during a Limited Management Period," in the first sentence thereof with the following:

"$1,800,000 per annum during a Limited Management Period,"

(d)      Section 6 of the Contingent Management Agreement is hereby amended by replacing the phrase "; and a fee per annum equal to the product of $1,250,000 and the Notional Factor during the Management Period," in the first sentence thereof with the following:

"; and a fee per annum equal to the product of $2,500,000 and the Notional Factor during the Management Period,"

(e)      Appendix A is hereby amended by amending and restating the definition of "Initial Expiration Date" as follows:

"Initial Expiration Date" means January 18, 2005.

(f)      Appendix A is hereby amended by adding the following definition after the definition of "S&P":

"Second Amended Expiration Date" means January 18, 2006.

Section 2      Limited Effect.  Except as expressly amended and modified by this Agreement, the Contingent Management Agreement shall continue to be, and shall remain, in full force and effect in accordance with its terms.

Section 3      Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be considered an original.

SECTION 4 GOVERNING LAW.    THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED IN SUCH STATE.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the day and year first above written.

LEHMAN BROTHERS FINANCIAL PRODUCTS INC.

By: _Neville Nagarwalla_
Name: NEVILLE NAGARWALLA
Title: PRESIDENT

WESTLB AG acting through its NEW YORK BRANCH

By: _____
Name:    Terence R. Law          1/12/05
Title:    Executive Director

By: _____
Name:  Richard Taylor  1/12/05
Title:    Director

## THIRD AMENDMENT AGREEMENT

This Third Amendment Agreement, dated as of December 15, 2005 (this "Agreement"), by and between Lehman Brothers Financial Products Inc. ("LBFP") and WestLB AG acting through its New York Branch (the "Contingent Manager") relates to the Contingent Management Agreement, dated as of January 5, 1999, by and between LBFP and the Contingent Manager (as amended, the "Contingent Management Agreement"). Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Contingent Management Agreement.

## WITNESSETH:

*WHEREAS*, LBFP and the Contingent Manager entered into the Contingent Management Agreement in which the Contingent Manager agreed to provide certain services to LBFP upon the terms and conditions specified therein; and

*WHEREAS*, the Contingent Management Agreement is due to expire on January 18, 2006 and the parties hereto desire to extend the term of the Contingent Management Agreement and make such other modifications as specified herein.

*NOW, THEREFORE*, in consideration of the premises and the mutual covenants contained herein, the parties hereto, intending to be legally bound agree as follows:

Section 1    Extension and Amendment of the Contingent Management Agreement.

(a)    The parties hereto agree to replace Section 11(b) of the Contingent Management Agreement with the following: "Unless either party hereto provides notice of non-extension to the other not less than 60 days prior to the expiration date set forth in Section 11(a), the Termination Date of this Agreement shall automatically be deemed to extend by one calendar year from the expiration date."

(b)    For clarification, upon execution of this Agreement the Termination Date of "January 18, 2006" shall accordingly be deemed to be replaced by "January 18, 2007".

Section 2    Limited Effect.

Except as expressly amended and modified by this Agreement, the Contingent Management Agreement shall continue to be, and shall remain, in full force and effect in accordance with its terms.

Section 3    Counterparts.

This Agreement may be executed in any number of counterparts, each of which shall be considered an original.

Section 4     Governing Law.

This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be performed in such State.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the day and year first above written.

Lehman Brothers Financial Products Inc.

By: _____
Name: Daniel J Rothman
Title: President

WestLB AG, New York Branch

By: _____
Name: GREGORY FARANELLO
Title: MANAGING DIRECTOR

By: _____
Name:
Title:     DEE DEE SKLAR
           MANAGING DIRECTOR

2