**Hearing Date: November 5, 2008, 10:00 a.m., prevailing Eastern Time**
**Objection Deadline: October 31, 2008, 4:00 p.m., prevailing Eastern Time**

DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone:  212.259.8000
Facsimile:  212.259.6333
Martin J. Bienenstock, Esq.
Irena Goldstein, Esq.

Attorneys for The Walt Disney Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ x
                                                          :
**In re**                                                 :    **Chapter 11 Case No.**
                                                          :
**LEHMAN BROTHERS HOLDINGS INC.,**    :    **08-13555 (JMP)**
*et al.*                                                  :
          **Debtors.**                            :    **(Jointly Administered)**
                                                          :
------------------------------------------------------------ x

### NOTICE OF HEARING ON MOTION OF THE WALT DISNEY COMPANY FOR THE APPOINTMENT OF AN EXAMINER PURSUANT TO SECTION 1104(c)(2) OF THE BANKRUPTCY CODE

**Please take notice** that a hearing is scheduled for November 5, 2008, at 10:00 a.m. (prevailing Eastern Time) before the Honorable James M. Peck, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 601 (or such other Courtroom as the Court may designate), 6th Floor, New York, New York, to consider the Motion of The Walt Disney Company ("TWDC") for the Appointment of an Examiner Pursuant to Section 1104(c)(2) of the Bankruptcy Code (the "Motion").

**Please take further notice** that objections, if any, to the Motion must be (i) filed electronically with the Court on the docket of *In re Lehman brothers Holdings Inc.*, Chapter 11 Case No. 08-13555 (JMP) in accordance with General Order M-242 (available at www.nysb.uscourts.gov/orders/orders2.html) by registered users of the Court's case filing system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document

Format (PDF), Microsoft Word, or any other Windows-based word processing format, and (ii) be served upon (a) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (b) Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, New York 10019 (Attention: Martin J. Bienenstock, Esq. and Irena Goldstein, Esq.), Attorneys for TWDC; (c) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, (Attention: Harvey Miller, Esq., Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq.), attorneys for the above-captioned debtors in possession; (d) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attention: Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis); (e) Milbank, Tweed, Hadley, & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attention: Dennis F. Dunne, Esq., Luc Despins, Esq. and Dennis O'Donnell, Esq.), attorneys for the official committee of unsecured creditors appointed in these cases; (f) Cleary Gottlieb LLP, One Liberty Plaza, New York, New York 10006, (Attention: Lindsee P. Granfield, Esq. and Lisa Schweiger, Esq.) and Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004 (Attention: Robinson B. Lacy, Esq. and Hydee R. Feldstein, Esq.), attorneys for the Debtors' postpetition lenders, **so as to be received by October 31, 2008, by 4:00 p.m., prevailing Eastern Time**.

Dated: New York, NY
October 20, 2008

DEWEY & LEBOEUF LLP

/s/ Martin J. Bienenstock
Martin J. Bienenstock, Esq.
Irena Goldstein, Esq.
1301 Avenue of the Americas
New York, New York 10019
Telephone: 212.259.8000
Facsimile: 212.259.6333

Attorneys for The Walt Disney Company

2

NYC 677585.3

**Hearing Date: November 5, 2008, 10:00 a.m., prevailing Eastern Time**
**Objection Deadline: October 31, 2008, 4:00 p.m., prevailing Eastern Time**

DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: 212.259.8000
Facsimile: 212.259.6333
Martin J. Bienenstock, Esq.
Irena Goldstein, Esq.

Attorneys for The Walt Disney Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                                        :
**In re**                                               :    **Chapter 11 Case No.**
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.,**                      :    **08-13555 (JMP)**
*et al.*                                                :
             **Debtors.**                               :    **(Jointly Administered)**
                                                        :
------------------------------------------------------- x

**THE WALT DISNEY COMPANY,**                            :
                                                        :
                    **Movant,**                         :
                                                        :
             against                                    :
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.**                       :
**and LEHMAN BROTHERS COMMERCIAL**
**CORP.,**                                              :
                                                        :
                    **Respondents.**                    :
:
------------------------------------------------------ x

**MOTION OF THE WALT DISNEY COMPANY FOR**
**APPOINTMENT OF EXAMINER PURSUANT**
**TO SECTION 1104(c)(2) OF THE BANKRUPTCY CODE**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

The Walt Disney Company ("TWDC") hereby moves for entry of an order in

respondents' chapter 11 cases directing the appointment of an examiner pursuant to section

1104(c)(2) of title 11 of the United States Code (the "Bankruptcy Code"), and respectfully represents as follows:

**BACKGROUND**

1. Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Commercial Corp. ("LBCC") (collectively, the "Debtors") filed for relief under Chapter 11 of the Bankruptcy Code on or about September 15 and October 5, 2008, respectively. Certain other direct or indirect subsidiaries of LBHI also commenced chapter 11 cases in that interval. Their cases are jointly administered under the above-captioned number, but not substantively consolidated.

2. On September 19, 2008, the United States District Court for the Southern District of New York entered an order, at the request of the Securities Investor Protection Corporation ("SIPC"), placing Lehman Brothers Inc. ("LBI"), a subsidiary of LBHI, in liquidation under the Securities Investor Protection Act ("SIPA") and appointed James W. Giddens, Esq. as SIPA trustee (the "SIPA Proceeding"). Thereafter, the district court transferred the SIPA Proceeding to this Court.

3. On September 18, 2008, the United States Trustee appointed a statutory creditors' committee for the LBHI and LB745 cases. No trustee or examiner exists in either of those cases.

**TWDC IS A PARTY IN INTEREST**

4. On Monday, September 15, 2008, after LBHI commenced its chapter 11 case, TWDC settled its payment obligations to LBCC by delivering to LBCC the amount of approximately $107 million worth of foreign currencies, and on the same date, LBCC was required to pay TWDC approximately $107 million in US currency (after various adjustments).

2

Payment obligations of LBCC owed to TWDC are guaranteed by LBHI. As of LBHI's petition date, LBHI owed TWDC approximately $107 million. As of LBCC's petition date, LBCC owed TWDC approximately $92 million.

5. LBCC has fixed, liquidated, unsecured debts, other than for goods, services, taxes, and debt owing to insiders, in excess of $5 million. Although LBCC's chapter 11 petition discloses LBCC has over 100,000 creditors, over $1 billion of assets, and over $1 billion of liabilities, LBCC did not file a list of its 30 largest unsecured claims or a list of all creditors. Rather, LBCC requested a delay to file the list of all creditors and declared that it would file a list of the entities holding the 30 largest unsecured claims after the Court makes certain first day orders entered in LBHI's case applicable to LBCC.

6. There is currently no statutory committee of creditors appointed in the LBCC chapter 11 case to represent creditors of LBCC.

### ISSUES RAISED BY PREPETITION AND POSTPETITION CONDUCT OF LBHI AND LBCC AND THEIR OFFICERS AND DIRECTORS

7. As shown below, the conduct of the businesses of LBHI's direct and indirect subsidiaries, before and after LBHI became a title 11 debtor, gives rise to numerous important issues impacting TWDC as well as other creditors holding unsecured claims against the subsidiaries.

8. In connection with LBHI's motion dated September 17, 2008 for an order approving the sale of its investment banking business and the real estate of one of its subsidiary debtors to Barclays Capital, LBHI advised creditors at an information session that LBHI and its subsidiaries have a centralized cash management system. When asked to explain the system, LBHI's answer, given through one of its attorneys, was that "cash moves around with great velocity."

3

9. The conduct of business by LBCC and LBHI after LBHI commenced its chapter 11 case at approximately 3 a.m. (prevailing Eastern Time) on September 15, 2008 gives rise to many important questions. For instance, was LBCC's money swept up to a master account owned by LBHI? If so, what is the amount of LBCC's claim against LBHI? Pursuant to Bankruptcy Code section 364(a), LBCC's claim would be an administrative claim payable in full in cash. If LBCC's money was instead loaned to other entities, will the other entities repay LBCC in full? Were there officers and directors of LBCC who were also officers and directors of LBHI and/or other Lehman entities? Did they breach their duty of loyalty to LBCC by depriving LBCC of money it needed for its creditors while favoring other Lehman Brothers entities? If there were independent officers and directors of LBCC, did they breach their duty of care to LBCC by engaging in gross negligence or willful misconduct by sacrificing LBCC's cash for the benefit of other entities without receiving reasonably equivalent value in exchange?

10. Additionally, LBHI's asset purchase agreement with Barclays Capital provided for Barclays Capital to purchase assets from LBHI and the then other title 11 debtors. But, the testimony at the sale hearing on September 19-20, 2008 showed the employees of LBHI and LBI were the same people who carried on the businesses of the then nondebtor subsidiaries (such as LBCC) and the employees were moving to Barclays Capital. Indeed, LBHI's president, Mr. McDade, testified that the businesses of the subsidiaries were moving to Barclays Capital and the employees were critical. Nevertheless, it appears not a single LBCC officer or director took steps to protect the interests of LBCC at the sale.

11. Prior to the commencement of LBHI's chapter 11 case on September 15, 2008, what steps did LBCC's officers and directors take to protect its assets and business? Since the takeover of Bear Stearns on or about March 16, 2008, Lehman Brothers was publically

4

identified as the next potential casualty in the financial business. What steps did LBCC's officers and directors take to protect LBCC and its constituencies?

12. LBHI's conduct of its direct and indirect subsidiaries' businesses is of paramount concern, to not only TWDC, but other creditors. For example, Harbinger Capital Partners Special Situations Fund, L.P. and Harbinger Capital Partners Master Fund I, Ltd., have requested the Court to authorize their Rule 2004 examinations concerning, among other things, "the movement of property between LBHI and its affiliates" [DK No. 373].

13. Significantly, while the Committee is empowered to investigate all matters within Bankruptcy Rule 2004, there is no requirement that the Committee make its findings public. Similarly, the Harbinger entities, like all creditors, have no duty to disclose the information they receive from the Debtors and other entities. Moreover, the Committee is not a statutory committee appointed to protect LBCC creditors. If it were, it would be unable to carry out that mission because its members have claims against LBHI and perhaps other subsidiaries. This district has always adhered to the belief that bankruptcy must not only be fair, but must appear fair. *In re Bidermann Industries U.S.A., Inc.*, 203 B.R. 547 (Bankr. S.D.N.Y. 1997). When creditors lose money, they deserve to know why and how. Therefore, it is particularly appropriate for an examiner in the LBCC chapter 11 case to file a public report providing sunshine and transparency to creditors in that case. Likewise, creditors of LBHI deserve an examiner's public report of an investigation into how and why LBHI's guaranties of its subsidiaries' debts lost value, which report should identify the responsible persons and/or entities.

## RELIEF REQUESTED

14. TWDC requests the appointment of an examiner(s) to conduct an investigation of LBHI and LBCC and their direct and indirect subsidiaries, and their respective directors and senior officers, in respect of the following issues:

- Intercompany accounts among LBHI and its direct and indirect subsidiaries including LBCC as of LBHI's petition date;

- Administrative claims LBHI incurred to LBCC and its other direct and indirect subsidiaries since it commenced its chapter 11 case;

- Prepetition acts and omissions from and after March 16, 2008 in respect of LBCC's officers and directors, and LBHI's officers and directors and the officers and directors of LBHI's other direct and indirect subsidiaries impacting their respective fiduciary duties of care, loyalty, and good faith;

- Postpetition acts and omissions in respect of LBHI's officers and directors, LBCC's officers and directors, and the officers and directors of LBHI's direct and indirect subsidiaries impacting their respective fiduciary duties of care, loyalty, and good faith;

- Whether LBCC and LBHI's other direct and indirect subsidiaries took any steps to protect their respective enterprises and constituencies in connection with the sale to Barclays Capital.

- What LBCC and other nondebtor subsidiaries of LBHI did with their cash after LBHI commenced its chapter 11 case.

- What became of LBCC's business, including without limitation, its personnel, client lists, trade secrets, telephone numbers, after September 20, 2008.

- Is Barclays Capital Inc. operating and/or benefiting from LBCC's business?

## GROUNDS FOR RELIEF REQUESTED

15. Appointment of an examiner is mandatory in this case pursuant to section 1104(c)(2) of the Bankruptcy Code. Section 1104(c) of the Bankruptcy Code provides:

> If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is

6

>
> appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if –
>
> (1)  such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>
> (2)  the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c).

16. Where the circumstances set forth in section 1104(c)(2) are present, the plain language of the statute requires the appointment of an examiner. *See In re Revco D.S., Inc.*, 898 F.2d 498, 500-01 (6th Cir. 1990); *In re Loral Space & Comm., Ltd.*, No. 04 Civ. 8645RPP, 2004 WL 2979785, at *5 (S.D.N.Y. Dec. 23, 2004); *In re UAL Corp.*, 307 B.R. 80, 86 (Bankr. N.D. Ill. 2004); *In re The Bible Speaks*, 74 B.R. 511, 514 (Bankr. D. Mass. 1987).

17. In addition, the legislative history of section 1104(c)(2) of the Bankruptcy Code indicates that Congress intended third party intervention to be provided upon request in large cases involving public companies. Congress intended that in larger reorganization cases, third party intervention should be provided upon request where a party is uncomfortable with the representation provided by the debtor and the committees, as part of the congressional goal to validate the reorganization process. *See* Barry L. Zaretsky, "Chapter 11 Issues: Trustees and Examiners in Chapter 11," 44 S.C. L. Rev. 907, 940 (Summer 1993). Mandatory appointment of an examiner is thus wholly consistent with Congress's intent in drafting section 1104(c)(2) of the Bankruptcy Code.

18. While a few courts have declined to appoint an examiner under section 1104(c)(2) of the Bankruptcy Code in extraordinary situations which are not present in this case,

notably where the appointment is sought late in the case (*see*, *e.g.*, *In re Bradlees Stores, Inc.*, 209 B.R. 36, 38 (Bankr. S.D.N.Y. 1997), the United States District Court here in an unpublished decision in *In re Loral Space & Communications, Ltd.*, 2004 WL 2979785 (S.D.N.Y., December 23, 2004), held that the appointment of an examiner is mandatory if the requirements of Bankruptcy Code section 1104(c)(2) are satisfied.

19. In addition, the proposed order attached hereto directs the examiner to cooperate with other entities investigating the conduct of the Debtors, including government agencies and the Official Committee of Unsecured Creditors, to avoid interference and duplication.

WHEREFORE TWDC requests the Court to issue the order attached hereto appointing an examiner(s) pursuant to section 1104(c)(2) of the Bankruptcy Code and to grant TWDC such other and further relief as is just.

Dated: New York, NY  
October 20, 2008

DEWEY & LEBOEUF LLP

/s/ Martin J. Bienenstock  
Martin J. Bienenstock, Esq.  
Irena Goldstein, Esq.  
1301 Avenue of the Americas  
New York, New York 10019  
Telephone: 212.259.8000  
Facsimile: 212.259.6333

Attorneys for The Walt Disney Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                                            :
**In re**                                                   :   **Chapter 11 Case No.**
                                                            :
**LEHMAN BROTHERS HOLDINGS INC.,**                          :   **08-13555 (JMP)**
*et al.*                                                    :
         **Debtors.**                                       :   **(Jointly Administered)**
                                                            :
------------------------------------------------------------ x

| | |
|---|---|
| **THE WALT DISNEY COMPANY,** :  <br><br> **Movant,** :  <br><br> **Against** :  <br><br> **LEHMAN BROTHERS HOLDINGS INC. and LEHMAN BROTHERS COMMERCIAL CORP.,** :  <br><br> **Respondents.** x | |

**ORDER GRANTING MOTION OF THE WALT**
**DISNEY COMPANY FOR APPOINTMENT OF EXAMINER**
**PURSUANT TO SECTION 1104(c)(2) OF THE BANKRUPTCY CODE**

Upon consideration of the motion dated October 20, 2008 (the "Motion") of The Walt Disney Company ("TWDC") for the appointment of an examiner, pursuant to section 1104(c)(2) of title 11 of the United States Code (the "Bankruptcy Code"); and this Court having jurisdiction to consider and determine the Motion and all relief requested therein; and due and sufficient notice of the Motion having been given under the circumstances; and this Court having convened a hearing at which all interested parties had an opportunity to appear and be heard; and after considering all responses to the Motion, and after due deliberation and sufficient cause appearing therefor, it is:

    1.    Ordered that the Motion is granted, and the United States Trustee is directed to appoint an examiner on or before _____, 2008.  It is further

      2.      Ordered that the examiner shall investigate:

- Intercompany accounts among LBHI and its direct and indirect subsidiaries including LBCC as of LBHI's petition date;

- Administrative claims LBHI incurred to LBCC and its other direct and indirect subsidiaries since it commenced its chapter 11 case;

- Prepetition acts and omissions from and after March 16, 2008 in respect of LBCC's officers and directors, and LBHI's officers and directors and the officers and directors of LBHI's other direct and indirect subsidiaries impacting their respective fiduciary duties of care, loyalty, and good faith;

- Postpetition acts and omissions in respect of LBHI's officers and directors, LBCC's officers and directors, and the officers and directors of LBHI's direct and indirect subsidiaries impacting their respective fiduciary duties of care, loyalty, and good faith;

- Whether LBCC and LBHI's other direct and indirect subsidiaries took any steps to protect their respective enterprises and constituencies in connection with the sale to Barclays Capital.

- What LBCC and other nondebtor subsidiaries of LBHI did with their cash after LBHI commenced its chapter 11 case.

- What became of LBCC's business, including without limitation, its personnel, client lists, trade secrets, telephone numbers, after September 20, 2008.

- Is Barclays Capital Inc. operating and/or benefiting from LBCC's business?

and it is further

      3.      Ordered that any and all statutory committees appointed shall provide the examiner with access to all materials they receive in response to discovery in these cases, and the committee(s) and the examiner(s) shall use best efforts to cooperate without slowing down each other's investigations and the carrying out of their respective duties; and it is further

      4.      Ordered that if the Debtors assert the attorney-client privilege or work product doctrine to block any discovery by the examiner, after notice and hearing this Court may direct the Debtors to waive the privilege or the work product doctrine if it appears a chapter 11

trustee would be entitled to the same discovery or would have no compelling reason to assert the attorney-client privilege or work product doctrine; and it is further

5. Ordered that the Debtors and all of the Debtors' affiliates, subsidiaries, and other companies under their control are directed to fully cooperate with the examiner in connection with the performance of any examiner's duties. The Debtors shall provide to the examiner(s) all documents and information that the examiner(s) deems relevant to discharge the examiner's duties under this Order, and it is further

6. Ordered that, until the examiner(s) has filed the reports required by this Order and section 1106(b) of the Bankruptcy Code, neither the examiner nor the examiner's representatives or agents shall make any public disclosures concerning the performance of the examiner's duties, except in hearings before the Court; provided, however, that (a) the examiner may provide to the Securities and Exchange Commission, the United States Department of Justice, the Internal Revenue Service, the United States Attorney for the Southern District of New York, and other governmental agencies any information requested by them; and (b) this paragraph shall not prevent the examiner(s) from communicating with the Debtors and any committee to further the cooperation provided for herein; and it is further

7. Ordered that, with respect to issues identified in paragraph 2 above, the examiner shall prepare and file an interim or final report within sixty (60) days after the date of the examiner's appointment unless this time is extended for good cause shown, by order of this Court; and it is further

8. Ordered that any examiner may retain counsel and other professionals if he or she determines that such retention is necessary to discharge his or her duties, with such

retention being subject to the approval of this Court under standards equivalent to those set forth in section 327(e) of the Bankruptcy Code; and it is further

9. Ordered that the examiner(s) and any professionals retained by the examiner pursuant to any order of this Court shall be compensated from the Debtors' estates pursuant to further orders of this Court; and it is further

10. Ordered that the examiner(s) shall be a "party in interest" under section 1109(b) of the Bankruptcy Code with respect to matters that are within the scope of the duties delineated in this Order or as such duties may hereafter be modified by this Court, and shall be entitled to appear at hearings and be heard with respect to matters that are within the examiner's duties; and it is further

11. Ordered that nothing in this Order shall impede the right of the United States Trustee or of any other party in interest to request any other lawful relief, including but not limited to the expansion of the scope of the examiner's investigation.

Dated: New York, NY
  _____, 2008

_____
UNITED STATES BANKRUPTCY JUDGE