UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                                             :
In re:                                                       :
                                                             :
LEHMAN BROTHERS HOLDINGS, INC.,                              : Chapter 11 Case No. 08-13555 (JMP)
                                                             :
         Debtor.                                             :
                                                             :
------------------------------------------------------------ x
                                                             :
EVERGREEN SOLAR, INC.                                        :
                                                             :
         Plaintiff,                                          :
                                                             :
         -v-                                                 : Adv. Proc. No. 08-_____
                                                             :
BARCLAYS PLC, BARCLAYS CAPITAL, INC.,                        :
LEHMAN BROTHERS HOLDING, INC., and                           :
LEHMAN BROTHERS, INC.                                        :
                                                             :
         Defendants.                                         :
------------------------------------------------------------ x

## VERIFIED COMPLAINT

Plaintiff, Evergreen Solar, Inc. ("Evergreen"), by its undersigned attorneys Goodwin Procter LLP, for its verified complaint against Barclays PLC ("BPLC"), Barclays Capital Inc. ("BC INC" and when taken together with BPLC, the "Barclays Defendants"), Lehman Brothers Holding, Inc. ("LBHI"), and Lehman Brothers, Inc. ("LBI" and when taken together with LBHI, the "Lehman Defendants"; and when taken together with the Barclays Defendants, the "Defendants") alleges as follows:

## INTRODUCTION

This is an action to recover or place a constructive trust on plaintiff Evergreen's shares that were loaned to Lehman Brothers International (Europe) ("LBIE"), a subsidiary of

LBHI, as part of a complex financing transaction in June 2008. Upon the defaults that occurred in connection with the LBHI and LBIE insolvencies, title to the shares reverted to Evergreen and the terms of the transaction explicitly required return of the shares to Evergreen. Instead of returning the shares to Evergreen, the Lehman Defendants purportedly transferred more than 12,000,000 of these shares that it did not own (the "Evergreen Shares") to the Barclays Defendants, presumably in connection with the asset sale before this Court. Now, the Barclays Defendants claim, pursuant to public securities filings they have made, to own these shares – the same shares that the Lehman Defendants and LBIE never similarly owned or claimed to have owned. In refusing Evergreen's requests to return the shares, the Barclays Defendants have improperly attempted to use this Court's sale order as a sword to establish greater rights to these shares than the Lehman Defendants themselves had.

More specifically, Evergreen, LBI and LBIE (collectively, the "SLA Parties") are parties to that certain Share Lending Agreement, dated as of June 26, 2008 (the "SLA") pursuant to which LBIE, as Borrower, acting through LBI, as Borrowing Agent, borrowed 30,856,538 shares of Common Stock[1] from Evergreen, as Lender, on or about June 26, 2008. LBHI guaranteed LBIE's obligations under the SLA pursuant to that certain Guaranty dated June 26, 2008 (the "Guaranty").[2] Upon the commencement of the administration of LBIE in the United Kingdom on September 15, 2008, the SLA automatically terminated by its terms and all of the shares loaned thereunder, including the Evergreen Shares, were required to be returned to Evergreen no later than September 18, 2008.[3] Regardless of whether possession of the

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the SLA, a copy of which is attached hereto as Exhibit A.

[2] A copy of the Guaranty is annexed to the SLA as Exhibit A.

[3] As explained in greater detail herein, Evergreen views LBIE as a necessary party to this litigation and simultaneously herewith is seeking expedited leave from the High Court of Justice of the United Kingdom for permission to join LBIE as an additional Lehman Defendant.

Evergreen Shares was timely transferred to Evergreen, pursuant to the SLA, legal title to the Evergreen Shares vested in Evergreen immediately on September 15, 2008 – the date the Evergreen Shares were required to be returned to Evergreen. On September 15, 2008, the Lehman Defendants and LBIE had no further legal or beneficial interest in the shares. Furthermore, the SLA is and was stipulated by all parties to be a "Securities Contract" and a "Swap Agreement" within the meaning of sections 555 and 560 of the Bankruptcy Code and 15 U.S.C. § 78eee(b)(2)(C), and therefore as a matter of law, nothing stayed reversion of title to Evergreen.

However, on September 17, 2008, after title to the Evergreen Shares reverted to Evergreen, the Lehman Defendants, in direct breach of their obligations under the SLA and the Guaranty, apparently attempted to sell the Evergreen Shares pursuant to a motion for the sale of certain LBI assets to BC INC. While it would have been impossible for Evergreen to deduce that the Evergreen Shares were purportedly sold in light of the vague descriptions of "purchased assets" and multiple changes to such in the asset purchase agreement and having failed to receive the direct notice to which it was entitled, it now appears that the Evergreen Shares were included among the assets purportedly transferred to BC INC and sold out from under LBIE while LBIE was in administration. Indeed, the Lehman Defendants never disclosed or provided notice of the purported transfer of the shares from LBIE to LBI, which only served as agent for LBIE and not owner of the Evergreen Shares, or some other Lehman affiliate and similarly, provided no effective notice of the proposed sale to BC INC.

Evergreen only learned of the alleged transfer to the Barclays Defendants on October 8, 2008, when the Barclays Defendants filed a Schedule 13G (the "13G") with the U.S. Securities and Exchange Commission (the "SEC") indicating that the Barclays Defendants had

3

acquired beneficial ownership, sole voting power and sole dispositive power over 12,191,478 of the shares of common stock of Evergreen – something neither the Lehman Defendants nor LBIE themselves had ever done. Both before and after the sale, Evergreen has made repeated demands for the return of the Evergreen Shares – which requests have been systematically refused first by the Lehman Defendants and then after the sale, by the Barclays Defendants.

There is no legal basis under which the Barclays Defendants can assert and establish ownership of the Evergreen Shares. Legal title to the Evergreen Shares passed to Evergreen on September 15, 2008. Thus, LBI did not have valid title to pass to the Barclays Defendants. It is axiomatic that the Barclays Defendants cannot hold greater title or right to assets than the sellers from whom the assets were purchased. It would be inequitable to allow the Barclays Defendants to use the haste of the transaction and their failure to conduct adequate diligence as both a sword and a shield against Evergreen. The Barclays Defendants did not and could not have legally purchased the Evergreen Shares from LBI and their systematic refusal to return assets that do not legally or properly belong to them warrants the entry of judgment and the relief requested herein in favor of Evergreen.

Unless Evergreen is granted immediate relief, including an injunction prohibiting the transfer of the Evergreen Shares or the imposition of a constructive trust over the Evergreen Shares, Evergreen will be irreparably harmed. Absent this relief, the Barclays Defendants may attempt – despite the failure of title to the Evergreen Shares – to transfer or sell the Evergreen Shares to a third party. If the Evergreen Shares are sold or transferred, Evergreen's ability to recover possession of the Evergreen Shares will be frustrated and Evergreen will suffer irreparable harm. Among other things, Evergreen will be unable to use its most valuable currency – the Evergreen Shares – to raise additional capital at a time when the opportunities to

raise capital are limited and Evergreen's shareholders will suffer irreparable harm from immediate and inappropriate dilution caused by the Defendants' conduct.

## PARTIES

1. Plaintiff Evergreen is a corporation organized under the laws of the state of Delaware, and has its principal place of business located in Marlboro, Massachusetts.

2. Upon information and belief, Defendant BPLC is organized under the laws of the United Kingdom and transacts business globally, including in the United States.

3. Upon information and belief, Defendant BC INC is a Connecticut corporation and has its principal executive offices at 200 Park Avenue, New York, NY 10166.

4. Upon information and belief, Defendant LBHI is a corporation organized under the laws of the state of Delaware, and has its principal executive office at 745 Seventh Avenue, New York, NY 10019.

5. Upon information and belief, Defendant LBI[4] is a corporation organized under the laws of the state of Delaware, and has its principal executive office at 745 Seventh Avenue, New York, NY 10019. LBI is also the subject of a proceeding under the Securities Investor Protection Act of 1970 under the caption, Securities Investor Protection Corporation vs. Lehman Brothers Inc., Adv. No. 08-01420 (JMP).

## JURISDICTION AND VENUE

6. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 15 U.S.C. §§78eee(b)(2) and (b)(4). This Court also expressly retained jurisdiction over this matter, as it relates to the sale of assets to the Barclays Defendants,

---

[4] Evergreen has sought relief from the administration proceeding in the United Kingdom to join LBIE as a co-defendant to this action. It is understood that a hearing to consider this relief is currently scheduled for Friday, October 24, 2008.

5

pursuant to paragraph 20 of that certain Order Under 11 U.S.C. §§ 105(a), 363 and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases (the "<u>Sale Order</u>").

7.  Venue is proper before this Court pursuant to 28 U.S.C. § 1409 and 15 U.S.C. §§78eee(a)(3), (b)(2) and (b)(4).

## FACTUAL BACKGROUND

**A.  Evergreen Solar**

8.  Solar power generation has emerged as one of the most rapidly growing renewable sources of electricity. Solar power generation has several advantages over other forms of electricity generation that have driven and will continue to drive the growth of the solar power industry, including (i) reducing dependence on fossil fuels; (ii) environmental safety; and (iii) government incentives for development.

9.  Evergreen, founded in 1994, develops, manufactures and markets String Ribbon$^{TM}$ solar panels utilizing its proprietary manufacturing technology. Evergreen's technology is a cost-effective process for manufacturing strips of crystalline silicon that are then cut into wafers. These wafers are the primary components of photovoltaic cells which, in turn, are used to produce solar panels. Evergreen is the industry leader in efficient polysilicon consumption and uses approximately 50% of the polysilicon used by conventional sawing wafer production processes.

10.  For the first ten years of its operation, Evergreen focused primarily on developing its proprietary technology through intensive research and development programs, some of which were funded in part by the U.S. federal government. During this time, Evergreen

had only limited manufacturing capability. Evergreen's proprietary technology and manufacturing processes were first commercialized at substantial scale starting in 2005 through a joint venture partnership in Germany, partnering with two highly regarded solar industry players. It was through the joint venture that Evergreen's technology and manufacturing processes were proven to be scalable and commercially viable.

11.  Beginning in 2007, Evergreen commenced an aggressive effort to expand its own manufacturing capacity, beginning with the green field construction of its new 450,000 square foot factory in Devens, Massachusetts, which is currently scaling operations with the expectation that it will be operating at full capacity in mid-2009. When the Devens facility is operating at full capacity, Evergreen expects to (i) employ approximately 1,000 employees in the United States, (ii) manufacture enough solar panels to power 22,000 homes annually, and (iii) generate well in excess of $400 million in revenue annually. Evergreen has announced plans to build additional factories that will expand its manufacturing capacity five-fold by 2012.

12.  To assist Evergreen in achieving its expansion milestones, Evergreen engaged LBI to help raise capital in the public markets. On June 26, 2008, Evergreen priced an underwritten offering of convertible senior notes in an aggregate amount of $325,000,000 with an option to sell an additional $48,750,000 in convertible notes, which was exercised by LBI on July 2, 2008. LBI served as sole book-running manager on this offering and received underwriting compensation equal to 2.25% of the value of notes sold. Evergreen was relying on the Lehman Defendants, as its trusted advisors and fiduciaries to work with Evergreen to help to create a market for Evergreen's newly issued debt and for its equity. The proceeds from the sale of Evergreen's debt securities are being used, *inter alia*, to complete the construction and equipping of Evergreen's fully integrated solar panel manufacturing facility located in Devens,

Massachusetts and to begin construction of a manufacturing facility that will produce heat resistant string to be used in the manufacturing of Evergreen's wafers. Evergreen valued the association it established with the Lehman Defendants and had expected and intended to build a lasting and fruitful relationship as Evergreen continued to grow its operations and required additional sophisticated and high quality investment banking services.

**B.    The Share Lending Agreement**

13.    In connection with the convertible notes offering, LBI advised Evergreen that, whereas many convertible note investors typically take a contemporaneous short position in the equity securities underlying the convertible note to protect themselves against a declining share price, there was insufficient "public borrow" of Evergreen common stock available in the market to permit large numbers of convertible note investors to protect themselves in this way. As such, LBI induced Evergreen to enter into the SLA with the Lehman Defendants.

14.    Pursuant to the SLA, title to the Loaned Shares reverted to Evergreen and the Loaned Shares were required to be returned to Evergreen in their entirety upon the maturity date of Evergreen's debt securities or earlier if the SLA was terminated pursuant to an Event of Default. Once returned to Evergreen, the Loaned Shares would have significantly benefited both Evergreen's business and its shareholders. These shares could have been retained by Evergreen as treasury shares for future issuance, used to support future convertible debt financings, sold to raise additional capital for further expansion or used to acquire other technologies or businesses to improve and grow Evergreen business. Just as importantly, applicable accounting rules did not require Evergreen to include the Loaned Shares in the number of shares of its common stock outstanding for the purpose of calculating earnings per share, since Evergreen had the absolute right to the return of the Loaned Shares.

15. Contemporaneously with Evergreen's convertible notes offering, on June 26, 2008, the SLA Parties entered into the SLA pursuant to which LBIE, as Borrower, acting through LBI, as Borrowing Agent, borrowed 30,856,538 shares of Common Stock from Evergreen, as Lender. On the same date, LBI, acting as sole book-running manager, conducted a public offering of some but not all of the Loaned Shares, selling 18,184,511 shares to public investors. Evergreen did not receive any proceeds from the sale of these Loaned Shares. The remaining balance of 12,672,027 Loaned Shares remained in the hands of LBI, solely in its capacity as agent. While LBIE had "all of the incidents of ownership" in respect of the Loaned Shares under Section 7 of the SLA, LBIE did not have actual or beneficial ownership of the Loaned Shares for either securities laws purposes or the accounting rules applicable to Evergreen. Thus, while the holder of 5.0% of the outstanding equity securities of a public company is generally required to report its holdings under Section 13 of the Securities Exchange Act of 1934, as amended, no Lehman Defendant ever reported, or was required to report, its holdings of Evergreen Common Stock, even though the Loaned Shares constituted well over 20% of all the outstanding shares of Evergreen Common Stock. Likewise, while the Loaned Shares were considered outstanding for all corporate purposes, including the right to receive dividends, the applicable accounting rules did not require the Loaned Shares to be included in Evergreen's calculation of earnings per share, since Evergreen had the absolute right to their return upon termination of the SLA.

16. Section 10(a)(iii) of the SLA states that immediate termination – without the need by the Lender to provide notice to the Borrower – occurs upon:

> the filing by or on behalf of Borrower of a voluntary petition or an answer seeking reorganization, arrangement, readjustment of its debts or for any other relief under any bankruptcy, reorganization, receivership, compromise, arrangement, insolvency, readjustment of debt, dissolution,

>moratorium, delinquency, winding-up or liquidation or similar act or law, of any state, federal or other applicable foreign jurisdictions, now or hereafter existing ("Bankruptcy Law"), or any action by Borrower for, or consent or acquiescence to, the appointment of a receiver, trustee, custodian or similar official of Borrower, or of all or a substantial part of its property; or the making by Borrower of a general assignment for the benefit of creditors; or the admission by Borrower in writing of its inability to pay its debts as they become due…

SLA § 10(a)(iii).

17. Section 9(b) of the SLA further provides that the SLA is a "securities contract" or "swap agreement" entitled to the protections afforded such instruments under the Bankruptcy Code including the exemptions to the automatic stay:

>Each of Borrower and Lender agrees and acknowledges that Borrower has represented to Lender that it is a "financial institution," "swap participant," and/or "financial participant" within the meaning of Sections 101(22), 101(53C) and 101(22A) of the Bankruptcy Code. The parties hereto further agree and acknowledge (A) that each Loan under this Agreement is intended to be (i) a "securities contract," as such term is defined in Section 741(7) of the Bankruptcy Code, with respect to which payment and delivery hereunder is a "settlement payment" as such term is defined in Section 741(8) of the Bankruptcy Code, and (ii) a "swap agreement" as such term is defined in Section 101(53B) of the Bankruptcy Code, with respect to which each payment and delivery hereunder is a "transfer," as such term is defined [in] Section 101(54) of the Bankruptcy Code, and (B) that it is intended that the Borrower [sic] shall be entitled to the protections afforded by, among other sections, Sections 362(b)(6), 362(b)(17), 546(g), 555 and 560 of the Bankruptcy Code.

18. A copy of the SLA was filed with the SEC on August 4, 2008 at Exhibit 10.5 to the Form 10-Q filed by Evergreen. A copy of the publicly available SLA is attached hereto as Exhibit B.

### C. The Lehman Defendants Default under the SLA and Evergreen Demands Return of the Shares.

19. On or about September 15, 2008, LBHI suffered a Credit Downgrade and by letter to LBI and LBIE dated September 15, 2008, Evergreen demanded that in accordance

with Section 4 of the SLA that the Evergreen Shares (designated as the "Collateral") be transferred to Evergreen. A copy of that letter is attached hereto as Exhibit C. Also on September 15, 2008, LBIE was placed into an arrangement proceeding in the United Kingdom, thereby triggering an Event of Default under Section 10(a)(iii) of the SLA.

20. Thus, as a result of the Events of Default, title to the Evergreen Shares reverted to Evergreen on September 15, 2008, and the only open issue was the return of possession of the Evergreen Shares to Evergreen.

21. Pursuant to Section 5(c) of the SLA, "if a Loan is terminated upon the occurrence of a Default as set forth in Section 10, the Loaned Shares shall be delivered by Borrower to Lender, without any consideration being payable in respect thereof by Lender to Borrower, no later than the third Business Day following the termination date of such Loan as provided in Section 10." SLA § 5(c).

22. On September 17, 2008, notwithstanding the mandatory termination of the SLA, Evergreen sent a letter to the Lehman Defendants thereby notifying each Lehman Defendant of a default under Section 10(a)(iii) of the SLA and requiring the Lehman Defendants to return the Loaned Shares, including the Evergreen Shares, not later than September 22, 2008. A copy of this letter is attached hereto as Exhibit D.

23. On September 18, 2008, the Loaned Shares, including the Evergreen Shares, were <u>required</u> under the terms of the SLA to be returned to the possession of Evergreen. Possession of the Evergreen Shares was not and has not been returned to Evergreen.

24. On September 20, 2008, after the Lehman Defendants were required to return the shares, the United States District Court for the Southern District of New York entered that certain Order Commencing Liquidation (the "SIPA Order") directing the liquidation of LBI

11

under the Securities Investor Protection Act of 1970. This liquidation proceeding is being administered by this Court under Adversary Proceeding No. 08-01420 (JMP).

### D. The Lehman Defendants Apparently Sell the Loaned Shares in their Possession without Notice

25. Pursuant to that certain Asset Purchase Agreement, dated as of September 16, 2008, as modified on September 20, 2008 and September 20, 2008 (the "APA"), LBHI, over whom the Court had jurisdiction, conveyed the Purchased Assets (as such term is defined in the APA), including the assets of LBI to BC INC. Evergreen did not receive notice that the Lehman Defendants intended to sell the Evergreen Shares pursuant to the APA or before the proposed entry of the Sale Order.

26. The original version of the APA, as filed with the Bankruptcy Court, included numerous handwritten notes to the definitions of "Purchased Assets" and "Excluded Assets." Moreover, even in the execution version, Section 2.5 of the APA states that BC INC has the option for sixty (60) days following closing to designate a contract as purchased or rejected. It is unclear from the documents currently available to Evergreen whether or not the SLA was assumed by the Barclays Defendants. The Barclays Defendants have repeatedly denied assuming the SLA, but have also refused to return the Evergreen Shares to Evergreen.

27. On September 20, 2008, this Court entered the Sale Order.

28. On October 8, 2008, the Barclays Defendants filed the 13G with the SEC, indicating ownership by the Barclays Defendants of the Evergreen Shares. A copy of the 13G is attached hereto as Exhibit E. As explained above, at no time prior to the transfer of the Evergreen Shares did the Lehman Defendants ever file a Schedule 13G on account of the Loaned Shares in its possession.

29. Any purported transfer to the Barclays Defendants of the Evergreen Shares is *void ab initio* as the Lehman Defendants did not have title to the Evergreen Shares at the time of any such transfer.

30. Since the filing of the 13G, Evergreen has repeatedly requested that the Barclays Defendants return the Evergreen Shares to Evergreen. These requests have been refused.

31. Evergreen is entitled to a declaratory judgment that the Evergreen Shares were not the property of any of the Lehman Defendants as of September 15, 2008, and were therefore, incapable of being transferred to the Barclays Defendants under the APA.

32. The failure of the Barclays Defendants to return the Evergreen Shares to Evergreen has resulted in a conversion of Evergreen's property for the benefit of the Barclays Defendants. Evergreen is entitled to an immediate stay prohibiting the transfer of the Evergreen Shares to prevent additional and irreparable harm to Evergreen and to the imposition of a constructive trust over the Evergreen Shares to prevent their sale or transfer. The failure of the Barclays Defendants to return the Evergreen Shares to Evergreen has resulted in Evergreen being required to include the Evergreen Shares when calculating earnings per share, causing immediate and drastic dilution to existing holders of Evergreen Common Stock.

33. Paragraph VIII of the SIPA Order provides that the stays otherwise set forth in the SIPA Order do not apply to contractual rights of parties under securities contracts and swap agreements. Paragraph 32 of the Sale Order provides that, *inter alia*, the rights of parties to securities contracts and swap agreements are not altered by the Sale Order. Pursuant to Section 9 of the SLA, both LBIE and Evergreen agreed that the Loan made under the SLA are securities contracts and swap agreements (as each term is defined in the Bankruptcy Code).

Sections 555 and 560 of the Bankruptcy Code, as well as the Securities Investment Protection Act of 1970, 15 U.S.C. § 78eee(b)(2)(C), provide that the automatic stay under section 362 does not apply to the rights of parties to securities contracts or swap agreements to liquidate, terminate, or accelerate a securities contract or swap agreement.

34.  As a party to a securities contract and a swap agreement, Evergreen is not stayed by the Bankruptcy Code, the Sale Order or the SIPA Order from seeking the return of the Evergreen Shares.

35.  Absent immediate return of the Evergreen Shares to the possession of Evergreen, Evergreen will be irreparably harmed.

## COUNT I

### *(Declaratory Judgment – All Defendants)*

36.  Evergreen repeats and realleges each and every allegation set forth in the preceding paragraphs with the same force and effect as if hereinafter fully set forth at length.

37.  On September 15, 2008, title to the Evergreen Shares, reverted to Evergreen.

38.  Effective September 18, 2008, any interest of the Lehman Defendants in the Loaned Shares, including the Evergreen Shares, was terminated and, therefore, the Lehman Defendants could not convey good or marketable title to the Evergreen Shares to the Barclays Defendants.

39.  Accordingly, Evergreen is entitled to a declaratory judgment that title to the Evergreen Shares reverted to Evergreen and accordingly, any purported transfer of the title to the Evergreen Shares to the Barclays Defendants pursuant to the APA and Sale Order is null and void.

## COUNT II

*(Breach of Contract – the Lehman Defendants)*

40. Evergreen repeats and realleges each and every allegation set forth in the preceding paragraphs with the same force and effect as if hereinafter fully set forth at length.

41. The SLA and the Guaranty are valid, binding, and enforceable against the Lehman Defendants.

42. The Lehman Defendants' conduct described herein, including the failure to return the Loaned Shares, including the Evergreen Shares, and the failure to establish the Collateral Account, breached the SLA and the Guaranty.

43. The Lehman Defendants wrongfully refused and failed to perform their obligations under the SLA and the Guaranty.

44. As a direct and proximate result of the breaches by the Lehman Defendants, Evergreen has suffered and will suffer damages.

45. Evergreen is entitled to a judgment against the Lehman Defendants for monetary damages in an amount to be determined for the damages caused by such breach.

## COUNT III

*(Conversion – All Defendants)*

46. Evergreen repeats and realleges each and every allegation set forth in the preceding paragraphs with the same force and effect as if hereinafter fully set forth at length.

47. The Lehman Defendants were required to return possession of the Loaned Shares, including the Evergreen Shares, to Evergreen no later than September 22, 2008.

48. The conduct of the Lehman Defendants described herein, including the failure to return the Evergreen Shares on September 22, 2008 and any purported transfer of the

Evergreen Shares to the Barclays Defendants was an intentional conversion of the Evergreen Shares by the Lehman Defendants.

49. The Barclays Defendants knew or should have known through the exercise of reasonable due diligence that the Evergreen Shares were not the property of the Lehman Defendants.

50. The conduct of the Barclays Defendants described herein, including the acceptance of the Evergreen Shares from the Lehman Defendants and their repeated refusal since the filing of the 13G with the SEC to return the Evergreen Shares to Evergreen was an intentional conversion of the Evergreen Shares by the Barclays Defendants.

51. As a direct and proximate result of the failure of the Defendants to return possession of the Evergreen Shares to Evergreen, Evergreen has suffered and will suffer damages.

52. Evergreen is entitled to the return of the Evergreen Shares and the imposition of a constructive trust over the Evergreen Shares until the Loaned Shared are returned to Evergreen.

## COUNT IV

*(Request for Immediate Injunctive Relief – the Barclays Defendants)*

53. Evergreen repeats and realleges the allegations set forth in the preceding paragraphs.

54. For the reasons set forth herein, Evergreen seeks immediate injunctive relief (i) directing the Defendants to deliver any Evergreen Shares, and any related proceeds thereof, currently in their possession, or at any time in the future in their possession, to

Evergreen immediately and (ii) enjoining the Defendants from transferring any Evergreen Shares to any third party other than Evergreen.

55.   The Evergreen Shares are not the property of any of the Defendants and therefore, may not be used by any such Defendant.

56.   The failure and refusal of first the Lehman Defendants and then the Barclays Defendants to deliver the Evergreen Shares in their possession to Evergreen is causing immediate irreparable damage to Evergreen.

## COUNT V

### *(Relief from Stay)*

57.   Evergreen repeats and realleges the allegations set forth in the preceding paragraphs.

58.   Pursuant to, among other things, 11 U.S.C. §§ 555 and 560 and 15 U.S.C. § 78eee(b)(2)(C), the relief sought herein is not subject to the automatic stay as provided in 11 U.S.C. § 362(a).

59.   Nonetheless in an abundance of caution, Evergreen seeks relief from the automatic stay as the Defendants have refused to deliver any Evergreen Shares in their possession to Evergreen.

60.   Therefore, Evergreen seeks relief from any applicable stay to the extent necessary to pursue the relief requested in this Complaint and to obtain possession of the Evergreen Shares in the possession of any Defendant.

## COUNT VI

### *(Constructive Trust – the Barclays Defendants)*

61.     Evergreen repeats and realleges the allegations set forth in the preceding paragraphs.

62.     None of the Defendants owns the Evergreen Shares or any related proceeds currently in the possession of the Barclays Defendants and instead hold such Evergreen Shares in trust for Evergreen.

63.     The Lehman Defendants have violated their fiduciary duties to Evergreen by refusing to comply with Evergreen's repeated demands to deliver the Evergreen Shares, and any related proceeds currently in the possession of any of the Defendants, to Evergreen, and by improperly retaining the Evergreen Shares in their possession and then by transferring the Evergreen Shares to the Barclays Defendants.

64.     As a consequence of Defendants' actions, this Court should impose a constructive trust in favor of Evergreen on the Evergreen Shares, and any related proceeds currently in the possession of, or at any time in the future, in the possession of any of the Defendants.

WHEREFORE, Evergreen respectfully requests that the Court grant the following relief:

(a)     Enter judgment for Evergreen on all counts of this Complaint;

(b)     Enter a declaratory judgment finding that the Evergreen Shares were not the property of the Lehman Defendants and that title to the Evergreen Shares reverted to Evergreen under the operation of the SLA on September 15, 2008 and accordingly that title to any of the Evergreen Shares did not pass to the Barclays Defendants pursuant to the APA or the Sale Order;

(c) Order that the Barclays Defendants return the Evergreen Shares to Evergreen;

(d) Order the Lehman Defendants and the Barclays Defendants to pay monetary damages to Evergreen in an amount sufficient to compensate Evergreen for the conversion of the Evergreen Shares after September 18, 2008;

(e) Order the Lehman Defendants to pay monetary damages to Evergreen in an amount sufficient to compensate Evergreen for the breach of the SLA and the Guaranty;

(f) Award Evergreen its costs, expenses and attorneys fees; and

(g) Enter such further and additional relief as the Court deems to be appropriate.

Respectfully Submitted,

EVERGREEN SOLAR, INC.

By Its Attorneys,

/s/ Emanuel C. Grillo
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 813-8800
Fax: (212) 355-3333
Emanuel C. Grillo (EG 1538)
egrillo@goodwinprocter.com
Meagan E. Costello (MC 0962)
mcostello@goodwinprocter.com
K. Brent Tomer (KT 2438)
ktomer@goodwinprocter.com

Dated: New York, New York
October 20, 2008

## VERIFICATION

I, Michael El-Hillow, hereby certify and verify under penalty of perjury that (i) I am Chief Financial Officer of Evergreen Solar, Inc. and am fully familiar with the matters set forth in the attached complaint; and (ii) the statements set forth therein are true and correct to the best of my knowledge.

Dated: October 20, 2008

*[signature]*
Michael El-Hillow
Chief Financial Officer

Sworn to before me this 20th day of October, 2008

*[signature]*

CHRISTIAN M. EHRBAR
Notary Public, Commonwealth of Massachusetts

CHRISTIAN M. EHRBAR
Notary Public
Commonwealth of Massachusetts
My Commission Expires
July 2, 2010