MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Lorenzo Marinuzzi
David Capucilli

*Attorneys for ING Real Estate Finance (USA) LLC*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| **In re** | ) | **Chapter 11 Case No.** |
| | ) | |
| **LEHMAN BROTHERS HOLDINGS INC, et al.,** | ) | **08-13555 (JMP)** |
| | ) | |
| | ) | **Jointly Administered** |
| | ) | |
| **Debtors.** | ) | |
| | ) | |

**NOTICE OF MOTION OF ING REAL ESTATE FINANCE**
**(USA) LLC FOR RELIEF FROM THE AUTOMATIC STAY**

**PLEASE TAKE NOTICE**, that ING Real Estate Finance (USA) LLC ("ING") has filed a Motion pursuant to Section 362(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for Relief from the Automatic Stay (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held in connection with the Motion (the "Hearing") on **November 18, 2008 at 10:00 a.m. (prevailing Eastern time)** before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, Room 601.

**PLEASE TAKE FURTHER NOTICE THAT** responses or objections, if any, to the Motion and the relief requested therein must be made in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Bankruptcy Court, set forth the basis for the objection and the specific grounds therefor, and be filed with the Bankruptcy Court electronically in accordance with General Order M-242, as amended by General Order M-269, by registered users of the Court's electronic case filing system (the User's manual for the Electronic case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court), with a hard copy delivered directly to Chambers and served in accordance with General Order M-242 or by first-class mail upon each of the following: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, (Attn: Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq.), attorneys for the above-captioned debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis); (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.), attorneys for the Official Committee of Unsecured Creditors appointed in these cases; (v) Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, (Attn: Robinson B. Lacy, Esq. And Hydee R. Feldstein, Esq.); (vi) the attorneys for any other official committee(s) that may be appointed in the above-captioned cases; and (vii) counsel to ING, Morrison & Foerster LLP, Attention: Lorenzo Marinuzzi, Esq., 1290 Avenue of the Americas, New York, New York 10104, so as to be received on or before **4:00 p.m. (prevailing Eastern time) on November 13,**

**2008**, or such shorter time as the Bankruptcy Court may hereafter order and of which you may receive subsequent notice.  Only those objections which have been timely filed and served by the Objection Deadline in accordance with the procedures herein may be considered by the Court at the Hearing

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written objection to the relief requested in the Motion in accordance with this Notice and the Court's Order Implementing Certain Notice and Case Management Procedures (D.I. 285), dated September 22, 2008, the Bankruptcy Court may deem any opposition waived, treat the Motion as conceded, and enter an order granting the relief requested in the Motion without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE THAT** a copy of the Motion may be obtained at no charge at http://www.lehman-docket.com_ or for a fee via PACER at http://www.nysb.uscourts.gov.

Dated: October 21, 2008
      New York, New York

                            MORRISON & FOERSTER LLP

                     By:    /s/ Lorenzo Marinuzzi
                               Lorenzo Marinuzzi
                               David Capucilli
                               MORRISON & FOERSTER LLP
                               1290 Avenue of the Americas
                               New York, New York 10104
                               Telephone: (212) 468-8000
                               Facsimile: (212) 468-7900

                               *Attorneys for ING Real Estate*
                               *Finance (USA) LLC*

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Lorenzo Marinuzzi
David Capucilli

*Attorneys for ING Real Estate Finance (USA) LLC*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | )   **Chapter 11 Case No.** |
| | ) |
| **LEHMAN BROTHERS HOLDINGS INC, et al.,** | )   **08-13555 (JMP)** |
| | ) |
| | )   **Jointly Administered** |
| | ) |
| **Debtors.** | ) |
| | ) |

**MOTION OF ING REAL ESTATE FINANCE (USA) LLC
FOR RELIEF FROM THE AUTOMATIC STAY**

ING Real Estate Finance (USA) LLC ("ING"), by and through its undersigned counsel,

hereby files this motion (the "Motion") pursuant to Section 362(d) of title 11 of the United States

Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") requesting entry of an order substantially in the form attached hereto as

Exhibit A.  In support of the Motion, ING respectfully represents as follows:

**PRELIMINARY STATEMENT**

Lehman Brothers Holdings Inc. ("LBHI" or the "Debtor") is in breach of its obligations

as agent and Lender under its agreements with ING.  With each passing day that LBHI fails to

take actions required of it as agent under these agreements, or does so only after repeated

requests by ING, both ING and the borrower remain trapped in an untenable position of operating at their peril, or doing nothing as collateral diminishes in value.

LBHI's subsidiary, Lehman Commercial Paper, Inc., has already sought and received authority from this Court to resign as agent under its loan transactions, recognizing the state of its affairs and its inability to perform the required duties. Rather than wait for LBHI to also recognize its own inabilities, ING must seek relief from this Court to accomplish that same result.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28. U.S.C. § 157(b)(2).

## FACTUAL BACKGROUND

2.      On September 15, 2008 (the "Petition Date"), LBHI commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court. LBHI is authorized to continue to operate its businesses and manage its properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

**The Loan Documents**

3.      Prior to the Petition Date, on April 17, 2007, LBHI entered into a Master Credit Agreement (the "Credit Agreement") with Park Avenue Hotel Acquisition LLC (the "Borrower"). A true and correct copy of the Credit Agreement is attached hereto as <u>Exhibit B</u>.[1] The Credit Agreement provides for acquisition and pre-construction financing to the Borrower in the aggregate amount of $145 million (the "Loan").

---

[1] Contemporaneously with the filing of this Motion, ING has filed a motion to file Exhibits B – F under seal.

4.     Also on April 17, 2007, LBHI and the Borrower entered into a building loan agreement (the "Building Loan Agreement") and a project loan agreement (the "Project Loan Agreement" and, together with the Building Loan Agreement, the "Loan Agreements") relating to the Loan.  True and correct copies of the Building Loan Agreements and Project Loan Agreement are attached hereto as <u>Exhibit C</u> and <u>Exhibit D</u>, respectively.

5.     On August 1, 2007 LBHI and ING entered into an Assignment and Assumption Agreement (the "Assignment and Assumption Agreement"), by which LBHI assigned to ING certain promissory notes and other interests related to the Loan.  A true and correct copy of the Assignment and Assumption Agreement is attached hereto as <u>Exhibit E</u>.  Pursuant to the Assignment and Assumption Agreement, ING now holds 81.52% of the Loan and LBHI now holds the remaining 18.48%.

6.     Also on August 1, 2007, LBHI and ING entered into a Co-Lending Agreement (the "Co-Lending Agreement," and, together with the Credit Agreement, the Assignment and Assumption Agreement, and the Loan Agreements, the "Loan Documents"), which sets forth additional rights and duties of LBHI and ING relating to the Loan Documents.  A true and correct copy of the Co-Lending Agreement is attached hereto as <u>Exhibit F</u>.

7.     The purpose of the Loan is to provide financing for acquisition and pre-construction costs for a luxury condominium-hotel tower located at 610 Lexington Avenue in Manhattan (the "Project").  As part of the Loan, and at the closing thereof, the Borrower submitted an expected budget (the "Budget") to the Lenders[2] forecasting acquisition and pre-construction costs.  Advances under the Loan are earmarked for use for particular line items in the Budget.

---

[2] Any capitalized terms not specifically defined herein shall have the meaning set forth in the Loan Documents.

## LBHI's Duties

8.      Pursuant to Section 8.21 of the Credit Agreement, LBHI is appointed the Agent for the Loan (the "Agent").  As Agent, LBHI is charged with a variety of administrative duties, including notifying the Borrower of certain events and approving loan advances, as more particularly set forth below and in the Loan Documents.[3]

9.      LBHI, as Agent, must consult with ING prior to taking certain specified actions and must administer the Loan in a commercially reasonable manner consistent with the "Servicing Standard" set forth in the Co-Lending Agreement.

10.     The "Servicing Standard" is defined under the Co-Lending Agreement as follows:

> "Servicing Standard" shall mean the servicing and administration of the Loan . . . by the Agent for the benefit of the Split Note Holders[4] and in accordance with applicable law, the terms of the Loan Documents and this Agreement and in the same manner in which, and with the same care, skill, prudence and diligence with which it administers mortgage loans for its own account, giving due consideration to customary and usual standards of practice of prudent institutional commercial lenders servicing their own loans, and with a view towards the best interests of the Split Note Holders as a collective whole . . . .

11.     If LBHI does not conduct itself as Agent in accordance with the Servicing Standard, it is in breach of the Co-Lending Agreement.  If such breach continues for fifteen (15) days after written notification, ING has "Cause" to remove LBHI as Agent and appoint itself or a suitable third-party as successor agent.  *See* Co-Lending Agreement, P. 3; Sec. 1.08(b).

12.     Also, pursuant to Section 5.01 of the Co-Lending Agreement, if LBHI fails to abide by its obligations as a Lender under the Loan Documents and such failure continues for five (5)

---

[3] Any discussion of the terms of the Loan Documents is meant for convenience and is qualified by the terms of the Loan Documents themselves.
[4] The "Split Note Holders" are the co-Lenders of the Loan, ING and LBHI.

days after written notice from ING, LBHI is considered a "Defaulting Split Note Holder." At that point, ING similarly has an immediate right to remove and replace LBHI as Agent.

13. The Credit Agreement and Co-Lending Agreement provide that LBHI, as Agent, may select a qualified servicer (the "Servicer") to service the Loan and may delegate all or any portion of its Agent responsibilities under the Loan Documents to the Servicer.[5] Notwithstanding any such delegation, LBHI is not relieved of its responsibilities and obligations under the Loan Documents. *See* Credit Agreement, Sec. 12.23; Co-Lending Agreement, Sec. 1.06(c).

**LBHI's Breach**

14. Since the Petition Date, and despite numerous attempts by ING to contact LBHI in its capacity as Agent, LBHI has been largely unresponsive to ING's requests that it address material events arising out of the Loan Documents that affect the rights of both ING and the Borrower.

15. For example, one of LBHI's duties as Agent is to determine whether the Borrower qualifies for an extension of the Loan. Pursuant to Section 2.4 of the Credit Agreement, the Borrower attempted to exercise a six-month option to extend the Loan (the "Extension") prior to its October 8, 2008 maturity date (the "Maturity Date"). ING sought to ascertain whether LBHI or the Servicer had determined that the Borrower had met the conditions for the Extension, but LBHI has been unresponsive. The Servicer will not confirm the Extension because it is deferring to LBHI and will not make that decision on its own. Nearly two weeks after the Maturity Date, ING is unable to determine whether the Loan has been extended.

---

[5] Pursuant to the Co-Lending Agreement, LBHI entered into a Servicing Agreement with TriMont Real Estate Advisors, Inc. ("TriMont"). TriMont was appointed by LBHI as Servicer for the Loan.

16.     Also, LBHI, as Agent has failed to administer the Loan with respect to the Borrower's request for advances.  On September 24th, the Borrower requested an advance under the Loan.  Such advance was made within fifteen (15) days of the Maturity Date (at the time, October 8, 2008), which, pursuant to Section 10.2 of the Project Loan Agreement and Section 10.2 of the Building Loan Agreement, is not permitted.  Neither LBHI as Agent nor the Servicer notified the Borrower that the Lenders are not required to fund any advances (other than advances for interest) within fifteen (15) days of the Maturity Date.  LBHI as Agent (or the Servicer) is responsible for informing the Borrower of the 15-day prohibition and denying the Borrower's request for an advance on that basis.  LBHI and the Servicer were unresponsive in that regard.

17.     In addition, under the Credit Agreement, assuming the Extension is effective and the Loan's Maturity Date has been extended, there would not be sufficient unfunded amounts in the Budget to make future interest payments and complete additional work on the Project during the period of the Extension.  Under the Credit Agreement, the Loan would upon such Extension not be "In Balance."[6]  The result of the Loan not being "In Balance," is that the Borrower would have to contribute an additional cash infusion into the Project (a "Deficiency Deposit") to make up for the shortfall in the Budget.  Assuming the Extension is effective, the Agent or the Servicer should have immediately notified the Borrower that the Loan is not In Balance and should have required the Borrower to make a Deficiency Deposit.  This would mean that there would be a prohibition on further advances on the Loan until the Borrower paid the Deficiency Deposit and the Loan was again In Balance.  On this point, the Servicer previously advised ING that it

---

[6] Pursuant to the Loan Agreements, a loan is "In Balance" when, with respect to a specific line item for the Budget, the Agent determines that the amount remaining unfunded in the Budget line item is sufficient to pay for all remaining costs associated with such line item.  Unless the Borrower places the Loan "In Balance," the Lenders would be precluded from making further advances on the Loan.

believed that it could not require the Borrower to make the Deficiency Deposit without direction from LBHI as Agent. ING continued to request that LBHI give such direction. It was not until October 20, 2008 that a draft notice (notifying the Borrower that the Loan was not In Balance and that a Deficiency Deposit would be necessary) was sent to ING for review. ING believes LBHI neglected its duties to timely notify the Borrower. Also, despite the fact that the Servicer has apparently sent notice of the balancing to the Borrower, there has been no confirmation to date regarding the effectiveness of the Extension.

18. Lastly, one of LBHI's duties as Lender under the Loan Documents is to make advances under the Loan, including the advance of funds to the Borrower to pay interest.[7] On October 8, 2008, without first indicating whether the Borrower had met the conditions for the Extension, the Servicer requested that ING and LBHI as Lenders fund an advance under Section 8.3 of the Project Loan Agreement (the "Interest Advance"). ING funded its portion of the Interest Advance. LBHI did not fund its portion of the Interest Advance. As a result, LBHI is in violation of the Co-Lending Agreement and is also in violation of its obligation under the Project Loan Agreement to advance the interest. *See* Project Loan Agreement, Sec. 8.3.

19. Given the immediacy of these issues, ING reached out to LBHI on multiple occasions beginning shortly after the Petition Date and continuing through the date of this Motion in an attempt to persuade LBHI to (i) properly discharge its duties as Agent under the Loan Documents or (ii) resign as Agent (as contemplated in the Co-Lending Agreement) and transfer the related obligations to ING.

---

[7] Pursuant to Section 2.5 of the Credit Agreement, Section 8.3 of the Building Loan Agreement and Section 8.3 of the Project Loan Agreement, assuming no "Event of Default" has occurred, on each "Payment Date" the Lender is obligated to advance funds to the Borrower to pay the Lender interest that has accrued on the Loans and that is due on such Payment Date. Such interest advances are added to the principal balance of the Loan and bear interest at the applicable rates.

7

20.     As set forth in more detail in the affidavit of Yelena Kharnas (the "Kharnas Affidavit"), on September 18, 2008, ING had a discussion with a representative of LBHI. During that discussion, LBHI's representative advised ING that LBHI would resign as Agent under the Loan Documents, and would sign a resignation letter to that effect, which letter would also appoint ING as successor Agent (the "Resignation Letter").  A true and correct copy of the Kharnas Affidavit is attached hereto as <u>Exhibit G</u>.

21.     Despite the oral agreement that LBHI would resign as Agent and repeated attempts to contact LBHI's representative since the Resignation Letter was delivered, it has refused to allow itself to be replaced by ING, even as it fails to serve as Agent.  LBHI does not appear to have the ability or desire to administer the Credit Agreement as Agent any longer.

22.     ING has since been advised by a Senior Vice President at LBHI that LBHI pledged its interest in the Loan to Swedbank AB, or an affiliate thereof ("Swedbank") and that it would be working "closely" with Swedbank.  ING cannot determine whether LBHI has sought to assign its agency role to Swedbank, which would require ING's consent (*see* Co-Lender Agreement, Sec. 1.08(a) or whether LBHI has simply assigned its rights as collateral security.  As more fully detailed in the Kharnas Affidavit, ING has thus far been unsuccessful in obtaining any further clarification on the  pledge to Swedbank and what Swedbank's role is.  Any pledge would have a material impact on the administration of the Loan, but ING has no further details at the time of the filing of this Motion.

23.     While counsel to LBHI has made attempts to ascertain LBHI's intentions with respect to the Loan or its role as Agent, ING has not yet received any clarification.

## RELIEF REQUESTED

24.     By this Motion, ING seeks an order pursuant to Section 362(d) of the Bankruptcy Code and Bankruptcy Rule 4001 granting ING relief from the automatic stay to exercise its rights under the Co-Lending Agreement and remove and replace LBHI as Agent by issuing notice to LBHI that it is in material breach of the Loan Documents and must resign as Agent.

## BASIS FOR RELIEF

### Relief for Cause

25.     Section 362(d) of the Bankruptcy Code provides that the Court may grant relief from the automatic stay as follows:

> On request of a party in interests and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay – (1) for cause….

11 U.S.C. § 362(d)(2).

26.     The determination of whether cause exists to vacate the Automatic Stay is committed to the sound discretion of the bankruptcy court.  *In re Sonnax Industries, Inc.,* 907 F.2d 1280, 1286 (2d Cir. 1990) (citing *Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 507 (7th Cir. 1982)).

27.     The burden of proof is a shifting one.  The movant has the initial burden of showing cause.  *In re Sonnax Industries, Inc.,* 907 F.2d at 1286.  Once the moving party satisfies its initial burden showing that cause exists, any party opposing stay relief has the ultimate burden of disproving the existence of cause.  11 U.S.C § 362(g)(2).

28.     The Second Circuit Court of Appeals has enunciated a number of factors that should be considered in a determination to lift the automatic stay, including the impact of the stay on the parties and the balance of harms.  *In re Sonnax Industries, Inc.,* 907 F.2d at 1286 (quoting *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)).  Here, the balance of harms clearly weighs in favor of ING.

**Harm to ING**

29.     Cause exists to lift the automatic stay because (a) LBHI's failure to fulfill its obligations as Agent renders it in material breach of the Co-Lending Agreement and (b) LBHI's failure to fund its obligations under the Loan Agreements not only renders it a Defaulting Split Note Holder (after expiration of the 5-day notice period), but also threatens the value of the Project.  ING should be allowed to start the clock on removal of LBHI as Agent.  With each passing day of inactivity by LBHI, neither ING nor the Borrower can take actions to operate under the Loan Agreements or take action to preserve the value of the Project without risk that LBHI will assert that its rights have somehow been violated.  To the extent that LBHI's failure to act allows the value of the Project to decrease, it is causing further harm to itself and its creditors.

30.     The Co-Lending Agreement provides that ING "shall have the right to remove and replace the Agent if Cause occurs."  "Cause" under the Co-Lending Agreement includes (i) any material breach or default by LBHI as Agent under the Co-Lending Agreement which continues for 15 days after written notice to the Agent, or (ii) if LBHI is a Defaulting Split Note Holder. LBHI has failed as both Agent and as a Lender.  "Cause" clearly exists, but for the notice provisions of the Co-Lending Agreement.

31.     LBHI is in violation of the Servicing Standard and in material breach of the Co-Lending Agreement for the following reasons: (i) it has failed to confirm that the Maturity Date

has been extended in accordance with Section 2.4 of the Credit Agreement and (ii) it failed to immediately require that the Loan be put In Balance in accordance with Article 7 of the Building Loan Agreement and Article 7 of the Project Loan Agreement. Despite repeated requests from ING to discharge its duties, LBHI appears unwilling or unable to administer the Loan Documents and is not acting in accordance with the "Servicing Standard." For these reasons, LBHI is in breach of the Co-Lending Agreement and ING has the right (after notice) to remove and replace LBHI for cause. *See* Co-Lending Agreement, Sec. 108(b).

32. ING should also be allowed to issue notice to LBHI as a Lender under the Co-Lending Agreement that LBHI has five (5) days to fund its portion of the Interest Advance, after which it is considered a Defaulting Split Note Holder, as set forth in Section 5.01 of the Co-Lending Agreement.

33. ING is thus entitled to an order lifting the automatic stay under Section 362(d)(1) to take necessary action under the Co-Lender Agreement to remove and replace LBHI as Agent for cause.

**No Harm to the Estates**

34. The Debtors' estates will not be harmed if ING is allowed to remove and replace LBHI as Agent under the Credit Agreement.

35. First, LBHI's position as Lender to the Borrower will not be affected, and LBHI will continue to obtain the benefits as Lender under the Loan Documents. LBHI's obligations under the Loan Documents as Agent are separate and distinct from its rights as Lender. LBHI as Lender will still have the opportunity to review and advance payments under and in accordance with the Loan Documents in the normal course.

36.     Second, LBHI may not even have any commercial interest in continuing as Agent under the Credit Agreement.  Ironically, in a recent separate but similar proceeding in this Court, one of LBHI's Debtor-subsidiaries, Lehman Commercial Paper, Inc. ("LCPI"), sought and was granted the ability to terminate its agency relationships in similar loan transactions.  LCPI noted that "authorization to terminate its agency relations is both necessary and appropriate in order to operate the Debtor's business in a manner that is both consistent with the provisions of the Bankruptcy Code and gives due regard to the interests of third parties with which LCPI dealt in operating its business."  Thus, LCPI acknowledged the Servicing Standard and the need, in the face of an inability to perform its agency role in the future, to expeditiously transfer its agency responsibilities in the best interests of itself and third parties, including co-lenders and borrowers.  It appears that LBHI lacks that same concern.

## CONCLUSION

37.     As LBHI appears to be unable or unwilling to continue to perform its obligations as Agent under the Credit Agreement, ING should be authorized to issue notice of material breach and Default Split Note Holder status to LBHI under the Co-Lending Agreement and exercise its rights under the Co-Lending Agreement to remove and replace LBHI as Agent.  The injury to ING compared to the harm to the Debtors, if any, supports the relief sought in this Motion.

## NOTICE

38.     Notice of this Motion will be provided by counsel to ING to (i) counsel to the Debtors, (ii) the Office of the United States Trustee for the Southern District of New York, (iii) counsel to the Official Committee of Unsecured Creditors, and (iv) all other parties requesting notice under Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, ING

submits that no other or further notice need be given and that the notice provided by ING is sufficient.

39.     No previous request for the relief sought herein has been made by ING to this or any other Court.

## **WAIVER OF MEMORANDUM OF LAW**

40.     This Motion sets forth the applicable authority upon which it relies herein and does not raise any novel issues of law.  Accordingly, ING respectfully requests that the Court waive the requirement contained in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that a separate memorandum of law be submitted in support of the Motion.

## **PRAYER FOR RELIEF**

41.     WHEREFORE, for all of the foregoing reasons, ING respectfully requests that the

Court enter an order (i) granting ING relief from the automatic stay to allow ING to exercise its

rights as set forth herein and (ii) granting such other and further relief as this Court deems just

and proper.

Dated: New York, New York
October 21, 2008

<div style="margin-left: 50%;">

MORRISON & FOERSTER LLP


By:    /s/ Lorenzo Marinuzzi_____
       Lorenzo Marinuzzi
       David Capucilli
       MORRISON & FOERSTER LLP
       1290 Avenue of the Americas
       New York, New York 10104
       Telephone: (212) 468-8000
       Facsimile: (212) 468-7900

       *Attorneys for ING Real Estate*
       *Finance (USA) LLC*

</div>

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) |
| In re | )     **Chapter 11 Case No.** |
| | ) |
| **LEHMAN BROTHERS HOLDINGS INC, et al.,** | )     **08-13555 (JMP)** |
| | ) |
| | )     **Jointly Administered** |
| | ) |
| Debtors. | ) |
| | ) |

## ORDER GRANTING MOTION OF ING REAL ESTATE
## FINANCE (USA) LLC FOR RELIEF FROM THE AUTOMATIC STAY

Upon the Motion (the "Motion")[1] of ING Real Estate Finance (USA) LLC ("ING"), for

an order granting ING relief from the automatic stay, the Court finds that, (i) it has jurisdiction

over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the relief requested in the Motion is proper

and should be granted; (iv) proper and adequate notice of the Motion and the hearing thereon has

been given under the circumstances and no other or further notice is necessary; and (v) upon the

record herein after due deliberation thereon, good and sufficient cause exists for the granting of

relief as set forth herein,

IT IS HEREBY ORDERED THAT:

1.    The Motion is granted.

2.    Pursuant to Section 362(d) of the Bankruptcy Code, the automatic stay in

effect in the Debtors' bankruptcy cases is hereby modified to the extent necessary to authorize

ING to (a) notify LBHI of material breach under the Loan Documents and (b) notify LBHI of its

status as a Defaulting Split Note Holder.

---

[1] Capitalized terms used herein and not defined shall have the meanings ascribed to them in the Motion.

3.      The modification of the automatic stay granted by this Order shall take effect immediately upon entry of this Order and shall not be stayed by operation of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedures.

4.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated:  New York, New York
        November ___, 2008

_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

**(SUBJECT TO NOTICE OF PRESENTMENT OF ORDER
AUTHORIZING FILING OF EXHIBITS UNDER SEAL)**

# EXHIBIT C

**(SUBJECT TO NOTICE OF PRESENTMENT OF ORDER
AUTHORIZING FILING OF EXHIBITS UNDER SEAL)**

# EXHIBIT D


**(SUBJECT TO NOTICE OF PRESENTMENT OF ORDER AUTHORIZING FILING OF EXHIBITS UNDER SEAL)**

# EXHIBIT E

**(SUBJECT TO NOTICE OF PRESENTMENT OF ORDER
AUTHORIZING FILING OF EXHIBITS UNDER SEAL)**

# EXHIBIT F

**(SUBJECT TO NOTICE OF PRESENTMENT OF ORDER AUTHORIZING FILING OF EXHIBITS UNDER SEAL)**

# **EXHIBIT G**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Lorenzo Marinuzzi
David Capucilli

*Attorneys for ING Real Estate Finance (USA) LLC*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** ) | **Chapter 11 Case No.** |
| ) | |
| **LEHMAN BROTHERS HOLDINGS INC, et al.,** ) | **08-13555 (JMP)** |
| ) | |
| ) | **Jointly Administered** |
| ) | |
| **Debtors.** ) | |
| ) | |

**AFFIDAVIT OF YELENA KHARNAS IN SUPORT OF MOTION OF ING REAL**
**ESTATE FINANCE (USA) LLC FOR RELIEF FROM THE AUTOMATIC STAY**

STATE OF NEW YORK )
                               ) ss.:
COUNTY OF NEW YORK )

       I, Yelena Kharnas, being duly sworn, state the following under penalty of perjury:

       1.      I am a Vice President of ING Real Estate Finance (USA) LLC ("ING"), whose offices are located at 230 Park Avenue, 15th Fl., New York, New York 10169. The matters set forth herein are made of my own personal knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

       2.      This Affidavit is made in support of the Motion of ING Real Estate Finance (USA) LLC for Relief from the Automatic Stay (the "Motion").[1]

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

3.      ING is a party to a Co-Lending Agreement with Lehman Brothers Holdings, Inc. ("LBHI") relating to a Loan for acquisition and pre-construction costs for a luxury condominium-hotel tower located at 610 Lexington Avenue in Manhattan.

4.      LBHI serves as the Agent and is a Lender under the Loan Documents and, as such, is responsible for taking certain actions, as set forth in the Motion.

5.      On September 18, 2008, I along with my colleague, Alex Joerg, had a telephone conversation with Christopher McKenna, the representative of LBHI who is representing its interests in connection with the Loan.

6.      Mr. McKenna stated to me that LBHI would agree to resign as Agent under the Credit Agreement, and would sign a Resignation Letter to that effect, which letter would appoint ING as successor Agent under the Loan Documents.

7.      On September 19, 2008 our counsel sent the Resignation Letter to counsel for LBHI.

8.      On September 19, 2008, Mr. McKenna requested that I send him a copy of the Resignation Letter that was sent to LBHI's counsel.

9.      I sent the Resignation Letter to Mr. McKenna that day.

10.     On September 22, 2008, I spoke with Mr. McKenna regarding the status of the Resignation Letter.  Mr. McKenna responded that he would determine the status of the Resignation Letter and advise me accordingly.

11.     Mr. McKenna has not contacted me since that September 22, 2008 call to discuss the status of the Resignation Letter, despite my attempt to contact him again at the end of September.

12.     As a result of LBHI's inaction described in the Motion, ING cannot make determinations in accordance with the Loan Documents to make advances or require certain action by the Borrower.

13.     On October 15, 2008, I spoke with Albert Picallo, a Senior Vice President of LBHI.  Mr. Picallo advised me that he believed that LBHI had pledged the Loan as collateral in an unrelated transaction to Swedbank A.B. or one of its affiliates ("Swedbank") and that LBHI and Swedbank would be working together on the Loan going forward.  Any pledge by LBHI of the Loan and transfer or sharing of any administrative duty with Swedbank would be a significant development and ING would have expected to be notified of such development.

14.     I attempted to contact LBHI approximately six (6) times since our October 15, 2008 conversation, but it has been unresponsive.  I have thus been unable to obtain any further clarification on the potential pledge of the Loan to Swedbank.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Dated: October 21, 2008                    /s/ Yelena Kharnas
                                           Yelena Kharnas
                                           Vice President
                                           ING Real Estate (USA) LLC


Sworn to before me this 21st
day of October, 2008.


/s/ Michael Shields
NOTARY PUBLIC

MICHAEL SHIELDS
NOTARY PUBLIC, State of New York
No. 01SH5057281
Qualified in New York County
Commission Expires May 16, 2010