1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555-JMP

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS, INC.


        Debtors.


- - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                October 17, 2008

                5:08 PM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

2

1

2   HEARING re Motion Filed by the Debtor (A) for Authorization to

3   (i) Continue Using Existing Centralized Cash Management System,

4   as Modified, (ii) Honor Certain Prepetition Obligations Related

5   to the Use of the Cash Management System, and (iii) Maintain

6   Existing Bank Accounts and Business Forms; (B) for an Extension

7   of Time to Comply with Section 345(b) of the Bankruptcy Code,

8   and (C) to Schedule a Final Hearing.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Penina Wolicki

3

1

2      A P P E A R A N C E S :

3      WEIL, GOTSHAL & MANGES LLP

4             Attorneys for Debtors

5             767 Fifth Avenue

6             New York, NY 10153

7

8      BY:   RONIT J. BERKOVICH, ESQ.

9             ALFREDO R. PEREZ, ESQ.

10

11

12     CLEARY GOTTLIEB STEEN & HAMILTON LLP

13            Attorneys for Barclays Capital Inc., D.E. Shaw

14            One Liberty Plaza

15            New York, NY 10006

16

17     BY:   LINDSEE P. GRANFIELD, ESQ.

18            LUKE A. BAREFOOT, ESQ.

19            THOMAS J. MOLONEY, ESQ.

20

21

22

23

24

25

4

```
1

2    MILBANK, TWEED, HADLEY & MCCLOY LLP

3         Attorneys for the Official Committee of Unsecured

4          Creditors

5         One Chase Manhattan Plaza

6         New York, NY 10005

7

8    BY:   EVAN R. FLECK, ESQ.

9

10

11   BINGHAM MCCUTCHEN LLP

12        Attorneys for Harbinger Funds

13        399 Park Avenue

14        New York, NY 10022

15

16   BY:   JEFFREY S. SABIN, ESQ.

17

18   CADWALADER, WICKERSHAM & TAFT LLP

19        Attorneys for Citibank

20        One World Financial Center

21        New York, NY 10261

22

23   BY:   JESSICA L. FINK, ESQ.

24

25
```

5

1

2    COLE, SHOTZ, MEISEL, FORMAN & LEONARD, P.A.

3         Attorneys for FHLB Pittsburgh

4         900 Third Avenue

5         16th Floor

6         New York, NY 10022

7

8    BY:   LAURENCE MAY, ESQ.

9

10   SHEARMAN & STERLING LLP

11        Attorneys for Bank of America Securities

12        599 Lexington Avenue

13        New York, NY 10022

14

15   BY:   NED S. SCHODEK, ESQ.

16

17

18   TUCKER ARENSBERG

19        Attorneys for FHLB Pittsburgh

20        1500 One PPG Place

21        Pittsburgh, PA 15222

22

23   BY:   BEVERLY W. MANNE, ESQ. (TELEPHONICALLY)

24

25

6

1

2   CREDIT SUISSE FIRST BOSTON

3        2121 Avenue of the Stars

4        Los Angeles, CA 90067

5

6   BY:   ANDREW REBAK, ESQ. (TELEPHONICALLY)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

7

1       P R O C E E D I N G S

2    THE COURT:  Be seated, please.  Mr. Perez, good

3 evening.

4    MR. PEREZ:  Good afternoon, Your Honor.  Thank you

5 for seeing us this --

6    THE COURT:  Check the clock, I'm going to call it

7 good evening.

8    MR. PEREZ:  -- thank you for seeing us at this late

9 hour.  Your Honor, I think we have been able to work through

10 almost all of them, and I believe -- I know of at least one

11 continuing objection.  There is three words that we need to

12 insert in the very last one and I believe that with that, the

13 only remaining person is Mr. Moloney, at least to my knowledge.

14    THE COURT:  All right.  Well, let's take this in the

15 order that you want to take it.  What are the three words?

16    MR. PEREZ:  The three words are in the paragraph on

17 page 5, that's the main paragraph that is the subject of this

18 order, of this hearing, in the fourth line from the bottom, it

19 says:  "such valid rights."

20    THE COURT:  I'm not sure what we're looking at.  I'm

21 looking at what was on the ECF system as a black-line version

22 of the order.

23    MR. PEREZ:  Yes, Your Honor.

24    THE COURT:  Are we looking at the right document?

25    MR. PEREZ:  Page 5.

8

1          THE COURT:  Page 5.

2          MR. PEREZ:  Page 5.  Fourth line from the bottom

3    begins:  "actions to exercise".

4          THE COURT:  I see that.

5          MR. PEREZ:  Okay -- "such valid rights."  And then I

6    would insert "or assert such claims", just to make the

7    construction parallel from what it's above and below.

8          THE COURT:  Okay.

9          MR. PEREZ:  All right.  And with that, Your Honor, we

10   believe that the admonition that the Court gave us yesterday,

11   which was to try to get language which would preserve people's

12   rights would, in fact, be done.  And I just want to make about

13   three points, Your Honor.  Number one, this is not intended,

14   and should not be viewed, and in our opinion does not, create

15   any rights in any of the parties that didn't exist beforehand.

16   The preface to this ordered paragraph is, nothing in this order

17   shall.  Okay?  They're still bound by 362.  They're still bound

18   by all of the other provisions of the Bankruptcy Code.  They're

19   still bound by everything else, as are we.  So Your Honor, this

20   is not intended to create any rights.  It's intended to -- the

21   genesis --

22         THE COURT:  It's intended to preserve what rights

23   exist.

24         MR. PEREZ:  -- exactly.  And remember, Your Honor,

25   and again, it's unfortunate that we ended up this, and it was a

9

1    moment of weakness on my part to give in to one person --

2            THE COURT:  You're forgiven, you really are.

3            MR. PEREZ:  --but --

4            THE COURT:  It won't be the first time.

5            MR. PEREZ:  Or the last.

6            THE COURT:  Right.

7            MR. PEREZ:  But, Your Honor, the way that this whole

8    thing arose is, we have bank accounts.  Most of the things that

9    we're dealing with here have nothing to do with bank accounts.

10   And the banks said we don't want this order to be interpreted

11   to say that if we're holding a hundred dollars to assert our

12   setoff rights, that this means that we're going to have to give

13   that up and waive our setoff rights.  That's what this

14   paragraph was intended exclusively to address.  That's a

15   legitimate concern that somebody could say well, you're

16   directed to honor their request.  Well, subject to the ballot

17   setoff rights.

18           We've expanded it somewhat beyond that to recognize

19   rights that are not rights that banks would have.  But you're

20   really talking about third parties.  So, Your Honor, I believe

21   that we have gone beyond what had been requested of us.

22           THE COURT:  What's the continuing objection at this

23   point?

24           MR. SABIN:  Your Honor, I think that with one

25   clarification -- this is Jeff Sabin on behalf of the Harbinger

10

1   Funds.  On page 3 of the black-lined version, the final

2   decretal paragraph, I understand that the reference to Barclays

3   Capital Inc. --

4           MR. PEREZ:  Yes, Your Honor --

5           MR. SABIN:  -- should be --

6           MR. PEREZ:  -- I don't know that it should be struck,

7   but I think we can represent on the record that we are not

8   using any accounts of Barclays Inc. at this time.  We are using

9   LBI accounts through the trustee to fund both payroll and

10  payroll taxes and some payables.  But the accounts at Barclays

11  Capital Inc. are not being used.  And it's the intent not to

12  use those accounts.

13          THE COURT:  Okay.  If that's true, why do we need the

14  language?

15          MS. GRANFIELD:  Yeah.  I'm sorry.  It's fine for

16  the --

17          THE COURT:  You have to identify yourself for the

18  record.

19          MS. GRANFIELD:  Very good, Your Honor.  Lindsee

20  Granfield.  Cleary, Gottlieb, Steen & Hamilton, LLP on behalf

21  of Barclays Capital Inc.  If the debtor wants to say they don't

22  intend to use accounts, that's fine.  I --

23          MR. PEREZ:  But it's -- I'm sorry.  We have -- I

24  think Mr. Sabin's concern is Barclays' accounts at Barclays.

25  That's the ones we don't intend to use.  We have our own bank

11

1    accounts at Barclays Capital which we do continue to use.  I

2    think it's the former, the ones that we are not going to be

3    using.  That's what you were concerned about, that we would put

4    money through the presale Barclays accounts, not that we're not

5    using Barclays as a bank.  We are using Barclays as a bank.

6                MS. GRANFIELD:  Okay.  I --

7                THE COURT:  Well, now I'm quite confused.

8                MR. PEREZ:  Okay.

9                MS. GRANFIELD:  Yes.  Can I just say, too -- I'm

10   sorry, Lindsee Granfield, for Barclays Capital Inc. again.  I'm

11   confused too, because I don't know whether what you're saying

12   is correct or not, particularly when the motion, I guess, I

13   thought talked about the use of accounts, Barclays, trustee,

14   LBI, for payroll and other things.  And I don't know whether

15   that's over or not.  I have no idea.

16               MR. PEREZ:  Okay, well let me -- there's two

17   different issues, Your Honor.  The debtors' accounts at

18   Barclays, which include, for instances, the proceeds of the

19   sale.  Those are our accounts.  I don't think that's Mr.

20   Sabin's issue.  The second issue is in connection with the

21   former centralized cash management system, Barclays did assume

22   some of those functions through old-Lehman-now-Barclay and some

23   of those accounts.

24               And at this point, Your Honor, although we do ask for

25   permission to do that, we are not using it.  We are not using

12

1   the old Lehman system that Barclays now has to fund either

2   payroll or payroll taxes or certain payables.  We are using

3   what was the old LBI accounts that the trustee has, not that

4   Barclays has.

5           MR. SABIN:  That is accurately stated in terms of my

6   concerns.  This is Jeff Sabin on behalf of Harbinger.  And if

7   that is the case, then the statements made on the record by Mr.

8   Perez are fine and resolve any lingering concern that we have.

9   And therefore, with the additional language that was read into

10  the record in page 5 of the decretal paragraph, plus this

11  explanation, we withdraw -- actually, we don't withdraw, but

12  our objection has been mooted, if you will, by these changes.

13          THE COURT:  Fine.  So Mr. Sabin is satisfied.  Is Mr.

14  Moloney satisfied?

15          MR. MOLONEY:  Almost, Your Honor.  For the record,

16  Tom Moloney of Cleary, Gottlieb, Steen & Hamilton, LLP on

17  behalf of certain entities associated with D.E. Shaw.  And,

18  Your Honor --

19          THE COURT:  Your firm is here every day representing

20  somebody else.  It's amazing.

21          MR. MOLONEY:  Sorry, Your Honor.  We thought the sale

22  was over.  Lindsee thought the sale was over, but it's not over

23  yet.

24          THE COURT:  Okay.  What's your concern?

25          MR. MOLONEY:  The concern is the language you were

13

1   just looking at on page 5, and that paragraph X, that basically

2   says that this doesn't affect entities' ability to bring claims

3   before Your Honor.  I think, and this is based on experience in

4   a case very similar to this one, Your Honor.  We were involved

5   in representing the customers in the Refco Capital Management

6   case before Judge Drain for two years.  We dealt with, at the

7   beginning of the case, with the same type of issues.

8        At the beginning of the case there were forty-some

9   constructive trust claims filed to property which caused a

10  complete administrative disaster.  And my concern was that

11  language such as that is simply an invitation to repeat a

12  mistake that was made once before.  And after that point what

13  happened is, people said okay, we don't need that.  What we're

14  going to do is we're going to just preserve the status quo for

15  everyone.  We have the orders, and we entered a number of

16  orders, including the cash management orders in Refco that were

17  slightly different but the principle was the same --

18       THE COURT:  Mr. Moloney, no offense.  This isn't

19  Refco.  I don't want to hear about Refco.  I want to hear about

20  this order and what your problem is with it.  Be specific.

21       MR. MOLONEY:  Fair enough.  Specifically, I don't

22  know if Your Honor received the letter we sent up just before

23  the hearing started?

24       THE COURT:  Did not.

25       MR. MOLONEY:  If I could approach the bench, Your

14

1    Honor?

2              THE COURT:  Do you want me to read it?

3              MR. MOLONEY:  Well, just show you the language that

4    we're focusing on, I think will be helpful to understand what

5    our point is.

6              THE COURT:  Before I see the letter, tell me why

7    you're making a fuss about this.  If I need to read the letter,

8    I'm going to adjourn the hearing and read it.

9              MR. MOLONEY:  Okay.

10             THE COURT:  If you think it's important enough for me

11   to understand, I'll take the time to read it.  I'm not going to

12   read it while everybody's watching me read.

13             MR. MOLONEY:  Fair enough, Your Honor.  I --

14             THE COURT:  Why do you have a problem?  Explain your

15   problem without reference to Refco.

16             MR. MOLONEY:  Yes.  Without reference to Refco, I'll

17   explain my problem, which is that we heard yesterday, and it

18   was not at all clear from debtors' motion papers, but Mr.

19   Miller made it quite clear yesterday that LBHI had been moving

20   funds, including from regulated entities.  Because LBIE is a

21   regulated entity.  My client had client cash in that regulated

22   entity, a substantial amount of client cash.  Where that cash

23   is now, we don't know.

24             THE COURT:  Welcome to the club.  There are lots of

25   people who yesterday were raising issues --

15

1          MR. MOLONEY:  Correct, Your Honor --

2          THE COURT:  -- like that.

3          MR. MOLONEY:  -- so we're not -- and he also made, I

4    think, a quite eloquent plea, which I agree with, that there's

5    no reason whatsoever for the debtor to have to respond to a

6    million expedited requests for information about where the cash

7    is, and it would be very difficult from an administrative

8    perspective.  However, if we had perfect information about

9    where our cash was or if we had ability to pursue those

10   remedies which would normally be available for someone who's

11   going to lose material property rights protected by the

12   Constitution -- if we had that information, we could bring

13   claims of various sorts, not necessarily the ones that they

14   articulated.  But the order's been fixed to cover that, to get

15   back that cash.

16          All we're saying is, if they actually use the money

17   that they have not filed schedules for, they have not said is

18   theirs, but this order implicitly authorizes the use and

19   transfer of money among various entities in continuation of

20   this cash management system, if they use the money, and in

21   fact, it turns out not to have been their money, and this is

22   only on a prospective basis, then the person who is harmed, and

23   it probably would not be me, would probably be some fiduciary

24   who would represent me; either the LIE fiduciary or the LBI

25   fiduciary, I don't know which one yet, would have the same

16

1   administrative claim that they've offered to give to their

2   subsidiaries in the event of that additional loss to the debtor

3   by moving the funds.

4        That was my simple suggestion.  If that happens, I

5   don't see that there's any need for anyone to bring any

6   expedited proceedings to know where their cash is.  We could

7   find that out in a reasonable period of time.  But meanwhile,

8   we know we don't lose rights simply by the passage of time.

9   And the debtor is not using the fact that this is a very

10  difficult Chapter 11 proceeding as a sword as opposed to a

11  shield.  A shield from discovery that would interfere with the

12  breathing spell they clearly need, but it should not be a sword

13  to cut off rights because they say by the way, you would have

14  had a claim if you had asserted it.  As a matter of fact, we

15  stuck in the order paragraph X reserving your right to come to

16  court and ask for a constructive trust or ask for something

17  else and you didn't do it.

18       THE COURT:  Mr. Moloney, I don't understand you.  I

19  don't know what you want.  I don't know why you want it.  I

20  don't know why the order as it's written doesn't protect you.

21  What's missing?  What do you need?  Be specific.

22       MR. MOLONEY:  The specific thing we would like is

23  specific language that provides that to the extent the debtors'

24  use or transfer of funds causes a loss of rights that exist as

25  of today, that you would have to be compensated, only to the

17

1    extent of that loss, and the injured party would be compensated

2    only to the extent of that loss with the same priority claim

3    that they're purporting to give to their debtor entities in the

4    event that they lose money by lending to an affiliate.

5            THE COURT:  Well, we talked about this issue

6    yesterday, and I think that one of the issues here is that this

7    is a cash management order, it isn't the Magna Carta.  And it's

8    also an interim cash management order.  I believe that there

9    are ongoing discussions involving the administrator at LBIE,

10   the SIPA trustee and representatives of the LBHI estate

11   relating to some understanding that might be the issue that

12   you're now addressing.  I don't understand why this order has

13   to cover that if there are ongoing negotiations involving

14   reciprocal claims.

15            And that was an issue that came up yesterday.  To the

16   extent that there is a property right that the LBHI estate has

17   as to property in the LBIE estate, there needs to be some

18   reciprocal protocol with respect to that.  This is not a one-

19   way street.  And I see no reason why, in the context of the

20   cash management order, this problem, which has been identified,

21   but not fully vetted, needs to be addressed.  So I'm not yet

22   persuaded.  Maybe I will be if I read your letter.  Do you want

23   me to read your letter?

24            MR. MOLONEY:  Yes, Your Honor.

25            THE COURT:  Well, then I'm going to take an

1    adjournment.

2              MR. MOLONEY:  Okay.

3              THE COURT:  You can hand this up.

4              MR. MOLONEY:  Yes, Your Honor.

5              THE COURT:  And I'll take ten minutes and I'll read

6    it.  And if others want to address the subject, we can address

7    the subject after I'm fully informed.

8              MR. MOLONEY:  Thank you, Your Honor.

9              THE COURT:  Thank you.  We're adjourned for ten

10   minutes.

11        (Recess from 5:23 p.m. to 5:35 p.m.)

12             THE COURT:  Okay, I've read it.  One comment.

13             MR. MOLONEY:  Yes, Your Honor.

14             THE COURT:  It would have been a lot easier if you

15   had done this with a black line.  So you've forced me to read

16   the language very carefully and discover what's new versus

17   what's old.

18             MR. MOLONEY:  I apologize for that, Your Honor.  We

19   did this kind of on a fly at the --

20             THE COURT:  It looks like it was done on the fly.

21             MR. MOLONEY:  -- we tried to work out most of this

22   language in Coles today.  And I actually gave a draft of this

23   language to the debtor which I drafted in court yesterday as

24   soon as we left court.  So we've gotten closer to it.  And so,

25   Your Honor, as you saw by the black-line, the only new change I

19

1    intended to have was the new language "and if, and only to",

2    and it wasn't clear to me that the language after "X", even

3    with the addition, added anything.  I have no objection to it

4    staying there, other than it seems to be an invitation for

5    people to bring exactly the type of actions the debtor doesn't

6    want.

7            THE COURT:  I'm trying to understand why this is a

8    problem for you and/or a problem for others.  And I've heard

9    your argument, I've read your letter, and I've read your

10   language.  Now, let me find out why what you want isn't

11   acceptable so I understand what the issues are.

12           MR. MOLONEY:  Okay.

13           MR. PEREZ:  Your Honor, a couple of reasons.  Number

14   one, this was intended -- this document is not intended to

15   create any substantive rights in any party.  This creates

16   substantive rights.  That's number one.  Number two, as a

17   complete aside, I mean, in essence, what they have done here is

18   they've basically filed a motion for adequate protection or

19   something like that, and they've gotten a ruling on it, because

20   that's what you would get.  And, Your Honor, I just don't think

21   it's appropriate in the context of a cash management --

22           THE COURT:  Well, actually, I think it's beyond

23   adequate protection.  It's agreement of remedy.

24           MR. PEREZ:  Exactly, and we haven't even -- I've

25   known Mr. Moloney for a long time, but there wasn't even an

20

1    objection filed to my cash management motion by his client.

2            THE COURT:  Point taken.  Does anyone else have any

3    comments or concerns, those who have filed objections or those

4    who are parties in interest, as to this language?

5            MR. PEREZ:  There was --

6            THE COURT:  Mr. Perez?

7            MR. PEREZ:  -- one other clarification, Your Honor.

8    One of the parties came up and there's a paragraph in here that

9    authorizes us to pay bank charges associated with the

10   maintenance of the system.  You know, there's charges, and some

11   of those would be prepetition that you would get charged for.

12   And there was some concern that that might be used to pay

13   prepetition unsecured claims unrelated to the bank charges.

14   And I just wanted to state on the record that the only intent

15   is to pay the charges associated with the maintenance of the

16   cash management system and no other claims, as would be the

17   case.

18           THE COURT:  Okay.

19           MR. MOLONEY:  Your Honor, can I just very briefly, I

20   know it's late, just respond to --

21           THE COURT:  No, it's not late.  In this case this is

22   early.

23           MR. MOLONEY:  I was following by e-mail your earlier

24   experience.  Again, Tom Moloney, for the record, on behalf of

25   certain D.E. Shaw entities.  Three points.  One, Your Honor, we

21

1    did not file an objection, but I did not appreciate, until

2    yesterday, when I listened to Mr. Miller very carefully, that

3    the scope of this sweeping activity by LBHI could possibly pick

4    up customer property.  Their papers said that regulated

5    entities would be dealt with differently than non-regulated

6    entities.  And from that I, perhaps incorrectly, assumed that

7    they were not trying -- that the property of regulated entities

8    was not being picked up, including customer cash, which under

9    15(a)(6) of the securities laws, in order to qualify for the

10   exemption, in 15(c)(3), they had to protect and safeguard LBI

11   and all of its affiliates.  It didn't occur to me that they

12   were just sweeping that willy-nilly into a cash management

13   system until Mr. Miller said that yesterday.  I don't know if

14   that's true or not or just --

15            THE COURT:  I don't believe that Mr. Miller said or

16   could be reasonably interpreted as having implied that cash was

17   being swept willy-nilly.

18            MR. MOLONEY:  Right.  I take that back, Your Honor.

19   But it was being swept.  And so that then raised a concern

20   which I did not have until I heard that from Mr. Miller.  And

21   it doesn't prevent the debtor from using any property that is

22   their money.  It doesn't create any rights if they use money

23   that's their money.

24            THE COURT:  Why should I grant an order that gives

25   any party a right in this order, clearly, if there is a

22

1    misappropriation of cash for property, and it can be

2    demonstrated, that gives rise to a claim, and there are

3    remedies available at law or in equity with respect to such

4    claims?  Why is this language required by your client or any

5    other party in interest?  Why isn't the fact that we have a

6    body of common law and statutory authority sufficient to deal

7    with such remedies, sufficient?

8           MR. MOLONEY:  Your Honor, we could rest on it.  And

9    obviously, other people who I thought would support me today in

10   court are willing to rest on that body of authority and maybe

11   deal with this issue down the road in a more messy way than I

12   think we would deal with it today if we very clearly took

13   advantage of the mechanism the debtor has already put in place

14   in their order, to protect against this occasion.  Which is,

15   that if down the road we discover that they have used customer

16   cash and we're trying to figure out what the appropriate remedy

17   is, and it may be difficult to figure out who should be blamed;

18   I just thought it would be better and more prudent to make it

19   clear that they're getting a clear right to use cash, that it

20   was not going to affect anyone's rights.  And if it was their

21   money, it did not create any rights, and if it was somebody

22   else's money, it created a very clear remedy which we'd already

23   put in place for the debtor.

24           That was my thought.  But I certainly can rest on the

25   other portions of the order which I think have been improved

23

1    over what we had yesterday, Your Honor.

2              THE COURT:  Fine.  Well --

3              MR. MOLONEY:  That was my rationale.

4              THE COURT:  -- then we will rest on that, because I'm

5    not going to take the language.

6              MR. MOLONEY:  Okay.  Thank you, Your Honor.  And

7    thank you for hearing us so late.

8              THE COURT:  That's fine.  Is there anyone else who

9    wishes to be heard on the language of the order at this point?

10   It sounds as if we have -- I'm deeming silent to be assent with

11   respect to the language of the order.  Mr. Perez, I think

12   you're to the point of being able to submit an order.

13             MR. PEREZ:  Thank you, Your Honor.  We have a

14   diskette.  And I don't know what would be -- we do have to

15   insert those three words in there.  I don't know what would

16   be -- I think we can submit it, a diskette.

17             THE COURT:  Let me point out that --

18             MR. PEREZ:  And if it's entered on Monday, it's

19   perfect.

20             THE COURT:  -- at this hour, it is more likely than

21   not that the order will not be entered until first thing Monday

22   morning.

23             MR. PEREZ:  That's perfect, Your Honor, perfect.  And

24   I did want to make one point.  Obviously, Mr. Miller's

25   comments, they're reflected on the record.  But to the extent

24

1    that there's an implication that there are continuing sweeps,

2    there are no continuing sweeps.  That stopped.  So there aren't

3    any sweeps.

4            THE COURT:  I think we're all comforted now.  Thank

5    you.

6            MR. PEREZ:  Thank you, Your Honor.  Thank you very

7    much.  And we'll submit the appropriate order.  I'll speak with

8    your clerk as to the best way to get it to you.

9            THE COURT:  Fine.  Then if there's nothing more for

10   this evening, we're adjourned.  And have a good weekend.

11           MR. PEREZ:  Thank you, Your Honor.

12        (Proceedings concluded at 7:18 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

25

1

2                    C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    _____

8    PENINA WOLICKI

9

10    Veritext LLC

11    200 Old Country Road

12    Suite 580

13    Mineola, NY 11501

14

15    Date:  October 21, 2008

16

17

18

19

20

21

22

23

24

25