STEVENS & LEE, P.C.
485 Madison Avenue, 20th Floor
New York, New York 10022
Telephone: 212-319-8500
Facsimile: 212-319-8505
Alec P. Ostrow
Constantine D. Pourakis
Email:  apo@stevenslee.com
              cp@stevenslee.com

*Attorneys for Plaintiff Royal Bank America*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 Case |
| LEHMAN BROTHERS HOLDINGS, INC., | Case No. 08-13555 (JMP) |
| Debtors. | Jointly Administered |
| ROYAL BANK AMERICA, formerly known as ROYAL BANK OF PENNSYLVANIA, | |
| Plaintiff, | |
| vs. | Adversary Proceeding No. _____ |
| LEHMAN BROTHERS SPECIAL FINANCING, INC., | |
| Defendant. | |

# COMPLAINT

Plaintiff Royal Bank America, formerly known as Royal Bank of Pennsylvania ("Royal Bank") for its complaint against defendant Lehman Brothers Special Financing, Inc. ("Lehman SF" or the "Debtor"), alleges through its undersigned counsel as follows:

## NATURE OF THE ACTION

1. This adversary proceeding is commenced to recover possession of a Fannie Mae mortgage backed security owned by Royal Bank bearing CUSIP No. 31371K4E8 (the "FNMA Security"), together with any proceeds thereof, any Distributions made with respect thereto and any Interest Amount (all of the foregoing being referred to hereinafter collectively as the "Posted Collateral"). The Posted Collateral had served as collateral for Royal Bank's potential obligations to Lehman SF with respect to certain pre-petition derivative transactions between Royal Bank and Lehman SF pursuant to the terms of that certain ISDA Master Agreement dated July 8, 2002 (as more fully defined below, the "Swap Agreement"). Prior to the commencement of the Debtor's bankruptcy case, Royal Bank properly terminated the Swap Agreement and, as a result, Lehman SF had an obligation to immediately return all of the Posted Collateral to Royal Bank. Prior to the commencement of this adversary proceeding, Royal Bank sent a demand letter to Lehman SF and the Debtors restructuring advisor Alvarez & Marsal, LLC, seeking the immediate return of the Posted Collateral, and tendering the final amount due Lehman SF in accordance with the terms of the Swap Agreement. Therefore, as of the commencement of the Debtor's bankruptcy case and as of the commencement of this adversary proceeding, Lehman SF had no right to retain possession of the Posted Collateral or to withhold delivery of the same to Royal Bank. Despite demand, Lehman SF has failed and refused to return the Posted Collateral to Royal Bank in violation of Royal Bank's contractual and statutory rights.

## PARTIES

2. Plaintiff Royal Bank is a banking institution organized and incorporated under the laws of the Commonwealth of Pennsylvania.

3. Defendant Lehman SF is a corporation organized and incorporated under the laws of Delaware. It is registered to do business in the state of New York and has its principal place of business at 745 Seventh Ave., New York, New York 10019. Lehman SF is a subsidiary of Lehman Brothers, Inc.[1]

## JURISDICTION AND VENUE

4. This adversary proceeding is a civil proceeding arising in a case under the Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code"), within the meaning of 28 U.S.C. § 1334(b). It is properly brought as an adversary proceeding pursuant to Bankruptcy Rule 7001(1) and (7).

5. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334.

6. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (E) and (O).

7. Venue of this adversary proceeding is proper in this District pursuant 28 U.S.C. §1409(a) because the Debtor's bankruptcy case is pending in this judicial district.
.

## BACKGROUND FACTS

**The Pre-Petition Relationship between Lehman SF and Royal Bank**

8. On or about July 8, 2002, Lehman SF and Royal Bank entered into that certain International Swap Dealers Association, Inc. ("ISDA") Master Agreement dated July 8, 2002 (the "Master Agreement," and collectively with the attached Schedule (the "Schedule") and Credit Support Annex (the "Credit Support Annex") both dated July 8, 2002, the "Swap

---

[1] Based on allegations made by other creditors, Lehman Brothers, Inc. ("LBI") may have transferred is ownership interest in Lehman SF to another Lehman-affiliated entity shortly before the commencement of the SIPA insolvency proceeding against LBI.

Agreement"). Attached hereto as composite Exhibit A are true and correct copies of the Master Agreement, Schedule and Credit Support Annex.

9. Since 2002, Lehman SF and Royal Bank have engaged in a series of derivative transactions (the "Transactions") under and subject to the terms of the Swap Agreement.

**The Royal Bank Collateral and Royal Bank's Right to Receive Distributions**

10. Pursuant to the terms of the Master Agreement, as amended by the Schedule and the Credit Support Annex, Royal Bank had an obligation to provide collateral to Lehman from time to time to secure its potential obligations to Lehman under the Swap Agreement.

11. Pursuant to the Swap Agreement and in connection with the Transactions entered into between Lehman SF and Royal Bank thereunder, on or about January 26, 2006, Royal Bank caused the FNMA Security, in the original par amount of $15,000,000, to be Transferred (as such term is defined in the Credit Support Annex) to Lehman SF as Posted Collateral (as such term is defined in the Credit Support Annex). As of September 30, 2008, the FNMA Security had a value of approximately $4,912,442.66.

12. Pursuant to Paragraph 6(d) of the Credit Support Annex, Royal Bank was entitled to receive all Distributions (as such term is defined in Paragraph 13) made on account of the FNMA Security that were delivered to Lehman SF, and all such Distributions were to be paid to Royal Bank no later than the following Local Business Day after Lehman SF's receipt of the same.

**Pre-Petition Event of Default, Declaration of Early Termination Date and Cessation of Distributions**

13. Under the Master Agreement, an "Early Termination Date" may be declared by the non-defaulting party upon the occurrence of an Event of Default.

14.  Among other events, an Event of Default occurs under the Master Agreement if a party or any "Credit Support Provider" of such party "institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law."

15.  Lehman Brothers Holdings Inc. ("LBHI") is designated as a Credit Support Provider in the Schedule to the Master Agreement.

16.  On or about September 15, 2008, LBHI filed a voluntary petition with the United States Bankruptcy Court for the Southern District of New York seeking relief under Chapter 11 of the Bankruptcy Code (the "LBHI Petition").

17.  The filing of the LBHI Petition caused an Event of Default to occur under the Master Agreement.

18.  Pursuant to Section 6(a) of the Master Agreement, upon the occurrence of this Event of Default, Royal Bank was entitled to provide notice to Lehman SF specifying the relevant Event of Default and to designate a day not earlier than the day such notice was effective as an Early Termination Date in respect of all outstanding Transactions.

19.  By letter dated and delivered September 26, 2008, Royal Bank as the non-defaulting party, notified Lehman SF that the filing of the LBHI Petition caused an Event of Default to arise under the Master Agreement and that as a result Royal Bank was designating September 26, 2008 as the Early Termination Date in respect of all outstanding Transactions under the Master Agreement.  Attached hereto as Exhibit B is a true and correct copy of the September 26, 2008 letter.

20.  Pursuant to Paragraph 8(b) of the Credit Support Annex, as a result of Royal Bank's designation of an Early Termination Event and an Early Termination Date,  Lehman SF was

5

required to immediately return to Royal Bank the Posted Collateral (including the proceeds if any from any disposition of the FNMA Security, any additional Distributions in Lehman SF's possession and any Interest Amount due).

21. However, despite demands duly made, Lehman SF has failed and refused to return any of the Posted Collateral to Royal Bank. Furthermore, Lehman SF failed to remit the Distribution that was due Royal Bank on or about September 25, 2008.

22. By letter dated October 21, 2008 (the "Notification and Demand Letter"), Royal Bank notified Lehman SF and its restructuring adviser Alvarez & Marsal, LLC, that, pursuant to Section 6 (e)(i)(4) of the Master Agreement, Royal Bank had determined that an early termination payment was owed to Lehman SF in the net amount of $351,263.20. Attached hereto as Exhibit C is a true and correct copy of the Notification and Demand Letter.

23. Also, in the Notification and Demand Letter, Royal Bank (a) notified Lehman SF that, pursuant to Paragraph 8(b)(iv)(B) of the Credit Support Annex, Royal Bank was entitled to withhold payment of such early termination payment until such time as the Posted Collateral was returned to Royal Bank; (b) tendered to Lehman SF, pursuant to Paragraph 8(b)(i) of the Credit Support Annex and Section 9-623 of the New York Uniform Commercial Code (the "UCC"), the sum of (i) $351,623.20 and (ii) the reasonable expenses and attorneys fees (if any) described in Section 9-615(a)(1) of the UCC to the extent provided for the Agreement and not prohibited by law, with such sum to be paid simultaneously upon the return of the Posted Collateral; and (c) demanded return of the Posted Collateral pursuant to Paragraph 8(b)(iii) of the Credit Support Annex.

24. As the commencement of this adversary proceeding, Lehman SF and its advisors have failed and refused to respond to Royal Bank's inquiries with respect to the return of the

Posted Collateral, thus Royal Bank has been forced to seek relief from this Court to recover its property.

## FIRST CLAIM FOR RELIEF

### Turnover of Posted Collateral

25. The averments in Paragraphs 1 through 24 are incorporated herein by reference.

26. In accordance with section 8(b)(iii) of the Credit Support Annex, upon Royal Bank's designation of an Early Termination Date, Lehman SF was contractually obligated to immediately Transfer the Posted Collateral back to Royal Bank.

27. Royal Bank therefore has a contractual right to the immediate return of the Posted Collateral.

28. Lehman SF, on the other hand, has no right to retain possession of the Posted Collateral and has no right to refuse to return the Posted Collateral to Royal Bank.

29. Royal Bank is entitled to enforce its contractual rights against Lehman SF, notwithstanding the commencement of Lehman SF's bankruptcy case, pursuant to 11 U.S.C. §§362(b)(6), (17) and (27) and §§ 560 and 561.

30. Consequently, Royal Bank is entitled to an order of this Court directing Lehman SF to immediately return the Posted Collateral to Royal Bank, to the extent it is in the possession of Lehman SF.

## SECOND CLAIM FOR RELIEF

### Turnover of Proceeds

31. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 30 as if set forth at length herein.

32. Paragraph 6(c) of the Credit Support Annex purportedly allowed Lehman SF, as the secured party, to "sell, pledge, rehypothecate, assign, invest, use, commingle or otherwise

7

dispose of, or otherwise use in its business any Posted Collateral it held, free from any claim or right of any nature whatsoever of [Royal Bank], including any equity or right of redemption by [Royal Bank]."

33. Paragraph 8(c) of the Credit Support Annex requires Lehman SF to transfer to Royal Bank "any proceeds and Posted Credit Support remaining after liquidation, Set-off and/or application under paragraphs 8(a) and 8(b) after satisfaction in full of all amounts payable by [Royal Bank] with respect to any Obligations."

34. Upon information and belief, Lehman SF may have sold, pledged, rehypothecated, assigned, used or otherwise disposed of all or part of the Posted Collateral to third parties prior to Royal Bank's declaration of an Early Termination Event under the Swap Agreement.

35. To the extent it did so, Lehman SF may have received consideration for the Posted Collateral.

36. Royal Bank has a contractual right to the immediate remittance of the proceeds from any disposition of the Posted Collateral.

37. Lehman SF, on the other hand, has no right to retain the proceeds from any disposition of the Posted Collateral, and has no right to refuse to remit the proceeds of any disposition of the Posted Collateral to Royal Bank.

38. Furthermore, even if Lehman SF has sold, pledged, rehypothecated or otherwise disposed of the FNMA Security pursuant to its alleged right to do so, it is still required by Paragraphs 6(d) and 14 of the Credit Support Annex to continue to remit Distributions to Royal Bank on a timely basis.

39. Consequently, Royal Bank is entitled to an order of this Court directing Lehman SF to immediately remit any proceeds of the disposition of the Posted Collateral and all undelivered

Distributions to Royal Bank, to the extent such proceeds and Distributions are in the possession of Lehman SF.

## THIRD CLAIM FOR RELIEF

### Accounting

40. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 39 as if set forth at length herein.

41. Section 8(b)(i) of the Credit Support Annex provides that upon an Event of Default and Early Termination Date (as those terms are defined therein), Royal Bank "may exercise all rights and remedies available to a pledgor under applicable law with respect to the Posted Collateral held by [Lehman SF]."

42. The parties have agreed that the Master Agreement will be governed by and construed in accordance with the law of the State of New York, without reference to choice of law doctrine.

43. Sections 9-210, 9-608, and 9-615 of the New York Uniform Commercial Code (the "UCC") mandate that a secured party and/or successor provide an accounting upon request of the debtor.

44. Upon information and belief, Lehman SF may have disposed of all or part of the Posted Collateral to third parties, and to the extent is has done so it has failed to remit any proceeds received on account of such disposition to Royal Bank.

45. Consequently, Royal Bank is entitled to an order of this Court directing Lehman SF to provide a full accounting of any disposition of the Posted Collateral, including a full accounting of any funds received by Lehman SF with respect to any disposition of the Posted Collateral.

## FOURTH CLAIM FOR RELIEF

### Injunction

46. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 45 as if set forth at length herein.

47. Upon information and belief, Lehman SF may have sold, pledged, rehypothecated, assigned, invested, used, commingled or otherwise disposed of, or otherwise used in its business the Posted Collateral it held solely as collateral security with respect to Royal Bank's potential obligations to Lehman SF under the Swap Agreement.

48. Upon an Event of Default, as defined in the Master Agreement, Lehman SF ceased to have any further right (to the extend it ever did) to sell, pledge, rehypothecate, assign, invest, use, commingle or otherwise dispose of, or otherwise use in its business the Posted Collateral.

49. To the extent Lehman SF at any time sold, pledged, rehypothecated, assigned, invested, used, commingled, or otherwise disposed of, or otherwise used in it business the Posted Collateral, any such disposition or use was always subject to Royal Bank's nonwaiveable right of redemption in and to the Posted Collateral.

50. Consequently, Royal Bank is entitled to an order of this Court directing Lehman SF to take all steps to reclaim the Posted Collateral from any and all contract counter-parties to whom Lehman SF may have sold, pledged, rehypothecated, assigned, invested, used, commingled or otherwise disposed of, or otherwise used in its business the Posted Collateral.

## FIFTH CLAIM FOR RELIEF

### Redemption

51. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 50 as if set forth at length herein.

52. Pursuant to Section 9-623 of the UCC, Royal Bank has the statutory right to redeem the Posted Collateral by tendering fulfillment of all obligations secured by the Posted Collateral and the reasonable expenses and attorneys fees (if any) described in Section 9-615(a)(1) of the UCC to the extend provided for in the Swap Agreement.

53. Royal Bank has tendered fulfillment of all obligations secured by the Posted Collateral and has tendered all reasonable expenses and attorney's fees (if any) described in Section 9-615(a)(1) of the UCC to the extent provided for in the Swap Agreement..

54. Upon information and belief, Lehman SF has not (i) collected the Posted Collateral under Section 9-607 of the UCC;(ii) disposed of the Posted Collateral or entered into a contract for its disposition under Section 9-610 of the UCC; or (iii) accepted the Posted Collateral in full or partial satisfaction of the Royal Bank's indebtedness to Lehman SF under the Swap Agreement under Section 9-622 of the UCC.

55. Furthermore, pursuant to Section 9-602 and 9-624 of the UCC, Royal Bank's right of redemption with respect to the Posted Collateral may not be waived.

56. Royal Bank therefore has the right to redeem the Posted Collateral and to seek this Court's assistance to exercise such right of redemption pursuant to Section 9-625(a) of the UCC.

57. Consequently, Royal Bank is entitled to an order of this Court enforcing Royal Bank's right to redeem the Posted Collateral, and directing Lehman SF to take all steps necessary to accomplish such redemption.

WHEREFORE, Royal Bank America respectfully requests judgment against Lehman Brothers Special Financing, Inc., be entered as follows:

SL1 874218v1/101445.00035

(a) On the First Claim for Relief, directing Lehman SF to immediately return all of the Posted Collateral to Royal Bank, to the extent the Posted Collateral is in the possession of Lehman SF;

(b) On the Second Claim for Relief, directing Lehman SF to immediately remit to Royal Bank the proceeds of any sale or other disposition of the Posted Collateral and any Distributions that it has failed to deliver to Royal on a timely basis, to the extent such proceeds and Distributions are in the possession of Lehman SF;

(c) On the Third Claim for Relief, directing Lehman SF to immediately provide a full accounting of: (i) any disposition of the Posted Collateral, (ii) all funds received by Lehman SF on account of any such disposition of the Posted Collateral and (iii) all Distributions that Lehman SF has received that it has failed to remit to Royal Bank;

(d) On the Fourth Claim for Relief, directing Lehman SF to immediately take any and all steps to reclaim the Posted Collateral from any and all contract counter-parties to whom Lehman SF may have sold, pledged, rehypothecated, assigned, invested, used, commingled or otherwise disposed of, or otherwise used in its business the Posted Collateral;

(e) On the Fifth Claim for Relief, enforcing Royal Bank's right to redeem the Posted Collateral and directing Lehman SF to immediately take all steps necessary to accomplish such redemption;

(f) Awarding Royal Bank its attorneys' fees, costs and disbursements in prosecuting this action to the extent permitted by law; and

 (g) Granting such other and further relief as is just.

Dated: New York, New York
   October 23, 2008

              STEVENS & LEE, P.C.

              By: /s/Alec P. Ostrow
                Alec P. Ostrow
                Constantine D. Pourakis
                485 Madison Avenue, 20th Floor
                New York, New York  10022
                Telephone:  212-319-8500
                Facsimile:  212-319-8505
                Email: apo@stevenslee.com
                   cp@stevenslee.com

              Attorneys for Plaintiff Royal Bank America