**Hearing Date: November 18, 2008 at 10:00 a.m.**
**Objection Deadline: November 13, 2008 at 4:00 p.m.**

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York  10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Marc R. Abrams, Esq.
Terence K. McLaughlin, Esq.

Attorneys for Green Tree Servicing LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
                                          :
In re                                     :        Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC.,            :        08-13555 (JMP)
                                          :
                 Debtor,                  :
                                          :
---------------------------------------------------------- x

### MOTION OF GREEN TREE SERVICING LLC FOR ORDER PURSUANT TO SECTIONS 105(d)(2)(A) 365 OF THE BANKRUPTCY CODE DIRECTING DEBTOR LEHMAN BROTHERS HOLDING, INC. TO ASSUME FLOW SUBSERVICING AGREEMENT AND, IN THE INTERIM, FOR ORDER GRANTING ADEQUATE PROTECTION PURSUANT TO SECTION 364(c) OF THE BANKRUPTCY CODE

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Green Tree Servicing LLC ("**Green Tree**") respectfully files this motion (the

"**Motion**") for an order: (a) directing that Lehman Brothers Holding, Inc., a.k.a. Lehman Capital

("**LBHI**" and, together with the other affiliated debtors and debtors in possession, the

"**Debtors**"), assume a certain Flow Subservicing Agreement (as supplemented as set forth below,

the "**Servicing Agreement**") dated as of October 19, 2007, between Green Tree and LBHI

pursuant to sections 105(d)(2)(A) and 365 of chapter 11 of Title 11 of the United States Code

(the "**Bankruptcy Code**"); and (b) in the interim granting Green Tree adequate protection

pursuant to section 364(c) of the Bankruptcy Code in connection with the continued postpetition

4520948.5

performance of the Servicing Agreement until such time as LBHI assumes or rejects that

agreement.  In support of this Motion, Green Tree respectfully represents:

## **<u>INTRODUCTION</u>**

1.       Green Tree is party to an executory contract with LBHI pursuant to which

it services a portfolio of mortgage loans owned by LBHI.  Like many other non-debtor

counterparties to executory contracts, as a result of the imposition of the automatic stay under

section 362(a) of the Bankruptcy Code, since the Petition Date Green Tree has been compelled to

continue dutifully performing under that executory contract while it awaits LBHI's decision

whether to assume or reject.  But Green Tree's predicament is not at all comparable to that of

other non-debtor counterparties to executory contracts with the Debtors.

2.       What makes Green Tree's situation unique is that the executory contract at

issue here requires it to extend material sums on a recurring postpetition basis in credit to or for

the benefit of LBHI.  Had LBHI approached Green Tree in the first instance with a request to

extend sums of credit on a postpetition basis, LBHI could never have expected Green Tree to do

so without providing the adequate protection inducements set forth in section 364(c) or (d) of the

Bankruptcy Code.  Green Tree has been provided none of those protections.  And yet, it has been

(and will continue to be) forced to extend postpetition credit nonetheless because, by operation

of the automatic stay, it is obligated to continue performing the executory contract until such

time as it is assumed or rejected.  LBHI has yet to make known its intentions with regard to the

assumption or rejection of the underlying executory contract.

3.       Troubled by the current state of affairs, in which it is forced to extend ever

increasing amounts of credit to or for the benefit of LBHI without any form of adequate

protection or clarity as to LBHI's ultimate intentions with regard to the agreement, Green Tree is

compelled to bring this Motion.  Through this Motion, Green Tree respectfully requests that: (a)

4520948.5

pursuant to sections 105(d)(2)(A) and 365(d)(2) of the Bankruptcy Code, the Court direct LBHI

to make known promptly its intentions with regard to assumption or rejection of the Servicing

Agreement; and (b) in the interim direct LBHI to provide adequate protection as set forth in

sections 364(c)(1) through (3) of the Bankruptcy Code, as a condition to requiring Green Tree to

advance any further postpetition credit to or for the benefit of LBHI.

## PROCEDURAL BACKGROUND

4.      Commencing on September 15, 2008, and periodically thereafter (as

applicable, the "**Petition Date**"), LBHI and certain of its subsidiaries commenced with this Court

voluntary cases under the Bankruptcy Code.  The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

5.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("**SIPA**") with respect to Lehman Brothers Inc.

("**LBI**").  As a result, a trustee appointed under the SIPA is administering LBI's estate.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

**I.      The Execution of the Servicing Agreement And The Related Addendum**

7.      Prior to the Petition Date, LBHI owned certain mortgage loans secured by

mortgages or deeds of trust on residential real property (the "**Mortgage Loans**") and the

servicing rights relating to such Mortgage Loans.  From time to time prior to the Petition Date,

LBHI also originated or bought additional Mortgage Loans.

4520948.5

8.      On October 19, 2007, LBHI and Green Tree entered into the Servicing

Agreement pursuant to which Green Tree was retained to service the Mortgage Loans for the

benefit of LBHI.  A copy of the Servicing Agreement is annexed hereto as Exhibit A.

9.      That same day, LBHI and Green Tree entered into an Addendum to the

Servicing Agreement (the "**Addendum**") which set forth certain modified and/or supplemental

terms with regard to Green Tree's servicing of certain specified Mortgage Loans owned by LBHI

that were either delinquent, deficient or otherwise requiring of special handling (the "**Distressed**

**Mortgage Loans**").[1]  A copy of the Addendum is annexed hereto as Exhibit B.

## II.      Green Tree's Servicing Activities

10.      In its capacity as the servicer of the Mortgage Loans, Green Tree is

required to create and maintain a segregated custodial account (the "**Custodial Account**") for the

benefit of LBHI for the purpose of holding "all funds collected and received pursuant to the

Mortgage Loans."  Servicing Agreement at § 3.03.

11.      Green Tree is required to deposit into the Custodial Account within two

business days of its receipt each of the following types of proceeds (among others):

a.      all principal and interest payments from the underlying mortgagors
        associated with each Mortgage Loan (the "**Mortgagors**") (together
        with any prepayment charges).  Servicing Agreement at § 3.02(i),
        (ii);

b.      any cash received in connection with the liquidation of a defaulted
        Mortgage Loan (the "**Liquidation Proceeds**").  Servicing
        Agreement at § 3.02(iii);

c.      any proceeds from any insurance policies insuring any of the
        Mortgage Loans or the related mortgaged property ("**Insurance**
        **Proceeds**").  Servicing Agreement at § 3.02(iv);

---

[1]      On October 29, 2007, Green Tree entered into a second servicing agreement and related addendum
(collectively, the "**Lehman Bank Servicing Agreement**") with non-Debtor Lehman Brothers Bank, FSB
("**Lehman Brothers Bank**").  Because Lehman Brothers Bank is not a Debtor in these proceedings, the
Lehman Bank Servicing Agreement is not addressed directly by this Motion.

4520948.5

> d.   any awards or settlements in respect of a mortgaged property, to
> the extent not required to be released to a Mortgagor in accordance
> with the terms of the related mortgage loan documents
> ("**Condemnation Proceeds**").  Servicing Agreement at § 3.02(v).

12.     On a monthly basis, Green Tree is required to remit the contents of the

Custodial Account (net of certain reimbursements and fees as discussed in greater detail below)

to LBHI.  Servicing Agreement at § 4.01.

13.     Green Tree is also required to create and maintain a segregated Escrow

Account (the "**Escrow Account**") to hold all amounts constituting ground rents, taxes,

assessments, water rates, sewer rents, municipal charges, mortgage insurance premiums, fire and

hazard insurance premiums, condominium charges and any other payments required to be

escrowed by the Mortgagor pursuant to the mortgage documents.

## III.    Green Tree's Extension Of Servicing Advances

14.     Under certain circumstances, Green Tree is called on to extend credit,

non-recourse as to LBHI, on behalf of LBHI to third parties in order to protect LBHI's interests

in the Mortgage Loans (the "**Servicing Advances**").

15.     Servicing Advances are defined in the Servicing Agreements as:

> All customary, reasonable and necessary "out of pocket" costs and
> expenses (including reasonable attorneys' fees and disbursements)
> incurred in the performance by [Green Tree] of its servicing
> obligations, including, but not limited to, the cost of (a) the
> preservation, restoration and protection of the Mortgaged Property,
> (b) any enforcement or administrative or judicial proceedings,
> including foreclosures, (c) the management and liquidation of the
> Mortgaged Property if the Mortgaged Property is acquired in
> satisfaction of the Mortgage, (d) taxes, assessments, water rates,
> sewer rents and other charges which are or may become a lien
> upon the Mortgaged Property, LPMI Policy premiums, PMI Policy
> premiums and fire and hazard insurance coverage, (e) in
> connection with the liquidation of a Mortgage Loan which has a
> Superior Lien, any expenditures relating to the purchase or
> maintenance of any Superior Lien pursuant to Section 3.24 hereof,
> (f) any losses sustained by [Green Tree] with respect to the

4520948.5

liquidation of the Mortgaged Property and (g) compliance with the
obligations pursuant to the provisions of the Fannie Mae Guides.

*See* Servicing Agreement at Article I (definition of "Servicing Advances").

16.     While Servicing Advances are not provided directly to LBHI, the

economic substance of such transactions is to provide credit on behalf of LBHI.  But for the

existence of the Servicing Agreement, to the extent that LBHI desired to preserve its interests in

the Mortgage Loans and/or the underlying mortgaged properties, it would have to make such

advances itself.  Thus, each time Green Tree makes a Servicing Advance to a third party

pursuant to the Servicing Agreement is, in substance, no different than if it had extended funds

directly to LBHI for it to use to pay those same third parties itself.

17.     Green Tree's obligation to extend credit on behalf of LBHI in the form of

Servicing Advances arises from a number of provisions in the Servicing Agreement.  Those

provisions include, without limitation:[2]

> a.     Section 3.01, which provides that "[i]n servicing and administering
> the Mortgage Loans, [Green Tree] shall employ procedures
> (including collection procedures) and exercise the same care that it
> would employ and exercise in servicing and administering similar
> mortgage loans for its own account, giving due consideration to
> Accepted Servicing Practices where such practices do not conflict
> with the requirements of this Agreement and [LBHI's] reliance on
> [Green Tree]."

> b.     Section 3.02, which requires Green Tree to "use its best efforts,
> consistent with the procedures that [Green Tree] would use in
> servicing similar mortgage loans for its own account, to foreclose
> upon or otherwise comparably convert the ownership of such
> Mortgaged Properties as come into and continue in default and as
> to which no satisfactory arrangement can be made for collection of
> delinquent payments . . . ."  The section goes on to specify that
> Green Tree is obligated to commence foreclosure proceedings with
> respect to any Mortgage Loan for which there remains a delinquent

---

[2]     The Servicing Agreement makes clear that Green Tree is not obligated to make Servicing Advances to pay
defaulted principal and interest owed to LBHI by the Mortgagors.  *See* Servicing Agreement at § 4.03.

4520948.5

payment for a period of ninety days (90).  The section also specifies that Green Tree shall bear the cost of any foreclosure proceeding, subject to its right to seek reimbursement consistent with the terms of the Servicing Agreement.

c.    Section 3.09(a), which requires Green Tree to ensure that sufficient amounts are escrowed (for those Mortgage Loans that include an escrow feature) to cover all "ground rents, taxes, assessments, water rates, sewer rents, and other charges which are or may become a lien upon the Mortgaged Property" together with "fire and hazard insurance coverage" (collectively, the "**Property Charges**").  The section goes on to state that Green Tree "assumes full responsibility for the timely payment of all [Property Charges] irrespective of each Mortgagor's faithful performance in the payment of same . . ."

d.    Section 3.09(b), which provides that to the extent that a Mortgage Loan does not include an escrow feature to cover Property Charges, Green Tree "shall make advances from its own funds to effect payment of all Property Charges upon receipt of notice of any failure to pay on the part of the Mortgagor, or at such other time as [Green Tree] determines to be in the best interest of [LBHI], provided, that in any event [Green Tree] shall pay such charges on or before the earlier of (a) any date by which payment is necessary to preserve the lien status of the Mortgage or (b) the date which is ninety days after the date on which such charges first became due."

e.    Section 5.03, which provides that Green Tree "shall be required to pay all expenses incurred by it in connection with its servicing activities hereunder and shall not be entitled to reimbursement thereof except as specifically provided herein."

## IV.    The Servicing Fee

18.    In exchange for the servicing activities it performs pursuant to the Servicing Agreement (including, without limitation, the making of Servicing Advances), Green Tree is entitled to a monthly servicing fee (the "**Servicing Fee**") in an amount computed as either a percentage of the monthly unpaid principal associated with each of the Mortgage Loans or a fixed fee per Mortgage Loan.  Servicing Agreement at § 5.03 and Article I (definition of "Servicing Fee").

4520948.5

19.    Green Tree is permitted to retain the Servicing Fee -- on a loan by loan basis -- from the proceeds (if any) generated by each Mortgage Loan prior to their deposit in the Custodial Account. *See* Servicing Agreement §§ 3.04(ii); 5.03.  Alternatively:

> in the event [Green Tree] has elected not to retain the Servicing Fee out of any Mortgagor payments or Insurance Proceeds, Liquidation Proceeds or Condemnation Proceeds prior to the deposit of such Mortgagor payment or recovery in the Custodial Account . . . [Green Tree may make a withdrawal from the Custodial Account] to pay itself the related Servicing Fee from all such Mortgagor payments or other such recovery with respect to that Mortgage Loan.[3]

Servicing Agreement at § 3.04(ii)

## V.    Green Tree's Reimbursement Rights With Regard To Servicing Advances

20.    In addition to the Servicing Fee, Green Tree has certain reimbursement rights with respect to Servicing Advances made by it in the course of its servicing activities.  The precise parameters of Green Tree's reimbursement rights differ depending on the nature of the underlying Mortgage Loan for which the Servicing Advance was made.  Generally speaking, there are two categories of Mortgage Loans for which Green Tree may, from time to time, make Servicing Advances: the Distressed Mortgage Loans and those which have not been identified as Distressed Loans (the "**Non-Distressed Mortgage Loans**").  Green Tree's reimbursement rights with regard to each of these categories of Mortgage Loans are set forth below:

a.    Distressed Mortgage Loans: The Servicing Agreement and the Addendum provide for a further dichotomy in respect of Green Tree's right to reimbursement of Servicing Advances made in connection with Distressed Mortgage Loans.

i.    To the extent that Green Tree makes a Servicing Advance to cure a default and/or to pay off a Superior Lien in

---

[3]    Green Tree's withdrawal of funds from the Custodial Account to satisfy any unpaid monthly Servicing Fee must be done on a loan-by-loan basis.  As such, its ability to obtain payment of its monthly Servicing Fee is limited to the extent to which, if at all, sufficient monthly payments have been made by the underlying Mortgagor on account of each loan as to which Green Tree is entitled to a Servicing Fee.

4520948.5

connection with a Distressed Mortgage Loan, Green Tree is entitled to immediate reimbursement directly from LBHI for the full amount of the Servicing Advance within five (5) business days of the presentation of an invoice. Addendum ¶ 5.

ii.     With regard to any other Servicing Advance made by Green Tree on account of a Distressed Mortgage Loan, Green Tree has the right to seek reimbursement directly from LBHI on a quarterly basis of any unreimbursed Servicing Advances that, in the aggregate, exceed $2 million in a given quarter.[4]  *See* Addendum ¶ 7.[5]

b.     <u>Non-Distressed Mortgage Loans</u>: The Servicing Agreement provides Green Tree a limited right to withdraw funds from the Custodial Account to obtain reimbursement of any Servicing Advances made on account of a Non-Distressed Mortgage Loan. The right is limited to any Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds, REO Disposition Proceeds and other amounts received in respect of the related REO Property and such other amounts as may be collected by [Green Tree] from the Mortgagor or otherwise relating to the Mortgage Loan. Servicing Agreement at § 3.04 (iii). While the Servicing Agreement does not provide Green Tree with recourse directly to LBHI in connection with the reimbursement of this category of Servicing Advances, it expressly recognizes that Green Tree's right to reimbursement from such proceeds "shall be prior to the rights of the Owner." § 3.04(iii).[6]

---

[4]     Paragraph 7 of the Addendum (which supplements Section 3.04(iii) of the Servicing Agreement) provides: "if on the last day of any calendar quarter . . . the aggregate unreimbursed Servicing Advances on the Distressed Mortgage Loans exceeds Two Million Dollars ($2,000,000.00), [LBHI] shall reimburse [Green Tree] for the amount of the unreimbursed Servicing Advances in excess of Two Million Dollars ($2,000,000.00) within five Business Days of [LBHI's] receipt of an invoice from [Green Tree] for such unreimbursed advances."

[5]     Nothing in either the Servicing Agreement or the Addendum prohibits Green Tree from treating the remaining portion of any such Servicing Advances (*i.e.*, the portion that does not exceed $2 million) as a Servicing Advance made in connection with a Non-Distressed Mortgage Loan and seeking reimbursement of that portion in accordance with section 3.04(iii) or 3.06(ii). In other words, the provisions of Paragraph 7 of the Addendum expand upon, but do not contract, Green Tree's reimbursement rights.

[6]     The Servicing Agreement also provides that Green Tree may seek reimbursement of Servicing Advances from funds maintained in the Escrow Account, solely to the extent of any amounts contained in that account received on the related Mortgage Loans which represent late collections of Escrow Payments. Servicing Agreement at § 3.06(ii).

4520948.5

21.     As of the Petition Date, Green Tree was owed $1.8 million in unpaid Servicing Fees,[7] all of which represents unreimbursed Servicing Advances made in connection with Distressed Mortgage Loans for which LBHI is directly responsible for reimbursement pursuant to the Addendum.

22.     Green Tree conservatively estimates that it will continue to make postpetition Servicing Advances in connection with Distressed Mortgage Loans at a rate of approximately $ 300,000 to $500,000 per month over the course of the Debtors' bankruptcy cases until LBHI assumes or rejects the Servicing Agreement.

## VI.     LBHI's Termination Rights (And Responsibilities)

23.     LBHI has exclusive authority to terminate the Servicing Agreement with or without cause.  Servicing Agreement at § 9.01-9.02.  In the event of a default, it is permitted to terminate for cause.  Servicing Agreement at § 9.01.  None of the events of default, which are set forth in section 9.01(a)(i) through (xi), applies here.  Nor has LBHI ever contended otherwise.  Pursuant to section 9.02, LBHI also has the "sole option" to terminate the Servicing Agreement without cause upon 30 days written notice.  Servicing Agreement at § 9.02.  It also has sole authority to permit Green Tree to resign its position or assign its interest to a third party. Servicing Agreement § 8.03.

---

[7]     This figure, however, continued to fluctuate after the Petition Date.  As proceeds are collected by Green Tree from Mortgagors, Green Tree exercises its right of recoupment to deduct and retain its Servicing Fee and any unreimbursed Servicing Advances prior to remitting the balance to LBHI.  It is well established that the automatic stay does not prevent the exercise of a right of recoupment such as those exercised by Green Tree here.  *See Ferguson v. Lion Holdings, Inc.*, 312 F. Supp.2d 484, 502 (S.D.N.Y. 2004) ("Recoupment, on the other hand, is not subject to the automatic stay provisions of 11 U.S.C. § 362, 'because funds subject to recoupment are not the debtor's property.'") (citing *In re McMahon*, 129 F.3d 93 (2d Cir. 1997); *In re Malinkowski*, 156 F.3d 131 (2d Cir. 1998)).

4520948.5

24.     Significantly, were LBHI to terminate the Servicing Agreement without

cause, it would become obligated to reimburse Green Tree for *all* unreimbursed Servicing

Advances (not just those attributable to Distressed Mortgage Loans):

> Notwithstanding anything to the contrary contained herein, upon
> the termination or resignation of [Green Tree] without cause or the
> termination of this agreement without cause [LBHI] *shall
> reimburse* [Green Tree] immediately for *all Servicing Advances*
> that have made [sic] by [Green Tree] on the Mortgage Loans and
> that have not been reimbursed to [Green Tree] as of the date of the
> termination or resignation of [Green Tree] or the termination of
> this agreement.

Servicing Agreement at § 10.01 (emphasis added).

## **RELIEF REQUESTED**

25.     By this Motion, Green Tree respectfully requests that the Court direct that

LBHI assume the Servicing Agreement and related Addendum pursuant to sections 105(d)(2)(A)

and 365 of the Bankruptcy Code and, in connection with such assumption, cure any prepetition

defaults and provide Green Tree with adequate assurances of future performance.  In the interim,

Green Tree requests that the Court grant Green Tree adequate protection pursuant to section

364(c) of the Bankruptcy Code to provide reasonable protection to Green Tree in connection

with postpetition extensions of credit that it is compelled to make under the Servicing

Agreement.

4520948.5

## ARGUMENT

I.   **THE DEBTORS SHOULD BE DIRECTED TO PROMPTLY ASSUME OR REJECT THE SERVICING AGREEMENT.**

   A.   The Circumstances Call For A Prompt Assumption Or Rejection Of The Servicing Agreement.

   26.     Section 365 of the Bankruptcy Code permits a debtor to assume or reject any of its executory contracts or unexpired leases.  11 U.S.C. § 365(a).  If the debtor elects to assume an executory contract, however, the Bankruptcy Code requires the debtor to: (i) cure (or provide adequate assurance that it will promptly cure) any defaults under such contract; (ii) compensate (or provide adequate assurance that it will promptly compensate) the non-debtor party for any actual pecuniary loss resulting from such defaults; and (iii) provide adequate assurance of future performance under the contract.  11 U.S.C. § 365(b)(1).  While a debtor is typically entitled to defer a decision regarding assumption or rejection of an executory contract until anytime prior to the confirmation of a plan, section 365(d)(2) of the Bankruptcy Code permits the non-debtor counterparty to such an executory contract (in this case, Green Tree) to request that the debtor make that determination on a more accelerated basis.  11 U.S.C. § 365(d)(2).

   27.     Courts weigh a number of factors in considering a request pursuant to section 365(d)(2) to shorten the time in which a debtor may assume or reject an executory contract.  *See In re Adelphia Commc'n Corp.*, 291 B.R. 283 (Bankr. S.D.N.Y. 2003).  Those standards were summarized by Bankruptcy Judge Gerberas follows:

   The determination of what constitutes a reasonable time to assume or reject is within the bankruptcy court's discretion based on the particular facts of each case.

   The factors that have been considered in applying this discretion have been expressed in somewhat different ways, and in different

4520948.5

contexts.  An early articulation of factors to be considered, relying on earlier case law under the now-repealed Act, included:

(1) the nature of the interests at stake;

(2) the balance of hurt to the litigants;

(3) the good to be achieved;

(4) the safeguards afforded to the litigants; and

(5) whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary.

The more recent decisions have identified:

(6) the debtor's failure or ability to satisfy post-petition obligations;

(7) the damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code;

(8) the importance of the contract to the debtor's business and reorganization;

(9) whether the debtor has sufficient time to appraise its financial situation and the potential value of the assets in formulating a plan;

(10) whether there is a need for judicial determination as to whether an executory contract exists;

(11) whether exclusivity has been terminated; and

(12) above all, the purpose of Chapter 11, to permit successful rehabilitation of debtors.

291 B.R. at 292-93 (internal quotations and citations omitted).  *See also In re Burger Boys*, 94 F.3d 755, 760 (2d Cir. 1996); *In re Theatre Holding Corp.*, 681 F.2d 102, 105 (2d Cir. 1982); *In re Teligent, Inc.*, 268 B.R. 723, 738 (Bankr. S.D.N.Y. 2001) (Bernstein, C.J.)); *In re Beker Industries Corp.*, 64 B.R. 890 (Bankr. S.D.N.Y. 1986); *In re Midtown Skating Corp.*, 3 B.R. 194, 198 (Bankr. S.D.N.Y. 1980).  An analysis of the foregoing factors demonstrates the propriety of an order directing LBHI to make an assumption/rejection determination promptly.

4520948.5

i.      The Interests At Stake

28.      Green Tree submits that the first element, the "interests at stake," weighs

in its favor.  The business attributable to the Servicing Agreement was but a small component of

the Debtors' overall prepetition businesses.  Moreover, the Debtors do not appear to be pursuing

a reorganization of their businesses; rather they appear to be winding down their operations and

liquidating their assets.[8]  On the other hand, Green Tree has a strong interest in obtaining clarity

with regard to the Debtors' intentions for the Servicing Agreement before being forced to make

further naked extensions of postpetition credit.

ii.      The Balance Of Hurt To The Litigants

29.      The second element, which requires the Court to consider the balance of

hurt to the litigants, cuts in favor of Green Tree as well.  By operation of the automatic stay,

Green Tree is compelled to continue performing the Servicing Agreement.  In so doing, Green

Tree is forced to extend an ever-increasing amount of credit to or for the benefit of Lehman and

to incur a steadily increasing claim for reimbursement, while obtaining no countervailing

protection that it will be made whole.[9]  An order directing LBHI to make a prompt decision

whether the Servicing Agreement is valuable to its estate will provide both parties needed clarity

and put an end to the currently lopsided field of play.  While Lehman might prefer to defer its

determination of whether to assume or reject the Servicing Agreement until confirmation of a

---

[8]      LBHI has admitted in court filings that it is liquidating its assets.  "Since the Commencement Date, the
Debtor has been engaged in virtually round the clock negotiations in order to explore all avenues for a sale
or orderly liquidation of all or parts of the Debtor's business to preserve value for its stakeholders to the
greatest extent possible." Debtor's Motion for Order: (I) Authorizing Debtor to Obtain Postpetition
Financing Pursuant to Sections 363 and 364 of Bankruptcy Code, (II) Granting Liens and Superpriority
Claims to Postpetition Lenders Pursuant to Section 364 of Bankruptcy Code, and (III) Scheduling Final
Hearing at 2, *In re Lehman Brothers*, No. 08-13555 (S.D.N.Y. Sept. 17, 2008).

[9]      Green Tree's risk of not being made whole is mitigated, though only in part, by its right of recoupment.
That right, which is undisturbed by the automatic stay, entitles Green Tree to utilize proceeds received from
Mortgagors to satisfy unpaid Servicing Fees and unreimbursed Servicing Advances prior to remitting the
balance to LBHI.

4520948.5

plan, any inconvenience associated with an acceleration of that timing is more than offset by the

harm that Green Tree endures with each passing day until an assumption/rejection decision is

made.

### iii.    The Good To Be Achieved

30.    For the same reasons, the third element (the "good to be achieved")

weighs in favor of Green Tree as well.  As the court observed in *Adelphia*, this factor "is largely

a variant of the preceding factor."  *In re Adelphia*, 291 B.R. at 296.  Significantly, it is self

evident that Green Tree's objective in bringing this Motion is not simply to force LBHI to

assume the Servicing Agreement and, in so doing, obtain satisfaction on account of its

prepetition claims.  *See Adelphia*, 291 B.R. at 297 (noting that "[m]any executory contract

counter-parties in chapter 11 cases would like to get their contracts assumed (and, with that, their

prepetition debt paid early and in full)").  On the contrary, this Motion is brought to address the

more fundamental inequity associated with the present situation in which, constrained by the

automatic stay, Green Tree is compelled to continue making Servicing Advances on behalf of

LBHI pursuant to a contract that LBHI has yet to say whether it wishes to preserve.  Thus, just as

was the case in Adelphia, "the 'good to be achieved' is relieving [Green Tree] from sitting in

limbo for an inordinate amount of time . . ." *Id.*[10]

---

[10]    Significantly, the court in *Adelphia* observed that the various factors weighed by a court need not, and
usually do not, carry equal weight.  The court characterized the unfairness associated with stranding a non-
debtor contract counter-party in "limbo" as one of  the more dispositive factors.  *Id.* at 300.

4520948.5

iv.     The Safeguards Afforded to the Litigants

31.     The fourth factor considers the extent to which safeguards afforded to the

litigants could mitigate the need for an accelerated assumption/rejection determination.  Here,

there are no such safeguards in place.  If the Court were to grant that part of this Motion which

requests that Green Tree be provided adequate protection pursuant to section 364(c),[11] such

adequate protection could perhaps be viewed as a safeguard sufficient to mitigate the need for an

immediate determination by LBHI whether to assume or reject.  But in the absence of any such

adequate protection, or any other safeguards currently in place, Green Tree respectfully submits

that this factor cuts in its favor.

v.     The Debtor's Compliance With Contractual Obligations

32.     The fifth factor requires the Court to consider the extent to which LBHI is

currently complying with its contractual obligations.  As an initial matter, it is well understood

that "while postpetition performance is a *relevant* factor, it cannot properly be regarded as the

*only* consideration."  *Id.* at 298 (emphasis in original).  It appears through correspondence with

former LBHI representatives, however, that LBHI does not intend to comply with its postpetition

contractual obligations.

33.     On Monday, September 29, 2008, Eric Johnson, a Green Tree

representative, informed Leslee Gelber of Barclay's Capital that Green Tree had incurred

expenses for which it is entitled to reimbursement under the Servicing Agreement.  Ms. Gelber

responded the same day, denying the request.  "Lehman is in chapter 11 and will not be paying

any bills.  It is probably best to contact your legal counsel to see how you should be handling

these claims with the bankruptcy court."  Accordingly, it does not appear that LBHI intends to

---

[11]     *See* Argument Point II, *infra*.

4520948.5

honor its postpetition obligations.  Thus, the fifth factor supports Green Tree's request for an

immediate assumption or rejection of the Servicing Agreement.

> vi.      Damage Not Compensable Under The Code

34.      The sixth element - damage beyond compensation available under the

Code - also weighs in favor of Green Tree.  Here, the various rights provided to Green Tree

under the Bankruptcy Code (such as to assert prepetition unsecured claims, postpetition

administrative expense claims and/or to effectuate recoupment with regard to any proceeds

received from Mortgagors during the postpetition period before remitting the balance to LBHI)

would not fully compensate Green Tree.  Were it not for the operation of the automatic stay,

Green Tree would be in a position to consider withholding its own performance under the

Servicing Agreement, thereby limiting any further exposure it may have from LBHI on account

of unreimbursed Servicing Fees or Servicing Advances.  Instead, until such time as LBHI makes

a determination whether to assume or reject the Servicing Agreement, Green Tree is compelled

to extend real dollars in additional credit to or for the benefit of LBHI.  Where such advances are

made in connection with Distressed Mortgage Loans, Green Tree must take its chances to

recover those advances from the LBHI estate in bankruptcy dollars (at perhaps cents on the

dollar).  And because credit extended in connection with other forms of Servicing Advances is

non-recourse as to LBHI, the Bankruptcy Code does not provide a mechanism for Green Tree to

be made whole (other than to recognize its recoupment rights).  Instead, Green Tree must seek

compensation through Mortgagor collections, which are not guaranteed to be sufficient to fully

reimburse Green Tree.  In that regard, as the court observed in *Adelphia*, "this fact overlaps with

the two other factors of the balance of hardships and safeguards to reduce prejudice." *Id.*

> vii.      The Importance Of The Contract To The Debtors' Business
> and Reorganization.

4520948.5

35.     The seventh factor, which requires consideration of the importance of the contract to LBHI's business and reorganization, does not favor LBHI.  The Mortgage Loans and the cash streams generated from them are presumably valuable to LBHI's bankruptcy estate. Retention of the Servicing Agreement, in turn, is essential to preserving the Mortgages and ensuring that LBHI continues to enjoy those cash streams on an uninterrupted basis.  Retention of the Servicing Agreement is also essential to position the portfolio of Mortgage Loans for sale so that LBHI and its creditors can obtain maximum value from those assets.

36.     A rejection of the Servicing Agreement would not only subject LBHI to a substantial rejection damages claim of uncertain value,[12] it would also subject LBHI's estate to a claim for a constructive trust by Green Tree (which, if sustained, could also potentially impede LBHI's ability to sell its interests in the Mortgage Loans).  Specifically, if LBHI were to reject the Servicing Agreement, Green Tree would assert a constructive trust over any future proceeds received by LBHI (or any subsequent transferee) directly from Mortgagors to the extent necessary to satisfy in full any unpaid Servicing Fees or unreimbursed Servicing Advances owed to Green Tree pursuant to the Servicing Agreement and the related Addendum.  While Green Tree's ability to obtain a constructive trust is not guaranteed (and any uncertainty in that regard is yet another reason why LBHI should be directed to immediately assume or reject), Green Tree respectfully submits that there would be a sound basis for the imposition of such relief.

---

[12]     As noted above, under the Servicing Agreement, if LBHI were to terminate the Servicing Agreement without case (here, none of the "for cause" bases delineated in the agreement would be applicable), it will become directly liable for all unreimbursed Servicing Advances.

4520948.5

37.     Under New York law,[13] the party seeking a constructive trust generally

must show each of the following:  (1) a confidential or fiduciary relation; (2) a promise; (3) a

transfer in reliance thereon; and (4) unjust enrichment.  *See Sharp v. Kosmalski*, 351 N.E.2d 721,

723 (N.Y. 1976).  The New York Court of Appeals has observed that "[a]lthough the factors are

useful in many cases, constructive trust doctrine is not rigidly limited." *Simonds v. Simonds*, 380

N.E.2d 189, 194 (N.Y. 1978).  *See also Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 362 (2d Cir.

1999) ("[c]ourts do not insist that a constructive trust must fit within the framework of these

elements."); *In re Koreag, Controle Et Revision S.A.*, 961 F.2d 341, 353 (2d Cir. 1992) ("[T]he

absence of any one factor will not itself defeat the imposition of a constructive trust when

otherwise required by equity . . . .  New York courts have consistently stressed the need to apply

the doctrine with sufficient flexibility to prevent unjust enrichment in a wide range of

circumstances.").

38.     Here, Green Tree submits that it would be able to demonstrate each of the

elements for the imposition of a constructive trust in the event LBHI were to reject the Servicing

Agreement.  As to the first element, Green Tree has a confidential or fiduciary relationship with

LBHI.  The Servicing Agreement expressly states that Green Tree services the Mortgage Loans

"in trust for" and "for the benefit of" LBHI.[14]  The Servicing Agreement also expressly provides

that Green Tree must maintain and administer the Custodial Account and any Escrow Account

---

[13]     New York law applies because the property upon which Green Tree possesses a constructive trust (*i.e.*, the Custodial Account and/or the underlying proceeds remitted by Mortgagors) is in New York.  *See In re Howard's Appliance Corp.*, 874 F.2d 88, 94 (2d Cir. 1989) (holding that the situs of the property at the commencement of litigation upon which a constructive trust is sought determines which state's law will apply).  *See also Collier on Bankr.* ¶ 544.02 at 544-13 to 544-14 (under section 544, "the tendency of the courts is to treat the law of the situs of the property at the commencement of the case as governing").

[14]     *See* Servicing Agreement at § 2.01.

4520948.5

"in trust for" LBHI.[15]  *See In re Ames Department Stores, Inc.*, 274 B.R. 600, 627 (Bankr.

S.D.N.Y. 2002) ("Under New York law, a fiduciary relationship exists when a person is under a

duty to act or render advice for another's benefit.  To determine the existence of a fiduciary

relationship, New York courts focus on whether one person has placed trust or confidence in

another who thereby gains a resulting superiority or influence over the first.").

   39. The second element for the imposition of a constructive trust would also

be met in the event LBHI were to reject the Servicing Agreement.  The Servicing Agreement and

related Addendum contain express provisions setting forth Green Tree's right to utilize proceeds

remitted from Mortgagors under varying circumstances to obtain reimbursement for unpaid

Servicing Fees and/or unreimbursed Servicing Advances.[16]  The third element also would be

easy to demonstrate.  Transfers of property in reliance on the foregoing promises occur every

time Green Tree extends non-recourse credit to a third party in the form of a Servicing Advance

for the benefit of LBHI.

   40. Finally, in the event LBHI were to reject the Servicing Agreement and

remove Green Tree as the servicing agent, the element of unjust enrichment would be manifestly

demonstrated.  Under the parties' relationship, proceeds collected from Mortgagors are received

in the first instance by Green Tree and ultimately deposited by it into the Custodial Account.

Either prior to deposit into the Custodial Account or prior to remission of the contents of that

account to LBHI, Green Tree is permitted to deduct and retain those proceeds which are

available, on a loan-by-loan basis, to pay its Servicing Fee and/or to reimburse it for any

Servicing Advances made on account of that Mortgage Loan.  Were LBHI to reject the Servicing

---

[15] *See, e.g.,* Servicing Agreement at §§ 3.03, 3.05.

[16] *See*, *supra*, at ¶¶ 17-20 (citing Servicing Agreement §§ 3.04(ii), 3.04(iii), 5.03; Addenda ¶¶ 5, 7).

4520948.5

Agreement and come to receive proceeds directly from Mortgagors without such funds first passing through Green Tree, LBHI would be unjustly enriched to the extent of any proceeds it receives which should otherwise be paid to and retained by Green Tree to satisfy unpaid Servicing Fees and unreimbursed Servicing Advances.  The Servicing Agreement makes this perfectly clear in section 3.04(iii) where it recognizes that Green Tree's right to apply funds received from Mortgagors to satisfy unreimbursed Servicing Advances (in accordance with the terms of the Servicing Agreement) "shall be prior to the rights of the owner."

41.     The same unjust enrichment would result if LBHI were to convey to a subsequent transferee its rights to the Mortgage Loans following a rejection of the Servicing Agreement.  The injustice of that scenario would be particularly acute inasmuch as such a subsequent transferee might dispute Green Tree's claim of an interest in proceeds received from the Mortgagors and/or the transferee's obligation to remit to Green Tree that portion of such proceeds which is necessary to reimburse Green Tree for unpaid Servicing Advances and/or Servicing Fees.[17]

viii.     Sufficient Time In Which To Assume Or Reject

42.     The eighth factor requires the Court to consider whether the debtor has been afforded sufficient time to appraise its financial situation.  Green Tree acknowledges that this Motion asks LBHI to make an assumption/rejection determination less than two months after its Petition Date.  However, Green Tree respectfully submits that, for all of the reasons set forth elsewhere with regard to the other factors, such an accelerated timetable is appropriate under the circumstances.

---

[17]     Green Tree does not concede that any such dispute by a transferee would be meritorious.  Rather, Green Tree fully reserves any and all of its rights in that regard.

4520948.5

43.     Green Tree submits that the remaining factors do not have particular significance to the present matter.  For example, with regard to the ninth factor, there should not be any dispute as to whether the Servicing Agreement is an executory contract.  Plainly it is.  And as to the tenth factor, inasmuch as LBHI does not appear to be pursuing a reorganization but is instead winding down it business and liquidating its assets, an accelerated decision whether to assume or reject the Servicing Agreement would not have any impact on LBHI's ability to reorganize (or its exclusive right to file a reorganization plan).  *See Adelphia*, 291 B.R. at 300 (holding that this factor was of "minimal significance" where the executory contract "is not so critical to the Debtors' operations that their ability to reorganize (or their exclusive right to file a reorganization plan) will be affected in any significant way by their decision to assume or reject it.")

44.     For all of the foregoing reasons, Green Tree respectfully submits that LBHI should be directed to make a prompt determination as to whether to assume or reject the Servicing Agreement.

B.     Section 365(c)(2) Should Not Operate As A Barrier Where, As Here, Green Tree Consents To The Assumption.

45.     Section 365(c)(2) does not prohibit LBHI from assuming the Servicing Agreement, to the extent such agreement is characterized as a contract to provide debt financing or other financial accommodations for the benefit of LBHI.  11 U.S.C. § 365(c)(2).  Green Tree respectfully submits that section 365(c)(2) exists to protect a non-debtor party who is forced to extend postpetition credit upon the debtor's assumption of a prepetition contract.  *See In re Metro Affiliates, Inc.*, 2008 WL 656788, *6 (Bankr. S.D.N.Y. Mar. 6, 2008).  As the Bankruptcy Court held in Metro Affiliates:

> It is clear that Code § 365(c)(2) is intended to prevent a debtor in possession from assuming or assigning contracts that would

4520948.5

> require loans or financial accommodations to be made in the
> future, i.e., post-filing date. The definition of the term 'executory
> contract' as used in Code § 365(c)(2) must be interpreted with a
> view to the expressed intent of that subsection. Both the House
> and Senate Reports that deal with this subsection make clear that
> the purpose of this subsection was to prevent the trustee, here the
> debtor in possession, from requiring new advances of money under
> a pre-petition contract. *House Report No. 95-595*, 95th Cong., 1st
> Sess. 343 (1977). See *Senate Report No. 95-989*, 95th Cong., 2d
> Sess. 59 (1978). In furtherance of this purpose any prepetition
> agreement for a loan or financial accommodations that is
> unperformed on the petition date must per se be executory. Any
> other interpretation of Code § 365(c)(2) would be inconsistent with
> the purpose of the subsections that is to prevent lenders from being
> required to make **involuntary** post-petition loans.

*In re Metro Affiliates*, 2008 WL 656788 at *6. Here, Green Tree (as the party who Congress

sought to protect through the inclusion of section 365(c)(2)) is prepared to waive the protection

of that subsection.

46.     In addition, any argument for application of section 365(c)(2) is made all

the more tenuous in light of the fact that Green Tree's extension of credit (in the form of

Servicing Advances) is only one component of the Servicing Agreement. *See In re United

Airlines, Inc.*, 368 F.3d 720, 724-25 (7th Cir. 2004). Much of the activity performed by Green

Tree on a going-forward basis to service the Mortgage Loans is ministerial in nature, does not

involve extending credit, and plainly is not implicated by section 365(c)(2). Indeed, many of the

underlying Mortgagors do not default on their obligations with regard to the Mortgage Loans.

**II.     Until Such Time As LBHI Assumes Or Rejects The Servicing Agreement, Green
Should Be Provided Adequate Protection Pursuant To Section 364(c) Of The
Bankruptcy Code.**

47.     In the day-to-day discharge of its duties under the Servicing Agreement,

Green Tree is compelled to make Servicing Advances for the benefit of LBHI to protect LBHI's

interests in the underlying Mortgage Loans. To the extent LBHI does not promptly assume or

4520948.5

reject the Servicing Agreement, it should at least provide the protections contemplated by section 364(c)[18] of the Bankruptcy Code to induce a lender to extend credit postpetition.

48.    Section 364(c) of the Bankruptcy Code provides, in pertinent part:

If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt -

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

49.    Green Tree respectfully requests that it be afforded each of the foregoing protections to adequately protect it in connection with the numerous postpetition advances of credit that it has already been, and will continue to be, compelled to make to third parties on behalf of LBHI pursuant to the terms of the Servicing Agreement.

---

[18]    Section 364(a) of the Bankruptcy Code authorizes a debtor to incur unsecured postpetition credit or debt in the ordinary course of business allowable as an administrative expense under section 503(b)(1). 11 U.S.C § 364(a).  However, LBHI is in liquidation and has no ongoing business in which to incur postpetition credit from Green Tree in the ordinary course. *See, e.g., In re Drexel Burnham Lambert Group Inc.*, 112 B.R. 584, 587-88 (S.D.N.Y. 1990) ("[N]o priority could be granted for unsecured loans obtained by a liquidating debtor under the provisions of § 364(a) affording an administrative priority to loans obtained in the ordinary course of business: the debtor was not continuing the business as debtor in possession but to hold on to the asset until it could be *liquidated*...  It is true that the type of expenses incurred in this case are common to virtually all businesses.  *If the debtor was incurring these expenses to further the business in pursuit of reorganization, another conclusion might be warranted.  But debtor's incurrence of these expenses was not in the ordinary course of business*... [t]he process of selling the principal asset of the business is not within the day-to-day business of the debtor.") (emphasis in original) (internal citations omitted).  Section 364(b), in turn, permits a debtor, upon notice and a hearing, to obtain unsecured credit or incur such debt as an administrative expense claim.  11 U.S.C.§ 364(b).  However, but for the operation of the automatic stay, Green Tree would not be prepared to continue extending credit based solely on the receipt of an administrative expense claim.  Accordingly, Green Tree respectfully requests the Court grant each of the protections provided under section 364(c).

4520948.5

50.     While Green Tree submits that the protections of section 365(c)(2) of the Bankruptcy Code can be waived voluntarily by a creditor (and it requests that very relief, in the alternative, through this Motion as noted above), there is no doubt that section 365(c)(2) precludes LBHI from compelling Green Tree to continue extending postpetition credit under the executory Services Agreement where Green Tree is not willing to do so.  *See, e.g.*, *Metro Affiliates, Inc.*, 2008 WL656788 at *6 (noting that where, as here, the debtor is party to a prepetition executory contract to extend credit to or for the benefit of the debtor, the "debtor is barred by Code § 365(c)(2) from assuming the agreement in order to obtain the balance of any un-funded obligations.  The debtor in possession would have to look to other provisions of the Code for authority to borrow and repay money on secured or unsecured terms.")

51.     In short, to the extent that LBHI is not directed to immediately determine whether to assume or reject the Servicing Agreement and the associated Addendum, it should adequately protect Green Tree, through the grant of a superpriority administrative expense claim, a lien on otherwise unencumbered property and a junior lien on otherwise encumbered property before expecting Green Tree to continue extending postpetition credit for the benefit of LBHI.

4520948.5

## **NOTICE**

52.     No trustee or examiner has been appointed in these chapter 11 cases. Green Tree has served notice of this Motion in accordance with the procedures set forth in the order entered on September 22, 2008, governing case management and administrative procedures for the Debtors' affiliates [Docket No. 285] on (i) the counsel for the Debtors; (ii) the U.S. Trustee; (iii) the counsel for the Creditors Committee; (iv) the counsel for the Debtors' postpetition lenders; (v) the Securities and Exchange Commission; (vi) the Internal Revenue Service; (vii) the United States Attorney for the Southern District of New York; (viii) and all parties who have requested notice in these chapter 11 cases.  Green Tree submits that no further notice need be provided.

53.     No previous request for the relief sought herein has been made by Green Tree to this or any other court.

4520948.5

WHEREFORE, Green Tree respectfully requests that the Court grant the Motion

and:

      a.     enter an order directing the Debtors to assume or reject the Servicing

Agreement pursuant to sections 105(d)(2)(A) and 365(d)(2) of the Bankruptcy Code, or in the

alternative

      b.     enter an order directing the Debtors to provide adequate assurances

pursuant to section 364(c) of the Bankruptcy Code; and

      c.     grant such other and further relief as the Court deems just and proper.

Dated: October 24, 2008
     New York, New York

                      WILLKIE FARR & GALLAGHER LLP


                      /s/ Terence K. McLaughlin
                        Marc R. Abrams, Esq.
                        Terence K. McLaughlin, Esq.

                        787 Seventh Avenue
                        New York, New York  10019
                        Telephone: (212) 728-8000
                        Facsimile: (212) 728-8111

                        Attorneys for Green Tree Servicing
                        LLC