Jeffrey W. Levitan
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036-8299
(212) 969-3000
*Attorneys for Sixth Gear Funding Trust
and Sixth Gear Solutions Corp.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS, INC.,<br>*et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |

---

**MOTION TO SET PROMPT DATE FOR ASSUMPTION OR REJECTION
OF THE DEBTOR'S AMENDED AND RESTATED
MASTER REPURCHASE AGREEMENT WITH SIXTH GEAR**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Sixth Gear Funding Trust and Sixth Gear Solutions Corp. (together, "Sixth Gear") state the following as their motion for an Order, pursuant to 11 U.S.C. § 365(d)(2), requiring Lehman Commercial Paper Inc. ("LCPI") to assume or reject the Amended and Restated Master Repurchase Agreement dated May 9, 2008 (and related agreements) by a specified date within 15 days of the date of such Order.

**PRELIMINARY STATEMENT**

1.  Sixth Gear's sole business is the purchasing of automobile retail installment contracts from automobile dealers, of which approximately 89% has been funded by LCPI

1

through its Amended and Restated Master Repurchase Agreement ("MRA") dated May 9, 2008 with Sixth Gear. Sixth Gear seeks an order requiring LCPI to determine promptly whether to assume or reject the MRA and related agreements. Sixth Gear seeks this relief because LCPI's pre- and post-petition failures to honor its contractual funding obligations under the MRA will cause Sixth Gear to cease operations as a going concern.

2.  The regular funding from LCPI for which Sixth Gear contracted in May 2008 is essential to Sixth Gear's automobile financing operations. To remain in business, Sixth Gear's ongoing debt funding needs must be met either by the MRA or by a replacement facility. Sixth Gear cannot obtain funding under the MRA because LCPI has failed to comply with its obligations. At the same time, Sixth Gear cannot obtain a replacement facility because the MRA prohibits Sixth Gear from obtaining funds from any other lender while the MRA is in force, yet the automatic stay prevents Sixth Gear from exercising certain of its rights, including certain rights under the MRA, in order to contract with a new lender. In short, LCPI's actions have put Sixth Gear into an untenable situation, where it is facing imminent collapse unless LCPI either immediately assumes and performs the MRA or rejects it so that Sixth Gear can seek an alternative.

3.  LCPI already began defaulting under the MRA pre-petition, and has continued doing so post-petition. Thus it appears that rejection of the contract is a foregone conclusion and little purpose would be served by further delay. On the contrary, delay will serve only to injure Sixth Gear irreparably, as it will likely be forced to cease operations as a going concern.

4.  Sixth Gear has already laid off approximately 70 employees and ceased purchasing installment contracts as a result of LCPI's defaults. If Sixth Gear ceases to operate entirely, then, even in the unlikely event that LCPI wished to assume the contract, the choice

2

would be futile because Sixth Gear would no longer be able to perform under the MRA. Given its urgent financial situation, Sixth Gear cannot afford to wait months for LCPI to make a decision regarding the MRA.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction of this Motion pursuant to 28 U.S.C. §§ 1334 and 157 and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as that term is defined in 28 U.S.C. § 157.

6.    The statutory predicates for the relief sought herein are Bankruptcy Code § 365(d)(2) and § 105(d)(2)(A), and Bankruptcy Rules 6006 and 9014.

## FACTUAL BACKGROUND

7.    On October 5, 2008, LCPI filed a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code. It is operating as debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

8.    Sixth Gear began operations in mid-2007 as an independent automobile finance company providing financing solutions to leading automotive dealerships across the United States. It operates through four offices throughout the country, employing approximately 125 people (prior to its recent forced layoffs). (Houlihan Decl. ¶ 4.)

9.    Approximately 89% of the funding for Sixth Gear's purchases of automobile installment contracts comes from LCPI's purchase of Receivables under the MRA, which operates essentially as a secured revolving loan facility. (Houlihan Decl. ¶¶ 6, 9, Exh. 1.) LCPI

is the sole purchaser/lender under the MRA. Indeed, the MRA prohibits Sixth Gear from borrowing money from any other lender during the term of the agreement. (*Id.* ¶ 2, Exh. 1 § 5.6.) LCPI committed to purchasing $750 million in Receivables over the three-year term of the MRA. (*Id.* ¶ 9.)

10.     The procedure under the MRA is that Sixth Gear presents a bundle of Receivables to LCPI with a request that LCPI purchase its committed portion of the Receivables, for a stated amount on the next business day (the "Purchase Date"). LCPI is required to confirm the Transaction and to make the funds available to Sixth Gear on the Purchase Date. (Houlihan Decl. ¶¶ 6, 8.)

11.     Prior to September 2008, LCPI regularly honored Sixth Gear's Purchase Requests, advancing approximately $23 million to Sixth Gear in exchange for roughly $26 million in Receivables. (Houlihan Decl. ¶ 10.) In September 2008, however, three weeks before it filed for bankruptcy protection, LCPI began defaulting. (*Id.* ¶ 11.)

12.     On September 12, 2008, Sixth Gear submitted to LCPI a Purchase Request for $673,262.92 of Receivables. (Houlihan Decl. ¶ 12, Exh. 3.) On September 15, 2008, the Purchase Date, LCPI failed to make the funds available and stated that it declined to fund the request. (*Id.* ¶ 12.)

13.     On September 22, 2008, Sixth Gear submitted a Purchase Request for $1,925,966.65 of Receivables. (Houlihan Decl. ¶ 13, Exh. 4.) In its cover e-mail, Sixth Gear reminded LCPI that Sixth Gear relied on LCPI's funding in order to operate and would suffer substantial damages should LCPI refuse to honor its commitments under the MRA. Sixth Gear put LCPI on notice that Sixth Gear reserved all of its rights and remedies in the event LCPI did not honor the Purchase Request. (*Id.* ¶ 15, Exh. 4.) However, LCPI's response, in writing, was

4

"Lehman will not fund this request." (*Id.* ¶ 13, Exh. 5.)

14.  On September 30, 2008, Sixth Gear submitted a Purchase Request to LCPI for $3,076,202.52. (Houlihan Decl. ¶ 14, Exh. 6.) There was no substantive response. (*Id.* ¶ 14.)

15.  LCPI's defaults under the MRA continued post-petition. Sixth Gear submitted a post-petition Purchase Request to LCPI on October 14, 2008. (Houlihan Decl. ¶ 16, Exh. 7.) Again, the funding was not provided. (*Id.* ¶ 16.)

16.  LCPI has not offered any explanation for its failure to comply with valid purchase requests as required under the MRA. Nor has LCPI given any assurance that it might recommence performance of the MRA in the near future. (Houlihan Decl. ¶ 18.)

17.  As a result of LCPI's multiple defaults, Sixth Gear has not received any funding from LCPI since the last completed purchase on September 11, 2008. (*Id.* ¶ 17.) As Sixth Gear noted in its pre- and post-petition dishonored purchase requests, it is entirely dependent upon timely receipt of debt funding from LCPI and will not be able to remain in operation without such funding. If Sixth Gear does not receive the promised funding, or funding from a replacement lender, Sixth Gear will cease to operate as a going concern. Indeed, it has already laid off more than half of its work force, and it has stopped purchasing automobile retail installment contracts. (Houlihan Decl. ¶¶ 2, 19.)

18.  In the meantime, since its Chapter 11 filing, LCPI has been taking steps to extricate itself from its obligations as Administrative Agent and lender for the "several hundred loans" it manages. In most of those other loan arrangements, LCPI is only one of several participating lenders. (See Debtor's 10/6/08 Motion to Continue to Utilize its Agency Bank Account, Terminate Agency Relationships, and Elevate Loan Participants (Dkt. No. 3) ("Debtor's Motion"), ¶¶ 11-12, 25.). Thus, in those cases, the other lenders can be elevated to

5

pick up the lion's share of the funding that LCPI itself does not provide, and the borrowing parties need not suffer much loss as a result of LCPI's non-performance and extrication of itself from the arrangement. Here, in contrast, because there are no other lenders to make up for LCPI's non-performance, the resulting injury to Sixth Gear is uniquely harsh.

## RELIEF REQUESTED AND APPLICABLE AUTHORITY

19. In the unusual and urgent circumstances presented here, Sixth Gear seeks entry of an order, pursuant to Bankruptcy Code § 365(d)(2), setting a prompt date by which LCPI must assume or reject the MRA.

### A. The Court Has Discretion to Compel a Prompt Decision.

20. Although § 365(d)(2) generally permits debtors to determine whether to assume or reject executory contracts at any time before confirmation of a reorganization plan, it also allows a party to an executory contract to request an order compelling a debtor to make that determination within a specified shorter period of time. Section 365(d)(2) provides:

> In a case under Chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract ... of the debtor at any time before the confirmation of a plan *but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract ....*

11 U.S.C. § 365(d)(2) (emphasis added).

21. Congress enacted this provision to enable bankruptcy courts to grant relief to "prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-à-vis the estate." *In re Univ. Medical Ctr.*, 973 F.2d 1065, 1079 (3d Cir. 1992) (quoting House Report No. 95-595, 95th Cong., 1st Sess. at 348-49 (1977)); *see also* Senate Report No. 95-989, 95th Cong., 2d Sess. at 59 (1978). As explained in *In re Beker Indus.*

6

*Corp.*, 64 B.R. 890, 898 (Bankr. S.D.N.Y. 1986), *rev'd on other grounds*, 89 B.R. 336 (S.D.N.Y. 1988), this provision was enacted to relieve the detrimental uncertainty faced by obligees under executory contracts while the debtor delayed in deciding what to do, threatening the obligee with mounting post-petition costs. "Such doubt from the risk of rejection, when it concerns an entire enterprise and the jeopardizing of a major investment, can be paralyzing, and far outweigh the benefit to be derived by creditors." *Id.* at 898.

22. Indeed, the United States Supreme Court has recognized that "in certain circumstances, the rights of the nondebtor party ... outweigh the need of the debtor in possession for unlimited flexibility and breathing space." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 552 (1984). *See also In re Enron Corp.*, 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002) (the "breathing space" afforded to the debtor "is not without limits"); *In re Continental Airlines, Inc.*, 146 B.R. 520, 525 (Bankr. D. Del. 1992) (§ 365(d)(2) acts as a "safeguard" to "compensate and protect" the non-debtor party); *In re Templeton*, 154 B.R. 930, 935 (Bankr. W.D. Tex. 1993) (describing motion to compel assumption or rejection as a remedy for a non-debtor that is "suffering some loss").

23. Thus, this Court has broad discretion to set a reasonable time for LCPI to make its determination based upon the unique circumstances of this case. *See Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105 (2d Cir. 1982) ("What constitutes a reasonable time is left to the bankruptcy court's discretion in the light of the circumstances of each case."); *In re Teligent, Inc.*, 268 B.R. 723, 738 (Bankr. S.D.N.Y. 2001) (courts consider § 365(d)(2) applications on a "case-by-case basis in light of the broad purposes of the entire Bankruptcy Code.")

24. In exercising this discretion, courts have considered a variety of factors, expressed in different ways in different contexts. In one early articulation, such factors included: (1) the

7

nature of the interests at stake; (2) the balance of harm to the litigants; (3) the good to be achieved; and (4) the safeguards afforded to the litigants. *See In re Adelphia Commcns. Corp.*, 291 B.R. 283, 293 (Bankr. S.D.N.Y. 2003); *Beker Indus.*, 64 B.R. at 896.

25. More recent decisions have identified additional factors, such as the debtor's failure or ability to satisfy post-petition obligations; the damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code; and the importance of the contract to the debtor's business and reorganization. *See In re Burger Boys, Inc.*, 94 F.3d 755, 761 (2d Cir. 1996); *In re Adelphia*, 291 B.R. at 293.

26. The debtor's post-petition non-performance of the contract, especially when it visits detrimental or unfair results on the non-debtor party, is a strong factor favoring the imposition of a short deadline for the debtor to make its determination. *See In re Taber Farm Assocs.*, 115 B.R. 455, 457 (Bankr. S.D.N.Y. 1990) (debtor given 120 days from filing to decide to assume or reject a contract where debtor was already in default of the agreement); *In re Rebel Rents*, 291 B.R. 520, 531 (Bankr. C.D. Cal. 2003) (grounds existed to shorten statutory time to assume or reject where debtor had made no post-petition payments under the contract); *In re Shalom Hospitality Inc.*, 2002 WL 1001000, *3 (Bankr. N.D. Iowa May 9, 2002) (ordering debtor to make a decision to assume or reject before the filing of a reorganization plan, where debtor was in significant default on the contract and further delay would severely impact the non-debtor's financial stability); *In re Charrington Worldwide Enters., Inc.*, 98 B.R. 65, 70 (Bankr. M.D. Fla. 1989) (directing debtor to file motion within seven days to assume executory contract), *aff'd*, 110 B.R. 973 (M.D. Fla. 1990); *In re Petroleum Prods., Inc.*, 72 B.R. 739, 747 (Bankr. D. Kan. 1987) (appropriate to set a specific time within which the debtor must assume or reject a lease where debtor had failed to pay post-petition rent).

### B. LCPI Should Be Compelled to Make a Prompt Decision.

27. Here, too, consideration of these factors militates in favor of requiring LCPI to make a prompt decision whether to assume or reject the MRA in the urgent and compelling circumstances facing Sixth Gear.

28. LCPI has plainly ceased performing this executory contract, with increasingly grave consequences to Sixth Gear each week. As noted above, Sixth Gear faces a uniquely threatening situation because, unlike in most of LCPI's other lending relationships, LCPI is the sole lender under the MRA and its default thus will soon destroy Sixth Gear's business.

29. A balancing of the interests plainly weighs in favor of Sixth Gear. Sixth Gear will suffer irreparable damage should it be forced to wait indefinitely for LCPI to make a decision regarding the MRA. In the interim, absent the funding that was committed by LCPI, Sixth Gear will likely cease operating as a going concern – harm that would be beyond any compensation belatedly available under the Bankruptcy Code. This harm is already occurring: More than half of Sixth Gear's employees have already been laid off and installment contract purchases have ceased.

30. What makes this situation intolerable – but also remediable through the imposition of a quick assumption/rejection date – is that Sixth Gear's hands are tied, preventing it from obtaining any replacement facility to mitigate its injuries and save its business. The MRA bars Sixth Gear from entering into borrowing arrangements with other lenders, so long as it is in effect; and the automatic stay of § 362(a) prevents Sixth Gear from exercising certain of its rights, including its rights under the MRA. (Houlihan Decl. ¶ 2.)

31. Requiring LCPI to make a prompt determination will impose no undue burden on its estate or reorganization efforts. This single contract, but one of the "several hundred" loans

9

LCPI administers, is only a tiny component of its business. It is surely nowhere near as important to LCPI as it is to Sixth Gear.

32.     Moreover, it is almost a foregone conclusion that LCPI will elect to reject the MRA. LCPI's consistent conduct both pre- and post-petition, in repudiating its funding obligations without expressing any suggestion of performance in the future is a strong indicator of LCPI's intention in that regard. If so, it should do so sooner rather than later, to minimize any further harm to Sixth Gear.

33.     Indeed, LCPI is admittedly undertaking efforts to extricate itself from all its lending arrangements because it intends to "wind[] down its operations." (Debtor's Motion, ¶¶ 14, 20.) This, too, strongly suggests that it is only a matter of time before LCPI rejects the MRA. Unfortunately, Sixth Gear cannot afford to wait.

34.     It is unlikely that LCPI would elect to assume the MRA. Under § 365(b)(1) of the Bankruptcy Code, since it is already in default under the MRA, LCPI would not be able to assume the MRA unless it were to (a) cure the defaults, (b) compensate Sixth Gear for its pecuniary losses resulting from those defaults, and (c) provide adequate assurance of future performance under the MRA. *See* 11 U.S.C. § 365(b)(1). Given its prior and continuing repudiating conduct, and its stated intention of winding down its business, it is unlikely that LCPI would opt to assume the MRA, cure its defaults, compensate Sixth Gear for its losses, and resume full performance.

35.     In the unlikely event that LCPI wished to assume and perform the MRA, it would need to do so quickly, for otherwise the choice will be lost. Since Sixth Gear cannot go on much longer without funding, it will soon become unable to perform the MRA even if it were assumed. Thus, any further delay would negate the assumption option as a practical matter.

36. Since LCPI already seems to know in what direction it is headed, and already began heading in that direction pre-petition, it does not need any lengthy "breathing space" before making its assumption/rejection decision. There is no good to be served by delaying the decision, and thereby pushing another entity, Sixth Gear, into a liquidation in the interim, with devastating ripple effects on numerous employees, shareholders, automobile dealers, and drivers who rely on Sixth Gear's services. Surely such an illogical result could not be intended by the Bankruptcy Code. In fact, it would seem that is exactly what § 365(d)(2) was designed to avoid.

37. Requiring LCPI to make a decision about the MRA within 15 days will salvage some good from this unfortunate situation. A timely rejection of the MRA by LCPI will allow Sixth Gear to seek to obtain a replacement facility, which may help it to remain a going concern serving thousands of customers.[1] Obtaining a substitute facility would also serve to mitigate and reduce the damages for which LCPI might otherwise be liable as a result of its breaches, thus reducing the burden on the Debtor's estate.

38. Sixth Gear believes that the damages it has and will incur as a result of LCPI's breaches will exceed the aggregate Repurchase Price, and that Sixth Gear should be determined to own the purchased Receivables without the requirement of any additional payment to LCPI. Assuming LCPI intends to reject the MRA, Sixth Gear will seek to establish the amount of its damages arising therefrom, either through negotiations with LCPI or through litigation.

---

[1] Sixth Gear requests that any order authorizing the rejection of the MRA also permit Sixth Gear to file UCC-3 Financing Statement Amendments terminating LCPI's interests regarding the MRA, in order to enable Sixth Gear to seek a replacement facility.

## CONCLUSION

39.     In sum, in order to prevent needless, irreparable injury to Sixth Gear, Sixth Gear respectfully requests that this Court enter an Order requiring the Debtor to assume or reject the MRA within 15 days, so that either LCPI will resume full performance of its funding obligations or the rejection of the MRA will allow Sixth Gear to seek to obtain comparable funding from another lender.

## NOTICE

40.     Sixth Gear has provided notice of this Motion to the Standard Parties identified in the order entered on September 22, 2008 governing case management and administrative procedures in the *Lehman Brothers Holdings* case, no. 08-13555, docket no. 285.  Because of the nature of the relief requested and its limited application to Debtor LCPI, Sixth Gear respectfully submits that no further notice of this Motion need be given.

## NO PRIOR REQUEST

41.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, Sixth Gear respectfully requests entry of an order, pursuant to 11 U.S.C. § 365(d)(2), specifying a date within 30 days by which LCPI will be required to assume or reject the MRA and related agreements.

Dated: New York, New York
October 27, 2008

PROSKAUER ROSE LLP

By: *Jeffrey W. Levitan /kec*
    David M. Lederkramer
    Jeffrey W. Levitan
    Karen E. Clarke
    Victoria Loughery (not yet admitted)
1585 Broadway
New York, NY 10036-8299
(212) 969-3000
*Attorneys for Sixth Gear Funding Trust and Sixth Gear Solutions Corp.*

13