Jeffrey W. Levitan
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036-8299
(212) 969-3000
*Attorneys for Sixth Gear Funding Trust
and Sixth Gear Solutions Corp.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS, INC., | (Jointly Administered) |
| *et al.*, | |
| Debtors. | |

## **DECLARATION OF WILLIAM HOULIHAN**

WILLIAM HOULIHAN, subject to the penalties of perjury under 28 U.S.C. § 1746, declares the following:

1.  I am the Treasurer and Chief Financial Officer of Sixth Gear Solutions Corp., which is the sole beneficiary of Sixth Gear Funding Trust (together "Sixth Gear"). These two related entities are both parties to the Amended and Restated Master Repurchase Agreement ("MRA") dated May 9, 2008 with the Debtor, Lehman Commercial Paper Inc. ("LCPI"), as well as other related agreements. I make this declaration in support of Sixth Gear's motion, pursuant to 11 U.S.C. § 365(d)(2), for an order requiring LCPI to assume or reject the MRA and related agreements within 15 days.

2.  Sixth Gear seeks this relief because Sixth Gear will soon become unable to function as a going concern if LCPI continues in its failure to advance funds under the MRA.

1

For Sixth Gear to remain in business, its ongoing funding needs must be met either by the MRA or by a replacement facility. Sixth Gear cannot obtain funding under the MRA because LCPI has failed to comply with its obligations. It cannot obtain a replacement facility so long as the MRA is in force, because UCC-1 financing statements have been filed respecting the MRA. Further, the MRA (which was drafted by LCPI) expressly bars Sixth Gear from incurring any indebtedness other than through the MRA with LCPI. Thus, Sixth Gear may not borrow from any other lender while the MRA is in force.

3. LCPI began defaulting under the MRA pre-petition; it has since made no effort to cure, and is instead continuing not to honor its funding obligations post-petition. Thus it appears that rejection of the contract is a foregone conclusion and little purpose would be served by further delay. On the contrary, delay will serve only to injure Sixth Gear irreparably, as it will be unable to continue its business. If that happens, then even in the unlikely event that LCPI wished to assume the contract sometime down the road, Sixth Gear will have long ceased to be a going concern.

### Sixth Gear and Its Relationship with LCPI

4. Sixth Gear began operations in mid-2007 as an independent automobile finance company providing innovative financing solutions to leading automotive dealerships across the United States, based in part upon a commitment of $750 million in funding from LCPI. Sixth Gear's sole business is the purchasing of automobile retail installment contracts from automobile dealers. It operates throughout the country, through four offices employing 125 people. However, Sixth Gear has recently been forced to lay off approximately 70 employees as a result of LCPI's failure to fund its commitment.

5. Sixth Gear obtains the great majority of its funding from its credit facility with the Debtor, LCPI. Sixth Gear's only source of debt financing is LCPI, and thus Sixth Gear's business is entirely dependent upon the financing LCPI is obligated to provide pursuant to the MRA.

6. Sixth Gear's funding relationship with LCPI began in December 2007, with a Master Repurchase Agreement dated December 21, 2007. In May 2008, at LCPI's request, the parties restructured the arrangement as a series of purchases of Receivables, which consist of automobile retail installment sales contracts and the related proceeds from the contract obligors, by LCPI and later repurchases thereof by Sixth Gear at an interest rate of LIBOR + 1%. The net economic effect of this purchase/repurchase relationship is the same as a secured revolving loan. Sixth Gear paid a commitment fee of $1,875,000 in connection with the first use of the facility in May 2008.

7. The MRA is attached hereto as **Exhibit 1**. There are a number of other related agreements addressing Sixth Gear's role as servicing agent, the designation of a custodian of the chattel paper representing the purchased Receivables, and certain depository bank accounts, but I omit them here so as to avoid bulk. Annex A to the MRA, which contains definitions for it and the other related agreements, is attached as **Exhibit 2**. Sixth Gear Funding Trust is the "Company" that sells the Receivables to LCPI under the MRA, while Sixth Gear Solutions Corp. is the Seller of Receivables to Sixth Gear Funding Trust and the Servicer of the Receivables referenced in the MRA and related agreements. LCPI is both the Administrative Agent and the sole Committed Purchaser under the MRA.

8. The MRA works as follows: Sixth Gear aggregates Receivables into a bundle, and issues a Purchase Request to LCPI stating the purchase price and the Purchase Date on

which LCPI is to make the purchase (a "Transaction"). In economic effect, LCPI is advancing the loan principal in exchange for the contract Receivables. LCPI confirms the Transaction, specifying a Repurchase Date, and must transfer the funds by 4:00 p.m. the next business day. Although theoretically on each Repurchase Date the Transaction may be terminated by Sixth Gear paying the Repurchase Price and LCPI transferring the purchased Receivables back to Sixth Gear, in reality on each Repurchase Date, the Transaction is automatically deemed to be rolled into a new Transaction for which the new Repurchase Date is 30 days later. That arrangement is expected to continue until the end of the three-year term in May 2011, when Sixth Gear is to repay the entire Aggregate Repurchase Price and receive back all remaining Receivables. (Exh. 1 §§ 2.1, 2.2(c), 2.4, 14.10; Exh. 2 at 7 (Commitment Termination Date)).

9.   LCPI is the only lender in this credit relationship, committing a $750,000,000 facility to Sixth Gear. (See Exh. 1 signature page, Annex I). LCPI has advanced on average about 89% of the Receivables principal outstanding. (The amount advanced, as a percentage of the full amount of the Receivables, varies according to the creditworthiness of the borrower.) The remainder comes from Sixth Gear's own equity capital.

10.  For several months since the MRA's May 2008 effective date LCPI consistently provided funding through Transactions pursuant to Sixth Gear's Purchase Requests. On each Repurchase Date, the Transaction was rolled into the next Transaction, and the repurchase date was automatically extended 30 days. As a result, Sixth Gear's current aggregate debt to LCPI is about $23 million, due to be repaid as the Aggregate Repurchase Price as payments are received on Receivables, but in no event later than at the end of the three-year term in May 2011. The Receivables purchased by LCPI amount to about $26 million, to be reconveyed to Sixth Gear upon payment of that final Aggregate Repurchase Price in 2011 (unless earlier paid in full).

### **LCPI's Non-performance of the MRA**

11.  Beginning on September 15, 2008, LCPI failed to purchase Sixth Gear's Receivables after Sixth Gear had made valid Purchase Requests. LCPI's pre-petition defaults have continued post-petition as well.

12.  On September 12, 2008, Sixth Gear made a Purchase Request for $673,262.92. (**Exhibit 3**). After initially confirming the request by e-mail on September 12th, LCPI indicated by telephone, on September 15th, that it would not fund that request, and it did not.

13.  On September 22, Sixth Gear made another Purchase Request for $1,925,966.65, which included the Receivables in the first request. (**Exhibit 4**). In an e-mail on September 22, 2008, LCPI replied that "Lehman will not fund this request." (**Exhibit 5**).

14.  On September 30, Sixth Gear made a third Purchase Request for $3,076,202.52, which included the prior two requests. (**Exhibit 6**). Our regular LCPI contact, Dan Sullivan, responded only by saying that he was no longer the person to whom the request should be addressed and needed to find out who was. Sixth Gear heard nothing further after that, and the funding was not provided.

15.  In our second and third purchase requests, Sixth Gear emphasized that it relied on LCPI's funding to continue to do business; that it would be unable to continue as a going concern and would incur substantial damages if LCPI refused to honor its commitments; that it did not have any other source of financing; and that it was reserving all rights and remedies in the event LCPI did not honor the requests. (See Exhs. 4, 6).

16.  Following LCPI's filing its Chapter 11 petition on October 5, 2008, Sixth Gear made another purchase request. On October 14, 2008, Sixth Gear delivered a Purchase Request for $3,572,258.06, which included the Receivables in the first through third dishonored requests.

(**Exhibit 7**). The only response from LCPI was that Sixth Gear should talk to an Alvarez & Marsal employee. We contacted the Alvarez & Marsal representative and have received no response as of the date hereof. The requested – and due – funding was not provided.

17. As a result of LCPI's multiple defaults, Sixth Gear has not received any funding from LCPI since the last completed purchase on September 11, 2008.

18. LCPI has not offered any explanation or excuse for its failure to comply with valid purchase requests as required under the MRA. There has been no default or failure to meet a precondition by Sixth Gear. Nor has LCPI ever given any assurance that it might recommence performance of the MRA. In light of these pre- and post-petition failures, it is evident that LCPI has no intention of performing the MRA.

### The Consequences of LCPI's Continuing Default

19. Sixth Gear is entirely dependent upon timely receipt of debt funding from LCPI and will not be able to continue as a going concern without that source of funds. In light of LCPI's default, Sixth Gear may well have no choice but to cease operations. It has already laid off more than half of its work force and has stopped purchasing automobile retail installment contracts.

20. Although it seems clear that LCPI has no intention of performing the MRA, Sixth Gear is unable, due to the stay imposed by LCPI's bankruptcy filing, to seek its remedies for breach. Consequently, Sixth Gear cannot obtain a replacement facility, which the MRA bars Sixth Gear from doing, so long as the MRA is in force. (Exh. 1 § 5.6.)

21. In order to mitigate our damages, following LCPI's second pre-petition default, Sixth Gear began exercising its rights, including those under § 13.3 of the MRA, by redirecting the collected funds (payments on the Receivables) into a temporary suspense account. This took

two forms. First, on September 26, 2008, Sixth Gear caused the Receivables that had been designated as pledged to LCPI in the accounting system to be redesignated as owned by Sixth Gear. Although the Receivables were not physically moved from the custodian's possession, this redesignation will cause the collected funds flowing from those contracts to be directed to an account controlled by Sixth Gear. Second, on September 29, 2008, Sixth Gear caused the cash representing collected funds that had been deposited into the MRA's designated collection account to be moved into another suspense account under Sixth Gear's control.

22. From these collected funds in the suspense accounts, Sixth Gear will continue to distribute to itself the fees and available funds to which it is entitled under the MRA, in accordance with the MRA's provisions. The remainder of the suspense accounts are being maintained by Sixth Gear. However, Sixth Gear has ceased making the distributions to LCPI that would normally be made under the MRA on the 21st of each month. Sixth Gear will instead retain those amounts, which are significantly less than the funding amounts that LCPI has failed to provide. For example, the amount that was withheld from LCPI on October 21, 2008 was $674,844, whereas LCPI had failed to pay Sixth Gear over $3.5 million by that point.

23. Sixth Gear seeks a prompt determination under § 365(d)(2) in order to avoid ruinous consequences to Sixth Gear resulting from a pointless delay in LCPI's determination. Sixth Gear respectfully requests that the Court issue an order requiring LCPI to determine, within 15 days, whether it intends to assume the MRA and resume performance or, as seems a foregone conclusion, to reject the MRA so that Sixth Gear will at least be able to mitigate its damages by obtaining a replacement facility. Since LCPI clearly repudiated the contract pre-petition, and since it has continued its non-performance post-petition, there is little doubt about

which choice LCPI will eventually make and little point in allowing further delay, to Sixth Gear's great detriment and, quite likely, its demise.

Executed October 27th, 2008

WILLIAM HOULIHAN