Alan E. Gamza, Esq. (AG-2014)
Andrew P. Lederman, Esq. (AL-4108)
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Telephone: (212) 554-7800

Attorneys for Deutsche Bank AG, New York Branch

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x   Chapter 11
In re:                                                    )   Case No. 08-13555 (JMP)
LEHMAN BROTHERS HOLDINGS INC.,                            )
*et al.*,                                                 )   (Jointly Administered)
                                                          )
                                              Debtors.    )
---------------------------------------------------------- x

**SUPPLEMENTAL OBJECTION OF DEUTSCHE BANK AG, NEW YORK BRANCH TO DEBTORS' MOTION FOR AN ORDER AUTHORIZING AND APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTACTS AND UNEXPIRED LEASES**

Deutsche Bank AG, New York Branch ("DB"), by its undersigned attorneys, files this Supplemental Objection to the motion of Lehman Brothers Holdings Inc. ("LBHI") and LB 745 LLC ("LB 745"), debtors and debtors in possession (collectively, the "Debtors"), seeking, among other things, an order authorizing and approving the sale of certain assets and in connection therewith the assumption and assignment of certain executory contracts and unexpired leases (the "Sale Motion"), to the extent of the proposed Cure Payment with respect to the two subleases between DB and LBHI, and respectfully states as follows:

**Background**

1.  On September 15, 2008, (the "Petition Date"), LBHI commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On September 16, 2008, LB 745 ("LB 745" and with LBHI, the "Debtors") commenced a case under chapter 11 of

the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

2. On September 17, 2008, the Debtors filed the Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sale Procedures; (C) Approve a Break-up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets (the "Sale Procedures Motion") including an Asset Purchase Agreement that contemplates the sale of certain of the Debtors' assets to Barclays Capital Inc. ("Barclays").  On September 19, 2008, a hearing was held to approve the sale.  Thereafter, on September 19, 2008, an Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) The Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases (the "Sale Order") was entered by this Court.

3. In part, the Sale Order provides, "All counterparties to Closing Date Contracts shall have until the Cure Amount Objection Deadline to file an objection to the Cure Amounts (including as to the specific identity of such contracts)."  This Court established October 3, 2008, as the Cure Amount Objection Deadline.

4. Pursuant to Sale Procedures Motion, the Debtors designated a list of executory contracts and unexpired leases (the "Contract Schedule") that contained two subleases to which DB is counterparty for assumption and assignment to Barclay's.[1]  The subleases for the

---

[1] The October 3, 2008 objection deadline was extended until October 13, 2008 for parties to agreements, such as DB, for whom the Cure Payment was changed in an Amended Schedule.

722650v6  070636.0593                    2

premises known as 1301 Avenue of the Americas, New York, NY are described by Debtors as follows:

    (i)    Sublease dated March 24, 2006 between Deutsche Bank Securities, Inc. and Lehman Brothers Holdings Inc. (the 8th Floor Sublease); and

    (ii)    Sublease dated April 28, 2006 between Deutsche Bank Securities, Inc. and Lehman Brothers Holding Inc. (the 9th Floor Sublease" and with the 8th floor Sublease, the "Subleases").

5. On October 3, 2008, DB filed its Limited Objection of Deutsche Bank AG, New York Branch to Debtors' Motion for an Order Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases addressing the Cure Payments for the Subleases (the "Limited Objection"). (Docket No. 573)

6. DB supplements its Limited Objection as set forth herein.

### The Mechanics' Liens

7. By Notice of Default ("Notice of Default") dated October 8, 2008, DB was notified by its lessor, Pricewaterhouse Coopers, LLP ("PWC"), that 1301 Properties Owner, L.L.C., the owner of the building, had received two Notices Under Mechanic's Lien Law. The Notice of Default stated, in part, that on September 19, 2008, Henegan Construction Co., Inc. filed a mechanic's lien in the amount of $41,438.83 (the "Henegan Lien"). It further stated that on September 23, 2008, Campbell and Dawes LTD filed a mechanic's lien in the amount of $8,500.00 (the "Campbell Lien" and with the Henegan Lien, the "Liens"). A copy of the October 8, 2008, Notice of Default with attachments is attached hereto as Exhibit A.

8. The Liens indicated that they arose out of labor performed and materials furnished, at LBHI's request, to the space covered by the 9th Floor Sublease.

9. Pursuant to the Notice of Default, PWC alleged that DB is required, under the Agreement of Sublease between DB, as subtenant, and PWC, as sublandlord (the "DB

Sublease"), to discharge the Henegan Lien no later than October 21, 2008, and to discharge the Campbell Lien no later than October 23, 2008.

10. While DB does not believe that its failure to discharge the Liens is a default under the DB Sublease, if the Liens in fact create a default under the DB Sublease with PWC, it would similarly be in default under the Subleases.

11. Moreover, independent of whether the Liens create a default under DB's lease with PWC, LBHI had an obligation to bond or discharge the Liens. Contemporaneously with DB and LBHI's entry into the Subleases, DB, LBHI, PWC and 1301 Properties Owner, L.L.C., entered into two separate Landlord Consents To Sub-Sublease (each a "Landlord Consent") for the 8th Floor Sublease and the 9th Floor Sublease. Pursuant to the Landlord Consents, which are expressly incorporated into the Subleases by their terms, LBHI indemnified PWC for certain obligations including with respect to the Liens.

12. Consequently, in addition to payment of the outstanding amounts set forth in the Limited Objection, Barclay's is required to bond or discharge the Liens, which both relate to work performed for the benefit of LBHI prior to the assumption and assignment of the Subleases.

13. DB has provided Barclays with a Notice of Default with respect to the Liens. A copy of the Notice of Default is attached hereto as Exhibit B. In addition, DB orally notified Barclay's of the receipt of the Notice of Default.

14. DB is hopeful that resort to the Bankruptcy Court on an emergency basis will not be required but given the short deadline to cure the defaults prompt action by Barclay's is required.

15. In addition, it is not uncommon with large office buildings involving numerous leases, subleases and tenants and subtenants that a lessee or sublessee will receive an invoice

722650v6  070636.0593                             4

from a landlord, sublandlord, or sub-sublandlord for a charge or reimbursement of a charge, which is for the account of the tenant, subtenant or sub-subtenant, considerably after the service was used or performed or real property taxes were due. This has already occurred here, as DB recently received a reconciliation invoice from its lessor relating to subtenant's share of operating expense and real property tax charges for the period beginning in 2006 and, as set forth herein, most recently received a Notice of Default relating to services performed by contractors for LBHI in the space under the Subleases. Accordingly, DB cannot rule out the possibility that it will in the future receive invoices, by reason of the DB Sublease, for charges relating to the 8th and 9th floors for the period prior to the assignment of the Subleases to Barclays and for which LBHI would have been responsible to pay or reimburse under the Subleases. DB reserves all of its rights under the Subleases to seek payment for any such sums from Barclays.

16.    Finally, subsequent to DB filing the Limited Objection, DB received a payment from Barclays for the October rent due under the Subleases. As a result, the October rent is no longer outstanding.

WHEREFORE, for the reasons set for the herein, DB requests that the Cure Payments include the amounts set forth in the Limited Objection, as modified herein as well as such amounts necessary to discharge the Liens, that its right to seek payment from Barclays for future sums that come due under the Sublease for the period prior to the assignment to Barclays be preserved and that it be granted such additional relief as may be just and proper.

Dated: New York, New York
October 28, 2008

        Moses & Singer, LLP
        Attorneys for Deutsche Bank AG, New York Branch

        By: ___/s/ Alan E. Gamza_____

722650v6  070636.0593

5

                Alan E. Gamza, Esq. (AG-2014)
                Andrew P. Lederman, Esq. (AL-4108)
                MOSES & SINGER LLP
                The Chrysler Building
                405 Lexington Avenue
                New York, NY 10174
                Telephone: (212) 554-7800