| | |
|---|---|
| **BINGHAM McCUTCHEN LLP**<br>399 Park Avenue<br>New York, NY 10022<br>(212) 705-7000<br>Jeffrey S. Sabin<br>Ronald J. Silverman<br>Sabin Willett, *admitted pro hac vice*<br>Rheba Rutkowski, *admitted pro hac vice*<br><br>Counsel to Harbinger Capital Partners Special Situations Fund, L.P. and Harbinger Capital Partners Master Fund I, Ltd. (f/k/a Harbert Distressed Investment Master Fund Ltd.) | Hearing Date: November 5, 2008, 10:00 a.m.<br>Objection Deadline: October 31, 2008, 4:00 p.m. |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
In re                                                   :    Chapter 11
:
LEHMAN BROTHERS HOLDINGS INC., et al.,                  :    Case No. 08-13555 (JMP)
:
                                    Debtors.            :    (Jointly Administered)
:
---------------------------------------------------------------x

### RESPONSE AND JOINDER OF THE HARBINGER FUNDS TO MOTION OF THE WALT DISNEY COMPANY FOR APPOINTMENT OF EXAMINER PURSUANT TO SECTION 1104(C)(2) OF THE BANKRUPTCY CODE

Harbinger Capital Partners Special Situations Fund, L.P. and Harbinger Capital Partners Master Fund I, Ltd., f/k/a Harbert Distressed Investment Master Fund, Ltd., (collectively, the "Harbinger Funds") hereby responds to, and joins in, the Motion of The Walt Disney Company ("TWDC") for entry of an order in the Debtors' chapter 11 cases (the "Chapter 11 Cases") directing the appointment of an examiner pursuant to section 1104(c)(2) of the Bankruptcy Code [Dkt. No. 1143] (the "Examiner Motion"), but propose modified relief. In support of this response and joinder, the Harbinger Funds state as follows:

A/72728466.6

1.  The Harbinger Funds are substantial creditors of Lehman Brothers Holdings Inc. ("LBHI").  They are obligees under counterparty arrangements with Lehman Brothers Special Financing Inc. ("LBSF").  LBSF has substantial indebtedness to the Harbinger Funds, in the amount of $269,051,317[1], pursuant to certain International Swap Dealers Association, Inc. ("ISDA") swap agreements, including that certain Master Agreement dated as of July 28, 2006 by and between LBSF and Harbinger Capital Partners Special Situations Fund, L.P., and that certain Master Agreement dated as of May 20, 2005 by and between LBSF and Harbinger Capital Partners Master Fund I, Ltd. (f/k/a Harbert Distressed Investment Master Fund, Ltd.).  That indebtedness is, in turn, guaranteed by LBHI.[2]

2.  TWDC correctly describes the statutory right of the creditors in these Chapter 11 Cases to the appointment of an examiner.  Examiner Motion ¶¶ 15-18.  TWDC also correctly identifies a host of issues that require investigation and transparency.  The appointment of an examiner constitutes appropriate relief in these Chapter 11 Cases.  Examiner Motion ¶ 14.

3.  There is a particular need for an examiner in the Chapter 11 Cases, in light of numerous intercompany issues and the existence abroad of insolvency proceedings concerning Lehman affiliates.

4.  The Chapter 11 Cases are jointly administered.  A number of affiliates, some of them subject to foreign proceedings, engaged in complex intercompany transfers.  Potential

---

[1] This figure is exclusive of accrued interest, expenses and other costs and charges (whether arising by contract, applicable law or otherwise) and the Harbinger Funds reserve the right to revise this figure in the future.

[2] LBHI executed guarantees that unconditionally guaranteed "the due and punctual payment of all amounts payable" by LBSF to the Harbinger Funds under the swap agreements.  *See* Guarantee at ¶ A (Exhibit A to ISDA Agreement).

intercompany issues must be resolved. This can most efficiently be addressed by the appointment of an examiner charged to investigate intercompany relationships, transfers, rights, and to report to all of the creditors.

5.  In addition, it appears that the flow of information among the Debtors, the SIPA[3] trustee, the Lehman Brothers Inc. (Europe) ("LBIE") joint administrators (the "Joint Administrators") and Barclays Capital Inc. ("Barclays") is still delayed and problematic, which delay prejudices creditors, as they cannot ascertain where their securities and/or cash are held and what claims and/or rights they have with respect thereto. In the Debtors' Motion for authorization to implement retention and recruitment program (the "Retention Motion") [Dkt. No. 1278], the Debtors state that upon the commencement of the administration of LBIE, the flow of information stopped. Retention Motion ¶ 14. Recently, the Joint Administrators stated, at a presentation to creditors in New York on October 28, 2008 (convened by the U.S.-based hedge fund trade body, the Managed Funds Association)[4], that the flow of information from the Debtors and the SIPA trustee was not good. It also appears that the Debtors, the Joint Administrators and the SIPA trustee all recognize that they each have duties to their respective constituents. The Debtors have also indicated to this Court that under a transition services agreement with Barclays, Barclays agreed to extend to the Debtors the use of, and access to, facilities and personnel and provision of other assistance, but that the implementation of that agreement is a difficult process and former Lehman personnel have not necessarily been cooperative with respect to this process to date [*See* Oct. 16, 2008 Hrg. Tr. at 35, 47, 65 and 71].

---

[3] Securities Investor Protection Act.

[4] *See US hedge funds meet with Lehman administrator*, eFinancial News, October 29, 2008; Tom Cahill, *Lehman Administrator Says Some 'Frustrated' With U.K. Process*, Bloomberg, October 29, 2008.

It is likely that these respective legal entities have conflicting interests, and concerns regarding those interests are impeding information sharing.

6.      This problem may be particularly acute here, where not only are separate legal entities involved that are undergoing distinct insolvency proceedings, these proceedings are taking place in multi-national jurisdictions, complicating the ability for any one entity to compel disclosure of information from another. It is in this context that an examiner may be of great use. Examiners have been appointed by this Court in the past to exercise expanded powers to facilitate communications between courts and legal representatives in multi-national insolvency proceedings. *See, e.g.*, *In re Maxwell Communication Corporation plc*, No. 91 B 15741 (Bankr. S.D.N.Y., August 5, 1994) (Final Supplemental Order Appointing Examiner and Approving Agreement Between Examiner and Joint Administrators [Dkt. No. 49, January 16, 1992]); *Nakash v. Tsur*, No. 95 B 8101A (Bankr. S.D.N.Y., January 12, 1996) (Order Approving Cross-Border Protocol, Granting Comity to Jerusalem District Court Letter of Request, Setting Damages For Initial Stay Violation and Granting Nunc Pro Tunc Stay Relief in Respect of Alleged Further Stay Violations [Dkt. No. 35, May 24, 1996]). An examiner can be authorized to negotiate and otherwise facilitate the flow of information among separate Lehman entities (and perhaps others) and given conflicting interests between legal entities, may well be able to do so more effectively than existing estate fiduciaries. The examiner may also seek to use Bankruptcy Rule 2004 to obtain necessary information from Barclays. Accordingly, if the problem of information flow persists, it may be appropriate for the examiner to be additionally charged with the role of information facilitator, particularly in the cross-border context.

7. This relief should be structured in a practical way, however. The Harbinger Funds are sensitive to the Debtors' need to avoid the distraction of another set of professionals commencing investigations in the short term. The Debtors have indicated to this Court that the migration of personnel to Barclays, and the difficulty in translating expressions of support from senior Barclays management into real-time information flow at the desk level, have slowed the process [*See* Oct. 16, 2008 Hrg. Tr. at 71]. The Debtors and their financial advisors, Alvarez & Marsal, have also advised that they should be in a position to respond to requests for documentation and information and answer specific inquiries within 45-60 days from the day cooperation begins [*See* Oct. 16, 2008 Hrg. Tr. at 46, 47 and 67].

8. A practical compromise would be sensible. The Examiner Motion should be granted, but an examiner appointed thereunder should not start work until mid-December 2008. Meanwhile, Alvarez & Marsal should broadly disclose to creditors information concerning the intercompany funds flows. In addition, in the event that meaningful information flow between the Debtors and LBIE has not been achieved by mid-December 2008, the examiner's duties should include a facilitation role whereby the examiner can work to ensure that all estates get access to information needed for the benefit of all Lehman stakeholders, without prejudicing the rights of any estate or party in interest.

9. The Harbinger Funds are aware that the Debtors have sought a 60-day extension, through January 13, 2009, of the time to file their schedules, statements of financial affairs and related documents pursuant to Bankruptcy Rule 1007(c) [Dkt. No. 1244]. The request is inappropriate (the Harbinger Funds will file a formal objection in due course), and it should not delay the commencement of an examiner's work past mid-December 2008. In these cases there has been too little transparency, for too long. The estates are funding a massive number of

financial advisors, and if the problem is a lack of cooperation with Barclays and/or the Joint Administrators, the Debtors have ample and better remedies than further delay.

WHEREFORE, for the reasons set forth above and in the Examiner Motion, the Harbinger Funds respectfully request that the Court (i) grant the Examiner Motion; (ii) appoint an examiner; and (iii) direct the examiner not to commence investigations until on or after December 15, 2008.

Dated: New York, New York
October 31, 2008

**BINGHAM McCUTCHEN LLP**

By: /s/ Ronald J. Silverman
Jeffrey S. Sabin
Ronald J. Silverman
Sabin Willett, *admitted pro hac vice*
Rheba Rutkowski, *admitted pro hac vice*
399 Park Avenue
New York, New York 10022
Telephone No.: (212) 705-7000
Facsimile No.: (212) 752-5378

*Counsel to Harbinger Capital Partners Special Situations Fund L.P. and Harbinger Capital Partners Master Fund I, Ltd. (f/k/a Harbert Distressed Investment Master Fund Ltd.)*