Martin Flics, Esq.
Mary K. Warren, Esq.
LINKLATERS LLP
1345 Avenue of the Americas
New York, NY 10105
(+1) 212 903 9000 (Tel)
(+1) 212 903 9100 (Fax)

Attorneys for the Joint Administrators of the
Lehman European Group Administration Companies

**Hearing Date:** November 5, 2008 at 10:00 a.m.
**Objection Deadline:** October 31, 2008 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

In re                                              :   Chapter 11

LEHMAN BROTHERS HOLDING INC., et al.,              :   08-13555 (JMP)

                          Debtors.      :   (Jointly Administered)

------------------------------------------------x

**FINAL LIMITED OBJECTION OF THE JOINT ADMINISTRATORS OF THE
LEHMAN EUROPEAN GROUP ADMINISTRATION COMPANIES TO THE
DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 345(b), 363(b), 363(c) AND
364(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003 AND 6004 (A)
FOR AUTHORIZATION TO (i) CONTINUE USING EXISTING CENTRALIZED CASH
MANAGEMENT SYSTEM, AS MODIFIED, (ii) HONOR CERTAIN PREPETITION
OBLIGATIONS RELATED TO THE USE OF THE CASH MANAGEMENT SYSTEM
AND (iii) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS; (B)
FOR AN EXTENSION OF TIME TO COMPLY WITH SECTION 345(b) OF THE
<u>BANKRUPTCY CODE AND (C) TO SCHEDULE A FINAL HEARING</u>**

The Joint Administrators of the Lehman European Group Administration Companies[1] hereby object to the Debtors' Motion Pursuant to Sections 105(a), 345(b), 363(b), 363(c) and 364(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 (A) for Authorization to (i) Continue Using Debtors' Cash Management System; (ii) Honor Certain Prepetition Obligations Related to the Use of the Cash Management System; (iii) Maintain and Utilize Existing Bank Accounts and Business Forms; and (iv) Modify the Cash Management System, Including the Closing of any Existing Bank Account(s) and the Opening of any New Bank Accounts, as May Be Necessary in Connection with Section 345 of the Bankruptcy Code; (B) For Authorization and Directing Financial Institutions to Honor the Debtors' Request to Open or Close, as the Case May Be, the Bank Accounts or Additional Bank or Investment Accounts; (C) For an Extension of Time to Comply with Section 345(b) of the Bankruptcy Code; and (D) to Schedule a Final Hearing Granting the Relief Requested in the Motion on a Final Basis (as supplemented on October 10, 2008, the "Cash Management Motion"), and in support thereof state as follows:[2]

## BACKGROUND

1.     The Joint Administrators do not oppose the Debtors' implementation of a Cash Management System to increase the Debtors' liquidity and enhance the value of the Debtors' bankruptcy estates. The Joint Administrators continue to object to the Cash Management Motion and the October 20, 2008 Interim Order (the "Interim Order") [docket no.

---

[1]     The Lehman European Group Administration Companies include Lehman Brothers International (Europe), Lehman Brothers Holding plc, Lehman Brothers Limited, LB UK RE Holdings Limited, Storm Funding Limited, Mable Commercial Funding Limited, Lehman Brothers Europe Limited and the other Lehman group companies in insolvency processes in the UK over which partners in PricewaterhouseCoopers LLP are appointed.

[2]     Capitalized terms used but not defined herein shall have the meaning given to such terms in the Cash Management Motion.

1138], however, because the Debtors have not instituted safeguards to distinguish between funds that are property of the Debtors' bankruptcy estate and funds that are property of LBIE or LBIE's clients, to segregate the latter, and to assure vindication of valid property claims of LBIE or LBIE's clients.

2. Before and after the entry of the Interim Order, representatives of the Joint Administrators, with their counsel, have discussed the issues raised by the Cash Management System (and other issues) with the Debtors, their counsel and Alvarez & Marsal ("A&M"). The Joint Administrators are encouraged by these discussions, but resolution has not yet occurred. The Joint Administrators hope that the issues will be finally resolved in the near future. It should be noted that the Joint Administrators and PricewaterhouseCoopers have extended their cooperation to the Debtors, their counsel and A&M with respect to a variety of issues affecting both the Debtors and the Lehman European Group Administration Companies.

3. The Joint Administrators' objection to the Cash Management Motion stems from concerns that are unique to LBIE and the Lehman European Group Administration Companies. Pre-petition, Debtor LBHI functioned as these entities' banker and paymaster. (Cash Management Motion ¶ 14). For example, collections from European Subsidiaries, including LBIE and the other Lehman European Group Administration Companies, were settled into LBHI's UK Operating Account or other similar accounts with respect to non-US currency transactions. Id. Additionally, certain derivative, futures and foreign exchange transactions involving LBIE settled into LBI FX Accounts, rather than accounts maintained by LBIE in its name. Id. ¶ 15.

4. Because LBHI served as LBIE's bank, and because LBIE had no bank accounts other than those held at LBHI, the Joint Administrators' concerns about the Debtors'

3

Cash Management System are distinct from the concerns of other creditors. First, the operation of the Cash Management System had a unique impact on LBIE and the Lehman European Group Administration Companies because it provided for the transfer of LBIE cash to LBHI on a daily basis in a so-called cash "sweep." This cash sweep simply did not impact other creditors in the same way, or to the same extent, as LBIE. Second, unlike other creditors, funds intended for LBIE continued to be transferred by mistake to LBHI well after the petition date, pursuant to pre-existing payment instructions that despite the Joint Administrators' best efforts were not corrected until days, or sometimes weeks, after the Petition Date. Thus, funds intended for LBIE both prior to and after the petition date are held by LBHI as a direct result of the Debtors' Cash Management System. Unlike other creditors who claim that LBHI has their property as a result of derivative transactions or other contractual arrangements, LBHI has LBIE's property because of the operation of the very Cash Management System that Debtors seek to retain.

      5.      The Interim Order states in pertinent part:

> [N]othing in this Order shall be deemed to affect any entity's (and for the avoidance of doubt, including the representatives of other related insolvent estates) otherwise valid rights or claims under applicable agreements or applicable law, including *inter alia*, (i) valid setoff or recoupment rights under applicable law, (ii) valid netting rights under applicable law, (iii) valid right under applicable law to impose an administrative freeze on any Bank Account, (iv) valid argument that it is entitled to a constructive trust, (v) valid property or ownership rights (legal or equitable), or (vi) valid legal or beneficial interests in cash or other property, and nothing herein shall affect (x) any entity's (and for the avoidance of doubt, including the representatives of other related insolvent estates) actions to exercise such valid rights or assert such claims or (y) the right of the Debtors, the Creditors' Committee, or any entity with appropriate standing to controvert and/or defend against any entity's (and for the avoidance of doubt, including the representatives of other related insolvent estates) asserted rights or claims, including to assert that any exercise of a purported right is improper or any element of any claim (including constructive trust) has not been satisfied or proven . . .

(Interim Order at 5-6).

6. While the Interim Order's reservation of the property rights of representatives of insolvent estates is helpful, it does not ensure that property is preserved and segregated so that the Joint Administrators will have something identifiable to assert their claims over. Neither the Interim Order nor the Debtors' Cash Management System provide for the segregation of funds received in respect of LBIE or the other Lehman European Group Administration Companies. Neither the Interim Order nor the Debtors' Cash Management System articulates a methodology by which funds received after the Petition Date can be properly credited to and promptly returned to the true owner. Funds received post-petition by LBHI or LBI in respect of transactions that were clearly not entered into by the Debtors, but rather by one of the Lehman European Group Administration Companies, should not be commingled with the Debtors' funds. Instead, these funds should be segregated and treated as earmarked for the benefit of the relevant Lehman European Administration Companies in the same way that funds directed to Lehman Commercial Paper, Inc. were deemed to pass through its estate without being held therein. See Order Pursuant to Sections 105(a), 363(b), 363(c) and 541(d) of the Bankruptcy Code and Bankruptcy Rule 6004 Authorizing Debtor to (A) Continue to Utilize its Agency Bank Account, (B) Terminate Agency Relationships, and (C) Elevate Loan Participations at 2-3, In re Lehman Commercial Paper, Inc., No. 08-13900 (JMP) (Oct. 6, 2008).

7. Moreover, to the extent that the Debtors delay returning funds to the Joint Administrators that the Lehman European Group Administration Companies are entitled to, the delay deprives the Administration Companies of interest and investment income. Delay could also prejudice the Joint Administrators' ability to settle claims of creditors of their estates.

8. The Joint Administrators hereby reserve their right to assert proprietary and other claims on behalf of the Lehman European Group Administration Companies and the clients for whom one or more Lehman European Group Administration Companies acted as agent with respect to the funds and other property that have become subject to the Debtors' Cash Management System (both before and after the commencement of the administrations in the UK). The Joint Administrators further reserve all rights with respect to property of the Lehman European Administration Companies and their clients that is or may be located in the Debtors' Bank Accounts. The Joint Administrators ask that nothing in the final order approving the Cash Management Motion shall prejudice, impair, waive or otherwise affect rights of the Joint Administrators, the Lehman European Group Administration Companies, or their creditors.

**CONCLUSION**

WHEREFORE, for the reasons set forth above, the Joint Administrators respectfully request that the Court require, as a condition of any final relief that may be granted pursuant to the Cash Management Motion, that the Cash Management System safeguard the proprietary interests of the Lehman European Group Administration Companies and their clients in the manner set forth herein and grant such other or further relief as is just and proper.

Dated:    New York, New York
          October 31, 2008

                                    Respectfully submitted,

                                    Linklaters LLP

                                    By:    /s/ Martin Flics
                                    Martin Flics, Esq.
                                    1345 Avenue of the Americas
                                    New York, NY 10105
                                    (212) 903-9000 (tel)
                                    (212) 903-9100 (fax)
                                    martin.flics@linklaters.com

                                    *Attorneys for the Joint Administrators of the Lehman European Group Administration Companies*