Deborah D. Williamson (admitted *pro hac vice*)
Texas State Bar No. 21617500
dwilliamson@coxsmith.com
**COX SMITH MATTHEWS INCORPORATED**
112 E. Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone:  (210) 554-5500
Facsimile:  (210) 226-8395

**ATTORNEYS FOR TESORO CORPORATION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:  ) | |
| ) | **CHAPTER 11 CASE** |
| **LEHMAN BROTHERS HOLDINGS,** ) | |
| **INC., et al.,** ) | **CASE NO. 08-13555 (JMP)** |
| ) | |
| **Debtors.** ) | **(Jointly Administered)** |
| ) | |

**OBJECTION TO THE ASSUMPTION AND ASSIGNMENT
OF A FINANCIAL SERVICE AGREEMENT
BETWEEN LEHMAN BROTHERS INC. AND TESORO CORPORATION**

Tesoro Corporation (Tesoro) hereby submits this Objection[1] to a proposed

assumption and assignment of a Financial Services Agreement executed between Tesoro

and Lehman Brothers, Inc. (LBI)[2] to Barclays Capital, Inc. (Barclays, and sometimes

referred to as the "Purchaser"), and in support thereof would show the following:

---

[1] This Objection is filed pursuant to the Assignment Procedures as ordered by the Court on or about October 3, 2008. *See Order Granting Debtors' Motion Pursuant to Sections 105, 365, and 554(a) of the Bankruptcy Code to Establish Procedures for the Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases of Non Residential Real Property and Abandonment of Related Personal Property*, ECF Dkt. #628 (the "Assignment Procedures Order").  All capitalized terms used in this Objection but not defined herein shall have the meaning ascribed to such terms in the Assignment Procedures Order.

[2] LBI is a non-debtor affiliate of Lehman Brothers Holding, Inc. (LBHI) and the other affiliate debtors in the above referenced bankruptcy cases.  The Securities Investor Protection Corporation commenced a separate adversary proceeding (Adv. Proc. No. 08-01420, the "Adversary Proceeding"), through which it is liquidating LBI under Securities Investor Protection Act of 1970.  The Court has determined that LBI may be considered a Debtor for the purposes of the Adversary Proceeding and the Assignment Procedures Order.  *See Order Approving, and Incorporating by Reference for the Purposes of this Proceeding, an Order Authorizing the Sale of Purchased Assets and Other Relief in the Lehman Brothers Holdings, Inc. Chapter 11 Proceeding*, Adv. Proc. 08-01420, ECF Dkt. #3.

1.      Pursuant to the Assignment Procedures Order, if Barclays so elects, any of LBI's Financial Services Agreements shall be deemed a Purchased Contract without further Action by the Purchaser or the Debtors, provided that (1) such Financial Services Agreement constitutes a Related Contract pursuant to section 2.5 of the Purchase Agreement and (2) such Financial Services Agreement constitutes an executory contract under section 365 of the Bankruptcy Code.[3]

2.      Tesoro received a letter notification from Barclays on October 22, 2008 (the "Notification Letter"), indicating that it had requested the Debtors to assume and assign an agreement between Tesoro and LBI (the "Engagement Letter") to Barclays as part of a sale transaction approved by this Court in the Sale Order one month earlier.[4]

3.      This Objection is timely under the Assignment Procedures Order, which gives Tesoro 10 days from the date it received the Notification Letter from Barclays to object to such assumption and assignment of the Engagement Letter.

## I. BACKGROUND

4.      Tesoro retained LBI's services on November 8, 2007.  Specifically, Tesoro engaged LBI to provide financial advisory services in connection with a certain unsolicited transaction.[5]  The financial advisory services which LBI was to provide were

---

[3] *See* Assignment Procedures Order at 2-3.  Regardless of whether LBI is truly a debtor under the Bankruptcy Code, the Court and the parties have elected to treat LBI as such, at least with respect to the Adversary Proceeding and the proposed assumption and assignment of LBI's executory contracts and unexpired leases.  Thus, this Objection will treat LBI and the Engagement Letter between LBI and Tesoro accordingly.

[4] *See Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) The Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases*, ECF Dkt. #258 (the "Sale Order").  The Assignment Procedures Order requires Tesoro's Objection to be filed with the Court.  However, Tesoro received notification of the proposed assumption and assignment through a letter sent directly to Tesoro (not by an omnibus notification in the main case or the Adversary Proceeding).  Out of an abundance of caution, Tesoro files the Objection in both the above referenced bankruptcy case and in the Adversary Proceeding.

[5] That transaction was terminated 19 days later on November 27, 2007.

memorialized in an Engagement Letter and included, *inter alia*, evaluation of Tesoro's posture, deriving implementation strategies, and negotiating terms for that transaction (or any other Potential Transaction, as defined in the Engagement Letter).[6]  The Engagement Letter also provided that, at Tesoro's request, LBI would render opinions regarding the implications of Potential Transactions on Tesoro's business and equity holders.

5.    The Engagement Letter expires on its own terms no later than November 7, 2008, unless terminated earlier.  Since the initial Unsolicited Proposal was withdrawn, Tesoro has not received any other Unsolicited Proposals which would have obligated LBI to render additional financial advisory services, and, in fact, LBI has not rendered any such services since that initial Unsolicited Proposal was withdrawn on or about November 27, 2007.  Accordingly, even if the Engagement Letter technically is still "in effect" until November 7, 2008, LBI has no obligation left to perform.

## II. ARGUMENTS AND AUTHORITIES

A.  Summary of Objection

6.    Tesoro objects to the assumption of the Engagement Letter and its assignment to Barclays.  The Engagement Letter is not assumable because it is not an executory contract.  The purpose in granting a debtor the option to assume or reject executory contracts and unexpired leases is "to relieve the estate of burdensome obligations while at the same time providing 'a means whereby a debtor can force others to continue to do business with it when the bankruptcy filing might otherwise make them

---

[6] The Engagement Letter is not attached to this Objection because it contains confidential information. Tesoro discusses the terms of the Engagement Letter to the extent necessary to support this Objection but, in doing so, does not intend to waive any privileges or confidences contained in the Engagement Letter.

3

reluctant to do so.'"[7]  Neither of those purposes is served here.

7.    Furthermore, even if the Engagement Letter was technically executory as of the Petition Date, it will terminate under its own terms on November 7, 2008, most likely before this Court will have the opportunity to decide the merits of this Objection.[8] Thus, the relief requested will become moot.

8.    Finally, if the court concludes that the Engagement Letter was an executory contract as of the Petition Date, the agreement is a non-assignable personal service agreement.[9]  Personal service agreements are ones that arise out of a particular position of trust and confidence between the contracting parties.  As discussed *infra*, Tesoro sought LBI's services based on LBI's reputation and expertise.  LBI was to provide financial advisory services to Tesoro based on its trust and confidence in LBI's specialized skills, knowledge and expertise.  Under applicable state law and federal bankruptcy law, Tesoro cannot be compelled to accept performance of specialized financial advisory services from a party other than LBI without its consent.  By this Objection, Tesoro notifies all interested parties that it does not consent to such an assignment.

B.  The Agreement is Not Executory.

9.    Generally, in order for the debtor-in-possession to assume an agreement

---

[7] *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.),* 10 F.3d 944, 954-55 (2d Cir. 1993) (quoting *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1310 (5th Cir. 1985)).

[8] *See Counties Contracting & Constr. Co. v. Constitutional Life Ins. Co.,* 855 F.2d 1054, 1061 (3d Cir. 1988) ("A contract may not be assumed under § 365 if it as already expired according to its terms.").

[9] *See* 11 U.S.C. § 365(c)(1); *see also In re Compass Van & Storage Corp.,* 65 B.R. 1007, 1010 (Bankr. E.D.N.Y. 1986) (quoting *In re D.H. McBride & Co.,* 132 F. 285, 288 (S.D.N.Y. 1904)) ("Rights arising out of contracts involving a relation of personal confidence cannot be transferred *ad invitum*.").

4

under the Bankruptcy Code, the agreement must be an executory contract.[10]    The

Assignment Procedures Order expressly conditions any assignment upon a determination

that the contract is executory contract.    "The Bankruptcy Code furnishes no express

definition of an executory contract, . . . but the legislative history of § 365(a) indicates

that Congress intended the term to mean a contract 'on which performance remains due

to some extent on both sides.'"[11]    Most courts to address the issue have adopted the

"materiality test," or the "substantial performance test," which indicates that a contract is

executory if there exists some "obligation of both the bankrupt and the other party to the

contract [that] are so far unperformed that the failure of either to complete performance

would constitute a material breach excusing the performance of the other."[12]

        10.    The Engagement Letter is not an executory contract because there are no

obligations left unperformed such that the failure of one party to perform would excuse

any required performance by the other party.    Tesoro's only potential performance

obligation may be to pay fees which are contingent on the occurrence of certain future

---

[10] *See COR Route 5 Co., LLC v. Penn. Traffic Co. (In re Penn. Traffic Co.),* 524 F.3d 373, 378-79 (2d Cir. 2008); *see also* 11 U.S.C. §§ 365(a)&(d)(2), 1107. Indeed, this Court confirmed this threshold requirement in its Assignment Procedures Order, which indicates that one of the first steps in deciding whether the Debtors may assume and assign the Engagement Letter is to determine whether it constitutes an executory contract. *See* Assignment Procedures Order at 2-3.

[11] *Nat'l Labor Relations Board  v. Bildisco & Bildisco,* 465 U.S. 513, 523, 104 S.Ct. 1188, 1194, 79 L.Ed.2d 482 n.6 (1984) (citing H. R. Rep. No. 95-595, p. 347 (1977); S. Rep. No. 95-989, p. 58 (1978)); *see also Eastern Air Lines, Inc. v. Ins. Co. of Pa. (In re Ionosphere Clubs, Inc.),* 85 F.3d 992 (2d Cir. 1996) (adopting the *Bildisco* standard for defining an executory contract as one "on which performance remains due to some extent on both sides").

[12] Vern Countryman, *Executory Contract in Bankruptcy:  Part I,* 57 MINN. L.R. 439, 460 (1973). Professor Countryman's definition of executory is almost universally accepted. *See, e.g., In re Ionosphere Clubs, Inc.,* 85 F.3d at 996; *Medical Malpractice Ins. Assoc. v. Hirsch (In re LaVigne),* 114 F.3d 379, 387-88 (2d Cir. 1997) (citing Restatement (Second) of Contracts § 237, cmt. b (1979)); *In re Terrell,* 892 F.2d 469, 471 (6th Cir. 1989); *U.S. v. Floyd,* 882 F.2d 233, 235 (7th Cir. 1989); *Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp.,* 872 F.2d 36, 39 (3d Cir. 1989); *Draper v. Draper,* 790 F.2d 52, 54 (8th Cir. 1986); *Gloria Manufacturing Corp. v. Int'l Ladies' Garment Workers' Union,* 734 F.2d 1020, 1021 (4th Cir. 1984); *but see generally Cohen v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.),* 138 B.R. 687 (Bankr. S.D.N.Y. 1992) (rejecting Countryman's materiality test and instead adopting the approaches of Professors Michael T. Andrew and Jay Lawrence Westbrook) (citing Andrew, *Executory Contracts Revisited:  A Reply to Professor Westbrook,* 62 U. COLO. L.R. 1 (1991); Westbrook, *A Functional Analysis of Executory Contracts,* 74 U. MINN. L.R. 227 (1989)).

events unrelated to LBI's obligations under the Engagement Letter.[13]    None of those events had occurred as of the Petition Date.  The mere potential for future claims under the Engagement Letter does not make the contract executory, particularly when those obligations are unrelated to any obligations LBI may have under the Engagement Letter. *See, e.g., COR Route 5 Co., LLC v. Penn. Traffic. Co. (In re Penn. Traffic Co.),* 524 F.3d 373, 381-82 (2d Cir. 2008) (concluding that the non-debtor party's post-petition tendering of performance could not render a contract, which was executory on the petition date, as non-executory and thus not subject to assumption).    A contract's "executoriness" is determined on the petition date, not upon some later date or upon some triggering event which would spring to life one party's obligation to perform.[14]  Even if a contingent obligation is sufficient to make a contract executory, the only obligation that could be triggered under the Engagement Letter is a obligation to pay for services which LBI has already provided, should have already provided,[15] or will have no obligation to provide (due to the termination of the Engagement Letter).  A potential obligation by one party to pay money to the other, standing alone, is not sufficient to render a contract executory.[16]    An executory contract requires a finding that obligations remain unperformed to some extent on *both* sides.[17]  Because there are no obligations left

---

[13] Nothing herein shall constitute an admission that Tesoro owed any fees as of the Petition Date or will owe any fees after the expiration of the Engagement Letter by its own terms.

[14] *See id.*  The court acknowledged, however, that some post-petition events such as the termination of the contract according to its own terms may render assumption impossible.  *See id.* at 381 (citing *Counties Contracting & Constr. Co. v. Constitutional Life Ins. Co.,* 855 F.2d 1054, 1061 (3d Cir. 1988)).

[15] Tesoro does not contend that LBI has any unperformed obligations under the terms of the Engagement Letter; however, if the Court finds to the contrary that the Engagement Letter *is* an executory contract because such obligations exist, then Tesoro reserves the right to object to the Cure Amount, because LBI's lack of performance since the first Unsolicited Proposal was withdrawn may constitute a material breach of the Engagement Letter, thereby entitling Tesoro to a Cure Payment before the Engagement Letter may be assumed under § 365 of the Bankruptcy Code.

[16]  *See S. Chicago Disposal, Inc. v. LTV Steel Co. (In re Chateaugay Corp.),* 130 B.R. 162, 165-66 (Bankr. S.D.N.Y. 1991).

[17] *See Bildisco & Bildisco*, 465 U.S. at 523, 104 S.Ct. at 1194.

unperformed by either party as of the Petition Date, the Engagement Letter cannot be considered an executory contract that the Debtors may assume under § 365 of the Bankruptcy Code.

## C. The Agreement Will Terminate Before this Objection Will be Heard.

11.    As a practical matter, the Engagement Letter terminates according to its own terms on November 7, 2008. At that time, Tesoro will no longer have an obligation to use LBI's financial advisory services, and LBI will no longer have an obligation to provide financial advisory services under the Engagement Letter. While post-petition events ordinarily do not render contracts that was executory as of the Petition Date as non-executory, there are a few exceptions to the *Penn Traffic* rule. One such exception is the one implicated here, where the agreement terminates according to its own terms after the Petition Date.[18] In that event, there will be no obligations left to assume and assign, and both the attempted assumption and assignment and this Objection will be rendered moot.

## D. The Agreement is a Non-assignable Personal Service Contract.

12.    Even if the Court disagrees with the definition of executoriness as described above, and concludes that the Engagement Letter contains additional obligations of both parties that remain unperformed, LBI cannot assume and assign those obligations to Barclays. To the extent that the Engagement Letter *does* obligate LBI to continue providing financial advisory services to Tesoro, those services are in the nature of personal services, which cannot be assumed and assigned to Barclays without Tesoro's

---

[18] *See In re Penn. Traffic Co.,* 524 F.3d at 381 (citing *Counties Contracting & Constr. Co. v. Constitutional Life Ins. Co.,* 855 F.2d 1054, 1061 (3d Cir. 1988)).

2404282.1

consent.[19]  This exception to the general bankruptcy rule in allowing assignment of contracts is commonly known as the personal service contract exception.

13.    While the Bankruptcy Code generally empowers the trustee or debtor-in-possession to assume beneficial contracts or leases while rejecting those contracts or leases which pose more burden than benefit, this power is not absolute.[20]  Section 365(c) describes the personal service contract exception:

> The trustee [or debtor-in-possession] may not assume or assign any executory contract or unexpired lease of the debtor whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if –
>
> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>
> (B) such party does not consent to such assumption or assignment.[21]

14.    For the "applicable law" referenced in § 365(c)(1)(A), we turn to New York state law to determine whether such an exception exists for personal service contracts.  If "applicable law" excuses a promisee (in this case, Tesoro) from accepting performance from a party other than the original promisor (in this case, Barclays) the

---

[19] *In re D.H. McBride & Co.,* 132 F. 285, 288 (S.D.N.Y. 1904)) ("Rights arising out of contracts involving a relation of personal confidence cannot be transferred *ad invitum*.").

[20] *See Metropolitan Airports Comm'n v. N.W. Airlines, Inc. (In re Midway Airlines, Inc.),* 6 F.3d 492, 494 (7th Cir. 1993).

[21] 11 U.S.C. § 365(c)(1).  Some courts may disagree about how narrowly this exception should be construed, but there is no disagreement among those courts that the "applicable law" of § 365(c)(1)(A) implicates the personal service contract exception.  *See, e.g., In re Midway Airlines,* 6 F.3d at 494 (quoting *In re Bronx-Westchester Mack Corp.,* 20 B.R. 139, 143 (Bankr. S.D.N.Y. 1982)); *see also In re Matter of West Electronics,* 852 F.2d 79, 83 (3d Cir. 1988); *In re Pioneer Ford Sales, Inc.,* 729 F.2d 27, 29 (1st Cir. 1984); *In re Braniff Airways, Inc.,* 700 F.2d 935, 943 (5th Cir. 1983) (noting that § 365(c) may be applied more broadly to preclude the assignment of contract that would offend public policy).

promisee may prevent the assumption and assignment of the executory contract by withholding its consent.[22]

15.     Upon a review of applicable New York law, it is clear that, not only is the "nonassignability imprint" of personal services contracts firmly established, but it has also been extended to service contracts in the corporate context.[23]   The criteria for determining whether an agreement is for personal services has been described as follows:

> A contract which contemplates the performance of personal services *involving the exercise of special knowledge, judgment, taste, skill, or ability forms an exception to the general rule of assignability of contracts,* and is not assignable by the party under obligation to make such performance, without the consent of the other party to the contract, . . . ., or, unless the contract so provides; . . . .
>
> The mere fact, however, that a contract calls for the performance of labor or service is not sufficient to render it nonassignable, if, from a consideration of the entire contract, it appears that personality is not an essential consideration, and that only a certain object or result is contracted for and not the personal labor or services of the promissor.  Whether a contract requires the personal services of the contracting party depends on the intention of the parties as shown by the language and subject matter of the contract viewed in the light of surrounding circumstances.[24]

---

[22] *See In re Midway Airlines*, 6 F.3d at 494 (quoting 11 U.S.C. § 365(c)(1)(A)).  Once again, Tesoro does not concede that the Engagement Letter is an executory contract.  However, to the extent that this Court disagrees, and to the extent that a contract may be assigned without first assuming it, Tesoro hereby preserves its rights to withhold such consent to the assignment of its obligations.

[23] *See In re Compass Van & Storage Corp.,* 65 B.R. 1007, 1010 (Bankr. E.D.N.Y. 1986) (citing *New York Bank Notes Co. v. Hamilton Bank Note Engraving & Printing Co.,* 180 N.Y. 280, 293, 73 N.E. 48, 52 (1905)) (emphasis added).

[24] *See id.* (quoting 6A C.J.S. *Assignment* § 32 (1975)).

9

16.     While there is a cacophony of case law discussing these criteria,[25] few courts have actually applied these standards to financial advisory service agreements like the Engagement Letter between Tesoro and LBI.

17.     The case that sheds the most light on the applicability of the personal service contract exception is *Ford, Bacon & Davis, Inc. v. Holahan*.[26]   In that case, the principal issue before the Court of Appeals for the Fifth Circuit was how the personal service contract exception applied in the corporate context.   Particularly, the court questioned whether an executory contract for financial services could have been assigned to a bankruptcy trustee once the debtor was placed into bankruptcy.[27]   Under the contract in that case, the non-debtor party engaged the debtor to perform a litany of services, ranging from the preparation of engineering reports to financial services and legal advice.[28]   In light of the services provided under the agreement in that case, the Court concluded that the agreement was a personal service contract that could not be assigned or transferred without the non-debtor's consent.   The court gave the following rationale:

> Those services were not merely mechanical, capable of successful completion by someone picked at random, or necessarily by other firms engaged in the same type of business. We conclude that the [non-debtor], in engaging [debtor] to perform those services, *necessarily relied upon*

---

[25] See, e.g., *In re Compass Van & Storage Corp.,* 65 B.R. 1010-11; *Matter of Noonan,* 17 B.R. 793, 798 (Bankr. S.D.N.Y. 1982); *Foster v. Callaghan & Co.,* 248 F. 944 (S.D.N.Y. 1918) (contract between author and publisher); *Western Show Co. v. Mix,* 308 Pa. 215, 162 A. 667 (1932) *Devlin v. Mayor,* 63 N.Y. 8 (1875); *In re Miller,* 101 F.2d 323, 324 (6th Cir. 1939); *Florance v. Kresge,* 93 F.2d 784, 786-87 (4th Cir. 1938);  *see also In re Alltech Plastics, Inc.,* 71 B.R. 686, 688 (Bankr. W.D. Tenn. 1987); *In re Bronx-Westchester Mack Corp.,* 20 B.R. 139, 143 (Bankr. S.D. N.Y. 1982); *In re Taylor Mfg., Inc.,* 6 B.R. 370, 372 (Bankr. N.D. Ga. 1980); *Sackman v. Stephenson,* 11 N.Y. S.2d 69 (N.Y. Sup.Ct. 1939); *In re Rooster,* 100 B.R. 228 (Bankr. E.D. Pa. 1989).

[26]   311 F.2d 901 (5th Cir. 1962).   The distinction between the pre-Bankruptcy Code and present Code's treatment of property of the estate is not relevant to the decision reached by the Fifth Circuit.  This decision applies here to the extent that the Court determined how the personal service contract exception applies in the corporate context.

[27]   *See id.* at 902-03.  Once again, pre-Code notions of the bankruptcy estate are not relevant to the Fifth Circuit's analysis of the personal service contract exception.

[28] *Id.*at 904.

2404282.1

*[the debtor's] reputation. It placed confidence in [the debtor's] reputation for skill.*[29]

18.     This rationale applies here.  The Engagement Letter is a personal service contract because it refers to the retention of "Lehman Brothers" and, in particular, to the retention of LBI's specialized knowledge, skill, and judgment in providing financial advice in relation to Unsolicited Proposals and similar Potential Transactions.  At the time of the initial engagement, LBI claimed to be one of the premier financial advisors in the market.

19.     Tesoro did not engage LBI simply to obtain a particular object or result, such as the installation of a kitchen sink or to allow LBI to distribute Tesoro's products.  Tesoro retained LBI for the purpose of providing advice, and that decision was based on LBI's reputation, skill, and expertise.  To say that financial advisors are fungible is akin to taking the position that large law firms are fungible.  Were that the case, future debtors (or any other person, for that matter) could simply place their names into a queue and await the next available financial advisor, investment banker, or legal counsel, doing away entirely with a party's autonomy and contractual freedom.  The personal service contract exception, found under both New York and bankruptcy law,[30] saves us from that Orwellian possibility.

20.     Tesoro's intent to retain Lehman Brothers Inc., and not simply the next available financial advisor, is evident from the Engagement Letter.  The services which Lehman Brothers promised under the agreement include assistance in evaluating,

---

[29] *Id.* (emphasis added).

[30] While it is not clear whether the Assignment Procedures Order incorporates § 365 in its entirety (particularly § 365(c)(1) which contains the personal service contract exception by reference to applicable non-bankruptcy law), the applicable non-bankruptcy law—in this instance New York law—would still apply and would mandate the same result as described above.

2404282.1

negotiating, planning strategies, and even rendering its opinions. These services were not retained solely to procure an object or a result. These services require skill and expertise which will vary from firm to firm. Tesoro retained LBI to perform those services. To the extent that LBI has obligations left unperformed, which Tesoro does not concede, Tesoro does not consent to those obligations being performed by Barclays. Accordingly, assignment of the Engagement Letter must be denied pursuant to the personal services contract exception, as codified by 11 U.S.C. § 365(c)(1).

WHEREFORE, the Tesoro respectfully request that the Court sustain its Objection, deny the requested assumption and assignment of the Engagement Letter to Barclays, and grant such further and other relief as is just and proper.

Dated:  October 31, 2008                    Respectfully submitted,

                              **COX SMITH MATTHEWS INCORPORATED**

                              By:     _/s/  Deborah D. Williamson_
                                      Deborah D. Williamson (admitted *pro hac vice*)
                                      Texas State Bar No. 21617500
                                      112 East Pecan Street, Suite 1800
                                      San Antonio, Texas 78205
                                      (210) 554-5500
                                      (210) 226-8395 (Fax)
                                      dwilliamson@coxsmith.com

                              **ATTORNEYS FOR TESORO CORP.**
                              **INTERESTED PARTY**

2404282.1