DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone:  212.259.8000
Facsimile:  212.259.6333
Martin J. Bienenstock, Esq.
Irena Goldstein, Esq.

Attorneys for The Walt Disney Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
:
**In re**                                          :        **Chapter 11 Case No.**
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,**  :        **08-13555 (JMP)**
*et al.*                                           :
        **Debtors.**                               :        **(Jointly Administered)**
                                                   :
---------------------------------------------------------- x

**OBJECTION OF THE WALT DISNEY COMPANY TO DEBTORS' MOTION,
TO PAY PREPETITION EXCISE AND WITHHOLDING TAXES**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

   The Walt Disney Company ("TWDC") submits this objection (the "Objection") to

the motion (the "Motion") of Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors

in the above-captioned chapter 11 cases, as debtors and debtors in possession (together, the

"Debtors") for authorization to pay prepetition excise and withholding taxes pursuant to sections

105(a), 363(b), and 541 of title 11 of the United States Code (the "Bankruptcy Code") and Rules

6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. The Debtors are seeking authority to pay the Excise and Withholding Taxes (defined below), and, thus, to make selective interim distributions for the benefit of the Debtors' insiders, thereby elevating certain pre-petition priority claims over post-petition administration claims that non-insider creditors depend on. Because the Debtors' Motion does not establish that the funds to be used are subject to a trust, or that granting of the Motion at this time will not prejudice other creditors, their Motion should be denied.

**BACKGROUND**

2. LBHI and Lehman Brothers Commercial Corp. ("LBCC") filed for relief under Chapter 11 of the Bankruptcy Code on or about September 15 and October 5, 2008, respectively. Certain other direct and indirect subsidiaries of LBHI also commenced chapter 11 cases in that interval. The Debtors' cases are jointly administered under the above-captioned number, but not substantively consolidated.

3. TWDC is a creditor of LBHI and LBCC as a result of certain foreign exchange transactions between TWDC and LBCC, guaranteed by LBHI, entered into prior to each entity's bankruptcy filing. As of today, TWDC is owed approximately $92 million from LBCC which was guaranteed by LBHI.

4. LBCC and likely other Debtors and non-debtor subsidiaries of LBHI have administrative claims against LBHI because, as set forth in LBHI's motion dated October 3, 2008 for authorization to continue using its centralized cash management system (the "Cash Management Motion"), LBHI continued its practice of sweeping funds from the accounts of its non-debtor subsidiaries on a daily basis and distributing such cash among its subsidiaries as a "central banker" even after it filed for bankruptcy protection. (Management Motion ¶ 10) As

set forth above, LBHI commenced its chapter 11 case 20 days before LBCC commenced its chapter 11 case. Pursuant to Bankruptcy Code section 364, all moneys LBHI swept from LBCC created administrative claims of LBCC against LBHI. To date, the Debtors have not disclosed, and perhaps have not determined, the amount of LBCC's administrative claim against LBHI. TWDC relies on, among other things, LBCC's collection of its administrative claims against LBHI for payment of TWDC's claim against LBCC.

5. The Debtors now seek authorization to pay, *in their discretion*, all excise and withholding tax obligations owed for periods prior to the Commencement Date ("Excise and Withholding Taxes") to domestic and foreign taxing authorities (the "Taxing Authorities"). (Motion ¶ 7) In addition, the Debtors seek authorization to pay Excise and Withholding Taxes subsequently determined upon audit to be owed for periods prior to the Commencement Date. *Id*.

6. While the Debtors currently estimate that the Excise and Withholding Taxes owed to domestic taxing authorities and foreign taxing authorities are $1.244 million and $7.7 million, respectively (Motion ¶¶ 8, 9), they have made no estimate as to the amount of their other prepetition priority claims (they have not filed their schedules of liabilities and have asked for additional time to do so) and have not disclosed their administrative inter-debtor liabilities. LBHI's payment of prepetition priority claims before it shows it can pay all its administrative liabilities, violates the Bankruptcy Code's priorities and impairs TWDC's statutory rights. Granting the Motion would authorize the Debtors to serve the interests of insiders to the detriment of their creditors while simultaneously violating the Bankruptcy Code.

**ARGUMENT**

7.     The Debtors assert two independent grounds upon which this Court should grant the requested relief: (a) funds used to satisfy "trust fund taxes" are not property of the estate, and are therefore not available "for the satisfaction of creditors' claims" (Motion, ¶14); and (b) payment of the Excise and Withholding Taxes is in the best interests of the estate because the "Debtors' officers, directors, and other employees may be subject to lawsuits or criminal prosecution" and " would distract the Debtors and their personnel from important tasks related to the Debtors' cases." (Motion , ¶ 16).   The Debtors have failed to prove that either of these grounds exists.

A.     There is no Trust

8.     Funds to satisfy what are commonly referred to as "trust fund taxes" may not constitute property of the estate when they are readily identifiable. *See Beigier v. Internal Revenue Service*, 496 U.S. 53, 61 (1990).   The Debtors, however, make no claim that the funds necessary to satisfy the Excise and Withholding Taxes are segregated or otherwise readily identifiable, nor could they.  As LBHI's counsel stated when asked to explain the Debtors' cash management system during an information session concerning LBHI's motion to sell (the "Sale") its investment banking business and the real estate of one of its subsidiary debtors to Barclays Capital, Inc. ("Barclays"):  "cash moves around with great velocity."

9.     In *Begier v. Internal Revenue Service*, the United States Supreme Court ruled that the pre-petition payment of certain federal trust fund taxes from a general operating account could not be avoided as a preferential transfer.  In so ruling, the Court cited to legislative history of the Bankruptcy Code, and held:  "The courts are directed to apply 'reasonable assumptions' to govern the tracing of funds, and the House Report identifies one such

4

assumption to be that any voluntary *prepetition* payment of trust-fund taxes out of the debtors' assets is not a transfer of the debtors' property." *Id.*, citing 124 Cong. Rec., at 32417 (emphasis supplied).

10.     Justice Scalia, in his concurring opinion, took exception with the majority opinion and stated, while the United States is intended to have "the advantages of a trust beneficiary with respect to collected and withheld taxes. . . it does not always succeed in doing so" because there may be no *res*. 496 U.S. 63. According to Justice Scalia: "A trust without a *res* can no more be created by legislative decree than can a pink rock-candy mountain." *Id.* Nonetheless, Justice Scalia concurred with, and did not dissent from, the majority opinion because: "Even if no trust existed before that check was written, it is clear that a trust existed then." *Id.* At 71 (citing, W. Fratcher, Scott on Trusts § 26.5 (4th ed. 1987).

11.     Notably, *Begier* shows that to impose a trust on funds of the estate, "The courts are directed to apply "reasonable assumptions" to govern the tracing of funds, and the House Report identifies one such assumption to be that any voluntary pre-petition payment of trust fund taxes out of the debtor's assets is not a transfer of the debtor's property." 496 U.S. at 67. Here, the Debtors' Motion does not even allege that it can trace the necessary funds.[1] There is no basis whatsoever for the Debtors to assert that the funds they received prepetition constituting trust fund taxes exist anywhere in the estates today, and they do not make that assertion. Indeed, claims against the Debtors trade at about 8 cents on the dollar suggesting that 92% of the Debtors' value disappeared in losses. In this case, the Debtors seek authority to pay pre-petition Excise and Withholding Taxes and have not demonstrated or even alleged that using "reasonable assumptions," they can trace the funds they seek to use to pay the Excise and

---

[1] Indeed, in other contexts, the Debtors consistently explain they are finding facts and attempting to bring order to chaos.

5

Withholding Taxes.  Accordingly, the Motion does not state a *prima facie* claim for the relief requested.[2]

        B.      The Debtors Have Not Established that Making Interim Distributions is Authorized by Statute or in the Best Interests of the Debtors' Estates.

        17.      Thousands of creditors in these cases are likely to wait years to receive distributions which will only be made after a chapter 11 plan is confirmed in accordance with the Bankruptcy Code's priority requirements.  It is hornbook law that a debtor is not allowed to make an earlier distribution to select pre-petition creditors without proving the interim distribution will not prejudice any other creditors.  *In re Realty Assocs. Sec. Corp.*, 53 F. Supp. 1010 (E.D.N.Y. 1943); *In re Realty Assocs. Sec. Corp.*, 58 F. Supp. 220 (E.D.N.Y. 1944); *Todd v. Lippencott*, 258 F. 205 (3d Cir.1919), *cert. denied*, 250 U.S. 672 (1919).  Indeed, there is circuit court authority for the proposition that interim distributions are simply not allowed under the Bankruptcy Code, even in the most sympathetic of situations where women need reconstructive surgery due to a mass tort.  *Official Committee of Equity Security Holders v. Mabey*, 832 F.2d 299 (4th Cir. 1987), *cert. denied* 485 U.S. 962 (1988).  The Motion, however, does not acknowledge the Debtors are asking to make an interim distribution and nowhere attempts to state a *prima facie* case that no other creditors will be prejudiced by the early distribution.

        18.      Moreover, by asking to use property of the estate to pay the Excise and Withholding Taxes, the Debtors seek to elevate pre-petition priority claims over administrative claims in violation of sections 503 and 507 of the Bankruptcy Code.  The Debtors argue that the

---

[2] In two of the cases cited by Debtors in the Motion for authority that trust fund taxes are not property of the debtor, *Al Copeland Enters., Inc. v. Texas,* 991 F.2d 233, 235 (5th Cir. 1993) and *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987), the debtor had separated the "trust fund" taxes from its general funds, thus creating a *res* for the trust.  Both *Shank v. Wash. State Dep't of Revenue (In re Shank)*, 792 F.2d 829, 830 (9th Cir. 1986) and *DeChiaro v. N.Y. State Tax Comm'n,* 760 F.2d 432, 433 (2d Cir. 1985), the two other cases cited by Debtors were issued prior to the Supreme Court's ruling in *Begier* and are silent on the issue

6

requested relief is in the best interests of the Debtors' estates because, failing to pay "could trigger unwarranted governmental action in the form of increased audits, which would also be disruptive to the Debtors' operations and detrimental to all parties in interest."[3] (Motion, ¶18)

19. As set forth above, preconfirmation distributions to pay prepetition claims are not provided for by statute and are not authorized. *See Official Committee of Equity Security Holders v. Mabey*, 832 F. 299, 302 (4th Cir. 1987), *cert. denied* 485 U.S. 962 (1988) ("The bankruptcy Code does not permit a distribution to unsecured creditors in a Chapter 11 proceeding except under and pursuant to a plan of reorganization that has been properly presented and approved."). Certain courts, however, have exercised their equitable power and allowed such distributions when it is clear the creditors receiving such distributions will otherwise be paid at least the same amount and that the payment ultimately will benefit other creditors. *In re Kmart Corp.*, 359 F.3d 866 (7th Cir. 2004) ("preferential payments to a class of creditors are proper only if the record shows the prospect of benefit to other creditors"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bkrtcy.S.D.N.Y.,1989) ("Significantly, however, the *sine qua non* for the application of the 'necessity of payment' doctrine is the possibility that the creditor will employ an immediate economic sanction, failing such payment."(quoting *In re Lehigh & New England Railway Company,* 657 F.2d 570, 581 (3rd Cir.1981))).

20. The Debtors have made no such showing. First, it is not even clear who the Debtors' creditors are: they have not filed their schedules of liabilities and have sought a further extension. Second, the Debtors have made no showing that there will be sufficient funds at LBHI to pay to pay its administrative creditors such as LBCC, let alone pre-petition creditors.

---

[3] In light of the fact that, according to the Debtors' counsel, the Debtors are currently subject to three grand jury proceedings, it is hard to imagine that the Debtors' operations could be further disrupted by additional governmental action.

7

21. In this regard, LBHI, both pre-petition and post-petition swept the accounts of its subsidiaries and has made no accounting thus far of the transfers. The Debtors' silence on this issue must not be viewed in a vacuum, but in the context of the Sale to Barclays and LBHI's continued sweep of its subsidiaries' accounts after its bankruptcy filing. In connection with the Sale, LBHI sold businesses of non-debtors to Barclays while purporting to sell only assets of debtors. This was done on an emergency basis, with no effort made by LBHI to ensure that any of the purchase price flowed to LBHI's nondebtor subsidiaries. The Debtors explained the emergency sale was required because the Debtors' key people had threatened to abandon the Debtors if the sale were not immediately approved. (Transcript of Sale Hearing at 26) [Dkt. No. 352]

22. Now, while still providing no information (and perhaps being unable to provide information) and no assurances that the subsidiaries who are administrative creditors of the Debtors will be paid in full, the Debtors are asking the Court to allow them to make payments on prepetition claims to protect certain insiders before the Debtors even try to prove that the payments will not impair payment of administrative claims.

NY3 3014115.4 230054 000003 10/31/2008 03:41pm

## **CONCLUSION**

WHEREFORE, TWDC requests that this Court deny the Motion and grant TWDC such other and further relief as is equitable and just.

Dated: New York, NY
       October 31, 2008

DEWEY & LEBOEUF LLP

/s/ Martin J. Bienenstock_____
Martin J. Bienenstock, Esq.
Irena Goldstein, Esq.
1301 Avenue of the Americas
New York, New York 10019
Telephone:  212.259.8000
Facsimile:  212.259.6333

9