Hearing Date:  December 3, 2008 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline:  November 28, 2008 at 4:00 p.m. (Prevailing Eastern Time)

Daniel J. Flanigan
Polsinelli Shalton Flanigan Suelthaus PC
7 Penn Plaza, Suite 600
New York, New York 10001
(212) 684-0199
Fax: (212) 684-0197
dflanigan@polsinelli.com

David D. Ferguson
Polsinelli Shalton Flanigan Suelthaus PC
700 W. 47th Street, Suite 1000
Kansas City, Missouri  64112
(816) 753-1000
Fax: (816) 753-1536
dferguson@polsinelli.com

Neal Schwarzfeld
Penn Proefriedt Schwarzfeld & Schwartz
114 West 47th Street - 19th Floor
New York, New York 10036
Tel: (212) 354-7700
Fax: (212) 997-5070
nschwarzfeld@pennprolaw.com

ATTORNEYS FOR ABRAHAM KAMBER & COMPANY LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - -X

**In re:**                                                    **Chapter 11**

**LEHMAN BROTHERS HOLDINGS,**
**INC., et al.,**                                      **Case No.:  08-13555 (JMP)**

                             **Debtors.**           **(Jointly Administered)**

- - - - - - - - - - - - - - - - - - - - - - - - -X

**NOTICE OF HEARING ON MOTION OF ABRAHAM KAMBER & COMPANY**
**LLC FOR DETERMINATION THAT THE AUTOMATIC STAY DOES NOT APPLY**
**OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY**

**PLEASE TAKE NOTICE** that on December 3, 2008 at 10:00 a.m. or as soon thereafter

as counsel may be heard, a hearing will be held before the Honorable James M. Peck, United

States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 601 in the Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, to consider Abraham Kamber & Company LLC's Motion for Determination that the Automatic Stay Does Not Apply or, in the Alternative, for Relief from the Automatic Stay (the "Motion"), filed herein on November 5, 2008.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be: (a) in writing, stating the name of the objecting party and shall state with particularity the reasons for the objection; (b) filed with the Clerk of the Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004 (with a courtesy copy to Judge Peck's Chambers) in accordance with the procedures in the paragraph immediately below; and (c) served upon the undersigned counsel for Movant so as to be received no later than November 28, 2008.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief sought in the Motion must be filed: (a) through the Bankruptcy Court's electronic filing system; or (b) if a party is unable to file electronically, such party shall submit the objection in PDF format on a diskette in an envelope with the case name, case number, type and title of document, document number of the document to which the objection refers, and the file name on the outside of the envelope; or (c) if a party is unable to file electronically or use PDF format, such party shall submit the objection on a diskette in either Word, WordPerfect, or DOS text (ASCII) format to the Clerk of the Bankruptcy Court with a label containing the information indicated in section (b) of this paragraph. An objection filed by a party with no legal representation shall comply with section (b) or (c) as set forth in this paragraph.

**PLEASE TAKE FURTHER NOTICE** that the Court may grant the relief requested in the Motion without a hearing if no objections to the Motion are timely filed and served.

**PLEASE TAKE FURTHER NOTICE** that the hearing to consider the Motion may be adjourned from time to time, without further notice to parties in interest, other than the announcement of the adjourned date or dates at the hearing.

Dated: New York, New York
      November 5, 2008

Respectfully Submitted,

POLSINELLI SHALTON FLANIGAN SUELTHAUS PC

By: */s/ Daniel J. Flanigan*
    DANIEL J. FLANIGAN
    7 Penn Plaza, Suite 600
    New York, New York 10001
    (212) 684-0199
    Fax No. (212) 684-0197

    DAVID D. FERGUSON
    700 West 47the Street, Suite 1000
    Kansas City, Missouri 64112-1802
    (816) 360-4311
    Fax No. (816) 753-1536

    NEAL SCHWARZFELD
    Penn Proefriedt Schwarzfeld & Schwartz
    114 West 47th Street - 19th Floor
    New York, New York 10036
    (212) 354-7700
    Fax (212) 997-5070
    Email nschwarzfeld@pennprolaw.com

ATTORNEYS FOR ABRAHAM KAMBER & COMPANY LLC

Daniel J. Flanigan
Polsinelli Shalton Flanigan Suelthaus PC
7 Penn Plaza, Suite 600
New York, New York 10001
(212) 684-0199
Fax: (212) 684-0197
dflanigan@polsinelli.com

David D. Ferguson
Polsinelli Shalton Flanigan Suelthaus PC
700 W. 47th Street, Suite 1000
Kansas City, Missouri  64112
(816) 753-1000
Fax: (816) 753-1536
dferguson@polsinelli.com

Neal Schwarzfeld
Penn Proefriedt Schwarzfeld & Schwartz
114 West 47th Street - 19th Floor
New York, New York 10036
Tel: (212) 354-7700
Fax: (212) 997-5070
nschwarzfeld@pennprolaw.com

ATTORNEYS FOR ABRAHAM KAMBER & COMPANY LLC

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x    **Chapter 11**

**In re:**

**Case No.:  08-13555 (JMP)**

**LEHMAN BROTHERS HOLDINGS,
INC., et al.,**

**(Jointly Administered)**

**Debtors.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MOTION OF ABRAHAM KAMBER & COMPANY LLC
FOR DETERMINATION THAT THE AUTOMATIC STAY DOES NOT APPLY OR,
IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY**

Abraham Kamber & Company LLC ("**Kamber**"), by and through its undersigned counsel, hereby files this Motion for Determination that the Automatic Stay Does Not Apply or, in the Alternative, for Relief from the Automatic Stay. In support of its Motion, Kamber states:

**I.      Jurisdiction and Venue.**

1.      This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges for the Southern District of New York, dated July 10, 1984 (Ward, acting C.J.). Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Debtors' cases and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought in this Motion is § 362(d)(1) of the Bankruptcy Code.

**II.      Factual Background.**

2.      On September 15, 2008, the above-captioned debtors filed separate voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

*The Lease and Sublease*

3.      Kamber is tenant under a lease (the "**Ground Lease**") of property located at 1407 Broadway, New York, New York (the "**Property**") dated January 14, 1954, as successor in interest to Webb & Knapp, Inc. A true and correct copy of the Ground Lease is attached as **Exhibit A** to the Declaration of Steven M. Levy (the "**Levy Declaration**"). The Levy Declaration is attached to this Motion as **Exhibit 1**. Levy Declaration, ¶ 3.

4.      The Property consists of land comprising more than three-fourths of the city block bounded by Broadway, 38th Street, 39th Street and Seventh Avenue in New York's Garment

District as well as a 42-story building, construction of which was completed in 1950.  Levy

Declaration, ¶ 4.

5.    Kamber's predecessor in interest—Webb & Knapp, Inc.—subleased the Property

to Gettinger Associates ("**Gettinger**") under a sublease dated February 1, 1954 (the **"Sublease"**).

A true and correct copy of the Sublease is attached as **<u>Exhibit B</u>** to the Levy Declaration.  Levy

Declaration, ¶ 5.

### *History of Gettinger's Defaults and Litigation Between the Parties*

6.    Beginning in late 1999, Kamber and Gettinger became embroiled in a number of

disputes regarding the Sublease.  The parties have engaged in substantial litigation regarding

Gettinger's defaults under the Sublease more or less continuously since early 2000.  Much of the

litigation has centered on Kamber's contention that Gettinger has failed to keep the Property in a

state of "thorough repair" as required under Section 8 of the Sublease and that Gettinger has

failed to comply with the requirements of Sections 7(a)(2) and (4) of the Sublease relating to

"alterations, rebuildings, replacements, changes, additions, and improvements" to the Property

anticipated to cost in excess of $50,000 without obtaining Kamber's consent.  Levy Declaration,

¶ 6.

7.    Gettinger's failure to cure the defaults set the stage for a possible termination of

the Sublease, and Gettinger obtained a <u>Yellowstone</u> injunction to block termination of the

Sublease.  In connection with their disputes, Gettinger sued Kamber in the Supreme Court of the

State of New York, County of New York, Index No. 111166/2006, for a judgment declaring that

Gettinger is not in default under the Sublease and for money damages of more than $100 million

for alleged wrongful actions by Kamber in attempting to terminate the Sublease.  Kamber has

3

defended its position in the litigation, asserting counterclaims seeking a judgment that Gettinger

is, in fact, in default of its obligations under the Sublease.  Levy Declaration, ¶ 7.

### *July 2006 Notices of Default to Gettinger, Kamber Files Notice of Pendency*

8.      Kamber currently alleges that Gettinger defaulted under Sections 7(a)(2) and (4)

of the Sublease in that it has breached the requirement of the Sublease that Gettinger not perform

any "alterations, rebuildings, replacements, changes, additions, and improvements" to the

Property that are anticipated to cost in excess of $50,000 without obtaining Kamber's written

consent, without submitting plans and specifications to Kamber for the work to be done, and

without providing Kamber with a performance bond, equal in amount to the cost of such work,

guaranteeing completion of such work free and clear of all liens and encumbrances.  Based on

Gettinger's defaults under Section 7(a)(2) and (4), Kamber sent, on or about July 20, 2006, a

Notice of Default to Gettinger.  A true and correct copy of the July 20, 2006 Notice of Default is

attached as **Exhibit C** to the Levy Declaration.  Levy Declaration, ¶ 8.

9.      Based on Gettinger's failure to keep the Property in "thorough repair" as required

under Section 8 of the Sublease, Kamber sent another Notice of Default to Gettinger, on or about

July 21, 2006.  A true and correct copy of the July 21, 2006 Notice of Default is attached as

**Exhibit D** to the Levy Declaration.  Levy Declaration, ¶ 9.

10.     In order to further protect its rights and to provide notice with respect to the

disputes concerning the Sublease, Kamber followed up by filing, on October 10, 2006, a Notice

of Pendency.  A true and correct copy of that Notice of Pendency is attached as **Exhibit E** to the

Levy Declaration.  The Notice of Pendency states:

Notice is hereby given that an action has been commenced and is now pending in the within Court in which defendant Abraham Kamber & Company LLC has asserted counterclaims against the plaintiff, Gettinger Associates LLC for a declaration that Gettinger Associates is in default under the certain sublease, dated February 1, 1954 for premises located at 1407 Broadway, New York, New York and declaring that, by virtue of such default, that the sublease be terminated….

Levy Declaration, ¶ 10.

### *Gettinger Attempts to Assign Sublease While In Default*

11.      Notwithstanding pending default notices, the Notice of Pendency, and the lawsuit pending between Kamber and Gettinger, Gettinger purported to sell its interest under the Sublease to 1407 Broadway Real Estate, LLC, f/k/a Lightstone 1407, LLC (**"Purported Subtenant"**) pursuant to that certain Sale and Purchase of Leasehold Agreement dated October 25, 2006 (the **"Sale Agreement"**) and Assignment and Assumption of Seller's Interest in Operating Lease dated January 4, 2007 (the **"Assignment"**).  A true and correct copy of the Sale Agreement is attached as **<u>Exhibit F</u>** to the Levy Declaration.  A true and correct copy of the Assignment is attached as **<u>Exhibit G</u>** to the Levy Declaration.  Levy Declaration, ¶ 11.

12.      By virtue of Gettinger's unauthorized alterations to the Property and failure to keep the Property in a state of thorough repair, the Sublease was in default in multiple respects at the time that Gettinger purportedly assigned its interest in the Sublease to Purported Subtenant. Pursuant to Section 6(a) of the Sublease, the subtenant may not assign its interest in the Sublease if the Sublease is in default:

Tenant shall have the right to assign this lease in whole and all of the rights of Tenant hereunder without Landlord's consent, provided (i) that at the time of making such assignment there is no default under any of the agreements, terms, covenants and conditions hereof on the part of Tenant to be performed…

5

Kamber did not consent to transfer or otherwise waive the provisions of Section 6(a) of the

Sublease, and despite those provisions, neither Gettinger nor Purported Subtenant asked for

Kamber's consent to the transfer.  Gettinger and Purported Subtenant disregarded the terms of

the Sublease, choosing instead to go forward with the purported sale without Kamber's consent.

Levy Declaration, ¶ 12.

13.    As reflected in Sections 12(a)(iii), (vi)(3),  (ix)(1), 31(a), 31(b), and Exhibit D

(paragraph 16) of the Sale Agreement, Purported Subtenant took its purported assignment with

full knowledge of the defaults under the Sublease and subject to the pending litigation between

Kamber and Gettinger.  The terms of the Assignment, taken in conjunction with the terms of the

Sale Agreement, on page one, at paragraph 2, reflect the understanding of Gettinger

and Purported Subtenant that Purported Subtenant was taking the Sublease expressly subject to

Kamber's rights:

> THE OPERATING LEASE IS BEING ASSIGNED WITHOUT ANY
> REPRESENTATION, WARRANTY OR RECOURSE BY OR AGAINST
> ASSIGNOR WHATSOEVER. … [GETTINGER] SPECIFICALLY
> DISCLAIMS ANY WARRANTY, GUARANTY OR REPRESENTATION,
> ORAL OR WRITTEN, PAST OR PRESENT, EXPRESSED OR IMPLIED,
> CONCERNING THE OPERATING LEASE OR [GETTINGER'S] TITLE
> THERETO.  WITHOUT LIMITATION OF THE FOREGOING, [PURPORTED
> SUBTENANT'S] ACQUISITION OF THE OPERATING LEASE IS **SUBJECT
> TO** ALL OF THE PERMITTED EXCEPTIONS SET FORTH IN (AND SUCH
> TERM IS DEFINED IN) THE SALES CONTRACT. [Emphasis added].

As reflected at Section 3(b) and Exhibit D to the Sale Agreement, the "Permitted Exceptions"

include the Sublease litigation involving Kamber.  Levy Declaration, ¶ 13.

14.    The title insurance policy obtained by Purported Subtenant also reflects the fact

that it took the purported assignment expressly subject to the litigation between Gettinger and

Kamber.  Attached as **Exhibit H** to the Levy Declaration is a copy of the Owner's Policy of Title

Insurance (the **"Title Policy"**) obtained by Purported Subtenant in connection with its purported

acquisition of the Sublease.  On page five of the Title Policy, at paragraph 10, the claims

involved under the litigation between Gettinger and Kamber are listed among the Schedule B

exceptions from coverage.  The exception is for:

> Any loss, claim or damage arising out of the defaults whic[h] are stated in the
> following:  Lis Pendens [i.e., the Notice of Pendency] filed 10/10/2006, File No.
> 111166/06, in the Supreme Court of New York County, Gettinger Associates
> LLC vs. Abraham Kamber Company LLC.  The Lis Pendens must be cancelled
> and the Action discontinued of record.  Nature of Action: To declare default under
> Sub-Lease and that Lease be terminated.

Levy Declaration, ¶ 14.

### *Lehman Finances Acquisition of Sublease With Full Knowledge of and Subject To Existing Defaults and Possible Imminent Termination of the Sublease*

15.     Lehman Brothers Holdings, Inc. (the **"Debtor"** or **"Lehman"**) financed

Purported Subtenant's acquisition pursuant to a Loan Agreement dated January 4, 2007 (the

**"Loan Agreement"**).  A true and correct copy of the Loan Agreement is attached as **Exhibit I** to

the Levy Declaration.  Lehman secured the loan by taking a lien on Purported Subtenant's

purported interest in the Sublease pursuant to a Leasehold Mortgage, Assignment of Lease and

Rents, Security Agreement and Fixture Financing Statement dated January 4, 2007 (the

**"Leasehold Mortgage"**).  A true and correct copy of the Leasehold Mortgage is attached as

**Exhibit J** to the Levy Declaration.  Levy Declaration, ¶ 15.

16.     In order to further secure Lehman's loan under the Loan Agreement, Lehman

obtained a Guaranty of Recourse Obligations dated January 4, 2007 from Lightstone Holdings,

LLC (the **"Lightstone Guaranty"**).  A true and correct copy of the Lightstone Guaranty is

attached as **Exhibit K** to the Levy Declaration.  Levy Declaration, ¶ 16.

17.     Kamber filed the Notice of Pendency on October 10, 2006, long before Lehman took its lien on the Sublease.  Accordingly, Lehman took its lien on the Sublease subject to the litigation pending between Kamber and Gettinger.  Levy Declaration, ¶ 17.

18.     The provisions of the Sublease also put Lehman on notice that any lien on the Sublease would be expressly subject to Kamber's rights and that Gettinger was prohibited from placing a mortgage on the Sublease while the Sublease is in default.  Section 6(e) of the Sublease states:

> [Gettinger] shall have the right to mortgage this lease, provided that no holder of any mortgage or pledge of this lease or of [Gettinger's] interest hereunder … acquire any greater rights hereunder than [Gettinger] has, and no mortgage or pledge of this lease or of [Gettinger's] interest hereunder, in whole or in part, by [Gettinger] … shall be valid, **unless: (i) at the time of the making of the mortgage or pledge there is no default under any of the agreements, terms, covenants and conditions of this lease on the part of [Gettinger]** to be performed; (ii) such mortgage or pledge shall be subject to all the agreements, terms, covenants and conditions of this lease… [Emphasis added].

Levy Declaration, ¶ 18.

19.     Section 6(a) of the Sublease, quoted above at paragraph 12, also put Lehman on notice that Purported Subtenant's claimed interest in the Sublease was invalid because Gettinger was in default under the Sublease when it attempted to assign the Sublease and because Kamber did not consent to the attempted assignment.  Levy Declaration, ¶ 19.

20.     Further, as reflected at Section 4.4(a)(iv) of the Leasehold Mortgage, Lehman took its lien with full knowledge of the defaults under the Sublease and Kamber's notices of those defaults to Gettinger and Purported Subtenant.  Lehman agreed its involvement was expressly subject to the pending state court litigation.  Lehman understood and agreed that it was taking its lien on the Sublease expressly subject to the pending state court litigation between Kamber and Gettinger, the defaults under the Sublease, and Kamber's notices of those defaults to

8

Gettinger and Purported Subtenant.  This is reflected in Sections 4.1(c), (f), (ff), 5.31(c), (d), (f), and 8.3.1 of the Loan Agreement.  Lehman accordingly had full disclosure of the ongoing dispute between Kamber, Gettinger, and Purported Subtenant—a dispute that was years old by the time that Lehman decided to provide financing secured by a leasehold interest in the Sublease.  Levy Declaration, ¶ 20.

21.    Kamber did not consent to any sale of any interest in the Sublease by Gettinger, and neither Gettinger nor Purported Subtenant asked for Kamber's consent.  Kamber did not consent to the Leasehold Mortgage, and neither Lehman nor Purported Subtenant asked for Kamber's consent.  Lehman provided financing under the Loan Agreement despite full knowledge of, and took its leasehold mortgage expressly subject to, the litigation involving the Sublease, Gettinger's breaches of the Sublease, Kamber's notices of default and cure demands, Kamber's right to terminate the Sublease, and the terms of the Assignment—**including** the provision in the Assignment that whatever interest Purported Subtenant had acquired in the Sublease was acquired expressly subject to Kamber's claims that the Sublease was in default.  Levy Declaration, ¶ 21.

*Kamber Gives Additional Notices of Default, Gettinger*
*and Purported Subtenant Fail to Cure*

22.    On February 16, 2007, Kamber sent a Notice to Cure to Gettinger and Purported Subtenant.  A true and correct copy of that Notice to Cure is attached as **Exhibit L** to the Levy Declaration.  Pursuant to the Notice of Cure, Kamber demanded that Gettinger and Purported Subtenant cure the default under Section 6(a) of the Sublease arising on account of Gettinger's attempted sale of its interest in the Sublease while the Sublease was in default.  Kamber further demanded cure of the defaults under the Sublease identified in Kamber's July 20, 2006 and July 21, 2006 Notices of Default (Exhibits C and D to the Levy Declaration).  Levy Declaration, ¶ 22.

23.     On or about March 26, 2007, Kamber sent another Notice of Default to Gettinger

and to Purported Subtenant to give notice to them of defaults under Sections 7(a)(2) and (4) of

the Sublease, based on additional work performed on the building costing more than $50,000 that

was undertaken without obtaining Kamber's consent and without satisfying other conditions of

the Sublease.  A true and correct copy of the March 26, 2007 Notice of Default (pertaining to

addition work done without Kamber's consent) is attached as **Exhibit M** to the Levy

Declaration.  Levy Declaration, ¶ 23.

### *Purported Subtenant Sues Kamber,*
### *Litigation Later Consolidated with Case Filed by Gettinger*

24.     On September 4, 2007, Purported Subtenant filed suit against Kamber in the

Supreme Court of the State of New York, County of New York, Index No. 602966/07, seeking a

declaratory judgment that the Sublease is not in default and demanding damages from Kamber of

$125 million on account of actions taken by Kamber to enforce Kamber's rights under the

Sublease.  That suit was later consolidated with the litigation filed by Gettinger (the consolidated

litigation is hereinafter referred to as the "State Court Litigation").  Kamber has vigorously

sought to enforce the terms of the Sublease and vindication of the fact that the Sublease is in

default as set forth in its Notices of Default.  Kamber has just as vigorously defended against the

claims of Gettinger and Purported Subtenant.  Termination of the Sublease is currently enjoined

pursuant to a Yellowstone injunction while the parties litigate whether there has been a default

under the Sublease.  Levy Declaration, ¶ 24.

### *Sublease Remains In Default*

25.     As of the date of this Motion, neither Gettinger nor Purported Subtenant has cured

the defaults under the Sublease alleged by Kamber.  Kamber seeks to defend itself in the State

Court Litigation, to continue prosecuting its counterclaims in the State Court Litigation including

obtaining a judgment that the Sublease is in default, and to terminate the Sublease upon entry of a final order in its favor and failure of Gettinger and Purported Subtenant to cure the defaults. Levy Declaration, ¶ 25.

**III.    Relief Requested.**

26.    Due to concern about certain language in the Second Circuit's decision in the Steakhouse case, as discussed in more detail at paragraphs 34-36 infra, Kamber requests that the Court enter an Order declaring that the automatic stay does not apply to its actions in seeking to enforce its rights under the Sublease, including issuance of default notices, litigation of claims and defenses relating to the Sublease, and termination of the Sublease, all pending in the State Court Action.  Although Kamber believes that some of the Second Circuit's statements in Steakhouse are non-binding dicta and inapplicable to Kamber's circumstances in this case, some of the language is so sweeping that it gives Kamber pause about proceeding without a comfort order.

27.    In the alternative, if the Court finds that the automatic stay is applicable, Kamber requests that the Court enter an Order under Bankruptcy Code § 362(d)(1) modifying the stay to permit Kamber to take all actions to enforce its rights under the Sublease against Purported Subtenant and its successors and assigns including issuance of default notices, litigation of claims and defenses relating to the Sublease (including the pending State Court Litigation), and termination of the Sublease, whether or not such actions have an adverse impact on property of Lehman's bankruptcy estate.  If stay relief is required, Kamber requests that the Court direct that such relief be effective immediately upon entry of the Order granting this Motion and that the ten-day stay provided under Fed.R.Bankr.P. Rule 4001(a)(3) of orders granting relief from the automatic stay shall not apply.

**IV.    The Automatic Stay Does Not Apply To Bar Kamber's Actions Against The Purported Subtenant And Its Successors And Assigns Including Termination Of The Sublease Even If Such Actions Could Have An Incidental Negative Effect On The Value Of Lehman's Purported Leasehold Mortgage.**

28.    <u>In re Le Peck Construction Corp.</u>, 14 B.R. 195 (Bankr. S.D.N.Y 1981) is directly on point.  The Court in <u>Le Peck</u> determined that a senior lienholder may foreclose its lien, without stay relief, even if the foreclosure extinguishes a junior lien interest owned by a debtor.  In <u>Le Peck</u> the debtor held a mechanic's lien on real property against which the senior lienholder sought to foreclose.  The lender requested leave to join the debtor in the foreclosure lawsuit, and the Court granted the lender's motion, finding that the stay was inapplicable.  The Court determined that none of the provisions of § 362 applied to a senior lienholder's efforts to foreclose a senior lien where the result would be extinguishment of a junior lien interest held by a debtor.  <u>Id.</u> at 196.

29.    Like the senior lienholder in <u>Le Peck,</u> Kamber is not a creditor of Lehman's bankruptcy estate.  The Sublease is not property of Lehman's bankruptcy estate.  Lehman holds only a lien against the Sublease—property of a non-debtor—that it acquired "in the teeth of" the State Court Litigation, the default notices, and possible termination of the Lease.  Lehman's lien interest in the Sublease is not only made expressly subject to the pending state court action but also junior to Kamber's interest as sublandlord under the Sublease.  Kamber's efforts to enforce the terms of the Sublease are analogous to and far more long-standing than the senior lender's efforts in <u>Le Peck</u> to foreclose its lien in the property of a non-debtor.

30.    The key here, as in <u>Le Peck</u>, is that the interest to be terminated is only a lien interest held by a debtor in property owned by a non-debtor.  Moreover, unlike the foreclosing lender in <u>Le Peck</u>, Kamber does not seek to name the Debtor as a party to a lawsuit or take any

other direct legal action against the Debtor. Accordingly, Kamber has an even stronger argument than the Le Peck lienholder that the stay should not apply.

31.    Citing Le Peck, the United States District Court for the Eastern District of Virginia ruled in In re Lloyd C. March, 140 B.R. 387 (E.D. Va. 1992) that the automatic stay did not bar a senior lienholder's efforts to foreclose a lien on a property encumbered by a junior lien held by a chapter 11 debtor.[1]  The debtor in March argued that § 362(a) stayed the foreclosure because the foreclosure would directly affect the bankruptcy estate by cutting off the debtor's second lien position, but the court determined that the senior lienholder's foreclosure was not barred by the automatic stay, explaining at length that a debtor's lien on property owned by a non-debtor did not make the property itself part of the debtor's bankruptcy estate. March, 140 B.R. at 389.  The court then found that the debtor's mere lien interest in property was not protected by the automatic stay, citing the U.S. Supreme Court's holding in the Whiting Pools case that Congress intended to exclude from the estate property of others in which the debtor has an interest such as a lien or bare legal title.  March, 140 B.R. at 389, citing United States v. Whiting Pools, Inc., 462 U.S. 198, 204, footnote 8 (1983).[2]

32.    The Le Peck and March decisions only apply the plain language of Bankruptcy Code § 362(a).  As observed by the court in Le Peck after a careful analysis of the language of § 362(a), "nothing in the provisions of the automatic stay itself protects a debtor's junior lien interests." Le Peck, 140 B.R. at 389.  As observed by the United States Supreme Court, where

---

[1]  *But see* In re A Partners, 344 B.R. 114 (Bankr. E.D. Cal. 2006).

[2]  In a footnote, the court in March observed that a senior lienholder might need stay relief if proceeding by judicial foreclosure, but noted that the foreclosing lienholder was proceeding by non-judicial foreclosure under applicable Virginia state law.  Kamber here is in a similar position as the foreclosing lienholder in March in that Kamber, like that lienholder, does not seek to prosecute any action against the Debtor.  Rather, Kamber seeks only to terminate the Sublease against the non-debtor Subtenant pursuant to the terms of the Sublease, which is not property of Lehman's estate.

the Bankruptcy Code's language is plain, "the sole function of the courts is to enforce it according to its terms." United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed2d 290, (1989), citing Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).

33.    The Le Peck decision is also good policy and any other result would be highly inequitable.  If the Court were to read into § 362 a provision barring senior lienholders and similarly-situated parties from enforcing their rights in or against property simply because a debtor under the Bankruptcy Code happened to hold a junior lien interest in that property, the effect would be to impose an injunction primarily for the benefit of the non-debtor owner of that property.  In a case like Le Peck or in the instant case, where the non-debtor is in default on a loan (in this case, in default under the Sublease), the non-debtor would enjoy all of the benefits of the automatic stay against an entity like Kamber that is not even a creditor of the debtor without the need to file a bankruptcy petition or honor the responsibilities of a debtor in possession.

34.    In this case Kamber would be forced to continue suffering the defaults of its subtenant at the same time that the subtenant obtained all of the benefits of the automatic stay. The non-debtor subtenant would remain free of the duties and obligations imposed on debtors in possession including the obligation under Bankruptcy Code § 365(d)(3) that "The trustee shall timely perform all the obligations of the debtor … arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected. . . ."  Moreover, the non-debtor subtenant would not have to bother with making a decision to assume or reject the sublease within the timelines stated under Bankruptcy Code § 365(d)(4).  Rather, the non-debtor subtenant would enjoy the benefits of the automatic stay

indefinitely.  Thus, a reading of § 362 to provide a stay for the benefit of a non-debtor subtenant would allow the subtenant a far superior position than if it had filed its own bankruptcy petition.

35.     Extending the automatic stay beyond the language of § 362 in this way would be particularly unfair in this case because Purported Subtenant acquired its interest and Lehman made its loan with full knowledge and in the very teeth of (and expressly subject to) the defaults under the Sublease and the State Court Litigation.

36.     The absurdity of a result applying the automatic stay in this situation to Kamber, a non-creditor of the Debtor, i.e. a party who does not hold a "claim" against the Debtor, becomes even more obvious when it is understood that the Debtor cannot modify Kamber's rights under a reorganization plan.  In In re Cogar, 210 B.R. 803 (9th Cir. BAP 1997) the bankruptcy estate held a third lien on real estate owned by a non-debtor.  The trustee, arguing that the first lienholder on that property held a claim against the debtor by virtue of its lien, tried to modify the first lienholder's claim in his bankruptcy plan.  The Court refused to allow the modification, finding that the senior lienholder's lien on the non-debtor's property did not give the senior lienholder a claim against the junior lienholder's bankruptcy estate capable of being dealt with in a plan.  Id. at 809-812.

37.     Cogar makes it clear that imposition of the automatic stay in this case would serve no purpose except to create unnecessary delay.  Lehman cannot obtain confirmation of a plan that restructures Kamber's rights or enjoins Kamber's enforcement of the Sublease including the right to terminate the Sublease upon Gettinger's and Purported Subtenant's failure to timely cure the defaults under the Sublease.  Accordingly, a determination that the automatic stay applies to Kamber's enforcement of its rights would do nothing but delay—to no good purpose—the eventual resolution of the dispute between Kamber, Gettinger, and Purported Subtenant.

15

Resolution of that dispute turns on issues of state law entirely unaffected by the Bankruptcy

Code or by Lehman's bankruptcy filing.  Kamber, a <u>non-creditor</u> of the Debtor, asks only for a

declaration that it is free to pursue its rights against Gettinger and Purported Subtenant, both <u>non-</u>

<u>debtors</u>, unhindered by § 362, a bankruptcy statute that was clearly never intended to apply to

these circumstances.

       38.    The only reason Kamber is filing this Motion rather than proceeding without

hesitation in the state court is certain broad language in <u>In re 48th Street Steakhouse, Inc.</u>, 835

F.2d 427 (2nd Cir. 1987).  In <u>Steakhouse</u> the landlord under a ground lease sought to terminate

the lease.  The debtor, a subtenant of the property, argued that the automatic stay prohibited the

landlord from terminating the ground lease even though the debtor itself was not a party to the

ground lease.  The Second Circuit upheld the Bankruptcy Court in ruling that the stay prohibited

the landlord from terminating the ground lease because the debtor subtenant would lose its

sublease as a result, stating (too broadly for Kamber's complete comfort) that "[i]f action taken

against the non-bankrupt party would inevitably have an adverse impact on property of the

bankrupt estate, then such action should be barred by the automatic stay."  <u>Id.</u> at 431.

       39.    In <u>Steakhouse</u> neither the Bankruptcy Court nor the Second Circuit overruled,

disagreed with, or even referred to <u>Le Peck</u>, no doubt because the debtor in <u>Le Peck</u>, a mere

lienholder, was very differently situated than the subtenant debtor in <u>Steakhouse</u>.  Lehman, also a

mere lienholder, is very differently situated than the debtor in <u>Steakhouse</u>.  Here, in contrast to

<u>Steakhouse</u>, the debtor is not in possession of the leased premises.  Moreover, in <u>Steakhouse</u> the

debtor's subtenancy and related possession of the premises was expressly consented to by the

landlord and the purported action to terminate the lease was taken only after the debtor's

bankruptcy petition was filed.  Here, in contrast, the Sublease disputes and related litigation

between Kamber and Gettinger had been pending for years before the Purported Subtenant and

Lehman came on the scene and expressly and fully assumed the entire risk of a lease termination.

40.    <u>Steakhouse</u> ventured to the very farthest reaches of the language of § 362 and its

reasoning should not be extended any further.  Application of the automatic stay to Kamber in

this situation would violate this Court's own precedent in <u>Le Peck</u>, evade the plain language of

the Bankruptcy Code, flout Congressional intent as the U.S. Supreme Court held in <u>Whiting</u>

<u>Pools</u>, and defy common sense.  Moreover, as reflected in written statements to Kamber and to

the state court presiding over the litigation between Purported Subtenant, Gettinger, and Kamber,

Purported Subtenant strongly agrees with Kamber's contention that the automatic stay does not

apply in these circumstances.  <u>See</u> Declaration of Neal Schwarzfeld attached as **Exhibit 2** and

letters attached thereto.  Accordingly, Kamber requests that the Court enter an order providing

that the automatic stay does not apply to Kamber's continuing enforcement of its rights under the

Sublease including termination of the Sublease.[3]

**V.    Even If The Automatic Stay Applies Here, The Court Should Grant Relief From the Stay For Cause Under Bankruptcy Code § 362(d)(1).**

41.    Kamber requests stay relief to the extent that this Court finds that Lehman's lien

interest in the Sublease falls within the ambit of the automatic stay.  Ample cause exists to

modify the stay under Bankruptcy Code § 362(d)(1), which provides that "[o]n request of a party

in interest . . . the court shall grant relief from stay . . . for cause, including the lack of adequate

protection of an interest in property of such party in interest."

---

[3]    Purported Subtenant is currently attempting to obtain a ruling from the state court that the automatic stay does not apply.  Kamber prefers to obtain a ruling from this Court rather than the state court because Lehman is not a party to the state court litigation.  Lehman therefore might not be bound by an order of the state court determining the applicability of the stay and could seek enforcement of the stay against Kamber in this Court.  Accordingly, a ruling from the state court rather than from this Court would leave Kamber exposed to the strong possibility of facing a second round of litigation on the applicability of the stay.

42.    Except for the example of "lack of adequate protection," the term "cause" is not defined in the Bankruptcy Code.  Whether cause exists for relief from the automatic stay must be determined on a case-by-case basis, taking into account the totality of the circumstances.  In re Bogdanovich, 292 F.3d 104, 110 (2nd Cir. 2002); In re Enron Corp., 306 B.R. 465, 476 (Bankr. S.D.N.Y. 2004).  Generally, affirmative harm to the movant from the continuance of the automatic stay constitutes grounds for relief from the stay.  In re Boodrow, 192 B.R. 57, 60 (Bankr. S.D.N.Y. 1995), aff'd sub nom Capital Communications Federal Credit Union v. Boodrow, 197 B.R. 409 (N.D.N.Y. 1996), aff'd, 126 F.3d 43 (2nd Cir. 1997), cert. denied, 522 U.S. 1117 (1998).  The Court should also assess the impact of the stay to all parties and balance the harms among them.  Bogdanovich, 292 F.3d at 110.  Neither Lehman nor Purported Subtenant can show any harm; any rights they may have acquired were expressly made subject to Kamber's termination efforts and the litigation affecting the Sublease when they acquired such rights.

43.    In determining whether cause exists in this case, the Court should take into account the core purpose of the automatic stay and the fact that the stay, if applied under these circumstances, would apply primarily for the benefit of a non-debtor and where the Debtor owns only a possible lien interest and cannot achieve a permanent resolution by treating Kamber's non-claim in a plan.  Lehman's interest falls under the protection of the stay, if at all, only under the broadest possible reading of Bankruptcy Code § 362.  The showing required of Kamber should be minimal in light of the Supreme Court's observation that mere lien interests were not intended by Congress to be property of the bankruptcy estate.  United States v. Whiting Pools, Inc., Id.

18

44.    The arguments supporting the idea that the automatic stay should not apply at all in this case also support the argument that, if the stay does apply, it should be lifted for "cause" under Bankruptcy Code § 362(d)(1).  Kamber has spent years and many thousands of dollars attempting to address first Gettinger's, and later Purported Subtenant's, numerous and serious breaches of the Sublease.  As noted supra, if § 362 is read to stay Kamber's enforcement of its rights under the Sublease, Gettinger and Purported Subtenant could continue to refuse to comply with the requirements of the Sublease that they keep the Property in thorough repair and keep pressing their meritless damages suit against Kamber, all under cover of the automatic stay arising in Lehman's bankruptcy case.  Kamber would be powerless to enforce its rights under the Sublease against Gettinger and Purported Subtenant, both non-debtors, to prosecute Kamber's counterclaims, or to defend itself in the State Court Litigation.

45.    Absent stay relief to Kamber, Gettinger and Purported Subtenant will effectively obtain relief far superior to the relief they would obtain if they had filed their own bankruptcy cases.  Gettinger and Purported Subtenant would enjoy all of the benefits of the automatic stay while avoiding the need to comply with § 365's requirement that the debtor/tenant timely perform all obligations under the lease.  Congress cannot have intended that a non-debtor would be able to appropriate all of the benefits of the automatic stay without itself filing a bankruptcy petition.  If the Court finds itself constrained to find that the stay does apply, the circumstances described above easily constitute "cause" to modify the stay under § 362(d)(1).

46.    Stay relief is especially justified here because the Court has no means to adequately protect Kamber's interests if stay relief is denied.  If the stay is not modified, Purported Subtenant would be free to continue its attack against Kamber in state court, but Kamber would not be able to advance its counterclaims, the most fundamental possible

deprivation of due process.  Kamber would be left without means to compel compliance with the terms of the Sublease or to terminate the Sublease.

47.    Finally, granting stay relief to Kamber would allow the dispute between Kamber, Gettinger, and Purported Subtenant, three non-debtors, to be resolved where it should be - in state court.  In <u>Le Peck</u>, the court observed that "A proceeding to foreclose a mortgage primarily concerning two strangers to the bankruptcy proceeding . . . belongs in the local courts, not in the bankruptcy court."  14 B.R. at 196.  The same is true of the landlord-tenant dispute between Kamber, Gettinger, and Purported Subtenant.  In accordance with this Court's holding in <u>Le Peck</u>, Kamber should be permitted to resolve its differences with Gettinger and Purported Subtenant in state court.

WHEREFORE, Kamber requests that the Court enter an Order declaring that the automatic stay does not apply to any actions by Kamber or any party acting on Kamber's behalf to enforce Kamber's rights under the Sublease against any person or entity, including Debtor, even if enforcement of Kamber's rights would have a negative impact on Debtor or its bankruptcy estate. Without limiting the generality of the foregoing, Kamber requests that the Court specifically rule that the automatic stay does not apply to the following, whether or not they have an adverse impact on property of the Debtor's bankruptcy estate: (a) Kamber's issuance of additional notices relating to the Sublease to any person or entity; (b) Kamber's termination of the Sublease; (c) litigation of Kamber's claims and counterclaims relating to the Sublease against any person or entity (including, without limitation, any such claims that are or are made part of the State Court Litigation); (d) litigation to defend any claims against Kamber asserted by any person or entity that relate to the Sublease (including, without limitation, any

20

such claims that are or are made part of the State Court Litigation); or (e) to Kamber's assertion

of any other rights concerning or relating to the Sublease against any person or entity.

In the alternative, if the Court finds the automatic stay applicable in this matter, Kamber

requests that the Court enter an Order under Bankruptcy Code § 362(d)(1) modifying the stay to

permit Kamber or any party acting on Kamber's behalf to enforce Kamber's rights under the

Sublease against any person or entity, including Debtor, even if enforcement of Kamber's rights

would have a negative impact on Debtor or its bankruptcy estate. Without limiting the generality

of the foregoing, Kamber requests that the Court specifically modify the automatic stay to permit

the following, whether or not they have an adverse impact on property of the Debtor's

bankruptcy estate: (a) Kamber's issuance of additional notices relating to the Sublease to any

person or entity; (b) Kamber's termination of the Sublease; (c) litigation of Kamber's claims and

counterclaims relating to the Sublease against any person or entity (including, without limitation,

any such claims that are or are made part of the State Court Litigation); (d) litigation to defend

any claims against Kamber asserted by any person or entity that relate to the Sublease (including,

without limitation, any such claims that are or are made part of the State Court Litigation); and

(e) Kamber's assertion of any other rights concerning or relating to the Sublease against any

person or entity.  Kamber further requests that the Court direct that such relief be effective

immediately upon entry of the Order granting this Motion and that the ten day stay provided

under Fed.R.Bankr.P. Rule 4001(a)(3) of orders granting relief from the automatic stay shall not

apply.

Dated:  November 5, 2008

POLSINELLI SHALTON FLANIGAN SUELTHAUS PC

By:  */s/  Daniel J. Flanigan*
     DANIEL J. FLANIGAN
     7 Penn Plaza, Suite 600
     New York, New York 10001
     (212) 684-0199
     Fax No. (212) 684-0197

     DAVID D. FERGUSON
     700 West 47the Street, Suite 1000
     Kansas City, Missouri 64112-1802
     (816) 360-4311
     Fax No. (816) 753-1536

     NEAL SCHWARZFELD
     Penn Proefriedt Schwarzfeld & Schwartz
     114 West 47th Street - 19th Floor
     New York, New York 10036
     (212) 354-7700
     Fax (212) 997-5070
     Email nschwarzfeld@pennprolaw.com

ATTORNEYS FOR ABRAHAM KAMBER &
COMPANY LLC