# EXHIBIT E
# (CORRECTED)

# JUNIOR BUILDING
# LOAN AGREEMENT

## 125NORTH10, LLC

(Borrower)

### AND

**LEHMAN BROTHERS HOLDINGS INC.**, a Delaware corporation, individually as a Co-Lender and as Agent for one or more Co-Lenders

(Lender)

---

## BUILDING LOAN AGREEMENT

---

Dated:          March 28, 2008

Location:       125 North 10th Street
                Brooklyn, New York

Block:          2297
Lot:            1
County:         Kings

PREPARED BY:

Thacher Proffitt & Wood
Two World Financial Center
New York, New York  10281

Attention:  Mitchell G. Williams, Esq.

File No.:  16248-00715

THIS BUILDING LOAN AGREEMENT made the 28th day of March, 2008, between **125NORTH10, LLC**, a Delaware limited liability company having an office at c/o Investcorp International, 280 Park Avenue, 37th floor, New York, New York 10017 (hereinafter referred to as "Borrower"), and **LEHMAN BROTHERS HOLDINGS INC.**, a Delaware corporation, having an address at 399 Park Avenue, New York, New York 10022, individually as a Co-Lender and as Agent for one or more Co-Lenders (hereinafter referred to as "Lender");

## W I T N E S S E T H :

WHEREAS Borrower is the owner of the real property and improvements located at 125 North Tenth Street, Brooklyn, New York, as more particularly described in Exhibit A attached hereto (the "Premises");

WHEREAS Borrower and Lender are parties to that certain Master Loan Agreement dated as of the date hereof (said Master Loan Agreement, as modified and supplemented and in effect from time to time being herein called the "Loan Agreement"), which Loan Agreement provides, among other things, for a Loan to be made by Lender to Borrower in the maximum principal amount of $9,224,433.60, or so much thereof as may be advanced from time to time, provided however, a portion of such Loan representing the Building Loan Facility equal to $7,950,232.79 evidenced by that certain Building Loan Note (the "Building Loan Note") shall be advanced from time to time pursuant to the terms and conditions of the Original Building Loan Agreement as amended and restated herein;

NOW THEREFORE, in consideration of the premises and the covenants and agreements hereinafter set forth, and in and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby covenant and agree that all of the terms, provisions and obligations contained in the Original Building Loan Agreement are amended and restated as follows:

1.     <u>Definitions</u>.  All terms as used in this Agreement shall, unless otherwise defined in the body of this Agreement, have the following meanings:

(a)     <u>Architect</u>:  The term "Architect" as used in this Agreement shall mean Scarano & Associates or such other architect selected by Borrower and approved by Lender, such approval not to be unreasonably withheld, conditioned or delayed.

(b)     <u>Architect Contract</u>:  The term "Architect Contract" as used in this Agreement shall mean that certain architect contract entered into between Borrower and Architect, which is hereby approved by Lender.

(c)     <u>Building Loan Facility</u>:  The term "Building Loan Facility" as used in this Agreement shall have the meaning ascribed to such term in the Loan Agreement.

(d)     <u>Building Loan Mortgage</u>:  The term "Building Loan Mortgage" as used in this Agreement shall mean that certain Building Loan Mortgage and Security Agreement and Consolidation, Modification and Restatement Agreement

2

given by Borrower to Lender as collateral for the indebtedness evidenced by the Building Loan Note.

(e)    <u>Building Loan Note</u>:  The term "Building Loan Note" as used in this Agreement shall mean that certain Building Loan Promissory Note dated the date hereof in the maximum principal amount of $7,950,232.79   given by Borrower to Lender.

(f)    <u>Commencement Date</u>:  The term "Commencement Date" as used in this Agreement shall mean June 27, 2006, subject to extension thereof pursuant to the Loan Documents.

(g)    <u>Completion Date</u>:  The term "Completion Date" as used in this Agreement shall mean January 9, 2009, subject to extension thereof pursuant to the Loan Documents.

(h)    <u>Construction Manager</u>:  The term "Construction Manager" as used in this Agreement shall mean Ryder Construction Incorporated or such other construction manager selected by Borrower and approved by Lender, such approval not to be unreasonably withheld, conditioned or delayed.

(i)    <u>Construction Manager Contract</u>:  The term "Construction Manager Contract" as used in this Agreement shall mean that certain contract between Construction Manager and Borrower which is hereby approved by Lender.

(j)    <u>Debt</u>:  The term "Debt" as used in this Agreement only shall mean all principal, interest and other sums of any nature whatsoever which shall or may become due and payable by Borrower in connection with the Building Loan Facility.

(k)    <u>Direct Construction Costs</u>:  The term "Direct Construction Costs shall have the meaning set forth in Section 8 hereof.

(l)    <u>Force Majeure</u>:  The term "Force Majeure" shall mean the failure of Borrower to perform any obligation hereunder by reason of any act of God, enemy or hostile government action, terrorist attacks, civil commotion, insurrection, sabotage, strikes or lockouts or any other reason due to cause or causes beyond the reasonable control of Borrower or any Affiliate of Borrower; provided, however, the failure of Borrower to perform any obligation hereunder by reason of any act or omission of General Contractor shall not be deemed to be an act of Force Majeure, unless such act or omission was, in itself, a result of Force Majeure.

(m)    <u>General Contractor</u>:  The term "General Contractor" as used in this Agreement shall mean Ryder Construction Incorporated or such other construction manager selected by Borrower and approved by Lender, such approval not to be unreasonably withheld, conditioned or delayed.

[TPW: NYLEGAL:750100.5] 16248-00715 03/26/2008 05:08 PM

(n)    General Construction Contract:    The term "General Construction Contract" as used in this Agreement shall mean (i) the Construction Manager Contract in the event that General Contractor and Construction Manager are the same entity and use AIA Document A121 CMc-2003 and AGC Document 565; or (ii) that certain contract between Construction Manager and Borrower which has been approved by Lender.

(o)    Governmental Authorities:    The term "Governmental Authorities" as used in this Agreement shall mean all governmental authorities having jurisdiction over the Premises and the Improvements.

(p)    Improvements:    The term "Improvements" as used in this Agreement shall mean the improvements constructed on the Premises.

(q)    Inspecting Engineer:    The term "Inspecting Engineer" as used in this Agreement shall mean Newbanks or such other inspecting engineer to be selected by Lender from time to time.  Lender shall use commercially reasonable efforts to notify Borrower prior to hiring a replacement Inspecting Engineer and shall notify Borrower in writing promptly after any such hiring.

(r)    Loan Documents:    The term "Loan Documents" as used in this Agreement shall collectively mean the Note, the Mortgage, the Loan Agreement, this Agreement and all other documents and instruments of any nature whatsoever executed and delivered in connection with the Loan.

(s)    Major Contracts:    The term "Major Contracts" as used in this Agreement shall mean any contract or contracts (other than the General Construction Contract and the Architect Contract) entered into with any single contractor or materialman employed by Borrower in connection with the construction of the Improvements and providing for aggregate payments to such subcontractor or materialman equal to or in excess of $200,000.

(t)    Mortgage:    The term "Mortgage" as used in this Agreement shall mean the Building Loan Mortgage.

(u)    Note:    The term "Note" as used in this Agreement shall mean the Building Loan Note.

(v)    Other Project Costs:    The term "Other Project Costs" as used in this Agreement shall have the meaning set forth in Section 8 hereof.

(w)    Reserved.

(x)    Preliminary Survey:    The term "Preliminary Survey" as used in this Agreement shall mean that certain survey prepared by Leonard J. Strandberg and Associates, Consulting Engineers and Land Surveyors, P.C. dated August 15, 2006 and certified to Lender.

4

(y)    Retainage: The term "Retainage" as used in this Agreement shall mean the lesser of (i) 10% of Direct Construction Costs actually incurred by Borrower for work in place as part of the Improvements, as certified from time to time by the Inspecting Engineer pursuant to the provisions of this Agreement, or (ii) the amount actually held back by Borrower from the General Contractor and all subcontracts and materialmen engaged in the construction of the Improvements, but in no event less than 5% of Direct Construction Costs actually incurred by Borrower. The Retainage shall not be released until construction of the Improvements has been completed in accordance with the Plans and Specifications approved by the Inspecting Engineer, such approval not to be unreasonably withheld, conditioned or delayed, and the provisions of this Agreement, provided, however, the applicable Retainage may be released to subcontractors or materialmen upon completion of such subcontractor job or work in accordance with the Plans and Specifications and/or to a materialman upon the delivery to the site of all materials covered by such contract and evidence acceptable to Lender that such materials are stored in a secure place and adequately insured..

(z)    Title Company: The term "Title Company" as used in this Agreement shall mean Commonwealth Land Title Insurance Company or such other reputable and nationally recognized title company reasonably acceptable to Lender.

Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Loan Agreement.

2.    The Note and the Mortgage. The Building Loan Facility shall be (i) evidenced by the Building Loan Note, (ii) secured by the Building Loan Mortgage covering the fee simple estate of Borrower in the Premises, the Improvements and other property, rights and interests of Borrower in the Premises, the Improvements and other property, right and interests of Borrower described therein (the Premises, the Improvements to be erected thereon and such other property, rights and interest being hereinafter collectively referred to as the "Mortgaged Property"), (iii) made subject to the terms and conditions of the Loan Agreement, and (iv) advanced in accordance with the provisions of this Agreement.

3.    The Improvements. Borrower has submitted to Lender and the Inspecting Engineer a set of plans and specifications for the Improvements prepared by the Architect, as more particularly described in Exhibit B attached hereto (hereinafter referred to as the "Plans and Specifications"). The Plans and Specifications have been submitted to the General Contractor, and the General Contractor has executed and delivered the General Construction Contract to Borrower, a copy of which has been delivered to and approved by Lender. Borrower represents and warrants to Lender that appropriate Governmental Authorities have issued all required permits, certificates, licenses and other approvals required for the commencement of construction of the Improvements in accordance with the Plans and Specifications. Each material addition or modification to the Plans and Specifications shall be approved in writing by Lender, the Inspecting Engineer and, to the extent required by law, by the appropriate Governmental Authorities; provided, however, that such approval shall not be unreasonably withheld, conditioned or delayed by Lender or the Inspecting Engineer. Borrower shall not

5

commence any work on any stage or phase of the Improvements unless all required permits, certificates, licenses and approvals therefor have been issued or obtained from the appropriate Governmental Authorities with respect to the commencement of such stage or phase of construction. The Plans and Specifications as approved by Lender shall become the property of Lender during the continuance of an Event of Default under the Loan Documents. The Improvements shall be constructed and equipped in compliance with the requirements of the Governmental Authorities and the appropriate Board of Fire Underwriters, if any, or other similar body, if any, acting in and for the locality in which the Premises are situated. Compliance with the provisions of this paragraph and any other provisions of this Agreement relating to the construction and equipping of the Improvements shall be determined by the Inspecting Engineer in its reasonable discretion. At all times Lender, the Inspecting Engineer, and their respective agents and employees, shall have the right of entry and free access to the Premises to inspect the Improvements, subject to the rights of any third party condominium owners with respect to individual condominium units.

4.    <u>Commencement of Construction</u>.  Borrower shall commence construction of the Improvements on or before the Commencement Date subject to Force Majeure.

5.    <u>Completion of Improvements</u>.  Borrower shall construct and complete the Improvements substantially in accordance with the Plans and Specifications (as may be amended in accordance with the Loan Documents), and shall equip the Improvements substantially in accordance with the Condominium Documents, and in accordance with the provisions of this Agreement on or before the Completion Date subject to Force Majeure and free and clear of all liens, encumbrances and security instruments (other than the Mortgage and Permitted Encumbrances).  For the purposes of this Agreement, the Improvements shall not be deemed to have been completed until (i) the Improvements have, in the reasonable opinion of the Inspecting Engineer, been substantially completed (exclusive of punch list items) in accordance with the Plans and Specifications, (ii) the Improvements shall contain all fixtures and equipment required for the use and operation of the Improvements for their intended use (as set forth in the Condominium Documents) or which may be required by any Governmental Authority or by any law, regulation or rule of any Governmental Authority for the use or operation of the Improvements for their intended use, (iii) one or more temporary certificates of occupancy and all other material certificates, licenses, consents and approvals required for the use and operation of the Improvements shall have been issued by or obtained from the appropriate Governmental Authorities, (iv) all Direct Construction Costs and Other Project Costs (both as hereinafter defined) shall have been paid in full, other than respect to Retainage or punch-list items.

6.    <u>Title Insurance and Survey</u>.  Borrower has delivered to Lender a title insurance policy or a title binder or a certificate of title of the Title Company containing the agreement of the Title Company to issue its policy of title insurance in the amount of the Loan insuring the lien of the Mortgage, which is hereby approved in all respects by Lender.  Borrower has delivered to Lender the Preliminary Survey, which is hereby approved in all respects by Lender.  Borrower shall deliver to Lender (i) an as-built survey within forty-five (45) days after the completion of the Improvements, and (ii) any additional surveys reasonably requested or reasonably required by Lender, the Inspecting Engineer or the Title Company within forty-five (45) days after request, it being agreed that any change in the state of facts shown in any such updated survey, other than a change in facts due to the construction of the Improvements in

6

accordance with this Agreement, shall be subject to approval by Lender and the Inspecting Engineer, such approval not to be unreasonably withheld, conditioned or delayed.

       7.    <u>Hazard Insurance</u>.  Borrower shall furnish to Lender (with evidence of the payment of premiums therefor), or Lender may obtain at Borrower's expense, insurance as required by the Loan Agreement.  Upon completion of the Improvements the insurance shall be converted to a standard hazard insurance policy with extended coverage and otherwise complying with the provisions of the Loan Agreement.

       8.    <u>Loan Advances</u>.  Subject to compliance by Borrower with the terms and conditions of this Agreement in all material respects, Lender shall make advances under the Building Loan Facility to Borrower (i) for direct construction costs incurred by Borrower in connection with the construction of the Improvements (hereinafter referred to as "Direct Construction Costs") and (ii) for costs, other than Direct Construction Costs, incurred by Borrower in connection with the construction of the Improvements (hereinafter referred to as "Other Project Costs"), each as set forth on the construction budget attached to the Loan Agreement, as may be amended in accordance with the Loan Documents (the "Construction Budget"), as the same may be revised in accordance with the provisions of the Loan Agreement. Lender shall not be required to make advances under the Building Loan Facility for costs incurred by Borrower with respect to materials stored on or off the Premises unless Borrower has furnished reasonably satisfactory evidence that such materials are stored, secured and insured in accordance with the provisions of the General Construction Contract and are permitted to be so stored pursuant to the General Construction Contract.

       Each request by Borrower to Lender for an advance of the Building Loan Facility shall be made in accordance with Section 2.1.4 of the Loan Agreement.

       9.    <u>Additional Conditions to Loan Advances</u>.  The obligation of Lender to make advances under the Building Loan Facility pursuant to this Agreement is subject to the following additional conditions precedent:

       (a)    Satisfaction of each of the conditions precedent set forth in Section 2.1.4 of the Loan Agreement, but only to the extent applicable to such advances.

       (b)    Each Request for Advance shall be accompanied by a certificate of the Inspecting Engineer in the form attached to the Request for Advance based upon an on site inspection of the Improvements made by the Inspecting Engineer not more than ten (10) days prior to the date of such Request for Advance, in which the Inspecting Engineer shall (i) certify that the portion of the Improvements completed as of the date of such inspection has been substantially completed in accordance with the Plans and Specifications, and (ii) state its estimate of (w) the percentage of construction of the Improvements completed as of the date of such inspection on the basis of work in place as part of the Improvements and the Construction Budget, (x) Direct Construction Costs actually incurred for work in place as part of the Improvements as of the date of such inspection, (y) the actual sum necessary to complete construction of the Improvements in accordance with the Plans and Specifications, and (z) the amount of time from the date of such inspection which will be required to

complete construction of the Improvements in accordance with the Plans and Specifications. Lender shall use commercially reasonable efforts to cause the Inspecting Engineer to promptly perform its obligations under this Agreement.

(c)    Each Request for Advance shall be accompanied by copies of all material documentation required to be delivered by the General Contractor to Borrower pursuant to the General Construction Contract with respect to requests for payment thereunder, including, without limitation, an Application for Payment (as defined in the General Construction Contract) and any accompanying documents and a Certificate for Payment (as defined in the General Construction Contract) by the Architect.

(d)    Prior to each advance under the Building Loan Facility the Title Company shall have issued (i) a continuation of title showing title to the Mortgaged Property to be vested in Borrower and no exceptions to the title of the Mortgaged Property other than those exceptions previously approved by Lender, and Permitted Encumbrances, and (ii) a commitment to insure the priority of the lien of the Mortgage, subject only to exceptions previously approved by Lender, and Permitted Encumbrances, for the full amount of each such advance under the Building Loan Facility and all previous advances of the Loan made by Lender to Borrower pursuant to this Agreement. If required by Lender, such continuation of title shall contain affirmative insurance in the customary New York form that any covenants and restrictions, if any, recorded against the Mortgaged Property have not been violated by the Improvements.

(e)    Prior to each advance under the Building Loan Facility by Lender to Borrower pursuant to this Agreement, Borrower shall, upon request of Lender, furnish Lender with evidence reasonably satisfactory to Lender, showing payment of all bills and charges for which advances under the Building Loan Facility have been previously made pursuant to this Agreement. Borrower shall also deliver to Lender, upon request, such bills, receipts, invoices and other evidence as may reasonably be required by Lender to substantiate the actual incurrence by Borrower of Direct Construction Costs and Other Project Costs.

(f)    Borrower shall, if required by Lender, deliver to Lender a written statement executed by the General Contractor certifying that the General Contractor has received payment in full of all monies owed to the General Contractor, and a written statement executed by each subcontractor and materialman engaged in the construction of the Improvements on behalf of the General Contractor or Borrower certifying that each such subcontractor and materialman has received payment in full of all monies owed to each such subcontractor and materialman by the General Contractor or Borrower, in each case, except for any amounts to be paid out of the requested advance.

(g)    Construction of the Improvements shall substantially be in compliance with all material applicable laws, rules, restrictions, orders and regulations of the Governmental Authorities, and Borrower shall have delivered to Lender copies of all material certificates, authorizations, permits and licenses

8

required for the current stage of construction of the Improvements in accordance with the Plans and Specifications, as issued by the appropriate Governmental Authorities.

(h)    Borrower shall make available to the Inspecting Engineer, upon request, all shop and related drawings used in connection with the Plans and Specifications and the construction of the Improvements at the location where the same are kept.

(i)    The Inspecting Engineer shall be of the reasonable opinion that the Improvements can be completed by the Completion Date, subject to Force Majeure (provided that a certificate of the Inspecting Engineer delivered pursuant to Section 9(b) hereof stating the Inspecting Engineer's estimate that the Improvements can be completed by the Completion Date, subject to Force Majeure, shall be conclusive as to Inspecting Engineer's opinion at the time such certification is made).

(j)    Borrower has delivered to Lender and the Inspecting Engineer a copy of the Architect Contract, and Lender acknowledges that Lender and the Inspecting Engineer have received and approved the Architect Contract. Borrower shall not agree to any material modification or any termination of the Architect Contract without the prior written approval of Lender, which approval shall not be unreasonably withheld, conditioned or delayed.

(k)    Borrower has delivered to Lender and the Inspecting Engineer a copy of the General Construction Contract, and Lender acknowledges that Lender and Inspecting Engineer have received and approved the General Construction Contract.    Borrower shall not agree to any material modification or any termination of the General Construction Contract without the prior written approval of Lender, including, without limitation, any modification that would result in any increase to the guaranteed maximum price of the General Construction Contract.    Borrower shall not without the prior written approval of Lender, which approval shall not be unreasonably withheld, conditioned or delayed, approve, request or issue any Change Order (as defined in the General Construction Contract) or any Construction Change Directive (as defined in the General Construction Contract), that would (i) increase the guaranteed maximum price of the General Construction Contract by more than $100,000; (ii) cause a delay in the construction timetable of the Improvements or (iii) result in the use of any materials in connection with the construction of the Improvements that are of lesser quality than the materials required in the General Construction Contract; provided, however, in the event that the aggregate sum of all Change Orders and Construction Change Directives increase the guaranteed maximum price of the General  Construction Contract by more than $300,000 in the aggregate, Lender shall have the right to approve any subsequent Change Order and Construction Change Directive, which consent shall not be unreasonably withheld, conditioned or delayed.

9

(l)    Borrower shall have delivered to Lender and the Inspecting Engineer copies of all of the Major Contracts now or hereafter entered into, each of which Major Contracts shall be in form and substance reasonably satisfactory in all respects to Lender and the Inspecting Engineer and with contractors and materialmen reasonably satisfactory to Lender. Borrower represents that no Major Contract exists as of the date hereof. Borrower shall not agree to any material modification or any termination of any Major Contract without prior written approval of Lender, such approval not to be unreasonably withheld, conditioned or delayed.

(m)    Reserved.

(n)    Reserved.

(o)    Borrower has caused the Architect and the General Contractor to respectively execute and deliver to Lender contemporaneously with the execution and delivery of their respective contracts letter agreements pursuant to the provisions of which the Architect and the General Contractor have agreed to perform their respective contracts at no additional cost or expense for the benefit of Lender, its nominee, or wholly owned subsidiary, during the continuance of an Event of Default under the Loan Documents or a foreclosure of the Mortgage (as more particularly set forth therein), which letter agreements have been approved by Lender.

(p)    Reserved.

(q)    Reserved.

(r)    Lender shall not be obligated to make an advance under the Building Loan Facility with respect to any subcontractor or materialman providing work or materials with respect to the Improvements unless such subcontractor or materialman is providing such work or materials under a signed contract or purchase order.

(s)    Borrower shall observe and perform all of the material terms, covenants and conditions of the Architect Contract, the General Construction Contract and the Major Contracts on Borrower's part to be observed or performed.

(t)    To the extent that Borrower actually realizes any cost savings with respect to any costs to construct the Improvements pursuant to the General Construction Contract and Borrower is obligated to pay to the General Contractor 50% of such savings pursuant to the General Construction Contract, Lender shall make advances under the Building Loan Facility to Borrower to make such payments to the General Contractor provided all other conditions to the making of such advance under the Building Loan Facility have been satisfied in accordance with the applicable provisions of this Agreement.

10

All conditions and requirements of this Agreement relating to the obligations of Lender to make advances under the Building Loan Facility are for the sole benefit of Lender and no other person or party (including, without limitation, the General Contractor and subcontractors and materialmen engaged in the construction of the Improvements) shall have the right to rely on the satisfaction of such conditions and requirements by Borrower as a condition precedent to Lender's making an advance under the Building Loan Facility. Lender shall have the absolute right, in its sole discretion, to waive any such condition or requirement as a condition precedent to making an advance of the Loan.

10.    Deficiency.  Lender shall not be obligated to make any advance under the Building Loan Facility to Borrower if, in the reasonable opinion of Lender (based on back-up documentation provided to Lender and Borrower by a reputable contractor, architect or engineer reasonably selected by Lender and in any event, due to a change in circumstances arising after the Closing Date), the balance of the Building Loan Facility yet to be advanced by Lender is at any time less (the amount by which it is less being hereinafter referred to as the "Deficiency") than the actual sum, as reasonably estimated by Lender and the Inspecting Engineer (and verified by such back-up documentation), which will be required to complete construction of the Improvements in accordance with the Plans and Specifications and this Agreement and to pay all Direct Construction Costs and Other Project Costs; provided, however, all available cost savings and/or contingency line items shall be deemed available to Borrower in the determination of any Deficiency; and provided further that, to the extent that the Deficiency is caused by cost overruns that are the responsibility of the General Contractor pursuant to the General Construction Contract, a "Deficiency" shall not be deemed to exist and Borrower shall not be required to comply with the foregoing provision unless and until the General Contractor has failed to perform its obligations under the General Construction Contract after any applicable notice and cure periods set forth therein.  Borrower shall, at Borrower's option within fifteen (15) days after being notified in writing by Lender that there is a Deficiency, either (i) invest in the Improvements in a manner reasonably satisfactory to Lender an amount equal to the Deficiency and deliver to Lender evidence reasonably satisfactory to Lender of such investment, and/or (ii) deposit with Lender an amount sufficient to eliminate the Deficiency.  Any amounts deposited by Borrower with Lender to pay the Deficiency shall be held in an interest-bearing account designated by Lender as additional collateral for the Loan.  Any Deficiency deposited by Borrower with Lender shall be disbursed by Lender to pay Direct Construction Costs and Other Project Costs as construction of the Improvements progresses upon the same terms and conditions set forth herein applicable to advances under the Building Loan Facility.  Lender shall have no obligation to make any advances under the Building Loan Facility for any Direct Construction Costs or Other Project Costs until such time as all Deficiency sums required to be deposited by Borrower with Lender have been disbursed to Borrower to pay Direct Construction Costs and Other Project Costs.  If an Event of Default (as hereinafter defined) shall occur and be continuing, Lender, in addition to all other rights which it may have, shall have the unconditional right, at its option, to apply, in whole or in part, any amounts deposited by Borrower with Lender with respect to the Deficiency, to the payment of the Debt in such order and priority as Lender shall deem appropriate.

11.    Specific Additional Covenants of Borrower.  Borrower shall comply with each of the following terms and conditions:

11

[TPW: NYLEGAL:750100.5] 16248-00715  03/26/2008 05:08 PM

(a)    Borrower shall obtain and furnish to Lender within sixty (60) days after the completion of the Improvements the originals or copies of all temporary certificates of occupancy and all other material certificates, licenses, consents and other approvals of the Governmental Authorities and of the appropriate Board of Fire Underwriters, if any, or other similar body, if any, acting in and for the locality in which the Premises are situated which are required for the use and occupancy of the Improvements. In no event shall Lender be required to make the last advance under the Building Loan Facility pursuant to this Agreement until all such certificates, licenses, consents and approvals have been obtained and delivered to Lender.

(b)    Borrower shall furnish to Lender from time to time upon request, (i) the names of all persons with whom Borrower or the General Contractor has contracted or intends to contract for the construction of the Improvements or the furnishing of labor or materials in connection therewith, (ii) a list of all unpaid bills for labor and materials with respect to construction of the Improvements, (iii) budgets of Borrower and revisions thereof showing estimated Direct Construction Costs and Other Project Costs and other costs and expenses to be incurred in connection with the completion of construction of the Improvements, and (iv) lien waivers, receipted bills or other evidences of payment of all Direct Construction Costs and Other Project Costs incurred so far, other than with respect to Retainage or other payments to be made from future advances or the final advance of the Building Loan Facility.

(c)    Prior to completion of the Improvements, if the Improvements are partially or totally damaged or destroyed by fire or other casualty, Borrower shall comply with the applicable provisions of the Loan Agreement with respect thereto in accordance therewith.

(d)    Borrower shall pay when due all Direct Construction Costs, Other Project Costs and other costs and expenses otherwise required under this Agreement for the construction of the Improvements in accordance with the provisions of this Agreement, including without limitation, any repair and restoration of the Improvements pursuant to the provisions of this paragraph hereinabove set forth.

(e)    Borrower shall pay all fees and charges it is expressly responsible for under the Loan Documents subject to and in accordance with the applicable provisions of the Loan Agreement.

(f)    Except as set forth in the Loan Agreement, Borrower shall not assign this Agreement or the moneys to be advanced and disbursed hereunder or convey, assign, pledge, encumber or mortgage (except for the Mortgage and Permitted Encumbrances) any part of the Premises without the prior written consent of Lender, but if Borrower does any of the foregoing, Lender may, in its discretion, continue to make advances under the Building Loan Facility to Borrower or to those who succeed to the interest of Borrower in the Premises pursuant to the terms of this Agreement, and all sums so advanced shall be

12

deemed to be advances made in pursuance and not in modification hereof and shall be evidenced and secured by the Building Loan Note and the Building Loan Mortgage.

(g)    Borrower shall furnish to Lender on request the contracts, bills of sale, statements, receipted vouchers or other agreements, under which Borrower claims title to such materials, equipment, furniture, fixtures or articles of personal property.

(h)    Borrower shall deliver to Lender any documentation (including, without limitation, any progress reports) required to be delivered by General Contractor to Borrower pursuant to the General Construction Contract.

12.    <u>Events of Default</u>.  The term "Event of Default" as used in this Agreement shall mean the occurrence of any one or more of the following events:

(a)    If Borrower shall continue to be in default under any of the provisions of this Agreement for four (4) Business Days with respect to any regularly scheduled payment hereunder and five (5) days after notice from Lender in the case of any other monetary default hereunder, or for thirty (30) days after notice from Lender in the case of any other default, provided that if such default cannot reasonably be cured within such thirty (30) day period and Borrower shall have commenced to cure such default within such thirty (30) day period and thereafter diligently and expeditiously proceeds to cure the same, such thirty (30) day period shall be extended for so long as it shall require Borrower in the exercise of due diligence to cure such default, it being agreed that no such extension shall be for a period in excess of ninety (90) days, or shall be construed as having the effect of extending the Completion Date;

(b)    If an Event of Default shall occur and be continuing beyond any applicable grace period under the Loan Agreement, the Note, the Mortgage or any of the other Loan Documents;

(c)    If any survey required or requested by Lender pursuant to the provisions of this Agreement shows any condition not approved by Lender, and such condition is not removed within sixty (60) days after notice thereof by Lender to Borrower; provided that if such default cannot reasonably be cured within such sixty (60) day period and Borrower shall have commenced to cure such default within such sixty (60) day period and thereafter diligently and expeditiously proceeds to cure the same, such sixty (60) day period shall be extended for so long as it shall require Borrower in the exercise of due diligence to cure such default, it being agreed that no such extension shall be for a period in excess of sixty (60) days, or shall be construed as having the effect of extending the Completion Date; or

(d)    If the Improvements are not substantially completed in accordance with the Plans and Specifications (subject to completion of punch list items) in the

13

judgment of the Inspecting Engineer on or before the Completion Date, subject to Force Majeure.

Upon the occurrence and during the continuance of an Event of Default, Lender (i) may, at its option and in its sole discretion, declare the Debt immediately due and payable, and (ii) may, at its option and in its sole discretion, cease to make advances of the Loan, and (iii) may pursue any and all remedies provided for in the Loan Documents, or otherwise available.

13.    Other Remedies.    Upon the occurrence and during the continuance of an Event of Default, whether or not the Debt shall be or shall have been declared due and payable or Lender shall have instituted any foreclosure or other action for the enforcement of the Loan Documents, Lender may, in addition to any other remedies which Lender may have under the Loan Documents and in Lender's sole and absolute discretion, (a) enter upon the Premises and complete the Improvements in accordance with the Plans and Specifications which such changes therein as Lender may deem appropriate and employ watchmen to protect the Improvements, all at the risk, cost and expense of Borrower, (b) at any time discontinue any work commenced in respect of the Improvements or change any course of action undertaken by it and not bound by any limitations or requirements of time whether set forth herein or otherwise, (c) assume any construction contract made by Borrower in any way relating to the Improvements and take over and use all or any part of the labor, materials, equipment, furniture, fixtures and articles of personal property contracted for by Borrower, whether or not previously incorporated into the Improvements, and (d) in connection with any construction of the Improvements undertaken by Lender pursuant to the provisions of this paragraph (x) engage builders, contractors, architects, engineers and others for the purpose of furnishing labor, materials, equipment, furniture, fixtures and articles of personal property in connection with the construction of the Improvements, (y) pay, settle or compromise all bills or claims which may become liens against the Mortgaged Property, or any portion thereof, or which have been or may be incurred in any manner in connection with completing construction of the Improvements or for the discharge of liens, encumbrances or defects in the title of the Mortgaged Property, or any portion thereof, and (z) take or refrain from taking such action hereunder as Lender may from time to time determine in its sole discretion.  Borrower shall be liable to Lender for all sums actually paid or incurred by Lender to construct the Improvements in accordance with the Plans and Specifications and to equip the Improvements as required by applicable law or the Condominium Documents (as applicable), whether the same shall be paid or incurred pursuant to the provisions of this paragraph or otherwise but only during the continuance of an Event of Default, and all payments made or liabilities incurred by Lender hereunder of any kind whatsoever shall be paid by Borrower to Lender upon demand with interest at the Default Rate, from the date of payment by Lender to the date of payment to Lender, which sums and interest shall be secured by the Mortgage.  For the purpose of exercising the rights granted by this paragraph, Borrower hereby irrevocably constitutes and appoints Lender its true and lawful attorney-in-fact to execute, acknowledge and deliver any instruments and to do and perform any acts in the name and on behalf of Borrower; provided, however, Lender shall exercise such right only during the continuance of an Event of Default.

14.    Incorporation of Provisions.    The Note, the Mortgage and the Loan Agreement are subject to the conditions, stipulations, agreements and covenants contained herein to the same extent and effect as if fully set forth therein until this Agreement is terminated by the completion of the Improvements and the payment in full of the Debt.

14

[TPW: NYLEGAL:750100.5] 16248-00715 03/26/2008 05:08 PM

15.    <u>Further Assurances</u>.  Borrower shall on demand of Lender do any act or execute any additional documents reasonably required by Lender to secure the Building Loan Note or confirm the lien of the Building Loan Mortgage, including, but not limited to, a note, mortgage, deed of trust and other security documents, or an agreement extending or otherwise modifying the Building Loan Note and the Building Loan Mortgage, and a certificate as to the amount of the Debt; provided that any such additional document, agreement or certificate does not increase the obligations or reduce the benefits of Borrower under the Loan Documents.

16.    <u>Representations and Warranties</u>.  Borrower represents and warrants to Lender as of the date hereof as follows:

(a)    The Improvements and their contemplated use will upon completion in accordance with Plans and Specifications comply in all material respects with all applicable zoning resolutions, building costs, environmental and other applicable laws, rules and regulations.

(b)    Borrower (and the undersigned representative, if any, of Borrower) has the full power and authority to execute and deliver this Agreement, and this Agreement constitutes the binding and enforceable obligations of Borrower in accordance with its terms.

(c)    Borrower has delivered to Lender originals or copies of all material permits, certificates, licenses and approvals required for the commencement of construction of the Improvements in accordance with the Plans and Specifications.

(d)    Borrower has delivered to Lender a survey, certified to Lender, showing the partial foundation of the Improvements as constructed as of the date of such survey.

17.    <u>Construction of Agreement</u>.  The titles and headings of the paragraphs of this Agreement have been inserted for convenience of reference only and are not intended to summarize or otherwise describe the subject matter of such paragraphs and shall not be given any consideration in the construction of this Agreement.

18.    <u>Trust Fund</u>.  Borrower shall receive the advances to be made under this Agreement and shall hold the right to receive such advances and disbursements as a trust fund to be applied first for the purpose of the cost of the Improvements, and Borrower shall apply the same first to the payment of the cost of the Improvements before using any part of the total of the same for any other purpose.

19.    <u>Parties Bound, etc</u>.  The provisions of this Agreement shall be binding upon and inure to the benefit of Borrower, Lender and their respective heirs, executors, legal representatives, successors and assigns (except as otherwise prohibited by this Agreement).

20.    <u>Waivers</u>.  Lender may at any time and from time to time waive any one or more of the conditions contained herein, but any such waiver shall be deemed to be made in pursuance hereof and not in modification thereof, and any such waiver in any instance or under

15

particular circumstance shall not be considered a waiver of such condition in any other instance or any other circumstance.

     21.    Governing Law. This Agreement is and shall be deemed to be a contract entered into pursuant to the laws of the State of New York and shall in all respects be governed, construed, applied and enforced in accordance with the laws of the State of New York.

     22.    Severability. If any term, covenant or provision of this Agreement shall be held to be invalid, illegal or unenforceable in any respect, this Agreement shall be construed without such term, covenant or provision.

     23.    Notices. Any notice, request, demand, statement, authorization, approval or consent made hereunder shall be in writing and shall be sent by registered or certified mail, return receipt requested, and shall be deemed given when postmarked and addressed as follows:

If to Borrower:     125North10, LLC
c/o Investcorp
280 Park Avenue
New York, New York 10017
Attention: John R. Fraser/Herb Myers
Facsimile No.: (212) 983-7073

     Gibson Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
Attention: David Furman, Esq.
Facsimile No.: (212) 351- 5294

If to Lender:     Lehman Brothers Holdings Inc.
399 Park Avenue
New York, New York 10022
Attention: Charlie Manna
Facsimile No.: (646) 758-5366

     and

     Thacher Proffitt & Wood LLP
Two World Financial Center
New York, New York 10281
Attention: Mitchell G. Williams, Esq.
Facsimile No.: (212) 912-7751

Each Party may designate a change of address by notice to the other party, given at least fifteen (15) days before such change of address is to become effective.

     24.    Fees and Expenses. Borrower shall pay to Lender, upon demand, all expenses incurred by Lender in connection with the collection of the Debt after an Event of Default, the enforcement of the Loan Documents, and in curing any Event of Default under the Loan Documents (including, without limitation, attorneys' fees), with interest thereon at the

16

Default Rate, from the date incurred by Lender to the date of repayment to Lender, which sums and interest shall be secured by the Mortgage.

25.    Modification.    This Agreement may not be modified, amended or terminated, except by an agreement in writing executed by the parties hereto.

26.    Affidavit.    An affidavit pursuant to Section 22 of the Lien Law of New York is attached hereto as Exhibit E and made a part hereof.

[TPW: NYLEGAL:750100.5] 16248-00715  03/26/2008 05:08 PM

**IN WITNESS WHEREOF,** Borrower and Lender have duly executed this Agreement the day and year first above written.

**BORROWER:**

**125NORTH10, LLC,** a Delaware limited liability company

By: _____
Name:  John R. Fraser
Title:   President

Second Building Loan Agreement

STATE OF New York )

COUNTY OF New York ) ss:

On the 11th day of March, in the year 2008 before me, the undersigned, personally appeared John R. Fraser, personally known to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

KIMBERLY N. CIAVAGLIA
Notary Public - State of New York
No. 01Cl6164500
Qualified in New York County
My Commission Expires April 23, 2011

Second Building Loan Agreement

**LENDER:**

**LEHMAN BROTHERS HOLDINGS INC.,** a
Delaware corporation, individually as a Co-Lender
and as Agent for one or more Co-Lenders

By: _____

    Name:

    Title:   LARRY J. KRAVETZ
               AUTHORIZED SIGNATORY

STATE OF _____ **New York** )
                                        ss:
COUNTY OF _____ **New York** )


     On the 1 1th day of March, in the year 2008 before me, the undersigned, personally appeared _____, personally known to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public     *Catrina Cancnena*

Catrina Cassanova
Notary Public State of New York
No. 01CA6175228
Qualified in Bronx County
Commission Expires October 9, 2011

Second Building Loan Agreement

EXHIBIT A

(Description of the Premises)

(To be attached)

EXHIBIT A

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of North Tenth Street with the easterly side of Berry Street;

RUNNING THENCE northerly along the easterly side of Berry Street 44 1/2 feet;

THENCE easterly parallel with North Tenth Street 100 feet;

THENCE northerly parallel with Berry Street 155 1/2 feet to the southerly side of North Eleventh Street;

THENCE easterly along the southerly side of North Eleventh Street 125 feet;

THENCE southerly parallel with Berry Street 200 feet to the northerly side of North Tenth Street;

THENCE westerly along the northerly side of North Tenth Street 225 feet to the corner, the point or place of BEGINNING.

EXHIBIT B

(Description of Plans and Specifications)

1.    Plans and Specifications prepared by Scarano Architects, PLLC dated March 7, 2006.

2.    Plans and Specifications prepared by Scarano & Associates dated March 16, 2006.

3.    Plans and Specifications prepared by Sharon Engineering, P.C. dated June 21, 2005.

4.    Plans and Specifications prepared by Scarano & Associates and S. Schwartz Associates
      dated March 3, 2006, March 22, 2006, April 7, 2006 and May 13, 2006.

EXHIBIT C

RESERVED

EXHIBIT D

RESERVED

EXHIBIT E

AFFIDAVIT PURSUANT TO SECTION 22 OF THE
LIEN LAW OF THE STATE OF NEW YORK

## AFFIDAVIT PURSUANT TO SECTION 22 OF THE
## LIEN LAW OF THE STATE OF NEW YORK

STATE OF NEW YORK    )
                             :ss.:
COUNTY OF NEW YORK  )

John R. Fraser, being duly sworn, deposes and says:

I reside at 65 West 13th Street, #2G, NY, NY 10011.

I am the President of 125NORTH10, LLC, a Delaware limited liability company, the Borrower mentioned in the within Building Loan Agreement.

The Borrower is the owner of the real property and improvements located at 125 North Tenth Street, Brooklyn, New York.  Borrower and Lehman Brothers Holdings Inc., have entered into that certain Building Loan Agreement dated the date hereof (the "Building Loan Agreement") in the maximum principal amount of $7,950,232.79.

The consideration paid, or to be paid, by Borrower for the Building Loan described in the Building Loan Agreement is $92,244.33, which will paid from Borrower's funds and not proceeds of the Building Loan, and all other expenses constituting cost of the improvement incurred, or to be incurred, in connection with the Building Loan Agreement are as follows:

(a)      Interest on the Building Loan during construction:        $0

(b)      Taxes, assessments, water rents and sewer rents, paid or  $0
to be paid for periods prior to or during construction:

(c)      Insurance during construction:        $0

(d)      Commitment fee, if any, in addition to the consideration  $0
stated above

(e)      Commitment fee for subsequent financing either (i)    $0
required by Lender, or (ii) to be borrowed within four months
after completion of the improvements

(f)      Title examination, insurance premium and recording  $0
fees:

[TPW: NYLEGAL:752581.3] 16248-00715  03/20/2008 09:32 PM

(g)    Survey                                                                    $0

(h)    Architect and Engineer's fees:                                           $0

(i)    Reserved

(j)    Bond premiums                                                            $0

(k)    Legal fees                                                               $0

(l)    Broker's commissions incurred with respect to obtaining     $0
the Building Loan

(m)    Broker's commissions incurred with respect to obtaining     $0
subsequent financing either (i) required by Lender, or (ii) to be
borrowed within four months after the completion of the
improvements

(n)    Ground rents accruing during construction                    $0

(o)    Mortgage tax                                                             $0

(p)    Appraisal                                                                $0

(q)    Sums paid to take by assignment prior existing     $0
mortgages which are consolidated with building loan mortgages
and also the interest charges on such mortgages

(r)    Sums paid to discharge or reduce the indebtedness under     $0
mortgages and accrued interest thereon and other prior existing
encumbrances

(s)    Sums paid to discharge building loan mortgages     $0
whenever recorded

| | | |
|---|---|---|
| (t) | Contingency cost of the improvements: | $500,000.00 |
| (u) | Building permits and filing fees: | $0 |
| (v) | Financing costs: | $0 |

In addition to the above items the following sums shall be disbursed to Borrower for the cost of the improvement incurred and paid for by Borrower subsequent to the commencement of construction of the improvement, but prior to the date of the initial advance of the Building Loan under the Building Loan Agreement;

$0.00;

The net sum available to Borrower for the improvement as of the date hereof under the Building Loan Agreement is $7,450,232.79 less such amounts as may not be advanced and disbursed under the Building Loan Agreement due to the nonsatisfaction of conditions to the advance and disbursement of such amounts contained in the Building Loan Agreement.

This statement is made pursuant to Section 22 of the Lien Law of the State of New York and is hereby made a part of the Building Loan Agreement.

The facts herein stated are true to the knowledge of the deponent.

John R. Fraser

Sworn to before me this 11th
day of March, 2008.

Notary Public

**KIMBERLY N. CIAVAGLIA**
Notary Public - State of New York
No. 01CI6164500
Qualified in New York County
My Commission Expires April 23, 2011

Second 22 Affidavit