**Hearing Date and Time**: December 3, 2008 at 10:00 a.m. (Prevailing Eastern Time)
**Objection Deadline**: November 25, 2008 at 4:00 p.m. (Prevailing Eastern Time)

GREENBERG TRAURIG, LLP
Nancy A. Mitchell, Esq.
Maria J. DiConza, Esq.
200 Park Avenue
New York, New York 10166
(212) 801-9200

and

KATSKY KORINS LLP
Mark Walfish, Esq.
Steven H. Newman, Esq.
605 Third Avenue
New York, New York 10158
212 716-3207

Attorneys for Tuxedo Reserve Owner LLC and Tuxedo TPA Owner LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
: 
In re: : Chapter 11
:
LEHMAN BROTHERS HOLDINGS INC., : Case No. 08-13555 (LMP)
et al., :
: Jointly Administered
Debtors. :
:
---------------------------------------------------------X

# MOTION OF TUXEDO RESERVE OWNER LLC AND TUXEDO TPA OWNER LLC FOR AN ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363 AND 1107 AUTHORIZING AND COMPELLING ACTIONS BY DEBTORS AS AGENT AND LENDER UNDER LOAN FACILITY AND GRANTING RELATED RELIEF

Tuxedo Reserve Owner LLC and Tuxedo TPA Owner LLC (collectively, "Tuxedo" or "Borrower") are the owners and developers of an approximately 2,295 acre master planned

239,202,530v4NY

community located in the Town of Tuxedo and Village of Sloatsburg, Counties of Orange and Rockland, New York (the "Project"). Tuxedo is the borrower under a $128 million loan facility consisting of a Senior Loan, Building Loan, and Project Loan (each as defined below, individually and collectively, the "Loans"), under which debtor Lehman Commercial Paper, Inc. ("LCPI" or "Agent") is the Administrative Agent and debtor Lehman Brothers Holdings Inc. ("LBHI" or "Lender" and collectively with LCPI and the other debtors and debtors-in-possession herein, the "Debtors") is the sole Lender. Since the commencement of these chapter 11 cases, LCPI and LBHI have defaulted on their obligations as Agent and Lender under the Loans (by failing to fund amounts they were obligated to fund under the Loan Agreements) and have repeatedly failed to agree to any solution to address their defaults. Tuxedo requests that the Court intervene to compel the Debtors to act in a commercially reasonable manner to avoid continued harm to Tuxedo and to the Project.

Tuxedo submits this Motion (the "Motion") for an Order, pursuant to Sections 105, 363, and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), (a) authorizing Tuxedo to recoup the funding it has contributed to the Project since the Petition Date, which funding should have been paid from advances of proceeds of the Loans, from Tuxedo's post-petition debt service obligations, (b) authorizing Tuxedo to appoint an agent to replace LCPI as Agent (the "Replacement Agent"), and (c) authorizing and directing the Agent or, if appointed, the Replacement Agent and LBHI to consent to the addition of a lender to fulfill the obligations of LBHI under the Loan Agreements (defined below) and the subordination of LBHI's interest in the Loans to amounts funded by the additional lender in the manner provided for in the defaulting lender provisions of the Loan Agreements. In the alternative, Tuxedo requests an

order compelling the Debtors to commence an auction and sale of the Loans. In support of the Motion, Tuxedo respectfully represents as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. §157(b).

2. The statutory bases on which the Motion is predicated are Sections 105, 363, and 1107 of the Bankruptcy Code.

## BACKGROUND

**The Chapter 11 Cases**

3. On September 15, 2008, LBHI commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court. Periodically thereafter, the other Debtors commenced voluntary cases under chapter 11 the Bankruptcy Code in this Court, including LCPI on October 5, 2008. (The date of the commencement of each chapter 11 case is referred to herein as the "Petition Date.")

4. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases are jointly administered for procedural purposes only.

5. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.     On or about October 6, 2008, upon motion of LCPI, the Court issued the Order Pursuant to Sections 105(a), 363(b), 363(c) and 541(d) of the Bankruptcy Code and Bankruptcy Rule 6004 Authorizing Debtor to (A) Continue to Utilize its Agency Bank Account, (B) Terminate Agency Relationships, and (C) Elevate Loan Participations (the "LCPI Agency Order").  Among other things, the LCPI Agency Order authorized LCPI to "transfer, assign or resign from any and all Administrative Agent positions . . ." (LCPI Agency Order, p. 3).

**The Loans**

7.     The Project consists of an approximately 2,295 acre master planned community located in the Town of Tuxedo and Village of Sloatsburg, Counties of Orange and Rockland, New York. The Project secured zoning approval for 1,195 homes and other commercial and amenity uses in November 2004, preliminary subdivision approval for the first phase of 103 homes in January 2008, and is on schedule to secure final subdivision approval for the first phase and site plan approvals for infrastructure in March 2009.  The project timeline approved by the Second Amendment to the Project and Building Loan Agreements proposed a construction start to "rough in" the Project's main spine road in October 2008.  This milestone was critical to the Project's ability to meet its first bulk land sale scheduled for the second quarter of 2009.  The Debtors' default in funding the Project and Building Loans will seriously impede the Project's ability to proceed on any foreseeable schedule and may result in the loss of jobs for Tuxedo's staff, consultants and contractors.

8.     On September 6, 2006, Tuxedo entered into the Loans with LCPI as Agent and LBHI as Lender.  The loan agreements associated with the Loans include: (i) the Senior Loan Agreement, as amended by the First Amendment to Senior Loan Agreement, dated as of December 28, 2006, as further amended by the Second Amendment to Senior Loan Agreement,

dated as of January 14, 2008 (as amended, the "Senior Loan Agreement"), pursuant to which LBHI agreed to extend a senior loan to Borrower in the aggregate principal amount of $48,000,000 (the "Senior Loan"), (ii) the Building Loan Agreement, as amended by the First Amendment to Building Loan Agreement, dated as of December 28, 2006, as further amended by the Second Amendment to Building Loan Agreement, dated as of January 14, 2008 (as amended, the "Building Loan Agreement"), pursuant to which LBHI agreed to extend a building loan to Borrower in an aggregate principal amount of $40,000,000 (the "Building Loan") and (iii) the Project Loan Agreement, as amended by the First Amendment to Project Loan Agreement, dated as of December 28, 2006, as further amended by the Second Amendment to Project Loan Agreement, dated as of January 14, 2008 (as amended, the "Project Loan Agreement" and together with the Senior Loan Agreement and the Building Loan Agreement, the "Loan Agreements"), pursuant to which LBHI agreed to extend a project loan to Borrower in an aggregate principal amount of $40,000,000 (the "Project Loan").[1]  The Loans are secured by, among other things, certain Mortgages, Assignments of Leases and Rents and Security Agreements made by Borrower to Agent for the benefit of the Lenders.  The Loans are also secured by the Pledge Agreement, dated as of September 6, 2006, by Tuxedo Reserve Investment Partners, L.P., TRIP Borrower Co-Member LLC, TPA Borrower Co-Member LLC and R-H TPA Holdings, L.P. (collectively, "Pledgors") and Agent, as amended by the First Amendment to Pledge Agreement, dated as of December 28, 2006, among Pledgors and Agent.

9.     The parties contemplated that the Loans would be syndicated to additional lenders, defining Lenders as LBHI and the "other Lenders parties" to the Loans.  As of the date hereof, Tuxedo is not aware of any syndication of the Loans and believes that LBHI remains the sole lender.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Loan Agreements.

**The Debtors' Funding Obligations Under The Loan Agreements**

10. The Senior Loan is fully funded with an outstanding balance as of November 10, 2008, of $48,000,000. The outstanding balance of the Building Loan as of November 10, 2008, was $135,184 and approximately $39,864,816 of the Building Loan remained unadvanced. The outstanding balance of the Project Loan as of November 10, 2008, was $9,848,521 plus accrued interest and fees of $374,350 and $382,744 (for October and November, respectively) and approximately $29,394,385 of the Project Loan remained unadvanced.

11. Section 2.1.8 of each of the Building Loan Agreement and Project Loan Agreement provides: "[s]ubject to compliance by Borrower with the terms of this Agreement, Lenders shall make Advances to Borrower of the proceeds of the Loans pursuant to the terms and conditions set forth herein. . . ." Section 2.10.6 of the Loan Agreements further provides that following Agent's receipt of an Advance Request, upon satisfaction of the applicable conditions precedent therefor, Agent shall make the funds requested by Borrower available on the requested Borrowing Date.

12. If LCPI and LBHI had syndicated the Loans as originally contemplated, the other lenders under the Loans would have had the ability to fund LBHI's portion of the Advance Request under the "Defaulting Lender" provisions of the Loan Agreements. Section 9.10.2 of the Project Loan Agreement and Building Loan Agreement provides that, if any lender (a "Defaulting Lender") fails to fund its share of a required advance any non-Defaulting Lender would have the right to fund the defaulted amount.[2]

---

[2] Section 9.10.4 also permits the Borrower to replace a Defaulting Lender with an Assignee who agrees to purchase for cash the Loans and other Obligations due to the Defaulting Lender, become a Lender for all purposes under the Loan Agreements and assume all obligations of the Defaulting Lender.

13. Section 9.10.3 provides that a Defaulting Lender's rights to receive payments under the Loans would be subordinated to amounts funded on its behalf (plus interest at the default rate) by another lender and Section 9.10.1 further provides that the Defaulting Lender's rights to vote upon, approve, disapprove, consent to or direct any action of the Agent are suspended until the Lender is no longer a Defaulting Lender.

**The Debtors' Default In Satisfying Their Obligations**

14. On September 17, 2008, Borrower submitted to Trimont Real Estate Advisors and to Agent an Advance Request for a total of $1,720,534.67 to fund project costs, together with a Draw Package and all other information required for Borrower to satisfy the conditions for Advances of Loan proceeds. The Advance Request specified October 1, 2008, as the Borrowing Date and provided (as all prior Advance Requests have similarly provided) that a portion of the Loan proceeds requested by Borrower - $374,350.29 - was to be applied towards the monthly payments of interest, Non-Use Fees, and annual Administrative Fee required to be made by Borrower (the "Debt Service").

15. On November 4, 2008, Tuxedo made an additional Advance Request in the amount of $1,247,428.00, of which $382,744.07 was to be used to pay Debt Service.

16. As of the date hereof, LBHI has failed to fund either post-Petition Date Advance Request and LCPI has failed to make funds available to the Borrower for the payment of project costs or Debt Service. As a result of Agent's and Lenders' failure to make the requested funds available, Tuxedo has had to advance funds to pay on-going project costs. From the date of LCPI's last funding on September 3, 2008 through November 9, 2008, Tuxedo funded project costs of $467,872.65 and on November 10, 2008, Tuxedo funded an additional $656,605.47, for a total funding by Tuxedo of $1,124,478.12 (the "Borrower Funding").

17. The failures of LBHI and LCPI to make the requested funds available constitute material breaches of the Loan Agreements. Tuxedo has no assurance that LBHI has the ability or any intention to fulfill it obligations as Lender under the Loan Agreements or that LCPI will continue to fulfill its obligations as Agent. By letter dated October 3, 2008, a copy of which is annexed hereto as Exhibit A, Tuxedo notified LCPI of the Debtors' material breach of the Loan Agreements.

18. In an attempt to minimize the damage to the Borrower, the Project, and the Debtors' collateral resulting from these continuing defaults and consistent with the intent of the Loan Agreements, by letter dated November 6, 2008, Tuxedo requested that the Agent and Lender consent to bringing in a third party lender to take an assignment of the unfunded commitments and to fund the balance of the Loans, making LBHI's interest in the Loans subordinate to the amounts funded by the additional lender in the same manner as if the additional lender was a Non-Defaulting Lender taking over the funding of LBHI as a Defaulting Lender under the Loan Agreements. Tuxedo further requested that Agent withdraw and resign as administrative agent and permit Borrower to identify a suitable replacement agent to administer the Loans. A copy of the November 6, 2008 letter is attached hereto as Exhibit B. The Debtors have not agreed to these requests.

**RELIEF REQUESTED**

19. Tuxedo requests that the Court take action pursuant to its powers under Sections 105, 363, and 1107 of the Bankruptcy Code to protect and preserve the value of assets of the estate. The record of these chapter 11 cases to date demonstrates that it will take months, if not years, for the Debtors to assess their assets and liabilities and to develop a plan to commence an orderly liquidation. In the meantime, as evidenced by motions filed in the cases and media coverage surrounding the fall of Lehman Brothers and its collateral damage, the value of certain of the Debtors' assets, including the Project, will decline or be eliminated before the Debtors determine how to proceed with respect to their investments. In addition, the owners and other investors in those projects, including the Project, will also be damaged.

20. The Court should find that any failure by Tuxedo to pay Debt Service payments as a result of LBHI's failure to make an advance under the Loan Agreements does not constitute a default by Tuxedo under the Loan Agreements and that Tuxedo is permitted to recoup the Borrower Funding from its Debt Service obligations. The Court should further authorize Tuxedo to replace LCPI with a Replacement Agent and authorize and direct LCPI or the Replacement Agent to treat LBHI as a Defaulting Lender, bring in a new lender to fund the remaining Advance Requests as if such new lender were previously a Lender under the Loan Agreements, and provide that repayment of LBHI would be subordinate to repayment of the new lender as contemplated by the Defaulting Lender provisions. Finally, if the Debtors are unable or unwilling to act in a commercially reasonable manner with respect to the Loans, the Court should direct them to immediately commence an auction and sale process with respect to the Loans.

## BASIS FOR RELIEF REQUESTED

A.   **Lehman Should Be Prevented From Declaring A Default Based On Borrower's Failure To Pay Debt Service**

21.   Since the Petition Date, Tuxedo has attempted to contact the Agent first to request the usual monthly advances and more recently to suggest alternative ways of dealing with the Debtors' failure to fund. Tuxedo has not been able to get resolution from the Agent as to the Debtors' intent with respect to the Loans. Instead, the Agent has only responded by stating that it is unable to respond to Tuxedo's requests at this time and that it intends to declare a default for Tuxedo's failure to fund Debt Service from sources other than the advances properly requested under the Loan Agreements.

22.   Tuxedo's inability to pay Debt Service that was due on October 1, 2008 and November 1, 2008, was the direct result of the Debtors' defaults under the Loan Agreements. The Debtors' own defaults should prevent them from declaring a default and exercising their remedies under the Loan Agreements. Further, Tuxedo has paid over $1.1 million in Borrower Funding since the Petition Date - funding that the Loan Agreements contemplated would come from the Advance Requests. As a result, Tuxedo intends to recoup the Borrower Funding from amounts due for Debt Service. Tuxedo's recoupment should not be a basis for declaring a default.

23.   Recoupment is an equitable doctrine applied in the bankruptcy context to permit a claimant to off set mutual debts with the debtor. For recoupment to apply, the claims must arise out of the same transaction or set of transactions. *See New York State Elec. & Gas Co. v. McMahon (In re McMahon)*, 129 F. 3d 93, 98 (2d. 1997)(holding utility company's postpetition application of prepetition utility deposit to debtor's prepetition utility obligation was recoupment not subject to automatic stay). The doctrine of recoupment is flexible and has been applied in

many situations by this and other courts. *See, e.g., In re 105 East Second Street Associates*, 207 B.R. 64, 69 (Bankr. S.D.N.Y. 1997) (finding tenant entitled to recoup award of rent awards and penalties from postpetition rental payments owed to trustee as building owner); *In re Heafitz*, 85 B.R. 274, 279-80 (Bankr. S.D.N.Y. 1988) (allowing recoupment where partnership's obligation to make distributions to partner and partner's obligation to pay accrued interest and principal arising from notes executed to partnership were not independent transactions); *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427, 432-33 (Bankr. S.D.N.Y. 1982) (allowing the government to recoup Medicare overpayments from post-petition reimbursements to a hospital), *aff'd*, 34 B.R. 385 (S.D.N.Y. 1983); *In re Clowards, Inc.*, 42 B.R. 627 (Bankr. D. Idaho 1984) (holding bankrupt contractor's suit for payment due subject to recoupment of damages for breach of contract).

24.     The equitable doctrine of recoupment is intended to address this very situation. Tuxedo's claims against the Debtors arise out of the same transaction as the Debtors' claims against Tuxedo - the construction of the Project and Loan Agreements associated therewith. Because Tuxedo's claims against LBHI for the amount of the Borrower Funding arise from LBHI's failure to fund the Loans, Tuxedo's recoupment is proper and may not be used as a ground for declaring a default.

B.   **The Court Should Authorize Tuxedo To Remove LCPI As Agent And To Add Another Lender To Take Over LBHI's Funding Obligations**

25.     The Debtors have not acted in a commercially reasonable manner with respect to this Project since the Petition Date. The Project will not survive, and Lehman's collateral will be substantially diminished, if a long term solution is not implemented immediately. Tuxedo has offered two possible solutions to LCPI and LCPI has been incapable of making a determination as to whether to proceed with either solution. First, Tuxedo has suggested that LCPI resign as

Agent and that LCPI and LBHI agree to permit another lender to take over the unfunded portion of the Loans in a similar fashion as a Lender would take over the responsibilities of a Defaulting Lender under the existing Loan Agreements had the Loans been syndicated as originally anticipated. Alternatively, Tuxedo offered to purchase the Loans from Lehman at a price commensurate with the current market value of the Loans. The Debtors have been unable or unwilling to pursue either path or suggest another.

26. The Debtors' inaction is risking the value of its own asset as well as Tuxedo's asset. In its Motion in support of the LCPI Agency Order, LCPI stated: "[u]pon the commencement of LBHI's chapter 11 case, and particularly because of uncertainty in the credit markets regarding LCPI's ability to continue to perform its obligations as lender, Administrative Agent or Syndication Agent, LCPI began to try to extricate itself from its position between borrowers and lenders, whether in its capacity as Administrative Agent, Syndication Agent or participant." (LCPI, Docket No. 3, p. 5).

27. LCPI further stated that "[a]uthorization to terminate its agency relations is both necessary and appropriate in order to operate the Debtor's business in a manner that is both consistent with the provisions of the Bankruptcy Code and gives due regard to the interests of third parties with which LCPI dealt in operating its business. The relief requested will minimize the liabilities of LCPI's estate and is also in the best interests of the unstable credit markets." (LCPI, Docket No. 3, p. 10).

28. Despite these admissions, LCPI has been unwilling to discuss resigning as agent or other solutions resulting from its failure to operate its business "in a manner that is both consistent with the provisions of the Bankruptcy Code and gives due regard to the interests of third parties with which LCPI dealt in operating its business." The Debtors' actions with respect

to the Project are in violation of their duty to maximize the value of their estates and is causing immediate and substantial harm to their counter-parties. The Court should compel them to act in a commercially reasonable manner by authorizing Tuxedo to replace LCPI as Agent, to find a new lender to take over LBHI's future funding obligations, and to treat LBHI as a Defaulting Lender under the Loan Agreements.

### C. In The Alternative, The Court Should Direct That Lehman Immediately Commence An Auction And Sale Of The Loan

29. If the Debtors are unwilling to remain parties to the Loans and comply with their obligations under the Loan Agreements, they should be directed to immediately commence a sale process before the Court to sell the Loans. Tuxedo submits that sale of the Loans, even at a discount, would be in the best interest of the Debtors' estates and creditors because it would put an end to the harm being caused to the Project and the resulting reduction in the value of the Debtors' collateral, would allow the Debtors to immediately realize upon that collateral, and would limit the claims against the Debtors for breach of the Loan Agreements. Most importantly for the Borrower, it would allow the Project to continue in a timely, commercially reasonable manner, rather than leaving the Project in the current precarious position.

### NOTICE

30. Notice of this motion has been served in accordance with the procedures set forth in the order entered on September 22, 2008 governing case management and administrative procedures for this case [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the attorneys for the Debtor's post-petition lenders; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New York; (vii) the attorneys for the Debtor; and (viii) all parties who have requested notice in these chapter 11 cases. No other or further notice need be provided.

**WHEREFORE**, Tuxedo requests that the Court grant the relief requested in the Motion and such further and additional relief as may be just and proper.

Dated:   New York, New York
          November 10, 2008

GREENBERG TRAURIG, LLP

By:  /s/Maria J. DiConza
    Nancy A. Mitchell, Esq.
    Maria J. DiConza, Esq.
200 Park Avenue
New York, New York 10166
(212) 801-9200
(212) 801-6400 (fax)

-and-

KATSKY KORINS LLP
Mark Walfish, Esq.
Steven H. Newman, Esq.
605 Third Avenue
New York, New York 10158
212 716-3207
212 716-3350 (fax)

Attorneys for Tuxedo Reserve Owner LLC and Tuxedo TPA Owner LLC