**Hearing Date: November 20, 2008 at 2:00 p.m. (EST)**
**Objections Due: November 17, 2008 at 4:00 p.m. (EST)**

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile:  (949) 720-4111
Paul J. Couchot – CA State Bar No. 131934

**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Facsimile:  (212) 309-6001
Richard W. Esterkin – CA State Bar No. 70769
Andrew D. Gottfried
Matthew W. Olsen

Counsel for
| | |
|---|---|
| SCC Acquisitions, Inc. | SunCal Oak Knoll, LLC |
| SunCal Management, LLC | SunCal Torrance Properties, LLC |
| SCC Acquisitions, LLC | SunCal Beaumont Heights, LLC |
| SunCal Communities II, LLC | SunCal Johannson Ranch, LLC |
| SunCal Bickford Ranch, LLC | SunCal Marblehead, LLC |
| SCC/Palmdale, LLC | SunCal Heartland, LLC |
| Palmdale Hills Property, LLC | SunCal Communities I, LLC |
| SunCal Emerald Meadows Ranch, LLC | SunCal Communities III, LLC |
| Acton Estates, LLC | LB/L-SunCal Northlake, LLC |
| SJD Partners, Ltd. | LB/L-SunCal Oak Valley, LLC |
| SJD Development Corp. | SunCal PSV, LLC |
| SunCal Summit Valley, LLC | Delta Coves Venture, LLC |
| Seven Brothers, LLC | North Orange Del Rio Land, LLC, |
| Kirby Estates, LLC | Tesoro SF LLC |
| SunCal Century City, LLC | SCC Communities LLC |

(the "SCC Entities")

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | ) |
| | ) **Chapter 11** |
| **LEHMAN BROTHERS HOLDINGS INC,** | ) |
| et al., | ) **Case No. 08-13555 (JMP)** |
| | ) |
| | ) **Jointly Administered** |
| Debtors. | ) |
| | ) |

DB2/20896852.3

**DECLARATION OF BRUCE V. COOK IN SUPPORT OF
MOTION OF THE SCC ENTITIES FOR AN ORDER
GRANTING RELIEF FROM THE AUTOMATIC STAY**

I, Bruce V. Cook, declare as follows:

1.  I am the General Counsel for SunCal Management, LLC and SCC Acquisitions, Inc. I have personal knowledge of the following facts, and if called upon to testify, I would and could testify competently thereto.

2.  SCC Acquisitions, Inc., SunCal Management, LLC, SCC Acquisitions, LLC, and SunCal Communities II, LLC (collectively, "SunCal") and Mr. Bruce Elieff and certain other SunCal affiliates are parties to an Agreement with Lehman Brothers Holding, Inc. ("Lehman Holdings"), a Debtor in the above-captioned Chapter 11 cases, and Lehman ALI, Inc., ("Lehman ALI") a non-debtor affiliate of Lehman Holdings, dated May 23, 2008 (the "Agreement"), relating to a number of limited liability companies (collectively, the "Projects," and each a "Project") formed to develop various residential real estate projects located throughout the western United States. A copy of the Agreement, without exhibits, is attached hereto as Exhibit "A."[1] SunCal and certain of the Projects comprise the SCC Entities, the movants under the accompanying Motion of the SCC Entities for an Order Granting Relief from the Automatic Stay (the "Motion").

3.  Pursuant to the Agreement, Lehman Holdings and Lehman ALI committed to, among other things, fund the continuing costs necessary to preserve the value of the Projects, which had already received loans from Lehman ALI and/or Lehman Commercial

---

[1] The exhibits to the Agreement are voluminous and, therefore, have not been included herewith, but are available upon request to counsel.

-2-

Paper, Inc., a Debtor in the above-captioned Chapter 11 cases, totaling approximately $2.3 billion.[2] The amounts previously loaned and to be advanced by Lehman pursuant to the Agreement are all secured by, among other things, first priority trust deeds on the Projects' real property.

4. Since the Debtors' petition date, Lehman has breached its obligations under the Agreement by failing to fund the ongoing, critical expenses of the Projects. As a result, the Projects have suffered, and continue to suffer, catastrophic losses, and the public safety and health has been endangered. Some examples of this are as follows:

- Many of the Projects involve grading of vacant land and the installation of, among other things, streets and storm water control measures which were not completed when Lehman ceased funding the Projects. The failure to timely complete street improvements impairs access to the Projects and adjoining properties (creating, among other things, fire hazards), and may violate the developer's obligations to the municipality that approved the Project for development (potentially causing a loss of the Project's valuable development rights). In addition, there are completion bonds posted for many of the Projects that may be called upon to complete the streets, causing a cascade of defaults and a loss of the Project manager's ability to control and coordinate development of the Project. The failure to install proper storm water control measures threatens to damage the Projects and adjacent land as a result of erosion caused by storm water run off as the rainy season approaches. In addition, the failure to timely install storm water control measures may result in violations of water discharge permits issued for the Projects, exposing the Projects to substantial, daily, governmental fines and penalties. *See e.g.,* Notice of Violation dated October 17, 2008 from the California Regional Water Quality Control Board, Central Valley Region, issued in connection with the Delta Cove project, a copy of which is attached hereto as Exhibit "B".

- The Pacific Point Project, located in San Juan Capistrano, has been partially sold to home builders, who have sold some homes to consumers. The developer of that Project was required to commence construction of a common area recreation center by October 2008, which has not occurred due to the absence of funding. Movants have filed an application to extend that date, which has not yet been acted upon by the applicable governmental authority. The failure to timely construct the recreation center could result in the California Department of Real Estate suspending the builder's ability to sell homes and result in substantial

---

[2] Lehman Commercial Paper, Inc., Lehman Holdings and Lehman ALI are hereinafter collectively referred to as "Lehman"

claims by the builder and Project residents against the Project developer.

- Many of the Projects have significant investments in landscaping, which may be lost due to the absence of funds to irrigate and maintain the landscaping.

- The 10000 Santa Monica Project is a proposed high rise condominium adjacent to Beverly Hills, California that is currently in the entitlement process with the City of Los Angeles. The entitlement applications for that Project are based upon plans prepared by the 2008 Pritzker Prize winning architect, Jean Nouvel, who is currently owed over $1 million and has indicated that he will resign from the Project, if he is not paid. Were he to resign, the entitlement process (which the Project is unable to prosecute due to the absence of funds for attorneys and consultants) would have to commence anew with new plans prepared by some other architect. The interruption in the entitlement process, and the potential loss of Mr. Nouvel's services, could cause the Project to fail to obtain the necessary entitlements or set back the entitlement process many months and cost the project millions of dollars.

- A number of the Projects are in arid locations in Southern California where wind-blown dust and dirt is a significant problem that is regulated by the local air quality management district. In the absence of funding for dust control measures, these projects could violate air quality standards, exposing the Projects to substantial fines, as well as liability to nearby property owners whose property may be affected by wind blown dust from the Projects.

- The Oak Knoll Project required the demolition of existing structures. During the course of the demolition activities, friable asbestos was discovered at the site. As of today's date, Lehman has not provided the funds necessary to properly remove the friable asbestos, as a result of which, the exposed, friable asbestos continues to remain in place at the Project and create a health danger to any person who may be exposed to windblown asbestos fibers from the Project.

- The Delta Cove Project is built adjacent to the Sacramento River and is protected from flooding from the river by levees that must be continuously monitored and maintained. As a result of the absence of funding, the levees are not currently being monitored or maintained. This is a particularly critical matter as the California rainy season has just commenced and nearby homes may be imperiled by flood waters.

5. As demonstrated by my numerous post-petition letters sent to Lehman, copies of which are attached hereto as Exhibit "C," the SCC Entities have tried for weeks to determine whether Lehman intended to honor its funding commitment by notifying Lehman of the Projects' condition, which is accurately described those letters, and requesting that Lehman resume funding the Projects. During these weeks, the SCC Entities' requests have been met with almost complete inaction from Lehman.

-4-

6.   In order to address the multitude of issues caused by Lehman's failure to honor its obligations under the Agreement, the SCC Entities have or intend to file voluntary chapter 11 petitions for those Project entities as to which they are authorized to file such a petition. (See Motion, Exhibit B.)  In addition, the SCC Entities have requested that Lehman consent to the filing of voluntary Chapter 11 petitions for those Project entities for which Lehman's consent to such action is required.  Like the SCC Entities' requests for funding, however, those requests have gone unanswered.  The SCC Entities assume, therefore, that either those Projects will continue to languish with major health and safety issues unattended to, or creditors of those Projects will file involuntary bankruptcy petitions against those Project entities.

7.   As stated, since the Debtors' petition date, Lehman has failed to provide the agreed-upon funding for the Projects.  As a result of the lack of the agreed-upon funding, human lives and property are being put at risk from situations as diverse as: (a) potential levee failures, (b) airborne friable asbestos, (c) failure to provide dust and erosion control measures, (d) possible brush fires in densely populated areas during peak periods of the California fire season due to the failure to fund brush control, and (e) failure to provide adequate storm water control.  In addition, the condition and value of the assets are wasting; fines have been assessed due to projects' violation of governmental permits and more fines are imminent; entitlements are at risk; availability of resources such as water are at risk and governmental bonds are being called.

8.   Since the filing of the Debtors' Chapter 11 cases, the SCC Entities representatives, including myself, have also contacted Lehman personnel numerous times by email and phone requesting that Lehman provide funding for the critical expenses of the Projects, only to be met with inaction.  On October 24, 2008, I sent a letter to

F. Robert Brusco for Lehman asking for a definitive answer as to whether or not Lehman would perform under the Agreement and providing notice of the SCC Entities' intention to file their own Chapter 11 proceedings. A true and correct copy of the October 24, 2008 letter is attached hereto as Exhibit "D." At Lehman's request, the SCC Entities' representative shortly thereafter provided Lehman with a six-month budget that specified the critical expenses of each Project that should be paid immediately. Lehman then requested a three-month budget of critical expenses, which was immediately provided. A true and correct copy of such three-month budget is attached hereto as Exhibit "E."

9. In response, after another week of inaction, on November 2, 2008, Mr. Brusco informed me that Lehman was not prepared to immediately fund any costs for any of the Projects (including insurance payments) except for approximately $270,000 on two of the Projects. The $270,000 was not even sufficient to address the immediate problems at those Projects or complete work necessary to address critical public health and safety issues.

10. As a result of Lehman's failure to fund the critical expenses of the Projects, SCC located an alternative source willing to fund obligations up to $75 million for these expenses. However, that funding commitment is conditioned upon a Court-approved priming lien in the Chapter 11 cases of the SCC Entities.

11. As of this date, many of the SCC Entities that are authorized to file their own Chapter 11 cases have done so in the United States Bankruptcy Court for the Central District of California (the "California Bankruptcy Court") and several more are expected to follow suit, or be subject to involuntary proceedings, shortly. Consequently, in order to ensure the efficient administration of their cases, the SCC Entities filed the Motion seeking an order

modifying the automatic stay to allow the SCC Entities to administer their own Chapter 11 cases to the extent that such cases, and the relief requested by the debtors therein, may affect the rights of Lehman, including, without limitation: (i) filing a motion to authorize the use of Lehman's cash collateral; (ii) filing a motion to approve post-petition debtor-in-possession ("DIP") financing on a priming lien basis that would subordinate Lehman's interests to those of a proposed DIP lender; (iii) filing motions to authorize the sale of Project assets free and clear of all liens, claims and encumbrances; and (iv) seeking confirmation of a plan of reorganization or liquidation that may impair Lehman's claims or interests.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 10, 2008

/s/ Bruce V. Cook
Bruce V. Cook