# SunCal Companies

CORPORATE OFFICE
2392 MORSE AVENUE
IRVINE, CA 92614

MAIN  949 777 4000
FAX  949 777 4050

WWW.SUNCAL.COM

October 24, 2008

**VIA E-MAIL AND MAIL**

Mr. F. Robert Brusco
Lehman Brothers
745 7th Avenue
7th Floor
New York, NY  10019

Re:   Marblehead, San Clemente, CA

Dear Rob:

As we have advised you, the City of San Clemente has acted to call the bonds with respect to the Marblehead project. This will have serious repercussions to the project and to SunCal. Work must recommence immediately to forestall City action. In addition, I also wanted to make sure you are aware of other issues impacting this project. There are several cost and/or construction items that need to be addressed, related to keeping the Marblehead project from experiencing significant negative impact in terms of asset value. To avoid potential liabilities and damage to the asset, someone must immediately assume responsibility for these matters.

We have an obligation to complete several visible and heavily-traveled public streets, per our recent agreements with the City of San Clemente, due to public health and safety issues. These streets include Avenida Pico, Via Socorro, Avenida Vista Hermosa and El Camino Real. Work has begun on all except El Camino Real. As noted above, the City has called the bonds to compel completion of this work. All of the foregoing improvements are necessary for public health and safety.

Similarly, we have an obligation to complete several critical improvements within the commercial site – storm drains, a water line and conduits for an AT&T fiber-optic communications line. We have an obligation to complete these facilities and to complete the grading of the site for delivery to the Buyer per the Purchase and Sales Agreement (PSA.) Since the commercial property will generate substantial

Mr. F. Robert Brusco
October 24, 2008

Page 2

sales and property tax revenues to the City, the City Council has demanded completion in a timely manner. The storm drains are regional facilities and must be completed as soon as possible to avoid drainage problems to upstream, adjacent properties. The water line and the conduits are relocations of existing facilities and must be completed before the site grading can be completed.

We have an obligation to complete the City's Sports Park. Originally, we had scheduled resumption of construction for October, 2009, but during recent meetings with the City and based on direction from Lehman, we told the City we would negotiate with the vendors involved and try to accelerate resumption of construction.

We have an obligation to maintain and irrigate the large Habitat Maintenance Plan within the conservation easement. The easement holder, Center for Natural Lands Management (CNLM), will issue a Notice of Violation (NOV) and assess penalties if maintenance is stopped. The maintenance contractor and related consultants (habitat oversight and biologist) have left the site due to lack of payments. The City notified us that they will turn off the water to the irrigation system if water bills are not paid current by October 31. CNLM issued a NOV and assessed a fine earlier this year. While the violations were corrected, the fine has not been paid and is included in Open AP.

Since erosion control measures required by the City and the State Regional Water Control Board have not been implemented, the City has visited the site several times in the past two weeks and notified us that they will assess a penalty of $500 per day per location until the measures are implemented. They did not define "locations" but if just five locations are cited, the penalty will be $2,500 per day. If the State inspectors visit the site, additional penalties are likely. State penalties are likely to exceed City penalties. Enclosed is a citation from the City assessing a $2,800 penalty. The site is very sensitive due to the conservation easement being located in the central area, and due to the proximity of the Pacific Ocean literally across the street. We will be cited for a major violation of laws if either the easement or the ocean is impacted by storm water run-off from our project.

The City Council required us to implement a security patrol during evenings and weekends. The patrol provider is owed money and will most likely leave the project site in the next few weeks if not paid. The patrol is necessary to remove frequent trespassers and homeless persons from the property. Without patrol, we will certainly get complaints from homeowners in the immediately adjacent Colony Cove community and a demand from the City to restore the service.

Mr. F. Robert Brusco
October 24, 2008

Page 3

We have been working to get landscape maintenance restored for the temporary Sales Office facility, which is closed. The substantial landscape investment has not been adequately irrigated nor maintained for many months. The power company recently notified us that we have breached our agreement for temporary power service and we are meeting with them to try and resolve the issue. Whether we leave the power in place or agree to remove the power facilities, there will be costs involved.

There are many recurring monthly charges for fencing, road barricades, portable toilet service, trash bin service and other temporary facilities required by ordinances and laws, as well as the cost of operating the on-site construction trailer (trailer rental, furniture rental, power pole rental, electric service, water service, telephone service, etc.) which must be paid regularly or the vendors will remove their assets. The trailer is shared with the City's inspector and the bridge inspection company staff. Also, documents and permits required by law to be on-site are stored in the trailer.

Significant Open AP is required to be paid to the contractors currently involved in the construction and maintenance obligations which were specifically requested and directed by Lehman and for which assurances of payment were made. Also, since Radco was unable to finish the pre-May 23 Open AP settlements, there are prior Open AP obligations to some of the contractors currently involved. There are also liens on the commercial site related to some of the Radco pre-May 23 Open AP which are required to be cleared, per the Buyer's PSA, prior to delivering the site to the Buyer. Several contractors have informed us that they will not resume nor start work without assurance of payment by a third-party escrow holding contract balances, so these payment issues must also be resolved before work can resume.

In addition to the overdue payments to the City for water service, there is an outstanding payment of $34,000 due for Planning Department services, and there will continue to be recurring charges for other City services related to our construction obligations (ongoing Planning Department services, Engineering plan check, Public Works Inspection, Building Department Inspection and City Business License fees.)

The next bi-annual property tax payment is due December 10, 2008 (approximately $650,000), and scheduled payments for renewal of surety bonds will be coming due throughout the next 12 months.

Mr. F. Robert Brusco
October 24, 2008

Page 4


These items are critical to maintain the value of the Marblehead asset, as well as to assure future cooperation with the various authorities involved with the project, and to avoid litigation and penalties. They must all be addressed as a priority.  Please contact me if you have any questions about this letter.

Very truly yours,

SunCal Management LLC

Bruce V. Cook
General Counsel


/aa
Enclosure



# City of San Clemente
# Engineering Division

Tom Bonigut, Environmental Programs Manager
Phone: (949) 361-6187  Fax: (949) 492-5289
BonigutT@San-Clemente.org

**RECEIVED**

OCT 1 6 2008

CITY OF SAN CLEMENTE
ENGINEERING DIV.

October 15, 2008

David B. Placek
Vice President, Project Management
SunCal Companies, South Coastal Division
2392 Morse Avenue
Irvine, CA 92614

| File Reference: |
| WQ Citation No. 12007 |

**Subject:**   **Administrative Citation for Violations of the City of San Clemente
Municipal Code (SCMC): Storm Water Runoff Control (Chapter 13.40)
and Excavations & Grading (Chapter 15.36)**

Dear Mr. Placek:

The City of San Clemente has determined that SunCal—Marblehead Coastal violated the
above-referenced sections of the SCMC in October 2008 (see attached summary report),
due to a failure to implement appropriate measures to control construction site runoff.
The City is hereby issuing an Administrative Citation for violations of the SCMC in the
amount of $ 2,800.

Should you have any questions or concerns regarding this enforcement action, please feel
free to contact me directly at (949) 361-6187.

Sincerely,

Tom Bonigut, P.E., CPESC, CPSWQ
Environmental Programs Manager

Cc:   David Lund, Public Works/Economic Development Director
      William E. Cameron, City Engineer
      Nabil Toma, Principal Civil Engineer
      Jeff Ferrier, Senior Public Works Inspector
      Chuck Dompier, Public Works Inspector

Marblehead BMP Inspection 13Oct08.doc



# City of San Clemente

# SUMMARY REPORT

Water Quality Administrative Citation No. 12007
SunCal—Marblehead Coastal
San Clemente, CA

Noncompliance with the City of San Clemente Municipal Code (CSCMC)
Sections 13.40 and 15.36

October 13, 2008

Prepared By
Tom Bonigut, P.E., CPESC, CPSWQ
Environmental Programs Manager
Engineering Division

City of San Clemente
Summary Report, SunCal-Marblehead Coastal Water Quality Citation No. 12007

## 1. INTRODUCTION

This report summarizes the evidence supporting administrative assessment of civil
liability in the amount of $ 2,800 against SunCal—Marblehead Coastal for violations of
the City of San Clemente Municipal Code (SCMC) Chapters 13.40 and 15.36.

## 2. VIOLATION BACKGROUND

On July 29, 2008, City staff provided SunCal with a written reminder on the City's rainy
season erosion and runoff control requirements. The City's reminder encouraged SunCal
to submit an updated erosion control plan so that it could be reviewed and approved by
September 15, 2008 per the City's grading ordinance. SunCal was also reminded that
Best Management Practices (BMPs) were to be implemented by October 1, 2008.

SunCal submitted an erosion and sediment control plan on September 2, 2008. City staff
reviewed the plan, and although there were some issues with the plan, City staff gave
verbal direction to SunCal's Project Superintendent (Dana) to start implementing the
plan. Any issues with the plan as submitted would be addressed in the field. When no
activity to implement BMPs was noted, City staff issued a written Correction Notice on
September 30, 2008, and hand delivered this notice to Dana. City inspectors observed
that even after the notice, no work was being done to implement BMPs, thus the project
site was inspected on October 13, 2008 by Tom Bonigut. During that site visit, several
areas of concern and specific BMP implementation issues were observed as noted in this
report.

## 3. MUNICIPAL CODE SECTIONS VIOLATED

SCMC Chapters 13.40 (Storm Water Runoff Control) and 15.36 (Excavations and
Grading) both require implementation of appropriate BMPs[1] and erosion control devices
as follows:

> *Section 13.40.057 – Best Management Practice (BMP) and Monitoring Program
> Requirements*
> Part A: BMPs. Every person owning property or conducting any activity,
> operation or facility shall comply with applicable best management practices
> (BMPs) as identified in the NPDES Permit, DAMP, LIP or as otherwise may be
> required by the City Engineer in compliance with the NPDES Permit, in order to

---

[1] BMPs ""Best management practices (BMPs)" shall mean schedules of activities, pollution treatment practices or
devices, prohibitions of practices, general good housekeeping practices, pollution prevention and educational
practices, operation and maintenance procedures and other management practices or devices to prevent or reduce to
the maximum extent practicable (MEP) the discharge of pollutants directly or indirectly to stormwater, receiving
waters or the stormwater drainage system. BMPs may be structural or non-structural, and include, but are not limited
to, site design, source control, treatment control, and natural design methods. BMPs may include any type of
pollution prevention and control measure that can help to achieve compliance with this chapter." (40 CFR § 122.2,
CSCMC Section 13.40.030)

1

City of San Clemente
Summary Report, SunCal-Marblehead Coastal Water Quality Citation No. 12007

prevent, to the maximum extent practicable, pollutants from entering the
stormwater drainage system.

*Section 15.36.320 – Erosion Control And Water Quality Requirements*
Part B: Where necessary, temporary and/or permanent erosion control devices such as
desilting basins, check dams, riprap or other devices or methods, as approved by the
City Engineer, shall be employed to control erosion and provide safety during the
rainy season from October 15th to April 15th.

Part M: All removable protective devices shown shall be in place at the end of each
working day when the five (5) day rain probability forecast exceeds forty (40)
percent.

Part O: In addition to the requirements specified above, the permittee shall perform all
work in accordance with the water quality requirements.

Part P: Any violation of an applicable federal or state-issued stormwater permit, or
failure to conform to the City's water quality requirements prepare pursuant to such a
permit or pursuant to this article or to City Code Chapter 13.40, or failure to comply
with stormwater related provisions of a City-issued grading permit or of a grading
plan prepared to secure such a permit, is also a violation of this article.

By not implementing appropriate erosion and sediment control BMPs as noted below,
Sun-Cal Marblehead violated Chapters 13.40 and 15.36 of the City's Municipal Code.

## 4. DETERMINATION OF ADMINISTRATIVE PENALTY
Per SCMC Chapter 1.20, administrative fines shall not exceed one hundred dollars
($100.00) for a first violation, two hundred dollars ($200.00) for a second violation of the
same municipal ordinance violation within one (1) year, and five hundred dollars
($500.00) for each additional violation of the same municipal ordinance violation within
one (1) year. Each location where appropriate BMPs were not implemented constitutes a
separate violation. Thus the assessed administrative citation penalty amount is
determined as noted below.

- Violation #1: Broken, ineffective and/or missing perimeter control BMPs at the
  southeast corner of the project by Calle de Los Molinos and Calle de Las Vegas (see
  Photos 1 through 4). Some existing BMPs are in need of maintenance to function
  properly. Penalty amount is $100.
- Violation #2: Unmaintained and broken BMPs along perimeter by Calle de Los
  Molinos (see Photos 5 through 7). Two nearby inlets by the phone company building
  also need to have BMPs refreshed. Penalty amount is $200.

City of San Clemente
Summary Report, SunCal-Marblehead Coastal Water Quality Citation No. 12007

- Violation #3: Missing or incomplete BMPs to control runoff at the east end of the newly paved portion of Avenida Pico (by the phone company building). Refer to Photos 8 and 9). Penalty amount is $500.
- Violation #4: No BMPs to control runoff in the newly paved areas of Avenida Vista Hermosa. No berms to direct runoff toward catcah basin inlets (since there is no final paving lift yet on the street). Refer to Photos 10 through 12. Penalty amount is $500.
- Violation #5: No BMPs to direct runoff away from the internal dirt access road that cuts through the main canyon, and no BMPs on the road to control runoff (see Photos 13 and 14). Penalty amount is $500.
- Violation #6: No BMPs to control runoff on the dirt access roads at the bridge site. Slope protection BMPS need to be repaired. Perimeter control BMPS adjacent to the creek need to be repaired. See Photos 15 through 19. Penalty amount is $500.
- Violation #7: No BMPs to control runoff in the paved and unpaved portions of Avenida Pico. The west end needs perimeter controls and temporary desilting basins. See Photos 20 through 23. Penalty amount is $500.

The total administrative citation penalty amount for the above violations is $2,800. Failure to correct the deficiencies noted and implement appropriate BMPs may result in additional monetary penalties, which could accrue daily until appropriate BMPs are implemented.

3

City of San Clemente
Summary Report, SunCal-Marblehead Coastal Water Quality Citation No. 12007



Photo 1. Perimeter BMP needs to be refreshed for proper function.



Photo 2. Evidence of sediment discharge. BMPs need to be refreshed.



Photo 3. Accumulated sediment must be cleaned from lined ditches.



Photo 4. Broken gravel bags must be replaced and re-set.

City of San Clemente
Summary Report, SunCal-Marblehead Coastal Water Quality Citation No. 12007



Photo 5. Clean out lined ditches and
re-set perimeter controls.



Photo 6. Clean out lined ditches and
re-set perimeter controls.



Photo 7. Replace broken gravel bags and
rebuild berm area for proper function.

City of San Clemente
Summary Report, SunCal-Marblehead Coastal Water Quality Citation No. 12007



Photo 8. Re-establish temporary desilting basin to control runoff from newly paved area and dirt area behind the curb (which collects slope runoff also).



Photo 9. No check dams to control runoff from slopes.



Photo 10. No BMPs to control runoff from slopes, dirt areas behind curb, or on newly paved areas of AVH.



Photo 11. No check dams in street to control runoff. No berms to direct runoff into catch basin inlets (street does not have a final lift of pavement).

City of San Clemente
Summary Report, SunCal-Marblehead Coastal Water Quality Citation No. 12007



Photo 12. No BMPs to control runoff on
dirt and newly paved AVH.



Photo 13. No BMPs to control runoff on
dirt access road through the main canyon
(north side).



Photo 14. No BMPs to control runoff on
dirt access road through the main
canyon (south side).



Photo 15. No BMPs to control runoff on
dirt access roads for bridge
construction.

City of San Clemente
Summary Report, SunCal-Marblehead Coastal Water Quality Citation No. 12007



Photo 16. No BMPs to control runoff on
dirt access roads for bridge
construction.



Photo 17. Typical example of failed
slope protection at the bridge site.



Photo 18. Broken perimeter BMPs
adjacent to the canyon bottom/creek at
the bridge site.



Photo 19. Broken perimeter BMPs
adjacent to the canyon bottom/creek at
the bridge site.

City of San Clemente
Summary Report, SunCal-Marblehead Coastal Water Quality Citation No. 12007



Photo 20. Insufficient or missing BMPs
to control runoff in newly paved portion
of Avenida Pico.



Photo 21. Insufficient or missing BMPs
to control runoff in newly paved portion
of Avenida Pico.



Photo 22. No BMPs to control runoff in
the unpaved portion of Pico.



Photo 23. Need to re-establish perimeter
controls ad check dams/desilting basin
at west end of Pico.

City of San Clemente
Summary Report, SunCal-Marblehead Coastal Water Quality Citation No. 12007

## 5. VIOLATION PAYMENT AND APPEAL PROCEDURE

Payment may be submitted by mail by enclosing a check payable to the "City of San Clemente" along with a copy of this notice (please include violation number on the check). Mail payment to: Finance Department, City of San Clemente, 100 Avenida Presidio, San Clemente, CA 92672. Payment may also be made in person by bringing a copy of this notice to the City's Utility Billing Counter at City Hall, 100 Avenida Presidio, San Clemente.

Per SCMC Chapter 1.20, any person desiring to challenge the issuance of an administrative citation must, within ten (10) working days from the date the administrative citation is issued, submit a written request for a hearing with the City Clerk setting forth the basis of the challenge. The City Clerk will then schedule an administrative hearing, which is duly noticed and open to the public. Additional details on the administrative hearing process are provided in SCMC Chapter 1.20 (available via the City's website at www.san-clemente.org).

# SunCal Companies

CORPORATE OFFICE
2392 MORSE AVENUE
IRVINE, CA 92614

MAIN  949 777 4000
FAX  949 777 4050

WWW.SUNCAL.COM

October 24, 2008

**VIA E-MAIL AND MAIL**

Mr. F. Robert Brusco
Lehman Brothers
745 7th Avenue
7th Floor
New York, NY 10019

      Re:    Heartland

Dear Rob:

This letter will address the significant issues that need to be addressed on this project to avoid potential significant damage to the asset value of the project. The project is located in the City of Beaumont which is within Riverside County, California. The significant issues for this project are as follows:

The two significant issues that need to be addressed on this project are the extension of the California Department of Fish and Game (CDF&G) 1602 permit, and the refurbishment and installation of erosion control facilities for the 2008/2009 rainfall season.

A request was sent in May 2008 to CDF&G requesting an extension of the original 1602 permit which had an expiration date of June 6, 2008. CDF&G's response to our requested extension of the permit was that our request is denied due to our inactivity in proceeding to complete the required establishment of the 20 acres of wetlands mitigation, the granting of a 120 acre open space conservation easement, and wetlands mitigation reporting; all as required within the 1602 CDF&G permit. These items have not proceeded due to the current lack of funding for the project.

After hearing about the Lehman bankruptcy filing, on September 24, 2008, CDF&G and the City of Beaumont issued a Demand for Payment of the wetlands mitigation performance bond. Although the bond has been called, we are working with the City of Beaumont and CDF&G to set a meeting that strategizes how we

Mr. F. Robert Brusco
October 24, 2008

Page 2

can move forward with the wetland mitigation improvements without having to call the bond.

Another significant issue that needs to be addressed on this project is the refurbishment and installation of erosion control facilities and dust control. It should however be noted that the Heartland project may be subject to potentially higher fines from the RWQCB if erosion control facilities are not sufficiently installed by the occurrence of the first significant rainfall event. This is due to the Heartland project location being adjacent to two large storm drainage tributaries (San Timoteo Creek and Coopers Creek).

Please let me know as soon as possible when you want to proceed with these significant project items.

Very truly yours,

SunCal Management LLC

Bruce V. Cook
General Counsel

# SunCal Companies

CORPORATE OFFICE
2392 MORSE AVENUE
IRVINE, CA 92614

MAIN  949 777 4000
FAX  949 777 4050

WWW.SUNCAL.COM

October 24, 2008

**VIA E-MAIL AND MAIL**

Mr. F. Robert Brusco
Lehman Brothers
745 7th Avenue
7th Floor
New York, NY 10019

Re:    SunCal PSV, LLC (Avalon)

Dear Rob:

As we have previously discussed, there are ongoing urgent needs relating to the maintenance of the above-referenced project. The failure to address these matters and pay the costs associated with addressing them could significantly and adversely impact the value of the project.

We have previously submitted to you the 12 month spend projections for the project, showing our estimate of costs and expenses necessary for the continued maintenance of the project. We are requesting that you immediately fund the following expenses so that we can continue to maintain the project in good standing with the local agencies.

Palm Springs Village is located at the northwest end of the City of Palm Springs along Indian Canyon Road, and is susceptible to high winds during the spring and fall of each year. As we have previously advised you, the site is under close scrutiny by the City of Palm Springs as well as the State of California due to its proximity to high wind areas and blowing dust and sand. Our dust control consultant has left the site due to non payment, and we have no funding for emergency situations as required by the State and City. We are at risk for substantial fines until funding is in place, and consultants return. We also have a potential civil liability to adjacent homeowners who are impacted by dust. The following is a minimum that we need in order to get the program back in place:

Mr. F. Robert Brusco
October 24, 2008

Page 2

1. Stormwater Compliance Managers: This consultant retains all past records and is the on-site monitor that has been available for emergency wind events, day-to-day monitoring, and day-to day recordation of wind speed, rainfall for SWPPPs, street sweeping, etc.

2. Consultant / monitoring costs: This amount is made up of 52 weeks, 10 hours per week @ $40 per hour. This is a minimum program, but will allow the monitor to visit the site a few days per week for a couple of hours per day, and additional time for remaining on site for high wind events, which are starting in the next 5-7 days. This is an absolute minimum for a site of this nature that receives high winds on a regular basis from October through December and from March through May.

3. Soil stabilization touch up: This is a cost for 20 acres of touch up required for an immediate response to any complaints received, which are currently being received. This will seal the transitory sand and dust that settles on our already stabilized soil after wind events. This sand builds up over time, and needs to be re-stabilized for the plan to work.

4. Soil re-stabilization: We must re-apply approximately 100 acres @$260 per acre following the windy season to solidify all of the transitory sand that has accumulated.

5. Fund for emergency water trucks: This is something that we hopefully will not have to use, but a plan must be in place for a minimum 1 hour response time if the AQMD or City requests water trucks during a high wind event.

Due Immediately: $20,400
Fund for Monitoring over the next year: $63,200

There also exists a risk in keeping the Golf Course alive, which is grown in, and landscaped. If we do not provide funds for consultants and contractors, the golf course will die within two to three weeks, due to the harsh desert environment and changing weather. Today we were advised that the maintenance people have walked off the job and therefore any delay in

Mr. F. Robert Brusco
October 24, 2008

Page 3

addressing this will result in the loss of the golf course.  The following are issues that must be addressed:

1.  Pay all utility costs to keep temporary power in place, required for lake pumps and irrigation system.
2.  Pay temporary power system costs to keep system in place.
3.  Pay golf course consulting costs to monitor and operate irrigation system.
4.  Pay funds to get irrigation computer back into place.

Due Immediately: $39,000
Fund to keep irrigation system running over the next year: $89,000

     In view of the funding problems, funds may need to be in place before contractors will return to the site.  Please let me know how you desire to proceed with respect to these urgent matters.

                          Very truly yours,

                          SunCal Management LLC


                          Bruce V. Cook
                          General Counsel

# SunCal Companies

CORPORATE OFFICE
2392 MORSE AVENUE
IRVINE, CA 92614

MAIN  949 777 4000
FAX  949 777 4050

WWW.SUNCAL.COM

October 24, 2008

**VIA E-MAIL AND MAIL**

Mr. F. Robert Brusco
Lehman Brothers
745 7th Avenue
7th Floor
New York, NY  10019

      Re:    Del Amo

Dear Rob:

      With respect to the Del Amo project, the asset is suffering irreparable harm due to the lack of funds.  All entitlement efforts with the City of Torrance have come to a halt.  This includes all community outreach in a very active neighborhood group environment.  Negative opinions are being formed based on newspaper and blog reporting and we do not have the resources necessary to correct the record and, perhaps more importantly, to act proactively to achieve positive views.

      We hope that action can and will be taken swiftly to address this deteriorating situation.

      Very truly yours,

SunCal Management LLC

Bruce V. Cook
General Counsel

# ◤ SunCal Companies

CORPORATE OFFICE
2392 MORSE AVENUE
IRVINE, CA 92614

MAIN 949 777 4000
FAX 949 777 4050

WWW.SUNCAL.COM

October 24, 2008

**VIA E-MAIL AND MAIL**

Mr. F. Robert Brusco
Lehman Brothers
745 7th Avenue
7th Floor
New York, NY 10019

      Re:    LB/L-Suncal Oak Valley, LLC – Fairway Canyon

Dear Rob:

This letter will address the significant issues that need to be addressed on this project to avoid potential significant damage to the asset value of the project. The project is located in the City of Beaumont which is within Riverside County, California. The significant issues for this project are as follows:

The most significant issue that needs to be addressed on this project is the refurbishment and installation of erosion control facilities for the 2008/2009 rainfall season. These erosion control facilities include the installation and maintenance of sediment basins, silt fences, straw wattles, sandbag chevrons, earthwork berming, hydro seeding of slopes, and the installation of an acceptable polymer material on graded slopes and residential pads. These measures will insure the stability of our recently graded project areas and will greatly enhance erosion control protection of the project. The implementation of these facilities is also required by the California Regional Water Quality Control Board (CRWQCB), and if not sufficiently installed by the occurrence of the first significant rainfall event, will potentially result in excess project fines.

The Oak Valley project is surrounded throughout by an existing PGA golf course. Thus, we need to install the aforementioned erosion control facilities to prevent any sediment from eroding on to the golf course during a rainfall event. The costs to repair potential damage to fairways, tees and greens can be exorbitant and could also include cost damages related to loss of play.

Mr. F. Robert Brusco
October 24, 2008

Page 2

The Oak Valley project is also subject to potential property damage from fire and blowing sediment during wind storms. With the Beaumont area often experiencing winds in excess of 50 miles per hour, it is essential for us to provide weed abatement and dust protection and treatment of the graded future residential areas to prevent fire and sediment damage to adjacent homeowners, the golf course and potential fines from the Air Quality Management District (AQMD).

In addition to the previously mentioned issues, access to the project via Cherry Valley Boulevard and Palmer Avenue needs to be addressed. The halting of construction on these roads left a very unsafe situation. The grading adjacent to the road, adequate lighting and road delineation and pavement repairs all need to be done to provide safe, adequate access for the existing homeowners.

Lastly, there is an outstanding payment to the HOA. The payment is for the New Source Water Fee and was covered in an agreement with the HOA. Upon receipt, the fee is forwarded to the local water provider, Beaumont Cherry Valley Water District.

Please let me know as soon as possible when you want to proceed with these significant project items.

Very truly yours,

SunCal Management LLC

Bruce V. Cook
General Counsel


# SunCal Companies

CORPORATE OFFICE
2392 MORSE AVENUE
IRVINE, CA 92614

MAIN  949 777 4000
FAX   949 777 4050

WWW.SUNCAL.COM

October 24, 2008

**VIA E-MAIL AND MAIL**

Mr. F. Robert Brusco
Lehman Brothers
745 7th Avenue
7th Floor
New York, NY 10019

>    Re:    10000 Millenium – SunCal Century City

Dear Rob:

      With respect to the project commonly referred to as 10000 Santa Monica Boulevard (SunCal Century City), the following matters may have significant financial repercussions if not promptly addressed:

1. All entitlement work has come to a halt due to the lack of funding for third party consultants, engineers, architects, and lawyers. As you know, the political climate in the City of Los Angeles is dynamic and the City Council will have new members in July 2009. Unless the entitlement process is pursued aggressively and without the loss of time we cannot be sure that our entitlement efforts will be successful.

2. We have built much of our public and political outreach efforts around the acclaimed building design we submitted to the City by 2008 Pritzger Prize winning architect Jean Nouvel. Jean has not been paid for quite some time and is now owed over $1 million for work already completed. Unless Nouvel is paid shortly he will likely quit the project and cause the need to literally start the entitlement and design process over. We may not recover from such a blow.

3. The project site requires constant maintenance of its perimeter landscaping and on-site dust control (to avoid impacts to neighboring property). We cannot address these needs without funds.

Mr. F. Robert Brusco
October 24, 2008

Page 2


        We hope that action can and will be taken swiftly and without delay in order to address this deteriorating situation.


                        Very truly yours,

                        SunCal Management LLC



                        Bruce V. Cook
                        General Counsel



# SunCal Companies

CORPORATE OFFICE
2392 MORSE AVENUE
IRVINE, CA 92614

MAIN  949 777 4000
FAX  949 777 4050

WWW.SUNCAL.COM

October 24, 2008

**VIA E-MAIL AND MAIL**

Mr. F. Robert Brusco
Lehman Brothers
745 7th Avenue
7th Floor
New York, NY  10019

Re:   Pacific Point, San Juan Capistrano, CA

Dear Rob:

I am writing to you to advise you of several cost and/or construction items that need to be addressed, related to keeping the LV Pacific Point LLC (LVPP) project from experiencing significant negative impact in terms of asset value. To avoid potential liabilities and damage to the asset, someone must immediately assume responsibility for these matters.

LVPP has an obligation to complete construction of Valle Road North Road from La Novia Avenue to San Juan Creek Road. This road is a critical component of the offsite work required of the development, and is secured by surety bonds which, we are advised, are being called by the City of San Juan Capistrano. The partially completed improvements are a public safety hazard. The City Manager has informed us that he has received numerous complaints, and these complaints have been discussed at previous City Council meetings. Of most immediate urgency is the installation of two drain transitions, from slope drains to an existing storm drain, which were previously removed when grading work was started during the summer, and the related filling of two 8' deep holes immediately adjacent to the existing road lanes (estimated cost is $10,000.) We are ready to execute contracts for the work, upon receiving final determination from LVPP of an unconditional source of funding, of the correct contract form, the contract assignment form for existing contracts and designation of authorized

Mr. F. Robert Brusco
October 24, 2008

Page 2


signers. Several contractors have informed us that they will not resume nor start
work without assurance of payment by a third-party escrow holding contract
balances, so that issue must also be resolved.

A similar obligation needing attention is reconstruction of site
improvements at the California Highway Patrol (CHP) facility on Camino
Capistrano Road, across the freeway from the LVPP site. The re-paving of
Camino Capistrano Road must also be completed. The permit issued by the
CHP will expire in November, and will need to be renewed if work is not
resumed soon. However it is unlikely that the CHP will renew the permit,
because they have indicated that they will notify the City to request that the
surety bonds related to the CHP work be called and that the City should
takeover the work.

The City has sent us notices requesting repair of erosion control and water
quality devices that protect properties adjacent to the project from winter storm
damage. Failure to complete the work in a timely manner will lead to significant
fines being imposed by both the City and the Regional Water Quality Control
Board (a state agency.)

The project has an obligation to construct a Recreation Center for the
residents of the community. The City approval for the Recreation Center expires
in October, 2008, and an extension request was filed last week. The project
advertising and Department of Real Estate (DRE) budgets include this facility as
a major component of the project, and not constructing this facility may lead to
the DRE suspending the builder from selling homes. This could subject the
project owner to claims of damages from the builder and/or homeowners.

Another frequent homeowner complaint has been the lack of functioning
gates at neighborhood entries. The gates are constructed, but due to lack of
payments the vendor refuses to complete the programming and controller
coordination needed to make the gates functional.

On an overall project basis, significant landscaping has been installed, but
is not receiving care due to lack of payment to the maintenance contractor. The
cost of replacing dead plant material on completed slopes would be substantial.
Ongoing landscape maintenance and utility costs (water and power) must be
funded to protect the asset and avoid complaints from residents and City staff.
We continue to receive threats and actual incidents of utility service shut-offs due

Mr. F. Robert Brusco
October 24, 2008

Page 3

to lack of payments. Similarly, ongoing repairs to damaged irrigation equipment and ongoing weed abatement continue to be necessary.

We have received a Notice from the Orange County Fire Authority (OCFA) to implement significant fuel modification repairs to landscaped or modified areas throughout the project, to protect residential structures from potential damage in the event of a fire. We have an estimate from the maintenance contractor for this work, but the contractor will need a payment guarantee, as described above, before starting work. Similarly, the OCFA is demanding that we proceed immediately to complete the access road modification to the existing Lyon Apartments site along Avenida California. We have nearly completed negotiation of the required entry permit with Lyon Apartments and are ready to proceed with construction, pending funding.

We received an offer from the City of San Juan Capistrano to purchase the school site in the project for use as an affordable housing site. We believe the offer is low and that the City is taking advantage of current market conditions. The City has asked us for a counteroffer, and we need the owner's approval to prepare the counteroffer. We recommend the proforma amount of $8,500,000.

The next bi-annual property tax payment is due December 10, 2008, and scheduled payments for renewal of surety bonds will be coming due throughout the next 12 months.

These items are all critical to maintain the value of the LVPP asset, as well as to assure future cooperation with the various authorities involved with the project, and to avoid litigation and penalties. They must all be addressed as a priority. Please contact me if you have any questions about this letter.

Very truly yours,

SunCal Management LLC

Bruce V. Cook
General Counsel

# SunCal Companies

CORPORATE OFFICE
2392 MORSE AVENUE
IRVINE, CA 92614

MAIN  949 777 4000
FAX  949 777 4050

WWW.SUNCAL.COM

October 27, 2008

**VIA E-MAIL AND MAIL**

Mr. F. Robert Brusco
Lehman Brothers
745 7th Avenue
7th Floor
New York, NY 10019

   Re: SunCal Emerald Meadows, LLC

Dear Rob:

   This letter will address the significant issues that need to be addressed on this project to avoid potential significant damage to the asset value of the project. The project is located in the City of Rubidoux which is within Riverside County, California.

   The urgent issues that need to be addressed on this project are the installation and refurbishment of erosion control facilities, weed abatement, dust control and security. This site is adjacent to the Santa Ana River and numerous existing residences. Given this proximity, this site will be under close scrutiny and susceptible to steep fines should the erosion control facilities not be implemented and maintained.

   Funding for our consultant team is necessary to continue the entitlement and mapping process and preserve entitlements. In order to comply with obligations under the purchase agreement and under the agreement with the redevelopment agency, the mapping process needs to continue. Completion of the "I" Map and its subsequent recordation are necessary to obtaining entitlements and complying with existing contractual obligations to third parties. In addition to fulfilling the contractual obligations, transfer of the church site, which cannot be done until the "I" Map is recorded, will facilitate the ability to clear title on Emerald Meadows Ranch parcels.

Mr. F. Robert Brusco
October 27, 2008

Page 2


    The site fencing needs to be maintained regularly to repair damage and prevent illegal dumping. The County of Riverside has aggressively sent notices of violation to property owners where dumping occurs.

    Please let me know as soon as possible when you want to precede with these significant project items.

                    Very truly yours,

            SunCal Management LLC


                    Bruce V. Cook
                    General Counsel



# SunCal Companies

CORPORATE OFFICE
2392 MORSE AVENUE
IRVINE, CA 92614

MAIN  949 777 4000
FAX  949 777 4050

WWW.SUNCAL.COM

October 27, 2008

**VIA E-MAIL AND MAIL**

Mr. F. Robert Brusco
Lehman Brothers
745 7th Avenue
7th Floor
New York, NY  10019

      Re:    SunCal Beaumont Heights, LLC

Dear Rob:

      With respect to the Beaumont Heights project, there is the need for an on-going effort to perform weed abatement as this is a dangerous fire area. This project is located in an area that had a very dangerous fire last year where several fire fighters died.  Given that recent memory, weed abatement to prevent wildfires is a top priority with the County of Riverside Fire Department.

      Please let me know as soon as possible when you want to precede with this project item.

      Very truly yours,

      SunCal Management LLC

      Bruce V. Cook
      General Counsel

 **SunCal Companies**

CORPORATE OFFICE
2392 MORSE AVENUE
IRVINE, CA 92614

MAIN  949 777 4000
Fax  949 777 4050

WWW.SUNCAL.COM

November 4, 2008

**VIA E-MAIL AND MAIL**

Mr. F. Robert Brusco
Lehman Brothers
745 7th Avenue
7th Floor
New York, NY  10019

      Re:    Lehman Projects

Dear Rob:

    Based on Lehman's unwillingness to fund any costs or expenses needed to meet public health and safety issues on its various projects, including projects that are part of the omnibus transaction as well as other projects, I have to ask if it is also Lehman's intent to let insurance coverage on all of the projects lapse.  We are also asking if it is Lehman's intent not to pay real property taxes with respect to the projects that will become delinquent if not paid on or before December 10, 2008.

    Very truly yours,

Bruce V. Cook
General Counsel