Anne M. Aaronson (AA 1679)
PEPPER HAMILTON LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Tel: (212) 808-2700
Fax: (212) 286-9806

-and-

Michael H. Friedman
Leon R. Barson
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000
Fax: (215) 981-4750

Attorneys for Pitcairn Properties Holdings, Inc.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

---

**OBJECTION TO PROPOSED ASSIGNMENT OF FINANCIAL SERVICES
AGREEMENT BETWEEN LEHMAN BROTHERS, INC. AND PITCAIRN
PROPERTIES HOLDINGS, INC. TO BARCLAYS CAPITAL INC.**

Pursuant to section 365(c)(1) of the United States Bankruptcy Code, Pitcairn

Properties Holdings, Inc. ("Pitcairn") hereby objects to the proposed assignment of an agreement

between Pitcairn and Lehman Brothers, Inc. ("Lehman")[1] to Barclays Capital Inc. ("Barclays"),

on the grounds that applicable law excuses Pitcairn from accepting performance from an entity

---

[1]  Lehman is a non-debtor affiliate of Lehman Brothers Holdings, Inc. and is being liquidated
pursuant to Adversary Proceeding No. 08-01420 (the "Adversary Proceeding") commenced by the Securities
Investor Protection Corporation. The Court has ordered that Lehman be considered a "Debtor" for purposes of the
Assignment Procedures Order. *See* Adversary Proceeding Docket # 3.

#10248421 v4

other than Lehman and that Pitcairn does not consent to the proposed assignment. In support of this objection[2], Pitcairn respectfully states as follows:

## BACKGROUND

1. On or about July 29, 2008, Pitcairn entered into a letter agreement (the "Agreement") with Lehman Brothers, Inc. ("Lehman"), whereby Pitcairn engaged Lehman on an exclusive basis to provide financial advisory services in connection with a potential strategic transaction.[3]

2. On or about September 22, 2008, Lehman sold certain of its assets, including a number of executory contracts, to Barclays. On October 3, 2008, the Court entered an Order Granting Debtor's Motion to Establish Procedures for the Assumption and Assignment or Rejection of Executory Contracts (the "Assignment Procedures Order") (Docket #628), establishing the procedures by which the non-debtor parties to Lehman contracts may interpose objections to the proposed assignment of such contracts to Barclays.

3. On November 6, 2008, Barclays transmitted a notice (the "Assignment Notice") to Pitcairn that the Agreement purportedly had been assigned to it. A copy of the Assignment Notice is attached hereto as Exhibit A.

4. The Assignment Procedures Order provides that any party that objects to a proposed assignment may file and serve a written objection no later than ten (10) days after the date on which the notice of assignment is sent to the counterparty.

---

[2] This objection is filed pursuant to the Order Granting Debtor's Motion to Establish Procedures for the Assumption and Assignment or Rejection of Executory Contracts (the "Assignment Procedures Order"), entered by the Court on October 3, 2008 (Docket #628).

[3] Because of the confidential nature of the Agreement, it is not attached as an exhibit to this Objection, but will be provided to the Court *in camera* at any hearing on this Objection. Certain non-confidential provisions are disclosed herein only to the extent pertinent to the issues raised by this Objection and without waiver of confidentiality or any applicable claim of privilege.

08-13555-mg    Doc 1457    Filed 11/12/08    Entered 11/12/08 11:47:27    Main Document
       Pg 3 of 8

## THE AGREEMENT

5.      The Agreement requires that Lehman render the following services to Pitcairn on an exclusive basis: provide general business and financial analyses, including of transaction feasibility and valuation; prepare descriptive memoranda and marketing materials; review prospective transaction counterparties; advise Pitcairn concerning opportunities for a transaction; and assist in negotiations and strategies relating to a potential transaction.

6.      As compensation for Lehman's services, Pitcairn agreed to pay Lehman an advisory fee based upon a percentage of the consideration paid in a transaction. Pitcairn also agreed to indemnify Lehman and hold it harmless against any claims arising out of or relating to the Agreement, unless resulting from Lehman's gross negligence or willful misconduct.

7.      The Agreement gives Pitcairn the right to terminate with no obligation to pay a fee if Lisa Beeson ceases to be employed by Lehman, provided that Lehman be given a reasonable opportunity to replace Lisa Beeson with other senior members of its investment banking team reasonably acceptable to Pitcairn.

8.      Lisa Beeson is no longer employed by Lehman. She is now apparently employed by Barclays.[4]

9.      The Agreement is governed by the laws of the State of New York.

## OBJECTION

10.      Section 365(c) of the Bankruptcy Code provides in pertinent part:

The trustee may not assume or assign any executory contract … of the debtor …, if—

---

[4]    Because Lisa Beeson is no longer employed by Lehman, Pitcairn has the immediate right to terminate the Agreement upon ten days' written notice. To the extent necessary, Pitcairn intends to file a motion for relief from the automatic stay to permit it to serve a termination notice.

(1) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(2) such party does not consent to such assumption or assignment ….

11. Section 365(c)(1) is designed to protect non-debtor parties whose rights may be prejudiced by having a contract performed by an entity other than the one with which they originally contracted. This exception to assignability is commonly known as the "personal services exception," but its application is not limited to personal services contracts; rather, section 365(c)(1) bars any assignment where the duty involved is non-delegable, or where there exists a special relationship. *In re Nitec Paper Corp.*, 43 B.R. 492, 497-498 (S.D.N.Y. 1984).

12. Thus, if there is a material change in the identity of the entity rendering the performance, the identity of that entity is an essential element of the contract, and if the contract is non-assignable under applicable nonbankruptcy law, then the assignment of the contract is prohibited. *In re Grove Rich Realty Corp.*, 200 B.R. 502, 507 (Bankr. E.D.N.Y. 1996).

13. Against this legal backdrop, Pitcairn objects to the proposed assignment of the Agreement to Barclays.

A. **The Assignment Would Materially Change the Identity of the Party Rendering Performance.**

14. The assignment of the Agreement from Lehman to Barclays would work a material change in the identity of the entity rendering performance. Pitcairn engaged Lehman on an exclusive basis to serve as its investment banker in connection with a prospective transaction. If the assignment is allowed, Lehman's performance would instead be rendered by Barclays.

#10248421 v4

15. That Lisa Beeson may now be at Barclays does not mean that the identity of the party rendering performance has not changed. The Agreement contemplated that Ms. Beeson might leave Lehman's employ and thus provided Lehman with a reasonable opportunity to replace her with other senior members of Lehman's investing banking team who were reasonably acceptable to Pitcairn. But nothing in the Agreement contemplates or permits the inverse situation, *i.e.*, that Ms. Beeson might remain on the engagement but that Lehman would be replaced with an entirely different banking firm. Pitcairn contracted for the services of Lehman, led by Ms. Beeson or another team reasonably acceptable to Pitcairn. Pitcairn did not contract for the services of Ms. Beeson and any other investing banking firm to which she might migrate.

16. To be sure, substituting Barclays for Lehman would result in a material change in the identity of the investment banker Pitcairn agreed to.

B. **The Identity of the Investment Banker is an Essential Element of the Agreement.**

17. The identity of the investment banker engaged to consult on the potential transaction is a critical aspect of the Agreement. At the time of contracting, Lehman represented itself, and Pitcairn believed it to be, among the foremost investment bankers in the world. Lehman's prestige and reputation was critical to Pitcairn, because it was Lehman that would be advertising the potential transaction and soliciting potential counterparties.

18. Likewise, because Lehman was to render the valuation services and to advise on strategy, Lehman's skill and expertise were critically important to Pitcairn.

19. Finally, because the Agreement requires Pitcairn to indemnify Lehman and hold it harmless even from its own negligence, the level of risk to be assumed by Pitcairn depended upon knowing the identity and track record of its investment banker.

#10248421 v4

C.  **The Agreement Is Not Assignable Under Applicable Nonbankruptcy Law.**

20.  Because the Agreement is governed by the law of the State of New York, the substantive law of New York provides the applicable nonbankruptcy law within the meaning of section 365(c)(1).

21.  It has long been the rule in New York that a contract cannot be assigned if it involves a relationship of personal confidence. *See e.g., Jennings v. Foremost Dairies, Inc.*, 235 N.Y.S. 2d 566, 573 (N.Y. Sup. Ct. 1962), quoting 3 N.Y. Jur., Assignments, § 7 ("executory contracts for personal services or those involving a relationship of personal confidence are not assignable by one party unless the other consents"); *Paige v. Faure*, 229 N.Y. 114, 118, 127 N.E. 898, 899 (1920); *Nassau Hotel Co. v. Barnett & Barse Corp.*, 162 A.D. 381, 147 N.Y.S. 283, *aff'd,* 212 N.Y. 568 (1914).

22.  In *Nassau Hotel*, plaintiff contracted with Barnett and Barse to operate its hotel. Barnett and Barse later formed a corporation and transferred the contract to it. Later still, Barnett sold his stock to Barse. The plaintiff sued to cancel the contract, alleging that it entered the contract in reliance upon the financial responsibility, character and experience of both Barnett and Barse as individuals. The court held that the contract was personal to Barnett and Barse and could not be assigned by them without the plaintiff's consent, even to a corporation owned by themselves, because "a party has the right to the benefit contemplated from the character, credit and substance of him with whom he contracts." 162 A.D. at 384.

23.  In *Paige v. Faure*, a tire manufacturer entered into an exclusive agreement with Paige and Lindner to sell his tires. Lindner subsequently sold his interest in the contract to Paige, and Faure refused to perform, maintaining that Lindner and Paige could not assign the contract to Paige alone. The court of appeals agreed with Faure, ruling that the contract was not assignable without Faure's consent:

-6-

#10248421 v4

> Faure entered into a contract, not with Paige, but with Paige and Lindner. He was to have the benefit of the services of both, not one, in the sale of his product. ….[B]oth Paige and Lindner were personally to devote their time to carrying out its terms. … [A] personal trust and confidence were reposed in both of them.

229 N.Y. at 118; 127 N.E. at 899. *See also Jennings v. Foremost Dairies, Inc.*, 235 N.Y.S. 2d at 578 (exclusive distributorship agreement not assignable where it involved extension of credit and was based upon personal confidence, trust and faith).

24. The same principles have been applied to engagement letters with financial advisory firms on facts very similar to those presented here. In *Holland v. Fahnestock & Co., Inc.*, 210 F.R.D. 487 (S.D.N.Y. 2002), the plaintiffs engaged Fahnestock and David Pullman, a managing director of Fahnestock, to advise about a securitization transaction. Because Pullman was the team leader, the engagement letter allowed the plaintiffs to terminate upon his death or incapacity. Pullman later formed his own firm, and Fahnestock assigned the engagement letter to the new entity. The court held that the agreement was not assignable without the plaintiffs' consent: "Because the engagement letter was akin to a personal services contract, the plaintiffs' consent would be required before the obligor (Fahnestock) could even delegate its duties, much less discharge its obligations." 210 F.R.D. at 499, n.12.

25. The parallels to the case at hand are obvious. Pitcairn entered into the Agreement with Lehman, and Lisa Beeson was to serve as the team leader. When Ms. Beeson moved to Barclays, Lehman purported to assign the Agreement to Barclays and thus delegate its duties to Barclays. As in the *Fahnestock* case, it cannot do so absent the consent of Pitcairn.

26. The Agreement cannot be assigned under applicable nonbankruptcy law. It is akin to a personal services contract, and Pitcairn has the right to the character, confidence, and substance of the party with which it contracted. Pitcairn contracted for the reputation and expertise of Lehman, and it does not consent to the substitution of Barclays.

#10248421 v4

27. For these reasons, the proposed assignment of the Agreement is prohibited by section 365(c)(1) of the Bankruptcy Code.

Dated: November 12, 2008

        PEPPER HAMILTON LLP

        By: /s/ Anne M. Aaronson
        Anne M. Aaronson (AA 1679)
        The New York Times Building
        620 Eighth Avenue
        New York, NY 10018-1405
        Tel: (212) 808-2700
        Fax: (212) 286-9806

        -and-

        Michael F. Friedman
        Leon R. Barson
        3000 Two Logan Square
        Eighteenth and Arch Streets
        Philadelphia, PA 19103-2799
        Tel: (215) 981-4000
        Fax: (215) 981-4750

        Attorneys for Pitcairn Properties Holdings, Inc.