WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                    :
In re                               :    Chapter 11 Case No.
                                    :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :    08-13555 (JMP)
                                    :
            Debtors.                :    (Jointly Administered)
                                    :
                                    :
------------------------------------------------------------x
```

## NOTICE OF DEBTOR'S MOTION PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 9014, AND RULES 6004-1, 9006-1 AND 9014-1 OF THE LOCAL BANKRUPTCY RULES FOR APPROVAL OF THE SALE OF DEBTOR'S AIRCRAFT PURSUANT TO AN AIRCRAFT SALE AND PURCHASE AGREEMENT

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of CES Aviation IX LLC, as debtor and debtor in possession in the above-referenced chapter 11 cases (the "Debtor"), pursuant to sections 105 and 363 of title 11 of the United States Code, Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1, 9006-1, and 9014-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules"), for (i) approval of the sale of the Debtor's Aircraft (as defined below) pursuant to (a) that certain Aircraft Sale and Purchase Agreement dated as of October 29, 2008 (the "Sale Agreement") with Peregrine Aviation Services, Inc. (the "Purchaser") or (b) a substantially similar sale and purchase agreement with a party who submits a Higher Offer (as defined below), (ii) approval of the Debtor's payment of the fees of its broker, Bloomer de Vere Group Avia Inc. (the "Broker"), in connection with the sale of the Aircraft, upon this Court's approval of the Debtor's retention of the Broker, and (iii) approval of the Debtor's payment of certain outstanding invoices reflecting expenses incurred in the ordinary course of operating the Aircraft, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **December 3, 2008 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that, pursuant to the Sale Agreement, the Debtor will sell, and the Purchaser will purchase (the "Proposed Sale"), among other things, the Debtor's aircraft, a Dassault model Falcon 50, bearing manufacturer's serial number 179 and U.S. registration mark N232PR, together with three Garrett model TFE 741-3D-1C engines, bearing manufacturer's serial numbers P-76626C, P-76719C and P-76662C, one installed Garrett model 36-100A auxiliary power unit bearing manufacturer's serial number P-285, all appurtenances, appliances, parts, avionics, instruments, components, accessions, furnishings, items of equipment and accessories installed thereon, and loose equipment specifically identified in the Sale Agreement (collectively, the "Aircraft").

**PLEASE TAKE FURTHER NOTICE that the Proposed Sale is subject to higher or better offers (a "Higher Offer"). Any party interested in submitting a Higher Offer for the Aircraft must submit (i) an offer in the form of the Sale Agreement, changed only to modify, where appropriate, the name of the purchaser, an increased Purchase Price (as defined in the Sale Agreement), and an increased Deposit (as defined in the Sale Agreement) to reflect an amount equal to five percent of the total Purchase Price (as modified), and (ii) the Deposit. All Higher Offers (including Deposits) must be submitted to and received by CES Aviation IX, LLC, c/o Lehman Brothers, 745 Seventh Avenue, 30th Floor, New York, New York, 10019, Attn: Francine Kittredge, with a copy to Weil Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York, 10153, Attn: Shai Y. Waisman, Esq., attorneys for the Debtors, by no later than November 28, 2008 at 4:00 p.m. (Prevailing Eastern Standard Time).**

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Bankruptcy Rules, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Shai Y. Waisman, Esq., attorneys for the Debtor; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (v) Peregrine Aviation Services, Inc., c/o Kaye Scholder LLP, 425 Park Avenue, New York, New York 10022, Attn: Stewart B. Herman, Esq., so as to be filed and received by no later than **November 28, 2008, at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: November 12, 2008
      New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Hearing Date and Time: December 3, 2008 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: November 28, 2008 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                                  :
In re                                                             :        Chapter 11 Case No.
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,                     :        **08-13555 (JMP)**
                                                                  :
                                       Debtors.                   :        **(Jointly Administered)**
                                                                  :
                                                                  :
-----------------------------------------------------------------x

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER**
**PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY**
**CODE, FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**2002, 6004 AND 9014, AND RULES 6004-1, 9006-1 AND 9014-1 OF THE**
**LOCAL BANKRUPTCY RULES APPROVING THE SALE OF DEBTOR'S**
**AIRCRAFT PURSUANT TO AN AIRCRAFT SALE AND PURCHASE AGREEMENT**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

   CES Aviation IX LLC (the "<u>Debtor</u>"), as debtor and debtor in possession,

(together with Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-

referenced chapter 11 cases, the "<u>Debtors</u>" and, collectively with their non-debtor affiliates,

"<u>Lehman</u>"), files this Motion and respectfully represents:

**Background**

   1.  Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "<u>Commencement Date</u>"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

## Jurisdiction

4.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Lehman's Business

5.      Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman has been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.  Its headquarters in New

York and regional headquarters in London and Tokyo are complemented by a network of offices

in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

6.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit

of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District

of New York in Support of First-Day Motions and Applications, filed on September 15, 2008

[Docket No. 2].

## Preliminary Statement

7.      The Debtor hereby seeks authority to sell its aircraft, a Falcon 50, to

Peregrine Aviation Systems, Inc. (the "Purchaser") pursuant to that certain Aircraft Sale and

Purchase Agreement dated as of October 29, 2008 (the "Sale Agreement") between the Debtor

and the Purchaser (the "Proposed Sale").  The Proposed Sale is subject to a higher or better offer,

as more fully set forth below.

## The Proposed Sale

The Debtor

8.      The Debtor, a Delaware limited liability company formed in 2006, is a

direct, wholly-owned subsidiary of LBHI that filed for protection under chapter 11 on October 5,

2008.  The Debtor's principal business is to hold title to the aircraft, which is the Debtor's

principal asset.  The aircraft was used to facilitate business transportation for Lehman employees

prior to the commencement of these chapter 11 cases.

The Aircraft

9.      The aircraft is a Dassault model Falcon 50 aircraft, bearing manufacturer's

serial number 179 and U.S. registration mark N232PR, together with three Garrett model TFE

741-3D-1C engines, bearing manufacturer's serial numbers P-76626C, P-76719C and P-76662C,

one installed Garrett model 36-100A auxiliary power unit bearing manufacturer's serial number

P-285, all appurtenances, appliances, parts, avionics, instruments, components, accessions,

furnishings, items of equipment and accessories installed thereon, loose equipment specifically

included on the Aircraft Specification and/or the Inventory Listing, and all Aircraft Documents

(collectively, the "Aircraft"). [1]

The Marketing Process

10.     In June 2008, the Debtor initiated a competitive request for proposal

process with six brokers for the sale of the Aircraft.  The brokers were selected based on a

market-knowledge survey, their aviation-industry sales experience, references, and proposed

commission fees.  The proposed commission fees among the brokers varied by more than

$100,000.  The Debtor ultimately selected Bloomer deVere Group Avia, Inc. (the "Broker") as

its broker.  The Debtor felt the Broker best-satisfied all of the foregoing criteria.  The Broker also

submitted a bid with the lowest commission fees.  During final contract negotiations, the Debtor

and the Broker agreed upon a sliding scale commission rate, which provided further incentive for

the Broker to seek the highest bid possible for the Aircraft.

11.     In early September 2008, the Debtor focused on a competitive bidding

process to sell the Aircraft.  The current market for pre-owned aircraft is saturated with Falcon

50 aircraft and has been in overall decline in 2008.  As more aircraft continue to come to market,

demand for pre-owned Falcon 50 aircraft continues to decrease.  As of the date hereof, the

Debtor is aware of at least thirty-eight Falcon 50 aircraft being actively marketed—more then a

two-yaer supply at the current pace of sales.  It is likely that additional Falcon 50 aircraft are

being more quietly marketed.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Sale Agreement. Insofar as there are any inconsistencies between this summary description of the Sale Agreement and the Sale Agreement, the terms of the Sale Agreement shall control.

The Purchaser

12.     Despite the market conditions, through the Debtor's active marketing process, the Debtor received a range of bids for the Aircraft from various interested parties prior to the commencement of the Debtor's chapter 11 case.  Arm's-length negotiations between the Debtor and a number of potential purchasers continued postpetition.  The Debtor ultimately agreed to a transaction with the highest and otherwise best offer, submitted by the Purchaser, and the parties executed the Sale Agreement, a copy of which is attached hereto as Exhibit 1.  The Purchaser then wire transferred $250,000 (the "Deposit") in immediately available funds to an escrow agent.  Pursuant to the Sale Agreement, the Debtor will transfer, and the Purchaser will purchase, the Aircraft in exchange for a total of $6,200,000 (the "Purchase Price"), on and subject to the terms and conditions set forth in the Sale Agreement.

13.     The Sale Agreement additionally includes the following salient provisions:[2]

- Aircraft Condition and Inspection.  It is a condition to the Purchaser's obligation to consummate the Proposed Sale that the Aircraft shall be in the Delivery Condition on the Closing Date.

  - The Aircraft shall be subjected to an Inspection by the Inspection Facility, which shall be undertaken at Purchaser's sole cost and expense and in a manner set forth in the Sale Agreement, in order to verify that the Aircraft is in the Delivery Condition.

  - The Purchaser's financial responsibility associated with the Inspection shall be limited to (i) the Movement Costs and (ii) in the event the Sale Agreement is terminated due to Purchaser's inability to satisfy certain Conditions Precedent, $10,000, representing the cost associated with returning the Aircraft to its prior location.

  - Within two (2) Business Days after the completion of the Inspection, Purchaser will (i) accept the Aircraft, (ii) accept the Aircraft, subject to repair

---

[2] To the extent there are any inconsistencies between the summary description of the Sale Agreement contained herein and the terms and conditions of the Sale Agreement, the terms of the Sale Agreement control.

of all Discrepancies, or (iii) reject the Aircraft, but only if it is conclusively determined that the Aircraft cannot be made to comply with the Delivery Condition.

- In the event the Purchaser rejects the Aircraft, the Deposit will be immediately refunded to the Purchaser. The Deposit is non-refundable in the event the Purchaser accepts the Aircraft.

- <u>Termination</u>. The Sale Agreement may be terminated at anytime prior to Closing if, *inter alia*, the Purchaser rejects the Aircraft following the Inspection, or the Bankruptcy Court has not entered an order approving the Sale Agreement on or before December 28, 2008, and the Purchaser terminates the Sale Agreement upon written notice to Debtor. In the event Purchaser has not provided the foregoing notice of termination and the Bankruptcy Court has not entered an order approving the transaction contemplated by the Sale Agreement on or before January 12, 2009, either party may terminate the Sale Agreement upon written notice to the other party.

- <u>Delivery of Aircraft</u>. Prior to the Closing, the Debtor shall position the Aircraft at the Delivery Location and the Purchaser shall reimburse the Debtor the Movement Costs with respect to such flight.

- <u>Conditions Precedent</u>. The Debtor's obligation to sell and deliver the Aircraft and the Purchaser's obligation to purchase and accept delivery on the Closing Date shall be subject to several conditions precedent set forth in sections 4.2 and 4.3 of the Sale Agreement, such as the Purchaser's obligation to transfer the balance of the purchase price in the amount of $5,950,000 to the Escrow Agent and Debtor's obligation to pay all applicable maintenance contracts up to Closing.

- <u>Limitation of Liability</u>. Except as otherwise noted in the Sale Agreement, the Aircraft is being sold and delivered in "as is, where is, with all faults" condition, and all delivery conditions specified in the Sale Agreement shall expire and be of no further force or effect as of the Closing.

- <u>Taxes</u>. The Purchaser shall pay any sales, use, excise and other similar taxes as a result of the sale, delivery or transfer of the Aircraft to the Purchaser, or the ownership, possession, use or storage of the Aircraft by the Purchaser.

- <u>Third-Party Warranties and Maintenance Program/Service Plans Contracts</u>. All effective rights under warranties from manufacturers and service providers or suppliers with respect to the Aircraft are assigned and transferred to the Purchaser as of Closing.

- <u>Transaction Costs and Expenses</u>. Except as otherwise set forth in the Sale Agreement, the Debtor and the Purchaser shall bear their own transaction costs and expenses, including, without limitation, any brokers' commission and/or attorneys' fees. The Debtor shall be solely responsible for the fees of the Broker, which fees the Debtor may direct the Escrow Agent to pay to the Broker at Closing out of the

Purchase Price proceeds. The Purchaser and the Debtor shall each pay one-half (½) of the Escrow and Title Search Fee relating to the transactions contemplated hereby.

### Additional Provisions in the Sale Agreement

14.     The Sale Agreement contains the following provisions, which the Guidelines for the Conduct of Asset Sales, adopted by this Court's General Order M-331, requires be separately disclosed:

- <u>Private Sale</u>. The Sale Agreement does not contemplate additional competitive bidding for the Aircraft. However, as described below, the Proposed Sale remains subject to higher or better offers.

- <u>Deadlines</u>. As noted above, the Sale Agreement may be terminated at anytime prior to Closing if, *inter alia*, the Bankruptcy Court has not entered an order approving the Sale Agreement on or before December 28, 2008, and the Purchaser terminates the Sale Agreement upon written notice within five calendar days. In the event Purchaser has not provided the foregoing notice of termination and the Bankruptcy Court has not entered an order approving the Proposed Sale on or before January 12, 2009, either party may terminate the Sale Agreement upon written notice to the other party.

- <u>Free and Clear</u>. As described below, the sale of the Aircraft will be free and clear of all liens, claims, encumbrances, and other interests.

- <u>Relief from Bankruptcy Rule 6004(h)</u>. As described below, the Debtor seeks relief from any automatic stay imposed by Bankruptcy Rule 6004(h).

15.     Pursuant to the Sale Agreement, the Debtor is solely responsible for the fees of the Broker.[3] Based on the Purchase Price, the Broker would be entitled to a commission fee of $88,000 upon Closing. If the Debtor accepts a Higher Offer, the fees of the Broker will increase accordingly.

16.     Pursuant to the Sale Agreement, the Debtor represents and warrants that the Debtor shall own good and marketable title to the Aircraft at Closing, free and clear of all liens. In addition, the Sale Agreement requires the Debtor to pay all outstanding invoices and

---

[3] The Broker's fees will be segregated from the Purchase Price and held in escrow, and paid to the Broker only upon this Court's approval of the Debtor's retention of the Broker.

unpaid maintenance contracts through the Closing.  As of the date hereof, the Debtor is

responsible for paying certain outstanding invoices totaling $69,125.83.  These invoices reflect

flight support activity expenses incurred in the ordinary course of business of operating the

Aircraft, the nonpayment of which could result in a lien (or liens) on the Aircraft.

### Higher or Better Offers

17.    As described above, the Debtor and the Broker actively marketed the

Aircraft prior to the execution of the Sale Agreement.  Nevertheless, the Proposed Sale remains

subject a higher or better offer (a "Higher Offer").  Upon the filing of this Motion, Lehman will

provide notice of the Proposed Sale to any party that has expressed interest in any of Lehman's

aviation assets within the past year, and certain other logical or likely bidders.  The Debtor will

cause the notice of the Motion and the Motion to be published on the Debtors' court-approved

claims and noticing agent's website:  www.lehman-docket.com.

18.    Any party interested in submitting a Higher Offer for the Aircraft must

submit (i) an offer in the form of the Sale Agreement, changed only to modify, where

appropriate, the name of the purchaser, an increased Purchase Price, and an increased Deposit to

reflect an amount equal to five percent of the modified Purchase Price, and (ii) a Deposit in the

amount included in the offer.  A Higher Offer must be submitted to and received by CES

Aviation IX, LLC, c/o Lehman Brothers, 745 Seventh Avenue, 30th Floor, New York, New

York, 10019, Attn:  Francine Kittredge, with a copy to Weil Gotshal & Manges, LLP, 767 Fifth

Avenue, New York, New York, 10153, Attn:  Shai Y. Waisman, Esq., attorneys for the Debtors

by no later than November 28, 2008 at 4:00 p.m. (Prevailing Eastern Standard Time) (the

"Objection Deadline").  Debtor retains the right to determine, in its sole discretion, the highest or

other best bid, and to reject any bid.

## Relief Requested

19.     Pursuant to sections 105 and 363 of the Bankruptcy Code, Bankruptcy

Rules 2002, 6004 and 9014, and Rules 6004-1, 9006-1, and 9014-1 of the Local Rules of the

United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy

Rules"), it is requested that the Court (i) approve the sale of the Aircraft pursuant to (a) the Sale

Agreement with Purchaser or (b) a substantially similar sale and purchase agreement with a party

who submits a Higher Offer, and authorize the Debtor to consummate the transactions

contemplated therein, (ii) approve the Debtor's payment of the fees of the Broker in connection

with the sale of the Aircraft, upon this Court's approval of the Debtor's retention of the Broker,

and (iii) approve the Debtor's payment of certain outstanding invoices representing expenses

incurred in the ordinary course of operating the Aircraft.

## The Relief Requested is Warranted
## and in the Best Interests of the Debtor and its Estate

20.     Ample authority exists for approval of the Proposed Sale.  Section 363 of

the Bankruptcy Code provides, in relevant part, "that a debtor, after notice and a hearing, may

use, sell, or lease, other than in the ordinary course of business, property of the estate."  11

U.S.C. § 363(b)(1).  Although section 363 of the Bankruptcy Code does not set forth a standard

for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's

assets, courts in the Second Circuit and others, in applying this section, have required that it be

based upon the sound business judgment of the debtor.  *See In re Chateaugay Corp.*, 973 F.2d

141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from

the evidence presented a good business reason to grant such application); *Committee of Equity

Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)

(same).  Once a court is satisfied that there is a sound business justification for the proposed sale,

the court must then determine whether (i) the debtor has provided the interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith. *In re Betty Owens Sch.*, 1997 U.S. Dist. Lexis 5877 (S.D.N.Y. 1997); *accord In re Delaware and Hudson Ry. Co.*, 124 B.R. at 166; *In re Decora Indus., Inc.*, Case No. 00-4459, 2002 WL 32332749 at *3 (Bankr. D. Del. May 20, 2002).

21.     The Debtor's decision to enter into the Sale Agreement, or a substantially similar sale and purchase agreement with a party who submits a Higher Offer, is an exercise of its sound business judgment.  The Aircraft is no longer required to facilitate Lehman's business transportation during the Debtor's chapter 11 case.  Additionally, should the Proposed Sale not be consummated, the Debtor will continue to incur costs for the Aircraft of approximately $41,000 per month, which is comprised of:  (i) hangar fees; (ii) management fees (iii) insurance fees; and (iv) maintenance fees.  The Debtor believes the Proposed Sale to be meritorious based on an extensive bidding process, the sale being a cash transaction, the transparency of the end buyer, and in light of what is an increasingly saturated market.

22.     As noted above, both the Debtor and the Broker had an incentive to seek the highest possible bid for the Aircraft, and they conducted an extensive bidding process.  The Debtor will continue to accept and entertain Higher Offers for the Aircraft until the Objection Deadline.  All potential bidders will have had an opportunity to bid on the Aircraft prior to the sale hearing.  The consideration to be paid by the Purchaser or by a party who submits a Higher Offer that is ultimately accepted by Debtor will (i) represent the best offer for the Aircraft; (ii) be fair and reasonable; (iii) provide for a greater recovery for the Debtor's creditors than would be provided by any other practical, available alternative; and (iv) constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and non-bankruptcy law.

23.    The Debtor has provided adequate notice and a reasonable opportunity to be heard in connection with the Proposed Sale and continues to afford parties interested in purchasing the Aircraft with the opportunity to submit a Higher Offer.  The Debtor has properly exercised its reasonable business judgment and has shown good and sufficient business justification under sections 105(a), 363(b) and 363(l) of the Bankruptcy Code for the Proposed Sale, outside a plan of reorganization.  The Proposed Sale, therefore, should be approved.

### Sale Free and Clear of Liens, Claims, Encumbrances, and Interests

24.    The Sale Agreement requires the sale of the Aircraft to be free and clear of any Lien (as defined in the Sale Agreement).  Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if applicable nonbankruptcy law permits the sale of such property free and clear of such interest, if such entity consents, if such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, if such interest is in bona fide dispute, or if such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.  11 U.S.C. § 363(f)(1) – (5).  Although the Debtor is unaware of any Lien on the Aircraft, with respect to any party asserting a lien, claim, encumbrance or other interest against the assets, the Debtor anticipates that it will be able to satisfy one or more of the conditions set forth in section 363(f).

### The Sale Agreement Is the
### Product of Good Faith and Contains Fair Consideration

25.    Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from the debtor notwithstanding that the sale conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] … does not affect the validity of a sale … to an entity that purchased … such

> property in good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(m) "fosters the 'policy of not only affording finality to the

judgment of the bankruptcy court, but particularly to give finality to those orders and judgments

upon which third parties rely.'"  *In re Chateaugay Corp.*, 1993 U.S. Dist. Lexis 6130, *9

(S.D.N.Y. 1993) (quoting *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 at 147).  *See also*

*Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides

that good faith transfers of property will not be affected by the reversal or modification on appeal

of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re*

*Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m),

good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay

pending appeal").

26.     The Sale Agreement is the product of arm's-length, good-faith

negotiations in a competitive bidding process.  Based upon the record to be made at the Sale

Hearing, the Debtor intends to request a finding that the Purchaser or a party who submits a

Higher Offer that is ultimately accepted by the Debtor is a good-faith purchaser entitled to the

protections of section 363(m) of the Bankruptcy Code.

### Relief Under Bankruptcy Rule 6004(h)

27.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale

or lease of property . . . is stayed until expiration of 10 days after entry of the order, unless the

Court orders otherwise."  Fed. R. Bank. P. 6004(h).[4]  The Debtor and the Purchaser believe that

---

[4] Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General Order M-308 of the United States Bankruptcy Court for the Southern District of New York, signed on October 11, 2005 by Chief Judge Stuart M. Bernstein.

the order approving the sale of the Aircraft and payment of the Broker should be effective
immediately upon entry of such order.  Therefore, waiver of the ten-day stay is requested.

## **Notice**

28.     No trustee or examiner has been appointed in these chapter 11 cases.  The
Debtors have served notice of this Motion in accordance with the procedures set forth in the
order entered on September 22, 2008 governing case management and administrative procedures
for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'
Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service;
(v) the United States Attorney for the Southern District of New York; and (vi) all parties who
have requested notice in these chapter 11 cases.  The Debtor submits that no other or further
notice need be provided.

29.     No previous request for the relief sought herein has been made by the
Debtors to this or any other court.

WHEREFORE the Debtor respectfully requests that the Court grant the relief
requested herein and such other and further relief as it deems just and proper.

Dated:  November 12, 2008
        New York, New York

                                        /s/ Shai Y. Waisma
                                        Shai Y. Waisman

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession

**<u>EXHIBIT 1</u>**

**<u>THE SALE AGREEMENT</u>**

WGM DRAFT
10/28/08

## AIRCRAFT SALE AND PURCHASE AGREEMENT

Dated as of the 29th day of October 2008

between

CES Aviation IX, LLC,

as Seller,

and

Peregrine Aviation Services, Inc.,

as Purchaser,

concerning the Dassault Falcon 50 aircraft bearing

Manufacturer's Serial Number 179

and

U.S. Registration Mark N232PR

# AIRCRAFT SALE AND PURCHASE AGREEMENT

This **AIRCRAFT SALE AND PURCHASE AGREEMENT** (this **"Agreement"**) is made and entered into as of the 29th day of October 2008 by and between CES Aviation IX, LLC, a Delaware limited liability company (**"Seller"**), and Peregrine Aviation Systems, Inc., a Delaware corporation (together with its permitted assignee or designee **"Purchaser"**).

## W I T N E S S E T H :

**WHEREAS**, Seller owns the Aircraft described and referred to herein and wishes to sell the Aircraft to Purchaser; and

**WHEREAS**, Purchaser desires to purchase the Aircraft from Seller; and

**NOW, THEREFORE,** in consideration of these premises and the mutual covenants and agreements herein contained, the parties agree as follows:

## ARTICLE I. DEFINITIONS

1.1     The following terms shall have the following meanings for all purposes of this Agreement:

**"Aircraft"** means the Dassault model Falcon 50 aircraft, bearing manufacturer's serial number 179 and U.S. registration mark N232PR (the **"Airframe"**), together with three (3) Garrett model TFE 741-3D-1C engines, bearing manufacturer's serial numbers P-76626C, P-76719C and P-76662C (the **"Engines"**), (i) one (1) installed Garrett model 36-100A auxiliary power unit bearing manufacturer's serial number P-285 (the **"APU"**), (ii) all appurtenances, appliances, parts, avionics, instruments, components, accessions, furnishings, items of equipment and accessories installed thereon, (iii) loose equipment specifically included on the Aircraft Specification and/or the Inventory Listing, and (iv) all Aircraft Documents.

**"Aircraft Documents"** means all documents and records relating to or required to be maintained with respect to the Aircraft, including, without limitation, a current and valid Airworthiness Certificate, all Airframe, Engine, APU and accessory logbooks, manuals, flight records, weight and balance manuals, tags, technical records, traceability records, task cards, information, overhaul records, maintenance records, maintenance contracts, computerized maintenance programs, airframe and aircraft component warranties, engine warranties, auxiliary power unit warranties, avionics warranties, wiring diagrams, drawings, data, completion manuals and all issued FAA Form 337's and any and all other records related to the Aircraft that are in Seller's possession and control.

**"Aircraft Protocol"** means the official English language text of the Protocol to the Convention.

**"Aircraft Registration Application"** means an FAA Aeronautical Center Form 8050-1 Aircraft Registration Application.

**"Aircraft Specification"** means the Aircraft Specification set forth on Exhibit A attached hereto.

**"Airworthiness Certificate"** means an FAA Standard Airworthiness Certificate (FAA Form 8100-2).

**"Balance of the Purchase Price"** means the amount of Five Million Nine Hundred Fifty Thousand Dollars ($5,950,000.00), *i.e.,* the Purchase Price minus the Deposit received by the Escrow Agent.

**"Bankruptcy Court"** has the meaning set forth in Subsection 4.1.5.

**"Business Day"** means any day of the year in which (i) banks are not authorized or required to close in the State of New York; and (ii) the FAA is open for filing title documents.

**"CAMP"** means the CAMP Systems computerized maintenance management service applicable to the Aircraft.

**"Cape Town Convention"** means, collectively, the Convention and the Aircraft Protocol.

**"Closing"** means the consummation of the purchase and sale transaction contemplated by this Agreement.

**"Closing Date"** means the date the Closing occurs.

**"Convention"** means the official English language text of the Convention on International Interests in Mobile Equipment, adopted on 16 November 2001, at a diplomatic conference in Cape Town, South Africa.

**"Delivery Condition"** means that the Aircraft at the Closing shall satisfy, comply and be consistent with the required items and conditions set forth in Exhibit B attached hereto.

**"Delivery Flight"** means the flight necessary to relocate the Aircraft from the Inspection Facility to the Delivery Location.

**"Delivery Location"** means Hartford, CT or such other location within the 48 contiguous states of the continental United States mutually agreed between Seller and Purchaser.

**"Delivery Receipt"** means an Aircraft Delivery Receipt in the form of Exhibit D attached hereto.

**"Deposit"** means a purchase money deposit in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00), which shall be non-refundable to Purchaser, except as set forth in Section 3.4, Section 4.1.5, Section 8.2.2, Section 8.3.1 and Section 8.4.

**"Discrepancy"** or **"Discrepancies"** means any defect, the correction of which is necessary to cause the Aircraft to be in the Delivery Condition, but does not include "cosmetic" defects to any part of the Aircraft resulting from normal wear and tear associated with prior usage of the Aircraft.

**"Dollar, dollar, US$, $"** means the lawful currency of the United States of America from time to time.

**"Escrow Agent"** means Insured Aircraft Title Service, Inc., 4848 S.W. 36th Street, Oklahoma City, OK 73179; tel: (800) 654-4882 or (405) 681-6663 (Attn: Joan Roberts).

**"Escrow and Title Search Fee"** means an amount not to exceed the sum of Five Thousand US Dollars ($5,000.00).

**"FAA"** means the Federal Aviation Administration.

**"FAA Bill of Sale"** means an FAA Aeronautical Center Form 8050-2 Aircraft Bill of Sale.

**"FAA Civil Aviation Registry"** means the FAA Civil Aviation registry, Aircraft Registration Branch, Mike Monroney Aeronautical Center, 6500 South MacArthur Boulevard, Oklahoma City, Oklahoma 73169.

**"FAR"** means the Aeronautics Regulations of Title 14, Parts 1 to 399 of the United States Code of Federal Regulations, as amended.

**"Inspection"** means the local inspection consisting of a log book review, borescope of the engines and APU, and test flight.

**"Inspection Facility"** means the aircraft home base for local inspection.

**"International Interest"** has the meaning given to it in the Convention.

**"International Registry"** means the international registry located in Dublin, Ireland, established pursuant to the Cape Town Convention.

**"International Registry Procedures"** means the official English language text of the Procedures of the International Registry issued by the supervisory authority thereof pursuant to the Cape Town Convention.

**"International Registry Regulations"** means the official English language text of the Regulations of the International Registry issued by the supervisory authority thereof pursuant to the Cape Town Convention.

**"Inventory Listing"** means an inventory of parts, loose equipment, engine covers, tool kits, and spares, if any, pertaining to the Airframe and Engines to be prepared jointly by Purchaser and Seller during the Inspection.

**"Lien"** means any lien, mortgage, security interest, lease or other demand, charge or encumbrance or claim or right of others, including, without limitation, rights of others under any engine or parts interchange, loan, lease, or pooling agreement, and any air navigation (*e.g.*, Transport Canada, EuroControl), or other similar over flight charges, and any domestic or foreign, taxes, imposts or assessments and any International Interests, relating to the period prior to the Closing Date and not created by or through Purchaser.

**"Material Corrosion"** means corrosion to the Aircraft the repair of which constitutes a Material Damage or materially adversely affects the value of the Aircraft.

**"Material Damage"** means any damage to the Aircraft or any part thereof that requires, required or would have required (i) the issuance of an FAA Form 337; (ii) any deviation from the approved manufacturer's aircraft build specifications or standard production configuration; or (iii) an alteration or repair, which would constitute a "major repair" as such term is defined in 14 C.F.R., Part 43, Appendix A and/or recorded in a manner prescribed by 14 C.F.R., Part 43, Appendix B, or otherwise in the log books or records of the Aircraft or in an insurance claim or otherwise.

**"Movement Costs"** means with respect to the ferry flight to the Inspection Facility, the test flight(s) conducted as part of the Inspection and the ferry flight to the Delivery Location, only the cost of the fuel and any other consumables consumed during each of such flights, the MSP Gold Program charges applicable to the foregoing flights, any landing and ground handling fees related thereto and hotel accommodations for the flight crew, if applicable.

**"MSP Gold Program"** means Honeywell MSP Gold Program with respect to the Engines of the Aircraft.

**"Purchase Price"** means the amount of Six Million Two Hundred Thousand Dollars ($6,200,000.00).

**"Seller's Broker"** means Bloomer deVere Group Avia Inc.

**"Technical Acceptance/Rejection Letter"** means an Aircraft Technical Acceptance/Rejection Letter in the form of Exhibit C attached hereto.

**"Warranties Assignments"** means collectively the Dassault Assignment of Warranties in the form of Exhibit E attached hereto or such other form of assignment customarily used by Dassault with respect to the manufacturer's warranties in effect for the Aircraft (if any) and the Assignment of Warranties in the form of Exhibit E-1 attached hereto with respect to any and all other applicable warranties and maintenance and service contracts and programs relating to the Aircraft (if any).

**"Warranty Bill of Sale"** means a Warranty Bill of Sale for the Aircraft in the form of Exhibit F attached hereto.

## ARTICLE II. AGREEMENT TO PURCHASE AND SELL

2.1    **Agreement.**  For and in consideration of the Purchase Price, on the Closing Date, Seller shall sell or cause to be sold and deliver the Aircraft to Purchaser, and Purchaser shall purchase and accept delivery of the Aircraft from Seller, on and subject to the terms and conditions set forth herein.

2.2    **Deposit.**  Purchaser wire transferred the Deposit to the Escrow Agent in immediately available funds on October 29, 2008. The Deposit shall be held by the Escrow Agent and shall be applied towards the Purchase Price at the Closing. The Deposit shall be non-refundable to Purchaser, except as set forth in Section 3.4, Section 4.1.5, Section 8.2.2, Section 8.3.1 and Section 8.4.

## ARTICLE III. AIRCRAFT CONDITION AND INSPECTION

3.1    **Aircraft Condition.**  It shall be a condition to Purchaser's obligation to consummate the transaction contemplated herein that the Aircraft shall be in the Delivery Condition on the Closing Date.

3.2    **Inspection Authority.**  The Aircraft shall be subjected to an Inspection by the Inspection Facility, which shall be undertaken at Purchaser's sole cost and expense, in order to verify that the Aircraft is in the Delivery Condition, including a video borescope inspection of the Engines and the APU, a ground power run of the Engines to confirm

that each Engine is able to produce its rated take-off thrust, a hard landing inspection, a complete records review, and a flight test of no more than three (3) hours duration, subject to an additional test flight if required by the Inspection Facility to verify the correction or repair of all Discrepancies. Purchaser's financial responsibility for costs associated with the foregoing test flight(s) shall be limited to (i) the Movement Costs and (ii) in the event this Agreement is terminated due to Purchaser's inability to satisfy any of the conditions precedent set forth in Section 4.2 (other than as set forth in Subsection 4.2.6), the sum of Ten Thousand Dollars ($10,000) representing the cost associated with returning the Aircraft to its prior location. Prior to commencement of the Inspection, Purchaser shall open the work order of the Inspection Facility for its account and pre-pay the quoted cost of the Inspection by the Inspection Facility, provide Seller proof of payment thereof, and Seller shall authorize the Inspection Facility to perform the Inspection. All test flights shall be in accordance with the Inspection procedures, reference flight evaluation checklist and operational checks of the Inspection Facility and shall be flown by Seller's pilots or pilots provided and approved by the Inspection Facility. Seller shall have and retain "operational control" of the Aircraft as defined in the applicable FAR (operational control as defined in FAR § 1.1, means, with respect to a flight, the exercise of authority over initiating, conducting or terminating a flight) and exclusive possession, command and control over the Aircraft. The pilot-in-command shall have final and complete authority to postpone or cancel any flight for any reason or condition which, in his or her judgment, will compromise the safety of the flight. The parties further acknowledge and agree that only personnel essential to the safe and reasonable conduct of the test flights shall be on board the Aircraft, including three (3) technical representatives of Purchaser (with one pilot occupying the jump seat).

3.3    **Inspection Location and Commencement.** The Inspection shall be performed at the Inspection Facility. Seller, at its sole cost and expense, except for the Movement Costs (which shall be the responsibilities of Purchaser), shall deliver the Aircraft and the Aircraft Documents to the Inspection Facility as soon as practicable. After commencement of the Inspection and until Closing or earlier termination of this Agreement, Seller shall not operate the Aircraft for any purpose whatsoever, other than the test flight(s).

3.4    **Aircraft Acceptance/Rejection.** Within two (2) Business Days after the completion of the Inspection, Purchaser will (i) accept the Aircraft, (ii) accept the Aircraft, subject to repair of all Discrepancies, or (iii) reject the Aircraft, but only if it is conclusively determined that the Aircraft cannot be made to comply with the Delivery Condition, by delivering to Seller, with a copy to Escrow Agent, a completed, executed Aircraft Technical Acceptance/Rejection Letter with the applicable line marked to show Purchaser's acceptance or rejection. In the event Purchaser rejects the Aircraft following a conclusive determination that the Aircraft cannot be made to comply with the Delivery Condition, upon confirmation that Purchaser has paid or made satisfactory arrangements for the payment of the costs and expenses of the Inspection and the Movement Costs, the Deposit shall immediately be refunded to Purchaser, and this Agreement shall terminate and be of no further force or effect and neither party shall have any further liability or obligation hereunder. In the event Purchaser accepts the Aircraft as set forth hereinabove under (i) or (ii), the Deposit shall become non-refundable subject to the repair of all Discrepancies required to make the Aircraft comply with the Delivery Condition.

3.5    **Correction of Discrepancies.** If Purchaser has not rejected the Aircraft pursuant to the Aircraft Acceptance/Rejection Letter, Seller, at its sole cost and expense, shall cause all Discrepancies to be corrected. Any other items which are not Discrepancies shall be the sole responsibility of Purchaser and their corresponding corrective action may not extend the Closing Date.

## ARTICLE IV. CLOSING PROCEDURES

4.1    **Pre-Closing Obligations.**

4.1.1.    Within two (2) Business Days following opening of escrow, Escrow Agent shall prepare and deliver to Purchaser and Seller title reports for the Aircraft and each of the Aircraft's Engines, which reports shall include relevant information from both the FAA Civil Aviation Registry and the International Registry.

4.1.2.    Prior to the Closing, Seller shall cause to be delivered to Escrow Agent:

4.1.2.1    an undated, but otherwise fully executed, FAA Bill of Sale, which shall include the description of the Engines, conveying title from Seller to Purchaser;

4.1.2.2  an undated, but otherwise fully executed, Warranty Bill of Sale conveying title from Seller to Purchaser;

4.1.2.3  releases of all Liens, if any, affecting title to the Aircraft or the Engines; and

4.1.2.4  fully executed Warranties Assignments (if applicable).

4.1.3  Prior to the Closing, Purchaser shall deliver, or cause to be delivered, to Escrow Agent:

4.1.3.1  an undated, but otherwise fully executed, Aircraft Registration Application for the Aircraft; and

4.1.3.2  the Balance of the Purchase Price, plus one-half of the Escrow and Title Search Fee, plus all Movement Costs to the extent not previously paid by Purchaser or reimbursed by Purchaser to Seller.

4.1.4  Prior to the Closing, Seller shall position the Aircraft at the Delivery Location and Purchaser shall reimburse Seller the Movement Costs with respect to such flight.  Purchaser shall have the right to have up to two (2) of its technical representatives on board the Aircraft during the Delivery Flight.

THE PRE-POSITIONING OF ANY DOCUMENT OR THE BALANCE OF THE PURCHASE PRICE WITH THE ESCROW AGENT IS FOR THE CONVENIENCE OF THE PARTIES ONLY SO THAT THEY MAY BE RELEASED AT THE ORAL OR WRITTEN DIRECTION OF THE DEPOSITING PARTIES FOLLOWING SATISFACTION OF ANY CONDITIONS CONTAINED HEREIN, AND SHALL NOT BE CONSTRUED AS OR IMPLY ACCEPTANCE OF THE AIRCRAFT OR CONVEYANCE OF TITLE THERETO, WHICH MAY ONLY OCCUR AS SPECIFICALLY PROVIDED IN THIS AGREEMENT.

4.1.5  The United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") shall have entered an order approving the transactions contemplated by this Agreement (which order shall (a) be in form and substance satisfactory to Purchaser and Seller and (b) shall not be subject to a stay pending appeal), and such order shall be in full force and effect.  In the event the Bankruptcy Court fails to enter an order approving the transactions contemplated by this Agreement within sixty (60) calendar days of the date hereof, Purchaser may terminate this Agreement upon written notice to Seller and Escrow Agent, whereupon Escrow Agent shall forthwith return the Deposit to an account designated by Purchaser, without any consent of Seller or other party being required. In the event Purchaser has not provided the foregoing notice of termination within five (5) calendar days of the expiration of said sixty (60) calendar days period and the Bankruptcy Court has not entered an order approving the transactions contemplated by this Agreement within seventy-five (75) calendar days of the date hereof, either party may terminate this Agreement upon written notice to the other party and Escrow Agent, and Escrow Agent shall thereafter forthwith return the Deposit to an account designated by Purchaser, without any consent of Seller or other party being required.

4.2  **Conditions Precedent to Seller's Obligations.**  Seller's obligation to sell and deliver the Aircraft to Purchaser on the Closing Date shall be subject to the following conditions precedent:

4.2.1  Purchaser shall not be in breach or default of any of Purchaser's obligations arising under this Agreement;

4.2.2  All of Purchaser's representations set forth in Section 5.2 shall be true and accurate as of the time of Closing;

4.2.3  Purchaser shall have delivered or cause to be delivered the items identified in Subsection 4.1.3 required to be delivered by it;

4.2.4  Purchaser's obligations set forth in Section 8.21 shall have been complied with;

4.2.5  Purchaser shall have deposited with the Escrow Agent the Balance of the Purchase Price, plus one-half of the Escrow and Title Search Fee;

4.2.6    The obligation set forth in Subsection 4.1.5 shall have been satisfied; and

4.2.7    Purchaser shall have performed and complied with all of the terms, conditions and covenants required by this Agreement to be performed or complied with by it prior to or at the Closing.

4.3    **Conditions Precedent to Purchaser's Obligations.**  Purchaser's obligation to purchase and accept delivery of the Aircraft from Seller on the Closing Date shall be subject to the following conditions precedent:

4.3.1    Seller shall not be in breach or default of any of Seller's obligations arising under this Agreement;

4.3.2    All of Seller's representations set forth in Section 5.1 shall be true and accurate as of the time of Closing;

4.3.3    Seller shall have delivered or caused to be delivered the items identified in Subsection 4.1.2 required to be delivered by it;

4.3.4    Seller shall have positioned the Aircraft at the Delivery Location;

4.3.5    Seller shall have corrected or repaired all Discrepancies;

4.3.6    All applicable maintenance contracts, including but not limited to the MSP Gold Program and CAMP shall be paid up to the Closing Date and transferable to Purchaser at Purchaser's expense.  At the time of the Closing (or if there is a difference between the fully paid up status at the time the Aircraft completes the Inspection and the Closing Date, Seller shall credit such difference against the Balance of the Purchase Price or pay such difference to Purchaser at the Closing or offset it against the applicable charges included in the Movement Costs) and Seller, at the time of the Closing, shall assist Purchaser as more specifically described in Section 8.1.

4.3.7    The Aircraft shall be in the required Delivery Condition;

4.3.8    Seller's obligations expressed in Section 8.21 shall have been complied with;

4.3.9    The obligation set forth in Subsection 4.1.5 shall have been satisfied; and

4.3.10   Seller shall have performed and complied with all of the terms, conditions and covenants required by this Agreement to be performed or complied with by it prior to or at the Closing.

4.4    **Closing.**  The Closing shall occur within three (3) Business Days after the Aircraft has been returned to unrestricted service with all Discrepancies repaired and corrected, subject to the conditions set forth in Section 4.2 and Section 4.3.  Seller, at its sole cost and expense (except for the Movement Costs which shall be the responsibility of the Purchaser), will position the Aircraft at the Delivery Location prior to the Closing.  At the time of the Closing, the parties shall perform the following closing deliveries in the order presented, all of which collectively shall constitute the Closing:

4.4.1.   Seller shall confirm to Purchaser and Escrow Agent that the Conditions Precedent to Seller's Obligations as set forth in Section 4.2 have been satisfied or waived;

4.4.2.   Purchaser shall confirm to Seller and Escrow Agent that the Conditions Precedent to Purchaser's Obligations as set forth in Section 4.3 have been satisfied or waived;

4.4.3    Seller shall deliver or cause to be delivered, the Aircraft to Purchaser at the Delivery Location;

4.4.4    Seller and Purchaser shall commence a conference call with Escrow Agent during which:

4.4.4.1  The Escrow Agent shall confirm that the conditions set forth in Section 4.1.1 have been satisfied, that procedures set forth in Section 8.21 have been followed, that Priority Search Certificates from the International Registry addressed to Purchaser indicate that there is no International

Interest registered on the International Registry with respect to the Aircraft or, if there is, Escrow Agent has been irrevocably authorized to discharge the same contemporaneous with Closing;

4.4.4.2    The Escrow Agent shall confirm that it is in receipt of the Purchase Price, plus one-half of the Escrow and Title Search Fee from Purchaser;

4.4.4.3    Purchaser shall, concurrently with Seller's instruction in Subsection 4.4.4.4, instruct the Escrow Agent to date and file the Aircraft Registration Application in the FAA Civil Aviation Registry and to release the Purchase Price to Seller;

4.4.4.4    Seller shall, concurrently with Purchaser's instruction in Subsection 4.4.4.3, instruct the Escrow Agent to date and file the FAA Bill of Sale and any Lien releases in the FAA Civil Aviation Registry, and to deliver the Warranty Bill of Sale and the Warranties Assignments to Purchaser, which instruction by Seller is subject only to receipt by Seller from Escrow Agent of a Federal Reference number evidencing the release of the Purchase Price to or at the direction of Seller. Seller's obligations in this Subsection 4.4.4.4 shall be subject to any necessary instructions to the Escrow Agent by any Lien holder but which shall not in any event relieve Seller of its obligation to transfer the Aircraft to Purchaser free and clear of Liens; and

4.4.4.5    Purchaser and Seller shall simultaneously authorize Escrow Agent to register the International Interest arising from the contract of sale for the Aircraft and the Engines, on the International Registry as set forth in paragraph 8.21 below.

4.4.5    Purchaser shall accept delivery of the Aircraft from Seller at the Delivery Location, and shall simultaneously deliver to Seller a fully executed and completed Delivery Receipt setting forth the time of the FAA filing of the FAA Bill of Sale as provided by Escrow Agent.

## ARTICLE V. REPRESENTATIONS AND WARRANTIES

5.1    **Seller's Representations and Warranties.** Seller hereby represents and warrants that, as of the date hereof, and as of the Closing:

5.1.1    Seller is a limited liability company duly formed, validly existing, and in good standing under the laws of the State of Delaware having the capacity to sue and be sued in its own name, having full power, legal right and authority to carry on its business as currently conducted, and to execute, deliver and perform the provisions of this Agreement, all subject to the approval of the Bankruptcy Court;

5.1.2    The execution, delivery, and performance by Seller of this Agreement, and the sale of the Aircraft, has been duly authorized by all necessary action on behalf of Seller and do not conflict with or result in any breach of any of the terms or constitute a default under any document, instrument, or agreement to which Seller is a party, all subject to the approval of the Bankruptcy Court;

5.1.3    The person executing this Agreement on behalf of Seller has full power and authority to do so, subject to the approval of the Bankruptcy Court;

5.1.4    This Agreement constitutes the legal, valid and binding obligations of Seller and is enforceable against Seller in accordance with its terms subject to applicable bankruptcy (including an appropriate order of the Bankruptcy Court), insolvency, fraudulent conveyance, reorganization, moratorium and similar laws affecting the enforceability of contractual obligations and creditors' rights generally and by the application of equitable principles by courts of competent jurisdiction, sitting at law or in equity;

5.1.5    Seller, at the time of Closing, shall own good and marketable title to the Aircraft, free and clear of all Liens;

5.1.6    At the time of the Closing, Seller shall convey to Purchaser good and marketable title to the Aircraft, free and clear of all Liens, and Seller will warrant and defend such title forever against all claims and demands whatsoever; and

5.1.7    Seller has not entered into any agreement (other than this Agreement) pursuant to which Seller is or may be contractually and/or legally obligated to sell, lease, rent, assign or otherwise transfer the Aircraft or any interest in the Aircraft to any party other than Purchaser.

5.2    **Purchaser's Representations and Warranties.**  Purchaser hereby represents and warrants that, as of the date hereof, and as of the Closing:

5.2.1    Purchaser is a corporation duly formed, validly existing, and in good standing under the laws of the State of Delaware, having the capacity to sue and be sued in its own name, having full power, legal right and authority to carry on its business as currently conducted, and to execute, deliver and perform the provisions of this Agreement;

5.2.2    The execution, delivery, and performance by Purchaser of this Agreement, and the acquisition of the Aircraft, has been duly authorized by all necessary action on behalf of Purchaser and do not conflict with or result in any breach of any of the terms or constitute a default under any document, instrument, or agreement to which Purchaser is a party;

5.2.3    The person executing this Agreement on behalf of Purchaser has full power and authority to do so;

5.2.4    This Agreement constitutes the legal, valid and binding obligations of Purchaser and is enforceable against Purchaser in accordance with its terms subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and similar laws affecting the enforceability of contractual obligations and creditors' rights generally and by the application of equitable principles by courts of competent jurisdiction, sitting at law or in equity; and

### ARTICLE VI. DISCLAIMER

6.1    **DISCLAIMER AND LIMITATION OF LIABILITY.** EXCEPT AS OTHERWISE SET FORTH IN THIS AGREEMENT, PURCHASER ACKNOWLEDGES THAT THE AIRCRAFT IS BEING SOLD AND DELIVERED TO PURCHASER IN "AS IS, WHERE IS, WITH ALL FAULTS" CONDITION, AND THAT ALL DELIVERY CONDITIONS SPECIFIED IN THIS AGREEMENT SHALL EXPIRE AND BE OF NO FURTHER FORCE OR EFFECT AS OF THE CLOSING. SELLER DOES NOT MAKE, GIVE, OR EXTEND, AND PURCHASER HEREBY DISCLAIMS AND RENOUNCES, ANY AND ALL WARRANTIES AND REPRESENTATIONS OF ANY KIND OR NATURE WHATSOEVER, EXPRESS OR IMPLIED, WHETHER ARISING IN LAW, IN EQUITY, IN CONTRACT, OR IN TORT, AND INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY, AIRWORTHINESS, DESIGN, CONDITION, OR FITNESS FOR A PARTICULAR USE.

6.2    UNDER NO CIRCUMSTANCES SHALL EITHER PARTY BE LIABLE FOR LOST PROFITS, LOSS OF BUSINESS, LOSS OF USE OR ANY OTHER INCIDENTAL, INDIRECT, CONSEQUENTIAL OR SPECIAL DAMAGES ARISING OUT OF OR RELATED TO THE CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR ANY DELAY IN CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED HEREBY, AND EACH PARTY HEREBY WAIVES ANY RIGHT IT MAY HAVE TO SUCH DAMAGES.

### ARTICLE VII. TAXES

7.1    **Seller's Taxes.**  Seller has paid, and shall defend, indemnify and hold Purchaser harmless from and against, any and all sales, use, excise and other similar taxes, and any and all taxes, fees, duties, interest, penalties, charges, invoices, claims, assessments and statements imposed or imposable by any federal, state, county, local, foreign or other governmental authority, entity or party arising from any purchase, sale, lease, delivery, transfer, possession, use, storage, operation, maintenance, consumption, or registration of the Aircraft prior to the Closing. In the event

Purchaser receives notice of any audit, claim, assessment or proposed assessment of any tax for which Seller may be responsible under this Section 7.1. Purchaser shall within ten (10) Business Days notify Seller thereof, and Seller and Purchaser shall reasonably cooperate to manage and/or defend any such audit, claim, assessment or proposed assessment.

7.2    **Purchaser's Taxes.** Purchaser shall bear, and shall defend, indemnify and hold Seller harmless from and against any and all sales, use, excise and other similar taxes, and any taxes, fees, duties, interest, penalties, charges, invoices, claims and statements relating thereto, which may be imposed by any federal, state, county, local or other governmental authority as a result of the sale, delivery or transfer of the Aircraft to Purchaser, or the ownership, possession, use or storage of the Aircraft by Purchaser, except for any taxes imposed on or measured by Seller's income or imposed, assessed or assessable prior to the Closing. In the event Seller receives notice of any audit, claim, assessment or proposed assessment of any tax for which Purchaser may be responsible under this Section 7.2, Seller shall within ten (10) Business Days notify Purchaser thereof, and Seller and Purchaser shall reasonably cooperate to manage and/or defend any such audit, claim, assessment or proposed assessment.

## ARTICLE VIII. MISCELLANEOUS

8.1    **Third-Party Warranties and Maintenance Program/Service Plans Contracts.** To the extent that any warranties from manufacturers and service providers or suppliers with respect to the Aircraft are in effect and are assignable, all rights under such warranties are hereby assigned and transferred to Purchaser effective at the time of the Closing and Seller shall evidence the foregoing assignments by executing the Warranties Assignments and delivering or causing to be delivered the Warranties Assignments to Purchaser upon the Closing. In addition, without limitation to the foregoing, Seller, at the time of the Closing, shall reasonably assist Purchaser in connection with the transfer of the service policies, plans and/or product agreements with respect to the Aircraft, including the MSP Gold Program and CAMP, and any follow on contracts, provided Purchaser shall be responsible for any fees, charges, costs and expenses pertaining to such assignments and transfers.

Without limiting the generality of the foregoing, effective upon the Closing, Seller hereby assigns to Purchaser:

8.1.1    All rights to enforce or compel performance under any such warranty and agreement;

8.1.2    All rights to receive any services, property, or moneys due and that hereafter become due under or pursuant to any such warranty and agreement, and to receive proceeds of any insurance, indemnity, guaranty, or collateral security with respect to any such warranty and agreement; and

8.1.3    All claims for damages arising out of or for breach or default under any such warranty and agreement, and all rights to exercise any remedy for breach or default under any such warranty and agreement that may be available under such warranty and agreement, at law or in equity.

8.2    **Risk of Loss, Damage or Destruction of Aircraft.**

8.2.1    **Risk of Loss.** Title to, and risk of loss, injury, destruction or damage to the Aircraft, shall pass from Seller to Purchaser on the later to occur of the time that (i) the FAA Bill of Sale is filed with the FAA Civil Aircraft Registry, and (ii) the Purchase Price is released to Seller by Escrow Agent.

8.2.2    **Destruction or Damage.** Notwithstanding any contrary provision of this Agreement, if at any time after the date hereof and prior to the Closing the Aircraft is destroyed or is damaged in such a manner that constitutes Material Damage, either party may terminate this Agreement upon written notice to the other and the Deposit shall immediately be refunded to Purchaser, and this Agreement shall terminate and be of no further force or effect.

8.3    **Default.**

8.3.1    **Seller's Default.** This Agreement may be terminated by Purchaser in the event of a material breach by Seller of any provision of this Agreement (provided that Purchaser is in compliance with its material obligations under this Agreement) which breach is not cured within five (5) Business Days of the delivery to Seller of written notice thereof from Purchaser or which breach by its nature cannot be cured prior to

Closing. If Purchaser elects to terminate this Agreement under this Subsection 8.3.1, the Deposit shall be immediately refunded to Purchaser, Seller shall reimburse Purchaser for its actual out-of-pocket cost of the Inspection (including costs and expenses incurred as a result of test flight(s)) paid by Purchaser to the Inspection Facility), the Movement Costs paid or reimbursed to Seller and the reasonable documented costs, expenses and fees of consultants and attorneys incurred by Purchaser in connection with the transactions contemplated by this Agreement, within five (5) Business Days of written demand by Purchaser, and thereafter this Agreement shall be of no further force or effect. Purchaser's rights to receive the amounts expressly set forth in this Subsection 8.3.1 shall be the sole remedy available to Purchaser in the event Seller defaults on Seller's obligations under this Agreement, and Purchaser waives any other remedies that may be available to Purchaser at law or in equity.

8.3.2    **Purchaser's Default.** This Agreement may be terminated by Seller in the event of a material breach by Purchaser of any provision of this Agreement (provided that Seller is in compliance with its material obligations under this Agreement) which breach is not cured within five (5) Business Days of the delivery to Purchaser of written notice thereof from Seller or which breach by its nature cannot be cured prior to Closing. If Seller elects to terminate this Agreement under this Subsection 8.3.2, Escrow Agent shall pay the Deposit to Seller as liquidated damages, and this Agreement shall be of no further force or effect. Seller acknowledges and represents that the liquidated damages amount provided for in this Subsection 8.3.2 is a reasonable estimate of the damages that would be incurred by Seller in the event Purchaser defaults on Purchaser's obligations under this Agreement. Seller's rights to receive the Deposit as liquidated damages shall be the sole remedy available to Seller in the event Purchaser defaults on Purchaser's obligations under this Agreement, and Seller waives any other remedies that may be available to Seller at law or in equity.

8.4    **Force Majeure.** The term "Force Majeure" means any cause beyond a party's reasonable control that prevents a party from meeting its obligations (other than the payment of money) under this Agreement, including, but not limited to, acts of God or the public enemy, acts of terrorism, war or other outbreak of hostilities, civil commotion, strikes, lockouts, and labor disputes. A party shall promptly notify the other party that it will be unable to perform its obligations hereunder due to a Force Majeure. In such event, the time for such party's performance shall be extended for the pendency of such event, provided, however, that should such non-performance extend beyond thirty (30) days, the unaffected party may at its option terminate this Agreement upon written notice to the other party. In such event, the Escrow Agent shall: (i) deduct from the Deposit and pay to itself one-half of any agreed upon Escrow Fees payable to the Escrow Agent; and (ii) remit the balance of the Deposit to Purchaser. Thereafter, neither party shall have any obligation or liability to the other with respect to the subject matter of this Agreement, except that Purchaser shall remain liable for the cost of the Inspection (excluding the cost of repairing any Discrepancies) and Movement Costs. In the event that all Discrepancies are not repaired within thirty (30) days after delivery of the Technical Acceptance/Rejection Letter to Seller, either party shall have the right to treat the same as a Force Majeure event applicable to Seller and to terminate this Agreement as aforesaid.

8.5    **Amendments.** The provisions of this Agreement may not be waived, altered, modified, amended, supplemented or terminated in any manner whatsoever except by written instrument signed by both parties hereto.

8.6    **Severability.** Any provision of this Agreement that may be determined by competent authority to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

8.7    **Assignment.** This Agreement may not be assigned by any party without the prior written consent of the other party; provided, however, Purchaser shall have the right to: (i) assign this Agreement to a wholly owned or controlled affiliate or to any party related to Purchaser or any of its members or managers, provided that the Purchaser, as assignor, shall remain primarily obligated for the payment and performance of its obligations hereunder; (ii) assign its rights under this Agreement to a financial institution providing lease or mortgage financing of the Aircraft or the Purchase Price; and (iii) assign its rights to an institutional trustee such as Wells Fargo Bank Northwest, NA or Wilmington Trust Company for purposes of registration within the United States; provided, however, in the case of any such assignment, the assignor shall remain primarily obligated for its assignee's payment and performance of assignor's obligations hereunder.

8.8  **Successor and Assigns.**  This Agreement shall inure to the benefit of and be binding upon each of the parties hereto and their respective successors and permitted assigns.

8.9  **Headings and References.**  The division of this Agreement into sections, and the insertion of headings, are for convenience of reference only and shall not affect the construction or interpretation of this Agreement.

8.10  **Counterparts.**  This Agreement may be fully executed in two or more counterparts by each of the parties hereto, such counterparts together constituting but one and the same instrument.  Such counterparts may be exchanged via facsimile or other electronic transmission.

8.11  **Notices.**  All communications, declarations, demands, consents, directions, approvals, instructions, requests and notices required or permitted by this Agreement shall be in writing and shall be deemed to have been duly given or made when delivered personally or transmitted electronically by facsimile, receipt acknowledged, or in the case of documented overnight delivery service or registered or certified mail, return receipt requested, delivery charge or postage prepaid, on the date shown on the receipt therefor, in each case at the address set forth below:

| If to Purchaser: | Peregrine Aviation Services, Inc.<br>3300 Airport Road<br>Boca Raton, FL 33431<br>Attn: Scott Dandaneau<br>Telephone: (561) 417-6300<br>Facsimile Number: (561) 417-0768<br>Email: scott@peregrineaviation.com |
|---|---|
| If to Seller: | CES Aviation IX, LLC<br>c/o Lehman Brothers<br>745 Seventh Avenue, 30th Floor<br>New York, NY 10019<br>Attn: Francine Kittredge<br>Telephone: (212) 526-3778<br>Telefax: (212) 526-3200<br>Email: fkittredd@lehman.com |
| If to Escrow Agent: | Insured Aircraft Title Service, Inc.<br>4848 S.W. 36th Street<br>Oklahoma City, OK  73179<br>Attn:  Ms. Joan Roberts<br>Tel:  (800) 654-4882<br>Fax:  (405) 682-0818<br>Email: jroberts@insuredaircraft.com |

8.12  **Non-Waiver.**  Any failure at any time of either party to enforce any provision of this Agreement shall not constitute a waiver of such provision or prejudice the right of such party to enforce such provision at any subsequent time.

8.13  **Entire Agreement.**  The parties agree that the terms and conditions of this Agreement constitute the entire agreement between the parties with respect to the subject matter hereof.  This Agreement supersedes all prior agreements between the parties, express or implied.

8.14  **Transaction Costs and Expenses.**  Except as otherwise set forth herein, each party to this Agreement shall bear its own transaction costs and expenses, including, without limitation, any brokers' commissions and/or attorneys' fees.  Seller shall be solely responsible for the fees of Seller's Broker, which fees Seller may direct Escrow Agent to pay to Seller's Broker at Closing out of the Purchase Price proceeds.  Each party hereto agrees to indemnify and hold the other harmless from and against any claims made by any broker, consultant or other party claiming an



interest in the Aircraft or the purchase price arising from an actual or alleged relationship or agreement with the indemnifying party. Purchaser and Seller shall each pay one-half (½) of the Escrow and Title Search Fee relating to the transactions contemplated hereby.

8.15    **Survival.** The representations, warranties, and indemnification obligations of Purchaser and Seller shall survive the Closing in perpetuity; provided, however, that any of the same pertaining to the technical condition of the Aircraft, if any, shall terminate at Closing.

8.16    **Time is of the Essence.** Time shall be of the essence for all events contemplated hereunder.

8.17    **Further Assurances.** Each of the parties hereto covenants and agrees to execute such other and further documents relating to the matters set forth herein and to take or cause to be taken such other and further actions, as may be reasonably necessary or appropriate to carry out the purposes and intent of this Agreement, and to consummate the transactions contemplated hereby.

8.18    **Attorney Fees.** In the event it becomes necessary to enforce the terms of this Agreement by litigation or otherwise, the prevailing party shall be entitled to recover its reasonable attorney fees and court costs, including any such fees or costs arising from subsequent appeals and efforts to execute on any judgment.

8.19    **Governing Law.** THIS AGREEMENT SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, UNITED STATES OF AMERICA, WITHOUT REFERENCE TO PRINCIPLES OF CONFLICTS OF LAW OTHER THAN SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

8.20    **Dispute Resolution.** Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in New York, New York, before one (1) arbitrator. The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

8.21    **Cape Town Convention.**

8.21.1    Prior to the Closing, Purchaser shall become a "transacting user entity" and Seller shall become a "transacting user entity" with the International Registry. Each of Purchaser and Seller shall bear its own expense in doing so.

8.21.2    Each party shall provide to the other, as a condition to Closing, evidence that it has been approved by the International Registry as a "transacting user entity" and has duly registered with, is authorized to make filings with and has received all approvals from the International Registry, and has appointed an "administrator" (as such term is defined and used in the International Registry Procedures and International Registry Regulations).

8.21.3    Each party shall, as a condition to Closing, authorize Escrow Agent to act as, and shall designate Escrow Agent as, a "professional user entity" (as such term is defined and used in the International Registry Procedures and International Registry Regulations) to effect, amend, discharge and consent to registrations with respect to the Aircraft (including the Airframe and the Engines) on its behalf. Neither Seller nor Purchaser shall revoke such authorization until after the earlier to occur of (i) registration of a Contract of Sale of the Aircraft with the International Registry following the filing with the FAA of the Bill of Sale conveying the Aircraft from Seller to Purchaser or (ii) termination of this Agreement in accordance with its terms. Without Seller's prior written consent, Purchaser and Purchaser's lender (if applicable) shall not effect or cause to effect a prospective International Interest on the Aircraft (including the Airframe and the Engines) and shall upon such registration of any such prospective International Interest take all necessary actions to discharge or cause to discharge such registration.

8.21.4    Purchaser and Seller shall cooperate to cause Escrow Agent, as a professional user entity, to register a Contract of Sale of the Aircraft with the International Registry immediately after filing of the FAA Bill of



Sale with the FAA. Escrow Agent shall prepare and cause to be filed with the FAA an AC Form 8050-135 in form reasonably satisfactory to Purchaser and Seller. Seller and Purchaser each hereby expressly consents to the registration of the International Interest arising from the Contract of Sale with respect to the Aircraft (including the Airframe and the Engines).

8.21.5    Immediately prior to Closing, the Escrow Agent shall obtain a Priority Search Certificate (as such term is defined and used in the International Registry Procedures and the International Registry Regulations) from the International Registry with respect to the Aircraft (including the Airframe and the Engines) confirming that no prior International Interest exists that will not be otherwise discharged at Closing with respect to the Aircraft (including the Airframe and the Engines). Any Priority Search Certificate obtained by the Escrow Agent from the International Registry with respect to the Aircraft shall identify the Purchaser and the Seller as having the benefit of the search.

8.22    **Agreement Negotiated.** The parties to this Agreement are sophisticated and have been represented or had the opportunity to be represented by an attorney in connection with the negotiation and performance of this Agreement. The parties agree that no presumptions relating to the interpretation of contracts against the drafter of any particular clause should or may be applied in this case and, therefore, waive their effects.

8.23    **Confidentiality.** The terms and conditions of this Agreement, and all writings, discussions, and negotiations in connection with the transaction contemplated by this Agreement (including, without limitation, the fact that discussions and negotiations have been conducted by the parties), shall remain strictly confidential and shall not be disclosed by either party, without the prior written consent of the other party, except that each party shall be entitled to disclose the terms and conditions of this Agreement (i) as may be required by law or legal process; (ii) to such party's attorneys, accountants, consultants, and other advisors performing services for such party with respect to or affected by the transaction contemplated by this Agreement including Escrow Agent and Inspection Facility and their personnel; (iii) to each party's employees with a need to know; and (iv) as may be required to permit such party to pursue all available remedies for breach of this Agreement by the other party.

8.24    **Continuing Obligations.** Each party shall take, or cause to be taken, such actions, and will execute and deliver, or cause to be executed and delivered, such additional documents and instruments, and will do, or cause to be done, all such actions as are necessary, in conjunction with, and after the Closing, to effectuate the transactions contemplated in this Agreement.

**[SIGNATURES APPEAR ON FOLLOWING PAGE]**



**IN WITNESS WHEREOF,** the undersigned parties have caused this Aircraft Sale and Purchase Agreement to be executed, delivered and effective as of the date first above written.

Seller:

CES Aviation IX, LLC

By: _[signature]_
Print: Frances S Kittredge
Title: Managing Director

Purchaser:

Peregrine Aviation Services, Inc.

By: _[signature]_
Print: SCOTT M DANDENEAU
Title: PRESIDENT

## Agreement of Escrow Agent

Purchaser and Seller hereby appoint Escrow Agent as document holder and stakeholder for the sale and purchase of the Aircraft, and Escrow Agent accepts such appointment for and in consideration of the Escrow and Title Search Fee. The parties acknowledge that Escrow Agent is acting as a document holder and stakeholder only, its duties being purely ministerial, at their request and for their convenience, that Escrow Agent shall not be deemed to be the agent or trustee for either of the parties, and that Escrow Agent shall not be liable to either of the parties for any act or omission unless it involves willful misconduct or negligence on its part.

The undersigned does hereby consent to and join in the foregoing Agreement hereby agreeing to act as Escrow Agent in accordance with the provisions of the Agreement applicable to Escrow Agent.

INSURED AIRCRAFT TITLE SERVICE, INC.

By: _[signature]_
Name: JOHN F ROBERTS
Title: Vice Pres.

NY2:\1831115\04\16822304LDOC\58399.0003

14

## EXHIBIT A

### AIRCRAFT SPECIFICATIONS



## BLOOMER deVERE
G R O U P   A V I A   I N C .
**1987 Dassault Falcon 50**
**Serial Number 179**

**AIRFRAME:**  8137.2 Hours
**Landings:**  4352

**APU:**  2929.6 Hours
Honeywell GTCP36-100A

**ENGINES: HONEYWELL TFE731-3D-1C**
*Engines on MSP Gold*

| | | |
|---|---|---|
| **Engine 1:** | 8021 Hours | 4327 Cycles |
| **Engine 2:** | 7936.6 Hours | 4080 Cycles |
| **Engine 3:** | 7337.6 Hours | 3492 Cycles |

### AVIONICS

- Collins APS 85 Auto Pilot
- Dual Bendix King KTR 950 HF w/ SELCAL
- Dual Collins VHF-22d COMM's w/ 8.33 Spacing
- Collins Pro Line II w/ 4 EFIS Tubes
- Dual Collins VIR-32 NAV's
- Collins TWR-850 Radar w/ TCAS Display
- Dual Collins ADF 60A
- Fairchild A100A CVR
- Dual Collins DME-42

- Artex C406-1 ELT w/ NAV Interface
- Honeywell Mark V EGPWS
- Collins ALT-55B Radar Altimeter
- Dual RMI
- Honeywell TCAS II w/ Change 7
- Dual Honeywell Laseref
- Dual Universal UNS-1E FMS w/ UNILINK
- Dual Collins MST-67A Mode S Transponder w/ Flight ID

### ADDITIONAL FEATURES

- Sky-Connect Iridium SatCom
- Dual Davtron Clocks
- 15 " LCD Fwd Monitor
- DVD/CD Player
- 20" LCD Aft Monitor Airshow 401
- Four 8" LCD Seat Monitors
- Warming Oven

- Dataports
- XMR-100 XM Radio System
- 115 VAC Outlets
- Tail Light Logo
- Magnastar C-2000 Flight Phone W/ Iridium Sat Phone

### MAINTENANCE

- JAR OPS approved
- RVSM
- CAMP

- Landing Gear overhauled July 2005
- 40,780 Lbs. Max TO Weight
- Engines w/ N1 DEEC

### INTERIOR

Nine passenger seats with jump seat. Aft Lavatory. Four forward club seats. Two aft club seats opposite a three place divan. All seats and divan are covered with tan leather. Tan carpet. White Alcantra sidewalls and headliner. Side rails and tray tables in dark brown veneer. Forward galley is equipped with a coffee maker and warming oven. Interior completed 2005.

### EXTERIOR

Overall white with blue and gray stripes. Completed in August 2002.

*Specifications/descriptions are provided as introductory information and do not constitute representations or warranties of Bloomer deVere or Bloomer deVere client(s). Accordingly, you should rely on your own inspection of the aircraft. Any proposed transaction is subject to final execution of a contract acceptable in form and substance to Bloomer deVere, its client(s), and their counsel.*

# EXHIBIT B

## DELIVERY CONDITION OF AIRCRAFT

At the Closing, the Aircraft shall be delivered in full conformity and complying with all the items and conditions set forth below, collectively constituting the required "**Delivery Condition**":

1. Free and clear of all Liens;

2. With an FAA Form 8050-2 and a Warranty Bill of Sale;

3. In airworthy condition, with a valid and current Airworthiness Certificate issued by the FAA without restrictions and limitations and on the FAA Civil Aviation Registry;

4. Conforming in all material respects to the Aircraft Specification, including all equipment currently required for operations pursuant to FAR Part 91 and all additional loose and safety equipment currently used or maintained for use on the Aircraft (other than personal items);

5. With all systems and installed equipment functional and in proper working order and serviceable condition meeting manufacturer's specifications and tolerances for return to unrestricted service - for purposes hereof, "proper working order and serviceable condition" shall mean a condition which (a) is consistent with the maintenance manuals limitations, measurements, or operational criteria applicable to the Aircraft systems, equipment, units and parts; and (b) does not require a modification to the normal life limitation, overhaul or inspection interval or normal operating procedures, except as modified by an Airworthiness Directive or Service Bulletin; and with each engine able to produce its rated takeoff thrust in a ground power run, in accordance with the engine manufacturer's applicable specifications and tolerances;

6. With all Aircraft Documents original (except that copies shall be acceptable in the case that originals are not required by Dassault and the FAA), complete and continuous, up to date, printed or published in English and in compliance with manufacturer requirements and FAR Part 91;

7. With all inspections, maintenance and repairs performed in accordance with the manufacturer's maintenance, technical or operations manual, and current on its maintenance in accordance with the manufacturer's approved maintenance plan and CAMP and in compliance with all calendar and hourly inspections, landing inspections, time-limited components, applicable FAA Airworthiness Directives and with all Customer Alerts and mandatory Service Bulletins, with effective compliance dates complied with on or prior to the Closing Date;

8. With customary assignments of all remaining manufacturers' warranties (including Airframe, Engines, APU and avionics) and the Dassault Assignment of Warranties executed by Seller, Purchaser and Dassault and with the enrollment in the Honeywell MSP Gold Program with respect to the Engines transferable, current, in good standing and fully paid up as of the Closing Date;

9. With no Material Damage or history of Material Damage;

10. With no Airframe, Engines or APU corrosion beyond allowable limits or in excess of manufacturer's tolerances as stated in the maintenance, technical and/or operations manuals or which otherwise requires a repair constituting Material Damage;

11. In compliance with respect to RVSM, MNPS, RNP5, RNP10, FM Immunity and 8.33 COM performed and completed and the Aircraft Transponder shall meet the Mode S Enhanced Surveillance (EHS) for European operations; and

12. With all Discrepancies corrected, remedied or repaired by the Inspection Facility and no parts, systems or components on the Aircraft which are on temporary loan.

Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to such terms in the Agreement.

**EXHIBIT C**

**AIRCRAFT TECHNICAL ACCEPTANCE/REJECTION LETTER**

Date:    _____ _____, 2008

TO:    CES Aviation IX, LLC
        Attn:  Francine Kittredge
        c/o Lehman Brothers
        745 Seventh Avenue, 30th Floor
        New York, NY 10019

            Re:    Completion of Inspection

Dear Ms. Kittredge:

Pursuant to that certain Aircraft Sale and Purchase Agreement (the "Agreement") dated as of 29th day of October 2008, by and between CES Aviation IX, LLC ("Seller") and Peregrine Aviation Services, Inc. ("Purchaser"), pertaining to the Dassault model Falcon 50 aircraft, bearing manufacturer's serial number 179 and U.S. registration mark N232PR (the "Airframe"), together with three (3) Garrett model TFE 741-3D-1C engines, bearing manufacturer's serial numbers P-76626C, P-76719C and P-76662C (the "Engines"), (i) one (1) installed Garrett model 36-100A auxiliary power unit bearing manufacturer's serial number P-285 (the "Aircraft"), Purchaser by checking the following applicable box hereby confirms that the Inspection has been completed and Purchaser elects as follows:

CHECK ONE:

_____ ACCEPTS the technical condition of the Aircraft.

_____ ACCEPTS the technical condition of the Aircraft, subject to the correction or repair by Seller, at Seller's sole cost and expense, of all Discrepancies listed on Annex "A" hereto, in accordance with the terms of the Agreement.

_____ REJECTS the technical condition of the Aircraft based on a conclusive determination that the Aircraft cannot be made to comply with the Delivery Condition in accordance with Section 3.4. of the Agreement.

Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to such terms in the Agreement.

                                Sincerely,

                                Peregrine Aviation Services, Inc.

                                By:    _____
                                Print: _____
                                Title: _____

**ANNEX "A"**

**DISCREPANCIES TO BE CORRECTED**

**EXHIBIT D**

**AIRCRAFT DELIVERY RECEIPT**

Peregrine Aviation Services, Inc. ("Purchaser") hereby acknowledges acceptance of delivery of that Dassault model Falcon 50 aircraft bearing U.S. registration mark N232PR and manufacturer's serial number 179 (the "Aircraft") from CES Aviation IX, LLC ("Seller"), at _____ o'clock (am / pm) Pacific Daylight Time on the _____ day of _____, 2008, at _____, pursuant to the terms and conditions of the Aircraft Sale and Purchase Agreement dated as of October 29, 2008, between Purchaser and Seller (the "Agreement"). Purchaser hereby acknowledges that the Aircraft satisfies all of the requirements, terms and conditions of the Agreement. By reason of the execution and delivery by Purchaser of this Aircraft Delivery Receipt, it is conclusively presumed that (i) Purchaser has approved and accepted the Aircraft "as is, where is" in its then-current condition and state of repair, with all faults, limitations and defects (whether hidden or apparent), regardless of cause; and (ii) except as expressly set forth in the Agreement and except for Seller's warranty of title to the Aircraft and freedom from liens or encumbrances, Seller has not made with respect to the condition of the Aircraft any representation, warranty or guaranty of any kind, express or implied, whether arising in law, in equity, in contract, or in tort, including, without limitation, any implied warranty of merchantability, airworthiness, design, condition, or fitness for a particular use.

TOTAL TIME AIRFRAME AT DELIVERY: _____ hours

AIRCRAFT LANDINGS AT DELIVERY: _____

TOTAL TIME ENGINES AT DELIVERY:
        Engine P126151: _____ hours  _____ cycles
        Engine P126152: _____ hours  _____ cycles

TOTAL TIME APU AT DELIVERY: _____ hours

**PURCHASER:**

Peregrine Aviation Services, Inc.

By: _____
Print: _____
Title: _____

State of _____ )
                              )ss.
County of _____ )

       On _____, 2008, before me, the undersigned, a Notary Public for said state, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Signature _____

My commission expires on

_____

# EXHIBIT E

## Dassault Falcon Jet Corp.

## ASSIGNMENT OF WARRANTIES

The following shall constitute an assignment of Aircraft Warranties and consent to assignment of Aircraft Warranties (the "**Assignment of Warranties**") by and among Dassault Falcon Jet Corp. ("**DASSAULT**"), CES Aviation IX, LLC. ("**ASSIGNOR**") and Peregrine Aviation Services, Inc. ("**ASSIGNEE**").

WHEREAS, ASSIGNOR wishes to assign its rights and obligations under the Dassault Falcon 50 aircraft original manufacturer Warranties to ASSIGNEE, and ASSIGNEE wishes to assume ASSIGNOR's said rights and obligations; and

WHEREAS, DASSAULT, the original manufacturer, wishes to give its consent to such assignment;

NOW, THEREFORE, the parties to this Assignment of Warranties agree as follows:

1.     All unexpired warranties on Dassault Falcon 50 bearing Manufacturer Serial Number 179 are assigned from ASSIGNOR to ASSIGNEE.

2.     DASSAULT agrees and consents to this assignment.

3.     The ASSIGNEE agrees to all terms and conditions contained in Definitions, Warranties, and Miscellaneous, of the Sales Agreement Conditions, a copy of which articles are attached hereto and are made a part hereof by this Assignment of Warranties by reference, and further agrees to perform all obligations of BUYER thereunder.

4.     From the date hereof, ASSIGNOR shall have no further warranty benefits or liabilities regarding Dassault Falcon 50 bearing Manufacturer Serial Number 179 and the ASSIGNEE shall assume all of ASSIGNOR's warranty rights, duties and liabilities associated with this aircraft.

IN WITNESS WHEREOF, the parties hereto have caused this Assignment of Warranties to be executed on this ___ day of _____, 2008, by their duly authorized representatives.

**DASSAULT FALCON JET CORP.**　　　　　　　　　**CES AVIATION IX, LLC**

**("DASSAULT")**　　　　　　　　　　　　　　　　**("ASSIGNOR")**

BY: _____

TITLE: _____　　　　BY: _____

　　　　　　　　　　　　　　　　　　　　　　　TITLE: _____

**PEREGRINE AVIATION SERVICES, INC.**

**("ASSIGNEE")**

BY: _____

TITLE: _____

## EXHIBIT E-1

### ASSIGNMENT OF WARRANTIES

Pursuant to the Aircraft Sale and Purchase Agreement (the "**Agreement**") dated as of the October 29, 2008, by and between CES Aviation IX, LLC, a Delaware limited liability company ("**Seller**"), and Peregrine Aviation Services, Inc., a Delaware corporation ("**Purchaser**"), Seller, without representation or warranty, hereby assigns to Purchaser such rights as Seller may have under (i) any warranty (express or implied), or otherwise, with respect to the, and all other instruments or equipment installed in or attached to the airframe, engines and auxiliary power unit (collectively, the "**Aircraft**"); and (ii) any service policies, maintenance plans and programs or product agreements with respect to the Aircraft, in each case to the extent the same exist in favor of Seller and are capable of being assigned by Seller or otherwise available to Purchaser, including but not limited to the MSP Gold Program,  and CAMP (collectively, the "**Assigned Rights**").

Purchaser acknowledges that it shall be solely responsible for any fees, charges, costs and expenses with respect to the transfer of the Assigned Rights and the processing of any claims or services thereunder.

Seller hereby acknowledges Purchaser's right to enforce in its own name such Assigned Rights as Seller may have with respect to the Aircraft to the extent assigned to Purchaser by Seller hereunder.

Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to such terms in the Agreement.

IN WITNESS WHEREOF, Seller and Purchaser have caused this instrument to be executed by their duly authorized officer this _____ day of _____ 2008.

**Seller:**                                                **Purchaser:**

CES Aviation IX, LLC                            Peregrine Aviation Services, Inc.

**By:**  _____            **By:**  _____
**Print:** _____           **Print:** _____
**Title:** _____           **Title:** _____

# EXHIBIT F

## WARRANTY BILL OF SALE

**KNOW ALL PERSONS BY THESE PRESENTS:**

**THAT CES Aviation IX, LLC,** a Delaware limited liability company ("**Seller**"), is the lawful owner of the full legal and beneficial title to the following tangible personal property:

> that certain Dassault model Falcon 50 aircraft, bearing manufacturer's serial number 179 and U.S. registration mark N232PR (the "**Airframe**"), together with three (3) Garrett model TFE 741-3D-1C engines, bearing manufacturer's serial numbers P-76626C, P-76719C and P-76662C (the "**Engines**"), (i) one (1) installed Garrett model 36-100A auxiliary power unit bearing manufacturer's serial number P-285 (the "**APU**"), (ii) all appurtenances, appliances, parts, avionics, instruments, components, accessions, furnishings, items of equipment and accessories installed thereon, (iii) loose equipment specifically included on the Aircraft Specification and/or the Inventory Listing, and (iv) all Aircraft Documents (collectively, the "**Aircraft**"); and

> all documents and records relating to or required to be maintained with respect to the Aircraft, including, without limitation, a current and valid Airworthiness Certificate, all Airframe, Engines, APU and accessory logbooks, manuals, flight records, weight and balance manuals, tags, technical records, traceability records, task cards, information, overhaul records, maintenance records, maintenance contracts, computerized maintenance programs, airframe and aircraft component warranties, Engine warranties, APU warranties, avionics warranties, wiring diagrams, drawings, data, and all issued FAA Form 337's and any and all other records related to the Aircraft that are in Seller's possession and control (collectively, the "**Aircraft Documents**").

**THAT,** for $10.00 and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Seller does as of the date provided below, grant, convey, transfer, deliver and set over all right, title and interest in and to the Aircraft and the Aircraft Documents unto Peregrine Aviation Services, Inc., a Delaware corporation ("**Purchaser**"), and unto Purchaser's successors and assigns forever.

**THAT,** Seller hereby warrants to Purchaser, its successors and assigns, that there is hereby conveyed to Purchaser on the date hereof good and marketable title to the Aircraft and the Aircraft Documents free and clear of any and all mortgages, liens, claims, encumbrances and rights of others, and Seller shall warrant and defend such title forever against all claims and demands whatsoever.

**IN WITNESS WHEREOF,** Seller has caused this instrument to be executed and delivered by its duly authorized signatory as of this ___ day of _____, 2008.

CES Aviation IX, LLC

By:    _____
Name:
Title:

State of _____ )
                              )ss.
County of _____ )

       On _____, 2008, before me, the undersigned, a Notary Public for said state, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Signature _____

My commission expires on

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                                   :

In re                                     :      Chapter 11 Case No.
                                           :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :      08-13555 (JMP)
                                         :

               Debtors.             :      (Jointly Administered)
                                         :

                                                   :
------------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 9014, AND RULES 6004-1, 9006-1 AND 9014-1 OF THE LOCAL BANKRUPTCY RULES APPROVING THE SALE OF DEBTOR'S AIRCRAFT PURSUANT TO AN AIRCRAFT SALE AND PURCHASE AGREEMENT

Upon the motion, dated November 12, 2008 (the "Motion"),[1] of CES Aviation IX LLC (the "Debtor"), as debtor in possession (collectively with Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9014, and Local Bankruptcy Rules 6004-1, 9006-1, and 9014-1 for (i) approval of the sale of the Debtor's aircraft, a Dassault model Falcon 50, bearing manufacturer's serial number 179 and U.S. registration mark N232PR (the "Aircraft", as more fully defined in the Motion), pursuant to (a) that certain Aircraft Sale and Purchase Agreement dated as of October 29, 2008 (the "Sale Agreement") with Peregrine Aviation Services, Inc. (the "Purchaser") or (b) a substantially similar sale and purchase agreement with a party who submits a Higher Offer, whereby the Debtor will sell, and the ultimate purchaser will purchase, the Aircraft (the "Proposed Sale"), (ii) approval of the Debtor's

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

payment of the fees of its broker, Bloomer de Vere Group Avia Inc. (the "Broker"), upon this Court's approval of the Debtor's retention of the Broker, and (iii) approval of the Debtor's payment of certain outstanding invoices, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, proper, timely, adequate and sufficient notice of the Motion and Proposed Sale having been provided in accordance with the procedures set forth in the order entered September 22, 2008 governing case management and administrative procedures [Docket No. 285];  and a reasonable opportunity to object or be heard regarding the Motion and Proposed Sale having been afforded to all such parties; and it appearing that no other or further notice need be provided; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby:

FURTHER FOUND AND DETERMINED THAT:

1.    The Debtor has properly exercised its reasonable business judgment in executing the Sale Agreement.  The Debtor has shown good and sufficient business justification under sections 105(a), 363(b) and (l) of the Bankruptcy Code for the Proposed Sale, outside a plan of reorganization.

2.    The relief sought in the Motion is in the best interests of the Debtor, its estate, and creditors, and all parties in interest.

3.      The ultimate consideration to be paid by the Purchaser (i) represents the best offer for the Aircraft; (ii) is fair and reasonable; (iii) provides for a greater recovery for the Debtor's creditors than would be provided by any other practical, available alternative; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and non-bankruptcy law.

4.      The Purchaser is not an "insider" or "affiliate" of the Debtor (within the meaning of the Bankruptcy Code).  Neither the Debtor nor the Purchaser have engaged in conduct that would prevent the application of section 363(m) of the Bankruptcy Code or permit the Sale Agreement to be avoided under section 363(n) of the Bankruptcy Code.  Consequently, the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded thereby.

NOW, THEREFORE, IT IS HEREBY:

ORDERED that the Motion is GRANTED; and it is further

ORDERED that, pursuant to sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9014, and Local Bankruptcy Rules 6004-1, 9006-1, and 9014-1, the Proposed Sale is approved and the Debtor is authorized to consummate all of the transactions contemplated thereby, including, but not limited to, the Sale Agreement; and it is further

ORDERED that the fees of the Broker in the amount of $88,000 be segregated from the Purchase Price and held in escrow and that the Debtor is authorized, but not ordered, to pay the fees of the Broker upon this Court's approval of the Debtor's retention of the Broker; and it is further

ORDERED that Debtors are authorized to pay certain outstanding invoices relating to flight support activities, as more fully described in the Motion, in the amount of $69,125.83; and it is further

ORDERED that, pursuant to section 363(f) of the Bankruptcy Code, the Debtor's right, title, and interest in and to the Aircraft shall be sold to Purchaser free and clear of any and all liens, claims, and encumbrances; and it is further

ORDERED that the Purchaser is a good faith purchaser and is granted the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code and consummation of the Sale Agreement shall not be affected by reversal or modification on any appeal of this Order; and it is further

ORDERED that the Debtor is authorized to perform all obligations under the Sale Agreement and to execute such other documents and take such other actions as may be necessary or appropriate to effectuate the Sale Agreement and the provisions of this Order; and it is further

ORDERED that nothing in this Order or in the Sale Agreement (i) releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statues or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order, or (ii) should be construed to give the Purchaser any more protection against any government unit than it is otherwise entitled to under 11 U.S.C. § 363(f)(1), (3), (4), or (5).  Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under law; and it is further

ORDERED that each and every federal, state, and local government agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by this Order; and it is further

ORDERED that any stay imposed by Bankruptcy Rule 6004(h)$^2$ is hereby waived and this Order shall be immediately effective and enforceable; and it is further

ORDERED that that this Court shall retain jurisdiction to interpret and enforce this Order.

Dated:  December ___, 2008
         New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

---

$^2$ Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General Order M-308 of the United States Bankruptcy Court for the Southern District of New York, signed on October 11, 2005 by Chief Judge Stuart M. Bernstein.