**Hearing Date and Time:  December 3, 2008 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  November 28, 2008 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                   :
In re                                              :     **Chapter 11 Case No.**
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,       :     **08-13555 (JMP)**
                                                   :
                        **Debtors.**               :     **(Jointly Administered)**
                                                   :
                                                   :
-------------------------------------------------------------------x

## NOTICE OF DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO EMPLOY NATIXIS CAPITAL MARKETS INC. AS STRATEGIC ADVISOR

PLEASE TAKE NOTICE that a hearing on the annexed motion of

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases (together, the "Debtors") for authorization to employ Natixis

Capital Markets Inc. as strategic advisor (the "Motion"), all as more fully described in the

Motion, will be held before the Honorable James M. Peck, United States Bankruptcy

Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy

Court"), on **December 3, 2008 at 10:00 a.m. (Prevailing Eastern Time)** (the

"Hearing").

          PLEASE TAKE FURTHER NOTICE that objections, if any, to the

Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern

District of New York, shall set forth the name of the objecting party, the basis for the

objection and the specific grounds thereof, shall be filed with the Bankruptcy Court

electronically in accordance with General Order M-242 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system

and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document

Format (PDF), WordPerfect, or any other Windows-based word processing format (with

two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York

10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York,

New York 10153, Attn:  Harvey R. Miller and Robert J. Lemons, attorneys for the

Debtors; (iii) the Office of the United States Trustee for the Southern District of New

York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004

Attn:  Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and

Tracy Hope Davis; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan

Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell,

Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors

appointed in these cases; and (v) any person or entity with a particularized interest in the

Motion, so as to be received no later than **November 28, 2008 at 4:00 p.m. (prevailing**

**Eastern Time)** (the "Objection Deadline").

        PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is

not received by the Objection Deadline, the relief requested shall be deemed unopposed,

and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

        PLEASE TAKE FURTHER NOTICE that objecting parties are required

to attend the Hearing, and failure to appear may result in relief being granted or denied

upon default.

Dated: November 12, 2008
      New York, New York

                    /s/ Robert J. Lemons
                    Harvey R. Miller
                    Robert J. Lemons

                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone: (212) 310-8000
                    Facsimile: (212) 310-8007

                    Attorneys for Debtors
                    and Debtors in Possession

**Hearing Date and Time: December 3, 2008 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: November 28, 2008 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                              :
In re                                         :   Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.,        :   08-13555 (JMP)
                                              :
                         Debtors.             :   (Jointly Administered)
                                              :
                                              :
------------------------------------------------------------------x
```

### DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO EMPLOY NATIXIS CAPITAL MARKETS INC. AS STRATEGIC ADVISOR

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully represent:

### Background

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the
"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural
purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules
of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their
businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and
1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern
District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured
creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the
Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.
("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

### Jurisdiction

4.      This Court has subject matter jurisdiction to consider and determine this
matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).
Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Lehman's Business

5.      Prior to the events leading up to these chapter 11 cases, Lehman was the
fourth largest investment bank in the United States.  For more than 150 years, Lehman has been
a leader in the global financial markets by serving the financial needs of corporations,
governmental units, institutional clients and individuals worldwide.  Its headquarters in New
York and regional headquarters in London and Tokyo are complemented by a network of offices
in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

6.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Relief Requested

7.      Pursuant to sections 105(a) and 363 of the Bankruptcy Code, the Debtors request entry of an order authorizing the engagement of Natixis Capital Markets Inc. ("Natixis") in accordance with the fee structure described below and pursuant to the terms and conditions of an agreement between Natixis and LBHI (together the "Parties"), dated November 6, 2008 and attached hereto as Exhibit A (the "Agreement").  Pursuant to the proposed engagement, Natixis will provide strategic advisory services in regard to the disposition of complex financial instruments to which certain of the Debtors are parties.

## The Retention of Natixis

8.      The Debtors propose to engage Natixis to analyze, evaluate, and recommend a disposition strategy for the Debtors' exposure to various special purpose vehicles and other assets or financial instruments as are mutually agreed upon by the Parties from time to time.[1]  These assets relate to approximately 800 transactions, most, if not all, of which are comprised of multiple complex agreements and involve numerous parties.

9.      Although the Debtors have already retained Lazard Freres & Co. LLC ("Lazard") to provide investment banking and financial advisory services, the Debtors submit

---

[1] In addition, upon request by LBHI, Natixis will assist in implementing the disposition strategy and in other related matters.  If such assistance is agreed upon, it will be subject to an additional retention and any necessary court approvals.

that the additional retention of Natixis is necessary because of Natixis' substantial knowledge of, and experience with, the complex financial instruments and derivative transactions that the Debtors are trying to unwind. Due to the highly specialized and technical nature of the assets in regard to which Natixis will advise the Debtors, Natixis will be providing services that differ from, and do not overlap with, those provided by Lazard.

10.    Furthermore, the recent sales of several of the Debtors' businesses, and the attrition that inevitably accompanies a chapter 11 filing, have left the Debtors without many of the employees who formerly managed these transactions. Under the Debtors' supervision, Natixis will, however, work closely with the remaining employees who have experience with such transactions to ensure the Debtors do not expend unnecessary sums. Rather than being duplicative, the Debtors expect Natixis' special skills to assist in the realization of value that might otherwise be lost to the estate. Therefore, the Debtors submit that the retention of Natixis at this time is a prudent business decision.

11.    Natixis is a global leader in capital markets and structured financing, providing its clients with cutting-edge financial, investment, and risk management solutions. It offers a broad range of corporate advisory services include structured credit, structured fund products, equity derivatives, interest rate derivatives, and structured hybrid products. This industry-leading knowledge, and the broad scope of Natixis' operations, will ensure that the Debtors' financial instruments are appropriately managed and given access to global markets. Accordingly, the Debtors believe that the employment of Natixis, under the terms set forth in the Agreement, is appropriate and necessary to enable the Debtors to execute faithfully their duties as debtors and debtors-in-possession. The Debtors further submit that Natixis is well-qualified and able to serve a strategic advisor to the Debtors.

## Natixis' Relationship with the Debtors

12.     Although the Debtors submit that the retention of Natixis is not governed by section 327 of the Bankruptcy Code, out of an abundance of caution, the Debtors attach the Laterman Declaration as Exhibit B hereto.  The Laterman Declaration discloses, among other things, the direct financial and / or contractual relationships between Natixis and the Debtors or their United States affiliates that were or are in effect and may result in a claim against the Debtors or their affiliates.[2]  Natixis proposes to address this issue by screening all Natixis employees, representatives, and advisors responsible for pursuing the claims and / or managing the relevant transactions or financial arrangements, from the provision of services to the Debtors. In addition, the parties have entered into a Confidentiality Agreement, which is attached as Exhibit C hereto and incorporated by reference into the Agreement, that requires the adoption of internal procedures by Natixis to assure that both personnel and information walls are established between Natixis employees, representatives, and advisors participating in the provision of services to the Debtors, and any other Natixis employees, representatives, or advisors who may be or become involved with any claims adverse to the Debtors or other transactions or financial arrangement involving the Debtors.

## Terms of Retention

13.     The Debtors propose to pay Natixis at the following hourly billing rates, which are Natixis' customary rates for personnel.[3]  The billing rates are subject to annual adjustment and based on seniority:

---

[2] Nothing in the engagement or the services provided by Natixis will in any way prejudice the claims that Natixis may have against the Debtors or their affiliates.

[3] In addition, the Debtors have agreed that Natixis may engage Frank C. Puleo, a retired partner of Milbank, Tweed, Hadley & McCloy LLP, as consultant to advise and assist Natixis in providing services to the Debtors.  Mr. Puleo will be paid by Natixis and billed to the Debtors as a Senior Managing Director.

| | |
|---|---|
| Senior Managing Director: | $650-725 per hour; |
| Managing Director: | $500-650 per hour; |
| Director: | $300-450 per hour; |
| Associate: | $300 per hour. |

14.     In addition to compensation for professional services rendered by Natixis personnel, Natixis will seek reimbursement for reasonable and necessary expenses incurred in connection with the Debtors' chapter 11 cases, including but not limited to, travel, lodging, duplications, computer research, messenger and telephone charges.  Natixis will provide the Debtors with detailed monthly invoices covering both professional services and expenses incurred.

15.     If the Court approves the relief requested herein, the Debtors will employ Natixis as a strategic advisor pursuant to section 363 of the Bankruptcy Code, rather than as a professional under section 327 of the Bankruptcy Code.  Accordingly, Natixis will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, Natixis will file with the Court, and provide notice to the United States Trustee and all official committees, reports of compensation earned and expenses incurred on at least a quarterly basis.  Such compensation and expenses shall be subject to Court review in the event that an objection is filed.

16.     In light of the numerous issues that Natixis may be required to address in discharging its services, the variable level of time and effort necessary to address all such issues as they arise, and the market prices for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements in the Engagement Letter are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

**The Court Should Approve Natixis' Engagement**

17.     The Debtors seek approval of the employment of Natixis pursuant to section 363 of the Bankruptcy Code.  Section 363(b)(1) provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Further, pursuant to section 105(a), the "court may issue any order, process, or judgment that is necessary to carry out the provisions of this title."  11 U.S.C. § 105(a).[4]

18.     Under applicable case law in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.  *See Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring an "articulated business justification"); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, the court defers to the trustee's judgment so long as there is a "legitimate business justification"); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)).

19.     Acting under this directive, bankruptcy courts in this district have authorized a debtor's employment of a broad range of specialists pursuant to section 363 including lobbyists,[5] executive search consultants,[6] corporate officers,[7] and attorneys.[8]  Courts

---

[4] The Debtors submit that Natixis' employment is in the ordinary course of the Debtor's business and does not require court approval, but the Debtors are seeking court approval at Natixis' request and out of an abundance of caution.

[5] *See In re Johns-Manville Corp.*, 60 B.R. 612 (Bankr. S.D.N.Y. 1986).

[6] *See In re PRC, LLC,* Case No. 08-10239 (MG) (Bankr. S.D.N.Y. 2008).

[7] *See In re Bally Total Fitness of Greater N.Y., Inc.*, Case No. 07-12395 (BRL) (Bankr. S.D.N.Y. 2007).

have found retention of such classes of persons appropriate under section 363 where such

persons do not play "an intimate role in the reorganization of the debtor's estate." *In re Johns-*

*Manville Corp.*, 60 B.R. 612, 619-20 (Bankr. S.D.N.Y. 1986).  Natixis is not being engaged to

play an intimate role in the reorganization of the debtor's estate.  The Debtors have already

retained a financial advisor, Lazard, to provide investment banking, financial, and restructuring

services with respect to their estates generally.  Natixis' role is akin to that of the attorneys

approved by this court in *In re Enron*: specialists brought in to perform a discreet function.  *See*

*In re Enron Corp.*, 335 B.R. 22 (Bankr. S.D.N.Y. 2005) (finding appropriate the Debtor's

retention of a law firm to represent employees in relation to a governmental investigation).  But

unlike the attorneys in *In re Enron*, Natixis is not even providing services that require a

professional degree or licensing.  In sum, Natixis is providing discrete, specialized business

consulting to the Debtors.

20.      As noted above, the Debtors believe that Natixis will use its expertise to

assist the Debtors in unwinding the various financial instruments to which the Debtors are a

party.  Value realized in such transactions will inure to the benefit of the Debtors' estates, more

than offsetting any expenses incurred through the retention. Thus, the decision to employ Natixis

as a strategic advisor is a sound exercise of the Debtors' business judgment.

### Indemnification

21.      Subject to the approval of the Court and as more fully described in the

Agreement (including the Indemnification Agreement attached to the Agreement and

incorporated by reference therein (the "Indemnification Agreement")), the Debtors will

indemnify Natixis.  The Indemnification Agreement provides, among other things, that the

---

[8] *See In re Enron Corp.*, 335 B.R. 22 (Bankr. S.D.N.Y. 2005).

Debtors will indemnify, hold harmless, reimburse, defend and provide contribution to Natixis and its affiliates and its and their respective directors, officers, members, employees, agents, and controlling persons under certain circumstances.  The terms of the Indemnification Letter are standard engagement provisions, both in chapter 11 cases and outside chapter 11, and reflect the qualifications and limits on such terms that are customary for Natixis and other similar strategic advisors as approved in similar contexts in this and other jurisdictions.  *See In re All American Semiconductor, Inc.,* No. 07-12963 (Bankr. S.D. Fla May 25, 2007); *In re Atlas Worldwide Holdings, Inc.,* No. 04-10792 (Bankr. S.D. Fla Apr. 22, 2004); *see also In re New Century TRS Holdings, Inc.,* No. 07-10416 (Bankr. D. Del. Apr. 25, 2007); *In re Calpine Corp.,* Case No. 05-60200 (Bankr. S.D.N.Y. May 2, 2006);  *United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217, 234 (3d Cir. 2003) (finding indemnification agreement between debtor and financial advisor reasonable under section 328); *In re Joan & David Halpern, Inc.*, 248 B.R. 43, 47 (Bankr. S.D.N.Y. 2000), *aff'd*, No. 00-3601 (JSM), 2000 Bankr. WL 1800690 (S.D.N.Y. Dec. 6, 2000).

22.     Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate, and in the best interest of the Debtors' estates and creditors, and therefore, should be granted in these chapter 11 cases.

## Notice

23.     No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on September 22, 2008 governing case management and administrative procedures for these cases [Docket No. 285] on (i) the U.S. Trustee, (ii) the attorneys for the Creditors' Committee, (iii) the Securities and Exchange Commission, (iv) the Internal Revenue Service, (v) the United States Attorney for the Southern District of New York, and (vi) all parties who

have requested notice in these chapter 11 cases.  The Debtors submit that no other or further

notice need be provided.

24.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  November 12, 2008
        New York, New York

/s/ Robert J. Lemons
Harvey R. Miller
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Exhibit A**



CONFIDENTIAL

November 12, 2008

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
New York, NY 10020

Ladies and Gentlemen:

This letter agreement (the "***Letter Agreement***") confirms the agreement by and between Lehman Brothers Holdings Inc. ("***Lehman***") and Natixis Capital Markets Inc. (together with its subsidiaries, "***Natixis***", and together with Lehman, the "***Parties***") pursuant to which Natixis will provide advisory services (the "***Services***") to Lehman and its affiliates as described herein.

1.   **Services to be Rendered**.

Subject to the terms and conditions of this Letter Agreement, Natixis agrees to provide Services to Lehman as follows:

(i)    analyze, evaluate and recommend a disposition strategy for Lehman's exposure to the special purpose vehicles and other assets or financial instruments as are mutually agreed by the Parties from time to time ("***Phase I***"); and

(ii)    if requested by Lehman, assist in implementing the disposition strategies developed in Phase I and any other related matters ("***Phase II***").

The agreement of Natixis to provide the Phase II Services is subject to a mutually satisfactory fee agreement and receipt of any internal approvals or bankruptcy court approvals Natixis determines to be appropriate.  Lehman agrees to offer Natixis an opportunity to submit a proposal for Natixis to provide investment banking and financial advisory services to Lehman for transactions arising out of the Services provided by Natixis for a period ending 12 months form the date of this letter; provided, however, that nothing herein shall require Lehman to retain or offer to retain Natixis to provide any services that would violate the terms of Lehman's retention of Lazard Freres & Co. LLC ("***Lazard***") or duplicate any services that are contemplated to be provided by Lazard under the terms of its retention by Lehman.

Lehman agrees to engage legal counsel to assist Natixis in providing the Services.  Such counsel shall represent and be paid by Lehman.

Lehman acknowledges that all advice (written or oral) given by Natixis to Lehman in connection with the Services is intended solely for the benefit and use of Lehman (limited to its Board and management) in considering matters related to the Services.  Lehman reserves the right to make good faith use of such advice by incorporating, without attribution, such advice in such reports as it endeavors to make from time to time, disseminating such advice to counsel, or as required by law.  Lehman acknowledges that any other use of such advice that exceeds the above described scope is not permitted without the prior approval of Natixis.

Lehman Brothers Holdings Inc.
November 12, 2008
Page 2 of 9

Any investment advisory services will be provided by Natixis Securities North America Inc. subject to execution of an investment advisory agreement.

The Parties acknowledge that certain Services may already have been provided in anticipation of the execution of this Letter Agreement, and that the terms of this Letter Agreement shall apply to any Services rendered before or after the execution of this Letter Agreement.

Lehman shall use its commercially reasonable efforts to have heard at the omnibus hearing of the United States Bankruptcy Court for the Southern District of New York (the "*Court*") scheduled for December 3, 2008, a motion for the Court's approval of this Agreement.

   2. **Consultant**.

Lehman acknowledges and agrees that Natixis may engage Frank C. Puleo as a consultant to advise and assist Natixis in providing the Services. Mr. Puleo is a retired partner in the law firm of Milbank, Tweed, Hadley & McCloy LLP, which is the firm acting as counsel to the Official Committee of Unsecured Creditors of Lehman. While acting as a consultant to Natixis in connection with the Services Mr. Puleo will not be acting as a lawyer. Lehman agrees that the exculpation and indemnity provisions of this Letter Agreement will apply to Mr. Puleo *mutatis mutandis* as if he were an employee of Natixis.

   3. **Fees and Expenses**.

In consideration Natixis providing the Phase I Services, Lehman agrees to pay an hourly rate per Natixis employee for time spent providing the Services. The hourly rates shall be based on the seniority of the Natixis employee as follows:

| | |
|---|---|
| Senior Managing Director: | $650 to $725 per hour; |
| Managing Director: | $500 to $650 per hour; |
| Director: | $400 to $500 per hour; and |
| Associate: | $300 per hour. |

Mr. Puleo will be billed by Natixis to Lehman as a Senior Managing Director. Natixis shall be responsible for payment of Mr. Puleo's compensation to Mr. Puleo.

Beginning on month after the date of this Letter Agreement each Natixis employee may bill no more than 12 hours per day (prior to such date there shall be no limitation).

Natixis will invoice Lehman on a monthly basis and Lehman shall pay invoices upon receipt or, to the extent such invoices require approval of the Court, as soon as practicable following such approval and on such terms as approved by the Court. The invoices delivered by Natixis shall identify the name, seniority level, billing rate and hours billed for each Natixis employee providing Services.

Fee for Phase II Services shall separately negotiated at the time such Services are requested by Lehman.

Lehman shall, upon request, reimburse Natixis and Mr. Puleo for all reasonable out-of-pocket expenses incurred in connection with the Services. Each such invoice shall identify expenses in reasonable detail.

Lehman Brothers Holdings Inc.
November 12, 2008
Page 3 of 9

4.  **Termination**.

This Letter Agreement may be terminated upon 30 days prior written notice by either Party to the other Party. All fees and expenses incurred by Natixis prior to termination shall be promptly paid by Lehman upon receipt of an invoice from Natixis.

The provisions of this Letter Agreement set out in Sections 3, 4 and 7 shall survive termination of this Letter Agreement (including extensions hereof).

5.  **Indemnification**.

Lehman agrees to the indemnification and other agreements set forth in the Indemnification Agreement attached hereto, the provisions of which are incorporated herein by reference and shall survive the termination, expiration or supersession of this Letter Agreement.

6.  **Confidentiality**.

The Parties have separately entered into a confidentiality agreement dated October 28, 2008 which remains in full force and effect (the "***Confidentiality Agreement***"). Lehman acknowledges and agrees that Mr. Puleo shall be a "Representative" of Natixis under the Confidentiality Agreement.

Lehman agrees to use the analysis, evaluations and recommendations provided by Natixis solely for internal purposes and will disclose such information only to those of its employees, accountants, agents, legal counsel, consultants, advisors and other representatives who have a need to know such information for the purpose of managing or disposing of Lehman's exposure to the special purpose vehicles identified on Schedule I to this Letter Agreement or as required by law. Lehman shall be responsible for ensuring compliance with this paragraph by those persons or entities who receive such information from Lehman.

7.  **Potential Conflicts**.

Lehman acknowledges that Natixis is not acting as an agent or fiduciary for Lehman in connection with the Services and Lehman represents that it has the capacity to evaluate and negotiate the terms, risks and conditions of the Services and agrees not to assert the existence of an agency or fiduciary relationship with Natixis resulting from this Letter Agreement or Natixis' provision of the Services.

Certain affiliates of Natixis have claims adverse to Lehman, its bankruptcy estate and/or its affiliates (the "***Claims***") or indirect exposure through assets or financial instruments held by Natixis ("***Indirect Exposures***"). The Natixis employees, representatives, and advisors responsible for pursuing the Claims and/or managing the Indirect Exposures will not participate in the provision of Services to Lehman and the Natixis employees, representatives, and advisors participating in the provision of Services to Lehman will not participate in the pursuit of the Claims or management of Indirect Exposures. The terms of the Confidentiality Agreement are incorporated herein by reference and specifically require the adoption of internal procedures by Natixis to assure that both personnel and information walls be established between Natixis employees, representatives, and advisors participating in the provision of the Services and any other employees, representatives, and advisors who may be or become involved with any Claims or Indirect Exposures.

Lehman Brothers Holdings Inc.
November 12, 2008
Page 4 of 9

Lehman agrees, for itself and its affiliates, that the Claims will not be adversely impacted or prejudiced by this Letter Agreement or the provision of Services by Natixis and its representatives and advisors, and no evidence relating to this Letter Agreement or the provision of services by Natixis and its representatives and advisors will be offered in any proceeding relating to the Claims. Natixis may be providing services or financing to third parties whose interests may conflict with Lehman's. The Natixis employees, representatives, and advisors responsible for providing such services or arranging such financing will not participate in the provision of Services to Lehman. Lehman hereby waives and releases, to the fullest extent permitted by law, any claims or defenses that Lehman may have against Natixis that are based upon any conflict of interest that Natixis may have with regard to providing the Services or acting under this Letter Agreement.

8. **Miscellaneous**.

   (a) <u>Cooperation</u>. It is understood that Lehman will furnish Natixis with all information and data that Natixis shall reasonably deem appropriate in connection with its engagement hereunder. Lehman recognizes and confirms that Natixis, in acting pursuant hereto, will be using information in public reports and other information provided by others, including information provided by Lehman, and that Natixis does not assume responsibility for the accuracy or completeness of such information.

   (b) <u>Acknowledgement</u>. Lehman acknowledges that Natixis' representatives are not tax, accounting, legal or regulatory experts or professionals and accordingly can make no representation as to any tax, accounting, legal or regulatory result. Lehman will seek separate advice regarding such matters from its own qualified advisors.

   (c) <u>Assignment</u>. This Letter Agreement shall be binding upon and inure to the benefit of the successors of the parties hereto, and may not be assigned by either party without the written consent of the other party; it being understood that any of the Services that may be performed by Natixis pursuant to this Letter Agreement may be performed directly by Natixis or any of its affiliates; provided that Natixis will be responsible to ensure that such affiliates comply with the terms of this Letter Agreement. Any assignment in violation of this provision shall be void *ab initio*.

   (d) <u>Choice of Law</u>. This Letter Agreement and the respective rights and obligations of Lehman and Natixis hereunder shall be interpreted in accordance with and governed by the laws of the State of New York applicable to contracts to be fully performed within the State of New York.

   (e) <u>Jurisdiction</u>. Natixis and Lehman hereby irrevocably submit to the non-exclusive jurisdiction of the courts of the State of New York located in the city and county of New York and the United States District Court for the Southern District of New York for the purpose of any action or proceeding in connection with this Letter Agreement and irrevocably agree to be bound by any judgment rendered thereby in connection with such action or proceeding.

Lehman Brothers Holdings Inc.
November 12, 2008
Page 5 of 9

(f) <u>Waiver of Trial by Jury</u>.  Lehman and Natixis hereby irrevocably waive, to the fullest extent permitted by law, any and all right to trial by jury in any legal proceeding in connection with this Letter Agreement.

(g) <u>Counterparts</u>.  This Letter Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.  This Letter Agreement shall become effective upon receipt by either party of counterparts hereof signed by the parties hereto (which counterparts may be delivered by facsimile transmission).

(h) <u>Entire Understanding</u>.  This Letter Agreement contains the entire agreement between the parties hereto and supersedes all prior agreements (except as stated in Section 6 hereof) between Lehman and Natixis, and understandings relating to the subject matter hereof and may be modified only by a written agreement signed by both parties.  If any provision of this Letter Agreement is determined to be invalid or unenforceable in any respect (whether in whole or in part), such determination shall not affect such provision in any other respect or any other provision of this Letter Agreement, which shall remain in full force and effect.

Lehman Brothers Holdings Inc.
November 6, 2008
Page 6 of 9

If this Letter Agreement reflects our mutual understanding, please execute two copies in the space indicated below and return one copy to the undersigned.

Very truly yours,

Natixis Capital Markets Inc.


By:_____          By:_____
Name:                                  Name:
Title:                                 Title:



Accepted and Agreed:

Lehman Brothers Holdings Inc.


By:___D J Coles_____
Name:   D J COLES
Title:   Chief Financial Officer

Lehman Brothers Holdings Inc.
November 12, 2008
Page 6 of 9

If this Letter Agreement reflects our mutual understanding, please execute two copies in the space indicated below and return one copy to the undersigned.

Very truly yours,

Natixis Capital Markets Inc.

By: _____
Name:  Ralph J. Inglese
Title:  Managing Director

By: _____
Name:
Title:  Christopher Hayden
Managing Director

Accepted and Agreed:

Lehman Brothers Holdings Inc.

By: _____
Name:
Title:

Lehman Brothers Holdings Inc.
November 12, 2008
Page 7 of 9

## INDEMNIFICATION AGREEMENT

This indemnity is made part of a letter agreement, dated October 31 , 2008 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "*Agreement*") by and between Natixis Capital Markets Inc. ("*Natixis*") and Lehman Brothers Holdings, Inc. (the "*Company*"), for services to be rendered to the Company by Natixis.

A.       The Company agrees to indemnify and hold harmless each of Natixis, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "*Indemnified Party*" and collectively, the "*Indemnified Parties*") against any and all losses, claims, damages, liabilities, penalties, obligations and reasonable expenses, including the reasonable costs for counsel or others (including employees of Natixis, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct. The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of Natixis, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct. The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B.       These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or Natixis's and its personnel's role under the Agreement, Natixis or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

C.       If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company with reasonable promptness; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action. The Company

Lehman Brothers Holdings Inc.
November 12, 2008
Page 8 of 9

shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Natixis hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that an Indemnified Party is not entitled to be indemnified therefor. If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is unable to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor. Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense. The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

D.        In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement. No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.        The Company shall promptly pay expenses reasonably incurred by Natixis, including attorneys' fees and expenses, in connection with any motion made by the Company for approval of the Agreement by the United States Bankruptcy Court for the Southern District of New York, whether in advance of or following any judicial disposition of such motion, promptly upon submission of invoices therefor. The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed them under the Agreement, whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.        The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.

Lehman Brothers Holdings Inc.
November 12, 2008
Page 9 of 9

LEHMAN BROTHERS HOLDINGS, INC.　　NATIXIS CAPITAL MARKETS INC.

By: _____

Name:  D J COLES

Title:  Chief Financial Officer

By: _____

Name:  Ralph J. Anglese

Title:  Managing Director

By: _____

Name:

Title:  Christopher Hayden
Managing Director

**Exhibit B**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
                                                    :
In re                                               :        Chapter 11 Case No.
                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,            :        08-13555 (JMP)
                                                    :
        Debtors.                                    :        (Jointly Administered)
                                                    :
                                                    :
-------------------------------------------------------------------x

### DECLARATION OF JOSHUA LATERMAN IN SUPPORT OF DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO EMPLOY NATIXIS CAPITAL MARKETS INC. AS STRATEGIC ADVISOR

I, Joshua Laterman, make this declaration under 28 U.S.C. § 1746, and state:

1.      I am an attorney in the U.S. Legal Department of Natixis (together with its affiliates, "Natixis"). I make this declaration in support of Debtor's motion pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code authorizing the Debtors to employ Natixis Capital Markets Inc. as strategic advisor. Except as otherwise noted,[1] I have personal knowledge of the matters set forth herein.

2.      To the best of my knowledge, Exhibit A of this Declaration describes Natixis's current understanding of the direct financial and/or contractual relationships between Natixis and the above-captioned Debtors or their United States affiliates that were or are in effect and may result in a claim against the Debtors or their affiliates. Natixis has not completed its evaluation of its exposure resulting from the relationships and/or contractual obligations of the Debtors set forth in Exhibit A. Nothing in this

---

[1] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at Natixis and are based on information provided by them.

declaration or its attached Exhibit A is a waiver of any rights Natixis may have against the Debtors and/or their affiliates, and Natixis expressly reserves all of its rights.

3.       Natixis also has, or had, other similar relationships with the following foreign debtor entities:  Lehman Brothers Commercial Paper (*Hong Kong*); Lehman Brothers Finance S.A. (*Switzerland*); Lehman Brothers International Europe (*United Kingdom*); and Lehman Brothers Treasury Co. B.V. (the Netherlands).


*[Remainder of Page Intentionally Left Blank]*

I declare under penalty of perjury that, to the best of my knowledge, and after reasonable

inquiry, the foregoing is true and correct.

Dated this 10th day of November 2008

By:

Joshua Laterman
Natixis U.S. Legal

3

Exhibit A

### Natixis-Lehman U.S.
### Contractual Relationships

| Agreement Type | Natixis Entity | Lehman Entity | Lehman Guarantor |
|---|---|---|---|
| Derivatives (ISDA – September 26, 2003) | Natixis | Lehman Brothers Inc. | None |
| Derivatives (ISDA - October 24, 1996) | Natixis | Lehman Brothers Financial Products | None |
| Derivatives (ISDA - June 18, 2003) | Natixis | Lehman Brothers Commercial Corporation | Lehman Brothers Holdings Inc. |
| Derivatives (ISDA – May 11, 1999) | Natixis | Lehman Brothers Special Financing Inc. | Lehman Brothers Holdings Inc. |
| Derivatives (ISDA) | Natixis Bleichroeder | Lehman Brothers Inc. | None |
| Derivatives (ISDA – May 26, 1998) | Natixis Financial Products Inc. | Lehman Brothers Special Financing Inc. | Lehman Brothers Holdings Inc. |
| Repo (MRA – May 27,1998) | Asset Backed Management Corp. | Lehman Brothers Inc. | None |
| Repo (MRA – November 7,1997) | Natixis | Lehman Brothers Inc. | None |
| Stock loan (MSLA September 9, 2005) | Natixis Securities North America Inc. | Lehman Brothers Inc. | None |
| Bonds/Other Debt Instruments | Natixis | Lehman Brothers Holdings Inc. | None |

**Exhibit C**

RECEIVED NOV 0 3 2008

## CONFIDENTIALITY AGREEMENT

Hand

October 28, 2008

Natixis Capital Markets Inc.
9 West 57th Street
New York, New York  10019
Attn:   Kenneth Wormser

Ladies and Gentlemen:

In connection with proposed engagement (the "Engagement") of Natixis Capital Markets Inc. ("Recipient" or "Receiving Party") to perform advisory services in relation to the derivatives business of Lehman Brothers Holdings Inc. and certain of its affiliates ("Lehman" or the "Disclosing Party"), Recipient will be furnished with access to the confidential books and records of Lehman relative to its derivatives and potentially other businesses.  A condition to such information being furnished by Lehman to the Recipient and to its directors, officers, employees, affiliates, agents and advisors (its "Representatives") shall be the covenant of the Receiving Party, on behalf of itself and its Representatives, to treat all such information (irrespective of the form of communication, and regardless of authorship) furnished by or on behalf of the Disclosing Party (the "Confidential Information") in accordance with the provisions of this letter agreement.

The term "Confidential Information" shall be deemed to include all notes, analyses, compilations, studies, interpretations or other documents provided to or prepared by the Receiving Party or any of its Representatives, and all such other information irrespective of the form of communication, shared with the Receiving Party or any of its Representatives, which contain or are based upon, in whole or in part, the Confidential Information, and includes the fact that the Confidential Information has been made available, that discussions or negotiations are taking place concerning the Engagement, and the terms, conditions and status of the same.

The term "Confidential Information" shall not include information which:

i       is or becomes available to the public other than as a result of a breach by the Receiving Party or any of its Representatives of this Agreement;

ii      was within the possession of the Receiving Party prior to its being furnished to it by or on behalf of the Disclosing Party;

iii     becomes available to the Receiving Party on a non-confidential basis from a source other than the Disclosing Party, provided that the source of such information was not known by the Receiving Party to be bound by an obligation of confidentiality to the Disclosing Party; or

iv      is developed independently without use of the Confidential Information.

In addition, only information provided to Representatives of the Receiving Party performing services under the Engagement shall be Confidential Information.

The Receiving Party hereby agrees that it shall use the Confidential Information solely in connection with the Engagement, and, except as provided herein, will not disclose any of the

Confidential Information in any manner whatsoever, including to any of its Representatives that are not performing services under the Engagement other than senior management, legal, compliance and support personnel. Specifically, the Receiving Party acknowledges and agrees that it has established and shall maintain appropriate information barriers to ensure that Confidential Information not be disseminated to Representatives of the Receiving Party not performing services under the Engagement other than senior management, legal, compliance and support personnel, in each case who are not performing work or services of the type described in the last sentence of this paragraph. Further, the Receiving Party shall be responsible for any breach of this letter agreement by any of its Representatives. Finally, the Receiving Party hereby agrees that none of its Representatives that will perform services under the Engagement will (i) perform work or services for the Receiving Party or any of its affiliates relating to any matter in which the Receiving Party or any of its affiliates holds an interest adverse to the Disclosing Party or its chapter 11 estates or (ii) disclose any Confidential Information or other information about the Engagement to any entity representing the Receiving Party in such a matter.

If the Receiving Party is requested or required (by deposition, interrogatories, requests for information or documents or other similar process) to disclose any of the Confidential Information, the Receiving Party shall provide the Disclosing Party with prompt written notice. If the Receiving Party is then legally compelled to disclose Confidential Information, the Receiving Party may, without liability hereunder, disclose only that portion of the Confidential Information which it reasonably believes to be legally required, provided that Receiving Party shall exercise reasonable efforts to preserve the confidentiality of the Confidential Information, including by cooperating with the Disclosing Party (and at the sole expense of the Disclosing Party) to obtain reliable assurance of confidential treatment. Notwithstanding the foregoing, the Receiving Party may disclose Confidential Information upon request from duly authorized regulators with jurisdiction over it.

If either party decides to terminate the Engagement, such party will promptly notify the other party. In such case (or upon the request of the Disclosing Party for any reason), the Receiving Party will promptly destroy or deliver to the Disclosing Party all documents (and all copies thereof) furnished to it by or on behalf of the Disclosing Party pursuant hereto, provided that each party may retain copies of the Confidential Information to the extent necessary to comply with applicable law and its standard document retention policies.

The Receiving Party agrees that, absent a definitive agreement, the Disclosing Party shall have no liability to the Receiving Party relating to or resulting from the use of the Confidential Information. Only those representations or warranties made in a final definitive agreement shall have any legal effect.

It is understood and agreed that no failure or delay by the Disclosing Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder.

It is further understood and agreed that money damages would not be a sufficient remedy for any breach of this letter agreement by the Receiving Party, and that the Disclosing Party shall be entitled to injunction and specific performance as a remedies for any such breach. Such remedies shall not be deemed to be the exclusive remedies for a breach by the Receiving Party of this letter agreement but shall be in addition to all other remedies available at law or equity.

This letter agreement shall be governed by the laws of the State of New York without giving effect to the conflict of law principles thereof. This letter agreement shall terminate on the second anniversary of the date first written above.

*[The rest of this page has been left blank intentionally.]*

Please confirm your agreement with the foregoing by signing and returning one copy of this letter to the undersigned, whereupon this letter agreement shall become a binding agreement.

Very truly yours,

Accepted and agreed as of the date first written above:

**LEHMAN BROTHERS HOLDINGS INC.**

**NATIXIS CAPITAL MARKETS INC.**

By: _D J COLES_

By: _Ralph J Inglese_

Name: _D J COLES_

Name: _Ralph J. Inglese_

Title: _CFO_

Title: _Managing Director_

Christopher Hayden
Managing Director

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                        :

In re                              :        Chapter 11 Case No.
                                          :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :        08-13555 (JMP)
                                          :

                   Debtors.        :        (Jointly Administered)
                                          :
                                          :
---------------------------------------------------------------x

ORDER AUTHORIZING THE DEBTORS TO
EMPLOY NATIXIS CAPITAL MARKETS INC. AS STRATEGIC ADVISOR

Upon the motion, dated November 12, 2008 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-

debtor affiliates, "Lehman"), pursuant to sections 105(a) and 363 of title 11 of the United States

Code (the "Bankruptcy Code"), seeking authorization and approval of, among other things, the

Debtors' retention of Natixis Capital Markets Inc., all as more fully described in the Motion; and

the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the order entered

September 22, 2008 governing case management and administrative procedures [Docket No.

285] to (i) the United States Trustee for the Southern District of New York, (ii) the attorneys for

the Official Committee of Unsecured Creditors, (iii) the Securities and Exchange Commission,

(iv) the Internal Revenue Service, (v) the United States Attorney for the Southern District of

New York, and (vi) all parties who have requested notice in these chapter 11 cases, and it

appearing that no other or further notice need be provided; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their estates

and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, in accordance with section 105(a) and 363 of the Bankruptcy

Code, the Debtors are authorized to employ Natixis Capital Markets Inc. under the terms of the

Agreement annexed as Exhibit A to the Motion (including the Confidentiality Agreement

annexed as Exhibit C to the Motion); and it is further

ORDERED that the terms of the Agreement, including without limitation,

the fee provisions, are reasonable terms and conditions and are approved; and it is further

ORDERED that the Debtors are authorized to pay Natixis Capital Markets Inc. in

such amounts and at such times as is provided in the Agreement without further order of this

Court; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are

satisfied; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.


Dated: November [], 2008
       New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE