**Hearing Date and Time:  December 3, 2008 at 10:00 a.m (Prevailing Eastern Time)**
**Objection Date and Time:  November 28, 2008 at 4:00 p.m (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Robert J. Lemons

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 696-6000
Facsimile: (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                      :
In re                                 :   Chapter 11 Case No.
                                      :
LEHMAN BROTHERS HOLDINGS INC., et al.,:   08-13555 (JMP)
                                      :
              Debtors.                :   (Jointly Administered)
                                      :
                                      :
------------------------------------------------------------------x
```

## NOTICE OF DEBTORS' MOTION
## FOR AN ORDER PURSUANT TO SECTIONS
## 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH
## PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION
## <u>AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS</u>

PLEASE TAKE NOTICE that a hearing on the annexed motion of Lehman

Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11

cases (together, the "<u>Debtors</u>") for an order establishing and authorizing terms and procedures

for the assumption and assignment of prepetition derivative contracts (the "<u>Motion</u>"), all as more

fully described in the Motion, will be held before the Honorable James M. Peck, United States

Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on

**December 3, 2008 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn:  Lori R. Fife, Esq. and Robert J. Lemons, Esq., attorneys for the Debtors;  (iii)

Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, New York 10178,

Attn:  Steven J. Reisman and L.P. Harrison 3rd, conflicts counsel for the Debtors; (iv) the Office

of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33

Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Paul

Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis; (v) Milbank, Tweed,

Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis

F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official

committee of unsecured creditors appointed in these cases; and (vi) any person or entity with a particularized interest in the Motion, so as to be received no later than **November 28, 2008 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  November 13, 2008
        New York, New York

/s/ Robert J. Lemons
Lori R. Fife
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd

Attorneys for Debtors
and Debtors in Possession

**Hearing Date and Time:  December 3, 2008 at 10:00 a.m (Prevailing Eastern Time)**
**Objection Date and Time:  November 28, 2008 at 4:00 p.m (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Robert J. Lemons

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                                  :
**In re**                                                         :    **Chapter 11 Case No.**
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :    **08-13555 (JMP)**
                                                                  :
              **Debtors.**                                        :    **(Jointly Administered)**
                                                                  :
                                                                  :
------------------------------------------------------------------x

### DEBTORS' MOTION FOR AN ORDER
### PURSUANT TO SECTIONS 105 AND 365
### OF THE BANKRUPTCY CODE TO ESTABLISH
### PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION
### AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), respectfully represent as follows:

**Background**

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

**<u>Jurisdiction</u>**

4.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**<u>Lehman's Business</u>**

5.      Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman was a

leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.  Its former headquarters in

New York and regional headquarters in London and Tokyo were complemented by a network of

offices in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

6.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit

of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District

of New York in Support of First-Day Motions and Applications, filed on September 15, 2008

[Docket No. 2].

**<u>Relief Requested</u>**

7.      The Debtors request, pursuant to sections 105 and 365 of the Bankruptcy

Code, Bankruptcy Rules 6006 and 9019, and Rules 6006-1 and 9019-1 of the Local Bankruptcy

Rules for the Southern District of New York (the "<u>Local Rules</u>"), an order, substantially in the

form attached hereto as <u>Exhibit A</u>, approving (i) the procedures for the Debtors' assumption and

assignment of derivative contracts, including resolution of cure amounts; and (ii) the procedures

for the efficient processing of settlement agreements that may establish termination payments

and the return of collateral and/or property under terminated derivative contracts.

### Prepetition Derivative Contracts

8.     The Debtors are parties to thousands of derivative contracts (the

"Derivative Contracts") in which the contractual obligations and values are keyed to one or more

underlying assets or indices of asset values and subject to movements in the financial markets.

In most cases, the Derivative Contracts are "securities contracts," "forward contracts,"

"repurchase agreements," or "swap agreements" and in some cases were governed by a "master

netting agreement," each as defined under the Bankruptcy Code.  The Debtors entered into the

Derivative Contracts with various counterparties, some in the United States and some in foreign

countries, ("Counterparties"),[1] for a variety of reasons that include:  (i) hedging against the risks

of their business; (ii) speculating in the changes of market rates or prices; and/or (iii) financing.

As of the date hereof, the Debtors are party to approximately 930,000 Derivative Contract

transactions of which approximately 733,000 are purported to have been terminated. [2]

9.     Certain Derivative Contracts are memorialized pursuant to master

agreements, which are executed pursuant to widely used standard forms.[3]  The parties to a master

agreement then enter into individual transactions under the master agreement.  These individual

---

[1] Some Derivative Contracts specify that they are governed by laws of United States jurisdictions, such as the State of New York, and others specify that they are governed by the laws of foreign jurisdictions, such as the United Kingdom.

[2] The Debtors reserve all rights with respect to any alleged termination of any Derivative Contract, including the rights to assert that a Counterparty who did not terminate promptly after the commencement of these cases waived the right to terminate on account of the Debtors' bankruptcies or financial condition and/or certain alleged terminations were not effective because they were not exercised in accordance with the applicable contractual provisions.

[3] An example of a form of Derivative Contract used by market participants in general and frequently by the Debtors and the Counterparties in particular is the ISDA® Master Agreement for financial contracts.

transactions are customarily documented in the form of confirmations, which may set forth, among other things, the terms and conditions (certain of which may modify the terms and conditions of the standard forms), specified quantities and delivery dates for physical transactions, and specified methods for calculation of payment amounts and specified payment dates for financial transactions.

10.    Ordinarily, upon the commencement of a case under the Bankruptcy Code, sections 362(a) and 365(e)(1) of the Bankruptcy Code prohibit creditors from enforcing rights against a debtor.  The Bankruptcy Code, however, contains so-called "safe harbor" provisions (the "Safe Harbor Provisions") that permit qualifying non-debtor counterparties to qualifying Derivative Contracts to exercise certain contractual rights triggered by a debtor's chapter 11 case or financial condition, including to terminate the contract and accelerate the amounts owed thereunder, and to exercise rights of setoff against collateral in their possession (if any) to satisfy claims against the debtor under the Derivative Contract.[4]  The Safe Harbor Provisions do not require the debtor to cooperate with the counterparty nor do they permit the counterparty to demand the return or take possession of collateral or property in a debtor's possession without first obtaining relief from the automatic stay.

11.    Pursuant to many of the Derivative Contracts, the commencement of the Debtors' chapter 11 cases constituted events of default under the Derivative Contracts and may entitle the Counterparties to terminate the Derivative Contracts.  Many Counterparties, however, have not yet exercised such rights.  In certain of these instances, Counterparties may not have

---

[4] These provisions are contained in sections 362(b)(6), (7) and (17); 546(e), (f) and (g); 555; 556; 559; 560; and 561 of the Bankruptcy Code.  The Debtors reserve all of their rights as to whether any particular Derivative Contract constitutes an agreement subject to the Safe Harbor Provisions of the Bankruptcy Code, or any particular Counterparty is a party entitled to exercise rights pursuant to a Safe Harbor Provision.

exercised such rights because termination of the Derivative Contract would result in a net payment to the Debtors.  These "in the money" Derivative Contracts constitute significant assets of the Debtors' estates.  Without Counterparties electing to terminate the Derivative Contracts, the Debtors may not able to realize such value unless Counterparties default or until the contracts expire on their own terms, which in some cases will not occur for a significant period of time.  Additionally, in many instances, in direct contravention of the terms of the Derivative Contracts, the Counterparties have refused, based upon alleged defaults, to make ongoing payments due to the Debtors under the Derivative Contracts.[5]  With respect to Derivative Contracts pursuant to which a Counterparty has not terminated, the Debtors run the risk that movements in the financial markets could change the net amounts owing and destroy the value available to the Debtors' estates and stakeholders in these chapter 11 cases, thus providing a windfall to Counterparties at the expense of the Debtors and their estates.

12.      To avoid this inequitable result and preserve value for which the Debtors have already bargained, the Debtors may propose to assume and assign some or all of these "in the money" Derivative Contracts to third parties in exchange for consideration that will provide realizable value to the estates.  Many of the Derivative Contracts condition assignment upon the consent of the Counterparty.  The Bankruptcy Code, however, authorizes the Debtors to assume and assign these contracts over an objection of the Counterparty if the Debtors satisfy the requirements set forth under section 365 of the Bankruptcy Code.  Accordingly, this Motion seeks, among other things, authorization to assume and assign Derivative Contracts pursuant to procedures designed to promote efficiency and maximize value for the Debtors' estates.

---

[5] The Debtors reserve all rights with respect to whether such refusals are breaches of the automatic stay imposed by section 362 of the Bankruptcy Code or are otherwise impermissible under the terms of the Derivative Contracts, the Bankruptcy Code or other law, regulation, or statute.

13.    In many instances, Counterparties have purported to have exercised their

rights to terminate Derivative Contracts (collectively, the "Terminated Derivative Contracts").

Upon such termination, Counterparties holding collateral or property may have purported to set

off against such collateral or property to satisfy amounts owed by the Debtors to the

Counterparties under the Terminated Derivative Contracts.[6]  In other situations, the Debtors or

their custodians may hold collateral or property posted by a Counterparty to a Terminated

Derivative Contract.  Regardless of whether either the Debtors or the Counterparties hold any

collateral, the Debtors might not agree with the Counterparties' valuation process and assertion

of liability under the terminated Derivative Contracts.

14.    Inasmuch as it is an ordinary course activity for the Debtors to enter into

agreements resolving termination payments with respect to Terminated Derivative Contracts, the

Debtors believe they could enter into such agreements without court authority.  However, to

avoid burdening the Court and the Debtors with potential litigation over whether agreements

relating to the termination of Derivative Contracts constitute compromises or settlements within

the meaning of Bankruptcy Rule 9019, the Debtors are seeking approval of procedures to

provide for the efficient resolution of issues relating to Terminated Derivative Contracts.

### Proposed Procedures

15.    The relief sought in this Motion is intended to reduce the costs associated

with the assumption and assignment of Derivative Contracts and the settlement of claims arising

from Terminated Derivative Contracts, as well as to hasten the collection of payments owed to

the Debtors.

---

[6] The Debtors reserve all rights regarding whether any such purported set off was valid and/or barred by the
automatic stay.

16.     Where a Counterparty has not terminated a Derivative Contract, and may not be inclined to do so because termination would result in a net payment to the Debtors, the best means to preserve the value of and monetize these contracts may be for the Debtors to market and assign the Derivative Contracts expeditiously.  The value that may be realized by the assumption and assignment of these "in the money" Derivative Contracts is subject to movements in the financial markets.  To effectively market many of these Derivative Contracts, the Debtors must be able to collect bids from potential assignees and close on sales within 24 hours of selecting a bid because prices may undergo material shifts beyond this 24 hour period. The market-sensitive nature of the Derivative Contracts necessitates that their assumption and assignment be expeditious to reduce the market and credit risks incurred by both the Debtors and their Counterparties from any delay between the time the parties reach an agreement and the time such agreement would be finally approved after notice and a hearing.

17.     Where a Counterparty has not yet terminated a Derivative Contract, but might be willing to do so, the market-sensitive nature of the transactions makes it important to both the Debtors and the Counterparties to be able to quickly agree upon amounts owed to either party under the Derivative Contracts.  If the Debtors are required to seek Court approval for mutually agreed upon termination amounts, the prospects for agreement will be greatly diminished and the value of such agreements could be lost.

18.     Where a Counterparty has purported to terminate a Derivative Contract, there still may be disagreement as to the amounts owed to either party.  Providing the Debtors with the flexibility to agree on the amounts owed in these instances will benefit the estates. Moreover, the collection of positive cash values will also be accelerated, the cost of determining

the amounts owed will be minimized, and the risk that a Counterparty will lose the ability to pay during a notice period will be eliminated.

19.    Finally, considering the sheer number of Derivative Contracts that require the actions described above, obtaining Court approval for each proposed assumption and assignment or settlement would result in burdensome administrative expenses for the estate, such as the time and cost of drafting, serving, and filing pleadings, and the time incurred by attorneys in preparing for and appearing in numerous Court hearings.  Therefore, the Debtors request that the Court enter an order approving the following terms and procedures for assumption and assignment ("Assumption and Assignment Procedures") and termination and settlement ("Termination and Settlement Procedures" and together with the Assumption and Assignment Procedures, the "Procedures") by the Debtors of their Derivative Contracts:

Assumption and Assignment Procedures

a.     For any Derivative Contract to be assumed and assigned pursuant to these Assumption and Assignment Procedures, and without the prior consent of the Counterparty, the Debtors shall, at least five (5) business days (or such shorter period as may be agreed by the Counterparty) before such assumption and assignment, serve a notice (the "Assignment Notice") by overnight mail delivery service, fax, or email (where available) on the Counterparty under each applicable Derivative Contract (and its attorney, if known) at the last known mail address, fax number, or email address available to the Debtors.[7]

b.     Each Assignment Notice shall set forth the following information: (i) the names and addresses of the Counterparties, (ii) identification of the Derivative Contracts, (iii) either a statement that any assignee or its credit support provider shall have a Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or any equivalent thereof (a "Qualified Assignee"), or the

---

[7]     Consistent with Rule 6006(f) of the Federal Rules of Bankruptcy Procedure, however, no more than 100 Derivative Contracts will be contained on any one Assignment Notice.  For the purposes of Rule 6006(f), in instances where multiple Derivative Contract transactions are subject to a master agreement, each master agreement set forth on an Assignment Notice will be treated as one single Derivative Contract.

identity of any proposed assignee and its credit support provider, if any, if neither is a Qualified Assignee, and (iv) any amounts proposed by the Debtors to be paid to cure existing defaults ("Cure Amounts"). All Assignment Notices will be accompanied by a copy of the Order granting this Motion.

c.    Any Counterparty will be deemed to have received adequate assurance of future performance as required by section 365 of the Bankruptcy Code, notwithstanding any right of a Counterparty to consent to any assignment or any requirement in a Derivative Contract regarding the identity of assignees, if either (i) an assignee or its credit support provider is a Qualified Assignee, or (ii) the Debtors, after payment of any Cure Amounts, would no longer have any payment or delivery obligations under the Derivative Contract (other than upon exercise of an option exercisable in the Debtors'/assignee's discretion).

d.    With respect to Derivative Contracts that may require the return of posted collateral as part of a Cure Amount, the Debtors will either return such collateral or, if such collateral is no longer in the Debtors' possession, the Debtors will pay an amount equal to the value of such collateral as of the business day prior to service of the Assignment Notice based upon independent third-party pricing services, which payment will be considered in full satisfaction of the posted collateral. The Debtors' proposed manner of returning any such collateral, including any amount proposed to be paid for collateral no longer in the Debtors' possession, shall be included in the Assignment Notice as a Cure Amount.

e.    To the extent that any Counterparty wishes to object on the grounds of (i) the proposed Cure Amount; (ii) the need to cure a default or early termination event, including, without limitation, any default or early termination event with respect to the Debtors and each of their respective affiliates, successors and assigns (a "Default") – other than a Default relating to the commencement of a case under the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the Debtors, which Defaults need not be cured prior to assignment; or (iii) the adequate assurance of future performance under the applicable Derivative Contract if neither the assignee nor its replacement credit support provider (if any) is a Qualified Assignee, then such Counterparty must serve a written objection, so that such objection is actually received no later than five (5) business days after the date of service of the Assignment Notice, on the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Robert J. Lemons) and Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, New York 10178 (Attn: Steven J. Reisman and L. P. Harrison 3rd). Any such objection must specify the grounds for such

objection, including stating the Counterparty's alleged Cure Amount (including, on a transaction by transaction basis, calculations and detail of specific charges and dates, and any other amounts receivable or payable supporting such alleged Cure Amount, and in any event containing no less detail than the calculation of the Cure Amount provided by the Debtors) if the Counterparty disagrees with the Debtors' proposed Cure Amount and any other defaults or termination events the Counterparty alleges must be cured to effect assignment of the Derivative Contract.

f.     To the extent that any Counterparty does not timely serve an objection as set forth above, such Counterparty will be deemed (i) to have consented to such Cure Amounts, if any, and to the assumption and assignment of the Derivative Contract; (ii) to have agreed that the assignee has provided adequate assurance of future performance within the meaning of Bankruptcy Code section 365(b)(1)(C); (iii) to have agreed that all Defaults under the Contracts arising or continuing prior to the assignment have been cured as a result or precondition of the assignment, such that the assignee or the Debtors shall have no liability or obligation with respect to any Default occurring or continuing prior to the assignment, and from and after the date of the assignment the Derivative Contract shall remain in full force and effect for the benefit of the assignee and the Counterparty in accordance with its terms; (iv) to have waived any right to terminate the Derivative Contract or designate an early termination date under the applicable Derivative Contract as a result of any Default that occurred and/or was continuing prior to the assignment date; and (v) to have agreed that the terms of this Order shall apply to the assignment.

g.     If the Debtors are unable to consensually resolve any timely served objection, the Debtors may (i) seek authorization of the Court to consummate the proposed assignment, and/or (ii) if the dispute relates solely to the amount of the Cure Amount, at the time of the assignment, pay to the Counterparty any undisputed portion of the proposed Cure Amount and place any disputed portion into a segregated interest-bearing account such that, upon any resolution by the Court of the Cure Amount dispute, or agreement between the Debtors and the Counterparty, the Counterparty will be entitled to payment from the segregated account of any disputed portion and interest earned thereon to which the Court finds, or the Debtors and Counterparty agree, it is entitled.

h.     Unless the Debtors solicit bids from at least four (4) potential assignees and select the highest or best bid received within a reasonable time period from such assignees, the Debtors shall request consent of the Committee through its advisors to assume and assign a Derivative Contract pursuant to these Assumption and Assignment Procedures.

i.    If no objection is timely served by a Counterparty or a Counterparty affirmatively consents to the assignment (including by resolving its objection), and any required Committee consent (including through its advisors) has been received, the Debtors shall be authorized, but not required, to assume and assign any Derivative Contract subject to the applicable Assignment Notice, and, upon such assumption and assignment, the assignee and any replacement credit support provider shall assume the Derivative Contract with all Defaults having been deemed cured or waived.

j.    Within a reasonable time period after consummation of an assignment transaction, the Debtors will provide notice to any Counterparty of the effective date of the assignment.  Any purported termination notice sent by a Counterparty of a Derivative Contract based on a Default occurring prior to the assignment shall be ineffective unless a termination notice is received by the Debtors pursuant to the terms of the Derivative Contract prior to the assignment's consummation.

k.    In any instance where a Derivative Contract is memorialized pursuant to a master agreement, the Debtors may assume and assign, pursuant to these Assumption and Assignment Procedures, only all, but not fewer than all, of the Derivative Contract transactions entered into pursuant to the master agreement.

l.    As part of and/or to facilitate any assignment transaction the Debtors may agree to make payments, including to or for the benefit of the assignee.

<u>Termination and Settlement Procedures</u>

a.    With respect to any Derivative Contract, the Debtors may enter into and consummate a termination agreement, which may include any of the features described below.

b.    A termination agreement may resolve and fix amounts owing between the Debtors and the Counterparty.

c.    In connection with any termination agreement, the Debtors are authorized, but not required, to provide a release to the Counterparty to the extent that the Debtors determine such a release is appropriate.

d.    A termination agreement may address and permit the collateral or margin held by the Debtors or by the Counterparties to be liquidated or returned in accordance with the Derivative Contract, an applicable Master Netting Agreement, or the termination agreement.

**Basis for Relief Requested**

20.     Section 365(a) of the Bankruptcy Code empowers a debtor in possession, "subject to the court's approval, [to] assume or reject any executory contracts or unexpired leases of the debtor." 11 U.S.C. § 365(a).  In determining whether to approve the assumption or rejection of executory contracts and leases of the debtor, courts apply the "business judgment" standard.  *See Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).  "More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially."  *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985). A court should approve the assumption of an executory contract under section 365(a) of the Bankruptcy Code if it finds that a debtor has exercised its sound business judgment in determining that assumption of an agreement is in the best interests of its estate.  *See, e.g., In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992).

21.     The proposed Procedures, which would allow the Debtors to realize the value embedded in the Derivative Contracts or, in the case of Terminated Derivative Contracts, minimize claims and litigation expense through the settlement of termination payments, are in the best interest of the estates due to the time-sensitive nature of the derivatives market and the sheer number of the Derivative Contracts.  In addition, the Court has the authority under section 105 of the Bankruptcy Code to establish and authorize procedures for the assumption and assignment of the Derivative Contracts, as well as the efficient settlement of termination obligations under the Derivative Contracts.  Pursuant to section 105, this Court "may issue any

order, process or judgment that is necessary or appropriate to carry out the provisions of…title

[11]."  11 U.S.C. § 105(a).  The Second Circuit has acknowledged that section 105 confers broad

powers on bankruptcy courts:

> 11 U.S.C. § 105 'is an omnibus provision phrased in such general
> terms as to be the basis for a broad exercise of powers in the
> administration of a bankruptcy case.  The basic purpose of section
> 105 is to assure the bankruptcy courts power to take whatever
> action is appropriate or necessary in aid at the exercise of their
> jurisdiction…."

*Casse v. Key Nat'l Bank Ass'n (In re Casse)*, 198 F.3d 327, 336 (2d Cir. 1999) (citation omitted).

Authorizing the assumption and assignment of marketable Derivative Contracts as well as the

efficient settlement of termination payments is an appropriate use of this Court's powers under

section 105.  Indeed, this and other courts in other chapter 11 cases have entered similar orders

creating procedures for the assignment or settlement of derivative contracts.  See, e.g., *In re NRG*

*Energy, Inc., et al.* (Case No. 03-13024) (Bankr. S.D.N.Y. 2003) [Doc. No. 414]; *In re Mirant*

*Corporation, et al.* (Case No. 03-46590) (DML) (Bankr. N.D. Tex. 2003) [Doc. No. 3033]; *In re*

*In re Enron Corp., et al.* (Case No. 01-16034) (AJG) (Bankr. S.D.N.Y. 2001) [Doc. No. 4129].

      22.     Furthermore, a debtor in possession is obligated, as a fiduciary of the

estate, "to maximize the value of the estate…and to protect and conserve the debtor's property."

*In re Northwest Airlines Corp.*, 349 B.R. 338, 369 (S.D.N.Y. 2006).  Property of the estate

includes "[p]roceeds…or profits of or from property of the estate."  11 U.S.C. § 541(a)(6).  The

Derivative Contracts comprise significant value that can best be realized by assuming and

assigning them while they remain marketable.  The Debtors, as fiduciaries, urge the Court to

approve the Debtors' assumption and assignment of the Derivative Contracts under the

Assumption and Assignment Procedures as a proper exercise of the Debtors' business judgment to maximize the value of their assets.

23.     Moreover, the Assumption and Assignment Procedures will ensure that each assignment will comport with the requirements of section 365(f) of the Bankruptcy Code, which require a debtor to cure all defaults – other than those set forth in section 365(b)(2) of the Bankruptcy Code, which include defaults arising from a debtor's financial condition and/or the commencement of a chapter 11 case – and provide adequate assurance of future performance by the assignee.  The Debtors will be required to cure all Defaults other than those occurring as a result of their financial condition or the commencement of their chapter 11 cases.  Each Counterparty will receive advance notice that its Derivative Contract is subject to assumption and assignment by the Debtors, as well as the proposed Cure Amount, if any, and the proposed assignee (or a statement that any assignee will be a Qualified Assignee) for the applicable Derivative Contract.  Each Counterparty will have the ability to object to the assignment.  Any Counterparty that fails to object to the proposed Assignment Notice, however, may properly be deemed to consent to the treatment of its Derivative Contract.  *See, e.g., FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002) (by failing to object to a sale motion of which it had adequate notice, a creditor is deemed to consent to the sale); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (same); *In re Elliot*, 94 B.R. 343 (E.D. Pa. 1988) (same).

24.     The Assumption and Assignment Procedures also allow each Counterparty to receive the benefit of its bargain.  Either (i) the assignee or replacement credit support provider will have an investment grade credit rating, or (ii) the Counterparty will have the ability to object to the identity of the assignee and any replacement credit support provider and require

the Debtors to demonstrate to the Court that the Counterparty has adequate assurance of the

assignee's future performance.  The result of any assignment will be to place the Counterparty in

the same position that it was in when it entered into the Derivative Contract.  In short, the

Assumption and Assignment Procedures would simply hold each Counterparty to its agreement

in the Derivative Contract and prevent it from reaping an inequitable windfall at the expense of

the Debtors and their creditors.

25.    Bankruptcy Rule 9019 authorizes the Court to approve the Termination

and Settlement Procedures described herein.  Bankruptcy Rule 9019(b) permits the Court to

authorize groups of settlements to occur without further Court approval.  Here, due to the

number of Derivative Contracts and ordinary course nature of resolving Terminated Derivative

Contracts, authorization of settlements under the Termination and Settlement Procedures is

appropriate to conserve estate and judicial resources and maximize the value of the Debtors'

estates.

26.    The Debtors, therefore, request that the Court enter an order approving the

proposed  Procedures for the assumption and assignment of the Debtors' Derivative Contracts

and settlement of certain Terminated Derivative Contracts.  The Debtors submit the terms and

procedures described herein are reasonable and represent an appropriate exercise of their sound

business judgment.

## **Notice**

27.    No trustee or examiner has been appointed in these chapter 11 cases.  The

Debtors have served notice of this Motion in accordance with the procedures set forth in the

order entered on September 22, 2008 governing case management and administrative procedures

for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Committee;

(iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) all Counterparties (via mail, fax, or email) in the Debtors' records to the extent that the Counterparties' last known mail address, fax number, or email address is available to the Debtors; and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

28.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  November 13, 2008
        New York, New York


                        /s/ Robert J. Lemons
                        Lori R. Fife
                        Robert J. Lemons

                        WEIL, GOTSHAL & MANGES LLP
                        767 Fifth Avenue
                        New York, New York 10153
                        Telephone: (212) 310-8000
                        Facsimile: (212) 310-8007

                        CURTIS, MALLET-PREVOST,
                          COLT & MOSLE LLP
                        101 Park Avenue
                        New York, New York 10178
                        Telephone:  (212) 696-6000
                        Facsimile:  (212) 697-1559
                        Steven J. Reisman
                        L. P. Harrison 3rd

                        Attorneys for Debtors
                        and Debtors in Possession

## **EXHIBIT A**

**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                  :
In re                                             :     **Chapter 11 Case No.**
                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,      :     **08-13555 (JMP)**
                                                  :
                              **Debtors.**        :     **(Jointly Administered)**
                                                  :
                                                  :
-------------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105 AND 365**
**OF THE BANKRUPTCY CODE TO ESTABLISH**
**PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION**
**AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS**

Upon the motion, dated November 13, 2008 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-

debtor affiliates, "Lehman"), pursuant to sections 105 and 365 of the Bankruptcy Code (the

"Bankruptcy Code") and Rules 6006 and 9019 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") for entry of an order establishing procedures for the assumption and

assignment (the "Assumption and Assignment Procedures") of derivative contracts (the

"Derivative Contracts") the Debtors entered into with various counterparties (the

"Counterparties") and the settlement of claims arising from the termination of Derivative

Contracts (the "Termination and Settlement Procedures" and together with the Assumption and

Assignment Procedures, the "Procedures"), all as more fully described in the Motion; and the

Court having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges

for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10,

1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being

a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided in accordance with the procedures set forth in the order entered September 22, 2008

governing case management and administrative procedures [Docket No. 285] to (i) the United

States Trustee for the Southern District of New York; (ii) the attorneys for the Official Creditors'

Committee (the "Committee"); (iii) the Securities and Exchange Commission; (iv) the Internal

Revenue Service; (v) the United States Attorney for the Southern District of New York (the

"U.S. Trustee"); and (vi) all Counterparties (via mail, fax, or email) in the Debtors' records to the

extent that the Counterparties' last known mail address, fax number, or email address is available

to the Debtors; and (vii) all parties who have requested notice in these chapter 11 cases, and it

appearing that no other or further notice need be provided; and a hearing (the "Hearing") having

been held to consider the relief requested in the Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their estates

and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the following Assumption and Assignment Procedures for the

assumption and assignment of Derivative Contracts pursuant to sections 105 and 365 of the

Bankruptcy Code are hereby approved and established in the Debtors' chapter 11 cases:

Assumption and Assignment Procedures

    a.        For any Derivative Contract to be assumed and assigned pursuant to these
Assumption and Assignment Procedures, and without the prior consent of
the Counterparty, the Debtors shall, at least five (5) business days (or such

2

shorter period as may be agreed by the Counterparty) before such assumption and assignment, serve a notice (the "<u>Assignment Notice</u>") by overnight mail delivery service, fax, or email (where available) on the Counterparty under each applicable Derivative Contract (and its attorney, if known) at the last known mail address, fax number, or email address available to the Debtors.

b.    Each Assignment Notice shall set forth the following information: (i) the names and addresses of the Counterparties, (ii) identification of the Derivative Contracts, (iii) either a statement that any assignee or its credit support provider shall have a Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or any equivalent thereof (a "<u>Qualified Assignee</u>"), or the identity of any proposed assignee and its credit support provider, if any, if neither is a Qualified Assignee, and (iv) any amounts proposed by the Debtors to be paid to cure existing defaults ("<u>Cure Amounts</u>").  All Assignment Notices will be accompanied by a copy of the Order granting this Motion.

c.    Any Counterparty will be deemed to have received adequate assurance of future performance as required by section 365 of the Bankruptcy Code, notwithstanding any right of a Counterparty to consent to any assignment or any requirement in a Derivative Contract regarding the identity of assignees, if either (i) an assignee or its credit support provider is a Qualified Assignee, or (ii) the Debtors, after payment of any Cure Amounts, would no longer have any payment or delivery obligations under the Derivative Contract (other than upon exercise of an option exercisable in the Debtors'/assignee's discretion).

d.    With respect to Derivative Contracts that may require the return of posted collateral as part of a Cure Amount, the Debtors will either return such collateral or, if such collateral is no longer in the Debtors' possession, the Debtors will pay an amount equal to the value of such collateral as of the business day prior to service of the Assignment Notice based upon independent third-party pricing services, which payment will be considered in full satisfaction of the posted collateral.  The Debtors' proposed manner of returning any such collateral, including any amount proposed to be paid for collateral no longer in the Debtors' possession, shall be included in the Assignment Notice as a Cure Amount.

e.    To the extent that any Counterparty wishes to object on the grounds of (i) the proposed Cure Amount; (ii) the need to cure a default or early termination event, including, without limitation, any default or early termination event with respect to the Debtors and each of their respective affiliates, successors and assigns (a "<u>Default</u>") – other than a Default relating to the commencement of a case under the Bankruptcy Code by

3

any of the Debtors, or the insolvency or financial condition of any of the Debtors, which Defaults need not be cured prior to assignment; or (iii) the adequate assurance of future performance under the applicable Derivative Contract if neither the assignee nor its replacement credit support provider (if any) is a Qualified Assignee, then such Counterparty must serve a written objection, so that such objection is <u>actually received</u> no later than five (5) business days after the date of service of the Assignment Notice, on the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Robert J. Lemons) and Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, New York 10178 (Attn:  Steven J. Reisman and L. P. Harrison 3rd).  Any such objection must specify the grounds for such objection, including stating the Counterparty's alleged Cure Amount (including, on a transaction by transaction basis, calculations and detail of specific charges and dates, and any other amounts receivable or payable supporting such alleged Cure Amount, and in any event containing no less detail than the calculation of the Cure Amount provided by the Debtors) if the Counterparty disagrees with the Debtors' proposed Cure Amount and any other defaults or termination events the Counterparty alleges must be cured to effect assignment of the Derivative Contract.

f.      To the extent that any Counterparty does not timely serve an objection as set forth above, such Counterparty will be deemed (i) to have consented to such Cure Amounts, if any, and to the assumption and assignment of the Derivative Contract; (ii) to have agreed that the assignee has provided adequate assurance of future performance within the meaning of Bankruptcy Code section 365(b)(1)(C); (iii) to have agreed that all Defaults under the Contracts arising or continuing prior to the assignment have been cured as a result or precondition of the assignment, such that the assignee or the Debtors shall have no liability or obligation with respect to any Default occurring or continuing prior to the assignment, and from and after the date of the assignment the Derivative Contract shall remain in full force and effect for the benefit of the assignee and the Counterparty in accordance with its terms; (iv) to have waived  any right to terminate the Derivative Contract or designate an early termination date under the applicable Derivative Contract as a result of any Default that occurred and/or was continuing prior to the assignment date; and (v) to have agreed that the terms of this Order shall apply to the assignment.

g.      If the Debtors are unable to consensually resolve any timely served objection, the Debtors may (i) seek authorization of the Court to consummate the proposed assignment, and/or (ii) if the dispute relates solely to the amount of the Cure Amount, at the time of the assignment, pay to the Counterparty any undisputed portion of the proposed Cure Amount and place any disputed portion into a segregated interest-bearing account such that, upon any resolution by the Court of the Cure Amount

dispute, or agreement between the Debtors and the Counterparty, the Counterparty will be entitled to payment from the segregated account of any disputed portion and interest earned thereon to which the Court finds, or the Debtors and Counterparty agree, it is entitled.

h.      Unless the Debtors solicit bids from at least four (4) potential assignees and select the highest or best bid received within a reasonable time period from such assignees, the Debtors shall request consent of the Committee through its advisors to assume and assign a Derivative Contract pursuant to these Assumption and Assignment Procedures.

i.      If no objection is timely served by a Counterparty or a Counterparty affirmatively consents to the assignment (including by resolving its objection), and any required Committee consent (including through its advisors) has been received, the Debtors shall be authorized, but not required, to assume and assign any Derivative Contract subject to the applicable Assignment Notice, and, upon such assumption and assignment, the assignee and any replacement credit support provider shall assume the Derivative Contract with all Defaults having been deemed cured or waived.

j.      Within a reasonable time period after consummation of an assignment transaction, the Debtors will provide notice to any Counterparty of the effective date of the assignment.  Any purported termination notice sent by a Counterparty of a Derivative Contract based on a Default occurring prior to the assignment shall be ineffective unless a termination notice is received by the Debtors pursuant to the terms of the Derivative Contract prior to the assignment's consummation.

k.      In any instance where a Derivative Contract is memorialized pursuant to a master agreement, the Debtors may assume and assign, pursuant to these Assumption and Assignment Procedures, only all, but not fewer than all, of the Derivative Contract transactions entered into pursuant to the master agreement.

l.      As part of and/or to facilitate any assignment transaction the Debtors may agree to make payments, including to or for the benefit of the assignee.

; and it is further

ORDERED that the following Termination and Settlement Procedures for the

termination and settlement of claims of terminated Derivative Contracts by the Debtors are

hereby approved and established:

a.    With respect to any Derivative Contract, the Debtors may enter into and
consummate a termination agreement, which may include any of the
features described below.

b.    A termination agreement may resolve and fix amounts owing between the
Debtors and the Counterparty.

c.    In connection with any termination agreement, the Debtors are authorized,
but not required, to provide a release to the Counterparty to the extent that
the Debtors determine such a release is appropriate.

d.    A termination agreement may address and permit the collateral or margin
held by the Debtors or by the Counterparties to be liquidated or returned in
accordance with the Derivative Contract, an applicable Master Netting
Agreement, or the termination agreement.

; and it is further

ORDERED that the Debtors are authorized and have full requisite power and

authority to enter into and consummate assumptions and assignments and/or termination

agreements of Derivative Contracts pursuant to the Assumption and Assignment Procedures

and/or Termination and Settlement Procedures; and it is further

ORDERED that (i) this Order is and shall be effective as a determination that,

upon assignment of a Derivative Contract pursuant to the Assumption and Assignment

Procedures, all defaults, events of default, and early termination events pursuant to the applicable

Derivative Contract have been cured, that all liabilities arising therefrom have been released and

discharged, and that any rights to designate an Early Termination Date have been cured or

waived and (ii) the grounds on which Counterparties may object to the assignment of their

6

Derivative Contracts shall be limited as described in subparagraph e of the second decretal

paragraph of this Order; and it is further

ORDERED that the terms of each assignment of a Derivative Contract pursuant to

the Assumption and Assignment Procedures and this Order shall be binding in all respects upon,

shall govern the acts of, and shall inure to the benefit of, the Debtors, their estates, and their

creditors and interest holders; the Counterparties; all future assignees; each of their respective

affiliates, successors and assigns; and any affected third parties; and it is further

ORDERED that, with respect to the Derivative Contracts assigned pursuant to the

Assumption and Assignment Procedures: (a) the assigned Derivative Contracts shall be

transferred and assigned to, and following the closing of the assignment remain in full force and

effect for the benefit of the assignees, all future assignees, each of their respective affiliates,

successors, and assigns, and any affected third parties, notwithstanding any provision in any such

assigned Derivative Contract that prohibits, restricts, or conditions such assignment or transfer;

(b) each assigned Derivative Contract is an executory contract under section 365 of the

Bankruptcy Code; (c) the Debtors may assume each of their respective Derivative Contracts in

accordance with section 365 of the Bankruptcy Code; (d) the Debtors may assign each assigned

Derivative Contract in accordance with section 365 of the Bankruptcy Code, and any provisions

in any assigned Derivative Contract that prohibit, restrict, or condition the assignment of such

assigned Derivative Contract or allow the Counterparty to such assigned Derivative Contract to

terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or

condition upon the assignment of such assigned Derivative Contract, constitute unenforceable

anti-assignment provisions which are void and of no force and effect; (e) all other requirements

and conditions under section 365 of the Bankruptcy Code for the assumption and assignment by

the Debtors of each assigned Derivative Contract have been satisfied; and (f) upon closing of any

assignment transaction, in accordance with section 365 of the Bankruptcy Code, the assignee(s)

shall be fully and irrevocably vested in all right, title, and interest of each assigned Derivative

Contract.  Any portions of any such assigned Derivative Contract that purport to permit the

Counterparty to terminate the Derivative Contract by reason of such assignment, or any default

or termination right arising prior to or existing at the time of the assignment, including as a result

of the commencement of a case under the Bankruptcy Code by any of the Debtors, or the

insolvency or financial condition of any of the Debtors, are void and of no force and effect, and

shall not be enforceable against the assignee(s), all future assignees, each of their respective

affiliates, successors and assigns, and any affected third parties; and the Counterparties to such

Derivative Contracts shall not have the right to terminate or cease payment, delivery, or any

other performance under the Derivative Contracts, or otherwise modify the Derivative Contracts,

assert any claim, or termination payment, or impose any penalty by reason of such assignment,

or any default or termination right arising prior to or existing at the time of the assignment,

including as a result of the commencement of a case under the Bankruptcy Code by any of the

Debtors, or the insolvency or financial condition of any of the Debtors; and it is further

ORDERED that each Counterparty to a Derivative Contract assigned pursuant to

the Assumption and Assignment Procedures is hereby forever barred, estopped, and permanently

enjoined from asserting against the Debtors, the assignee(s), all future assignees, each of their

respective affiliates, successors and assigns, or the property of any of them, any default or

termination right arising prior to or existing as of the assignment of the Derivative Contract or,

against the assignee(s), any counterclaim, defense, setoff or any other claim asserted or

assertable against the Debtors; and it is further

ORDERED that, except as provided in the Assignment Notice or this Order, upon assignment of a Derivative Contract pursuant to the Assumption and Assignment Procedures, the Debtors and their estates shall have no further liabilities or obligations under the Derivative Contract, and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, each of their respective affiliates, successors and assigns, their property or their assets or estates; and it is further

ORDERED that nothing in the Motion shall be deemed to be an admission of fact by any of the Debtors, for any purposes whatsoever, concerning the purported termination of any of the Derivative Contracts; and it is further

ORDERED that the Debtors are hereby authorized to execute and deliver all instruments and documents, and take such other actions, as may be necessary or appropriate to implement and effectuate assumptions and assignments and/or termination agreements pursuant to the Assumption and Assignment Procedures and/or Termination and Settlement Procedures; and it is further

ORDERED that entry of this Order is without prejudice to the rights of the Debtors, including, but not limited to, the right to seek further, other, or different relief regarding the Derivative Contracts pursuant to, among other things, section 365 of the Bankruptcy Code; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rules 6006(a) and 9014 are satisfied; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order and/or

the terms of any assumption and assignment and/or termination agreement consummated

pursuant to the terms of the Assumption and Assignment Procedures and/or Termination and

Settlement Procedures.


Dated: _____, 2008
       New York, New York

                           _____
                           UNITED STATES BANKRUPTCY JUDGE