Interim Hearing Date: November 20, 2008 at 2:00 p.m. (Prevailing Eastern Time)
Final Hearing Date: December 3, 2008 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date: November 28, 2008 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                                   :
**In re**                                                          :    **Chapter 11 Case No.**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                       :    **08-13555 (JMP)**
                                                                   :
                                             **Debtors.**          :    **(Jointly Administered)**
                                                                   :
                                                                   :
-------------------------------------------------------------------x

### NOTICE OF DEBTORS' MOTION PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AND RULES 2014(a) AND 2016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN LAZARD FRERES & CO. LLC AS INVESTMENT BANKER TO THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

PLEASE TAKE NOTICE that an Interim Hearing on the annexed Motion of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors") for entry of Interim and Final Orders, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code (the "Bankruptcy Code"), and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors' to retain and employ, *nunc pro tunc* to the Commencement Date, Lazard Frères & Co. LLC ("Lazard") as investment banker to the Debtors, all as more fully described in the Motion, will be held on **November 20, 2008 at 2:00 p.m. (Prevailing Eastern Time)**, and the Final Hearing to consider the relief requested in the Motion will be held on **December 3, 2008 at 10:00 a.m.,** or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that both the Interim Hearing and Final Hearing will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Bankruptcy Rules, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Richard P. Krasnow, Esq. and James T. Grogan, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be received no later than **November 28, 2008, at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Final Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: November 13, 2008
    New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Interim Hearing Date: November 20, 2008 at 2:00 p.m. (Prevailing Eastern Time)
Final Hearing Date:  December 3, 2008 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date:  November 28, 2008 at 4:00 p.m. (Prevailing Eastern Time)

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :    08-13555 (JMP)
                                          :
            Debtors.                      :    (Jointly Administered)
                                          :
-------------------------------------------------------------------x
```

**DEBTORS' APPLICATION PURSUANT TO SECTIONS**
**327(a) AND 328(a) OF THE BANKRUPTCY CODE AND RULES 2014(a)**
**AND 2016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS**
**TO EMPLOY AND RETAIN LAZARD FRERES & CO. LLC AS INVESTMENT**
**BANKER TO THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), hereby submit this application (the

"Application") for an order pursuant to sections 327(a) and 328(a) of title 11 of the United States

Code (the "Bankruptcy Code") and rules 2014(a) and 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") for authorization to employ and retain Lazard Frères & Co.

LLC ("Lazard") as investment banker to the Debtors *nunc pro tunc* to the Commencement Date (as defined below), and in support thereof the Debtors respectfully state:

## Background

1.       Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.       On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.       On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

## Jurisdiction

4.       This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Lehman's Business

5.       Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman has been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.  Its headquarters in New

York and regional headquarters in London and Tokyo are complemented by a network of offices

in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

6.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit

of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District

of New York in Support of First-Day Motions and Applications, filed on September 15, 2008

[Docket No. 2].

## Relief Requested

7.      By this Application, the Debtors seek entry of interim and final orders (the

interim order being in the form attached hereto as Exhibit A), pursuant to sections 327(a) and

328(a) of the Bankruptcy Code, and Bankruptcy Rules 2014(a) and 2016, authorizing the

employment and retention of Lazard as investment banker for the Debtors,  in accordance with

the terms of the engagement letter between the Debtors and Lazard, dated as of October 20, 2008

(the "Engagement Letter"), and the related indemnification agreement between the Debtors and

Lazard, dated as of September 12, 2008 (the "Indemnification Letter" and, together with the

Engagement Letter, the "Engagement Agreement"), copies of which are attached hereto as

Exhibit B.  The facts and circumstances supporting the Application are set forth in the Affidavit

of Barry W. Ridings (the "Ridings Affidavit"), sworn to on November 13, 2008, a copy of which

is attached hereto as Exhibit C.

## Lazard's Qualifications

8.      Lazard is an investment banking firm focused on providing financial and

investment banking advice and transaction execution on behalf of its clients.  Lazard's broad

range of corporate advisory services includes services pertaining to:  general financial advice,

domestic and cross-border mergers and acquisitions, divestitures, privatization, special

committee assignments, takeover defenses, corporate restructurings, and strategic

partnerships/joint ventures.  Lazard also has a significant asset management business.  In

addition, Lazard is a registered broker-dealer with the United States Securities and Exchange

Commission.

      9.     The Debtors seek to retain Lazard as their investment banker because an

experienced investment bank and financial advisor such as Lazard fulfills a critical need that

complements the services offered by the Debtors' other restructuring professionals.  Lazard and

its senior professionals have extensive experience and an excellent reputation for providing high

quality financial advisory services to debtors and creditors in large and complex chapter 11 cases

and other debt restructurings, and Lazard is very familiar with the Debtors' financial and

business operations.  As discussed more fully in the Ridings Affidavit, Lazard began working

with Lehman in July 2008.  At that time, Lehman's management was exploring several different

options to deal with its liquidity crisis, including selling its investment management division and

spinning off certain illiquid mortgage-backed assets.  Before any of these strategic maneuvers

were realized, the Debtors were forced to file these chapter 11 cases.

      10.    In providing the foregoing pre-petition services to the Debtors, Lazard's

professionals have worked closely with the Debtors' management and other professionals and

have become well acquainted with the Debtors' operations, debt structure, businesses, and

related matters.  As a result, Lazard has a well-developed knowledge of the Debtors' financial

history and business operations and is well suited to provide the Debtors with the investment

banking services contemplated by the Engagement Letter.  Since the commencement of these

chapter 11 cases, Lazard has continued to work closely with the Debtors on a wide range of time-critical matters including the sale of the North American investment banking and capital markets operations and certain other assets to Barclays Capital Inc. and the pending sale of Lehman's Investment Management Division, among various other matters.

11.     In addition to Lazard's understanding of the Debtors' financial history and business operations, Lazard and its senior professionals have extensive experience in the reorganization and restructuring of troubled companies, both out-of-court and in chapter 11 proceedings. Lazard's employees have advised debtors, creditors, equity constituencies and government agencies in many complex financial reorganizations. Since 1990, Lazard's professionals have been involved in over 250 restructurings, representing over $350 billion in debtors' assets. Lazard also has significant experience advising companies on merger and acquisition transactions both in bankruptcy and out-of-court transactions.

12.     Lazard professionals have been employed as financial advisors and investment bankers in a number of troubled company situations, including, among others, chapter 11 cases in the Southern District of New York such as Worldcom, Adelphia Communications, Parmalat USA, Calpine, Tower Automotive, Northwest Airlines, Genuity, and Wellman. Also relevant with respect to Lazard's knowledge of the Debtors industry and business, Lazard recently represented Bear Stearns in its sale to JP Morgan Chase.

13.     Accordingly, Lazard has developed significant relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these cases. Should the Court approve the Debtors' retention of Lazard as their investment banker, Lazard will continue, without interruption, to perform the services for the Debtors as described herein.

14.    The resources, capabilities, and experience of Lazard in advising the Debtors is crucial to the Debtors' during these chapter 11 cases.  An experienced investment banker such as Lazard fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.  Lazard will continue to concentrate its efforts on formulating strategic alternatives, negotiating with the Debtors' creditor constituencies, and assisting the Debtors to develop and implement a viable chapter 11 plan, which may include an asset or other sale strategy.  For these reasons, the Debtors require the services of a capable and experienced financial advisory and investment banking firm such as Lazard.

### Services to be Rendered

15.    The terms and conditions of Lazard's engagement are governed by the Engagement Agreement. The terms of the Engagement Agreement reflect the Debtors' and Lazard's mutual agreement as to the substantial efforts that will be required of Lazard in this engagement.  Under the Engagement Agreement, in consideration for the compensation contemplated thereby, Lazard has agreed to advise LBHI in connection with a variety of financial matters, including a review of the Debtors' financial position and obligations, and a review and evaluation of possible strategic alternatives, liquidity alternatives, and transactions. Some of the services Lazard may provide the Debtors include:[1]

a.    Reviewing and analyzing the business, operations and financial projections of LBHI, on behalf of itself and its controlled subsidiaries, other than Lehman Brothers International (Europe) and its subsidiaries (collectively, with LBHI, the "Company");

---

[1]  To the extent that the summary of the Engagement Agreement in this Application and the terms of the Engagement Agreement are inconsistent, the terms of the Engagement Agreement (as the same may be modified by the Order approving this Application) shall control. Capitalized terms that are used in this Application but not defined in this Application shall have the meanings ascribed to them in the Engagement Agreement.

b.  Assisting the Company in identifying and evaluating candidates for potential Sale Transactions[2] and advising the Company in connection with negotiations and aiding in the consummation of any Sale Transaction;

c.  Assisting the Company in the development of a restructuring, reorganization, and/or recapitalization plan (as more fully described in the Engagement Letter, "Restructuring");

d.  Advising and assisting the Company in evaluating potential transactions or series of transactions involving the public or private issuance, sale, or placement of newly issued (or treasury) equity, equity-linked, or debt securities, instruments, or obligations of the Company, including any exit financing in connection with a case under the Bankruptcy Code ("Financing") by the Company, and subject to Lazard's agreement to act (and if requested by Lazard the execution of appropriate agreements), contacting potential sources of capital and assisting the Company in implementing such a Financing;

e.  Advising the Company on tactics and strategies for negotiating with the holders or beneficiaries of certain existing obligations (the "Stakeholders"), as more fully described in the Engagement Agreement;

f.  Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders or other appropriate parties in connection with any Restructuring, Sale Transaction or Financing;

g.  Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Restructuring, Sale Transaction or Financing;

h.  Assisting the Company in preparing documentation within Lazard's area of expertise that is required in connection with any Restructuring, Sale Transaction or Financing;

i.  Attending meetings of the Company's Board of Directors and rendering advice with respect to matters on which Lazard has been engaged to advise the Company;

j.  Providing testimony, as necessary, with respect to matters on which Lazard has been engaged in any proceeding before the United States

---

[2]  As defined in the Engagement Agreement, the term "Sale Transaction" refers to transactions where all or a portion of assets, voting power, securities or other interests or other obligations of the Company or any Company entity or business are, directly or indirectly, combined with, transferred to or assumed by another entity or group, except for certain transactions that have been or will be excluded by mutual agreement between the Debtors and Lazard.

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and

k.  Providing the Company with other financial restructuring advice.

16.  Given the unanticipated timing of the filing of the Debtors' chapter 11 cases and the urgency to sell certain businesses of the Debtors, Lazard has acted as investment banker to the Debtors in connection with the completed sale of Lehman's North American investment banking and capital markets business to Barclay's Capital Inc.  Similarly, Lazard is currently acting as investment banker to the Debtors in the pending sale of Lehman's Investment Management Division.

17.  The services that Lazard will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates.  Lazard has indicated a willingness to act on behalf of the Debtors, on the terms described herein, and will subject itself to the jurisdiction of the Court.  Additionally, the Debtors have been advised by Lazard that it will endeavor to coordinate with the other retained professionals in these bankruptcy cases to eliminate unnecessary duplication or overlap of work.

## **Professional Compensation**

18.  As set forth in the Engagement Agreement, the Debtors and Lazard have agreed to the following compensation structure (the "Fee and Expense Structure") in consideration for the services to be rendered by Lazard in these chapter 11 cases:

a.  A monthly fee in the amount of $400,000 per month, payable on the first day of each month of Lazard's engagement for the twenty-four (24) month period commencing on October 1, 2008 through (and including) September 1, 2010 and then decreasing to $250,000 per month thereafter until the earlier of the effective date of a chapter 11 plan or termination of the Engagement Letter pursuant to Section 10 thereof;

b.  With respect to Sale Transactions:

i.  A fee equal to $5,000,000, payable for consummation of the Sale Transaction pursuant to which certain North American assets are sold to Barclays Capital Inc. or any of its affiliates (the "<u>Barclays Sale Fee</u>");

ii.  A fee, payable upon consummation of a Sale Transaction pursuant to which the Company's Investment Management Division, which includes Neuberger Berman and the fixed income and certain alternative asset management businesses of the Company, is sold, equal to $5,000,000 <u>plus</u> 1% of the amount, if any, by which the Aggregate Consideration (as defined on Schedule A to the Engagement Letter ("<u>Schedule A</u>")) for such transaction exceeds that proposed in the purchase agreement submitted by Bain Capital and Hellman & Friedman on September 29, 2008 (the "<u>Neuberger Berman Sale Fee</u>"); and

iii.  A fee, payable upon consummation of any Sale Transaction (other than those described in clauses (b)(i) and (ii) above), equal to the sum of (A) 85% of the applicable percentage, as set forth on Schedule A, of the Aggregate Consideration (as defined in Schedule A) involved in such transaction; <u>plus</u> (B) .1% of the aggregate amount of any unfunded obligations or commitments, if any, that are reduced, eliminated or transferred, directly or indirectly, in connection with the transaction, up to a maximum payment of $1,000,000 pursuant to this clause (B) (each, together, an "<u>Other Sale Fee</u>"). The Company has agreed to direct any buyer to pay the Other Sale Fee directly to Lazard upon consummation of the applicable transaction as a deduction from the proceeds of the Sale Transaction; *provided*, *that*, for the avoidance of any doubt, the foregoing shall only limit the Company's obligation to pay Lazard to the extent that the Other Sale Fee is actually so paid by the buyer.

c.  If a chapter 11 plan is approved by the Court and any Stakeholders receive a distribution (whether from an operating company, liquidating trust or otherwise), Lazard will receive a fee, payable upon the effective date of such plan, equal to .5% of any cash and the fair market value of any property distributed or distributable to the Stakeholders in connection with such plan (adjusted as appropriate so as not to double count any consideration received by the Stakeholders from any Sale Transaction), subject to a maximum fee of $17,500,000.

d.  A fee, payable upon consummation of any Financing (for which Lazard has provided services), equal to the amount set forth in Schedule B to the Engagement Letter (the "<u>Financing Fee</u>").

e.   In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Company shall promptly reimburse Lazard for all: (A) reasonable expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonable fees and expenses, including expenses of outside counsel retained with the prior consent of LBHI (not to be unreasonably withheld), if any.

f.   As part of the compensation payable to Lazard under the Engagement Letter, the Company agrees that the indemnification, contribution and related provisions entered into by the Company and Lazard dated September 12, 2008 (the "Indemnification Letter") shall also apply to Lazard's engagement and are incorporated into the Engagement Letter in their entirety, subject to certain modifications described below and in the Affidavit of Barry Ridings.

g.   All amounts referenced in the Engagement Letter reflect United States currency and shall be paid promptly in cash after such amounts accrue under the Engagement Letter.

h.   To the extent that LBHI requests, and Lazard agrees to provide, services other than those set forth above, customary fees with respect thereto shall be mutually agreed by LBHI and Lazard in good faith and subject to approval by the Bankruptcy Court.

19.    The Fee and Expense Structure described above is comparable to compensation generally charged by investment banking firms of similar stature to Lazard and for comparable engagements, both in and out of court.  The Fee and Expense Structure is also consistent with Lazard's normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined.  Lazard and the Debtors also believe that the Fee and Expense Structure is reasonable and at favorable market rates.  For example, the Barclays Sale Fee and the pending Neuberger Berman Sale Fee each represent approximately .3% of the proceeds to the Debtors.  The Debtors are informed that the Lazard fees compare very favorably and are less than half of the average fee paid to investment banks of .7% for mergers and acquisitions in non-bankruptcy transactions between $1.5 billion and $2.0 billion in 30 transactions completed over the last 5 years.  *See* Ridings Affidavit at ¶ 16.

20.     With respect to other potential Sale Transactions, Lazard has agreed to seek compensation equal to 85% of the fees that Lazard typically charges for merger and acquisition transactions.  The Debtors thus benefit in two ways.  First, Lazard has applied a 15% discount to the merger and acquisition fee Lazard typically charges its clients.  Second, Lazard expects to be available for all sale assignments, including those that might be less desirable due to the level of difficulty or other such factors.  *See* Ridings Affidavit at ¶ 17.

21.     With respect to the fees payable in connection with a plan of reorganization, Lazard's fee is comparable to the fees charged by investment banks in other large multi-billion dollar chapter 11 cases such as, Conseco, United Airlines, Parmalat, Calpine, WorldCom, and Adelphia.  The fee also includes a formula based on creditor recovery and has a fee cap which puts an upward limit on the fee payable to Lazard.  In addition, fees payable in connection with a chapter 11 plan will be adjusted in respect of certain Sale Transactions in order to prevent the Debtors from paying duplicate fees.  *See* Ridings Affidavit at ¶ 18.

22.     Lazard also will seek reimbursement for reasonable out-of-pocket expenses, and other fees and expenses, including reasonable expenses of counsel, if any. Lazard will follow its customary expense reimbursement guidelines and practices in seeking expense reimbursement from the Debtors. *See* Ridings Affidavit at ¶ 20.

23.     As part of the overall compensation payable to Lazard under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification and contribution obligations as described in the Indemnification Letter, subject to certain modifications described more fully below.  Lazard and the Debtors believe that such provisions are customary and reasonable for financial advisory and investment banking engagements, both out-of-court and in

chapter 11.  *See In re Joan & David Halpern, Inc.*, 248 B.R. 43 (Bankr. S.D.N.Y. 2000), *aff'd*,

2000 WL 1800690 (S.D.N.Y. 2000); *see also* Ridings Affidavit at ¶ 21.

24.     The Debtors are advised by Lazard that it is not the general practice of

investment banking firms to keep detailed time records similar to those customarily kept by

attorneys.  While in many instances Lazard has maintained time records in bankruptcy cases,

Lazard believes in this case it should be excused from this requirement given the size,

complexity and broad scope of this case, which is the largest chapter 11 case ever filed.  Most

professionals within Lazard, including most of the large number of professionals that Lazard has

involved in this case, do not keep time records in connection with the performance of their

services.  In order to demonstrate the services provided by Lazard to the Debtors, each month

Lazard will file a schedule that identifies those professionals who have provided services on

behalf of the Debtors and that provides a general description of the services performed by such

professionals.  *See* Ridings Affidavit at ¶ 19.

25.     The hours worked, the results achieved, and the ultimate benefit to the

Debtors of the work performed by Lazard in connection with its engagement may vary and the

Debtors and Lazard have taken this into account in setting the above fees.  The compensation

structure described above was established to reflect the difficulty of the extensive assignments

Lazard expects to undertake and the potential for failure.

26.     Lazard's restructuring expertise, mergers and acquisitions capabilities, as

well as its capital markets knowledge and financing skills, some or all of which may be required

by the Debtors during the term of Lazard's engagement, were important factors in determining

the Fee and Expense Structure (including the contingent fees for Sale Transactions, Financings,

and Restructurings).  Consequently, the ultimate benefit to the Debtors of Lazard's services

cannot be measured merely by reference to the number of hours to be expended by Lazard's professionals in the performance of such services.

27.    In addition, given the numerous issues which Lazard may be required to address in the performance of its services hereunder, Lazard's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Lazard's services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors believe that the fee arrangements in the Engagement Letter are reasonable under the standards set forth in 11 U.S.C. § 328(a).  As part of the overall compensation payable to Lazard under the terms of the Engagement Letter, the Debtors have agreed to the reimbursement, indemnification, and contribution obligations as described in the Indemnification Letter, subject to the modifications described below.  The Debtors believe that such provisions are customary and reasonable for financial advisory and investment banking engagements in chapter 11.

### Lazard's Disinterestedness

28.    To the best of the Debtors' knowledge, information, and belief, and except and to the extent disclosed herein and in the Ridings Affidavit, (a) Lazard is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and holds no interest adverse to the Debtors or their estates in connection with the matters for which Lazard is to be retained by the Debtors, as required by section 327(a) of the Bankruptcy Code; and (b) Lazard has no connection with the Debtors, their creditors, the U.S. Trustee, or other parties in interest in these chapter 11 cases.

29.    The Debtors retained Lazard prior to the commencement of these chapter 11 proceedings.  Lazard did not receive any payments for services prior to the Commencement Date. To the extent Lazard is owed any fees or expenses in connection with its prepetition

advisory engagement under the engagement letter executed in respect of such engagement, Lazard has waived such fees and expenses.   Accordingly, Lazard is not a creditor of the Debtors.

30.   The Debtors' knowledge, information, and belief regarding certain of the matters set forth in this Application are based on, and are made in reliance upon, the Ridings Affidavit.  To the extent that Lazard discovers any additional facts bearing on the matters described herein during the period of Lazard's retention, it will supplement the information contained in the Ridings Affidavit.

31.   The Debtors submit that the retention of Lazard on the terms and conditions set forth herein is in the best interests of the Debtors, their creditors and all potential parties in interest.

32.   Notwithstanding the foregoing, as required by the Engagement Letter, Lazard will file interim and final fee applications for allowance of its compensation and expenses with respect to its services with the Court in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and any applicable orders of the Court; *provided*, that Lazard shall not be required to maintain or provide time records in connection with the services on behalf of the Debtors.  Lazard has not shared or agreed to share any compensation to be paid by the Debtors with any other person, other than other principals and employees of Lazard, in accordance with section 504 of the Bankruptcy Code.  Lazard's applications for compensation and expenses will be paid by the Debtors, pursuant to the terms of the Engagement Letter, upon approval by the Court.

**Approval of Engagement Pursuant to**
**Section 328 (a) of the Bankruptcy Code**

33.       Section 328 of the Bankruptcy Code provides, in relevant part, that a

debtor "with the court's approval, may employ or authorize the employment of a professional

person under section 327. . . on any reasonable terms and conditions of employment, including

on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

11 U.S.C. § 328(a).  Thus, section 328(a) permits the Court to approve the terms of Lazard's

engagement as set forth in the Engagement Agreement, including the Fee and Expense Structure,

and the terms of the Indemnification Letter.

34.       As recognized by numerous courts, Congress intended in section 328(a) to

enable debtors to retain professionals pursuant to specific fee arrangements to be determined at

the time of the court's approval of the retention, subject to reversal only if the terms are found to

be improvident in light of "developments not capable of being anticipated at the time of the

fixing of such terms and conditions." 11 U.S.C. § 328(a); *see also Donaldson, Lufkin & Jenrette*

*Sec. Corp. v. Nat'l Gypsum co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862-3 (5th Cir. 1997)

("If the most competent professionals are to be available for complicated capital restructuring

and the development of successful corporate reorganization, they must know what they will

receive for their expertise and commitment.")

35.       The Fee and Expense Structure appropriately reflects the nature of the

Services to be provided by Lazard and is consistent with the fee structures typically utilized by

leading financial advisors that do not bill their clients on an hourly basis.  Similar monthly fee

and transaction fee arrangements have been approved and implemented in other large chapter 11

cases in this district and elsewhere.  *See, e.g. In re New Century TRS Holdings, Inc.*, No. 07-

10416 (Bankr. D. Del. Apr. 25, 2007) (authorizing retention of Lazard Freres & Co. LLC as

financial advisor for debtors, under sections 327(a) and 328(a) of the Bankruptcy Code); *In re Oakwood Homes Corp.*, No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003); *In re Burlington Industries, Inc.*, No. 01-11282 (RJN) (Bankr. D. Del. May 21, 2003) (authorizing retention of Miller Buckfire Lewis & Co., LLC and Dresdner Kleinwort Wasserstein, Inc. as financial advisors for debtors, under sections 327(a) and 328(a) of the Bankruptcy Code); *In re Kaiser Aluminum Corp., et al*, No. 02-10429 (JKF) (Bankr. D. Del. March 19, 2002) authorizing retention of Lazard Freres & Co. LLC and subjecting compensation to same standard of review); *In re Covad Comm'cns Group, Inc.*, No. 01-10167 (JJF) (Bankr. D. Del. Nov. 21, 2001) (authorizing retention of Houlihan, Lokey, Howard & Zukin, Inc. with compensation subject to standard of review set forth in section 328(a)); *In re W.R. Grace & Co.*, No 01-01139 (JFK) (Bankr. D. Del. Apr. 2, 2001) (order dated June 22, 2001, approving the retention of The Blackstone Group as financial advisor to the debtors, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code); *In re Trans World Airlines, Inc.*, No. 01-00056 (PJW) (Bankr. D. Del. Jan. 26, 2001) (authorizing retention of Rothschild, Inc., as financial advisors for debtors, under sections 327(a) and 328(a) of the Bankruptcy Code); *In re Harnischfeger Industries,* No. 99-02171 (PJW) (Bankr. D. Del. Feb. 8, 2000) (authorizing retention of The Blackstone Group L.P. as financial advisors to debtors); *see also In re Casual Male Corp.*, No. 01-41404 (REG) (Bankr. S.D.N.Y. May 18, 2001) (authorizing retention of Robertson Stephens, Inc., subject to section 328(a) standard of review).

      36.    The Debtors believe that the Fee and Expense Structure and the indemnification, reimbursement, contribution and related provisions set forth in the Engagement Letter and Indemnification Letter are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code.  The Fee and Expense Structure and

the indemnification, reimbursement, contribution and related provisions appropriately reflect (i) the nature of the services to be provided by Lazard and (ii) the fee structures and indemnification provisions typically utilized by Lazard and other leading financial advisory and investment banking firms, which do not bill their clients on an hourly basis and generally are compensated on a transactional basis. In particular, the Debtors believe that the proposed fee structure creates a proper balance between fixed, monthly, and contingency fees based on the successful consummation of relevant transactions.

37.    The Debtors submit that the Fee and Expense Structure and the indemnification, reimbursement, contribution and related provisions are reasonable terms and conditions of employment in light of (i) industry practice, (ii) market rates charged for comparable services both in and out of the chapter 11 context, (iii) Lazard's substantial experience with respect to financial advisory and investment banking services, and (iv) the nature and scope of work performed by Lazard in these chapter 11 cases.

## Proposed Indemnification Provisions

38.    The Indemnification Letter[3] provides, among other things, that the Debtors will indemnify, hold harmless, reimburse, defend and provide contribution to Lazard and its affiliates and its and their respective directors, officers, members, employees, agents, and controlling persons under certain circumstances.  The terms of the Indemnification Letter are standard engagement provisions, both in chapter 11 cases and outside chapter 11, and reflect the qualifications and limits on such terms that are customary for Lazard and other similar financial advisors as approved in this and other jurisdictions.  In connection with the Application, Lazard

---

[3]  To the extent that this Application and the terms of the Indemnification Letter are inconsistent, the terms of the Indemnification Letter (as the same may be modified by the order approving this Application) shall control.

has agreed to certain modifications to the Indemnification Letter (*see* Ridings Aff. at ¶ 25),

which are reflected in the form of order attached hereto as Exhibit A and summarized as follows:

> (a)  All requests of an Indemnified Person (as defined in the Indemnification Letter) for payment of indemnity, contribution or otherwise pursuant to the Indemnification Letter shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Indemnification Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the orders of this Court.

> (b)  In no event shall an Indemnified Person be indemnified or receive contribution or other payment under the Indemnification Letter for a claim brought by the Debtors, their estates or the official committee of unsecured creditors appointed in these chapter 11 cases, to the extent that the Court determines by final order that such claim resulted from the bad faith, self dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the part of that or any other Indemnified Person; and

> (c)  In the event an Indemnified Person seeks reimbursement for attorneys' fees from the Debtors pursuant to the Indemnification Letter, the invoices and supporting time records from such attorneys shall be annexed to Lazard's own interim and final fee applications, and such invoices and time records shall be subject to the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses and the approval of this Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code.

39.    The Debtors and Lazard believe that the terms of the Indemnification

Letter are customary and reasonable for financial advisory and investment banking engagements,

both out-of-court and in chapter 11 proceedings. *See In re All American Semiconductor, Inc.,*

No. 07-12963 (Bankr. S.D. Fla May 25, 2007); *In re Atlas Worldwide Holdings, Inc.,* No. 04-

10792 (Bankr. S.D. Fla Apr. 22, 2004)*; see also In re New Century TRS Holdings, Inc.,* No. 07-

10416 (Bankr. D. Del. Apr. 25, 2007); *In re Calpine Corp.,* Case No. 05-60200 (Bankr. S.D.N.Y.

May 2, 2006). *United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d

217, 234 (3d Cir. 2003) (finding indemnification agreement between debtor and financial advisor

reasonable under section 328); *In re Comdisco, Inc.*, No 02-C-1174 2002 U.S. Dist. WL

31109431 (N.D. Ill. September 23, 2002) (mem.) (affirming order authorizing indemnification of

Lazard Frères & Co. LLC and Rothschild, Inc. by debtors and official committee of unsecured

creditors respectively); *In re Joan & David Halpern, Inc.*, 248 B.R. 43, 47 (Bankr. S.D.N.Y.

2000), *aff'd*, No. 00-3601 (JSM), 2000 Bankr. WL 1800690 (S.D.N.Y. Dec. 6, 2000).

40.    The terms of the Indemnification Letter are similar to indemnification

terms that have previously been approved by bankruptcy courts in this District and elsewhere.

*See In re Worldcom, Inc.*, 02-13533 (AJG) (Bankr. S.D.N.Y. January 14, 2003) (order

authorizing retention of Lazard under similar terms); *In re Adelphia Commc'ns Corp.*, 02-41729

(REG) (Bankr. S.D.N.Y. September 27, 2002) (order authorizing retention of Lazard on terms

including an indemnification agreement).  Accordingly, the Debtors respectfully submit that the

terms of the Indemnification Letter, with modifications described herein, are reasonable and

customary and should be approved in these.  The modifications to the Indemnification Letter are

reflected in the form of order annexed as Exhibit A.

### Notice

41.    No trustee or examiner has been appointed in these chapter 11 cases.  The

Debtors have served notice of this Motion in accordance with the procedures set forth in the

order entered on September 22, 2008 governing case management and administrative procedures

for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service;

(v) the United States Attorney for the Southern District of New York; and (vi) all parties who

have requested notice in these chapter 11 cases.  The Debtors submit that no other or further

notice need be provided.

42.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: November 13, 2008
      New York, New York

                                    Lehman Brothers Holdings, Inc.
                                    (for itself and on behalf of its affiliated
                                    Debtors and Debtors in Possession)

                            By: /s/ Bryan Marsal_____
                                     Bryan Marsal
                                     Chief Restructuring Officer

## EXHIBIT A

## Form of Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                              :
In re                                         :    Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., *et al.*       :    08-13555 (JMP)
                                              :
          Debtors.                            :    (Jointly Administered)
                                              :
------------------------------------------------------------------x

### INTERIM ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AND RULES 2014 AND 2016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING THE EMPLOYMENT AND RETENTION OF LAZARD FRERES & CO. LLC AS INVESTMENT BANKER FOR THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

Upon the application filed on November 13, 2008 (the "Application")[1] of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their

non-debtor affiliates, "Lehman"), pursuant to sections 327(a) and 328(a) of title 11 of the United

States Bankruptcy Code (the "Bankruptcy Code") and Rules 2014(a) and 2016 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authorization to employ and retain

Lazard Frères & Co. LLC ("Lazard") as investment bankers to the Debtors *nunc pro tunc* to

September 15, 2008 (the "Commencement Date"), on the terms set forth in that certain

engagement letter between the Debtors and Lazard, dated October 20, 2008, (the "Engagement

Letter"), and the related indemnification agreement between the Debtors and Lazard, dated as of

September 12, 2008, (the "Indemnification Letter" and, together with the Engagement letter, the

"Lazard Agreement"), copies of which are annexed to the Application as Exhibit B, all as more

---

[1] Capitalized terms that are used but not defined in this order have the meaning ascribed to them in the Application.

fully set forth in the Application; and upon consideration of the Affidavit of Barry W. Ridings,

Managing Director and Vice Chairman of Lazard, sworn to on November 13, 2008 (the "Ridings

Affidavit"); and due and proper notice of the Motion having been provided in accordance with

the procedures set forth in the order entered September 22, 2008 governing case management

and administrative procedures [Docket No. 285] to (i) the United States Trustee for the Southern

District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii)

the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York; and (vi) all parties who have requested

notice in these chapter 11 cases, and it appearing that no other or further notice need be provided;

and the Court having reviewed the Application and having heard the statements in support of the

relief requested therein at a hearing before the Court (the "Hearing"); and the Court having found

and determined that (a) Lazard does not hold or represent an interest adverse to the Debtors'

estates, (b) Lazard is a "disinterested person" within the meaning of section 101(14) of the

Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, (c) the terms and

conditions of the Engagement Letter and the Indemnification Letter are reasonable, (d) the relief

sought in the Application is necessary and in the best interests of the Debtors, the estates,

creditors, and all parties in interest, and (e) that the legal and factual bases set forth in the

Application establish just cause for the relief granted herein; and upon the record of the Hearing,

the Application, the Ridings Affidavit, and all proceedings had before the Court; and after due

deliberation and sufficient cause appearing therefor, it is

      ORDERED that the Application is granted on an interim basis; and it is further

      ORDERED that pursuant to sections 327(a) and 328(a) of the Bankruptcy Code

and Bankruptcy Rules 2014(a) and 2016, the Debtors are authorized to employ and retain Lazard

as their investment banker *nunc pro tunc* to the Commencement Date in accordance with the terms and conditions of the Engagement Letter, the Indemnification Letter and this Order; and it is further

ORDERED that the terms of the Engagement Letter and the Indemnification Letter, as modified herein, are approved and the Debtors will be bound by such terms, and Lazard shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Letter and the Indemnification Letter, and Lazard's compensation shall not be subject to review by the Court under section 330 of the Bankruptcy Code; *provided*, *however*, that all such fees shall be subject to, and not paid prior to, the approval of this Court in accordance with the standard set forth in section 328(a) of the Bankruptcy Code and upon proper application by Lazard in accordance with the applicable procedures set forth in the Application, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules"), and the further orders of this Court; *provided*, *however*, that Lazard (a) shall not be required to maintain time records for services rendered on behalf of the Debtors and (b) shall not be required to provide or conform to any schedule of hourly rates; *provided*, *further*, that each month Lazard will file a schedule that identifies those professionals who have provided services on behalf of the Debtors and that provides a general description of the services performed by such professionals; and it is further

ORDERED that, notwithstanding the foregoing, the United States Trustee retains all rights to object to fees payable to Lazard in connection with any Sale Transaction, any Financing or any Restructuring based on the reasonableness standard provided for in section 330

of the Bankruptcy Code; *provided*, *however*, that the number of hours expended by Lazard shall

not be the determinant of such reasonableness; and it is further

ORDERED that the provisions set forth in the Indemnification Letter are

approved and the Debtors will be bound by such terms, subject during the pendency of the

Debtors' chapter 11 cases to the following modifications to the Indemnification Letter:

(a)     All requests of an Indemnified Person (as defined in the Indemnification Letter) for payment of indemnity, contribution or otherwise pursuant to the Indemnification Letter shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Indemnification Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the orders of this Court.

(b)     In no event shall an Indemnified Person be indemnified or receive contribution or other payment under the Indemnification Letter for a claim brought by the Debtors, their estates or the official committee of unsecured creditors appointed in these chapter 11 cases, to the extent that the Court determines by final order that such claim resulted from the bad faith, self dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the part of that or any other Indemnified Person; and

(c)     In the event an Indemnified Person seeks reimbursement for attorneys' fees from the Debtors pursuant to the Indemnification Letter, the invoices and supporting time records from such attorneys shall be annexed to Lazard's own interim and final fee applications, and such invoices and time records shall be subject to the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses and the approval of this Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code; and it is further

ORDERED that to the extent that there may be any inconsistency between the

terms of the Application, the Lazard Agreement or this Order, the terms of this Order shall

govern; and it is further

ORDERED that the final hearing to consider entry of an order granting the relief

requested in the Application on a permanent basis shall be held on December 3, 2008 at 10:00

a.m. (prevailing Eastern Time); and any objections to entry of such order shall be in writing,
shall conform to the Bankruptcy Rules and the Local Bankruptcy Rules, shall set forth the name
of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed
with the Bankruptcy Court electronically in accordance with General Order M-242 (which can
be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing
system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document
Format (PDF), WordPerfect, or any other Windows-based word processing format (with two
hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the
Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601;
(ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:
Richard Krasnow, Esq. and James Grogan, Esq., attorneys for the Debtors; (iii) the Office of the
United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor,
New York, New York 10004, Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian
Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; and (iv) Milbank, Tweed,
Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis
F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official
committee of unsecured creditors appointed in these cases, so as to be filed and received by no
later than November 28, 2008, at 4:00 p.m. (prevailing Eastern Time); and it is further

ORDERED that the Debtors shall serve this Order within three business days of
its entry on (i) the U.S. Trustee, (ii) the attorneys for the Creditors' Committee, (iii) the
Securities and Exchange Commission, (iv) the Internal Revenue Service, (v) the United States
Attorney for the Southern District of New York, and (v) all parties who have requested notice in
these chapter 11 cases; and it is further

ORDERED that this Court will retain jurisdiction to construe and enforce the

Lazard Agreement and this Order.

Dated: November __, 2008
       New York, New York

_____
       UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

## Lazard Engagement Agreement

# LAZARD

BARRY W. RIDINGS
VICE CHAIRMAN OF US
INVESTMENT BANKING

LAZARD FRÈRES & CO. LLC
30 ROCKEFELLER PLAZA
NEW YORK, NY 10020
PHONE 212-632-6896
FAX 212-332-1757
barry.ridings@lazard.com

October 20, 2008

Lehman Brothers Holdings Inc.
745 Seventh Avenue
New York, New York 10019

Attention:    Bryan Marsal
              Chief Restructuring Officer

Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms, subject to the approval of the Bankruptcy Court, the understanding and agreement, effective as of September 15, 2008, between Lazard Frères & Co. LLC ("Lazard") and Lehman Brothers Holdings Inc. ("LBHI"), on behalf of itself and its controlled subsidiaries, other than Lehman Brothers International (Europe) and its subsidiaries (collectively with LBHI, the "Company").

*Assignment Scope:*

The Company has retained Lazard as its investment banker to advise it in connection with any Restructuring, any Sale Transaction and any Financing (each as defined below) on the terms and conditions set forth herein, subject to the approval of the Bankruptcy Court. As used in this Agreement, the term "Restructuring" shall mean, any transaction or series of transactions involving the restructuring, reorganization and/or recapitalization of any portion of the Company's outstanding indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, unfunded pension and retiree medical liabilities, funding obligations or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through amendments, waivers and/or consents from the holders or beneficiaries of Existing Obligations (collectively, the "Stakeholders"); rescheduling of the maturities of Existing Obligations; a change in interest rates; repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests  or other similar transaction or series of transactions; or any plan of reorganization approved by the Bankruptcy Court. As used in this Agreement, the term "Sale Transaction" means any transaction or series of transactions involving an acquisition, purchase, sale, merger, consolidation, exchange, business combination or other transaction pursuant to which all or any portion of the assets, voting power, securities or other interests or other obligations of the Company or any Company entity or business are, directly or indirectly, combined with, transferred to or assumed by another entity or group, except for (i) the sales of Eagle Energy, the Indian processing center, R/3 and

LAZARD

any other transaction with respect to which LBHI and Lazard mutually agree that Lazard shall not provide services (it being understood that Lazard shall not unreasonably withhold its agreement not to provide services for transactions where it would not be appropriate for Lazard to advise). As used in this Agreement, the term "Financing" means any transaction or series of transactions involving the public or private issuance, sale, or placement of newly issued (or treasury) equity, equity-linked, or debt securities, instruments, or obligations of the Company, including any exit financing in connection with a case under the Bankruptcy Code.

By signing this Agreement, subject to the approval of the Bankruptcy Court, we hereby accept our appointment as your investment banker under the terms hereof.

*Description of Services:*

1. Lazard agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services as LBHI may reasonably request, including:

    (a)    Reviewing and analyzing the business, operations and financial projections of the Company;

    (b)    Assisting the Company in identifying and evaluating candidates for potential Sale Transactions and advising the Company in connection with negotiations and aiding in the consummation of any Sale Transaction;

    (c)    Assisting the Company in the development of a Restructuring plan;

    (d)    Advising and assisting the Company in evaluating potential Financing transactions by the Company, and subject to Lazard's agreement to act (and if requested by Lazard the execution of appropriate agreements), contacting potential sources of capital and assisting the Company in implementing such a Financing;

    (e)    Advising the Company on tactics and strategies for negotiating with Stakeholders;

    (f)    Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders or other appropriate parties in connection with any Restructuring, Sale Transaction or Financing;

    (g)    Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Restructuring, Sale Transaction or Financing;

    (h)    Assisting the Company in preparing documentation within our area of expertise that is required in connection with any Restructuring, Sale Transaction or Financing;

LAZARD

(i)     Attending meetings of the Company's Board of Directors and rendering advice with respect to matters on which we have been engaged to advise the Company;

(j)     Providing testimony, as necessary, with respect to matters on which we have been engaged in any proceeding before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and

(k)     Providing the Company with other financial restructuring advice.

*Fees:*

2.  As consideration for the services to be provided, the Company shall pay Lazard the following fees:

(a)     A monthly fee (the "Monthly Fee"), payable on the 1st of each month of our engagement hereunder, of $400,000 per month for the 24-month period commencing on October 1, 2008 through (and including) September 1, 2010 and then decreasing to $250,000 per month thereafter until the earlier of effectiveness of a plan of reorganization or termination pursuant to Section 10;

(b)     With respect to Sale Transactions:

(i)     A fee equal to $5,000,000, payable upon consummation of a Sale Transaction pursuant to which certain North American assets are sold to Barclays Capital, Inc. or any of its affiliates (the "Barclays Sale Fee");

(ii)    A fee, payable upon consummation of a Sale Transaction pursuant to which the Company's Investment Management Division, which includes Neuberger Berman and the fixed income and certain alternative asset management businesses of the Company, is sold, equal to $5,000,000 plus 1% of the amount, if any, by which the Aggregate Consideration (as defined on Schedule A) for such transaction exceeds that proposed in the purchase agreement submitted by Bain Capital and Hellman & Friedman on September 29, 2008 (the "Neuberger Berman Sale Fee"); and

(iii)   A fee, payable upon consummation of any Sale Transaction (other than those described in clauses (b)(i) and (ii) above), equal to the sum of (A) 85% of the applicable percentage, as set forth on Schedule A, of the Aggregate Consideration involved in such transaction; plus, (B) .1% of the aggregate amount of any unfunded obligations or commitments, if any, that are reduced, eliminated or transferred, directly or indirectly, in connection with the transaction, up to a maximum payment of $1,000,000 pursuant to

LAZARD

this clause (B) (each, together, an "Other Sale Fee"); The Company agrees to direct any buyer to pay the Other Sale Fee directly to Lazard upon consummation of the applicable transaction as a deduction from the proceeds of the Sale Transaction; provided, that, for the avoidance of any doubt, the foregoing shall only limit the Company's obligation to pay Lazard to the extent that the Other Sale Fee is actually so paid by the buyer;

(c)     If a plan of reorganization is approved by the Bankruptcy Court whereby any Stakeholders receive a distribution (whether from an operating company, liquidating trust or otherwise), a fee, payable upon effectiveness of the plan of reorganization, equal to .5% of any cash and the fair market value of any property distributed or distributable to the Stakeholders in connection with the plan of reorganization (adjusted as appropriate so as not to double count any consideration received by the Stakeholders from any Sale Transaction), subject to a maximum fee of $17,500,000.

(d)     A fee, payable upon consummation of any Financing (for which Lazard has provided services), equal to the amount set forth in Schedule B (the "Financing Fee").

(e)     To the extent that LBHI requests, and Lazard agrees to provide, services other than those set forth in Section 1 above, customary fees with respect thereto shall be mutually agreed by LBHI and Lazard in good faith and subject to approval by the Bankruptcy Court;

(f)     In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Company shall promptly reimburse Lazard for all: (A) reasonable expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonable fees and expenses, including expenses of outside counsel retained with the prior consent of LBHI (not to be unreasonably withheld), if any; and

(g)     As part of the compensation payable to Lazard hereunder, the Company agrees that the indemnification, contribution and related provisions entered into by the Company and Lazard dated September 12, 2008 (the "Indemnification Letter") shall also apply hereto and are incorporated herein in their entirety.

(h)     All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

_Retention in Chapter 11 Proceedings:_

3.  LBHI agrees that it will use its reasonable best efforts to obtain prompt authorization

LAZARD

from the Bankruptcy Court to retain Lazard on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Lazard agrees that during the pendency of LBHI's bankruptcy proceedings, it shall file interim and final applications for allowance of the fees and expenses payable to it by LBHI under the terms of this Agreement, pursuant to the applicable Federal Rules of Bankruptcy Procedure and the local rules and order of the Bankruptcy Court. LBHI shall supply Lazard with a draft of the application and proposed retention order authorizing Lazard's retention in advance of the filing to enable Lazard and its counsel to review and comment thereon. Lazard shall be under no obligation to provide any services under this Agreement unless Lazard's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is acceptable to Lazard. In so agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, LBHI acknowledges that it believes that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of LBHI in pursuing any transaction, that the value to LBHI of Lazard's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Sale Transaction fees, Financing Fees and the Restructuring fee are reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided hereunder.

*Other:*

4. No fee payable to any other person, by you or any other party, shall reduce or otherwise affect any fee payable hereunder to us.

5. The Company will furnish or cause to be furnished to Lazard such current and historical financial information and other information regarding the business and assets of the Company as Lazard may request in connection with this engagement. The Company represents and warrants to Lazard that all of the foregoing information will be accurate and complete at the time it is furnished, and agrees to keep Lazard advised of all developments materially affecting the Company or its financial position. Unless required by subpoena or other regulatory process, we will not disclose to any third party (other than our counsel or other agents under a duty of confidentiality or as otherwise agreed by you) any portion of the information provided by the Company that is not publicly available, and we will not use such information for any purpose other than pursuant to our engagement hereunder. You also agree to use reasonable efforts to cause each potential counterparty to provide us with such information as we reasonably deem necessary for our financial review and analysis. In performing its services pursuant to this Agreement, including in connection with any analysis, Lazard shall be entitled to rely upon information furnished to it by the Company, any counterparty or that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. Lazard will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party, or opine or give advice to the Board of Directors, the Company or management or shareholders with respect thereto.

6. In performing its services pursuant to this Agreement, Lazard is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any

LAZARD

business strategy or to effect (or not to effect) any Sale Transaction, any Restructuring, any Financing or other transaction. Lazard shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Lazard be responsible for providing any tax, legal or other specialist advice.

7. It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Lazard or any of its affiliates or related parties to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

8. On September 12, 2008, the Company and Lazard entered into an engagement agreement (the "Pre-Filing Engagement") and the Indemnification Letter. This Agreement supersedes in entirety the Pre-Filing Engagement, which is terminated in its entirety. Lazard waives payment of any fee or expense amounts payable pursuant to the Pre-Filing Engagement. Notwithstanding the foregoing, the Indemnification Letter remains in full force and effect and shall survive any termination or expiration of this Agreement.

9. In order to coordinate our efforts on behalf of LBHI during the period of our engagement hereunder, LBHI will promptly inform Lazard of any discussions, negotiations, or inquiries regarding any potential Sale Transaction, Financing or Restructuring.

10. Our engagement hereunder will automatically expire upon effectiveness of a plan of reorganization and may be earlier terminated by you or us at any time without liability or continuing obligation to you or us, except that following such termination and any expiration of this Agreement (a) we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by LBHI or any expiration of this Agreement, we shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect to any Sale Transaction, any Financing, and any Restructuring announced or resulting from negotiations occurring during the period from the date hereof until one year following such termination or expiration, as the case may be.

11. LBHI recognizes that Lazard has been engaged only by LBHI and that the engagement of Lazard is not deemed to be on behalf of and is not intended to confer rights upon any shareholder, partner or other owner of the Company, any creditor, lender or any other person. Unless otherwise expressly agreed, no one, other than senior management or the Board of Directors of LBHI is authorized to rely upon the engagement of Lazard or any statements, advice, opinions or conduct by Lazard. Without limiting the foregoing, any advice, written or oral, rendered to LBHI's Board of Directors or management in the course of the engagement of Lazard are solely for the purpose of assisting senior management or the Board of Directors of LBHI in evaluating any Sale Transaction, any Financing, and any Restructuring and does not constitute a recommendation to any stakeholder of the Company in connection with any Sale Transaction, any Financing, or Restructuring. Any advice, written or oral, rendered by Lazard may not be disclosed publicly or made available to third parties without the prior written consent

LAZARD

of Lazard. Notwithstanding the foregoing, nothing herein shall prohibit you from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure. Lazard's role herein is that of an independent contractor; nothing herein is intended to create or shall be construed as creating a fiduciary relationship between Lazard and the Company or its Boards of Directors.

12. In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates and related parties and may share with any such entity any information concerning the Company, provided that Lazard and such entities shall hold any nonpublic information confidential in accordance with their respective customary policies relating to non-public information. Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its costs and expenses on the same basis as Lazard.

13. The provisions hereof shall inure to the benefits of and be binding upon the successors and assigns of the Company, Lazard and any other person entitled to indemnity under the Indemnification Letter. Lehman Brothers Holdings Inc. is executing this agreement on behalf of the Company and agrees that the Company's obligations hereunder shall be joint and several. This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto.

14. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. The Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Lazard pursuant to, or the performance by Lazard of the services contemplated by, this Agreement.

LAZARD

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By_____
   Barry Ridings
   Vice Chairman of US Investment Banking

AGREED TO AND ACCEPTED
as of the date first above written:

LEHMAN BROTHERS HOLDINGS INC. on behalf of itself
and its controlled subsidiaries, other than Lehman Brothers
International (Europe) and its subsidiaries

By_____
       Bryan Marsal
       Chief Restructuring Officer

LAZARD

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By_____
          Barry Ridings
          Vice Chairman of US Investment Banking

AGREED TO AND ACCEPTED
as of the date first above written:

LEHMAN BROTHERS HOLDINGS INC. on behalf of itself
and its controlled subsidiaries, other than Lehman Brothers
International (Europe) and its subsidiaries

By_____
      Bryan Marsal
      Chief Restructuring Officer

LAZARD

Schedule A

| Aggregate Consideration Involved in Sale Transaction[1] (Millions) | Amount (Thousands) | Percent of Aggregate Consideration |
|---|---|---|
| $20,000 or higher | $34,000 or higher | 0.170 |
| 15,000 | 30,000 | 0.200 |
| 12,500 | 28,750 | 0.230 |
| 10,000 | 25,000 | 0.250 |
| 9,000 | 24,300 | 0.270 |
| 8,000 | 23,200 | 0.290 |
| 7,500 | 22,500 | 0.300 |
| 7,000 | 22,400 | 0.320 |
| 6,000 | 20,100 | 0.335 |
| 5,000 | 17,500 | 0.350 |
| 4,000 | 16,000 | 0.400 |
| 3,000 | 13,500 | 0.450 |
| 2,000 | 10,000 | 0.500 |
| 1,000 | 7,000 | 0.700 |
| 900 | 6,660 | 0.740 |
| 800 | 6,240 | 0.780 |
| 700 | 5,740 | 0.820 |
| 600 | 5,160 | 0.860 |
| 500 | 4,500 | 0.900 |
| 400 | 4,000 | 1.000 |
| 300 | 3,300 | 1.100 |
| 200 | 2,600 | 1.300 |
| 100 | 1,750 | 1.750 |
| 50 or lower | 1,100 or lower | 2.200 |

For purposes hereof, the term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid or payable (including amounts paid into escrow) in connection with the Sale Transaction (or any related transaction), including amounts paid or payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money or other liabilities of the Company or relevant Company entity, as applicable, and the Company's pro rata portion (based on its ownership) of any indebtedness for borrowed money or other liabilities of any other entity in which the Company has an ownership interest, in each case, that is eliminated, reduced or transferred, directly or indirectly, in connection with a Sale Transaction. Aggregate Consideration shall also include the aggregate amount of any dividends or other distributions declared by the Company or relevant Company entity, as applicable, after the date hereof other than normal quarterly cash dividends and, in the case of a sale of assets, the value of any related

---

[1] For a transaction size in between the aggregate considerations specified above, the fee would be determined by interpolating between the two closest percentages.

LAZARD

current assets that are not sold by the Company or relevant Company entity, as applicable. For purposes of calculating Aggregate Consideration, the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the average closing price in such market for the 10 trading days prior to the closing of the Sale Transaction (the "Valuation Date"); and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date and any restricted stock (i.e., stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock. Aggregate Consideration shall also be deemed to include pension liabilities and guarantees of monies borrowed assumed directly or indirectly by the third party. If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by us in good faith and paid to us upon consummation of the Sale Transaction.

## SCHEDULE B

### Fees for Financings

The following table outlines the Financing Fees. The total Financing Fee shall be calculated by multiplying the applicable fee percentage by the total gross proceeds raised in each Financing.

| Funds Raised | Fee |
| --- | --- |
| Senior Secured Debt | 1.50% |
| Senior Debt | 3.00% |
| Subordinated Debt | 3.50% |
| Convertible Debt | 3.75% |
| Convertible Preferred Stock | 5.00% |
| Common Stock | 6.00% |

# LAZARD

LAZARD FRÈRES & CO. LLC
30 ROCKEFELLER PLAZA
NEW YORK, NY 10020
PHONE 212-632-6000
www.lazard.com

September 12, 2008

Lehman Brothers Holdings Inc.
745 Seventh Avenue
New York, New York 10019

Attention:    Richard S. Fuld, Jr.
              Chairman and Chief Executive Officer

Ladies and Gentlemen:

In connection with our engagement to advise and assist the Board of Directors of Lehman Brothers Holdings Inc. (together with its subsidiaries and any entity formed or used for purposes of a transaction, "you") with the matters set forth in the engagement letter of even date herewith, you and we are entering into this letter agreement. It is understood and agreed that in the event that Lazard Frères & Co. LLC or any of our affiliates, or any of our or their respective directors, officers, members, employees, agents or controlling persons, if any (each of the foregoing, including Lazard Frères & Co. LLC, being an "Indemnified Person"), become involved in any capacity in any action, claim, proceeding or investigation brought or threatened by or against any person, including your securityholders, related to, arising out of or in connection with our engagement, you will promptly reimburse each such Indemnified Person for its reasonable out-of-pocket legal and other expenses (including the cost of any investigation and preparation) as and when they are incurred in connection therewith. You will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expenses to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with our engagement, whether or not any pending or threatened action, claim, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expenses is initiated or brought by you or on your behalf and whether or not in connection with any action, claim, proceeding or investigation in which you or any such Indemnified Person are a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted from such Indemnified Person's bad faith and willful misconduct or gross negligence. You also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to you or your securityholders or creditors related to, arising out of or in connection with our engagement except to the extent that any loss, claim, damage or liability is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted from such Indemnified Person's bad faith and willful misconduct or gross negligence.

LAZARD

If for any reason the foregoing indemnification is held unenforceable (other than due to a failure to meet the standard of care set forth above), then you shall contribute to the loss, claim, damage, liability or expense for which such indemnification is held unenforceable in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by you and your securityholders and creditors on the one hand and the Indemnified Persons on the other hand in the matters contemplated by our engagement as well as the relative fault of yourselves and such persons with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations. You agree that for the purposes hereof the relative benefits received, or sought to be received, by you and your securityholders and creditors and the Indemnified Persons shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid by or to you and your securityholders and creditors, as the case may be, pursuant to any transaction (whether or not consummated) for which we have been engaged to perform investment banking services bears to (ii) the fees paid or proposed to be paid to us in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall we or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to us for such investment banking services. Your reimbursement, indemnity and contribution obligations under this agreement shall be in addition to any liability which you may otherwise have, shall not be limited by any rights we or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of yourselves, ourselves, and any other Indemnified Persons.

You agree that, without our prior written consent (which will not be unreasonably withheld), you will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution could be sought hereunder (if we or any other Indemnified Persons are an actual or potential party to such claim, action, proceeding or investigation or if such settlement, compromise or consent attributes any liability or fault to any Indemnified Person), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby. Lehman Brothers Holdings Inc. is executing this agreement on behalf of itself and its subsidiaries and any entity formed or used for purposes of a transaction, and you agree that your obligations hereunder shall be joint and several. This agreement and any claim related directly or indirectly to this agreement shall be governed and construed in accordance with the laws of the State of New York (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of us hereby submits to the jurisdiction of such courts. You hereby waive on behalf of yourself and your successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable. You (on your own behalf and, to the extent permitted by applicable law, on behalf of your securityholders

-2-

# LAZARD

and creditors) waive all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to, arising out of or in connection with our engagement. This agreement shall remain in effect indefinitely, notwithstanding any termination or expiration of our engagement.

Very truly yours,

LAZARD FRERES & CO. LLC

By _____
  Gary W. Parr
  Deputy Chairman

AGREED TO AND ACCEPTED
as of the date first
above written:

LEHMAN BROTHERS HOLDINGS INC.

By _____
  ~~Richard S. Fuld, Jr.~~
  ~~Chairman and Chief Executive Officer~~

  STEVEN BERHENFELD

-3-

## EXHIBIT C

## Affidavit of Barry W. Ridings

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Shai Y. Waisman, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- x
                                              :
**In re**                                     :    **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*   :    **08-13555 (JMP)**
                                              :
            **Debtors.**                      :    **(Jointly Administered)**
                                              :
----------------------------------------------------------------- x

**AFFIDAVIT OF BARRY W. RIDINGS**
**IN SUPPORT OF APPLICATION PURSUANT TO**
**SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY**
**CODE AND BANKRUPTCY RULES 2014(a) AND 2016 FOR**
**AUTHORIZATION TO EMPLOY AND RETAIN LAZARD**
**FRÈRES & CO. LLC AS INVESTMENT BANKERS FOR THE DEBTORS**

STATE OF NEW YORK      )
                       )  ss.:
COUNTY OF NEW YORK   )

            Barry W. Ridings, being duly sworn according to law, upon his oath,

deposes and says:

            1.      I am a Managing Director and Vice Chairman of Investment

Banking of the firm Lazard Frères & Co. LLC ("Lazard" or the "Firm"), which has its

principal office at 30 Rockefeller Plaza, New York, New York 10020.  I am authorized to

execute this Affidavit on behalf of Lazard.  Unless otherwise stated in this Affidavit, I

have personal knowledge of the facts set forth herein.

2.      This Affidavit is being submitted in support of the application (the

"Application"), filed contemporaneously herewith, of Lehman Brothers Holdings Inc.

("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors

and debtors in possession (together, the "Debtors" and, collectively with their non-debtor

affiliates, "Lehman"), pursuant to sections 327(a) and 328(a) of title 11 of the United

States Code (the "Bankruptcy Code") and rules 2014(a) and 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for authorization to employ and retain

Lazard as investment banker to the debtors *nunc pro tunc* to September 15, 2008.

3.      Lazard is the US operating subsidiary of a preeminent international

financial advisory and asset management firm.  Lazard, together with its predecessors and

affiliates, has been advising clients around the world for over 150 years.  Lazard has

dedicated professionals who provide restructuring services to its clients.  Lazard is a

broker-dealer registered with the United States Securities and Exchange Commission.

4.      Certain managing directors, directors, vice presidents and

associates of Lazard have extensive experience working with financially troubled

companies in complex financial restructurings out-of-court and in chapter 11

proceedings.  Lazard and its principals have been involved as advisor to debtor, creditor

and equity constituencies and government agencies in many reorganization cases.  Since

1990, Lazard's professionals have been involved in over 250 restructurings, representing

over $350 billion in debtor assets.

5.      Lazard professionals have been employed as financial advisors and

investment bankers in a number of troubled company situations, including, among others,

chapter 11 cases in the Southern District of New York such as Worldcom, Adelphia

Communications, Parmalat USA, Calpine, Tower Automotive, Northwest Airlines,

Genuity, and Wellman.  Also relevant with respect to Lazard's knowledge of the Debtors

industry and business, Lazard recently represented Bear Stearns in its sale to JP Morgan

Chase.

6.      In connection with its proposed retention by the Debtors in these

cases, Lazard undertook to determine whether it had any conflicts or other relationships

that might cause it not to be disinterested or to hold or represent an interest adverse to the

Debtors.  In connection with this inquiry, Lazard obtained from the Debtors and/or their

representatives the names of individuals and entities that may be parties-in-interest in

these chapter 11 cases (the "Potential Parties-in-Interest") and such parties are listed on

Schedule 1 annexed hereto.  Lazard has researched its electronic client files and records

to determine its connections with the Debtors and any Potential Parties-in-Interest.  To

the best of my knowledge, Lazard has not been retained to assist any entity or person

other than the Debtors on matters relating to, or in connection with, these chapter 11

cases.

7.      To the best of my knowledge and belief, insofar as I have been

able to ascertain, none of the principals or employees of Lazard working on or connected

to this engagement on the Debtors' behalf has had, or will have in the future, direct

contact concerning these chapter 11 cases with the Potential Parties-in-Interest herein, the

United States Trustee, or anyone employed in the Office of the United States Trustee,

other than in connection with this engagement for the Debtors.

8.      To the extent that I have been able to ascertain that Lazard has

been retained to represent, since 2003, any of the Potential Parties-in-Interest in matters

unrelated to these cases, such parties are listed on Schedule 2 annexed hereto.  Lazard's

representation of each entity listed on Schedule 2 is only on matters that are unrelated to

the Debtors or these cases.  Other than as listed on Schedule 2, I am unaware of any

relationships that Lazard has had since 2003 with the Potential Parties-in-Interest herein.

Given the size of the Firm and the breadth of Lazard's client base, however, it is possible

that other principals or employees of Lazard may have been retained by one or more of

the Potential Parties-in-Interest in unrelated matters without my knowledge.  To the

extent that Lazard discovers any such additional relationships, it will supplement this

disclosure to the Court promptly.  Additionally, as noted above, Lazard is the US

operating subsidiary of an international financial advisory and asset management firm

and thus has several legally separate and distinct affiliates.  Although employees of such

affiliates may assist Lazard at various times in connection with Lazard's engagement, as

Lazard is the only entity being retained by the Debtors, we have researched only the

electronic client files and records of Lazard, not all of its affiliates, to determine

connections with any Potential Parties-in-Interest.

　　　　　9.　　　　Lazard began working with LBHI in July 2008.  At that time,

LBHI's management was exploring several different options to deal with its liquidity

crisis, including selling its investment management division and spinning off certain

illiquid mortgage-backed assets.  On September 12, 2008, an engagement letter between

Lazard and LBHI was executed formalizing Lazard's role as financial advisor.  Lazard

did not receive any payments for services prior to the commencement of these Chapter 11

cases.  Lazard has waived any rights to fees or expense payments pursuant to its

prepetition engagement letter.

10.     Lazard has an asset management affiliate, Lazard Asset Management LLC ("LAM").  While Lazard receives payments from LAM generated by LAM's business operations, LAM is operated as a separate and distinct affiliate and is separated from the Firm's other businesses, including Lazard's financial advisory services group and its managing directors and employees advising the Debtors, by an ethical wall.  As part of its regular business operations, LAM may act as investment advisor for or trade securities (including in discretionary client accounts, and through LAM's operation of hedge funds and mutual funds, in which cases investment decisions are made by LAM) including on behalf of creditors, equity holders or other parties in interest in these cases, and Lazard or its affiliates, managing directors and employees.  Some of these LAM accounts and funds may now or in the future hold debt or equity securities of the Debtors.  Lazard has in place compliance procedures to ensure that no confidential or non-public information concerning the Debtors has been or will be available to employees of LAM.[1]

11.     Prior to September 12, 2008, LAM entered into a Prime Brokerage Agreement with Lehman Brothers Inc. ("LBI") for certain accounts involving investment

---

[1] Effective May 10, 2005, Lazard transferred its alternative investments business (which includes fund management and investment) and capital markets business (which includes equity research, syndicate, sales and trading) to new privately-held companies, Lazard Alternative Investments LLC ("LAI") and Lazard Capital Markets LLC ("LCM"), respectively, which are neither owned nor controlled by Lazard.  LAI and LCM are owned and operated by LFCM Holdings LLC ("LFCM"), which is owned in large part by certain Lazard managing directors.  LFCM is separate from Lazard and its businesses, including its financial advisory services group and its managing directors and employees advising the Debtors.  LFCM does not hold any proprietary interest in any of the Debtors' debt or equity securities.  Potential Parties-in-Interest may be customers of LFCM or investors in funds managed by subsidiaries of LFCM.  In the ordinary course of its business, LCM has acted as a co-manager with LBI on various underwritten securities offerings, including several offerings that closed prior to the commencement of these Chapter 11 cases, but for which LBI has not yet distributed underwriting commissions to LCM or the other members of the underwriting syndicate.  Pursuant to a business alliance agreement between Lazard and LCM, Lazard receives a portion of the underwriting commissions paid to LCM.

strategies managed by LAM and funded with "<u>seed</u>" money provided by Lazard.  We

understand that LBI moved certain assets in the accounts to Lehman Brothers

International Europe ("<u>LBIE</u>").  On September 9, 2008, LAM selected a new prime

broker and requested a transfer of such accounts to the new prime broker.  On

September 12, 2008, certain security positions held in the accounts were transferred to

the new prime broker, but LBIE retained certain other positions and cash collateral with

an aggregate value of approximately $11.4 million.  Consequently, LAM may have a

claim against LBIE and/or LBI in the amount of approximately $11.4 million.[2]

12.     Lazard has provided and agrees to continue to provide assistance to

the Debtors in accordance with the terms and conditions set forth in the Application, the

Engagement Letter and the Indemnification Letter, which are annexed to the Application

as Exhibit B.  Accordingly, I make this Affidavit in support of an order authorizing such

retention.

13.     All of the services that the Firm will provide to the Debtors will be

(i) at the request of the Debtors and (ii) performed in accordance with customary market

practice of the investment banking and financial advisory profession.

14.     Based upon the foregoing, I believe Lazard is disinterested as

defined in section 101(14) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>")

and does not hold or represent an interest adverse to the Debtors or their estates.

---

[2] Lazard has been retained by LBHI, and not by LBIE.  LBIE is currently involved in a judicial proceeding
in the United Kingdom.  Under the terms of Lazard's engagement letter with LBHI, Lazard will not
represent the Debtors in connection with any matter relating to LBIE.

15.     It is the intention of Lazard to seek compensation for its services as described in the Application and the Engagement Letter in accordance with the Bankruptcy Code, the Bankruptcy Rules, the United States Trustees' Guidelines and any and all rules and orders of this Court; *provided, that,* as described in the Application, Lazard shall not be required to maintain time records for services rendered on behalf of the Debtors.  Each month, however, Lazard will file a schedule that (a) identifies those professionals who have provided services on behalf of the Debtors, and (b) provides a general description of the services performed by such professionals.

16.     The Fee and Expense Structure described in the Application is comparable to compensation generally charged by investment banking firms of similar stature to Lazard and for comparable engagements, both in and out of court.  The Fee and Expense Structure is also consistent with Lazard's normal and customary billing practices for cases of this size and complexity that require the level and scope of services provided here.  In my opinion, the Fee and Expense Structure is reasonable and at favorable market rates.  For example, the Barclays Sale Fee and the pending Neuberger Berman Sale Fee each represent approximately .3% of the proceeds to the Debtors.  Based on my experience, Lazard's fees, therefore, compare very favorably and are less than half of the average fee paid to investment banks of .7% for mergers and acquisitions in non-bankruptcy transactions between $1.5 billion and $2.0 billion in 30 transactions completed over the last 5 years.

17.     With respect to other potential Sale Transactions, Lazard has agreed to seek compensation equal to 85% of the fees that Lazard typically charges for merger and acquisition transactions.  The Debtors thus benefit in two ways.  First, Lazard

has applied a 15% discount to the merger and acquisition fee Lazard typically charges its

clients.  Second, Lazard expects to be available for all sale assignments, including those

that might be less desirable due to the level of difficulty or other such factors.

18.    With respect to the fees payable in connection with a plan of

reorganization, Lazard's fee is comparable to the fees charged by investment banks in

other large multi-billion dollar chapter 11 cases such as, Conseco, United Airlines,

Parmalat, Calpine, WorldCom, and Adelphia.  The fee also includes a formula based on

creditor recovery and has a fee cap which puts an upward limit on the fee payable to

Lazard.  In addition, fees payable in connection with a chapter 11 plan will be adjusted in

respect of certain Sale Transactions in order to prevent the Debtors from paying duplicate

fees.

19.    Lazard has advised the Debtors that it is not the general practice of

investment banking firms to keep detailed time records similar to those customarily kept

by attorneys.  While in many instances Lazard has maintained time records in bankruptcy

cases, Lazard believes in this case it should be excused from this practice given the size,

complexity and broad scope of this case, which is the largest chapter 11 case ever filed.

Most professionals within Lazard, including most of the large number of professionals

that Lazard has involved in this case, do not keep time records in connection with the

performance of their services.  In order to demonstrate the services provided by Lazard to

the Debtors, each month Lazard will file a schedule that identifies those professionals

who have provided services on behalf of the Debtors and that provides a general

description of the services performed by such professionals.

20.    Lazard also will seek reimbursement for reasonable out-of-pocket expenses, and other fees and expenses, including reasonable expenses of counsel, if any. Lazard will follow its customary expense reimbursement guidelines and practices in seeking expense reimbursement from the Debtors.

21.    Lazard charges its clients for reasonable expenses associated with an assignment. Except as necessary to comply with an applicable administrative order, all such expense billings are in accordance with the Firm's customary practices.

22.    The hours worked, the results achieved, and the ultimate benefit to the Debtors of the work performed by Lazard in connection with its engagement may vary and the Debtors and Lazard have taken this into account in setting Lazard's compensation. In order to induce Lazard to do business with the Debtors in bankruptcy, the compensation structure was established to reflect the difficulty of the extensive assignments Lazard expects to undertake and the potential for failure.

23.    Lazard's restructuring expertise, mergers and acquisitions capabilities, as well as its capital markets knowledge and financing skills, some or all of which may be required by the Debtors during the term of Lazard's engagement, were important factors in determining the Fee and Expense Structure (as defined in the Application) and, the ultimate benefit to the Debtors of Lazard's services cannot be measured merely by reference to the number of hours to be expended by Lazard's professionals in the performance of such services.

24.    The Fee and Expense Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Lazard and its professionals, and in light of the fact that such commitment

may foreclose other opportunities for Lazard and that the actual time and commitment

required of Lazard and its professionals to perform services hereunder may vary

substantially from week to week or month to month, creating "peak load" issues for the

firm.

       25.     As part of the overall compensation payable to Lazard under the

terms of the Engagement Letter, the Debtors have agreed to certain indemnification and

contribution obligations as described in the Indemnification Letter, subject to certain

modifications described more fully below.  Such provisions are customary and reasonable

for financial advisory and investment banking engagements, both out-of-court and in

chapter 11.  Although the provisions set forth in the Indemnification Letter have been

agreed to by the Parties, in order to comply with all applicable statutes, orders, rules, and

guidelines during the pendency of the Debtors' chapter 11 cases, Lazard has agreed to the

following modifications with respect to the Indemnification Letter:

    a.    All requests of an Indemnified Person (as defined in the Indemnification
Letter) for payment of indemnity, contribution or otherwise pursuant to
the Indemnification Letter shall be made by means of an interim or final
fee application and shall be subject to the approval of, and review by, the
Court to ensure that such payment conforms to the terms of the
Indemnification Letter, the Bankruptcy Code, the Bankruptcy Rules, the
Local Bankruptcy Rules and the orders of this Court.

    b.    In no event shall an Indemnified Person be indemnified or receive
contribution or other payment under the Indemnification Letter for a claim
brought by the Debtors, their estates or the official committee of
unsecured creditors appointed in these chapter 11 cases, to the extent that
the Court determines by final order that such claim resulted from the bad
faith, self dealing, breach of fiduciary duty, if any, gross negligence or
willful misconduct on the part of that or any other Indemnified Person;
and

    c.    In the event an Indemnified Person seeks reimbursement for attorneys'
fees from the Debtors pursuant to the Indemnification Letter, the invoices

and supporting time records from such attorneys shall be annexed to Lazard's own interim and final fee applications, and such invoices and time records shall be subject to the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses and the approval of this Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code.

I declare under the penalty of perjury that the forgoing is true and correct, to the best of my knowledge.

LAZARD FRERES & CO. LLC

By: /s/ Barry W. Ridings
    Name:  Barry W. Ridings
    Title:    Managing Director and
           Vice Chairman of Investment Banking

Sworn and subscribed to before me, a notary public for the State of New York, County of New York this 13th day of November, 2008

[/s/ Hanna Murnane            ]
Hanna Murnane
Notary Public

HANNA MURNANE
Notary Public, State of New York
No. 41-4729327
Qualified in Queens County
Commission Expires March 30, 2010

## SCHEDULE 1

**Schedule 1**

**Potential Parties in Interest**

**Lehman Brothers Holdings Inc., et al**

## 50 Largest Bond Holders

1. PIMCO Advisors LP
2. Barclays Global Fund Advisors
3. Vanguard Group Incorporated
4. UBS Investment KAG
5. Franklin Advisors Inc.
6. American Life Insurance Company
7. Capital Research and Management
8. Fidelity Management and Research
9. Metropolitan Life Insurance Company
10. Federated Investors
11. Loomis Sayles & Company L.P.
12. Sun Life Assure Co. of Canada
13. Phillips Hager & North Investment Management
14. United States – Indices
15. Alpha Mutual Fund Management
16. Teachers Insurance and Annuity Association
17. Northwest Mutual Life Insurance Company
18. AXA Equitable Life Insurance Company
19. BBVA Gestion SA SGIIC (Spain)
20. Allianz Life Insurance Company of North America
21. Prudential Insurance Company of America
22. Riversource Life Insurance Company
23. Van Kampen Asset Management
24. Zurich American Insurance Company
25. AIG Annuity Insurance Company
26. Jackson National Life Insurance
27. John Hancock Life Insurance Company
28. Hartford Life Insurance Company
29. ALFA Mutual Fire Insurance Company
30. PIMCO Funds Global Investors
31. Advanced Series Trust
32. AETNA Life Insurance Company
33. NATIXIS  Asset Management Advisors
34. Guardian Life Insurance Company
35. T. Rowe Price Associates
36. Principal Life Insurance Company
37. Medical Liability Mutual Insurance Company
38. Western Asset Management Company

39. Continental Casualty Company
40. John Hancock Investment Management Services
41. Franklin Templeton Investments
42. Thrivent Financial for Lutherans
43. Metlife Insurance Company of Connecticut
44. Transamerica Life Insurance Company
45. Metropolitan West Capital Management
46. ING Investment LLC
47. Prudential Financial Inc.
48. American Family Life Assurance Company
49. Blackrock Advisors
50. Liberty National Life Insurance Company

## 100 Largest Unsecured Creditors other than Bondholders

1. Citibank, NA
2. The Bank of New York
3. Aozora Bank
4. BNP Paribas
5. Mizuho Corporate Bank Ltd.
6. Citibank N.A. Hong Kong Branch
7. Shinsei Bank Ltd.
8. UFJ Bank Limited
9. Sumitomo Mitsubishi Banking Corp
10. Svenska Handelsbanken
11. Lloyds Bank, PLC
12. KBC Bank
13. Shinkin Central Bank
14. Commonwealth Bank of Australia, Tokyo Branch
15. The Bank of Nova Scotia
16. Chuo Mitsui Trust & Banking
17. Hua Nan Commercial Bank, Ltd
18. Bank of China, New York Branch
19. CW Lending II Limited
20. Nippon Life Insurance Co.
21. Microsoft Licensing, GP
22. ANZ Banking Group Limited
23. Dimension Data
24. Standard Chartered Bank
25. First Commercial Bank Co., Ltd, New York Agency
26. Bank of Taiwan, New York Agency
27. DnB NOR Bank ASA
28. Australia and New Zealand Banking Group Limited
29. HSBC Bank
30. Bloomberg Finance LP
31. National Bank of Australia

32. Taipei Fubon Bank, New York Agency
33. Origin HR Consulting Limited
34. Banctec Ltd.
35. The British Land Company PLC
36. London Borough of Tower Hamlets Rates
37. McKee Nelson LLP
38. YXIME
39. Standard & Poor's
40. Bats Trading, Inc.
41. Caldwalader, Wickersham, and Taft
42. CB Richard Ellis Client Account RE Gloa
43. Sidley Austin Brown & Wood
44. JQ Network PTD Limited
45. Reuters America Inc.
46. IBM Corporation
47. Network Appliance, Inc.
48. Clifford Chance
49. Ernst & Young
50. Hewlett-Packard AP (HONG KONG) LIMITED
51. CDW Direct LLC
52. Millennium Developers PVT LTD
53. Virtx
54. Linklaters
55. Allen & Overy
56. NYSE Market, Inc.
57. Broadridge Securities Processing
58. Reuters Limited
59. Paul Weiss
60. Kim & Chang
61. Tata Consultancy Services
62. Bloomberg L.P.
63. Standard and Poors Corp.
64. Ernst and Young Private Limited
65. Deutsche Borsche AG
66. FT Interactive Data
67. Thompson Financial
68. Anjarlekar & Associates
69. Pricoa Relocation UK Limited
70. Davis, Polk and Wardwell
71. Henegan Construction Co., Inc.
72. Linklaters, S.L.
73. Ashurst Morris Crisp
74. National Commerce bank
75. ZKB (Zurcher Kantonalbank)
76. Information Builders Inc.

77. TIBCO Software, Inc.
78. Sungard Securities Finance Inc.
79. 1301 Properties Owner LP
80. Dell Marketing L.P.
81. Fidessa Plc.
82. London & European Title Insurance Services Ltd.
83. Haworth Singapore PTE Ltd.
84. 1221 Avenue of the Americas *
85. 55 Broadway *
86. ICAP Securities Limited
87. Morse Service Holdings Limited
88. Swapswire Limited
89. Kingston Communications PLC
90. Vertex Mortgage Services
91. Drowst Trading, LLC
92. Compucenter (UK) Ltd.
93. Bank of America Plaza STE 3500 *
94. Canary Warf Management Limited
95. WIPRO Infotech Enterprise Solutions
96. 767 Fifth  Ave *
97. 125 Broad Street *
98. Morse Group Limited
99. Mace Limited
100. 1301 Properties Owner LP

## Significant Landlords

- Rock Forty Ninth LLC
- 1301 Properties Owner L.L.C
- Huron Consulting Group LLC
- Deutsche Bank AG, New York Branch
- WPGH, LLC
- 70 Hudson Street, LLC
- Corporate Park Associates
- Monarch Centre Associates, LLC
- Consultatio Inversora S.A.
- MJH Wacker LLC
- Eastrich No. 167 Corporation
- 8 Sound Shore Associates, LLC
- MCPR Unit V LP, S.E.
- Middlefield Park Associates
- 1111 Brickell Office, LLC
- Lempira S.R.L., R.U.C.
- Telwares, Inc.
- Archipelago Holdings, Inc.

- Teachers Insurance and Annuity Assoc. of America
- Palm Beach Park Centre 4, LLC
- Nine Penn Center Associates, LP
- San Diego - Frazee, LLC
- Columbia Center Property LLC
- CT Tower Investments Inc
- Clifford Chance US LLP
- 125 High Street LP
- SP4 190 S. LaSalle, L.P.
- Crescent TC Investors LP
- Constellation Place, LLC
- HWA 555 Owners, LLC
- WA 555 Owners, LLC
- HQ Global Workplaces
- Four Point Star Operating Company, L.P.
- HQ Global Workplaces
- 20 CCC Business Trust
- 605 Third Avenue Fee LLC
- CMD ST Financial Centre, LLC
- CPR (USA) Inc.
- SLG 220 News Owner LLC
- B&R 919, LLC
- Argonne Capital Group
- PCC Properties (Calgary) Ltd.
- Board of Trade of the City of Chicago, Inc.
- JBC Funds 200 West Monroe LLC
- 300 Main L.L.C.
- Normandy Real Estate Partners
- Texas Tower Limited
- Guggenheim Concourse, L.P.
- Hanover Moving & Storage Co., Inc.
- 101 Hudson Leasing Associates
- New Tower Trust Company Multi-Employer Property Trust
- AIG Technologies, Inc.
- CA-10880 Wilshire Limited Partnership
- Sharon Land Company, LLC
- Deutsche Immobilien Fonds Aktiengesellschaft
- Stillwater Development, LLC
- 50 Broadway Realty Corp.
- 85 Tenth Avenue Associates, LLC
- BP 399 Park Avenue LLC
- Clearbridge Advisors, LLC (f/k/a CAM North America, LLC)

- Historic TW Inc.
- Pricewaterhouse Coopers, LLP
- The Irvine Company LLC
- Regus do Brasil, Ltd
- JDJ Properties, Inc.
- Millennium De Investimentos Imobiliarios LTDA
- HQ Global Workplaces
- The Realty Associates Fund VIII, L.P.
- For 1031 Heritage II LLC
- Denver United LLC
- Lehman Brothers Holdings, Inc.
- Courtside West, LLC
- Brandywine Office Investments LLC
- NBS Brookside 700/800, L.L.C.
- Mackenzie Financial Corporation
- Creekside Business Mall LLC
- Legacy III Centennial, LLC
- Wacker Drive Limited Partnership
- CB Office 10, Ltd.
- Rosemead Properties, Inc.
- Corridors I & II/Loudoun II SPE Feeco, L.L.C.
- Mack-Cali CW Realty Associates L.L.C.
- Triple Net Properties, LLC
- Legacy III Centennial, LLC
- Crown Point, L.L.C.
- Mountain Towers Properties, LLC
- GRE Glendale LLC
- Liberty Property Limited Partnership
- Sandtrap II, Ltd.
- The Irvine Company LLC
- Piedmont Operating Partnership, L.P.
- 101 Hudson Leasing Associates
- 5450 West Sahara LLC
- Trizec Westwood Center LLC
- WLA UPU 1 and 2, LLC
- American Center
- Brookfield Properties One WFC Co. LLC
- 600 Partners Co., L.P.
- Historic TW Inc.
- Custer Court, L.P.
- San Diego- Frazee, LLC
- Beneficiaries of North Star Trust Company Title Holding Land Trust

- Galleria Properties, LLC
- Tempe Fountainhead Corporate, LLC
- Sunray Investments
- National Union Fire Insurance Company of Pittsburgh, PA

## Secured Creditors

1. JPMorgan Chase
2. Fenway Funding LLC
3. Swedbank
4. State Street
5. MetLife
6. SMBC
7. Danske Bank

## Government and State Regulatory Agencies.

### U.S. Regulation

- Securities and Exchange Commission
- State Blue Sky Laws in all 50 states and Puerto Rico
- Commodity Futures Trading Commission (LBI, NB LLC)
- Office of Thrift Supervision (LB Bank)
- Federal Deposit Insurance Corporation (LB Bank, LB Commercial Bank)
- Office of the Comptroller of Financial Institutions (Lehman Brothers Trust Co.)
- Federal Energy Regulatory Commission (Lehman Brothers Commodity Services Inc.)
- Utah Commissioner of Financial Institutions (LB Commercial Bank)
- State Bank Commissioner of the State of Delaware (Lehman Brothers Trust Company of Delaware)
- Financial Industry Regulatory Authority (non-governmental)
- New York Stock Exchange (non-governmental)
- National Futures Association (non-governmental)

## Members of Ad Hoc or Unofficial Creditors' Committees – Those formed prior to the Commencement Date, to the extent known at the Commencement Date.

- The Ad Hoc Committee of Bondholders of the Main Street Natural Gas, Inc. Gas Project Revenue Bonds
- Capital Research Management Co.
- Franklin Federal Intermediate-Term-Tax-Free Income Fund
- Franklin Federal Tax-Free Income Fund
- Franklin Georgia Tax-Free Income Fund
- Franklin High-Yield Tax-Free Income Fund

- Franklin Advisors LP
- Oppenheimer Funds, Inc.
- Independence Holding Co.
- The Vanguard Group
- Allstate Insurance Co.
- Informal LBHI Bondholder Group
- members not listed

## Significant Stockholders – If Debtor is a corporation, any significant stockholders (greater than 5%).

- AXA and related parties                           7.25%
- Clearbridge Advisors, LLC and related parties     6.33%
- FMR LLC and related parties                       5.87%

## Directors and Officers – Current and former (up to three years) members of the corporation's board of directors and its officers.

Board of Directors

- Richard S. Fuld, Jr. (current)
- Michael L. Ainslie (current)
- John F. Akers (current)
- Roger S. Berlind (current)
- Thomas H. Cruikshank (current)
- Marsha Johnson Evans (current)
- Sir Christopher Gent (current)
- Jerry A. Grundhofer (current)
- Roland A. Hernandez (current)
- Henry Kaufman (current)
- John D. Macomber (current)

Officers

- Richard S. Fuld, Jr. (current)
- Riccardo Banchetti (current)
- Jasjit S. Bhattal (current)
- Gerald A Donini (current)
- Eric Felder (current)
- Scott J. Freidheim (current)
- Michael Geband (current)
- David Goldfarb (current)
- Alex Kirk (current)
- Hyung S. Lee (current)
- Stephen M. Lessing (current)

- Ian T Lowitt (current)
- Herbert H. McDade III (current)
- Hugh E. McGee III (current)
- Christian Meissner (current)
- Thomas A. Russo (current)
- George H. Walker (current)
- David Coles (current)
- James Fogarty (current)
- Bryan Marsal (current)
- Erin Callen (former)
- Jospeh M. Gregory (former)
- Christopher O'Mera (former)
- Jonathan Beyman (former)

## Underwriting Investment Bankers for Debtor's securities for all securities issued or outstanding on the Commencement Date or during the three years prior to the Commencement Date.

- Lehman Brothers
- Hoare Govett, Ltd.
- UBS Investment Bank
- Merrill Lynch
- ABN AMRO Rothschild

## Related Entities

737 Portfolio Services LLC
737 Portfolio Trust
Area Assignor Corp. (dissolved)
Area Depository Corporation (dissolved)
Area GP Corporation
Aristos LLC
ASB L.L.C.
Ballybunion Investments No.  Ltd.
Ballybunion Investments No. 2 Ltd.
Ballybunion Investments No. 3 Ltd
Banque Lehman Brothers S.A.
Bixen Limited
BK I Realty Inc. (dissolved)
BK II Properties Inc.
BK III Properties Inc.
Blue Jay Realty Corporation
BNC Holdings Inc.
Bromley LLC
Brookson Corp.

Brookwood Energy & Properties Inc.
Canope Credit Corp.
Capital Analytics II, LP
Central Funding (Concord) Corporation (dissolved)
Clarks Summit I, LLC
Clarks Summit II, LLC
CP1 Real Estate Services Inc.
CP4 Real Estate Services Inc. (dissolved)
Dimont Corporation
DL Mortgage Corp.
DRA Management, Inc. (dissolved)
Eagle Energy Management, LLC
Eagle Energy Partners I, L.P.
East Dover Limited
Edibrook Corp.
EHP/GP Inc. (dissolved)
Eldon Street Holdings Limited
ELQ Holdings B.V.
ELQ Hypothekan N.V.
Equipment Management Inc.
Equity Strategies Loans LLC
Equity Strategy Loans LLC
e-Valuate, LP
Executive Monetary Management, Inc.
Falcon Holdings I LLC
First Ward Properties Inc.
Flight Sim I LLC
Flight Sim II LLC
Flight Sim III LLC
Flight Sim IV LLC
Flight Sim V Inc.
FRAH Special Services Inc.
Fundo De Investimento Multimercado Credito Privado Navigator Investmento
Furno & Del Castano CapitalPartners LLP
GA Dekalb Inc.
GKI Korea Development Limited
Global Principal Strategies Loans Inc.
GRA Finance Corporation Ltd.
GRA Finance Corporation Ltd.
Growth Partners Inc. (dissolved)
Hills Funding One, Ltd.
Hydrocarbon Capital II LLC
IL Lombard Inc. (dissolved)
Ivanhoe Lan Pty Limited
Jet Aircraft Leasing Inc. (dissolved)

Jet Partners, LLC
JFM Aviation Once LLC
KM-I Real Estate Company VII (sold)
Laminar Holdings LLC
LB Alberta Holdings Inc.
LB Beta Finance Cayman Limited
LB GPS Lightfoot L.L.C.
LB Holdings Intermediate 1 Ltd
LB Holdings Intermediate 2 LtdLB I Group Inc
LB I Group Inc.
LB I Group Inc.
LB India Holdings Cayman I Limited
LB India Holdings Cayman II Limited
LB India Holdings Mauritius I Limited
LB India Holdings Mauritius II Limited
LB India Holdings Mauritius III Limited
LB Investment Corp. Inc.
LB Investment Holding Company Limited (dissolved)
LB Investments (UK) Limited
LB Leasing Inc.
LB Lomond Investments Limited
LB Maritim Investor GmbH
LB Memphis Brownestone LLC
LB Military Housing LLC
LB Note Corp.
LB Ohana, LLC
LB Skypower Inc.
LB Trade Corp.
LB UK Financing Limited
LB UK RE Holdings Ltd.
LB3 GmbH
LBCCA Holdings I LLC
LBCCA Holdings II LLC
LB-NL Holdings (Cayman) Limited
LB-NL Holdings I Inc.
LB-NL Holdings L.P.
LB-NL U.S. Investor Inc.
LBQ Funding (UK)
LBO Investments Limited
LBQ Hong Kong Funding Ltd
LBQ Hong Kong Services Limited
LCP LTU LLC
LCPI Properties Inc.
LCPI Properties Inv.
Leesburg ACG LLC

Lehman ABS Corporation
Lehman Aircraft Securitization Holdings LLC
Lehman Asset Backed Caps Inc.
Lehman Brother Venture Capital 2003 Partnership
Lehman Brothers (Israel) Inc.
Lehman Brothers (Spain) S.A.
Lehman Brothers 1999 Venture Managers' Partnership L.P.
Lehman Brothers 1999 Vernture GP Partnership L.P.
Lehman Brothers AIM Holding II LLC
Lehman Brothers Alternative Investment Management LLC
Lehman Brothers Argentina S.A.
Lehman Brothers Asset Management Asia, Inc. (dissolved)
Lehman Brothers Asset Management (Europe) Ltd
Lehman Brothers Asset Management France
Lehman Brothers Asset Securitization LLC
Lehman Brothers Capital GmbH, Co
Lehman Brothers Capital Partners I, L.P.
Lehman Brothers Capital Partners II, L.P.
Lehman Brothers Capital Partners IV, L.P.
Lehman Brothers CDO 2003 L.P.
Lehman Brothers CDO Associates (Cayman), Ltd.
Lehman Brothers CDO Associates 2003 L.P.
Lehman Brothers CDO Associates 2004 L.P.
Lehman Brothers CDO Opportunity Partners 2004-2, L.P.
Lehman Brothers Commercial Corporation Asia Limited
Lehman Brothers Commercial Mortgage K.K.
Lehman Brothers Commodity Service Inc.
Lehman Brothers Communications Partnership
Lehman Brothers de Chile, S.A. (dissolved)
Lehman Brothers de Chile, S.A. (dissolved)
Lehman Brothers de Venezuela C.A. (inactive)
Lehman Brothers de Venezuela C.A. (inactive)
Lehman Brothers Derivative Fiance LLC
Lehman Brothers Derivative Products Inc.
Lehman Brothers Diversified Private Equity Fund 2004, L.P.
Lehman Brothers do Brasil Ltda
Lehman Brothers Energy Canada, ULC
Lehman Brothers Europe Inc.
Lehman Brothers Europe Limited
Lehman Brothers European Mezzanine 2002 Associates L.P.
Lehman Brothers European Mezzanine 2002 L.P.
Lehman Brothers European Venture Capital Associates L.P.
Lehman Brothers European Venture Capital L.P.
Lehman Brothers Finance (Japan) Inc.
Lehman Brothers Financial Products Inc.

Lehman Brothers Fund of Funds Associates L.P.
Lehman Brothers Fund of Funds L.P.
Lehman Brothers Global Asset Management K.K. (liquidated)
Lehman Brothers Healthcare Venture Capital Associates L.P.
Lehman Brothers Healthcare Venture Capital L.P.
Lehman Brothers Holdings Inc.
Lehman Brothers Holdings International Inc.
Lehman Brothers Holdings Japan Inc.
Lehman Brothers Holdings Plc
Lehman Brothers Holdings Scottish LP
Lehman Brothers Inc.
Lehman Brothers Insurance Agency L.L.C
Lehman Brothers International (Europe)
Lehman Brothers International Services, Inc.
Lehman Brothers Investment Holding Company Inc.
Lehman Brothers Investment Management Asia Limited
Lehman Brothers Investments PTE Ltd.
Lehman Brothers Japan Inc
Lehman Brothers LBO Inc.
Lehman Brothers Limited
Lehman Brothers Luxembourg Investments Sarl
Lehman Brothers MBG Associates III L.L.C.
Lehman Brothers MBG Associates L.P.
Lehman Brothers MBG Capital Partners 1998 (C) LP
Lehman Brothers MBG Finders 1999 (A) L.P.
Lehman Brothers MBG Finders 1999 (B) L.P.
Lehman Brothers MBG Finders 2000 (B) L.P.
Lehman Brothers MBG Partners 1997 (A) L.P. (dissolved)
Lehman Brothers MBG Partners 1997 (B) L.P. (dissolved)
Lehman Brothers MBG Partners 1998 (A) L.P.
Lehman Brothers MBG Partners 1998 (B) L.P.
Lehman Brothers MBG Partners 1998 (C) L.P.
Lehman Brothers MBG Partners 1999 (A) L.P.
Lehman Brothers MBG Partners 1999 (B) L.P.
Lehman Brothers MBG Partners 1999 (C) L.P.
Lehman Brothers MBG Partners L.P.
Lehman Brothers MBG Venture Capital Partners 1997
Lehman Brothers MBG Venture Capital Partners 1998 (A) L.P.
Lehman Brothers MBG Venture Capital Partners 1998 (B) L.P.
Lehman Brothers MBG Venture Capital Partners 1998 (C) L.P.
Lehman Brothers MBG Venture Capital Partners 1998 (D) L.P.
Lehman Brothers MLP Associates, L.P.
Lehman Brothers MLP Partners, L.P.
Lehman Brothers Offshore Diversified Arbitrage Fund, Ltd.
Lehman Brothers Offshore Diversified Arbitrage Master Fund Ltd.

Lehman Brothers Offshore Diversified Private Equity Fund 2004, L.P.
Lehman Brothers Offshore Investment Partnership L.P.
Lehman Brothers Offshore Investment Partnership-Japan L.P.
Lehman Brothers Offshore long/short fund, ltd
Lehman Brothers Offshore Long/Short Master Fund Ltd.
Lehman Brothers Offshore Partners Ltd.
Lehman Brothers Offshore Partnership Account 2000/2001, L.P.
Lehman Brothers Offshore Partnership GP 2000/2001 L.P.
Lehman Brothers Offshore Real Estate Associates, Ltd
Lehman Brothers OTC Derivatives Inc.
Lehman Brothers Overseas Inc.
Lehman Brothers Pacific Holdings Pte. Ltd.
Lehman Brothers Participation Fund Associates, L.P.
Lehman Brothers Partnership GP 2000/2001 L.P. (dissolved)
Lehman Brothers Private Equity Advisers L.L.C
Lehman Brothers Private Fund Advisers LP
Lehman Brothers Private Funds Investment Company GP, LLC
Lehman Brothers Private Funds Investment Company LP, LLC
Lehman Brothers Private Fund Management LP
Lehman Brothers (PTG) Limited
Lehman Brothers Secondary Fund of Funds Associates L.P.
Lehman Brothers Secondary Fund of Funds L.P.
Lehman Brothers Securities Taiwan Limited
Lehman Brothers Services India Private Limited
Lehman Brothers Singapore PTE Ltd.
Lehman Brothers South Asia Limited (Inactive)
Lehman Brothers South East Asia Investments PTE Limited
Lehman Brothers Spain Holdings Limited
Lehman Brothers Special Financing Inc.
Lehman Brothers Sudamerica S.A.
Lehman Brothers U.K. Holdings (Delaware) Inc.
Lehman Brothers Uruguay S.A.
Lehman Brothers VC Partners L.P.
Lehman Brothers Venture Associates Inc.
Lehman Brothers Venture Bankers' Partnership L.P.
Lehman Brothers Venture Capital Partners I, L.P.
Lehman Brothers Venture GP Partnership L.P.
Lehman Brothers Venture Partners L.P.
Lehman Brothers Verwaltungs-und Beteiligungsgesellschaft mbH
Lehman CMO Inc.
Lehman Commercial Paper Inc.
Lehman Crossroads Corporate Investors II, LP
Lehman Insurance Company
Lehman Loan Funding I LLC
Lehman Mortgage  Holdings Canada II Inc. (inactive)

Lehman Mortgage Company of Canada (surrendered)
Lehman Mortgage Company of Canada (surrendered)
Lehman Mortgage Holdings Canada I Inc. (inactive)
Lehman Municipal ABS Corp.
Lehman OPC LLC
Lehman Pass-Through Securities Inc.
Lehman Queens Center Inc. (inactive)
Lehman Queens Limited Inc. (inactive)
Lehman Re Ltd.
Lehman Realty & Development Corp.
Lehman Receivables Corp. (dissolved)
Lehman Risk Advisors Inc.
Lehman Risk Management, Inc. (dissolved)
Lehman Structured Assets Inc.
Lehman Structured Securities Corp.
Lehman Syndicated Loan Inc.
Lehman VIP Holdings Inc.
Lehman VIP Investment LDC
Lehman VIP Investment LDC
Liberty Corner Inc. (sold)
Liberty GP II Inc. (sold)
LIBRO Holdings I Inc.
Libro Companhia Securitizadora de Creditos
Long Point Funding Pty Ltd.
Louise Y.K.
LPTG Inc.
LPTG Intermediate LLC
LPTG Intermediate LLC
LPTG LLC
LPTG LLC
LW-LP Inc.
LW-LP Properties Inc.
M&L Debt Investments Holdings Pty Limited
M&L Debt Investments Pty Limited
Mast Depositor Corp
MBAM Investor Limited
MBR/GP Corp.
Merit, LLC
Metro Realty Corporation (dissolved)
MMP Funding Corp.
Morganberry Corporation
Nai Harn Hotel 1 Company Limited
Neuberger & Berman Agency, Inc.
Neuberger Berman Asset Management, LLC
Neuberger Berman Inc.

Neuberger Berman Investment Services, LLC
Neuberger Berman Pty Ltd.
Neuberger Berman, LLC
Newark Properties One Inc.
Nexity Investment Partnership L.P.
NL Funding, L.P.
NL GP Inc.
Northstar Equipment Leasing Income Inc. (dissolved)
NPC Inc. (dissolved)
OCI Holdings Limited
O.M.B. Limited Partner Ltd.
OSD Corp.
PAC Aircraft Management Inc.
Pentaring, Inc.
Phuket Hotel 1 Holdings Company Limited.
Pike International Y.K.
Pindar Pty Ltd.
Preferred Group Limited
Preferred Holdings Limited
Preferred Mortgages Limited
Principal Transactions Inc.
QP80 Real Estate Services Inc.
Quality Pork Partners, Inc.
Real Estate Investors Inc. (dissolved)
Real Estate Private Equity Inc.
Real Estate Services I Inc. (dissolved)
Real Estate Services VII Inc. (dissolved)
Reliance Energy E&P, LLC
REPE LBREP III LLC
Revival Holdings Limited
RIBCO LLC
RIBCO LLC
RIBCO SPC, Inc.
Rock Hill Real Estate, Inc.
Sage Partners, LLC
SAIL Investor Pte Ltd.
Sambar Properties Inc.
SASCO ARC Corporation
Scranzay, Inc.
Security Assurance Advisers, LP
Select Asset Inc.
Senior Income Fund Inc. (dissolved)
Serafino Investments Pty Limited
Shearson Lehman Brothers Capital Partners II, L.P.
Shearson Lehman Hutton Capital Partners II

Skratook LLC
Small Business Assets I LLC
Southern Pacific Funding 5 Ltd
Stamford Investment Realty Inc.
STRATUS I Inc.
Structure Asset Securities Corporation II
Structured Asset Securities Corporation
Structured Options Inc.
STUIE CORP.
Sunrise Finance Co., Ltd.
TAL Europe, LLC
Tallus
Thayer Group Limited
Thayer Properties (Jersey) Ltd.
Thayer Properties Limited
Townsend Analytics Japan Ltd.
Townsend Analytics, Ltd.
TX Tower Inc. (sold)
Wharf Reinsurance Inc.
West Dover, LLC
Woori-LB First Asset Securitization Specialty Co., Ltd.
Woori-LB Fourth Asset Securitization Specialty Co., Ltd.
Y.K. Park Funding
Y.K Tower Funding

## Former Lehman Brothers Holdings Inc. Entities

314 Commonwealth Ave. Inc.
Aegis Finance LLC
Alnwick Investments (UK) Limited
Alnwick Investments (UK) Ltd. Kingdom
Appalachian Asset Management Corp
ARS Holdings I LLC
Aurora Loan Services LLC
Ballybunion Partnership
Bamburgh Investments (UK) Ltd
Blixen U.S.A.
Blue Way Finance Corporation U.A.
Brasstown Entrada I SCA
Brasstown LLC
Brasstown Mansfield I SCA
Capstone Mortgage Services Ltd
CIMT Limited
Cohort Investments Limited
Commonwealth Ave. Inc.
Dynamo Investments Ltd.

Entrada II Sarl
Erin Asset
Falcon Holdings II Inc
Falcon Investor I-X Inc
Falcon LB Sarl
Gainsborough Investments BV
Global Korea Investments Ltd.
Global Thai Property Fund
Kayenta L.P
Kenilworth Investments  Ltd.
L.B.C. YK
L.B.C. YK  Hearn Street Holdings Limited
LB  Leaseco I
LB  LLC
LB 745 Leaseco I LLC
LB 745 LLC
LB Alpha Finance Cayman Limited
LB Asia Issuance Company Ltd.
LB Asset Management Ltd.
LB Australia and Asia Investments Limited
Lehman Brothers U.K. Holdings Ltd.
LB Capital Investments  Ltd.
LB Delta (Cayman) No  Ltd.
LB Delta (Cayman) No 1 Ltd
LB Delta Funding
LB Holdings Intermediate  Ltd.
LB Lease & Finance No . Ltd.
LB Russia Holdings Inc.
LB Russia Holdings LLC
LB SF No.  Ltd.
LB SPV SCA
LBA Funding (Cayman) Limited
LBAC Holdings I Inc
LBASC LLC
LBCCA Holdings I Inc.
LBCCA Holdings II Inc
LBHK Funding (Cayman) No.  Ltd.
LBHK Funding (Cayman) No. 1 Ltd
LBHK Funding (Cayman) No. 2 Ltd.
LBHK Funding (Cayman) No. 4 Ltd
LB Vin Co Inc.
LBO Funding (Cayman) Limited
LBS Holdings SARL
LCPI Properties Inc
Lehman ALI Inc.

Lehman Brothers AIM Holding III LLC
Lehman Brothers Asia Capital Company
Lehman Brothers Asia Capital Company Kong
Lehman Brothers Asia Holdings Limited
Lehman Brothers Asia Limited
Lehman Brothers Asia Pacific (Singapore) PTE. Ltd.
Lehman Brothers Asset Management Inc
Lehman Brothers Asset Management, LLC
Lehman Brothers Australia Granica PTY Limited
Lehman Brothers Australia Holdings PTY Limited.
Lehman Brothers Australia Limited
Lehman Brothers Bancorp Inc
Lehman Brothers Bancorp UK Holdings Limited
Lehman Brothers Bank, FSB
Lehman Brothers Bankhaus Aktiengesellschaft
Lehman Brothers Canada Inc
Lehman Brothers Capital Private Limited
Lehman Brothers Co-Investment Associates LLC
Lehman Brothers Commercial Bank
Lehman Brothers Commercial Corporation
Lehman Brothers Commodity Services Inc.
Lehman Brothers Equity Finance (Cayman) Limited
Lehman Brothers Finance S.A
Lehman Brothers Fixed Income Securities Private Limited
Lehman Brothers Futures Asia Limited
Lehman Brothers Futures Asset Management Corp
Lehman Brothers Global Investments LLC
Lehman Brothers Holdings Capital Trust IV
Lehman Brothers Hy Opportunities Inc.
Lehman Brothers Hy Opportunities Korea Inc.
Lehman Brothers Investment Korea Inc
Lehman Brothers Management LLC
Lehman Brothers P.A. LLC
Lehman Brothers Private Equity Advisers
Lehman Brothers Private Fund Advisers LPD
Lehman Brothers Securities Asia Limited
Lehman Brothers Securities N.V.
Lehman Brothers Securities Private Limited
Lehman Brothers Special Financing Inc.
Lehman Brothers Treasury Co. B.V.
Lehman Brothers Trust Company of Delaware
Lehman Brothers Trust Company, National Association
Lehman Brothers U.K. Holdings Ltd.
Lehman Brothers UK Investments Limited
Lehman Capital Investments  Ltd.

Lehman Commercial Mortgage Conduit Ltd.
Lehman Crossroads Corporate Investors, LP
Lehman Crossroads Investment Advisers, LP
Lehman Crossroads Investment Company, LP
Lehman Risk Services (Bermuda) Ltd.
Lehman Syndicated Loan Funding Inc
Lincoln Capital Fixed Income Management Company, LLC
Longmeade Limited
LUBS Inc.
Lunar Constellation Limited Partnership
MABLE Commercial Funding Limited
Maewha K-STARS Ltd.
MICT Limited
Nale Trust
Neuberger Berman Management Inc.
New Century Finance Co., LTD.
OOO Lehman Brothers
Opal Finance Holdings Ireland Limited
Pentaring Inc.  Long Point Funding Pty Ltd
Pindar Pty Ltd
Portsmouth Investment Company Pty Ltd
Property Asset Management Inc.
REPE LBREP II LLC
Resetfan Limited
Resetfan Limited  Capstone Mortgage Services Ltd.
SOGKI Development Inc.
Southern Pacific Funding
Southern Pacific Mortgage Limited
SPML Mortgage Funding Limited
SPML Mortgage Funding Limited
Stockholm Investments Limited
Storm Funding Ltd.
Storm Funding Ltd. Lehman (Cayman Islands) Ltd.
The Main Office Management Company, LP
TMIC Limited
Woori-LB Fifth Asset Securitization Specialty Co., Ltd.
Woori-LB Sixth Asset Securitization Specialty Co., Ltd

## Potential Parties in Interest

The Vanguard Group, Inc.
Ameren et al.
Iron Mountain Information Management
Harbinger Capital Partners
Harbert
UBS Financial Services

UBS International Inc.
UBS Financial Services of Puerto Rico
Harbinger Capital Partners Special Situations Fund LP
Harbinger Capital Partners
Thomson Reuters Plc & Thomson Reuters Corp.
Citigroup, Inc.
Citibank, NA
Morgan Stanley & Co.
Fxcm Holdings LLC
Glg Partners LP
Wilmington Trust Company
Credit Suisse
Rock-Forty Ninth LLC, Rockefeller Center et al.
Bank of New York Mellon
Customer Asset Protection
Royal Bank of Scotland
Federal Reserve Bank of New York
Federal Express Corporation
Accenture LLP
Lehman Brothers Private Equity Funds
Interactive Data Corp.
Green Tree Servicing LLC
Henegan Construction Co., Inc.
Monument Realty LLC
Wells Fargo Bank, NA
Wells Fargo & Co.
BP North America
BP Energy
BP Canada
IGI Resources
Essex Equity Holdings USA, LLC
Abm Industries, Inc.
Northgate Minerals Corporation
4Kids Entertainment, Inc.
Fred Hutchinson Cancer Research Center
Fannie Mae
Carrollton-Farmers Branch Independent School District
Harris County
Dallas County
Tarrant County
Mclennan County
Factiva, Inc.
SP4 190 S. Lasalle, L.P.
Canadian Imperial Bank
CIBC Wolrd Market.

CIBC Wolrd Markets Inc.
Sumitomo Mitsui Banking Corp.
SMBC Capital Markets
Sumitomo Mitsui Brussels Branch
Societe Generale
Washington Mutual Bank
Washington Mutual, Inc.
National Bank of Canada
Occidental Energy Marketing, Inc.
Landamerica Financial Group, Inc.
Toronto-Dominion Bank
Dresdner Kleinwort Group Holdings LLC
Normandy Hill Capital, LP
Office of Thrift Supervision
Office of Thrift Supervision, Northeast Region
General Electric Capital Corp
ING bank, FSB
250 East Borrower LLC
East 46th Borrower LLC
Hale Avenue Borrower LLC
EHMD, LLC
Bats Holdings, Inc.
CD Representative
Pursuit Partners
Galleon Buccaneer's Offshore LTD
Microsoft Corporation
Microsoft Licensing
Dresdner Kleinwort Group Goldings LLC
Svenska Handelsbanken AB
Moody's Investors Service
IBM
Collins Building Services, Inc.
1301 Properties Owner, LP
Mizuho Corporate Bank LTD
Greg Georgas & Mark Grock
Direct Energy Business LLC
Direct Energy LLC
Chevron Natural Gas
Bank of China
Pursuit Capital Partners Master
Pursuit Opportunity Fund I Master LTD.
Aig Global Investment Corporation
Green Tree Servicing Inc.
Wilmington Trust Company
Wilmington Trust FSB

Mack-Cali Realty LP
Arapahoe County Treasurer
J P Morgan Chase Bank, N.A.
Mizuho Corporate Bank
Pursuit Capital Partners Master (Cayman) Ltd.
CD Representative, L.C.
Providence Equity Partners
Newport Global Advisors LP
Altova, Inc.
The Informal Noteholder Group
Verizon Communications Inc.
NY State Department Of Taxation and Finance
Deustche Bank Securities Inc.
Brookfield Properties One WFC Co. LLC
Caixa Geral De Depositos, S.A.
FXCM Holdings, Llc
Morgan Stanley & Co. Incorporated
Credit Suisse
US Bank Natl Assoc.
Bank Of Montreal
Natl Australia Bank Limited
Barclays Capital, Inc.
Contrarian Capital Management, LLC
8 Sound Shore Associates LLC
Federal Home Loan Mortgage Corp
Allianz Global  Investors AG
Marshall Funds, Inc.
Marshall & Ilsley Trust Company, N.A.
M. Arthur Gensler Jr and Assoc, Inc.
Gensler Architecture, Design And Planning, P.C.
Bay Harbour Management LC
Bay Harbour Master
Trophy Hunterr Investments
BHCO Master
MSS Distressed & Opportunities 2
Institutional Benchmarks
The TAARP Group, LLP
Avaya Inc.
Missouri Department Of Revenue, Bankruptcy Unit
Chuo Mitsui Trust And Banking Co.
Brookfield Properties One WFC Co. LLC
European Bank For Reconstruction
WSG Development Co.
GE Capital Information Technology
Vollers Excavating & Construstion,Inc

The Bank Of Tokyo-Mitsubishi UFJ, Ltd
The Chuo Mitsui Trust And Banking Co., Ltd
Crossmark Investment Advisers, LP
Tishman Speyer Properties, L.P.
Shinsei Bank Limited
Dnb Nor Bank Asa
Cap Gemini Financial Services USA, Inc
Yildiz Holdings, Inc.
Godiva Chocolatier, Inc.
Structure Tone Inc.
GE Capital Information Technology Solutions, Inc. D/B/A Ikon Financial
        Services
Office Of The United States Attorney
Russell Investment Group, Inc.
Counsel To Australia And New Zealand Banking
JFK International Air Terminal LLC
Duke Corporate Education
Telecom Italia Capital S.A.
Oracle Credit Corporation
Eaton Corporation
TW Telecom Inc.
Bankruptcy Creditors' Service, Inc.
Union Bank Of California, N.A.
United Bank Of California, N.A.
Payreel, Inc.
City Of Farmers Branch
Johnson County Arlington ISD
Mansfield ISD
Burleson, ISD
Exegy Incorporated
Tiger Asia Fund, L.P.
Tiger Asia Overseas Fund, Ltd.
Executive Fliteways, Inc.
Business Objects Americas
Frictionless Commerce, Inc.
Travelers National Accounts
A-V Services, Inc.
Oversea-Chinese Banking Corp. Ltd.
Informal Group Of Taiwan Financial Institutions
Fondo Latinoamericano De Reservas
Trading Technologies International
Gartner, Inc.
Gartner UK Limited
Computer Financial Consultants Inc.
Tangoe, Inc.

Open Solutions Inc.
CB Richard Ellis, Inc.
Sprint Nextel Corp
Costello Maione Schuch Inc.
AEW Capital Management, LP
Lyon Capital Ventures
PJM Interconnection, L.L.C.
Broadridge Processing Solutions, Inc.
Federal Home Loan Bank Of Pittsburgh
Tata American International
Hypo Investment Bank Ag
Pension Benefit Guaranty Corporation
The Juilliard School
Newedge USA, LLC
Pacific Gas & Electric Company Bank of America N.A.
Duke Energy Ohio, Inc.
Fir Tree Value Master Fund, L.P.
Fir Tree Capital Opportunity Master Fund, L.P.
Alameda County (CA) Employees' Retirement Association
Government of Guam Retirement Fund
Northern Ireland Governmental Officers Superannuation Committee
City of Edinburgh Council as Administrating Authority of the Lothian Pension
     Fund
Operating Engineers Local 3 Trust Fund
Dresdner Bank A.G.
Parsec Trading Corp.
Parsec Corp.
Nomura Holding America Inc.
Nomura Holdings Inc.
PNMR Services Co.
First Choice Power, LP
Reliant Energy Services, Inc.
Reliant Energy Power Supply, LLC
EnergyCo, LLC
EnergyCo Marketing and Trading
Binding Company, Inc.
Fondiaria
BIM
VITA
Assicurazioni
Milano
Popolare
Banca Sai
Systema
Novara

50 Broadway Realty Corp. LLC
Swedbank
Arab Bank
Bank Pekao
GL Trade
EZE Castle
Liquidpoint
Korea Investment & Securities Co., LTD
True Friend 4th Securitization Specialty Co.
PT Bank Negara Indonesia
Federal Home Loan Bank of Atlanta
Health Care Services Corp D/B/A Blue Cross and Blue Shield of Illinois
Cognizant Technology Solutions
Somerset Properties SPE, LLC
Sumitomo Trust & Banking Co., LTD
Vignette Europe Limited
Greenbriar Minerals, LLC
D.E. Shaw Composite Portfolios, LLC
D.E. Shaw Oculus Portfolios, LLC
Compagnie Financiere Trdaition SA
Caisse De Depot et Placement du Quebec
Tuxedo Reserve Owner LLC
Tuxedo TPA Owner LLC
Members of Certified Class in Austin, ET AL V. Chisick, ET AL., Case SA CV
        01-0971 DOC
The City of Long Beach
America's Servicing Company
Public Service of North Carolina
GMAC LLC
GMAC Residential Capital
GMAC-IM
Residential Funding Company LLC
Constellation PL
ADV Portfolio Tech
Sun Guard, ET AL.
INF SRVS
Wall St Concepts
The Central Puget Sound Regional Transit Authority
Global Thematic
Panton Fund
CFIP Fund
Cura Fixed Fund
Turnberry Fund
Investcorp, Et. Al.
Royal Bank of America

Arapahoe County Attorney's Office
Currenex
State Street Bank
UBS Securities LLC
US Bank National Association
Bank of America Mellon
Commerzbank A.G.
Kraft Foods Inc.
Kapalua Bay, LLC
M&B Maher
M. Brian Maher and Basil Maher
AB Bankas
Och-Ziff
Aliant Bank
Crossroads Investment Advisors
Lloyds Bank
Sun Trust Banks, Inc.
River Capital Advisors Inc.
Dell Marketing L.P.
National Cinemedia, Inc.
Margolis Edelstein
Access Data
Meridian Company of New York
CNX Gas Co.
Delaware Management Holdings, Inc.
Commerzbank A.G. (New York and Grand Cayman Branches)
Intechra LLC
Office of the U.S. Trustee
California Ind. Systems Operator Corp.
First Commercial Bank Co., Ltd. New York Agency
Bank of Taiwan
County of San Mateo (CA)
County of Monterey (CA)
First Trust Portfolios L.P.
First Trust Advisors L.P.
Bondwave LLC
Avista Corp.
Cascade Investment LLC
Powerex Corp.
California Public Employees Retirement System
Thomas P. Dinapoli, as Sole Trustee of The NY State Common Retirement Fund
Pacific Coast Cap. Partners, LLC
Mitsubishi UGJ SEC CO.
ING Real Estate Finance

## Affiliations of Outside Directors

- Michael L. Ainslie
  - director - The St. Joe Company
  - director - Lehman Brothers Bank, FSB
  - trustee - Vanderbilt University
  - Member (and the chairman emeritus) of the Board of Directors of The Posse Foundation, Inc.
- John F. Akers
  - director - W.R. Grace & Co
- Roger S. Berlind
  - governor - The Broadway League
- Thomas H. Cruikshank
- Marsha Johnson Evans
  - director - Weight Watchers International, Inc.
  - director - Huntsman Corporation
  - director - Office Depot, Inc.
  - director - Naval Academy Foundation
  - director - America's Development Foundation.
  - advisory board - LPGA
  - advisory board - Pew Partnership for Civic Change
- Roland A. Hernandez
  - director of MGM Mirage
  - director - The Ryland Group, Inc.
  - director - Sony Corporation
  - director - Vail Resorts, Inc.
  - advisory board - David Rockefeller Center for Latin American Studies at Harvard University
  - advisory board - Harvard Law School
  - President's Council on International Activities – Yale University
- Henry Kaufman
  - president - Henry Kaufman & Company
  - member (and the chairman emeritus) - Board of Trustees of the Institute of International Education
  - member - Board of Trustees of New York University
  - member (and the chairman emeritus) - Board of Overseers of the Stern School of Business of New York University
  - member - Board of Trustees of the Animal Medical Center
  - member of the International Advisory Committee of the Federal Reserve Bank of New York
  - member of the Advisory Committee to the Investment Committee of the International Monetary Fund Staff Retirement Plan
  - member of the Board of Governors of Tel-Aviv University  treasurer (and former trustee) of The Economic Club of New York.

- John D. Macomber
  - director - Collexis Holdings, Inc.
  - director - Stewart & Stevenson LLC
  - chairman - Council for Excellence in Government
  - vice chairman - Atlantic Council
  - trustee - Carnegie Institution of Washington
  - trustee - Folger Library
- Sir Christopher Gent
  - director - Ferrari SpA
  - senior advisor - Bain & Company, Inc.
  - advisory board - Reform

## Professionals Employed by the Company

- Heller Ehrman LLP
- McKenna Long & Aldridge LLP
- Hahn Loeser & Parks LLP
- Thacher Proffitt & Wood LLP
- Simpson Thacher & Bartlett LLP
- Ernst & Young
- PricewaterhouseCoopers
- McKee Nelson
- DLA Piper
- White & Case
- Sidley Austin LLP
- Andrews & Kurth LLP
- Herrick & Feinstein MMOR Consulting
- Kramer Levin Naftalis & Frankel LLP
- Latham & Watkins, LLP
- Schulte, Roth, & Zabel LLP
- Ballard Spahr Anders & Ingersoll, LLP
- Benesch, Fiedlander, Coplan & Arnoff LLP
- Hunton & Williams LLP
- Miller Canfield Paddock Stone
- Kepley Brouscious & Biggs
- Krieg Devault LLP
- Click & Null, P.C.
- Sonnenschein Nath & Rosenthal
- Burns, White & Hickton
- Windels Marx Lane & Mittendorf, LLP
- Woodbury & Santiago, P.A.
- Blake Cassels & Graydon LLP
- Willkie Farr & Gallagher LLP

- Jeffer, Mangels, Butler & Marmaro
- Menter, Rudin & Trivelpiece, P.C.
- Trenam, Kemker, Scharf, Barkin, Frye,O'Neill & Mullis
- Mercer Marsh & McLennan Companies
- Allen & Overy LLP
- Brand Law Group, PC
- Akerman Senterfitt
- Foster, Graham, Milstein & Calisher, LLP
- Reilly Pozner & Connelly  LLP
- Dorsey & Whitney LLP
- Paul, Weiss, Rifkind, Wharton & Garrison LLP
- MM Arizona Holdings LLC
- Snell & Wilmer
- Squire, Sanders & Dempsey L.L.P.,
- Lewis and Roca LLP
- Hahn Loeser & Parks LLP
- Sills Cummis & Gross P.C.
- Cadwalader, Wickersgam & Taft LLP
- Skadden, Arps, Slate, Measgher & Flom LLP
- Carrington, Coleman, Sloman & Blumenthal, L.L.P.
- Prickett Jones & Elliott, P.A.
- Conway and Mrowiec
- Gianni, Origoni Grippo & Partners
- Kleyr Grasso Associes
- Cederquist
- Mitsui Company
- LS Horizon Ltd.
- Herbert Smith Ltd.
- Oh-Ebashi LPC & Partners
- Morrison & Foerster LLP
- Freshfields Bruckhaus Deringer
- NBP Clems
- HBN Law
- L.B. Smithplein 3
- Pite Duncan
- Akerman Senterfitt
- Baker & McKenzie LLP
- Bloom Murr & Accomazzo, P.C.
- Foster, Graham, Milstein & Calisher, LLP
- Houser & Allison, APC
- Jones Day
- Sills Cummis Epstein & Gross P.C.

- Tompkins, McGuire, Wachenfeld & Barry LLP
- Latham & Watkins LLP
- Davies Ward Phillips & Vineberg
- Einstein Malanchuk LLP
- Gibson, Dunn & Crutcher LLP
- Paul, Hastings, Janofsky & Walker LLP
- Dechert LLP
- Hogan & Hartson
- Cox Castle Nicholson
- Morrison & Forster
- Stroock, Stroock & Lavan

## Litigation Claimants

- City of Cleveland, Ohio
- First Alliance Mortgage Company Class Action
- IPO Class Actions
- Breakaway Solutions Inc.
- In re Public Offering Antitrust Litigation (consolidated class action)
- In re Issuer Plaintiff Initial Public Offering Fee Antitrust Litigation (consolidated class action)
- In re Mirant Corporation Securities Litigation (class action)
- Research Analyst Independence Litigations
- In re Lehman Brothers Holdings, Inc. Derivative Litigation (Garber, Staehr, Locals 302 & 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Trust, and Saginaw Police & Fire Pension Board, plaintiffs)
- Annuity Fund et al. v. Lehman Brothers Holdings, Inc., et al.
- Fogarazzo, et al. v. Lehman Brothers Inc., et al. Claude A. Reese
- Fogel Capital Management, Inc.
- Operative Plasterers and Cement Masons International Association Local 262 Annuity Fund
- Electronic Trading Group, LLC
- Forza Capital Management, L.L.C.
- BHL Capital Partners L.P.
- Alaska Electrical Pension Fund
- Alex E. Rinehart
- City of Cleveland
- Overstock.Com Inc.
- Keith Carpenter
- Keith Cheng
- Oliver Cheng
- Mary Helbeyn
- Elizabeth Foster

- Hugh D. Barton
- David Trent
- Mark Montag
- Bader & Yakaitis P S P & Trust
- J. Bader

## 100 Largest Holders of Trade Debt

1. Microsoft Corporation
2. IBMorporation
3. Network Appliance Inc.
4. Iron Mountain Digital Archives
5. Bloomberg Finance LP
6. FTInteractive Data
7. Information Builders Inc
8. Tibco Software, Inc.
9. Broadridge Securities Processing
10. CDW Direct LLC
11. Sungard Securities Finance Inc
12. 1301 Properties Owner LP
13. Dell Marketing L.P.
14. Rittal Corporation
15. AC Nielsen Company
16. Thomson Financial
17. Intuition Publishing Inc.
18. Ernst & Young LLP
19. Meridian IT, Inc.
20. Northrop Grunman
21. Diversified Global Graphics Group DG3
22. Gartner Group Inc.
23. Hewlett Packard Company
24. Storage Technology Corp
25. RR Donnelley Receivables Inc.
26. Triple Point Technology, Inc.
27. Video Corporation Of America
28. Rolfe & Nolan Systems Inc.
29. Iron Mountain Digital Archives
30. Cushman & Wakefield Inc.
31. Michael Stapleton Associates
32. A V Services Inc.
33. Automated Securities Clearance Ltd.
34. Computer Associates International Inc.
35. Integreon Managed Solutions
36. Clayton Fixed Income Services, Inc.
37. Meridian It, Inc.
38. CHD Meridian Healthcare

39. Computer Financial Consultants, Inc.
40. Allen & Overy
41. DBRS Inc.
42. Wipro Technologies
43. Alpha Office Supplies Inc.
44. Logical Information Machines
45. Interactive Data Corp.
46. Acronis, Inc.
47. Structure Group
48. AFD Contract Furniture Inc.
49. Key Systems
50. Hanover Moving &Storage Co Inc.
51. Ayco Services Agency Inc.
52. Wombat Financial Software, Inc.
53. Ikon Office Solutions Inc.
54. Rockefeller Center North, Inc.
55. Trimont Real Estate Advisors Inc.
56. Liquid Engines, Inc.
57. CDW Direct LLC
58. Dimension Data
59. Kepner Tregoe Inc.
60. Cyveillance
61. Swets Information Services Inc.
62. Network Appliance Inc.
63. IBM Corporation
64. Headstrong Services, LLC
65. Gotham Technology Group
66. EXLservice Holdings Inc.
67. Quest Software Inc.
68. Restaurant Associates
69. Iron Mountain Records Management
70. Agilysys Nj, Inc.
71. Mellon Analytical Solutions
72. Enterprise Solution Providers Inc.
73. SAS Institute Inc
74. Aperture Technologies
75. Lexis-Nexis
76. Greenline Financial Technologies Inc.
77. Compliance Data Center Inc.
78. DGWB, Inc.
79. DBRS, Inc.
80. Verrazano Consulting Solutions, LLC
81. Tac Americas, Inc.
82. Lexis Nexis
83. Rainmaker Group LLC

84. Dimension Data
85. Transaction Network Services
86. Nishimura & Partners
87. SOS Security Inc.
88. Polaris Software Lab (India), Ltd.
89. 4 Connections LLC
90. Hewlett Packard Company
91. Inconit Corporation
92. ILOG Inc.
93. The Bank Of  New York
94. Trilogy Leasing Co. LLC
95. Standard Register
96. KPMG, LLP
97. Infusion Development Corp.
98. Sharon Land Company, LLC
99. Emil Werr
100.      Computer Associates International Inc.

## Professionals Retained by Significant Creditor Groups

- Milbank, Tweed, Hadley & McCloy LLP
- Munsch Hardt Kopf & Harr, P.C.
- Akin Gump Strauss Hauer & Feld LLP
- The Wilson Law Firm, PC

## Utilities

- Con Edison
- The Hess Corporation
- NSTAR Electirc
- ComEd
- Sempra Energy Solutions
- NYC Water Board
- AT&T
- Cleveland Public Power
- Cleveland Division of Water
- Dominion
- Interstate Gas
- Illuminating
- NEORSD
- Time Warner

## Committee Members

- Wilmington Trust Company
- Mizuho Corporate Bank, Ltd.

- RR Donnelley & Sons
- The Bank of NY Mellon
- The Royal Bank of Scotland, PLC
- Shinsei Bank, Limited
- Metlife

**<u>SCHEDULE 2</u>**

**Schedule 2**

1. Lazard has a relationship with ABM Industries Incorporated on matters unrelated to the Debtors, including in connection with ABM's acquisition of OneSource Services Inc. in 2007. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

2. Lazard has a relationship with American International Group, an apparent affiliate of AIG Annuity Insurance Company and AIG Global Investment Corporation, on matters unrelated to the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

3. Lazard has a relationship with Alfa Corporation, an apparent affiliate of ALFA Mutual Fire Insurance Company, on matters unrelated to the Debtors. Lazard served as financial advisor to the Special Committee of the board of directors of Alfa Corporation in connection with the privatization of Alfa Corporation in 2008. Lazard does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

4. Lazard has a relationship with Ameren Corporation on matters unrelated to the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

5. Lazard has a relationship with AXA Financial, Inc, which is an apparent affiliate of AXA Equitable Life Insurance Company, on matters unrelated to the Debtors. Lazard advised AXA Financial, Inc. in its purchase of The MONY Group in 2004. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

6. Lazard has a relationship with Bank of America, N.A. (and certain affiliates), an apparent affiliate of Bank of America Plaza STE 3500 and Bank of America Securities LLC, on matters unrelated to the Debtors. Lazard does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

7. Lazard has a relationship with Barclays Bank, PLC, an apparent affiliate of Barclays Global Fund Advisors and Barclays Capital Inc., on matters unrelated to the Debtors, including its 2004 acquisition of Juniper Financial Corporation and its 2007 proposed acquisition of ABN Amro. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

8. Lazard has advised Continental Casualty Co. on matters unrelated to the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

9.  Lazard has a relationship with Credit Suisse on matters unrelated to the Debtors and represented the Special Committee of the Board of Directors of CSFB Direct, an apparent affiliate of Credit Suisse Securities (USA) LLC, in the sale of its publicly-held stake to Credit Suisse First Boston in 2001. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

10. Lazard has advised apparent affiliates of ComEd in connection with matters unrelated to the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

11. Lazard has a relationship with Fannie Mae on matters unrelated to the Debtors. Lazard served as financial advisor to Fannie Mae in a U.S. Treasury led restructuring of Fannie Mae. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

12. Lazard has a relationship with General Electric Capital Corporation, an apparent affiliate of GE Capital Information Technology and GE Capital Information Technology Solutions, Inc. D/B/A Ikon, and certain of General Electric Capital Corporation's affiliates on matters unrelated to the Debtors, including GE Capital's 2002 acquisition of DaimlerChrysler Capital Services' assets and other transactions. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

13. Lazard has a relationship with Harbinger Capital Partners, an apparent affiliate of Harbinger Capital Partners Special Situations Fund LP. Lazard has advised Harbinger Capital Partners on matters unrelated to the Debtors, including the acquisition of shares of Applica Incorporated not owned by affiliates of Harbinger Capital Partners in 2006. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

14. Lazard has a relationship with IBM Corporation on matters unrelated to the Debtors. Lazard has advised IBM on various matters, including IBM's acquisition of Telelogic AB in 2007. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

15. Lazard has a relationship with Information Builders Inc. on matters unrelated to the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

16. Lazard has a relationship with an apparent affiliate of ING Investment LLC and ING Bank, FSB on matters unrelated to the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 Cases.

17. Lazard has a relationship with apparent affiliates of JP Morgan Chase in connection with matters unrelated to the Debtors. Lazard does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

18. Lazard advised Lehman Brothers Real Estate Partners in the sale of the Summerfield Suites hotel brand and certain hotel properties in 2006. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

19. Lazard has advised Mellon Financial Corporation in connection with its merger with The Bank of New York Company, Inc. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

20. Lazard has a relationship with Microsoft Corp. Lazard has advised Microsoft Corp., an apparent affiliate of Microsoft Licensing, GP, on matters unrelated to the Debtors, including Microsoft Corp.'s 2008 acquisition of Greenfield Online Inc. and 2007 acquisition of aQuantive, Inc. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

21. Lazard has a relationship with Mitsubishi UFJ Financial Group, an apparent affiliate of UFJ Bank Limited and the Bank of Tokyo-Mitsubishi UFJ, Ltd, on matters unrelated to the Debtors. Lazard advised Mitsubishi UFJ Financial Group in connection with its acquisition of an interest in Morgan Stanley in 2008. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

22. Lazard acted as a co-manager in a $1.75 billion bond offering by Morgan Stanley Dean Witter & Co., an affiliate of Morgan Stanley & Co., in 2005. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

23. Lazard has a relationship with an affiliate of Natixis Asset Management Advisors on matters unrelated to the Debtors. Among other things, Lazard and Natixis have entered into a strategic alliance with respect to certain investment banking and financial advisory matters within France. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

24. Lazard has a relationship with the New York Stock Exchange, an apparent affiliate of NYSE Market, Inc., on matters unrelated to the Debtors. Lazard provided financial advice to the New York Stock Exchange in connection with the merger of the New York Stock Exchange and the Archipelago Exchange. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

25. Lazard has advised an apparent affiliate of Pacific Gas & Electric Company on matters unrelated to the Debtors.  Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

26. Lazard has a relationship with an apparent affiliate of Prudential Insurance Company of America and Prudential Financial Inc. on matters unrelated to the Debtors.  Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

27. An apparent affiliate of Rockefeller Center North, Inc. leases certain office space to Lazard.  Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

28. Lazard has a relationship with the Royal Bank of Scotland PLC on matters unrelated to the Debtors.  Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

29. Lazard has a relationship with Sempra Energy, an apparent affiliate of Sempra Energy Solutions, on matters unrelated to the Debtors.  Lazard advised Sempra Energy in connection with its 2007 joint venture with the Royal Bank of Scotland involving Sempra Energy's commodity-marketing business.  Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

30. Lazard has a relationship with Sprint Nextel Corp. on a variety of transactions unrelated to the Debtors, including its acquisition of Nextel Partners in 2005 and the spin-off of EMBARQ Corp. in 2004.  Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

31. Lazard has represented The St. Paul Travelers Companies, Inc., an apparent affiliate of Travelers National Accounts, in connection with the sale of Mendota Insurance Company to Kingsway Financial Services, Inc.  Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

32. Lazard has a relationship with State Street on matters unrelated to the Debtors.  In 2008, LAM outsourced a portion of its investment operations to State Street Corporation, and certain former employees of LAM became employed by State Street.  Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

33. Lazard has a relationship with an apparent affiliate of Sumitomo Mitsui Banking Corp, an apparent affiliate of SMBC, SMBC Capital Markets and Sumitomo Mitsui Brussels Branch, on matters unrelated to the Debtors.  Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

34. Lazard has a relationship with Sungard Data Systems, an apparent affiliate of Sungard Securities Finance Inc, on matters unrelated to the Debtors. Lazard advised Sungard Data Systems on its acquisition by a private equity consortium. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

35. Lazard has a relationship with Tata Chemicals Limited, an apparent affiliate of Tata American International, on matters unrelated to the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

36. Lazard has a relationship with UBS AG, which is also an apparent affiliate of UBS Investment KAG, UBS Investment Bank, UBS Financial Services, UBS Financial Services of Puerto Rico and UBS International Inc., on matters unrelated to the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

37. Lazard has advised Weight Watchers International, Inc. on matters unrelated to the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

38. Lazard has in the past worked with, continues to work with, and has mutual clients with, certain accounting firms who are potential parties-in-interest in these cases or who represent such parties, including, without limitation, Ernst and Young and Deloitte & Touch USA LLP. Lazard does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

39. Lazard and its subsidiary, Lazard Middle Market LLC ("LMM"), have in the past worked with, continue to work with, and have mutual clients with, certain law firms who are potential parties-in-interest in these cases or who represent such parties, including, without limitation, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, Sidley Austin, Allen & Overy, Cadwalader, Wickersham and Taft, Linklaters, Latham & Watkins, LLP, Sonnenschein Nath & Rosenthal, Simpson Thacher & Bartlett LLP, Thacher Proffitt & Wood LLP, Skadden, Arps, Slate, Meagher and Flom LLP, Herbert Smith Ltd., Gibson Dunn & Crutcher LLP and Davis Polk and Wardwell. Lazard does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

40. Lazard and LMM routinely advise businesses in chapter 11 proceedings, including in New York, and may know all or some of the U.S. Trustees and judges involved in this case. Lazard does not believe that this creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

41. The Debtors have numerous customers, creditors and other parties with whom they maintain business relationships. In addition, there may be a number of smaller firms that are not listed as potential parties-in-interest. Lazard and LMM may have

advisory or other commercial or professional relationships with such entities or persons unrelated to the Debtors or these Chapter 11 Cases.  Lazard does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

42. Lazard Capital Markets LLC has acted as an underwriter for apparent affiliates of Con Edison, Dominion, RR Donnelley & Sons and RR Donnelley Receivables Inc. Lazard typically receives a referral fee from Lazard Capital Markets LLC in connection with its underwritings.  Lazard does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

43. Lazard and LMM may have in the past employed and may continue to employ certain insurers or insurance brokers (or their apparent affiliates) who are potential parties-in-interest in these cases.  Lazard does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.