Hearing Date and Time:  December 3, 2008 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: November 28, 2008 at 4:00 p.m. (Prevailing Eastern Time)

Theodore B. Stolman (to be admitted *pro hac vice*)
Scott H. Yun (to be admitted *pro hac vice*)
Carol Chow (to be admitted *pro hac vice*)
Margreta M. Morgulas (NY State Bar No. 4528907)
**STUTMAN, TREISTER & GLATT**
**PROFESSIONAL CORPORATION**
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone: (310) 228-5600
Facsimile:  (310) 228-5788

Attorneys for TPG-Austin Portfolio Holdings LLC

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------x

| | | |
|---|---|---|
| | : | **Chapter 11** |
| **In re** | : | |
| | : | **Case No.  08-13555 (JMP)** |
| **LEHMAN BROTHERS HOLDINGS, INC., *et al.*** | : | |
| | : | **(Jointly Administered)** |
| | : | |
| | : | |
| Debtors. | : | |

-------------------------------------------------x

**NOTICE OF TPG-AUSTIN PORTFOLIO HOLDINGS LLC'S MOTION TO COMPEL
IMMEDIATE ASSUMPTION OR REJECTION OF CREDIT AGREEMENT;
OR IN THE ALTERNATIVE, GRANT RELIEF FROM THE AUTOMATIC
STAY TO PERMIT ALTERNATIVE FINANCING ON A SENIOR SECURED BASIS**

PLEASE TAKE NOTICE that a hearing on the annexed Motion of TPG-Austin

Portfolio Holdings LLC to Compel Immediate Assumption or Rejection of Credit Agreement; or

in the Alternative, Grant Relief from the Automatic Stay to Permit Alternative Financing on a

Senior Secured Basis (the "Motion") will be held before the Honorable James M. Peck, United

States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs

House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy

Court"), on **December 3, 2008 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn: Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and

Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee

for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York

10004 Attn: Andy Velez-Rivera, Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin,

Esq., and Tracy Hope Davis; Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase

Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell,

Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed

in these cases; and (v) Stutman, Treister & Glatt, P.C., 1901 Avenue of the Stars, 12th Floor, Los

Angeles, California 90067, Attn: Theodore B. Stolman, Esq. so as to be filed and received no

later than **November 28, 2008 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection

Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing and failure to appear may result in the relief being granted upon default.


Dated:    November 13, 2008
          Los Angeles, California                    _____/s/ H. Alexander Fisch_____
                                                     Theodore B. Stolman (to be admitted *pro hac vice*)
                                                     Scott H. Yun (to be admitted *pro hac vice*)
                                                     H. Alexander Fisch (to be admitted *pro hac vice*)
                                                     Margreta M. Morgulas (NY State Bar No. 4528907)
                                                     STUTMAN, TREISTER & GLATT
                                                     PROFESSIONAL CORPORATION
                                                     1901 Avenue of the Stars, 12th Floor
                                                     Los Angeles, CA 90067
                                                     Telephone: (310) 228-5600
                                                     Facsimile:  (310) 228-5788


                                                     Counsel for TPG-Austin Portfolio Holdings, LLC

Theodore B. Stolman (to be admitted *pro hac vice*)
Scott H. Yun (to be admitted *pro hac vice*)
Carol Chow (to be admitted *pro hac vice*)
Margreta M. Morgulas (NY State Bar No. 4528907)
**STUTMAN, TREISTER & GLATT**
**PROFESSIONAL CORPORATION**
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone: (310) 228-5600
Facsimile:  (310) 228-5788

Attorneys for TPG-Austin Portfolio Holdings LLC

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------x

|  |  |  |
|---|---|---|
| **In re** | : | **Chapter 11** |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS,** | : | **Case No.  08-13555 (JMP)** |
| **INC.,** *et al,* | : |  |
|  | : | **(Jointly Administered)** |
| **Debtors.** | : |  |

--------------------------------------------------x

**MOTION OF TPG-AUSTIN PORTFOLIO HOLDINGS LLC TO COMPEL
IMMEDIATE ASSUMPTION OR REJECTION OF CREDIT AGREEMENT;
OR IN THE ALTERNATIVE, GRANT RELIEF FROM THE AUTOMATIC
STAY TO PERMIT ALTERNATIVE FINANCING ON A SENIOR SECURED BASIS**

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ......................................................................................................3

    A.     June 1, 2007 Acquisition of the Properties. ....................................................3

    B.     June 1, 2007 Credit Agreement between TPG-Austin and LCPI. ..........................4

    C.     The Breach of the June 1, 2007 Credit Agreement by LCPI. ................................5

    D.     Irreparable Harm Caused by the Breach of the Credit Agreement. ........................6

JURISDICTION AND VENUE .................................................................................................10

RELIEF REQUESTED .............................................................................................................10

ARGUMENT ...........................................................................................................................11

    A.     This Court Should Require LCPI to Immediately Assume or Reject the
          Credit Agreement. .......................................................................................11

    B.     If LCPI Chooses to Assume the Credit Agreement, then Adequate
          Assurance Should be Provided of Future Performance. ......................................13

    C.     If LCPI Chooses to Reject or Extend the Time to Assume or Reject the
          Credit Agreement, TPG-Austin Should be Granted Relief from Stay to
          Permit TPG-Austin the Right to Replace the Breached Revolving Loan
          Under the Credit Agreement with a Replacement Loan on a Senior
          Secured Basis Ahead of the Existing Liens of LCPI. ...........................................13

    D.     Notice was Properly Provided. ......................................................................15

CONCLUSION.........................................................................................................................16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Greenpoint Metallic Bed Co.*,
113 F.2d 881 (2d Cir. N.Y. 1940)..................................................................11

*In re Lionel Corp.*,
23 B.R. 224 (Bankr. S.D.N.Y. 1982)..............................................................12

*In re Petur USA Int'l Co., Inc.*,
35 B.R. 561 (Bankr. W.D. Wa. 1983).............................................................12

*In re Teligent, Inc.*,
268 B.R. 723 (Bankr. S.D.N.Y. 2001) ......................................................11, 12

## FEDERAL STATUTES

11 U.S.C. § 101.....................................................................................................5

11 U.S.C. § 105(d)(2)(A)....................................................................................11

11 U.S.C. § 365(b)(1) ......................................................................................2, 10

11 U.S.C. § 365(d)(2) ..............................................................................10, 11, 12

28 U.S.C. §§ 157..................................................................................................10

28 U.S.C. § 157(b)...............................................................................................10

28 U.S.C. § 1334..................................................................................................10

28 U.S.C. § 1408..................................................................................................10

28 U.S.C. § 1409..................................................................................................10

## OTHER AUTHORITIES

3 Colliers on Bankruptcy Sec. 365.04[2][b] ......................................................11

S. Rep. No. 989, 95th Cong., 2d Sess. 59 (1978),
reprinted in 1978 U.S.C.C.A.N. 5787, 5845.............................................13

## INTRODUCTION

TPG-Austin Portfolio Holdings LLC ("TPG-Austin") is a holding company with direct or indirect ownership interests in ten (10) "Class A" office properties (the "Properties"), totaling approximately 3.5 million rentable square feet located in Austin, Texas. TPG-Austin acquired the Properties from The Blackstone Group for approximately $1.2 billion in June 2007 with the participation of various Lehman entities as an equity participant, lender, underwriter and as administrative agent. As a result of Lehman entities' various roles, Lehman's interests are intertwined with the interests of TPG-Austin in the Properties. TPG-Austin has been forced to file this Motion due to the great uncertainty and potential harm caused by the bankruptcy filings of Lehman Brothers Holdings, Inc. ("LBHI") and Lehman Commercial Paper, Inc. ("LCPI"). As described in more detail below, because, through non-debtor affiliates, LBHI owns a 50% indirect interest in the Properties, the relief sought by this Motion not only protects TPG-Austin but LBHI's bankruptcy estate as well.

TPG-Austin is a party to a Credit Agreement with LCPI dated June 1, 2007, pursuant to which LCPI agreed to extend to TPG-Austin a $192,500,000 term loan (the "Term Loan") and a $100,000,000 revolving loan (the "Revolving Loan"). The $192,500,000 million Term Loan was previously disbursed to TPG-Austin to help fund the initial acquisition of the Properties. However, on September 17, 2008, prior to LCPI filing for bankruptcy, TPG-Austin made a demand upon LCPI for the disbursement of the entire $100,000,000 Revolving Loan in accordance with the terms of the Credit Agreement. The Revolving Loan is integral to providing TPG-Austin with adequate funds required to carry out its business plan, including liquidity to service the Term Loan, other debts as well as fund the capital and operational needs of the Properties.

LCPI breached the Credit Agreement by failing to disburse any funds under the Revolving Loan to TPG-Austin, thereby impairing the ability of TPG-Austin to meet its obligations and protect the equity interests in the underlying Properties. Based on current cash flow projections, TPG-Austin will run out of cash by January 2009, when an approximately $19,000,000 property tax liability for the 10 Properties comes due. Without funds from the Revolving Loan from LCPI, TPG-Austin and its affiliated entities will be unable to meet their obligations, including, *inter alia*, meeting the $19,000,000 property tax liability that comes due in January 2009, servicing the Term Loan as well as various mortgages and mezzanine loans secured by the Properties, and funding its leasing and capital improvement operations. Consequently, if additional financing is not quickly obtained, then TPG-Austin and its affiliates will sustain irreparable harm, and possibly be forced to seek their own bankruptcy protection. Because LBHI, through non-debtor affiliates, owns a 50% indirect interest in the Properties, LCPI's continuing breach of the Credit Agreement will also harm LBHI's bankruptcy estate and its interest in the Properties.

Accordingly, TPG-Austin respectfully requests that this Court require LCPI to immediately assume the Credit Agreement and fund the Revolving Loan. If LCPI chooses to assume the Credit Agreement, LCPI should be required to immediately cure all defaults under the Credit Agreement as outlined in more detail herein, including the prompt disbursement of the $100,000,000 Revolving Loan, and provide adequate assurance of future performance satisfactory to TPG-Austin pursuant to section 365(b)(1) of the Bankruptcy Code.

Alternatively, if LCPI either chooses to reject the Credit Agreement or seeks more time to assume or reject, TPG-Austin respectfully requests that the Court issue an order allowing TPG-Austin to secure alternative financing on a senior secured basis ahead of the

security interests granted to LCPI that secure the Credit Agreement and the Revolving Loan. Such relief is necessary in order to avoid irreparable harm to TPG-Austin and its affiliates, mitigate the damages that have or will be caused by LCPI and preserve the equity in the underlying Properties, which equity is owned 50% by LBHI. In addition, TPG-Austin reserves its right to initiate an adversary proceeding against LBHI and LCPI to liquidate its damages. In the event LCPI later elects to assume the Credit Agreement and its commitment to fund the Revolving Loan, it can pay off the alternative financing within the terms of that new financing, thereby preserving its senior secured position. The alternative relief requested in the Motion fairly balances the interests of TPG-Austin, LBHI, and LCPI and seeks to maintain the status quo, while at the same time giving LCPI additional time to determine whether it is in the best interest of its bankruptcy estate to assume the Credit Agreement. For these and other reasons described in further detail below, TPG-Austin requests that the Court grant the alternative relief sought in the Motion should LCPI fail to assume the Credit Agreement and fund the Revolving Loan.

### FACTUAL BACKGROUND

**A.    June 1, 2007 Acquisition of the Properties.**

1.    On or before June 1, 2007, a partnership comprised of Thomas Properties Group LP, the California State Teachers Retirement System and LBHI formed a partnership called TPG-Austin Portfolio Syndication Partners JV, LP (the "Partnership") to acquire the Properties, comprised of ten (10) "Class A" office properties totaling approximately 3.5 million rentable square feet in Austin, Texas, from affiliates of The Blackstone Real Estate Advisors (the "June 1, 2007 Acquisition").

2.    TPG-Austin is a Delaware limited liability company with its principal place of business in Los Angeles, California.

3.      TPG-Austin either directly or indirectly owns each of the ten Properties. TPG-Austin also supplies the working capital needs for the Properties.

4.      TPG-Austin is an indirect wholly-owned subsidiary of the Partnership. LBHI initially invested $221,250,000.00 for its 75% interest in the Partnership. The Partnership owns a series of wholly-owned limited liability companies (the "REIT LLC's"), which in turn own 100% of TPG-Austin (which in turn own 100% of the Properties, either directly or indirectly through mezzanine level limited liability companies).

5.      LBHI subsequently sold a 25% interest in the Partnership and now holds a 50% interest.

**B.      June 1, 2007 Credit Agreement between TPG-Austin and LCPI.**

6.      In order to help fund the initial acquisition costs and the continued operational needs of the Properties, TPG-Austin entered into a Credit Agreement with LCPI, dated June 1, 2007 (the "Credit Agreement"). (*See* June 1, 2007 Credit Agreement, attached as Exhibit A to the accompanying Declaration of John Sischo (the "Sischo Decl.")).

7.      Pursuant to the Credit Agreement, LCPI is the Administrative Agent and Lehman Brothers, Inc. is the Arranger on behalf of the lenders that are parties to the Credit Agreement. TPG-Austin is informed and believes that LCPI is the sole lender under the Credit Agreement, and no other lenders are parties to the Credit Agreement. The Partnership and the REIT LLC's are guarantors of the loans under the Credit Agreement.

8.      Under the Credit Agreement, LCPI agreed to extend the Term Loan to TPG-Austin in the sum of $192,500,000 and agreed to extend an additional Revolving Loan to TPG-Austin in the sum of $100,000,000.

9.      LCPI had previously disbursed the $192,500,000 Term Loan to TPG-Austin to help fund the initial acquisition of the Properties.

10.    The Revolving Loan is an integral part of the capital structure used to acquire and maintain the Properties including, *inter alia*, providing TPG-Austin with the required liquidity to service the Term Loan, to pay capital costs of leasing space, making necessary capital repairs and replacements and servicing the mortgage and mezzanine level debt on the Properties to the extent of cash flow shortfalls.

11.    Aside from the Credit Agreement, the Property Level Entities (*i.e.*, the subsidiaries of TPG-Austin that directly or indirectly own the individual Properties) entered into separate mortgages and mezzanine loans with various entities, including LBHI, in order to obtain additional financing necessary to fund the initial acquisition of the Properties.

**C.    The Breach of the June 1, 2007 Credit Agreement by LCPI.**

12.    On September 17, 2008, TPG-Austin made a demand upon LCPI for disbursement of the entire $100,000,000 Revolving Loan to be payable on September 19, 2008, in accordance with the terms of the Credit Agreement. The demand was made prior to the date when LCPI filed for bankruptcy.

13.    In material breach of the Credit Agreement, LCPI failed to advance the funds to TPG-Austin pursuant to the Revolving Loan. On September 19, 2008, TPG-Austin provided written notice to LCPI of its failure to fund.

14.    On October 5, 2008 (the "Petition Date"), LCPI filed a voluntary petition for relief under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, in the United States Bankruptcy Court for the Southern District of New York, commencing this case.

15.    TPG-Austin is current on all its obligations under the Credit Agreement and remains able to perform under the Credit Agreement, assuming that LCPI performs its obligations under the Credit Agreement to advance the Revolving Loan.

**D.**     **Irreparable Harm Caused by the Breach of the Credit Agreement.**

16.     The Revolving Loan was a critical part of the capital structure used to acquire the Properties and to assure TPG-Austin and the Property Level Entities that there would be sufficient liquidity to service the debt under the Term Loan pursuant to the Credit Agreement, to service the mortgage loans and the mezzanine loans secured by the Properties, and to fund the leasing operations and capital costs for the Properties to bring the Properties to stabilization.

17.     To this date, LCPI has refused to advance the Revolving Loan pursuant to the Credit Agreement, placing TPG-Austin and its affiliated entities in serious financial jeopardy. Attached as Exhibit B to the Sischo Decl. is the 2009 operating and capital budget (the "Budget") for the Properties for 2009, showing the amounts of capital to be invested in capital repairs and replacements, as well as new leases. As the Court can see from the Budget, the Partnership will require significant amounts of capital in 2009, which was to be funded by the Revolving Loan. TPG-Austin lacks sufficient funds to pay for these costs unless it gets the funds from the Revolving Loan or a new loan from another lender. In order for TPG-Austin to make commitments to vendors and contractors to perform the necessary repairs and replacements or enter into new leases, TPG-Austin must have the funds in hand or reasonable assurance that such funds will be made available as required.

18.     As set forth in further detail hereafter, without the timely advance of the funds required to be disbursed by LCPI under the Revolving Loan, TPG-Austin and its affiliated entities will sustain irreparable harm because:

(i)     its inability to timely satisfy local real property tax bills that must be paid in January 2009, the failure of which will result in the imposition of penalties and events of default under the mortgage loans and mezzanine loans that directly or indirectly encumber the ten Properties;

(ii)    its inability to maintain, repair and operate the Properties as required under the leases with numerous tenants currently occupying the ten Properties;

(iii)    its inability to market, lease and renew leases for existing and future tenants of the ten Properties, which is essential to maintaining the cash flow to service both the mortgage and mezzanine debt as well as the LCPI Term Loan;

(iv)    its inability to maintain the Class A image of the ten Properties whose stabilized rents are conditioned upon being able to provide the required level and quality of services implicit in operating a Class A office structure; and

(v)    the need to incur extraordinary expenses including legal, management and finance costs, including possible insolvency proceedings.

19.    In January 2009, an approximately $19,000,000 property tax liability will become due on the Properties.  Based on current cash flow projections, if LCPI fails to immediately fund the Revolving Loan, TPG-Austin will not have sufficient funds to meet the January 2009 property tax liability.  A failure to timely meet property tax obligations would give rise to penalties and tax liens being imposed on the underlying Properties.  It would also constitute an event of default under the Credit Agreement (as well as constituting an event of default under other loan agreements secured by the relevant underlying Properties).  Equally important, the failure to pay the property taxes in full will immediately impair the ongoing leasing of the Properties, since existing and prospective tenants will be unwilling to spend the time and effort of negotiating leases with TGP-Austin in light of the uncertainty of whether TPG-Austin will have the capital necessary to pay leasing commissions and fund tenant improvements.  It is imperative that TPG-Austin be able to demonstrate to tenants that it has the funds necessary to continue with its leasing of the vacant space to new tenants and to renew the

leases of tenants whose leases are expiring over the next several months. In this economic climate, it is critical to the financial viability of the Partnership and TPG-Austin that the leasing of the Properties continue without abatement or delay.

20.    The Properties have been performing well, but the ongoing leasing and capital program will require substantial additional funds shortly. If LCPI fails to immediately fund the Revolving Loan, TPG-Austin and its affiliates will lack the working capital necessary to, *inter alia*, fulfill their leasing targets, complete necessary capital improvements, and pay for leasing commissions, thereby severely jeopardizing their cash flow and increasing their liabilities.

21.    Once TPG-Austin and its affiliated entities run out of working capital and are no longer able to service their debts, which is projected to occur in January 2009, the non-payment of such debts will trigger a cascade of defaults under the Credit Agreement, as well as the other mortgages and mezzanine loans that are secured by the Properties. Such a catastrophic event would lead to the threat of foreclosures and bankruptcy, thereby impairing the repayment of the LCPI Term Loan and the value of the 50% indirect interest held by LBHI in the Properties, which LBHI initially paid $221,250,000.00 to acquire.

22.    If LCPI fails to fund the Revolving Loan, it will result in irreparable harm to TPG-Austin, its affiliates, and the Properties.

23.    Further, the harm described above will also jeopardize the interests of the debtors' estates in this case because LBHI owns 50% of TPG-Austin and the Properties. In addition, the Properties serve as collateral securing loans made by LBHI and LCPI, including the following:

| LENDER | BORROWER | COLLATERAL | LOAN AMOUNT |
|---|---|---|---|
| LCPI | TPG-Austin Portfolio Holdings LLC | First priority lien on 3 assets (Great Hills Plaza-9600 Great Hills Trail, Park 22-8601 Ranch Road 2222 and Westech 360-8911 Capital of Texas Hwy.) and all of the capital stock of the REIT LLC entities and the Borrower and each of its direct and indirect subsidiaries | $192,500,000.00 |
| LCPI | TPG-Austin Portfolio Holdings LLC | First priority lien on 3 assets (Great Hills Plaza-9600 Great Hills Trail, Park 22-8601 Ranch Road 2222 and Westech 360-8911 Capital of Texas Hwy.) and all of the capital stock of the REIT LLC entities and the Borrower and each of its direct and indirect subsidiaries | $100,000,000.00 |
| LBHI | TPG-300 West 6th Street LLC | 300 West 6th Street, Austin, TX | $127,000,000.00 |
| LBHI | TPG-401 Congress LLC | 401 Congress Avenue, Austin, TX | $150,000,000.00 |
| LBHI | TPG-One American Center LLC | 600 Congress Avenue, Austin, TX | $120,000,000.00 |
| LBHI | TPG-One Congress Plaza LLC | 111 Congress Avenue, Austin, TX | $128,000,000.00 |
| LBHI | TPG-San Jacinto Center LLC | 98 San Jacinto Blvd., Austin, TX | $101,000,000.00 |
| LBHI | TPG-Research Park Plaza I & II LLC | 12401 Research Blvd., Austin, TX | $23,560,000.00 |
| LBHI | TPG-Research Park Plaza I & II Mezzanine LLC | Borrower's interest in 12401 Research Blvd., Austin, TX | $27,940,000.00 |
| LBHI | TPG-Stonebridge Plaza II LLC | 9600 North Mopac Expy., Austin, TX | $19,800,000.00 |
| LBHI | TPG-Stonebridge Plaza II Mezzanine LLC | Borrower's interest in 9600 North Mopac Expy., Austin, TX | $17,700,000.00 |
| | | | $1,007,500,000.00 |

24.    Consequently, if the relief requested herein is not immediately granted, the irreparable harm described above would also seriously jeopardize the interests of the bankruptcy estates of the debtors as well.

479906v9

## JURISDICTION AND VENUE

25.    This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

26.    TPG-Austin requests that the Court enter an order pursuant to

sections 365(d)(2) and 105(d)(2)(A) of the Bankruptcy Code, compelling LCPI to immediately

assume the Credit Agreement by no later than the date scheduled for a hearing on this

Motion, or in the alternative, pending assumption of rejection of the Credit Agreement,

allowing TPG-Austin to replace the Revolving Loan by borrowing such funds on a senior

secured basis ahead of the liens and security interests of LCPI.

27.    If LCPI chooses to assume the Credit Agreement now, LCPI should be

required to cure all defaults arising from its breach of the Credit Agreement as outlined in

more detail herein and provide adequate assurance of future performance satisfactory to TPG-

Austin pursuant to section 365(b)(1) of the Bankruptcy Code.

28.    Alternatively, if LCPI chooses to either reject or extend the time to

assume or reject the Credit Agreement, TPG-Austin respectfully requests that the Court issue

an order allowing TPG-Austin to secure alternative financing for LCPI's failure to advance

the $100,000,000 Revolving Loan, including the granting of a lien senior to all interests

pledged to LCPI as security for the Credit Agreement, including the Term Loan and the

Revolving Loan with respect to any new money funded.  Such financing is necessary to

avoid irreparable harm to TPG-Austin and its affiliates and to protect the equity in the

Properties, including the 50% equity interest held by LBHI.  Such relief, if granted, would

also preserve the debtors' interests in TPG-Austin and the underlying Properties.  In addition,

TPG-Austin reserves its right to initiate an adversary proceeding against the debtor to liquidate its damages.

## ARGUMENT

**A.    This Court Should Require LCPI to Immediately Assume or Reject the Credit Agreement.**

29.    TPG-Austin respectfully requests that the Court enter an order compelling LCPI to immediately assume or reject the Credit Agreement by no later than the date scheduled for a hearing on this Motion.

30.    Section 365(d)(2) of the Bankruptcy Code provides in pertinent part that "the court, on the request of any party to [an executory contract], may order the [debtor in possession] to determine within a specified period of time whether to assume or reject such contract . . ." This is a codification of a case law remedy that had developed under the prior Act, including a leading Second Circuit opinion. 3 Colliers on Bankruptcy Sec. 365.04[2][b], *citing In re Greenpoint Metallic Bed Co.*, 113 F.2d 881, 883-884 (2d Cir. N.Y. 1940) ("the holder of an executory contract with the debtor . . . is not helpless, for he may insist that his contract be either rejected or assumed under the plan and may apply to the bankruptcy court to protect his interest at the confirmation hearing or before").

31.    Setting a date by which the debtor must assume or reject executory contracts is one of the specifically enumerated powers granted to the Bankruptcy Court. 11 U.S.C. § 105(d)(2)(A). Although under section 365(d)(2), a debtor is allowed a reasonable time to decide whether to assume or reject, what is a "reasonable" time depends upon the facts and circumstances of the particular case and is within the discretion of the Court. *See In re Teligent, Inc.*, 268 B.R. 723, 738 (Bankr. S.D.N.Y. 2001); 3 Colliers on Bankruptcy Sec. 365.04[2][b]. In setting a time to assume or reject an executory contract, courts will consider, *inter alia*, the

nature of the interest at stake, the balance of the harm to the parties, the good to be achieved and the safeguards afforded all of the parties. *See In re Lionel Corp.*, 23 B.R. 224, 225-26 (Bankr. S.D.N.Y. 1982).

32.     TPG-Austin cannot wait any longer for a decision from LCPI as to whether it will cure its default and honor its obligation to fund the Revolving Loan.  If the Revolving Loan is not immediately honored, LCPI's continuing breach will cause irreparable harm to TPG-Austin (of which 50% is owned by debtor LBHI), its affiliated entities, and the Properties (which also serve as collateral for the loans extended by debtors LCPI and LBHI). Courts have held that in balancing the harm, where a debtor's continuing breach of an executory contract will cause irreparable harm to the non-debtor party, the debtor should not be allowed to shirk its responsibility by rejecting the contract. *See In re Petur USA Int'l Co., Inc.*, 35 B.R. 561 (Bankr. W.D. Wa. 1983).

33.     As LCPI continues its breach under the Credit Agreement and TPG-Austin runs out of funds, TPG-Austin's damages against LCPI mount, due to the fact that TPG-Austin and affiliates will be subject to penalties and defaults for non-payment of real estate taxes as well as cross-defaults under the separate loans that are directly secured by each of the Properties.

34.     In deciding whether to expedite the timeframe in which the debtor must decide whether to assume or reject an executory contract, courts will consider the "damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code." *See In re Teligent, Inc.*, 268 B.R. 723, 738 (Bankr. S.D.N.Y. 2001).  Time is clearly of the essence here and the severe economic harm to TPG-Austin and its affiliates outweighs any argument that LCPI may have that it needs further time to decide whether to assume or reject. "Congress intended [section 365(d)(2)] to 'prevent parties in contractual or lease relationships with the

debtor from being left in doubt concerning their status vis-a-vis the estate.'" S. Rep. No. 989,

95th Cong., 2d Sess. 59 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5845.  The Court should

exercise its discretion and require LCPI to decide immediately whether to assume or reject the

Credit Agreement.

### B.    If LCPI Chooses to Assume the Credit Agreement, then Adequate Assurance Should be Provided of Future Performance.

35.    Should LCPI chose to assume the Credit Agreement *cum onere* as required

by law, it should be required to cure all defaults and breaches under the Credit Agreement including

the immediate advancing of the $100,000,000 Revolving Loan and provide TPG-Austin adequate

assurance of future performance.

### C.    If LCPI Chooses to Reject or Extend the Time to Assume or Reject the Credit Agreement, TPG-Austin Should be Granted Relief from Stay to Permit TPG-Austin the Right to Replace the Breached Revolving Loan Under the Credit Agreement with a Replacement Loan on a Senior Secured Basis Ahead of the Existing Liens of LCPI.

36.    If LCPI decides to reject the Credit Agreement or extend the time to

assume or reject the Credit Agreement, TPG-Austin should be allowed to promptly pursue all of

its rights and remedies (except for enforcement of a money damages claim), including obtaining

equitable relief to allow an alternative lender, including one or more of the existing partners, to

lend money to TPG-Austin in place of the Revolving Loan and be provided with a security

interest senior to all interests pledged to LCPI as security under the Credit Agreement for both

the Term Loan and the Revolving Loan, including senior mortgages on three of the Properties

(referred to as Park 22, Westech 360 and Great Hills Plaza Properties), which are currently

encumbered by senior mortgages held by LCPI.  Such relief is required to allow TPG-Austin to

avoid the irreparable harm that would otherwise result, to preserve the value of assets in which

certain of the debtors have interest, and to mitigate LCPI's damages exposure and to preserve LBHI's equity interests.

37.     To achieve this equitable result, it will also be necessary to modify the Credit Agreement as TPG-Austin and its affiliates are contractually prohibited from securing financing to replace the Revolving Loan. *See e.g.* Credit Agreement, ¶ 7.2 "Limitation on Indebtedness," ¶ 7.3 "Limitation on Liens" (attached as Exhibit A to the Sischo Decl.).

38.     Given current credit market conditions, the only possible way TPG-Austin can secure replacement financing for the Revolving Loan is on a senior secured basis with priority over the existing liens of LCPI. In today's market conditions, no one will lend on a subordinated basis behind LCPI's $192,000,000 Term Loan and senior lien. TPG-Austin is currently working to obtain the best terms available in the market for the replacement financing for the Revolving Loan and will supplement the Motion with a term sheet for such replacement financing as soon as one becomes available.

39.     A swift resolution of this issue is necessary if any new funding is to come in time to avoid irreparable harm to the Properties, TPG-Austin, the Partnership and the partners. Allowing TPG-Austin to secure a senior loan is a necessary first step toward obtaining the funding that will mitigate the damages against LCPI for its breach of the Credit Agreement. On the other hand, failure to obtain additional financing in a timely manner will severely damage, if not completely destroy, TPG-Austin and its affiliated entities and erode the equity in the Properties.

40.     A prompt resolution is also required in order to protect the interests of the bankruptcy estates. Debtor LBHI holds an indirect 50% partnership interest in TPG-Austin. Further, the Properties serve as collateral for approximately $715,000,000.00 in separate loans extended by LCPI and LBHI, in addition to the Term Loan and Revolving Loan under the Credit

Agreement. A quick resolution is necessary to not only prevent further irreparable harm to TPG-Austin and its affiliated entities, but it would also protect the interests of the bankruptcy estates of LCPI and LBHI since in the absence of the Credit Agreement being immediately assumed or alternative financing being approved as requested the separate loans of LCPI and LBHI that encumber the Properties will eventually go into default because cash flows are not sufficient to pay the debt service on those loans through 2009 and thereafter. Only by completing additional leases will the cash flows from the Properties be sufficient to service those mortgage loans. If, at a later date, LCPI decides to assume the Credit Agreement, including the Revolving Loan, it can do so by repaying the replacement loan and assuming the Credit Agreement *cum onere* as required by law and complying with its terms.

41. Under the relief requested, pending resolution of the claims against LCPI for breaching the Credit Agreement by failing to fund the Revolving Loan, TPG-Austin will continue to timely make all payments to LCPI for amounts due under the Term Loan, as well as the payment due under the separate real estate loans that encumber the Properties.

**D. Notice was Properly Provided.**

42. Notice of this motion has been served in accordance with the procedures set forth in the order entered on September 22, 2008 governing case management and administrative procedures for this case [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the attorneys for the Debtor's postpetition lenders; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New York; (vii) the attorneys for the Debtor; and (viii) all parties who have requested notice in these chapter 11 cases. No other or further notice need be provided.

## CONCLUSION

LCPI should be ordered to immediately decide whether to assume or reject the Credit Agreement. If LCPI cannot immediately perform under the Credit Agreement, it should reject the contract and the Court should grant relief from stay and allow TPG-Austin to borrow up to $100,000,000.00 from one or more alternative lenders, including one or more of the partners in the Partnership, to fund the required capital for the Properties and to grant such alternative lender or lenders (i) first mortgage liens on each of Great Hills Plaza, Westech 360, and Park 22 with a priority over the existing mortgage liens in favor of LCPI, and (ii) a security interest in the equity owned by TPG-Austin in each of the 7 mezzanine level entities (TPG 401 Congress Mezzanine LLC, TPG-300 West 6th Street Mezzanine LLC, TPG-San Jacinto Center Mezzanine LLC, TPG-One Congress Plaza Mezzanine LLC, TPG-One American Center Mezzanine LLC, TPG Stonebridge Plaza II Mezzanine LLC, and TPG-Research Park Plaza I & II Mezzanine LLC) that in turn own the Property level entities for the 7 buildings in Austin, Texas, with such security interests to be senior in priority to all liens or security interests pledged to LCPI as security for the Term Loan and Revolving Loan. A prompt resolution is necessary in order to avoid further irreparable injury to TPG-Austin, its affiliated entities, the underlying Properties, and the bankruptcy estates' interests in these entities and properties.

Dated:   November 13, 2008
            Los Angeles, California

            */s/ H. Alexander Fisch*
            Theodore B. Stolman (to be admitted *pro hac vice*)
            Scott H. Yun (to be admitted *pro hac vice*)
            H. Alexander Fisch (to be admitted *pro hac vice*)
            Margreta M. Morgulas (NY State Bar No. 4528907)
            STUTMAN, TREISTER & GLATT
            PROFESSIONAL CORPORATION
            1901 Avenue of the Stars, 12th Floor
            Los Angeles, CA 90067
            Telephone: (310) 228-5600
            Facsimile: (310) 228-5788
            Counsel for TPG-Austin Portfolio Holdings, LLC