WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re                                                    :    **Chapter 11 Case No.**
                                                         :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :    **08-13555 (JMP)**
                                                         :
                                      Debtors.           :    **(Jointly Administered)**
                                                         :
                                                         :
------------------------------------------------------------------x

**NOTICE OF SECOND SUPPLEMENTAL DECLARATION OF BRYAN P. MARSAL IN
SUPPORT OF DEBTORS' MOTION PURSUANT TO
SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE FOR FINAL ORDER
AUTHORIZING THE DEBTORS TO (A) RETAIN ALVAREZ & MARSAL NORTH
AMERICA, LLC TO PROVIDE THE DEBTORS
A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL
PERSONNEL, AND (B) TO APPOINT THE CHIEF RESTRUCTURING
<u>OFFICER, *NUNC PRO TUNC* TO THE COMMENCEMENT DATE</u>**

**PLEASE TAKE NOTICE** that, on November 17, 2008, Lehman Brothers

Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors in possession (together, the "<u>Debtors</u>") filed the attached Second

Supplemental Declaration of Bryan P. Marsal in Support of the Debtors' Motion Pursuant to

Sections 105(a) and 363(b) of the Bankruptcy Code for Final Order Authorizing the Debtors to

(A) Retain Alvarez & Marsal North America, LLC to Provide the Debtors a Chief Restructuring

Officers and Additional Personnel, and (B) to Appoint the Chief Restructuring Officer, *Nunc Pro Tunc* to the Commencement Date.

Dated: November 17, 2008
New York, New York

/s/ *Richard P. Krasnow*
Richard P. Krasnow, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
:
In re                                                            :    Chapter 11 Case No.
                                                                 :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :    08-13555 (JMP)
                                                                 :
    Debtors.                                                 :    (Jointly Administered)
                                                                 :
                                                                 :
------------------------------------------------------------------x

**SECOND SUPPLEMENTAL DECLARATION OF BRYAN P. MARSAL IN
SUPPORT OF DEBTORS' MOTION PURSUANT TO
SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE FOR
FINAL ORDER AUTHORIZING THE DEBTORS TO (A) RETAIN ALVAREZ &
MARSAL NORTH AMERICA, LLC TO PROVIDE THE DEBTORS
A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL
PERSONNEL, AND (B) TO APPOINT THE CHIEF RESTRUCTURING
OFFICER, *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

Bryan P. Marsal makes this declaration under 28 U.S.C. § 1746, and states:

1.  I am a Managing Director with Alvarez & Marsal North America, LLC (together with its wholly owned subsidiaries, affiliates (all of which are owned by Alvarez & Marsal North America, LLC's parent company and employees), agents, independent contractors and employees, "A&M"), a restructuring advisory services firm with numerous offices throughout the world. I submit this second supplement (the "Second Supplemental Declaration") to the original declaration (the "Original Declaration") and the supplemental declaration (the "Supplemental Declaration") that I submitted in connection with the motion (the "Motion")[1] of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors") for an order authorizing the employment of A&M as restructuring managers under the terms and conditions

---

[1] Capitalized terms that are used but not defined in this Second Supplemental Declaration have the meanings ascribed to them in the Motion.

set forth in the Motion.  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

## A&M's Incentive Fee

2. A&M has many important roles in these chapter 11 cases.  In furtherance of its duties, A&M will manage property of the estates in a way that maximizes the distributable cash or other value to creditors ("Asset Management").  A&M will also oversee the administration of claims filed against the estates so that such claims are appropriately minimized ("Claims Management").  With respect to both Asset Management and Claims Management, A&M serves as a fiduciary to ensure that the Debtors' separate estates are administered in way that is consistent with applicable law for the benefit of all creditors.  Accordingly, cash will be retained and tracked by separate legal entity.  Expenses for the administration of the estates will be allocated on a fair and appropriate basis with transparency to all.

3. As the manager of the chapter 11 process for the Debtors, and as disclosed in the Original Declaration and the Supplemental Declaration, A&M will seek from the Debtors payment of, among other things, certain incentive compensation (the "Incentive Fee") for the results it obtains in fulfilling its Asset Management and Claims Management functions.  I am submitting this Second Supplemental Declaration for the purpose of describing the elements of the Incentive Fee.

## Incentive Fee Terms

4. The Incentive Fee has two components, both of which are generally described below:  (i) the Asset Management Incentive Fee; and (ii) the Claims Management Incentive Fee.  The aggregate amount of both components of the Incentive Fee will be capped at 25% of the hourly professional fees paid to A&M over the duration of this engagement.

*Asset Management Incentive Fee*

5.  A portion of the Incentive Fee will be determined by reference to the value of Unsecured Distributions (as defined below). The Debtors, and any successors thereof, shall pay and distribute to A&M an Incentive Fee equal to 0.175% (17.5 bps) of all Unsecured Distributions greater than $15 billion.

6.  As used herein, the term "Unsecured Distributions" shall mean any consideration or distribution of any kind or in any form whatsoever paid to, or received or retained by, any unsecured creditor of any Debtor or non-debtor affiliate of a Debtor ("Non-Debtor"), or to any reserve or escrow for the benefit of any allowed, disputed or contingent unsecured claim against any Debtor or Non-Debtor, whether distributed pursuant to a plan of reorganization, a plan of liquidation, as an interim or other distribution during the administration of these chapter 11 cases, or as otherwise distributed following the termination, dismissal or conversion of all or any of these chapter 11 cases to one or more cases under chapter 7 of the Bankruptcy Code or otherwise.

7.  The Incentive Fee for Asset Management shall be payable in installments. Accordingly, an Incentive Fee shall be paid as and when each Unsecured Distribution is made to any unsecured creditor of the Debtors or Non-Debtors. The Incentive Fee for Asset Management shall be paid to A&M in the same consideration to be received by such creditor(s) (including, without limitation, cash, notes, rights, options, trust certificates, equity or other contractual rights or property) or, at the option of the Debtors and with the consent of the Creditors' Committee, in cash.

8.     For purposes of determining the amount of cash to be paid to A&M when the applicable Unsecured Distribution consists of non-cash consideration, such non-cash consideration shall be valued as follows:

> (a) if the non-cash consideration includes publicly-traded debt, equity or commodity securities, the value of such securities shall be calculated based on the weighted average of the last sale or closing price during the ten trading days immediately prior to the relevant distribution date;
>
> (b) if the value of the non-cash consideration cannot be determined under clause (a), but the value is disclosed in a court-approved disclosure statement for any plan of reorganization or plan of liquidation, or any other court-approved disclosure to creditors of the Debtors, the value of the non-cash consideration shall be equal to the value disclosed in such disclosure statement;
>
> or (c) if the non-cash consideration cannot be valued under clauses (a) or (b), then A&M will prepare a valuation thereof for the purposes of calculating the Incentive Fee; *provided however*, that if A&M prepares a valuation and the Creditors' Committee and A&M are unable to agree regarding the amount of such valuation, then the Bankruptcy Court will determine the value of the non-cash consideration and the Bankruptcy Court's decision will be final and binding on A&M and all parties in interest.

*Claims Management Incentive Fee*

9.     The Debtors, and any successors thereof, shall pay and distribute to A&M an Incentive Fee in an amount to be determined at the conclusion of the case based on A&M's substantial contribution to the management and mitigation of claims against the estates.

**Final Application for Allowance**

10.     If Incentive Fees become payable or are otherwise requested in accordance with the terms described above, A&M will submit an application for their allowance, which application shall be subject to a reasonableness standard consistent with section 330 of the Bankruptcy Code.

I declare under penalty of perjury that, to the best of my knowledge, and after reasonable inquiry, the foregoing is true and correct.

Dated this 17th day of November 2008

By: /s/ *Bryan P. Marsal*
Bryan P. Marsal
Managing Director