Hearing Date and Time:  November 20, 2008 at 2:00 p.m.

WEIL, GOTSHAL & MANGES LLP
Attorneys for Debtors
and Debtors in Possession
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Michael P. Kessler, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
|  |  : |  |
| --- | --- | --- |
| In re: | : | Chapter 11 Case No. |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS, INC.,** *et al.,* | : | 08-13555 (JMP) |
|  | : |  |
| Debtor, | : | (Jointly Administered) |
|  | : |  |

------------------------------------------------------------------x

**DEBTORS' OBJECTION TO THE SCC ENTITIES'**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the above-captioned chapter 11 cases (collectively, with LBHI, the "Debtors") as and for their objection to the motion (the "Motion") dated November 10, 2008 of the SCC Entities[1] for relief from the automatic stay in the above-captioned cases, respectfully represent:

**PRELIMINARY STATEMENT**

The SCC Entities cannot show that cause exists under the Bankruptcy Code to

---

[1] The SCC Entities are defined as follows in the Motion:  SCC Acquisitions, Inc.; SunCal Management, LLC; SCC Acquisitions, LLC; SunCal Communities II, LLC; SunCal Bickford Ranch, LLC; SCC/Palmdale, LLC; Palmdale Hills Property, LLC; SunCal Emerald Meadows Ranch, LLC; Acton Estates, LLC; SJD Partners, Ltd.; SJD Development Corp.; SunCal Summit Valley, LLC; Seven Brothers, LLC; Kirby Estates, LLC; SunCal Century City, LLC; SunCal Oak Knoll, LLC; SunCal Torrance Properties, LLC; SunCal Beaumont Heights, LLC; SunCal Johannson Ranch, LLC; SunCal Marblehead, LLC; SunCal Heartland, LLC; SunCal Communities I, LLC; SunCal Communities III, LLC; LB/L-SunCal Northlake, LLC; LB/L-SunCal Oak Valley, LLC; SunCal PSV, LLC; Delta Coves Venture, LLC; North Orange Del Rio Land, LLC; Tesoro SF LLC; and SCC Communities LLC.  Certain of the SCC Entities have filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (as defined herein) or have had involuntary petitions for relief under chapter 11 of the Bankruptcy Code filed against them. Such involuntary petitions have not yet been adjudicated.  The entities pursuant to which voluntary or involuntary petitions are currently pending are referred to herein as the "SCC Debtors."

grant their blanket request for an order lifting the automatic stay in the Debtors' chapter 11 cases. The SCC Entities ask this Court to lift the automatic stay to allow them to take unfettered actions in their chapter 11 cases – including actions that will threaten the Debtors' interests and unnecessarily incur great expense – without showing that the SCC Entities have a viable game plan with a reasonable chance for success.  Indeed, the SCC Entities request that this Court open the door to allow them to pursue *in terrorem* actions against the Debtors which, if permitted, could result in great losses to the Debtors' estates unless the Debtors spend large sums of money to protect their interests.  Without limitation, the SCC Entities request that they be permitted by this Court to file motions in their chapter 11 cases seeking (i) authorization of the use of the Debtors' cash collateral, (ii) approval of postpetition debtor-in-possession ("DIP") financing on a priming lien basis that would subordinate the Debtors' first lien interests in a large number of properties to those of a third-party DIP lender, (iii) authorization of the sale of certain assets free and clear of the Debtors' liens, claims and encumbrances, and (iv) confirmation of a plan of reorganization that could impair the Debtors' interests.  The SCC Entities fail to specify the parameters of any such proposed motions.  Not only have the SCC Entities failed to show that cause exists to modify the automatic stay to enable the SCC Entities to pursue *any* of the aforementioned actions, but also the SCC Entities' bare-bones motion also fails to establish the requisite cause to grant their "everything but the kitchen sink" request.

Although it may be understandable that the SCC Debtors wish to manage their bankruptcy cases without having to seek this Court's relief for actions they take, this Court must, likewise, be cognizant of the competing interests of *these* Debtors.  Granting the broad relief requested by the SCC Entities will necessarily require the Debtors to expend valuable estate resources to defend and litigate in the SCC Entities' chapter 11 cases every matter, big or small, that potentially affects their interests, thus opening a Pandora's box of unknown magnitude.

Accordingly, the SCC Entities' arguments to substantiate their broad request – namely that they be allowed to avail themselves of the same rights as the Debtors in their chapter 11 cases – are without merit. If the stay relief requested is granted, the SCC Entities will be able to administer their chapter 11 cases as they wish, but the Debtors will be stripped of the automatic stay protections granted to them by the Bankruptcy Code. To the extent this Court determines that cause exists to lift the automatic stay, such relief should be circumscribed and limited to ensure that the Debtors' interests remain well protected.

## FACTUAL BACKGROUND

1.  Lehman Commercial Paper, Inc. ("LCPI"), Lehman ALI, Inc. ("Lehman ALI"), a non-debtor affiliate of LBHI, OVC Holdings LLC ("OVC Lender"), a non-debtor affiliate of LBHI, and Northlake Holdings LLC ("Northlake Lender" and together with LCPI, Lehman ALI and OVC Lender, the "Lehman Lenders"), a non-debtor affiliate of LBHI, are lenders to certain of the SCC Entities (collectively, the "SCC Borrowers") pursuant to various separate loan agreements and are owed by the SCC Borrowers approximately $2.0 billion on account of such obligations (the "Obligations"). The Obligations are secured, in part, by first-priority deeds of trust on various real estate projects located in the State of California (collectively, the "Projects").

2.  On or about May 23, 2008, LBHI, Lehman ALI, LCPI, and certain of the SCC Entities (collectively, the "SCC Parties") entered into an agreement (the "Agreement") pursuant to which the parties thereto agreed to enter into a settlement agreement with respect to certain of the Obligations and with respect to certain other obligations and relationships between the parties and/or their respective affiliates pursuant to which, among other things, certain of the Projects were to be conveyed to affiliates of the Lehman Lenders in lieu of foreclosure, all as more particularly described in the Agreement (collectively, the "Settlement Transactions").

Pursuant to the Agreement, and pending the closing of the Settlement Transactions, Lehman ALI, as the then-lender under each of the loans governed by the Agreement, agreed to meet with the SCC Parties to discuss and determine the performance of certain work and the payment of certain urgent payables with respect to certain of the Projects (as described in the Agreement) after which Lehman ALI would make protective advances to reimburse or provide funds to such SCC Parties for the payment of those payables approved by Lehman ALI.

3. On or about September 15, 2008 (the "Petition Date"), LBHI commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Certain of its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code shortly thereafter.

4. During October and early November 2008, representatives of the SCC Parties and the Lehman Lenders discussed and corresponded regarding the SCC Parties' asserted need to pay certain urgent payables for certain Projects. As noted in the Motion, the Lehman Lenders were willing to disburse certain additional funds. Maintaining that these amounts were insufficient for their needs, on or about November 7, 2008, certain of the SCC Entities filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "California Court").

5. On or about November 10, 2008, the SCC Entities filed the Motion in this Court pursuant to which they seek broad relief from the automatic stay imposed in the Debtors' chapter 11 cases.

## ARGUMENT

## RELIEF FROM THE AUTOMATIC STAY SHOULD BE DENIED

6. The automatic stay is a fundamental protection afforded to a debtor under

the Bankruptcy Code.  *See* H.R. Rep. No. 95-595, at 340 (1977) reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97; *see also Eastern Refractories Co., Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998).  In pertinent part, section 362(a) of the Bankruptcy Code provides that:

> [A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities of –
>
> (1)  the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> [. . .]; or
>
> (3)  any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a)(1), (3).

7. The automatic stay not only "provide[s] debtors with temporary respite from their creditors so that they may have an opportunity to develop and implement plans of reorganization to satisfy their creditors and resuscitate their businesses[]," *In re 160 Bleeker St. Assocs.*, 156 B.R. 405, 411 (S.D.N.Y. 1993), but also it preserves property of the estate for use in the Debtors' reorganization.  *In re Prudential Lines, Inc.*, 114 B.R. 27, 29 (Bankr. S.D.N.Y. 1989).

8. Under limited circumstances, however, the Bankruptcy Code recognizes that relief from the automatic stay may be appropriate.  11 U.S.C. § 362(d); *see also In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990).  The SCC Entities seek relief from the automatic stay pursuant to the grounds set forth in subsection (1) of section 362(d) of the Bankruptcy Code.  In pertinent part, the statute provides:

> On request of a party in interest . . . the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1)  for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1). Under section 362(g) of the Bankruptcy Code, the party seeking relief has the burden of proof to make an initial showing of cause. If the movant makes a *prima facie* showing of cause, the burden shifts to the debtor to show cause does not exist to modify the automatic stay. If, however, the movant fails to establish a *prima facie* showing of cause, then "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax Indus., Inc.,* 907 F.2d at 1285.

9. As demonstrated below, the SCC Entities have not carried their burden of establishing "cause" under section 362(d)(1) for *any* stay relief, let alone the expansive stay relief they request. For the reasons set forth below, the Motion must be denied.

A. **The SCC Entities have failed to Demonstrate "Cause" for Relief under Section 362(d)(1) of the Bankruptcy Code.**

10. Although the term "cause" is not defined in the Bankruptcy Code, the Court in the seminal Second Circuit case, *In re Sonnax Industries, Inc.,* set forth a list of twelve factors that may constitute "cause" for purposes of section 362(d). Among these factors are (i) whether the debtor's bankruptcy proceeding is connected to the other proceeding, (ii) the balance of harms, (iii) the interests of judicial economy and economical resolution of litigation, and (iv) whether the action primarily involves third parties. *See In re Sonnax Indus., Inc.,* 907 F.2d at 1286.

11. Arguing that the balance of harms weighs in their favor, the SCC Entities list a number of Projects that they state need redress. Importantly, however, certain of the Projects listed in the Motion as being in need of immediate redress are not the subject of the Agreement or are no longer subject to any of the SCC Entities' interests.[2] The SCC Entities

---

[2] For example, none of the SCC Entities currently have an interest in the Pacific Point Project (as defined in the Motion). Similarly, the 10000 Santa Monica Project, the Oak Knoll Project and the Delta Cove Project (each as defined in the Motion) are not the subject of the Agreement.

further contend they are entitled to relief from the automatic stay because they would like to be able to administer the debtor SCC Entities' chapter 11 cases without the concomitant burden of having to obtain stay relief from this Court for their every action that affects the interests of the Debtors.  Specifically, the SCC Entities have identified a *non-exclusive list* of four contemplated actions for which they have requested stay relief: (i) approval of postpetition DIP financing on a priming lien basis that would subordinate the Debtors' interests to those of a third-party DIP lender (including, theoretically, for certain SCC Entities who are not currently debtors under the Bankruptcy Code), (ii) authorization of the use of the Debtors' cash collateral, (iii) authorization of the sale of certain assets free and clear of the Debtors' liens, claims and encumbrances, and (iv) confirmation of a plan of reorganization that could impair the Debtors' interests, although they do not limit their stay relief request to these.  The SCC Entities have failed to establish cause, particularly on an expedited basis, for the relief sought.

    12.  <u>DIP Financing</u>.  Although the Motion does not identify the prospective DIP lender or contain any other factual information concerning the proposed DIP, the SCC Entities have provided the Debtor with a copy of a proposed term sheet (the "<u>Term Sheet</u>").  As currently drafted, the terms of the proposed DIP are completely unworkable for the SCC Debtors, and it is doubtful the proposed DIP loan can be approved by the California Court. Proceeding with a DIP motion to approve the provided Term Sheet would be a fool's mission. First and foremost, the Term Sheet requires that the DIP facility prime the Debtors' liens under Bankruptcy Code section 364(d).  Neither the Motion nor the attached Declaration of Bruce Cook, however, provide any information on how the proposed DIP loan can or may prime the Debtors' first and primary liens.  This glaring failure to explain is no accident – there are no means available to provide the Debtors with the adequate protection necessary to prime their liens.  The real property collateral values are well below the amount of the Debtors' liens.  The

SCC Entities have no unencumbered assets of more than nominal value, equity value in encumbered assets, or other means of providing adequate protection. In addition, the Term Sheet contemplates (a) an interest rate on the outstanding balance of the DIP credit facility at a minimum rate of 14% per annum (with default interest accruing at an additional 5% per annum), (b) commitment and exit fees of $4.5 million in total (including fees attributable to advances made for the payment of such fees) which result in an effective interest rate of approximately 38% over the term of the DIP credit facility assuming that the full amount of the commitment under the DIP credit facility is funded immediately, (c) a closing to occur on December 1, 2008 (which, of course, would necessarily require the SCC Entities to negotiate, document and obtain court approval of such DIP facility by December 1, 2008), (d) an exclusivity provision that would obligate the SCC Entities to pay the proposed DIP lender $2.25 million in liquidated damages if violated, and (e) cross-defaulting the DIP facility with other debt of the SCC Entities (which is prepetition debt that is already in default) and even with debt of SCC Entities that may not be in bankruptcy. Moreover, it even requires liens on collateral that the SCC Entities do not own. All of the interest and fees are contemplated to be paid from DIP loan advances – in effect, the proposed DIP lender would pay itself the high interest charges and egregious fees and by doing so take priming liens on the Debtors' collateral. The SCC Entities have no means or hope of paying back the DIP loan, and such loan is bound to be in default at the end of the maximum 90-day term. The proposal is a classic "loan to own" designed to strip the Debtors of their valuable collateral. The contemplated DIP loan agreement cannot be approved as currently proposed. Accordingly, it is not clear that the balance of harms weighs in favor of the SCC Entities.

13.   <u>Use of Cash Collateral</u>.   The SCC Entities also state they will seek to use the Debtors' cash collateral, but provide no additional parameters within which this Court may

evaluate the viability of the proposed terms. While it is not for this Court to determine the merits of this request, certainly to the extent the Debtors have to expend their resources and to respond to and defend the debtor SCC Entities' requests, the SCC Entities should be required to show a likelihood that the request they will put forth in their chapter 11 cases is reasonable. Without any additional color, this Court cannot weigh the balance of harms between the debtors.

14. <u>Sale of Assets and Plan Confirmation</u>. The SCC Entities have not articulated why expedited stay relief, at this juncture, to enable the SCC Debtors to confirm a plan of reorganization and/or an asset sale, will assist them in their immediate goal of estate preservation. There are no imminent plans to sell the SCC Debtors' assets, and no plan, to the Debtors' knowledge, is contemplated as of yet. Indeed, the SCC Debtors' chapter 11 cases are only a couple of weeks old – if that. The Debtors and this Court should be afforded not only the relevant information pertaining to these two requests, but also the time in which to evaluate their merits. Accordingly, the Debtors submit that cause has not been established to warrant expedited stay relief so as to enable the SCC Debtors to seek to sell assets or confirm a plan. Here, too, the balance of harms weighs in the Debtors' favor.

15. Applying the other *Sonnax* factors similarly supports the conclusion that stay relief is not warranted. For example, unlike in more frequent circumstances where stay relief is sought to proceed against a third party, here the stay relief sought would directly affect the Debtors and their estates. Consequently, the requested stay relief is not appropriate and should not be granted.

### B. <u>Any Stay Relief Granted Should Be Narrowly Tailored.</u>

16. Importantly, the SCC Entities do not seek to limit their expedited request to the four aforementioned actions. Instead, and without providing this Court or the Debtors any substance on which to evaluate their request, the SCC Entities seek *carte blanche* authority from

this Court to do as they wish in their chapter 11 cases as though the Debtors were not in bankruptcy. The SCC Entities reason that they should be afforded "the same Congressionally sanctioned rights as Lehman has sought to pursue in these cases without the threat of violating the automatic stay in these cases." Ironically, and contrary to what the SCC Entities imply, this request, if granted, does not have the effect of leveling the playing field. Instead, granting the broad relief sought by the SCC Entities would strip the Debtors of *their* Congressionally sanctioned rights. The Debtors, in these cases, are charged with preserving their estates and resources for the benefit of their creditors. If the Court grants the relief requested by the SCC Entities, the Debtors may find themselves in the undesirable position of having to litigate and defend much more than life and safety issues, thus draining their employee resources and economic value – and creating dangerous precedent for others to seek similar overarching stay relief. This result defies the policies underlying the Bankruptcy Code and implies that one debtor's bankruptcy case is more important than another's.

17.     To the extent the Court finds that cause exists to modify the automatic stay – something that, as noted above, the Debtors dispute, the Court should tailor the relief granted to the specific, identified immediate actions sought to be taken by the SCC Entities, rather than terminating or broadly modifying the stay with respect to the Debtors' entire chapter 11 cases. Section 362(d) of the Bankruptcy Code authorizes bankruptcy courts to grant relief from the stay by "terminating, annulling, modifying, or conditioning" the stay. 11. U.S.C. § 362(d). In the case of modifying or conditioning the stay, "bankruptcy courts have the plastic powers to modify or condition an automatic stay so as to fashion the appropriate scope of relief." *Eastern Refractories Co., Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998). By narrowly tailoring any potential stay relief, the Court will ensure that such stay relief is limited to

redress specific concerns, and the Debtors' interests in their own chapter 11 cases remain protected.

WHEREFORE, the Debtors respectfully request that the Court deny the Motion and grant the Debtors such other relief as is just.

Dated: November 18, 2008
      New York, New York

                             /s/ Michael P. Kessler
                             Michael P. Kessler, Esq.

                             WEIL, GOTSHAL & MANGES, LLP
                             767 Fifth Avenue
                             New York, NY 10153-0019
                             Telephone: (212) 310-8000
                             Facsimile:  (212) 310-8007

                             Attorneys for Debtors
                             and Debtors in Possession