Locke Lord Bissell & Liddell LLP
Jay G. Safer
885 Third Avenue, 26th Floor
New York, New York 11022
Telephone:   (212) 812-8305
Fax:   (212) 947-4700

Womble Carlyle Sandridge & Rice, PLLC
Francis A. Monaco, Jr.
Michael G. Busenkell
222 Delaware Avenue
Suite 1501
Wilmington, DE  19801
Telephone:   (302) 252-4320
Fax:   (302) 252-4330

*Counsel for Southern Community Financial Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 Case |
| LEHMAN BROTHERS HOLDINGS, INC., | Case No. |
| Debtors. | Jointly Administered |
| | **COMPLAINT** |
| SOUTHERN COMMUNITY FINANCIAL CORPORATION, SOUTHERN COMMUNITY BANK AND TRUST | |
| Plaintiff, | |
| | Adversary Proceeding No. _____ |
| vs. | |
| LEHMAN BROTHERS SPECIAL FINANCING INC., | |
| Defendant. | |

Southern Community Financial Corporation ("Southern Community") and its wholly-owned subsidiary Southern Community Bank and Trust ("Southern Bank" and, collectively with Southern Community, "Southern" or "Plaintiff") for its complaint against defendant Lehman Brothers Special Financing Inc. ("Lehman SF" or the "Debtor"), alleges through its undersigned counsel as follows:

## NATURE OF THE ACTION

1. This adversary proceeding is commenced to recover possession of Federal Home Loan Bank securities owned by Southern bearing CUSIP No. 31339XD68 and CUSIP No. 3128X1EP8 (collectively, the "Security"), together with any proceeds thereof, any Distributions made with respect thereto and any Interest Amount (all of the foregoing being referred to hereinafter collectively as the "Posted Collateral"). The Posted Collateral had served as collateral for Southern's potential obligations to Lehman SF with respect to certain pre-petition derivative transactions between Southern and Lehman SF pursuant to the terms of those certain ISDA Master Agreements dated April 7, 2003 and November 10, 2003 (as more fully defined below, the "Swap Agreements"). Prior to the commencement of the Debtor's bankruptcy case, Southern properly terminated the Swap Agreements and, as a result, Lehman SF had an obligation to immediately return all of the Posted Collateral to Southern. Prior to the commencement of this adversary proceeding, Southern sent a demand letter to Lehman SF, seeking the immediate return of the Posted Collateral, and tendering the final amount due Lehman SF in accordance with the terms of the Swap Agreements. Therefore, as of the commencement of the Debtor's bankruptcy case and as of the commencement of this adversary proceeding, Lehman SF had no right to retain possession of the Posted Collateral or to withhold delivery of the same to Southern. Despite demand, Lehman SF has failed and refused to return

2

the Posted Collateral to Southern in violation of Southern's contractual and statutory rights.

## PARTIES

2. Plaintiff Southern Community is a bank holding company organized and incorporated under the laws of the State of North Carolina. Plaintiff Southern Bank is a banking corporation organized and incorporated under the laws of the State of North Carolina.

3. Defendant Lehman SF is a corporation organized and incorporated under the laws of Delaware. It is registered to do business in the state of New York and has its principal place of business at 745 Seventh Avenue, New York, New York 10019. Lehman SF is a subsidiary of Lehman Brothers, Inc. On October 3, 2008, Lehman SF filed a voluntary petition with the United States Bankruptcy Court for the Southern District of New York seeking relief under Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

## JURISDICTION AND VENUE

4. This adversary proceeding is a civil proceeding arising in a case under the Bankruptcy Code, within the meaning of 28 U.S.C. § 1334(b). It is properly brought as an adversary proceeding pursuant to Bankruptcy Rule 7001(1) and (7).

5. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

7. Venue of this adversary proceeding is proper in this District pursuant to 28 U.S.C. § 1409(a) because the Debtor's bankruptcy case is pending in this judicial district.

## BACKGROUND FACTS

### The Pre-Petition Relationship between Lehman SF and Southern

8. Lehman SF and Southern Bank entered into that certain International Swap Dealers Association, Inc. ("ISDA") Master Agreement dated as of April 7, 2003 (the "April

3

Master Agreement," and collectively with the attached Schedule (the "April Schedule") and Credit Support Annex (the "April Credit Support Annex") each dated as of April 7, 2003, the "April Swap Agreement"). In addition, Lehman SF and Southern entered into that certain ISDA Master Agreement dated as of November 10, 2003 (the "November Master Agreement," and collectively with the attached Schedule (the "November Schedule") each and dated Credit Support Annex (the "November Credit Support Annex") dated November 10, 2003, the "November Swap Agreement"; the April Swap Agreement and the November Swap Agreement, collectively the "Swap Agreements"). Attached hereto as composite <u>Exhibit A</u> are true and correct copies of the Swap Agreements.

9. Since 2003, Lehman SF and Southern have engaged in a series of derivative transactions (the "Transactions") under and subject to the terms of the Swap Agreements.

**The Southern Collateral and Southern's Right to Receive Distributions**

10. Pursuant to the terms of the Swap Agreements Southern had an obligation to provide collateral to Lehman from time to time to secure its potential obligations to Lehman under the Swap Agreements.

11. Pursuant to the Swap Agreements and in connection with the Transactions entered into between Lehman SF and Southern thereunder, on or about November 17, 2003, April 26, 2006, and November 23, 2007, Southern caused the Security in the original par amount of $1,000,000 to be Transferred (as such term is defined in the April Credit Support Annex and the November Credit Support Annex) to Lehman SF as Posted Collateral[1]. As of September 30, 2008, the Security had a value of approximately $992,930.00, excluding accrued interest.

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to such terms in the Swap Agreements.

4

12. Pursuant to Paragraph 6(d) of the April Credit Support Annex and the November Credit Support Annex, Southern was entitled to receive all Distributions made on account of the Security that were delivered to Lehman SF, and all such Distributions were to be paid to Southern no later than the following Local Business Day after Lehman SF's receipt of the same.

**<u>Pre-Petition Event of Default, Declaration of Early Termination Date and Cessation of Distributions</u>**

13. Under the April and November Master Agreements, an "Early Termination Date" may be declared by the non-defaulting party upon the occurrence of an Event of Default.

14. Among other events, an Event of Default occurs under the April and November Master Agreements if a party or any "Credit Support Provider" of such party "institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law."

15. Lehman Brothers Holdings Inc. ("LBHI") is designated as a Credit Support Provider in the April and November Schedules to the April and November Master Agreements.

16. On or about September 15, 2008, LBHI filed a voluntary petition with the United States Bankruptcy Court for the Southern District of New York seeking relief under Chapter 11 of the Bankruptcy Code (the "LBHI Petition").

17. The filing of the LBHI Petition caused an Event of Default to occur under the April and November Master Agreements.

18. Pursuant to Section 6(a) of the April and November Master Agreements, upon the occurrence of this Event of Default, Southern was entitled to provide notice to Lehman SF specifying the relevant Event of Default and to designate a day not earlier than the day such notice was effective as an Early Termination Date in respect of all outstanding Transactions.

19. By letters dated and delivered September 18, 2008, Southern as the non-defaulting party, notified Lehman SF that the filing of the LBHI Petition caused an Event of Default to arise under the April and November Master Agreements and that, as a result, Southern was designating September 19, 2008 as the Early Termination Date in respect of all outstanding Transactions under the April and November Master Agreements. Attached hereto as <u>Exhibit B</u> is a true and correct copy of the September 18, 2008 letters.

20. Pursuant to Paragraph 8(b) of the April and November Credit Support Annexes, as a result of Southern's designation of an Early Termination Event and an Early Termination Date, Lehman SF was required to immediately return to Southern the Posted Collateral (including the proceeds, if any, from any disposition of the Security, any additional Distributions in Lehman SF's possession and any Interest Amount due).

21. However, despite demands duly made, Lehman SF has failed and refused to return any of the Posted Collateral to Southern.

22. By letters dated September 18, 2008 (the "Notification and Demand Letters"), Southern notified Lehman SF that, pursuant to the April and November Master Agreements, Southern had determined that an early termination payment was owed to Lehman SF in the net amount of $709,676.58. Attached hereto as <u>Exhibit C</u> is a true and correct copy of the Notification and Demand Letters.

23. As of the commencement of this adversary proceeding, Lehman SF has failed and refused to respond to Southern's inquiries with respect to the return of the Posted Collateral, thus Southern has been forced to seek relief from this Court to recover its property.

## **FIRST CLAIM FOR RELIEF**
### **Turnover of Posted Collateral**

24. The averments in Paragraphs 1 through 23 are incorporated herein by reference.

6

25. In accordance with section 8(b)(iii) of the April and November Credit Support Annexes, upon Southern's designation of an Early Termination Date, Lehman SF was contractually obligated to immediately Transfer the Posted Collateral back to Southern.

26. Southern therefore has a contractual right to the immediate return of the Posted Collateral.

27. Lehman SF, on the other hand, has no right to retain possession of the Posted Collateral and has no right to refuse to return the Posted Collateral to Southern.

28. Southern is entitled to enforce its contractual rights against Lehman SF, notwithstanding the commencement of Lehman SF's bankruptcy case, pursuant to 11 U.S.C. §§ 362(b)(6), (17) and (27) and §§ 560 and 561.

29. Consequently, Southern is entitled to an order of this Court directing Lehman SF to immediately return the Posted Collateral to Southern, to the extent it is in the possession of Lehman SF.

## SECOND CLAIM FOR RELIEF

### Turnover of Proceeds

30. Plaintiff repeats and realleges the allegations contained in Paragraph 1 through 29 as if set forth at length herein.

31. Paragraph 6(c)(i) of the April and November Credit Support Annexes purportedly allowed Lehman SF, as the secured party, to "sell, pledge, rehypothecate, assign, invest, use, commingle or otherwise dispose of, or otherwise use in its business any Posted Collateral it holds, free from any claim or right of any nature whatsoever of [Southern], including any equity or right of redemption by [Southern]."

32. Paragraph 8(c) of the April and November Credit Support Annexes requires Lehman SF to transfer to Southern "any proceeds and Posted Credit Support remaining after

7

liquidation, Set-off and/or application under Paragraphs 8(a) and 8(b) [of the April and November Credit Support Annexes] after satisfaction in full of all amounts payable by [Southern] with respect to any Obligations."

33. Upon information and belief, Lehman SF may have sold, pledged, rehypothecated, assigned, used or otherwise disposed of all or part of the Posted Collateral to third parties prior to Southern's declaration of an Early Termination Event under the Swap Agreements.

34. To the extent it did so, Lehman SF may have received consideration for the Posted Collateral.

35. Southern has a contractual right to the immediate remittance of the proceeds from any disposition of the Posted Collateral.

36. Lehman SF, on the other hand, has no right to retain the proceeds from any disposition of the Posted Collateral, and has no right to refuse to remit the proceeds of any disposition of the Posted Collateral to Southern.

37. Furthermore, even if Lehman SF has sold, pledged, rehypothecated, assigned, used or otherwise disposed of the Security pursuant to its alleged right to do so, it is still required by Paragraph 6(d) of the April and November Credit Support Annexes to continue to remit Distributions to Southern on a timely basis.

38. Consequently, Southern is entitled to an order of this Court directing Lehman SF to immediately remit any proceeds of the disposition of the Posted Collateral and all undelivered Distributions to Southern, to the extent such proceeds and Distributions are in the possession of Lehman SF.

### THIRD CLAIM FOR RELIEF

**Accounting**

39. Plaintiff repeats and realleges the allegations contained in Paragraph 1 through 38 as if set forth at length herein.

40. Section 8(b)(i) of the April and November Credit Support Annexes provides that upon an Event of Default and Early Termination Date, Southern "may exercise all rights and remedies available to a pledgor under applicable law with respect to the Posted Collateral held by [Lehman SF]."

41. The parties have agreed that the April and November Master Agreements will be governed by and construed in accordance with the laws of the State of New York, without reference to choice of law doctrine.

42. Sections 9-210, 9-608, and 9-615 of the New York Uniform Commercial Code (the "UCC") mandate that a secured party and/or successor provide an accounting upon request of the debtor.

43. Upon information and belief, Lehman SF may have disposed of all or part of the Posted Collateral to third parties, and to the extent it has done so it has failed to remit any proceeds received on account of such disposition to Southern.

44. Consequently, Southern is entitled to an order of this Court directing Lehman SF to provide a full accounting of any disposition of the Posted Collateral, including a full accounting of any funds received by Lehman SF with respect to any disposition of the Posted Collateral.

## **FOURTH CLAIM FOR RELIEF**

### Injunction

45. Plaintiff repeats and realleges the allegations contained in Paragraph 1 through 44 as if set forth at length herein.

46. Upon information and belief, Lehman SF may have sold, pledged, rehypothecated, assigned, invested, used, commingled or otherwise disposed of, or otherwise used in its business the Posted Collateral it held solely as collateral security with respect to Southern's potential obligations to Lehman SF under the Swap Agreements.

47. Upon an Event of Default, as defined in the April and November Master Agreements, Lehman SF ceased to have any further right (to the extent it ever did) to sell, pledge, rehypothecate, assign, invest, use, commingle or otherwise dispose of, or otherwise use in its business, the Posted Collateral.

48. To the extent Lehman SF at any time sold, pledged, rehypothecated, assigned, invested, used, commingled, or otherwise disposed of, or otherwise used in its business, the Posted Collateral, any such disposition or use was always subject to Southern's nonwaiveable right of redemption in and to the Posted Collateral.

49. Consequently, Southern is entitled to an order of this Court directing Lehman SF to take all steps to reclaim the Posted Collateral from any and all contract counter-parties to whom Lehman SF may have sold, pledged, rehypothecated, assigned, invested, used, commingled or otherwise disposed of, or otherwise used in its business, the Posted Collateral.

**FIFTH CLAIM FOR RELIEF**

**Redemption**

50. Plaintiff repeats and realleges the allegations contained in Paragraph 1 through 49 as if set forth at length herein.

51. Pursuant to Section 9-623 of the UCC, Southern has the statutory right to redeem the Posted Collateral by tendering fulfillment of all obligations secured by the Posted Collateral and the reasonable expenses and attorney's fees (if any) described in Section 9-615(a)(1) of the UCC to the extent provided for in the Swap Agreements.

52.  Southern has tendered fulfillment of all obligations secured by the Posted Collateral and has tendered all reasonable expenses and attorney's fees (if any) described in Section 9-615(a)(1) of the UCC to the extent provided for in the Swap Agreement.

53.  Upon information and belief, Lehman SF has not (i) collected the Posted Collateral under Section 9-607 of the UCC; (ii) disposed of the Posted Collateral or entered into a contract for its disposition under Section 9-610 of the UCC; or (iii) accepted the Posted Collateral in full or partial satisfaction of Southern's indebtedness to Lehman SF under the Swap Agreement under Section 9-622 of the UCC.

54.  Furthermore, pursuant to Section 9-602 and 9-624 of the UCC, Southern's right of redemption with respect to the Posted Collateral may not be waived.

55.  Southern therefore has the right to redeem the Posted Collateral and to seek this Court's assistance to exercise such right of redemption pursuant to Section 9-625(a) of the UCC.

56.  Consequently, Southern is entitled to an order of this Court enforcing Southern's right to redeem the Posted Collateral, and directing Lehman SF to take all steps necessary to accomplish such redemption.

WHEREFORE, Southern Bank respectfully requests judgment against Lehman Brothers Special Financing, Inc. be entered as follows:

(a)  On the First Claim for Relief, directing Lehman SF to immediately return all of the Posted Collateral to Southern, to the extent the Posted Collateral is in the possession of Lehman SF;

(b)  On the Second Claim for Relief, directing Lehman SF to immediately remit to Southern the proceeds of any sale or other disposition of the Posted Collateral and any

Distributions that it has failed to deliver to Southern on a timely basis, to the extent such proceeds and Distributions are in the possession of Lehman SF;

(c)  On the Third Claim for Relief, directing Lehman SF to immediately provide a full accounting of (i) any disposition of the Posted Collateral, (ii) all funds received by Lehman SF on account of any such disposition of the Posted Collateral, and (iii) all Distributions that Lehman SF has received that it has failed to remit to Southern;

(d)  On the Fourth Claim for Relief, directing Lehman SF to immediately take any and all steps to reclaim the Posted Collateral from any and all contract counter-parties to whom Lehman SF may have sold, pledged, rehypothecated, assigned, invested, used, commingled or otherwise disposed of, or otherwise used in its business, the Posted Collateral;

(e)  On the Fifth Claim for Relief, enforcing Southern's right to redeem the Posted Collateral and directing Lehman SF to immediately take all steps necessary to accomplish such redemption;

(f)  Awarding Southern its attorneys' fees, costs and disbursements in prosecuting this action to the extent permitted by law; and

(g)  Granting such other and further relief as is just.

Dated: November 19, 2008

| OF COUNSEL | LOCKE LORD BISSELL & LIDDELL LLP |
|---|---|
| **Womble Carlyle Sandridge & Rice, PLLC**<br>Francis A. Monaco, Jr. (No. 2078)<br>Michael G. Busenkell (No. 3933)<br>222 Delaware Avenue, Suite 1501<br>Wilmington, DE 19801<br>Telephone: (302) 252-4324<br>Fax: (302) 252-4330 | _____<br>Jay G. Safer (JS 4609)<br>885 Third Avenue, 26th Floor<br>New York, New York 11022<br>Telephone: (212) 812-8305<br>Fax: (212) 947-4700<br><br>*Counsel for Southern Community Financial Corporation* |

WCSR 4006486v3