| | |
|---|---|
| Alan D. Halperin, Esq.<br>Walter Benzija, Esq.<br>Donna H. Lieberman, Esq.<br>HALPERIN BATTAGLIA RAICHT, LLP<br>*Counsel to Mapco Express, Inc.,*<br>*and Delek US Holdings, Inc.*<br>555 Madison Avenue – 9th Floor<br>New York, New York 10022<br>(212) 765-9100 | Hearing Date: December 16, 2008<br>Hearing Time: 10:00 a.m.<br>Objection Deadline: December 11, 2008<br>4:00 p.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC.,<br>*et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br><br>(Jointly Administered) |

-----------------------------------------------------------x

**MOTION OF MAPCO EXPRESS, INC.
AND DELEK US HOLDINGS, INC.
FOR RELIEF FROM THE AUTOMATIC STAY**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

      Mapco Express, Inc. ("Mapco") and Delek US Holdings, Inc. ("Delek" and together with Mapco, the "Movants"), by and through their undersigned counsel, make this motion (the "Motion") pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order granting the Movants relief from the automatic stay. In support of the Motion, the Movants respectfully represent as follows:

**PRELIMINARY STATEMENT**

      1.    The Movants are the borrowers under two loan agreements, the Mapco Loan and the Delek Loan (both as defined below), and Lehman Commercial Paper Inc., ("LCPI"), one of the above-captioned debtors and debtors in possession (together, the "Debtors") is the

{00071473.4 \ 0678-001}

1

administrative agent under each of those loan agreements and a lender under the Mapco Loan. The Movants are not and have never been in default under the loans, but in recent months, LCPI has failed to fulfill its obligations under the respective loans as administrative agent and, in connection with the Mapco Loan, as lender.

2.  Since September, 2008, Mapco has made numerous requests for funding under the terms of the Mapco Loan, including requests for (i) at least $15.7 million from all of the lenders under the revolving credit facility and (ii) a total of $3.5 million under a "swing line" facility that LCPI and only LCPI is directly obligated to provide to the borrowers. LCPI has provided none of the funding that it is required to provide, leaving shortfalls of approximately $5.09 million in connection with the Mapco Loan. While the other lenders have honored their obligations, LCPI has ignored its responsibilities and breached its agreements with the Movants.

3.  Unfortunately, LCPI's failures as a lender are not its only shortcomings under these loans. Mapco has negotiated the terms of sales of a portion of its assets, and will apply the proceeds of those sales in accordance with the terms of the Mapco Loan. Because both loan agreements place restrictions on the value of the assets (i.e., collateral) that Mapco can liquidate in a given year, the Movants contacted LCPI, in its capacity as administrative agent, about amending the loan documents. Such amendments have been effected in the past, with the Mapco Loan having been amended seven times and the Delek Loan four times.

4.  Initially, albeit belatedly, LCPI cooperated in the amendment process, and the Movants received and promptly commented upon drafts of amendments prepared by LCPI's counsel that would permit the anticipated asset sales and appoint a successor administrative agent. However, in recent weeks, attempts by the Movants to move this process forward have

met with silence, despite the fact that a supermajority of lenders under the Mapco and Delek Loans support the proposed amendments and sales.

5.  The prompt amendment of the loans is critical to the Movants' ability to close the proposed asset sales and thus repay certain amounts under the Mapco Loan. Multiple sale documents have been negotiated and entered into, and proposed purchasers are prepared to close, but the failure of LCPI to act has brought much uncertainty to the sales process and by such delay has put every transaction at risk.

6.  LCPI has already obtained authority from this Court to resign as administrative agent, in recognition of LCPI's inability to fulfill its responsibilities. For some reason, however, LCPI has not availed itself of that authority, although the overwhelming majority of the syndicate banks for the Mapco Loan has already expressed support for the replacement of LCPI as administrative agent. Thus, although Movants remain hopeful that they can resolve this issue with LCPI consensually, the exigencies of the circumstances compel the Movants to bring this Motion for relief from stay, so that LCPI may be replaced as administrative agent and swing line lender, the amendment of the loans can be effected to permit the asset sales, and borrowing under the swing line facility can resume.

## JURISDICTION AND VENUE

7.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (G) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409. The statutory predicates for the relief sought herein are §§ 362 and 105 of the Bankruptcy Code, as supplemented by Rule 4001 of the Federal Rules of Bankruptcy Procedure.

## STATEMENT OF FACTS

8. Delek is a publicly traded Delaware corporation that directly owns Mapco, which is in the business of owning, leasing and operating convenience stores at gas stations and other locations throughout Memphis, Chattanooga and Nashville, Tennessee, northern Georgia, northern Alabama and Richmond, Virginia.

**(a) The Mapco Loan**

9. On or about April 28, 2005, Mapco refinanced certain existing debt and entered into an Amended and Restated Credit Agreement in the face amount of $235,000,000, with LCPI as administrative agent and one of the lenders. The total amounts committed by the lenders and made available to Mapco under the facility was subsequently increased to $285,000,000 (the loan, including all amendments and exhibits thereto being the "Mapco Loan"). A copy of the Mapco Loan has been provided to the Court, and counsel to the Debtors and the Creditors' Committee, and is available to other parties in interest upon request.

10. The Mapco Loan has several components, including a term loan and a revolving loan, with the latter including letter of credit provisions and a "swing line" facility of up to $7,000,000. As of the date of this Motion, there are 30 participating lenders under the Mapco Loan, including LCPI, which is obligated to provide 10% of the funds borrowed under the revolver, exclusive of the "swing line" facility, and 100% of the funds borrowed under the swing line facility. Mapco Loan, sections 1.1, 2.23, 2.24. The swing line facility is a sub-facility of the revolver and permits MAPCO to draw down amounts on an as-needed basis to occasionally cover daily cash needs, without the lengthier advance notice required under the revolver loan.

11. LCPI also serves as the administrative agent under the Mapco Loan, and in that capacity, among other things, holds documents, maintains records, maintains and (when

appropriate) releases liens, receives notices, distributes funds to the lenders and the borrowers, and effects modifications of the loan documents on behalf of all of the lenders. Mapco Loan, sections 2.6, 2.14. 2.16, 9.1, 10.1, 10.5, 10.15. The Mapco Loan has been amended seven times with the assistance of the administrative agent, and under the most recent amendment, Mapco is permitted to sell assets of up to $10,000,000 in value in a given year. Mapco Loan, section 7.5(e).

12. The Mapco Loan permits Mapco to replace a lender that breaches its obligation to lend, if a replacement lender is available and purchases the defaulting lender's commitment at par, and contains provisions for the resignation of the administrative agent and appointment of a successor agent. Mapco Loan, sections 2.22, 9.9. By its terms, the term loan matures on April 28, 2011 (with incremental payments by Mapco in advance of that date) and the revolver terminates on April 28, 2010. The amounts outstanding under the Mapco Loan as of September 30, 2008 are $131,200,000 (term loan) and $17,000,000 (revolver).[1]

**(b) The Delek Loan**

13. On or about March 30, 2007, Delek entered into a Credit Agreement in the face amount of $65,000,000, with LCPI as administrative agent and one of the lenders (the "Delek Loan"). A copy of the Delek Loan has been provided to the Court, and counsel to the Debtors and the Creditors' Committee, and is available to other parties in interest upon request. The Delek Loan is a term loan that matures on March 30, 2009 and permits the borrower to pre-pay amounts outstanding in advance of that date. Delek Loan, section 2.5.

---

[1] Because Delek is subject to public reporting requirements and its most recent SEC filings contained information with respect to Mapco as of September 30, 2008, the Movants are hesitant to provide post-September 30th financial information in this pleading. More current information is available, however, and can certainly be provided to the Court and LCPI on a confidential basis if the Court deems such disclosure appropriate.

14. Like the Mapco Loan, the Delek Loan limits the ability of the borrower to sell assets, with the Delek Loan providing a cap of $20,000,000 for Delek and its subsidiaries in a given year. Delek Loan, section 6.5. And as with the Mapco Loan, the Delek Loan contains provisions for the resignation of the administrative agent and appointment of a successor agent, and the amendment of the loan agreement by the lenders and the borrower, or (upon authorization of the other lenders) the administrative agent and the borrower. Delek Loan, sections 8.9, 9.1.

15. As of the date of this Motion, the amount outstanding under the Delek Loan is $45,000,000.

**(c) LCPI Breach as Agent and Lender**

(i) Borrowing Requests

16. As set forth in the Declaration of Michelle Rolando, attached hereto as Exhibit "A" (the "Rolando Declaration"), beginning in September 2008, LCPI has been in default of its lending obligations under the Mapco Loan. On or about September 19, 2008, Mapco informed LCPI, in its capacity as administrative agent and lender, of Mapco's request for a $2 million advance under the revolver. The other lenders met their respective obligations to lend, but LCPI did not fund its required $200,000.

17. MAPCO informed LCPI on October 3, 2008 of its request to draw down $1 million on the revolver. Once again, LCPI failed to fund its $100,000 lending obligation and forwarded only $900,000 of the request as administrative agent. Similarly, on October 9, 2008, Mapco notified LCPI of its request for a $6.6 million advance under the general revolver facility. While the other lenders again funded their respective amounts, resulting in a loan to Mapco of

90% of the amount sought or $5.94 million, LCPI did not fund its portion of the loan ($660,000) but instead continued to breach its obligations as a lender.

18. Mapco continues to borrow under its revolver facility, and borrowed additional funds on October 24, November 7 and November 19, 2008. LCPI again failed to honor its lending commitments, but the other lenders provided 90% of the funds requested. As noted below, Mapco can only borrow under the standard revolver provisions at this time and not the streamlined swing line facility, because LCPI is the swing line lender.

19. The swing line facility permits Mapco to borrow on a very short-term basis with very minimal notice, to meet ordinary daily cash needs, and LCPI is the only lender obligated to loan under that facility. Mapco learned that LCPI would not be honoring its lending obligations under the swing line facility approximately two months ago, when Mapco made a request to borrow $3.5 million. LCPI failed to honor its obligation to fund, and requested that Mapco recast its swing line request as one under the general revolver facility. On September 18, 2008, LCPI confirmed to Mapco in writing that it would be unable to comply with its obligation to fund any future swing line requests, further and perhaps even more seriously breaching its obligations as a lender.

**(ii)    Proposed Sale and Request for Amendments**

20. Prior to this period, Mapco began to explore the possibility of selling some of its convenience store locations, in order to (among other things) pay down obligations under the Mapco Loan and increase the potential for refinancing the Mapco Loan on favorable terms prior to its becoming "current" for accounting purposes. Careful marketing of certain of Mapco's assets brought in offers to buy a group of 28 locations for approximately $23,000,000, and a separate offer to buy at least 4 additional locations for more than $3,000,000. In addition, Mapco

is finalizing the terms of an agreement with a landlord from which it leases stores that are not in its core market and which have proven extremely unprofitable. That proposed transaction is expected to improve Mapco's annual EBITDA by approximately $800,000.

21.  Mapco notified LCPI of these developments, and requested amendments to the loan documents, to appropriately increase the caps for the amounts that could be realized from asset sales in a year, from $10,000,000 (under the Mapco Loan) and $20,000,000 (under the Delek Loan) to amounts that would accommodate the sales. The parties had previously amended the loan agreements to different dollar limits to permit asset sales.[2]

22.  Drafts of amendments to both loan agreements were prepared by counsel to LCPI and sent to the Movants, who provided comments to the documents on or before October 24, 2008. However, since providing comments, Mapco and Delek have heard nothing from LCPI, despite the repeated attempts of the Movant's businesspeople and counsel to contact LCPI and its counsel, in the hopes of moving this matter forward.

23.  Because it appeared that LCPI had simply stopped fulfilling its responsibilities as administrative agent, Mapco contacted many of the other Mapco lenders directly, to inform them of the proposed asset sales and the need for amendments. Mapco also engaged one of the lenders to serve as an advisor and as a "clearing house" for information, and has agreed to pay a fee of $75,000 to that lender, in order to assist Mapco management in navigating through the issues in undertaking this unprecedented task of effectively serving as its own administrative agent.[3]

---

[2] The Movants believe that the other lenders have authorized LCPI, as administrative agent, to enter into amendments on their behalf as authorized by the loan documents, as upon information and belief, all of the previous amendments have been entered into between the Movants and LCPI, as agent.

[3] Mapco notes that in April of 2008, it paid $100,000 to LCPI as a fee for services to be provided by LCPI as administrative agent under the Mapco Loan from April 2008 through April 2009. As things turned out, that fee should more appropriately have been paid to Mapco itself as Mapco has assumed numerous administrative responsibilities.

24. As of the date of this Motion, Mapco has communicated with substantially all of the lenders under the Mapco Loan, both individually and as part of a group conference call. As stated in the declaration of Andrew L. Schwarcz, attached hereto as Exhibit B (the "Schwarcz Declaration"), a super-majority of the Mapco lenders have already indicated their support of the amendments and sales, and a successor administrative agent has been identified and is ready, willing and able to replace LCPI as administrative agent under the Mapco Loan. That prospective successor agent is also prepared to replace LCPI as the swing line lender.[4] The Movants are doing everything that they are able to do in order to move the amendment and sale process forward, and have already devoted considerable time and money to addressing LCPI's failings. But Mapco and Delek are becoming increasingly concerned that transactions that will benefit the Movants *and* their lenders are at risk because of LCPI's unresponsiveness and abdication of its duties as administrative agent, from the failure to lend to the failure to communicate with other lenders and finalize necessary documents.[5]

**(iii)    LCPI Bankruptcy Filing**

25. On October 5, 2008, LCPI filed for protection under Chapter 11 of the Bankruptcy Code, joining affiliates that had previously filed for bankruptcy protection. The cases are being jointly administered, and as of the date hereof, no trustee or examiner has been appointed in LCPI's bankruptcy case.

---

[4] While amendments of both loans are vital, the Movants have focused their efforts on the Mapco Loan because that amendment is of particular urgency. Absent an amendment, Mapco has no swing line lender and is limited to asset sales of $10 million (while the Delek Loan has a higher threshold of $20 million).

[5] As this Motion was being finalized, the Movants learned of an explosion at a Tyler, Texas refinery owned by Delek. The Movants are only beginning to assess the impact of this event, and reserve the right to supplement this Motion, as and if appropriate, when more information is available.

{00071473.4 \ 0678-001}

9

26. Upon the commencement of its case, LCPI requested and obtained an order authorizing it to terminate agency relationships. As of the date of this Motion, however, LCPI continues to hold the title of agent in connection with both the Mapco and Delek Loans, although it is not meeting its responsibilities as agent or, under the Mapco Loan, as lender.

**RELIEF REQUESTED**

27. By this Motion, the Movants seek an order pursuant to section 362(d) of the Bankruptcy Code and Bankruptcy Rule 4001 granting Movants relief from the automatic stay to (a) compel the resignation and replacement of LCPI as administrative agent and direct LCPI to transfer and assign its authority as administrative agent including, but not limited to, immediately transferring all books, records, lien and all related documents to its successor to successors, (b) authorize the amendments to the loans, if and as approved by the lenders under the terms of the respective loans, to permit the sales of assets to be effectuated, and (c) authorize Mapco to exercise its rights under the Mapco Loan to replace LCPI as swing line lender.[6] LCPI is not complying with its duties, and it must be replaced before the Movants are further harmed by LCPI's material breaches of its contractual obligations.

**BASIS FOR RELIEF**

28. Section 362(d) of the Bankruptcy Code provides that a party in interest may be granted relief from the automatic stay as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditions such stay – (1) for cause . . .

---

[6] Out of an abundance of caution, the latter relief is sought as and to the extent, if any, that the proposed amendments to the loan documents to increase the value of collateral to be sold affect an interest of LCPI in such property.

{00071473.4 \ 0678-001}

10

29. Whether cause exists to vacate or modify the automatic stay is committed to the sound discretion of the Bankruptcy Court. *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). The Movants have the initial burden of demonstrating cause. *In re Sonnax Industries, Inc.,* 907 F.2d at 1286. Once the Movants have satisfied their initial burden, LCPI or any other opposing party has the burden of disproving the existence of cause to lift the automatic stay. 11 U.S.C. § 362(g)(2).

30. Among the factors identified by the Second Circuit Court of Appeals in determining the existence of cause to lift the automatic stay, the most relevant here include the impact of the stay on the parties and balance of harms. *In re Sonnax Industries, Inc.,* 907 F.2d at 1286. In this case, those factors clearly militate in favor of the Movants.

**The Movants Are Being Harmed by LCPI's Breaches**

31. Ample cause exists to lift the automatic stay to compel the resignation and replacement of LCPI as administrative agent under both the Mapco Loan and the Delek Loan and to replace LCPI as "swing line" lender under the Mapco Loan, in that LCPI has materially breached its duties as administrative agent and lender under the Mapco Loan and as administrative agent under the Delek Loan.

32. As detailed above, LCPI has failed to fund its lending obligations under the Mapco Loan on at least six occasions. Most egregiously, LCPI has failed to fund swing line requests, for which it has sole responsibility, and has notified Mapco that it does not intend to meet such obligations in the future. The swing line loans are specifically designed to meet Mapco's short-term cash needs on very short notice, and pursuant to the terms of the loan, are repaid within seven business days of the date each such loan is made. Mapco Loan, section 2.23.

33. Because LCPI is the only entity obligated to lend to Mapco under the swing line facility, its failure to meet its obligations has effectively left Mapco without such a facility. Yet the facility was a negotiated term of the Mapco Loan precisely because of the ease of borrowing under that facility to meet short-term cash needs, and the importance of such immediate cash availability to Mapco's operations.

34. LCPI has also been inattentive to its duties as administrative agent under both loans. The proposed amendments to permit the sale of certain of Mapco's assets are acceptable to the other lenders, as the closing of the pending sale will permit the Movants to realize significant value. See Declaration of Schwarcz at paragraphs 3, 9 and 10. LCPI has been notified of the importance of the sale to the Movants, and apparently recognized the need for the amendments and sale, as evidenced by its preparation of draft amendments. But substantial uncertainty has been injected into the process and all progress with LCPI has now ground to a halt because LCPI cannot or will not fulfill its responsibilities to the Movants and to the lenders for whom LCPI serves as agent.

35. LCPI's inattentiveness to its duties under the loans directly and negatively impacts the Movants' business, not only because of LCPI's failure to fund but equally urgently, because LCPI's abandonment of its duties as agent threatens transactions that will realize significant value for the Movants and potentially for LCPI and the other lenders. LCPI has put the proposed sale transactions into a no-man's land. Particularly in this difficult economic climate, there can be no responsible basis for putting transactions conservatively valued at $27 million in jeopardy.

36. LCPI has proven itself unable or unwilling to continue in its role as administrative agent, and it is unclear why it has not exercised the authority already granted to it

by this Court and resigned as administrative agent. But given that it has not, the Movants are entitled to an order lifting the automatic stay under section 362(d)(1) to (i) compel removal and replacement of LCPI as administrative agent under both the Delek Loan and the Mapco Loan, and to direct LCPI to immediately transfer, books, records, lien (and other related documents) and appropriate authorities to the successor agent, and (ii) to the extent that the amendments in any way impact the interest of LCPI in property, to permit the amendments as authorized by the lenders under the terms of the respective loans, so that the amendments to the loans may be finalized and the proposed sales realized without any further delay. In addition, the Movants seek relief from the stay in order to replace LCPI as swing line lender under the Mapco Loan, as LCPI is the only lender that is obligated to Mapco under the "swing line" facility and LCPI's ongoing breach of its lending obligations has left Mapco without such a facility. [7]

37.    While the Movants recognize that it is the other lenders and not the Movants who will select the new agent, the Movants submit that LCPI's ongoing and repeated breaches of its responsibilities permit either the Movants or the non-LCPI lenders to bring this Motion. The documents that set forth LCPI's responsibilities as agent are the loan documents to which the Movants and LCPI are parties, and LCPI's obligations under those documents are obligations to the Movants. And LCPI's failure to fulfill its obligations as agent directly impact the Movants and threaten them with harm. Moreover, upon information and belief, the other Mapco lenders have already identified an existing lender that is willing to serve as successor agent

38.    Conversely, there will be no harm caused to LCPI or its estate if the relief sought in this Motion is granted. LCPI is not meeting its obligations as a lender and its continued presence as the sole and non-performing swing line lender harms Mapco and gives rise to

---

[7] The replacement of a non-performing lender is explicitly authorized by section 2.22 of the Mapco Loan.

{00071473.4 \ 0678-001}

13

claims against LCPI. The replacement of LCPI by another lender will have the effect of limiting the harm caused by LCPI's failures and hence, limiting LCPI's liability.

39. Likewise, LCPI does not appear to have any commercial or other interest in continuing as administrative agent, and given its failure to perform, is certainly not entitled to any additional fees in its capacity as agent. Moreover, if the amendments are effected and the sale transaction is permitted to move forward, LCPI will benefit – as a lender – from the application of the sale proceeds in accordance with the Mapco Loan.

40. LCPI was granted authority by the Court to terminate its agency relationship in situations precisely like this one. LCPI itself noted in its application for such relief that "authorization to terminate its agency relations is both necessary and appropriate in order to operate the Debtor's business in a manner that is both consistent with the provisions of the Bankruptcy Code and gives due regard to the interests of third parties with which LCPI dealt in operating its business." Thus, LCPI has its acknowledged that where it cannot perform its agency duties, it is both appropriate and necessary to expeditiously transfer its agency responsibilities in the best interests of itself (to avoid potential liability) and third parties such as the Movants and the other lenders under the Delek and Mapco Loans. It is indeed unfortunate that LCPI has not acted on its own to step aside as administrative agent in this situation and Movants remain hopeful that it will take such a responsible step.

41. Because LCPI's continuing breaches of its duties as administrative agent under the Delek Loan and the Mapco Loan and its ongoing breaches of its obligation to lend under the Mapco Loan threaten to damage the Movants and indeed the other lenders under the loans, the automatic stay should be lifted to compel the resignation and replacement of LCPI as administrative agent, and to permit the amendment of the loans as necessary to authorize the

{00071473.4 \ 0678-001}

14

asset sale. Consistent therewith, LCPI should be directed to immediately transfer books, records immediately transfer, books, records, lien (and other related documents) and appropriate authorities to the successor agent, as the successor agent must have the ability to release liens in order to permit assets to be freely transferred. Further, the automatic stay should be modified to permit Mapco to replace LCPI as the swing line lender, as authorized by the Mapco Loan, to prevent any additional harm to Mapco as a result of LCPI's failure to loan under that facility. Because LCPI is the only entity obligated to lend under the swing line facility, Mapco has no means of avoiding the harm caused by LCPI's failure to lend except through the replacement of LCPI.

42.     The Movants respectfully submit that with respect to all of the relief requested, the harm to Movants significantly outweighs any perceived harm to LCPI or its estate and thus establishes the requisite cause under section 362(d)(1) of the Bankruptcy Code.

**NOTICE**

43.     Notice of this Motion shall be provided to (i) counsel to the Debtors, (ii) counsel to the Official Committee of Unsecured Creditors; (iii) the participating lenders under the loans; (iv) the office of the United States Trustee; and (v) all other parties requesting notice under Bankruptcy Rule 2002 in advance of the date of this Motion. Movants respectfully represent that no other or further notice is warranted and that the notice provided is sufficient.

**WAIVER OF MEMORANDUM OF LAW**

44.     Because the Motion sets forth the applicable legal authority and does not raise any novel issues of law, Movants respectfully request that the requirement for a separate memorandum of law contained in Local Rule 9013-1(b) be waived.

**CONCLUSION**

**WHEREFORE**, for all of the foregoing reasons, Movants respectfully request that an order, substantially in form annexed hereto as Exhibit "C, be entered (a) granting Movants relief from the automatic stay to compel the removal and replacement of LCPI as administrative agent under the Delek and Mapco Loans, to authorize entry of the amendments to both loans, as authorized by the lenders under the terms of the respective loans, to enable the sale of assets to be effectuated and to replace LCPI as "swing line" lender pursuant to the terms of the Mapco Loan; (b) directing LCPI to transfer and assign its authority as administrative agent to its successor or successor by, among other things, immediately transferring books, records, liens (and other related documents) and appropriate authorities to the successor agent or agents; and (c) granting the Movants such other and further relief as is just and proper.

Dated:  New York, New York
           November 21, 2008

                                              Respectfully submitted,

                                              HALPERIN BATTAGLIA RAICHT, LLP
                                              *Counsel to Mapco Express, Inc.,*
                                              *And Delek US Holdings, Inc.*

                                     By:  */s/ Alan D. Halperin*
                                              Alan D. Halperin, Esq.
                                              Walter Benzija, Esq.
                                              Donna H. Lieberman, Esq.
                                              555 Madison Avenue – 9th Floor
                                              New York, New York 10022
                                              (212) 765-9100