O'MELVENY & MYERS LLP
Gerald C. Bender (GB-5849)
Josh Weisser (JW-0185)
Times Square Tower
7 Times Square
New York, New York 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

Attorneys for Fortify Software, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                                        :   Chapter 11
                                                             :
LEHMAN BROTHERS HOLDINGS,                                    :   Case No. 08-13555 (JMP)
INC., et al.,                                                :
            Debtors.                                         :   Jointly Administered
                                                             :
                                                             :
------------------------------------------------------------x

**OBJECTION OF FORTIFY SOFTWARE, INC. TO
DEBTORS' MOTION TO (A) SCHEDULE A SALE HEARING;
(B) ESTABLISH SALES PROCEDURES; (C) APPROVE A
BREAK-UP FEE; AND (D) APPROVE THE SALE OF THE
PURCHASED ASSETS AND THE ASSUMPTION AND
ASSIGNMENT OF CONTRACTS RELATING TO THE PURCHASED ASSETS**

Fortify Software, Inc. ("Fortify"), by its undersigned counsel O'Melveny & Myers LLP, hereby submits this Objection (the "Objection") to the Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets (the "Sale Motion"). In support of the Objection, Fortify respectfully represents as follows:

### INTRODUCTION

1.    Fortify produces business software assurance products and services that protect

companies from threats posed by security flaws in business-critical software applications. As of the Petition Date (as defined below), Fortify and Lehman Brothers Holdings, Inc., the debtor in the above-captioned bankruptcy case ("the Debtor"), were party to that certain General Terms and Conditions dated as of August 17, 2007 (the "General Terms and Conditions"), as supplemented by that certain Product License Transaction Schedule dated as of May 30, 2008 (the "Transaction Schedule"), and as further supplemented by that certain Statement of Work dated as of May 19, 2008 (the "Statement of Work", and together with the General Terms and Conditions and the Transaction Schedule, the "License Agreement"), a copy of which is attached hereto as Exhibit A, relating to the provision of software security products, including licenses of intellectual property ("Licenses"), and services to the Debtor.

2.      Under the terms of the License Agreement, the Debtor was obligated to compensate Fortify for (i) all software products, including Licenses, upon acceptance thereof by the Debtor; (ii) all services immediately upon execution of the Statement of Work; and (iii) all travel and expenses incurred while delivering services. Pursuant to these terms, the Debtor incurred costs of $90,000 for services immediately upon execution of the Statement of Work, $690,000 for software, including Licenses, and $4,932.08 for travel and expense reimbursements.

3.      Fortify sent the Debtor several requests for payment. First, on or about May 30, 2008, Fortify sent the Debtor an invoice in the amount of $582,000 for software costs, which was promptly paid in the ordinary course. Second, on or about June 25, 2008, Fortify sent the Debtor a separate invoice in the amount of $108,000 for remaining software costs, attached hereto as Exhibit B. The Debtor never paid any amount in respect of this invoice. Third, on or about July 31, 2008, Fortify sent the Debtor an invoice in the amount of $90,000 for services, attached

hereto as Exhibit C. In respect of this invoice and in the ordinary course of its business, the Debtor sent Fortify a check, attached hereto as Exhibit D, in the amount of $90,000 dated as of September 8, 2008. Fortify did not learn from its depositary institution until October 8, 2008 that the check from the Debtor was not honored. Finally, on or about September 30, 2008, Fortify sent the Debtor an additional invoice, attached hereto as Exhibit E, in the ordinary course of business in the amount of $4,932.08 for travel and expense reimbursements. Again, the Debtor never paid any amount in respect of this invoice. Each of the foregoing unpaid invoices, totaling $202,932.08, represented amounts due under the License Agreement.

4. On September 15, 2008 (the "Petition Date"), the Debtor commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5. On or about September 17, 2008, the Debtor and certain of its affiliated entities filed the Sale Motion.

6. On or about September 20, 2008, the Bankruptcy Court entered an Order under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) The Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases (the "Sale Order"), approving the Sale Motion, which contemplates the sale of certain assets of the Debtor to Barclays Capital, Inc. ("Barclays"). The Sale Order provides that the counterparties to the Closing Date Contracts (as defined in the Sale Order) had until October 3, 2008 (the "Objection Deadline") to file an objection to the Cure Amounts (as defined in the Sale Order).

7. On September 18, 2008, Fortify received a Notice of Assumption and Assignment of, and Amounts Necessary to Cure Defaults under Contracts and Leases to be Assumed and Assigned to Barclays Capital, Inc. (the "<u>Assumption Notice</u>"). The Assumption Notice was a generic notice, not directed at any particular party, which did not contain any list of contracts proposed to be assumed and assigned but rather directed the recipient to visit the Epiq Systems website for the list of contracts to be assumed and assigned to Barclays.

8. Promptly upon receipt of the Assumption Note via fax early on September 18, 2008, Fortify diligently reviewed the Epiq Systems website. The License Agreement was not listed (indeed no contracts were listed) at the time Fortify conducted its review. On information and belief, it was not until September 19, 2008 that the list of contracts to be assumed and assigned to Barclays as well as a proposed Cure Amount was posted on the Epiq Systems website (the "<u>Assumption List</u>"). And, in addition to listing the incorrect Cure Amount, the Assumption List then identified and still identifies the License Agreement on seven separate lines even though the License Agreement constitutes only one agreement between Fortify and the Debtor.

9. It was only until after the Objection Deadline had passed that Fortify became aware that the License Agreement was included on the Assumption List and that the amount listed as owed to Fortify to cure the Debtor's defaults under the License Agreement was $0.00. Moreover, because of the Debtor's actions in paying its invoices with a bad check, Fortify was not aware of the correct amount to cure breaches under the License Agreement until October 8, 2008 at the earliest, which was also after the Objection Deadline passed. As a result, the Cure Amount set forth on the Assumption List is incorrect, and as of the Objection Deadline, the Debtor owed Fortify not less than $202,932.08 (the "<u>Correct Cure Amount</u>"). Fortify notified

4

Barclays, in late October, of the error of the Debtor in scheduling the Cure Amount under the License Agreement at $0 and attempted unsuccessfully to reach a resolution with Barclays.

## JURISDISCTION AND VENUE

10. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

11. The statutory predicates for the relief requested herein are Sections 363(e), 503(b)(1)(A), 503(b)(9), 507(a)(2), and 507(b) of the Bankruptcy Code.

## RELIEF REQUESTED

12. By this Objection, Fortify requests entry of an order: (i) sustaining Fortify's objection to the Sale Motion; (ii) determining that $202,932.08 is the correct amount necessary to cure all breaches under the License Agreement; (iii) directing Barclays to pay the Correct Cure Amount; (iv) determining that Fortify's consent to the assignment is required under Section 365(c)(1); (v) granting Fortify relief to file the Objection after the Objection Deadline for lack of notice and inadequate notice or, in the alternative, as a result of excusable neglect, and (vi) granting such other relief as this Court deems necessary and appropriate.

## BASIS FOR RELIEF

**A.     The Debtor Must Ensure that All Breaches under the License Agreement Are Cured Before the License Agreement Can Be Assigned to Barclays**

   1.    **The Cure Amount Set Forth in the Assumption List for the License Agreement Is Incorrect, and Barclays Must Pay the Correct Cure Amount.**

13. In order for the Debtor to assume and assign the License Agreement to Barclays pursuant to the Sale Order and Section 365 of the Bankruptcy Code, Barclays must pay the Correct Cure Amount. While a debtor may assume any executory contract under Section 365(a) of the Bankruptcy Code, if there has been a default in such contract, the debtor may not assume

5

such contract unless, at the time of assumption, (i) the default is cured or the debtor provides adequate assurance that it will be promptly cured, (ii) the debtor compensates or provides adequate assurance of prompt compensation for actual pecuniary loss resulting from such default, and (iii) the debtor provides adequate assurance of future performance under such contract. 11 U.S.C. § 365(b)(1).

14. Pursuant to the terms of the License Agreement, Fortify is owed a cure sum in an amount not less than the Correct Cure Amount, or $202,932.08. Under Section 365(b), the Debtor is obligated to pay this amount or provide adequate assurance that it will be promptly paid. Under the Sale Order, Barclays has agreed to pay the amounts needed to cure all contracts it has assumed. As of the date hereof, neither the Debtor nor Barclays has paid Fortify the Correct Cure Amount. Consequently, the License Agreement cannot be assumed and assigned to Barclays, and Fortify hereby objects to the assumption and assignment of the License Agreement to Barclays without payment of the Correct Cure Amount.

15. The Debtor's failure to appropriately schedule the Correct Cure Amount due under the License Agreement suggests a lack of appropriate diligence on the part of the Debtor. The Debtor received four invoices from Fortify in the four-month period immediately preceding the Petition Date. The Debtor issued two separate checks (one within two weeks of the Petition Date) in respect of only two separate invoices and was almost certainly aware of which of its checks were honored by its bank and which were not. As a result, it is hard to understand how the Debtor could assert that the appropriate Cure Amount under the License Agreement was actually $0 as of the Objection Deadline. The Debtor should not be allowed to use the process of assuming and assigning contracts under Section 365 to take advantage of its creditors and pay them less than they are due. The rights of the non-debtor counterparties to the subject executory

contracts should be carefully guarded.

### 2. Because the License Agreement Is a Copyright License, the Debtor Must Obtain Fortify's Prior Consent to its Assumption and Assignment to Barclays.

16. Special rules apply to the assumption and assignment of executory contracts for the license of a copyright. Section 365(c)(1) provides that a debtor-in-possession may not assume or assign any executory contract if (i) "applicable law excuses a party, other than the debtor, to such contract . . . from accepting performance from or rendering performance to an entity other than the . . . debtor in possession" and (ii) the non-debtor party to the contract does not consent to the assumption or assignment. *Id.* § 365(c)(1). In other words, mere payment of a cure amount is insufficient to assume and assign such a contract; the consent of the non-debtor counterparty is required. Under federal law, licenses of copyrights are considered personal and assignable only with the consent of the licensor. This is particularly true with respect to non-exclusive licenses because the grantor of a nonexclusive license "does not transfer any rights of ownership; ownership remains in the licensor". *In re Patient Educ. Media, Inc.*, 210 B.R. 237, 240 (Bankr. S.D.N.Y. 1997) (reaching the same result). Accordingly, bankruptcy courts have held that licenses of copyrights are not assignable, pursuant to Section 365(c)(1), without the consent of the non-debtor licensor. *See RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.)*, 361 F.3d 257, 266 (4th Cir. 2004) (addressing copyright licenses as personal and unassignable without consent); *In re Golden Books Family Entm't, Inc.*, 269 B.R. 300, 307–10 (Bankr. D. Del. 2001) (reaching the same result); *Patient Educ. Media*, 210 B.R. at 241 (reaching the same result); *see also Perlman v. Catapult Entm't., Inc. (In re Catapult Entm't, Inc.)*, 165 F.3d 747, 749 (9th Cir.1999) (reaching the same result with respect to patents).

17. The License Agreement at issue falls within the scope of Section 365(c)(1) as the Debtor was granted, under the License Agreement, a non-exclusive license to use Fortify's

7

copyrights embodied in the software sold to the Debtor. As a result, the Debtor cannot assume and assign the License Agreement to Barclays without the consent of Fortify. Fortify has not given its consent, and will not give its consent unless the Correct Cure Amount is paid in full by Barclays or the Debtor. To hold otherwise would deprive Fortify, as a grantor of a non-exclusive license, the rights entailed in its retained ownership of the copyrights under the License Agreement.

### 3. The Debtor Violated the Bankruptcy Code, the Bankruptcy Rules, and Fortify's Due Process Rights by Failing to Provide Adequate Notice to Fortify of the Assumption and Assignment of the License Agreement to Barclays.

18. The Second Circuit requires that a debtor-in-possession seeking to assume and assign executory contracts pursuant to Section 365 of the Bankruptcy Code provide not only adequate notice of the assumption and assignment to counterparties to the relevant executory contracts, but also provide specific notice to counterparties of the proposed cure amounts with respect to such executory contracts. In short, the Debtor was required not only to provide notice of the Sale Motion but to provide *adequate* notice of the Sale Motion. The failure to provide the requisite notice to an interest holder is a violation of the Bankruptcy Code, the Bankruptcy Rules, and that counterparty's constitutional due process rights. Granting the Sale Motion in such circumstances deprives Fortify, among others, of its rights and property.

19. "As a general matter, a party seeking relief in bankruptcy court is not entitled to achieve a *fait accompli* with respect to the protectable interests of parties who did not receive notice prior to any loss with respect to their interest." *In re Nat'l Gypsum Co.*, 208 F.3d 498 (5th Cir. 2000) (quoting 7 *Collier on Bankruptcy* § 1109.06[2]). Notice to creditors and parties in interest "is the cornerstone underpinning Bankruptcy Code procedure," *In re Savage Indus., Inc.*, 43 F.3d 714, 720 (1st Cir. 1994), as "[i]t is beyond cavil that the *due process clause of the Fifth Amendment to the United States Constitution* applies to bankruptcy proceedings." *Marcus Hook Dev. Corp., Inc. v. T.A. Title Ins. Co. (In re Marcus Hook Dev. Corp., Inc.)*, 143 B.R. 648, 660 (Bankr. W.D. Pa. 1992). Indeed, "it is well established that creditors' rights in bankruptcy cases

8

are property interests that are protected by the *Fifth Amendment* and that cannot be impaired without notice and an opportunity to be heard." *Continental Casualty Co. v. Gen. Dev. Corp.* (*In re Gen. Dev. Corp.*), 165 B.R. 685, 688 (S.D. Fla. 1994). Grounded in "fundamental notions of procedural due process," the Bankruptcy Code often dictates that relief may be granted only "after notice and a hearing," which "means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." *In re Savage*, 43 F.3d at 721.

20. Notice is of particular importance where a debtor or trustee seeks to assume and assign an executory contract and determine the cure applicable amounts under Sections 365(a) and (b) of the Bankruptcy Code "since it is possible that the contract is not beneficial to the non-debtor, and the non-debtor lacks any decision-making authority in the assumption process. Section 365 allows a debtor to continue in a beneficial contract provided, however, that the other party is made whole at the time of the debtor's assumption of said contract." *In re Nat'l Gypsum Co.*, 208 F.3d 498 (5th Cir. 2000); *see Elliott v. Four Seasons Props.* (*In re Frontier Props.*), 979 F.2d 1358, 1365 ("courts require strict adherence to" notice requirements out of "concern with protecting unknowing [contractual partners] from the consequences of an assumption of which they had no notice and which [they] had no opportunity to contest") (alterations in original).

21. The analysis of whether proper notice has been afforded to a counterparty to an executory contract to be assumed and assigned pursuant to Section 365 takes place on two levels, statutory requirements and constitutional due process concerns. *Cf. Citicorp Mortgage, Inc. v. Merritt* (*In re Ex-Cel Concrete Co., Inc.*), 178 B.R. 198, 202 (B.A.P. 9th Cir. 1995) (applying a similar analysis in the context of Section 363 sales). The statutory analysis begins with Bankruptcy Rule 6006, which provides (i) that notice of the proposed assumption and assignment of an executory contract "shall be given to the other party to the contract" and (ii) such matters shall be treated as a contested matter under Bankruptcy Rule 9014. Fed. R. Bankr. P. 6006(a), (c). Bankruptcy Rule 9014, in turn, provides that "*reasonable* notice and opportunity for hearing *shall be afforded* the party against whom relief is sought." *Id.* 9014(a)

(emphasis added).

22. Together, Rules 6006 and 9014 are designed to give those whose interests may be affected notice and an opportunity to object to accord them due process, *see, e.g., In re Poly-Cel Liquidation, Inc.*, 2006 Bankr. LEXIS 4545, at *25, n.6 (Bankr. D.N.J. April 18, 2006), and in conjunction with the Bankruptcy Code's "notice and a hearing" requirement "have been deliberately crafted" to provide assurance that a party holding an interest will receive timely notice of the trustee's intention to affect such party's interest. *See, e.g., Ex-Cel Concrete*, 178 B.R. 198. The constitutional sufficiency of notice analysis dovetails with these protections of the Bankruptcy Code and Bankruptcy Rules, as the *due process clause of the Fifth Amendment* requires notice to be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652 (1950). *See also Folger Adam*, 209 F.3d at 265.

23. Accordingly, the Second Circuit has concluded that counterparties are entitled to "adequate notice" of the dates by which they must assert cure claims "and are not themselves required to make an independent inquiry to ascertain their existence." *ReGen Capital I, Inc. v. Halperin (In re U.S. Wireless Data, Inc.)*, __ F.3d __, 2008 WL 4724366, at *6 (2d Cir. Oct. 29, 2008). "The law further demands that, ordinarily, a 'bar date in a bankruptcy case should be prominently announced and accompanied by an explanation of its significance.'" *Id.*

24. Here, the Assumption Notice did not satisfy notice standards under the Bankruptcy Code, the Bankruptcy Rules or general due process requirements. As a preliminary matter, Fortify did not even receive notice. Upon information and belief, the information from which Fortify could determine whether the License Agreement was among those to be assumed and assigned was not posted on the Epiq Systems website at the time that Fortify received the Assumption Notice and conducted its investigation. In other words, the Debtor did not provide

10

Fortify with any notice that the License Agreement was to be assumed and assigned to Barclays. For these reasons, the Debtor failed to satisfy its obligation to provide notice and an opportunity to be heard.

25. Moreover, the form of Assumption Notice was inadequate and not reasonably calculated, under all circumstances, to apprise Fortify of the pendency of an action that could result in the deprivation of its ownership interests. Despite the Debtor's certain knowledge of the License Agreement and Fortify's rights thereunder, the Assumption Notice sent by the Debtor did not reasonably indicate that Fortify's rights were to be affected by the Sale Motion. The form of Assumption Notice does not satisfy the Second Circuit's requirement that non-debtor counterparties are not to be required to make an independent inquiry to determine whether such counterparties are subject to cure bar date of some kind. The Assumption Notice left it to Fortify to conduct an investigation to determine whether it was subject to the Sale Order in the first place and then to determine the relevant Objection Deadline and Cure Amount. The creation of such a burden on Fortify by the Debtor is in line with the Debtor's incentive to make the assumption and assignment process as difficult as possible for the counterparties to executory contracts in order to benefit from the assumption of a variety of contracts at little or no cost-- except to the non-debtor counterparties.

26. In light of the Debtor's failure to provide adequate notice of the Sale Motion to Fortify, Fortify must now be given an opportunity to defend its rights under the License Agreement and its ownership interest in the intellectual property that was licensed thereunder.

**3.    Even if Fortify Received Adequate Notice of the Assumption and Assignment of the License Agreement to Barclays, its Objection thereto after the Objection Date is Excusable Neglect.**

27. Bankruptcy Rule 9006(b)(1)(2) provides for relief against certain time bars "where the failure to act was the result of excusable neglect." *See In re Interco., Inc.*, 186 F.3d

11

1032, 1034 (8th Cir. 1999). The phrase "excusable neglect" is given its commonly accepted meaning and is not limited strictly to omissions caused by circumstances beyond the control of the moving party. S*ee Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 391–92 (1993). "The determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the moving party, and whether the moving party acted in good faith. *See id.* at 395. Excusable neglect has been deemed to exist where notice of a bar date was given peculiar and inconspicuous placement, *see Pioneer*, 507 U.S. at 398, or was abstract and ambiguous, *see In re Herd*, 840 F.2d 757, 759–60 (10th 1988).

28.     Even if Fortify is deemed to have received notice sufficient to satisfy the standards of the Bankruptcy Code, Bankruptcy Rules and due process standards, its failure to file this Objection by the Objection Deadline is excusable. First, the danger of prejudice to the Debtor here is minimal. It is Barclays and not the Debtor that would be required to pay the Correct Cure Amount. Nor would Barclays be prejudiced; upon learning that the License Agreement was proposed to be assigned to Barclays and the Objection Deadline had passed, Fortify notified Barclays, in late October, of the error of the Debtor in scheduling the Cure Amount under the License Agreement at $0 and sought to reach a resolution with Barclays. Further, Barclays had sixty (60) days under the Sale Motion and Sale Order to designate contracts to assume. That process is wrapping up only now. Moreover, the counterparties to Closing Date Contracts (as defined in the Sale Order), among which the License Agreement is included, had only a matter of days to object to the assumption and assignment of their contracts and the designated Cure Amounts; this particular process, as with the other proceedings in the

Debtor's bankruptcy case, has moved unusually quickly. If prejudice exists, it has been suffered by Fortify, who has been injured as a result of the speed of this bankruptcy case.

29.     Second, the reason for the delay was not in the control of Fortify and was in fact a result of actions of the Debtor. The Epiq Systems website, to which the Assumption Notice directed all counterparties to executory contracts to be assumed and assigned to Barclays, is a complicated morass of information. In its state as of the date hereof, the Epiq Systems website contains much information in addition to lists of assigned executory contracts and cure amounts. The information regarding such executory contracts appears near the bottom of a long home page and there are many different deadlines set for objecting to the assumption and assignment of a variety of different types contracts, among other things. As mentioned above, this information was not even posted when Fortify first viewed the Epiq Systems website. If it had, however, it is easy to see how the sought after information would not be readily identified.

30.     In addition to the overly-complicated nature of the website that the Debtor uses to transmit critical and time-sensitive information to its creditors, the Debtor also delayed Fortify's discovery of its claims by paying Fortify with a bad check. The Debtor sent Fortify a check dated as of September 8, 2008 in the amount of $90,000. Fortify did not learn from its depositary institution until October 8, 2008 -- after the Objection Deadline -- that the check from the Debtor was not honored. Accordingly, Fortify, through no fault of its own, was unable to determine with certainty the correct amounts owing under the License Agreement as of the Objection Deadline.

31.     Third, Fortify has acted in good faith. Promptly after Fortify determined that the License Agreement was included on the Assumption List with the incorrect cure amount set forth, Fortify notified Barclays of the discrepancy and filed this Objection. If anything, the facts

here suggest that it is in fact the Debtor who has failed to act in diligently, scheduling the Cure Amount under the License Agreement at $0 despite actual knowledge to the contrary, creating confusion with an impossibly ambiguous noticing system and perhaps taking advantage of an unusually expedited process to take away the rights of its creditors, including Fortify. The Debtor should not be permitted to abuse the assumption and assignment process in this manner.

## CONCLUSION

32. The Debtor's failure to properly reflect Cure Amounts and provide Fortify with sufficient notice of its intention to assume and assign the License Agreement severely prejudiced Fortify at the Objection Deadline. Lehman's notice procedures were grossly insufficient. Upon receipt of the Assumption Notice, Fortify diligently visited the Epiq Systems website and looked for evidence that the License Agreement was being assumed and assigned. No evidence was available. Effectively, the Debtor directed counterparties to a website that was not yet operational. Moreover, Lehman had sufficient information to list the Correct Cure Amount. Lehman was in receipt of all relevant invoices and, unlike Fortify -- or any other counterparty -- knew which of its checks were being honored and which were not.

33. Notwithstanding anything herein to the contrary, Fortify does not, by filing this Objection, waive any other claim or interest Fortify has, or any other claim or interest that may hereafter arise, under the terms of the License Agreement or by operation of law. Fortify specifically reserves the right to dispute the scope of the License Agreement. Fortify further reserves the right to amend, modify, or supplement this Objection, including without limitation, with additional amounts due under the License Agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, Fortify respectfully requests this Bankruptcy Court (i) require Barclays to pay Fortify the Correct Cure Amount in order for the Debtor to assume and assign the License Agreement to Barclays and (ii) grant such other and further relief as the Bankruptcy Court deems just and proper.

Dated: November 21, 2008  
       New York, New York

Respectfully submitted,

/s/ Gerald C. Bender

Gerald C. Bender (GB-5849)  
Josh Weisser (JW-0185)  
O'MELVENY & MYERS LLP  
Times Square Tower  
7 Times Square  
New York, New York  10036  
Tel: (212) 326-2000  
Fax: (212) 326-2061

Attorneys for Fortify Software, Inc.

15