Jason Blumberg (JB 1033)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10145
Tel: (212) 407-4155
Fax: (212) 407-4990

Attorneys for East West Bancorp

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
In re LEHMAN BROTHERS           : Chapter 11
    HOLDINGS INC., et al.       :
                                : Case No.  08-13555 (JMP)
                      Debtors.  :
                                : (Jointly Administered)
                                :
                                :
--------------------------------------------------------------- x
                                                               :
                                                               :
SECURITIES INVESTOR PROTECTION  :
CORPORATION,                    : Adversary Proceeding No.
                                : 08-01420 (JMP)
                 Plaintiff,     :
                                :
vs.                             :
                                :
LEHMAN BROTHERS, INC.,          :
                                :
                  Debtor.       :
                                :
                                :
---------------------------------------------------------------x

**OBJECTION OF EAST WEST BANCORP TO PROPOSED ASSUMPTION
AND ASSIGNMENT OF FINANCIAL SERVICES AGREEMENT BETWEEN
<u>LEHMAN BROTHERS INC. AND EAST WEST BANCORP</u>**

East West Bancorp ("<u>East West</u>"), by and through its undersigned counsel, hereby objects

(the "<u>Objection</u>") to the proposed assumption and assignment to Barclays Capital Inc.

("<u>Barclays</u>") of a financial services agreement (as described in greater detail below, the

NY751574.3
209604-10009

"Engagement Letter") between Lehman Brothers, Inc. ("LBI") and East West, on the grounds that (i) the Engagement Letter is not an executory contract (and, therefore, is not subject to assumption and/or assignment) and (ii) the Engagement Letter is a personal services contract which under applicable law cannot be assigned without East West's consent.  In support of its Objection, East West respectfully states as follows:

## BACKGROUND

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Petition Date"), Lehman Brothers Holdings, Inc. and certain of its subsidiaries (collectively, the "Debtors") commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court") (Case Nos. 08-13555 through 08-13600, such cases, the "Chapter 11 Cases").

2.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to LBI.  A trustee appointed under SIPA (the "SIPA Trustee") is administering LBI's estate in the Court (Case No. 08-01420, such proceeding, the "SIPA Proceeding").

**The Engagement Letter**

3.      Prior to the Petition Date, East West and LBI entered into that certain Letter Agreement dated as of June 10, 2008 (the "Engagement Letter").[1]  Pursuant to the Engagement Letter, in exchange for, among other things, the payment of certain fees by East West, LBI

---

[1] The Engagement Letter contains confidential information and is, therefore, not attached to the Objection.  If the Court so requests, the Engagement Letter will be provided to the Court in camera at the hearing of this matter.  East West does not intend to waive any privileges or confidences in the Engagement Letter by discussing any of the terms thereof in this Objection.

agreed to provide East West with financial advisory services in connection with a possible transaction (as described in greater detail in the Engagement Letter, a "Transaction"). The financial advisory services to be provided by LBI included, without limitation: (i) rendering general business and financial analyses, including feasibility analyses in connection with a Transaction; (ii) advising East West concerning a possible Transaction; (iii) assisting in negotiations between East West and any counterparties regarding a possible Transaction; and (iv) delivering a fairness opinion to East West's board of directors in connection with a Transaction.

4.  East West determined to retain LBI to provide the financial advisory services contemplated by the Engagement Letter because of LBI's outstanding reputation and its experience with transactions similar to the Transaction, as well as because of LBI's prior dealings with East West. Perhaps of even greater importance to East West's decision to retain LBI was East West's close relationship with and high level of confidence in (i) certain key LBI people that were situated in Los Angeles, California (the "LA Group") and (ii) LBI's Asia Group.

5.  However, East West understands that – while many of the people from the L.A. Group did transfer to Barclays as part of the bankruptcy sale – one of East West's key contacts with the LA Group has already ceased working for Barclays. In addition, LBI's Asia Group was acquired by an entirely different entity than Barclays – Nomura Holdings, Inc.

6.  In short, East West chose LBI to provide the financial advisory services contemplated by the Engagement Letter because of its relationship, trust and confidence in LBI (both in the institution itself and the people that East West was dealing with and expected would provide the services in question). LBI did not and would not have chosen Barclays to provide

those financial advisory services, nor should it be required to accept and pay for such services from Barclays now.

7. In any event, prior to the Petition Date, East West exercised its right to terminate the Engagement Letter. Thus, neither party has any remaining material obligations under the Engagement Letter, except in the unlikely event that East West consummates a Transaction in a brief run-off period (in which case, East West could owe LBI a fee).[2]

**The Bankruptcy Sale and the Proposed Assignment of the Engagement Letter**

8. On September 16, 2008, certain of the Debtors, LBI and Barclays entered into an Asset Purchase Agreement (as amended and clarified from time to time, the "Purchase Agreement"). On September 20, 2008, the Court entered an order (docket no. 258 in the Bankruptcy Cases) (the "Sale Order"). The Court entered a concurrent order (docket no. 3 in the SIPA Proceeding) approving the Purchase Agreement in the SIPA Proceeding, thereby authorizing the SIPA Trustee to consummate the sale transaction on behalf of LBI.

9. The Purchase Agreement and the Sale Order provide for the assumption and assignment of certain contracts and leases to Barclays after the closing of the sale transaction. The Court entered an order (docket no. 628 in the Bankruptcy Cases; docket no. 69 in the SIPA Proceeding) (the "Assignment Procedures Order") establishing procedures governing the assumption and assignment of these contracts.

10. Relying on the Purchase Agreement, the Sale Order and the Assignment Procedures Order, Barclays sent East West a notice of assignment with respect to the

---

[2] East West may also have remote and contingent indemnification obligations to LBI.

Engagement Letter in early November.[3] While East West and Barclays engaged in good faith negotiations to resolve any issues in connection with the proposed assignment of the Engagement Letter, they were ultimately unable to resolve those issues. Accordingly, East West has filed this Objection.[4]

## OBJECTION

11.  As set forth in greater detail below, East West objects to the proposed assumption and assignment of the Engagement Letter to Barclays on two independent grounds: (i) the Engagement Letter is not an executory contract (and, therefore, is not subject to assumption and assignment); and (ii) the Engagement Letter is a personal services contract which under applicable law cannot be assigned without East West's consent.

A.  **Because LBI Terminated the Engagement Letter Prior to the Petition Date, It Is Not an Executory Contract and It May Not be Assumed and Assigned.**

12.  In order for a debtor to assume an agreement under the Bankruptcy Code, the agreement must be an executory contract. See 11 U.S.C. §§ 365(a) & (d)(2), 1107; In re Penn. Traffic Co., 524 F.3d 373, 378-79 (2d Cir. 2008). Indeed, the Assignment Procedures Order itself expressly conditions any assignment upon a determination that the contract in question is an executory contract.

13.  "The Bankruptcy Code furnishes no express definition of an executory contract . . . but the legislative history of § 365(a) indicates that Congress intended the term to mean a contract 'on which performance remains due to some extent on both sides.'" See Nat'l Labor

---

[3] Notwithstanding that the assignment notice was dated October 23, 2008, the letter enclosing the assignment notice was not post-marked until November 4, 2008.

[4] LBI, the Debtors and Barclays agreed to extend East West's deadline to object to the proposed assignment of the Engagement Letter to November 24, 2008.

Relations Board v. Bildisco & Bildisco, 465 U.S. 513, 523 n.6 (1984); see also In re Ionosphere Clubs, Inc., 85 F.3d 992, 998-99 (2d Cir. 1996) (adopting the Bildisco standard for defining an executory contract as one "on which performance remains due to some extent on both sides").

14. Most courts that have addressed the issue have adopted the "materiality test," or the "substantial performance test," which indicates that a contract is executory if there exists some "obligation of both the bankrupt and the other party to the contract [that] are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L.R. 439, 460 (1973); see e.g., In re Penn Traffic Co., 524 F.3d at 379 (without expressly adopting the materiality test, noting that "most courts and scholars look to the standard first articulated by Professor Vernon Countryman …."); Sharon Steel Corp. v. National Fuel Gas Distribution Corp., 872 F.2d 36, 39 (3rd Cir.1989) ("courts have generally relied on" the Countryman definition). But see In re Drexel Burnham Lambert Group, Inc., 138 B.R. 687 (Bankr. S.D.N.Y. 1992) (applying a functionality test in connection with proposed rejection of contract by debtor).

15. Here, as set forth above, the Engagement Letter is not an executory contract because it was terminated prior to the Petition Date. Simply put, as of the Petition Date, there were no material unperformed obligations by either party. In fact, because the Engagement Letter has been terminated, LBI is no longer obligated to provide the financial advisory services that form the crux of the Engagement Letter.

16. For its part, East West's only potential performance obligation may be to pay certain fees. This obligation, however, is remote and contingent upon, inter alia, the future consummation of a Transaction during the Engagement Letter's brief run-off period.

Importantly, it does not directly relate to LBI's already completed services under the Engagement Letter.[5]  In any case, it is well settled that a potential obligation by one party to pay money to the other, standing alone, is not sufficient to render a contract executory.  See, e.g., In re Chateaugay Corp., 130 B.R. 162, 165-66 (Bankr. S.D.N.Y. 1991).

17.   As such, because it is not executory, the Engagement Letter may not be assumed and assigned to Barclays.

B.   **Even If It Is Executory, Because the Engagement Letter Is a Non-Assignable Personal Services Contract Under Applicable State Law, Bankruptcy Code Section 365(c)(1) Prohibits Its Assumption and Assignment to Barclays.**

18.   Section 365(c) of the Bankruptcy Code provides:

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if –
>
> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>
> (B) such party does not consent to such assumption or assignment.

11 U.S.C. §365(c)(1) (emphasis added).  Thus, a contract that could not be assigned under applicable law outside of bankruptcy may not be assumed and assigned in bankruptcy.

19.   Applying this rule, it is well settled that Bankruptcy Code Section 365(c)(1) prohibits (unless the non-debtor party consents) the assumption and assignment of an executory contract that is inherently based upon personal services or skills, or upon personal trust or

---

[5] Nothing herein shall constitute an admission that East West owes or will owe any fees under the Engagement Letter or has any further obligations thereunder.  East West expressly reserves all of its rights and defenses with respect to any purported obligation to pay fees or satisfy any other purported obligations under the Engagement Letter.

confidence (i.e., a personal services contract) because personal services contracts are almost uniformly non-assignable under applicable state law. See, e.g., In re Grove Rich Realty Corp., 200 B.R. 502, 507, 510 (Bankr. E.D.N.Y. 1996) (finding that a contract to sell real property, "with its purchase money financing provision, is akin to a personal service contract which involves a matter of personal trust and confidence between the original contracting parties" and that the seller who also chooses to be a lender has a right to rely on its personal selection of the original borrower and its evaluation of his creditworthiness).

20.     Here, the Engagement Letter, by virtue of its choice of law provision, is expressly governed by New York law. Under New York law "[t]he nonassignability imprint of personal service contracts is firmly established" and has been extended to encompass personal services contracts with corporations (and not just those with individuals). See In re Compass Van & Storage Corp., 65 B.R. 1007, 1010 (Bankr. E.D.N.Y. 1986) (citing N.Y. Bank Notes Co. v. Hamilton Bank Note Engraving & Printing Co., 180 N.Y. 280, 293 (1905)); see also Jennings v. Foremost Dairies, Inc., 235 N.Y.S.2d 566, 578 (N.Y. Sup. Ct. 1962) (finding that an exclusive distributorship agreement was a personal services contract and "based upon personal confidence, trust and faith"); Paige v. Faure, 229 N.Y. 114, 119 (1920) (tire manufacturing agreement was not assignable without consent because the contract showed that personal trust and confidence were reposed in the parties); see also Ford, Bacon & Davis, Inc. v. Holahan, 311 F.2d 901, 904 (5th Cir. 1962) (contract with bankrupt corporation was held to be unassignable personal services contract).

21.     The criteria for determining whether a contract is a personal services contract has generally been described as whether the contract in question "contemplates the performance of

personal services involving the exercise of special knowledge, judgment, taste, skill, or ability." See In re Compass Van, 65 B.R. at 1011.

22. Consistent with this standard, courts in the Second Circuit have explicitly held that agreements to provide financial advisory services, such as the Engagement Letter, are personal in nature and are not subject to assignment absent the counterparty's consent. See Rosenfeld v. Black, 445 F.2d 1337, 1344 n.10 (2d Cir. 1971), superseded by statute on other grounds, (stating that investment advisory agreement between Lazard Freres and mutual fund "being for personal services, could not have been assigned by [Lazard] without at least the consent of the Fund's directors . . ."); Holland v. Fahnestock & Co., 210 F.R.D. 487, 499 n.12 (S.D.N.Y. 2002) (stating that an engagement letter with an investment banker to structure securitization transactions was "akin to a personal services contract" and, thus, client's consent to assignment would be required); see also Ford, Bacon David, 311 F.2d at 904 (finding that a contract in which a party agreed to perform a variety of services, ranging from the preparation of engineering reports to financial services and legal advice, was a personal services contract that could not be assigned without consent because those services "were not merely mechanical, capable of successful completion by someone picked at random, or necessarily by other firms engaged in the same type of business").[6]

23. Here, as more specifically set forth above, the Engagement Letter is unquestionably a personal services contract. East West's retention of LBI was based on trust and confidence in LBI's specialized knowledge, skill, and judgment in providing financial advice in

---

[6] Contracts to provide similar types of professional advisory services have also been held to be unassignable. See In re Tonry, 724 F.2d 467, 469 (5th Cir. 1994) (affirming the district court's holding that an attorney's contracts to provide legal services are personal services contracts which could not be assigned by attorney); Kane v. Sesac, Inc., 54 F. Supp. 853, 858-59 (S.D.N.Y. 1943) (ruling that agreement for the provision of legal services was a personal services contract which could not be assigned by attorney).

connection with an important transaction. See, e.g., Nassau Hotel Co. v. Barnett & Barse Corp., 147 N.Y.S. 283, 285 (N.Y. App. Div. 1914) (finding that original contract party's long and successful experience in the business "was undoubtedly an inducing cause for plaintiff's making the agreement in question."). Further, the types of services to be rendered – including evaluating proposals, assisting in negotiations and strategy, performing analyses and rendering opinions - depend upon the judgment of the individuals working on the engagement, a highly personal and subjective assessment. East West put its trust in this regard in LBI.

24. To the extent that the Court determines that LBI has material obligations left unperformed under the Engagement Letter (which, subject to note 5, supra, East West does not concede) such that it is executory, East West should not now be forced to accept Barclays in LBI's place. East West certainly does not consent to do so.

25. Moreover, as set forth above, in entering into the Engagement Letter, East West relied upon key relationships it had with certain key LBI employees (i.e., the LA Group and the Asia Group). However, also as set forth above, one of LBI's key contacts in the LA Group no longer works at Barclays, and the Asia Group was acquired by an entirely unrelated entity. Thus, in addition to the material change at the firm level, there has also been a material change in the identity of the individuals who will be performing under the Engagement Letter (to the extent there are remaining performance obligations). East West worked closely with these individuals and developed relationships of trust and confidence based on the individuals' specialized skills and long term experience in the financial services industry; East West should not now be forced to accept performance from different individuals. See, e.g., In re Grove Rich Realty Corp., 200 B.R. at 507 ("[I]f there is a material change in the identity of the person or entity rendering performance under the contract, the identity of that person or entity is an essential element of the

contract, and if the contract is non-assignable under applicable non-bankruptcy law then the estate cannot assign the contract.").

26.     Accordingly, the proposed assignment of the Engagement Letter must be denied under Bankruptcy Code Section 365(c)(1) because it is an unassignable personal services contract under applicable state law and East West does not consent to the proposed assignment.

## CONCLUSION

**WHEREFORE**, East West respectfully requests that this Court (i) enter an order denying the assumption and assignment of the Engagement Letter and (ii) grant East West such other and further relief as this Court deems just and proper.

Dated: New York, New York
       November 24, 2008

                                        LOEB & LOEB LLP


                                        /s/ Jason Blumberg
                                        Jason Blumberg (JB 1033)
                                        LOEB & LOEB LLP
                                        345 Park Avenue
                                        New York, New York 10145
                                        Tel: (212) 407-4155
                                        Fax: (212) 407-4990

                                        Counsel for East West Bancorp