**CHADBOURNE & PARKE LLP**  
N. Theodore Zink, Jr.  
Andrew Rosenblatt  
30 Rockefeller Plaza  
New York, New York  10112  
tel:  (212) 408-5100  
fax: (212) 408-5369  

Hearing Date and Time:  
December 16, 2008 at 10:00 a.m.

*Attorneys for Central Pacific Bank, Deutsche Hypothekenbank (Actien-Gesellschaft), and Landesbank Baden-Württemberg*

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
| In re | : | Chapter 11 Cases |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al*. | : | 08-13555 (JMP) |
| | : | |
| Debtors. | : | Jointly Administered |
------------------------------------------------------------------------x

### DECLARATION OF RYAN HARADA

I, Ryan Harada, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following statements are true and correct to the best of my knowledge:

1. I am the Executive Vice President of Central Pacific Bank ("CPB").  I submit this declaration in support of the motion (the "Motion") of CPB, Deutsche Hypothekenbank (Actien-Gesellschaft) ("Deutsche Hypo"), and Landesbank Baden-Württemberg (f/k/a Landesbank Sachsen Girozentrale) ("LBBW," together with CPB and Deutsche Hypo, the "Non-Defaulting Lenders"), for an order granting the Non-Defaulting Lenders relief from the automatic stay to permit them to enforce their rights under the Co-Lending Agreement (as defined herein) to remove and replace Lehman Brothers Holdings Inc. ("LBHI") as agent ("Agent") thereunder.  Unless otherwise indicated, I have personal knowledge of the facts stated

NY4 - 210051.01

herein. All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2. Kapalua Bay, LLC (the "Borrower") and LBHI are parties to a Construction Loan Agreement dated as of July 14, 2006 (the "Construction Loan Agreement"), pursuant to which LBHI agreed to loan $370,000,000 to the Borrower for the development of the Ritz-Carlton Club and Residences at Kapalua Bay, Maui (the "Project"). In addition, the Borrower and LBHI are parties to a Note Splitter and Reaffirmation Agreement dated as of January 26, 2007, pursuant to which the original note delivered by the Borrower pursuant to the Construction Loan Agreement was split, divided and apportioned into six separate promissory notes delivered by the Borrower to LBHI: (i) Amended, Severed and Restated Promissory Note (Note A-1) in the principal amount of $30,000,000 ("Note A-1"); (ii) Amended, Severed and Restated Promissory Note (Note A-2) in the principal amount of $25,000,000 ("Note A-2"); (iii) Amended, Severed and Restated Promissory Note (Note A-3) in the principal amount of $25,000,000 ("Note A-3"); (iv) Amended, Severed and Restated Promissory Note (Note A-4) in the principal amount of $15,000,000 ("Note A-4"); (v) Amended, Severed and Restated Promissory Note (Note A-5) in the principal amount of $255,000,000 ("Note A-5"); and (vi) Amended, Severed and Restated Promissory Note (Note B) in the principal amount of $20,000,000 ("Note B").

3. By an Assignment and Assumption Agreement effective February 1, 2007, LBHI sold and assigned to CPB Note A-1 and a *pro rata* interest in the Construction Loan Agreement and other loan documents, and in accordance with its *pro rata* interest CPB assumed the obligations of LBHI under the Construction Loan Agreement and the other loan documents.

Contemporaneously with the execution and delivery of such Assignment and Assumption, LBHI endorsed Note A-1 to the order of CPB and delivered the original Note A-1 as so endorsed to CPB.

4. By an Assignment and Assumption Agreement effective February 1, 2007, LBHI sold and assigned to LBBW Note A-2 and a *pro rata* interest in the Construction Loan Agreement and other loan documents, and in accordance with its *pro rata* interest LBBW assumed the obligations of LBHI under the Construction Loan Agreement and the other loan documents. Contemporaneously with the execution and delivery of such Assignment and Assumption, LBHI endorsed Note A-2 to the order of LBBW and delivered the original Note A-2 as so endorsed to LBBW.

5. By an Assignment and Assumption Agreement effective February 1, 2007, LBHI sold and assigned to Deutsche Hypo Note A-3 and a *pro rata* interest in the Construction Loan Agreement and other loan documents, and in accordance with its *pro rata* interest Deutsche Hypo assumed the obligations of LBHI under the Construction Loan Agreement and the other loan documents. Contemporaneously with the execution and delivery of such Assignment and Assumption, LBHI endorsed Note A-3 to the order of Deutsche Hypo and delivered the original Note A-3 as so endorsed to Deutsche Hypo.

6. In connection with the foregoing assignments and assumption, CPB as the holder of Note A-1, LBBW as the holder of Note A-2, Deutsche Hypo as the holder of Note A-3, LBHI as holder of Note A-4, Note A-5 and -Note B, and LBHI as Agent entered into a Co-Lending Agreement dated as of February 1, 2007 (the "Co-Lending Agreement"). Under the Co-Lending Agreement, CPB, LBBW, Deutsche Hypo and LBHI (i) agreed to the relative rights,

benefits, priorities and obligations under the Construction Loan Agreement and the other loan documents, and (ii) appointed LBHI as Agent.

7. Upon information and belief, LBHI has not funded its obligations under the Construction Loan Agreement since its bankruptcy filing. Notwithstanding LBHI's failure to fund, the Non-Defaulting Lenders, while reserving all rights, have continued to fund their respective *pro rata* shares of advances under the Construction Loan Agreement.

8. Section 1.08 of the Co-Lending Agreement provides that "Required Split Note Holders shall have the right to remove the Agent if Cause occurs, provided that for this purpose if any Split Note Holder is Agent … such Split Note Holder's Pro Rata Interest shall be excluded in determining which Split Note Holders constitute Required Split Note Holders." Cause includes the failure of LBHI to comply with its funding obligations under the Construction Loan. Moreover, section 5.01(c) of the Co-Lending Agreement provides that "[i]f Agent is a Defaulting Split Note Holder, the Current Split Note Holders holding at least sixty percent (60%) of the outstanding principal balance of the Notes held by the Current Split Note Holders shall have the immediate right to terminate the Agent as Agent and appoint a successor Agent . . . ."

9. The Non-Defaulting Lenders, in the aggregate and excluding LBHI, constitute Required Split Note Holders (as defined in the Co-Lending Agreement) and hold at least 60% of the balance of the Notes.

10. The Non-Defaulting Lenders have concerns regarding LBHI's ability and willingness to fulfill its obligations as Agent. Despite numerous attempts by the Non-Defaulting Lenders to contact LBHI, LBHI has generally been unresponsive. The Non-Defaulting Lenders have no knowledge regarding the Agent's intentions with respect to the Project. The failure of

LBHI to perform its duties as Agent could have an adverse impact on the value of the Project which would harm the lenders as well as LBHI.

11. Upon information and belief, LBHI has no economic interest in performing as Agent because it receives no fees or other type of compensation for its service.

12. I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Ryan Harada*
Ryan Harada
Executive Vice President of Central Pacific Bank