WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :    08-13555 (JMP)
                                          :
                Debtors.                  :    (Jointly Administered)
                                          :
                                          :
------------------------------------------------------------------x
```

## NOTICE OF DEBTORS' MOTION FOR AN ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING AND APPROVING A SETTLEMENT BETWEEN PAMI STATLER ARMS LLC AND STATLER ARMS GARAGE LLC

PLEASE TAKE NOTICE that a hearing on the annexed motion of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases (together, the "Debtors") for an order establishing and authorizing and approving the terms

of a settlement between PAMI Statler Arms LLC and Statler Arms Garage LLC (the "Motion"),

all as more fully described in the Motion, will be held before the Honorable James M. Peck,

United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton

Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the

"Bankruptcy Court"), on **December 16, 2008 at 10:00 a.m. (Prevailing Eastern Time)** (the

"Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn:  Jacqueline Marcus and John W. Lucas., attorneys for the Debtors; (iii) the Office

of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33

Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Paul

Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis; (iv) Milbank, Tweed,

Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis

F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official

committee of unsecured creditors appointed in these cases; (v) Taft Stettinius & Hollister, LLP,

200 Public Square, Suite 3500, Cleveland, Ohio 44114-2302, Attn:  Stephen M. O'Bryan, Esq.

and  The Zagrans Law Firm, 474 Overbrook Road, Elyria, Ohio 44035, Attn:  Eric H. Zagrans,

Esq., attorneys for Statler Arms Garage, LLC; and (vi) any person or entity with a particularized

interest in the Motion, so as to be received no later than **December 11, 2008 at 4:00 p.m.**

**(prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: November 25, 2008
      New York, New York

          /s/ Jacqueline Marcus
          Harvey R. Miller
          Jacqueline Marcus

          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, New York 10153
          Telephone: (212) 310-8000
          Facsimile: (212) 310-8007

          Attorneys for Debtors
          and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------x
                                          :
In re                                     :      Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :      08-13555 (JMP)
                                          :
                        Debtors.          :      (Jointly Administered)
                                          :
                                          :
---------------------------------------------------------------x
```

**DEBTORS' MOTION FOR AN ORDER**
**PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY**
**PROCEDURE AUTHORIZING AND APPROVING A SETTLEMENT**
**BETWEEN PAMI STATLER ARMS LLC AND STATLER ARMS GARAGE LLC**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, including PAMI Statler Arms LLC ("PAMI Statler"), as debtors and

debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates,

"Lehman"), respectfully represent as follows:

**Background**

1.      Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  One of the Debtors' subsidiaries, PAMI Statler, commenced its chapter 11

case on September 23, 2008.  The Debtors' chapter 11 cases have been consolidated for

procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to

operate their businesses and manage their properties as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").

3.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

### Jurisdiction

4.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Lehman's Business

5.      Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman was a

leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.  Its former headquarters in

New York and regional headquarters in London and Tokyo were complemented by a network of

offices in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

6.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit

of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District

of New York in Support of First-Day Motions and Applications, filed on September 15, 2008

[Docket No. 2].

## Relief Requested

7.      By this Motion, PAMI Statler seeks entry of an order, pursuant to

Bankruptcy Rule 9019, authorizing and approving the Amendment of License Agreement and

Stipulation of Settlement, dated September 23, 2008  (the "Settlement"), between PAMI Statler

and Statler Arms Garage LLC ("Statler Garage" and together with PAMI Statler, the "Parties"), a

copy of which is attached hereto as Exhibit 1.  Pursuant to the Settlement, the Parties have

agreed to amend a license agreement, dated August 13, 1999 and filed of record on September

21, 1999 as Instrument No. 199909210870 of Cuyahoga County Records (the "License

Agreement"), and settle all disputes relating thereto including the dismissal of the pending action

between the Parties.

## PAMI Statler's Relationship To Statler Garage

8.      PAMI Statler is the owner of an apartment building located 1127 Euclid

Avenue, Cleveland, Ohio (the "Apartment Building").  Statler Garage, which is not an affiliate of

PAMI Statler, is the owner of a parking garage (the "Parking Garage") that is adjacent to the

Apartment Building.  Pursuant to the License Agreement between the Parties, Statler Garage

agreed to make one parking space available in the Parking Garage for each unit in the Apartment

Building at certain rates.

9.      On or about May 10, 2006, a series of disputes arose between the Parties

relating to the License Agreement regarding (i) the rates for the parking spaces; (ii) the rules of

the Parking Garage; and (iii) whether Statler Garage was entitled to terminate the License Agreement.

10.    On or about August 23, 2006, PAMI Statler commenced a declaratory judgment action entitled *PAMI Statler Arms LLC v. Statler Arms Garage, LLC*, Case No. CV 06 598610 (the "State Court Action"), to enforce the terms of the License Agreement.  Statler Garage filed a counterclaim seeking, among other things, a judgment authorizing termination of the License Agreement.

11.    After the commencement of PAMI Statler's chapter 11 case, that State Court Action was stayed and PAMI Statler removed the State Court Action to the United States District Court for the Northern District of Ohio, Eastern Division (the "District Court").

## The Settlement

12.    With the assistance of the District Court and arms' length negotiations between PAMI Statler and Statler Garage, the Parties were able to resolve the disputes related to the License Agreement.  The salient terms of the Settlement are summarized below.

- The License Agreement has been amended to establish (a) the rates for the Parking Garage through December 31, 2010 and (b) the annual rate increases commencing January 1, 2011, which are also subject to an adjustment if such rate increases deviate more than 25% from the market rates of other parking garages in downtown Cleveland, Ohio.

- The current rules governing the Parking Garage will remain in effect through December 31, 2008 and the Parties are free to negotiate such rules thereafter.

- Any and all claims arising under the License Agreement including retroactive price adjustments are waived.

## The Controlling Legal Standard

13.    Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a).  In granting a motion pursuant to Rule 9019(a), a court must find that

the proposed settlement is fair and equitable and is in the best interests of the estate. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

14.     The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  It is the responsibility of a court to examine a settlement and determine whether it "falls below the lowest point in the range of reasonableness." *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

15.     While a court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation.  *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991).  "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact….  The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

16.     The court may give weight to the informed judgment of the debtor that a compromise is fair and equitable. *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but

only that I test his choice for reasonableness…. If the Trustee chooses one of two reasonable

choices, I must approve that choice, even if, all things being equal, I would have selected the

other.").

### The Settlement Should Be Approved Because
### It is Fair and Equitable and Falls Well Within the Range of Reasonableness

17.    In light of the circumstances, the Settlement is clearly fair and equitable

because the Parties have agreed to reasonable rates for the Parking Garage for the period through

December 31, 2010, fixed the amount by which the parking rates increase beginning January 1,

2011, agreed to a rate adjustment protocol that is based upon the market rates of an identified set

of other parking garages in the downtown Cleveland, Ohio area, and waived any retroactive price

adjustments.  PAMI Statler's ability to lease units in the Apartment Building is dependant on the

availability of parking spaces for its tenants and prospective tenants at reasonable rates.  If the

Settlement is not approved and Statler Garage is successful in terminating PAMI Statler's rights

under the License Agreement, it would be substantially more difficult for PAMI Statler to retain

and attract new tenants, which in turn would adversely affect the value of the Apartment

Building.  In addition, the Settlement does not impose any immediate cost upon PAMI Statler

but rather stabilizes the relationship between the Parties.  Approval of the Settlement also

relieves PAMI Statler of litigation cost related to the dispute.  Accordingly, the terms of the

Settlement fall well above the lowest point in the range of reasonableness, and approval of the

Settlement is in the best interests of PAMI Statler's estate.

18.    Given the District Court's involvement in facilitating the Settlement and

the proximity to the Parties' local counsel, the Parties have requested that the District Court

retain jurisdiction to enforce the Settlement and resolve any disputes arising thereunder.

## Notice

19.     No trustee or examiner has been appointed in these chapter 11 cases.  The

Debtors have served notice of this Motion in accordance with the procedures set forth in the

order entered on September 22, 2008 governing case management and administrative procedures

for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Committee;

(iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York; (vi) Statler Garage; and (vii) all parties

who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further

notice need be provided.

20.     No previous motion for the relief sought herein has been made to this or

any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  November 25, 2008
        New York, New York

/s/ Jacqueline Marcus
Harvey R. Miller
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# EXHIBIT A

**(Settlement)**

## AMENDMENT OF LICENSE AGREEMENT AND STIPULATION OF SETTLEMENT

This Amendment Of License Agreement And Stipulation Of Settlement ("Agreement") is made and entered into effective as of September 23, 2008 by and between PAMI Statler Arms LLC ("Licensee") and Statler Arms Garage, LLC ("Licensor").

## RECITALS

A.    Statler Arms, Inc. and Statler Arms Garage, Inc. entered into (i) that certain License Agreement for Use of Parking Spaces by and between Statler Arms Garage, Inc. and Statler Arms, Inc. dated August 13, 1999 and filed for record on September 21, 1999 as Instrument No. 199909210870 of Cuyahoga County Records ("License Agreement"); and (ii) that certain License Agreement for Use of Ballroom by and between Statler Arms Garage, Inc. and Assignor dated August 13, 1999 and filed for record September 21, 1999 as Instrument No. 199909210869 of Cuyahoga County Records ("Ballroom License Agreement"). The License Agreement sets forth respective rights and obligations of Statler Arms, Inc. and Statler Arms Garage, Inc. with respect to licensing of parking spaces at the Statler Arms Garage located at 1111 Euclid Avenue, Cleveland, OH (the "Garage") for use by tenants of the Statler Arms Apartment Building located at 1127 Euclid Avenue, Cleveland, OH (the "Apartment Building").

B.    By Warranty Deeds by and between Statler Arms Garage, Inc. and Statler Arms Garage, LLC dated August 6, 2004 and recorded December 6, 2004 as Instrument No. 200412061122 of Cuyahoga County Records and Warranty Deed by and between Statler Arms Garage, Inc. and Statler Arms Garage, LLC dated December 27, 2004 and recorded January 3, 2005 Instrument No. 200501030945 of Cuyahoga County Records, Statler Arms Garage, Inc. transferred all of its right, title and interest in and to the Garage to the Licensor. As a result, Licensor (Statler Arms Garage, LLC) became the licensor under the License Agreement.

C.    By Warranty Deed in lieu of foreclosure (the "Deed in Lieu") dated May 8, 2008
and recorded on May 10, 2008 as Instrument No. 200501030945 of Cuyahoga County Records,
Statler Arms, Inc. transferred all of its right, title and interest in and to the Apartment Building to
the Licensee, subject to the encumbrances as set forth in the Deed in Lieu.

D.    Licensee and Statler Arms, Inc. are parties to that certain Assignment and
Assumption of License Agreements dated May 8, 2006 and recorded May 10, 2006 as
Instrument No. 200605100708 of Cuyahoga County Records (the "Assumption"), covering the
property described in Exhibit A annexed hereto. Licensor executed and delivered the
Assumption to evidence its agreement with the representations of Statler Arms, Inc. contained in
the License Agreement and Licensee's assumption of the License Agreement. As a result,
Licensee (PAMI Statler Arms LLC) is now the licensee under the License Agreement.

E.    A series of disputes have arisen between Licensor and Licensee since May 10,
2006. Certain of the disputes (including claims by Licensee and counterclaims by Licensor)
were being litigated in the action entitled PAMI Statler Arms LLC v. Statler Arms Garage, LLC,
Case No. CV 06 598610 (the "State Court Action"), pending before the Court of Common Pleas,
Cuyahoga County, State of Ohio (the "State Court"). On September 16, 2008, a jury trial
commenced in the State Court Action. Because this document is a settlement agreement,
Licensor and Licensee have agreed not to set forth at any length the nature of the disputes, but
rather both agree that those and all other present and past disputes are being settled pursuant to
this Agreement.

F.    On September 23, 2008, while the State Court Action was pending, Licensee
commenced a voluntary case under chapter 11 of title 11 of the United States Code (the
"Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New

York (the "Bankruptcy Court"), Case No. 08-13664 (JMP) (the "Bankruptcy Case"). The Bankruptcy Case is being jointly administered under Case No. 08-13555 (JMP).

G.    By removal petition dated September 23, 2008, Licensee removed the State Court Action to the United States District Court for the Northern District of Ohio, Eastern Division (the "District Court") (the District Court action shall be referred to herein as the "Pending Action"). The Pending Action remains pending before the District Court.

H.    Through the mediation of the District Court, Licensor and Licensee (each a "Party" and, collectively, the "Parties") have agreed to modify the License Agreement and settle all disputes outstanding between them, including those that are the subject of the Pending Action.

NOW, THEREFORE, in consideration of the premises, and the undertakings herein including the payment and performance by the Licensor and Licensee of the obligations set forth in this Agreement, and for other good and valuable consideration, the parties hereto covenant and agree as follows:

1.    Paragraph 4 of the License Agreement is amended to read as follows:

    a. Notwithstanding past practices, the following shall apply effective as of September 23, 2008 and going forward.

    b. Commencing October 1, 2008, tenants ("Tenants") of the Apartment Building will be charged $140 per month for a non-reserved space and $160 for a reserved space in the Garage.

    c. Commencing January 1, 2009, Tenants of the Apartment Building may be charged up to $150 per month and $170 per month for non-reserved parking and spaces reserved parking spaces, respectively.

    d. Commencing January 1, 2010 and every year thereafter in January, the

rates for non-reserved and reserved parking spaces in the Garage may be increased by up to $10.00 per space month, subject to the conditions set forth in subparagraph g below.

e. The rates for non-reserved and reserved parking spaces in the Garage shall not be retroactively adjusted for any period prior to October 1, 2008.

f. The rules governing the Garage will continue to be governed by the Interim Agreement between the parties, dated as of November 10, 2006, and will stay in effect through December 31, 2008, after which time the Parties are free to renegotiate such rules.

g. Commencing with any increase in parking rates pursuant to subparagraph d above taking effect in January 2011 or in any January thereafter, the parking rates in effect after any such annual increase (the "Proposed Garage Rates") shall not deviate by more than twenty-five percent (25%) from the market rates for downtown Cleveland parking garages as established by the average of the published rates in effect at the time (the "Current Published Rates")[1] for the following ten public parking garages (the "Public Parking Garages") set forth below:

- Chesterfield - Highest public rate
- Chesterfield - Highest residential rate
- Reserve Apartments - Highest public rate
- Reserve Apartments - Highest residential rate
- 515 Euclid Avenue
- 709 Vincent Avenue
- 947 Chester Avenue
- 750 Vincent Avenue
- 320 Superior Avenue
- 1100 Superior Garage

---

[1]   For purpose of reference, the rates in effect during September 2008 (the "September 2008 Rates") and the average of such rates are attached hereto as Exhibit B.

The average of the Current Published Rates (each such parking garage being given equal weight in such calculation) (the "Current Average Rates") will be calculated as of the time of the particular Proposed Garage Rates. In the event the particular Proposed Garage Rates are more than twenty-five (25%) percent *lower* than the Current Average Rates, Licensor may increase the Proposed Garage Rates to the rates that are seventy-five (75%) of the Current Average Rates. In the event the particular Proposed Garage Rates are more than twenty-five (25%) percent *higher* than the Current Average Rates, Licensor shall reduce the Proposed Garage Rates to the rates that are one hundred twenty-five (125%) of the Current Average Rates. The resulting rates will be the new rates in effect for the year in question. For subsequent calendar years, subparagraphs (d) above and this subparagraph shall apply to the rates resulting from the calculation set forth in this subparagraph.

2.    <u>Release of Claims</u>. Other than the obligations of the Parties set forth herein, the Parties hereby absolutely and unconditionally forever waive, release, discharge, relinquish and give up any and all claims, causes of action, suits, obligations and covenants they may have or hold against the other Party or its respective agents, servants, employees, attorneys, shareholders, members, directors, officers, affiliates, successors or assigns that may have arisen as of the date hereof, whether in law, in equity, or otherwise, which the Parties ever had, now have, or that they may have in the future, whether known or unknown, knowable or unknowable, suspected or unsuspected, and including without limiting the generality of the foregoing, all claims and counterclaims that were, or could have been, asserted in the State Court Action and District Court Action; *provided, however*, that the License Agreement between the Parties as amended by this Agreement shall remain in full force and effect and any rights or claims arising from and

after the date of this Agreement under the License Agreement as amended shall be unaffected by the foregoing release.

    3.    <u>Recording of License Agreement</u>. This Agreement may be recorded by either Party to this Agreement.

    4.    <u>Independent Investigations; Representations as to Authority</u>. Except as set forth below, each Party has entered into this Agreement based upon its own independent investigation, and makes no warranty or representation to any other Party, nor does it rely upon any representation of any other Party with respect to the subject matter of this Agreement, other than the following sentence. Each Party represents that it has full power and authority to enter into and perform this Agreement in accordance with its terms, but as to the Licensee, subject to Bankruptcy Court approval. No Party is, and no Party shall be deemed or found to be, a fiduciary to any other Party.

    5.    <u>Bankruptcy Court Approval</u>. Promptly after execution and delivery of this Agreement, Licensee will promptly file with the Bankruptcy Court a motion (the "Settlement Motion") for entry of an order (the "Settlement Order") authorizing the Licensee to perform this Agreement in accordance with its terms without the need for further order from the Bankruptcy Court or notice to any other party in interest in the Bankruptcy Case. The Parties shall cooperate reasonably to procure prompt entry of the Settlement Order. In filing the Settlement Motion, the Parties shall stipulate to the facts set forth in the lettered paragraphs of the Recitals of this Agreement. This Agreement shall be of no force or effect against Licensee unless and until the Settlement Order is entered by the Bankruptcy Court.

    6.    <u>Dismissal of Action; Retention of Jurisdiction by District Court</u>. Promptly following the execution of this Agreement by all Parties and final approval of it by the

Bankruptcy Court, the District Court Action and all claims and counterclaims asserted therein

shall be dismissed with prejudice and without costs; provided, however, the Parties through their

entry into this Agreement consent to the Bankruptcy Court order approving this Agreement also

providing that the District Court shall retain jurisdiction to enforce this Agreement and any

disputes arising hereunder.  The Parties shall request that the Bankruptcy Court approve the

District Court's retention of jurisdiction as provided in this paragraph.

      7.    Notices.  Any notice, report, demand, request or other instrument or

communication authorized, required or desired to be given under this Agreement by or to any

party shall be in writing and shall be deemed given if addressed to the party intended to receive

the same, at the address of such party set forth below, (i) when delivered at such address by hand

or by overnight delivery service, or (ii) three (3) days after the same is deposited in the United

States mail as first class certified mail, return receipt requested, postage paid, whether or not the

same actually shall have been received by such party:


Licensee:           PAMI Statler Arms LLC
                     c/o Midland Loan Services, Inc.
                     Special Servicing Group
                     2201 N. Collins, # 185
                     Arlington, TX  76011
                     Attn:  Cecilia Bolen
                     Phone:  817-804-5902
                     Fax:  817-633-3144
                     Email: cecilia.bolen@midlandls.com


With a copy to:     Herrick, Feinstein LLP
                     One Gateway Center
                     Newark, NJ 07102
                     Phone: (973) 274-2055
                     Fax: (973) 274-6424
                     Email geisenberg@herrick.com
                     Attention: Gary F. Eisenberg, Esq.

|  |  |
|---|---|
| and a copy to: | Benesch Friedlander Coplan & Aronoff LLP<br>200 Public Square, 2300 BP Tower<br>Cleveland, Ohio 44114-2378<br>Voice: (216) 363-4428<br>Fax:    (216) 363-4588<br>Mobile: (440) 376-1594<br>dmayo@bfca.com |
| Licensor: | Statler Arms Garage, LLC<br>c/o David Spira<br>1660 49th Street<br>Brooklyn, New York 11204 |
| with a copy to: | Stephen M. O'Bryan<br>Taft Stettinius & Hollister, LLP<br>200 Public Square, Suite 3500<br>Cleveland, Ohio 44114-2302<br>Phone: (216) 241-2838<br>Fax:  (216) 241-3707 |
| and a copy to: | Eric H. Zagrans<br>The Zagrans Law Firm<br>474 Overbrook Road<br>Elyria, Ohio 44035 |

Any Party may change the address to which any such notice, report, demand, request or other instrument or communication to such Party is to be delivered or mailed, by giving written notice of such change to the other parties, but no such notice of change shall be effective unless and until received by such other parties. No such notice, report, demand, request or other instrument or communication given hereunder shall be invalidated or rendered ineffective due to any failure to give, or delay in giving, a copy of such notice, report, demand, request or other instrument or communication to any party to whom such copy is to be given as provided above.

8.    Calculation of Time. Whenever in this Agreement a period of time is stated as a number of days, it shall be construed to mean calendar days; *provided, however,* that when any period of time so stated would end on a Saturday, Sunday, legal holiday, then such period shall

be deemed to end on the next day following which is not a Saturday, Sunday, or legal holiday. Time is of the essence of this Agreement.

9.    <u>Further Assurances</u>. Each Party hereby covenants and agrees (in the case of the Licensee, subject to Bankruptcy Court approval) to take any and all additional actions and execute, file, record and/or deliver to the other Party such further agreements, documents and instruments as may be necessary or as the other Party may at any time or times reasonably request to effect the provisions and intent of this Agreement.

10.    <u>Construction</u>. Unless the context of this Agreement clearly requires otherwise, references to the plural include the singular, the singular includes the plural, the part includes the whole, "including" is not limiting, and "or" has the inclusive meaning represented by the phrase "and/or." The words "hereof," "herein," "hereby," "hereunder," and similar terms in this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement. Section references are to this Agreement unless otherwise specified. Capitalized terms not defined herein shall have the meanings as provided in the License Agreement.

11.    <u>Complete Agreement, Modifications in Writing</u>. This Agreement is intended by the Parties as a final expression of their agreement and is intended as a complete statement of the terms and conditions of their agreement. No amendment, modification, supplement, termination, consent, or waiver of or to any provision of this Agreement nor any consent to any, departure therefrom shall in any event be effective unless the same shall be in writing and signed by or on behalf of each of the Parties. Any waiver of any provision of this Agreement, or any consent to any departure from the terms of any provisions of this Agreement, shall be effective only in the specific instance and for the specific purpose for which given.

12.    Waivers; Failure or Delay.  No failure or delay on the part of any Party in the exercise of any, power, right, remedy, or privilege under this Agreement shall impair such power, right, remedy, or privilege or shall operate as a waiver thereof; nor shall any single or partial exercise of any such power, right, or privilege preclude any other or further exercise of any other power, right, or privilege. The waiver of any such right, power, remedy, or privilege with respect to particular facts and circumstances shall not be deemed to be a waiver with respect to other facts and circumstances.

13.    Headings. Section headings used in this Agreement are for convenience of reference only and shall not constitute a part of this Agreement for any purpose or affect the construction of this Agreement.

14.    Execution in Counterparts; Facsimile Delivery; Reproduction.  This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which counterparts, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Agreement. Delivery of a copy of an executed counterpart by facsimile shall constitute sufficient delivery of an executed original counterpart. This Agreement shall become effective upon the execution and delivery of a counterpart hereof by each of the parties hereto and approved by the Bankruptcy Court. This Agreement may be reproduced by any photographics, photostatic, microfilm, micro-card, miniature photographic, facsimile or other similar process and the original thereof may be destroyed. The Parties agree that any such reproduction shall, to the extent permitted by law, be as admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not the reproduction was made in the

regular course of business) and that any enlargement, facsimile or further reproduction shall

likewise be admissible in evidence.

    15.    <u>Severability</u>.  Whenever possible, each provision of this Agreement shall be

interpreted in such manner as to be effective and valid under applicable law, but if any provision

of this Agreement shall be illegal, invalid, prohibited, or unenforceable under applicable law,

such provision shall be ineffective only to the extent of such illegality, invalidity, prohibition or

unenforceability, without invalidating or impairing the remaining provisions hereof.

    16.    <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the

benefit of the Parties and their respective successors and assigns, including without limitation

transferees of the Apartment Building or the Garage.

    17.    <u>Governing Law</u>.  This Agreement shall be construed in accordance with the laws

of the State of Ohio that are applicable to contracts formed in and to performed entirely within

such state without giving effect to any conflict of laws rules or principles recognized by the

courts thereof that would cause the laws of another jurisdiction to apply.

    IN WITNESS WHEREOF, the Parties have entered into this Agreement as of the date

first set forth above, intending to be legally bound hereby.

    Executed this November *24*, 2008.

**STATLER ARMS GARAGE, LLC**        **PAMI STATLER ARMS LLC**

By: _____        By: _____
Name: *David Spira*        Name: *Jeff Fitt*
Its:    Authorized Signatory        Its:    Authorized Signatory

State of New York     )
County of New York )

The foregoing was acknowledged before me this 21ˢᵗ day of November, 2008 by
JEFF FITTS_____, Authorized Signatory of PAMI STATLER ARMS LLC, a Delaware
limited liability company, on behalf of the company.

(seal)

_Joanne C. Pflaum_
Notary Public
My Commission Expires:

JOANNE C. PFLAUM
Notary Public, State of New York
No. 4848238
Qualified In Nassau County
Commission Expires ~~March 30, 19~~
9/30/09

State of ~~Ohio~~ *New York*
County of ~~Cuyahoga~~ ( *Kings*

The foregoing was acknowledged before me this 23 day of November, 2008 by
*David Spira*_____, Authorized Signatory of STATLER ARMS GARAGE, LLC, a
Delaware limited liability company, on behalf of the company.

(seal)                                          X

Notary Public
My Commission Expires:

CHAIM GROSS
Notary Public, State of New York
No. 24 — 4981755
Qualified In Kings County
Commission Expires May 20, 10

Drafted by:

Gary F. Eisenberg, Esq.
Herrick Feinstein LLP
One Gateway Center
Newark, NJ 07102
(973) 274-2055

When recorded return to:

Gary F. Eisenberg, Esq.
Herrick Feinstein LLP
One Gateway Center
Newark, NJ 07102
(973) 274-2055

**Exhibit A To Deed**

Property Description

Parcel No. 1: Fee Simple (PPN's 101-36-006 and 007)

Situated in the City of Cleveland, County of Cuyahoga and State of Ohio and known as being part of Sublot Nos. 62 and 63 in John M. Woolsey's Subdivision of part of Original Two Acre Lot Nos. 163 to 167, as shown by the recorded plat in Volume "N" of Deeds, Page 486 of Cuyahoga County Records, bounded and described as follows:

Beginning on the northerly line of Euclid Avenue (99.00 feet wide) at its intersection with the westerly line of East 12th Street (formerly Muirson Street) (60.40 feet wide);

Thence South 79° 35' 51" West along said northerly line of Euclid Avenue, 168.82 feet to the southeasterly corner of land conveyed to the Trebmal Construction Co. by deed recorded in Volume 83-0853, Page 17 of Cuyahoga County Records;

Thence North 10° 35' 39" West along the easterly line of land so conveyed to the Trebmal Construction Co. and the northerly prolongation thereof, 150.00 feet to a point;

Thence North 79° 35' 42" East 64.80 feet to a point on the westerly line of load conveyed to The Cleveland Trust Company by deed dated May 31, 1927 and recorded in Volume 3567, Page 349 of Cuyahoga County Records;

Thence North 10° 36' 09" West along said line, 169.58 feet to a point in the southeasterly line of Hickory Court, N.E. (15.12 feet wide);

Thence North 55° 48' 21" East along the southeasterly line of Hickory Court N.E., 113.48 feet to a point in the westerly line of aforementioned East 12th Street;

Thence South 10° 36' 09" East along the westerly line of said East 12th Street, 365.36 feet to the point of beginning and containing 1.0408 acres of land as calculated and described by The North Coast Engineering and Surveying Co., Inc., in November of 1998, be the same more or less, but subject to all legal highways;

Note: The above premises is further known as the Apartment Parcel in the Plat of Consolidation of Statler Arms, Inc. as shown by the recorded plat in Volume 301 of Maps, Page 78 of Cuyahoga County Records.

EXHIBIT
"A"
PAGE 1 OF 2

Parcel No. 2: Appurtenant Rights

A. Together with a nonexclusive perpetual easement for the use of the elevator and stairwell in the garage; a nonexclusive perpetual easement for access to and the use of all underground facilities serving the building located on the apartment parcel including without limitation all utility lines, pipes, ducts, equipment and other facilities located on, under or over the garage parcel; a nonexclusive perpetual easement for the use of the access and service drive which extends from Hickory Court through the rear portion of the garage; a nonexclusive and perpetual easement to perform all necessary maintenance to the apartment building wall and to make penetrations into and through the garage wall for the purpose of allowing direct access from the apartment building to each floor of the garage and a nonexclusive perpetual easement to the use of the air rights above the top level of the garage for the purpose of maintaining and repairing the portions of the wall of the apartment building which extend above the top level of the garage all as reserved in the Warranty Deed from Statler Arm, Inc., an Ohio corporation to Statler Arms Garage, Inc., an Ohio corporation dated April 27, 1999 filed for record September 21, 1999 and being Cuyahoga County Recorder's AFN 199909210866.

B. Together with a License Agreement for Use of Ballroom by and between Statler Arms Garage, Inc., an Ohio corporation and Statler Arms, Inc., an Ohio corporation, dated August 13,1999 filed for record September 21, 1999 as Cuyahoga County and being Cuyahoga County Recorder's AFN 199909210869.

C. Together with a License Agreement for Use of Parking Spaces by and between Statler Arms Garage, Inc., an Ohio corporation and Statler Arms, Inc., an Ohio corporation, dated August 13, 1999, filed for record on September 21, 1999 and being Cuyahoga County Recorder's AFN 199909210870.

EXHIBIT
"A"
PAGE 2 OF 2

**Exhibit B To Agreement**

List of September 2008 Rates

Central Parking
Chesterfield Parking Rates

| Monthly Rates | Tenant | Non Tenant |
|---|---|---|
| Level 8 | $105.00 | $130.00 |
| Level 7 | $105.00 | $130.00 |
| Level 7 Double Spot | $80.00 Half | $105.00 Half |
| Level 6 | $110.00 | $145.00 |
| Level 5 | $145.00 | $170.00 |
| Level 4 | $145.00 | $170.00 |
| Levels 1-3 | $85.00 | $125.00 |

**Daily Rates**

| | |
|---|---|
| 15 min or less | $1.50 |
| 30 min or less | $3.00 |
| 45 min or less | $4.50 |
| 1 hour or less | $6.00 |
| 10 hour or less | $6.25 |
| 24 hour or less | $6.75 |
| Early Bird In By 9:00am | $5.75 |
| Weekend Rate | $5.00 |


DEFENDANT'S EXHIBIT

*Reserve Square*

## Tenants Rates

- 2004-$50 Non-Reserved; $65 Reserved
- 2005-$75 Non-Reserved; $95 Reserved
- 2006-$80 Non-Reserved; $95 Reserved
- 2007-$85 Non-Reserved; $105 Reserved
- 2008-$87 Non-Reserved; $105 Reserved

## Non-Tenants Rates

- 2004-$140
- 2005-$140
- 2006-$140
- 2007-$160
- 2008-$160

## Available Parking Spaces

- 952 Spaces (Includes Handicapped, Reserved & Non-Reserved)

## Tenants Reserved Parking Spaces

- 2004-68 Spaces
- 2005-68 Spaces
- 2006-68 Spaces
- 2007-68 Spaces
- 2008-60 Spaces

## Non-Tenants Reserved Parking Spaces

- N/A (2004-2008)



DEFENDANT'S
EXHIBIT
82



**DESMAN**

A S S O C I A T E S

**Table 1   Existing Monthly Parking Rates at Select Garages in the vicinity of the Statler Arms Garage**

| Base Map # | Parking Facility Address | Parking Facility Name | Reserved Monthly Rate | Reserved Monthly Rank | General Monthly Rate | General Monthly Rank |
|---|---|---|---|---|---|---|
| GW-19 | 515 Euclid Avenue | 515 Euclid Garage | $275.00 | 1 | $165.00 | 7 |
| GW-02 | 709 Vincent Avenue | Fifth Third Bank Garage | $250.00 | 2 | $205.00 | 1 |
| TH-02 | 947 Chester Avenue | Huntington Garage | $250.00 | 2 | $180.00 | 6 |
| GW-03 | 750 Vincent Avenue | National City Bank Garage | $245.00 | 3 | $195.00 | 2 |
| GW-04 | 320 Superior Avenue | BP Garage | $235.00 | 4 | $195.00 | 2 |
| CC-16 | 1375 E. 9th Street | One Cleve. Center Garage | $235.00 | 4 | $185.00 | 4 |
| CC-17 | 1438 E. 12th Street | Eaton Center Garage | $225.00 | 5 | N/A | |
| TH-01 | 1100 Superior Garage | Diamond-Hines Garage | $220.00 | 6 | $185.00 | 5 |
| CC-12 | 708 St. Clair Avenue | IMG Center Garage | $220.00 | 6 | $180.00 | 6 |
| TH-06 | 1101 Euclid Avenue | Statler Arms Garage | $220.00 | 6 | $180.00 | 6 |
| GW-01 | 800 Superior Avenue | Key Center Garage | $215.00 | 7 | $185.00 | 5 |
| GW-17a | 740 Euclid Avenue | Krenzler Garage | $210.00 | 8 | $155.00 | 10 |
| TH-03 | 1717 E. 9th Street | East Ohio Gas Garage | $205.00 | 9 | $187.00 | 3 |
| CC-18 | 1060 Rockwell Avenue | Cathedral Diocese Plaza Garage | $197.18 | 10 | $157.18 | 9 |
| GW-13 | 2047 Ontario Street | May Company Garage | $175.00 | 11 | $152.80 | 11 |
| TH-07 | 1801 E. 12th Street | Chesterfield Apartments | $170.00 | 12 | $125.00 | 13 |
| CC-13 | 801 Rockwell Avenue | Rockwell Garage | $162.18 | 13 | $142.18 | 12 |
| TH-14 | 1350 Euclid Avenue | US Bank Centre Garage | $155.00 | 14 | $110.00 | 18 |
| TH-30 | 1459 Chester Avenue | Playhouse Square Garage | $155.00 | 14 | $114.00 | 16 |
| TH-17 | 1212 Huron Road | Halle Garage | $150.00 | 15 | $115.00 | 15 |
| TH-22 | 900 Prospect Avenue | Ameritrust Garage | $150.00 | 15 | $111.00 | 17 |
| TH-13 | 1509 Prospect Avenue | Hanna Garage | $150.00 | 15 | $110.00 | 18 |
| GW-16 | 645 Prospect Avenue | Atrium Bldg Garage | $142.18 | 16 | $97.18 | 19 |
| TH-52 | 1250 Superior Avenue | Reserve Square Garage | N/A | | $160.00 | 8 |

*Note: The highlighted parking garages are those which are deemed to be comparable to the Statler Arms Garage.*

**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                             :

In re                                  :       **Chapter 11 Case No.**

                                        :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :       **08-13555 (JMP)**

                                        :

                   **Debtors.**       :       **(Jointly Administered)**

                                        :

                                        :

-------------------------------------------------------------------x

**ORDER PURSUANT TO RULE 9019 OF**
**THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**AUTHORIZING AND APPROVING A SETTLEMENT BETWEEN**
**PAMI STATLER ARMS LLC AND STATLER ARMS GARAGE LLC**

Upon the motion, dated November 25, 2008 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-

debtor affiliates, "Lehman"), for an order, pursuant to Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving a settlement (the

"Settlement"), which is annexed hereto as Exhibit A, between PAMI Statler Arms LLC ("PAMI

Statler") and Statler Arms Garage LLC (the "Statler Garage"), all as more fully set forth in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to

Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July

19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having

been provided, and it appearing that no other or further notice need be provided; and the Court

having reviewed the Motion; and approval of the Settlement being within the sound discretion of

the Court; and the relief requested in the Motion and the Settlement being fair and equitable, in

the best interests of the PAMI Statler's estate, and above the lowest point in the range of

reasonableness; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, the Settlement is approved;

and it is further

ORDERED that PAMI Statler is authorized to execute, deliver, implement and

fully perform any and all obligations, instruments, documents and papers and to take any and all

actions reasonably necessary or appropriate to consummate the Settlement and perform any and

all obligations contemplated therein; and it is further

ORDERED that the United States District Court for the Northern District of Ohio,

Eastern Division shall retain jurisdiction to enforce the Settlement and any disputes arising

thereunder.

Dated: December __, 2008
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

**(Settlement)**

## AMENDMENT OF LICENSE AGREEMENT AND STIPULATION OF SETTLEMENT

This Amendment Of License Agreement And Stipulation Of Settlement ("Agreement") is made and entered into effective as of September 23, 2008 by and between PAMI Statler Arms LLC ("Licensee") and Statler Arms Garage, LLC ("Licensor").

## RECITALS

A.       Statler Arms, Inc. and Statler Arms Garage, Inc. entered into (i) that certain License Agreement for Use of Parking Spaces by and between Statler Arms Garage, Inc. and Statler Arms, Inc. dated August 13, 1999 and filed for record on September 21, 1999 as Instrument No. 199909210870 of Cuyahoga County Records ("License Agreement"); and (ii) that certain License Agreement for Use of Ballroom by and between Statler Arms Garage, Inc. and Assignor dated August 13, 1999 and filed for record September 21, 1999 as Instrument No. 199909210869 of Cuyahoga County Records ("Ballroom License Agreement"). The License Agreement sets forth respective rights and obligations of Statler Arms, Inc. and Statler Arms Garage, Inc. with respect to licensing of parking spaces at the Statler Arms Garage located at 1111 Euclid Avenue, Cleveland, OH (the "Garage") for use by tenants of the Statler Arms Apartment Building located at 1127 Euclid Avenue, Cleveland, OH (the "Apartment Building").

B.       By Warranty Deeds by and between Statler Arms Garage, Inc. and Statler Arms Garage, LLC dated August 6, 2004 and recorded December 6, 2004 as Instrument No. 200412061122 of Cuyahoga County Records and Warranty Deed by and between Statler Arms Garage, Inc. and Statler Arms Garage, LLC dated December 27, 2004 and recorded January 3, 2005 Instrument No. 200501030945 of Cuyahoga County Records, Statler Arms Garage, Inc. transferred all of its right, title and interest in and to the Garage to the Licensor. As a result, Licensor (Statler Arms Garage, LLC) became the licensor under the License Agreement.

C.    By Warranty Deed in lieu of foreclosure (the "Deed in Lieu") dated May 8, 2008 and recorded on May 10, 2008 as Instrument No. 200501030945 of Cuyahoga County Records, Statler Arms, Inc. transferred all of its right, title and interest in and to the Apartment Building to the Licensee, subject to the encumbrances as set forth in the Deed in Lieu.

D.    Licensee and Statler Arms, Inc. are parties to that certain Assignment and Assumption of License Agreements dated May 8, 2006 and recorded May 10, 2006 as Instrument No. 200605100708 of Cuyahoga County Records (the "Assumption"), covering the property described in Exhibit A annexed hereto. Licensor executed and delivered the Assumption to evidence its agreement with the representations of Statler Arms, Inc. contained in the License Agreement and Licensee's assumption of the License Agreement. As a result, Licensee (PAMI Statler Arms LLC) is now the licensee under the License Agreement.

E.    A series of disputes have arisen between Licensor and Licensee since May 10, 2006. Certain of the disputes (including claims by Licensee and counterclaims by Licensor) were being litigated in the action entitled PAMI Statler Arms LLC v. Statler Arms Garage, LLC, Case No. CV 06 598610 (the "State Court Action"), pending before the Court of Common Pleas, Cuyahoga County, State of Ohio (the "State Court"). On September 16, 2008, a jury trial commenced in the State Court Action. Because this document is a settlement agreement, Licensor and Licensee have agreed not to set forth at any length the nature of the disputes, but rather both agree that those and all other present and past disputes are being settled pursuant to this Agreement.

F.    On September 23, 2008, while the State Court Action was pending, Licensee commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New

York (the "Bankruptcy Court"), Case No. 08-13664 (JMP) (the "Bankruptcy Case"). The
Bankruptcy Case is being jointly administered under Case No. 08-13555 (JMP).

G.    By removal petition dated September 23, 2008, Licensee removed the State Court
Action to the United States District Court for the Northern District of Ohio, Eastern Division (the
"District Court") (the District Court action shall be referred to herein as the "Pending Action").
The Pending Action remains pending before the District Court.

H.    Through the mediation of the District Court, Licensor and Licensee (each a
"Party" and, collectively, the "Parties") have agreed to modify the License Agreement and settle
all disputes outstanding between them, including those that are the subject of the Pending Action.

NOW, THEREFORE, in consideration of the premises, and the undertakings herein
including the payment and performance by the Licensor and Licensee of the obligations set forth
in this Agreement, and for other good and valuable consideration, the parties hereto covenant and
agree as follows:

1.    Paragraph 4 of the License Agreement is amended to read as follows:

a. Notwithstanding past practices, the following shall apply effective as of
September 23, 2008 and going forward.

b. Commencing October 1, 2008, tenants ("Tenants") of the Apartment
Building will be charged $140 per month for a non-reserved space and
$160 for a reserved space in the Garage.

c. Commencing January 1, 2009, Tenants of the Apartment Building may be
charged up to $150 per month and $170 per month for non-reserved
parking and spaces reserved parking spaces, respectively.

d. Commencing January 1, 2010 and every year thereafter in January, the

rates for non-reserved and reserved parking spaces in the Garage may be increased by up to $10.00 per space month, subject to the conditions set forth in subparagraph g below.

e.  The rates for non-reserved and reserved parking spaces in the Garage shall not be retroactively adjusted for any period prior to October 1, 2008.

f.  The rules governing the Garage will continue to be governed by the Interim Agreement between the parties, dated as of November 10, 2006, and will stay in effect through December 31, 2008, after which time the Parties are free to renegotiate such rules.

g.  Commencing with any increase in parking rates pursuant to subparagraph d above taking effect in January 2011 or in any January thereafter, the parking rates in effect after any such annual increase (the "Proposed Garage Rates") shall not deviate by more than twenty-five percent (25%) from the market rates for downtown Cleveland parking garages as established by the average of the published rates in effect at the time (the "Current Published Rates")[1] for the following ten public parking garages (the "Public Parking Garages") set forth below:

- Chesterfield - Highest public rate
- Chesterfield - Highest residential rate
- Reserve Apartments - Highest public rate
- Reserve Apartments - Highest residential rate
- 515 Euclid Avenue
- 709 Vincent Avenue
- 947 Chester Avenue
- 750 Vincent Avenue
- 320 Superior Avenue
- 1100 Superior Garage

---

[1]  For purpose of reference, the rates in effect during September 2008 (the "September 2008 Rates") and the average of such rates are attached hereto as Exhibit B.

The average of the Current Published Rates (each such parking garage being given equal weight in such calculation) (the "Current Average Rates") will be calculated as of the time of the particular Proposed Garage Rates. In the event the particular Proposed Garage Rates are more than twenty-five (25%) percent *lower* than the Current Average Rates, Licensor may increase the Proposed Garage Rates to the rates that are seventy-five (75%) of the Current Average Rates. In the event the particular Proposed Garage Rates are more than twenty-five (25%) percent *higher* than the Current Average Rates, Licensor shall reduce the Proposed Garage Rates to the rates that are one hundred twenty-five (125%) of the Current Average Rates. The resulting rates will be the new rates in effect for the year in question. For subsequent calendar years, subparagraphs (d) above and this subparagraph shall apply to the rates resulting from the calculation set forth in this subparagraph.

2.    Release of Claims. Other than the obligations of the Parties set forth herein, the Parties hereby absolutely and unconditionally forever waive, release, discharge, relinquish and give up any and all claims, causes of action, suits, obligations and covenants they may have or hold against the other Party or its respective agents, servants, employees, attorneys, shareholders, members, directors, officers, affiliates, successors or assigns that may have arisen as of the date hereof, whether in law, in equity, or otherwise, which the Parties ever had, now have, or that they may have in the future, whether known or unknown, knowable or unknowable, suspected or unsuspected, and including without limiting the generality of the foregoing, all claims and counterclaims that were, or could have been, asserted in the State Court Action and District Court Action; *provided, however,* that the License Agreement between the Parties as amended by this Agreement shall remain in full force and effect and any rights or claims arising from and

after the date of this Agreement under the License Agreement as amended shall be unaffected by the foregoing release.

3.    <u>Recording of License Agreement</u>. This Agreement may be recorded by either Party to this Agreement.

4.    <u>Independent Investigations; Representations as to Authority</u>. Except as set forth below, each Party has entered into this Agreement based upon its own independent investigation, and makes no warranty or representation to any other Party, nor does it rely upon any representation of any other Party with respect to the subject matter of this Agreement, other than the following sentence. Each Party represents that it has full power and authority to enter into and perform this Agreement in accordance with its terms, but as to the Licensee, subject to Bankruptcy Court approval. No Party is, and no Party shall be deemed or found to be, a fiduciary to any other Party.

5.    <u>Bankruptcy Court Approval</u>. Promptly after execution and delivery of this Agreement, Licensee will promptly file with the Bankruptcy Court a motion (the "<u>Settlement Motion</u>") for entry of an order (the "<u>Settlement Order</u>") authorizing the Licensee to perform this Agreement in accordance with its terms without the need for further order from the Bankruptcy Court or notice to any other party in interest in the Bankruptcy Case. The Parties shall cooperate reasonably to procure prompt entry of the Settlement Order. In filing the Settlement Motion, the Parties shall stipulate to the facts set forth in the lettered paragraphs of the Recitals of this Agreement. This Agreement shall be of no force or effect against Licensee unless and until the Settlement Order is entered by the Bankruptcy Court.

6.    <u>Dismissal of Action; Retention of Jurisdiction by District Court</u>. Promptly following the execution of this Agreement by all Parties and final approval of it by the

Bankruptcy Court, the District Court Action and all claims and counterclaims asserted therein

shall be dismissed with prejudice and without costs; provided, however, the Parties through their

entry into this Agreement consent to the Bankruptcy Court order approving this Agreement also

providing that the District Court shall retain jurisdiction to enforce this Agreement and any

disputes arising hereunder.  The Parties shall request that the Bankruptcy Court approve the

District Court's retention of jurisdiction as provided in this paragraph.

     7.    <u>Notices</u>.  Any notice, report, demand, request or other instrument or

communication authorized, required or desired to be given under this Agreement by or to any

party shall be in writing and shall be deemed given if addressed to the party intended to receive

the same, at the address of such party set forth below, (i) when delivered at such address by hand

or by overnight delivery service, or (ii) three (3) days after the same is deposited in the United

States mail as first class certified mail, return receipt requested, postage paid, whether or not the

same actually shall have been received by such party:

| | |
|---|---|
| Licensee: | PAMI Statler Arms LLC<br>c/o Midland Loan Services, Inc.<br>Special Servicing Group<br>2201 N. Collins, # 185<br>Arlington, TX  76011<br>Attn:  Cecilia Bolen<br>Phone:  817-804-5902<br>Fax:  817-633-3144<br>Email: cecilia.bolen@midlandls.com |
| With a copy to: | Herrick, Feinstein LLP<br>One Gateway Center<br>Newark, NJ 07102<br>Phone: (973) 274-2055<br>Fax: (973) 274-6424<br>Email geisenberg@herrick.com<br>Attention: Gary F. Eisenberg, Esq. |

|  |  |
|---|---|
| and a copy to: | Benesch Friedlander Coplan & Aronoff LLP<br>200 Public Square, 2300 BP Tower<br>Cleveland, Ohio 44114-2378<br>Voice: (216) 363-4428<br>Fax:   (216) 363-4588<br>Mobile: (440) 376-1594<br>dmayo@bfca.com |
| Licensor: | Statler Arms Garage, LLC<br>c/o David Spira<br>1660 49th Street<br>Brooklyn, New York 11204 |
| with a copy to: | Stephen M. O'Bryan<br>Taft Stettinius & Hollister, LLP<br>200 Public Square, Suite 3500<br>Cleveland, Ohio 44114-2302<br>Phone: (216) 241-2838<br>Fax:  (216) 241-3707 |
| and a copy to: | Eric H. Zagrans<br>The Zagrans Law Firm<br>474 Overbrook Road<br>Elyria, Ohio 44035 |

Any Party may change the address to which any such notice, report, demand, request or other instrument or communication to such Party is to be delivered or mailed, by giving written notice of such change to the other parties, but no such notice of change shall be effective unless and until received by such other parties. No such notice, report, demand, request or other instrument or communication given hereunder shall be invalidated or rendered ineffective due to any failure to give, or delay in giving, a copy of such notice, report, demand, request or other instrument or communication to any party to whom such copy is to be given as provided above.

8.    Calculation of Time.  Whenever in this Agreement a period of time is stated as a number of days, it shall be construed to mean calendar days; provided, however, that when any period of time so stated would end on a Saturday, Sunday, legal holiday, then such period shall

be deemed to end on the next day following which is not a Saturday, Sunday, or legal holiday. Time is of the essence of this Agreement.

9.    Further Assurances.  Each Party hereby covenants and agrees (in the case of the Licensee, subject to Bankruptcy Court approval) to take any and all additional actions and execute, file, record and/or deliver to the other Party such further agreements, documents and instruments as may be necessary or as the other Party may at any time or times reasonably request to effect the provisions and intent of this Agreement.

10.    Construction.  Unless the context of this Agreement clearly requires otherwise, references to the plural include the singular, the singular includes the plural, the part includes the whole, "including" is not limiting, and "or" has the inclusive meaning represented by the phrase "and/or." The words "hereof," "herein," "hereby," "hereunder," and similar terms in this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement. Section references are to this Agreement unless otherwise specified. Capitalized terms not defined herein shall have the meanings as provided in the License Agreement.

11.    Complete Agreement, Modifications in Writing.  This Agreement is intended by the Parties as a final expression of their agreement and is intended as a complete statement of the terms and conditions of their agreement.  No amendment, modification, supplement, termination, consent, or waiver of or to any provision of this Agreement nor any consent to any, departure therefrom shall in any event be effective unless the same shall be in writing and signed by or on behalf of each of the Parties.  Any waiver of any provision of this Agreement, or any consent to any departure from the terms of any provisions of this Agreement, shall be effective only in the specific instance and for the specific purpose for which given.

12.    Waivers; Failure or Delay.  No failure or delay on the part of any Party in the

exercise of any, power, right, remedy, or privilege under this Agreement shall impair such

power, right, remedy, or privilege or shall operate as a waiver thereof; nor shall any single or

partial exercise of any such power, right, or privilege preclude any other or further exercise of

any other power, right, or privilege. The waiver of any such right, power, remedy, or privilege

with respect to particular facts and circumstances shall not be deemed to be a waiver with respect

to other facts and circumstances.

13.    Headings. Section headings used in this Agreement are for convenience of

reference only and shall not constitute a part of this Agreement for any purpose or affect the

construction of this Agreement.

14.    Execution in Counterparts; Facsimile Delivery; Reproduction.  This Agreement

may be executed in any number of counterparts and by different parties on separate counterparts,

each of which counterparts, when so executed and delivered, shall be deemed to be an original

and all of which counterparts, taken together, shall constitute but one and the same Agreement.

Delivery of a copy of an executed counterpart by facsimile shall constitute sufficient delivery of

an executed original counterpart. This Agreement shall become effective upon the execution and

delivery of a counterpart hereof by each of the parties hereto and approved by the Bankruptcy

Court. This Agreement may be reproduced by any photographics, photostatic, microfilm, micro-

card, miniature photographic, facsimile or other similar process and the original thereof may be

destroyed. The Parties agree that any such reproduction shall, to the extent permitted by law, be

as admissible in evidence as the original itself in any judicial or administrative proceeding

(whether or not the original is in existence and whether or not the reproduction was made in the

regular course of business) and that any enlargement, facsimile or further reproduction shall likewise be admissible in evidence.

15.    Severability.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be illegal, invalid, prohibited, or unenforceable under applicable law, such provision shall be ineffective only to the extent of such illegality, invalidity, prohibition or unenforceability, without invalidating or impairing the remaining provisions hereof.

16.    Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns, including without limitation transferees of the Apartment Building or the Garage.

17.    Governing Law.  This Agreement shall be construed in accordance with the laws of the State of Ohio that are applicable to contracts formed in and to performed entirely within such state without giving effect to any conflict of laws rules or principles recognized by the courts thereof that would cause the laws of another jurisdiction to apply.

IN WITNESS WHEREOF, the Parties have entered into this Agreement as of the date first set forth above, intending to be legally bound hereby.

Executed this November 24, 2008.

STATLER ARMS GARAGE, LLC                    PAMI STATLER ARMS LLC

By: _____              By: _____
Name:  David Spira                         Name:  Jeff Fitly
Its:    Authorized Signatory               Its:    Authorized Signatory

State of New York     )
County of New York  )

The foregoing was acknowledged before me this 21st day of November, 2008 by
JEFF FITTS_____, Authorized Signatory of PAMI STATLER ARMS LLC, a Delaware
limited liability company, on behalf of the company.

(seal)

Notary Public
My Commission Expires:

JOANNE C. PFLAUM
Notary Public, State of New York
No. 4848238
Qualified In Nassau County
Commission Expires March 30, 19
9|30|09

State of ~~Ohio~~ New York
County of ~~Cuyahoga~~ Kings

The foregoing was acknowledged before me this 23 day of November, 2008 by
David Spira_____, Authorized Signatory of STATLER ARMS GARAGE, LLC, a
Delaware limited liability company, on behalf of the company.

(seal)                                          X

Notary Public
My Commission Expires:

CHAIM GROSS
Notary Public, State of New York
No. 24 — 4981755
Qualified In Kings County
Commission Expires May 20, 10

Drafted by:                                  When recorded return to:

Gary F. Eisenberg, Esq.                      Gary F. Eisenberg, Esq.
Herrick Feinstein LLP                        Herrick Feinstein LLP
One Gateway Center                           One Gateway Center
Newark, NJ 07102                             Newark, NJ 07102
(973) 274-2055                               (973) 274-2055

**Exhibit A To Deed**

Property Description

Parcel No. 1: Fee Simple (PPN's 101-36-006 and 007)

Situated in the City of Cleveland, County of Cuyahoga and State of Ohio and known as being part of Sublot Nos. 62 and 63 in John M. Woolsey's Subdivision of part of Original Two Acre Lot Nos. 163 to 167, as shown by the recorded plat in Volume "N" of Deeds, Page 486 of Cuyahoga County Records, bounded and described as follows:

Beginning on the northerly line of Euclid Avenue (99.00 feet wide) at its intersection with the westerly line of East 12th Street (formerly Muirson Street) (60.40 feet wide);

Thence South 79° 35' 51" West along said northerly line of Euclid Avenue, 168.82 feet to the southeasterly corner of land conveyed to the Trebmal Construction Co. by deed recorded in Volume 83-0853, Page 17 of Cuyahoga County Records;

Thence North 10° 35' 39" West along the easterly line of land so conveyed to the Trebmal Construction Co. and the northerly prolongation thereof, 150.00 feet to a point;

Thence North 79° 35' 42" East 64.80 feet to a point on the westerly line of load conveyed to The Cleveland Trust Company by deed dated May 31, 1927 and recorded in Volume 3567, Page 349 of Cuyahoga County Records;

Thence North 10° 36' 09" West along said line, 169.58 feet to a point in the southeasterly line of Hickory Court, N.E. (15.12 feet wide);

Thence North 55° 48' 21" East along the southeasterly line of Hickory Court N.E., 113.48 feet to a point in the westerly line of aforementioned East 12th Street;

Thence South 10° 36' 09" East along the westerly line of said East 12th Street, 365.36 feet to the point of beginning and containing 1.0408 acres of land as calculated and described by The North Coast Engineering and Surveying Co., Inc., in November of 1998, be the same more or less, but subject to all legal highways;

Note: The above premises is further known as the Apartment Parcel in the Plat of Consolidation of Statler Arms, Inc. as shown by the recorded plat in Volume 301 of Maps, Page 78 of Cuyahoga County Records.

EXHIBIT

"A"

PAGE 1 OF 2

Parcel No. 2: Appurtenant Rights

A. Together with a nonexclusive perpetual easement for the use of the elevator and stairwell in the garage; a nonexclusive perpetual easement for access to and the use of all underground facilities serving the building located on the apartment parcel including without limitation all utility lines, pipes, ducts, equipment and other facilities located on, under or over the garage parcel; a nonexclusive perpetual easement for the use of the access and service drive which extends from Hickory Court through the rear portion of the garage; a nonexclusive and perpetual easement to perform all necessary maintenance to the apartment building wall and to make penetrations into and through the garage wall for the purpose of allowing direct access from the apartment building to each floor of the garage and a nonexclusive perpetual easement to the use of the air rights above the top level of the garage for the purpose of maintaining and repairing the portions of the wall of the apartment building which extend above the top level of the garage all as reserved in the Warranty Deed from Statler Arm, Inc., an Ohio corporation to Statler Arms Garage, Inc., an Ohio corporation dated April 27, 1999 filed for record September 21, 1999 and being Cuyahoga County Recorder's AFN 199909210866.

B. Together with a License Agreement for Use of Ballroom by and between Statler Arms Garage, Inc., an Ohio corporation and Statler Arms, Inc., an Ohio corporation, dated August 13, 1999 filed for record September 21, 1999 as Cuyahoga County and being Cuyahoga County Recorder's AFN 199909210869.

C. Together with a License Agreement for Use of Parking Spaces by and between Statler Arms Garage, Inc., an Ohio corporation and Statler Arms, Inc., an Ohio corporation, dated August 13, 1999, filed for record on September 21, 1999 and being Cuyahoga County Recorder's AFN 199909210870.

EXHIBIT

"A"

PAGE 2 OF 2

**Exhibit B To Agreement**

List of September 2008 Rates

Central Parking
Chesterfield Parking Rates

| Monthly Rates | Tenant | Non Tenant |
| --- | --- | --- |
| Level 8 | $105.00 | $130.00 |
| Level 7 | $105.00 | $130.00 |
| Level 7 Double Spot | $80.00 Half | $105.00 Half |
| Level 6 | $110.00 | $145.00 |
| Level 5 | $145.00 | $170.00 |
| Level 4 | $145.00 | $170.00 |
| Levels 1-3 | $85.00 | $125.00 |

**Daily Rates**

| | |
| --- | --- |
| 15 min or less | $1.50 |
| 30 min or less | $3.00 |
| 45 min or less | $4.50 |
| 1  hour or less | $6.00 |
| 10 hour or less | $6.25 |
| 24 hour or less | $6.75 |
| Early Bird | $5.75 |
| In By 9:00am | |
| Weekend Rate | $5.00 |


DEFENDANT'S
EXHIBIT

*Reserve Square*

## Tenants Rates

- 2004-$50 Non-Reserved; $65 Reserved
- 2005-$75 Non-Reserved; $95 Reserved
- 2006-$80 Non-Reserved; $95 Reserved
- 2007-$85 Non-Reserved; $105 Reserved
- 2008-$87 Non-Reserved; $105 Reserved

## Non-Tenants Rates

- 2004-$140
- 2005-$140
- 2006-$140
- 2007-$160
- 2008-$160

## Available Parking Spaces

- 952 Spaces (Includes Handicapped, Reserved & Non-Reserved)

## Tenants Reserved Parking Spaces

- 2004-68 Spaces
- 2005-68 Spaces
- 2006-68 Spaces
- 2007-68 Spaces
- 2008-60 Spaces

## Non-Tenants Reserved Parking Spaces

- N/A (2004-2008)



DEFENDANT'S
EXHIBIT
82



**DESMAN**

A S S O C I A T E S

**Table 1  Existing Monthly Parking Rates at Select Garages in the vicinity of the Statler Arms Garage**

| Base Map # | Parking Facility Address | Parking Facility Name | Reserved Monthly Rate | Reserved Monthly Rank | General Monthly Rate | General Monthly Rank |
|---|---|---|---|---|---|---|
| GW-19 | 515 Euclid Avenue | 515 Euclid Garage | $275.00 | 1 | $165.00 | 7 |
| GW-02 | 709 Vincent Avenue | Fifth Third Bank Garage | $250.00 | 2 | $205.00 | 1 |
| TH-02 | 947 Chester Avenue | Huntington Garage | $250.00 | 2 | $180.00 | 6 |
| GW-03 | 750 Vincent Avenue | National City Bank Garage | $245.00 | 3 | $195.00 | 2 |
| GW-04 | 320 Superior Avenue | BP Garage | $235.00 | 4 | $195.00 | 2 |
| CC-16 | 1375 E. 9th Street | One Cleve. Center Garage | $235.00 | 4 | $185.00 | 4 |
| CC-17 | 1438 E. 12th Street | Eaton Center Garage | $225.00 | 5 | N/A | |
| TH-01 | 1100 Superior Garage | Diamond-Hines Garage | $220.00 | 6 | $185.00 | 5 |
| CC-12 | 708 St. Clair Avenue | IMG Center Garage | $220.00 | 6 | $180.00 | 6 |
| TH-06 | 1101 Euclid Avenue | Statler Arms Garage | $220.00 | 6 | $180.00 | 6 |
| GW-01 | 800 Superior Avenue | Key Center Garage | $215.00 | 7 | $185.00 | 5 |
| GW-17a | 740 Euclid Avenue | Krenzler Garage | $210.00 | 8 | $155.00 | 10 |
| TH-03 | 1717 E. 9th Street | East Ohio Gas Garage | $205.00 | 9 | $187.00 | 3 |
| CC-18 | 1060 Rockwell Avenue | Cathedral Diocese Plaza Garage | $197.18 | 10 | $157.18 | 9 |
| GW-13 | 2047 Ontario Street | May Company Garage | $175.00 | 11 | $152.80 | 11 |
| TH-07 | 1801 E. 12th Street | Chesterfield Apartments | $170.00 | 12 | $125.00 | 13 |
| CC-13 | 801 Rockwell Avenue | Rockwell Garage | $162.18 | 13 | $142.18 | 12 |
| TH-14 | 1350 Euclid Avenue | US Bank Centre Garage | $155.00 | 14 | $110.00 | 18 |
| TH-30 | 1459 Chester Avenue | Playhouse Square Garage | $155.00 | 14 | $114.00 | 16 |
| TH-17 | 1212 Huron Road | Halle Garage | $150.00 | 15 | $115.00 | 15 |
| TH-22 | 900 Prospect Avenue | Ameritrust Garage | $150.00 | 15 | $111.00 | 17 |
| TH-13 | 1509 Prospect Avenue | Hanna Garage | $150.00 | 15 | $110.00 | 18 |
| GW-16 | 645 Prospect Avenue | Atrium Bldg Garage | $142.18 | 16 | $97.18 | 19 |
| TH-52 | 1250 Superior Avenue | Reserve Square Garage | N/A | | $160.00 | 8 |

*Note: The highlighted parking garages are those which are deemed to be comparable to the Statler Arms Garage.*