| | |
|---|---|
| STEVENS & LEE, P.C.<br>485 Madison Avenue, 20th Floor<br>New York, New York  10022<br>Telephone: 212-319-8500<br>Facsimile: 212-319-8505<br>Alec P. Ostrow<br>Constantine D. Pourakis<br>Email:  apo@stevenslee.com<br>           cp@stevenslee.com | **Hearing Date and Time:**   December 3, 2008<br>                                             at 10:00 a.m.<br><br>**Objection Deadline:**           November 28, 2008<br>                                             at 4:00 p.m. |

*Attorneys for Royal Bank America*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------- x
In re:                                                  )   Chapter 11 Case
                                                        )
LEHMAN BROTHERS HOLDINGS, INC.,                         )   Case No. 08-13555 (JMP)
                                                        )
                            Debtors.                    )   (Jointly Administered)
                                                        )
                                                        )
------------------------------------------------------- x
```

**ROYAL BANK AMERICA'S LIMITED OBJECTION TO DEBTORS' MOTION FOR
AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE
TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND
<u>ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS</u>**

Royal Bank America, formerly known as Royal Bank of Pennsylvania ("**Royal Bank**"), for its limited objection to the November 13, 2008 Motion of Lehman Brothers Holdings Inc. et al. (collectively the "**Debtors**") to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts, respectfully submits as follows:

<u>**SUMMARY OF LIMITED OBJECTION**</u>

1. As is set forth at length below, Royal Bank entered into a swap agreement with Lehman Brothers Special Financing, Inc. ("**Lehman SF**"), which Royal Bank terminated after the initial bankruptcy filing by Lehman Brothers Holding, Inc., but prior to the subsequent

SL1 886105v1/101445.00035

bankruptcy filing by Lehman SF. Royal Bank has commenced an adversary proceeding to vindicate its rights under its swap agreement and applicable state law, and has sought limited expedited discovery in that adversary proceeding.

2. The Debtors seek to establish procedures not only for the assumption and assignment of derivative contracts, as to which Royal Bank has no objection, but also for the settlement of terminated derivative contracts, as to which Royal Bank is a counterparty. Although the procedures dealing with assumption and assignment of derivative contracts are extensive and seem to track section 365 of the Bankruptcy Code, the procedures dealing with terminated contracts are few, designed to give the Debtors maximum flexibility, and provide for no rights of counterparties. Also, the Debtors do not rely on any provision of the Bankruptcy Code or any other applicable law, other than section 105(a) of the Bankruptcy Code, as authority for the establishment of such procedures. Royal Bank is not opposed to giving the Debtors flexibility. Royal Bank is opposed to the notion that these so-called "procedures" will be invoked by the Debtors as superseding Royal Bank's legal and contractual rights, and for seeking a stay or other delay of Royal Bank's adversary proceeding to vindicate its rights.

3. Therefore, to avoid the misuse of the procedures for dealing with terminated contracts as supplanting Royal Bank's rights, Royal Bank seeks the addition of language to the procedures or the order establishing the procedures that make such procedures without prejudice to the legal and contractual rights of Royal Bank, and others similarly situated. Royal Bank proposes that the following language, or language substantially similar to the following language be added:

> "Nothing in this order shall be construed to supersede, suspend or otherwise interfere with (i) the legal and contractual rights of parties to terminated Derivative Contracts, to the extent such legal and contractual rights are enforceable in the Debtors' cases under the Bankruptcy Code (the "Enforceable Rights"); and (ii) the commencement or continuation of any civil proceeding by any party to a terminated Derivative Contract with respect to such party's

Enforceable Rights, including, without limitation, any such adversary proceeding commenced or pending in this Court."

## BACKGROUND FACTS

4. On or about July 8, 2002, debtor Lehman SF and Royal Bank entered into that certain International Swap Dealers Association, Inc. ("**ISDA**") Master Agreement dated July 8, 2002 (the "**Master Agreement**," and collectively with the attached Schedule (the "**Schedule**") and Credit Support Annex (the "**Credit Support Annex**") both dated July 8, 2002, the "**Swap Agreement**"). Attached hereto as composite Exhibit A are true and correct copies of the Master Agreement, Schedule and Credit Support Annex.

5. Since 2002, Lehman SF and Royal Bank have engaged in a series of derivative transactions (the "**Transactions**") under and subject to the terms of the Swap Agreement.

**The Royal Bank Collateral and Royal Bank's Right to Receive Distributions**

6. Pursuant to the terms of the Master Agreement, as amended by the Schedule and the Credit Support Annex, Royal Bank had an obligation to provide collateral to Lehman SF from time to time to secure its potential obligations to Lehman SF under the Swap Agreement.

7. Pursuant to the Swap Agreement and in connection with the Transactions entered into between Lehman SF and Royal Bank thereunder, on or about January 26, 2006, Royal Bank caused the Fannie Mae mortgage backed security owned by Royal Bank bearing CUSIP No. 31371K4E8 (the "**FNMA Security**") in the original par amount of $15,000,000, to be Transferred (as such term is defined in the Credit Support Annex) to Lehman SF as Posted Collateral (as such term is defined in the Credit Support Annex). As of September 30, 2008, the FNMA Security had a value of approximately $4,912,442.66.

8. Pursuant to Paragraph 6(d) of the Credit Support Annex, Royal Bank was entitled to receive all Distributions (as such term is defined in Paragraph 13) made on account of the FNMA

3

Security that were delivered to Lehman SF, and all such Distributions were to be paid to Royal Bank no later than the following Local Business Day after Lehman SF's receipt of the same.

**Pre-Petition Event of Default, Declaration of Early Termination Date and Cessation of Distributions**

9. Under the Master Agreement, an "Early Termination Date" may be declared by the non-defaulting party upon the occurrence of an Event of Default.

10. Among other events, an Event of Default occurs under the Master Agreement if a party or any "Credit Support Provider" of such party "institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law."

11. Lehman Brothers Holdings Inc. ("**LBHI**") is designated as a Credit Support Provider in the Schedule to the Master Agreement.

12. On or about September 15, 2008, LBHI filed a voluntary petition with the United States Bankruptcy Court for the Southern District of New York seeking relief under Chapter 11 of the Bankruptcy Code (the "**LBHI Petition**").

13. The filing of the LBHI Petition caused an Event of Default to occur under the Master Agreement.

14. Pursuant to Section 6(a) of the Master Agreement, upon the occurrence of this Event of Default, Royal Bank was entitled to provide notice to Lehman SF specifying the relevant Event of Default and to designate a day not earlier than the day such notice was effective as an Early Termination Date in respect of all outstanding Transactions.

15. By letter dated and delivered September 26, 2008, Royal Bank, as the non-defaulting party, notified Lehman SF that the filing of the LBHI Petition caused an Event of Default to arise under the Master Agreement and that as a result Royal Bank was designating September 26,

4

2008 as the Early Termination Date in respect of all outstanding Transactions under the Master Agreement. Attached hereto as Exhibit B is a true and correct copy of the September 26, 2008 letter.

16. Pursuant to Paragraph 8(b) of the Credit Support Annex, as a result of Royal Bank's designation of an Early Termination Event and an Early Termination Date, Lehman SF was required to immediately return to Royal Bank the Posted Collateral (including the proceeds if any from any disposition of the FNMA Security, any additional Distributions in Lehman SF's possession and any Interest Amount due).

17. However, despite demands duly made, Lehman SF has failed and refused to return any of the Posted Collateral to Royal Bank. Furthermore, Lehman SF failed to remit the Distribution that was due Royal Bank on or about September 25, 2008.

18. By letter dated October 21, 2008 (the "**Notification and Demand Letter**"), Royal Bank notified Lehman SF and its restructuring adviser Alvarez & Marsal, LLC, that, pursuant to Section 6 (e)(i)(4) of the Master Agreement, Royal Bank had determined that an early termination payment was owed to Lehman SF in the net amount of $351,263.20. Attached hereto as Exhibit C is a true and correct copy of the Notification and Demand Letter.

19. Also, in the Notification and Demand Letter, Royal Bank (a) notified Lehman SF that, pursuant to Paragraph 8(b)(iv)(B) of the Credit Support Annex, Royal Bank was entitled to withhold payment of such early termination payment until such time as the Posted Collateral was returned to Royal Bank; (b) tendered to Lehman SF, pursuant to Paragraph 8(b)(i) of the Credit Support Annex and Section 9-623 of the New York Uniform Commercial Code (the "UCC"), the sum of (i) $351,623.20 and (ii) the reasonable expenses and attorneys fees (if any) described in Section 9-615(a)(1) of the UCC to the extent provided for the Agreement and not prohibited by

5

law, with such sum to be paid simultaneously upon the return of the Posted Collateral; and (c) demanded return of the Posted Collateral pursuant to Paragraph 8(b)(iii) of the Credit Support Annex.

20. Lehman SF and its advisors failed to respond to Royal Bank's inquiries with respect to the return of the Posted Collateral; thus on October 23, 2008, Royal Bank commenced an adversary proceeding, styled *Royal Bank America v. Lehman Brothers Special Financing, Inc.*, Adv. Pro. No. 08-01640, seeking turnover of the Posted Collateral, turnover of proceeds from the sale of the Posted Collateral, an accounting of said proceeds, an injunction, and redemption of the Posted Collateral. The initial pretrial conference is scheduled for December 16, 2008.

## **LIMITED OBJECTION**

21. Debtors' Motion establishes two parallel sets of procedures, one for the assumption and assignment of non-terminated derivative contracts, and one for the settlement of terminated derivative contracts. Upon information and belief, the Debtors may have purportedly sold the FNMA Security to Barclays Capital as part of the asset sale that closed on or about September 22, 2008; therefore, the assumption and assignment procedures set forth in the Motion may not be applicable to Royal Bank. As described above, Royal Bank terminated the Swap Agreement, placing the agreement in the "termination and settlement procedures" category.

22. The proposed procedures for dealing with assumption and assignment of non-terminated derivative contracts are rather extensive (12 paragraphs), and seem to mirror the cure provisions of Bankruptcy Code section 365. Assumption and Assignment Procedures, Motion ¶ 19(a)-(l). Under the proposed assumption and assignment procedures, where the contract counter-party has posted collateral which needs to be returned as part of the cure amount, the procedures provide that the Debtors either return the collateral or pay the value of the collateral

to the counter-party. *Id.*, Motion ¶ 19(d). As set forth above, Royal Bank did transfer Posted Collateral to Lehman SF, yet the Posted Collateral has supposedly since been transferred, sold or otherwise disposed of by Lehman SF to, upon information and belief, Barclays Capital.

23. To the contrary, the proposed procedures for dealing with terminated derivative contracts are few in number (4 short paragraphs, to be precise) and vague. *See* Termination and Settlement Procedures, Motion ¶ 19(a)-(d). These procedure seem to be made up of whole cloth, and are designed to give the Debtors the greatest flexibility in negotiating a settlement of terminated derivative contracts. Conversely, the counter-parties to terminated derivative contracts, including Royal Bank, have little to no rights, because Debtors are not required to return the Posted Collateral or otherwise pay the value of the Posted Collateral, as they are under the Assumption and Assignment Procedures.

24. The Debtors recognize they are treading on thin ice with the termination and settlement procedures, as they rely solely on Bankruptcy Code section 105 as authority for such vague and one-sided procedures for terminated derivative contracts. Motion ¶ 21.

25. Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

26. Although potentially broad in scope, section 105(a) "is limited by the provisions of the Code." *Smart World Techs., LLC v. Juno Online Services, Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 183 (2d Cir. 2005); *see New England Dairies, Inc. v. Dairy mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 91-92 (2d Cir. 2003)

7

("This Court has long recognized that Section 105(a) limits the bankruptcy court's equitable powers, which must and can only be exercised within the confines of the Bankruptcy Code. It does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity"). The express language of section 105(a) requires that the Court's exercise of its equity powers under the section "be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d at 91-92.

27. The termination and settlement procedures proposed by the Debtors fall far short of the section 105 threshold.

28. First, in accordance with section 8(b)(iii) of the Credit Support Annex, upon Royal Bank's designation of an Early Termination Date, Lehman SF was contractually obligated to immediately Transfer the Posted Collateral back to Royal Bank. Lehman SF, on the other hand, has no right to retain possession of the Posted Collateral and has no right to refuse to return the Posted Collateral to Royal Bank. Yet Lehman SF has done just that, precipitating the adversary proceeding. It is clear form the language of the Swap Agreement that Royal Bank is entitled to enforce its contractual rights against Lehman SF, and to have the Posted Collateral turned over immediately. The proposed termination and settlement procedures do not require turnover (unlike the assumption and assignment procedures), violating Royal Bank's contractual rights.

29. Second, paragraph 6(c) of the Credit Support Annex purportedly allowed Lehman SF, as the secured party, to "sell, pledge, rehypothecate, assign, invest, use, commingle or otherwise dispose of, or otherwise use in its business any Posted Collateral it held, free from any claim or right of any nature whatsoever of [Royal Bank], including any equity or right of redemption by [Royal Bank]."

SL1 886105v1/101445.00035

30. Paragraph 8(c) of the Credit Support Annex requires Lehman SF to transfer to Royal Bank "any proceeds and Posted Credit Support remaining after liquidation, Set-off and/or application under paragraphs 8(a) and 8(b) after satisfaction in full of all amounts payable by [Royal Bank] with respect to any Obligations."

31. Upon information and belief, Lehman SF may have sold, pledged, rehypothecated, assigned, used or otherwise disposed of all or part of the Posted Collateral to Barclays Capital prior to Royal Bank's declaration of an Early Termination Event under the Swap Agreement. To the extent it did so, Lehman SF may have received consideration for the Posted Collateral, and Royal Bank has a contractual right to the immediate remittance of the proceeds from any disposition of the Posted Collateral. Yet, Lehman SF has refused to turnover the proceeds of the sale, violating the terms of the Swap Agreement. Again, the proposed termination settlement procedures make turnover permissive rather than mandatory, contravening the express contractual language between the parties.

32. Third, Section 8(b)(i) of the Credit Support Annex provides that upon an Event of Default and Early Termination Date (as those terms are defined therein), Royal Bank "may exercise all rights and remedies available to a pledgor under applicable law with respect to the Posted Collateral held by [Lehman SF]."

33. The parties have agreed that the Master Agreement will be governed by and construed in accordance with the law of the State of New York, without reference to choice of law doctrine.

34. Sections 9-210, 9-608, and 9-615 of the New York Uniform Commercial Code (the "UCC") mandate that a secured party and/or successor provide an accounting upon request of the debtor.

9

35. Upon information and belief, Lehman SF may have disposed of all or part of the Posted Collateral to third parties, and to the extent it has done so it has failed to remit any proceeds received on account of such disposition to Royal Bank.

36. Consequently, Royal Bank is entitled to a full accounting of any disposition of the Posted Collateral, including a full accounting of any funds received by Lehman SF with respect to any disposition of the Posted Collateral. Unfortunately, yet again, the proposed termination and settlement procedures do not provide for this right, instead making all of Debtors' obligations permissive.

37. Although the Debtors' procedures for settlement of terminated contracts do not in so many words attempt to override any of Royal Bank's rights, the Motion does not state that it seeks to preserve the rights of counterparties, and affirmatively seeks streamlined procedures to avoid "burdensome administrative expenses for the estate, such as the time and cost of drafting, serving, and filing pleadings, and the time incurred by attorneys in preparing for and appearing in numerous Court hearings." Motion ¶ 19. Royal Bank is therefore legitimately concerned that the procedures, if approved, will be misused by the Debtors to prevent or forestall Royal Bank's pursuit of its adversary proceeding and its rights.

38. Therefore, to avoid the misuse of the procedures for dealing with terminated contracts as supplanting Royal Bank's rights, Royal Bank seeks the addition of language to the procedures or the order establishing the procedures that make such procedures without prejudice to the legal and contractual rights of Royal Bank, and others similarly situated. Royal Bank proposes that the following language, or language substantially similar to the following language be added:

> "Nothing in this order shall be construed to supersede, suspend or otherwise interfere with (i) the legal and contractual rights of parties to terminated Derivative Contracts, to the extent such legal and contractual rights are enforceable in the Debtors' cases under the Bankruptcy Code (the "Enforceable

10

> Rights"); and (ii) the commencement or continuation of any civil proceeding by any party to a terminated Derivative Contract with respect to such party's Enforceable Rights, including, without limitation, any such adversary proceeding commenced or pending in this Court."

Royal Bank respectfully submits that by including such language, the Debtors are not prejudiced in their pursuit of flexibility, and Royal Bank (and others similarly situated) are not prejudiced by the loss of any of their rights.

39. Royal Bank reserves all rights and the language proposed herein should not be construed as an admission or a wavier of any rights or claims that Royal Bank may be entitled to assert in the adversary proceeding.

## CONCLUSION

Based on the foregoing, Royal Bank America respectfully requests that the Court deny Debtors' Motion as to the procedures for settlement of terminated derivative contracts, unless the proposed order includes language substantially in the form as submitted in this Limited Objection, and that the Court grant Royal Bank America such other and further relief as is just.

Dated: New York, New York
         November 25, 2008

                            STEVENS & LEE, P.C.

                            By: /s/ Alec P. Ostrow
                                Alec P. Ostrow
                                Constantine D. Pourakis
                                485 Madison Avenue, 20th Floor
                                New York, New York  10022
                                Telephone:  212-319-8500
                                Facsimile:   212-319-8505
                                Email: apo@stevenslee.com
                                        cp@stevenslee.com

                            Attorneys for Royal Bank America