**PORZIO, BROMBERG & NEWMAN, P.C.**
(Mail to) P.O. Box 1997, Morristown, NJ  07962-1997
(Delivery to) 100 Southgate Parkway, Morristown, NJ  07960
Telephone (973) 538-4006
Facsimile (973) 538-5146
-and-
156 West 56th Street
New York, NY  10019
Email: jsmairo@pbnlaw.com
          tjfreedman@pbnlaw.com

Attorneys Appearing: John S. Mairo (JM-0670)
                     Terri Jane Freedman (TF-0028)
Attorneys for Aliant Bank

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re: | ) Chapter 11 Case |
| | ) |
| LEHMAN BROTHERS SPECIAL FINANCING, INC., | ) Case No. 08-13888 (JMP) |
| | ) Jointly Administered |
| Debtors. | ) |
| | |
| ALIANT BANK, | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) Adversary Proceeding No. _____ |
| LEHMAN BROTHERS SPECIAL FINANCING, INC., JPMORGAN CHASE BANK, N.A. and FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) |
| Defendants. | ) |

1241698

## VERIFIED COMPLAINT

Plaintiff Aliant Bank ("Aliant") for its complaint against Defendants Lehman Brothers Special Financing, Inc. ("LBSF" or "Debtor"), JPMorgan Chase Bank, N.A. ("JPMorgan"), and Federal National Mortgage Association ("FNMA") alleges through its undersigned counsel as follows:

## NATURE OF THE ACTION

1. This is an action to recover possession of a FNMA mortgage backed security owned by Aliant bearing CUSIP No. 31371LB81 (the "FNMA Security"), together with any Monthly Excess Collateral Payments (defined below) made with respect thereto and any interest [all the foregoing being referred to hereinafter collectively as the "Swap Collateral"]. The Swap Collateral had served as collateral for Aliant's potential obligations to LBSF with respect to certain pre-petition derivative transactions between Aliant and LBSF pursuant to the terms of that certain ISDA Master Agreement dated October 24, 2003 (as more fully defined below, the "Swap Agreement"). The Swap Collateral is believed to be held by JPMorgan, as a custodian for LBSF, in a collateral account established by LBSF. In establishing that account, LBSF was acting as a fiduciary for the benefit of Aliant. Prior to the commencement of LBSF's bankruptcy case, Aliant properly terminated the Swap Agreement and established that LBSF owes Aliant approximately $1.3 million pursuant to the derivative transactions entered into under the Swap Agreement; consequently, LBSF had an obligation to immediately return all of the Swap Collateral to Aliant but LBSF did not do so despite Aliant's demand. Therefore, as of the commencement of LBSF's bankruptcy case, neither LBSF nor JPMorgan had a right to retain possession of the Swap Collateral or withhold delivery of the same to Aliant.

Additionally, monthly payments of approximately $48,000.00 are made by FNMA on account of the FNMA Security (the "Monthly Excess Collateral Payments"). Prior to September 2008, the Monthly Excess Collateral Payments were received by LBSF in trust for Aliant, and in accordance with the Swap Agreement, delivered to Aliant within one business day because the FNMA Security was sufficient collateral for the parties' two derivative transactions. LBSF has failed to remit to Aliant the Monthly Excess Collateral Payments for September 2008 or October 2008. Accordingly, as part of the relief sought herein, Aliant seeks the immediate return of those Monthly Excess Collateral Payments and to direct FNMA to make future Monthly Excess Collateral Payments directly to Aliant.

## PARTIES

2. Aliant is a community bank that serves the needs of individuals and businesses throughout the state of Alabama. Aliant has its principal place of business at 1100 Corporate Parkway, Birmingham, Alabama 35242.

3. Defendant LBSF is a corporation organized and incorporated under the laws of Delaware. It is registered to do business in the state of New York and has its principal place of business at 745 Seventh Ave., New York, New York 10019. LBSF is a subsidiary of Lehman Brothers, Inc. LBSF is a debtor in bankruptcy having filed for protection under Chapter 11 of Title 11 on October 2, 2008.

4. JPMorgan is a national banking association with offices at 270 Park Avenue, New York, New York. JPMorgan is the largest banking institution in the United States, measured by bank deposits, and is a leading global financial services firm with assets of $2.0 trillion and operations throughout the world. JPMorgan, a sophisticated financial institution, is a leader in investment banking, commercial banking, financial transaction processing, and asset

management. Upon information and belief, JPMorgan has longstanding relationships with LBSF.

5. FNMA (commonly known as "Fannie Mae") is a government-sponsored enterprise that was created to expand the flow of mortgage money by creating a secondary mortgage market. FNMA is a publicly traded company and has its principal place of business at 3900 Wisconsin Avenue, NW, Washington, DC 20016-2892.

## JURISDICTION AND VENUE

6. This action is a civil proceeding arising in a case under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. (the "Code"), within the meaning of 28 U.S.C. § 1334(b). It is properly brought as an adversary proceeding pursuant to Bankruptcy Rule 7001(1), (2) and (7).

7. This Court has jurisdiction of this adversary proceeding under 28 U.S.C. §§ 157 and 1334.

8. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

9. Venue of this adversary proceeding is proper in this District under 28 U.S.C. § 1409(a) because the Debtor's bankruptcy case is pending in this judicial district.

## BACKGROUND FACTS

**The Pre-Petition Relationship between LBSF and Aliant**

10. On or about October 24, 2003, LBSF and Aliant entered into an International Swap Dealers Association ("ISDA") Master Agreement dated as of October 24, 2003 (the "Master Agreement") with the attached Schedule dated as of October 24, 2003 (the "Schedule") and Credit Support Annex dated as of October 24, 2003 (the "Credit Support Annex").

Attached hereto as **Exhibit A** are true and correct copies of the Master Agreement, Schedule and Credit Support Annex.

11. On or about November 2, 2005, Aliant and LBSF entered into an amendment to the Swap Agreement dated as of October 31, 2005 (the "Amendment"), which Amendment essentially slightly modified the Credit Support Annex's definition of "Minimum Transfer Amount." Attached hereto as **Exhibit B** is a true and correct copy of the Amendment, which together with the Master Agreement, the Schedule and Credit Support Annex, shall collectively be referred to as the "Swap Agreement".

12. The Swap Agreement is governed by the laws of the State of New York. (Schedule, Part 4, ¶ (h)).

13. Since 2003, LBSF and Aliant have engaged in two derivative transactions under the terms of the Swap Agreement: (1) a prime interest rate swap, which was effective on October 5, 2005 and is identified by Lehman ID # 2279982 (the "Prime Swap"); and (2) a LIBOR interest rate swap, which was effective on February 11, 2008 and identified by Lehman ID # 3633983 (the "LIBOR Swap," together with the Prime Swap, the "Swap Transactions").

14. Pursuant to the Master Agreement, Aliant had an obligation to provide collateral to LBSF to secure its potential obligations to LBSF under the Master Agreement.

15. On or about October 27, 2005, pursuant to the Master Agreement and in connection with the Transactions, Aliant caused the FNMA Security, in the original par/face amount of $5,250,000 to be Transferred (as such term is defined in the Credit Support Annex) to LBSF as Posted Collateral (as such term is defined in the Credit Support Annex).

16. Pursuant to paragraph 6(d)(i) of the Credit Support Annex, Aliant was entitled to receive all Distributions (as such term is defined in the Credit Support Annex) made on account of the FNMA Security that were delivered to LBSF, i.e., the Monthly Excess Collateral Payments, and all such Distributions were to be paid to Aliant no later than the following Local Business Day after LBSF's receipt of the same.

17. In accordance with paragraph 6(d)(i) of the Credit Support Annex, LBSF, through August 2008, transferred the Distributions, i.e., the Monthly Excess Collateral Payments, to Aliant through LBSF's bank, JPMorgan, because the FNMA Security was sufficient collateral for the Swap Transactions.

**Pre-Petition Event of Default, Declaration of Early Termination Date and Demand For Return of Swap Collateral**

18. Under the Swap Agreement, an "Early Termination Date" may be declared by the non-defaulting party upon the occurrence of an Event of Default (as such term is defined in the Master Agreement).

19. Under the Swap Agreement, an Event of Default occurs, <u>inter alia</u>, under any of the following circumstances:

> (1) one of the parties or any "Credit Support Provider" of a party "becomes insolvent or is unable to pay its debts or fails or admits in writing its inability generally to pay its debts as they become due"; or
>
> (2) a party "institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law."

(Master Agreement, ¶ 5(a)(vii)).

20. Lehman Brothers Holdings Inc. is designated as a Credit Support Provider under the Swap Agreement. (Schedule, Part 4, ¶ (g)).

21.     On or about September 15, 2008, Lehman Brothers Holdings Inc. filed a petition in the U.S. Bankruptcy Court for the Southern District of New York seeking relief under Chapter 11 of the United States Bankruptcy Code (the "LBHI Petition").

22.     The filing of the LBHI Petition caused an Event of Default to occur under the Swap Agreement.

23.     Pursuant to Section 6(a) of the Master Agreement, upon the occurrence of this Event of Default, Aliant was entitled to provide notice to LBSF specifying the relevant Event of Default and designate a day not earlier than the day such notice was effective as an Early Termination Date in respect of all outstanding transactions.

24.     In accordance with the Master Agreement, and due to the occurrence of the Event of Default, by letter to LBSF dated September 25, 2008 and delivered September 26, 2008 (the "September 25, 2008 Letter"), Aliant as the non-defaulting party: (i) notified LBSF that the filing of the LBHI Petition caused an Event of Default under the Master Agreement; (ii) designated September 26, 2008 as the Early Termination Date in respect of the Swap Transactions; (iii) advised LBSF that a statement of the amount due Aliant under the Transactions will be provided as soon as reasonably practicable following the Early Termination Date; and (iv) demanded the return of Swap Collateral.  Attached hereto as **Exhibit C** is a copy of the September 25, 2008 Letter.

25.     Despite Aliant's demand, LBSF has not returned the Swap Collateral.

26.     By letter and attachment to LBSF dated October 2, 2008 (the "October 2, 2008 Letter"), Aliant: (i) provided a statement to LBSF showing that LBSF owed Aliant $1,305,377 under the Swap Transactions, with the breakdown being $1,099,047 owed by LBSF to Aliant under the Prime Swap and $197,049 owed by LBSF to Aliant under the LIBOR Swap; and (ii)

demanded, again, the return of the Swap Collateral, including the September 2008 Monthly Excess Collateral Payment which LBSF had failed to remit to Aliant. Attached hereto as **Exhibit D** is a copy of the October 2, 2008 Letter.

27. Despite Aliant's repeated demand, LBSF has not returned the Swap Collateral. In addition, LBSF has not remitted to Aliant the September 2008 or October 2008 Monthly Excess Collateral Payments (collectively, the "Non-Remitted Distributions").

**Role of JPMorgan**

28. JPMorgan is a sophisticated financial institution.

29. The Swap Agreement is based upon the 1992 edition of the ISDA Master Agreement and the 1994 ISDA Credit Support Annex form which are the industry standards for such agreements. Accordingly, the terms of the Swap Agreement are well known within the financial industry and are widely adopted by all parties to such agreements. It is believed that JPMorgan was familiar with the terms of the Swap Agreement.

30. Upon information and belief, JPMorgan was aware that: (1) with respect to the FNMA Security, it was Posted Collateral under the terms of the Swap Agreement, and thus, is Aliant's property; and (2) with respect to the Non-Remitted Distributions, those funds are Distributions under the Swap Agreement, and thus, are Aliant's property.

31. Upon information and belief, JPMorgan was aware that the Swap Collateral constitute assets belonging to Aliant which are held by LBSF as a fiduciary for the benefit of Aliant.

32. Per the terms of the Swap Agreement: (i) JPMorgan was acting as an agent for LBSF in holding the Swap Collateral (Credit Support Annex, ¶ 6(b)(i)); and (ii) due to the Event

of Default, neither LBSF nor its custodian JPMorgan is entitled to hold the Swap Collateral (Credit Support Annex, ¶ 13(g)(i)).

33. Upon information and belief, JPMorgan has asserted certain setoff rights with respect to LBSF and Lehman Brothers Holdings Inc. Any such setoff rights of JPMorgan should not be effective as to the Swap Collateral, including the Monthly Excess Collateral Payments, because, _inter alia_, (1) the FNMA Security and distributions related to it are the property of Aliant, not LBSF or Lehman Brothers Holdings Inc. and (2) per the terms of the Swap Agreement, JPMorgan is not entitled to hold the Swap Collateral (Credit Support Annex, ¶ 13(g)(i)).

**LBSF's Bankruptcy Filing**

34. On October 3, 2008, LBSF filed for bankruptcy protection under Chapter 11 of Title 11 of the United States Code (the "LBSF Filing Date").

35. Aliant terminated the Master Agreement and demanded return of Swap Collateral before the LBSF Filing Date; accordingly, the Swap Collateral is not part of LBSF's bankruptcy estate.

36. Through an email communication dated November 6, 2008, Aliant received confirmation that the FNMA Security is being held by the Debtor "as collateral." Annexed hereto as **Exhibit E** is an email, dated November 6, 2008, 7:20 AM, from Barclays Capital's M. Poznar to Aliant's D. Blanks confirming the Debtor's possession of FNMA Security "as collateral" (the "November 6, 2008 Email"). **Exhibit E** also contains the email messages which led up to the November 6, 2008 Email.

37. Due to the Event of Default, the Debtor is precluded from utilizing the Swap Collateral in any of the ways set forth in paragraph 6(c) of the Credit Support Annex. Per the

terms of the Swap Agreement, the Swap Collateral must be immediately returned to Aliant. (Credit Support Annex, ¶ 6(d)(i) and ¶ 8 (b)(iii)).

38. In a letter from LBSF to Aliant dated November 13, 2008 (the "LBSF Confirmation Letter"), LBSF, among other things, confirmed the receipt of the September 25, 2008 Letter. Attached hereto as **Exhibit F** is a copy of the LBSF Confirmation Letter.

## FIRST CAUSE OF ACTION
## (Against LBSF and JPMorgan)
## Specific Performance As To The Swap Collateral

39. The averments in Paragraphs 1 through 38 are incorporated herein by reference.

40. By reason of the express provisions of the Swap Agreement, LBSF is under an affirmative obligation to return the Swap Collateral to Aliant. (Credit Support Annex, ¶ 6(d)(i) and ¶ 8(b)(iii)).

41. An order directing LBSF and JPMorgan to immediately transfer the Swap Collateral to Aliant will enforce these contractual rights of Aliant, as permitted under 11 U.S.C. § 362(b)(17).

42. Although demand was properly made by Aliant per the September 25, 2008 Letter (which was before the LBSF Filing Date), the Swap Collateral has not been returned.

43. The Swap Collateral is not part of LBSF's bankruptcy estate and is the property of Aliant.

44. JPMorgan, as custodian and agent of LBSF, has no legitimate claim or right to the Swap Collateral. (Credit Support Annex, ¶ 13 (g)(i)).

45. Per the November 6, 2008 Email, Aliant has confirmed that the FNMA Security continues to be held by the Debtor "as collateral."

WHEREFORE, Aliant respectfully requests that this Court enter an order directing that: (i) LBSF specifically perform its obligations under the Swap Agreement by returning the Swap Collateral; and (ii) JPMorgan follow the instruction of LBSF to have the Swap Collateral returned to Aliant in accordance with the terms of the Swap Agreement.

## SECOND CAUSE OF ACTION

### (Against LBSF and JPMorgan)

### Specific Performance As To The Non-Remitted Distributions

46. The averments in Paragraphs 1 through 45 are incorporated herein by reference.

47. By reason of the express provisions of the Swap Agreement, LBSF was to send the Non-Remitted Distributions to Aliant. (Credit Support Annex, ¶ 6(d)(i) and ¶ 8(b)(iii)).

48. An order directing LBSF and JPMorgan to immediately transfer the Non-Remitted Distributions (which are the September 2008 and October 2008 Monthly Excess Collateral Payments) to Aliant will enforce these contractual rights of Aliant, as permitted under 11 U.S.C. § 362(b)(17).

49. Although demand has properly been made by Aliant per the September 25, 2008 Letter and the October 2, 2008 Letter, the Non-Remitted Distributions have not been transferred to Aliant.

50. The Non-Remitted Distributions are not part of LBSF's bankruptcy estate because they constitute Aliant's property and are being held by JPMorgan, as custodian and agent of LBSF, for Aliant's behalf.

51. JPMorgan, as custodian and agent of LBSF, has no legitimate claim or right to the Non-Remitted Distributions. (Credit Support Annex, ¶ 13(g)(i)).

WHEREFORE, Aliant respectfully requests that this Court enter an order directing that: (i) LBSF specifically perform its obligations under the Swap Agreement by effectuating the transfer of the Non-Remitted Distributions and any accrued interest to Aliant; and (ii) JPMorgan follow the instruction of LBSF to effectuate the transfer of the Non-Remitted Distributions and any accrued interest to Aliant.

## THIRD CAUSE OF ACTION

### (Against FNMA)

### Compel Change Of Recipient Of Monthly Excess Collateral Payments

52. The averments in Paragraphs 1 through 51 are incorporated herein by reference.

53. Because the FNMA Security is being held by JPMorgan, as agent or custodian of LBSF, the monthly distributions (Monthly Excess Collateral Payments) are being directed to JPMorgan.

54. Going forward, FNMA must be compelled to send the Monthly Excess Collateral Payments directly to Aliant because: (1) per the terms of the Swap Agreement, the FNMA Security must be returned to Aliant (Credit Support Annex, ¶ 8(b)(iii)); and (2) JPMorgan, upon information and belief, may be seeking to (improperly) assert setoff rights to the Monthly Excess Collateral Payments.

WHEREFORE, Aliant respectfully requests that this Court enter an order directing FNMA to immediately send all Monthly Excess Collateral Payments to Aliant, or alternatively, to a trust account maintained at an institution which acknowledges to have no setoff rights to the funds in the account.

## FOURTH CAUSE OF ACTION

### (Against LBSF and JPMorgan)

### Constructive Trust (In the Alternative)

55. The averments in Paragraphs 1 through 54 are incorporated herein by reference.

56. The Swap Collateral is the property of Aliant.

57. At all relevant times, JPMorgan, through its knowledge of the Swap Agreement, was aware of the nature of the relationship between LBSF and Aliant.

58. At all relevant times, JPMorgan was aware that the FNMA Security and Monthly Excess Collateral Payments (including the Non-Remitted Distributions) represented the Swap Collateral.

59. In holding the Swap Collateral, JPMorgan was acting as the agent and representative of LBSF.

60. Upon information and belief, JPMorgan was aware of the bankruptcy filings of Lehman Brothers Holdings Inc. and LBSF almost as soon as they occurred.

61. JPMorgan's knowledge of the source and purpose of the Swap Collateral places JPMorgan in the position of trustee with respect to those funds.

62. JPMorgan has a fiduciary obligation to transfer the Swap Collateral to Aliant.

63. Aliant is entitled to the imposition of a constructive trust on the Swap Collateral held by JPMorgan.

WHEREFORE, Aliant respectfully requests that this Court impose a constructive trust on the Swap Collateral for the benefit of the Aliant.

## FIFTH CAUSE OF ACTION

### (Against JPMorgan)

### Conversion (In the Alternative)

64. The averments in Paragraphs 1 through 63 are incorporated herein by reference.

65. To the extent that JPMorgan has transferred any portion of the Swap Collateral, it has wrongfully exercised control over property of Aliant without the authority or consent of Aliant.

66. To the extent that JPMorgan has transferred any portion of the Swap Collateral, it has converted the property of Aliant.

WHEREFORE, Aliant respectfully requests that to the extent JPMorgan has transferred all or any portion of the Swap Collateral, judgment be entered in favor of the Aliant and against JPMorgan in the amount of all such transfers.

## SIXTH CAUSE OF ACTION

### (Against LBSF)

### Breach of Contract

67. The averments in Paragraphs 1 through 66 are incorporated herein by reference.

68. In accordance with the Swap Agreement, immediately upon designation of an early termination date, LBSF was contractually obligated to transfer to Aliant the Swap Collateral and interest calculated in accordance with the agreements.

69. Despite demands duly made, LBSF has failed and refused to transfer to Aliant all or any part of the Swap Collateral.

70. The refusal of LBSF to transfer to Aliant the Swap Collateral constitutes a default and breach of the terms of the Swap Agreement.

71. Aliant is also entitled to recover from LBSF all costs, expenses and attorney fees incurred in connection with efforts to enforce its rights under the Swap Agreement.

WHEREFORE, Aliant demands judgment against LBSF for all of its costs, expenses and attorney fees incurred in connection with efforts to enforce its rights under the Swap Agreement,[1] and granting such other and further relief as is just.

## SEVENTH CAUSE OF ACTION

### (Against LBSF)

### Constructive Trust (In the Alternative)

72. The averments in Paragraphs 1 through 71 are incorporated herein by reference.

73. LBSF is improperly in possession of the Swap Collateral and accrued interest belonging to Aliant.

74. At all relevant times, LBSF has been a fiduciary with respect to the Swap Collateral and has held the Swap Collateral in trust for and for the benefit of Aliant.

75. LBSF has violated its fiduciary duties to Aliant by failing to transfer the Swap Collateral to Aliant.

76. Aliant is entitled to the imposition of a constructive trust on the Swap Collateral, wherever and however held by LBSF or any transferee of LBSF.

WHEREFORE, Aliant respectfully requests that this Court impose a constructive trust on the Swap Collateral for the benefit of Aliant.

---

[1] As is set forth in Aliant's October 2, 2008 Letter (**Exhibit D**), LBSF owes Aliant $1,305,377 under the terminated Swap Transactions. Aliant will file a proof of claim for this amount and reserves its right to amend the claim by any monetary amounts awarded Aliant under this Complaint, including this Sixth Cause Of Action.

1241698                                    15

## SEVENTH CAUSE OF ACTION

### (Against LBSF)

### Conversion (In the Alternative)

77. The averments in Paragraphs 1 through 76 are incorporated herein by reference.

78. To the extent that LBSF has transferred any portion of the Swap Collateral, it has wrongfully exercised control over property of Aliant without the authority or consent of Aliant.

79. To the extent that LBSF has transferred any portion of the Swap Collateral, it has converted the property of Aliant.

WHEREFORE, Aliant respectfully requests that to the extent LBSF has transferred all or any portion of the Swap Collateral, judgment be entered in favor of the Aliant and against LBSF in the amount of all such transfers.

## EIGHTH CAUSE OF ACTION

### (Against LBSF)

### Redemption (In the Alternative)

80. The averments in Paragraphs 1 through 79 are incorporated herein by reference.

81. Pursuant to Section 9-623 of the UCC, Aliant has the statutory right to redeem the Swap Collateral by tendering fulfillment of all obligations secured by the Swap Collateral and the reasonable expenses and attorneys fees (if any) described in Section 9-615(a)(1) of the UCC to the extend provided for in the Swap Agreement.

82. Aliant has tendered fulfillment of all obligations secured by the Swap Collateral and has tendered all reasonable expenses and attorney's fees (if any) described in Section 9-615(a)(1) of the UCC to the extent provided for in the Swap Agreement.

83. Upon information and belief, LBSF has not (i) collected the Swap Collateral under Section 9-607 of the UCC;(ii) disposed of the Swap Collateral or entered into a contract for its disposition under Section 9-610 of the UCC; or (iii) accepted the Swap Collateral in full or partial satisfaction of the Aliant's indebtedness to LBSF under the Swap Agreement under Section 9-622 of the UCC.

84. Furthermore, pursuant to Section 9-602 and 9-624 of the UCC, Aliant 's right of redemption with respect to the Swap Collateral may not be waived.

85. Aliant therefore has the right to redeem the Swap Collateral and to seek this Court's assistance to exercise such right of redemption pursuant to Section 9-625(a) of the UCC.

86. Consequently, Alaint is entitled to an order of this Court enforcing Aliant's right to redeem the Swap Collateral, and directing LBSF to take all steps necessary to accomplish such redemption.

WHEREFORE, Aliant respectfully requests judgment against LBSF enforcing Aliant's right to redeem the Swap Collateral and directing LBSF to immediately take all steps necessary to accomplish such redemption.

Dated: November 25, 2008          **PORZIO, BROMBERG & NEWMAN, P.C**

By:  /s/ John S. Mairo
       John S. Mairo
(Mail to) P.O. Box 1997, Morristown, NJ  07962-1997
(Delivery to) 100 Southgate Parkway, Morristown, NJ  07960
Telephone (973) 538-4006
Facsimile (973) 538-5146
-and-
156 West 56th Street
New York, NY  10019
Email: jsmairo@pbnlaw.com
      tjfreedman@pbnlaw.com
Attorneys for Aliant Bank

## **VERIFICATION**

Kenneth H. Givens, of full age, certify that I am, Chief Financial Officer of Aliant Bank, and am authorized to make this Verification on Aliant's behalf. I further certify that I have read the foregoing Complaint and, to the best of my knowledge, the facts contained therein are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: November 25, 2008

/s/   Kenneth H. Givens