Hearing Date and Time: December 16, 2008 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: December 11, 2008 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : 08-13555 (JMP)
:
Debtors. : (Jointly Administered)
:
:
---------------------------------------------------------------x

# NOTICE OF DEBTORS' MOTION FOR AN ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING LEHMAN BROTHERS HOLDINGS INC. TO COMPROMISE ITS CLAIMS AGAINST WLB MARK MEZZANINE LLC, DOUGLAS WILSON, WLB MARK HOLDING LLC, DOUGLAS WILSON DEVELOPMENT, LLC, AND DW MARK INVESTORS, LLC

PLEASE TAKE NOTICE that a hearing on the annexed motion of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors") for an order authorizing Lehman Brothers Holdings Inc. to settle its existing claims against WLB Mark Mezzanine LLC, Douglas Wilson, WLB Mark Holding LLC, Douglas Wilson Development, LLC, and DW Mark Investors, LLC, by accepting payment of less than the amounts due under a loan (the "Motion"), all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One

Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **December 16th at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Harvey R. Miller and Robert J. Lemons, attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Dennis O'Donnell, and Evan Fleck, attorneys for the official committee of unsecured creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be received no later than **December 11, 2008 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: November 25, 2008
      New York, New York

/s/ Robert J. Lemons
Harvey R. Miller
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Hearing Date and Time: December 16, 2008 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: December 11, 2008 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re : **Chapter 11 Case No.**
: 
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : **08-13555 (JMP)**
: 
Debtors. : **(Jointly Administered)**
: 
: 
------------------------------------------------------------------x

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING LEHMAN BROTHERS HOLDINGS INC. TO COMPROMISE ITS CLAIMS AGAINST WLB MARK MEZZANINE LLC, DOUGLAS WILSON, WLB MARK HOLDING LLC, DOUGLAS WILSON DEVELOPMENT, LLC, AND DW MARK INVESTORS, LLC**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, including Lehman Commercial Paper Inc. ("LCPI"), as debtors and debtors-in-possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), respectfully represent as follows:

**Background**

1. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

08-13555-mg    Doc 1734    Filed 11/25/08    Entered 11/25/08 19:23:34    Main Document
Pg 5 of 16

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").

3. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

## Jurisdiction

4. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Lehman's Business

5. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman was a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide. Its former headquarters in New York and regional headquarters in London and Tokyo were complemented by a network of offices in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

6. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Relief Requested

7. By this Motion, the Debtors seek entry of an order, pursuant to Bankruptcy Rule 9019, authorizing LBHI to settle existing claims against WLB Mark Mezzanine LLC (the "Borrower"), Douglas Wilson (the "Guarantor"), WLB Mark Holding LLC ("WLB"), Douglas Wilson Development, LLC ("DWD"), DW Mark Investors, LLC ("Investors") and LB Park Lofts LLC ("LB Park" and together with the Borrower, the Guarantor, WLB, DWD, and the Investors, the "Borrowing Parties") arising from a mezzanine loan made by LBHI to the Borrower by accepting a payment of less than the amounts due under the mezzanine loan.

## LBHI's Relationship to the Borrowing Parties

8. LBHI is the holder of a Secured Promissory Note (the "Loan") executed by the Borrower in the original principal amount of $23,300,000 dated September 17, 2004 and that matured (after extension) on November 15, 2008. The Loan was executed as part of the financing of the construction of a 244-unit high-rise condominium project in San Diego (the "Mark") that was completed in May 2007 and is owned by The Mark Condominiums LLC (the "Project Owner").[1] The financing is comprised of a senior loan to Corus Bank ("Corus"), with a

---

[1] LBHI is an indirect parent of LB Park, which in turn is a managing and non-managing member of WLB. WLB is the sole member of the Borrower, which in turn is the sole member of the Project Owner. Douglas Wilson is a member of both Investors and DWD. DWD is a managing member of WLB. Investors is a non-managing member of WLB.

principal balance of $37,214,400[2] (the "Senior Loan"), which matured on October 1, 2008, and LBHI's mezzanine-level Loan, on which principal and interest are due in an aggregate amount of $37,353,254.62 ($23,300,000 principal and $14,053,254.62 accrued interest).[3] The Project Owner's failure to repay the Senior Loan when it came due has resulted in a maturity default. Corus has advised the Project Owner that it is about to commence foreclosure proceedings under the Deed of Trust securing the Senior Loan.

9. The Loan is secured by, among other things, certain membership pledge and security agreements dated September 17, 2004 from each of the Borrower, WLB, DWD, Investors, and LB Park, and by a conditional and a completion guaranty executed by the Guarantor in favor of LBHI and dated September 17, 2004. The Loan is not secured by a lien on the real estate or other assets of the Project Owner. LBHI, through its wholly-owned, indirect, non-debtor subsidiary LB Park, has also invested $16,000,000 of equity in WLB.

10. To date, more than half of the condominium units remain unsold. These units consist of two townhomes, 63 one bedroom units, 51 two bedroom units, and 12 larger penthouse units. Assuming that the Mark is able to maintain its current disposition rate of two units per month, it will take over five years for the development to reach capacity. Carrying costs, excluding the debt service on the senior loan, are projected to be in the range of $300,000 per month.

11. Due to the retreat in the real estate market in the past 24 months, LBHI currently books the Loan at substantially less than the amounts due. Based on current unit absorption rates and carrying costs, and as evidenced by LBHI's willingness to accept less than

---

[2] This amount is as of October 1, 2008.

[3] This amount is as of November 15, 2008.

the face amount in repayment of the Loan, LBHI believes that LB Park's equity investment in WLB has no value.

## Strategic Alternatives

12. Given the uncertain prospect for obtaining a favorable return on the Loan, the Debtors have considered several alternative strategies for realizing value from their investment:

- *Rent out the remaining units.* As a rental property with units ranging from $2,200 to $7,000 per month (based on discussions with rental brokers in the market) and an exit capitalization rate of 6%, the Debtors believe there would be little value to repay the Loan.

- *Foreclose on the equity investors and continue to sell the units.* This would require additional funding in excess of $10,000,000. This option entails continued risk to the San Diego condominium market and an extended hold period.

- *Foreclose on the equity investors, lease for a period and then sell the units.* This would require LBHI to foreclose on the equity, lease the property to 50% occupancy and begin to sell units in approximately 20 months. Additional funding in excess of $7,000,000 would be required. This option also entails continued risk to the San Diego condominium market and an extended hold period.

Each of the foregoing options would require Corus to consent to the extension of the Senior Loan, or LBHI to cure the maturity default under the Senior Loan by paying it off in full for more than $37,000,000. Based on the foregoing analysis, the Debtors conclude that the capital needs required (i) to reinstate or pay off the Senior Loan, or (ii) to meet additional funding requirements, will result in risk to the new capital invested as well as to the already impaired Loan. In all events there is a high likelihood that there will be no recovery of any value on account of LB Park's equity in WLB.

**The Compromise**

13. Given these unfavorable alternatives, the erosion in both the real estate market as a whole, and the market for loans of this type, the Mark's future capital requirements, and its carrying costs, the Debtors determined that compromising LBHI's claims in respect of the Loan by accepting a payment of less than the amounts due is their best option. In furtherance of that objective, the Debtors entered into negotiations with the Borrowing Parties prior to LBHI's chapter 11 filing. Those negotiations have continued since the filing and are likely to result in a compromise in the near future. Based on those negotiations, the Debtors anticipate that the Loan will be compromised for approximately $25,000,000.[4] The Debtors submit that under the circumstances, this represents a reasonable recovery on the Loan. Indeed, it exceeds the value at which LBHI has booked the Loan. In order to facilitate the Court's evaluation of the compromise, the Debtors are not seeking authority at this time to accept a compromise for any payment of an amount less than $25,000,000.[5]

14. In coordination with and contingent upon the compromise for which the Debtors are seeking authority in this motion, LB Park will transfer its interest in WLB to WLB in exchange for a nominal payment in an amount not to exceed $15,000. This transfer is required by the lender from whom a commitment has been obtained to refinance the Borrower's loans.[6]

---

[4] This figure is a gross value subject to closing adjustments, and includes the $15,000 equity settlement discussed below.

[5] Gross, subject to closing adjustments and including the $15,000 equity settlement discussed below.

[6] LCPI had previously entered into a Participation Agreement, dated August 23, 2007 (the "Participation Agreement"), with Restructured Asset Securities and Enhanced Returns, Series 2007-A Trust, ("Racers") whereby LCPI granted Racers an undivided participation interest in LB Park. In the Participation Agreement, Racers agrees that LCPI may, in its sole discretion, exercise or refrain from exercising any right, or take or refrain from taking any action, in respect of any request, act, decision or vote with respect to any assets underlying the participation. Thus, the Debtors are not required to obtain consent from Racers for the transfer and, in any case, the transfer will not affect Racers' participation. Racers will still hold its participation in LB Park but LB Park will hold up to $15,000 in cash instead of its valueless equity interest in WLB.

**The Controlling Legal Standard**

15.     Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a).  This rule empowers bankruptcy courts to approve compromises "if they are in the best interest of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).  Indeed, courts have long considered compromises to be "a normal part of the process of reorganization." *TMT Trailer Ferry,* 390 U.S. at 424 (quoting *Case v. Los Angelas Lumber Prods. Co.*, 308 U.S. 106, 130 (1939).

16.     The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  The settlement need not result in the best possible outcome for the debtor, but must not fall beneath the lowest point in the range of reasonableness." *Drexel Burnham Lambert Group*, 134 B.R. at 505; see also *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).  Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  However, the analysis must focus on the question of whether a particular compromise is "fair and equitable, and in the best interest of the estate." *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).

17.     While a court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134 B.R. at 496. "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact…. The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

18.     The court may give weight to the "informed judgments of the … debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness…. If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

19.     Significantly, there is no requirement that "the value of the compromise … be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427. Instead, "there is no reason, at lease in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id*. at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974).

**The Debtors' Request for Authority to Compromise Should Be Approved
Because Such Authority Will Allow the Debtors to Maximize Value for the Estate**

20. For the reasons discussed above, the Debtors have determined that a compromise represents their best method to realize value from the Loan. To take full advantage of this process, the Debtors submit that they require pre-authorization from the Court to compromise their claim for less than the amounts due under the Loan. In the current environment, the value of the Loan is volatile and the market for financing needed by the Borrower to fund repayment of the Loan is extremely limited. Sources of funding for the Borrower are likely to view with disfavor the inevitable lapse in time between closing and court approval, and the prospect of judicial veto. At the same time, the Debtors' $25,000,000[7] negotiating floor is well within the lowest-point-in-the-range-of-reasonableness. In short, a compromise is in the best interests of the Debtors, their estates, their creditors, and all parties in interest.

**Notice**

21. No trustee or examiner has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on September 22, 2008 governing case management and administrative procedures for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

---

[7] Gross, subject to closing adjustments and including the equity settlement with LB Park.

22. No previous motion for the relief sought herein has been made to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: November 25, 2008
      New York, New York

/s/ Robert J. Lemons
Harvey R. Miller
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                              :
In re                                         :     Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.,        :     08-13555 (JMP)
                                              :
                Debtors.                      :     (Jointly Administered)
                                              :
                                              :
------------------------------------------------------------------x
```

**ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE AUTHORIZING LEHMAN BROTHERS
HOLDINGS INC. TO COMPROMISE ITS CLAIMS AGAINST WLB MARK
MEZZANINE LLC, DOUGLAS WILSON, WLB MARK HOLDING LLC,
DOUGLAS WILSON DEVELOPMENT, LLC, AND DW MARK INVESTORS, LLC**

Upon the motion, dated November 25, 2008 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors"), for an order, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing LBHI to compromise existing claims against WLB Mark Mezzanine LLC, Douglas Wilson, WLB Mark Holding LLC, Douglas Wilson Development, LLC, and DW Mark Investors, LLC, by accepting payment of less than the amounts due under a loan, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and granting of the Motion being within the sound discretion of the Court; and the relief requested in the Motion being fair and equitable, in the best interests of the LBHI's estate, and above the lowest point in the range of reasonableness; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, LBHI is authorized to compromise its existing claims against WLB Mark Mezzanine LLC, Douglas Wilson, WLB Mark Holding LLC, Douglas Wilson Development, LLC, and DW Mark Investors, LLC, relating to the Loan (as defined in the motion), by accepting payment of less than the amounts due under the Loan, so long as the gross amount, subject to closing and other adjustments, of such payment is equal to or greater than $25,000,000 gross, subject to closing adjustments and including the equity settlement with LB Park Lofts LLC, in full satisfaction of all such claims; and it is further

ORDERED that no liability will accrue to LCPI, or any of the other Debtors or their affiliates, in regard to the transfer of LB Park Lofts LLC's interest in WLB Mark Holding LLC; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation and/or interpretation of this order.

Dated: December [], 2008
      New York, New York

---
UNITED STATES BANKRUPTCY JUDGE