WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                         :
In re                                    :     Chapter 11 Case No.
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :     08-13555 (JMP)
                                         :
                 Debtors.                :     (Jointly Administered)
                                         :
                                         :
-------------------------------------------------------------------x
```

**NOTICE OF DEBTOR'S MOTION FOR ENTRY OF ORDER**
**PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AND**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004, 6006, AND 9019**
**AUTHORIZING (I) THE ASSUMPTION, ASSIGNMENT, AND SALE OF DEBTOR'S**
**RIGHTS AND OBLIGATIONS UNDER A CERTAIN LOAN FACILITY AGREEMENT,**
**(II) THE RELEASE OF CERTAIN CLAIMS, AND (III) RELATED RELIEF**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "<u>Motion</u>")[1]

of Lehman Brothers Holdings Inc. ("<u>LBHI</u>"), as debtor in possession (together with its affiliated

debtors in the above-referenced chapter 11 cases, the "<u>Debtors</u>"), FOR ENTRY OF ORDER

PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AND

FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004, 6006, AND 9019

AUTHORIZING (I) THE ASSUMPTION, ASSIGNMENT, AND SALE OF DEBTOR'S

RIGHTS AND OBLIGATIONS UNDER A CERTAIN LOAN FACILITY AGREEMENT,

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to
such terms in the Motion.

(II) THE RELEASE OF CERTAIN CLAIMS, AND (III) RELATED RELIEF, all as more fully

described in the Motion, will be held before the Honorable James M. Peck, United States

Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on

**December 16, 2008 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy

Court for the Southern District of New York, shall set forth the name of the objecting party, the

basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court

electronically in accordance with General Order M-242 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by

all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with two hard copies

delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable

James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil

Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Lori R. Fife,

Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern

District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New

York 10004 Attn:  Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and

Tracy Hope Davis; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza,

New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan

Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases;

(v) Freshfields Bruckhaus Deringer US LLP, 520 Madison Avenue, 34th Floor, New York, New

York 10022, Attn: Matthew F. Herman,  and (vi) any person or entity with a particularized

interest in the Motion, so as to be received no later than **December 11, 2008, at 4:00 p.m.**

**(prevailing Eastern Time)** (the "Objection Deadline").

   PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

   PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  November 25, 2008
   New York, New York

     /s/ Lori R. Fife_____
     Lori R. Fife

     WEIL, GOTSHAL & MANGES LLP
     767 Fifth Avenue
     New York, New York 10153
     Telephone: (212) 310-8000
     Facsimile: (212) 310-8007

     Attorneys for Debtors
     and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                 :

**In re**                       :       **Chapter 11 Case No.**
                                   :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :      **08-13555 (JMP)**
                                   :

            **Debtors.**        :       **(Jointly Administered)**
                                   :

-------------------------------------------------------------------x

**DEBTOR'S MOTION FOR ENTRY OF ORDER PURSUANT TO**
**SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AND**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004, 6006, AND 9019**
**AUTHORIZING (I) THE ASSUMPTION, ASSIGNMENT, AND SALE OF DEBTOR'S**
**RIGHTS AND OBLIGATIONS UNDER A CERTAIN LOAN FACILITY AGREEMENT,**
**(II) THE RELEASE OF CERTAIN CLAIMS, AND (III) RELATED RELIEF**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI"), as debtor in possession (together with

its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors" and, collectively

with their non-debtor affiliates, "Lehman"), files this Motion and respectfully represent:

<u>**Background**</u>

        1.      Commencing on September 15, 2008 and periodically thereafter, LBHI

and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of

title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have

been consolidated for procedural purposes only and are being jointly administered pursuant to

Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The

Debtors are authorized to operate their businesses and manage their properties as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

## Jurisdiction

4.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Lehman's Business

5.      Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman has been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.  Its headquarters in New

York and regional headquarters in London and Tokyo are complemented by a network of offices

in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

6.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit

of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District

of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

### 000 "Lehman Brothers"

7.      000 "Lehman Brothers" ("000 LB"), incorporated in the Russian Federation, is a non-debtor Lehman affiliate created to serve as a platform to provide a broad array of investment banking services into Russia, including equity and fixed income sales and trading and investment banking advisory activities.  Through memberships with the various local exchanges (e.g., Micex, RTS), 000 LB was intended to provide local market access to Lehman's international client base.  The launch of the capital markets segment of 000 LB's business, however, has been forestalled by the commencement of the Debtors' chapter 11 cases.

8.      As depicted in the chart below, 000 LB is a wholly owned subsidiary of LB Russia Holdings Inc. ("LBRHI").  LBRHI, in turn, is jointly owned by LB Russia Holdings LLC ("LBRH LLC") and LB Russia Inc. ("LB Russia"), which itself is a wholly owned subsidiary of LBRH LLC.  LBRH LLC is a wholly owned subsidiary of LBHI.



### Relief Requested

9.      Pursuant to sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006, LBHI requests that the Court enter an order (i) authorizing LBHI to assume that certain Loan Facility Agreement, dated September 25, 2007 (the "Loan Facility

Agreement"), between LBHI and its indirect subsidiary 000 LB, a copy of which is annexed

hereto as <u>Exhibit A</u>, (ii) authorizing LBHI to assign and sell the Loan Facility Agreement and

Loan Rights (as described more fully below) to Nomura Europe Holdings Plc ("<u>Nomura</u>," and

together with LBHI and 000 LB, the "<u>Parties</u>") free and clear of any liens, claims, encumbrances,

and other interests pursuant to that certain Loan Assignment Agreement among the Parties, dated

as of November 24, 2008 (the "<u>Purchase Agreement</u>")[1], a copy of which is annexed hereto as

<u>Exhibit B</u>, (iii) authorizing LBHI to unconditionally and irrevocably waive all rights in respect of

any Indebtedness (as defined in the Sale and Purchase Agreement referred to in paragraph 13

below) which 000 LB owes or may owe, or otherwise may have, any obligation in respect of, to

LBHI and release all claims and causes of action against 000 LB in respect thereof, other than

Indebtedness owed, outstanding or accrued under or pursuant to the Loan Facility Agreement

(the "<u>Waiver and Release</u>"), (iv) establishing the Cure Amount as zero, and (v) authorizing LBHI

to take all corporate actions necessary to facilitate the 000 LB Stock Sale (as defined below) by

000 LB's non-debtor parent company, LBRHI, including, without limitation, appointing

authorized persons to act on behalf of LBHI as managing member of LBRH LLC.

## The 000 LB Sale Transactions

10.    Prior to the commencement of these cases, LBHI and 000 LB entered into

the Loan Facility Agreement, pursuant to which LBHI made available to 000 LB a senior loan

facility in the aggregate amount of $22.5 million (the "<u>Loan Facility</u>") for the purpose of

financing 000 LB's operations in Russia.  000 LB currently has approximately $3.8 million

outstanding under the Loan Facility, including principal and accrued interest, due and owing to

LBHI.

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to
such terms in the Purchase Agreement.

11.     Prior to the commencement of these cases, 000 LB was in the process of developing its various business segments to further Lehman's expansion into Russia.  It was less than two months away from completing its preliminary systems build to begin its broker-dealer activity on an agency basis.  The filing of these chapter 11 cases brought the development of 000 LB's broker-dealer business to a halt.  Because 000 LB currently has no sources of trading revenue, and significant trade, financial and employee creditors relative to its cash balances, there is a very low likelihood that 000 LB will be able to satisfy its obligations under the Loan Facility.  000 LB's balance sheet currently demonstrates 000 LB is likely in the zone of insolvency.  000 LB's ability to repay LBHI  amounts owed under the Loan Facility is, at best, uncertain, and, most likely, doubtful.

12.     Shortly after the commencement of these chapter 11 cases and in response to 000 LB's deteriorating financial condition and the significant cash drain resulting from 000 LB's continued business operations, the Debtors' management began to explore various options to remedy the financial difficulties being by 000 LB and thereby preserve LBHI's interest in the Loan Facility.  After considering several options, the Debtors' management, with the assistance of Lazard, Freres & Co. LLC ("Lazard"), began a concentrated effort to market the 000 LB business for sale to a third party.  In connection with their marketing efforts, the Debtors' management and Lazard contacted six large investment banking institutions that they believed to be promising bidders for the 000 LB business for indications of interest.  Five of the six potential bidders declined to continue to engage in a dialogue after the initial discussion of the proposed sale transaction.  Only the remaining bidder, Nomura, made a proposal for the purchase of the 000 LB business and submitted a purchase offer.

13.     Nomura has offered to pay LBHI $499,999.00 to assume the Loan Facility

Agreement and purchase and have assigned to it all of LBHI's rights, title and interest in, over

and to, and all liabilities and obligations of LBHI under, the Loan Facility Agreement and all

moneys due or owing or which may become due or owing (whether by way of principal, interest

or otherwise) under or pursuant to the Loan Facility Agreement (collectively, the "Loan Rights")

pursuant to the Purchase Agreement (the "000 LB Loan Facility Sale").  The salient terms of the

Purchase Agreement are described below.   Nomura's entry into the Purchase Agreement and

commitment to consummate the 000 LB Loan Facility Sale is conditioned on the concurrent

consummation of a separate, but related, private, out-of-court sale by LBRHI to Nomura of a

100% participation interest in the charter capital of 000 LB (the "000 LB Stock Sale," and

together with the 000 LB Loan Facility Sale, the "000 LB Sales") pursuant to a sale and purchase

agreement, dated November 24, 2008, between LBRHI and Nomura (the "Sale and Purchase

Agreement"), a copy of which is annexed here to Exhibit C.

### The Purchase Agreement

14.     The Parties entered into the Purchase Agreement after extensive, arm's-

length negotiations.  The salient terms and provisions of the Purchase Agreement are as follows[2]:

- Assignment and Sale of the Loan Rights and the Loan Facility Agreement.  Upon
  satisfaction of the Conditions, LBHI shall sell, assign, transfer, and convey
  absolutely and unconditionally to Purchaser and Purchaser shall purchase and
  accept the assignment, transfer and conveyance from LBHI of the Loan Facility
  Agreement and the Loan Rights to the Purchaser free and clear of all, liens,
  claims, encumbrances and other interests.

- Release of Liabilities Under Loan Facility Agreement.  Upon satisfaction of the
  Conditions, Purchaser shall unconditionally and irrevocably assume, undertake

---

[2] This summary of the Purchase Agreement is qualified in its entirety by the terms and provisions
of the Purchase Agreement.  To the extent there are any inconsistencies between the description
of the Purchase Agreement contained herein and the terms and conditions of the Purchase
Agreement, the terms of the Purchase Agreement shall control.

and agree, subject to valid claims and defenses, to pay, satisfy, perform and discharge in full, as and when due, and release and discharge LBHI and its successors and assigns completely and forever from, all obligations and liabilities of any kind arising out of the Loan Facility Agreement.

- <u>Cash Consideration</u>.  Upon satisfaction of the Conditions and in consideration of the Assignment, Purchaser shall pay to LBHI $499,999 by electronic transfer of funds.

- <u>Closing of Sale and Purchase Agreement</u>.  The obligations of the Parties under the Purchase Agreement shall be conditioned upon the occurrence of the Closing of the 000 LB Stock Sale pursuant to the Sale and Purchase Agreement between Nomura and LBRHI for the sale and purchase of a 100% participation interest in 000 LB.

- <u>Termination</u>.  If the Sale and Purchase Agreement is terminated in accordance with its terms, then the Purchase Agreement shall automatically terminate.

- <u>LBHI Covenants</u>.  From the date of the Purchase Agreement until the date of satisfaction of the Conditions, LBHI shall not without the prior written consent of the Purchaser (i) make any demands on 000 LB for payment of any amounts outstanding under the Loan Facility Agreement or take any other steps to enforce its rights under the Loan Facility Agreement; or (ii) sell, assign, transfer or convey the Loan Rights or any interest therein or create or suffer to exist any liens, claims, encumbrances or other interests upon or with respect to the Loan Rights.

15.    As a condition to closing, LBHI agreed to use its reasonable endeavors to obtain an order from this Court pursuant to sections 363 and 365 of the Bankruptcy Code, (i) approving the assumption by LBHI of the Loan Facility Agreement and the sale and assignment by LBHI of the Loan Facility Agreement and the Loan Rights pursuant to and in accordance with the terms of the Purchase Agreement, (ii) establishing the Cure Amount to be zero or, if an amount greater than zero, LBHI shall have elected, in its sole discretion, to pay such Cure Amount, and shall have fully and irrevocably paid to 000 LB the entirety of the Cure Amount, without any right to be reimbursed or otherwise compensated for such payment by Nomura or 000 LB, (iii) approving all corporate actions of LBHI in connection with the 000 LB Stock Sale, including without limitation, appointing authorized persons to act on behalf of LBHI as managing member of LBRH LLC.  If such Court order is not obtained by December 30, 2008 (or

such later date as LBHI and Nomura agree to in writing), then either LBHI or Nomura may terminate the Purchase Agreement by written notice to the other Party.

16.     In addition, pursuant to the terms and conditions of the Sale and Purchase Agreement, in the event that 000 LB has insufficient working capital to operate in the ordinary course of business (a "WC Shortfall"), Nomura is obligated from the date of the Sale and Purchase Agreement until Closing, upon three Business Days' notice by 000 LB to Nomura (or such earlier date as the circumstances of such payment may reasonably require), which notice shall specify (i) the amount of the WC Shortfall, and (ii) payment instructions (a "WC Payment Request"), to pay to 000 LB by way of a loan repayable on demand (such demand not to be made prior to Closing or the date of termination of the Sale and Purchase Agreement) to be used only for the purpose of eliminating or reducing the WC Shortfall, by wire transfer of immediately available funds into the account designated in the WC Payment Request, the amount specified in the WC Payment Request.

### LBHI's Assumption, Assignment and Sale of the Loan Facility Agreement and Loan Rights Pursuant to the Purchase Agreement Is an Appropriate Exercise of LBHI'S Business Judgment and Should be Approved

17.     Ample authority exists under sections 363 and 365 of the Bankruptcy Code for approval of the assumption, assignment, and sale of the Loan Facility Agreement and LBHI's Loan Rights thereunder pursuant to the Purchase Agreement.

18.     The standard to be applied by a court in determining whether an executory contract or unexpired lease should be assumed is the "business judgment" test, which is premised upon the debtor's business judgment that assumption would be beneficial to its estate.[3]  "More exacting scrutiny would slow the administration of the debtor's estate and increase its cost,

---

[3] *Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures*), 4 F.3d 1095, 1098 (2d Cir. 1993).

interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially."[4]  Upon finding that a debtor has exercised its sound business judgment in determining that assumption of an agreement is in the best interests of its estate, the Court should approve the assumption under section 365(a) of the Bankruptcy Code.[5]

19.    Section 363 of the Bankruptcy Code further provides, in relevant part, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Courts in the Second Circuit and others, in applying this section have required that this determination, like the determination of whether an executory contract should be assumed under section 365(a), be based upon the sound business judgment of the debtor.[6]  Bankruptcy Rule 6004(f)(1) permits private sales by a debtor, FED. R. BANKR. P. 6004(f)(1), and courts often allow a chapter 11 debtor to sell assets outside the ordinary course of business by private sale when the debtor demonstrates that the sale is permissible pursuant to section 363(b) of the Bankruptcy Code.[7]

---

[4] *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

[5] *See, e.g.*, *Nostas Assocs. v. Costich* (*In re Klein Sleep Prods., Inc.*), 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures Corp.*, 4 F.3d at 1099.

[6] *See In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983) (same).

[7] *See, e.g., In re Loral Space & Commc'ns Ltd.*, Ch. 11 Case No. 03-41710 (RDD) (Bankr. S.D.N.Y. Sep. 30, 2005); *In re Int'l Wire Group, Inc.*, Ch. 11 Case No. 04-11991 (BRL) (Bankr. S.D.N.Y. June 10, 2004); *Palermo v. Pritam Realty, Inc. (In re Pritam Reality, Inc.),* 233 B.R. 619 (D.P.R. 1999) (upholding bankruptcy court's approval of private sale conducted by chapter 11 debtor); *In re Wieboldt Stores, Inc.*, 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale); *In re Condere Corp.*, 228 B.R. 615 (Bankr. S.D. Miss. 1998) (approving private sale of chapter 11 debtor's assets where standards of section 363(b) were met).

20.    LBHI's decision to enter into the Purchase Agreement, provide for the

Waiver and Release in connection therewith, and take all necessary corporate actions in

connection with the 000 LB Stock Sale, represents an appropriate exercise of LBHI'S sound

business judgment and is in the best interests of LBHI, its estate, its creditors, and all other

parties in interest.  As such, the relief requested in this Motion should be granted.  As described

above, an orderly assumption, assignment, and sale of the Loan Facility Agreement and LBHI's

Loan Rights thereunder, pursuant to the Purchase Agreement and in connection with the 000 LB

Stock Sale, is critical to preserving the value of LBHI's interest in the Loan Facility and

maximizing return on account of amounts owed LBHI under the Loan Facility.  The closing of

the 000 LB Loan Facility Sale will bring an immediate recovery of funds into LBHI's estate,

whereas given 000 LB's declining financial condition, the likelihood that it will be able to repay

LBHI amounts advanced pursuant to the Loan Facility Agreement is at significant risk.  The

purchase price for the Loan Facility Agreement and the Loan Rights is $499,999, payable in

immediately available funds by Nomura to LBHI.  In light of the marketing efforts undertaken

by LBHI in connection with the sale of 000 LB, LBHI is confident that the consideration to be

paid by Nomura to LBHI (i) represents the best offer for the Loan Facility Agreement and the

Loan Rights, (ii) is fair and reasonable, and (iii) will provide for a greater recovery for LBHI's

creditors than would be provided by any other practical, available alternative.  The 000 LB Stock

Sale, which is dependent upon the assumption, assignment, and sale of the Loan Facility

Agreement contemplated under the Purchase Agreement will also enable LBHI to limit its

exposure and avoid significant losses and expenditures related to the continued operation of 000

LB's business.  LBHI's decision to assume, assign and sell the Loan Facility Agreement and its

Loan Rights is an integral component of the 000 LB Sales and constitutes an exercise of its sound business judgment and should therefore be approved by the Court.

21.     Moreover, the exigent circumstances surrounding these chapter 11 cases support LBHI's decision to pursue a private sale.  First, given the general instability in the financial and credit markets and unfavorable global business environment, the market for the Loan Facility Agreement and the Loan Rights is extremely limited.  Indeed, the sale of the Loan Facility Agreement and the Loan Rights is conditioned upon the concurrent 000 LB Stock Sale and it would be unlikely that one sale could be accomplished independent of the other. Significant marketing efforts were made in connection with the 000 LB Sales and several potential purchasers were approached in relation thereto.  In addition, the time and efforts associated with marketing the Loan Facility Agreement and the Loan Rights for sale at a public auction would needlessly duplicate the previous efforts made by the Debtors and would far exceed any benefit of a public sale to LBHI, its estate or its creditors.  As discussed above, the consideration to be paid by Nomura under the Purchase Agreement is fair and reasonable and LBHI does not believe that a higher or better offer would be obtained through a public sale of the Loan Facility Agreement, and if any such offers were obtained, the benefit would be negated due to the delay and costs associated with a public auction.

22.     For all these foregoing reasons, the proposed payment of $499,999 in exchange for the assumption, assignment, sale and transfer of the Loan Facility Agreement and the Loan Rights, the Purchase Agreement, and all the other transactions contemplated in the Purchase Agreement are both an appropriate exercise of the LBHI's sound business judgment and in the best interests of LBHI, its estate, and its creditors, and should, therefore, be approved pursuant to sections 365 and 363 of the Bankruptcy Code and Bankruptcy Rule 6004.

**LBHI Has Satisfied the Standards of Section 365 of the Bankruptcy Code**

23.    Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the Court's approval, may … assume any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  When assuming an executory contract, section 365(b) of the Bankruptcy Code requires the debtor to cure any defaults under the contract or provide adequate assurance that it will promptly cure these defaults.  Id. at § 365(b).  Section 365(f)(2) of the Bankruptcy Code provides that a debtor in possession "may assign an executory contract or unexpired lease of the debtor …  if (A) the [debtor] assumes such contract … and (B) adequate assurance of future performance by the assignee of such contract … is provided…."  11 U.S.C. § 365(f)(2).

24.    As noted above, it is a condition to consummation of the 000 LB Loan Facility Sale that the Cure Amount is to be zero or, if an amount greater than zero, LBHI shall have elected, in its sole discretion, to pay such Cure Amount and shall have fully and irrevocably paid to 000 LB the entirety of the Cure Amount without any right to be reimbursed or otherwise compensated for such payment by Nomura or 000 LB.  LBHI submits that there are no defaults under the Loan Facility Agreement and that the Cure Amount is zero.  In the event the Cure Amount is above zero, LBHI, pursuant to the terms of the Purchase Agreement, either will have paid the Cure Amount prior to Closing or will elect not to pay the Cure Amount, in which case the Loan Facility Agreement will not be assumed and assigned to Nomura.  Accordingly, the requirements of section 365(b) of the Bankruptcy Code will have been satisfied.

25.    Under section 365(f)(2), the meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given

"practical, pragmatic construction."[8]  Among other things, adequate assurance may be given by

demonstrating the assignee's financial health and experience in managing the type of enterprise

or property assigned.[9]  Nomura has more than sufficient financial capability to satisfy any

obligations to 000 LB under the Loan Facility Agreement.  Nomura is one of the leading

securities and investment banking firms in Japan and a multinational global finance firm with

offices in 30 countries around the world.  Nomura is a financially stable company with the

requisite knowledge, expertise and financial capability to assume the obligations under the Loan

Facility Agreement and has agreed to perform all obligations required under the Loan Facility

Agreement.  Importantly, 000 LB consents to the assignment and, because of the simultaneous

000 LB Stock Sale, upon assignment of the Loan Facility Agreement, Nomura will own 000 LB.

As such, adequate assurance has been provided and the requirements of section 365(f)(2) of the

Bankruptcy Code have been satisfied.

**Sale of the Loan Facility Agreement and the Loan Rights**
**Free and Clear of Liens, Claims, Encumbrances, and Interests**
**<u>Pursuant to Section 363(f) of the Bankruptcy Code Is Appropriate</u>**

26.    As a condition to consummation of the 000 LB Loan Facility Sale, LBHI

must obtain authority to sell the Loan Facility Agreement and the Loan Rights free and clear of

any and all liens, claims, encumbrances and other interests.  It is appropriate for the Loan

---

[8] *See Carlisle Homes, Inc. v. Arrari* (*In re Carlisle Homes, Inc.*), 103 B.R. 524, 538 (Bankr. D.N.J. 1989) (citation omitted); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.,* 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

[9] *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding; chief determinant of adequate assurance is whether rent will be paid).

Facility Agreement and the Loan Rights to be sold to Nomura free and clear of liens, claims,

encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code, with any

such liens, claims, encumbrances or other interests to attach to the proceeds of the 000 LB Loan

Facility Sale.[10]

27.     Section 363(f) of the Bankruptcy Code provides,

> The trustee may sell property under subsection (b) or (c) of this section free and
> clear of any interest in such property of an entity other than the estate, only if—
> (1) applicable nonbankruptcy law permits sale of such property free and
> clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be
> sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to
> accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Because section 363(f) is stated in the disjunctive, when selling property of

the estate, it is only necessary to meet one of the five conditions of that section.

28.     LBHI is not aware of any liens, claims, encumbrances or other interests

held by any party in respect of the Loan Facility Agreement.  To the extent that the Loan Facility

Agreement is subject to a valid interest, the Court should authorize the sale of the Loan Facility

Agreement free and clear of any and all liens, claims, encumbrances and other interests with any

of the same to be transferred and attached to the net proceeds of the 000 LB Loan Facility Sale,

with the same validity and priority that such liens, claims, encumbrances and other interests had

---

[10] *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been
recognized that when a debtor's assets are disposed of free and clear of third-party interests, the
third party is adequately protected if his interest is assertable against the proceeds of the
disposition.); *Circus Time, Inc. v. Oxford Bank & Trust (In re Circus Time, Inc.)*, 5 B.R. 1, 8
(Bankr. D. Me. 1979) (finding the court's power to sell property free and clear of liens has long
been recognized); *see also In re Riverside Inv. P'ship*, 674 F.2d 634, 640 (7th Cir. 1982)
("Generally, in a 'free and clear' sale, the liens are impressed on the proceeds of the sale and
discharged at the time of sale.").

against the Loan Facility Agreement.  As any party that may hold such an interest under the Loan

Facility Agreement (of which LBHI is unaware) could be compelled to accept a money

satisfaction of such interest, the sale of the Loan Facility Agreement free and clear of liens,

claims, encumbrances and other interests will satisfy the statutory prerequisites of section 363(f)

of the Bankruptcy Code.

### Nomura Is Entitled to Protection as a Good Faith Purchaser

29.    Section 363(m) of the Bankruptcy Code protects the sale of a debtor's

property to a good faith purchaser.  Specifically, it provides:

> The reversal or modification on appeal of an authorization under subsection (b) or
> (c) of this section of a sale or lease of property does not affect the validity of a
> sale or lease under such authorization to an entity that purchased or leased such
> property in good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were stayed pending
> appeal.

11 U.S.C. § 363(m).

30.    Although the Bankruptcy Code does not define the meaning of "good-faith

purchaser," most courts have adopted a traditional equitable definition:  "one who purchases the

assets for value, in good faith and without notice of adverse claims."[11]   The Second Circuit has

stated:

> Good faith of a purchaser is shown by the integrity of his conduct during the
> course of the sale proceedings; where there is a lack of such integrity, a good faith
> finding may not be made.  A purchaser's good faith is lost by 'fraud, collusion
> between the purchaser and other bidders or the trustee, or an attempt to take
> grossly unfair advantage of other bidders.'[12]

31.    The terms and conditions of the Purchase Agreement were negotiated by

LBHI and Nomura at arms' length and in good faith.  Each party was represented by

---

[11] *See, e.g.*, *Licensing by Paolo, Inc. v. Sinatra* (*In re Gucci*), 126 F.3d 380, 390 (2d Cir. 1997).

[12] *Id.* (internal citations omitted).

sophisticated counsel.  Nomura has not, in connection with the 000 LB Sales, engaged in any conduct that demonstrates a lack of good faith and Nomura is not an "insider" or "affiliate" of any of the Debtors (within the meaning of the Bankruptcy Code).  Accordingly, Nomura is entitled to the protections of section 363(m) of the Bankruptcy Code.

### The Waiver and Release Meets the Legal Standard Established Under Rule 9019 and Is in the Best Interests of the Estate

32.    LBHI submits that the proposed Waiver and Release is in LBHI's best interests.  The release of any prospective claims LBHI may have against 000 LB is an integral aspect of the Purchase Agreement and the 000 LB Sales.

33.    Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a).  This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate"; the decision to accept or reject a compromise or settlement is within the sound discretion of the Court.[13]  The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness."[14]

34.    Because LBHI does not believe that it has any claims against 000 LB for any amounts owed by 000 LB to LBHI, other than those arising under the Loan Facility Agreement, and in order to facilitate the 000 LB Sales, LBHI is willing to provide the requested Waiver and Release.  Under the circumstances, providing the Waiver and Release is well within

---

[13] *Vaughn v. Drexel Burnham Lambert Group, Inc.* (*In re Drexel Burnham Lambert Group, Inc.*) 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

[14] *Id.*

the range of reasonableness and is in the best interests of LBHI, its estate, its creditors, and all parties in interest.

### Relief Under Bankruptcy Rule 6004(g) and 6006(d)

35.     Bankruptcy Rule 6004(g) provides that an "order authorizing the use, sale or lease of property … is stayed until expiration of 10 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(g).  Bankruptcy Rule 6006(d) similarly provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise."  FED. R. BANKR. P. 6006(d).  It is important to Nomura that the transactions being authorized be consummated as promptly as possible.  Consummating the 000 LB Loan Facility Sale as soon as practicable will ensure that the 000 LB Stock Sale, which must be consummated concurrently with the 000 LB Loan Facility Sale, is also consummated promptly and is in the best interests of LBHI and its estate.  It is therefore hereby requested that any order authorizing and approving the assumption, assignment, and sale of the Loan Facility Agreement and the Loan Rights to Nomura be effective immediately by providing that the respective 10-day stay periods under Bankruptcy Rules 6004(g) and 6006(d) are waived.

### Notice

36.     No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on September 22, 2008 governing case management and administrative procedures for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the attorneys for the Debtors' postpetition lenders; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Attorney for the

Southern District of New York; (vii) Nomura; (viii) any party with an interest in the Purchase

Agreement, and (ix) all parties who have requested notice in these chapter 11 cases.  The Debtors

submit that no other or further notice need be provided.

37.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order

approving the relief requested herein and  granting such other and further relief as is just.

Dated: November 25, 2008
       New York, New York

/s/ Lori R. Fife
Lori R. Fife
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession