**<u>Exhibit B</u>**

**Purchase Agreement**

## LOAN ASSIGNMENT AGREEMENT

ASSIGNMENT AND ASSUMPTION AGREEMENT, dated 24 November, 2008 (this "*Assignment Agreement*"), between **Lehman Brothers Holdings Inc.**, a Delaware corporation acting through its United Kingdom branch, whose registered United Kingdom branch address is 25 Bank Street, London, E14 5LE, United Kingdom ("*LBHI*"), **Nomura Europe Holdings Plc**, a company incorporated in England and Wales with registration number 01550505 and having its registered office at 1 St Martin's-Le-Grand, London, EC1A 4NP, United Kingdom (the "*Purchaser*"), and OOO "Lehman Brothers", a company incorporated in the Russian Federation (the "*Company*").

RECITALS

WHEREAS, LBHI and the Company have entered into a Loan Facility Agreement dated 25 September 2007 (the "*Loan Facility Agreement*"), a copy of which is attached hereto as Exhibit A, pursuant to which LBHI made available to the Company a loan facility;

WHEREAS, concurrently with the execution of this Assignment Agreement, and as a condition and inducement to each party's willingness to enter into this Assignment Agreement, LB Russia Holdings Inc. and the Purchaser have entered into an agreement for the sale and purchase of a 100% participation interest (the "*Participation Interest*") in the Company (the "*Sale and Purchase Agreement*"), pursuant to which the Purchaser has agreed to purchase the Participation Interest from the Seller for US$1.00;

WHEREAS, in connection with the terms of the Sale and Purchase Agreement, the parties have agreed to enter into this Assignment Agreement, providing for, simultaneously with the consummation of the transactions contemplated by the Sale and Purchase Agreement, (a) the sale and assignment (the "*Assignment*") from LBHI to the Purchaser of all of LBHI's rights, title and interest in, over and to, and all liabilities and obligations of LBHI under, the Loan Facility Agreement and all moneys which are now or hereafter become due or owing (whether by way of principal, interest or otherwise) under or pursuant to the Loan Facility Agreement (the "*Assigned Loan Rights*"), (b) the payment by the Purchaser to LBHI of $499,999 in consideration of and upon the occurrence of the Assignment (the "*Assignment Price*"), and (c) the purchase and assumption by the Purchaser of all Assigned Loan Rights;

NOW THEREFORE THIS AGREEMENT WITNESSES that in consideration of the mutual covenants and agreements set forth in this Assignment Agreement, the parties hereto agree as follows:

1.    Assignment.  With effect from the satisfaction of the Conditions (as defined in clause 4 below), LBHI hereby sells, assigns, transfers and conveys absolutely and unconditionally the Loan Facility Agreement and the Assigned Loan Rights to the Purchaser free and clear of all, liens, claims, encumbrances and other interests.

2.    <u>Acceptance and Waiver</u>.    With effect from the satisfaction of the Conditions (as defined in clause 4 below), and in accordance with and subject to the terms of this Assignment Agreement, the Purchaser hereby:

(a)    purchases and accepts the assignment, transfer and conveyance of the Loan Agreement and the Assigned Loan Rights from LBHI; and

(b)    unconditionally and irrevocably assumes, undertakes and agrees, subject to valid claims and defences, to pay, satisfy, perform and discharge in full, as and when due, and release and discharge LBHI and its successors and assigns completely and forever from, all obligations and liabilities of any kind arising out of the Loan Facility Agreement.

3.    <u>Obligations upon satisfaction of Conditions</u>.    Immediately upon the satisfaction of the Conditions (as defined in clause 4 below):

(a)    LBHI and the Purchaser shall enter into an assignment in the form of <u>Exhibit B</u>; and

(b)    the Purchaser shall pay the Assignment Price to LBHI by electronic transfer of funds to such bank account of LBHI as LBHI notifies the Purchaser at least one Business Day prior to the date of Closing (as defined in the Sale and Purchase Agreement).

4.    <u>Conditions to Closing</u>.    The obligations of the parties under clauses 1, 2 and 3 above shall be conditional upon the following conditions (the "***Conditions***") having been fulfilled (or waived in accordance with this clause 4):

(a)    the Court Order contemplated by clause 5 below shall have been issued by the Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***");

(b)    the "cure" amount established by the Bankruptcy Court in connection with the Assignment ("***Cure Amount***") shall be zero, or if the Cure Amount is greater than zero, LBHI shall have elected in its sole discretion to pay the Cure Amount, and shall have fully and irrevocably paid to the Company the entirety of the Cure Amount, without any right to be reimbursed or otherwise compensated for such payment by the Purchaser or the Company; and

(c)    Closing (as defined in the Sale and Purchase Agreement) shall have occurred.

For the avoidance of doubt, if the Conditions set out in paragraphs (a) and (b) above have been fulfilled (or waived in accordance with this clause 4), then the parties shall be required to perform their obligations under clauses 1, 2 and 3 above immediately after Closing (as defined in the Sale and Purchase Agreement) occurs.

LBHI shall give written notice to the Purchaser of the satisfaction of the Condition set out in paragraph (a) above promptly after LBHI becomes aware of the satisfaction of such Condition (and in any event within one (1) Business Day of it becoming so aware) and shall provide such evidence to the Purchaser as the Purchaser reasonably requests in order to confirm the satisfaction or non-satisfaction of such Condition.

If the Conditions set out in paragraphs (a) and (b) above have not been fulfilled (or waived in accordance with this clause 4) by 30 December 2008 (or such later date as LBHI and the Purchaser agree in writing), then either LBHI or the Purchaser may terminate this Agreement by written notice to the other party.

If the Sale and Purchase Agreement is terminated in accordance with its terms, then this Assignment Agreement shall automatically terminate.

5.      Bankruptcy Court approval.  LBHI undertakes (at its own cost) to use its reasonable endeavours to procure that the Conditions set out in clause 4(a) and 4(b) above are satisfied as soon as reasonably practicable after the date of this Assignment Agreement, including, without limitation, the use of its reasonable endeavours to file with the Bankruptcy Court, not later than five Business Days after the date of this Assignment Agreement, a motion seeking entry of an order, in form and substance reasonably acceptable to the Purchaser (the *Court Order*), (i) approving pursuant to Sections 363 and 365 of the United States Bankruptcy Code, the assumption by LBHI of the Loan Facility Agreement and the sale and assignment by LBHI of the Loan Facility Agreement and the Assigned Loan Rights pursuant to, and in accordance with the terms of, this Assignment Agreement, and (ii) approving all of the corporate actions of LBHI in connection with the sale of the Participation Interest, including without limitation, appointing authorized persons to act on behalf of LBHI as managing member of LB Russia Holdings LLC, a Delaware limited liability company.  Such motion shall be provided to the Purchaser prior to filing.  Thereafter, LBHI shall use its reasonable endeavours to: (i) cause such Court Order to be issued and entered, and (ii) timely serve a copy of the notice setting forth the hearing date for approval of such Court Order upon any and all parties in interest required to receive notice under all applicable laws, rules and regulations and orders of the Bankruptcy Court prior to the hearing on such motion.

6.      LBHI Covenants.  From the date of this Assignment Agreement until the date of satisfaction of the Conditions, LBHI shall not without the prior written consent of the Purchaser:

(a)      make any demands on the Company for payment of any amounts outstanding under the Loan Facility Agreement or take any other steps to enforce its rights under the Loan Facility Agreement; or

(b)      sell, assign, transfer or convey the Assigned Loan Rights or any interest therein or create or suffer to exist any liens, claims, encumbrances or other interests upon or with respect to the Assigned Loan Rights.

7. <u>Warranties</u>.

(a)    <u>Company Warranties</u>.  The Company warrants to LBHI that as of the date of this Assignment Agreement there is not and, at Closing, there will not be, any default by LBHI under, or other amounts payable by LBHI in respect of, the Loan Facility Agreement, with respect to which any Cure Amounts are due.

(b)    <u>LBHI Warranties.</u>    LBHI warrants to the Purchaser that, subject to it obtaining the Court Order contemplated by clause 5 above:

(i)    LBHI has obtained all corporate authorisations required to empower it to enter into and perform its obligations under this Assignment Agreement where failure to obtain them would adversely affect to a material extent its ability to enter into or perform its obligations under this Assignment Agreement; and

(ii)    entry into and performance by LBHI of this Assignment Agreement will not breach any provision of its constitutional documents.

8.    <u>Variations</u>.  No amendment of this Assignment Agreement shall be valid unless it is in writing and duly executed by or on behalf of the parties.

9.    <u>Notices</u>.  All notices and other communications under this Assignment Agreement shall be in writing and delivered by hand, fax, registered post or courier using an internationally recognised courier company to the address set out below (or to such other address as is notified to the other party in accordance with this clause 9):

**LBHI:**

Address:       Lehman Brothers Holdings, Inc.
               1271 Avenue of the Americas,
               New York, New York 10020

Fax:

For the attention of:    General Counsel

with a copy to:

Weil, Gotshal & Manges
One South Place
London, EC2M 2WG

Fax:          +44 20 903 0990

For the attention of:    Michael Francies
                         Lori R. Fife

**The Purchaser:**

Address:        1 St Martin's-Le-Grand, London, EC1A 4NP

Fax:

For the attention of:    Mark Chapman (General Counsel)

**Company:**

Address:        18 Krasnopresnenskaya nab.
                Block C, 21 Floor,
                Moscow 123317
                Russian Federation

Fax:        +7 495 663 6001

For the attention of:    General Director

with a copy to:

Weil, Gotshal & Manges
One South Place
London, EC2M 2WG

Fax:        +44 20 7903 0990

For the attention of:    Michael Francies
                        Lori R. Fife

A notice or other communication under this Assignment Agreement shall be effective upon receipt and shall be deemed to have been received (i) at the time of delivery, if delivered by hand, registered post or courier or (ii) at the time of transmission if delivered by fax provided that in either case, where delivery occurs outside Working Hours, notice shall be deemed to have been received at the start of Working Hours on the next following Business Day.

10.    Costs. Each party shall be responsible for its own costs, charges and other expenses incurred in connection with this Assignment Agreement.

11.    Parties in Interest. This Assignment Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

12.    Further Assurance. Each party at its own cost shall (and shall procure that its Affiliates (except, in the case of LBHI or the Company, their respective Specified

Affiliates) shall) execute all such documents and take such steps and do all such acts or things as may reasonably be required for the purpose of giving effect to the provisions of this Assignment Agreement and in particular to ensure that its terms are binding on or enforceable against each party in any relevant jurisdiction and to ensure that any bankruptcy court approvals required to effect the assignment of the Assigned Loan Rights are obtained.

13.    Counterparts.  This Assignment Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, and all of which together shall constitute one and the same instrument.

14.    Governing Law.  This Assignment Agreement shall be governed by, and interpreted in accordance with, English law. The courts of England are to have exclusive jurisdiction to settle any disputes which may arise in connection with the creation, validity, effect, interpretation or performance of, or the legal relationships established by this Assignment Agreement. For such purposes each party irrevocably submits to the jurisdiction of the English courts, waives any objections to the jurisdiction of those courts and irrevocably agrees that a judgment or order of the English courts in connection with this Assignment Agreement is conclusive and binding on it and may be enforced against it in the courts of any other jurisdiction. Each of LBHI and the Company shall at all times maintain an agent for service of process and any other documents in proceedings in England or any other proceedings in connection with this Assignment Agreement. Such agent shall be Law Debenture Corporate Services Limited, Fifth Floor, 100 Wood Street, London EC2V 7EX, and any claim form, judgment or other notice of legal process shall be sufficiently served on LBHI or the Company, as the case may be, if delivered to such agent at its address for the time being. Each of LBHI and the Company irrevocably undertakes not to revoke the authority of this agent and if, for any reason, the Purchaser requests LBHI or the Company, as the case may be, to do so it shall promptly appoint another such agent with an address in England and advise the Purchaser. If, following such a request, LBHI or the Company, as the case may be, fails to appoint another agent, the Purchaser shall be entitled to appoint one on behalf of LBHI or the Company, as the case may be, at the expense of LBHI or the Company, as the case may be.

15.    Definitions.  Capitalised terms used but not defined herein shall have the meanings ascribed to such terms in the Sale and Purchase Agreement.

16.    Whole Agreement.  This Assignment Agreement, the Sale and Purchase Agreement, and the schedules and exhibits hereto and thereto, set out the whole agreement between the parties and their respective Affiliates in respect of the sale and purchase of the Participation Interest and the sale and assignment of the Loan Facility Agreement and the Assigned Loan Rights, and supersedes any prior agreement (whether oral or written) relating to the Transaction. It is agreed that:

(a)    no party shall have any claim or remedy in respect of any statement, representation, warranty or undertaking made by or on behalf of the other party

(or any of its Connected Persons) in relation to the Transaction which is not expressly set out in this Assignment Agreement, the Sale and Purchase Agreement, or the schedules and exhibits hereto and thereto;

(b)     any terms or conditions implied by law in any jurisdiction in relation to the Transaction are excluded to the fullest extent permitted by law or, if incapable of exclusion, any right, or remedies in relation to them are irrevocably waived;

(c)     the only right or remedy of a party in relation to any provision of this Assignment Agreement shall be for breach of this Agreement; and

(d)     except for any liability in respect of a breach of this Assignment Agreement, the Sale and Purchase Agreement, or the schedules and exhibits hereto and thereto, neither party (or any of its Connected Persons) shall owe any duty of care or have any liability in tort or otherwise to the other party (or its respective Connected Persons) in relation to the Transaction,

provided that this clause shall not exclude any liability for (or remedy in respect of) fraudulent misrepresentation. Each party agrees to the terms of this clause 16 on its own behalf and as agent for each of its Connected Persons. For the purpose of this clause, *Connected Persons* means (in relation to a party) the officers, employees, agents and advisers of that party or any of its Affiliates.

[signature page follows]

IN WITNESS WHEREOF, the parties hereto have duly executed and delivered this Agreement as of the date first written above.

**LEHMAN BROTHERS HOLDINGS INC.**

By: _____

     Name:

     Title:

**NOMURA EUROPE HOLDINGS PLC**

By: _____

     Name: PAUL SPANSWICK

     Title: DIRECTOR, NEHS

**OOO "LEHMAN BROTHERS"**

By: _____

     Name:

     Title:

IN WITNESS WHEREOF, the parties hereto have duly executed and delivered this Agreement as of the date first written above.

LEHMAN BROTHERS HOLDINGS, INC.

By: _____
Name: BRYAN MARSAL
Title: EXECUTIVE VICE PRESIDENT, CHIEF RESTRUCTURING OFFICER

NOMURA EUROPE HOLDINGS PLC

By: _____
Name:
Title:

OOO "LEHMAN BROTHERS"

By: _____
Name:
Title:

IN WITNESS WHEREOF, the parties hereto have duly executed and delivered this Agreement as of the date first written above.

**LEHMAN BROTHERS HOLDINGS, INC.**

By: _____
     Name:
     Title:

**NOMURA EUROPE HOLDINGS PLC**

By: _____
     Name:
     Title:

**OOO "LEHMAN BROTHERS"**

By: _____
     Name: THOMAS DILLENSEGER
     Title: DIRECTOR

# EXHIBIT A

## Loan Facility Agreement

**Loan Facility Agreement**

**Договор займа**

This Loan Facility Agreement (the "Agreement") was entered into on 25 September 2007 By and Between:

Настоящий Договор займа ("Договор") был заключен 25 сентября 2007 г. между:

Lehman Brothers Holdings Inc, UK Branch (the "Lender"), whose registered branch address is 25 Bank Street, London, E14 5LE

Lehman Brothers Holdings Inc, английское отделение ("Кредитор"), зарегистрированное по адресу: 25 Bank Street, Лондон, E14 5LE

and OOO Lehman Brothers (the "Borrower"), whose registered address is 121099, Russia, Moscow, Smolenskaya square, bld.3, office 1409.

и ООО «Лиман Бразерс» ("Заемщик"), зарегистрированное по адресу: 121099, Россия, Москва, Смоленская площадь, 3, офис 1409.

hereinafter separately or jointly referred to as the "Party" or the "Parties" respectively.

далее по отдельности или совместно именуемые "Сторона" или "Стороны" соответственно.

It is hereby agreed between the Parties as follows:

Стороны настоящим договорились о нижеследующем:

## 1 Amount

## 1 Сумма

From the date of this Agreement, the Lender will make available to the Borrower an uncommitted senior facility (the "Facility") and will, from time to time and as and when requested in accordance with the terms of this Agreement, make advances to the Borrower pursuant to the Facility (such advances being hereinafter referred to as "Individual Advances"). The aggregate quantum of Individual Advances shall initially be limited to US $ 22,500,000 (Twenty two million five hundred thousand dollars) or the equivalent in other currencies but can be varied by agreement between the Parties in writing. Additional credit facilities may be negotiated at a future date.

С даты настоящего Договора Кредитор предоставит Заемщику заем без определения окончательной суммы займа ("Заем") и будет периодически при поступлении запросов в соответствии с условиями настоящего Договора предоставлять Заемщику денежные средства в счет Займа (такие выплаты далее именуются "Отдельные выплаты"). Общая сумма Отдельных выплат первоначально ограничивается суммой в размере 22,500,000 (Двадцать два миллиона пятьсот тысяч) долларов США или эквивалентом этой суммы в других валютах, но может быть изменена по соглашению Сторон в письменной форме. Дополнительные выплаты могут быть согласованы в будущем.

Particular amounts of Individual Advances and any specific terms and conditions applicable thereto shall be agreed by the Parties in writing by way of signing loan drawdown request agreements in the form set out in the Appendix (hereinafter referred to as

Конкретные суммы Отдельных выплат и любые конкретные применимые к ним условия подлежат согласованию Сторонами в письменной форме путем подписания соглашений-запросов о выборке займа по форме, указанной в

"Loan Drawdown Request Agreements"). The Lender shall acknowledge receipt of the Loan Drawdown Request no later than 1 business day prior to the drawdown date as detailed in the Loan Drawdown Request.

The Borrower shall have an obligation to repay the Individual Advances received and interest accrued thereon in accordance with terms and conditions of this Agreement and respective Loan Drawdown Request Agreements which shall be agreed between the Parties from time to time.

## 2    Purpose

Advances made under the Facility shall be used by the Borrower for the purposes of financing its operations in Russia.

## 3    Term

Unless otherwise agreed by the Parties, the Agreement will be effective from 25 September 2007 and will be valid for a period of 3 years. The maturity of Individual Advances shall be agreed by the Parties and stated in the relevant Loan Drawdown Request Agreements.

## 4    Repayment on Demand

Individual Advances made under the Facility, together with accrued interest thereon, are repayable upon demand within 1 business day of written notification by the Lender, or as otherwise agreed by the Parties.

## 5    Interest

Interest shall accrue on the unpaid principal balance of each Individual Advance made under the Facility.

---

Приложении (далее - "Соглашения-запросы о выборке займа"). Кредитор подтверждает получение Запроса о выборке займа не позднее, чем за 1 рабочий день до даты выборки, в порядке, установленном в Запросе о выборке займа.

Заемщик обязан возвратить полученные Отдельные выплаты и начисленные на них проценты в соответствии с условиями настоящего Договора и соответствующих Соглашений-запросов о выборке займа, которые периодически согласовываются между Сторонами.

## Цель

Предоставленные по Договору денежные средства используются Заемщиком для целей финансирования его деятельности в России.

## Срок действия

Если только Сторонами не будет согласовано иное, Договор вступает в силу с 25 сентября 2007 г. и действует в течение 3 (трех) лет. Срок погашения Отдельных выплат согласуется Сторонами и указывается в соответствующих Соглашениях-запросах о выборке займа.

## Погашение по требованию

Осуществленные по Договору Отдельные выплаты вместе с начисленными на их сумму процентами подлежат погашению по первому требованию в течение 1 рабочего дня с даты письменного уведомления Кредитором или в ином порядке, согласованном Сторонами.

## Проценты

Проценты начисляются на непогашенный остаток основной суммы каждой Отдельной выплаты,

Unless otherwise agreed by the Parties, interest shall accrue weekly at LIBOR. Interest that is creditable may or may not be immediately due and payable at the option of the Lender. If the Borrower is required by Russian law to make any withholding or deduction in respect of or on account of tax from payments of interest, the Borrower shall be entitled to make such withholding or deduction and shall account to the Russian authorities promptly and within the relevant time limits for the amount so withheld or deducted. Further, the Borrower shall issue appropriate documentation to the Lender specifying the amount of tax withheld or deducted.

осуществленной по Договору. Если только Стороны не договорятся об ином, проценты начисляются еженедельно по ставке LIBOR. Начисленные проценты необязательно подлежат немедленной выплате по усмотрению Кредитора. Если Заемщик обязан в соответствии с российским законодательством производить любые удержания или вычеты в отношении или в счет налога из сумм выплат процентов, Заемщик вправе произвести такое удержание или вычет и обязан своевременно отчитываться перед российскими органами власти в соответствующие сроки за удержанную или вычтенную таким образом сумму. Кроме того, Заемщик выдает соответствующую документацию Кредитору с указанием суммы удержанного или вычтенного налога.

**6    Currency**

Individual Advances may be denominated in any currency as agreed by the Parties. Unless otherwise is specified, Individual Advances will be provided and repaid in US Dollars.

**6    Валюта**

Отдельные выплаты могут быть выражены в любой валюте, согласованной Сторонами. Если не указано иное, Отдельные выплаты предоставляются и погашаются в долларах США.

**7    Transfer of Funds**

Each Individual Advance made under the Facility shall be credited to such bank account(s) as may be agreed from time to time by the parties in Loan Drawdown Request Agreements.

**7    Перевод средств**

Каждая Отдельная выплата, осуществляемая по Кредиту, зачисляется на банковский(-е) счет(а), который(-е) может(-гут) быть согласован(ы) периодически сторонами в Соглашениях-запросах о выборке кредита.

**8    Default**

The total outstanding principal sum of all Individual Advances made under the Facility together with accrued interest and any other charges due by the Borrower to the Lender under this Agreement shall be due and payable, immediately upon the Lender providing notice to the Borrower following the

**8    Неисполнение обязательств**

Общая непогашенная основная сумма всех Отдельных выплат, осуществленных по Договору, вместе с начисленными процентами и любыми другими платежами, причитающимися с Заемщика в пользу Кредитора, подлежат погашению незамедлительно после

occurrence of any of the following events of default:

(a)   If the Borrower shall default in the due payment of interest or any other amount payable hereunder;

(b)   If the Borrower becomes or is declared by any competent authority to be insolvent, or admits in writing its inability to pay its debt as they fall due, or becomes subject to or applies for any bankruptcy proceedings or offers a composition to one or more of its creditors;

(c)   If any third parties takes possession or a receiver or judicial administrator or trustee is appointed on the whole or any substantial part of the undertaking, property or assets of the Borrower; or

(d)   If an order is made or an effective resolution is passed for the winding up of the Borrower, except for the purposes of a solvent reconstruction with prior consent in writing of the Lender.

**9   Notices**

The Borrower shall notify the Lender

---

направления Кредитором уведомления Заемщику после наступления любого из следующих случаев неисполнения обязательств:

(a)   Если Заемщик не исполнит обязательство по своевременной выплате процентов или любой другой суммы, подлежащей уплате по настоящему Договору;

(b)   Если Заемщик станет или будет признан любым компетентным органом власти несостоятельным либо признает в письменной форме свою неспособность погашать свою задолженность в сроки ее погашения, либо станет подлежать или подаст заявление о начале любых процедур банкротства либо предложит заключить компромиссное соглашение одному или более из своих кредиторов;

(c)   Если любые третьи лица получат либо судебный распорядитель или управляющий либо доверительный управляющий будет назначен в отношении всех или любой значительной части предприятий, недвижимости или других активов Заемщика; или

(d)   Если будет вынесен приказ или вступит в силу решение о ликвидации Заемщика, за исключением случаев реорганизации для сохранения платежеспособности с предварительного письменного согласия Кредитора.

**9   Уведомления**

Заемщик   незамедлительно   в

forthwith in writing of any occurrence of an event of default or any event which, with the giving of notice and/or lapse of time, might become an event of default.

письменной форме уведомляет Кредитора о наступлении любого случая неисполнения обязательств или любого случая, который после направления уведомления и/или с истечением времени может стать случаем неисполнения обязательств.

**10    Indemnity**

In the event that all advances made under the Facility should become immediately due and payable in accordance with Article 8 hereof, the Borrower shall indemnify the Lender for all losses, costs, legal expenses or other charges and expenses incurred and to be incurred by the Lender in accordance to execution of this Agreement and respective Loan Drawdown Request agreement.

**10    Возмещение**

В случае, если все выплаты, осуществленные по Договору, станут подлежать немедленного погашению в соответствии со Статьей 8 Договора, Заемщик обязуется возместить Кредитору все убытки, затраты, расходы на оплату юридических услуг или другие платежи и расходы, понесенные или которые понесет Кредитор в результате подписания настоящего Договора и соответствующего Соглашения-запроса о выборке кредита.

**11    Third Party Rights**

A person who is not a party to this Agreement has not rights under the Contracts (Rights of Third Parties) Act 1999 to enforce any term of this Agreement or enjoy any benefit under this Agreement.

**11    Права третьих лиц**

Лицо, не являющееся стороной настоящего Договора, не имеет прав в соответствии с Законом о контрактах (правах третьих лиц) от 1999 г. на принудительное исполнение любого положения настоящего Договора или получать любую выгоду из настоящего Договора.

**12    Invalidity**

In the event that any one or more provisions contained in this Agreement is held to be invalid, illegal or unenforceable in whole or in part in any respect under any enactment or rule of law, such provision or part shall to that extent be deemed not to form part of this Agreement, but the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

**12    Недействительность**

В случае, если одно или более положений настоящего Договора будут признаны недействительными, незаконными или не подлежащими принудительному исполнению полностью или частично в любом отношении в соответствии с любым правовым актом, такое положение или его часть в этой мере считается не являющейся частью настоящего Договора, при этом юридическая действительность, законность и применимость остальных положений Договора никоим образом этим не

затрагиваются и не ущемляются.

## 13    Termination

The Borrower may prepay any Individual Advance under the Facility to the Lender in full or in part without the Lender's prior approval of the amounts and terms of such prepayments. The Lender reserves the right to mark to market any such prepayment and credit/charge the difference to the Borrower accordingly.

## 14    Law

This Agreement shall be governed by and construed in accordance with English law and any dispute may only be settled before the courts of England, and each of the Parties irrevocably consents to the jurisdiction of such courts in respect of any such action, suit or proceeding.

## 15    Language

In case on inconsistencies between Russian and English versions of this Agreement, an English version prevails.

Executed by the Lender acting through or by

Dave Rushton

Stirling Fielding

Executed by the Borrower acting through or by General Director Volkova

## 13    Прекращение

Заемщик вправе досрочно погасить любую Отдельную выплату по Кредиту Кредитору в полном объеме или частично без предварительного одобрения Кредитором сумм и условий такого досрочного погашения. Кредитор оставляет за собой право переоценивать по рыночной стоимости любое такое досрочное погашение и отнести разницу на счет Заемщика.

## 14    Применимое право

Настоящий Договор регулируется и подлежит толкованию в соответствии с английским законодательством и любой спор может разрешаться только в судах Англии, при этом каждая из Сторон безотзывно признает юрисдикцию таких судов в отношении любого такого иска или разбирательства.

## 15    Язык

В случае разночтений между версиями Договора на русском и английском языке, версия Договора на английском языке должна иметь приоритетное значение.

Подписано Кредитором в лице

Дэйв Раштон (Dave Rushton)

Стирлинг Филдинг (Stirling Fielding)

Подписано Заемщиком в лице Генерального директора Волковой Ирины Андреевны

| APPENDIX | ПРИЛОЖЕНИЕ |
|---|---|

### AGREED FORM

From: OOO Lehman Brothers

To: Lehman Brothers Holdings Inc., UK Branch

Date:

Dear Sirs,

### СОГЛАСОВАННАЯ ФОРМА

От: ООО Лиман Бразерс

Кому: Lehman Brothers Holdings Inc., английское отделение

Дата:

Уважаемые господа,

**Loan Drawdown Request Agreement**

1    We refer to the Loan Facility Agreement dated 25 September 2007 between OOO Lehman Brothers and yourselves (the "Facility Agreement"). This is a Loan Drawdown Request Agreement. Terms used herein shall have the same meaning as in the Facility Agreement.

2    We wish to draw an Individual Advance on the following terms:

AMOUNT OF THE INDIVIDUAL ADVANCE:

DRAWDOWN DATE:

PURPOSE OF THE INDIVIDUAL ADVANCE:

TERM OF THE INDIVIDUAL ADVANCE:

INTEREST PAYMENT DATE:

OTHER TERMS AND CONDITIONS APPLICABLE TO THE ADVANCE (IF ANY):

3    We confirm that, unless otherwise specified above, terms set out in the Facility Agreements shall apply.

4    The Individual Advance should be credited to:

ZAO KB Citibank Moscow;

SWIFT address CITIRUMX

Correspondent Bank

**Соглашение-запрос о выборке займа**

1    Мы ссылаемся на Договор займа от 25 сентября 2007 между ООО «Лиман Бразерс» и Вами ("Договор займа"). Настоящий документ является Соглашением-запросом о выборке займа. Термины в настоящем письме имеют такое же значение как и в Договоре займа.

2    Мы желаем осуществить выборку Отдельной выплаты на следующих условиях:

СУММА ОТДЕЛЬНОЙ ВЫБОРКИ:

ДАТА ВЫБОРКИ:

ЦЕЛЬ ОТДЕЛЬНОЙ ВЫБОРКИ:

СРОК ОТДЕЛЬНОЙ ВЫБОРКИ:

ДАТА ВЫПЛАТЫ ПРОЦЕНТОВ:

ДРУГИЕ УСЛОВИЯ, ПРИМЕНИМЫЕ К ВЫПЛАТЕ (ЕСЛИ ИМЕЮТСЯ):

3    Мы подтверждаем, что если не указано иное, применяются положения Договора займа.

4    Отдельная выплата должна быть зачислена на

ЗАО КБ Ситибанк Москва;

SWIFT адрес CITIRUMX

Корреспондентский банк

Citibank N.A., New York

SWIFT address CITIUS33

Correspondent account number

36087478

5  Please acknowledge the receipt of this request and your agreement with the terms set out herein, by signing the enclosed copy and returning it to us.

Yours faithfully,

..................................

on behalf of OOO Lehman Brothers

Yours faithfully

..................................

on behalf of Lehman Brothers Holdings Inc., UK Branch

---

Citibank N.A., New York

SWIFT address CITIUS33

Корреспондентский счет

36087478

5  Пожалуйста, подтвердите получение настоящего запроса и Ваше согласие с его условиями путем подписания и возвращения нам прилагаемой копии

С уважением,

..................................

От имени ООО «Лиман Бразерс»

С уважением,

..................................

От имени Лиман Бразерс Холдингс Инк., английское отделение

| APPENDIX | ПРИЛОЖЕНИЕ |
|---|---|
| **AGREED FORM** | **СОГЛАСОВАННАЯ ФОРМА** |
| From: OOO Lehman Brothers | От: ООО Лиман Бразерс |
| To: Lehman Brothers Holdings Inc., UK Branch | Кому: Lehman Brothers Holdings Inc., английское отделение |
| Date: 03.10.07 | Дата: 03.10.07 |
| Dear Sirs, | Уважаемые господа, |

**Loan Drawdown Request Agreement**

1  We refer to the Loan Facility Agreement dated 21 September 2007 between OOO Lehman Brothers and yourselves (the "Facility Agreement"). This is a Loan Drawdown Request Agreement. Terms used herein shall have the same meaning as in the Facility Agreement.

2  We wish to draw an Individual Advance on the following terms:

AMOUNT OF THE INDIVIDUAL ADVANCE: 1,710,000 (One million seventy one thousand) USD

DRAWDOWN DATE: 04.10.07

PURPOSE OF THE INDIVIDUAL ADVANCE: funding of business activity in accordance with Loan Facility Agreement

TERM OF THE INDIVIDUAL ADVANCE:

25.09.10 or earlier if agreed between Parties

INTEREST PAYMENT DATE: 25.09.10

OTHER TERMS AND CONDITIONS

**Соглашение-запрос о выборке займа**

1  Мы ссылаемся на Договор займа от 21 сентября 2007 между ООО «Лиман Бразерс» и Вами ("Договор займа"). Настоящий документ является Соглашением-запросом о выборке займа. Термины в настоящем письме имеют такое же значение как и в Договоре займа.

2  Мы желаем осуществить выборку Отдельной выплаты на следующих условиях:

СУММА ОТДЕЛЬНОЙ ВЫБОРКИ:

1710000 (Один миллион семьсот десять тысяч) долларов США

ДАТА ВЫБОРКИ: 04.10.07

ЦЕЛЬ ОТДЕЛЬНОЙ ВЫБОРКИ: финансирование деятельности компании в соответствии с Договором займа

СРОК ОТДЕЛЬНОЙ ВЫБОРКИ: 25.09.10 или ранее во взаимному соглашению сторон

ДАТА ВЫПЛАТЫ ПРОЦЕНТОВ: 25.09.10

ДРУГИЕ УСЛОВИЯ, ПРИМЕНИМЫЕ

| APPLICABLE TO THE ADVANCE (IF ANY): | К ВЫПЛАТЕ (ЕСЛИ ИМЕЮТСЯ): |
|---|---|
| **3** We confirm that, unless otherwise specified above, terms set out in the Facility Agreements shall apply. | **3** Мы подтверждаем, что если не указано иное, применяются положения Договора займа. |
| **4** The individual Advance should be credited to: | **4** Отдельная выплата должна быть зачислена на |
| ZAO KB Citibank Moscow; | ЗАО КБ Ситибанк Москва; |
| SWIFT address CITIRUMX | SWIFT адрес CITIRUMX |
| Correspondent Bank | Корреспондентский банк |
| Citibank N.A., New York | Citibank N.A., New York |
| SWIFT address CITIUS33 | SWIFT address CITIUS33 |
| Correspondent account number | Корреспондентский счет |
| 36087478 | 36087478 |
| Tr.acc. 40701840900701844003 | Тр.счет 40701840900701844003 |
| **5** Please acknowledge the receipt of this request and your agreement with the terms set out herein, by signing the enclosed copy and returning it to us. | **5** Пожалуйста, подтвердите получение настоящего запроса и Ваше согласие с этими условиями путем подписания и возвращения нам прилагаемой копии |

Yours faithfully,

on behalf of OOO Lehman Brothers

Yours faithfully,

on behalf of Lehman Brothers Holdings Inc.,
UK Branch

С уважением,

От имени ООО «Лиман Бразерс

С уважением,

От имени Лиман Бразерс Холдингс Инк.,
английское отделение

From: OOO Lehman Brothers

To: Lehman Brothers Holdings Inc., UK Branch

Date: 20.02.08

Dear Sirs,

От: ООО Лиман Бразерс

Кому: Lehman Brothers Holdings Inc., английское отделение

Дата: 20.02.08

Уважаемые господа,

**Loan Drawdown Request Agreement**

1  We refer to the Loan Facility Agreement dated 25 September 2007 between OOO Lehman Brothers and yourselves (the "Facility Agreement"). This is a Loan Drawdown Request Agreement. Terms used herein shall have the same meaning as in the Facility Agreement.

2  We wish to draw an Individual Advance on the following terms:

AMOUNT OF THE INDIVIDUAL ADVANCE: 2,000,000 (Two million) USD

DRAWDOWN DATE: 22.02.08

PURPOSE OF THE INDIVIDUAL ADVANCE:

funding of business activity in accordance with Loan Facility Agreement

TERM OF THE INDIVIDUAL ADVANCE:

25.09.10 or earlier if agreed between Parties

INTEREST PAYMENT DATE:

The first interest payment date shall be March, 31st, 2008. Thereafter interest shall be payable on a calendar quarterly basis. If any interest payment date falls on a non-working day, interest shall in

**Соглашение-запрос о выборке займа**

1  Мы ссылаемся на Договор займа от 25 сентября 2007 между ООО «Лиман Бразерс» и Вами ("Договор займа"). Настоящий документ является Соглашением-запросом о выборке займа. Термины в настоящем письме имеют такое же значение как и в Договоре займа.

2  Мы желаем осуществить выборку Отдельной выплаты на следующих условиях:

СУММА ОТДЕЛЬНОЙ ВЫБОРКИ: 2000000 (Два миллиона) долларов США

ДАТА ВЫБОРКИ: 22.02.08

ЦЕЛЬ ОТДЕЛЬНОЙ ВЫБОРКИ:

финансирование деятельности компании в соответствии с Договором займа

СРОК ОТДЕЛЬНОЙ ВЫБОРКИ:

25.09.10 или ранее по взаимному соглашению сторон

ДАТА ВЫПЛАТЫ ПРОЦЕНТОВ:

Срок первой выплаты процентов – 31 марта 2008. Далее проценты выплачиваются в конце каждого календарного квартала. Если даты выплаты процентов выпадает на

that case be payable on the next working day.

OTHER TERMS AND CONDITIONS APPLICABLE TO THE ADVANCE (IF ANY):

3   We confirm that, unless otherwise specified above, terms set out in the Facility Agreements shall apply.

4   The Individual Advance should be credited to:

ZAO KB Citibank Moscow;

SWIFT address CITIRUMX

Correspondent Bank

Citibank N.A., New York

SWIFT address CITIUS33

Correspondent account number

36087478

5   Please acknowledge the receipt of this request and your agreement with the terms set out herein, by signing the enclosed copy and returning it to us.

Yours faithfully,

on behalf of OOO Lehman Brothers

Yours faithfully

on behalf of Lehman Brothers Holdings Inc., UK Branch

---

нерабочий день, проценты выплачиваются в первый рабочий день, следующий за ним.

ДРУГИЕ УСЛОВИЯ, ПРИМЕНИМЫЕ К ВЫПЛАТЕ (ЕСЛИ ИМЕЮТСЯ):

3   Мы подтверждаем, что если не указано иное, применяются положения Договора займа.

4   Отдельная выплата должна быть зачислена на

ЗАО КБ Ситибанк Москва;

SWIFT адрес CITIRUMX

Корреспондентский банк

Citibank N.A., New York

SWIFT address CITIUS33

Корреспондентский счет

36087478

5   Пожалуйста, подтвердите получение настоящего запроса и Ваше согласие с его условиями путем подписания и возвращения нам прилагаемой копии

С уважением,

От имени ООО «Лиман Бразерс»

С уважением,

От имени Лиман Бразерс Холдингс Инк., английское отделение

**EXHIBIT B**

**Assignment**

# Assignment

dated _____ _____ _____

## PARTIES:

1.  **Lehman Brothers Holdings Inc.,** a Delaware corporation acting through its United Kingdom branch, whose registered United Kingdom branch address is 25 Bank Street, London, E14 5LE, United Kingdom (the *Assignor*); and

2.  **Nomura Europe Holdings Plc,** a company incorporated in England and Wales with registration number 01550505 and having its registered office at 1 St Martin's-Le-Grand, London, EC1A 4NP, United Kingdom (the *Assignee*).

## WHEREAS:

(A)    This Assignment is entered into pursuant to clause 3(a) of the Assignment Agreement dated 24 November 2008 between the Assignor and the Assignee (the *Agreement*).

## IT IS AGREED:

1.    Pursuant to a court order of the United States Bankruptcy Court for the Southern District of New York, dated _____, 2008, in consideration of payment of the Assignment Price (as such term is defined in the Agreement) by the Assignor to the Assignee pursuant to the Agreement (receipt of which the Assignor hereby acknowledges), the Assignor with full title guarantee hereby sells, assigns, transfers and conveys absolutely and unconditionally the benefit of and obligations under the Agreement and Assigned Loan Rights to the Purchaser, free and clear of all liens, claims, encumbrances and other interests.

2.    The Assignor shall promptly give written notice of this Assignment to the Company in the form set out in Schedule 1.

3.    This Assignment may be executed in any number of counterparts and by the parties to it on separate counterparts, each of which is an original but all of which together constitute one and the same instrument.

4.    This Assignment and the relationship between the parties shall be governed by, and interpreted in accordance with, English law.

5.    Capitalised terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement.

IN WITNESS WHEREOF this Assignment has been executed on the date written above.

## SCHEDULE 1

## NOTICE OF ASSIGNMENT

To:         OOO "Lehman Brothers" (the *Company*)

From:     Lehman Brothers Holdings, Inc. (*LBHI*)

Dated:     [_____]


Dear Sirs

We refer to the Loan Facility Agreement dated 25 September 2007 between LBHI and the Company (the *Loan Facility Agreement*).

We give notice to you that, pursuant to a court order of the United States Bankruptcy Court for the Southern District of New York, we have assigned absolutely all our rights, title and interest in, over and to, and obligations under, the Loan Facility Agreement and all moneys which are now or hereafter become due or owing (whether by way of principal, interest or otherwise) under or pursuant to the Loan Facility Agreement to Nomura Europe Holdings Plc (the *Assignee*).

Please acknowledge receipt of this notice by signing the attached copy of it and sending it to the Assignee.

Yours faithfully



..........................................
for and on behalf of
Lehman Brothers Holdings, Inc.