**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022-4802
Telephone: (212) 906-1200
Mark A. Broude (MB-1902)
Email: mark.broude@lw.com

*Counsel for Asurion Corporation*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | ) ) | Case No. 08-13555 (JMP) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**LIMITED OBJECTION OF ASURION CORPORATION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS**

Asurion Corporation ("Asurion"), by and through its counsel, hereby files this *Limited Objection of Asurion Corporation to the Debtors' Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts* (the "Objection"). In support of this Objection, Asurion respectfully states as follows:

**BACKGROUND**

1. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), commenced with this

Court voluntary cases under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedures ("the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.     On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").

3.     On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

4.     Asurion entered into that certain First Lien Credit Agreement dated July 3, 2007, as amended and supplemented (the "Credit Agreement") with Lehman Commercial Paper Inc, among other parties.

5.     Asurion also entered into a hedge agreement by becoming a party to that certain International Swap Dealers Association, Inc. ("ISDA") Master Agreement (the "ISDA Agreement") dated July 24, 2007 with Lehman Brothers Special Financing Inc ("LBSFI").

6.     On November 13, 2008, Debtors filed a *Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts* (the "Motion"). The Motion seeks Court approval of (i) procedures for the Debtors to assume and assign derivative contracts, including the resolution of cure amounts, and (ii) procedures to process settlement agreements that may

2

establish termination payments and the return of collateral and/or property under terminated derivative contracts.

7. Pursuant to the Motion the Debtors seek Court approval of certain "Assumption and Assignment Procedures" that allow the Debtors to assume and assign derivative contracts, many of which have counterparties who are "out of the money," and thus the assumption and assignment of these contracts would result in consideration for the Debtors' estates. The Assumption and Assignment Procedures listed in the Motion provided for very limited grounds[1] on which a counterparty may object to the proposed contract assignment.

### BASES OF OBJECTION

**I. The Relief Requested by Debtors in the Motion Should Not Be Granted As to Asurion to the Extent That Transfer of the ISDA Results in a Termination Event As a Result of Assignee Identity and Affiliation**

8. Pursuant to the Part 1(h)(ii) of the Schedule to the ISDA Agreement, an "Additional Termination Event" includes an event where "[a]ny obligation due and owing by [Asurion] to [LBSFI] under this Agreement fails to rank at least pari passu with any obligation due and owing by [Asurion] under that certain Credit Agreement." In effect, this provision of the ISDA Agreement allows a party thereto to terminate the ISDA Agreement if the obligations of Asurion owing to LBSFI under the ISDA Agreement fail to rank at least pari passu with the obligations of Asurion owing under the Credit Agreement with Debtors.

9. This provision presents a potential problem in the context of the Debtors' Motion if the Debtors choose to transfer the ISDA Agreement to a party the result of which is that

---

[1] The derivative contract counterparties may only object on the grounds of (i) the proposed cure amount, (ii) the need to cure a default or early termination event with respect to the Debtors, other than a default resulting from the filing of the Debtors' bankruptcy cases or the insolvency of the Debtors or (iii) the proposed assignee's ability to provide adequate assurance of future performance under the contract.

3

obligations of Asurion under the ISDA Agreement are not pari passu with obligations of Asurion under the Credit Agreement. If such a transfer were allowed to happen, arguably under the terms of the ISDA Agreement, the Debtors' assignee would be able to terminate the ISDA Agreement immediately, even though LBSFI would not have been able to so terminate. Effectively, in such a case the assignee would have greater rights than LSBFI.

10. Allowing the Debtors and any potential assignee to get the benefit of a transfer of the ISDA Agreement that creates an automatic default and thereby deprives Asurion of the benefit of its contract is patently unfair and should not be permitted to occur as a result of the Motion. It is one thing to facilitate the Debtors getting the benefit of their bargain through an assignment, it is another to allow the assignee and the Debtors to gain an unintended advantage from the assignment. This problem is exacerbated by the fact that, under the proposed procedures, the Debtors need not identify their proposed assignee if it is a "qualified assignee."

11. Asurion therefore requests that, to the extent the Court allows an assignment of Asurion's ISDA Agreement, the Court order provide that the assignee cannot terminate the ISDA Agreement as a result of a failure to meet the requirements of Part 1(h)(ii).

12. Alternatively, Asurion requests that this Court order that as to Asurion's ISDA Agreement, the Debtors cannot transfer the ISDA Agreement, pursuant to the terms prescribed by the Motion, to an assignee whose status would result in a default under the terms of Part 1(h)(ii) of the ISDA Agreement.

**II.    The Relief Requested by Debtors in the Motion Should Not Be Granted As to Asurion to the Extent That Transfer of the ISDA Results in a Termination Event Due to the Non-Conforming Tax Status of the Assignee**

13. In Part 2(b) of the Schedule to the ISDA Agreement each of Asurion and LBSFI represent that it is a corporation organized under the law of the State of Delaware.

4

14. Section 2(d)(i) of the ISDA Agreement provides that all payments made under the ISDA Agreement will be made "without any deduction or withholding for or on account of any Tax unless such deduction or withholding is required by any applicable law." Section 2(d)(i)(4) continues that even if a withholding is required, the party required to withhold must still pay to the payee "such additional amount as is necessary to ensure that the net amount actually received by [payee] … will equal the full amount [payee] would have received had no such deduction or withholding been required." Thus, even if a withholding is required, the payee is still entitled to the full amount of the payment and the party responsible for the payment must therefore "gross up."

15. This requirement to "gross up" is conditioned upon, among other things, the representation by the payee under the ISDA Agreement being accurate and true. Thus, for example, if the payee's tax law status changes, it is not entitled to the "gross up" for withholding taxes.

16. It is a "Termination Event" under Section 5(b)(ii) of the ISDA Agreement if as a result of a tax event, a withholding is required from a payment and there is no "gross up" requirement.

17. As a result, if the ISDA Agreement were to be transferred, pursuant to the Assumption and Assignment Procedures, to an assignee who is not organized under the laws of the United States or could not deliver the appropriate tax forms to avoid any withholding, this would result in an instance where the representation as to tax status is false and the entity required to pay does not have to "gross up" when making payments subject to a withholding. Subject to the assignee's obligation to use all reasonable commercial efforts to further transfer

5

the ISDA Agreement to avoid the tax event, the assignee of the ISDA Agreement can then terminate the ISDA Agreement as a result of this withholding.

18. Thus, to allow such a transfer would deprive Asurion of the benefit of its bargain if the assignee chose to terminate the contract based on this termination event. Again, this problem is exacerbated by the fact that, under the proposed procedures, the Debtors need not identify their proposed assignee if it is a "qualified assignee." Asurion could find itself with a foreign assignee and possibly obligated for an indemnifiable tax.

19. Therefore, Asurion requests that the Court order that the provisions of the ISDA Agreement allowing for a termination of the ISDA Agreement based on a change in tax status that avoid the "gross up" requirement do not apply to the assignee of the ISDA Agreement and the ISDA Agreement cannot be terminated by the assignee on these grounds.

20. Alternatively, Asurion requests that the Court order that the ISDA Agreement can only be transferred to an assignee who meets the tax requirements specified in the ISDA Agreement.

**WHEREFORE,** Asurion respectfully requests that this Court (a) sustain the Asurion's objection and the relief requested herein, and (b) grant Asurion such relief that it deems just and proper.

Dated: November 26, 2008
New York, New York

**LATHAM & WATKINS LLP**

By: /s/ Mark A. Broude
    Mark A. Broude (MB-1902)
    885 Third Avenue, Suite 1000
    New York, New York 10022
    Telephone: (212) 906-1200

*Counsel for Asurion Corporation*

7

LA\1920893.4  Asurion Limited Objection