**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022-4802
Telephone: (212) 906-1200
Mark A. Broude (MB-1902)
Email: mark.broude@lw.com

*Counsel for MEG Energy Corp.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | ) ) | Case No. 08-13555 (JMP) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**LIMITED OBJECTION OF MEG ENERGY CORP. TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS**

MEG Energy Corp. ("MEG"), by and through its counsel, hereby files this *Limited Objection of MEG Energy Corp. to the Debtors' Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts* (the "Objection"). In support of this Objection, MEG respectfully states as follows:

**BACKGROUND**

1.   Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), commenced with this

NY\1474122.4

Court voluntary cases under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedures ("the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").

3. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

4. MEG is party to that certain International Swap Dealers Association, Inc. ("ISDA") Master Agreement (the "ISDA Agreement") dated April 18, 2006 with Lehman Brothers Special Financing Inc ("LBSFI").

5. MEG is also party to that certain Credit Agreement dated April 3, 2006, as amended and supplemented (the "Credit Agreement"). An affiliate of LBSFI is an Agent under the Credit Agreement, and MEG believes that an affiliate of LBSFI is a Lender under the Credit Agreement.

6. On November 13, 2008, Debtors filed a *Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts* (the "Motion"). The Motion seeks Court approval of (i) procedures for the Debtors to assume and assign derivative contracts, including

2

NY\1474122.4

the resolution of cure amounts, and (ii) procedures to process settlement agreements that may establish termination payments and the return of collateral and/or property under terminated derivative contracts.

7.      Pursuant to the Motion the Debtors seek Court approval of certain "Assumption and Assignment Procedures" that allow the Debtors to assume and assign derivative contracts, many of which have counterparties who are "out of the money," and thus the assumption and assignment of these contracts would result in consideration for the Debtors' estates.  The Assumption and Assignment Procedures listed in the Motion provided for very limited grounds[1] on which a counterparty may object to the proposed contract assignment.

## BASES OF OBJECTION

**I.    The Relief Requested by Debtors in the Motion Should Not Be Granted As to MEG to the Extent That Transfer of the ISDA Results in a Termination Event As a Result of Assignee Identity and Affiliation**

8.      Pursuant to the Part 1(h) of the Schedule to the ISDA Agreement, an "Additional Termination Event" includes an event where LBSFI[2] "ceases to be one of the Secured Parties." Under the Credit Agreement, the "Secured Parties" are comprised of the "Agents" and "Lenders" under the Credit Agreement, as well as "Qualified Counterparties." A "Qualified Counterparty" is a counterparty to a hedge agreement who "at the time such [hedge agreement] was entered into, was an Agent, Lender or an Affiliate of an Agent or a Lender." Arguably, this part of the

---

[1]   The derivative contract counterparties may only object on the grounds of (i) the proposed cure amount, (ii) the need to cure a default or early termination event with respect to the Debtors, other than a default resulting from the filing of the Debtors' bankruptcy cases or the insolvency of the Debtors or (iii) the proposed assignee's ability to provide adequate assurance of future performance under the contract.

[2] The ISDA Agreement by its terms prohibits assignments with MEG's consent. To the extent that the ISDA Agreement is assigned without MEG's consent pursuant to section 365 of the Bankruptcy Code, it is possible that the new counterparty would step into LBSFI's position as the party that would need to be the "Secured Party" to avoid an Additional Termination Event.

3

NY\1474122.4

Schedule to the ISDA Agreement allows MEG's counterparty under the ISDA Agreement to terminate that agreement if it was not an "Agent, Lender or Affiliate of an Agent or Lender" when the hedge was entered into. Pursuant to the Part 1(h) of the Schedule to the ISDA Agreement, an "Additional Termination Event" also occurs if "the obligations or liabilities of [MEG] or any of its Credit Support Providers under [the ISDA] Agreement . . . are deemed subordinate to or junior in right or priority of payment to any of the Loans under the Loan Documents." If MEG's counterparty under the ISDA Agreement is not a "Qualified Counterparty," MEG's obligations under the IDSA Agreement would be unsecured, subjecting MEG to an argument that the obligations of MEG under the ISDA Agreement are "subordinate to or junior in right or priority of payment" to the Loans.

9.  Part 1(h) of the Schedule to the ISDA Agreement presents a problem in the context of the Debtors' Motion if the Debtors choose to transfer the ISDA Agreement to any party that is not a "Qualified Counterparty." If such a transfer were allowed to happen, arguably under the terms of the ISDA Agreement, the Debtors' assignee would be able to terminate the ISDA Agreement immediately, even though LBSFI would not have been able to so terminate and even though MEG specifically bargained for a contractual right in the ISDA Agreement to protect itself from this very situation (by obtaining approval rights over certain assignments by LBSFI). Effectively, in such a case the assignee would have greater rights than LBSFI.[3]

10. Allowing the Debtors and any potential assignee to get the benefit of a transfer of the ISDA Agreement that creates an automatic default and thereby deprives MEG of the benefit of its contract is patently unfair and should not be permitted to occur as a result of the Motion. It

---

[3] MEG does not concede that in fact a new counterparty would have that right. However, MEG does not believe that can or should be used in a manner that even arguably provides the assignee with greater rights than the Debtor would have.

is one thing to facilitate the Debtor getting the benefit of its bargain through an assignment, it is another to allow the assignee and the Debtor to gain an unintended advantage from the assignment. This problem is exacerbated by the fact that, under the proposed procedures, the Debtor need not identify its proposed assignee if it is a "qualified assignee."

11. MEG therefore requests that, to the extent the Court allows an assignment of MEG's ISDA Agreement, the Court's order provide that the assignee cannot terminate the ISDA Agreement as a result of a failure to meet the requirements of Part 1(h) of the Schedule to the ISDA Agreement.

12. Alternatively, MEG requests that this Court order that as to MEG's ISDA Agreement, the Debtors cannot transfer the ISDA Agreement, pursuant to the terms prescribed by the Motion, to an assignee that results in a default under the terms of Part 1(h) of the Schedule to the ISDA Agreement.

II. **The Relief Requested by Debtors in the Motion Should Not Be Granted As to MEG to the Extent That Transfer of the ISDA Results in a Termination Event Due to the Non-Conforming Tax Status of the Assignee**

13. In Part 2(b) of the schedule to the ISDA Agreement each of LBSFI represents that it is a corporation organized under the law of the State of Delaware, and MEG represents that it is a corporation duly organized and validly existing under the laws of the Province of Alberta.

14. Section 2(d)(i) of the ISDA Agreement provides that all payments made under the ISDA Agreement will be made "without any deduction or withholding for or on account of any Tax unless such deduction or withholding is required by any applicable law." Section 2(d)(i)(4) continues that even if a withholding is required, the party required to withhold must still pay to the payee "such additional amount as is necessary to ensure that the net amount actually received by [payee] … will equal the full amount [payee] would have received had no such deduction or

5

withholding been required." Thus, even if a withholding is required, the payee is still entitled to the full amount of the payment and the party responsible for the payment must therefore "gross up."

15. This requirement to "gross up" is voided if a representation by the payee under the ISDA Agreement fails to be true. Thus, for example, if the payee's tax law status changes, it is not entitled to the "gross up" for withholding taxes.

16. It is a "Termination Event" under Section 5(b)(ii) of the ISDA Agreement if as a result of a tax event, a withholding is required from a payment and there is no "gross up" requirement.

17. As a result, if the ISDA Agreement were to be transferred, pursuant to the Assumption and Assignment Procedures, to an assignee who is not organized under the laws of the United States, this would result in an instance where the representation as to tax status is false and the entity required to pay does not have to "gross up" when making payments subject to a withholding. The assignee of the ISDA Agreement can then terminate the ISDA Agreement as a result of this withholding.

18. Thus, to allow such a transfer would deprive MEG of the benefit of its bargain if the assignee chose to terminate the contract based on this Termination Event. Again, this problem is exacerbated by the fact that, under the proposed procedures, the Debtor need not identify its proposed assignee if it is a "qualified assignee." MEG could find itself with an assignee as to which it is obligated to withhold payments for taxes.

19. Therefore, MEG requests that the Court order that the provisions of Section 5(b)(ii) of the ISDA Agreement do not apply to the assignee of the ISDA Agreement with

NY\1474122.4

respect to any withholding based on the assignees tax status and the ISDA Agreement cannot be terminated by the assignee on these grounds.

20.     Alternatively, MEG requests that the Court order that the ISDA Agreement can only be transferred, if at all, to an assignee who meets the tax requirements specified in the ISDA Agreement.

**WHEREFORE,** MEG respectfully requests that this Court (a) sustain the MEG's objection and the relief requested herein, and (b) grant MEG such relief that it deems just and proper.

Dated:  November 26, 2008
        New York, New York

**LATHAM & WATKINS LLP**

By: /s/ Mark A. Broude
    Mark A. Broude (MB-1902)
    885 Third Avenue, Suite 1000
    New York, New York 10022
    Telephone:  (212) 906-1200

*Counsel for MEG Energy Corp.*

NY\1474122.4