Daniel J. Saval, Esq. (DS-2437)
**BROWN RUDNICK LLP**
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

Steven D. Pohl, Esq.
**BROWN RUDNICK LLP**
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201

Hearing Date: December 3, 2008 at 10:00 a.m.
Objection Deadline: November 28, 2008 at 4:00 p.m.

Counsel to GoldenTree Asset Management, LP

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :        Case No. 08-13555 (JMP)
                                          :
                              Debtors.    :        (Jointly Administered)
                                          :
------------------------------------------------------------x
```

**LIMITED OBJECTION OF GOLDENTREE ASSET MANAGEMENT, LP TO
DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTION 365 OF THE
BANKRUPTCY CODE APPROVING THE ASSUMPTION OR
<u>REJECTION OF OPEN TRADE CONFIRMATIONS</u>**

GoldenTree Asset Management, LP ("<u>GoldenTree</u>")[1], by and through its undersigned

counsel, hereby submits this limited objection to the Debtors' Motion for an Order Pursuant to

Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade

Confirmations (the "<u>Objection</u>"). GoldenTree objects to the Debtors' request that this Court

---

[1] This Objection is submitted by GoldenTree on its own behalf and on behalf of those funds under management that are party to the relevant contracts with the Debtors.

prohibit or otherwise restrict any of GoldenTree's setoff rights as allowed by § 553 of the Bankruptcy Code as a condition to this Court's approval of the assumption or rejection of particular trades, along with certain other limited aspects of the Debtors' Motion.

## I.   **BACKGROUND**[2]

1.       On November 14, 2008, the Debtors filed the "Debtors' Motion for an Order Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade Confirmations," [Docket No. 1541] (the "Debtors' Motion").  The Debtors' Motion seeks the approval of the assumption, rejection, and modification of certain Open Trade Confirmations.  Not surprisingly, the Debtors seek to assume the "in the money" trades and foist their downside on their counterparties by rejecting the "out of the money" trades, including as to counterparties with Open Trade Confirmations that fall into both buckets.

2.       While seeking to take the good and leaving behind the bad is certainly what is expected in a Chapter 11 case, the aspect of the Debtors' Motion that is troubling to GoldenTree (and perhaps some of the Debtors' other counterparties) is the  Debtors' request that this Court enter "an order providing that no Counterparty shall be entitled to assert or take any act to exercise a right to set off any prepetition claim that it might have against either Debtor, including without limitation, claims for damages arising from the rejection of a Rejected Trade, against any obligation to the Debtors under any Assumed Trade or Amended Trade."  Debtors' Motion, ¶ 17.

3.       Prior to the commencement of these Chapter 11 cases, GoldenTree did business with the Debtors, wherein GoldenTree both purchased from and sold to the Debtors the debt of third party issuers (the "Trades"). GoldenTree has a number of Open Trade Confirmations that are the subject of the Debtors' Motion, as well as some Open Trade Confirmations which the Debtors did not include in the Debtors' Motion.

---

[2] All capitalized terms herein not otherwise defined shall have the meaning defined in the Debtors' Motion.

4.      As a result of that business relationship, GoldenTree is a Counterparty listed in the Assumed Trades and Rejected Trades exhibits to Debtors' Motion, relating to the debt of three different issuers.[3]  GoldenTree is listed as the buyer in five (5) Assumed Trades relating to the debt of <u>Spanish Broadcasting Systems, Inc.</u>, where LCPI is the seller (the "<u>GoldenTree Assumed Trades</u>").  <u>See</u> Debtors' Motion, Exhibit A, p. 3.  Four GoldenTree Assumed Trades are listed with a trade date of September 10, 2008 while one GoldenTree Assumed Trade is listed with a trade date of September 11, 2008.  <u>Id.</u>

5.      GoldenTree is the seller in three (3) Rejected Trades, one relating to <u>Verint Systems Inc</u>. and two relating to <u>WR Grace & Co.</u>, where LCPI is the buyer (the "<u>GoldenTree Rejected Trades</u>").  <u>See</u> Debtors' Motion, Exhibit B, p. 3-4.  The Verint Systems Inc. Rejected Trade has a trade date of September 8, 2008 while the WR Grace & Co. Rejected Trades have a trade date of April 23, 2008.  <u>Id.</u>  The Debtors make clear that the GoldenTree Rejected Trades are those trades that are "out of the money" from the Debtors' perspective (as the contract price is above the current market price).  <u>See</u> Debtors' Motion, ¶ 21.  As a result, GoldenTree expects to incur, and may already have incurred, a loss on these trades that will result in rejection damages claims.

6.      In addition to the GoldenTree Assumed Trades and GoldenTree Rejected Trades that are subject to the Debtors' Motion, GoldenTree holds two (2) Open Trade Confirmations referenced in the Revised Stipulation and Agreed Order Resolving Motion to Compel, [Docket No. 1400, entered on November 5, 2008] (the "<u>Revised Stipulation</u>").  The Debtors must notify GoldenTree as to the assumption or rejection of these Open Trade Confirmations by December

---

[3] <u>See</u> Exhibit A to the Objection for a chart listing all GoldenTree Assumed Trades, GoldenTree Rejected Trades, and Trades subject to the Revised Stipulation.  GoldenTree is attempting to reconcile with the Debtors any discrepancies between GoldenTree's analysis of the open trades and the information in Exhibits A and B in the Debtors' Motion as well as Exhibit B of the Revised Stipulation.

5, 2008 at 5:00 p.m.  <u>See</u> Revised Stipulation, ¶ 1.  To the extent any of these trades are rejected, GoldenTree expects that it will have additional rejection damages claims.

## II.    **OBJECTION**

7.    GoldenTree respectfully requests the Court to deny the Debtors' Motion insofar as it attempts to prohibit and/or restrict GoldenTree's right to setoff under § 553 of the Bankruptcy Code.  GoldenTree seeks entry of an order preserving its right to setoff any claims it holds against the Debtors including, without limitation, claims for damages arising from the rejection of a Rejected Trade, claims GoldenTree may have in connection with amounts due and unpaid (if any) on trades in which GoldenTree purchased a participation or in connection with trade claims that GoldenTree acquired through Lehman, against any obligation to the Debtors under any Assumed Trade.[4]  The Debtors acknowledge that there is no binding authority in this Circuit on the issue, but, not surprisingly, urge this Court to adopt those lower court decisions that support the Debtors' position.  Notably, however, the position the Debtors seek to have this Court adopt is in fact the minority view and, importantly, is not the view espoused by the one decision of the Circuit Courts of Appeal that has weighed in on the issue and has come down on the side of what is now the majority camp.[5]

8.    While not addressed in the Debtors' Motion itself, in the form of Order submitted with the Debtors' Motion (pg. 3, third Ordered paragraph) the Debtors have asked this Court to order that the Debtors are not required to pay any cure costs to any Counterparty on an Assumed

---

[4] By this objection, GoldenTree is not asking the Court to definitively determine at the hearing on the Debtors' Motion to address the specific issue of whether GoldenTree does in fact have a right of setoff as to its particular Trades and the amount of such setoff (for among other reasons, because GoldenTree has certain other Open Trade Confirmations as to which the Debtors have not yet made a decision).  Rather, GoldenTree is seeking to preserve its right both to establish its right of setoff (to the extent not fully established herein) and the amount thereof (which will be dependant on the determination of the rejection damages arising from all of the GoldenTree Rejected Trades).

[5] The Debtor's Motion does not seek to preclude any party from properly exercising any recoupment rights.  Thus, to the extent GoldenTree has any such rights, those are expressly reserved.

Trade.  Of course, for all the Assumed Trades that are sales by the Debtors (as is the case for GoldenTree) the flow of funds is from the non-debtor to the Debtors.  While it is unclear what the Debtors are referring to with the reference to "cure costs," this Court should not enter an order under which the Debtors assume an open trade and not assume it in its entirety (the benefits and the burdens).[6]  For example, if the documents evidencing the Assumed Trade requires a closing adjustment for "delay damages" (or any other contract adjustment or obligation), as an offset to what the non-debtor party is required to pay, then that must be a burden the Debtors have to bear.

9.      Similarly, while not addressed in the Debtors' Motion itself, in the form of Order submitted with the Debtors' Motion (pg. 3, first Ordered paragraph) the Debtors have asked this Court to approve the rejection of the Rejected Trades *nunc pro tunc* to the date of the Debtors' Motion (Nov. 14, 2008).  Section 365(a) of the Bankruptcy Code, in relevant part, provides that "the trustee, **subject to the court's approval**, may assume or reject any executory contract." (emphasis added).  The majority of courts have held that the effective date of rejection is the date of the bankruptcy court's order approving rejection.  See e.g., In re Federated Dep't Stores, Inc., 131 B.R. 808, 815-16 (S.D. Ohio 1991); In re The Appliance Store, Inc., 148 B.R. 234, 239-40 (Bankr. W.D. Pa. 1992); In re Worths Stores, Corp., 130 B.R. 531, 533-34 (Bankr. E.D. Mo. 1991).  The Second Circuit has not decided whether a bankruptcy court has the equitable authority to order retroactive approval of rejection under § 365.  See Adelphia Bus. Solutions, Inc. v. Abnos, 482 F.3d 602, 607 (2d Cir. 2007).  In Adelphia, the Second Circuit recognized that retroactive effect may be given to a rejection "where there is unnecessary delay caused by the

---

[6] See NLRB v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984) ("Should the debtor in possession elect to assume the executory contract, however, it assumes the contract cum onere …."); United States v. Gerth, 991 F.2d 1428, 1432 (8th Cir. 1993) (debtor assumes all the benefits and burdens of the contract when making assumption); In re Public Serv. Co. of New Hampshire, 884 F.2d 11, 14 (1st Cir. 1989) ("If and when assumed, the contract operates according to its tenor.").

creditor." Id. at 607 n.1 (citing In re Jamesway Corp., 179 B.R. 33, 39 (S.D.N.Y. 1995)).  Even armed with the equitable authority to effectuate a retroactive rejection, this Court should refrain from such action because there has been no delay, let alone unnecessary delay, by a creditor, GoldenTree or any other counterparty.[7]  While no one can predict in which direction the markets will move (and whether the calculation of a rejection damages claim will be higher or lower based on using the filing date of Debtors' Motion (Nov. 14) or the date the order is entered (the hearing is Dec. 3)), the result should simply follow the law, without any special adjustment as the Debtors seek.

**III.    ARGUMENT**

> **A.    Legal Standard for Setoff Rights**

10.    Section 553 of the Bankruptcy Code governs the exercise of setoff rights in bankruptcy proceedings.  Section 553, in relevant part, provides:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ….

11.    Section 553 does not create a right of setoff but merely reserves whatever right of setoff exists under relevant non-bankruptcy law.  See 11 U.S.C. § 553; In re The Bennett Funding Group, Inc., 146 F.3d 136, 138-39 (2d Cir. 1998).  New York law governs the right of setoff in the instant matter because the LSTA Trade Confirmation Agreements entered into by the Debtors and GoldenTree are governed by New York law.[8]  In that regard, New York has long recognized a common law right of setoff, see Straus v. Tradesmen's Nat'l Bank, 25 N.E. 372,

---

[7] Furthermore, the rejection of these executory contracts is factually different from the rejection of an unexpired lease in Jamesway, 179 B.R. at 38, where the landlord made an improper objection causing delay in the bankruptcy court's decision.

[8] See Exhibit B to the Objection for the standard terms incorporated within all LSTA Trade Confirmation Agreements.  Section 21 of the Par Trades Standard Terms Sheet and section 22 of the Distressed Trades Standard Terms Sheet, respectively, subject the Trade Confirmation Agreements to New York law.

372 (1890), which has been codified by statute.  See N.Y. Debt. & Cred. Law § 151 (McKinney 1997). See Bennett Funding, 146 F.3d at 139.

12.     Setoff is a right of equitable origin with a central premise designed to adjust mutual obligations.  See 11 U.S.C. § 553; Studley v. Boylston Nat'l Bank, 229 U.S. 523, 528 (1913) (the setoff doctrine "is grounded on the absurdity of making A pay B when B owes A"); North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co., 152 U.S. 596, 615-16 (1894) ("The adjustment of demands by counterclaim or set-off, rather than by independent suit, is favored and encouraged by the law, to avoid circuity of action and injustice."); In re Chickamauga Trust Co., 101 F.2d 441, 443 (6th Cir. 1939) ("The principle upon which the rule [of setoff] proceeds is that in case of mutual debts, it is only the balance which is the real and just sum owing by or to the bankrupt.").  Setoff is an equitable remedy within "the sound discretion of the bankruptcy court."  Bohack Corp. v. Borden, Inc., 599 F.2d 1160, 1165 (2d Cir. 1979). Furthermore, the "doctrine of setoff has long occupied a favored position in our history of jurisprudence."  Id. at 1164.  Consequently, "the remedy of set off should be enforced unless the court finds after due reflection that allowance would not be consistent with the provisions and purposes of the [Bankruptcy Code] as a whole."  Id. at 1165.

13.     In order to exercise its right of set off, GoldenTree will bear the burden of proving a right of setoff under § 553 of the Bankruptcy Code.  See In re The Bennett Funding Group, Inc., 212 B.R. 206, 212 (B.A.P. 2d Cir. 1997) aff'd 146 F.3d 136 (2d Cir. 1998).  The following criteria must be established: "(1) the debtor must owe a debt to the creditor which arose pre-petition; (2) the debtor must have a claim against the creditor which arose pre-petition; and (3) the debt and claim must be mutual."  Id. (citations omitted).

## B.     GoldenTree has Pre-Petition Claims Against the Debtors

14.     GoldenTree does not dispute the Debtors' position that claims arising from the Rejected Trades are deemed to be pre-petition claims against the Debtors.  <u>See</u> Debtors' Motion, ¶ 28; § 365(g).  Section 502(g)(1) of the Bankruptcy Code further provides that a "claim arising from the rejection, under section 365 of this title … of an executory contract … of the debtor that has not been assumed shall be determined, and shall be allowed … or disallowed … the same as if such claim had arisen before the date of the filing of the petition."  Thus, GoldenTree holds a pre-petition claim against the Debtors based on the GoldenTree Rejected Trades, subject only to establishing the amount of such claims.

### C.     GoldenTree's Obligations under the Assumed Trades Constitute Pre-Petition Obligations owed to the Debtors

15.     In order for GoldenTree to utilize its pre-petition claims arising from the GoldenTree Rejected Trades as a setoff, GoldenTree must have an obligation owed to a Debtor which arose pre-petition.  <u>See</u> <u>Bennett Funding</u>, 212 B.R. at 212.  The issue, as the Debtors identify in their Motion, is whether GoldenTree has any such pre-petition obligations arising under the GoldenTree Assumed Trades.

16.     As set forth below, the majority view holds that the obligations of a non-debtor party to make payments to a debtor under an assumed executory contract are pre-petition obligations that may be set off against a mutual pre-petition claim (held by the non-debtor party).

17.     The majority, and better, view, and the view adopted or espoused by the appellate courts that have addressed this issue, is that obligations under assumed executory contracts are pre-petition debts because, among other reasons, the contracts at issue—like the contracts at issue here—constitute valid and enforceable obligations at the time the debtors filed their bankruptcy petitions and, thus, assumption did not transform their status into post-petition

obligations.[9]  See United States v. Gerth, 991 F.2d 1428, 1432 (8th Cir. 1993) (holding that the "mere assumption of an executory contract does not alter when the obligations under the contract arose"); In re Buckner, 218 B.R. 137, 145-49 (B.A.P. 10th Cir. 1998) (holding government obligation to make post-petition payments was a pre-petition debt); In re Matthieson, 63 B.R. 56 (D. Minn. 1996); In re Greseth, 78 B.R. 936 (D. Minn. 1987); In re Allen, 135 B.R. 856, (Bankr. N.D. Iowa 1992) (holding that the "mere assumption of the contract does not make the contract a post-petition contract under which the debt [owed] to the debtor must arise postpetition").

18.    Buckner is illustrative of the majority view.  In Buckner, the issue was whether the United States could set off pre-petition obligations the debtor owed to the Farmers Home Administration ("FHA") against payments due by the Conservation Reserve Program ("CRP") to the debtors.  218 B.R. at 139.  The Tenth Circuit B.A.P. held that the "obligation to remit CRP payments to the [debtors] represent[ed] a valid and enforceable prepetition debt" notwithstanding the payments were earned and funded by Congress postpetition.  Id. at 145.  The critical point, as Buckner notes, is to examine the status of contracts that exist as of the petition date.

19.    In its analysis, Buckner relied upon the definition of "debt" as used within § 553. Id. at 146.  The party seeking to assert setoff must show that it has a right "to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case."  See § 553; Gerth, 991 F.2d at 1433.  Section 101(12) of the Bankruptcy Code defines "debt" as "liability on a claim" while "claim" is defined as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured" under § 101(5)(A).  Based upon its reading of the definitions, Buckner held that the term "debt" should be considered to be

---

[9] The Tenth Circuit has recently recognized and affirmed the majority view in In re Myers, 362 F.3d 667, 675 (10th Cir. 2004).

coextensive with the term "claim" under the Bankruptcy Code. 218 B.R. at 146-47 (citing Pennsylvania Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 558 (1990) ("Congress chose expansive language in both definitions ….")).

20.    As a result, a party seeking to establish a setoff right is not required to establish that the debt be "absolute" or "absolutely owed" on the petition date. Rather, it is sufficient that the "debt" be "valid and enforceable" on the petition date in order to satisfy the requirements of § 553 of the Bankruptcy Code. See, e.g., In re Public Serv. Co. of New Hampshire, 884 F.2d 11, 14 (1st Cir. 1989); 5 Collier on Bankruptcy § 553.01[1] (15th ed. rev. Matthew Bender) (the claim and debt must be valid and enforceable under § 553(a) of the Bankruptcy Code). This follows from the conclusion of the Gerth Court that "[f]or setoff purposes, a debt arises when all transactions necessary for liability occur." 991 F.2d at 1433. The Gerth Court further noted that "dependency on a postpetition event does not prevent a debt from arising prepetition" even if "that debt would never have come into existence except for postpetition events." Id. at 1433-34 (citing In re United Sciences of Am., Inc., 893 F.2d 720, 724 (5th Cir. 1990); Braniff Airways, Inc. v. Exxon Co., U.S.A., 814 F.2d 1030, 1036 (5th Cir. 1987).

21.    In the instant case, GoldenTree and the Debtors are parties to binding and enforceable pre-petition contracts. As a matter of custom and practice, parties to a secondary loan trade generally intend to be legally bound by the terms of each transaction from the moment they reach agreement on such terms, whether orally or otherwise.[10] The terms of trade typically are agreed during a recorded telephonic conversation or by the exchange of electronic mail

---

[10] See Exhibit C to the Objection for two (2) LSTA advisories, dated Aug. 2001 and Oct. 3, 2002, outlining customary practice in the par and distressed loans markets in relation to oral trades, written confirmation agreements, and enforceability.

messages and promptly followed up by a written trade confirmation.[11]  Therefore, the parties are customarily bound upon an oral agreement even before any written trade confirmation exists. LSTA trade confirmations for both distressed and par trades confirm such basic terms as the trade date, purchase amount and purchase rate for the trade.[12]  Such terms are effective and enforceable as of the trade date.   The parties also agree in the trade confirmation to negotiate, execute and deliver mutually agreeable definitive documentation, which usually takes the form of a standard form of assignment and acceptance agreement (for par trades) or an LSTA standard form purchase and sale agreement and assignment and acceptance agreement for distressed trades.  However, regardless of whether the trades have actually settled by the execution of the definitive documentation, the trade dates for all GoldenTree Assumed Trades and GoldenTree Rejected Trades are pre-petition.  See Debtors' Motion, Exhibits A, B.  These binding and enforceable agreements between the parties created valid obligations arising from pre-petition contracts as of their respective trade dates.  Therefore, the GoldenTree Assumed Trades were debts which arose pre-petition and thus can be used for setoff purposes.

   22.    Gerth, Buckner, and other decisions that adopt the majority view provide a sensible explanation as to why the minority view should not be adopted by this Court, as espoused by the Debtors.  The Debtors cite principally to In re Evatt, 112 B.R. 405 (Bankr. W.D. Okl. 1989) and In re Walat Farms, Inc., 69 B.R. 529 (Bankr. E.D. Mich. 1987) to support their position.  Walat based its decision on the proposition that assumption of the executory contract transforms whatever pre-petition obligations exist into post-petition obligations merely because

---

[11] A written trade confirmation is not required for a trade to be enforceable under New York law.  These oral contracts are allowed as an exception to the New York Statute of Frauds under NY GEN. OBLIG. LAW § 5-701b2(i).

[12] See Exhibit D to the Objection for the standard LSTA trade confirmations forms for par and distressed trades.

any payments due would be collected post-petition by the debtor-in-possession, not the debtor.[13]
Gerth, 991 F.2d at 1431 (citing Walat, 69 B.R. at 531).  The majority courts reject this notion.
As recognized and adopted in Gerth, the Matthieson Court held that obligations assumed post-petition by a debtor-in-possession did not transform those obligations into post-petition obligations because the obligations themselves arose pre-petition.  Gerth, 991 F.2d at 1431-32 (citing Matthieson, 63 B.R. at 59).  That holding was based on a simple examination of the assumed contract itself whose "requirements were in the nature of contractual duties and promises rather than conditions precedent" which bound the parties at the time of contract formation, pre-petition.  Id. (citing Matthieson, 63 B.R. at 59-60).  Although Matthieson did not consider executory contracts within chapter 11, Greseth applied its reasoning in the reorganization context while holding that assumption of an executory contract does not transform the pre-petition contract obligations into post-petition obligations.  Gerth, 991 F.2d at 1432 (citing Greseth, 78 B.R. at 942).

23.    To the extent Debtors rely upon In re Genuity, Inc., 323 B.R. 79, 84 (Bankr. S.D.N.Y. 2005) for the proposition that the assumption of an executory contract transforms any pre-petition obligations into post-petition obligations, their reliance is misplaced.  Genuity held that the failure of the debtor to cure any default, required by § 365 when assuming an executory contract, becomes a post-petition obligation.  323 B.R. at 84.  This is not surprising, since cure obligations must be paid in 100 cent dollars.  In contrast, the issues involved here do not concern a debtors' cure payments.  Rather, the assumed contracts require payments by the non-debtor party, GoldenTree.

---

[13] To the extent this argument coincides with the mutuality requirement of § 553 it will be discussed in Section III.D. of this Objection.

24.      Based on the foregoing, GoldenTree has a "debt" owing to Debtors which arose

pre-petition because the post-petition assumption of an executory contract cannot change the fact

that the obligation arose pre-petition.

### D.      Mutuality Requirement

25.      Generally, "mutual debts are 'due to and from the same person in the same

capacity.'"  Bennett Funding, 212 B.R. at 212 (internal citations omitted).  In other words, "the

debts and claim must be mutual; that is, they must [be] in the same right and between the same

parties, standing in the same capacity."  In re Prudential Lines, Inc., 148 B.R. 730, 751 (Bankr.

S.D.N.Y. 1992), aff'd in part, rev'd in part 170 B.R. 222 (S.D.N.Y. 1994).  Mutuality does not

require that the debts arise from the same transaction.  Id.  "In fact, ordinarily debts subject to

setoff are those that are generated by different transactions because debts that evolve from the

same transaction, whether or not they are mutual, are subject to recoupment."  In re Westchester

Structures, Inc., 181 B.R. 730, 740 (Bankr. S.D.N.Y. 1995) (citing Prudential Lines, 148 B.R. at

752).

26.      Debts in the "same right" has been interpreted to mean that a pre-petition debt

cannot set off a post-petition debt.  See Westchester, 181 B.R. at 739.  As discussed above, this

requirement has been met because there is no effort to set off anything but pre-petition

obligations.

27.      Finally, GoldenTree and the Debtors "must stand in the same capacity in relation

to each other."  Westchester, 181 B.R. at 739.  This prong is satisfied as the Debtors and

GoldenTree are both participants in the par and distressed loans market and the transactions at

issue are fairly standard debt trades between parties not owing one another any special duties.

See Debtors' Motion, ¶ 8; see also Westchester, 181 B.R. at 739 (same capacity does not exist

- 13 -

where "one party owes a fiduciary duty to the other, or has a claim for trust funds, and the other side's claim is a simple unsecured debt").

28.    <u>Evatt</u> and <u>Walat</u> also rely upon the "separate entity" doctrine to conclude the mutuality requirement of § 553 is not met.  <u>See Evatt</u>, 112 B.R. at 411-12 (holding that the post-petition assumption of an executory contract is owed to the debtor-in-possession and not the debtor); <u>Walat</u>, 69 B.R. at 531 (same).  The Supreme Court in <u>NLRB v. Bildisco & Bildisco</u>, 465 U.S. 513, 528 (1984) observed that if the debtor-in-possession "were a wholly 'new entity,' it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts, since it would not be bound by such contracts in the first place" and therefore "it is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition."  <u>See also</u> <u>Gerth</u>, 991 F.2d at 1435 ("We hold that when a debtor-in-possession assumes an executory contract, the debtor and the debtor-in-possession are the same entity for purposes of mutuality under § 553."); <u>Allen</u>, 135 B.R. at 868 ("This Court believes that the language of <u>Bildisco</u> is unambiguous and intended to put a stop to the rather artificial and fictitious distinctions between the debtor-in-possession and the debtor."); <u>In re Ontario Locomotive & Ins. Ry. Supplies</u>, 126 B.R. 146, 147 (Bankr. W.D.N.Y. 1991) ("The [Supreme] Court would appear to have laid to rest the 'separate entity' doctrine for all time.").  Insofar as the Debtors argue that setoff is precluded under the "separate entity" theory, such argument should be rejected because if such argument were to be accepted, "any time a bankruptcy debtor assumes an executory contract the assumption itself would destroy mutuality and a § 553 setoff would be unavailable." <u>Allen</u>, 135 B.R. at 868-69.

### E.    Equitable Considerations

29.    The Court must also "scrutinize the right of setoff in light of the Bankruptcy Code's goals and objectives."  <u>Bennett Funding</u>, 212 B.R. at 212 (quoting <u>In re Ionosphere</u>

Clubs, Inc., 164 B.R. 839, 841 (Bankr. S.D.N.Y. 1994)). This includes "equitable treatment of all creditors." Id. The Debtors misconstrue the role of equity within the right of setoff as between the creditor and all other similarly situated creditors. Instead, equity is considered between the creditor vis-à-vis the debtor. See Bohack Corp., 599 F.2d at 1165 ("Despite the preferential advantages bestowed upon certain creditors by virtue of [§ 553], setoffs are accepted and approved because they are based upon long-recognized rights of mutual debtors.").

30.    The Second Circuit "has repeatedly favored the allowance of setoffs." Id. The Second Circuit in In re Applied Logic Corp., 576 F.2d 952, 957 (2d Cir. 1978) succinctly stated that the right of setoff "is not one that courts are free to ignore when they think application would be 'unjust.'" Indeed, the right of setoff "is a rule that has been embodied in every bankruptcy act the nation has had, and creditors … have long acted in reliance upon it." Id. at 958. Furthermore, courts should be reluctant to disturb the right of setoff "unless compelling circumstances require it." Bohack Corp., 599 F.2d at 1165; see also In re Lehigh & Hudson River Railway Co., 468 F.2d 430, 434 (2d Cir. 1972) (describing an injunction against setoff as "strong medicine"); Pereira v. United Jersey Bank, N.A., 201 B.R. 644 (S.D.N.Y. 1996) (providing a comprehensive historical analysis of the Second Circuit's repeated approval of the right of setoff).

31.    The Debtors argue that "setoff should not be permitted where it would allow parties with claims for rejection damages to receive, in effect, payment in full of such claims, irrespective of the distributions that may ultimately be made to other unsecured creditors." See Debtors' Motion, ¶ 35. Furthermore, the Debtors seek to justify their overly narrow interpretation of § 553 with an observation from the First Circuit based on the legislative history. See Debtors' Motion, ¶ 34. Public Serv. Co., 884 F.2d at 13-14 states the rule that "setoff may

flourish in bankruptcy proceedings only where mutuality of obligation exists," as demonstrated above, and does not stand for a narrow interpretation of § 553 based on legislative history. In fact, the Genuity Court, which the Debtors cite to support their argument, states that "inequality is inherent in the very nature of setoff." 323 B.R. at 85. As stated in Bohack Corp., although "setoff has the effect of paying one creditor more than another," § 553 and its preferential advantages are "accepted and approved because they are based upon long-recognized rights of mutual debtors." 599 F.2d at 1165. If the Debtors' argument were to be adopted, § 553 would be rendered inoperative as there will always be inequality when a creditor invokes its right of setoff; a result clearly not intended by the very inclusion of § 553 in the Bankruptcy Code.

32.    Therefore, the right of setoff, as allowed by § 553, allows creditors and debtors with mutual obligations to forego "the absurdity of making A pay B when B owes A" despite the notion that certain creditors are advantaged over other creditors. See Studley, 229 U.S. at 528. This concept is even more salient in the instant case when "the goal of orderly reorganization" is nonexistent. See Public Serv. Co., 884 F.2d at 13. Finally, compelling circumstances to disturb the right of setoff, as required by Bohack Corp., 599 F.2d at 1165, do not exist in this case. See In re Whimsy, Inc., 221 B.R. 69, 74 (S.D.N.Y. 1998) ("Compelling circumstances may be present where there is a 'serious and immediate threat to the debtor' … or where the creditor has engaged in criminal conduct or fraud.") (internal citations omitted).

33.    For the reasons stated herein, GoldenTree respectfully requests that this Court deny the relief requested in the Debtors' Motion to the extent it seeks to prohibit and/or restrict GoldenTree's right to setoff under § 553 of the Bankruptcy Code and such other and further relief as this Court deems just and proper.

Dated:  New York, New York
       November 26, 2008

**BROWN RUDNICK LLP**


By: /s/ Daniel J. Saval
Daniel J. Saval, Esq. (DS-2437)
Seven Times Square
New York, NY 10036
Telephone:  (212) 209-4800
Facsimile:  (212) 209-4801

Steven D. Pohl, Esq.
**BROWN RUDNICK LLP**
One Financial Center
Boston, MA 02111
Telephone:  (617) 856-8200
Facsimile:  (617) 856-8201

# 1615082 v9