WOLFBLOCK LLP
250 Park Avenue
New York, NY 10177
Telephone: (212) 986-1116
Facsimile: 212-986-0604
Gretchen M. Santamour, Esquire
James J. Vincequerra, Esquire

Attorneys for Jenner's Pond, Inc. and Simpson Meadows

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:  :  Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., et al.,  :  08-13555 (JMP)
:
Debtors.  :  (Jointly Administered)

---

TO: THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE

Jenner's Pond, Inc. and Simpson Meadows (collectively "Objectors"), by its counsel, WolfBlock LLP, hereby submits this limited objection and reservation of rights ("Limited Objection") with respect to the Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts (the "Motion").

## BACKGROUND

1. Jenner's Pond, Inc. ("Jenner's Pond") is a Pennsylvania not-for-profit corporation, which operates a continuing care retirement community in West Grove, Chester County, Pennsylvania.

2. Jenner's Pond and Lehman Brothers Special Financing Inc. ("Lehman Special Financing") are parties to an International Swaps and Derivatives Association, Inc. Master Agreement dated October 25, 2006 (the "JP Swap Agreement") pursuant to which Jenner's

Pond and Lehman Special Financing enter into a Swap transaction in the original notional amount of $40,210,000, reducing to $0 in 2036. Lehman Brothers Holding Inc. is a guarantor of Lehman Special Financing's obligations under the JP Swap Agreement. A copy of the JP Swap Agreement is attached hereto as **Exhibit "A"**.

3. Simpson Meadows ("**Simpson Meadows**") is a Pennsylvania not-for-profit corporation, which operates a continuing care retirement community in East Caln Township, Chester County, Pennsylvania.

4. Simpson Meadows and Lehman Brothers Special Financing Inc. ("**Lehman Special Financing**") are parties to a International Swaps and Derivatives Association, Inc. Master Agreement dated August 17, 2005 (the "**SM Swap Agreement**") pursuant to which Simpson Meadows's and Lehman Special Financing enter into a Swap transactions in the original notional amount of $8,500,000. Lehman Brothers Holding Inc. is a guarantor of Lehman Special Financing's obligations under the SM Swap Agreement. A copy of the SM Swap Agreement is attached hereto as **Exhibit "B"**. The JP Swap Agreement and the SM Swap Agreement shall be collectively referred to as the "**Swap Agreements**".

5. Neither Jenner's Pond nor Simpson Meadows have terminated their respective Swap Agreements with the Debtors. Both Jenner's Pond and Simpson Meadows reserve any and all rights they may have to terminate the Swap Agreements in accordance with any contractual provisions, including the right to terminate on account of the Debtors' bankruptcy or financial condition of Lehman Special Financial or Lehman Brothers Holding, Inc.

### Objection

6. The proposed procedures do not provide adequate notice to the Counterparty of the Debtors intent to assume and assign the Swap Agreements. The Swap Agreements are of vital economic importance to the Objectors. Assumption and assignment of the Swap

Agreements is an extraordinary remedy available to Debtors and is even more extraordinary given the procedural means requested by the Debtors in the Motion. Accordingly, greater care should be given to insuring that notice of assumption and assignment of the Swap Agreements will, in fact, be provided and that Objectors will have sufficient time to react to the notice. The Court should deny the Debtors' request that the Debtors provide only five (5) business days notice and require at least twenty (20) days prior written notice be provided to the Counterparties of the "Assignment Notice."

7. The Assignment Notice should indicate when the Cure Amount will be paid to the Counterparties or how and when the Cure Amount will be credited to Counterparties' obligations under an assigned Derivative Contract.

8. Adequate assurance of future performance should not be "deemed" to have been received when, after the Debtors have made any Cure Payment, the Debtors or the assignee may, in their discretion, exercise an option which creates a payment or delivery obligation under a Derivative Contract unless the assignee is a Qualified Assignee. In all cases in which the Debtor is seeking to assign a Derivative Contract to a party other than a Qualified Assignee, the Counterparty should be able to object if the Debtors are not providing "adequate assurance" and the Court should resolve such objection.

9. Counterparties should have twenty (20) days from receipt of the Assignment Notice to serve a written objection to the proposed assignment and assumption of the Derivative Contract on attorneys for the Debtors.

10. If the parties are unable to consensually resolve any timely served objection on the grounds of set forth in subparagraph (e) of the Debtors' proposed procedures, the Court should require the Debtors to seek authorization of the Court to consummate the proposed

assignment even if the dispute relates solely to the Cure Amount. The procedures do not have an adequate procedure for resolving a Cure Amount dispute; accordingly, any such dispute should be resolved prior to consummating an assignment.

11. The Debtors should be obligated to provide the Counterparty twenty-four (24) hours prior notice of the effective date of an assignment.

12. The Debtors should not be permitted to deprive Counterparties of their right to terminate a Derivative Contract based upon a Default occurring prior to the assignment's consummation. Counterparties should be entitled to retain any rights of termination.

13. Furthermore, the proposed procedures are ambiguous as to how master agreements will be treated. Although two Confirmations were entered into under the JP Master Agreement, the two Confirmations are a single transaction. Both Confirmation are dated October 25, 2006. The first Confirmation, a copy of which is attached hereto as **Exhibit "C"**, was effective November 2, 2006 and terminates July 1, 2012. The second Confirmation, a copy of which is attached hereto as **Exhibit "D"**, was to become effective July 2, 2012. The JP Master Agreement and the two Confirmations should be treated as one contract for assignment and assumption purposes.

14. Jenner's Pond and Simpson Meadows reserve all rights and the proposals herein should not be construed as an admission or a waiver of any rights, claims or defenses that either Jenner's Pond or Simpson Meadows may be entitled to assert in connection with any proposed assignment and assumption of the Swap Agreements.

**WHEREFORE**, Objectors respectfully request that the Court require the Debtors to modify the Assignment and Assumption procedures to (a) provide Counterparties with notice at least twenty (20) days before assumption and assignment of a Derivative Contract; (b) require

that the Assignment Notice also set forth the proposed date for paying the Cure Amounts or the date and manner in which Cure Amounts may be credited against any Counterparty's obligation under its Derivative Contract; (c) not allow that adequate assurance be deemed if after payment of any Cure Amounts the Debtors no longer have any payment or delivery obligations under the Derivative Contract but an option for such is exercisable at the Debtors' or the assignees' discretion if the assignee is not a Qualified Assignee; (d) permit Counterparties to have twenty (20) days after the date of service of the Assignment Notice to serve an objection; (e) not permit the escrow of a disputed Cure Amount but rather require the Debtors to seek court intervention to resolve a dispute in the Cure Amount; (f) provide the Counterparties at least twenty-four (24) hours notice prior to consummation of an assignment transaction (the "**Consummation Notice Period**"); (f) limit the provision in the procedures which seeks to void any termination notice sent prior to consummation of the assignment's consummation only to those defaults that Counterparties knew or should have known and could have sent a termination notice for on or before the expiration of the Consummation Notice Period; and (g) treat all transactions under an ISDA Master Agreement as a single transaction.

      Respectfully Submitted,

      WOLFBLOCK LLP

      By: /s/ Gretchen M. Santamour
          Gretchen M. Santamour, Esquire
          James J. Vincequerra, Esquire
          250 Park Avenue
          New York, NY 10177
          Telephone: (212) 986-1116
          Facsimile: 212-986-0604

          Attorneys for Jenner's Pond, Inc. and
          Simpson Meadows

Dated: November 26, 2008