Hearing Date and Time:  December 3, 2008 at 10:00 a.m. (Prevailing Eastern Time)

WHYTE HIRSCHBOECK DUDEK S.C.
555 East Wells Street
Suite 1900
Milwaukee, WI 53202-3819
Telephone: (414) 273-2100
Facsimile: (414) 223-5000
Bruce G. Arnold, Esq.
Daryl L. Diesing, Esq.
Daniel J. McGarry, Esq.

Attorneys for Metavante Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

| | |
|---|---|
| In re: | Case No. 08-13555-jmp |
| LEHMAN BROTHERS HOLDINGS, INC., et al, | Chapter 11 |
| Debtors. | (Jointly Administered) |

------------------------------------------------------------------------x

**OBJECTION OF METAVANTE CORPORATION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS**

**TO THE HONORABLE JAMES M. PECK**
**UNITED STATES BANKRUPTCY JUDGE:**

Metavante Corporation ("Metavante") submits this objection to the motion of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases

(together, the "Debtors") for an order establishing and authorizing terms and procedures for the

assumption and assignment of prepetition derivative contracts (the "Motion"), and respectfully

states as follows:

**Background**

1. Metavante is a provider of banking and payments technologies to over 8,000 financial services firms and businesses worldwide. It is headquartered in Milwaukee, Wisconsin.

2. On November 20, 2007, Metavante and Lehman Brothers Special Financing Inc. ("LBSF") entered into an International Swaps and Derivatives Association, Inc. Master Agreement (the "Metavante Swap Agreement" or "Agreement") by which Metavante agreed to pay a fixed rate of return to LBSF in exchange for payment of a variable rate of return based upon the three (3) month London Interbank Offered Rate (LIBOR). The Metavante Swap Agreement, which has an initial notional value of $600,000,000, is set to terminate on February 1, 2012.

3. On September 15, 2008, LBHI and certain of its subsidiaries commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). LBHI is a "Credit Support Provider" for LBSF under the Metavante Swap Agreement. LBSF subsequently commenced a voluntary petition under chapter 11 on October 3, 2008. The filings constitute an "event of default" under the Metavante Swap Agreement.

4. Pursuant to paragraph 6(a)[1] of the Swap Agreement Metavante, has elected not to terminate the Swap Agreement with LBSF. Metavante reserves the contractual right to do so.

5. The Debtors seek an order approving certain procedures for assumption and assignment ("Assumption and Assignment Procedures"), and procedures for termination and settlement ("Termination and Settlement Procedures") (collectively the "Procedures"), related to the derivative contracts ("Derivative Contracts") to which the Debtors are counterparties,

---

[1] Paragraph 6(a) states that upon the occurrence of an Event of Default, the "Non-defaulting Party" "may" but is not required, to terminate the Agreement. Metavante and LBSF specifically rejected the "Automatic Early Termination" provisions of the Agreement in its Schedule. See Part 1(e).

including the Metavante Swap Agreement. Metavante objects to both the request to modify the Swap Agreements, and to the proposed procedures.

### Argument

**The Bankruptcy Code Does Not Authorize a Bankruptcy Court to Modify a Swap Agreement**

6. The very filing of this Motion acknowledges what is clear from the face of the Bankruptcy Code -- the Debtors are not free to assume and assign Metavante's Swap Agreement where the counterparty, here Metavante, has not chosen to exercise its rights to liquidate, terminate or accelerate. To assume or assign a contract, a debtor must "cure" any defaults. Because the Debtors cannot change the fact that they sought relief under chapter 11 of the Bankruptcy Code, they can only "cure" the Swap Agreement by changing or modifying the provisions in the Swap Agreement which make the chapter 11 filings an event of default. So, in a creative sleight of hand, the Debtors attempt to create a statutory right to assume and assign by offering a protocol which, at bottom, modifies the Swap Agreement. It is not accidental that the Debtors carefully choose their words in their Motion. Although Section 560 of the Bankruptcy Code speaks only about a debtor's right to reject a derivative agreement, the Motion artfully substitutes a discussion about what constitutes an adequate "cure" of the Debtors' existing defaults without satisfying the more fundamental predicate that there is no statutory right to modify Metavante's contractual rights.

7. The legislative history to section 560 of the Bankruptcy Code makes it clear that the statute protects the nondebtor counterparty, and all of <u>its</u> rights to liquidate, terminate -- or not to terminate -- swap agreements. The Debtors ask this Court to effectively rewrite section 560 to allow the defaulting party to profit from its own actions.

3

8. It is not even clear that this Court has the authority to impose a statutory deadline to force Metavante or any other counterparty to terminate these Derivative Contracts. Indeed, the Bankruptcy Code provides for just the opposite. Section 560 of the Bankruptcy Code states in pertinent part "[t]he exercise of any contractual right of any swap participant . . . to cause the . . . termination . . . because of a condition of the kind specified in section 365(e)(1) . . . shall not be stayed, avoided, or *otherwise limited . . . by order of a court . . . in any proceeding under this title . . . .* (Emphasis added).[2] *See also, In re Mirant Corporation*, 314 B.R. 347 (Bankr. N.D. Tex. 2004) (holding that a seven-week delay in terminating a swap agreement did not constitute a waiver of the nondebtor counterparty's right to terminate the swap agreement because of the counterparty's inherent right to terminate under section 560 of the Bankruptcy Code).[3] Metavante has the inherent right to terminate the Metavante Swap Agreement when and if it chooses to do so, and Metavante's rights cannot be limited under the express terms of section 560 of the Bankruptcy Code.

9. Under the express terms of the Swap Agreement, and the Schedule adopted by the parties, LBSF's only option at this point is to reject the Swap Agreement. LBSF cannot "cure" the default here (*i.e.,* the filing of the bankruptcy petition), and thus cannot assume and assign the Metavante Swap Agreement. Contrary to Debtors' position, section 105 of the Bankruptcy Code cannot be used to resurrect the Agreement now, and the Debtors cite no other authority for the

---

[2] Section 365(e)(1) of the Bankruptcy Code provides in part that "an executory contract. . .of the debtor may not be terminated or modified, at any time after the commencement of a case solely because of a provision in such contract or lease that is conditioned on – (A) the insolvency or financial condition of the debtor at any time before the closing of the case; (B) the commencement of a case under this title. . . ."

[3] See, also, paragraph 9(f) of the Agreement, which states in pertinent part that "[a] failure or delay in exercising any right, power or privilege in respect of this Agreement will not be presumed to operate as a waiver. . . ."

4

proposition that a defaulting party is entitled to assume and assign an executory contract under section 365 *without first curing the default*.[4]

### Metavante's Objection to the Debtors' Proposed Procedures

10. The Debtors' proposed Assumption and Assignment Procedures contemplate that an assignee of a Derivatives Contract is automatically a "Qualified Assignee" if it has an S&P or Fitch credit rating equal to or higher than A-, or a Moody's credit rating equal to or higher than A3, "*or any equivalent thereof*." (Emphasis added).

11. It is simply not reasonable to ask the counterparties to these Derivative Contracts to take on faith the representations made by the Debtors regarding the creditworthiness of the proposed assignees. It is patently unfair to adopt a procedure which does not even require the Debtors to identify the "Qualified Assignee" by name, or even whether it is a domestic entity. The Debtors assume that a proposed Qualified Assignee is creditworthy if it has only an A- rating by Standard and Poors. It is not hyperbole to state the due diligence and conclusions reached by the ratings agencies, including with respect to Lehman itself (which had a Standard and Poors "A" credit rating immediately prior to the filing), has not been particularly accurate or reliable. The fundamental flaw in this proposed procedure is that the Debtors purport to satisfy their obligations of providing "adequate assurance of future performance" under section 365(b)(1)(C) of the Bankruptcy Code by assigning the Derivative Contracts to a "Qualified Assignee." The mere designation of an assignee as "Qualified" does not automatically translate

---

[4] Paragraph f(iii) of the Debtors' proposed Assumption and Assignment Procedures states that failure of a counterparty to timely object to the proposed assignment means that the counterparty has "agreed that all Defaults under the Contracts arising or continuing prior to the assignment have been cured as a result or precondition of the assignment, such that the assignee or the Debtors have no liability or obligation with respect to any Default occurring or continuing prior to the assignment, and from and after the date of the assignment the Derivative Contract shall remain in full force and effect for the benefit of the assignee and the Counterparty in accordance with its terms."

into "adequate assurance," and the swap counterparties should not be left to guess as to the assignee's ability to perform.

12.    Nor is it reasonable to believe that the counterparties can perform any meaningful due diligence on an assignee in five (5) business days.[5] Even if the Debtors were to identify the assignee by name as is proposed in the case of unrated assignees, it is simply not reasonable to sanction a procedure which only allows the counterparties five (5) business days to object to an assignee which, by definition, does not meet the "Qualified Assignee" definition of creditworthiness. For example, if the Debtors are able to cobble together a package of Swap Agreements for assumption and assignment to a proposed unrated assignee in a remote foreign country (say, Russia), the counterparties must either object within five (5) business days without reasonable time to perform due diligence, or effectively waive all of their rights against the Debtors. (Motion, Paragraph F, Assumption and Assignment Procedures).

13.    Finally, the proposed Assumption and Assignment Procedures violate section 560 of the Bankruptcy Code because they purport to limit the nondebtor counterparties' rights to object on the basis of other, non-bankruptcy events of default. As proposed, Metavante's only basis to object to an assignment to a "Qualified Assignee" is whether the proposed cure amount is correct. Metavante bargained for and received all of the protections set forth in the Metavante Swap Agreement, not just the right to terminate the Swap Agreement upon the Debtors' bankruptcy filing.

---

[5] The five (5) business days as proposed by the Debtors also violates Rule 2002(a)(2) of the Federal Rules of Bankruptcy Procedure, which requires at least 20 days notice of any sale of property of estate, unless the Court "for cause shown" shortens the time. Metavante would assert that no such "cause" has been shown.

**Conclusion**

For all the reasons set forth herein, Metavante respectfully requests that this Court enter an Order (i) denying the relief requested in the Motion, (ii) enforcing the terms of the Metavante Swap Agreement, and (iii) granting such other relief as is just and equitable.

Dated: November 26, 2008
Milwaukee, Wisconsin

/s/ Bruce G. Arnold

Bruce G. Arnold, Esq.
Daryl L. Diesing, Esq.
Daniel J. McGarry, Esq.

WHYTE HIRSCHBOECK DUDEK S.C.
555 East Wells Street
Suite 1900
Milwaukee, WI 53202
Telephone: (414) 273-2100
Facsimile: (414) 223-5000

Attorneys for Metavante Corporation

WHD\6130427.8