# **EXHIBIT 2**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | |
| LEHMAN BROTHERS HOLDINGS INC., et al. ) | Chapter 11 |
| ) | |
| ) | Case No. 08-13555 |
| Debtors. ) | |
| ) | (Jointly Administered) |
| ) | |

**[PROPOSED] ORDER GRANTING THE MOTION OF THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS INDENTURE TRUSTEE, PURSUANT TO BANKRUPTCY RULE 2004 DIRECTING EXAMINATION OF, AND PRODUCTION OF, DOCUMENTS BY LEHMAN BROTHERS HOLDINGS, INC., LEHMAN BROTHERS, INC., LEHMAN BROTHERS COMMODITY SERVICES INC. AND BARCLAYS CAPITAL INC.**

Upon consideration of the Motion (the "Motion")[1] of The Bank of New York Mellon Trust Company, N.A. (formerly known as The Bank of New York Trust Company, N.A.), as trustee for the holders of the Bonds (the "Trustee"), for entry of an order, pursuant to section 105(a) of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and directing discovery from Lehman Brothers Holdings, Inc., Lehman Brothers, Inc., Lehman Brothers Commodity Services Inc. and Barclays Capital Inc. (the "Respondents") in the form of: (1) certain discovery requests as identified on Schedules A and B to Exhibit 2 to the Motion; (2) a discovery and briefing schedule for such requests; and (3) such other or further relief as is just and proper; and the Court having jurisdiction over these matters in accordance with 28 U.S.C. §§ 157 and 1334; and due and adequate notice of the Motion having been given under

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the circumstances; and after deliberation and hearing thereon, and sufficient cause appearing therefor; it is hereby

ORDERED, that the Motion is hereby granted, and it is further

ORDERED, that each of the Respondents shall produce to the Trustee the documents requested in Schedule A to Exhibit 2 to the Motion within twenty (20) days of the date hereof; and it is further

ORDERED that each of the Respondents shall make representative(s) most knowledgeable with regard to the topics listed in Schedule B to Exhibit 2 to the Motion available for a deposition by the Trustee on at least ten (10) days prior written notice made to the Debtors' and Respondents' counsel; and it is further

ORDERED that entry of this order is without prejudice to the Trustee's right to request and/or conduct any other discovery, pursuant to Rule 2004 or other applicable law, from any person or entity, including, without limitation, the Debtors.

Dated: New York, New York            _____
       December ___, 2008            The Honorable James M. Peck
                                     United States Bankruptcy Judge

# **SCHEDULE A**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
Gregory A. Horowitz
Amy Caton

Attorneys for The Bank of New York Mellon Trust Company, N.A., as Indenture Trustee

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| LEHMAN BROTHERS HOLDINGS INC., et al. | ) Chapter 11 |
| | ) |
| | ) Case No. 08-13555 |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |

**THE BANK OF NEW YORK MELLON TRUST**
**COMPANY, N.A.'S FIRST REQUEST FOR**
<u>**PRODUCTION OF DOCUMENTS**</u>

The Bank of New York Mellon Trust Company, N.A. (formerly known as The Bank of New York Trust Company, N.A.) as indenture trustee, pursuant to Fed R. Civ. P. 34, made applicable to these proceedings pursuant to Fed. R. Bankr. P. 7034, requests that Lehman Brother Holdings, Inc., Lehman Brothers, Inc., Lehman Brothers Commodity Services Inc. and Barclays Capital Inc. each produce the following documents to the offices of Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York, 10036, at a time to be determined by the Court.

KL2 2582479.2

## **Instructions**

1. Unless otherwise specified in any request, furnish documents generated, transmitted or received on or after January 1, 2008 or otherwise relating to the period from January 1, 2008 to the present.

2. In responding to each request, furnish all documents that are available to you.

3. All documents are to be produced as kept in the usual course of business or organized and labeled to correspond with the categories in this request.

4. The file folder or other container in which a document is kept is deemed to be an integral part of the document and shall be produced with the document.

5. Each paragraph and subparagraph hereof and the definitions herein are to be construed independently, and not by or with reference to any paragraph or subparagraph or definition herein for purposes of limiting the scope of any particular request or the subject matter thereof.

6. If in answering these requests, you claim any ambiguity in interpreting either these requests or a definition or instruction applicable thereto, you shall not use such claims as a basis for refusing to respond, but shall identify as part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding to the request.

7. If you object to any part of a document request, produce documents responsive to all parts of the request to which you do not object.

8. These document requests shall be deemed continuing so as to require supplementation if you or your attorneys or agents become aware of, receive or generate additional documents responsive to these requests after the time of the initial response.

2

9. If any document called for by this request is withheld under a claim of privilege, furnish a list setting forth for each document: (i) the nature of the privilege (including attorney work product) that is being claimed; (ii) the type of document (*e.g.,* letter, memo, handwritten notes); (iii) the general subject matter of the document; (iv) the date of the document; and (v) such other information as is sufficient to identify the document for a *subpoena duces tecum*, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressees to each other.

10. If there are no documents responsive to a specific request, so state in writing.

11. If any document requested was, but is no longer, in your possession, custody or control, state the subject matter of the document, what disposition was made of it, and the date or dates on which such disposition was made. Additionally, produce all documents concerning the disposition of such document.

12. If you are unable to locate any document requested, state all efforts that have been made to locate it, and identify any individual who you believe is likely to possess any information regarding the present location of the document.

13. If you know of any documents responsive to a particular request but cannot produce them, so state, produce the documents within your possession, custody or control on the subject matter sought, and identify each person whom you believe has documents responsive to the request.

**Definitions**

1. Pursuant to Rule 7026-1 of the local rules of the United States Bankruptcy Court for the Southern District of New York, the uniform definitions set forth in Rule 26.3 of the

3

Local Rules of the United States District Court for the Southern District of New York are hereby incorporated by reference as if fully set forth herein.

2. "Asset Purchase Agreement" shall mean that certain Asset Purchase Agreement by and among LBHI, LBI, LB 745 LLC, and Barclays dated September 16, 2008, attached as Exhibit A to Docket No. 280.

3. "Barclays" shall mean Barclays Capital Inc., as well as it present and former officers, directors, agents, employees, representatives, successors and all other person acting or purporting to act on its behalf.

4. "Clarification Letter" shall mean the Clarification Letter and Agreement by and among Barclays, LBHI, LBI, and LB 745 LLC dated September 20, 2008, attached as Exhibit C to Docket No. 280.

5. "Communication" means both the documentary and non-documentary transmission of facts, data or any other information, whether transmitted verbally, visually, in writing, electronically or by any other means or media from one natural person or entity to another natural person or entity; the non-documentary transmission of information shall include, but not be limited to, oral statements, telephone conversations, negotiations, conferences or meetings, however formal or informal.  The term also includes information relating to oral communications and written communications, whether or not any such information or writings were themselves transmitted by their author or any other persons.

6. "Concerning" shall mean directly or indirectly concerning, mentioning, describing, pertaining to, being connected with or reflected upon a stated subject matter.

7. The terms "document" and "documents" and the documents specifically named herein shall have the broadest meaning permissible under the Federal Rules of Civil

4

Procedure, and shall include, but not be limited to, all originals, copies, drafts, attachments, appendices, or any self-stick removable notes or papers, of any written, printed, typed, recorded, filmed, photographed, transcribed, taped or graphic matter of any kind or nature, however printed, produced, reproduced, coded or stored including, but not limited to all: papers, books, accounts, correspondence, reports, memoranda, handwritten or stenographic notes, invoices, computer printouts, computer discs, other means of saving electronic data, audiotapes, videotapes, e-mail messages, telex messages, work papers, telephone logs, diaries, desk calendars, minutes and corporate resolutions. Copies which are not identical duplicates of the original of each document shall be deemed separate and distinct documents.

8. "Eagle Energy" shall mean Eagle Energy Partners I, L.P., as well as its present and former officers, directors, agents, employees, representatives, successors and all other persons acting or purporting to act on its behalf.

9. "First Amendment" shall mean the First Amendment to the Asset Purchase Agreement by and among Barclays, LBHI, LBI, and LB 745 LLC dated September 19, 2008, attached as Exhibit B to Docket No. 280.

10. "LBCS" shall mean Lehman Brothers Commodity Services Inc., as well as its present and former officers, directors, agents, employees, representatives, successors and all other persons acting or purporting to act on its behalf.

11. "LBCS Employees" shall mean all individuals employed, retained, or consulted by LBCS who (i) performed services in commodities trading for or on behalf of LBCS or (ii) facilitated or assisted in making and effecting LBCS trades or financial transactions. This definition shall include all full or part-time employees and paid consultants.

5

12. "LBHI" shall mean Lehman Brothers Holdings, Inc., as well as its present and former officers, directors, agents, employees, representatives, successors and all other persons acting or purporting to act on its behalf.

13. "LBI" shall mean Lehman Brothers, Inc., as well as its present and former officers, directors, agents, employees, representatives, successors and all other persons acting or purporting to act on its behalf.

14. "Person" shall mean any individual, corporation, partnership, company, organization, association, governmental unit or any other identifiable entity.

15. "You" or "your" shall refer to any person to whom these documents requests have been addressed.

16. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this document request all responses that might otherwise be construed to be outside of its scope

17. Whenever used herein, the singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive and disjunctive; the word "all" means both "any and all"; the word "any" means "any and all".

**First Request For Documents**

Please produce the following documents that are within your possession, custody or control:

1. Any and all versions of the Asset Purchase Agreement, First Amendment and Clarification Letter, including all drafts.

2. All documents relating to the decision to exclude LBCS, Eagle Energy, and the assets thereof from the Asset Purchase Agreement, including without limitation all communications between or among representatives of Debtors and Barclays relating to such

6

assets and all written consents, resolutions and minutes of any meetings of the board of directors of Barclays or any committee or subcommittee thereof concerning this decision or the Asset Purchase Agreement, the First Amendment and/or the Clarification Letter.

      3.    All documents concerning the "incorporation" of the "commodities trading previously conducted by Lehman Brothers in North America" into the "commodity products and services offered by Barclays Capital" as described in Barclays' October 7, 2008, press release.

      4.    Documents sufficient to identify all individuals who were LBCS Employees from June 1, 2008 until the execution of the Asset Purchase Agreement, and documents sufficient to show which of these employees are presently employed, retained, or consulted by Barclays or have performed services on behalf of Barclays at any time from the execution of the Asset Purchase Agreement until the present.

      5.    All employment contracts of any LBCS Employees referred to in Request 4 above.

      6.    Exemplars of all stationery, business cards, phone numbers, email addresses, office directories, and other items identifying by name any of the employees identified in Requests 4 and 5 above.

      7.    All client lists, trading documents, or marketing materials used by LBCS or LBCS Employees from June 1, 2008, and until the present, including the identification of individual employees of Barclays/LBCS who currently possess, maintain, and/or use such lists, trading documents or materials.

      8.    All documents concerning any proprietary risk management software or proprietary risk management or financial modeling owned or licensed by LBCS prior to the

7

execution of the Asset Purchase Agreement, and the identification of whether such software or modeling was owned, licensed, maintained or used by Barclays at any time following the execution of the Asset Purchase Agreement.  This shall include, without limitation, the identification and location of such software or modeling on Barclays' electronic databases, mainframes, or computer servers and the individuals currently employed by Barclays who use and maintain such software and/or modeling.

9.      All documents concerning proprietary systems of effecting commodity markets transactions and other proprietary products used by LBCS or LBCS Employees and offered to its clients which were transferred to, or are being in any way used by, Barclays, including intranet and internet services.

10.     All documents concerning any trades made by LBCS or LBCS Employees prior to the execution of the Asset Purchase Agreement, including the identification of the transfer of any such trades to Barclays now in Barclays' possession and the individual Barclays employees who have retained and/or continue to manage such trades and including all documents reflecting or relating to the assignment of such trades.

11.     Documents sufficient to show the location of corporate records maintained by or on behalf of LBCS prior to the execution of the Asset Purchase Agreement and until the present date hereof.

12.     Documents sufficient to show all transactions by, between, and/or among Barclays on the one hand and LBCS or LBCS Employees on the other hand.

13.     Documents sufficient to show the financial condition of and assets owned by LBCS from August 30, 2005 until the present, including but not limited to financial

statements, balance sheets, income statements, profit/loss statements, cash flow statements, and any financial valuations of the assets of LBCS.

14.   Any and all versions of documents concerning the effect and/or impact of the Asset Purchase Agreement, the First Amendment, the Clarification Letter or any purchase of the assets of LBHI, LBI, LB 745 LLC, or LBCS contemplated by Barclays Capital or LBCS prior to the execution of the Asset Purchase Agreement on the creditors of LBCS, including summaries, analysis, and financial modeling or diagrams.

15.   All documents concerning any communication between Barclays, LBHI, LBI, and/or LBCS or LBCS Employees with creditors of LBCS, including any communication between and among Barclays, LBHI, LBI, and/or LBCS concerning LBCS's creditors and any and all notices sent to LBCS creditors concerning the sale of LBCS assets including bulk asset sales.

16.   All documents provided to or considered by the board of directors of Barclays, LBHI, LBI, and/or LBCS or any committee or subcommittee thereof concerning the Asset Purchase Agreement, the First Amendment, the Clarification Letter and/or the decision to exclude the assets of Eagle Energy and LBCS from the Asset Purchase Agreement.

17.   Documents sufficient to identify the members of Barclays', LBCS's, LBHI's, and/or LBI's boards of directors prior to the execution of the Asset Purchase Agreement and until the present date hereof.

18.   All documents concerning the management structure of Barclays' commodities business, including its energy trading business, prior to and after the execution of the Asset Purchase Agreement through the date hereof, including the identification of individual managers and any organizational charts.

9

Dated:  November 26, 2008

                            KRAMER LEVIN NAFTALIS & FRANKEL LLP

                     By:  /s/ Amy Caton
                          Amy Caton
                          Gregory A. Horowitz
                          1177 Avenue of the Americas
                          New York, New York 10036
                          212-715-9100

                     Attorneys for The Bank of New York Mellon Trust Company, N.A., as Indenture Trustee

10

## **SCHEDULE B**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
Gregory A. Horowitz
Amy Caton

Attorneys for The Bank of New York Mellon Trust Company, N.A., as Indenture Trustee

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| LEHMAN BROTHERS HOLDINGS INC., et al. | ) Chapter 11 |
| | ) |
| | ) Case No. 08-13555 |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |

**NOTICE OF DEPOSITION**

      PLEASE TAKE NOTICE that, pursuant to Rules 7026 and 7030 of the Federal Rules of Bankruptcy Procedure and Rules 26 and 30 of the Federal Rules of Civil Procedure, counsel for The Bank of New York Mellon Trust Company, N.A., as indenture trustee (the "Indenture Trustee"), will take the deposition upon oral examination of the representatives of Lehman Brothers Holdings, Inc., Lehman Brothers, Inc., Lehman Brothers Commodity Services Inc., and Barclays Capital Inc. possessing the most knowledge regarding the topics listed on the attached Exhibit A, at the offices of Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, at a time and date to be set by the Court.

KL3 2688627.2

| | |
|---|---|
| Dated: November 26, 2008 | KRAMER LEVIN NAFTALIS & FRANKEL LLP |
| | By: /s/ Amy Caton |
| | Amy Caton |
| | Gregory A. Horowitz |
| | 1177 Avenue of the Americas |
| | New York, New York 10036 |
| | 212-715-9100 |
| | Attorneys for The Bank of New York Mellon Trust Company, N.A., as Indenture Trustee |

2

# Exhibit A

## Definitions

The instructions and definitions set forth in the Indenture Trustee's First Request for Production of Documents dated November 18, 2008 are incorporated by reference herein.

### Topics upon which a Designated Representative is Required to Testify on behalf of Barclays, LBHI, LBI, and/or LBCS

1. The decision(s) to enter into and subsequent negotiation, drafting, and execution of the Asset Purchase Agreement, the First Amendment, and the Clarification Letter.

2. The financial condition of LBCS as of (i) its creation around August 2005, (ii) after September 12, 2008, and (iii) through the date hereof.

3. The corporate structure and management organization of LBCS and the integration or transfer of any of LBCS's businesses or individual employees into the Barclays organization.

4. The relationship between LBHI, LBI, and LBCS.

5. Transactions by, between and/or among Barclays on the one hand and LBCS on the other hand.

6. Transactions by, between and/or among LBHI or LBI on the one hand and LBCS on the other hand.

7. Any actions or meetings of the board of directors of LBCS or any committee or subcommittee thereof concerning the Asset Purchase Agreement, the First Amendment, and/or the Clarification Letter.

8. Any actions or meetings of the board of directors of LBHI or LBI or any committee or subcommittee thereof concerning the Purchase Agreement, the First Amendment, and/or the Clarification Letter.

3

9. Any actions or meetings of the board of directors of Barclays or any committee or subcommittee thereof concerning the Asset Purchase Agreement, the First Amendment, and/or the Clarification Letter.

10. The decision to exclude LBCS and Eagle Energy from the Asset Purchase Agreement as modified by the First Amendment and the Clarification Letter.

11. The identity of the creditors of LBCS, and any discussions or communications with these creditors or between and among Barclays, LBHI, LBI, and/or LBCS concerning the effect of the Asset Purchase Agreement, the First Amendment, and/or the Clarification Letter on LBCS's creditors.