**BAKER & McKENZIE LLP**
One Prudential Plaza, Suite 3500
130 East Randolph Drive
Chicago, Illinois  60601
Telephone:  (312) 861-8000
Carmen H. Lonstein (Pro Hac Vice)

1114 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 626-4100
Ira A. Reid (IR-0113)

**Attorneys for Portfolio Green German CMBS GMBH**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 08-13555 (JMP) |
| | (Jointly Administered) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | |
| | Chapter 11 |
| Debtors. | |
| | Hon. James M. Peck |

**OBJECTION TO DEBTOR'S MOTION FOR AN ORDER PURSUANT TO
SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH
PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION
<u>AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS</u>**

Portfolio Green German CMBS GMBH, a limited liability company under the laws of the Federal Republic of Germany ("Portfolio Green"), by and through its undersigned counsel, and pursuant to sections 105, 365(e)(1) and 560 of the United States Bankruptcy Code, 11 U.S.C. §§ 105, 365(e)(1) and 560, hereby objects to the Debtor's Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption

1

and Assignment of Prepetition Derivative Contracts (the "Procedures Motion"), and in support hereof states as follows:

**<u>Preliminary Statement</u>**

1.    By way of the Procedures Motion, Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors") seek Court approval of a procedure that improperly limits statutory and contractual rights of parties to "swap agreements" under the "safe harbor provisions" in sections 101(53)(B), 365(e)(1) and 560 of the Bankruptcy Code, including the express statutory right to terminate a swap agreement on account of a debtor counter-party's insolvency at any time before the closing of a chapter 11 case or anytime after the commencement of a chapter 11 case ("Insolvency Events"). 11 U.S.C. §§101(53)(B), 365(e)(1) and 560.

2.    The Debtors' request to limit or eliminate statutory and contractual rights is made without citing any specific legal basis or authority except section 105 of the Bankruptcy Code and three totally inapposite procedural orders that deal only with notices of consensual settlements. Yet, it is well established that section 105 of the Bankruptcy Code is limited to the granting of relief to implement the provisions of the Bankruptcy Code, not to strip parties of express protections granted therein or to otherwise authorize actions in contravention of other provisions of the Bankruptcy Code.  Here, the Debtors seek to use section 105 to create a "new right" to potentially assign contracts that have either been terminated or remain terminable on account of Insolvency Events and to otherwise improperly limit existing statutory rights to object to a proposed assignment on any grounds permissible under the Bankruptcy Code and applicable law.

2

3. The Debtors also seek to impair the rights of counterparties under related credit support documents issued by LBHI, specifically to provide for the release of LBHI's obligations under related guarantees. Such relief is well beyond the scope of a mere procedural order and contrary to section 524(e) of the Bankruptcy Code.

4. In addition, the Debtors propose a time frame of five business (5) days for the filing of any objection to a proposed assignment of a derivative contract. This time frame is too short given the complexity of the underlying transactions, the multi-jurisdictional nature of such transactions and the multiple parties involved. For these and other reasons detailed below, the Procedures Motion should be denied.

## Relevant Background

5. Lehman Brothers Special Financing, Inc ("LBSFI") and Portfolio Green, a German residential mortgage backed securities issuer, are parties to a certain ISDA Master Agreement dated as of November 15, 2007, as amended and supplemented from time to time by related schedules, agreements, confirmations or similar documents (the "Swap Agreement").

6. LBSFI filed its chapter 11 petition in Case No. 08-13888-JMP on October 3, 2008, which case has been jointly administered before this Court with the chapter 11 case of its ultimate parent LBHI pursuant to this Court's Order Directing Joint Administration dated October 16, 2008. LBHI is a guarantor of the Swap Agreement pursuant to the terms of a certain Guarantee of Lehman Brothers Holdings, Inc. dated as of November 15, 2007 (the "Guarantee").

7. Under the Swap Agreement, LBSFI and Portfolio Green entered into certain swap transactions related to the following debt instruments : (a) €425,500,000 Class A Secured Floating Rate Notes due 2050; (b) the €40,000,000 Class B Secured Floating Rate Notes due 2050; (c) the € 40,000,000 Class C Secured Floating Rate Notes due 2050, (e) the € 35,000,000

Class D Secured Floating Rate Notes due 2050, the € 20,000,000 Class E Secured Floating Rate Notes due 2050, the € 12,000,000 Class F Secured Floating Rate Notes due 2050, the € 4,000,000 Class G Secured Floating Rate Notes due 2050, the € 8,911,000 Class H Secured Fixed Rate Notes due 2050 (collectively, the "Notes"), all as more fully set forth in the Swap Agreement.

8.     The Notes are administered by LaSalle Global Trust Services, as Trustee (the "Trustee") pursuant to a certain Note Trust Agreement dated November 15, 2007 (the "Trust Agreement"). The Trustee has advised undersigned counsel that they are not aware of the exact number or identity of the holders of the Notes (the "Noteholders").

9.     Pursuant to the section 5(a)(vii)(4) of the Swap Agreement and the Swap Agreement Schedule dated November 15, 2007 (the "Schedule) at Part 1(g), the commencement of a chapter 11 case by LBSFI and/or LBHI constitutes an Event of Default. Under section 6(a) of the Swap Agreement, at any time after an Event of Default, Portfolio Green has the right to provide LBSFI notice of an "Early Termination Date" of all outstanding transactions under the Swap Agreement effective upon not more than twenty (20) days' notice.

10.    Since October 3, 2008, Portfolio Green has been analyzing the outstanding transactions under the Swap Agreement. As of the date of this filing, it appears that the Swap Agreement is an "out of the money" contract, that is LBSFI has outstanding obligations to Portfolio Green and the Noteholders, as does LBHI under the Guarantee. In order to decide whether or not the Swap Agreement should be terminated and a new swap provider should be appointed by Portfolio Green, as required under the Trust Agreement, a decision of the Noteholders is required. It takes some time until such decision can be obtained from multiple parties in numerous jurisdictions, each with separate counsel analyzing their respective positions.

11.     Pending the conclusion of this ongoing analysis and decision on how to proceed, Portfolio Green seeks to preserve any and all of its legal rights, including but not limited to all statutory and contractual rights, and those of the Noteholders, under the Swap Agreement, the Guarantee and all related agreements.  Therefore, Portfolio Green objects to the provisions of the Procedures Motion that seek to cut off those legal rights, as set forth below.

### **Grounds for Objection**

*Improper Termination of Statutory Rights*

12.     In paragraph 8 and Fn2 of the Procedures Motion, the Debtors seek to undermine the safe harbor termination provisions in the Bankruptcy Code by suggesting that parties that have not terminated a derivative contract at this point have waived their termination rights, and can no longer assert such rights if the Debtors choose to attempt to assign a terminable derivative contract, or if the Debtors disagree that a termination of that contract was properly effectuated prior to the attempted assignment.  This is despite the fact that there is no time limit in section 560 of the Bankruptcy Code, or elsewhere, for the exercise of such rights by a party to a "swap agreement" as defined in section 101(53)(B) of the Bankruptcy Code.[1]  11 U.S.C. §560.

13.     Further, in paragraph (e) of the proposed procedures, the Debtors do not provide that counterparties can object to a proposed assignment on the grounds that a derivative contract has been terminated or is terminable under section 560 of the Bankruptcy Code.  Indeed, the Debtors propose that counterparties can object only on three grounds that the Debtors have *pre-selected*, as follows:

> "[t]o the extent any Counterparty wishes to object on the grounds of (i) the proposed Cure Amount; (ii) the need to cure a default or early termination event, ….*other than a Default relating to the commencement of a case under the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition*

---

[1]   Here, the Swap Agreement qualifies as a "swap agreement" for debt swaps under section 101(53)(B)(A)(i)(V).

5

*of any of the Debtors,* which Defaults need not be cured prior to assignment; or (iii) the adequate assurance of future performance under the applicable Derivative contract if neither the assignee nor its replacement credit support provider (if any) is a Qualified Assignee…." (Procedures Motion ¶19.e.) (emphasis added).

14. At pages 6-8 of the proposed order approving the Procedures Motion (the Procedures Order"), the Debtors propose broad injunctive and other substantive relief to, among other things, permanently extinguish a party's existing contractual right to declare an "Early Termination Date" under their contracts in accordance with the safe harbor provisions of the Bankruptcy Code. By way of example, the Procedures Order contains decretal language to the following effect:

> "…the grounds on which Counterparties may object to the assignment of their Derivative Contracts s*hall be limited as described in subparagraph e of the second decretal paragraph of this Order* [same as ¶19.e of Procedures Motion] (emphasis added);" and

> "..Any portions of any such assigned Derivative Contract that purport to permit the Counterparty to terminate the Derivative Contract by reason of such assignment, or any default or termination right arising prior to or existing at the time of the assignment, including as a result of the commencement of a case under the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the Debtors, are void and of no force and effect, and shall not be enforceable against the assignee(s), all future assignees, each of their respective affiliates, successors and assigns, and any affected third parties, and the Counterparties shall not have the right to terminate or cease payment, delivery or any other performance under the Derivative Contracts, assert any claim, or termination payments, or impose any penalty by reason of such assignment or any default or termination right arising prior to or existing at the time of the assignment…." (Procedures Order at p.8.)

15. The relief requested directly contravenes the provisions of section 560 of the Bankruptcy Code, which provides in relevant part:

> "The exercise of **any contractual right of any swap participant**…to cause the liquidation, termination, or acceleration of one or more swap agreements *because of a condition of the kind specified in section 365(e)(1)* of this title or to offset or net out any termination values or payment amounts arising under or in connection with the termination, liquidation or acceleration of one or more swap agreements **shall not be stayed, avoided, or otherwise limited by operation of any**

6

**provision of this title, or by order of a court** or administrative agency in any proceeding under this title….” 11 U.S.C. §560 (emphasis added).

16. The conditions specified in section 365(e)(1) of the Bankruptcy Code include provisions in a contract that permit termination based upon… "(A) the insolvency or financial condition of the debtor at any time before the closing of the case; [and] (B) the commencement of a case under [title 11]…" 11 U.S.C. §365(e)(1).

17. Thus, under the clear and unambiguous language of sections 560 and 365(e)(1) of the Bankruptcy Code, Portfolio Green and/or the Noteholders are entitled to assert their contractual termination rights on account of LBFSI's insolvency at any time before the closing of its chapter 11 case, or on account of LBFSI's commencement of a chapter 11 case at any time after commencement of that case.

18. More importantly, the statutory language of section 560 is clear and unambiguous that no court order can be issued that would limit or impair those rights and that no other provisions of the Bankruptcy Code operate to limit or impair those rights. See, e.g., Lee v. Bankers Trust Co., 166 F.3d 540, 544 (2d Cir. 1999) ("It is axiomatic that the plain meaning of a statute controls its interpretation and that judicial review must end at the statute's unambiguous terms.") (citations omitted).

19. The Debtors cite only section 105 of the Bankruptcy Code in support of their expansive request. However, "[s]ection 105 is not without limits. It does not permit the court to ignore, supersede, suspend, or even misconstrue the statute itself or the rules." In re Johns Manville Corp., 26 B.R. 405, 409-10 (Bankr. S.D.N.Y. 1983). See also Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.").

7

20. The only other authority the Debtors purport to cite are three procedural orders entered by the bankruptcy courts in the chapter 11 cases of NRG Energy, Inc., Mirant Corporation, and Enron Corp. (Procedures Motion ¶21); however, these courts limited the scope of their procedural orders to procedures for noticing third parties such as creditors' committees and DIP lenders of *proposed consensual settlements* of transactions with parties to derivative contracts – not the imposition of an adversarial process to cut-off clear statutory and contractual rights of parties to terminated or terminable derivative contracts. Nor did these procedural orders involve the imposition of an adversarial mechanism to cut-off of express statutory and contractual assignment rights or to discharge third party guarantors. See In re NRG Energy, Inc., et al. (Case No. 03-13024) (Bankr. S.D.N.Y. 2003) (Doc. 414) (procedure for notifying statutory committees of proposed settlements and providing for 10-day objection period); In re Mirant Corporation, et al. (Case No. 03-46590) (DML) (Bankr. N.D. Tex. 2003) (Doc No. 3033) (procedure for notifying committees and DIP lender of proposed settlement and providing for 15-day objection period); In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D. N.Y. 2011) (Doc. No. 4129) (procedure for notifying creditors' committee of proposed consensual settlements and providing for 10-day objection period).

21. Clearly, the Debtors have no legal basis to request this Court to limit or modify the contractual termination rights of Portfolio Green or the Noteholders under the Swap Agreement in direct contravention of the express provisions of section 560 of the Bankruptcy Code. Therefore, to the extent the Debtors are seeking to limit those legal rights, the Procedures Motion must be denied.

*Improper Limitation on Assignment Objections*

22.     The Procedures Motion improperly seeks to limit the type of objection that a contract party can assert in opposition to the Debtor's attempt to assign a terminated or terminable Derivative Contract.  In addition to barring objections based upon termination rights, as noted above, the Debtors propose to limit objections to a proposed assignee by deeming a party to be a "Qualified Assignee" even though that party may not qualify as an assignee under the terms of the underlying contract (Procedures Motion ¶ 19.b).

23.     The Debtors' proposal in paragraphs 19.b of the Procedures Motion to deem a party qualified based solely on a credit rating is absurd in view of the recent history and track record of credit agencies (e.g., AMBAC, AIG, Lehman and others).  More importantly, there is no *legal* basis or authority to deem an assignee qualified by the mere fact of a credit rating.  The rights of contract parties to object to the qualifications of a proposed assignee based upon the underlying contractual agreements, the Bankruptcy Code and applicable law should not be modified or impaired under any procedures approved by this Court.

24.     On a related issue, the language in paragraph 19.c of the Procedures Motion is objectionable to the extent the procedures attempt to automatically "deem" a counterparty to have received adequate assurance of future performance by virtue of a credit rating that predetermines the assignee to be deemed a "Qualified Assignee."  Although the Bankruptcy Code does not define "adequate assurance," upon examination of the legislative history, courts have concluded that "Congress intended that the words 'adequate assurance' be given a practical pragmatic construction . . . to be determined under the facts of each particular case." In re Bygaph, Inc., 56 Bankr. 596, 605 (Bankr. S.D.N.Y. 1986); In re Natco Industries, Inc., 54 Bankr.

436, 440 (Bankr. S.D.N.Y. 1985); In re Sanshoe Worldwide Corp., 139 B.R. 585, 592 (S.D.N.Y. 1992).

25. This Court is required to make factual findings regarding adequate assurance for each and every contract that the Debtors propose to assign based on the facts and circumstances of each particular contract. The Procedures Motion is therefore flawed in proposing a mechanism where parties can raise only limited objections and unidentified contracts can be assigned despite the fact that this Court has not yet ruled on adequate assurance disputes. (Procedures Motion ¶19.g.) Any assignment should be effective only if the affected parties have the opportunity to raise and be heard on any objections that are appropriate under their respective contracts, the Bankruptcy Code and applicable law, and only when the court finds that the statutory protections afforded to contract parties with respect to adequate assurance have been met. Id.; 11 U.S.C. §§ 365(b), (f)(2)(B).

26. In sum, any provisions in the proposed procedures that impair or limit the statutory rights of counterparties to object to a proposed assumption and/or assignment, including without limitation based upon the protections in sections 365(b) and 365(f)(2)(B), are improper and should be denied.

*Improper Release of Credit Support Obligations*

27. Although not the subject of elaboration in the Procedures Motion, the Procedures Order contains proposed language that would ostensibly have the effect of releasing LBHI from credit support obligations following an assignment under the proposed procedures. Specifically, the Procedures Order provides "except as provided in the Assignment Notice or this Order, upon assignment of a Derivative Contract pursuant to the Assumption and Assignment Procedures, the Debtors and their estates shall have no further liabilities or obligations under the Derivative

Contracts, and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, each of their respective affiliates, successors and assigns, their property or their assets or estates…" (Procedures Order at p. 9.)

28. The Debtors cite no legal authority for the broad third party releases and injunctive relief they seek in a mere procedures motion. The proposed release of third party guarantors is contrary to the express provisions of section 524(e) of the Bankruptcy Code and no provision for such releases is found in section 365 of the Bankruptcy Code. Indeed, even when a debtor is obtaining a discharge under a confirmed plan of reorganization, third party releases are limited and granted only in exceptional circumstances that do not apply here. See e.g., In re Drexel Burnham Lambert Group Inc., 960 F.2d 285, 293 (2d Cir. 1992), cert dismissed, 506 U.S. 1088, 113 S. Ct. 1070, 122 L.Ed. 2d 497(1993) (holding release of co-debtors only permissible when such release is essential for the confirmation of a plan of reorganization).

29. To the extent the proposed procedures seek to adversely impair or limit any counterparties' rights under related credit support documents, including without limitation guarantees issued by LBHI, the Procedures Motion must be denied..

*Limited Time To Object to Assignment*

30. The Debtors propose a time frame of five business (5) days for the filing of any objection to a proposed assignment of a derivative contract. (Procedures Motion ¶19.e.) This time frame is too short given the complexity of the underlying transactions, the multi-jurisdictional nature of such transactions and the multiple parties involved. With respect to the Swap Agreement, Portfolio Green would need significant additional time to provide effective notice and opportunity to respond to the Noteholders. The notice period proposed in the Procedures Motion should be extended to forty (40) days at a minimum.

*Vague Time Limit For Notice of Effective Date*

31. Further, the Debtor's propose to set no fixed time frame for notification of an effective assignment, suggesting they will notify counterparties of the effective date of an assignment "within a reasonable time," a vague standard that could materially prejudice the rights of parties. (Procedures Motion ¶19.j.) The procedures should require something more specific as an outside date (e.g. "...but in any event by not later than 2 business days after consummation of an assignment) for the reasonable protection of counterparties.

*Terminated Contracts*

32. The Debtors admit they do not agree that certain contracts have been terminated and for this reason propose procedures to limit the rights of parties to terminated contracts that the Debtors "may" wish to assign. If the Debtor disagrees that a contract is terminated, however, there should instead be a deadline for the Debtors to advise a counterparty of the same and an immediate procedure for scheduling a hearing on the termination dispute and related issues.

*Preservation of Setoff Rights*

33. It is unclear whether the Debtors propose to limit or impair counterparties' statutory setoff rights and the right to realize against collateral as set forth in sections 362 (b)(6), (b)(7), (b)(17), (b)(27) of the Bankruptcy Code, 11 U.S.C. §§ 362 (b)(6), (b)(7), (b)(17), (b)(27), as made applicable to certain derivative contracts. The Procedures Motion doesn't mention these exceptions and seems to imply they don't exist by limiting the grounds for objecting to a proposed assumption and assignment. A counterparties' right to assert these rights should not be prematurely impaired or cut-off and therefore any procedures to be entered by this Court should make clear that such rights are fully preserved.

**Conclusion**

The Procedures Motion seeks to subvert the express statutory and contractual rights protected under the Bankruptcy Code, as set forth above, and to prematurely cut off those rights. However, the Debtors fail to offer any legal basis to obtain such expansive relief contrary to the express provisions of the Bankruptcy Code and applicable law. Therefore, for all the reasons set forth above, the Procedures Motion must be denied.

Dated: New York, New York
November 26, 2008

Respectfully submitted,

**BAKER & McKENZIE LLP**

By: ___/s/ Ira A. Reid_____

Carmen H. Lonstein (Pro Hac Vice)
Ira A. Reid (IR-0113)

One Prudential Plaza, Suite 3500
130 East Randolph Drive
Chicago, Illinois 60601

1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 626-4100

Attorneys for Portfolio Green
German CMBS GMBH

NYCDMS/1107886.1