**BAKER & McKENZIE LLP**
One Prudential Plaza, Suite 3500
130 East Randolph Drive
Chicago, Illinois  60601
Telephone:  (312) 861-8000
Carmen H. Lonstein (Pro Hac Vice)

1114 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 626-4100
Ira A. Reid (IR-0113)

**Attorneys for Natixis Environnement &
Infrastructures ("NATIXIS")**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 08-13555 (JMP) |
| | (Jointly Administered) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | |
| | Chapter 11 |
| Debtors. | |
| | Judge James M. Peck |

**OBJECTION TO DEBTOR'S MOTION FOR AN ORDER PURSUANT
TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH
PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION
AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS**

NATIXIS Environnement & Infrastructures ("NATIXIS"), in its capacity as agent and on behalf of the European Carbon Fund ("ECF"),  by and through its undersigned counsel, and pursuant to sections 105, 365(e)(1) and 556 of the United States Bankruptcy Code, 11 U.S.C. §§ 105, 365(e)(1) and 560, hereby objects to the Debtor's Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption

1

and Assignment of Prepetition Derivative Contracts (the "Procedures Motion"), and in support hereof states as follows:

### Preliminary Statement

1. By way of the Procedures Motion, Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors") seek Court approval of a procedure that improperly limits statutory and contractual rights of parties to "swap agreements" under the "safe harbor provisions" in sections 101(53)(B), 365(e)(1) and 560 of the Bankruptcy Code, including the express statutory right to terminate a swap agreement on account of a debtor counter-party's insolvency at any time before the closing of a chapter 11 case or anytime after the commencement of a chapter 11 case ("Insolvency Events"). 11 U.S.C. §§101(53)(B), 365(e)(1) and 560.

2. The Debtors' request to limit or eliminate statutory and contractual rights is made without citing any specific legal basis or authority except section 105 of the Bankruptcy Code and three totally inapposite procedural orders that deal only with notices of consensual settlements. Yet, it is well established that section 105 of the Bankruptcy Code is limited to the granting of relief to implement the provisions of the Bankruptcy Code, not to strip parties of express protections granted therein or to otherwise authorize actions in contravention of other provisions of the Bankruptcy Code. Here, the Debtors seek to use section 105 to create a "new right" to potentially assign contracts that have either been terminated or remain terminable on account of Insolvency Events and to otherwise improperly limit existing statutory rights to object to a proposed assignment on any grounds permissible under the Bankruptcy Code and applicable law.

3. The Debtors also seek to impair the rights of counterparties under related credit support documents issued by LBHI, specifically to provide for the release of LBHI's obligations under related guarantees. Such relief well beyond the scope of a mere procedural order and contrary to section 524(e) of the Bankruptcy Code.

4. In addition, the Debtors propose a time frame of five business (5) days for the filing of any objection to a proposed assignment of a derivative contract. This time frame is too short given the complexity of the underlying transactions, the multi-jurisdictional nature of such transactions and the multiple parties involved. For these and other reasons detailed below, the Procedures Motion should be denied.

**Relevant Background**

5. NATIXIS, acting in the name and on behalf of ECF, is a party to a certain Secondary Emission Reduction Purchase Agreement dated December 19, 2007 (the "SERPA") with Lehman Brothers Commodity Services, Inc., Debtor in Possession in chapter 11 Case No. 08-13885, pending before this Court ("LBCS"). Pursuant to the SERPA, ECF agreed to sell and the LBCS agreed to buy certain Certified Emission Reductions or Carbon Units ("CERs") generated by four energy-saving Clean Development Mechanism projects owned by Anshan Iron and Steel Group Corporation and Angang Steel Company in the People's Republic of China.

6. LBHI issued an unconditional guarantee of the SERPA in favor of ECF, guaranteeing the payment of all amounts payable by LBCS in connection with the SERPA. The obligations under this guarantee are unconditional and irrespective of the validity or enforceability of the SERPA.

7. LBHI filed its chapter 11 petition in the above-styled chapter 11 case on September 15, 2008. LBCS filed its chapter 11 petition in Case No. 08-13888-JMP on October

3, 2008, which case has been jointly administered before this Court with LBHI's chapter 11 case pursuant to this Court's Order Directing Joint Administration dated October 16, 2008.

8.      On or about September 23, 2008, LBCS received a written communication from ECF that the rating LBHI was downgraded to D by Standard and Poor's Rating Services and requested, pursuant to Clause 12.1.6 of the SERPA, that LBCS provide ECF with an adequate credit support in a form and amount reasonably acceptable to ECF within five business days. ECF never received an answer to this communication. Thereafter, on October 2, 2008, prior to LBCS's chapter 11 filing, and pursuant to Clause 12.2 of the SERPA, ECF sent a termination notice to LBCS (the "Termination Notice")

9.      Prior to the filing of the Procedures Motion, counsel for NATIXIS and LBCS were exchanging communications regarding their respective positions concerning termination of the SERPA and the nature of termination payments due.  On November 10 and November 19, 2008, NATIXIS' counsel communicated its position that the SERPA is a "commodity contract," that ECF properly terminated the SERPA by way of the Termination Notice in accordance with the terms of the SERPA and the safe harbor provisions of section 556 of the Bankruptcy Code, and that €100,000 was due to ECF.  On November 21, 2008, counsel for LBCS advised counsel for NATIXIS that LBCS was not in a position to determine whether the SERPA had been properly terminated and that according to LBCS' hypothetical calculation it believed amounts were due LBCS.

10.     NATIXIS, acting as agent for ECF, seeks to preserve any and all rights that ECF may assert under the SERPA, the Bankruptcy Code and applicable law with respect to the proper termination of the SERPA, and any and all amounts due to NATIXIS and ECF, and therefore

4

objects to the Procedures Motion to the extent it seeks to limit, curtail, modify, or impair those rights in any manner.

## Grounds for Objection

11. The SERPA is a "commodity contract" within the meaning of section 761(4) which defines the term broadly to include:

> A. *with respect to a futures commission merchant, contract for the purchase or sale of a commodity for future delivery on*, or subject to the rules of, a contract market or board of trade;
>
> B. with respect to a foreign futures commission merchant, foreign future;
>
> C. with respect to a leverage transaction merchant, leverage transaction;
>
> D. *with respect to a clearing organization, contract for the purchase or sale of a commodity for future delivery on,* or subject to the rules of, a contract market or board of trade that is cleared by such clearing organization, or commodity option traded on, or subject to the rules of, a contract market or board of trade that is cleared by such clearing organization;
>
> E. with respect to a commodity options dealer, commodity option;
>
> F. *any other agreement or transaction that is similar to an agreement or transaction referred to in this paragraph*;

11 U.S.C. §761(4)(A…F) (emphasis added).

12. ECF is a "forward contract merchant" within the meaning of section 101(26) of the Bankruptcy Code. Specifically, section 101(26) defines "forward contract merchant" as "a Federal reserve bank, or *an entity the business of which consists in whole or in part of entering into forward contracts as or with merchants in a commodity* (as defined in section 761) *or any similar good*, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade. 11 U.S.C. §§101(26). Recital A of the SERPA specifically states that ECF is a Luxembourg based investment company that purchases, mainly

5

project based carbon assets on a forward basis from developing or transition countries…"

SERPA Recital A.

13. Section 556 of the Bankruptcy Code provides Section 556 of the Bankruptcy Code states, in relevant part:

> "The contractual right of a commodity broker, financial participant, or *forward contract merchant* to cause the liquidation, termination, or acceleration of a commodity contract, as defined in section 761 of this title, or forward contract because of a condition of the kind specified in section 365 (e)(1) of this title, and the right to a variation or maintenance margin payment received from a trustee with respect to open commodity contracts or forward contracts, ***shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by the order of a court in any proceeding under this title.***"

11 U.S.C. §556.

14. Accordingly, ECF is entitled to terminate the SERPA at any time after commencement of LBCS' chapter 11 case in accordance with the provisions of section 556 of the Bankruptcy Code. 11 U.S.C. §§ 556. Here, the termination of the SERPA occurred *prior* to the filing of LBCS' chapter 11 case as a result of the Termination Notice. However, even if the termination of the SERPA had not occurred as of the filing of LBCS's chapter 11 case, ECF would be entitled to terminate the SERPA in accordance with the terms thereof under the safe harbor provisions of section 556 of the Bankruptcy Code and should therefore not be subjected to the proposed assignment procedures set forth in the Procedures Motion.

*Improper Termination of Statutory Rights*

15. In paragraph 8 and Fn2 of the Procedures Motion, the Debtors seek to undermine the safe harbor termination provisions in the Bankruptcy Code by suggesting that parties that have not terminated a derivative contract at this point have waived their termination rights, and can no longer assert such rights, if the Debtors choose to attempt to assign a terminable derivative contract, *or if the Debtors disagree that a termination of that contract was properly*

6

*effectuated prior to the attempted assignment.* This is despite the fact that there is no time limit in section 556 of the Bankruptcy Code, or elsewhere, for the exercise of such rights by a party to a commodity contract.

16. Further, in paragraph (e) of the proposed procedures, the Debtors do not provide that counterparties can object to a proposed assignment on the grounds that a derivative contract has been terminated or is terminable under section 556 of the Bankruptcy Code. Indeed, the Debtors propose that counterparties can object only on three grounds that the Debtors have *pre-selected*, as follows:

> "[t]o the extent any Counterparty wishes to object on the grounds of (i) the proposed Cure Amount; (ii) the need to cure a default or early termination event, ….*other than a Default relating to the commencement of a case under the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the Debtors,* which Defaults need not be cured prior to assignment; or (iii) the adequate assurance of future performance under the applicable Derivative contract if neither the assignee nor its replacement credit support provider (if any) is a Qualified Assignee…." (Procedures Motion ¶19.e.) (emphasis added).

17. At pages 6-8 of the proposed order approving the Procedures Motion (the "Procedures Order"), the Debtors propose broad injunctive and other substantive relief to, among other things, permanently extinguish a party's existing contractual right to declare an "Early Termination Date" under their contracts in accordance with the safe harbor provisions of the Bankruptcy Code. By way of example, the Procedures Order contains decretal language to the following effect:

- "…the grounds on which Counterparties may object to the assignment of their Derivative Contracts *shall be limited as described in subparagraph e of the second decretal paragraph of this Order* [same as ¶19.e of Procedures Motion](emphasis added);" and

- "..Any portions of any such assigned Derivative Contract that purport to permit the Counterparty to terminate the Derivative Contract by reason of such assignment, or any default or termination right arising prior to or existing at the time of the assignment, including as a result of the commencement of a case under the Bankruptcy Code by any of the

7

>Debtors, or the insolvency or financial condition of any of the Debtors, are void and of no force and effect, and shall not be enforceable against the assignee(s), all future assignees, each of their respective affiliates, successors and assigns, and any affected third parties, and the Counterparties shall not have the right to terminate or cease payment, delivery or any other performance under the Derivative Contracts, assert any claim, or termination payments, or impose any penalty by reason of such assignment or any default or termination right arising prior to or existing at the time of the assignment…." (Procedures Order at p.8.)

18. The relief requested in the Procedures Motion directly contravenes the provisions of section 556 of the Bankruptcy Code (Supra, ¶12). Section 556 expressly authorizes parties to a commodity contract to terminate the contract based upon the conditions specified in section 365(e)(1) of the Bankruptcy Code based upon… "(A) the insolvency or financial condition of the debtor at any time before the closing of the case; [and] (B) the commencement of a case under [title 11]…" 11 U.S.C. §365(e)(1).

19. More importantly, the statutory language of section 556 is clear and unambiguous that no court order can be issued that would limit or impair those rights and that no other provisions of the Bankruptcy Code operate to limit or impair those rights. See, e.g., Lee v. Bankers Trust Co., 166 F.3d 540, 544 (2d Cir. 1999) ("It is axiomatic that the plain meaning of a statute controls its interpretation and that judicial review must end at the statute's unambiguous terms.") (citations omitted).

20. The Debtors cite only section 105 of the Bankruptcy Code in support of their expansive request. However, "[s]ection 105 is not without limits. It does not permit the court to ignore, supersede, suspend, or even misconstrue the statute itself or the rules." In re Johns Manville Corp., 26 B.R. 405, 409-10 (Bankr. S.D.N.Y. 1983). See also Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.").

8

21. The only other authority the Debtors purport to cite are three procedural orders entered by the bankruptcy courts in the chapter 11 cases of NRG Energy, Inc., Mirant Corporation, and Enron Corp. (Procedures Motion ¶21); however, these courts limited the scope of their procedural orders to procedures for noticing third parties such as creditors' committees and DIP lenders of *proposed consensual settlements* of transactions with parties to derivative contracts – not the imposition of an adversarial process to cut-off clear statutory and contractual rights of parties to terminated or terminable derivative contracts. Nor did these procedural orders involve the imposition of an adversarial mechanism to cut-off of express statutory and contractual assignment rights or to discharge third party guarantors. See In re NRG Energy, Inc., et al. (Case No. 03-13024) (Bankr. S.D.N.Y. 2003) (Doc. 414) (procedure for notifying statutory committees of proposed settlements and providing for 10-day objection period); In re Mirant Corporation, et al. (Case No. 03-46590) (DML) (Bankr. N.D. Tex. 2003) (Doc No. 3033) (procedure for notifying committees and DIP lender of proposed settlement and providing for 15-day objection period); In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D. N.Y. 2011) (Doc. No. 4129) (procedure for notifying creditors' committee of proposed consensual settlements and providing for 10-day objection period).

22. The Debtors have no legal basis to request this Court to limit or modify the contractual termination rights of ECF in direct contravention of the express provisions of section 556 of the Bankruptcy Code. Therefore, to the extent the Debtors are seeking to limit those legal rights, the Procedures Motion must be denied.

*Improper Limitation on Assignment Objections*

23. The Procedures Motion improperly seeks to limit the type of objection that a contract party can assert in opposition to the Debtor's attempt to assign a terminated or

9

terminable derivative contract protected under the safe harbor provisions of the Bankruptcy Code, including section 556 thereof. In addition to barring objections based upon termination rights, as noted above, the Debtors propose to limit objections to a proposed assignee by deeming a party to be a "Qualified Assignee" even though that party may not qualify as an assignee under the terms of the underlying contract (Procedures Motion ¶ 19.b).

24.     The Debtors' proposal in paragraphs 19.b and 19.c of the Procedures Motion to deem a party qualified based solely on a credit rating is inappropriate in view of the recent history and track record of credit agencies (e.g., AMBAC, AIG, Lehman and others). More importantly, there is no *legal* basis or authority to deem an assignee qualified by the mere fact of a credit rating. The rights of contract parties to object to the qualifications of a proposed assignee based upon the underlying contractual agreements, the Bankruptcy Code and applicable law should not be modified or impaired under any procedures approved by this Court.

25.     More importantly, there are significant conditions to any third party assignments of the SERPA on account of the fact that the SERPA is governed by project-based mechanisms under the Kyoto Protocol to the United Nations Framework Convention on Climate Change (**UNFCCC**) that enables the generation and issuance of CERs from eligible Clean Development Mechanism ("CDM") project activities. Parties to the Kyoto Protocol have adopted a number of decisions which together constitute the International CDM rules. These rules are supplemented by guidance documents prepared by the CDM Executive Board. The CDM rules set out the requirements for each step of the CDM project cycle, including without limitation : (i) issuance of Letters of Approval (**LoA**) for project participants from Host Country Designated National Authorities (**DNA**) and (ii) forwarding CERs from the Executive Board's pending account into the accounts of Project Participants in the national registry of the Annex I Host Country in

10

accordance with directions from the project focal point identified in the Modalities of Communication (**MOC**). For the purposes any proposed assignment, the CDM rules governing project participants are critical. The CDM Executive Board will only forward CERs to accounts of project participants. Therefore, any third party that obtains rights to CERs under the SERPA will need to be added as a new project participant in accordance with the foregoing rules and the terms of the SERPA.

26. The nature and extent of the complex rules governing the transfer of CER's under the SERPA are beyond the scope of this Objection. However, to the extent the Procedures Motion seek to impair ECF's ability to object to a proposed assignee's failure to comply with the terms of the SERPA and applicable law, including applicable protocols, international rules and guidelines, they are improper and should be denied.

27. On a related issue, the language in paragraph 19.c of the Procedures Motion is objectionable to the extent the procedures attempt to automatically "deem" a counterparty to have received adequate assurance of future performance by virtue of a credit rating that predetermines the assignee to be deemed a "Qualified Assignee." Although the Bankruptcy Code does not define "adequate assurance," upon examination of the legislative history, courts have concluded that "Congress intended that the words 'adequate assurance' be given a practical pragmatic construction . . . to be determined under the facts of each particular case." In re Bygaph, Inc., 56 Bankr. 596, 605 (Bankr. S.D.N.Y. 1986); In re Natco Industries, Inc., 54 Bankr. 436, 440 (Bankr. S.D.N.Y. 1985); In re Sanshoe Worldwide Corp., 139 B.R. 585, 592 (S.D.N.Y. 1992).

28. This Court is required to make factual findings regarding adequate assurance for each and every contract that the Debtors propose to assign based on the facts and circumstances

11

of each particular contract.  The Procedures Motion is therefore flawed in proposing a mechanism where parties can raise only limited objections and unidentified contracts can be assigned despite the fact that this Court has not yet ruled on adequate assurance disputes. (Procedures Motion ¶19.g.)  Any assignment should be effective only if the affected parties have the opportunity to raise and be heard on any objections that are appropriate under their respective contracts, the Bankruptcy Code and applicable law, and only when the court finds that the statutory protections afforded to contract parties with respect to adequate assurance have been met.  Id.; 11 U.S.C. §§ 365(b), (f)(2)(B).

29.    In sum, any provisions in the proposed procedures that impair or limit the statutory rights of counterparties to object to a proposed assumption and/or assignment, including without limitation based upon the protections in sections 365(b) and 365(f)(2)(B), are improper and should be denied.

*Improper Release of Credit Support Obligations*

30.    Although not the subject of elaboration in the Procedures Motion, the Procedures Order contains proposed language that would ostensibly have the effect of releasing LBHI from credit support obligations following an assignment under the proposed procedures.  Specifically, the Procedures Order provides "except as provided in the Assignment Notice or this Order, upon assignment of a Derivative Contract pursuant to the Assumption and Assignment Procedures, the Debtors and their estates shall have no further liabilities or obligations under the Derivative Contracts, and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, each of their respective affiliates, successors and assigns, their property or their assets or estates…" (Procedures Order at p. 9.)

31. The Debtors cite no legal authority for the broad third party releases and injunctive relief they seek in a mere procedures motion. The proposed release of third party guarantors is contrary to the express provisions of section 524(e) of the Bankruptcy Code and no provision for such releases is found in section 365 of the Bankruptcy Code. Indeed, even when a debtor is obtaining a discharge under a confirmed plan of reorganization, third party releases are limited and granted only in exceptional circumstances that do not apply here. See e.g., In re Drexel Burnham Lambert Group Inc., 960 F.2d 285, 293 (2d Cir. 1992), cert dismissed, 506 U.S. 1088, 113 S. Ct. 1070, 122 L.Ed. 2d 497(1993) (holding release of co-debtors only permissible when such release is essential for the confirmation of a plan of reorganization).

32. To the extent the proposed procedures seek to adversely impair or limit any counterparties' rights under related credit support documents, including without limitation guarantees issued by LBHI, the Procedures Motion must be denied..

*Limited Time To Object to Assignment*

33. The Debtors propose a time frame of five business (5) days for the filing of any objection to a proposed assignment of a derivative contract. (Procedures Motion ¶19.e.) This time frame is too short given the complexity of the underlying transactions, the multi-jurisdictional nature of such transactions and the multiple parties involved. With respect to the SERPA, there are other counterparties with whom ECF would need to consult regarding any proposed assignment, assuming this Court made a determination that the SERPA had not been properly terminated or is not terminable under section 556 of the Bankruptcy Code. In such a case, ECF would need significant additional time to provide effective notice and opportunity to ensure compliance with the international rules, protocols and guidelines outlined above (Supra ¶ 24), including obtaining the requisite approvals to add a new project participant in compliance

13

with the requirements thereunder. The notice period proposed in the Procedures Motion should be extended to forty (40) days at a minimum.

*Vague Time Limit For Notice of Effective Date*

34. Further, the Debtor's propose to set no fixed time frame for notification of an effective assignment, suggesting they will notify counterparties of the effective date of an assignment "within a reasonable time," a vague standard that could materially prejudice the rights of parties. (Procedures Motion ¶19.j.) The procedures should require something more specific as an outside date (e.g. "...but in any event by not later than 2 business days after consummation of an assignment) for the reasonable protection of counterparties.

*Terminated Contracts*

35. The Debtors admit they do not agree that certain contracts have been terminated and for this reason propose procedures to limit the rights of parties to terminated contracts that the Debtors "may" wish to assign. If the Debtor disagrees that a contract is terminated, however, there should instead be a deadline for the Debtors to advise a counterparty of the same and an immediate procedure for scheduling a hearing on the termination dispute and related issues.

*Preservation of Setoff Rights*

36. It is unclear whether the Debtors propose to limit or impair counterparties' statutory setoff rights and the right to realize against collateral as set forth in sections 362 (b)(6), (b)(7), (b)(17), (b)(27) of the Bankruptcy Code, 11 U.S.C. §§ 362 (b)(6), (b)(7), (b)(17), (b)(27), as made applicable to certain derivative contracts. The Procedures Motion doesn't mention these exceptions and seems to imply they don't exist by limiting the grounds for objecting to a proposed assumption and assignment. A counterparties' right to assert these rights should not be

prematurely impaired or cut-off and therefore any procedures to be entered by this Court should make clear that such rights are fully preserved.

## Conclusion

The Procedures Motion seeks to subvert the express statutory and contractual rights protected under the Bankruptcy Code, as set forth above, and to prematurely cut off those rights. However, the Debtors fail to offer any legal basis to obtain such expansive relief contrary to the express provisions of the Bankruptcy Code and applicable law. Therefore, for all the reasons set forth above, the Procedures Motion must be denied.

Dated: New York, New York
November 26, 2008

> Respectfully submitted,
>
> **BAKER & McKENZIE LLP**
>
> By:    /s/ Ira A. Reid
>
> Carmen H. Lonstein (Pro Hac Vice)
> Ira A. Reid (IR-0113)
>
> One Prudential Plaza, Suite 3500
> 130 East Randolph Drive
> Chicago, Illinois  60601
>
> 1114 Avenue of the Americas
> New York, New York  10036
> Telephone:  (212) 626-4100
>
> Attorneys for NATIXIS
> Environnement & Infrastructures
> acting as agent for the European
> Carbon Fund

NYCDMS/1107879.1