EDWARDS ANGELL PALMER & DODGE LLP
750 Lexington Avenue
New York, New York 10022
Telephone: (212) 308-4411
Fax: (212) 308-4844
Larry D. Henin
Paul J. Labov

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS, INC., | : | 08-13555 (JMP) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

### OBJECTION OF PACIFIC LIFE TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND ASSIGNMENT OF PRE-PETITION DERIVATIVE CONTRACTS

Pacific Life Insurance Company ("**PLIC**"), by and through its undersigned attorneys, hereby files this objection to the motion ("**Derivatives Motion**") of Lehman Brothers Holdings Inc. ("**LBHI**") and its affiliated debtors in the above-referenced chapter 11 cases, including Lehman Brothers Special Financing Inc. ("**LBSF**," and together with LBHI and other affiliated debtors the "**Debtors**") for an order establishing and authorizing terms and procedures for the assumption and assignment of pre-petition derivative contracts. In support of this objection, PLIC respectfully states as follows:

### BACKGROUND FACTS

1.  PLIC and LBSF are parties to a certain International Swap Dealers Association, Inc. ("ISDA") Master Agreement (the "Master Agreement," which includes a Schedule (the "Schedule") and a Credit Support Annex (the "Credit Support Annex," the Master Agreement,

collectively with its Schedule and Credit Support Annex, the "**Swap Agreement**"), and certain swap transactions entered into there under (the "**Swap Transactions**").

2. Under the Master Agreement, an "Early Termination Date" may be declared by the non-defaulting party upon the occurrence of an Event of Default. See, Master Agreement, Section 6.

3. Among other events, an Event of Default occurs under the Master Agreement if a party or any "Credit Support Provider" of such party "institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law." See, Master Agreement, Section 5(a)(vii)(4).

4. LBHI is designated as a Credit Support Provider in the Schedule to the Master Agreement.

5. On September 15, 2008, LBHI filed a voluntary petition with the United States Bankruptcy Court for the Southern District of New York seeking relief under Chapter 11 of the Bankruptcy Code.

6. On October 3, 2008, LBSF filed a voluntary petition with the United States Bankruptcy Court for the Southern District of New York seeking relief under Chapter 11 of the Bankruptcy Code.

7. The filing of each of the LBHI petition and the LBSF petition caused a separate "Event of Default" to occur under the Master Agreement.

8. Pursuant to Section 6(a) of the Master Agreement, upon the occurrence of the Events of Default, PLIC was and remains entitled to provide notice to Lehman Brothers Special Financing Inc. specifying the relevant Event of Default and to designate a day not earlier than the day such notice was effective as an Early Termination Date in respect of all outstanding transactions.

9. To date, the Swap Agreement remains in effect, and PLIC has not exercised its rights to terminate the Swap Transactions.

## DERIVATIVES MOTION

10. By the Motion, the Debtors seek an order, among other things, establishing and authorizing terms and procedures for the assumption and assignment of pre-petition derivative contracts. The Swap Agreements constitute pre-petition derivative contracts.

11. Recognizing that the termination of certain "in the money" pre-petition derivative contracts will result in a net payment to the Debtors, the Debtors seek to assume and assign these contracts. The Debtors, having waited two months or more, insist upon expedited procedures for the stated reason of minimizing the risk of movements in the financial markets which could reduce or destroy the value available to the Debtors' estates.

## GENERAL OBJECTION

### Debtors' Procedures Fail to Satisfy 11 U.S.C. § 365(f)(2)

12. Section 365(f)(2) of the Bankruptcy Code addresses the assignment of executory contracts and unexpired leases, and states in relevant part:

> (f)(2) The trustee may assign an executory contract or unexpired lease of the debtor only if –
> 
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
> 
> (B) adequate assurance of future performance by the assignee of such contract or lease is provide, whether or not there has been a default in such contract or lease.

13. Section 365(f)(2) of the Bankruptcy Code requires debtors to provide adequate assurance of future performance as a condition to assumption and assignment of any contract. *See, e.g., In re Wills Motors, Inc.*, 133 B.R. 297, 302 (Bankr. S.D.N.Y. 1991). The burden belongs to the debtor to show "adequate assurance of future performance." *In re M. Fine Lumber Co.*, 383 B.R. 565, 573 (Bankr. E.D.N.Y. 2008) (citations omitted).

14.     For the reasons set forth below, the Debtors proposed procedures fail to provide PLIC with adequate assurance of future performance and therefore, the Motion must be denied.

### **SPECIFIC OBJECTIONS**.

15.     The following are specific terms and procedures outlined in the Motion and PLIC's objections thereto. Where applicable, PLIC has provided counterproposals to Debtors' proposed procedures. Capitalized terms not defined herein shall have the same meaning as set forth in the Derivatives Motion.

A.     **Procedure: Counterparty Status**

The procedures allow Debtors to assign the Swap Transactions to Qualified Bidders subject only to limited objections based on cure amounts and the need to cure a default or early termination event. Qualified Bidders are defined as having "a Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or any equivalent thereof…" Thus, once a counterparty has been designated as a Qualified Bidder, PLIC is not entitled to object to a counterparty's identity.

In addition, according to the procedures, Lehman is permitted to assign the Swap Agreements to parties that are not "Qualified Bidders," over PLIC's objection.

**Objection:**     PLIC is subject to regulatory and internal guidelines that include criterion for acceptable counterparties. Counterparties are generally limited to those entities that are recognized as market-makers in derivatives. Counterparties to PLIC transactions must be rated at least A, not A-. Moreover, PLIC controls its exposure to any one counterparty. PLIC is incorporated under the laws of the state of Nebraska. Nebraska law limits dealings, including aggregate loans, and other investments, of which the Swap Agreements are included, with any one entity based on that entity's credit rating. These controls, both external and internal, are designed to reduce counterparty risk in an effort to protect policyholder funds. Further,

NYC 316341.4                                               4

adequate assurance of future performance cannot be determined simply by a credit rating and PLIC should be entitled to object to a Qualified Bidder on the same grounds as a bidder who has not been so designated. Finally, permitting the assignment of the Swap Agreements to entities that are not rated at least A could expose PLIC's existing policyholders to the risk of losing their funds.

**Counterproposal:** The identity of the proposed assignee, regardless of bidder status, should be set forth in the assignment notice, thereby giving PLIC the ability to object to the assignment in the first instance. Doing so will allow PLIC to object to a particular assignee if an assignment to that entity will exceed the exposure limits to that entity or otherwise run afoul of PLIC's internal guidelines and external regulatory guidelines. Moreover, to the extent the Debtors seek to bifurcate assignees into Qualified Assignees and those that are not qualified, Qualified Assignees must be limited to banks and broker-dealers who are recognized as market-makers in these particular derivatives. Finally, if nothing else, all counterparties regardless of status should have a long term unsecured debt rating of at least A (or a comparable rating) to prevent unnecessary exposure to existing policyholders. As PLIC is well within its rights to terminate the Swap Agreements prior to its assumption and assignment by the Debtors and PLIC is only seeking to ensure the continued orderly operation of its business, the Debtors are in no way harmed by this counterproposal.

### B.   Procedures: Timing

The procedures mandate that PLIC will be bound by a proposed assignment if it fails to serve written objection so that such objection is <u>actually received</u> no later that five (5) business days after receipt of the Assignment Notice.

**Objection:** In addition to the objection regarding the identity and/or status of a Qualified Bidder/bidder, five (5) business days is entirely too short a period to evaluate the

effects of the proposed assignment. This time period is not reasonable and is unduly burdensome to PLIC.

**Counterproposal:** PLIC requests fifteen (15) business days to object to (i) the proposed Cure Amount; (ii) the need to cure a default or early termination event, including, without limitation, any default or early termination event with respect to the Debtors and each of their respective affiliates, successors and assigns and (iii) the adequate assurance of future performance of the bidder, regardless of status, under the applicable Swap Agreement. Moreover, if the Debtors have not identified the proposed assignee by name, they clearly have not advanced the bidding enough to justify such a short response deadline, and Debtors have not demonstrated why a transaction must be completed on such an abbreviated timetable.

### C.  Procedures: Termination of Existing Transactions

The Procedures do not provide for PLIC's ability to terminate the Swap Agreements once the Assignment Notice is received.

**Objection:** 11 U.S.C. § 560 allows PLIC, among other things, to terminate the Swap Agreements without Court authority, regardless of the Debtors' filing. Certainly, the Debtors are not harmed in any way by allowing PLIC to exercise its rights and terminate the Swap Agreements prior to their assignment. At best, the termination and netting rules would apply, the Debtors would be either "in the money" or "out of the money," and termination payments would be calculated as of a particular date. Allowing PLIC to terminate prior to assignment allows PLIC to make a determination as to whether to continue with the particular swap and subject itself to a counterparty not of its choosing or to end the relationship and apply the appropriate termination and netting rules. In either scenario, the Debtors are not harmed and will not be prejudiced. Allowing the Debtors to lock PLIC into a transaction not contemplated by the Swap Agreements, however, may cause PLIC to suffer staggering harm. Any order

should explicitly acknowledge the rights of counterparties under 11 U.S.C. § 560 to terminate transactions such as the Swap Transactions at any time before the completion of any assignment.

## CONCLUSION

**WHEREFORE**, PLIC respectfully requests that, unless the parties reach an agreement with the Debtors with respect to the Derivatives Motion, this Court (i) enter an order denying the assumption and assignment of the Swap Agreements, and (ii) grant PLIC such other and further relief as this Court deems just and proper.

Dated: November 26, 2008
      New York, New York

By: _/s/ Paul J. Labov_
EDWARDS ANGELL PALMER & DODGE LLP
750 Lexington Avenue
New York, New York 10022
Telephone: (212) 308-4411 Fax: (212) 308-4844
Larry D. Henin
Paul J. Labov

*Counsel for Pacific Life Insurance Company*