# EXHIBIT A

(Multicurrency–Cross Border)

# ISDA.

International Swap Dealers Association, Inc.

# MASTER AGREEMENT

dated as of October 31, 1996

| LEHMAN BROTHERS SPECIAL FINANCING INC. | and | NATIONSBANK, N.A. |
|---|---|---|

have entered and/or anticipate entering into one or more transactions (each a "Transaction") that are or will be governed by this Master Agreement, which includes the schedule (the "Schedule"), and the documents and other confirming evidence (each a "Confirmation") exchanged between the parties confirming those Transactions.

Accordingly, the parties agree as follows:—

1.     Interpretation

(a)     *Definitions.* The terms defined in Section 14 and in the Schedule will have the meanings therein specified for the purpose of this Master Agreement.

(b)     *Inconsistency.* In the event of any inconsistency between the provisions of the Schedule and the other provisions of this Master Agreement, the Schedule will prevail. In the event of any inconsistency between the provisions of any Confirmation and this Master Agreement (including the Schedule), such Confirmation will prevail for the purposes of the relevant Transaction.

(c)     *Single Agreement.* All Transactions are entered into in reliance on the fact that this Master Agreement and all Confirmations form a single agreement between the parties (collectively referred to as this "Agreement"), and the parties would not otherwise enter into any Transactions.

2.     Obligations

(a)     *General Conditions.*

(i)     Each party will make each payment or delivery specified in each Confirmation to be made by it, subject to the other provisions of this Agreement.

(ii)     Payments under this Agreement will be made on the due date for value on that date in the place of the account specified in the relevant Confirmation or otherwise pursuant to this Agreement, in freely transferable funds and in the manner customary for payments in the required currency. Where settlement is by delivery (that is, other than by payment), such delivery will be made for receipt on the due date in the manner customary for the relevant obligation unless otherwise specified in the relevant Confirmation or elsewhere in this Agreement.

(iii)     Each obligation of each party under Section 2(a)(i) is subject to (1) the condition precedent that no Event of Default or Potential Event of Default with respect to the other party has occurred and is continuing, (2) the condition precedent that no Early Termination Date in respect of the relevant Transaction has occurred or been effectively designated and (3) each other applicable condition precedent specified in this Agreement.

Copyright © 1992 by International Swap Dealers Association, Inc.

Master Agreement

(b)    *Change of Account.* Either party may change its account for receiving a payment or delivery by giving notice to the other party at least five Local Business Days prior to the scheduled date for the payment or delivery to which such change applies unless such other party gives timely notice of a reasonable objection to such change.

(c)    *Netting.* If on any date amounts would otherwise be payable:—

    (i)    in the same currency; and

    (ii)    in respect of the same Transaction,

by each party to the other, then, on such date, each party's obligation to make payment of any such amount will be automatically satisfied and discharged and, if the aggregate amount that would otherwise have been payable by one party exceeds the aggregate amount that would otherwise have been payable by the other party, replaced by an obligation upon the party by whom the larger aggregate amount would have been payable to pay to the other party the excess of the larger aggregate amount over the smaller aggregate amount.

The parties may elect in respect of two or more Transactions that a net amount will be determined in respect of all amounts payable on the same date in the same currency in respect of such Transactions, regardless of whether such amounts are payable in respect of the same Transaction. The election may be made in the Schedule or a Confirmation by specifying that subparagraph (ii) above will not apply to the Transactions identified as being subject to the election, together with the starting date (in which case subparagraph (ii) above will not, or will cease to, apply to such Transactions from such date). This election may be made separately for different groups of Transactions and will apply separately to each pairing of Offices through which the parties make and receive payments or deliveries.

(d)    *Deduction or Withholding for Tax.*

    (i)    *Gross-Up.* All payments under this Agreement will be made without any deduction or withholding for or on account of any Tax unless such deduction or withholding is required by any applicable law, as modified by the practice of any relevant governmental revenue authority, then in effect. If a party is so required to deduct or withhold, then that party ("X") will:—

        (1)    promptly notify the other party ("Y") of such requirement;

        (2)    pay to the relevant authorities the full amount required to be deducted or withheld (including the full amount required to be deducted or withheld from any additional amount paid by X to Y under this Section 2(d)) promptly upon the earlier of determining that such deduction or withholding is required or receiving notice that such amount has been assessed against Y;

        (3)    promptly forward to Y an official receipt (or a certified copy), or other documentation reasonably acceptable to Y, evidencing such payment to such authorities; and

        (4)    if such Tax is an Indemnifiable Tax, pay to Y, in addition to the payment to which Y is otherwise entitled under this Agreement, such additional amount as is necessary to ensure that the net amount actually received by Y (free and clear of Indemnifiable Taxes, whether assessed against X or Y) will equal the full amount Y would have received had no such deduction or withholding been required. However, X will not be required to pay any additional amount to Y to the extent that it would not be required to be paid but for:—

            (A)    the failure by Y to comply with or perform any agreement contained in Section 4(a)(i), 4(a)(iii) or 4(d); or

            (B)    the failure of a representation made by Y pursuant to Section 3(f) to be accurate and true unless such failure would not have occurred but for (I) any action taken by a taxing authority, or brought in a court of competent jurisdiction, on or after the date on which a Transaction is entered into (regardless of whether such action is taken or brought with respect to a party to this Agreement) or (II) a Change in Tax Law.

2

*"Specified Indebtedness"* means, subject to the Schedule, any obligation (whether present or future, contingent or otherwise, as principal or surety or otherwise) in respect of borrowed money.

*"Specified Transaction"* means, subject to the Schedule, (a) any transaction (including an agreement with respect thereto) now existing or hereafter entered into between one party to this Agreement (or any Credit Support Provider of such party or any applicable Specified Entity of such party) and the other party to this Agreement (or any Credit Support Provider of such other party or any applicable Specified Entity of such other party) which is a rate swap transaction, basis swap, forward rate transaction, commodity swap, commodity option, equity or equity index swap, equity or equity index option, bond option, interest rate option, foreign exchange transaction, cap transaction, floor transaction, collar transaction, currency swap transaction, cross-currency rate swap transaction, currency option or any other similar transaction (including any option with respect to any of these transactions), (b) any combination of these transactions and (c) any other transaction identified as a Specified Transaction in this Agreement or the relevant confirmation.

*"Stamp Tax"* means any stamp, registration, documentation or similar tax.

*"Tax"* means any present or future tax, levy, impost, duty, charge, assessment or fee of any nature (including interest, penalties and additions thereto) that is imposed by any government or other taxing authority in respect of any payment under this Agreement other than a stamp, registration, documentation or similar tax.

*"Tax Event"* has the meaning specified in Section 5(b).

*"Tax Event Upon Merger"* has the meaning specified in Section 5(b).

*"Terminated Transactions"* means with respect to any Early Termination Date (a) if resulting from a Termination Event, all Affected Transactions and (b) if resulting from an Event of Default, all Transactions (in either case) in effect immediately before the effectiveness of the notice designating that Early Termination Date (or, if "Automatic Early Termination" applies, immediately before that Early Termination Date).

*"Termination Currency"* has the meaning specified in the Schedule.

*"Termination Currency Equivalent"* means, in respect of any amount denominated in the Termination Currency, such Termination Currency amount and, in respect of any amount denominated in a currency other than the Termination Currency (the "Other Currency"), the amount in the Termination Currency determined by the party making the relevant determination as being required to purchase such amount of such Other Currency as at the relevant Early Termination Date, or, if the relevant Market Quotation or Loss (as the case may be), is determined as of a later date, that later date, with the Termination Currency at the rate equal to the spot exchange rate of the foreign exchange agent (selected as provided below) for the purchase of such Other Currency with the Termination Currency at or about 11:00 a.m. (in the city in which such foreign exchange agent is located) on such date as would be customary for the determination of such a rate for the purchase of such Other Currency for value on the relevant Early Termination Date or that later date. The foreign exchange agent will, if only one party is obliged to make a determination under Section 6(e), be selected in good faith by that party and otherwise will be agreed by the parties.

*"Termination Event"* means an Illegality, a Tax Event or a Tax Event Upon Merger or, if specified to be applicable, a Credit Event Upon Merger or an Additional Termination Event.

*"Termination Rate"* means a rate per annum equal to the arithmetic mean of the cost (without proof or evidence of any actual cost) to each party (as certified by such party) if it were to fund or of funding such amounts.

*"Unpaid Amounts"* owing to any party means, with respect to an Early Termination Date, the aggregate of (a) in respect of all Terminated Transactions, the amounts that became payable (or that would have become payable but for Section 2(a)(iii)) to such party under Section 2(a)(i) on or prior to such Early Termination Date and which remain unpaid as at such Early Termination Date and (b) in respect of each Terminated Transaction, for each obligation under Section 2(a)(i) which was (or would have been but for Section 2(a)(iii)) required to be settled by delivery to such party on or prior to such Early Termination Date and which has not been so settled as at such Early Termination Date, an amount equal to the fair market

ISDA® 1992

value of that which was (or would have been) required to be delivered as of the originally scheduled date for delivery, in each case together with (to the extent permitted under applicable law) interest, in the currency of such amounts, from (and including) the date such amounts or obligations were or would have been required to have been paid or performed to (but excluding) such Early Termination Date, at the Applicable Rate. Such amounts of interest will be calculated on the basis of daily compounding and the actual number of days elapsed. The fair market value of any obligation referred to in clause (b) above shall be reasonably determined by the party obliged to make the determination under Section 6(e) or, if each party is so obliged, it shall be the average of the Termination Currency Equivalents of the fair market values reasonably determined by both parties.

IN WITNESS WHEREOF the parties have executed this document on the respective dates specified below with effect from the date specified on the first page of this document.

**LEHMAN BROTHERS SPECIAL FINANCING INC.**
      (Name of Party)

**NATIONSBANK, N.A.**
      (Name of Party)

By: ......................................................
Name:
Title:    Bruce M. Witherell
Date:    Managing Director

By: ......................................................
Name:
Title:    R. VAUGHAN DODD
      SENIOR VICE PRESIDENT
Date:    December 10, 1996

Nationsbank

(Multicurrency-Cross
Border)

**SCHEDULE**
to the
**Master Agreement**
dated as of October 31, 1996,
between
**LEHMAN BROTHERS SPECIAL FINANCING INC. ("Party A"),**
a corporation organized under
the laws of
the State of Delaware
and
**NATIONSBANK, N.A. ("Party B")**
a national banking association organized under the laws of
the United States of America

## Part 1: Termination Provisions

In this Agreement:-

(a)     **"Specified Entity"** means in relation to Party A for the purpose of:-

| | |
|---|---|
| Section 5(a)(v), | Not Applicable. |
| Section 5(a)(vi), | Not Applicable. |
| Section 5(a)(vii), | Not Applicable. |
| Section 5(b)(iv), | Not Applicable. |

and in relation to Party B for the purpose of:-

| | |
|---|---|
| Section 5(a)(v), | Not Applicable. |
| Section 5(a)(vi), | Not Applicable. |
| Section 5(a)(vii), | Not Applicable. |
| Section 5(b)(iv), | Not Applicable. |

(b)     **"Specified Transaction"** will have the meaning specified in Section 14 of this Agreement.

(c)     The **"Cross Default"** provisions of Section 5(a)(vi) will apply to Party A and Party B.

The following provisions apply:-

**"Specified Indebtedness"** means any obligation (whether present or future, contingent or otherwise, as principal or surety or otherwise) in respect of borrowed money (other than indebtedness in respect of individual deposits received the amount of which does not exceed 3% of the relevant party's Stockholder's Equity or its equivalent in any other currency or composite currency).

Schedule

"**Threshold Amount**" means three percent (3%) of the Stockholders' Equity of Lehman Brothers Holdings Inc. ("Holdings"), in the case of Party A and Holdings (or its equivalent in any other currency), and three percent (3%) of the Stockholders' Equity of Party B, in the case of Party B (or its equivalent in any other currency).

(d)   The "**Credit Event Upon Merger**" provisions of <u>Section 5(b)(iv)</u> will apply to Party A and Party B.

(e)   The "**Automatic Early Termination**" provisions of <u>Section 6(a)</u> will not apply to either Party A or Party B.

(f)   **Payments on Early Termination.** For the purpose of <u>Section 6(e)</u> of this Agreement, Market Quotation and the Second Method will apply.

(g)   "**Termination Currency**" means United States Dollars ("USD").

(h)   **Additional Termination Event** will apply. The following shall constitute an Additional Termination Event:-

    (i)   A breach by Party B of the FIRREA Provisions set forth under Part 5(c) of this Schedule.

    For the purpose of the foregoing Termination Event, the Affected Party shall be Party B.

    (ii)   Holdings or Party A fails to maintain a long-term senior unsecured debt rating of at least Baa3 as determined by Moody's Investors Service Inc. ("Moody's") or BBB- as determined by Standard & Poor's Rating Group ("S&P").

    For the purpose of the foregoing Termination Event, the Affected Party shall be Party A.

    (iii)   Party B fails to maintain a long term deposits rating of at least Baa3 as determined by Moody's or a Long-term Certificate of Deposit rating of BBB- as determined by S&P.

    For the purpose of the foregoing Termination Event, the Affected Party shall be Party B.

## Part 2: Tax Representations

(a)   **Payer Tax Representations.** Not applicable.

(b)   **Payee Representations.** Not applicable.

Nationsbank

21

## Part 3: Agreement to Deliver Documents

For the purpose of <u>Sections 4(a)(i)</u> and <u>(ii)</u> of this Agreement, each party agrees to deliver the following documents, as applicable:-

(a) Tax forms, documents or certificates to be delivered are:-

| Party required to deliver document | Form/Document /Certificate | Date by which to be delivered |
|---|---|---|
| Party A and Party B | Forms and/or documents described in <u>Section 4(a)(iii)</u> of the Agreement. | Upon reasonable demand by the other party. |

(b) Other documents to be delivered are:-

| Party required to deliver document | Form/Document/ Certificate | Date by which to be Delivered | Covered by Section 3(d) |
|---|---|---|---|
| Party A | An opinion of counsel to Party A substantially in the form of Exhibit C to this Schedule. | Promptly after execution of this Agreement | No |
| Party A | A guarantee of Holdings in the form of Exhibit B to this Schedule. | Upon execution of this Agreement. | Yes |
| Party A | An incumbency certificate with respect to the signatory of this Agreement. | Upon execution of this Agreement. | Yes |
| Party A | A certified copy of the resolution of the Board of Holdings, certified by a secretary of Holdings pursuant to which Holdings is authorized to execute the Guarantee. | Upon execution of this Agreement. | Yes |
| Party A | An incumbency certificate with respect to the Signatory of the Guarantee of Holdings. | Upon execution of this Agreement. | Yes |
| Party B | An incumbency certificate with respect to the signatory of this Agreement. | Upon execution of this Agreement. | Yes |

Nationsbank

22

| Party required to <u>deliver document</u> | Form/Document/ Certificate | Date by which to be Delivered | Covered by Section 3(d) |
|---|---|---|---|
| Party B | An opinion of counsel to Party B substantially in the form of Exhibit D to this Schedule. | Promptly after execution of this Agreement | No |
| Party B | A certified copy of the resolution or resolutions (the "Authorizing Resolution") of the board of directors or loan committee of Party B, certified by a secretary, or an assistant secretary of Party B, pursuant to which Party B is authorized to enter into this Agreement and each Transaction entered into under this Agreement. | Upon execution of this Agreement (unless an Authorizing Resolution has previously been furnished by Party B to Party A) and, with respect to each Transaction not covered by a previously-furnished Authorizing Resolution, promptly following a request therefor. | Yes |

Nationsbank

23

**Part 4:  Miscellaneous**

(a)  **Addresses for Notices.**  For the purpose of <u>Section 12(a)</u>:-

Address for notices or communications to Party A:-

Address:     Lehman Brothers Inc.
             (Derivative Finance Department),
             3 World Financial Center,
             12th Floor,
             New York, New York 10285-1200 USA

<u>Attention</u>:     Documentation Manager

Telephone No.:     (212) 526-1877
Facsimile No.:     (212) 528-7097

                   For all purposes.

Address for notices or communications to Party B:-

Address:     Nationsbank, N.A.
             100  North Tryon Street
             Charlotte, North Carolina
             28255

<u>Attention</u>:     Vaughan Dodd

Telephone No.:     (704) 386-4409
Facsimile No.:     (704) 386-4113

                   For all purposes.

(b)  **Process Agent.**  For the purpose of <u>Section 13(c)</u>:-

Party A appoints as its Process Agent - Not applicable.

Party B appoints as its Process Agent -  Not applicable.

(c)  **Offices.**  The provisions of <u>Section 10(a)</u> will apply to this Agreement.

(d)  **Multibranch Party.**  For the purpose of <u>Section 10(c)</u> of this Agreement:-

Party A is not a Multibranch Party.

Party B is not a Multibranch Party.

(e)  **Calculation Agent.**  The Calculation Agent shall be Party A and Party B.  In the event that the parties initial calculations are inconsistent, both parties shall seek to resolve the inconsistency in good faith and such Calculations shall be binding upon either Party until such time as the inconsistency is resolved.

Nationsbank

24

(f)      **Credit Support Document.** Details of any Credit Support Document, each of which is incorporated by reference in, constitutes part of, and is in connection with, this Agreement and each Confirmation (unless provided otherwise in a Confirmation) as if set forth in full in this Agreement or such Confirmation:-

In the case of Party A, a guarantee of Party A's obligations hereunder in the form annexed hereto as Exhibit B of this Schedule.

In the case of Party A and Party B, The Credit Support Annex.

(g)      **Credit Support Provider.** Credit Support Provider means in relation to Party A: Holdings.

Credit Support Provider means in relation to Party B: Not applicable.

(h)      **Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to choice of law doctrine).

(i)      **Jurisdiction.** Section 13(b) is hereby amended by: (i) deleting in the second line of Subparagraph (i) thereof the word "non-"; and (ii) deleting the final paragraph thereof.

(j)      **Netting of Payments.** Subparagraph (ii) of Section 2(c) of this Agreement will not apply to any Transactions (in each case starting from the date of this Agreement).

(k)      **"Affiliate"** will have the meaning specified in Section 14 of this Agreement.

**Part 5: Other Provisions**

**FIRREA Provisions:**

(a)      **Maintenance of Records.** Party B agrees to maintain in its official books and records: (i) a copy of the confirmation for each Transaction, for so long as such Transaction remains outstanding; and (ii) a copy of the Agreement and the Authorizing Resolution, for so long as any Transaction under the Agreement remains outstanding.

(b)      **Authorizing Resolution Representation.** Party B makes the following representation to Party A, which representation will be deemed repeated at the times set forth in Section 3 of the Agreement: An Authorizing Resolution, as defined in Part 3 of this Schedule, is in full force and effect.

(c)      **Qualified Financial Contract.** Party A and Party B agree that each Transaction and the Agreement are a "swap agreement" and a "qualified financial contract" and that the Agreement is a "master agreement", for purposes of Section 11(e)(8) of the Federal Deposit Insurance Act or any successor provisions.

(d)      Party B agrees that this Agreement, any Credit Support Document to which it is a party, each Confirmation, and any other documentation relating to this Agreement to which it is a party or that it is required to deliver will be executed and delivered by a duly appointed or elected and authorized officer of Party B of the level of vice-president or higher.

Nationsbank

25

(e)    Party B represents that it will engage in "financial contracts" as a counterparty on "both sides of one or more financial markets" as set forth in 12 C.F.R. Section 231.3 of Regulation EE issued by the Board of Governors of the Federal Reserve System.

(f)    Party B represents that it is an "eligible swap participant" for purposes of Section 35.1(b)2 of the Regulations of the U.S. Commodity Futures Trading Commission.

<u>Miscellaneous</u>:

(a)    **Country of Domicile.**  The country of domicile of Party A is the United States of America.  The country of domicile of Party B is the United States of America.

(b)    **Confirmation.**  Each Confirmation supplements, forms part of, and will be read and construed as one with, this Agreement.  A form of Confirmation is set forth as Exhibit A hereto.

(c)    **Tax Forms** means any form or document that may be required or reasonably requested in order to allow the other party to make a payment under the Transaction without any deduction or withholding for an account of any Tax or with such deduction or withholding at a reduced rate.

(d)    **"Stockholders' Equity"** means with respect to an entity, at any time, the sum at such time of (i) its capital stock (including preferred stock) outstanding, taken at par value, (ii) its capital surplus and (iii) its retained earnings, minus (iv) treasury stock, each to be determined in accordance with generally accepted accounting principles.

(e)    **Transfer.**

<u>Section 7</u> of the Agreement is hereby modified by inserting the following after the word "party" but before the comma in the third line thereof:

"<u>, provided, however,</u> that such consent shall not be unreasonably withheld"

(f)    **Trial By Jury.** Each party irrevocably waives any and all rights to trial by jury in any legal proceeding in connection with this Agreement or any Transaction.

(g)    **Accuracy of Specified Information.**  Section 3(d) is hereby amended by adding in the third line thereof after the word "respect" and before the period the words "or, in the case of audited or unaudited financial statements or balance sheets, a fair presentation of the financial condition of the relevant person".

(h)     **Definitions.**  This Agreement, each Confirmation, and each Transaction are subject to the 1991 ISDA Definitions as published by the International Swaps and Derivatives Association, Inc. as amended, supplemented, updated, restated, and superseded from time to time (the "Definitions"), and will be governed in all respects by the Definitions (except that references to "Swap Transactions" in the Definitions will be deemed to be references to "Transactions").  The Definitions as so modified, are incorporated by reference in, and made part of, this Agreement and each Confirmation as if set forth in full in this Agreement and such Confirmations.   Subject to Section 1(b), in the event of any inconsistency between the provisions of this Agreement and the Definitions, this Agreement will prevail.  Also, subject to Section 1(b), in the event of any inconsistency between the provisions of any Confirmation and this Agreement, or the Definitions, such Confirmation will prevail for the purpose of the relevant Transaction.

(i)     **Representations.**   Section 3 is hereby amended by adding the following additional Subsections:

> (g)     **No Agency.**   It is entering into this Agreement and each Transaction as principal (and not as agent or in any other capacity, fiduciary or otherwise).

> (h)     **Eligible Swap Participant.**    It is an "eligible swap participant" as defined in the Part 35 Regulations of the U.S. Commodity Futures Trading Commission.

> (i)     **No Reliance.** Each party acknowledges and agrees that (i) it is acting solely in the capacity of an arm's length contractual counterparty, with respect to this Agreement and any Transaction hereunder and  (ii) it is not acting as a financial advisor or fiduciary of the other party (or in any similar capacity) with respect to this Agreement and any Transaction hereunder regardless of whether it provides the other party with market information or its views. Each party represents (which representation shall be deemed to be repeated by the parties on each date on which Transaction is entered into) that it understands the risks of the Transactions it enters and any legal, regulatory, tax, accounting and economic consequences arising therefrom and that its decision to enter into each Transaction has been based solely on its independent evaluation and the independent evaluation of its representatives in light of its financial capabilities and objectives.

27

(j)    **Setoff.**   Section 6 of the Agreement is hereby amended by adding a new    subsection (f);

"(f) **Setoff.**  Any amount (the"Early Termination Amount") payable to one party (the "Payee") by the other party (the "Payer") under Section 6(e), in circumstances where there is a Defaulting Party or one  Affected Party in the case where a Termination Event under Section 5(b)(iv) has occurred, will, at the option of the party ("X") other than the Defaulting Party or Affected Party (and without prior notice to the Defaulting Party or the Affected Party), be reduced by its set-off against any amount(s) (the "Other Agreement Amount") payable (whether at such time or in the future or upon the occurrence of a contingency) by the Payee to the Payer (irrespective of the currency, place of payment or booking office of instruments(s) or undertakings(s) issued or executed by one party to, or in favor of, the other party (and the Other Agreement Amount will be discharged promptly and in all respects to the extent it is set-off).  X will give notice to the other party of any set-off effected under this Section 6(f).

For this purpose, either the Early Termination Amount or the Other Agreement Amount (or the relevant portion of such amounts) may be converted by X into the currency in which the other is denominated at the rate of exchange at which such party would be able, acting in a reasonable manner and in good faith, to purchase the relevant amount of such currency.

If an obligation is unascertained, X may in good faith estimate that obligation and set-off in respect of the estimate, subject to the relevant party accounting to the other when the obligation is ascertained.

Nothing in this Section 6(f) shall be effective to create a charge or other security interest. This Section 6(f) shall be without prejudice and in addition to any right of set-off, combination of accounts, lien or other right to which any party is at any time otherwise entitled (whether by operation of law, contract or otherwise).

(k)    **Telephonic Recording.**  Each party (i) consents to the recording of the telephone conversations of officers and employees of the parties in connection with this Agreement or any potential Transaction, (ii)  accepts and acknowledges that in principal all telephone conversations will be recorded, and (iii)  agrees that recordings may be submitted in evidence in any Proceedings relating to this Agreement.

Nationsbank

28

(I)    **Amend and Restate Prior Agreement.**  This Agreement supersedes and replaces the
Interest Rate and Currency Exchange Agreement dated as of June 5, 1992 between
Party A and Party B.

The parties executing this Schedule have executed the Master Agreement and have agreed
as to the contents of this Schedule.

LEHMAN BROTHERS SPECIAL FINANCING INC.

By:_____

Title:_____
    **Bruce M. Witherell**
    **Managing Director**


NATIONSBANK, N.A.

By:_____

Title:_____
    R. VAUGHAN DODD
    SENIOR VICE PRESIDENT


Nationsbank

<u>EXHIBIT A to Schedule</u>

**Form of Confirmation**

Date:

To:         NATIONSBANK, N.A.

              Telephone:
              Telecopier:

From:      Lehman Brothers Special Financing Inc.

**Subject:**      Swap Transaction (Ref: S____-__ )

     The purpose of this communication is to set forth the terms and conditions of the swap transaction entered into on the Trade Date referred to below (the "Swap Transaction"), between Lehman Brothers Special Financing Inc. ("Party A") (guaranteed by Lehman Brothers Holdings Inc. ("Holdings")) and _____ ("Party B"). This communication constitutes a "Confirmation" as referred to in the Swap Agreement specified below.

     This confirmation supplements, forms part of, and is subject to, the Master Agreement, which the parties have entered into, dated October 31, 1996, between Party A and Party B (the "Swap Agreement"). All provisions contained in, or incorporated by reference to, such Swap Agreement shall govern this Confirmation except as expressly modified below.

     Party A and Party B each represent that entering into the Swap Transaction is authorized and does not violate any laws of its jurisdiction of organization or residence or the terms of any agreement to which it is a party, and it has reached its own conclusions about the Swap Transaction, and any legal, regulatory, tax, accounting or economic consequences arising from the Swap Transaction, and has concluded that the Swap Transaction is suitable in light of its own evaluation of the Swap Transaction and its own financial capabilities and sophistication.

     This Confirmation incorporates the definitions and provisions contained in the 1991 ISDA Definitions (as published by the International Swaps and Derivatives Association, Inc.) (the "Definitions"). In the event of any inconsistency between those definitions and provisions and this Confirmation, this Confirmation will govern. The Definitions shall apply to this Confirmation even if the Swap Agreement between the parties incorporate the provisions of the 1985 or 1986 editions of the ISDA Code of Standard Wording, Assumptions and Provisions for Swaps.

     The terms of the particular Swap Transaction to which this Confirmation relates are as follows:

-2-

Party A:                                    LEHMAN BROTHERS SPECIAL FINANCING INC.

Party B:                                    NATIONSBANK, N.A.

[Notional Amount:]

Trade Date:

Effective Date:

Termination Date:

[Initial Exchange:

Initial Exchange Date:

Party A Initial Exchange Amount:
Party B Initial Exchange Amount:

Final Exchange:

Final Exchange Date:

Party A Final Exchange Amount:

Party B Final Exchange Amount:]

FIXED AMOUNTS:

Fixed Rate Payer:                           [Party A/B]

[Fixed Rate Payer
Currency Amount:]

Fixed Rate Payer Payment          [          ], subject to adjustment in
Dates [or, Period End Dates, if   accordance        with        the
Delayed Payment or Early          [Following/Modified
Payment applies]:                 Following/Preceding] Business Day
                                  convention, with respect to a
                                  _____ Banking Day and
                                  a _____ Banking Day
                                  [with No Adjustment of Period End
                                  Dates]

[Fixed Amount:]

Fixed Rate:

Fixed Rate Day
Count Fraction:

FLOATING AMOUNTS:

Floating Rate Payer:                        [Party B/A]

-3-

[Floating Rate Payer
Currency Amount:]

Floating Rate Payer Payment Dates          [          ], subject to adjustment in
[or, Period End Dates, if Delayed           accordance with the
Payment or Early Payment applies]:          [Following/Modified
                                            Following/Preceding] Business Day
                                            convention, with respect to a
                                            _____ Banking Day and
                                            a _____ Banking Day
                                            [with No Adjustment of Period End
                                            Dates]

Floating Rate for initial
Calculation Period:

Floating Rate Option:

Designated Maturity:

Floating Rate Spread:                       [plus/minus]    % p.a.

Floating Rate Day
Count Fraction:

Reset Dates:

[Rate Cut-off Dates:]

[Method of Averaging:                       Unweighted/Weighted Average Rate]

Compounding:                                Applicable/Inapplicable

[Compounding Dates:]

Calculation Agent:

Offices:                                    Party A is not a Multibranch Party

                                            Party B is not a Multibranch Party

                                            (The Office of Party B is its _____ Branch)

Other Provisions:

Payment instructions for
Party A in _____:

Payment instructions for

Nationsbank

-4-

**Party B in _____:**

Please confirm that the foregoing correctly sets forth the terms of our agreement with respect to the Swap Transaction by signing in the space provided below and sending a copy of the executed Confirmation by telecopier (212-528-6927) to the Client Services Group, Lehman Brothers Special Financing Inc.

It has been a pleasure working with you on this transaction and we look forward to working with you again in the future.

LEHMAN BROTHERS SPECIAL FINANCING INC.

By:_____

Name:_____

Title:_____

Confirmed as of the
date first written:

NATIONSBANK, N.A.

By:_____

Name:_____

Title:_____

Nationsbank

EXHIBIT B to Schedule

## GUARANTEE OF LEHMAN BROTHERS HOLDINGS INC.

LEHMAN BROTHERS SPECIAL FINANCING INC. ("Party A") and NATIONSBANK, N.A. ("Party B") have entered into a Master Agreement dated as of October 31, 1996, (the "Master Agreement"), pursuant to which Party A and Party B have entered and/or anticipate entering into one or more transactions (each a "Transaction"), the Confirmation of each of which supplements, forms part of, and will be read and construed as one with, the Master Agreement (collectively referred to as the "Agreement"). This Guarantee is a Credit Support Document as contemplated in the Agreement. For value received, and in consideration of the financial accommodation accorded to Party A by Party B under the Agreement, LEHMAN BROTHERS HOLDINGS INC., a corporation organized and existing under the laws of the State of Delaware ("Guarantor"), hereby agrees to the following:

(a) Guarantor hereby unconditionally guarantees to Party B the due and punctual payment of all amounts payable by Party A under each Transaction when and as Party A's obligations thereunder shall become due and payable in accordance with the terms of the Agreement. In case of the failure of Party A to pay punctually any such amounts, Guarantor hereby agrees, upon written demand by Party B, to pay or cause to be paid any such amounts punctually when and as the same shall become due and payable.

(b) Guarantor hereby agrees that its obligations under this Guarantee constitute a guarantee of payment when due and not of collection.

(c) Guarantor hereby agrees that its obligations under this Guarantee shall be unconditional, irrespective of the validity, regularity or enforceability of the Agreement against Party A (other than as a result of the unenforceability thereof against Party B), the absence of any action to enforce Party A's obligations under the Agreement, any waiver or consent by Party B with respect to any provisions thereof, the entry by Party A and Party B into additional Transactions under the Agreement or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor; provided, however, that Guarantor shall be entitled to exercise any right that Party A could have exercised under the Agreement to cure any default in respect of its obligations under the Agreement or to setoff, counterclaim or withhold payment in respect of any Event of Default or potential Event of Default in respect of Party B, but only to the extent such right is provided to Party A under the Agreement. The Guarantor acknowledges that Party A and Party B may from time to time enter into one or more Transactions pursuant to the Agreement and agrees that the obligations of the Guarantor under this Guarantee will upon the execution of any such Transaction by Party A and Party B extend to all such Transactions without the taking of further action by the Guarantor.

(d) Guarantor shall be subrogated to all rights of Party B against Party A in respect of any amounts paid by Guarantor pursuant to the provisions of this Guarantee; provided, however, that Guarantor shall not be entitled to enforce or to receive any payments arising out of, or based upon, such right of subrogation until all amounts then due and payable by Party A under the Agreement, shall have been paid in full.

-2-

(e)  Guarantor further agrees that this Guarantee shall continue to be effective or be reinstated, as the case may be, if at any time, payment, or any part thereof, of any obligation or interest thereon is rescinded or must otherwise be restored by Party B upon an Event of Default as set forth in <u>Section 5(a)(vii)</u> of the Master Agreement affecting Party A or Guarantor.

(f)  Guarantor hereby waives (i) promptness, diligence, presentment, demand of payment, protest, order and, except as set forth in paragraph (a) hereof, notice of any kind in connection with the Agreement and this Guarantee, or (ii) any requirement that Party B exhaust any right to take any action against Party A or any other person prior to or contemporaneously with proceeding to exercise any right against Guarantee under this Guarantee.

(g)  Guarantor makes the same representations to and agreements with Party B as those made by Party A pursuant to Sections 3 and 4 of the Agreement, at the times set forth therein, except that references therein to "the agreement" will be deemed to be references to "the Guarantee".

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without reference to choice of law doctrine. All capitalized terms not defined in this Guarantee, but defined in the Agreement, shall have the meanings assigned thereto in the Agreement.

Any notice hereunder will be sufficiently given if given in accordance with the provisions for notices under the Agreement and will be effective as set forth therein. All notices hereunder shall be delivered to Lehman Brothers Holdings Inc., Attention: Treasurer, at 200 Vesey Street, 28th Floor, New York, New York 10285 USA (Facsimile No. (212) 526-1467) with a copy to Lehman Brothers Special Financing Inc., Attention: Operations Manager at 3 World Financial Center, 7th Floor, New York, New York 10285-0700 (Facsimile No. (212) 528-6927).

IN WITNESS WHEREOF, Guarantor has caused this Guarantee to be executed in its corporate name by its duly authorized officer as of the date of the Agreement.

LEHMAN BROTHERS HOLDINGS INC.

By: _____

Title: _____

Nationsbank

<u>EXHIBIT C to Schedule</u>

[Form of Opinion of Counsel for
Lehman Brothers Special Financing Inc. and
Lehman Brothers Holdings Inc.]

[date]

Nationsbank, N.A.
100 Tryon Street
Charlotte, North Carolina 28255

<u>Attention</u>:  Vaughan Dodd

Gentlemen:

I have acted as counsel to Lehman Brothers Special Financing Inc., a Delaware corporation ("Party A") and Lehman Brothers Holdings Inc., a Delaware corporation ("Guarantor"), and am familiar with matters pertaining to the execution and delivery of the Master Agreement (the "Master Agreement") dated as of October 31, 1996, between Party A and Nationsbank, N.A. ("Party B") and the guarantee of Guarantor (the "Guarantee") delivered in connection with the Master Agreement.  The Master Agreement is to be supplemented by confirmations of Transactions to be entered into by Party A and Party B from time to time (each a "Confirmation") and the Master Agreement, together with all such Confirmations, shall constitute one agreement.

In connection with this opinion, I have examined or had examined on my behalf an executed copy of the Master Agreement and the form of Confirmation attached as Exhibit A to the Schedule thereto and the Guarantee, and certificates of public officials and officers of Party A and Guarantor and such other documents as I have deemed necessary or appropriate for the purposes of this opinion.  In such opinion, I have assumed the genuineness of all the signatures, the authenticity of all documents submitted to me as originals and the conformity to authentic original documents of all documents submitted to me as certified, conformed or photostatic copies.  I have also assumed that each Confirmation will be in substantially the form of Exhibit A to the Schedule to the Master Agreement.

Based upon the foregoing, I am of the opinion that:

1.    Each of Party A and Guarantor is a corporation duly organized, validly existing and in good standing under the laws of Delaware.

2.    The execution, delivery and performance of the Master Agreement and each Confirmation, in the case of Party A, and the Guarantee, in the case of Guarantor, are within its corporate power, have been duly authorized by all necessary corporate action and do not, or, in the case of Party A with respect to each Confirmation, will not, conflict with any provision of its articles of incorporation or by-laws.

3.    The Master Agreement, in the case of Party A, and the Guarantee, in the case of Guarantor, has been duly executed and delivered and constitutes, and in the case of Party A with respect to each Confirmation,  upon due execution and delivery by Party

-2-

A, will constitute, a legally valid and binding obligation, enforceable against it in accordance with its terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles of general application (regardless of whether enforcement is sought in a proceeding in equity or at law)).

4.      To the best of my knowledge no consent, authorization, license or approval of or registration or declaration with, any United States of America federal or New York governmental authority is required in connection with the execution, delivery and performance of the Master Agreement and each Confirmation, in the case of Party A, and the Guarantee, in the case of Guarantor.

The opinions expressed herein are limited to matters concerning the federal laws of the United States of America, the laws of the State of New York and the General Corporation Law of the State of Delaware.

Very truly yours,

Nationsbank

EXHIBIT D TO SCHEDULE

Legal Department
NationsBank Corporate Center            Fax 704 386-6453
NC1-007-20-01
Charlotte, NC 28255

# NationsBank

1996

Ladies and Gentlemen:

I have acted as counsel to NationsBank, N.A., a National Banking Association ("Party    ") organized under the laws of the United States. This opinion is being delivered  to you in connection with the execution and delivery by Party A of the ISDA Master Agreement (the "Agreement"), dated as of                   ,  199 , between                    ("Party   ") and Party Any capitalized terms used but not defined herein shall have the respective meanings specified in the Agreement.

In connection with this opinion, I have examined an executed copy of the Agreement and other documents as I have deemed necessary or appropriate for the purposes of this opinion.  In such opinion, I have assumed the genuineness of all signatures, the authenticity of all documents submitted to me as originals and the conformity to authentic original documents of all documents submitted to me as certified, conformed, or photostatic copies.

Based upon the foregoing, I am of the opinion that:

1.    Party    is a National Banking Association duly organized, validly existing, and in good standing under the laws of the United States.

2.    The execution, delivery, and performance of the Agreement and each confirmation executed by Party   . prior to or as of the date hereof (a "Confirmation") are within Party    's corporate power,. have been duly authorized by all necessary corporate  action, and do not conflict with any provision of Party    's articles of incorporation or bylaws or any law, regulation, or agreement to which Party     is subject or by which Party . is bound.

3.    No consent, authorization, license or approval of, or registration or declaration with, any U.S., New York or governmental authority is required in connection with the execution, delivery, and performance of the Agreement.



U S A
Official Sponsor
1994/1996

, 1996

Page -2-

4.    The Agreement and each Confirmation have been duly executed and delivered by Party . . and constitute legally valid and binding obligations of Party . ., except as enforcement thereof may be limited by bankruptcy, insolvency, reorganization, moratorium, or other laws affecting the enforcement of creditors' rights generally or by general equity principles.

5.    There is no action, suit or proceeding pending or threatened against Party   . before any court or arbitrator or any governmental body, agency or official in which there is a reasonable possibility of an adverse decision which could materially adversely affect the ability of Party    to perform its obligations under the Agreement.

The opinions expressed herein are for the exclusive benefit of Party   .

Very truly yours,

Assistant General Counsel

# ISDA®

*International Swaps and Derivatives Association, Inc.*

# CREDIT SUPPORT ANNEX

*to the Schedule to the*

Master Agreement

*dated as of* October 31, 1996

*between*

| | |
|---|---|
| **LEHMAN BROTHERS SPECIAL FINANCING INC.** | **NATIONSBANK, N.A.** |
| *("Party A")* | *("Party B")* |

This Annex supplements, forms part of, and is subject to, the above-referenced Agreement, is part of its Schedule and is a Credit Support Document under this Agreement with respect to each party.

Accordingly, the parties agree as follows:

## Paragraph 1. Interpretation

(a)    *Definitions and Inconsistency.*  Capitalized terms not otherwise defined herein or elsewhere in this Agreement have the meanings specified pursuant to Paragraph 12, and all references in this Annex to Paragraphs are to Paragraphs of this Annex.  In the event of any inconsistency between this Annex and the other provisions of this Schedule, this Annex will prevail and in the event of any inconsistency between Paragraph 13 and the other provisions of this Annex, Paragraph 13 will prevail.

(b)    *Secured Party and Pledgor.*  All references in this Annex to the "Secured Party" will be to either party when acting in that capacity and all corresponding references to the "Pledgor" will be to the other party when acting in that capacity; *provided, however,* that if Other Posted Support is held by a party to this Annex, all references herein to that party as the Secured Party with respect to that Other Posted Support will be to that party as the beneficiary thereof and will not subject that support or that party as the beneficiary thereof to provisions of law generally relating to security interests and secured parties.

## Paragraph 2.  Security Interest

Each party, as the Pledgor, hereby pledges to the other party, as the Secured Party, as security for its Obligations, and grants to the Secured Party a first priority continuing security interest in, lien on and right of Set-off against all Posted Collateral Transferred to or received by the Secured Party hereunder.  Upon the Transfer by the Secured Party to the Pledgor of Posted Collateral, the security interest and lien granted hereunder on that Posted Collateral will be released immediately and, to the extent possible, without further action by either party.

Nationsbank

Security Agreement -
Bilateral

**Paragraph 3. Credit Support Obligations**

(a)     *Delivery Amount.* Subject to Paragraphs 4 and 5, upon a demand made by the Secured Party on or promptly following a Valuation Date, if the Delivery Amount for that Valuation Date equals or exceeds the Pledgor's Minimum Transfer Amount, then the Pledgor will Transfer to the Secured Party Eligible Credit Support having a Value as of the date of Transfer at least equal to the applicable Delivery Amount (rounded pursuant to Paragraph 13). Unless otherwise specified in Paragraph 13, the *"Delivery Amount"* applicable to the Pledgor for any Valuation Date will equal the amount by which:

> (i) the Credit Support Amount
>
> exceeds
>
> (ii) the Value as of that Valuation Date of all Posted Credit Support held by the Secured Party.

(b)     *Return Amount.* Subject to Paragraphs 4 and 5, upon a demand made by the Pledgor on or promptly following a Valuation Date, if the Return Amount for that Valuation Date equals or exceeds the Secured Party's Minimum Transfer Amount, then the Secured Party will Transfer to the Pledgor Posted Credit Support specified by the Pledgor in that demand having a Value as of the date of Transfer as close as practicable to the applicable Return Amount (rounded pursuant to Paragraph 13). Unless otherwise specified in Paragraph 13, the *"Return Amount"* applicable to the Secured Party for any Valuation Date will equal the amount by which:

> (i) the Value as of that Valuation Date of all Posted Credit Support held by the Secured Party
>
> exceeds
>
> (ii) the Credit Support Amount.

*"Credit Support Amount"* means, unless otherwise specified in Paragraph 13, for any Valuation Date (i) the Secured Party's Exposure for that Valuation Date plus (ii) the aggregate of all Independent Amounts applicable to the Pledgor, if any, minus (iii) all Independent Amounts applicable to the Secured Party, if any, minus (iv) the Pledgor's Threshold; *provided, however*, that the Credit Support Amount will be deemed to be zero whenever the calculation of Credit Support Amount yields a number less than zero.

**Paragraph 4. Conditions Precedent, Transfer Timing, Calculations and Substitutions**

(a)     *Conditions Precedent.* Each Transfer obligation of the Pledgor under Paragraphs 3 and 5 and of the Secured Party under Paragraphs 3, 4(d)(ii), 5 and 6(d) is subject to the conditions precedent that:

> (i) no Event of Default, Potential Event of Default or Specified Condition has occurred and is continuing with respect to the other party; and
>
> (ii) no Early Termination Date for which any unsatisfied payment obligations exist has occurred or been designated as the result of an Event of Default or Specified Condition with respect to the other party.

(b)     *Transfer Timing.* Subject to Paragraphs 4(a) and 5 and unless otherwise specified, if a demand for the Transfer of Eligible Credit Support or Posted Credit Support is made by the Notification Time, then the relevant Transfer will be made not later than the close of business on the next Local Business Day; if a demand is made after the Notification Time, then the relevant Transfer will be made not later than the close of business on the second Local Business Day thereafter.

(c)     *Calculations.* All calculations of Value and Exposure for purposes of Paragraphs 3 and 6(d) will be made by the Valuation Agent as of the Valuation Time. The Valuation Agent will notify each party (or the other party, if the Valuation Agent is a party) of its calculations not later than the Notification Time on the Local Business Day following the applicable Valuation Date (or in the case of Paragraph 6(d), following the date of calculation).

ISDA® 1994

## CREDIT SUPPORT ANNEX

Elections and Variables
Dated as of
October 31, 1996
between

### Lehman Brothers Special Financing Inc. ("Party A")
and
### Nationsbank, N.A. ("Party B")

## Paragraph 13.  Elections and Variables

(a)    **Security Interest for "Obligations".**  The term **"Obligations"** as used in this Annex includes the following additional obligations:

With respect to Party A:  Not applicable.

With respect to Party B:  Not applicable.

(b)    **Credit Support Obligations.**

(i)    **Delivery Amount, Return Amount and Credit Support Amount**

(A)    **"Delivery Amount"** has the meaning specified in Paragraph 3(a).

(B)    **"Return Amount"** has the meaning specified in Paragraph 3(b).

(C)    **"Credit Support Amount"** means, for any Valuation Date (i) the Secured Party's Exposure for that Valuation Date plus (ii) the aggregate of all Independent Amounts applicable to the Pledgor, if any minus (iii) the Pledgor's Threshold; provided, however, that (x) in the case where the sum of the Independent Amounts applicable to Pledgor exceed zero, the Credit Support Amount will not be less than the sum of all Independent Amounts applicable to the Pledgor and (y) in all other cases, the Credit Support Amount will be deemed to be zero whenever the calculation of Credit Support Amount yields an amount less than zero.

Nationsbank

(ii)    **Eligible Collateral.**  The following items will qualify as "Eligible Collateral" for the party specified:

| | Collateral Type | Party A | Party B | Valuation Percentage |
|---|---|---|---|---|
| (A) | Cash, in the form of U.S. Dollars | [X] | [X] | 100% |
| (B) | negotiable debt obligations issued by the U.S. Treasury Department having a remaining maturity at issuance of not more than one year. ("Treasury Bills") | [X] | [X] | 99% |
| (C) | negotiable debt obligations issued by the U.S. Treasury Department having a remaining maturity at issuance of more than one year but not more than ten years ("Treasury Notes") | [X] | [X] | 95% |
| (D) | negotiable debt obligations issued by the U.S. Treasury Department having a remaining maturity at issuance of more than ten years. ("Treasury Bonds") | [X] | [X] | 92% |
| (E) | Other:  negotiable debt obligations issued by the Federal National Mortgage Association, the Government National Mortgage Corporation the Federal Home Loan Mortgage Corporation, provided, however, that such securities may not be (a) multi-class or multi-tranch securities or (b) paying interest or principal only  ("Agency Securities") | [X] | [X] | 90% |

(iii)   **Other Eligible Support.**  The following items will qualify as "Other Eligible Support" for the party specified:  Not applicable.

(iv)    **Thresholds.**

(A)   **"Independent Amount"** shall mean an amount, if any, as set forth in a confirmation with respect to Party A.

**"Independent Amount"** shall mean an amount, if any, as set forth in a confirmation with respect to Party B.

(B)   **"Rated Debt"** means the long term unsecured debt of Lehman Brothers Holdings Inc. in the case of Party A, and the long term unsecured debt or long-term deposits of Party B in the case of Party B, which is rated by both Moody's Investors Service Inc. ("Moody's") and Standard & Poor's Rating Group ("S&P").

Nationsbank

(C)   **"Threshold"** means, with respect to the Pledgor, the amount corresponding to the lowest rating of the Rated Debt of the Pledgor as set forth in the table below; provided, however, that if Moody's and S&P have assigned ratings at different levels for any issue of Rated Debt, the lower of such ratings shall be used for purposes hereof and, provided that the thresholds shall be zero with respect to the Pledgor if an Event of Default has occurred and is continuing with respect to the Pledgor.

| S&P Rating | Moody's Rating | Threshold |
|---|---|---|
| AAA | Aaa | $30,000,000 |
| AA+ | Aa1 | $25,000,000 |
| AA | Aa2 | $22,500,000 |
| AA- | Aa3 | $20,000,000 |
| A+ | A1 | $15,000,000 |
| A | A2 | $10,000,000 |
| A- | A3 | $5,000,000 |
| BBB+ | Baa1 | $2,500,000 |
| BBB and below | Baa2 and below | $0(Zero) |

(D)   **"Minimum Transfer Amount"** means, with respect to a party, $250,000; provided, that if an Event of Default has occurred and is continuing, the Minimum Transfer Amount with respect to such party shall be zero.

(F)   **Rounding.** The Delivery Amount and the Return Amount will be rounded up and down respectively to the nearest integral multiple of $1,000.

(c)   **Valuation and Timing.**

(i)   **"Valuation Agent"** means for the purpose of Paragraphs 3 and 5, the party making the demand under Paragraph 3, and for purposes of Paragraph 6(d), the Secured Party receiving or deemed to receive the Distributions or the Interest Amount, as applicable. In addition, the Valuation Agent will be the Secured Party for purposes of calculating value in connection with the substitution pursuant to Paragraph 4(d).

(ii)   **"Valuation Date"** means the first and fifteenth calendar day of each calendar month or, if such day does not fall on a Local Business Day, then the next following day that is a Local Business Day plus any two (2) additional Local Business Days during each month selected by a party hereto.

(iii)   **"Valuation Time"** means the close of the Local Business Day before the Valuation Date or date of calculation as applicable; provided, that the calculations of Value and Exposure will be made as of approximately the same time on the same date.

Nationsbank

(iv)   **"Notification Time"** means by 1:00 p.m., New York time, on a Local Business Day.

(d)   **Conditions Precedent and Secured Party's Rights and Remedies.**  The following Termination Event(s) will be a "Specified Condition" for the party specified (that party being the Affected party if the Termination Event occurs with respect to that party):

|  | Party A | Party B |
|---|---|---|
| Illegality | [ ] | [ ] |
| Tax Event | [ ] | [ ] |
| Tax Event Upon Merger | [ ] | [ ] |
| Additional Termination Event | [X] | [X] |
| Credit Event Upon Merger | [X] | [X] |

(e)   **Substitution**

(i)   **"Substitution Date"** has the meaning specified in Paragraph 4(d)(ii), unless otherwise specified here:  Not later than two (2) Local Business Days following the Secured Party's receipt of Substitute Credit Support.

(ii)   **Consent.**  The Pledgor need not obtain the Secured Party's consent for any substitution pursuant to Paragraph 4(d).

(f)   **Dispute Resolution**

(i)   **"Resolution Time"** means 1:00 p.m. New York time on the second Local Business Day following the time at which notice is given that gives rise to a dispute under Paragraph 5.

(ii)   **"Value."**  For the purpose of Paragraph 5(i)(c) and 5(ii), the Value of Posted Credit Support other than Cash will be calculated as follows:

With respect to any Treasury Bills, Treasury Notes, Treasury Bonds or Agency Securities (referred to herein as "Government Obligations") the product of (A) sum of (I) (x) the mean of the high bid and low asked prices quoted on such date by any principal market maker for such Government Obligations chosen by the Secured Party, or (y) if no quotations are available from a principal market maker for such date, the mean of such high bid and low asked prices as of the day, next preceding such date, on which such quotations were available, plus (II) the accrued interest on such Government Obligations (except to the extent Transferred to a party pursuant to this Agreement or included in the applicable price referred to in (I) of this Clause) as of such date multiplied by (B) the percentage figure listed in section b(ii) hereof with respect to such Government obligations.

Nationsbank

    (iii)    **Alternative.** Not Applicable.

(g)    **Holding and Using Posted Collateral.**

    (i)    **Eligibility to Hold Posted Collateral; Custodians.**

Party A and or its Custodian will be entitled to hold Posted Collateral pursuant to Paragraph 6(b), <u>provided</u> that the following conditions applicable to it are satisfied:

    (1)    Party A:  Party A is not a Defaulting Party.

    (2)    The Custodian, if any, is either (a) a wholly owned, direct or indirect, subsidiary of Lehman Brothers Holdings Inc. or (b) bank or trust company located in the State of New York having total assets of at least $100,000,000 and a rating of at least (i) Baa2 from Moody's and (ii) BBB from S&P.

Initially, the Custodian for Party A is:  Not applicable.

Party B and its Custodian will be entitled to hold Posted Collateral pursuant to Paragraph 6(b), <u>provided</u> that the following conditions applicable to it are satisfied:

    (1)    Party B is not a Defaulting Party.

    (2)    The Custodian, if any, is a bank or trust company located in the State of New York having  total assets of at least $100,000,000 and a rating of at least (i) Baa2 from Moody's and (ii) BBB from S&P.

Initially, the Custodian for Party B is :  Not applicable.

    (ii)    **"Use of Posted Collateral"** The provisions of Paragraph 6(c) will apply to Party A and Party B.

(h)    **Distributions and Interest Amount.**

    (i)    **"Interest Rate."**  The Interest Rate will be the rate per annum equal to the overnight Federal Funds Rate for each day cash is held by the Secured Party as reported on Telerate page number 118.

    (ii)    **"Transfer of Interest Amount."**  The Transfer of the Interest Amount will be made on the last Local Business Day of each calendar month and on any Local Business Day that Posted Collateral in the form of Cash is Transferred to the Pledgor pursuant to Paragraph 3(b).

    (iii)    **"Alternative to Interest Amount."**  Not applicable.

Nationsbank

(i) **Additional Representation(s).** Not applicable.

(j) **Other Eligible Support and Other Posted Support.**

    (i) **"Value"** with respect to Other Eligible Support and Other Posted Support means: Not applicable.

    (ii) **"Transfer"** with respect to Other Eligible Support and Other Posted Support means: Not applicable.

(k) **Demands and Notices.** All demands, specifications and notices made by a party to this Annex will be made pursuant to the Notices Section of this Agreement.

(l) **Addresses for Transfers.**

Party A:

    (i) In the case of cash, by wire transfer of immediately available funds for credit to a bank account of Party A to be designated in Party A's demand for the Delivery Amount or Return Amount, as applicable.

    (ii) In the case of securities or obligations that can be paid or delivered by book-entry on the records of U.S. Federal Reserve Banks, delivery to Chemical Bank, for credit to the account of Lehman Government Securities Inc., as agent for Party A (in telegraphic abbreviation, CHEMICAL NYC/LEHMAN, ABA #021000128).

Party B:

    (i) In the case of cash, by wire transfer immediately available funds to : Harris Trust and Savings Bank, Chicago ABA 071 000 288 AC 1245372, F/A/O: Nationsbank, N.A.

    (ii) In the case of book-entry securities constituting Eligible Collateral : NATIONSBK NC/DLR, ABA 053 000 196.

(M) **Other**

    (i) This Credit Support Annex is a Security Agreement under the New York Uniform Commercial Code.

    (ii) Paragraph 8(d) is hereby amended by striking the words "or thereafter may become" in line 1 thereof.

Nationsbank

The parties executing this Credit Support Annex have agreed to the contents of this document.

LEHMAN BROTHERS SPECIAL
FINANCING INC.
        (Name of Party)

NATIONSBANK, N.A.

        (Name of Party)

By: ...........................................................

Name:
Title:          Bruce M. Witherell
Date:           Managing Director

By: ...........................................................

Name:
Title:          R. VAUGHAN DODD
Date:           SENIOR VICE PRESIDENT
                December 10, 1996

Nationsbank

## AMENDMENT TO THE ISDA MASTER AGREEMENT

THIS AMENDMENT, dated as of June 2, 1997 (the "Amendment"), between NATIONSBANK, N.A. ("NationsBank") and LEHMAN BROTHERS SPECIAL FINANCING INC. ("LBSF")

### W I T N E S S E T H

WHEREAS, NationsBank and LBSF have heretofore entered into a certain ISDA Master Agreement, dated as of October 31, 1996, (including the Schedule thereto and the Confirmations (each as defined therein), the "Agreement"); and

WHEREAS, NationsBank and LBSF now desire to amend the Agreement, as hereinafter provided;

SECTION 1. Part 5 of the Schedule to the Agreement is hereby amended by adding the following paragraph to the end thereof:

"(m) *Restatement and Amendment of Prior Agreement.* This Master Agreement restates and amends in its entirety the ISDA Interest Rate and Currency Exchange Agreement dated as of January 27, 1992 between NATIONSBANK OF GEORGIA, NATIONAL ASSOCIATION and LEHMAN BROTHERS SPECIAL FINANCING INC. (the "Prior Agreement"). Each confirmation to the Prior Agreement shall be deemed a Confirmation subject to this Agreement, and each transaction subject to such a confirmation shall be governed hereby."

SECTION 2. The Agreement, as amended hereby, is hereby ratified, approved and confirmed in each and every respect.

SECTION 3. THIS AMENDMENT WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REFERENCE TO CHOICE OF LAW DOCTRINE.

SECTION 4. This Amendment may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be

Amendment

executed by their respective officers thereunto duly authorized as of the day and year first
above written.

NATIONSBANK, N.A.

By: _____
Title:  R. Vaughan Dodd
        Senior Vice President

LEHMAN BROTHERS SPECIAL FINANCING
INC.

By: _____
Title:  FLORENCE D. NOLAN
        VICE PRESIDENT

2



**Bank of America**

3807/28516

Global Capital Markets
Documentation, Unit #2960
555 California Street, 2nd Floor
San Francisco, CA 94104
United States of America

Facsimile: (415) 953-7997

June 30, 1999

Lehman Brothers Special Financing Inc.
Atttention: Documentation Manager
Derivative Finance Department
3 World Financial Center, 12ᵗʰ Floor
New York, NY 10285
Tel.: 212 526 1877

Attention:   Derivatives Documentation
             PLEASE REPLY BY **July 14, 1999**

Subject:   Merger of NationsBank, N.A. and Bank of America National Trust and Savings
           Association

Dear Sir or Madam:

On July 5, 1999, NationsBank, N.A. ("NationsBank") will change its name to Bank of
America, N.A. Thereafter, on July 23, 1999, Bank of America National Trust and Savings
Association ("BofA") will merge with Bank of America, N.A. and the surviving bank will be
named Bank of America, N.A. (as merged, "Bank of America").

In connection with our merger, we are reviewing our trading documentation and have
discovered that Lehman Brothers Special Financing Inc. ("you") has entered into an ISDA
Interest Rate and Currency Exchange Agreement with BofA and an ISDA Master Agreement
with NationsBank. Therefore, BofA and NationsBank agree by their signatures below and
hereby request your agreement and consent to the following:

1) You and NationsBank hereby amend the ISDA Master Agreement with NationsBank
   dated as of October 31, 1996 ("the NationsBank Master Agreement") as provided for
   in Appendix A,

2) BofA transfers and assigns to NationsBank all transactions then outstanding (the
   "BofA Transactions") under the ISDA Interest Rate and Currency Exchange
   Agreement with BofA dated as of October 6, 1989 (the "BofA Master Agreement"), 2347

3) NationsBank assumes all of BofA's obligations and liabilities under the BofA
   Transactions, you release BofA from all such obligations and liabilities, and BofA
   releases you from all such obligations and liabilities,

07/19/99  17:20    LEHMAN BROTHERS → 914159537997                    NO.940  P003

4) the inclusion under the NationsBank Master Agreement of the transferred and assigned BofA Transactions and the continuation of the NationsBank Master Agreement,

5) the Credit Support Annex to the NationsBank Master Agreement (the "NationsBank CSA") continues in full force and effect (which shall cover all transactions under the NationsBank Master Agreement, including the transferred BofA Transactions)[1],

6) the Guaranty supporting the NationsBank Master Agreement (the "NationsBank Guaranty") continues in full force and effect, which shall cover all transactions under the NationsBank Master Agreement, including the transferred BofA Transactions,

7) BofA and you terminate the BofA Master Agreement and the attached CSA and its supporting guaranty.

These actions will be effective as of July 23, 1999 (the "Transfer Date"), unless we notify you otherwise. As of this Transfer Date, your counterparty for all new transactions will be Bank of America, N.A., and such transactions will be governed by the NationsBank Master Agreement, and the NationsBank Master Agreement will automatically become the Bank of America, N.A. Master Agreement.

For the BofA Transactions, the name of your counterparty will change to Bank of America, N.A. on July 23, 1999. Despite this change, please continue to use the settlement instructions you are currently using. Any change in these settlement instructions will be the subject of a separate written notice.

Please confirm your agreement and consent by signing both enclosed copies of this letter and returning one signed copy to:

Clay Douglas Whitmer
Global Capital Markets Documentation, Unit #2960
Bank of America National Trust and Savings Association
555 California Street, 2nd Floor
San Francisco, CA 94104

Please retain the other copy for your files.  WE WOULD GREATLY APPRECIATE YOUR REPLY AS SOON AS POSSIBLE, AND IN ANY CASE BY July 14, 1999.

---

[1] Depending upon the terms of this NationsBank CSA, the aggregate amount of credit support required from you may change as a result of the transfer of the BofA Transactions to the NationsBank Master Agreement and the NationsBank CSA.

If you have any questions regarding this matter, please do not hesitate to call Clay Whitmer of Bank of America at (415) 953-8400. Thank you for your prompt attention to this matter.

Very truly yours,

Agreed and consented to by:

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION

By: _____
    Jerry Bolick, Vice President

NATIONSBANK, N.A.

By: _____
    Jerry Bolick, Authorized Signer

Agreed and consented to on _July 16, 1999_ (insert date).

LEHMAN BROTHERS SPECIAL FINANCING INC.

By: _____
Name: Florence D. Nolan
Title: Vice President

cc:  Vaughan Dodd, NC1-007-13-01
     Robert Brown, Unit # 5111

3

## CONSENT OF GUARANTOR

The undersigned is the Guarantor under the NationsBank Guaranty referred to in the foregoing letter agreement (the "Letter"). Capitalized terms used herein but not defined have the meanings given in the Letter. The undersigned Guarantor hereby agrees and consents to the assignment, transfer, assumption and other matters discussed in the foregoing letter, and further agrees and consents that on and after the Transfer Date the NationsBank Guaranty will apply to and cover the obligations and liabilities of the addressee of the Letter under the NationsBank Master Agreement and all transactions thereunder, including the transferred BofA Transactions.

LEHMAN BROTHERS HOLDINGS, INC.

By: _____

Name: JENNIFER PADDRE

Title: VP & SECRETARY

Date: 7/19/99

4

## Appendix A - Amendments

A)     **Part 4(d) of the Schedule is amended by the following:**

"(d)   *Multibranch Party.* For the purpose of Section 10 of this Agreement:-
Bank of America is a Multibranch Party and may act through the following Offices:

| | | |
|---|---|---|
| Its London Branch at:<br>New Broad Street House<br>35 New Broad Street<br>London EC2M 1NH<br>England | Its Chicago Office at:<br>Sears Tower<br>233 South Wacker Drive,<br>Suite 2800<br>Chicago, Illinois 60606<br>U.S.A. | Its Charlotte Office at:<br>100 N. Tryon Street<br>NC1-007-13-01<br>Charlotte, North Carolina 28255<br>U.S.A. |
| Its London Branch at:<br>Bank of America House<br>1 Alie Street<br>London E1 8DE<br>England | Its San Francisco Office at:<br>1455 Market Street, 5th Floor<br>San Francisco, California 94103<br>U.S.A. | Its Seattle, Washington Branch,<br>doing business as Seafirst Bank,<br>800 Fifth Avenue, Floor 34<br>Seattle, WA 98104<br>U.S.A. |
| Its Tokyo Branch at:<br>ARK Mori Building, 34th Floor<br>12-32 Akasaka, 1-chome,<br>Minatoku<br>Tokyo 107<br>Japan | Its Antwerp Branch at:<br>Uitbreidingsstraat 180<br>Antwerp<br>Belgium | Its Frankfurt Branch at:<br>Ulmenstrasse 30<br>P. O. Box 11 02 43<br>Frankfurt Am Main<br>Germany |
| Its Grand Cayman Branch at:<br>Anchorage Center<br>Harbour Drive<br>P.O. Box 1078<br>Grand Cayman<br>B.W.I. | Its Geneva Branch at:<br>Rue du Marché 40<br>P.O. Box 3042<br>1211 Geneva 3<br>Switzerland | Its Dublin Branch at:<br>Russell Court<br>St. Stephen's Green<br>Dublin, 2<br>Republic of Ireland |
| Its Hong Kong Branch at:<br>Bank of America Tower<br>23rd Floor<br>12 Harcourt Road<br>G.P.O. Box 472<br>Hong Kong | Its Paris Branch at:<br>43/47 Avenue de la Grand Armee<br>F-75782 Paris, Cedex 16,<br>France | Its Amsterdam Branch at:<br>Herengracht 469<br>1017 BS Amsterdam<br>The Netherlands |
| Its Singapore Branch at:<br>9 Raffles Place, #16-00<br>Republic Plaza Tower 1<br>Singapore 048619<br>Singapore | Its Milan Branch at:<br>Corso Matteotti 10<br>20121 Milano<br>Italy | Its Sydney Branch at:<br>MLC Centre<br>19-29 Martin Place<br>Sydney, NSW 2000<br>Australia" |

B)     **Part 4(j) of the Schedule is hereby deleted and replaced with the following:**

"(j)   *Netting of Payments.* All amounts payable on the same date, in the same currency
and in respect of the same Transaction shall be netted in accordance with Section 2(c) of
this Agreement.  The election contained in the last paragraph of Section 2(c) of this
Agreement shall not apply for the purposes of this Agreement."

5

C)    Part 4(e) of the Schedule is hereby deleted and replaced with the following:

"(e)    Calculation Agent. The Calculation Agent is Bank of America, N.A."

D)    Paragraph 13(b)(iv)(C) of the NationsBank CSA is hereby deleted and the following provision is inserted in its place:

"(B)    Threshold means with respect to each party hereto, zero."

E)    Paragraph 13(c)(ii) of the NationsBank CSA is hereby deleted and the following provision is inserted in its place:

"(ii)    *"Valuation Date"* means any Local Business Day."

6

**LEHMAN BROTHERS FIXED INCOME DERIVATIVES**
3 World Financial Center
New York, New York 10285

# FAX COVER SHEET

**DATE:**    July 19, 1999

**TO:**    Mindi Schuman
            Bank of America
            **PHONE:**
            **FAX:**    415-9537997

**FROM:**   Heidi Lewis
            Lehman Brothers
            **PHONE:**    (212) 526-0846
            **FAX:**    (212) 526-6127

**RE:**    MERGER DOCUMENTS

Number of pages including cover sheet: 12

The information being transmitted by this facsimile message is being sent by or on behalf of a lawyer. It is intended for the exclusive use of the addressee named above and may contain information that is privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee or an employee or agent responsible for delivering this facsimile message to the named addressee, you are not authorised to retain, read, copy or disseminate this facsimile message or any part of it. If you have received this facsimile message in error, please notify us immediately by telephone and return the original facsimile to us by mail. Thank you.

Mindi,

As discussed, for your records.

Please give me a call if there are any questions.

Thanks for your help,

Heidi

Fax-hll.doc

## AMENDMENT
dated as of November 3, 1999
to the
ISDA Master Agreement dated as of October 31, 1996

1.    Lehman Brothers Special Financing, Inc.("Party A") and Bank of America, N.A. (successor by merger of NationsBank, N.A. and Bank of America.National Trust and Savings Association) ("Party B") are parties to an ISDA Master Agreement dated as of October 31, 1996 (originally with NationsBank, N.A. and amended by letter agreement dated June 30, 1999) and as may be further amended from time to time (the "Master Agreement"). Party A and Party B have agreed to amend the Master Agreement. In consideration of the foregoing and the mutual agreements hereinafter set forth, the parties hereto mutually agree as follows:

2.    Part 4(e) of the Schedule to the Master Agreement is hereby deleted in its entirety and replaced with the following:

"Party A shall be the Calculation Agent; provided that if a party objects to a calculation by the Calculation Agent for this Transaction of a rate or an amount, a determination in respect of a Market Disruption Event or a selection of an exchange rate or banks or dealers for the purpose of making any calculation or determination within two Business Days of notice of that calculation, determination or selection, then Party A and Party B will negotiate in good faith to agree on an independent third party that will calculate the relevant amount or rate, determine whether or not a Market Disruption Event exists or select the exchange rate or banks or dealers, as the case may be, and, if they cannot so agree within three Business Days, each of Party A and Party B will promptly choose an independent third party and instruct the parties so chosen to agree on another independent third party that will calculate the rate or amount, determine whether or not a Market Disruption Event exists or select the exchange rate or banks or dealers, as the case may be. Any calculation, determination or selection pursuant to these provisions by an independent third party will be binding in the absence of manifest error. The costs of any independent third party called upon to make such a calculation, determination or selection will be borne equally by Party A and Party B."

3.    In order to induce each other to enter into this Amendment, each party hereto makes, as of the effective date of this Amendment, the representations set forth in Sections 3(a) and (b) of the Master Agreement; provided that the phrase "this Agreement," as used in said Sections 3(a) and (b) shall mean (for the purposes of this paragraph 3 only) both this Amendment and the Master Agreement as amended hereby.

4.    Except as otherwise specifically set forth herein, all references to the Master Agreement in the Master Agreement or any document related thereto shall for all purposes constitute references to the Master Agreement as amended hereby.

5.    Simultaneously with its delivery of this Amendment executed by it, each party hereto shall deliver to the other evidence of all authorizations, approvals and other actions necessary for that party to execute and deliver this Amendment and evidence of the specimen signature, authority and incumbency of each person executing this Amendment on that party's behalf (unless such evidence has previously been supplied pursuant to the Master Agreement and remains correct and in effect).

6.    This Amendment shall be governed by and construed in accordance with the laws of the State of New York without reference to choice of law doctrine.

1

Amendment

7.    Except to the extent specifically amended herein, the Master Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, Party A and Party B have executed this Amendment effective as of the day of 3rd day of November, 1999.

LEHMAN BROTHERS SPECIAL
FINANCING, INC.

By: _____

Name: _____
FLORENCE D. NOLAN

Title: _____
VICE PRESIDENT

BANK OF AMERICA, N.A.

By: _____

Name: _____
JERRY L. BOLICK

Title: _____
Vice President

2

EXECUTION COPY

## AMENDMENT AGREEMENT

AMENDMENT AGREEMENT (the "Amendment") dated as of October 20, 2000 to the ISDA Master Agreement between LEHMAN BROTHERS SPECIAL FINANCING INC. ("Party A") and BANK OF AMERICA, N.A., formerly NationsBank, N.A. ("Party B"), dated as of October 31, 1996 and as amended as of June 2, 1997, July 23, 1999 and November 3, 1999.

### WITNESSETH

WHEREAS, Party A and Party B have entered into a Master Agreement dated as of October 31, 1996 (the "Master Agreement"); and

WHEREAS, Party A and Party B may enter into transactions with each other; and

WHEREAS, Party A and Party B desire to amend the Master Agreement and to have the Master Agreement, as amended herein, govern the rights and obligations of Party A and Party B with respect to each and every Transaction which is (a) outstanding on the date hereof, and (b) entered into on or after the date hereof.

NOW, THEREFORE, in consideration of the mutual agreements herein contained, and for other valuable consideration, Party A and Party B hereby acknowledge and agree as follows:

1. Certain Definitions.  Unless otherwise defined herein, capitalized terms used herein have the meanings specified in or pursuant to the Master Agreement.

2. At the end of Paragraph 4(d) of the Schedule to the Master Agreement, the following provision is to be inserted:

"Its New York Branch at:

40 East 52nd Street

New York, NY 10022"

3. Except as specifically amended hereby, all of the terms and conditions of the Master Agreement shall remain unaffected and shall continue to be in full force and effect and shall be binding upon the parties in accordance with their respective terms.

*bankofamerica na amendment.doc*

4. Each of the parties hereby represents and warrants that:

(a)  the representations and warranties contained in the Master Agreement are true on and as of the date hereof as if made by the party on and as of said date, and

(b)  the execution, delivery and performance of this Amendment are within the party's corporate power and have been duly authorized by all necessary corporate action, and this Amendment constitutes the legal, valid and binding obligation of the party in accordance with its terms.

5. This Amendment may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.

6. This Amendment shall be construed in accordance with and be governed by the laws of the State of New York.

IN WITNESS WHEREOF, the parties have caused this Amendment to be executed by their respective officers or authorized representatives as of the day and year first above written.

LEHMAN BROTHERS SPECIAL
FINANCING INC.
(Party A)

Name:
Title:      ROBERT E. GUGLIELMO
Date:      SENIOR VICE PRESIDENT

BANK OF AMERICA, N.A.

(Party B)

Name:
Title:
Date:  6/21/01

JERRY L. BOLICK
Vice President

*bankofamerica na amendment.doc*