**Hearing Date: December 3, 2008 at 10:00 a.m.**

BLANK ROME LLP
Attorneys for Iconix Brand Group, Inc.
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000
Andrew B. Eckstein
Rocco A. Cavaliere

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) Jointly Administered |
| Debtors. | |

---------------------------------------------------------

### OBJECTION OF ICONIX BRAND GROUP, INC. TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS

Iconix Brand Group, Inc. ("Iconix") hereby submits this objection (the "Objection") to

the motion of the above-captioned debtors (the "Debtors") for an order pursuant to §§ 105 and

365 of chapter 11 of title 11 of the United State Code (the "Bankruptcy Code") to establish

procedures for the settlement or assumption and assignment of prepetition derivative contracts

(the "Motion"). In support of the Objection, Iconix respectfully states as follows:

### Background

1.      On September 15, 2008, and thereafter, several of the Debtors, including Lehman

Brothers Holdings, Inc. ("LBHI") filed Chapter 11 bankruptcy petitions in this Court. On

October 3 2008, Lehman Brothers OTC Derivatives, Inc. ("LB OTC") filed a Chapter 11

bankruptcy petition.

521949.01111/6688233v.5

2.      On September 17, 2008, the Office of the United States Trustee for the Southern

District of New York appointed the official committee of unsecured creditors (the "Committee")

in the Debtors' cases.

### Debtors' Derivative Contracts with Iconix

3.      On June 14, 2007, Iconix entered into a certain Master Agreement with LB OTC

governing the relationship between the parties regarding certain derivative transactions.

Supplementing the Master Agreement, on June 19, 2007, Iconix and LB OTC entered into the

OTC Convertible Note Hedge (the "Hedge Agreement") and the OTC Warrant (the "Warrant",

together with the Master Agreement and the Hedge, the "Agreement"). Lehman Brothers, Inc.

served as Agent for LB OTC in respect of the Agreement.

4.      On or about June 14, 2007, LBHI delivered a Guarantee to Iconix unconditionally

guaranteeing the obligations of LB OTC under the Agreement.

5.      The filing of each voluntary chapter 11 petition by LB OTC and LBHI,

respectively, constitute "Events of Default" under the Agreement. *See Master Agreement,* §

5(a)(vii). Upon the occurrence of an Event of Default, the non-objecting party, in this case,

Iconix, may, upon notice to LB OTC, designate an "Early Termination Date" (as defined in the

Master Agreement) in respect of all outstanding transactions under the Agreement, thereby

effectively terminating the Agreement. *See Master Agreement,* § 6(a). As of the date hereof,

Iconix has not exercised such right.

### The Debtors' Motion

6.      The Debtors' Motion seeks to establish procedures in connection with assumption

and assignment of certain "Derivative Contracts" (defined in the Motion) that have not yet been

terminated by various counterparties (the "Assignment Procedures"). Furthermore, the Debtors'

2

521949.01111/6688233v.5

Motion seeks to establish expedited procedures in connection with the settlement of terminated

Derivative Contracts (the "Termination Procedures"). The Assignment Procedures and the

Termination Procedures vary from the procedures negotiated and set forth in the Agreement.

## Objection To Motion

7.      The Motion impermissibly seeks to modify and abrogate counterparties' rights

under various derivative contracts that were negotiated and set forth in the Agreement between

Iconix and LB OTC. Among other things, the Debtors threaten to seek to impose an extra-

contractual time limitations for the exercise of counterparties' termination rights. *See Motion*, p.

4, f.n. 2.

8.      First, the Agreement expressly prohibits assignment or transfer of a

counterparty's obligations under the Agreement without the consent of the counterparty. Despite

the Debtors' arguments to the contrary, the Derivative Contracts at issue in the Debtors' Motion,

unlike the run of the mill executory contract, cannot be assumed and assigned pursuant to section

365 of the Bankruptcy Code, unless the party to such Derivative Contract consents thereto.

Indeed, the Motion severely threatens to undercut counterparties' rights to terminate and setoff

under Congress's specially crafted provisions of the Bankruptcy Code designed to protect

counterparties to Derivative Contracts. 11 U.S.C. §§ 555-561.

9.      Second, the Assignment Procedures indicate that an assignee will automatically

be determined a "Qualified Assignee" if such assignee or its credit support provider has a

Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating

equal to or higher than A3, or any equivalent thereof." *See, Motion,* p. 9. Iconix objects to this

provision. The ratings by S&P and Moody's cannot be relied on as the sole determinative factor

to qualify a proposed assignee. Parties to master agreements governing derivative contracts also

521949.01111/6688233v.5

consider and have the right to consider factors besides credit agency ratings in determining who is a suitable counterparty.  Simply stated, the Assignment Procedures should not abrogate the right of Iconix and other counterparties to object to any proposed assignee on any valid grounds, including whether or not such assignee complies with the standards suggested by the Debtors for a "Qualified Assignee".

10.     Third, the Assignment Procedures provide counterparties with a mere five business days to file an objection to an Assignment Notice (defined in the Motion) on the grounds of, among other things, (i) an improper cure amount, and (ii) adequate assurance of future performance.   The suggested timeframe is clearly inadequate.  Calculations concerning open trades can be very difficult and time-consuming and thus more time is needed to properly calculate cure amounts.  Also, five business days from the date of service may not be sufficient to determine whether the requirement of adequate assurance of future performance has been met. Iconix submits that counterparties should be provided with at least ten business days notice to formulate an objection to an Assignment Notice.  Only then will counterparties be assured a fair opportunity to protect their rights.

11.     Fourth, the Assignment Procedures should not adversely impact counterparties' valid rights of termination and setoff under the Bankruptcy Code.  The Assignment Procedures unfairly expedite the termination process thereby affecting counterparties' rights under the Bankruptcy Code to determine when to offset and terminate Derivative Contracts.  At the very least, Iconix and other counterparties' rights to terminate Derivative Contracts should not be abrogated unless and until an assignment has been finally consummated.  The Assignment Procedures should make it clear that a counterparty which may receive an Assignment Notice (triggering the five business day objection period), should still have the right, prior to

4

consummation of the assignment, to terminate its Derivative Contracts and related master agreements with the Debtors.

12.    Fifth, the provisions of the Assignment Procedures that purport to cure all defaults (aside from the LBHI and LBSF bankruptcy filing defaults) improperly strip Iconix from pursuing its rights arising from other rights to terminate.

13.    Sixth, the Assignment Procedures should not interfere with Iconix's and other counterparties' rights to object to a proposed assignment on any valid grounds including but not limited to a proposed assignee's failure to provide a separate unconditional guarantee from an affiliated third party or otherwise.  As noted above, LB OTC's obligations under the Agreement have been guaranteed by LBHI.  Iconix's position should be in no worse position should the Debtors seek to assign the Agreement to an assignee.

14.    Seventh, the Assignment Procedures state that "In any instance where a Derivative Contract is memorialized pursuant to a master agreement, the Debtors may assume and assign, pursuant to the Assignment Procedures, only all, but not fewer than all of the Derivative Contract transactions entered into pursuant to the master agreement." *See, Motion,* p. 12. The definition of "Derivative Contracts" in the Motion does not appear to directly include underlying master agreements.  Thus, this provision could suggest that the Debtors may only be required to assign the Derivative Contracts and not necessarily the master agreement.  This provision should be amended to make it clear that to the extent that the Debtors seek to assign the Hedge Agreement and the Warrant, that the Debtors must also be required to assign the Master Agreement to the same proposed assignee.

15.    Eight, the Assignment Procedures state that the Debtors will attempt to resolve each objection to an Assignment Notice consensually but to the extent that an objection cannot

5

be resolved, the Debtors may seek Court authorization of the proposed assignment. Iconix does

not object to the proposed goal of a consensual resolution of an objection to an Assignment

Notice. However, the Assignment Procedures should be amended to specify a more definitive

timeframe for resolution and also provide counterparties the right to seek a Court hearing to the

extent that the Debtors are unnecessarily delaying the resolution of a particular objection.

16.     Finally, although Iconix has not yet terminated the Agreement, in order to

preserve its rights if and when Iconix does terminate, Iconix has the following objections to the

Termination Procedures. Iconix submits that the Termination Procedures for terminated

Derivative Contracts should be amended and clarified to (i) specify that the termination

payments and expenses should be calculated in accordance with the Agreement, (ii) specify

timeframes in which parties will submit information in support of their calculation of the

appropriate termination payment due, and (iii) allow for Court intervention and an opportunity to

be heard to the extent a settlement cannot be reached consensually within a specified timeframe.

Further, the Debtors must clarify what they mean when they indicate that they "may" provide a

release to counterparties in the event that the parties enter into a termination agreement. If the

Agreement is terminated in accordance with the terms thereof or as a result of an order of this

Court, all parties should be released.

## Joinder In Other Objections To Motion

17.     Iconix joins in other objections filed to the Motion to the extent not inconsistent

with this Objection.

6

## Reservation Of Rights

18.    Iconix hereby reserves all of its rights to submit additional arguments in support

of this Objection either prior to or at the hearing to consider the Motion and reserves all of its

rights under the Agreement.

## Waiver of Memorandum of Law

19.    Iconix requests a waiver of the requirement of a memorandum of law required

under Local Bankruptcy Rule 9013-1(a).

WHEREFORE, Iconix respectfully requests that this Court deny the Motion consistent

with this Objection.

Dated: New York, New York
       November 26, 2008

                                        BLANK ROME LLP
                                        Attorneys for Iconix Brand Group, Inc.


                                        By: /s/ *Andrew B. Eckstein*
                                            Andrew B. Eckstein
                                            Rocco A. Cavaliere
                                            The Chrysler Building
                                            405 Lexington Avenue
                                            New York, New York 10174
                                            (212) 885-5000

7