Hearing Date: December 3, 2008 at 10:00 a.m.

BLANK ROME LLP
Attorneys for Capital Automotive L.P.
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000
Andrew B. Eckstein
Rocco A. Cavaliere

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) Jointly Administered |
| Debtors. | |

---

### OBJECTION OF CAPITAL AUTOMOTIVE L.P. TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS

Capital Automotive L.P. ("CALP") hereby submits this objection (the "Objection") to the motion of the above-captioned debtors (the "Debtors") for an order pursuant to §§ 105 and 365 of chapter 11 of title 11 of the United State Code (the "Bankruptcy Code") to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts (the "Motion"). In support of the Objection, CALP respectfully states as follows:

### Background

1. On September 15, 2008, and thereafter, several of the Debtors, including Lehman Brothers Holdings, Inc. ("LBHI") filed Chapter 11 bankruptcy petitions in this Court. On October 3, 2008, Lehman Brothers Special Financing Inc. ("LBSF") filed a Chapter 11 bankruptcy petition.

900200.00001/6689175v.1

2.   On September 17, 2008, the Office of the United States Trustee for the Southern District of New York appointed the official committee of unsecured creditors (the "Committee") in the Debtors' cases.

### Debtors' Derivative Contracts with CALP

3.   LBSF entered into three interest rate swap agreements with CALP Merger, L.P., predecessor in interest to CALP between December 15, 2005 and December 19, 2005 (the "Confirmations") to hedge various obligations incurred in connection with the financing of the merger as follows:

- Confirmation dated December 15, 2005 – Risk ID: 1089413L/Effort ID:N799808/Global Deal ID:2344708 in the original notional amount of $300 million; Party A (Lehman) pays a floating rate; Party B (CALP) pays a fixed rate; transaction terminates by its terms on 12-1-2009;

- Confirmation dated December 15, 2005 – Risk ID: 1089355L/Effort ID:N799747/Global Deal ID:2344704 in the original notional amount of $100 million: Party A (Lehman) pays a floating rate; Party B (CALP) pays a fixed rate; transaction terminates by its terms on 12-1-08; and

- Confirmation dated December 19, 2005 – Risk ID: 1089403L/Effort ID: N799806/Global Deal ID: 2344709 in the original notional amount of $200 million; Party A (Lehman) pays a floating rate; Party B (CALP) pays a fixed rate; transaction terminates by its terms on 12-1-2010.

4.   The Confirmations were governed by a master agreement between LBSF and CALP dated as of February 2, 2006 (the "Master Agreement"; and together with a Schedule dated as of February 2, 2006 and the Confirmations, collectively, the "Agreement"). The obligations of LBSF under the Agreement were guaranteed by Lehman Brothers Holdings Inc. ("LBHI"). The obligations of CALP under the Agreement were secured under a credit agreement relating to the merger.

5.   The Agreement requires CALP and LBSF to make periodic payments based upon the outstanding notional amount and, as to CALP, a specified fixed rate, and as to LBSF, a

2

specified percentage of the then- prevailing one month LIBOR index. Only the net payment is made by the applicable party.

6. The filing of each voluntary chapter 11 petition by LBHI and LBSF, respectively, constituted an "Event of Default" under the Agreement. *See Master Agreement,* § 5(a)(iii). Upon the occurrence of each such Event of Default, the non-defaulting party, in this case, CALP, had and has, upon notice to LBSF and LBHI, the right to designate an "Early Termination Date" (as defined in the Master Agreement) in respect of all outstanding transactions under the Agreement, thereby effectively terminating the Agreement. *See Master Agreement,* § 6(a). As of the date hereof, CALP has not exercised such right.

### The Debtors' Motion

7. The Debtors' Motion seeks to establish procedures in connection with assumption and assignment of certain "Derivative Contracts" (defined in the Motion) that have not yet been terminated by various counterparties (the "Assignment Procedures"). Furthermore, the Debtors' Motion seeks to establish expedited procedures in connection with the settlement of terminated Derivative Contracts (the "Termination Procedures"). The Assignment Procedures and Termination Procedures vary from the procedures negotiated and set forth in the Agreement.

### Objection To Motion

8. The Motion impermissibly seeks to modify and abrogate counterparties' rights under various derivative contracts which were negotiated by such counterparties with LBSF. Among other things, the Debtors threaten to seek to impose an extra-contractual time limitations for the exercise of counterparties' termination rights. (*See Motion,* p. 4, fn. 2.)

9. First, the Agreement expressly prohibits assignment or transfer of a counterparty's obligations under the Agreement without the consent of the counterparty. Despite

3

900200.00001/6689175v.1

the Debtors' arguments to the contrary, the Derivative Contracts at issue in the Debtors' Motion, unlike the run of the mill executory contract, cannot be assumed and assigned pursuant to section 365 of the Bankruptcy Code, unless the party to such Derivative Contract consents thereto. Indeed, the Motion severely threatens to undercut counterparties' rights to terminate and setoff under Congresi's specially crafted provisions of the Bankruptcy Code designed to protect counterparties to Derivative Contracts. *See,* 11 U.S.C. §§ 555-561.

10. Second, the Assignment Procedures indicate that an assignee will automatically be determined a "Qualified Assignee" if such assignee or its credit support provider has a Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or any equivalent thereof." *See, Motion,* p. 9. CALP objects to this provision. The ratings by S&P and Moody's cannot be relied on as the sole determinative factor to qualify a proposed assignee. Parties to master agreements governing derivative contracts also consider and have the right to consider factors besides credit agency ratings in determining who is a suitable counterparty including but not limited to (i) aggregate credit exposure to the counterparty and compliance with the counterparty's credit policies, (ii) the impact of any tax or withholding obligations, and (iii) compliance with underlying debt instruments. The Assignment Procedures should not abrogate the right of CALP and other counterparties to object to any proposed assignee on any valid grounds, including whether or not such assignee complies with the standards suggested by the Debtors for a "Qualified Assignee".

11. Third, the identity of CALP's counterparty may be restricted by, *inter alia,* its financing documents, and consents and waivers of loan syndicate members and third parties may be required.

12. Fourth, the Assignment Procedures provide counterparties with a mere five business days to file an objection to an Assignment Notice (as defined in the Motion) on the grounds of, among other things, (i) an improper cure amount, and (ii) adequate assurance of future performance. The suggested timeframe is clearly inadequate. Calculations concerning open trades can be very difficult and time-consuming and more time is needed to properly calculate cure amounts. Also, five business days from the date of service may not be sufficient to determine whether the requirement of adequate assurance of future performance has been met. CALP submits that counterparties should be provided with at least ten business days notice to formulate an objection to an Assignment Notice. Only then will counterparties be assured a fair opportunity to protect their rights.

13. Fifth, the Assignment Procedures should not adversely impact counterparties' valid rights of termination and setoff under the Bankruptcy Code. The Assignment Procedures unfairly expedite the termination process thereby affecting counterparties' rights under the Bankruptcy Code to determine when to offset and terminate Derivative Contracts. At the very least, CALP and other counterparties' rights to terminate Derivative Contracts should not be abrogated unless and until an assignment has been finally consummated. The Assignment Procedures should make it clear that a counterparty which may receive an Assignment Notice (triggering the five business day objection period), should still have the right, prior to consummation of the assignment, to terminate its Derivative Contracts and related Master Agreements with the Debtors.

14. Sixth, the provisions of the Assignment Procedures that purport to cure all defaults (aside from the LBHI and LBSF bankruptcy filing defaults) improperly strip CALP from pursuing its rights arising from other rights to terminate.

5

15. Seventh, the Assignment Procedures should not interfere with CALP's and other counterparties' rights to object to a proposed assignment on any valid grounds including but not limited to a proposed assignee's failure to provide a separate unconditional guarantee from an affiliated third party or otherwise. As noted above, LBSF's obligations under the Agreement have been guaranteed by LBHI. CALP's position should be in no worse position should the Debtors seek to assign the agreement to an assignee.

16. Eighth, the Assignment Procedures state that "In any instance where a Derivative Contract is memorialized pursuant to a master agreement, the Debtors may assume and assign, pursuant to the Assignment Procedures, only all, but not fewer than all of the Derivative Contract transactions entered into pursuant to the master agreement." *See, Motion*, p. 12. The definition of "Derivative Contracts" in the Motion does not appear to directly include the underlying master agreement. Thus, this provision could suggest that the Debtors may only be required to assign the Derivative Contracts and not necessarily the master agreement. This provision should be amended to make it abundantly clear that to the extent that the Debtors seek to assign the Confirmations, that the Debtors must also be required to assign the Master Agreement to the same proposed assignee.

17. Ninth, the Assignment Procedures state that the Debtors will attempt to resolve each objection to a proposed assignment consensually but to the extent that an objection cannot be resolved, the Debtors may seek Court authorization of the proposed assignment. CALP does not object to the proposed goal of a consensual resolution of an objection to an Assignment Notice. However, the Assignment Procedures should be amended to specify a more definitive timeframe for resolution and also provide counterparties the right to seek a Court hearing to the extent that the Debtors are unnecessarily delaying the resolution of a particular objection.

6

18. In view of the foregoing and to avoid undue potential prejudice arising from the proposed Assignment Procedures which are violative and abrogative of CALP's contractual rights, CALP requests and demands that it be provided with an option and right of first refusal to acquire, through assignment, the Agreement on terms of any proposed bona fide assignee to enable it to manage its own counterparty risk and exposure.

19. Finally, although CALP has not yet terminated the Agreement, in order to preserve its rights if and when CALP does terminate, CALP has the following objections to the Termination Procedures. CALP submits that the Termination Procedures for terminated Derivative Contracts should be amended and clarified to (i) specify that the termination payments and expenses should be calculated in accordance with the Agreement, (ii) specify timeframes in which parties will submit information in support of their calculation of the appropriate termination payment due, and (iii) allow for Court intervention and an opportunity to be heard to the extent a settlement cannot be reached consensually within a specified timeframe. Further, the Debtors must clarify what they mean when they indicate that they "may" provide a release to counterparties in the event that the parties enter into a termination agreement. If the Agreement is terminated in accordance with the terms thereof or as a result of an order of this Court, all parties should be released.

## Joinder In Other Objections To Motion

20. CALP joins in other objections filed to the Motion to the extent not inconsistent with this Objection.

900200.00001/6689175v.1

## Reservation Of Rights

21.     CALP hereby reserves all of its rights to submit additional arguments in support of this Objection either prior to or at the hearing to consider the Motion and reserves all of its rights under the Agreement.

## Waiver of Memorandum of Law

22.     CALP requests a waiver of the requirement of a memorandum of law required under Local Bankruptcy Rule 9013-1(a).

WHEREFORE, CALP respectfully requests that this Court deny the Motion consistent with this Objection.

Dated: New York, New York
       November 26, 2008

>                               BLANK ROME LLP
>                               Attorneys for Capital Automotive L.P.
>
>
>                               By: /s/ Andrew B. Eckstein
>                                   Andrew B. Eckstein
>                                   Rocco A. Cavaliere
>                                   The Chrysler Building
>                                   405 Lexington Avenue
>                                   New York, New York 10174
>                                   (212) 885-5000
>
>                                   and
>
>                                   Karen Du Brul
>                                   One Logan Square
>                                   Philadelphia, Pennsylvania 19103
>                                   (215) 569-5500

900200.00001/6689175v.1