**Hearing Date and Time: December 3, 2008 at 10:00 a.m.**
**Objection Date and Time: November 28, 2008 at 4:00 p.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.* | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION OF THE TOBACCO SETTLEMENT FINANCING
CORPORATION TO THE DEBTORS' MOTION FOR AN ORDER
PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE
TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION
AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS.**

Tobacco Settlement Financing Corporation, a public body corporate and politic and an instrumentality of the State of New Jersey ("TSFC"), by its attorneys, submits this limited objection ("Objection") to the motion by Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (the "Debtors"), for entry of an order pursuant to sections 105 and 365 of the Bankruptcy Code to establish procedures for the settlement or assumption and assignment of prepetition Derivative Contracts (the "Motion"), and respectfully states:

**BACKGROUND**

**A.     Procedural History**

1.     On September 15, 2008, LBHI and LB 745 LLC each filed a voluntary petition for relief under chapter 11, title 11, United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). Thereafter, various subsidiaries and affiliates of LBHI filed for protection under chapter 11 of the Bankruptcy Code.

1

#1361949 v1
999999-00136

2.      On October 3, 2008, Lehman Brothers Special Financing, Inc. ("LBSF")[1] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. As with all of the affiliated debtors, LBSF has remained in the possession of its property and in control of its business as debtor-in-possession.

3.      On November 13, 2008, LBHI for itself and its affiliated debtors (collectively, the "Debtors") filed the Motion [Doc. No. 1498], which seeks, among other relief, Court approval of the Debtors'[2] right, in their discretion, to:

a)      enter into agreements respecting the termination of, and the resolution of termination payments that may be due to or from the Debtors under, "Derivatives Contracts" with counterparties to such agreements, whether located in the United States or abroad, including the compromise or settlement of issues relating to such agreements and providing a release, which ordinarily would require notice and a hearing, as required under Bankruptcy Rule 9019 and other applicable rules of the Court, see Motion, ¶19 at 12; and

b)      assume and assign expeditiously certain Derivatives Contracts that the Debtors believe may result in a net payment to the Debtors, determine the cure of all defaults, and limit the grounds upon which counterparties may object to the assignment of their Derivative Contracts, see Motion, ¶16 at 8; and

c)      employ certain terms and procedures proposed by the Debtors for exercising their rights in these matters that will be binding upon the counterparties to such agreements. See Motion, ¶19 at 9-12, and Exhibit A to Motion.

---

[1] LBSF's chapter 11 case was assigned Case No. 08-13888 (JMP). By order dated October 16, 2008, LBSF's case is being jointly administered with the case of LBHI and 14 other affiliates.

[2] The Motion does not identify which particular Debtor or Debtors is a party to the Derivatives Contracts.

4.       In particular, the terms and procedures with respect to assumption and assignment of the Derivatives Contracts, as set forth in the Motion, if approved exactly as proposed by the Debtors, would include their right to select an assignee for a particular agreement that is *not* a "Qualified Assignee," that is, does not have a Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or any equivalent thereof. Motion, ¶19.b at 9-10.

**B.    The Reserve Fund Agreements Between TSFC and LBSF[3]**

5.       In 2002 and 2003, TSFC issued Tobacco Settlement Asset-Backed Bonds, Series 2002 and Series 2003 (together, the "Prior Bonds"). In 2007, TSFC refunded the Prior Bonds with the issuance of its Tobacco Settlement Asset-Backed Bonds, Series 2007-1 (the "Series 2007 Bonds," and, together with the Prior Bonds, the "Bonds").

6.       In connection with the issuance of the three Series of Bonds, TSFC entered into a separate Reserve Fund Agreement with LBSF, specifically, the Reserve Fund Agreement dated August 28, 2002; the Reserve Fund Agreement dated March 7, 2003; and the Reserve Fund Agreement dated January 29, 2007 ("2007 Agreement," and collectively, the "Agreements").[4] LBHI is the guarantor of all payment obligations of LBSF under each of the Agreements. The Agreements have not been terminated.

7.       In relevant part, the Agreements contain substantially similar provisions. For example, pursuant to the Agreements, in return for payment of the Purchase Price upon

---

[3] The Reserve Fund Agreements and other documents related to the transactions between TSFC and LBSF are voluminous. The terms of the Agreements and related documents as between TSFC and LBSF are not in dispute. A complete copy of the Agreements will be made available at the hearing in this matter or can be provided upon written request.

[4] TSFC reserves all of its rights with respect to applicability of the Bankruptcy Code's Safe Harbor Provisions (as defined and described in paragraph 10, n.4 of the Motion) to the Agreements and any party to such Agreements.

3

delivery,[5] LBSF agreed to deliver, or cause to be delivered, to the indenture trustee for the Series 2007 Bonds (the "<u>Trustee</u>"), on specified deposit dates,[6] Qualified Securities selected by LBSF or a Qualified Dealer.

8. Section 10.2 of the Agreements provides that the Agreements are binding upon and inure to the benefit of the parties "and upon their respective *permitted* successors and *transferees*." Agreement, §10.2 at 30 (emphasis added). Thus, LBSF may transfer its interest under the Agreements provided certain conditions are satisfied, including that the rating of the assignee be at least "A-" and "A3" by Standard & Poors and Moody's, respectively. Agreement, §10.2 at 30.

9. Thus, LBSF could assign the Agreement, subject to the requirements of section 365(f)(2) of the Bankruptcy Code, without the consent of TSFC and the indenture trustee for the Bonds, only if the assignee has a satisfactory rating as set forth above.

## **LIMITED OBJECTION**

10. The Motion states that "[t]he Assumption and Assignment Procedures. . .allow each Counterparty to receive the benefit of its bargain. Either (i) the assignee or replacement credit support provider will have an investment grade credit rating, or (ii) the Counterparty will have the ability to object to the identity of the assignee and any replacement credit support provider and require the Debtors to demonstrate to the Court that the Counterparty has adequate assurance of the assignee's future performance. The result of any assignment will be to place the Counterparty in the same position that it was in when it entered into the Derivative Contract." Motion, ¶24 at 15-16.

---

[5] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the 2007 Agreement.

[6] The next deposit date under two of the three separate Agreements is November 28, 2008.

11. The Assumption and Assignment Procedures, as set forth in the Motion, would not provide TSFC with the benefit of its bargain. TSFC bargained for the right to require that any assignee of LBSF's interests under the Agreements must have a specified rating. The Assumption and Assignment Procedures would permit LBSF to assign its interests to a *non-Qualified Assignee*. Motion, ¶19.b at 9-10, and Exhibit A to Motion. LBSF cannot alter that contractual requirement under applicable law. See, e.g., In re McLean Industries, Inc., 132 B.R. 247, 265 (Bankr. S.D.N.Y. 1991) ("[o]nce an executory contract is assumed, it is said to be assumed cum onere -- with all of its benefits and burdens"), citing NLRB v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984); In re Italian Cook Oil Corp., 190 F.2d 994, 997 (3d Cir. 1951).

12. The Motion states that the Debtors intend to provide subsequent notice to Counterparties affected by the Assumption and Assignment Procedures. See Motion, ¶23 at 15 ("[e]ach Counterparty will receive advance notice that its Derivative Contract is subject to assumption and assignment by the Debtors, as well as the proposed Cure Amount, if any, and the proposed assignee (or a statement that any assignee will be a Qualified Assignee) for the applicable Derivative Contract. Each Counterparty will have the ability to object to the assignment").

13. TSFC objects to the Assumption and Assignment Procedures to the extent that they adversely affect TSFC's rights, as follows: First, the powerful right of a trustee or debtor-in-possession to assume and assign an executory contract is not unlimited and is prohibited if the non-debtor party would not be required to accept performance from a third-party assignee. 11 U.S.C. § 365(c)(1).[7] In this case, applicable state law excuses TSFC from accepting

---

[7] Section 365(c)(1) provides, in relevant part:

> The trustee may not assume or assign an executory contract. . .of
> the debtor, whether or not such contract. . .prohibits or restricts assignment

5

performance from an assignee that does not comply with various requirements under New Jersey law.  See, e.g., N.J.S.A. 52:18B-1 et seq. (L. 2002, c. 32); N.J.S.A. 19:44A-20.13 (L. 2005, c. 271, section 3).  Accordingly, the Reserve Fund Agreements are not capable of assumption and assignment under section 365(c)(1) of the Bankruptcy Code unless TSFC consents.  Second, even if the Court were to find that section 365(c)(1) of the Bankruptcy Code, which TSFC believes squarely applies, did not bar the Debtors' right to assume and assign the Agreements absent TSFC's consent, any assignee stepping into LBSF's shoes would be subject to all of the state laws to which LBSF and LBHI are subject.  As discussed above, the Agreements can only be assumed with all of their benefits and burdens.  See, In re McLean Industries, Inc., 132 B.R. at 265.  To provide adequate assurance of future performance under the Agreements, therefore, TSFC would have to first determine whether a proposed assignee was in compliance.  That compliance and approval process takes time.  It would be a waste of the Debtors' and TSFC's resources for the Debtors to pursue an assignee without first consulting with TSFC.  Finally, there is no indication when the Debtors will notify the affected Counterparties of a proposed assumption and assignment.  TSFC has a fiduciary obligation to the holders of the Series 2007 Bonds under the Agreements requiring the deposit of Qualified Securities on November 28, 2008.

---

of rights or delegation of duties, if--

    (A)    applicable law excuses a party, other than the debtor, to such contract. . .from accepting performance from or rendering performance to an entity other than the debtor or debtor in possession, whether or not such contract. . .prohibits or restricts assignment of rights or delegation of duties; and

    (B)    such party does not consent to such assumption or assignment. . . .

11 U.S.C. § 365(c)(1).

14. For the reasons expressed above, TSFC objects to the Assumption and Assignment Procedures to the extent the Debtors believe they permit them to identify an assignee that i) does not satisfy the rating requirements under Section 10.2 of the Agreements, and ii) is not pre-approved by TSFC as in compliance with all applicable state laws, and iii) to which TSFC does not consent. TSFC does not object to the Termination and Settlement Procedures proposed by the Motion. See Motion, ¶19 at 12.

**WHEREFORE**, TSFC respectfully requests that the Court deny the Motion with respect to the Assumption and Assignment Procedures in their current form and grant such other relief as is just and equitable.

Dated: November 26, 2008

Respectfully submitted,

**GIBBONS PC**

/s/ Geraldine E. Ponto
Geraldine E. Ponto
One Pennsylvania Plaza, 37th Floor
250 West 34th Street
New York, New York 10119-3701
Telephone: (212) 613-2000
Facsimile: (212-290-2018
Email: gponto@gibbonslaw.com

-and-

One Gateway Center
Newark, New Jersey
Telephone: (973) 596-4507
Facsimile: (973) 596-0545

Attorneys for Tobacco Settlement Financing Corporation

#1361949 v1
999999-00136