| | |
|---|---|
| MORITT HOCK HAMROFF & HOROWITZ LLP<br>400 Garden City Plaza<br>Garden City, NY  11530<br>(516) 873-2000<br>Leslie Ann Berkoff<br>lberkoff@moritthock.com<br>Theresa A. Driscoll<br>tdriscoll@moritthock.com | Hearing Date:  December 3, 2008 at 10:00 a.m.<br>Obj. Deadline:  November 28, 2008 at 4:00 p.m. |

Co-Counsel to The Hotchkiss School

WIGGIN AND DANA LLP
185 Asylum Street
Hartford, CT 06103-3402
(860) 297-3715
Sharyn B. Zuch
szuch@wiggin.com
(*Pro Hac Vice* Application Pending)

Co-Counsel to The Hotchkiss School

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                              :
In re:                                                        :   Chapter 11
                                                              :
LEHMAN BROTHERS HOLDINGS, et al.,   :   Case No. 08-13555 (JPM)
                                                              :
                                    Debtors.    :   (Jointly Administered)
-------------------------------------------------------------x

**OBJECTION OF THE HOTCHKISS SCHOOL TO DEBTORS'
MOTION FOR ORDER PURSUANT TO SECTIONS 105 AND 365
OF THE BANKRUPTCY CODE TO ESTABLISH PROCEDURES
FOR THE SETTLEMENT OR ASSUMPTION AND ASSIGNMENT
<u>OF PREPETITION DERIVATIVE CONTRACTS</u>**

The Hotchkiss School ("<u>Hotchkiss</u>"), by and through its undersigned counsel, hereby

submits this objection (the "<u>Objection</u>") to the Debtors' Motion for Order Pursuant to Sections

105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption

and Assignment of Prepetition Derivative Contracts [Docket No. 1498] (the "Motion").[1] In support of its Objection, Hotchkiss respectfully states as follows:

## PRELIMINARY STATEMENT

1.  Hotchkiss objects to the Motion inasmuch as the Debtors are seeking an unprecedented order from this Court to rewrite both the Bankruptcy Code and the financial contract to which the Debtors are a party. The Motion, if approved, would unfairly rob counterparties to the Derivatives Contracts of the benefit of the bargain they otherwise are entitled to based on the terms of the financial contracts. These contract rights are expressly preserved in the "safe harbor" provisions of the Bankruptcy Code which Congress enacted for the express purpose of protecting counterparties such as Hotchkiss.[2] Accordingly, and as more fully set for the below, the Motion should be denied.

## RELEVANT BACKGROUND

2.  Hotchkiss is an independent boarding school located in Lakeville, Connecticut.

3.  Hotchkiss and Lehman Brothers Financial Products Inc. ("Lehman Financial"), a debtor in these jointly administered chapter 11 cases, are parties to that certain International Swaps and Derivatives Association ("ISDA") Master Agreement dated as of December 14, 2001 and related Schedule, Confirmation, Exhibits and Annexes (collectively, the "Hotchkiss Swap"). (A copy of the Hotchkiss Swap is attached hereto as *Exhibit A*).

4.  Lehman Financial filed a voluntary petition under chapter 11 on October 5, 2008 (the "Lehman Financial Bankruptcy"). The Lehman Financial Bankruptcy constitutes an Event of Default under the Hotchkiss Swap.

---

[1] Capitalized terms used but not defined herein shall have the meanings given to such terms in the Motion.

[2] The "safe harbor" provisions can be found in Sections 362(b)(6), (7), (17) and 555, 556, 559, 560 and 561 of the Bankruptcy Code (collectively, the "Safe Harbor Provisions").

2

## **OBJECTION**

**A.    The Motion Seeks to Eliminate the Safe Harbor Provisions Contained in the Bankruptcy Code.**

5. The procedures proposed by the Motion seek to give the Debtors total control over the disposition of all Derivatives Contracts to which they are a party notwithstanding the contractual rights of their counterparties. By giving the Debtors the right to unilaterally assign such contracts to third parties on shortened notice, without a hearing and court approval of each specific assignment, the Debtors seek to deprive Counterparties of the ability to replace the contracts with creditworthy counterparties of their own choosing and to terminate in accordance with the terms of the contracts.

6. The Hotchkiss Swap is a "swap agreement" as that term is defined in Section 101(53B) of the Bankruptcy Code. Hotchkiss is a "swap participant" as that term is defined in Section 101(53C) of the Bankruptcy Code. Section 362(b)(17) of the Bankruptcy Code provides that "the exercise by a swap participant . . . of any contractual right . . . under any security agreement or arrangement or other credit enhancement forming part of or related to any swap agreement, or of any contractual right . . . to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such agreements, including any master agreement for such agreements" shall not be stayed by the commencement of a chapter 11 case. 11 U.S.C. § 362(b)(17).

7. Further, Section 560 of the Bankruptcy Code provides that "[t]he exercise of any contractual right of any swap participant or financial participant to cause the liquidation, termination, or acceleration of one or more swap agreements because of a condition of the kind specified in section 365(e)(1) of this title . . . . .shall not be stayed, avoided or otherwise limited

3

by operation of any provision of this title or by order of a court . . . in any proceeding under this title." 11 U.S.C. § 560.

8. The express language of section 560 gives a non-debtor counterparty an unfettered right to terminate a swap agreement upon the bankruptcy filing of its counterparty. Congress did not impose any timeframe or other limitations on non-debtor counterparties to exercise their termination rights under derivatives contracts. Indeed, no such limitations exist. *See*, *e.g.*, *In re Mirant Corp.*, 314 B.R. B.R. 347, 352 (Bankr. N.D. Tex. 2004) ("Congress, in enacting Section 560 and related provisions, did not intend that its will would be frustrated by the courts creating barriers to the exercise by a debtor's contract parties of the rights so given to them."). Indeed, the Safe Harbor Provisions and the enactment of Section 560 of the Bankruptcy Code reflect a Congressional determination that swap agreement termination rights should be respected in order to "ensure that the swap and forward contract financial markets are not destabilized by uncertainties regarding the treatment of their financial instruments under the Bankruptcy Code." H.R. Rep. 101-484, at 1 (1990), *reprinted in* 1990 U.S.C.C.A.N. 223.

9. Through the Motion, the Debtors seek to impermissibly and inequitably impose restrictions upon Counterparties' contractual and Code-created rights. This result would turn the Safe Harbor Provisions on their head and should not be countenanced.

**B.     The Procedures Proposed in the Motion Will Rob Counterparties of
         the Benefit of Their Bargain.**

10. The assumption and assignment procedures set forth in the Motion, if approved, would enable the Debtors to assign the Derivatives Contracts to third parties with weaker credit ratings than those required by the Hotchkiss Swap. If this Court were to approve the proposed procedures, it would be rewriting the Hotchkiss Swap. The Hotchkiss Swap provides that the "Threshold Ratings" **shall be** "A1" in the case of Moody's, and "A+ in the case of Standard &

Poor's. *See* Hotchkiss Swap, Schedule at Part 1. If Lehman Financial's ratings are withdrawn, suspended or reduced below these thresholds, this constitutes an Additional Termination Event. If this happens, the Hotchkiss Swap has a proviso which permits Lehman Financial to:

> either (a) deliver the collateral to Hotchkiss such that the Credit Support Amount is equivalent to "Aaa" for Moody's or "AAA" for Standard & Poor's or (b) assign its rights and obligations under the Hotchkiss Swap to a Reference Marketmaker that has at least a "Aa3" in the case of Moody's and "AA-" in the case of Standard & Poor's.

*See* Hotchkiss Derivatives Contract, Part 1, Section (g) of the Schedule. The Hotchkiss Swap does not permit Lehman Financial to assign its right and obligations to a party with lower credit ratings.

11.    Notwithstanding this language in the Hotchkiss Swap, the proposed procedures would authorize the Debtors to assign the Hotchkiss Swap to a third party with a much lower credit rating. *See* Motion, ¶ 19(b) ("[e]ach Assignment Notice shall [include] . . . either a statement that any assignee or its credit support provider shall have a Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or any equivalent thereof (a "Qualified Assignee"), ***or the identity of any proposed assignee and its credit support provider, if any, if neither is a Qualified Assignee***") (emphasis added). If the Court approves these procedures, the Debtors could take the benefit of the bargain away from Hotchkiss through an assignment to a party with a weaker credit rating than that which it is entitled to under the Hotchkiss Swap. This would expose Hotchkiss to additional risk without any additional compensation.

12.    Notably, none of the (3) orders cited by the Debtors in support of the Motion (*i.e.* Enron, Mirant and NRG) addressed or approved the assignment of derivatives contracts. In fact, the express language contained in the Enron and NRG orders track the Bankruptcy Code and

5

require that "the Protocol shall not alter, modify or limit in any way the terms of the [Trading Contracts or Safe Harbor Agreements]." *See In re NRG Energy, Inc.*, *et al.*, (Case No. 03-13024) (Bankr. S.D.N.Y. 2003) [Docket No. 414]; *In re Enron Corp.*, *et al.*, (Case No. 01-16034) (AJG) (Bankr. S.D.N.Y. 2001) [Docket No. 4129]. Thus, by the Motion, the Debtors are not only seeking an Order in contravention of the express language of the Bankruptcy Code, but they are also seeking relief that appears to be unprecedented.

13. Further, the proposed procedures are intended to give the Debtors "flexibility to agree" on the amounts owed to Counterparties in respect of termination. However, the Hotchkiss Swap specifies the method of calculating any termination payment. Rather than deferring to the terms of the governing Derivatives Contracts to calculate the termination amounts, the Debtors – once again – seek to rewrite their financial contracts to rob their counterparties of the benefit of their bargain so that the Debtors may reap any available benefit.

### C. The Proposed Procedures Do Not Afford Counterparties Adequate Notice and an Opportunity to Respond and Improperly Shift the Burdens to the Counterparties.

14. The proposed procedures would provide insufficient time for counterparties such as Hotchkiss to adequately respond to assumption and assignment notices. As the Debtors note, in any given notice there may be as many as 100 Counterparties named. To require the Counterparties to review the notice of proposed assumption and assignment and respond thereto in only five (5) business days does not give the Counterparties reasonable time to respond. Further, the proposed notice does not provide the Counterparties with meaningful information concerning the proposed assignees. While the identity of the proposed assignee and its credit rating are of paramount importance to Counterparties, they should also be given a reasonable opportunity to obtain additional information regarding the proposed assignee from the Debtors and to conduct their own due diligence with respect to the proposed assignment. In any event,

6

five (5) business days is not enough time for Counterparties to make a reasoned determination and prepare, file and serve an objection if the proposed replacement party is unacceptable. Accordingly, at a minimum, the procedures proposed should be modified to afford Counterparties at least (15) business days to respond to an assignment notice and should also require the Debtors to furnish additional information concerning the proposed assignee, such as evidence of financial wherewithal to perform its obligations under the assigned derivative contract.

## **RESERVATION OF RIGHTS**

15.     Hotchkiss reserves the right (a) to amend, supplement, or otherwise modify this Objection and all attachments and exhibits hereto as necessary or proper; (b) to call all necessary or proper witnesses to testify in support of this Objection; and (c) to raise such other and further objections to any proposed assumption, assumption and assignment, and/or any cure amounts associated with any proposed assumption or assumption and assignment of any contracts involving Hotchkiss.

## **CONCLUSION**

WHEREFORE, Hotchkiss respectfully requests that the Court enter an Order denying the relief sought in the Motion and granting such other and further relief as may be appropriate and just.

Dated: November 26, 2008					Respectfully submitted,

											MORITT HOCK HAMROFF &
											HOROWITZ LLP


											By:  /s/ Leslie A. Berkoff
													Leslie A. Berkoff

											400 Garden City Plaza
											Garden City, New York  11530
											(516) 873-2000
											lberkoff@moritthock.com

											Co-Counsel to The Hotchkiss School

											-and-


											WIGGIN AND DANA LLP
											185 Asylum Street
											Hartford, CT 06103-3402
											(860) 297-3715
											Sharyn B. Zuch
											szuch@wiggin.com

											Co-Counsel to The Hotchkiss School

											(*Pro Hac Vice* Application Pending)


F:\Hotchkiss School\Lehman Bros\Docs\Objection v5f.doc