Hearing Date and Time: Dec. 3, 2008 at 10:00 a.m.
Objection Deadline: Nov. 28, 2008 at 4:00 p.m.

Jeff J. Friedman
Merritt A. Pardini
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

*Attorneys for The City
Of Milwaukee, Wisconsin.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x
                                                                         :
In re:                                                                   :   Chapter 11
                                                                         :
LEHMAN BROTHERS HOLDINGS, INC., et al.,                                  :   Case No. 08-13555 (JMP)
                                                                         :
                        Debtors.                                         :
                                                                         :
------------------------------------------------------------------------ x

**OBJECTION OF THE CITY OF MILWAUKEE, WISCONSIN TO DEBTORS'
MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE
BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR
ASSUMPTION AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS**

The City of Milwaukee, Wisconsin ("Milwaukee"), by and through its undersigned counsel, hereby objects to the Debtors' Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts (the "Motion")[1], and respectfully represents as follows:

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1.      Milwaukee is a counterparty to an interest rate swap agreement with Lehman Brothers Special Finance Inc. ("LBSF") that matures in 2043 unless terminated earlier by Milwaukee. The swap is potentially subject to assumption and assignment by LBSF.

2.      Pursuant to the Motion, the Debtors seek to establish a procedure pursuant to which Derivative Contracts would be assumed and assigned to third parties. The Motion also seeks to establish a procedure for the termination and settlement of Derivative Contracts. While it appears that the proposed Termination and Settlement Procedures are intended to be entirely consensual, it should be made clear that the existence of such procedures is not exclusive and does not preclude a counterparty from taking other actions in connection with disputes concerning termination and settlement of Derivative Contracts, including, if necessary, commencing an adversary proceeding in this Court to determine the rights and obligations of the parties. With respect to the proposed Assumption and Assignment Procedures, Milwaukee objects for the following reasons:

## Identity of the Assignee

3.      The Assumption and Assignment Procedures do not require the Debtors to identify the proposed assignee of a Derivative Contract so long as the proposed assignee, or its credit support provider, is a "Qualified Assignee" – meaning an entity with an S&P or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or any equivalent thereof. See Motion at ¶ 19 b.

4. Milwaukee respectfully submits that there is more to adequate assurance of future performance than credit ratings.[2] For example, because the Debtors are not required to provide the identity of a Qualified Assignee, a counterparty could find that the assignee – while having a credit rating that fits within certain parameters – is a foreign entity outside the jurisdictional reach of the U.S. Courts.[3] While this was not an issue with respect to LBSF, the presence of a new foreign counterparty outside the jurisdictional reach of the U.S. Courts quickly changes the risk calculus of any executory contract and other forms of adequate assurance of future performance may be appropriate. Similarly problematic is the idea that a Qualified Assignee need only have an "equivalent" of the S&P, Fitch or Moody's ratings described above. Who is to decide what an "equivalent" rating is?

5. A motion to assume and assign an executory contract under section 365 of the Bankruptcy Code routinely identifies the assignee and there is no compelling reason offered by the Debtors for not doing so here. If the Qualified Assignee is truly as qualified as the Debtors believe, it is unlikely that counterparties will go to the time and expense of objecting to such an assignee. In addition to being required to identify any assignee, the Debtors should be required to identify the name and address of any credit support provider, including, most importantly, the nature of the proposed credit support (e.g., an unconditional guarantee, posting of collateral) and provide the proposed documentation for such credit support. Finally, it may facilitate the process if the Debtors are required to provide appropriate contact information (name of a responsible

---

[2] Notably, Debtor Lehman Brothers Holdings, Inc. had an S&P rating of "A" on September 9, 2008, a mere six days before it filed for relief under chapter 11. See "S&P Says May Cut Lehman's Rating After Shares Fall" Reuters.com, September 9, 2008.

[3] Even though the underlying Derivative Contract may require submission of the foreign assignee to jurisdiction in the United States, it is possible that any judgment obtained against the assignee might have to be enforced in a foreign country.

person, telephone number, etc.) for the proposed assignee and any credit support provider so that the counterparty can contact them and possibly allay any concerns directly.

## Unreasonably Short Objection Deadline

6.      The Assumption and Assignment Procedures require that an objection to the assignment of a Derivative Contract must be received by the Debtors' counsel no later than five (5) business days after the date of service of the Assignment Notice.

7.      Milwaukee respectfully submits that five business days is simply not enough time to allow some counterparties – particularly a large city like Milwaukee which may have to consult with several individuals for the requisite authority – to evaluate the Assignment Notice, perform the calculations necessary to verify (or dispute) the cure amount asserted in the Assignment Notice, and, if necessary, prepare and serve an objection. Milwaukee respectfully submits that a more appropriate objection deadline is the 14-day requirement applicable to the service of motions under this Court's Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures, dated September 22, 2008. While Milwaukee is appreciative of the Debtors' desire to avoid needless market risk, these Derivative Contracts have been outstanding for over two months without any action on the part of the Debtors and have been subject to market risk during that time. Yet, now the Debtors argue that they must be able to act and get responses from counterparties within a week's time. Additional time for counterparties to react may be beneficial to the process as it may reduce the number of objections filed because of needless time pressure and the desire by the counterparty to err on the side of protecting its rights.

**Payment of Cure Amounts**

8.      Pursuant to the Assumption and Assignment Procedures, if there are movements in the market or an objection is filed to the adequacy of the assignee which could take weeks or more to resolve depending on the Court's calendar and the nature of the dispute, it does not appear that the Debtors have provided for recalculating the cure amount so as to fully cure as of the date that an assignment actually closes.  Moreover, the mechanism proposed where there is a disputed cure amount for the disputed portion to be escrowed seems to imply that the interest recoverable on the disputed cure amount, if the dispute is ultimately decided in favor of the counterparty, is, at most, the interest earned on such amount while in the escrow account rather than the contract rate of interest the Debtor should be required to pay.

9.      In short, the Debtors should be required to cure monetary obligations in accordance with the terms of the Derivative Contract and should not be permitted to avoid their contractual obligations through a set of procedures that alters that fundamental obligation.  If the market moves against the Debtors prior to the assignment closing, the Debtors' cure obligation cannot remain fixed as of the date the Debtors happened to serve notice of their intent to assume or assign the Derivative Contract.

**Selection of Highest or Best Bid**

10.     The Assumption and Assignment Procedures state that, unless the Debtors solicit bids from at least four potential assignees, the Debtors will request the consent of the Committee to assume and assign a Derivative Contract.  See Motion at ¶ 19 h.  Milwaukee understands the Debtors' obligation to obtain the best possible price in connection with the assumption and assignment of a Derivative Contract.  It is also possible, if not probable, that the best price may be available from the counterparty itself in order to be relieved of its obligations with respect to a

contract that is presumably "in the money" for the Debtors. Accordingly, as part of their efforts to find a purchaser of the Derivative Contracts, the Debtors should be required to contact the counterparty in order to determine if that counterparty is willing to buy itself out of the Derivative Contract for a price better than the one obtained by the Debtors from third parties.

### Incorporation of Other Objections; Reservation of Rights

11. Milwaukee incorporates herein by reference the objections of other interested parties in opposition to the Motion to the extent not inconsistent herewith. Additionally, Milwaukee reserves all its rights, claims and defenses, including, without limitation, its right to terminate the interest rate swap agreement.

Dated: New York, New York
November 26, 2008

KATTEN MUCHIN ROSENMAN LLP
*Attorneys for The City of Milwaukee, Wisconsin*

By:  */s/ Jeff J. Friedman*
Jeff J. Friedman
Merritt A. Pardini
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800