Lindsee P. Granfield
Lisa M. Schweitzer
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for Barclays Capital Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------- X

In re                                                                    :

LEHMAN BROTHERS HOLDINGS INC., et al.,              :

Debtors.                             :

------------------------------------------------------------------------- X

Chapter 11 Case No.

08-13555 (JMP)

(Jointly Administered)

**LIMITED OBJECTION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO
SECTION 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH
PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION
AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS**

Barclays Capital Inc. ("BarCap") by and through its undersigned counsel, hereby

submits this limited objection (the "Objection") to the Debtors' Motion for an Order Pursuant to

Section 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or

Assumption and Assignment of Prepetition Derivative Contract, dated November 14, 2008 (the

"Motion") (D.I. 1498).  In support of its Objection, BarCap states as follows:

**BACKGROUND**

1.      On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI")

commenced a voluntary case under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"); LB 745 LLC soon commenced its own voluntary case under chapter 11 of

the Bankruptcy Code.  The cases of LBHI and LB 745 LLC are jointly administered with other

affiliated chapter 11 debtors (collectively, "Lehman" or the "Debtors").  On September 19, 2008,

a proceeding was also commenced under the Securities Investor Protection Act of 1970 ("SIPA")

with respect to Lehman Brothers Inc. ("LBI"), and James W. Giddens was appointed as Trustee

under the SIPA to administer LBI's estate.

2.      On September 19, 2008, this Court approved the sale of certain assets

LBHI, LBI and LB 745 LLC to BarCap pursuant to that certain Asset Purchase Agreement,

dated as of September 16, 2008, as amended (the "Purchase Agreement").[1]  The purchased assets

include, among other things, "exchange trade derivatives."  BarCap also has entered into other

derivative contracts with Lehman from time to time, some or all of which have been terminated

as a result of the bankruptcy filing.

3.      On November 13, 2008, the Debtors filed the instant Motion seeking an

order, attached to the Motion as Exhibit A (the "Proposed Order"), approving (i) procedures for

the Debtors' assumption and assignment of Derivative Contracts (as defined in the Motion)[2]

entered into with various Counterparties and (ii) procedures  the settlement of claims arising

from the termination of Derivative Contracts.

## LIMITED OBJECTION

4.      BarCap takes no position as to the Debtors' exercise of their business

judgment in proposing procedures for the assumption and assignment of derivative contracts.

However, to the extent such procedures are approved, BarCap has concerns with respect to

certain aspects of the proposed procedures, as follows:

---

[1]      See Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets (D.I. 60).

- First, the Assumption and Assignment Procedures should not apply to contracts (i) that have been validly terminated pursuant to the terms of the applicable derivative contract by the applicable Counterparties, (ii) that are not executory contracts, or (iii) that have been transferred to BarCap pursuant to the terms of the Purchase Agreement, including without limitation exchange traded derivatives.

- Second, the Proposed Order should be modified to the effect that neither the assignee nor its credit support propvider shall be considered a Qualified Assignee if assignment of the Derivative Contract to such assignee would trigger an event of default, termination event or similar event under transactions related to such Derivative Contract.

- Third, assumption and assignment of Derivatives Contracts should be denied if defaults or early termination events under the relevant Derivative Contracts cannot be cured (other than defaults/early termination events not required to be cured under the Bankruptcy Code).

- Fourth, the Proposed Order should not alter the rights of any parties to "forward contracts," "securities contracts," "repurchase agreements," "commodity contracts," "swap agreements," "master netting agreements" (each as defined in the Bankruptcy Code) from exercising their rights pursuant to the "financial contract safe harbor" provisions of the Bankruptcy Code.

5.      A revised form of order that reflects modifications that should be made to

the proposed order to account for the above points and certain additional changes and

clarifications sought by BarCap is attached hereto as Exhibit A.

---

[2]      Capitalized terms not otherwise defined shall have the meanings ascribed to them in the Motion.

## REQUEST FOR RELIEF

WHEREFORE, for the reasons set forth herein, BarCap respectfully requests that

this Court (a) modify the Proposed Order as requested and (b) grant such other and further relief

as this Court may deem just or proper.

Dated: New York, New York
         November 26, 2008

                              Respectfully submitted,

                              CLEARY GOTTLIEB STEEN & HAMILTON LLP


                              By:   /s/ Lisa M. Schweitzer

                              Lindsee P. Granfield
                              Lisa M. Schweitzer
                              One Liberty Plaza
                              New York, New York 10006
                              (212) 225-2000

                              *Attorneys for Barclays Capital Inc.*

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

**In re**                                                                 :

**LEHMAN BROTHERS HOLDINGS INC., et al.,**       :

**Debtors.**

------------------------------------------------------X

**Chapter 11 Case No.**

**: 08-13555 (JMP)**

**(Jointly Administered)**

### ORDER PURSUANT TO SECTIONS 105 AND 365
### OF THE BANKRUPTCY CODE TO ESTABLISH
### PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION
### AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS

Upon the motion, dated November 13, 2008 (the "Motion"), of Lehman Brothers

Holdings Inc.  ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-

debtor affiliates, "Lehman"), pursuant to sections 105 and 365 of the Bankruptcy Code (the

"Bankruptcy Code") and Rules 6006 and 9019 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") for entry of an order establishing procedures for the assumption and

assignment (the "Assumption and Assignment Procedures") of derivative contracts (the

"Derivative Contracts")[1]

 the Debtors entered into with various counterparties (the "Counterparties") and the settlement of

claims arising from the termination of Derivative Contracts (the "Termination and Settlement

Procedures" and together with the Assumption and Assignment Procedures, the "Procedures"),

all as more fully described in the Motion; and the Court having jurisdiction to consider the

---

[1] **For the avoidance of doubt, Derivative Contracts shall not include: (i) contracts that have been validly
terminated pursuant to the terms of the applicable derivative contract by the applicable Counterparty; (ii)
contracts that are not executory contracts; or (iii) any contracts, including without limitation, exchange
traded derivatives transferred to Barclays Capital Inc. pursuant to the terms of that certain Asset Purchase
Agreement dated September 16, 2008 (as amended, supplemented, modified or clarified) among Lehman
Brothers Holdings Inc., Lehman Brothers Inc., LB 745 LLC, and Barclays Capital Inc.**

**1**

Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the

Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York

Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the Motion having been provided in accordance with the

procedures set forth in the order entered September 22, 2008 governing case management and

administrative procedures [Docket No. 285] to (i) the United States Trustee for the Southern

District of New York; (ii) the attorneys for the Official Creditors' Committee (the "Committee");

(iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York (the "U.S. Trustee"); and (vi) all

Counterparties (via mail, fax, or email) in the Debtors' records to the extent that the

Counterparties' last known mail address, fax number, or email address is available to the

Debtors; and (vii) all parties who have requested notice in these chapter 11 cases, and it

appearing that no other or further notice need be provided; and a hearing (the "Hearing") having

been held to consider the relief requested in the Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their estates

and creditors, and all parties in interest and that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and after due deliberation and sufficient

cause appearing therefor, it is

ORDERED that the Motion is granted **as modified herein**; and it is further

2

**2**

ORDERED that the following Assumption and Assignment Procedures for the

assumption and assignment of Derivative Contracts pursuant to sections 105 and 365 of the

Bankruptcy Code are hereby approved and established in the Debtors' chapter 11 cases **as set**

**forth herein**:

<u>Assumption and Assignment Procedures</u>

a.  For any Derivative Contract to be assumed and assigned pursuant to these Assumption and Assignment Procedures, and without the prior consent of the Counterparty, the Debtors shall, at least five (5) business days (or such shorter period as may be agreed by the Counterparty) before such assumption and assignment, serve a notice (the "Assignment Notice") by **(i)** overnight mail delivery service~~,~~ **or** fax~~, or~~ **and (ii)** email (where available) on the Counterparty under each applicable Derivative Contract (and its attorney, if known) at the last known mail address, fax number, or email address available to the Debtors.

b.  Each Assignment Notice shall set forth the following information: (i) the names and addresses of the Counterparties, (ii) identification of the Derivative Contracts, (iii) either a statement that any assignee or its credit support provider shall have a Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or any equivalent thereof (a "Qualified Assignee"), or the identity of any proposed assignee and its credit support provider, if any, if neither is a Qualified Assignee, and (iv) any amounts proposed by the Debtors to be paid to cure existing defaults ("Cure Amounts").  All Assignment Notices will be accompanied by a copy of the Order granting this Motion.  **Notwithstanding anything to the contrary in this Order, neither the assignee nor its credit support provider shall be considered a Qualified Assignee if assignment of the Derivative Contract to such assignee would trigger an event of default, termination event or similar event under transactions related to such Derivative Contract.**

c.  Any Counterparty will be deemed to have received adequate assurance of future performance as required by section 365 of the Bankruptcy Code, notwithstanding any right of a Counterparty to consent to any assignment or any requirement in a Derivative Contract regarding the identity of assignees, if either (i) an assignee or its credit support provider is a Qualified Assignee, or (ii) the Debtors, after payment of any Cure Amounts, would no longer have any payment or delivery obligations

~~3~~

**3**

under the Derivative Contract (other than upon exercise of an option exercisable in the Debtors'/assignee's discretion).

d.   With respect to Derivative Contracts that may require the return of posted collateral as part of a Cure Amount, the Debtors will either return such collateral or, if such collateral is no longer in the Debtors' possession, the Debtors will pay an amount equal to the value of such collateral as of the business day prior to service of the Assignment Notice based upon independent third-party pricing services, which payment will be considered in full satisfaction of the posted collateral. The Debtors' proposed manner of returning any such collateral, including any amount proposed to be paid for collateral no longer in the Debtors' possession, shall be included in the Assignment Notice as a Cure Amount.

e.   To the extent that any Counterparty wishes to object on the grounds of (i) the proposed Cure Amount; (ii) the need to cure a default or early termination event, including, without limitation, any default or early termination event with respect to the Debtors and each of their respective affiliates, successors and assigns (a "Default") – other than a Default relating to the commencement of a case under the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the Debtors, which Defaults need not be cured prior to assignment; or (iii) the adequate assurance of future performance under the applicable Derivative Contract if neither the assignee nor its replacement credit support provider (if any) is a Qualified Assignee, then such Counterparty must serve a written objection, so that such objection is actually received no later than five (5) business days after the date of service of the Assignment Notice, on the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Robert J. Lemons) and Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, New York 10178 (Attn: Steven J. Reisman and L.P. Harrison 3rd). Any such objection must specify the grounds for such objection, including stating the Counterparty's alleged Cure Amount (including, on a transaction by transaction basis, calculations and detail of specific charges and dates, and any other amounts receivable or payable supporting such alleged Cure Amount, and in any event containing no less detail than the calculation of the Cure Amount provided by the Debtors) if the Counterparty disagrees with the Debtors' proposed Cure Amount and any other defaults or termination events **(to the extent such events may be cured under the relevant Derivative Contracts)** the Counterparty alleges must be cured to effect assignment of the Derivative Contract.

f.   To the extent that any Counterparty does not timely serve an objection as set forth above, such Counterparty will be deemed (i) to have consented to

4

**4**

such Cure Amounts, if any, and to the assumption and assignment of the Derivative Contract; (ii) to have agreed that the assignee has provided adequate assurance of future performance within the meaning of Bankruptcy Code section 365(b)(1)(C); (iii) to have agreed that all Defaults under the Contracts arising or continuing prior to the assignment have been cured as a result or precondition of the assignment, such that the assignee or the Debtors shall have no liability or obligation with respect to any Default occurring or continuing prior to the assignment, and from and after the date of the assignment the Derivative Contract shall remain in full force and effect for the benefit of the assignee and the Counterparty in accordance with its terms; (iv) to have waived any right to terminate the Derivative Contract or designate an early termination date under the applicable Derivative Contract as a result of any Default that occurred and/or was continuing prior to the assignment date; and (v) to have agreed that the terms of this Order shall apply to the assignment.

g.    If the Debtors are unable to consensually resolve any timely served objection, the Debtors may (i) seek authorization of the Court to consummate the proposed assignment **after a hearing upon at least 10 days' prior notice to the affected Counterparty**, and/or (ii) if the dispute relates solely to the amount of the Cure Amount, at the time of the assignment, pay to the Counterparty any undisputed portion of the proposed Cure Amount and place any disputed portion into a segregated interest-bearing account such that, upon any resolution by the Court of the Cure Amount dispute **after a hearing upon at least 10 days' prior notice to the affected Counterparty**, or agreement between the Debtors and the Counterparty, the Counterparty will be entitled to payment from the segregated account of any disputed portion and interest earned thereon to which the Court finds, or the Debtors and Counterparty agree, it is entitled.

h.    Unless the Debtors solicit bids from at least four (4) potential assignees and select the highest or best bid received within a reasonable time period from such assignees, the Debtors shall request consent of the Committee through its advisors to assume and assign a Derivative Contract pursuant to these Assumption and Assignment Procedures.

i.    If no objection is timely served by a Counterparty or a Counterparty affirmatively consents to the assignment (including by resolving its objection), and any required Committee consent (including through its advisors) has been received, the Debtors shall be authorized, but not required, to assume and assign any Derivative Contract subject to the applicable Assignment Notice, and, upon such assumption and assignment, the assignee and any replacement credit support provider shall

         assume the Derivative Contract with all Defaults having been deemed cured or waived.

j.       Within a reasonable time period after consummation of an assignment transaction, the Debtors will provide notice to any Counterparty of the effective date of the assignment. Any purported termination notice sent by a Counterparty of a Derivative Contract based on a Default occurring prior to the assignment shall be ineffective unless a termination notice is received by the Debtors pursuant to the terms of the Derivative Contract prior to the assignment's consummation.

k.      In any instance where a Derivative Contract is memorialized pursuant to a master agreement, the Debtors may assume and assign, pursuant to these Assumption and Assignment Procedures, only all, but not fewer than all, of the Derivative Contract transactions entered into pursuant to the master agreement.

l.       As part of and/or to facilitate any assignment transaction the Debtors may agree to make payments, including to or for the benefit of the assignee.

; and it is further

ORDERED that the following Termination and Settlement Procedures for the

termination and settlement of claims of terminated Derivative Contracts by the Debtors are

hereby approved and established:

a.      With respect to any Derivative Contract, the Debtors may enter into and consummate a termination agreement, which may include any of the features described below.

b.      A termination agreement may resolve and fix amounts owing between the Debtors and the Counterparty.

c.      In connection with any termination agreement, the Debtors are authorized, but not required, to provide a release to the Counterparty to the extent that the Debtors determine such a release is appropriate.

d.      A termination agreement may address and permit the collateral or margin held by the Debtors or by the Counterparties to be liquidated or returned in accordance with the Derivative Contract, an applicable Master Netting Agreement, or the termination agreement.

; and it is further

ORDERED that the Debtors are authorized and have full requisite power and

authority to enter into and consummate assumptions and assignments and/or termination

agreements of Derivative Contracts pursuant to the Assumption and Assignment Procedures

and/or Termination and Settlement Procedures; and it is further

ORDERED that (i) this Order is and shall be effective as a determination that,

upon assignment of a Derivative Contract pursuant to the Assumption and Assignment

Procedures, all defaults, events of default, and early termination events pursuant to the applicable

Derivative Contract have been cured, that all liabilities arising therefrom have been released and

discharged, and that any rights to designate an Early Termination Date have been cured or

waived and (ii) the grounds on which Counterparties may object to the assignment of their

Derivative Contracts shall be limited as described in subparagraph e of the second decretal

paragraph of this Order; and it is further

ORDERED that the terms of each assignment of a Derivative Contract pursuant

to the Assumption and Assignment Procedures and this Order shall be binding in all respects

upon, shall govern the acts of, and shall inure to the benefit of, the Debtors, their estates, and

their creditors and interest holders; the Counterparties; all future assignees; each of their

respective affiliates, successors and assigns; and any affected third parties; and it is further

ORDERED that, with respect to the Derivative Contracts assigned pursuant to the

Assumption and Assignment Procedures: (a) the assigned Derivative Contracts shall be

transferred and assigned to, and following the closing of the assignment remain in full force and

7

7

effect for the benefit of the assignees, all future assignees, each of their respective affiliates, successors, and assigns, and any affected third parties, notwithstanding any provision in any such assigned Derivative Contract that prohibits, restricts, or conditions such assignment or transfer; (b) ~~each assigned Derivative Contract is an executory contract under section 365 of the Bankruptcy Code; (c)~~ the Debtors may assume each of their respective Derivative Contracts in accordance with section 365 of the Bankruptcy Code; (~~d~~**c**) the Debtors may assign each assigned Derivative Contract in accordance with section 365 of the Bankruptcy Code, ~~and~~**notwithstanding** any provisions in any assigned Derivative Contract that prohibit, restrict, or condition the assignment of such assigned Derivative Contract or allow the Counterparty to such assigned Derivative Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such assigned Derivative Contract~~, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (e~~**; (d**) all other requirements and conditions under section 365 of the Bankruptcy Code for the assumption and assignment by the Debtors of each assigned Derivative Contract have been satisfied; and (f) upon closing of any assignment transaction, in accordance with section 365 of the Bankruptcy Code, the assignee(s) shall be fully and irrevocably vested in all right, title, and interest of each assigned Derivative Contract.  ~~Any~~**Upon the assignment of a Derivative Contract, any (i) default or termination right based on any** portions of any such assigned Derivative Contract that purport to permit the Counterparty to terminate the Derivative Contract by reason of such assignment~~, or any~~ **that are triggered by assignment pursuant to these procedures, or (ii)** default or termination right arising prior to or existing at the time of

the assignment **and relating to the Debtors**, including as a result of the commencement of a

case under the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition

of any of the Debtors, ~~are~~**is** void and of no force and effect, and shall not be enforceable against

the assignee(s), all future assignees, each of their respective affiliates, successors and assigns,

and any affected third parties; and the Counterparties to such Derivative Contracts shall not have

the right to terminate or cease payment, delivery, or any other performance under the Derivative

Contracts, or otherwise modify the Derivative Contracts, assert any claim, or termination

payment, or impose any penalty by reason of such assignment, or any default or termination right

arising prior to or existing at the time of the assignment, including as a result of the

commencement of a case under the Bankruptcy Code by any of the Debtors, or the insolvency or

financial condition of any of the Debtors; and it is further

ORDERED that each Counterparty to a Derivative Contract assigned pursuant to

the Assumption and Assignment Procedures is hereby forever barred, estopped, and permanently

enjoined from asserting against the Debtors, the assignee(s), all future assignees, each of their

respective affiliates, successors and assigns, or the property of any of them, any default or

termination right arising prior to or existing as **of the date** of the assignment of the Derivative

Contract or, against the assignee(s), any counterclaim, defense, setoff or any other claim asserted

or assertable against the Debtors; and it is further

ORDERED that, except as provided in the Assignment Notice or this Order, upon

assignment of a Derivative Contract pursuant to the Assumption and Assignment Procedures, the

Debtors and their estates shall have no further liabilities or obligations under the Derivative

~~9~~

**9**

Contract, and all holders of such claims are forever barred and estopped from asserting such

claims against the Debtors, each of their respective affiliates, successors and assigns, their

property or their assets or estates; and it is further

ORDERED that nothing in the Motion shall be deemed to be an admission of fact

by any of the Debtors, for any purposes whatsoever, concerning the purported termination of any

of the Derivative Contracts; and it is further

ORDERED that the Debtors are hereby authorized to execute and deliver all

instruments and documents, and take such other actions, as may be necessary or appropriate to

implement and effectuate assumptions and assignments and/or termination agreements pursuant

to the Assumption and Assignment Procedures and/or Termination and Settlement Procedures;

and it is further

ORDERED that entry of this Order is without prejudice to the rights of the

Debtors, including, but not limited to, the right to seek further, other, or different relief regarding

the Derivative Contracts pursuant to, among other things, section 365 of the Bankruptcy Code;

and it is further

**ORDERED that notwithstanding anything to the contrary set forth in this**

**Order, this Order does not (i) alter the rights of any parties to "forward contracts,"**

**"securities contracts," "repurchase agreements," "commodity contracts," "swap**

**agreements," or "master netting agreements" (each as defined in the Bankruptcy Code)**

**from exercising their rights pursuant to the "financial contract safe harbor" provisions of**

**the Bankruptcy Code, including without limitation those set forth in sections 555, 556, 559,**

10

**10**

**560, 561 and 562 or (ii) affect any right of any party under or in connection with any securities contract, commodities contract, forward contract, repurchase agreement, swap agreement or master netting agreement (each as defined in the Bankruptcy Code) to exercise any contractual right (as defined in the relevant section of the Bankruptcy Code) of a kind described in section 362(b)(6), (7), (17), or (27), 362(o), 555, 556, 559, 560 or 561 of the Bankruptcy Code;**

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rules 6006(a) and 9014 are satisfied; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order and/or the terms of any assumption and assignment and/or termination agreement consummated pursuant to the terms of the Assumption and Assignment Procedures and/or Termination and Settlement Procedures.

Dated: _____, 2008
   New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE