Hearing Date and Time: December 3, 2008 at 10:00 a.m. (EST)
Objection Date and Time: November 28, 2008 at 4:00 p.m. (EST)

**ARENT FOX LLP**
Christopher J. Giaimo (CG 2260)
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 857-6000
Facsimile: (202) 857-6395

Hunter T. Carter (HC 1844)
1675 Broadway
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990

Attorneys for Georgetown University

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC, et al., | Case No. 08-13555 (JMP) |
| Debtors. | Jointly Administered |

**LIMITED OBJECTION OF AND RESERVATION OF RIGHTS BY
GEORGETOWN UNIVERSITY TO DEBTORS' MOTION FOR AN ORDER
PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE
TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION
AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS**

Georgetown University (the "University"), by and through its undersigned counsel, objects to the Motion of the above-captioned debtors (the "Debtors") for Entry of an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Pre-petition Derivative Contracts (the "Motion," Docket No. 1498). In support of this limited objection, the University respectfully states as follows:

GENBUS/650411.1

**BACKGROUND**

1.   Commencing on September 15, 2008 and periodically thereafter, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors have continued to operate their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.   The University is currently a party to certain "swap agreements," as that term is defined in section 101 of the Bankruptcy Code (the "Swap Agreements"), with one or more of the Debtors. 11 U.S.C. § 101(53B). None of the Swap Agreements has been terminated. The Swap Agreements are a type of "Derivative Contract" as that term is used in the Motion. Each Swap Agreement provides that the commencement of an insolvency proceeding by either party to the Swap Agreement, or by the credit support provider for the applicable Debtor, constitutes an event of default that allows the non-defaulting party to the Swap Agreement - in this case the University - to terminate the Swap Agreement. In this case, one or more of the Debtors is the defaulting party under each of the Swap Agreements and, as a consequence of the defaults, the University has the right to terminate each Swap Agreement.

**ARGUMENT**

3.   The Bankruptcy Code grants non-debtor parties to swap agreements certain "safe harbor" protections to reduce the risk to the financial markets in which these parties participate. 11 U.S.C. § 560. The legislative history states that the primary purpose of the safe harbor protections "is to ensure that the … swap markets are not destabilized by uncertainties regarding the treatment of …financial instruments under the Bankruptcy Code." H.R. Rep. 101-84, 1990 U.S.C.C.A.N. 233 (May 14, 1990). The Motion seeks entry of an order (the "Order") that, if entered in the form proposed by the Debtors, would create the uncertainties that section 560 of

the Bankruptcy Code was intended to avoid and would inappropriately restrict the University's rights under section 365 of the Bankruptcy Code. Accordingly, the University objects to the Motion because its rights under sections 365 and 560 would be impaired by the terms of the proposed Order.

### I.      Swap Participants' Rights Under the Bankruptcy Code

4.      Section 560 of the Bankruptcy Code specifically preserves the contractual rights of a non-defaulting party to a swap agreement to liquidate, terminate or accelerate that swap agreement based upon, among other things, the bankruptcy of the other party to the swap agreement. 11 U.S.C. § 560. This provision is a purposeful, narrowly tailored exception to the general rule that *ipso facto* clauses, or clauses that automatically terminate a contract or allow a non-defaulting party to a contract to terminate the contract in the event of bankruptcy, are void under the Bankruptcy Code. 11 U.S.C. § 365(e)(1); *See In re Enron*, 306 B.R. 465, 472-73 (Bankr. S.D.N.Y. 2004). Section 560 further provides that the contractual rights of a non-defaulting swap participant to liquidate, terminate or accelerate the swap agreement may not be "stayed, avoided, or otherwise limited" by the Bankruptcy Code or by the court. 11 U.S.C. § 560.

5.      In enacting section 560, Congress specifically intended to shield financial markets from instability by providing a "safe harbor" for financial instruments and the parties to those financial instruments from the usual protections and policies of the Bankruptcy Code. *See In re National Gas Distributors, LLC*, 369 B.R. 884, 899 (E.D. N.C. 2007), *citing* H.R.Rep. No. 484, 101st Cong., 2d Sess. (1990). If entered, the Order requested by the Motion would, in meaningful and harmful ways, undermine the applicability of section 560 to the University, would interfere with and restrict the contractual rights of the University, which is the non-

GENBUS/650411.1

defaulting party to the Swap Agreements, and would, therefore, upset the statutorily-imposed protection to which the University is entitled with respect to the Swap Agreements.

## II. Relief Sought By The Motion

6. The Order sets out broad and ambiguous relief that would both impair and restrict the University's rights under the Swap Agreements; these rights are intended to be statutorily protected by section 560 and other applicable provisions of the Bankruptcy Code.

7. Specifically, the proposed assumption and assignment procedures (the "Assignment Procedures") would drastically limit the University's rights with respect to the assignment of a Swap Agreement to a third party by (i) limiting the notice to the University of such assumption and assignment to an unfair five (5) business days,[1] (ii) limiting the objections that the University may raise with respect to such assignment to, most importantly (among others), objections based upon adequate assurance of future performance, and (iii) allowing the Debtors broad and unreasonable control over the assumption and assignment process to the detriment of the University.

8. In addition, the Order would implement ambiguous procedures with respect to the termination of swap agreements. Indeed, the Motion requests approval of a procedure pursuant to which the Debtors may be free to negotiate "termination agreements" with swap participants whose swap agreements have been terminated. Yet, the Motion proposes no constraints upon the Debtors (or objective guidelines for non-debtors) regarding these "termination agreements," such as what terms would be included or when the agreements would be entered into, and fails to protect the freedom of the Debtors' counterparties to decline to enter into such agreements. This

---

[1] The proposed Assignment Procedures provide for only 5 business days notice of a proposed assignment, but then require objections to be filed and received within 5 business days of service of such notice. Thus, the Assignment Procedures potentially require parties to consider and act on the proposed assignment within as little as 48 hours. The complexities of these transactions warrant more notice.

is objectionable to the University because it may be construed to empower the Debtors to unilaterally establish and to require compliance with termination agreement provisions that do not exist under the Swap Agreements or applicable law – all of which is contrary to the intent of section 560.

### III. The University's Rights Under the Swap Agreement and the Bankruptcy Code Should Be Preserved

9. The University objects to the Motion because the requested relief would result in an abrogation of the University's protections under the Bankruptcy Code and, in the event that the Debtors are authorized to implement the Assignment Procedures, the University's right to receive adequate assurance of future performance. In brief, the Assignment Procedures would allow the Debtors to assign the Swap Agreements to unknown parties, with credit ratings less than those of the respective Debtor-counterparties at the time the Swap Agreements were entered into, and would then place significant limitations on the University's ability to object to the assignment or receive adequate assurance of future performance.

10. In addition, the proposed Assignment Procedures are objectionable because they limit or alter the University's rights to know the identity of the assignee or demand adequate assurance of future performance from the assignee, regardless of the assignee's credit rating. 11 U.S.C. §365(f)(2). The A1/A3 standard proposed is not sufficiently definitive, does not provide an adequate credit rating level and its imposition would deny the University the ability to make its own credit judgment about institutions that fall within those parameters. The Debtors cannot satisfy their burden of proving that an assignee that falls within the A1/A3 rating categories can actually provide adequate assurance of future performance. The extreme volatility in the financial markets that the country has been experiencing and the concerns expressed about the reliability of ratings issued by the national rating agencies make clear that credit ratings alone are

not sufficiently reliable indicators of an assignee's current or future economic viability. At a minimum, if the Court is inclined to permit the substitution of an objective standard for the University's judgment, it should adopt the more reliable rating standard of AA/Aa.

11. In addition, should the Court be predisposed to entering the Order, the University requests that the Assignment Procedures be modified to allow the University at least ten (10) business days' notice of the assignment to provide the University with sufficient time to receive adequate assurance of future performance from the assignee(s).

12. The University objects to the Motion to the extent that the relief requested by the Motion may be deemed to prejudice or alter the University's rights, including its rights to liquidate, terminate or accelerate the Swap Agreements, or impose any additional obligations that the University currently has under the Bankruptcy Code and the Swap Agreements. Moreover, the University objects to the Motion to the extent that such relief will limit or impair the University's rights, or reduce the obligations of the Debtors, in the event either party seeks to liquidate, terminate or accelerate the Swap Agreements. Such alterations are directly contrary to the clear and unambiguous Congressional intent of section 560 and should not be approved.

## RESERVATION OF RIGHTS

13. The University reserves its rights to supplement or modify this limited objection as warranted, to further address the requested relief and other ancillary issues and to respond to the reply of any party, either by further submission to this Court, at oral argument or by testimony to be presented at any hearing.

14. Nothing in this limited objection should be construed as a waiver of any of the University's rights, claims, interests or arguments with respect to the Motion or any other issue in these Chapter 11 cases; all such rights being expressly reserved. In addition, the University

reserves the right to supplement, modify, and amend this limited objection in writing or orally at the hearing on the Motion.

WHEREFORE, the University respectfully requests that the Court (a) deny the Motion, unless and until the Order is modified to recognize that nothing contained therein should in any way, alter, modify, or limit the terms of the Swap Agreements or other agreements between the Debtors and the University and that nothing in the Order shall be deemed to modify or limit the University's rights under the Swap Agreements, the Bankruptcy Code or other applicable law, which rights are expressly reserved; (b) expand the notice time for the assignment of the Swap Agreements to at least ten (10) business days; and (c) provide such other and further relief as this Court deems just and appropriate.

Dated: November 26, 2008
Washington, DC

                      ARENT FOX LLP

                      By:  /s/ Christopher J. Giaimo
                      Christopher J. Giaimo
                      ARENT FOX LLP
                      1050 Connecticut Avenue, NW
                      Washington, DC 20036-5339
                      Telephone: (202) 857-6000
                      Facsimile: (202) 857-6395

                      Hunter T. Carter
                      ARENT FOX LLP
                      1675 Broadway
                      New York, New York, 10019
                      Telephone: (212) 484-3900
                      Facsimile: (212) 484-3990

                      Attorneys for Georgetown University

# CERTIFICATE OF SERVICE

I, Christopher J. Giaimo, Jr., hereby certify that on the 26th day of November 2008, I caused a true and correct copy of the foregoing Limited Objection of and Reservation of Rights by Georgetown University to Debtors' Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures For The Settlement Or Assumption and Assignment of Prepetition Derivative Contracts to be served via the Court's CM/ECF system and by U.S. first-class mail, postage pre-paid on:

Lori R. Eife
Robert J. Lemons
Weil, Gotshal & Manges LLP
767 Fifth Ave.
New York, NY 10153

Steven J. Reisman
L.P. Harrison III
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Ave.
New York, NY 10178

Jeffrey S. Margolin
Hughes, Hubbard & Reed
1 Battery Park Plaza
New York, NY 10004

Andrew D. Velez-Rivera
Office of the United States Trustee
33 Whitehall Street
21st Floor
New York, NY 10004

James Tecce
Susheel Kirpalani
Quinn Emanuel Urquhart Oliver & Hedges
51 Madison Avenue
22nd Floor
New York, NY 10010

    */s/ Christopher J. Giaimo*
    Christopher J. Giaimo