**Womble Carlyle Sandridge & Rice, PLLC**
Michael G. Busenkell
222 Delaware Avenue
Suite 1501
Wilmington, DE  19801
Telephone:     (302) 252-4320
Facsimile:      (302) 252-4330

**Locke Lord Bissell & Liddell LLP**
Jay G. Safer
885 Third Avenue, 26th Floor
New York, New York 10022
Telephone:     (212) 812-8305
 Facsimile:      (212) 947-4700

*Counsel for Southern Community*
*Financial Corporation and Southern*
*Community Bank and Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| LEHMAN BROTHERS HOLDINGS, INC., | ) | Case No. 08-13555 (JMP) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**LIMITED OBJECTION OF SOUTHERN COMMUNITY FINANCIAL CORPORATION AND SOUTHERN COMMUNITY BANK AND TRUST TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION <u>AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS</u>**

Southern Community Financial Corporation ("Southern Community") and its wholly-owned subsidiary Southern Community Bank and Trust ("Southern Bank" and, collectively with Southern Community, "Southern"), by and through undersigned counsel, hereby submit their limited objection to Debtors' Motion For An Order Pursuant To Sections 105 And 365 Of The Bankruptcy Code To Establish Procedures For The Settlement Or Assumption And Assignment

Of Prepetition Derivative Contracts (the "Motion"). In support thereof, Southern respectfully states as follows:

## BACKGROUND

### The Pre-Petition Relationship between Lehman SF and Southern

1. On or about April 7, 2003, Lehman SF and Southern, entered into that certain International Swap Dealers Association, Inc. ("ISDA") Master Agreement dated April 7, 2003 (the "April Master Agreement," and collectively with the attached Schedule (the "April Schedule") and Credit Support Annex (the "April Credit Support Annex") dated April 7, 2003, the "April Swap Agreement"). In addition, on or about November 10, 2003, Lehman SF and Southern, entered into that certain ISDA Master Agreement dated November 10, 2003 (the "November Master Agreement," and collectively with the attached Schedule (the "November Schedule") and Credit Support Annex (the "November Credit Support Annex") dated November 10, 2003, the "November Swap Agreement"; the April Swap Agreement and the November Swap Agreement, collectively the "Swap Agreements"). Attached hereto as composite Exhibit A are true and correct copies of the April Master Agreement, the November Master Agreement, the April Schedule, the November Schedule, the April Credit Support Annex and the November Credit Support Annex.

2. Since 2003, Lehman SF and Southern have engaged in a series of derivative transactions (the "Transactions") under and subject to the terms of the Swap Agreements.

### Pre-Petition Event of Default, Declaration of Early Termination Date and Cessation of Distributions

3. Under the April and November Master Agreements, an "Early Termination Date" may be declared by the non-defaulting party upon the occurrence of an Event of Default.

2

4. Among other events, an Event of Default occurs under the April and November Master Agreements if a party or any "Credit Support Provider" of such party "institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law."

5. Lehman Brothers Holdings Inc. ("LBHI") is designated as a Credit Support Provider in the April and November Schedules to the April and November Master Agreements.

6. On or about September 15, 2008, LBHI filed a voluntary petition with the United States Bankruptcy Court for the Southern District of New York seeking relief under Chapter 11 of the Bankruptcy Code (the "LBHI Petition").

7. The filing of the LBHI Petition caused an Event of Default to occur under the April and November Master Agreements.

8. Pursuant to Section 6(a) of the April and November Master Agreements, upon the occurrence of this Event of Default, Southern was entitled to provide notice to Lehman SF specifying the relevant Event of Default and to designate a day not earlier than the day such notice was effective as an Early Termination Date in respect of all outstanding Transactions.

9. By letters dated and delivered September 18, 2008, Southern as the non-defaulting party, notified Lehman SF that the filing of the LBHI Petition caused an Event of Default to arise under the April and November Master Agreements and that, as a result, Southern was designating September 19, 2008 as the Early Termination Date in respect of all outstanding Transactions under the April and November Master Agreements. Attached hereto as Exhibit B is a true and correct copy of the September 18, 2008 letters.

10. On November 13, 2008, the Debtors filed the Motion seeking, among other things, approval of certain procedures for the assumption and assignment of derivative contracts.

3

**LIMITED OBJECTION**

11. Southern objects to the Motion to the extent it seeks approval of procedures for the assumption and assignment of the Swap Agreements.

12. The Swap Agreements are not subject to assumption and assignment under section 365 of the Bankruptcy Code. It is axiomatic that for Bankruptcy Code section 365 to be applicable in the first instance, there must be a contract in existence. Where a contract has been terminated prepetition, there is no contract for a debtor-in-possession to assume or reject. *See* 2 *Collier on Bankruptcy* § 365.02 (15th ed. 1993); *see also*, *In re Hughes*, 166 B.R. 103, 105 (Bankr. S.D. Ohio 1994) (finding that no executory contract existed where contract was terminated prepetition); *In the Matter of Howard Industries, Inc.*, 56 B.R. 5 (Bankr. D.N.J. 1985) (where contract was terminated prepetition, contract was not executory and not subject to Bankruptcy Code section 365).

13. Southern terminated the Swap Agreements prior to Lehman SF's chapter 11 filing. As a result, the Swap Agreement is not an executory contract subject to assumption and assignment pursuant to section 365 of the Bankruptcy Code. Consequently, the Swap Agreements cannot be subject to the proposed procedures for the assumption and assignment of derivative contracts and Southern objects to the Motion to the extent it purports to include the Swap Agreements within the scope of the proposed procedures.

14. To the extent not set forth in this objection, Southern joins in any other opposition filed to the Motion.

## CONCLUSION

WHEREFORE, for the reasons stated above, Southern respectfully requests that the Motion be denied to the extent that the Debtors seek to extend the proposed procedures to the Swap Agreements and for such other and further relief as the Court deems just and proper.

Dated: November 26, 2008

**Womble Carlyle Sandridge & Rice, PLLC**

/s/
Michael G. Busenkell (No. 3933)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4324
Facsimile: (302) 252-4330

**Locke Lord Bissell & Liddell LLP**
Jay G. Safer (JS 4609)
885 Third Avenue, 26th Floor
New York, New York 10022
Telephone:   (212) 812-8305
Facsimile:   (212) 947-4700

*Counsel for Southern Community Financial Corporation and Southern Community Bank and Trust*