FAEGRE & BENSON LLP
Stephen M. Mertz, Esq.
Michael M. Krauss, Esq. (MK-9699)
Michael F. Doty, Esq.
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN  55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

ATTORNEYS FOR WELLS FARGO
BANK, NATIONAL ASSOCIATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                   :
**In re**                                                          :   **Chapter 11 Case No.**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                       :   **08-13555 (JMP)**
                                                                   :
            Debtors.                                               :   **(Jointly Administered)**
                                                                   :
                                                                   :
-------------------------------------------------------------------x

**WELLS FARGO'S LIMITED OBJECTION TO DEBTORS' MOTION
FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE
BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT
OR ASSUMPTION AND ASSIGNMENT OF PREPETITION DERIVATIVE
CONTRACTS**

Wells Fargo Bank, National Association ("Wells Fargo") by and through its undersigned attorneys, submits this limited objection to the Debtors' Motion For An Order Pursuant To Sections 105 and 365 Of The Bankruptcy Code To Establish Procedures For The Settlement Or Assumption And Assignment Of Prepetition Derivative Contracts (the "Motion").  Wells Fargo objects to the Motion to the extent that the Motion seeks to allow:

(i) the assignment of Derivative Contracts (as that term is defined in ¶ 8 of the Motion) to parties that do not meet the credit ratings criteria applicable to transferees under the Derivative Contracts; (ii) the assumption and assignment of any Derivative Contract without satisfying the assignment requirements of any Derivative Contract; (iii) the modification of any collateralization requirements under any Derivative Contract; or (iv) the modification of any event of default, termination event, or additional termination event provision specified in any Derivative Contract.  Because these provisions and requirements materially affect the value of a Derivative Contract, the Motion does not provide Wells Fargo with adequate assurance of future performance by the Debtors or any of their assignees, as required by 11 U.S.C. § 365(f)(2).  In support of its Objection, Wells Fargo states and represents as follows:

### **Background**

1.  Wells Fargo, in its capacity as trustee under numerous trust agreements, and Lehman Brothers Special Financing, Inc. ("LBSF"), are parties to various Derivative Contracts (each a "Wells Fargo Derivative Contract" and collectively, the "Wells Fargo Derivative Contracts").  The Wells Fargo Derivative Contracts are primarily interest rate swap agreements, interest rate cap agreements, and credit default swap agreements.  A complete list of the trusts for which Wells Fargo acts as Trustee, and that have entered into Derivative Contracts with LBSF (the "Wells Fargo Trusts") is attached as Exhibit A.

2.  The Wells Fargo Derivative Contracts allow the various trusts for which Wells Fargo acts as trustee to protect themselves against changes in interest rates, and to obtain access to a steady stream of revenue in exchange for assuming certain third party credit risks.  The Wells Fargo Trusts are generally either: (i) trusts that have purchased pools of residential

2

mortgages and sold notes or certificates backed by these pools of residential mortgages to investors, or (ii) collateralized debt obligation trusts ("CDOs").

3. Each note and certificate issued by the Wells Fargo Trusts maintains a credit rating from Standard & Poor's Rating Services ("S&P"), Moody's Investor Services ("Moody's"), and Fitch, Inc. ("Fitch") (or some combination of these three). The Wells Fargo Derivative Contracts are a key component to maintaining these credit ratings, as they allow the Wells Fargo Trusts to mitigate the risks associated with interest rate fluctuations and, in the case of CDOs and credit default swaps, to obtain a consistent revenue stream.

4. Certain of the Wells Fargo Derivative Contracts contain additional assignment provisions that LBSF must satisfy before transferring or assigning its rights and responsibilities to a third party. Such provisions include a minimum credit rating requirement for any assignee. Such provisions also include a requirement that either S&P, Moody's, or Fitch (or some combination thereof) provide Wells Fargo with prior written confirmation that a proposed transfer or assignment of LBSF's duties and obligations under the contract would not cause a downgrade or withdrawal of the credit rating of any note or certificate issued by the Wells Fargo Trust that is a party to the Wells Fargo Derivative Contract.

5. In addition to the minimum credit ratings and the various assignment provisions, certain of the Wells Fargo Derivative Contracts contain credit support requirements that require the posting of collateral when certain conditions occur. The amount of collateral that LBSF (or any assignee) must post is affected by LBSF's (or any assignee's) credit ratings.

6.     Each Wells Fargo Derivative Contract contains provisions requiring that LBSF (or any assignee) maintain minimum credit ratings with S&P, Moody's, and Fitch (or some combination thereof). Should LBSF (or any assignee) fail to maintain these minimum rating requirements, an additional termination event occurs, which allows Wells Fargo to terminate the Wells Fargo Derivative Contract.

7.     On September, 15 2008, Lehman Brothers Holdings, Inc. filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), and on October 5, 2008, LBSF filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Each filing constituted termination events under the Wells Fargo Derivative Contracts. However, Wells Fargo has not yet exercised its right to terminate the Wells Fargo Derivative Contracts.[1] As a result, each Wells Fargo Derivative Contract is still in effect.

**Debtors' Motion**

8.     On November 13, 2008, the Debtors filed the Motion. The Motion seeks, among other things, to allow the Debtors to assume and assign the Wells Fargo Derivative Contracts to assignees that either: (i) have S&P or Fitch credit ratings equal to or higher than A- or a Moody's credit rating equal to or higher than A3 (the "Proposed Ratings Criteria"); or (ii) can provide a credit support provider who meets the Proposed Ratings Criteria. Under the Wells Fargo Derivative Contracts, a credit support provider would effectively act as a guarantor of the assignee's obligations.

9.     In addition, the Motion seeks an order stating that any counterparty to a Derivative Contract will be deemed to have received adequate assurance of future

---

[1] Wells Fargo reserves the right to terminate the Wells Fargo Derivative Contracts.

4

performance as required by Section 365 of the Bankruptcy Code if the proposed assignee (or its credit support provider) satisfies the Proposed Ratings Criteria.

**Objection**

10. Wells Fargo does not object to the Motion *per se*. However, Wells Fargo objects to the Proposed Ratings Criteria, as well as the proposed Assumption and Assignment Procedures, to the extent that they differ materially from the ratings criteria and assignment procedures specified in the Wells Fargo Derivatives Contracts.

11. In addition, Wells Fargo objects to the Motion to the extent that it seeks to revise any of the collateralization requirements that exist under the Wells Fargo Derivatives Contracts, or change any of the Wells Fargo Derivative Contracts' provisions relating to events of default, early termination events, or additional termination events.

**Argument**

12. Under the Bankruptcy Code, a debtor may assume an executory contract if it: (i) cures, or provides adequate assurance that it will promptly cure, any defaults existing under the contract; and (ii) provides adequate assurance of its future performance under the contract. *Ionosphere Clubs, Inc. v. The Ins. Co. of the State of Pa. (In re Ionosphere Clubs, Inc.)* 85 F.3d 992, 999 (2d Cir. 1996). In allowing a debtor to assume a contract, the court must insure that the debtor's performance allows "the contracting parties to receive the full benefit of their bargain." *Id.* (citing *In re Superior Toy & Mfg. Co.*, 78 F.3d 1169, 1174 (7th Cir. 1996)). The Southern District of New York has taken a similar view with respect to assignments under § 365 of the Bankruptcy Code. *In re Evelyn Byrnes, Inc.*, 32 B.R. 825, 829 (Bankr. S.D.N.Y. 1983) (finding that "Congress equated 'adequate assurance' with that which will give the landlord the full benefit of his bargain").

5

13. The Motion seeks to deprive the Wells Fargo Trusts of several key aspects of their respective bargains with LBSF. Wells Fargo objects to each such deprivation and sets forth the details for its objections below.

**A.  The Proposed Ratings Criteria Differ From the Replacement Counterparty Criteria That the Wells Fargo Derivative Contracts Require.**

14. The Motion proposes to allow assignment of the Wells Fargo Derivative Contracts to assignees that either meet the Proposed Ratings Criteria or can provide a credit support provider who meets the Proposed Ratings Criteria.

15. The Proposed Ratings Criteria differ significantly from the replacement counterparty criteria that the Wells Fargo Derivative Contracts require. For example, certain Wells Fargo Derivative Contracts require that any proposed replacement for LBSF maintain a short-term S&P rating of at least A-1, or, if no short-term rating is available, a long-term S&P rating of at least A+. In addition, these Wells Fargo Derivative Contracts require that any proposed replacement maintain a long-term Moody's rating of at least A3, and a short-term Moody's rating of at least Prime-2. The Proposed Ratings Criteria simply require any proposed assignee maintain a long-term S&P rating of A-, which is a rating that is two full S&P ratings below the requirements of certain Wells Fargo Derivative Contracts. Additionally, the Proposed Ratings Criteria do not require that an assignee must have specified minimum favorable credit ratings from multiple ratings agencies, as required by the Wells Fargo Derivative Contracts. Requiring that a proposed assignee receive specified minimum credit ratings from multiple ratings agencies increases the accuracy of any assessment of a proposed assignee's creditworthiness, as it is less likely that two separate ratings agencies will incorrectly assign favorable ratings to financially troubled parties.

6

16.     The Proposed Ratings Criteria refer to long-term credit ratings only. Typically, under the Wells Fargo Derivative Contracts, the proposed assignee's long-term rating is a permissible benchmark of creditworthiness only if the proposed assignee lacks a short-term credit rating. The Proposed Ratings Criteria ignore the prospective assignees' short-term credit rating, which, under the terms of the Wells Fargo Derivative Contracts, is the more appropriate standard for evaluating a proposed assignee's creditworthiness.

**B.     The Proposed Assumption and Assignment Procedures Do Not Protect the Wells Fargo Trusts Against Ratings Downgrades.**

17.     The Wells Fargo Trusts entered into the Wells Fargo Derivative Contracts in order to hedge against fluctuations in interest rates or, in the case of CDOs and credit default swaps, to obtain access to a fixed revenue stream in exchange for assuming certain third party credit risks. Risk management and derivative products such as these allow the Wells Fargo Trusts to obtain a higher credit rating for their respective notes or certificates than they might otherwise have been able to obtain. With a higher credit rating, the Wells Fargo Trusts could demand higher prices for the notes or certificates that they sold. Similarly, a higher credit rating for the Wells Fargo Trusts allows the holders of the Wells Fargo Trusts' notes or certificates to expect less risk in their investment, and, if applicable, to obtain a higher price from any third party to whom the holder may sell its notes or certificates to in the future.

18.     Accordingly, and consistent with the goals of the Wells Fargo Trusts and their investors in entering into the Wells Fargo Derivative Contracts, certain Wells Fargo Derivative Contracts require that either S&P, Moody's, or Fitch (or some combination thereof) give prior approval of any proposed assignee. As part of this approval process, S&P, Moody's, or Fitch (or some combination thereof) must state, in writing, that the

7

proposed assignee's assumption of LBSF's obligations under the relevant Wells Fargo Derivatives Contract will not cause the credit ratings of any notes or certificates issued pursuant to the relevant Wells Fargo Trust to be downgraded or withdrawn (the "Pre-approval Requirements").

19. Satisfaction of the Pre-approval Requirements is necessary if the Wells Fargo Trusts and their investors are to realize the full benefits of their respective bargains. The Wells Fargo Derivative Contracts protect the Wells Fargo Trusts from interest rate fluctuations, and the possible credit downgrades that such fluctuations (either directly or indirectly) can cause. In addition, certain Wells Fargo Derivative Contracts allow the Wells Fargo Trusts' notes or certificates to maintain higher credit ratings by providing the Wells Fargo Trusts with a reliable stream of income. In short, one of the primary functions of the Wells Fargo Derivative Contracts is to enhance or maintain the Wells Fargo Trusts' credit ratings. Thus, retention of the Pre-approval Requirements is necessary to give Wells Fargo and the investors "the full benefit of their bargain" as required by 11 U.S.C. § 365. *In re Ionosphere* at 999. Because the Motion would strip the Wells Fargo Trusts of the protections provided by the Pre-approval Requirements, which would deprive Wells Fargo and the investors of an essential component of their respective bargains, Wells Fargo's objection is "based on reason and… [is] not… arbitrary or capricious." *In re Evelyn Byrnes* at 829 (citing *In re U.L. Radio Corp.* 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982)).

**C.    Wells Fargo Objects to Any Revision of the Collateralization Requirements.**

20. Wells Fargo objects to the Motion to the extent that the Assumption and Assignment Procedures do not require that any assignee be bound by the collateralization requirements under any Wells Fargo Derivative Contract.

8

21. Certain Wells Fargo Derivative Contracts require LBSF to post collateral. The amount of collateral that LBSF is required to post, or whether LBSF must post collateral at all, depends on a complex formula that takes into account, among other things, the notional value of the Wells Fargo Derivative Contract, LBSF's credit rating, and the type of collateral that LBSF intends to deposit with Wells Fargo. Certain of the Wells Fargo Derivative Contracts have collateralization triggers that occur when LBSF's short-term rating from S&P is equal to, or lower than, A-2; or its long-term credit rating from S&P is equal to or lower than A; or if LBSF's credit rating from Moody's is ever equal to, or lower than, A2 (each, a "Ratings Trigger"). If a Ratings Trigger occurs, LBSF, or its assignee, may be required to post collateral or increase the amount of collateral that it has already posted.

22. The Motion would allow for assignment to parties who may have credit ratings that are below the Ratings Trigger thresholds. Wells Fargo objects to the Motion to the extent that it seeks to modify any of the provisions requiring LBSF, or its assignees, to post collateral per the terms of each Wells Fargo Derivative Contract.

**D. Wells Fargo Objects to Any Revision of the Event of Default, Termination Event, or Additional Termination Event Provisions of the Wells Fargo Derivative Contracts.**

23. Wells Fargo objects to the Motion to the extent that the Assumption and Assignment Procedures do not require that any assignee be bound by the event of default, termination event, or additional termination event provisions of the Wells Fargo Derivative Contracts.

24. Under certain of the Wells Fargo Derivative Contracts, LBSF or its assignees must maintain a minimum credit rating from S&P of BBB+. Under these Wells Fargo Derivative Contracts, if LBSF or its assignee's credit rating falls below this threshold, an

9

additional termination event occurs. If such an additional termination event occurs, Wells Fargo has the right to terminate the Wells Fargo Derivative Contract.

25.  The Proposed Ratings Criteria allow for assignment to a counterparty whose S&P ratings are A- or higher. An S&P rating of A- is one rating above BBB+. Thus, the Proposed Ratings Criteria would allow LBSF to assign Wells Fargo Derivatives Contracts to assignees whose credit ratings would place the assignee on the cusp of causing an additional termination event to occur under the Wells Fargo Derivative Contract.

26.  The Assumption and Assignment Procedures do not specifically reference the event of default, termination event, or additional termination event provisions of the Wells Fargo Derivative Contracts. Accordingly, Wells Fargo objects to the Motion to the extent that it seeks to modify any of the provisions describing or relating to events of default, termination events, or additional termination events in the Wells Fargo Derivative Contracts.

## **Relief Requested**

WHEREFORE, Wells Fargo requests that this Court: (A) deny Debtors' Motion to the extent that it seeks an entry of an order allowing: (i) the assignment of Wells Fargo Derivative Contracts to parties that do not meet the credit ratings criteria applicable to assignees under the Wells Fargo Derivative Contracts; (ii) the assumption and assignment of any Wells Fargo Derivative Contract without satisfying the assignment requirements of any Wells Fargo Derivative Contract; (iii) the modification of any collateralization requirements under any Wells Fargo Derivative Contract; or (iv) the modification of any event of default, termination event, or additional termination event provision specified in any Wells Fargo

Derivative Contract; and (B) grant such other and further relief as the Court shall deem just.

November 26, 2008

/s/ Michael M. Krauss
Stephen M. Mertz, Esq.
Michael M. Krauss, Esq. (MK-9699)
Michael F. Doty, Esq.
Faegre & Benson LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN  55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

ATTORNEYS FOR WELLS FARGO
BANK, NATIONAL ASSOCIATION

fb.us.3440697.07

# Exhibit A

## Wells Fargo Trusts That Are Parties To Derivative Contracts With LBSF

Belle Haven ABS CDO 2005-1, Ltd.

Belle Haven ABS CDO 2006-1, Ltd.

BNC Mortgage Loan Trust 2007-4

IMPAC CMB Trust 2005-3

Lehman Mortgage Trust 2006-9

Lehman Mortgage Trust 2008-6

Option One Mortgage Loan Trust 2007-1

Option One Mortgage Loan Trust 2007-3

Option One Mortgage Loan Trust 2007-4

Option One Mortgage Loan Trust 2007-5

Structured Adjustable Rate Mortgage Loan Trust 2004-9XS

Structured Adjustable Rate Mortgage Loan Trust 2004-10

Structured Adjustable Rate Mortgage Loan Trust 2004-16

Structured Adjustable Rate Mortgage Loan Trust 2004-18

Structured Adjustable Rate Mortgage Loan Trust 2004-20

Structured Adjustable Rate Mortgage Loan Trust 2007-1

Structured Adjustable Rate Mortgage Loan Trust 2007-2

Structured Adjustable Rate Mortgage Loan Trust 2007-3

Structured Adjustable Rate Mortgage Loan Trust 2007-4

Structured Adjustable Rate Mortgage Loan Trust 2008-1

Structured Asset Securities Corporation 2007-OSI

A-2

fb.us.3440697.07