|  |  |
|---|---|
|  | Hearing Date and Time: December 3, 2008 |
|  | 10:00 a.m. (EST) |
|  | Objection Date and Time: November 28, 2008 |
|  | 4:00 p.m. (EST) |

LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
(212) 407-4000
Walter H. Curchack (WC-3177)
Vadim J. Rubinstein (VR-5896)
Daniel B. Besikof (DB-6872)

*Counsel for Thomas Cook AG*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X
**In re**                                              :
                                                       :       Chapter 11 Case No.
**LEHMAN BROTHERS HOLDINGS, INC.,** *et*               :
*al.*,                                                 :       08-13555 (JMP)
                                                       :
        **Debtors.**                                   :       (Jointly Administered)
                                                       :
------------------------------------------------------------ X

**LIMITED OBJECTION OF THOMAS COOK AG TO DEBTORS'
MOTION FOR AN ORDER PURSUANT TO SECTIONS
105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH
PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND
<u>ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS</u>**

Thomas Cook AG ("**Thomas Cook**"), by and through its undersigned counsel, hereby submits its limited objection (this "**Objection**") to the Debtors' Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts [Docket No. 1498] (the "**Motion**").  In support of its Objection, Thomas Cook respectfully states as follows:

NY752158.1
213583-10001

**PRELIMINARY STATEMENT**

1.      Thomas Cook and Lehman Brothers Commodity Services Inc. ("**LBCS**") were party to a Derivative Contract[1] entitled Rahmenvertrag für Finanztermingeschäfte[2] and dated as of April 20, 2007 (the "**Cook Agreement**").  Thomas Cook and LBCS have engaged in a series of derivative hedging transactions under and subject to the terms of the Cook Agreement.  The obligations of LBCS were guaranteed by Lehman Brothers Holdings Inc. ("**LBHI**") pursuant to that certain Guarantee of Lehman Brothers Holdings Inc., dated as of April 16, 2007.  Thomas Cook terminated the Cook Agreement after the initial bankruptcy filing by LBHI but prior to the subsequent filing of LBCS.  In addition, had it not already been terminated, the Cook Agreement automatically terminated, without notice, upon the bankruptcy filing of LBCS.  As a result of its termination, the Cook Agreement cannot be assumed or assigned, and Thomas Cook is owed significant damages from LBCS and LBHI.

2.      By the Motion, the Debtors seek to establish procedures for assuming and assigning certain Derivative Contracts (the "**Assignment Procedures**") or entering into settlement agreements with Counterparties to terminated Derivative Contracts (the "**Settlement Procedures**" and, together with the Assignment Procedures, the "**Procedures**").  Thomas Cook appreciates the Debtors' desire to establish streamlined procedures for the assumption and assignment or settlement of the several hundred thousand Derivative Contracts to which the Debtors apparently are or were parties.  However, the Procedures, aside from being totally without legal precedent or authority, are one-sided and inequitable and thus should not be

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] The loose translation is "Master Agreement for Financial Futures Transactions".  Thomas Cook is in the process of having the Cook Agreement translated from German into English.

approved in their current form.

3. Thomas Cook's primary concern is that the Assignment Procedures could have the effect of permitting the Debtors unilaterally to assume terminated Derivative Contracts, such as the Cook Agreement, by denying Thomas Cook and other Counterparties the right to object meaningfully to such an attempted assignment. To remedy this issue, any Order approving the Procedures should explicitly provide that the Assignment Procedures, to the extent that they are approved, shall not apply to Derivative Contracts (i) that were terminated (or purportedly terminated) by a Counterparty or (ii) that terminated according to their terms upon the applicable Debtor's bankruptcy filing.

## OBJECTION

### A. There is no Legal Basis for the Procedures.

4. The Procedures are entirely without precedent or authority. Indeed, none of the orders cited by the Debtors in support of the Motion contemplated or established any procedures at all for the assumption and assignment of Derivative Contracts. In re NRG Energy, Inc. (Case No. 03-13024) (Bankr. S.D.N.Y. 2003) [ECF No. 414] (establishing procedures for settlement of terminated Derivative Contracts); In re Enron Corp. (Case No. 01-16034) (Bankr. S.D.N.Y. 2002) [ECF No. 4129] (same); In re Mirant Corporation (Case No. 03-46590) (Bankr. N.D. Tex. 2004) [ECF No. 3033] (same).

5. In addition, the Debtors cite no Bankruptcy Code provision or other authority that would permit this Court to vary the terms of Section 365 of the Bankruptcy Code and the concomitant Bankruptcy Rules, other than Section 105(a). Motion at ¶ 21. However, Section 105(a) "is plainly limited by the provisions of the Code." Smart World Techs., LLC v. Juno Online Services, Inc. (In re Smart World Techs., LLC), 423 F.3d 166, 183 (2d Cir. 2005); see also New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart

Convenience Stores, Inc.), 351 F.3d 86, 92 (2d Cir. 2003) ("This Court has long recognized that Section 105(a) limits the bankruptcy court's equitable powers, which must and can only be exercised within the confines of the Bankruptcy Code. It does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law or constitute a roving commission to do equity.") (internal citations omitted). The Assignment Procedures are not authorized by any other Bankruptcy Code section or any identifiable case law and accordingly should not be approved under Section 105(a).

6. Even if the scope of Section 105(a) were broad enough to permit the Court to exercise its equitable powers to approve the Assumption Procedures, it should not do so, because those Procedures are entirely inequitable, for the reasons set forth below.

**B.     The Assignment Procedures Impermissibly Limit the Ability of Thomas Cook to Object to Assumption and Assignment of Derivative Contracts.**

*(i).    The Grounds for Objection are Too Limited.*

7. Subsection (e) of the of the proposed order appended to the Motion (the "**Proposed Order**") would restrict Counterparties to only three highly limited grounds for objecting to the assumption and assignment of a Derivative Contract: (i) the proposed Cure Amount; (ii) the Debtors' need to cure a default (other than one resulting from their bankruptcy filings, which the Debtors need not cure); and (iii) the adequate assurance of future performance if the assignee is not a Qualified Assignee. The third decretal paragraph on page 6 of the Proposed Order expressly provides that the "the grounds on which counterparties may object . . . shall be limited" to the grounds described above.

8. The effect of these provisions is to eliminate the right of Thomas Cook (or another Counterparty) to object on any other ground, including, among many others, (i) that the Cook Agreement has terminated, (ii) that the Cook Agreement is not executory, (iii) that the

Cook Agreement constitutes an unassignable "financial accommodations" contract under Section 365(c)(2) of the Bankruptcy Code, or (iv) that the Cook Agreement is otherwise not assumable or assignable.

9. Furthermore, the third decretal paragraph on page 6 of the Proposed Order provides that an assignment effectuated pursuant to the Procedures would act as a binding determination that any early termination event has been cured and that all liabilities arising therefrom have been released and discharged. Thus, because the proposed Assumption Procedures prohibit a Counterparty from objecting to the Assignment Notice on the ground that a Derivative Contract has been terminated, the effect of the Proposed Order is to unilaterally undo a prior termination, even a termination that automatically occurred upon a Debtor's bankruptcy filing.

10. To avoid such an absurd result, in the event the Court authorizes the Debtors to stray from the requirements of Section 365 of the Bankruptcy Code (and the provisions of Section 560 of the Bankruptcy Code) and approves the Assumption Procedures, those Procedures should not apply to Derivative Contracts (i) that were terminated (or purportedly terminated) by a Counterparty or (ii) that automatically terminated according to their terms upon the applicable Debtor's bankruptcy filing. In those circumstances, only the Settlement Procedures should apply to the applicable Derivative Contract. Consequently, any Order entered by the Court should specify that the Assumption Procedures do not apply to the Cook Agreement.

11. In addition, a Counterparty should be free to object to an Assignment Notice on any ground and not just on the limited bases proposed in the Motion and the Proposed Order.

*(ii).   The Time for Objecting is Too Limited.*

12.  Subsection (e) of the Proposed Order provides that all objections to an Assumption Notice are to be filed "so that such objection is actually received no later than five (5) business days after the date of service of the Assignment Notice." The Counterparty objecting to the proposed Cure Amount is also required to provide the Debtors with information supporting its objection "containing no less detail" than was provided to such Counterparty by the Debtors in the assignment notice.

13.  Five days is entirely too short.  Unlike Thomas Cook or any other typical Counterparty, the Debtors have an army of professionals working on these cases and have had, and will continue to have, weeks or months to plan the timing of each potential assignment and to prepare the requisite notice and cure calculation models.  A Counterparty cannot be expected to prepare a similarly detailed objection in a mere five days.[3]  Indeed, each of the orders cited by the Debtors creating procedures for the settlement of Derivative Contracts – none of which established any procedures (much less egregious, one-sided procedures) for the assignment of Derivative Contracts – provided notice parties with a review and objection period of at least ten business days.  In re NRG Energy, Inc. (Case No. 03-13024) (Bankr. S.D.N.Y. 2003) [Docket No. 414] (granting committee ten business days to review settlement); In re Enron Corp. (Case No. 01-16034) (Bankr. S.D.N.Y. 2002) [Docket No. 4129] (granting committee ten business days, plus a fourteen business day extension upon request, to review settlement); In re Mirant Corporation (Case No. 03-46590) (Bankr. N.D. Tex. 2004) [Docket No. 3033] (granting notice parties ten business days, plus a five calendar day extension upon request, to review settlement).

---

[3] The Proposed Order does not even provide for facsimile or e-mail service of an objection, so the deadline for objections, effectively, is four days.

14.     In the event the Court approves the Assignment Procedures, they should be modified to provide each Counterparty with at least twenty business days to object to an attempted assignment on any grounds it sees fit.  Moreover, in the event of an objection, the procedural safeguards of the Bankruptcy Rules should apply to the contested matter.

C.     **Additional Objectionable Provisions of the Assignment Procedures.**

15.     The Assumption Procedures, to the extent they are approved, should be modified to address the following:

*(i).     Adequate Assurance of Future Performance.*

16.     For an executory contract to be assumed, Section 365(b)(1)(C) of the Bankruptcy Code requires the Debtors to provide the contractual counterparty with "adequate assurance of future performance under such contract[.]"  The Procedures fail in this regard.

17.     Page 2, subsection (c), of the Proposed Order provides that a Counterparty would be deemed to have received adequate assurance of future performance (i) if the assignee is a Qualified Assignee (one with a high credit rating) or (ii) if the Debtors would have no delivery or payment obligations under the Derivative Contract after paying the cure costs, other than under an option exercisable in the assignee's discretion.  These procedures are insufficient

18.     As recent developments in the financial markets have illustrated, credit ratings (including those assigned to LBHI not too long prior to the petition date) often are inaccurate. Yet the Procedures could subject a Counterparty to the credit risk of another, without the opportunity even to perform its own due diligence on the assignee, learn the Qualified Assignee's identity or obtain a judicial determination as to the assignee's wherewithal to provide adequate assurances of future performance.

19.     At the very least, the Assignment Procedures should be modified to provide that each Counterparty is entitled to object to the assumption of its Derivative Contract by any

assignee, whether a purported "Qualified Assignee" or otherwise, on the grounds that it has not received adequate assurances of future performance. The identity of the proposed Assignee should be disclosed and the Counterparty should be afforded at least 20 business days to object.

*(ii).    Provision Enjoining Assertion of Default and Termination Rights is Too Broad.*

20.    Page 8 of the Proposed Order provides that any Counterparty to an assigned Derivative Contract is forever barred from asserting (i) against, among others, the Debtors, the assignee, all future assignees, and their affiliates, "any default or termination right arising prior to or existing as of the assignment of the Derivative Contract." While it appears that the intent of this provision might be only to limit a Counterparty's ability to later assert any pre-assignment claim against the Debtors or the assignee, the language is not so limited. In particular, this provision could easily be read to bar a Counterparty from asserting any default or termination right or claim under an un-assumed contract against the Debtors or the assignee after the relevant Derivative Contract is assumed and assigned. This provision of the Proposed Order must be modified to make clear that only defaults or other termination rights relating to the specific assumed Derivative Contract are extinguished.

*(iii).    Provision Regarding Extinguishment of Termination Rights is Too Broad.*

21.    Page 8 of the Proposed Order provides that, upon assignment, any portions of an assigned Derivative Contract that purport to permit the Counterparty to terminate the Derivative Contract as a result of, among other things, the Debtors' insolvency or bankruptcy filing shall not be enforceable against the Debtors or the assignee.

22.    Presumably, the intent of this provision is to prevent a Counterparty from attempting to terminate its Derivative Contract in the future as a result of the Debtors' bankruptcy filing and to assert damages against the assignee post-assignment. However, this

provision arguably also could be read to eliminate the Counterparty's termination rights under the Derivative Contract in the event the assignee were to file for bankruptcy protection. In addition, even the more likely intent of this provision is objectionable, since it further restricts the rights of Thomas Cook or any other Counterparty who has terminated its Derivative Contract to object to the assignment of such Derivative Contract on that basis.

### D.    The Settlement Procedures May not Abrogate a Counterparty's Rights.

23.    It is not evident from the Motion or the Proposed Order whether the proposed "streamlined" Procedures would otherwise override a Counterparty's rights under the Bankruptcy Code to, among other things, assert and otherwise enforce its claims on account of a terminated Derivatives Contract. Any Order entered by the Court approving the Settlement Procedures, therefore, should make clear that the Settlement Procedures are without prejudice the legal and contractual rights of a Counterparty who has not entered into a "termination agreement" with the Debtors.

**CONCLUSION**

WHEREFORE, Thomas Cook respectfully requests that the Court deny the Motion; or, in the alternative, approve the Motion as modified in a manner consistent with this Objection; and grant Thomas Cook such other and further relief as is just and proper.

Dated: November 26, 2007
      New York, New York

                        Respectfully submitted,

                        **LOEB & LOEB LLP**

                        By:   /s/ Walter H. Curchack
                               Walter H. Curchack (WH-3177)
                               Vadim J. Rubinstein (VR-5896)
                               Daniel B. Besikof (DB-6872)
                               345 Park Avenue
                               New York, New York  10154
                               (212) 407-4000