SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 S. Grand Ave. #3400
Los Angeles, CA 90046
(213) 687-5000
Van C. Durrer II

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Mark A. McDermott

Attorneys for JA Solar Holdings Co., Ltd.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                               :
                                                               :
In re LEHMAN BROTHERS                    :    Chapter 11
    HOLDINGS INC., et al.,               :    Case No. 08-13555 (JMP)
                                                               :
            Debtors.                     :
                                                               :    (Jointly Administered)
---------------------------------------------------------------:


**LIMITED OBJECTION OF JA SOLAR HOLDINGS CO., LTD. TO DEBTORS'
MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE
BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR
<u>ASSUMPTION AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS</u>**

JA Solar Holdings Co., Ltd. ("JA Solar") respectfully submits this limited objection (the "Objection") to the Debtors' Motion For An Order Pursuant To Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts (the "Motion")[1] [Docket No. 1498], and in support thereof represents as follows:

---

[1] Capitalized terms not described herein shall have the meanings ascribed to them in the Motion.

## BACKGROUND

1.  Prior to the filing of the above-captioned bankruptcy cases, JA Solar engaged Lehman Brothers, Inc. ("LBI") to help JA Solar raise capital in the public markets. On May 13, 2008, JA Solar priced an underwritten offering of 4.5% convertible senior notes in an aggregate amount of $350,000,000 (the "Convertible Notes"). In connection with the Convertible Notes offering, JA Solar entered into a capped call transaction (the "Capped Call Contract") with Lehman Brothers OTC Derivatives Inc. ("Lehman OTC"). The Capped Call Contract is a Derivative Contract that would be subject to the procedures (the "Procedures") described in the Motion if the Motion is granted.

2.  In order to facilitate hedging transactions by which investors in the Convertible Notes could hedge their exposure to the Convertible Notes and by which counterparties to call option transactions such as the Capped Call Transaction could hedge their exposure to such call option transactions, JA Solar, LBI, and Lehman Brother International (Europe) ("LBIE") entered into an ADS Lending Agreement, dated as of May 13, 2008. Pursuant to the ADS Lending Agreement, LBIE, as Borrower, acting through LBI, as Borrowing Agent, borrowed 6,562,760 American Depository Shares from JA Solar, as Lender.

3.  Commencing on September 15, 2008 (the "Petition Date") and periodically thereafter, Lehman Brothers Holding Inc. and certain of its subsidiaries, including Lehman OTC. commenced with this Court voluntary cases under chapter 11 the Bankruptcy Code (collectively, the "Debtors"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. The Debtors are authorized to operate their businesses

and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

   4.  On September 15, 2008, LBIE was placed in administration proceedings in the United Kingdom, triggering an event of default under the ADS Lending Agreement. On September 18, 2008, JA Solar sent LBI written communication demanding the return of JA Solar's collateral under the ADS Lending Agreement and informing LBI that JA Solar was exercising its right to terminate the agreement. On October 29, 2008, JA Solar sent a follow up letter to LBI, reiterating its demand for the return of the collateral. On November 13, 2008, JA Solar forwarded its demand for the return of collateral to James W. Giddens, the appointed and qualified Trustee in LBI's proceedings under the United States Securities Protection Act of 1970.

   5.  On October 3, 2008, Lehman OTC commenced its chapter 11 case, triggering an event of default under the Capped Call Contract.

   6.  On November 13, 2008, the Debtors filed the Motion. Contrary to express provisions of the Bankruptcy Code, the Procedures allow the Debtor to assume and assign Derivative Contracts without curing defaults relating to the commencement of cases under the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the Debtors ("Bankruptcy Filing Defaults").

3

**OBJECTION**

7. JA Solar objects to the Motion solely to the extent that the Procedures purport to limit or impair JA Solar's ability to enforce Bankruptcy Filing Defaults under Derivative Contracts as expressly permitted by the Safe Harbor Provisions of the Bankruptcy Code. The Safe Harbor Provisions include sections 362(b)(6), (7), and (17); 546(e), (f), and (g); 555; 556; 559; 560; and 561 of the Bankruptcy Code. The Safe Harbor Provisions permit qualifying non-debtor counterparties to derivative contracts to continue to exercise certain contractual rights despite the filing of a debtor's bankruptcy case.

8. Generally, bankruptcy termination clauses, also known as ipso facto clauses, are unenforceable in bankruptcy. See 11 U.S.C. § 365(e)(1). An exception to this general rule is provided for certain derivative contracts in the Safe Harbor Provisions. See 11 U.S.C. §§ 555, 556, 559, 560, and 561. For example, section 560 of the Bankruptcy Code provides:

> The exercise of any contractual right of any swap participant or financial participant to cause the liquidation, termination, or acceleration of one or more swap agreements because of a condition of the kind specified in section 365(e)(1) of this title or to offset or net out any termination values or payment amounts arising under or in connection with the termination, liquidation, or acceleration of one or more swap agreement *shall not be stayed, avoided, or otherwise limited* by operation of any provision of this title or by order of a court or administrative agency in any proceeding under this title.

11 U.S.C. § 560 (emphasis added).[2]

9. The Safe Harbor provisions make clear that neither the Bankruptcy Code nor a bankruptcy court is to avoid or limit a counterparty's rights under bankruptcy termination

---

[2] JA Solar believes that the Capped Call Contract is a "swap agreement" as defined in section 101(53B) of the Bankruptcy Code and therefore its rights under the Capped Call Contract are preserved under section 561. In addition, the Capped Call Contract may qualify as one or more other types of derivatives contracts covered by the Safe Harbor provisions.

4

08-13555-mg    Doc 1834    Filed 11/26/08    Entered 11/26/08 18:10:19    Main Document

clauses. By dispensing with the need for the Debtors to cure Bankruptcy Filing Defaults prior to assuming and assigning Derivative Contracts, however, the Debtors' Procedures purport to do just that. Thus, the Procedures are in clear violation of the Safe Harbor Provisions. Accordingly, the Court should deny the Motion to the extent that the Procedures avoid or limit the rights of Counterparties to exercise bankruptcy termination clauses.

10. Alternatively, the Court should require that the Procedures preserve the right to object to assumption and assignment on this ground. In other words, to the extent that a Counterparty (as defined in the Procedures) does not seek to enforce a particular bankruptcy termination clause, the Debtors may still utilize the Procedures, but the rights of Counterparties to enforce such clauses generally would be preserved as provided in the Bankruptcy Code. Set forth below is a simple change to section e of the Procedures that would be acceptable to JA Solar:

> To the extent that any Counterparty wishes to object on the grounds of (i) the proposed Cure Amount; (ii) the need to cure a default or early termination event, including, without limitation, any default or early termination event with respect to the Debtors and each of their respective affiliates, successors and assigns (a "<u>Default</u>") ~~other than a Default relating the o the commencement of a case under the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the Debtors, which Defaults need not be cured prior to assignment; or~~<u>;</u> (iii) the adequate assurance of future performance under the applicable Derivative Contract if neither the assignee nor its replacement credit support provider (if any) is a Qualified Assignee~~,~~<u>; or (iv) the Debtors' inability to assume and assign the Derivative Contract because the applicable Debtor has committed a Default relating to the commencement of a case under the Bankruptcy Code or the insolvency or financial condition of the Debtor;</u> then such Counterparty must serve a written objection. . .

5

## **CONCLUSION**

WHEREFORE, JA Solar respectfully requests that this Court (i) deny the Motion unless the Procedures are amended to leave in place the ability of Counterparties to terminate assumed and assigned Derivative Contracts for Bankruptcy Filing Defaults, and (ii) grant such other and further relief as this Court deems just and proper.

Dated:  Los Angeles, California
        November 26, 2008

                        Skadden, Arps, Slate, Meagher & Flom LLP

                        By:     */s/ Van C. Durrer II*
                               Van C. Durrer II
                        300 S Grand Ave. #3400
                        Los Angeles, CA  90071
                        Telephone:  213-687-5000
                        Facsimile:  213-687-5600

                        Attorneys for Attorneys for JA Solar Holdings Co., Ltd.