# EXHIBIT K

THE COMMON LAW LIBRARY

# CHITTY ON CONTRACTS

TWENTY-NINTH EDITION

VOLUME I

## GENERAL PRINCIPLES

LONDON
SWEET & MAXWELL
2004

**12–024** In conclusion it is submitted that it is neither necessary nor desirable to create yet a fourth category of contractual term—the "fundamental term"—in addition to conditions, warranties and intermediate terms. In *Suisse Atlantique Société d'Armement Maritime SA v N.V. Rotterdamsche Kolen Centrale*,[91] Lord Upjohn defined the expression "fundamental term" in language which clearly indicated that he regarded it as an alternative way of referring to a condition, *i.e.* a term which went to the root of the contract so that any breach of it entitled the innocent party to be discharged. There is therefore strong ground for the view that English law does not recognise any category of "fundamental terms" distinct from conditions.

### (a) *Conditions*

**12–025** **Differing terminology.** The word "condition" is sometimes used, even in legal documents, to mean simply "a stipulation, a provision" and not to connote a condition in the technical sense of that word.[92] Even within the sphere of the technical meaning attached to the word "condition," the terminology employed is, unfortunately, not uniform.[93] There may, for example, be conditions, the failure of which gives no right of action, but which merely suspends the rights and obligations of the parties.[94] The most commonly used sense of the word "condition" is that of an essential stipulation of the contract which one party guarantees is true or promises will be fulfilled. Any breach of such a stipulation entitles the innocent party, if he so chooses, to treat himself as discharged from further performance of the contract, and notwithstanding that he has suffered no prejudice by the breach. He can also claim damages for any loss suffered.

**12–026** **Conditions and other contract terms.** The use of the word "condition" in this sense appears to have originated in the seventeenth century[95]: a stipulation might be regarded as so vital to the contract that its complete and exact performance by one party was a condition precedent to the obligation of the other party to perform his part.[96] In the modern law, the reason why a breach of a condition entitles the innocent party to treat himself as discharged has been said to be that conditions "go so directly to the substance of the contract or, in other words, are so essential to its very nature that their non-performance may fairly be considered

---

[91] [1967] 1 A.C. 361, 422; see below, para.14–021.

[92] *L.G. Schuler A.G. v Wickman Machine Tool Sales Ltd* [1974] A.C. 235; *cf. Skips A/S Nordheim v Syrian Petroleum Ltd* [1984] Q.B. 509.

[93] See Stoljar (1953) L.Q.R. 485.

[94] See below, para.12–027.

[95] See *Pordage v Cole* (1669) 1 Wms.Saund. 319; *Kingston v Preston* (1773) 2 Doug. 689, 691; *Boone v Eyre* (1777) 1 H.Bl. 273n.; *Cutter v Powell* (1795) 6 Term.R. 320; *Hongkong Fir Shipping Co Ltd v Kawasaki Kisen Kaisha* [1962] 2 Q.B. 26, 65; *Cehave N.V. v Bremer Handelsgesellschaft mbH* [1976] Q.B. 44, 57, 72. See also Chalmers, *Sale of Goods* (2nd ed.), p.164; Dawson [1981] C.L.J. 83, 87; and below, para.24–037.

[96] See also (marine insurance) Marine Insurance Act 1906, ss.33–41; *Bank of Nova Scotia v Hellenic Mutual War Risks Association (Bermuda) Ltd* [1992] 1 A.C. 233.

**12–033** **Collateral warranties.** Undertakings may be given that are collateral to another contract.[129] They may be considered to be independent of that other contract either because they cannot fairly be regarded as having been incorporated therein,[130] or because rules of evidence hinder their incorporation,[131] or because the main contract is defective in some way[132] or is subject to certain requirements of form[133] or is made between parties other than those by or to whom the undertaking is given.[134] Such undertakings are often referred to as collateral contracts, or "collateral warranties."

### (c) *Intermediate Terms*

**12–034** **Intermediate terms.** The advantage that arises from the classification of a particular term as a condition is that of certainty[135]: the party affected by the breach of such a term knows at once where he stands, *i.e.* that he is immediately and unequivocally entitled to treat the contract as repudiated and, for example in a contract of sale of goods, to reject the goods.[136] On the other hand, since *any* breach of condition gives rise to this right, it may be exercised irrespective of the gravity of the breach or of the consequences resulting from the breach. The innocent party may have suffered no, or only trifling, loss or damage by reason of the breach, but is nevertheless entitled to refuse further performance of the contract. In recent years, the courts have therefore curtailed the right of discharge which follows from the classification of a term as a condition by the creation of a new category of terms, adopting a more flexible approach to the consequences of breach and tending to encourage, rather than discourage, performance of the contract.[137] In *Hongkong Fir Shipping Co Ltd v Kawasaki Kisen Kaisha Ltd*,[138] the Court of Appeal refused to ascribe to the shipowner's obligation to deliver a seaworthy vessel the character of a condition, and Diplock L.J. said[139]:

> "There are, however, many contractual undertakings of a more complex character which cannot be categorised as being 'conditions' or 'warranties' . . . Of such undertakings all that can be predicated is that some breaches will and others will not give rise to an event which will deprive the party not in default of substantially the whole benefit

---

[129] See above, para.12–004; Wedderburn [1959] Camb.L.J. 58.
[130] *Esso Petroleum Ltd v Mardon* [1976] Q.B. 801.
[131] See below, para.12–095.
[132] *e.g.* for illegality: see below, para.16–170.
[133] *Record v Bell* [1991] 1 W.L.R. 853.
[134] See above, para.12–007.
[135] *A/S Awilco of Oslo v Fulvia Spa (The Chikuma)* [1981] 1 W.L.R. 314, 322; *Bunge Corp. v Tradax Export SA* [1981] 1 W.L.R. 711, 715, 718, 720, 725; *Compagnie Commerciale Sucres et Denrees v Czarnikow Ltd* [1990] 1 W.L.R. 1337, 1348; *Richco International Ltd v Bunge & Co Ltd* [1991] 2 Lloyd's Rep. 93, 99.
[136] Sale of Goods Act 1979, ss.11(3), 12(5A), 13(1A), 14(6), 15(3). But see the modification of remedies for breach of condition in non-consumer sales contained in s.15A of the 1979 Act; Vol.II, para.43–057.
[137] *Cehave N.V. v Bremer Handelsgesellschaft mbH* [1976] Q.B. 44, 70; *Bunge Corp. v Tradax Export SA* [1981] 1 W.L.R. 711, 715, 179.
[138] [1962] 2 Q.B. 26.
[139] At 70.

which it was intended he should obtain from the contract; and the legal consequences of a breach of such undertaking, unless provided for expressly[140] in the contract, depend upon the nature of the event to which the breach gives rise and do not follow automatically from a prior classification of the undertaking, as a 'condition' or a 'warranty.' "

The description that has been applied to such terms is that of "intermediate" or "innominate" terms.[141] Breach of such a term entitles the party not in default to treat the contract as repudiated only if the other party has thereby renounced his obligations under the contract,[142] or rendered them impossible of performance,[143] in some essential respect or if the consequences of the breach are so serious as to deprive the innocent party of substantially the whole benefit which it was intended that he should obtain from the contract.[144]

12–035 **Instances of classification.** A term is most likely to be classified as intermediate if it is capable of being broken either in a manner that is trivial and capable of remedy by an award of damages or in a way that is so fundamental as to undermine the whole contract. Thus, for example, a shipowner's obligation in a charterparty to provide a seaworthy vessel,[145] to load containers without any stability problem[146] or to commence and carry out the voyage agreed on with reasonable despatch,[147] or a clause by which the master of the ship was to act under the charterer's orders,[148] have been classified as intermediate terms, the breach of which does not entitle discharge unless the consequences are such as to deprive the charterer of substantially the whole benefit of the contract or to frustrate the object of the charterer in chartering the ship.[149]

12–036 **Classification of terms in sale of goods contracts.** The Sale of Goods Act 1979 and the Supply of Goods (Implied Terms) Act 1973 expressly define certain implied terms in contracts of sale of goods or hire-purchase as being "conditions" or "warranties."[150] There can be no doubt that such classification is

---

[140] Or impliedly: see *Bunge Corp. v Tradax Export SA* [1981] 1 W.L.R. 711 and below, para.12–040.

[141] *Cehave N.V. v Bremer Handelsgesellschaft mbH* [1976] Q.B. 44, 60; *Bremer Handelsgesellschaft mbH v Vanden Avenne-Izegem P.V.B.A.* [1978] 2 Lloyd's Rep. 109, 113; *Bunge Corp. v Tradax Export SA*, above, at 714, 717, 719, 724; *Aktion Maritime Corp. of Liberia v S. Kasmas & Brothers Ltd* [1987] 1 Lloyd's Rep. 283; *Phibro Energy A.G. v Nissho Iwai Corp.* [1990] 1 Lloyd's Rep. 38, 58–59.

[142] See below, para.24–018.

[143] See below, para.24–028.

[144] See below, para.24–040.

[145] *Hongkong Fir Shipping Co Ltd v Kawasaki Kisen Kaisha Ltd* [1962] 2 Q.B. 26; *Nitrate Corp. of Chile Ltd v Pansuiza Compania de Navegacion SA* [1980] 1 Lloyd's Rep. 638.

[146] *Compagnie Generale Maritime v Diakan Spirit SA* [1982] 2 Lloyd's Rep. 574.

[147] *Freeman v Taylor* (1831) 8 Bing. 124; *Clipsham v Vertue* (1843) 5 Q.B. 565; *MacAndrew v Chapple* (1866) L.R. 1 C.P. 643.

[148] *Federal Commerce & Navigation Co Ltd v Molena Alpha Inc* [1979] A.C. 757.

[149] *MacAndrew v Chapple*, above, at 648.

[150] See Vol.II, paras 38–246, 43–044, 43–061—43–103.

binding. But in *Cehave N.V. v Bremer Handelsgesellschaft mbH*[151] it was argued that s.11(1) of the Sale of Goods Act 1893 created a statutory dichotomy which divided all terms in contracts for the sale of goods into conditions and warranties. The Court of Appeal rejected that argument and held that an express term "shipment to be made in good condition" was an intermediate term the breach of which had to be so serious as to go to the root of the contract in order to entitle the buyer to reject the goods. In *Reardon Smith Line Ltd v Yngvar Hansen-Tangen*[152] two charterparties were entered into in similar terms for the charter of a ship "to be built by the Osaka Shipbuilding Co Ltd and known as Hull No. 354." Owing to her size, the ship was built at a new yard by Oshima Shipbuilding Co Ltd (a company in which Osaka had a 50 per cent. interest) and bore the yard or hull number Oshima 004, although she was still referred to in external documents as "called Osaka 354." The charterers sought to reject the vessel on the ground that, by analogy with contracts of sale of goods, the description of the ship was a condition of the contract, any departure from which justified rejection. The House of Lords held that they were not entitled to do so. On the other hand, terms, for example, in contracts of sale of goods that the goods contracted to be sold are afloat or already shipped,[153] or on board a ship "now at Rangoon"[154] or on a ship that will sail direct to the port of destination,[155] or that they are "under deck,"[156] or as to the date of shipment,[157] have been held to be part of the description of the goods, and conditions. Also, a stipulation as to the place of delivery in an f.o.b. contract[158] and a stipulation "linerterms Rotterdam" in a c.i.f. contract[159] have been held to be conditions.

**Classification of time stipulations.** A number of cases have arisen relating to the question whether contractual stipulations as to the time of performance should be construed as making time of the essence of the contract (*i.e.* as conditions) or as intermediate terms. At common law, stipulations as to the time of performance were normally regarded as being of the essence of a contract.[160] But in equity they were not generally so regarded,[161] in particular in relation to contracts for the sale of land, and today the equitable rule prevails.[162] The relationship between the common law and equitable rules was considered by the **12-037**

[151] [1976] Q.B. 44. See also *Tradax International SA v Goldschmidt* [1977] 2 Lloyd's Rep. 604 (provision as to impurities); *Aktion Maritime Corp. of Liberia v S. Kasmas & Brothers Ltd* [1987] 1 Lloyd's Rep. 283 (condition of vessel on delivery); *Total International Ltd v Addax BV* [1996] 2 Lloyd's Rep. 333 (provision as to quality). Contrast *Tradax Export SA v European Grain & Shipping Co* [1983] 2 Lloyd's Rep. 100.

[152] [1976] 1 W.L.R. 989. See also *Sanko Steamship Co Ltd v Kano Trading Ltd* [1978] 1 Lloyd's Rep. 156.

[153] *Benabu & Co v Produce Brokers Co Ltd* (1921) 37 T.L.R. 609, 851; *Macpherson Train & Co Ltd v Howard Ross & Co Ltd* [1955] 1 W.L.R. 640, 642.

[154] *Oppenheimer v Fraser* (1876) 34 L.T. 524.

[155] *Bergerco U.S.A. v Vegoil Ltd* [1984] 1 Lloyd's Rep. 440.

[156] *Montagu L. Meyer Ltd v Travaru A/B; H Cornelius of Gambleby* (1930) 46 T.L.R. 553; *Messers Ltd v Morrison's Export Co Ltd* [1939] 1 All E.R. 92.

[157] *Bowes v Shand* (1877) 2 App.Cas. 455.

[158] *Petrotrade Inc v Stinnes Handel GmbH* [1995] 1 Lloyd's Rep. 142.

[159] *Soon Hua Seng Co Ltd v Glencore Grain Co Ltd* [1996] 1 Lloyd's Rep. 398.

[160] See below, para.21-011.

[161] See below, para.21-011.

[162] Law of Property Act 1925, s.41; below, para.21-012.

House of Lords in *United Scientific Holdings Ltd v Burnley Borough Council*,[163] where it was held that the time-table specified in rent review clauses for the completion of the various steps for determining the rent payable in respect of the period following the review was not of the essence. It is, however, clear that, although stipulations as to time will not ordinarily be construed as being of the essence, they will be so construed if expressly stated to be such[164] or if the court infers from the nature of the subject-matter of the contract or the surrounding circumstances that the parties intended them to have that effect.[165] In mercantile contracts, where it is of importance that the parties should know precisely what their obligations are and be able to act with confidence in the legal results of their actions, the courts will readily construe a stipulation as to time as a condition of the contract.[166] Thus stipulations, for example, as to the time within which a ship must be nominated[167] or is expected ready to load under a charterparty,[168] goods must be delivered under a contract of sale,[169] the loading port must be nominated,[170] the vessel provided,[171] notice of readiness to load must be given[172] and the goods must be ready to be delivered[173] under an f.o.b. contract, goods must be shipped,[174] documents tendered[175] and notice of appropriation given[176] under a c.i.f. contract, a letter of credit must be opened,[177] or hire paid under a time charter[178] have been held to be conditions, entitling the innocent party in the event of default in punctual performance to treat himself as discharged. But there is no presumption of fact or rule of law that time is of the essence in mercantile

---

163 [1978] A.C. 904 (esp. at 928); below, para.21–012.

164 *Steadman v Drunkle* [1916] 1 A.C. 275, 279; *Financings Ltd v Baldock* [1963] 2 Q.B. 104, 120; *Bunge Corp. v Tradax Export SA* [1980] 1 Lloyd's Rep. 294, 305, 307, 309, 310 (affirmed [1981] 1 W.L.R. 711); *Lombard North Central plc v Butterworth* [1987] Q.B. 527.

165 [1978] A.C. 904, 937, 941, 944, 950, 958; *Bunge Corp. v Tradax Export SA* [1981] 1 W.L.R. 711, 728–729; *Universal Bulk Carriers Ltd v André et Cie SA* [2000] 1 Lloyd's Rep. 459, 464; *B.S. & N. Ltd v Micado Shipping Ltd (The Seaflower)* [2001] 1 Lloyd's Rep. 348, 350, 354; *MSAS Global Logistics Ltd v Power Packaging Inc.* [2003] EWHC 1393 (Ch.).

166 *Bunge Corp. v Tradax Export SA*, above, at 716.

167 *Greenwich Marine Inc v Federal Commerce and Navigation Co Inc* [1985] 1 Lloyd's Rep. 580.

168 *The Mihalis Angelos* [1971] 1 Q.B. 164. See also *Behn v Burness* (1863) 3 B. & S. 751; *Compania de Naviera Nedelka SA v Tradax Internacional SA* [1974] Q.B. 264.

169 *Hartley v Hymans* [1920] 3 K.B. 475, 484; *Scandinavian Trading Co A/B v Zodiac Petroleum SA* [1981] 1 Lloyd's Rep. 81.

170 *Gill & Duffus SA v Société pour l'Exportation des Sucres* [1986] 1 Lloyd's Rep. 322.

171 *Olearia Tirrena SpA v N.V. Algemeene Oliehandel* [1973] 2 Lloyd's Rep. 86.

172 *Bunge Corp. v Tradax Export SA*, above.

173 *Compagnie Commerciale Sucres et Denrees v Czarnikow Ltd* [1990] 1 W.L.R. 1337.

174 *Bowes v Shand* (1877) 2 App.Cas. 455.

175 *Toepfer v Lenersan-Poortman N.V.* [1980] 1 Lloyd's Rep. 143; *Cerealmangimi SpA v Toepfer* [1981] 1 Lloyd's Rep. 337.

176 *Reuter v Sala* (1879) 4 C.P.D. 239; *Bunge GmbH v Landbouwbelang G.A.* [1980] 1 Lloyd's Rep. 458. See also *Société Italo-Belge pour le Commerce et L'Industrie SA v Palm and Vegetable Oils (Malaysia) Sdn. Bhd.* [1981] 2 Lloyd's Rep. 695 (notice of shipment).

177 *Pavia & Co SpA v Thurmann-Nielsen* [1952] 1 Lloyd's Rep. 153; *Ian Stach Ltd v Baker Bosley Ltd* [1958] 2 Q.B. 130; *Nichimen Corp. v Gatoil Overseas Inc* [1987] 2 Lloyd's Rep. 46; *Transpetrol Ltd v Transol Olieprodukten B.V.* [1989] 1 Lloyd's Rep. 309. See also *Warde v Feedex International Inc* [1985] 2 Lloyd's Rep. 289 (nomination of bank). Contrast *State Trading Corp. of India Ltd v M. Golodetz Ltd* [1989] 2 Lloyd's Rep. 277 (opening of counter-trade guarantee).

178 *Mardorf Peach & Co Ltd v Attica Sea Carriers Corp. of Liberia* [1977] A.C. 850; *A/S Awilco of Oslo v Fulvia Spa (The Chikuma)* [1981] 1 W.L.R. 314.

contracts[179] and a stipulation as to time in such a contract, may on its true construction, be found to be merely an intermediate term.[180]

**Effect of failure to perform on time.** Where one party to a contract fails to perform an obligation by the date fixed by the contract, the other party may be entitled, in certain circumstances, immediately to serve notice that he will treat the contract as discharged if the obligation is not performed within a reasonable time as stipulated in the notice. This matter is discussed in Chapter 21 (Performance) later in this work[181]; but it is to be noted that, as a general rule, where the original stipulation as to the time of performance was merely an intermediate term, failure to perform the obligation within the time limited by the notice does not, in itself, constitute a repudiation irrespective of the consequences of the breach.[182] **12–038**

**Force majeure clauses.** A clause in a contract of sale excusing delivery, or permitting the seller to postpone or suspend delivery upon the happening of events beyond his control (a *force majeure* clause)[183] may require that certain procedures are to be followed or notices given to the buyer before the seller is entitled to rely on the clause. Such measures may be a condition precedent on which the availability of the protection provided by the clause depends, or merely an intermediate term, the non-compliance with which does not necessarily deprive the seller of his right to rely on the clause. The classification depends, as Lord Wilberforce said in *Bremer Handelsgesellschaft v Vanden Avenne-Izegem P.V.B.A.*[184] on "(i) the form of the clause itself, (ii) the relation of the clause to the contract as a whole, (iii) general considerations of law." In that case, the House of Lords had to consider two such provisions. The first was a prohibition of export clause which required the sellers to advise the buyers "without delay" of impossibility of shipment by reason of such prohibition.[185] This was held to be an intermediate term, since it did not establish any definite time limit within which the advice was to be given.[186] The second provision, which took effect upon a number of events of *force majeure*, established a time-table of fixed periods within which the occurrence was to be notified, an extension of the **12–039**

---

[179] *Bunge Corp. v Tradax Export SA*, above, at 719; *State Trading Corp. of India Ltd v M. Golodetz Ltd* [1989] 2 Lloyd's Rep. 277; *Compagnie Commerciale Sucres et Denrees v Czarnikow Ltd*, above, at 1347; *Phibro Energy A.G. v Nissho Iwai Corp.* [1991] 1 Lloyd's Rep. 38, 45, 48.

[180] See, for example, *State Trading Corp. of India Ltd v M. Golodetz Ltd*, above (opening of counter trade guarantee); *Re Olympia & York Canary Wharf Ltd (No.2)* [1993] B.C.C. 159 (indemnity clause); *Torvald Klaveness A/S v Arni Maritime Corp.* [1994] 1 W.L.R. 1465 (charterer's re-delivery of ship); *Universal Bulk Carriers Ltd v André et Cie SA* [2000] 1 Lloyd's Rep. 459 (obligation to narrow laycan period prior to first lay day).

[181] Below, para.21–014.

[182] See *Eshun v Moorgate Mercantile Co Ltd* [1971] 1 W.L.R. 722, 726; *Behzadi v Shaftesbury Hotels Ltd* [1992] Chs 1, 12; *Re Olympia & York Canary Wharf Ltd (No.2)*, above; below, para.21–014.

[183] See below, para.14–137.

[184] [1978] 2 Lloyd's Rep. 109, 113.

[185] The clause is not accurately set out in the headnote.

[186] But see *Mamidoil-Jetoil Greek Petroleum Co SA v Okta Crude Oil Refinery AD* [2002] EWHC 2210 (Comm); [2003] 1 Lloyd's Rep. 1 ("shall give prompt notice to the other party" held to be a condition) [2003] EWCA Civ 617; [2003] 2 Lloyd's Rep. 645 at [34].

dispute to arbitration, and there then follows a substantial period of delay during which neither party seeks to proceed with the reference to arbitration, each party is thereby guilty of a continuing breach of contract with the result that "neither [party] can rely on the other's breach as giving him a right to treat the primary obligations of each to continue with the reference as brought to an end."[110] While a party who has committed a repudiatory breach of contract is not entitled to enforce the contract against a party who is ready and willing to perform his obligations under the contract, it is suggested that it does not follow that the fact that a party has committed a repudiatory breach should preclude him from accepting a repudiatory breach committed by the other party. As has already been stated, until the repudiatory breach has been accepted, the primary obligations of both parties remain unaffected and therefore it is suggested that the proposition that, in such a case, either party is entitled to accept the breach is more consistent with the underlying principles of English law.[111]

**24-017 Circumstances of discharge.**

"The three sets of circumstances giving rise to a discharge of contract are tabulated by Anson as: (1) renunciation by a party of his liabilities under it; (2) impossibility created by his own act; and (3) total or partial failure of performance. In the case of the first two, the renunciation may occur or the impossibility be created either before or at the time for performance. In the case of the third it can occur only at the time or during the course of performance. Moreover, if the third be partial, the failure must occur in a matter which goes to the root of the contract. All these acts may be compendiously described as repudiation, though that expression is more particularly used of renunciation before the time for performance has arrived."[112]

## 2. RENUNCIATION

**24-018 Renunciation.** A renunciation of a contract occurs when one party by words or conduct evinces an intention not to perform, or expressly declares that he is or will be unable to perform, his obligations under the contract in some essential

[110] *Bremer Vulkan Schiffbau und Maschinenfabrik v South India Shipping Corp. Ltd* [1981] A.C. 909, 987–988.

[111] See generally Treitel, *The Law of Contract* (11th ed., 2003), p.823.

[112] *Heyman v Darwins Ltd* [1942] A.C. 356, 397; *Universal Cargo Carriers Corp. v Citati* [1957] 2 Q.B. 401, 436; affirmed in part [1957] 1 W.L.R. 979, and reversed in part [1958] 2 Q.B. 254. The question whether repudiation by "renunciation" of a contract differs in principle from what may be termed repudiation by non-performance was left open by Langley J. in *Amoco (UK) Exploration Co v British American Offshore Ltd*, unreported, QBD (Commercial Court), November 16, 2001, at [105]. It may be that it is easier to establish a repudiatory breach in the case of a renunciation than in the other categories. Thus in *Astea (UK) Ltd v Time Group Ltd* [2003] EWHC 725 (TCC); [2003] All E.R. (D.) 212 (Apr) it was observed (at [151]) that "a flat refusal to continue performance will probably amount to a repudiation however much work has been done". Matters are likely to be more difficult in the case where the breach is alleged to take the form of defective work rather than an outright refusal to work.

respect.[113] The renunciation may occur before or at the time fixed for performance.[114] An absolute refusal by one party to perform his side of the contract will entitle the other party to treat himself as discharged,[115] as will also a clear and unambiguous assertion by one party that he will be unable to perform when the time for performance should arrive.[116] Short of such an express refusal or declaration, however, the test is to ascertain whether the action or actions of the party in default are such as to lead a reasonable person to conclude that he no longer intends to be bound by its provisions.[117] The renunciation is then evidenced by conduct. Also the party in default "may intend in fact to fulfil (the contract) but may be determined to do so only in a manner substantially inconsistent with his obligations"[118] or may refuse to perform the contract unless the other party complies with certain conditions not required by its terms.[119] In such a case, there is little difficulty in holding that the contract has been renounced.[120] Nevertheless, not every intimation of an intention not to perform or of an inability to perform some part of a contract will amount to a renunciation. Even a deliberate breach, actual or threatened, will not necessarily entitle the innocent party to treat himself as discharged, since it may sometimes be that such a breach can appropriately be sanctioned in damages.[121] If the contract is entire and indivisible,[122] that is to say, if it is expressly or impliedly agreed that the obligation of one party is dependent or conditional upon complete performance by the other, then a refusal to perform or declaration of inability to perform any part of the agreement will normally entitle the party in default to treat himself as discharged from further liability.[123] But in any other case: "It is not a mere refusal or omission of one of the contracting parties to do something which he ought to do, that will justify the other in repudiating the contract; but there must

---

113 See also *Martin v Stout* [1925] A.C. 359; *Brinkibon Ltd v Stahag Stahl und Stahlwarenhandelgesellschaft mbH* [1980] 2 Lloyd's Rep 556; affirmed [1983] 2 A.C. 34 (place of renunciation).

114 Where the renunciation takes place before the time fixed for performance, it is known as an anticipatory breach: below, para.24–021.

115 *Freeth v Burr* (1874) L.R. 6 C.P. 208, 214; *Thompson v Corroon* (1992) 42 W.I.R. 157.

116 *Anchor Line Ltd v Keith Rowell Ltd* [1980] 2 Lloyd's Rep. 351; *The Munster* [1982] 1 Lloyd's Rep. 370; *Texaco Ltd v Eurogulf Shipping Co Ltd* [1987] 2 Lloyd's Rep. 541.

117 *Universal Cargo Carriers Corp. v Citati* [1957] 2 Q.B. 401, 436; affirmed in part [1957] 1 W.L.R. 979 and reversed in part [1958] 2 Q.B. 254. See also *Morgan v Bain* (1874) L.R. 10 C.P. 15; *Bloomer v Bernstein* (1874) L.R. 9 C.P. 588; *Forslind v Becheley-Crundall*, 1922, S.C.(HL) 173; *Maple Flock Co v Universal Furniture Products (Wembley) Ltd* [1934] 1 K.B. 148, 157; *Laws v London Chronicle (Indicator Newspapers) Ltd* [1959] 1 W.L.R. 698; *Chilean Nitrate Sale Corp. v Marine Transportation Co Ltd* [1982] 1 Lloyd's Rep. 570, 580; *Re Olympia & York Canary Wharf Ltd (No.2)* [1993] B.C.C. 159, 168; *Nottingham Building Society v Eurodynamics plc* [1995] F.S.R. 605, 611–612. *cf.* below, para.24–019.

118 *Ross T. Smyth & Co v Bailey, Son & Co* [1940] 3 All E.R. 60, 72; *Federal Commerce & Navigation Co Ltd v Molena Alpha Inc.* [1979] A.C. 757.

119 *B.V. Oliehandel Jongkind v Coastal International Ltd* [1983] 2 Lloyd's Rep. 463.

120 *Withers v Reynolds* (1831) 2 B. & Ad. 882; *Booth v Bowron* (1892) 8 T.L.R. 641.

121 *Suisse Atlantique Société d'Armement Maritime SA v N.V. Rotterdamsche Kolen Centrale* [1967] 1 A.C. 261, 365. See below, para.24–041.

122 See above, para.21–027; below, para.24–043.

123 *Longbottom & Co Ltd v Bass Walker & Co Ltd* [1922] W.N. 245. See also *Ebbw Vale Steel Co v Blaina Iron Co* (1901) 6 Com.Cas. 33.

be an absolute refusal to perform his side of the contract."[124] If one party evinces an intention not to perform or declares his inability to perform some, but not all, of his obligations under the contract, then the right of the other party to treat himself as discharged depends on whether the non-performance of those obligations will amount to a breach of a condition of the contract[125] or deprive him of substantially the whole benefit which it was the intention of the parties that he should obtain from the obligations of the parties under the contract then remaining unperformed.[126] Words or conduct which do not amount to a renunciation will not justify a discharge.[127]

24-019 **Unequivocal.** The renunciation must be "made quite plain."[128] In particular, where there is a genuine dispute as to the construction of a contract, the courts may be unwilling to hold that an expression of an intention by one party to carry out the contract only in accordance with his own erroneous interpretation of it amounts to a repudiation[129]; and the same is true of a genuine mistake of fact[130] or law.[131] Even the giving of notice of rescission, or the commencement of

---

[124] *Freeth v Burr* (1878) L.R. 9 C.P. 208, 213, 214; *Chilean Nitrate Sales Corp. v Marine Transportation Co Ltd*, above, at p.572; *Aktion Maritime Corp. of Liberia v S. Kasmas & Brothers Ltd* [1987] 1 Lloyd's Rep. 283, 306; *Torvald Klaveness A/S v Arni Maritime Corp.* [1994] 1 W.L.R. 1465, 1476.

[125] See above, para.12-025; below, para.24-039.

[126] *Federal Commerce & Navigation Co Ltd v Molena Alpha Inc.* [1979] A.C. 757; *Afovos Shipping Co SA v Pagnan & Filli* [1983] 1 W.L.R. 195, 203; *Weeks v Bradshaw* [1993] E.G.C.S. 65; *Amoco (UK) Exploration Co v British American Offshore Ltd* unreported, QBD (Commercial Court), November 16, 2001, at [105]. When assessing the nature and effects of the breach the court is concerned to do so objectively: *Shyam Jewellers Ltd v Cheeseman* [2001] EWCA Civ 1818 at [58].

[127] *Franklin v Miller* (1836) 4 A. & E. 499; *Wilkinson v Clements* (1872) L.R. 8 Ch.App. 96; *Re Phoenix Bessemer Steel Co* (1876) 4 Ch.D. 108; *Cornwall v Henson* [1900] 2 Ch. 298; *Dominion Coal Co Ltd v Dominion Iron and Steel Co Ltd* [1909] A.C. 293; *Household Machines v Cosmos Exports* [1947] K.B. 217; *Thorpe v Fasey* [1949] Ch. 649; *Peter Dumenil & Co Ltd v James Ruddin Ltd* [1953] 1 W.L.R. 815.

[128] *Spettabile Consorzio Veneziana di Armamento di Navigazione v Northumberland Shipbuilding Co Ltd* (1919) 121 L.T. 628, 634, 635; *Woodar Investment Development Ltd v Wimpey Construction UK Ltd* [1980] 1 W.L.R. 277, 287, 288; *Anchor Line Ltd v Keith Rowell Ltd* [1980] 2 Lloyd's Rep. 351, 353; *Thompson v Corroon* (1993) 42 W.I.R. 157; *Nottingham Building Society v Eurodynamics plc* [1995] F.S.R. 605; *Jaks (UK) Ltd v Cera Investment Bank SA* [1998] 2 Lloyd's Rep. 89, 92-93. This proposition applies to words and conduct said to demonstrate that a party is persisting in an earlier repudiation as well as to the earlier repudiation itself (*Safehaven Investments Inc. v Springbok Ltd* (1996) 71 P. & C.R. 59, 69). See also *Warinco A.G. v Samor SpA* [1979] 1 Lloyd's Rep. 450; *Metro Meat Ltd v Fares Rural Co Pty Ltd* [1985] 2 Lloyd's Rep. 13; *Sanko Steamship Co Ltd v Eacom Timber Sales Ltd* [1987] 1 Lloyd's Rep. 487; *Alfred C. Toepfer International GmbH v Itex Itagram Export SA* [1993] 1 Lloyd's Rep. 360, 361; *Thompson v Corroon* (1993) 42 W.I.R. 157.

[129] *James Shaffer Ltd v Findlay Durham & Brodie* [1953] 1 W.L.R. 106; *Sweet & Maxwell Ltd v Universal News Services Ltd* [1964] 2 Q.B. 699; *Woodar Investment Development Ltd v Wimpey Construction UK Ltd, above; Telfair Shipping Corp. v Athos Shipping Co SA* [1983] 1 Lloyd's Rep. 127; *The Design Company v Elizabeth King*, unreported, July 7, 1992, CA; *Vaswani v Italian Motors (Sales and Services) Ltd* [1996] 1 W.L.R. 270; *Mitsubishi Heavy Industries Ltd v Gulf Bank K.S.C.* [1997] 1 Lloyd's Rep. 343, 354; *Orion Finance Ltd v Heritable Finance Ltd*, unreported, Court of Appeal, March 10, 1997.

[130] *Kent v Godts* (1855) 26 L.T.(o.s.) 88; *Peter Dumenil & Co Ltd v James Ruddin Ltd*, above; *Alfred C. Toepfer v Peter Cremer* [1975] 2 Lloyd's Rep. 118.

[131] *Freeth v Burr* (1874) L.R. 9 C.P. 208, 214; *Mersey Steel & Iron Co v Naylor Benzon & Co* (1884) 9 App.Cas. 434. Contrast *Federal Commerce & Navigation Co Ltd v Molena Alpha Inc.* [1979] A.C. 757.