# EXHIBIT L

## LSTA BILATERAL NETTING AGREEMENT – DISTRESSED

**LEHMAN COMMERCIAL PAPER INC.**
745 Seventh Avenue-5th Floor
New York, NY 10019

October __, 2008

Longacre Capital Partners (QP), L.P.
c/o Longacre Management, LLC
810 Seventh Avenue – 33rd Floor
New York, New York 10019

Ladies and Gentlemen:

  Reference is made to: (i) that certain LSTA Distressed Trade Confirmation (the "First Confirmation"), with a trade date of April 18, 2008, between Longacre Capital Partners (QP) L.P. ("Original Seller") and Lehman Commercial Paper Inc. ("Original Buyer") (each a "Party" and collectively the "Parties"), pursuant to which Original Seller agreed to sell to Original Buyer, and Original Buyer agreed to purchase from Original Seller, $525,000.00 principal amount of Loans extended under that certain Credit Agreement dated as of January 3, 2007 among Tropicana Las Vegas Resort & Casino LLC (f/k/a Wimar Landco, LLC), as Borrower, Tropicana Las Vegas Holdings, LLC (f/k/a Wimar Landco Intermediate Holdings, LLC), the Lenders party thereto from time to time, Credit Suisse, as Administrative Agent and Collateral Agent, Credit Suisse Securities (USA) LLC, as Sole Bookrunner and Sole Lead Arranger, Barclays Bank PLC and Société Générale, as Co-Lead Arrangers and Co-Syndication Agents, and The Royal Bank of Scotland, PLC and ING Capital LLC, as Co-Documentation Agents (the "Credit Agreement"), at the purchase rate described in the First Confirmation; and (ii) that certain LSTA Distressed Trade Confirmation (the "Second Confirmation"), with a trade date of April 25, 2008, between Original Seller and Original Buyer, pursuant to which Original Buyer agreed to sell to Original Seller, and Original Seller agreed to purchase from Original Buyer, $350,000.00 principal amount of Loans extended under the Credit Agreement, at the purchase rate described in the Second Confirmation. Capitalized terms used but not defined herein shall have the meanings specified in the Credit Agreement. The First Confirmation and the Second Confirmation are referred to collectively herein as the "Confirmations".

  This Netting Agreement reflects the agreement of Original Seller and Original Buyer to net the transactions described above and, in consideration of the mutual covenants and agreements contained herein, Original Seller and Original Buyer agree that Original Seller shall pay to Original Buyer upon the execution and delivery of this Netting Agreement the amount specified (the "Netting Amount") in Schedule 1 hereto, calculated as set forth therein. Original Seller shall pay the Netting Amount to Original Buyer by wire transfer of immediately available funds to Original Buyer's account specified on Schedule 2 hereto.

NYC:176867.1

Upon the receipt by Original Buyer from Original Seller of the Netting Amount, the Confirmations shall be deemed fully performed and satisfied and each of Original Seller and Original Buyer shall be deemed to have fully performed and satisfied all of its rights and obligations under the Confirmations; provided, however, that the First Confirmation shall remain unmodified and in full force and effect solely with respect to Original Seller's obligation to sell to Original Buyer and Original Buyer's obligation to purchase from Original Seller, $175,000.00 principal amount of Loans extended under the Credit Agreement at the purchase rate set forth in the First Confirmation.

Should either Party receive any interest or fees that the other Party is entitled to receive pursuant to the terms of the Confirmations, the recipient Party shall pay such amount to the other Party within two business days of the recipient Party's receipt thereof in the form received by it.

Each Party represents and warrants to the other Party that (i) it has full power and authority to enter into this Netting Agreement and the transactions contemplated hereby; and (ii) this Netting Agreement and the transactions contemplated hereby have been duly authorized, are valid and enforceable against it, are not in contravention of any law, order or agreement by which it is bound and do not require any consent, notice or filing of any kind.

Each Party agrees that it shall not disclose the contents of this Netting Agreement unless required by applicable law, regulation or legal process without the prior written consent of the other Party; provided, however, that each Party may disclose the contents of this Netting Agreement to (a) any professionals employed or engaged by such Party, (b) any governmental authority or self-regulatory entity having or asserting jurisdiction over it or (c) enforce its rights and remedies hereunder. Each of the persons and entities to which disclosure may be made pursuant to subclause (a) shall be instructed to keep such disclosed information confidential on the same terms as provided in this Netting Agreement.

All payments to be made hereunder shall be made by wire transfer of immediately available funds pursuant to the wire instructions for the applicable recipient set forth on Schedule 2 hereto, free and clear of any set-off, deduction or withholding of any kind. This Netting Agreement, which may be executed by telecopy, facsimile or other form of electronic transmission in multiple counterparts, represents the complete understanding of the Parties with respect to the subject matter hereof, may be amended or modified only in writing and shall be governed by, and construed in accordance with, the internal laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Each Party to this Netting Agreement hereby irrevocably consents to the jurisdiction of the United States District Court for the Southern District of New York located in the Borough of Manhattan and the courts of the State of New York located in the County of New York in any action to enforce, interpret or construe any provision of this Netting Agreement.

*(signatures on following page)*

NYC:176867.1

      Please acknowledge your agreement with the foregoing by signing in the space provided below.

Sincerely,

**LEHMAN COMMERCIAL PAPER INC.**

By: _____
     Name:
     Title:

Accepted and Agreed as of the Date Above

**LONGACRE CAPITAL PARTNERS (QP) L.P.**

By:    Longacre Management LLC, Its Managing Partner

By: _____ [signature]
    Name:
    Title:  **STEVEN WEISSMAN**
           **MANAGER**

NYC:176867.1



## PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| Trade Date: | April 18, 2008 |
| Agreement Date: | October __, 2008 |
| Seller: | Longacre Capital Partners (QP), L.P. |
| Buyer: | Lehman Commercial Paper Inc. |
| Credit Agreement: | Credit Agreement dated as of January 3, 2007 among Tropicana Las Vegas Resort & Casino LLC (f/k/a Wimar Landco, LLC), as Borrower, Tropicana Las Vegas Holdings, LLC (f/k/a Wimar Landco Intermediate Holdings, LLC), the Lenders party thereto from time to time, Credit Suisse, as Administrative Agent and Collateral Agent, Credit Suisse Securities (USA) LLC, as Sole Bookrunner and Sole Lead Arranger, Barclays Bank PLC and Société Générale, as Co-Lead Arrangers and Co-Syndication Agents, and The Royal Bank of Scotland, PLC and ING Capital LLC, as Co-Documentation Agents |
| Borrower: | Tropicana Las Vegas Resort & Casino LLC (f/k/a Wimar Landco, LLC) |
| Purchase Amount(s): | $175,000.00 |
| Tranche(s): | Loans |
| CUSIP Number(s), if available: | N/A |
| Pre-Settlement Date Accruals Treatment: | ☒ Settled Without Accrued Interest<br>☐ Trades Flat |
| Type of Assignment: | ☐ Original Assignment<br>☒ Secondary Assignment |
| Immediate Prior Seller (if any): | Credit Suisse Loan Funding LLC |
| Borrower in Bankruptcy: | Yes ☒    No ☐ |
| Delivery of Credit Documents: | Yes ☐    No ☒ |

LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006. All rights reserved.

| TRANSACTION SUMMARY | | |
|---|---|---|
| Netting Arrangements: | Yes ☐ | No ☒ |
| Flip Representations: | Yes ☐[1] | No ☒ |
| Step-Up Provisions: | Yes ☐[1] | No ☒ |
| | Shift Date[2]: | N/A |
| Transfer Notice: | Yes ☐[3] | No ☒ |

A. **DEFINITIONS**

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement. Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement. Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement. If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Credit Suisse, as administrative agent.

"Assignment" means the Assignment and Acceptance that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
  ☐ none.
  ☒ means the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re Tropicana Entertainment, LLC, et al. Case No. 08-10856 (KJC) (Jointly Administered).

"Bankruptcy Court" select one:
  ☐ none.
  ☒ means the United States Bankruptcy Court for the District of Delaware (and, if appropriate, the United States District Court for that District).

"Bar Date" select one:
  ☐ not applicable.

---

[1] The Parties cannot specify "Yes" to both "Flip Representations" and "Step-Up Provisions" unless they set forth appropriate modifications in Section H. Neither "Flip Representations" nor "Step-Up Provisions" applies to original assignments.

[2] Specify a Shift Date only if "Yes" is specified opposite "Step-Up Provisions" and if the second box is selected in the definition of Covered Prior Seller. The Shift Date is the date that the Parties agree is the closest possible approximation for when the market convention for transferring the Loans and Commitments (if any) shifted from a par/near par documentation basis to a distressed documentation basis. In consulting as to the appropriate date, the Parties may refer to published results of an anonymous LSTA poll of disinterested dealers as to such dealers' views regarding the Shift Date or, if results have not been published with respect to the Credit Agreement, either Party may request in writing that the LSTA endeavor to conduct such a poll. To initiate a poll, send a request that includes the name of Borrower and either the CUSIP number (if available) or the name and date of the Credit Agreement to the LSTA at lstashiftdatepolls@lsta.org. The results of such LSTA polls are available to facilitate discussions between the Parties and have no binding effect.

[3] "Yes" can be elected only if "Yes" is specified opposite "Borrower in Bankruptcy" in the Transaction Summary.

NYC:176870.1                                    2

☐ none has been set.
☒ means September 26, 2008.

"Buyer Purchase Price" select one:
    ☒ not applicable.
    ☐ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
    ☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Commitments" select one:
    ☒ none.
    ☐ means [identify applicable commitment tranche(s) using Credit Agreement definitions] in the principal amount of $/£/€_____ [in each case specify the aggregate amount of the Loans, the Unfunded Commitments and the portion, if any, of the Commitments that is irrevocably "frozen" (i.e., that is not subject to future drawing)].

"Covered Prior Seller" select one:
    ☒ not applicable.
    ☐ means each Prior Seller that transferred the Loans and Commitments (if any)[4] on or after the Shift Date [but prior to the date on which _____[5] transferred such Loans and Commitments (if any)].[6]

"Filing Date" select one:
    ☐ none.
    ☒ means May 5, 2008.

"Loans" means Loans in the outstanding principal amount of $175,000.00.

"Netting Letter" select one:
    ☒ not applicable.
    ☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"Original Buyer" select one:
    ☒ not applicable.
    ☐ means [specify original buyer in the netting arrangement].

"Penultimate Buyer" select one:
    ☒ not applicable.
    ☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
    ☐ means [_____].

"Required Consents" means the written consent of the Agent.

"Seller Purchase Price" select one:

---

[4] If applicable to only a portion of the Loans and Commitments (if any), specify the portion that applies, e.g., "each Prior Seller that transferred the [Name of applicable Covered Prior Seller] Loans (as defined in Section 1 of the Annex)."

[5] Specify the first Entity that transferred the Loans and Commitments (if any) on a distressed documentation basis on or after the Shift Date.

[6] The bracketed language applies where the relevant Predecessor Transfer Documents include a distressed trade that settled after the par/near par trade which settled on or after the Shift Date.

NYC:176870.1                              3

☒ not applicable.
☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"Transfer Fee" means the $3,500.00 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" means that part of the Commitments that has not been funded in the form of loans, advances, letter of credit disbursements or otherwise under the Credit Agreement, which is in the principal amount of $0.00.

B. **SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)**

The following specified terms shall apply to the sections referenced in this Section B:

|  | Flat Representation | Flip Representation | Step-Up Representation |
|---|---|---|---|
|  | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (<u>Purchase Price</u>); <u>Netting Arrangements</u>.
If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

"(k) [intentionally omitted]."[7]

Section 4.1(r) (<u>Predecessor Transfer Agreements</u>).
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (<u>Other Documents</u>).
☒ None.
☐ The following: _____.

Section 4.1(v) (<u>Proof of Claim</u>).
☒ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
  ☒ the Agent on behalf of the Lenders.
  ☐ Seller or a Prior Seller.
☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.
☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

**C.    SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)**

C.1    Section 5.1(n) (<u>Buyer Status</u>).

☐ Buyer is not a Lender.
☒ Buyer is a Lender.
☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.
☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

C.2    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

**D.    SECTION 6 (INDEMNIFICATION)**

Section 6.1 (<u>Seller's Indemnities</u>); <u>Step-Up Indemnities</u>.

(i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

(ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

---

[7] Seller should add, and Buyer should cause Original Buyer or Penultimate Buyer, as applicable, to add, a comparable representation to the Netting Letter in lieu of this representation.

### E. SECTION 7 (COSTS AND EXPENSES)

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
  ☐ one-half thereof.
  ☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to
  ☐ one-half thereof.
  ☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.
☒ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.
☐ There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

### F. SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)

**F.1** Section 8.2 (Distributions); Step-Up Distributions Covenant.

(i) If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

(ii) If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2** Section 8.4 (Wire Instructions).

Buyer's Wire Instructions:

Bank:            Citibank NYC
ABA Number:      021-000-089
Account Number:  30434133
A/C:             LCPI Bank Loans
Reference:       Wimar Landco from Longacre Capital Partners (QP), L.P.

Seller's Wire Instructions:

Bank Name:       JP Morgan Chase
ABA#:            021-000-021
Account Name:    Longacre Capital Partners (QP), L.P.
Account Number:  957-000073

### G. SECTION 9 (NOTICES)

Buyer's Address for Notices and Delivery:

**Loan Administration/Operations Contact:**
(For Notices on Borrowings, Paydowns, Interest and Fees)

Lehman Commercial Paper Inc.
745 Seventh Avenue, 16th Floor
New York, New York 10019
Attention: Raymond Chin
E-mail: Raymond.chin@lehman.com
Phone: 212-526-6240

NYC:176870.1                          6

Facsimile: 646-758-4993

**Credit Contact/Intralinks Contact:**
(For Credit Documents & Financial Statements)

Lehman Commercial Paper Inc.
745 Seventh Avenue, 5th Floor
New York, New York 10019
Attention: Randall Braunfeld
E-mail: randall.braunfeld@lehman.com
Phone: (212) 526-3873
Facsimile: (646) 758-4579

Seller's Address for Notices and Delivery:

**Private Side Contact:**

Attn: Christopher Smith
810 Seventh Avenue, 33rd Floor
New York, New York 10019
Phone: 212-259-4323
Fax: 212-259-4347

**Loan Activity To:**

Attention: Marc Simon
Address: 810 Seventh Avenue – 33rd Floor
New York, New York 10019
Phone: 212-259-4310
Fax: 212-259-4347

**H.      SECTION 26 (FURTHER PROVISIONS)**

The parties agree that the following provisions shall be added to Section 26 of the Purchase and Sale Agreement:

1. The Seller and Buyer agree that Section 4.1(c)(ii) of the Standard Terms is amended to provide that, after the word "party", the following is added: "<u>provided, however</u>, that Seller makes no representation or warranty as to whether the consent of any Gaming Authority (as defined in the Credit Agreement) is required for this Transaction other than as set forth in Section 4.1(x) below".

2. The Seller and Buyer agree that Section 4.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(x) Based upon the Buyer's representations and warranties to Seller, Seller has no reason to believe that the consent of any Gaming Authority (as defined in the Credit Agreement) is required for the Transaction."

3. The Seller and Buyer agree that Section 5.1 of the Standard Terms is amended by adding the following representation and warranty at the end thereof: "(o) Buyer has no reason to believe that the consent of any Gaming Authority (as defined in the Credit Agreement) is required for the Transaction."

NYC:176870.1                                7

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**LONGACRE CAPITAL PARTNERS (QP) L.P.**

By:   Longacre Management LLC, Its Managing Partner

By: _____/s/_____
  Name:
  Title:   STEVEN WEISSMAN
       MANAGER

**BUYER**

**LEHMAN COMMERCIAL PAPER INC.**

By: _____
  Name:
  Title:

## ASSIGNMENT AND ACCEPTANCE

Reference is made to the Credit Agreement dated as of January 3, 2007 (as amended, restated, supplemented or otherwise modified from time to time, the "*Credit Agreement*"), among Tropicana Las Vegas Resort & Casino LLC (f/k/a Wimar Landco, LLC), a Delaware limited liability company (the "*Borrower*"), Tropicana Las Vegas Holdings, LLC (f/k/a Wimar Landco Intermediate Holdings, LLC), a Delaware limited liability company, the lenders from time to time party thereto (the "*Lenders*") and Credit Suisse, as administrative agent (in such capacity, the "*Administrative Agent*") and as collateral agent for the Lenders. Terms defined in the Credit Agreement are used herein with the same meanings.

1. For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes, from the Assignor, effective as of the Effective Date set forth below (but not prior to the registration of the information contained herein in the Register pursuant to Section 9.04(e) of the Credit Agreement), the interests set forth below (the "*Assigned Interest*") in the Assignor's rights and obligations under the Credit Agreement and the other Loan Documents, including, without limitation, the amounts and percentages set forth below of (i) the Commitments of the Assignor on the Effective Date and (ii) the Loans owing to the Assignor which are outstanding on the Effective Date. Each of the Assignor and the Assignee hereby makes and agrees to be bound by all the representations, warranties and agreements set forth in Section 9.04(c) of the Credit Agreement, a copy of which has been received by each such party. From and after the Effective Date (i) the Assignee shall be a party to and be bound by the provisions of the Credit Agreement and, to the extent of the interests assigned by this Assignment and Acceptance, have the rights and obligations of a Lender thereunder and under the Loan Documents and (ii) the Assignor shall, to the extent of the interests assigned by this Assignment and Acceptance, relinquish its rights and be released from its obligations under the Credit Agreement.

2. This Assignment and Acceptance is being delivered to the Administrative Agent together with (i) if the Assignee is organized under the laws of a jurisdiction outside the United States, any forms referred to in Section 2.19(e) of the Credit Agreement, duly completed and executed by such Assignee, (ii) if the Assignee is not already a Lender under the Credit Agreement, a completed Administrative Questionnaire and (iii) if required by Section 9.04(b) of the Credit Agreement, a processing and recordation fee of $3,500.

3. This Assignment and Acceptance shall be governed by and construed in accordance with the laws of the State of New York.

Date of Assignment: October __, 2008

Legal Name of Assignor ("*Assignor*"):  Longacre Capital Partners (QP), L.P.

Legal Name of Assignee ("*Assignee*"):  Lehman Commercial Paper Inc.

Assignee's Address for Notices:

**Loan Administration/Operations Contact:**
(For Notices on Borrowings, Paydowns, Interest and Fees)

Lehman Commercial Paper Inc.
745 Seventh Avenue, 16th Floor
New York, New York 10019
Attention: Raymond Chin
E-mail: Raymond.chin@lehman.com
Phone: 212-526-6240

NYC:176869.1

Facsimile: 646-758-4993

**Credit Contact/Intralinks Contact:**
(For Credit Documents & Financial Statements)

Lehman Commercial Paper Inc.
745 Seventh Avenue, 5th Floor
New York, New York 10019
Attention: Randall Braunfeld
E-mail: randall.braunfeld@lehman.com
Phone: (212) 526-3873
Facsimile: (646) 758-4579

Effective Date of Assignment ("*Effective Date*"): October __, 2008

| Loans/Commitments | Principal Amount Assigned[1] | Percentage Assigned (set forth, to at least 8 decimals, as a percentage of the facility and the aggregate Loans and Commitments of all Lenders) |
|---|---|---|
| Loans | $175,000.00 | |

[Remainder of page intentionally left blank]

---

[1] Amount assigned is governed by Section 9 04(b) of the Credit Agreement.

2

NYC:176869.1

The terms set forth in this Assignment and Acceptance are hereby agreed to:

**ASSIGNOR**

LONGACRE CAPITAL PARTNERS (QP), L.P.

By: Longacre Management LLC, Its Managing Partner

By: _____
Name:
Title: STEVEN WEISS
        MANAGE[R]

**ASSIGNEE**

LEHMAN COMMERCIAL PAPER INC.

By: _____
Name:
Title:

3

NYC:176869.1

Consented to and Accepted:

CREDIT SUISSE, CAYMAN ISLANDS
BRANCH, as Administrative Agent

By: _____
  Name:
  Title:

By: _____
  Name:
  Title:

Consented to:

TROPICANA LAS VEGAS RESORT & CASINO LLC
(f/k/a WIMAR LANDCO, LLC)

By:
 _____N/A_____
Name:
Title:

5