PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
C. Payson Coleman
Rick B. Antonoff
Mark N. Lessard

Attorneys for Embarcadero Aircraft
Securitization Trust

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                               :
In re                                                          :    Chapter 11 Case No.
                                                               :
LEHMAN BROTHERS HOLDINGS INC. *et al.*,                        :    08-13555 (JMP)
                                                               :
                                    Debtors.                   :    (Jointly Administered)
                                                               :
---------------------------------------------------------------x

**RESERVATION OF RIGHTS OF EMBARCADERO AIRCRAFT SECURITIZATION
TRUST WITH RESPECT TO DEBTORS' MOTION FOR AN ORDER PURSUANT
TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH
PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND
<u>ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS</u>**

Embarcadero Aircraft Securitization Trust ("EAST"), by and through its undersigned counsel, Pillsbury Winthrop Shaw Pittman LLP, hereby reserves its rights with respect to certain aspects of the relief sought by the Debtors in their Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts, filed on November 13, 2008 (the "Motion"), and respectfully states as follows:[1]

---

[1] Capitalized terms used herein and not defined herein have the meanings ascribed to such terms in the Motion.

**Background**

1.  EAST is a party to that certain ISDA Master Agreement, dated as of August 25, 2000 (the "ISDA Master," and together with the Schedule and confirmations thereto, collectively, the "ISDA Agreement") with Lehman Brothers Special Financing Inc. ("LBSF").[2] Prior to (a) September 15, 2008, the date that Lehman Brothers Holdings Inc. ("Holdings") filed its voluntary chapter 11 petition and (b) October 3, 2008, the date that LBSF filed its voluntary chapter 11 petition, there were six open transactions (each evidenced by a separate confirmation) under the ISDA Agreement, none of which have yet been terminated.

2.  Pursuant to Section 5(a) of the ISDA Master, the commencement by Holdings of its chapter 11 case and the commencement by LBSF of its chapter 11 case each constitutes an Event of Default (as defined in the ISDA Master) giving EAST the right to terminate the ISDA Agreement.[3] As of the date hereof, EAST has not exercised its right to terminate the ISDA Agreement. EAST reserves its right hereafter to exercise such right.

**The Motion**

3.  EAST has not yet terminated the ISDA Agreement and thus takes no position at this time on the Motion with respect to the proposed procedures for addressing Terminated Derivative Contracts.

---

[2] The ISDA Agreement was originally entered into by EAST and Lehman Brothers Financial Products Inc. ("LBFP") and was subsequently deemed to be assigned by LBFP to LBSF in accordance with the terms of the ISDA Agreement. LBSF is the Debtor in Case No. 08-13888 which is being jointly administered in these chapter 11 cases.

[3] Under the ISDA Agreement, EAST and LBSF elected not to treat the commencement of a bankruptcy case as an Automatic Early Termination, thereby permitting the non-bankrupt party to elect whether or not to terminate pursuant to the ISDA Agreement and the relevant provisions of the Bankruptcy Code permitting, among other things, the exercise of a contractual right to terminate a swap agreement notwithstanding the automatic stay and other debtor protections.

4. EAST does have concerns, and hereby reserves its rights, with respect to the Motion as it pertains to proposed procedures for assuming and assigning Derivative Contracts that have not yet been terminated, such as the ISDA Agreement.

5. Specifically, the procedures proposed in the Motion would, if approved, permit the Debtors to assign the ISDA Master to an undisclosed third-party assignee with no prior notice to EAST other than a statement that the proposed assignee has a credit rating equal to or higher than A- from Standard & Poor's or Fitch or A3 from Moody's, or that its undisclosed credit support provider has such credit rating. Alternatively, the procedures would permit the Debtors, without any further Court approval, to assign the ISDA Master to an assignee that does not have such credit rating simply by disclosing its identity, or not disclosing the assignee's identity and instead disclosing that of its credit support provider. Motion ¶19.b.

## Reservations of Rights

6. EAST may not, in general, object to the assumption and assignment of the ISDA Agreement if the Debtors are able to identify an appropriate and acceptable assignee and provided that EAST (a) retains its right to terminate the ISDA Agreement pursuant to the relevant provisions of the Bankruptcy Code and (b) the approved procedures otherwise comply with section 365 of the Bankruptcy Code, including as to adequate assurance of future performance, and protect EAST's rights, including the right to know the identity of and, if necessary, object to a proposed assignee. As presented in the Motion, the proposed procedures preclude EAST from raising valid objections to any assignee selected by the Debtors if such assignee (or its credit support provider) has the requisite credit rating or its (or its credit support provider's) identity is set forth in an Assignment Notice.

7. Because EAST cannot possibly know at this time what concerns it may have as to any particular proposed assignee until its identity and other relevant information is disclosed, EAST respectfully reserves its rights to raise any concerns and objections it may have at such time as the Debtors seek to assume and assign the ISDA Master, and requests that any Order approving procedures provide EAST with an opportunity to raise any such concerns and objections at such time.

8. In addition, while the proposed procedures provide that an assignee is a Qualified Assignee if its credit support provider has the requisite credit rating (Motion ¶19.b), the procedures do not address the nature of the credit support and whether it is in a form that is acceptable to the Counterparty, including being unconditional and irrevocable. EAST respectfully requests that any order granting the Motion and approving procedures not preclude Counterparties from raising objections to an assignment based on concerns about the nature of credit support proposed to be provided by an assignee's credit support provider.

9. Under Paragraph 19.c of the Motion, the Counterparty would be deemed to have received adequate assurance of future performance if the proposed assignee is a Qualified Assignee. Although not explicitly stated, the negative implication of Paragraph 19.c is that if the proposed assignee is *not* a Qualified Assignee, the Debtors and the proposed assignee would be required to demonstrate that the assignee will be able to perform all of the material obligations under the ISDA Master.

10. EAST respectfully requests that any order granting the Motion and approving procedures clearly include the requirement that the Debtors and the proposed assignee demonstrate adequate assurance of future performance if an assignment is to be made to an entity that is not a Qualified Assignee.

11. Paragraph 19.h of the Motion appears to give the Debtors the choice of either (a) soliciting bids for the highest or best bid from prospective assignees or (b) requesting consent of the Committee on selection of an assignee. If EAST's other concerns set forth herein are addressed in the Order, the procedures for selecting a proposed assignee may not matter as it would either have a sufficient credit rating or be subject to EAST's right to object. EAST respectfully suggests, however, that the Debtors' intentions under Paragraph 19.h be made clear whether they are first required to solicit four or more bids and then, if and only if fewer than four bids are obtained, they may request consent of the Committee to choose a proposed assignee.

## Conclusion

For the foregoing reasons, EAST respectfully requests that any Order entered granting the Motion and approving procedures for assumption and assignment of the ISDA Agreement specifically and expressly reserve EAST's rights as set forth herein.

Dated: New York, New York
       November 28, 2008

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By:   /s/ Rick B. Antonoff
      C. Payson Coleman
      Rick B. Antonoff
      Mark N. Lessard
      1540 Broadway
      New York, NY  10036
      Telephone: (212) 858-1000
      Facsimile:  (212) 858-1500

      Attorneys for Embarcadero Aircraft Securitization Trust

5