# EXHIBIT B

## ASSIGNMENT AND ASSUMPTION

This Assignment and Assumption (the "Assignment and Assumption") is dated as of the Assignment Effective Date set forth below and is entered into by and between the Assignor identified in item 1 below (the "Assignor") and the Assignee identified in item 2 below (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Amended and Restated Credit Agreement identified below (as amended, the "Amended and Restated Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment and Assumption as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Amended and Restated Credit Agreement, as of the Assignment Effective Date inserted by the Administrative Agent as contemplated below (i) all of the Assignor's rights and obligations in its capacity as a Lender under the Amended and Restated Credit Agreement and any other documents or instruments delivered pursuant thereto to the extent related to the amount and percentage interest identified below of all of such outstanding rights and obligations of the Assignor under the respective facilities identified below (including without limitation any letters of credit, guarantees, and swingline loans included in such facilities) and (ii) to the extent permitted to be assigned under applicable law, all claims, suits, causes of action and any other right of the Assignor (in its capacity as a Lender against any Person, whether known or unknown, arising under or in connection with the Amended and Restated Credit Agreement, any other documents or instruments delivered pursuant thereto or the loan transactions governed thereby or in any way based on or related to any of the foregoing, including, but not limited to, contract claims, tort claims, malpractice claims, statutory claims and all other claims at law or in equity related to the rights and obligations sold and assigned pursuant to clause (i) above (the rights and obligations sold and assigned by the Assignor to the Assignee pursuant to clauses (i) and (ii) above being referred to herein collectively as the "Assigned Interest"). Each such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and Assumption, without representation or warranty by the Assignor.

1.     Assignor:             Lehman Commercial Paper Inc.

2.     Assignee:             Special Value Expansion Fund, LLC

3.     Credit Agreement:         Reference is made to the Amended and Restated Credit Agreement, dated as of June 1, 2007, among Hawaiian Telcom Communications, Inc., a Delaware corporation (the "Borrower"), Hawaiian Telcom Holdco, Inc., a Delaware corporation ("Holdings"), the several banks and other financial institutions or entities from time to time parties thereto (the "Lenders"), Lehman Commercial Paper Inc., as Administrative Agent and Collateral Agent, J.P. Morgan Chase Bank, N.A., as Syndication Agent, CoBank, ACB and Wachovia Bank, N.A., as Co-Documentation Agents and Lehman Brothers Inc. and J.P. Morgan Securities Inc., as Joint Lead Arrangers.

1

4.    Assigned Interest:

| Facility Assigned | Aggregate Amount of Commitment/ Loans for all Lenders | Amount of Commitment/ Loans Assigned | Percentage Assigned of Commitment/ Loans | CUSIP Number |
|---|---|---|---|---|
| Revolving Commitment | $90,000,000.00 | $1,319,098.73 | 1.4656652556% | N/A |

5.    Effective Date of Assignment:    August 1, 2008 (the "Assignment Effective Date")

2

6.    The terms set forth in this Assignment and Assumption are hereby agreed to:

LEHMAN COMMERCIAL PAPER INC.,
as Assignor

SPECIAL VALUE EXPANSION FUND, LLC,
as Assignee

By:    Tennenbaum Capital Partners, LLC
Its:    Investment Manager

By: *[signature]*

Name:
Title:    ELNORMA BAPTISTE-BAIN
AUTHORIZED SIGNATORY

By: _____

Name:
Title:

NYC 1568073

6.    The terms set forth in this Assignment and Assumption are hereby agreed to:

LEHMAN COMMERCIAL PAPER INC.,
as Assignor

By: _____

Name:
Title:

SPECIAL VALUE EXPANSION FUND, LLC,
as Assignee

By:    Tennenbaum Capital Partners, LLC
Its:    Investment Manager

By: _____

Name:
Title:

3

Accepted and Consented To:

**LEHMAN COMMERCIAL PAPER INC.,**
as Administrative Agent

By: _____
    Title:

MARITZA OSPINA
AUTHORIZED SIGNATORY

Consented To:

**HAWAIIAN TELCOM COMMUNICATIONS, INC.,**
as Borrower

By: _____ N/A _____
    Title:

**JPMORGAN CHASE BANK, N.A.,**
as Issuing Bank

By: _____ N/A _____
    Title:

**LEHMAN COMMERCIAL PAPER INC.,**
as Swingline Lender and Issuing Bank

By: _____ N/A _____
    Title:

4

ANNEX 1

## STANDARD TERMS AND CONDITIONS FOR
## ASSIGNMENT AND ASSUMPTION

1.    Representations and Warranties.

1.1.    Assignor. The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Assumption and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with the Amended and Restated Credit Agreement or any other Loan Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Loan Documents or any collateral thereunder, (iii) the financial condition of the Borrower, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Loan Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Loan Document.

1.2.    Assignee. The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Assumption and to consummate the transactions contemplated hereby and to become a Lender under the Amended and Restated Credit Agreement, (ii) it meets all the requirements to be an assignee under the Amended and Restated Credit Agreement (subject to such consents, if any, as may be required under the Amended and Restated Credit Agreement), (iii) from and after the Assignment Effective Date, it shall be bound by the provisions of the Amended and Restated Credit Agreement as a Lender thereunder and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it is sophisticated with respect to decisions to acquire assets of the type represented by the Assigned Interest and either it, or the person exercising discretion in making its decision to acquire the Assigned Interest, is experienced in acquiring assets of such type, (v) it has received a copy of the Amended and Restated Credit Agreement, and has received or has been accorded the opportunity to receive copies of the most recent financial statements delivered pursuant to the Amended and Restated Credit Agreement, as applicable, and such other documents and information as it deems appropriate to make its own credit analysis and decision to enter into this Assignment and Assumption and to purchase the Assigned Interest, (vi) it has, independently and without reliance upon the Administrative Agent or any other Lender and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Assignment and Assumption and to purchase the Assigned Interest, and (vii) if it is a Foreign Lender, attached to the Assignment and Assumption is any documentation required to be delivered by it pursuant to the terms of the Amended and Restated Credit Agreement, duly completed and executed by the Assignee; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent, the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Loan Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Loan Documents are required to be performed by it as a Lender.

2.    Payments. From and after the Assignment Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Assignment Effective Date and to the Assignee for amounts which have accrued from and after the Assignment Effective Date.

3.    General Provisions. This Assignment and Assumption shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. This Assignment and Assumption may be executed in any number of counterparts, which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Assignment and Assumption by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment and Assumption. This Assignment and Assumption shall be governed by, and construed in accordance with, the law of the State of New York.

5



## PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| Trade Date: | **(i) May 9, 2008 -- with respect to $1,063,900.25 principal amount of Revolving Commitment** **(ii) May 16, 2008 -- with respect to $255,198.49 principal amount of Revolving Commitment** |
| Agreement Date: | **August 18, 2008** |
| Seller: | **Lehman Commercial Paper Inc.** |
| Buyer: | **Special Value Expansion Fund, LLC** |
| Credit Agreement: | **AMENDED AND RESTATED CREDIT AGREEMENT, dated as of June 1, 2007, among HAWAIIAN TELCOM COMMUNICATIONS, INC., a Delaware corporation, as Borrower, HAWAIIAN TELCOM HOLDCO, INC., a Delaware corporation, the several banks and other financial institutions or entities from time to time parties thereto, LEHMAN COMMERCIAL PAPER INC., as administrative agent and collateral agent, J.P. MORGAN CHASE BANK, N.A., as syndication agent, COBANK, ACB and WACHOVIA BANK, N.A., as co-documentation agents and LEHMAN BROTHERS INC. and J.P. MORGAN SECURITIES INC., as joint lead arrangers.** |
| Borrower: | **Hawaiian Telcom Communications, Inc.** |
| Purchase Amount(s): | **$1,319,098.74** |
| Tranche(s): | **Revolving Commitment** |
| CUSIP Number(s), if available: | **N/A** |
| Pre-Settlement Date Accruals Treatment: | ☒ **Settled Without Accrued Interest** ☐ **Trades Flat** |
| Type of Assignment: | ☐ **Original Assignment** ☒ **Secondary Assignment** |
| Immediate Prior Seller (if any): | **Deutsche Bank AG New York Branch** |
| Borrower in Bankruptcy: | Yes ☐    No ☒ |
| Delivery of Credit Documents: | Yes ☐    No ☒ |

LSTA EFFECTIVE DECEMBER 2006    Copyright © LSTA 2006. All rights reserved.

| TRANSACTION SUMMARY | | |
|---|---|---|
| Netting Arrangements: | Yes ☐ | No ☒ |
| Flip Representations: | Yes ☐[1] | No ☒ |
| Step-Up Provisions: | Yes ☐[1] | No ☒ |
| Shift Date[2]: | N/A | |
| Transfer Notice: | Yes ☐[3] | No ☒ |

### A. DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement. Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement. Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement. If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Lehman Commercial Paper Inc., as Administrative Agent.

"Assignment" means an Assignment and Assumption that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
☒ none.
☐ means [the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re _____, No. _____].

"Bankruptcy Court" select one:
☒ none.
☐ means [the United States Bankruptcy Court for the _____ District of _____ (and, if appropriate, the United States District Court for that District)].

"Bar Date" select one:
☒ not applicable.
☐ none has been set.

---

[1] The Parties cannot specify "Yes" to both "Flip Representations" and "Step-Up Provisions" unless they set forth appropriate modifications in Section H. Neither "Flip Representations" nor "Step-Up Provisions" applies to original assignments.

[2] Specify a Shift Date only if "Yes" is specified opposite "Step-Up Provisions" and if the second box is selected in the definition of Covered Prior Seller. The Shift Date is the date that the Parties agree is the closest possible

approximation for when the market convention for transferring the Loans and Commitments (if any) shifted from a par/near par documentation basis to a distressed documentation basis. In consulting as to the appropriate date, the Parties may refer to published results of an anonymous LSTA poll of disinterested dealers as to such dealers' views regarding the Shift Date or, if results have not been published with respect to the Credit Agreement, either Party may request in writing that the LSTA endeavor to conduct such a poll. To initiate a poll, send a request that includes the name of Borrower and either the CUSIP number (if available) or the name and date of the Credit Agreement to the LSTA at lstashiftdatepolls@lsta.org. The results of such LSTA polls are available to facilitate discussions between the Parties and have no binding effect.

[3] "Yes" can be elected only if "Yes" is specified opposite "Borrower in Bankruptcy" in the Transaction Summary.

☐ means [specify applicable date, if any].

"Buyer Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Commitments" select one:
☐ none.
☒ means Revolving Commitment in the principal amount of $1,319,098.74, all of which is funded.

"Covered Prior Seller" select one:
☒ not applicable.
☐ means each Prior Seller that transferred the Loans and Commitments (if any)[4] on or after the Shift Date [but prior to the date on which _____[5] transferred such Loans and Commitments (if any)].[6]

"Filing Date" select one:
☒ none.
☐ means [identify date on which Borrower filed Bankruptcy Case].

"Loans" means Revolving Loans in the outstanding principal amount of $1,319,098.74.

"Netting Letter" select one:
☒ not applicable.
☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"Original Buyer" select one:
☒ not applicable.
☐ means [specify original buyer in the netting arrangement].

"Penultimate Buyer" select one:
☒ not applicable.
☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
☐ means [_____].

"Required Consents" means the acceptance and recordation of the Assignment by the Agent.

"Seller Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

---

[4] If applicable to only a portion of the Loans and Commitments (if any), specify the portion that applies, e.g., "each Prior Seller that transferred the [Name of applicable Covered Prior Seller] Loans (as defined in Section 1 of the Annex)."

[5] Specify the first Entity that transferred the Loans and Commitments (if any) on a distressed documentation basis on or after the Shift Date.

[6] The bracketed language applies where the relevant Predecessor Transfer Documents include a distressed trade that settled after the par/near par trade which settled on or after the Shift Date.

"Transfer Fee" means the $3,500.00 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" means none.

## B.    SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)

The following specified terms shall apply to the sections referenced in this Section B:

| | Flat Representation | Flip Representation | Step-Up Representation |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
    If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

        "(k) [intentionally omitted]."[7]

---

[7] Seller should add, and Buyer should cause Original Buyer or Penultimate Buyer, as applicable, to add, a comparable representation to the Netting Letter in lieu of this representation.

Section 4.1(r) (<u>Predecessor Transfer Agreements</u>).
    ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
    ☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
    ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (<u>Other Documents</u>).
    ☒ None.
    ☐ The following: _____.

Section 4.1(v) (<u>Proof of Claim</u>).
    ☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
        ☐ the Agent on behalf of the Lenders.
        ☐ Seller or a Prior Seller.
    ☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.
    ☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.
    ☒ N/A

## C.    SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)

C.1    Section 5.1(n) (<u>Buyer Status</u>).

    ☐ Buyer is not a Lender.
    ☐ Buyer is a Lender.
    ☒ Buyer is an Affiliate (as defined in the Credit Agreement) of a Lender.
    ☐ Buyer is an Approved Fund of a Lender.

C.2    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

## D.    SECTION 6 (INDEMNIFICATION)

Section 6.1 (<u>Seller's Indemnities</u>); <u>Step-Up Indemnities</u>.

    (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

    (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

## E.    SECTION 7 (COSTS AND EXPENSES)

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
    ☐ one-half thereof.
    ☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to
    ☐ one-half thereof.
    ☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.

☒ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

☐ There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

## F.    SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)

**F.1**    Section 8.2 (Distributions); Step-Up Distributions Covenant.

(i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

(ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**    Section 8.4 (Wire Instructions).

Buyer's Wire Instructions:

Name of Bank: Wells Fargo Bank Minnesota, NA
ABA Number: 121-000-248
Account Number: 6355067033
Account Name: CDO Clearing
FFC Account Number: 18185401
FFC Account Name: Special Value Expansion Fund, LLC

Seller's Wire Instructions:

Bank Name:            Citibank NYC
ABA Number:           021000089
Account Number:       30434133
Account Name:         LCPI Bank Loans
Reference:            Hawaiian Telcom/Special Value Expansion Fund, LLC

## G.    SECTION 9 (NOTICES)

Buyer's Address for Notices and Delivery:

Special Value Expansion Fund, LLC
c/o Tennenbaum Capital Partners, LLC
2951 28th Street, Suite 1000
Santa Monica, CA 90405
Attn: Carolyn Yu
Tel: (310) 899-4921
Fax: (310) 899-4950
E-mail: Carolyn.Yu@tennenbaumcapital.com

Seller's Address for Notices and Delivery:

**Loan Administration/Operations Contact**
(For Notices on Borrowings, Paydowns, Interest and Fees)

Lehman Commercial Paper Inc.
745 Seventh Avenue, 16th Floor
New York, New York 10019

Attention: Ellie Baptiste-Bain
E-mail: ebaptist@lehman.com
Phone: (212) 526-1889
Facsimile: (646) 758-7485

**Credit Contact/Intralinks Contact**
(For Credit Documents & Financial Statements)

Lehman Commercial Paper Inc.
745 Seventh Avenue, 5th Floor
New York, New York 10019
Attention: Randall Braunfeld
E-mail: rbraunfe@lehman.com
Phone: (212) 526-3873
Facsimile: (646) 758-4579

**H.      SECTION 26 (FURTHER PROVISIONS)**

None.

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

SELLER

LEHMAN COMMERCIAL PAPER INC.

By: _Elnorma Baptiste-Bain_
    Name:
    Title:    **ELNORMA BAPTISTE-BAIN
        AUTHORIZED SIGNATORY**

BUYER

SPECIAL VALUE EXPANSION FUND, LLC

By:    Tennenbaum Capital Partners, LLC
Its:    Investment Manager

By:_____
    Name:
    Title:

IN WITNESS WHEREOF, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

SELLER

**LEHMAN COMMERCIAL PAPER INC.**

By:_____
    Name:
    Title:

BUYER

**SPECIAL VALUE EXPANSION FUND, LLC**

By:    Tennenbaum Capital Partners, LLC
Its:    Investment Manager

By:_____
    Name:
    Title:

## ANNEX TO PURCHASE AND SALE AGREEMENT

1.  If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements[1] and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

    Purchase and Sale Agreement, dated as of August 15, 2008, between Deutsche Bank AG New York Branch, as seller, and Seller, as buyer, and the related Assignment and Assumption. [distressed]

    1.  **With respect to $4,956.21 of the Revolving Commitment**:

        Assignment and Assumption, dated as of February 26, 2008, among Grand Central Asset Trust, SAN Series, as assignor, Deutsche Bank AG New York Branch, as assignee, and the Agent. [par/near par]

    2.  **With respect to $439,293.73 of the Revolving Commitment**:

        Assignment and Assumption, dated as of January 25, 2008, among Grand Central Asset Trust, SAN Series, as assignor, Deutsche Bank AG New York Branch, as assignee, and the Agent. [par/near par]

    3.  **With respect to $611,973.56 of the Revolving Commitment**:

        Assignment and Assumption, dated as of January 3, 2008, among Grand Central Asset Trust, SAN Series, as assignor, Deutsche Bank AG New York Branch, as assignee, and the Agent. [par/near par]

    4.  **With respect to $262,875.24 of the Revolving Commitment**:

        Assignment and Assumption, dated as of October 29, 2007, among Grand Central Asset Trust, SAN Series, as assignor, Deutsche Bank AG New York Branch, as assignee, and the Agent. [par/near par]

2.  List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

    None.

3.  Description of Proof of Claim (if any).[2]

    N/A

4.  Description of Adequate Protection Order (if any).[2]

---

[1]  List (i) any Predecessor Transfer Agreement to which Seller is a party, (ii) any Predecessor Transfer Agreement of Prior Sellers relating to distressed loans delivered to Seller by Immediate Prior Seller and (iii) any Predecessor Transfer Agreement of Prior Sellers relating to par loans listed in any Predecessor Transfer Agreement described in the preceding clause (ii).

[2]  May apply only if "Yes" is specified opposite "Borrower in Bankruptcy" in the Transaction Summary.

N/A

5.    List any exceptions to Section 4.1(w) (<u>Notice of Impairment</u>).

None.

6.    The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is N/A.

**LEHMAN COMMERCIAL PAPER INC.**
745 Seventh Avenue, 5th Floor
New York, New York 10019

August 18, 2008

**VIA ELECTRONIC MAIL**

Special Value Expansion Fund, LLC
Tennenbaum Capital Partners, LLC
2951 28th Street, Suite 1000
Santa Monica, CA 90405

Ladies and Gentlemen:

Reference is hereby made to the Purchase and Sale Agreement for Distressed Trades (the "Agreement"), dated as of the date hereof between LEHMAN COMMERCIAL PAPER INC. ("Seller") and SPECIAL VALUE EXPANSION FUND, LLC ("Buyer") relating to the Seller's assignment to Buyer of its right, title and interest in certain loans made to Hawaiian Telcom Communications, Inc. Capitalized terms used herein without definition shall have the respective meanings ascribed to them in the Agreement. This letter constitutes the Purchase Price Letter referred to in the Agreement.

This letter confirms that the aggregate amount of the Purchase Price to be paid by Buyer to Seller under the Agreement is calculated as follows in the attached spreadsheet.

The Purchase Price shall be paid by Buyer to Seller by wire transfer of immediately available funds according to the following wire transfer instructions:

| | |
|---|---|
| Bank Name: | Citibank NYC |
| ABA Number: | 021000089 |
| Account Number: | 30434133 |
| Account Name: | LCPI Bank Loans |
| Reference: | Hawaiian Telcom/Special Value Expansion Fund, LLC |

NYC:176468.1

To indicate your agreement with the foregoing, please execute and return this letter to the undersigned.

Sincerely,

LEHMAN COMMERCIAL PAPER INC.

By: _____

Name:

Title:    **ELNORMA BAPTISTE-L~**
          **AUTHORIZED SIGNATO!**

Acknowledged and Agreed:

SPECIAL VALUE EXPANSION FUND, LLC

By:    Tennenbaum Capital Partners, LLC
Its:   Investment Manager

By:_____

    Name:

    Title:

To indicate your agreement with the foregoing, please execute and return this letter to the undersigned.

Sincerely,

LEHMAN COMMERCIAL PAPER INC.

By: _____
    Name:
    Title:


Acknowledged and Agreed:

SPECIAL VALUE EXPANSION FUND, LLC

By:    Tennenbaum Capital Partners, LLC
Its:    Investment Manager


By:_____
    Name:
    Title:

**Pricing Redacted**