# EXHIBIT B

Agreement Date, full power and authority to execute, deliver and perform its obligations under, the Transaction Documents to which it is or will become a party.

(b)     Buyer's execution, delivery, and performance of the Transaction Documents to which it is or will become a party has not resulted, did not result on the Agreement Date and will not result in a breach or violation of any provision of (i) Buyer's organizational documents, (ii) any statute, law, writ, order, rule or regulation of any Governmental Authority applicable to Buyer, (iii) any judgment, injunction, decree or determination of any Governmental Authority applicable to Buyer or (iv) any contract, indenture, mortgage, loan agreement, note, lease or other agreement, document or instrument by which Buyer may be a party, by which Buyer may be bound or to which any of the assets of Buyer is subject.

(c)     (i)     The Transaction Documents to which Buyer is, and was on the Agreement Date, a party (A) have been duly and validly authorized, executed and delivered by Buyer and (B) are the legal, valid and binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms, except that such enforceability may be limited by bankruptcy, insolvency, or other similar laws of general applicability affecting the enforcement of creditors' rights generally and by a court's discretion in relation to equitable remedies; and

(ii)     except as provided in the Credit Documents, no notice to, registration with, consent or approval of or any other action by any relevant Governmental Authority or other Entity is, will be or was on the Agreement Date required for Buyer to execute, deliver, and perform its obligations under the Transaction Documents (other than, if "Yes" is specified opposite "Transfer Notice" in the Transaction Summary, the Transfer Notice) to which Buyer is or will become a party.

(d)     Without characterizing the Transferred Rights as a "security" within the meaning of applicable securities laws, Buyer is not purchasing the Transferred Rights with a view towards the sale or distribution thereof in violation of the Securities Act; provided, however, that Buyer may resell the Transferred Rights if such resale is in compliance with Section 10.

(e)     Buyer acknowledges that the consideration paid under this Agreement for the purchase of the Transferred Rights and the assumption of the Assumed Obligations may differ both in kind and amount from any Distribution.

(f)     Buyer (i) is a sophisticated Entity with respect to the purchase of the Transferred Rights and the assumption of the Assumed Obligations, (ii) is able to bear the economic risk associated with the purchase of the Transferred Rights and the assumption of the Assumed Obligations, (iii) has adequate information concerning the business and financial condition of Borrower and Obligors and the status of the Bankruptcy Case (if any) to make an informed decision regarding the purchase of the Transferred Rights and the assumption of the Assumed Obligations, (iv) has such knowledge and experience, and has made investments of a similar nature, so as to be aware of the risks and uncertainties inherent in the purchase of rights and assumption of liabilities of the type contemplated in this Agreement and (v) has independently and without reliance upon Seller, and based on such information as Buyer has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that Buyer has relied upon Seller's express representations, warranties, covenants, agreements and indemnities in this Agreement. Buyer acknowledges that Seller has not given Buyer any investment advice, credit information or opinion on whether the purchase of the Transferred Rights or the assumption of the Assumed Obligations is prudent.

(g)     Except as otherwise provided in this Agreement, Buyer has not relied and will not rely on Seller to furnish or make available any documents or other information regarding the

credit, affairs, financial condition or business of Borrower or any Obligor, or any other matter concerning Borrower or any Obligor.

(h)  Buyer acknowledges that (i) Seller currently may have, and later may come into possession of, information with respect to the Transferred Rights, the Assumed Obligations, Borrower, Obligors or any of their respective Affiliates that is not known to Buyer and that may be material to a decision to purchase the Transferred Rights and assume the Assumed Obligations ("Buyer Excluded Information"), (ii) Buyer has determined to purchase the Transferred Rights and assume the Assumed Obligations notwithstanding its lack of knowledge of the Buyer Excluded Information and (iii) Seller shall have no liability to Buyer or any Buyer Indemnitee, and Buyer waives and releases any claims that it might have against Seller or any Seller Indemnitee, whether under applicable securities laws or otherwise, with respect to the nondisclosure of the Buyer Excluded Information in connection with the Transaction; provided, however, that the Buyer Excluded Information shall not and does not affect the truth or accuracy of Seller's representations or warranties in this Agreement.

(i)  No broker, finder or other Entity acting under the authority of Buyer or any of its Affiliates is entitled to any broker's commission or other fee in connection with the Transaction for which Seller could be responsible.

(j)  Either (i) no interest in the Transferred Rights is being acquired by or on behalf of an Entity that is, or at any time while the Transferred Rights are held thereby will be, one or more Benefit Plans or (ii) the transaction exemption set forth in one or more PTEs, such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the purchase and holding of the Transferred Rights and the exercise of Buyer's rights thereunder.[3]

(k)  Buyer acknowledges that (i) it has received copies of the Predecessor Transfer Agreements (if any) designated as Predecessor Transfer Agreements that relate to distressed loans in Section 1 of the Annex and, if applicable, the Credit Documents referenced in Section 2 of the Annex and (ii) without in any way limiting the representations and warranties of Seller contained in this Agreement, it is assuming all risk with respect to the accuracy or sufficiency of the Predecessor Transfer Agreements (if any) and the Credit Documents, other than any representations, warranties or covenants made by Seller in this Agreement, the Credit Documents or in the Predecessor Transfer Agreements (if any) to which Seller is a party.

(l)  Buyer is an "accredited investor" as defined in Rule 501 under the Securities Act.

(m)  No proceedings are (i) pending against Buyer or (ii) to the best of Buyer's knowledge, threatened against Buyer before any relevant Governmental Authority that, in the aggregate, will materially and adversely affect any action taken or to be taken by Buyer under this Agreement.

---

[3] If the Parties agreed in their Distressed Trade Confirmation that Buyer may make an alternative ERISA representation, such alternative representation shall be included in Section H of the Transaction Specific Terms. Suggested language for such alternative representation may be found on the LSTA website at www.lsta.org/lsta-documents/lsta-MarketAdvisories.php

(n)     Buyer has the status under the Credit Agreement specified in Section C.1 of the Transaction Specific Terms.

5.2     Except as expressly stated in this Agreement and the Assignment, Buyer makes no representations or warranties, express or implied, with respect to the Transaction.

5.3     Buyer acknowledges that (a) Seller's sale of the Transferred Rights to Buyer, and Buyer's assumption of the Assumed Obligations, are irrevocable and (b) Buyer shall have no recourse to Seller, except for (i) Seller's breaches of its representations, warranties or covenants and (ii) Seller's indemnities, in each case as expressly stated in this Agreement.

## 6.     Indemnification

6.1     As specified in the Transaction Summary and D of the Transaction Specific Terms, either:

(a)     Seller shall indemnify, defend, and hold Buyer and its officers, directors, agents, partners, members, controlling Entities and employees (collectively, "Buyer Indemnitees") harmless from and against any liability, claim, cost, loss, judgment, damage or expense (including reasonable attorneys' fees and expenses) that any Buyer Indemnitee incurs or suffers as a result of, or arising out of (i) a breach of any of Seller's representations, warranties, covenants or agreements in this Agreement, (ii) any obligation of any Entity to disgorge, in whole or in part, or otherwise reimburse (by setoff or otherwise) Borrower, any Obligor, the Agent or any other Entity for any payments, property (including Collateral), setoffs or recoupments received, applied or effected by or for the account of Seller under or in connection with the Transferred Rights or any other claim that Seller may have from, against or on account of Borrower or any Obligor, except to the extent any such amounts have been distributed by Seller to Buyer (whether by a credit to the Purchase Price or Buyer Purchase Price, as applicable, or otherwise), or (iii) Seller's being an Insider or Affiliate of Borrower or any Obligor or being a member of or participating in any official or unofficial creditors' committee or other similar committee (whether appointed or otherwise constituted in the Bankruptcy Case (if any) or formed prior to the commencement of the Bankruptcy Case (if any)), which condition results in Buyer's receiving proportionately less in payments or distributions under, or less favorable treatment (including the timing of payments or distributions) for, the Transferred Rights than is received by other Lenders holding loans or commitments of the same tranche as the Loans and Commitments (if any).  Seller shall have no obligation to indemnify Buyer, and Buyer shall have no recourse against Seller, if any adequate protection payments (whether or not Adequate Protection Payments) in respect of the Transferred Rights or any Collateral are subsequently recharacterized by the Bankruptcy Court (whether by stipulation, settlement order or otherwise) in such a manner as to be treated other than as payments of interest or fees due under the Credit Agreement or the Adequate Protection Order; OR

(b)     Seller shall indemnify, defend, and hold Buyer and its officers, directors, agents, partners, members, controlling Entities and employees (collectively, "Buyer Indemnitees") harmless from and against any liability, claim, cost, loss, judgment, damage or expense (including reasonable attorneys' fees and expenses) that any Buyer Indemnitee incurs or suffers as a result of, or arising out of (i) a breach of any of Seller's representations, warranties, covenants or agreements in this Agreement, (ii) any obligation of any Entity to disgorge, in whole or in part, or otherwise reimburse (by setoff or otherwise) Borrower, any Obligor, the Agent or any other Entity for any payments, property (including Collateral), setoffs or recoupments received, applied or effected by or for the account of Seller or any Covered Prior Seller under or in connection with the Transferred Rights or any other claim that Seller may have from, against or on account of Borrower or any Obligor, except to the extent any such amounts have been distributed by Seller to Buyer (whether by a credit to the Purchase Price or Buyer Purchase Price, as applicable, or otherwise), or (iii) Seller's being an Insider or Affiliate of Borrower or any Obligor or being a member of or participating in any official or unofficial creditors' committee or other similar committee (whether appointed or otherwise constituted in the Bankruptcy Case (if any) or formed prior to the commencement of the Bankruptcy Case (if any)), which condition results in Buyer's receiving proportionately less in payments or distributions under, or less favorable treatment (including the timing of

payments or distributions) for, the Transferred Rights than is received by other Lenders holding loans or commitments of the same tranche as the Loans and Commitments (if any). Seller shall have no obligation to indemnify Buyer, and Buyer shall have no recourse against Seller, if any adequate protection payments (whether or not Adequate Protection Payments) in respect of the Transferred Rights or any Collateral are subsequently recharacterized by the Bankruptcy Court (whether by stipulation, settlement order or otherwise) in such a manner as to be treated other than as payments of interest or fees due under the Credit Agreement or the Adequate Protection Order.

6.2     Buyer shall indemnify, defend, and hold Seller and its officers, directors, agents, partners, members, controlling Entities, and employees (collectively, "Seller Indemnitees") harmless from and against any liability, claim, cost, loss, judgment, damage or expense (including reasonable attorneys' fees and expenses) that any Seller Indemnitee incurs or suffers as a result of or arising out of (a) a breach of any of Buyer's representations, warranties, covenants or agreements in this Agreement or (b) Seller's acting or refraining to act pursuant to any direction of (i) Buyer or (ii) under the circumstances described in the proviso in Section 11, the Majority Holders; provided, however, that Buyer's share of the indemnity under clause (b)(ii) shall be limited to a fraction, the numerator of which is (A) the outstanding principal amount of the Transferred Rights or (B) if Seller has consented to transfers of the Transferred Rights (or a portion thereof) pursuant to Section 10.1(b), the then outstanding principal amount of the claims beneficially held by Buyer in respect of which the action involved is taken by Seller, and the denominator of which is the then aggregate outstanding principal amount of all claims in respect of which the action involved is taken by Seller.

6.3     If a third party commences any action or makes any demand against either Party for which such Party ("Indemnified Party") is entitled to indemnification under this Agreement, such Indemnified Party shall promptly notify the other Party ("Indemnifying Party") in writing of such action or demand; provided, however, that if the Indemnified Party assumes the defense of the action and fails to provide prompt notice to the Indemnifying Party, such failure shall not limit in any way the Indemnifying Party's obligation to indemnify the Indemnified Party except to the extent that such failure materially prejudices the Indemnifying Party's ability to defend the action. The Indemnifying Party may, at its own expense and without limiting its obligation to indemnify the Indemnified Party, participate in the defense of such action with counsel reasonably satisfactory to the Indemnified Party, or the Indemnifying Party may, at its own expense and without limiting its obligation to indemnify the Indemnified Party, assume the defense of such action with counsel reasonably acceptable to the Indemnified Party. In any event, the Party that has assumed the defense of such action shall provide the other Party with copies of all notices, pleadings, and other papers filed or served in such action. Neither Party shall make any settlement or adjustment without the other Party's prior written consent, which consent (a) in the case of the Indemnifying Party will not be unreasonably withheld if the settlement or adjustment involves only the payment of money damages by the Indemnifying Party and (b) in the case of the Indemnified Party may be withheld for any reason if the settlement or adjustment involves performance or admission by the Indemnified Party.

6.4     Each indemnity in this Agreement is a continuing obligation, separate and independent from the other obligations of the Parties and survives termination of this Agreement or any transfer pursuant to Section 10 of this Agreement. It is not necessary for a Party to incur expense or make payment before enforcing a right of indemnity conferred by this Agreement.

## 7.     Costs and Expenses

7.1     If either Party pays any Agent Expenses, Assumed Obligations or Retained Obligations for which the other Party is responsible in accordance with the definitions thereof and the terms of this Agreement, such other Party shall, promptly upon the written request of the Party that shall have paid such amounts, reimburse such paying Party for the full amount paid on such other Party's behalf.

7.2     The Parties agree to bear their own respective legal and other costs and expenses for preparing, negotiating, executing and implementing this Agreement and any related documents and consummating the Transaction.

7.3     The Transfer Fee shall be paid on or before the Settlement Date as provided in Section E of the Transaction Specific Terms.

**8.     Distributions; Interest and Fees; Payments**

8.1     The treatment of Pre-Settlement Date Accruals is set forth in the Transaction Summary. (a) If "Trades Flat" is specified, all Pre-Settlement Date Accruals and Adequate Protection Payments, if and when paid, shall be for the account of Buyer, and for purposes of this Agreement, the Transferred Rights shall include all Pre-Settlement Date Accruals and Adequate Protection Payments, Seller shall have no Retained Interest and Section 8.3 shall have no force or effect. (b) If "Settled Without Accrued Interest" is specified, Seller shall have a Retained Interest and all Retained Interest Distributions shall be for the account of Seller.

8.2     As specified in the Transaction Summary and Section F.1 of the Transaction Specific Terms, either:

(a)     (i)     If at any time after the Trade Date (whether before, on or after the Settlement Date) Seller received or receives a Distribution, Seller shall (A) accept, and from and after the Settlement Date, hold such Distribution for the account and sole benefit of Buyer, (B) from and after the Settlement Date have no equitable or beneficial interest in such Distribution and (C) deliver such Distribution (free of any withholding, setoff, recoupment, or deduction of any kind except as required by law) promptly (but in the case of a cash Distribution received (1) on or prior to the Settlement Date, in no event later than the Settlement Date, and (2) after the Settlement Date, in no event later than two (2) Business Days after the date on which Seller receives such Distribution) to Buyer in the same form received and, when necessary or appropriate, with Seller's endorsement (without recourse, representation, or warranty), except to the extent prohibited under any applicable law, rule or order. If Seller fails to pay any cash Distribution to Buyer in accordance with the time periods set forth in clause (i)(C) of this Section 8.2(a), then Seller shall pay interest on such payment for the period from (and including) the day on which such payment is actually received by Seller to (but excluding) the day such payment is actually paid to Buyer, in accordance with Section 8.6.

(ii)     If a Distribution includes securities or other non-cash Distribution, Seller shall, to the extent permitted by law, endorse (without recourse, representation or warranty) or use commercially reasonable efforts (at Buyer's sole expense) to assist Buyer to cause to be registered in Buyer's name, or such name as Buyer may direct in writing, and deliver such securities to Buyer or to such Entity as Buyer may direct as soon as practicable. Pending such transfer, Seller shall (from and after the Settlement Date) hold the same on behalf and for the sole benefit of Buyer, and Seller shall have no legal, equitable or beneficial interest in any such Distribution.

(iii)     Subject to applicable law, Buyer is entitled to receive any Distribution to be remitted by Seller under this Agreement without the withholding of any tax. If Seller receives a Distribution that it is required to remit to Buyer, Buyer shall furnish to Seller such forms, certifications, statements and other documents as Seller may reasonably request in writing to evidence Buyer's exemption from the withholding of any tax imposed by the United States of America or any other jurisdiction, whether domestic or foreign, or to enable Seller to comply with any applicable laws or regulations relating thereto, and Seller may refrain from remitting such Distribution until such forms, certifications, statements and other documents have been so furnished.

(iv)     If all or any portion of a Distribution received by Seller and transferred to Buyer pursuant to this Section 8.2(a) is required to be returned or disgorged by Seller to any Entity, Buyer shall promptly return such Distribution (or portion thereof) to Seller together with all related interest and charges payable by Seller in respect thereof.

OR

19

(b)    (i)    If at any time after the Trade Date (whether before, on or after the Settlement Date) Seller or any Covered Prior Seller received or receives a Distribution, Seller shall (A) accept and from and after the Settlement Date hold such Distribution (to the extent received by Seller or delivered to Seller by a Covered Prior Seller) for the account and sole benefit of Buyer, (B) from and after the Settlement Date have no equitable or beneficial interest in such Distribution and (C) deliver such Distribution (free of any withholding, setoff, recoupment, or deduction of any kind except as required by law) promptly (but in the case of a cash Distribution received by Seller or any Covered Prior Seller (1) on or prior to the Settlement Date, in no event later than the Settlement Date, and (2) after the Settlement Date, in no event later than two (2) Business Days after the date on which Seller or any Covered Prior Seller receives such Distribution) to Buyer in the same form received and, when necessary or appropriate, with Seller's endorsement (without recourse, representation, or warranty), except to the extent prohibited under any applicable law, rule or order. If Seller fails to pay any cash Distribution to Buyer in accordance with the time periods set forth in clause (i)(C) of this Section 8.2(b), then Seller shall pay interest on such payment for the period from (and including) the day on which such payment is actually received by Seller to (but excluding) the day such payment is actually paid to Buyer, in accordance with Section 8.6.

(ii)    If a Distribution includes securities or other non-cash Distribution, Seller shall, to the extent permitted by law, endorse or use commercially reasonable efforts to cause any Covered Prior Seller to endorse (without recourse, representation or warranty) or use commercially reasonable efforts (at Buyer's sole expense) to assist Buyer to cause to be registered in Buyer's name, or such name as Buyer may direct in writing, and deliver such securities to Buyer or to such Entity as Buyer may direct as soon as practicable. Pending such transfer, Seller shall (from and after the Settlement Date) hold, and use commercially reasonable efforts to cause any Covered Prior Seller to hold, the same on behalf and for the sole benefit of Buyer and neither Seller nor any Covered Prior Seller shall have any legal, equitable or beneficial interest in any such Distribution.

(iii)    Subject to applicable law, Buyer is entitled to receive any Distribution to be remitted by Seller under this Agreement without the withholding of any tax. If Seller or any Covered Prior Seller receives a Distribution that it is required to remit to Buyer, Buyer shall furnish to Seller such forms, certifications, statements and other documents as Seller may reasonably request in writing to evidence Buyer's exemption from the withholding of any tax imposed by the United States of America or any other jurisdiction, whether domestic or foreign, or to enable Seller or any Covered Prior Seller to comply with any applicable laws or regulations relating thereto and Seller or any Covered Prior Seller may refrain from remitting such Distribution until such forms, certifications, statements and other documents have been so furnished.

(iv)    If all or any portion of a Distribution received by Seller or any Covered Prior Seller and transferred to Buyer pursuant to this Section 8.2(b) is required to be returned or disgorged by Seller or any Covered Prior Seller to any Entity, Buyer shall promptly return such Distribution (or portion thereof) to Seller together with all related interest and charges payable by Seller or any Covered Prior Seller in respect thereof.

8.3    (a)    If at any time after the Settlement Date Buyer receives a Retained Interest Distribution, Buyer shall (i) accept and hold such Retained Interest Distribution for the account and sole benefit of Seller, (ii) have no equitable or beneficial interest in such Retained Interest Distribution and (iii) deliver such Retained Interest Distribution (free of any withholding, setoff, recoupment, or deduction of any kind except as required by law) promptly (but in the case of a cash Retained Interest Distribution, in no event later than two (2) Business Days after the date on which Buyer receives it) to Seller in the same form received and, when necessary or appropriate, with Buyer's endorsement (without recourse, representation, or warranty), except to the extent prohibited under any applicable law, rule or order. If Buyer fails to pay any cash Retained Interest Distribution to Seller within two (2) Business Days of receipt thereof, then Buyer shall pay interest on such Retained Interest Distribution for the period from (and including) the day on which such Retained Interest Distribution is actually received by Buyer to (but excluding) the day such Retained Interest Distribution is actually paid to Seller, in accordance with Section 8.6.

20

(b)     If a Retained Interest Distribution includes securities or other non-cash Distribution, Buyer shall, to the extent permitted by law, endorse (without recourse, representation or warranty), or use commercially reasonable efforts (at Seller's sole expense) to assist Seller to cause to be registered in Seller's name, or such name as Seller may direct in writing, and deliver such securities to Seller or to such Entity as Seller may direct as soon as practicable. Pending such transfer, Buyer shall hold the same on behalf and for the sole benefit of Seller and Buyer shall have no legal, equitable or beneficial interest in any such Retained Interest Distribution.

(c)     Subject to applicable law, Seller is entitled to receive any Retained Interest Distribution to be remitted by Buyer under this Agreement without the withholding of any tax. If Buyer receives a Retained Interest Distribution that it is required to remit to Seller, Seller shall furnish to Buyer such forms, certifications, statements and other documents as Buyer may reasonably request in writing to evidence Seller's exemption from the withholding of any tax imposed by the United States of America or any other jurisdiction, whether domestic or foreign, or to enable Buyer to comply with any applicable laws or regulations relating thereto, and Buyer may refrain from remitting such Retained Interest Distribution until such forms, certifications, statements and other documents have been so furnished.

(d)     If all or any portion of a Retained Interest Distribution received by Buyer and transferred to Seller pursuant to this Section 8.3 is required to be returned or disgorged by Buyer to any Entity, Seller shall promptly return such Retained Interest Distribution (or portion thereof) to Buyer together with all related interest and charges payable by Buyer in respect thereof.

8.4     If Borrower fails to pay on or prior to the scheduled due date thereof (taking into account any applicable grace period) in accordance with the Credit Agreement or the Adequate Protection Order, as applicable, any Interest and Accruing Fees or Adequate Protection Payments that were paid or credited to Buyer on the Settlement Date pursuant to Section 6(b) of the Distressed Trade Confirmation, then Buyer shall, upon demand by Seller, pay Seller an amount equal to the portion of such Interest and Accruing Fees or Adequate Protection Payments that were not paid to Seller, plus interest that would accrue for each day on such amounts at the Federal Funds Rate.

8.5     Except as provided in Sections 8.2, 8.3 or 8.4 or the Purchase Price Letter, all payments made by Buyer to Seller or by Seller to Buyer under this Agreement shall be made in the lawful currency of the United States by wire transfer of immediately available funds to Seller or Buyer, as applicable, in accordance with the wire instructions specified in Section F.2 of the Transaction Specific Terms.

8.6     With respect to the payment of any funds or other property under this Agreement (including the delivery of Distributions under Section 8.2 and Retained Interest Distributions under Section 8.3), whether from Seller to Buyer or from Buyer to Seller, (a) the Party required to deliver a Distribution or a Retained Interest Distribution may withhold therefrom any tax required by law to be withheld, and (b) the Party failing to make full payment of any amount when due shall, upon demand by the other Party, pay such defaulted amount together with interest on it (for each day from (and including) the date when due to (but excluding) the date when actually paid) at a rate equal to the Federal Funds Rate.

## 9.    Notices

9.1     All communications between the Parties in respect of, or notices or other information sent under, this Agreement shall be in writing, hand delivered or sent by overnight courier, electronic transmission or telecopier, addressed to the relevant Party at its address, electronic mail or facsimile number specified in Section G of the Transaction Specific Terms or at such other address, electronic mail or facsimile number as such Party may subsequently request in writing. All such communications and notices shall be effective upon receipt.

9.2     From the Settlement Date through the 45th day after the Settlement Date, if Seller receives any notices, correspondence or other documents in respect of the Transferred Rights or any Credit Document that, to the best of Seller's knowledge, were not sent to the Lenders generally, Seller shall promptly forward them to Buyer.

## 10.    Further Transfers

10.1    Buyer may sell, assign, grant a participation in, or otherwise transfer all or any portion of the Transferred Rights, this Agreement, its rights under this Agreement and the Predecessor Transfer Agreements (if any), or any interest in any of the foregoing without the consent of or notice to Seller; provided, however, that (a) such sale, assignment, participation or transfer shall comply with any applicable requirements in the Transaction Documents and shall not violate any applicable laws, rules or regulations, including any applicable securities laws, rules or regulations; (b) notwithstanding any such sale, assignment, participation or transfer, unless Seller otherwise consents in writing (which consent Seller shall not unreasonably withhold or delay), (i) Buyer's obligations to Seller under this Agreement shall remain in full force and effect until fully paid, performed, and satisfied and (ii) Seller shall continue to deal solely and directly with Buyer in connection with Buyer's obligations under this Agreement; and (c) with respect to a transfer by Buyer of its rights against Seller under this Agreement and, if "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, against any Prior Sellers under the Predecessor Transfer Agreements (i) the transferee must represent and warrant that (A) no interest in the Transferred Rights is being acquired by or on behalf of an Entity that is, or at any time while the Transferred Rights are held thereby will be, one or more Benefit Plans, (B) the transaction exemption set forth in one or more PTEs, such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers), is applicable with respect to the acquisition and holding of the Transferred Rights by the transferee and the exercise of the transferee's rights thereunder or (C) the funds being used by the transferee to purchase all or any portion of the Transferred Rights are from a fund managed by a Qualified Professional Asset Manager (the "Manager") within the meaning of Part V of PTE 84-14, the Manager made the investment decision on behalf of the transferee to acquire the Transferred Rights from the transferor, the acquisition and holding of the Transferred Rights hereunder satisfies the requirements of subsections (b) through (g) of Part I of PTE 84-14 and the individual making the investment decision to purchase the Transferred Rights on behalf of the transferee has no actual knowledge (without duty of inquiry or investigation) that the requirements of subsection (a) of Part I of PTE 84-14 are not satisfied and (ii) the transferee must agree that it will obtain from each of its direct transferees the representations, warranties and covenants contained in this clause (c) (including this subclause (ii)).

10.2    Seller may assign its rights under this Agreement without the prior written consent of Buyer; provided, however, that Seller may not delegate its obligations under this Agreement without the prior written consent of Buyer.

## 11.    Voting

On and after the Settlement Date, (a) Buyer shall have sole authority to make, grant and exercise (or refrain from making, granting and exercising) all votes, whether pursuant to amendments, consents or waivers, and otherwise to exercise (or refrain from exercising) all other rights and remedies with respect to the Transferred Rights and Assumed Obligations and (b) if for any reason Seller is entitled to exercise any such rights or remedies (including the right to vote) after the Settlement Date, Seller (i) shall not take (or refrain from taking) any action with respect thereto other than in accordance with the prior written instructions of Buyer and (ii) shall take (or refrain from taking) any action with respect thereto in accordance with the prior written instructions of Buyer except (A) as prohibited under applicable law, rule, order or the Credit Documents or (B) if following such instructions might (in Seller's reasonable determination) expose Seller to any obligation, liability or expense that in Seller's reasonable judgment is material and for which Seller has not been provided adequate indemnity; provided, however, that if the vote or other action involved is not divisible or may not be cast or taken separately in respect of the Transferred Rights and Assumed Obligations (or the relevant portion thereof) and any other claim against Borrower or any other Entity (whether or not included in the Transferred Rights), then Seller shall take (or refrain from taking) such action in accordance with instructions received by Seller and believed by Seller

22

in good faith to have been given by the then current holders (including, as the case may be, Seller) of more than 50% of the aggregate principal amount of the claims then outstanding in respect of which such action is to be taken by Seller (the "Majority Holders") that direct Seller to take action with respect thereto. For purposes of determining the Majority Holders pursuant to the preceding sentence, Seller shall only be required to obtain instructions relating to any action to be taken in respect of the Transferred Rights and Assumed Obligations from (x) Buyer or (y) if Seller has consented to transfers of the Transferred Rights (or any portion thereof) pursuant to Section 10.1(b), the then current holders of the aggregate principal amount of the claims outstanding in respect of which such action is to be taken by Seller.

## 12.    Exercise of Rights and Remedies

12.1    No amendment of any provision of this Agreement shall be effective unless it is in writing and signed by the Parties, and no waiver of any provision of this Agreement, nor consent to any departure by either Party from it, shall be effective unless it is in writing and signed by the affected Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

12.2    No failure on the part of a Party to exercise, and no delay in exercising, any right or remedy under this Agreement shall operate as a waiver by such Party, nor shall any single or partial exercise of any right or remedy under this Agreement preclude any other or further exercise thereof or the exercise of any other right or remedy. The rights and remedies of each Party provided herein (a) are cumulative and are in addition to, and are not exclusive of, any rights or remedies provided by law (except as otherwise expressly set forth in this Agreement) and (b) are not conditional or contingent on any attempt by such Party to exercise any of its rights or remedies under any other related document or against the other Party or any other Entity.

12.3    If Buyer is or at any time will be a Benefit Plan, Buyer's right to exercise any right or remedy against a Prior Seller under a Predecessor Transfer Agreement is conditioned upon such exercise not constituting or giving rise to a nonexempt prohibited transaction under Section 406(a) of ERISA or Section 4975 of the Code. Buyer hereby agrees that it will obtain from each of its direct transferees the exclusion contained in the foregoing sentence and the undertaking contained in this sentence.

## 13.    Survival; Successors and Assigns

13.1    All representations, warranties, covenants, indemnities and other provisions made by the Parties shall be considered to have been relied upon by the Parties, shall (as to representations and warranties) be true and correct as of the Settlement Date and any other date set forth in Sections 4.1 or 5.1, as the case may be, and shall survive the execution, delivery and performance of this Agreement and the other Operative Documents.

13.2    This Agreement, including the representations, warranties, covenants and indemnities contained in this Agreement, shall inure to the benefit of, be binding upon and be enforceable by and against the Parties and their respective successors and permitted assigns.

## 14.    Further Assurances

Each Party agrees to (i) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (ii) take or cause to be taken all such other and further actions as the other Party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement, including the procurement of the Required Consents. Without limiting the generality of the foregoing, Seller agrees that if (i) notes have been issued evidencing all or any portion of the Loans and the Commitments (if any), (ii) Buyer or Buyer's designee or assignee requests that a new note or notes be issued to it, and (iii) the Agent, Borrower or any Governmental Authority requires either (x) the delivery of any note(s) evidencing the Loans and the Commitments (if any)

23

previously issued to Seller or any Prior Seller or (y) the delivery of customary lost note documentation by Seller or any Prior Seller prior to the issuance thereof, then Seller shall use commercially reasonable efforts to either deliver such note(s) or customary lost note documentation to the Agent or to obtain such note(s) or customary lost note documentation from such Prior Seller; provided that Seller shall not be required to deliver either a note or such lost note documentation if no note was ever issued or delivered to it.

### 15.    Disclosure

15.1    Each Party agrees that, without the prior consent of the other Party, it shall not disclose the contents of this Agreement (or the Purchase Price Letter (including the Purchase Price and the Purchase Rate) to any Entity, except that any Party may make any such disclosure (a) as required to implement or enforce this Agreement, (b) if required to do so by any law, court, regulation, subpoena or other legal process, (c) to any Governmental Authority or self-regulatory Entity having or asserting jurisdiction over it, (d) if its attorneys advise it that it has a legal obligation to do so or that failure to do so may   result in it incurring a liability to any other Entity or sanctions that may be imposed by any Governmental Authority, (e) to its Affiliates, professional advisors and auditors or (f) as set forth in Section 15.2.

15.2    Buyer may disclose the contents of this Agreement (but not the contents of the Purchase Price Letter (including the Purchase Price and the Purchase Rate)) to any proposed transferee, assignee, participant, or other Entity proposing to enter into contractual relations with Buyer in respect of the Transferred Rights or any part of them.

15.3    Buyer agrees to comply with the requirements of the Credit Documents regarding confidentiality.

15.4    If "Yes" is specified opposite "Netting Arrangements" in the Transaction Summary, (a) Section 15.1 shall be deemed to be revised by deleting the following parenthetical therefrom:  "(or the Purchase Price Letter (including the Purchase Price and the Purchase Rate))" and (b) Section 15.2 shall be deemed to be revised by deleting the following parenthetical therefrom: "(but not the contents of the Purchase Price Letter (including the Purchase Price and the Purchase Rate)).["][4]

### 16.    Parties' Relationships

Each Party and any of its Affiliates may engage in any kind of lawful business or other relationship with Borrower, any Obligor or any of their respective Affiliates without liability to the other Party or any obligation to disclose such business or relationship to the other Party.

### 17.    Entire Agreement; Conflict

17.1    This Agreement and the other Operative Documents constitute the entire agreement of the Parties with respect to the Transaction and supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, representations and warranties in respect thereof, all of which have become merged and finally integrated into this Agreement and the other Operative Documents.

17.2    This Agreement supplements the Assignment. As between Seller and Buyer, if there is any inconsistency or conflict between this Agreement and any of the other Operative Documents, the provisions of this Agreement shall govern and control.  If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

---

[4]  The LSTA form of netting agreements contain comparable confidentiality provisions.

### 18.    Counterparts; Telecopies

This Agreement and the other Operative Documents may be executed in multiple counterparts and all of such counterparts taken together shall be deemed to constitute one and the same instrument. Transmission by telecopier, facsimile or other form of electronic transmission of an executed counterpart of any Operative Document shall be deemed to constitute due and sufficient delivery of such counterpart. Each fully executed counterpart of this Agreement and any other Operative Document shall be deemed to be a duplicate original.

### 19.    Relationship Between Buyer and Seller

The relationship between Seller and Buyer shall be that of seller and buyer. Neither is a trustee or agent for the other, nor does either have any fiduciary obligations to the other. This Agreement shall not be construed to create a partnership or joint venture between the Parties.

### 20.    Severability

The illegality, invalidity or unenforceability of any provision of this Agreement under the law of any jurisdiction shall not affect its legality, validity or enforceability under the law of any other jurisdiction nor the legality, validity or enforceability of any other provision.

### 21.    Governing Law

THIS AGREEMENT, THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT AND ANY CLAIM OR CONTROVERSY DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTION (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, SHALL IN ALL RESPECTS BE GOVERNED BY AND INTERPRETED, CONSTRUED AND DETERMINED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (WITHOUT REGARD TO ANY CONFLICTS OF LAW PROVISION THEREOF THAT WOULD REQUIRE THE APPLICATION OF THE LAWS OF ANY OTHER JURISDICTION).

### 22.    Waiver of Trial by Jury

THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT THEY MAY HAVE TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION, OR IN ANY LEGAL PROCEEDING, DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTION (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).   EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

### 23.    Jurisdiction

23.1    The Parties irrevocably and unconditionally submit to and accept the exclusive jurisdiction of the United States District Court for the Southern District of New York located in the Borough of Manhattan or the courts of the State of New York located in the County of New York for any action, suit or proceeding arising out of or based upon this Agreement or any matter relating to it and waive any objection that they may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over them.

23.2    The Parties irrevocably agree that, should either Party institute any legal action or proceeding in any jurisdiction (whether for an injunction, specific performance, damages or otherwise) in relation to this Agreement or the Transaction, no immunity (to the extent that it may at any time exist, whether on the grounds of sovereignty or otherwise) from such action or proceeding shall be claimed by it or on its behalf, any such immunity being hereby irrevocably waived, and each Party irrevocably agrees that it and its assets are, and shall be, subject to such legal action or proceeding in respect of its obligations under this Agreement.

## 24.    Subrogation; Reimbursement Claims

24.1    To the extent that Buyer enforces any claim for indemnification or other right, claim or remedy against Seller under this Agreement and receives payment or another remedy from Seller in respect of such right, claim or remedy, the Parties agree that, to the extent permitted by law, the Credit Documents and the Predecessor Transfer Agreements (if any), without the need for further action on the part of either Party, Seller shall be subrogated to the rights of Buyer against any other Entity, including Prior Sellers (if any), with respect to such right, claim or remedy to the extent that Buyer receives such payment or other remedy from Seller.

24.2    To the extent that Borrower or any other Entity enforces any claim for return, disgorgement or reimbursement against Seller or any Prior Seller for all or any portion of any payment or transfer received by Seller or such Prior Seller on account of the Transferred Rights prior to the Settlement Date and receives payment or satisfaction from Seller or such Prior Seller in respect thereof, the Parties agree that, to the extent permitted by law, the Credit Documents and the Predecessor Transfer Agreements (if any), without the need for further action on the part of either Party, Seller or such Prior Seller shall be subrogated to the rights of Buyer against any other Entity, including Borrower and Prior Sellers (if any), with respect to such claim (including the right to assert any Reimbursement Claims); provided that, if applicable, Seller or such Prior Seller has fully indemnified Buyer with respect thereto pursuant to Section 6.1.

## 25.    Interpretation

25.1    This Agreement includes the Annex and any other annexes, schedules or other documents attached to or incorporated by reference into the Agreement.

25.2    Terms used in the singular or the plural include the plural and the singular, respectively; "includes" and "including" are not limiting; and "or" is not exclusive.

25.3    Any reference to a Party includes such Party's successors and permitted assigns.

25.4    Unless otherwise indicated, any reference to:

(a)    this Agreement or any other agreement, document or instrument shall be construed as a reference to this Agreement or, as the case may be, such other agreement, document or instrument as the same may have been, or may at any time before the Settlement Date be, in effect as modified, amended or supplemented as of the Settlement Date; and

(b)    a statute, law, order, rule or regulation shall be construed as a reference to such statute, law, order, rule or regulation as it may have been, or may at any time before the Settlement Date be, in effect as modified, amended or supplemented as of the Settlement Date.

25.5    Section and other headings and captions are included solely for convenience of reference and are not intended to affect the interpretation of any provision of this Agreement.

25.6    This Agreement shall be deemed to have been jointly drafted by the Parties and no provision of it shall be interpreted or construed for or against either Party because such Party actually or purportedly prepared or requested such provision, any other provision or the Agreement as a whole.

## 26.    Additional Provisions

The additional provisions, if any, set forth in Section H of the Transaction Specific Terms shall apply.

## 27.    Transfer Notice

If "Yes" is specified opposite "Transfer Notice" in the Transaction Summary, the following transfer notice provisions shall apply:

The Parties shall execute and deliver, and Buyer shall promptly file or cause to be filed with the Bankruptcy Court to the extent permitted by the Bankruptcy Rules, a Transfer Notice to duly reflect the assignment of the Transferred Rights to Buyer under Bankruptcy Rule 3001(e). Seller (a) agrees to take such other reasonable steps as Buyer requests to help Buyer effect and evidence the assignment of the Transferred Rights to Buyer in the Bankruptcy Case, (b) waives notice of, and the right to object to, any filing in respect thereof under Bankruptcy Rule 3001(e) and (c) agrees that it will not object to any such filing.

27

# TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| 1. | Definitions | 1 |
| 2. | Assignment and Assumption | 7 |
| 3. | Conditions Precedent | 7 |
| 4. | Seller's Representations and Warranties | 7 |
| 5. | Buyer's Representations and Warranties | 14 |
| 6. | Indemnification | 16 |
| 7. | Costs and Expenses | 18 |
| 8. | Distributions; Interest and Fees; Payments | 18 |
| 9. | Notices | 21 |
| 10. | Further Transfers | 21 |
| 11. | Voting | 22 |
| 12. | Exercise of Rights and Remedies | 22 |
| 13. | Survival; Successors and Assigns | 22 |
| 14. | Further Assurances | 23 |
| 15. | Disclosure | 23 |
| 16. | Parties' Relationships | 24 |
| 17. | Entire Agreement; Conflict | 24 |
| 18. | Counterparts; Telecopies | 24 |
| 19. | Relationship Between Buyer and Seller | 24 |
| 20. | Severability | 24 |
| 21. | Governing Law | 24 |
| 22. | Waiver of Trial by Jury | 25 |
| 23. | Jurisdiction | 25 |
| 24. | Subrogation; Reimbursement Claims | 25 |
| 25. | Interpretation | 25 |
| 26. | Additional Provisions | 26 |
| 27. | Transfer Notice | 26 |