Hearing Date: December 3, 2008

LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2478
Paul Kizel, Esq. (PK4176)

-and-

1251 Avenue of the Americas
18th Floor
New York, New York 10020
Tel: (212) 262-6700

Attorneys For Blue Mountain Credit Alternatives Master Fund L.P.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.* | Case No. 08-13555(JMP) |
| Debtors. | (Jointly Administered) |

**VERIFIED OBJECTION OF BLUE MOUNTAIN CREDIT ALTERNATIVES
MASTER FUND L.P. TO DEBTORS' MOTION
FOR AN ORDER PURSUANT TO SECTION 365 OF THE
BANKRUPTCY CODE APPROVING THE ASSUMPTION OR
REJECTION OF OPEN TRADE CONFIRMATIONS**

PRELIMINARY STATEMENT

1. Blue Mountain Credit Alternatives Master Fund L.P. ("BMCA"), by and through its counsel, Lowenstein Sandler PC, submits this objection to the Debtors' Motion for an Order Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade Confirmations (the "Motion") to the extent it seeks to assume two (2) trade confirmations between Lehman Brothers Holdings Inc. ("LBHI") and BMCA. The two trade confirmations, dated June 19, 2008 and June 26, 2008, respectively, relate to the purported sale

99992/85
11/26/2008 10291052.4

by LBHI of participations in a certain General Motors Corporation Amended and Restated Credit Agreement dated as of July 20, 2006.

2. The Motion seeks, among other things, an order authorizing the assumption of numerous prepetition trade confirmations relating to the sale by certain Debtors of positions in par or distressed loans, participations in par or distress loans, or claims against third parties at agreed upon prices. All of the trade confirmations that the Motion seeks to assume are identified on both exhibit A to the Motion and exhibit A to the Supplement To Motion dated November 18, 2008.

3. Included on each exhibit A are three (3) separate trade confirmations identifying (i) "LCPI" as the debtor party to the transaction, (ii) "Blue Mountain Capital (Master)" as the customer, and (iii) "General Motors Corporation (6/16/03)" as the "Deal Name." See Exhibit A to Supplement To Motion, p. 7. [Docket No. 1560]. Two of these three purported trade confirmations are identified in the Motion as having a trade date of June 19, 2008, and one has a trade date of June 26, 2008. Id.

4. As a preliminary matter, the trade confirmations identified in paragraph 3 above naming "Blue Mountain Capital" as the "customer" and "LCPI" as the debtor entity simply do not exist and never did exist. Therefore, the Motion should be denied to the extent it seeks to assume these three trade confirmations and to impose obligations on BMCA or any of its affiliates with respect to such trade confirmations.

5. Moreover, BMCA was at one time a party to two trade confirmations with LBHI, one dated June 19, 2008, and the other June 26, 2008, relating to the sale by LBHI of participations in a certain General Motors Corporation Amended and Restated Credit Agreement dated as of July 20, 2006 (collectively the "GM Confirmations"). To the extent the Motion is intended to assume these two GM Confirmations, such relief cannot be granted because those transactions were effectively terminated prior to LBHI's chapter 11 petition. Accordingly, as of

the petition date these confirmations were no longer executory contracts that could be assumed or rejected.

6. In addition, in the event the GM Confirmations were not terminated, the Debtors should be precluded from assuming them unless they compensate BMCA for losses sustained as a result of LBHI's failure to perform on a timely basis.

7. Furthermore, *assuming arguendo* that the GM Confirmations can be assumed and enforced, BMCA should be permitted to setoff any amount due to LBHI under the GM Confirmations against any amounts owed by LBHI to BMCA.[1]

### SUMMARY OF RELEVANT FACATS

8. On June 19 and June 26, 2008, BMCA entered into LSTA Par/Near Par Trade Confirmations with LBHI relating to $10 million and $5 million, respectively, of participations in a General Motors Corporation Amended and Restated Credit Agreement dated as of July 20, 2006. Copies of the GM Trade Confirmations are attached hereto as exhibits A and B. Other than the dates and the amounts of the participations, the confirmations were identical, and each incorporated the Loan Syndications and Trading Association Standard Terms and Conditions for Par/Near Par Trade Confirmations (the "Standard Terms and Conditions"). A copy of the Standard Terms and Conditions is annexed hereto as exhibit C.

9. The GM Confirmations provided, *inter alia*, that the transactions were:

> Subject to: Negotiation, execution and delivery [of] reasonably acceptable contracts and instruments of transfer in accordance herewith.

---

[1] The Motion also identifies two trade confirmations ("Kabel Confirmations") between LCPIUK and "Blue Mountain Capital (Master)" each dated July 15, 2008 relating to a deal identified as Kabel Deutschland (12 May 06). See Supplement To Motion p. 7. BMCA does not assert that these two confirmations were terminated prepetition. However, BMCA objects to the portion of the Motion that seeks to preclude it from offsetting any obligation that may become due under those confirmations against claims it has against the Debtors.

The GM Confirmations also provided that the form of purchase would be by participation.

10. Furthermore, paragraph 10 of the Standard Terms and Conditions, titled "Transfer Documentation," provided, *inter alia*:

> In the case of a participation, the parties **shall execute a reasonably acceptable participation agreement** containing customary provisions for the purchase and sale of a participation in par/near par loan assets. Any such referenced ... participation agreement is hereinafter referred to as the "Transfer Documentation." Unless otherwise specified in the Confirmation, **the Transfer Documentation shall be prepared**, and any required consents shall be obtained, **by Seller**. ... Seller shall use reasonable efforts to furnish to Buyer drafts of the applicable Transfer Documentation **within three (3) Business Days after the Trade Date**....

(Emphasis added). The Standard Terms and Conditions also provided that:

> if settlement by participation cannot be effected, the Transaction shall be settled on the basis of a mutually agreeable alternative structure or other arrangement that affords Buyer and Seller the economic equivalent of the agreed-upon trade....

Standard Terms and Conditions, ¶ 1 (emphasis added).

11. Furthermore, paragraph 16 of the Standard Terms and Conditions, the "Buy-In / Sell-Out Provision," provided, in pertinent part:

> If Buyer and Seller are unable to effect settlement on or prior to the date that is seven (7) Business Days after the Trade Date because of the failure of either Buyer or Seller to perform its obligations (for any reason whatsoever other than failure to obtain necessary consents), then the nondefaulting party may send to the defaulting party within five (5) Business Days thereafter a written notice advising of the nondefaulting party's intent to terminate its obligations under the Confirmation and to effect a cover transaction for the specified Debt.... During the first three (3) Business Days following delivery of such notice, the defaulting party shall use best efforts to identify a substitute party acceptable to the nondefaulting party to perform its obligations.... If the defaulting party fails to identify such an acceptable substitute party, then both parties will in good faith consider other alternatives to settle or resolve the failed trade by mutual consent....

12. As noted above, the trade dates indicated on the GM Confirmations were June 19 and June 26, 2008. On June 24, 2008, BMCA sent an e-mail to LBHI asking it to advise BMCA when it could expect the required participation agreement for the June 19 trade. See Exhibit D annexed hereto. LBHI failed to respond or to take any other action with respect to the transactions.

13. On July 31, 2008, BMCA sent a follow-up e-mail to LBHI stating that it still had not received the participation agreements for the June 19 and June 26 GM trades. See Exhibit E annexed hereto. BMCA was concerned that LBHI would not be able to deliver on the GM Confirmations because BMCA understood from the market that General Motors Corporation ("GM") was not allowing any new lenders. Because LBHI was not an original lender on the GM revolver, in order for LBHI to complete a sale to BMCA at a participation level, LBHI would need to obtain an assignment of part of the GM loan. If Lehman could not get part of the loan by assignment, then it would have to buy a participation for itself from a lender, and sell to BMCA at a sub-participation level. It was BMCA's understanding, however, that such a scenario would render the transactions impossible to close. More importantly, BMCA was not willing to buy the loans at a level below participation; the participation level, only one step removed from the lender, was a material term of the contract.

14. In response to BMCA's July 31, 2008 e-mail, Kenneth Rothenberg, an attorney for LBHI, telephoned BMCA and advised Michael Abatemarco, the BMCA representative who executed the GM Confirmations, that LBHI would not be able to settle the trades with BMCA at a participation level as specified in the GM Confirmations. Rather, Rothenberg advised that the trades likely would have to be settled via a sub-participation. Mr. Rothenberg confirmed LBHI's inability to settle in accordance with the terms of the Confirmations in an e-mail the same day. See Exhibit E annexed hereto.

15. As set forth in the Standard Terms and Conditions, "if Buyer and Seller are unable to effect settlement of the Transaction as specified in the Confirmation, a valid and binding obligation to settle the trade nevertheless continues to exist between Buyer and Seller . . . . [I]f settlement by participation cannot be effected, the Transaction shall be settled on the basis of a mutually agreeable alternative structure or other arrangement that affords Buyer and Seller the economic equivalent of the agreed upon trade...." See Standard Terms and Conditions, ¶ 1. However, after advising BMCA that it would not be able to settle the transaction as specified in the Confirmation and that it would have to *try* to settle by sub-participation, LBHI failed to propose or discuss any specific alternative structure or other arrangement to settle that would be agreeable to BMCA. Furthermore, neither party thereafter performed in accordance with the specific procedures and short timelines set forth under the Buy-In / Sell-Out provision of the Standard Terms and Conditions.

16. By the terms of the GM Confirmations, the trades were "Subject to: Negotiation, execution and delivery [of] reasonably acceptable contracts and instruments of transfer in accordance herewith." No such documents were negotiated, prepared or delivered, much less executed. LBHI failed to settle the trades on the basis specified in the GM Confirmations. LBHI also failed to make any arrangement or propose any specific alternate structure for an economically equivalent settlement that would be mutually agreeable. Neither party thereafter performed, either in accordance with the procedures and timeline set forth in the Buy-In / Sell-Out provision, or otherwise. The July 31, 2008 communications were the last between the parties with respect to the GM loans until after LBHI filed for bankruptcy on September 15, 2008.

## ARGUMENT

### I.

### The GM Confirmations Cannot Be Assumed Because They Did Not Exist As of The Petition Date

17. Section 365 (a) of the Bankruptcy Code authorizes a debtor, subject to court approval, to assume or reject an executory contract. It is clear, however, that "section 365 applies only if the contract or lease is in existence at the commencement of the case." 3 Collier On Bankruptcy section 365.02[2], p. 365-22 (15th Edition Revised); Moody v. Amoco Oil Co., 734 F.2d 1200, 1212 (7th Cir. 1984). If the contract was "terminated under applicable law before the commencement of the bankruptcy case, there is nothing left . . . to assume . . . ." Id. As described below, in this case, the GM Confirmations were effectively terminated prior to the filing of LBHI's chapter 11 petition. Consequently, the GM Confirmations cannot be assumed and BMCA cannot be compelled to perform.

18. A material breach is a substantial failure to perform central components of a contract, which relieves the non-breaching party from performing its end of the bargain. The non-breaching party thereafter can elect among remedies; it can either terminate the contract or it can continue to perform. In this case, LBHI's failure to effect settlements on a participation basis, and its subsequent failure to negotiate and document an economically equivalent alternative settlement acceptable to both parties, resulted in a material breach that relieved BMCA of its obligation to perform under the GM Confirmations. BMCA effectively terminated the GM Confirmations through its non-performance and non-acceptance of any benefits under the agreements, including not exercising its option to effect a cover transaction for the debt as permitted under the Buy-In / Sell-Out provision of the Standard Terms and Conditions

### (A) LBHI's Failure to Settle the Trades on a Participation Basis or to Propose or Negotiate a Mutually Acceptable, Economically Equivalent Alternative, Was a Material Breach.

19. A material breach of contract results when a party fails to perform a significant aspect of the contract that goes to the very heart of the bargain, thereby severely impacting the parties' expectations. See, e.g., Frank Felix Assocs., Ltd. v. Austin Drugs, Inc., No. 96-7604, 1997 U.S. App. LEXIS 19795, at *14 (2d Cir. Apr. 10, 1997) ("[F]or breach of a contract to be material, it must 'go to the root of the agreement between the parties.'") (quoting Canfield v. Reynolds, 631 F.2d 169, 178 (2d Cir. 1980)). This essentially means that the breaching party has failed to substantially perform the contract such that the parties' purpose for the contract is defeated. Id.

20. While the courts have not delineated discrete elements of what constitutes material breach beyond the general definitions referenced above, they have relied on the multi-factor guidelines set forth in the Restatement (Second) of Contracts for determining whether a failure is material. Those factors include:

   (a)  the extent to which the injured party will be deprived of the benefit which he reasonably expected;
   (b)  the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
   (c)  the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
   (d)  the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and
   (e)  the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

See e.g., Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc., No. 03-Civ-8259, 2007 U.S. Dist. LEXIS 49643, at *28-29, 69 (S.D.N.Y. July 10, 2007) and Donovan v. Ficus Invs., Inc., No. 602715/2007, 2008 WL 4073639, *9-10 (N.Y. Sup. Ct. Aug. 1, 2008).

21. In this case, LBHI's (i) failure to settle the trades by way of participations,

as specified in the GM Confirmations, (ii) failure then to propose or attempt to work out a mutually agreeable alternative structure, and (iii) failure to negotiate, prepare or deliver the documents to which any transaction was subject, constitute a material breach of the agreements contemplated by the confirmations. The requirement that the trades be settled by participation was of critical importance to BMCA and went to the heart of the parties' bargain. The transaction could not be effected as an assignment and sub-participation -- which LBHI did not even propose in specific form, possibly because it would be a practical impossibility -- was not an acceptable alternative to BMCA.[2] Finally, no economically equivalent alternative to a participation was negotiated. As a result, the economic value of the proposed transaction was eviscerated by LBHI's failure to perform, thus constituting a material breach.

### (B) LBHI's Material Breach Relieved BMCA of its Obligation to Perform.

22.    In the event of a material breach of contract, the non-breaching party is relieved from performing its obligations. See, e.g., NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F. Supp. 2d 134, 145 (S.D.N.Y. 2003) ("Under New York law, when one party has committed a material breach of a contract, the non-breaching party is discharged from performing any further obligations under the contract, and the non-breaching party may elect to terminate the contract and sue for damages.") (citations omitted). The Restatement (Second) of Contracts provides the reasoning behind this rule. It states that a failure to substantially perform under the contract constitutes the non-occurrence of a necessary condition, which has two effects on the non-breaching party's reciprocal duties: (1) "preventing performance of the duty from becoming due, at least temporarily;" and (2) "discharg[ing] those duties if [the material breach] has not been cured during the time in which performance can occur." Restatement (Second) of Contracts § 237 cmt. a.

---

[2]    BMCA would not enter into a deal at a sub-participation level because the additional step removed from the credit agreement adds greater risk that it is not willing to take.

23. The Restatement goes on to offer certain factors to determine when the period for cure lapses and the non-breaching party's obligations are completely discharged, including "the extent to which it reasonably appears to the injured party that delay may prevent or hinder him in making reasonable substitute arrangements." Id. § 237(b). The determination generally turns on the extent of damage to the non-breaching party's justifiable expectations under the contract and to its subsequent hardships in attempting to rectify the problem, when an opportunity for the breaching party to cure has passed without any resolution.

24. In this case, the very specific and short timelines contemplated under the Standard Terms and Conditions for settlement, and for the procedures under the Buy-In / Sell-Out provision, illustrate the appropriate amount of time -- measured in business days, not weeks -- for parties to effect a settlement on original terms or on mutually acceptable alternative grounds. Since LBHI failed to take any action after its material breach within what should be a very limited opportunity to cure, BMCA's performance obligations under the GM Confirmations are completely discharged.

### (C) BMCA Effectively Terminated the GM Confirmations

25. In the event of a material breach that excuses the non-breaching party's duty to perform, the non-breaching party may elect to either (1) terminate the contract or (2) continue to perform under the contract. See Alesayi Beverages Corp. v. Canada Dry Corp., 947 F. Supp. 658, 667-68 (S.D.N.Y. 1996). Once the election of remedy is made, it is binding. Id. As explained in Casita, LP v. Maplewood Equity Partners (Offshore) Ltd.:

> while the non-breaching party may elect either to cease to perform under the contract or to continue to perform:
> conduct indicating an intention to continue the contract in effect will constitute a conclusive election, in effect waiving the right to assert that the breach discharged any obligation to perform. In other words, the general rule that one party's uncured, material failure of performance will suspend or discharge the other party's duty to perform does not apply where the latter party, with knowledge of the facts, either performs ... despite the breach, or

insists that the defaulting party continue to render future performance.

2007 WL 4294741, at 6 (N.Y. Sup. Ct.) (citations omitted). See also Bigda v. Fischbach Corp., 898 F. Supp. 1004, 1013 (S.D.N.Y. 1995) ("[T]he operative factor in the election doctrine is whether the non-breaching party has taken an action (or failed to take an action) that indicated to the breaching party that he had made an election."), affd., 101 F.3d 108 (2d Cir. 1996). To effectively terminate the contract and seek damages for total breach, the non-breaching party must not continue to accept the benefits of the contract or act in a manner consistent with the intent to continue under the contract terms. Id.

26. In this case, BMCA's non-performance and its unwillingness to accept any benefits under the agreements after LBHI material breach constitutes an effective termination. After LBHI's material breach, BMCA took no action and made no statement that would indicate a willingness to continue performance. BMCA did not negotiate with LBHI to reach a mutually acceptable alternative basis for an economically equivalent settlement, and stopped inquiring of LBHI about when it would render performance. Furthermore, it did not exercise its option to effect a cover transaction for the debt and/or to settle on an alternative basis in accordance with the provisions of the Buy-In / Sell-Out provision of the Standard Terms and Conditions. In fact, the parties had no communications with respect to the GM Confirmations after the July 31 communications until after LBHI's chapter 11 filing. As a result, BMCA's performance was completely discharged, and the GM Confirmations were effectively terminated prior to the petition date. Therefore, the GM Confirmations cannot be assumed.

## II.

### THE GM CONFIRMATIONS CANNOT BE ASSUMED UNLESS THE DEBTORS COMPENSATE BMCA FOR DAMAGES CAUSED BY THE DEBTORS' BREACH

27. In the event a determination is made that the GM Confirmations were not terminated pre-petition, LBHI should not be able to assume the confirmations unless and until it compensates BMCA for damages caused by LBHI's failure to perform on a timely basis. The

requirement for compensation is mandated by section 365 (b)(1)(B) of the Bankruptcy Code. Section 365 (b)(1)(B) provides that a debtor may not assume an executory contract "unless, at the time of assumption of such contract . . . [the debtor] compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default."

28. As explained above, LBHI breached the GM Confirmations by failing to perform on a timely basis. Had LBHI performed as required, BMCA would have been entitled to receive a coupon payment in connection with the underlying loan transaction to which the GM confirmations relate. However, due to LBHI's failure to perform on a timely basis, BMCA did not receive the benefit of the coupon payment in the amount of $38,370.42 (assumes settlement by December 30, 2008). Therefore, in order to assume the GM Confirmations, LBHI must compensate BMCA for this lost income.

### III.

### THE COURT SHOULD DENY THE DEBTORS' REQUEST TO PRECLUDE TRADE CONFIRMATION COUNTERPARTIES FROM ENFORCING THEIR SETOFF RIGHTS

29. *Assuming arguendo* that LBHI is permitted to assume the GM Confirmations the Court should deny the portion of the Motion that seeks to preclude any counterparty, including BMCA, from exercising the right to setoff any obligations that may become payable to a debtor under an assumed trade confirmation against claims that the counterparty has against the debtor.

30. Section 553(a) of the Bankruptcy Code explicitly preserves setoff rights of creditors. Citizens Bank of Maryland v. Strumpf, 516 U.S. 16 (1995). In particular, §553(a) provides, in relevant part, that the Bankruptcy Code:

> does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement

of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case,….

31.   By it terms, in order for section 553 to apply, (i) the debtor must owe a debt to the creditor which arose prepetition and (ii) the creditor must owe a debt to the debtor which **arose** pre-petition. In short, the reciprocal obligations must both be pre-petition debts. In Re: Bennett Funding Group, Inc. 146 F.3d 136, 137 (2d Cir. 1998).

32.   In this case, the Debtors are asserting that section 553 does not apply, and that a counterparty is precluded from offsetting any amounts that might become payable to the Debtors under an assumed trade confirmation, on the theory that the counterparty's obligation to pay is a post-petition obligation, rather than a pre-petition obligation. Although the Debtors' position has support from a very small number of bankruptcy court decisions, the holding of the United States Court of Appeals for the Eight Circuit in In re: Gerth, 991 F.2d 1428 (8th Cir 1993) is more persuasive and consistent with the Second Circuit's view that setoff "occupies a favored position in our history of jurisprudence." Bohack Corp., 599 F.2d 1160, 1164 (2d Cir. 1979).

33.   In essence, the Motion argues that a counterparty's obligation to the respective debtor under an assumed trade confirmation is a post-petition obligation because the effect of assumption is to require the counterparty to perform on a post-petition basis. See Motion, ¶ 29. The emphasis on when performance is due, as opposed to when the liability arose, however, is misplaced. As the Eight Circuit recognized in In re: Gerth, "for setoff purposes, a debt arises when all transactions necessary for liability occur, regardless of whether the claim was contingent, unliquidated, or unmatured when the petition was filed." In re: Gerth, 991 F.2d at 1433, In re Buckner, 218 B.R. 137, 145-149 (B.A.P. 10th 1988), See also, In re: Telephone Warehouse, Inc., 259 B.R. 64, 69 (Bankr. D. Del. 2001).

34.   In this case, *assuming arguendo*, that the GM Confirmations were not terminated as of the petition date, BMCA owed pre-petition obligations to LBHI, albeit

contingent and unmatured, that were rooted in and arose under the pre-petition GM Confirmations. Consequently, the requirement that the reciprocal claims of the parties must arise pre-petition is satisfied and the setoff rights of BMCA are preserved under section 553 (a) of the Bankruptcy Code.

35.    As a final argument, the Debtors' assert that even if the technical requirements for setoff exist, the Court should exercise its equitable power to deny setoff. The Debtors, however, fail to articulate any reason why it would be inequitable to allow setoff rights. Under the circumstances of this case, where BMCA is simply the victim of LBHI's bankruptcy, there is no legitimate basis to deny setoff rights. As the Second Circuit has repeatedly emphasized, courts should interfere with setoff rights only under the most "compelling of circumstances." In re: Bennett Funding Group, Inc., 146 F.3d at 137 (court not required to deprive "financial institution of its [setoff] rights in order to increase the chance of recovery of other equally innocent creditors").

36.    The Debtors have failed to present any evidence demonstrating that such compelling circumstances exist. Instead, they rely merely upon an unsupported conclusory allegation that allowing setoff would be inequitable. Accordingly, their argument should be rejected and the Court should deny the Motion to the extent it seeks to bar setoff rights of counterparties to assumed trade confirmations.

**[Intentionally Left Blank]**

## CONCLUSION[3]

For the reasons stated above, the Motion should be denied to the extent it seeks to assume the trade confirmations identified in paragraph 3 of this objection and the GM Confirmations. Alternatively, in the event the LBHI is permitted to assume the GM Confirmations LBHI must compensate BMCA for losses suffered as a result of LBHI's breach. Moreover, BMCA should be authorized to offset any obligations it may owe to LBHI under the GM Confirmations against all debts owed by LBHI to BMCA. Finally, BMCA should not be precluded from asserting its offset right with respect to the Kabel Confirmations.

Dated: New York, New York
November 28, 2008

        Respectfully submitted,

        LOWENSTEIN SANDLER PC

        /s/ Paul Kizel
        Paul Kizel, Esq. (PK4176)
        65 Livingston Avenue
        Roseland, NJ 07068
        Tel: (973) 597-2500
        Fax: (973) 597-2400

        -and-

        1251 Avenue of the Americas
        18th Floor
        New York, New York 10020
        (212) 262-6700

---

[3] BMCA reserves the right to supplement this objection and conduct discovery in response to any reply filed by the Debtors. In addition, BMCA reserves the right to join any objections filed by any other counterparty to an assumed trade confirmation that is a subject of the Motion.