## EXHIBIT B

FROM :                          FAX NO. :8187902848             Nov. 01 2006 08:07AM P2
10/25/2006    14:22    LEHMAN → 916468859551

# LEHMAN BROTHERS

## 2nd Revised Transaction

Date:       25 October, 2006

To:         WEST CORPORATION
            Attention:    Documentation Unit

From:       Lehman Brothers Special Financing Inc.
            Mandy Lee - Confirmations Group
            Facsimile:    (+1) 646-885-9551 (United States of America)
            Telephone:    212-526-9257

Ref. Numbers:    Risk ID: 1319249L / Effort ID: N1078739 / Global Deal ID: 2687162

This Confirmation supersedes and replaces in its entirety any other confirmation referencing the Transaction to which this Confirmation relates.

---

Dear Sir or Madam:

The purpose of this communication (this "Confirmation") is to confirm the terms and conditions of the transaction (the "Transaction") entered into between Lehman Brothers Special Financing Inc. ("Party A") and WEST CORPORATION ("Party B") on the Trade Date specified below. This Confirmation constitutes a "Confirmation" as referred to in the ISDA Form specified below.

This Confirmation evidences a complete and binding agreement between Party A and Party B as to the terms of the Transaction to which this Confirmation relates. This Confirmation, together with all other documents confirming transactions entered into between us and referring to the ISDA 1992 Master Agreement (Multicurrency-Cross Border) (the "ISDA Form" or the "Agreement"), shall supplement, form a part of, and be subject to an agreement in the form of the ISDA Form as if we had executed an agreement in such form (but without any Schedule) on the Trade Date of this Transaction. In the event of any inconsistency between the provisions of that agreement, and this Confirmation, this Confirmation will prevail for the purpose of this Transaction.

The definitions and provisions contained in the 2000 ISDA Definitions as published by the International Swaps and Derivatives Association, Inc. (the "Definitions") are incorporated into this Confirmation. In the event of any inconsistency between the Definitions and the terms of this Confirmation, this Confirmation will govern. For the purpose of the Definitions, references herein to a "Transaction" shall be deemed to be references to a "Swap Transaction".

Party A and Party B each represents that entering into the Transaction is within its capacity, is duly authorized and does not violate any laws of its jurisdiction of organization or residence or the terms of any agreement to which it is a party. Party A and Party B each represents that (a) it is not relying on the other party in connection with its decision to enter into this Transaction, and neither party is acting as an advisor to or fiduciary of the other party in connection with this Transaction regardless of whether the other party provides it with market information or its views; (b) it understands the risks of the Transaction and any legal, regulatory, tax, accounting and economic consequences resulting therefrom; and (c) it has determined based upon its own judgment and upon any advice received from its own professional advisors as it has deemed necessary to consult that entering into the Transaction is appropriate for such party in light of its financial capabilities and objectives. Party A and Party B each represents that upon due execution and delivery of this Confirmation, this Confirmation will constitute a legally valid and binding obligation, enforceable against it in accordance with its terms, subject to applicable principles of bankruptcy and creditors' rights generally and to equitable principles of general application.

LEHMAN BROTHERS SPECIAL FINANCING INC.
LEHMAN BROTHERS INC.

NOV-01-2006 09:56AM    From: 8187902848              ID:WEST CORP              Page:002  R=100%

The terms of the particular Transaction to which this communication relates are as follows:

**General Terms:**

| | |
|---|---|
| Trade Date: | 02 October, 2006 |
| Effective Date: | 24 October, 2006 |
| Termination Date: | 24 October, 2009, subject to adjustment in accordance with the Modified Following Business Day Convention. |
| Notional Amount: | USD 288,000,000.00 for the initial Calculation Period and amortizing on the Amortization Dates as set forth below under "Current Notional", subject to adjustment in accordance with the Modified Following Business Day Convention. |

| Amortization Date | Current Notional |
|---|---|
| 24 October, 2006 | USD 288,000,000.00 |
| 24 October, 2007 | USD 252,000,000.00 |
| 24 October, 2008 | USD 216,000,000.00 |

**Floating Amounts I:**

| | |
|---|---|
| Floating Amount I Payer: | Party A |
| Floating Amount I Payer Payment Dates: | The 24th calendar day of each month from and including 24 November, 2006 to and including 24 January, 2007, subject to adjustment in accordance with the Modified Following Business Day Convention. |
| Floating Rate Option: | USD-LIBOR-BBA |
| Designated Maturity: | 1 month |
| Spread: | Inapplicable |
| Floating Rate Day Count Fraction: | Actual/360 |
| Reset Dates: | The first Business Day of each Calculation Period |

**Floating Amounts II:**

| | |
|---|---|
| Floating Amount II Payer: | Party A |
| Floating Amount II Payer Payment Dates: | The 24th calendar day of each January, April, July and October from and including 24 April, 2007 to and including the Termination Date, subject to adjustment in accordance with the Modified Following Business Day Convention. |
| Floating Rate Option: | USD-LIBOR-BBA |
| Designated Maturity: | 3 months |

| | |
|---|---|
| Spread: | Inapplicable |
| Floating Rate Day Count Fraction: | Actual/360 |
| Reset Dates: | The first Business Day of each Calculation Period |

Fixed Amounts:

| | |
|---|---|
| Fixed Amount Payer: | Party B |
| Fixed Amount Payer Payment Dates: | The 24th calendar day of each January, April, July and October from and including 24 January, 2007 to and including the Termination Date, subject to adjustment in accordance with the Modified Following Business Day Convention. |
| Fixed Rate: | 5.00% per annum |
| Fixed Rate Day Count Fraction: | Actual/360 |
| Business Days: | New York |

Additional Provisions:

1. The "Cross Default" provisions of Section 5(a)(vi) of the ISDA Form will apply.

    "Threshold Amount" means the lesser of (i) USD 100 million or (ii) two percent (2%) of the Stockholders' Equity of Lehman Brothers Holdings Inc. ("Holdings"), in the case of Party A and Holdings (or its equivalent in any other currency), and USD 25 million in the case of Party B (or its equivalent in any other currency).

    "Stockholders' Equity" means with respect to an entity, at any time, the sum at such time of (i) its capital stock (including preferred stock) outstanding, taken at par value, (ii) its capital surplus and (iii) its retained earnings, minus (iv) treasury stock, each to be determined in accordance with generally accepted accounting principles.

2. Additional Termination Events. Capitalized terms used in this Section and not otherwise defined in this Confirmation shall have the meanings given to them in the Amended and Restated Commitment Letter dated August 22, 2006 (the "Commitment Letter") among Lehman Commercial Paper, Inc. Lehman Brothers Inc., Deutsche Bank AG Cayman Islands Branch, Deutsche Bank AG New York Branch, Deutsche Bank Securities Inc, Bank of America N.A., Bank of America Bridge LLC , Banc of America Securities LLC, Wachovia Bank, National Association, Wachovia Investment Holding, LLC, Wachovia Capital Markets, LLC and Omaha Acquisition Corp..

    (i)     It shall be an Additional Termination Event if the Credit Facilities shall not have been entered into and become effective on or before 17 November, 2006 in substantially the terms contemplated therein (except as otherwise disclosed to Party A). Notwithstanding the provisions of Section 6(b) of the ISDA Form, the occurrence of this Additional Termination Event shall cause an automatic termination of this Transaction as of 11:59 p.m. New York time on 17 November, 2006 (the "Early Termination Date") without any further action by either Party A or Party B. Upon the occurrence of an Additional Termination Event, the provisions of Section 6(e) of the ISDA Form shall be

inapplicable and no payments shall be payable under Section 6(e) of the ISDA Form by Party A or Party B in respect of this Transaction and no payments, rights or other obligations will be owed by either party with respect to this Transaction.

(ii)    Upon the effectiveness of the Credit Facilities, the Termination Event referenced in (i) shall no longer constitute a Termination Event and each of the following events shall constitute a Termination Event with Party B as the Affected Party:

(a)    The occurrence or existence of an Event of Default (as defined in the Credit Documentation) that results in any indebtedness under such Credit Documentation becoming due and payable before it would otherwise have been due and payable.

(b)    Party B's obligations to Party A under this Transaction cease to be equally and ratably secured and guaranteed with Party B's obligations to the Lenders under the Credit Documentation in accordance with the security documents and guaranties included in the Credit Documentation or any Collateral in which a security interest has been created under security documents included in the Credit Documentation has been released in violation of the provisions of the Credit Documentation.

(c)    The Credit Facilities shall for any reason terminate or otherwise be cancelled.

The security documents and guaranties included in the Credit Documentation shall be Credit Support Documents for the Agreement and the pledgors and guarantors (however described) party to such agreements, other than Party B, shall be a Credit Support Provider(s) in respect of the Agreement.

3. Other Provisions.

(a)    Section 5(a)(v) of this ISDA Form is modified by adding the following at the end of subpart (2) thereof:

"; provided, however, that notwithstanding the foregoing, an Event of Default shall not be deemed to have occurred at any time under this subpart (2) if (i) the default is a failure to pay or deliver caused solely by an error or omission of an administrative or operational nature and funds or other property required to be paid or delivered were available to such party to enable it at the required time to make the relevant payment or delivery when due, and (ii) no Specified Indebtedness has as a result become, or been declared, due and payable, before it would otherwise have been due and payable."

(b)    Section 5(a)(vi) of the ISDA Form is amended by adding the following at the end thereof:

"; provided, however, that notwithstanding the foregoing, an Event of Default shall not be deemed to have occurred at any time under either (1) or (2) above if at such time (i) the event or condition referred to in (1) above or the failure to pay referred to in (2) above is a failure to pay caused solely by an error or omission of an administrative or operational nature and funds were available to such party to enable it at the required time to make the relevant payment when due, and (ii) no Specified Indebtedness has as a result become, or been declared, due and payable under such agreements or instruments, before it would otherwise have been due and payable."

(c) Section 6(d)(i) of the ISDA Form is amended by deleting from the last sentence thereof the word "conclusive".

(d) For the purpose of Section 6(e) of the ISDA Form:

    The Second Method will apply.

    Market Quotation will apply.

(e) The third sentence of Section 13(c) of the ISDA Form is deleted.

(f) Credit Support Document: With respect to Party A, the Guarantee of Lehman Brothers Holdings Inc.

    Credit Support Provider: With respect to Party A, Lehman Brothers Holdings Inc.

Miscellaneous:

| | |
|---|---|
| Calculation Agent: | Party A; Party B may challenge any determination or calculation (each a "determination") made by the Calculation Agent. Party B does not anticipate that it will regularly make any such challenge or that any such challenges will occur as regularly as monthly. Pending the resolution of any such challenge, only the undisputed amount shall be paid. After a challenge is made, the parties shall negotiate in good faith to resolve it. If such negotiations do not produce a mutually acceptable result within two Local Business Days, each party shall promptly obtain quotations from two leading dealers in the relevant market as of the relevant time, and the challenge shall be resolved on the basis of the arithmetic mean of the quotations so obtained. Any amount due as a result of the resolution of a challenged determination shall be payable on the first Local Business Day after such resolution. |
| Office: | For the purposes of this Transaction, Party A is not a Multibranch Party, and Party B is not a Multibranch Party. |
| Governing Law: | The laws of the State of New York (without reference to choice of law doctrine). |
| Termination Currency: | USD. |
| Representations: | Section 3 of the ISDA Form is hereby amended by adding the following additional subsection: Eligible Contract Participant. It is an "eligible contract participant" as defined in the Commodity Futures Modernization Act of 2000. |

FROM :                                    FAX NO. :8187902848              Nov. 01 2006 08:09AM  P7
10/25/2006   14:22   LEHMAN → 916468859551                                        NU.224

| Waiver of Trial By Jury: | Insofar as is permitted by law, each party irrevocably waives any and all rights to trial by jury in any legal proceeding in connection with this Transaction, and acknowledges that this waiver is a material inducement to the other party's entering into this Transaction hereunder. |
|---|---|

Please confirm your agreement with the foregoing by executing this Confirmation and returning such Confirmation, in its entirety, to us at facsimile number (+1) 646-885-9551 (United States of America), Attention: Confirmations Group.

Yours sincerely,

Lehman Brothers Special Financing Inc.

Anatoly Kozlov
Lehman Brothers Special Financing Inc.

*[signature]*

Accepted and agreed to:

**WEST CORPORATION**

By: *[signature: Paul M. Mendlik]*
Name: Paul M. Mendlik
Title: CFO

NOV-01-2006  09:58AM   From: 8187902848         ID:WEST CORP         Page:007  R=100%