# EXHIBIT C

# LEHMAN BROTHERS

**Revised Transaction**

Date:   2 September, 2008

To:     WEST CORPORATION
        Attention:   Documentation Unit

From:   Lehman Brothers Special Financing Inc
        Confirmations Group
        Facsimile:   (+1) 646-885-9551 (United States of America)
        Telephone:   William Cardinale {646-333-9506}

Ref. Numbers:   Risk ID: 2051515L / Effort ID: N2259413 / Global Deal ID: 4020955

---

Dear Sir or Madam:

The purpose of this communication (this "Confirmation") is to confirm the terms and conditions of the transaction (the "Transaction") entered into between Lehman Brothers Special Financing Inc. ("Party A") and West Corporation ("Party B") on the Trade Date specified below. This Confirmation constitutes a "Confirmation" as referred to in the Agreement specified below. **This Confirmation supersedes and replaces in its entirety any other confirmation referencing the Transaction to which this Confirmation relates.**

This Confirmation evidences a complete and binding agreement between Party A and Party B as to the terms of the Transaction to which this Confirmation relates. In addition, you and we agree to use all reasonable efforts promptly to negotiate, execute and deliver an agreement in the form of the ISDA Master Agreement (Multicurrency-Cross Border) (the "ISDA Form"), with such modifications as you and we will in good faith agree. Upon the execution by you and us of such an agreement, this Confirmation shall supplement, form a part of, and be subject to that agreement (the "Agreement"). All provisions contained or incorporated by reference in the Agreement, upon its execution, will govern this Confirmation except as expressly modified below. Until we execute and deliver the Agreement, this Confirmation, together with all other documents confirming transactions entered into between us and referring to the ISDA Form, shall supplement, form a part of, and be subject to an agreement in the form of the ISDA Form as if we had executed an agreement in such form (but without any Schedule) on the Trade Date of this Transaction. In the event of any inconsistency between the provisions of that agreement, or the Agreement, when executed, and this Confirmation, this Confirmation will prevail for the purpose of this Transaction.

The definitions and provisions contained in the 2006 ISDA Definitions as published by the International Swaps and Derivatives Association, Inc. (the "Definitions") are incorporated into this Confirmation. In the event of any inconsistency between the Definitions and the terms of this Confirmation, this Confirmation will govern. For the purpose of the Definitions, references herein to a "Transaction" shall be deemed to be references to a "Swap Transaction".

Party A and Party B each represents that entering into the Transaction is within its capacity, is duly authorized and does not violate any laws of its jurisdiction of organization or residence or the terms of any agreement to which it is a party. Party A and Party B each represents that (a) it is not relying on the other party in connection with its decision to enter into this Transaction, and neither party is acting as an advisor to or fiduciary of the other party in connection with this Transaction regardless of whether the other party provides it with market information or its views; (b) it understands the risks of the Transaction and any legal, regulatory, tax, accounting and economic consequences resulting therefrom; and (c) it has determined based upon its own judgment and upon any advice received from its own professional

LEHMAN BROTHERS SPECIAL FINANCING INC.
745 SEVENTH AVENUE, NEW YORK NY 10019

advisors as it has deemed necessary to consult that entering into the Transaction is appropriate for such party in light of its financial capabilities and objectives. Party A and Party B each represents that upon due execution and delivery of this Confirmation, it will constitute a legally valid and binding obligation, enforceable against it in accordance with its terms, subject to applicable principles of bankruptcy and creditors' rights generally and to equitable principles of general application.

The terms of the particular Transaction to which this Confirmation relates are as follows:

**General Terms:**

| | |
|---|---|
| Trade Date: | 25 August, 2008 |
| Effective Date: | 29 August, 2008 |
| Termination Date: | 29 August, 2011 subject to adjustment in accordance with the Modified Following Business Day Convention. |
| Notional Amount: | USD 200,000,000.00 |

**Fixed Amounts:**

| | |
|---|---|
| Fixed Amount Payer: | Party B |
| Fixed Amount Payer Payment Dates: | The 29th calendar day of each month, from and including 29 September, 2008 to and including the Termination Date, subject to adjustment in accordance with the Modified Following Business Day Convention. |
| Fixed Rate: | 3.532% |
| Fixed Rate Day Count Fraction: | Actual/360 |

**Floating Amounts:**

| | |
|---|---|
| Floating Amount Payer: | Party A |
| Floating Amount Payer Payment Dates: | The 29th calendar day of each month, from and including 29 September, 2008 to and including the Termination Date, subject to adjustment in accordance with the Modified Following Business Day Convention. |
| Floating Rate Option: | USD-LIBOR-BBA |
| Designated Maturity: | One Month |
| Spread: | Inapplicable |
| Floating Rate Day Count Fraction: | Actual/360 |
| Reset Dates: | The first day of each Calculation Period |
| **Business Days:** | London and New York |

Risk ID: 2051515L / Effort ID: 2259413 / Global Deal ID: 4020955

**Additional Provisions:** (provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over these Additional Provisions):

1. The **"Cross Default"** provisions of Section 5(a)(vi) of the ISDA Form will apply.

   **"Threshold Amount"** means the lesser of (i) USD 100 million or (ii) two percent (2%) of the Stockholders' Equity of Lehman Brothers Holdings Inc. ("Holdings"), in the case of Party A and Holdings (or its equivalent in any other currency), and USD 35 million, in the case of Party B and any Credit Support Provider of Party B (or its equivalent in any other currency).

   **"Stockholders' Equity"** means with respect to an entity, at any time, the sum at such time of (i) its capital stock (including preferred stock) outstanding, taken at par value, (ii) its capital surplus and (iii) its retained earnings, minus (iv) treasury stock, each to be determined in accordance with generally accepted accounting principles.

2. The **"Credit Event Upon Merger"** provisions of Section 5(b)(iv) of the ISDA Form will apply to Party A and Party B, provided, that the term "materially weaker" means, with respect to Party A, that Holdings or the resulting, surviving or transferee entity of Holdings fails to maintain a long-term senior, unsecured debt rating of at least Baa3 as determined by Moody's Investors Service, Inc. ("Moody's") and BBB- from Standard & Poor's Ratings Services, a division of the McGraw-Hill Companies Inc. ("S&P").

3. **Additional Termination Events.** Each of the following shall constitute an Additional Termination Event:

   (i) **Party A as a Secured Party.** At any time (1) Party A ceases to be one of the Secured Parties, (2) all or substantially all of the Collateral is released from the Liens of the relevant Loan Documents without the prior written consent of Party A, (3) (A) the liabilities of any Credit Support Provider of Party B in respect of its guarantee obligations under the relevant Loan Documents are limited without the prior written consent of Party A or (B) any Credit Support Provider of Party B is released from its guarantee obligations under the relevant Loan Documents without the prior written consent of Party A, (4) the obligations or liabilities of Party B or any of its Credit Support Providers under this Confirmation and the Credit Support Documents are deemed subordinate to or junior in right or priority of payment to any of the Loans (and, for the avoidance of doubt, if there are multiple tranches of Loans, the most senior tranche) under the Loan Documents, (5) Party B or any of its Credit Support Providers takes any action that may render its obligations or liabilities under this Confirmation or the Credit Support Documents as unsecured indebtedness, or (6) the obligations and liabilities of Party B and its Credit Support Providers under this Confirmation and the relevant Credit Support Documents cease to constitute the Obligations of the Loan Parties and cease to rank pari passu with and equal in right and priority of payment with the Loans (and, for the avoidance of doubt, if there are multiple tranches of Loans, the most senior tranche) under the Loan Documents. For the purpose of the foregoing Termination Event, Party B shall be the Affected Party.

   (ii) **Financial Covenants.** At any time Party B fails to comply with any of the Financial Condition Covenants (A) set forth in Section 7.11 of the Credit Agreement in effect as of the date of this Confirmation or (B) of any and all other financial covenants added to the Credit Agreement at any time in the future: For the purpose of the foregoing Termination Event, Party B shall be the Affected Party.

(iii) **Change of Control.** A Change of Control (as defined in the Credit Agreement as in effect as of October 24, 2006) has occurred. For the purpose of the foregoing Termination Event, Party B shall be the Affected Party.

(iv) **Failure to deliver an ISDA Master Agreement.** Party B fails to execute and deliver to Party A the Agreement within 60 calendar days following the Trade Date. For the purpose of the foregoing Termination Event, Party B shall be the Affected Party.

(v) **Failure to Deliver Authority and Capacity Documentation.** Party B fails to execute and deliver to Party A (i) evidence reasonably satisfactory to Party A of Party B's and its Credit Support Provider's authority to enter into this Confirmation, any Credit Support Document and each Transaction entered into hereunder and (ii) an incumbency certificate or other evidence reasonably satisfactory to Party A of the authority and genuine signature of the individual signing this Confirmation and any Credit Support Document on behalf of Party B within 60 calendar days following the Trade Date. For the purpose of the foregoing Termination Event, Party B shall be the Affected Party.

4. **Additional Representations of Party B.** Party B represents to Party A in accordance with Section 3 of the ISDA Form (which representations will be deemed to be repeated by Party B at all times until the termination of this Transaction) that:

(1) **Portfolio Management.** The Transaction has been, and will be, entered into not for the purpose of speculation but solely in connection with portfolio management, asset, risk, and liability management and hedging activities of Party B.

(2) **Compliance with Laws.** It is in compliance, in all respects, with all applicable laws, rules, regulations, interpretations, guidelines, procedures, and policies of applicable regulatory authorities affecting this Confirmation, the Transaction, or the performance of Party B's obligations hereunder.

(3) **Contractual Obligations.** This Confirmation (and the Transaction) is entered into by Party B in accordance with and as permitted by the Contractual Obligations of Party B, and this Confirmation (and the Transaction) does not and will not violate or conflict with any Contractual Obligation of Party B nor result in any breach of or constitute a default in respect thereof.

(4) **Credit Support Documents.** The Credit Support Documents of Party B were duly executed and delivered by each of its Credit Support Providers and the obligations under each Credit Support Document constitute the legal, valid and binding obligations of each Credit Support Provider that is a party to such Credit Support Document, enforceable in accordance with its terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles of general application (regardless of whether enforcement is sought in a proceeding in equity or at law)).

(5) **Credit Support Providers.** The execution, delivery and performance of each Credit Support Document by each Credit Support Provider that is a party to such Credit Support Document do not violate or conflict with (i) any law applicable to such Credit Support Provider, (ii) any provision of the constitutional documents of such Credit Support

      (6)    **Swap Contract.** (i) Party A is one of the Secured Parties, (ii) this Confirmation (and the Transaction) is a Swap Contract and a Secured Hedge Agreement and (iii) the obligations and liabilities of Party B and its Credit Support Providers under this Confirmation and the relevant Credit Support Documents constitute the Obligations of the Loan Parties and rank pari passu with and equal in right and priority of payment with the Loans (and, for the avoidance of doubt, if there are multiple tranches of Loans, the most senior tranche) under the Loan Documents.

Provider, (iii) any order or judgment of any court or other agency applicable to such Credit Support Provider, or (iv) any Contractual Obligation of such Credit Support Provider nor result in any breach of or constitute a default in respect thereof.

5.    **Additional Definitions.** Capitalized terms used and not otherwise defined herein shall have the meanings ascribed therein in the Credit Agreement (as defined below). Additionally, Section 14 of the ISDA Form is hereby amended by adding the following definitions in their appropriate alphabetical order:

"**Credit Agreement**" means the Credit Agreement, dated as of October 24, 2006 (as amended, supplemented, waived or otherwise modified from time to time), by and among Party B, as borrower, the Lenders party thereto, Lehman Commercial Paper Inc., as administrative agent and swing line lender, Deutsche Bank Securities Inc. and Bank of America, N.A., as syndication agents, and Wachovia Bank, National Association and General Electric Capital Corporation, as co-documentation agents, Lehman Brothers Inc. and Deutsche Bank Securities Inc., as joint lead arrangers and Lehman Brothers Inc., Deutsche Bank Securities Inc. and Banc of America Securities LLC, as joint bookrunners.

"**Credit Support Documents**" means, with respect to Party B, the Loan Documents.

"**Credit Support Provider**" means, with respect to Party B, each of the Loan Parties party to the Loan Documents.

"**USD**" means United States Dollars.

6.    **Amendments to Loan Documents.** Party B agrees and covenants to Party A that Party B will not request or agree to any amendment, modification, addition, waiver or consent to or under any of the Loan Documents without Party A's prior written consent (such consent not to be unreasonably withheld) if such amendment, modification, addition, waiver or consent could have a materially adverse effect on Party A's rights under this Transaction or Party B's ability to comply with the terms of this Transaction or to perform under this Transaction.

**Miscellaneous:**

| | |
|---|---|
| Calculation Agent: | Party A |
| Office: | For the purposes of this Transaction, Party A is not a Multibranch Party, and the Office of Party B is its Head Office. |

**Transfer:** Notwithstanding Section 7 of the ISDA Form, Party A may assign its rights and obligations under this Transaction, in whole and not in part, to any Affiliate of Lehman Brothers Holdings Inc. ("Holdings") effective upon delivery to Party B of the guarantee by Holdings, in favor of Party B, of the obligations of such Affiliate; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election. Furthermore, Party B may assign its rights and obligations under this Confirmation, to any third party investment grade broker dealer with which Party A has an executed ISDA Master Agreement and Credit Support Annex with Party A's consent, which consent shall not be unreasonably withheld.

**Governing Law:** The laws of the State of New York (without reference to choice of law doctrine); provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election.

**Termination Currency:** USD; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election.

**Representations:** Section 3 of the ISDA Form is hereby amended by adding the following additional subsection:

Eligible Contract Participant. It is an "eligible contract participant" as defined in the Commodity Futures Modernization Act of 2000; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election.

**Waiver of Trial By Jury:** Insofar as is permitted by law, each party irrevocably waives any and all rights to trial by jury in any legal proceeding in connection with this Transaction, and acknowledges that this waiver is a material inducement to the other party's entering into this Transaction hereunder; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election.

**Payments on Early Termination:** For the purpose of Section 6(e) of the ISDA Form, Market Quotation and the Second Method will apply; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election.

**Netting of Payments:** Subparagraph (ii) of Section 2(c) of the ISDA Form will not apply to any Transaction between the parties hereto; provided, however, any provision to the contrary in the Agreement, when executed, shall take precedence over this election.

| | |
|---|---|
| Set Off: | Any amount (the "Early Termination Amount") payable to one party (the Payee) by the other party (the Payer) under Section 6(e), in circumstances where there is a Defaulting Party or one Affected Party in the case where an Event of Default, Termination Event under Section 5(b)(iv), or any Additional Termination Event has occurred, will, at the option of the party ("X") other than the Defaulting Party or the Affected Party (and without prior notice to the Defaulting Party or the Affected Party) be reduced by its set-off against any amount(s) (the "Other Amount(s)") payable (whether at such time or in the future or upon the occurrence of a contingency) by the Payee to the Payer (and to any Affiliate of the Payer) (irrespective of the currency, place of payment or booking office of the obligation) under this Confirmation and any other agreement(s) between the Payee and the Payer (and between any Affiliate of the Payer) or instrument(s) or undertaking(s) issued or executed by one party to, or in favor of, the other party and any Affiliates of such other party (and the Other Amount(s) will be discharged promptly and in all respects to the extent it is so set-off). X will give notice and an accounting to the other party of any set-off effected under this Section 6(f). |
| | For this purpose, either the Early Termination Amount or the Other Agreement Amount (or the relevant portion of such amounts) may be converted by X into the currency in which the other is denominated at the rate of exchange at which such party would be able, acting in a reasonable manner and in good faith, to purchase the relevant amount of such currency. |
| | If an obligation is unascertained, X may in good faith estimate that obligation and set-off in respect of the estimate, subject to the relevant party accounting to the other when the obligation is ascertained. |
| | Nothing in this Section 6(f) shall be effective to create a charge or other security interest. This Section 6(f) shall be without prejudice and in addition to any right of set-off, combination of accounts, lien or other right to which any party is at any time otherwise entitled (whether by operation of law, contract or otherwise)." |

08-13555-mg    Doc 1851-4    Filed 11/28/08    Entered 11/28/08 10:35:32    Exhibit C
Pg 9 of 9

Please confirm your agreement with the foregoing by executing this Confirmation and returning such Confirmation, in its entirety, to us at facsimile number (+1) 646-885-9551 (United States of America), Attention: Confirmations Group.

Yours sincerely,

Lehman Brothers Special Financing Inc

By: *Anatoly Kozlov*
Name: Anatoly Kozlov
Title: Authorized Signatory

Accepted and agreed to:

WEST CORPORATION

By: *Paul Mendlik*
Name:
Title: Paul M. Mendlik
Chief Financial Officer & Treasurer

Risk ID: 2051515L / Effort ID: 2259413 / Global Deal ID: 4020955

Page 8 of 8