Hearing Date: December 3, 2008 at 10:00 a.m.
Objection Deadline: November 28, 2008 at 4:00 p.m.

VENABLE LLP
Rockefeller Center, 25th Floor
1270 Avenue of the Americas
New York, New York  10020
Telephone:  (212) 307-5500
Carollynn H.G. Callari
Gregory A. Cross
Edward A. Smith

Attorneys For Danske Bank A/S, London Branch


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                          :
In re:                                    :   Chapter 11
                                          :
LEHMAN BROTHERS HOLDINGS INC., *et al*.,  :   Case No. 08-13555 (JMP)
                                          :
                    Debtors.              :   Jointly Administered
                                          :
-------------------------------------------------------------x

**LIMITED OBJECTION OF DANSKE BANK A/S, LONDON BRANCH
TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS
105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH
PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND
<u>ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

    Danske Bank A/S, London Branch ("Danske") hereby submits this limited

objection (the "Limited Objection") to the motion, dated November 13, 2008, of the above-

captioned debtors and debtors in possession (collectively, the "Debtors") for an Order Pursuant

to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or

Assumption and Assignment of Prepetition Derivative Contracts (the "Motion").[1]  In support of this Limited Objection, Danske respectfully states as follows:

## BACKGROUND

A.  The Master Repurchase Agreement

1.  Lehman Commercial Paper Inc. ("LCPI") and Danske, among others, are party to that certain Master Repurchase Agreement dated August 30, 1999 (as amended from time to time, the "MRA").  In 2005 and 2007, respectively, two Transactions (as defined in the MRA) under the MRA were entered into between LCPI and Danske.  By letter dated September 23, 2008, Danske notified LCPI that an Event of Default (as defined in the MRA) occurred under the MRA.  Danske's declaration of a default resulted in an automatic acceleration of the Repurchase Price (as defined in the MRA) payable by LCPI.

B.  The Motion

2.  The Debtors' Motion seeks to establish procedures related to the settlement or assumption and assignment of prepetition "Derivatives Contracts."  The Debtors define Derivative Contracts as contracts "in which the contractual obligations and values are keyed to one or more underlying assets or indices of asset values and are subject to movements in the financial markets." Motion ¶ 8.  According to the Motion, Derivative Contracts include "securities contracts," "forward contracts," "repurchase agreements," or "swap agreements" and in some cases are governed by a "master netting agreement," as each term is defined in the Bankruptcy Code.  Motion ¶ 8.  The Motion, if granted, would allow the Debtors to deal with each such Derivative Contract in accordance with the Debtors' proposed procedures set forth in the Motion (the "Proposed Procedures") without having to seek Court approval each time the

---

1  Unless otherwise indicated, capitalized terms have the meanings ascribed to them in the Motion.

- 2 -

Debtors take an action with respect to a Derivative Contract. The Proposed Procedures also would impact substantive rights of counterparties to Derivative Contracts, as set forth below.

OBJECTION

3. Danske's objects to the Motion to the extent the Proposed Procedures would modify, limit, or prejudice Danske's rights under the MRA in contravention of the protections afforded Danske under the "safe harbor" and other provisions of the Bankruptcy Code and applicable non-bankruptcy law. In effect, the Debtors seek to improperly modify Danske's rights under the MRA by superimposing procedures that would undercut Danske's rights under the MRA. Accordingly, the Motion should be denied.

4. The Bankruptcy Code contains certain "safe harbor" provisions that provide special treatment for certain types of financial and other contracts, such as swaps, repurchase agreements, forward contracts, securities contracts, and commodities contracts. Pursuant to the Bankruptcy Code, a "repurchase agreement" ("REPO") includes an agreement which provides for the transfer of mortgage loans, mortgage-related securities, or interests in mortgage loans or mortgage-related securities, against the transfer of funds by the transferee of such loans, securities, or interests, with a simultaneous agreement by the transferee to re-transfer the loans, securities, or interests at a date certain not later than one year after such transfer or on demand against the transfer of funds. 11 U.S.C. § 101(47); see also Caylon New York Branch v. American Home Mortgage Corp. (In re American Home Mortgage, Inc.), 379 B.R. 503 (Bankr. D. Del. 2008).

5. Section 559 of the Bankruptcy Code provides that, inter alia:

> "[t]he exercise of a contractual right of a repo participant or financial participant to cause the liquidation, termination or acceleration of a repurchase agreement because of a condition of the kind specified in section 365(e)(1) of this title shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by order of a court or administrative

agency in any proceeding under this title, unless, where the debtor is a stockbroker or securities clearing agency, such order is authorized under the provisions of the Securities Investor Protection Act of 1970 or any statute administered by the Securities and Exchange Commission.

11 U.S.C. § 559.[2]

6. The rights of a REPO participant that is a "financial institution" as defined in section 101(22) of the Bankruptcy Code, among others, may also be covered under section 555 of the Bankruptcy Code, which provides similar protections pertaining to securities contracts.[3] See 11 U.S.C. § 555. Danske is a banking institution organized under the laws of Denmark and a financial institution within the meaning of section 101(22) of the Bankruptcy Code.

7. Further, section 362 of the Bankruptcy Code strengthens the safe harbor protections by expressly excluding from the automatic stay, among other things, a REPO participant's exercise of any contractual right under or related to any repurchase agreement "to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with [a repurchase agreement]." 11 U.S.C. § 362(b)(7). According to the legislative history of the Financial Netting Improvements Act of 2006, which added sections 362(b)(6), (7) and (17), the purpose of the amendment was to "protect enforcement, free from the automatic stay, of collateral, setoff or netting provisions in . . . repurchase agreements" and to "protect the exercise of 'contractual rights' as defined in Sections 555, 556, 559 or 560, as appropriate, which include not only rights evidenced by agreements between the parties, but

---

[2] Also, section 561 provides in relevant part that "the exercise of any contractual right, because of a condition of the kind specified in section 365(e)(1), to cause the liquidation, termination, or acceleration of or to offset or net termination values, payment amounts, or other transfer obligations arising under or in connection with one or more (or the termination, liquidation, or acceleration of one or more) - (1) securities contracts; . . . or (4) repurchase agreements . . ., shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by order of a court . . . ." 11 U.S.C. § 561(a).

[3] Section 741 of the Bankruptcy Code includes a repurchase transaction in the definition of a "securities contract." 11 U.S.C. § 741(7).

other rights as set forth in those definitions." H.R. R.EP. NO. 109-648, pt. 1, at 7 (2006), reprinted in 2006 U.S.C.C.A.N. 1585, et seq. In addition, section 362(o) of the Bankruptcy Code provides that "[t]he exercise of rights not subject to the stay arising under subsection (a) pursuant to paragraph . . . (7) of subsection (b) shall not be stayed by any order of a court or administrative agency in any proceeding under [title 11]." 11 U.S.C § 362(o). Accordingly, it is clear that the Bankruptcy Code prohibits the Court from staying, avoiding, or otherwise limiting a REPO participant's rights under the REPO to terminate, liquidate or accelerate the REPO.

8. The MRA falls within the Bankruptcy Code's definitions of a REPO and securities contract and, accordingly, the safe harbor provisions of sections 555 and 559 of the Bankruptcy Code, as well as sections 362(b)(7) and (o), among other provisions, are applicable and the rights of Danske as the non-debtor party to the MRA can not be stayed, avoided or otherwise limited by the operation of any provision of the Bankruptcy Code. To the extent the Proposed Procedures would apply to the MRA, the Proposed Procedures violate the protections afforded Danske under the safe harbor provisions and should not be approved. The Debtors can not subvert protections afforded Danske under the MRA and Bankruptcy Code by proposing administrative procedures that impact substantive rights.

9. For example, first, the Proposed Procedures appear to give the Debtors the unilateral right to determine which Derivative Contracts remain executory and therefore potentially subject to an assumption and assignment under section 365 of the Bankruptcy Code.

10. Second, the Proposed Procedures seek to limit a REPO participant's rights under the REPO to terminate, liquidate or accelerate the REPO. Such impact on Danske's rights clearly is in violation of the safe harbor provisions. For instance, according to the Proposed Procedures, the Debtors will determine which Derivative Contracts will be assumed and assigned, the

Debtors will propose a cure amount and the Debtors will select an assignee with whom the counterparty to the Derivative Contract will henceforth have to deal with. These are all rights which are left to the sole discretion of Danske under the MRA. Under such procedures, upon the Debtors determination to assume and assign a Derivative Contract, the counterparty's current rights with respect to terminating, liquidating and/or accelerating the Derivative Contract will be taken away.

11.    Third, the Proposed Procedures may improperly affect a counterparty's rights under a Derivative Contract to set-off and/or to reconcile amounts owed pursuant to provisions of the Derivative Contracts and before this Court. It appears that a Derivative Contract counterparty could be forced to litigate with the Debtors before this Court respecting any cure disputes (with disputed amounts being held in escrow in the interim), while also having to address payment obligations and rights under the Derivative Contract with the assignee, potentially before a separate Court. Danske objects to any procedure that could alter Danske's right to establish marks for the securities in its sole discretion pursuant to the terms of the MRA.

12.    Fourth, while the fast-paced procedures proposed for determining cure amounts and designating an assignee as a "Qualified Assignee" are convenient for the Debtors, they are not equitable, violate due process and contradict Danske's rights under the terms of the MRA. For example, the imposition of a short time period in which a counterparty has to respond to the Debtors' asserted cure amounts and the requirement that a counterparty provide supporting detail when such information may be in the possession of the Debtors or third parties, poses undue obligations on the counterparty and contradicts with Danske's rights under the MRA. Similarly, the Debtors' proposal that a mere credit rating of a potential assignee (or its credit support provider) is per se sufficient to satisfy the assignment provisions of section 365 of the

Bankruptcy Code and removes any right of a counterparty to challenge such designation or to seek adequate assurance is contrary to common notions of due process and the provisions of section 365, and would improperly alter Danske's rights under the MRA.

13.     Fifth, the Proposed Procedures respecting settlements of terminated Derivative Contracts need to be clarified to the effect that the Court is merely authorizing the Debtors to take certain actions without further Court approval with respect to such settlements, and that the Court is not altering or affecting the rights and obligations of the Debtors and respective counterparty under the terms of a Derivative Contract.

14.     Sixth, any attempt to alter Danske's substantive rights under the MRA would need to be brought before the Court pursuant to an adversary proceeding or contested matter, not merely as an administrative procedural motion.

15.     The Debtors desire to streamline issues respecting Derivative Contracts does not trump the rights of counterparties under such contracts and the protections afforded such counterparties by the Bankruptcy Code.  Accordingly, the Proposed Procedures to the extent applicable to the MRA are improper and violate various protections afforded Danske pursuant to the Bankruptcy Code and MRA.  The Motion therefore should be denied.

16.     Danske reserves all of its rights under the MRA and sections 362, 365, 555 and 559 and any other pertinent provisions of the Bankruptcy Code.

## **CONCLUSION**

For the foregoing reasons, Danske respectfully request that the Court (a) deny the Motion and (b) grant such other or further relief as the Court deems just and proper.

Dated: New York, New York
November 28, 2008

> VENABLE LLP
>
> By: */s/ Carollynn H.G. Callari*
> Carollynn H.G. Callari (CC-5804)
> Gregory A. Cross
> Edward A. Smith (ES-2461)
>
> Rockefeller Center
> 1270 Avenue of the Americas
> New York, New York 10020
> (212) 307-5500
>
> Attorneys for Danske Bank A/S, London Branch