Jeffrey S. Sabin
Robert M. Dombroff
Jared R. Clark
Joshua Dorchak
**BINGHAM McCUTCHEN LLP**
399 Park Avenue
New York, New York 10022
(212) 705-7000

Attorneys for Deutsche Bank AG

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                               :
In re                                          :    Chapter 11
                                               :
LEHMAN BROTHERS HOLDINGS INC., *et al.,*       :    Case No. 08-13555 (JMP)
                                               :
         Debtors.                              :    (Jointly Administered)
                                               :
------------------------------------------------------------x

### DEUTSCHE BANK AG'S LIMITED OBJECTION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION OR REJECTION OF OPEN TRADE CONFIRMATIONS

Plaintiff Deutsche Bank AG ("DB"), by its attorneys Bingham McCutchen LLP, submits this limited objection (the "Objection") to the motion (the "Motion")[1] by Lehman Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI," and together with LBHI, the "Debtors") for the entry of an order approving assumption or rejection of certain open trade confirmations, and in support of the Objection states as follows:

---

[1] All capitalized terms not defined herein shall have the definitions ascribed to them in the Motion.

A/72758683.3

**PRELIMINARY STATEMENT**

1.  The Debtors here attempt, among other things, to deny upfront and without examining any of the contracts at issue, all Counterparties' statutory and common law rights under Bankruptcy Code section 553 to set off prepetition debts owed to a debtor against prepetition claims owed by a debtor. The Debtors make this attempt based solely on the theory that the assumption of a contract by a debtor automatically and always destroys the mutuality required for setoff, because the debtor and the debtor-in-possession are somehow not the same for purposes of assessing mutuality. For support, the Debtors rely on two cases from the 1980s (*Walat Farms* and *Evatt*) espousing the minority view on this issue, and offer policy arguments challenging the entire notion of setoffs as antithetical to the proper workings of the bankruptcy process.

2.  The Debtors' arguments should not prevail, because:

    - The better reasoned, majority view -- supported by Supreme Court precedent -- holds that a debtor and a debtor-in-possession are one and the same when it comes to determining the presence or absence of mutuality;

    - Courts within this Circuit strongly favor the enforcement of setoff rights; and

    - The Debtors have shown no "compelling circumstances" that would justify the wholesale denial of the Counterparties' rights of setoff.

3.  This does not mean that all Counterparties to Assumed Trades necessarily will be entitled to set off claims owed by the Debtors against obligations owed to the Debtors. That determination will require a factual analysis under the standards applicable

to setoff.[2] But it does mean that this Court should not adopt the wrong view on whether the assumption of a contract by a debtor should destroy setoff rights in every instance, simply to suit the Debtors' circumstances in connection with the Open Trade Confirmations.[3]

## ARGUMENT

**I.    Courts Within this Circuit Strongly Favor Enforcing Setoff Rights.**

4.    As the Supreme Court has explained: "The adjustment of demands by counterclaim or set-off, rather than by independent suit, is favored and encouraged by the law, to avoid circuity of action and injustice." *North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co.*, 152 U.S. 596, 615-16 (1894).

5.    Contrary to this long-established, black-letter principle, the Debtors attempt to paint a picture of setoff rights as disfavored in the Second Circuit. This is demonstrably wrong. "This Circuit . . . [has] made clear the favored position of setoff and that that position extends to bankruptcy." *Official Comm. Of Unsecured Creditors v. Mfrs. and Traders Trust Co. (In re the Bennett Funding Group)*, 146 F.3d 136, 139 (2d Cir. 1998) (affirming setoff); *see also Official Comm. Of Unsecured Creditors v. Mfrs. and Traders Trust Co. (In re the Bennett Funding Group)*, 212 B.R. 206, 212 (B.A.P. 2d Cir. 1997) ("[S]etoff 'occupies a favored position in our history of jurisprudence,' a position with which the courts should interfere 'only under the most compelling

---

[2] DB is not presently seeking relief from the automatic stay to exercise setoff rights. Rather, DB files this Objection to prevent the Debtors from foreclosing this right across the board. DB reserves all rights to seek relief from stay once it has had an opportunity to gather the factual background necessary for a stay relief motion, should that prove necessary under the circumstances.

[3] The Motion refers to numerous contracts with a large volume of counterparties. DB submits this Objection solely on the issue of setoff, having not yet had the opportunity to analyze fully all factual assertions set forth in the Motion and Exhibits thereto. DB expressly reserves the right to contest all such factual assertions.

3

circumstances.'") (citations omitted) (affirming setoff); *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1164 (2d Cir. 1979).

6. To establish a right to setoff, a creditor must show the following elements: "(1) the debtor must owe a debt to the creditor which arose pre-petition; (2) the debtor must have a claim against the creditor which arose pre-petition; and (3) the debt and the claim must be mutual." *In re Bennett Funding*, 212 B.R. at 212 (citations omitted).[4] By the Motion, the Debtors challenge only the mutuality prong of this test -- arguing that debtors-in-possession are different in some way from their prepetition selves. This is also demonstrably wrong, as it stands at odds with the relevant text of the Bankruptcy Code, its logic, history, and purpose. As shown below, an analysis contrary to the Debtors' argument should prevail.

## II. A Debtor-in-Possession is the Same as the Prepetition Debtor for Purposes of Mutuality.

7. The central purpose of Section 553 of the Bankruptcy Code is to **preserve** rights of setoff, not defeat them. The setoff doctrine traces its origins to Roman law, and "is grounded on the absurdity of making A pay B when B owes A." *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913). As the Court of Appeals for the Sixth Circuit explained long ago, "[t]he principle upon which the rule [of setoff] proceeds is that in case of mutual debts, it is only the balance which is the real and just sum owing by or to the bankrupt." *Prudential Ins. Co. of Am. v. Nelson (In re Chickamauga Trust Co.)*, 101 F.2d 441, 443 (6th Cir. 1939). Not surprisingly, setoff has been recognized under every one of the Nation's bankruptcy laws as an established element of a creditor's claim, and

---

[4] Bankruptcy Code Section 553 does not itself provide a right of setoff, but the Debtors -- rightly -- concede by their silence the fact that applicable law does so. *See, e.g.,* N.Y. Debtor and Creditor Law § 151.

4

properly entitles a claim to secured status under section 506(a). Indeed, as the Second Circuit has recognized, a right of setoff is "security of the most perfect kind." *Boston Ins. Co. v. Nogg (In re Yale Express Sys., Inc.)*, 362 F.2d 111, 114 (2d Cir. 1966).

8. Nothing in the power to assume or reject an executory contract overrides a creditor's right of setoff. Indeed, by its terms, section 553 precludes such an argument in its entirety, stating: "**Except** as otherwise provided in this section and in **sections 362 and 363** of this title, **this title does not affect** any right of a creditor to offset a mutual debt . . . ." 11 U.S.C. § 553(a) (emphasis added). If Congress had intended the debtor's power to assume or reject an executory contract under section 365 to have the effect of limiting a right of setoff, Congress could and would have so specified as it did with its cross-references in section 553 to sections 362 and 363. The fact that Congress did not do so suggests unequivocally that it intended no such effect. *See Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 560-61 (1990) (superseded by statute on other grounds) (exception appearing in one section of the Bankruptcy Code, but not another, demonstrates that Congress did not intend exception where it was not included); *Bates v. United States*, 522 U.S. 23, 29-30 (1997) ("[I]t is generally presumed that Congress acts intentionally . . . in the disparate inclusion or exclusion [of particular language]." (citation omitted)).

9. The Debtors' Motion is also at odds with the principle that the assumption of an executory contract is *cum onere*. *See* 3 L. King, COLLIER ON BANKRUPTCY ¶ 365.03[1] (15th ed. rev. 2008) ("[A contract] may not be assumed in part and rejected in part. The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding the obligations as well as the benefits."); *N.L.R.B. v Bildisco &*

5

*Bildisco*, 465 U.S. 513, 531-32 (1984); (Motion ¶ 29).  Nothing in section 365 even remotely purports to excuse debtors from any setoff obligations they may have upon assumption of executory contracts, and as discussed, we have every reason to believe Congress never intended it to do so.

10.    The Debtors seek to avoid the text, logic, and history behind the preservation of setoff rights in bankruptcy, and likewise to overcome the absence of any statutory authority for their Motion, by promoting a discredited fiction:  that a debtor-in-possession is a different entity from the debtor, thereby defeating mutuality for setoff purposes.  The Debtors rely on two cases in support of this fiction, *Walat Farms* and *Evatt*.  Neither case, however, has withstood the test of time.  As the Eighth Circuit has put it, "if the different entity theory were applicable in a § 553 context, every assumed executory contract would automatically fail to satisfy the requirement of mutuality." *Agricultural Stabilization and Conservation Serv. v. Gerth*, 991 F.2d 1428, 1436 (8th Cir. 1993); *see In re Allen*, 135 B.R. 856, 863 (Bankr. N.D. Iowa 1992) ("Essentially, if the Court accepts the debtor's mutuality argument, any time a bankruptcy debtor assumes an executory contract the assumption itself would destroy mutuality and a § 553 setoff would be unavailable.").  As noted, however, "[n]othing in the language of § 553 indicates Congress intended to limit the right of setoff to cases not involving executory contracts."  *Gerth*, 991 F.2d at 1436 (citing *In re Allen*, 135 B.R. at 868-69).  Well reasoned authority compels disregarding the distinction that the Debtors' offer between the pre and postpetition debtor.

11.    As the Supreme Court explained in a case the Debtors cite (Motion ¶ 29), if the debtor-in-possession "were a wholly 'new entity,' it would be unnecessary for the

6

A/72758683.3

Bankruptcy Code to allow it to reject executory contracts, since it would not be bound by such contracts in the first place.  For our purposes, it is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have employed absent the bankruptcy filing." *Bildisco*, 465 U.S. at 528; *see also* 11 U.S.C. § 1101(1) ("'debtor in possession' means debtor," except where a trustee is serving); *Gerth*, 991 F.2d at 1436 ("We hold that when a debtor-in-possession assumes an executory contract, the debtor and the debtor-in-possession are the same entity for purposes of mutuality under § 553."); *In re Ontario Locomotive & Indus. Ry. Supplies*, 126 B.R. 146, 147 (Bankr. W.D.N.Y. 1991) (observing that *Bildisco* "would appear to have laid to rest the 'separate entity' doctrine for all time"); *In re Allen*, 135 B.R. at 868 ("This Court believes the language of *Bildisco* is unambiguous and intended to put a stop to the rather artificial and fictitious distinctions between the debtor-in-possession and the debtor.").

12.    Apart from the logic of the Supreme Court's compelling analysis, the Debtors' gloss on the concept of mutuality is a cosmetic corruption at war with the concept's fundamental purpose.  At bottom, the mutuality concept exists basically to prevent the inequity of A attempting to offset its obligation to B through the use of a debt that B owes to C.  *See* 5 L. King, COLLIER ON BANKRUPTCY ¶ 553.03[3][a]-[e] (15 ed. rev. 2008) (explaining the various elements of the concept of mutuality).  By design, the concept is not intended to pose any obstacle in cases such as this one where A and B face each other across contracts they entered into before one of them filed for bankruptcy.  Again, if the Debtors' argument were correct, there would be little left to the doctrine of

7

setoff, as a debtor-in-possession (or trustee) could always claim that, after the commencement of a bankruptcy case, it now had possession of the relevant claim or debt that once belonged to the prepetition debtor.

13. Thus, for example, assumption does not alter the "capacity" in which the Debtors act -- the concept of "capacity" being one of the elements of mutuality. "There is no need under [§ 553] to utilize the mutuality requirement to prevent the setoff based on a distinction between the **capacity** or entities of debtor-in-possession and debtor." *In re Allen*, 135 B.R. at 869 (emphasis added). "If Congress intended mutuality to be read so broadly it would not have served any purpose to include a requirement that the debt arose prepetition." *Id*. "Such an interpretation of mutuality under § 553 would render the prepetition debt requirement meaningless . . . ." *Id*. This would violate the maxim of statutory construction that requires a statute to be "interpreted to give all parts meaning." *Id*. (citations omitted); *see Gerth*, 991 F.2d at 1436 ("[O]ur holding that the debtor and debtor-in-possession are the same entity allows § 553 to be interpreted in a manner that gives the entire statute meaning. . . . If the requirement of mutuality were interpreted to prevent setoff based on a distinction between the debtor and the debtor-in-possession, the prepetition requirement would be meaningless.").

14. Nor does assumption change the time (prepetition) when the mutual obligations in the Open Trade Confirmations came into force. By seeking to assume certain Open Trade Confirmations, the Debtors concede that the obligations set forth in those confirmations were reciprocal obligations prepetition, not subject to any condition precedent. So, "[t]o find that assuming the contract changes the effective date obligations arise under the contract to a postpetition time essentially would allow the debtor to

8

modify the contract." *In re Allen*, 135 B.R. at 863.  "Nothing in § 365 states or even suggests that the assumption of a contract allows the debtor to escape or modify terms which do not work to its benefit." *Id.*; *see Gerth*, 991 F.2d at 1432 ("[M]ere assumption of an executory contract does not alter when the obligations under the contract arose."); *In re Buckner*, 165 B.R. 942, 946-47 (D. Kan. 1994) (same).

15. In sum, "[a]s a general observation, the recent trend of cases deciding the issue presented by this case [has] followed the court's analysis in *Matthieson* [permitting setoff where the mutual obligations existed prior to bankruptcy, despite the fact that the amount of liability would not be determined until postpetition], rejecting the analysis of *Walat Farms*" offered by the Debtors here.  *In re Buckner*, 165 B.R. at 946; *Gerth*, 991 F.2d at 1432 ("The majority of the courts which have considered this issue have recognized the split between *Walat Farms* and *Matthieson*, and have followed *Matthieson*.").  DB submits that this Court should do the same.

16. As the Debtors note (Motion ¶ 32), Judge Beatty's decision in *Genuity* is instructive -- but not for the reasons the Debtors offer.  In *Genuity*, Judge Beatty **upheld** creditors' rights to set off the debtors' prepetition obligations against the creditors' prepetition claims.  *See In re Genuity*, 323 B.R. 79, 83 (Bankr. S.D.N.Y. 2005) ("This is not a case where the Debtors are asserting any of their pre-petition defenses.  Rather, they assert a post-petition right to offset cure obligations with the Pre-Petition Deposits **in an attempt to deny the Code § 553 rights of the Carriers** to set off the Pre-Petition Deposits against the pre-petition obligations owed by the Debtors.") (emphasis added) (denying debtors' motion).

9

17. The Debtors' *Genuity* argument conflates the section 365 requirement that a debtor cure defaults in order to assume a contract with the notion that by assuming a contract a debtor somehow becomes newly entitled to receive whole dollars on debts owed to it by a creditor. That second concept is misleading -- a debtor is generally entitled to whole dollars from a creditor who owes it a debt (unless that creditor happens to be insolvent also), even when the contract is not executory, and a proper setoff always denies a debtor that full recovery. It is understandable that the Debtors here -- and everywhere else -- do not like this fact, but as Judge Beatty points out to the debtors in *Genuity* at the end of her decision, in this respect, "inequality is inherent in the very nature of setoff." *In re Genuity*, 323 B.R. at 85 (citation omitted). Judge Beatty goes on to say that "[t]he greater inequity, however, lies in the core of the Debtors argument [that the security deposits in that case should not be used for their prepetition purpose]." *Id*.

18. Judge Beatty also reminds us that "[t]he right of setoff is a remedy as old as bankruptcy itself. Its initial recognition in American bankruptcy law was in the Act of 1800 and it has been incorporated into every one of the Nation's subsequent bankruptcy acts, as well as the current Bankruptcy Code." *In re Genuity*, 323 B.R. at 82 (citations omitted). For the reasons set forth above, the Debtors should not be permitted to extinguish this venerable right on the less well reasoned view of the issue they present. As explained below, the Debtors also have shown no equitable basis to eliminate the Counterparties' setoff rights here.

### III. The Debtors Have Shown No "Compelling Circumstances" to Justify Denying Setoff Rights.

19. There is no equitable reason to grant the Motion, let alone one sufficiently compelling to override centuries of law. As explained above, the law prescribes the

10

correct, equitable outcome in this case, and the Debtors' have failed to demonstrate why a contrary outcome is warranted. Indeed, what they ask for is no less than a wholesale rejection of the legal foundation on which the doctrine of setoff rests.

20. Perhaps sensing the weakness of their position, the Debtors end the Motion with the argument that even if the "Counterparties [are] able to demonstrate that the literal requirements for setoff have been satisfied" (Motion ¶ 35), the Court should exercise its equitable discretion to deny that right to each and every Counterparty to an Assumed Trade. To the contrary, long-standing Second Circuit precedent (again from a case relied on by the Debtors, *see* Motion ¶ 27) teaches that "[t]he statutory remedy of setoff should be enforced unless the court finds after due reflection that allowance would not be consistent with the provisions and purposes of the Bankruptcy Act as a whole." *In re Bennett Funding*, 212 B.R. at 216 (quoting an earlier Second Circuit case decided under the Bankruptcy Act, *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1164 (2d Cir. 1979), which in turn noted Judge Friendly's characterization of an injunction against setoff as "strong medicine" in *In re Lehigh and Hudson Ry. Co.*, 468 F.2d 430, 434 (2d Cir. 1972)).

21. According to the Second Circuit Bankruptcy Appellate Panel in *In re Bennett Funding*, "[w]ith respect to the Bankruptcy Code's goals and objectives, given the inherent premium on notions of equity, 'the right of set off . . . allows entities that owe each other to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.''" *In re Bennett Funding*, 212 B.R. at 212 (quoting *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 19 (1995)) (affirming a creditor's right to setoff notwithstanding a challenge by the trustee).

11

A/72758683.3

22. "[C]ourts generally have restrained the use of equitable discretion in prohibiting otherwise valid setoffs to two general categories of case." *In re Allen*, 135 B.R. at 870. "One class of cases is where the creditor committed an inequitable, illegal, or fraudulent act, or the setoff is against public policy." *Id*. "The other class of cases is where the setoff would significantly harm or destroy the debtor's ability to reorganize." *Id*.

23. The Debtors have shown neither situation. Instead they argue that setoff harms creditors lacking setoff rights. (*See* Motion ¶ 35). But here again, the Debtors offer an exception that would swallow the rule, as it would deny setoff in every instance where some creditors had setoff rights and others did not. Put differently, a court is "not required to deprive [a] financial institution of its rights in order to increase the chance of recovery of other equally innocent creditors." *In re Bennett Funding*, 146 F.3d at 141; *see also In re Bennett Funding*, 212 B.R. at 216 (rejecting the argument "that it would be inequitable to allow the Bank to exercise a right of setoff because the Bank would be receiving money at the expense of thousands of other individual investors . . . ."); *see also United States v. Maxwell*, 157 F.3d 1099, 1102 (7th Cir. 1998) ("'The argument that setoff should be denied to avoid the inequity of preferential treatment is an argument against the very concept of setoff, not an argument against its application to the facts of this case.'" (citations omitted)).

24. DB submits that the Debtors' equitable argument does not constitute "compelling circumstances" to justify depriving DB, or any of the other Counterparties to the Assumed Trades, of their rights to setoff -- provided said counterparties can demonstrate such rights under the applicable standards.

12

**Memorandum of Law**

25.     Because the legal points and authorities upon which this Objection relies are incorporated herein, DB respectfully requests that the requirement of service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

**Notice**

26.     DB has served the Objection on the named parties listed in the Debtors' notice of the Motion, in accordance with the Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures and filed the Objection on the docket electronically. DB submits that this constitutes good and adequate service of the Objection. In addition, DB has served the Objection on those parties listed in the Debtors' affidavit of service on the Motion (the "Debtors' Affidavit"), in the manner described in the Debtors' Affidavit or by hand.

## **CONCLUSION**

27.    For the reasons given above, DB respectfully requests that this Court deny the Motion insofar as it seeks a determination regarding setoff rights.

Dated: New York, New York
       November 28, 2008

                               **BINGHAM McCUTCHEN LLP**

                    By: /s/Jeffrey S. Sabin
                       Jeffrey S. Sabin
                       jeffrey.sabin@bingham.com
                       Robert M. Dombroff
                       robert.dombroff@bingham.com
                       Jared R. Clark
                       jared.clark@bingham.com
                       Joshua Dorchak
                       joshua.dorchak@bingham.com
                       399 Park Avenue
                       New York, New York  10022
                       (212) 705-7000

                       Attorneys for Deutsche Bank AG

A/72758683.3