BLANK ROME LLP
Attorneys for ITALEASE FINANCE S.p.A.
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000
Andrew B. Eckstein
Rocco A. Cavaliere

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) Jointly Administered |
| Debtors. | |

---

**OBJECTION OF ITALEASE FINANCE S.p.A. TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS**

ITALEASE FINANCE S.p.A. ("ITALEASE") hereby, *with reference to the 2005 ITA Swaps* (as defined below), submits this objection (the "Objection") to the motion of the above-captioned debtors (the "Debtors") for an order pursuant to §§ 105 and 365 of chapter 11 of title 11 of the United State Code (the "Bankruptcy Code") to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts (the "Motion"). In support of the Objection, ITALEASE respectfully states as follows:

**Background**

1. On September 15, 2008, and thereafter, several of the Debtors, including Lehman Brothers Holdings, Inc. ("LBHI") filed Chapter 11 bankruptcy petitions in this Court. On

October 3, 2008, Lehman Brothers Special Financing, Inc. ("LBSF") filed a Chapter 11 bankruptcy petition.

2. On September 17, 2008, the Office of the United States Trustee for the Southern District of New York appointed the official committee of unsecured creditors (the "Committee") in the Debtors' cases.

### Debtors' Derivative Contracts with ITALEASE

3. LBSF entered into with ITALEASE a 1992 ISDA Master Agreement (Multicurrency-Cross Border) and a Schedule dated as of On March 22, 2005 (the "Master Agreement") and various transactions thereunder (collectively, the "2005 ITA Swaps") relating to certain notes issued on March 23, 2005 by ITALEASE in connection with a securitization (the "Securitization") of lease receivables originated by BANCA ITALEASE S.p.A., being a primary Italian bank ("BANCA ITALEASE").

4. On June 24, 2004, LBSF and ITALEASE entered into another 1992 ISDA Master Agreement (Multicurrency-Cross Border) and a Schedule and various transactions thereunder (collectively, the "2004 ITA Swaps") relating to certain notes issued on June 24, 2004 by ITALEASE in connection with a further securitization of lease receivables originated by BANCA ITALEASE. In respect of the 2004 ITA Swaps, a separate objection to the Motion has been submitted.

5. On October 3, 2003, LBSF and BANCA ITALEASE entered into a 1992 ISDA Master Agreement (Multicurrency-Cross Border) and a Schedule and various transactions thereunder (collectively, the "Banca Swaps"). Certain of the Banca Swaps are back to back swap arrangement and related to the 2004 ITA Swaps and the 2005 ITA Swaps and, thus, the relevant securitizations, in that payments due from LBSF to BANCA ITALEASE thereunder were equal

2

to and contingent upon payments received by LBSF from ITALEASE under the 2004 ITA Swaps and the 2005 ITA Swaps and payments due from BANCA ITALEASE to LBSF thereunder were equal to and contingent upon payments being due from LBSF to ITALEASE under the 2004 ITA Swaps and the 2005 ITA Swaps. In respect of the Banca Swaps, a separate objection to the Motion has been submitted.

6. Payments in respect of the 2005 ITA Swaps were based on one or more fixed and floating rates, often based on EURIBOR settings, or on a weighted average calculated by reference to the returns in respect of assets which were the subject of the related Securitization.

7. The obligations of LBSF under the 2005 ITA Swaps were guaranteed by Lehman Brothers Holdings Inc. ("LBHI").

8. The filing of each voluntary chapter 11 petition by LBHI and LBSF, respectively, constituted an "Event of Default" under the Master Agreement. *See Master Agreement,* § 5(a)(vii). Upon the occurrence of each such Event of Default, the non-defaulting party, in this case, ITALEASE, had the right, upon notice to LBSF, to designate an "Early Termination Date" (as defined in the Master Agreement) in respect of all outstanding transactions under the 2005 ITA Swaps, effectively terminating the 2005 ITA Swaps. *See Master Agreement,* § 6(a).

9. On September 29, 2008, ITALEASE exercised its right to terminate the 2005 ITA Swaps by delivering a notice designating September 30, 2008 as the Early Termination Date with respect to the 2005 ITA Swaps.

**The Debtors' Motion**

10. The Debtors' Motion seeks to establish procedures in connection with assumption and assignment of certain "Derivative Contracts" (defined in the Motion) that have not yet been terminated by various counterparties (the "Assignment Procedures"). Furthermore, the Debtors'

3

Motion seeks to establish expedited procedures in connection with settlement of terminated Derivative Contracts (the "Termination Procedures"). The Assignment Procedures and the Termination Procedures vary from the procedures negotiated and set forth in the Master Agreement and the 2005 ITA Swaps.

## Objection To Motion

11.     The Motion impermissibly seeks to modify and abrogate counterparties' rights under various derivative contracts which were negotiated by such counterparties with LBSF. The 2005 ITA Swaps between ITALEASE and LBSF have been validly terminated by ITALEASE in accordance with their respective terms. Accordingly, the Assignment Procedures should not apply to the 2005 ITA Swaps. However, because the Debtors, in their Motion, reserve the right to argue that counterparties may not have validly terminated their respective Derivative Contracts, out of an abundance of caution and expressly reserving all of its rights, ITALEASE submits the following objections to the Assignment Procedures. *See Motion*, p. 4, fn. 2.

12.     First, the Master Agreement expressly prohibits assignment or transfer of a counterparty's obligations under the Master Agreement and the 2005 ITA Swaps without the consent of the counterparty. Despite the Debtors' arguments to the contrary, the Derivative Contracts at issue in the Debtors' Motion, unlike the conventional executory contract, cannot be assumed and assigned pursuant to section 365 of the Bankruptcy Code, unless the party to such Derivative Contract consents thereto. Indeed, the Motion severely threatens to undercut counterparties' rights to terminate and setoff under Congress's specially crafted provisions of the Bankruptcy Code designed to protect counterparties to Derivative Contracts. 11 U.S.C. §§ 555-561.

4

13. Second, the Assignment Procedures indicate that an assignee will automatically be determined a "Qualified Assignee" if such assignee or its credit support provider has a Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or any equivalent thereof." *See, Motion,* p. 9. ITALEASE objects to this provision. ITALEASE cannot be compelled to accept a counterparty with such ratings. Moreover, the ratings by S&P, Moody's, and Fitch cannot be relied on as the sole determinative factor to qualify a proposed assignee. A party contemplating the change of a counterparty under a master agreement also considers, and has the right to consider, other factors relating to the choice of a counterparty including but not limited to (i) aggregate credit exposure to the counterparty and compliance with the counterparty's credit policies, (ii) the impact of any tax or withholding obligations and (iii) compliance with underlying debt instruments. These considerations are particularly important because transactions similar to the 2005 ITA Swaps are complex and require sophisticated counterparties. As such, the choice of a non-qualified counterparty could have an adverse impact on the underlying Securitization. In sum, the Assignment Procedures should not abrogate the right of ITALEASE and other counterparties to object to any proposed assignee on any valid grounds, including whether or not such assignee complies with the standard suggested by the Debtors for a "Qualified Assignee".

14. Third, the Assignment Procedures provide counterparties with a mere five business days to file an objection to a notice of proposed assignment on the grounds of, among other things, (i) an improper cure amount, and (ii) adequate assurance of future performance. The suggested timeframe is clearly inadequate. Calculations concerning open trades can be very difficult and time-consuming and more time is needed to properly calculate cure amounts. Also, five business days from the date of service may not be sufficient to determine whether the

5

requirement of adequate assurance of future performance has been met. ITALEASE submits that counterparties should be provided with at least ten business days notice to formulate an objection to an Notice of proposed assignment. Only then will counterparties be assured a fair opportunity to protect their rights.

15. Fourth, the Assignment Procedures should not adversely impact counterparties' valid rights of termination and setoff under the Bankruptcy Code. The Assignment Procedures unfairly expedite the termination process thereby affecting counterparties' rights under the Bankruptcy Code to determine when to offset and terminate Derivative Contracts. At the very least, ITALEASE and other counterparties' rights to terminate Derivative Contracts should not be abrogated unless and until an assignment has been finally consummated. The Assignment Procedures should make it clear that a counterparty which may receive a notice of a proposed assignment (triggering the five business day objection period), should still have the right, prior to consummation of the assignment, to terminate its Derivative Contracts and related master agreements with the Debtors.

16. Fifth, the provisions of the Assignment Proceedings that purport to cure all defaults (aside from the LBHI and LBSF bankruptcy filing defaults) improperly strip ITALEASE from pursuing its other rights arising from the right to terminate.

17. Sixth, the Assignment Procedures should not interfere with ITALEASE's and other counterparties' rights to object to a proposed assignment on any valid grounds including but not limited to a proposed assignee's failure to provide a separate unconditional guarantee from an affiliated third party or otherwise. As noted above, LBSF's obligations under the Master Agreement and the 2005 ITA Swaps have been guaranteed by LBHI. ITALEASE's position

6

should be in no worse position should the Debtors seek to assign the 2005 ITA Swaps to an assignee.

18. Seventh, the Assignment Procedures state that "In any instance where a Derivative Contract is memorialized pursuant to a master agreement, the Debtors may assume and assign, pursuant to the Assignment Procedures, only all, but not fewer than all of the Derivative Contract transactions entered into pursuant to the master agreement." *See, Motion,* p. 12. The definition of "Derivative Contracts" in the Motion does not appear to directly include the underlying master agreement. Thus, this provision could suggest that the Debtors may only be required to assign certain confirmations and not necessarily the master agreement. This provision should be amended to make it abundantly clear that to the extent that the Debtors seek to assign the 2005 ITA Swaps, the Debtors must also be required to assign the Master Agreement to the same proposed assignee.

19. Eighth, the Assignment Procedures state that the Debtors will attempt to resolve each objection to a notice of proposed assignment consensually but to the extent that an objection cannot be resolved, the Debtors may seek Court authorization of the proposed assignment. ITALEASE does not object to the proposed goal of a consensual resolution of an objection to an Notice of proposed assignment. However, the Assignment Procedures should be amended to specify a more definitive timeframe for resolution and also provide counterparties the right to seek a Court hearing to the extent that the Debtors are unnecessarily delaying the resolution of a particular objection.

20. As stated at the outset, the 2005 ITA Swaps have been validly terminated in accordance with the explicit terms of the Master Agreement and the 2005 ITA Swaps. ITALEASE has terminated the 2005 ITA Swaps because it does not wish to be obligated

7

thereunder, whether to LBSF or an assignee. ITALEASE will agree to voluntarily withdraw its objections to the Assignment Procedures if, prior to the hearing on the Motion, the Debtors confirm that the 2005 ITA Swaps were validly terminated and therefore the Assignment Procedures do not impact ITALEASE in any way. In addition and in accordance with its rights under the Master Agreement and the 2005 ITA Swaps, ITALEASE entered into certain swap transactions replacing the 2005 ITA Swaps. Requiring ITALEASE to unwind those replacement transactions or to maintain both the replacement transactions as well as transactions assigned pursuant to the Motion would have a material adverse impact on ITALEASE as well as may negatively affect the public rating assigned to the notes issued in the context of the underlying Securitization, thus prejudicing the interests of the relevant noteholders.

21.     Finally, ITALEASE submits that the Termination Procedures for terminated Derivative Contracts should be amended and clarified to (i) specify that the termination payments and expenses should be calculated in accordance with the 2005 ITA Swaps, (ii) specify timeframes in which parties will submit information in support of their calculation of the appropriate termination payment due, and (iii) allow for Court intervention and an opportunity to be heard to the extent a settlement cannot be reached consensually within a specified timeframe. Further, the Debtors must clarify what they mean when they indicate that they "may" provide a release to counterparties in the event that the parties enter into a termination agreement. If the 2005 ITA Swaps are terminated in accordance with the terms thereof or as a result of an order of this Court, all parties should be released.

## Joinder In Other Objections To Motion

22.     ITALEASE joins in other objections filed to the Motion to the extent not inconsistent with this Objection.

8

**Reservation Of Rights**

23.    ITALEASE hereby reserves all of its rights to submit additional arguments in support of this Objection either prior to or at the hearing to consider the Motion and reserves all of its rights under the Master Agreement and the 2005 ITA Swaps.

**Waiver of Memorandum of Law**

24.    ITALEASE requests a waiver of the requirement of a memorandum of law required under Local Bankruptcy Rule 9013-1(a).

WHEREFORE, ITALEASE respectfully requests that this Court deny the Motion consistent with this Objection.

Dated: New York, New York
       November 28, 2008

BLANK ROME LLP
Attorneys for ITALEASE FINANCE S.p.A.


By:   /s/Andrew B. Eckstein
      Andrew B. Eckstein
      Rocco A. Cavaliere
      The Chrysler Building
      405 Lexington Avenue
      New York, New York 10174
      (212) 885-5000

      and

      Karen Du Brul
      One Logan Square
      Philadelphia, Pennsylvania 19103
      (215) 569-5500