STRADLEY, RONON, STEVENS & YOUNG, LLP
2600 One Commerce Square, 26th Floor
Philadelphia, PA 19103
Telephone: 215-564-8000
Facsimile :215-564-8120
Paul A. Patterson
Michael J. Cordone
Mark J. Dorval
E-Mail: PPatterson@stradley.com
       MCordone@stradley.com
       MDorval@stradley.com

**Hearing Date and Time:** December 3, 2008 at 10:00 a.m.

**Objection Deadline:** November 28, 2008 at 4:00 p.m.

*Attorneys for Fulton Bank*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 Case |
| LEHMAN BROTHERS HOLDINGS, INC., | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**FULTON BANK'S LIMITED OBJECTION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS**

Fulton Bank, a Pennsylvania corporation and successor by merger to Resource Bank ("Fulton"), files this limited objection to the November 13, 2008 Motion (the "Motion") of Lehman Brothers Holdings Inc. et al. (collectively, the "Debtors") to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts, and respectfully submits that:

**LIMITED OBJECTION AND RESERVATION OF RIGHTS**

1.    On or about August 16, 2002, Debtor Lehman Brothers Special Financing, Inc. ("LBSF") and Fulton entered into that certain International Swap Dealers Association, Inc.

("ISDA") Master Agreement as of August 16, 2002 (the "Master Agreement," together with the attached Schedule (the "Schedule") and Credit Support Annex (the "Credit Support Annex"), both dated as of August 16, 2002, being referred to collectively as the "ISDA Documents"). A copy of the ISDA Documents is attached as Exhibit "A".

2. Pursuant to the terms of the Master Agreement, as amended by the Schedule and the Credit Support Annex, Fulton provided collateral to LBSF to secure its potential obligations to LBSF under the ISDA Documents. Specifically, pursuant to the ISDA Documents, Fulton caused that certain Freddie Mac mortgage backed security owned by Fulton bearing CUSIP No. 31393JBPZ (the "Collateral"), in the original par amount of $12,500,000, to be transferred to LBSF as "Posted Collateral" (as defined in the Credit Support Annex).

3. Pursuant to Paragraph 6(d) of the Credit Support Annex, LBSF was required to deliver to Fulton all distributions that LBSF received on account of the Collateral, and all such Distributions were to be paid to Fulton no later than the following Local Business Day after LBSF's receipt of such distributions.

4. Under the Master Agreement, an "Early Termination Date" may be declared by the non-defaulting party upon the occurrence of an Event of Default.

5. Among other events, an "Event of Default" occurred under the Master Agreement when Lehman Brothers Holdings, Inc. ("LBHI"), as a "Credit Support Provider," filed a voluntary petition for relief under the Bankruptcy Code on September 15, 2008. Additionally, the filing by LBSF of a petition for relief under the Bankruptcy Code on October 3, 2008, constitutes an additional Event of Default under the ISDA Documents.

6. Fulton has notified LBSF on several occasions of the existence of Events of Default under the ISDA Documentation and has, beginning at least as early as September 15, 2008, made

2

B # 865764 v.1

demand upon LBSF for the return of the Collateral to which Fulton is rightfully entitled. To date, LBSF has ignored Fulton's demands and has not returned the Collateral. Based upon communications received from representatives of LBSF, it is possible that the Collateral may have been sold or otherwise hypothecated or transferred by LBSF to an as yet unidentified third party. Fulton has demanded – but has yet to receive – an accounting as to the disposition of its Collateral, and by this Limited Objection, renews its demand for such an accounting.

7.  The Motion establishes two sets of procedures, one for the assumption and assignment of non-terminated derivative contracts, and a second for the settlement of terminated derivative contracts. Under the proposed assumption and assignment procedures, where a counterparty has posted collateral which needs to be returned as part of the cure amount, the procedures requested in the Motion provide that the Debtors either (i) return the collateral or (ii) pay the value of the collateral to the counterparty. As set forth above, Fulton transferred the Collateral to LBSF, but LBSF has failed and refused, despite repeated demands by Fulton, to return the Collateral to Fulton.

8.  The proposed procedures in the Motion for dealing with terminated derivative contracts are much less detailed with respect to the rights of counterparties who have terminated contracts with LBSF or any of its affiliated debtors, and do not set forth a definitive means by which a counterparty to a terminated contract can be expected to receive that to which it is entitled under a terminated contract; namely, the return of its collateral or its value. Any equitable procedure for terminated derivative contracts should have the same procedure for the return of all collateral or its value to counterparties as does the procedure of the assumption and assignment procedure for the nonterminated contracts.

B # 865764 v.1

9.  Pursuant to the provisions of section 8(b)(iii) of the Credit Support Annex, LBSF was contractually obligated to immediately transfer the Collateral back to Fulton, upon demand duly made. LBSF has no right to retain possession of the Collateral and has no right to refuse to return the Collateral to Fulton. The proposed termination and settlement procedures do not require LBSF to turn over the Collateral or its value (unlike the assumption and assignment procedures), thus violating Fulton's contractual rights under the ISDA Documents.

10. Paragraph 8(c) of the Credit Support Annex requires LBSF to transfer to Fulton "any proceeds and Posted Credit Support [i.e. the Collateral] remaining after liquidation, Set-off and/or application under paragraphs 8(a) and 8(b) after satisfaction in full of all amounts payable by Fulton with respect to any Obligations."

11. As noted above, upon information and belief, LBSF may have sold, pledged, rehypothecated, assigned, used or otherwise disposed of all or part of the Collateral prior to Fulton's declaration of an Early Termination Event under the ISDA Documents. Therefore, if LBSF received consideration for the Collateral, Fulton has a contractual right to the immediate remittance of any such proceeds from any disposition of the Collateral. The proposed termination settlement procedures make turnover permissive – rather than mandatory – in violation of the provisions of the ISDA Documents.

12. The Motion does not make clear – but any order entered approving the Motion should – that any and all rights of counterparties under their applicable contractual arrangements with the Debtors (such as Fulton's ISDA Documents with LBSF) are preserved and shall remain in full force and effect. Such rights would include, without limitation, any and all rights of Fulton under the ISDA Documents, as well as under other applicable law including, without limitation, any rights of set-off and/or recoupment against any Debtor(s) related entities or other parties,

4

including, without limitation, LBSF, LBHI or any of the Debtors affiliates in the future. Fulton respectfully requests that any order entered by this Court approving the Motion expressly reserve any and all contractual or other legal or equitable rights available to Fulton including, without limitation, under the ISDA Documents, under the safe harbor provisions of the Bankruptcy Code with respect to the ISDA Documents and Fulton's rights and remedies with respect thereto and all other rights and remedies available to Fulton under applicable law (including, without limitation, set-off or recoupment).

13. In addition to the objections noted above, Fulton also respectfully submits that the five (5) day time period proposed with respect to assumption and assignment of applicable derivative contracts is too short, and should be lengthened by the Court. Conversely, the Motion does not provide any time by which the Debtors are required to take action with respect to any terminated contracts including, without limitation, a return of any collateral. Any Order approving the Motion should impose specific time frames on the Debtors with respect to taking action in conjunction with terminated contracts, including but not limited to providing an accounting and returning collateral or its value to counterparties.

14. Fulton reserves all remedies, rights, claims, defenses under the ISDA Documents and other applicable law with respect to the ISDA Documents, and other rights, remedies, claims and defenses available to Fulton.

## CONCLUSION

Based on the foregoing, Fulton respectfully requests that the Court modify any order sought by the Debtors with respect to the motion to address both the substantive and procedural

B # 865764 v.1

issues referred to above by Fulton, and that the Court grant such other relief as it may deem just, necessary, or equitable.

                STRADLEY, RONON, STEVENS & YOUNG, LLP

By: /s/ Paul A. Patterson
    2600 One Commerce Square, 26th Floor
    Philadelphia, PA 19103
    Telephone: 215-564-8000
    Facsimile : 215-564-8120
    Paul A. Patterson
    Michael J. Cordone
    Mark J. Dorval
    E-Mail: PPatterson@stradley.com
             MCordone@stradley.com
             MDorval@stradley.com

Attorneys for Fulton Bank

Date: November 28, 2008