Objection Deadline: November 28, 2008 at 4:00 p.m.
Hearing Date: December 3, 2008 at 10:00 a.m

Marc Abrams
Shelley C. Chapman
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

Attorneys for Lexington Insurance Company, AIG CDS, Inc., SunAmerica Life Insurance Company and affiliates

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | ) Chapter 11 |
| **LEHMAN BROTHERS HOLDINGS INC., et al.** | ) Case No. 08-13555 (JMP) |
| Debtors.[1] | ) (Jointly Administered) |

**OBJECTION OF LEXINGTON INSURANCE COMPANY, AIG CDS, INC., AND SUNAMERICA LIFE INSURANCE COMPANY TO THE DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS**

Lexington Insurance Company, AIG CDS, Inc. and SunAmerica Life Insurance Company (the "Objectors") hereby submit this objection (the "Objection") to the Debtors' Motion For An Order Pursuant To Sections 105 And 365 Of The Bankruptcy Code To Establish Procedures For

---

[1] As of the date of the filing of this Objection, the Debtors in these cases are: (i) Lehman Brothers Holdings Inc.; (ii) Lehman Brothers Derivative Products Inc.; (iii) Lehman Commercial Paper Inc.; (iv) Lehman Brothers Commercial Corporation; (v) Lehman Brothers Financial Products Inc.; (vi) Fundo de Investimiento Multimercado Credito Privado; (vii) Lehman Scottish Finance L.P.; (viii) CES Aviation LLC ; (ix) CES Aviation V LLC; (x) CES Aviation IX LLC; (xi) East Dover Limited; (xii) Lehman Brothers Commodity Services Inc.; (xiii) Lehman Brothers Finance SA; (xiv) Lehman Brothers Special Financing Inc.; (xv) Lehman Brothers OTC Derivatives Inc.; (xvi) PAMI Statler Arms LLC; and (xvii) LB 745 LLC.

The Settlement Or Assumption And Assignment Of Prepetition Derivative Contracts. In support of this Objection, the Objectors respectfully state as follows:

## BACKGROUND

1.  Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holding Inc. ("LBHI") and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Certain of the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.  On September 17, 2008, the United States Trustee for the Southern District of New York appointed a statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

3.  On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

4510883

## JURISDICTION

4. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE OBJECTING PARTIES

<u>Lexington Insurance Company</u>

5. Lexington Insurance Company is a party to a derivative contract with Lehman Brothers Special Financing Inc. ("LBSF") dated as of July 15, 2003 which is documented on the form of master agreement prepared by the International Swaps and Derivatives Association (an "ISDA Master Agreement") which ISDA Master Agreement has not yet been terminated by Lexington Insurance Company and under which there are certain transactions which remain outstanding.[2]

<u>AIG CDS, Inc.</u>

6. AIG CDS, Inc. is a party to an ISDA Master Agreement with LBSF dated as of July 14, 2004 which ISDA Master Agreement has not yet been terminated by AIG CDS, Inc. and under which there are certain transactions which remain outstanding.

<u>SunAmerica Life Insurance Company</u>

7. SunAmerica Life Insurance Company is a party to an ISDA Master Agreement with Lehman Brothers Financial Products Inc. dated as of February 28, 1996 which ISDA Master

---

[2] One or more of the Objectors has also terminated derivative contracts with the Debtors; accordingly, the Objectors reserve the right to object to the application of the proposed procedures to the settlement of derivative contracts previously terminated in accordance with their terms.

4510883

Agreement has not yet been terminated by SunAmerica Life Insurance Company and under which there are certain transactions which remain outstanding.

## OBJECTION

8. The Debtors' Motion proposes to unilaterally assume and assign derivative contracts, including ISDA Master Agreements (which the Debtors' motion states were "frequently" used by the Debtors), in a summary procedure that would provide the counterparties to those contracts with minimal notice and opportunity to object. See the Debtors' Motion at 4, paragraph 9. In the case of ISDA Master Agreements, Section 7 of such agreements expressly requires mutual consent to any assignment. If approved by the Court as submitted, the Debtors' proposal could subject the Objectors and others similarly situated to significant risks beyond those which they bargained for in the ISDA Master Agreements and beyond what they face now. Accordingly, the Objectors respectfully request that the Court modify the Debtors' proposed Assumption and Assignment Procedures as follows:

**The Order Should Make Clear That Any Derivative Contracts Assigned Under The Debtors' Proposed Procedures Would Be Governed by the Original ISDA Master Agreements with Lehman, Not Subsumed Within Any Existing ISDA Master Agreements with the Assignee.**

9. An Order approving the Debtors' proposed procedures for assumption and assignment should make clear, consistent with the governing agreements and the law, that the assignments encompass the underlying ISDA Master Agreements - in other words, any assignees of derivative contracts will step into the shoes of the previous Lehman entity and have no greater rights than that party. Without such clarification a number of scenarios might arise that would prejudice the Objectors based on the identity of a Qualified Assignee who was unknown to the Objectors and came into the transaction without the Objectors' consent. For instance, Objectors could face the risk that an assignee who had an existing ISDA Master Agreement with them would

4510883

take the position that the newly-assigned Lehman transactions should be governed under their existing ISDA Master Agreements with Objectors with potentially more onerous terms, such as credit support agreements which could impose immediate obligations on Objectors to post collateral, or which grant the assignee broader rights to terminate the transactions under the ISDA Master Agreement earlier than their scheduled termination date.  The Proposed Order should be modified to make clear that assigned transactions will continue to be governed by the terms of the original ISDA Master Agreement with the Lehman party.  Further, the Order should make clear that upon assumption and assignment the Counterparty would be released with respect to all claims the Debtor party has in connection with the ISDA Master Agreement assumed and assigned.

**The Order Should Give Parties An Opportunity to Object That Particular Derivative Contracts Are Not Assumable by Lehman**

10. The Debtors' Motion assumes, without argument, that all derivative contracts are executory and are assumable and assignable by the Debtors.  This is not necessarily so.  11 U.S.C. § 365 (c) provides that: "The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if  . . .  (2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor."  The terms "loan", "debt financing" and "financial accommodations" are not defined in the Bankruptcy Code, and cases construing Section 365(c) have turned heavily upon analysis of the particular transactions presented in light of the purposes of Section 365(c).  See, e.g., *In re* Teligent, Inc., 268 B.R. 723 (Bankr. S.D.N.Y. 2001); Metro Affiliates v. Greenwich Street Capital Partners II, L.P.,. 2008 Bankr. LEXIS 752 (Bankr. S.D.N.Y. Mar. 6, 2008).  Accordingly, the Order should be modified to provide counterparties an opportunity to show that particular derivative contracts are "financial accommodations" in the meaning of Section 365(c) and not assumable, where, for

- 5 -

4510883

instance the non-Debtor counterparty has provided protection to the Debtors against a credit default of a reference obligation. Even more fundamentally, counterparties should be afforded an opportunity to demonstrate that particular derivative contracts are not executory, and thus may not be assumed and assigned. In many, if not all instances, the only performance or obligation remaining due on a derivative contract is the payment of money by one counterparty. Since an executory contract is classically one in which obligations remain to be performed by both sides, certain derivative contracts may well fail to satisfy this definition and thus may not be assumed under Section 365.

**The Debtors' Proposed Definition of a "Qualified Assignee" Does Not Provide Derivative Contract Counterparties with "Adequate Assurance" of Future Performance as Required by Bankruptcy Code Section 365 and Should Be Modified.**

11. The Debtors' proposed procedures, as written, would not provide counterparties with "adequate assurance" of future performance in assignments to a "Qualified Assignee." The only test of a Qualified Assignee's financial wherewithal is "a Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or any equivalent thereof." See the Debtors' Motion at 9, Assumption and Assignment Procedures paragraph b. These rating requirements are even lower than the ratings of the assignor (or their guarantor, as applicable) at the time that Objectors entered into the ISDA Master Agreements with such assignors. The proposed procedures would provide counterparties with no right to object on "adequate assurance" grounds if the assignee is a Qualified Assignee; the counterparties would receive no notice of the prospective assignee's identity. The proposed procedures should be modified to give counterparties: 1) 10 business days notice of the potential assumption and assignment; 2) notice of the identity(ies) of potential assignees (whether or not the assignee is a Qualified Assignee); and 3) an opportunity to object on the grounds that (i) particular potential assignees do not provide adequate assurance of future performance on grounds other than the lack

4510883

of a minimum credit rating "or equivalent", (ii) assignees should be limited to United States entities to avoid adverse tax consequences to the Objectors, and (iii) additional trades with an assignee would exceed Objectors' internal maximum counterparty exposure levels from a risk management perspective.

**The Procedures Should be Modified To Require the Resolution of Disputes Over Any Cure Amount Prior to Any Assignment.**

12. The Debtors' proposed procedures would permit the Debtors to consummate an assignment even if the Cure Amount were in dispute by paying any undisputed amount and placing the disputed amount in escrow. See the Debtors' Motion at p. 11, paragraph g. Such a procedure provides the Debtors with little incentive to bargain in good faith over disputed amounts. Instead, the procedures should require that good faith disputes over cure amounts be resolved prior to an assignment being consummated.

13. In addition, in the event that the proposed assignment if consummated would have the effect of depriving a non-debtor counterparty of its rights to set off amounts due under an assigned derivative contract against amounts owed to it by the Debtors, such setoff rights should be preserved. The proposed procedures should be modified to ensure the preservation of otherwise available setoff rights.

**The Order Should Be Modified to Preserve a Non-Defaulting Party's Right to Terminate a Transaction Consistent with Bankruptcy Code Section 560**

14. Section 560 of the Code states that "[t]he exercise of any contractual right of any swap participant . . . to cause the . . . termination . . . .of one or more swap agreements because of [the commencement of a case under the Code] . . . shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by order of a court or administrative agency in any proceeding under this title." The Order should be modified to make clear that nothing in the Order limits or otherwise modifies the counterparties' rights under the derivative contracts, including,

4510883

without limitation, the right to terminate the derivative contract prior to the assignment by the Debtors, consistent with Section 560 of the Code.  Indeed, nothing in the statute would appear to preclude the non-defaulting party from terminating post-assignment by virtue of the occurrence of a Lehman-related default.

## CONCLUSION

WHEREFORE, each of the Objecting Parties respectfully requests that the Court deny the Motion unless modified by the relief requested herein and grant such further relief as the Court deems just and proper.

Dated: New York, New York
November 28, 2008

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Shelley C. Chapman
    Marc Abrams
    Shelley C. Chapman

787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Attorneys for Lexington Insurance Company, AIG CDS Inc., and SunAmerica Life Insurance Company*