LOVELLS LLP
Robin E. Keller
Matthew P. Morris
590 Madison Avenue
New York, New York 10022
Telephone: (212) 909-0600
Facsimile: (212) 909-0660

Attorneys for Carlton Communications Limited

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

In re:

LEHMAN BROTHERS HOLDING INC., et. al.,

Debtors.

------------------------------------------------------------X

Chapter 11

Case No. 08-13555 (jmp)

(Jointly Administered)

# LIMITED OBJECTION OF CARLTON COMMUNICATIONS LIMITED TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS

Carlton Communications Limited (formerly, Carlton Communications plc) ("Carlton"), by and through its undersigned counsel, hereby submits this limited objection to the motion of Debtors[1] for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code for the Settlement or Assumption and Assignment of Prepetition Derivatives Contracts (the "Motion"), and respectfully states as follows:[2]

---

[1] Unless otherwise noted, all capitalized terms have the meaning ascribed in the Motion.

[2] Carlton is a holding company organized under the laws of England and Wales. Carlton has entered its limited appearance in these Cases solely for the purpose of making this limited objection. By making its limited appearance in these Cases and filing this limited objection, Carlton does not submit itself or otherwise consent or acquiesce, and shall not be deemed to have submitted itself, consented or acquiesced, to the jurisdiction of this Court, or any other court of the United States, for any purpose other than with respect to this limited objection. In addition, by filing this limited objection, Carlton does not waive any, and hereby reserves all, of its rights to object on jurisdictional grounds to the application of the Assumption and Assignment Procedures to it, if ordered by this Court, or any other order of this Court, or any other court resident in the United States.

## Preliminary Statement

1.      By the Motion, the Debtors seek to establish procedures for the assumption and assignment of approximately 200,000 open Derivative Contracts and settlement of an estimated 733,000 terminated Derivatives Contracts. As proposed, the Assumption and Assignment Procedures will affect and usurp the bargained-for contractual and other legal and equitable rights of thousands of Counterparties, including Carlton, and must be modified as set forth herein in order to comply with applicable law and to provide Counterparties with certain basic protections.

2.      Carlton entered into a Master Agreement dated as of July 8, 2003 (as amended, the "Master Agreement"), with Lehman Brothers Special Financing Inc. ("LBSF"). Pursuant to Part 4(h) of the Schedule to the Master Agreement, the Master Agreement and the transactions entered into thereunder between LBSF and Carlton, including the Swaps (as defined below), is governed by the laws of England and Wales. Lehman Brothers Holdings Inc. ("LBHI") unconditionally guaranteed the obligations of LBSF under the Master Agreement pursuant to a Guarantee of Lehman Brothers Holdings Inc. dated as of July 8, 2003 (the "Guarantee"). LBSF and LBHI are Debtors in the above captioned chapter 11 cases (the "Cases"). As of this date, there exist under the Master Agreement two non-terminated swap transactions each of which was entered into on December 14, 2004, and terminate on March 2, 2009 (the "Swaps").

3.      As a Counterparty to a non-terminated Derivative Contract which will be subject to the Assumption and Assignment Procedures proposed in the Motion (as may be modified and ordered by this Court), Carlton has the following objections as set out below.

## Limited Objection

4.      By their Motion, the Debtors propose, among other things, to establish procedures pursuant to Section 365 of the Bankruptcy Code for the assumption and assignment of non-terminated Derivative Contracts to third-parties notwithstanding any provisions in such agreements which (i) prohibit, restrict or condition such assignment or transfer or (ii) permit the

- 2 -

Counterparty to assert any default or termination rights arising prior to or existing at the time of assignment, including as a result of the commencement of a bankruptcy case by any of the Debtors or the insolvency or financial condition of any of the Debtors. *See* Motion at 15, Paragraph 23.

    A.    English Law Governs the Master Agreement

5. Section 365 of the Bankruptcy Code, however, is not effective in overriding the provisions of the Master Agreement which do not permit assignment without the Counterparty's consent under the applicable governing laws of England and Wales.[3] The laws of England and Wales do not have any laws comparable or analogous to section 365 of the Bankruptcy Code which would permit a debtor to assume and assign an executory contract to a third-party over the objection of the non-debtor contract party or notwithstanding defaults or other termination events which were triggered thereunder as a result of the commencement of the debtor's insolvency case or as a result of the debtor's insolvency or financial condition. *See generally* Insolvency Act, 1986 (Eng.). Bankruptcy and insolvency matters are governed in England pursuant to the Insolvency Act 1986, which generally provides that contracts may either be "disclaimed" or "adopted", but not assumed by the debtor and assigned without the consent of the non-debtor contract party. *See id.*

6. Section 7 of the Master Agreement expressly prohibits LBSF from transferring the Master Agreement or any interest or obligation in or under such agreement without the prior written consent of Carlton, and any purported transfers made without the prior written consent of

---

[3] Pursuant to Federal Rule of Civil Procedure 44.1, Carlton hereby gives notice that it is raising issues of foreign law in connection with this limited objection and requests that the Court take judicial notice of the laws of England and Wales as they relate to the matters set forth herein. Carlton will, upon the request of the Court, submit to the Court an affidavit of foreign law, or such other relevant materials or sources as may be requested or required by the Court, in order to determine the applicability of the laws of England and Wales hereto. *See Winn v. Schafer*, 499 F. Supp. 2d 390 (S.D.N.Y. 2007) (finding that court could consider opinion of English law expert to determine applicability of English law to facts of case); *Wheelings v. Seatrade Groningen, BV*, 516 F. Supp. 2d. 488 (E.D.Pa. 2007) (determining that affidavit of foreign attorney interpreting applicability of foreign law to a contract was sufficient for court to take judicial notice of foreign law).

Carlton are void. Therefore, the Debtors are prohibited by English law, which governs the Master Agreement, from assigning the Master Agreement to a third-party under section 365 of the Bankruptcy Code over the objection, and without the prior written consent, of Carlton. *See Maxwell Commc'n Corp. plc, v. Societe Generale (In re Maxwell Commc'n Corp. plc)*, 93 F.3d 1036, 1049 (2d Cir. 1996) (stating that Bankruptcy Code provisions referring to "applicable law" under section 365(c) "afford no statutory basis for ignoring comity considerations"). Moreover, "[i]nternational comity comes into play only when there is a true conflict between American law and that of a foreign jurisdiction" which would lead to differing outcomes in the two jurisdictions. *Id.* at 1050 (citing *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 799 (1993); *Société Nationale Industrielle Aérospatiale v. District Court*, 482 U.S. 522 (1987)). LBSF has not requested Carlton's written consent to assign the Master Agreement and Swaps to a third-party, nor would Carlton provide LBSF with such written consent. Accordingly, any purported assignment by the Debtors of the Master Agreement to a third-party pursuant to the Assumption and Assignment Procedures, or otherwise, would be void and unenforceable under the Master Agreement and the applicable laws of England and Wales.[4] *See id.* at 1049 (upholding the principles of comity and choice-of-law analysis in connection with bankruptcy cases).

7. In addition, section 365(c)(1)(A) of the Bankruptcy Code prohibits a Debtor from assuming and assigning an executory contract if "applicable law" excuses the non-debtor party from accepting performance from or rendering performance to an entity other than the debtor. The law applicable to the Master Agreement, namely, English law, does not permit a debtor to

---

[4] It is important to note that, even if the Court enters the proposed Order establishing the Assumption and Assignment Procedures, if an assignee attempts to enforce a Derivative Contract governed by English law against a Counterparty in England, the English courts are not likely to recognize such an enforcement action. The Cross Border Insolvency Regulations 2006 do not include a power to impose foreign law, in this case section 365 of the Bankruptcy Code, on English-law governed contracts. In addition, English courts have been reluctant to apply provisions of foreign insolvency laws in England where English law does have an analogous counterpart. *See, e.g., Cambridge Gas Transportation Corpn v Official Committee of Unsecured Creditors of Navigator Holdings plc* [2006] (noting that it was "doubtful whether assistance [under the common law jurisdiction of the English courts] could take the form of applying provisions of [a] foreign insolvency law which form no part of the domestic system").

assume and assign an executory contract over the objection of the non-debtor contract party. *See generally* Insolvency Act, 1986 (Eng.). The consequence of this is that the non-debtor party to an English-law governed contract is excused from accepting performance thereunder from any entity other than the debtor. Accordingly, the Debtors are prohibited from assigning the Master Agreement without the prior written consent of Carlton. *See Maxwell Commc'n Corp.*, at 1049.

8. Pursuant to Section 5(a)(vii) of the Master Agreement, events of default have occurred under the Master Agreement and are continuing as the result of LBSF and LBHI (in its capacity as Credit Support Provider under, and as defined in, the Master Agreement) commencing their respective chapter 11 cases (the "Events of Default"). As a result of the occurrence of the Events of Default, Carlton has the right, but not the obligation, to pursue rights and remedies as provided in the Master Agreement, including, but not limited to, the exercise of its rights and remedies under the Guarantee and Credit Support Annex to the Master Agreement.

9. English law, which governs the Master Agreement, also does not permit or recognize the right of a debtor to assign a contract to a third-party notwithstanding defaults or other termination events which were triggered thereunder as a result of the commencement of the debtor's insolvency case or as a result of the debtor's insolvency or financial condition. *See generally* Insolvency Act, 1986 (Eng.). Therefore, the Debtors are also prohibited by English law from assigning the Master Agreement to a third-party under section 365 of the Bankruptcy Code free of the Events of Default which have occurred and are continuing under the Master Agreement and Carlton's right to exercise its rights and remedies as a result thereof.

10. Therefore, the Assumption and Assignment Procedures must be modified to protect and preserve the rights of Counterparties whose Derivative Contracts are governed by foreign law, including the laws of England and Wales, which prohibits a debtor from assuming and assigning an executory contract (i) over the objection of the non-debtor contract party and (ii) free of (a) defaults and events of default which were triggered by the debtor's commencement of

its insolvency case or as a result of its insolvency or financial condition and (b) the right of the non-debtor contract party to exercise its rights and remedies as a result thereof.

### B.     Debtors Must Reveal Identity of All Proposed Assignees

11.    In addition to the threshold jurisdictional objections set forth above, certain of the proposed Assumption and Assignment Procedures must be modified to provide the Counterparties with basic protections of their bargained-for contractual rights and legal rights under the Derivative Contracts.

12.    The Debtors have proposed in the Motion that each Assignment Notice shall set forth either (i) a statement that any assignee or its credit support provider shall have a Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or any equivalent thereof (a Qualified Assignee"), or (ii) the identity of any proposed assignee and its credit support provider, if any, if neither is a Qualified Assignee. *See* Motion at 9, Paragraph 19(a).

13.    This proposed procedure not only subverts "know-your-customer" and similar requirements of the Bank Secrecy Act of 1970 and the U.S. Patriot Act, it also deprives Counterparties of the ability to independently assess the credit-worthiness of assignees and credit support providers – a valuable right given the current state of the financial markets and the distrust financial market participants currently have of credit ratings providers – and of the right to have assignees and credit support providers approved by their respective credit approval committees, if any.  Also, in many instances, an assignment to a particular assignee or acceptance of credit support from a particular credit support provider might violate a Counterparty's by-laws, formation and/or governing documents, investment guidelines, or even applicable law.

### C. Assumption and Assignment Must Not Create or Take Away Rights of Setoff

14. Moreover, knowing the identity of the proposed assignee is critical for the Counterparty to determine whether the assignment would create a right of setoff with the assignee where the assignee previously did not have such a right – it would be improper for the Debtors to be permitted to assign a Derivative Contract to an assignee that would then have a right of setoff against the Counterparty, where none previously existed. Further, if the Counterparty has a right of setoff against the Debtors as to payment obligations it might have under open trades against amounts owed to it by the Debtors, it cannot be deprived of that right of setoff by the Debtors purporting to assume and assign the Derivative Contract, thereby eliminating the setoff.

15. Therefore, this proposed procedure must be modified to (i) require that every Assignment Notice identify the assignee and its credit supporter, if any, (ii) permit Counterparties to object to the assignee and credit support provider, if any, based on reasons arising from or in connection with their identity and on other grounds, regardless of whether the assignee or credit support provider is a Qualified Assignee and (iii) prohibit assignments to assignees if such assignment would create a right of setoff in the assignee's favor where no such right previously existed, or deprive the Counterparty of existing setoff rights.

### D. Effect of Guarantee/Credit Support Claims

16. The procedures proposed are silent as to the effect of assumption and assignment of outstanding guarantees by affiliates of the assigning Debtor. Presumably the assumption and assignment would not eliminate any rights a Counterparty has under existing guarantees of its Derivative Contracts; but even more significantly, will the assignee undertake to comply with the credit support obligations of the Master Agreement by providing a guarantee from a solvent

affiliate? As discussed more specifically below, the relief requested cannot be granted without further clarification and discussion of these issues.

17. The Debtors have proclaimed in the Motion that the Assumption and Assignment Procedures will allow each Counterparty to "receive the benefit of its bargain" and "will place the Counterparty in the same position that it was in when it entered into the Derivative Contract." *See* Motion at 15-16, Paragraph 24. As noted, LBHI is the credit support provider under the Master Agreement and provided a guarantee of LBSF's obligations under the Master Agreement. LBSF only agreed to enter into the Master Agreement on the condition that LBHI provide such credit support and the Guarantee. Therefore, Carlton will only "receive the benefit of its bargain" if, among other things, Carlton continues to receive the credit support and guarantee it bargained for and obtained under the Master Agreement.

18. However, according to the Debtors' proposed Order establishing the Assumption and Assignment Procedures, upon the assignment of a Derivative Contract, the "Debtors and their estates shall have no further liabilities or obligations under the Derivative Contract, and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors" *and* "each of their respective affiliates." *See* Order at 8-9. This creates uncertainty as to whether (i) the proposed Assumption and Assignment Procedures are intended to invalidate credit support arrangements and guarantees provided by other Debtors (and even their non-debtor affiliates), (ii) credit support arrangements and guarantees will be replaced as part of the assignment or (iii) existing credit enhancements "ride through" with the assignment.

19. Therefore, in order for Carlton and other Counterparties to truly receive the benefits of their bargain, the Assumption and Assignment Procedures must be modified to expressly provide that, with respect to each assigned Derivative Contract, the assignee will provide the Counterparty with credit enhancements at least equivalent to those obtained originally, subject to the right of the Counterparty to object thereto based on the identity of the

- 8 -

proposed assignee, credit support provider and/or guarantor. At a minimum, the existing credit support and guarantees should continue in place following the assignment of the Derivative Contract.[5] *See Fehr Bros. v. Scheinman*, 509 N.Y.S.2d 304, 310 (1st Dept. 1986) (holding that a guarantor cannot escape liability by relying on changes in the primary obligor that the guarantor initiated for its own benefit, particularly where the guaranty was absolute and unconditional).

### E. Objection Deadline Period is Insufficient

20. The Debtors have also proposed as part of the Assumption and Assignment Procedures to require Counterparties who want to object to the assumption and assignment of a Derivative Contract to serve an objection so it received by Debtors' counsel no later than five (5) business days from the date of service of an Assignment Notice and are seeking to strictly limit the grounds on which a Counterparty may object to an assignment. *See* Motion at 10, Paragraph 19(e).

21. This proposed objection period is wholly-insufficient and unreasonable in light of the complexity involved in determining whether to object to an assignment (such determination will often require an analysis as to whether (i) the proposed Cure Amount is accurate, (ii) defaults have been properly cured and (iii) adequate assurance of future performance has been provided), and, if a determination to object is reached, formulating and drafting an objection and serving it on Debtors' counsel. The Debtors' professed need to move quickly to assume and assign Derivative Contracts does not give rise to the right to impose unreasonable and unworkable objection deadlines on Counterparties. This procedure must be modified to provide Counterparties with at least thirty (30) days from the date of service of an Assignment Notice to file an objection to the assumption and assignment of Derivative Contracts identified therein.

---

[5] The Assumption and Assignment Procedures must also be clarified to expressly exclude therefrom all Derivative Contracts where the Lehman entity party thereto is a non-Debtor and the guarantor is a Debtor.

Moreover, the proposed Assumption and Assignment Procedures must be modified to permit Counterparties to raise the additional objections discussed in this limited objection.

### F. Procedures for Determination of Collateral Value Are Not Transparent and Invite Manipulation

22. The Debtors have also proposed that, with respect to Derivative Contracts that may require the return of posted collateral as part of a Cure Amount, the Debtors must either return such collateral or, if such collateral is no longer in the Debtors' possession, pay an amount equal to the value of such collateral (an "Equal Value Payment") as of the business day prior to service of the Assignment Notice (the "Determination Date") based upon the determination of independent, third-party pricing services. *See* Motion at 10, Paragraph 19(d).

23. This proposed procedure will give the Debtors sole and unfettered discretion to (i) determine each Determination Date and (ii) to choose the third-party pricing service, thereby enabling the Debtors to potentially manipulate the Equal Value Payment process in their favor. In order to ensure the rights of Counterparties are protected from potential manipulation, this proposed procedure must be modified to require that (i) the Debtors choose the Determination Date in consultation with the affected Counterparty and/or to provide Counterparties with the right to object to a particular Determination Date and (ii) the Debtors obtain either the consent of the affected Counterparty or bankruptcy court approval with respect to the Debtors' choice of each pricing service.

### Reservation of Rights

Carlton reserves any and all applicable rights at law and/or equity, including the right to amend or supplement this limited objection and to join in the objection of any other Counterparty or other party to the Motion.

## **Relief Requested**

Carlton respectfully requests that the Court (i) deny approval of the Assumption and Assignment Procedures with respect to agreements governed by the laws of England and Wales, unless the consent of the non-defaulting counterparty is obtained and (ii) require the Debtors to modify the Assumption and Assignment Procedures to address the above objections and to otherwise clarify the proposed Assumption and Assignment Procedures, and grant such other and further relief as may be just and proper.

November 28, 2008
New York, New York

        Lovells LLP
        By: /s/ *Robin E. Keller*

        Robin E. Keller,
        Matthew P. Morris
        590 Madison Avenue
        New York, NY 10022
        Telephone: 212-909-0600
        Facsimile: 212-909-0660

        *Attorneys for Carlton*
        *Communications Limited*