Objection Deadline: November 28, 2008 at 4:00 p.m.
Hearing Date:  December 3, 2008 at 10:00 a.m

Marc Abrams
Shelley C. Chapman
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

Attorneys for HarbourView CDO III, Limited and affiliates

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

_____
                                                                          )
**In re**                                                              )   **Chapter 11**
                                                                          )
**LEHMAN BROTHERS HOLDINGS INC., et al.**  )   **Case No. 08-13555 (JMP)**
                                                                          )
            **Debtors.**[1]                                      )   **(Jointly Administered)**
_____)

**OBJECTION OF HARBOURVIEW CDO III, LIMITED TO THE DEBTORS' MOTION
FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY
CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION
AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS**

HarbourView CDO III, Limited (the "Objector") hereby submits this objection (the "Objection") to the Debtors' Motion For An Order Pursuant To Sections 105 And 365 Of The Bankruptcy Code To Establish Procedures For The Settlement Or Assumption And Assignment Of Prepetition Derivative Contracts.  In support of this Objection, the Objector respectfully states as follows:

---

[1]   As of the date of the filing of this Objection, the Debtors in these cases are: (i) Lehman Brothers Holdings Inc.; (ii) Lehman Brothers Derivative Products Inc.; (iii) Lehman Commercial Paper Inc.; (iv) Lehman Brothers Commercial Corporation; (v) Lehman Brothers Financial Products Inc.; (vi) Fundo de Investimiento Multimercado Credito Privado; (vii) Lehman Scottish Finance L.P.; (viii) CES Aviation LLC ; (ix) CES Aviation V LLC; (x) CES Aviation IX LLC; (xi) East Dover Limited; (xii) Lehman Brothers Commodity Services Inc.; (xiii) Lehman Brothers Finance SA; (xiv) Lehman Brothers Special Financing Inc.; (xv) Lehman Brothers OTC Derivatives Inc.; (xvi)  PAMI Statler Arms LLC; and (xvii) LB 745 LLC.

4510883

## BACKGROUND

1.  Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holding Inc. ("LBHI") and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Certain of the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.  On September 17, 2008, the United States Trustee for the Southern District of New York appointed a statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

3.  On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

## JURISDICTION

4. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE OBJECTING PARTY

HarbourView CDO III, Limited

4510883

5. HarbourView CDO III, Limited is a party to a derivative contract with Lehman Brothers Financial Products Inc. dated as of April 24, 2001 which is documented on the form of master agreement prepared by the International Swaps and Derivatives Association (an "ISDA Master Agreement") which ISDA Master Agreement has not yet been terminated by HarbourView CDO III, Limited and under which a transaction remains outstanding.

6. The Objector also issued certain notes under an indenture dated as of April 24, 2001 (the "Indenture") which notes were rated by several nationally recognized rating agencies. As a condition to the rating of the notes, the rating agencies among other things, required (i) that all counterparties under any agreement, including the ISDA Master Agreement, with the Objector agree to certain prohibitions on their rights against the Objector, (ii) that each party to any agreement with the Objector, including the ISDA Master Agreement, not amend or modify such agreements without the prior written consent of the rating agencies then rating the notes and (iii) that any counterparty to an ISDA Master Agreement meet certain minimum financial requirements regarding their credit worthiness.

## **OBJECTION**

7. The Debtors' Motion proposes to unilaterally assume and assign derivative contracts, including ISDA Master Agreements (which the Debtors' motion states were "frequently" used by the Debtors), in a summary procedure that would provide the counterparties to those contracts with minimal notice and opportunity to object. See the Debtors' Motion at 4, paragraph 9. In the case of the Objector's ISDA Master Agreements, not only does Section 7 of such agreement expressly require mutual consent to any assignment, but any transfer, amendment or modification also requires the consent of the rating agencies then rating the notes issued by the Objector. If approved by the Court as submitted, the Debtors' proposal could subject the Objector and others similarly

4510883

situated to significant risks beyond those which they bargained for in the ISDA Master Agreement and beyond what they face now.  Accordingly, the Objector respectfully requests that the Court modify the Debtors' proposed Assumption and Assignment Procedures as follows:

**The Order Should Make Clear That Any Derivative Contracts Assigned Under The Debtors' Proposed Procedures Would Be Governed by the Original ISDA Master Agreements with Lehman, Not Subsumed Within Any Existing ISDA Master Agreements with the Assignee.**

8. An Order approving the Debtors' proposed procedures for assumption and assignment should make clear, consistent with the governing agreements and the law, that the assignments encompass the underlying ISDA Master Agreements - in other words, any assignees of derivative contracts will step into the shoes of the previous Lehman entity and have no greater rights than that party.  Without such clarification a number of scenarios might arise that would prejudice the Objector based on the identity of a Qualified Assignee who was unknown to the Objector and came into the transaction without the Objector's consent.  For instance, the Objector could face the risk that an assignee who had an existing ISDA Master Agreement with them would take the position that the newly-assigned Lehman transactions should be governed under their existing ISDA Master Agreements with Objector with potentially more onerous terms which grant the assignee broader rights to terminate the transactions under the ISDA Master Agreement earlier than their scheduled termination date or which might not include all of the highly negotiated terms which were required by the rating agencies rating the notes issued by the Objector.  The Proposed Order should be modified to make clear that assigned transactions will continue to be governed by the terms of the original ISDA Master Agreement with the Lehman party.  Further, the Order should make clear that upon assumption and assignment the Counterparty would be released with respect to all claims the Debtor party has in connection with the ISDA Master Agreement assumed and assigned.

**The Order Should Give Parties An Opportunity to Object That Particular Derivative Contracts Are "Financial Accommodations" Within the Meaning of Bankruptcy Code Section 365 and Not Assumable by Lehman**

9. The Debtors' Motion assumes, without argument, that all derivative contracts are assumable and assignable by the Debtors. This is not necessarily so. 11 U.S.C. § 365 (c) provides that: "The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if . . . (2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor." The terms "loan", "debt financing" and "financial accommodations" are not defined in the Bankruptcy Code, and cases construing Section 365(c) have turned heavily upon analysis of the particular transactions presented in light of the purposes of Section 365(c). See, e.g., *In re* Teligent, Inc., 268 B.R. 723 (Bankr. S.D.N.Y. 2001); Metro Affiliates v. Greenwich Street Capital Partners II, L.P.,. 2008 Bankr. LEXIS 752 (Bankr. S.D.N.Y. Mar. 6, 2008). Accordingly, the Order should be modified to provide counterparties an opportunity to show that particular derivative contracts are "financial accommodations" in the meaning of Section 365(c) and not assumable.

**The Debtors' Proposed Definition of a "Qualified Assignee" Does Not Provide Derivative Contract Counterparties with "Adequate Assurance" of Future Performance as Required by Bankruptcy Code Section 365 and Should Be Modified.**

10. The Debtors' proposed procedures, as written, would not provide counterparties with "adequate assurance" of future performance in assignments to a "Qualified Assignee." The only test of a Qualified Assignee's financial wherewithal is "a Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or any equivalent thereof." See the Debtors' Motion at 9, Assumption and Assignment Procedures paragraph b. These rating requirements are even lower than the ratings of the assignor at the time that the Objector entered into the ISDA Master Agreement with such assignor. The proposed

- 5 -

4510883

procedures would provide counterparties with no right to object on "adequate assurance" grounds if the assignee is a Qualified Assignee; the counterparties would receive no notice of the prospective assignee's identity.  The proposed procedures should be modified to: 1) require that any assignee meet the minimum financial requirements set by the rating agencies then rating the notes issued by the Objector and, 2) give counterparties:  i) 10 business days notice of the potential assumption and assignment; ii) prompt notice of the identity(ies) of potential assignees (whether or not the assignee is a Qualified Assignee); and iii) an opportunity to object on the grounds that (x) a particular potential assignee does not provide adequate assurance of future performance on grounds other than the lack of a minimum credit rating "or equivalent" and (y) the assignee should be limited to a United States entity to avoid adverse tax consequences to the Objector.

**The Procedures Should be Modified To Require the Resolution of Disputes Over Any Cure Amount Prior to Any Assignment.**

11.  The Debtors' proposed procedures would permit the Debtors to consummate an assignment even if the Cure Amount were in dispute by paying any undisputed amount and placing the disputed amount in escrow.  See the Debtors' Motion at p. 11, paragraph g.  Such a procedure provides the Debtors with little incentive to bargain in good faith over disputed amounts.  In the case of the Objector, it is dependent on all of the payments it receives under its ISDA Master Agreement to be able to make timely payments of interest to its noteholders.  The procedures should require that good faith disputes over cure amounts be resolved prior to an assignment being consummated.

12. In addition, in the event that the proposed assignment if consummated would have the effect of depriving a non-debtor counterparty of its rights to set off amounts due under an assigned derivative contract against amounts owed to it by the Debtors, such setoff rights should be preserved.  The proposed procedures should be modified to ensure the preservation of otherwise available setoff rights.

**The Order Should Be Modified to Preserve a Non-Defaulting Party's Right to Terminate a Transaction Consistent with Bankruptcy Code Section 560**

13. Section 560 of the Code states that "[t]he exercise of any contractual right of any swap participant . . . to cause the . . . termination . . . .of one or more swap agreements because of [the commencement of a case under the Code] . . . shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by order of a court or administrative agency in any proceeding under this title." The Order should be modified to make clear that nothing in the Order limits or otherwise modifies the counterparties' rights under the derivative contracts, including, without limitation, the right to terminate the derivative contract prior to the assignment by the Debtors, consistent with Section 560 of the Code. Indeed, nothing in the statute would appear to preclude the non-defaulting party from terminating post-assignment by virtue of the occurrence of a Lehman-related default.

## CONCLUSION

WHEREFORE, each of the Objecting Parties respectfully requests that the Court deny the Motion unless modified by the relief requested herein and grant such further relief as the Court deems just and proper.

Dated: New York, New York
       November 28, 2008

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Shelley C. Chapman
    Marc Abrams
    Shelley C. Chapman

787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Attorneys for HarbourView CDO III, Limited*

- 7 -