HOLME ROBERTS & OWEN LLP             Hearing Date December 3, 2008, 10:00 **a.m.**
1700 Lincoln Street, Suite 4100
Denver, CO 80203
(303) 861-7000
Lawrence Bass (CO 29702)

Attorneys for National Cinemedia, LLC.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                                   :        Chapter 11 Case No.
                                                        :   .
LEHMAN BROTHERS HOLDINGS INC., *et al*   :        08-13555 (JMP)
                                                        :
                                                        :        (Jointly Administered)
                              Debtors.                  :
------------------------------------------------------------x

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF NATIONAL CINEMEDIA, LLC WITH RESPECT TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS**

National Cinemedia, LLC ("**NCM**"), by and through its counsel, hereby submits this limited objection and reservation of rights with respect to the Debtors' Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts (the "**Motion**").

**BACKGROUND**

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable), the "**Commencement Date**"), Lehman Brothers Holdings Inc. ("**LBHI**") and its affiliated debtors in the above-captioned chapter 11 cases (together, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors' cases are being

#1374741 v1 den

jointly administered under Case No. 08-13555 (JMP). The Debtors are continuing to operate their businesses and manage their properties as debtors in possession.

2. On or about March 13, 2007, NCM, as borrower, entered into (i) that certain Credit Agreement with Lehman Brothers Inc. and J.P. Morgan Securities, Inc., as Arrangers, Credit Suisse (USA) LLC and Morgan Stanley Senior Funding, Inc. as Co-Documentation Agents, Lehman Commercial Paper Inc., as Administrative Agent, and the others lenders party thereto (as amended from time to time thereafter, the "**Credit Agreement**") and (ii) certain other Loan Documents (as defined in the Credit Agreement).

3. NCM is party to that certain International Swaps and Derivatives Association Inc. ("**ISDA**") Master Agreement dated as of March 2, 2007 with Lehman Brothers Special Financing Inc.**("LBSFI**") (together with certain Schedules and Confirmations related thereto, the "**ISDA Agreement**") . LBHI is a Credit Support Provider and guarantor of LBSFI's obligations under the ISDA Agreement

4. The commencement of the chapter 11 case by LBHI constitutes an Event of Default pursuant to paragraph 5(a) of the ISDA Agreement. The subsequent commencement of the chapter 11 case by LBSFI constitutes an additional Event of Default pursuant to paragraph 6(a) of the ISDA Agreement. To date, NCM has elected not to terminate the ISDA Agreement, but reserves all of its legal and contractual rights with respect thereto.

### THE MOTION

5. By their Motion, the Debtors seek this Court's approval, *inter alia*, of (i) procedures for the Debtors to assume and assign derivative contracts, including the resolution of

2

#1374741 v1 den

cure amounts, and (ii) procedures to process settlement agreements that may establish termination payments and the return of collateral and/or property under terminated derivative contracts.  The procedures proposed by the Debtors for the assumption and assignment of derivative contracts would provide counterparties such as NCM limited grounds to object to a proposed assignment.  Specifically, a counterparty would only be entitled to object on the basis of (i) the proposed cure amount; (ii) the need to cure a default or early termination event including, without limitation, any default or early termination event with respect to the Debtors, other than a default resulting from the Debtors' insolvency or commencement of their bankruptcy cases, or (iii) the proposed assignee's ability to provide adequate assurance of future performance.  This latter ground could only be raised with respect to proposed assignees that were not "Qualified Assignees," as defined in the Motion.

## **OBJECTIONS**

6. The proposed assignment procedures run afoul of the requirement of section 365(f)(2) of the Bankruptcy Code, which requires as a condition of assigning an executory contract that the debtor provides "adequate assurance of future performance" of the contract to be assigned.  The burden is on the debtor to satisfy the adequate assurance requirement. *In re M. Fine Lumber Co*, 383 B.R. 565, 573 (Bankr. E.D.N.Y. 2008).

7. Under the procedures proposed by the Debtors in the Motion, the adequate assurance requirement would conclusively be presumed if the proposed assignee is a "Qualified Assignee," defined as having an A- credit rating by Standard & Poor's or Fitch, or a Moody's credit rating equal to or higher than A3, or any equivalent thereof.  It is not reasonable to ask counterparties to accept on faith the creditworthiness of a Qualified Assignee (whose identity

need not even be disclosed), and to preclude those counterparties from exercising their own business judgment as to the qualifications of the proposed assignee. The mere designation by the Debtors of an assignee as "Qualified" does not necessarily translate into "adequate assurance," and NCM and other similarly situated counterparties should not be left to guess as to the assignee's ability to perform. Further, it is not reasonable for NCM to be subject to any adverse effects under the Credit Agreement, any Loan Documents or the ISDA Agreement as a result of any assignment of the ISDA Agreement. As an example, the identity and acceptability of a proposed assignee, whether or not deemed "Qualified," may be restricted by the terms of the Credit Agreement and the other Loan Documents, which may require consents and/or waivers by lenders thereunder. In addition, the ISDA Agreement provides that it will be an additional Termination Event if the obligations of NCM under the ISDA Agreement cease to be equally and ratably secured with the obligation of NCM to the lenders under the Credit Agreement, other than to the extent such obligations are cash collateralized in accordance with customary terms. NCM may be required to obtain consents and/or waivers from its lenders under the Credit Agreement in order to "equally and ratably" secure the ISDA Agreement if the ISDA Agreement is assigned to a non-lender. The alternative, which is the provision of cash collateral, is not reasonable since (i) NCM would not have been required to provide such collateral under the ISDA Agreement with LBSFI and (ii) such actions may violate the terms of the Credit Agreement. For these reasons, among others, the ability of NCM to raise this type of objection to a proposed assignee must be preserved. It is a fundamental right embodied within section 365(f)(2), and to the extent such an objection is raised by NCM at the time of a proposed assignment of the ISDA Agreement, it must be resolved either consensually by the parties or by this Court based on the particular facts and circumstances that pertain at such time.

4

8.     The proposed assignment procedures also violate the "safe harbor" protections afforded to NCM by section 560 of the Bankruptcy Code. The Motion suggests that counterparties who have not terminated a derivative contract at this point have waived their termination rights and can no longer assert such rights if the Debtors attempt to assign such contract. This, despite the fact that there is no time limitation set forth in section 560, or elsewhere, for the exercise of such rights by a party to a swap agreement as defined in section 101(53) of the Bankruptcy Code. Relying solely on section 105 of the Bankruptcy Code, the Debtors propose assignment procedures that would totally emasculate the right of NCM under the ISDA Agreement to, for instance, designate an early termination date or to offset or net out termination values or payments amounts arising under the ISDA Agreement.

9.     The Debtors' proposed procedures provide counterparties five business days to file an objection to an Assignment Notice (as defined in the Motion) on the grounds of (i) an improper cure amount or (ii) adequate assurance of future performance (but only if the proposed assignee is not "Qualified;" if it is, then apparently objections as to adequate assurance would not be permitted) The Debtors should not be permitted to create such jurisdictional limitations on an objection to a proposed assignment. NCM and other counterparties must be free to interpose any valid objection to a proposed assignment, as was bargained for and as provided for in Section 7 of the ISDA Agreement. It is for the Court, not the Debtors, to determine the merits of such objections. Because NCM cannot possibly know what concerns it may have as to any particular proposed assignee until its identity and other relevant information is disclosed, NCM reserves its rights to raise any concerns and objections it may have at such time as the Debtors seeks to assume and assign the ISDA Agreement, and requests that any order approving the Motion specifically recognize and preserve such rights.

5

10. Further, the time limitations to interpose an objection to a proposed assignment are wholly inadequate, given the complexity of these transactions, especially as exacerbated by the Debtors' chapter 11 proceedings. As a matter of fundamental fairness, NCM believes that counterparties should be given not less than twenty (20) business days to object to a proposed assignment of their derivative contracts.

11. It is unclear from the Motion whether the Debtors propose to limit or impair counterparties' statutory setoff rights as applicable to derivative contracts. Those rights would include, *inter alia*, any and all amounts to which NCM, as a non-defaulting party, would be entitled under Paragraph 11 of the ISDA Agreement, such as indemnification and attorneys' fees. It is difficult to discern from the terms of the Motion whether those types of claims would constitute "cure" claims or setoff claims. To the extent the Debtors would seek to characterize them as setoff claims, by implication such rights would be cut off under the proposed procedures, since the grounds to object to a proposed assignment are narrowly limited (cure and adequate assurance). NCM's right to assert setoff claims must not be impaired or limited, and any procedures approved by this Court should make clear that all such rights are fully reserved.

12. NCM respectfully reserves all rights provided to it under the Bankruptcy Code and the ISDA Agreement, and nothing contained in this objection should be construed as an admission or a waiver of any rights, claims, or defenses that it may be entitled to assert in connection with any proposed assumption and assignment of the ISDA Agreement, or otherwise.

13. NCM hereby joins with the other objections to the Motion filed in this matter to the extent not inconsistent with this Objection.

6

**WHEREFORE**, National Cinemedia, LLC requests that the Court deny the relief requested in the Motion or grant the relief only on terms consistent with this Objection, and provide such other and further relief as may be just and proper.

Dated this 28th day of November 2008.

> Respectfully submitted,
>
> HOLME ROBERTS & OWEN LLP
>
> By: */s/ Lawrence Bass*
> Lawrence Bass (#29702)
> 1700 Lincoln Street, Suite 4100
> Denver, Colorado  80203-4541
> Telephone:    (303) 861-7000
> Facsimile:    (303) 866-0200
> Lawrence.bass@hro.com
>
> Attorneys for National Cinemedia, LLC

#1374741 v1 den