NIXON PEABODY LLP
Robert N. H. Christmas
Victor G. Milione
437 Madison Avenue
New York, NY 10022
Telephone: (212) 940-3000

*Counsel to Bryant University*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., et al., ) | |
| ) | Case No. 08-13555 (JMP) |
| Debtors. ) | |
| ) | Jointly Administered |
| ) | |

**LIMITED OBJECTION OF BRYANT UNIVERSITY TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS**

Bryant University ("Bryant"), by and through its counsel, Nixon Peabody LLP, hereby submits this limited objection (this "Objection") to the motion (the "Motion") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors and debtors in possession in the above-referenced chapter 11 cases (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman") for an order pursuant to sections 105 and 365 of the Bankruptcy Code to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts. Bryant respectfully objects as follows:[1]

### I.    PRELIMINARY STATEMENT

1.    The relief sought in the Motion is overbroad, deprives Counterparties of the statutory protections afforded to them by the Bankruptcy Code and the Federal Rules of Bankruptcy

---

[1]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

11229077.4

Procedure (the "Bankruptcy Rules") and violates the Counterparties' Constitutional due process rights. As demonstrated below, the relief the Debtors seek should be modified to afford Bryant a meaningful opportunity to analyze the creditworthiness of any proposed assignee.

2. The Motion asks the Counterparties and the Court to bless assignments without, in some cases, knowing in advance the identity of the assignee. The proposed procedures (the "Proposed Assignment Procedures") thereby attempt to strip Counterparties of the right to object to a specific assignment based on the identity of the proposed assignee, leaving a Counterparty with no assurance that the future performance by the assignee will be what it bargained for. The Debtors do not meet their obligation to ensure adequate assurance because they fail to provide Counterparties with any information beyond a naked credit rating or the Debtors' unilateral determination of an assignee's creditworthiness.

3. As evidenced by Sections 560 through 562 of the Bankruptcy Code, Congress intended for non-bankrupt counterparties to derivatives contracts to retain their full contractual rights. The Debtors should not be permitted to override these and other statutory and contractual protections.[2]

## II.    BACKGROUND

4. Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.

5. Bryant is party to a certain ISDA Master Agreement dated as of February 7, 2005

---

[2]    In addition, it should be noted that the relief sought by the Debtor is predicated on section 105(a) of the Bankruptcy Code. Although section 105(a) is broad in scope, it does not "authorize the bankruptcy courts to create substantive rights that are otherwise available under applicable law, or constitute a roving commission to do equity." U.S. v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986).

- 2 -

12245013.3

by and between Bryant and Lehman Brothers Special Financing Inc. ("LBSF").  The obligations of LBSF are guaranteed by LBHI pursuant to that certain Guarantee dated February 7, 2005 between Bryant and LBHI (the "Guarantee").  (The ISDA Master Agreement, together with a related Schedule, an ISDA Credit Support Annex, the Guarantee and related transaction confirmations are collectively referred to herein as the "Swap Agreement").  The Swap Agreement meets the definition of "swap agreement" set forth in section 101(53B) of the Bankruptcy Code and is therefore also a Derivative Contract as defined in the Motion.

6.  Bryant entered into the Swap Agreement, *inter alia*, for the purpose of hedging the interest rate risk associated with its issuance of certain bonds.

7.  The bankruptcy filing of LBHI on September 15, 2008 was an event of default under the Swap Agreement giving Bryant the right to terminate the Swap Agreement.  The subsequent filing by LBSF on October 3, 2008 was an additional and independent event of default under the Swap Agreement which also gives Bryant the right to terminate the Swap Agreement.[3]

### III.    ARGUMENT[4]

**A.    Counterparties are Statutorily Entitled to Know the Identity of any Proposed Assignee to Evaluate its Creditworthiness and Any Other Impact the Proposed Assignee might have on the Counterparty and an Opportunity to Challenge an Assignment to Any Proposed Assignee**

8.  If a debtor wishes to assume a contract or, as proposed in the Motion, to assume and assign a contract, even if a contract is not in default, the debtor must provide the non-debtor counterparty adequate assurance of future performance. 11 U.S.C. § 365(f); see e.g. In re C&S Grain Co., 47 F.3d 233 (7th Cir. 1995) (adequate assurance of future performance seeks to assure

---

[3] Bryant reserves the right to determine additional defaults under the Swap Agreement in the future.

[4] This Objection primarily addresses the procedural aspects of the Proposed Assignment Procedures.  Accordingly, Bryant reserves its right to object to the applicability of section 365 of the Bankruptcy Code to the Swap Agreement or that the Swap Agreement can be assumed or assumed and assigned pursuant to Section 365(b) in light of Section 365(c)(2).

that the non-debtor party will receive the benefit of its bargain); Cinicola v. Scharffenberger, 248 F.3d 110 (3d Cir. 2001). Because the Bankruptcy Code provides no general definition of what constitutes adequate assurance, Courts must make a determination on a case by case basis.

9.      A debtor must present financial evidence about the party from whom such future performance will be required, demonstrating the likelihood that such party has the financial capacity to perform its future obligations. See, e.g., In re PRK Enterprises, Inc., 235 B.R. 597 (E. D. Tex. 1999). Further, a basic tenet of due process in the context of the assumption and assignment of an executory contract is that the non-debtor counterparty is entitled to notice of the identity of the assignee. In re Golden Books Family Enm't, Inc., 269 B.R. 300, 306 (Bankr. D. Del. 2001).

### (i) The Proposed Assignment Procedures Wrongfully Strip Counterparties of the Ability to Challenge Assignments to Qualified Assignees

10.     The Proposed Assignment Procedures provide that "any assignee or its credit support provider [that has] a Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or *any equivalent thereof*" shall be deemed a "Qualified Assignee." Motion at ¶19(b) (emphasis added). Under the Proposed Assignment Procedures a Counterparty is deemed to have received adequate assurance of future performance if a proposed assignee is a Qualified Assignee. Accordingly, the Counterparty is precluded from objecting to the assignment based on a lack of adequate assurance of future performance if the Debtor proposes to assign a Derivative Contract to a Qualified Assignee. Because the Debtors are not obligated to disclose the identity of the Qualified Assignee, a Counterparty has only the credit rating on which to rely.

11.     Even assuming that the Debtors will be able to identify Qualified Assignees with the

- 4 -

requisite credit ratings, or alternatively, determine in good faith what constitutes the equivalent of such a credit rating, the Debtors' extremely narrow formulation of adequate assurance is problematic for Bryant.  Under the Proposed Assignment Procedures, the sole indication of a Qualified Assignee's ability to perform in the future is its credit rating.  As has been readily apparent in the recent financial crisis, credit ratings are not always the best indication of a party's creditworthiness.  For example, as recently as September 12, 2008, the Friday before the lead debtor in this case filed for bankruptcy, Standard & Poor's Ratings Services ("S&P") maintained 'A' long-term and 'A-1' short-term counterparty credit ratings, on LBHI.  See *S&P: Lehman Brothers CreditWatch Revised to Developing After Reports of Potential Sale of Company, available at* http://www.reuters.com/article/pressRelease/idUS167660+12-Sep-2008+PRN20080912.

12.     A credit rating is not the only measure of the true risk of a potential assignee to Bryant.  For example, the Debtors' Proposed Assignment Procedures do not contemplate how a Qualified Assignee's status is affected if at the time of the transfer it has an A- rating from S&P, but is also issued a negative watch designation.  Such a designation could indicate that the Qualified Assignee's credit rating is subject to an imminent downgrade event which is certainly relevant to a determination that the Qualified Assignee will be able to fully perform in the future.  However, under the Proposed Assignment Procedures, a Counterparty would not know of these circumstances until after an assignment has been made, at which point it would be too late for it to object to such assignment.

13.     Beyond the financial capability of the assignee, other attributes of the potential assignee could have a substantial impact upon Bryant should the Swap Agreement be assumed and then assigned pursuant to the Proposed Assignment Procedures.   For example, if the

- 5 -

potential assignee is a foreign entity, an assignment of the Swap Agreement to that entity might have tax consequences to Bryant because of foreign tax laws not applicable when LBSF was the Counterparty and LBHI the Credit Support Provider. If either LBHI or LBSF had been a foreign entity, then the parties could have used an alternative ISDA swap agreement form tailored to a foreign entity as a counterparty. Accordingly, it is reasonable for Bryant to seek assurance that, as part of the assumption and assignment process, the consequences of performance by the proposed assignee, whether a Qualified Assignee or otherwise, will be the same to Bryant as if LBHI and LBSF were continuing to perform their obligations under the Swap Agreement.

14.     To now provide this assurance in connection with future performance of any proposed assignee, Bryant submits that two additional criteria should be imposed beyond the simple credit rating of the proposed assignee: i) that any proposed assignment will not result in the violation of any law, regulation, rule, judgment, order or other legal limitation or restriction applicable to Bryant; and ii) any such assignment does not result in any actual or potential adverse tax consequences to Bryant, including, without limitation, the obligation to deduct or withhold an amount with respect to any tax from payments required to be made to the proposed assignee, the receipt of payments from the proposed assignee from which amounts with respect to any tax may be deducted or withheld or the imposition of any tax, levy, impost, duty charge, or fee of any nature by any government or taxing authority which would not have been imposed but for such the proposed assignee.

      **(ii)    The Proposed Assignment Procedures Allow the Debtors to Unilaterally Designate Qualified Assignees Without any Explanation**

15.     The Proposed Assignment Procedures do not provide adequate assurance of an assignee's future performance. The Proposed Assignment Procedures simply state, without any further explanation, that a Qualified Assignee must meet a minimum credit rating as issued by

the three ratings agencies or "any equivalent thereof." This expansive definition of Qualified Assignee appears to grant the Debtors the sole discretion to determine what constitutes the equivalent of an A-/A3 rating, and accordingly provides the Debtors with unchecked latitude to designate almost anyone a Qualified Assignee without any justification or clarification.

16. The Proposed Assignment Procedures do not provide any opportunity for Counterparties to object to this "equivalency" standard. Further, the Proposed Assignment Procedures do not even require the Debtors to disclose how such a determination was made. As long as the Debtors designate a proposed assignee a Qualified Assignee, Counterparties will not know the credit rating, identity or the true financial condition of the proposed assignee, and will be forced to rely solely on the Debtor's judgment based on an amorphous standard. Permitting the Debtors to assign Derivatives Contract to virtually anyone they deem creditworthy eviscerates a Counterparty's statutory right to adequate assurance.

### IV. JOINDER IN OTHER OBJECTIONS TO THE MOTION

17. Bryant joins in other objections filed to the Motion to the extent not inconsistent with this Objection.

### V. RESERVATION OF RIGHTS

18. Although this Objection primarily addresses the procedural aspects of the Proposed Assignment Procedures, Bryant reserves its right to object to the assumption and assignment of the Swap Agreement pursuant to its rights thereunder and applicable Bankruptcy law. Bryant reserves all of its rights to submit additional arguments in support of this Objection either prior to or at the hearing to consider the Motion and reserves all of its rights under the Swap Agreement.

19. The grounds that Bryant may put forward in connection with any future objection include, but are not limited to, those discussed below.

### (i) The "Safe-Harbor" Provisions of Section 560 Through 562 Protect Bryant's Termination Rights Before and After Assumption and Assignment

20. The Bankruptcy Code provides numerous "safe harbor" provisions allowing counterparties to Derivative Contracts to exercise their contractual termination and other legal rights notwithstanding any party's bankruptcy filing. See 11 U.S.C. § 560-562 (providing counterparties with the right to terminate derivatives contracts notwithstanding 365(e)(1)). Absent the consent of the Counterparty, any assignee of the Debtors' will assume any Derivative Contracts subject to the Counterparties' ongoing termination rights.

### (ii) Reservation of Guarantee Rights

21. Bryant reserves all rights against LBHI in its capacity as a credit support provider pursuant to the Guarantee in the event of any assignment of a Swap Agreement.

## VI. WAIVER OF MEMORANDUM OF LAW

22. Bryant requests a waiver of the requirement of a memorandum of law required under Local Bankruptcy Rule 9013-1(a).

## VII. CONCLUSION

WHEREFORE, Bryant requests that any Order granting the relief sought in the Motion be modified to:

(a) require that the Debtors provide to Bryant, contemporaneously with any Assignment Notice, the credit rating, identity, and any other known financial information regarding any proposed assignee that demonstrates such assignee's creditworthiness irrespective of whether such proposed assignee is a Qualified Assignee as well as the identity, credit rating, and any other pertinent financial information of each of the parties placing a bid on the Swap Agreement;

12245013.3

(b) clarify the methodology the Debtors will use in determining what constitutes the equivalent of an A-/A3 credit rating; and

(c) grant such other and further relief as this Court deems necessary and appropriate.

Dated: New York, New York
November 28, 2008

Respectfully Submitted,

By: /s/ Robert N.H. Christmas
Robert N. H. Christmas
Victor G. Milione
NIXON PEABODY LLP
437 Madison Avenue
New York, NY 10022
Telephone: (212) 940-3000
Facsimile: (212) 940-3111

*Counsel to Bryant University*