Hearing Date:  December 3, 2008 at 10:00 a. m.
Objection Deadline:  November 28, 2008 at 4:00 p.m.

ROPES & GRAY LLP
Mark R. Somerstein (MS 9721)
1211 Avenue of the Americas
New York, New York 10036-8704
Telephone:  (212) 596-9000
Facsimile:  (212) 596-9090

     and

D. Ross Martin (DM-2947)
One International Place
Boston, Massachusetts 02110
Telephone:     617-951-7000
Facsimile:      617-951-7050

*Attorneys for THL Credit Partners, L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------- x
In re:                                             :        Chapter 11
                                                   :
LEHMAN BROTHERS HOLDINGS, INC., et al. :           Case No. 08-13555 (JMP)
                                                   :
                 Debtors.                          :        (Jointly Administered)
-------------------------------------------------- x
```

**OBJECTION OF THL CREDIT PARTNERS, L.P. TO THE DEBTORS' MOTION FOR
AN ORDER PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE
APPROVING THE ASSUMPTION OR REJECTION OF OPEN TRADE
CONFIRMATIONS**

THL Credit Partners, L.P. ("THLC"), by and through its undersigned counsel, hereby

submits this objection (the "Objection") to the Notice of Debtors' Motion for an Order Pursuant

to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade

Confirmations [Docket No. 1541] (the "Motion"), filed by debtor Lehman Commercial Paper,

Inc. in the above-captioned case on November 14, 2008, to the extent that the Motion relates to a

certain purported trade of bank debt with THLC identified as an assumed trade on Exhibit A to

the Motion, and respectfully represents and sets forth as follows:

## BACKGROUND

1.    On October 5, 2008, (the "Petition Date"), Lehman Commercial Paper, Inc. ("LCPI"

or the "Debtor") filed a petition for relief under Chapter 11, Title 11 of the United States Code,

11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for

the Southern District of New York.  The Debtor continues to manage and operate its business as

debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.    THLC has never been party to any trade with Lehman Commercial Paper, Inc.

("LCPI") for debt under that certain Bridge Loan Agreement dated as of May 10, 2006 among

NTK Holdings, Inc., various lenders, and Goldman Sachs Credit Partners L.P. as administrative

agent (the "Nortek Holdings Bank Debt").  Rather, in September 2008 a representative of THL

Credit Group, L.P. who handles trades for a variety of funds and entities expressed an interest in

such a trade.  *See* Affidavit of Christopher J. Flynn, attached at Exhibit A (the "Flynn

Affidavit").  On September 15, 2008, he settled on a price for a potential purchase from LCPI for

$27,000,000 in principal amount of the Nortek Holdings Bank Debt at a purchase rate of

35.000% (or $9,450,000.00).  As is customary in the bank loan trading market, the negotiations

always contemplated that an allocation of the trade would subsequently be made.  Mr. Flynn

promptly informed LCPI of the initial allocation of the trade (to THL Nortek (Luxembourg)

S.A.R.L., a limited liability entity created under the laws of Luxenbourg ("THL Luxco") and two

other funds, neither of which was THLC) during the day on September 16, 2008, and then

revised the allocation late that same day to be just to THL Luxco.

3.    During the following week, the parties negotiated the terms of a trade confirmation

with THL Luxco, and drafts and the final confirmation listed THL Luxco as the counterparty for

this trade with LCPI.  LCPI accepted that counterparty.  On September 23, 2008, more than eight

business days before LCPI filed for bankruptcy, THL Luxco sent LCPI a signed trade confirmation (the "Trade Confirmation") regarding the proposed trade.  A true and correct copy of the Trade Confirmation is attached as Exhibit A to the Flynn Affidavit, and a true and correct copy of the applicable LSTA Standard Terms and Conditions for Distressed Trades are attached as Exhibit B to the Flynn Affidavit.  Pursuant to paragraphs 18 of the LSTA Standard Terms and Conditions for Distressed Trades, LCPI agreed that the entity signing the trade confirmation is the counterparty that is bound.

4.    In accordance with the general market practice for settling bank debt trades, the Trade Confirmation should have been promptly signed and then the Nortek Holdings Bank Debt trade should have settled as soon as practicable (the "Settlement Date").

5.    On behalf of THL Luxco, Mr. Flynn repeatedly contacted LCPI regarding the trade prior to LCPI's petition date, but neither he nor THL Luxco ever received any substantive response.

6.    LCPI filed for bankruptcy on October 5, 2008.  THL Luxco did not receive any notice, communication, or direction from LCPI as to whether LCPI would assume the trade of the Nortek Holdings Bank Debt with THL Luxco.  On  November 5, 2008, more than four weeks after the Petition Date, LCPI informed THLC by e-mail that it was planning to assume a trade with THLC.

7.    As of October 5, 2008, THL Luxco did not know if LCPI thought there even was a trade, or would complete the trade of the Nortek Holdings Bank Debt.  THL Luxco, however, was not able to sell the Nortek Holdings Bank Debt or otherwise hedge the trade because it did not know if LCPI would complete the trade.

8.   LCPI never signed the Trade Confirmation, and, in any event, LCPI did not consummate any trade with THL Luxco on the Settlement Date.

9.   If THL Luxco would have known LCPI would attempt to enforce the trade that it had not signed, and assume the trade, as of October 5, 2008, THL Luxco could have minimized actual pecuniary losses.

## **ARGUMENT**

A.   Any Executory Contract Is with THL Luxco, and Not With THL Credit Partners, L.P.

10. The Motion seeks to assume a bank loan trade for Nortek Holdings Bank Debt with THLC  as counterparty.  However, there is no such transaction with THLC.  Paragraph 18 of the LSTA Standard Terms and Conditions for Distressed Trades expressly contemplates that the parties will make allocations of the bank loan trade to specific counterparties, and that those counterparties are the entities bound by the trade.  Paragraph 18 provides that

> each of the Buyer and Seller shall identify in the Confirmation (or in separate Confirmations) the specific funds that are counterparties and the appropriate allocations in respect thereof.

Here that allocation was never made to THLC, and was promptly made to THL Luxco.  THL Luxco provided a signed trade confirmation.  If LCPI is seeking to enforce this trade, it can only be with THL Luxco.  THLC cannot be ordered to perform a trade to which it was not party outside of bankruptcy.

B.   LCPI Repudiated the Trade When It Did Not Promptly Sign the Trade Confirmation

11. In addition to having the wrong counterparty, LCPI cannot now assume and enforce this bank loan trade (even with THL Luxco) because LCPI already repudiated the contract prior to LCPI's Petition Date.  It is well established that a contract that is cancelled prior to the petition date cannot be assumed.  *E.g., In re 2903 Wines & Spirits, Inc.*, 45 B.R. 1003 (S.D.N.Y. 1984).

In the ordinary situation regarding this issue, it is the counterparty that terminated the executory contract prepetition. This case is far stronger and clear-cut, because here the debtor, LCPI, repudiated the contract prior to the Petition Date.

12. Under New York law, a contract is repudiated when a party justifiably seeks assurances that its counterparty will perform and the counterparty does not provide those assurances within a reasonable time. *E.g., Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 705 N.E.2d 656 (N.Y. 1998) (applying this principle to contracts for the purchase of electric power). In this case there was a clear prepetition repudiation by LCPI. Specifically, LCPI and THL Luxco agreed to a price for this bank loan trade on September 15, 2008. That was the day that LCPI's parent company, Lehman Brothers Holdings, Inc., filed for bankruptcy. In that circumstance, both LCPI and THL Luxco knew that speed in closing the trade would be paramount. The Standard Terms and Conditions for bank loan trades such as this one required LCPI and THL Luxco to settle the transaction "as soon as practicable" after the parties had initially agreed on price. *See* Flynn Affidavit Exhibit B, Section 1. The necessity for speed in settlement, required by the Trade Confirmation and under the circumstances, caused THL Luxco to negotiate and return the signed Trade Confirmation to LCPI in just one week. At that point, LCPI did not sign the Trade Confirmation. Moreover, THL Luxco repeatedly tried to contact LCPI regarding the status of the trade for more than an additional week (from September 23 through the petition date of October 5, 2008). By failing to sign the Trade Confirmation or to give any substantive response to THL Luxco's inquiries following THL Luxco's very rapid delivery of a signed trade confirmation, LCPI failed to give the required assurances and thus repudiated the contract. This occurred prior to the Petition Date, there was no remaining executory contract as of the Petition Date, and this bank loan trade cannot be assumed.

C.    Even if there is a Trade that LCPI Can Assume, LCPI Must Compensate for Actual Pecuniary Loss due to Failure to Timely Settle

13. Section 365(b)(1) of the Bankruptcy Code requires a debtor that seeks to assume an executory contract to: (i) cure, or provide adequate assurance that it will promptly cure, any default in the executory contract; (ii) compensate, or provide adequate assurance that it will promptly compensate, the counterparty to the executory contract for any actual pecuniary loss to such party resulting from such defaults; and (iii) provide adequate assurance of future performance under such contract.  These three separate requirements ensure that a counterparty to an assumed contract is put back in precisely the same position that it would otherwise be in, were it not for the bankruptcy and the defaults by the Debtor.  *See Aetna Cas. & Sur. Co. v. Gamel*, 45 B.R. 345, 348 (N.D.N.Y. 1984) (citing the Congressional history of Section 365(b)(1)).  LCPI has asserted that with respect to trades where LCPI is the seller, that LCPI has no monetary cure.  However, that addresses only the requirements of Bankruptcy Code Section 365(b)(1)(A).  LCPI must also comply with Section 365(b)(1)(B), which imposes an independent requirement for compensation of actual pecuniary losses beyond the curing of contractual defaults.  LCPI also must compensate for actual pecuniary loss resulting from any default in the contract.

14. There was a default by LCPI when it failed to timely settle the trade.  Since the time the trade was supposed to settle, there have been actual pecuniary losses because the bank loan being purchased could have been sold or otherwise hedged.  However, because of LCPI's repudiation of the trade, its failure to settle "as soon as practicable," and its lack of response to inquiries, there was no practical way for a sale or hedge to have occurred.  A "default" under Section 365(b)(1) is "the failure to perform or fulfill some obligation imposed by law or contract."  *In re Metromedia Fiber Network, Inc.*, 335 B.R. 41, 49 (Bankr. S.D.N.Y. 2005).  The

- 6 -

LSTA Standard Terms and Conditions for Distressed Trades, which are expressly incorporated into the Trade Confirmation, contemplate that the trade close "as soon as practicable." *See* Flynn Affidavit Exhibit B, Section 1.

15. As a major and regular participant in the bank-loan trading market, LCPI was intimately aware of the bank debt market's understanding that bank debt trades are to settle promptly. This was even more important for this particular trade, which the parties initially negotiated on the day that LCPI's parent company filed for bankruptcy. THL Luxco repeatedly tried to contact LCPI, prior to its bankruptcy filing, to determine whether LCPI would sign the confirmation and accept and close the trade.

16. As set forth in the Affidavit of Joshua Nelson, THL Luxco concluded that it did not want this position that would have been purchased from Lehman, and could have sold or otherwise hedged its exposure to the Nortek Holdings Bank Debt for which THL Luxco had the Trade Confirmation with LCPI. Absent the bankruptcy case of LCPI and the default in settling the trade, THL Luxco could have entered into a contract to sell the loan, including standard loan-trading contracts that make the sale contingent on receipt of a prior trade. However, in this circumstance, THL Luxco could not know whether LCPI would assume or reject the trade; indeed, THL Luxco could not even get an answer as to whether LCPI thought there was a trade at all.

17. In the relevant time period, from and after the Settlement Date, the value of the loan has dropped. As described above, had the trade settled in a timely fashion (or if there had been assurances that it would have settled at all), this loss could have been avoided. Accordingly, there has been actual, pecuniary loss as a result of LCPI's default.

18. If LCPI is permitted to assume this trade, LCPI must also compensate for the amount of the loss in value from the date the trade should have settled to the actual date of assignment. The purchasing counterparty would also be entitled to adequate assurance that LCPI will pay this amount.

19. Any other result would deliver a windfall to LCPI.  LCPI did not decide to assume the Trade Confirmation until more than four weeks after the trade was first agreed to.  In essence, LCPI is exercising an *ex post facto* option to assume only the trades that were profitable for LCPI.  Certainly Section 365 gives the debtor this option; but only if the debtor puts the counterparty in precisely the same position that would have otherwise been in except for the bankruptcy and the default.  Absent LCPI's default, THL Luxco could have sold the Nortek Holdings Bank Debt and minimized its losses.  Instead, LCPI seeks to gain from the Nortek Holdings Bank Debt's further decline in value at THL Luxco's expense.  LCPI should not be allowed such a windfall

20. LCPI has stated in its Motion that it does not intend to provide any cure or other compensation.  Accordingly, the requirements of Section 365(b)(1) have not been met and LCPI should not be permitted to assume the Trade Confirmation unless and until it fully compensates for actual pecuniary loss.

## **MEMORANDUM OF LAW**

Authority for the relief requested by THLC is set forth herein, therefore THLC respectfully requests that this Court waive the requirement in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that THLC submit a separate memorandum of law.

## NOTICE

No trustee or examiner has been appointed in these cases.  Notice of this Objection has been provided to: (i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel to the Debtors; (iii) counsel to the Creditors' Committee; and (iv) and all parties having requested notice in these cases pursuant to Fed. R. Bankr. P. 2002.  In light of the nature of the relief requested herein, THLC submits that no other or further notice is required.

## NO PRIOR RELIEF

The relief requested by THLC in this Objection has not been sought previously in this or any other court.

WHEREFORE, THLC respectfully requests that this Court deny the Debtors' Motion for an Order Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade Confirmations as to the Nortek Holdings Bank Debt trade purportedly with THLC.  Alternatively, , the Motion as to the purported Nortek Holdings Bank Debt trade with THLC should be denied unless and until LCPI compensates, or provides adequate assurance that LCPI will promptly compensate for actual pecuniary losses resulting from LCPI's default.

Dated: November 28, 2008
      New York, New York

                    ROPES & GRAY LLP

                    By:   */s/ Mark R. Somerstein*
                    Mark R. Somerstein (MS-9721)
                    1211 Avenue of the Americas
                    New York, New York 10036-8704
                    Telephone:  (212) 596-9000
                    Facsimile:  (212) 596-9090

                        and

                    D. Ross Martin (DM-2947)
                    One International Place
                    Boston, Massachusetts 02110
                    Telephone:    617-951-7000
                    Facsimile:    617-951-7050

                    *Attorneys for THL Credit Partners, L.P.*