08-13555-mg    Doc 1892    Filed 11/28/08    Entered 11/28/08 14:57:30    Main Document
                                    Pg 1 of 12

**Hearing Date and Time: December 3, 2008 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: November 28, 2008 at 4:00 p.m. (Prevailing Eastern Time)**

| | |
|---|---|
| SHEPPARD MULLIN RICHTER & HAMPTON, LLP<br>30 Rockefeller Plaza, 24th Floor<br>New York, New York 10112<br>Tel: (212) 332-3800<br>Fax: (212) 332-3888<br>Carren Shulman (CS-2804)<br>Russell Reid (RR-2011) | REED SMITH LLP<br>599 Lexington Avenue<br>New York, NY 10022<br>Tel: (212) 521-5400<br>Fax: (212) 521-5450<br>Eric A. Schaffer (ES-6415)<br>Michael J. Venditto (MV-6715)<br>*Counsel to BNY Corporate Trustee Services Limited, in its representative capacity* |

-and-

333 South Hope Street, 48th Floor
Los Angeles, California 90071-1448
Tel: (213) 620-1780
Fax: (213) 620-1398
Kyle Mathews (KM-3255)
(admitted *pro hac vice*)

*Counsel to The Bank of New York Mellon, and*
*The Bank of New York Mellon Trust Company,*
*N.A., in their representative capacities*


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
                                                                  :
In re                                                             :     **Chapter 11**
                                                                  :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :     **Case No. 08-13555 (JMP)**
                                                                  :     **(Jointly Administered)**
                                     Debtors.       :
                                                                  :     Refers to Dkt. No. 1498
---------------------------------------------------------------x

**LIMITED OBJECTION OF THE BANK OF NEW YORK MELLON, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A. AND BNY CORPORATE TRUSTEE SERVICES LIMITED TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND ASSIGNMENT OF <u>PREPETITION DERIVATIVE CONTRACTS</u>**

-1-

The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., and any affiliate thereof, through its Corporate Trust Department, and BNY Corporate Trustee Services Limited, each as trustee, indenture trustee, agent or other representative capacity (collectively, the "Trustee") for the holders (the "Holders") of certain notes, certificates, bonds, or other interests (collectively, the "Notes") issued by certain issuers pursuant to structures created by the Debtors or their affiliates that have entered into derivative contracts with one or more Debtors, hereby objects to the *Debtors' Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures For The Settlement or Assumption and Assignment of Prepetition Derivative Contracts* [Docket No. 1498] (the "Motion").

1.      The Trustee understands the unprecedented nature of the Debtors' chapter 11 cases. In light of that, and despite the fact that the Trustee believes that the Motion seeks approval of an order that may violate the Bankruptcy Code and the United States Constitution, the Trustee has opted to file a limited objection rather than to seek to have the motion denied. Accordingly, the Trustee objects to the entry of an order approving the Motion only to the extent that the procedures described in the Motion (the "Procedures") would apply to transactions involving the Trustee (the "Trustee Transactions"). The Trustee acts in representative capacity for Holders and other parties in interest in hundreds of transactions that were, in many cases, structured by the Debtors and their European subsidiaries. The Holders who would be affected by the Procedures are scattered around the world, with many of them located in Europe, Asia and Australia. Due to these logistics and the variety of different transactional structures, the Procedures would be unworkable if they were applied to these transactions.

2.      Specifically, the Trustee objects to the application of the Procedures to the Trustee Transactions for the following reasons:

- The Procedures deprive beneficial Holders of their fundamental rights to due process, because Holders would not receive notice of actions that would affect their rights until after the objection period has passed;

-2-

- The Motion attempts to impermissibly amend 11 U.S.C § 365 through the use of 11 U.S.C. § 105; and

- The Procedures could limit the Trustee's and the beneficial Holders' rights under the "safe harbor" provisions of the Bankruptcy Code; and

- The Procedures impermissibly attempt to affect terminations of derivative contracts in a summary proceeding under 11 U.S.C. § 365.

3. For the foregoing reasons, the Trustee objects to the application of the Procedures to the Trustee Transactions and proposes additional language for inclusion in the proposed order that carves out Trustee Transactions.

**Background**

**The Trustee Transactions**

4. A detailed description of the hundreds of Trustee Transactions at issue is too voluminous for this Objection, therefore, a general description of the Trustee Transactions is provided herein.[1] Oftentimes the transactions include an indenture and a swap or repurchase agreement pursuant to which a trust, special purpose vehicle or other issuer is the counterparty to a derivative contract with a debtor. Because the obligations of the issuer are generally limited to the trust assets, the true parties in interest to these derivative transactions are the Holders. In most cases, the Trustee is required by the transaction documents to serve upon Holders notices, including notices of default and requests to assign contract rights, and to solicit direction from such Holders in connection with the exercise of their contractual rights. In nearly all instances, neither the Trustee nor the Debtors know the identity of the Holders because Holders typically hold through "street names" as set forth below. The percentage of Holders required to direct the

---

[1] Because a description of all of the Trustee Transactions would require literally hundreds and possibly thousands of pages to describe, the Trustee has not included a description of each of the Trustee Transactions. However, in order for the Court to understand the complexity of these transactions, the Trustee is submitting a declaration of Robert Major in support of this Objection that describes in detail one particular group of transactions (known as the "Dante Finance Programme").

-3-

Trustee's actions varies from transaction to transaction. The notice periods may vary as does the form of notice – in certain cases a Holders' meeting must be called within a certain timeframe before action may be voted upon, and then an additional notice and solicitation period must occur. Moreover, the Trustee is entitled to indemnification from the directing Holders satisfactory to the Trustee before taking any action.

**The Motion**

5.    In their Motion, the Debtors represent that they are parties to approximately 930,000 derivative contracts (the "Derivative Contracts"), which include "securities contracts," "forward contracts," "repurchase agreements," and "swap agreements" as defined under the Bankruptcy Code. (Motion ¶¶8, 9 at 4). The Debtors calculate that approximately 733,000 Derivative Contracts have been terminated in the period between the commencement of these cases and the filing of the Motion (collectively, the "Terminated Derivative Contracts"). (Motion ¶8 at 4). The remainder of these Derivative Contracts remain open (the "Open Derivative Contracts"). The Motion relates to both categories.

6.    With regard to the Open Derivative Contracts, the Debtors seek authorization to assume and assign selected contracts to third parties pursuant to procedures designed by the Debtors. Additionally, the Motion seeks approval of procedures for the resolution of issues relating to Terminated Derivative Contracts where counterparties may have set off against collateral or property to satisfy amounts owed by the Debtors. In both instances, the Debtors' expressed intent is "to reduce the costs associated with the assumption and assignment of Derivative Contracts and the settlement of claims arising from Terminated Derivative Contracts, as well as to hasten the collection of payments owed to the Debtors." (Motion ¶15 at 7).

<u>**The Trustee's Objection**</u>

**Objection to Adequacy of Notice in Procedures for Open Derivative Contracts**

7.    The Debtors surmise that counterparties to Open Derivative Contracts have chosen not to terminate "because termination of the Derivative Contract would result in a net

-4-

payment to the Debtors." (Motion ¶11 at 6). No support is offered for this speculation.[2] Assuming the existence of value, the Debtors propose to offer Open Derivative Contracts for sale and close on transactions "within 24 hours of selecting a bid because prices may undergo material shifts beyond this 24 hour period." (Motion ¶16 at 8). Counterparties are to be given notice of a proposed transaction by email, fax, or overnight delivery. Any counterparty that fails to deliver a written objection to the Debtors' counsel in New York within five business days would be deemed to have waived its substantive rights under the Bankruptcy Code or applicable non-bankruptcy law and to have: (i) consented to any cure amounts proposed by the Debtors, (ii) agreed that the assignee has provided adequate assurance of future performance, (iii) agreed that all defaults have been cured, (iv) waived any right to terminate the Open Derivative Contract, and (v) agreed that the terms of the Court's order apply to the proposed assignment. (Motion ¶19(f) at 11).

8. These Procedures would eliminate the legal and contractual rights of counterparties that do not respond to the Debtors' notice within five business days of service.

9. Even if the Debtors were to provide notice to either the Trustee or Depository Trust Clearing Corporation ("DTCC"), Euroclear System ("Euroclear") or Clearstream Banking S.A. ("Clearstream") – which they have not proposed – their contemplated timeframe would be insufficient to allow beneficial Holders of Notes to receive notice due to the complex nature of the financial structure of the Trustee Transactions. For example, if the Trustee received notices, it would have to transmit them to the registered Holders, DTCC, Euroclear or Clearstream, which in turn would have to send the notices to the appropriate first-tier participants, which then would have to forward the notices to their customers – the true beneficial Holders of the Notes. The Holders interested in responding would then have to prepare and deliver to the Trustee

---

[2] In the absence of any evidence of what any holder of Notes knows or may have decided, the Trustee objects to any imputation of motive for these actions or inactions.

written instructions to take action.  Under the Procedures, it is likely that the objection period will pass before the notice is received by most beneficial Holders.

10.  Due process requires that the Court provide "notice reasonably calculated, under all the circumstances, to apprise interested parties" of proceedings and afford them an opportunity to present their objections.  *See Jones v. Flowers*, 547 U.S. 220, 226 (2006) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  The Procedures fail to provide Holders of Notes with any notice, let alone notice that complies with minimum constitutional due process requirements.

**Objection to Proposed Procedures for Assumption and Assignment of Derivative Contracts**

11.  The Procedures attempt to amend the terms of the Trustee Transactions by providing that if a proposed assignee meets certain credit rating criteria it is deemed to provide adequate assurance of future performance.  Section 365 of the Bankruptcy Code does not permit the amendment of existing transaction documents.

12.  The Debtors argue that section 105 of the Bankruptcy Code authorizes this Court to grant the Debtors' broad authority to assume, assign, and modify Derivative Contracts without a hearing and with limited rights to object, in direct contravention of section 365 of the Bankruptcy Code.  The overwhelming judicial interpretation of section 105 of the Bankruptcy Code is that it cannot be used by bankruptcy courts to contradict or vary the express terms of another Bankruptcy Code provision.[3]  To the extent the Debtors are moving this Court to enter

---

[3]   *See, e.g., Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts can only be exercised within the confines of the Bankruptcy Code."); *In re One Times Square Assoc. Ltd. Partnership*, 159 B.R. 695, 702 (Bankr. S.D.N.Y. 1993) ("[T]his Court is of the opinion that 11 U.S.C. section 105 should be used only sparingly and then only to supplement the Bankruptcy Code, not supplant the Code."); *Feld v. Zale Corp. (Matter of Zale Corp.)*, 62 F.3d 746, 760 (5th Cir. 1995) ("Although we interpret section 105 liberally, a section 105 injunction must be consistent with the rest of the Bankruptcy Code.  A section 105 injunction cannot alter another provision of the code.") (citations omitted); *Gouveia v. Tazbir*, 37 F.3d 295, 300 (7th Cir. 1994) ("The Supreme Court has taught that any grant of authority given to the bankruptcy courts under section 105 must be exercised within the confines of the bankruptcy code.") (citations omitted); *Michel v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.)*, 999 F.2d 969, 972 n.5 (6th Cir. 1993) (Bankruptcy court may not use equitable principles to disregard unambiguous Bankruptcy Code language.); *U.S. v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986) ("While the bankruptcy courts have fashioned relief under Section 105(a) in a variety of situations, the powers granted by that statute may be exercised only in a manner consistent with the provisions of the

Continued on following page

an order authorizing the Debtors to assume and assign Open Derivative Contracts without the requisite notice to Holders or compliance with the specific terms of the Trustee Transactions, the Motion is inconsistent with section 365 of the Bankruptcy Code, and the powers vested in this Court pursuant to section 105 of the Bankruptcy Code should not and cannot be used to vary the express terms of section 365(a) of the Bankruptcy Code.[4]

13. As authority for the Motion, the Debtors set forth three other bankruptcy proceedings in which courts have entered orders dealing procedures for similar derivative contracts: (i) *In re NRG Energy, Inc.* (Case No. 03-13024 (S.D.N.Y.)); (ii) *In re Enron Corp.* (Case No. 01-16034 (S.D.N.Y.)); and (iii) *In re Mirant Corporation* (Case No. 03-46590 (N.D. Tex.)). A close reading of the motions underlying the orders, however, which are attached hereto as Exhibits A through C, reveals that the motions there only sought to authorize the Debtors to enter into settlement agreements with respect to terminated derivative contracts. Those motions did not request, and the orders entered thereon did not authorize, the assumption and assignment of derivative contracts without a hearing. Further, protocols at issue in these motions did not seek to alter, modify, or limit in any way the terms of the underlying contracts. As such, these prior orders are not precedent for the procedures proposed in the Motion.

**Reservation of Rights With Respect to Procedures for Open Derivative Contracts**

14. The Procedures in the Motion could limit the right to certain "safe harbor" protections guaranteed by various provisions of the Bankruptcy Code. The significance of these safe harbor protections to the orderly functioning of world financial markets has been recognized

---

Continued from previous page

Bankruptcy Code. That statute does not [ ] constitute a roving commission to do equity."); *Murgillo v. California State Bd. of Equalization (In re Murgillo)*, 176 B.R. 524, 531 (9th Cir. BAP 1995) ("A court may exercise its equitable power [pursuant to section 105] only as a means to fulfill some specific code provision; it may not use its equitable powers to achieve a result not contemplated by the code.").

[4] Significantly, the terms of the Derivative Contracts at issue are not anti-assignment provisions. They include specific provisions regarding the necessary credit rating of the counterparty, the need for assignment of related transaction documents, among many others, that, if not met and approved by the requisite number of Holders in accordance with the proper method of notice in the proper time frame, will result in a nullity of the Debtors' attempt to assume and assign under applicable U.S. or international law.

repeatedly by Congress.[5]  The Debtors, however, have proposed a process that could eliminate those protections under the guise of approving "procedures designed to promote efficiency and maximize value for the Debtors' estates." (Motion ¶12 at 6).

15. In addition, the Procedures could enable the Debtors' to circumvent the requirements of Section 365(b) unless a swap counterparty makes a timely objection.  Deeming the lack of response to be a waiver of statutory rights and a consent to the proposed transaction is contrary to law and equity.

**Objection and Reservation of Rights Regarding Terminated Derivative Contracts**

16. The proposed assumption and assignment procedures are not limited to Open Derivative Contracts.  To the extent the Procedures are intended to apply to Terminated Derivative Contracts, it is inappropriate to do so.

17. A hearing to determine whether a debtor can assume an executory contract is a summary proceeding and it is inappropriate in the context of such a proceeding to determine complex issues of fact such as those surrounding the propriety of the Trustee's actions in terminating a derivative contract. *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993) ("Although several bankruptcy courts have read § 365 as authorizing them to resolve questions involve the validity of contracts before deciding whether to permit the trustee or debtor-in-possession to assume the contracts [citations omitted], we believe that nothing in § 365 provides such authorization.")

18. To the extent that a factual dispute exists as to whether a derivative contract has been terminated, it should be resolved at trial, not through the Procedures.

---

[5] These protections are set forth in sections 362(b)(6), (7) and (17); 546(e), (f) and (g); 555; 556; 559; 560; and 561 of the Bankruptcy Code and are hereinafter collectively referenced as the "Safe Harbor Protections." Although these protections date back more than two decades, they were most recently extended and refined by Congress in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (P.L. No. 109-8) and the Financial Netting Improvements Act of 2006 (P.L. No. 109-390).

19.     With regard to Terminated Derivative Contracts, the Debtors appear to seek authority to resolve any disputes with counterparties. To the extent that such authority is limited to agreements that the Debtors actually negotiate with the counterparties, the Trustee has no objection. Any Court-approved procedures should recognize, however, that all statutory and contractual rights of these counterparties are preserved if disputes are not consensually resolved.

**Reservation of Rights of Holders of Notes and Issuers**

20.     At this time, the Trustee has not been directed by Holders to raise these issues with the Court. At the same time, it does not appear that the Debtors have taken any steps to serve the Motion on Holders or the Issuers. Accordingly, it would be inappropriate for the Court or the Debtors to assume that the lack of any objection from the Holders or Issuers is tantamount to acquiescence.

21.     For all of these reasons, the Trustee reserves any and all objections, rights, claims, and defenses of the Holders of Notes and Issuers to the proposed waivers and consents embedded in the Procedures, under the Bankruptcy Code or applicable non-bankruptcy law, including any objection to jurisdiction over the Holders of Notes and Issuers. The Trustee further reserves its rights and the rights of Holders to seek to withdraw the reference and the right to demand a trial by jury. Further, the Trustee reserves the rights of Holders and Issuers to object to or challenge any action taken by the Debtors in reliance upon these procedures.

22.     To the extent the Court intends to enter the proposed order on the Motion, and to the extent that the order applies to the Trustee, the Trustee requests that the Court include the following ORDERED paragraph:

> Notwithstanding anything set forth herein, to the extent that the counterparty to a Derivatives Contract is a trust or trustee or the issuer under a trust, the Debtors shall give notice in accordance with the terms of any related transaction documents in a manner that permits the relevant trustee or issuer to solicit consents and obtain direction in accordance with the terms of such documents. Nothing herein shall be deemed to amend or otherwise modify the terms of any such documents. Nothing in this order shall be deemed to limit any party's right to a trial in respect of contested factual issues. Nothing in this order shall modify or limit the protections set forth in sections 362(b)(6), (7) or (17); 546(e), (f) or (g); 555; 556; 559; 560; or 561 of the Bankruptcy Code.

WHEREFORE, the Trustee respectfully objects to the Motion and requests that the Court deny the relief requested.

Respectfully submitted,

Dated: New York, New York
November 28, 2008

By: */s/ Carren Shulman*
Carren Shulman (CS-2804)
Russell Reid (RR-2011)
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
30 Rockefeller Plaza, 24th Floor
New York, New York 10112
Tel: (212) 332-3800
Fax: (212) 332-3888

333 South Hope Street, 48th Floor
Los Angeles, California 90071-1448
Tel: (213) 620-1780
Fax: (213) 620-1398
Kyle Mathews (KM-3255)
(admitted *pro hac vice*)

*Counsel to The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A. in their representative capacities*

-and-

Dated: New York, New York
November 28, 2008

By: */s/ Eric A. Schaffer*
Eric A. Schaffer (ES-6415)
Michael J. Venditto (MV-6715)
599 Lexington Avenue
New York, NY 10022
Tel: (212) 521-5400
Fax: (212) 521-5450

*Counsel to BNY Corporate Trustee Services Limited, in its representative capacity*

-10-

**TO**:

Chambers of Honorable James J. Peck
One Bowling Green, Courtroom 601
New York, New York 10004

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attention: Lori R. Fife
          Robert J. Lemons
          Richard P. Krasnow
          Shai Y. Waisman
          Jacqueline Marcus

Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178
Attention:  Steven J. Reisman
           L. P. Harrison 3rd

Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, New York 10004
Attention: Andy Velez-Rivera
          Paul Schwartzberg
          Brian Masumoto
          Linda Riffkin
          Tracy Hope Davis

Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, New York 10005
Attention: Dennis F. Dunne
          Dennis O'Donnell
          Evan Fleck, Esq.

Cleary Gotliebb LLP
One Liberty Plaza
New York, New York 10006
Attention: Lindsee P. Granfield
          Lisa Schweiger

Sullivan & Cromwell LLP
125 Broad Street

New York, New York 10004
Attention: Robinson B. Lacy
          Hydee R. Feldstein