KELLEY DRYE & WARREN LLP
W. Christian Drewes
Benjamin Blaustein
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897

- and -

Mark W. Page
333 West Wacker Drive
Chicago, Illinois 60606
Tel: (312) 857-7070
Fax: (312) 857-7095

Attorneys for The Juilliard School

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.,* | Case No. 08-13555 (JMP) |
| Debtors. | Jointly Administered |

**LIMITED OBJECTION OF THE JUILLIARD SCHOOL
TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO
SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO
ESTABLISH PROCEDURES FOR SETTLEMENT OR ASSUMPTION
AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS**

The Juilliard School (<u>Juilliard</u>), by and through its undersigned counsel, hereby submits this limited objection (the "<u>Objection</u>") to the Debtors' Motion (the "<u>Motion</u>") for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivatives Contracts, dated November 13, 2008 (Docket No. 1498). In support, Juilliard respectfully states as follows:

**PRELIMINARY STATEMENT**

1. By the Motion, the Debtors seek to replace or modify the procedures specified by section 365 of the Bankruptcy Code and Bankruptcy Rule 6006 with truncated procedures for assumption and assignment of derivative contracts under section 365 of the Bankruptcy Code. (Mot. ¶ 19.) The Debtors generally seek to impose inadequate notice and response dates, dispense with identifying the proposed assignee in certain circumstances, and limit the grounds for objecting to adequate assurance of future performance of the assignee under the derivative contract. While Juilliard does not object to establishing assumption and assignment procedures for derivative contracts as a general proposition, Juilliard objects to the proposed procedures on the grounds that they would deprive Juilliard of the protections of section 365 of the Bankruptcy Code.

**BACKGROUND**

2. On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI") filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Since then, numerous affiliates of LBHI (together with LBHI, the "Debtors") have likewise filed voluntary chapter 11 petitions. One such affiliate, Lehman Brothers Special Financing Inc. ("LBSFI"), filed its chapter 11 petition on October 3, 2008.

3. Prepetition, LBSFI and Juilliard entered into an ISDA® Master Agreement dated as of April 21, 2005 (the "Master Agreement"). (A copy of the Master Agreement, including its attached Schedule, Credit Support Annex, and other exhibits, is annexed hereto as Exhibit A.) Under the Credit Support Annex to the Master Agreement, if LBSFI has a Standard & Poor's or Fitch credit rating equal to A or below or a Moody's credit rating equal to A2 or below, it is required to post collateral to cover any amounts it would owe

2

Juilliard if any transactions under the Master Agreement were terminated. The Master Agreement prohibits a party from transferring the Master Agreement or any interest under it without the prior written consent of the other party.

4. Pursuant to the Master Agreement, LBHI is the credit support provider of LBSFI and, in that capacity, has executed a Guarantee (the "Guarantee") of payment to Juilliard of all amounts payable by LBSFI under each transaction entered into under the Master Agreement. (A copy of the Guarantee is annexed hereto as Exhibit B.)

5. Under the Master Agreement, LBSFI and Juilliard have entered into two interest rate swap transactions (the "Swap Transactions"), each confirmed by a letter agreement (each, a "Confirmation" and, together, the "Confirmations") and guaranteed by LBHI. (Copies of the Confirmations are annexed hereto as Exhibit C.) One Confirmation, dated April 21, 2005, provides for a swap transaction in the notional amount of $125,000,000 and a termination date of July 1, 2041. The other Confirmation, dated July 31, 2006, provides for a swap transaction in the notional amount of $35,000,000 and a termination date of July 1, 2036.

6. The Master Agreement provides that the insolvency or filing of a bankruptcy case by any party or credit support provider constitutes an event of default and is grounds for termination of any transactions under the agreement between the parties. Given that both LBSFI and LBHI have filed and remain in bankruptcy proceedings, they are both in ongoing default of the Master Agreement. To date, Juilliard has not exercised its termination rights, which are not waived but reserved.[1]

---

[1] In footnote 2 to the Motion (Mot. at 4), the Debtors reserve the right to assert that counterparties have waived the right to terminate on account of the Debtors' bankruptcies or financial condition. Juilliard denies that it has waived its termination rights and reserves all of its rights.

3

7. At present, termination of the Swap Transactions would require net settlement payments to the Debtors. However, over the course of the remaining term of each Swap Transaction, it is entirely possible that from time to time LBSFI (or any assignee of LBSFI) would instead owe Juilliard a net settlement payment if the Swap Transactions were terminated.

## ARGUMENT

8. The proposed assumption and assignment procedures would improperly deprive Juilliard of many of the protections of section 365 of the Bankruptcy Code. Pursuant to section 365(f) of the Bankruptcy Code, a debtor may assume and assign an executory contract only if the debtor (i) meets the requirements of section 365(b)(1) of the Bankruptcy Code for assumption of the contract and (ii) provides adequate assurance of future performance by the proposed assignee under the contract. "Congress's intent in imposing these conditions on the ability of the debtor to assume the contract was 'to insure that the contracting parties receive the full benefit of their bargain if they are forced to continue performance.'" *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996) (quoting *In re Superior Toy & Mfg. Co.*, 78 F.3d 1169, 1174 (7th Cir. 1996)). The procedures proposed by the Debtors provide no such insurance but instead work to limit and undermine Juilliard's rights under section 365.[2]

### A. The Proposed Notice Procedures Would Wrongly Deprive Juilliard of Meaningful Opportunity to Object to Assumption and Assignment

9. The proposed procedures afford inadequate notice of the proposed assumption and assignment of a derivative contract. As a result, Juilliard would be deprived of a

---

[2] The orders cited by the Debtors in paragraph 21 of the Motion as creating similar procedures for the assignment or settlement of derivative contracts in the *NRG Energy*, *Mirant*, and *Enron* bankruptcy cases address only settlement procedures and do not establish assignment procedures.

4

meaningful opportunity to object to the proposed assumption and assignment of the Swap Transactions and, if unable to resolve its objections, to have a hearing on the merits.

   10. Bankruptcy Rule 6006 governing assumption and assignment of executory contracts incorporates the procedures of Bankruptcy Rule 9014. Rule 9014 provides that "*reasonable* notice and opportunity for hearing *shall be afforded* the party against whom relief is sought." Fed. R. Bankr. P. 9014(a) (emphasis added); *cf. In re Burger Boys, Inc.*, 94 F.3d 755, 763 (2d Cir. 1996) (formal motion and opportunity to oppose motion required for assumption of unexpired lease; lower court erred in allowing debtor merely to file election of assumption). These requirements of court approval and a hearing after reasonable notice "provide necessary safeguards" to parties forced to maintain contractual relations with an assignee of the debtor. *In re National Gypsum Co.*, 208 F.3d 498, 512 (5th Cir. 2000). "Notice as a procedural safeguard cannot expand or contract based solely upon the procedural choice of the debtor when the ramifications to the non-debtor party are no less severe." *Id.* (notice requirements when assumption occurs pursuant to plan do not differ from those when assumption occurs pursuant to motion).

   11. Under the proposed procedures, the Debtors would have to provide only five business days notice of the assumption and assignment. (Mot. ¶ 19(a).) In that short time, Juilliard would have to investigate and analyze the financial condition of the proposed assignee (if one is even identified) and serve the Debtors' counsel with its objection to the proposed assumption and assignment. This is insufficient time to perform such investigation and analysis. At a minimum counterparties should be afforded fifteen (15) business days notice.

   12. The proposed procedures are also inadequate because they would permit assignment of the Master Agreement without the Debtors even identifying the proposed assignee

5

to the counterparty before the assignment. As proposed, the Debtors would not need to specify the identity of the proposed assignee in the notice to the counterparty, but rather would be able simply to state that any assignee or its credit support provider shall have a Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or any equivalent thereof (a "<u>Qualified Assignee</u>"). (Mot. ¶ 19(b).) The assignment may then take place without notifying the counterparty of the assignee's identity beforehand (and indeed nothing in the proposed procedures requires the Debtors to notify the counterparty of the identity of the assignee even after the assignment takes place). Similar procedures have previously been rejected as insufficient to meet the notice requirements of Bankruptcy Rules 6006 and 9014. *See In re Golden Books Family Entm't., Inc.*, 269 B.R. 300, 306 (D. Del. 2001) (notice of sale procedures providing that nondebtor's contracts were subject to assumption and assignment to winning bidder of debtor's assets found to be insufficient notice of eventual assignee). Counterparties should be notified of the identity of the proposed assignee in sufficient time to object to the assignment before its consummation.

13. Finally, the proposed procedures fail to require timely notice to the counterparty of the consummation of the assignment and the particulars of the assignee. The only requirement is that the Debtors provide notice of the effective date of an assignment within an unspecified "reasonable time period" after consummation of the assignment. (Mot. ¶ 19(j).) Such notice should be provided as soon as practicable after consummation and should not only include notice of the assignment's effective date but also confirm the identity of the assignee and its contact information.

6

> **B.     The Proposed Procedures Wrongly Serve to Limit the Grounds to
> Object to the Proposed Adequate Assurance of Future Performance**

14.     Adequate assurance of future performance "provides needed protection to the non-debtor party because the assignment relieves the trustee and the bankruptcy estate from liability for breaches arising after the assignment." *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 (3d Cir. 2001). "What constitutes . . . 'adequate assurance of future performance' must be determined by consideration of the facts of the proposed assumption." *Id.* n.10. "Assumption [and assignment] . . . is subject to court approval based on a review of the totality of the circumstances." *In re U.S. Wireless Data, Inc.*, ___ F.3d ___, 2008 WL 4724366, at *2 (2d Cir. Oct. 29, 2008).

15.     The Debtors wrongly seek to limit the grounds for objection and narrow the scope of the adequate assurance inquiry. Specifically, the Debtors propose that any counterparty will be deemed to have received adequate assurance of future performance under the derivative contract if either (i) an assignee or its credit support provider is a Qualified Assignee or (ii) the Debtors, after payment of any cure amounts, would no longer have any payment or delivery obligations under the derivative contracts. (Mot. ¶ 19(c).) A counterparty would be precluded from objecting to the proposed adequate assurance if an assignee or its credit support provider is a Qualified Assignee. (Mot. ¶ 19(e); Proposed Order at 6-7.)

16.     The Debtors make no showing that a so-called "Qualified Assignee," as determined by any predetermined credit rating (much less the inadequate ratings proposed by the Debtors), should automatically qualify as an acceptable assignee. Especially in today's financial markets, credit ratings have proven to be unreliable and subject to rapid change; hence, adequate protection must be determined "based on the totality of the circumstances," *Wireless Data*,

7

*supra*, at the time of a particular proposed assignment and not by a predetermined one-size-fits-all formula.

17. Moreover, the proposed credit ratings for a Qualified Assignee – a Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or any equivalent thereof – are too low under the Credit Support Annex to the Master Agreement for any proposed assignee to avoid a margin call under the Annex. As such, by definition they cannot be deemed to provide adequate assurance of future performance under the Master Agreement. At most, the credit rating of a proposed assignee should be but one factor to consider and not alone determinative of an acceptable assignee. In addition, the credit rating should be examined as of the time of assignment, not at the time the Debtors serve notice of proposed assumption and assignment. Objection should therefore be permitted to Qualified Assignees as well as non-Qualified Assignees, and all of the facts and circumstances of the proposed assignment should be considered.

18. The proposed procedures also provide that a credit support provider that is a Qualified Assignee is deemed to provide adequate assurance of future performance, but fail to specify the level of credit support necessary to allow the credit support provider to substitute for the assignee. Credit support comes in many variations, not all of which provide irrevocable, unconditional, and complete recourse to the credit support provider for payment of all amounts payable under a derivatives contract. The procedures should specify that only a credit support provider providing such recourse can substitute for the assignee for purposes of adequate assurance.

19. The Debtors also propose that a counterparty will be deemed to have received adequate assurance of future performance if, after payment of any cure amounts, the

8

Debtors would have no payment or delivery obligations under the derivative contract. (Mot. ¶ 19(c).) This criterion is inadequate to provide adequate assurance to the extent the derivative contract has not terminated and Debtors and their proposed assignee could have payment or delivery obligations in the future, even if no such obligations exist at the time of assignment. Given that derivative contracts are typically tied to the movement in financial markets, such obligations could readily mature in the future. The proposed procedures should be clarified on this point.

20. Although it is not clear, the Debtors may also be seeking to modify assigned derivative contracts to eliminate all restrictions on assignment for all future purposes, rather than just to the extent inconsistent with section 365 and then only for the limited purpose of the immediate assignment by the Debtors. (See Proposed Order at 7.) This would violate the established principle that an assignee must accept all of the burdens and obligations of a executory contract. *E.g.*, *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80-81 (3d Cir. 1999). To ensure there is no confusion on this point, as well as to the consequences of assumption and assignment generally, any order that is entered establishing assumption and assignment procedures should expressly provide that on assumption and assignment the assignee shall be subject to and bound by all of the terms of the assigned contract.

C. **Juilliard's Termination Rights Cannot Be Limited or Impaired**

21. Section 560 of the Bankruptcy Code categorically directs that the exercise of termination, liquidation, acceleration, and certain related rights of a swap participant such as Juilliard "shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by order of a court . . . in any proceeding under this title." *See also* 11 U.S.C. § 561. The proposed procedures should be limited accordingly.

22.     Juilliard reserves all of its rights to object to the Motion on all other available grounds, to object to any purported assumption and assignment of the Master Agreement or any Swap Transaction, and to exercise its termination liquidation, acceleration, and related rights under the Master Agreement.

WHEREFORE, for the reasons stated, Juilliard objects to the Motion and respectfully requests that this Court deny the requested relief unless the proposed procedures are modified to provide that: (i) the Debtors shall give the counterparty at least fifteen (15) business days notice of a proposed assumption and assignment; (ii) the Debtors shall identify the proposed assignee in the notice; (iii) after consummation of an assignment, the Debtors shall notify the counterparty of the effective date of the assignment and confirm the assignee and its contact information; (iv) any counterparty may object on any grounds to adequate assurance of future performance with respect to any proposed assignee, whether or not a Qualified Assignee, and all the facts and circumstances of the proposed assignment shall be considered; (v) a credit support provider may substitute for an assignee for purposes of adequate assurance of future performance only if the counterparty has irrevocable, unconditional, and complete recourse to the credit support provider for payment of all amounts payable under the derivatives contract; (v) a counterparty will be deemed to have received adequate assurance of future performance only when, after payment of any cure amounts, the Debtors and their proposed assignee could not possibly have any payment or delivery obligations under the derivative contract at present and throughout any remaining term of the derivative contract; (vi) on consummation of an assignment, the assignee shall be subject to and bound by all of the terms of the assigned contract, and (vii) nothing in this order shall in any way limit or impair the exercise of termination, liquidation, acceleration, and related rights of a counterparty of the Debtors to a

10

derivatives contract, and grant such further and other relief as this Court may deem just and equitable.

Dated: New York, New York
November 28, 2008

KELLEY DRYE & WARREN LLP

By: */s/ Benjamin Blaustein*
Benjamin Blaustein

W. Christian Drewes
Benjamin Blaustein
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897

- and -

Mark W. Page
333 West Wacker Drive
Chicago, Illinois 60618
Tel: (312) 857-7070
Fax: (312) 857-7095

Attorneys for The Juilliard School

# **CERTIFICATE OF SERVICE**

      I, Sarah K. Kam, do hereby certify that I am not less than 18 years of age and that on the 28th day of November 2008, the foregoing *Limited Objection of the Juilliard School to Debtors' Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for Settlement or Assumption and Assignment of Prepetition Derivative Contracts* was filed through CM/ECF and served upon the parties electronically, via first class U.S. mail, and via facsimile (except where specified by hand delivery).

                                                    */s/ Sarah K. Kam*
                                                    Sarah K. Kam

The Chambers of the Honorable James M. Peck
One Bowling Green
New York, New York 10004
*Via Hand Delivery*

Weil Gotshal & Manges LLP
Attn: Lori R. Fife, Esq. and Robert J. Lemons, Esq.
767 Fifth Avenue
New York, New York 10153
Fax: 212-310-8007

Curtis, Mallet-Prevost, Colt & Mosle LLP
Attn: Steven J. Reisman and L.P. Harrison 3rd
101 Park Avenue
New York, New York 10178
Fax: 212-697-1559

The Office of the United States Trustee for the Southern District of New York
Attn: Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, and Tracy Hope Davis
33 Whitehall Street, 21st Floor
New York, New York 10004
Fax: 212-668-2255

Milbank, Tweed, Hadley & McCloy LLP
Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq. and Evan Fleck, Esq.
1 Chase Manhattan Plaza
New York, New York 10005
Fax: 212-822-5770