**Hearing Date and Time: December 3, 2008 at 10:00 a.m (Prevailing Eastern Time)**
**Objection Date and Time: November 28, 2008 at 4:00 p.m (Prevailing Eastern Time)**

ROPES & GRAY LLP
One International Place
Boston, Massachusetts  02110
Telephone: 617.951.7000
Facsimile: 617.951.7050
Shuba Satyaprasad (SS-5875)
D. Ross Martin (DM-2947) (of counsel)

Attorneys for Certain Funds Managed by Putnam Investments

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.* | **Case No. 08-13555 (JMP)** |
| **Debtors.** | **Jointly Administered** |

**OBJECTION OF PUTNAM INVESTMENTS FUNDS**
**TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO**
**SECTION 365 OF THE BANKRUPTCY CODE APPROVING THE**
**ASSUMPTION OR REJECTION OF OPEN TRADE CONFIRMATIONS**

Certain funds managed by Putnam Investments (collectively, "Putnam" or the "Objecting Counterparties"),[1] by and through their undersigned counsel, submit this objection (the "Objection") to the Debtors' Motion for an Order Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade Confirmations (the "Motion")[2] [Docket No. 1541].  In support of the Objection, the Objecting Counterparties respectfully represent as follows:

---

[1] The funds are: Putnam Premier Income Trust, Putnam Master Intermediate Income Trust, Putnam Variable Trust, Putnam Floating Rate Income Fund, Putnam Bank Loan Fund (Cayman) Master Fund and IG Putnam U.S. HighYield Income Fund.

[2] Capitalized terms used by not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**PRELIMINARY STATEMENT**

1.    Pursuant to the Motion, the Debtors seek to extinguish Putnam's state law setoff rights with respect to certain Open Trade Confirmations.  The Bankruptcy Code expressly contemplates that such setoff rights are enforceable in bankruptcy.  Granting the relief requested in the Motion would require this Court to disregard these setoff rights pursuant to Bankruptcy Code, which are secured creditor rights.

2.    Very simply, the Debtors are attempting to use the provisions of the Bankruptcy Code as a sword to extinguish rights of setoff that would otherwise exist under state law.  The Debtors contend that, for purposes of setoff: (i) on the one hand, as a result of Bankruptcy Code sections 365(g) and 502(g), the rejection damages claims (for the Rejected Trades) are prepetition unsecured claims; and (ii) on the other hand, an assumption of a prepetition contract (for the Assumed Trades) turns a preexisting obligation of the nondebtor to pay money into a "post-petition obligation."  In other words, although the Objecting Counterparties unquestionably have a state-law right of setoff outside of bankruptcy, the Debtors want instead to force counterparties to pay 100 cents on the dollar in the purchase price for the Assumed Trades, while receiving back some unspecified amount for the damages in cents on the dollar on the Rejected Trades.  This destruction of state-law rights is not, and cannot be, what Congress intended as the purpose and effect of the Bankruptcy Code.  Indeed, the Debtors recognize how outlandish their proposal is, because even they are forced to point out that there is directly contrary authority to their position.

3.    In addition, with respect to certain of the Assumed Trades, LCPI previously (and post-petition) sent a notice of rejection to Putnam.  Putnam justifiably relied on that notice and entered into a covering trade.  Now LCPI has changed its mind, and Putnam has suffered actual

2

pecuniary losses as a result, which LCPI must compensate in order to assume to trade, all pursuant to Bankruptcy Code section 365(b)(1).[3]

## BACKGROUND

4. On October 5, 2008 Lehman Commercial Paper, Inc. ("LCPI," and together with its affiliated debtors and debtors-in-possession, the "Debtors"), commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On November 14, 2008, LBHI and LCPI filed the Motion seeking authorization pursuant to section 365(a) to assume, reject, or modify and assume certain Open Trade Confirmations. In addition, the Motion seeks entry of an order finding that

> (i) the Debtors are not required to pay cure costs with respect to the Assumed Trades or the Amended Trades and have determined the Counterparties to such trades with adequate assurance of future performance, and
>
> (ii) no Counterparty is entitled to assert or exercise a right to setoff any prepetition claim against the Debtors, including without limitation damages claims arising from any Rejected Trade, against

---

[3] In addition to the various substantive grounds set out below, the Motion should be denied for several fundamental procedural failures. First, the Debtors have entirely failed to provide any evidence of the nature of these contracts, and whether they are executory. Instead the Debtors offer nothing more than a conclusory spreadsheet to identify contracts; when the Debtors took this sale approach with their motion to approve a sale to Barclays, there was significant confusion for counterparties, amendments by the debtors, and apparently also significant errors in the actual list. Second, the Debtors have entirely failed to provide any evidence that the cure amounts and payment for actual pecuniary losses are zero. This is certainly not true: assumed trades require cure by either delivery of a loan (if the trade is a sell) or delivery of money (if the trade is a buy). Third, there is no showing of adequate assurance of future performance. In the case of trades that are buys, there is no showing that LCPI has any cash at all. More importantly, in the case of trades that are sells by LCPI, there is no showing that LCPI already owns these loans and can therefore deliver them.

3

any obligation to the Debtors with respect to any Assumed Trade or Amended Trade.

6. The Putnam funds are Counterparties to certain Open Trade Confirmations that are the subject of the Motion. Specifically, by the Motion, the Debtors seek to assume or reject the following Open Trade Confirmations with Putnam (collectively, the "<u>Putnam Trades</u>"), respectively.

**Assumed Putnam Trades**

| Debtor | Deal Name | Trade Date |
|---|---|---|
| LCPI | Dollar General Term (7-06-07) | 8/28/2008 |
| LCPI | Wimar Opco (Tropicana Entertainment) | 7/14/2008 |
| LCPI | Wimar Opco (Tropicana Entertainment) | 7/14/2008 |
| LCPI | Dresser, Inc. First Lien CA 5/07 | 9/8/2008 |

**Rejected Putnam Trades**

| Debtor | Deal Name | Trade Date |
|---|---|---|
| LCPI | MEG Energy Corp. (4/06) | 8/28/2008 |
| LCPI | MEG Energy Corp. (4/06) | 8/28/2008 |
| LCPI | Spanish Broadcasting – First Lien | 9/11/2008 |
| LCPI | Spanish Broadcasting – First Lien | 9/11/2008 |
| LCPI | Wesco Aircraft Hardware Corp 1st Lien | 8/28/2008 |

Each of the Putnam funds only asserts setoff rights with respect to assumed and rejected trades for which that specific fund is the Objecting Counterparty; i.e. Putnam is not asserting in this Objection any cross-fund setoff.[4] The aggregate amount of setoff that Putnam is asserting is approximately $1.95 million, which may change depending on the timing of rejection of trades.

**OBJECTION**

**A.    The Objecting Counterparties Have a Right to Setoff That Cannot Be Extinguished**

---

[4] Each of the Objecting Counterparties except IG Putnam US High Yield Fund is party to both Assumed Trades and Rejected Trades. IG Putnam US High Yield fund is party only to an assumed trade for which additional compensation is due from the Debtors (see Part D below). Putnam will provide the details of the allocations to the Debtors and the Creditors Committee upon request, and file such information with the Court under seal if the Court desires. The precise allocations are not public, and various of the Putnam Funds are publicly registered mutual funds for which their allocations of these loans are not disclosed. The precise amounts allocated to each fund are not relevant to this Objection or the Motion; indeed, the Debtors simply lumped all of these trades together as a single counterparty listed as "Putnam."

4

7. Bankruptcy Code Section 553 expressly preserves preexisting state-law rights of setoff, subject only to certain exceptions not relevant here, stating that:

> **Except as otherwise provided in this section and in Sections 362 and 363 of this title, <u>this title</u>** does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case.

11 U.S.C. § 553(a) [emphasis added]; *see Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) ("[a]lthough no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy."). As noted by one court,

> [I]f rights of setoff were not preserved in bankruptcy, creditors might be more inclined to exercise a right of setoff under applicable nonbankruptcy law at an earlier stage, rather than risk losing the right altogether in a subsequent bankruptcy proceeding. By recognizing and protecting the right, the Bankruptcy Code removes an incentive that might otherwise lead a creditor to take precipitous action.

*In re Bourne*, 262 B.R. 745, 757 (Bankr. E.D. Tenn. 2001) (quoting 5 Collier on Bankruptcy ¶ 553.02[2] (15th ed. rev. 2000)).

8. The plain language at the start of section 553 only sets forth two sections under the Bankruptcy Code which are exceptions to the preservation of setoff rights, namely, 362 and 363. No mention is made of section 365, and thus it is clear that Congress did not intend the result sought in the Debtors' Motion, namely, that section 365 can be used to destroy valid setoff rights. Here, the Debtors have moved the Court for a purely legal determination that setoff is eliminated through the Debtors' 365 election, without <u>any</u> review of the underlying contracts or any inquiry as to whether other agreements exist among the respective counterparties. Given the

5

plain meaning and clear limiting language in section 553, we submit that for the Court to include such a determination as a matter of law would be clear error.[5]

9. In practice, in order to determine a creditor's right to setoff, courts look to applicable nonbankruptcy law and to the parties' agreement. *See In re Garden Ridge Corp.*, 338 B.R. 627 (Bankr. D. Del. 2006) ("Although no federal right of setoff is created by the Bankruptcy Code . . . the threshhold question in every case involving an asserted right of setoff is the source and validity of the underlying right" (internal citation omitted)); *see also In re Delta Airlines, Inc.*, 341 B.R. 439 (Bankr. S.D.N.Y. 2006) (citing numerous cases reflecting the preservation of state rights of setoff under the Bankruptcy Code).

10. New York law, which governs here, recognizes both a common law and statutory right to setoff. *Straus v. Tradesman's Nat'l Bank*, 122 N.Y. 379, 25 N.E. 372 (1890); N.Y. Debt. & Credit. Law § 151 (McKinney 1997) (codification of common law right of setoff). Pursuant to New York law, even debts that are unmatured, such as those between the Debtors and the Objecting Counterparties resulting from the Open Trade Confirmations, are subject to setoff. N.Y. Debt. & Credit. Law § 151 (McKinney 1997).

11. The preservation of setoff rights provided by section 553 of the Bankruptcy Code is reinforced by section 506(a) of the Bankruptcy Code, which provides that a claim of a creditor "that is subject to setoff under section 553 . . .is a secured claim . . . to the extent of the amount subject to setoff." 11 U.S.C. § 506(a). Further, pursuant to section 363(e) of the Bankruptcy Code, upon the request of a secured creditor, a debtor may not use property in which such

---

[5] We would also note that the limitation of 553 by 363, rather than by 365, makes for a more sensible reading of the statute, as section 363 contains protections for secured creditors' rights, such as limitations on when assets can be conveyed "free and clear" of liens or encumbrances, and requirements to provide adequate protection, which the Debtors are seeking to avoid by invoking section 365 of the Bankruptcy Code.

6

creditor has an interest unless the debtor provides the secured creditor with adequate protection of such interest. 11 U.S.C. § 363(e).

12. Directly contrary to these provisions of the Bankruptcy Code, the Debtors seek to eviscerate the Objecting Counterparties' state law setoff rights by relying on sections of the Bankruptcy Code that are unrelated to setoff. Specifically, the Debtors argue that (i) pursuant to sections 502(g) and 365(g) of the Bankruptcy Code, neither of which relates to setoff, rejection damages claims arising from the Rejected Trades are prepetition claims and (ii) section 365(b), which also does not relate to setoff and typically serves to require <u>the debtor</u> to make 100-cent, post-petition payment of claims on assumed contracts, renders the entire assumed contract, including the obligations of the nondebtor party (here, Putnam), a post-petition obligation.

13. The Debtors are trying to have it both ways. They argue that an executory contract expressly kept alive into the post-petition period can have some claims (rejection claims) come into being prepetition while other claims (counterparty obligations) come into being postpetition. In their Motion, even the Debtors are forced to acknowledge that there is directly contrary authority in the Southern District of New York, and perhaps a split of authority. *Compare In re Delta Air Lines, Inc.*, 341 B.R. 439 (Bankr. S.D.N.Y. 2006) *with In re Genuity, Inc.*, 323 B.R. 79 (Bankr. S.D.N.Y. 2005). Based on the text of the statute, and in keeping with the purposes of sections 553 and 506(a) of the Bankruptcy Code to preserve existing state-law setoff rights by giving secured status to setoff claims, the Debtors cannot have it both ways, and the Debtors' arguments cannot reasonably coexist. Either (i) both sides of the Open Trade Confirmations are prepetition obligations, thereby allowing setoff, or (ii) for setoff purposes, the obligations of both sides of those Open Trade Confirmations are determined at the time of assumption/rejection, in which case both sides are liabilities that arise post-petition, thereby also

7

allowing setoff. Most importantly, neither approach destroys Putnam's right to setoff and, therefore, the relief sought in the Motion must be denied.

**(1) The Obligations Under the Open Trade Confirmations Are All Prepetition Obligations Subject to Setoff Under Bankruptcy Code Section 553**

14. Putnam has state law setoff rights pursuant to New York state law that are clearly protected by sections 553 and 506(a) of the Bankruptcy Code. As of the Petition Date, LCPI and each of the Objecting Counterparties were parties to bank loan trades under which both parties had mutual executory obligations and liabilities. The plain text, natural reading of section 553 provides that the "debt" (*i.e.,* "liability on a claim") of the Objecting Counterparties to LCPI already had arisen prepetition, and similarly each Objecting Counterparty had liability to LCPI in the prepetition period.

15. The Supreme Court has repeatedly stated that underlying rights in bankruptcy are determined by state law. *E.g., Butner v. United States,* 440 U.S. 48, 99 S. Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law" . . . "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). As set forth above, the Objecting Counterparties have a setoff right pursuant to New York state law. N.Y. Debt. & Credit. Law § 151 (McKinney 1997) (permitting setoff, even if unmatured). Nevertheless, the Debtors argue that, because the decision to assume the Assumed Trades was made post-petition, any obligations of Putnam to the Debtors with respect to the Assumed Trades (i.e., "debts," in the language of section 553 of the Bankruptcy Code) arose post-petition.

8

16. Courts have addressed this precise issue in a line of cases involving farm reorganizations, which also prominently feature executory contracts for the purchase and sale of goods that are traded on a market (like the bank loans in this case) and for which there may be contracts running both ways between counterparties. The view that has emerged from this significant line of cases is that, for setoff purposes, obligations arising under a prepetition contract remain prepetition obligations, regardless of whether such obligations are contingent or unliquidated. *See In re Affiliated Food Stores, Inc.*, 123 B.R. 747, 748 (Bank. N.D. Tex. 1991) ("[t]he fact that a debt owed to [d]ebtor is subject to conditions precedent or subsequent, appears to not transform a prepetition obligation into a post-petition obligation"); *see also Sherman v. First City Bank of Dallas*, 99 B.R. 333, 338 (N.D. Tex. 1989), *aff'd,* 893 F.2d 720 (5th Cir. 1990) ("[t]he character of a claim is not transformed from prepetition to post-petition because it is contingent, unliquidated, or unmatured when the [d]ebtor's motion is filed."); *In re Parrish*, 75 B.R. 14, 16 (N.D. Tex. 1987); *In re Lundell Farms*, 86 B.R. 582, 585 (Bankr. W.D. Wisc. 1988); *Moratzka v. United States Agricultural Stabilization and Conservation Service (In re Matthieson)*, 63 B.R. 56 (D. Minn. 1986) (stating that a creditor's "right to setoff may be asserted in a bankruptcy case even though at the time the petition is filed, [the debt] is absolutely owing but not presently due, or where a definite liability has accrued but is as yet unliquidated"); *Agricultural Stabilization and Conservation Service v. Gerth*, 991 F. 2d 1428, 1432 (8th Cir. 1993) (finding that mere assumption of an executory contract does not alter when the obligations arose, following the Matthieson decision); *see generally In re Allen*, 135 B.R. 856 (Bankr. D. Iowa 1992) (discussing at length the split in the courts, and adopting the majority view that executory contracts entered into prepetition result in prepetition, mutual obligations subject to setoff).[6]

---

[6] The minority line of cases traces back to *In re Walat Farms, Inc.*, 69 B.R. 529 (Bankr. E.D. Mich. 1987) (finding

9

17.     Finally, the Debtors' view that (as a matter of law) assumption under Section 365 may destroy setoff, thereby improving the value of the contracts being assumed, is wholly inconsistent with longstanding bankruptcy law that contracts are assumed <u>cum onere</u>, with the attendant burdens that existed on the petition date. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) (overruled on other grounds by Bankruptcy Code Section 1113).  Basic rights of setoff and counterclaim against the Debtors' contract rights (explicitly protected by Section 506(a) of the Bankruptcy Code), are among the burdens upon the contracts for which assumption is sought.

18.     Accordingly, the Debtors' assumption of the Assumed Trades does not transform the Objecting Counterparties' prepetition obligations with respect to such trades into post-petition obligations payable in full to the Debtors.  As this court has stated: "[f]or purposes of setoff, a debt arises when all transactions necessary for liability have occurred, regardless of whether the claim was contingent when the petition was filed." *In re Bousa, Inc.*, 2006 WL 2864964 * 3 (Bankr. S.D.N.Y., Sept. 29, 2008) (Peck, B.J.).  In other words, debt that is contingent at the commencement of the case and becomes] fixed post-petition, is nevertheless "properly characterized as pre-petition debt." *Id.*  As the Debtors concede in the Motion, the Open Trade Confirmations were entered into prepetition and "represented a binding agreement to purchase or sell positions in par or distressed loans, participations in par or distressed loans, or claims against third parties at an agreed upon price." Motion, ¶8.  Despite this concession, the Debtors ask the Court to recharacterize just half of these obligations (those for the Assumed Trades only) for the sole purposes of defeating Putnam's right of setoff.  Following the reasoning of the line of cases discussed above, however, the Debtors and Putnam have mutual prepetition

---

that executory contracts were not binding on debtor until assumed post-petition and, therefore, contracts were post-petition contracts).

10

obligations arising from the Assumed Trades and the Rejected Trades, and Putnam therefore has a right of setoff that may not be eradicated by the Debtors.

### (2) Alternatively, the Obligations Under the Open Trades Are All Post-petition Obligations Subject to Setoff

19. Alternatively, if the obligations arising under the rejection of the Rejected Trades and assumption of the Assumed Trades are not prepetition obligations, they must be, in line with the *Delta Airlines* case, post-petition obligations that are subject to setoff.

20. The Debtors' core argument is that following assumption of the Assumed Trades, the obligations of Putnam are post-petition obligations. However, this argument runs headlong into a major problem in that another court in this District has already concluded that, under the plain language of the Bankruptcy Code, a rejection damages claim "arises" post-petition, even though it is "allowed" as a prepetition claim. *See In re Delta Airlines, Inc.*, 341 B.R. 439 (Bankr. S.D.N.Y. 2006).

21. The *Delta Airlines* Court concluded that, while a claim for rejection damages arising from the debtor's rejection of its airport lease should be treated as if it arose prepetition, such treatment did not mean that the rejection damages claim was a prepetition claim that the creditor could set off against its prepetition obligation to the debtor. *Id.* at 449. The *Delta Airlines* Court based its decision on the literal and precise language of Bankruptcy Code sections 502(g) and 553, noting that a rejection damage claim is not "a claim . . . against the debtor that arose before the commencement of the case" as a matter of state law. *Id.* at 446. Rather, the court found that, for purposes of setoff, "the claim did not exist prepetition, either as an actual claim or as a contingent claim, any more than the possibility of some future breach of contract claim can be said to 'arise' or exist before the actual breach." *Id.* Similarly, Putnam's rejection damages claims with respect to the Rejected Trades did not exist prepetition and did not arise

11

until the rejection of the Rejected Trades by the Debtors. Therefore, following the reasoning of the *Delta Airlines* Court, Putnam's rejection damages, for purposes of setoff, cannot be considered prepetition obligations.

22. The language of Bankruptcy Code section 502(g), so heavily relied on by the Debtors, does not aid the Debtors' argument. Rather, Bankruptcy Code section 502(g) provides:

> A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b) or (c) of this section or disallowed under subsection (d) or (e) of this section, <u>the same as if such claim had arisen before the date of the filing of the petition</u>

11 U.S.C. § 502(g)(1). If the Debtors are correct that, for setoff purposes, obligations "arise" at the time of the post-petition decision to assume, then section 502(g), and the reasoning of *Delta Airlines*, is definitive: a rejection damages claim does not arise prepetition; rather it is treated <u>as if</u> it had arisen prepetition. Therefore, rejection damages claims resulting from the Rejected Trades arose post-petition, as did any obligations related to the Assumed Trades.

23. As the Debtors' Motion points out, the *Delta Airlines* decision has been widely criticized. However, the single case that the Debtors cite in support of their position is *In re Genuity, Inc.*, 323 B.R. 79 (Bankr. S.D.N.Y. 2005). An examination of the reasoning underlying the *Genuity* decision reveals that the Debtors' reliance on this decision is misplaced, and demonstrates that courts in this District will not use a debtor's assumption or rejection decision to destroy a creditor's preexising setoff rights.

24. In *Genuity*, the debtors owed cure payments on certain assumed contracts with creditors that also held prepetition deposits from the debtors. Rather than making cash cure payments and allowing creditors to apply their prepetition deposits to prepetition unsecured claims that would otherwise receive only cents-on-the-dollar, the debtors attempted to apply the

12

creditors' prepetition deposits to reduce the cure amounts. The *Genuity* court found that the debtor could not make a unilateral post-petition decision to destroy the creditors' prepetition deposit protections. Despite the Debtors' reliance on the decision, the *Genuity* court ultimately protected the preexisting secured creditors from the precise inequitable conduct that the Debtors are asking the Court to authorize in Motion – *i.e.*, the use the assumption/rejection process to destroy prepetition setoff rights – and therefore does <u>not</u> support the Debtors' position.

25. As the Debtors' Motion recognizes, the rationale of the *Genuity* decision runs directly counter to the rationale of the *Delta Airlines* decision. Indeed, in both cases the discussion regarding prepetition and postpetition claims being setoff is not necessarily the sole basis for decision. Both cases have an alternative holding that the contracts in question did not permit the setoff that was proposed and therefore there was not a debt owing. *Delta Airlines*, 341 B.R. at 450 (contract permitted application of the airport credits only prospectively and during what turned out to be the postpetition period); *Genuity*, 323 B.R. at 84 (tariffs and contractual arrangements provided that creditors only had a debt to pay back the deposits after the creditor was otherwise paid in full). Faced with conflicting rationales from other courts in this District, this Court should rely on the plain text and fundamental purposes of protections for setoff provided in sections 553 and 506(a) of the Bankruptcy Code.

26. As discussed, courts that have reviewed the issue of setoff of claims under executory contracts have reasoned that, because the obligations under executory contracts are all prepetition obligations, setoff is permissible. However, even if the Court adopts the Debtors' view that obligations under the Assumed Trades arose post-petition, the logic underlying such view mandates the corresponding conclusion that rejection damages claims related to the Rejected Trades also arose post-petition for purposes of section 553. The Debtors are trying to

13

have it both ways and thereby destroy preexisting state-law rights. The Court must reject that approach.

C. **The Objecting Counterparties' Right of Setoff Is a Secured Claim Entitled to Adequate Protection That May Not Be Extinguished**

27. As set forth above, the obligations arising under the Assumed and Rejected Trades are either all prepetition obligations or all post-petition obligations, which are subject to setoff by the Objecting Counterparties. Therefore, pursuant to section 506(a) of the Bankruptcy Code, which provides that a claim subject to setoff under section 553 of the Bankruptcy Code is a "secured claim to the extent of the amount subject to setoff," the Objecting Counterparties have a secured claim against the Debtors that the Debtors may not eliminate or otherwise alter without the Objecting Counterparties' express consent. Further, in order for the Debtors to sell the bank loans (*i.e.*, property in which the Objecting Counterparties have a security interest), the Debtors are required by section 363(e) of the Bankruptcy Code to provide the Objecting Counterparties with adequate protection of such interest.

28. Further, section 542(b) reiterates that this setoff right is not eliminated even if the Debtors establish a right to collect payment under the Assumed Trades. "...[A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 if this title against a claim against the debtor." 11 U.S.C. § 542(b) [emphasis added].

D. **LCPI Must Cure and/or Pay Actual Pecuniary Loss With Respect to a Rejected Trade that LCPI Now Wants to Assume, Because Putnam Immediately Made a Covering Purchase**

29. As the Debtors state in the Motion, they gave advance notice of their intention to assume or reject various bank loan trades, even prior to the filing of the Motion. This was

14

apparently done in response to requests by market participants and others to have LCPI make decisions so that parties could enter into covering trades or otherwise sell loans they would be purchasing when Lehman assumed a trade. *See* Revised Stipulation and Agreed Order entered November 5, 2008 [Docket No. 1400]. On November 6, 2008 certain of the Putnam Funds received a notice that LCPI would be rejecting a bank loan trade for debt of Dresser Industries, which those funds were to have purchased from LCPI. *See* Exhibit A (email from LCPI).

30.  As a result, those Putnam funds immediately covered in the market; these Putnam purchases of Dresser Industries bank debt were at a lower price than the initial trade with LCPI. Accordingly, Putnam's immediate action in response to the rejection notification therefore would have saved the estate from any potential rejection damages claim.

31.  However, on November 21, 2008, after filing of the Motion, these Putnam funds received another email notice from LCPI, stating that LCPI now wanted to assume these trades with respect to Dresser Industries bank debt. *See* Exhibit B (email from LCPI). Putnam understands that the Debtors have the right to withdraw the portion of their Motion seeking to reject these Dresser Industries trades and at least refile a new motion seeking to assume those trades. However, the entire purpose of the advance notice worked out with market participants was to enable those participants to make further decisions and enter into commercially appropriate covering transactions. Putnam justifiably relied on the original email notification, but as a direct result of LCPI having "changed its mind" Putnam now has obligations to purchase twice the original amount of Dresser Industries bank debt.

32.  LCPI's repudiation of the Dresser Industries trade with Putnam was, as a matter of state law, an anticipatory repudiation of the trade, and therefore a default. Bankruptcy Code sections 365(b)(1)(A) and (b)(1)(B) require that a debtor seeking to assume a trade cure all

15

defaults and compensate the counterparty for all pecuniary loss arising from the default. In this case, LCPI is required to either (i) stand by its original rejection notice or (ii) compensate Putnam for any losses that Putnam must take if Putnam sells the extra Dresser Industries bank debt in a timely fashion. Putnam is prepared to cooperate with LCPI to determine, if possible, a prompt and otherwise mutually agreeable sale of that extra Dresser Industries bank debt, at a time, place and manner in order to minimize this pecuniary loss. That amount must be paid as part of any cure, or be deducted from the purchase price of the Dresser Industries bank debt that LCPI want to sell to Putnam.

## **CONCLUSION**

33.     WHEREFORE, the Objecting Counterparties respectfully request that the Court deny the Debtors' Motion to the extent it seeks to extinguish the Objecting Counterparties' right of setoff and grant such other and further relief as the Court may deem proper.

Dated: November 28, 2008
      New York, New York

                                        By:  */s/ Shuba Satyaprasad*
                                        ROPES & GRAY LLP
                                        One International Place
                                        Boston, Massachusetts  02110
                                        Telephone: 617.951.7000
                                        Facsimile: 617.951.7050
                                        Shuba Satyaprasad (SS-5875)
                                        D. Ross Martin (DM-2947) (of counsel)

                                        Attorneys for certain funds managed by
                                        Putnam Investments