EXHIBIT B

```
 1                IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3

 4

 5   UAL Corporation,              )   No. 02 B 48191
                                   )   Chicago, Illinois
 6                                 )   9:30 a.m.
                     Debtor.       )   November 18, 2005
 7

 8

 9            TRANSCRIPT OF PROCEEDINGS BEFORE THE
                  HONORABLE EUGENE R. WEDOFF
10

11

12   APPEARANCES:

13   For the Debtors:              Mr. James Sprayregen;
                                   Mr. Marc Kieselstein;
14                                 Mr. David Seligman;
                                   Mr. Erik Chalut;
15                                 Mr. Todd Gale;

16
     For the Creditors Committee:  Mr. Fruman Jacobson;
17                                 Ms. Carole Neville;

18
     For the City of Chicago:      Mr. Matthew Gensburg;
19
     For the U.S. Trustee:         Mr. Stephen Wolfe;
20
     For Verizon Capital:          Mr. William Rochelle;
21
     For OurHouse:                 Ms. Gia Colunga;
22
     For Wells Fargo Bank, N.A.:   Mr. Frank Top;
23
     For PBGC:                     Mr. Joseph Boyle;
24

25
```

Page 2

```
 1    Appearances (Continued):

 2
      For UAL Loyalty Services:      Mr. Andrew Rosenman;
 3
      For Disney:                    Mr. Michael Stenglein;
 4
      Pro se:                        Ms. Barnita Vann;
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20    Court Reporter:                Amy Doolin, CSR, RPR
                                     U.S. Courthouse
21                                   219 South Dearborn
                                     Room 661
22                                   Chicago, IL  60604.

23

24

25
```

Page 29

1           THE COURT: We're taking it out of
2  order so --
3           MR. KIESELSTEIN: That is 45, Your
4  Honor.
5           THE COURT: This one is about as long
6  as the last one. If you would like to sit down while
7  I read it, you might be more comfortable.
8           Wells Fargo Bank Northwest N.A., in
9  its capacity as Class A pass through trustee of the
10 1997-1 EETC transaction, has moved for
11 reconsideration of an order entered on August 26,
12 2005 granting a motion by the debtors to enforce the
13 automatic stay. The order granted the motion by
14 voiding a sale of certain equipment notes issued by
15 or on behalf of United Airlines, Inc., that were
16 secured by 14 aircraft now being operated by United
17 without permanent financing in place.
18           The order was based on a determination
19 that United had a beneficial interest in certain of
20 the equipment notes that were sold by virtue of its
21 ownership of certificates issued by trusts that held
22 the notes, and that this beneficial interest brought
23 the notes within United's bankruptcy estate,
24 subjecting them to the automatic stay.
25           In asking for reconsideration of this

1   order, the bank points to authority for the
2   proposition that the beneficiary of a trust does not
3   have an interest in trust property sufficient to
4   bring the property within the beneficiary's
5   bankruptcy estate, at least in situations where the
6   beneficiary cannot direct the trustee in dealing with
7   the property.  This authority is persuasive.
8              Section 541(a) of the Bankruptcy Code
9   in defining property of the estate includes all legal
10  or equitable interests in property that the debtor
11  has at the commencement of the case, and all such
12  interests that the estate acquires after case
13  commencement.  However, the estate's interest in
14  property is limited to the scope of its interest
15  under applicable nonbankruptcy law.
16              For example, Section 541(d) provides
17  that if the debtor holds, quote, "only legal title
18  and not an equitable interest," close quote, in
19  property, the property, quote, "becomes property of
20  the estate only to the extent of the debtor's legal
21  title to such property, but not to the extent of any
22  equitable interest in such property that the debtor
23  does not hold," close quote.
24              The converse is also true.  Where a
25  debtor has only a limited beneficial interest in

```
 1   property held in trust, without a right to control
 2   the property, only the debtor's limited interest
 3   becomes estate property, excluding the right to
 4   control.  Lyons v. Federal Savings Bank, in re Lyons,
 5   193 B.R. 637, 645, Bankruptcy Court for the District
 6   of Massachusetts, 1997 -- excuse me, 1996.
 7                 An example makes it clear why this
 8   rule should prevail.  Imagine a situation in which
 9   income-producing property has been conveyed to a
10   managing trustee in trust for several beneficiaries
11   under a trust indenture that directs the trustee to
12   make prudent investments of the trust res.  If one of
13   the beneficiaries files a bankruptcy case, the
14   managing trustee cannot stop managing the property on
15   behalf of all of the beneficiaries, even though the
16   automatic stay, prevents, among other things, quote,
17   "any act to exercise control over property of the
18   estate,' close quote.  11 USC Section 362(a)(3).
19                 Indeed, the very authority cited by
20   United for the proposition that the res of a trust
21   becomes property of a beneficiary's bankruptcy estate
22   came to that conclusion only after finding that the
23   beneficiary did in fact control the property in
24   question.  In re Stowell, 232 B.R. 823, 826,
25   Bankruptcy Court for the Northern District of New
```

1   York, 1998.

2                In the present situation, United as
3   the holder of certificates of beneficial interest in
4   trusts owning equipment notes, had no direct right to
5   control the notes, but only those rights accorded by
6   the relevant trust agreements.  Therefore, only those
7   contractually defined rights entered its bankruptcy
8   estate and were protected by the automatic stay.  The
9   res of the trust remained under the control of the
10  relevant pass through trustees, not part of United's
11  bankruptcy estate.

12               Accordingly, the bank's motion for
13  reconsideration will be granted, and the order of
14  August 26, 2005 will be vacated.  However, the bank
15  is not entitled, as it requests, to a denial of the
16  motion by United that generated that order.  United's
17  motion sought to void the sale of the equipment notes
18  on alternate grounds, only one of which was ruled on.

19               United's principal ground for seeking
20  an order voiding the sale of the equipment notes was
21  that the sale violated a post-petition adequate
22  protection agreement between United and the bank.
23  That aspect of the motion, as the court noted in
24  first considering it, involves questions of contract
25  interpretation that may need to be addressed further.

1              Accordingly, the vacation of the
2    August 26th order properly has the effect of
3    reinstating United's motion, docket number 12191, and
4    it will be necessary to discuss the resolution of
5    that motion in conjunction with United's adversary
6    proceeding, 05 A 01758, dealing with control of the
7    equipment notes affected by the motion.
8              MR. KIESELSTEIN:  Your Honor, can I
9    raise one question as to your ruling?  Your Honor, I
10   understand the rationale where the beneficial holders
11   are an enumerable legion of people who are holders
12   who don't have any ability to exercise control and
13   are, in essence, passive investors, if you will.  I
14   think our situation is quite different, because
15   United, as the holder of all of the B certificates,
16   had already issued its notice to buy out the As.  In
17   fact, nine of the ten-day notice period had already
18   run.  That right would have, Your Honor, if
19   exercised, given them complete control over the A
20   notes, the A trustee and the A remedies.
21             THE COURT:  That's precisely why I
22   have reinstated the original motion.  It may well be
23   that the rights accorded under the beneficial
24   interest that United possessed gave United a right to
25   effectuate its purchase, nullifying the attempt, if

1    that's what it was, of the trustee to sell the

2    equipment notes.

3                   But that's a contract right or a right

4    of the beneficial owner.  It is not something that

5    would cause the automatic stay to apply, unless you

6    want to argue that the notice of intent to purchase

7    the Class A certificates itself gave United the Class

8    A certificates, and then, of course, gave a right to

9    the Class A certificates, in which case the automatic

10   stay would have prevented the sale.  But that's

11   really a subdivision, if you will, of the notion that

12   the demand was effective to give rights to United to

13   prevent the sale.  If that was the case, you don't

14   need the automatic stay.

15                  MR. KIESELSTEIN:  Well, I don't think

16   it is putting the cart before the horse, Your Honor.

17   The rationale for the ruling is a de minimus holding.

18   Maybe not even de minimus holding, but a holding that

19   does not carry with it a quantum of control over the

20   property in interest, here the equipment notes.  That

21   if that's the rationale, then by virtue of hundred

22   percent ownership of these notes by -- a vested

23   contractual right to exercise the buyout, which in

24   fact was in the process of being exercised, puts

25   that -- United in that circumstance, in a completely

1   different category than the one of many theoretical

2   holders of a trust you discussed.

3              THE COURT:  All right.

4   Mr. Kieselstein, your argument requires me to find

5   that the purchase demand that United made was

6   effective to give United control over the equipment

7   notes, and that proposition is one that is not

8   addressed, was not addressed in the ruling that I

9   made earlier.

10             The ruling that I made earlier was

11  premised on the proposition that a beneficial

12  interest in the trust brought the trust res into the

13  bankruptcy estate.  And I'm quite convinced that I

14  was mistaken in ruling that way.  It does not do

15  that.  It only brings in the beneficial holder's

16  interest.

17             Now you may be right that in this case

18  that beneficial interest carried with it this right

19  to purchase the shares -- excuse me, the certificates

20  of the A tranche, and when the attempt was made to

21  sell the res of that trust there was a violation of

22  the automatic stay.  But as I say, in my opinion

23  that's a new issue.  It is subordinate to your

24  contract issue, your rights under the trust

25  agreement.  And so I would address it in further

1   consideration of the motion.  It would not change the

2   ruling that I've made today.

3                    MR. KIESELSTEIN:  All I'm saying, Your

4   Honor, is that I don't believe the answer to the

5   question turns on whether the adequate protection

6   stipulation was violated or not violated by this

7   sale.

8                    Let's assume for a moment it wasn't

9   violated.  What I'm saying is the status of United as

10  hundred percent holder, having issued the notice of

11  forced buyout, puts them in a position where their

12  rights are such that they fall within the protections

13  of the automatic stay.  And I am a little concerned

14  about where things stand at the moment.  If the

15  equipment notes have been sold out from under United,

16  then that interest that the automatic stay would glom

17  onto is vaporized in a sense.

18                    THE COURT:  Well, you're making an

19  argument now that wasn't made earlier.  There was no

20  reason for it to be made earlier because I accepted a

21  broader argument.  If you're worried that some action

22  might be taken by the trustee or by the purported

23  owners, new owners of the equipment notes, that would

24  jeopardize United's possession of these aircraft, I

25  believe you're going to have to take some kind of

Page 37

1    emergency injunctive action to prevent that from

2    taking place.

3                It may be that there is not going to

4    be any threatened action of that sort.  I am not

5    going anywhere for the next couple of weeks.  If

6    there is a need for an emergency motion to be

7    brought, that can certainly be done.

8                What I was going to suggest is that

9    the issues of United's right to gain control over the

10   equipment notes might be made part of the underlying

11   adversary proceeding and resolved in that context.

12   But that's up to you.  If you want to continue to

13   argue that the automatic stay was violated by the

14   purported sale on a ground other than the one that I

15   ruled on earlier, the sort that you're making an

16   argument on right now, you're certainly free to do

17   that.

18                But I think that would require an

19   amendment of your motion, which didn't make the

20   precise argument that you're making now, and there

21   would have to be an opportunity for the trustee to

22   respond to that argument.  But all I want to do now

23   -- and obviously this is something you haven't had an

24   opportunity to discuss with one another.

25                MR. KIESELSTEIN:  Sure.

```
 1                THE COURT:  But I think what we need
 2   to do at this point is to talk about what action
 3   takes place in further resolution of the condition of
 4   these 14 aircraft.  I have a motion for summary
 5   judgment right now that has the potential for being
 6   rendered moot if the sale of the equipment notes is
 7   affected.  So we have to get some understanding of
 8   how this matter should proceed.
 9                With the assumption that you haven't
10   already talked about this, it might be a good idea to
11   give you an opportunity to do that and perhaps come
12   back next Tuesday.
13                MR. KIESELSTEIN:  Well, let me suggest
14   this, Your Honor:  As you know, that original motion
15   was filed on an emergency basis, basically the day we
16   found out about the sale.  And we didn't enumerate,
17   frankly, all of the grounds at that time for why we
18   thought the sale was inappropriate.
19                THE COURT:  Well, I think you've even
20   got a footnote in the motion explaining that you may
21   have other arguments.
22                MR. KIESELSTEIN:  And what I think
23   would probably make sense for us to do is to file an
24   amended motion that enumerates all of our grounds,
25   including a refinement of our automatic stay
```

1   argument, as well as our other grounds besides the

2   contractual argument as to why the sale is invalid

3   and should be treated as such. And then we can tee

4   that up on the schedule for the next omnibus, I

5   suppose.

6              THE COURT: Well, that's fine, as long

7   as the new owner, if the sale is valid, will agree to

8   a stand still while that matter is being resolved.

9              MR. KIESELSTEIN: In fact, the

10  adequate protection stipulation on these planes

11  rolled over on the 15th of the month, and they would

12  not be able to pull the planes, which I don't,

13  frankly, think they are all that interested in doing,

14  until December 15th, which is on the virtual date of

15  the omnibus in any event.

16             THE COURT: All right. Well, look, I

17  am happy to issue the rulings that I have issued

18  today and continue the remaining matters to the

19  December 16th omnibus, if that's agreeable to

20  everyone.

21             MR. TOP: That's fine with us, Your

22  Honor.

23             THE COURT: Okay. That's what will be

24  done.

25             THE CLERK: There was a motion to file

```
 1   documents under seal.
 2                THE COURT:  Yes, the motion to file
 3   documents under seal is granted.
 4                MR. KIESELSTEIN:  So, Your Honor, now
 5   that we have a predicate issue to our motion for
 6   summary judgment, we will just roll that over, too, I
 7   take it?
 8                THE COURT:  Obviously.  Given this
 9   issue, the summary judgment could not be granted.
10                MR. TOP:  Thank you, Your Honor.
11                MR. KIESELSTEIN:  I believe that takes
12   us to the Disney matter.
13                THE COURT:  It does.  Disney, Verizon,
14   et al, the tax indemnification question.
15                The issue that I would like to explore
16   today is whether parol evidence would be useful or
17   even necessary in resolving this question.  And I
18   have a number of questions about Section 6(c) of the
19   tax indemnification agreement that I think need to be
20   addressed.
21                I think it's curious.  The creditors
22   committee says, and I'm quoting from page two of
23   their memorandum, "both sides agree that the
24   provision is clear and unambiguous."  But both sides
25   take completely opposite clear and unambiguous
```