Hearing Date: December 3, 2008 at 10:00 a. m.
Objection Deadline: November 28, 2008 at 4:00 p.m.

ROPES & GRAY LLP
One International Place
Boston, Massachusetts  02110
Telephone: 617.951.7000
Facsimile: 617.951.7050
Shuba Satyaprasad (SS-5875)
D. Ross Martin (DM-2947) (of counsel)

*Attorneys for AIB International Finance*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
In re:                                               :        Chapter 11
                                                     :
LEHMAN BROTHERS HOLDINGS, INC., *et al.*  :        Case No. 08-13555 (JMP)
                                                     :
         Debtor.                                     :        (Jointly Administered)
---------------------------------------------------------------- x

**OBJECTION OF AIB INTERNATIONAL FINANCE TO THE DEBTOR' MOTION FOR AN ORDER PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION OR REJECTION OF OPEN TRADE CONFIRMATIONS**

AIB International Finance ("AIBIF"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the Notice of Debtor's Motion for an Order Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade Confirmations [Docket No. 1541] (the "Motion"), filed by debtor Lehman Commercial Paper, Inc. ("LCPI", or the "Debtor") in the above-captioned case on November 14, 2008, to the extent that the Motion relates to a certain purported trade of bank debt with AIBIF identified as an assumed trade and certain purported trades of bank debt with ABIF identified as rejected trades on Exhibit A to the Motion, and respectfully represents and sets forth as follows:

**PRELIMINARY STATEMENT**

1. Pursuant to the Motion, the Debtor seeks to extinguish AIBIF's nonbankruptcy-law setoff rights with respect to certain Open Trade Confirmations. The Bankruptcy Code expressly contemplates that such setoff rights are enforceable in bankruptcy. Granting the relief requested in the Motion would require this Court to disregard these setoff rights pursuant to Bankruptcy Code, which are secured creditor rights.

2. With respect to AIBIF, the Motion should be denied for three reasons. First, LCPI has made its Motion against the wrong counterparty; the proper counterparty would be Tara Hill, B.V. ("Tara Hill"), which is a CDO in respect of which AIB Capital Markets PLC ("AIBCM") (an affiliate of AIBIF) is the investment manager. Second, Tara Hill terminated the trades prior to the Petition Date, and therefore the Debtor cannot assume the trades.

3. Third, in the Motion the Debtor seeks to extinguish, in one fell swoop, the basic right of Tara Hill to assert setoff. Undeniably, the Debtor seeks such relief to benefit the Debtor, though the relief is inequitable and to the direct detriment of Tara Hill. The Debtor, however, should not be permitted to eliminate Tara Hill's right of setoff when to do so would be contrary to basic principles of law and equity.

4. Very simply, the Debtor is attempting to use the provisions of the Bankruptcy Code as a sword to extinguish rights of setoff that would otherwise exist under nonbankruptcy law. The Debtor contends that, for purposes of setoff: (i) on the one hand, as a result of Bankruptcy Code sections 365(g) and 502(g), the rejection damages claims (for the Rejected Trades) are prepetition unsecured claims; and (ii) on the other hand, an assumption of a prepetition contract (for the Assumed Trades) turns a preexisting

11430173_2.DOC           2

obligation of the nondebtor to pay money into a "post-petition obligation." In other words, although Tara Hill unquestionably has a nonbankruptcy-law right of setoff, the Debtor wants instead to force counterparties to pay 100 cents on the dollar in the purchase price for the Assumed Trades, while receiving back some unspecified amount for the damages in cents on the dollar on the Rejected Trades. This destruction of nonbankruptcy-law rights is not, and cannot be, what Congress intended as the purpose and effect of the Bankruptcy Code. Indeed, the Debtor recognizes how outlandish its proposal is, because even it is forced to point out that there is directly contrary authority to their position.[1]

## BACKGROUND

1. On October 5, 2008, (the "Petition Date"), LCPI filed a petition for relief under Chapter 11, Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York. The Debtor continues to manage and operate its business as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. AIBIF has never been party to the trades with LCPI referred to in Exhibit A and Exhibit B of the Motion for debt under that certain senior facilities agreement dated 22 May 2006 (as amended pursuant to an amendment and restatement agreement dated 16 August 2006), between various lenders, and J.P. Morgan Europe Limited as agent (the "BCM Ireland Holdings Debt"). Rather, a separate entity, Tara Hill B.V. ("Tara Hill") is

---

[1] In addition to the various substantive grounds set out below, the Motion should be denied for several fundamental procedural failures. First, the Debtors have entirely failed to provide any evidence of the nature of these contracts, and whether they are executory. Instead the Debtors offer nothing more than a conclusory spreadsheet to identify contracts; when the Debtors took this sale approach with their motion to approve a sale to Barclays, there was significant confusion for counterparties, amendments by the debtors, and apparently also significant errors in the actual list. Second, the Debtors have entirely failed to provide any evidence that the cure amounts and payment for actual pecuniary losses are zero. This is certainly not true: assumed trades require cure by either delivery of a loan (if the trade is a sell) or delivery of money (if the trade is a buy). Third, there is no showing of adequate assurance of future performance. In the case of trades that are buys, there is no showing that LCPI has any cash at all. More importantly, in the case of trades that are sells by LCPI, there is no showing that LCPI already owns these loans and can therefore deliver them.

party to certain such trades. AIBCM, which is an affiliate of AIBIF, acts as investment manager for Tara Hill. Accordingly, certain officers and/or employees of AIBCM were involved in discussions and communications with LCPI regarding such trades.

3. Specifically, there is one such trade (the "<u>BCM Ireland Holdings Facility A Trade</u>") that LCPI seeks to assume. That parties documented that trade with an LMA Trade Confirmation (Par) between Tara Hill B.V. ("<u>Tara Hill</u>") and Lehman Commercial Paper Inc. ("<u>LCP</u>") signed and dated 9 September 2008 (the "<u>Facility A Trade Confirmation</u>"), subject to the Standard Terms and Conditions for Par Trade Transactions of the Loan Market Association applicable to par trade transactions in respect of which the Trade Date occurs on or after 3 September 2008 (the "<u>LMA Standard Terms</u>") relating to EUR 1,500,000 of Facility A of BCM Ireland Holdings Debt.

4. In addition, LCPI seeks to reject two transactions for other BCM Ireland Holdings Debt (the "<u>BCM Ireland Holdings Facility B/C Trade</u>"), one for each of the B Tranche and C Tranche, both of which the parties documented in the LMA Trade Confirmation (Par) between LCP and Tara Hill signed and dated 9 September 2008 (the "<u>Facility B/C Trade Confirmation</u>"), subject to the LMA Standard Terms relating to EUR 750,000 of Facility B and EUR 750,000 of Facility C in relation to BCM Ireland Holdings LTD. A copy of each of the Facility A Trade Confirmation and the Facility B/C Trade Confirmation is attached hereto as <u>Exhibit A</u>.

5. The express terms of the BCM Ireland Holdings Facility A Trade require "the parties shall endeavour to sign the Transaction Documentation and, where appropriate, provide copies to the agent bank under the Credit Agreement, within five Business Days after the Trade Date". The Transaction Documentation for the trade confirmation includes

Transfer Certificates. Tara Hill signed and delivered such a Transfer Certificate for the BCM Ireland Holdings Facility A Trade on 11 September 2008 (along with a copy of the Transfer Certificate for the BCM Ireland Holdings Facility B/C Trade, the "Transfer Certificates"). Copies of the Transfer Certificates are attached as Exhibit C hereto. However, LCPI never delivered signatures for the Transfer Certificates.

6. The BCM Ireland Holdings Facility A Trade also expressly permits termination of the trade upon a default. Tara Hill gave a default notice (the "Default Notice") to LCPI on September 22, 2008, prior the LCPI Petition Date. A true and correct copy of the September 22 Notice is attached hereto as Exhibit D.

7. Tara Hill did not receive copies of the Transfer Certificates signed by LCPI. Accordingly, the defaults were not cured within the period specified in the September 22 Notice.

8. As a result, Tara Hill gave a termination notice to LCPI (the "Termination Notice") on September 24, 2008, also prior to the LCPI Petition Date. A true and correct copy of the September 24 Notice is attached as Exhibit E hereto.

9. LCPI filed for bankruptcy on October 5, 2008. Neither Tara Hill nor AIBCM received any notice, communication, or direction from LCPI that it disputed Tara Hill's termination of the BCM Trade Confirmations until 14 November 2008 (some seven weeks after the September 24 Notice terminating the BCM Trade Confirmations) when Tara Hill received two letters (the "LCPI November 14 Letters") from LCPI, giving notice of intent to assume and reject the various trades. Copies of the November 14 Letters are attached hereto as Exhibit F.

# ARGUMENT

### A. Any Executory Contract Is with Tara Hill, and Not With AIBIF

10. The Motion seeks to assume the BCM Ireland Holdings Trades with AIBIF as counterparty. However, there are no such transactions with AIBIF. As shown by the Trade Confirmations, all dealings were with a separate unaffiliated entity, Tara Hill. AIBIF cannot be ordered to perform a trade to which it was not party outside of bankruptcy. The proper counterparty with which the Debtor should seek to assume the bank loan trade is Tara Hill.

### B. The Trades Were Terminated Prior to LCPI's Filing for Bankruptcy

11. LCPI cannot now assume and enforce these bank loan trades (whether with AIBIF or with Tara Hill) because Tara Hill terminated the trades prior to the Petition Date for LCPI. It is well established that a contract that is terminated prior to the petition date cannot be assumed. *E.g., In re 2903 Wines & Spirits, Inc.*, 45 B.R. 1003 (S.D.N.Y. 1984).

12. Tara Hill effected this termination in accordance with the express terms of the documents, following LCPI's clear default. LCPI defaulted when it did not provide a signed Transfer Certificate within the 5 business days contemplated by the BCM Ireland Holdings Facility A Confirmation. That confirmation expressly incorporates the Standard Terms and Conditions of the Loan Marketing Association, and Condition 6(b) of those Terms and Conditions provides:

> the parties shall endeavour to sign the Transaction Documentation and, where appropriate, provide copies to the agent bank under the Credit Agreement, within five Business Days after the Trade Date.

*See LMA Standard Terms* Condition 6(b) (Exhibit B hereto). The term "Transaction Documentation" means "the documentation required to implement the transaction (including the agreed Form of Purchase)." LMA Standard Terms at p.2. This includes the

trade confirmation and Transfer Certificates, which are the instruments of transfer required to make Tara Hill a lender under the BCM Ireland Holdings Debt. Although Tara Hill delivered signed Transfer Certificates within the prescribed five business days, LCPI did not do so.

13. LCPI's failure to deliver signed Transfer Certificates, and failure to comply with Condition 6(b), caused a default. Condition 19.1(a) of the LMA Standard Terms provides for the giving of notice upon a default:

> if either party defaults in the performance of its obligations to the other under any Transaction Document, the non-defaulting party shall be entitled to give notice to the defaulting party for such a period as the non-defaulting party may specify.

Tara Hill delivered such a default notice on September 22, 2008, giving LCPI two business days to cure.

14. Finally, if the default is not cured within the time period that the counterparty specifies, the LMA Standard Terms give the counterparty the right to terminate the trade. Condition 19(b) of the LMA Standard Terms provides:

> If the default is not remedied within the period specified in the notice referred to in paragraph (a) above, or such further period or periods as the non-defaulting party may agree, the non-defaulting party may, by written notice to the defaulting party, terminate the transaction immediately.

LCPI did not cure within the two business days set forth in Tara Hill's Default Notice. Tara Hill then sent, on September 24, 2008, a termination notice, attached as <u>Exhibit E</u>.

5.     Tara Hill properly terminated the BCM Ireland Holdings Facility A Trade well before LCPI filed for bankruptcy. LCPI cannot assume the contract.

**C.     Tara Hill Has a Right to Setoff That Cannot Be Extinguished**

11430173_2.DOC                                    7

6. Even if there is a contract that LCPI can assume (which there is not), the Debtor's Motion improperly seeks to destroy preexisting setoff rights. If LCPI asserts that the BCM Ireland Holdings Facility A Trade was not terminated, then LCPI cannot assert that the BCM Ireland Holdings Facility B/C Trade was terminated, and LCPI must reject that trade. In that case, Tara Hill would have setoff rights arising from the rejection damages claim.

7. Bankruptcy Code Section 553 expressly preserves preexisting nonbankruptcy-law rights of setoff, subject only to certain exceptions not relevant here, stating that:

> **Except as otherwise provided in this section and in Sections 362 and 363 of this title, this title** does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case.

11 U.S.C. § 553(a) [emphasis added]; *see Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) ("[a]lthough no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy."). As noted by one court,

> [I]f rights of setoff were not preserved in bankruptcy, creditors might be more inclined to exercise a right of setoff under applicable nonbankruptcy law at an earlier stage, rather than risk losing the right altogether in a subsequent bankruptcy proceeding. By recognizing and protecting the right, the Bankruptcy Code removes an incentive that might otherwise lead a creditor to take precipitous action.

*In re Bourne*, 262 B.R. 745, 757 (Bankr. E.D. Tenn. 2001) (quoting 5 Collier on Bankruptcy ¶ 553.02[2] (15th ed. rev. 2000)).

8. The plain language at the start of section 553 only sets forth two sections under the Bankruptcy Code which are exceptions to the preservation of setoff rights, namely, 362 and 363. No mention is made of section 365, and thus it is clear that Congress did not intend the result sought in the Debtor's Motion, namely, that section 365 can be used to destroy valid setoff rights. Here, the Debtor has moved the Court for a purely legal determination that setoff is eliminated through the Debtor's 365 election, without <u>any</u> review of the underlying contracts or any inquiry as to whether other agreements exist among the respective counterparties. Given the plain meaning and clear limiting language in section 553, we submit that for the Court to include such a determination as a matter of law would be clear error.[2]

9. In practice, in order to determine a creditor's right to setoff, courts look to applicable nonbankruptcy law and to the parties' agreement. *See In re Garden Ridge Corp.*, 338 B.R. 627 (Bankr. D. Del. 2006) ("Although no federal right of setoff is created by the Bankruptcy Code . . . the threshhold question in every case involving an asserted right of setoff is the source and validity of the underlying right" (internal citation omitted)); *see also In re Delta Airlines, Inc.*, 341 B.R. 439 (Bankr. S.D.N.Y. 2006) (citing numerous cases reflecting the preservation of nonbankruptcy rights of setoff under the Bankruptcy Code).

10. English law governs the BCM Ireland Holdings Trade Confirmation. English Law recognizes both a common law and statutory right to setoff. *See, e.g., Bim Kemi AB v Blackburn Chemicals Lts* [2001] EWCA Civ 457; Rule 4.90 of the Insolvency Rules of 1986.

---

[2] We would also note that the limitation of 553 by 363, rather than by 365, makes for a more sensible reading of the statute, as section 363 contains protections for secured creditors' rights, such as limitations on when assets can be conveyed "free and clear" of liens or encumbrances, and requirements to provide adequate protection, which the Debtor is seeking to avoid by invoking section 365 of the Bankruptcy Code.

11430173_2.DOC        9

11. The preservation of setoff rights provided by section 553 of the Bankruptcy Code is reinforced by section 506(a) of the Bankruptcy Code, which provides that a claim of a creditor "that is subject to setoff under section 553 . . . is a secured claim . . . to the extent of the amount subject to setoff." 11 U.S.C. § 506(a). Further, pursuant to section 363(e) of the Bankruptcy Code, upon the request of a secured creditor, a debtor may not use property in which such creditor has an interest unless the debtor provides the secured creditor with adequate protection of such interest. 11 U.S.C. § 363(e).

12. Directly contrary to these provisions of the Bankruptcy Code, the Debtor seeks to eviscerate Tara Hill's nonbankruptcy-law setoff rights by relying on sections of the Bankruptcy Code that are unrelated to setoff. Specifically, the Debtor argues that (i) pursuant to sections 502(g) and 365(g) of the Bankruptcy Code, neither of which relates to setoff, rejection damages claims arising from the Rejected Trades are prepetition claims and (ii) section 365(b), which also does not relate to setoff and typically serves to require <u>the debtor</u> to make 100-cent, post-petition payment of claims on assumed contracts, render the entire assumed contract, including the obligations of the nondebtor party (here, Tara Hill), a post-petition obligation.

13. The Debtor is trying to have it both ways. LCPI argues that an executory contract expressly kept alive into the post-petition period can have some claims (rejection claims) come into being prepetition while other claims (counterparty obligations) come into being postpetition. In its Motion, even the Debtor is forced to acknowledge that there is directly contrary authority in the Southern District of New York, and perhaps a split of authority. *Compare In re Delta Air Lines, Inc.*, 341 B.R. 439 (Bankr. S.D.N.Y. 2006) *with In re Genuity, Inc.*, 323 B.R. 79 (Bankr. S.D.N.Y. 2005). Based on the text of the statute, and in keeping with the purposes of sections 553 and 506(a) of the Bankruptcy Code to

preserve existing nonbankruptcy-law setoff rights by giving secured status to setoff claims, the Debtor cannot have it both ways, and the Debtor's arguments cannot reasonably coexist.  Either (i) both sides of the trade confirmations are prepetition obligations, thereby allowing setoff, or (ii) the obligations for setoff purposes of both sides of those trade confirmations is determined at the time of assumption/rejection, in which case both sides are liabilities that arise post-petition, thereby also allowing setoff.  Most importantly, neither approach destroys Tara Hill's right to setoff and, therefore, the relief sought in the Motion must be denied.

**(1)     The Obligations Under the Trade Confirmations with Tara Hill Are All Prepetition Obligations Subject to Setoff Under Bankruptcy Code Section 553**

14.     Tara Hill has setoff rights pursuant to nonbankruptcy law that are clearly protected by sections 553 and 506(a) of the Bankruptcy Code.  As of the Petition Date, LCPI and Tara Hill were parties to bank loan trades under which both parties had mutual executory obligations and liabilities.  The plain text, natural reading of section 553 provides that the "debt" (*i.e.* "liability on a claim") of Tara Hill to LCPI already had arisen prepetition, and similarly each Objecting Counterparty had liability to LCPI in the prepetition period.

15.     The Supreme Court has repeatedly stated that underlying rights in bankruptcy are determined by nonbankruptcy law.  *E.g., Butner v. United States,* 440 U.S. 48, 99 S. Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law" . . . "[p]roperty interests are created and defined by state law.  Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").

As set forth above, Tara Hill has a setoff right pursuant to English law. Nevertheless, the Debtor argues that, because the decision to assume the Assumed Trades was made post-petition, any obligations of Tara Hill to the Debtor with respect to the Assumed Trades (i.e. "debts", in the language of section 553 of the Bankruptcy Code) arose post-petition.

16.  Courts have addressed this precise issue in a line of cases involving farm reorganizations, which also prominently feature executory contracts for the purchase and sale of goods that are traded on a market (like the bank loans in this case) and for which there may be contracts running both ways between counterparties. The view that has emerged from this significant line of cases is that, for setoff purposes, obligations arising under a prepetition contract remain prepetition obligations, regardless of whether such obligations are contingent or unliquidated. *See In re Affiliated Food Stores, Inc.*, 123 B.R. 747, 748 (Bank. N.D. Tex. 1991) ("[t]he fact that a debt owed to [d]ebtor is subject to conditions precedent or subsequent, appears to not transform a prepetition obligation into a post-petition obligation"); *see also Sherman v. First City Bank of Dallas*, 99 B.R. 333, 338 (N.D. Tex. 1989), *aff'd,* 893 F.2d 720 (5th Cir. 1990) ("[t]he character of a claim is not transformed from prepetition to post-petition because it is contingent, unliquidated, or unmatured when the [d]ebtor's motion is filed."); *In re Parrish*, 75 B.R. 14, 16 (N.D. Tex. 1987); *In re Lundell Farms*, 86 B.R. 582, 585 (Bankr. W.D. Wisc. 1988); *Moratzka v. United States Agricultural Stabilization and Conservation Service (In re Matthieson)*, 63 B.R. 56 (D. Minn. 1986) (stating that a creditor's "right to setoff may be asserted in a bankruptcy case even though at the time the petition is filed, [the debt] is absolutely owing but not presently due, or where a definite liability has accrued but is as yet unliquidated"); *Agricultural Stabilization and Conservation Service v. Gerth*, 991 F. 2d 1428, 1432 (8th Cir. 1993) (finding that mere assumption of an executory contract does not alter when the

obligations arose, following the Matthieson decision); *see generally In re Allen*, 135 B.R. 856 (Bankr. D. Iowa 1992) (discussing at length the split in the courts, and adopting the majority view that executory contracts entered into prepetition result in prepetition, mutual obligations subject to setoff).[3]

17. Finally, the Debtors' view that (as a matter of law) assumption under Section 365 may destroy setoff, thereby improving the value of the contracts being assumed, is wholly inconsistent with longstanding bankruptcy law that contracts are assumed <u>cum onere</u>, with the attendant burdens that existed on the petition date. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) (overruled on other grounds by Bankruptcy Code Section 1113). Basic rights of setoff and counterclaim against the Debtors' contract rights (explicitly protected by Section 506(a) of the Bankruptcy Code), are among the burdens upon the contracts for which assumption is sought.

18. Accordingly, the Debtor's assumption of the Assumed Trades does not transform Tara Hill's prepetition obligations with respect to such trades into post-petition obligations payable in full to the Debtor. As this court has stated: "[f]or purposes of setoff, a debt arises when all transactions necessary for liability have occurred, regardless of whether the claim was contingent when the petition was filed." *In re Bousa, Inc.*, 2006 WL 2864964 * 3 (Bankr. S.D.N.Y., Sept. 29, 2008) (Peck, B.J.). In other words, debt that is contingent at the commencement of the case and becomes] fixed post-petition, is nevertheless "properly characterized as pre-petition debt." *Id.* As the Debtor concedes in the Motion, the trade confirmations with Tara Hill were entered into prepetition and "represented a binding agreement to purchase or sell positions in par or distressed loans,

---

[3] The minority line of cases traces back to *In re Walat Farms, Inc.*, 69 B.R. 529 (Bankr. E.D. Mich. 1987) (finding that executory contracts were not binding on debtor until assumed post-petition and, therefore, contracts were post-petition contracts).

participations in par or distressed loans, or claims against third parties at an agreed upon price." Motion, ¶8. Despite this concession, the Debtor asks the Court to recharacterize just half of these obligations (those for the Assumed Trades only) for the sole purposes of defeating Tara Hill's right of setoff. Following the reasoning of the line of cases discussed above, however, the Debtor and Tara Hill have mutual prepetition obligations arising from the Assumed Trades and the Rejected Trades, and Tara Hill therefore has a right of setoff that may not be eradicated by the Debtor.

**(2)  Alternatively, the Obligations Under the Open Trades Are All Post-petition Obligations Subject to Setoff**

19. Alternatively, if the obligations arising under the rejection of the Rejected Trades and assumption of the Assumed Trades are not prepetition obligations, they must be, in line with the *Delta Airlines* case, post-petition obligations that are subject to setoff.

20. The Debtor's core argument is that following assumption of the Assumed Trades, the obligations of Tara Hill are post-petition obligations. However, this argument runs headlong into a major problem in that another court in this District has already concluded that, under the plain language of the Bankruptcy Code, a rejection damages claim "arises" post-petition, even though it is "allowed" as a prepetition claim. *See In re Delta Airlines, Inc.*, 341 B.R. 439 (Bankr. S.D.N.Y. 2006).

21. The *Delta Airlines* Court concluded that, while a claim for rejection damages arising from the debtor's rejection of its airport lease should be treated as if it arose prepetition, such treatment did not mean that the rejection damages claim was a prepetition claim that the creditor could set off against its prepetition obligation to the debtor. *Id.* at 449. The *Delta Airlines* Court based its decision on the literal and precise language of Bankruptcy Code sections 502(g) and 553, noting that a rejection damage claim is not "a claim . . . against the debtor that arose before the commencement of the

11430173_2.DOC                                14

case" as a matter of state law. *Id.* at 446. Rather, the court found that, for purposes of setoff, "the claim did not exist prepetition, either as an actual claim or as a contingent claim, any more than the possibility of some future breach of contract claim can be said to 'arise' or exist before the actual breach." *Id.* Similarly, Tara Hill's rejection damages claims with respect to the Rejected Trades did not exist prepetition and did not arise until the rejection of the Rejected Trades by the Debtor. Therefore, following the reasoning of the *Delta Airlines* Court, Tara Hill's rejection damages, for purposes of setoff, cannot be considered prepetition obligations.

22.   The language of Bankruptcy Code section 502(g), so heavily relied on by the Debtor, does not aid the Debtor's argument. Rather, Bankruptcy Code section 502(g) provides:

> A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b) or (c) of this section or disallowed under subsection (d) or (e) of this section, <u>the same as if such claim had arisen before the date of the filing of the petition</u>

11 U.S.C. § 502(g)(1). If the Debtor is correct that, for setoff purposes, obligations "arise" at the time of the post-petition decision to assume, then section 502(g), and the reasoning of *Delta Airlines*, is definitive: a rejection damages claim does not arise prepetition; rather it is treated <u>as if</u> it had arisen prepetition. Therefore, rejection damages claims resulting from the Rejected Trades arose post-petition, as did any obligations related to the Assumed Trades.

23.   As the Debtor's Motion points out, the *Delta Airlines* decision has been widely criticized. However, the single case that the Debtor cites in support of their position is *In re Genuity, Inc.*, 323 B.R. 79 (Bankr. S.D.N.Y. 2005). An examination of

the reasoning underlying the *Genuity* decision reveals that the Debtor's reliance on this decision is misplaced, and demonstrates that courts in this District will not use a debtor's assumption or rejection decision to destroy a creditor's preexisting setoff rights.

24. In *Genuity*, the debtor owed cure payments on certain assumed contracts with creditors that also held prepetition deposits from the debtor. Rather than making cash cure payments and allowing creditors to apply their prepetition deposits to prepetition unsecured claims that would otherwise receive only cents-on-the-dollar, the debtor attempted to apply the creditors' prepetition deposits to reduce the cure amounts. The *Genuity* court found that the debtor could not make a unilateral post-petition decision to destroy the creditors' prepetition deposit protections. Despite the debtor's reliance on the decision, the *Genuity* court ultimately protected the preexisting secured creditors from the precise inequitable conduct that the Debtor here is asking the Court to authorize in Motion – *i.e.*, the use the assumption/rejection process to destroy prepetition setoff rights – and therefore does <u>not</u> support the Debtor's position.

25. As the Debtor's Motion recognizes, the rationale of the *Genuity* decision runs directly counter to the rationale of the *Delta Airlines* decision. Indeed, in both cases the discussion regarding prepetition and postpetition claims being setoff is not necessarily the sole basis for decision. Both cases have an alternative holding that the contracts in question did not permit the setoff that was proposed and therefore there was not a debt owing. *Delta Airlines*, 341 B.R. at 450 (contract permitted application of the airport credits only prospectively and during what turned out to be the postpetition period); *Genuity*, 323 B.R. at 84 (tariffs and contractual arrangements provided that creditors only had a debt to pay back the deposits after the creditor was otherwise paid in full). Faced with conflicting rationales from other courts in this District, this Court should rely on the

plain text and fundamental purposes of protections for setoff provided in sections 553 and 506(a) of the Bankruptcy Code.

26. As discussed, courts that have reviewed the issue of setoff of claims under executory contracts have reasoned that, because the obligations under executory contracts are all prepetition obligations, setoff is permissible. However, even if the Court adopts the Debtor's view that obligations under the Assumed Trades arose post-petition, the logic underlying such view mandates the corresponding conclusion that rejection damages claims related to the Rejected Trades also arose post-petition for purposes of section 553. The Debtor is trying to have it both ways and thereby destroy preexisting nonbankruptcy-law rights. The Court must reject that approach.

**(3)    Tara Hill's Right of Setoff Is a Secured Claim Entitled to Adequate Protection That May Not Be Extinguished**

27. As set forth above, the obligations arising under the Assumed and Rejected Trades are either all prepetition obligations or all post-petition obligations, which are subject to setoff by Tara Hill. Therefore, pursuant to section 506(a) of the Bankruptcy Code, which provides that a claim subject to setoff under section 553 of the Bankruptcy Code is a "secured claim to the extent of the amount subject to setoff," Tara Hill has a secured claim against the Debtor that the Debtor may not eliminate or otherwise alter without Tara Hill's express consent. Further, in order for the Debtor to sell the bank loans (*i.e.*, property in which Tara Hill has a security interest), the Debtor is required by section 363(e) of the Bankruptcy Code to provide Tara Hill with adequate protection of such interest.

28. Further, section 542(b) reiterates that this setoff right is not eliminated even if the Debtors establish a right to collect payment under the Assumed Trades. "...[A]n entity that owes a debt that is property of the estate and that is matured, payable on

demand, or payable on order, shall pay such debt to, or on the order of, the trustee, <u>except to the extent that such debt may be offset under section 553 if this title against a claim against the debtor</u>." 11 U.S.C. § 542(b) [emphasis added].

## MEMORANDUM OF LAW

Authority for the relief requested by AIBIF is set forth herein, therefore AIBIF respectfully requests that this Court waive the requirement in Rule 9013-1(b) of the Local Bankuptcy Rules for the Southern District of New York that AIBIF submit a separate memorandum of law.

## NOTICE

No trustee or examiner has been appointed in these cases.  Notice of this Objection has been provided to: (i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel to the Debtor; (iii) counsel to the Creditors' Committee; and (iv) and all parties having requested notice in these cases pursuant to Fed. R. Bankr. P. 2002. In light of the nature of the relief requested herein, AIBIF submits that no other or further notice is required.

## NO PRIOR RELIEF

The relief requested by AIBIF in this Objection has not been sought previously in this or any other court.

WHEREFORE, AIBIF respectfully requests that this Court deny the Debtor's Motion for an Order Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade Confirmations as to the BCM Ireland Holdings Trades purportedly with AIBIF.

Dated: November 28, 2008
       New York, New York

11430173_2.DOC                                   18

ROPES & GRAY LLP

By: */s/ Shuba Satyaprasad*
Shuba Satyaprasad (SS-5875
D. Ross Martin (DM-2947) (of counsel)
One International Place
Boston, Massachusetts 02110
Telephone:    617-951-7000
Facsimile:    617-951-7050

Attorneys for AIB International Finance