**Hearing Date and Time: December 3, 2008, 10:00 a.m**

ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York  10036
Telephone: 912.596.9000
Facsimile:  212.596.9090
Keith H. Wofford (KW-2225)
Nila W. Williams (NW-5969)

One International Place
Boston, Massachusetts  02110
Telephone: 617.951.7000
Facsimile: 617.951.7050
Shuba Satyaprasad (SS-5875)
D. Ross Martin (DM-2947)

Attorneys for R3 Capital Management, LLC

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.* | Case No. 08-13555 (JMP) |
| Debtors. | Jointly Administered |

**OBJECTION OF R3 CAPITAL MANAGEMENT, LLC
TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO
SECTION 365 OF THE BANKRUPTCY CODE APPROVING THE
<u>ASSUMPTION OR REJECTION OF OPEN TRADE CONFIRMATIONS</u>**

R3 Capital Management, LLC and its affiliates (collectively, "<u>R3</u>"), by and through their undersigned counsel, submit this objection (the "<u>Objection</u>") to the Debtors' Motion for an Order Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade Confirmations (the "<u>Motion</u>")[1] [Docket No. 1541].  In support of the Objection, R3 respectfully represents as follows:

---

[1] Capitalized terms used by not otherwise defined herein shall have the meanings ascribed to them in the Motion.

3735646_2.DOC

**PRELIMINARY STATEMENT**

1. Section 553 of the Bankruptcy Code expressly preserves a creditor's pre-petition state law setoff rights in bankruptcy, subject only to certain limited exceptions which are not relevant here. Pursuant to the Motion, the Debtors seek to extinguish R3's state law setoff rights with respect to certain Open Trade Confirmations based on the Debtors' flawed argument that, for the purposes of setoff, the assumption of an executory contract transforms a pre-petition claim into a post-petition obligation. Granting the relief requested in the Motion would require this Court to disregard R3's valid setoff rights. Consequently, the relief sought in the Motion should be denied.

2. Despite the plain language of Sections 553 and 506 of the Bankruptcy Code, the Debtors claim the right to use Section 365 to destroy (at the Debtors' election) the mutuality that establishes R3's setoff rights. The Debtors contend that (i) rejection damages claims arising from the Rejected Trades are pre-petition unsecured claims, while (ii) for purposes of setoff, the Debtor's assumption of the Assumed Trades renders R3's obligations with respect to such trades post-petition obligations. In fact, the correct reading of the Bankruptcy Code is that the obligations of the Debtors and the obligations of R3 are <u>both</u> pre-petition obligations, leaving R3 as a secured creditor by virtue of its setoff rights.

3. However, if the Court accepts the Debtors' view that the election to assume not only adds administrative claim protections to the pre-petition agreement but also destroys the pre-petition character of those agreements, then the Court should adopt the corollary view – namely, that rejection under Section 365, which is also a post-petition election by the Debtors, makes those rejected contracts post-petition agreements for setoff purposes. This result would also permit the Rejected Trades to be setoff against the Assumed Trades.

4.      Finally, R3 is a party to multiple post-petition agreements with the Debtors (including Lehman Commercial Paper Inc.). If the Court rules that the Assumed Trades are post-petition contracts not subject to offset by pre-petition agreements, the Court should make clear that R3 will be permitted to assert rights of offset against the Assumed Trades based upon R3's other post-petition agreements with the Debtors. Under the Debtors' own theory that the obligations relating to the Assumed Trades are post-petition obligations, R3's other post-petition agreements with the Debtors supply the requisite mutuality to permit setoff.

## BACKGROUND

5.      On October 5, 2008, Lehman Commercial Paper, Inc. ("LCPI," and together with its affiliated debtors and debtors-in-possession, the "Debtors"), commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On November 14, 2008, the Debtors filed the Motion seeking authorization pursuant to Section 365(a) of the Bankruptcy Code to assume, reject, or modify and assume certain Open Trade Confirmations. In addition, the Motion seeks entry of an order finding that:

> (i) the Debtors are not required to pay cure costs with respect to the Assumed Trades or the Amended Trades and have provided the Counterparties to such trades with adequate assurance of future performance, and

> (ii) no Counterparty is entitled to assert or exercise a right to set off any pre-petition claim against the Debtors, including without limitation damages claims arising from any Rejected Trades, against

    any obligation to the Debtors with respect to any Assumed Trades or Amended Trades.

  7.  R3 is a Counterparty to certain Open Trade Confirmations that are the subject of the Motion. Specifically, by the Motion, the Debtors seek to assume, reject, or amend and assume the following Open Trade Confirmations with R3 (collectively, the "R3 Trades").

**Assumed R3 Trades**

| Debtor | Deal Name | Trade Date |
|---|---|---|
| LCPI | Wimar Opco (Tropicana Entertainment) | 8/8/2008 |

**Rejected R3 Trades**

| Debtor | Deal Name | Trade Date |
|---|---|---|
| LCPI | Quebecor World[2] | 5/28/2008 |
| LCPI | Wimar Opco (Tropicana Entertainment) | 7/22/2008 |
| LCPI | Wimar Opco (Tropicana Entertainment) | 8/22/2008 |
| LCPIUK | ProSieben (26Jun07) Opco | 9/4/2008 |

**Amended and Assumed R3 Trades**

| Debtor | Deal Name | Trade Date |
|---|---|---|
| LCPI | Wimar Opco (Tropicana Entertainment) | 7/10/2008 |
| LCPI | Wimar Opco (Tropicana Entertainment) | 8/28/2008 |

  8.  In addition, R3 and the Debtors are parties to several post-petition agreements concerning the redemption of the Debtors' interests in certain R3 funds and the continuance of a portion of the Debtors' passive minority interest in certain R3 affiliates, as authorized by this Court by Order dated October 16, 2008. [Docket No. 1086]

---

[2] Any Order granting the Motion should make clear that such Order relates solely to the open trades with LCPI referenced on the relevant Exhibits to the Motion and <u>not</u> to the various participation agreements of Quebecor loans between Lehman Brothers Holdings, Inc. and R3 of the same date.

3735646_2.DOC    4

**OBJECTION**

A.  **R3 Has a Right to Setoff That Cannot Be Extinguished**

9.  Section 553 of the Bankruptcy Code expressly preserves pre-petition rights of setoff, subject only to certain exceptions not relevant here. Section 553 provides, in pertinent part:

> **Except as otherwise provided in this section and in Sections 362 and 363 of this title, <u>this title</u>** does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case.

11 U.S.C. § 553(a) [emphasis added]. *See also Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) ("[a]lthough no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy.").

10. The plain language at the start of section 553 sets forth only two sections under the Bankruptcy Code which are exceptions to the preservation of setoff rights – Sections 362 and 363. Section 553 makes no mention of Section 365. Thus, it is clear that Congress did not intend the result sought in the Debtors' Motion, namely, that Section 365 can be used to destroy valid setoff rights. Here, the Debtors have moved the Court for a purely legal determination that setoff is eliminated through the Debtors' Section 365 election, without <u>any</u> review of the underlying contracts or any inquiry as to whether other agreements exist among the respective counterparties.[3] Given the plain meaning and clear limiting language in Section 553, we submit that for the Court to include such a determination as a matter of law would be clear error.[4]

---

[3] On a related note, the Debtors have asked the Court to determine that they do not owe cure amounts and that they have provided adequate assurance of future performance with respect to the Assumed Trades. However, it is not

11. In order to determine a creditor's right to setoff, courts look to applicable nonbankruptcy law and to the parties' agreement. *See In re Westchester Structures, Inc.*, 181 B.R. 730, 740 (Bankr. S.D.N.Y. 1995). New York law, which governs here, recognizes both a common law and statutory right to setoff. *Straus v. Tradesman's Nat'l Bank*, 122 N.Y. 379 (1890); N.Y. Debtor & Creditor Law § 151 (McKinney 1997) (codification of common law right of setoff). Pursuant to New York law, even debts that are unmatured, such as those between the Debtors and R3 resulting from the Open Trade Confirmations, are subject to setoff. N.Y. Debtor & Creditor Law § 151 (McKinney 1997).

12. The preservation of setoff rights provided by Section 553 of the Bankruptcy Code is reinforced by Section 506(a) of the Bankruptcy Code, which provides that a claim of a creditor "that is subject to setoff under Section 553 . . . is a secured claim . . . to the extent of the amount subject to setoff." 11 U.S.C. § 506(a). Further, pursuant to Section 363(e) of the Bankruptcy Code, upon the request of a secured creditor, a debtor may not use property in which such creditor has an interest unless the debtor provides the secured creditor with adequate protection of such interest. 11 U.S.C. § 363(e).

13. Despite these express protections of setoff rights, the Debtors argue that, while certain claims related to an executory contract (*i.e.*, rejection damages claims) arise pre-petition, other executory contract claims (*i.e.*, counterparty obligations) arise post-petition. Specifically, the Debtors argue that (i) pursuant to Sections 502(g) and 365(g) of the Bankruptcy Code (neither of which relates to setoff) rejection damages claims arising from the Rejected Trades are

---

only improper, but impossible, for the Court to make such a determination when the Debtors have provided no facts or evidence with respect to the individual contracts that are the subject of the Motion.

[4] R3 also notes that the limitation of Section 553 by Section 363, rather than by Section 365, makes for a more sensible reading of the Bankruptcy Code, as Section 363 contains protections for secured creditors' rights, such as limitations on when assets can be conveyed "free and clear" of liens or encumbrances, and requirements to provide adequate protection, which the Debtors are seeking to avoid by invoking Section 365 of the Bankruptcy Code.

pre-petition claims and (ii) Section 365(b) (which also does not relate to setoff and is intended to protect creditors by requiring <u>the debtor</u> to make 100-cent, post-petition payment of claims on assumed contracts) renders the entire assumed contract, including the obligations of the nondebtor party, a post-petition obligation.

14. As set forth below, the Debtors' arguments cannot reasonably coexist – either (i) both sides of the Open Trade Confirmations are pre-petition obligations, thereby allowing setoff, or (ii) the status for setoff purposes of both sides of the Open Trade Confirmations is determined at the time of assumption/rejection, in which case both sides are liabilities that arise post-petition, thereby also allowing setoff. Most importantly, neither approach destroys R3's right to setoff and therefore the relief sought in the Motion must be denied.

**1. The Obligations Under the Open Trade Confirmations Are Pre-Petition Obligations Subject to Setoff Under Section 553 of the Bankruptcy Code**

15. R3 has setoff rights pursuant to New York state law that are clearly protected by Sections 553 and 506(a) of the Bankruptcy Code. As of the Commencement Date, LCPI and R3 were parties to bank loan trades under which both parties had mutual executory obligations and liabilities.[5] The Bankruptcy Code defines "debt" as "liability on a claim," and defines a "claim" very broadly, including disputed, unmatured, contingent and unliquidated obligations of the debtors, as "claims." 11 U.S.C. §§ 101(5), (12). The plain text, natural reading of Section 553 provides that the "debt" (*i.e.* "liability on a claim") of R3 to LCPI already had arisen pre-petition, as had the "debt" of LCPI to R3. As your Honor has explained, "[f]or purposes of setoff, a debt arises when all transactions necessary for liability have occurred, regardless of whether the claim was contingent when the petition was filed. *In re Bousa, Inc.*, 2006 WL 2864964 * 3 (Bankr.

---

[5] For the purposes of the Objection, R3 is adopting the Debtors' assumption that the Open Trade Confirmations are executory contracts. R3 notes, however, that the Court has made no determination regarding the executoriness of any of the Open Trade Confirmations, nor have the Debtors provided the Court with a record upon which to do so. R3 further objects to the Motion on this basis.

S.D.N.Y., Sept. 29, 2008). In other words, debt that is contingent at the commencement of the case and becomes fixed post-petition is nevertheless "properly characterized as pre-petition debt." *Id*.

16. The Supreme Court has repeatedly stated that the underlying rights in bankruptcy are determined by state law. *Butner v. United States,* 440 U.S. 48 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law" . . . "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). As set forth above, R3 has a setoff right pursuant to New York state law. N.Y. Debtor & Creditor Law § 151 (McKinney 1997) (permitting setoff of debts, even if unmatured, and even after a bankruptcy filing).

17. Courts have addressed this precise issue in a line of cases concerning executory contracts for the purchase and sale of goods. These cases hold that obligations arising under a pre-petition contract remain pre-petition obligations, regardless of whether such obligations are contingent or unliquidated. *See In re Affiliated Food Stores, Inc.*, 123 B.R. 747, 748 (Bank. N.D. Tex. 1991) ("[t]he fact that a debt owed to [d]ebtor is subject to conditions precedent or subsequent, appears to not transform a pre-petition obligation into a post-petition obligation"); *Sherman v. First City Bank of Dallas*, 99 B.R. 333, 338 (N.D. Tex. 1989), *aff'd,* 893 F.2d 720 (5th Cir. 1990) ("[t]he character of a claim is not transformed from pre-petition to post-petition because it is contingent, unliquidated, or unmatured when the [d]ebtor's motion is filed."); *In re Parrish*, 75 B.R. 14, 16 (N.D. Tex. 1987); *In re Lundell Farms*, 86 B.R. 582, 585 (Bankr. W.D. Wisc. 1988); *Moratzka v. United States Agricultural Stabilization and Conservation Service (In*

*re Matthieson)*, 63 B.R. 56 (D. Minn. 1986) (stating that a creditor's "right to setoff may be asserted in a bankruptcy case even though at the time the petition is filed, [the debt] is absolutely owing but not presently due, or where a definite liability has accrued but is as yet unliquidated"). *See generally In re Allen*, 135 B.R. 856 (Bankr. D. Iowa 1992) (discussing at length the split in the courts, and adopting the majority view that setoff is permitted).[6]

18. Finally, the Debtors view, that as a matter of law, assumption under Section 365 may destroy valid setoff rights, thereby improving the value of the contracts being assumed, is wholly inconsistent with longstanding bankruptcy law that a debtor must assume contracts *cum onere*, with the attendant burdens that existed on the petition date. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) (overruled on other grounds by 11 U.S.C. § 1113). Basic rights of setoff and counterclaim against the Debtors' contract rights (explicitly protected by Section 506(a) of the Bankruptcy Code) are among the burdens upon the contracts (*i.e.*, the Assumed Trades) that the Debtors seek to assume.

19. Thus, the Debtors' assumption of the Assumed Trades does not transform R3's pre-petition obligations with respect to such trades into post-petition obligations payable in full to the Debtors. As the Debtors concede in the Motion, the Open Trade Confirmations were entered into pre-petition and "represented a binding agreement to purchase or sell positions in par or distressed loans, participations in par or distressed loans, or claims against third parties at an agreed upon price." Motion, ¶8. Despite this concession, the Debtors ask the Court to recharacterize these obligations for the sole purpose of defeating R3's right of setoff. Following the majority view, however, the Debtors and R3 have mutual pre-petition obligations arising

---

[6] The minority line of cases traces back to *In re Walat Farms, Inc.*, 69 B.R. 529 (Bankr. E.D. Mich. 1987) (finding that executory contracts were not binding on debtor until assumed post-petition and, therefore, contracts were post-petition contracts).

3735646_2.DOC 9

from the Assumed Trades and the Rejected Trades, and R3 therefore has a right of setoff that may not be eradicated by the Debtors.

**2.      Even if the Obligations Under the Open Trade Confirmations Are Post-Petition Obligations, Setoff Is Permissible**

20.     As noted above, R3 believes the correct view is that claims relating to the Assumed Trades and the Rejected Trades are pre-petition claims for setoff purposes under the Bankruptcy Code.  However, if this Court concludes that, for setoff purposes, obligations "arise" at the time of the post-petition decision to assume (effectively adopting the reasoning of *Delta Air Lines*), then this Court should conclude that a rejection damages claim likewise does not arise pre-petition; rather that claim is merely treated "<u>as if</u>" it had arisen pre-petition for claims purposes but that is has arisen post-petition for setoff purposes.  *See In re Delta Air Lines, Inc.*, 341 B.R. 439 (Bankr. S.D.N.Y. 2006).

21.     The Debtors cite *In re Genuity, Inc.*, 323 B.R. 79 (Bankr. S.D.N.Y. 2005), in support of their position as a counterpoint to the *Delta Air Lines* decision.  However, an examination of the Court's action in the *Genuity* decision demonstrates the Court's reluctance to allow debtors to use the assumption/rejection decision to destroy a creditor's preexising setoff rights.  In *Genuity*, the debtors owed cure payments on certain assumed contracts with creditors; those creditors also held pre-petition deposits from the debtors and had other unsecured claims eligible for setoff against the deposits.  The debtors attempted to force the creditors to apply the creditors' pre-petition deposits to reduce the cure amounts rather than to satisfy the creditors' other pre-petition claims.  The *Genuity* court found that the debtor could not destroy the creditors pre-petition deposit protections, which were secured creditor rights, in this manner.  Thus, the *Genuity* court ultimately protected the preexisting secured creditors from the precise conduct that

the Debtors are asking the Court to authorize in Motion – *i.e.*, the use of the assumption/rejection process to destroy pre-petition setoff rights.

22.     As discussed, R3 believes the proper view regarding the setoff of claims under executory contracts is that, because the obligations under executory contracts are all pre-petition obligations, setoff is permissible. However, if the Court adopts the Debtors' view that obligations under the Assumed Trades arose post-petition, the Court also should adopt the corresponding conclusion that rejection damages claims related to the Rejected Trades arose post-petition for purposes of Section 553 and can be offset.

**B.     R3's Right of Setoff Is a Secured Claim Entitled to Adequate Protection That May Not Be Extinguished**

23.     Pursuant to Section 506(a) of the Bankruptcy Code, which provides that a claim subject to setoff under Section 553 of the Bankruptcy Code is a "secured claim to the extent of the amount subject to setoff," R3 has a secured claim against the Debtors that the Debtors may not eliminate or otherwise alter without R3's express consent. The Debtors may be required by Section 363(e) of the Bankruptcy Code to provide R3 with adequate protection of such interest.

24.     Further, Section 542(b) of the Bankruptcy Code provides that:

> [A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee,  except to the extent that such debt may be offset under section 553 if this title against a claim against the debtor."

11 U.S.C. § 542(b) (emphasis added). Section 542(b) of the Bankruptcy Code reiterates that R3's setoff right is not eliminated even if the Debtors establish a right to collect payment under the Assumed Trades.

**C.     R3 is Party to Post-Petition Agreements with the Debtors, Which May Be Offset Against any Agreements (Including Assumed Trades) That the Court Concludes Are Post-Petition**

3735646_2.DOC                                         11

25. If this Court rules that the Assumed Trades are post-petition contracts and not subject to offset by pre-petition agreements, the Court should make clear that R3 will be permitted to assert rights of offset against the Assumed Trades based upon R3's other post-petition agreements with the Debtors. Under the Debtors' own theory that the Assumed Trades are post-petition, R3's post-petition agreements with the Debtors supply the requisite mutuality for setoff.

## CONCLUSION

26. WHEREFORE, R3 respectfully requests that the Court deny the Motion to the extent it seeks to extinguish R3's rights of setoff and grant such other and further relief as the Court may deem proper.

Dated: November 28, 2008
      New York, New York

> */s/ Keith H. Wofford*
> ROPES & GRAY LLP
> 1211 Avenue of the Americas
> New York, New York  10036
> Telephone: 912.596.9000
> Facsimile:  212.596.9090
> Keith H. Wofford (KW-2225)
> Nila Williams (NW-5969)
>
> One International Place
> Boston, Massachusetts  02110
> Telephone: 617.951.7000
> Facsimile: 617.951.7050
> Shuba Satyaprasad (SS-5875)
> D. Ross Martin (DM-2947)
>
> Attorneys for R3 Capital Management, LLC