Hearing Date: December 3, 2008 at 10:00 a.m.
Objection Deadline: November 28, 2008 at 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Sally McDonald Henry

Attorneys for BlackRock Financial
Management, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC. | : | Case No. 08-13555 (JMP) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

------------------------------------------------------- x

**OBJECTION OF BLACKROCK FINANCIAL MANAGEMENT, INC. TO THE
DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTION 365 OF THE
BANKRUPTCY CODE APPROVING THE
ASSUMPTION OR REJECTION OF OPEN TRADE CONFIRMATIONS**

BlackRock Financial Management, Inc. ("BlackRock") hereby submits this objection (the "Objection") to the Debtors' Motion For An Order Pursuant To Section 365 Of The Bankruptcy Code Approving The Assumption Or Rejection Of Open Trade Confirmations (the "Assumption and Rejection Motion") (Docket No. 1541).

**BACKGROUND**

1.  On November 5, 2008, the Court approved a Revised Stipulation and Agreed Order Resolving Motion to Compel with a group of counterparties to certain of LCPI's open trade confirmations (the "Trade Confirmations"), pursuant to which the Debtors agreed,

*inter alia*, (i) to notify counterparties to all open trade confirmations whether the Debtors would seek to assume, assume and assign, or reject such Trade Confirmations by November 7, 2008 or December 5, 2008, (ii) to file with the Court a motion to assume, assume and assign, or reject such Trade Confirmations on or before November 16, 2008, and (iii) to request that such motion be heard by the Court at the Omnibus Hearing currently scheduled for December 3, 2008 [Docket No. 1400].

2. On November 14, 2008, the Debtors filed the Assumption and Rejection Motion seeking the assumption and rejection of Trade Confirmations. As set forth hereto as Exhibit A, the Assumption and Rejection Motion identified certain Trade Confirmations to which BlackRock was a counterparty (collectively, the "BlackRock Trade Confirmations").[1]

## OBJECTION

3. BlackRock objects to the Assumption and Rejection Motion because (1) the Trade Confirmations are integrated contracts that should be assumed or rejected in whole and (2) BlackRock will have a valid right to set off amounts it owes to the estate with respect to any assumed pre-petition Trade Confirmations against rejected pre-petition Trade Confirmations. The legal arguments in support of this Objection are set forth in the objection filed by certain other counterparties[2] (the "Counterparty Objection") (Docket No. 1841), and those legal

---

[1] With respect to the BlackRock Trade Confirmations, the Debtors have not accurately identified the customer names in the Exhibits to the Assumption and Rejection Motion. The correct BlackRock fund names are as follows: BlackRock Senior Income Series V Limited, BlackRock Global Floating Rate Income Trust, BlackRock Limited Duration Income Trust, BlackRock Senior Income Series III Plc, BlackRock Debt Strategies Fund, Inc., BlackRock Floating Rate Income Strategies Fund, Inc, Master Senior Floating Rate Trust, BlackRock Senior Floating Rate Portfolio, Fixed Income Portable Alpha Fund, and BlackRock Limited Duration Income Trust.

[2] The counterparties who filed the Objection are as follows: DK Acquisition Partners, L.P., Longacre Master Fund, Ltd., Longacre Capital Partners (QP), L.P., Morgan Stanley Bank International Limited, Morgan Stanley Senior Funding, Inc., Royal Bank of Scotland, plc, Field Point IV S.a.r.l., BDF Limited, Millennium Management, LLC, Banc of America Securities Limited, Bank of America, N.A., and P. Schoenfeld Asset Management LLC (collectively, the "Counterparties").

arguments set forth in Section I and II of the Counterparty Objection are fully incorporated herein.

A.  **The Trade Confirmations are Integrated Contracts**

4. Because the Debtors acted as a market-maker of loans, the Debtors treated the "buy" and "sell" Trade Confirmations as paired, integrated contracts. As such, the Debtors should be required to assume or reject these integrated contracts in their entirety to the extent they are not burdensome (i.e., their "spread" is positive), and they should not be permitted to enjoy an extraordinary windfall by assuming the sell and rejecting the buy. To permit the rejection of only one Trade Confirmation—in this case typically the buy trade confirmation—removes the trade from its proper context, improperly recharacterizes the Debtors' role in the transaction, and fails to treat the buy and sell side of a loan properly as an integrated transaction.

5. Accordingly, the Debtors' Motion to reject Trade Confirmations should be denied, or, in the alternative the Debtors should be required to treat buy trades in the same manner as sell trades.

6. In addition, the Debtors have offered no evidence that any contract is burdensome; rather their decision rests on the Debtors' belief that they may be able to make large and unexpected profits due to plummeting market conditions following the commencement of their bankruptcy cases.

B.  **The Parties Have a Right to SetOff**

7. Section 553(a) of the Bankruptcy Code explicitly preserves setoff rights of creditors. Citizens Bank of Maryland v. Strumpf, 516 U.S. 16 (1995). By its terms, in order for section 553 of the Bankruptcy Code to apply, (i) the debtor must owe a debt to the creditor which arose prepetition and (ii) the creditor must owe a debtor the debtor which arose prepetition. In re

3

Bennett Funding Group, Inc, 146 F. 3d 136, 137 (2d Cir. 1998). See also N.Y. Debt & Cred. Law § 151 (McKinney 1997) (establishing right to set off).  If the Debtors owe any counterparty any payment following the rejection of a Trade Confirmation, such amounts should be eligible for set off against any amounts that same counterparty is obligated to pay the Debtors with respect to the assumed Trade Confirmation.

8. Here, the parties will be able to satisfy each of the requirements set forth in section 553 of the Bankruptcy Code and will have a valid right to set off amounts owed with respect to assumed Trade Confirmations against prepetition claims, including prepetition claims arising from rejected Trade Confirmations.

9. First, the counterparties whose Trade Confirmations have been rejected will have a prepetition claim against a Debtor.  11 U.S.C. § 502(g). As the Debtors acknowledge, the rejection of any Trade Confirmation will create a prepetition unsecured claim against the relevant Debtor's estate.

10. Second, any amounts owed by the counterparties to the Debtors under the assumed Trade Confirmations would be prepetition obligations.  Because it was the entry into the Trade Confirmations that gave rise to claims under the assumed Trade Confirmations, any claim by the Debtors to be paid under an assumed Trade Confirmations would be a prepetition claim.

11. The Debtors' argument that the Counterparties' obligations with respect to assumed Trade Confirmations are postpetition claims for setoff purposes is based on their statement that "any failure by the Debtors to comply with *their* obligations under an Assumed Trade . . . will be treated as postpetition administrative obligations." See Assumption and Rejection Motion at ¶ 29 (emphasis added).  But that is not what is at issue here; the issue is

whether BlackRock had a prepetition obligation to make payments pursuant to a Trade Confirmation. If so, BlackRock's pre-petition obligation to pay gives it a right to set off.

12. The Bankruptcy Code is clear that a claim arises "when the right to payment accrues, not when payment is due." In re Communications Dynamics, Inc., 382 B.R. 219, 232, 234 (Bankr. D. Del 2008); see also In re Buckner, 218 B.R. 137, 145-146 (B.A.P. 10th Cir. 1998) (holding that for setoff purposes contingent, unmatured and unliquidated debts qualify as "absolutely owed" so long as such obligations arose prepetition within the meaning of section 101(5) of the Bankruptcy Code). Thus, the claim is mutual. See In re Gerth, 991 F.2d 1428, 1435-36 (8th Cir. 1993) (when debtor-in-possession assumes an executory contract, the debtor and the debtor-in-possession are the same entity for purposes of mutuality under section 553 of the Bankruptcy Code). As the Gerth court explained, if the debtor-in-possession were a different entity than the prepetition debtor then "every assumed executory contract would automatically fail to satisfy the requirement of mutuality," and it would also be unclear that any right to setoff would satisfy this obligation upon an entity becoming a "debtor-in-possession" by operation of law. Gerth, 991 F.2d at 1436. See, e.g., In re Buckner, 165 B.R. 942, 946 (D. Kan. 1994), aff'd, 218 B.R. 137 (B.A.P. 10th Cir. 1998); In re Allen, 135 B.R. 856, 866 (Bankr. N.D. Iowa 1992); In re Mohar, 140 B.R. 273, 277 (Bankr. D. Mont. 1992) (adopting rationale of Allen); In re Affiliated Food Stores, Inc., 123 B.R. 747, 748 (Bankr. N.D. Tex. 1991) (holding that mutuality exists for setoff purposes when debtor assumes an executory contract).

WHEREFORE, for all the foregoing reasons, BlackRock respectfully requests that the Court enter an order (a) denying the Assumption and Rejection Motion with prejudice, (b) in the alternative, specifically allowing BlackRock to set off its claims arising from rejected BlackRock

5

Trade Confirmations against its obligations to the same Debtor for assumed BlackRock Trade Confirmations, and (c) granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
November __, 2008

                SKADDEN, ARPS, SLATE, MEAGHER
                       & FLOM LLP

_____
Sally McDonald Henry
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for BlackRock Financial
Management, Inc.