Hearing Date: December 3, 2008, 10:00 a.m. ET
Objection Deadline: November 28, 2008, 4:00 p.m. ET

WINSTON & STRAWN LLP
David Neier (DN-5391)
200 Park Avenue
New York, New York 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Attorneys for Pentwater Capital Management, LP*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
:
In re:                                              :    Chapter 11
:
Lehman Brothers Holdings Inc., *et al.*,            :    Case No. 08-13555 (JMP)
:
Debtors.                         :    (Jointly Administered)
:
------------------------------------------------------x

**OBJECTION OF**
**PENTWATER CAPITAL MANAGEMENT, LP TO**
**ASSUMPTION OF OPEN TRADE CONFIRMATION**

Pentwater Capital Management, LP in its capacity as investment advisor ("Pentwater"), by and through undersigned counsel, objects (the "Objection") to the motion (the "Motion") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtor, Lehman Commercial Paper Inc. ("LCPI," and together with LBHI, the "Debtors"), for an order pursuant to title 11, section 365 of the United States Code (the "Bankruptcy Code") Approving the Assumption or Rejection of Open Trade Confirmations dated November 14, 2008 [Docket No. 1541] (the "Motion"), and respectfully represents as follows:

**Argument**

1. In the Motion, the Debtors seek to assume two alleged open trade confirmations

NY:1211037.9

between LCPI and Pentwater, namely (i) a September 4, 2008 sale of an unspecified amount of debt of Visteon Corporation ("Visteon") to Pentwater (the "September 4th Trade"), and (ii) a September 12, 2008 sale of an unspecified amount of debt of Visteon to Pentwater (the "September 12th Trade," and, together with the September 4th Trade, the "Trades").

      2.      With respect to the September 4th Trade, it was always contemplated by the parties that trades in Visteon term debt would be made on "distressed," as opposed to "par," terms. "Distressed" trades involve more documentation than "par" trades pursuant to the standards employed by the Debtors and Pentwater and published by the Loan Syndications and Trading Association, Inc. and the Loan Market Association. Because trades in Visteon term debt were supposed to have been consummated on "distressed" terms, the September 4th Trade was never consummated and settled, and would not been consummated and settled until the parties executed a purchase and sale or similar agreement that contained representations and warranties and other provisions. None of these terms conditions were ever negotiated, much less agreed to and executed. Moreover, the Debtors would have been unable to provide the required representations, as the Debtors were insolvent at the time of the Trades.

      3.      Moreover, with respect to the September 12th Trade, Pentwater's books and records do not reflect any trade, or even any confirmation, with the Debtors on September 12, 2008.

      4.      In order to assume or reject a contract under Bankruptcy Code section 365, the Debtors must at the outset establish that such a contract exists. *See In re Stephen Camann*, 2000 Bankr. LEXIS 1810 (Bankr. D.N.H. 2000) (holding that the parties did not have a "meeting of the minds"; thus, there was no enforceable executory contract and nothing to assume or reject under Bankruptcy Code section 365); *In re 611 Sixth Ave. Corp.*, 191 B.R. 295, 301 (Bankr. S.D.N.Y. 1996) (holding that there must be a "threshold inquiry into whether there is a lease or contract to

2

assume or reject"); *N.F.L. Ins. Ltd. by Lines v. B & B Holdings, Inc.,* 874 F.Supp. 606, 613 (S.D.N.Y. 1995) ("there was no meeting of the minds, manifested by an assent to mutually agreeable contract terms, and that there was no mutual assent and intent to be bound."); *In re III Enters., Inc. V*, 163 B.R. 453, 459 (Bankr. E.D.P.A. 1994), *aff'd* 169 B.R. 551 (E.D. Pa. 1994) ("before the Debtor can assume or reject a contract . . . there must be a contract to assume. . ."); *Nemko, Inc. v. Motorola, Inc. (In re Nemko, Inc.)*, 163 B.R. 927, 936 (Bankr. E.D.N.Y. 1994) (denying assumption of any contract because the parties' discussion "was subject to further negotiation, and lacked the meeting of the minds requisite to the existence of an enforceable contract.") (*citing Joseph Martin, Jr. Delicatessen v. Schumacher*, 52 N.Y.2d 105, 109 (1981) ("Before the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained.")).

5.    "The question of whether a meeting of the minds occurred is a factual question to be determined by the trier of fact, provided there is some evidence on which to base such a finding." *Camann*, 2000 Bankr. LEXIS 1810 at *10.  Here, the Debtors have not produced any evidence upon which to conclude that there was a contract between the Debtors and Pentwater, and, accordingly, Pentwater objects to assumption of the Trades by the Debtors.

6.    With respect to distressed debt trades, an executed agreement is a prerequisite for any for purported assumption under Bankruptcy Code section 365, and no such agreements exist. *Angelo, Gordon & Co. v. Dycom Indus., Inc.*, 2006 WL 870453, at *7 (S.D.N.Y. March 31, 2006) (holding that e-mail confirmations of distressed debt trade not enforceable; without and "an executed final agreement or a meeting of the minds"); *Resurgence Asset Mgmt., LLC v. Bastion Capital* Fund, L.P., 306 A.D.2d 336, 337, 760 N.Y.S.2d 662, 663 (2d Dep't 2003) (distressed debt confirmations were never executed and, therefore, "[t]he documentary record alone established that

3

the parties never agreed to all the material terms of the proposed sale").

7.   The Debtors have also asserted that this Court should reject any claims of Pentwater that could be used to setoff claims of the Debtors against Pentwater with respect to the Trades. Pentwater is a substantial creditor of the Debtors and is owed not less than approximately $11.5 million. The Debtors have failed to demonstrate any grounds for the extraordinary relief they are seeking. The Second Circuit has stated quite clearly that denial of setoff rights is an extraordinary remedy that should be rejected absent any compelling reason:

> This Circuit in *Bohack*, 599 F.2d at 1164-65, made clear the favored position of setoff and that that position extends to bankruptcy. While the prior Bankruptcy Act was at issue in *Bohack*, 599 F.2d at 1162-63, 11 U.S.C. § 553 is fully in accord with the prior Second Circuit jurisprudence. Cases under the prior Bankruptcy Act required "compelling circumstances" to disregard state sanctioned setoff rights. *Bohack*, 599 F.2d at 1165. As Judge Friendly stated in *Baker v. Troiano (Matter of Lehigh and Hudson River Ry. Co.)*, 468 F.2d 430, 434 (2d Cir. 1972), injunction against a setoff is "strong medicine."

*In re Bennett Funding Group, Inc.*, 146 F.3d 136, 139 (2d Cir. 1998).

8.   Pentwater joins in the other objections that have been filed in opposition to the Motion with respect to the termination of setoff rights.

### Reservation of Rights

9.   Pentwater reserves its rights to supplement, amend or otherwise modify this Objection as additional information becomes available.

### Waiver of Memorandum of Law

10.   Pentwater respectfully requests that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be waived as there are no novel issues of law presented herein.

**Conclusion**

WHEREFORE, Pentwater requests that the Court (i) deny the Motion and the termination of Pentwater's setoff rights and (ii) grant such other and additional relief as may be just and proper.

Dated: November 28, 2008
New York, New York

Respectfully submitted,

WINSTON & STRAWN LLP

By:   /s/David Neier
David Neier (DN-5391)
200 Park Avenue
New York, New York 10166-4193
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
dneier@winston.com

Attorneys for Pentwater Capital Management, LP