CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York  10281
Telephone:  (212) 504-6000
Facsimile:   (212) 504-6666
Deryck A. Palmer, Esq.
John J. Rapisardi, Esq.
George A. Davis, Esq.
Andrew Troop, Esq.

Attorneys for Citigroup Inc. and
all of its affiliates, including Citibank, N.A.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>     LEHMAN BROTHERS HOLDINGS, INC.,<br>et al.<br><br>                    Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP) |

**LIMITED OBJECTION TO DEBTORS' MOTION FOR AN ORDER PURSUANT
TO SECTIONS 105 AND 365 OF THE BANKRUPTCY
CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR
ASSUMPTION AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS**

Citibank, N.A. ("Citibank") by and through its undersigned counsel, respectfully submits this limited objection (the "Objection") to the Debtors' Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts (the "Procedures Motion").  In support of this Objection, Citibank states as follows:

BACKGROUND

1.  Citibank provides an array of financial services to various Lehman Brothers entities (collectively, "Lehman Brothers") in the United States and in many foreign jurisdictions.  Such services include the establishment and maintenance of cash deposit and

USActive 14555224.2

custodial accounts, trade clearing and settlement services, foreign-exchange-related services and the provision of related credit (including securities lending), as well as agency and trust services. In addition, Citibank and its affiliates and subsidiaries provide Lehman Brothers with credit facilities and were counterparties to Lehman Brothers in connection with thousands of transactions under numerous financial contracts such as interest-rate and foreign-exchange swap agreements, securities contracts, and repurchase agreements.

2.  Certain Lehman Brothers entities were parties to Derivatives Contracts (as defined in the Procedures Motion) with Citibank. Citibank has terminated all of its Derivative Contracts in accordance with the terms of such Derivative Contracts.

3.  On September 15, 2008 and thereafter, Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On September 19, 2008, Lehman Brothers Inc. ("LBI") became the subject of a proceeding under the Securities Investors Protection Act of 1970 ("SIPA"), and a trustee (the "SIPC Trustee") was appointed to liquidate the business of LBI.

4.  On November 13, 2008, the Debtors filed the Procedures Motion seeking, among other things, authorization to assume and assign Derivative Contracts pursuant to certain procedures (the "Assumption and Assignment Procedures"). In addition, the Debtors seek approval of procedures intended to "provide for the efficient resolution of issues relating to Terminated Derivative Contracts" (the "Termination and Settlement Procedures," and together with the Assumption and Assignment Procedures, the "Procedures").

OBJECTION

5.  Because Citibank believes that it has terminated all of its Derivative Contracts with the Debtors, the Assumption and Assignment Procedures should not affect or

apply to Citibank. However, out of an abundance of caution and to the extent that any Derivative Contract has not been terminated, Citibank objects to certain provisions of the Procedures Motion.[1]

    A.    The Proposed Assumption and Assignment Procedures Fail to Require Assignees to Demonstrate Adequate Assurance of Future Performance

    6.    Citibank objects to the proposed Assumption and Assignment Procedures because they fail to provide adequate assurance of future performance in accordance with section 365 of the Bankruptcy Code. Specifically, the Debtors fail to (i) adequately identify <u>who</u> may be an assignee under the Assumption and Assignment Procedures, and (ii) explain <u>what</u> may be assigned pursuant to the Assumption and Assignment Procedures.

    7.    Paragraph 19(c) of the Procedures Motion states that:

> [A]ny Counterparty ***will be deemed to have received adequate assurance of future performance*** as required by section 365 of the Bankruptcy Code, notwithstanding any right of a Counterparty to consent to any assignment or any requirement in a Derivative Contract regarding the identity of assignees, ***if*** either (i) ***an assignee or its credit support provider is a Qualified Assignee***, or (ii) the Debtors, after payment of any Cure Amounts, would no longer have any payment or delivery obligations under the Derivative Contract (other than upon exercise of an option exercisable in the Debtors'/assignee's discretion).

Procedures Motion at 10 (emphasis added). In setting forth the essential elements of each Assignment Notice, paragraph 19(b) does not require that the <u>actual</u> identity of an intended assignee be included. Rather, the Debtors' Assignment Notice need only state:

> (iii) either a statement that any assignee or its credit support provider shall have a Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or any equivalent thereof (a "Qualified

---

[1] The Procedures Motion fails to state clearly that the proposed procedures do not apply to terminated contracts. Citibank reserves all of its rights with respect to the terminated Derivative Contracts, including to argue that such contracts were properly terminated.

Assignee"), or the identity of any proposed assignee and its credit support provider, if any, if neither is a Qualified Assignee . . .

Procedures Motion at 9.

8. There are certain infirmities with the intersection of paragraph 19(b) and 19(c). First, the fact that the purported assignee has a certain credit rating alone cannot establish adequate assurance of future performance because, among other things, Derivative Contracts often structure additional party credit protections such as where the collateral can be held. Moreover, the failure of mere credit rating to protect against loss has been amply documented by the recent events in the capital markets, which require a counterparty to exercise more prudent business judgment by conducting a more comprehensive financial review. Counterparties to Derivative Contracts are entitled to know to whom the contract is being assigned and to object to such assignment, regardless of the credit rating of the assignee.

9. Moreover, the Debtors' representation that an intended assignee meets a certain credit rating threshold does not constitute "notice" of the identity of that assignee, and such a representation certainly does not satisfy the Debtors' burden under section 365 to provide adequate assurance of future performance of the relevant Derivative Contract. Indeed, without knowing the identity of an assignee, Citibank cannot corroborate the purported credit rating, analyze the attendant risks, engage in appropriate due diligence, or exercise its fiduciary duties to shareholders in connection with its new trading partner – the so-called "Qualified Assignee." To the contrary, Citibank's business judgment and fiduciary obligations will be wholly supplanted by the Debtors' judgment and representations with respect to an assignee's ability to perform on any given Derivative Contract in the future. Citibank would have virtually no assurance of future performance beyond the Debtors' imprimatur. Accordingly, paragraph 19(c) of the Procedures Motion should be deleted from the Assumption and Assignment Procedures, and the

Debtors should be required, at a minimum, to provide Counterparties with notice of the Assignee's actual identity in each and every assignment.[2]

      B.      The Proposed Assumption and Assignment Procedures Fail to Allow Counterparties to Object on Any Grounds

      10.      The Debtors have failed to justify <u>how</u> or <u>why</u> they have limited the types of objections that may be lodged by Counterparties to the assumption and assignment of Derivative Contracts. Counterparties to Derivative Contracts should be allowed to object to assumption and assignment of such Derivative Contracts on <u>any</u> grounds, not merely those set forth in the Procedures Motion. Paragraph 19(e) states, in relevant part:

> To the extent that any Counterparty wishes to object on the grounds of (i) the proposed Cure Amount; (ii) the need to cure a default or early termination event, including, without limitation, any default or early termination event with respect to the Debtors and each of their respective affiliates, successors and assigns (a "<u>Default</u>") – other than a Default relating to the commencement of a case under the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the Debtors, which Defaults need not be cured prior to assignment; or (iii) the adequate assurance of future performance under the applicable Derivative Contract if neither the assignee nor its replacement credit support provider (if any) is a Qualified Assignee, then such Counterparty must serve a written objection, so that such objection is <u>actually received</u> no later than five (5) business days after the date of service of the Assignment Notice . . .

Procedures Motion at 10. Thus, the Procedures Motion allows Counterparties the right to object to assumption and assignment of their Derivative Contracts on exactly three grounds: proposed Cure Amount, the need to cure a default or early termination event, and the adequate assurance of future performance if the assignee is not a Qualified Assignee. Counterparties should be

---

[2] In addition, paragraph 19(b)(iii) appears to contemplate assignments to non-Qualified Assignees, which should not be permitted.

entitled to object to the assignment of Derivative Contracts on any grounds, including that the assignee cannot provide adequate assurance of future performance and that the arrangements for clearing and handling the transfer of collateral are not satisfactory.[3]

11. Limiting the grounds for objection in this manner is inequitable and wholly improper; indeed, the Debtors do not even purport to state a reason for imposing such a limitation. On the contrary, counterparties should be unequivocally permitted to object to the assumption and assignment of their Derivative Contracts, in accordance with the Bankruptcy Code and to preserve the rights they bargained for and are entitled to pursuant to the terms of the Derivative Contracts. As such, the Court should modify the Assumption and Assignment Procedures to allow Counterparties the right to object to the assumption and assignment of their Derivative Contracts without regard to the bases of such objections.

---

[3] For example, paragraph 19(d) of the Procedures Motion provides that:

> With respect to Derivative Contracts that may require the return of posted collateral as part of a Cure Amount, the Debtors will either return such collateral or, *if such collateral is no longer in the Debtors' possession, the Debtors will pay an amount equal to the value of such collateral* as of the business day prior to service of the Assignment Notice *based upon independent third-party pricing services, which payment will be considered in full satisfaction of the posted collateral.* The Debtors' proposed manner of returning any such collateral, including any amount proposed to be paid for collateral no longer in the Debtors' possession, shall be included in the Assignment Notice as a Cure Amount.

Procedures Motion at 10 (emphasis added). Thus, if a Citibank Derivative Contract requires the return of posted collateral, and the Debtors no longer possess such collateral, Citibank's sole recourse is the assessment of an "independent third-party pricing service." The Debtors' payment to Citibank of an amount in accordance with such assessment shall be considered full satisfaction of the requirement to return the posted collateral. The Assumption and Assignment Procedures do not provide Counterparties such as Citibank with any rights whatsoever to object to third-party pricing services' valuations of posted collateral. Thus, if Citibank disagrees with the valuation of its posted collateral, it has no recourse under the Procedures Motion. Accordingly, the Procedures Motion unduly prejudices Citibank's rights to receive the full value of its posted collateral under the terms of its Derivative Contracts. Citibank thus hereby reserves its rights to object to the valuation of any independent third-party pricing service of any collateral posted by Citibank.

C. <u>Reservations of Rights</u>

12. The Procedures Motion provides that:

> The Debtors reserve all rights with respect to any alleged termination of any Derivative Contract, including the rights to assert that a Counterparty who did not terminate promptly after the commencement of these cases waived the right to terminate on account of the Debtors' bankruptcies or financial condition and/or certain alleged terminations were not effective because they were not exercised in accordance with the applicable contractual provisions.

Procedures Motion at 4 n.2. Thus, the Procedures Motion appears to give the Debtors the unilateral ability to declare that a Counterparty improperly terminated a Derivative Contract, without providing any procedures for Counterparties to counter that they did, in fact, properly terminate their Derivative Contracts. Thus, Citibank hereby reserves all of its rights with respect thereto, including but not limited to its right to assert in response to such an allegation that it properly terminated any or all Derivative Contracts it had with the Debtors.

13. The Procedures Motion sets forth not only the Assumption and Assignment Procedures, but, with regard to Terminated Derivative Contracts, the Termination and Settlement Procedures. The Termination and Settlement Procedures provide, among other things, that: (i) a termination agreement may resolve and fix amounts owing between the Debtors and the counterparty; (ii) the Debtors are authorized, but not required, to release each Counterparty; and (iii) a termination agreement may permit the collateral or margin held by the Debtors or by the Counterparty to be liquidated or returned in accordance with the Derivative Contract, an applicable Master Netting Agreement, or the termination agreement. Procedures Motion at 12. However, Citibank asserts that the flexibility accorded the Debtors by the Termination and Settlement Procedures should be without prejudice to any of Citibank's legal or contractual rights pursuant to the Bankruptcy Code, the terms of Citibank's Derivative Contracts,

or otherwise. In addition, Citibank reserves its right to opt out of the Procedures as may be necessary to preserve its rights, and to have the Bankruptcy Court hear and decide any disputes related to the Derivative Contracts of the Procedures.

WHEREFORE, Citibank requests that the Court modify the proposed Assumption and Assignment Procedures as set forth herein, preserve Citibank's rights in accordance with the relief sought herein, and order such other and further relief as may be just and proper.

Dated: New York, New York
       November 28, 2008

By: */s/ Deryck A. Palmer*
    Deryck A. Palmer, Esq.
    John J. Rapisardi, Esq.
    George A. Davis, Esq.
    Andrew Troop, Esq.
    CADWALADER, WICKERSHAM & TAFT LLP
    One World Financial Center
    New York, New York  10281
    Telephone: (212) 504-6000
    Facsimile:  (212) 504-6666
    deryck.palmer@cwt.com
    john.rapisardi@cwt.com
    george.davis@cwt.com
    Andrew.troop@cwt.com

    Attorneys for Citigroup Inc. and
    all of its affiliates, including Citibank, N.A.