Objection Deadline: November 28, 2008 at 4:00 p.m.
Hearing Date: December 3, 2008 at 10:00 a.m.

John Rapisardi, Esq.
Andrew Troop, Esq.
Jessica Fink, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York  10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666

- and-

Peter M. Friedman, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
1201 F Street N.W., Suite 1100
Washington, DC  20004
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400

Attorneys for Whippoorwill Associates, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC. et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br><br>(Jointly Administered) |

**OBJECTION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION OR <u>REJECTION OF OPEN TRADE CONFIRMATIONS</u>**

Whippoorwill Associates, Inc., as agent for its discretionary funds and accounts

("<u>Whippoorwill</u>"), by and through its undersigned counsel, respectfully submits this objection

(the "Objection") to the *Debtors' Motion For An Order Pursuant to Section 365 of the*

*Bankruptcy Code Approving The Assumption Or Rejection Of Open Trade Confirmations* (the "Motion").  In support of this Objection, Whippoorwill states as follows:

## PRELIMINARY STATEMENT

The Debtors seek to assume or reject certain trade confirmations, including four groups of trade confirmations between Lehman Commercial Paper Inc. ("LCPI") and Whippoorwill.  The Court should deny the Motion for two reasons.  First, the Motion improperly seeks to deny Whippoorwill its right to set off pre-petition claims under the Bankruptcy Code and applicable law.  Second, the Debtors have committed pre-petition breaches of the contracts they seek to assume but have failed to provide Whippoorwill with adequate assurance of future performance.

Whippoorwill meets each of the elements necessary for setoff; most importantly, Whippoorwill's claims against the Debtors, and any obligations it owes to the Debtors under the assumed trade confirmations, were incurred pre-petition.  Whippoorwill is therefore clearly entitled to setoff.

The Debtors' legal argument that assumption of the trade confirmations renders Whippoorwill's obligations to the Debtors post-petition obligations, contradicts applicable law and the plain terms of the trade confirmations.

The Debtors' "policy" arguments against setoff are equally misplaced.  Setoff is a well-recognized legal right under the Bankruptcy Code and applicable law.  Courts consider setoff rights analogous to rights of secured creditors.  The Debtors' attempt to eviscerate the doctrine of setoff on "policy" grounds should be denied.

In addition, Whippoorwill is entitled to adequate assurance of future performance under the trade confirmations.  There are outstanding defaults under the trade confirmations that the Debtors seek to assume and, accordingly, the Debtors must demonstrate adequate assurance

-2-

of future performance. They have failed to do to. The conclusory ipse dixit assertion in the Motion that they can provide adequate assurance to all counterparties does not establish adequate assurance.[1] Accordingly, the Motion should be denied.

## BACKGROUND

### I.  Procedural Background.

Commencing on September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings Inc. and its affiliated debtors (including LCPI) filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

On November 14, 2008, the Debtors filed the Motion seeking authorization to assume and reject certain trade confirmations. By the Motion, the Debtors seek to assume the June 11 Trade Confirmation, the June 30 Trade Confirmation and the July 15 Trade Confirmation and to reject the September 3 Trade Confirmation (each as defined herein).

### II.  Trade Confirmation Background.

On June 11, 2008, LCPI entered into a series of LSTA Distressed Trade Confirmations with Whippoorwill on behalf of several affiliated entities (the "June 11 Trade Confirmations").

On June 30, 2008, LCPI entered into a series of LSTA Distressed Trade Confirmations with Whippoorwill on behalf of several affiliated entities (the "June 30 Trade Confirmations").

---

[1] The trade confirmations require the parties to enter into definitive Transfer Documentation (as defined in the trade confirmations) as detailed herein. Whippoorwill reserves all rights with respect to the definitive Transfer Documentation.

On July 15, 2008, LCPI entered into a series of LSTA Distressed Trade Confirmations with Whippoorwill on behalf of several affiliated entities (the "July 15 Trade Confirmations").

On September 3, 2008, LCPI entered into a series of LSTA Distressed Trade Confirmations with Whippoorwill on behalf of several affiliated entities (the "September 3 Trade Confirmations"; together with the June 11 Trade Confirmation, the June 30 Trade Confirmation and the July 15 Trade Confirmation, the "Trade Confirmations").

## OBJECTION

### I.  The Motion Improperly Prohibits Setoff.

The Debtors improperly seek a blanket prohibition on the rights of any party (including Whippoorwill) to set off of its pre-petition claims against any pre-petition obligations it owes to the Debtors under the assumed Trade Confirmations. The Debtors argue that assumption of the Trade Confirmations converts the counterparties' obligations to the Debtors from pre-petition to post-petition, thus destroying the required "mutuality" between the counterparties' claims against, and obligations to, the Debtors. The Debtors' argument is inconsistent with the better interpretation of the Bankruptcy Code. Recognizing this, the Debtors put forth a "policy argument" that invites the Court to ignore parties' (including Whippoorwill's) statutory setoff right. As explained below, this argument is wholly without merit.

> *A.  Whippoorwill's has setoff rights under the Bankruptcy Code and applicable law.*

Section 553(a)(1) of the Bankruptcy Code states that the Bankruptcy Code

> does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case . . . against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

-4-

There are four conditions required for setoff under section 553 of the Bankruptcy Code. First, the creditor must hold a pre-petition "claim" against the debtors. Second, the creditor must owe a pre-petition "debt" to the debtor. Third, the claim and the debt must be "mutual." Finally, the claim and debt must each be valid and enforceable. See, 5 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 553.01 (15th Ed. Rev. 2008) (detailing four conditions to setoff; citing, e.g., Public Serv. Co. of N.H. v. N.H. Elec. Coop, Inc. (In re Public Serv. Co. of N.H., 884 F.2d 11, 14 (1st Cir. 1989); Davidovic v. Welton (In re Davidovic), 901 F.2d 1533, 1537 (10th Cir. 1990)).

"The central tenet of the doctrine of setoff [and the only issue contested by the Debtors] has been the mutuality of obligations . . . . Hence pre-petition obligations have been setoff against pre-petition obligations and post-petition obligations against post-petition obligations." In re Genuity, Inc., 323 B.R. 79, 82 (Bankr. S.D.N.Y. 2005).

A claim is a "right to payment" whether or not "reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, [or] unmatured . . . ." 11 U.S.C. § 101(5). Similarly, the debtor's debt is "a liability on a claim." 11 U.S.C. § 101(12). "'Debt' should be read as being coextensive with the term 'claim.'" United States v. Gerth, 991 F.2d 1428, 1433 (8th Cir. 1993).

To determine mutuality between a debt and a claim, one must look at when the parties incurred the respective obligations. A claim will be deemed pre-petition when it arises out of a relationship recognized in, for example, the law of contracts or torts.

> A claim exists only if before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation – "a right to payment" – under the relevant non-bankruptcy law.

In re Chateaugay Corp., 53 F.3d 478, 497 (2d Cir. 1995).  Similarly, an obligation to the debtor "is considered to have arisen before the commencement of the case if the obligation was incurred before the petition date."  5 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 553.01 (15th Ed. Rev. 2008).

Whippoorwill's obligations to purchase the underlying debt – although subject to negotiation of definitive documentation – arose when Whippoorwill entered into the Trade Confirmations – prepetition.  See June 11 Trade Confirmation Standard Terms and Conditions for Distressed Trade Confirmations ("Standard Terms")[2], ¶ 1 (obligating Whippoorwill to purchase the underlying debt from LCPI "as soon as practicable after the Trade Date."  The Trade Date for each Trade Confirmation is prior to the Petition Date.)  Moreover, as even the Debtors acknowledge, any rejection damages with respect to the rejected September 3 Trade Confirmations were incurred pre-petition.  Motion ¶ 28.  Accordingly, there is mutuality between Whippoorwill's obligations to the Debtors and Whippoorwill's claims against the Debtors.

    *b. The Debtors' arguments rely on inapplicable law.*

The critical issue here is the Debtors' incorrect assertion that assumption of a pre-petition contract causes the obligations thereunder to become post-petition obligations, destroying mutuality.  Motion ¶ 30.

The Debtors rely heavily on Judge Beatty's decision in In re Genuity, 323 B.R. 79, 82 (Bankr. S.D.N.Y. 2005).  The Debtors rely on a statement in Genuity that the "Debtors' post-petition assumption of their executory contracts transformed the pre-petition claims of the

---

[2] All references in this Objection to the Standard Terms refer to the Standard Terms attached to the June 11 Trade Confirmation.  These Standard Terms apply to all Trade Confirmations.

[counterparties] once not cured into new claims arising post-petition." Id. This statement (and Genuity generally) has little relevance in this case for several reasons.

First, Genuity stands for the uncontroverted proposition that cure costs must be paid in full. In re Genuity, 323 B.R. 79, 84 (Bankr. S.D.N.Y. 2005) (in addressing a debtor's argument that cure obligations were pre-petition obligations, the Court noted the novel nature of this argument and held that the debtors' failure to cure post-assumption gave rise to a post-petition cure claim that must be paid in full). Indeed, the language cited by the Debtors makes clear that the failure to cure was critical to the Court's decision. Genuity clearly does not stand for the legal "theory" that the Debtors attribute to it — that assumption by itself converts pre-petition obligations into post-petition obligations.

Second, to the extent Judge Beatty correctly decided the Genuity case on its facts, the language cited by the Debtors, when applied here, would contravene Second Circuit law as detailed in In re Chateaugay Corp. Under Chateaugay, a claim or obligation exists when it arises under non-bankruptcy law. In re Chateaugay Corp., 53 F.3d at 497. Here, as noted above, Whippoorwill's claims and potential obligations all arise pre-petition. There is no legal reason for assumption to convert these claims to post-petition claims.

Finally, the Genuity opinion, to the extent it sets aside applicable law, focuses on fairness to the creditors, stating that it would not be fair to the creditors to permit the debtors to pay post-petition obligations in fractional pre-petition dollars. See, In re Genuity, 323 B.R. at 82 (detailing equitable analysis). Just as the Genuity Court did not permit the debtors to use assumption to impair creditors' rights, neither should the Debtors in this case use assumption to eliminate Whippoorwill's setoff rights under applicable law.

In contrast to Genuity, which is inapposite to the situation at hand, numerous courts outside of the Second Circuit have decided that assumed contracts arise pre-petition for

-7-

purposes of setoff. In <u>Gerth</u>, for example, the United States Court of Appeals for the Eighth Circuit rejected the argument raised by the Debtors here. The Court held that the Bankruptcy Code does not cause a pre-petition obligation "to become postpetition . . . [;] the obligations arise under the contract as the parties originally agreed." <u>United States v. Gerth</u>, 991 F.2d at 1433.[3]

In <u>Gerth</u>, the parties entered into two contracts prior to the debtor's bankruptcy. The debtor moved to assume the contracts. Subsequently, the government sought to set off the amounts owed under the contracts with amounts owed by the debtor to the government. <u>Id.</u> 991 F.2d at 1429-30. The debtor argued, as the Debtors do in this case, that when he assumed the contracts, the counter-party's obligations to pay became post-petition obligations. <u>Id.</u> 991 F.2d at 1431. The Court of Appeals for the Eighth Circuit held that the "mere assumption of an executory contract does not alter when the obligations under the contract arose." <u>Id.</u> 991 F.2d at 1432. Therefore, if the contract terms are such that the counter-party's

> obligation to pay arose prepetition, then a holding by this court that simply assuming the contract causes the obligation to arise post-petition would have the effect of modifying those contract terms. 11 U.S.C. § 365 which governs assumption of executory contracts, contains nothing which would allow such modification.

<u>Id.</u> The Court in <u>Farmers Home Administration v. Buckner (In re Buckner)</u>, 218 B.R. 137, 145-49 (B.A.P. 10th Cir. 1998) considered similar facts and held that obligations enforceable on the petition date were pre-petition obligations for purposes of mutuality in setoff. <u>Id.</u> 218 B.R. at 148 ("The [lower court] Judgment was in error in holding that the United States' obligation [to the debtors] arose postpetition . . . ."). <u>See</u> <u>also</u>, <u>e.g.</u>, <u>In re Allen</u>, 135 B.R. 856, 863 (Bankr. N.D.

---

[3] This is the "majority" rule among the courts that have considered this issue. <u>Id.</u> 991 F.2d at 1432. The Debtors' argument reflects the minority rule, as embodied in <u>Walat Farms, Inc. v. United States (In re Walat Farms)</u>, 69 BR 529 (Bankr. E.D Mich. 1987). In <u>Gerth</u>, the Court of Appeals for the Eighth Circuit considered the <u>Walat Farms</u> ruling, but determined it wrongly decided for, <u>inter</u>, <u>alia</u>, the reasons detailed herein.

Iowa 1992) ("To find that assuming the contract changes the effective date obligations arise under the contract to a postpetition time essentially would allow the debtor to modify the contract . . . . Nothing in § 365 states or even suggests that the assumption of a contract allows the debtor to escape or modify terms which do not work to its benefit.").

        *c.     The Debtors misunderstand Bankruptcy policy and equity with respect to setoff.*

The Debtors also argue that Bankruptcy policy and equity do not permit setoffs in this case. Motion ¶ 35 ("Here setoff should not be permitted where it would allow parties with claims for rejection damages to receive, in effect, payment in full of such claims."). The Debtors state that permitting setoff would improperly treat Whippoorwill's pre-petition rejection damages claims like administrative expense claims. Motion ¶ 33. The Debtors' argument demonstrates a fundamental misunderstanding of the policy behind setoff. Indeed, to the extent Whippoorwill has setoff rights, the rejection damages claims should be paid in full and should be treated like secured claims.

"There is little to distinguish between a creditor's preferred status arising from a right of setoff and the preferred status arising from some other type of security." 5 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 553.02 (15th Ed. Rev. 2008). This policy is consistent with section 506(a) of the Bankruptcy Code which "recognizes the similarity and treats rights arising through setoff in the same manner as rights arising from a security agreement or other relevant security device. **Indeed, a right of setoff has been described as 'security of the most perfect kind.'**" Id. (quoting Elcona Homes Corp. v. Green Tree Acceptance, Inc., (In re Elcona Homes Corp.) 863 F.2d 483, 485 (7th Cir. 1988)) (emphasis added). In this case, Whippoorwill is entitled to be treated like any other setoff creditor (and any other secured creditor) and should

be permitted to set off its rejection damages against its obligations to the Debtors under the assumed Trade Confirmations.

The Debtors also rely on a statement in In re Bennett Funding Group, Inc., that the Bankruptcy Court "may 'invoke equity to bend the rules' if required, to avert injustice." Motion ¶ 32 (quoting In re Bennett Funding Group, Inc., 212 B.R. 206, 212 (B.A.P. 2d Cir. 1997)). It bears noting that the Court in Bennett Funding did not "bend the rules." In Bennett, the court found no improper activities even in the face of allegations by the debtors that the creditor's debt to the debtor had been created for the purpose of obtaining a setoff right against the debtor "given the alleged existence of a 'Ponzi' scheme," and held that "given the strong notion of equity in favor of setoff" the Bankruptcy Court had properly permitted setoff. Id. 206 B.R. at 215 (emphasis added). The Debtors' effort to invoke *Bennett* in support of an equitable argument against setoff is simply backwards. In this case, the Debtors make no allegations of improper behavior. Thus, even if the Court did consider equity, the Court has no justification for "bending the rules" under the Bankruptcy Code and should preserve Whippoorwill's setoff rights in light of the "strong notion of equity in favor of setoff."[4]

## II.    The Debtors Cannot Assume The Trade Confirmations Absent Adequate Assurance Of Future Performance.

The Debtors cannot assume the Trade Confirmations unless and until they provide Whippoorwill adequate assurance that they will perform their obligations under the Trade Confirmations (and any definitive Transfer Documentation). The Motion fails to substantively

---

[4] The form of Order submitted with Motion contains a decretal paragraph that the Debtors are not required to pay any cure costs to any counterparty on an assumed trade. Generally with respect to the assumed trades that are sales by the Debtors, the payments are from the counterparty to the Debtor. However, if the agreement obligates the Debtors to pay an amount (such as delay damages), such obligation should remain and the order should not preclude payment by the Debtor.

address adequate assurance (much less demonstrate it). Accordingly, the Motion should be denied.

Under section 365(b)(1) of the Bankruptcy Code, the Debtors can only assume a breached contract if they either cure the default or provide "adequate assurance" that they will cure the default, and provide "adequate assurance of future performance" under the contract. Congress included section 365(b)(1) of the Bankruptcy Code to "protect the rights of non-bankrupt parties to executory contracts and leases by insuring that the non-bankrupt parties will get the full benefit of their bargain." Aetna Cas. & Sur. Co. v. Gamel, 45 B.R. 345, 348 (N.D.N.Y. 1984) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 348 (1977); S. Rep. No. 989, 95th Cong. 2d Sess 59 (1978).

The Bankruptcy Code does not define "adequate assurance." Bankruptcy Courts in this District have given the phrase a "pragmatic" and fact-based construction. In re Martin Paint Stores, 199 B.R. 258, 263 (Bankr. S.D.N.Y. 1996) (citing, e.g., In re Fifth Ave. Originals, 32 B.R. 648, 652 (Bankr. S.D.N.Y. 1983).

The burden of proof for adequate assurance falls on the party seeking to assume the contract. See, e.g., In re Grant, 201 B.R. 216, 220 (Bankr. N.D. Ill. 1996) ("The Debtors have the burden of proof in order to assume the unexpired leases . . . . It is also the Debtors' burden to show adequate assurance of future performance . . . [and] to compensate (or provide adequate assurance that compensation will be forthcoming) . . . for any actual loss resulting from the defaults.") (Overturned on other grounds).

In this case, the Debtors breached their obligations under the Trade Confirmations. In particular, the Debtors failed to

> use reasonable efforts to furnish Buyer drafts of the applicable Transfer Documentation, together with any related Predecessor Transfer

-11-

>   Documentation, subject to applicable confidentiality provisions contained in such documents within six (6) Business Days after the Trade Date.

June 11 Trade Confirmation Standard Terms ¶ 10.  Accordingly the Debtors, prior to assumption, must provide adequate assurance of future performance.  Among other future obligations, the Debtors must demonstrate their ability to enter into and perform under the definitive Transfer Documentation and effectuate the trades.  June 11 Trade Confirmation Standard Terms ¶ 10.

The Debtors have failed to even attempt to carry their burden of proof of demonstrating adequate assurance of future performance.  In the Motion, the Debtors address only briefly their adequate assurance obligations, stating there is "no monetary default" under the Trade Confirmations and requesting that the Court enter an order finding "that there are no cure amounts owed."  Motion at ¶ 16.  Thus, the Debtors have completely failed to meet the statutory prerequisite for assumption.

Even if the Court permits the assumption of the Trade Confirmations, however, the Trade Confirmations are merely "agreements to agree" and Whippoorwill reserves all of its rights with respect to the negotiation and documentation of the final Transfer Documentation.  It is customary in trading distressed debt for the final Transfer Documentation to include numerous representations and warranties from the seller (here, the Debtors) and significant indemnity and other costly obligations.  In light of their current circumstances, the Debtors' ability to perform those obligations is highly uncertain.  Accordingly, even if the Court finds that the Debtors have provided adequate assurance of future performance of the Trade Confirmations, they have not (and likely cannot) provide adequate assurance of future performance of the Transfer Documentation.  In fact, in light of the uncertainty with respect to the Debtors, it is reasonable for Whippoorwill to require that the final Transfer Documentation provide, among other things,

that the Debtors' obligations be guaranteed or that the Debtors place a certain amount into escrow as a means of providing adequate assurance of future performance of such representations, warranties and indemnities.

WHEREFORE, Whippoorwill requests that the Court order deny the Motion with respect to the Trade Confirmations and grant such other and further relief as may be just and proper.

Dated:   New York, New York
         November 28, 2008

                                            CADWALADER, WICKERSHAM & TAFT LLP

                                            */s/ John J. Rapisardi*
                                            John J. Rapisardi, Esq.
                                            Andrew Troop, Esq.
                                            Jessica Fink, Esq.
                                            CADWALADER, WICKERSHAM & TAFT LLP
                                            One World Financial Center
                                            New York, New York  10281
                                            Telephone:  (212) 504-6000
                                            Facsimile:  (212) 504-6666
                                            Email:  John.Rapisardi@cwt.com;
                                                    Andrew.troop@cwt.com
                                                    Jessica.Fink@cwt.com

                                            - and-

                                            Peter M. Friedman, Esq.
                                            CADWALADER, WICKERSHAM & TAFT LLP
                                            1201 F Street N.W., Suite 1100
                                            Washington, DC  20004
                                            Telephone:  (202) 862-2200
                                            Facsimile:  (202) 862-2400
                                            Email:  Peter.Friedman@cwt.com

                                            Attorneys for Whippoorwill Associates, Inc.