Howard R. Hawkins, Jr.
Leslie W. Chervokas
John H. Thompson
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666

Attorneys for Exum Ridge CB0 2006-I; Exum Ridge CBO 2006-2; Exum Ridge CBO 2006-4;
Exum Ridge CBO 2006-5; Exum Ridge CBO 2007-1; Exum Ridge CBO 2007-2; SGS HY
Credit Fund I (Exum Ridge CBO 2006-3); Aviv LCDO 2006-1; Aviv LCDO 2006-2; Airlie
LCDO I (Aviv LCDO 2006-3); Airlie LCDO II (Pebble Creek 2007-1); Pebble Creek LCDO
2006-1; Pebble Creek LCDO 2007-3; White Marlin CDO 2007-1; Airlie CDO I.; and Pebble
Creek LCDO 2007-2, LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC. <u>et al.</u>,<br><br>                Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br><br>(Jointly Administered) |

**LIMITED OBJECTION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO
SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH
PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND ASSIGNMENT OF
<u>PREPETITION DERIVATIVE CONTRACTS</u>**

Each of Exum Ridge CB0 2006-1, Exum Ridge CBO 2006-2, Exum Ridge CBO
2006-4, Exum Ridge CBO 2006-5, Exum Ridge CBO 2007-1, Exum Ridge CBO 2007-2, SGS
HY Credit Fund I (Exum Ridge CBO 2006-3), Aviv LCDO 2006-1, Aviv LCDO 2006-2, Airlie
LCDO I (Aviv LCDO 2006-3), Airlie LCDO II (Pebble Creek 2007-1), Pebble Creek LCDO
2006-1, Pebble Creek LCDO 2007-3, White Marlin CDO 2007-1, Airlie CDO I., and Pebble
Creek LCDO 2007-2, LLC (each, an "Issuer"), by and through its undersigned counsel,
respectfully submits this limited objection (the "Objection") to the *Debtors' Motion for an Order*
*Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the*

*Settlement or Assumption and Assignment of Prepetition Derivative Contracts* (the "Procedures Motion"). In support of this Objection, each Issuer states as follows:

## BACKGROUND

1.      Each Issuer is a counterparty to a Derivatives Contract (as defined in the Procedures Motion) with Lehman Brothers Special Financing, Inc. ("LBSF"). Each Issuer has terminated its Derivative Contract in accordance with the terms of such Derivative Contracts.

2.      On September 15, 2008 and thereafter, Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On October 3, 2008, LBSF filed its own voluntary petition for relief under chapter 11 of the Bankruptcy Code. Its bankruptcy case is being jointly administered with the bankruptcy case of LBHI.

3.      On November 13, 2008, the Debtors filed the Procedures Motion seeking, among other things, authorization to assume and assign Derivative Contracts pursuant to certain procedures (the "Assumption and Assignment Procedures"). In addition, the Debtors seek approval of procedures intended to "provide for the efficient resolution of issues relating to Terminated Derivative Contracts" (the "Termination and Settlement Procedures," and together with the Assumption and Assignment Procedures, the "Procedures").

## LIMITED OBJECTION

4.      Because each Issuer believes that it has terminated all of its Derivative Contracts with the Debtors, the Assumption and Assignment Procedures should not affect or apply to Issuers. However, out of an abundance of caution and to the extent that any Derivative

Contract has not been terminated, each Issuer objects to certain provisions of the Procedures

Motion.[1]

**A.      The Proposed Assumption and Assignment Procedures Fail to Require Assignees to Demonstrate Adequate Assurance of Future Performance**

5.      Each Issuer objects to the proposed Assumption and Assignment

Procedures because they fail to provide adequate assurance of future performance in accordance

with section 365 of the Bankruptcy Code.  Specifically, the Debtors fail to (i) adequately identify

who may be an assignee under the Assumption and Assignment Procedures, and (ii) explain

what may be assigned pursuant to the Assumption and Assignment Procedures.

6.      Paragraph 19(c) of the Procedures Motion states that:

> [A]ny Counterparty *will be deemed to have received adequate assurance of future performance* as required by section 365 of the Bankruptcy Code, notwithstanding any right of a Counterparty to consent to any assignment or any requirement in a Derivative Contract regarding the identity of assignees, *if* either (i) *an assignee or its credit support provider is a Qualified Assignee*, or (ii) the Debtors, after payment of any Cure Amounts, would no longer have any payment or delivery obligations under the Derivative Contract (other than upon exercise of an option exercisable in the Debtors'/assignee's discretion).

Procedures Motion at 10 (emphasis added).  In setting forth the essential elements of each

Assignment Notice, paragraph 19(b) does not require that the actual identity of an intended

assignee be included.  Rather, the Debtors' Assignment Notice need only state:

> (iii) either a statement that any assignee or its credit support provider shall have a Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or any equivalent thereof (a "Qualified Assignee"), or the identity of any proposed assignee and its credit support provider, if any, if neither is a Qualified Assignee . . .

---

[1] The Procedures Motion fails to state clearly that the proposed procedures do not apply to terminated contracts.  Each Issuer reserves all of its rights with respect to the terminated Derivative Contracts, including to argue that such contracts were properly terminated.

Procedures Motion at 9.

7.     There are certain infirmities with the intersection of paragraph 19(b) and 19(c).  First, the fact that the purported assignee has a certain credit rating alone cannot establish adequate assurance of future performance because, among other things, Derivative Contracts often structure additional party credit protections such as where the collateral can be held. Moreover, the failure of mere credit rating to protect against loss has been amply documented by the recent events in the capital markets, which require a counterparty to exercise more prudent business judgment by conducting a more comprehensive financial review.  Counterparties to Derivative Contracts are entitled to know to whom the contract is being assigned and to object to such assignment, regardless of the credit rating of the assignee.

8.     Moreover, the Debtors' representation that an intended assignee meets a certain credit rating threshold does not constitute "notice" of the identity of that assignee, and such a representation certainly does not satisfy the Debtors' burden under section 365 to provide adequate assurance of future performance of the relevant Derivative Contract.  Indeed, without knowing the identity of an assignee, each Issuer cannot corroborate the purported credit rating, analyze the attendant risks, engage in appropriate due diligence, or exercise its fiduciary duties to shareholders in connection with its new trading partner – the so-called "Qualified Assignee."  To the contrary, each Issuer's business judgment and fiduciary obligations will be wholly supplanted by the Debtors' judgment and representations with respect to an assignee's ability to perform on any given Derivative Contract in the future.  Each Issuer would have virtually no assurance of future performance beyond the Debtors' imprimatur.  Accordingly, paragraph 19(c) of the Procedures Motion should be deleted from the Assumption and Assignment Procedures,

and the Debtors should be required, at a minimum, to provide Counterparties with notice of the

Assignee's actual identity in each and every assignment.[2]

**B.    The Proposed Assumption and Assignment Procedures Fail to Allow Counterparties to Object on Any Grounds**

9.    The Debtors have failed to justify <u>how</u> or <u>why</u> they have limited the types

of objections that may be lodged by Counterparties to the assumption and assignment of

Derivative Contracts.    Counterparties to Derivative Contracts should be allowed to object to

assumption and assignment of such Derivative Contracts on <u>any</u> grounds, not merely those set

forth in the Procedures Motion.  Paragraph 19(e) states, in relevant part:

> To the extent that any Counterparty wishes to object on the
> grounds of (i) the proposed Cure Amount; (ii) the need to cure a
> default or early termination event, including, without limitation,
> any default or early termination event with respect to the Debtors
> and each of their respective affiliates, successors and assigns (a
> "<u>Default</u>") – other than a Default relating to the commencement of
> a case under the Bankruptcy Code by any of the Debtors, or the
> insolvency or financial condition of any of the Debtors, which
> Defaults need not be cured prior to assignment; or (iii) the
> adequate assurance of future performance under the applicable
> Derivative Contract if neither the assignee nor its replacement
> credit support provider (if any) is a Qualified Assignee, then such
> Counterparty must serve a written objection, so that such objection
> is <u>actually received</u> no later than five (5) business days after the
> date of service of the Assignment Notice . . .

Procedures Motion at 10.  Thus, the Procedures Motion allows Counterparties the right to object

to assumption and assignment of their Derivative Contracts on exactly three grounds:  proposed

Cure Amount, the need to cure a default or early termination event, and the adequate assurance

---

[2]  In addition, paragraph 19(b)(iii) appears to contemplate assignments to non-Qualified

Assignees, which should not be permitted.

of future performance if the assignee is not a Qualified Assignee.  Counterparties should be entitled to object to the assignment of Derivative Contracts on any grounds, including that the assignee cannot provide adequate assurance of future performance and that the arrangements for clearing and handling the transfer of collateral are not satisfactory.[3]

---

[3] For example, paragraph 19(d) of the Procedures Motion provides that:

> With respect to Derivative Contracts that may require the return of posted collateral as part of a Cure Amount, the Debtors will either return such collateral or, *if such collateral is no longer in the Debtors' possession, the Debtors will pay an amount equal to the value of such collateral* as of the business day prior to service of the Assignment Notice *based upon independent third-party pricing services, which payment will be considered in full satisfaction of the posted collateral.* The Debtors' proposed manner of returning any such collateral, including any amount proposed to be paid for collateral no longer in the Debtors' possession, shall be included in the Assignment Notice as a Cure Amount.

Procedures Motion at 10 (emphasis added).  Thus, if an Issuer's Derivative Contract requires the return of posted collateral, and the Debtors no longer possess such collateral, the Issuer's sole recourse is the assessment of an "independent third-party pricing service."  The Debtors' payment to an Issuer of an amount in accordance with such assessment shall be considered full satisfaction of the requirement to return the posted collateral.  The Assumption and Assignment Procedures do not provide Counterparties such as the Issuers with any rights whatsoever to object to third-party pricing services' valuations of posted collateral.  Thus, if an Issuer disagrees with the valuation of its posted collateral, it has no recourse under the Procedures Motion.  Accordingly, the Procedures Motion unduly prejudices each Issuer's rights to receive the full value of its posted collateral under the terms of its Derivative Contracts.  Each Issuer thus hereby

10.     Limiting the grounds for objection in this manner is inequitable and wholly improper; indeed, the Debtors do not even purport to state a reason for imposing such a limitation.  On the contrary, counterparties should be unequivocally permitted to object to the assumption and assignment of their Derivative Contracts, in accordance with the Bankruptcy Code and to preserve the rights they bargained for and are entitled to pursuant to the terms of the Derivative Contracts.  As such, the Court should modify the Assumption and Assignment Procedures to allow Counterparties the right to object to the assumption and assignment of their Derivative Contracts without limiting the bases of such objections.

## C.     Reservations of Rights

11.     The Procedures Motion provides that:

> The Debtors reserve all rights with respect to any alleged termination of any Derivative Contract, including the rights to assert that a Counterparty who did not terminate promptly after the commencement of these cases waived the right to terminate on account of the Debtors' bankruptcies or financial condition and/or certain alleged terminations were not effective because they were not exercised in accordance with the applicable contractual provisions.

Procedures Motion at 4 n.2.  Thus, the Procedures Motion appears to give the Debtors the unilateral ability to declare that a Counterparty improperly terminated a Derivative Contract, without providing any procedures for Counterparties to counter that they did, in fact, properly terminate their Derivative Contracts.  Thus, each Issuer hereby reserves all of its rights with

---

reserves its rights to object to the valuation of any independent third-party pricing service of any collateral posted by such Issuer.

respect thereto, including but not limited to its right to assert in response to such an allegation that it properly terminated any or all Derivative Contracts it had with the Debtors.

12.    The Procedures Motion sets forth not only the Assumption and Assignment Procedures, but, with regard to Terminated Derivative Contracts, the Termination and Settlement Procedures.  The Termination and Settlement Procedures provide, among other things, that: (i) a termination agreement may resolve and fix amounts owing between the Debtors and the counterparty; (ii) the Debtors are authorized, but not required, to release each Counterparty; and (iii) a termination agreement may permit the collateral or margin held by the Debtors or by the Counterparty to be liquidated or returned in accordance with the Derivative Contract, an applicable Master Netting Agreement, or the termination agreement.  Procedures Motion at 12.  However, each Issuer asserts that the flexibility accorded the Debtors by the Termination and Settlement Procedures should be without prejudice to any of that Issuer's legal or contractual rights pursuant to the Bankruptcy Code, the terms of each Issuer's Derivative Contracts, or otherwise.  In addition, each Issuer reserves its right to opt out of the Procedures as may be necessary to preserve its rights, and to have the Bankruptcy Court hear and decide any disputes related to the Derivative Contracts of the Procedures.

WHEREFORE, each Issuer requests that the Court modify the proposed Assumption and Assignment Procedures as set forth herein, preserve Each Issuer's rights in accordance with the relief sought herein, and order such other and further relief as may be just and proper.

Dated:    New York, New York
          November 28, 2008

CADWALADER, WICKERSHAM & TAFT LLP

*/s/ Howard R. Hawkins*
Howard R. Hawkins Jr.
Leslie W. Chervokas
John H. Thompson
One World Financial Center
New York, New York  10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666
howard.hawkins@cwt.com
leslie.chervokas@cwt.com
johnh.thompson@cwt.com

Attorneys for Exum Ridge CB0 2006-I; Exum Ridge CBO 2006-2; Exum Ridge CBO 2006-4; Exum Ridge CBO 2006-5; Exum Ridge CBO 2007-1; Exum Ridge CBO 2007-2; SGS HY Credit Fund I (Exum Ridge CBO 2006-3); Aviv LCDO 2006-1; Aviv LCDO 2006-2; Airlie LCDO I (Aviv LCDO 2006-3); Airlie LCDO II (Pebble Creek 2007-1); Pebble Creek LCDO 2006-1; Pebble Creek LCDO 2007-3; White Marlin CDO 2007-1; Airlie CDO I.; and Pebble Creek LCDO 2007-2, LLC