Melanie L. Cyganowski (MLC 7500)
OTTERBOURG, STEINDLER,
HOUSTON & ROSEN, P.C.
230 Park Avenue
New York, NY 10169
Telephone: (212) 661-9100
Facsimile: (212) 682-6104

Attorneys for The F. B. Heron Foundation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------x
In re:                                          :
                                                :
LEHMAN BROTHERS HOLDINGS,                       :   Case No. 08-13555 (JMP)
INC., *et al.*                                  :   (Jointly Administered)
                                                :
    Debtors.                                    :
                                                :
-----------------------------------------------x
In re:                                          :
                                                :
LEHMAN BROTHERS INC.,                           :   Case No. 08-01420 (JMP) SIPA
                                                :
    Debtor.                                     :
                                                :
-----------------------------------------------x

### OBJECTION OF THE F. B. HERON FOUNDATION TO THE NINETEENTH OMNIBUS NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The F. B. Heron Foundation (the "Foundation"), by its undersigned counsel, hereby submits this Objection (the "Objection") to the Nineteenth Omnibus Notice of Assumption and Assignment of Executory Contracts and Unexpired Leases (the "Notice"), dated November 20, 2008, in accordance with the *Order Granting Debtors' Motion Pursuant to Sections 105, 365, and 554(a) of the Bankruptcy Code to Establish Procedures for the Assumption and Assignment*

*or Rejections of Executory Contracts and Unexpired Leases of Non Residential Real Property and Abandonment of Related Personal Property*, dated October 3, 2008 entered in the Chapter 11 case of *In re Lehman Brothers Holdings, Inc., et al.* (Case No. 08-13555), as adopted and incorporated by reference in this SIPA proceeding by the *Order Adopting and Incorporating by Reference for Purposes of this Proceeding, an Order Establishing Procedures for Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases of Personal and Non-Residential Real Estate Property and Abandonment of Related Personal Property, as Entered in the Lehman Brothers Holdings Inc. et al. Chapter 11 Proceeding*, dated October 6, 2008, and respectfully states as follows:

## BACKGROUND

1.  The Foundation is a private not-for-profit grant-making institution dedicated to supporting organizations with a track record of building wealth within low-income communities. The Foundation was created in 1992 with the mission of helping people and communities to help themselves.

2.  The Foundation owns the rights in and to the "Community Investment Index" (the Licensor's Index") as well as other trademarks and proprietary rights in connection with the creation, marketing, advertising, promotion, offer, sale, purchase, distribution and settlement of certain products. In addition, the Foundation also has trademark, service mark, and/or other rights to the designations "The F.B. Heron Foundation" and "Licensor's Index" (collectively, the "Trademarks") and has copyright and other proprietary rights in the composition, selection, creation and calculation of Licensor's Index (the "Other IP Rights").[1]

---

[1] Initialized terms, not otherwise defined herein, are defined in that certain License Agreement, effective as of March 3, 2008, between LBI and the Foundation.

2

3. Pursuant to a License Agreement, effective as of March 30, 2008, by and between the Foundation (the "License Agreement"), as licensor, and Lehman Brothers, Inc. ("LBI"), as licensee, the Foundation granted to LBI an exclusive, worldwide license to the Licensor's Index, the Trademarks and Other IP Rights in connection with the creation, marketing and sale of LBI products for derivative transactions, swaps, option, structured notes and other financial products as determined by LBI, in its discretion (the "Products").

4. Among other provisions, the License Agreement provides for the payment of certain licensing fees (the "Licensing Fees") as set forth in section 4 of the License Agreement.

5. As of September 19, 2008, the date of commencement of this SIPA proceeding, LBI was indebted to the Foundation in at least the amount of $23,125.00 on account of accrued and unpaid Licensing Fees. In addition, there are other unpaid fees owed to the Foundation in at least the amount of $3,000 for license fees (representing 5 basis points) payable on the assets currently under management of LBI.

6. On September 20, 2008, this Court entered an order (the "Sale Order") in the chapter 11 cases of Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors") which, among other things, approved an Asset Purchase Agreement (the "Purchase Agreement") with Barclays Capital Inc. ("Barclays"), as purchaser.

7. In accordance with the Sale Order and Section 2.5 of the Purchase Agreement, Barclays was granted the right to designate certain of the Debtors' unexpired leases and executory contracts for assumption and assignment to Barclays.

8. Pursuant to the Notice, Barclays has designated a contract between The F.B. Heron Foundation and LBI, dated 03/03/08, as one of the contracts that it has requested the

Debtors to assume and assign to it. The Notice does not provide the title of the contract, but merely provides that the "Agreement Type" is "Index License". The agreement in question appears to be the License Agreement. In the Notice Barclays states that the cure cost (the "Cure Amount") to be paid pursuant to 11 U.S.C. § 365(b)(1)(A) in connection with the assumption and assignment of the License Agreement is zero dollars.

9. For all the reasons set forth herein, the Foundation respectfully disagrees and urges that the License Agreement cannot be assumed and assigned pursuant to section 365 of title 11 of chapter 11 of the United States Code (the "Bankruptcy Code"). In the alternative, the Foundation urges that if the Court determines that the License Agreement may be assumed and assigned, the Cure Amount in the minimum sum of $26,125.00 must be fully paid and satisfied.

## OBJECTION

### The License Agreement May Not be Assumed and Assigned

#### A. The License Agreement is a Non-Assignable Contract

10. It is well settled that when an executory contract is based upon personal services or skills, pursuant to section 365(c) of the Bankruptcy Code, such contract cannot be assumed or assigned to the debtor-in-possession without the consent of the non-debtor party. Specifically, section 365(c) of the Bankruptcy Code provides:

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
>
> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>
> (B) such party does not consent to such assumption or assignment.

11 U.S.C. § 365(c).

11. Under New York law (which governs the License Agreement), personal service contracts cannot be assigned. *In re Compass Van & Storage Corp.*, 65 B.R. 1007, 1010 (Bankr. E.D.N.Y. 1986) (omitting internal citation) ("The nonassignability imprint of personal service contracts is firmly established New York law."). *See also Jennings v. Foremost Dairies, Inc.*, 37 Misc. 2d 328, 340, 235 N.Y.S.2d 566, 578 (N.Y. Sup. Ct. 1962) (holding that an exclusive distributorship agreement was a personal service contract "based upon personal confidence, trust and faith"). The general rule has been extended to contracts with corporations, in addition to individuals. *Compass*, 65 B.R. at 1010.

12. Courts have found that professional services agreements, including financial advisory services, are personal contracts that are nonassignable without consent. *See Rosenfeld v. Black*, 445 F.2d 1337, 1344 n.10 (2d Cir. 1971), *superceded by statute on other grounds* (investment advisory services contract); *see also In re Tonry*, 724 F.2d 467, 469 (5th Cir. 1994) (legal services contract); *Kane v. Sesac, Inc.*, 54 F. Supp. 853, 858-59 (S.D.N.Y. 1943) (legal services contract).

13. The License Agreement is a personal services contract that cannot be assigned to Barclays without the Foundation's consent. The Foundation entered into the License Agreement with LBI after having conducted a thorough and exhausting search and, specifically, with the intention that certain specific individuals would work on the matter.

14. To date, Barclays has not shown that it has the proper personnel, or portfolio of clients, to properly market the Licensor's Index. Although one of the individuals from LBI who was working under the License Agreement may now work for Barclays, there is no guarantee that he has or will be assigned to work on this project or will continue to do so. Indeed, the other former LBI employee who worked with the License Agreement secured new

employment at a company other than Barclays approximately one month ago. The very essence of a personal services contract is the personnel retained. The value of the Licensor's Index to the Foundation is the ability of an entity (such as LBI) to promote the product. As noted, prior to entering into the License Agreement with LBI, the Foundation interviewed numerous other firms. The Foundation chose LBI based on LBI's specialized knowledge and skill, its client-portfolio, its commitment to the Community Investment Index, and the trust and confidence that the Foundation placed in LBI. To properly perform under the License Agreement with the Foundation, the counterparty must be committed to the promotion and marketing of the Licensor's Index. Barclays has shown no evidence that it intends to do so, or that it is even capable of doing so.

15.    Specifically, since LBI filed for Chapter 11, Barclays has shown no inclination or evidence of commitment that it intends to perform under the License Agreement. Barclays has not reached out to the Foundation in any way regarding the License Agreement or more particularly, to advise of their desire to perform under the License Agreement. To the contrary, when the Foundation's bills (and obligations under the License Agreement) were presented to Barclays, they were rebuffed and were not paid. The bills have remained unpaid since September. The failure to pay is reflective of Barclays' lack of interest in the Foundation's product. Simply stated, the Foundation has not received any indicia of interest from Barclays to date and its lack of performance suggests the contrary.

B.    **The License Agreement May Not be Assigned Because LBI is in Default Under the Contract**

16.    The License Agreement may not be assumed and assigned pursuant to Section 365 of the Bankruptcy Code because there is a non-monetary default under the agreement. Section 365(b)(1) of the Bankruptcy Code provides that if there has been a default

6

under an executory contract, the trustee may not assume the contract, except under certain circumstances. Section 365(b)(1) of the Bankruptcy Code provides in relevant part:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default *other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph*;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1) (emphasis added to show revisions to the section in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005).[2]

17.  Pursuant to section 3(c) of the License Agreement, the Foundation may terminate the agreement upon thirty (30) days written notice to LBI upon the occurrence of certain events. Specifically, section 3(c) of the License Agreement provides in pertinent part:

> The F.B. Heron Foundation may terminate this Agreement upon thirty (30) days' prior written notice to Licensee . . . (ii) if Lehman fails to use commercially reasonable efforts to diligently pursue the creation and distribution of Products pursuant to the agreement, or (iii) if no Products are created during the first six (6)

---

[2] Pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, section 365 was revised to provide, among other things, an exception to the provision that provides that the trustee may not assume an executory contract or unexpired lease if there has been a default if such default "arise[s] from any failure to perform nonmonetary obligations under an unexpired lease of real property". However, Collier on Bankruptcy has noted that personal property leases and nonlease executory contracts are "expressly excluded" from the revised section 365(b)(1)(A) of the Bankruptcy Code. *See* 3 *Collier on Bankruptcy*, ¶ 365.05[3][c] (Revised 15th ed. 2008).

months immediately proceeding the registration and publication of the Index. License Agreement, at § 3(c).

18. LBI has failed to perform under the License Agreement pursuant to section 3(c)(ii) and 3(c)(iii). First, LBI has "fail[ed] to use commercially reasonable efforts to diligently pursue the creation and distribution of Products pursuant to the agreement." In addition, it appears that few, if any, Products (as defined in the License Agreement) were created in the first six (6) months following the registration and publication of the Licensor's Index. Among other things, since the date of the License Agreement, LBI has not raised any monies or investment or created new accounts utilizing the Community Investment Index other than those provided directly by the Foundation. Further, there is no evidence of marketing of each of the Products by LBI and, indeed, it appears that LBI arbitrarily chose to completely forego marketing of at least one of the Foundation's products.

19. As such, pursuant to section 3(c), the License Agreement has effectively or *de facto* been terminated. *See In re Atlantic Computer Systems, Inc.*, 173 B.R. 844, 855 (S.D.N.Y. 1994) (holding that a terminated contract cannot be assumed); *see also In re Toyota of Yonkers, Inc.*, 135 B.R. 471 (Bankr. S.D.N.Y. 1992) (finding that if the debtor failed to operate its car dealership for seven consecutive days it would constitute a default incapable of cure because it was grounds for termination of the franchise agreement under applicable state law and the debtor could not undo this historical fact).

20. LBI's failure to comply with section 3(c) of the License Agreement constitutes a non-monetary default that cannot be cured, and thus precludes the Debtors' assumption and assignment of the agreement. In accordance with section 365(b)(1)(A) of the Bankruptcy Code, non-monetary defaults cannot be cured, and thus preclude the assumption of executory contracts with such defaults. *In re New Breed Realty Enters., Inc.*, 278 B.R. 314, 321

(Bankr. E.D.N.Y. 2002) (citing *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1092 (3d Cir. 1990)). In the event of a non-monetary default under an executory contract, the debtor may not assume the contract only if the default was "material" or if the default caused "substantial economic detriment". *In re Chapin Revenue Cycle Management, LLC*, 343 B.R. 728, 731 (Bankr. M.D. Fla. 2006) (omitting internal citations).

21. In the present case, there is a non-monetary material default under the License Agreement. Specifically, LBI has not complied with paragraph 3(c) of the License Agreement, which requires, among other things, for LBI to "use commercially reasonable efforts to diligently pursue the creation and distribution of Products". LBI's failure to comply with this provision of the License Agreement, namely, to market and distribute the Licensor's Index, is a material provision in the License Agreement as it is the very essence of the agreement. LBI's failure to market the Foundation's product thwarts the purpose of the License Agreement and does not further the goals of the Foundation, namely, to harness its investment portfolio to further economic development and create wealth in economically depressed areas. In short, LBI's failure to comply with this provision is a non-monetary default that cannot be retroactively cured, and precludes the Debtors from assuming and assigning the License Agreement to Barclays.

**No Adequate Assurance of Performance**

22. Bankruptcy Code section 365(f)(2) requires a debtor to provide adequate assurance of future performance as a condition to assumption and assignment of any contract. *See, e.g., In re Wills Motors, Inc.*, 133 B.R. 297, 302 (Bankr. S.D.N.Y. 1991). Specifically, section 365(f)(2) of the Bankruptcy Code provides, in pertinent part:

> (f)(2) The trustee may assign an executory contract or unexpired lease of the debtor, only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

23. A debtor has the burden of showing "adequate assurance of future performance." *In re M. Fine Lumber Co.*, 383 B.R. 565, 573 (Bankr. E.D.N.Y. 2008) (citation omitted). The determination of adequate assurance of future performance is a fact-intensive inquiry, based on many factors. *In re Lafayette Radio Elecs. Corp.*, 9 B.R. 993, 998 (Bankr. E.D.N.Y. 1981); *Pan Am. World Airways, Inc. v. Belize Airways Ltd. (In re Belize Airways)*, 5 B.R. 152, 156 (Bankr. S.D. Fla. 1980).

24. The Debtors have not satisfied their burden of showing adequate assurance of future performance by Barclays in this case. Barclays has not indicated who will be working on the Licensor's Index and whether they will be the same former employees of LBI that the Foundation retained. Further, the Debtors have not shown that Barclays will be able to provide the same trust and confidence that the Foundation derived from LBI. As a result, even if the Court finds that the License Agreement is not a personal service contract that cannot be assigned absent consent, it may not be assumed and assigned without adequate assurance of future performance.

**The Cure Amount Set Forth in the Notice is Not Correct**

25. The amount owed by LBI to the Foundation under the License Agreement is not less than $23,125.00 in the aggregate. The Foundation has tendered invoices to LBI aggregating this amount, however, these invoices have not been paid to date. Copies of these invoices are attached as Exhibit A hereto. In addition, there are other unpaid fees owed to the

Foundation in at least the amount of $3,000 (representing 5 basis points) for license fees payable on the assets currently under management of LBI.

26. In accordance with the Purchase Agreement, the Sale Order, and Sections 365(b) and (f) of the Bankruptcy Code, the Debtors must minimally (i) cure, or provide adequate assurance that they will promptly cure, any default in the executory contract, (ii) compensate, or provide adequate assurance that they will promptly compensate, the counterparty to the executory contract for any actual pecuniary loss to such party resulting from such defaults, and (iii) provide adequate assurance of future performance under such contract.

27. Accordingly, Barclays must cure all amounts owed to the Foundation under the License Agreement to be assumed and assigned to Barclays as contemplated by the Sale Order and the Purchase Agreement.

## **CONCLUSION**

**WHEREFORE**, the Foundation respectfully requests that the Court enter an order (i) denying the requested assumption and assignment of the License Agreement to Barclays **or in the alternative** (ii) awarding and directing the payment of at least the $26,125.00 as the Cure Amount by Barclays and grant such further relief as the Court deems just and proper.

Dated: December 1, 2008
New York, New York

Respectfully submitted,

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.

/s/ Melanie L. Cyganowski
Melanie L. Cyganowski (MLC 7500)
230 Park Avenue
New York, New York 10169
Telephone: (212) 661-9100
Facsimile: (212) 682-6104

Attorneys for The F. B. Heron Foundation

# EXHIBIT A

# Innovest
### STRATEGIC VALUE ADVISORS

675 Third Avenue, Suite 400
New York, NY 10017

# Invoice

| DATE | INVOICE # |
|---|---|
| 09/30/2008 | |

| BILL TO |
|---|
| F. B. Heron Foundation
100 Broadway 17th Floor
New York, NY 10005
ATTN: Luther Ragin |

| SHIP TO |
|---|
|  |

| TERMS |
|---|
| Due on receipt |

| DESCRIPTION | AMOUNT |
|---|---|
| July - September 2008: Quarterly Progress Reports based on contract dated May 15, 2008. | 20,000.00 |

Banking details for wire transfer:
Bank: JP Morgan Chase
Account No: 987014344765
Routing No: 021000021
Sort Code: CHASUS33

**Total**  $20,000.00

| Phone # | *Reports are not to be reproduced in part or in whole without the written permission of Innovest Strategic Value Advisors.* | Web Site |
|---|---|---|
| (212) 421-2000 | | www.innovestgroup.com |

# STANDARD &POOR'S

The McGraw-Hill Companies Federal I.D.: 13-1026995
DBA RETAIL BROKERAGE SERVICES

Invoice No.:
Acct. No: 9300131259
Ship No: 9300116627
Date: 10/01/08
Page: 1
Purchase Order:

**Services Provided To:**

0536
JASON BARON
LEHMAN BROTHERS
125 HIGH STREET - 16TH FLOOR
BOSTON MA 02110

NADINE DORVELUS
F B HERON FOUNDATION
100 BROADWAY - 17TH FLOOR
NEW YORK NY 10005

### Description of Services

| Service Started | Order No. | Number of Units | From Mo. Day Yr. | To Mo. Day Yr. | TOTAL AMOUNT |
|---|---|---|---|---|---|
| CIDOM  S&P LICENSE FEE FOR CUSTOM INDEX DOMESTIC  Annual License Fee Custom Index: 300 Constituent US Index | | | | | |
| 09/05 | | 1 | 12 01 08 | 02 28 09 | $3,125.00 |

FOR CUSTOMER SERVICE
PLEASE CALL (800) 852-1641

**TOTAL DUE: $3,125.00**

Special Instructions

Invoice Due and Payable as of: 08/01/08

---

# STANDARD &POOR'S

The McGraw-Hill Companies Federal I.D.:13-1026995
DBA RETAIL BROKERAGE SERVICES

Invoice No.:
Acct No.: 9300131259
Date: 10/01/08

0536
JASON BARON
LEHMAN BROTHERS
125 HIGH STREET - 16TH FLOOR
BOSTON MA 02110

WIRE PAYMENT INFORMATION
BANK OF AMERICA/CHICAGO ILLINOIS
STANDARD & POOR'S
ACCOUNT No. 81884-10104
ABA NO. 0260-0959-3
PLEASE INCLUDE INVOICE NUMBER

Standard & Poor's
2542 Collection Center Dr
Chicago IL 60693

$3,125.00 USD