2000 B&C

Execution Copy

# CONFIRMATION

Massachusetts Water Resources Authority
Charlestown Navy Yard
100 First Avenue
Boston, MA 02129

March 22, 2000

Ladies and Gentlemen:

The purpose of this letter agreement is to set forth the terms and conditions of the Transaction entered into between us on the Trade Date specified below (the "Transaction"). This letter agreement constitutes a "Confirmation" as referred to in the Master Agreement specified below.

The definitions and provisions contained in the 1992 ISDA U.S. Municipal Counterparty Definitions (as published by the International Swaps and Derivatives Association, Inc.) (the "Definitions"), are incorporated into this Confirmation. In the event of any inconsistency between those Definitions and this Confirmation, this Confirmation will govern.

1. This Confirmation supplements, forms part of, and is subject to the Master Agreement dated as of March 22, 2000 (the "Agreement") between you and us. All provisions contained in the Agreement govern this Confirmation except as expressly modified below.

2. The terms of the particular Transaction to which this Confirmation relates are as follows:

Party A: LEHMAN BROTHERS DERIVATIVE PRODUCTS INC.

Party B: MASSACHUSETTS WATER RESOURCES AUTHORITY

Notional Amount: $70,400,000 which shall reduce in such amounts and on such dates as set forth in Annex I hereto.

Trade Date: March 15, 2000

Effective Date: First Business Day of August, 2030

Termination Date: First Business Day of August, 2037

NYB 1120777.4

**FIXED AMOUNTS:**

| | |
|---|---|
| Fixed Rate Payer: | Party B |
| Fixed Rate Payer Payment Dates: | Semi-annually on the first (1st) Business Day of each February and August, commencing the first (1st) Business Day of February, 2031 and terminating on the Termination Date. |
| Fixed Rate Payer Period End Dates: | Semi-annually on the first (1st) Business Day of each February and August, commencing the first (1st) Business Day of February, 2031 and terminating on the Termination Date. |
| Fixed Rate: | 6.935%. |
| Fixed Rate Day Count Fraction: | 30/360 |

**FLOATING AMOUNTS:**

| | |
|---|---|
| Floating Rate Payer: | Party A |
| Floating Rate Payer Payment Dates: | Semi-annually on the first (1st) Business Day of each February and August, commencing the first (1st) Business Day of February, 2031 and terminating on the Termination Date. |
| Floating Rate Payer Period End Dates: | Semi-annually on the first (1st) Business Day of each February and August, commencing the first (1st) Business Day of February, 2031 and terminating on the Termination Date. |
| Floating Rate Option: | The PSA Municipal Swap Index (such index having been renamed the "BMA Municipal Bond Index" and referred to herein as the "BMA Index"). |

|  |  |
|---|---|
|  | If Municipal Market Data no longer publishes the BMA Index the Floating Rate Option shall be the J.J. Kenny Index (as defined in the Definitions as the "Kenny Index" and used herein as the "Kenny Index"). If neither the BMA Index nor the Kenny Index is published, Party A shall determine the rate on each Reset Date. The rate so determined by Party A shall equal the prevailing rate determined by Party A for bonds that are rated in the highest short-term rating category by Moody's Investors Service, Inc. and Standard & Poor's Ratings Services, A Division of The McGraw-Hill Companies, Inc. in respect of issuers most closely resembling the component issuers selected by Municipal Market Data and that are subject to tender by the holders thereof for purchase on not more than seven days' notice and the interest on which is (a) variable on a weekly basis, (b) excludable from gross income for federal income tax purposes under the Internal Revenue Code of 1986, as amended (the "Code"), and (c) not subject to an "alternative minimum tax" or similar tax under the Code, unless all tax-exempt bonds are subject to such tax. |
|  | If both Municipal Market Data and Kenny Information Systems, Inc. fail or are unable to make available the BMA Index and the Kenny Index, respectively, for any Reset Date, Party A shall determine the rate in the manner specified in the immediately preceding paragraph until Municipal Market Data makes available the BMA Index. |
| Reset Date: | Each Thursday, in the event the Floating Rate Option is the BMA Index or is determined by Party A, and each Tuesday, in the event the Floating Rate Option is the Kenny Index, subject to adjustment in accordance with the Following Business Day Convention. |
| Floating Rate Day Count Fraction: | Actual/Actual |
| Method of Calculation: | Weighted Average |

3

NYB 1120777.4

| | |
|---|---|
| Alternative Floating Rate Option: | For each Calculation Period, the Alternative Floating Rate. "Alternative Floating Rate" means a per annum rate, expressed as a decimal, equal to 70.00% of the arithmetic mean of the USD-LIBOR-BBA in effect for each Alternative Floating Rate Reset Date in the relevant Calculation Period, calculated by multiplying each USD-LIBOR-BBA by the number of Alternative Floating Rate Reset Dates such USD-LIBOR-BBA is in effect, determining the sum of such products and dividing such sum by the number of Alternative Floating Rate Reset Dates in the Calculation Period. |
| Designated Maturity: | Three Months |
| Alternative Floating Rate Reset Dates: | Quarterly, on the first day of each February, May, August and November on which commercial banks are open for business (including dealings in foreign exchange and foreign currency) in the City of London (each a "Reset Business Day") on and after the Alternative Floating Rate Date (and, if the Alternative Floating Rate Date is a day other than a Reset Business Day, the Reset Business Day next preceding the Alternative Floating Rate Date). |
| Alternative Floating Rate Day Count Fraction: | Actual/365 (Fixed) |
| Alternative Method of Averaging: | Unweighted Average |
| Alternative Floating Rate Date: | Upon the occurrence of an Alternative Floating Rate Date, the Floating Rate Option shall be the Alternative Floating Rate Option. An "Alternative Floating Rate Date" shall occur upon the occurrence of an Event of Taxability. |

NYB 11

Events of Taxability:

(1) In the reasonable opinion of Party A, by reason of enacted legislation, constitutional amendment, judicial decision or decree, or any order, ruling (public or private), regulation or official release of the Department of Treasury or the Internal Revenue Service, or any successors thereto, the relationship between the PSA Municipal Swap Index (such index having been renamed the "BMA Municipal Swap Index" and referred to herein as the "BMA Index") and USD-LIBOR-BBA (with a Designated Maturity of one month) has been substantially adversely affected (which shall mean that the 60-day average of the BMA Index as a percentage of the 60-day average of USD-LIBOR-BBA (with a Designated Maturity of one month) has exceeded 80% or the 90-day average of the BMA Index as a percentage of the 90-day average of USD-LIBOR-BBA (with a Designated Maturity of one month) has exceeded 75%) ; or

(2) The maximum marginal federal income tax rate applicable to income or interest from corporate and/or U.S. Government debt instruments is less than 25%.

3. Party B may, on any Business Day prior to the Termination Date hereof (the "Optional Termination Date"), terminate and cash settle this Transaction by providing prior written notice to Party A designating a day not earlier than the fifth (5th) Business Day following the day on which such notice is effective as the Optional Termination Date. The amount due with respect to any such termination shall be determined pursuant to Section 6 of the Master Agreement as if (a) the Optional Termination Date is the Early Termination Date, (b) Party B is the sole Affected Party (for all purposes other than the election to terminate), (c) this Transaction is the sole Affected Transaction, and (d) Market Quotation and Second Method are selected for purposes of Payments on Early Termination. Notwithstanding anything herein to the contrary, the parties will be obligated to pay any accrued amounts that would otherwise be due on the Optional Termination Date. For the purposes of this paragraph 3, any quotation received in connection with the determination of a Market Quotation shall not constitute a valid quotation for such determination unless the Reference Market-maker submitting such quotation shall have submitted, in connection with such quotation, a written certification stating that, upon request by Party A, such Reference Market-maker will accept assignment of this Transaction from Party B.

4. Payment Instructions:

Payments to Party A:

   Chase Manhattan Bank N.A., New York
   ABA #021000021
   A/C of Lehman Brothers Derivative Products Inc.
   A/C # 066-902622

Payments to Party B:

   State Street Bank and Trust Company
   ABA No. 011 000 028
   F/C Corporate Trust

5

NYB 1120777.4

09/26/2005 00:40 FAX                                                                                     045/062
08-13555-mg    Doc 2007-3    Filed 12/02/08    Entered 12/02/08 14:14:25    Exhibit C
Pg 6 of 9

A/C # 9903-990-1
Ref: MWRA 2000 B/C

5.    Please check this Confirmation carefully and immediately upon receipt so that errors or discrepancies can be promptly identified and rectified. Please confirm that the foregoing correctly sets forth the terms of the agreement between Party A and Party B with respect to the particular Transaction to which this Confirmation relates by either (a) signing in the space provided below and immediately returning a copy of the executed Confirmation to Party A and/or (b) sending a return communication to Party A, substantially to the following effect:

"We acknowledge receipt of your communication dated March 22, 2000 with respect to the interest rate swap transaction entered into on March 22, 2000 (the "Transaction") between Lehman Brothers Derivative Products Inc. and the Massachusetts Water Resources Authority with an amortizing Notional Amount of $70,400,000 and a Termination Date of the first Business Day of August, 2037, and confirm that such communication correctly sets forth the terms of our agreement relating to the Transaction described therein. Very truly yours, Massachusetts Water Resources Authority, By: (specify name and title of authorized official)."

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us.

Yours sincerely,

LEHMAN BROTHERS DERIVATIVE PRODUCTS INC.

By: _____
Name: _____
        VICE PRESIDENT
        LEHMAN BROTHERS DERIVATIVE
        PRODUCTS
Title: _____

Confirmed as of the
date first above written

MASSACHUSETTS WATER RESOURCES AUTHORITY

By: _____
Name: _____
Title: _____

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us.

Yours sincerely,

LEHMAN BROTHERS DERIVATIVE PRODUCTS INC.

By: _____

Name: _____

Title: _____

Confirmed as of the
date first above written

MASSACHUSETTS WATER RESOURCES AUTHORITY

By: _____
Name: ____Kenneth Wissman_____
Title: _____Treasurer_____

## ANNEX I
to Confirmation, dated March 22, 2000
between Lehman Brothers Derivative Products Inc. and
the Massachusetts Water Resources Authority

| Reduction Date | Notional Amount Reduction |
|---|---|
| 8/1/32 | $5,600,000 |
| 8/1/33 | $11,200,000 |
| 8/1/34 | $12,100,000 |
| 8/1/35 | $12,900,000 |
| 8/1/36 | $13,800,000 |
| 8/1/37 | $14,800,000 |
| Total: | $70,400,000.00 |