Execution Copy

# ISDA®

International Swaps and Derivatives Association, Inc.

# AMENDMENT

dated as of May 29, 2008

to the

# ISDA MASTER AGREEMENT
dated as of March 22, 2000

between

**LEHMAN BROTHERS DERIVATIVE PRODUCTS INC.**
("Party A")

and

**MASSACHUSETTS WATER RESOURCES AUTHORITY**
("Party B")

The parties have previously entered into that certain ISDA Master Agreement dated as of March 22, 2000 (the "Agreement"), which Agreement includes the Schedule (as amended from time to time) and all Confirmations exchanged between the parties confirming the Transactions (or Swap Transactions) thereunder. The parties have agreed to amend the Agreement in accordance with the terms of this Amendment (the "Amendment").

NOW THEREFORE, in consideration of the mutual agreements contained herein, and intending to be legally bound hereby, the parties hereto agree as follows:

1.   *Amendment of the Agreement*

As used in the Agreement (including any Confirmation relating thereto), as amended by this Amendment, the terms "ISDA Master Agreement", "Agreement", "this Agreement", "herein", "hereinafter", "hereof", "hereto" and other words of similar import, shall mean the Agreement as amended hereby, unless the context otherwise specifically requires.

The Agreement is hereby amended as follows, which amendments shall apply to all Transactions, including any existing and future Transactions, governed by the Agreement:

(a) ***Specified Entity.*** Part 1(a) of the Schedule to the Agreement is hereby amended by replacing the words "Financial Guaranty Insurance Company ('Insurer')" with the words "Not applicable".

(b) ***Additional Termination Events.*** Part 1(k) of the Schedule to the Agreement is hereby amended in its entirety to read as follows:

"(k) ***Additional Termination Event*** will apply. Each of the following shall constitute an Additional Termination Event:—

(i) Party B has either (1) no issues of rated senior debt or (2) one or more outstanding issues of rated senior debt, but it fails to have at least one of such issues with an unenhanced rating of at least (i) Baa1 or higher as determined by Moody's, (ii) BBB+ or higher as determined by S&P, (iii) BBB+ or higher as determined by Fitch Ratings Inc. ("Fitch") or (iv) an equivalent investment grade rating determined by a nationally-recognized rating service acceptable to both parties.

For the purpose of the foregoing Termination Event, the Affected Party shall be Party B.

(ii) Party A has either (1) no counterparty or similar rating or (2) one or more counterparty or similar ratings, but it fails to have at least one of such ratings of at least (i) Baa1 or higher as determined by Moody's, (ii) BBB+ or higher as determined by S&P, (iii) BBB+ or higher as determined by Fitch or (iv) an equivalent investment grade rating determined by a nationally-recognized ratings service acceptable to both parties.

For the purpose of the foregoing Termination Event, the Affected Party shall be Party A."

(c) Part 3(a) of the Schedule is hereby amended by deleting the phrase "with a copy to the Insurer:" and the related notice information.

(d) Part 3(c) of the Schedule is hereby amended in its entirety to read as follows:

"*(c)* ***Credit Support Document.*** Details of any Credit Support Document:—

In the case of Party A: Not applicable, provided that, from and after the substitution of LBSF for Party A hereunder pursuant to Part 4(h) of this Schedule, the Credit Support Document applicable in the case of Party A shall be Guarantee of Holdings in the form of Exhibit B to this Schedule.

In the case of Party B: Not applicable.

(e) Part 3(d) of the Schedule is hereby amended by replacing the word "Insurer" with the words "not applicable".

(f) Part 3(l) of the Schedule is hereby amended in its entirety to read as follows:

"'***Supplemental Resolutions***' means the Fifty-Fourth Supplemental Resolution adopted by Party B on February 13, 2008 and amended and supplemented on March 12, 2008."

(g) Part 4(b)(vii) of the Schedule to the Agreement is hereby deleted in its entirety.

(h)   Section 4(f) of the Agreement is hereby amended in its entirety to read as follows:

"(f) *Security and Source of Payment of Party B's Obligations.* Party B's regularly scheduled payment obligations under this Agreement and the Transaction entered into in the Confirmation dated the date hereof (the "Initial Transaction") (such payment obligations, the "Scheduled Amounts") shall be secured on a parity with the Massachusetts Water Resources Authority Multi-Modal Subordinated General Revenue Refunding Bonds, 2008 Series A and 2008 Series E Bonds (the "Bonds") by the same security as secures the Bonds as such security is set forth in Section 501(b) of the Original Resolution and Sections 8.1 and 8.4 of the applicable Supplemental Resolution. Party B represents that this Agreement constitutes a Qualified Swap, and that the Scheduled Amounts payable hereunder constitute Regularly Scheduled Qualified Swap Payments, payable in accordance with Section 506 of the Original Resolution. Party B further represents that all payments due on early termination of this Agreement pursuant to Section 6 hereof (other than Unpaid Amounts) shall be payable from the Commonwealth Obligation Fund pursuant to Section 512 of the Original Resolution. Capitalized terms used in this Section 4(f) and not defined herein have the respective meanings given such terms in the Covered Indenture."

2.   *Initial Transaction No Longer Insured.* Party A and Party B hereby acknowledge and agree that, as a result of the release of the Surety Bond issued by Financial Guaranty Insurance Company pursuant to the form attached as Exhibit A hereto, the Transaction entered into between the parties on March 22, 2000 and governed by the Agreement (the "Initial Transaction") is not an insured transaction.

3.   *Representations.* Each party represents to the other party that:

(a)   all representations contained in the Agreement, as amended, are true and accurate as of the date of this Amendment and that such representations are deemed to be given or repeated by each party, as the case may be, on the date of this Amendment.

(b)   it has the power to execute and deliver this Amendment and to perform its obligations under this Amendment and has taken all necessary action to authorize such execution, delivery and performance;

(c)   it is entering into this Amendment as principal;

(d)   the person signing this Amendment on its behalf is duly authorized to do so;

(e)   it has obtained all governmental and other consents and authorizations that it is required to obtain in connection with its execution and delivery of this Amendment, all such consents and authorizations are in full force and effect and all conditions of any such consents and authorizations have been complied with;

(f)   the execution, delivery and performance of this Amendment will not violate or conflict with any law, ordinance, charter, by-law or rule applicable to it, any order or judgment of any court or other agency of government applicable to it or any of its assets or any contractual restriction binding on or affecting it or any of its assets;

(g)   its obligations under this Amendment constitute its legal, valid and binding obligations, enforceable in accordance with their respective terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to

enforceability, to equitable principles of general application, regardless of whether enforcement is sought in a proceeding in equity or at law);

(h) it has made its own independent decision to enter into this Amendment based upon its own judgment and upon advice from such advisors as it has deemed necessary;

(i) no Potential Event of Default, Event of Default or Termination Event with respect to it has occurred and no such event or circumstance would occur as a result of its entering into or performing its obligations under this Amendment;

(j) it is not relying on any communication (written or oral) of the other party as a recommendation to enter into this Amendment; it being understood that explanations related to the terms and conditions of this Amendment shall not be considered a recommendation to enter into this Amendment;

(k) it is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts, the terms and conditions of this Amendment; and

(l) the other party is not acting as a fiduciary for or as an advisor to it in respect of this Amendment.

4. ***Documents to be Delivered.*** The following documents shall be delivered by Party B to Party A promptly upon execution of this Amendment:

> (i) an opinion of counsel to Party B with respect to the enforceability of each of this Amendment and the Agreement, as amended hereby, against Party B and confirming the security and source of payment for the Initial Transaction and that the Initial Transaction remains a "Qualified Swap" under the Covered Indenture; and
>
> (ii) evidence reasonably satisfactory to Party A of the (i) authority of Party B to enter into this Amendment and (ii) the authority and genuine signature of the individual signing this Amendment on behalf of Party B to execute the same.

5. ***Miscellaneous***

(a) ***Definitions.*** Capitalized terms used in this Amendment and not otherwise defined herein shall have the meanings specified for such terms in the Agreement.

(b) ***Entire Agreement.*** This Amendment constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings (except as otherwise provided herein) with respect thereto.

(c) ***Amendments.*** No amendment, modification or waiver in respect of the matters contemplated by this Amendment will be effective unless made in accordance with the terms of the Agreement.

(d) ***Counterparts.*** This Amendment may be executed and delivered in counterparts (including by facsimile transmission) each of which will be deemed an original.

(e)     *Headings.* The headings used in this Amendment are for convenience of reference only and are not to affect the construction of or to be taken into consideration in interpreting this Amendment.

(f)     *Governing Law.* This Amendment will be governed by and construed in accordance with the laws of the State of New York (without reference to choice of law doctrine).

(g)     *Agreement Ratified and Confirmed.* Except as expressly amended by this Amendment, the Agreement is in all respects ratified and confirmed and the terms, provisions and conditions thereof are and shall remain in full force and effect. From and after the date hereof all references to the Agreement shall mean such agreement as amended by the terms hereof.

Exhibit A

Certificate

Financial Guaranty Insurance Company
125 Park Avenue
New York, NY 10017

Massachusetts Water Resources Authority
Charlestown Navy Yard
100 First Avenue
Boston, MA 02129

Re:   Release of Surety Bond #00010199 relating to the Transaction defined below (the "Policy")

The undersigned has entered into an ISDA Master Agreement and Schedule thereto, dated as of March 22, 2000 (collectively, the "Agreement"), with Massachusetts Water Resources Authority (the "Authority") and a Confirmation, dated March 22, 2000, of a Transaction with an original Trade Date of March 15, 2000 and an Effective Date of the first Business Day of August, 2030. Certain of the Authority's payment obligations under the Agreement with respect to the Transaction are insured by Financial Guaranty Insurance Company ("FGIC") pursuant to the Policy.

As of May 29, 2008, the undersigned hereby releases FGIC from its obligations under the Policy and agrees that the Policy will be deemed irrevocably relinquished by the undersigned, will have no further force or effect and will no longer insure any of the Authority's payment obligations under the Agreement with respect to the Transaction. The undersigned certifies that the original Policy has been lost or destroyed, that a diligent search has been made and that its existence or whereabouts is unknown. The Transaction shall no longer be deemed to be an insured transaction and FGIC has no rights under the Agreement and the Transaction, including but not limited to any right to consent to amendments to the Agreement and the Transaction.

Dated: May 29, 2008

LEHMAN BROTHERS DERIVATIVE
PRODUCTS INC.

By:_____
Name:
Title:

The undersigned acknowledges the foregoing and receipt of a copy of the Policy for cancellation.

FINANCIAL GUARANTY INSURANCE COMPANY

By:_____
Name:
Title:

Acknowledged:

MASSACHUSETTS WATER RESOURCES AUTHORITY

By: _____
Name: *THOMAS J. DURKIN*
Title: *TREASURER*

NYK 1161739-3.071370.0011                                              7

**IN WITNESS WHEREOF,** the parties have executed this Amendment on the respective dates specified below with effect from the date specified in this Amendment.

| LEHMAN BROTHERS DERIVATIVE PRODUCTS INC. | MASSACHUSETTS WATER RESOURCES AUTHORITY |
|---|---|
| By: _____<br>Name:<br>Title: | By: *[signature]*<br>Name: THOMAS J. DURKIN<br>Title: TREASURER |