Presentment Date and Time: December 16, 2008 at 12:00 p.m. noon (Prevailing Eastern Time)
Objection Deadline: December 16, 2008 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (Only if Objection Filed): December 22, 2008 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Alfredo R. Pérez
Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
| | : | |
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |
| | : | |
---------------------------------------------------------------------x

**NOTICE OF PRESENTMENT OF APPLICATION AND
PROPOSED ORDER PURSUANT TO SECTIONS 327(a) AND 328(a)
OF THE BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION
TO EMPLOY AND RETAIN BLOOMER deVERE GROUP AVIA, INC. AS
DEBTORS' BROKER IN CONNECTION WITH THE SALES OF DEBTORS'
AVIATION ASSETS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

PLEASE TAKE NOTICE that the annexed application (the "Application") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (collectively, the "Debtors"), for authorization to employ Bloomer deVere Avia Group, Inc. as its broker in connection with the sales of the Debtors' aviation assets, all as more fully described in the Application, will be presented to the Honorable James M. Peck, United States Bankruptcy Judge, for approval and signature on **December 16, 2008 at 12:00 p.m. noon (Prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that unless a written objection to the proposed order, with proof of service, is served and filed with the Clerk of the Court and a courtesy copy is delivered to the Bankruptcy Judge's chambers and the undersigned so as to be received by **December 16, 2008 at 11:00 a.m. (Prevailing Eastern Time)**, there will not be a hearing and the order may be signed.

PLEASE TAKE FURTHER NOTICE that if a written objection is timely filed, a hearing (the "Hearing") will be held to consider the Application and the Order on **December 22,**

**2008 at 10:00 a.m.** (**Prevailing Eastern Time**) before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: December 5, 2008
    New York, New York

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for the Debtors
and Debtors in Possession

Presentment Date and Time: December 16, 2008 at 12:00 p.m. noon (Prevailing Eastern Time)
Objection Deadline: December 16, 2008 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (Only if Objection Filed): December 22, 2008 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Alfredo R. Pérez
Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                        :

**In re**                      :         **Chapter 11 Case No.**
                          :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :       **08-13555 (JMP)**
                          :

               **Debtors.**      :        **(Jointly Administered)**
                          :
                          :

-------------------------------------------------------------------x

**APPLICATION OF THE DEBTORS**
**PURSUANT TO SECTIONS 327(a) AND 328(a) OF**
**THE BANKRUPTCY CODE AND RULE 2014(a) OF THE FEDERAL**
**RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION**
**TO EMPLOY AND RETAIN BLOOMER deVERE GROUP AVIA, INC. AS**
**DEBTORS' BROKER IN CONNECTION WITH THE SALES OF DEBTORS'**
**AVIATION ASSETS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this Application to employ

Bloomer deVere Group Avia, Inc. ("Bloomer deVere") as the Debtors' broker in connection

with the sale of its aviation assets and respectfully represent:

## Background

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").   The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").   The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").   A trustee appointed under SIPA is administering LBI's estate.

## Jurisdiction

4.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b).   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Lehman's Business

5.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.   For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

6.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

### Relief Requested

7.      By this Application, pursuant to sections 327(a) and 328(a) of the

Bankruptcy Code and Bankruptcy Rule 2014(a), it is requested that the court authorize the

Debtors to retain and employ Bloomer deVere as the Debtors' broker in connection with the

sales of the Debtors' aviation assets *nunc pro tunc* to the Commencement Date.   The Debtors'

knowledge, information, and belief regarding the matters set forth in this Application are based

on and made in reliance upon the Declaration of Mark Bloomer (the "Bloomer Declaration"),

sworn to on December 5, 2008, a copy of which is attached hereto as Exhibit A. The proposed

terms and conditions of Bloomer deVere's retention are set forth in Aircraft Marketing

Agreements ("Marketing Agreements") between Bloomer deVere and CES Aviation LLC, CES

Aviation V LLC, and CES Aviation IX LLC.   Copies of the Marketing Agreements are

attached to the Bloomer Declaration.

### Debtors' Aviation Assets

8.      CES Aviation LLC, CES Aviation V LLC, and CES Aviation IX LLC

(the "Aviation Subsidiaries"), all Delaware limited liability companies, are direct, wholly-

owned subsidiaries of LBHI that filed for protection under chapter 11 on October 5, 2008.[1]

The principal business of the Aviation Subsidiaries is to hold title to certain aircraft of the

---

[1] Non-debtor Lehman affiliates own additional aviation assets.

Debtors (collectively, the "<u>Aircraft</u>").   The Aircraft were used to facilitate business transportation for Lehman employees prior to the commencement of these chapter 11 cases.

        9.      Prior to the Commencement Date, in June 2008, the Debtors initiated a competitive request-for-proposal process with six brokers for the sale of the Aircraft.   The brokers were selected based on a market-knowledge survey, their aviation-industry sales experience, references, and proposed commission fees.   The proposed commission fees among the brokers varied by more than $100,000.   The Debtors ultimately selected Bloomer deVere as its broker.   The Debtors felt Bloomer deVere best satisfied all of the foregoing criteria. Bloomer deVere also submitted the bid with the lowest commission rate.

        10.     CES Aviation LLC and Bloomer deVere entered an Aircraft Marketing Agreement dated as of September 24, 2008 (the "<u>G-IV Marketing Agreement</u>"), whereby Bloomer deVere agreed to assist CES Aviation LLC in the sale of its aircraft, a Gulfstream Aerospace G-IV bearing manufacturer's serial number 1448 and U.S. registration mark N300LB (the "<u>G-IV</u>").[2]   On November 5, 2008 this Court authorized the sale of the G-IV to Pegasus AV, LLC for the purchase price in the amount of $24,892,000 (the "<u>G-IV Sale</u>"). Pursuant to the terms of the G-IV Marketing Agreement, Bloomer deVere is owed a commission fee in the amount of $158,500 in connection with the G-IV Sale.   In the order approving the G-IV Sale, the Court authorized the Debtors to pay the commission fee in the amount of $158,500 to Bloomer deVere upon approval of Bloomer deVere's retention.[3]

---

[2]  Bloomer deVere has also entered similar engagement agreements with non-debtor Lehman affiliates CES Aviation II LLC and CES Aviation VIII LLC.   This Application does not concern those agreements.

[3]  The original order proposed by the Debtors with respect to the G-IV authorized the Debtors to pay Bloomer deVere a commission fee in the amount of $158,500.   At the request of the U.S. Trustee, the Debtors amended the proposed order to state that the Debtors were authorized to pay Bloomer deVere's fees only upon the Court's approval of Bloomer deVere's retention.   Docket No. 1359.   The U.S. Trustee thereafter agreed to Bloomer deVere's retention being approved upon presentment.

11.     CES Aviation IX LLC and Bloomer deVere entered an Aircraft Marketing Agreement dated as of September 24, 2008 (the "Falcon 50 Marketing Agreement"), whereby Bloomer deVere agreed to assist CES Aviation LLC in the sale of its aircraft, a Dassault model Falcon 50 bearing manufacturer's serial number 179 and U.S. registration mark N232PR (the "Falcon 50").   On December 3, 2008 this Court authorized the sale of the Falcon 50 to Peregrine Aviation Services, Inc. for the purchase price in the amount of $6,200,000 (the "Falcon 50 Sale").   Pursuant to the terms of the Falcon 50 Marketing Agreement, Bloomer deVere is owed a commission fee in the amount of $88,000 in connection with the Falcon 50 Sale.   In the order approving the Falcon 50 Sale, the Court authorized CES Aviation IX LLC to pay the commission fee in the amount of $88,000 to Bloomer deVere upon approval of Bloomer deVere's retention.

12.     CES Aviation V LLC and Bloomer deVere entered an Aircraft Marketing Agreement dated as of July 23, 2008 (the "Sikorsky S-76C+ Marketing Agreement").   Pursuant to the Sikorsky S-76C+ Marketing Agreement, Bloomer deVere is assisting CES Aviation V LLC in the sale of its aircraft, a Sikorsky S-76C+ bearing manufacturer's serial number 760486 and U.S. registration mark N151LB (the "Sikorsky S-76C+").   As of the date of this Application, CES Aviation V LLC has not entered any agreement to sell the Sikorsky S-76C+ and no amount is due to Bloomer deVere in connection with the Sikorsky S-76C+.   *See* Bloomer Declaration ¶ 8.

## Professional Services Performed

13.     Bloomer deVere is an independently owned company that focuses its services on representing aircraft buyers and sellers in project analysis and transaction execution.   For over twenty-five years, Bloomer deVere has executed over 400 transactions

from office locations that traverse nine time-zones, from California to Monaco.   Bloomer

deVere's clients include, among others, Warner Communications, Amgen, Pacificare, Majestic

Realty Co., KB Home, Phelps Dodge/Freeport Macmoran, The Hilton Hotel Group, Oaktree

Capital, Unocal, and E*Trade.   *See* Bloomer Declaration ¶ 3.

        14.     Pursuant to the Marketing Agreements, Bloomer deVere undertook a

marketing campaign to solicit offers for the Aircraft.   To that end, Bloomer deVere has

provided and continues to provide services including, but not limited to the following:

Advertising:
- Generate print media layouts and place these layouts in aviation business marketing publications.
- List the aircraft with global business aviation marketing services.
- Utilize websites and web-based email blast services.

Prospect Validation:
- Screen all inquiries to validating authenticity and prospect eligibility.
- Provide listing materials.

Prospect and Market Reporting:
- Maintain Prospect Reports that track all inquiries, communications, and Letter of Intent ("LOI") activities.
- Provide Market Reports that track available, competing aircraft, aircraft price trends, and aircraft valuations.

LOI Negotiation, Review, and Presentation:
- Negotiate acceptable LOI format.
- Review proffered LOIs for an acceptable price, terms, and content.
- Act as liaison between potential buyers and attorneys for the Aviation Subsidiaries.
- Present such LOIs to the Aviation Subsidiaries for consideration.
- Coordinate the counter offer process and the delivery of the deposit to an escrow agent.
- Coordinate offer rejection.

Visual Inspection Coordination:
- Coordinate aircraft availability.
- Coordinate access to facility.
- Provide representation onsite to manage visual inspection of aircraft.
- Provide access to maintenance records as requested.

Long-form Contract Initiation:
- Introduce potential buyers and the attorneys for the Aviation Subsidiaries.
- Provide support during contract preparation and exchange.

Pre-purchase Inspection Monitoring:
- Provide on-site representation during pre-purchase inspections and while negotiating discrepancy repair provisions.
- Generate and manage activity reports detailing any discrepancy discovery and repair.
- Coordinate delivery of aircraft to its respective delivery location.

Acceptance and delivery:
- Ensure the seller, the aircraft, and all items identified in the final contract are in compliance prior to closing.
- Oversee document exchange (i.e., contracts, invoices, escrow documents, etc.).
- Assist the Aviation Subsidiaries with deregistration, insurance, and any other subscription or contract cancellation pertaining to the respective aircraft.
- Coordinate closing location requirements (i.e., aircraft parking, office, telephone, documents, etc.).
- Provide on-site representation during closing.

*See* Bloomer Declaration ¶ 9.

15.     Bloomer deVere drew upon its extensive experience and expertise in marketing the Aircraft.   Bloomer deVere assisted the Debtors in conducting a competitive bidding process for the sale of the G-IV and the Falcon 50, by which the Debtor received a range of bids from various interested parties.   This bidding process resulted in the G-IV Sale and the Falcon 50 Sale.   Bloomer deVere continues to work diligently to find a buyer for the Sikorsky S-76C+.   *See* Bloomer Declaration at ¶ 10.

16.     The services of Bloomer deVere were and continue to be necessary to enable the Debtors to maximize the value of the Aircraft for the benefit of their estates, creditors, and all parties in interest.   The services rendered by Bloomer deVere were and are not duplicative of any other party retained by the Debtors.   Bloomer deVere is well qualified to

execute the duties set forth in the Marketing Agreements, and the Debtors knows of no reason

why Bloomer deVere should not be retained.

### Proposed Arrangement for Compensation

17.     Bloomer deVere's proposed compensation ("Proposed Compensation")

is set forth according to the terms of the Marketing Agreements.

The G-IV

18.     The G-IV Marketing Agreement provides that CES Aviation LLC will

pay Bloomer deVere a sales commission in accordance with the following schedule:

- Flat Rate Fee of $136,500 if the purchase price is less than $23,500,000.
- Flat Rate Fee of $147,500 if the purchase price is between $23,500,000 and $24,500,000.
- Flat Rate Fee of $158,500 if the purchase price is $24,500,001 or greater.

The G-IV Marketing Agreement ¶ 7.

19.     As noted above, Bloomer deVere is owed a commission fee of $158,500

in connection with the G-IV Sale.   Pursuant to section 8 of the G-IV Marketing Agreement,

CES Aviation LLC is also obligated to reimburse Bloomer deVere for all pre-approved travel

and for all other pre-approved routine costs associated with the marketing and sale of the G-IV.

The Falcon 50

20.     The Falcon 50 Marketing Agreement provides that CES Aviation IX

LLC will pay Bloomer deVere a sales commission in accordance with the following schedule:

- Flat Rate Fee of $77,000 if the purchase price is less than $6,000,000.
- Flat Rate Fee of $88,000 if the purchase price is between $6,000,000 and $7,000,000.
- Flat Rate Fee of $99,000 if the purchase price is $7,000,001 or greater.

The Falcon 50 Marketing Agreement ¶ 7.

21.     As noted above, Bloomer deVere is owed a commission fee of $88,000

in connection with the Falcon 50 Sale.   Pursuant to section 8 of the Falcon 50 Marketing

Agreement, CES Aviation IX LLC is also obligated to reimburse Bloomer deVere for all pre-approved travel and for all other pre-approved routine costs associated with the marketing and sale of the Aircraft.

The Sikorsky S-76C+

22.    The Sikorsky S-76C+ Marketing Agreement provides that CES Aviation V LLC will pay Bloomer deVere a sales commission in accordance with the following schedule:

- A Flat Rate Fee of $62,500.
- If the date of sale is on or before March 1, 2009, an additional payment of 20% of the above sales commission equal to $12,500 will be paid to Bloomer deVere.

The Sikorsky S-76C+ Marketing Agreement ¶ 7.

23.    Pursuant to section 8 of the Sikorsky S-76C+ Marketing Agreement, CES Aviation IX LLC is also obligated to reimburse Bloomer deVere for all pre-approved travel and for all other pre-approved routine costs associated with the marketing and sale of the Aircraft.   As noted above, as of the date of this Application, no amount is due to Bloomer deVere under the Sikorsky S-76C+ Marketing Agreement.   *See* Bloomer Declaration ¶ 17.

**Approval of Proposed Arrangement for
Compensation Pursuant to Section 328(a) of the Bankruptcy Code**

24.    Section 328 of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327. . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.   11 U.S.C §328(1).   Thus, section 328(a) permits the Court to approve the terms of the Marketing Agreements, including the Proposed Compensation.

25.     As recognized by numerous courts, Congress intended in section 328(a) to enable a debtor to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions."   11 U.S.C. § 328(a).   *See Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862-3 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").

26.     The Debtors submit that the fee structures set forth in the Marketing Agreements contain reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code.   The Proposed Compensation appropriately reflects (i) the nature of the services provided by Bloomer deVere and (ii) the fee structure provisions typically utilized by Bloomer deVere and other leading aviation marketing and consulting firms, which do not bill their clients on an hourly basis and generally are compensated on a transactional basis.   The fee structures are also consistent with Bloomer deVere's normal and customary billing practices.   *See* Bloomer Declaration ¶ 18.

27.     Accordingly, the Debtors request that the Court approve the Proposed Compensation as detailed herein, without requiring Bloomer deVere to file fee applications or fee statements with the Court.

## Disinterestedness of Professionals

28.     In connection with this Application, Bloomer deVere undertook to determine whether it had any conflicts or relationships that might cause it not to be

disinterested or to hold or represent an interest adverse to the Debtors.   In connection with this inquiry, Bloomer deVere obtained from the Debtors and/or its representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases.   Bloomer deVere researched its electronic files and records to determine its connections with the Debtors and any potential parties in interest.   Based on the results of the conflict search conducted to date, neither Bloomer deVere nor any member or employee thereof has any connection with the Debtors, their creditors, other parties in interest, their respective attorneys, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee, except as may be disclosed or otherwise described in the Bloomer Declaration.   *See* Bloomer Declaration ¶ 19.

29.    The Debtors submit that Bloomer deVere is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.   The Debtors understand that Bloomer deVere will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, Bloomer deVere will supplement its disclosure to the Court.   *See* Bloomer Declaration ¶ 20.

## The Relief Requested is Appropriate

30.    Based on the foregoing, the Debtors submit that the relief requested is necessary and appropriate, is in the best interests of their estates and creditors, and should be granted in all respects.

## Notice

31.    No trustee or examiner has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on September 22, 2008 governing case management and administrative procedures for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the

Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases.   The Debtors submit that no other or further notice need be provided.

32.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:   December 5, 2008
New York, New York

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                    :
In re                                               :        **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*        :        **08-13555 (JMP)**
                                                    :
                          **Debtors.**              :        **(Jointly Administered)**
                                                    :
                                                    :
-------------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS
327(a) AND 328(a) OF THE BANKRUPTCY
CODE AND RULE 2014 AUTHORIZING THE RETENTION
AND EMPLOYMENT OF BLOOMER deVERE GROUP AVIA, INC. AS
DEBTORS' BROKER IN CONNECTION WITH THE SALES OF DEBTORS'
AVIATION ASSETS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

Upon consideration of the application, dated December 5, 2008 (the

"Application"),[1] of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the

"Debtors"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") for authorization to employ and retain Bloomer deVere Group Avia, Inc.

("Bloomer deVere") as the Debtors' broker in connection with the sales of the Debtors'

aviation assets *nunc pro tunc* to the Commencement Date, all as more fully described in the

Application; and upon the Declaration of Mark Bloomer, the President of Bloomer deVere (the

"Bloomer Declaration"), filed in support of the Application; and the Court being satisfied,

based on the representations made in the Application and the Bloomer Declaration, that

Bloomer deVere does not hold or represent an interest adverse to the Debtors' estates and that

---

[1] Capitalized terms that are used but not defined in this order have the meanings ascribed to them in the Application.

Bloomer deVere is a "disinterested person" within the meaning of section 101(14) of the

Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code; and the Court having

jurisdiction to consider the Application and the relief requested therein in accordance with 28

U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the

Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Application and the relief requested therein being

a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having

been provided in accordance with the procedures set forth in the order entered September 22,

2008 governing case management and administrative procedures [Docket No. 285] to (i) the

United States Trustee for the Southern District of New York; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the

Internal Revenue Service; (v) the United States Attorney for the Southern District of New

York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing

that no other or further notice need be provided; and the Court having found and determined

that the relief sought in the Application is in the best interests of the Debtors, their estates and

creditors, and all parties in interest and that the legal and factual bases set forth in the

Application establish just cause for the relief granted herein; and after due deliberation and

sufficient cause appearing therefor, it is

      ORDERED that the Application is approved; and it is further

      ORDERED that pursuant to sections 327(a) and 328(a) of the Bankruptcy Code,

the Debtors are hereby authorized to employ and retain Bloomer deVere as the Debtors' broker

in connection with the sales of the Debtors' aviation assets *nunc pro tunc* to the

Commencement Date on the terms set forth in the Application; and it is further

ORDERED that Bloomer deVere shall receive compensation as set forth in the

Application and the Marketing Agreements without further order of the Court.

Dated:  December ___, 2008
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**Bloomer Declaration**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                  :

**In re**                      :         **Chapter 11 Case No.**
                                  :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :      **08-13555 (JMP)**
                                  :

          **Debtors.**        :         **(Jointly Administered)**
                                  :
                                  :
-------------------------------------------------------------------x

**DECLARATION OF MARK BLOOMER IN**
**SUPPORT OF DEBTORS' APPLICATION PURSUANT TO**
**SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AND**
**RULE 2014 FOR AN ORDER AUTHORIZING THE RETENTION**
**AND EMPLOYMENT OF BLOOMER deVERE GROUP AVIA, INC. AS**
**DEBTORS' BROKER IN CONNECTION WITH THE SALES OF DEBTORS'**
**AVIATION ASSETS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

        Mark Bloomer of Bloomer deVere Group Avia, Inc. hereby declares, pursuant to

section 1746 of title 28 of the United States Code, as follows:

        1.     I am the President of Bloomer deVere Group Avia, Inc. ("Bloomer deVere"),

which has its principal office at 855 Aviation Drive, Suite 205, Camarillo, California 93010.   I

am authorized to execute this declaration (the "Declaration") on behalf of Bloomer deVere.

Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth

herein.

        2.     This Declaration is being submitted in support of the application dated

December 5, 2008 (the "Application") of Lehman Brothers Holdings Inc. ("LBHI") and its

affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure Bankruptcy Code (the "Bankruptcy Rules") for authorization to employ and retain Bloomer deVere as the Debtors' broker in connection with the sale of the Debtors' aircraft (collectively, the "Aircraft"), *nunc pro tunc* to the date on which these chapter 11 cases commenced.

3.      As a recognized brand in the aviation market, Bloomer deVere is well qualified and uniquely able to provide the services required by the Debtors.   Bloomer deVere is an independently owned company that has represented aircraft buyers and sellers from project analysis to transaction execution.   For over twenty-five years, Bloomer deVere has executed over 400 transactions from office locations that traverse nine time-zones, from California to Monaco.   Bloomer deVere's clients include, among others, Warner Communications, Amgen, Pacificare, Majestic Realty Co., KB Home, Phelps Dodge/Freeport Macmoran, The Hilton Hotel Group, Oaktree Capital, Unocal, and E*Trade.

4.      As the President of Bloomer deVere, I personally have been and will be performing broker services for the Debtors in connection with the sales of the Aircraft.   I began my career in new aircraft sales at Cessna Aircraft Company.   I then established Bloomer deVere, the first business aviation services firm to provide impartial representation for buyers as well as sellers of business aircraft.   I have developed a wide network of contacts within the aviation industry including, but not limited to, the types of parties who may have an interest in acquiring the Debtors' aviation assets.   In light of the foregoing, Bloomer deVere is extremely capable of providing the services requested by the Debtors as set forth in the Application.

## Scope of Bloomer deVere's Professional Services

5.        In June 2008, the Debtors initiated a competitive request for proposal process with six brokers for the sale of the Aircraft.   The Debtors ultimately selected Bloomer deVere as its broker.

6.        CES Aviation LLC and Bloomer deVere entered an Aircraft Marketing Agreement dated as of September 24, 2008 (the "G-IV Marketing Agreement"), whereby Bloomer deVere agreed to assist CES Aviation LLC in the sale of its aircraft, a Gulfstream Aerospace G-IV bearing manufacturer's serial number 1448 and U.S. registration mark N300LB (the "G-IV").[1]   A true and correct copy of the G-IV Marketing Agreement is attached hereto as Exhibit 1.   On November 5, 2008 this Court authorized the sale of the G-IV to Pegasus AV, LCC for the purchase price in the amount of $24,892,000 (the "G-IV Sale"). Pursuant to the terms of the G-IV Marketing Agreement, Bloomer deVere is owed a commission fee in the amount of $158,500 in connection with the G-IV Sale.

7.        CES Aviation IX LLC and Bloomer deVere entered an Aircraft Marketing Agreement dated as of September 24, 2008 (the "Falcon 50 Marketing Agreement"), whereby Bloomer deVere agreed to assist CES Aviation LLC in the sale of its aircraft, a Dassault model Falcon 50 bearing manufacturer's serial number 179 and U.S. registration mark N232PR (the "Falcon 50").   A true and correct copy of the Falcon 50 Marketing Agreement is attached hereto as Exhibit 2.   On December 3, 2008 this Court authorized the sale of the Falcon 50 to Peregrine Aviation Services, Inc. for the purchase price in the amount of $6,200,000 (the "Falcon 50 Sale").   Pursuant to the terms of the Falcon 50 Marketing Agreement, Bloomer

---

[1]  Bloomer deVere has also entered similar engagement agreements with non-debtor Lehman affiliates CES Aviation II LLC and CES Aviation VIII LLC.

deVere is owed a commission fee in the amount of $88,000 in connection with the Falcon 50 Sale.

8.      CES Aviation V LLC and Bloomer deVere entered an Aircraft Marketing Agreement dated as of July 23, 2008 (the "Sikorsky S-76C+ Marketing Agreement").   A true and correct copy of the Sikorsky S-76C+ Marketing Agreement is attached hereto as Exhibit 3. Pursuant to the Sikorsky S-76C+ Marketing Agreement, Bloomer deVere is assisting CES Aviation V LLC in the sale of its aircraft, a Sikorsky S-76C+ bearing manufacturer's serial number 760486 and U.S. registration mark N151LB (the "Sikorsky S-76C+").   As of the date of the Application, CES Aviation V LLC has not entered any agreement to sell the Sikorsky S-76C+ and no amount is due to Bloomer deVere in connection with the Sikorsky S-76C+.

9.      Pursuant to the G-IV Marketing Agreement, the Falcon 50 Marketing Agreement, and the Sikorsky S-76C+ Marketing Agreement (collectively, the "Marketing Agreements"), Bloomer deVere will provide certain services in connection with the sales of the G-IV, Falcon 50, and Sikorsky S-76C+ (the "Services") as Bloomer deVere and the Debtors shall deem appropriate and feasible in the course of these chapter 11 cases, including, but not limited to, the following:

Advertising:
- Generate print media layouts and place these layouts in aviation business marketing publications.
- List the aircraft with global business aviation marketing services.
- Utilize websites and web-based email blast services.

Prospect Validation:
- Screen all inquiries to validating authenticity and prospect eligibility.
- Provide listing materials.

Prospect and Market Reporting:
- Maintain Prospect Reports that track all inquiries, communications, and Letter of Intent ("LOI") activities.

- Provide Market Reports that track available, competing aircraft, aircraft price trends, and aircraft valuations.

LOI Negotiation, Review, and Presentation:
- Negotiate acceptable LOI format.
- Review proffered LOIs for an acceptable price, terms, and content.
- Act as liaison between potential buyers and attorneys for the Aviation Subsidiaries.
- Present such LOIs to the Aviation Subsidiaries for consideration.
- Coordinate the counter offer process and the delivery of the deposit to an escrow agent.
- Coordinate offer rejection.

Visual Inspection Coordination:
- Coordinate aircraft availability.
- Coordinate access to facility.
- Provide representation onsite to manage visual inspection of aircraft.
- Provide access to maintenance records as requested.

Long-form Contract Initiation:
- Introduce potential buyers and the attorneys for the Aviation Subsidiaries.
- Provide support during contract preparation and exchange.

Pre-purchase Inspection Monitoring:
- Provide on-site representation during pre-purchase inspections and while negotiating discrepancy repair provisions.
- Generate and manage activity reports detailing any discrepancy discovery and repair.
- Coordinate delivery of aircraft to its respective delivery location.

Acceptance and delivery:
- Ensure the seller, the aircraft, and all items identified in the final contract are in compliance prior to closing.
- Oversee document exchange (i.e., contracts, invoices, escrow documents, etc.).
- Assist the Aviation Subsidiaries with deregistration, insurance, and any other subscription or contract cancellation pertaining to the respective aircraft.
- Coordinate closing location requirements (i.e., aircraft parking, office, telephone, documents, etc.).
- Provide on-site representation during closing.

10.    Bloomer deVere relied on its experience and expertise in marketing the Aircraft.

Bloomer deVere assisted the Debtors in conducting a competitive bidding process in

connection with the G-IV and the Falcon 50, through which the Debtor received a range of bids from various interested parties.   This bidding process resulted in the G-IV Sale and the Falcon 50 Sale.   Bloomer deVere continues to work diligently to find a buyer for the Sikorsky S-76C+.

### **Professional Compensation**

11.      Bloomer deVere's proposed compensation ("Proposed Compensation") is set forth according to the terms of the Marketing Agreements.   It is the intention of Bloomer deVere to seek compensation for its services as described in the Application and the Marketing Agreements.

The G-IV

12.      The G-IV Marketing Agreement provides that CES Aviation LLC will pay Bloomer deVere a sales commission in accordance with the following schedule:

- Flat Rate Fee of $136,500 if the purchase price is less than $23,500,000.
- Flat Rate Fee of $147,500 if the purchase price is between $23,500,000 and $24,500,000.
- Flat Rate Fee of $158,500 if the purchase price is $24,500,001 or greater.

The G-IV Marketing Agreement ¶ 7.

13.      As noted above, Bloomer deVere is owed a commission fee of $158,500 in connection with the G-IV Sale.   Pursuant to section 8 of the G-IV Marketing Agreement, CES Aviation LLC is also obligated to reimburse Bloomer deVere for all pre-approved travel and for all other pre-approved routine costs associated with the marketing and sale of the G-IV.

The Falcon 50

14.      The Falcon 50 Marketing Agreement provides that CES Aviation IX LLC will pay Bloomer deVere a sales commission in accordance with the following schedule:

- Flat Rate Fee of $77,000 if the purchase price is less than $6,000,000.

- Flat Rate Fee of $88,000 if the purchase price is between $6,000,000 and $7,000,000.
- Flat Rate Fee of $99,000 if the purchase price is $7,000,001 or greater.

The Falcon 50 Marketing Agreement ¶ 7.

15.    As noted above, Bloomer deVere is owed a commission fee in the amount of $88,000.   Pursuant to section 8 of the Falcon 50 Marketing Agreement, CES Aviation IX LLC is also obligated to reimburse Bloomer deVere for all pre-approved travel and for all other pre-approved routine costs associated with the marketing and sale of the Aircraft.

The Sikorsky S-76C+

16.    The Sikorsky S-76C+ Marketing Agreement provides that CES Aviation V LLC will pay Bloomer deVere a sales commission in accordance with the following schedule:

- A Flat Rate Fee of $62,500.
- If the date of sale is on or before March 1, 2009, an additional payment of 20% of the above sales commission equal to $12,500 will be paid to Bloomer deVere.

The Sikorsky S-76C+ Marketing Agreement ¶ 7.

17.    Pursuant to section 8 of the Sikorsky S-76C+ Marketing Agreement, CES Aviation IX LLC is also obligated to reimburse Bloomer deVere for all pre-approved travel and for all other pre-approved routine costs associated with the marketing and sale of the Aircraft. As noted above, as of the date of the Application, no amount is due to Bloomer deVere under the Sikorsky S-76C+ Marketing Agreement.   Bloomer deVere will seek to be paid in accordance with the Sikorsky S-76C+ Marketing Agreement.

18.    The Proposed Compensation described in the Application is comparable to compensation generally charged by brokers in the aviation industry of similar stature to Bloomer deVere and for comparable engagements.   The Proposed Compensation is also consistent with Bloomer deVere's normal and customary billing practices.

## Disinterestedness of Professionals

19.    In connection with the application to retain Bloomer deVere filed by the Debtors

in these cases, Bloomer deVere undertook to determine whether it had any conflicts or

relationships that might cause it not to be disinterested or to hold or represent an interest

adverse to the Debtors.   In connection with this inquiry, Bloomer deVere obtained from the

Debtors and/or its representatives the names of individuals and entities that may be parties in

interest in these chapter 11 cases ("Potential Parties-In-Interest").   Bloomer deVere researched

its electronic files and records to determine its connections with the Debtors and any potential

parties in interest.[2]   Based on the results of this conflict search conducted to date and described

more fully below, to the best of my knowledge, neither I, Bloomer deVere, nor any member or

employee thereof, insofar as I have been able to ascertain, has any connection with the Debtors,

their creditors, other parties in interest, their respective attorneys, or the U.S. Trustee or any

person employed in the Office of the U.S. Trustee, except as disclosed or otherwise described

herein.

20.    To the best of my knowledge, Bloomer deVere is a "disinterested person" as that

term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of

the Bankruptcy Code.   Bloomer deVere will conduct an ongoing review of its files to ensure

that no disqualifying circumstances arise, and if any new relevant facts or relationships are

discovered, Bloomer deVere will supplement its disclosure to the Court.

21.    Bloomer deVere may have performed services in the past and may perform

services in the future, in matters unrelated to these chapter 11 cases, for persons that are parties

in interest in the Debtors' chapter 11 cases.   As far as I am aware, Bloomer deVere does not

---

[2] The Debtors can produce the list of Potential Parties-In-Interest upon request.

perform services for any such person in connection with these chapter 11 cases.   In addition, Bloomer deVere does not have any relationship with any such person, their attorneys, or accountants that would be adverse to the Debtors or their estates.   Nevertheless, to the extent such relationships are discovered, Bloomer deVere will supplement its disclosure to the Court.

22.      To the best of my knowledge, Bloomer deVere has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, the Debtors' chapter 11 cases.   Bloomer deVere may, however, provide professional services in the future to entities or persons that may be creditors of the Debtors or parties in interest in the Debtors' chapter 11 cases; provided, however, that such services will not relate to, or have any direct connection with, the Debtors' chapter 11 cases.

23.      The foregoing constitutes the statement of Mark Bloomer pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014.

I declare under penalty of perjury that the foregoing is true and correct.   Executed on December 5, 2008.

Bloomer deVere Group Avia, Inc.

/s/ Mark Bloomer
Name: Mark Bloomer
Title: President