## **Exhibit 1**

**The G-IV Marketing Agreement**

NY2:\1935111\10\15H5310!.DOC\58399.0003

## AIRCRAFT MARKETING AGREEMENT
### *CORPORATE AIRCRAFT MARKETING AND SALE*

**CES AVIATION LLC** ("Client") intends to sell that certain aircraft described as Gulfstream GIV, S/N1448, Registration 300LB (the "Aircraft"), equipped as per Attachment A. Client desires to employ **BLOOMER DEVERE GROUP AVIA, INC.** ("Bloomer deVere") as agent and Bloomer deVere desires to act as agent for the sale of the Aircraft, pursuant to the terms set forth herein.

### 1. CONSULTING AGENT.

Client hereby appoints Bloomer deVere as its representative and agent to consummate a sale of the Aircraft. Bloomer deVere hereby accepts its appointment as agent, and agrees to be bound by the terms of this Agreement. The firm will provide to the client marketing intelligence, proven sales procedures, contracts and negotiating expertise. All parties will work toward the common strategic and financial goals established by the Client.

### 2. ADVERTISING.

Bloomer deVere shall prepare all advertising and promotional programs in connection with the sale of the Aircraft. Bloomer deVere shall be responsible for all costs related to advertising. Client shall have the right to approve copy, photography and artwork which will be used in sales and promotional literature. There will be no identification of aircraft tail number in any photography or marketing material. Bloomer deVere will, from time to time, solicit the participation of certain other aircraft firms, with the express written consent of Client, to assist in the sale of the Aircraft. These firms are selected on the basis of their location, sales records and integrity. Nevertheless, Client will deal directly with Bloomer deVere at all times and it shall be Bloomer deVere's sole responsibility to deal with other firms.

### 3. CONDITION OF AIRCRAFT.

The Aircraft will be offered for sale by Client as a "used" aircraft in an "as-is" condition. Except for warranty of title to the Aircraft, no warranties whatsoever, either expressed, implied or statutory, shall be represented by Bloomer deVere to any prospective purchaser.

### 4. TERM.

The initial term of this Agreement shall commence upon acceptance of this Agreement by Client and shall continue for 90 days from the date thereof. At Client's option, this Agreement may be renewed for additional term of 90 days. Client retains the right to terminate this agreement at anytime upon 30 day written notice prior to automatic termination as provided herein. In the event of termination of this Agreement, Bloomer deVere shall deliver to Client a list of all potential purchasers with whom Bloomer deVere has had contact in its specific sales efforts. If any purchaser on said list consummates a purchase of the Aircraft within 90 days of termination of this agreement for any reason, then Client agrees to pay the full commission according to the schedule set forth in Section 7 hereof. In the event of early termination by Client, Client agrees to reimburse Bloomer de Vere for all actual advertising costs relating to the sale of the Aircraft.

### 5. PROSPECTS.

Client hereby agrees that all inquiries, contacts and communications received by Client from prospective purchasers and other aircraft firms, shall be referred to Bloomer deVere and that all such parties shall be advised of Bloomer deVere's sales representation capacity. Bloomer deVere shall diligently pursue each prospect referred to it by Client.

09/24/2008 13:55 FAX 9164975850

## 6. LISTING PRICE.

The quoted sales price of the Aircraft shall be: "Make Offer", which shall not be varied, modified or changed without Client's prior approval. Client shall be notified of all written offers received by Bloomer deVere, and Client shall have the sole right to accept or reject such offers, subject to the provisions set forth in Section 7(b) hereof.

## 7. COMPENSATION.

(a) For the sales representation services to be rendered by Bloomer deVere on behalf of client pursuant to this Agreement, Client shall pay Bloomer deVere a sales commission in accordance with the following schedule:

GIV S/N 1448:
•Flat Rate Fee of $136,500 if the purchase price is less than $23,500,000; or
•Flat Rate Fee of $147,500 if the purchase price is between $23,500,000 - $24,500,000; or
•Flat Rate Fee of $158,500 if the purchase price is $24,500,001 or greater

The date of sale shall be the date Client receives payment of the purchase price and delivers title and possession of the Aircraft to Buyer.

(b) Bloomer deVere shall be entitled to the commission set forth in this Section 7 upon Client's acceptance of any purchaser's offer during the term of this agreement, subsequent transfer of title or delivery of possession to such purchaser and payment of the purchase price to Client by such purchaser. The commission shall be paid via wire transfer on the date of transfer of title, or delivery of possession, to such purchaser and payment of the purchase price.

## 8. EXPENSES.

Seller shall reimburse Bloomer deVere for all pre-approved travel and for all other pre-approved routine costs associated with the marketing and sale of the Aircraft. Bloomer deVere assumes all advertising and photography costs. Travel for repositioning of the Aircraft for demo flights shall be incurred by prospective purchaser. Travel to other than aircraft home base and static display will be paid by Client when pre-approved. Should the Aircraft be flown for a prospective purchaser demonstration or inspection, the cost of said flight(s) will be pre-paid by the prospective purchaser. Bloomer deVere shall invoice Seller on or about the first day of each calendar month for the pre-approved reimbursable expenses incurred, which shall be invoiced at their actual cost and have the prior approval of Seller. Bloomer deVere shall send all said invoices to the attention:

E. Gary Hoffman
SVP, Corporate Aviation Manager
745 Seventh Avenue, 30th Floor
New York, NY 10019
Phone: 212.526.0846
Fax: 646.346.8274
E-Mail: egary.hoffman@lehman.com

## 9. STATUS REPORTS.

Bloomer deVere shall provide Client on a weekly basis with progress reports on its sales efforts which shall include, among other things, offers received to date, the names of prospective purchasers and a general estimate of the existing market for the Aircraft.

## 10. DOCUMENTS.

Bloomer deVere shall prepare the forms and documents required to evidence the purchase and transfer of title, but it shall be the Client's and Purchaser's respective obligations to file such documents with the Federal Aviation Administration and other appropriate government agencies.

## 11. NOTICES.

All notices or other communications required or permitted to be given hereunder shall be (as elected by the party giving such notice) (a) personally delivered, (b) transmitted by first-class mail—airmail if international, (c) transmitted by telex or telecopier, (d) telephonic with written confirmation to the parties, (e) email, or (f) facsimile, as follows:

| If to Bloomer deVere Group Avia, Inc. | If to **CES Aviation LLC** |
|---|---|
| Attn: Mark Bloomer, President<br>Bloomer deVere Group Avia, Inc.<br>855 Aviation Drive, Suite 205<br>Camarillo CA 93010<br>TEL: 805/484-6605<br>FAX: 805-484-6656<br>Email: mbloomer@bloomerdevere.com | Attn: E. Gary Hoffman<br>SVP, Corporate Aviation Manager<br>745 Seventh Avenue, 30th Floor<br>New York, NY 10019<br>TEL: 212.526.0846<br>FAX: 646.3464.8274<br>Email: egary.hoffman@lehman.com |

## 12. CONFIDENTIAL INFORMATION

The exchange of information hereunder will be governed by the Non-Disclosure Agreement dated September 22, 2008 between the parties, attached hereto as <u>Exhibit B</u>.

With respect to any third party, including the aircraft firms referred to in Section 2, provided access to Client Confidential Information pursuant to this agreement, Bloomer deVere will enter into a written agreement with such third party requiring safeguarding of Client Confidential Information in a manner no less restrictive than Bloomer deVere's obligations under this agreement, and including those affirmative obligations described in this Section.

### 13. Limitations of Liability.

IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY LOST PROFITS OR LOST REVENUE, OR FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH THE MASTER AGREEMENT OR ANY TRANSACTION SCHEDULE; *PROVIDED, HOWEVER,* THAT THE FOREGOING LIMITATION OF LIABILITY WILL NOT APPLY TO ANY OF THE FOLLOWING: (A) SUPPLIER'S INDEMNIFICATION OBLIGATIONS UNDER THE MASTER AGREEMENT OR ANY TRANSACTION SCHEDULE; (B) A PARTY'S BREACH OF ITS CONFIDENTIALITY OR DATA PROTECTION OBLIGATIONS UNDER THE MASTER AGREEMENT OR ANY TRANSACTION SCHEDULE; OR(C) ANY GROSS NEGLIGENCE OR WILLFUL MISCONDUCT BY A PARTY.

### 14. Warranties.

Bloomer deVere represents, warrants and covenants that: (a) the services will be performed in a high quality, professional manner by qualified personnel; (b) the services will be provided in accordance with this agreement, or if the agreement fails to provide standards for any particular functionality, Client's reasonable satisfaction with the services; (c) it has the authority to enter into this agreement, (d) the services, and Client's use thereof, do and shall not violate, infringe or misappropriate any patent, published patent application, copyright, trademark, service mark, trade secret or other intellectual property or industrial property rights of any third party or the laws or regulations of any governmental or judicial authority; (e) Bloomer deVere is familiar with, has complied with, and will comply, in all respects, with the laws and regulations regarding the offering of unlawful or improper inducements (including the U.S. Foreign Corrupt Practices Act, as amended, and other anti-corruption and anti-bribery laws), as applicable to its relationship with Client, and with any other applicable Client policies regarding inducements of which Bloomer deVere has been given notice.

### 15. Indemnity Obligations.

15.1 Bloomer deVere will, at its sole cost and expense, indemnify, defend and hold harmless Client and its affiliates and subsidiaries, and their respective officers, directors, employees, contractors, agents, representatives, successors and assigns (collectively, "Client Indemnitees") from and against any and all losses, claims, demands or expenses (including reasonable attorneys' fees) suffered or incurred by any of them arising out of or in connection any of the following, whenever made:

(i) that any products, deliverables, materials and/or any services furnished to or obtained by Client Indemnitees or the use thereof by Client Indemnitees, constitutes an infringement, misappropriation or unlawful use or disclosure of any intellectual property rights of a third party; or

(ii) any breaches of Section 14; or

(iii) for death or bodily injury, or the damage, loss or destruction of real or tangible personal property of third parties (including employees of Client and Bloomer deVere and their respective subcontractors) brought against a Client Indemnitee and alleged to have been caused by the fault or negligence of Bloomer deVere, its officers, personnel, agents and/or representatives.

15.2 Bloomer deVere agrees to give Client prompt written notice of any threat, warning or notice of any such claim or action which could have an adverse impact on Client's use or possession of the deliverables, materials and/or services provided hereunder. Bloomer deVere shall have the right to conduct the defense of any such claim or action and, consistent with Client's rights hereunder, all negotiations for its settlement; provided, however, that Client may participate in such defense or negotiations to protect its interests and that any settlement shall be for the payment of money by Bloomer deVere and shall not obligate or affect Client in any way, including without limitation, to any determination or admission regarding Client's interest.

### 16. Insurance.

Bloomer deVere shall obtain and maintain insurance including but not limited to Workers' Compensation as required by law, $1,000,000 Employer's Liability, $1,000,000 of business auto liability, $1,000,000 professional liability, $1,000,000 commercial general liability, $4,000,000 umbrella liability and a $1,000,000 fidelity bond. All such insurance shall name Client Indemnitees as a Loss Payee or Additional Insured, as appropriate, by endorsement. The fidelity bond shall include third party or client coverage. All such insurance shall also provide primary coverage without contribution from other insurance and shall include a waiver of your insurer's subrogation rights against Client Indemnitees. Each such insurance policy shall be maintained by an insurer having a rating of at least an "A-" in the most currently available A.M. Best's Insurance

Reports. At Client's request, Bloomer deVere shall furnish Client with certificates of insurance evidencing compliance with these provisions.

17. Publicity.

Neither party will use the name or marks of, refer to, or identify the other party (or any related entity) in publicity releases, interviews, promotional or marketing materials, public announcements, customer listings, testimonials or advertising without the prior written consent of the other party.

**18. MISCELLANEOUS.**

This Agreement shall be governed by and construed according to the laws and by the courts of the State of New York without giving effect to its conflicts of laws provisions except for Section 5-1401 and Section 5-1402 of the New York General Obligations Law. In the event judicial action is instituted by either party against the other to enforce its rights here under, then each party shall be responsible for payment of its own attorneys' fees and costs incurred pursuant to the judicial action. This Agreement contains the entire understanding and agreement of Client and Bloomer deVere concerning the sale of the Aircraft. The terms and conditions of this Agreement supersede any prior or contemporaneous oral or written agreements concerning the subject matter hereof. This Agreement may only be altered or modified in a writing that is executed by the duly authorized representatives of the parties hereto.

**BLOOMER deVERE GROUP AVIA, INC.**
a California corporation

By: _[signature]_

Title: PRESIDENT

Date: 9/24/2008

**CES AVIATION LLC**
a New York limited liability company

By: _[signature]_

Title: Managing Director

Date: 9/23/08

# NON-DISCLOSURE AGREEMENT

This Non-Disclosure Agreement ("Agreement") is made, as of June 13, 2008, by and between CES Aviation LLC, with an office at 745 Seventh Avenue, New York, NY 10019 (together with its affiliated or subsidiary companies, "CES Aviation") and Bloomer deVere Group Avia, Inc. with an office at 855 Aviation Drive, Suite 205, Camarillo CA 93010 ("Company").

WHEREAS CES Aviation and Company would like to exchange certain information in connection with certain products and services offered by Company, CES Aviation's business and any related project or work effort (the "Purpose;") (for purposes of this Agreement, the word "exchange" shall be construed to include, without limitation, furnishing information, providing access or availability to information or the obtaining of information from any source and by any means, as a result of this Agreement); and

WHEREAS, in connection with such exchange each party may obtain, or be in a position to obtain Confidential Information (as defined); and

WHEREAS, each party wishes to ensure the protection of its Confidential Information;

NOW, THEREFORE, IN CONSIDERATION OF the mutual covenants contained herein and the agreement to exchange information as contemplated hereunder, the parties agree as follows:

1. **Definition.** "Confidential Information" of each party includes all information exchanged hereunder specifically relating to the Purpose (as defined above) including: (a) information relating to the past, present and future business activities (including, without limitation, agreements and other business arrangements) of each party, its affiliates and each of their respective employees, customers or third-party contractors, (b) information relating to strategic and other plans, pricing, methods, methodologies, processes, financial data, lists, inventions, customers, suppliers, apparatus, statistics, programs, research, development, technology, network designs, and/or usage data of each party, its affiliates and each of their respective employees, customers or third-party contractors, and (c) the terms and existence of this Agreement or related information.

2. **Carve-Outs.** Both parties acknowledge and agree that information shall not be considered "Confidential Information" only to the extent that such information is: (a) currently in the public domain and/or previously known to the receiving party, and in either case, free from any confidentiality obligation; (b) publicly disclosed by or on behalf of the disclosing party either prior to or subsequent to receipt by the receiving party of such information; (c) independently developed by the receiving party without access to or use of the Confidential Information of the disclosing party; or (d) rightfully obtained by the receiving party from a third party lawfully in possession of the Confidential Information who is not bound by confidentiality obligations to the disclosing party. The receiving party may disclose Confidential Information of the disclosing party if the receiving party is required to do so under applicable law, rule or order; provided that the receiving party, where reasonably

1

NDAB
v.07.05

NDAB
v.07.05

by CES Aviation for purposes specifically retained consultants or other persons retained by CES Aviation for purposes specifically Confidential Information to employees of its parent, subsidiaries and affiliated companies, and to consultants or other persons retained by CES Aviation for purposes specifically avoidance of doubt, also disclose Company's Confidential Information to employees of its addition to its own employees, may, for the provided, however, that CES Aviation, in employees on a "need to know" basis; information shall be limited to its own distribution of the other party's Confidential Each party agrees that its own use and/or provision of other services to the other party. obligations under this Agreement, and the rights and performance of its duties and parties, internal planning, the protection of its than for evaluation, discussions between the Confidential Information for any purpose other the other party, use any such other party's without obtaining the prior written consent of reasonable inquiry). Neither party shall other party (known to be such after prevent disclosure to any competitor of the Confidential Information, and (b) it shall benefit or the benefit of others, any such reproduce or transmit, or use for its own available to any person, firm or enterprise, written consent of the other, disclose or make (a) it shall not, without first obtaining the Information hereunder, each party agrees that maintaining the confidentiality of Confidential exchanged as a result of this Agreement. In Confidential Information which may be regard and preserve as confidential, all

3.  **Obligations.** Each party agrees to regard and preserve as confidential, all Confidential Information which may be exchanged as a result of this Agreement. In maintaining the confidentiality of Confidential Information hereunder, each party agrees that (a) it shall not, without first obtaining the written consent of the other, disclose or make available to any person, firm or enterprise, reproduce or transmit, or use for its own benefit or the benefit of others, any such Confidential Information, and (b) it shall prevent disclosure to any competitor of the other party (known to be such after reasonable inquiry). Neither party shall, without obtaining the prior written consent of the other party, use any such other party's Confidential Information for any purpose other than for evaluation, discussions between the parties, internal planning, the protection of its rights and performance of its duties and obligations under this Agreement, and the provision of other services to the other party. Each party agrees that its own use and/or distribution of the other party's Confidential Information shall be limited to its own employees on a "need to know" basis; provided, however, that CES Aviation, in addition to its own employees, may, for the avoidance of doubt, also disclose Company's Confidential Information to employees of its parent, subsidiaries and affiliated companies, and to consultants or other persons retained by CES Aviation for purposes specifically

2

practicable and to the extent legally permissible, provides the disclosing party with prior written notice of the required disclosure so that the disclosing party may seek a protective order or other appropriate remedy; and provided further that the receiving party discloses no more Confidential Information than is reasonably necessary in order to respond to the required disclosure.

4.  **CES Aviation Sensitive Data.** Company hereby acknowledges that CES Aviation is subject to certain privacy and information security laws and regulations, pursuant to which CES Aviation is required to ensure that Company appropriately safeguards personal or financial information regarding CES Aviation's former, current or prospective clients or employees ("CES Aviation Sensitive Data"). To the extent that Company receives any CES Aviation Sensitive Data as a result of any exchange of information under this Agreement, and notwithstanding anything to the contrary contained in this Agreement, Company agrees that it shall (a) not disclose or use any CES Aviation Sensitive Data except to the extent necessary to carry out its obligations under this Agreement and for no other purpose, (b) not disclose CES Aviation Sensitive Data to any third party, including, without limitation, its third party service providers without the prior written consent of CES Aviation and subject to the further requirements of this Section, (c) employ administrative, technical and physical safeguards to prevent unauthorized use or disclosure of CES Aviation Sensitive Data, (d) promptly provide such information regarding its privacy and information security systems, policies and procedures as CES Aviation may

related to CES Aviation's use or evaluation of such Confidential Information. Each party shall, in advance, require each of its personnel and/or representatives who obtains or is in a position to obtain any Confidential Information of the other party to execute a confidentiality agreement with confidentiality provisions no less restrictive than those contained in this Agreement. While onsite at the other party's premises, each party shall comply with all policies and procedures of the other party.

request relating to its due diligence and oversight obligations under applicable laws and regulations, and (e) notify CES Aviation as soon as practicable following any actual or apparent theft, unauthorized use or disclosure of any CES Aviation Sensitive Data. With respect to any third party provided access to CES Aviation Sensitive Data pursuant to subsection (b) of this Section, Company shall enter into a written agreement with such third party requiring safeguarding of CES Aviation Sensitive Data in a manner no less restrictive than Company's obligations under this Agreement, and including those affirmative obligations described in this Section.

5.  **Independent Parties.**  Neither party shall be required to exchange with the other any particular information, and the exchange of any information by either party is entirely voluntary and is not intended to and shall not create or modify any contractual, fiduciary or other relationship or obligation of any kind beyond the terms of this Agreement. Nothing contained in this Agreement, nor any exchange of information hereunder, shall grant or confer upon any party any right, license or authority in or to the information exchanged or otherwise. Correspondingly, except as expressly provided herein, neither party shall be liable to the other in any manner whatsoever for any decisions, obligations, costs or expenses incurred, changes in business practices, plans, organization, products, services, or otherwise of the other party, as a result of this Agreement or any exchange of information.

6.  **Return of Information.**  At any time at the request and option of the disclosing party, the receiving party agrees to promptly: (a) return to the disclosing party the Confidential Information and/or CES Aviation Sensitive Data, as applicable; or (b) destroy or

permanently erase (on all forms of recordation) the Confidential Information and/or CES Aviation Sensitive Data, as applicable and, if requested by the disclosing party, acknowledge in writing that all such Confidential Information and/or CES Aviation Sensitive Data, as applicable, has been destroyed or permanently erased. Notwithstanding the foregoing, each party may retain copies of the Confidential Information and/or CES Aviation Sensitive Data, as applicable, to the extent required to comply with applicable legal and regulatory requirements, provided, however, that such Confidential Information and/or CES Aviation Sensitive Data, as applicable, shall remain subject to the terms and conditions herein.

7.  **Injunctive Relief.**  Notwithstanding anything to the contrary contained herein, in the event of a breach or threatened breach by the receiving party of the provisions of this Agreement, the disclosing party may have no adequate remedy in money or damages and, accordingly, may seek injunctive relief, provided, however, that no specification in this Agreement of a specific legal or equitable remedy shall be construed as a waiver or prohibition against any other legal or equitable remedies in the event of a breach of a provision of this Agreement.

8.  **Title.**  The parties acknowledge and agree that any disclosure of Confidential Information, and in the case of CES Aviation, CES Aviation Sensitive Data under this Agreement shall in no way be construed to be an assignment, transfer, or conveyance of title to or ownership rights in such Confidential Information or CES Aviation Sensitive Data.

9.  **Assignment.**  Neither this Agreement nor any rights and/or obligations hereunder may be assigned (whether by operation of

3

NDAB
v.07.05

law or otherwise) by either party without the other party's prior written consent, and any such assignment shall be void. Notwithstanding the foregoing, CES Aviation may assign this Agreement and any of its rights and/or obligations hereunder upon written notice to Company, to any of its affiliated companies or to an entity with or into which it is merged or consolidated or to which it sells all or substantially all its capital stock or assets associated with the operations related to this Agreement, without the consent of Company. This Agreement shall benefit and be binding upon the parties hereto and their respective successors and assigns. Each receiving party shall be responsible for acts and omissions of its permitted assigns.

10. **No Publicity.** Neither party shall use the other party's name or marks, refer to, or identify the other party or any of its respective affiliate in publicity releases, promotional or marketing materials, announcements, customer listings, testimonials, or advertising.

11. **Severability.** If any information exchanged under this Agreement is held by any court with jurisdiction over the subject matter of this Agreement not to be Confidential Information and/or CES Aviation Sensitive Data, as applicable, any remaining Confidential Information and/or CES Aviation Sensitive Data, as applicable, any remaining information that the parties have exchanged and that would otherwise be deemed Confidential Information and/or CES Aviation Sensitive Data, as applicable, within the meaning of this Agreement will be unimpaired and will continue to be protected as Confidential Information and/or CES Aviation Sensitive Data, as applicable, in accordance with the terms of this Agreement. In addition,

if any of the provisions of this Agreement are held invalid, illegal or unenforceable, the remaining provisions shall be unimpaired.

12. **Governing Law.** In all respects this Agreement shall be governed by the substantive laws of the State of New York without regard to conflict of law principles. Any claim or action brought by one of the parties hereto in connection with this Agreement shall be brought in the appropriate Federal or State court located in the County of New York, and the parties hereto irrevocably consent to the exclusive jurisdiction of such court.

13. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be an original, but which together shall constitute one and the same instrument. This Agreement may be executed and delivered by facsimile. Any facsimile signatures shall have the same legal effect as manual signatures.

14. **Entire Agreement.** This Agreement, which constitutes the entire agreement between the parties as to the subject hereof, shall be construed and interpreted fairly, in accordance with the plain meaning of its terms, and there shall be no presumption or inference against the party drafting this Agreement in construing or interpreting the provisions hereof.

15. **Other Agreements.** The termination of any other agreement or business relationship between, or involving both parties, shall not relieve either party of its obligations with respect to the information exchanged pursuant to the terms hereof.

(The Next Page is the Signature Page)

4

IN WITNESS WHEREOF, the parties hereto have had their duly authorized representatives execute this Agreement as of the date first written above.

| Bloomer deVere Group Avia, Inc. | CES Aviation LLC |
| --- | --- |
| By: [signature] | By: [signature] |
| Name: Mark Bloomer | Name: Francine S. Kittredge<br>(Type, Print or Stamp) |
| Title: President | Title: Managing Director |

(Signature Page to Non-Disclosure Agreement)

# *2001 GULFSTREAM IVSP*
## *N1LB  S/N  1448*

*As of June 14, 2008*

| **AIRFRAME TOTAL TIME:** | **Hours** | **Landings** |
|---|---|---|
|  | 2582 | 1342 |
| **ENGINES:** | **#1** | **#2** |
| TOTAL TIME: | 2582.0 | 2582.0 |
| CYCLES: | 1342 | 1342 |
| TIME REMAINING TO MID-LIFE | 1418.0 | 1418.0 |
| TIME REMAINING TO OVERHAUL | 5418.0 | 5418.0 |
| APU TOTAL TIME: | 1666 |  |

**Engines:  Rolls Royce Tay Mark 611-8**
**Engines and APU enrolled in JSSI  programs - 100% coverage**

## *AVIONICS*

| | |
|---|---|
| Honeywell SPZ-8400 | Allied Signal EGPWS |
| Triple Honeywell NZ-2000 FMS | Triple Honeywell HG1075AE IRU |
| Dual Honeywell 12 Channel GPS | Honeywell TCAS 2000  with Change 7 |
| Allied Signal AFIS System w/Printer and VHF and Satcom Links | Honeywell MCS-6000 Plus Satcom |
| Fairchild/Loral F-1000 FDR | Honeywell P-880 Weather Radar |
| Fairchild/Loral F-100 CVR | Airshow  Passenger Flight Information System w/Satellite Maps |
| BF Goodrich ADI-335 Emergency Horizon w/ ILS | Aerosonic 3-in-1 Cabin Pressure Indicator |
| Honeywell DL-900 Data Loader | Honeywell DL-900 Data Loader |
| RVSM Certified | Artex 406 ELT w/Nav Interface |
| Triple Collins VHF-422D | Coltech CSD-714 Five Channel SELCAL |
| Dual Rockwell Collins RTU-4220 Radio Tuning Units 8.33kHz Capable | Dual Collins HF-9000 |
| Honeywell DL-900 Data Loader | Dual Emergency Vision Assurance Systems |
| Dual Mode "S" Transponders | |

## *ADDITIONAL FEATURES*

| | |
|---|---|
| Panasonic Digital DVD Player | Sony 10 Stack CD Changer |
| JVC VHS Player | Airshow with Cockpit Monitor |
| Two Imagik 18" Monitors | Nature Pure Water Sterilizer |
| One 22" Imagik LCD Monitor | Forward Crew Lavatory |
| Baker Cabin Speakers | Tail Logo light |
| Actron Key Locks for all external doors | AirCell Axxess Irridium Phone |
| Forward crew Lavatory | Brother MFC-970MC Fax  Machine |

Wiring, supports, and brackets provided for future installation of Honeywell HUD 2020 and EVS

## *INTERIOR*

New January 2001 - Interior features 13 passenger forward galley configuration.  Aft Cabin includes four
place conference area seating with a "Hi-Lo" table across from a credenza. Mid Cabin includes a three place
berthable divan. Club chairs are finished in leather and divan is completed in a complementary fabric.

## *ORIGINAL EXTERIOR*

New September 2001 - Matterhorn White with Green and Gold Stripes - Excellent condition.

*Descriptions contained herein are deemed accurate as of 06/14/08, however all information is subject to verification by buyer.*

ADDENDUM NO. 1 TO AIRCRAFT MARKETING AGREEMENT

This Addendum No. 1 (the "Addendum"), dated as of November 17, 2008 (the "Effective Time"), is hereby made by and between CES Aviation LLC, with an office at 1271 Avenue of the Americas, New York, NY 10020 ("CES Aviation") and Bloomer deVere Group Avia, Inc., with a principal place of business at 855 Aviation Drive, Suite 205, Camarillo, CA 93010 ("Vendor"), and is incorporated into and shall form a part of the Aircraft Marketing Agreement dated as of September 23, 2008, between CES Aviation and Vendor (the "Vendor Agreement" and, together with this Addendum, the "Agreement"). This Addendum supplements the Vendor Agreement and all of the terms and conditions of the Vendor Agreement apply to this Addendum; provided that to the extent there is a conflict between this Addendum and the Vendor Agreement, the terms of this Addendum shall control. All capitalized terms not defined herein shall have the same meaning as in the Vendor Agreement.

ARTICLE 1

*Amendment to the Vendor Agreement.* The Vendor Agreement is hereby amended as follows:

1. The first sentence of Section 4. TERM shall be replaced with the following:

    The amended term of this Agreement shall commence upon acceptance of this Addendum by Client and shall continue for six (6) months from the date thereof.

2. The invoice contact information for Section 8. EXPENSES shall be replaced with the following:

    Jennifer Adler
    Senior Vice President
    1271 Avenue of the Americas, 45th Floor
    New York, NY 10020
    Phone: 212-526-4284
    Fax: 646-758-5002
    E-Mail: jadler@lehman.com

3. The CES Aviation contact information for Section 11. NOTICES shall be replaced with the following:

    Attn: Jennifer Adler
    Senior Vice President
    1271 Avenue of the Americas, 45th Floor
    New York, NY 10020
    Phone: 212-526-4284
    Fax: 646-758-5002
    E-Mail: jadler@lehman.com

ARTICLE 2

*Incorporation of Addendum; Ratification of the Vendor Agreement.* As of the Effective Time, all the provisions of this Addendum shall be deemed to be incorporated in, and made a part of, the Vendor Agreement, and the Vendor Agreement, as amended by this Addendum shall be read, taken and construed as one and the same instrument. Except as otherwise expressly modified herein, the Vendor Agreement shall remain in full force and effect and is hereby ratified.

IN WITNESS WHEREOF, authorized representatives of Vendor and CES Aviation have caused this Addendum to be duly executed as of the Effective Time.

| CES AVIATION II LLC | BLOOMER DEVERE GROUP AVIA, INC. |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Print or Type Name: Francine Kittredge | Print or Type Name: Mark Bloomer |
| Title: Managing Director | Title: President |
| Date: 11/18/08 | Date: Nov. 19, 2008 |