WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re                                                     :    Chapter 11 Case No.
                                                          :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,              :    08-13555 (JMP)
                                                          :
                     Debtors.                             :    (Jointly Administered)
                                                          :
                                                          :
------------------------------------------------------------------x

**DEBTORS' MOTION FOR ENTRY OF ORDER
PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY
CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE
2002, 6004, AND 9019 (I) AUTHORIZING LEHMAN BROTHERS
HOLDINGS INC. TO ENTER INTO A SETTLEMENT AGREEMENT
WITH CERTAIN FRENCH AFFILIATES RELATING TO
INTERCOMPANY CLAIMS, (II) AUTHORIZING
LEHMAN BROTHERS HOLDINGS INC. TO VOTE ITS SHARES
IN FRENCH AFFILIATE TO APPROVE SALE OF SUBSTANTIALLY
ALL OF THE ASSETS OF AND VOLUNTARY DISSOLUTION OF
SUCH AFFILIATE AND (III) GRANTING CERTAIN RELATED RELIEF**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully

represent:

**Background**

1. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

**Jurisdiction**

4. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Lehman's Business**

5. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

6. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Preliminary Statement**

7. This Motion seeks approval of a settlement agreement, dated December 3, 2008 (the "Settlement Agreement"), attached hereto as Exhibit A, between LBHI, on the one hand, and three French affiliates that operate Lehman's investment business in France, on the other hand. The three affiliates are: (i) Banque Lehman Brothers S.A. ("BLB"), (ii) Lehman Brothers Conseil S.A. ("LBC"), and (iii) Lehman Brothers Services S.N.C. ("LBS" and collectively with BLB and LBC, the "Lehman French Companies"). It also seeks authority for LBHI to vote, in its capacity as a shareholder of BLB, for the sale (the "BNF Transaction") of BLB's business to Banque Nomura France (the "BNF") and the voluntary dissolution of BLB, both of which are predicated, *inter alia*, upon the implementation of the Settlement Agreement.

8. As described below in more detail, the Settlement Agreement, which provides for a settlement of intercompany claims between LBHI and the Lehman French Companies, is a condition precedent for the BNF Transaction. The BNF Transaction is expected to decrease BLB's liabilities significantly, because, among other things, BLB will no longer be liable for certain debts that BNF is assuming (primarily employee obligations). LBHI will benefit from this reduction in BLB's liabilities, given LBHI's potential exposure under a support

letter, dated June 15, 1994 (the "Support Letter"),[1] wherein LBHI committed to the Banque de France, the French central bank, and the Commission Bancaire, the French banking agency, among other things, to provide BLB with financial support when so requested by the Banque de France.

9. In addition to enabling the BNF Transaction to occur, the Settlement Agreement, among other things, provides for a release of all claims BLB could raise against LBHI under the Support Letter and provides that BLB will waive its intercompany claim against LBHI except to the extent that BLB does not have sufficient assets (excluding such intercompany claim) to pay its creditors. Moreover, the combination of the BNF Transaction and the Settlement Agreement will facilitate BLB's ability to wind down its affairs through a solvent liquidation (a "Solvent Liquidation"), which entails a cooperative and orderly process for negotiating with creditors and minimizing liabilities, rather than through an insolvent liquidation (an "Insolvent Liquidation"), which is likely to result if the Settlement Agreement is not approved.

**Relief Requested**

10. The Debtors respectfully request entry of an order pursuant to sections 105 and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 9019 approving the Settlement Agreement and authorizing LBHI to complete the acts contemplated thereby, including settling the intercompany claims with the Lehman French Companies and voting in favor of the BNF Transaction and the Solvent Liquidation in its role as a shareholder of BLB.

11. As more fully set forth below, LBHI's decision to enter into the Settlement Agreement, including to vote in support of the BNF Transaction, represents a

---

[1] Nothing herein shall be interpreted as an admission that LBHI is liable to any party under the Support Letter and LBHI reserves all rights and defenses with respect thereto.

reasonable exercise of its business judgment.  The Settlement Agreement and the BNF Transaction are in the best interests of LBHI, its estates, its creditors, and all other parties in interest.  As such, the relief requested in this Motion should be granted.

## **The Lehman French Companies**

A.     Relationship between LBHI and Lehman French Companies

12.     BLB, a French *société anonyme* and a direct subsidiary of LBHI (owned 99.9% by LBHI), operates Lehman's investment banking advisory business in France, which focused on corporate finance, consisting primarily of mergers and acquisitions advisory services.  BLB has 52 employees.  LBS, a French *société en nom collectif* and a direct subsidiary of BLB (owned 50% by BLB and 50% by LBC), owns and manages the fixed asset portfolio of Lehman in France, and is the lessee of the office occupied by all of the Lehman French Companies.  Its purpose is to provide infrastructure services, such as office rental, refurbishment, and IT services.  LBS had assets of approximately € 10.8 million (generally consisting of intangible assets, refurbished works, telecommunications fixtures, cabling, other refurbishment, office furniture, and IT equipment) as of November 30, 2007 and liabilities of approximately € 10.1 million (generally debt owed to trade suppliers and in respect of building projects) as of September 12, 2008; it has no employees.  LBC, a French *société anonyme* and a subsidiary of BLB (99.84% owned by BLB), currently has no business activity, assets (other than its equity interest in LBS), liabilities, or employees.

13. LBHI, on the one hand, and the Lehman French Companies, on the other hand, have asserted numerous claims against each other as of September 12, 2008.[2] LBHI has asserted the following claims against the Lehman French Companies:

- A claim of € 8,056,444 by LBHI against LBS resulting from LBHI's funding of LBS through the prepetition cash management system (the "Alleged LBS Receivable"). LBS disputes the Alleged LBS Receivable.

- A claim of € 41,529,491 by LBHI against BLB resulting from LBHI's funding of BLB through the prepetition cash management system (the "Alleged BLB Cash Pooling Receivable"). BLB disputes the Alleged BLB Cash Pooling Receivable.

- A claim of € 8,087,665 by LBHI against BLB resulting from an intercompany agreement concerning the Lehman employee incentive plan (the "Alleged BLB Employee Incentive Receivable"). BLB disputes the amount of the Alleged BLB Employee Incentive Receivable.

- A claim of € 27,135,925 by LBHI against BLB resulting from a subordinated loan agreement between the parties (the "BLB Subordinated Receivable" and collectively with the Alleged LBS Receivable, the Alleged BLB Cash Pooling Receivable, and the Alleged BLB Employee Incentive Receivable, the "LBHI Claims").

14. BLB has asserted a claim of € 178,021,639 against LBHI relating to the Debtors' prepetition cash management system (the "BLB Claim"). LBHI disputes the BLB Claim.

B. The French Administrator and the BNF Transaction

15. Following the filing of LBHI's chapter 11 case, on September 15, 2008, the French Banking Commission (the "Commission Bancaire") appointed Mr. Alain Bachelot to act as provisional administrator (the "French Administrator") for BLB and its subsidiaries. In

---

[2] As is reflected in the Settlement Agreement, the Debtors and BLB both believe that LBHI is the only Debtor against which BLB asserts intercompany claims and the only Debtor that has intercompany claims against BLB.

that capacity, Mr. Bachelot was given charge over the general management and administration of BLB and its subsidiaries.

16. Prior to the Commencement Date, consistent with Lehman's cash management system, most of BLB's funds were deposited in bank accounts of other Lehman entities. As a result, LBHI's chapter 11 filing left BLB without access to liquidity and caused the French Administrator and BLB's senior management to seek a buyer for BLB's assets. BLB received only one indication of interest for BLB's assets – from BNF. LBHI was also unable to find an alternate solution or buyer. Following a period of negotiations, on November 17, 2008, the Lehman French Companies and BNF entered into a Business Sale and Purchase Agreement (as subsequently amended, the "BSA") to effectuate the BNF Transaction. The BSA provides for the sale of BLB's investment advisory business to BNF for 1 Euro and the assumption by BNF of certain liabilities. The assets being sold to BNF under the BSA include goodwill, certain commercial records, business information technology, furniture and equipment, and any other assets used in connection with BLB's investment banking business. The BSA further provides that certain BLB employees will automatically be transferred to BNF, while BNF may, in its discretion, offer employment to other BLB employees on the same terms as under their respective existing contracts.

17. Consummation of the BNF Transaction is subject to, among other things: (i) the approval of the BNF Transaction by LBHI, BLB's majority shareholder and (ii) the Lehman French Companies receiving from each of their affiliate creditors an acknowledgment of the full and final settlement or an irrevocable and unconditional waiver or other contractual arrangements relating to the settlement of all intercompany debts prior to December 31, 2008.

18. The BSA contemplates that, following the closing of the BNF Transaction, BLB will undergo a Solvent Liquidation proceeding.

C. <u>The Settlement Agreement</u>

19. Following extensive, arm's length negotiations between LBHI and the Lehman French Companies, the parties entered into the Settlement Agreement. The Settlement Agreement, in general terms, contemplates that (i) LBHI and the Lehman French Companies shall net their asserted intercompany claims, (ii) BLB shall retain its net claim against LBHI, which must be filed with this Court and is subject to any objections or challenges thereto, (iii) BLB shall attempt to satisfy all of its liabilities without collecting on account of its claim against LBHI, and (iv) BLB shall only be entitled to receive a recovery on its allowed claim against LBHI, subject to a cap, in the event and to the extent that its other assets are insufficient to cover all of its liabilities.

20. More specifically, the salient terms of the Settlement Agreement, which remains subject to the approval of this Court, are as follows:[3]

| **Netting of Claims** | LBHI waives the LBHI Claims in their entirety. |
|---|---|
|  | BLB waives the BLB Claim other than € 93,212,114 (the "<u>Remaining BLB Claim</u>"), which is the net amount resulting from a netting of the LBHI Claims against the BLB Claims. LBHI retains the right to object to the Remaining BLB Claim, and BLB retains the burden of proving that the Remaining BLB Claim is an allowed claim. |
| **Limitation of Claims against LBHI** | The French Administrator will use his best efforts to settle all of BLB's liabilities with assets other than the Remaining BLB Claim. BLB's recovery from LBHI's |

---

[3] The table below is intended as a summary and is qualified in its entirety by the executed Settlement Agreement annexed as Exhibit A. In the event of an inconsistency between the description in this Motion and the Settlement Agreement, the terms of the Settlement Agreement control.

| | |
|---|---|
| | estate on account of the Remaining BLB Claim is limited to the lesser of the actual recovery BLB would receive from LBHI's estate on account of the Remaining BLB Claim, to the extent allowed, and the amount, if any, by which BLB's liabilities exceed its other assets (the "Shortfall") (the "Recovery Limitation").  In addition, no payments shall be made in respect of the Remaining BLB Claim until the amount of the Shortfall is finally determined. |
| **Sale of Remaining BLB Claim** | Once the amount of the Shortfall, if any, is determined, the French Administrator shall send a notice to LBHI (the "Shortfall Notice") specifying the amount of the Shortfall and providing any supporting documentation.  Thereafter, the French Administrator has a right to sell all or a portion of the Remaining BLB Claim for consideration of up to, but not greater than, the amount of the Shortfall.  Although the purchaser of the Remaining BLB Claim is not subject to the Recovery Limitation, before the French Administrator can sell such claim, it must provide LBHI with an opportunity to purchase the Shortfall on the same terms that the third party is willing to pay.  In addition, upon such sale, BLB shall waive any portion of the Remaining BLB Claim that is not sold. |
| **Waiver of Claims Relating to Support Letter** | BLB waives any claims it has against LBHI on account of the Support Letter.  In addition, it agrees to use its best efforts, in the context of its Solvent Liquidation and the withdrawal of its banking license, to obtain from the Banque de France or the Commission Bancaire, as the case may be, the formal termination of the Support Letter with no residual claim, right, or recourse whatsoever against LBHI as of the effective date of the withdrawal of BLB's banking license.<br><br>Until the Support Letter becomes void and may no longer be exercised by the Banque de France or the Commission Bancaire, BLB shall neither sell the Remaining BLB Claim nor receive any recoveries from LBHI on account of the Remaining BLB Claim.  Moreover, if the Banque de France or the Commission Bancaire exercises any rights under the Support Letter, BLB shall waive any rights it may have on account of the Remaining BLB Claim. |
| **Conditions Precedent and Subsequent** | Conditions precedent include:<br>• approval by this Court, prior to December 23, 2008, of (i) the Settlement Agreement and (ii) LBHI's |

|  | vote in BLB's shareholder meetings in favor of the BNF Transaction and the Solvent Liquidation<br>• approval by BLB's relevant corporate bodies, prior to January 20, 2009, of the BNF Transaction<br>• the approval by the Commercial Court of Paris in conciliation proceedings pursuant to Article L. 611-8-11 of the French Commercial Code, prior to January 20, 2009, of this Agreement<br><br>The Settlement Agreement also provides that the respective rights and obligations of the parties shall become null and void if the following conditions are not met (or waived):<br>• LBHI and the chairman in office of BLB do not vote in favor of the Solvent Liquidation at the general meeting of shareholders of BLB on or prior to June 30, 2009<br>• the shareholders of LBS and LBC do not vote in favor of the voluntary dissolution of LBS and LBC on or prior to June 30, 2009<br>• the withdrawal of the banking license of BLB by the French Comité des Etablissements de credit et des Enterprises d'Investissement has not become effective on or prior to June 30, 2009, or if the Banque de France or the Commission Bancaire exercises its right under the Support Letter prior to the date on which such withdrawal has become effective<br>• the formal approval of the Settlement Agreement by the Commercial Court of Paris has not become a final order within 10 days of receipt thereof (*i.e.*, after the period of appeals has expired). |
|---|---|

**The Settlement Agreement Meets the Legal Standard
Established Under Rule 9019 and Is in the Bests Interests of LBHI's Estate**

21. The Debtors submit that the proposed Settlement Agreement is in LBHI's best interests and should be approved under Rule 9019 of the Bankruptcy Rules. Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the

estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)* 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). A decision to accept or reject a compromise or settlement is within the sound discretion of the Court. *Id.; see also* 9 *Collier on Bankruptcy* ¶ 9019.02 (15th ed. rev. 2001). The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness." *Drexel Burnham Lambert Group*, 134 B.R. at 505.

22. Bankruptcy courts have applied the following factors in determining whether a settlement should be approved: (i) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (ii) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; (iii) the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement; and (iv) the extent to which the settlement is truly the product of arm's length bargaining and not the product of fraud or collusion. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968) ("There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated.")*; In re Ashford Hotels, Ltd.*, 226 B.R. 797, 804 (Bankr. S.D.N.Y. 1998); *In re Best Prods. Co.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994).

23. Based on these factors, the Settlement Agreement should be approved for the primary reason that what LBHI is receiving in connection therewith – a significant reduction in the potential claims the Lehman French Companies may have against LBHI – substantially outweighs what LBHI is giving up in connection therewith – potential claims against the Lehman

French Companies on which there is a slim likelihood that LBHI would ever receive payment.

There are many justifications for approving the Settlement Agreement. These include:

    a.    The BNF Transaction is the best available alternative for BLB. Given LBHI's unsuccessful efforts to find a competing offer, BNF is the only potential buyer for BLB's business. It is assuming certain liabilities that would otherwise have to be paid by BLB (particularly, certain employee-related liabilities). While these are no assurances that the Solvent Liquidation will be successful, absent the BNF Transaction, an Insolvent Liquidation is inevitable. Such a liquidation would result in higher liabilities for BLB, because, among other things, BNF will no longer be assuming any liabilities and an Insolvent Liquidation is generally a costlier process than a Solvent Liquidation.

    b.    LBHI benefits from the release of all claims BLB might have against LBHI under the Support Letter. Although it is possible that the Banque de France or the Commission Bancaire might assert claims against LBHI as a result of the Support Letter, LBHI is protected by BLB's agreement to waive the Remaining BLB Claim in such event. Moreover, by minimizing BLB's liabilities, it becomes less likely that the Banque de France or the Commission Bancaire would seek to recover on account of the Support Letter.

    c.    Absent the settlement, it is highly uncertain what LBHI would recover, if anything, from the Lehman French Companies on account of the LBHI Claims that it is agreeing to net in an Insolvent Liquidation, which would inevitably result absent the BNF Transaction and the implementation of the Settlement Agreement. Out of the four claims that comprise the LBHI Claims, three (the Alleged LBS Receivable, the Alleged BLB Cash Pooling Receivable, and the Alleged BLB Employee Incentive Receivable) are disputed claims that may or may not result in allowed claims against the Lehman French Companies. The only LBHI Claim that is not a disputed claim is contractually subordinated to the claims of all other creditors. In addition, three of the four LBHI Claims, or all but approximately €8 million of the approximately € 85 million in LBHI Claims (morethan 90%), are claims by LBHI against BLB, which BLB may be entitled to set off against the BLB Claim under section 553 of the Bankruptcy Code.[4] The fourth claim, the Alleged LBS Receivable, is against an entity that has no assets of net material value. Specifically, due to the highly specific nature and/or rapid obsolescence of LBS's

---

[4] LBHI reserves all rights with respect to whether such a setoff would be proper.

assets, as well as the contractual obligations resulting from LBI's lease, combined with the near equal amount of its third party debt, LBHI believes that a liquidation of LBS would likely realize negligible recoveries, at best. Finally, even if the claims were not disputed, not subordinated, and not subject to set-off, it is unlikely that LBHI would recover more than a minimal amount in the event of an Insolvent Liquidation, as its claims would be subordinated under French law to the claims of certain priority creditors, such as employees.

d. The Settlement Agreement avoids protracted, distracting, and potentially costly litigation over the allowability of the LBHI Claims, as well as claims BLB might have on account of the Support Letter.

e. LBHI has retained its right to challenge the allowance of the Remaining BLB Claim.

f. LBHI benefits from BLB's agreement to limit its Remaining BLB Claim to the Shortfall, if any.

24. Importantly, the negotiations between LBHI and the Lehman French Companies were extensive and at arm's length. The French Administrator conducted the negotiations on behalf of BLB, while Alvarez and Marsal and the Debtors' counsel conducted the negotiations on behalf of LBHI.[5] The negotiations became so tense at one point that in November 2008 BLB requested the appointment of a conciliator appointed by the Paris Commercial Court. The request was granted, and the mandate of the conciliator was to provide a more serene environment in which to hold discussions, as well as a validation of any settlement by the Paris Commercial Court.

**The Settlement Agreement
is an Appropriate Exercise of LBHI's Business Judgment**

25. Ample authority exists for approval of the proposed Settlement Agreement. Section 363 of the Bankruptcy Code provides, in relevant part, "[t]he trustee, after

---

[5] Even though LBHI owns over 99% of the shares of BLB, due to the appointment of the French Administrator, it no longer controls BLB.

notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). LBHI is seeking approval of the Settlement Agreement under section 363 of the Bankruptcy Code (in addition to Rule 9019 of the Bankruptcy Rules) insofar as its actions in approving the BNF Transaction as a shareholder of BLB constitutes the use of LBHI's assets (*i.e.*, its shares in BLB) outside of the ordinary course of business.

26.     Although section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale, disposition or other use of a debtor's assets, courts in the Second Circuit and others, in applying this section, have required that it be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same).

27.     For the reasons set forth above, LBHI's support of the BNF Transaction is in the best interests of LBHI's estate. LBHI has been advised by the French Administrator that he solicited bids for BLB's assets and that the offer from BNF was the only indication of interest received. BNF is a logical buyer for BLB's business as its parent company, Nomura International Plc, has already acquired certain English Lehman affiliates' investment banking, global finance, and equities businesses in Europe and Middle East.

28.     Moreover, the BNF Transaction and the Settlement Agreement are necessary for the Solvent Liquidation and together enable LBHI to reduce its liabilities relating to the Lehman French Companies. As such, LBHI's vote, in its capacity as a shareholder of

BLB, in favor of the BNF Transaction and the transactions contemplated thereby, including the Solvent Liquidation, is in the best interests of LBHI, its estate, its creditors, and other parties in interest and should be approved.

### Relief Under Bankruptcy Rule 6004(g)

29.    Bankruptcy Rule 6004(g) provides that an "order authorizing the use, sale or lease of property . . . is stayed until expiration of 10 days after entry of the order, unless the Court orders otherwise." Fed. R. Bankr. P. 6004(g).  LBHI requests that any order authorizing LBHI to enter into the Settlement Agreement be effective immediately, as the BSA requires the Settlement Agreement to be executed and approved prior to December 31, 2008.

### Notice

30.    No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on September 22, 2008 governing case management and administrative procedures for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel to the French Administrator, Bracewell & Giuliani LLP; and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

31.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) approving the Settlement Agreement and authorizing LBHI to take the actions contemplated thereby, including settling the intercompany claims with the Lehman French Companies and

supporting the BNF Transaction and the Solvent Liquidation in its role as a shareholder and (ii) granting such other and further relief as is just.

Dated: December 8, 2008
       New York, New York

                        /s/ Richard P. Krasnow
                        Richard P. Krasnow

                        WEIL, GOTSHAL & MANGES LLP
                        767 Fifth Avenue
                        New York, New York 10153
                        Telephone: (212) 310-8000
                        Facsimile: (212) 310-8007

                        Attorneys for Debtors
                        and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
:
In re                                                             :    Chapter 11 Case No.
                                                                  :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :    08-13555 (JMP)
                                                                  :
           Debtors.                          :    (Jointly Administered)
:
:
------------------------------------------------------------------x

**ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF ORDER
PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE
AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004,
AND 9019 (I) AUTHORIZING LEHMAN BROTHERS HOLDINGS
INC. TO ENTER INTO A SETTLEMENT AGREEMENT WITH
CERTAIN FRENCH AFFILIATES RELATING TO
INTERCOMPANY CLAIMS, (II) AUTHORIZING
LEHMAN BROTHERS HOLDINGS INC. TO VOTE ITS SHARES
IN FRENCH AFFILIATE TO APPROVE SALE OF SUBSTANTIALLY
ALL OF THE ASSETS OF AND VOLUNTARY DISSOLUTION OF SUCH
AFFILIATE AND (III) GRANTING CERTAIN RELATED RELIEF**

Upon the motion, dated December 8, 2008 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authorization and approval of, among other things, (i) a Settlement Agreement, dated December 3, 2008 (the "Settlement Agreement"), among LBHI, Banque Lehman Brothers S.A. "("BLB"), Lehman Brothers Conseil S.A. ("LBC"), and Lehman Brothers Services SNC ("LBS" and collectively with BLB and LBC, the "Lehman French

Companies"), attached to the Motion as Exhibit A, (ii) the settlement of intercompany claims between LBHI, on the one hand, and the Lehman French Companies, on the other hand, contemplated thereby, (iii) the approval by LBHI in its capacity as a shareholder of BLB of (x) the sale of BLB's businesses to Banque Nomura France ("BNF") pursuant to a certain Business Sale and Purchase Agreement, dated November 17, 2008 (as amended, the "BSA"), among the Lehman French Companies and BNF (the "BNF Transaction") and (y) the voluntary dissolution (the "Solvent Liquidation") of BLB; (iv) any and all other actions contemplated by the Settlement Agreement; and (v) certain related relief, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the order entered September 22, 2008, governing case management and administrative procedures [Docket No. 285] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel to the French Administrator, Bracewell & Giuliani LLP; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing (the

"Hearing") having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Settlement Agreement is approved; and it is further

ORDERED that LBHI is authorized to take any and all actions contemplated by the Settlement Agreement, including, but not limited to, voting in its capacity as shareholder of BLB in favor of the BNF Transaction and the Solvent Liquidation; and it is further

ORDERED that, notwithstanding any applicability of Bankruptcy Rules 6004(h) or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) are waived; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: December __, 2008
      New York, New York

                                                _____
                                                UNITED STATES BANKRUPTCY JUDGE