## SWAP COLLATERAL AGREEMENT

SWAP COLLATERAL AGREEMENT, dated as of August 25, 1999 (the "Agreement"), among Lehman Brothers Special Financing Inc. (the "Secured Party"), Parsec Trading Corp. (the "Pledgor"), and The Chase Manhattan Bank, as custodian hereunder (the "Custodian").

### WITNESSETH

WHEREAS, Secured Party and Pledgor have entered into an ISDA Master Agreement dated as of April 21, 1997 (the "Swap Agreement"), pursuant to which Pledgor has agreed to pledge Eligible Collateral (as defined below) to Secured Party to secure Pledgor's obligations to Secured Party pursuant to the Swap Agreement; and

WHEREAS, Secured Party and Pledgor have requested Custodian to hold that portion of the Eligible Collateral at least equal to the Independent Amount (as defined below) and to perform certain other functions as more fully described herein; and

WHEREAS, Custodian has agreed to act on behalf of Secured Party and Pledgor as custodian of the Eligible Collateral delivered to Custodian by Pledgor for the benefit of Secured Party;

NOW THEREFORE, in consideration of the mutual promises set forth hereafter, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

Whenever used in this Agreement, unless the context otherwise requires, the following words shall have the meanings set forth below:

1. "Account" shall mean a custodial account for the deposit of securities and any related accounts for the deposit of cash established and maintained pursuant to this Agreement in which Eligible Collateral shall be deposited by or on behalf of Pledgor and pledged to Secured Party.

2. "Authorized Person" shall be any officer of Secured Party or Pledgor, as more fully set forth on Schedule II attached hereto, as the case may be, and any other person whether or not any such person is an officer or employee of Secured Party or Pledgor, duly authorized by Secured Party or Pledgor to give Oral and/or Written Instructions on behalf of Secured Party or Pledgor, as the case may be, such person to be designated in a Certificate which contains a specimen signature of such person.

3. "Book-Entry System" shall mean the book-entry system for securities maintained at The Federal Reserve Bank of New York ("FRBNY").

232575:v02

EXHIBIT A

4. "Business Day" shall mean any day on which Custodian is open for business and on which the Book-Entry System and/or Clearing Corporation are open for business.

5. "Cash" shall mean immediately available funds in any of the following currencies: U.S. Dollar, Japanese Yen, Canadian Dollar, Deutsche Mark, British Pound Sterling, Italian Lira and French Franc.

6. "Certificate" shall mean any notice, instruction, schedule or other instrument in writing, authorized or required by this Agreement to be given to Custodian, which is actually received by Custodian and signed by an Authorized Person.

7. "Clearing Corporation" shall include The Depository Trust Company, Participants Trust Company and any other clearing corporation within the meaning of Section 8-102(3) of the Uniform Commercial Code of the State of New York, as amended, or otherwise authorized to act as a securities depository or clearing agency.

8. "Collateral Value" shall mean the amount obtained by dividing the Market Value of Eligible Collateral by the applicable Valuation Percentage.

9. "Eligible Collateral" shall mean cash, and the types of securities designated as Eligible Collateral on Schedule I attached hereto.

10. "Independent Amount" shall mean the Independent Amount, as defined in the Swap Agreement, as reported to Custodian pursuant to Article IV, Paragraph 1 hereof.

11. "Market Value of Eligible Collateral" shall mean, with respect to each type of security constituting Eligible Collateral, the sum of (i) the market value of each such security in the Account based on the most recently available closing bid price for each such security as made available to Custodian by a recognized pricing service selected by Custodian; provided however, that if such service does not report a closing bid price for a particular security, the market value shall be as determined by Custodian in its sole discretion based on information furnished to Custodian by one or more brokers or dealers in such security, and (ii) accrued interest on each such security (to the extent not reflected in such market value). In the case of Cash, the face amount thereof shall be deemed the Market Value; provided, however, that with respect to any Cash denominated in a currency other than U.S. Dollars, the face amount shall be converted to the spot exchange rate U.S. Dollar equivalent as Chase shall determine in a commercially reasonable manner at the time of such conversion.

12. "Oral Instructions" shall mean verbal instructions actually received by Custodian from an Authorized Person or from a person reasonably believed by Custodian to be an Authorized Person.

13. "Proceeds" shall mean any principal or interest payments or other distributions made in connection with Eligible Collateral.

14. "Valuation Percentage" shall mean the percentage indicated on Schedule I with respect to specific types of Eligible Collateral, as Schedule I may be amended from time to time.

15. "Written Instructions" shall mean written communications actually received by Custodian from an Authorized Person or from a person reasonably believed by Custodian to be an Authorized Person by letter, telex, telecopy, facsimile, or other on-line system, or any other method whereby Custodian is able to verify with a reasonable degree of certainty the identity of the sender of such communications.

All references to time in this Agreement shall mean the time in effect on that day in New York, New York.

## ARTICLE II
## APPOINTMENT OF CUSTODIAN; THE ACCOUNT

1. Pledgor and Secured Party hereby appoint Custodian as custodian of all Eligible Collateral at any time delivered to Custodian, in accordance with the appropriate cash or security delivery instructions as set forth in Schedule III attached hereto, by or on behalf of Pledgor during the term of this Agreement. Custodian hereby accepts appointment as such custodian and agrees to establish and maintain the Account and appropriate records identifying the Eligible Collateral as pledged by Pledgor to Secured Party. Pledgor, Secured Party and Custodian agree that the Eligible Collateral will be held for Secured Party in the Account by Custodian as agent of Secured Party and the parties further agree that Custodian will take such action with respect to any Eligible Collateral as Secured Party may instruct and that in no event shall any consent of Pledgor be required in order for Custodian to act in accordance with Secured Party's instructions to it; provided that, Custodian shall be held harmless in connection with any action or inaction implementing Secured Party's instructions. Secured Party hereby covenants, for the benefit of Pledgor, that Secured Party will not instruct Custodian to deliver or cause to be transferred any Eligible Collateral to any person other than Pledgor unless and until an Early Termination Date has occurred or been designated as the result of an Event of Default or Specified Condition with respect to the Pledgor or Pledgor has defaulted on its Obligations pursuant to the Swap Agreement. The foregoing covenant is for the benefit of Pledgor only and shall in no way be deemed to constitute a limitation on Secured Party's right at any time to instruct Custodian or on Custodian's ability to rely on such instructions. If Custodian receives Written Instructions from Secured Party prior to 11:00 a.m. on a Business Day directing Custodian to transfer any Eligible Collateral, Custodian shall so transfer such Eligible Collateral prior to the close of business on that Business Day and Custodian's duties hereunder with respect to such Eligible Collateral shall terminate, and Custodian shall be held harmless therefor.

2. Pledgor and Secured Party agree that Eligible Collateral to be delivered to Custodian for deposit in the Account may be in the form of credits to the account of Custodian either at the Book-Entry System or a Clearing Corporation or by delivery to Custodian of physical certificates in bearer form or readily negotiable so as to constitute good delivery under securities industry practices. Pledgor and Secured Party hereby authorize Custodian on a continuous and on-going basis, to deposit in the Book-Entry System and/or the appropriate Clearing Corporation all Eligible Collateral eligible for deposit therein and to utilize the Book-

232575.v02

Entry System, Clearing Corporation and the receipt and delivery of physical certificates or any combination thereof in connection with its performance hereunder. Pledgor and Secured Party also authorize Custodian to hold Eligible Collateral in registered form in its name or the name of its nominee or nominees. Where Eligible Collateral eligible for deposit in the Book-Entry System or Clearing Corporation is transferred to the Account, Custodian shall identify such Eligible Collateral on its books and records as belonging to Pledgor, and pledged to Secured Party and shall send Secured Party a confirmation in accordance with Article IV, Paragraph 13.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES

1.  Secured Party, Pledgor and Custodian each represents and warrants that:

    (i) It is duly organized and existing under the laws of the jurisdiction of its organization with full power and authority to execute and deliver this Agreement and to perform all of the duties and obligations to be performed by it hereunder;

    (ii) This Agreement is legally and validly entered into, does not, and will not, violate any ordinance, charter, by-law, rule or statute applicable to it, and is enforceable in accordance with its terms, except as may be limited by bankruptcy, insolvency or similar laws, or by equitable principles relating to or limiting creditors' rights generally; and

    (iii) The person executing this Agreement on its behalf has been duly and properly authorized to do so.

2.  Pledgor further represents and warrants that it owns the Eligible Collateral transferred into the Account from time to time free and clear of all liens, claims, security interests and encumbrances (except those granted herein), and Pledgor hereby grants to Secured Party a pledge and first priority security interest in all of Pledgor's right, title, and interest in and to the Eligible Collateral, as security for Pledgor's obligations to Secured Party pursuant to the Swap Agreement.

3.  Custodian further represents and warrants that:

    (i) It is a New York banking corporation with its principal office at 270 Park Avenue, New York, New York 10017;

    (ii) It will maintain the Account as a custody account and shall administer the Account in the same manner it administers similar accounts established for the same purpose; and

    (iii) It is a "Member Bank" of FRBNY (within the meaning of 31 C.F.R. 306.115(g)) and maintains a book-entry securities account with FRBNY and each Clearing Corporation in which it holds Eligible Collateral hereunder.

232575;v02

## ARTICLE IV
## CUSTODY OF CASH AND SECURITIES

1.  At Secured Party's option or at Pledgor's request, Secured Party shall provide Written Instructions by 11:00 a.m. to Custodian and Pledgor indicating the Independent Amount. Until new Written Instructions indicating a new Independent Amount are received by Custodian, Custodian shall conclusively presume that the Independent Amount has remained unchanged. On each Business Day Custodian shall calculate the Collateral Value and shall, upon request of Pledgor or Secured Party, notify Pledgor or Secured Party, as the case may be, of the Collateral Value. If on any Business Day the Collateral Value of Eligible Collateral is less than the Independent Amount, Custodian agrees to provide notice thereof and of the amount of such shortfall (a "Shortfall Notice") as promptly as practicable (and in any event shall endeavor to provide the Shortfall Notice within one (1) Business Day) to Pledgor and Secured Party. Pledgor agrees to deliver or cause to be delivered, as provided below, to Custodian for deposit in the Account additional Eligible Collateral ("Additional Collateral") in an amount such that the Collateral Value of Eligible Collateral in the Account, including such Additional Collateral, equals or exceeds the Independent Amount. Pledgor agrees that if a Shortfall Notice is received prior to 12:00 noon on a Business Day, such delivery shall be made on the second succeeding Business Day. In the event that at any time Pledgor does not deliver Additional Collateral as required hereby, Custodian shall, as promptly as practicable, notify Secured Party of such failure.

2.  Custodian shall determine that all Additional Collateral to be transferred to the Account constitutes Eligible Collateral. Any Additional Collateral which does not constitute Eligible Collateral shall not be transferred to the Account.

3.  If, subject to Article IV, Paragraph 12 after the close of trading on any Business Day, the Collateral Value of Eligible Collateral in the Account is greater than the Independent Amount, Custodian is authorized to transfer from the Account Eligible Collateral in an amount equal to such excess in accordance with Oral or Written Instructions from Pledgor. The Custodian is hereby authorized by Pledgor to use the cash and security delivery instructions set forth on Schedule IV attached hereto when transferring excess Eligible Collateral to it.

4.  In the event any other payment instructions are given in writing, by telephone or by telecopier, Custodian is authorized to seek confirmation of such instructions by telephone call-back to any person designated on Schedule II attached hereto with respect to an instruction purportedly given by the Pledgor and to any person designated on Schedule II attached hereto with respect to an instruction purportedly given by the Secured Party, and Custodian may rely upon the confirmation of anyone purporting to be a person so designated. The persons and telephone numbers for call-backs may be changed only in writing, purporting to be issued in the name of Pledgor or Secured Party, as the case may be, actually received and acknowledged by Custodian. Pledgor and Secured Party each acknowledges that such security procedure is commercially reasonable. It is understood, however, that Custodian shall not be required to verify payment instructions pursuant to the above described security procedure when the amounts to be transferred are below dollar thresholds from time to time established by Custodian, when payment information (other than dollar amount and date of payment) have been pre-established with Custodian, when Pledgor is the beneficiary of a Pledgor initiated funds

232575:v02

transfer or the Secured Party is the beneficiary of a Secured Party initiated funds transfer or when the circumstances otherwise warrant as determined by Custodian in its reasonable discretion.

5.     It is understood and agreed that Custodian and the beneficiary's bank in any funds transfer may solely rely upon any account number or similar identifying number provided by Pledgor to identify (i) the beneficiary, (ii) the beneficiary's bank, or (iii) an intermediary bank. Custodian may debit Pledgor's account in connection with any payment orders issued by Custodian using any such identifying numbers, even where their use may result in a person other than the beneficiary being paid, or the transfer of funds to a bank other than the beneficiary's bank or an intermediary bank designated by Pledgor.

6.     In receiving and processing payment instructions by Pledgor or Secured Party and in issuing payment orders in furtherance thereof, Custodian, to the maximum extent permitted by law, shall not be liable for: events or circumstances beyond reasonable control of Custodian or (ii) indirect, special or consequential damages, even if Custodian is advised as to the possibility thereof.

7.     Custodian may provide Pledgor and Secured Party, from time to time, with additional or changed procedures or instructions in connection with the matters described herein, upon written notice to Pledgor and Secured Party.

8.     As long as Custodian has not received a Certificate pursuant to Article IV, Paragraph 11 or 12, Secured Party hereby grants Pledgor authority to substitute other Eligible Collateral for any Eligible Collateral which is held in the Account in accordance with the terms of this provision. Pledgor may exercise the right of substitution by giving Custodian Oral Instructions or Written Instructions to transfer certain Eligible Collateral out of the Account upon the delivery into the Account of substitute Eligible Collateral ("Substitute Collateral") in an amount such that the Collateral Value in the Account, including such Substitute Collateral, equals or exceeds the Independent Amount. Custodian shall determine that all Substitute Collateral transferred to the Account constitutes Eligible Collateral. Any Substitute Collateral which does not constitute Eligible Collateral shall not be transferred to the Account and shall not be included in Custodian's calculation of Collateral Value.

9.     If a dispute arises between Pledgor and Secured Party with respect to the Collateral Value of Eligible Collateral, Pledgor and Secured Party agree that such dispute shall be resolved in accordance with the following provisions:

(i)     Pledgor and Secured Party shall notify Custodian of the dispute with respect to the Collateral Value of Eligible Collateral ("Dispute Notice");

(ii)    Pledgor and Secured Party shall then jointly notify Custodian of a recalculated value with respect to the Collateral Value of Eligible Collateral ("Recalculated Value") which shall supplant the disputed Collateral Value of Eligible Collateral.

(iii)   Custodian may, upon receipt, fully rely, without any inquiry, on the Recalculated Value;

(iv) Notwithstanding anything to the contrary herein, no Eligible Collateral shall be transferred to or from the Account until any dispute is resolved and Custodian has received joint notice from Pledgor and Secured Party that the dispute has been resolved; and

(v) Notwithstanding anything to the contrary herein, Custodian shall be held harmless from and against any Losses incurred in connection with Custodian's implementation of the provisions herein with respect to any Notice of Dispute or any Recalculated Value.

10. Custodian shall not subject any Eligible Collateral in the Account to any security interest, lien or right of setoff in favor of Custodian or any third party claiming through Custodian, and Custodian shall not pledge, encumber, hypothecate, transfer, dispose of, or otherwise grant any third party an interest in, any Eligible Collateral.

11. Until such time that Custodian shall receive a Certificate from Secured Party certifying that Pledgor has defaulted in its obligations to Secured Party pursuant to the Swap Agreement, Custodian shall credit all Proceeds received by Custodian to the cash account identified by Pledgor in Schedule IV attached hereto,.

12. In the event that Custodian receives a Certificate from Secured Party certifying that (i) Pledgor has defaulted in its obligations to Secured Party pursuant to the Swap Agreement or (ii) an Early Termination Date (as defined in the Swap Agreement) has been designated under and pursuant to the Swap Agreement, Custodian shall be authorized, without further inquiry, to act upon Written Instructions from Secured Party with respect to the disposition of all or any part of the Eligible Collateral. If at any time after Custodian has received such Certificate, Custodian receives Written Instructions from Secured Party prior to 11:00 a.m. on a Business Day directing Custodian to transfer any Eligible Collateral, Custodian shall so transfer such Eligible Collateral prior to the close of business of that Business Day and Custodian's duties hereunder with respect to such Eligible Collateral shall terminate. Unless instructed differently, the Custodian is hereby authorized by the Secured Party to use the cash and security delivery instructions set forth on Schedule V attached hereto when transferring excess Eligible Collateral to it.

13. Custodian will provide Pledgor and Secured Party with a confirmation statement on each Business Day on which a transfer or substitution occurs and each month with a statement identifying all Eligible Collateral in the Account and showing all transactions in the Account for the past month. Secured Party and Pledgor shall promptly review all such statements and shall promptly advise Custodian of any error, omission or inaccuracy in each statements. Custodian shall undertake to correct any errors, failures or omissions that are reported to Custodian by Secured Party or Pledgor. Any such corrections shall be reflected on subsequent statements.

14. Pledgor acknowledges and agrees that any noncompliance by Secured Party with any obligations to Pledgor hereunder or under the Swap Agreement shall not be deemed a violation of such obligations to the extent such non-compliance is attributable solely to the action or inaction of Custodian, the Book-Entry System, any Clearing Corporation or their successors or nominees. Notwithstanding the foregoing, it is expressly understood and agreed that Custodian's liability (if any) shall be determined in accordance with Article V, Paragraph 1 (a)

232575:v02

## ARTICLE V
## CONCERNING CUSTODIAN

1. (a) Custodian shall use reasonable care in performing its obligations under this Agreement. Custodian shall not be liable for any costs, expenses, damages, liabilities or claims, including reasonable fees of counsel (collectively, "Losses"), resulting from its action or inaction in connection with this Agreement, including Losses which are incurred by reason of any action or inaction by the Book-Entry System, any Clearing Corporation, or their successors or nominees, except for those Losses arising out of Custodian's gross negligence, bad faith or willful misconduct. In no event shall Custodian be liable to Pledgor, Secured Party or any third party for special, indirect or consequential damages, or lost profits or loss of business, arising under or in connection with this Agreement. Custodian may, with respect to questions of law, apply for and obtain the advice and opinion of counsel and shall be fully protected with respect to anything done or omitted by it in good faith in conformity with such reasonable advice or opinion. The limitations of liability with respect to Custodian shall survive the termination of this Agreement.

(b) Pledgor agrees to indemnify and defend Custodian and hold it harmless from and against any and all Losses (including claims by Pledgor or Secured Party) which are sustained by Custodian as a result of Custodian's action or inaction in connection with this Agreement except to the extent that any Losses arise out of Custodian's gross negligence, bad faith or willful misconduct.

(c) Secured Party agrees to indemnify and defend Custodian and hold it harmless from and against any and all Losses which are sustained by Custodian by reason of or as a result of (i) any negligence, bad faith or willful misconduct by Secured Party in any way relating to, or arising from, this Agreement or transactions hereunder and (ii) any action taken or omitted by Custodian pursuant to Secured Party's Oral or Written Instructions. Notwithstanding the foregoing, Secured Party shall not indemnify Custodian to the extent those Losses arise out of Custodian's gross negligence, bad faith or willful misconduct.

(d) It is expressly understood and agreed that Custodian's right to indemnification hereunder shall be enforceable against Pledgor and Secured Party directly, without any obligation to first proceed against any third party for whom they may act, and irrespective of any rights or recourse that Secured Party or Pledgor may have against any such third party. This indemnity shall be a continuing obligation of Pledgor and Secured Party, their respective successors and assigns, notwithstanding the termination of this Agreement.

2. Without limiting the generality of the foregoing, Custodian shall be under no obligation to inquire into, and shall not be liable for:

(i) The validity of the issue of any securities purchased or sold by or for Pledgor or Secured Party;

232575.v02

(ii)     The due authority of any Authorized Person to act on behalf of Pledgor or Secured Party with respect to Eligible Collateral held in the Account; or

(iii)    The due authority of Pledgor or Secured Party to purchase, sell or hold any particular security hereunder.

3.    Custodian shall not be under any duty or obligation to take action to effect collection of any amount due on the Eligible Collateral in the Account whether or not the Eligible Collateral upon which such amount is payable is in default, or if payment is refused after due demand or presentation, unless and until (i) it shall be directed to take such action by Written Instructions and (ii) it shall be assured to its satisfaction of reimbursement of its reasonable costs and expenses in connection with any such action.

4.    Custodian shall not be responsible for, or considered to be Custodian of, any Eligible Collateral or money (whether or not represented by any check, draft, or other instrument for the payment of money) received by it for deposit in the Account until Custodian actually receives and collects such Eligible Collateral or funds directly or by the final crediting of Custodian's account on the books of the Book-Entry System or the appropriate Clearing Corporation. Custodian will be entitled to reverse any credits made on Secured Party's behalf where such credits have been previously made and Eligible Collateral or monies are not finally collected.

5.    Custodian shall be entitled to receive and Pledgor agrees to pay to Custodian such compensation as may be agreed upon from time to time between Custodian and Pledgor and Custodian's out-of-pocket expenses.

6.    Custodian shall be entitled to rely upon any Certificates, Written or Oral Instructions actually received by Custodian and reasonably believed by Custodian to be duly authorized and delivered. Pledgor and Secured Party each agrees to forward to Custodian Written Instructions confirming Oral Instructions in such manner so that such Written Instructions are received by Custodian by the close of business of the same day that such Oral Instructions are given to Custodian. Pledgor and Secured Party each agrees that the fact that such confirming Written Instructions are not received or that contrary instructions are received by Custodian shall in no way affect the validity or enforceability of the transactions previously authorized and effected by Custodian.

7.    It is understood that Custodian is authorized to supply any information regarding the Account which is required by any law or governmental regulation now or hereafter in effect.

8.    Custodian shall not be responsible or liable for any failure or delay in the performance of its obligations under this Agreement arising out of or caused, directly or indirectly, by circumstances beyond its reasonable control, including without limitation, acts of God, earthquakes, fires, floods, wars, civil or military disturbances, sabotage, epidemics, riots, interruptions, loss or malfunctions of utilities, transportation, computer (hardware or software) or communications service; labor disputes; acts of civil or military authority; governmental, judicial

232575:v02

or regulatory actions; provided however, that Custodian shall use its best efforts to resume performance as soon as possible.

9. Custodian is authorized to utilize any generally recognized pricing information service (including brokers and dealers of securities) in order to perform its valuation responsibilities hereunder, and Secured Party and Pledgor agree to hold Custodian harmless from and against any Losses incurred as a result of errors or omissions of any such pricing information service, broker or dealer.

10. Custodian shall have no duties or responsibilities whatsoever except such duties and responsibilities as are specifically set forth in this Agreement, and no covenant or obligation shall be implied against Custodian in connection with this Agreement.

## ARTICLE VI
## TERMINATION

Any of the parties hereto may terminate this Agreement by giving to the other parties a notice in writing specifying the date of such termination, which shall be not less than ninety (90) days after the date of giving of such notice. Pledgor may terminate this Agreement at any time that no Eligible Collateral is in the Account by giving notice in writing to Custodian and Secured Party specifying the date of such termination. Such notice shall not affect or terminate Secured Party's security interest in the Eligible Collateral. Upon termination hereof, Pledgor shall pay to Custodian such compensation as may be due to Custodian as of the date of such termination, and Custodian shall follow such reasonable Written Instructions of Pledgor and Secured Party concerning the transfer of custody of Eligible Collateral, records and other items. In the event of discrepancy between Written Instructions of Pledgor and Secured Party, Custodian shall act pursuant to Secured Party's Written Instructions. Upon the date set forth in a termination notice this Agreement shall terminate, and, except as otherwise provided herein, all obligations of the parties to each other hereunder shall cease.

## ARTICLE VII
## MISCELLANEOUS

1. Pledgor and Secured Party each agrees to furnish to Custodian a new Certificate in the event that any presently Authorized Person ceases to be an Authorized Person or in the event that any other Authorized Persons are appointed and authorized. Until such new Certificate is received, Custodian shall be fully protected in acting upon Oral Instructions or signatures of the present Authorized Persons, as set forth on Schedule II attached hereto.

2. Any notice or other instrument in writing, authorized or required by this Agreement to be given to Custodian shall be sufficiently given if addressed to Custodian and received by it at its offices at 450 West 33rd Street, 10th Floor, New York, New York 10001, Attention: Pledged Asset Control Services or at such other place as Custodian may from time to time designate in writing.

232575-v02

3. Any notice or other instrument in writing, authorized or required by this Agreement to be given to Pledgor shall be sufficiently given if addressed to Pledgor and received by it at its offices at Mees Pierson Fund Services, Montague Sterling Centre, East Bay Street, Nassau, Bahamas with a copy to: The Watermark Group, 100 Thanet Circle, Suite 201, Princeton, NJ 08549 or at such other place as Pledgor may from time to time designate in writing.

4. Any notice or other instrument in writing, authorized or required by this Agreement to be given to Secured Party shall be sufficiently given if addressed to Secured Party and received by it at its offices at 200 Vesey Street, 7th Floor, New York, New York 10285, Attention: Derivatives Margin or at such other place as Secured Party may from time to time designate in writing.

5. Upon reasonable request, Secured Party and Pledgor shall have access to Custodian's books and records maintained in connection with this Agreement during Custodian's normal business hours. Upon reasonable request, copies of any such books and records shall be provided to Secured Party or Pledgor at its expense.

6. In case any provision in or obligation under this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations shall not in any way be affected or impaired thereby, and if any provision is inapplicable to any person or circumstances, it shall nevertheless remain applicable to all other persons and circumstances.

7. This Agreement represents the entire agreement among the parties hereto with respect to transactions subject to this Agreement and may not be amended or modified in any manner except by a written agreement executed by all of the parties hereto.

8. This Agreement shall extend to and shall be binding upon the parties hereto, and their respective successors and assigns; provided, however, that this Agreement shall not be assignable by any party without the written consent of the other parties.

9. This Agreement shall be construed in accordance with the laws of the State of New York without regard to conflict of laws principles thereof. The parties hereby consent to the jurisdiction of a state of federal court situated in New York City, New York in connection with any dispute arising hereunder. Each party hereto hereby waives trial by jury in any proceeding involving, directly or indirectly, any matter in any way arising out of, related to, or connected with, this Agreement. To the extent that in any jurisdiction any party may now or hereafter be entitled to claim, for itself or its assets, immunity from suit, execution, attachment (before or after judgment) or other legal process, each party hereto irrevocably agrees not to claim, and it hereby waives, such immunity.

10. The headings and captions in this Agreement are for reference only and shall not affect the construction or interpretation of any of its provisions.

232575;v02

11.   This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but such counterparts shall, together, constitute only one instrument.

12.   In the event of any inconsistency between the terms and conditions of the Swap Agreement and this Agreement with respect to the rights, duties or obligations of Custodian, the terms and conditions of this Agreement shall govern.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers, thereunto duly authorized, on the day and year first above written.

LEHMAN BROTHERS SPECIAL FINANCING INC.

By: _____
Title:
**Sherri Venokur**
**Vice President**

PARSEC TRADING CORP.

By: _____
Title: Dawn E. Davies
Director

THE CHASE MANHATTAN BANK

By: _____
Title: Joseph Corri
VP

232575:v02