**CLIFFORD CHANCE US LLP**
31 West 52nd Street
New York, New York 10019
Telephone (212) 878-8000
Facsimile (212) 878-8375
Jennifer C. DeMarco (JD-9284)
David A. Sullivan (DS-8967)
Sara M. Tapinekis (ST-4382)

*Counsel to M&G Investment Management Limited*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑ x
: 
In re: : Chapter 11
: 
LEHMAN BROTHERS HOLDINGS INC., *et al.*, : Case No. 08-13555 (JMP)
: 
Debtors. : (Jointly Administered)
: 
‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑ x

## OBJECTION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE APPROVING ASSUMPTION OR REJECTION OF OPEN TRADE CONTRACTS

M&G Investment Management Limited ("M&G"), on behalf of M&G Secured

Debt Fund Limited (the "Secured Debt Fund"), M&G Dynamic European Loan Fund Limited

(the "Dynamic Fund") and The Prudential Assurance Company Limited (PAC) (the "PAC Fund"

and together with the Secured Debt Fund and the Dynamic Fund, the "M&G Managed Funds" or

the "Funds"), by and through its undersigned counsel, respectfully submits this objection to the

Debtors' Motion For An Order Pursuant To Section 365 Of The Bankruptcy Code Approving the

Assumption Or Rejection Of Open Trade Confirmations (Docket No. 1541) (the "Motion") and

Partial Joinder in Limited Objection of Citibank to the Motion (the "Citibank Objection")

(Docket No. 1915) (the "Objection and Joinder").  In support of its Objection and Joinder, M&G respectfully states as follows:

## PRELIMINARY STATEMENT

Prior to the commencement of the above-captioned chapter 11 cases, the M&G Managed Funds and the Stitching Shell Pensioenfonds (the "Shell Fund"), each managed by M&G, entered into individual loan trade confirmations with Lehman Commercial Paper Inc. ("LCPI") whereby each of the Funds and the Shell Fund agreed to purchase Intergen debt from LCPI (the "Intergen Trades").  Consistent with that certain Stipulation and Agreed Order Resolving Motion to Compel, dated October 31, 2008 (the "Original Stipulation") as revised by the Revised Stipulation and Agreed Order Resolving Motion to Compel, dated November 5, 2008 (the "Revised Stipulation" and together with the Original Stipulation, the "Stipulations"), the Debtors notified M&G on November 4, 2008 that they intended to reject the Intergen Trades.  The Motion, dated November 14, 2008, specifically included the Intergen Trades among the "Rejected Trades" listed on Exhibit B to the Motion.[1]  The purpose of the Stipulations was to provide non-debtor counterparties to open loan trades with certainty as to how their trades would be dealt with in the Debtors' bankruptcy cases and to thereby enable counterparties to take commercially appropriate steps in response.  As such, the Debtors did not reserve their rights to change their position and assume trade confirmations that had been designated for rejection in either the Motion or their initial communication to M&G; nor did they at any time communicate to M&G or the M&G Managed Funds that the Debtors reserved the right to assume the trade confirmations designated for rejection.

---

[1] M&G notes that although the Debtors reflected the four separate trade confirmations with each of the M&G Managed Funds as a single trade confirmation to be rejected on Exhibit B to the Motion, there are four separate trade confirmations for each M&G Managed Funds, and each transaction is a separate transaction.

2

Given the low threshold for obtaining court approval on a motion to reject an executory contract, the M&G Managed Funds' obligation to mitigate damages resulting from the rejection and the unprecedented volatility in the loan trading market, the M&G Managed Funds, in reliance on the Debtors' representations that Intergen Trades would be rejected, purchased debt on the secondary market to replace the trades that were designated for rejection. On November 25, 2008, and notwithstanding the earlier representations that LCPI would be rejecting the Intergen Trades, the Debtors notified M&G that they changed their minds and now intended to assume the Intergen Trades and that they would amend the schedules to include those trades on the amended list.

If the Debtors are now permitted to assume the Intergen Trades with the M&G Managed Funds, the PAC Fund and the Dynamic Fund would be forced to sell assets into a reduced market in order to raise the capital necessary to complete the trades that the LCPI now wishes to assume. Moreover, the Secured Debt Fund purchased Intergen debt from a third party to cover the trade that it originally had entered into with LCPI (the "Intergen Cover Trade"). Thus, the Secured Debt Fund would suffer detrimental effect if forced to consummate the trade now sought to be assumed.

The Debtors' actions, upon which M&G reasonably relied, caused the Secured Debt Fund to enter into the Intergen Cover Trade and caused the other M&G Managed Funds to enter into cover trades, which depleted their available cash. To the extent that the Intergen Trades would have been rejected as originally proposed, the Funds' actions would have mitigated the Funds' rejection damages and saved LCPI's estate accordingly. An assumption of the Intergen Trades, however, would require the PAC Fund and the Dynamic Fund to sell assets, which otherwise would not now be sold, in a fire sale manner, so as to be in a position to complete the trades. In

3

addition, an assumption would force the Secured Debt Fund to enter into a trade for which it has already covered.  Given the purpose of the Stipulation and the Debtors' representations, LCPI should be equitably estopped from assuming the Intergen Trades with the M&G Managed Funds[2] because doing so would cause the Funds to incur substantial financial losses.  Moreover, LCPI should not be permitted to assume the Intergen Trades with the M&G Managed Funds until it has cured defaults existing under the Intergen Trades and compensated the Funds for the resulting pecuniary losses.

Although the Motion currently seeks authority to *reject* the loan trades with the M&G Managed Funds and the Debtors have not amended the Motion to seek authority to *assume* them, M&G objects to the Debtors' Motion to the extent it is amended to seek authority to assume the Intergen Trades with the Funds.[3]  Moreover, M&G joins in and fully adopts and incorporates as its own by reference the legal arguments relating to setoff rights set forth in section II of the Citibank Objection and adequate assurance of future performance in section III of the Citibank Objection.

## BACKGROUND FACTS

1.    On September 15, 2008 and at various dates thereafter (each, as applicable, a "Petition Date"), Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliates, including LCPI (collectively, the "Debtors") filed a voluntary petition for relief under Chapter 11 of Title

---

[2] M&G notes that the Shell Fund currently appears to be in a position to complete the loan trade confirmation sought to be assumed by the Debtors without suffering the resulting financial harm that M&G Managed Funds would suffer and as such, M&G does not object to the assumption of the loan trade confirmation with the Shell Fund.

[3] M&G notes that November 28, 2008 was the deadline for objecting to the Motion, but because the Motion seeks to *reject* the loan trades at issue and M&G was not notified that the Debtors were going to seek permission to *assume* the trades at issue until very late in the day on November 25, 2008, M&G respectfully requests that this Court waive the objection deadline as it applies to M&G.  As of the date of the filing of this Objection and Joinder, the Debtors have not amended the Motion to seek authority to assume the loan trades at issue.

11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York.

2.      M&G is an asset manager within the Prudential Group that operates and manages retail and institutional funds, including the M&G Managed Funds and the Shell Fund.

3.      On September 18, 2008, LCPI and each of the M&G Managed Funds and the Shell Fund entered into the Intergen Trades, pursuant to which LCPI agreed to sell, and the M&G Managed Fund and the Shell Fund agreed to purchase, various amounts of Intergen N.V. debt totaling $20,000,000.[4]  True and correct copies of the trade confirmations with respect to each of the Intergen Trades are attached hereto as Exhibit A.

4.      The Intergen Trades have not been consummated.

5.      On October 31, 2008, the Debtors filed a Notice of Presentment seeking Bankruptcy Court approval of the Original Stipulation (Docket No. 1300) pursuant to which, *inter alia*, the Debtors agreed to notify each counterparty to an open loan trade whether it would reject, assume, or assume and assign such open trade on or before the close of business on November 7, 2008.  On November 5, 2008, this Court approved the Revised Stipulation, which revised the Original Stipulation to provide the Debtors with additional time to make determinations with respect to 49 open trades; none of which include the Intergen Trades.

6.      As required pursuant to the terms of the Stipulations, by electronic mail correspondence dated November 4, 2008, Raymond Chin of LBHI informed M&G that the Debtors intended to reject the Intergen Trades.  A true and correct copy of the November 4th e-mail is attached hereto as Exhibit B.

---

[4] Specifically, the Secured Debt Fund agreed to purchase $1 million of Intergen debt, the Shell Fund agreed to purchase $1 million of Intergen debt, the Dynamic Fund agreed to purchase $2.3 million of Intergen debt and the PAC Fund agreed to purchase $15,2 million of Intergen debt.

7.     On November 14, 2008, the Debtors filed the Motion seeking authorization to assume or reject certain trade confirmations.  The Intergen Trades are included on the list of "Rejected Trades" annexed as Exhibit B to the Motion.

8.     Neither the November 4th notification nor the Motion contain a reservation of rights or in any way inform M&G or the Funds that the Debtors might change their minds and decide instead to assume the Intergen Trades.

9.     In reliance on the terms of the Stipulations and the Debtors' representations that LCPI planned to reject the Intergen Trades, and to mitigate damages that the M&G Managed Funds would incur as a result of LCPI's rejection of the Intergen Trades, on November 15, 2008, M&G caused the M&G Managed Funds to purchase replacement debt from third parties (the "Cover Trades").

10.     On November 25, 2008, M&G received electronic mail correspondence from Jessica Markowitz of Lehman Brothers informing M&G that the Debtors had changed their position and now intend to assume the Intergen Trades.  A true and correct copy of the November 25th e-mail is attached hereto as Exhibit C.

11.     It is the policy of the M&G Managed Funds to be fully invested at any given time. Because the available cash held by the PAC Fund and the Dynamic Fund was used to enter into the Cover Trades, these funds currently lack available capital to consummate the Intergen Trades.  In order to consummate the Intergen Trades, the PAC Fund and the Dynamic Fund would be forced to liquidate assets which otherwise would not have been sold and at a lower value than these funds would recover for these assets if they were held until the funds would have sold them in a more favorable market.

12.     In addition, the Secured Debt Fund entered into the Intergen Cover Trade to cover

the trade confirmation between LBSF and the Secured Debt Fund now sought to be assumed

## OBJECTION

### A.    LCPI is Equitably Estopped from Assuming the Intergen Trades with the M&G Managed Funds.

13.     Through the November 4th notice and the Motion, the Debtors' represented to

M&G their intent to reject the Intergen Trades.  These representations caused M&G to enter into

the Covers Trades that required the PAC Fund and the Dynamic Fund to utilize substantially all

of their available cash for investments.  As such, these funds no longer hold sufficient capital to

complete the Intergen Trades, which they were assured would be, and in fact were, the subject of

the rejection motion.  Likewise, the Debtors' representations caused the Secured Debt Fund to

enter into the Intergen Cover Trade.  LCPI should not be permitted to assume the Intergen

Trades with the M&G Managed Funds and benefit from the harm that would result to these

funds.

14.     A chief purpose of the Stipulation was to provide counterparties to open loan

trades certainty as to the Debtors' intentions with respect to such trades in a timely manner so

that counterparties would not be put in the position of bearing a disproportionate share of the risk

regarding fluctuations in the market prices of loans.  In accordance with the procedures that the

Debtors established and set forth in the Stipulations as to the assumption and rejection of trades,

M&G waited for the Debtors' notification on November 4th of their intention with respect to the

Intergen Trades.

15.     In none of the Debtors' communications did they express any intent to reserve

rights to subsequently seek to assume trades that they represented would be rejected.  If the

Debtors had advised M&G of their intent to reserve rights to revisit determinations with respect

to trades designated for rejection, M&G would not have entered into the Cover Trades. Because

M&G reasonably relied on the Debtors' representations, which caused the M&G Managed Funds

to enter into the Cover Trades, LCPI should be equitably estopped from changing its position and

assuming the Intergen Trades to the financial detriment of the Funds.

16.     The Bankruptcy Court is a court of equity and bankruptcy proceedings are

inherently proceedings in equity. *See Eastern Airlines, Inc. v. Insurance Co. of the State of

Penn. (In re Ionosphere)*, 85 F.3d 992, 999 (2d Cir. 1996). As such, bankruptcy courts apply

principles and rules of equity, including equitable estoppel, in bankruptcy cases. *See id.*

17.     Equitable estoppel is grounded on notions of fair dealing and good conscience,

and is a doctrine imposed by law in the interest of fairness to prevent the enforcement of rights

which would work fraud or injustice upon the person against whom enforcement is sought and

who, in justifiable reliance upon the opposing party's words or conduct, has been misled into

acting upon the belief that such enforcement would not be sought. *See id.*

18.     Equitable estoppel is a bar that prevents one from asserting a claim or right that

contradicts what one has said or done before or what has been legally established as true. *See In

re Zyprexa Prods. Liability Litig.*, 433 F.Supp.2d 268, 272 (E.D.N.Y. 2006).

19.     One species of equitable estoppel is promissory estoppel, which may be applied

where, as here, there has been a clear and unambiguous promise, reasonable and foreseeable

reliance on the promise, and an unconscionable injury as a result of reliance. *See In re

Ionosphere*, 85 F.3d at 999. Equitable estoppel is invoked successfully against a party who has

occasioned a loss through an obvious lack of care or an affirmative act fairly identified as the

cause of the loss. *See Joint Venture Asset Acquisition v. Zellner et al.*, 808 F.Supp. 289, 303

(S.D.N.Y. 1992).

20.    M&G and the M&G Managed Funds reasonably relied on the Debtors' representations to them, and to this Court in the Motion, that the Debtors intended to reject the Intergen Trades.  Although a debtor's rejection of an executory contract under section 365 of the Bankruptcy Code is subject to court approval, in determining whether a debtor may be permitted to reject executory contracts courts apply the business judgment test, and absent a showing of bad faith or an abuse of business discretion, the debtor's business judgment generally is accepted by bankruptcy courts.  *See In re G Survivor Corp.*, 171 B.R. 755, 757-58 (Bankr. S.D.N.Y. 1994) *affm'd John Forsyth Co., Inc. v. G Licensing, Ltd.*, 187 B.R. 111 (S.D.N.Y. 1995); *see also, In re Chipwich, Inc.*, 54 B.R. 427, 431 (Bankr. S.D.N.Y. 1985) ("In determining whether or not a debtor should be allowed to reject an executory contract, the courts have generally applied the business judgment test and the principle that the debtor's business judgment should not be interfered with, absent a showing of bad faith or abuse of business discretion.").

21.    The Debtors are highly sophisticated entities that undoubtedly should have foreseen that there was a high likelihood that the Funds would rely on the Debtors' representations that the Intergen Trades would be rejected and take the necessary reactive steps to mitigate damages incurred as a result of the rejection; *i.e.* enter into similar loan trades to replace the rejected trades and maintain the portion of invested funds.

22.    Because the Debtors did not exercise appropriate caution to reserve their rights to assume the Intergen Trades, and because an assumption would now result in substantial financial harm to the Objecting Funds, M&G respectfully asserts that LCPI should be estopped from now assuming the Intergen Trades with respect to the Funds.

**A.    *LCPI Must Pay Actual Pecuniary Loss Sustained by the Objecting Funds Prior to Assuming the Intergen Trades With those Funds.***

23.    The Debtors' communications regarding the rejection of the Intergen Trades with the Funds constitutes an anticipatory repudiation of those trades, and therefore, a default.

24.    Bankruptcy Code sections 365(b)(1)(A) and (b)(1)(B) provide that a debtor may not approve an executory contract under which it has defaulted unless, at the time of assumption of such contract, the debtor (1) cures the default or provides adequate assurance that it will promptly cure the default and (2) compensates (or provides adequate assurance that it will promptly compensate) the non-debtor party for actual pecuniary loss resulting from the default. 11 U.S.C. §§ 365(b)(1)(A), (b)(1)(B).

25.    As such, LCPI is not permitted to assume the Intergen Trades with the Funds until it compensates these Funds for losses they will sustain as a result of the proposed assumption or provides adequate assurance that such compensation will promptly be provided.

## **RESERVATION OF RIGHTS**

26.    Nothing in this Objection shall constitute a waiver of, and M&G and the M&G Managed Funds reserve in all respects, their rights under their respective agreements, the Bankruptcy Code, and applicable State, Federal and foreign law.

[*Remainder of Page Intentionally Left Blank*]

## **CONCLUSION**

WHEREFORE, M&G requests that this Court deny the Motion to the extent that it seeks

to assume the Intergen Trades with the M&G Managed Funds and grant such other and further

relief as this Court deems appropriate under the circumstances.


Dated: New York, New York
        December 11, 2008


                                        Respectfully Submitted,


                                        By: _/s/ Jennifer C. DeMarco_____

                                        Jennifer C. DeMarco (JD-9284)
                                        David A. Sullivan (DS-8967)
                                        Sara M. Tapinekis (ST-4382)
                                        **CLIFFORD CHANCE US LLP**
                                        31 West 52nd Street
                                        New York, New York 10019
                                        Tel. 212.878.8000
                                        Fax. 212.878.8375

                                        *Counsel to M&G Investment Management
                                        Limited*