WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Michael P. Kessler

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                        :
**In re**                                               :       **Chapter 11 Case No.**
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*            :       **08-13555 (JMP)**
                                                        :
                        **Debtors.**                    :       **(Jointly Administered)**
                                                        :
                                                        :
------------------------------------------------------------------x

**DEBTORS' OBJECTION**
**TO MOTION OF TPG-AUSTIN PORTFOLIO HOLDINGS LLC TO COMPEL**
**IMMEDIATE ASSUMPTION OR REJECTION OF CREDIT AGREEMENT; OR**
**IN THE ALTERNATIVE, GRANT RELIEF FROM THE AUTOMATIC STAY**
**TO PERMIT ALTERNATIVE FINANCING ON A SENIOR SECURED BASIS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI"), Lehman Commercial Paper,

Inc. ("LCPI") and their affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors in possession (together, the "Debtors" and, collectively with their

non-debtor affiliates, "Lehman"), respectively submit this response in opposition to the

motion, dated November 13, 2008 (the "Motion") of TPG-Austin Portfolio Holdings

LLC (the "Movant") to compel immediate assumption or rejection of a credit agreement, or in the alternative, to grant relief from the automatic stay to permit alternative financing on a senior secured basis:

<u>**Background**</u>

1.　　Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.　　On March 25, 2007, TPG-Austin Portfolio Syndication Partners JV LP (the "Partnership"), a joint venture composed of LBHI, Thomas Properties Group, Inc. and California State Teachers Retirement System, agreed to indirectly acquire (the "Acquisition") all of the partnership interests in TX-Austin One American Center Limited Partnership, the owner of (i) fee title to a portion and a leasehold interest in the remaining portion of the property located at 600 Congress Avenue, Austin, Texas, and (ii) the fee or leasehold interests in nine other properties located in and around Austin, Texas (collectively, the "Properties"). On June 1, 2007, LCPI, as administrative agent, Lehman Brothers Inc. ("LBI"), as the arranger, and the Movant, as borrower, entered into a Credit Agreement (the "Agreement"), pursuant to which the lenders that are from time to time parties to the Agreement agreed to extend (i)

a term loan in the aggregate amount of $192,500,000 (the "<u>Term Loan</u>") to finance a

portion of the purchase price of the Acquisition, fund an interest reserve account and pay

related fees and expenses, and (ii) a revolving loan in the amount of $100,000,000 to

finance the working capital needs of the Movant and its subsidiaries, to finance

acquisitions, and pay interest (the "<u>Revolver</u>").  The Revolver includes commitments by

LCPI to participate in swing line loans, at any one time outstanding not to exceed

$10,000,000, and letters of credit up to $10,000,000.  The Term Loan has been fully

funded by LCPI and the other lenders.  To date, no advances have been made under the

Revolver.

### **<u>Preliminary Statement</u>**

3.      The Movant requests that the Court compel LCPI to

immediately assume or reject the Agreement, including the Term Loan.  However, the

Term Loan is severable from the Revolver and, as a separate contract, has been fully

performed by LCPI.   With no performance by LCPI remaining under the Term Loan, it

is no longer an executory contract.  As a result, LCPI is not required under the

Bankruptcy Code to assume or reject the Term Loan.

4.      Notwithstanding that the Movant cannot be compelled to

assume or reject the Term Loan, three months into these large and complex chapter 11

cases the Movant is attempting to force LCPI to make an early decision to assume or

reject the Revolver.  The Movant's request fails as a matter of fact and law.   The

controlling case law could not be clearer:  a debtor is entitled to defer its decision to

assume or reject an executory contract until plan confirmation; provided, however, that

upon a showing of compelling circumstances and significant prejudice to a contract

counterparty, the time to assume or reject may be shortened.  The Movant has presented

no compelling circumstances and significant prejudice that should result in LCPI being

compelled to immediately assume or reject the Revolver.

5.     The alternative relief requested by the Movant is equally

objectionable.  Without any legal basis whatsoever, the Movant seeks an order

authorizing the Movant to obtain alternative financing upon terms that would prime

LCPI's first lien interests in the collateral for both loans.  As collateral for the Term Loan

and the Revolver, LCPI has valid and perfected first lien deeds of trust and security

interests in properties owned by the Movant, the Movant's subsidiaries and the

guarantors under the Agreement, including ten Class A office building properties in

Austin, Texas (collectively, the "<u>Liens</u>").  As the Movant is not a debtor in a chapter 11

case, there is no judicial process to non-consensually subordinate the rights of the

Movant's creditors, such as LCPI.

6.     The Court should grant LCPI a reasonable period of time to

fully evaluate all of the ramifications of assumption or rejection of the Revolver and to

make a reasonable business judgment relating thereto.[1]  LCPI believes it will be able to

complete its review within 45 days.

### LCPI Cannot be Compelled to Assume or Reject the Term Loan

7.     LCPI cannot be compelled to assume or reject the Term Loan.

The Term Loan is severable from the Revolver.  As a separate contract, the Term Loan

---

[1] The Movant repeatedly argues that the assumption or rejection of the Agreement is in the Debtors' best
interest because they own an interest in the borrower.  <u>See</u> Motion, ¶¶ 2, 28, 36, 40.  The Debtor's submit
that they, not the Movant, are in the best position to make a business judgment regarding which course of
action will maximize the value of the Debtors' estates and they intend to act accordingly.

has been fully funded and performed by LCPI and, therefore, is no longer an executory

contract subject to assumption or rejection.  Because the Term Loan is no longer an

executory contract, LCPI does not have to assume or reject it.

A.  The Term Loan is Severable from the Revolver

        8.      The courts, including those in the Southern District of New

York, have long recognized that multiple contracts embodied within a single agreement

may be "divisible" or "severable" under state law and that each severed contract may be

separately assumed and rejected.  In re Adelphia Business Solutions, Inc. 322 B.R. 51,

55 (Bankr. S.D.N.Y. 2005) (citing Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins.

Co., 83 F.3d 735, 741 (5th Cir. 1996)); In re Gardinier, Inc., 831 F.2d 974, 976-78 (11th

Cir. 1987), cert. denied, 488 U.S. 853 (1988) (finding one document severable into two

agreements for the purpose of separately assuming and rejecting the two agreements); In

re Brentano's, 29 B.R. 881 (Bankr. S.D.N.Y. 1983) (where a single lease covered two

floors, permitting the assignment of the lease pro tanto for one of the floors) (cited in In

re Sanshoe Worldwide Corp., 139 B.R. 585, 596-97 n. 7 (Bankr. S.D.N.Y. 1992)

(refusing to regard as a single contract two leases for separate floors of a single office

building, thus allowing the debtor lessee to assume and assign the lease for the 11th floor

while rejecting the lease for the 9th and 12th floors)); In re Wolflin Oil, L.L.C., 318 B.R.

392, 397 (Bankr. N.D. Tex. 2004) ("Where a lease or contract 'contains several different

agreements, and the lease or contract can be severed under applicable non-bankruptcy

law, section 365 allows assumption or rejection of the severable portions of the lease or

contract.'") (quoting In re FFP Operating Partners, LP, 2004 WL 3007079, at *1, 2004

(Bankr.N.D.Tex. Aug. 12, 2004)).

9.      The Agreement is governed by New York law.  Agreement, §

10.11.[2]  Under New York law, there is no formulaic test for determining whether a

contract is severable.  In re Prakope, 317 B.R. 593, 598 (Bankr. E.D.N.Y. 2004) (citing

Unisys Corp. v. Combined Technologies Corp., 1988 WL 78148, at *2 (July 19, 1988

S.D.N.Y.)).  In determining whether a contract is severable, "the primary factor to

consider is the intent of the parties as determined by a fair construction of the terms and

provisions of the contract itself, by the subject matter to which it has reference, and by

the circumstances existing at the time of contracting."  Municipal Capital Appreciation

Partners I, L.P. v. Page, 181 F.Supp.2d 379, 394 (S.D.N.Y. 2002) (citing Nederlandse,

Etc. v. Grand Pre-Stressed Corp., 466 F.Supp. 846, 852 (E.D.N.Y.), aff'd 614 F.2d 1289

(2d Cir.1979); Rudman v. Cowles Comm., Inc., 30 N.Y.2d 1, 14 (1972); Rogers v.

Graves, 254 A.D. 467, 5 N.Y.S.2d 967, 971 (3d Dep't 1938)).  A contract is severable

when "its nature and purpose are susceptible to division and apportionment."  Id.  Under

New York law, "a contract will not be regarded as severable unless (1) the parties'

performances can be apportioned into corresponding pairs of partial performances, and

(2) the parts of each pair can be treated as agreed equivalents."  Id.

10.      Under New York law, the Agreement is severable between the

Term Loan and the Revolver.  LPCI and the Movant's obligations can be apportioned

into corresponding pairs of partial performances, and the parts of each pair are easily

demonstrated to be agreed equivalents.   Each of the Term Loan and the Revolver is

described as a separate and distinct facility.  See Agreement, Recitals, § 1.1.  LCPI has

---

[2] The Agreement is attached to the Declaration of John Sischo, which accompanies the Motion, as Exhibit
A thereto.

agreed to provide $192,500,000 under the Term Loan to finance a portion of the purchase

price of the Acquisition, fund an interest reserve account and pay related fees and

expenses.  See Agreement, Recitals, § 2.1.  As consideration, the Movant agrees to repay

the unpaid principal amount of the Term Loan on the sixth anniversary of the closing of

the Agreement, in addition to certain interest repayments.  See Agreement, § 2.3.

Separately, LCPI agrees to provide $100,000,000 under the Revolver to finance the

working capital needs of the Movant and its subsidiaries, to finance acquisitions, and pay

interest under the Term Loan, as well issue letters of credit for the account of the Movant.

See Agreement, Recitals, §§ 2.4, 3.1.  In return, the Movant agrees to repay the unpaid

principal amount of the Revolver on the fifth anniversary of the closing of the

Agreement, in addition to certain interest payments, as well as provide a commitment fee

and an additional fee on any outstanding letters of credit.   See Agreement. §§ 2.4(b), 2.9,

3.3.

            11.      The Agreement clearly provides for different consideration and

repayment dates for its two severable parts, the Term Loan and the Revolver.  The Term

Loan and the Revolver are described as separate facilities using plural nouns.  Moreover,

the Agreement sets forth clear corresponding pairs of obligations, each pair with

specified consideration, with a discernable transaction within each pair.  As a result, the

intent manifested by the parties indicates that the Term Loan and the Revolving Loan are

separate agreements.

B.      The Term Loan is Not an Executory Contract and, Thus, Cannot Be Assumed or
        Rejected

            12.      LCPI cannot be compelled to reject or assume the Term Loan

because the Term Loan is fully funded, with no performance remaining on the part of

LCPI. Indeed, in its request for relief, the Movant only describes LCPI's obligations

under the Agreement to advance the Revolving Loan. See Motion, ¶15

13.    The courts have recognized that "[s]ection 365 addresses only

future performance obligations of the parties. It does not have any impact upon the

executed portions of a contract." Matter of Executive Technology Data Systems, 79 B.R.

276, 82 (Bankr. E.D. Mich. 1987) (citing Leasing Service Corp. v. First Tennessee

National Assoc., 826 F.2d 434, 437 (6th Cir. 1987) (noting that the rejection of an

executory contract in its entirety does not require the reversal or undoing of those

provisions of the contract which are no longer executory, but rather are fully vested)); see

also In re Murexco Petroleum, Inc., 15 F.3d 60, 62 (5th Cir. 1994) (Section 365 "allows

a trustee to relieve the bankruptcy estate of burdensome agreements which have not been

completely performed.); In re Teligent, Inc., 268 B.R. 723, 729-730 (Bankr. S.D.N.Y.

2001).

14.    The Bankruptcy Code does not define the term "executory

contract." In determining executoriness, the Southern District of New York, has relied on

the Countryman test, "under which 'executory contract' means a contract under which

the obligation of both the bankrupt and the other party to the contract are so far

unperformed that the failure of either to complete performance would constitute a

material breach excusing performance of the other." In re Teligent, Inc. 268 B.R. 723,

729 -730 (Bankr. S.D.N.Y. 2001) (citing Vern Countryman, Executory Contracts in

Bankruptcy: Part 1, 57 Minn. L. Rev. 439, 460 (1973)); See also Shoppers World Cmty.

Ctr., L.P. v. Bradlees Stores, Inc. (In re Bradlees Stores, Inc.), 2001 WL 1112308, at *7

(S.D.N.Y. Sept. 20, 2001); In re 375 Park Ave. Assoc., Inc., 182 B.R. 690, 697 (Bankr.

S.D.N.Y. 1995).

15.     The United States Court of Appeals of the Second Circuit has

also utilized the related but less stringent "some performance due" test suggested by the

legislative history of section 365. See Eastern Air Lines, Inc. v. Insurance Co. of

Pennsylvania (In re Ionosphere Clubs, Inc.), 85 F.3d 992, 999 (2d Cir. 1996) (invoking

the "some performance due" test); see also In re Teligent, Inc., 268 B.R. at 729 -

730 (describing the "some performance test") In re Riodizio, Inc., 204 B.R. 417, 421-424

(Bankr. S.D.N.Y. 1997) (same).  Under the "some performance due" test the court

referred to the legislative history, stating that an executory contract is "a contract 'on

which performance remains due to some extent on both sides'." In re Ionosphere Clubs,

Inc., 85 F.3d  992, 999 (2d Cir. 1996) (quoting NLRB v. Bildisco & Bildisco, 465 U.S.

513, 522n.6 (1984)).

16.     Regardless of whether the Court applies the Countryman test or

the "some performance due" test, there can be no question that the Term Loan is no

longer an executory contract.  The Movant itself acknowledges that the Term Loan has

been fully funded. See Motion, ¶9.  LCPI clearly owes no performance under the Term

Loan, and both tests require performance owing on both sides.  Because the Term Loan is

no longer an executory contract, LCPI cannot be compelled to reject or assume it.

### The Movant Has Not Demonstrated Cause to Compel
### LCPI to Immediately Assume or Reject the Revolver

17.     The Movant has presented no valid reason why LCPI should be

compelled to immediately assume or reject the Revolver.  In support of its motion, the

Movant asserts it will suffer irreparable harm if LCPI does not assume or reject the Revolver because, without the advance of funds by LCPI under the Revolver, the Movant allegedly will be unable to satisfy property taxes due in early 2009 and pay other operating expenses.  Motion ¶¶18-24.  These assertions do not establish cause sufficient to force LCPI to make a hasty decision as to whether to assume or reject the Revolver.

A.    Governing Legal Standard

18.    Pursuant to section 365(d)(2) of the Bankruptcy Code, a chapter 11 debtor has until confirmation of a plan to decide whether to assume or reject an executory contract.  As Judge Gonzalez has aptly stated: "[i]t has been observed that it is the clear policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of a bankruptcy petition, continuing until the confirmation of a plan, in which to assume or reject an executory contract."  In re Enron Corp., 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002).

19.    The law in the Second Circuit is clear that, despite the flexibility provided to the Court by section 365(d)(2), a debtor is nonetheless entitled to a "reasonable" amount of time to decide whether to assume or reject an executory contract. Theatre Holding Corp. v. Mauro, 681 F.2d 102, 105 (2d Cir. 1983) ("the trustee or debtor in reorganization is allowed a reasonable time to decide whether to assume or reject"). An absolute or fixed timeframe for reasonableness has not been established.  In re Taber Farm Assocs., 115 B.R. 455, 457 (Bankr. S.D.N.Y. 1990) ("There is no fixed time limit under the Bankruptcy Code as to what constitutes a reasonable time within which a debtor must either assume or reject an executory contract").  Instead, reasonableness is left to the bankruptcy court's discretion to be determined on a case-by-case basis.

Theatre Holding, 681 F.2d at 105 ("What constitutes a reasonable time is left to the

bankruptcy court's discretion in the light of the circumstances in each case").

20.     A movant must establish a compelling reason to shorten the

debtor's time for assumption or rejection.  Theatre Holding, 681 F.2d at 105; South St.

Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 761 (2d

Cir. 1996) (factors include: the nature of interests at stake, the balance of harm to the

litigants, the good to be achieved, the safeguards afforded the litigants, the complexity of

the case, and the number of contracts the debtor must evaluate); Enron, 279 B.R. at 703

(using same factors).  See also In re Republic Tech. Int'l, LLC, 267 B.R. 548, 554

(Bankr. N.D. Ohio 2001) (holding that in a complex case the movant faces "a very high

burden of proof to justify requiring the [d]ebtors to consider its leases outside of a

comprehensive business plan").

B.     It Is Too Early to Compel LCPI to Assume or Reject the Revolver

21.     It is too early to compel LCPI to assume or reject the Revolver.

The Debtors' chapter 11 cases are still in their infancy, and LCPI has not been afforded

the reasonable time required by applicable case law.  The cases are large and complex.

The Debtors have over $613 billion of debt and over 100,000 creditors.  The size and

complexity of these cases is evident from the fact that there have been over 2,000 docket

entries in the first eleven weeks since the petitions were filed – an average of more than

25 each day, including Saturdays, Sundays and holidays.  This Court has witnessed the

countless matters that require the attention of the Debtors' management on a daily basis.

The Movant has failed to provide a sufficient basis for compelling LCPI to assume or

reject the Revolver at this early stage of its chapter 11 case.  The parade of horribles

identified by the Movant is comprised of mere speculation.  None of the circumstances identified by the Movant has actually occurred; indeed, they may never occur.

22.     Moreover, the Movant argues that, absent immediate assumption or rejection, it will suffer irreparable harm because, without the borrowing of additional funds, the Movant will be unable to satisfy real property taxes due at the end of January 2009 and the Properties will be exposed to foreclosure for nonpayment of these taxes.  See Motion, ¶¶18-19, 33.  The Movant overstates its fears; the failure to timely pay real property taxes results in a penalty and interest charge during the late period but will not result in foreclosure for an extended period of time.  See Tex. Tax Code Ann. § 33.01 (setting forth penalties and interest for delinquent taxes).  Travis County handles the tax collection efforts for Austin, Texas and the surrounding independent school district.  According to the Travis County Tax Office's foreclosure listings, only 184 properties were posted for foreclosure tax sale during 2008.[3]  Of those 184 properties, only 83 were sold in a tax sale, and of the 184 properties, the median year of unpaid taxes was 14.36 years.  In fact, the shortest period before foreclosure of a posted property for a tax sale in Travis County was only four years, and the longest period before foreclosure was 24 years.  Despite the Movant's assertions, it clearly faces no risk of loss of the Properties through tax foreclosure if the Court affords LPCI a reasonable period of 45 days to decide to assume or reject the Revolver.

23.     Absent the Movant demonstrating compelling circumstances and significant prejudice, the period during which LCPI is entitled to a reasonable

---

[3] The Travis County Tax Office's 2008 foreclosure listings are available on Travis County's official web site.  See The Official Web Site of Travis County, Texas., http://www.co.travis.tx.us/tax_assessor/default.asp (last visited Dec. 10, 2008).

amount of time to decide whether to assume or reject an executory contract should not be reduced.  This results from the courts' recognition that premature rejection of a contract can harm the estate by causing the loss of an important contractual relationship for the entire enterprise.  On the other hand, premature assumption and the concomitant curing of defaults may result in the payment of prepetition unsecured claims (to the exclusion of other unsecured claims).

24.    LCPI is currently in the process of analyzing the economic merits of the Revolver in the context of the many other executory contracts to which it is party, but the Revolver is merely one of thousands of complex agreements entered into by LCPI, each of which has its own set of unique facts and circumstances.  Countless numbers of LCPI's creditors have entered into agreements to obtain financing for properties.  That the Movant alleges it faces "great uncertainty" and "potential harm" projected to occur at some point next year rather than in the present does not justify compelling LCPI to immediately assume or reject the Revolver.  See Motion, p. 1.  By contrast, allowing the Movant to compel immediate assumption or rejection could set a troubling precedent by potentially resulting in a flood of other counterparties overwhelming the Debtors with motions to compel assumption or rejection of their contracts and thereby placing the Debtors in an untenable position of either expending huge sums of cash (if available) to assume these numerous contracts or face the loss of financially advantageous contracts by rejection.  Indeed, even in situations where the non-debtor counterparty is currently being prejudiced, courts have not forced immediate rejection or assumption.  See, e.g., Hiser v. Blue Cross of Greater Phila. (In re St. Mary Hospital), 89 B.R. 503, 513 (Bankr. E.D. Pa. 1988) (denying motion to compel debtor's

assumption or rejection despite debtor's failure to make payments to non-debtor counterparty pursuant to contract); In re Taber Farm Assocs., 115 B.R. at 457.  In Taber, a much smaller and significantly less complex case, the Court allowed the debtor a total of 139 days from the petition date to assume or reject, despite the fact that the non-debtor counterparty was receiving no income and was unable to sell its land until the debtor's decision was made. 115 B.R. at 457.See Id. at 456.  Here the Movant's requested relief would allow LCPI only 92 days from the petition date to assume or reject.

25.    In In re Dana Corp. this Court declined to compel the debtors to make an early decision to assume or reject certain agreements, basing its ruling on the fact that the debtors were involved in a large and complex Chapter 11 reorganization, purchased goods and services from approximately 5,000 different suppliers, and the motion was filed less than six months after the bankruptcy cases commenced.  350 B.R. 144 (Bankr. S.D.N.Y. 2006).

26.    Given the size and complexity of these cases, coupled with the fact that these cases are only eleven weeks old and have been extremely active, it is premature to compel LCPI to assume or reject the Revolver.  See, e.g., Dallas-Forth Worth Regional Airport Bd. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.), 26 B.R. 628 (N.D. Tex. 1982) (noting that it would be unreasonable in a highly complex bankruptcy proceeding to require a debtor to accept or reject leases within two months of the petition date).  In light of this, as well as the fact that the Movant is not currently being unduly prejudiced in any manner, there is no factual or legal justification to compel LCPI to assume or reject the Revolver at this time.

**The Movant's Request to Lift the Automatic Stay Must be Denied; the Relief the
Movant Seeks Goes Beyond Lifting the Automatic Stay**

27.    The Movant additionally requests that, in the event LCPI does
not immediately assume the Revolver, or rejects the Revolver, the Court should lift the
automatic stay extant under section 362 of the Bankruptcy Code to authorize the Movant
to seek equitable relief in the form of alternative financing that would grant an alternative
lender a lien senior to LCPI's Liens.  The Movant also requests the additional broad relief
of authorization to "promptly pursue all of its rights and remedies" under the Agreement,
with the sole exception of a money damages claim.  Motion, ¶ 36.  In effect, the Movant
wants to force a non-consensual modification of the Agreement.  Conspicuously absent
from the Motion is citation to any legal authority supporting the Movant's requests for
stay relief.  This is not surprising because there is simply no precedent to sustain these
requests.

A.    <u>Governing Legal Standard</u>

28.    Section 362(a)(1) of the Bankruptcy Code provides that:

(a) … [A] petition filed under section 301, 302 or 303 of this title …
operates as a stay, applicable to all entities, of –

(1) the commencement or continuation, including the issuance or
employment of process, of a judicial, administrative, or other action or
proceeding against the debtor that was or could have been commenced
before the commencement of the case under this title, or to recover a claim
against the debtor that arose before the commencement of the case under
this title."

11 U.S.C. § 362(a)(3).

29.    The automatic stay affords a debtor fundamental protections
under the Bankruptcy Code.  <u>See</u>, <u>e.g.</u>, <u>Midlantic Nat'l Bank v. N.J. Dept. of Envt'l</u>

Protection, 474 U.S. 494, 503 (1986) ("The automatic stay provision of the Bankruptcy

Code … has been described as one of the fundamental debtor protections provided by the

bankruptcy laws") (internal quotations and citations omitted); In re Drexel Burnham

Lambert Group Inc., 113 B.R. 830, 836-37 (Bankr. S.D.N.Y. 1990) ("The automatic stay

imposed by section 362(a) of the Bankruptcy Code is one of the most fundamental debtor

protections provided by the bankruptcy laws") (citations and internal quotations omitted).

       30.     The automatic stay "is necessary to exclude any interference by

the acts of others or by proceedings in other courts where such activities or proceedings

tend to hinder the process of reorganization." Fidelity Mortgage Inv. v. Camelia

Builders, Inc., 550 F.2d 47, 53 (2d Cir. 1976). Indeed, "[t]he automatic stay prevents

creditors from reaching the assets of the debtor's estate piecemeal and preserves the

debtor's estate so that all creditors and their claims can be assembled in the bankruptcy

court for a single organized proceeding." In re AP Indus., 117 B.R. 789, 798 (Bankr.

S.D.N.Y. 1990). Acts precluded by the automatic stay include postpetition termination of

a prepetition executory contract (termination provisions contained therein

notwithstanding). See, e.g., In re 48th Street Steakhouse, Inc., 835 F.3d 427 (2d Cir.

1987). Accord In re Computer Communications, Inc., 824 F.2d 725, 728 (9th Cir. 1987).

       31.     Section 362(d) of the Bankruptcy Code, however, provides that

a party may be entitled to relief from the automatic stay under certain circumstances. 11

U.S.C. § 362(d); In re Éclair Bakery Ltd., 255 B.R. 121, 132 (Bankr. S.D.N.Y. 2000).

Specifically, the pertinent portion of section 362(d) provides:

          (d) On a grant of a party in interest and after notice and a hearing, the
          court shall grant relief from the stay provided under subsection (a) of this

section, such as by terminating, annulling, modifying, or conditioning such stay –

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d).

32.     The party seeking to lift or modify the automatic stay bears the initial burden to show cause why the stay should be lifted.  <u>Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.)</u>, 907 F.2d 1280, 1285 (2d Cir. 1990) ("If the movant fails to make an initial showing of cause … the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection").  As demonstrated below, the Movant has not carried its burden of establishing "cause" under section 362(d)(1) for any stay relief, let alone the potentially expansive stay relief it requests.

B.     <u>The Movant has failed to Demonstrate "Cause" for Relief under Section 362(d)(1)</u>

33.     Although the term "cause" is not defined in the Bankruptcy Code, the Court in the seminal Second Circuit case, <u>In re Sonnax Industries, Inc</u>. set forth twelve factors that may constitute "cause" for the purposes of determining  whether the automatic stay should be lifted:

(1) whether relief would result in a partial or complete resolution of the issues;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

Sonnax, 907 F.2d at 1286. Not all of these factors are relevant to every instance in which relief from the stay is sought. A review of the factors that are relevant to this case clearly demonstrates that the automatic stay should remain in place.

34. The Sonnax factor most salient to the instant case is whether lifting the stay to allow the Movant to exercise remedies would interfere with the Debtors' bankruptcy cases. Even slight interference with the administration of a chapter 11 case may be enough to preclude relief in the absence of a commensurate benefit. See, e.g., In re Curtis, 40 B.R. 795, 803-807 (Bankr. D. Utah 1984). Lifting the stay to allow the Movant to pursue "any of its rights and remedies" and modify the Agreement clearly portends an objective of subordinating LCPI's rights to its Liens and otherwise modifying the agreement to the Debtors' disadvantage. Success on the part of the Movant will reduce the value of property of the Debtors' estates. At a minimum, mounting a defense against the Movant's efforts in a different court will be at great cost in time and money to

the estates.[4]  This interference with the administration of these cases weighs strongly in favor of not lifting the automatic stay.

35.    Similarly, while the Movant alleges harm to itself in its request to compel LCPI to assume or reject the Revolver, the Movant makes no mention of the twelfth <u>Sonnax</u> factor, the balance of harms vis-à-vis LCPI upon the granting of relief from of the automatic stay.   <u>See</u>, <u>e.g.</u>, Motion, ¶¶ 16-24.  Indeed, the automatic stay should not be lifted because the balance of the harms clearly tips in favor of LCPI.

36.    The alleged "harm" described by the Movant is only a projected harm that may or may not even occur.  Moreover, the Movant overstates the potential for such harm by arguing that a failure by LCPI to fund will immediately expose the properties to foreclosure for nonpayment of real estate taxes, as such failure will, at most result in no more than an interest charge in the perceivable future.  In response to the mere potential for harm, the Movant seeks relief with unspecified bounds, aiming to pursue "all of its rights and remedies" without identifying what those remedies may be.  This Court has recently rejected such broad requests for relief by denying the Motion of the SCC Entities for Relief from the Automatic Stay.  <u>In re Lehman Brothers Holdings, Inc.</u> Case No. 08-13555 (JMP)(Bankr. S.D.N.Y. November 21, 2008) [Docket No. 1647].  By contrast, lifting the automatic stay to allow the Movant to exercise remedies would immediately harm LCPI and deprive LCPI of one of the primary intended benefits of Chapter 11, a breathing spell to permit a debtor to maximize the value of its properties by making rational choices regarding their disposition.

---

[4] The Movant does not specifically describe the judicial process by which it intends to obtain additional credit and prime LCPI's Liens or what type of other remedies it plans to pursue, but the objective of pursuing relief outside this forum is implicit in the Movant's request to lift the automatic stay.

37.    Applying the other <u>Sonnax</u> factors similarly supports the conclusion that stay relief is not warranted, for example, (i) whether the other proceeding involves a debtor as a fiduciary; (ii) whether the debtors' insurer has assumed full responsibility for defending; (iii) whether the action primarily involves third parties; and (iv) whether the litigation in the other forum will prejudice the interest of other creditors. Each of these factors clearly weighs in favor of the Debtors.  Beyond the Movant's requests to prime LCPI's Liens, the Movant does not specify the exact rights and remedies under which it will seek equitable relief.  Still, under any such proceeding the debtor is unlikely to be involved as a fiduciary.  The current situation also does not indicate that an insurer will take over litigation on behalf of LCPI, and, therefore, the estate will be affected.   Further, unlike in more frequent circumstances where stay relief is sought to proceed against a third party, here the stay relief sought would directly affect the Debtors and their estates.  By subordinating LCPI's Liens and reducing the value of the estate, any litigation in another forum will also clearly prejudice the interests of creditors in this case.

38.    There are at least two other <u>Sonnax</u> factors that are not relevant here at all: whether a specialized tribunal with the necessary expertise has been established to hear the cause of action and whether the judgment claim that they seek in the other action is subject to equitable subordination.   In sum, the Movant relies almost entirely on grounds for cause that are merely allegations that fail to meet the <u>Sonnax</u> factors.  Consequently, the requested stay relief is not appropriate and should not be granted.

## The Court Cannot Subordinate LCPI's Liens

39.     To the extent the Court finds that cause exists to modify the automatic stay, something that, as noted above, LCPI disputes, the only specifically requested relief identified by the Movant – authorization to seek subordination of LCPI's Liens – similarly lacks factual or legal foundation.  The Movant glaringly fails to cite or discuss any cause of action or procedure by which a movant can non-consensually prime the liens of a defaulting lender and allow a new lender a senior lien.[5]  This is because the bankruptcy process is the only route by which a borrower can obtain such relief.  As the Movant is not a debtor in a chapter 11 case, the Debtors are not aware of any process by which the relative rights and liens of the Movant's lenders can be non-consensually subordinated in favor of new lenders, and the Movant fails to cite any such process.

## The Movant's Request for Adequate Assurance Should Also be Denied

40.     The Movant additionally requests that, should LCPI choose to assume the Revolver, adequate assurance of future performance should be provided.   As discussed above, LCPI's assumption or rejection of the Revolver is premature.  It is inappropriate to address relief that may or may not be relevant until after LCPI has had sufficient opportunity to review the Revolver and reach a decision to assume or reject within the context of LCPI's overall business.  If, after reasonable time has been afforded to allow LCPI to judge the value of the Revolver, LCPI chooses assumption, the issues of cure and adequate assurance will be ripe.

41.     For all of the foregoing reasons and authorities, as well as

---

[5] Section 364 allows a debtor-in-possession to obtain additional credit and incur superpriority debt with a lien senior to any existing lien on property but does not apply here because the Movant is not a debtor-in possession.

those to be advanced at oral argument, the Debtors respectfully request that the Court

deny the Motion.

42.        No previous request for the relief sought herein has been

made to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court either deny the relief requested or condition any relief granted to protect the estates from heightened liability.

Dated:  December 11, 2008
        New York, New York

/s/ Michael P. Kessler
Harvey R. Miller
Michael P. Kessler

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession