Jeffrey S. Sabin
Carol Weiner Levy
**BINGHAM McCUTCHEN LLP**
399 Park Avenue
New York, New York 10022
(212) 705-7000

Attorneys for Halbis Distressed Opportunity Master
 Fund Limited

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                                :
In re                                                           : Chapter 11
                                                                :
LEHMAN BROTHERS HOLDINGS INC., *et al.,*                        : Case No. 08-13555 (JMP)
                                                                :
         Debtors.                                               : (Jointly Administered)
                                                                :
---------------------------------------------------------------x

## HALBIS DISTRESSED OPPORTUNITY MASTER FUND'S OBJECTION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION OR REJECTION OF OPEN TRADE CONFIRMATIONS

Halbis Distressed Opportunity Master Fund Limited ("Halbis"), by its attorneys Bingham McCutchen LLP, submits this objection (the "Objection"), and limited joinder in the objection of THL Credit Partners, L.P. (Docket No. 1883) ("THL"), to the motion (the "Motion")[1] by Lehman Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI," and together with LBHI, the "Debtors") for the entry of an order approving assumption or rejection of certain open trade confirmations, and in support of the Objection states as follows:

---

[1] All capitalized terms not defined herein shall have the definitions ascribed to them in the Motion.

A/72777135.2

**PRELIMINARY STATEMENT**

1. The Debtors have proposed to assume the open trade confirmation (the "Halbis Trade Confirmation") between Halbis[2] and LCPI pursuant to Section 365 of the Bankruptcy Code. The Halbis Trade Confirmation concerns the sale by LCPI to Halbis of a participation interest in the debt issued to Quebecor World, Inc. ("Quebecor") under the Quebecor Amended and Restated Credit Agreement (the "Quebecor Credit Agreement"). Unlike most of the trade confirmations that the Debtors seek to assume, in which LCPI is selling its interest in certain bank debt by way of *assignment*, the Halbis Trade Confirmation contemplates the *participation* by LCPI to Halbis of bank debt that the Debtor must still purchase. The problem with assuming this trade is two-fold.

2. First, upon information and belief, LCPI has not yet purchased the debt that is the subject of the Halbis Trade Confirmation. See Exhibit A to Motion at p.3 (Debtors are seeking to assume open trade confirmations with Bank of Nova Scotia and Royal Bank of Canada, the immediate prior sellers of the Halbis trade). That means that the purchases by LCPI of the debt that it is seeking to participate to Halbis (better known as the "upstream trades") may be subject to the administrative agent's prior approval under the Quebecor Credit Agreement. It is unclear whether the administrative agent will approve sales of Quebecor bank debt to a chapter 11 debtor. If approval is not forthcoming, LCPI will not be able to perform under the Halbis Trade Confirmation.

3. Second, even if the "upstream trades" were approved by the administrative agent, in order to settle the Halbis Trade Confirmation, LCPI and Halbis would have to

---

[2] The Debtors incorrectly list HSBC Multistrategy Arbitrage Fd. as the party to the Halbis Trade Confirmation. The Halbis Trade Confirmation is between LCPI and Halbis Distressed Opportunities Master Fund Limited, and Exhibit A to the Motion should be corrected to properly identify the Halbis entity.

2

enter into a participation agreement in which LCPI would have the post-petition responsibilities of a lead bank. Such an arrangement creates a type of financial accommodation that cannot be assumed under applicable law. Under the participation agreement, LCPI would be required to accept payments from Halbis for delivery to Quebecor or the administrative agent and receive distributions from Quebecor for delivery to Halbis. Given the uncertainty that the Debtors' pre-petition participants have already suffered while waiting to see if the Debtors will funnel distributions to third parties that first flow through their estates, it would be unreasonable and inappropriate to force Halbis to enter into such a difficult and risky financial arrangement with LCPI *post-petition*.

4.      In addition, Halbis contends that LCPI has defaulted under the Halbis Trade Confirmation because it failed to timely settle the trade. As such, under Section 365(b), in order to assume the Halbis Trade Confirmation, LCPI must, among other things, compensate the non-debtor party for any actual pecuniary loss resulting from the default and provide adequate assurance of future performance. If LCPI were to settle the Halbis Trade Confirmation and enter into a participation agreement with Halbis, LCPI would be required to monitor the Quebecor credit and act and vote under the Quebecor Credit Agreement in accordance with Halbis's instructions  The Debtors have not shown that they will have the infrastructure or be able to perform these functions on Halbis's behalf. Consequently, the Debtors fail to satisfy the requirements of Section 365(b) and assumption should be denied.

5.      Even if the participation agreement were not deemed to be a financial accommodation and LCPI were not deemed to have defaulted under the Halbis Trade

3

Confirmation, forcing Halbis to enter into a post-petition participation agreement with a chapter 11 debtor creates an unreasonable and inappropriate financial and contractual relationship between the parties. The risk to be borne by Halbis of such a relationship is not one contemplated by the Bankruptcy Code or the secondary debt trading market. As such, the Debtors should not be permitted to assume the Halbis Trade Confirmation.

## ARGUMENT

### I.   LCPI Does Not Own and May Not Be Able to Purchase the Quebecor Debt.

6.     On May 15, 2008 (the "Trade Date"), LCPI agreed to sell to Halbis certain Quebecor bank debt under the Quebecor Credit Agreement. Because the sale was for less than the amount required for assignments under the Quebecor Credit Agreement, the sale was to be consummated in the form of a participation, with LCPI as lead lender and Halbis as participant. In addition, as set forth in the draft Purchase and Sale Agreement circulated to Halbis after the Trade Date, closing of the trade was dependent on LCPI closing with its upstream sellers, the Royal Bank of Canada ("RBC") and the Bank of Nova Scotia ("Nova Scotia"). It appears from Exhibit A to the Debtors' Motion that, as of the commencement of these chapter 11 cases, LCPI has not yet closed with either RBC or Nova Scotia on the purchase of the debt that is the subject of the Halbis Trade Confirmation. See Exhibit A to Motion at p.3 (Debtors seeking to assume open Quebecor trades with RBC and Nova Scotia).

7.     Pursuant to Section 19.3 of the Quebecor Credit Agreement, any assignment to a Person (as that term is defined in the Quebecor Credit Agreement) other than a Lender or an Affiliate of a Lender (as defined in the Quebecor Credit Agreement) must be approved by the administrative agent. It is not known whether, as of the date

4

hereof, LCPI is a Lender or an Affiliate of a Lender under the Quebecor Credit Agreement. If not, then it would appear reasonable (and most likely prudent) for the administrative agent to withhold approval of the assignment between RBC and LCPI and Nova Scotia and LCPI, as it is unlikely that the Lenders under the Quebecor Credit Agreement anticipated having a chapter 11 debtor as a co-lender.[3] Even if LCPI is currently a Lender or an Affiliate of a Lender, Halbis submits that it would be within the administrative agent's discretion to withhold approval of the RBC/LCPI and Nova Scotia/LCPI upstream trades. In such an event, the Debtors could not assume the Halbis Trade Confirmation, because LCPI would not have the inventory of Quebec debt to participate to Halbis.

## II. Halbis Should Not Be Forced to Enter Into a Participation Agreement with a Chapter 11 Debtor.

8. Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession may assume or reject any executory contract with the court's approval. 11 U.S.C. § 365(a). Section 365(c)(2) provides, however, that a debtor may not assume a contract if it is a contract to make a loan, or extend other debt financing or financial accommodations . . ." 11.U.S.C. § 365(c)(2). Though the term "financial accommodation" is not defined in the Bankruptcy Code, it has been interpreted by courts to mean "an extension of money or credit to accommodate another." *In re Cole Bros., Inc.*, 154 B.R. 689, 692 (W.D. Mich. 1992) (quoting *In re Sun Runner Marine, Inc.*, 945 F.2d 1089 (9th Cir. 1991). The court in *Whinnery v. Bank of Onalaska (In re Taggatz)*

---

[3] Unlike Quebecor trades that are contemplated to close as assignments with LCPI acting as a mere conduit between an upstream seller and a downstream buyer, here, LCPI will be a Lender under the Quebecor Credit Agreement and will participate an interest in the debt to Halbis. In the assignment scenario, the administrative agent may deem approval to be reasonable since LCPI will not be a lender going forward; in the participation scenario, the reasonableness of such an approval is questionable at best.

5

106 B.R. 983, 992 n. 11 (Bankr. W.D. Wis. 1989) surveyed decisions in which the term 'financial accomodation' was analyzed in terms of the risk to be borne by the non-debtor party. The *Whinnery* court found that a financial accommodation existed where money was delivered by the non-debtor party in exchange for a promise to pay by the debtor party. *Id*. Thus, where a non-debtor is required to fund the unfunded portion of a promissory note, or provide insurance services in advance of payment or provide a letter of credit facility, a financial accommodation exists. *Id.*

9.  Halbis submits that a participation agreement with LCPI would be a form of financial accommodation between the parties. LCPI, as lead lender, would stand in Halbis's shoes in the Quebecor credit and would be required to provide and accept payments to and from Quebecor on Halbis's behalf. Halbis will be required to make payments directly to LCPI for future funding obligations and to reimburse agent expenses in exchange for LCPI's promise to pay such amounts over to Quebecor or the agent. To the extent LCPI cannot make the required future funding payments (including paying its share of the agent's expenses), Halbis's interest as the beneficial holder of the Quebecor debt will be directly impaired. Moreover, if Quebecor makes distributions to LCPI under the Quebecor Credit Agreement, those distributions will flow through the estate and there is no assurance that Halbis will receive its portion of the distributions. It is these type of risks that Section 365(c)(2) was enacted to avoid.

10. Even if this Court were to determine that the participation agreement between Halbis and LCPI is not a financial accommodation, this Court should not force Halbis to enter into a post-petition participation arrangement with LCPI. A participation arrangement, such as the one contemplated by the standard Participation Agreement for

Distressed Trades published by the Loan Syndications and Trading Association, requires the seller/grantor of the participation to undertake various tasks with respect to the participation. Some examples of these include: (i) timely delivering all notices regarding the Quebecor Credit Agreement to Halbis; (ii) soliciting Halbis's instructions for voting and other actions to be taken under the Quebecor Credit Agreement and acting in accordance with such instructions; (iii) coordinate any future funding requirements, including making future funds available to Quebecor as required under the Quebecor Credit Agreement (both in the United States and in Canada); and (iv) receiving distributions made by obligors under the Quebecor Credit Agreement and distributing such payments or other distributions on a timely basis to Halbis. Halbis does not believe that LCPI currently has, or will have in the future, the infrastructure to perform these tasks. As such, the Debtors should not be permitted to assume a contract under which they clearly cannot perform.[4]

11. Halbis joins in the objection filed by THL to the extent THL asserts that LCPI's failure to settle trade confirmations as soon as practicable constitutes a default for which counterparties are entitled to compensation for the actual pecuniary loss suffered by Halbis as a result of the default and adequate assurance of future performance. As set forth above, the Debtors cannot show adequate assurance of future performance under a participation agreement with Halbis, and, as such, the Halbis Trade Confirmation should not be assumed.

12. In the alternative, if this Court permits the Debtors to assume the Halbis Trade Confirmation, then the compensation owed to Halbis for actual pecuniary loss

---

[4] Moreover, because it is likely that the Debtors would be unable to perform their obligations under such a participation agreement, assumption would subject the estate to administrative expense claims for breach of a post-petition contract.

7

A/72777135.2

would be the difference in price between the time the trade should have settled under the market standard terms set out by the Loan Syndications and Trading Association (the "LSTA") (trade date plus 20 days) and the actual date the Halbis Trade Confirmation settles. The compensation should be deemed to be a credit against the purchase price to be paid under the Halbis Trade Confirmation. In addition, Halbis should be relieved from paying any Delayed Compensation (as that term is defined by the LSTA) in connection with the trade, so that LCPI does not profit from its default.

## Memorandum of Law

13.     Because the legal points and authorities upon which this Objection relies are incorporated herein, Halbis respectfully requests that the requirement of service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

## Notice

14.     Halbis has served the Objection on the named parties listed in the Debtors' notice of the Motion, in accordance with the Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures and filed the Objection on the docket electronically. Halbis submits that this constitutes good and adequate service of the Objection. In addition, Halbis has served the Objection on those parties listed in the Debtors' affidavit of service on the Motion (the "Debtors' Affidavit"), in the manner described in the Debtors' Affidavit or by hand.

## CONCLUSION

For the reasons given above, Halbis respectfully requests that this Court enter an order (i) denying the Motion insofar as it seeks to assume the Halbis Trade Confirmation; (ii) directing the Debtors to reject the Halbis Trade Confirmation and (iii) granting such other and further relief as is just and proper.

Dated: New York, New York
December 12, 2008

**BINGHAM McCUTCHEN LLP**

By: /s/Jeffrey S. Sabin
Jeffrey S. Sabin
jeffrey.sabin@bingham.com
Carol Weiner Levy
carol.weinerlevy@bingham.com
399 Park Avenue
New York, New York 10022
(212) 705-7000

Attorneys for Halbis Distressed
Opportunities Master Fund Limited