Kenneth J. Kelly, KK 4195
EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177
(212) 351-4500
kkelly@ebglaw.com

Attorneys for InfoSpace, Inc.

**UNITES STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                 :

| | |
|---|---|
| **In re:** | **: Chapter 11 Case No.** |
| | **:** |
| **LEHMAN BROTHERS HOLDINGS INC.,et. al.,:** | **08-13555 (JMP)** |
| | **:** |
| | **: (Jointly Administered)** |
| **Debtors.** | **:** |

-------------------------------------------------------------x

| | |
|---|---|
| | **:** |
| **SECURITIES INVESTOR PROTECTION** | **:** |
| **CORPORATION,** | **:** |
| | **:** |
| **Plaintiff,** | **: SIPC Proceeding** |
| | **:** |
| **v.** | **: Adv. No. 08-01420 (JMP)** |
| | **:** |
| **LEHMAN BROTHERS, INC.,** | **:** |
| | **:** |
| **Debtor.** | **:** |
| | **:** |

**LIMITED OBJECTION OF INFOSPACE, INC.**
**TO THE CURE AMOUNTS SET FORTH IN BARCLAYS NOTICE LETTER**
**DATED DECEMBER 4, 2008**

COMES NOW InfoSpace, Inc., a company incorporated under the laws of Delaware,

with offices at 601 108th Avenue, NE, Bellvue, Washington 98004 ("InfoSpace"), by counsel,

and Objects to Barclays' December 4th, 2008, Notice Letter Of Assignment Of Investment

Advisory Agreement And The Cure Amounts For The Agreement (the "Notice Letter"), and

states as follows:

<u>Background</u>

1.     On September 15, 2008, Lehman Brothers Holdings, Inc. , followed periodically

thereafter by certain of its subsidiaries, including Lehman Brothers, Inc. ("LBI") (collectively,

the "Debtors") commenced voluntary Chapter 11 cases in this Court under chapter 11 of title 11

of the United States Code (the "Bankruptcy Code.")

2.     On September 17, 2008, the Debtors filed a motion seeking authority to (i) sell

certain of their assets to Barclays Capital, Inc., a Connecticut corporation ("BCI"), free and clear

of liens, claims, interests and encumbrances, pursuant to a September 16, 2008 Asset Purchase

Agreement (the "Sale Motion"), and (ii) to assume and assign to BCI certain of Lehman's

Business, defined in the Asset Purchase Agreement as meaning "the U.S. and Canadian

investment banking and capital market businesses of Seller including the fixed income and

equities cash trading, brokerage, dealing, trading and advisory businesses, investment banking

operations and LBI's business as a futures commission merchant."[1]

3.     On September 19, 2008, a proceeding was commenced under the Securities

Investor Protection Act of 1970 ("SIPA") with respect to LBI by the Securities Investor

Protection Corporation ("SIPC"), which filed a complaint and application (the "SIPA

Application") in the United States District Court for the Southern District of New York, seeking

an order adjudicating the customers of LBI were in need of protections under the SIPA.  The

District Court granted the SIPA Application, entered an Order Commencing Liquidation of LBI

(the "Liquidation Order") and appointed James W. Giddens, Esq., as SIPA Trustee (the "SIPA

---

[1] The InfoSpace Investment Advisory Agreement was not, to the best of InfoSpace's knowledge, expressly assumed
and assigned in the original sale documents nor in any of the notices of assumption filed thereafter with the court.

Trustee") of the LBI SIPA proceeding (the "SIPA Proceeding.)  The District Court then transferred the SIPA Proceeding to this Court, which now oversees both the Chapter 11 cases and the SIPA Proceeding.

4.    On September 20, 2008, the Court issued an Order approving the Sale Motion, thereby authorizing the sale of certain assets of the Debtors to BCI pursuant to the September 16th Purchase Agreement.

5.    The Sale Motion established procedures for the assumption and assignment to BCI of certain executory contracts (the "Assumption Procedures").  InfoSpace's Investment Advisory Agreement with LBI, executed December 9, 2003, by InfoSpace, and accepted January 20, 2004, by LBI, was not listed in any of the schedules attached to the Purchase Agreement or those subsequently filed with the court, as a contract to be assumed and assigned to BCI.  Nor was the associated Institutional Client Agreement, executed the same date (Exhibit A), to which the Investment Advisory Agreement was attached, expressly so listed.

6.    In the Notice Letter dated December 4, 2008, attached as Exhibit B, InfoSpace was advised, in relevant part, that:

> At the request of BCI, and in accordance with the Asset Purchase Agreement, the SIPC Trustee has assigned LBI's [Lehman Brothers Inc.'s] rights, and BCI has assumed LBI's obligations, under the Agreement, to which Counterparty [InfoSpace] is a counterparty.  The SIPC and BCI have determined that there are no amounts outstanding and no obligations of LBI to the Counterparty that must be cured (such amounts and obligations, the "Cure Amounts") in connection with the assumption and assignment of the Agreement [i.e., the Investment Advisory Agreement] to BCI.

7.    The December 4th letter lists the "Cure Amount" as being zero dollars ($0).

8.    By virtue of the Notice Letter, the SIPC Trustee and LBI propose to assume and

assign InfoSpace's Investment Advisory Agreement to BCI, apparently pursuant to the Section 2.5 of the purchase agreement, titled Assumption Procedures.[2]

9.      The Notice Letter goes on to require that objections to the cure amount be made by December 14, 2008.

10.      InfoSpace hereby objects to the Cure Amount of zero based on Debtors' breach of the Investment Advisory Agreement and due to other associated claims of InfoSpace against LBI and/or the SIPA trust, including tort claims, arising from the investments underwritten, marketed and sold by LBI to InfoSpace.

11.      As such breaches, claims and damages have yet to be fully investigated or adjudicated, InfoSpace is unable at the present time to identify what the proper cure amount should be.  Accordingly, InfoSpace files this objection to reserve its right to an appropriate cure amount and to enable the parties to determine the proper amounts that need to be cured in order to permit assumption and assignment.

## Objection to Cure Amount

12.      Section 365 of the Bankruptcy Code generally permits a debtor to assume or to reject any executory contract, in the debtor's discretion.  However, in order to "sell" an executory contract to BCI under §363 of the Bankruptcy Code, LBI and the SIPC Trustee must actually assume and assign the subject contract, under §365 of the Bankruptcy Code, and (i) cure (or provide adequate assurance that they will promptly cure) all defaults that exist as of the Petition Date; (ii) compensate, or provide adequate assurance that they will compensate, the

---

[2] InfoSpace also received correspondence from BCI, in November, 2008, which states that while certain auction rate securities of InfoSpace, an LBI customer, were "transferred" to BCI, and that BCI purchased several LBI businesses, including the private investment management operations, BCI did not purchase the corporate treasury services (CTS) business of LBI.  The letter also states that BCI did not assume any liabilities of LBI associated with the CTS business, including in respect of auction rate securities.

counter-party to the executory contract for any actual pecuniary loss arising from such defaults

and (iii) provide adequate assurance of future performance under the contract.  See

§§365(b)(1)(A)-(C) of the Bankruptcy Code; see also In re Access Beyond Technologies, Inc.,

237 B.R. 232 (Bankr. D. Del. 1999) (executory contracts must be assumed and assigned under

§365, in connection with a sale, rather than sold under §363, alone.)

13.    If a creditor is aware or reasonably should have been aware that the debtor, pre-

petition, failed to perform under its contract with the creditor, and also has notice that the

purchaser of the debtor's assets intended to assume the contract, with the cure amount

represented to be zero, the creditor cannot sit back while the bankruptcy court approves the

purchaser's assumption of the contract and later assert claims against the purchaser, based upon

the debtor's pre-petition breach.  If it says nothing, the creditor's purported claim for pre-petition

defaults will be barred under the doctrine of *res judicata*.  In re Cellnet Data Systems, Inc., 313

B.R. 604,609 (Bankr. D. Del. 2004) (citing cases.)

14.    Here, the proposed "cure" amount is not zero, as alleged.

15.    While InfoSpace has no objection to the assumption and related assignment of its

investment advisory contract to BCI, *upon payment of the proper cure amount*, InfoSpace

objects to the proposed cure amount.  InfoSpace objects to the assumption and assignment of its

contract at a zero "cure" amount insofar as InfoSpace has breach of contract, breach of the

covenant of good faith and fair dealing, tort and other claims arising from the subject contract.

These claims by InfoSpace arise from LBI's improper role in underwriting, marketing and/or

selling to InfoSpace, without full and fair disclosure of all associated risks, approximately $40.4

million in auction rate securities ("ARS").  These are floating rate securities with either long-

term maturities or no maturity dates, with auction reset dates primarily at 28-day intervals, to

provide short-term liquidity.  These securities held by InfoSpace are of two types.  The first are

ARS collateralized by investment-grade corporate debt and mortgage-backed debt, with a long

maturity date, insured in the event of default by monoline insurance companies.  The second type

of ARS marketed and sold to InfoSpace, known as auction-rate preferred securities ("ARPS"),

have no maturity dates and, in the event of default or liquidation of collateral by the ARS issuer,

InfoSpace is entitled to receive, or hold an interest, direct or indirect in, non-convertible

preferred shares in the ARS issuer.  Beginning in 2007, auctions for the ARS and ARPS that

InfoSpace holds began to fail due to insufficient bids from buyers.  InfoSpace has suffered

significant damages both in market value[3] and liquidity losses arising from its purchase of the

ARS and the ARPS securities underwritten, marketed and sold by LBI.  InsoSpace would not

have purchased the subject securities had it not been misled by LBI's failure to fully and fairly

disclosure the risks associated with the ARS and ARPS which LBI underwrote, marketed and/or

sold to InfoSpace.

    16.    The full extent and nature of these claims by InfoSpace have yet to be determined

and undersigned counsel has been retained by InfoSpace very recently.  As such, InfoSpace

needs significantly more time to determine its damages as they relate to the Investment Advisory

Agreement.

    WHEREFORE, InfoSpace respectfully requests that the Court (a) reserve InfoSpace's

right to an appropriate cure amount, (b) condition the assumption and assignment of InfoSpace's

Investment Advisory Agreement contract to BCI upon preservation of InfoSpace's rights and

claims arising from LBIs' pre-petition wrongful acts and to full payment of an associated cure

claim, and (c) award InfoSpace such other or further relief as is just and proper.

---

[3] The estimated market value of the ARS investments was $18.2 million on September 30, 2008.

Dated: New York, New York
      December 12, 2008

Respectfully Submitted,

EPSTEIN BECKER & GREEN, P.C.

By:   */s/ Kenneth J. Kelly*
      Kenneth J. Kelly (KK 4195)

250 Park Avenue
New York, New York  10177-1211
(212) 351-4500

Attorneys for Objector InfoSpace, Inc.

OF COUNSEL:

David B. Tatge, Esq.
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Suite 700
Washington, D.C.  20037
(202) 861-0900
dtatge@ebglaw.com

Rachel E. Caplan, Esq.
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Suite 700
Washington, D.C.  20037
(202) 861-0900
rcaplan@ebglaw.com

<u>Certificate of Service</u>

The undersigned certifies that a true and correct copy of the foregoing Limited Objection of InfoSpace Inc. to Notice of Assignment dated December 12, 2008, was filed electronically via the ECF system with copies also mailed by overnight Express Mail this 12th day of December, 2008, to:

Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, New York 10153-0119
Attn. Lori R. Fife, Esq. and Shai Y. Waisman, Esq.
*Counsel to the Debtors*

Hughes Hubbard & Reed, LLP
One Battery Park Plaza
New York, New York 10004
Attn. James B. Kobak, Esq.
Attn. David Wiltenburg, Esq.
Attn. Jeffrey S. Margolin, Esq.
*Counsel to the SIPC trustee*

Cleary Gottlieb Steen & Hamilton, LLP
One Liberty Plaza
New York, New York 10016
Attn. Lindsee P. Granfeld, Esq. and Lisa M. Schweitzer, Esq.
*Counsel to the Purchaser*

Office of the United States Trustee
33 Whitehall Street
21st Floor
New York, New York 10004
Attn. Tracy Hope Davis, Esq.

Milbank, Tweed, Hadley & McCloy, LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn. Dennis F. Dunne, Esq.
Attn. Luc A. Despins, Esq.
Attn. Wilbur F. Foster, Jr., Esq.
*Counsel to the Official Committee of Unsecured Creditors*

/s/ *Kenneth J. Kelly*

_____

Kenneth J. Kelly