**Hearing Date and Time:  December 16, 2008 at 10:00 a.m. (Prevailing Eastern Time)**

Theodore B. Stolman (Admitted *pro hac vice*)
Scott H. Yun (Admitted *pro hac vice*)
Carol Chow (Admitted *pro hac vice*)
Margreta M. Morgulas (NY State Bar No. 4528907)
**STUTMAN, TREISTER & GLATT**
**PROFESSIONAL CORPORATION**
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone: (310) 228-5600
Facsimile:  (310) 228-5788

Attorneys for TPG-Austin Portfolio Holdings LLC

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ------------------------------------------------x : | **Chapter 11** |
| **In re** : | |
| : | **Case No.  08-13555 (JMP)** |
| **LEHMAN BROTHERS HOLDINGS,** : | |
| **INC.,** *et al.* : | **(Jointly Administered)** |
| : | |
| : | |
| **Debtors.** : | |
| ------------------------------------------------x | |

**REPLY TO DEBTORS' OBJECTION TO MOTION OF TPG-AUSTIN
PORTFOLIO HOLDINGS LLC TO COMPEL IMMEDIATE ASSUMPTION
OR REJECTION OF CREDIT AGREEMENT; OR IN THE ALTERNATIVE,
GRANT RELIEF FROM THE AUTOMATIC STAY TO PERMIT
<u>ALTERNATIVE FINANCING ON A SENIOR SECURED BASIS</u>**

TPG-Austin[1] hereby replies to the objection and the joinder to the objection to the "Motion to Compel Immediate Assumption or Rejection of Credit Agreement; Or, in the Alternative, Grant Relief from the Automatic Stay to Permit Alternative Financing on a Senior Secured Basis" (the "Motion") filed by LBHI, LCPI and their affiliated debtors in the above-captioned chapter 11 cases (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee"), respectively, and submits as follows:

## INTRODUCTION

1. TPG-Austin is well aware that the Debtors' chapter 11 cases are large and complex and is sympathetic to the numerous issues that the Debtors are required to face during the early stages of a bankruptcy case. Unfortunately, unless the Court timely grants the relief requested in the Motion or the Debtors and TPG-Austin are able to reach a consensual resolution within the next few weeks, TPG-Austin may be forced to consider its own chapter 11 bankruptcy case due to LCPI's failure to fulfill its commitment under the Revolving Loan.

2. By the Motion, TPG-Austin, as the general partner of the Partnership that directly or indirectly owns ten "Class A" office Properties in Austin, Texas, is attempting to preserve and maintain the Properties for the benefit of the partners, including LBHI, which holds a 50% interest in the Partnership. TPG-Austin is not attempting to gain undue leverage or take advantage of the Debtors' situation; it is merely attempting to maintain the status quo for the Properties and enjoy the bargained-for benefits of the Credit Agreement. As explained in greater detail in the Motion, the Debtors will benefit greatly from TPG-Austin's request to obtain the assumption of the Credit Agreement or, in the alternative, to obtain a replacement loan on a senior secured basis. In addition to LBHI's 50% interest in the Partnership, LBHI and LCPI also

---

[1] Unless otherwise noted, defined terms shall have the same meaning assigned to them in the Motion.

1

made numerous loans secured by the Properties, see Motion at p. 9, and the debt service and required capital expenditures on the Properties require LCPI to fund the Revolving Loan as those sums come due. The Credit Agreement permits TPG-Austin to draw down the entire $100 million on the Revolving Loan at one time without regard to the timing of the expenditures to be funded. The Motion seeks to either have LCPI assume its obligations under the Revolving Loan so TPG-Austin will have the assurance it can meet its current and future obligations regarding the Properties, or to allow TPG-Austin to bring in new funds into the Properties to pay such obligations, at a level in the capital structure that will allow TPG-Austin to attract such new capital in the current credit environment. While TPG-Austin anticipates that it will continue to negotiate with the Debtors in an attempt to resolve this situation, the relief requested in the Motion is mutually beneficial to TPG-Austin and the Debtors.

## **REPLY ARGUMENT**

### A.   Severability of the Term Loan is Immaterial at This Time.

3. Both the Debtors and the Committee spend the bulk of the objection and the joinder arguing that the Term Loan cannot be assumed as an executory contract and that it can be severed from the Revolving Loan, despite the express terms in the Credit Agreement that the two "loans" constitute one credit facility.

4. Because the financial crisis imposed on TPG-Austin arises from LCPI's failure to fund just the Revolving Loan, the issue of severability of the Term Loan from the Credit Agreement is immaterial at this time[2]. Neither party is in default under the Term Loan. The Court can fashion relief to TPG-Austin by either allowing LCPI to fund the Revolving

---

[2]   TPG-Austin is neither agreeing with nor disagreeing with the Debtors on the issue of severability at this time. TPG-Austin reserves its right to take a position on the severability issue if it becomes material.

2

Loan under Bankruptcy Code section 365 or 363, or, in the alternative, allow TPG-Austin to obtain a replacement loan on a senior secured basis.

5.      Moreover, even if the Term Loan is severable and not assumable as an executory contract, that does not excuse LCPI's breach of the Revolving Loan or compelling the assumption of the Revolving Loan.  The severability argument, therefore, is a red herring and need not be resolved at this time.

### B.    Sufficient Cause Exists to Compel Assumption.

6.      Regardless whether the Term Loan can be assumed, sufficient cause exists to compel LCPI to assume the Revolving Loan.

7.      Congress has made clear that the courts should use Bankruptcy Code section 365(d)(2) to "prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-à-vis the estate."  H.R. No. 595, 95th Cong., 1st Sess. 348 (1977); see also S.R. No. 989, 95th Cong., 2d Sess. 59 (1978).  While a debtor may legitimately have time to evaluate the benefits of assuming or rejecting a particular contract, a debtor cannot "have its cake and eat it too" by accepting all of the benefits of an executory contract without committing to assume or reject it.  Theater Holding Corp. v. Mauro, 681 F.2d 102, 105 (2d Cir. 1982); see also Bank of Honolulu v. Anderson (In re Anderson), 36 B.R. 120, 126 (Bankr. D. Hawaii 1983) (granting motion to compel in order to ensure that debtor did not "reap a fortune at creditor's expense").  Thus, the courts consistently have held that a debtor may have only a "reasonable" amount of time to assume or reject an executory contract.  See, e.g. In

3

re Maryvale Community Hospital (Bratrud v. Dunning), 456 F.2d 414, 417 (9th Cir.), cert. denied, 409 U.S. 879 (1972).

8.  The decision regarding what is a "reasonable" time to compel assumption or rejection generally "is left to the bankruptcy court's discretion in light of the circumstances of each case." Theater Holding, 681 F.2d at 105. In making this decision, the courts generally are guided by a number of factors, including: (i) the nature of the interests at stake; (ii) the balance of the burden on the parties; and (iii) the safeguards afforded the parties by applicable law. See In re Wallace, 122 B.R. 222, 234-35 (Bankr. D. N.J. 1990) (giving debtors fifteen days to assume or reject lease).

9.  The following discussion shows that each of these factors weighs heavily in favor of compelling LCPI to assume or the Revolving Loan without further delay.

**1.  Nature of the Interests at Stake.**

10.  Contrary to the Debtors' unsupported speculation, LCPI's continued failure to fund the Revolving Loan will severely harm TPG-Austin and the Properties. The immediate crisis faced by TPG-Austin and the Properties is the approximately $19 million in property taxes due in January 2009.

11.  Even if the taxing authorities in Texas do not immediately initiate foreclosure proceedings as the Debtors claim, the non-payment of property taxes constitutes an event of default under the various mortgages/deeds of trust encumbering the Properties, which

4

may cause those loans to be called into default and accelerated.

12. Although the Debtors initially held mortgages/deeds of trust on ten Properties, with respect to seven of those Properties, they either sold the loans in the commercial mortgaged backed securities market or sold "A" pieces of those loans to third parties. Accordingly, the failure to pay the property tax in January 2009, could lead to either foreclosure by the taxing authorities or by the third party holders of the mortgages/deeds of trust, which would destroy value not just for TPG-Austin, but LBHI's 50% equity interest and the subordinated loan positions that either LBHI or LCPI retained in the mortgages/deeds of trust. The Debtors' arguments on this point also completely ignore the impact that failure to pay the property taxes would have on the ongoing leasing of the Properties. After all, the lease up of the Properties to the point they can service the debt without further need for cash under the Revolving Loan should be the goal of all parties involved. Debtors will benefit from the increased cash flow before the partners in TPG-Austin, since the first excess cash flow will go to service and repay the Term Loan. Debtors certainly must acknowledge that the inability of TPG-Austin to pay the taxes when due will not only create a default under the mortgage debt, but also harm the future cash flow from the leasing of the Properties, none of which is in the interest of either TPG-Austin or the Debtors.

13. In addition, without access to $100 million in Revolving Loans, which TPG-Austin counted on to fund capital costs of leasing space and making necessary repairs, the

5

value and reputation of the Properties will be harmed because of a lack of funds required to meet tenant improvement and Broker fees owed for new leases already executed as well as prospective leases being negotiated. There can be no doubt that the failure to honor its obligations will lead to difficulties both in finding replacement tenants as well as damage claims from existing tenants.

14. Essentially, the failure of the Debtors to assume its commitment under the Revolving Loan will cause extreme harm to TPG-Austin, the Properties and this LBHI's interest in such Properties.

**2.    Balance of Hardship.**

15. Whereas, as set forth above, the failure to fund the Revolving Loan will cause extreme harm to TPG-Austin and the Properties, requiring LCPI to fulfill its commitment will actually benefit the Debtors and the Debtors' bankruptcy estates.

16. LCPI's funding of the Revolving Loan will be secured, and the funds will directly benefit LBHI's 50% interest in the Partnership. In addition, some of the proceeds of the Revolving Loans will paid to the Debtors on account of their interests in the mortgages/deeds of trust on the Properties.

17. The Debtors appear to have more than sufficient funds to fully fund the Revolving Loan.

6

**3.    Safeguards to the Parties.**

18.    The Credit Agreement already provides sufficient safeguards to LCPI as a secured creditor. In fact, because LCPI itself negotiated the terms of the Credit Agreement, it cannot possibly complain that the protections afforded to LCPI are inadequate.

**C.    Alternatively, TPG-Austin Should be Allowed to Obtain a Replacement Loan on a Senior Secured Basis Ahead of the Existing Liens of LCPI.**

19.    In the Motion, TPG-Austin requested that, if LCPI decides to reject the Credit Agreement or extend the time to assume or reject the Credit Agreement, it should be allowed to promptly pursue all of its rights and remedies (except for enforcement of a money damages claim). Primary among the rights and remedies that TPG-Austin seeks to pursue is obtaining equitable relief to allow an alternative lender, including one or more of the existing partners, to lend money to TPG-Austin in place of the Revolving Loan and be provided with a security interest senior to all interests pledged to LCPI as security under the Credit Agreement (for both the Term Loan and the Revolving Loan), including senior mortgages on three of the Properties (referred to as Park 22, Westech 360 and Great Hills Plaza Properties) that are currently encumbered by senior mortgages held by LCPI.

20.    Neither the Debtors nor the Committee have articulated how the alternative relief could harm the estates. Because TPG-Austin specifically requested that LCPI, if it decided at a later date to assume the Revolving Loan, replace the new loan by paying it off, this alternative relief provides greater flexibility to LCPI.

21.    In the meantime, by allowing TPG-Austin to obtain a new loan, it can mitigate the damages caused by LCPI's breach of the Revolving Loan, which benefits the Debtors.

**D. Allowing More Time for LCPI to Assume or Reject the Credit Agreement.**

22. To the extent the Court is inclined to allow LCPI additional time to assume or reject the Credit Agreement, TPG-Austin requests that the extension not exceed 30 days, since a further hearing in approximately 30 days will provide a forum for the parties to return to Court with a possible consensual resolution to present to the Court or, alternatively, an opportunity to consider the Motion prior to the time when the taxes are due on the Properties.

## CONCLUSION

Based on the foregoing, TPG-Austin requests that the Court grant the Motion by either (1) ordering LCPI to immediately assume the Revolving Loan or, if LCPI cannot immediately assume, allow TPG-Austin to borrow up to $100,000,000.00 from one or more alternative lenders, including one or more of the partners in the Partnership, to fund the required capital to pay the pending property taxes and for lease up of the Properties and to grant such alternative lender or lenders (i) first mortgage liens on each of Great Hills Plaza, Westech 360, and Park 22 with a priority over the existing mortgage liens in favor of LCPI, and (ii) a security interest in the equity owned by TPG-Austin in each of the 7 mezzanine level entities (TPG 401 Congress Mezzanine LLC, TPG-300 West 6th Street Mezzanine LLC, TPG-San Jacinto Center Mezzanine LLC, TPG-One Congress Plaza Mezzanine LLC, TPG-One American Center Mezzanine LLC, TPG Stonebridge Plaza II Mezzanine LLC, and TPG-Research Park Plaza I & II Mezzanine LLC) that, in turn, own the Property level entities for the 7 buildings in Austin, Texas, with such security interests to be senior in priority to all liens or security interests pledged to LCPI as security for the Term Loan and Revolving Loan, or (2) in the alternative, continuing the hearing for approximately 30 days to allow the Debtors additional time to

8

assume or reject the Credit Agreement or for the parties to reach an accommodation that can be presented to the Court at the next hearing.

Dated:   December 15, 2008
        Los Angeles, California

/s/ Alexander Fisch
Theodore B. Stolman
Scott H. Yun
Margreta M. Morgulas
H. Alexander Fisch
STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone: (310) 228-5600
Facsimile: (310) 228-5788

Counsel for TPG-Austin Portfolio Holdings, LLC