WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
:
**In re**                                                    :    **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :    **08-13555 (JMP)**
:
                                          **Debtors.**    :    **(Jointly Administered)**
:
:
-------------------------------------------------------------------x

### NOTICE OF AMENDED ORDER AUTHORIZING THE DEBTORS TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS

PLEASE TAKE NOTICE that attached hereto as Exhibit A is the Debtors' revised proposed Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement and Assumption and Assignment of Prepetition Derivative Contracts. Attached hereto as Exhibit B is a version of the revised proposed Order, marked to show changes from the version originally filed with the Court.

Dated: December 15, 2008
New York, New York

/s/ Robert J. Lemons
_____
Lori R. Fife
Robert J. Lemons
WEIL, GOTSHAL &
MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Debtors
and Debtors in Possession

**Exhibit A**
**(Revised Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                                :
In re                                                           :    **Chapter 11 Case No.**
                                                                :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,                    :    **08-13555 (JMP)**
                                                                :
                                              **Debtors.**      :    **(Jointly Administered)**
                                                                :
-----------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105 AND 365
### OF THE BANKRUPTCY CODE TO ESTABLISH
### PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION
### AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS

Upon the motion, dated November 13, 2008 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-

debtor affiliates, "Lehman")[1], pursuant to sections 105 and 365 of the Bankruptcy Code (the

"Bankruptcy Code") and Rules 6006 and 9019 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") for entry of an order establishing procedures for the assumption and

assignment (the "Assumption and Assignment Procedures") of derivative contracts (the

"Derivative Contracts")[2] the Debtors entered into with various counterparties (the

"Counterparties") and the settlement of claims arising from the termination of Derivative

Contracts (the "Termination and Settlement Procedures" and together with the Assumption and

Assignment Procedures, the "Procedures"), all as more fully described in the Motion; and the

---

[1]    The Debtors do not include Lehman Brothers Inc. ("LBI") or any affiliates of LBHI that are not chapter 11 debtors.

[2]    For the avoidance of doubt, Derivative Contracts shall not include contracts or assets transferred to Barclays Capital Inc. or its affiliates pursuant to the terms of that certain Asset Purchase Agreement dated September 16, 2008 (as amended, supplemented, modified or clarified) among LBHI, LBI, LB 745 LLC, and Barclays Capital Inc.

Court having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges

for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10,

1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being

a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided in accordance with the procedures set forth in the order entered September 22, 2008

governing case management and administrative procedures [Docket No. 285] to (i) the United

States Trustee for the Southern District of New York (the "U.S. Trustee"); (ii) the attorneys for

the Official Creditors' Committee (the "Committee"); (iii) the Securities and Exchange

Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern

District of New York; and (vi) all Counterparties (via mail, fax, or email) in the Debtors' records

to the extent that the Counterparties' last known mail address, fax number, or email address is

available to the Debtors; and (vii) all parties who have requested notice in these chapter 11 cases,

and it appearing that no other or further notice need be provided; and a hearing (the "Hearing")

having been held to consider the relief requested in the Motion; and all objections to the Motion,

other than those filed by the Remaining Objectors (as defined below), having been withdrawn or

overruled at the Hearing; and the Court having found and determined that the relief sought in the

Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest

and that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the following Assumption and Assignment Procedures for the

assumption and assignment pursuant to sections 105 and 365 of the Bankruptcy Code of

Derivative Contracts that have not been validly terminated are hereby approved and established

in the Debtors' chapter 11 cases:

### Assumption and Assignment Procedures

a.    For any Derivative Contract to be assumed and assigned pursuant to these Assumption and Assignment Procedures, and without the prior consent of the Counterparty, the Debtors shall, at least ten (10) business days in the case of Derivative Contracts consisting of fewer than 100 transactions (and fewer than 50 transactions in respect of Fully Paid Contracts, as defined below); and at least 20 business days in the case of Derivative Contracts consisting of 100 or more transactions (or 50 or more transactions in respect of Fully Paid Contracts) (or in any case such shorter period as may be agreed by the Counterparty) before such assumption and assignment, deliver a notice (the "Assignment Notice") by overnight mail delivery service, fax, or email (where available) on (i) the Counterparty under each applicable Derivative Contract (and in either case, its attorney, if known; or if it has appeared in these cases), at the last known mail address, fax number, or email address available to the Debtors, and, if different, any mail address, fax number, or email address required by the applicable Derivative Contract; and (ii) the attorneys for the Committee, Milbank, Tweed,Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, (Attn: Wilbur Foster and Evan Fleck).

b.    Each Assignment Notice shall set forth the following information: (i) the names and addresses of the Counterparties, in alphabetical order, (ii) identification of the Derivative Contracts, including a list of all transactions thereunder, and whether any are Fully Paid Contracts, (iii) the identity of as many as 12 proposed assignees, together with any guarantor (provided that the Assignment Notice need not identify the assignee if it will be an affiliate of the guarantor and organized under the laws of the same country as the guarantor) and information regarding each assignee's or guarantor's ability to perform under an assigned Derivative Contract, and (iv) any amounts proposed by the Debtors to be paid to cure existing defaults and compensate for actual pecuniary losses resulting from such default as required under Bankruptcy Code section 365 ("Cure Amounts") (including, on a transaction by transaction basis, calculations and detail of specific charges and dates, and any other amounts receivable or payable supporting such Cure Amount).  All Assignment Notices will be accompanied by a copy of the Order granting this Motion.

c.    Any Counterparty will be deemed to have received adequate assurance of future performance as required by section 365 of the Bankruptcy Code if the assignee, after the Debtors' payment of any Cure Amounts and by assignment, could no longer have any ongoing payment or delivery

obligations for the full term of the Derivative Contract and could not have such obligations upon termination (a "Fully Paid Contract").

d.    With respect to Derivative Contracts that may require the return of posted collateral as part of a Cure Amount, the Debtors will either return such collateral or, if such collateral is no longer in the Debtors' possession, the Debtors will pay an amount equal to the value of such collateral as of the business day prior to delivery of the Assignment Notice based upon independent third-party pricing services, which payment will be considered in full satisfaction of the posted collateral. The Debtors' proposed manner of returning any such collateral, including any amount proposed to be paid for collateral no longer in the Debtors' possession, shall be included in the Assignment Notice as a Cure Amount.

e.    To the extent that any Counterparty wishes to object on the grounds of (i) the proposed Cure Amount (including on the grounds of disagreement with any amount proposed to be paid for the value of any collateral no longer in the Debtors' possession); (ii) the need to cure a default or early termination event, including, without limitation, any default or early termination event with respect to the Debtors and each of their respective affiliates, successors and assigns (a "Default") – other than a Default relating to the commencement of a case under the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the Debtors, which Defaults need not be cured prior to assignment; (iii) the adequate assurance of future performance under the applicable Derivative Contract (unless, after the Debtors' payment of any Cure Amounts and the assignment, the assignee could no longer have any ongoing payment or delivery obligations for the full term of the Derivative Contract, and could not have such obligations upon termination); (iv) an allegedly valid termination of the applicable Derivative Contract; or (v) the identity of the assignee or, if applicable, the guarantor (including, without limitation, that the assignment would give rise to the right to terminate by the assignee or impose additional obligations on the Counterparty), then such Counterparty must deliver a written objection, so that such objection is actually received no later than ten (10) business days after the date of delivery of the Assignment Notice in the case of Derivative Contracts consisting of fewer than 100 transactions (and fewer than 50 transactions in respect of Fully Paid Contracts); and no later than 20 business days after the date of delivery of the Assignment Notice in the case of Derivative Contracts consisting of 100 or more transactions (or 50 or more transactions in respect of Fully Paid Contracts) (the "Objection Period"), on (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Robert J. Lemons) and Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, New York 10178 (Attn: Steven J. Reisman and L. P. Harrison 3rd); and (ii) the attorneys for the Committee, Milbank, Tweed,Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York,

New York 10005, (Attn: Wilbur Foster and Evan Fleck).  Any such objection must specify the grounds for such objection, including, without limitation, (i) stating the Counterparty's alleged Cure Amount (including, on a transaction by transaction basis, calculations and detail of specific charges and dates, and any other amounts receivable or payable supporting such alleged Cure Amount, and in any event containing no less detail than the calculation of the Cure Amount provided by the Debtors) if the Counterparty disagrees with the Debtors' proposed Cure Amount, (ii) any other defaults or termination events the Counterparty alleges must be cured to effect assignment of the Derivative Contract (including any the Counterparty alleges cannot be cured, other than any Default relating to the commencement of a case under the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the Debtors), (iii) any allegedly valid termination of the Applicable Derivative Contract that the Counterparty asserts to have occurred (including details and documentation in support of such allegedly valid termination), and /or (iv) the identity of any assignee or, if applicable, the guarantor to whom the Counterparty objects and the grounds for such objection.

f.     To the extent that any Counterparty does not timely deliver an objection as set forth above, such Counterparty will be deemed (i) to have consented to such Cure Amounts, if any, and to the assumption and assignment of the Derivative Contract; (ii) to have agreed that the assignee has provided adequate assurance of future performance within the meaning of Bankruptcy Code section 365(b)(1)(C); (iii) to have agreed that all Defaults under the Contracts arising or continuing prior to the assignment have been cured as a result or precondition of the assignment, such that neither the assignee nor the Debtors shall have any liability or obligation with respect to any Default occurring or continuing prior to the assignment, and from and after the date of the assignment the Derivative Contract shall remain in full force and effect for the benefit of the assignee and the Counterparty in accordance with its terms; (iv) to have agreed that the terms of this Order shall apply to the assignment; and (v) to have waived  any right to terminate the Derivative Contract or designate an early termination date under the applicable Derivative Contract as a result of any Default that occurred and/or was continuing prior to the assignment, provided, however, that nothing in these Assumption and Assignment Procedures shall affect any right of any Counterparty, regardless of whether or not an objection is timely delivered by such Counterparty, to exercise any rights described in Sections 362, 555, 556, 559, 560, 561, or 562 of the Bankruptcy Code prior to consummation of an assignment transaction.

g.     If the Debtors are unable to consensually resolve any timely delivered objection, the Debtors may consummate the proposed assignment pursuant to these Assumption and Assignment Procedures only if (i) they seek and obtain authorization of the Court to consummate the proposed assignment,

or (ii) if the dispute relates solely to the amount of the Cure Amount, at the time of the assignment, the Debtors pay to the Counterparty any undisputed portion of the proposed Cure Amount and place any disputed portion into a segregated interest-bearing account such that, upon any resolution by the Court of the Cure Amount dispute, or agreement between the Debtors and the Counterparty, the Counterparty will be entitled to payment from the segregated account of any disputed portion and interest earned thereon (at the rate provided in the applicable Derivative Contract) to which the Court finds, or the Debtors and Counterparty agree, it is entitled. Any effort by the Debtors to seek Court authorization shall be subject, with respect to procedural matters, to all applicable Federal Rules of Bankruptcy Procedure, Federal Rules of Evidence, and Local Bankruptcy Rules for the Southern District of New York.

h.    Unless the Debtors solicit bids from at least four (4) potential assignees and select the highest or best bid received within a reasonable time period from such assignees, the Debtors shall request consent of the Committee through its advisors to assume and assign a Derivative Contract pursuant to these Assumption and Assignment Procedures.

i.    If (i) no objection is timely delivered by a Counterparty, or a Counterparty affirmatively consents to the assignment (including by resolving its objection), and any required Committee consent (including through its advisors) has been received, (ii) the dispute relates solely to the amount of the Cure Amount, the Debtors have complied with the terms of subparagraph g.(ii) of these Assumption and Assignment Procedures, and any required Committee consent (including through its advisors) has been received, or (iii) the Court authorizes the assignment, the Debtors shall be authorized, but not required, to assume and assign any Derivative Contract subject to the applicable Assignment Notice, and, upon such assumption and assignment, the assignee and any guarantor shall assume the Derivative Contract with all Defaults having been deemed cured or waived, and the assigning Debtor shall have no more claims against the Counterparty under the assigned Derivative Contract, provided, however, that any defenses and counterclaims of such Debtor relating to claims of the Counterparties that survive the assignment shall be preserved; and provided, further, that if a Derivative Contract is not assumed and assigned within 60 days (or such longer period as may be ordered by the Court) following the Objection Period, the Debtors' authority to assume and assign the applicable Derivative Contract shall expire, without prejudice to the Debtors' right to renew such authority by serving additional Assignment Notices for the same Derivative Contract(s) pursuant to these Assumption and Assignment Procedures.

j.    Within five (5) business days after consummation of an assignment transaction, the Debtors will provide notice to any Counterparty of the effective date of the assignment, any Cure Amount that has been paid, and

the identity and contact information of the assignee and its guarantor, if any. Such notice shall be accompanied by an instrument signed by the assignee and pursuant to which the assignee assumes all obligations under the assigned Derivative Contract(s), and a copy of the executed guarantee, if any, of the assignee's obligations under the Derivative Contract. Any purported termination notice sent by a Counterparty of a Derivative Contract based on a Default occurring prior to the assignment shall be ineffective unless a termination notice is received by the Debtors pursuant to the terms of the Derivative Contract prior to the assignment's consummation. Within ten (10) business days after receipt of the notice of the assignment's consummation, a Counterparty may object by sending a written objection by the means and to the parties specified in subparagraph e., above, on the grounds that the Cure Amount that was paid was insufficient to cure any defaults that occurred and/or pay any amounts accruing between the date of delivery of the Assignment Notice and the assignment. No such objection will affect the validity or terms of the assignment, but the objecting Counterparty shall have a claim with administrative expense priority against the assigning Debtor for any additional Cure Amount that the Debtors agree is due or the Court determines is owed to the Counterparty, and the Debtors shall pay such additional amount within five (5) business days of the Debtors' agreement that the amount is due or entry of a final order by the Court determining that the amount is due. In addition, any rights of a Counterparty to setoff in respect of the assigned Derivative Contract shall be preserved and such rights shall attach to the proceeds of the assignment (with all rights of the Counterparty reserved to dispute any allocation of value to its Derivative Contract if such contract was assigned as part of an assignment of multiple Derivative Contracts) (provided, however, that no rights of setoff arising from agreements with any of the Debtors other than such Derivative Contracts or arising from other matters with respect to any of the Debtors may be asserted against the assignee). Notwithstanding anything in this Order or any agreements between the applicable Debtor and its assignee to the contrary, the applicable Counterparty shall have no obligations under the assigned Derivative Contract to make any payments to the assignee of any amounts paid by the Counterparty to the Debtor pursuant to the terms of the Derivative Contract between the consummation of the assignment and the delivery of the notice of consummation to the Counterparty.

k.     In any instance where a Derivative Contract is memorialized pursuant to a master agreement, the Debtors may only assume and assign the master agreement and all transactions entered into under the master agreement, whether terminated or continuing, to a single assignee pursuant to these Assumption and Assignment Procedures. The Debtors shall not be authorized to assume a Derivative Contract pursuant to these Assumption and Assignment Procedures unless the Debtors simultaneously assign such Derivative Contract pursuant to these Assumption and Assignment Procedures.

l.      As part of and/or to facilitate any assignment transaction the Debtors may agree to make payments, including to or for the benefit of the assignee.

m.     For the avoidance of doubt, these Assumption and Assignment Procedures shall not apply to Derivatives Contracts that have been validly terminated.

n.     Nothing herein shall permit the Debtors to use identifiable collateral posted by third parties or identifiable proceeds of such collateral to pay Cure Amounts pursuant to the terms hereof.

o.     Nothing herein shall preclude any Counterparty from submitting to the Debtors a bid to become the assignee of any Debtor's rights under a Derivative Contract between such Counterparty and such Debtor.

; and it is further

ORDERED that the following Termination and Settlement Procedures for the termination and settlement of claims of terminated Derivative Contracts by the Debtors are hereby approved and established:

a.     With respect to any Derivative Contract, the Debtors may enter into and consummate a termination agreement with the Counterparty to such Derivative Contract, which may include any of the features described below.

b.     A termination agreement may resolve and fix amounts owing between the Debtors and the Counterparty (including by allowing claims against the applicable Debtors), and such amounts may incorporate setoff or recoupment solely to the extent that such setoff or recoupment is legally valid.

c.     In connection with any termination agreement, the Debtors are authorized, but not required, to provide a release to the Counterparty to the extent that the Debtors determine such a release is appropriate.

d.     A termination agreement may address and permit the collateral or margin held by the Debtors or by the Counterparties to be liquidated or returned in accordance with the Derivative Contract, an applicable Master Netting Agreement, or the termination agreement.

e.     Nothing in these Termination and Settlement Procedures shall supersede, suspend, or otherwise modify (i) the legal and contractual rights of any Counterparties to the extent such legal and contractual rights are enforceable in the Debtors' cases under the Bankruptcy Code or other applicable law; and (ii) the commencement or continuation of any civil proceeding by any party to a terminated Derivative Contract including,

without limitation, any such adversary proceeding commenced or pending
in this Court.  In addition, nothing in these Termination and Settlement
Procedures shall require a Counterparty to enter into any termination
agreement.

; and it is further

ORDERED that the Debtors are authorized and have full requisite power and

authority to enter into and consummate assumptions and assignments and/or termination

agreements of Derivative Contracts pursuant to the Assumption and Assignment Procedures

and/or Termination and Settlement Procedures; and it is further

ORDERED that (i) this Order is and shall be effective as a determination that,

upon assignment of a Derivative Contract pursuant to the Assumption and Assignment

Procedures, all defaults, events of default, and early termination events pursuant to the applicable

Derivative Contract have been cured, that all liabilities arising therefrom have been released and

discharged (other than any valid setoff claims or other valid claims in respect of the assigned

Derivative Contract(s) against the Debtors timely asserted pursuant to subparagraph j. of the

Assumption and Assignment Procedures), and that any rights to designate an Early Termination

Date have been cured or waived and (ii) the grounds on which Counterparties may object to the

assignment of their Derivative Contracts shall be limited as described in subparagraph c. and e.

of the second decretal paragraph of this Order; and it is further

ORDERED that the terms of each assignment of a Derivative Contract pursuant to

the Assumption and Assignment Procedures and this Order shall be binding in all respects upon,

shall govern the acts of, and shall inure to the benefit of, the Debtors, their estates, and their

creditors and interest holders; the Counterparties; all future assignees; each of their respective

affiliates, successors and assigns; and any affected third parties; and it is further

ORDERED that, with respect to the Derivative Contracts assigned pursuant to the Assumption and Assignment Procedures: (a) the assigned Derivative Contracts shall be transferred and assigned to, and following the closing of the assignment remain in full force and effect for the benefit of the assignees, all future permitted assignees, each of their respective affiliates, successors, and assigns, and any affected third parties, notwithstanding any provision in any such assigned Derivative Contract that prohibits, restricts, or conditions such assignment or transfer by the applicable Debtor to the applicable assignee; (b) each assigned Derivative Contract is an executory contract under section 365 of the Bankruptcy Code; (c) the Debtors may assume each of their respective Derivative Contracts in accordance with section 365 of the Bankruptcy Code; (d) the Debtors may assign each assigned Derivative Contract in accordance with section 365 of the Bankruptcy Code, and any provisions in any assigned Derivative Contract that prohibit, restrict, or condition the assignment of such assigned Derivative Contract or allow the Counterparty to such assigned Derivative Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such assigned Derivative Contract are void and of no force and effect as to such assignment by the applicable Debtor to the applicable assignee; (e) all other requirements and conditions under section 365 of the Bankruptcy Code for the assumption and assignment by the Debtors of each assigned Derivative Contract have been satisfied; and (f) upon closing of any assignment transaction, in accordance with section 365 of the Bankruptcy Code, the assignee(s) shall be fully and irrevocably vested in all right, title, and interest of each assigned Derivative Contract, shall be liable for all continuing obligations of the assignor thereunder, and shall be bound by all of the terms thereof (and, absent the agreement of the assignee and applicable Counterparty, all Derivative Contracts assigned under a master agreement shall remain subject to

the terms of such master agreement, not the terms of any other existing master agreement or

Derivative Contracts between an assignee and the applicable Counterparty).  Notwithstanding

anything to the contrary in the foregoing, any portions of any such assigned Derivative Contract

that purport to permit the Counterparty to terminate the Derivative Contract by reason of such

assignment, or any default or termination right arising prior to or existing at the time of the

assignment, including as a result of the commencement of a case under the Bankruptcy Code by

any of the Debtors, or the insolvency or financial condition of any of the Debtors, are void and of

no force and effect, and shall not be enforceable against the assignee(s), all future permitted

assignees, each of their respective affiliates, successors and assigns, and any affected third

parties; and the Counterparties to such Derivative Contracts shall not have the right to terminate

or cease payment, delivery, or any other performance under the Derivative Contracts, or

otherwise modify the Derivative Contracts, assert any claim, or termination payment, or impose

any penalty by reason of such assignment, or any default or termination right arising prior to or

existing at the time of the assignment, including as a result of the commencement of a case under

the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the

Debtors (provided, however, that nothing in this Order shall limit or otherwise affect any right of

a Counterparty to terminate or cease payment, delivery, or any other performance or exercise of

any other rights under its Derivative Contract if such right is not triggered by a Default by any of

the Debtors or the assignment by the applicable Debtor); and it is further

ORDERED that each Counterparty to a Derivative Contract assigned pursuant to

the Assumption and Assignment Procedures is hereby forever barred, estopped, and permanently

enjoined from asserting against the assigning Debtor (other than any valid setoff claims or other

valid claims in respect of the assigned Derivative Contract(s) timely asserted pursuant to

subparagraph j. of the Assumption and Assignment Procedures), the assignee(s), all future assignees, each of their respective successors and assigns, or the property of any of them, any default or termination right arising prior to or existing as of the assignment of the Derivative Contract or, against the assignee(s), any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtors; and it is further

ORDERED that, except as provided in the Assignment Notice or this Order, upon assignment of a Derivative Contract pursuant to the Assumption and Assignment Procedures, the assigning Debtor and its estate shall have no further liabilities or obligations under the Derivative Contract, and all holders of such claims are forever barred and estopped from asserting such claims against the assigning Debtor, its property or its assets or estate; provided, however, that for the avoidance of doubt, any assignment pursuant to the Assumption and Assignment Procedures shall not relieve any guarantor of the assigning Debtor's obligations under the assigned Derivative Contract from any liability in respect of such guaranty, but no such guarantor shall assume its guaranty obligations as part of any such assignment; and it is further

ORDERED that notwithstanding any other terms herein, nothing herein shall (a) in any way reinstate a Derivative Contract validly terminated prior to an assumption or assignment of such contract or (b) unwind such termination of a Derivative Contract;

ORDERED that nothing in the Motion or any pleadings filed in response thereto shall be deemed to be an admission of fact by any of the Debtors or by the Counterparty, for any purposes whatsoever, concerning the purported termination of any of the Derivative Contracts; and it is further

ORDERED that the Debtors are hereby authorized to execute and deliver all instruments and documents, and take such other actions, as may be necessary or appropriate to

implement and effectuate assumptions and assignments and/or termination agreements pursuant to the Assumption and Assignment Procedures and/or Termination and Settlement Procedures; and it is further

ORDERED that the Debtors and the Committee shall engage in good faith negotiations to agree within 30 days of entry of this Order on protocols for the Committee's oversight of transactions entered into pursuant to the Assumption and Assignment Procedures and Termination and Settlement Procedures (the "Protocols").  Prior to agreement by the Debtors and the Committee on the Protocols, (i) the Debtors shall provide the Committee with notice of the Debtors' intent to enter into any transaction pursuant to the Assumption and Assignment Procedures, and such notice shall contain either the material terms of any such proposed assignment or the material terms of the parameters of the proposed bidding process and bid acceptance criteria and (ii) the Debtors shall provide the Committee with notice of the Debtors' intent to enter into any transaction pursuant to the Termination and Settlement Procedures, and such notice shall contain the material terms of any such proposed transaction.  The Committee shall use commercially reasonable efforts to provide written notice to the Debtors' counsel (which may be provided by mail, electronic mail, or facsimile) as soon as is practicable of the Committee's consent or objection to any proposed transaction.  Notwithstanding anything to the contrary in this Order (and without limiting any other prerequisites in this Order), the Debtors may not consummate a transaction pursuant to the Assumption and Assignment Procedures or Termination and Settlement Procedures unless either (i) the Committee (including through its advisors) consents, either pursuant to the terms of this paragraph or the Protocols, to such transaction or (ii) the Court authorizes consummation of the transaction (and the Committee shall not object to any efforts by the Debtors to seek an expedited hearing by the Court of a request for

such authorization).   If the Debtors and the Committee have not agreed on the Protocols within

30 days of entry of this Order, either the Debtors or the Committee may seek at any time after

notice and a hearing (with at least 10 days' notice of such hearing) the Court's approval of revised

terms regarding obtaining Committee consent to proposed transactions under the Assumption

and Assignment Procedures and Termination and Settlement Procedures.   Until otherwise

ordered by the Court, the foregoing requirements in this paragraph shall remain in effect; and it

is further

ORDERED that the terms of this Order shall not be applicable to any Derivative

Contracts in respect of which any of the following parties filed an objection to the Motion:

Metavante Corporation; Portfolio Green German; Lincore Limited, E-Capital Profits Limited,

and Cheung Kong Bond Finance Limited; the City and County of Denver, Department of

Revenue; the Tobacco Settlement Financing Corporation; First Choice Power, L.P.; Reliant

Energy Power Supply, LLC; EnergyCo, LLC and EnergyCo Marketing and Trading; Wells

Fargo, N.A.; JA Solar Holdings Co., Ltd.; West Corporation; Danske Bank A/S, London Branch;

BRM Group, Ltd.; SunAmerica Life Insurance Company, AIG CDS, Inc., Lexington Insurance

Company; Carlton Communications Limited; HarbourView CDO III; Norton Gold Fields

Limited; Gaston Christian School, Inc.; Bank of America, National Association, Successor by

Merger with LaSalle Bank National Association, in its capacity as Trustee under certain Trust

Agreements; New Jersey Housing and Mortgage Finance Agency; The Walt Disney Company;

Deutsche Bank Trust Company Americas and Deutsche Bank National Trust Company; Bank of

America, National Association Successor by Merger with LaSalle Bank National Association, in

its Capacity as Trustee under that certain Indenture Dated as of August 16, 2007 among Ceago

ABS CDO 2007-1, Ltd., as Issuer, Ceago ABS CDO 2007-1, LLC, as Co-Issuer and LaSalle

Bank National Association, as Trustee; QVT Financial LP; Bank of America, National

Association Successor by Merger with LaSalle Bank National Association, in its Capacity as

Trustee under that Certain Indenture Dated as of November 29, 2005 among Verde CDO Ltd., as

Issuer, Verde CDO, LLC, as Co-Issuer and LaSalle Bank National Association, as Trustee;

Standard Chartered Bank; The Bank of New York Mellon, The Bank of New York Mellon Trust

Company, N.A. and BNY Corporate Trustee Services Limited; U.S. Bank National Association;

Lahde Capital Management Inc.; Instituto de Credito Oficial; Northcrest, Inc.; Citigroup Inc. and

all of its affiliates, including Citibank, N.A.; BRE Bank SA; FirstBank of Puerto Rico; The

Toronto-Dominion Bank; Societe Generale, Canadian Imperial Bank Commerce, Calyon, Dexia

Bank Internationale a Luxembourg SA, Dexia Credit Local, Dexia Kommunalbank Deutschland

AG, Dexia Banque Belgique SA and Banif - Banco de Investimento, S.A.; National Australia

Bank Limited; and FPL Energy Power Marketing, Inc. and Florida Power & Light Company (the

"Remaining Objectors"); and it is further

ORDERED that the hearing on the Motion regarding the Derivative Contracts in

respect of which the Remaining Objectors filed an objection to the Motion is hereby adjourned to

January 14, 2008 at 10:00 a.m. or such later date as may be either indicated in a notice filed by

the Debtors with the Court or ordered by the Court; and it is further

ORDERED that entry of this Order is without prejudice to the rights of the

Debtors, including, but not limited to, the right to seek further, other, or different relief regarding

the Derivative Contracts pursuant to, among other things, section 365 of the Bankruptcy Code;

and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rules 6006(a) and 9014 are satisfied; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order and/or the terms of any assumption and assignment and/or termination agreement consummated pursuant to the terms of the Assumption and Assignment Procedures and/or Termination and Settlement Procedures; provided, however, that this retention of jurisdiction shall not affect the right of any party to a jury trial or confer jurisdiction on this Court if it does not otherwise exist.

Dated: _____, 2008
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**
**(Blackline of Revised Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                            :
In re                                       :      **Chapter 11 Case No.**
                                            :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,  :      **08-13555 (JMP)**
                                            :
                       **Debtors.**           :      **(Jointly Administered)**
                                            :
-------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105 AND 365
### OF THE BANKRUPTCY CODE TO ESTABLISH
### PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION
### AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS

Upon the motion, dated November 13, 2008 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-

debtor affiliates, "Lehman")[1], pursuant to sections 105 and 365 of the Bankruptcy Code (the

"Bankruptcy Code") and Rules 6006 and 9019 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") for entry of an order establishing procedures for the assumption and

assignment (the "Assumption and Assignment Procedures") of derivative contracts (the

"Derivative Contracts")[2] the Debtors entered into with various counterparties (the

"Counterparties") and the settlement of claims arising from the termination of Derivative

Contracts (the "Termination and Settlement Procedures" and together with the Assumption and

---

[1]    The Debtors do not include Lehman Brothers Inc. ("LBI") or any affiliates of LBHI that are not chapter 11 debtors.

[2]    For the avoidance of doubt, Derivative Contracts shall not include contracts or assets transferred to Barclays Capital Inc. or its affiliates pursuant to the terms of that certain Asset Purchase Agreement dated September 16, 2008 (as amended, supplemented, modified or clarified) among LBHI, LBI, LB 745 LLC, and Barclays Capital Inc.

Assignment Procedures, the "Procedures"), all as more fully described in the Motion; and the

Court having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges

for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10,

1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being

a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided in accordance with the procedures set forth in the order entered September 22, 2008

governing case management and administrative procedures [Docket No. 285] to (i) the United

States Trustee for the Southern District of New York (the "U.S. Trustee"); (ii) the attorneys for

the Official Creditors' Committee (the "Committee"); (iii) the Securities and Exchange

Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern

District of New York (the "U.S. Trustee"); and (vi) all Counterparties (via mail, fax, or email) in

the Debtors' records to the extent that the Counterparties' last known mail address, fax number,

or email address is available to the Debtors; and (vii) all parties who have requested notice in

these chapter 11 cases, and it appearing that no other or further notice need be provided; and a

hearing (the "Hearing") having been held to consider the relief requested in the Motion; and all

objections to the Motion, other than those filed by the Remaining Objectors (as defined below),

having been withdrawn or overruled at the Hearing; and the Court having found and determined

that the relief sought in the Motion is in the best interests of the Debtors, their estates and

creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the following Assumption and Assignment Procedures for the assumption and assignment ~~of Derivative Contracts~~ pursuant to sections 105 and 365 of the Bankruptcy Code of Derivative Contracts that have not been validly terminated are hereby approved and established in the Debtors' chapter 11 cases:

Assumption and Assignment Procedures

a.      For any Derivative Contract to be assumed and assigned pursuant to these Assumption and Assignment Procedures, and without the prior consent of the Counterparty, the Debtors shall, at least ~~five~~ten ~~(5) business days (or~~10) business days in the case of Derivative Contracts consisting of fewer than 100 transactions (and fewer than 50 transactions in respect of Fully Paid Contracts, as defined below); and at least 20 business days in the case of Derivative Contracts consisting of 100 or more transactions (or 50 or more transactions in respect of Fully Paid Contracts) (or in any case such shorter period as may be agreed by the Counterparty) before such assumption and assignment, ~~serve~~deliver a notice (the "Assignment Notice") by overnight mail delivery service, fax, or email (where available) on (i) the Counterparty under each applicable Derivative Contract (and in either case, its attorney, if known~~; or if it has appeared in these cases)~~, at the last known mail address, fax number, or email address available to the Debtors, and, if different, any mail address, fax number, or email address required by the applicable Derivative Contract; and (ii) the attorneys for the Committee, Milbank, Tweed,Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, (Attn: Wilbur Foster and Evan Fleck).

b.      Each Assignment Notice shall set forth the following information: (i) the names and addresses of the Counterparties, in alphabetical order, (ii) identification of the Derivative Contracts, ~~(iii) either a statement that any assignee or its credit support provider shall have a Standard & Poor's or Fitch credit rating equal to or higher than A- or a Moody's credit rating equal to or higher than A3, or any equivalent thereof (a "Qualified Assignee"), or the identity of any proposed assignee and its credit support provider, if any, if neither is a Qualified Assignee~~including a list of all transactions thereunder, and whether any are Fully Paid Contracts, (iii) the identity of as many as 12 proposed assignees, together with any guarantor (provided that the Assignment Notice need not identify the assignee if it will be an affiliate of the guarantor and organized under the laws of the same country as the guarantor) and information regarding each assignee's

3

or guarantor's ability to perform under an assigned Derivative Contract, and (iv) any amounts proposed by the Debtors to be paid to cure existing defaults (~~"Cure Amounts"~~and compensate for actual pecuniary losses resulting from such default as required under Bankruptcy Code section 365 ("Cure Amounts") (including, on a transaction by transaction basis, calculations and detail of specific charges and dates, and any other amounts receivable or payable supporting such Cure Amount).  All Assignment Notices will be accompanied by a copy of the Order granting this Motion.

c.    Any Counterparty will be deemed to have received adequate assurance of future performance as required by section 365 of the Bankruptcy Code~~, notwithstanding any right of a Counterparty to consent to any assignment or any requirement in a Derivative Contract regarding the identity of assignees, if either (i) an assignee or its credit support provider is a Qualified Assignee, or (ii)~~ if the assignee, after the Debtors~~, after'~~ payment of any Cure Amounts~~, would~~ and by assignment, could no longer have any ongoing payment or delivery obligations ~~under~~for the full term of the Derivative Contract ~~(other than upon exercise of an option exercisable in the Debtors'/assignee's discretion~~and could not have such obligations upon termination (a "Fully Paid Contract").

d.    With respect to Derivative Contracts that may require the return of posted collateral as part of a Cure Amount, the Debtors will either return such collateral or, if such collateral is no longer in the Debtors' possession, the Debtors will pay an amount equal to the value of such collateral as of the business day prior to ~~serviced~~delivery of the Assignment Notice based upon independent third-party pricing services, which payment will be considered in full satisfaction of the posted collateral.  The Debtors' proposed manner of returning any such collateral, including any amount proposed to be paid for collateral no longer in the Debtors' possession, shall be included in the Assignment Notice as a Cure Amount.

e.    To the extent that any Counterparty wishes to object on the grounds of (i) the proposed Cure Amount (including on the grounds of disagreement with any amount proposed to be paid for the value of any collateral no longer in the Debtors' possession); (ii) the need to cure a default or early termination event, including, without limitation, any default or early termination event with respect to the Debtors and each of their respective affiliates, successors and assigns (a "Default") – other than a Default relating to the commencement of a case under the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the Debtors, which Defaults need not be cured prior to assignment; ~~or~~(iii) the adequate assurance of future performance under the applicable Derivative Contract ~~if neither the assignee nor its replacement credit support provider (if any) is a Qualified Assignee~~(unless, after the Debtors' payment of any

Cure Amounts and the assignment, the assignee could no longer have any ongoing payment or delivery obligations for the full term of the Derivative Contract, and could not have such obligations upon termination); (iv) an allegedly valid termination of the applicable Derivative Contract; or (v) the identity of the assignee or, if applicable, the guarantor (including, without limitation, that the assignment would give rise to the right to terminate by the assignee or impose additional obligations on the Counterparty), then such Counterparty must servedeliver a written objection, so that such objection is actually received no later than fiveten (510) business days after the date of service of the Assignment Notice, ondelivery of the Assignment Notice in the case of Derivative Contracts consisting of fewer than 100 transactions (and fewer than 50 transactions in respect of Fully Paid Contracts); and no later than 20 business days after the date of delivery of the Assignment Notice in the case of Derivative Contracts consisting of 100 or more transactions (or 50 or more transactions in respect of Fully Paid Contracts) (the "Objection Period"), on (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Robert J. Lemons) and Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, New York 10178 (Attn: Steven J. Reisman and L. P. Harrison 3rd); and (ii) the attorneys for the Committee, Milbank, Tweed,Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, (Attn: Wilbur Foster and Evan Fleck).  Any such objection must specify the grounds for such objection, including, without limitation, (i) stating the Counterparty's alleged Cure Amount (including, on a transaction by transaction basis, calculations and detail of specific charges and dates, and any other amounts receivable or payable supporting such alleged Cure Amount, and in any event containing no less detail than the calculation of the Cure Amount provided by the Debtors) if the Counterparty disagrees with the Debtors' proposed Cure Amount and, (ii) any other defaults or termination events the Counterparty alleges must be cured to effect assignment of the Derivative Contract (including any the Counterparty alleges cannot be cured, other than any Default relating to the commencement of a case under the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the Debtors), (iii) any allegedly valid termination of the Applicable Derivative Contract that the Counterparty asserts to have occurred (including details and documentation in support of such allegedly valid termination), and /or (iv) the identity of any assignee or, if applicable, the guarantor to whom the Counterparty objects and the grounds for such objection.

f.      To the extent that any Counterparty does not timely servedeliver an objection as set forth above, such Counterparty will be deemed (i) to have consented to such Cure Amounts, if any, and to the assumption and assignment of the Derivative Contract; (ii) to have agreed that the assignee

has provided adequate assurance of future performance within the meaning of Bankruptcy Code section 365(b)(1)(C); (iii) to have agreed that all Defaults under the Contracts arising or continuing prior to the assignment have been cured as a result or precondition of the assignment, such that neither the assignee ~~or~~nor the Debtors shall have ~~no~~any liability or obligation with respect to any Default occurring or continuing prior to the assignment, and from and after the date of the assignment the Derivative Contract shall remain in full force and effect for the benefit of the assignee and the Counterparty in accordance with its terms; (iv) to have ~~agreed that the terms of this Order shall apply to the assignment~~; and (v) to have waived  any right to terminate the Derivative Contract or designate an early termination date under the applicable Derivative Contract as a result of any Default that occurred and/or was continuing prior to the assignment ~~date; and (v) to have agreed that the terms of this Order shall apply to the assignment~~, provided, however, that nothing in these Assumption and Assignment Procedures shall affect any right of any Counterparty, regardless of whether or not an objection is timely delivered by such Counterparty, to exercise any rights described in Sections 362, 555, 556, 559, 560, 561, or 562 of the Bankruptcy Code prior to consummation of an assignment transaction.

g.   If the Debtors are unable to consensually resolve any timely ~~served~~delivered objection, the Debtors may ~~(i)~~consummate the proposed assignment pursuant to these Assumption and Assignment Procedures only if (i) they seek and obtain authorization of the Court to consummate the proposed assignment, ~~and/~~or (ii) if the dispute relates solely to the amount of the Cure Amount, at the time of the assignment, the Debtors pay to the Counterparty any undisputed portion of the proposed Cure Amount and place any disputed portion into a segregated interest-bearing account such that, upon any resolution by the Court of the Cure Amount dispute, or agreement between the Debtors and the Counterparty, the Counterparty will be entitled to payment from the segregated account of any disputed portion and interest earned thereon (at the rate provided in the applicable Derivative Contract) to which  the Court finds, or the Debtors and Counterparty agree, it is entitled.  Any effort by the Debtors to seek Court authorization shall be subject, with respect to procedural matters, to all applicable Federal Rules of Bankruptcy Procedure, Federal Rules of Evidence, and Local Bankruptcy Rules for the Southern District of New York.

h.   Unless the Debtors solicit bids from at least four (4) potential assignees and select the highest or best bid received within a reasonable time period from such assignees, the Debtors shall request consent of the Committee through its advisors to assume and assign a Derivative Contract pursuant to these Assumption and Assignment Procedures.

6

i.      If (i) no objection is timely ~~served~~delivered by a Counterparty, or a
        Counterparty affirmatively consents to the assignment (including by
        resolving its objection), and any required Committee consent (including
        through its advisors) has been received, (ii) the dispute relates solely to the
        amount of the Cure Amount, the Debtors have complied with the terms of
        subparagraph g.(ii) of these Assumption and Assignment Procedures, and
        any required Committee consent (including through its advisors) has been
        received, or (iii) the Court authorizes the assignment, the Debtors shall be
        authorized, but not required, to assume and assign any Derivative Contract
        subject to the applicable Assignment Notice, and, upon such assumption
        and assignment, the assignee and any ~~replacement credit support
        provider~~guarantor shall assume the Derivative Contract with all Defaults
        having been deemed cured or waived, and the assigning Debtor shall have
        no more claims against the Counterparty under the assigned Derivative
        Contract, provided, however, that any defenses and counterclaims of such
        Debtor relating to claims of the Counterparties that survive the assignment
        shall be preserved; and provided, further, that if a Derivative Contract is
        not assumed and assigned within 60 days (or such longer period as may be
        ordered by the Court) following the Objection Period, the Debtors'
        authority to assume and assign the applicable Derivative Contract shall
        expire, without prejudice to the Debtors' right to renew such authority by
        serving additional Assignment Notices for the same Derivative Contract(s)
        pursuant to these Assumption and Assignment Procedures.

j.      Within ~~a reasonable time period~~five (5) business days after consummation
        of an assignment transaction, the Debtors will provide notice to any
        Counterparty of the effective date of the assignment, any Cure Amount
        that has been paid, and the identity and contact information of the assignee
        and its guarantor, if any. Such notice shall be accompanied by an
        instrument signed by the assignee and pursuant to which the assignee
        assumes all obligations under the assigned Derivative Contract(s), and a
        copy of the executed guarantee, if any, of the assignee's obligations under
        the Derivative Contract. Any purported termination notice sent by a
        Counterparty of a Derivative Contract based on a Default occurring prior
        to the assignment shall be ineffective unless a termination notice is
        received by the Debtors pursuant to the terms of the Derivative Contract
        prior to the assignment's consummation. Within ten (10) business days
        after receipt of the notice of the assignment's consummation, a
        Counterparty may object by sending a written objection by the means and
        to the parties specified in subparagraph e., above, on the grounds that the
        Cure Amount that was paid was insufficient to cure any defaults that
        occurred and/or pay any amounts accruing between the date of delivery of
        the Assignment Notice and the assignment. No such objection will affect
        the validity or terms of the assignment, but the objecting Counterparty
        shall have a claim with administrative expense priority against the

assigning Debtor for any additional Cure Amount that the Debtors agree is due or the Court determines is owed to the Counterparty, and the Debtors shall pay such additional amount within five (5) business days of the Debtors' agreement that the amount is due or entry of a final order by the Court determining that the amount is due.  In addition, any rights of a Counterparty to setoff in respect of the assigned Derivative Contract shall be preserved and such rights shall attach to the proceeds of the assignment (with all rights of the Counterparty reserved to dispute any allocation of value to its Derivative Contract if such contract was assigned as part of an assignment of multiple Derivative Contracts) (provided, however, that no rights of setoff arising from agreements with any of the Debtors other than such Derivative Contracts or arising from other matters with respect to any of the Debtors may be asserted against the assignee).  Notwithstanding anything in this Order or any agreements between the applicable Debtor and its assignee to the contrary, the applicable Counterparty shall have no obligations under the assigned Derivative Contract to make any payments to the assignee of any amounts paid by the Counterparty to the Debtor pursuant to the terms of the Derivative Contract between the consummation of the assignment and the delivery of the notice of consummation to the Counterparty.

k.      In any instance where a Derivative Contract is memorialized pursuant to a master agreement, the Debtors may only assume and assign the master agreement and all ~~transactions entered into~~ under the master agreement, whether terminated or continuing, to a single assignee pursuant to these Assumption and Assignment Procedures ~~only all, but not fewer than all, of the Derivative Contract transactions entered into pursuant to the master agreement.~~  The Debtors shall not be authorized to assume a Derivative Contract pursuant to these Assumption and Assignment Procedures unless the Debtors simultaneously assign such Derivative Contract pursuant to these Assumption and Assignment Procedures.

l.      As part of and/or to facilitate any assignment transaction the Debtors may agree to make payments, including to or for the benefit of the assignee.

m.      For the avoidance of doubt, these Assumption and Assignment Procedures shall not apply to Derivatives Contracts that have been validly terminated.

n.      Nothing herein shall permit the Debtors to use identifiable collateral posted by third parties or identifiable proceeds of such collateral to pay Cure Amounts pursuant to the terms hereof.

o.      Nothing herein shall preclude any Counterparty from submitting to the Debtors a bid to become the assignee of any Debtor's rights under a Derivative Contract between such Counterparty and such Debtor.

8

; and it is further

ORDERED that the following Termination and Settlement Procedures for the

termination and settlement of claims of terminated Derivative Contracts by the Debtors are

hereby approved and established:

a.  With respect to any Derivative Contract, the Debtors may enter into and consummate a termination agreement with the Counterparty to such Derivative Contract, which may include any of the features described below.

b.  A termination agreement may resolve and fix amounts owing between the Debtors and the Counterparty (including by allowing claims against the applicable Debtors), and such amounts may incorporate setoff or recoupment solely to the extent that such setoff or recoupment is legally valid.

c.  In connection with any termination agreement, the Debtors are authorized, but not required, to provide a release to the Counterparty to the extent that the Debtors determine such a release is appropriate.

d.  A termination agreement may address and permit the collateral or margin held by the Debtors or by the Counterparties to be liquidated or returned in accordance with the Derivative Contract, an applicable Master Netting Agreement, or the termination agreement.

e.  Nothing in these Termination and Settlement Procedures shall supersede, suspend, or otherwise modify (i) the legal and contractual rights of any Counterparties to the extent such legal and contractual rights are enforceable in the Debtors' cases under the Bankruptcy Code or other applicable law; and (ii) the commencement or continuation of any civil proceeding by any party to a terminated Derivative Contract including, without limitation, any such adversary proceeding commenced or pending in this Court. In addition, nothing in these Termination and Settlement Procedures shall require a Counterparty to enter into any termination agreement.

; and it is further

ORDERED that the Debtors are authorized and have full requisite power and

authority to enter into and consummate assumptions and assignments and/or termination

9

agreements of Derivative Contracts pursuant to the Assumption and Assignment Procedures
and/or Termination and Settlement Procedures; and it is further

ORDERED that (i) this Order is and shall be effective as a determination that,
upon assignment of a Derivative Contract pursuant to the Assumption and Assignment
Procedures, all defaults, events of default, and early termination events pursuant to the applicable
Derivative Contract have been cured, that all liabilities arising therefrom have been released and
discharged (other than any valid setoff claims or other valid claims in respect of the assigned
Derivative Contract(s) against the Debtors timely asserted pursuant to subparagraph j. of the
Assumption and Assignment Procedures), and that any rights to designate an Early Termination
Date have been cured or waived and (ii) the grounds on which Counterparties may object to the
assignment of their Derivative Contracts shall be limited as described in subparagraph c. and e.
of the second decretal paragraph of this Order; and it is further

ORDERED that the terms of each assignment of a Derivative Contract pursuant to
the Assumption and Assignment Procedures and this Order shall be binding in all respects upon,
shall govern the acts of, and shall inure to the benefit of, the Debtors, their estates, and their
creditors and interest holders; the Counterparties; all future assignees; each of their respective
affiliates, successors and assigns; and any affected third parties; and it is further

ORDERED that, with respect to the Derivative Contracts assigned pursuant to the
Assumption and Assignment Procedures: (a) the assigned Derivative Contracts shall be
transferred and assigned to, and following the closing of the assignment remain in full force and
effect for the benefit of the assignees, all future permitted assignees, each of their respective
affiliates, successors, and assigns, and any affected third parties, notwithstanding any provision
in any such assigned Derivative Contract that prohibits, restricts, or conditions such assignment

or transfer by the applicable Debtor to the applicable assignee; (b) each assigned Derivative

Contract is an executory contract under section 365 of the Bankruptcy Code; (c) the Debtors may

assume each of their respective Derivative Contracts in accordance with section 365 of the

Bankruptcy Code; (d) the Debtors may assign each assigned Derivative Contract in accordance

with section 365 of the Bankruptcy Code, and any provisions in any assigned Derivative

Contract that prohibit, restrict, or condition the assignment of such assigned Derivative Contract

or allow the Counterparty to such assigned Derivative Contract to terminate, recapture, impose

any penalty, condition renewal or extension, or modify any term or condition upon the

assignment of such assigned Derivative Contract, constitute unenforceable anti-assignment

provisions which are void and of no force and effect as to such assignment by the applicable

Debtor to the applicable assignee; (e) all other requirements and conditions under section 365 of

the Bankruptcy Code for the assumption and assignment by the Debtors of each assigned

Derivative Contract have been satisfied; and (f) upon closing of any assignment transaction, in

accordance with section 365 of the Bankruptcy Code, the assignee(s) shall be fully and

irrevocably vested in all right, title, and interest of each assigned Derivative Contract. Any, shall

be liable for all continuing obligations of the assignor thereunder, and shall be bound by all of

the terms thereof (and, absent the agreement of the assignee and applicable Counterparty, all

Derivative Contracts assigned under a master agreement shall remain subject to the terms of such

master agreement, not the terms of any other existing master agreement or Derivative Contracts

between an assignee and the applicable Counterparty). Notwithstanding anything to the contrary

in the foregoing, any portions of any such assigned Derivative Contract that purport to permit the

Counterparty to terminate the Derivative Contract by reason of such assignment, or any default

or termination right arising prior to or existing at the time of the assignment, including as a result

of the commencement of a case under the Bankruptcy Code by any of the Debtors, or the

insolvency or financial condition of any of the Debtors, are void and of no force and effect, and

shall not be enforceable against the assignee(s), all future permitted assignees, each of their

respective affiliates, successors and assigns, and any affected third parties; and the

Counterparties to such Derivative Contracts shall not have the right to terminate or cease

payment, delivery, or any other performance under the Derivative Contracts, or otherwise

modify the Derivative Contracts, assert any claim, or termination payment, or impose any

penalty by reason of such assignment, or any default or termination right arising prior to or

existing at the time of the assignment, including as a result of the commencement of a case under

the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the

Debtors (provided, however, that nothing in this Order shall limit or otherwise affect any right of

a Counterparty to terminate or cease payment, delivery, or any other performance or exercise of

any other rights under its Derivative Contract if such right is not triggered by a Default by any of

the Debtors or the assignment by the applicable Debtor); and it is further

ORDERED that each Counterparty to a Derivative Contract assigned pursuant to

the Assumption and Assignment Procedures is hereby forever barred, estopped, and permanently

enjoined from asserting against the ~~Debtors~~assigning Debtor (other than any valid setoff claims

or other valid claims in respect of the assigned Derivative Contract(s) timely asserted pursuant to

subparagraph j. of the Assumption and Assignment Procedures), the assignee(s), all future

assignees, each of their respective ~~affiliates,~~ successors and assigns, or the property of any of

them, any default or termination right arising prior to or existing as of the assignment of the

Derivative Contract or, against the assignee(s), any counterclaim, defense, setoff or any other

claim asserted or assertable against the Debtors; and it is further

ORDERED that, except as provided in the Assignment Notice or this Order, upon assignment of a Derivative Contract pursuant to the Assumption and Assignment Procedures, the ~~Debtors~~assigning Debtor and ~~their estates~~its estate shall have no further liabilities or obligations under the Derivative Contract, and all holders of such claims are forever barred and estopped from asserting such claims against the ~~Debtors, each of their respective affiliates, successors and assigns, their property or their assets or estates~~assigning Debtor, its property or its assets or estate; provided, however, that for the avoidance of doubt, any assignment pursuant to the Assumption and Assignment Procedures shall not relieve any guarantor of the assigning Debtor's obligations under the assigned Derivative Contract from any liability in respect of such guaranty, but no such guarantor shall assume its guaranty obligations as part of any such assignment; and it is further

ORDERED that notwithstanding any other terms herein, nothing herein shall (a) in any way reinstate a Derivative Contract validly terminated prior to an assumption or assignment of such contract or (b) unwind such termination of a Derivative Contract;

ORDERED that nothing in the Motion or any pleadings filed in response thereto shall be deemed to be an admission of fact by any of the Debtors or by the Counterparty, for any purposes whatsoever, concerning the purported termination of any of the Derivative Contracts; and it is further

ORDERED that the Debtors are hereby authorized to execute and deliver all instruments and documents, and take such other actions, as may be necessary or appropriate to implement and effectuate assumptions and assignments and/or termination agreements pursuant to the Assumption and Assignment Procedures and/or Termination and Settlement Procedures; and it is further

13

ORDERED that the Debtors and the Committee shall engage in good faith negotiations to agree within 30 days of entry of this Order on protocols for the Committee's oversight of transactions entered into pursuant to the Assumption and Assignment Procedures and Termination and Settlement Procedures (the "Protocols"). Prior to agreement by the Debtors and the Committee on the Protocols, (i) the Debtors shall provide the Committee with notice of the Debtors' intent to enter into any transaction pursuant to the Assumption and Assignment Procedures, and such notice shall contain either the material terms of any such proposed assignment or the material terms of the parameters of the proposed bidding process and bid acceptance criteria and (ii) the Debtors shall provide the Committee with notice of the Debtors' intent to enter into any transaction pursuant to the Termination and Settlement Procedures, and such notice shall contain the material terms of any such proposed transaction. The Committee shall use commercially reasonable efforts to provide written notice to the Debtors' counsel (which may be provided by mail, electronic mail, or facsimile) as soon as is practicable of the Committee's consent or objection to any proposed transaction. Notwithstanding anything to the contrary in this Order (and without limiting any other prerequisites in this Order), the Debtors may not consummate a transaction pursuant to the Assumption and Assignment Procedures or Termination and Settlement Procedures unless either (i) the Committee (including through its advisors) consents, either pursuant to the terms of this paragraph or the Protocols, to such transaction or (ii) the Court authorizes consummation of the transaction (and the Committee shall not object to any efforts by the Debtors to seek an expedited hearing by the Court of a request for such authorization). If the Debtors and the Committee have not agreed on the Protocols within 30 days of entry of this Order, either the Debtors or the Committee may seek at any time after notice and a hearing (with at least 10 days' notice of such hearing) the Court's approval of revised

terms regarding obtaining Committee consent to proposed transactions under the Assumption

and Assignment Procedures and Termination and Settlement Procedures.  Until otherwise

ordered by the Court, the foregoing requirements in this paragraph shall remain in effect; and it

is further

ORDERED that the terms of this Order shall not be applicable to any Derivative

Contracts in respect of which any of the following parties filed an objection to the Motion:

Metavante Corporation; Portfolio Green German; Lincore Limited, E-Capital Profits Limited,

and Cheung Kong Bond Finance Limited; the City and County of Denver, Department of

Revenue; the Tobacco Settlement Financing Corporation; First Choice Power, L.P.; Reliant

Energy Power Supply, LLC; EnergyCo, LLC and EnergyCo Marketing and Trading; Wells

Fargo, N.A.; JA Solar Holdings Co., Ltd.; West Corporation; Danske Bank A/S, London Branch;

BRM Group, Ltd.; SunAmerica Life Insurance Company, AIG CDS, Inc., Lexington Insurance

Company; Carlton Communications Limited; HarbourView CDO III; Norton Gold Fields

Limited; Gaston Christian School, Inc.; Bank of America, National Association, Successor by

Merger with LaSalle Bank National Association, in its capacity as Trustee under certain Trust

Agreements; New Jersey Housing and Mortgage Finance Agency; The Walt Disney Company;

Deutsche Bank Trust Company Americas and Deutsche Bank National Trust Company; Bank of

America, National Association Successor by Merger with LaSalle Bank National Association, in

its Capacity as Trustee under that certain Indenture Dated as of August 16, 2007 among Ceago

ABS CDO 2007-1, Ltd., as Issuer, Ceago ABS CDO 2007-1, LLC, as Co-Issuer and LaSalle

Bank National Association, as Trustee; QVT Financial LP; Bank of America, National

Association Successor by Merger with LaSalle Bank National Association, in its Capacity as

Trustee under that Certain Indenture Dated as of November 29, 2005 among Verde CDO Ltd., as

Issuer, Verde CDO, LLC, as Co-Issuer and LaSalle Bank National Association, as Trustee;

Standard Chartered Bank; The Bank of New York Mellon, The Bank of New York Mellon Trust

Company, N.A. and BNY Corporate Trustee Services Limited; U.S. Bank National Association;

Lahde Capital Management Inc.; Instituto de Credito Oficial; Northcrest, Inc.; Citigroup Inc. and

all of its affiliates, including Citibank, N.A.; BRE Bank SA; FirstBank of Puerto Rico; The

Toronto-Dominion Bank; Societe Generale, Canadian Imperial Bank Commerce, Calyon, Dexia

Bank Internationale a Luxembourg SA, Dexia Credit Local, Dexia Kommunalbank Deutschland

AG, Dexia Banque Belgique SA and Banif - Banco de Investimento, S.A.; National Australia

Bank Limited; and FPL Energy Power Marketing, Inc. and Florida Power & Light Company (the

"Remaining Objectors"); and it is further

       ORDERED that the hearing on the Motion regarding the Derivative Contracts in

respect of which the Remaining Objectors filed an objection to the Motion is hereby adjourned to

January 14, 2008 at 10:00 a.m. or such later date as may be either indicated in a notice filed by

the Debtors with the Court or ordered by the Court; and it is further

       ORDERED that entry of this Order is without prejudice to the rights of the

Debtors, including, but not limited to, the right to seek further, other, or different relief regarding

the Derivative Contracts pursuant to, among other things, section 365 of the Bankruptcy Code;

and it is further

       ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion and the requirements of Bankruptcy Rules 6006(a) and 9014

are satisfied; and it is further

       ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order and/or

the terms of any assumption and assignment and/or termination agreement consummated

pursuant to the terms of the Assumption and Assignment Procedures and/or Termination and

Settlement Procedures; provided, however, that this retention of jurisdiction shall not affect the

right of any party to a jury trial or confer jurisdiction on this Court if it does not otherwise exist.

Dated: _____, 2008
      New York, New York

                          _____
                          UNITED STATES BANKRUPTCY JUDGE