O'MELVENY & MYERS LLP
Gerald C. Bender
Josh Weisser
Times Square Tower
7 Times Square
New York, New York 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

Attorneys for Arcot Systems, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                            :
In re                                                       :   Chapter 11
                                                            :
LEHMAN BROTHERS HOLDINGS,                                   :   Case No. 08-13555 (JMP)
INC., et al.,                                               :
             Debtors.                                       :   Jointly Administered
                                                            :
------------------------------------------------------------x

## OBJECTION OF ARCOT SYSTEMS, INC. TO DEBTORS' MOTION TO (A) SCHEDULE A SALE HEARING; (B) ESTABLISH SALES PROCEDURES; (C) APPROVE A BREAK-UP FEE; AND (D) APPROVE THE SALE OF THE PURCHASED ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS RELATING TO THE PURCHASED ASSETS

Arcot Systems, Inc. ("Arcot"), by its undersigned counsel O'Melveny & Myers LLP, hereby submits this Objection (the "Objection") to the Debtors' Motion to (A) Schedule a Sale Hearing; (B) Establish Sales Procedures; (C) Approve a Break-Up Fee; and (D) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Relating to the Purchased Assets (the "Sale Motion"). In support of the Objection, Arcot respectfully states as follows:

### INTRODUCTION

1.  Arcot produces business software and provides services that protect and verify

digital identities to prevent online fraud and identity theft. As of the Petition Date (as defined below), Arcot and Lehman Brothers Holdings, Inc., the debtor in the above-captioned bankruptcy case (the "Debtor"), had entered into a master agreement containing those certain General Terms and Conditions: IT Products and Services dated as of December 20, 2007 (the "Master Agreement"), as supplemented by that certain Product License Supplement dated as of December 20, 2007 (the "Product License Supplement") and that certain Purchase Order dated as of August 6, 2008 (the "Purchase Order" and together with the Master Agreement and the Product License Supplement, the "License Agreement"), a copy of which is attached hereto as Exhibit A, pursuant to which Arcot contracted to grant to the Debtor a non-exclusive perpetual license to a software product called "RiskFort" and entered into a three-year agreement to provide related services to the Debtor.

2. Under the terms of the License Agreement, the Debtor was obligated to (i) pay a one-time perpetual license fee and (ii) compensate Arcot for all services up-front on a yearly basis upon the Debtor's acceptance of the RiskFort software product. Pursuant to these terms, the Debtor incurred costs of $100,000 for a software licensing fee and $18,000 for services immediately upon issuance of the Purchase Order.

3. Arcot sent the Debtor an invoice for the software licensing fee and services, attached hereto as Exhibit B, for payment in the amount of $118,000 on September 9, 2008. The Debtor never paid any amount in respect of this invoice. The unpaid invoice in the amount of $118,000 (the "Correct Cure Amount") represents amounts due under the License Agreement.

4. On September 15, 2008 (the "Petition Date"), the Debtor commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor

2

continues to operate its business and manage its properties as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5. On or about September 17, 2008, the Debtor and certain of its affiliated entities filed the Sale Motion, which contemplates the sale of certain assets of the Debtor to Barclays Capital, Inc. ("Barclays").

6. On or about September 20, 2008, the Bankruptcy Court entered an Order under Sections 105(a), 363 and 365 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 6004 and 6006 Authorizing and Approving (A) The Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases (the "Sale Order"), approving the Sale Motion. The Sale Order provides that the counterparties to the Closing Date Contracts (as defined in the Sale Order) had until October 3, 2008 (the "Objection Deadline"), to file an objection to the Cure Amounts (as defined in the Sale Order).

7. On or about September 20, 2008, Arcot received a Notice of Assumption and Assignment of, and Amounts Necessary to Cure Defaults under, Contracts and Leases to be Assumed and Assigned to Barclays Capital, Inc. (the "Assumption Notice"). The Assumption Notice was a generic notice, not directed at any particular party and did not contain any list of contracts proposed to be assumed and assigned but rather directed the recipient to visit the Epiq Systems website for the list of contracts to be assumed and assigned to Barclays (the "Assumption List").

8. The Assumption List provides an incorrect $0.00 Cure Amount (the "Proposed Cure Amount") with respect to the License Agreement. Arcot, however, did not discover the mistake until after the Objection Deadline. Upon receiving the Assumption Notice, Arcot

3

immediately visited the Epiq Systems website, but was unable to determine the Proposed Cure Amount. In late September, Arcot contacted a procurement officer of the Debtor, who is now an employee of Barclays, to discuss the License Agreement's assumption and assignment. At no time did that procurement officer notify Arcot regarding the $0.00 Proposed Cure Amount. Yet, as noted above, the Proposed Cure Amount is incorrect; as of the Objection Deadline, the Debtor owed Arcot a Correct Cure Amount of not less than $118,000. In addition to listing an incorrect Proposed Cure Amount, the Assumption List then identified and still identifies the License Agreement on two separate lines even though the License Agreement constitutes only one agreement between Arcot and the Debtor.

## JURISDISCTION AND VENUE

9. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The statutory predicates for the relief requested herein are Sections 363(e), 503(b)(1)(A), 503(b)(9), 507(a)(2), and 507(b) of the Bankruptcy Code.

## RELIEF REQUESTED

11. By this Objection, Arcot requests entry of an order: (i) sustaining Arcot's objection to the Sale Motion; (ii) holding that the License Agreement was not assumable absent Arcot's consent; (iii) if the License Agreement was assumable, directing Barclays to pay the Correct Cure Amount; and (iv) granting such other relief as this Court deems necessary and appropriate.

## BASIS FOR RELIEF

A. **The Debtor Is Unable To Assume the License Agreement Absent Arcot's Consent**

12. Special rules apply to the assumption and assignment of executory contracts for

4

the license of a copyright or patent. Section 365(c)(1) provides that a debtor-in-possession may not assume or assign any executory contract if (i) "applicable law excuses a party, other than the debtor, to such contract . . . from accepting performance from or rendering performance to an entity other than the . . . debtor in possession" and (ii) the non-debtor party to the contract does not consent to the assumption or assignment. *Id.* § 365(c)(1). In other words, under federal law, licenses of copyrights or patents are considered personal and assignable only with the consent of the licensor. *In re Patient Educ. Media, Inc.*, 210 B.R. 237, 241–42 (Bankr. S.D.N.Y. 1997) (noting the similar treatment of patents and copyrights). This is particularly true with respect to a non-exclusive license because the grantor of a non-exclusive license "does not transfer any rights of ownership; ownership remains in the licensor". *Patient Educ. Media,* 210 B.R. at 240. Accordingly, bankruptcy courts have held that licenses of copyrights are not assignable, pursuant to Section 365(c)(1), without the consent of the non-debtor licensor. *See RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.),* 361 F.3d 257, 266 (4th Cir. 2004) (declaring copyright licenses as personal and unassignable without consent); *In re Golden Books Family Entm't, Inc.,* 269 B.R. 300, 307–10 (Bankr. D. Del. 2001) (reaching the same result); *Patient Educ. Media,* 210 B.R. at 241 (reaching the same result); *see also Perlman v. Catapult Entm't., Inc. (In re Catapult Entm't, Inc.),* 165 F.3d 747, 749 (9th Cir.1999) (reaching the same result with respect to patents).

13. The License Agreement here falls within the scope of Section 365(c)(1); the Debtor was granted, under the License Agreement, a non-exclusive license to use Arcot's copyrights embodied in the software sold to the Debtor. As a result, the Debtor cannot assume and assign the License Agreement to Barclays without the consent of Arcot. Arcot has not given, and will not give, its consent unless the Correct Cure Amount is paid in full by Barclays

or the Debtor. To hold otherwise would deprive Arcot, as a grantor of a non-exclusive license, the rights entailed in its retained ownership of the copyrights under the License Agreement.

**B.   The Debtor Must Ensure that All Breaches under the License Agreement Are Cured before the License Agreement Can Be Assigned to Barclays**

   **1.   The Proposed Cure Amount Is Incorrect, and Barclays Must Pay the Correct Cure Amount.**

14.   Assuming the Debtor was able to assume and assign the License Agreement, in order for it to do so pursuant to the Sale Order and Section 365 of the Bankruptcy Code, Barclays must pay the Correct Cure Amount. Once the debtor has defaulted under an agreement which is assumable under Section 365(a) of the Bankruptcy Code, the debtor may not assume such contract unless, at the time of assumption, (i) the default is cured or the debtor provides adequate assurance that it will be promptly cured, (ii) the debtor compensates or provides adequate assurance of prompt compensation for actual pecuniary loss resulting from such default and (iii) the debtor provides adequate assurance of future performance under such contract. 11 U.S.C. § 365(b)(1).

15.   Pursuant to the terms of the License Agreement, Arcot is owed a cure amount of not less than the Correct Cure Amount, or $118,000. It is hard to understand how this fact could have escaped the Debtor. The Debtor was in receipt of the Purchase Order and the License Agreement and should have known that no payment was ever made to Arcot as consideration for the Debtor's use of RiskFort. Simply, at the Objection Deadline, the Debtor had the ability to calculate the Correct Cure Amount.

16.   Provide that the License Agreement is assumable, under Section 365(b), the Debtor is obligated to pay the Correct Cure Amount or provide adequate assurance that it will be promptly paid. Under the Sale Order, Barclays has agreed to pay the amounts needed to cure all assumed contracts. As of the date hereof, however, neither the Debtor nor Barclays has paid

6

Arcot the Correct Cure Amount. Accordingly, Arcot hereby objects to the assumption and assignment of the License Agreement to Barclays absent payment of the Correct Cure Amount.

2. **The Debtor Violated the Bankruptcy Code, the Bankruptcy Rules and Arcot's Due Process Rights by Failing to Provide Adequate Notice to Arcot of the Assumption and Assignment of the License Agreement to Barclays.**

17. The Second Circuit requires that a debtor-in-possession seeking to assume and assign executory contracts under Section 365 of the Bankruptcy Code provide counterparties with not only adequate notice regarding the relevant executory contracts, but also specific notice regarding the proposed cure amounts with respect to such executory contracts. Failure to provide such requisite notice may constitute a violation of the Bankruptcy Code, the Bankruptcy Rules and that counterparty's constitutional due process rights. Accordingly, the Assumption Notice improperly required Arcot to conduct its own investigation regarding (i) the Debtor's intention to assume and assign the License Agreement and (ii) the Proposed Cure Amount.

18. Notice to creditors and parties in interest "is the cornerstone underpinning Bankruptcy Code procedure," *In re Savage Indus., Inc.*, 43 F.3d 714, 720 (1st Cir. 1994), as "[i]t is beyond cavil that the *due process clause of the Fifth Amendment to the United States Constitution* applies to bankruptcy proceedings." *Marcus Hook Dev. Corp., Inc. v. T.A. Title Ins. Co. (In re Marcus Hook Dev. Corp., Inc.)*, 143 B.R. 648, 660 (Bankr. W.D. Pa. 1992). Grounded in "fundamental notions of procedural due process," the Bankruptcy Code often dictates that relief may be granted only "after notice and a hearing," which "means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." *In re Savage*, 43 F.3d at 721.

19. Notice is of particular importance where a debtor or trustee seeks to assume and assign an executory contract and determine the cure amounts applicable under Sections 365(a) and (b) of the Bankruptcy Code "since it is possible that the contract is not beneficial to the non-

7

debtor, and the non-debtor lacks any decision-making authority in the assumption process." *In re Nat'l Gypsum Co.*, 208 F.3d 498 (5th Cir. 2000); *see Elliott v. Four Seasons Props. (In re Frontier Props.)*, 979 F.2d 1358, 1365 ("courts require strict adherence to" notice requirements out of "concern with protecting unknowing [contractual partners] from the consequences of an assumption of which they had no notice and which [they] had no opportunity to contest") (alterations in original).

20. The analysis of whether proper notice has been afforded to a counterparty to an executory contract to be assumed and assigned pursuant to Section 365 takes place on two levels -- statutory and constitutional. *Cf. Citicorp Mortgage, Inc. v. Merritt (In re Ex-Cel Concrete Co., Inc.)*, 178 B.R. 198, 202 (B.A.P. 9th Cir. 1995) (applying a similar analysis in the context of Section 363 sales). The statutory analysis begins with Bankruptcy Rule 6006, which provides (i) that notice of the proposed assumption and assignment of an executory contract "shall be given to the other party to the contract" and (ii) such matters shall be treated as a contested matter under Bankruptcy Rule 9014. Fed. R. Bankr. P. 6006(a), (c). Bankruptcy Rule 9014, in turn, provides that "*reasonable* notice and opportunity for hearing *shall be afforded* the party against whom relief is sought." *Id.* 9014(a) (emphasis added).

21. Together, Bankruptcy Rules 6006 and 9014 are designed to give those whose interests may be affected notice and an opportunity to object to accord them due process, *see, e.g., In re Poly-Cel Liquidation, Inc.*, 2006 Bankr. LEXIS 4545, at *25, n.6 (Bankr. D.N.J. April 18, 2006), and in conjunction with the Bankruptcy Code's "notice and a hearing" requirement "have been deliberately crafted" to provide assurance that a party holding an interest will receive timely notice of the trustee's intention to affect such party's interest. *See, e.g., Ex-Cel Concrete*, 178 B.R. 198. The constitutional sufficiency of notice analysis dovetails with these

8

protections of the Bankruptcy Code and Bankruptcy Rules, as the *due process clause of the Fifth Amendment* requires notice to be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652 (1950). Accordingly, counterparties are entitled to "adequate notice" of the dates by which they must assert cure claims "and are not themselves required to make an independent inquiry to ascertain their existence." *ReGen Capital I, Inc. v. Halperin (In re U.S. Wireless Data, Inc.)*, __ F.3d __, 2008 WL 4724366, at *6 (2d Cir. Oct. 29, 2008).

22.     Here, the Assumption Notice did not satisfy notice standards under the Bankruptcy Code, the Bankruptcy Rules or general due process requirements. The form of Assumption Notice was inadequate and not reasonably calculated, under all circumstances, to apprise Arcot of the pendency of an action that could deprive Arcot of its ownership interests. Despite the Debtor's certain knowledge of the License Agreement and Arcot's rights thereunder, the Assumption Notice charged Arcot with conducting an investigation to determine the relevant Objection Deadline and the Correct Cure Amount. Placing such a burden on Arcot ties in with the Debtor's incentive to make the objection process as difficult as possible for counterparties to executory contracts in order to benefit from the assumption of contracts at little or no cost -- except to the non-debtor counterparties.

23.     The Debtor received an invoice from Arcot in the two-weeks immediately preceding the Petition Date, issued the Purchase Order within a month and a half of the Petition Date and was certainly aware that it had not paid the license fee or fees for services as required under the License Agreement. As a result, it is hard to understand how the Debtor could assert that the appropriate Cure Amount under the License Agreement was actually $0 as of the

9

Objection Deadline. The Debtor should not be allowed to use the process of assuming and assigning contracts under Section 365 to take advantage of its creditors and pay them less than they are due.

### 3. Even if Arcot Received Adequate Notice of the Assumption and Assignment of the License Agreement to Barclays, its Objection thereto after the Objection Date Should Be Excusable.

24.  Bankruptcy Rule 9006(b)(1)(2) provides for relief against certain time bars "where the failure to act was the result of excusable neglect." *See In re Interco., Inc.*, 186 F.3d 1032, 1034 (8th Cir. 1999). The phrase "excusable neglect" is given its commonly accepted meaning and is not limited strictly to omissions caused by circumstances beyond the control of the moving party. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 391–92 (1993). "The determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the moving party, and whether the moving party acted in good faith. *See id.* at 395. Excusable neglect has been deemed to exist where notice of a bar date was given peculiar and inconspicuous placement, *see Pioneer*, 507 U.S. at 398, or was abstract and ambiguous, *see In re Herd*, 840 F.2d 757, 759–60 (10th 1988).

25.  Even if Arcot is deemed to have received notice sufficient to satisfy the standards of the Bankruptcy Code, Bankruptcy Rules and due process standards, its failure to file this Objection by the Objection Deadline is excusable. First, the danger of prejudice to the Debtor here is minimal. It is Barclays and not the Debtor that would be required to pay the Correct Cure Amount. Nor would Barclays be prejudiced; Barclays had sixty (60) days under the Sale Motion and Sale Order to designate contracts to assume. That process is wrapping up

10

only now. Moreover, the counterparties to Closing Date Contracts (as defined in the Sale Order), among which the License Agreement is included, had only a matter of days to object to the assumption and assignment of their contracts and the designated Cure Amounts. No wonder so many objections were filed after the Objection Deadline. If prejudice exists, it has been suffered by Arcot, who has been injured as a result of the speed of this bankruptcy case.

26. Second, the reason for the delay was not in the control of Arcot and was in fact a result of actions of the Debtor. The Epiq Systems website, to which the Assumption Notice directed all counterparties to executory contracts to be assumed and assigned to Barclays, is a complicated morass of information. In its state as of the date hereof, the website contains much information in addition to lists of assigned executory contracts and Cure Amounts. The information regarding such executory contracts appears near the bottom of a long home page, and there are many different deadlines set for objecting to the assumption and assignment of a variety of different types of contracts, among other things. It is easy to see how the sought after information would not be readily identified.

27. Third, Arcot has acted in good faith. Upon learning that the License Agreement was proposed to be assigned to Barclays, Arcot contacted a procurement officer then with the Debtor and now with Barclays, in late September, to discuss the process. That procurement officer, however, made no effort to notify or warn Arcot regarding the $0.00 Proposed Cure Amount. Further, promptly after Arcot determined that the License Agreement was included on the Assumption List with the incorrect cure amount set forth, Arcot filed this Objection. If anything, the facts here suggest that the Debtor failed to act diligently, scheduling a $0.00 Proposed Cure Amount despite actual knowledge to the contrary, creating confusion with an impossibly ambiguous noticing system and perhaps taking advantage of an unusually expedited

11

process to deny creditors, including Arcot, of their rights. The Debtor should not be permitted to abuse the assumption and assignment process in this manner.

## **CONCLUSION**

28. As a threshold issue, the Debtor does not have the right to assume the License Agreement, a non-exclusive license to use Arcot's copyrighted material, without Arcot's consent. Moreover, even if this Court were to rule that the Debtor had the right to assume and assign, the Debtor or Barclays must still pay the Correct Cure Amount for assumption to take place. The Debtor failed to provide Arcot with reasonable notice regarding the incorrect Proposed Cure Amount. It should not be allowed to profit from that failure.

29. Notwithstanding anything herein to the contrary, Arcot does not, by filing this Objection, waive any other claim or interest Arcot has, or any other claim or interest that may hereafter arise, under the terms of the License Agreement or by operation of law. Arcot specifically reserves the right to dispute the scope of the License Agreement. Arcot further reserves the right to amend, modify or supplement this Objection, including without limitation, with additional amounts due under the License Agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, Arcot respectfully requests this Bankruptcy Court (i) require Barclays to pay Arcot the Correct Cure Amount in order for the Debtor to assume and assign the License Agreement to Barclays and (ii) grant such other and further relief as the Bankruptcy Court deems just and proper.

Dated:  December 16, 2008
        New York, New York

Respectfully submitted,

/s/ Gerald C. Bender

Gerald C. Bender
Josh Weisser
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

Attorneys for Arcot Systems, Inc.

NY1:1764401.4