ISRAEL GOLDOWITZ
Chief Counsel
KAREN L. MORRIS
Deputy Chief Counsel
STEPHANIE THOMAS
Assistant Chief Counsel
SARA B. EAGLE
COLIN B. ALBAUGH
Attorneys
PENSION BENEFIT GUARANTY
 CORPORATION
Office of the Chief Counsel
1200 K Street, N.W.
Washington, D.C.  20005-4026
Ph: (202) 326-4020, extension 3176
Fax: (202) 326-4112

Hearing Date and Time: December 22 at 10:00 a.m. (EST)
Objection Date and Time: December 17 at 4:00 p.m. (EST)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) |
| | Jointly Administered |
| Debtors. | |

**OBJECTION OF THE PENSION BENEFIT GUARANTY CORPORATION
TO DEBTORS' MOTION TO (A) ESTABLISH SALES PROCEDURES; (B) APPROVE
A SELLER TERMINATION FEE; AND (C) APPROVE THE SALE OF THE
PURCHASED ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF
<u>CONTRACTS RELATING TO THE PURCHASED ASSETS</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Pension Benefit Guaranty Corporation ("PBGC"), a United States government agency, files this objection to Debtors' October 6, 2008 Motion to (A) Establish Sales Procedures; (B) Approve a Seller Termination Fee; and (C) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Related to the Purchased Assets ("Motion").

The Debtors' motion requests authorization for Lehman Brothers Holdings Inc. ("LBHI") to enter into an agreement to sell or transfer the equity in the businesses comprising its Investment Management Division ("IMD").[1]  Currently, LBHI seeks approval of a unit purchase agreement with NBSH Acquisition, LLC ("NBSH").  PBGC objects to the sale to the extent the Debtors 1) seek authority to transfer any of LBHI's controlled group members free and clear of pension plan related liabilities under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended*, 29 U.S.C. §§ 1301-1461; and 2) seek the immediate effectiveness of a sale order.

## BACKGROUND

1.      PBGC is the United States government agency created to administer the defined benefit pension plan termination insurance program under Title IV of ERISA.  The termination insurance program covers more than 33.8 million workers participating in over 27,000 private sector defined benefit pension plans.  PBGC Annual Management Report for 2008, p.3.

2.      PBGC invariably is appointed statutory trustee of terminated, underfunded pension plans.  The agency is responsible for paying a terminated plan's benefits, subject to statutory limitations.  *See* 29 U.S.C. §§ 1322, 1342, 1361.

3.      The sponsor of a PBGC-covered pension plan that is terminated and every other member of that sponsor's controlled group, as defined in 29 U.S.C. § 1301(a)(14), are jointly and severally liable for the pension plan's unfunded benefit liabilities ("UBL"), the total shortfall

---

[1]      Debtors' motion and the proposed order filed therewith address the terms of an asset purchase agreement with a stalking horse bidder.  Although NBSH has been chosen as the winning bidder for IMD, as of the deadline for this objection, no amended motion or order has been filed addressing the NBSH sale.  Accordingly, PBGC has responded to relief requested in the motion and proposed order currently before the Court.

08-13555-mg    Doc 2283    Filed 12/17/08    Entered 12/17/08 15:49:44    Main Document
                                            Pg 3 of 12

between the plan's assets and promised benefits as of the plan's termination date. *See* 29 U.S.C. §§ 1301(a)(18), 1362(b). Regardless of whether a plan terminates, a sponsor and its controlled group are also jointly and severally liable for minimum funding contributions owed to the plan and insurance premiums owed to PBGC. *See* 26 U.S.C. § 412(c)(11); 29 U.S.C. §§ 1082(c)(11), 1307. For pension plans terminating in accordance with 29 U.S.C. §§ 1342 or 1341(c)(2)(B), PBGC also has a joint and several claim against the sponsor and each member of its controlled group for a termination premium. 29 U.S.C. §§ 1306(b)(7), 1307.

## FACTS

The Pension Plan

4.  LBHI sponsors and administers the Lehman Brothers Holdings Inc. Retirement Plan ("Pension Plan"), a defined benefit plan covered by Title IV of ERISA. Under federal law, LBHI and all members of its controlled group are jointly and severally responsible for the Pension Plan.

5.  On December 10, 2008, PBGC issued a Notice of Determination ("Notice") that the Pension Plan should be terminated. The Notice states, *inter alia*, that PBGC has determined, pursuant to 29 U.S.C. § 1342(a)(2) and (4), that the Pension Plan "will be unable to pay benefits when due and that the possible long-run loss of the PBGC with respect to the [Pension] Plan may reasonably be expected to increase unreasonably if the Plan is not terminated."

6.  On December 12, 2008, PBGC filed a complaint in the United States District Court for the Southern District of New York seeking termination of the Pension Plan with a date of plan termination ("DOPT") of December 12, 2008.

7.  PBGC estimates that, as of December 11, 2008, the Pension Plan's UBL was

3

$42,500,000. Upon termination of the Pension Plan, LBHI and each member of its controlled group, including nondebtor subsidiaries, will be jointly and severally liable for the UBL, as well as any contributions owed to the Plan, and premiums owed to PBGC. LBHI and each member of its controlled group will also be jointly and severally liable for a termination premiums estimated to be $72,367,500.

IMD Sale

8. On October 6, 2008, Debtors filed the Motion, seeking Court approval of the IMD sale procedures, seller termination fee and reimbursement amount, and sale (the "Motion").

9. On October 22, 2008, the Court approved bidding procedures for an auction of IMD.

10. An auction was held on December 3, 2008, and NBSH was determined to be the winning bidder.

11. On December 9, 2008, the Debtors filed a Notice of Filing of Successful Bid in Connection with Sale of Lehman Brothers Inc.'s Investment Management Division, which included the Unit Purchase Agreement by and between Lehman Brothers Holdings Inc. and NBSH Acquisition, LLC (the "UPA").

12. The UPA provides that LBHI will contribute certain assets comprising the IMD business to NBSH. In return, NBSH will issue shares of preferred and common stock to LBHI.

13. The contribution by LBHI under the UPA includes the equity interests held by various LBHI subsidiaries in numerous other Lehman subsidiaries (the "Acquired Subsidiaries).[2] The majority, if not all, of the equity interests being transferred are in LBHI subsidiaries that are

---

[2] The term Acquired Subsidiary has the definition ascribed to it in the UPA.

not debtors in bankruptcy.

14. Section 5.3 of the UPA states that LBHI owns 100% of the equity of the Acquired Subsidiaries. Therefore, most, if not all, of the Acquired Subsidiaries are members of LBHI's controlled group.

15. The UPA appears to acknowledge the Title IV joint and several liabilities of the Acquired Subsidiaries by providing LBHI's indemnification of these liabilities. UPA § 9.2, p.57.

16. The UPA expressly defines as Excluded Liabilities, "all Liabilities with respect to any Benefit Plan," which includes the Pension Plan. UPA Definition Excluded Liabilities, ¶( l), p.9.

17. Section 2.1 of the UPA further provides that "LBHI shall, or shall cause its applicable Subsidiaries to, use commercially reasonable efforts to complete such transfers of assets and Liabilities necessary such that upon consummation of the Contribution, no member of the Company Group [which includes those entities whose equity interests are being transferred] is transferred any excluded asset or assumes any Excluded Liability."

18. The motion also requests entry of an order: 1) selling the equity interests in the Acquired Subsidiaries free and clear of interests of any kind pursuant to 11 U.S.C. § 363(f)(1)-(5);[3] 2) providing that the transfer of the Purchased Assets (which include the equity interest in the

---

[3] Proposed Order ¶¶ L, N, and 4 (finding and granting the transfer of Purchased Assets which includes the equity interests in the Acquired Subsidiaries pursuant to the UPA, page 16).

5

Acquired Subsidiaries) shall not result in the Acquired Subsidiaries having any successor liability for the Excluded Liabilities;[4] and 3) making the sale order immediately effective and enforceable.[5]

## ARGUMENT

A.  <u>Inability to Sell Assets Free and Clear</u>

PBGC objects to the sale to the extent that the UPA seeks to transfer any LBHI nondebtor controlled group members or their assets to NBSH free and clear of statutorily mandated liabilities arising against those entities under Title IV of ERISA.

PBGC has issued the Notice determining that the Pension Plan should be terminated with a DOPT of December 12, 2008, and PBGC has initiated court action to terminate the Pension Plan. LBHI and every member of its controlled group, as of the DOPT, are jointly and severally liable for the UBL, unpaid funding contributions owed the Plan, and any premiums owed PBGC, including termination premiums, pursuant to Title IV of ERISA. *See* 29 U.S.C. §§ 1301, 1307, 1362.

It is a fundamental principle of law that "[w]hile a sale [or transfer] of stock changes the makeup of equity owners of a corporation, it does not change the legal existence of the corporation, and therefore, **a sale of stock cannot extinguish the obligations of the corporation.**" I Carol A. Jones, <u>Fletcher Cyclopedia of the Law of Corporations</u> § 29, at 70 (rev. ed. 2006) (emphasis added). In fact, LBHI appears to recognize this tenet of law by providing for the Acquired Subsidiaries' indemnification of any joint and several liability under Title IV that they may have as LBHI controlled group members.

---

[4]  Proposed Order ¶ 9, p.17.

[5]  Debtors' Mot. ¶ 38, p. 23; Sale Order ¶ L, p. 9.

Nonetheless, the Debtors make several efforts to dispose of the pension liabilities of the Acquired Subsidiaries. First, the UPA provides that LBHI and its subsidiaries will use reasonable commercial efforts to complete the transfers of assets and liabilities to NBSH in a manner so that NBSH and its subsidiaries are not transferred any Excluded Liabilities, which include Pension Plan liabilities.[6] To the extent that the Purchase Agreement attempts to contract around any controlled group member's liability under Title IV of ERISA, it is unenforceable. It is well settled that "[t]he power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in the Constitution, treaties, federal statutes, and applicable legal precedents." *Hurd v. Hodge*, 334 U.S. 24, 34-35 (1948); *see also W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 766 (1983); *Stamford Bd. of Educ. v. Stamford Educ. Ass'n.*, 697 F.2d 70, 73 (2d Cir. 1982).

Second, LBHI's Sale Order provides that the transfer of Purchased Assets (which includes the equity interest in the Acquired Subsidiaries) will not result in the Acquired Subsidiaries having any liability for the Excluded Liabilities, which include pension liabilities. No Bankruptcy Code section or authority allows this extreme deviation from the fundamental corporate principle that a corporation or limited liability company cannot extinguish its liabilities via an equity sale. Moreover, in the context of an asset sale, Bankruptcy Code section 363(f) applies only to the sale of assets of the estate. *See* 11 U.S.C. § 363(b), (c), and (f). LBHI's nondebtor subsidiaries and their assets are not assets of a debtor's estate. *Feldman v. Trustees of Beck Indus., Inc.* (*In re Beck Indus., Inc.*), 479 F.2d 410, 415 (2d Cir. 1973); *see also In re Signal Hill-Liberia Ave. Ltd. P'ship*,

---

[6]  UPA § 2.1; UPA Definition of Excluded Liabilities, p. 9.

189 B.R. 648, 652 (Bankr. E.D. Va. 1995) ("[P]artnership property does not become property of an individual partner's bankruptcy estate"). LBHI acknowledges as much in its Motion by stating that the assets will be sold free and clear only <u>to the extent that they are assets of the Debtors</u>.[7] However, despite LBHI's acknowledgment and the Code's restrictions, LBHI's proposed Sale Order appears to seek the transfer of the Acquired Subsidiaries free and clear of their ERISA liabilities.

While LBHI can seek this Court's approval to sell its **own** assets free of liens or interests; it cannot transfer the Acquired Subsidiaries– nondebtor entities–and their assets free and clear of their **own** underlying liabilities. As members of LBHI's controlled group, the Acquired Subsidiaries have statutory joint and several liability for any Pension Plan termination liabilities that arise while they are members of the controlled group. Thus, to the extent that the Debtors intend to rely on § 363(f) to strip away the subsidiaries' liabilities to PBGC, that effort is unavailing.

Even if § 363(f) could be applied to strip away the liabilities of nondebtor corporations, the Debtors would be obligated to provide adequate protection to PBGC under § 363(e). It has failed to do so in two ways. First, the Proposed Order purports to provide adequate protection by allowing Interests to attach to proceeds of the sale. But there are no sale proceeds in this transaction. Therefore, those "proceeds" are hardly adequate to protect any creditor's Interests. Secondly, § 363 provides for the sale of property free and clear of interests under subsection (f) and adequate protection of "such interest" in subsection (e). But the Debtors attempt to define "Interest" differently for the purposes of those two sections. While the Interests that the Debtors

---

[7] Debtors' Mot. p. 23.

seek to strip away are defined very broadly,[8] to include claims, *inter alia*, the Interests that it offers adequate protection for are only those that are "perfected."[9] Since claims and similar liabilities cannot be "perfected," those are excluded from adequate protection. But the Debtors cannot have it both ways. If the liabilities to PBGC are "Interests" subject to § 363(f), they are entitled to protection under § 363(e).

Similarly, the Court cannot extinguish any statutory liabilities of the Acquired Subsidiaries by order that limits successor liability of the Acquired Subsidiaries. Again the transfer of equity does not extinguish the underlying liabilities of an entity. Moreover, the joint and several liabilities relating to the Pension Plan are not successor liabilities, which attach to an entity which acquires assets but is found to be a mere continuation of the prior entity. *See New York v. Nat'l Serv. Indus.*, 460 F.2d 201, 209 (2d Cir. 2006) (setting forth the circumstances in which a purchaser of assets can be liable for the debts of the seller). Rather, they are statutory liabilities which belong to the Acquired Subsidiaries as a matter of law irrespective of their acquisition by a new equity holder. 29 U.S.C. § 1362(b).

B. Relief From Stay Not Appropriate

Additionally, the Debtors request relief from the ten-day stay imposed by Fed. R. Bank. P. 6004(g), citing "the fragility of the Purchased Assets and need to stabilize the IMD business." Debtors' Mot. ¶ 51. Bankruptcy Rule 6004(g), providing a ten-day stay on orders

---

[8] The Debtors define the word "Interests" quite expansively, *see* Sale Order ¶ L, p.9, to include, e.g., Claims, in contrast to the case law under 11 U.S.C. § 363(f). *In re Lawrence United Corp.*, 221 B.R. 661 (Bankr. N.D.N.Y. 1998) (noting that courts have defined "interest" narrowly under § 363(f)).

[9] Sale Order ¶ 20.

"authorizing the use, sale, or lease of property, other than cash collateral . . . unless the court orders otherwise," requires Debtors to demonstrate "specific exigencies." *In re Dana Corp.*, 358 B.R. 567, 584 (Bankr. S.D.N.Y. 2006). While the Debtors cite the fragility of the Purchased Assets and the need to stabilize the business, they do not address with specificity how waiting an additional 10 days will adversely effect the Debtors. In fact, IMD has been operating since the sale motion was filed on October 6, 2008, and it is unlikely that the Debtors will be able to close such a complex sale requiring the necessary consents prior to the expiration of the ten (10) day waiting period. Additionally, the UPA allows until June 30, 2009 for the transaction to close.[10] Accordingly, it is unclear how waiting an additional ten (10) days prior to any order's becoming effective will be detrimental to the Debtors, nor have the Debtors adequately articulated how an additional ten (10) days will jeopardize the estate.

## CONCLUSION

The Debtors' motion should be denied to the extent it seeks to transfer non-debtor controlled group members to NBSH free and clear of their joint and several ERISA liabilities arising under Title IV of ERISA, and to make the sale order immediately effective.

---

[10] UPA § 3.3(d).

| | |
|---|---|
| Dated: Washington, D.C.<br>December 17, 2008 | Respectfully submitted, |
| | /s/ Colin B. Albaugh<br>ISRAEL GOLDOWITZ<br>Chief Counsel<br>KAREN L. MORRIS<br>Deputy Chief Counsel<br>STEPHANIE THOMAS<br>Assistant Chief Counsel<br>SARA B. EAGLE<br>COLIN B. ALBAUGH (CA 3282)<br>Attorneys<br>PENSION BENEFIT GUARANTY<br> CORPORATION<br>Office of the Chief Counsel<br>1200 K Street, N.W.<br>Washington, D.C.  20005-4026<br>Ph: (202) 326-4020, extension 3176<br>Fax: (202) 326-4112<br>Emails: albaugh.colin@pbgc.gov<br>           efile@pbgc.gov<br><br>Attorneys for the Pension Benefit Guaranty<br> Corporation |

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Limited Objection of the Pension Benefit Guaranty Corporation to Debtors' Motion to (A) Establish Sales Procedures; (B) Approve a Seller Termination Fee; and (C) Approve the Sale of the Purchased Assets and the Assumption and Assignment of Contracts Related to the Purchased Assets was served electronically and/or by first class mail, unless otherwise indicated, this 17th day of December 2008, on the following:

The Honorable James M. Peck
United States Bankruptcy Court
 for the Southern District of New York
One Bowling Green
New York, N.Y. 10004
Courtroom 601
(by overnight mail)

Lori R. Fife, Esq.
Garrett A. Fail, Esq.
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153

Andy Velez-Rivera, Esq.
Paul Swartzberg, Esq.
Brian Masumota, Esq.
Linda Riffkin, Esq.
Tracy Hope Davis, Esq.
Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004

Abhilash M. Raval, Esq.
Evan Fleck, Esq.
Milbank, Tweed, Hadley & McCloy, LLP
One Chase Manhattan Plaza
New York, NY 10005

James B. Kobak, Esq.
David Wiltenburg, Esq.
Jeff Margolin, Esq.
Hughes Hubbard & Reed, LLP
One Battery Plaza Park
New York, NY 10004

Mark I. Bane, Esq.
Steven T. Hoort, Esq.
Ropes & Gray, LLP
1211 Avenue of the Americas
New York, NY 10036

James L. Bromley, Esq.
Sean A. O'Neal, Esq.
Cleary Gottlieb, LLP
One Liberty Plaza
New York, NY 10006

Peter G. Samuels, Esq.
Proskauer Rose, LLP
1585 Broadway
New York, NY 10036

/s/ Colin B. Albaugh
Colin B. Albaugh
Attorney for the Pension Benefit Guaranty Corp.