WINSTON & STRAWN LLP
David Neier (DN-5391)
200 Park Avenue
New York, New York 10166
(212) 294-6700
(212) 294-4700 (facsimile)
dneier@winston.com

Attorneys for Piper Jaffray & Co.

**Hearing: January 14, 2009, 10:00 a.m. ET**
**Objection: January 9, 2009, 4:00 p.m. ET**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                                          :
In re:                                             :
                                                          : Chapter 11
LEHMAN BROTHERS HOLDINGS, INC., *et* :
*al.,*                                                      : Case No. 08-13555 (JMP)
                                                        :
Debtors.                                          : (Jointly Administered)
                                                          :
                                                          :
------------------------------------------------------- x

## MOTION OF PIPER JAFFRAY & CO. FOR
## LEAVE TO CONDUCT DISCOVERY PURSUANT TO
## FED. R. BANKR. P. 2004 OF DEBTOR LEHMAN COMMERCIAL PAPER INC.

Piper Jaffray & Co. ("Piper"), by and through its undersigned counsel, moves pursuant to section 105(a) of title 11 of the United States Code, § 101 et seq. (as amended, the "Bankruptcy Code") and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an order authorizing and directing discovery in the form of document requests only at this time to provide Piper with, *inter alia*: (a) the specific location (including account numbers) for all accounts established pursuant to the Operating Agreement for LPJ Aircraft Finance LLC ("LPJ Aircraft") dated April 9, 2007 (the "Operating Agreement") between Lehman Commercial Paper, Inc. ("LCPI") as Managing Member and Piper as Member; (b) an accounting of Piper's interests in such accounts; (c) the specific location (including

NY:1211962.10

account number) and amount of proceeds realized from sales by LPJ Aircraft of four (4) aircraft to Northwest Airlines, Inc. ("NWA") (now Delta Airlines Corporation ("Delta") more fully described in paragraph 16 below, together with confirmation of the aggregate net amount from such sales that should have been credited to the Piper Capital Account (as defined in Paragraph 9 below); (c) the specific location (including account number) of the 23,409 shares of NWA described in paragraphs 13-15 below, together with confirmation of the fact that such shares have been credited to the Piper Capital Account; and (d) an accounting of the Piper Capital Account as further described below and in the attached Exhibit 3. In support of this motion (the "Motion"), Piper states as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL BACKGROUND

2. Lehman Brothers Holdings, Inc., ("LBHI") filed a voluntary chapter 11 petition on September 15, 2008 (the "Petition Date"), and, subsequently, certain other affiliated entities have filed voluntary petitions, including, on October 5, 2008, LCPI (LBHI, LCPI and the other affiliated entities are hereinafter collectively referred to as the "Debtors") commencing these chapter 11 cases. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. 11 U.S.C. §§ 1107(a), 1108.

3. On September 19, 2008, the District Court entered an Order Commencing

Liquidation of Lehman Brothers, Inc. ("LBI") pursuant to the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*, in the case captioned *Securities Investor Protection Corp. v. Lehman Brothers Inc.*, Case No. 08-CIV-8119 (GEL), which Order, *inter alia*, (i) appointed James W. Giddens as Trustee (the "SIPA Trustee") and (ii) removed the case of LBI to this Court, Case No. 08-01420 (JMP).

## FACTUAL BACKGROUND

4. On or about April 9, 2007, Piper and LCPI entered into the Operating Agreement for LPJ Aircraft. A copy of the Operating Agreement is attached hereto as Exhibit 1.

5. The Members (as defined in the Operating Agreement) of LPJ Aircraft are Piper and LCPI. LCPI is the Managing Member of LPJ Aircraft and has an 81.43% interest, and Piper is a Member and has an 18.57% interest. Ex. 1 §5.2, Sched. A. Piper has sold approximately 30% of its 18.57% Member interest to four different institutional investors (the "Co-Investors").

6. LPJ Aircraft was formed to purchase property that was distributed to certain holders of pass-through certificates issued in connection with NWA Pass-Through Trust Series 1997-1, which included Piper. The property that was distributed took the form of twelve (12) NWA aircraft (Reg. No. N501XJ through N512XJ) and certain NWA bankruptcy claims.

7. Under the Operating Agreement a Capital Account was established for each Member (the "Capital Accounts"). Ex. 1 §4.2.

8. On or about April 11, 2007, Piper made a capital contribution to LPJ Aircraft in the face amount of $28,006,914.74 and in the form of pass-through certificates issued in connection with NWA Pass-Through Trust Series 1997-1. Ex. 1, Sched A.

9. Piper has been advised that LCPI maintained one or more accounts for LPJ Aircraft at LBI, but is uncertain as to whether the account(s) are maintained in the name of LCPI without further restriction, in the name of LCPI as Managing Member of PLJ Aircraft, or in the name of LPJ Aircraft. Piper has no understanding as to the location or amount of its Capital Account (the "Piper Capital Account").

10. Piper and its attorneys have made numerous requests for information concerning the location and holdings of any and all accounts in which assets of LPJ Aircraft are being held and the Piper Capital Account. Although attorneys for the Debtors requested that Piper work with them on behalf of LCPI to obtain information concerning accounts established in the name of or for the benefit of LPJ Aircraft, attorneys for the Debtors have subsequently failed to respond to numerous requests for information.

11. The account(s) in which assets of LPJ Aircraft may be held may be in the possession of the SIPA Trustee or it (they) may have been transferred to Barclays Bank PLC ("Barclays").

12. Despite Piper's diligent requests for information concerning the location and amount of assets, there has been no meaningful disclosure of any kind.

13. On information and belief, in or about September 2008, LPJ Aircraft made a distribution of shares of common stock of NWA to its Members. Under this distribution, Piper was entitled to 23,409 shares of NWA stock.

14. Effective as of October 31, 2008, all NWA shares were to be exchanged for shares of Delta.

15. To this date, Piper has not received any of the 23,409 shares to which it was entitled, whether in the form of NWA or Delta shares.

16. Despite Piper's diligent requests for information concerning these NWA shares, there has been no disclosure of any kind relating to the whereabouts of these shares, whether the shares are certificated or held in street name, whether or not the NWA shares have been exchanged for Delta shares, and the location of these shares. Without any understanding of the location of these shares (a portion of which are also beneficially owned by the Co-Investors) or whether they have been exchanged, Piper believes that this property is at risk.

17. In addition, during the months of March, April and May 2008, LCPI sold the remaining four (4) aircraft but has not made distributions of the proceeds from such sales to Piper. Attached to this motion as Exhibit 2 are copies of aircraft event histories obtained from a vendor that compiles this information. Exhibit 2 shows that the remaining four (4) aircraft were sold by LCPI for LPJ Aircraft on March 3, 2008 (Reg. No. N512XJ), April 3, 2008 (Reg. No. N504XJ), April 17, 2008 (Reg. No. N501XJ), and May 28, 2008 (Reg. No. N502XJ), respectively. The Operating Agreement provides that any proceeds from a sale of LPJ Assets are to be allocated to the Members in proportion to their Membership Interests, namely 81.43% to LCPI and 18.57% to Piper. Ex. 1 §5. Contrary to the manner in which proceeds from the earlier sales of aircraft were allocated, LCPI has failed to promptly pay Piper its portion of the proceeds from these aircraft sales. Piper does not know the sales price of these four sales. Without any understanding of the location or amounts of the proceeds from these sales (a portion of which is beneficially owned by the Co-Investors), or the reason for the delay in payment of such proceeds (keeping in mind that such sales were made months before any of the Debtors filed for bankruptcy), Piper believes that this property is at risk.

18. Piper and its attorneys have made numerous informal reasonable requests for disclosure regarding the location of these accounts and amount and location of the sales

proceeds. Although various assurances were made by attorneys for LCPI that they were "working on it," no information has been provided.

## RELIEF REQUESTED

19. Piper requests, pursuant to Bankruptcy Rule 2004, an order authorizing and directing discovery in the form of document production only at this time to provide Piper with: (a) the specific location (including account numbers) for all accounts established pursuant to the Operating Agreement between LCPI as Managing Member and Piper as Member; (b) the specific location (including account number) and amount of proceeds realized from each of the sales of the four (4) remaining NWA aircraft described in paragraph 16 below, together with confirmation of the aggregate net amount from such sales that has been credited to the Piper Capital Amount; (c) the specific location (including account number) of the 23,409 NWA (now Delta) shares, together with confirmation of the fact that such shares have been credited to the Piper Capital Account; and (d) an accounting of the Piper Capital Account as further described below and in the attached Exhibit 3.

## ARGUMENT

20. Bankruptcy Rule 2004 provides parties in interest a vehicle for obtaining information concerning "acts, conduct, or property or to the liabilities or financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b). This can be done through document production. Fed. R. Bankr. P. 2004(c).

21. The purpose of Bankruptcy Rule 2004 is to "show the condition of the estate and enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved." *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (quoting *Cameron v. United States*, 231 U.S. 710, 717 (1914));

*see also In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989) (rule's purpose is to ascertain "the extent and location of the estate's assets"); *In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1983) (same). The scope of an inquiry permitted under Bankruptcy Rule 2004 is broad. *See e.g. In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (finding that the rule "can be legitimately compared to a fishing expedition. It can net the dolphins **as well as** the tuna") (emphasis added). The Rule seeks to reveal "the nature and extent of the estate; ascertaining assets." *In re Corso*, 328 B.R. 375, 383 (E.D.N.Y. 2005); *see also In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (same); *In re Samuelsohn*, 174 F. 911, 911 (W.D.N.Y. 1909) (finding that a "trustee shall furnish such information as may be requested by [the creditor] and that the accounts and papers of the trustee shall be open to inspection of [creditors].").

22.     Rule 2004 discovery permits any person interested in an estate to inspect all the accounts and papers, and "to be furnished with information about the estate." *In re Drexel Burnham*, 123 B.R. at 709 (citing *In re Saur*, 122 F. 101, 103 (S.D.N.Y. 1903) (finding that a creditor in a bankruptcy proceeding has the right to inspect all the accounts and papers)); *see also In re Coffee Cupboard, Inc.*, 128 B.R. at 516 (permitting Rule 2004 discovery where such discovery would assist the trustee in recovering assets).

23.     Rule 2004 requires the Court to "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *Drexel Burnham*, 123 B.R. at 712. In making this determination, courts consider the purpose of the request as well as the degree of intrusiveness. *Id*. at 711-712. Good cause may be sustained by a claim that the requested documents are necessary to the establishment of the moving party's

claim. *In re Drexel Burnham*, 123 B.R. at 712 (citing *Boeing Airplane v. Coggshall*, 280 F.2d 654, 670 (D.C. Cir. 1960)).

24.     As can be seen from the attached Exhibit 3, the requested discovery aims to investigate the location of and assets held in all accounts in the name of LPJ Aircraft or LCPI as Managing Member of LPJ Aircraft and the location of any Piper Capital Account and the assets held in any Piper Capital Account. In addition, information is sought with respect to the proceeds, shares and other property of LPJ Aircraft, to which Piper is entitled pursuant to the Operating Agreement. None of this information has been provided despite numerous requests and promises to provide such information.

25.     To the extent that there is any burden to Debtors in producing the requested information, the balance cuts sharply in favor of Piper. This matter has become urgent given the fact that, as of October 31, 2008, all NWA shares are supposed to have been exchanged for shares of Delta. Moreover, it appears there have been transactions with respect to LPJ Aircraft's assets, but LCPI cannot provide information with respect to those transactions or the location and amounts derived from those transactions. Without any understanding of where Piper's shares and funds are, Piper's property is at risk. Piper is requesting this information both on behalf of itself and on behalf of the Co-Investors.

26.     Piper believes the information requested by Piper is sufficiently narrow in scope so as not unduly burden the Debtors in their restructuring efforts.

## **WAIVER OF MEMORANDUM OF LAW**

27.     As there are no novel issues of law herein, Piper respectfully requests that the Court waive the requirement that Piper file a memorandum of law in support of this Piper 2004 Motion pursuant to Local Bankruptcy Rule 9013-1(b).

## NO PREVIOUS MOTION OR APPLICATION

28. No previous motion or application for the relief sought herein has been made to this or any other Court.

## CONCLUSION

29. For the foregoing reasons, Piper respectfully requests that the Court (i) grant the Motion in its entirety; and (ii) grant such other, further relief as this Court deems just and proper.

Dated: New York, New York
       December 18, 2008

**WINSTON & STRAWN LLP**

By: /s/David Neier
    David Neier (DN-5391)
200 Park Avenue
New York, New York 10166
Telephone No.: (212) 294-6700
Facsimile No.: (212) 294-4700
denier@winston.com

Attorneys for Piper Jaffray & Co.