James E. Schwartz, Esq.
STEMPEL BENNETT CLAMAN & HOCHBERG, P.C.
675 Third Avenue
New York, New York 10017
(212) 681-6500
jschwartz@sbchlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
| Debtors. | |

### LIMITED OBJECTION OF 220 NEWS OWNER LLC TO DEBTORS' MOTION TO APPROVE THE SALE OF CERTAIN ASSETS

TO:   THE HONORABLE JAMES M. PECK,
      UNITED STATES BANKRUPTCY JUDGE:

Objector, SLG 220 News Owner LLC ("Landlord") hereby submits this objection to the relief requested by Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the above referenced chapter 11 cases (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman") for the approval of the sale of certain assets and for other relief as requested by the Debtors' Motion To (A) Establish Sales Procedures; (B) Approve A Seller Termination Fee And A Reimbursement Amount; And (C) Approve The Sale Of The Purchased Assets And The Assumption And Assignment Of Contracts Relating To The Purchased Assets (the "Sale Motion"), and respectfully represents:

## INTRODUCTION

1. In the Sale Motion, the Debtors, along with certain related non-debtor entities, seek this Court's authority to sell certain equity interests and assets related to what Debtors call Lehman Brothers' "investment banking and investment management division" ("IMD"), which includes Neuberger Berman Management LLC ("NBM") and Neuberger Berman, LLC ("NB") each non-debtor entities.

2. Objector is the landlord ("Landlord") of the building located at 220 East 42nd Street, New York, New York (the "Building"). Executive Monetary Management, Inc. (a non-debtor entity) ("Tenant") is the tenant under a lease (the "Lease") to the Building's 32nd floor and a portion of the 33rd. NBM and NB are the guarantors under the Lease.

3. The Court should deny approval of the Sale Motion to the extent that approval may be sought for any transaction that would prejudice in any way the rights of Objector against non-debtors NBM and NB.

## PROCEDURAL BACKGROUND

4. On September 15, 2008 (the "Petition Date"), the Debtors commenced these bankruptcy proceedings by filing voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5. On December 9, 2008, Debtors filed a Notice of Filing of Successful Bid in Connection With Sale of Lehman Brothers Inc.'s Investment Management Division. Attached as Exhibit 1 to that notice is a redacted copy of a Unit Purchase Agreement, dated December 1, 2008 (the "UPA") between LBHI and NBSH Acquisition, LLC ("Acquisition"). Debtors intend to seek this Court's approval of this new transaction pursuant to the Sale Motion.

6.	Under the terms of the UPA, the IMD will be acquired by Acquisition, and LBHI will receive a combination of preferred and common units but no material cash consideration.

7.	Under the terms of the UPA, Acquisition will acquire, and assume certain liabilities of, the IMD. But, as we read the UPA, excluded from them are the liabilities of NBM and NB as guarantor of the Lease. See UPA Schedule 1.1(d), p. 10.

## OBJECTION TO SALE MOTION

8.	Landlord's predecessor entered into the Lease with Tenant on May 25, 2001. That same day, the IMD's predecessor entered into a guaranty (the "Guaranty") of the Lease (copy annexed hereto as Exhibit A). In 2003, the IMD's predecessor merged with a newly formed subsidiary of LBHI, titled Neuberger Berman; that subsidiary became guarantor of the Lease.

9.	Under the terms of the sale that Debtors apparently intend to ask this Court to approve, certain of the outstanding equity interests of each of NBM and NB would be sold, see definition of "Business" on p. 4 of the UPA, transferred and assigned to Acquisition, but Acquisition would neither acquire Tenant, nor assume liability for guarantors' Lease obligations. See UPA Schedule 1.1(d), p. 10. Landlord bargained for the guarantors' credit-worthiness as part of the lease transaction. On consummation of the sale under the UPA, as best we can tell, NBM and NB will no longer be as financially robust as they are now in that their assets and business operations will have been transferred to Acquisition. Landlord is concerned that it will suffer prejudice because the entity(ies) that now guarantee the Lease may well become far less financially viable in that the relation of assets to liabilities is likely to decrease as a result of the sale. Were the Tenant to default under the Lease, the Landlord would no longer be able to rely on

NBM and NB's current financial wherewithal to satisfy the Tenant's rental and other guaranteed obligations.

10. The subsidiary entities now being sold are, we believe, the Lease's guarantors.

## CONCLUSION

WHEREFORE, for the reasons stated above, Objector asks this Court to enter an order:

    a. sustaining its Objection;

    b. denying the Sale Motion to the extent that approval may be sought for a transaction that in any way prejudices the rights of Landlord with respect to the claims against NBM and NB and;

    c. granting such other and further relief as this Court deems proper, both at law and in equity.

Dated: December 18, 2008

STEMPEL BENNETT CLAMAN & HOCHBERG, P.C.

By: _____
James E. Schwartz (JES-9608)