Hearing Date and Time: December 22, 2008 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: December 22, 2008 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                    :
**In re**                                           :    **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,        :    **08-13555 (JMP)**
                                                    :
                    Debtors.                        :    **(Jointly Administered)**
                                                    :
                                                    :
------------------------------------------------------------------x

### NOTICE OF DEBTORS' MOTION TO AMEND
### (I) ORDER AUTHORIZING SALE OF G-IVSP AIRCRAFT
### AND (II) ORDER AUTHORIZING SALE OF FALCON 50 AIRCRAFT

       PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), to amend (i) Order Authorizing Sale of G-IVSP Aircraft and (ii) Order Authorizing Sale of Falcon 50 Aircraft, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004, on **December 22, 2008 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be considered at the Hearing whether made in writing or orally.

Dated: December 19, 2008
      New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Hearing Date and Time: December 22, 2008 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: December 22, 2008 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                              :

**In re**                                          :        **Chapter 11 Case No.**
                                              :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :        **08-13555 (JMP)**
                                              :

                          Debtors.              :        **(Jointly Administered)**
                                              :
                                              :
------------------------------------------------------------------x

**DEBTORS' MOTION TO AMEND**
**(I) ORDER AUTHORIZING SALE OF G-IVSP AIRCRAFT**
**AND (II) ORDER AUTHORIZING SALE OF FALCON 50 AIRCRAFT**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors and debtors in possession (together, the

"Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this Motion

and respectfully represent:

**Background**

        1.        Commencing on September 15, 2008 and periodically thereafter

(as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries

commenced with this Court voluntary cases under chapter 11 of title 11 of the United

States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

**Jurisdiction**

4. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Preliminary Statement**

5. This Court recently authorized the Debtors to sell two of their aircraft, a Gulfstream Aerospace G-IVSP bearing manufacturer's serial number 1448 and U.S. registration mark N300LB (the "G-IVSP") and a Dassault model Falcon 50 aircraft, bearing manufacturer's serial number 179 and U.S. registration mark N232PR (the "Falcon 50" and, together with the G-IVSP, the "Aircraft"). Each sale was proposed

after an extensive marketing campaign as a result of which the proposed purchaser for the G-IVSP was one of a few bidders and the proposed purchaser of the Falcon 50 was the only bidder.  These sales did not consummate -- in the case of the G-IVSP, as a result of the precipitous decline in the market for this asset and in the case of the Falcon 50, as a result of certain issues raised during inspection of the aircraft and the declining marketplace.  The market for these assets has not improved and, in fact, continues to decline and is expected to remain depressed for sometime.  Despite these issues, the original purchasers of the Aircraft have returned to the Debtors and this week offered to consummate each transaction on generally the same terms and conditions at a reduced purchase price, so long as the sales can be consummated prior to December 24, 2008.  The Debtors believe each transaction continues to represent the highest and best price for the Aircraft and seek a modification of this Court's sale orders in order to effect the sales.

6. As has been widely reported, the market for pre-owned aircraft has become highly saturated.  A recent Business Week article reports that "[t]he corporate jet market, once so tight that [buyers] routinely paid 20% above list for the latest models, is glutted . . . a plethora of pre-owned aircraft sits unsold.  More than 1,300 are on the block, up 63% from a year ago."  Peter Burrows, *Corporate Jets Take a Nosedive,* Business Week, Dec. 15, 2008, at 20.  The chairman of broker Corporate Jet Sales stated that he is "offering owners as little as half of what they they're asking" because "the bottom is [not] even in sight."  *Id.*  Based upon the foregoing, the

7. Based on the foregoing, the Debtors submit good cause exists to amend the orders authorizing the sale of the G-IVSP and the Falcon 50 (the "Amended

Orders") so the Debtors can promptly consummate these transactions, as amended, and maximize the value of these assets.

### The Sale Orders

8.  In June 2008, the Debtors initiated a competitive request for proposal process with six brokers for the sale of the Aircraft. The brokers were selected based on a market-knowledge survey, their aviation-industry sales experience, references, and proposed commission fees. The proposed commission fees among the brokers varied by more than $100,000. The Debtors ultimately selected Bloomer deVere Group Avia, Inc. (the "Broker") as its broker. The Debtors felt the Broker best-satisfied all of the foregoing criteria. The Broker also submitted a bid with the lowest commission fees. During final contract negotiations, the Debtors and the Broker agreed upon a sliding scale commission rate, which provided further incentive for the Broker to seek the highest bid possible for the Aircraft.

### The Proposed G-IVSP Sale

9.  In early September 2008, the Debtors focused on a competitive bidding process to sell the G-IVSP. Following an aggressive marketing campaign, the Debtors ultimately agreed to a transaction with the highest and otherwise best offer, submitted by Pegasus AV, LLC ( "Pegasus").

10. On October 15, 2008, the Debtors filed a motion (the "G-IVSP Motion") for authorization to enter into that certain Aircraft Sale and Purchase Agreement (the "G-IVSP Sale Agreement") dated as of October 13, 2008 with Pegasus for the sale of the G-IVSP for the purchase price of $25,400,000. The G-IVSP Sale Agreement was contingent on Pegasus' ability to secure an irrevocable commitment to

finance the purchase of the G-IVSP, upon terms and conditions acceptable to Pegasus. Thereafter, Pegasus was only able to secure the necessary financing at significantly more expense rates than Pegasus, or the Debtors, had anticipated at the time the G-IVSP Sale Agreement was executed. The Debtors and Pegasus agreed to a reduction in the purchase price from $25,400,000 to $24,892,000 in order to offset the increased financing cost, as set forth in Amendment No. 1 to Aircraft Sale and Purchase Agreement (the "G-IVSP Amendment 1") dated as of October 27, 2008. On October 29, 2008, the Debtors filed a supplement to the G-IVSP Sale Motion (the "G-IVSP Supplement") with this Court reflecting the terms of the G-IVSP Amendment 1.

11. On November 5, 2008, the Court authorized the sale of the G-IVSP (the "G-IVSP Sale Order") to Pegasus pursuant to the G-IVSP Sale Agreement, as amended by the G-IVSP Amendment 1 (the "G-IVSP Sale"), for the purchase price of $24,892,000 (the "G-IVSP Purchase Price") [Docket No. 1399].

**The Proposed Falcon 50 Sale Order**

12. In early September 2008, the Debtors also initiated a competitive bidding process to sell the Falcon 50. The market at that time for pre-owned Falcon 50 aircraft was saturated. Since then, additional pre-owned Falcon 50 aircraft have become available and the market has continued to decline. As additional aircraft continue to come to market, demand for pre-owned Falcon 50 aircraft continues to decrease, which has a commensurate affect on price. As of the date hereof, the Debtors are aware of at least thirty-eight Falcon 50 aircraft being actively marketed -- more then a two-year supply at the current pace of sales. It is likely that additional Falcon 50 aircraft are being more quietly marketed.

13. Despite the foregoing conditions, through the Debtors' active marketing process, the Debtors received a range of bids for the Falcon 50 from various interested parties. The Debtors ultimately agreed to a transaction with the highest and otherwise best offer, submitted by Peregrine Aviation Services, Inc. ("Peregrine" and, together with Pegasus, the "Purchasers")

14. On November 12, 2008, the Debtors filed a motion (the "Falcon 50 Motion") for approval of the sale of the Falcon 50 pursuant to (a) that certain Aircraft Sale and Purchase Agreement dated as of October 29, 2008 (the "Falcon 50 Sale Agreement") with Peregrine or (b) a substantially similar sale and purchase agreement with a party who submits a higher or better offer that is ultimately accepted by the Debtors (the "Proposed Sale").

15. Upon filing the Falcon 50 Sale Motion, the Debtors provided notice of the Proposed Sale to any party that had expressed interest in any of Lehman's aviation assets within the past year, and certain other logical or likely bidders. The Debtors also caused the notice of the Falcon 50 Motion and the Falcon 50 Motion to be published on the Debtors' court-approved claims and noticing agent's website: www.lehman-docket.com.

16. The Debtors did not receive a single other offer for the Falcon 50. Thus, on December 3, 2008, the Court authorized the sale of the Falcon 50 to Peregrine (the "Falcon 50 Sale Order" and, together with the G-IVSP Sale Order, the "Sale Orders") pursuant to the terms of the Falcon 50 Sale Agreement (the "Falcon 50 Sale"). The sale order specified a purchase price for the Falcon 50 of $6,200,000 (the "Falcon 50 Purchase Price") [Docket No. 2051].

**The Need to Amend the Initial Orders**

The G-IVSP

17. Upon entry of the G-IVSP Sale Order, the Debtors and Pegasus moved towards consummating the G-IVSP Sale. On or about December 13, 2008 Pegasus advised the Debtors that, despite the Debtors having satisfied all obligations under the G-IVSP Sale Agreement, as a commercial matter Pegasus had determined to not consummate the G-IVSP Sale as a result of a severe deterioration in the market for this asset. Indeed, from the time the G-IVSP Sale Agreement was executed to the day of the filing of this motion, the value of this asset has declined by $3,328,000, according to the Aircraft Bluebook Price Digest (the "Aircraft Bluebook").

18. This past week, Pegasus contacted the Debtors and offered to purchase the G-IVSP only if the G-IVSP Purchase Price is reduced by approximately $1,500,000 to $23,400,000 (the "Amended G-IVSP Purchase Price") and the transaction is consummated by December 23, 2008.

19. If the Debtors refuse to reduce the G-IVSP Purchase Price and the G-IVSP Sale does not close, the Debtors' only recourse against Pegasus under the terms of the G-IVSP Sale Agreement is liquidated damages equal to the deposit in the amount of $250,000. Pegasus already has proven its willingness to forgo the $250,000.

20. The Debtors believe that the Amended G-IVSP Purchase Price still represents the highest and best offer for the G-IVSP. This belief is based on: (i) the increasingly soft market for pre-owned aircraft; (ii) the significant drop in the G-IVSP's Aircraft Bluebook value in just two months; (iii) the fact that CES Aviation II, a non-debtor Lehman entity, owns and is currently marketing another Gulfstream Aerospace G-

IVSP for which the Debtors have not received any credible offers despite an active marketing campaign; and (iv) the fact that no other bids at this price were received during the marketing of this specific aircraft.

21. The Debtors and Pegasus executed Amendment No. 2 to Aircraft Sale and Purchase Agreement (the "G-IVSP Amendment 2") dated as of December 18, 2008, reflecting the Amended G-IVSP Purchase Price. Upon executing the G-IVSP Amendment 2, as a show of good faith, Pegasus increased the deposit from $250,000 to $2,250,000. The $2,250,000 deposit is non-refundable if Pegasus does not close the G-IVSP Sale.

22. If the Amended Order is entered by December 22, 2008, the Debtors and Pegasus have made arrangements for a closing to occur immediately on December 23, 2008.

The Falcon 50

23. Pursuant to the Falcon 50 Sale Agreement, it is a condition to Peregrine's obligation to consummate the Proposed Sale that the Falcon 50 comply with the specifications (the "Aircraft Specification") set forth in Exhibit A to the Falcon 50 Sale Agreement . The Aircraft Specification represents that the Falcon 50 is "JAR OPS approved", meaning the Falcon 50 is compliant with regulations for charter service in Europe. During final inspections, the Debtors and Peregrine realized that the Falcon 50 is not "JAR OPS approved." Furthermore, it was determined that the landing gear had not been overhauled as recently as indicated in the Aircraft Specification. As a result, the Falcon 50 did not strictly meet the Aircraft Specification set forth in Exhibit A, Peregrine

is not obligated to close the Falcon 50 Sale, and the Debtors must return Peregrine's deposit in the amount of $250,000 if Peregrine so demands.

24.     The Debtors estimate the cost of coming into strict compliance with the Aircraft Specifications to be in excess of $500,000 and such work would result in several months of delay.  Despite the foregoing, Peregrine is willing to purchase the Falcon 50 "as is" if the Debtors agree to a $300,000 reduction in the Falcon 50 Purchase Price to $5,900,000 (the "Amended Falcon 50 Purchase Price") and the modified agreement receives all necessary approvals in short order.

25.     As mentioned above, the Falcon 50 was actively marketed and the Proposed Sale was subject to higher or better offers.  The Debtors notified all parties that had expressed interest in any of Lehman's aviation assets within the past year, and certain other logical or likely bidders.  The Debtors also published notice of the Proposed Sale on the Debtors' court-approved claims and noticing agent's website:  www.lehman-docket.com.  The Debtors did not receive any additional offers for the Falcon 50.  Based on the foregoing, the Debtors believe that a purchase price in the amount of $5,900,000 for the Falcon 50 represents the highest and best offer for the Falcon 50.

26.     Peregrine and the Debtors executed Amendment No. 1 to Aircraft Sale and Purchase Agreement (the "Falcon 50 Amendment 1") dated as of December 18, 2008 reflecting, in part, the Amended Falcon 50 Purchase Price.

27.     If the Amended Order is entered, the Debtors and Peregrine intend to consummate the transaction within thirty days.

**Relief Requested**

28.     By this motion, the Debtors request that the Court amend the Sale Orders to reflect (i) the G-IVSP Amendment 2 and the Amended G-IVSP Purchase Price and (ii) the Falcon 50 Amendment 1 and the Amended Falcon 50 Purchase Price.  The amended Sale Orders are attached hereto as Exhibit A.

**The Relief Requested is Warranted
and in the Best Interests of the Debtor and its Estate**

29.     Section 363 of the Bankruptcy Code provides, in relevant part, "that a debtor, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Although section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, courts in the Second Circuit and others, in applying this section, have required that it be based upon the sound business judgment of the debtor.  *See In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same).  Once a court is satisfied that there is a sound business justification for the proposed sale, the court must then determine whether (i) the debtor has provided the interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith.  *In re Betty Owens Sch.*, 1997 U.S. Dist. Lexis 5877 (S.D.N.Y. 1997); *accord In re Delaware and*

*Hudson Ry. Co.*, 124 B.R. at 166; *In re Decora Indus., Inc.*, Case No. 00-4459, 2002 WL 32332749 at *3 (Bankr. D. Del. May 20, 2002).

30. This Court previously found the Debtors' decisions to sell the G-IVSP and the Falcon 50 to be exercises of sound business judgment. The Debtors' decision to reduce the G-IVSP Purchase Price and the Falcon 50 Purchase Price is also an exercise of sound business judgment. The G-IVSP and the Falcon 50 are no longer required to facilitate Lehman's business transportation during the Debtors' chapter 11 cases. Additionally, should the G-IVSP Sale or the Falcon 50 Sale not be consummated, the Debtors will continue to incur costs for the Aircraft comprising of: (i) hangar fees; (ii) management fees (iii) insurance fees; (iv) maintenance fees; and (v) attorneys' fees in connection with any future sale of the Aircraft. The Debtor maintains that both the G-IVSP Sale and the Falcon 50 Sale, despite the reductions in the purchase price, are meritorious based on extensive bidding processes for both aircraft, the sales being cash transactions, the transparency of the end buyers, and in light of what appears to be a market that is in a severe downward spiral.

31. As noted above and in both the G-IVSP Motion and the Falcon 50 Motion, all potential bidders have had an opportunity to bid on the Aircraft prior to the respective sale hearings. The consideration to be paid by the Purchasers (i) represents the best offer for the respective aircraft; (ii) is fair and reasonable; (iii) provides for a greater recovery for the Debtors' creditors than would be provided by any other practical, available alternative; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and non-bankruptcy law. The costs of

remarketing the G-IVSP and the Falcon 50, especially in light of the current market, far outweigh any benefit to the Debtors' estates.

**Creditors' Committee Support**

32.   The Debtors have provided all information relevant to the circumstances relating to the G-IVSP and the Falcon 50 to the Creditors' Committee and have consulted them regarding the request for the Amended Order.  Upon consideration, the Creditors' Committee supports the relief requested herein.

33.   Other than the G-IVSP Motion and the Falcon 50 Motion, no previous request for the relief sought herein has been made by the Debtors to this or any other court.

**[The remainder of this page is intentionally left blank.]**

**Notice**

34.     No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on September 22, 2008 governing case management and administrative procedures for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  December 19, 2008
        New York, New York


/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession