## Exhibit A

## The Amended Sale Orders

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
:
**In re**                                                     :       **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :       **08-13555 (JMP)**
:
                                        **Debtors.**          :       **(Jointly Administered)**
:
:
-------------------------------------------------------------------x

**AMENDED ORDER PURSUANT TO SECTION 363 OF THE
BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY
PROCEDURE 6004 AUTHORIZING LEHMAN BROTHERS HOLDINGS
INC. TO ENTER INTO AN AMENDED SALE AND PURCHASE AGREEMENT**

Upon the motion, dated October 15, 2008, as modified by a supplement dated

October 29, 2008, of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the

"Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to section 363 of

title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules") for approval of the sale of the Debtors'

aircraft, a Gulfstream Aerospace G-IV bearing Manufacturer's Serial Number 1448 and U.S.

Registration Mark N300LB (the "Aircraft"), pursuant to that certain Aircraft Sale and Purchase

Agreement dated as of October 13, 2008 with Pegasus AV, LLC (the "Purchaser"), as amended

by (i) Amendment No. 1 to Aircraft Sale and Purchase Agreement dated as of October 27, 2008

and (ii) Amendment No. 2 to Aircraft Sale and Purchase Agreement dated as of December 18,

2008 and attached hereto as Exhibit 1 (collectively, the "Sale Agreement") and upon the motion,

dated December 19, 2008, to amend (i) Order Authorizing Sale of G-IVSP Aircraft and (ii)

Order Authorizing Sale of Falcon 50 Aircraft (together, the "Motion"),[1] all as more fully

described in the Motion; and the Court having jurisdiction to consider the Motion and the relief

requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61

Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings

Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the order entered

September 22, 2008 governing case management and administrative procedures [Docket No.

285] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for

the Official Committee of Unsecured Creditors; (iii) the attorneys for the Debtors' postpetition

lenders; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the

United States Attorney for the Southern District of New York; (vii) the Purchaser; and (viii) all

parties who have requested notice in these chapter 11 cases, and it appearing that no other or

further notice need be provided; and the Court having found and determined that the relief

sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all

parties in interest and that the legal and factual bases set forth in the Motion establish just cause

for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it

is hereby

ORDERED that the Motion is GRANTED; and it is further

ORDERED that, pursuant to section 363(b) of the Bankruptcy Code and

Bankruptcy Rule 6004, the Sale Agreement hereby is approved and the Debtors are authorized to

---

[1] Capitalized terms that are used but not defined in this Order have the meanings ascribed to them in the Motion.

consummate all of the transactions contemplated thereby, including but not limited to, the sale of the Aircraft to Purchaser for the purchase price of $23,400,000; and it is further

ORDERED that, pursuant to section 363(f) of the Bankruptcy Code, the sale of the Aircraft to the Purchaser (the "Sale") shall be free and clear of any and all liens, claims and encumbrances, with such liens, claims and encumbrances (if any) to attach to the proceeds of the Sale with the same force, effect, and priority as such liens, claims and encumbrances have on the Assets, as appropriate, subject to the rights and defenses of the Debtors and any party in interest with respect thereto; and it is further

ORDERED that the Purchaser is granted the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code; and it is further

ORDERED that the Debtors are authorized to execute and deliver such assignments, conveyances, and other documents, and instruments of transfer and to take such other actions as may be reasonably necessary to consummate the Sale; and it is further

ORDERED that nothing in this Order or in the Sale Agreement (i) releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statues or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order, or (ii) should be construed to give Purchaser any more protection against any government unit than it is otherwise entitled to under 11 U.S.C. § 363(f)(1), (3), (4), or (5).  Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under law; and it is further

ORDERED that Debtors are authorized to pay the following outstanding invoices relating to flight support activities, as more fully described in the Motion: (i) aircrew training expenses in the amount of $27,621.06; (ii) travel and preparation for aircrew expenses in the

amount of $491.79; (iii) hangar, fuel, and maintenance expenses in the amount of $21,624.72;

(iv) expenses incurred in positioning the Aircraft in Scottsdale, Arizona for Purchaser's

inspection in the amount of $20,046.28; and (v) various other operating expenses in the amount

of $41,265.45; and it is further

ORDERED that the fees of the Debtors' Broker in the amount of One Hundred

Fifty-Eight Thousand Five Hundred Dollars ($158,500) be segregated from the Purchase Price

and held in escrow and paid to Broker only upon this Court's approval of the Debtors' retention

of Broker; and it is further

ORDERED that notwithstanding any applicability of Bankruptcy Rule 6004(h),[2]

the terms and conditions of this Order shall be immediately effective and enforceable upon its

entry; and it is further

ORDERED that that this Court shall retain jurisdiction to interpret and enforce this

Order.


Dated:  December __, 2008
       New York, New York


_____

UNITED STATES BANKRUPTCY JUDGE

---

[2] Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General Order M-308 of the United States Bankruptcy Court for the Southern District of New York, signed on October 11, 2005 by Chief Judge Stuart M. Bernstein.

## Exhibit 1

**Amendment No. 2 to Aircraft Sale and Purchase Agreement**

CES AVIATION, LLC
c/o Lehman Brothers Inc.
1271 Sixth Avenue, 45th Floor
New York, NY 10020

December 18, 2008

Pegasus AV, LLC
c/o Scheuer, Yost & Patterson
125 Lincoln Avenue, Suite 223
Santa Fe, NM 87501
Attn: Ursula Gebert

Re:    Amendment No. 2 to Aircraft Sale and Purchase Agreement (the "Amendment")

Dear Ursula:

Reference is made to that certain Aircraft Sale and Purchase Agreement dated as of October 13, 2008 (as amended by that certain Amendment No. 1 to Aircraft Sale and Purchase Agreement dated October 27, 2008, the "Agreement") between CES Aviation, LLC ("Seller") and Pegasus AV, LLC ("Purchaser"). Capitalized terms used herein, but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Agreement.

Seller and Purchaser hereby agree that the Definitions of the terms "Balance of the Purchase Price" and "Purchase Price" in Section 1.1 of the Agreement are hereby amended and restated in their entirety as follows:

**"Balance of the Purchase Price"** means the amount of Twenty One Million One Hundred Fifty Thousand Dollars ($21,150,000.00), *i.e.,* the Purchase Price minus the Deposit received by the Escrow Agent.

**"Deposit"** means a purchase money deposit in the amount of Two Million Two Hundred Fifty Thousand Dollars ($2,250,000.00), which is refundable, subject to the terms and conditions of this Agreement.

**"Purchase Price"** means the amount of Twenty Three Million Four Hundred Thousand Dollars ($23,400,000.00).

Seller and Purchaser agree that the following Definition is hereby added to Section 1.1 of the Agreement in alphabetical order:

**"Order"** has the meaning set forth in Subsection 4.1.7.

Seller and Purchaser agree that a new Subsection 4.1.7 of the Agreement is hereby added to the Agreement in numerical order as follows:

"As promptly as practicable, Seller shall obtain an order ("Order") of the Bankruptcy Court approving the reduced Purchase Price of Twenty Three Million Four Hundred Thousand Dollars ($23,400,000.00).  Purchaser agrees that it will promptly take such actions as are reasonably requested by Seller with respect to the Order."

Seller and Purchaser agree that a new Subsection 4.2.9 of the Agreement is hereby added to the Agreement in numerical order as follows:

"The obligation set forth in Subsection 4.1.7 shall have been satisfied."

Seller and Purchaser agree that a new Subsection 4.3.12 of the Agreement is hereby added in numerical order as follows:

"The obligation set forth in Subsection 4.1.7 shall have been satisfied."

Purchaser represents that it has delivered to Escrow Agent an additional Two Million Dollars ($2,000,000.00) to bring the total Deposit to Two Million Two Hundred Fifty Thousand Dollars ($2,250,000.00).

Seller and Purchaser hereby agree that Seller has obtained the Bankruptcy Court order referenced in Subsection 4.1.5 of the Agreement.  Seller and Purchaser further agree that the Condition Precedent to Seller's Obligations in Subsection 4.2.6 of the Agreement and the Condition Precedent to Purchaser's Obligations in Subsection 4.3.9 of the Agreement are both hereby irrevocably deemed satisfied.

Seller and Purchaser hereby agree that the Inspection described in Section 3.2 of the Agreement has been completed, all Discrepancies have been corrected by Seller and the Aircraft is, as of the date hereof, in the required Delivery Condition.  Seller and Purchaser further agree that the Condition Precedent to Purchaser's Obligations in Subsection 4.3.5 of the Agreement is hereby irrevocably deemed satisfied.

Except as expressly provided above, the Agreement is otherwise unmodified and each party hereto expressly reserves any and all of its respective rights and remedies under the Agreement.

**THIS AMENDMENT SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, UNITED STATES OF AMERICA, WITHOUT REFERENCE TO PRINCIPLES OF CONFLICTS OF LAW OTHER THAN SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW.**

Any dispute, claim or controversy arising out of or relating to this Amendment or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be

determined by arbitration in New York, New York, before one (1) arbitrator. The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

The parties agree that the terms and conditions of this Amendment and the Agreement, taken together constitute the entire agreement between the parties with respect to the subject matter hereof. This Amendment and the Agreement taken together, supersede all prior agreements between the parties, express or implied.

The provisions of this Amendment shall not be varied otherwise than by an instrument in writing executed by or on behalf of both parties.

This Amendment may be executed in any number of counterparts, each of which when executed and delivered constitutes an original of this Amendment, but all the counterparts shall together constitute one and the same agreement.

Very truly yours,

CES AVIATION, LLC

By: _____

Name: Francine Kittredge

**ACCEPTED AND AGREED:**

PEGASUS AV, LLC

By: _____

Name: ~~Ursula Gebert~~  RALPH H. SCHEWER

GYPSY BABY, LLC

By: _____

Name: ~~Ursula Gebert~~  RALPH H. SCHEWER

INSURED AIRCRAFT TITLE SERVICE, INC.

By: _____

Name: _____

Title: _____

Very truly yours,

CES AVIATION, LLC

By: _____
Name: Francine Kittredge


**ACCEPTED AND AGREED**:

PEGASUS AV, LLC

By:_____
Name: Ursula Gebert


GYPSY BABY, LLC

By:_____
Name: Ursula Gebert


INSURED AIRCRAFT TITLE SERVICE, INC.

By: _____
Name: _____Joan F. Roberts_____
Title: _____Vice President_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                          :

**In re**                           :       **Chapter 11 Case No.**

                                            :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :       **08-13555 (JMP)**

                                            :

                        **Debtors.**         :       **(Jointly Administered)**

                                            :

                                            :

----------------------------------------------------------------x

### <u>AMENDED</u> ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 9014, AND RULES 6004-1, 9006-1 AND 9014-1 OF THE LOCAL BANKRUPTCY RULES APPROVING THE SALE OF DEBTOR'S AIRCRAFT PURSUANT TO AN AIRCRAFT SALE AND PURCHASE AGREEMENT

Upon the motion, dated November 12, 2008, of CES Aviation IX LLC (the "<u>Debtor</u>"), as debtor in possession (collectively with Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, the "<u>Debtors</u>" and, together with their non-debtor affiliates, "<u>Lehman</u>"), pursuant to sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9014, and Local Bankruptcy Rules 6004-1, 9006-1, and 9014-1 for (i) approval of the sale of the Debtor's aircraft (the "Proposed Sale"), a Dassault model Falcon 50, bearing manufacturer's serial number 179 and U.S. registration mark N232PR (the "Aircraft", as more fully defined in the Motion), pursuant to that certain Aircraft Sale and Purchase Agreement dated as of October 29, 2008 with Peregrine Aviation Services, Inc. (the "<u>Purchaser</u>"), as amended by Amendment No. 1 to Aircraft Sale and Purchase Agreement dated as of December 18, 2008 and attached hereto as Exhibit 1 (the "<u>Sale Agreement</u>"), (ii) approval of the Debtor's payment of the fees of its broker, Bloomer deVere Group Avia Inc. (the "Broker"), upon this Court's approval of the Debtor's retention of the Broker, and (iii) approval of the Debtor's payment of certain outstanding invoices and upon the motion, dated December

19, 2008, to amend (i) Order Authorizing Sale of G-IVSP Aircraft and (ii) Order Authorizing

Sale of Falcon 50 Aircraft (together, the "Motion")[1], all as more fully described in the Motion;

and the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, proper, timely,

adequate and sufficient notice of the Motion and Proposed Sale having been provided in

accordance with the procedures set forth in the order entered September 22, 2008 governing case

management and administrative procedures [Docket No. 285];  and a reasonable opportunity to

object or be heard regarding the Motion and Proposed Sale having been afforded to all such

parties; and it appearing that no other or further notice need be provided; and that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and after

due deliberation and sufficient cause appearing therefor, it is hereby:

FURTHER FOUND AND DETERMINED THAT:

1.      The Debtor has properly exercised its reasonable business judgment in

executing the Sale Agreement.  The Debtor has shown good and sufficient business justification

under sections 105(a), 363(b) and (l) of the Bankruptcy Code for the Proposed Sale, outside a

plan of reorganization.

2.      The relief sought in the Motion is in the best interests of the Debtor, its

estate, and creditors, and all parties in interest.

---

[1] Capitalized terms that are used but not defined in this Order have the meanings ascribed to them in the Motion.

3.     The ultimate consideration to be paid by the Purchaser in the amount of

$5,900,000 (i) represents the best offer for the Aircraft; (ii) is fair and reasonable; (iii) provides

for a greater recovery for the Debtor's creditors than would be provided by any other practical,

available alternative; and (iv) constitutes reasonably equivalent value and fair consideration

under the Bankruptcy Code and non-bankruptcy law.

4.     The Purchaser is not an "insider" or "affiliate" of the Debtor (within the

meaning of the Bankruptcy Code).  Neither the Debtor nor the Purchaser have engaged in

conduct that would prevent the application of section 363(m) of the Bankruptcy Code or permit

the Sale Agreement to be avoided under section 363(n) of the Bankruptcy Code.  Consequently,

the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as

such, is entitled to the protections afforded thereby.

NOW, THEREFORE, IT IS HEREBY:

ORDERED that the Motion is GRANTED; and it is further

ORDERED that, pursuant to sections 105 and 363 of the Bankruptcy Code,

Bankruptcy Rules 2002, 6004 and 9014, and Local Bankruptcy Rules 6004-1, 9006-1, and 9014-

1, the Proposed Sale is approved and the Debtor is authorized to consummate all of the

transactions contemplated thereby, including, but not limited to, the Sale Agreement; and it is

further

ORDERED that the fees of the Broker in the amount of $88,000 be segregated

from the Purchase Price and held in escrow and that the Debtor is authorized, but not ordered, to

pay the fees of the Broker upon this Court's approval of the Debtor's retention of the Broker; and

it is further

ORDERED that Debtors are authorized to pay certain outstanding invoices relating to flight support activities, as more fully described in the Motion, in the amount of $69,125.83; and it is further

ORDERED that, pursuant to section 363(f) of the Bankruptcy Code, the Debtor's right, title, and interest in and to the Aircraft shall be sold to Purchaser free and clear of any and all liens, claims, and encumbrances; and it is further

ORDERED that the Purchaser is a good faith purchaser and is granted the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code and consummation of the Sale Agreement shall not be affected by reversal or modification on any appeal of this Order; and it is further

ORDERED that the Debtor is authorized to perform all obligations under the Sale Agreement and to execute such other documents and take such other actions as may be necessary or appropriate to effectuate the Sale Agreement and the provisions of this Order; and it is further

ORDERED that nothing in this Order or in the Sale Agreement (i) releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statues or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order, or (ii) should be construed to give the Purchaser any more protection against any government unit than it is otherwise entitled to under 11 U.S.C. § 363(f)(1), (3), (4), or (5).  Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under law; and it is further

ORDERED that each and every federal, state, and local government agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by this Order; and it is further

ORDERED that any stay imposed by Bankruptcy Rule 6004(h)[2] is hereby waived

and this Order shall be immediately effective and enforceable; and it is further

ORDERED that that this Court shall retain jurisdiction to interpret and enforce

this Order.


Dated:  December ___, 2008
        New York, New York


_____

UNITED STATES BANKRUPTCY JUDGE

---

[2] Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General Order M-308 of the
United States Bankruptcy Court for the Southern District of New York, signed on October 11, 2005 by Chief Judge
Stuart M. Bernstein.

## <u>Exhibit 1</u>

**Amendment No. 1 to Aircraft Sale and Purchase Agreement**

CES AVIATION IX, LLC
c/o Lehman Brothers Inc.
1271 Sixth Avenue, 45th Floor
New York, NY 10020

December 18, 2008

Peregrine Aviation Services, Inc.
3300 Airport Road
Boca Raton, FL 33431
Attn: Scott Dandeneau

Re:    Amendment No. 1 to Aircraft Sale and Purchase Agreement (the "Amendment")

Dear Scott:

        Reference is made to that certain Aircraft Sale and Purchase Agreement dated as
of October 29, 2008 (the "Agreement") between CES Aviation IX, LLC ("Seller") and
Peregrine Aviation Services, Inc. ("Purchaser"). Capitalized terms used herein, but not
otherwise defined herein shall have the respective meanings ascribed to such terms in the
Agreement.

**A.**    Seller and Purchaser agree that the following Definitions in Section 1.1 of the
Agreement are hereby amended and restated in their entirety as follows:

        **"Balance of the Purchase Price"** means the amount of Five Million Six
        Hundred Fifty Thousand Dollars ($5,650,000.00), *i.e.,* the Purchase Price
        minus the Deposit received by the Escrow Agent.

        **"Discrepancy"** or **"Discrepancies"** means a defect of an airworthiness
        nature, the correction of which is necessary to cause the Aircraft to be in
        the Delivery Condition, but does not include "cosmetic" defects to any
        part of the Aircraft resulting from normal wear and tear associated with
        prior usage of the Aircraft.

        **"Inspection Facility"** means Executive Fliteways, Inc. located at Long
        Island MacArthur Airport in Islip, New York.

        **"Purchase Price"** means the amount of Five Million Nine Hundred
        Thousand Dollars ($5,900,000.00).

**B.**     Seller and Purchaser agree that the following Definition is hereby added to Section 1.1 of the Agreement in alphabetical order:

**"Order"** has the meaning set forth in Subsection 4.1.5.

**C.**     Seller and Purchaser agree that Section 3.2 of the Agreement is hereby amended and restated in its entirety as follows:

**"Inspection Authority.** The Aircraft shall be subjected to an Inspection at the Inspection Facility, may be conducted by Purchaser's representatives, Standard Aero, and which shall be undertaken at Purchaser's sole cost and expense, in order to verify that the Aircraft is in the Delivery Condition. The scope of the Inspection shall be in accordance with Exhibit G attached hereto. Purchaser's financial responsibility for costs associated with the any test flight(s) shall be limited to (i) the Movement Costs and (ii) in the event this Agreement is terminated due to Purchaser's inability to satisfy any of the conditions precedent set forth in Section 4.2 (other than as set forth in Subsection 4.2.6), the sum of Ten Thousand Dollars ($10,000) representing the cost associated with returning the Aircraft to its prior location. Seller shall have and retain "operational control" of the Aircraft as defined in the applicable FAR (operational control as defined in FAR § 1.1, means, with respect to a flight, the exercise of authority over initiating, conducting or terminating a flight) and exclusive possession, command and control over the Aircraft. The pilot-in-command shall have final and complete authority to postpone or cancel any flight for any reason or condition which, in his or her judgment, will compromise the safety of the flight. The parties further acknowledge and agree that only personnel essential to the safe and reasonable conduct of the test flights shall be on board the Aircraft, including three (3) technical representatives of Purchaser (with one pilot occupying the jump seat)."

**D.**     Seller and Purchaser agree that Section 3.4 of the Agreement is hereby amended and restated in its entirety as follows:

**"Aircraft Acceptance/Rejection.** Purchaser shall conduct the Inspection as soon as practicable after December 22, 2008 given the availability of Standard Aero's manpower during the holiday period and, in any event, shall complete the Inspection no later than January 9, 2009. Within two (2) Business Days after the completion of the Inspection, Purchaser will (i) accept the Aircraft, (ii) accept the Aircraft, subject to repair of all Discrepancies, or (iii) reject the Aircraft, but only if it is conclusively determined that the Aircraft cannot be made to comply with the Delivery Condition, by delivering to Seller, with a copy to Escrow Agent, a completed, executed Aircraft Technical Acceptance/Rejection Letter with the applicable line marked to show Purchaser's acceptance or rejection. In the event Purchaser rejects the Aircraft following a conclusive determination that the Aircraft cannot be made to comply with the Delivery Condition, upon confirmation that Purchaser has paid or made satisfactory arrangements for the payment of the costs and expenses of the Inspection and the Movement Costs, the Deposit shall immediately be refunded to Purchaser, and this Agreement shall terminate and be of no further force or effect and neither party shall have any further liability or



obligation hereunder. In the event Purchaser accepts the Aircraft as set forth hereinabove under (i) or (ii), the Deposit shall become non-refundable subject to the repair of all Discrepancies required to make the Aircraft comply with the Delivery Condition and as set forth in Subsection 8.2.2, Subsection 8.3.1, Section 8.4 and Section 8.23."

**E.**    Seller and Purchaser agree that a new Subsection 4.1.6 of the Agreement is hereby added to the Agreement in numerical order as follows:

" As promptly as practicable, Seller shall obtain an order ("Order") of the Bankruptcy Court approving the Purchase Price of Five Million Nine Hundred Thousand Dollars ($5,900,000.00). Each of Seller and Purchaser agrees that it will promptly take such actions as are reasonably required to obtain the Order."

**F.**    Seller and Purchaser agree that a new Subsection 4.2.8 of the Agreement is hereby added to the Agreement in numerical order as follows:

"The obligation set forth in Subsection 4.1.6 shall have been satisfied."

**G.**    Seller and Purchaser agree that a new Subsection 4.3.11 of the Agreement is hereby added in numerical order as follows:

"The obligation set forth in Subsection 4.1.6 shall have been satisfied."

**H.**    Seller and Purchaser agree that Section 8.11 of the Agreement is hereby amended by replacing the notice address of Seller as follows:

"If to Seller:        CES Aviation IX, LLC
                     c/o Lehman Brothers
                     1271 Sixth Avenue, 45th Floor
                     New York, NY 10020
                     Attn: Francine Kittredge
                     Telephone: (212) 526-3778
                     Telefax: (212) 526-3200
                     Email: fkittredd@lehman.com "

**I.**    Seller and Purchaser agree that Section 8.23 of the Agreement is hereby amended and restated in its entirety as follows:

"**Confidentiality.** The terms and conditions of this Agreement, and all writings, discussions, and negotiations in connection with the transaction contemplated by this Agreement (including, without limitation, the fact that discussions and negotiations have been conducted by the parties), shall remain strictly confidential and shall not be disclosed by either party, without the prior written consent of the other party, except that each party shall be entitled to disclose the terms and conditions of this Agreement (i) as may be required by law or legal process; (ii) to such party's attorneys, accountants, consultants, and other advisors performing services for such party with respect to or

affected by the transaction contemplated by this Agreement including Escrow Agent and Inspection Facility and their personnel; (iii) to each party's employees with a need to know; (iv) as may be required to permit such party to pursue all available remedies for breach of this Agreement by the other party; and (v) for filing with the Bankruptcy Court."

**J.**    Seller and Purchaser agree that a new Section 8.26 of the Agreement is hereby added to the Agreement in numerical order as follows:

"**Termination.** If the Closing does not occur prior to January 20, 2009, either party may terminate this Agreement in which case the Deposit will be returned to the Buyer."

**K.**    Seller and Purchaser agree that Exhibit A to the Agreement is hereby amended and restated in its entirety and replaced with Exhibit A attached to this Amendment.

**L.**    Seller and Purchaser hereby agree that Exhibit B to the Agreement is hereby amended and restated in its entirety and replaced with Exhibit B attached to this Amendment.

**M.**    Seller and Purchaser agree that a new Exhibit G is hereby added to the Agreement in alphabetical order in the form of Exhibit G attached to this Amendment.

**N.**    Seller and Purchaser hereby agree that Purchaser has obtained the order of the Bankruptcy Court referenced in Subsection 4.1.5 of the Agreement. Seller and Purchaser further agree that the Condition Precedent to Seller's Obligations in Subsection 4.2.6 of the Agreement and the Condition Precedent to Purchaser's Obligations in Subsection 4.3.9 of the Agreement are both hereby deemed satisfied.

**O.**    Purchaser shall deliver to Seller no later than December 19, 2009, a bank financing letter ("Bank Letter") which evidences purchaser's ability to fund the Balance of the Purchase Price. The Bank Letter and the financing referenced therein shall not require any additional inspection of the Aircraft as a condition to financing.

Except as expressly provided above, the Agreement is otherwise unmodified and each party hereto expressly reserves any and all of its respective rights and remedies under the Agreement.

THIS AMENDMENT SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, UNITED STATES OF AMERICA, WITHOUT REFERENCE TO PRINCIPLES OF CONFLICTS OF LAW OTHER THAN SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

The parties agree that the terms and conditions of this Amendment and the Agreement, taken together constitute the entire agreement between the parties with respect to the subject matter hereof. This Amendment and the Agreement taken together,



supersede all prior agreements between the parties, express or implied.  Each of Seller and Purchaser represents and warrants that this Amendment has been duly authorized by all necessary organizational action of such party, and, subject to the receipt of the Order and approval of the Bankruptcy Court, constitutes such party's legal, valid and binding obligations and does not require the consent of any person.

The provisions of this Amendment shall not be varied otherwise than by an instrument in writing executed by or on behalf of both parties.

This Amendment may be executed in any number of counterparts, each of which when executed and delivered constitutes an original of this Amendment, but all the counterparts shall together constitute one and the same agreement.



Dec 18 2008 6:23PM FAX SERVER

08-13555-mg   Doc 2318-1   Filed 12/19/08   Entered 12/19/08 11:25:52   Exhibit A
12/18/2008 5:13 PM   PAGE   3/016   Fax Server   Pg 23 of 30
The Amended Sale Orders   Pg 23 of 30

Exhibit A   P. 1
560/651.7492

Very truly yours,

CES AVIATION IX, LLC

By:

Name: Francine Kittredge

**ACCEPTED AND AGREED:**

PEREGRINE AVIATION SERVICES, INC.

By: _____
Name:
Title: _____

Very truly yours,

CES AVIATION IX, LLC

By: _____
Name: Francine Kittredge

**ACCEPTED AND AGREED:**

PEREGRINE AVIATION SERVICES, INC.

By: _____
Name: _Scott B. Dandeneau_
Title: _President_

**ACCEPTED AND AGREED:**

INSURED AIRCRAFT TITLE SERVICE, INC.

By: _____

Name:  Joan F. Roberts

Title:    Vice President

# EXHIBIT A

## AIRCRAFT SPECIFICATIONS



**BLOOMER deVERE**
G R O U P   A V I A   I N C.

**1987 Dassault Falcon 50**
**Serial Number 179**

| | |
|---|---|
| **AIRFRAME:** 8137.2 Hours | **ENGINES: HONEYWELL TFE731-3D-1C** |
| **Landings:** 4352 | *Engines on MSP Gold* |
| | **Engine 1:** 8021 Hours    4327 Cycles |
| **APU:** 2929.6 Hours | **Engine 2:** 7936.6 Hours    4080 Cycles |
| Honeywell GTCP36-100A | **Engine 3:** 7337.6 Hours    3492 Cycles |

### AVIONICS

- Collins APS 85 Auto Pilot
- Dual Bendix King KTR 950 HF w/ SELCAL
- Dual Collins VHF-22d COMM's w/ 8.33 Spacing
- Collins Pro Line II w/ 4 EFIS Tubes
- Dual Collins VIR-32 NAV's
- Collins TWR-850 Radar w/ TCAS Display
- Dual Collins ADF 60A
- Fairchild A100A CVR
- Dual Collins DME-42

- Artex C406-1 ELT w/ NAV Interface
- Honeywell Mark V EGPWS
- Collins ALT-55B Radar Altimeter
- Dual RMI
- Honeywell TCAS II w/ Change 7
- Dual Honeywell Laseref
- Dual Universal UNS-1E  FMS w/ UNILINK
- Dual Collins MST-67A Mode S Transponder w/ Flight ID

### ADDITIONAL FEATURES

- Sky-Connect Iridium SatCom
- Dual Davtron Clocks
- 15 " LCD Fwd Monitor
- DVD/CD Player
- 20" LCD Aft Monitor Airshow 401
- Four 8" LCD Seat Monitors
- Warming Oven

- Dataports
- XMR-100 XM Radio System
- 115 VAC Outlets
- Tail Light Logo
- Magnastar C-2000 Flight Phone W/ Iridium Sat Phone

### MAINTENANCE

- RVSM
- CAMP
- Engines w/ N1 DEEC

### INTERIOR

Nine passenger seats with jump seat. Aft Lavatory. Four forward club seats. Two aft club seats opposite a three place divan. All seats and divan are covered with tan leather. Tan carpet. White Alcantra sidewalls and headliner. Side rails and tray tables in dark brown veneer. Forward galley is equipped with a coffee maker and warming oven.

### EXTERIOR

Overall white with blue and gray stripes.

*Specifications/descriptions are provided as introductory information and do not constitute representations or warranties of Bloomer deVere or Bloomer deVere client(s). Accordingly, you should rely on your own inspection of the aircraft. Any proposed transaction is subject to final execution of a contract acceptable in form and substance to Bloomer deVere, its client(s), and their counsel.*



**EXHIBIT B**

### DELIVERY CONDITION OF AIRCRAFT

At the Closing, the Aircraft shall be delivered in full conformity and complying with all the items and conditions set forth below, collectively constituting the required "**Delivery Condition**":

1. Free and clear of all Liens;

2. With an FAA Form 8050-2 and a Warranty Bill of Sale;

3. In airworthy condition, with a valid and current Airworthiness Certificate issued by the FAA without restrictions and limitations and on the FAA Civil Aviation Registry;

4. Conforming in all material respects to the Aircraft Specification, including all equipment currently required for operations pursuant to FAR Part 91 and all additional loose and safety equipment currently used or maintained for use on the Aircraft (other than personal items);

5. With all Aircraft Documents original (except that copies shall be acceptable in the case that originals are not required by Dassault and the FAA), complete and continuous, up to date, printed or published in English and in compliance with manufacturer requirements and FAR Part 91;

6. With all inspections, maintenance and repairs performed in accordance with the manufacturer's maintenance, technical or operations manual, and current on its maintenance in accordance with the manufacturer's approved maintenance plan and CAMP and in compliance with all calendar and hourly inspections, landing inspections, time-limited components, applicable FAA Airworthiness Directives and Mandatory Service Bulletins, with time frames for completion that require completion on or prior to the Closing Date;

7. With customary assignments of all remaining manufacturers' warranties (including Airframe, Engines, APU and avionics) and the Dassault Assignment of Warranties executed by Seller, Purchaser and Dassault and with the enrollment in the Honeywell MSP Gold Program with respect to the Engines transferable, current, in good standing and fully paid up as of the Closing Date;

8. With no Material Damage or history of Material Damage;

9. With no Airframe, Engines or APU corrosion beyond allowable limits or in excess of manufacturer's tolerances as stated in the maintenance, technical and/or operations manuals or which otherwise requires a repair constituting Material Damage;



10. In compliance with respect to RVSM, MNPS, RNP5, RNP10, FM Immunity and 8.33 COM performed and completed and the Aircraft Transponder shall meet the Mode S Enhanced Surveillance (EHS) for European operations; and

11. With all Discrepancies corrected, remedied or repaired.

Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to such terms in the Agreement.



## EXHIBIT G

### SCOPE OF INSPECTION

1) Perform a borescope of the Engines and APU.

2) Perform Engine 5pt runs.

3) Inspect the center Engine "S" duct and lateral Engine intakes for cracks and corrosion.

4) Perform a borescope of the wings and center fuel tank.

5) Inspect under the toilet and cockpit for corrosion.

6) Perform general walk around inspection of the Aircraft.

7) Perform operation check of systems.

8) Test flight.

9) Check for fuel leaks.

