**Hearing Date and Time:  January 14, 2009 at 10:00 a.m (Prevailing Eastern Time)**
**Objection Date and Time:  January 9, 2009 at 4:00 p.m (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Alfredo R. Perez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                          :
In re                                     :      Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :      08-13555 (JMP)
                                          :
                   Debtors.               :      (Jointly Administered)
                                          :
                                          :
-----------------------------------------------------------------x
```

## NOTICE OF DEBTORS' MOTION, PURSUANT TO SECTIONS 105(a), 363, AND 365 OF THE BANKRUPTCY CODE, FOR AUTHORIZATION TO (i) ASSUME A SUBSCRIPTION AGREEMENT AND CERTAIN OTHER AGREEMENTS WITH WILTON RE HOLDINGS LIMITED, (ii) AMEND SAID SUBSCRIPTING AGREEMENT, AND (iii) FUND THE CAPITAL COMMITMENT PURSUANT TO SAID SUBSCRIPTION AGREEMENT

PLEASE TAKE NOTICE that a hearing on the annexed motion of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases (together, the "Debtors") for authorization and approval of, among other things, the (i)

assumption of the Amended and Restated Subscription Agreement, dated as of October 20, 2006,

(ii) execution and delivery of Amendment No. 1 to the Amended and Restated Subscription

Agreement by and between Wilton Re Holdings Limited ("Wilton Re"), on the one hand, and

LBHI, on the other hand (the form of which amendment is attached to the motion as "Exhibit

A"), (iii) assumption of the Amended and Restated Members Agreement, dated as of October 20,

2006, (iv) assumption of the Amended and Restated Registration Rights Agreement dated as of

October 20, 2006, and (v) funding of LBHI's capital commitment pursuant to the Amended and

Restated Subscription Agreement (as to be amended by Amendment No. 1) (the "Motion"), all as

more fully described in the Motion, will be held before the Honorable James M. Peck, United

States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs

House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy

Court"), on **January 14, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn:  Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., Jacqueline

Marcus, Esq., and Alfredo R. Perez, Esq., attorneys for the Debtors; (iii) the Office of the United

States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York,

New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto,

Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy

LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq.,

Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured

creditors appointed in these cases; and (v) Skadden, Arps, Slate, Meagher & Flom LLP, Four

Times Square, New York, NY 10036, Attn: Todd E. Freed, Esq. and Kayalyn A. Marafioti, Esq.,

attorneys for Wilton Re, so as to be so filed and received by no later than **January 9, 2009 at**

**4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: December 19, 2009
    New York, New York

                      /s/ Alfredo R. Perez
                      Alfredo R. Perez

                      WEIL, GOTSHAL & MANGES LLP
                      767 Fifth Avenue
                      New York, New York 10153
                      Telephone: (212) 310-8000
                      Facsimile: (212) 310-8007

                      Attorneys for Debtors
                      and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Alfredo R. Perez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                        :
**In re**                               :    **Chapter 11 Case No.**
                                        :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :    **08-13555 (JMP)**
                                        :
                      **Debtors.**      :    **(Jointly Administered)**
                                        :
                                        :
-------------------------------------------------------------------x

## DEBTORS' MOTION, PURSUANT TO SECTIONS 105(a), 363, AND 365 OF THE BANKRUPTCY CODE, FOR AUTHORIZATION TO (i) ASSUME A SUBSCRIPTION AGREEMENT AND CERTAIN OTHER AGREEMENTS WITH WILTON RE HOLDINGS LIMITED, (ii) AMEND SAID SUBSCRIPTION AGREEMENT, AND (iii) FUND THE CAPITAL COMMITMENT PURSUANT TO SAID SUBSCRIPTION AGREEMENT

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors and debtors in possession (together, the

"Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this Motion

and respectfully represent:

## Background

1.　　Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.　　On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.　　On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

## Jurisdiction

4.　　This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**<u>Lehman's Business</u>**

5.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

6.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**<u>Relief Requested</u>**

7.      By this Motion, LBHI seeks authorization, pursuant to sections 105(a), 363(b)(1), and 365 of the Bankruptcy Code and Bankruptcy Rules 6006 and 9014, to (i) assume the Amended and Restated Subscription Agreement, dated as of October 20, 2006, (ii) execute and deliver Amendment No. 1 to the Amended and Restated Subscription Agreement, by and between Wilton Re Holdings Limited ("Wilton Re"), on the one hand, and LBHI, on the other hand (the form of which amendment is attached hereto as "<u>Exhibit A</u>"), (iii) assume the Amended and Restated Members Agreement, dated as of October 20, 2006, (iv) assume the Amended and Restated Registration Rights Agreement, dated as of October 20, 2006 and (v) fund a capital

commitment pursuant to the Amended and Restated Subscription Agreement (as to be amended by Amendment No. 1).[1]

### The Subscription Agreement

The Company

8.    Wilton Re is a reinsurance holding company with three major operating reinsurance subsidiaries: Wilton Reassurance Company, a Minnesota stock life insurance company; Wilton Reassurance Life Company of New York, a New York stock life insurance company; and Wilton Reinsurance Bermuda Limited, a licensed long-term insurer located in Hamilton, Bermuda.

9.    Through these subsidiaries, Wilton Re is engaged in the acquisition of U.S. life insurance risks through: (i) Traditional Life Reinsurance; and (ii) Runoff Solutions.  Through its Traditional Life Reinsurance products, Wilton Re provides responses to the typical needs for reinsurance: risk capacity, capital to fund new business and new business strain.  In this market, Wilton Re reinsures new issues of in-force blocks of term and permanent individual life and annuity products written in the United States.  Wilton Re's Runoff Solutions products are designed to allow insurers reliable secure exits from blocks of life insurance business that are no longer vital to the client's growth and success.  Through Runoff Solutions transactions, Wilton Re acquires closed

---

[1]  A copy of Amendment No. 1 to the Amended and Restated Subscription Agreement is attached hereto as Exhibit A.  Copies of the Amended and Restated Subscription Agreement, the Amended and Restated Members Agreement and the Amended and Restated Registration Rights Agreement have been provided to the Creditors' Committee.  Because these agreements contain confidential or proprietary information, they will be provided to other parties-in-interest only upon the execution of an appropriate confidentiality agreement.

blocks of business or entire companies through indemnity reinsurance and stock acquisitions.

10.    In December 2004, Wilton Re raised $628 million of committed equity capital from various institutional investors, including Trident III (a $1.1 billion private equity fund managed by Stone Point Capital LLC), Vestar AIV Holdings A L.P., and Freidman Fleischer & Lowe Capital Partners II L.P.  Wilton Re's committed capital structure allows the group to access capital over time as needed without the burden to provide investment returns on excess capital.  To date, the entire balance of this initial round of capital commitments has been drawn and received from investors (with funding of the most recent draw of $60.8 million scheduled for December 23, 2008) and the proceeds deployed in the course of Wilton Re's reinsurance operations.

The Terms

11.    LBHI initially acquired an interest in Wilton Re in December of 2007 pursuant to a second-round $300 million funding commitment.  Approximately $180 million of the LBHI commitment was funded prior to the commencement of LBHI's chapter 11 case and the proceeds of these draws have been deployed in the course of Wilton Re's life reinsurance operations.  Under the terms of the Amended and Restated Subscription Agreement, LBHI has a remaining, undrawn subscription commitment of approximate $121.6 million (the "Remaining Commitment") in the first quarter of 2009 (the "Commitment").[2]  The remaining Commitment will be funded in support of Wilton Re's business and under the terms of the Amended and Restated

---

[2] This payment may be made in installments.

Subscription Agreement (as to be amended by Amendment No. 1) by further capital draws during the first quarter of 2009.

12.     Under the terms of the Amended and Restated Subscription Agreement, in October 2006, LBHI committed to acquire up to $300 million of Wilton Re's common stock at a per share price determined based on Wilton Re's GAAP book value per share, subject to certain adjustments set forth in the Amended and Restated Subscription Agreement.

13.     In discussion with Wilton Re, LBHI has been able to negotiate improved terms for the funding of the Remaining Commitment.  Funding of the Remaining Commitment is proposed to be effected at a per share price of $50, representing a 14% discount to the current contractual price as determined pursuant to the terms of the Amended and Restated Subscription Agreement and a 5% discount to Wilton Re's current estimated GAAP book value per share.  Wilton Re's Board of Director and its other investors have already provided consents to this modification to the extent required under the terms of the Amended and Restated Subscription Agreement.

14.     If LBHI fails to timely fund the Remaining Commitment, Wilton Re contends that the terms of the Amended and Restated Subscription Agreement provide for the cancellation of 90% of LBHI's existing ownership interest in Wilton Re and the removal of LBHI's designees from Wilton Re's Board of Directors.  While the automatic stay provided by Section 362 of the Bankruptcy Code might delay or mitigate such action, the outcome of the required litigation is uncertain and likely to be costly to LBHI in both time and money.

15.    Furthermore, failure to timely fund the Remaining Commitment could damage the value of LBHI's existing investment in Wilton Re through lost business opportunities, rating effects and other matters and even if Wilton Re were able to find alternative funding, LBHI's ownership interest would likely be materially diluted.

**Assuming the Subscription Agreement
is an Appropriate Exercise of LBHI's Business Judgment**

16.    Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). In determining whether an executory contract or unexpired lease should be assumed, courts apply the "business judgment" test. *Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures*), 4 F.3d 1095, 1099 (2d Cir. 1993); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially"); *In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006) ("The decision to assume or reject an executory contract is within the sound business judgment of the debtor-in-possession. . . ."). A court should approve the assumption of a contract under section 365(a) of the Bankruptcy Code if it finds that a debtor has exercised its sound business judgment in determining that assumption of an agreement is in the best interests of its estate. *See, e.g.*, *In re Child World, Inc.*, 142 B.R. 87, 89-90 (Bankr. S.D.N.Y. 1992).

17.    LBHI has determined in its sound business judgment that assumption of the Amended and Restated Subscription Agreement is in the best interests of its estate and creditors.  In reaching this conclusion, LBHI evaluated three alternatives with regard to the agreement:

- *Reject the Amended and Restated Subscription Agreement and refuse to fund the Remaining Commitment*.  This alternative has several adverse consequences.  If LBHI refuses to timely fund the Remaining Commitment, Wilton Re contends that the Amended and Restated Subscription Agreement provides for the cancellation of 90% of LBHI's existing ownership interest in Wilton Re, and the removal of LBHI's designees from Wilton Re's Board of Directors.  As noted above, LBHI may be able to delay or mitigate such action through litigation, but such litigation is likely to be costly and its outcome uncertain.  Further, as discussed above, refusing to fund the Remaining Commitment could have other adverse consequences for LBHI's existing ownership interest in Wilton Re.

- *Assume and Assign the Amended and Restated Subscription Agreement to a buyer willing to fund the Remaining Commitment*.  LBHI has determined that it is likely that its existing ownership interest in Wilton Re could only be sold at a significant discount.  This is so because the investment that would be transferred is too small to interest larger insurance companies and thus would likely have to be sold to a private equity firm on less than favorable terms.  In addition, the discounted share price, discussed above, is contractually agreed to specifically with LBHI and thus a transferee would be forced to fund the commitment at a per share price substantially in excess of $50, further reducing the value of the investment.

- *Assume the Amended and Restated Subscription Agreement and Fund the Remaining Commitment*.  LBHI has determined that the Remaining Commitment is a prudent investment with reasonable potential for a return.  It is also appropriate to the LBHI' current circumstances since it could be liquidated when the market returns for something close to value or held for a slightly longer

period (probably 2 – 3 years) at an expected increase in value.  LBHI has reviewed this matter with representative of the Creditors' Committee who supports LBHI's business judgment.

18.     Thus the assumption of the Amended and Restated Subscription Agreement represents a reasonable exercise of LBHI's business judgment and is in the best interests of the Debtors' estates and creditors and, therefore, should be approved.

### Good Business Reasons Support LBHI's
### Decision to Fund the Amended and Restated Subscription Agreement

19.     Pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, the Debtors request authorization for LBHI to execute and deliver Amendment No. 1 to the Amended and Restated Subscription Agreement and provide Wilton Re with approximately $121.6 million pursuant to the Amended and Restated Subscription Agreement.  Section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  The use, sale, or lease of property of the estate, other than in the ordinary course of business, is authorized when there is a "good business reason" that justifies such action.  *See, e.g., In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *In re Allegheny Int'l*, 117 B.R. 171 (W.D. Pa. 1990) (affirming bankruptcy court order allowing debtor to enter financing arrangement because debtor provided good business reason for use of estate property pursuant to section 363(b)).

20.    The Debtors submit that good business reasons support LBHI's execution and delivery of Amendment No. 1 to the Amended and Restated Subscription Agreement and provision of approximately $121.6 million to Wilton Re pursuant to the Amended and Restated Subscription Agreement.  As discussed above, failure to timely provide the funding called for in the Amended and Restated Subscription Agreement has the potential to diminish LBHI's existing ownership interest in Wilton Re by 90%, LBHI has negotiated a discounted price for the shares to be acquired under the Amended and Restated Subscription Agreement,  and Wilton Re's anticipated business performance is likely to provide LBHI with a reasonable return on its investment over a relatively short period of time.

21.    Accordingly, for the foregoing reasons, the Debtors request authority, to (i) assume the Amended and Restated Subscription Agreement, (ii) fund the Commitment pursuant to the Subscription Agreement, (iii) execute and deliver Amendment No. 1 to the Amended and Restated Subscription Agreement, and (iv) fund the Remaining Commitment pursuant to the Amended and Restated Subscription Agreement (as to be amended by Amendment No. 1).

### Assuming the Amended and Restated Members Agreement and the Amended and Restated Registration Rights Agreement is an Appropriate Exercise of LBHI's Business Judgment

22.    The Amended and Restated Members Agreement and the Amended and Restated Registration Rights Agreement, together with the Amended and Restated Subscription Agreement, and Amendment No. 1 to the Amended and Restated Subscription Agreement, govern the terms and conditions of LBHI's existing ownership interest, as well as that of other investors in Wilton Re, and would govern the investment

in Wilton Re acquired through the funding of the Remaining Commitment.  For the

foregoing reasons, LBHI requests authority to assume the Amended and Restated

Members Agreement and the Amended and Restated Registration Rights Agreement.

## **Notice**

23.     No trustee or examiner has been appointed in these chapter 11

cases.  In compliance with Bankruptcy Rules 6006(c) and 9014, LBHI has served notice

of this Motion on Wilton Re.  In addition, LBHI has served notice of this Motion in

accordance with the procedures set forth in the order entered on September 22, 2008

governing case management and administrative procedures for these cases [Docket No.

285] on (i) Wilton Re; (ii) the U.S. Trustee; (iii) the attorneys for the Creditors'

Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue

Service; (vi) the United States Attorney for the Southern District of New York; and (vii)

all parties who have requested notice in these chapter 11 cases.  LBHI submits that no

other or further notice need be provided.

24.     No previous request for the relief sought herein has been made by

LBHI to this or any other court.

WHEREFORE LBHI respectfully requests that the Court grant the

relief requested herein and such other and further relief as it deems just and proper.

Dated: December 19, 2008
      New York, New York


           /s/ Alfredo R. Perez_____
           Alfredo R. Perez

           WEIL, GOTSHAL & MANGES LLP
           767 Fifth Avenue
           New York, New York 10153
           Telephone: (212) 310-8000
           Facsimile: (212) 310-8007

           Attorneys for Debtors
           and Debtors in Possession

**Exhibit A**
**(Form of Amendment No. 1 to the Amended and Restated Subscription Agreement)**

# WILTON RE HOLDINGS LIMITED
AMENDMENT NO. 1 TO THE
AMENDED AND RESTATED SUBSCRIPTION AGREEMENT
(this "**Amendment**")

Reference is made to that certain Amended and Restated Subscription Agreement, dated as of October 20, 2006 (the "**Subscription Agreement**"), by and among Wilton Re Holdings Limited, a Bermuda holding company (the "**Company**"), and the members of the Company party thereto (each individually a "**Subscriber**" and, collectively, the "**Subscribers**"), including, without limitation, Lehman Brothers Holdings Inc. ("**Lehman Brothers**"). Capitalized terms used herein without definition have the meanings ascribed thereto in the Subscription Agreement. All references to the Subscription Agreement, whether in this Amendment or the Subscription Agreement, as amended by this Amendment.

## WITNESSETH:

WHEREAS, under the terms of the Subscription Agreement, Lehman Brothers has subscribed for and committed to purchase $300 million of the Company's Class A Common Shares with an outstanding Undrawn Subscription Commitment (as such term is used in the Subscription Agreement) as of the date hereof of $121,634,509 (the "**Final Funding Amount**"); and

WHEREAS, on September 15, 2008, Lehman Brothers filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") seeking relief under Chapter 11 of the United States Bankruptcy Code (the "**Code**"); and

WHEREAS, subject to any consent or approval of the Bankruptcy Court to the extent required, Lehman Brothers has proposed to accept and affirm its obligations under the terms of the Subscription Agreement and to assume such agreement as provided under Section 365 of the Code; and

WHEREAS, as a condition to such acceptance, affirmation and assumption, Lehman Brothers has requested that certain changes be effected to the terms of the Subscription Agreement as set forth herein; and

WHEREAS, accordingly, Lehman Brothers and the Company have agreed to amend the Subscription Agreement as set forth herein;

NOW, THEREFORE, in consideration of the mutual promises and covenants herein contained, the parties to this Amendment do hereby agree as follows:

1. <u>Modifications to the Subscription Agreement</u>.

Section 2(k) of the Subscription Agreement is modified by replacing this provision with the following:

(a) "Each Subscriber's '**Undrawn Subscription Commitment**' means, as of any date of determination, such Subscriber's Subscription Commitment minus the sum of all (i) Draws requested to be funded pursuant to a Draw Notice by such Subscriber pursuant to this Agreement and (ii) amounts paid to the Company as consideration for Class A Common Shares in respect of the exercise of such Subscriber's Preemptive Rights (as

such term is defined in the Amended and Restated Members Agreement) when the per share purchase price of the Class A Common Shares in such Preemptive Rights transaction(s) is less than $50.00 per share."

(b)  Section 2(m) of the Subscription Agreement is modified by adding to the end of such Section the following sentence:

> "Notwithstanding the foregoing, the purchase price per share for all purchases (other than the Lehman Brothers Initial Funding Amount) by Lehman Brothers of Class A Common Shares pursuant to the Lehman Brothers Subscription Commitment effected on or after the Effective Date shall be $50.00."

(c)  A new Section 2(s) is added to the Subscription Agreement as follows:

> "Notwithstanding any provision of this Agreement to the contrary, on and after the Effective Date, Subsequent Draws will be effected with respect to the Total Undrawn Subscription Commitment of Lehman Brothers without additional funding by Subscribers other than Lehman, it being understood that the Total Undrawn Subscription Commitment of Members other than Lehman Brothers as of the date hereof is zero by virtue of prior Draws made without participation by Lehman Brothers."

2.  <u>Assumption by Lehman Brothers of the Prior Agreements</u>.  Subject only to the occurrence of the Effective Date (as defined below), Lehman Brothers hereby undertakes and agrees that pursuant to Section 365 of the Code, Lehman Brothers has assumed or will assume and agrees to perform under, each of the Subscription Agreement as amended by the Amendment, the Amended and Restated Members Agreement and the Amended and Restated Registration Rights Agreement (the "**Section 365 Acceptance**").

For avoidance of doubt, notwithstanding any other provision in this Subscription Agreement, the Amended and Restated Members Agreement and the Amended and Restated Registration Rights Agreement, upon payment by Lehman Brothers (pursuant to one or more Draw Notices) to the Company of the aggregate Final Funding Amount, Lehman Brothers shall have satisfied in full all of its obligations to acquire equity interests in the Company or to otherwise provide the Company with financing in any form.

3.  <u>Effective Date</u>.  For purposes of this Amendment, the term "**Effective Date**" means the first Business Day following the date upon which (a) Lehman Brothers shall have procured any consent or approval, as the case may be, of the Bankruptcy Court to the extent required with respect to the Section 365 Acceptance; provided, however, that any such consent or approval shall be in form and substance reasonably acceptable to the Company and shall remain in full force and effect, and (b) the Company shall have procured the consent or approval of any other Person (including any consent required by the Board and any Member) to the extent required for this Amendment to be or become effective; provided, however, that any such consent or approval shall be in form and substance reasonably acceptable to Lehman Brothers and shall remain in full force and effect.  This Amendment shall be terminated and have no force or effect whatsoever in

the event that the Effective Date shall not have occurred on or prior to February 28, 2009 or such later date as to which the parties may agree in writing.

4.    <u>Other</u>.    Unless otherwise expressly provided herein, the Subscription Agreement remains in full force and effect, without modification or amendment.  This Amendment shall be governed, construed and enforced in accordance with the laws of the State of New York, without reference to any principles of conflicts of law thereof, except New York General Obligation Law Section 5-1401 and except for the applicable provisions of the Code as applied by the Bankruptcy Court.  This Amendment may be signed in any number of counterparts which taken together shall constitute one and the same instrument.  The headings and other captions in this Amendment are for convenience and reference only and shall not be used in interpreting, construing or enforcing any provision of this Amendment.

**IN WITNESS WHEREOF**, the parties hereto have executed and delivered this Amendment as of the dates noted below.

**WILTON RE HOLDINGS LIMITED**

By:_____

Name:  Chris C. Stroup

Title:    Chairman and Chief Executive Officer
Date:

**LEHMAN BROTHERS HOLDINGS INC.**

By:_____

Name:

Title:
Date:

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                  :

In re                              :       **Chapter 11 Case No.**
                                    :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :       **08-13555 (JMP)**
                                    :

                    **Debtors.**        :       **(Jointly Administered)**
                                    :
                                    :

---------------------------------------------------------------x

**ORDER GRANTING LBHI'S MOTION, PURSUANT
TO SECTIONS 105(a), 363(b)(1), AND 365 OF THE BANKRUPTCY
CODE, FOR AUTHORIZATION TO (i) ASSUME A
SUBSCRIPTION AGREEMENT AND CERTAIN OTHER
AGREEMENTS WITH WILTON RE HOLDINGS LIMITED, (ii) AMEND
SAID SUBSCRIPTION AGREEMENT, AND (iii) FUND THE CAPITAL
COMMITMENT PURSUANT TO SAID SUBSCRIPTION AGREEMENT**

        Upon the motion, dated December 19, 2009 (the "<u>Motion</u>"), of Lehman

Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors-in-possession (collectively, the "<u>Debtors</u>" and,

together with their non-debtor affiliates, "<u>Lehman</u>"), pursuant to sections 105(a), 363 and

365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 6006 and

9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for

authorization and approval of, among other things, the (i) assumption of the Amended

and Restated Subscription Agreement, dated as of October 20, 2006, (ii) execution and

delivery of Amendment No. 1 to the Amended and Restated Subscription Agreement by

and between Wilton Re Holdings Limited ("<u>Wilton Re</u>") on the one hand, and LBHI, on

the other hand, (iii) assumption of the Amended and Restated Members Agreement, dated

as of October 20, 2006, and (iv) assumption of the Amended and Restated Registration

Rights Agreement, dated as of October 20, 2006, and (v) funding of LBHI's capital

commitment pursuant to the Amended and Restated Subscription Agreement (as to be

amended by Amendment No. 1), all as more fully described in the Motion; and the Court

having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy

Judges for the Southern District of New York Any and All Proceedings Under Title 11,

dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue

being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided in accordance with Bankruptcy Rules

6006 and 9014 and the procedures set forth in the order entered September 22, 2008

governing case management and administrative procedures [Docket No. 285] to (A)

Wilton Re; (B) the United States Trustee for the Southern District of New York; (C) the

attorneys for the Official Committee of Unsecured Creditors; (D) the Securities and

Exchange Commission; (E) the Internal Revenue Service; (F) the United States Attorney

for the Southern District of New York; and (G) all parties who have requested notice in

these chapter 11 cases, and it appearing that no other or further notice need be provided;

and a hearing having been held to consider the relief requested in the Motion; and the

Court having found and determined that the relief sought in the Motion is in the best

interests of LBHI, its estate and creditors, and all parties in interest and that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and

after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that LBHI's assumption of the Amended and Restated Subscription Agreement, the Amended and Restated Members Agreement and the Amended and Restated Registration Rights Agreement is each hereby approved pursuant to section 365(a) of the Bankruptcy Code, and the Amended and Restated Subscription Agreement, the Amended and Restated Members Agreement and the Amended and Restated Registration Rights Agreement is each hereby assumed; and it is further

ORDERED that there are no existing defaults under any of the Amended and Restated Subscription Agreement, the Amended and Restated Members Agreement and the Amended and Restated Registration Rights Agreement that must be cured pursuant to section 365(b) of the Bankruptcy Code; and it is further

ORDERED that, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, LBHI is authorized, but not required, execute and deliver Amendment No. 1 to the Amended and Restated Subscription Agreement, and fund the Remaining Commitment; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: January ___, 2009
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE