**Hearing Date: December 22, 2008 at 10:00 a.m.**

Dennis F. Dunne
Dennis C. O'Donnell
Evan R. Fleck
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                  :

In re:                            :        Chapter 11 Case No.
                                    :

LEHMAN BROTHERS HOLDINGS INC., et al.,   :        08-13555 (JMP)
                                    :

                Debtors.         :        (Jointly Administered)
                                    :
-------------------------------------------------------------------x

## OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF OMX TIMBER FINANCE INVESTMENTS II, LLC FOR LIMITED RELIEF FROM THE AUTOMATIC STAY

        The Official Committee of Unsecured Creditors (the "Committee") appointed in

the chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors-in-

possession (collectively, the "Debtors") hereby objects (the "Objection") to the Motion Of OMX

Timber Finance Investments II, LLC ("OMX") For Limited Relief From The Automatic Stay,

dated December 2, 2008 [Docket No. 2023] (the "Motion") and respectfully represents as

follows:

### PRELIMINARY STATEMENT

        1.        Fashioned as a motion for *limited* relief from the automatic stay, OMX

asks this Court to assist it in creating a nearly $1 billion claim against LBHI's estate.  Absent

from the Motion is any recognition (let alone justification) of the significant cost to LBHI and

manifest harm to unsecured creditors that would be occasioned by the relief requested. The Guaranty (as defined below)_is unusual. It is not an unconditional guarantee of payment; rather, it is highly dependent on certain acts occurring by certain specified dates. Accordingly, the Motion does not present the garden variety fact pattern. For instance, it is not a situation where a creditor is seeking to lift the automatic stay to (i) move against or protect collateral which secures an otherwise liquidated claim or (ii) litigate a contingent claim in another forum. OMX is not seeking to preserve the *status quo* between the parties. Rather, the very act that violates the automatic stay (and that the Motion seeks authority to undertake) would crystallize the claim. Without the relief requested, there would be no claim against LBHI. The choice is stark: were the Motion granted, the unsecured claim pool may increase in size by $1 billion. If it is denied, there will be no guaranty claim against LBHI and the harm to creditors averted.

2.       The relief sought by OMX is extraordinary. The language of the October 29, 2004 guaranty (the "<u>Guaranty</u>"),[1] states unambiguously that in order for OMX to obtain a right to payment, it must make a timely, written notice of demand in accordance with certain specified requirements. Within the five-page Guaranty, the concept of written notice is repeated five (5) times, each time to the effect that "Guarantor shall only be liable to Beneficiary . . . provided a Demand was delivered to Guarantor within the notice period."[2] The written notice is not merely an administrative act; it does not simply notify the guarantor of OMX's desire to exercise remedies against the Guarantor. Rather, it creates the obligation in and of itself. If no notice is provided by December 27, 2008, OMX will have no claim.

3.       The Guaranty is, together with the related special purpose entity structure, upon information and belief, one component of a sophisticated transaction by which OMX

---

[1]       Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Guaranty and Note (as defined below).

[2]       Guaranty, ¶¶ 3, 3(i), 3(ii), 3(iii).

endeavored to obtain a tax-advantaged status.  OMX does not contend that the Guaranty is

ambiguous or that it failed to understand the terms of the agreement when it elected to step into

the Obligor's shoes.  Nor does OMX dispute that the automatic stay prevents it from satisfying

the condition precedent to its claim for payment under the Guaranty.  Nevertheless, without any

legal basis, OMX asks this Court to ignore the fundamental nature of this Guaranty.  If the

Motion is granted, LBHI would lose the benefit of its bargain and be saddled with a broader

Guaranty than the one provided: the Guaranty simply does not provide that the Guarantor would

become obligated to pay the Guaranteed Obligations immediately upon the Obligor's default.

Indeed, it is for precisely this reason (i.e., the predicate acts triggering the liability of a guarantor

might be prohibited by the automatic stay) that most guaranties relating to debt for borrowed

money are unconditional.  That being said, OMX cannot change the operative facts and should

be held to the legal consequences that flow from them.

      4.     Sophisticated entities such as OMX are aware that immediately upon the

filing of a petition in bankruptcy, a debtor-in-possession is protected by the automatic stay and

its counterparties are prohibited from taking any action to collect pre-petition debts.  In other

sections of the Guaranty, the parties even contemplate the effect of a bankruptcy (of the

Obligor).  Notwithstanding this recognition, the Guaranty is plainly written to require that OMX

serve a substantive notice on LBHI to create a right to payment thereunder.  If a timely notice is

not delivered, "Guarantor shall have no liability to Beneficiary for any Guaranteed Obligations

for which a Demand is not delivered to Guarantor within the notice periods set forth in [the

Guaranty]."[3]

      5.     OMX cannot satisfy the legal standard for obtaining relief from the

automatic stay, and makes only a perfunctory attempt to do so.  OMX's claim that "no harm will

---

[3]     Guaranty at ¶ 3.

result to the estates from granting the relief sought herein" is disingenuous.  The relief requested by OMX would come at great cost to the unsecured creditors of LBHI's estate, by adding a nearly $1 billion claim to the claims pool.  In addition, if the Court were to grant OMX the relief it seeks, countless other counterparties can reasonably be expected to come forward demanding similar relief to render them immune from the automatic stay in effect in these cases.

6.    Because OMX has not demonstrated any legal basis for the Court to prefer it over other disappointed counterparties who, in hindsight, wish they had drafted around the automatic stay, the Committee respectfully submits that the Motion should be denied.

## **BACKGROUND**

7.    On October 29, 2004, Boise Land & Timber II, LLC ("Boise II") issued an installment note (the "Note") to Boise Cascade Corporation in the amount of $817.5 million.  Also on October 29, 2004, LBHI issued the Guaranty to Boise Cascade Corporation with respect to the Note.[4]

8.    The Note, which matures on January 29, 2020,[5] requires Boise II to make semi-annual interest payments, on April 29 and October 29 of each year.[6]  The Note defines Events of Default to include:  (i) failure of Boise II to pay any amounts due within three business days of the due date; and (ii) the insolvency, reorganization, liquidation or similar occurrence in respect of LBHI.[7]  The Note provides that, so long as the Guaranty is in effect and LBHI has not failed to honor any timely and proper demand for payment thereunder, the Holder shall not have

---

[4]    The Motion asserts, but fails to document, that OfficeMax Incorporated, as successor to Boise Cascade Corporation, assigned the Note and Guaranty to OMX.

[5]    Note, ¶ 2.

[6]    Id., ¶ 1.

[7]    Id., ¶ 6.

the right accelerate the Maturity Date, or exercise any other rights and remedies under the Note at law or in equity.[8]

9.      The Guaranty guarantees payments of principal and interest under the Note.  However, the Guaranty explicitly provides that LBHI shall not have any liability under the Guaranty unless it receives timely demand notices:  **"Guarantor shall have no liability to Beneficiary for any Guaranteed Obligations for which a Demand is not delivered to Guarantor within the notice periods set forth [herein]."**[9]  The Guaranty requires its beneficiary to make a written demand ("Demand") for payment of (a) interest within sixty days of the failure by Boise II to make such interest payment, and (b) principal and interest upon acceleration of the Maturity Date within one hundred twenty days of an Event of Default.[10]

10.      On September 15, 2008, and periodically thereafter, the Debtors commenced these chapter 11 cases.  According to OMX, on October 29, 2008, Boise II failed to make a scheduled interest payment under Note.[11]  To date, no Demand has been delivered to LBHI under the Guaranty.

## OBJECTION

**A.    Serving Demand Notices on Debtors
Would Violate the Automatic Stay**

11.      Section 362 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") prohibits, among other things, any act to obtain possession or control of property of a debtor's estate and any attempt to collect a pre-petition debt.  11 U.S.C. § 362(a)(3) and (a)(6).[12]  The automatic stay is generally recognized as the cornerstone

---

[8]      Id., ¶ 7.
[9]      Guaranty, ¶¶ 3, 3(i), 3(ii), 3(iii).
[10]     Id., ¶¶ 3(a) and 3(b).
[11]     Motion, ¶ 4.
[12]     Sections 362(a)(3) and 362(a)(6) of the Bankruptcy Code provide that:

protection of debtors from their creditors during the chapter 11 process and is applied liberally to
allow debtors the opportunity to reorganize free from creditor harassment.

12.     The stay of actions against debtors is "one of the fundamental debtor
protections provided by the bankruptcy laws" and "it affords debtors a 'breathing spell' from the
collection process . . . . "  Eastern Refractories Co. v. Forty Eight Insulations Inc., 157 F.3d 169,
172 (2d Cir. 1998) (internal quotations and citations omitted); see also Teachers Ins. & Annuity
Ass'n of Am. v. Butler, 803 F.2d 61, 64 (2d Cir. 1986); CAE Indus. Ltd. v. Aerospace Holdings
Co., 116 B.R. 31, 32 (S.D.N.Y. 1990).

13.     As a fundamental debtor protection, the scope of the automatic stay is
broad.  AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.), 117 B.R. 789, 798 (Bankr.
S.D.N.Y. 1990) ("Congress intended that the scope of the automatic stay be broad in order to
effectuate its protective purposes on behalf of both debtors and creditors."); Eastern Refractories
Co., 157 F. 3d at 172; In re Enron Corp., et al., 306 B.R. 465. 475 (Bankr. S.D.N.Y. 2004) ("The
scope of the automatic stay is broad.").

14.     Courts in this and in other jurisdictions have consistently held that the
automatic stay prohibits the act of mailing post-petition demand letters to debtors.  See In re
Enron Corp. et. al., 300 B.R. 201, 211 (Bankr. S.D.N.Y. 2003) ("Demand Letters violate the
automatic stay afforded the Debtors . . . resulting in such letters being deemed void."); In re
McCain, no. 03-04624, 2004 WL 5272234, at *2 (Bankr. D. Idaho, Aug. 19, 2004) (noting post-

---

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 .
. . operates as a stay, applicable to all entities, of --
    (3) any act to obtain possession of property of the estate or of property from the estate or to
    exercise control over property of the estate;
    (6) any act to collect, assess, or recover a claim against the debtor that arose before the
    commencement of the case under this title;

petition mailing of collection letters to debtors "is an obvious violation of the Bankruptcy Code"); In re Chavis, 213 B.R. 462, 463-64 (Bankr. E.D.N.C. 1997) (noting post-petition, pre-discharge demand letters sent by creditors violate the automatic stay); In re Shealy, 90 B.R. 176, 179 (Bankr. W.D.N.C. 1988) (holding tax commissioner's demand letters willfully violated the automatic stay, and awarding compensatory damages, attorneys' fees and costs to debtors).

15.    Accordingly, as the Motion acknowledges,[13] OMX is enjoined from mailing or serving any Demand on the Debtors with respect to the Guaranty.

**B.    Cause Does Not Exist to Lift Automatic Stay to
Allow OMX to Serve Demand Notices on Debtors**

16.    Parties may be granted relief from the automatic stay, but only upon a showing of cause. See 11 U.S.C. § 362(d)(1). Assuming that the commencement of LBHI's chapter 11 case is not "cause" in and of itself, OMX has not shown that cause exists for this Court to grant relief from the automatic stay under the present circumstances.

17.    A party seeking relief from the automatic stay has the burden of demonstrating cause for such relief. See Sonnax Indus., Inc. v. Tri Component Prods. Corp (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1285 (2d Cir. 1990). Accordingly, "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." Id.

18.    Courts in the Second Circuit consider twelve factors, delineated in the Sonnax decision, to determine whether cause exists to lift or modify the automatic stay.[14] The

---

[13]    Motion, ¶ 8.

[14]    The Second Circuit in Sonnax adopted the following factors: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for a defense; (6) whether the action primarily involves third parties; (7) whether litigation in another forum

Sonnax factors demonstrably weigh against granting OMX relief from the automatic stay under

the circumstances presented in the Motion.[15]  Indeed, none of the factors support a showing of

"cause" with respect the Guaranty.  To the contrary, at least one factor mandates maintaining the

automatic stay as to OMX, particularly given the risk of harm to the estates.

19.    According to the Motion, only one Sonnax factor, the "impact of the stay

on the parties and the balance of harms," favors lifting the automatic stay to allow OMX to issue

Demand on LBHI.[16]  The Committee contends that even this factor militates in favor of denial of

the Motion.

20.    The Motion asserts that cause exists to lift the automatic stay because

OMX will be considerably harmed if stay relief is not granted.[17]  The alleged harm the Motion

asserts is OMX's inability to "preserve its rights to collect under the Guaranty."[18]  However,

OMX has no such rights.  The Guaranty does not provide OMX with the right to collect in the

event of LBHI's bankruptcy.  Rather, the Guaranty provides OMX with the limited right to

payment if, and only if, OMX is able to serve Demand within the Guaranty's notice periods.  As

OMX has not yet issued such Demands and is not permitted to do so, it has no right to collect

from LBHI.

---

would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the stay on the parties and the balance of harms.  In re Sonnax Indus., Inc., 907 F.2d at 1286 (citing In re Curtis, 40 B.R. 795 (Bankr. D. Utah 1984)).

[15]    All twelve Sonnax factors will not be relevant in every case, nor must a court accord equal weight to each element.  See In re Enron, 306 B.R. at 476 (citing Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 142 (2d Cir. 1999)); Burger Boys, Inc. v. South St. Seaport P'Ship (In re Burger Boys, Inc.), 183 B.R. 682, 688 (S.D.N.Y. 1994); In re N.Y. Med. Group, P.C., 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001).

[16]    Motion, ¶ 11.
[17]    Id., ¶ 12.
[18]    Id.

21.    Moreover, under the Guaranty, OMX does not have the right to lift the automatic stay to issue such Demands.  The original Beneficiary to the Guaranty did not bargain for protection in the event of its bankruptcy and easily could have done so, by simply following the more common unconditional form of guaranty.  Presumably, the Beneficiary could have bargained for a standard clause in the Guaranty pursuant to which the Guarantor waived written notice of a demand for payment and the obligation would have accelerated automatically, or the Beneficiary could have demanded credit support in the form of a third party letter of credit. OMX must live with the agreement to which it is now a party, pursuant to which it has no right to collect from LBHI.

22.    Without support, the Motion also asserts that the Debtors' estates will not be harmed by lifting the automatic stay to allow OMX to issue the Demands.[19]  This is demonstrably incorrect.  Currently, the Committee is not aware of any LBHI liability to OMX. If the Motion is granted, LBHI will potentially be liable to OMX for $817,500,000.  An $815 million liability where one previously did not exist is a substantial harm to the estate and its creditors.

23.    In addition, and equally as significant, many other contract counterparties would also benefit from a reformation of their pre-petition agreements with the Debtors.  By correcting the infirmities of the Guaranty, the Court would be signaling to other contract counterparties that they too should seek judicial relief to elevate their own positions in these chapter 11 cases, which is an untenable result.

24.    OMX fails to bring to the Court's attention the relevant case law.  See In re Texaco, Inc., 73 B.R. 960 (Bankr. S.D.N.Y. 1987); In re Metro Square; No. 4-88-2117, 1988 WL 86679 (Bankr. D. Minn., Aug. 10, 1988).  In Texaco, this Court refused to lift the automatic

---

[19]    Id., ¶¶ 13-15.

stay to permit noteholders to issue notices of acceleration, which notices would have enabled the noteholders to lock in higher interest rates before the debtor announced a rate reduction.  In re Texaco Inc., 73 B.R. at 968-69.  Like OMX, the Texaco noteholders argued that issuance of the notices would not be an act to collect, assess, or recover claims against debtors, but rather would be a ministerial act intended to preserve their rights, and prevent them from lapsing.  Id. at 967-68.  They further argued that the automatic stay should only be used as a shield, not a sword.  Id. at 968.  In rejecting these arguments and denying the lift stay motion, the Court held that commencement of a chapter 11 case cannot, without more, be cause for lifting the automatic stay to permit issuance of notices of acceleration.  Id. at 967.  Moreover, the Court held that issuance of the notices of acceleration went beyond preserving the *status quo*, because it would have enhanced the claimant's position.  Id. at 968.

25.    The facts of In re Metro Square are also instructive.  In Metro Square, an indenture trustee sought relief from the automatic stay to issue notices of acceleration to the debtor so that the indenture trustee could pursue remedies against the non-debtor guarantor. 1988 WL 86679 at *2.  Citing Texaco, the Bankruptcy Court for the District of Minnesota rejected the trustee's argument that (i) issuing the notices would not affect the bankruptcy case, and (ii) it was not seeking any affirmative relief against the debtor.  Id.  Even though the indenture accelerated automatically pursuant to its terms, the Court held that the trustee could not take overt steps to accelerate the debt, including sending notices of default.  Id. at *5.  Instead, the trustee's remedy was to file a claim for the full amount of the unmatured debt.  Id.  The Metro Square court also noted that it had the power under Bankruptcy Code section 105 to enjoin the trustee's notice.  Id. at *4.  Thus, even where the debt had accelerated automatically and the

non-debtor was seeking to memorialize such acceleration according to the terms of the indenture, the court recognized the importance of the automatic stay and denied the motion.

**C.     The Guaranty Should Be
Enforced According to Its Terms**

26.     Granting relief from the automatic stay would effect a reformation of the Guaranty for the benefit of OMX and at significant cost to the estates.  There is no dispute that, in stark contrast to the provisions of the Guaranty under which the Guarantor elected to waive its rights to notice, the Guaranty absolutely requires that a "written notice of demand" be served on LBHI.[20]  "Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed."  Cruden v. Bank of New York, 957 F.2d 961, 976 (2d Cir. 1992) (citations omitted).[21]  "A court may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case."  Id. (citations omitted).  "In its efforts to preserve the parties' rights and the status quo, the court must be careful not to alter the terms of the agreement.  The parties having agreed upon their own terms and conditions, the courts cannot change them and must not permit them to be violated or disregarded."  Metropolitan Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990) (citations and quotation marks omitted).  "Here, the parties were sophisticated and dealing with each other at arm's length . . . which argues even more strongly for the Court not to rewrite the plain intent of the parties for any purpose, including, for example, a sense that they should have entered into some other type of agreement."  Delphi Corporation v. Appaloosa Management L.P. (In re Delphi Corp.),  No. 05-44481, 2008 WL 3486615, at *12 (Bankr S.D.N.Y., Aug. 11, 2008).

---

[20]     Guaranty ¶ 3.
[21]     The Guaranty is governed by the laws of the State of New York.  See Guaranty, ¶ 10.

27.     The impact of the automatic stay in this instance can be analogized to circumstances that arise in non-bankruptcy contexts.  Under New York contract law, where, at the time of entering into a contact, a party is (or should be) cognizant of the risk that intervening law may diminish the benefits it seeks, but fails to bargain for provisions addressing such risk, New York courts will not reform the contract.  See J. Friedman Construction Co. v. North Lake Estates, 13 Misc.2d 823, 826 (N.Y. Sup. Ct. 1958).  In North Lake Estates, a local planning board's application of zoning laws interfered with a real property purchaser's subdivision plans, by requiring the purchaser to complete improvements to the property prior to approving a subdivision map.  Id.  The purchaser was aware of the risk, at the time it entered into a contract for the property, of the planning board's option to require the purchaser to complete improvements prior to approving a subdivision map, but the purchaser failed to bargain for a right to re-convey the property if such option was exercised and enforced by the planning board. Id. at 824-25.  In refusing to reform the contract and permit the purchaser to re-convey the property, the court noted that "[i]t is fundamental that agreements must be enforced as written." Id. at 826.

**D.     Denial of the Motion Will Yield
        Neither Unjust nor Inequitable Results**

28.     While the Committee recognizes that OMX may not reap the rewards of its tax advantaged structure if the automatic stay is not lifted, OMX is not alone in sharing the burdens of the chapter 11 process.  Bankruptcy proceedings have outcomes that frequently are unsatisfactory and financially detrimental to individual creditors.  As the Second Circuit has noted, "unsecured creditors, are nearly always frustrated . . . where contracts are dishonored, investments are lost, and business disappear." Superintendent of Insurance for NY v. Ochs (In re First Central Fin. Corp.), 377 F.3d 209, 217 (2d Cir. 2004).  However, while an unsecured

creditor "may chafe at being required to accept less than it was otherwise entitled to receive under [an] Agreement, the short – and conclusive – answer is that this is not injustice, it is bankruptcy." Id.

29.     The Supreme Court has also recognized this reality, but instructs that courts should still enforce the policies and protections of the Bankruptcy Code. "Our unwillingness to soften the import of Congress' chosen words even if it believes the words lead to a harsh outcome is longstanding." Lamie v. U.S. Trustee, 540 U.S. 526, 538 (2004) (enforcing plain language of sections 330 and 327 of the Bankruptcy Code in denying attorney compensation for services performed after conversion of case from chapter 11 to chapter 7, where attorney was properly retained by the debtor pre-conversion but was not re-retained by the trustee post-conversion.).

30.     Here, the intersection of the Guaranty's Demand requirements and the automatic stay's broad protections against acts to collect pre-petition claims may appear to produce a harsh result for OMX. Such result, however, is neither unjust nor inequitable. OMX's predicament is the product of a bargained-for agreement between sophisticated parties.

**WHEREFORE**, the Committee respectfully requests that the Court (i) sustain the

Objection; (ii) deny the Motion in its entirety; and (iii) grant the Committee such other relief as

is just.


Dated:    New York, New York
          December 19, 2008


                            **MILBANK, TWEED, HADLEY & McCLOY LLP**

                            By /s/ Dennis F. Dunne
                               Dennis F. Dunne
                               Dennis C. O'Donnell
                               Evan R. Fleck
                               1 Chase Manhattan Plaza
                               New York, NY 10005
                               Telephone:  (212) 530-5000

                               Counsel for Official Committee of Unsecured
                               Creditors of Lehman Brothers Holdings Inc., et al.