**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| In re | Chapter 11 Case No. |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

---------------------------------------------------------------x
In re                                                    :    Chapter 11 Case No.
                                                         :
LEHMAN BROTHERS HOLDINGS INC., *et al.*    :    08-13555 (JMP)
                                                         :
              Debtors.                             :    (Jointly Administered)
---------------------------------------------------------------x

**ORDER** ~~UNDER 11 U.S.C. §§ 105(a), 363, AND 365 AND~~**FEDERAL RULES OF
BANKRUPTCY PROCEDURE 2002, 6004 AND 6006** AUTHORIZING AND
APPROVING ~~(A) THE~~**DEBTOR'S** SALE
OF PURCHASED ASSETS ~~FREE AND CLEAR OF INTERESTS AND (B)~~**AND**
ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES **IN CONNECTION
WITH SALE OF LEHMAN BROTHERS' INVESTMENT MANAGEMENT DIVISION**

Upon the motion, dated October 6, 2008 (the "Motion") (Docket No. 694), of Lehman

Brothers Holdings Inc. ("LBHI")~~, as debtor and debtor~~ and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors in possession (collectively, the "Debtors" and, together

with ~~its~~their non-debtor affiliates, ~~the "Debtors")~~"Lehman"), for ~~orders~~an order, pursuant to ~~11

U.S.C. §§~~sections 105, 363, ~~364(c)(1)~~and 365 ~~and Fed. R. Bankr. P.~~of title 11 of the United

States Code (the "Bankruptcy Code") and Rules~~") 2002, 6004, 6006, 9008 and 9014 (A)

approving the Amended and Restated Purchase Agreement, dated October 3, 2008, among LBHI

and certain of its subsidiaries (collectively, the "Sellers"), and IMD Parent LLC (or its designee,

the "Purchaser") (as same may be subsequently modified, amended or clarified, the~~

"Agreement")~~‡ and the transactions contemplated thereby; (B) authorizing the Purchased Assets free and clear of all Interests (as defined below) in accordance with, and on the terms of, the Agreement (the "Transaction"); (C) authorizing the Sellers'~~ 2002, 6003, 6004, 6006, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving, inter alia, the sale of the Debtors' assets owned, held, or used primarily in connection with Lehman's investment management business and the assumption and sublease or the assumption and assignment ~~to Purchaser, pursuant to and in accordance with the Agreement, of those~~of certain executory contracts and unexpired leases ~~identified as Purchased Contracts and Transferred Real Property Leases, free and clear of all Interests; and (D) authorizing the assumption and sublease of the Subleased Real Property Leases free and clear of all Interests; and (E) authorizing the assumption by Purchaser of certain liabilities of the Sellers pursuant to and solely to the extent provided in the Agreement~~related thereto, free of all liens, claims, encumbrances and other interests (the "Transaction"); and the Court having entered an order on ~~[●] (Docket No. [●])~~October 22, 2008 (the "Bid Procedures Order") (Docket No. 1175) approving ~~(i) bidding procedures, (ii) the Seller Termination Fee and the Reimbursement Amount, (iii)~~, inter alia, bidding procedures (the "Bidding Procedures") governing the sale of the assets owned, held, or used primarily in connection with Lehman's investment management business, and the form and manner of the notice of the Transaction~~, and (iv) the form and manner of the notice of the assumption and assignment of the Purchased Contracts and Transferred Real Property Leases and the assumption and sublease of the Subleased Real Property Leases; and the Auction having been held on [●].~~; and the Debtors having conducted an auction in accordance with the Bid Procedures Order (the "Auction") on December 3, 2008 for the consideration of

---

~~‡   Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the Agreement.~~

Qualified Bids and the selection of a Successful Bidder (each as defined in the Bid Procedures Order); and upon the Court's consideration of the Motion and the record of the ~~hearing~~hearings held on ~~[●],~~October 16, 2008, and December 22, 2008 with respect to the Motion (collectively, the "Sale Hearing"), including the testimony and evidence admitted at the Sale Hearing; and after due deliberation thereon, and sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:[2]

A.    **Jurisdiction and Venue**.  This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion are Bankruptcy Code sections 105(a), 363, ~~364(c)(i)~~ and 365, Bankruptcy Rules 2002, 6003, 6004, 6006, ~~9008~~ and ~~9014~~9006 and the applicable Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").

C.    **Notice**.  As evidenced by the affidavits of service filed with ~~this~~the Court and based upon the representations of counsel at the Sale Hearing ~~and as approved under the Bid Procedures Order:  (i),~~ due, proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale Hearing and the Transaction~~, including~~ has been provided as required by the Bid Procedures Order.  Such notice was and is good and sufficient and no other or further notice need be provided.  Notice of the assumption and assignment ~~of any Purchased Contract and Transferred Real Property Lease, the~~and/or assumption and sublease ~~of the Subleased Real Property Leases (the "Subleases") designated by the Purchaser prior to the date hereof and identified on Exhibit [_____] attached hereto (collectively, the Purchased Contracts, the~~by a Debtor

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  See Fed. R. Bankr. P. 7052.

of Purchased Contracts, Subleased Real Property Leases and Transferred Real Property Lease and the Subleased Real Property Leases and the corresponding Subleases, the "Designated Contracts") and the Cure Amounts (as defined below) with respect thereto, has been provided; (ii) it appearing that no other or further notice need be provided; (iii) such notice was and isLeases (each as defined in the Purchase Agreement, defined below) as provided herein shall be good, sufficient and appropriate under the circumstances of the Debtors' chapter 11 cases; and (iv)and no other or further notice of the Motion, the Sale Hearing or the Transaction, is or shall be required.

D.    **Opportunity to Object**.  A reasonable opportunity to object and to be heard with respect to the Transaction, the Motion and the relief requested therein has been given to all interested persons and entities, including, without limitation, the following: (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for the Purchaser, (iii) counsel for the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Committee"), (iv) all entities known to have asserted any claims against the Purchased Assets or the Sellers' interest in the Purchased Assets and other entities known to have asserted a lien, interest or encumbrance in or upon the Purchased Assets, (v) all counterparties to Purchased Contracts, Transferred Real Property Leases and the Subleased Real Property Leases, (vi) the Office of the United States Attorney for the Southern District of New York, (vii) the United States Department of Justice, (viii) the Securities and Exchange Commission, (ix) the Federal Reserve Bank of New York, (x) the Securities Investor Protection Corporation, (xi) the Internal Revenue Service and applicable federal and state taxing authorities, (xii) the U.S. Commodities Futures Trading Commission, (xiii) the Pension Benefit Guaranty Corporation and all regulatory authorities of the Debtors' foreign pension plans, including the U.K. Pension Regulator, (xiv) all

~~persons, if any, who have filed objections to the Motion, and (xv) all persons who have filed a~~
~~notice of appearance in these cases.~~need be provided.

D.    ~~E.~~ **Auction**.  ~~The Sellers~~Lehman extensively marketed the ~~Purchased Assets~~assets
owned, held, or used primarily in connection with its investment management business.
Potential bidders had the full and fair opportunity to submit bids and participate in the Auction.
The Auction was conducted fairly and in good faith, without collusion and in accordance with
the ~~Bidding Procedures Order.  At the Auction, Purchaser was selected as the Successful Bidder.~~
~~The Debtors' determination that the Agreement~~Bid Procedures Order.  After consultation with
the advisors for the Official Committee of Unsecured Creditors appointed in the above-captioned
cases (the "Creditors' Committee"), LBHI selected the Qualified Bid submitted by NBSH
Acquisition, LLC  (the "Purchaser") as the Successful Bid (as defined in the Bidding
Procedures).  LBHI's determination that the Unit Purchase Agreement, dated December 1, 2008,
by and between LBHI and the Purchaser (as amended on December 19, 2008, and as may be
further amended, the "Purchase Agreement"), constitutes the highest and best offer for the
Purchased Assets (as defined in the Purchase Agreement) constitutes a valid and sound exercise
of ~~the Debtors'~~LBHI's business judgment.  A copy of the Purchase Agreement is attached hereto
as Exhibit A.

E.    **Opportunity to Object**.  A reasonable opportunity to object and to be heard with
respect to the Transaction, the Motion and the relief requested therein has been given to all
interested persons and entities.  A number of objections to the Motion and responses to the
proposed Transaction were interposed and considered by the Court.

F.    **Arm's-Length Sale**.  The Purchase Agreement ~~and Ancillary Agreements,~~
~~were~~was negotiated, proposed and entered into by ~~the Sellers~~LBHI and the Purchaser without

collusion, in good faith and from arm's-length bargaining positions.  ~~Neither the~~The Purchaser ~~nor any of its Affiliates or their respective Representatives~~ is not an "insider" of ~~any of the Debtors~~LBHI, as that term is defined in ~~Bankruptcy Code~~ section 101(31) of the Bankruptcy Code.  None of ~~the Debtors~~LBHI, the Purchaser or their respective Affiliates or Representatives (each as defined in the Purchase Agreement) has engaged in any conduct that would cause or permit the Purchase Agreement or ~~any Ancillary Agreements~~the Transaction to be avoided under Bankruptcy Code section 363(n) or has acted in any improper or collusive manner with any person.  The terms and conditions of the Purchase Agreement, ~~Ancillary Agreements~~ and the ~~Transactions~~Transaction, including without limitation the consideration provided in respect thereof, ~~is~~are fair and reasonable and shall not be avoided under Bankruptcy Code section 363(n).

G. **Good Faith Purchaser**.  The Purchaser, its Affiliates and their respective Representatives have proceeded in good faith and without collusion in all respects in connection with this proceeding.  Such persons are therefore entitled to all of the benefits and protections of Bankruptcy Code section 363(m).  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction (including, without limitation, the Ancillary Agreements (as defined in the Purchase Agreement) and the assumption and assignment of the Purchased Contracts and the Transferred Real Property Leases and the assumption and sublease of the Subleased Real Property Leases) with Purchaser, unless such authorization is duly stayed pending such appeal prior to the Closing (as defined in the Purchase Agreement).

H. **Corporate Authority**.  The Debtors (i) have full corporate power and authority to execute the Purchase Agreement, Ancillary Agreements and all other documents contemplated

thereby, ~~and the Transaction has been duly and validly authorized by all necessary corporate action,~~ (ii) have all of the corporate power and authority necessary to consummate the Transaction, and (iii) ~~have taken all corporate action necessary to authorize and approve the Agreement, Ancillary Agreements and the Transaction, and (iv)~~ no consents or approvals, other than those expressly provided for in the Purchase Agreement and Ancillary Agreements, are required to consummate such Transaction.

I.        **Sale in Best Interests**.  Good and sufficient reasons for approval of the Purchase Agreement, Ancillary Agreements and the Transaction have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

J.        **Business Justification**.  The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Transaction other than in the ordinary course of business under Bankruptcy Code section 363(b) before, and outside of, a plan of reorganization in that, among other things, the immediate approval by the Bankruptcy Court of the Transaction with the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates, particularly given the wasting nature of the Purchased Assets.  Entry of an order approving the Purchase Agreement and the Debtors' entry into the Ancillary Agreements, and all the provisions thereof is a necessary condition precedent to the Purchaser's consummation of the Transactions.

K.        **Consideration**.  The consideration provided by the Purchaser ~~to the Sellers~~ pursuant to the Purchase Agreement constitutes reasonably equivalent value or fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the

District of Columbia.  The Purchase Agreement represents a fair and reasonable offer to

purchase the Purchased Assets under these circumstances.  No other person or entity or group of

persons or entities, other than the Purchaser, has offered to purchase the Purchased Assets for an

amount that would give greater value to the SellersLBHI and its affiliates that own or hold

Purchased Assets (together with LBHI, the "Sellers").  Approval of the Motion, the Purchase

Agreement, the Debtors' entry into the Ancillary Agreements and the Transaction by this Court

is in the best interests of the Debtors, the Sellers, their creditors and all other parties in interest.

    L.  **Free and Clear**.  The transfer of the Debtors' interests in the Purchased Assets to

the Purchaser under the Purchase Agreement will be a legal, valid, and effective transfer, and

vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased

Assets free and clear of all Liens (as defined in the Agreement), Claims (as defined in section

101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees,

options, rights, restrictions, contractual commitments, rights of first refusal, rights of setoff, or

interests of any kind or nature whether known or unknown, legal or equitable, matured or

unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted,

whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether

imposed by agreement, understanding, law, equity or otherwise (collectively, including without

limitation, Liens, Claims and other interests, the "Interests"), including, but not limited to, (i)

those that purport to give to any party a right or option to effect a setoff against or any forfeiture,

modification or termination of the Debtors' interests in the Purchased Assets, or any similar

rights, (ii) all Excluded Liabilities, including without limitation, those relating to taxes arising

under or out of, in connection with, or in any way relating to the operation of the Debtors'

business or any tax liability of the Debtors arising under or out of, in connection with, or in any

way relating to the cancellation of debt, (iii) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, and (iv) those arising in connection with any agreements, acts, or failures to act, of any of the Sellers or any of the Sellers' predecessors, affiliates, or Representatives including, but not limited to, Interests arising under any bulk-transfer laws, doctrines of successor liability or similar theories. For the avoidance of doubt, without limiting the effect of the foregoing, the assumption and assignment, transfer or sublease of any Purchased Contract, Transferred Real Property Lease, or Subleased Real Property Lease are free and clear of all Interests. ; provided, however, nothing herein shall exclude or be construed as excluding the application of the "controlled group rules" under sections 414(b) or (c) of the Internal Revenue Code of 1986, as amended, to any Acquired Subsidiary to the extent otherwise applicable after the consummation of the transactions contemplated under the Purchase Agreement or any claim of the Pension Benefit Guaranty Corporation which is deemed to arise prior to the consummation of such transactions (the "PBGC Rights"). Whenever the term "Interests" is used herein, such term shall not include any PBGC Rights.

M.      **Free and Clear Findings Needed by Purchaser**. The Purchaser asserts that it would not have entered into the Agreement and would not consummate the Transaction, thus adversely affecting the Debtors, the Sellers, their estates and their creditors, if the sale by the Debtors of the Purchased Assets to the Purchaser, the assumption and assignment or transfer by the Debtors of the Purchased Contracts and Transferred Real Property Leases, and the assumption and sublease by the Debtors of the Subleased Real Property Leases to the Purchaser

was not free and clear of all Interests of any kind or nature whatsoever, or if the Purchaser

would, or in the future could, be liable for any of the Interests.

      N.    **Satisfaction of Section 363(f) Standards**.  ~~The Sellers~~LBHI and any other

Debtor may sell the Purchased Assets it owns free and clear of any Interests of any kind or nature

whatsoever because in each case, one or more of the standards set forth in section 363(f)(1)-(5)

of the Bankruptcy Code has been satisfied.  The person or entity with any Interest in ~~the~~such

Purchased Assets:  (i) has, subject to the terms and conditions of this Sale Order, consented to

the Transaction or is deemed to have consented to the Transaction; (ii) could be compelled in a

legal or equitable proceeding to accept money satisfaction of such Interest; or (iii) otherwise falls

within the provisions of section 363(f) of the Bankruptcy Code.  Those holders of Interests who

did not object to the Motion are deemed, subject to the terms of this Sale Order, to have

consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of Interests are

adequately protected by having their Interests attach to the proceeds ultimately attributable to the

Purchased Assets against or in which such Interests are asserted, subject to the terms of such

Interests, with the same validity, force and effect, and in the same order of priority, which such

Interests now have against the Purchased Assets or their proceeds, subject to any rights, claims

and defenses the Sellers or their estates, as applicable, may possess with respect thereto.

      ~~O.    **No Liability Findings Needed by Purchaser**.  Purchaser asserts that it will not~~

~~consummate the Transaction unless the Agreement specifically provides, and the Bankruptcy~~

~~Court specifically orders, that none of the Purchaser Releasees (as defined below) or the~~

~~Purchased Assets will have any liability whatsoever with respect to or be required to satisfy in~~

~~any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or~~

~~indirectly, any Interest or Excluded Liability.~~

O.    P. **No Fraudulent Transfer**.  The Agreement ~~and Ancillary Agreements were not~~was not and the Transaction will not be entered into for the purpose of hindering, delaying or defrauding creditors of the Sellers under the Bankruptcy Code and under the laws of the United States, any state, territory, possession thereof, or the District of Columbia.  Neither the Sellers nor the Purchaser are entering into the Transaction contemplated by the Agreement fraudulently for the purpose of such statutory and common law fraudulent conveyance and fraudulent transfer claims.

P.    Q. **No Substantive Consolidation**.  There is no factual or legal basis to order the substantive consolidation of the Debtors with any of the Sellers or Acquired Subsidiaries (as defined in the Agreement) that are not Debtors, if any.

Q.    R. **No Successor Liability**.  Except for the Assumed Liabilities, the transfer by a Debtor of the Purchased Assets to the Purchaser under the Agreement shall not result in any Purchaser Releasee (as defined in paragraph 7 below) or the Purchased Assets having any liability or responsibility for (i) any Interest against the ~~Sellers~~Debtors or against an insider of the ~~Sellers~~Debtors, or (ii) the satisfaction in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, of any Interest or Excluded Liability, or (iii) to third parties or the ~~Sellers~~Debtors except as is expressly set forth in the Agreement.  Without limiting the effect or scope of the foregoing, the transfer of the Purchased Assets from the ~~Sellers~~Debtors to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Purchased Assets) to any liability for Interests against the ~~Sellers~~Debtors or the ~~Sellers~~Debtors' Interests in such Purchased Assets by reason of such transfer under the laws of the United States or any state, territory,

possession thereof, or the District of Columbia applicable to such Transactions, including,
without limitation, any bulk-transfer laws, successor liability or similar theories.

R.    S.  **Cure/Adequate Assurance**.  The assumption and assignment or transfer by a
Debtor of the Purchased Contracts and Transferred Real Property Leases, and the assumption
and the sublease by a Debtor of the Subleased Real Property Leases pursuant to the terms of this
Sale Order is integral to the Purchase Agreement, does not constitute unfair discrimination, and
is in the best interests of the Debtors and their estates, creditors and all other parties in interest,
and represents the reasonable exercise of sound and prudent business judgment by the
SellersDebtors.  The Sellers'Purchaser's contractual obligation to pay the Cure Amounts (as
defined below) and the Purchaser's contractual obligation to perform the obligations under the
Purchased Contracts, Transferred Real Property Leases, and SubleasesSubleased Real Property
Leases after the Closing shall constitute adequate assurance of future performance.  Purchaser
has demonstrated adequate assurance of future performance with respect to the Purchased
Contracts, Transferred Real Property Leases, and Subleases and has satisfied the requirements of
the Bankruptcy Code, including, without limitation, sections 365(b)(1) and (3) and 365(f)(2)(B)
to the extent applicable.

S.    T.  **[Personally Identifiable Information**.  The sale includes the transfer of
"Personally Identifiable InformationUpon Closing, Purchaser will be an "affiliate" of LBHI, as
that term is defined in the Bankruptcy Code.  Accordingly, if LBHI were to sell "personally
identifiable information" (as defined in section 101(41A) of the Bankruptcy Code.  The United
States Trustee is directed to appoint a Customer Privacy Ombudsman pursuant to sections 332
and) in connection with the Transaction, the appointment of a consumer privacy ombudsman
would not be required by section 363(b)(1) of the Bankruptcy Code.  The transfer of Personally

Identifiable Information shall not be effective until a Consumer Privacy Ombudsman is
appointed, issues its findings, and the Court has an opportunity to review the findings and issue
any rulings that are appropriate.]

NOW, THEREFORE, IT IS ORDERED THAT:

1. **Motion is Granted**. The Motion and the relief requested therein is GRANTED
and APPROVED, as set forth herein.

2. **Objections Overruled**. Any objections to the entry of this Sale Order or the
relief granted herein and requested in the Motion that have not been withdrawn, waived, or
settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and
overruled on the merits with prejudice.

3. **Approval**. The Purchase Agreement and the Ancillary Agreements and all of the
terms and conditions thereto are hereby approved. SellersThe Debtors are hereby authorized to,
and cause their non-Debtor affiliates to, (i) execute the Purchase Agreement and the Ancillary
Agreements, along with any additional instruments or documents that may be reasonably
necessary or appropriate to implement the Purchase Agreement, *provided* that such additional
documents do not materially change its terms; (ii) consummate the Transaction in accordance
with the terms and conditions of the Purchase Agreement, the Ancillary Agreements, and the
other agreements contemplated thereby; (iii) assume and assign to Purchaser the or another
member of the Company Group (as defined in the Purchase Agreement) Purchased Contracts
and Transferred Real Property Leases; (iv) assume and sublease to Purchaser theor another
member of the Company Group Subleased Real Property Leases; and (v) take all other and
further actions as may be reasonably necessary to implement the Transaction.

4.      **Valid Transfer**.  As of the Closing, (i) the Transaction effects a legal, valid,
enforceable and effective sale and transfer of the Purchased Assets by the Debtors to Purchaser
or another member of the Company Group, and shall vest Purchaser or another member of the
Company Group with title to such Purchased Assets free and clear of all Interests of any kind
whatsoever and (ii) the Agreement, the Ancillary Agreements, the Transaction and any
instruments contemplated thereby shall be enforceable against and binding upon, and not subject
to rejection or avoidance by, the Sellers or any successor trustee appointed with respect thereto.

5.      For the avoidance of doubt, (i) no contracts or leases assigned to Barclays Capital
Inc. or its affiliates in connection with the sale of assets under that certain Asset Purchase
Agreement dated as of September 16, 2008 by and between Barclays Capital Inc., LBHI,
Lehman Brothers Inc., and LB 745 LLC  (and any clarifications, amendments or modifications
thereto, the "BarCap APA") are being assumed and assigned to the Purchaser or another member
of the Company Group in connection with the Transaction and the Purchase Agreement, and (ii)
none of the Purchased Assets or Related Contracts (as such terms are defined in the BarCap
APA) transferred pursuant to the BarCap APA are being transferred to the Purchaser or another
member of the Company Group pursuant to the Transaction, and that such contracts, leases and
other assets are Excluded Assets under the Purchase Agreement.  Notwithstanding the foregoing,
nothing in this Sale Order shall affect any disputes among any entities as to whether any assets or
contracts were or were not, or should or should not have been, Purchased Assets or Related
Contracts under the BarCap APA.

6.      5. **General Assignment**.  On the Closing, this Sale Order shall be construed and
shall constitute for any and all purposes a full and complete general assignment, conveyance and
transfer of the SellersDebtors' interests in the Purchased Assets.  Each and every federal, state,

and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Transaction.

7.    6. **Exculpation and Release.**  None of the Purchaser, the Acquired Subsidiaries or their respective affiliates, successors and assigns, and each of their respective current affiliates, officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents and representatives (collectively, the "Purchaser Releasees") shall have or incur any liability to, or be subject to any action by any Debtor or Sellers, their respective affiliates, or any of their predecessors, affiliates, successors and assigns, and each of their respective current and former affiliates, officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents and representatives (collectively, the "Releasing Parties"), arising out of the negotiation, investigation, preparation, execution, delivery of the Agreement and Ancillary Agreements and the entry into and consummation of the Transaction, except as expressly provided in the Agreement, the Ancillary Agreements and this Sale Order.

8.    7. **Indemnification**.  The Sellers are LBHI is authorized, from and after the Closing, and up to nine (9) months after the date thereof, to indemnify and hold Purchaser, its Affiliates (including the Acquired Subsidiaries), and their respective directors, officers, employees, stockholders, agents, attorneys, representatives, successors and permitted assigns harmless from and against any Losses arising or resulting from, or relating to, any Excluded Liabilities as set forth in Article IX to indemnify and hold harmless those parties entitled to indemnification under the Purchase Agreement in accordance with the terms of the Purchase Agreement.  The liabilities of the Sellers LBHI for indemnification under Section 9.2 of the Purchase Agreement shall not be subject to objection or disallowance under section 502(e) of the Bankruptcy Code.   Any amounts at any time payable under any other provision of the Purchase

Agreement shall be deemed allowed administrative claims in LBHI's chapter 11 case, with
priority over any and all claims of the kind specified in sections 503(b) and 507(b) of the
Bankruptcy Code which claim shall be senior to, and have priority over, all other claims pursuant
to section 364(c)(1) of the Bankruptcy Code.

9. 8. **Injunction**.  Except as expressly permitted by the Purchase Agreement or by
this Sale Order, all persons and entities, including, but not limited to, all debt security holders,
equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors,
litigation claimants and other persons, holding Interests of any kind or nature whatsoever against
or in the SellersDebtors or the SellersDebtors' interests in the Purchased Assets (whether known
or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or
unliquidated, asserted or unasserted, whether arising prior to or subsequent to the
commencement of these chapter 11 cases, whether imposed by agreement, understanding, law,
equity or otherwise), arising under or out of, in connection with, or in any way relating to, the
Sellers,Debtors, the Debtors' interests in the Purchased Assets, the operation of the
SellersDebtors' businesses before the Closing or the transfer of the SellersDebtors' interests in
the Purchased Assets to the Purchaser or another member of the Company Group, shall be and
hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or
otherwise pursuing Interests against the Purchaser Releasees, their respective property, or the
interests of the Sellers in such Purchased Assets.  Following the Closing, no holder of an Interest
against the SellersDebtors shall interfere with Purchaser's title to or use and enjoyment of the
Sellers'Debtors' interests in the Purchased Assets based on or related to such Interests, and all
such Interests, if any, shall be, and hereby are transferred and attached to the proceeds from the
Transaction in the order of their priority, with the same validity, force and effect which they have

against such Purchased Assets as of the Closing, subject to any rights, claims and defenses that
the Sellers' estates and Sellers, as applicable, may possess with respect thereto.

10.    9.  **No Successor Liability**.  No Purchaser Releasee shall as a result of the

consummation of the Transaction:  (i) be a successor to the Sellers or the Debtors' estates; (ii)

have, de facto or otherwise, merged or consolidated with or into the Sellers or the Debtors'

estates; or (iii) be a continuation or substantial continuation of the Sellers or any enterprise of the

Sellers.  Except for the Assumed Liabilities, the transfer of the Purchased Assets to Purchaser or

another member of the Company Group under the Agreement shall not result in (i) any Purchaser

Releasee or the Purchased Assets having any liability or responsibility for any Interest against

the SellersDebtors or against an insider of the SellersDebtors, (ii) any Purchaser Releasee or the

Purchased Assets having any liability whatsoever with respect to or be required to satisfy in any

manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or

indirectly, any Interest or Excluded Liability, or (iii) any Purchaser Releasee or the Purchased

Assets, having any liability or responsibility to the Sellers except as is expressly set forth in the

Agreement.

11.    10. Without limiting the effect or scope of the foregoing, as a result of the closing

of the Transaction, neither the Purchaser nor any member of the Company Group shall have no

successor or vicarious liabilities of any kind or character, including, but not limited to, federal,

state or other tax liabilities, U.S. or foreign pension liabilities, or liabilities based on any theory

of antitrust, environmental, labor law, alter ego, veil piercing, continuity of enterprise, mere

continuation, product line, de facto merger or substantial continuity, whether known or unknown,

legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or

unliquidated, asserted or unasserted, whether arising prior to or subsequent to the

commencement of these chapter 11 cases, whether imposed by agreement, understanding, law,

equity or otherwise with respect to the ~~Sellers~~Debtors or any obligations of the ~~Sellers~~Debtors,

including, but not limited to, in the case  of liabilities on account of any taxes arising, accruing or

payable under, out of, in connection with, or in any way relating to the operation of the

Purchased Assets prior to the Closing or any taxes in connection with, or in any way relating to

the cancellation of debt of the Sellers or their Affiliates.

12.    **Notice of Assumption and Assignment.**  As soon as practicable, the Debtors

shall file with this Court and serve on each non-Debtor counterparty to a Purchased Contract,

Transferred Real Property Lease or Subleased Real Property Lease with a Debtor that the

Debtors seeks to assume (collectively, the "Debtors' Contracts") by email, mail, facsimile or

overnight delivery service, a notice of assumption, assignment and cure substantially in the form

attached hereto as Exhibit B (the "Assumption, Assignment and Cure Notice").  The

Assumption, Assignment and Cure Notice shall include the Debtors' calculation of the Cure

Amount for each such Debtors' Contract.  A list of Debtors' Contracts, including Cure Amounts

with respect thereto, will be posted on the website maintained by the Debtors' Court-approved

claims and noticing agent and updated as modified.  Any counterparty to the Debtors' Contracts

shall file and serve on the Notice Parties (as defined in the Assumption, Assignment and Cure

Notice) any objections to (i) the proposed assumption and sublease or assumption and

assignment to the Purchaser or other member of the Company Group (and must state in its

objection, with specificity, the legal and factual basis of its objection) and (ii) if applicable, the

proposed Cure Amount (and must state in its objection, with specificity, what Cure Amount is

required with appropriate documentation in support thereof), no later than fifteen (15) days after

filing and service of the Assumption, Assignment and Cure Notice.  If no objection is timely

received, (i) the counterparty to a Debtors' Contract shall be deemed to have consented to the assumption and sublease or assumption and assignment to the Purchaser or other member of the Company Group and shall be forever barred from asserting any objection with regard to such assumption or assignment, and (ii) the Cure Amount set forth in the Assumption, Assignment and Cure Notice shall be controlling, notwithstanding anything to the contrary in any Debtors' Contract or any other document, and the counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Debtors' Contract against the Debtors or the Purchaser or other member of the Company Group, or the property of any of them.  Notwithstanding anything in this paragraph, this Order does not affect the right of any counterparty that is a governmental entity to object to the assignment of a Debtors' Contract on the basis that any necessary governmental approvals have not been obtained or that any necessary governmental procedures have not been followed.

13.    11. **Assumption and Assignment.**  Pursuant Subject to the foregoing paragraph, pursuant to Bankruptcy Code sections 105(a), 363 and 365, and subject to and conditioned upon the Closing, the Sellers Debtors' assumption and assignment to the Purchaser or another member of the Company Group of the Purchased Contracts and Transferred Real Property Leases, and the Purchaser's or other member of the Company Group's acceptance of such assignment on the terms set forth in the Agreement, and the assumption and sublease to the Purchaser of the Subleased Real Property Leases, are hereby approved.  On the Closing, the Purchased Debtors' Contracts, Transferred Real Property Leases and Subleased Real Property Leases whether entered into before or after the Petition Date, shall be transferred to or subleased to the Purchaser or another member of the Company Group, free and clear of all Interests of any kind or nature whatsoever other than the Assumed Liabilities, and shall remain in full force and effect for the

benefit of the Purchaser in accordance with their respective terms, notwithstanding any provision

in any such ~~Purchased~~Debtors' Contract, ~~Transferred Real Property Lease or Subleased Real~~

~~Property Leases~~ (including those of the type described in sections 365(b)(2) and (f) of the

Bankruptcy Code) that prohibits, restricts, or conditions such assignment, transfer or sublease.

Pursuant to Bankruptcy Code section 365(k), the ~~Sellers~~Debtors shall be relieved from any

further liability with respect to the ~~Purchased~~Debtors' Contracts ~~and Transferred Real Property~~

~~Leases~~ after such assignment to the Purchaser. ~~Sellers~~ or other member of the Company Group.

The Debtors are hereby authorized to execute and deliver to the Purchaser such documents or

other instruments as may be necessary to assign, transfer or sublease the ~~Purchased~~Debtors'

Contracts, ~~Transferred Real Property Leases or Subleased Real Property Leases~~ to the Purchaser

or other member of the Company Group at Closing.

14.    ~~12.~~ **Payment of Cure Amounts.**  The ~~Sellers~~Purchaser shall be obligated to pay

or cause to be paid any and all amounts accrued or otherwise owed (collectively, the "Cure

Amounts") under any ~~Purchased Contract, Transferred Real Property Lease or Subleased Real~~

~~Property Lease (including, without limitation, any Designated Contracts and any Purchased~~

~~Contracts assumed by the Debtors and assigned to the Purchaser following entry of this Sale~~

~~Order).~~ Debtors' Contract.  The ~~Sellers~~Purchaser shall pay any Cure Amount for each ~~Purchased~~

~~Contract, Transferred Real Property Lease or Subleased Real Property Lease~~Debtors' as soon as

reasonably practicable after (i) the date on which the contracting counterparty consents in writing

to the Cure Amount, (ii) the date on which the counterparty is deemed to have consented, or (iii)

the date on which the Court enters an order determining the Cure Amount.  The

~~Sellers'~~Purchaser's obligation to pay the Cure Amounts and the Purchaser's promise to perform

the obligations under the ~~Purchased~~Debtors' Contracts, ~~Transferred Real Property Leases and~~

~~Subleases~~ after the Closing shall constitute adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).

~~13.    **Cure Amounts for Designated Contracts.**  The Cure Amounts set forth on the Exhibit [●] attached hereto with respect to each Designated Contract shall constitute findings of the Court and shall be final and binding on parties to such Designated Contracts (and their successors and designees), and shall not be subject to further dispute or audit based on performance prior to the time of assumption and assumption and assignment, irrespective of the terms and conditions of such Designated Contracts.  Each counterparty to a Designated Contract, whether entered before or after the Petition Date, is hereby forever barred, estopped, and permanently enjoined from (i) asserting against the Sellers or the Purchaser, or the property of either of them, any default existing as of Closing; or, against the Purchaser, any counterclaim, defense, setoff or any other Interest asserted or assertable against the Debtors; and (ii) imposing or charging against Purchaser or its Affiliates any accelerations, assignment fees, increases or any other fees as a result of the Sellers' assumption and assignments or assumption and sublease to Purchaser of the Designated Contracts. To the extent that any counterparty failed to object to the Cure Amount with respect to a Designated Contract prior to the date hereof, such counterparty is deemed to have consented to such Cure Amounts and the assignments of such Designated Contract to the Purchaser.~~

15.        ~~14.~~**Ipso Facto Clauses Ineffective**.  Upon the Debtors' assignment of ~~the~~ Purchased Contracts and Transferred Real Property Leases and the sublease of ~~the~~ Subleased Real Property Leases to the Purchaser or another member of the Company Group under the provisions of this Sale Order, no default shall exist under any Purchased Contract, Transferred Real Property Lease or Subleased Real Property Lease, and no counterparty to any Purchased

Contract, Transferred Real Property Lease or Subleased Real Property Lease shall be permitted
to declare a default by the Debtor or Purchaser or another member of the Company Group
thereunder or otherwise take action against the Purchaser or another member of the Company
Group as a result of any Debtor's financial condition, bankruptcy or failure to perform any of its
obligations under the relevant ~~Purchased~~Debtors' Contract~~, Transferred Real Property Lease or
Subleased Real Property Lease~~.  Any provision in a ~~Purchased~~Debtors' Contract~~, Transferred
Real Property Lease or Subleased Real Property Lease~~ that prohibits or conditions the
assignment or sublease of such ~~Purchased~~Debtors' Contract~~, Transferred Real Property Lease or
Subleased Real Property Lease~~ (including without limitation, the granting of a lien therein) or
allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal
or extension, or modify any term or condition upon such assignment or sublease, constitutes an
unenforceable anti-assignment provision that is void and of no force and effect.  The failure of
the ~~Sellers~~Debtors or the Purchaser or another member of the Company Group to enforce at any
time one or more terms or conditions of any ~~Purchased~~Debtors' Contract~~, Transferred Real
Property Lease or Subleased Real Property Lease~~ shall not be a waiver of such terms or
conditions, or of the ~~Sellers~~Debtors' and Purchaser's rights to enforce every term and condition
of the ~~Purchased~~Debtors' Contract~~, Transferred Real Property Lease or Subleased Real Property
Lease~~.

16.    ~~15.~~ **Binding Effect of Order**.  This Sale Order shall be binding upon and shall
govern the acts of all entities, including without limitation all filing agents, filing officers, title
agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds,
administrative agencies, governmental departments, secretaries of state, federal, state and local
officials, and all other persons and entities who may be required by operation of law, the duties

of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.  The terms and provisions of the Purchase Agreement, the Ancillary Agreements and this Sale Order shall be binding in all respects upon the Sellers, the Debtors' estates, all creditors of (whether known or unknown) and holders of equity interests in either the Sellers, Purchaser and their respective affiliates, successors and assigns, and any third parties, notwithstanding any subsequent appointment of any trustee of the Debtors under any chapter of the Bankruptcy Code or the Securities Investor Protection Act, as to which trustee(s) such terms and provisions likewise shall be binding.

17.    16. **Release of Interests**.  This Sale Order (i) shall be effective as a determination that, on the Closing, all Interests of any kind or nature whatsoever existing as to the Purchased Assets owned by one of the Debtors prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (ii) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.  On the Closing, the Sellers and persons holding an Interest in the Purchased Assets as of the Closing are authorized to execute such documents and take all other actions as may be reasonably necessary to release their Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist.

18.    17. **Retention of Jurisdiction**.  This Court retains jurisdiction, pursuant to its

statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and

enforce the terms and provisions of this Sale Order, all amendments thereto and any waivers and

consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of

the Purchased Assets to Purchaser or other member of the Company Group; (ii) interpret,

implement and enforce the provisions of this Sale Order and any related order; (iii) protect

Purchaser Releasees against any Interests against the Sellers or the Purchased Assets of any kind

or nature whatsoever, attaching to the proceeds of the Transaction, and (iv) enter any orders

under section 363 and 365 of the Bankruptcy Code with respect to the Purchased Contracts,

Transferred Real Property Leases and Subleased Real Property Leases.

19.    18. **Retention of Rights By the Government**.  Nothing in this Sale Order or in

the Agreement (i) releases, nullifies, or enjoins the enforcement of any liability to a

governmental unit under police and regulatory statutes or regulations that any entity would be

subject to as the owner or operator of property after the date of entry of this Sale Order; or (ii)

should be construed to give Purchaser any more protection against any government unit than it is

otherwise entitled to under 11 U.S.C. § 363(f).  Nothing in this paragraph should be construed to

create for any governmental unit any substantive right that does not already exist under law.

19.    **Fees, Expenses and Other Obligations**.  All obligations of the Debtors under the

Agreement, Ancillary Agreement, or any of the documents delivered by the Debtors in

connection with the Agreement including, but not limited to the Seller Termination Fee and the

Reimbursement Amount, shall be paid in the manner provided in the Agreement, the Ancillary

Agreements and the Bid Procedures Order, without further order of this Court.  All such

obligations shall constitute allowed administrative claims in each of the Debtors' chapter 11

~~cases, with priority over any and all claims of the kind specified in sections 503(b), 507(b) and~~

~~364(c)(1) of the Bankruptcy Code, which claims shall be senior to, and have priority over, all~~

~~other claims against the Debtors.  Until satisfied, all such obligations shall continue to have the~~

~~protections provided in the Bid Procedures Order and this Sale Order, and shall not be~~

~~discharged, modified or otherwise affected by any reorganization plan for the Debtors, except by~~

~~an express agreement with Purchaser, its successors, or assigns.~~

       20.    **Sale Proceeds**.  Any and all valid and perfected Interests in the Purchased Assets

of the Debtors shall attach to any proceeds of such Purchased Assets immediately upon receipt of

such proceeds by the ~~Sellers~~Debtors (or any party acting on any ~~Seller~~Debtor's behalf) in the

order of priority, and with the same validity, force and effect which they now have against such

Purchased Assets, subject to any rights, claims and defenses the Sellers, the Debtors' estates or

any trustee for any Debtor, as applicable, may possess with respect thereto, in addition to any

limitations on the use of such proceeds pursuant to any provision of this Sale Order. ~~Except as~~

~~required by the Agreement, no proceeds subject to an asserted Interest shall be used or disbursed~~

~~by the Debtors without the express consent of the party or parties asserting an Interest therein or~~

~~further order of the Court after notice (to all parties who have asserted an Interest in such~~

~~proceeds) and a hearing, consistent with the requirements of the Bankruptcy Code.~~

      <u>21.</u>    <u>The first priority liens granted to Barclays Bank PLC and Barclays Capital Inc.</u>

<u>under the Senior Secured Superpriority Debtor In Possession Credit Agreement dated as of</u>

<u>September 17, 2008 (the "DIP Agreement") and under the Interim Order (I) Authorizing Debtor</u>

<u>To Obtain Postpetition Financing Pursuant To Sections 363 And 364 Of The Bankruptcy Code,</u>

<u>(II) Granting Liens And Superpriority Claims To Postpetition Lenders Pursuant To Section 364</u>

<u>Of The Bankruptcy Code, And (III) Scheduling Final Hearing, dated September 17, 2008 (the</u>

"DIP Order"), hereby attach to all proceeds of the sale of the Purchased Assets, including
without limitation the cash proceeds and any other consideration paid or delivered to the Debtors
under the Purchase Agreement and in connection with the Transaction, in the same priority and
to the same extent as granted to Barclays under the DIP Agreement and DIP Order, in respect of
all outstanding Obligations (as defined in the DIP Agreement) remaining under the DIP
Agreement and DIP Order which, as of December 19, 2008, Barclays asserts are in an amount of
no less than $7.5 million.  In furtherance of such liens, Barclays is also hereby granted a first
priority lien on all deposit and securities accounts held by LBHI, including without limitation on
any accounts in which the proceeds of the Transaction are deposited to secure such Obligations
in the amount of $7.5 million and unpaid interest and fees as provided in the DIP Agreement and
the DIP Order.  The Debtors and Barclays each reserve their rights with respect to the existence
and amount of unpaid Obligations under the DIP Agreement.

22. 21. **No Material Modifications**.  The Purchase Agreement, Ancillary
Agreements and any related agreements, documents or other instruments may be modified,
amended or supplemented by the parties thereto, in a writing signed by such parties, and in
accordance with the terms thereof, without further order of the Court, *provided* that any such
modification, amendment or supplement does not have a material adverse effect on the Debtors'
estates and has been agreed to between the Creditors' Committee, the Debtors LBHI and the
Purchaser.

23. 22. **Subsequent Orders and Plan Provisions**.  Nothing contained in any
subsequent order of this Court or any court of competent jurisdiction in these or other chapter 11
cases (including without limitation, an order authorizing the sale of assets pursuant to sections
363, 365 or any other provision of the Bankruptcy Code or any order entered after any

conversion of a chapter 11 case of the Debtors to a case under chapter 7 of the Bankruptcy Code) or any chapter 11 plan confirmed in any Debtors' bankruptcy cases or any order confirming any such plan shall nullify, alter, conflict with, or in any manner derogate from the provisions of this Sale Order, and the provisions of this Sale Order shall survive and remain in full force and effect.

24.    23. **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

24.    **No Stay of Order**.  Notwithstanding the provisions of Interim Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Rules, this Sale Order shall not be stayed for ten (10) days after the entry hereof, but shall be effective and enforceable immediately upon entry.  Time is of the essence in approving the Transaction, and the Debtors and the Purchaser intend to close the Transaction as soon as practicable.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

25.    **Allocation**.  The Purchaser shall pay proceeds of the Transaction to the Sellers, collectively, to be held by(i.e., equity in the Purchaser) to LBHI on behalf of all of the Sellers. The rights of all parties in interest in respect of the proper allocation of proceeds received by the Sellers on account of the Purchased Assets are reserved, as among each of the Sellers (and without impairing or affecting, in any way, Purchaser's rights under the Agreement).  Upon allocation of the proceeds of the Transaction, LBHI shall be authorized to distribute an amount of money to each of the other Sellers in lieu of each other Sellers' allocated share of proceeds of

the Transaction, in an amount equal to the value as of the Closing of each Sellers' allocated share of proceeds (plus interest at an applicable rate).

26.  **Preservation of Certain Records**.  Subject to further order of the Court, the ~~Sellers~~Debtors and the Purchaser are hereby ordered to take appropriate measures to maintain and preserve, until the consummation of any chapter 11 plan for the Debtors, the books and records and any other documentation, including tapes or other audio or digital recordings and data in or retrievable from computers or servers, relating to or reflecting the records held by it or its Affiliates relating to the Business, including the accounts, property and trading records of the customers of the Sellers.  In addition, the Debtors and Creditors' Committee shall promptly identify reasonable procedures for preserving information in the ~~Sellers~~Debtors' or Purchaser's possession related to potential tax or financial audits of, government investigations of, or claims against the ~~Sellers~~Debtors, as well as any claims that the Debtors may have against third parties, and the Sellers and Purchaser shall maintain and reserve such information, subject to further order of the Court until the consummation of any chapter 11 plan for the Debtors.

Dated:    New York, New York
          ~~[●]~~December____, 2008

                                        _____
                                        HONORABLE JAMES M. PECK
                                        UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**---------------------------------------------------------------------x**
**In re**                                                **:**     **Chapter 11 Case No.**
                                                    **:**
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*     **:**     **08-13555 (JMP)**
                                                    **:**
                      **Debtors.**                          **:**     **(Jointly Administered)**
**---------------------------------------------------------------------x**

**NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE AMOUNT**
**WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES**
**RELATED TO LEHMAN BROTHERS' INVESTMENT MANAGEMENT DIVISION**

By order, dated October 22, 2008 (the "Bid Procedures Order), the United States Bankruptcy Court for the Southern District of New York approved bidding procedures (the "Bidding Procedures") to govern the sale by Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliates (collectively, the "Sellers") of the assets owned, held, or used primarily in connection with the Sellers' investment management business.

In accordance with the Bidding Procedures, the Sellers conducted an auction on December 3, 2008, and, after consultation with the advisors for the Official Committee of Unsecured Creditors appointed in the above-captioned cases, selected the bid submitted by NBSH Acquisition, LLC (the "Purchaser") as the Successful Bid (as defined in the Bidding Procedures). The Purchaser is a limited liability company formed by certain senior managers of the investment management business.

By order, dated December __, 2008, the Bankruptcy Court approved the sale and granted the request of LBHI and its debtor affiliates (collectively, the "Debtors") to assume and sublease or assume and assign certain executory contacts and unexpired leases upon consummation of the transaction contemplated in the Unit Purchase Agreement between LBHI and the Purchaser (the "Purchase Agreement"). **A list of the Purchased Contracts, Transferred Real Property Leases and Subleased Real Property Leases (each as defined in the Purchase Agreement and collectively, the "Designated Contracts") is attached hereto as Exhibit A and available on the internet at http://chapter11.epiqsystems.com/lehman (the "Website"), or upon request to LBHI's noticing agent at 1-866-841-7868.** The Debtors and the Purchaser reserve the right to remove any Designated Contracts prior to consummation of the transaction contemplated in the Purchase Agreement.

You are receiving this Notice because you may be a party to a Designated Contract (or represent a party to a Designated Contract).

The Debtors have determined the appropriate cure amount (the "Cure Amount") for each Designated Contract and have listed such Cure Amounts on Exhibit A hereto and the Website.

**To the extent that a non-Debtor counterparty objects to (i) the assumption and sublease or assumption and assignment to the Purchaser of such party's respective Designated**

**Contract or (ii) the Cure Amount, the non-Debtor counterparty must file and serve an objection upon the following parties, so as to be received by no later than [__], 2008, at 4:00 p.m. (New York Time):  [_____].**

If an objection challenges a Cure Amount, the Debtors have been authorized to move forward to assume, assume and sublease, or assume and assign the Designated Contract that is the subject of a Cure Amount objection, provided that the Cure Amount asserted by the objector is held in reserve.  If the Debtors receive an objection to a Cure Amount, the Debtors reserve the right to decide to reject the contract or lease at issue if the Cure Amount is ultimately determined by order of the Court to be higher than the Cure Amount set forth in this Notice.

**If no objection to the Cure Amount of a Designated Contract is timely filed and served, the Debtors may assume and sublease or assume and assign that Designated Contract, and the Cure Amount set forth on Exhibit A and the Website shall be binding upon the respective non-Debtor counterparty to the Designated Contract for all purposes in the Debtors' chapter 11 cases, and such non-Debtor counterparty shall be forever barred from objecting to the Cure Amount, including, without limitation, the right to assert any additional cure or other amount with respect to their respective Designated Contract.**

Dated:  New York, New York
_____, 2008

_____
Lori R. Fife
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
 Debtors In Possession

Document comparison done by DeltaView on Saturday, December 20, 2008 4:59:26
PM

| Input: | |
|---|---|
| Document 1 | pcdocs://ny2/1936738/1 |
| Document 2 | pcdocs://ny2/1936738/6 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 238 |
| Deletions | 184 |
| Moved from | 9 |
| Moved to | 9 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 440 |