Hearing Date: January 14, 2008
Hearing Time: 10:00 a.m.
Objection Deadline: January 11,
2008 at 4:00 p.m.

Merritt A. Pardini
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

-and-

John P. Sieger
Paige E. Barr
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
(312) 902-5200

*Counsel for Corus Bank, N.A.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re:                                           Chapter 11
                                                 Case No. 08-13555 (JMP)
LEHMAN BROTHERS HOLDINGS, INC.,                  (Jointly Administered)
et al.,

          Debtors.
--------------------------------------------------------x

## MOTION OF CORUS BANK, N.A. FOR (I) A DETERMINATION THAT THE AUTOMATIC STAY DOES NOT APPLY, OR ALTERNATIVELY, (II) RELIEF FROM THE AUTOMATIC STAY

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Corus Bank, N.A. ("Corus"), by and through its undersigned counsel, hereby files this

motion ("Motion") for (i) a determination that the automatic stay does not apply, or alternatively,

(ii) for relief from the automatic stay pursuant to Section 362(d) of title 11 of the United States Code ("Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").  Corus states as follows in support thereof:

## I. PRELIMINARY STATEMENT

Movant, Corus, is the mortgage lender financing the development of land owned by the borrower, Riverwalk Square Development, LLC ("RSD").  The Corus loan is in default due to the borrower's non-payment of interest.  Debtor, Lehman Brothers Holdings, Inc. ("LBHI"), is the mezzanine lender on the project.  LBHI is not a creditor of RSD and has no mortgage, security interest or ownership interest in the project.

Pursuant to an intercreditor and subordination agreement between Corus and LBHI, all of LBHI's interests are subordinated to those of Corus.  Corus' Loan is secured, *inter alia*, by a mortgage on real property held by the borrower in which LBHI does not have a security interest. After LBHI filed its Chapter 11 petition, RSD defaulted on its loan from Corus and accordingly, Corus seeks to foreclose on its collateral.  While LBHI does not have a security interest in Corus' collateral, Corus is required to provide LBHI copies of all notices of default under the Corus Loan and LBHI has the right (but no obligation) to cure any default by RSD.  Notifying a debtor of (i) another non-debtor entity's post-petition default and (ii) the debtor's ability to exercise its rights are not violations of the automatic stay as (a) no action is being taken against the debtor; (b) no action is being taken against the debtor that could have been commenced before the commencement of the debtor's bankruptcy proceeding; (c) no act to obtain possession of property of the estate or from the estate is being taken; and (d) no act to exercise control over property of the estate is being taken.  However, out of an abundance of caution, Corus is filing this Motion for a determination that the automatic stay does not apply to the actions sought to be

taken by Corus, or alternatively, for relief from the automatic stay pursuant to Section 362(d) of the Bankruptcy Code.

## II.  JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. §  157(b)(2).

## III.  FACTUAL BACKGROUND

### A.  Corus Loan

2.      On January 3, 2006, Corus entered into a certain Construction Loan Agreement ("Corus Loan Agreement") with RSD which is evidenced by a promissory note executed by RSD in favor of Corus in the amount of $97,000,000 (as renewed, extended, modified, amended or restated from time to time) (the loan evidenced by the promissory note is herein referred to as "Corus Loan").

3.      The purpose of the Corus Loan was to fund construction and development costs of RSD's "Safari Drive Condominiums" project ("Safari Project").  The Safari Project involved the construction on real property ("Real Property"), owned by RSD and located in Arizona and more specifically identified on Exhibit A to the Corus Loan Agreement attached hereto at Exhibit 1, of nine buildings and other facilities containing: (a) garage parking spaces for at least 320 automobiles; (b) 214 residential condominium units and four (4) retail units containing in the aggregate 277,453 saleable square feet; and (c) common area amenity space.  RSD has built approximately 99 of the condominium units and does not have funds to complete the project, pay operating costs, pay interest or repay Corus' Loan.  Only 16 units have been closed to date.

4.      The Corus Loan is secured by (i) a Construction Deed of Trust, Security

Agreement, Assignment of Rents and Fixture Filing dated January 3, 2006 executed by RSD to

Fidelity National Title Insurance Company for the benefit of Corus, granting a first priority lien

on the real estate situated in Scottsdale, Maricopa County, Arizona and more particularly

described on Exhibit A to the Corus Loan Agreement attached hereto at Exhibit 1 and all other

collateral for the Corus Loan; (ii) an Environmental Indemnity Agreement dated January 3,

2006, executed by A. Christopher Camberlango, Michael Trailor and James Numemacher

(collectively, the "Guarantors") and RSD in favor of Corus; (iii) a Completion and Non-

Recourse Carveout Guaranty dated January 3, 2006 executed by the Guarantors in favor of

Corus; (iv) an Assignment of Construction Documents dated January 3, 2006 executed by RSD

in favor of Corus; and (v) the Assignment of Condominium Documents dated January 3, 2006

executed by RSD in favor of Corus (collectively, the "Corus Collateral").

5.      Throughout the term of the Corus Loan, interest payments are due on the first of

the month.  See Section 4.3 of the Corus Loan Agreement attached hereto at Exhibit 1.

6.      All principal, interest and other sums due under the Corus Loan are due in full on

January 3, 2008.

7.      Pursuant to the Corus Loan agreement, the failure of RSD to pay any interest

within ten (10) days after the date it is due constitutes and Event of Default.  See Article 19(a) of

the Corus Loan Agreement attached hereto at Exhibit 1.

8.      Article 20 of the Corus Loan agreement sets forth Corus' remedies in the event of

default ("Remedies").  See Article 20 of the Corus Loan Agreement attached hereto at Exhibit 1.

**B.  LBHI Loan**

9.      Riverwalk Square Development II, LLC ("RSD II") is the sole member of RSD.

Riverwalk Square Holdings, LLC ("RSH") is the sole member of RSD II.  WC Riverwalk, LLC

("WCR") is the manager of RSH.  Vanguard City Home, LLC ("Vanguard") is the manager of

WCR.  ACC Homes, Inc. ("ACC") is the manager of Vanguard (RSD II, RSH, WCR, Vanguard

and ACC will collectively or individually be referred to as the "Equity Owners").

10.     LBHI entered into a mezzanine financing loan agreement ("LBHI Loan") with

the Equity Owners dated January 3, 2006.  The LBHI Loan is secured by: (i) Membership Pledge

and Security Agreements each dated January 3, 2006 executed by each Equity Owner and their

respective direct and indirect constituent members (collectively, the "Pledgors") wherein

Pledgors pledged to LBHI their direct and indirect membership interests in RSD; (ii) a

Conditional Guaranty dated January 3, 2006 executed by the Guarantors in favor of LBHI; (iii)

an Environmental Indemnity Agreement, dated January 3, 2006 executed by the Equity Owners

and Guarantors in favor of LBHI; (iv) a Completion Guaranty dated January 3, 2006 executed by

Guarantors in favor of LBHI; (v) certain UCC-1 Financing Statements naming RSD, Equity

Owner and other Pledgors, as debtors, in favor of LBHI, as secured party; and (vi) an

Assignment of Title Insurance Policy and Proceeds dated January 3, 2006 in favor of LBHI

(collectively, the "LBHI Collateral").

11.     LBHI does not have a security interest in the Real Property nor is it a creditor of

RSD in relation to the LBHI Loan.

**C.  Subordination and Intercreditor Agreement**

12.     LBHI, Corus, RSD, the Equity Owners and the Guarantors entered into a certain

Subordination and Intercreditor Agreement dated January 3, 2006 ("Subordination Agreement")

wherein LBHI agreed to subordinate all of its rights, title and interests created under the LBHI

Loan and in the LBHI Collateral to all of the rights, title and interests of Corus Bank created

under the Corus Loan and in the Corus Collateral.  See Subordination Agreement attached hereto

at Exhibit 2.

13.    Pursuant to the Subordination Agreement, Corus agreed to deliver notices of default under the Corus Loan to LBHI.  LBHI was further given the right (but no obligation) to cure any default or event of default under the Corus Loan during a cure period.  In relevant part, Section 9(h) of the Subordination Agreement states as follows:

> Corus Bank agrees and covenants **to deliver to Subordinate Lender [LBHI] copies of all notices of defaults** and Events of Default and to endeavor to deliver copies of all other notices of potential defaults, cost overruns, quality of construction issues, plan modification issues, or other material matters delivered to Guarantors, Equity Owner or Property Owner under the Corus Bank Note, the Corus Bank Security Documents, or other Corus Bank Documents.  Such notices shall be sent to Subordinate Lender at the address specified in Section 15 hereof, or at such other address as Subordinate Lender shall furnish to Corus Bank in the manner provided in Section 15 hereof, provided that any failure to deliver such notices to Subordinate Lender shall not give rise to any cause of action by Subordinate Lender against Corus Bank, and provided further that *Subordinate Lender shall have the right (but no obligation) to cure any Default or Event of Default under the Corus Bank Documents at any time prior to the expiration of the applicable cure periods* set forth in Section 21, which cure periods reference the delivery of certain notices from Corus Bank to Subordinate Lender. (emphasis added).

See Subordination Agreement attached hereto at Exhibit 2 at Section 9(h).

14.    Pursuant to Section 21(b) of the Subordination Agreement, in relevant part,

> If a Default (i.e., for purposes of this Agreement a default of any kind, whether or not a notice or grace period, is applicable thereto) shall occur under any of the Corus Bank Documents (any such Default is also occasionally referred to as a "Senior Loan Default") or, with respect to any default under an of the Corus Bank Documents to which no grace or cure period is provided under the Corus Bank Documents, an Event of Default shall occur under any of the Corus Bank Documents (any such Event of Default is also occasionally referred to as a  "Senior Loan Event of Default"), **Subordinate Lender shall have the right (but not the obligation) to cure such Senior Loan Default or Senior Loan Event of Default which right to cure shall extend for the permitted cure periods set forth below, it being agreed that until the expiration of such permitted cure periods, Corus Bank shall not accelerate the Corus Bank Note, commence a foreclosure of the Corus Bank Deed of Trust, or pursue any other remedy under the Corus Bank Documents** (**except for such remedies [excluding**

*the commencement of a foreclosure] as are needed to preserve collateral for the Corus Bank Loan or preserve the enforceability of the Corus Bank Documents), nor shall Corus Bank impose any default rate, late payment charges, or other fees as a result of such Senior Loan Default or Senior Loan Event of Default* (provided Corus Bank may accrue such amounts after an Event of Default, but such amounts will not be payable in the event Subordinate Lender shall cure the applicable Event of Default as provided herein):

(i) In the case of any Senior Loan Default or Senior Loan Event of Default which can be cured solely by the payment of money, including, without limitation, scheduled payments of principal and interest under the Corus Bank Note (such Senior Loan Defaults and Senior Loan Events of Default being hereinafter referred to as "Monetary Defaults"), *Subordinate Lender's right to cure shall extend through and including the later of (A) five (5) Business Days after receipt by Subordinate Lender of written notice from Corus Bank that such Monetary Default has occurred or (B) three (3) Business Days after the expiration of grace period available to Property Owner [RSD] or Guarantors, as applicable, with respect to such Monetary Default*. (emphasis added).

See Subordination Agreement attached hereto at Exhibit 2 at Section 21(b)(i).

## D. LBHI Bankruptcy

15.    LBHI commenced a voluntary proceeding under chapter 11 of the Bankruptcy Code in this Court on September 15, 2008 ("Petition Date").  LBHI is authorized to continue to operate its businesses and manage its properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

## E. Default

16.    After the Petition Date, RSD defaulted ("Default") on the Corus Loan by failing to make its interests payments due on November 1, 2008 in the amount of $250,085.08 and December 1, 2008 in the amount of $239,607.44.

17.    Accordingly, Corus is prepared to send RSD a notice of default and exercise its Remedies under the Corus Loan.

## IV.  RELIEF REQUESTED

18.     Corus seeks (i) a determination that the automatic stay does not apply to Corus'

exercise of its Remedies, or alternatively, if the Court determines that the automatic stay does

apply, (ii) relief from the automatic stay pursuant to Section 362(d) of the Bankruptcy Code and

Bankruptcy Rule 4001 to exercise its rights under the Corus Loan including, but in no way

limited to, upholding its covenants set forth in Sections 9 and 21 of the Corus Loan Agreement to

send LBHI a copy of the RSD default notice and provide LBHI with the requisite cure period.

## V.  BASIS FOR RELIEF

### A.  The Automatic Stay Does Not Apply

19.     Pursuant to Section 362 of the Bankruptcy Code, the filing of a petition operates

as a stay, applicable to all entities of –

> (1) the commencement or continuation, including the issuance of
> employment of process, of a judicial, administrative, or other action or
> proceeding against the debtor that was or could have been commenced
> before the commencement of the case under this title, or to recover a claim
> against the debtor that arose before the commencement of the case under
> this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a
> judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from
> the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the
> estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any
> lien to the extent that such lien secures a claim that arose before the
> commencement of the case under this title;
>
> (6) any act to collect, assess or recover a claim against the debtor that arose
> before commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a corporate debtor's tax liability for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

20.      Section 362(a)(1) does not apply to Corus' exercise of its Remedies.  Corus is not proposing to commence or continue any action against LBHI.  The only Remedy involving LBHI is providing LBHI a copy of the notice of Default and allowing it the opportunity to exercise its rights under the Subordination Agreement.  All of Corus' Remedies are against RSD, and/or the Guarantors.  Consequently, no action will be taken by Corus against LBHI.  Furthermore, even if its exercise of Remedies was against LBHI, the actions could not have been commenced before the commencement of the case nor are they seeking to recover a claim against LBHI that arose before the commencement of the case under this title as RSD's Default occurred post-petition.

21.      Section 362(a)(2) does not apply to Corus' exercise of its Remedies as no judgment has been obtained.

22.      Section 362(a)(3) does not apply to Corus' exercise of its Remedies because it is only attempting to obtain possession of or control over property of RSD and/or the Guarantors and clearly not over property of the estate.

23.      Section 362(a)(4) does not apply to Corus' exercise of its Remedies because Corus is not trying to create, perfect, or enforce any lien against property of the estate.  It is enforcing its rights against property of RSD and/or the Guarantors, not LBHI.

24.      Section 362(a)(5) does not apply to Corus' exercise of its Remedies because it is not an act to create, perfect, or enforce against property of LBHI any lien to the extent that such

lien secures a claim that arose before the commencement of the case under this title.  Again, the only acts Corus is authorized to take are against RSD and/or the Guarantors and the Default was post-petition and therefore the claim did not arise prior to the Petition Date.

25.    Section 362(a)(6) does not apply to Corus' exercise of its Remedies because it does not have a claim against LBHI and its claim against RSD arose post-petition.

26.    Section 362(a)(7) does not apply to Corus' exercise of its Remedies because it is not seeking to setoff of any debt owing to LBHI that arose before the commencement of the case under this title against any claim against LBHI as its claims are only against RSD and/or the Guarantors.

27.    Section 362(a)(8) does not apply to Corus' exercise of its Remedies because there is no proceeding before a tax court or involving tax liability.

28.    By providing LBHI with a copy of the default notice sent to RSD and allowing LBHI to exercise its rights under the Subordination Agreement if it so chooses, Corus is not violating the automatic stay.  Both actions are mandated by the Subordination Agreement and are not against LBHI or its property in any shape or form.

29.    Similar to this case, the court in *In re J.E. Adams Industries* found that the automatic stay did not apply to an insurance company merely notifying the debtor of its rights. *In re J.E. Adams*, 269 B.R. 808 (N.D. Iowa 2001).  In *J.E. Adams* a corporation purchased a life insurance policy on one of its officers.  The corporation later filed for bankruptcy.  After filing for bankruptcy the corporation failed to pay its premiums on the policy.  Pursuant to the policy, the insurance company had an obligation to notify the corporation that if an upcoming premium payment was not made the policy would terminate.  In accordance with the policy, the insurance company sent the corporation notice that if it did not make its next premium payment that the

policy would terminate.  The court found that the notices did not violate the automatic stay.  The notices served as a reminder that the policy was still in effect and premiums were still due.  The notices did not attempt to get money from the estate, nor did they cancel the policy.  The notices were required by the terms of the policy and sought to advise the debtor of the status of the policy.  The court further noted that the events (sending of the notices) could not have occurred pre-petition because the corporation did not default on the policy after the bankruptcy filing.  Finally the termination of the life insurance policy was not a violation of the stay - it was merely an automatic consequence of the policy.  It was the Debtor's failure to make timely premium payments that led to the cancellation of the policy, not an act of the insurance company.

30.      Thus, Corus seeks a determination that exercising its Remedies under the Corus Loan is not subject to the automatic stay because (i) it is not exercising any right against property of LBHI and (ii) the actions that involve LBHI merely involve notifying LBHI of a non-debtor, RSD's, default and providing it the opportunity to exercise its rights under the Subordination Agreement.

## B.  Alternatively, The Stay Should be Lifted Pursuant to 11 U.S.C. § 362(d)(2)

31.      If the Court determines that the automatic stay does in fact apply, in the alternative, Corus requests relief from the automatic stay.

32.      Section 362(d) of the Bankruptcy Code states that a Court may grant relief from the automatic stay as follows:

> [o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay – (2) with respect to a stay of an act against property under subsection (a) of this section if –
>
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

33.    One of Corus' remedies is to foreclose on the Real Property.  The Real Property is owned by RSD.  LBHI does not have a security interest or ownership interest in the Real Property.  Consequently, LBHI does not have any equity in the Real Property.

34.    In addition, as LBHI does not have a security interest in the Real Property or any equity in the Real Property, it cannot be necessary to an effective reorganization.[1]

**C. Alternatively, The Stay Should be Lifted Pursuant to 11 U.S.C. § 362(d)(1) for Cause**

35.    Section 362(d) of the Bankruptcy Code states that a Court may grant relief from the automatic stay as follows:

> [o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay – (1) for cause.

11 U.S.C. § 362(d)(1).

36.    The Second Circuit has set forth a number of factors that should be considered in a determination to lift the automatic stay for cause, including the impact of the stay on the parties and the balance of harms.  *In re Sonnax Industries, Inc*., 907 F.2d 1280, 1286 (quoting *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)).

37.    The determination of whether cause exists to lift the automatic stay is committed to the sound discretion of the bankruptcy court.  *Id*.

38.    The burden of proof is a shifting one.  The movant has the initial burden of showing cause.  *Id*.  Once the moving party satisfies its initial burden, any party opposing stay relief has the ultimate burden of disproving the existence of cause.  11 U.S.C. § 362(g)(2).

---

[1] Notably, RSD does not have any equity in the Real Property, as an appraisal of the Real Property values it as less than the debt owed to Corus.

39.     Here the balance of the harms clearly weighs in favor of Corus.

40.     If Corus is unable to notify LBHI of RSD's default and LBHI's ability to exercise its rights under the Subordination Agreement, it will be unable to exercise its Remedies under the Corus Loan on property that is not property of the estate nor in which any equity is held.  LBHI will receive no benefit if Corus is prevented from exercising its Remedies and further will be harmed because it will be unable to exercise its rights under the Subordination Agreement, *i.e.*, the ability to cure the Default.

## VI.  CONCLUSION

41.     In conclusion, the acts Corus requests the authority herein to take and the relief sought are not subject to the automatic stay and alternatively, even if they are subject to the automatic stay, relief from the stay is warranted pursuant to sections 362(d)(1) and/or 362(d)(2) of the Bankruptcy Code.

## VII.  NOTICE

42.     Consistent with the Court's Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures filed on September 22, 2008, notice of this Motion will be provided by counsel to Corus to (i) counsel to the Debtors, (ii) the Office of the United States Trustee for the Southern District of New York, (iii) counsel to the Official Committee of Unsecured Creditors, (iv) counsel to the post-petition lenders, (v) counsel for RSD and (vi) all other parties requesting notice under Bankruptcy Rule 2002.

## VIII.  WAIVER OF MEMORANDUM OF LAW

43.     This Motion sets forth the applicable authority upon which it relies herein and does not raise any novel issues of law.  Accordingly, Corus respectfully requests that the Court

waive the requirement contained in Rule 9013-1(b) of the Local Bankruptcy Rules for the

Southern District of New York that a separate memorandum of law be submitted in support of

the Motion.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Corus respectfully requests that the Court enter an order (i) determining

that the automatic stay does not apply to Corus' exercise of its Remedies as set forth herein,

including, without limitation, its notifying LBHI of RSD's default and LBHI's ability to exercise

its rights under the Subordination Agreement, or alternatively, if the Court finds that the

automatic stay applies, (ii) granting Corus relief from the automatic stay to exercise its rights

under the Corus Loan Agreement, including but in no way limited to sending LBHI notification

of RSD's default and LBHI's opportunity to exercise its rights under the Subordination

Agreement and (iii) granting such other and further relief as this Court deems just and proper.


Dated: New York, New York
December 22, 2008

KATTEN MUCHIN ROSENMAN LLP
Attorneys for Corus Bank, N.A.

By:____/s/ Merritt A. Pardini_____
Merritt A. Pardini
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800

-and-

John P. Sieger
Paige E. Barr
525 West Monroe Street
Chicago, Illinois 60661-3693
(312) 902-5200