**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                 :       **Chapter 11 Case No.**
                                         :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*   :       **08-13555 (JMP)**
                                         :
                **Debtors.**            :       **(Jointly Administered)**
-------------------------------------------------------------------x

### ORDER AUTHORIZING AND APPROVING DEBTOR'S SALE OF PURCHASED ASSETS AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE OF LEHMAN BROTHERS' INVESTMENT MANAGEMENT DIVISION

Upon the motion, dated October 6, 2008 (the "Motion") (Docket No. 694), of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases, as debtors in possession (collectively, the "Debtors" and, together with their non-debtor

affiliates, "Lehman"), for an order, pursuant to sections 105, 363, and 365 of title 11 of the

United States Code (the "Bankruptcy Code") and Rules 2002, 6003, 6004, 6006, and 9006 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving,

inter alia, the sale of the Debtors' assets owned, held, or used primarily in connection with

Lehman's investment management business and the assumption and sublease or the assumption

and assignment of certain executory contracts and unexpired leases related thereto, free of all

liens, claims, encumbrances and other interests (the "Transaction"); and the Court having entered

an order on October 22, 2008 (the "Bid Procedures Order") (Docket No. 1175) approving, inter

alia, bidding procedures (the "Bidding Procedures") governing the sale of the assets owned, held,

or used primarily in connection with Lehman's investment management business, and the form

and manner of the notice of the Transaction; and the Debtors having conducted an auction in

accordance with the Bid Procedures Order (the "Auction") on December 3, 2008 for the

consideration of Qualified Bids and the selection of a Successful Bidder (each as defined in the

Bid Procedures Order); and upon the Court's consideration of the Motion and the record of the

hearings held on October 16, 2008, and December 22, 2008 with respect to the Motion

(collectively, the "<u>Sale Hearing</u>"), including the testimony and evidence admitted at the Sale

Hearing; and after due deliberation thereon, and sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:[1]

A.     **<u>Jurisdiction and Venue</u>**.  This Court has jurisdiction to consider this Motion

under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue

of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.     **<u>Statutory Predicates</u>**.  The statutory predicates for the relief sought in the Motion

are Bankruptcy Code sections 105(a), 363, and 365, Bankruptcy Rules 2002, 6003, 6004, 6006,

and 9006 and the applicable Local Rules for the United States Bankruptcy Court for the Southern

District of New York (the "<u>Local Rules</u>").

C.     **<u>Notice</u>**.  As evidenced by the affidavits of service filed with the Court and based

upon the representations of counsel at the Sale Hearing, due, proper, timely, adequate and

sufficient notice of the Motion, the Auction, the Sale Hearing and the Transaction has been

provided as required by the Bid Procedures Order.  Such notice was and is good and sufficient

and no other or further notice need be provided.  Notice of the assumption and assignment and/or

assumption and sublease by a Debtor of Purchased Contracts, Subleased Real Property Leases

and Transferred Real Property Leases (each as defined in the Purchase Agreement, defined

below) as provided herein shall be good, sufficient and appropriate and no other or further notice

need be provided.

---

[1]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be
construed as findings of fact to the fullest extent of the law.  <u>See</u> Fed. R. Bankr. P. 7052.

D.    **Auction.**  Lehman extensively marketed the assets owned, held, or used primarily in connection with its investment management business.  Potential bidders had the full and fair opportunity to submit bids and participate in the Auction.  The Auction was conducted fairly and in good faith, without collusion and in accordance with the Bid Procedures Order.  After consultation with the advisors for the Official Committee of Unsecured Creditors appointed in the above-captioned cases (the "Creditors' Committee"), LBHI selected the Qualified Bid submitted by NBSH Acquisition, LLC  (the "Purchaser") as the Successful Bid (as defined in the Bidding Procedures).  LBHI's determination that the Unit Purchase Agreement, dated December 1, 2008, by and between LBHI and the Purchaser (as amended on December 19, 2008, and as may be further amended, the "Purchase Agreement"), constitutes the highest and best offer for the Purchased Assets (as defined in the Purchase Agreement) constitutes a valid and sound exercise of LBHI's business judgment.  A copy of the Purchase Agreement is attached hereto as Exhibit A.

E.    **Opportunity to Object**.  A reasonable opportunity to object and to be heard with respect to the Transaction, the Motion and the relief requested therein has been given to all interested persons and entities.  A number of objections to the Motion and responses to the proposed Transaction were interposed and considered by the Court.

F.    **Arm's-Length Sale**.  The Purchase Agreement was negotiated, proposed and entered into by LBHI and the Purchaser without collusion, in good faith and from arm's-length bargaining positions.  The Purchaser is not an "insider" of LBHI, as that term is defined in section 101(31) of the Bankruptcy Code.  None of LBHI, the Purchaser or their respective Affiliates or Representatives (each as defined in the Purchase Agreement) has engaged in any conduct that would cause or permit the Purchase Agreement or the Transaction to be avoided

under Bankruptcy Code section 363(n) or has acted in any improper or collusive manner with any person.  The terms and conditions of the Purchase Agreement and the Transaction, including without limitation the consideration provided in respect thereof, are fair and reasonable and shall not be avoided under Bankruptcy Code section 363(n).

G.     **Good Faith Purchaser**.  The Purchaser, its Affiliates and their respective Representatives have proceeded in good faith and without collusion in all respects in connection with this proceeding.  Such persons are therefore entitled to all of the benefits and protections of Bankruptcy Code section 363(m).  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction (including, without limitation, the Ancillary Agreements (as defined in the Purchase Agreement) and the assumption and assignment of the Purchased Contracts and the Transferred Real Property Leases and the assumption and sublease of the Subleased Real Property Leases) with Purchaser, unless such authorization is duly stayed pending such appeal prior to the Closing (as defined in the Purchase Agreement).

H.     **Corporate Authority**.  The Debtors (i) have full corporate power and authority to execute the Purchase Agreement, Ancillary Agreements and all other documents contemplated thereby, (ii) have all of the corporate power and authority necessary to consummate the Transaction, and (iii) no consents or approvals, other than those expressly provided for in the Purchase Agreement and Ancillary Agreements, are required to consummate such Transaction.

I.     **Sale in Best Interests**.  Good and sufficient reasons for approval of the Purchase Agreement, Ancillary Agreements and the Transaction have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

J.      **Business Justification**.  The Debtors have demonstrated both (i) good, sufficient

and sound business purposes and justifications and (ii) compelling circumstances for the

Transaction other than in the ordinary course of business under Bankruptcy Code section 363(b)

before, and outside of, a plan of reorganization in that, among other things, the immediate

approval by the Bankruptcy Court of the Transaction with the Purchaser is necessary and

appropriate to maximize the value of the Debtors' estates, particularly given the wasting nature

of the Purchased Assets.  Entry of an order approving the Purchase Agreement and the Debtors'

entry into the Ancillary Agreements, and all the provisions thereof is a necessary condition

precedent to the Purchaser's consummation of the Transactions.

K.      **Consideration**.  The consideration provided by the Purchaser pursuant to the

Purchase Agreement constitutes reasonably equivalent value or fair consideration under the

Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance

Act and the laws of the United States, any state, territory, possession thereof or the District of

Columbia.  The Purchase Agreement represents a fair and reasonable offer to purchase the

Purchased Assets under these circumstances.  No other person or entity or group of persons or

entities, other than the Purchaser, has offered to purchase the Purchased Assets for an amount

that would give greater value to the LBHI and its affiliates that own or hold Purchased Assets

(together with LBHI, the "Sellers").  Approval of the Motion, the Purchase Agreement, the

Debtors' entry into the Ancillary Agreements and the Transaction by this Court is in the best

interests of the Debtors, the Sellers, their creditors and all other parties in interest.

L.      **Free and Clear**.  The transfer of the Debtors' interests in the Purchased Assets to

the Purchaser under the Purchase Agreement will be a legal, valid, and effective transfer, and

vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased

Assets free and clear of all Liens (as defined in the Agreement), Claims (as defined in section

101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees,

options, rights, restrictions, contractual commitments, rights of first refusal, rights of setoff, or

interests of any kind or nature whether known or unknown, legal or equitable, matured or

unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted,

whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether

imposed by agreement, understanding, law, equity or otherwise (collectively, including without

limitation, Liens, Claims and other interests, the "Interests"), including, but not limited to, (i)

those that purport to give to any party a right or option to effect a setoff against or any forfeiture,

modification or termination of the Debtors' interests in the Purchased Assets, or any similar

rights, (ii) all Excluded Liabilities, (iii) those arising under all mortgages, deeds of trust, security

interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands,

encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not

limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any

attributes of ownership, and (iv) those arising in connection with any agreements, acts, or

failures to act, of any of the Sellers or any of the Sellers' predecessors, affiliates, or

Representatives including, but not limited to, Interests arising under any bulk-transfer laws,

doctrines of successor liability or similar theories; provided, however, nothing herein shall

exclude or be construed as excluding any liabilities under Title IV of the Employee Retirement

Income Security Act of 1974, as amended, by reason of the application of the "controlled group

rules" under such Title IV and sections 414(b) or (c) of the Internal Revenue Code of 1986, as

amended, to any Acquired Subsidiary to the extent otherwise applicable after the consummation

of the transactions contemplated under the Purchase Agreement or any claim of the Pension

Benefit Guaranty Corporation which is deemed to arise prior to the consummation of such

transactions (the "PBGC Rights").  Whenever the term "Interests" is used herein, such term shall

not include any PBGC Rights.

M.    **Free and Clear Findings Needed by Purchaser**.  The Purchaser asserts that it

would not have entered into the Agreement and would not consummate the Transaction, thus

adversely affecting the Debtors, the Sellers, their estates and their creditors, if the sale by the

Debtors of the Purchased Assets to the Purchaser, the assumption and assignment or transfer by

the Debtors of the Purchased Contracts and Transferred Real Property Leases, and the

assumption and sublease by the Debtors of the Subleased Real Property Leases to the Purchaser

was not free and clear of all Interests of any kind or nature whatsoever, or if the Purchaser

would, or in the future could, be liable for any of the Interests.

N.    **Satisfaction of Section 363(f) Standards**.  LBHI and any other Debtor may sell

the Purchased Assets it owns free and clear of any Interests of any kind or nature whatsoever

because in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the

Bankruptcy Code has been satisfied.  The person or entity with any Interest in such Purchased

Assets:  (i) has, subject to the terms and conditions of this Sale Order, consented to the

Transaction or is deemed to have consented to the Transaction; (ii) could be compelled in a legal

or equitable proceeding to accept money satisfaction of such Interest; or (iii) otherwise falls

within the provisions of section 363(f) of the Bankruptcy Code.  Those holders of Interests who

did not object to the Motion are deemed, subject to the terms of this Sale Order, to have

consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of Interests are

adequately protected by having their Interests attach to the proceeds ultimately attributable to the

Purchased Assets against or in which such Interests are asserted, subject to the terms of such

Interests, with the same validity, force and effect, and in the same order of priority, which such

Interests now have against the Purchased Assets or their proceeds, subject to any rights, claims

and defenses the Sellers or their estates, as applicable, may possess with respect thereto.

O.    **No Fraudulent Transfer**.  The Agreement was not and the Transaction will not

be entered into for the purpose of hindering, delaying or defrauding creditors of the Sellers under

the Bankruptcy Code and under the laws of the United States, any state, territory, possession

thereof, or the District of Columbia.  Neither the Sellers nor the Purchaser are entering into the

Transaction contemplated by the Agreement fraudulently for the purpose of such statutory and

common law fraudulent conveyance and fraudulent transfer claims.

P.    **No Substantive Consolidation**.  There is no factual or legal basis to order the

substantive consolidation of the Debtors with any of the Sellers or Acquired Subsidiaries (as

defined in the Agreement) that are not Debtors, if any.

Q.    **No Successor Liability**.  Except for the Assumed Liabilities, the transfer by a

Debtor of the Purchased Assets to the Purchaser under the Agreement shall not result in any

Purchaser Releasee (as defined in paragraph 7 below) or the Purchased Assets having any

liability or responsibility for (i) any Interest against the Debtors or against an insider of the

Debtors, or (ii) the satisfaction in any manner, whether at law or in equity, whether by payment,

setoff or otherwise, directly or indirectly, of any Interest or Excluded Liability (other than PBGC

Rights), or (iii) to third parties or the Debtors except as is expressly set forth in the Agreement.

Without limiting the effect or scope of the foregoing, the transfer of the Purchased Assets from

the Debtors to the Purchaser does not and will not subject the Purchaser or its affiliates,

successors or assigns or their respective properties (including the Purchased Assets) to any

liability for Interests against the Debtors or the Debtors' Interests in such Purchased Assets by

reason of such transfer under the laws of the United States or any state, territory, possession thereof, or the District of Columbia applicable to such Transactions, including, without limitation, any bulk-transfer laws, successor liability or similar theories.

R.    **Cure/Adequate Assurance**.  The assumption and assignment or transfer by a Debtor of Purchased Contracts and Transferred Real Property Leases, and the assumption and the sublease by a Debtor of Subleased Real Property Leases pursuant to the terms of this Sale Order is integral to the Purchase Agreement, does not constitute unfair discrimination, and is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  The Purchaser's contractual obligation to pay the Cure Amounts (as defined below) and the Purchaser's contractual obligation to perform the obligations under the Purchased Contracts, Transferred Real Property Leases, and Subleased Real Property Leases after the Closing shall constitute adequate assurance of future performance.  Purchaser has demonstrated adequate assurance of future performance with respect to the Purchased Contracts, Transferred Real Property Leases, and Subleases and has satisfied the requirements of the Bankruptcy Code, including, without limitation, sections 365(b)(1) and (3) and 365(f)(2)(B) to the extent applicable.

S.    **Personally Identifiable Information**.  Upon Closing, Purchaser will be an "affiliate" of LBHI, as that term is defined in the Bankruptcy Code.  Accordingly, if LBHI were to sell "personally identifiable information" (as defined in section 101(41A) of the Bankruptcy Code) in connection with the Transaction, the appointment of a consumer privacy ombudsman would not be required by section 363(b)(1) of the Bankruptcy Code.

NOW, THEREFORE, IT IS ORDERED THAT:

1.    **Motion is Granted**.  The Motion and the relief requested therein is GRANTED and APPROVED, as set forth herein.

2.    **Objections Overruled**.  Any objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

3.    **Approval**.  The Purchase Agreement and all of the terms and conditions thereto are hereby approved.  The Debtors are hereby authorized to, and cause their non-Debtor affiliates to, (i) execute the Purchase Agreement and the Ancillary Agreements, along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Purchase Agreement, *provided* that such additional documents do not materially change its terms; (ii) consummate the Transaction in accordance with the terms and conditions of the Purchase Agreement and the other agreements contemplated thereby; (iii) assume and assign to Purchaser or another member of the Company Group (as defined in the Purchase Agreement) Purchased Contracts and Transferred Real Property Leases; (iv) assume and sublease to Purchaser or another member of the Company Group Subleased Real Property Leases; and (v) take all other and further actions as may be reasonably necessary to implement the Transaction.

4.    **Valid Transfer**.  As of the Closing, (i) the Transaction effects a legal, valid, enforceable and effective sale and transfer of the Purchased Assets by the Debtors to Purchaser or another member of the Company Group, and shall vest Purchaser or another member of the Company Group with title to such Purchased Assets free and clear of all Interests of any kind whatsoever and (ii) the Agreement, the Ancillary Agreements, the Transaction and any

instruments contemplated thereby shall be enforceable against and binding upon, and not subject

to rejection or avoidance by, the Sellers or any successor trustee appointed with respect thereto.

5.    For the avoidance of doubt, (i) no contracts or leases assigned to Barclays Capital

Inc. or its affiliates in connection with the sale of assets under that certain Asset Purchase

Agreement dated as of September 16, 2008 by and between Barclays Capital Inc., LBHI,

Lehman Brothers Inc., and LB 745 LLC  (and any clarifications, amendments or modifications

thereto, the "BarCap APA") are being assumed and assigned to the Purchaser or another member

of the Company Group in connection with the Transaction and the Purchase Agreement, and (ii)

none of the Purchased Assets or Related Contracts (as such terms are defined in the BarCap

APA) transferred pursuant to the BarCap APA are being transferred to the Purchaser or another

member of the Company Group pursuant to the Transaction, and such contracts, leases and other

assets are Excluded Assets under the Purchase Agreement.  Notwithstanding the foregoing,

nothing in this Sale Order shall affect any disputes among any entities as to whether any assets or

contracts were or were not, or should or should not have been, Purchased Assets or Related

Contracts under the BarCap APA.

6.    **General Assignment**.  On the Closing, this Sale Order shall be construed and

shall constitute for any and all purposes a full and complete general assignment, conveyance and

transfer of the Debtors' interests in the Purchased Assets.  Each and every federal, state, and

local governmental agency or department is hereby directed to accept any and all documents and

instruments necessary and appropriate to consummate the Transaction.

7.    **Exculpation and Release.**  None of the Purchaser, the Acquired Subsidiaries or

their respective affiliates, successors and assigns, and each of their respective current affiliates,

officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents

and representatives (collectively, the "Purchaser Releasees") shall have or incur any liability to, or be subject to any action by any Debtor or Sellers, their respective affiliates, or any of their predecessors, affiliates, successors and assigns, and each of their respective current and former affiliates, officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents and representatives (collectively, the "Releasing Parties"), arising out of the negotiation, investigation, preparation, execution, delivery of the Agreement and Ancillary Agreements and the entry into and consummation of the Transaction, except as expressly provided in the Agreement, the Ancillary Agreements and this Sale Order.

8.     **Indemnification**.  LBHI is authorized to indemnify and hold harmless those persons and entities entitled to indemnification under the Purchase Agreement in accordance with the terms of the Purchase Agreement.  The liabilities of LBHI for indemnification under Section 9.2 of the Purchase Agreement shall not be subject to objection or disallowance under section 502(e) of the Bankruptcy Code.  Any amounts at any time payable by LBHI to the Purchaser, any member of the Company Group, any other person or entity entitled to indemnification and their respective successors and permitted assigns under any provision of the Purchase Agreement shall be deemed allowed administrative claims in LBHI's chapter 11 case, with priority over any and all claims of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code which claim shall be senior to, and have priority over, all other claims pursuant to section 364(c)(1) of the Bankruptcy Code.

9.     **Injunction**.  Except as expressly permitted by the Purchase Agreement or by this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other persons, holding Interests of any kind or nature whatsoever against or in the

Debtors or the Debtors' interests in the Purchased Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Debtors' interests in the Purchased Assets, the operation of the Debtors' businesses before the Closing or the transfer of the Debtors' interests in the Purchased Assets to the Purchaser or another member of the Company Group, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing Interests against the Purchaser Releasees, their respective property, or the interests of the Sellers in such Purchased Assets. Following the Closing, no holder of an Interest against the Debtors shall interfere with Purchaser's title to or use and enjoyment of the Debtors' interests in the Purchased Assets based on or related to such Interests, and all such Interests, if any, shall be, and hereby are transferred and attached to the proceeds from the Transaction in the order of their priority, with the same validity, force and effect which they have against such Purchased Assets as of the Closing, subject to any rights, claims and defenses that the Sellers' estates and Sellers, as applicable, may possess with respect thereto.

10. **No Successor Liability**. No Purchaser Releasee shall as a result of the consummation of the Transaction: (i) be a successor to the Debtors' estates; (ii) have, de facto or otherwise, merged or consolidated with or into the Debtors' estates; or (iii) be a continuation or substantial continuation of the Sellers or any enterprise of the Sellers. Except for the Assumed Liabilities, the transfer of the Purchased Assets to Purchaser or another member of the Company Group under the Agreement shall not result in (i) any Purchaser Releasee or the Purchased

Assets having any liability or responsibility for any Interest against the Debtors or against an insider of the Debtors, (ii) any Purchaser Releasee or the Purchased Assets having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability (other than PBGC Rights), or (iii) any Purchaser Releasee or the Purchased Assets, having any liability or responsibility to the Sellers except as is expressly set forth in the Agreement.

11.     Without limiting the effect or scope of the foregoing, as a result of the closing of the Transaction, neither the Purchaser nor any member of the Company Group shall have successor or vicarious liabilities of any kind or character, including, but not limited to, federal, state or other tax liabilities, U.S. or foreign pension liabilities (other than PBGC Rights), or liabilities based on any theory of antitrust, environmental, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, de facto merger or substantial continuity, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise with respect to the Debtors or any obligations of the Debtors, including, but not limited to, in the case of liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing or any taxes in connection with, or in any way relating to the cancellation of debt of the Sellers or their Affiliates.

12.     **Notice of Assumption and Assignment.**  As soon as practicable, the Debtors shall file with this Court and serve on each non-Debtor counterparty to a Purchased Contract, Transferred Real Property Lease or Subleased Real Property Lease with a Debtor that the

Debtors seeks to assume (collectively, the "Debtors' Contracts") by email, mail, facsimile or

overnight delivery service, a notice of assumption, assignment and cure substantially in the form

attached hereto as Exhibit B (the "Assumption, Assignment and Cure Notice").  The

Assumption, Assignment and Cure Notice shall include the Debtors' calculation of the Cure

Amount for each such Debtors' Contract.  A list of Debtors' Contracts, including Cure Amounts

with respect thereto, will be posted on the website maintained by the Debtors' Court-approved

claims and noticing agent and updated as modified.  Any counterparty to the Debtors' Contracts

shall file and serve on the Notice Parties (as defined in the Assumption, Assignment and Cure

Notice) any objections to (i) the proposed assumption and sublease or assumption and

assignment to the Purchaser or other member of the Company Group (and must state in its

objection, with specificity, the legal and factual basis of its objection) and (ii) if applicable, the

proposed Cure Amount (and must state in its objection, with specificity, what Cure Amount is

required with appropriate documentation in support thereof), no later than fifteen (15) days after

filing and service of the Assumption, Assignment and Cure Notice.  If no objection is timely

received, (i) the counterparty to a Debtors' Contract shall be deemed to have consented to the

assumption and sublease or assumption and assignment to the Purchaser or other member of the

Company Group and shall be forever barred from asserting any objection with regard to such

assumption or assignment, and (ii) the Cure Amount set forth in the Assumption, Assignment

and Cure Notice shall be controlling, notwithstanding anything to the contrary in any Debtors'

Contract or any other document, and the counterparty shall be deemed to have consented to the

Cure Amount and shall be forever barred from asserting any other claims related to such

Debtors' Contract against the Debtors or the Purchaser or other member of the Company Group,

or the property of any of them.  Notwithstanding anything in this paragraph, this Order does not

affect the right of any counterparty that is a governmental entity to object to the assignment of a Debtors' Contract on the basis that any necessary governmental approvals have not been obtained or that any necessary governmental procedures have not been followed.

13.    **Assumption and Assignment.**  Subject to the foregoing paragraph, pursuant to Bankruptcy Code sections 105(a), 363 and 365, and subject to and conditioned upon the Closing, the Debtors' assumption and assignment to the Purchaser or another member of the Company Group of the Purchased Contracts and Transferred Real Property Leases, and the Purchaser's or other member of the Company Group's acceptance of such assignment on the terms set forth in the Agreement, and the assumption and sublease to the Purchaser of the Subleased Real Property Leases, are hereby approved.  On the Closing, the Debtors' Contracts, whether entered into before or after the Petition Date, shall be transferred to or subleased to the Purchaser or another member of the Company Group, free and clear of all Interests of any kind or nature whatsoever other than the Assumed Liabilities, and shall remain in full force and effect for the benefit of the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Debtors' Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment, transfer or sublease. Pursuant to Bankruptcy Code section 365(k), the Debtors shall be relieved from any further liability with respect to the Debtors' Contracts after such assignment to the Purchaser or other member of the Company Group.  The Debtors are hereby authorized to execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign, transfer or sublease the Debtors' Contracts to the Purchaser or other member of the Company Group at Closing.

14.     **Payment of Cure Amounts.**  The Purchaser shall be obligated to pay or cause to

be paid any and all amounts accrued or otherwise owed (collectively, the "Cure Amounts")

under any Debtors' Contract.  The Purchaser shall pay any Cure Amount for each Debtors'

Contract as soon as reasonably practicable after (i) the date on which the contracting

counterparty consents in writing to the Cure Amount, (ii) the date on which the counterparty is

deemed to have consented, or (iii) the date on which the Court enters an order determining the

Cure Amount.  The Purchaser's obligation to pay the Cure Amounts and the Purchaser's promise

to perform the obligations under the Debtors' Contracts after the Closing shall constitute

adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and

365(f)(2)(B).

15.     **Ipso Facto Clauses Ineffective**.  Upon the Debtors' assignment of Purchased

Contracts and Transferred Real Property Leases and the sublease of Subleased Real Property

Leases to the Purchaser or another member of the Company Group under the provisions of this

Sale Order, no default shall exist under any Purchased Contract, Transferred Real Property Lease

or Subleased Real Property Lease, and no counterparty to any Purchased Contract, Transferred

Real Property Lease or Subleased Real Property Lease shall be permitted to declare a default by

the Debtor or Purchaser or another member of the Company Group thereunder or otherwise take

action against the Purchaser or another member of the Company Group as a result of any

Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the

relevant Debtors' Contract.  Any provision in a Debtors' Contract that prohibits or conditions the

assignment or sublease of such Debtors' Contract (including without limitation, the granting of a

lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty,

condition on renewal or extension, or modify any term or condition upon such assignment or

sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and

effect. The failure of the Debtors or the Purchaser or another member of the Company Group to

enforce at any time one or more terms or conditions of any Debtors' Contract shall not be a

waiver of such terms or conditions, or of the Debtors' and Purchaser's rights to enforce every

term and condition of the Debtors' Contract.

16.     **Binding Effect of Order**.  This Sale Order shall be binding upon and shall

govern the acts of all entities, including without limitation all filing agents, filing officers, title

agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds,

administrative agencies, governmental departments, secretaries of state, federal, state and local

officials, and all other persons and entities who may be required by operation of law, the duties

of their office, or contract, to accept, file, register or otherwise record or release any documents

or instruments, or who may be required to report or insure any title or state of title in or to any of

the Purchased Assets.  The terms and provisions of the Purchase Agreement, the Ancillary

Agreements and this Sale Order shall be binding in all respects upon the Sellers, the Debtors'

estates, all creditors of (whether known or unknown) and holders of equity interests in either the

Sellers, Purchaser and their respective affiliates, successors and assigns, and any third parties,

notwithstanding any subsequent appointment of any trustee of the Debtors under any chapter of

the Bankruptcy Code or the Securities Investor Protection Act, as to which trustee(s) such terms

and provisions likewise shall be binding.

17.     **Release of Interests**.  This Sale Order (i) shall be effective as a determination

that, on the Closing, all Interests of any kind or nature whatsoever existing as to the Purchased

Assets owned by one of the Debtors prior to the Closing have been unconditionally released,

discharged and terminated, and that the conveyances described herein have been effected, and

(ii) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.  On the Closing, the Sellers and persons holding an Interest in the Purchased Assets as of the Closing are authorized to execute such documents and take all other actions as may be reasonably necessary to release their Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist.

18.    **Retention of Jurisdiction**.  This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, all amendments thereto and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Purchased Assets to Purchaser or other member of the Company Group; (ii) interpret, implement and enforce the provisions of this Sale Order and any related order; (iii) protect Purchaser Releasees against any Interests against the Sellers or the Purchased Assets of any kind or nature whatsoever, attaching to the proceeds of the Transaction, and (iv) enter any orders under section 363 and 365 of the Bankruptcy Code with respect to the Purchased Contracts, Transferred Real Property Leases and Subleased Real Property Leases.

19.    **Retention of Rights By the Government**.  Nothing in this Sale Order or in the Agreement (i) releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the

owner or operator of property after the date of entry of this Sale Order; or (ii) should be

construed to give Purchaser any more protection against any government unit than it is otherwise

entitled to under 11 U.S.C. § 363(f).  Nothing in this paragraph should be construed to create for

any governmental unit any substantive right that does not already exist under law.

20.    **Sale Proceeds**.  Any and all valid and perfected Interests in the Purchased Assets

of the Debtors shall attach to any proceeds of such Purchased Assets immediately upon receipt of

such proceeds by the Debtors (or any party acting on any Debtor's behalf) in the order of

priority, and with the same validity, force and effect which they now have against such

Purchased Assets, subject to any rights, claims and defenses the Sellers, the Debtors' estates or

any trustee for any Debtor, as applicable, may possess with respect thereto, in addition to any

limitations on the use of such proceeds pursuant to any provision of this Sale Order.

21.    The first priority liens granted to Barclays Bank PLC and Barclays Capital Inc.

under the Senior Secured Superpriority Debtor In Possession Credit Agreement dated as of

September 17, 2008 (the "DIP Agreement") and under the Interim Order (I) Authorizing Debtor

To Obtain Postpetition Financing Pursuant To Sections 363 And 364 Of The Bankruptcy Code,

(II) Granting Liens And Superpriority Claims To Postpetition Lenders Pursuant To Section 364

Of The Bankruptcy Code, And (III) Scheduling Final Hearing, dated September 17, 2008 (the

"DIP Order"), hereby attach to all proceeds of the sale of the Purchased Assets, including

without limitation the cash proceeds and any other consideration paid or delivered to the Debtors

under the Purchase Agreement and in connection with the Transaction, in the same priority and

to the same extent as granted to Barclays under the DIP Agreement and DIP Order, in respect of

all outstanding Obligations (as defined in the DIP Agreement) remaining under the DIP

Agreement and DIP Order which, as of December 19, 2008, Barclays asserts are in an amount of

no less than $7.5 million.  In furtherance of such liens, Barclays is also hereby granted a first

priority lien on all deposit and securities accounts held by LBHI, including without limitation on

any accounts in which the proceeds of the Transaction are deposited, to secure such Obligations

in the amount of $7.5 million and unpaid interest and fees as provided in the DIP Agreement and

the DIP Order.  The Debtors, the Creditors' Committee and Barclays each reserve their rights

with respect to the existence and amount of unpaid Obligations under the DIP Agreement.

22.    **No Material Modifications**.  The Purchase Agreement and any related

agreements, documents or other instruments may be modified, amended or supplemented by the

parties thereto, in a writing signed by such parties, and in accordance with the terms thereof,

without further order of the Court, *provided* that any such modification, amendment or

supplement does not have a material adverse effect on the Debtors' estates and has been agreed

to between the Creditors' Committee, LBHI and the Purchaser.

23.    **Subsequent Orders and Plan Provisions**.  Nothing contained in any subsequent

order of this Court or any court of competent jurisdiction in these or other chapter 11 cases

(including without limitation, an order authorizing the sale of assets pursuant to sections 363,

365 or any other provision of the Bankruptcy Code or any order entered after any conversion of a

chapter 11 case of the Debtors to a case under chapter 7 of the Bankruptcy Code) or any chapter

11 plan confirmed in any Debtors' bankruptcy cases or any order confirming any such plan shall

nullify, alter, conflict with, or in any manner derogate from the provisions of this Sale Order, and

the provisions of this Sale Order shall survive and remain in full force and effect.

24.    **Failure to Specify Provisions**.  The failure specifically to include any particular

provisions of the Purchase Agreement in this Sale Order shall not diminish or impair the

effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

25.     **Allocation**.  The Purchaser shall pay proceeds of the Transaction (i.e., equity in the Purchaser) to LBHI on behalf of all of the Sellers.  The rights of all parties in interest in respect of the proper allocation of proceeds received by the Sellers are reserved, as among each of the Sellers (and without impairing or affecting, in any way, Purchaser's rights under the Agreement).  Upon allocation of the proceeds of the Transaction and advanced notice to the Creditors' Committee, LBHI shall be authorized to distribute an amount of money to each of the other Sellers in lieu of each other Sellers' allocated share of proceeds of the Transaction, in an amount equal to the value as of the Closing of each Sellers' allocated share of proceeds (plus interest at an applicable rate).

26.    **Preservation of Certain Records**.  Subject to further order of the Court, the

Debtors and the Purchaser are hereby ordered to take appropriate measures to maintain and

preserve, until the consummation of any chapter 11 plan for the Debtors, the books and records

and any other documentation, including tapes or other audio or digital recordings and data in or

retrievable from computers or servers, relating to or reflecting the records held by it or its

Affiliates relating to the Business, including the accounts, property and trading records of the

customers of the Sellers.  In addition, the Debtors and Creditors' Committee shall promptly

identify reasonable procedures for preserving information in the Debtors' or Purchaser's

possession related to potential tax or financial audits of, government investigations of, or claims

against the Debtors, as well as any claims that the Debtors may have against third parties, and the

Sellers and Purchaser shall maintain and reserve such information, subject to further order of the

Court until the consummation of any chapter 11 plan for the Debtors.


Dated:    New York, New York
          December 22, 2008

                                        _/s/ James M. Peck_____
                                        HONORABLE JAMES M. PECK
                                        UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                  :          **Chapter 11 Case No.**
                                                       :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*            :          **08-13555 (JMP)**
                                                       :
            **Debtors.**                               :          **(Jointly Administered)**
------------------------------------------------------------------x

## NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE AMOUNT
## WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES
## <u>RELATED TO LEHMAN BROTHERS' INVESTMENT MANAGEMENT DIVISION</u>

By order, dated October 22, 2008 (the "Bid Procedures Order), the United States Bankruptcy Court for the Southern District of New York approved bidding procedures (the "Bidding Procedures") to govern the sale by Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliates (collectively, the "Sellers") of the assets owned, held, or used primarily in connection with the Sellers' investment management business.

In accordance with the Bidding Procedures, the Sellers conducted an auction on December 3, 2008, and, after consultation with the advisors for the Official Committee of Unsecured Creditors appointed in the above-captioned cases, selected the bid submitted by NBSH Acquisition, LLC (the "Purchaser") as the Successful Bid (as defined in the Bidding Procedures). The Purchaser is a limited liability company formed by certain senior managers of the investment management business.

By order, dated December _, 2008, the Bankruptcy Court approved the sale and granted the request of LBHI and its debtor affiliates (collectively, the "Debtors") to assume and sublease or assume and assign certain executory contacts and unexpired leases upon consummation of the transaction contemplated in the Unit Purchase Agreement between LBHI and the Purchaser (the "Purchase Agreement"). **A list of the Purchased Contracts, Transferred Real Property Leases and Subleased Real Property Leases (each as defined in the Purchase Agreement and collectively, the "Designated Contracts") is attached hereto as Exhibit A and available on the internet at http://chapter11.epiqsystems.com/lehman (the "Website"), or upon request to LBHI's noticing agent at 1-866-841-7868.** The Debtors and the Purchaser reserve the right to remove any Designated Contracts prior to consummation of the transaction contemplated in the Purchase Agreement.

You are receiving this Notice because you may be a party to a Designated Contract (or represent a party to a Designated Contract).

The Debtors have determined the appropriate cure amount (the "Cure Amount") for each Designated Contract and have listed such Cure Amounts on Exhibit A hereto and the Website.

**To the extent that a non-Debtor counterparty objects to (i) the assumption and sublease or assumption and assignment to the Purchaser of such party's respective Designated**

**Contract or (ii) the Cure Amount, the non-Debtor counterparty must file and serve an objection upon the following parties, so as to be received by no later than [__], 2008, at 4:00 p.m. (New York Time): [_____].**

If an objection challenges a Cure Amount, the Debtors have been authorized to move forward to assume, assume and sublease, or assume and assign the Designated Contract that is the subject of a Cure Amount objection, provided that the Cure Amount asserted by the objector is held in reserve. If the Debtors receive an objection to a Cure Amount, the Debtors reserve the right to decide to reject the contract or lease at issue if the Cure Amount is ultimately determined by order of the Court to be higher than the Cure Amount set forth in this Notice.

**If no objection to the Cure Amount of a Designated Contract is timely filed and served, the Debtors may assume and sublease or assume and assign that Designated Contract, and the Cure Amount set forth on Exhibit A and the Website shall be binding upon the respective non-Debtor counterparty to the Designated Contract for all purposes in the Debtors' chapter 11 cases, and such non-Debtor counterparty shall be forever barred from objecting to the Cure Amount, including, without limitation, the right to assert any additional cure or other amount with respect to their respective Designated Contract.**

Dated: New York, New York
_____, 2008

_____
Lori R. Fife
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
 Debtors In Possession