## Exhibit 1

## Amendment No. 1 to Aircraft Sale and Purchase Agreement

CES AVIATION IX, LLC
c/o Lehman Brothers Inc.
1271 Sixth Avenue, 45th Floor
New York, NY 10020

December 18, 2008

Peregrine Aviation Services, Inc.
3300 Airport Road
Boca Raton, FL 33431
Attn: Scott Dandeneau

Re:  Amendment No. 1 to Aircraft Sale and Purchase Agreement (the "Amendment")

Dear Scott:

Reference is made to that certain Aircraft Sale and Purchase Agreement dated as of October 29, 2008 (the "Agreement") between CES Aviation IX, LLC ("Seller") and Peregrine Aviation Services, Inc. ("Purchaser"). Capitalized terms used herein, but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Agreement.

**A.**  Seller and Purchaser agree that the following Definitions in Section 1.1 of the Agreement are hereby amended and restated in their entirety as follows:

"**Balance of the Purchase Price**" means the amount of Five Million Six Hundred Fifty Thousand Dollars ($5,650,000.00), *i.e.*, the Purchase Price minus the Deposit received by the Escrow Agent.

"**Discrepancy**" or "**Discrepancies**" means a defect of an airworthiness nature, the correction of which is necessary to cause the Aircraft to be in the Delivery Condition, but does not include "cosmetic" defects to any part of the Aircraft resulting from normal wear and tear associated with prior usage of the Aircraft.

"**Inspection Facility**" means Executive Fliteways, Inc. located at Long Island MacArthur Airport in Islip, New York.

"**Purchase Price**" means the amount of Five Million Nine Hundred Thousand Dollars ($5,900,000.00).

**B.**     Seller and Purchaser agree that the following Definition is hereby added to Section 1.1 of the Agreement in alphabetical order:

"**Order**" has the meaning set forth in Subsection 4.1.5.

**C.**     Seller and Purchaser agree that Section 3.2 of the Agreement is hereby amended and restated in its entirety as follows:

"**Inspection Authority.** The Aircraft shall be subjected to an Inspection at the Inspection Facility, may be conducted by Purchaser's representatives, Standard Aero, and which shall be undertaken at Purchaser's sole cost and expense, in order to verify that the Aircraft is in the Delivery Condition. The scope of the Inspection shall be in accordance with Exhibit G attached hereto. Purchaser's financial responsibility for costs associated with the any test flight(s) shall be limited to (i) the Movement Costs and (ii) in the event this Agreement is terminated due to Purchaser's inability to satisfy any of the conditions precedent set forth in Section 4.2 (other than as set forth in Subsection 4.2.6), the sum of Ten Thousand Dollars ($10,000) representing the cost associated with returning the Aircraft to its prior location. Seller shall have and retain "operational control" of the Aircraft as defined in the applicable FAR (operational control as defined in FAR § 1.1, means, with respect to a flight, the exercise of authority over initiating, conducting or terminating a flight) and exclusive possession, command and control over the Aircraft. The pilot-in-command shall have final and complete authority to postpone or cancel any flight for any reason or condition which, in his or her judgment, will compromise the safety of the flight. The parties further acknowledge and agree that only personnel essential to the safe and reasonable conduct of the test flights shall be on board the Aircraft, including three (3) technical representatives of Purchaser (with one pilot occupying the jump seat)."

**D.**     Seller and Purchaser agree that Section 3.4 of the Agreement is hereby amended and restated in its entirety as follows:

"**Aircraft Acceptance/Rejection.** Purchaser shall conduct the Inspection as soon as practicable after December 22, 2008 given the availability of Standard Aero's manpower during the holiday period and, in any event, shall complete the Inspection no later than January 9, 2009. Within two (2) Business Days after the completion of the Inspection, Purchaser will (i) accept the Aircraft, (ii) accept the Aircraft, subject to repair of all Discrepancies, or (iii) reject the Aircraft, but only if it is conclusively determined that the Aircraft cannot be made to comply with the Delivery Condition, by delivering to Seller, with a copy to Escrow Agent, a completed, executed Aircraft Technical Acceptance/Rejection Letter with the applicable line marked to show Purchaser's acceptance or rejection. In the event Purchaser rejects the Aircraft following a conclusive determination that the Aircraft cannot be made to comply with the Delivery Condition, upon confirmation that Purchaser has paid or made satisfactory arrangements for the payment of the costs and expenses of the Inspection and the Movement Costs, the Deposit shall immediately be refunded to Purchaser, and this Agreement shall terminate and be of no further force or effect and neither party shall have any further liability or



obligation hereunder. In the event Purchaser accepts the Aircraft as set forth hereinabove under (i) or (ii), the Deposit shall become non-refundable subject to the repair of all Discrepancies required to make the Aircraft comply with the Delivery Condition and as set forth in Subsection 8.2.2, Subsection 8.3.1, Section 8.4 and Section 8.23."

**E.** Seller and Purchaser agree that a new Subsection 4.1.6 of the Agreement is hereby added to the Agreement in numerical order as follows:

" As promptly as practicable, Seller shall obtain an order ("Order") of the Bankruptcy Court approving the Purchase Price of Five Million Nine Hundred Thousand Dollars ($5,900,000.00). Each of Seller and Purchaser agrees that it will promptly take such actions as are reasonably required to obtain the Order."

**F.** Seller and Purchaser agree that a new Subsection 4.2.8 of the Agreement is hereby added to the Agreement in numerical order as follows:

"The obligation set forth in Subsection 4.1.6 shall have been satisfied."

**G.** Seller and Purchaser agree that a new Subsection 4.3.11 of the Agreement is hereby added in numerical order as follows:

"The obligation set forth in Subsection 4.1.6 shall have been satisfied."

**H.** Seller and Purchaser agree that Section 8.11 of the Agreement is hereby amended by replacing the notice address of Seller as follows:

"If to Seller:         CES Aviation IX, LLC
                       c/o Lehman Brothers
                       1271 Sixth Avenue, 45th Floor
                       New York, NY 10020
                       Attn: Francine Kittredge
                       Telephone: (212) 526-3778
                       Telefax: (212) 526-3200
                       Email: fkittredd@lehman.com "

**I.** Seller and Purchaser agree that Section 8.23 of the Agreement is hereby amended and restated in its entirety as follows:

"**Confidentiality.** The terms and conditions of this Agreement, and all writings, discussions, and negotiations in connection with the transaction contemplated by this Agreement (including, without limitation, the fact that discussions and negotiations have been conducted by the parties), shall remain strictly confidential and shall not be disclosed by either party, without the prior written consent of the other party, except that each party shall be entitled to disclose the terms and conditions of this Agreement (i) as may be required by law or legal process; (ii) to such party's attorneys, accountants, consultants, and other advisors performing services for such party with respect to or

affected by the transaction contemplated by this Agreement including Escrow Agent and Inspection Facility and their personnel; (iii) to each party's employees with a need to know; (iv) as may be required to permit such party to pursue all available remedies for breach of this Agreement by the other party; and (v) for filing with the Bankruptcy Court."

**J.**     Seller and Purchaser agree that a new Section 8.26 of the Agreement is hereby added to the Agreement in numerical order as follows:

"Termination. If the Closing does not occur prior to January 20, 2009, either party may terminate this Agreement in which case the Deposit will be returned to the Buyer."

**K.**     Seller and Purchaser agree that Exhibit A to the Agreement is hereby amended and restated in its entirety and replaced with Exhibit A attached to this Amendment.

**L.**     Seller and Purchaser hereby agree that Exhibit B to the Agreement is hereby amended and restated in its entirety and replaced with Exhibit B attached to this Amendment.

**M.**     Seller and Purchaser agree that a new Exhibit G is hereby added to the Agreement in alphabetical order in the form of Exhibit G attached to this Amendment.

**N.**     Seller and Purchaser hereby agree that Purchaser has obtained the order of the Bankruptcy Court referenced in Subsection 4.1.5 of the Agreement. Seller and Purchaser further agree that the Condition Precedent to Seller's Obligations in Subsection 4.2.6 of the Agreement and the Condition Precedent to Purchaser's Obligations in Subsection 4.3.9 of the Agreement are both hereby deemed satisfied.

**O.**     Purchaser shall deliver to Seller no later than December 19, 2009, a bank financing letter ("Bank Letter") which evidences purchaser's ability to fund the Balance of the Purchase Price. The Bank Letter and the financing referenced therein shall not require any additional inspection of the Aircraft as a condition to financing.

Except as expressly provided above, the Agreement is otherwise unmodified and each party hereto expressly reserves any and all of its respective rights and remedies under the Agreement.

THIS AMENDMENT SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, UNITED STATES OF AMERICA, WITHOUT REFERENCE TO PRINCIPLES OF CONFLICTS OF LAW OTHER THAN SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

The parties agree that the terms and conditions of this Amendment and the Agreement, taken together constitute the entire agreement between the parties with respect to the subject matter hereof. This Amendment and the Agreement taken together,



supersede all prior agreements between the parties, express or implied. Each of Seller and Purchaser represents and warrants that this Amendment has been duly authorized by all necessary organizational action of such party, and, subject to the receipt of the Order and approval of the Bankruptcy Court, constitutes such party's legal, valid and binding obligations and does not require the consent of any person.

The provisions of this Amendment shall not be varied otherwise than by an instrument in writing executed by or on behalf of both parties.

This Amendment may be executed in any number of counterparts, each of which when executed and delivered constitutes an original of this Amendment, but all the counterparts shall together constitute one and the same agreement.



Very truly yours,

CES AVIATION IX, LLC

By: _____
Name: Francine Kittredge


**ACCEPTED AND AGREED:**

PEREGRINE AVIATION SERVICES, INC.

By: _____
Name: _____
Title: _____

Very truly yours,

CES AVIATION IX, LLC

By: _____
Name: Francine Kittredge

**ACCEPTED AND AGREED:**

PEREGRINE AVIATION SERVICES, INC.

By: _____
Name: SCOTT F. DANDENEAU
Title: PRESIDENT

**ACCEPTED AND AGREED:**

INSURED AIRCRAFT TITLE SERVICE, INC.

By: *Joan F. Roberts* (signature)
Name: Joan F. Roberts
Title: Vice President

# EXHIBIT A

## AIRCRAFT SPECIFICATIONS



**BLOOMER deVERE**
GROUP AVIA INC.

**1987 Dassault Falcon 50**
**Serial Number 179**

| | |
|---|---|
| **AIRFRAME:** 8137.2 Hours | **ENGINES: HONEYWELL TFE731-3D-1C** |
| **Landings:** 4352 | *Engines on MSP Gold* |
| | **Engine 1:** 8021 Hours    4327 Cycles |
| **APU:** 2929.6 Hours | **Engine 2:** 7936.6 Hours    4080 Cycles |
| Honeywell GTCP36-100A | **Engine 3:** 7337.6 Hours    3492 Cycles |

=================== **AVIONICS** ===================

- Collins APS 85 Auto Pilot
- Dual Bendix King KTR 950 HF w/ SELCAL
- Dual Collins VHF-22d COMM's w/ 8.33 Spacing
- Collins Pro Line II w/ 4 EFIS Tubes
- Dual Collins VIR-32 NAV's
- Collins TWR-850 Radar w/ TCAS Display
- Dual Collins ADF 60A
- Fairchild A100A CVR
- Dual Collins DME-42

- Artex C406-1 ELT w/ NAV Interface
- Honeywell Mark V EGPWS
- Collins ALT-55B Radar Altimeter
- Dual RMI
- Honeywell TCAS II w/ Change 7
- Dual Honeywell Laseref
- Dual Universal UNS-1E FMS w/ UNILINK
- Dual Collins MST-67A Mode S Transponder w/ Flight ID

=================== **ADDITIONAL FEATURES** ===================

- Sky-Connect Iridium SatCom
- Dual Davtron Clocks
- 15 " LCD Fwd Monitor
- DVD/CD Player
- 20" LCD Aft Monitor Airshow 401
- Four 8" LCD Seat Monitors
- Warming Oven

- Dataports
- XMR-100 XM Radio System
- 115 VAC Outlets
- Tail Light Logo
- Magnastar C-2000 Flight Phone W/ Iridium Sat Phone

=================== **MAINTENANCE** ===================

- RVSM
- CAMP
- Engines w/ N1 DEEC

=================================== **INTERIOR** ===================================

Nine passenger seats with jump seat. Aft Lavatory. Four forward club seats. Two aft club seats opposite a three place divan. All seats and divan are covered with tan leather. Tan carpet. White Alcantra sidewalls and headliner. Side rails and tray tables in dark brown veneer. Forward galley is equipped with a coffee maker and warming oven.

=================================== **EXTERIOR** ===================================

Overall white with blue and gray stripes.

*Specifications/descriptions are provided as introductory information and do not constitute representations or warranties of Bloomer deVere or Bloomer deVere client(s). Accordingly, you should rely on your own inspection of the aircraft. Any proposed transaction is subject to final execution of a contract acceptable in form and substance to Bloomer deVere, its client(s), and their counsel.*



**EXHIBIT B**

**DELIVERY CONDITION OF AIRCRAFT**

At the Closing, the Aircraft shall be delivered in full conformity and complying with all the items and conditions set forth below, collectively constituting the required "**Delivery Condition**":

1. Free and clear of all Liens;

2. With an FAA Form 8050-2 and a Warranty Bill of Sale;

3. In airworthy condition, with a valid and current Airworthiness Certificate issued by the FAA without restrictions and limitations and on the FAA Civil Aviation Registry;

4. Conforming in all material respects to the Aircraft Specification, including all equipment currently required for operations pursuant to FAR Part 91 and all additional loose and safety equipment currently used or maintained for use on the Aircraft (other than personal items);

5. With all Aircraft Documents original (except that copies shall be acceptable in the case that originals are not required by Dassault and the FAA), complete and continuous, up to date, printed or published in English and in compliance with manufacturer requirements and FAR Part 91;

6. With all inspections, maintenance and repairs performed in accordance with the manufacturer's maintenance, technical or operations manual, and current on its maintenance in accordance with the manufacturer's approved maintenance plan and CAMP and in compliance with all calendar and hourly inspections, landing inspections, time-limited components, applicable FAA Airworthiness Directives and Mandatory Service Bulletins, with time frames for completion that require completion on or prior to the Closing Date;

7. With customary assignments of all remaining manufacturers' warranties (including Airframe, Engines, APU and avionics) and the Dassault Assignment of Warranties executed by Seller, Purchaser and Dassault and with the enrollment in the Honeywell MSP Gold Program with respect to the Engines transferable, current, in good standing and fully paid up as of the Closing Date;

8. With no Material Damage or history of Material Damage;

9. With no Airframe, Engines or APU corrosion beyond allowable limits or in excess of manufacturer's tolerances as stated in the maintenance, technical and/or operations manuals or which otherwise requires a repair constituting Material Damage;

10. In compliance with respect to RVSM, MNPS, RNP5, RNP10, FM Immunity and 8.33 COM performed and completed and the Aircraft Transponder shall meet the Mode S Enhanced Surveillance (EHS) for European operations; and

11. With all Discrepancies corrected, remedied or repaired.

Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to such terms in the Agreement.



# EXHIBIT G

## SCOPE OF INSPECTION

1) Perform a borescope of the Engines and APU.

2) Perform Engine 5pt runs.

3) Inspect the center Engine "S" duct and lateral Engine intakes for cracks and corrosion.

4) Perform a borescope of the wings and center fuel tank.

5) Inspect under the toilet and cockpit for corrosion.

6) Perform general walk around inspection of the Aircraft.

7) Perform operation check of systems.

8) Test flight.

9) Check for fuel leaks.

