**Hearing Date and Time: January 14, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: January 9, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Michael P. Kessler

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                           :
In re                                      :    Chapter 11 Case No.
                                           :
LEHMAN BROTHERS HOLDINGS INC., et al.,     :    08-13555 (JMP)
                                           :
              Debtors.                     :    (Jointly Administered)
                                           :
                                           :
-------------------------------------------------------------------x
```

### NOTICE OF DEBTOR'S MOTION PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 9014, AND RULES 6004-1, 9006-1 AND 9014-1 OF THE LOCAL BANKRUPTCY RULES FOR APPROVAL OF THE SALE OF DEBTOR'S INTEREST IN A LOAN SECURED BY PROPERTY LOCATED AT 816 CONGRESS AVENUE IN AUSTIN, TEXAS

PLEASE TAKE NOTICE that a hearing on the annexed motion of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases (together, the "Debtors") pursuant to sections 105 and 363 of title 11 of the United States

Code, Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rules 6004-1, 9006-1, and 9014-1 of the Local Rules of the United

States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules"),

for approval of the sale of the Debtor's interest in the mezzanine loan secured by a mortgage

relating to real property located at 816 Congress Avenue in Austin, Texas (the Loan), pursuant to

a Term Sheet dated as of December 16, 2008 (the "Sale Agreement") ("attached to the motion as

"Exhibit A") with Thompson National Properties (the "Purchaser"), all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **January 14, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that, pursuant to the Sale Agreement, LBHI will sell, and the Purchaser will purchase (the "Proposed Sale"), among other things, the Loan and the equity investment made by LB 816 Congress LLC, one of the Debtors' non-debtor subsidiaries, in 816 Congress Holdings LLC, a joint venture that indirectly owns the property located at 816 Congress Avenue in Austin, Texas.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Harvey R. Miller and Michael P. Kessler, attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st

Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Paul Schwartzberg, Brian

Masumoto, Linda Riffkin, and Tracy Hope Davis; (iv) Milbank, Tweed, Hadley & McCloy LLP,

1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Dennis

O'Donnell, and Evan Fleck, attorneys for the official committee of unsecured creditors appointed

in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to

be received no later than **January 9, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the

"Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: December 23, 2008
      New York, New York

                         /s/ Michael P. Kessler
                         Harvey R. Miller
                         Michael P. Kessler

                         WEIL, GOTSHAL & MANGES LLP
                         767 Fifth Avenue
                         New York, New York 10153
                         Telephone: (212) 310-8000
                         Facsimile: (212) 310-8007

                         Attorneys for Debtors
                         and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Michael P. Kessler

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :    08-13555 (JMP)
                                          :
                  Debtors.                :    (Jointly Administered)
                                          :
                                          :
------------------------------------------------------------------x
```

**DEBTOR'S MOTION PURSUANT**
**TO SECTIONS 105 AND 363 OF THE BANKRUPTCY**
**CODE, FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**2002, 6004 AND 9014, AND RULES 6004-1, 9006-1 AND 9014-1**
**OF THE LOCAL BANKRUPTCY RULES FOR APPROVAL**
**OF THE SALE OF DEBTOR'S INTEREST IN A LOAN SECURED**
**BY PROPERTY LOCATED AT 816 CONGRESS AVENUE IN AUSTIN, TEXAS**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, including Lehman Commercial Paper Inc. ("LCPI"), as debtors and debtors-in-possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), respectfully represent as follows:

**Background**

1.       Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

       2.     On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

On September 16, 2008, a proceeding was commenced under the Securities Investor Protection

Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under

SIPA (the "SIPC Trustee") is administering LBI's estate.

## Jurisdiction

       3.     This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Lehman's Business

       4.     Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman has been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

       5.     Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

## **Relief Requested**

6.      The Debtors hereby seek authority to sell their interest in the mezzanine

loan secured by property located at 816 Congress Avenue in Austin, Texas (the "Loan"), under

sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9014, and

Rules 6004-1, 9006-1, and 9014-1 of the Local Rules of the United States Bankruptcy Court for

the Southern District of New York (the "Local Bankruptcy Rules"), to one or more of the

Thompson National Property Funds, each of which is managed by Thompson National

Properties (the "Purchaser"), pursuant to a Term Sheet dated December 16, 2008 (the "Sale

Agreement") (attached hereto as "Exhibit A") between LBHI and the Purchaser (the "Proposed

Sale").  Contemporaneously, one of the Debtors' non-debtor subsidiaries, LB 816 Congress

LLC,[1] will transfer its interest[2] (the "Equity") in 816 Congress Holdings LLC to the Purchasers.

---

[1] LBHI is an indirect parent of LB 816 Congress LLC, which in turn holds a 90% joint venture interest in 816 Congress Holdings LLC.  Grubb and Ellis Realty Investors (formerly Triple Net Properties) holds the remaining 10% interest.  816 Congress Holdings LLC owns 100% of the equity of 816 Congress Mezzanine LLC, which is the borrower under the Loan and which owns 100% of the equity of 816 Congress Owner LLC, which is the owner of the property located at 816 Congress Avenue.

[2] LCPI had previously entered into a Participation Agreement, dated August 23, 2007 (the "Participation Agreement"), with Restructured Asset Securities and Enhanced Returns, Series 2007-A Trust, ("Racers") whereby LCPI pledged to Racers its interest in the joint venture (816 Congress Holdings LLC).  In the Participation Agreement, Racers agrees that LCPI may, in its sole discretion, exercise or refrain from exercising any right, or take or refrain from taking any action, in respect of any request, act, decision or vote with respect to any assets underlying the participation.  The Participation Agreement also provides that "in the event that Lehman Brothers Holdings Inc. is rated "BBB" or below by Standard & Poor's or "Baa2" or below by Moody's Investors Service Inc., the Grantor shall use its best efforts to promptly assign all of the Participated Assets to the Participant".  LBHI has been rated below "BBB" by Standard & Poor's and below "Baa2" by Moody's Investors Service Inc. since the Commencement Date.  On September 30, 2008, US Bank Trust National Association, as Collateral Agent for RACERS, sent a Notice and Demand to LCPI requesting that LCPI assign to RACERS all participated assets.  As of this date, LCPI has not assigned any participated assets to RACERS.

The combined purchase price is $14,275,000 with $14,274,000 for the Loan flowing to the

Debtors' Estates and $1,000 for the equity flowing to LB 816 Congress LLC.

## The Proposed Sale

Background Information

       7.      In July of 2007, LBHI originated loans of $90,560,000 consisting of a

$73,775,000 senior loan commitment (the "Senior Loan") to 816 Congress Owner LLC and the

Loan[3] to 816 Congress Mezzanine LLC, which is owned by a joint venture[4] between LB 816

Congress LLC (90% ownership) and Grubb and Ellis Realty Investors ("G&E") (10%

ownership).  Thereafter, LBHI transferred its interest in the Senior Loan to Swedbank.  Pursuant

to this financing, 816 Congress Owner LLC, which is a subsidiary of 816 Congress Mezzanine

LLC, purchased a class A-/B+ office building located at 816 Congress Ave., Austin, Texas (the

"Building").  The Building serves as collateral for the Senior Loan and the Loan and contains

430,113 net rentable square feet.  It also includes an attached parking garage with 828 spaces.

       8.      To date, the Building has underperformed relative to the Debtors

expectations.  Prior to a recently executed lease with Teachers Retirement System of Texas (the

"TRS Lease"), the Building's occupancy rate stood at 70%.  This weak performance is linked to

a decline in both the national and regional commercial real estate markets.  Second quarter 2008

vacancy in Austin's central business district increased from 15.5% to 16.1% and a recent forecast

from prominent developer Cushman and Wakefield predicts further downward pressure on rental

rates as demand for office space fails to keep pace with the 1.8 million square feet of local office

space becoming available by the end of 2008, only 5% of which is pre-leased.  In addition, the

Building faces lease roll-over of 45% over the next five years, likely requiring substantial outlays

---

[3] A $16,785,000 mezzanine loan commitment.

[4] The joint venture entity is called 816 Congress Holdings LLC.

for lease commissions and tenant improvements, and exposing the Debtors to the possibility of having to make substantial concessions in the negotiation of replacement leases.

        9.      While the TRS Lease has raised the occupancy rate to 81%, it will also consume approximately $4,000,000 of the remaining $7,500,000 of available loan proceeds of the Senior Loan and the Loan allocated for tenant improvements and leasing commissions. Based on a conservative assumption of 65% in-place tenants renewal, and tenant improvement assumptions of $25 per square foot for new tenants, and $10.25 per square foot for renewal tenants, the Debtors project an additional $8,600,000 in tenant improvement / leasing commission costs over the next five years. Since the remaining Loan proceeds total approximately $3,500,000 (after allocation to the TRS lease), the Debtors project a $5 million budget shortfall, and potentially, an equity capital call of approximately $5 million. As a result of these, and other factors discussed below, the Debtors determined, prior to the Commencement Date, to explore potential exit strategies.

The Marketing Process

        10.      Beginning in late winter of 2008, and continuing through the Commencement Date, the Debtors engaged in a substantial marketing process for sale of the Loan, inclusive of approximately $2,336,713 in future funding obligations. This process began with a review by the Debtors of their extensive database of interested parties. From this review, the Debtors identified approximately 400 potential deal partners who were notified of the opportunity to purchase the Loan. Based on the responses to those initial inquiries, the Debtors followed up with substantive discussions of the proposed terms of the transaction with approximately 25 potential deal partners. The majority of these discussions, however, were cursory, either because of the Building's poor performance relative to its leverage, or because of its location. Ultimately, the Debtors received three competitive bids, summarized below:

| Bidder: | TNP | Trigate | Granite Properties |
|---|---|---|---|
| Value of Bid: | $88,050,000[5] | $77,956,099[6] | $78,132,937[7] |

The Debtors selected the TNP bid because it provided the highest implied value and also relieved them of their interest in 816 Congress Holdings LLC, thus cutting off any liability for further funding obligations.  This second factor is significant because, as discussed above, the Debtors believe additional funding would be required to preserve their interest in the Loan.

The Sale Agreement

> 11.    The Sale Agreement[8] additionally includes the following salient provisions:

> (1)    The purchase by the Purchaser is on an "as is" basis without any representation, warranty or recourse, other than the basic representations that are set out in the term sheet.

> (2)    The purchase by the Purchaser of LB 816 Congress LLC's equity interest in 816 Congress Holdings LLC is conditioned on the Purchaser acquiring G&E's equity in 816 Congress Holdings LLC, and the approval of Swedbank, the senior loan holder.

**The Relief Requested is Warranted
and in the Best Interests of the Debtors and Their Estates**

> 12.    Ample authority exists for approval of the Proposed Sale.  Section 363 of the Bankruptcy Code provides, in relevant part, "that a debtor, after notice and a hearing, may

---

[5] This value was calculated by adding TNP's offer for the Loan ($14,274,000), and its bid for Lehman's equity ($1000), to the fully funded value of the Senior Loan ($73,775,000).

[6] This value was calculated by adding Trigate's offer, which consisted of a 15% discount of the outstanding balance of the Senior Loan (85% of $61,223,964 or $52,040,369) and the future funding obligations Trigate was to assume ($15,282,793) and Lehman's basis in the retained equity ($10,632,937).

[7] This value was calculated by adding Granite's offer, which consisted of a 10 % discount of the fair market value of the property inclusive of the future funding obligations (90% of $75,000,000 or $67,500,000) and Lehman's basis in the retained equity ($10,632,937).

[8] To the extent there are any inconsistencies between the summary description of the Sale Agreement contained herein and the terms and conditions of the Sale Agreement, the terms of the Sale Agreement control.

use, sell, or lease, other than in the ordinary course of business, property of the estate." 11

U.S.C. § 363(b)(1).  Although section 363 of the Bankruptcy Code does not set forth a standard

for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's

assets, courts in the Second Circuit and others, in applying this section, have required that it be

based upon the sound business judgment of the debtor.  *See In re Chateaugay Corp.*, 973 F.2d

141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from

the evidence presented a good business reason to grant such application); *Committee of Equity*

*Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)

(same).  Once a court is satisfied that there is a sound business justification for the proposed sale,

the court must then determine whether (i) the debtor has provided the interested parties with

adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is

proceeding in good faith.  *In re Betty Owens Sch.*, 1997 U.S. Dist. Lexis 5877 (S.D.N.Y. 1997);

*accord In re Delaware and Hudson Ry. Co.*, 124 B.R. at 166; *In re Decora Indus., Inc.*, Case No.

00-4459, 2002 WL 32332749 at *3 (Bankr. D. Del. May 20, 2002).

13.    The Debtors' decision to enter into the Sale Agreement is an exercise of

their sound business judgment.  TNP's offer of $14,275,000 is the best offer the Debtors received

after a substantial marketing process and its acceptance provides a degree of certainty to

creditors who could otherwise be subject to the risks inherent in funding an asset in a declining

market.  The Sale Agreement also relieves the Debtors from the obligation to provide $2,336,713

in future funding obligations under the requirements of the Loan.

14.    Further, the Debtors' decision to accept the TNP offer, rather than

repeating the marketing process, has several advantages for creditors.  The national economy in

general, and the market for commercial real estate in particular, have suffered through one of the

most unstable periods in recent memory.  That instability has not abated and a significant

recovery is unlikely to occur within the time-frame of the Debtors' chapter 11 cases.  Therefore,

it is extremely unlikely that remarketing the Loan would produce a better offer and the time and

expense of conducting such a process would distract the Debtors from other matters and drain

further resources from the estate.

15.    In addition, even holding the property involves an unacceptably high

degree of risk.  On top of the potential funding requirements discussed above, the Debtors are

cognizant of the possibility that current and prospective tenants have been affected by the

economic downturn.  Defaults under any of the existing leases would likely drive down the value

of the Loan and any related litigation would be expensive and recovery uncertain.

16.    In sum, the Sale Agreement (i) represents the best offer for the Loan; (ii)

is fair and reasonable; (iii) provides for a greater recovery for the Debtors' creditors than would

be provided by any other reasonably available alternative; and (iv) constitutes reasonably

equivalent value and fair consideration under the Bankruptcy Code and non-bankruptcy law.

17.    The Debtors' efforts to market the Loan provided adequate notice and a

reasonable opportunity to be heard in connection with the Proposed Sale.  The Debtors have

properly exercised their reasonable business judgment and have shown good and sufficient

business justification under sections 105(a), 363(b) and 363(l) of the Bankruptcy Code for a sale,

outside a plan of reorganization.  The Proposed Sale, therefore, should be approved.

### Sale Free and Clear of Liens, Claims, Encumbrances, and Interests

18.    The Sale Agreement requires the sale of the Loan to be free and clear of

any lien.  Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell

property of the estate "free and clear of any interest in such property of an entity other than the

estate" if (i) applicable nonbankruptcy law permits the sale of such property free and clear of

such interest, (ii) such entity consents, (iii) such interest is a lien and the price at which such

property is to be sold is greater than the aggregate value of all liens on such property, (iv) such

interest is in bona fide dispute, or (v) such entity could be compelled, in a legal or equitable

proceeding, to accept a money satisfaction of such interest.  11 U.S.C. § 363(f)(1) – (5).

Although the Debtor is unaware of any lien on the Loan, with respect to any party asserting a

lien, claim, encumbrance or other interest against the assets, the Debtor anticipates that it will be

able to satisfy one or more of the conditions set forth in section 363(f).

**The Sale Agreement Is the
<u>Product of Good Faith and Contains Fair Consideration</u>**

19.    Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's

interest in property purchased from the debtor notwithstanding that the sale conducted under

section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)]
> … does not affect the validity of a sale … to an entity that purchased … such
> property in good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(m) "fosters the 'policy of not only affording finality to the

judgment of the bankruptcy court, but particularly to give finality to those orders and judgments

upon which third parties rely.'"  *In re Chateaugay Corp.*, 1993 U.S. Dist. Lexis 6130, *9

(S.D.N.Y. 1993) (quoting *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 at 147).  *See also

Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides

that good faith transfers of property will not be affected by the reversal or modification on appeal

of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re

Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m),

good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay

pending appeal").

20.    The Sale Agreement is the product of arm's-length, good-faith negotiations in a competitive marketing process.[9]  Based upon the record to be made at the sale hearing, the Debtor intends to request a finding that the Purchaser is a good-faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

**Relief Under Bankruptcy Rule 6004(h)**

21.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale or lease of property . . . is stayed until expiration of 10 days after entry of the order, unless the Court orders otherwise."  Fed. R. Bank. P. 6004(h).[10]  The Debtor and the Purchaser believe that the order approving the sale of the Loan should be effective immediately upon entry of such order.  Therefore, waiver of the ten-day stay is requested.

**Notice**

22.    No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on September 22, 2008 governing case management and administrative procedures for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) all parties who have requested notice in these chapter 11 cases; (vii) JPMorgan Chase Bank, N.A.; (viii) Lehman Brothers Inc.; (ix) 816 Congress Mezzanine LLC; (x) TNP Properties Inc.; (xi) Restructured

---

[9] Mark Osgood, a managing director at Lehman until May 17, 2008, is currently the managing partner and president of the Purchasers Debt Fund.  Mr. Osgood was involved in Lehman's original acquisition of Lehman's interest in the Loan and the Senior Loan in 2007, but he was not involved in Lehman's efforts to market the transaction in 2008 and he was not involved in Lehman's post-Commencement Date decision to select the TNP bid.  However, he did participate in preparing the TNP bid.

[10] Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General Order M-308 of the United States Bankruptcy Court for the Southern District of New York, signed on October 11, 2005 by Chief Judge Stuart M. Bernstein.

Asset Securities with Enhanced Returns, Series 2007-7-MM Trust; (xii) Restructured Asset

Securities with Enhanced Returns, Series 2007-A Trust; and (xiii) Lehman Brothers Special

Financing. The Debtors submit that no other or further notice need be provided.

        23.    No previous motion for the relief sought herein has been made to this or

any other court.

        WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  December 23, 2008
      New York, New York

/s/ Michael P. Kessler
Harvey R. Miller
Michael P. Kessler

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Exhibit A**
**(The Term Sheet)**

NY2:\1944917\05\15_PH05!.DOC\58399.0003

# LEHMAN BROTHERS

Indicative Terms and Conditions
816 Congress (the "Project")
December 16, 2008

***The following terms represent talking points and are intended for discussion purposes only. The information contained herein is strictly confidential and is intended for distribution to and review by the intended parties only.***

## Summary Terms and Conditions

| | |
|---|---|
| **Transaction:** | 1 – (A) The purchase by Purchaser of the 1st Mortage B Note ("Mezzanine Loan") from Lehman Brothers Holdings Inc. ("Seller") on an "as is" basis without any representation, warranty or recourse, other than basic representations that (i) Seller is the sole holder of the Mezzanine Loan free and clear of all liens, claims and encumbrances, (ii) the Mezzanine Loan has a future funding obligation in the approximate amount of $2,336,713 and a representation as to the Maximum future funding obligations under the senior loan, (iii) to the Seller's actual knowledge, there are no defaults by Seller or the underlying borrower under the Mezzanine Loan or senior loan, and (iv) confirmation of the outstanding principal balance of the Mezzanine Loan and the senior loan. The Purchase Price of the Mezzanine Loan is $14,274,000 including the future funding obligation set forth in item (ii) above. 2 – The purchase by Purchaser of Seller's 90% equity interest in 816 Congress Holdings LLC, (the "JV Entity") conditioned on Purchaser acquiring the 10% interest in 816 Congress from Grubb and Ellis Realty Investors, and Senior Lender approval. The Purchase Price of the 90% JV Equity Interest is $1,000. |
| **Mezzanine Loan:** | That certain mezzanine loan made by Seller to 816 Congress Mezzanine LLC in the amount of $16,785,000 with an interest rate of LIBOR plus 2.00%. The Mezzanine Loan shall have no other future funding obligations, except as described above. |
| **Equity Position:** | That certain capital contribution, in the amount of approximately $23,173,515, as more fully detailed in the table attached, and as confirmed by the closing funding letter from |

| | Windels, Marx, Lane, and Mittendorf attached and as also confirmed by the attached Version 18 Excel spreadsheet, which "Waterfall" tab contains the XIRR calculation for Lehman Brothers' $23,173,515 equity investment in the joint venture based on the closing sources and uses. The $23,173,515 is the equity investment made by LB 816 Congress LLC and represents a 90% interest in 816 Congress Holdings LLC, as well as rights to distributions, allocations of profits and losses and voting and approval rights attributable thereto, in the JV Entity. |
|---|---|
| **Closing** | Subject to Motion and Bankruptcy Court approval to be obtained as soon as possible. The expected closing date is January 31, 2009 with an outside closing date of February 15, 2009. |
| | N/A |
| **Buyer's/Borrower's Due Diligence; Loan Documents:** | Purchaser has completed substantial due diligence and has received all information with respect to the Mezzanine Loan, the Senior Loan, the underlying property, the underlying Borrower and any underlying guarantor(s) as is customarily reviewed in transactions of this nature. Purchaser has been granted access by Seller to the Property in order to conduct customary inspections.<br><br>The respective rights and obligations of the holders of the Mezzanine Loan and the senior loan shall be governed by an Intercreditor Agreement mutually acceptable to Purchaser and Seller.<br><br>If the existing Mezzanine Loan, Senior Loan or Equity Position governing documents are to be modified or amended prior to the closing, Purchaser shall be given sufficient time to review the proposed changes and any such modifications or amendments shall be subject to Purchaser's prior approval. |
| | N/A |
| | N/A |
| **Purchaser:** | One or more TNP Funds, each of which is managed by Thompson National Properties, of which  Tony Thompson is a principal (the "Purchaser").  The funds or vehicles formed and managed by the Purchaser or an affiliate |

|  | thereof and Tony Thompson (each a "TNP Fund") is managed, directly or indirectly, by Thompson National Properties and Tony Thompson, and is otherwise satisfactory in form and substance to Seller. |
| --- | --- |
| **Recourse:** | N/A |
| **Lender:** | N/A |
| **Credit Facility:** | N/A |
| **Advance Rate:** | N/A |
| **Maturity Date:** | N/A |
| **Voluntary** | N/A |
| **Cash Management:** | N/A |
| **Interest Rate:** | N/A |
| **Payments:** | N/A |
| **Mandatory Prepayments:** | N/A |
| **Mark to Market:** | N/A |
| **Assumability:** | N/A |
| **No Pledge:** | N/A |
| **Collateral:** | N/A |
| **Custodian:** | N/A |
| **Reporting Requirements:** | N/A. |
| **Financial Covenants:** | N/A. |
| **Assignments and** | N/A |

| | |
|---|---|
| **Participations:** | |
| **Credit Facility Documentation:** | N/A |
| **Diligence:** | N/A |
| **Costs and Expenses:** | N/A |
| **Governing Law:** | N/A |
| **Confidentiality:** | This term sheet is are confidential and proprietary to Seller and Purchaser. |
| **Not a Commitment:** | This term sheet is a summary of indicative terms and conditions purely for discussion purposes and does not constitute a commitment on the part of Lehman Brothers Holdings Inc., or any of its affiliates (individually or collectively "Seller") to lend money or to sell the Mezzanine Loan and or Equity Position.  It is not intended to describe all of the terms and conditions of the proposed transaction described herein, but only to be indicative of certain terms and conditions around which the transaction will be structured. Any offer, commitment, obligation of Seller shall arise only upon the signing of formal documents by authorized signatories of Seller and Purchaser. |
| **Patriot Act:** | Seller is committed to complying with U.S. statutory and regulatory requirements designed to assist the federal government in combating money laundering and any activity which facilitates the funding of terrorist or criminal activities. The USA Patriot Act enhances the money laundering prevention requirements imposed on securities firms and other financial institutions. As part of our customer identification and verification procedures, Seller may ask Purchaser to provide additional information as necessary to verify their identity and comply with these procedures. Until such additional information or documentation is provided, Lender may not be able to effect any transactions for the Borrower or Guarantor. |

If **Purchaser's** acceptance of this term sheet is not received by Lender by 5:00 PM New York City time on December [], 2008, this term sheet shall be of no further force and effect. Please indicate your acceptance of the matters set forth herein by signing in the place provided below and returning the executed Term Sheet via fax to Steven Gorey at (646) 333-8718.

Sincerely,

**[PURCHASER**                                                    **SELLER:**

By: _____                .

                                                                LEHMAN BROTHERS HOLDINGS
                                                                INC.

                                                                By: _____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------------x
                                          :
In re                                     :      Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :      08-13555 (JMP)
                                          :
                          Debtors.        :      (Jointly Administered)
                                          :
                                          :
-------------------------------------------------------------------x
```

### ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 9014, AND RULES 6004-1, 9006-1 AND 9014-1 OF THE LOCAL BANKRUPTCY RULES FOR APPROVAL OF THE SALE OF DEBTOR'S INTEREST IN A LOAN SECURED BY PROPERTY LOCATED AT 816 CONGRESS AVENUE IN AUSTIN, TEXAS

Upon the motion, dated January 23, 2009 (the "Motion"), of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and,

together with their non-debtor affiliates, "Lehman"), pursuant to sections 105 and 363 of

the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9014, and Local Bankruptcy

Rules 6004-1, 9006-1, and 9014-1 for approval of the sale (the "Proposed Sale")of the

Debtors' interest in a loan secured by real property located at 816 Congress Avenue in

Austin, Texas (the "Loan") pursuant to a Sale and Purchase Agreement dated as of

December 16, 2008 (the "Sale Agreement") with Thompson National Properties (the

"Purchaser"), all as more fully described in the Motion; and the Court having jurisdiction

to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the

Southern District of New York Any and All Proceedings Under Title 11, dated July 10,

1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested

therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, proper, timely,

adequate and sufficient notice of the Motion and Proposed Sale having been provided in

accordance with the procedures set forth in the order entered September 22, 2008

governing case management and administrative procedures [Docket No. 285];  and a

reasonable opportunity to object or be heard regarding the Motion and Proposed Sale

having been afforded to all such parties; and it appearing that no other or further notice

need be provided; and that the legal and factual bases set forth in the Motion establish

just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is hereby:

FURTHER FOUND AND DETERMINED THAT:

The Debtors have properly exercised their reasonable business judgment

in executing the Sale Agreement.  The Debtors have shown good and sufficient business

justification under sections 105(a), 363(b) and (l) of the Bankruptcy Code for the sale of

property outside a plan of reorganization.

The relief sought in the Motion is in the best interests of the Debtors, their

estates, and creditors, and all parties in interest.

The ultimate consideration to be paid by the Purchaser (i) represents the

best offer for the Loan and the Equity; (ii) is fair and reasonable; (iii) provides for a

greater recovery for the Debtors' creditors than would be provided by any other practical,

available alternative; and (iv) constitutes reasonably equivalent value and fair

consideration under the Bankruptcy Code and non-bankruptcy law.

The Purchaser is not an "insider" or "affiliate" of the Debtors (within the meaning of the Bankruptcy Code). Neither the Debtors nor the Purchaser has engaged in conduct that would prevent the application of section 363(m) of the Bankruptcy Code or permit the Sale Agreement to be avoided under section 363(n) of the Bankruptcy Code. Consequently, the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded thereby.

NOW, THEREFORE, IT IS HEREBY:

ORDERED that the Motion is GRANTED; and it is further

ORDERED that, pursuant to sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9014, and Local Bankruptcy Rules 6004-1, 9006-1, and 9014-1, the Proposed Sale is approved and the Debtors are authorized, but not required, to consummate all of the transactions contemplated thereby, including, but not limited to, the Sale Agreement; and it is further

ORDERED that, pursuant to section 363(f) of the Bankruptcy Code, the Debtor's right, title, and interest in the Loan shall be sold to Purchaser free and clear of any and all liens, claims, and encumbrances; and it is further

ORDERED that the Purchaser is a good faith purchaser and is granted the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code and consummation of the Sale Agreement shall not be affected by reversal or modification on any appeal of this Order; and it is further

ORDERED that the Debtor is authorized to perform all obligations under the Sale Agreement and to execute such other documents and take such other actions as

may be necessary or appropriate to effectuate the Sale Agreement and the provisions of

this Order; and it is further

ORDERED that any stay imposed by Bankruptcy Rule 6004(h)[11] is hereby

waived and this Order shall be immediately effective and enforceable; and it is further

ORDERED that that this Court shall retain jurisdiction to interpret and

enforce this Order.


Dated:  January ___, 2009
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE


---

[11] Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General Order M-308 of the United States Bankruptcy Court for the Southern District of New York, signed on October 11, 2005 by Chief Judge Stuart M. Bernstein.