WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
:
**In re**                                            :          **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :          **08-13555 (JMP)**
:
**Debtors.**                     :          **(Jointly Administered)**
:
:
-----------------------------------------------------------------x

## NOTICE OF DEBTORS' MOTION PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE REQUESTING EXTENSION OF EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11 PLAN AND SOLICITATION OF ACCEPTANCES THEREOF

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases (together, the "Debtors") for an order extending the exclusive period during which the

Debtors may file a chapter 11 plan and the period during which the Debtors may solicit

acceptances thereof, all as more fully described in the Motion, will be held before the Honorable

James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court,

Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New

York 10004 (the "Bankruptcy Court"), on **January 14, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis; Esq., (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **January 9, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: December 29, 2008
      New York, New York

/s/ Lori R. Fife
Harvey R. Miller
Lori R. Fife
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| | : | |
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
| | : | |

------------------------------------------------------------------x

### DEBTORS' MOTION PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE REQUESTING EXTENSION OF EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11 PLAN AND SOLICITATION OF ACCEPTANCES THEREOF

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

The Motion of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated

debtors, as debtors (together, the "Debtors" and, collectively with their non-debtor affiliates,

"Lehman"), pursuant to section 1121(d) of the Bankruptcy Code, respectfully represents:

### Background

1.      Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"), a wholly owned subsidiary of LBHI and a registered broker dealer. James W. Giddens, Esq. is the trustee appointed under SIPA (the "SIPA Trustee") and is administering LBI's estate.

## Jurisdiction

4.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Preliminary Statement

5.      Prior to September 15, 2008, Lehman Brothers was the fourth largest investment bank in the United States, with consolidated assets and liabilities of over six hundred billion dollars, respectively. It operated a global business twenty-four hours a day, seven days a week. Through and among its nearly 4,000 different subsidiary entities and over 25,000 employees, Lehman's business involved thousands of transactions each day at the speed of light and on a world-wide basis, moving billions of dollars around the world.

6.      Given the global lack of confidence that gripped the world's markets in the Summer and all of 2008, Lehman's liquidity contracted as clearing banks demanded greater

and greater amounts of collateral. Throughout the Summer, Lehman explored numerous alternatives in order to shore up its balance sheet and regain the confidence from it's counterparties. Despite numerous initiatives, the pressures on Lehman continued to grow. Ultimately, these efforts were unsuccessful.

7.      On September 15, 2008, the Debtors commenced the first of the Debtor cases. The days that followed were a period of perpetual crisis. On September 15, 2008 at approximately 7:00 a.m., negotiations began with Barclays Capital Inc. ("Barclays") in an effort to salvage some value and protect customers and employees. At about the same time, Lehman's subsidiaries in the United Kingdom and other international locations were compelled to commence their own insolvency proceedings to protect their assets. These companies were an integral part of Lehman's worldwide financial reporting system. When Lehman Brothers Inc. (Europe) ("LBIE") entered into administration in the United Kingdom, the IT systems that Lehman shared were, effectively, closed down, causing a total global breakdown of the financial reporting system.

8.      As LBHI was struggling to survive, more and more of its foreign subsidiaries were subjected to local insolvency proceedings. As each subsidiary ran out of cash, administrators, receivers, and liquidators took over; and the parent's subsidiaries, who had previously worked together and shared information in unison, became like strangers to each other.

9.      Since the Commencement Date, the majority of the Debtors' time and resources have been devoted to completing the transition to operating under chapter 11 and maximizing the value of their assets – substantial tasks in cases of this size and complexity. The achievements and challenges in the first three and a half months of these cases have been

substantial – asset sales of unprecedented proportions, commencement of the evaluation of over

1.5 million derivatives transactions, formulation of programs to attempt to maximize the value of

derivatives and loan portfolios, pursuing rights and remedies against scores of affiliates in

foreign insolvency proceedings, and reengineering a previously integrated cash management

system involving billions of dollars and thousands of entities, all while being inundated with

contested matters and adversary proceedings and attempted plenary actions as well as thousands

of informal requests for information concerning accounts, securities, loan agreements,

contractual issues, etc.

10.    The sheer magnitude of matters have required and continue to require

substantial and continuing efforts on the part of the Debtors and their professionals to address the

many complex issues and problems that are presented by these extraordinary and complex cases.

As a result, the Debtors' are requesting a six-month extension of their exclusive periods to file

chapter 11 plans and to solicit acceptances of such plans, without prejudice to their rights to seek

further extensions thereof.  Given the substantial progress the Debtors have made in the early

stages of these cases, the proposed extension is reasonable.

## Relief Requested

11.    Section 1121(b) of the Bankruptcy Code provides for an initial period of

120 days after the commencement of a chapter 11 case during which a debtor has the exclusive

right to propose and file a chapter 11 plan (the "Plan Period").  See 11 U.S.C. § 1121(b).  Section

1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day Plan

Period, it has a period of 180 days after the commencement of the case to obtain acceptance of

such plan, during which time competing plans may not be filed (the "Solicitation Period" and

together with the Plan Period, the "Exclusive Periods").  See id. at § 1121(c)(3).  Pursuant to

section 1121(d) of the Bankruptcy Code, where the initial 120-day and 180-day Exclusive

Periods provided for in the Bankruptcy Code prove to be an unrealistic time frame for proposal

and solicitation of a plan, the Court may extend a debtor's Exclusive Periods for cause.  See id.

at § 1121(d).

12.     An extension of the Plan Period through and including July 13, 2009 and

the Solicitation Period through and including September 16, 2009 is requested, without prejudice

to the Debtors' rights to seek further extensions thereof as may be appropriate.  Currently, the

Debtors' Plan Period expires on January 13, 2009 and the Solicitation Period is set to expire on

March 16, 2009.  In the context of the complexity and size of these cases the proposed six-month

extension is justified and appropriate.

### The Debtors' Cases Warrant the Extension Requested

13.     In the face of the immense challenges that were confronted on the

Commencement Date, the Debtors have made significant progress in stabilizing the

administration of the chapter 11 cases.  Since the Commencement Date, the Debtors and their

professionals have completed multiple complex sales under section 363 of the Bankruptcy Code,

including the sale of the Debtors' North American capital markets business, including the assets

of LBI, and related real estate to Barclays, the sale of the Debtors' interest in Eagle Energy

Partners I L.P. ("Eagle Energy"), the sale of the Debtors' interest in R3 Capital Management,

LLC, and the sale of certain assets related to the Investment Management Division – all with the

purpose of protecting assets and values for the benefit of economic stakeholders in these cases.

As a result of the Debtors' efforts, the aggregate cash balances of the Debtors approximate $4

billion.

14. The administration of the chapter 11 cases has not been a simple task. In the initial 120 days of these cases, over 2,400 motions, notices, applications, objections, and orders have been filed in the Debtors' chapter 11 cases on behalf of the Debtors and in many instances against the Debtors, each of which requires the Debtors' attention. Pleadings and actions against the Debtors include:

- the commencement of 18 adversary proceedings seeking a range of relief;

- 18 motions for relief from the automatic stay, including motions to exercise purported rights of setoff;

- 7 motions (with 11 parties filing joinders thereto) seeking Rule 2004 examinations;

- 5 motions for orders compelling decisions to assume or reject executory contracts, including requests for performance or adequate protection;

- 5 motions for the appointment of separate committees, trustees, and examiners and 1 joinder thereto; and

- 3 appeals from decisions of this Court, most seriously, 2 appeals from the order authorizing the sale of the North American capital markets business to Barclays.

15. In addition, the Debtors have been faced with challenges relating to the affairs of foreign affiliates. Since the Commencement Date, at least seventy-six foreign insolvency proceedings have been commenced in over fifteen countries. In most of those proceedings, LBHI is the largest creditor and holds sizeable claims. As a result, the Debtors have devoted significant time and energy to preserving their interests abroad. Such efforts have included:

- contacting local administrators;

- meeting with local administrators;

- preparing and filing proofs of claim;

- attending meetings of creditors; and

- where appropriate, seeking appointment to creditors' committees.

16.    The Debtors have faced considerable difficulty due to the commencement
of multiple insolvency proceedings of their foreign affiliates, including the administration of
LBIE in the UK.  The commencement of these proceedings seriously complicated the Debtors'
ability to access Lehman's integrated global financial reporting system without which the
Debtors could not effectively administer their chapter 11 estates.  Consequently, the Debtors,
their management, and their professionals have devoted a substantial portion of their time to
recovering, stabilizing and marshalling an unprecedented volume of information and data.  These
tasks have been extremely complex and require regular coordination among the Debtors and a
number of other parties, including Barclays, Nomura Holdings, Inc. ("Nomura"), the SIPA
Trustee, and various Lehman entities.  To date, the Debtors have recovered more than half of the
critical data that is needed to administer the chapter 11 cases and have begun reconstructing
financial records that may be relied upon by the Debtors and parties in interest in proposing and
negotiating chapter 11 plans.

17.    In order to facilitate the orderly administration of these estates and
overcome the obstacles resulting from the failure of an integrated firm and the resulting
independent insolvency proceedings the world over, many of which resulted in asset sales to
third parties, the Debtors have worked to negotiate and implement Transition Services
Agreements ("TSAs") with Barclays, LBIE, Nomura (for the Asia sale and separately for India)
and Eagle Energy.  Generally, the TSA's provide the Debtors with access to employees with
material information and knowledge of the Debtors' businesses, data and company records, and
services that were provided to divested businesses.  The TSA's represent extraordinarily

calculated efforts by the Debtors to maximize the value of their assets while preserving their

ability to administer their estates.  Unfortunately, for a variety of reasons, including the nature of

the financial services and investment businesses, the implementation of the existing TSAs have

been difficult and require more forceful efforts to require satisfactory performance by the parties.

18.     Throughout the frenetic four months, the Debtors have been consciously

aware of their fiduciary duties as to all creditors.  In furtherance of the requirements of the

Bankruptcy Code, the Debtors have made every effort to keep creditors apprised of

developments on a real-time basis through their published websites and have made their

professionals available for direct inquiries.  In addition, the Debtors conduct regular meetings

and conferences with the statutory Creditors' Committee and the office of the U.S. Trustee.  In

these cases, regular and open communication with creditors is a fundamental goal of the Debtors.

19.     The events that have dominated these cases and consumed the majority of

the Debtors' time and energy since the Commencement Date have made it difficult to complete

schedules, statements of financial affairs and related documents (collectively, the "<u>Schedules</u>").

The information needed to compile the Debtors' Schedules is not only voluminous, but also is

located in numerous places across the globe and disbursed in multiple systems.  Even after the

Debtors complete the extraordinarily time consuming process of recovering all of the business

records, the data must be collated and cross-referenced to ensure accuracy and consistency

before the Schedules can be filed.  Recognizing these difficulties, this Court has extended the

Debtors' time to file their Schedules through and including January 13, 2009.

**<u>The Debtors have Demonstrated Cause for an Extension of Exclusivity</u>**

20.     The Bankruptcy Code neither defines the term "cause" for purposes of

section 1121(d) nor establishes formal criteria for an extension.  The legislative history indicates,

however, that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors.  See H.R. Rep. No. 95-595, at 231-32 (1978), reprinted in 1978 U.S.C.C.A.N. 5787 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

21.    In determining whether cause exists to extend the Exclusive Periods, a court may consider a variety of factors to assess the totality of circumstances in each case.  See In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (identifying the factors used by courts to determine whether cause exists to extend exclusivity); In re Dow Corning Corp., 208 B.R. 661, 664 (Bankr. E.D. Mich 1997); In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).  Those factors include, without limitation:

> (a) the size and complexity of the debtor's case;
>
> (b) the existence of good-faith progress towards reorganization;
>
> (c) a finding that the debtor is not seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands;
>
> (d) existence of an unresolved contingency; and
>
> (e) the fact that the debtor is paying its bills as they come due.

See In re McLean Indus., Inc., 87 B.R. at 834 (citations omitted); accord In re Express One Int'l, Inc., 194 B.R. at 100 (identifying four of the five above-quoted factors, among others, as relevant in determining whether "cause" exists to extend exclusivity); In re United Press Int'l, Inc., 60 B.R. 265, 269 (Bankr. D.C. 1986) (holding that the debtor showed "cause" to extend its exclusivity period based upon certain of above-quoted factors).

22.    The primary objective of a chapter 11 case is the formulation, confirmation, and consummation of a consensual chapter 11 plan.  The Exclusive Periods are

intended to afford a debtor a full and fair opportunity to propose a consensual plan and solicit

acceptances of such plan without the deterioration and disruption that is likely to be caused by

the filing of competing plans by non-debtor parties.

23.     Application of the aforementioned standards to the facts of these chapter

11 cases demonstrates sufficient "cause" to grant the Debtors' requested extension of the

Exclusive Periods so that they may have a full and fair opportunity to propose consensual plans

and to solicit acceptances.

**These are the Largest Chapter 11 Cases in History**

24.     Both Congress and the courts have recognized the size and complexity of

a debtor's case alone may constitute cause for the extension of a debtor's exclusive period to file

a plan and the period to solicit acceptances of such a plan.  "[I]f an unusually large company

were to seek reorganization under chapter 11, the court would probably need to extend the time

in order to allow the debtor to reach an agreement."  H.R. Rep. No. 95-595, at 232 (1978),

reprinted in 1978 U.S.C.C.A.N. 5787.  In In re Texaco Inc., the court stated:

> The large size of a debtor and the consequent difficulty in
> formulating a plan of reorganization for a huge debtor with
> a complex financial structure are important factors which
> generally constitute cause for extending the exclusivity periods.

In re Texaco, Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987).

25.     The unprecedented size and complexity of these cases warrant an

extension of the Exclusive Periods.  Reviewing the assets and liabilities that comprise Lehman's

consolidated balance sheet of over $600 billion respectively requires significant time and effort.

Those efforts are complicated by the globally integrated structure under which Lehman operated

and closed down on September 15, 2008.  The insolvencies of Lehman's foreign subsidiaries,

which aggravated the breakdown in information sharing and financial reporting, and departure of

the almost 10,000 employees to Barclays have left the Debtors and their professionals with the colossal hurdle of establishing a competent workforce to discharge their responsibilities under the Bankruptcy Code.  Additional time to complete these responsibilities is necessary.  In cases of this size and complexity, 120 days simply is inadequate.

26.    Before a chapter 11 plan can be proposed, among other things, the Debtors must review approximately 1.5 million derivatives contracts, dissect billions of dollars of inter-company transactions occurring on a global platform, coordinate with the foreign administrators of the seventy-six foreign insolvency proceedings involving Lehman subsidiaries, attend to complex issues arising as a result of the chapter 11 cases, such as consequences to Lehman's approximately 25,000 former and current employees both domestic and abroad and Lehman's integrated cash management system involving 4,000 entities, and deal with potential assets all over the world.

27.    The limited number of the Debtors' employees must recover and review an unprecedented volume of information.  All of the accumulated information in Lehman's systems totals 2,000 terabytes of data:  in other words, it would completely fill 20,000 computers to the maximum.  This is the vast sea of information that Lehman's personnel must sift through in order to garner critical information.  The information spreads across 2,700 software applications and is dispersed throughout ledger accounts in numerous subsidiaries across the globe.

28.    The size and complexity of the Debtors' numerous businesses, corporate structure, and financing arrangements place heavy demands on the Debtors' management and professionals.  The chapter 11 cases have exacerbated these demands, complicating operational issues and adding a layer of complexity by reason of chapter 11 matters.  The Debtors need

sufficient time to evaluate the universe of assets belonging to and claims asserted against the estates and prepare a disclosure statement containing adequate information.  Thus, the requested extension is not only warranted, but absolutely necessary.

**Substantial Good Faith Progress has Been Demonstrated**

29.    Extension of a debtor's exclusive period to file a plan and the period to solicit acceptances thereto are justified by progress in the resolution of issues facing the debtor's estate.  See e.g., In re Service Merchandise Co., Inc., 256 B.R. 744, 753-54 (Bankr. M.D. Tenn. 2000); In re Amko Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996); In re McLean Indus. Inc., 87 B.R. at 835; In re Texaco, Inc., 76 B.R. at 327.

30.    In less than four months since the commencement of these chapter 11 cases, the Debtors have made substantial progress in addressing certain of their major issues, including preserving and maximizing the value of their highly sensitive assets, recruiting individuals with particularized knowledge of Lehman's business, stabilizing their relationships with vendors, customers and counterparties, and retrieving an unprecedented volume of data.

31.    More specifically, the Debtors have taken the following initial steps in connection with their restructuring efforts:

- obtained approval of major sales under section 363 of the Bankruptcy Code, including:

  - the sale of the North American capital markets business to Barclays that resulted in recovery to the estates of over $1.5 billion and preservation of approximately 10,000 jobs;

  - the sale of the Debtors' interest in Eagle Energy for $230 million;

  - the sale of the Debtors' interest in R3 Capital Management, LLC for $500 million in value;

  - the sale of certain assets related to the Investment Management Division in exchange for a preferred equity interest with an

aggregate liquidation preference of $875 million and 49% of common stock in a new company to be created by purchaser;

- obtained authorization to implement a recruitment program to employ individuals with particularized knowledge of the Debtors' derivatives and loan business, which will enable the estates to unwind, analyze and evaluate such assets and maximize their value;

- held regular meetings with the Creditors' Committee to simplify its oversight role in these cases;

- coordinated routinely with the U.S. Trustee to ensure compliance with the Bankruptcy Code, the Bankruptcy Rules, Local Rules and the U.S. Trustee Guidelines on all matters;

- conducted individual creditor meetings with the Harbinger Funds, the Newport Funds, DE Shaw, Elliot Associates, Russell Investments, Promontory Asset Finance, and Bank of America to accommodate their requests for information;

- published the following websites tracking the progress of these cases to ensure that creditors are apprised of developments on a real-time basis:

  - lehman-docket.com – provides direct access to all pleadings filed in these cases, information on filing a proof of claim, important deadlines, listing of all chapter 11 Debtors and their petitions, and other pertinent information;

  - lehmanbrothersetate.com – provides direct access to approximately 100 people at Alvarez & Marsal and Weil, Gotshal & Manges LLP that are available to respond directly to creditor inquiries;

  - lehman.com/press – contains press releases such as the acquisition of the Investment Management Division; and

  - nb.com – contains press releases regarding Neuberger Berman business and most recent press releases;

- obtained approval of procedures for the assumption and assignment of hundreds of thousands of derivatives contracts to which the Debtors are a party to allow the estates to efficiently assume favorable contracts, avoid any loss of value and maximize returns on such assets;

- negotiated and executed TSAs with Barclays, LBIE, Nomura and Eagle Energy, all of which enable access to information related to Lehman's

operations and will expedite the rebuilding of business and financial records;

- retained various professionals to assist in the administration of the estates, including the professionals at Alvarez & Marsal who have taken the lead in compiling information related to the Debtors' businesses and administering the estates, local and foreign counsel, as well as investment banking and accounting professionals; and

- responded to countless inquiries related to the status of these cases, pre-petition activities of the Debtors, and specific contract counter-party demands.

32.     The Debtors' progress on these crucial issues in this short period of time justifies the requested extension of the Exclusive Periods.

**The Requested Extension Will be Beneficial to the Administration of the Chapter 11 Cases**

33.     Affording the Debtors a full opportunity to undertake an extensive review and analysis of their assets and liabilities so that they may develop chapter 11 plans that satisfy the requirements of the Bankruptcy Code will not harm creditors.  Considering the early stages of these chapter 11 cases, as well as the size of the estates and complexity of the issues to be resolved, neither the Debtors nor any other party in interest could realistically be in a position to formulate, promulgate and build consensus for a plan in such a short period of time.  The extension of the Exclusive Periods as requested will afford the Debtors and all other parties in interest an opportunity to develop fully the grounds upon which serious negotiations as to chapter 11 plans may proceed.

**Substantial Contingencies Remain;**
**The Debtors Have Been Paying Bills as They Become Due**

34.     Notwithstanding the urgency with which the Debtors have moved in the first four months of these cases, a plethora of unresolved contingencies remain.  Before the Debtors can file chapter 11 plans, the Debtors need sufficient time to evaluate claims asserted

against the estates, including inter-company claims and transactions, causes of actions held by the estates, including avoidance actions, and all measures that can be taken to maximize the value of the Debtors' assets. In addition, the Debtors are still locating and monetizing their assets, such as the value of claims held against their foreign affiliates. Although the Debtors are moving as expeditiously as possible, the chapter 11 plan process cannot be reasonably expected to be completed in just four months in cases of this size and magnitude. Thus, the requested extensions are reasonable and justified.

35.    Since the commencement of these cases, the Debtors have been paying their bills as they generally become due. Accordingly, no party in interest will be harmed by the extensions.

36.    This Court has routinely granted similar extensions of exclusivity in large reorganization cases. In re WorldCom Inc., Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Nov. 15, 2002) (granting initial extension of approximately five months and total extension of approximately 14 months); In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Apr. 24, 2002) (granting initial extensions of approximately five and six months and total extensions of approximately 15 months); In re Adelphia Bus. Sol. Inc., Case No. 02-11389 (REG) (Bankr. S.D.N.Y. Aug. 8, 2002) (granting initial extension of approximately four months and total extensions of approximately 13 months); In re Global Crossing, Inc., Case No. 02-40188 (REG) (Bankr. S.D.N.Y. Jun. 3, 2002) (granting initial extension of approximately four months and total extensions of approximately 17 months).

## **Conclusion**

37.    The Exclusive Periods should be extended to afford the Debtors a full and fair opportunity to negotiate, propose and seek acceptance of chapter 11 plans. The requested

extension of the Exclusive Periods is warranted and appropriate for cases of this size and complexity.

### Notice

38.    No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on September 22, 2008 governing case management and administrative procedures for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

39.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just.

Dated:  December 29, 2008
        New York, New York

/s/ Lori R. Fife
Harvey R. Miller
Lori R. Fife
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                              :
In re                                         :    **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :    **08-13555 (JMP)**
                                              :
                        **Debtors.**          :    **(Jointly Administered)**
                                              :
                                              :
------------------------------------------------------------------x

### ORDER GRANTING DEBTORS' MOTION PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE REQUESTING EXTENSION OF EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11 PLAN AND SOLICITATION OF ACCEPTANCES THEREOF

Upon the motion, dated December 29, 2008 (the "Motion"), of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and,

together with their non-debtor affiliates, "Lehman"), pursuant to section 1121(d) of title

11 of the United States Code (the "Bankruptcy Code"), for an order extending the

exclusive period during which the Debtors may file a chapter 11 plan (the "Plan Period")

and the period during which the Debtors may solicit acceptances thereof (the

"Solicitation Period," and together with the Filing Period, the "Exclusive Periods"), all as

more fully described in the Motion; and due and proper notice of the Motion having been

provided in accordance with the procedures set forth in the order entered September 22,

2008 governing case management and administrative procedures [Docket No. 285] to (i)

the United States Trustee for the Southern District of New York; (ii) the attorneys for the

Official Committee of Unsecured Creditors; (iii) the Securities and Exchange

Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the

Southern District of New York; and (vi) all parties who have requested notice in these

chapter 11 cases, and it appearing that no other or further notice need be provided; and a

hearing having been held to consider the relief requested in the Motion; and the Court

having found and determined that the relief sought in the Motion is in the best interests of

the Debtors, their estates and creditors, and all parties in interest and that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and

after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to section 1121(d) of the Bankruptcy Code,

each of the Debtor's exclusive Plan Period is extended through and including July 13,

2009; and it is further

ORDERED that, pursuant to section 1121(d) of the Bankruptcy Code,

each of the Debtor's Solicitation Period is extended through and including September 16,

2009; and it is further

ORDERED that the extension of the Exclusive Periods granted herein is

without prejudice to such further requests that may be made pursuant to section 1121(d)

of the Bankruptcy Code; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed

good and sufficient notice of such Motion; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: January __, 2009
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE