WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Michael P. Kessler

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                   :

In re                           :        **Chapter 11 Case No.**

                                   :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :     **08-13555 (JMP)**

                                   :

                     **Debtors.**     :      **(Jointly Administered)**

                                   :

                                   :
-------------------------------------------------------------------x

**NOTICE OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO
SECTIONS 105(a), 363(b) and 365(a) OF THE BANKRUPTCY CODE AND FEDERAL
RULE OF BANKRUPTCY PROCEDURE 6004 AND 6006 AUTHORIZING LEHMAN
BROTHERS HOLDINGS INC. TO ASSUME, AS MODIFIED, CERTAIN LOAN
DOCUMENTS ENTERED INTO WITH JUNG DEVELOPMENTS INC., ET. AL. AND
TO CONSUMMATE CERTAIN RELATED TRANSACTIONS**

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases (together, the "Debtors") for entry of an order, pursuant to sections 105(a), 363(b) and

365(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 6006

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing LBHI to

assume, as modified, certain loan documents entered into with Jung Developments Inc., et. al.,

and to consummate certain related transactions, as more fully described in the Motion, will be

held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States

Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **January 28, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Michael P. Kessler, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis; Esq., (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **January 23, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: January 8, 2009
     New York, New York

                    /s/ Michael P. Kessler
                    Michael P. Kessler

                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone: (212) 310-8000
                    Facsimile: (212) 310-8007

                    Attorneys for Debtors
                    and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Michael P. Kessler

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                            :
In re                                                       :        **Chapter 11 Case No.**
                                                            :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :        **08-13555 (JMP)**
                                                            :
                              **Debtors.**              :        **(Jointly Administered)**
                                                            :
                                                            :
------------------------------------------------------------------x

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS
105(a), 363(b) and 365(a) OF THE BANKRUPTCY CODE AND FEDERAL RULE
OF BANKRUPTCY PROCEDURE 6004 AND 6006 AUTHORIZING LEHMAN
BROTHERS HOLDINGS INC. TO ASSUME, AS MODIFIED, CERTAIN LOAN
DOCUMENTS  ENTERED INTO WITH JUNG DEVELOPMENTS INC., ET. AL.
AND TO CONSUMMATE CERTAIN RELATED TRANSACTIONS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors and debtors in possession (together, the

"Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this Motion

and respectfully represent:

## Background

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

## Jurisdiction

4.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Lehman's Business**

5.        Prior to the events leading up to these chapter 11 cases, Lehman

was the fourth largest investment bank in the United States.  For more than 150 years,

Lehman has been a leader in the global financial markets by serving the financial needs

of corporations, governmental units, institutional clients and individuals worldwide.

6.        Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases

is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local

Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions

and Applications, filed on September 15, 2008 [Docket No. 2].

**The Loan Agreement**

7.        LBHI entered into that certain Mezzanine Loan Agreement, dated

June 13, 2007 (the "Loan Agreement") with Jung Developments Inc. ("JDI"), as

Borrower, and each of Jung Developments (Infinity 2) Inc. ("JDI2"), Myung Soo Jung

("M.S. Jung"), Jung Development Co., Ltd. ("Jung (Korea)"), and Hee Yong Yang (H.Y.

Yang), as guarantors, whereby LBHI agreed to lend up to $50 million and has made $9

million in protective disbursements to JDI (the "Loan") to fund the construction of

Infinity Towers Phase 1 ("Phase 1") and Infinity Towers Phase 2 ("Phase 2" or the

"Project").  LBHI has fully funded its obligations under the Loan Agreement.  The

Project is a 698 unit residential condominium development under construction in Surrey,

British Columbia as the second phase of a three tower condominium project.  The Loan

has accrued approximately $11 million in interest that remains unpaid as of the date

hereof.  The Loan originally was secured by, inter alia, a second priority mortgage lien on

the Project, subordinate to a first lien mortgage granted to Canadian Imperial Bank of

Commerce ("CIBC") as agent for a syndicate of lenders financing construction of Phase

1.  The first priority mortgage lien was repaid in its entirety from the sale of

condominium units constructed in Phase 1.  CIBC has refused to continue funding Phase

2 construction costs and holds no outstanding indebtedness.  As a result, LBHI now holds

a first priority mortgage lien (the "LBHI Mortgage") against the Project and the legal

lands adjacent to the Project owned by JDI (the "Remainder Lands").

8.    The entirety of JDI's equity interests are held by M.S. Jung, H.Y.

Yang, Jung (Korea) and JDI2 (collectively, the "Shareholders").  There are a total of

605,100 shares of JDI stock issued and outstanding.  H.Y. Yang holds 272,295 shares of

JDI stock and is JDI's controlling shareholder.

9.    The Shareholders have loaned $30 million to JDI, the entirety of

which is still outstanding (the "Shareholder Debt").  The majority of the Shareholder

Debt was a loan to JDI by H.Y. Yang (the "Yang Debt") and was required by LBHI and

CIBC as the equity contribution of the Shareholders to capitalize JDI.  The Yang Debt is

secured by a mortgage (the "Yang Mortgage") on the Project that is subordinate to the

LBHI Mortgage.  In connection with the Yang Debt, H.Y. Yang and LBHI have entered

into the Intercreditor Agreement, dated June 13, 2007, pursuant to which H.Y. Yang

confirmed the Yang Debt is subordinate to the Loan and agreed not to take any action

with respect to the Yang Debt, the Project, or the Remainder Lands without the consent

of LBHI.

10.    Each of the Shareholders has executed a guaranty in favor of

LBHI, under which the Shareholders each guarantee JDI's payment and performance of

JDI's obligations under the Loan Agreement.  Yuksung Korea Co., Ltd. ("Yuksung") has also executed a limited recourse guaranty in favor of LBHI to guarantee any payments or losses arising from any bad acts of JDI.  Each of the Shareholders, Yuksung, and JDI has also executed a general security agreement in favor of LBHI (the "Security Agreements").  Under the Security Agreements, each of the Shareholders, Yuksung, and JDI has granted LBHI a general security interest in certain property to secure such Shareholder's obligations under its respective guaranty.  Under the Security Agreement executed by H.Y. Yang (the "Yang Security Agreement"), H.Y. Yang assigned to LBHI a general security interest in all of his personal property stemming from or in connection with the Project and the Remainder Lands (the "Yang Collateral").  The Yang Security Agreement further permits LBHI to direct H.Y. Yang to sell the Yang Debt.  In addition, each of the Shareholders has pledged its shares of JDI stock to LBHI under a share pledge agreement.  JDI has also pledged its interest in JDI2 to LBHI under a share pledge agreement.

### The Term Sheet

11.     On October 15, 2008, JDI filed for creditor protection under the Canadian Companies' Creditors Arrangement Act (the "CCAA").  Since JDI's filing for such protection, JDI has ceased to repay $59 million of outstanding principal and approximately $11 million of accrued, unpaid interest under the Loan.  Through a British Columbia Supreme Court supervised process, competitive bids were submitted by parties seeking to take over the Project and restructure JDI's debt.  A Canadian developer, Concord Development Properties Ltd. ("CDPL"), was awarded the opportunity by the British Columbia Supreme Court to continue the Project as its new developer and

restructure JDI's debt. CDPL wishes to obtain additional financing to fund completion of

the Project by modifying the Loan Documents to, among other things, subordinate the

LBHI Mortgage in return for payments to LBHI in the aggregate amount of $10 million

(the "Transaction"). The cost to complete the Project is estimated to be C$90 million, not

including additional funds payable to contractors with lien claims against the Project. A

letter of intent and term sheet (the "Term Sheet"), whereby CDPL will negotiate a

binding transaction to continue the Project, was submitted by CDPL to and approved by

the British Columbia Supreme Court. The Term Sheet is attached hereto as Exhibit A.

Under the terms set forth in the Term Sheet, LBHI and CDPL have negotiated in good

faith to modify the Loan Agreement and its supporting documents (the "Loan

Documents"). The Term Sheet includes the following salient provisions: [1]

| | |
|---|---|
| **Receivership** | The Project, the Remainder Lands, and the Yang Collateral will enter receivership in British Columbia, Canada. |
| **Reduction of Loan Balance** | JDI will make payments in the aggregate of $10 million towards the Loan's outstanding principal amount and accrued, unpaid interest of $70 million. The $10 million of payments consists of (i) an $8.5 million prepayment of the Loan (ii) $1.4 million from the transfer of the Yang Debt and (iii) $100,000 from the transfer of all of the Shareholders' shares in the stock of JDI, all as further described below. |
| | LBHI will further reduce the Loan's outstanding principal amount and accrued, unpaid interest to approximately $37 million (C$45 million). |
| **Interest Rate** | The parties will modify the Loan Documents to increase the interest rate to 25% per annum compounded monthly. |
| **Term** | The term of Loan will be extended to December 31, 2013, extendable at LBHI's election for two additional years. |

---

[1] This summary of the Term Sheet is qualified in its entirety by the terms and conditions set forth in the Term Sheet. The summaries contained in this Motion are intended to be used for informational purposes only and shall not in any way affect the meaning or interpretation of the Term Sheet.

| | |
|---|---|
| **Transfer of the Yang Debt** | LBHI will cause H. Y. Yang to transfer the Yang Debt to an entity designated by CDPL and to be payable upon completion of a proposal of the unsecured creditors of JDI under the Bankruptcy and Insolvency Act of Canada (the "<u>Proposal</u>").  The Yang Mortgage will be contemporaneously discharged.  As consideration, JDI will pay LBHI $1.4 million. |
| **Transfer of the Project Remainder Lands** | The Project and the Remainder Lands will be transferred, subject to the LBHI Mortgage, by JDI's receiver under a vesting order of the Canadian court to Infinity LP, a limited partnership of which JDI is a limited partner with a 1% interest, a corporation designated by CDPL is a limited partner with a 99% interest, and an entity to be formed by CDPL ("<u>CPGI</u>") is the general partner.  While Infinity LP will be the beneficial owner of the Project and Remainder Lands, JDI will hold title to the such property as trustee for Infinity LP.

Subsequently, Infinity LP will transfer 12.5% of its beneficial interest in the Project, free and clear of LBHI's Lien, to Infinity 12.5% LP, a limited partnership of which JDI is a limited partner with a 1% interest, a corporation designated by CDPL is a limited partner with a 99% interest, and CPGI is the general partner, in exchange for a cash payment of 2.5 million from Infinity 12.5% LP. |
| **Transfer of Shares** | LBHI will consent to the transfer of all of the Shareholders' shares in the stock of JDI to an affiliate of CDPL, free from all encumbrances and adverse claims.  LBHI, through its Canadian counsel, has possession of all share certificates and power to transfer such shares.  As consideration, JDI will pay LBHI $100,000 upon completion of the Proposal. |
| **New Construction Loan** | CDPL will seek to obtain new construction financing for Infinity LP in the principal amount of C$78.5 million, which, together with mezzanine financing, is estimated to be sufficient to pay costs to complete the Project (the "<u>Construction Loan</u>").  The Construction Loan will be secured by a first priority mortgage lien over all of the Project and the Remainder Lands and first priority security lien in all personal property stemming from or in connection with the Project or the Remainder Lands.  The Construction Loan will be used to pay construction and related costs, including a project management fee, as incurred on a "cost to complete" basis. |

**New Mezzanine Loan**

CDPL will provide, or arrange to provide from an affiliate, C$20 million in Mezzanine financing (the "Mezzanine Loan"). The Mezzanine Loan will accrue interest at a rate of 19.5% per annum. The Mezzanine Loan will be secured by a mortgage lien against the Project and the Remainder Lands and a second-priority interest in all personal property related to the Project, each subordinate to the mortgage lien securing the Construction Loan. JDI will pay LBHI $8.5 million as a prepayment of the Loan, to be funded by an advance of the Mezzanine Loan. The remainder of the Mezzanine Loan will finance the amounts to paid to the unsecured creditors in the Proposal, to pay construction costs of the Project, and to repay a C$2.4 million debtor-in-possession lending facility provided by Tallinn Capital Corp. Payments will be due under the Mezzanine Loan after repayment of the Construction Loan.

**Financing Fee**

For arranging the construction financing and providing the Mezzanine Financing, JDI will pay CDPL a financing fee (the "Financing Fee") of four percent of the committed amount of the Construction Loan and the Mezzanine Loan, to be fully paid upon first advance of the Mezzanine Loan. Based on the amounts of the Construction Loan and the Mezzanine Loan, the Financing Fee will amount to up to C$3.94 million. The Financing Fee is secured by the mortgage securing the Mezzanine Loan.

**Payment Priorities**

LBHI will consent to subordinating the LBHI Mortgage to the Construction Loan, Mezzanine Loan, and the Financing Fee.

The credit facilities, financing fee, and parties will have the following priority with respect to receipt of the net proceeds of the sale of the Project: (i) first to the Construction Loan, (ii) second to the Mezzanine Loan, (iii) third to the Financing Fee, and (iv) fourth to LBHI (87.5%) and Infinity 12.5% LP (12.5%), provided that if excess net proceeds remain after the Loan is fully repaid, LBHI will receive 87.5% of the remaining net proceeds and will be entitled to receive the limited partnership interests in Infinity LP from JDI and CDPL.

**Proceeds of Sale of the Project and "Lot E"**

The Remainder Lands and "Lot E" of the Project are to be listed for sale with a recognized real estate agent reasonably acceptable to LBHI, and the net proceeds from the sale of these properties is to be divided, 80% to LBHI and 20% to CDPL.

## Relief Requested

12.     The Debtors respectfully request entry of an order pursuant to

sections 105(a), 363(b) and 365(a) of the Bankruptcy Code and Bankruptcy Rules 6004

and 6006 to (a) assume the Loan Documents, as modified in accordance with the Term

Sheet, and (b) enter into and consummate the Transaction as set forth in the Term Sheet.

### <u>LBHI Should be Authorized to Assume the Loan Documents, as Modified by the Term Sheet, and to Consummate the Transaction</u>

13.     Section 365(a) of the Bankruptcy Code provides, in relevant part

that a debtor in possession, "subject to the court's approval, may assume or reject any

executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  In determining

whether an executory contract or unexpired lease should be assumed, courts apply the

"business judgment" test. <u>Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion

Pictures)</u>, 4 F.3d 1095, 1099 (2d Cir. 1993); <u>see</u> also <u>Richmond Leasing Co. v. Capital

Bank, N.A.</u>, 762 F.2d 1303, 1311 (5th Cir. 1985) ("More exacting scrutiny would slow

the administration of the debtor's estate and increase its cost, interfere with the

Bankruptcy Code's provision for private control of administration of the estate, and

threaten the court's ability to control a case impartially"); <u>In re Helm</u>, 335 B.R. 528, 538

(Bankr. S.D.N.Y. 2006) ("The decision to assume or reject an executory contract is

within the sound business judgment of the debtor-in-possession. . . .").  A court,

therefore, should approve the assumption of a contract under section 365(a) of the

Bankruptcy Code if it finds that a debtor has exercised its sound business judgment in

determining that assumption of an agreement is in the best interests of its estate.  <u>See,

e.g.</u>, <u>In re Child World, Inc.</u>, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992).

14.     In addition, Section 363(b)(1) of the Bankruptcy Code provides, in

relevant part, "the trustee, after notice and a hearing, may use, sell, or lease, other than in

the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Although

section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize a transaction outside the ordinary course of business, courts in the Second Circuit and others, in applying this section, have required that such transaction be based upon the sound business judgment of the debtor.  See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); accord In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992); In re Martin, 91 F.3d 389, 395 (3d Cir. 1996) (citing Fulton State Bank v. Schipper (In Re Schipper), 933 F.2d 513, 515 (7th Cir. 1991)); Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 780 F.2d 1223, 1226 (5th Cir. 1986).

15.    It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business justification exists, there is a strong presumption that "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)), appeal dismissed, 3 F.3d 49 (2d Cir. 1993).  The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment.  Id. (citing Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984)).

16.    The Debtors have determined, in the sound exercise of their business judgment, that modifying the Loan Documents is in the best interests of their

estates and creditors.  In return for LBHI's consent to subordinate its Lien to new

financing and a reduction in the outstanding principal and interest amounts, the

Transaction allows LBHI to increase the interest rate accruing under the Loan, receive a

repayment of $8.5 million from an otherwise insolvent borrower, and realize an

additional $1.5 million in value based on its rights under the Loan Documents through

the transfer of the Yang Debt and shares of JDI stock to an affiliate of CDPL.

17.    The Debtors believe that the terms set forth in the Term Sheet are

fair and reasonable under the circumstances.  Foreclosure of the LBHI Mortgage would

be difficult and, considering that the Project is still under construction, it is unlikely that

the full net proceeds of a foreclosure would be sufficient to pay the principal, interest and

other expenses due under the Loan.  In addition, the Transaction between LBHI and

CDPL is intended to allow the parties to realize certain substantial tax losses arising from

the Project, but such tax losses cannot be realized in a foreclosure.  Although LBHI must

subordinate the LBHI Mortgage to the Construction Loan, Mezzanine Loan, and

Financing Fee, without new financing senior to the Loan, the Project would remain

unfinished.  As a result, unless LBHI modifies the Loan Documents, it will be difficult

for LBHI to receive repayment for the outstanding principal amount and unpaid, accrued

interest under the Loan.

18.    Accordingly, in light of the undeniable benefits of the relief

requested herein to the Debtors and their reorganization, the Debtors believe that they

clearly have exercised sound business judgment and that the transactions described herein

should be approved.

**Relief Under Bankruptcy Rule 6004(g)**

19.      Bankruptcy Rule 6004(g) provides that an "order authorizing the use, sale or lease of property . . . is stayed until expiration of 10 days after entry of the order, unless the Court orders otherwise." Fed. R. Bankr. P. 6004(g).  LBHI requests that any order approving the Term Sheet and authorizing LBHI to modify the Loan Documents be effective immediately, as the Canadian court in JDI's CCAA proceedings has required the Loan Documents, as modified, to be executed and approved by, at the latest, January 30, 2009.

**Notice**

20.      No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on September 22, 2008 governing case management and administrative procedures for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) all parties to the Term Sheet; and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

21.      No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the

relief requested herein and such other and further relief as it deems just and proper.

Dated:  January 8, 2009
        New York, New York


/s/ Michael P. Kessler
Michael P. Kessler

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## **Exhibit A**

Term Sheet

**CONCORD DEVELOPMENT PROPERTIES LTD.**
**9th Floor – 1095 W. Pender Street**
**Vancouver, BC**
**V6E 2M6**

**This letter and the offer contained in this letter are confidential, and, unless otherwise approved by Concord Development Properties Ltd., this letter is to remain "sealed" and neither this letter nor its terms are to be disclosed to any other party other than the Court in the proceedings in respect of Jung Developments Inc. under the Companies' Creditors Arrangement Act (the "CCAA Proceedings"), PricewaterhouseCoopers LLP as monitor in the CCAA Proceedings and by Lehman Brothers Holdings Inc.("Lehman") to its legal and financial advisors, unless the offer contained in this letter is accepted by Lehman.**

**December 1, 2008**

Lehman Brothers Holdings Inc.
c/o Blake Cassels & Graydon LLP
595 Burrard Street
P.O. Box 49314
Suite 2600, Three Bentall Centre
Vancouver BC V7X 1L3

**Attention: David Gruber**

Dear Sirs and Mesdames:

<u>**RE:    Lehman Brothers Holdings Inc. - Jung Developments Inc.**</u>

The following is the offer (the "Offer") of Concord Development Properties Ltd. ("we", "us", "our" or "CPDL") to restructure the indebtedness of Jang Developments Inc. ("JDI") to Lehman Brothers Holdings Inc. ("Lehman") in respect of the project known as "Infinity2" (a multi-family residential condominium project to two 36 storey towers under construction in Surrey, British Columbia more particularly described in the "Definitions" hereto (the "Project"). We understand that the indebtedness of JDI to Lehman is secured by a mortgage registered in the Vancouver/New Westminster Land Title Office under No. BBBB412686, and other security, the particulars of which are listed in the Schedule of "Lehman Security" hereto (collectively the "Lehman Debt"). We understand that the principal amount of the Lehman Debt is approximately $59 million on which interest of approximately $11 million has accrued. The Offer is set out in this letter and the Term Sheet attached hereto.

We further understand that:

2

1.      The title to the Project and the Remainder Lands will, at time of completion of the transactions contemplated by this Offer, be free from encumbrances other than Permitted Encumbrances;

2.      The cost to complete the Project is estimated to be $90 million inclusive of the DIP Facility but excluding the amount of $6 million payable to ITC Construction Inc. ("ITC") and other contractors with lien claims or rights to lien claims (exclusive of holdbacks held in trust aggregating approximately $4.0 million)

3.      The Project, when complete in accordance with the existing plans and specifications approved by the Municipality of Surrey will be two high rise towers containing a total of 698 residential units (276 one bedroom, 140 one bedroom plus den and 282 two bedroom units) plus eight commercial strata lots, with sufficient parking for the residential units, plus, if constructed as part of the completion of the two towers, an additional parcel (Lot E) for commercial space;

4.      JDI has entered into purchase agreements ("pre-sale contracts") for the sale of 522 residential units for a total sales value of approximately $124.4 million;

5.      An affiliate of JDI owns an adjoining property on which it had planned to construct a residential condominium project called "Sky Tower" ("Sky Tower Project") and who has entered into pre-sales contracts with purchasers at average prices above the average prices for the pre-sale contracts entered into by JDI for the Project;

6.      JDI has shareholder debt, including the shareholder Hee Yong Yang (the "Yang Debt"), which remains outstanding in the amount of approximately $30 million; and

7.      Development and construction of the Project has been approved and permits have been issued by all requisite governmental agencies, and the construction of the Project has been carried out in accordance with plans and specifications approved by all requisite governmental agencies.

On the basis of our understandings set forth above, we offer to enter into a series of transactions (the "Transaction") summarized in the Term Sheet attached hereto that will result in Lehman receiving $10 million on completion of the Transactions (to be applied against the Lehman Debt) and an entitlement to the net proceeds (after repayment of the Construction Financing and Mezzanine Financing) from the sale or other disposition of a 87.5% undivided interest in the Project.  Lehman is not to become an "owner" of the Project or a partner in the limited partnerships referred to in the Term Sheet.

We will complete the Transaction when all of the documentation required to complete the Transaction have been completed and all orders of the Supreme Court of British Columbia have been obtained and proceedings under the Bankruptcy and Insolvency Act of Canada have been completed necessary to complete the Transaction, and all rights of appeal therefrom have expired.

3

In the event that the Transaction is not completed by March 31, 2009 except as a result of any action taken or omitted to be taken by Lehman, then we will form a limited partnership that will purchase the Lehman Debt for $8.5 million payable in cash plus a limited partnership interest in the partnership of 80%.

Each of us agrees that neither will disclose, or allow the disclosure of, any of the terms, conditions or other facts of contained in, or concerning the subject matter of, this Offer without the prior written consent of the other party, except to their respective legal and financial advisors and then only on the basis that such information is to be treated as confidential by the persons to whom it is disclosed and then only to the extent such disclosure is required for the assessment of such transaction by such persons, provided that any disclosure to a court of any such information shall only be made on the basis of, and if any party becomes legally compelled to disclose any such information, such party will immediately provide the other party with written notice so that the other party may seek and cooperate with the other party in any effort undertaken to obtain, a protective order to maintain the confidentiality of such information or, if such protective order is not obtained, furnish only that portion of such information which is legally required to be furnished, and to use reasonable commercial efforts to obtain an assurance from the recipient of any of such information that confidential treatment will be accorded to such information. Notwithstanding the foregoing, disclosure to the U.S. bankruptcy court officiating in respect of Lehman Brothers Holdings Inc. bankruptcy case is permitted including in the motion made to such court to obtain approval of the Transaction.

Lehman covenants and agrees with us that Lehman will immediately cease and cause to be terminated any understanding, solicitation, encouragement, discussion or negotiation with any third party respect to any Competing Proposal (defined below) and, during the period commencing on the date of Offer and terminating on March 31, 2009, Lehman will not, and will not permit its  directors, officers, and employees, legal counsel, and other advisors (the "Representatives") and its affiliates, and each of their respective Representative not to, directly or indirectly, without our express prior written approval, (i) solicit, initiate, or knowingly encourage the submission of, any Competing Proposal, (ii) approve or recommend any Competing Proposal, (iii) enter into any agreement, agreement-in-principle, letter of intent or understanding with respect to or accept any Competing Proposal (or resolve to or propose to do any of the foregoing) or (iv) encourage or participate or engage in any discussions or negotiations regarding, or furnish to any third party any information with respect to, or knowingly take any action to facilitate any inquiries or the making of any proposal that constitutes, or would reasonably be expected to lead to, any Competing Proposal.  Promptly (and in any event, within 24 hours) upon any Competing Proposal being made to Lehman, Lehman shall notify us of such Competing Proposal (whether oral or written) including the identity of the person making such Competing Proposal and the terms and conditions thereof.  Lehman shall make its Representatives aware of the provisions of the terms of this paragraph. For purposes of this paragraph, "Competing Proposal" means any inquiry, proposal or offer from any third party relating to acquisition, disposition, of the Lehman Debt or the Project or any material part thereof or any other transaction involving or relating to the Lehman Debt, the Project or any material part thereof, in each case other than the Transaction the consummation of which would

4

reasonably be expected to impede, interfere with, prevent or materially delay the Transaction or dilute the benefits reasonably expected to be obtained by us to us of the Transaction.


This offer shall remain open for acceptance until 5:00 pm Vancouver BC time on December 23, 2008 and is irrevocable by us before then.  Please sign and return (by electronic transmission and with the original to follow by courier) a copy of this offer indicating your acceptance to the foregoing.

Yours truly,
**CONCORD DEVELOPMENT PROPERTIES LTD.**

_____
Cliff McCracken,
Senior Vice President
(604) 895-8223


The foregoing terms and conditions are accepted subject to the approval of the U.S. bankruptcy court by January 14, 2009.

**LEHMAN BROTHERS HOLDINGS INC.**

By:_____
its:

5

**Term Sheet**

(attached to and forming part of Offer dated December 1, 2008 from Concord Development
Properties Ltd. ("CDPL"), to Lehman Brothers Holdings Inc.

The following is a summary of the Transaction.

<u>New Financing</u>

*<u>Construction Financing</u>*

We will seek to obtain financing for the completion of the Project on the following terms:

| Lender; | To be determined – likely a Canadian chartered bank |
|---|---|
| Amount: | Sufficient to pay costs to complete, less Mezzanine Financing (estimated to be $78.5 million) |
| Terms | Conventional construction financing |
| Security | First mortgage over all of the Project and first security interest in all personal property related to the Project |
| Use of Proceeds: | To pay construction and related costs, as incurred on a "cost to complete" basis |

*<u>Mezzanine Financing</u>*

We will provide or arrange to provide, from an affiliate, financing on the following terms:

| Lender: | CDPL or other lender as determined by CDPL |
|---|---|
| Amount: | $20,000,000 |
| Interest Rate: | 19.5% per annum compounded monthly |
| Term: | Five years but prepayable in whole at any time or part from time to time |
| Security: | Mortgage over the Project and the Remainder Lands and security interest in all personal property related to the Project, subordinate to Construction Financing. |
| Payments: | After repayment of the Construction Financing |
| Use of Proceeds: | To finance the payment of $8.5 million to Lehman on account of the Lehman Debt, to pay the amounts to be paid to the unsecured creditors in the proposal under the Bankruptcy and Insolvency Act (Canada) referred to below, and to pay construction costs as incurred in accordance with requirements of Construction Financing and to repay the DIP Facility. |

<u>Financing Fee</u>

For arranging the Construction Financing and providing the Mezzanine Financing, we will be
paid the following fees:

| Financing Fee: | Four percent of the committed amount of Construction Financing and the Mezzanine | not greater than $3.94 million |
|---|---|---|

| | Financing to be fully earned upon first advance of the Mezzanine Financing | |
|---|---|---|
| Security: | To be secured by the mortgage securing the Mezzanine Financing | |
| Payments: | After repayment of the Construction Financing and Mezzanine Financing | |

<u>Payment Priorities</u>

Net Proceeds from the sale of the Project are to be paid as follows:

| First: | Construction Financing | $78.5 million plus interest |
|---|---|---|
| Second: | Mezzanine Financing | $20 million plus interest |
| Third | Financing Fee | $3.94 million |
| Fourth, | Lehman (87.5% and Infinity 12.5% LP (12.5%) provided that If Net Proceeds remain after the Lehman Debt is paid, Lehman will be paid 87.5% of the remaining Net Proceeds and will be entitled to the transfer to it of the limited partnership interest in Infinity LP.. | |

<u>Transfer of Project and Security for Lehman Debt</u>

The Project is to be transferred, as to a 87.5%% interest, to Infinity LP, subject to the Lehman Debt, and as to a 12.5% interest to Infinity 12.5% LP, free and clear of the Lehman Debt. Infinity LP is to be owned by JDI (99.9%) and a general partner 0.1% owned by an affiliate of ours.  Infinity 12.5% LP is also to be owned by JDI (99.9%) and the same general partner (0.1%).

<u>Transaction Summary</u>

The following transactions are to occur contemporaneously, but in the order set out below:

1.  A court appointed receiver (the "Receiver") is to be appointed over the Project, the Remainder Lands and the property of Yang under the security for the Lehman Debt.

2.  Lehman is to petition JDI into in bankruptcy and:

    (a)    The Lehman Debt is to modified to:

         (i)    Reduce the outstanding amount to Cdn$45 million aggregate of principal , interest and other costs;

         (ii)    Increase the interest rate to 25% per annum compounded monthly; and

         (iii)    Extend the term to December 31, 2013, extendable at Lehman's election for two more years.

(b)     The Yang Debt is to be transferred (by the Receiver under a "vesting order" of the court) to a person designated by us (not a "related person") for $1.4 million, payable to such Receiver for payment to Lehman upon completion of the Proposal, free from all encumbrances.

(c)     The security for the Yang Debt is to be discharged.

3.  The Project and the Remainder Lands are to be transferred (by the Receiver under a "vesting order" of the court) to Infinity LP subject only to the Lehman Debt and other Permitted Encumbrances.  JDI is to hold the title to the real property as bare trustee for Infinity LP.

4.  A 12.5% undivided interest in the Project is to be transferred by Infinity LP to Infinity 12.5% LP for a cash payment ($2.5 million), free from encumbrances (including the Lehman Debt) except Permitted Encumbrances.

5.  The trustee in bankruptcy is to file a proposal under the Bankruptcy and Insolvency Act (Canada) to be approved by unsecured creditors of JDI (including the person designated by us as holder of the Yang Debt) to provide for the payment to the unsecured creditors of JDI in satisfaction of their claims as set forth in the Schedule of Proposed Payments to Unsecured Creditors (to be financed by the Mezzanine Financing).

6.  JDI and its wholly owned subsidiary are to amalgamate.

7.  All of the shares of JDI are to be transferred (by the Receiver under a "vesting order" of the court or by Lehman under its security documents) to an affiliate of ours, free from all encumbrances and adverse claims for $100,000, payable to such Receiver for payment to Lehman upon completion of the Proposal.

8.  Lehman is to be paid a total of $10.0 million, as follows. on account of the Lehman Debt as follows:
    -       $8.5 million as a prepayment of its debt, to be funded by an advance of the Mezzanine Financing ($6.0 million advanced to Infinity LP and $2.5 million advanced to Infinity 12.5% LP for payment under paragraph 4 above)
    -       $1.4 million for the Yang Debt
    -       $100,000, for the JDI shares

9.  Upon the approval of the Proposal, the unsecured creditors of JDI are to be paid a total of approximately $650,000 to be funded by an advance of the Mezzanine Financing.

Following completion of the foregoing transactions:

1. We are to seek to obtain the Construction Financing for Infinity LP in the principal amount of $78.5 million on the terms outlined under "New Financing – Construction Financing".

2. We are to provide or arrange to provide the Mezzanine Financing under terms outlined under "New Financing – Mezzanine Financing".

3. The Remainder Lands and "Lot  E" are to be listed for sale with a recognized real estate agent reasonably acceptable to Lehman, and the net proceeds from the sale of these properties is to be divided, as to 80% to Lehman and as to 20%, to us.

<u>Other Matters</u>

*Marketing of Units in the Project to Purchasers of Units in Sky Tower*

We will work actively with the owners of the Sky Tower Project to afford persons who have entered into pre-sales contracts for units in the Sky Tower Project the opportunity to purchase units in the Project. We will pay the owner of the Sky Tower Project a fee of 20% of the positive difference between the new higher price to be paid for units in the Project by former Sky Tower purchasers who enter into pre-sales contracts within 30 days of closing of the transaction and i) the previous contract price for Unit in the Project if the unit is available for purchase as a result of a rescission or, if not previously sold under a presale contract, ii) the list price for the unit as of September 30, 2008, which fee is payable upon completion of the purchase under the pre-sales contracts with such purchasers and which fee is inclusive of any increased commission payable on such sale. For clarity, this only applies where the former Sky Tower purchaser is paying a price above the previous price for the Unit in the Project and the cost for upgrades provided to such purchasers is to be deducted from such positive difference.

*Construction Costs to Complete the Project*

On the basis of the Helyar Report dated September 2, 2008 (effective July 31, 2008) we are prepared to arrange for construction management and provide a fixed price contract to complete the Project for $67,171,000 (excluding off-site servicing, owner supplied items and Building E).

<u>Defined Terms</u>

Certain terms used in this Offer have the meanings set forth below:

| | |
|---|---|
| Construction Financing | As described under "New Financing – Construction Financing" |
| CDPL | Concord Development Properties Ltd. |
| DIP Facility | A DIP lending facility from Tallinn Capital Corp in the approximate amount of $2.4 million. |
| Financing Fee | The fee to be paid to CPDL for arranging the Construction Financing and the Mezzanine Financing |
| Infinity LP | A limited partnership of which JDI is the limited partner with a 1% interest, a corporation designated by CPDL is a limited partner with a |

|  | 99% interest and an affiliate of CPGI is general partner with a nominal interest, and which owns a 87.5% interest in the Project. |
| Infinity 12.5% LP | A limited partnership of which JDI is the limited partner with a 1% interest, a corporation designated by CPDL is a limited partner with a 99% interest and an affiliate of CPGI is general partner with a nominal interest, and which owns a 12.5% interest in the Project. |
| JDI | Jung Developments Ltd. |
| Lehman | Lehman Brothers Holdings Inc. |
| Lehman Debt | Debt owing to Lehman secured by mortgage registered under No. BBBB412686, and other security, including the pledge of all of the issued and outstanding shares of JDI and a general security interest in all property of Yang |
| Mezzanine Financing | As described under "New Financing – Mezzanine Financing" |
| Permitted Encumbrances | As shown on the copy of the title certificates for the Project and the Remainder Lands [Note: There is a letter of credit in the amount of $2.5 million issued by Canadian Imperial Bank of Commerce ("CIBC") and held by the Municipality of Surrey and which may be secured by the mortgage of the Project and the Remainder Lands in favour of CIBC.   Provided this the obligations secured by this mortgage and other security are limited to this letter of credit, the mortgage and other security held by CIBC may remain in place until a substitute letter of credit is provided to the Municipality of Surrey. |
| Project | Infinity Phase 2 Project which consists of two, 36 storey mixed use residential and commercial towers under construction on property in the City of Surrey legally described as:<br>Parcel Identifier 027-416-968<br>Air Space Parcel 2, Section 35, Block 5 North Range 2 West N.W.D. Air Space Plan BCP35136<br>(including, "Lot "E") |
| Proposal | A proposal under the Bankruptcy and Insolvency Act (Canada) of the unsecured creditors of JDI referred to in paragraph 5 of the Term Sheet |
| Remainder Lands | The lands adjacent to the Project legally described as:<br>PID 027-416-879<br>Lot 3, Section 35 Section 35, Block 5 North Range 2 West N.W.D> except part subdivided by Air Space Plan BCP35136 |
| Yang Debt | Debt owing by JDI owing to Hee Yong Yang secured by mortgage registered under No. BB412688, and other security and other debt of JDI to its shareholders. |

10

**Schedule of Lehman Security**

**$50,000,000 CREDIT FACILITY FOR JUNG DEVELOPMENTS INC.
PROVIDED BY LEHMAN BROTHERS HOLDINGS INC.**

Dated as of June 13, 2007

**SECURITY LIST**

| | | |
|---|---|---|
| Borrower | = | Jung Developments Inc. (a British Columbia company), borrower |
| H.Y. Yang | = | Hee Yong Yang, as guarantor |
| JDI2 | = | Jung Developments (Infinity 2) Inc. (a British Columbia company), guarantor |
| Jung (Korea) | = | Jung Development Co., Ltd. (a Korea company), guarantor |
| Lehman | = | Lehman Brothers Holdings Inc., mezzanine lender |
| Loan Parties | = | Borrower, JDI2, M.S. Jung, H.Y. Yang, Jung (Korea), Yuksung |
| M.S. Jung | = | Myung Soo Jung, as guarantor |
| Yuksung | = | Yuksung Korea Co., Ltd. (a Korea company), as limited liability recourse guarantor |

1.      Mezzanine Loan Agreement and Amendment

2.      Promissory Note

3.      Mortgage over the Property (Assignment of Rents subsumed in standard mortgage terms)

4.      Receipt of Mortgage Terms

5.      Guarantee (British Columbia) for each of:

        (a)      JDI2

        (b)      Jung (Korea)

        (c)      M.S. Jung

        (d)      H.Y. Yang

6.      Limited Recourse Guarantee (British Columbia) for Yuksung

7.  Share Pledge (British Columbia) for Shares in each of:

    (a)  Borrower – executed by M.S. Jung, Jung (Korea), Yuksung & H.Y. Yang

    (b)  JDI2 – executed by Borrower

8.  General Security Agreement (British Columbia) for each of:

    (a)  Borrower

    (b)  JDI2

    (c)  Jung (Korea)

    (d)  M.S. Jung

    (e)  H.Y. Yang

    (f)  Yuksung

9.  Stock Power and Share Certificates for Borrower (4 Stock Powers)

10.  Stock Power and Share Certificate for JDI2 (1 Stock Power)

11.  Cash Collateral Security Agreement

12.  Assignment of Contracts, Plans & Permits

13.  Counterpart's Consents

14.  Environmental Indemnity Agreement

15.  Assignment of Management Agreement

16.  Consent to Assignment of Management Agreement

17.  Intercreditor Agreement with Canadian Imperial Bank of Commerce (Senior Lenders)

18.  Intercreditor for H.Y. Yang

12

**Schedule of Proposed Payments to Unsecured Creditors**

| Amount | Percentage to be Paid | Number of Creditors | Amount (of total claims of unsecured creditors) |
|---|---|---|---|
| Portion of amounts up to $4,999 | 100% | 7 | |
| Portion of amounts from $5,000 to $9,999 | 50% | 3 | |
| Portion of amounts from $10,000 to $19,999 | 25% | 4 | |
| Portion of amounts above $20,000 | 5% | | |
| ITC | | 1 | $5.8 million |
| Yang (assigned to person designated by CDPL) | | 1 | $30 million |
| Total | | 16/30 | $38.5/$52 (74%) |