Hearing Date: January 14, 2009, 10:00 a.m.
Objection Deadline: January 9, 2009, 4:00 p.m.

Jonathan D. Schiller
Hamish P.M. Hume
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

*Attorneys for Barclays Capital Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                                             :
**In re**                                                    :   **Chapter 11 Case No.**
                                                             :
**LEHMAN BROTHERS HOLDINGS INC.,**                           :   **08-13555 (JMP)**
*et al.*                                                     :
                    **Debtors.**                             :   **(Jointly Administered)**
                                                             :
------------------------------------------------------------ x

**BARCLAYS OBJECTION TO PORTION OF**
**DISNEY MOTION FOR APPOINTMENT OF EXAMINER**
**PURSUANT TO SECTION 1104(c)(2) OF THE BANKRUPTCY CODE**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Barclays Capital Inc. ("Barclays") objects as follows to a portion of the Motion Of The Walt Disney Company ("Disney") For Appointment Of Examiner Pursuant To Section 1104(C)(2) Of The Bankruptcy Code (the "Motion," Docket No. 1143):

## INTRODUCTION

1.    In its Motion and other papers filed with the Court, and in separate correspondence with Barclays, Disney asserts that on September 15, 2008, Disney transferred roughly $107 million in foreign currency to Lehman Brothers Commercial Corp. ("LBCC"), a subsidiary of Lehman Brothers Holding, Inc. ("LBHI"). Disney asserts that LBCC failed to

transfer to Disney the U.S. currency Disney was expecting to receive in return. LBCC filed a Chapter 11 petition on October 5, 2008. Disney asserts that it has unsecured claims against LBCC as counterparty and against LBHI as alleged guarantor of this transaction. Concerned that its claims against those entities may not be satisfied, Disney has threatened to sue Barclays under theories of successor liability or tortious interference. *See* Letter from C. McCarthy to G. Larocca, Sept. 18, 2008 (attached as Exhibit A). Barclays has rejected that threat as completely lacking in merit.

2. The scope of the examination proposed in Disney's motion improperly attempts to use Estate assets to develop Disney's meritless lawsuit against Barclays. Doing so would not advance the interests of the bankruptcy Estates or protect creditors of the Estates, but instead would waste the Estates' resources and impose an undue burden on all involved (including Barclays). Accordingly, Barclays asks this Court to limit the scope of the examiner's duties by striking the final two examination issues proposed by Disney and by limiting the scope of the fourth and fifth issues. *See* Disney Motion at 6.

## BACKGROUND

3. Four days after LBHI declared bankruptcy, Barclays agreed to purchase selected North American business assets of LBHI and Lehman Brothers Inc. ("LBI"). As the Court knows from the emergency hearing conducted on Friday, September 19, 2008, the purchase was negotiated under extreme time pressure, and Barclays reasonably sought protection against the type of examination and potential claim that Disney is now pursuing. For that reason, the Order approving the asset purchase provides added protection to Barclays from potential "successor liability" claims, expressly holding that Barclays acquired the assets free and clear of such claims. *See* Order Authorizing and Approving the Sale of Purchased Assets Free and Clear of

2

Liens and Other Interests, Sept. 19, 2008, Docket No. 258, ¶¶ 7-11 ("Sale Order") (attached as Exhibit B).

4. Under the Asset Purchase Agreement, as amended ("APA") (attached as Exhibit C), Barclays did not acquire the assets of LBCC or of any other subsidiary of LBHI other than those identified in the APA or the subsequent clarification letter (which did not include LBCC). *See* Clarification Letter, Sept. 20, 2008, at 1 (attached as Exhibit D). The APA expressly provides that Barclays does not assume any liabilities for any transaction conducted by LBHI, LBI, or their subsidiaries prior to the Closing. *See* APA, Article II (Ex. C). The only exception to this is if the liability is associated with a "Purchased Contract," as that term is defined in the APA. Disney's claim is not in any way related to a Purchased Contract.

5. The protections set forth in the Order and the APA reinforce and confirm the ordinary application of New York State law, which (as explained below) uniformly holds that a successor liability claim cannot be brought against Barclays. Even if Disney could state such a claim against Barclays—which it cannot—the successful prosecution of the claim would benefit only Disney, not the bankruptcy Estates or other creditors.

6. Despite this background, Disney now seeks the appointment of an examiner tasked, in large part, with investigating the potential for successor liability claims against Barclays. Specifically, Disney has asked for the examiner to investigate two issues which have no conceivable purpose other than to attempt to develop facts that could, in theory, be used by Disney in pursuing a meritless successor liability lawsuit against Barclays:

- "What became of LBCC's business, including without limitation, its personnel, client lists, trade secrets, telephone numbers, after September 20, 2008." ("Issue 7");

- "Is Barclays Capital Inc. operating and/or benefiting from LBCC's business?" ("Issue 8").

3

Disney Motion at 6. Barclays asks the Court to remove Issues 7 and 8 from the scope of the examiner's investigation.

7.     More generally, Barclays objects to any discovery based on the unsupportable contention that Barclays somehow acquired assets of LBHI subsidiaries other than the assets that were transferred to Barclays as a result of the sale approved by the Court on September 19, 2008. There is no basis to suspect that LBHI transferred anything more to Barclays than the transaction documents provided. Barclays therefore believes that such discovery is unwarranted and should not be permitted.

8.     Disney proposes investigation of two additional issues that, to a certain extent, raise similar concerns:

- "Postpetition acts and omissions in respect of LBHI's officers and directors, LBCC's officers and directors, and the officers and directors of LBHI's direct and indirect subsidiaries impacting their respective fiduciary duties of care, loyalty, and good faith." ("Issue 4");

- "Whether LBCC and LBHI's other direct and indirect subsidiaries took any steps to protect their respective enterprises and constituencies in connection with the sale to Barclays Capital." ("Issue 5").

*Id.* at 6. Barclays asks the Court to limit Issues 4 and 5 to investigation of claims the various bankruptcy Estates might have against one another, and not to permit the investigation to be used to develop the elements of any purported successor liability claims against Barclays, as such claims are barred under paragraphs 7, 10 and 11 of the Sale Order (Ex. B).

## ARGUMENT

### A.  This Court Has Authority to Limit the Scope of the Examiner's Investigation.

9.     In a Chapter 11 case, the examiner shall, "except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such

4

business, and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. §1106(b) & (a)(3). By its terms, Section 1106 grants this Court the authority to limit the scope of an examiner's investigation. "[I]t is well established that the bankruptcy court has considerable discretion in designing an examiner's role. . . . Indeed, it is [the bankruptcy court's] duty to fashion the role of an examiner to avoid substantial interference with the ongoing bankruptcy proceedings." *In re Loral Space & Comms., Ltd.*, 2004 WL 2979785, at *5 (S.D.N.Y. 2004) (internal quotation omitted); *see also In re Revco D.S., Inc.*, 898 F.2d 498, 501 (6th Cir. 1990) (noting that "the bankruptcy court retains broad discretion to direct the examiner's investigation, including its nature, extent, and duration"); *In re Collins & Aikman Corp.*, 368 B.R. 623, 627 (Bankr. E.D. Mich. 2007) (quoting *Revco*); *In re Bradlees Stores, Inc.*, 209 B.R. 36, 39 (Bankr. S.D.N.Y. 1997) (same). "There would be substantial potential for abuse and waste of estate assets if . . . any party in interest in a case exceeding the [$5 million] debt threshold could obtain appointment of an examiner to investigate whatever matters that party specified." *In re UAL Corp.*, 307 B.R. 80, 86-87 (Bankr. N.D. Ill. 2004) (noting that limitations are particularly appropriate where "it appears that a party seeks appointment of an examiner to investigate a private dispute"); *see also* 7 Collier on Bankruptcy ¶ 1104.03 (15th ed. rev. 2008) ("Nor should the mandatory nature of [Section 1104(c)(2)] be used to allow one group of creditors or interest holders to obtain a protagonist supporting its litigation position under the guise of an investigation.").

10.   Because the examiner will be compensated from the Estates pursuant to 11 U.S.C. Sections 330 and 331, the Court should limit the examiner's investigation to those topics that are reasonably likely to benefit the Estates. *Cf.* 11 U.S.C. § 330(a)(4)(A)(ii)(I) (prohibiting compensation not "reasonably likely to benefit the debtor's estate"). Disney's proposed

investigation of Issues 7 and 8—and to a certain extent Issues 4 and 5—is aimed at helping Disney develop its own purported successor liability claim against a third party non-debtor (Barclays), with the Estates picking up the bill despite the fact that only Disney would purport to benefit from the investigation.

11. More fundamentally, not even Disney could benefit from the investigation because it is clear as a matter of law that Disney has no viable successor liability claim against Barclays (for reasons discussed in more detail below). Thus, any expenditure of Estate resources on investigating such topics would squander assets that could otherwise be used to satisfy creditor claims in order to develop a legally foreclosed claim against a third party. The Court should exercise its discretion to limit the examiner's investigation to avoid that perverse result.

12. Further, if the Court does not limit the scope of investigation, there is a danger that the investigation may become extremely burdensome and costly, as has occurred in other high profile cases in recent years. That burden may in part fall upon Barclays and its employees as they attempt to manage the purchased LBI operations going forward. There is no justification for imposing such a burden on Barclays, particularly during this challenging transition period.

13. Barclays is cooperating and continuing to cooperate in providing information to the various debtors and their agents and advisors. In many instances, the Lehman information systems turned over to Barclays (which, of course, Barclays had no part in designing) as well as information technology arrangements with third party service providers, have been problematic. For instance, the acquired information systems contain information relating to various Lehman entities—both debtors and non-debtors—that is comingled. In some instances, Barclays' information (post-LBHI bankruptcy) is also comingled on such systems. In such instances, it can be extremely burdensome and in some cases technologically impossible to search for information

relating to a particular Lehman entity, based on either the system design or the manner in which data was stored. In addition, there are legal, regulatory and confidentiality restrictions surrounding the disclosure of certain data. The investigations by an Examiner and the SIPC Trustee should be coordinated with this in mind.

### B. This Court's Prior Order Bars the Claims Disney Seeks to Develop.

14. Disney's effort to convert its claim against the LBCC estate into a claim against Barclays is prohibited by this Court's Order approving the APA. As the Court recognized in the Order, judicial endorsement of the sale "free and clear of all Interests of any kind or nature whatsoever" under 11 U.S.C. § 363(f) was an indispensable condition for Barclays to participate in the purchase, given the emergency circumstances and lack of time for customary due diligence. *See* Sale Order at p. 8, ¶ P (Ex. B). Section 363(f) allows a debtor-in-possession to sell assets from the bankruptcy estate "free and clear of any interest in such property of an entity other than the estate" when any of a number of conditions apply. 11 U.S.C. § 363(f) (2007).

15. Consequently, the Court ordered that Barclays "shall take title to and possession of the Purchased Assets . . . free and clear of all Interests of any kind or nature whatsoever," and that such Interests attached to the proceeds of the sale, which took their place in the bankruptcy estate and constituted "fair consideration" for the Purchased Assets. Sale Order ¶ 4 and p. 6, ¶ M (Ex. B). The Court then permanently enjoined "all persons and entities" from pursuing any interests or claims in the Purchased Assets against Barclays. Sale Order ¶ 7 (Ex. B).

16. At the hearing to approve the Sale conducted on September 19, 2008, Disney's counsel argued strenuously that the Order should not provide for a transfer of assets "free and clear of successor liability from creditors of non-debtor subsidiaries." 9/19/08 Hearing Tr. at 247:3-13 (excerpts attached as Exhibit E). Barclays' counsel pointed out clearly that Barclays was "not doing this transaction to paint a bull's-eye on its back for every subsidiary creditor . . .

7

that wants to figure out who's a deep pocket. . . ." 9/19/08 Hearing Tr. at 245:23-25 (Ex. E). In the end, after hearing Disney's objection and Disney's examination of Debtors' witness, the Court's Order provided: "Any objections to the entry of this Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice." Sale Order ¶ 2 (Ex. B).

17. The Order expressly prohibits any entity from pursuing against Barclays any interest that entity had in the Purchased Assets. Sale Order ¶ 7 (Ex. B). Even if Disney was not barred from pursuing such claims, the Sale Order also holds that any interest Disney had in the Purchased Assets was extinguished and replaced with an interest in the cash consideration Barclays paid into the Estates, which constituted fair consideration for the assets Barclays received, and against which Disney can make a claim. Sale Order ¶ 4 (Ex. B). As the Seventh Circuit recognized in *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 163 (7th Cir. 1994), successor liability doctrine "is inapplicable if the plaintiff had a chance to obtain a legal remedy against the predecessor, even so limited a remedy as that afforded by the filing of a claim in bankruptcy."

18. The leading case on the scope of the provision in 11 U.S.C. § 363(f) confirms the power of this Court to prevent Disney from pursuing its claims against Barclays. The court overseeing the bankruptcy of TWA approved the sale of TWA's assets to American Airlines free and clear. *In re Trans World Airlines, Inc.*, 332 F.3d 283 (3d Cir. 2003). In that case, unsecured creditors sought to bring suit against a company that purchased assets from a bankruptcy estate as a going concern. *Id.* at 293. *TWA* held that the unsecured creditors held "interests in property" of the type that could be extinguished under Section 363(f). *Id.* at 288-89; *see also In*

*re PW, LLC*, 391 B.R. 25 (9th Cir. B.A.P. 2008) (holding that junior lien was an "interest in property" that could be extinguished under Section 363(f)); *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 582 (4th Cir. 1996) (holding that pension fund claims were "interests in property" because of the nexus between plaintiff's claims and debtor's use of the purchased assets). The court also held that, even absent Section 363(f), the unsecured creditors' claims against the purchasing company would be barred under general principles of bankruptcy law because sale of the assets both enhanced the value of the bankruptcy estate and preserved thousands of jobs. *TWA*, 322 F.3d at 291-3.

### C.  New York Law Also Bars the Claims Disney Seeks to Develop.

19.  Even absent the Court's Order approving the asset purchase, New York law establishes that Disney lacks a viable successor liability claim. In New York, "the purchaser of a corporation's assets does not, as a result of the purchase, ordinarily become liable for the seller's debts." *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003); *accord Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 244-45 (1983). Where an arms-length transaction involves payment of cash value for corporate assets, "there is no unfairness to creditors in thus limiting recovery to the proceeds of the sale" because the cash allows creditors to recover the same value they could have gotten from the assets. *Cargo Partner*, 352 F.3d at 45.

20.  New York law admits only four possible exceptions to the general prohibition on successor liability in asset sales: formal assumption of liability, fraudulent transfer, "mere continuation" of the selling company, and de facto merger. *See Cargo Partner*, 352 F.3d at 45; *Schumacher*, 59 N.Y.2d at 245. None of the exceptions applies in this case. Under the terms of the APA, Barclays did not assume any liabilities incurred prior to the closing of the purchase transaction on September 22, 2008—one week *after* the Disney currency transaction—with the exception of certain, expressly designated "Purchased Contracts." APA at ¶ 2 (Ex. C);

9

Clarification Letter at ¶ 2 (Ex. D). The Disney transaction is not designated as a Purchased Contract. Nor was the APA a transaction undertaken for the purpose of defrauding Debtors' creditors—to the contrary, as this Court has held, the APA was in the best interests of the creditors and the Estates received fair consideration for the assets sold. Sale Order at 5-6, ¶¶ L, M (Ex. B). The APA sold selected parts of the North American operations of LBHI and LBI to a wholly unrelated purchaser and was not a transaction allowing the "mere continuation" of LBHI and LBI "in a different form." *Alvarado v. Dreis & Krump Mfg. Co.*, 781 N.Y.S.2d 622 (N.Y. Sup. Ct. 2004). This Court has already recognized that the "mere continuation" exception does not apply. Sale Order ¶ 10 (Ex. B).

21.     The de facto merger doctrine is likewise inapplicable because, among other reasons, the former owners of the Purchased Assets retain no ownership or beneficial interest in the assets. While a number of factors are relevant in determining whether a de facto merger has occurred, the Second Circuit has held that "continuity of ownership is the essence of a merger." *Cargo Partner*, 352 F.3d at 47; *accord New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209-10 (2d Cir. 2006) (stating that "no New York court" has held "that a de facto merger may be found in the absence of evidence of continuity of ownership"); *Kretzmer v. Firesafe Prods. Corp.*, 24 A.D.3d 158 (1st Dept. 2005). Continuity of ownership simply does not exist where the owners of the selling corporation no longer profit from the assets once they have been transferred to the purchasing corporation. *Nat'l Serv.*, 460 F.3d at 209-10. When "the seller's ownership interest in the entity is given up in exchange for consideration" and "the parties do not become owners together of what formerly belonged to each," there can be no de facto merger under New York law. *Cargo Partner*, 352 F.3d at 47.

22.     LBHI's shareholders have not acquired any interest in Barclays as a result of the transaction. *See In re New York City Asbestos Litig.*, 15 A.D.3d 254, 256-58 (1st Dept. 2005) (holding that continuity of ownership "exists where the shareholders of the predecessor corporation become direct or indirect shareholders of the successor corporation"). Rather, to the extent the creditors—like Disney—may not recover the full value of their claims, "it is the [bankruptcy] discharge and the lack of sufficient assets that [will] deprive the predecessor's creditors of their remedy, not the acquisition of the predecessor's assets by another entity." *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1151 (9th Cir. 2004). Consistent with these authorities, this Court has already expressly held that no de facto merger occurred as a result of the transaction. Sale Order ¶ 10 (Ex. B).

23.     Based on the foregoing, Disney does not have a viable successor liability claim. Because Disney's Motion seeks to develop this meritless claim, it would waste the Estates' resources and therefore be detrimental to the Estates and to other creditors. The Court should exclude such an investigation from the examiner's duties.

## CONCLUSION

For the foregoing reasons, if the Court orders the appointment of an examiner, Barclays respectfully requests that the Court remove Disney's proposed Issues 7 and 8 from the scope of the examiner's investigation and limit Disney's proposed Issues 4 and 5 to investigation of claims the various bankruptcy Estates might have against one another.

Dated: New York, New York
January 9, 2009

Respectfully submitted,

BOIES, SCHILLER & FLEXNER LLP

By: /s/ Hamish P. M. Hume

Jonathan D. Schiller
Hamish P.M. Hume
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

*Attorneys for Barclays Capital Inc.*