Hearing Date: **January 14, 2009 at 10:00 a.m. (NYT)**

Dennis F. Dunne
Dennis C. O'Donnell
Evan R. Fleck
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

-and-

Paul Aronzon
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone: (213) 892-4000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
                                                                     :
In re:                                                               :    Chapter 11 Case
                                                                     :
LEHMAN BROTHERS HOLDINGS INC., et al.,                               :    No. 08-13555 (JMP)
                                                                     :
                 Debtors.                                            :    (Jointly Administered)
                                                                     :
-------------------------------------------------------------------- x

**OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO MOTION OF NEW YORK STATE COMPTROLLER FOR
APPOINTMENT OF A TRUSTEE OR, IN THE ALTERNATIVE,
AN EXAMINER WITH EXPANDED POWERS**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors-in-possession (collectively, "Lehman" or the "Debtors") hereby objects to the Motion for Appointment of a Trustee or, in the Alternative, an Examiner with Expanded Powers pursuant to sections 1104(a) and 1104(c) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), dated November 4, 2008 (the "Trustee Motion"), filed by the

New York State Comptroller Thomas P. DiNapoli (the "Comptroller"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1. By the Trustee Motion, the Comptroller contends that "cause" exists to warrant the appointment of a chapter 11 trustee and that the appointment of a trustee is in the best interests of the Debtors' estates and creditors. In the alternative, the Comptroller seeks the appointment of an examiner with expanded powers. The Committee opposes the Trustee Motion.[1]

2. The Comptroller bears the burden to demonstrate the need for a trustee, by clear and convincing evidence, yet has failed to present any legally cognizable evidence in support of the relief requested. Moreover, subsequent developments have rendered the Trustee Motion moot. The Trustee Motion asserts that "cause" exists for the appointment of a trustee because of the continued involvement of Richard Fuld, Jr. in the Debtors' affairs. However, Mr. Fuld resigned from his position as Chief Executive Officer of LBHI, effective December 31, 2008. Mr. Fuld and much of the rest of Lehman's senior management have been replaced by a team of professionals from Alvarez & Marsal North America, LLC ("A&M"), a well-respected and highly qualified restructuring firm, whose retention was previously approved by this Court. See Docket No. 760. The Debtors originally retained Mr. Bryan Marsal of A&M as their chief restructuring officer; Mr. Marsal has since been appointed to the position of Chief Executive

---

[1] A motion to appoint an examiner is also pending before this Court. See Motion of The Walt Disney Company for Appointment of Examiner Pursuant to Section 1104(c)(2) of the Bankruptcy Code (the "Examiner Motion," [Docket No. 1143]). A hearing on the Examiner Motion is currently scheduled for January 14, 2009. The Committee's position on the appointment of an examiner and the scope of its mandate are addressed in the context of the Examiner Motion. See Response of Official Committee of Unsecured Creditors to Motion of the Walt Disney Company for Appointment of an Examiner Pursuant to Section 1104(c)(2) of the Bankruptcy Code and Joinders Thereto, dated January 9, 2009. Thus, the Committee does not address here the Comptroller's request for the appointment of an examiner with expanded powers but reserves the right to join in any responses to the relevant portion of the Trustee Motion and to address this issue at any hearing on the Examiner Motion or the Trustee Motion.

2

Officer, succeeding Mr. Fuld.  The Comptroller does not dispute that Mr. Marsal has the necessary skills and experience to perform those tasks identified by the Comptroller as requiring the appointment of a trustee and is focused on maximizing recovery for the benefit of all stakeholders.  In short, no "cause" exists to warrant the appointment of a trustee.

3. In addition, manifold investigations and reports are underway.  In addition to the various areas the Committee is investigating, the SIPA Trustee has stated that it is reviewing certain information and transactions and intends to draft a report describing its findings.  Given the statutory requirements, an examiner is likely to be appointed in this case.  Similarly, the examiner will be charged with reviewing certain transactions and party conduct.  All of these efforts will yield greater transparency and address many of the concerns raised by the Comptroller.

4. For the reasons set forth more fully herein, the Committee respectfully submits that the Court should deny the Trustee Motion.

**BACKGROUND**

5. On September 15, 2008 and periodically thereafter, the Debtors commenced these chapter 11 cases.  On September 17, 2008, the United States Trustee for the Southern District of New York appointed the Committee.  On November 4, 2008, the Comptroller filed the Trustee Motion requesting the appointment of a trustee and asserting, inter alia, that LBHI's Board and its then-Chairman and Chief Executive Officer, Richard Fuld, Jr., are inappropriate parties to supervise Lehman's liquidation.  The Comptroller asserts that there is "cause" to appoint a trustee pursuant to section 1104(a)(1) of the Bankruptcy Code.  In the alternative, the Comptroller asserts that the Court should appoint a trustee pursuant to section 1104(a)(2) of the Bankruptcy Code since such appointment is in the best interest of the Debtors' creditors.

3

**OBJECTION**

A.  **Trustee Motion Should Be Denied Because
    Comptroller Failed to Establish "Cause"**

6. The Trustee Motion seeks appointment of a chapter 11 trustee for "cause" pursuant to section 1104(a)(1) of the Bankruptcy Code. The appointment of a chapter 11 trustee is an "extraordinary remedy" that is rarely granted. See, e.g., In re The 1031 Tax Group, LLC, 374 B.R. 78, 85 (Bankr. S.D.N.Y. 2007) (denying appointment of trustee); In re North Star Contracting Corp., 128 B.R. 66, 70 (Bankr. S.D.N.Y. 1991) (denying appointment of trustee); Schuster v. Dragone (In re Dragone), 266 B.R. 268, 271 (D. Conn. 2001) (affirming denial of motion for trustee, and noting appointment of a trustee is the exception rather than the rule); Official Comm. of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.), 285 B.R. 148, 158, 160 (Bankr. D. Del. 2002) (denying motion to appoint trustee, recognizing that "appointing a trustee must be considered a last resort"). There is a "strong presumption" in favor of allowing a debtor's management to remain in control during a chapter 11 case. See In re The 1031 Tax Group, LLC, 374 B.R. at 85. "A party seeking the appointment of a trustee must therefore show by clear and convincing evidence that the appointment of a trustee is warranted." In re Royster Co., 145 B.R. 88, 90 (Bankr. M.D. Fla. 1992) (denying motion for appointment of trustee); see also W.R. Grace & Co., 285 B.R. at 157 (same). Thus, the Comptroller bears the heavy burden of proving by clear and convincing evidence that such appointment is warranted here.

7. The Comptroller has failed to satisfy his burden. While alleging that the circumstances in these cases are sufficiently "extraordinary" to warrant the appointment of a trustee for "cause," the Comptroller fails to substantiate this conclusory assertion. Further, there are no allegations of widespread fraud in these chapter 11 cases such as were present in other cases in which the appointment of a trustee necessary. Moreover, even the purported "cause" the

4

Comptroller cites has been rendered moot by developments subsequent to the filing of the Trustee Motion.

8. Mr. Fuld resigned as Chief Executive Officer of LBHI on December 31, 2008; he and most of the Debtors' senior management have been replaced by the reorganization team headed by Mr. Marsal. While the Comptroller acknowledges the expertise and work of Mr. Marsal and the A&M team, the Comptroller argues that their efforts are hindered by their relative unfamiliarity with the Debtors' businesses. The Comptroller fails to explain, however, how the appointment of a trustee with even less familiarity is therefore necessary.

9. The Trustee Motion asserts that, even though Mr. Marsal and the A&M team report weekly to the Board and are working with Mr. Fuld and the Board to administer the estates, Mr. Fuld and the Board add no value to this process. See Trustee Motion ¶ 6. The Comptroller provides no basis for this contention. Nevertheless, with a skilled restructuring team such as A&M in place and with an active and engaged Committee, the Debtors' estates have no need for a trustee.

10. The results of the many investigations being conducted with respect to the Debtors also render the Comptroller's request unnecessary at this time. As has been previously described to the Court, the Debtors, with the Committee's assistance, are working to implement a process for retrieving, preserving, and sharing the enormous amount of data that will allow parties to reconstruct transactions and determine pre-bankruptcy events giving rise to causes of action and claims. In connection therewith, the Debtors are party to a Transition Services Agreement with Barclays, pursuant to which the Debtors will obtain "access to systems that are now under the control of Barclays," which the Debtors believe will enable them to respond to creditor inquiries. See Transcript of October 16, 2008 hearing, at 47.

5

11.     The Committee has initiated the first phase of its own formal investigation of the Debtors, beginning with its Motion for Leave to Conduct Discovery of JPMorgan Chase Bank, N.A. ("JPMC") pursuant to 11 U.S.C. §§ 105(a) and 1103(c) and Federal Rule of Bankruptcy Procedure 2004, see Docket No. 566, seeking production of documents pertaining to certain transactions and the relationship between LBHI and JPMC. The SIPA Trustee is also conducting an investigation into the events and circumstances that led to the commencement of the SIPC Proceeding.[2]

12.     In addition, the Examiner Motion is separately pending before this Court, and the appointment of an examiner is likely. Coupled with the other corporate governance steps described above, the appointment of an examiner will further obviate the need for a trustee at this time. See In re Dragone, 266 B.R. at 270 ("The appointment of an examiner and the additional steps taken by the Court to preserve the assets of the Estate greatly mitigated against the need for appointing a trustee.").

13.     In light of (i) the installation of the team of restructuring experts from A&M; (ii) the resignation of Mr. Fuld as Chief Executive Officer and his replacement by Mr. Marsal; (iii) the Committee's active monitoring of the case and the conduct of the Debtors; and (iv) the pending investigations, including the likely appointment of an examiner, the

---

[2]    The SIPA Trustee is in the process of investigating, inter alia, (i) the cause of LBI's demise; (ii) potential claims against LBI's officers, directors and employees; (iii) the circumstances of the transfer of LBI subsidiaries to LBHI, including the means for valuing such subsidiaries, (iv) the selection of those performing such valuation, (v) the financial and operational impact from the transfers; (vi) LBI's relationships with its clearing banks, the DTCC, and its secured lenders; (vii) the circumstances of intercompany transfers of cash, securities, and liabilities between LBI and the other Debtors both before and after the commencement of the Chapter 11 Cases; (viii) LBI's prime brokerage relationships; (ix) the transfer of LBI's customer accounts to other entities; and (x) the effect of other financial transactions; and LBI's pre- and post-petition record-keeping practices. See Trustee's Motion for an Order Granting Authority to Issue Subpoenas for the Production of Documents and the Examination of the Debtors Current and Former Officers, Directors and Employees, and Other Persons [SIPC Proc. Docket No. 417].

Comptroller has failed to show by clear and convincing evidence that "cause" exists warranting the appointment of a trustee.

     **B.**    **Appointment of Trustee Is Not in Best Interests of Estate**

     14.    Alternatively, the Comptroller seeks appointment of a trustee pursuant to section 1104(a)(2) of the Bankruptcy Code. Section 1104(a)(2) states that the court may appoint a trustee if the court finds that such appointment "is in the interests of creditors, any equity security holders, and other interests of the estate . . . ." 11 U.S.C. § 1104(a)(2). This subsection requires proof that "the appointment is in the interests of all those with a stake in the estate." (emphasis added) In re Sletteland, 260 B.R. 657, 672 (Bankr. S.D.N.Y. 2001) (denying motion for appointment of trustee). "The 'interests' standard may initially seem less stringent than the 'cause' standard . . . . However, it is important to remember that the 'interests' standard requires a finding that appointment of a trustee would be in the interest of essentially all interested constituencies . . . . [i.e.] in the interest of the estate generally." 7 Collier on Bankruptcy ¶ 1104.02[d] (15th ed. rev. 2007).

     15.    Courts have declined to appoint a chapter 11 trustee when, as here, there is continued support for existing management from the creditors' committee. See, e.g., In re The 1031 Tax Group, LLC, 374 B.R. at 91 (denying motion for appointment of trustee opposed by creditors' committee, among other parties); In re North Star Contracting Corp., 128 B.R. 66, 70 (Bankr. S.D.N.Y. 1991) (denying appointment of trustee where creditors' committee supported continued operations by management); In re Royster Co., 145 B.R. at 90 (denying appointment of trustee, where debtors were operating "under the watchful eye of a very active" creditors' committee and the committee opposed appointment of trustee); In re Mako, Inc., 102 B.R. 809, 814 (Bankr. E.D. Okla. 1988) ("[T]he Court cannot turn a deaf ear to the many voices sharing support for the current management; most notably the Unsecured Creditors' Committee.").

7

16. The Committee is comfortable that Mr. Marsal, an independent fiduciary, is well qualified to maximize the value of the Debtors' estates. With the active involvement of the Committee, Mr. Marsal and his management team will act for the benefit of all parties in interest in these cases. The concerns raised in the Trustee Motion have therefore already been addressed in a manner satisfactory to the Committee, the statutory representative of the Debtors' unsecured creditors.

17. Furthermore, the costs associated with the appointment of a trustee, whose duties would largely duplicate the efforts already underway, far outweigh any benefit a trustee might provide. The Comptroller himself concedes that a trustee's work would duplicate that of the Committee, the A&M team, and the examiner who is likely to be appointed in these cases. See Trustee Motion ¶ 64-66. A trustee would simply add further significant costs, including his fees and the fees of any professionals he will have to retain. There is simply no justification in these cases to incur these additional costs that will be necessarily borne by the Committee's constituency.

18. Thus, the concerns raised by the Comptroller, including those about the Debtors' current management, have already been addressed or are otherwise being monitored by the Committee. With so many levels of independence and oversight, the appointment of a trustee would serve no conceivable purpose. Thus, the Committee submits that, under the current circumstances of these cases, replacing management with a trustee is clearly not in the best interest of the Debtors' creditors.

### C. Alternatively, Court Should Defer Consideration of Trustee Motion

19. Given the recent factual developments in these chapter 11 cases and the cooperative relationship of the Committee and the Debtors, a trustee is not necessary, and the Committee submits that the Trustee Motion should be denied outright. If the Court has any concerns, however, the Committee requests that, at least, the consideration of the Trustee Motion be deferred until the new status quo has had a chance to develop further. Unquestionably, the appointment of a trustee is within the discretion of this Court under section 1104(a) of the Bankruptcy Code. See In re Dragone, 266 B.R. at 271 ("The decision not to appoint a trustee in a Chapter 11 proceeding is a factual determination committed to the discretion of the Bankruptcy Judge."). However, the Court should exercise its discretion to defer determination of the Trustee Motion until such time as the necessity, if any, of a trustee, as well as the proper scope of its duties, may become crystallized.[3]

---

[3] The Committee is satisfied for the present time with manner in which corporate governance matters have been addressed. The Committee will, however, continue to monitor corporate governance issues, and its opposition to the Trustee Motion is without prejudice to its right to seek or support the appointment of a trustee in the future should the need arise.

9

Pg 10 of 10

**CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court (i) deny the relief requested in the Trustee Motion; (ii) or in the alternative, adjourn consideration of the Trustee Motion, and (iii) grant such other relief as is just.

Dated:   New York, New York
         January 9, 2009

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By: /s/ Dennis F. Dunne
Dennis F. Dunne
Dennis C. O'Donnell
Evan R. Fleck
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

-and-

Paul Aronzon
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone: (213) 892-4000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.