Hearing Date: January 14, 2009, 10:00 a.m.
Objection Deadline: January 9, 2009, 4:00 p.m.

Jonathan D. Schiller
Hamish P.M. Hume
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

*Attorneys for Barclays Capital Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

| | |
|---|---|
| **In re** | **Chapter 11 Case No.** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.* | **08-13555 (JMP)** |
| **Debtors.** | **(Jointly Administered)** |

------------------------------------------------------------ x

**BARCLAYS OBJECTION TO BANK OF
NEW YORK MELLON MOTION FOR RULE 2004 EXAMINATION**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Barclays Capital Inc. ("Barclays") objects as follows to the Motion of the Bank of New York Mellon, N.A. ("BNYM"), as Indenture Trustee, for Order Pursuant to Bankruptcy Rule 2004 Directing Examination of, and Production of Documents by, Lehman Brothers Holdings, Inc. ("LBHI"), Lehman Brothers, Inc. ("LBI"), Lehman Brothers Commodity Services, Inc. ("LBCS"), and Barclays Capital, Inc. (the "Motion," Docket No. 1766):

## **INTRODUCTION**

1. On September 19, 2008, this Court approved the purchase by Barclays of certain specified assets of LBHI, LBI, and LB 745 LLC, a holding company that owned the Lehman Brothers headquarters building (collectively, the "Seller"). *See* Order Authorizing and Approving the Sale of Purchased Assets Free and Clear of Liens and Other Interests, Sept. 19, 2008, Docket No. 258 (the "Sale Order") (attached as Exhibit A). As the Court recognized at the September 19 hearing, no other viable purchaser was willing to enter such a transaction during a period of extreme economic uncertainty. Hearing Tr. Sept. 19, 2008, at 100:8-101:17 (excerpts attached as Exhibit B).

2. The Court's Sale Order is controlling. The Sale Order and the related Asset Purchase Agreement documents define the transaction—establishing what Barclays purchased and the obligations Barclays assumed. The Sale Order and transaction documents also establish what Barclays was *not* acquiring and the obligations it was *not* assuming. The Sale Order expressly prohibits and enjoins the assertion of claims against Barclays based on, among other things, "the operation of the Debtors' businesses before the Closing Date or the transfer of the Debtors' interests in the Purchased Assets to the Purchaser." Sale Order ¶ 7 (Ex. A). Those protections were fundamental to Barclays' agreement to make such a substantial acquisition during a time of extreme economic crisis. These protections were specifically bargained-for and incorporated into the Sale Order to prevent creditors from treating Barclays as a deep-pocket alternative to the Debtors. As Barclays' counsel stated at the September 19, 2008, Sale Approval Hearing, Barclays was "not doing this transaction to paint a bull's-eye on its back for every

2

subsidiary creditor . . . that wants to figure out who's a deep pocket. . . ." 9/19/08 Hearing Tr. at 245:23-25 (Ex. B).

3. In the Sale Order, the Court recognized the importance of ensuring that Barclays' potential liabilities were limited to those it had assumed as part of the asset acquisition. Accordingly, in addition to the injunction contained in paragraph 7 of the Sale Order, the Court ordered that Barclays would not be subject to successor liability and acquired the assets "free and clear of all Interests of any kind or nature whatsoever..." Sale Order ¶¶ 4, 10 (Ex. A). The Court also expressly found that the transaction was entered into in good faith, that Barclays was "a good faith Purchaser," and that the consideration paid by Barclays "constitute[d] reasonably equivalent value and fair consideration." Sale Order ¶¶ 18, 19 (Ex. A).

4. Notwithstanding the Court's Order, BNYM seeks to use Rule 2004 discovery to develop a direct action against Barclays, a non-debtor. Motion at 3 (asserting that "various causes of action on behalf of LBCS and its creditors are likely to exist" if assets of LBCS were transferred to Barclays).

5. BNYM's motion seeks extensive discovery intended to establish claims that ultimately cannot be sustained in light of this Court's Sale Order and the related Asset Purchase Agreement documents. The discovery sought is also duplicative of inquiries that an Examiner may undertake and therefore should not be permitted. Alternatively, the discovery BNYM seeks should be coordinated with the investigations of the SIPC Trustee and an Examiner (if one is appointed) to ensure that any fact-finding is done in an efficient and cost-effective manner.

## BACKGROUND FACTS

6. Under the Asset Purchase Agreement, as amended ("APA") (attached as Exhibit C), Barclays did not acquire the assets of any subsidiary of LBHI or LBI other than those expressly designated as "Purchased Assets." APA, ¶¶ 2.1-2.2 (Ex. C). No assets of LBCS were included in the definition of Purchased Assets except, before the APA was amended and clarified in a September 20, 2008 Clarification Letter, the APA gave Barclays the option of acquiring "the equity interest or assets of Eagle Energy Management LLC," a subsidiary of LBCS. APA at p. 8 (Definition of Purchased Assets, sub-paragraph (p)) (Ex. C). Before closing the transaction, however, Barclays and the Seller agreed to exclude those assets. *See* 9/19/08 Hearing Tr. at 54:1-4 (Ex. B). On September 20, 2008, Barclays and the Seller executed a Clarification Letter, which provided that, "For the avoidance of doubt, the equity interests and assets of Lehman Brothers Commodity Services, Inc., including the equity of, as well as the assets of the energy marketing and services business of Eagle Energy Management LLC, are Excluded Assets (rather than Purchased Assets)." Clarification Letter, Sept. 20, 2008, ¶ 1(c) (attached as Exhibit D).

7. Barclays did not acquire any over-the-counter derivatives, including those based on commodities. Clarification Letter, ¶ 1(c) (Ex. D). Under the APA, Barclays is allowed to assume certain contracts by designating them as Purchased Contracts. APA, ¶ 2.5 (Ex. C). Barclays has not designated any LBCS contracts as Purchased Contracts. Nor did Barclays acquire any exchange-traded derivatives positions held by LBCS through the APA.

4

## ARGUMENT

### A. The Court Should Not Allow Duplicative Discovery of a Non-Debtor.

8. The Walt Disney Company ("Disney") has already filed a motion seeking the appointment of an Examiner under 11 U.S.C. § 1104(c)(2) primarily for the purpose of investigating what became of the cash and other assets of another Lehman subsidiary, Lehman Brothers Commercial Corp. ("LBCC").[1] *See* Disney Motion, Oct. 20, 2008 (Docket No. 1143). The Court will hear arguments on the Disney motion on January 14, 2009—the same day it will hear arguments on this Motion and other motions seeking approval of proposed discovery and investigations. If an Examiner is authorized to sort through the finances and relationships of LBHI and its subsidiaries, BNYM's requested discovery would be duplicative of that effort, and should therefore be denied.

9. Although a Rule 2004 examination is generally less restricted than discovery under the Federal Rules of Civil Procedure, "the scope of the examination is not limitless; the examination should not be so broad as to be more disruptive and costly to the debtor than beneficial to the creditor." *In re Texaco, Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987). In particular, the examination "should not encompass matters that will be unduly burdensome . . . and duplicative of previously furnished information." *Id.* at 553. Courts are "reticent to open the door to Rule 2004 examinations which might be identical to or duplicative of existing discovery needs and activities of other interested parties." *In re Buick*, 174 B.R. 299, 305 (Bankr. D. Colo. 1994).

10. This motion presents a risk of such duplication and needless expense. Were the Court to allow every creditor or other interested party to conduct its own Rule

---

[1] Barclays opposes certain aspects of the investigation proposed by Disney, as discussed in its opposition to that motion.

2004 investigation of the handling of various assets by LBHI or LBI, duplication and waste would be virtually guaranteed.

11. Barclays is cooperating and continuing to cooperate in providing information to the various debtors and their agents and advisors. In many instances, the Lehman information systems turned over to Barclays (which, of course, Barclays had no part in designing), as well as information technology arrangements with third party service providers, have been problematic. For instance, the acquired information systems contain information relating to various Lehman entities—both debtors and non-debtors—that is comingled. In some instances, Barclays' information (post-LBHI bankruptcy) is also comingled on such systems. In such instances, it can be extremely burdensome and in some cases technologically impossible to search for information relating to a particular Lehman entity, based on either the system design or the manner in which data was stored. In addition, there are legal, regulatory and confidentiality restrictions surrounding the disclosure of certain data. The investigations by an Examiner and the SIPC Trustee should be coordinated with this in mind.

### B. Barclays Has Not Contradicted Any Representations Made to the Court Regarding LBCS.

12. BNYM alleges that "[t]he statements of Debtor's counsel at the Sale Hearing . . . are seemingly at odds with Barclays' post-Sale disclosures" such that Rule 2004 discovery is necessary "to meaningfully reconcile these disparate positions and confirm what assets of LBCS and the commodities business were transferred to Barclays." Motion at 8. There is no such discrepancy.

13. BNYM attempts to create a disparity based on statements that are in fact consistent. Motion at 7-8. BNYM first notes that the Clarification Letter plainly states

6

that no assets of LBCS are included in the APA transaction and that Lori Fife, counsel for LBHI, acknowledged at the September 19 hearing that LBCS and Eagle Energy "assets are not part of this transaction . . . and that the transaction will not affect their ability to operate as an entity." 9/19/08 Hearing Tr. at 226:3-19 (Ex. B). BNYM then asserts that a Barclays press release issued on October 7, 2008, announcing that the Lehman Brothers' U.S. commodities business had been fully integrated under the Barclays' name, implies or raises a suspicion that, in addition to acquiring the LBI commodities business, Barclays also acquired assets of LBCS. Motion at 8.

14. These supposedly "disparate positions" are, in fact, not contradictory. Barclays did acquire the LBI commodities business. The Clarification Letter clearly provided that the LBI commodities business was included in the transaction. *See* Clarification Letter, ¶ 1(b) ("For the avoidance of doubt, the 'Business' includes LBI's commodities business....") (Ex. D).

15. Testimony at the September 19 hearing also established that Barclays would acquire LBI's commodities business. Herbert McDade, Global Head of LBHI's Equities Division, testified on behalf of LBHI that the commodities business would be transferred to Barclays:

> Q. Pursuant to the proposed asset purchase agreement here, the businesses that are being -- the Lehman businesses being transferred to Barclays are as follows: Tell me if I'm incorrect, I'll read one at a time. Investment Banking?
>
> A. Correct.
>
> . . .
>
> Q. Commodities?
>
> A. Correct.

7

. . .

> Q. And to transfer those businesses, I take it, the one necessary component is the transfer of employees to Barclay?
>
> A. Absolutely.

9/19/08 Hearing Tr. at 112:15-19, 113:6-7, 114:20-22 (Ex. B). Mr. McDade testified that the Lehman Brothers commodity business would resume at Barclays, which is what the October 7 press release later announced. Thus, there is no contradiction between what was said at the Sale Hearing and what was later announced by Barclays.

16. A certain number of former LBI and LBHI employees who previously did work for LBCS are now employed by Barclays. However, such employees are not the type of "property" that can be allocated under the bankruptcy code—namely, something that could appropriately be sold as part of the enterprise. Courts are reluctant to include the skills and experience of particular employees as part of the "property" of an estate when valuing the estate's assets. *See, e.g., Olsen v. Floit*, 291 F.3d 655, 659-60 (7th Cir. 2000) (affirming bankruptcy judge's ruling that human capital of key employee belonged to employee and was not proper component of valuation of company); *see also* 11 U.S.C. § 541(a)(6) (excluding postpetition services performed by individual debtors from the definition of "property" under the bankruptcy code). It is thus factually and legally inaccurate to assert that, by hiring LBI and LBHI employees who previously did work for LBCS, Barclays thereby acquired LBCS's "property."

17. There is no basis for BNYM's assertion that Barclays has acquired or is using any proprietary systems of LBCS. Motion at ¶ 18.

18. More generally, Barclays objects to discovery based on the unsupportable contention that Barclays somehow acquired assets of LBHI subsidiaries other than the

assets that were transferred to Barclays as a result of the sale approved by the Court on September 19, 2008. There is no basis to suspect that LBHI transferred anything more to Barclays than the transaction documents provided. Barclays therefore believes that such discovery is unwarranted and should not be permitted.

C.   **Creditors of LBCS Should Not Be Allowed to Use Rule 2004 Discovery to Develop Their Purported Individual Claims Against Non-Debtors.**

19.   Finally, any attempt to use Rule 2004 to obtain discovery intended for use in an adversary proceeding or in a separate action is an inappropriate circumvention of the more stringent Federal Rules of Civil Procedure. *See, e.g., Snyder v. Society Bank*, 181 B.R. 40, 42 (Bankr. S.D. Tex. 1994) ("The use of Rule 2004 to further [claimant's] case in state court constitutes an abuse of Rule 2004."); *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 516 (Bankr. E.D.N.Y. 1991) ("Rule 2004 examinations should not be used to obtain information for use in . . . proceedings pending before another tribunal."); *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 675 (Bankr. E.D. Pa. 1990) ("Many courts have expressed distaste for efforts of parties to utilize R2004 examinations to circumvent the restrictions of the F.R.Civ.P. in the context of adversary proceedings or contested matters."); *Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) ("The proper mode of discovery which ordinarily must be utilized against a third party who may be liable to the bankruptcy estate for various wrongful acts is contained in the Federal Rules of Civil Procedure, which provide numerous safeguards against unfairness to the party from which discovery is sought."). If BNYM intends to pursue any purported claims against Barclays, it should at least be required to do so under discovery mechanisms that afford Barclays proper protection from harassment and undue burden.

## **CONCLUSION**

For the foregoing reasons, Barclays respectfully requests that the Court deny BNYM's Motion for Rule 2004 discovery.

Dated: New York, New York
January 9, 2009

                                      Respectfully submitted,

                                      BOIES, SCHILLER & FLEXNER LLP

                                      By: /s/ Hamish P. M. Hume
                                      Jonathan D. Schiller
                                      Hamish P.M. Hume
                                      575 Lexington Avenue
                                      New York, NY 10022
                                      (212) 446-2300

                                      *Attorneys for Barclays Capital Inc.*