Hearing Date and Time:  January 14, 2009 at 10:00 a.m.
Objection Date and Time:  January 9, 2009 at 5:00 p.m.

CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
Telephone:  (312) 845-3000
Facsimile:  (312) 701-2361
James E. Spiotto (admitted pro hac vice)
Ann E. Acker (admitted pro hac vice)
Franklin H. Top, III (admitted pro hac vice)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE | CHAPTER 11 CASE NO.  08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS INC., ET AL., | |
| Debtors. | (Jointly Administered) |

**OBJECTION OF U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE TO THE
DEBTORS' STIPULATION AND AGREED ORDER PROVIDING FOR LEHMAN
BROTHERS INC.'S ASSUMPTION AND ASSIGNMENT OF ADMINISTRATIVE
AGENCY AGREEMENTS TO LEHMAN COMMERCIAL PAPER INC.**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

NOW COMES U.S. Bank National Association, not individually but as Trustee, ("*U.S.

Bank*") by and through its counsel, Chapman and Cutler LLP, to object to the Stipulation and

Agreed Order Providing for Lehman Brothers Inc.'s Assumption and Assignment of

Administrative Agency Agreements to Lehman Commercial Paper Inc. (the "*Stipulation*", and

2558005.01.03.B.doc

U.S. Bank's objection thereto, the "*Objection*").  In support of its Objection, U.S. Bank states as follows:

## SUMMARY OF OBJECTIONS

1.      U.S. Bank objects to the Stipulation assigning the rights and obligations under the terms of certain Administrative Agency Agreements on grounds that (i) the Stipulation or Notice of Presentment fail to identify any defaults that exist under such Agreements, (ii) Lehman Brothers Inc., ("*LBI*") and Lehman Brothers Commercial Paper, Inc. ("*LCPI*") have failed to cure (or advise how they intend to cure) the defaults under the terms of the Administrative Agency Agreements, and (iii) on grounds that LCPI, as a debtor in these proceedings, has not provided adequate assurance that it will perform under the terms of the Administrative Agency Agreements.  To the extent the assignment is approved by this Court, the Order should provide that all of the obligations under the terms of the Administrative Agency Agreement are being assumed by LCPI.

## BACKGROUND

2.      U.S. Bank serves as Indenture Trustee for the Pine, Verano and Spruce transactions identified in the Stipulation under the terms of the following Indentures:

(a).  Indenture dated as of May 28, 2008 by and among Pine CCS, Ltd., as Issuer, Pine CCS, Corp., as the Co-Issuer, and U.S. Bank National Association as Trustee;

(b).  Indenture dated as of July 25, 2008 by and among Verano CCS, Ltd., as the Issuer, Verano CCS, Corp., as the Co-Issuer, and U.S. Bank National Association, as Trustee;

(c).   Indenture dated as of April 28, 2008 by and among Spruce CCS, Ltd. as the Issuer, Spruce CCS, Corp., as the Co-Issuer and U.S. Bank National Association, as the Trustee.

These transactions are collateralized debt obligation ("*CDO*") transactions. A collateralized debt obligation is a type of asset-backed structured credit produced collateralized by a portfolio of real or synthetic fixed income-assets.  CDO's are generally divided into tranches whereby more senior tranches have a higher priority in terms of the cash flows generated from the portfolio of assets.

3.    In these cases the assets collateralizing the Notes are participations in loans owned by LCPI.  In each of these transactions, the Issuer of the certificates in the CDO is the Purchaser of a 100% participation in loans under the terms of a Master Participation Agreement (the "*Master Participation Agreement*") between LCPI, as Seller, and the Issuer.  A true and correct copy of one of the Master Participation Agreement is attached hereto as Exhibit A. Unless otherwise defined, capitalized terms used herein have the meanings given in the Indenture or the Master Participation Agreement.

4.    Under the Master Participation Agreement, LCPI, as Seller, sold, assigned and transferred to the Issuer, without recourse, and the Issuer purchased and assumed from the Seller, an undivided 100% participation interest in all of LCPI's interests in certain loans, advances and notes and interests in, to and under the related credit documents, as well as participations in the foregoing, as described in the Master Participation Agreement (the "*Loan Interests*").  Master Participation Agreement at § 2.

5.    The Issuer and the Co-Issuer issued certain Notes pursuant to the Indenture.  The Notes are secured by collateral, which consists of Issuer's participations in the Loan Interests and other assets and accounts, and all payments and proceeds received on the Loan Interests and the

other assets (the "*Collateral*").  Pursuant to the Indenture, the Issuer pledged the Collateral to

U.S. Bank, in its capacity as Trustee, in order to secure the obligations under the Notes and the

Indenture.  U.S. Bank holds the Collateral and collects the Interest Proceeds and Principal

Proceeds of the Collateral on behalf of the Noteholders under the Indenture.

6.      Pursuant to the Master Participation Agreement, LCPI, as Seller, is to promptly

remit to the Issuer, as Purchaser, all Collections received in respect of Loan Interests without set-

off, counterclaim or deduction of any kind within five business days after receipt thereof from a

Borrower.  Master Participation Agreement at §§ 2 and 5.  On behalf of the Purchaser, U.S. Bank

deposits such amounts into the Collection Account (except for amounts payable on the Delayed

Draw Loans and Revolving Credit Facilities, which are deposited into the Variable Funding

Account).

7.      Certain of the Loan Interests underlying the participation interests of the Issuer

are Delayed Draw Loans or Revolving Credit Facilities, under which LCPI may be required to

make advances or loans to the Borrowers pursuant to the underlying credit documents (such

advances or loans a "*Future Loan*").  LCPI is to notify the Issuer promptly in writing if and to

the extent that it receives notice from a Borrower requesting a Future Loan and, subject to the

terms of the Indenture and the Master Participation Agreement, the Issuer may be required to

remit the amount of such Future Loan to LCPI.

8.      Under the terms of the Master Participation Agreement, upon request from a

Borrower to LCPI for a Future Loan, LCPI is to notify the Issuer of such request, and in the case

of the Pine transaction, for example, the Issuer will then remit funds on deposit in the Variable

Funding Account, or if those amounts are insufficient, funds obtained by drawing on the Class

A-2 Notes, the Class B Notes and the Subordinated Notes, to LCPI in the amount of such Future

Loan.  If the Issuer shall be obligated to fund a Future Loan under a Revolving Credit Facility or

Delayed Draw Loan, the Trustee, at the direction of the Issuer or the Administrative Agent, shall remit the amount of such Future Loan to the Seller only to the extent that, following such remittance, the sum of the amount on deposit in the Variable Funding Account, plus the unfunded portion of the Class A-2 Notes, Class B Notes and Subordinated Notes would be equal to or greater than the Aggregate Principal Amount of the unfunded portion of the Revolving Credit Facilities and Delayed Draw Loans (the "*Funding Condition*").

9.    As of the date hereof, LCPI has failed to remit all of the Collections that it has received with respect to the loans that are subject to the Master Participation Agreements.  Upon information and belief more than $200,000,000 in principal and interest collections under the loans which are the subject of the Pine CCS Master Participation Agreement have not been remitted to the Trustee in accordance with the terms of the Master Participation Agreement. Further the Trustee believes that more than $200,000,000 in draw requests have been made by Borrowers under loans in the Pine CCS transaction alone.  The Trustee does not know when, if and/or how these draw requests have been funded.

10.    The Issuer and Lehman Brothers Inc. ("*LBI*") entered into that certain Administrative Agency Agreement (the "*Administrative Agency Agreement*") dated as of May 28, 2008, between LBI and the Issuer.

11.    U.S. Bank, as directed in writing by the Administrative Agent, invests all funds received into or retained in the Collection Account and its sub-accounts in short-term Eligible Investments pending distribution.  In addition the Administrative Agent is required to provide certain information to the Trustee, and review reports generated by the Trustee.

12.    LBI is in default under the terms of Administrative Agency Agreement.  Since the filing of the SIPA proceeding, LBI has failed to direct the Trustee to invest amounts it holds in trust as required under the terms of the Administrative Agency Agreements, has failed to provide

it with information as required under the terms of the Administrative Agency Agreements, and

has failed to review monthly reports prepared by the Trustee in accordance with the terms of the

Administrative Agency Agreement.

13.     This Stipulation, therefore, arises in the context of *both* the parties thereto being in

default of their respective obligations in these transactions.  Because the Debtors have not cured

the defaults under these agreements, and are not able to provide adequate assurance of future

performance, the Administrative Agency Agreements may not be assigned to LCPI.

**THE DEBTORS MAY NOT ASSUME AND ASSIGN ANY AGREEMENT UNTIL ALL
DEFAULTS ARE CURED**

14.     The Bankruptcy Code requires that as part of the assignment of an executory

contract, all defaults must be cured (or that adequate assurance be provided that all defaults will

be promptly cured).  The Debtors may not assume and assign any executory contract unless they

have cured all existing defaults.  11 U.S.C. § 365(b)(1); *Metropolitan Airports Comm. v.*

*Northwest Airlines, Inc. (In re Midway Airlines, Inc.)*, 6 F.3d 492, 496 (7th Cir. 1993); *In re*

*Superior Toy & Mfg. Co.*, 78 F.3d 1169, 1174 (7th Cir. 1996) ("The language of § 365(b)(1) is

unequivocal. A party to an executory contract must be paid all amounts due him under the

contract before the contract may be assumed."); *see generally In re Burger Boys, Inc.*, 94 F.3d

755 (2d. Cir. 1996).

15.     The Stipulation and Notice of Presentment are silent upon (a) whether any

defaults exist under the terms of these Agreements, and how LCPI or LBI intend to cure those

defaults.  LBI is in default of its obligations under the terms of the Administrative Agency

Agreement.  LBI has failed to advise the Trustee with respect to the investment of funds.  Given

the fact that LCPI itself is in default of its obligations under a different agreement in the same

transaction, and the fact that it, too, is subject to a bankruptcy proceeding, it is not clear to the

Trustee how these defaults will be cured.

**THE DEBTORS MAY NOT ASSUME AND ASSIGN ANY DERIVATIVE CONTRACT
ABSENT ADEQUATE ASSURANCE OF FUTURE PERFORMANCE**

16.     The assignee must provide adequate assurance of future performance of such contract "whether or not there has been a default in such contract or lease."  11 U.S.C. § 365(f)(2)(B).  Although the term "adequate assurance of future performance" is not defined in the Bankruptcy Code, adequate assurance of future performance "is to be given a practical, pragmatic construction based upon . . . the circumstances of [the] case."  *In re Texas Health Enter., Inc.*, 246 B.R. 832, 834 (Bankr. E.D. Tex. 2000) (*quoting In re Prime Motor Inns, Inc.*, 166 B.R. 993, 997 (Bankr. S.D.Fla. 1994)).

17.     "Assurance of future performance is adequate 'if performance is likely (i.e., more probable than not)' and the degree of assurance necessary to be deemed adequate 'falls considerably short of an absolute guaranty.'"  *Id.* at 835 (*quoting In re PRK Enterprises, Inc.*, 235 B.R. 597, 603 (Bankr. S.D.Tex. 1999)).  Courts generally "evaluate the financial condition of the assignee and the likelihood that the non-debtor party will receive the benefit of its bargain from the assignee."  *Id.* (*citing In re Casual Male Corp.*, 120 B.R. 256, 264-65 (Bankr. D. Mass 1990)).  In particular, courts interpreting the requirement have focused on the assignee's "ability to fulfill the financial obligations" under the contract.  *In re Glycogenesys, Inc.*, 352 B.R. 568, 578 (Bankr. D. Mass. 2006) (*citing In re Martin Paint Stores*, 199 B.R. 258 (Bankr. S.D.N.Y. 1996)); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524 (Bankr. D.N.J. 1988)); *In re Old South Coors, Inc.*, 27 B.R. 923, 926 (Bankr. N.D. Miss. 1983) (court considered long and successful business experience and financial strength of each proposed assignee in evaluating assignment by debtor in possession of its rights under a beer distributorship agreement).  *cf. In re Pioneer Ford Sales, Inc.*, 729 F.2d 27, 28-30 (1st Cir. 1984) (in a case decided under Bankruptcy Code Section 365(c)(1)(A) and Rhode Island law, court held that the counterparty to a franchise contract acted reasonably in withholding consent to

assignment of a contract where assignee could not meet working capital requirements of the franchise contract). The burden of proving adequate assurance of future performance is on the movant-debtor. *Texas Health,* 246 B.R. at 834.

18.    Again, the Stipulation and the Notice of Presentment are silent with respect to how LCPI will provide adequate assurance of future performance beyond saying LCPI has an interest in the transactions and wants to protect its own rights as an investor therein. In the instant case, the Court may not rely upon the financial condition of LCPI to determine that it will be able to perform under the terms of the Administrative Agency Agreement in the future. LCPI is itself a debtor in these proceedings, and it is uncertain whether or not LCPI even intends to reorganize in a traditional sense. Further, LCPI's past history in this very transaction does not provide any support, as LCPI itself is in default of substantial monetary obligations under other agreements in the same transaction. It has failed to remit collections to the Trustee.

### THE DEBTORS ARE PROHIBITED FROM MODIFYING THE TERMS AND CONDITIONS OF ANY OF THE CONTRACTS

19.    While the Stipulation and the Notice of Presentment do not indicate that LCPI would be assuming any less than the entirety of the obligations under the Administrative Agency Agreement, the Stipulation should be clear that this assignment (if approved by this Court) is an assignment of the entirety and that LCPI is assuming the entirety of the obligations thereunder. LCPI must assume all of their obligations with respect to a transaction, and cannot cherry pick those rights they want and get rid of the respective obligations. A decision to assume or reject an executory contract is "an all or nothing proposition." *Schlumberger Resource Management Serv., Inc. v. Cellnet Data Sys., Inc. (In re Cellnet Data Sys., Inc.),* 327 F.2d 242, 249 (3d Cir. 2003). Thus, if a debtor assumes a contract, it must do so *cum onere*, with all the benefits as well as the burdens. *Cinicola v. Scharffenberger*, 248 F.3d 110, 119-120 (3d Cir. 2001); *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 78 (3d Cir. 1999). *See also*

*In re Beverage Canners Int'l Corp.*, 255 B.R. 89, 95 (Bankr. S.D. Fla. 2000) ("It is black letter law that an executory contract must be either assumed in its entirety, *cum onere*, or completely rejected."); *In re Rigg*, 198 B.R. 681, 685 (Bankr. N.D. Tex. 1996) ("If a debtor chooses to assume . . . an executory contract or unexpired lease, he must assume them according to their terms."). The assumption and assignment of an executory contract does not give the Debtor or the assignee the ability or the right to modify the terms of the agreement being assumed and assigned. *See, e.g., Medtronic Ave., Inc., v. Advanced Cardiovascular Sys., Inc.*, 247 F. 3d 44, 60 (3d Cir. 2001). In the *Medtronic* case, the court explained that:

> [a]n assignment does not modify terms of the underlying contract. It is a separate agreement between the assignor and the assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party changed. An assignment is intended to change only who performs an obligation, not the obligation to be performed.

*Id. See also In re Federal-Mogul Global, Inc.*, No. 05-2423, 2007 U.S. App. LEXIS 6120, at *9 (3d Cir. Mar. 15, 2007) (explaining that debtor is not able to modify obligations in contract assumed and assigned pursuant to Section 365 of the Bankruptcy Code).

WHEREFORE U.S. Bank National Association, as Trustee respectfully requests that this Court deny the relief requested in the Notice of Presentment and Stipulation. To the extent this Court approved the Stipulation any Order should provide that any damages as a result of defaults under the Administrative Agency be deemed an administrative expense claim and further provide that LCPI is assuming all of the obligations of LBI thereunder.

Respectfully submitted,

U.S. Bank National Association, not
   individually but as Trustee

By:        /s/ Ann Acker
        One of Its Attorneys

James E. Spiotto
Ann Acker
Franklin H. Top, III
Chapman and Cutler LLP
111 West Monroe Street
Chicago, Illinois  60603
(312) 845-3000