DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone:  212.259.8000
Facsimile:  212.259.6333
Martin J. Bienenstock, Esq.
Irena Goldstein, Esq.

Attorneys for The Walt Disney Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                                        :
**In re**                                               :        **Chapter 11 Case No.**
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.,**                       :        **08-13555 (JMP)**
*et al.*                                                 :
        **Debtors.**  :        **(Jointly Administered)**
                                                        :
------------------------------------------------------- x
**THE WALT DISNEY COMPANY**                              :
                                                        :
        **Movant,**   :
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.,**                       :
**and LEHMAN BROTHERS**                                  :
**COMMERCIAL CORP.**                                     :
                                                        :
        **Respondents.**  :
------------------------------------------------------- x

**RESPONSE OF THE WALT DISNEY COMPANY TO OBJECTIONS**
**OF THE SIPA TRUSTEE, OFFICIAL CREDITORS' COMMITTEE AND BARCLAYS**
**CAPITAL INC. TO MOTION REQUESTING APPOINTMENT OF EXAMINER**
**PURSUANT TO SECTION 1104(c)(2) OF THE BANKRUPTCY CODE**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

       The Walt Disney Company ("TWDC") hereby responds to the response of the

Debtors (as defined below), and the objections filed by James W. Giddens, as trustee (the "SIPA

Trustee") for the liquidation of Lehman Brothers Inc. ("LBI"), Barclays Capital Inc.

("Barclays"), and the official committee of unsecured creditors (the "Committee"), to the motion

of TWDC for entry of an order in respondents' chapter 11 cases directing the appointment of an

examiner pursuant to section 1104(c)(2) of title 11 of the United States Code (the "Bankruptcy

Code"), and respectfully represents as follows:

BACKGROUND

1.      Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers

Commercial Corp. ("LBCC") filed for relief under Chapter 11 of the Bankruptcy Code on or

about September 15 and October 5, 2008, respectively.  Certain other direct or indirect

subsidiaries of LBHI (collectively with LBHI and LBCC, the "Debtors") also commenced

chapter 11 cases in that interval.  Their cases are jointly administered under the above-captioned

number, but not substantively consolidated.

2.      On September 19, 2008, the United States District Court for the Southern

District of New York entered an order, at the request of the Securities Investor Protection

Corporation ("SIPC"), placing LBI, a subsidiary of LBHI, in liquidation under the Securities

Investor Protection Act ("SIPA") and appointed the SIPA Trustee (the "SIPA Proceeding").

Thereafter, the district court transferred the SIPA Proceeding to this Court.

3.      On September 18, 2008, the United States Trustee for the Southern

District of New York appointed a statutory creditors' committee for the LBHI and LB745 cases.

No trustee or examiner exists in either of those cases.

## THE EXAMINER MOTION

4.        TWDC is owed approximately $92 million by LBHI and LBCC as a result

of their breach of their obligations to TWDC in connection with certain foreign currency

transactions and a guaranty agreement.  On October 20, 2008, TWDC filed its motion (the

"Examiner Motion") [Docket No. 1143], pursuant to Bankruptcy Code section 1104(c)(2),

seeking the appointment of an examiner to conduct an investigation of LBHI and LBCC and

their direct and indirect subsidiaries with respect to, among other things, intercompany accounts

among LBHI and its direct and indirect subsidiaries, whether LBCC and LBHI took any steps to

protect their constituencies in connection with the sale to Barclays and whether Barclays is

operating and/or benefiting from LBCC's business, all as more fully set forth in the Examiner

Motion.  Bank of America, N.A. and The Harbinger Funds filed joinders in the Examiner Motion

(the "Joinders") [Docket Nos. 1302, 1310].

## DEBTORS' RESPONSE TO THE EXAMINER MOTION

5.        On January 8, 2009, the Debtors filed their response to the Examiner

Motion and the Joinders in which they support the appointment of an examiner and "suggest that

the examiner should be charged with the duties to investigate the matters set forth in Paragraphs

31-34" of the Debtors' opposition (the "Opposition") to the motion, dated November 4, 2008, of

the New York State Comptroller for the Appointment of a Trustee or, in the alternative, an

Examiner with Expanded Powers [Docket No. 2427].  The scope of the Examiner's

responsibilities outlined by the Debtors in the Opposition (the "Proposed Responsibilities") is the

result of negotiations among the Debtors and TWDC and is broader than that proposed by

TWDC in the Examiner Motion to ensure that issues important to all of the Debtors' creditors,

particularly the creditors of the subsidiary Debtors, are properly examined.

6.      TWDC consents to the Proposed Responsibilities as outlined in the

Opposition, but objects to any effort of the Debtors or the Committee (as outlined below) to limit

the examiner's ability to retain financial advisors.  Forcing the examiner to rely only upon the

Debtors' advisors will compromise the independence, and the appearance of independence, of

the investigation.

THE SIPA TRUSTEE'S OBJECTION

7.      The SIPA Trustee objected to the Examiner Motion to the extent it seeks

the appointment an examiner to conduct an investigation of LBI.  While any investigation of

LBHI or related Debtors will certainly touch upon issues relating to or implicating LBI, along

with other related and third parties, TWDC does not request that an examiner be appointed in the

SIPA proceeding.  This clarification should resolve the SIPA Trustee's objection.

BARCLAYS' AND THE COMMITTEE'S OBJECTIONS
SHOULD BE OVERRULED

8.      Both Barclays and the Committee admit that the appointment of an

examiner under Bankruptcy Code section is required pursuant to Bankruptcy Code section

1104(b) (Barclays Objection, ¶ 9 [Docket No. 2469]; Committee Objection, ¶ 2 [Docket No.

2477]) but object to the Proposed Responsibilities in furtherance of their parochial concerns

rather than the interests of the Debtors' broader constituencies.  As set forth below, both

Barclays' and the Committee's objections would undermine the fairness, and appearance of

fairness, of these chapter 11 cases, would illegally impair TWDC's statutory right to an examiner

to conduct and appropriate investigation and should be overruled.

A.      Barclays' Objection

9.      Barclays requests in its objection (the "Barclays Objection") that this

Court prevent an examiner from investigating any portion of the sale of assets of LBHI and LBI

4

(the "Sale") pursuant to this Court's Order Authorizing and Approving the Sale of Purchased

Assets Free and Clear of Liens and Other Interests, dated September 19, 2008 (the "Sale Order")

[Docket No. 258].  Barclays is not a party in interest entitled to interfere with the rights of

creditors in the Debtors' cases, nor is it asserting that it is a creditor.  Rather, it is only seeking to

participate in this matter as a buyer, regardless of whether it took assets beyond those approved

in the Sale Order, at the expense of the Debtors' creditors.

10.     Further, Barclays' contentions that authorizing an investigation into the

Sale is (a) improper because it would allow the use of estate assets to develop "Disney's

meritless lawsuit against Barclays" (Barclays Objection, ¶ 7) and (b) prevented by the Sale

Order, which authorized the Sale to be free and clear of any "all Interests of any kind or nature

whatsoever" (Barclays Objection, ¶ 14), are wrong on every point.

11.     First, the results of any investigation of the closing of the Sale would

benefit all the Debtors' creditors, not just TWDC.  If, as Barclays represents, only the assets of

LBI and the Debtors party to the asset purchase agreement were transferred, the Sale Order may

well offer the protections to Barclays that it requires.  If, however, assets of other LBHI

subsidiaries were transferred, the creditors of such subsidiaries are entitled, at the very least, to

understand what assets were transferred and whether there are claims against Barclays or any

other party in connection with the transfer of such assets.

12.     Second, nothing in the Sale Order purports to grant the Court jurisdiction

to allow sales of non-debtor assets free and clear of liens, claims and interests, and the Court

expressly questioned whether it had the authority to do so.  For example, during the Sale hearing,

the Court invited Barclays to "make an argument . . . as to how, as a matter of bankruptcy law,

[certain intellectual property rights] that are not residing within this debtor or its property-

owning affiliate can be the subject of a free and clear order." 9/19/08 Hearing Tr., 183-184:20-1

[Docket No. 318]. No such argument was forthcoming. As a result, the Sale Order expressly

carves out "intellectual property rights [which] may be owned by entities other than the Seller"

from the provision authorizing the transfer of the Purchased Assets free and clear of liens, claims

and interests. Sale Order, pp. 12-13, ¶ 4.

13.    Further, during the final moments of the Sale hearing, in an effort to

resolve the impasse over drafting and to ensure that TWDC would not be precluded from

examining the Sale transaction after it was consummated, TWDC's counsel asked the Court

whether it was "fair for us to infer from Your Honor's remarks that if we leave the language

alone and one day we'll [sic] come back to Your Honor, if necessary, to resolve its ambiguity

that Your Honor would be inclined based on your first comments that you'll interpret it based on

what was legal?" 9/19/08 Hearing Tr., 255:5-9. The court responded:

> in the event that parties were to return to this court at some time in
> the future to seek an interpretation of what I meant in one of my
> orders that I will look at the language probably with a clearer head
> than I have right now and attempt to reasonably parse the words
> and, in doing so, make a judgment as to not only what the language
> means but how it should be applied as a legal matter.

9/19/08 Hearing Tr., 255-256:23-05.

14.    As set forth above, the Court recognized that as "a legal matter" it could

not authorize the transfer of non-debtor assets free and clear of liens, claims, interests and

successor liability. The Sale Order includes a specific finding that, other than with respect to

certain intellectual property rights which the Debtors admitted may not be owned by a Debtor

(9/19/08 Hearing Tr., 88-89:21-02), the property being sold is owned by the Debtors and LBI.

Sale Order, p. 6, ¶ N. Barclays, however, ignores these provisions of the Sale Order and the

relevant portions of the transcript and, instead, asks this Court to prevent any independent

investigation of the closing of the Sale and its aftermath to determine whether any non-debtor

assets were transferred to it, purposely or not.

      15.    Barclays reliance upon the Sale Order as the final "say so" on the

ownership of the assets transferred is particularly disingenuous because Barclays claims in its

own motions (to be relieved of certain of its obligations under the Sale Order pursuant to Fed. R.

Civ. Pro. 60(b)) that it made mistakes because of the exigency of the circumstances and the time

pressures the parties were under.  *See*, *e.g.*, Motion of Barclays for Relief Concerning Certain

Contracts Erroneously Posted With the "Closing Date Contracts," ¶¶ 12-13 [Docket No. 809];

Declaration of Eszter Farkas, ¶ 5 [Docket No. 812]; Motion of Barclays for Relief Concerning an

American Express Contract Erroneously Posted With the Closing Date Contracts, ¶¶ 3-4 [Docket

No. 959].  Why should we accept Barclays' word that no non-debtor assets were transferred to it

when it is simultaneously alleging it made mistakes in connection with the same Sale?

      16.    Indeed, the Court accepted that it was impossible for creditors and other

parties in interest to understand at the time that the Sale Order was entered exactly how the Sale

impacted them.  9/19/08 Hearing Tr., 84:13-15 ("I think I know what's going on here, and I'm

not saying that you necessarily know how your client's rights are affected.").  The Court

specifically noted that TWDC's counsel "is doing what he can do to protect claims against an

identified counterparty" in connection with the potential sale of nondebtor assets.  9/19/08

Hearing Tr. 201: 19-23.  As the Court stated, since Barclays was unable to demonstrate a legal

basis under which the Court was permitted "to convey nondebtor property free and clear," it was

for Barclays "a drafting issue or an issue of risk assessment."  9/19/08 Hearing Tr., 184: 16-20.

The Court urged the parties to be more specific in the drafting, but ultimately agreed to enter an

order with certain ambiguities and re-visit the issue if requested "to reasonably parse the words

and, in doing so, make a judgment as to not only what the language means but how it should be applied as a legal matter." 9/19/08 Hearing Tr., 255-256:23-05.

17.    Therefore, Barclays was put on notice by the Court and other parties, including TWDC, that the transfer of non-debtor assets would be problematical and maybe re-visited, and can not now pretend that there were no open issues and everything was resolved. Barclays entered into the transaction with eyes wide open. Indeed, it compelled warp speed. Creditors deserve an investigation of whether assets were transferred to Barclays beyond the assets of certain Debtors which the Sale Order authorized.

18.    Finally, Barclays implies that an investigation into the Sale is inappropriate because it occurred post-petition (Barclays Objection, ¶ 11). First, the sale occurred pre-petition with respect to LBCC and certain other of the subsidiary Debtors. Second, pursuant to Bankruptcy Code sections 1106(b) and 1106 (a)(3), unless the Court orders otherwise, the examiner appointed under Bankruptcy Code section 1104(d) shall "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor," and "any other matter relevant to the case or to the formulation of a plan." Certainly, investigating the circumstances surrounding the Sale are more than relevant to any plan for the Debtors: the Debtors' creditors need to know whether there are any claims arising from the closing of the Sale and how the proceeds from the Sale (or causes of action) should be allocated among the various Debtors' estates.

B.    Committee Objection

19.    The objection of the Committee (the "Committee Objection") to the Proposed Responsibilities is based on the grounds that an examiner should not be authorized to investigate matters currently being investigated by the Committee because it would duplicate and

potentially delay the Committee's investigations. Accordingly, the Committee seeks to limit the examiner's authority to inter-company transfers which occurred during the 30 day period prior to September 15, 2008 (which ignores the fact that most of the Debtors filed after September 15) and that any report prepared by the examiner should not "identify, address or analyze any legal claims or defenses in its written report or otherwise" (Committee Objection, ¶ 31).

20.     Simply put, the Committee's attempt to censor the examiner's report in advance is substantially equivalent to depriving TWDC and all creditors of their statutory right to an examiner.

21.     The Committee's attempts to limit the role of an examiner should be overruled. The Committee has no right to subordinate an examiner's investigation to its own investigations, particularly here where the Committee was appointed before most Debtors commenced their cases and has members who, as a matter of fact and law, must oppose the interests of the subsidiary Debtors' creditors. At least two members of the Committee, the indenture trustees, are only creditors of LBHI, and it is their contractual obligation under their respective indentures that causes them to attempt to limit claims against LBHI, including subsidiaries' claims. Given the foregoing, the Committee cannot meritoriously perform an investigation of interdebtor matters that will be fair or appear fair.

22.     Indeed, this situation was confronted by this Court in *In re Adelphia Communications Corp.*, 336 B.R. 610 (Bankr. S.D.N.Y. 2006), *aff'd*, 342 B.R. 122 (S.D.N.Y. 2006). As here, there was only one management and one statutory committee for multiple debtors and their respective creditors. The *Adelphia* court ordered the debtors and the statutory committee to remain neutral on interdebtor claims, thereby relying on several *ad hoc* creditors' committee to investigate and prosecute them. *Id.* at 632 n.34 and 678.

23.     Accordingly, the instant Committee's argument that it can bring claims is simply wrong.  In any event, it is not cause to limit the examiner's investigation.  Under the Committee's logic, no examiner should investigate or find claims (an examiner's most valuable function) because the statute does not authorize an examiner to sue.  It is for Congress to legislate that limitation on examiners, not the Committee.

24.     Moreover, the Committee is not obligated, unlike an examiner, to file its report or make public the result of its investigations.  In fact, the results will likely be kept secret.  Disclosures would only be selective.  Therefore, the Committee's investigations provide none of the sunshine, objectivity and confidence that an examiner investigation will provide.

25.     These cases are among the largest bankruptcy cases ever filed and yet, there is only one statutory committee.  In light of that, the Committee's effort to limit the examiner's investigation, under the guise of limiting professional fees, shows that Committee is engaging in a turf war, not a principled effort to save money.

26.     The Debtors and TWDC worked hard to construct the Proposed Responsibilities in such a way as to limit disruption, to ensure a coordinated process, and most importantly, to ensure that the interests of all of the Debtors' creditors, including the creditors of LBHI's subsidiaries, are taken into consideration.

27.     Finally, as set forth above, both the Debtors and the Committee request that the Court refuse to allow the examiner, as an initial matter, to retain financial advisors.  We have all heard of examiners with expanded powers.  Here, the Debtors and Committee request an examiner with reduced powers.  Nothing could taint the process more.  To ensure independence, the examiner must be allowed to retain financial advisors and any other professionals, whose services are reasonably required, to allow the examiner to fulfill the Proposed Responsibilities.

Of course, there should be coordination among the various professionals in the cases, but given the size of these cases, retaining one additional set of advisors, charged with the obligation only of assisting the examiner in connection with the Proposed Responsibilities, will not cause any significant increase in professional fees.

WHEREFORE TWDC requests the Court to issue the order attached hereto appointing an examiner(s) pursuant to section 1104(c)(2) of the Bankruptcy Code and to grant TWDC such other and further relief as is just.

Dated: New York, NY
     January 13, 2009

DEWEY & LEBOEUF LLP

/s/ Martin J. Bienenstock
Martin J. Bienenstock, Esq.
Irena Goldstein, Esq.
1301 Avenue of the Americas
New York, New York 10019
Telephone:  212.259.8000
Facsimile:  212.259.6333

Attorneys for The Walt Disney Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------- x
                                                          :
In re                                                     :        **Chapter 11 Case No.**
                                                          :
**LEHMAN BROTHERS HOLDINGS INC.,**                        :        **08-13555 (JMP)**
*et al.*                                                  :
              **Debtors.**                                :        **(Jointly Administered)**
                                                          :
--------------------------------------------------------- x
**THE WALT DISNEY COMPANY**                               :
                                                          :
              **Movant,**                                 :
                                                          :
**LEHMAN BROTHERS HOLDINGS INC.,**                        :
**and LEHMAN BROTHERS**                                   :
**COMMERCIAL CORP.**                                      :
                                                          :
              **Respondents.**                            :
--------------------------------------------------------- x

### ORDER FOR APPOINTMENT OF EXAMINER PURSUANT
### TO SECTION 1104(c)(2) OF THE BANKRUPTCY CODE

Upon consideration of the response (the "Response") of The Walt Disney

Company ("TWDC"), dated January 13, 2008, to objections (the "Objections") to the motion

(the "Motion") of TWDC, dated October 20, 2008, for the appointment of an examiner pursuant

to section 1104(c)(2) of title 11 of the United States Code (the "Bankruptcy Code"); and this

Court having jurisdiction to consider and determine the Response and all relief requested therein;

and due and sufficient notice of the Response having been given under the circumstances; and

this Court having convened a hearing at which all interested parties had an opportunity to appear

and be heard; and after considering all Objections to the Motion, and after due deliberation and

sufficient cause appearing therefor, it is:

1.      Ordered that the Response is granted, and the United States Trustee is

directed to appoint an examiner (the "Examiner") on or before _____, 2009; and it is

further

2.      Ordered that the Examiner shall investigate:

- Whether LBCC[1] has any administrative claims against LBHI resulting from LBHI's cash sweeps of LBCC's cash balances, if any, after September 15, 2008, the commencement date of LBHI's chapter 11 case;

- All voluntary and involuntary transfers to, and transactions with, affiliates, insiders and creditors of LBCC or its affiliates, in respect of foreign exchange transactions and other assets that were in the possession or control of LBCC at any time commencing on September 15, 2008 through October 3, 2008, the day that LBCC commenced its chapter 11 case;

- Whether LBCC has more than colorable claims against LBHI for potentially insider preferences arising under the Bankruptcy Code or state law;

- Whether LBCC has more than colorable claims against LBHI or any other entities for potentially voidable transfers or incurrences of debt, under the Bankruptcy Code or otherwise applicable law;

- Whether there are more than colorable claims for breach of fiduciary duties and/or aiding or abetting any such breaches against the officers and directors of LBCC and/or other Debtors arising in connection with the financial distress of the Lehman enterprise prior to the commencement of the LBHI chapter 11 case on September 15, 2008;

- Whether assets of LBCC or other direct and indirect subsidiaries of LBHI were transferred to Barclays Capital Inc. as a result of the sale to Barclays Capital Inc. that was approved by order of the Bankruptcy Court dated September 20, 2008, and whether consequences to LBCC of the consummation of the transaction created more than colorable causes of action that inure to the benefit of its creditors;

- The inter-company accounts and transfers among LBHI and its direct and indirect subsidiaries, including but not limited to: LBI, LBIE, Lehman Brothers Special Finance ("LBSF") and LBCC, during the 30-day period preceding the commencement of the LBHI chapter 11 case on September 15, 2008;

- The transactions and transfers, including but not limited to the pledging or granting of collateral security interest among the debtors and the pre-chapter 11

---

[1] All undefined capitalized terms used herein shall have the meaning given to them in the Response.

lenders and/or financial participants including but not limited to, JPMorgan Chase, Citigroup, Inc., Bank of America, the Federal Reserve Bank of New York and others;

- The transfer of the capital stock of certain subsidiaries of LBI on or about September 19, 2008 to Lehman ALI Inc.; and

- The events that occurred from September 4, 2008 through September 15, 2008 that may have resulted in commencement of the LBI chapter 11 case.

and it is further

3.     Ordered that the Debtors, the Debtors' affiliates and subsidiaries and the Committee are directed to cooperate with the Examiner in conjunction with the performance of any of the Examiner's duties and the investigation, and the Debtors and the Committee shall use their respective best efforts to coordinate with the Examiner to avoid unnecessary interference with, or duplication of, the investigation; and it is further

4.     Ordered that until the Examiner has filed his or her report, neither the Examiner nor the Examiner's representatives or agents shall make any public disclosures concerning the performance of the investigation or the Examiner's duties; and it is further

5.     Ordered that the Examiner may retain counsel and any professionals, including financial advisors not already retained by the Debtors, if he or she determines that such retention is necessary to discharge his or her duties, with such retention to be subject to Court approval under standards equivalent to those set forth in 11 U.S.C. § 327; and it is further

6.     Ordered that the Examiner and any professionals retained by the Examiner pursuant to any order of this Court shall be compensated and reimbursed for their expenses pursuant to the procedures for interim compensation and reimbursement of professionals ordered in these cases. Compensation and reimbursement of the Examiner shall be determined pursuant to 11 U.S.C. § 330, and compensation and reimbursement of the Examiner's professionals shall

be determined pursuant to standards equivalent to those set forth in 11 U.S.C. § 330; and it is further

7.    Ordered that the Examiner shall cooperate fully with any governmental agencies (such cooperation shall not be deemed a public disclosure as referenced above) including, but not limited to, any Federal, state or local government agency that currently or in the future may be investigating the Debtors, their management or their financial condition, and the Examiner shall use best efforts to coordinate with such agencies in order to avoid unnecessary interference with, or duplication of, any investigations conducted by such agencies. The Examiner will follow a protocol to be established with the governmental agencies for the sharing of information to the extent that such sharing benefits the Debtors' estates, and such sharing of information shall be subject to appropriate conditions to protect the Debtors' estates; and it is further

8.    Ordered that the Examiner shall have the standing of a "party-in-interest" with respect to the matters that are within the scope of the Investigation, and shall be entitled to appear and be heard at any and all hearings in these cases; and it is further

9.    Ordered that, with respect to issues identified in paragraph 2 above, the examiner shall prepare and file an interim or final report within sixty (60) days after the date of the examiner's appointment unless this time is extended for good cause shown, by order of this Court; and it is further

10.     Ordered that nothing in this Order shall impede the right of the United

States Trustee for the Southern District of New York or of any other party in interest to request

any other lawful relief, including but not limited to the expansion of the scope of the Examiner's

investigation.

Dated: New York, NY
          _____, 2009

                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE