Hearing Date: January 14 at 10:00 a.m. (Prevailing Eastern Time)

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
Gregory A. Horowitz
Amy Caton
Attorneys for The Bank of New York Mellon Trust Company, N.A., as Indenture Trustee

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re: ) | |
| ) | |
| LEHMAN BROTHERS HOLDINGS INC., et al. ) | Chapter 11 |
| ) | |
| ) | Case No. 08-13555 |
| Debtors. ) | |
| ) | (Jointly Administered) |
| ) | |

---

**REPLY OF THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A. AS INDENTURE TRUSTEE, TO OBJECTIONS OF DEBTORS, SIPA TRUSTEE JAMES W. GIDDENS, BARCLAYS CAPITAL, AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO BANK OF NEW YORK MELLON TRUST COMPANY, N.A.'S MOTION FOR ORDER PURSUANT TO BANKRUPTCY RULE 2004 DIRECTING EXAMINATION OF, AND PRODUCTION OF, DOCUMENTS BY LEHMAN BROTHERS HOLDINGS, INC., LEHMAN BROTHERS INC., LEHMAN BROTHERS COMMODITY SERVICES INC. AND BARCLAYS CAPITAL INC.**

The Bank of New York Mellon Trust Company, N.A. (formerly known as The Bank of New York Trust Company, N.A.), as trustee for the holders of the Bonds (the "Indenture Trustee"), by and through its undersigned counsel, respectfully represent in further support of its Motion (as defined below):

**RELEVANT BACKGROUND**

1.      On November 26, 2008, who indirectly holds over $700 million in claims against LBCS and LBHI, the Indenture Trustee filed a motion under Bankruptcy Rule 2004 (the "Motion") for an order of this court directing examination of and production of documents by

Lehman Brothers Holdings, Inc. ("LBHI"), Lehman Brothers Inc. ("LBI"), Lehman Brothers Commodity Services Inc. ("LBCS"), and/or Barclays Capital ("Barclays"). At the crux of the Motion is the question of whether the assets and business of LBCS were transferred to Barclays in connection with the Sale.[1] The Indenture Trustee directed its requests to these four entities due to the uncertainty surrounding what Barclays acquired in the Sale. The Indenture Trustee currently has little information on what aspects of LBCS were transferred in the Sale. While it is uncontested that the Purchase Agreement by its terms attempted to exclude LBCS from the Sale, the actual results may tell a different story. The Indenture Trustee now seeks discovery in order to determine what, if any, claims it may have before this court in the interest of maximizing LBCS's estate.

2.      Shortly before the Motion's objection deadline, on December 7, 2008, counsel for the Debtors and newly retained counsel for Barclays contacted counsel for the Indenture Trustee seeking additional time to respond to the Motion. Counsel for the Indenture Trustee agreed to the adjournment only after Debtors' counsel represented that they would endeavor to work cooperatively to provide information addressing the Indenture Trustee's concerns, but needed additional time to do so.

3.      In fact, however, neither the Debtors nor Barclays made any attempt to provide any information through the informal, cooperative process they purported to want. Instead, on January 7, 2009, counsel for the Debtors and Barclays contacted counsel for the Indenture Trustee, again seeking an adjournment. Counsel for the Indenture Trustee stated that the Indenture Trustee was willing to negotiate the scope of the discovery requests and timing of response, and invited a proposal in this regard.

---

[1] Where not defined, capitalized terms shall have same meanings as defined in the Motion.

4.      Instead, on January 9, 2009, Debtors and Barclays, along with the SIPA Trustee, James W. Giddens, filed objections to the Motion. On January 10, 2009, the Official Committee of Unsecured Creditors ("the Committee," and together with the SIPA Trustee, Debtors, and Barclays, the "Objectors") also entered a limited objection to the Motion.

5.      Debtors and Barclays now contend that Indenture Trustee is not entitled to *any* discovery sought in the Motion. The SIPA Trustee objects to the Motion mainly on the grounds of it being unduly burdensome for the SIPA Trustee to comply with the request, while also suggesting that the Indenture Trustee obtain responses from the Debtors or Barclays whom it views as better equipped to respond. The Committee objects to the Motion on the limited grounds that the Indenture Trustee should supposedly be satisfied to rely upon the Committee to investigate and pursue any issues relating to the Sale.

## ARGUMENT

### Requested Examinees Must Submit to Broad Discovery of Information under Rule 2004

6.      "[T]he scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted." *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985). Even an authority cited by the SIPA Trustee and Barclays acknowledges a party's right to use the broader powers of Rule 2004 to conduct a "fishing expedition." *Id*. Rule 2004's "obvious purposes are the discovery of assets of the estate and the exposure of fraudulent conduct." *In re Symington*, 209 B.R. 678, 684 (Bankr. D. Md. 1997) (citing *In re Foerst*, 93 F. 190 (Bankr. S.D.N.Y. 1899)). The Motion readily surmounts this low hurdle.

7.      Debtors and Barclays are exactly wrong, therefore, in contending that "there is no basis for" the Motion when the purpose of Rule 2004 is to permit a requesting party to determine the existence of a potential, uncertain, or even unidentified claim. (Debtors' Objection ¶ 9; Barclays Objection ¶¶ 17-18.) *See In re Vantage Petroleum Corp.*, 34 B.R. 650 (Bankr.

-3-

E.D.N.Y. 1983) (noting that a valid Rule 2004 motion may necessarily seek information that the requesting party cannot yet prove is relevant to its potential claims). Courts have acknowledged that Rule 2004 frees parties in interest from an otherwise impossible bind of having to "demonstrate the diversion of assets in order to investigate whether a diversion in fact took place." *Id*. at 650.

8. The only relevant question to this Motion is whether the information sought relates to the "acts, conduct, or property or to the liabilities and financial condition [of LBCS], *or to any matter* which may affect the administration of [LBCS's] estate, or to [LBCS's] right to a discharge." Fed. R. Bankr. 2004(b) (emphasis added). Plainly, the information requested satisfies this test.

9. None of the Objectors have contested the Rule 2004 requests on the basis that they are overly broad, or even that they need more time to respond. Instead, the Debtors and Barclays essentially assert that they have (i) reviewed the Indenture Trustee's Rule 2004 requests, (ii) evaluated, at least in part, some of the requested information in their possession, and (iii) concluded that the information sought, if provided, will not support actionable claims against such a party. These objections suggest a fundamental misapprehension of the purpose and scope of Rule 2004 examinations. It is not for the potential examinees to determine whether the information they possess will support a valid claim. Rather, Rule 2004 permits the requesting party to obtain information in order to determine what claims, if any, may exist against debtors and third parties.

10. Paradoxically, both Debtors and Barclays refuse to supply any information in response to Indenture Trustee's Motion, yet support their refusals with conclusory statements that address the merits of what they anticipate will be the Indenture Trustee's potential claims.

(*See e.g.* Debtors' Objection ¶ 8 (stating that "LBHI guaranteed certain LBCS commodity contracts" as requested in Indenture Trustee's Request No. 13 and alleging various reasons for LBCS's demise as a going concern and exclusion from the Purchase Agreement as requested in Indenture Trustee's Request No. 2); *Id.* ¶ 10 (referring to purported "commodity assets" owned by LBI as "separate" from those of LBCS as requested in Indenture Trustee's Request Nos. 13-14); Barclays Objection ¶¶ 6-7 (citing to the Purchase Agreement to support broad-ranging assertions that "Barclays did not acquire the assets of any subsidiary of LBHI or LBI other than those expressly designated as 'Purchased Assets'" as requested in Indenture Trustee's Request Nos. 7, 10, 12-14); *Id.* ¶¶ 14-15 (asserting that Barclays "did acquire the LBI commodities business" which was intended to "resume at Barclays" without defining what this "commodities business" consists of as requested in Indenture Trustee's Requests Nos. 10, 12-14); *Id.* ¶ 16 (confirming that "[a] certain number of former LBI and LBHI employees who previously did work for LBCS are now employed by Barclays" without identifying these employees as requested in Indenture Trustee's Requests Nos. 4-5).)

11.     Much as Debtors and Barclays would like, they cannot use their own unsupported assertions of fact as a proxy for the actual production of that information as required by Rule 2004. Whether claims against any potential examinee based on such information will succeed is not before the Court at this time, and is a premature and improper basis for objecting to the Motion. *See Marx v. Chase Nat'l Bank*, 117 F.2d 800, 801 (2d Cir. 1941) ("The [objecting party] is in error as to the scope of the inspection permissible under [bankruptcy discovery law], which it seems to suppose that it can prevent by showing that on the facts the trustee had no case against it, on the theory that a court will provisionally pass upon issues which the very documents to be inspected may help to decide.").

12. Debtors' and Barclays' responses highlight the unique and important purpose of Rule 2004: a seemingly pristine transaction on paper may still give rise to a valid Rule 2004 request due to the complexity of a debtor's financial organization and/or circumstances surrounding its bankruptcy. *See Marx* at 802 (holding that "the trustee was entitled to examine *anyone* who had had dealings with [individual owner of debtor-corporation] or any of his companies, because it was impossible otherwise to unravel such a tangled corporate skein" (emphasis added)). Barclays' participation in the drafting of the Purchase Agreement and receipt of assets in such a significant and complex transaction subjects it to proper examination under Rule 2004, even though it is a third party who may experience some burden in responding to the request. *Id.* ("When people take part in building such a labyrinth [of intertwined corporate transactions], it may be burdensome to help in finding the path out, but it is a public duty which they cannot avoid, and they may only ask protection against inquiries made in bad faith."). Moreover, by its own admission, Barclays currently possesses the Debtors' former computer system containing much of the information responsive to the Indenture Trustee's request. (Barclays Objection ¶ 11 ("[T]he acquired information systems contain information relating to various Lehman entities—both debtors and non-debtors—that is comingled.").) It is well established that Rule 2004 "permits the examination of any party without the requirement of a pending adversary proceeding or contested matter" and that "[t]hird parties who have knowledge of the debtor's affairs, as well as a debtor itself, are subject to [bankruptcy] examination." *In re Symington* at 683, 690 (citation omitted).

**There is Ample Evidence to Support Indenture Trustee's Motion**

13. In balancing the potential benefits to the Indenture Trustee of permitting its Rule 2004 request with the potential burdens to examinees, the Indenture Trustee must only prove "more than a mere possibility exists" that it will "gain information concerning the debtor's

financial affairs." *In re Vantage Petroleum* at 652. There is substantial evidence to believe that the entire commodities business of LBHI/LBI was transacted through LBCS. Lehman Brothers Website Attached as Ex. A. Recent filings by LBHI with the SEC support this assertion and make no mention of other subsidiaries involved in the commodities business, nor do they identify specific "commodity assets" that LBI may have owned separate and apart from LBCS. *See* Excerpts from LBHI Form 10-Q at 75, 92 (May 31, 2008) and LBHI 10-K at 6, 11, 67 (Jan. 29, 2008) Attached as Exs. B and C; (*cf.* Debtors' Objection ¶ 10). In fact, LBCS appears to be the only subsidiary of LBHI "authorized by the Federal Energy Regulatory Commission ("FERC") to sell wholesale physical power at market based rates." LBHI Form 10-K at 11.

14. Even Barclays and Debtors appear to be in conflict about what was transferred in the Purchase Agreement. Debtors claim it was LBI's distinct "commodity assets," (Debtors' Objections ¶ 10) while Barclays assures the court it was, in fact, the "LBI commodity business." (Barclays Objection ¶ 14.) Debtors also, for the first time, now assert that LBCS was excluded from the Sale because of its inability to transact new business after LBHI's chapter 11 filing. (Debtors' Objection ¶ 8.) This stands in stark contrast to the representation Debtors' counsel made to the Court prior to the Sale that the sale to Barclays would "not affect [LBCS's] ability to operate as an entity." (Sale Hearing Tr. 226:3-19.) If Debtors' current factual assertions are correct, their prior representation was, at best, highly misleading and creates more than a "mere possibility" that the Indenture Trustee will gain information related to LBCS's financial affairs, including whether LBI ever had any stand-alone commodities business apart from LBCS and its subsidiaries.

15. The Indenture Trustee's requests are narrowly tailored to discover only information relevant to the assets and business of LBCS. The requests appropriately seek

information regarding LBCS's employees, LBCS's corporate documents that may now be in Barclays possession, and the trades, previously managed by LBCS, whose location is still undetermined. The fact that Barclays now admits to employing the same LBCS employees and admits to continuing "LBI's commodity business," whose coexistence with LBCS's business is suspect (Barclays Objection ¶¶ 14-16), are sufficient to justify the Indenture Trustee's request for 2004 discovery. *See In re Vantage Petroleum* at 650-652.

16.  Debtors and Barclays' cannot satisfy the weighty burden required to oppose Rule 2004 discovery merely by asserting that the Indenture Trustee has not yet established a claim for relief. Nor have they provided specific evidence of the burden that they assert complying with the Indenture Trustee's limited request will create. *See id.* at 650. If anything, Debtors' and Barclays conclusory objections demonstrate that they are capable of at least a cursory review of the information in their possession to identify some documents relevant to the Indenture Trustee's requests. Production of this information will aid the court and the Indenture Trustee in assessing whether the Indenture Trustee's potential claims are valid.

**The Indenture Trustee's Motion Should be Granted Even if an Examiner is Appointed**

17.  Contrary to the assertions of the Committee, Debtors, Barclays, and the SIPA Trustee, the decision of the court to appoint an examiner has little bearing on the granting of Indenture Trustee's Motion. "The fact that an investigation by a creditors' committee, debtor, examiner, or trustee is ongoing regarding the subject matter of a proposed Rule 2004 examination does not preclude the use of Rule 2004 by a party in interest." *In re Enron Corp.*, 281 B.R. 836, 843 n.7 (Bankr. S.D.N.Y. 2002) (denying Rule 2004 request on other grounds). Rule 2004 discovery is a tool for use by individual parties that places no limitations on its use. Fed. R. Bankr. P. 2004. Neither the Debtors nor Barclays cite to a single case in which the

appointment of an examiner in and of itself has been deemed appropriate as a substitute for discovery relief sought by creditors under a valid Rule 2004 motion.

18.     As Barclays and Debtors state, The Walt Disney Company has moved for the appointment of an examiner with respect to Lehman Brothers Commercial Corporation (Docket. No. 1320), and the New York State Comptroller has moved for the appointment of a trustee, with respect to LBHI (Docket. No. 1376).  No party has moved for the appointment of a trustee or examiner with respect to LBCS or the transfers of assets that occurred at that entity.  The Debtors' proposal to wedge the Indenture Trustee's information request into other parties' Section 1104 motions for separate debtor entities not only fails to meet the procedural requirements of Section 1104 (that an examiner for a debtor only be appointed after motion by a party in interest), but also fails in all respects to meet the Indenture Trustee's needs.  There is no specificity with respect to LBCS or the Indenture Trustee's information requests in the Debtors' examiner proposal, only a vague suggestion that the examiner will review the facts and circumstances surrounding "whether any of the assets of LBHI's subsidiaries were transferred to Barclays as part of the Sale and APA."  (Debtors' Objection ¶ 12.)  In the event that the Debtors seek the appointment of an examiner for LBCS, they should be required to file a motion, allowing the Indenture Trustee and other parties sufficient time to review and respond. Any examiner motion for LBCS should specifically set forth the Debtors' proposal for, among other things, the proposed scope of examination, how other parties (including the Indenture Trustee) may seek input into the examination, a timetable for the proposed examination and examiner's report, and any proposed allocation (or limitation) of resources for the examiner.

19.     Finally, the Committee's limited objection contends that the Indenture Trustee should be compelled to rely upon the Committee's statutory duty to "investigate the acts,

conduct, liabilities, and financial condition of debtor," in lieu of conducting its own discovery under Rule 2004. (Committee's Objection ¶ 7.) The fact that the Committee will, hopefully, be investigating and pursuing claims that might increase the value of the Debtors' estates as a whole does not mean that the Committee will be focused on maximizing value for LBCS creditors or investigating claims that might impact how assets are allocated among the Debtors. In fact, based on information and belief, the Committee was not aware of the potential claims by LBCS's creditors against Barclays or the Debtors until these issues were raised in the Motion, and has made no efforts, to date, to work with the Indenture Trustee to review and investigate these claims.

WHEREFORE, the Indenture Trustee respectfully requests that the Court: (1) grant certain discovery requests as identified on Schedules A and B to Exhibit 2 of its Motion; (2) order that a discovery and briefing schedule be set with respect to these issues; and (3) grant such other or further relief as is just and proper.

Dated: January 13, 2009
       New York, New York

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: /s/ Amy Caton
    Amy Caton
    Gregory A. Horowitz
    1177 Avenue of the Americas
    New York, New York 10036
    (212) 715-9100

Attorneys for The Bank of New York Mellon Trust Company, N.A., as Indenture Trustee