K&L GATES LLP  
Robert N. Michaelson, Esq.  
Kristin S. Elliott, Esq.  
599 Lexington Avenue  
New York, NY 10022  
(212) 536-3900  

Hearing Date: February 11, 2009 at 10:00 a.m.  
Objection Deadline: February 6, 2009 at 5:00 p.m.  

Attorneys for the Tobacco Settlement Authority

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
------------------------------------------------------------x  
:  
In re                                                                      :   Chapter 11  
:  
LEHMAN BROTHERS HOLDINGS INC., *et al.*,      :   Case No. 08-13555 (JMP)  
:  
:   (Jointly Administered)  
Debtors.                                 :  
:  
------------------------------------------------------------x  

**NOTICE OF HEARING ON MOTION OF THE TOBACCO SETTLEMENT AUTHORITY FOR AN ORDER (A) COMPELLING LEHMAN BROTHERS SPECIAL FINANCING INC. TO ASSUME OR REJECT AN EXECUTORY CONTRACT PURSUANT TO 11 U.S.C. § 365(d)(2) OR, ALTERNATIVELY, (B) MODIFYING THE AUTOMATIC STAY TO ALLOW THE TOBACCO SETTLEMENT AUTHORITY TO TERMINATE THE AGREEMENT**

**PLEASE TAKE NOTICE** that, upon the annexed Motion of the Washington State Tobacco Settlement Authority ("TSA") for an Order (a) Compelling Lehman Brothers Special Financing Inc. to Assume or Reject an Executory Contract Pursuant to 11 U.S.C. § 365(d)(2) or, Alternatively, (b) Modifying the Automatic Stay to Allow the Tobacco Settlement Authority to Terminate the Agreement (the "Motion"), the undersigned will move before the Honorable James M. Peck, United States Bankruptcy Judge, on the 11th day of February 2009 in Courtroom 601 at the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, at 10:00 a.m., or as soon thereafter as counsel may be heard, for the entry of an Order Compelling Lehman Brothers Special Financing Inc. to Assume or Reject Executory Contract Pursuant to 11 U.S.C. § 365(d)(2).

**PLEASE TAKE FURTHER NOTICE** that objections to the Motion, if any, must be made in writing and shall set forth the basis of the objection in the form prescribed by the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure and shall be served upon K&L Gates LLP, counsel for the TSA, 599 Lexington Avenue, New York, New York 10022, Attn: Robert N. Michaelson, Esq., and filed with the Clerk of the Court, with a courtesy copy delivered to the chambers of the Honorable James M. Peck, so as to be received no later than February 6, 2009 at 5:00 p.m.

Dated:   New York, New York
         January 15, 2009

Respectfully submitted,

K&L GATES LLP

By:    /s/ Robert N. Michaelson
       Robert N. Michaelson
       A Member of the Firm
599 Lexington Avenue
New York, NY  10022
(212) 536-3900

Attorneys for the Tobacco Settlement Authority

K&L GATES LLP  
Robert N. Michaelson, Esq.  
Kristin S. Elliott, Esq.  
599 Lexington Avenue  
New York, NY 10022  
(212) 536-3900  

Hearing Date: February 11, 2009 at 10:00 a.m.  
Objection Deadline: February 6, 2009 at 5:00 p.m.  

Attorneys for the Tobacco Settlement Authority

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
-----------------------------------------------------------------x  

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) |
| | (Jointly Administered) |
| Debtors. | |

-----------------------------------------------------------------x  

**MOTION OF THE TOBACCO SETTLEMENT AUTHORITY FOR AN ORDER (A) COMPELLING LEHMAN BROTHERS SPECIAL FINANCING INC. TO ASSUME OR REJECT AN EXECUTORY CONTRACT PURSUANT TO 11 U.S.C. § 365(d)(2) OR, ALTERNATIVELY, (B) MODIFYING THE AUTOMATIC STAY TO ALLOW THE TOBACCO SETTLEMENT AUTHORITY TO TERMINATE THE AGREEMENT**

The Washington State Tobacco Settlement Authority ("TSA") hereby moves for an Order (a) compelling Lehman Brothers Special Financing Inc. ("LBSF"), a debtor-in-possession in the above-captioned, jointly administered cases, to assume or reject an executory contract pursuant to 11 U.S.C. § 352(d)(2) or, alternatively, (b) modifying the automatic stay to allow TSA to terminate the agreement (the "Motion"), and in support thereof respectfully states as follows:

### INTRODUCTION

1.     TSA, LBSF and U.S. Bank, N.A., as trustee (the "Trustee"), are parties to a Reserve Fund Agreement dated as of November 5, 2002 (the "RFA"), which is

NY-657812 v4

the investment vehicle through which TSA invests certain reserve funds (the "Reserve Fund") that serve as a source of backup payment for debt service owed on tobacco settlement bonds TSA issued in 2002. The RFA is an executory contract that, among other things, requires LBSF to deliver qualifying securities to TSA on a semi-annual basis, in exchange for payment of a purchase price that is constructed to ensure that TSA receives a guaranteed rate of return on its investments.

2.  LBSF defaulted under the RFA prepetition by failing to notify TSA that Lehman Brothers Holdings Inc.'s ("LBHI") long term senior unsecured debt ratings had been downgraded on or about September 15, 2008.[1] LBSF also defaulted under the RFA by (a) filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 3, 2008, and (b) failing to deliver qualifying securities to TSA on December 1, 2008, as required under the RFA. As a result of LBSF's failure to timely deliver qualifying securities, TSA was required to invest the Reserve Fund in replacement securities, at a rate of return that is lower than the rate guaranteed under the RFA.

3.  LBSF no longer conducts the type of business contemplated under the RFA, and, therefore, it cannot cure its prior failure to deliver securities and other defaults, or perform its ongoing obligations to TSA. Additionally, the market for agreements like the RFA has changed dramatically since 2002, and it is highly unlikely that LBSF could find a third party willing to assume LBSF's rights and obligations under the RFA. Since LBSF cannot perform the RFA or assign it to a third party for value, LBSF has no real choice but to reject the agreement.

---

[1] LBHI guaranteed LBSF's obligations under the TSA, and the RFA provides various remedies TSA can pursue upon the occurrence of such a downgrade.

4.       Under the RFA, the rights and obligations of each party upon termination are highly sensitive to interest rate fluctuations. As a result, at any given time, LBSF may be "in" or "out of the money," depending on whether interest rates exceed or fall below the rate guaranteed in the RFA. Under present market conditions, LBSF is "out of the money." If, however, the RFA is not terminated or rejected immediately, LBSF could leave TSA 'in limbo,' waiting until interest rates improve to time its inevitable rejection at a point when it is "in the money."[2]

5.       TSA seeks an order compelling LBSF to assume or reject the RFA immediately to avoid this inequitable result. Alternatively, TSA seeks relief from the automatic stay to terminate the RFA immediately. Relief from the stay is required because LBSF lacks equity in the RFA, the RFA has no value to the estate, and it is not necessary for LBSF's reorganization.

## JURISDICTION AND VENUE

6.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (G) and (O).

7.       Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

8.       On September 15, 2008 (the "Filing Date"), and periodically thereafter, LBHI and certain of its subsidiaries (collectively, the "Debtors") filed

---

[2] Since it provides for the purchase and sale of securities, the RFA is a "securities contract" within the meaning of 11 U.S.C. § 741(7). As a securities contract, the damages flowing from its rejection or termination will be calculated as of the date of such rejection or termination pursuant to 11 U.S.C. § 562(a).

voluntary petitions for relief under chapter 11 of the Bankruptcy Code. LBSF filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 3, 2008.

9. Since the Filing Date, the Debtors have operated their businesses and managed their property as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

**The Bonds**

10. TSA is an independent public instrumentality of the State of Washington. TSA was established in 2002 to issue a series of Tobacco Settlement Asset-Backed Bonds, Series 2002 (the "Bonds"). The Bonds were issued pursuant to the terms of an Indenture dated as of October 1, 2002 (the "Indenture") by and between TSA, as issuer, and the Trustee.[3]

11. Among other things, the Indenture required the Trustee to establish and maintain the Reserve Fund to serve as a source of backup payment for TSA's debt service obligations on the Bonds. The Reserve Fund was established from the proceeds of the issuance of the Bonds in an amount equal to $45,534,106.25, the expected maximum annual debt service on the Bonds on their date of issuance. See Cook Decl. at ¶ 3.

**The RFA and LBSF's Defaults Thereunder**

12. The RFA is the investment vehicle by which TSA invests the Reserve Fund through the periodic purchase of qualifying securities from LBSF.[4] See id. at ¶ 5; Declaration of Peter Shapiro (the "Shapiro Decl."), filed simultaneously herewith, at ¶ 5. Specifically, the RFA requires LBSF to deliver "Qualified Securities" to the

---

[3] A copy of the Indenture is attached as Exhibit A to the Declaration of Robert D. Cook (the "Cook Decl."), filed simultaneously herewith.

[4] A copy of the RFA is attached as Exhibit B to the Cook Decl.

Trustee on a semi-annual basis, in exchange for which TSA is obligated to pay a purchase price that ensures a guaranteed rate of return on its investments of 4.484%. See Cook Decl. at ¶ 5; Shapiro Decl. at ¶ 5.

13. The RFA provides that a "Lehman Event of Default" shall occur if, *inter alia*, (a) LBSF becomes "Insolvent," which is defined to include the filing of a voluntary petition for relief under the Bankruptcy Code, see Cook Decl., Ex. B at § 7.3(d), or (b) fails to deliver qualifying securities to the Trustee on a designated delivery date, and such failure is not cured within five (5) Business Days of written notice to LBSF thereof, see id. at § 7.3(a). The RFA also requires LBSF to notify TSA or the Trustee in writing if LBHI's long-term credit rating is downgraded. Id. at § 2.7(a). If any of these events occur and are not remedied, the RFA authorizes TSA to terminate the agreement. Id. at §§ 2.7(c) and 7.6.

14. On or about September 15, 2008, LBHI's long-term credit rating was downgraded, see Declaration of Kristin S. Elliott, filed simultaneously herewith, at Ex. A, and LBSF failed to notify TSA or the Trustee of this fact in writing. See Cook Decl. at ¶ 6. Additionally, LBSF failed to deliver Qualified Securities to the Trustee on December 1, 2008, which it was required to do under the RFA. Id. at ¶ 7.

15. On December 18, 2008, TSA sent LBSF a written notice of LBSF's failure to timely deliver securities on December 1, 2008 and further notified LBSF that a Lehman Event of Default had occurred on October 3, 2008, when LBSF filed its voluntary bankruptcy petition.[5] Id. at ¶ 8; Ex. C. LBSF did not cure its failure to deliver securities within five (5) business days of TSA's notice.[6] Id. at ¶ 9.

---

[5] TSA issued a notice of default with respect to LBSF's bankruptcy filing because it maintains that, as the customer of a financial institution that is its custodian (i.e. the Trustee), it is a "financial institution" who

- 5 -

16. LBSF no longer conducts the type of business contemplated by the RFA and, therefore, it is unable to perform its ongoing obligations to TSA and the Trustee thereunder.

**TSA's Damages**

17. Upon LBSF's failure to deliver qualifying securities, on December 1, 2008, TSA instructed the Trustee to invest the Reserve Fund in replacement securities pursuant to the provisions of the RFA. See id. at ¶ 10. The replacement securities provide a lower rate of return than the 4.484% guaranteed under the RFA. Id. at ¶ 11. The RFA provides that, if the Trustee is required to invest in replacement securities, LBSF is required to pay TSA for any lost interest. Id., Ex. A at §§ 7.5(a) and 7.7(b).

18. The RFA also contains provisions for calculating amounts due from one party to another if or when the agreement is terminated. The rights and obligations at termination are highly dependent on then prevailing market interest rates. See Shapiro Decl. at ¶ 6. Accordingly, at any given point in time, LBSF may either be "in" or "out of the money" under the RFA. See id. Presently, LBSF is "out of the money," and termination will result in additional losses to TSA. See id. at ¶ 7.

**LBSF Cannot Assign the RFA to a Third Party**

19. The market for tobacco settlement backed bonds and related agreements such as the RFA has changed since 2002. Rates have dropped sharply, and the creditworthiness of tobacco settlement backed bonds has changed adversely. As a

---

falls within the safe harbor provisions of 11 U.S.C. § 555. While TSA maintains that Section 555 authorizes it to terminate the RFA based on LBSF's bankruptcy filing without first seeking relief from the automatic stay, TSA files the within motion for stay relief out of an abundance of caution and, as discussed infra, because other, independent cause exists to lift the stay and terminate the RFA.

[6] A copy of TSA's December 18, 2008 notice is attached as Exhibit C to the Cook Decl.

result of these changes in the market, it is highly unlikely that any market participant would be willing to assume LBSF's obligations under the RFA. See id. at ¶ 8.

## RELIEF REQUESTED

20. By this Motion, TSA seeks entry of an order compelling LBSF to assume or reject the RFA immediately pursuant to 11 U.S.C. § 365(d)(2). In the alternative, TSA seeks an order modifying the automatic stay pursuant to 11 U.S.C. § 362(d) to authorize TSA to terminate the RFA for cause and because LBSF lacks equity in the agreement, which is not necessary for LBSF's reorganization.

## BASIS FOR THE RELIEF REQUESTED

### I. The Court Should Compel LBSF to Assume or Reject the RFA Immediately.

21. Section 365(d)(2) of the Bankruptcy Codes governs the time within which a debtor-in-possession must assume or reject an executory contract and states:

> [i]n a case under chapter 9, 11, 12 or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2).

22. A counterparty's ability to shorten a debtor's time to assume or reject a contract "prevent[s] parties in contractual or lease relationships with [a] debtor from being left in doubt concerning their status vis-à-vis the estate." House Report No. 95-595, 95th Cong., 1st Sess. 348-9 (1977). The ability to shorten a debtor's time to assume or reject a contract also protects a counterparty who otherwise would be "subjected to the fluctuations of market prices for the goods at issue in their contracts[.]"

<u>Taunton Municipal Lighting Plant v. Enron Corp. (In re Enron Corp.)</u>, 354 B.R. 652, 660 (S.D.N.Y. 2006).

23. Courts typically evaluate the following non-exclusive factors (to the extent relevant to the facts and circumstances presented) when determining whether to shorten a debtor's time to assume or reject an executory contract:

(a) the nature of the interests at stake;

(b) the balance of hurt to the litigants;

(c) the 'good to be achieved';

(d) the safeguards afforded to the litigants;

(e) whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary[;]

(f) the debtor's failure or ability to satisfy post-petition obligations;

(g) the damage that the non-debtor will suffer beyond compensation available under the Bankruptcy Code;

(h) the importance of the contract to the debtor's business and reorganization;

(i) whether the debtor has sufficient time to appraise its financial situation and the potential value of the assets in formulating a plan;

(j) whether there is a need for judicial determination as to whether an executory contract exists;

(k) whether exclusivity has been terminated; and

(l) above all, the purpose of Chapter 11, to permit successful rehabilitation of debtors.

<u>In re Adelphia Communications Corp.</u>, 291 B.R. 283, 293 (Bankr. S.D.N.Y. 2003) (internal quotations and citations omitted).

24. Application of the relevant foregoing factors clearly demonstrates that LBSF should be compelled to assume or reject the RFA immediately. First, as

detailed above, LBSF is incapable of curing its defaults or performing its ongoing obligations under the RFA, making the contract irrelevant to LBSF's business and reorganization, and leaving LBSF with no legitimate stake in the agreement. See factors (a), (f), (h) and (l), supra.

25. Second, due to market conditions, LBSF will not be able to find a suitable assignee for the RFA, which leads to the inescapable conclusion that LBSF must ultimately reject the agreement. The only reason for LBSF to delay that decision is to play the market at TSA's expense and risk, hoping that interest rates move in its favor so it may time its rejection at a point when it is "in the money." As one court has noted, the ability to shorten a debtor's time to assume or reject an executory contract is the safeguard that exists to prevent a counterparty from the harm associated with the risk of market fluctuations. See Enron, 354 B.R. at 660.

26. Finally, the Court is not required to determine whether the RFA is an executory contract and, given its inevitable need to reject the agreement, LBSF does not need additional time to evaluate whether it is valuable to the estate or necessary for a reorganization. See factors (i) and (j), supra.

27. In light of these considerations, the Court should compel LBSF to reject the RFA immediately to avoid placing TSA in the untenable and unwarranted position of underwriting LBSF's ability to 'play the waiting game' to see whether interest rates move in LBSF's favor.

II. **The Automatic Stay Should be Lifted to Allow TSA to Terminate the RFA.**

A. **The Court must lift the stay pursuant to 11 U.S.C. § 362(d)(2).**

28. 11 U.S.C. § 362(d)(2) provides:

> [O]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay --
>
> . . .
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

29. Pursuant to 11 U.S.C. § 362(g), TSA has the burden of proof on the issue of LBSF's equity in the RFA, and LBSF has the burden of proof on all other issues. 11 U.S.C. § 362(d)(2).

30. "[T]he language of section 362(d)(2) is mandatory, [and] when both factors necessary for relief . . . are met, the court shall grant relief." In re Indian Palms Assocs., 61 F.3d 197, 208 (3d Cir. 1995); accord Matter of East-West Assocs., 106 B.R. 767, 774 (S.D.N.Y. 1989).

31. LBSF clearly has no equity in the RFA. As detailed above, LBSF is "out of the money" under the agreement, and it has no ability to cure its defaults or perform its ongoing obligations thereunder. Moreover, due to market conditions, LBSF is unable to assume and assign the RFA to a third party, which reinforces the fact that the agreement has no value to the estate.

32. Although TSA is not required to prove that the RFA is not necessary to an effective reorganization, see 11 U.S.C. § 362(g), LBSF no longer conducts

the business contemplated by the agreement, and it does not have the ability to assign the agreement to a third party for value. Accordingly, the RFA is wholly unnecessary to LBSF's reorganization.

33. Because LBSF has no equity in the RFA, and the RFA is not necessary to LBSF's reorganization, section 362(d)(2) requires that the Court modify the automatic stay and allow TSA to terminate the RFA.

**B.    Cause exists to modify the automatic stay.**

34. Pursuant to 11 U.S.C. § 362(d)(1), the Court may also grant relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define "cause" to modify the automatic stay, which is considered to be "a broad and flexible concept." In re M.J. & K. Co., 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993). Accordingly, the determination of whether sufficient cause exists to grant stay relief must be addressed on a case by case basis. Id. at 591; Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 142-43 (2d Cir. 1999).

35. The question of whether to lift the stay for cause is left to the Court's discretion. Sonnax. Indus., Inc. v. Tri Component Prods. Coin. (In re Sonnax Indus. Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990). Courts have broad discretion in crafting relief from the stay. In re Siciliano, 13 F.3d 748, 751 (3d Cir. 1994); Schwartz v. United States (In re Schwartz), 954 F.2d 569, 572 (9th Cir. 1992). The automatic stay should be modified "when equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems." Int'l Bus. Machs. v. Fernstrom Storage & Van Co., 938 F.2d 731, 735 (7th Cir. 1991). Factors to be considered in making a determination of cause include whether there is a likelihood of great prejudice

to the debtor or its estate and whether continuation of the stay creates a hardship to the nondebtor party that outweighs the hardship to the debtor. Id.

36. Ample cause exists to lift the stay and allow TSA to terminate the RFA. Given its inability to perform the agreement and the insolvency of LBHI, its guarantor, LBSF cannot provide any, let alone adequate, assurance that TSA's rights and interests will be protected if the stay is not lifted. Moreover, if the RFA is not terminated, TSA will continue to be in the untenable position of having lost its guaranteed rate of return (i.e. the benefit of its bargain under the RFA), while continuing the bear all of the risk associated with interest rate fluctuations.

37. Conversely, LBSF will not be prejudiced at all if the stay is lifted. LBSF cannot perform the RFA, nor can it assume and assign it to a third party for value. Since LBSF does not have a right to hold the RFA open indefinitely solely to play the market at TSA's expense, see, e.g., Enron, 354 B.R. at 660, LBSF will not suffer any hardship if the RFA is terminated. Accordingly, the Court should lift the automatic stay.

38. Given the ongoing market risk it faces, TSA also requests that any Order the Court may enter granting relief from the automatic stay be immediately effective and not subject to the stay of enforcement provisions of Bankruptcy Rule 4001(a)(3).

## NOTICE

39. Notice of the Motion has been provided to the Standard Parties and to all other persons and entities that have formally appeared and requested service in these cases pursuant to Banrkutpcy Rules and the Procedures defined in the Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007

Implementing Certain Notice and Case Management Procedrures entered herein on September 22, 2008. TSA respectfully submits that such notice is good and sufficient under the circumstances, and that no other or further notice is required.

### REQUEST FOR WAIVER OF THE MEMORANDUM OF LAW REQUIREMENT

40. The legal bases for the relief requested in the Motion are set forth herein and, accordingly, TSA respectfully requests that the Court waive the memorandum of law requirement imposed by Local Rule 9013-1(b).

### NO PRIOR REQUEST

17. TSA has not previously requested the relief requested herein from this or any other Court.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

WHEREFORE, TSA respectfully requests the Court enter an Order

(a) compelling LBSF to assume or reject the RFA immediately or, alternatively,

(b) modifying the automatic stay to the extent necessary to permit TSA to terminate the

RFA, (c) waiving the stay of enforcement provisions of Bankruptcy Rule 4001(a)(3),

and (c) granting to TSA such other and further relief as the Court deems just and proper.

Dated: New York, New York  
   January 15, 2009

Respectfully submitted,

K&L GATES LLP

By: /s/ Robert N. Michaelson  
  Robert N. Michaelson  
  A Member of the Firm  
599 Lexington Avenue  
New York, NY 10022  
(212) 536-3900 (telephone)  
(212) 536-3901 (facsimile)

Attorneys for the Tobacco Settlement Authority