(d)    In respect of Defeasance Collateral held for Defeased Bonds, this Section 405 shall be effective only to the extent it is consistent with other applicable provisions of this Indenture or any separate escrow agreement.

(e)    If the Issuer shall have failed to give investment directions to the Indenture Trustee, then the Indenture Trustee shall invest the funds in the Accounts in investments specified in subsection (viii) of the definition of Eligible Investments.

(f)    All income or other gain from investments in an Account held by the Indenture Trustee shall be deposited in such Account immediately on receipt, and any loss resulting from such investments shall be charged to such Account.

SECTION 406.  Unclaimed Money. In the event any Bond shall not be presented for payment when the principal thereof becomes due, either at maturity, or at the date fixed for redemption thereof, or otherwise, if funds sufficient to pay the principal and interest accrued thereon to such date shall have been made available to the Indenture Trustee for the benefit of the owner thereof, the Indenture Trustee shall hold such principal and interest accrued thereon to such date without liability to the Bondholder for further interest thereon, for the benefit of the Holder of such Bond, for a period of five years from the date such Bond shall have become due, either at maturity or upon earlier redemption, and thereafter the Indenture Trustee shall remit said funds pursuant to the Uniform Unclaimed Property Act, RCW 63.29, as amended, or its successor. In the event the Uniform Unclaimed Property Act, as amended, or its successor, should require by law other action to be taken by the Indenture Trustee, then the Indenture Trustee shall comply with such law and this Section 406 shall be deemed amended to require such compliance. After the payment pursuant to the Uniform Unclaimed Property Act as herein provided, the Indenture Trustee's liability for payment to the Holder of such Bond shall forthwith cease, terminate and be completely discharged and thereafter the Bondholder shall be restricted exclusively to his or her rights of recovery provided under the Uniform Unclaimed Property Act.

SECTION 407.  Costs of Issuance Account. The Indenture Trustee shall disburse funds from the Costs of Issuance Account as directed by the Issuer. At such time as the Issuer notifies the Indenture Trustee that the Costs of Issuance have been fully paid, or at such time as no funds remain in the Costs of Issuance Account, the Indenture Trustee may close and terminate the Costs of Issuance Account. The funds remaining therein, if any, shall then be transferred to the Collections Account and applied as Collections in accordance with Section 402(a) of this Indenture. The Indenture Trustee is conclusively entitled to rely on all directions given by the Issuer with respect to the Costs of Issuance Account.

ARTICLE V

COVENANTS

SECTION 501.  Contract; Obligations to Bondholders.

(a)    In consideration of the purchase and acceptance by those who hold any or all of the Bonds from time to time, the provisions of this Indenture shall be a part of the contract of the Issuer with the Bondholders.  The pledge and grant of a security interest made in this Indenture and the covenants herein set forth to be performed by the Issuer shall be for the equal benefit, protection and security of the Bondholders.  All of the Bonds, regardless of the time or times of their Maturity Date, shall be of equal rank without preference, priority or distinction of any thereof over any other except as expressly provided pursuant hereto.

(b)    The Issuer covenants to pay when due all sums payable on the Bonds, but only from the Collections and other money designated herein, subject only to this Indenture.  The obligation of the Issuer to pay principal, interest and premium, if any, to the Bondholders from the Collections and other money designated herein, subject only to this Indenture, shall be absolute and unconditional, shall be binding and enforceable in all circumstances whatsoever, and shall not be subject to setoff, recoupment or counterclaim.

(c)    The Issuer represents that it is duly authorized pursuant to law to issue, sell and deliver the Bonds, to enter into this Indenture and to pledge and grant a security interest in the Collections and other Collateral as provided in Section 201 hereof.  The Collections and other Collateral are and will be free and clear of any pledge, lien, security interest, charge or encumbrance thereon or with respect thereto prior to, or of equal rank with, the pledge and security interest created hereby, and all action on the part of the Issuer to that end has been duly and validly taken.  The Bonds and the provisions hereof are and will be the valid and binding obligations of the Issuer, enforceable in accordance with their terms, subject to bankruptcy, insolvency, reorganization, arrangement, fraudulent conveyance, moratorium and other laws relating to or affecting creditors' rights, to the application of equitable principles and to the exercise of judicial discretion in appropriate cases.

(d)    The State has covenanted and agreed with the Issuer in the Sales Agreement, and the Issuer is authorized to include such covenant and agreement in this Indenture for the benefit of the Bondholders, any party who has entered into a Swap Contract with the Issuer or other parties receiving the express benefit of the security for the Bonds ("Beneficiaries"), that the State will (i) irrevocably direct the Escrow Agent and Independent Auditor (as such terms are defined in the MSA) to transfer all Pledged TSRs, pursuant to paragraph 5 of section 7 of the Act, directly to the Indenture Trustee, (ii) enforce, at the expense of the State, the Issuer's rights to receive the Pledged TSRs to the full extent permitted by the MSA (it being understood that the State may satisfy its obligation hereunder by taking such enforcement action through individual or joint or cooperative efforts with other states and their Attorneys General in a manner that it determines as most appropriate), (iii) not agree to any amendment of the MSA in any manner that would materially and adversely affect the ability of the Issuer to receive the Pledged TSRs, (iv) not limit or alter the rights of the Issuer to fulfill the terms of its agreements with Beneficiaries until the Bonds, together with the interest thereon and

-29-

all costs and expenses in connection with any action or proceeding by or on behalf of the Bondholders, are fully paid and discharged, (v) enforce the Qualifying Statute, and (vi) not amend, supersede or repeal the Qualifying Statute in any way that would materially and adversely affect the ability of the Issuer to receive the Pledged TSRs.

(e)    The State has covenanted and agreed with the Issuer in the Sales Agreement, and the Issuer is authorized to include such covenant and agreement in the Indenture for the benefit of the Bondholders, any party who has entered into a Swap Contract with the Issuer or other parties receiving the express benefit of the security for the Bonds ("Beneficiaries"), that until the Bonds, together with interest thereon and all costs and expenses in connection with any action or proceeding by or on behalf of Bondholders, are fully paid and discharged pursuant to the Indenture (i) the State will promptly pay to the Indenture Trustee any Pledged TSRs received by the State, (ii) the State shall take all actions as may be required by law and the MSA fully to preserve, maintain, defend, protect and confirm the interest of the Issuer in the Pledged TSRs and in the proceeds thereof in all material respects, (iii) the State will not take any action that will materially and adversely affect the Issuer's legal right to receive the Pledged TSRs, and (iv) the State will not (x) release any Participating Manufacturer from any of its covenants or obligations to make payment under the MSA or (y) agree to the amendment, hypothecation, subordination, termination or discharge of, or impair the validity or effectiveness of, or waive timely performance or observance by Participating Manufacturers under, the MSA, in each case if the effect thereof would be to materially and adversely affect the Issuer's ability to receive the Pledged TSRs; provided, however, that if a Rating Confirmation is received relating to such proposed action then such proposed action will be deemed not to be material or adverse. The State shall deliver to the Issuer and to the Indenture Trustee written notice of any action described in clause (iii) and (iv) of the preceding sentence which it intends to take. The State shall deliver such written notice a reasonable period of time before taking any such action.

(f)    The State has provided through the MSA, the Consent Decree and the Sales Agreement for the (i) Issuer's ownership and receipt of the Pledged TSRs, (ii) the receipt or other application of the net proceeds of the Bonds and (iii) the resulting benefits to the people of the State. The Issuer acknowledges that the MSA, the Consent Decree and the Sales Agreement constitute important security provisions of the Bonds and waives any right to assert any claim to the contrary and agrees that it shall neither in any manner directly or indirectly assert, nor in any manner directly or indirectly support the assertion by the State or any other person of, any such claim to the contrary. By acknowledging that the MSA, the Consent Decree and the Sales Agreement constitute important security provisions of the Bonds, the Issuer also acknowledges that, in the event of any failure or refusal by the State to comply with its agreements included in the MSA, the Consent Decree and the Sales Agreement, the Holders of the Bonds may have suffered monetary damages, the extent of the remedy for which may be, to the fullest extent permitted by applicable federal and State law, determined, in addition to any other remedy available at law or in equity, in the course of any action taken pursuant hereto; and the Issuer hereby waives any right to assert any claim to the contrary and agrees that it shall neither in any manner directly or indirectly assert, nor in any manner directly or indirectly support the assertion by the State or any other person of, any claim to the effect that no such monetary damages have been suffered.

SECTION 502.  Operating Expenses.

(a)      (i)  The Issuer may deliver an Officer's Certificate to the Indenture
Trustee on or before April 15 of each year during which Bonds are Outstanding,
commencing with the Fiscal Year commencing July 1, 2003, (i) certifying the
amount of the Operating Cap for the upcoming Fiscal Year, and (ii) specifying the
amount of Operating Expenses estimated to be incurred or paid by the Issuer
during the upcoming Fiscal Year.  Such Officer's Certificate may also set forth
Operating Expenses that have already been incurred by the Issuer but that have
not yet been paid or repaid, provided that the Operating Cap shall nonetheless
continue to apply to all such amounts.

(ii)  In the event that the Issuer does not deliver an Officer's Certificate on
or prior to any April 15 as described above, the Issuer shall be deemed to have
delivered an Officer's Certificate on such April 15 certifying and specifying that,
for purposes of Section 402 hereof and this Section 502(a), both the amount of the
Operating Cap for the upcoming Fiscal Year and the amount of the Operating
Expenses estimated to be incurred or paid by the Issuer during the upcoming
Fiscal Year shall be equal to the Inflated Operating Cap Component in effect as of
such April 15 (as certified or as deemed certified by previous operation of this
Section 502(a)).

(b)      The Issuer covenants, for the benefit of the Bondholders, to pay its
Operating Expenses, but only to the extent that funds are available for such purpose as provided
in this Indenture.

SECTION 503.  Tax Covenants.  (a) The Issuer shall at all times do and perform
all acts and things permitted by law and this Indenture which are necessary or desirable in order
to assure that interest paid on the Tax-Exempt Bonds (or any of them) will be excluded from
gross income for federal income tax purposes and shall take no action that would result in such
interest not being excluded from gross income for federal income tax purposes.  Without limiting
the generality of the foregoing, the Issuer agrees that it will comply with the provisions of the
Issuer Tax Certificate which are incorporated by this reference herein.  This covenant shall
survive defeasance or redemption of the Bonds.

(b)      Pursuant to the Act, the State shall at all times do and perform all acts and
things permitted by law and necessary or desirable to assure that interest paid by the Issuer on
the Series 2002 Bonds shall be excludable from gross income for federal income tax purposes
pursuant to Section 103(a) of the Tax Code;

(c)      Pursuant to the Act, the State will not directly or indirectly use or permit
the use of any of the proceeds of the Series 2002 Bonds that would cause the Series 2002 Bonds
to be "private activity bonds" within the meaning of Section 141(a) of the Tax Code or would
cause interest on the Series 2002 Bonds to not be excludable from gross income for federal
income tax purposes pursuant to Section 103(a) of the Tax Code; and

(d)    Pursuant to the Act, the State agrees that no gross proceeds (as such term is defined in Section 1.148-1 of the Treasury Regulations promulgated under Section 148 of the Tax Code, as such Treasury Regulations and the Tax Code may be amended from time to time) of the Series 2002 Bonds shall at any time be used directly or indirectly to acquire securities or obligations the acquisition or holding of which would cause any Series 2002 Bond to be an "arbitrage bond" as defined in the Tax Code or any applicable Treasury Regulations promulgated thereunder.

SECTION 504.    Non-Petition Covenant. Prior to the date which is three hundred sixty-six days after the date on which the Issuer no longer has any Bonds outstanding, the Issuer shall not file a voluntary petition under Chapter 9 of the United States Bankruptcy Code or such corresponding law as may, from time to time, be in effect, and neither any public official nor any other organization, entity, or other person shall authorize the Issuer to be or become a debtor under the United States Bankruptcy Code or any corresponding law during such periods. Pursuant to the Act, the State agrees with the Bondholders that it shall not modify or delete these provisions prior to the date which is three hundred sixty-six days after the date on which the Issuer no longer has any Bonds outstanding.

SECTION 505.    Accounts and Reports.    The Issuer will (1) cause to be kept books of account in which complete and accurate entries will be made of its transactions relating to all funds and accounts under the Indenture, which books will at all reasonable times be subject to the inspection of the Indenture Trustee and the Holders or their representatives duly authorized in writing; and (2) annually, within 210 days after the close of each Fiscal Year, deliver to the Indenture Trustee and each Rating Agency, a copy of its financial statements for such Fiscal Year, as audited by an independent certified public accountant or accountants.

SECTION 506.    Continuing Disclosure Undertaking.    The Issuer covenants (any obligations of the Issuer to disseminate reports herein shall be undertaken by the Indenture Trustee on behalf of the Issuer and the Indenture Trustee shall in all respects cooperate with the Issuer in assisting the Issuer to fulfill its duties contained in this Section to disseminate reports) for the sole benefit of the Holders of the Series 2002 Bonds (and, to the extent specified in this Section 506, the beneficial owners) and subject (except to the extent otherwise expressly provided in this Section 506) to the remedial provisions of this Indenture, that:

(a)    The Issuer shall provide:

(1)    within 210 days after the end of each Fiscal Year, to each nationally recognized municipal securities information repository and to any State information depository, (a) its audited financial statements, prepared in accordance with generally accepted accounting principles in effect from time to time, (b) material historical quantitative data on the Issuer's revenues, expenditures, financial operations and indebtedness, generally of the types discussed in "SUMMARY OF BOND STRUCTURING ASSUMPTIONS AND AMORTIZATION" under the last column in the table captioned "Projection of Total Payments to be Received by the Authority" in the Issuer's offering circular dated October 25, 2002, and (c) the debt service coverage for the most recent Fiscal Year for the Outstanding Bonds, after giving credit for any Turbo Redemptions that have been paid; and

-32-

(2)    in a timely manner, to each nationally recognized municipal securities information repository or to the Municipal Securities Rulemaking Board, and to any State information depository, notice of a failure to comply with clause (i) of this Section 506(a) and, if material, notice of any of the following events with respect to the Outstanding Bonds:

(i)    principal, scheduled mandatory redemption and interest payment delinquencies;

(ii)    non-payment related Defaults;

(iii)    unscheduled draws on debt service reserves reflecting financial difficulties;

(iv)    unscheduled draws on credit enhancements reflecting financial difficulties;

(v)    substitution of credit or liquidity providers, or their failure to perform;

(vi)    adverse tax opinions or events affecting the tax-exempt status of the Series 2002 Bonds;

(vii)    modifications to rights of Holders;

(viii)    bond calls;

(ix)    defeasances;

(x)    release, substitution or sale of property securing repayment of the Bonds; and

(xi)    rating changes.

(b)    The Issuer does not undertake to provide such notice with respect to:

(1)    credit enhancement if:

(i)    the enhancement is added after the primary offering of the Bonds,

(ii)    the Issuer does not apply for or participate in obtaining the enhancement and

(iii)    the enhancement is not described in the applicable offering circular of the Issuer;

(2)    a mandatory, scheduled redemption not otherwise contingent upon the occurrence of an event, if:

-33-

(i)    the terms, dates and amounts of redemption are set forth in detail in the offering circular,

(ii)    the only open issue is which Bonds will be redeemed in the case of a partial redemption,

(iii)    notice of redemption is given to the Holders as required under the terms of this Indenture and

(iv)    public notice of the redemption is given pursuant to Release No. 23856 of the Securities and Exchange Commission (the "SEC") under the Securities Exchange Act of 1934, as amended (the "1934 Act"), even if the originally scheduled amounts may be reduced by prior optional redemptions or purchases; or

(3)    tax exemption other than pursuant to §103 of the Code.

(c)    No Bondholder may institute any suit, action or proceeding at law or in equity ("Proceedings") for the enforcement of the continuing disclosure undertaking ("Undertaking") or for any remedy for breach thereof, unless such Bondholder shall have filed with the Issuer evidence of ownership and a written notice of a request to cure such breach, and the Issuer shall have refused to comply within a reasonable time. All Proceedings shall be instituted only as specified herein, in accordance with Section 902(d), and for the equal benefit of all Holders of the Outstanding Bonds, and no remedy shall be sought or granted other than specific performance of the covenant at issue. Any beneficial owner of Series 2002 Bonds may bring a Proceeding to enforce the Undertaking set forth in this section without acting in concert if:

(1)    such beneficial owner shall have filed with the Issuer:

(i)    evidence of beneficial ownership, and

(ii)    written notice of, and request to cure, the alleged breach,

(2)    the Issuer shall have failed to comply within a reasonable time, and

(3)    such beneficial owner stipulates that no remedy is sought other than substantial performance of the Undertaking. To the extent permitted by law, each beneficial owner agrees that all Proceedings shall be instituted only for the equal benefit of all beneficial owners of the Outstanding Bonds benefited by the same or a substantially similar undertaking.

No default under this Section 506 shall constitute an Event of Default under the Indenture.

(d)    For the purposes of this section, a beneficial owner of a security includes any person who, directly or indirectly, through any contract, arrangement, understanding,

-34-

relationship, or otherwise has or shares investment power which includes the power to dispose, or to direct the disposition of, such security, except that a person who in the ordinary course of business is a pledgee of securities under a written pledge agreement shall not be deemed to be the beneficial owner of such pledged securities until the pledgee has taken all formal steps to declare a default and determines that the power to dispose or to direct the disposition of such pledged securities will be exercised, provided that:

     (1)    the pledge agreement is bona fide;

     (2)    the pledgee is:

         (i)    a broker or dealer registered under § 15 of the 1934 Act;

         (ii)    a bank as defined in § 3(a)(6) of the 1934 Act;

         (iii)    an insurance company as defined in § 3(a)(19) of the 1934 Act;

         (iv)    an investment company registered under § 8 of the Investment Company Act of 1940;

         (v)    an investment adviser registered under § 203 of the Investment Advisers Act of 1940;

         (vi)    an employee benefit plan, or pension fund which is subject to the provisions of the Employee Retirement Income Security Act of 1974 or an endowment fund;

         (vii)    a parent holding company, provided the aggregate amount held directly by the parent, and directly and indirectly by its subsidiaries which are not persons specified in items (i) though (vi) of this clause (b) does not exceed 1% of the securities of the subject class; or

         (viii)    a group, provided that all the members are persons specified in items (i) through (vii) of this clause (b); and

     (3)    the pledge agreement, prior to default, does not grant to the pledgee the power to dispose or direct the disposition of the pledged securities, other than the grant of such power(s) pursuant to a pledge agreement under which credit is extended subject to Regulation T (12 CFR 220.1 to 220.8) and in which the pledgee is a broker or dealer registered under § 15 of the 1934 Act.

     (e)    Any Supplemental Indenture amending the Undertaking may only be entered into if all or any part of Rule 15c2-12 (the "Rule") of the SEC under the 1934 Act, as interpreted by the staff of the SEC at the date hereof, ceases to be in effect for any reason and the Issuer elects that this Undertaking shall be deemed terminated or amended (as the case may be) accordingly, or if:

(1)    the amendment is made in connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature, or status of the Issuer, or type of business conducted,

(2)    the Undertaking, as amended, would have complied with the requirements of the Rule at the date hereof, after taking into account any amendments or interpretations of the Rule, as well as any change in circumstances,

(3)    the amendment does not materially impair the interests of the Holders or beneficial owners of the Series 2002 Bonds, as determined by parties unaffiliated with the Issuer (such as, but without limitation, the Issuer's financial advisor or bond counsel) or by Holder consent pursuant to Section 1001 of this Indenture, and

(4)    the annual financial information containing (if applicable) the amended operating data or financial information will explain, in narrative form, the reasons for the amendment and the "impact" (as that word is used in the letter from the staff of the SEC to the National Association of Bond Lawyers dated June 23, 1995) of the change in the type of operating data or financial information being provided.

SECTION 507. Ratings. The Issuer shall pay such reasonable fees and provide such available information as may be necessary to obtain and keep in effect ratings on all the Outstanding Bonds from at least two nationally recognized statistical rating organizations.

SECTION 508. Affirmative Covenants.

(a)    *Punctual Payment.* The Issuer shall duly and punctually pay debt service on the Bonds in accordance with the terms of the Bonds and this Indenture.

(b)    *Maintenance of Existence.* Unless the Special Conditions are met, the Issuer shall keep in full effect its existence, rights and franchises as a public entity under the laws of the State.

(c)    *Protection of Collateral.* The Issuer shall from time to time execute and deliver all documents and instruments, and will take such other action, as is necessary or advisable to:  (1) maintain or preserve the lien and security interest (and the priority thereof) of this Indenture; (2) perfect or protect the validity of any grant made or to be made by this Indenture; (3) preserve and defend title to the Collections and the other Collateral and the rights of the Indenture Trustee, on behalf of the Bondholders, in the Collateral against the claims of all Persons and parties, including the challenge by any party to the validity or enforceability of the MSA, the Basic Documents or the performance by any party thereunder; (4) enforce the Sales Agreement; (5) pay any and all taxes levied or assessed upon all or any part of the Collateral; or (6) carry out more effectively the purposes of this Indenture.

(d)    *Performance of Obligations.* The Issuer (1) shall diligently pursue any and all actions to enforce its rights under each instrument or agreement included in the Collateral; (2) shall not take any action and will use its best efforts not to permit any action to be taken by others that would release any Person from any of such Person's covenants or obligations under any such instrument or agreement or that would result in the amendment,

-36-

hypothecation, subordination, termination or discharge of, or impair the validity or effectiveness of, any such instrument or agreement, except, in each case, as expressly provided in the Basic Documents; and (3) with respect to Pledged TSRs, the Issuer shall direct the Attorney General to enforce, in the name of the State and, if permissible, to enforce directly through the Issuer's own attorneys in the name of the State, with notice to the Attorney General, the Master Settlement Agreement.

     (e)    *Notice of Events of Default*.  The Issuer shall give the Indenture Trustee and the Rating Agencies prompt written notice of each Event of Default under this Indenture.

     (f)    *Other*.  The Issuer shall:

     (i)    conduct its own business in its own name and not in the name of any other Person and correct any known misunderstandings regarding its separate identity;

     (ii)    maintain or contract for a sufficient number of employees and compensate all employees, consultants and agents directly, from the Issuer's bank accounts, for services provided to the Issuer by such employees, consultants and agents and, to the extent any employee, consultant or agent of the Issuer is also an employee, consultant or agent of another Person, allocate the compensation of such employee, consultant or agent between the Issuer and such Person on a basis that reflects the services rendered to the Issuer and such Person;

     (iii)    conduct all transactions with any other Person strictly on an arm's-length basis, allocate all overhead expenses (including, without limitation, telephone and other utility charges) for items shared between the Issuer and such Person on the basis of actual use to the extent practicable and, to the extent such allocation is not practicable, on a basis reasonably related to actual use;

     (iv)    observe all formalities as a distinct entity, and ensure that all actions relating to (1) the dissolution or liquidation of the Issuer or (2) the initiation of, participation in, acquiescence in or consent to any bankruptcy, insolvency, reorganization or similar proceeding involving the Issuer, are duly authorized by unanimous vote of its members;

     (v)    maintain its books and records separate from those of any other Person and maintain its assets readily identifiable as its own assets rather than assets of any other Person and not commingle its assets with those of any other Person;

     (vi)    prepare its financial statements separately from those of any other Person and not prepare any financial statements that are consolidated with those of any other Person;

(vii)    maintain only those bank accounts or other depository accounts to which the Issuer alone is the account party, and from which only the Issuer has the power to make withdrawals;

(viii)    pay all of the Issuer's operating expenses from the Issuer's own assets (except for expenses incurred prior to the date of issuance of the Series 2002 Bonds);

(ix)    operate its business and activities such that: it does not engage in any business or activity of any kind, or enter into any transaction or indenture, mortgage, instrument, agreement, contract, lease or other undertaking, other than the transactions contemplated and authorized by its organizational documents; and does not create, incur, guarantee, assume or suffer to exist any indebtedness or other liabilities, whether direct or contingent, other than (1) as a result of the endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business, (2) the incurrence of obligations under the Basic Documents, (3) the incurrence of operating expenses in the ordinary course of business of the type otherwise contemplated by the Basic Documents, and (4) the incurrence of obligations payable solely from specified assets of the Issuer not subject to the lien of this Indenture and the holders of which expressly have no recourse to any other assets of the Issuer in the event of non-payment;

(x)    maintain its organization in conformity with this Indenture; and

(xi)    object in any relevant bankruptcy case to the consolidation of the assets of the Issuer with those of the State.

SECTION 509. Negative Covenants.

(a)    *Sale of Assets.* Except as expressly permitted by this Indenture, the Issuer shall not sell, transfer, exchange or otherwise dispose of any of its properties or assets that are subject to the lien of this Indenture.

(b)    *No Setoff.* The Issuer shall not claim any credit on, or make any deduction from the principal or premium, if any, or interest on, the Bonds or assert any claim against any present or former Bondholder by reason of payment of taxes levied or assessed upon any part of the Collateral.

(c)    *Liquidation.* Unless the Special Conditions are met, the Issuer shall not terminate its existence or dissolve or liquidate in whole or in part.

(d)    *Limitation of Liens.* The Issuer shall not (1) permit the validity or effectiveness of this Indenture to be impaired, or permit the lien of this Indenture to be amended, hypothecated, subordinated, terminated or discharged, or permit any Person to be released from any covenants or obligations with respect to the Bonds under this Indenture except as may be expressly permitted hereby, (2) permit any lien, charge, excise, claim, security interest, mortgage

-38-

or other encumbrance (other than the lien of this Indenture) to be created on or extend to or otherwise arise upon or burden the Collateral or any part thereof or any interest therein or the proceeds thereof on a parity with or senior to the lien of this Indenture, or (3) permit the lien of this Indenture not to constitute a valid first priority security interest in the Collateral.

(e)    *Limitations on Consolidation, Merger, Sale of Assets, Etc*. Except as otherwise provided in this Indenture, the Issuer shall not consolidate or merge with or into any other Person, or convey or transfer all or substantially all of its properties or assets, unless the following conditions (the "Special Conditions") are met:

(i) an entity shall survive such event, and such entity shall be organized and existing under the laws of the United States, the State or any state and shall expressly assume the due and punctual payment of the principal of and premium, if any, and interest on all Bonds and the performance or observance of every agreement and covenant of the Issuer in this Indenture;

(ii) immediately after giving effect to such transaction, no Event of Default has occurred under this Indenture;

(iii) the Issuer has received a Rating Confirmation;

(iv) the Issuer has received an opinion of Counsel to the effect that such transaction will not have a material adverse tax consequence to the Issuer and will not adversely affect the exclusion of interest on any of the Tax-Exempt Bonds from gross income for federal income tax purposes;

(v) any action as is necessary to maintain the lien and security interest created by this Indenture has been taken; and

(vi) the Issuer has delivered to the Indenture Trustee an Officer's Certificate and an opinion of Counsel to the effect that such transaction complies with this Indenture and that all conditions precedent to such transaction have been complied with.

(f)    *Restricted Payments*. The Issuer shall not, directly or indirectly, make distributions from the Collections Account except in accordance with this Indenture.

(g)    *Swap Contracts*. The Issuer shall not enter into any Swap Contract until it has first obtained a Rating Confirmation with respect to such Swap Contract; nor shall the Issuer enter into any Swap Contract unless such Swap Contract provides that any payments to be made to or for the benefit of the Issuer shall be made to the Indenture Trustee for deposit into the Collections Account.

SECTION 510. <u>Prior Notice</u>.    The Indenture Trustee shall give each Rating Agency 15 days' prior written notice of any amendment to this Indenture or the defeasance or redemption of Bonds. The Indenture Trustee shall give each Rating Agency 15 days' prior written notice of any amendment (of which the Indenture Trustee has knowledge) to the Sales Agreement.

ARTICLE VI

RESIDUAL CERTIFICATE

SECTION 601. <u>Sources of Payment</u>.  Payments under or in respect of the Residual Certificate shall be payable only from the sources provided therefor under this Indenture and only upon the terms of this Indenture.  Notwithstanding anything to the contrary in this Indenture or the Residual Certificate, no amounts shall be due and payable through or in respect of the Residual Certificate, and the registered owner of the Residual Certificate shall have no right to, or interest of any kind in, the payment of any such amount, unless and until the Indenture Trustee shall determine that funds are available therefor in accordance with Article IV of this Indenture and the Indenture Trustee shall in fact withdraw funds from the Accounts for such payment and transfer the same to the registered owner of the Residual Certificate.

SECTION 602. <u>Delivery to Indenture Trustee</u>.  At delivery of the Bonds, the Residual Certificate shall be delivered to the State, for deposit to the credit of the Tobacco Securitization Trust Account, in furtherance of the Sales Agreement, and registered on the books of the Issuer kept by the Indenture Trustee.

ARTICLE VII

THE FIDUCIARIES

SECTION 701. <u>Indenture Trustee's Organization, Authorization, Capacity and Responsibility</u>.

(a)    The Indenture Trustee represents and warrants that it is duly organized and validly existing under the laws of the jurisdiction of its organization, having the authority to engage in the trust business within the State, including the capacity to exercise the powers and duties of the Indenture Trustee hereunder, and that by proper corporate action it has duly authorized the execution and delivery of this Indenture. The Indenture Trustee shall maintain on file with the Issuer a written certificate specifying the name, address, telephone number, email address and telefacsimile number of every Authorized Officer of the Indenture Trustee (x) having direct responsibility for the administration of this Indenture or (y) to whom a particular matter is referred because of such officer's knowledge of and familiarity with the particular subject.

(b)    The duties and responsibilities of the Indenture Trustee shall be as set forth herein.  Notwithstanding the foregoing, no provision of this Indenture shall require the Indenture Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, unless it receives indemnity reasonably satisfactory to it against any loss, liability or expense; provided, that the Indenture Trustee shall make the payments and distributions required by this Indenture without requiring that any indemnity be provided to it.   Whether or not therein expressly so provided, every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Indenture Trustee shall be subject to the provisions of this Article.

-40-

(c)    As Indenture Trustee hereunder:

(1)    the Indenture Trustee may conclusively rely and shall be fully protected in acting or refraining from acting upon any Officer's Certificate, opinion of Counsel (or both), resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document reasonably believed by it to be genuine and to have been signed or presented by the proper person or persons. The Indenture Trustee need not investigate any fact or matter stated in the document, but the Indenture Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit;

(2)    before the Indenture Trustee acts or refrains from acting, it may require an Officer's Certificate and/or an opinion of Counsel. The Indenture Trustee shall not be liable for any action it takes or omits to take in good faith in reliance on such certificate or opinion. Whenever in the administration of the trusts of this Indenture the Indenture Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering or omitting to take any action hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may, in the absence of negligence or bad faith on the part of the Indenture Trustee, be deemed to be conclusively proved and established by an Officer's Certificate delivered to the Indenture Trustee, and such certificate, in the absence of negligence or bad faith on the part of the Indenture Trustee, shall be full warrant to the Indenture Trustee for any action taken, suffered or omitted to be taken by it under the provisions of this Indenture upon the faith thereof;

(3)    any request, direction, order or demand of the Issuer mentioned herein shall be sufficiently evidenced by an Officer's Certificate (unless other evidence in respect thereof be herein specifically prescribed); and any Issuer resolution may be evidenced to the Indenture Trustee by a copy thereof certified by the secretary or an assistant secretary of the Issuer;

(4)    prior to the occurrence of an Event of Default hereunder and after the curing or waiving of all Events of Default, the Indenture Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, Officer's Certificate, opinion of Counsel, Issuer resolution, statement, instrument, opinion, report, notice, request, consent, order, approval, appraisal, bond, debenture, note, coupon, security, or other paper or document unless requested in writing so to do by the Holders of a majority of the principal amount of the Bonds affected and then Outstanding; and if the payment within a reasonable time to the Indenture Trustee of the costs, expenses or liabilities likely to be incurred by it in the making of such investigation is, in the opinion of the Indenture Trustee, not reasonably assured to the Indenture Trustee by the security afforded to it by the terms of this Indenture, the Indenture Trustee may require indemnity reasonably satisfactory to it against such expenses or liabilities as a condition to proceeding;

(5)    the Indenture Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture at the request or direction of the Issuer or Holders, unless the Issuer or Holders shall have offered to the Indenture Trustee reasonable security or indemnity against the costs, expenses and liabilities which might be incurred by it in compliance with such request or direction; provided, that the Indenture Trustee shall make the payments and distributions required by this Indenture without requiring any indemnity be provided to it;

(6)    the Indenture Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys;

(7)    the recitals contained herein and in the Bonds, except any such recitals relating to the Indenture Trustee, shall be taken as the statements of the Issuer, and the Indenture Trustee assumes no responsibility for their correctness. The Indenture Trustee makes no representation as to the validity or sufficiency of this Indenture or of the Bonds. The Indenture Trustee shall not be accountable for the use or application by the Issuer of the Bonds or the proceeds thereof or of any moneys paid to the Issuer pursuant to the terms of the Indenture. The Indenture Trustee shall have no responsibility with respect to any information, statement or recital in any offering circular or other disclosure material prepared or distributed with respect to the Bonds. The Indenture Trustee shall be responsible, however, for its representations contained in its certificate of authentication pertaining to each Bond;

(8)    the Indenture Trustee (i) undertakes to perform such duties and only such duties as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Indenture Trustee and (ii) in the absence of negligence, bad faith or willful misconduct on its part, may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished pursuant to and conforming to the requirements of this Indenture; but in the case of any such certificates or opinions which by any provision hereof are specifically required to be furnished to the Indenture Trustee, shall be under a duty to examine the same to determine whether or not they conform to the requirements of this Indenture; and

(9)    the Indenture Trustee shall exercise such of the rights and powers vested in it by this Indenture, and, following the occurrence of an Event of Default, or a written allegation to the Indenture Trustee that an Event of Default has occurred, use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

SECTION 702.    Rights and Duties of the Fiduciaries.

(a)    All money and investments received by the Fiduciaries under this Indenture shall be held in trust, in a segregated trust account in the trust department of such Fiduciary, not commingled with any other funds, and applied solely pursuant to the provisions hereof.

(b)    The Fiduciaries shall keep proper accounts of their transactions hereunder (separate from its other accounts), which shall be open to inspection on reasonable notice by the Issuer and its representatives duly authorized in writing.

(c)    The Fiduciaries shall not be required to monitor the financial condition of the Issuer and, unless otherwise expressly provided, shall not have any responsibility with respect to reports, notices, certificates or other documents filed with them hereunder, except to make them promptly available for inspection by Bondholders.

(d)    Each Fiduciary shall be entitled to the advice of counsel (who may be counsel for any party) and shall not be liable for any action taken in good faith in reliance on such advice. Each Fiduciary may rely conclusively on any notice, certificate or other document furnished to it under this Indenture and reasonably believed by it to be genuine. A Fiduciary shall not be liable for any action taken or omitted to be taken by it in good faith and reasonably believed by it to be within the discretion or power conferred upon it, or taken by it pursuant to any direction or instruction by which it is governed under this Indenture or omitted to be taken by it by reason of the lack of direction or instruction required for such action, or be responsible for the consequences of any error of judgment reasonably made by it. When any payment or consent or other action by a Fiduciary is called for by this Indenture, the Fiduciary may defer such action pending receipt of such evidence, if any, as it may reasonably require in support thereof; except that the Indenture Trustee and any Paying Agent shall make the payments and distributions required by this Indenture without requiring that any further evidence be provided to it. A permissive right or power to act shall not be construed as a requirement to act.

(e)    The Fiduciaries shall in no event be liable for the application or misapplication of funds, or for other acts or failures to act, by any person, firm or corporation except by their respective directors, officers, agents, and employees. No recourse shall be had for any claim based on this Indenture or the Bonds against any director, officer, agent or employee of any Fiduciary unless such claim is based upon the bad faith, negligence, willful misconduct, fraud or deceit of such person.

(f)    Nothing in this Indenture shall obligate any Fiduciary to pay any debt or meet any financial obligations to any Person in relation to the Bonds except from money received for such purposes under the provisions hereof or from the exercise of the Indenture Trustee's rights hereunder.

(g)    The Fiduciaries may be or become the owner of or trade in the Bonds with the same rights as if they were not the Fiduciaries.

(h)    Unless otherwise specified by a Supplemental Indenture, the Fiduciaries shall not be required to furnish any bond or surety.

(i)    The Issuer shall, as and only as an Operating Expense, indemnify and save each Fiduciary harmless against any expenses and liabilities (including reasonable legal fees and expenses) that it may reasonably incur in the exercise of its duties hereunder and that are not due to such Fiduciary's negligence, willful misconduct or bad faith. This paragraph (i) shall survive the discharge of this Indenture or the earlier resignation or removal of such Fiduciary.

-43-

(j)    Nothing herein shall relieve any Fiduciary of responsibility for its negligence, bad faith or willful misconduct.

SECTION 703. <u>Paying Agents</u>.  The Issuer designates the Indenture Trustee as Paying Agent.  The Issuer may appoint additional Paying Agents, generally or for specific purposes, may discharge a Paying Agent from time to time and may appoint a successor, in each case with written notice to each Rating Agency.  The Issuer shall designate a successor if the Indenture Trustee ceases to serve as Paying Agent.  Each Paying Agent shall be a bank or trust company eligible under the laws of the State, and shall have (together with its corporate parent, if applicable) a capital and surplus of not less than $50,000,000 and be registered as a transfer agent with the Securities and Exchange Commission.  The Issuer shall give notice of the appointment of a successor to the Indenture Trustee as Paying Agent in writing to each Bondholder shown on the books of the Indenture Trustee.  A Paying Agent may but need not be the same Person as the Indenture Trustee.  Unless otherwise provided by the Issuer, the Indenture Trustee as Paying Agent shall act as registrar and transfer agent, in accordance with Section 302.

SECTION 704. <u>Resignation or Removal of the Indenture Trustee</u>.  The Indenture Trustee may resign on not less than 30 days' written notice to the Issuer, the Bondholders and each Rating Agency.  The Indenture Trustee will promptly certify to the Issuer that it has given written notice to all Bondholders and such certificate will be conclusive evidence that such notice was given as required hereby.  The Indenture Trustee shall be removed if rated below investment grade by each Rating Agency and each successor Indenture Trustee shall have an investment grade rating from each Rating Agency.  The Indenture Trustee may be removed by written notice from the Issuer (if an Event of Default has not occurred) or the Holders of a majority of the principal amount of the Outstanding Bonds to the Indenture Trustee, the Issuer and each Rating Agency.  Such resignation or removal shall not take effect until a successor has been appointed and has accepted the duties of Indenture Trustee.

SECTION 705. <u>Successor Fiduciaries</u>.

In case a Fiduciary resigns or is removed or becomes incapable of acting, or is merged or converted into (or consolidated with) another corporation or association, or sells, assigns or otherwise transfers all or substantially all of its corporate trust business, or becomes bankrupt or insolvent, or if a receiver, liquidator or conservator of a Fiduciary or of its property is appointed, or if a public officer takes charge or control of a Fiduciary, or of its property or affairs, then such Fiduciary shall with due care terminate its activities hereunder and a successor may, or in the case of the Indenture Trustee shall, be appointed by the Issuer.  If the Indenture Trustee is merged or converted into (or consolidated with) another corporation or association, or if the Indenture  Trustee sells, assigns or otherwise transfers all or substantially all of its corporate trust business, then such appointed successor trustee may, but need not, be the corporation or association resulting from such merger, conversion or consolidation. The Issuer shall notify the Bondholders and each Rating Agency of the appointment of a successor Indenture Trustee in writing within 20 days after the appointment.  The Issuer will promptly certify to the successor Indenture Trustee that it has given such notice to all Bondholders and such certificate will be conclusive evidence that such notice was given as required hereby.  If no appointment of a successor Indenture Trustee is made within 45 days after the giving of written notice in accordance with Section 704 or after the occurrence of any other event requiring or

-44-

authorizing such appointment, the outgoing Indenture Trustee or any Bondholder may apply to any court of competent jurisdiction for the appointment of such a successor, and such court may thereupon, after such notice, if any, as such court may deem proper, appoint such successor. Any successor Indenture Trustee appointed under this section shall be a trust company or a bank (i) having trust powers and having a capital and surplus of not less than $50,000,000 and (ii) whose long-term debt obligations have been assigned an investment-grade rating by each Rating Agency or with respect to the appointment of which the Issuer shall have received a Rating Confirmation.   Any such successor Indenture Trustee shall notify the Issuer of its acceptance of the appointment and, upon giving such notice, shall become the Indenture Trustee, vested with all the property, rights, powers and duties of the Indenture Trustee hereunder, without any further act or conveyance.   Such successor Indenture Trustee shall execute, deliver, record and file such instruments as are required to confirm or perfect its succession hereunder and any predecessor Indenture Trustee shall from time to time execute, deliver, record and file such instruments as the incumbent Indenture Trustee may reasonably require to confirm or perfect any succession hereunder.

SECTION 706.  <u>Distribution Reports by Indenture Trustee</u>.  Paragraph 3.8(a) of the Issuer Tax Certificate requires that within 90 days after the beginning of each Fiscal Year, the State will notify the Issuer and Hawkins, Delafield & Wood and Preston, Gates & Ellis LLP (collectively, "Co-Bond Counsel"), and the Indenture Trustee, of the amount of certain "Available Amounts" (as defined in the Issuer Tax Certificate), the amount thereof that the State has set aside for use for one of the prescribed applications under Paragraph 3.8(b) of the Issuer Tax Certificate, and the particular prescribed applications for which such "Available Amounts" will be used. On the first Business Day of each Fiscal Year that commences after June 30, 2007, the Indenture shall notify the State in writing of that the State is required to so notify Co-Bond Counsel and the Indenture Trustee within 90 days after the beginning of such Fiscal Year. If the Indenture Trustee shall have not received such notice from the State within 90 days after the beginning of any such Fiscal Year, the Indenture Trustee shall promptly notify the State and Co-Bond Counsel of such fact.

The Indenture Trustee shall deliver to the Issuer, each Bondholder, the State and each Rating Agency at least one Business Day prior to each Distribution Date a statement prepared by the Indenture Trustee containing the following information in reasonable detail:

(a)     the aggregate principal amount of each maturity of the Bonds Outstanding on such Distribution Date, prior to any payments of principal on such Distribution Date (and indicating that the Series 2002 Bonds having Maturity Dates in the years 2005 through 2012, and the first $111,998,907.44 of Series 2002 Bonds having a stated maturity of June 1, 2026 that are redeemed or otherwise retired, are allocated to the "Working Capital Portion" of the Series 2002 Bonds,;

(b)     the aggregate amount of interest to be paid on the Bonds Outstanding on such Distribution Date;

(c)     each of the Serial Maturities, Turbo Redemptions, Turbo Term Bond Maturities and Sinking Fund Installments due to be paid to Holders of each maturity of the Bonds on such Distribution Date;

-45-

(d)    the amount on deposit in each Account as of such Distribution Date, prior to any payments to Bondholders on such Distribution Date; and

(e)    the aggregate amount of Pledged TSRs received by the Indenture Trustee since the preceding Distribution Date (or, for the statement to be prepared prior to the first Distribution Date, since the Closing Date.

SECTION 707.    Compliance Certificates and Opinions.    Upon any application or request by the Issuer to the Indenture Trustee to take any action under any provision of this Indenture, the Issuer shall furnish to the Indenture Trustee a certificate stating that all conditions precedent, if any, provided for in this Indenture relating to the proposed action have been complied with, except that in the case of any such application or request as to which the furnishing of any documents is specifically required by any provision of this Indenture relating to such particular application or request, no additional certificate need be furnished.

Except as otherwise specifically provided herein, each certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:

(1)    a statement that each individual signing such certificate or opinion has read such covenant or condition and the definitions herein relating thereto;

(2)    a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based; and

(3)    a statement as to whether, in the opinion of each such individual, such condition or covenant has been complied with.

SECTION 708.    Form of Documents Delivered to the Indenture Trustee.

(a)    In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

(b)    Any certificate of an Authorized Officer of the Indenture Trustee may be based, insofar as it relates to legal matters, upon an opinion of counsel, unless such Authorized Officer knows, or in the exercise of reasonable care should know, that the opinion is erroneous. Any such certificate of an Authorized Officer of the Indenture Trustee or any opinion of counsel may be based, insofar as it relates to factual matters upon a certificate or opinion of, or representations by, one or more Authorized Officers of the Issuer, stating that the information with respect to such factual matters is in the possession of the Issuer, unless such Authorized Officer or counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters are erroneous. Any opinion of counsel may also be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an Authorized Officer of the Indenture Trustee, stating that the information

-46-

with respect to such matters is in the possession of the Indenture Trustee, unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters are erroneous. Any opinion of counsel may be based on the written opinion of other counsel, in which event such opinion of counsel shall be accompanied by a copy of such other counsel's opinion and shall include a statement to the effect that such counsel believes that such counsel and the Indenture Trustee may reasonably rely upon the opinion of such other counsel. In no event shall any opinion of counsel required by this Indenture be at the expense of the Indenture Trustee.

(c)    Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

## ARTICLE VIII

## THE BONDHOLDERS

SECTION 801. Action by Bondholders. Any request, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Bondholders may be contained in and evidenced by one or more writings of substantially the same tenor signed by the requisite number of Bondholders or their attorneys duly appointed in writing. Proof of the execution of any such instrument, or of an instrument appointing any such attorney, shall be sufficient for any purpose of this Indenture (except as otherwise herein expressly provided) if made in the following manner, but the Issuer or the Indenture Trustee may nevertheless in its discretion require further or other proof in cases where it deems the same desirable. The fact and date of the execution by any Bondholder or its attorney of such instrument may be proved by the certificate or signature guarantee by a guarantor institution participating in a guarantee program acceptable to the Indenture Trustee; or of any notary public or other officer authorized to take acknowledgements of deeds to be recorded in the jurisdiction in which such notary public or other officer purports to act, that the person signing such request or other instrument acknowledged to such notary public or other officer the execution thereof; or by an affidavit of a witness of such execution, duly sworn to before such notary public or other officer. The authority of the person or persons executing any such instrument on behalf of a corporate Bondholder may be established without further proof if such instrument is signed by a person purporting to be the chairperson or an executive officer of such corporation with a corporate seal affixed and attested by a person purporting to be its clerk or secretary or an assistant clerk or secretary. Any action of the Bondholder shall be irrevocable and bind all future record and beneficial owners thereof.

SECTION 802. Registered Holders. The enumeration in Section 303(a) of certain provisions applicable to DTC as Holder of immobilized Bonds shall not be construed in limitation of the rights of the Issuer and each Fiduciary to rely upon the registration books in all circumstances and to treat the registered owners of Bonds as the owners thereof for all purposes not otherwise specifically provided for by law or in this Indenture. Notwithstanding any other provisions hereof, any payment to the registered owner of a Bond shall satisfy the Issuer's obligations thereon to the extent of such payment.

ARTICLE IX

DEFAULT AND REMEDIES

SECTION 901. Events of Default. "Event of Default" in this Indenture means any one of the events set forth below.

(a)     failure to pay, when due, interest on any Bond;

(b)     failure to pay, when due, any Serial Maturity, Turbo Term Bond Maturity or Swap Payment;

(c)     failure of the Issuer to observe or perform any other provision of this Indenture which is not remedied within 60 days after written notice thereof is given to the Issuer by the Indenture Trustee or to the Issuer and the Indenture Trustee by the Holders of at least 25% in principal amount of the Bonds then Outstanding. In the case of a default specified in this subsection, if the default be such that it cannot be corrected within the said 60-day period, it shall not constitute an Event of Default if corrective action is instituted by the Issuer within said 60-day period and diligently pursued until the default is corrected.; or

(d)     a material breach by the State of its covenants contained or referred to in Section 501(d), (e) or (f), Section 503(b), (c) or (d) or Section 504 hereof, which breach is not remedied within 60 days after written notice, specifying such default and requiring the same to be remedied, shall have been given to the Issuer and the State by the Indenture Trustee or to the Indenture Trustee, the Issuer and the State by the Holders of at least 25% in principal amount of the Bonds then Outstanding. In the case of a default specified in this subsection, if the default be such that it cannot be corrected within the said 60-day period, it shall not constitute an Event of Default if corrective action is instituted by the State within said 60-day period and diligently pursued until the default is corrected.

Except as specified in subsections (a) and (b) of this Section 901, failure to make any payment or to make provision therefor, including any Turbo Redemption or any Sinking Fund Installment, does not constitute an Event of Default to the extent that such failure results from the insufficiency of available Collateral to make such payment or provision therefor.

SECTION 902. Remedies.

(a)     *Remedies of the Indenture Trustee.* If an Event of Default occurs and is continuing:

(1)     The Indenture Trustee may, and upon written request of the Holders of at least 25% in principal amount of the Bonds Outstanding shall, in its own name by action or proceeding in accordance with law:

(a)     enforce all rights of the Bondholders and require the Issuer and the State to carry out their respective agreements with the Bondholders;

-48-

(b)    sue upon the Bonds;

(c)    require the Issuer to account as if it were the trustee of an express trust for the Bondholders; and

(d)    enjoin any acts or things which may be unlawful or in violation of the rights of the Bondholders.

(2)    The Indenture Trustee shall, in addition to the other provisions of this Section 902, have and possess all of the powers necessary or appropriate for the exercise of any functions incident to the general representation of Bondholders in the enforcement and protection of their rights.

(3)    Upon an Event of Default under Section 901(a) or 901(b), or a failure actually known to an Authorized Officer of the Indenture Trustee to make any other payment required hereby within 7 days after the same becomes due and payable, the Indenture Trustee shall give written notice thereof to the Issuer.  The Indenture Trustee shall give default notices under paragraph (c) or (d) of Section 901 when instructed to do so by the written direction of another Fiduciary or the Holders of at least 25% in principal amount of the Outstanding Bonds.  The Indenture Trustee shall proceed under Section 902 for the benefit of the Bondholders in accordance with the written direction of the Holders of a majority in principal amount of the Outstanding Bonds.  The Indenture Trustee shall not be required to take any remedial action (other than the giving of notice) unless reasonable indemnity is furnished for any expense or liability to be incurred therein.  Upon receipt of written notice, direction and indemnity, and after making such investigation, if any, as it deems appropriate to verify the occurrence of any event of which it is notified as aforesaid, the Indenture Trustee shall promptly pursue the remedies provided by this Indenture or any such remedies (not contrary to any such direction) as it deems appropriate for the protection of the Bondholders, and shall act for the protection of the Bondholders with the same promptness and prudence as would be expected of a prudent person in the conduct of such person's own affairs.

(4)    The Holders of a majority in aggregate principal amount of the Outstanding Bonds may direct the time, method and place of conducting any proceeding for any remedy available to the Indenture Trustee with respect to this Indenture, provided that (i) such direction shall not be in conflict with any rule of law or with this Indenture, (ii) the Indenture Trustee shall have been provided with indemnity reasonably satisfactory to it, and (iii) the Indenture Trustee may take any other action deemed proper by it that is not inconsistent with such direction.

(b)    *Payment of Bonds Upon Event of Default.*  Upon the occurrence of an Event of Default and on each Distribution Date thereafter, the Bonds and Swap Contracts shall be paid on a Pro Rata basis as described in Section 402(e) of this Indenture.

(c)    *Individual Remedies.*  No one or more Bondholders shall by its or their action affect, disturb or prejudice the pledge created by this Indenture, or enforce any right under this Indenture, except in the manner herein provided; and all proceedings at law or in equity to

-49-

enforce any provision of this Indenture shall be instituted, had and maintained in the manner provided herein and for the equal benefit of all Bondholders of the same class; but nothing in this Indenture shall affect or impair the right of any Bondholder to enforce payment of the principal of, premium, if any, or interest on each of such Holder's Bonds at and after the same comes due pursuant to this Indenture, or the obligation of the Issuer to pay the principal, premium, if any, and interest on each of the Bonds to the respective Bondholders thereof at the time, place, from the source and in the manner expressed herein and in the Bonds.

(d)    *Venue*. The venue of every action, suit, or special proceeding against the Issuer shall be laid in the Superior Court for the State of Washington, King County.

(e)    *Waiver*. If the Indenture Trustee determines that a Default has been cured before becoming an Event of Default and before the entry of any final judgment or decree with respect to it, the Indenture Trustee may waive the Default and its consequences, by written notice to the Issuer, and shall do so upon written instruction of the Holders of at least 25% in principal amount of the Outstanding Bonds.

SECTION 903. Remedies Cumulative.    The rights and remedies under this Indenture shall be cumulative and shall not exclude any other rights and remedies allowed by law, provided there is no duplication of recovery. The failure to insist upon a strict performance of any of the obligations of the Issuer or to exercise any remedy for any violation thereof shall not be taken as a waiver for the future of the right to insist upon strict performance by the Issuer or of the right to exercise any remedy for the violation.

SECTION 904. Delay or Omission Not Waiver.

(a)    No delay or omission of the Indenture Trustee or of any Bondholder to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein.  Every right and remedy given hereby or by law to the Indenture Trustee or to the Bondholders may be exercised from time to time, and as often as may be deemed expedient, by the Indenture Trustee or by the Bondholders, as the case may be.

(b)    Any request, demand, authorization, direction, notice, consent, waiver or other action by the Issuer shall bind any successors or assigns of the Issuer in respect of anything done, omitted or suffered to be done by the Indenture Trustee in reliance thereon.

(c)    Where this Indenture provides for notice in any manner, such notice may be waived in writing by any Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice.

ARTICLE X

MISCELLANEOUS

SECTION 1001. Supplements and Amendments to this Indenture.

(a)    This Indenture may be:

-50-

(1)    supplemented in writing by the Issuer and the Indenture Trustee to (a) provide for earlier or greater deposits into the Debt Service Account, (b) subject any additional property to the lien hereof, (c) add to the covenants and agreements of the Issuer or surrender or limit any right or power of the Issuer, (d) identify particular Bonds for purposes not inconsistent herewith, including remarketing and defeasance, (e) cure any ambiguity or defect, (f) protect the exclusion of interest on Tax-Exempt Bonds from gross income for federal income tax purposes, or the exemption from registration of the Bonds under the Securities Act of 1933, as amended, or of this Indenture under the Trust Indenture Act of 1939, as amended, and (g) to provide any other things relative to the Bonds that are not materially adverse to the Holders of Outstanding Bonds as evidenced by a Rating Confirmation; or

(2)    amended in writing by the Issuer and the Indenture Trustee, (a) to add provisions that are not materially adverse to the Bondholders, (b) to adopt amendments that do not take effect unless and until (i) no Bonds Outstanding prior to the adoption of such amendment remain Outstanding or (ii) such amendment is consented to by such Bondholders in accordance with the further provisions hereof, or (c) pursuant to the following paragraph (b).

(b)    Except as provided in the foregoing paragraph (a), this Indenture may be amended in writing by the Issuer and the Indenture Trustee:

(1)    only with written notice to the Rating Agencies and the written consent of the Holders of a majority of the principal amount of the Bonds to be Outstanding at the effective date thereof and affected thereby; but

(2)    only with the unanimous written consent of the affected Bondholders for any of the following purposes: (a) to extend the stated Maturity Date of any Bond, (b) to reduce the principal amount, applicable premium or interest rate of any Bond, (c) to make any Bond redeemable other than in accordance with its terms, or (d) to reduce the percentage of the Bonds required to be represented by the Bondholders giving their consent to any amendment.

(c)    Any amendment of this Indenture shall be accompanied by an opinion of Counsel to the effect that the amendment is permitted by law and does not, in and of itself, result in the inclusion of interest on Tax-Exempt Bonds in gross income for federal income tax purposes.

(d)    When the Issuer determines that the requisite number of consents have been obtained for an amendment hereto or to the agreement which requires consents, it shall file a certificate to that effect in its records and give notice to the Indenture Trustee and the Bondholders. The Indenture Trustee will promptly certify to the Issuer that it has given such notice to all Bondholders and such certificate will be conclusive evidence that such notice was given in the manner required hereby. It shall not be necessary for the consent of Bondholders pursuant to this Section to approve the particular form of any proposed amendment, but it shall be sufficient if such consent shall approve the substance thereof.

-51-

SECTION 1002. Supplements and Amendments to the Sales Agreement.

(a)    Except as otherwise provided in Section 4.01(c) of the Sales Agreement and Section 504 hereof, after issuance of the Sales Agreement may be amended by agreement of the State and the Issuer, with the consent of the Indenture Trustee but without the consent of any of the Bondholders, for any purpose that shall not adversely affect the Bonds in any material respect, as evidenced by (i) a Rating Confirmation and (ii) an opinion of Counsel that the amendment is permitted under the Sales Agreement and will not adversely affect the tax exemption of interest on the Tax-Exempt Bonds.  The Sales Agreement may also be amended for any purpose, other than as provided in Section 4.01(c) of the Sales Agreement and Section 504 hereof, or to reduce the number of Bondholders specified in the Indenture required to consent to an amendment of the Sales Agreement, by satisfying the conditions in the previous sentence and by obtaining the consent of the number of Bondholders specified in the Indenture.

(b)    Except as otherwise provided in the preceding paragraph, the Sales Agreement may also be amended from time to time by the State and the Issuer with the consent of the Holders of a majority in principal amount Outstanding of the Bonds for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Sales Agreement or of modifying in any manner the rights of the Holders of the Bonds if accompanied by a Rating Confirmation delivered to the Indenture Trustee, but no such amendment, unless consented to by the Holders of all of the Outstanding Bonds, shall reduce the percentage of the Outstanding amount of Bonds the Holders of which are required to consent to any such amendment.

(c)    It shall not be necessary for the consent of Bondholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

SECTION 1003. Rating Confirmation. The Sales Agreement and this Indenture require delivery to the Indenture Trustee of a Rating Confirmation prior to certain actions being undertaken thereunder and hereunder.  Prior to delivery of a Rating Confirmation by any Rating Agency, the Rating Agencies shall be entitled to request:  (1) an Officer's Certificate to the effect that the proposed action will not adversely affect in any material respect payment of the Bonds and (2) an opinion of nationally recognized bond counsel that such proposed action, in and of itself, will not result in the inclusion of interest on the Tax-Exempt Bonds in gross income for federal income tax purposes.

SECTION 1004. Notices. Unless otherwise expressly provided, all notices to the Issuer, the Indenture Trustee or the State shall be in writing and shall be deemed sufficiently given if sent by registered or certified mail, postage prepaid, return receipt requested, or delivered during business hours as follows: (a) to the Issuer at Tobacco Settlement Authority, 1000 Second Avenue – Suite 2700, Seattle, Washington 98104-1046, Attention: Executive Director; (b) to the Indenture Trustee at 1420 5th Ave. – 7th Floor, Seattle, Washington 98101, attention of the Corporate Trust Services; (c) to the State at Office of Financial Management, Insurance Building–Room 300, Olympia, Washington 98504-3113, Attention: Director, with a copy to Office of the Treasurer, 416 14th Ave S.W., P.O. Box 40200, Olympia, Washington 98504-0200 Attention: Treasurer, and  with a copy to Office of the Attorney General, 1125

-52-

Washington Street SE, P.O. Box 40100, Olympia, Washington 98504-0100, Attention: Attorney General; or (d) as to all of the foregoing, to such other address as the addressee shall have indicated by prior written notice to the one giving notice. All notices to a Bondholder shall be in writing and (without limitation) shall be deemed sufficiently given if sent by mail, postage prepaid, to the Bondholder at the address shown on the registration books. A Bondholder may direct the registrar to change such Bondholder's address as shown on the registration books by written notice to the registrar.

Notice hereunder may be waived prospectively or retrospectively by the Person entitled to the notice, but no waiver shall affect any notice requirement as to other Persons.

SECTION 1005. Beneficiaries. This Indenture is not intended for the benefit of and shall not be construed to create rights in parties other than the Issuer, the Fiduciaries and the Bondholders and the beneficial owners of the Bonds and counterparties to Swap Contracts to the extent specified herein.

SECTION 1006. Successors and Assigns. All covenants and agreements in this Indenture and the Bonds by the Issuer shall bind its successors and assigns, whether so expressed or not. All agreements of the Indenture Trustee in this Indenture shall bind its successors.

SECTION 1007. Severability. In case any provision in this Indenture or in the Bonds shall be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

SECTION 1008. Legal Holidays. In any case where the date on which any payment is due shall not be a Business Day, then (notwithstanding any other provision of the Bonds or this Indenture) payment need not be made on such date, but may be made on the next succeeding Business Day with the same force and effect as if made on the date on which nominally due, and no interest shall accrue for the period from and after any such nominal date.

SECTION 1009. Governing Law. This Indenture shall be construed in accordance with the laws of the State, without reference to its conflict of law provisions, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

SECTION 1010. Limitation of Liability. No director, officer or employee of the Issuer shall be individually or personally liable for the payment of the interest on or principal of or the redemption price, if any, on the Bonds, but nothing contained herein shall relieve any director, officer or employee of the Issuer from the performance of any official duty provided by any applicable provisions of law or hereby.

SECTION 1011. No Recourse to Issuer. Notwithstanding any provision of this Indenture or any Supplemental Indenture or Bond to the contrary, Bondholders shall have no recourse against the Issuer, but shall look only to the Collateral, with respect to any amounts due to the Bondholders hereunder.

SECTION 1012. <u>Ability to Issue Bonds Secured by Other Assets</u>.    Nothing herein shall preclude the Issuer from issuing other bonds or other obligations secured by revenues or assets which do not constitute Collateral.

SECTION 1013. <u>Signatures and Counterparts</u>.    This Indenture and each Supplemental Indenture may be executed and delivered in any number of counterparts, each of which shall be deemed to be an original, but such counterparts together shall constitute one and the same instrument.

SECTION 1014. <u>Non-Petition Covenant</u>.    Notwithstanding any prior termination of this Indenture, no Fiduciary or Bondholder shall, prior to the date which is one year and one day after the termination of this Indenture, acquiesce, petition, or otherwise invoke or cause the Issuer to invoke the process of any court or government authority for the purpose of commencing or sustaining a case against the Issuer under any federal or state bankruptcy, insolvency, or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator, or other similar official of the Issuer or any substantial part of its property, or ordering the winding up or liquidation of the affairs of the Issuer.

## SIGNATURES

IN WITNESS WHEREOF, the parties have caused this Indenture to be duly executed all as of the date first above written.

TOBACCO SETTLEMENT AUTHORITY

By: _____
                    Chairperson

U.S. BANK, N.A., as Indenture Trustee

By: _____
                    Authorized Signatory

-55-