**Hearing Date and Time: February 25, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: February 20, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                    :
In re                                               :      **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*        :      **08-13555 (JMP)**
                                                    :
                           **Debtors.**             :      **(Jointly Administered)**
                                                    :
-------------------------------------------------------------------x

## NOTICE OF DEBTORS' MOTION FOR ENTRY OF ORDER AUTHORIZING (I) THE SETTLEMENT OF CERTAIN RIGHTS UNDER LOAN AGREEMENTS, AND (II) THE SALE OF CERTAIN RIGHTS UNDER LOAN AGREEMENTS

PLEASE TAKE NOTICE that a hearing to consider the annexed Motion of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors") For Entry Of An Order Authorizing (I) The Settlement Of Certain Rights Under Loan Agreements, and (II) The Sale of Certain Rights Under Loan Agreements, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **February 25, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Lori R. Fife, Esq., attorney for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **February 20, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: January 27, 2009
    New York, New York

                                /s/ Lori R. Fife
                                Lori R. Fife
                                WEIL, GOTSHAL & MANGES LLP
                                767 Fifth Avenue
                                New York, New York 10153
                                Telephone: (212) 310-8000
                                Facsimile: (212) 310-8007
                                Attorneys for Debtors
                                and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                          :
In re                                     :      Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :      08-13555 (JMP)
                                          :
                    Debtors.              :      (Jointly Administered)
                                          :
-----------------------------------------------------------------x
```

### DEBTORS' MOTION FOR ENTRY OF ORDER AUTHORIZING (I) THE SETTLEMENT OF CERTAIN RIGHTS UNDER LOAN AGREEMENTS, AND (II) SALE OF CERTAIN RIGHTS UNDER LOAN AGREEMENTS

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtor in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), respectfully represent:

### Background

1.      Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to

Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").  The

Debtors are authorized to operate their businesses and manage their properties as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "<u>U.S. Trustee</u>") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "<u>Creditors' Committee</u>").

3.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("<u>SIPA</u>") with respect to Lehman Brothers Inc.

("<u>LBI</u>").  A trustee appointed under SIPA (the "<u>SIPC Trustee</u>") is administering LBI's estate.

**<u>Jurisdiction</u>**

4.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**<u>Lehman's Business</u>**

5.      Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman has been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.  Its headquarters in New

York and regional headquarters in London and Tokyo are complemented by a network of offices

in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

6.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit

of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District

of New York in Support of First-Day Motions and Applications, filed on September 15, 2008

[Docket No. 2].

## LBT and the Loan Agreements

7.      LBT Varlik Yonetim Anonim Sirketi ("LBT") is an indirect, non-Debtor subsidiary of LBHI incorporated in the Republic of Turkey ("Turkey").  The majority of the equity of LBT is held by Lehman ALI Inc. ("Lehman ALI"),[1] which, in turn, is owned directly by LBHI.

8.      LBT's assets include an asset management license, a non-performing loan portfolio with a book value of approximately $66,200,000, and a cash balance of approximately $2,600,000.

9.      LBT's liabilities include approximately $69,400,000 in debt pursuant to two loan agreements (collectively the "Loan Agreements") with Lehman Brothers Bankhaus AG ("Bankhaus"), another indirect, non-Debtor subsidiary of LBHI, incorporated in Germany. Bankhaus had provided LBT with $30,000,000 pursuant to a Loan Agreement, dated March 14, 2008, and $50,000,000 pursuant to a Loan Agreement, dated March 27, 2008.  Bankhaus was placed in an insolvency proceeding in Germany on November 13, 2008.[2]

10.     The Debtors' records indicate that Bankhaus participated 100% of its interest in the Loan Agreements to Lehman Commercial Paper Inc. ("LCPI"), one of the Debtors, prior to the commencement of LCPI's chapter 11 case.  However, the lack of formal documentation of the participation has resulted in a dispute as to the ownership of the rights, title, interest and benefits arising under or in relation to the Loan Agreements (as defined more fully in the Deed and the Assignment Agreement (defined below), the "Receivables").

---

[1] Lehman ALI holds 9,999,996 of the 10,000,000 shares of LBT.  Lehman Brothers International (Europe) ("LBIE"), which is in administration in the United Kingdom, LB Turkey Holdings II LLC, LB Turkey Holdings III LLC and LB Turkey Holdings IV LLC each hold one share of LBT.

[2] Bankhaus is being administered by Michael C. Frege (the "Bankhaus Administrator").

## **The Proposed Transactions**

11.     Shortly after the commencement of these chapter 11 cases, Lehman determined that LBT's ability to repay LCPI amounts owed under the Loan Agreements was uncertain.  As a result, Lehman explored various options to improve LBT's financial situation and preserve LCPI's interest in the Receivables.  After considering several options, Lehman, with the assistance of their investment bankers, Lazard, Freres & Co. LLC ("Lazard"), began a concentrated effort to market LBT for sale to a third party.  In connection with their marketing efforts, Lehman and Lazard contacted a number of large investment banks.  Nine expressed initial interest.  Lehman established a virtual data room on October 27, 2008 to allow the interested parties to conduct due diligence.  Lehman received four proposals at the conclusion of the initial round of diligence.

12.     After reviewing the offers, Lehman concluded that an offer by Vector Holdings S.a.r.l. ("Vector"), a non-debtor, non-Lehman Luxembourg entity, provided the greatest recovery for LCPI's estate and creditors.  Vector offered to pay approximately 56,099,995 Turkish Lira (which, at the today's exchange rate, is worth approximately $34,800,000) to LCPI in consideration for the sale and assignment of all of LCPI's rights, title and interest in the Receivables.  Vector's purchase of the Receivables from LCPI is conditioned, however, on the concurrent consummation of two related transactions:  (i) Bankhaus' assignment to LCPI of any interest that Bankhaus may hold in the Receivables, and (ii) the sale of the equity interests in LBT to Vector (the "LBT Stock Sale"), pursuant to that certain Share Sale and Purchase Agreement, dated January 9, 2009.

### Relief Requested

13.     Pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9019, it is requested that the Court grant the following relief that will facilitate the proposed transactions and maximize returns to Lehman's creditors:

- First, authorize and approve, as a settlement and compromise, LCPI's purchase and acceptance from Bankhaus of any interest that Bankhaus may have in the Receivables, pursuant to that certain Deed of Assignment of Receivables (the "Deed"), dated January 12, 2009, a copy of which is attached hereto as Exhibit A.

- Second, authorize and approve LCPI's assignment and sale of the Receivables to Vector, free and clear of any liens, claims, encumbrances, and other interests, pursuant to that certain Assignment of Receivables Agreement (the "Assignment Agreement"), dated January 12, 2009, a copy of which is attached hereto as Exhibit B.

### Terms of the Proposed Transactions

14.     LCPI entered into the Deed with Bankhaus after extensive, arm's-length negotiations with the Bankhaus Administrator.  The salient terms and provisions of the Deed are as follows:[3]

- **Assignment Of Bankhaus' Interest In The Receivables.**  Subject to the Conditions, Bankhaus shall sell, assign, transfer, and convey absolutely and unconditionally to LCPI and LCPI shall purchase and accept the assignment, transfer and conveyance from Bankhaus of any interest that Bankhaus may have in the Receivables, free and clear of all liens, claims, encumbrances and other interests. Any potential participation arrangements regarding the Receivables shall be terminated.

---

[3] This summary of the Deed is qualified in its entirety by the terms and provisions of the Deed.  To the extent there are any inconsistencies between the description of the Deed contained herein and the terms and conditions of the Deed, the terms and conditions of the Deed shall control.  Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Deed.

- ▪ <u>Consideration</u>. Upon satisfaction of the Conditions and in consideration of the assignment of Bankhaus' interest in the Receivables, LCPI shall pay to Bankhaus one half (50%) of the total consideration due and payable under the Assignment Agreement between LCPI and Vector (the "<u>LCPI Assignment Consideration</u>" described below).

- ▪ <u>Prerequisites</u>. The obligations of LCPI to deliver to Vector the consideration described above is conditioned upon (i) the LCPI Assignment Consideration being due and payable, and (ii) Bankruptcy Court approval of the Deed pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

15.     LCPI likewise entered into the Assignment Agreement with Vector after extensive, arm's-length negotiations. The salient terms and provisions of the Assignment Agreement are as follows:[4]

- ▪ <u>Assignment and Sale Of LCPI's Interest In The Receivables</u>. Subject to the Conditions, LCPI shall assign, sell, transfer, and convey absolutely and unconditionally to Vector and Vector shall purchase and accept the assignment, transfer and conveyance from LCPI of any interest that LCPI may have in the Receivables free and clear of all liens, claims, encumbrances and other interests.

- ▪ <u>Consideration</u>. Upon satisfaction of the Conditions and in consideration of the assignment and sale, Vector shall pay to LCPI 56,099,995 Turkish Lira which, at the today's exchange rate, is worth approximately $34,800,000 (the "<u>LCPI Assignment Consideration</u>").

- ▪ <u>Prerequisites</u>. The obligations of Vector and LCPI under the Assignment Agreement shall be conditioned upon (i) Bankruptcy Court approval of the Deed and the Assignment Agreement, (ii) consummation of the Deed between Bankhaus and LCPI, and (iii) consummation of the LBT Stock Sale.

**The Terms of the Deed are Fair and Equitable, Fall Within the
Range of Reasonableness, and Are in the Best Interests of the Debtors' Estates**

16.     Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."[5] FED. R. BANKR.

---

[4] This summary of the Assignment Agreement is qualified in its entirety by the terms and provisions of the Assignment Agreement. To the extent there are any inconsistencies between the description of the Assignment Agreement contained herein and the terms and conditions of the Assignment Agreement, the terms and conditions of the Assignment Agreement shall control. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Assignment Agreement.

[5] Section 1107 of the Bankruptcy Code provides that a debtor in possession shall have all the rights and powers and shall perform all the functions and duties of a trustee serving in a chapter 11 case. See 11 U.S.C. § 1107(a).

P. 9019(a).  In ruling on a motion pursuant to Rule 9019(a), a court must find that the proposed

settlement is fair and equitable and is in the best interests of the estate.  Protective Comm. for

Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); Fisher v.

Pereira (In re 47-49 Charles St., Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997); In re Ionosphere

Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994).

17.     The decision to approve a particular settlement lies within the sound

discretion of the bankruptcy court.  Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994).  It is

the responsibility of a court to examine a settlement and determine whether it "falls below the

lowest point in the range of reasonableness."  Cosoff v. Rodman (In re W.T. Grant Co.), 699

F.2d 599, 608 (2d Cir. 1983); In re Spielfogel, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

Additionally, a court may exercise its discretion "in light of the general public policy favoring

settlements."  In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

18.     While a court must "evaluate … all … factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," Anderson, 390 U.S. at 424-25, a court

does not need to conduct a "mini-trial" of the merits of the claims being settled, W.T. Grant Co.,

699 F.2d at 608, nor does the court need to conduct a full independent investigation.  In re

Drexel Burnham Lambert Group, Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991).

19.     Although a court should not give the debtor in possession's opinion

conclusive effect, the court may give weight to the informed judgment of the trustee or debtor in

possession that a compromise is fair and equitable.  In re Purofied Down Prods. Corp., 150 B.R.

519, 522 (S.D.N.Y. 1993).  Accord In re Ashford Hotels Ltd., 226 B.R. 797, 802 (Bankr.

S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for

the Trustee's, but only that I test his choice for reasonableness…. If the Trustee chooses one of

two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other"). Moreover, "the bankruptcy judge does not have to decide the numerous questions of law and fact…. The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." Nellis, 165 B.R. at 123 (internal citations omitted).

20.    Entry into the Deed is in the best interests of LCPI's and Lehman's creditors. Title to the Receivables is clouded because there is no formal participation agreement between LCPI and Bankhaus. In an effort to resolve the uncertainty, the Debtors and the Bankhaus Administrator engaged in substantial negotiations. The resulting compromise, memorialized in the Deed, provides that LCPI and Bankhaus will divide the proceeds of the sale of the Receivables equally. While LCPI's recovery under the Deed is substantially less than the face value of the Loan Agreements, there is no guaranty that LCPI would prevail in a litigation with Bankhaus and recover any amount on account of the Loan Agreements. In addition, any litigation would be time consuming and costly.

21.    Even assuming LCPI could establish right and title to the Receivables, without the LBT Stock Sale, there is no certainty that LBT could repay its obligations under the Loan Agreements. Bankhaus' release of claims against and interest in the Receivables is an integral aspect of, and condition precedent to, the Assignment Agreement, LBT Stock Sale, and recovery for LCPI's creditors. Under the circumstances, the terms of the Deed are well within the range of reasonableness and in the best interests of LCPI, its estate, its creditors, and all parties in interest.

**LCPI's Assumption of the Loan Agreements and Assignment of the Receivables Pursuant to the Assignment Agreement Is an Appropriate Exercise of LCPI'S Business Judgment**

22.     Ample authority exists under section 363 of the Bankruptcy Code for approval of LCPI's assignment and sale of the Receivables pursuant to the Assignment Agreement.

23.     Section 363 of the Bankruptcy Code provides, in relevant part, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Courts in the Second Circuit and others, in applying this section have required that this determination be based upon the sound business judgment of the debtor.  See In re Chateaugay Corp., 973 F.2d 141, 144-45 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (same).  Bankruptcy Rule 6004(f)(1) permits private sales by a debtor, FED. R. BANKR. P. 6004(f)(1), and courts often allow a chapter 11 debtor to sell assets outside the ordinary course of business by private sale when the debtor demonstrates that the sale is permissible pursuant to section 363(b) of the Bankruptcy Code.[6]

24.     LCPI's decision to enter into the Assignment Agreement represents an appropriate exercise of LCPI's sound business judgment and is in the best interests of LCPI, its estate, its creditors, and all other parties in interest.  As such, the relief requested in this Motion

---

[6] See, e.g., In re Lehman Brothers Holdings Inc., Ch. 11 Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 18, 2008); In re Loral Space & Commc'ns Ltd., Ch. 11 Case No. 03-41710 (RDD) (Bankr. S.D.N.Y. Sep. 30, 2005); In re Int'l Wire Group, Inc., Ch. 11 Case No. 04-11991 (BRL) (Bankr. S.D.N.Y. June 10, 2004); Palermo v. Pritam Realty, Inc. (In re Pritam Reality, Inc.), 233 B.R. 619 (D.P.R. 1999) (upholding bankruptcy court's approval of private sale conducted by chapter 11 debtor); In re Wieboldt Stores, Inc., 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale); In re Condere Corp., 228 B.R. 615 (Bankr. S.D. Miss. 1998) (approving private sale of chapter 11 debtor's assets where standards of section 363(b) were met).

should be granted.  As described above, an orderly assignment and sale of LCPI's interest in the

Receivables, pursuant to the Assignment Agreement and in connection with the Deed and the

LBT Stock Sale, will maximize LCPI's realization of amounts due under the Loan Agreements

and result in an immediate recovery of funds into LCPI's estate.  The alternative of collecting

payments as they become due under the Loan Agreements over a significant period of time,

given LBT's deteriorating financial condition, is subject to substantial uncertainty and the risk of

default.

          25.      Pursuant to the proposed transactions, LCPI will net 56,099,995 Turkish

Lira, which, at the today's exchange rate, is worth approximately $34,800,000 (with 50% of that

amount going to Bankhaus pursuant to the Deed).  In light of the marketing efforts undertaken by

the Debtors in connection with the sale of LBT, the Debtors are confident that the consideration

to be paid by Vector to LCPI (i) represents the best offer for the Receivables, (ii) is fair and

reasonable, and (iii) will provide for a greater recovery for LCPI's creditors than would be

provided by any other practical, available alternative.  Although Lehman received one offer that

contained a higher cash component, that offer was subject to significant further diligence by the

bidder and additional conditions, representations, and warranties.  Lehman discounted its value

based on its belief that the offer would be reduced following further diligence.

          26.      Moreover, the exigent circumstances surrounding these chapter 11 cases

support Lehman's decision to pursue a private sale.  First, given the general instability in the

financial and credit markets and the grim outlook for the global economy in general, the market

for the Receivables is extremely limited.  Indeed, the sale of the Receivables is conditioned upon

the concurrent LBT Stock Sale and it would be unlikely that one sale could be accomplished

independent of the other.

27.    In addition, the time and efforts associated with marketing the Receivables

for sale at a public auction would needlessly duplicate the previous efforts made by Lehman and

Lazard and would far exceed any benefit of a public sale to LCPI, its estate or its creditors.

**Sale of the Receivables Free and Clear of Liens, Claims, Encumbrances,
and Interests Pursuant to Section 363(f) of the Bankruptcy Code Is Appropriate**

28.    As a condition to consummation of the sale of the Receivables, LCPI must

obtain authority to sell the Receivables free and clear of any and all liens, claims, encumbrances

and other interests.  It is appropriate for the Loan Agreements and the Receivables to be sold to

Vector free and clear of liens, claims, encumbrances and other interests pursuant to section

363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances or other interests

attaching to the proceeds of such sale. See MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89,

94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free

and clear of third-party interests, the third party is adequately protected if his interest is

assertable against the proceeds of the disposition.); Circus Time, Inc. v. Oxford Bank & Trust (In

re Circus Time, Inc.), 5 B.R. 1, 8 (Bankr. D. Me. 1979) (finding the court's power to sell

property free and clear of liens has long been recognized); see also In re Riverside Inv. P'ship,

674 F.2d 634, 640 (7th Cir. 1982) ("Generally, in a 'free and clear' sale, the liens are impressed

on the proceeds of the sale and discharged at the time of sale.").

29.    Section 363(f) of the Bankruptcy Code provides,

The trustee may sell property under subsection (b) or (c) of this section free and

clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and

clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be

sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to

accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Because section 363(f) is stated in the disjunctive, when selling property of

the estate, it is only necessary to meet one of the five conditions of that section.

30.    LCPI is not aware of any liens, claims, encumbrances or other interests

held by any party in respect of the Receivables other than the previously discussed interest of

Bankhaus.  Pursuant to the Deed, LCPI and Bankhaus have agreed to settle any claims that

Bankhaus may have to the Receivables.  Upon Court approval of the settlement memorialized in

the Deed, Bankhaus' interest in the Receivables will be extinguished.

31.    To the extent that the Receivables are subject to any other valid interest,

the Court should authorize the sale of the Receivables free and clear of any and all liens, claims,

encumbrances and other interests with any of the same to be transferred and attached to the net

proceeds of the Receivables, with the same validity and priority that such liens, claims,

encumbrances and other interests had against the Receivables.  Any party that may hold such an

interest in the Receivables (of which LCPI is unaware) could be compelled to accept a money

satisfaction of such interest.  Thus the sale of the Receivables free and clear of liens, claims,

encumbrances and other interests will satisfy the statutory prerequisites of section 363(f) of the

Bankruptcy Code.

## Vector Is Entitled to Protection as a Good Faith Purchaser

32.    Section 363(m) of the Bankruptcy Code protects the sale of a debtor's

property to a good faith purchaser.  Specifically, it provides:

> The reversal or modification on appeal of an authorization under subsection (b) or
> (c) of this section of a sale or lease of property does not affect the validity of a
> sale or lease under such authorization to an entity that purchased or leased such
> property in good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were stayed pending
> appeal.

11 U.S.C. § 363(m).

33.    Although the Bankruptcy Code does not define the meaning of "good-faith

purchaser," most courts have adopted a traditional equitable definition:  "one who purchases the

assets for value, in good faith and without notice of adverse claims."  See, e.g., Licensing by

Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 390 (2d Cir. 1997).  The Second Circuit has

stated:

> Good faith of a purchaser is shown by the integrity of his conduct during the
> course of the sale proceedings; where there is a lack of such integrity, a good faith
> finding may not be made.  A purchaser's good faith is lost by 'fraud, collusion
> between the purchaser and other bidders or the trustee, or an attempt to take
> grossly unfair advantage of other bidders.'

Id. (internal citations omitted).

34.    The terms and conditions of the Assignment Agreement were negotiated

by LCPI and Vector at arms' length and in good faith.  Each party was represented by

sophisticated counsel.  Vector has not, in connection with the Assignment Agreement, engaged

in any conduct that demonstrates a lack of good faith and Vector is not an "insider" or "affiliate"

of any of the Debtors (within the meaning of the Bankruptcy Code).  Accordingly, Vector is

entitled to the protections of section 363(m) of the Bankruptcy Code.

## Notice

35.     The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on September 22, 2008 governing case management and administrative procedures for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) attorneys for Vector; (vii) Michael C. Frege, Insolvency Administrator for Bankhaus; (viii) all parties that expressed an interest in purchasing the Receivables and/or LBT, and (ix) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

36.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the relief requested herein and granting such other and further relief as is just.

Dated: January 27, 2009
     New York, New York

<div style="margin-left:45%">

/s/ Lori R. Fife
Lori R. Fife
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Debtors
and Debtors in Possession

</div>

## **Exhibit A**

**Assignment Agreement**

## ASSIGNMENT OF RECEIVABLES AGREEMENT

**THIS ASSIGNMENT OF RECEIVABLES AGREEMENT** (the "**Agreement**") is entered into on 12 January 2009.

**BY AND BETWEEN:**

(1)     **LEHMAN COMMERCIAL PAPER, INC., LONDON BRANCH** a New York corporation (the "**Assignor**"); and

(2)     **VECTOR HOLDINGS S.A.R.L.**, a special purpose company established in Luxembourg (the "**Assignee**")

The Assignor and the Assignee shall hereinafter collectively be referred to as the "**Parties**" and individually as a "**Party**".

**WHEREAS**

Pursuant to the LBB Assignment (defined below), Michael C. Frege, in his capacity as insolvency administrator of Lehman Brothers Bankhaus Aktiengesellschaft ("**LBB**") (the insolvency administrator, "**Administrator**") assigned the Receivables (as defined in the LBB Assignment) to the Assignor.

The Assignor now wishes to assign and the Assignee wishes to accept assignment of the Receivables on the terms and conditions of this Agreement.

**NOW THEREFORE**, in consideration of the mutual promises and covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

**THE PARTIES HEREBY COVENANT AND AGREE AS FOLLOWS:**

**1      DEFINITIONS AND INTERPRETATION**

**1.1     Definitions**

In this Agreement, the following terms shall have the meanings set out against them:

"**Business Day**" a day, other than Saturday or Sunday, on which banks are open for business in London, Frankfurt and Istanbul;

"**Completion**" has the meaning as defined in the Sale and Purchase Agreement;

"**Completion Date**" has the meaning as defined in the Sale and Purchase Agreement;

"**Debtor**" LBT Varlık Yönetim Anonim Şirketi, a joint stock company incorporated and validly existing under the laws of the Republic of Turkey with its registered office at Suleyman Seba Cad. No. 48 A Blok B2.07 Besiktas, Istanbul, Turkey;

"**Law**" means any legislation, common or customary law, constitution, decree, judgment, ruling, order, ordinance, treaty or other legislative measure, decision of a court of law in any

jurisdiction and any directive, request, requirement, guidance or guideline (in each case, whether or not having the force of law but, if not having the force of law, compliance with which is in accordance with the general practice of persons to whom the directive, request, requirement, guidance or guideline is addressed).

"**LBB Assignment**" the executed irrevocable assignment of receivables made by the Administrator in favour of the Assignor, the transactions under which shall be consummated simultaneously with and subject to completion of the Sale and Purchase Agreement as attached in Schedule 3.

"**Loan Agreements**" the following loan agreements entered into by and between LBB and the Debtor:

(a)     the loan agreement dated 14 March 2008 under which a loan in the amount of USD 30,000,000 has been provided by LBB to the Debtor; and

(b)     the loan agreement dated 27 March 2008 under which a loan in the amount of USD 50,000,000 has been provided by LBB to the Debtor;

"**Receivables**" all rights, title interest and benefits of the Assignor arising under or in relation to the Loan Agreements, including without limitation:

(a)     all rights to receive repayments of principal, payable as of Completion Date or in the future, arising under or pursuant to the Loan Agreements; and

(b)     all rights to receive interest payments, payable as of Completion Date or in the future, arising under or pursuant to the Loan Agreements;

"**Regulatory Approvals**" all regulatory approvals as may be agreed upon and required in connection with the Sale and Purchase Agreement in order to complete the transactions under the Sale and Purchase Agreement and this Agreement; and

"**Sale and Purchase Agreement**" the Share Sale and Purchase Agreement to be entered into by and between Lehman Brothers Ali Inc. as the seller and Vector Holdings S.A.R.L as the buyer on or after 9 January, 2009 with regards to the sale and transfer of the shares of the Debtor.

## 1.2     Interpretation

In this Agreement:

(a)     headings are included for convenience only and do not affect the construction of this Agreement;

(b)     words denoting the singular include the plural and vice versa;

(c)     references to agreements, including without limitation this Agreement, the Sale and Purchase Agreement and the Loan Agreements, are references to such agreements as modified, supplemented or novated from time to time; and

**(d)**     unless otherwise expressly provided, references to Clauses and Schedules are references to Clauses of and Schedules to this Agreement and references to this Agreement include its Schedules.

## 2     ASSIGNMENT OF RECEIVABLES

**2.1**     With effect from the satisfaction of the Conditions (as defined in Clause 4 below), the Assignor hereby irrevocably, absolutely and unconditionally assigns to the Assignee simultaneously with Completion on Completion Date, the Receivables.

**2.2**     With effect from the satisfaction of the Conditions, the Assignee hereby accepts the assignment hereunder and acquires the Receivables simultaneously with Completion on Completion Date subject to the terms and conditions of this Agreement.

## 3     CONSIDERATION

**3.1**     Subject to the satisfaction of the Conditions in Clause 4 below, in consideration of the assignment of the Receivables by the Assignor to the Assignee, the Assignee shall pay an amount equal to the LCPI Assignment Consideration (as such term is defined in the Sale and Purchase Agreement) in accordance with Clauses 3.2 and 3.3 below.

**3.2**     An amount equal to 50% of the LCPI Assignment Consideration shall be paid to:

| | |
|---|---|
| Owner: | RA Frege fuer Lehman Brothers Bankhaus AG |
| Bank: | Deutsche Bank AG, Frankfurt am Main |
| Sort Code (BLZ): | 50070024 |
| Account no.: | 0248989 06 |
| IBAN: | DE54500700240024898906 |
| SWIFT: | DEUTDEDBFRA |

**3.3**     An amount equal to 50% of the LCPI Assignment Consideration shall be paid to an account designated by the Assignor, the details of which shall be notified by the Assignor to the Assignee (the "**LCPI Payment Amount**").

## 4     CONDITIONS TO COMPLETION

**4.1**     The obligations of the Parties under Clauses 2 and 3 above shall be conditional upon the following conditions (the "**Conditions**") having been fulfilled (or waived in accordance with this Clause 4):

**(a)**     the Court Order contemplated by Clause 5 below shall have been issued by the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**");

**(b)**     the simultaneous consummation of the transactions contemplated by the LBB Assignment; and

**(c)**     the simultaneous occurrence of the Completion.

**4.2**     For the avoidance of doubt, if the conditions set out in Clauses 4.1 above have been fulfilled (or waived in accordance with this Clause 4), then the Parties shall be required to perform their obligations under Clauses 2 and 3 above immediately.

**4.3**   The Assignor shall give written notice to the Assignee of the satisfaction of the Conditions set out in Clause 4.1 above promptly after the Assignor becomes aware of the satisfaction of such Conditions (and in any event within one (1) Business Day of it becoming so aware) and shall provide such evidence to the Assignee as the Assignee reasonably requests in order to confirm the satisfaction or non-satisfaction of such Conditions.

**4.4**   If the Conditions set out in Clause 4.1 above have not been fulfilled (or waived in accordance with this Clause 4) by 30 April 2009 (or such later date as the Assignor and the Assignee agree in writing), then either the Assignor or the Assignee may terminate this Agreement by written notice to the other party.

**4.5**   If the LBB Assignment is terminated in accordance with its terms at any time prior to Completion, then this Agreement shall automatically terminate.

## 5   BANKRUPTCY COURT APPROVAL

The Assignor undertakes (at its own cost) to use its reasonable endeavours to file with the Bankruptcy Court, not later than ten (10) Business Days after the date of this Agreement, a motion seeking entry of an order, in form and substance reasonably acceptable to the Assignee (the **"Court Order"**), (i) approving, pursuant to Sections 363 and 365 of the United States Bankruptcy Code and Rule 9019 of the Federal Rule of Bankruptcy Procedure, the sale and assignment by the Assignor of the Receivables pursuant to, and in accordance with the terms of, this Agreement; (ii) approving the split of the LCPI Assignment Consideration between the Assignor and LBB; and (iii) approving all of the corporate actions of the Assignor in connection with the sale of the Receivables. The Assignor shall use its reasonable endeavours to: (i) cause such Court Order to be issued and entered, and (ii) timely serve a copy of the notice setting forth the hearing date for approval of such Court Order upon any and all parties in interest required to receive notice under all applicable laws, rules and regulations and orders of the Bankruptcy Court prior to the hearing on such motion. The Assignor further undertakes that it will give notice immediately to the Assignee upon the receipt of such Court Order and to keep the Assignee reasonably informed as to the progress of the court procedures relating to the Court Order.

## 6   NOTIFICATION AND ACKNOWLEDGMENT

**6.1**   The Assignor undertakes to serve a notice of assignment (the **"Notice of Assignment"**) within seven (7) Business Days of the Completion Date to the Debtor in the form and substance of Schedule 1, notifying the Debtor of the assignment of the Receivables.

**6.2**   The Assignor and the Assignee shall use reasonable endeavours to procure that the Debtor issues an acknowledgment letter (the **"Acknowledgment Letter"**) in the form and substance of Schedule 2 upon receipt of the Notice of Assignment.

## 7   REPRESENTATIONS AND WARRANTIES OF THE ASSIGNOR

Subject to receiving approval of the Bankruptcy Court in accordance with Clause 5 (*Bankruptcy Court Approval*), the Assignor represents, warrants and covenants to the Assignee as of the date of receiving such approval and on Completion Date that:

**7.1**    the Assignor has the necessary power to enable it to enter into and perform the obligations set forth under this Agreement and the Assignor has duly executed and delivered this Agreement; and

**7.2**    the obligations expressed to be assumed by the Assignor in this Agreement are legal, valid, binding and enforceable obligations.

## 8    REPRESENTATIONS AND WARRANTIES OF THE ASSIGNEE

The Assignee represents, warrants and covenants to the Assignor as of the date of this Agreement and on Completion Date that:

**8.1**    there are no restrictions on the Assignee's ability to acquire all or any of the Receivables from the Assignor;

**8.2**    the Assignee has the necessary power to enable it to enter into and perform the obligations set forth under this Agreement and the Assignee has duly executed and delivered this Agreement;

**8.3**    the obligations expressed to be assumed by the Assignee in this Agreement are legal, valid, binding and enforceable obligations; and

**8.4**    the Assignee shall, as an independent obligation, indemnify and hold harmless the Assignor on demand against any and all losses, costs, expenses and damages suffered or incurred by the Assignor as a result of anything done or omitted to be done in the exercise or attempted exercise of the Assignee's powers contained in this Agreement or resulting from any breach by the Assignee of any of Assignee's representations, warranties, obligations or undertakings contained in this Agreement.

## 9    MISCELLANEOUS

**9.1**    This Agreement and all documents delivered as part of or incident to this Agreement or which are incorporated into it by reference constitute and contain the entire agreement between the Parties hereto and supersede any and all prior agreements, arrangements and understandings between the Parties relating to the subject matter of this Agreement.

**9.2**    The Schedules hereto constitute an essential and integral part of this Agreement with binding force on the Parties.

**9.3**    No amendment of any provision of this Agreement shall be effective unless it is in writing and signed by both Parties.

**9.4**    No failure or delay on the part of either Party to exercise any power, right or remedy under or in connection with this Agreement shall operate as a waiver, nor shall any single or partial exercise of such power, right or remedy preclude any other or further exercise of it or any other power, right or remedy.  The remedies provided in this Agreement are cumulative and not exclusive of any remedies provided by law.  No waiver of any provision of this Agreement, and no consent to any departure by either of the Parties therefrom, shall be effective unless it is in writing, and signed by the other Party.

**9.5**    Each of the provisions contained in this Agreement shall be severable and distinct from one another and if at any time any provision of this Agreement is or becomes illegal,

invalid or unenforceable in any respect, the legality, validity and enforceability of the remaining provisions contained herein shall remain in force and shall not in any way be affected or impaired, and promptly thereafter the Parties shall negotiate in good faith to replace such provision with a valid and enforceable provision having substantially the same economic and legal effect upon the Parties.

**9.6**    Any and all taxes, duties and charges payable hereunder in Turkey or Luxembourg only shall be borne and paid by the Assignee.    Payment of the LCPI Assignment Consideration shall be made free from any costs, set-off, counterclaim or other deduction or withholding of any nature whatsoever required to be made by the applicable Law of Turkey or Luxembourg.    If any deductions or withholdings from such payment are required to be made by applicable Law in Turkey or Luxembourg, the amount of the payment shall be increased by such amount as will, after the deduction or withholding has been made, leave the Assignor with the same amount as it would have been entitled to receive in the absence of any such requirement to make a deduction or withholding.

**9.7**    The Assignor shall not disclose to any third party either the existence of this Agreement or the terms and conditions of this Agreement unless such disclosure is: (i) to Lehman Brothers Bankhaus Aktiengesellschaft (**"LBB"**); (ii) to Michael C. Frege as insolvency administrator over the assets of LBB; (iii) expressly consented to by the Assignee in writing to the Assignor; or (iv) is required by law or pursuant to the demand of a regulatory authority.

**10    NOTICES**

**10.1**    Communications in Writing

**(a)**    Any communication to be made under or in connection with this Agreement shall be made in writing and, unless otherwise stated, may be made by fax or letter.

**(b)**    If any communication is made by fax pursuant to this Clause 11.1, the sender of the fax communication undertakes to ensure that the original of such communication is promptly delivered to the receiver of such fax communication.

**10.2**    Notices

**(a)**    Any communication or document made or delivered by one Party to the other under or in connection with this Agreement will only be effective:

    **(i)**    if by way of fax, when received in legible form; or

    **(ii)**    if by way of letter, the earlier of the date when it is left at or delivered to the recipient's address and five (5) Business Days after being posted (postage prepaid in a correctly addressed envelope).

**(b)**    If a particular department or officer is specified as part of the recipient's address details provided below, any communication or document made or delivered by one Party to the other under or in connection with this Agreement will only be effective if addressed to that department or officer.

**(c)**    Unless otherwise notified by a Party in writing giving at least five (5) Business Days' notice of such change, any communication or document made or delivered by one

Party to the other under or in connection with this Agreement should be sent or delivered as follows:

If to the Assignor:

**LEHMAN COMMERCIAL PAPER, INC., LONDON BRANCH**

| | | |
|---|---|---|
| Attention | : | William McLoughlin |
| Address | : | 1271 Sixth Avenue |
| | | New York, NY 10020 |
| Fax | : | 646-758-5673 |

If to the Assignee:

**VECTOR HOLDINGS S.A.R.L**

| | | |
|---|---|---|
| Attention | : | Brian ~~McMohan~~ McMahon |
| Address | : | 6 rue Philippe II L2340, Luxembourg |
| Fax | : | 352-27-11-00-99 |

**10.3**   Non-Business Days

A notice or other communication received on a non-Business Day or after normal business hours in the country of receipt shall be deemed to be to have been received on the following Business Day.

**11    GOVERNING LAW AND JURISDICTION**

**11.1**   The formation, validity, performance and interpretation of this Agreement and of each Clause and part thereof shall be governed by and construed in accordance with the laws of England.

**11.2**   The Parties irrevocably agree that the courts of England shall have exclusive jurisdiction to settle any disputes which may arise out of or in connection with this Agreement and that accordingly any lawsuit, action or proceeding arising out of or in connection with this Agreement may be brought in such courts.

**12    ASSIGNMENT ON COMPLETION**

**12.1**   This Agreement is signed on the same date with the Sale and Purchase Agreement and the Parties hereto are aware and agree that the Completion is subject to, amongst other conditions, obtainment of the Regulatory Approvals. The Assignee is also aware and agrees that the assignment of the Receivables shall take place only if and when the Completion occurs and the Assignor shall not assume any liability or obligation whatever under this Agreement should the Completion not take place on Completion Date.

**12.2**   The Parties hereby acknowledge upon Completion the Receivables shall be duly assigned to the Assignee without the need for any further agreement.

**12.3**   This Agreement shall automatically terminate upon the termination of the Sale and Purchase Agreement prior to Completion.

## 13    THIRD PARTY RIGHTS

**13.1**    A person who is not a party to this Agreement shall not have any rights under or in connection with it by virtue of the Contracts (Rights of Third Parties) Act 1999 but this does not affect any right or remedy of a third party which exists, or is available, apart from that Act.

**13.2**    The rights of the Parties to terminate, rescind or agree any variation, waiver or settlement under this Agreement is not subject to the consent of any person that is not a party to this Agreement.

## 14    COUNTERPARTS

This Agreement may be executed by the Parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, and all of which together shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed by their duly authorised representatives as of the day and year first above written.

**LEHMAN COMMERCIAL PAPER, INC., LONDON BRANCH**

_(as the Assignor)_

By        : DAVID J. COLES
Title     : CFO
Signature :

**VECTOR HOLDINGS S.A.R.L.**

_(as the Assignee)_

By        :
Title     :
Signature :

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed by their duly authorised representatives as of the day and year first above written.


**LEHMAN COMMERCIAL PAPER, INC., LONDON BRANCH**



(as the Assignor)

By              :
Title           :
Signature       :


**VECTOR HOLDINGS S.A.R.L.**


(as the Assignee)

By              : Brian McMahon
Title           : Director
Signature       :

**SCHEDULE 1**

**FORM OF NOTICE OF ASSIGNMENT**

To:   LBT Varlık Yönetim Anonim Şirketi
      Suleyman Seba Cad. No. 48 A Blok B2.07
      Besiktas Istanbul, Turkiye

[Date]

We refer to the loan agreements dated 14 March 2008 and 27 March 2008 entered into by and between you as borrower and Lehman Brothers Bankhaus AG, London Branch ("**LBB**") as lender under which loans in the amount of USD 30,000,000 and USD 50,000,000 respectively have been made available by us to you (the "**Loan Agreements**").

By a deed of assignment dated      January 2009, Michael C. Frege in his capacity as insolvency administrator of LBB assigned all rights, title, interest and benefits in and to the receivables due to LBB under the Loan Agreements, in favour of Lehman Commercial Paper, Inc., London branch.

In accordance with the provisions of the Assignment of Receivables Agreement dated January 2009 and entered into by and between us as assignor (the "**Assignor**") and Vector Holdings S.A.R.L as assignee (the "**Assignee**") (the "**Assignment Agreement**"), all rights, title, interest and benefits in and to the receivables due to the Assignor under the Loan Agreements (the "**Receivables**") have been irrevocably, absolutely and unconditionally assigned to the Assignee. A copy of the Assignment Agreement is provided to you together with this notice.

Upon your receipt of a written notice from the Assignee, we hereby irrevocably instruct and authorize you with immediate effect to make all payments arising from the Loan Agreements to any bank account which the Assignee may from time to time notify to you, without requiring any further consent or authorization from the Assignor or from any other party.

Please confirm your acceptance of the above by countersigning the Acknowledgment Letter which follows our signature.

**LEHMAN COMMERCIAL PAPER, INC., LONDON BRANCH**

By          :
Title       :
Signature   :

LO1-744052/02/FY44/21:DOC:54599.0003

**SCHEDULE 2**

**FORM OF ACKNOWLEDGMENT LETTER**

Vector Holdings S.A.R.L
6 rue Philippe II L2340
Luxembourg

[Date]

We refer to the notice of assignment (the "**Notice of Assignment**") dated [_____] issued by **LEHMAN COMMERCIAL PAPER, INC., LONDON BRANCH** (the "**Assignor**") pertaining to the irrevocable, absolute and unconditional assignment of the Receivables (as defined in the Notice of Assignment) to you.

We hereby accept and acknowledge the notification and the instructions contained in the Notice of Assignment and we undertake to act in accordance with and to comply with such instructions and we hereby confirm that we have taken notice of the assignment of the Receivables and that as at the date hereof, that we have not received notice of any assignment, charge, mortgage or other security interest created in favour of any other third party of or over the Receivables.

Furthermore, we accept such assignment and we hereby agree, undertake and warrant that upon receipt by us of a written request from [name of the Assignee], any payment relating to the Receivables shall be made to any bank account to be notified by you, without requiring any further consent or authorization from the Assignor or from any other party.

LBT Varlık Yönetim Anonim Şirketi

By          :
Title       :
Signature   :

LО1-744052:02:FY44:02:DOC:58299:0003

**SCHEDULE 3**

**EXECUTED LBB ASSIGNMENT**

LON:744052/02-FY44x02-DOC\SK9x0.0003

## Exhibit B

**Deed**

Execution Version

## DEED OF ASSIGNMENT OF RECEIVABLES

**THIS DEED OF ASSIGNMENT OF RECEIVABLES** (the "Deed") is entered into on 12 January 2009.

**BY AND BETWEEN:**

(1)   **MICHAEL C. FREGE**, with business address at Barckhausstrasse 12-16, 60325 Frankfurt am Main, Federal Republic of Germany, in his capacity as insolvency administrator over the assets of Lehman Brothers Bankhaus Aktiengesellschaft, a stock corporation incorporated under German law, with business address Rathenauplatz 1, 60313 Frankfurt am Main, Federal Republic of Germany, registered with the commercial register of the Frankfurt am Main Local Court, HRB 28139 (the "**Assignor**"); and

(2)   **LEHMAN COMMERCIAL PAPER INC., LONDON BRANCH** an English branch of a New York corporation with registered branch number BR007944 and whose address is 25 Bank Street, London E14 5LE, United Kingdom (the "**Assignee**").

The Assignor and the Assignee shall hereinafter collectively be referred to as the "**Parties**" and individually as a "**Party**".

**WHEREAS**

The Assignor wishes to assign and the Assignee wishes to accept assignment of the Receivables on the terms and conditions of this Deed.

**NOW THEREFORE**, in consideration of the mutual promises and covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

**THE PARTIES HEREBY COVENANT AND AGREE AS FOLLOWS:**

**1   DEFINITIONS AND INTERPRETATION**

**1.1   Definitions**

In this Deed, the following terms shall have the meanings set out against them:

"**Bankruptcy Court**" the Bankruptcy Court for the Southern District of New York, United States of America;

"**Business Day**" a day, other than Saturday or Sunday, on which banks are open for business in London, Frankfurt and Istanbul;

"**Completion**" has the meaning as defined in the Sale and Purchase Agreement;

**Execution Version**

"**Completion Date**" has the meaning as defined in the Sale and Purchase Agreement;

"**Debtor**" LBT Varlık Yönetim Anonim Şirketi, a joint stock company incorporated and validly existing under the laws of the Republic of Turkey with its registered office at Suleyman Seba Cad. No. 48 A Blok B2.07 Besiktas, Istanbul, Turkey;

"**Loan Agreements**" the following loan agreements entered into by and between the Assignor and the Debtor:

(a)     the loan agreement dated 14 March 2008 under which a loan in the amount of USD 30,000,000 has been provided by the Assignor to the Debtor; and

(b)     the loan agreement dated 27 March 2008 under which a loan in the amount of USD 50,000,000 has been provided by the Assignor to the Debtor;

"**LCPI Assignment**" the irrevocable assignment of receivables (the final draft to be provided to the Assignor prior to its execution) made by the Assignee in favour of a third party as assignee to become effective simultaneously with and subject to Completion.

"**Receivables**" all rights, title, interest and benefits of the Assignor arising under or in relation to the Loan Agreements, including without limitation:

(a)     all rights to receive repayments of principal, payable as of Completion Date or in the future, arising under or pursuant to the Loan Agreements; and

(b)     all rights to receive interest payments, payable as of Completion Date or in the future, arising under or pursuant to the Loan Agreements;

"**Regulatory Approvals**" all regulatory approvals as may be agreed upon and required in connection with the Sale and Purchase Agreement in order to complete the transactions under the Sale and Purchase Agreement and the LCPI Assignment; and

"**Sale and Purchase Agreement**" the Share Sale and Purchase Agreement entered into by and between Lehman ALI Inc. as the seller and a third party as the buyer on or before the date hereof with regards to the sale and transfer of the shares of the Debtor.

## 1.2   Interpretation

In this Deed:

(a)     headings are included for convenience only and do not affect the construction of this Deed;

(b)     words denoting the singular include the plural and vice versa;

(c)     references to deeds and agreements, including without limitation this Deed, the Sale and Purchase Agreement and the Loan Agreements, are references to such deeds or agreements as modified, supplemented or novated from time to time; and

(d)     unless otherwise expressly provided, references to Clauses and Schedules are references to Clauses of and Schedules to this Deed and references to this Deed include its Schedules.

Execution Version

## 2    ASSIGNMENT OF RECEIVABLES

**2.1**    The Assignor hereby irrevocably, absolutely and unconditionally assigns to the Assignee with effect as from the receipt by the Assignor of the Bankhaus Transfer Amount (as defined in Clause 3.1 below) the Receivables.

**2.2**    The Assignee hereby accepts the assignment hereunder.

**2.3**    Upon the assignment agreed in Clauses 2.1 and 2.2 becoming effective, any potential sub-participation arrangements regarding the Receivables between the Assignor and the Assignee shall be terminated. The Parties agree that this Clause 2.3 or any other provision in this Deed shall not be construed to indicate or evidence that such a sub-participation arrangement between the Assignor and the Assignee actually exists or does not exist.

**2.4**    The Assignee shall notify the Assignor in advance of the transfer of the Bankhaus Transfer Amount and the Assignor undertakes to notify the Assignee promptly upon receipt of the Bankhaus Transfer Amount that is has received the Bankhaus Transfer Amount and that the assignment of the Receivables under Clause 2 hereof has become effective.

## 3    CONSIDERATION

**3.1**    Subject to the satisfaction of the conditions in Clause 3.2 below, the Assignee shall instruct the assignee under the LCPI Assignment to pay to the account of the Assignor with the following account details

| | |
|---|---|
| Owner: | RA Frege fuer Lehman Brothers Bankhaus AG |
| Bank: | Deutsche Bank AG, Frankfurt am Main |
| Sort Code (BLZ): | 50070024 |
| Account no.: | 0248989 06 |
| IBAN: | DE54500700240024898906 |
| SWIFT: | DEUTDEDBFRA |

an amount equal to 50% of the total consideration due and payable under the LCPI Assignment (the total consideration due under the LCPI Assignment, the "**LCPI Assignment Consideration**" and the amount to be transferred to the bank account of the Assignor, the "**Bankhaus Transfer Amount**"), while the Assignee shall be entitled to the remaining amount of the LCPI Assignment Consideration.

**3.2**    The Assignee's undertaking under Clause 3.1 shall only become legally effective upon (i) the Court Order (as set out in Clause 4) having become effective and (ii) the consideration under the LCPI Assignment being due and payable.

**3.3**    The Assignee hereby confirms that the LCPI Assignment Consideration will be in an amount equal to or higher than US$33,000,000 (United States dollars thirty three million).

**3.4**    If the conditions under Clause 3.2 have not been satisfied by 30 April, 2009 (or such later date as the Assignor and the Assignee agree in writing), either the Assignor or the Assignee may terminate this Deed by written notice to the other party.

Execution Version

## 4   BANKRUPTCY COURT APPROVAL

The Assignee undertakes, subject to the execution of the deed of assignment for the LCPI Assignment, to use its reasonable endeavours to file with the Bankruptcy Court, not later than ten (10) Business Days after the date of this Deed, a motion seeking entry of an order, in form and substance reasonably acceptable to the Assignor (the "**Court Order**"), approving pursuant to Sections 363 and 365 of the United States Bankruptcy Code and Rule 9019 of the Federal Rule of Bankruptcy Procedure, inter alios the payment scheme regarding the Bankhaus Transfer Amount as agreed between the Assignor and the Assignee in Clause 3.1 above. The Assignee shall use its reasonable endeavours to: (i) cause such Court Order to be issued and entered, and (ii) timely serve a copy of the notice setting forth the hearing date for approval of such Court Order upon any and all parties in interest required to receive notice under all applicable laws, rules and regulations and orders of the Bankruptcy Court prior to the hearing on such motion.

## 5   INDEMNIFICATION

The Assignor shall indemnify the Assignee against, and hold the Assignee harmless from, any and all damages, liabilities and claims caused or incurred as a result of the Assignor not effectively transferring title to the Receivables to the Assignee as provided for under this Deed. The Assignor's obligation to indemnify the Assignee under the preceding sentence shall be conditional upon the Assignor having received the Bankhaus Transfer Amount and shall be limited to an aggregate maximum amount equal to the Bankhaus Transfer Amount.

## 6   NOTIFICATION AND ACKNOWLEDGMENT

**6.1**   The Assignor undertakes to serve a notice of assignment (the "**Notice of Assignment**") within three (3) Business Days of receipt of the Bankhaus Transfer Amount to the Debtor in the form and substance of Schedule 1, notifying the Debtor of the assignment of the Receivables.

**6.2**   The Assignor and the Assignee shall use reasonable endeavours to procure that the Debtor issues an acknowledgment letter (the "**Acknowledgment Letter**") in the form and substance of Schedule 2 upon receipt of the Notice of Assignment.

## 7   MISCELLANEOUS

**7.1**   This Deed and all documents delivered as part of or incident to this Deed or which are incorporated into it by reference constitute and contain the entire agreement between the Parties hereto and supersede any and all prior agreements, arrangements and understandings between the Parties relating to the subject matter of this Deed.

**7.2**   The Schedules hereto constitute an essential and integral part of this Deed with binding force on the Parties.

**7.3**   No amendment of any provision of this Deed shall be effective unless it is in writing and signed by both Parties.

**7.4**   No failure or delay on the part of either Party to exercise any power, right or remedy under or in connection with this Deed shall operate as a waiver, nor shall any single or partial exercise of such power, right or remedy preclude any other or further exercise of it or any other power, right or remedy. The remedies provided in this Deed are cumulative and not

**Execution Version**

exclusive of any remedies provided by law. No waiver of any provision of this Deed, and no consent to any departure by either of the Parties therefrom, shall be effective unless it is in writing, and signed by the other Party.

**7.5**    Each Party shall be responsible for its own costs and expenses (including legal fees) incurred in connection with this Deed and the transactions contemplated by the LCPI Assignment.

**7.6**    Each of the provisions contained in this Deed shall be severable and distinct from one another and if at any time any provision of this Deed is or becomes illegal, invalid or unenforceable in any respect, the legality, validity and enforceability of the remaining provisions contained herein shall remain in force and shall not in any way be affected or impaired, and promptly thereafter the Parties shall negotiate in good faith to replace such provision with a valid and enforceable provision having substantially the same economic and legal effect upon the Parties.

## 8    NOTICES

**8.1**    Communications in Writing

**(a)**    Any communication to be made under or in connection with this Deed shall be made in writing and, unless otherwise stated, may be made by fax or letter.

**(b)**    If any communication is made by fax pursuant to this Clause 8.1, the sender of the fax communication undertakes to ensure that the original of such communication is promptly delivered to the receiver of such fax communication.

**8.2**    Notices

**(a)**    Any communication or document made or delivered by one Party to the other under or in connection with this Deed will only be effective:

   **(i)**    if by way of fax, when received in legible form; or

   **(ii)**    if by way of letter, the earlier of the date when it is left at or delivered to the recipient's address and five (5) Business Days after being posted (postage prepaid in a correctly addressed envelope).

**(b)**    If a particular department or officer is specified as part of the recipient's address details provided below, any communication or document made or delivered by one Party to the other under or in connection with this Deed will only be effective if addressed to that department or officer.

**(c)**    Unless otherwise notified by a Party in writing giving at least five (5) Business Days' notice of such change, any communication or document made or delivered by one Party to the other under or in connection with this Deed should be sent or delivered as follows:

If to the Assignor:

**MICHAEL C. FREGE**, in his capacity as insolvency administrator over the assets of Lehman Brothers Bankhaus Aktiengesellschaft

**Execution Version**

| Attention | : | Michael C. Frege |
|-----------|---|------------------|
| Address   | : | Barckhausstrasse 12-16, |
|           |   | 60325 Frankfurt am Main |
|           |   | Germany |
| Fax       | : | +49 69 71701-40-410 |

With a copy to:

| Attention | : | |
|-----------|---|---|
| Address   | : | |
| Fax       | : | |

If to the Assignee:

**LEHMAN COMMERCIAL PAPER, INC., LONDON BRANCH**

| Attention | : | William McLoughlin |
|-----------|---|--------------------|
| Address   | : | 1271 Sixth Avenue |
|           |   | New York, NY 10020 |
| Fax       | : | 646-758-5673 |

**8.3**   Non-Business Days

A notice or other communication received on a non-Business Day or after normal business hours in the country of receipt shall be deemed to be received on the following Business Day.

**9**      **GOVERNING LAW AND JURISDICTION**

**9.1**   The formation, validity, performance and interpretation of this Deed and of each Clause and part thereof shall be governed by and construed in accordance with the laws of England.

**9.2**   The Parties irrevocably agree that the courts of England shall have exclusive jurisdiction to settle any disputes which may arise out of or in connection with this Deed and that accordingly any lawsuit, action or proceeding arising out of or in connection with this Deed may be brought in such courts.

**9.3**   Without prejudice to any other mode of service allowed under any relevant law, the Assignor:

**(a)**   irrevocably appoints Ms. Katherine Baeten, Loan Operations department, Lehman Brothers Bankhaus Aktiengesellschaft, London Branch, 25 Bank Street, London E14 5LE, United Kingdom as its agent for service of process in relation to any proceedings before English courts in connection with this Deed; and

**(b)**   agrees that failure by an agent for service of process to notify the Assignor of the process will not invalidate the proceedings concerned.

**9.4**   If any person appointed as an agent for service of process is unable for any reason to act as agent for service of process, the Assignor must immediately (and in any event within

Execution Version

five days of such event taking place) appoint another agent on terms acceptable to the Assignee. Failing this, the Assignee may appoint another agent for this purpose.

## 10   COMPLETION OF THE LCPI ASSIGNMENT

The Parties hereto are aware and agree that the completion of the LCPI Assignment is subject to, amongst other conditions, obtainment of the Regulatory Approvals. The Assignor shall not be held liable for any damages or losses of the Assignee caused by a non-completion or delay of the LCPI Assignment due to the requirement to obtain the Regulatory Approvals.

## 11   THIRD PARTY RIGHTS

**11.1**   A person who is not a party to this Deed shall not have any rights under or in connection with it by virtue of the Contracts (Rights of Third Parties) Act 1999 but this does not affect any right or remedy of a third party which exists, or is available, apart from that Act.

**11.2**   The rights of the Parties to terminate, rescind or agree any variation, waiver or settlement under this Deed is not subject to the consent of any person that is not a party to this Deed.

## 12   COUNTERPARTS

This Deed may be executed by the Parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, and all of which together shall constitute one and the same instrument.

## 13   THIS DEED

This Deed is intended to be a deed even if any Party's execution is not in accordance with the formalities required for the execution of deeds.

**Execution Version**

**IN WITNESS WHEREOF**, the Parties hereto have caused this Deed to be executed and delivered as a deed by their duly authorized representatives as of the day and year first above written.

Executed and delivered as a deed by **MICHAEL C. FREGE**, in his capacity as insolvency administrator over the assets of Lehman Brothers Bankhaus Aktiengesellschaft

(as the Assignor)

By        :
Title     :
Signature :

*Dr Michael Frege*
*als Insolvenzverwalter Lehman AG*

*Michael Frege*

*in the presence of* Kerstin Sebastian
witness

Executed and delivered as a deed by **LEHMAN COMMERCIAL PAPER, INC., LONDON BRANCH**

(as the Assignee)

By        :
Title     :
Signature :

**Execution Version**

**IN WITNESS WHEREOF**, the Parties hereto have caused this Deed to be executed and delivered as a deed by their duly authorized representatives as of the day and year first above written.

Executed and delivered as a deed by **MICHAEL C. FREGE**, in his capacity as insolvency administrator over the assets of Lehman Brothers Bankhaus Aktiengesellschaft

(as the Assignor)

By          :
Title       :
Signature   :

Executed and delivered as a deed by **LEHMAN COMMERCIAL PAPER, INC., LONDON BRANCH**

(as the Assignee)

By          : DAVID J. COLEJ
Title       : CFO .
Signature   :

Execution Version

## SCHEDULE 1

## FORM OF NOTICE OF ASSIGNMENT

To:   LBT Varlık Yönetim Anonim Şirketi
      Suleyman Seba Cad. No. 48 A Blok B2.07
      Besiktas Istanbul, Turkiye

[Date]

We refer to the loan agreements dated 14 March 2008 and 27 March 2008 entered into by and between you as borrower and Lehman Brothers Bankhaus AG, London Branch as lender under which loans in the amount of USD 30,000,000 and USD 50,000,000 respectively have been made available by us to you (the "Loan Agreements").

In accordance with the provisions of the Deed of Assignment of Receivables dated [___] and entered into by and between us as assignor (the "Assignor") and Lehman Commercial Paper, Inc., London branch as assignee (the "Assignee") (the "Deed of Assignment"), all rights, title, interest and benefits in and to the receivables due to the Assignor under the Loan Agreements (the "Receivables") have been irrevocably, absolutely and unconditionally assigned to the Assignee. A copy of the Deed of Assignment is provided to you together with this notice.

Upon your receipt of a written notice from the Assignee, we hereby irrevocably instruct and authorize you with immediate effect to make all payments arising from the Loan Agreements to any bank account which the Assignee may from time to time notify to you, without requiring any further consent or authorization from the Assignor or from any other party.

Please confirm your acceptance of the above by countersigning the Acknowledgment Letter which follows our signature.

**MICHAEL C. FREGE,** in his capacity as insolvency administrator over the assets of Lehman Brothers Bankhaus Aktiengesellschaft

By          :
Title       :
Signature   :

Execution Version

## SCHEDULE 2

## FORM OF ACKNOWLEDGMENT LETTER

Lehman Commercial Paper, Inc., London branch
[address of the Assignee]

[Date]

We refer to the notice of assignment (the "**Notice of Assignment**") dated [_____] issued by
**MICHAEL C. FREGE,** in his capacity as insolvency administrator over the assets of
Lehman Brothers Bankhaus Aktiengesellschaft (the "Assignor") pertaining to the irrevocable,
absolute and unconditional assignment of the Receivables (as defined in the Notice of
Assignment) to you.

We hereby accept and acknowledge the notification and the instructions contained in the
Notice of Assignment and we undertake to act in accordance with and to comply with such
instructions and we hereby confirm that we have taken notice of the assignment of the
Receivables and that as at the date hereof, that we have not received notice of any
assignment, charge, mortgage or other security interest created in favour of any other third
party of or over the Receivables.

Furthermore, we accept such assignment and we hereby agree, undertake and warrant that
upon receipt by us of a written request from you, any payment relating to the Receivables
shall be made to any bank account to be notified by you, without requiring any further
consent or authorization from the Assignor or from any other party.

Without prejudice to any other mode of service allowed under any relevant law, we
irrevocably appoint [*name and address*] as our agent for service of process in relation to any
proceedings before English courts in connection with the Deed of Assignment (as defined in
the Notice of Assignment) and hereby agree that failure by an agent for service of process to
notify us of the process will not invalidate the proceedings concerned.

LBT Varlık Yönetim Anonim Şirketi

By          :
Title       :
Signature   :

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                        :
In re                                   :    **Chapter 11 Case No.**
                                        :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :    **08-13555 (JMP)**
                                        :
                  **Debtors.**          :    **(Jointly Administered)**
                                        :
------------------------------------------------------------------x

### ORDER AUTHORIZING (I) THE SETTLEMENT OF CERTAIN RIGHTS UNDER LOAN AGREEMENTS, (II) THE SALE OF CERTAIN RIGHTS UNDER LOAN AGREEMENTS, AND (III) RELATED RELIEF

Upon the motion, dated January 27, 2009 (the "Motion")[1], of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors in possession (together the "Debtors" and with their non-debtor subsidiaries "Lehman"),

for entry of an order, pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy

Rules 2002, 6004, and 9019, authorizing (i) the settlement between Lehman Commercial Paper

Inc. ("LCPI") and Lehman Brothers Bankhaus AG ("Bankhaus"), as memorialized in the Deed,

and (ii) the assignment and sale of the Receivables by LCPI to Vector Holdings S.a.r.l.

("Vector") free and clear of any liens, claims, encumbrances, and other interests, pursuant to the

Assignment Agreement, all as more fully described in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern

District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward,

Acting C.J.); and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

---

[1] Capitalized terms used but not defined in this Order have the meanings ascribed to them in the Motion.

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the order entered September 22, 2008 governing case management and administrative procedures [Docket No. 285]; and the Court having found and determined that the relief sought in the Motion is in the best interests of the LCPI, the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

FURTHER FOUND AND DETERMINED that:

A.    **Business Justification**.  LCPI has properly exercised its reasonable business judgment in its assignment and sale of the Receivables, pursuant to the terms, and subject to the conditions, of the Assignment Agreement.  LCPI has shown good and sufficient business justification under sections 363(b) and (l) of the Bankruptcy Code for the relief requested in the Motion and the approval of the transactions contemplated thereby.

B.    **Best Interests**.  The relief sought in the Motion is in the best interests of LCPI, its estate and creditors, and all parties in interest in that, without exclusion:  (i) the Assignment Agreement and the Deed were proposed, negotiated and entered into in good faith, from arm's-length bargaining positions among LCPI, Bankhaus, and Vector, and without collusion, and Vector is not an "insider" of the Debtors, as that term in defined in section 101(31) of the Bankruptcy Code, and is not a continuation of the Debtors' corporation; (ii) LCPI was free to deal with any other party interested in acquiring the rights to be assigned and sold to Vector pursuant to the Assignment Agreement; and (iii) LCPI has proposed for adequate notice and a reasonable opportunity to be heard in connection with the proposed assignment and sale of the Receivables.

C.    **Consideration**.  The consideration to be paid by Vector pursuant to the terms, and subject to the conditions, of the Assignment Agreement: (i) represents the highest and best offer for the Receivables; (ii) is fair and reasonable; (iii) will provide for a greater recovery for LCPI's creditors than would be provided by any other practical, available alternative; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

D.    **Fair and Reasonable**.  The Deed is an integral aspect of the Assignment Agreement and the LBT Stock Sale and in light of the recovery afforded to LCPI's estate by the Assignment Agreement and because the Deed will not have a detrimental impact on LCPI's estate, the compromise of claims pursuant to the Deed rises well above the lowest range of reasonableness.

E.    **Good Faith**.  Vector is a good faith purchaser of the Receivables within the meaning of section 363(m) of the Bankruptcy Code and is, therefore, entitled to all of the protections afforded thereby.  None of LCPI, Vector, or Bankhaus has engaged in conduct that would prevent the application of section 363(m) of the Bankruptcy Code or permit the Assignment Agreement or the Deed to be avoided under section 363(n) of the Bankruptcy Code. Vector has proceeded in good faith in all respects in connection with this proceeding and will be acting in good faith in closing the transactions contemplated by the Assignment Agreement.

F.    **Free and Clear Transfer**.  Upon the fulfillment of the Conditions (as defined in the Assignment Agreement) and payment of the LCPI Payment Amount (as defined in the Sale and Purchase Agreement), the sale, assignment, conveyance, and transfer to Vector of the Receivables shall be legal, valid, and binding and an effective transfer of property and shall

vest in Vector all right, title, and interest in and to same free and clear of all liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances and other interests.

G.    **Retention of Rights By the Government**.  Nothing in this Order or in the Assignment Agreement or Deed (i) releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order; or (ii) should be construed to give Vector any more protection against any governmental unit than it is otherwise entitled to under 11 U.S.C. § 363(f)(1), (3), (4), or (5).  Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under law.

H.    **Satisfaction of 363(f) Standards**.  LCPI may sell the Receivables free and clear of any and all liens, claims, encumbrances and other interests because one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied, including, without limitation, section 363(f)(5) thereof.

I.    **Private Sale**.  LCPI and its advisors have already undertaken a substantial marketing process.  The time and effort associated with marketing the Receivables for sale at a public auction would needlessly duplicate these previous endeavors. Furthermore, the exigent circumstances surrounding these chapter 11 cases support LCPI's decision to pursue a private sale.  The unwarranted delay, risk, and expense associated with a public auction would far exceed any benefit to LCPI, its estate or its creditors.

J.    **Prompt Consummation**.  The prompt consummation of the assumption, assignment, and sale of the Receivables is in the best interests of LCPI, its estate, and its creditors.

K.    **Conclusions of Law and Fact**.    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.

NOW, THEREFORE, IT IS ORDERED THAT:

1.      The Motion is GRANTED.

2.      Pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rules 6004, and 9019, the Assignment Agreement and the Deed are approved, and LCPI is authorized to perform all obligations under the Assignment Agreement and the Deed and to execute such other documents and take such other actions as may be necessary or appropriate to effectuate the Assignment Agreement and the Deed and the provisions of this Order, and to consummate all the transactions contemplated by the Assignment Agreement and the Deed.

3.      Subject to the terms and conditions of the Assignment Agreement, Vector shall acquire all of LCPI's rights under the Loan Agreements.

4.      Subject to the terms and conditions of the Assignment Agreement, LCPI shall sell, assign, transfer, and convey absolutely and unconditionally the Receivables to Vector, and Vector shall acquire all of LCPI's right, title and interest in and to the Receivables.

5.      Any objections to the entry of this Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

6.      Pursuant to section 363(f) of the Bankruptcy Code, LCPI's right, title and interest in and to the Receivables shall be sold to Vector free and clear of any and all liens, claims, encumbrances and other interests with such liens, claims, encumbrances and other

interests (if any) to attach to the proceeds of the sale of the Receivables with the same force,

effect, and priority as such liens, claims, encumbrances and other interests have on the

Receivables as appropriate, subject to the rights and defenses of LCPI and any party in interest

with respect thereto.

7.      The sale of the Receivables to Vector pursuant to the Assignment

Agreement and this Order vests Vector with all right, title and interest in and to the Receivables

free and clear of all liens, claims, encumbrances and other interests of any kind whatsoever.

8.      The Assignment Agreement was negotiated at arm's-length and entered

into in good faith by the respective parties thereto, and Vector is entitled to all the benefits and

protections of section 363(m) of the Bankruptcy Code, and consummation of the sale and

assignment of the Receivables pursuant to the Assignment Agreement shall not be affected by

reversal or modification on appeal of this Order, in that: (i) Vector has not violated section

363(n) of the Bankruptcy Code by any action or inaction; (ii) no common identity or directors or

controlling stockholders exists between Vector and LCPI; and (iii) the negotiation and execution

of the Assignment Agreement and any other agreements or instruments related thereto was

without collusion, at arm's-length and in good faith.

9.      This Order shall be effective and enforceable immediately upon entry and

its provisions shall be self-executing and any stay imposed by Bankruptcy Rule 6004(g) are

hereby waived.

10.     The jurisdictional provisions of the Assignment Agreement shall be

binding on the parties thereto.  This Court shall retain jurisdiction to interpret and enforce this

Order.

Dated: February ___, 2009
       New York, New York

_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE