UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | Jointly Administered |

--------------------------------------------------------------------

| | | |
|---|---|---|
| | : | |
| In re: | : | Adv. Proc. No. 08-01420 (JMP) |
| | : | |
| LEHMAN BROTHERS INC., | : | SIPA Liquidation Proceeding |
| | : | |
| Debtor. | : | |

--------------------------------------------------------------------

| | | |
|---|---|---|
| | : | |
| In re: | : | |
| | : | |
| LEHMAN COMMERCIAL PAPER, INC., | : | Case No. 08-13900 (JMP) |
| | : | |
| Debtor. | : | |

--------------------------------------------------------------------

**STIPULATION AND AGREED ORDER BETWEEN THE CERTIFIED CLASS
IN *AUSTIN V. CHISICK*, LEHMAN COMMERCIAL PAPER, INC., AND THE
TRUSTEE FOR THE SIPA LIQUIDATION OF LEHMAN BROTHERS INC.
TO PERMIT LIMITED MODIFICATION OF THE AUTOMATIC STAYS**

WHEREAS, on or about August 10, 2001, a class action complaint was filed in

the adversary proceeding captioned *Aiello v. Lehman Commercial Paper Inc.*, Case No. 8:01-ap-

01463-JB, in the United States Bankruptcy Court for the Central District of California, asserting

claims arising out of First Alliance Mortgage Company's ("First Alliance") alleged fraudulent

lending practices in originating mortgage loans.

WHEREAS, on or about October 16, 2001, plaintiffs in the *Aiello* action moved

to withdraw the reference of the *Aiello* action from the bankruptcy court.  By order dated

November 5, 2001, the United States District Court for the Central District of California

("District Court") granted the motion and the action was subsequently re-captioned *Austin v. Chisick*, Case No. SA-CV-01-0971 DOC.

WHEREAS, on August 22, 2002, lead plaintiffs in *Austin v. Chisick* filed their Second Amended Complaint, asserting claims against Lehman Brothers Inc. ("LBI") and Lehman Commercial Paper, Inc. ("LCPI") (collectively, "Lehman") for:  (i) equitable subordination pursuant to 11 U.S.C. § 510(c); (ii) aiding and abetting First Alliance's alleged fraudulent scheme; and (iii) unfair competition in violation of California Business & Professions Code § 17200, *et seq*. ("UCL").  Plaintiffs sought compensatory and punitive damages, equitable and injunctive relief (including equitable subordination), and costs and attorneys' fees.

WHEREAS, by order dated November 25, 2002, the District Court certified a class consisting of "all persons who acquired mortgage loans from First Alliance from May 1, 1996 through March 31, 2000, which were used as collateral for First Alliance's warehouse credit line with Lehman Commercial Paper, Inc. or were securitized in transactions underwritten by Lehman Brothers, Inc."  In the same order, the District Court designated Michael and Barbara Austin, Walter and Harriet Berringer, and George Jerolemon as representatives for the Class and appointed Lead Counsel and Class Counsel, including Lieff, Cabraser, Heimann & Bernstein, LLP; Milberg Weiss Bershad Hynes & Lerach LLP (n/k/a Milberg LLP); Carroll, Warren & Parker; the Law Offices of Sheila Canavan; the Law Offices of Ashley Hutchings Hendren, PLLC; Jenkins & Mulligan; the Law Office of David B. Zlotnik; and Berger & Montague, P.C.

WHEREAS, by order dated February 7, 2003, the District Court granted Lehman's motion for summary judgment dismissing plaintiffs' claim under the UCL and the aiding and abetting claim covering the period from January 1, 1997 to December 30, 1998.

WHEREAS, plaintiffs' aiding and abetting claim was tried to a jury from

1

February 14, 2003 to May 12, 2003, and their equitable subordination claim was tried concurrently to the District Court.

WHEREAS, by order dated May 12, 2003 and entered on June 16, 2003, the District Court granted Lehman summary judgment as to plaintiffs' claim for punitive damages.

WHEREAS, on June 16, 2003, the jury returned a verdict, setting $50,913,928 as plaintiffs' damages and allocating 10% of fault to Lehman.

WHEREAS, on July 30, 2003, in *In re First Alliance Mortgage Co.*, 298 B.R. 652 (C.D. Cal. 2003), the District Court issued its findings of fact and conclusions of law, finding Lehman had aided and abetted First Alliance's fraud but denying plaintiffs' equitable subordination claim.

WHEREAS, on November 19, 2003, the District Court entered judgment, ordering and adjudging, "All persons who acquired mortgage loans from First Alliance Mortgage Company ('First Alliance') from May 1, 1996 through March 31, 2000, which were used as collateral for First Alliance's warehouse credit line with Lehman Commercial Paper, Inc. or were securitized in transactions underwritten by Lehman Brothers, Inc., except for those individuals who have requested to be excluded from the Class, are members of the Plaintiff Class in the Austin v Chisick matter."  The District Court further ordered and adjudged, "The members of the Class who acquired mortgage loans from First Alliance from December 30, 1998 through March 23, 2000, shall recover the sum of $5,091,392.80 from Defendants [LBI and LCPI] on their claim for aiding and abetting fraud" and the Class would "recover nothing on its other claims."

WHEREAS, on December 8, 2006, the Ninth Circuit Court of Appeals issued its decision in *Aiello v. Lehman Commercial Paper, Inc. (In re First Alliance Mortgage Co.)*,

471 F.3d 977 (9th Cir. 2006), which addressed plaintiffs' and Lehman's cross-appeals. The

Ninth Circuit, among other things, affirmed the District Court's holding imposing liability on

Lehman for aiding and abetting a class-wide fraud perpetrated by First Alliance but vacated the

damages verdict and remanded for further proceedings on the proper calculation of damages.

WHEREAS, subsequent to the Ninth Circuit's decision, the parties engaged in

arm's-length negotiations, which resulted in a settlement agreement ("Settlement Agreement")

dated as of August 15, 2007 (attached hereto as Exhibit A).

WHEREAS, under the settlement, which is subject to final approval by the

District Court, LBI and LCPI agreed to provide relief to Class members in the amount of

$2,000,000 and to pay for reimbursement of up to $1,500,000 of the costs and expenses Class

Counsel have incurred on behalf of the Class (subject to approval by the District Court). Class

Counsel agreed not to seek attorneys' fees. Any award of costs and expenses would not come

from the $2,000,000 recovery. As consideration for Lehman's payment under the settlement,

plaintiffs agreed to seek dismissal of the action with prejudice as to Lehman and to release and

discharge Lehman from claims as set forth in the Settlement Agreement.

WHEREAS, by order dated June 6, 2008 ("June 6, 2008 Order"), the District

Court granted preliminary approval of the settlement, determining the settlement appeared "fair,

adequate and reasonable" under Rule 23 of the Federal Rules of Civil Procedure, and, among

other things, set a schedule for final approval, directing: (i) notice should be mailed to Class

members on or before July 16, 2008; (ii) Class members were permitted to object in writing to

the proposed settlement until August 30, 2008; (iii) the deadline for Class members to return

claim forms was September 24, 2008; (iv) Class members seeking to appear at the final approval

hearing were to file an objection with the District Court and send a copy to counsel on or before

October 14, 2008; (v) the motion for final approval was to be submitted on or before October 8, 2008; and (vi) the final approval hearing was set for October 27, 2008 at 8:30 a.m.

WHEREAS, on July 16, 2008, under the direction of Class Counsel, CPT Group, Inc., the claims administrator, distributed the Notice to Class Members of Settlement and of Class Plaintiffs' Counsel's Request for Reimbursement of Costs and Expenses ("Notice") (attached hereto as Exhibit B) and claim forms to approximately 7,300 Class members who are believed to be eligible to receive a recovery pursuant to the settlement.

WHEREAS, no Class members submitted objections to the settlement by the deadlines the District Court established in its preliminary approval order.

WHEREAS, in its preliminary approval order the District Court set a hearing for October 27, 2008 at 8:30 a.m. to determine whether to grant final approval of the settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure.

WHEREAS, subsequent to the District Court's preliminary approval of the settlement, on September 19, 2008, LBI became the subject of a liquidation proceeding initiated by the Securities Investor Protection Corporation in the United States District Court for the Southern District of New York and now pending in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") in the case captioned *In re Lehman Brothers Inc.*, Adv. Pro. No. 08-01420 (JMP). A September 19, 2008 order issued by the United States District Court for the Southern District of New York appointed James W. Giddens as Trustee for the liquidation of the business of LBI (the "SIPA Trustee"), imposed a stay of litigation under 11 U.S.C. § 362 against LBI and transferred the case to the Bankruptcy Court.

WHEREAS, on October 5, 2008, LCPI filed a voluntary bankruptcy petition in the Bankruptcy Court (Case No. 08-13900-JMP), which confers an automatic stay of litigation

4

against LCPI pursuant to 11 U.S.C. § 362.

WHEREAS, by order dated October 15, 2008, the District Court stayed the proceedings in *Austin v. Chisick* in accordance with the automatic stays in effect as to LBI and LCPI, vacated the October 27, 2008 final approval hearing, and ordered that the parties "shall submit a request and proposed order when it is appropriate to lift the stay."

WHEREAS, on October 15, 2008, the certified Class in *Austin v. Chisick* filed a motion in the Bankruptcy Court seeking relief from the automatic stays to allow the settlement to proceed (the "Stay Relief Motion").

WHEREAS, as the District Court noted in its preliminary approval order, because the Class has been certified, to grant final approval of the settlement the District Court need "only determine whether the settlement is 'fair, adequate and reasonable.'"  June 6, 2008 Order at 3 (quoting Fed. R. Civ. P. 23(e)(2)).  The District Court observed it should weigh "some or all" of the following factors to determine the fairness of the settlement:  "(1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and duration of further litigation; (3) the risk of maintaining class certification; (4) the amount of settlement; (5) investigation and discovery; (6) the experience and views of counsel; and (7) the reaction of class members to the proposed settlement."  *Id.* at 3 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Stanton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)).

WHEREAS, the *Austin v. Chisick* certified Class maintains that the factors enumerated above – taken in light of the judicial policy favoring class action settlements – weigh decidedly in favor of final approval of the settlement in *Austin v. Chisick*, for the following reasons:

5

**(1)** **The Settlement Amount Is Reasonable in Light of the Possibility Plaintiffs Might Recover Less Should the Case Proceed to a New Trial on Damages.**

While Class members achieved a jury verdict and subsequent judgment by the District Court assigning liability to Lehman, they face the risk that, in a second trial on damages, the District Court (or the United States Bankruptcy Court for the Southern District of New York, should the proceedings be transferred to the Bankruptcy Court) would limit them to an "out-of-pocket" measure of damages, which might leave them far short of the $2,000,000 this settlement provides.  In preliminarily approving the settlement, the District Court observed, "at the previous trial Plaintiffs' expert indicated that 'out-of-pocket' damages were, at most, approximately $15,000,000," which suggests plaintiffs "may receive $1,500,000 or less depending on the outcome of litigation."  June 6, 2008 Order at 4.  Therefore, the District Court noted, the settlement does not appear as a "sell-out" of plaintiffs' case. *Id.  See also Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 U.S. Dist. LEXIS 86266, at *30 (N.D. Cal. Nov. 16, 2007) ("In considering the strength of Plaintiff's case, legal uncertainties at the time of settlement - particularly those which go to fundamental legal issues - favor approval."); *Lundell v. Dell, Inc.*, No. CO5-3970 JW/RS, 2006 U.S. Dist. LEXIS 90990, at *10 (N.D. Cal. Dec. 4, 2006) (litigation risks "must be considered in assessing the fairness of the Settlement, which guarantees against a result that would leave the Settlement Class without any recovery from Defendant, or with less than the Settlement offers").  By the same token, should the District Court (or the Bankruptcy Court) in a new trial deem the "out-of-pocket" measure the appropriate standard to determine damages, the parties would "be put to the expense of proving these damages," which might require costly expert testimony and preparation.  June 6, 2008 Order at 5.  Furthermore, the parties face "a significant chance" that if the District Court does not approve this settlement, the issue of damages would proceed to a jury trial and potential appeal of the resulting verdict.  The

District Court has observed, "The parties are presently faced with the prospect of a long and expensive second-phase of litigation," noting costs in the case already exceed $1,500,000 "with a substantially limited prospective recovery."  *Id.*

> **(2)**     **The Settlement Amount Provides Class Members Adequate Relief, Particularly Given the Risk of No Recovery, and the Method of Allocation of Settlement Funds Is Appropriate.**

Under the proposed settlement, the District Court would enter an order granting final approval of the settlement providing for dismissal of the action in exchange for Lehman's payment to the Class a total amount of $2,000,000 – a substantial amount especially given the possibility that a second trial would limit damages to $1,500,000 or less.  Additionally, the settlement provides that plaintiffs' counsel will not seek attorneys' fees and limits their reimbursement for costs and expenses to $1,500,000.  The settlement thus favors the best interests of the Class over those of its attorneys and allows for a meaningful recovery of the protracted, difficult *Austin v. Chisick* litigation.

In preliminarily approving the settlement, the District Court observed the $2,000,000 figure "represents approximately two-fifths of the recovery obtained at trial, which the Ninth Circuit characterized as 'improper,'" stating the approximately $5,000,000 recovery awarded by the jury "will likely act as an upper limit on damages."  June 6, 2008 Order at 5.  The settlement thus likely offers the Class at least 40 percent of its recoverable damages – a reasonable and adequate amount.  *See Rodriguez v. West Publ'g Corp.*, No. CV-05-3222 R(MCx), 2007 U.S. Dist. LEXIS 74849, at *42 (C.D. Cal. Aug. 10, 2007) ("Courts have routinely approved class action settlements where the settlement amount is in the percentage range of the claimed amount of damages here [approximately 30 percent], as well as where the settlement amount was a substantially lower percentage of the claimed amount of damages.") (citing cases).

The Class will also request that the District Court include in the order a provision entitling each of the three couples who served as named plaintiffs in the litigation – Michael and

Barbara Austin, Walter and Harriet Berringer, and George and Josephine Jerolemon – to an allocation of $5,000 (in addition to the award to which they are otherwise entitled as Class members) from the total amount paid by Lehman.  In its preliminary approval order, the District Court noted the $15,000 total "is modest compared to the overall settlement of $2,000,000." June 6, 2008 Order at 6.  The District Court further observed "the representatives have participated in full discovery and trial of this action.  All of the couples took part in responding to discovery requests, a number of the individuals were deposed, and two were called to testify at trial." *Id.*  The relatively small payments are reasonable under the circumstances. *See In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) ("A class representative is entitled to some compensation for the expense he or she incurred on behalf of the class lest individuals find insufficient inducement to lend their names and services to the class action.").

Additionally, Class Counsel have agreed to forgo a fee award to which they likely would be entitled under prevailing Ninth Circuit authority.  As the District Court observed, the Ninth Circuit "uses 25% of the common fund as a benchmark for attorneys' fees."  June 6, 2008 Order at 5.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  The District Court deemed this method of computation – under which plaintiffs' counsel would receive $500,000 in fees – "abundantly reasonable given that this case was tried and appealed," June 6, 2008 Order at 5, and stated, "This demonstrates that the attorneys are not unduly favored through the settlement, but instead, are being exceedingly benevolent and generous in their protection of the class." *Id.*

Furthermore, as further set forth below, an award for reimbursement of Class Counsel's costs and expenses of not more than $1,500,000 is fair and reasonable.  The District Court has observed this amount "represents less than the amount already spent in the litigation before adding administration fees." *Id.* at 5-6.  Plaintiffs' counsel estimate they have spent approximately $3,000,000 thus far in the *Austin v. Chisick* litigation, excluding costs of administering the notice and claims process – significantly more than the amount they would receive under the settlement.

Equally as reasonable as the total settlement amount is the method of allocation to eligible Class members.  Each eligible Class member will be entitled to receive his or her *pro rata* share of the settlement proceeds based on the amount of the loan origination fee he or she paid in connection with a First Alliance mortgage loan.  The District Court has observed that given the potential limitation on recovery to "out-of-pocket" damages, it is "fair and reasonable to tie total recovery to the amount of origination fees."  *Id.* at 6.  The District Court further explained, "While the individuals submitting claim forms would likely recover more than they would if damages were limited to fees alone, this method of distributing the excess funds comports with fundamental fairness in that it distributes the fund according to the harm suffered."  *Id.*  This method of allocation is fair and reasonable and supports final approval.

**(3)     The Comprehensive Litigation of the Case Through Trial and Appeal Weighs Heavily in Favor of Settlement.**

The parties extensively litigated the *Austin v. Chisick* action, resulting in a jury verdict and ensuing judgment awarding plaintiffs damages in connection with their aiding and abetting claim against Lehman.  Consequently, the factual and legal issues were developed, with the lone question remaining as to the appropriate measure of damages.  The posture of the case strongly demonstrates the fairness of the settlement, as plaintiffs and Lehman had a full record at their disposal in assessing the value of the agreement and the risks of proceeding to a new trial.  *See Rodriguez*, 2007 U.S. Dist. LEXIS 74849, at *45 (where parties "had the benefit" of key briefing and rulings on class certification and summary judgment motion, class counsel "had more than sufficient information to adequately assess the strengths and weaknesses of the case").[1]

---

[1] The District Court's judgment following trial included the Class definition, and the Ninth Circuit affirmed the District Court's holding imposing liability on Lehman for aiding and abetting a class-wide fraud perpetrated by First Alliance.  Therefore, there is no question as to "the risk of maintaining class certification," one of the series of factors a court may assess in determining whether a proposed settlement is fair.

**(4)**   **That Able and Experienced Counsel Recommend Final Approval Evidences the Adequacy of the Settlement.**

Plaintiffs' counsel in *Austin v. Chisick* are experienced litigators well-versed in all aspects of class action practice. Lehman's counsel in the case, Fulbright & Jaworski L.L.P., a prominent defense firm with considerable litigation experience, likewise displayed skill and diligence representing their clients.

Furthermore, the settlement is not a product of fraud or collusion. *See id.* (absent "fraud, collusion, or the like," the court "should be hesitant to substitute its own judgment for that of counsel"). Quite the contrary – as the District Court noted at the preliminary approval stage in finding no evidence of fraud or collusion, this case "was hard-fought through a full trial and appeal," resulting in "an arms-length settlement," and plaintiffs' counsel have agreed to completely forgo attorneys' fees. *See* June 6, 2008 Order at 7.

**(5)**   **The Class's Overwhelming Support for the Settlement Warrants Final Approval.**

The absence of objections from Class members to the settlement demonstrates the Class's overwhelming approval. Such a "unanimous, positive reaction" constitutes "compelling evidence" of the settlement's fairness, reasonableness and adequacy. *See National Rural Telecommc'ns Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members." *Id.* (citing cases). *See also Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (objections from 16 percent of class persuasive that settlement was adequate).

Additionally, a substantial number of individuals – more than 50 percent of eligible Class members – have submitted claim forms. That degree of Class participation would

be impressive in any class action, not to mention where, as in *Austin v. Chisick*, litigation has

proceeded over a period of nearly seven years.  *See Rodriguez*, 2007 U.S. Dist. LEXIS 74849, at

*48-49 (noting "overwhelming support" of class where notice mailed to approximately 376,000

class members and, as of the time of final approval, more than 52,000 claims had been filed,

while only 54 class members had submitted objections).

      **(6)**     **The Class Received Sufficient Notice of the Settlement Terms and the Procedure for Filing Claims or Objecting to the Settlement.**

      The Notice, which the claims administrator distributed on July 16, 2008 in

accordance with the District Court's preliminary approval order, adequately informed Class

members of their rights under the settlement and the procedure for objecting to it.  *See Churchill*

*Village, L.L.C. v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (notice need only "generally

describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

investigate and to come forward and be heard") (citation and internal quotation marks omitted);

*Rodriguez*, 2007 U.S. Dist. LEXIS 74849, at *21 (Ninth Circuit "requires a very general

description of the proposed settlement in such a notice").

      The Notice recounted the history of the litigation and informed Class members of

material terms of the settlement, the deadline for filing claim forms, the procedure for submitting

objections to the District Court and counsel, and the date of the final approval hearing (which

Class members were informed they could, but need not, attend).  The Notice also provided Class

members with a toll-free number to contact Class Counsel with questions regarding the

settlement, as well as a toll-free number to contact the claims administrator.  The Class therefore

received eminently adequate notice regarding the settlement.

      The Notice was disseminated to Class members by U.S. mail (business reply

mail, postage pre-paid), which complied with the District Court's instruction in its preliminary approval order. That method of distribution comports with due process. *See Rodriguez*, 2007 U.S. Dist. LEXIS 74849, at *24-25 ("Rule 23(e) gives the Court virtually complete discretion as to the manner of service of settlement notice.") (citation and internal quotation marks omitted).

Moreover, the schedule the District Court set forth in preliminarily approving the settlement afforded Class members ample opportunity – 45 days from the July 16, 2008 Notice distribution date, i.e., until August 30, 2008 – to object in writing to the settlement. *See Torrisi*, 8 F.3d at 1375 (approving notice mailed 31 days before deadline for written objections and 45 days before final approval hearing). The District Court also ordered that Class members seeking to appear at the October 27, 2008 final approval hearing file an objection with the Court and send a copy to counsel within 90 days of the July 16, 2008 notice distribution date – i.e., October 14, 2008. Plaintiffs' counsel received no objections and none appear on the District Court's electronic docket.

Additionally, that the settlement does not provide Class members an opportunity to opt out of the Class at this time does not weigh against final approval. Subsequent to its November 25, 2002 class certification order, the District Court (by order dated December 16, 2002) approved an "Amended Form Of Notice To Class Members Of Pending Class Action." The Amended Notice informed Class members that those who wished to opt out of the Class must do so by January 20, 2003. Class members thus already had an opportunity to opt out.

In its preliminary approval order, the District Court determined that rejecting the settlement for failure to provide an opt-out procedure was "unwarranted," noting Class members "have previously been given an opportunity to opt out" and will have "the opportunity to formally object to the settlement." June 6, 2008 Order at 6. The District Court also stated "the

other factors weigh heavily in favor of overall fairness" and observed "most of the issues in the case have been fully litigated, limiting the potential realm of recovery and the grounds for class members to opt out." *Id.*

WHEREAS, the *Austin v. Chisick* certified Class maintains that final approval of the settlement between the Class and Lehman will promote the fair and efficient management of the bankruptcy and liquidation proceedings involving LBI and LCPI, and that an order by the District Court granting final approval of the settlement and providing for payment to the Class (including Class Counsel) of up to $3,500,000 under the settlement (representing the $2,000,000 payment to Class members and up to $1,500,000 for reimbursement of Class Counsel's costs and expenses incurred on behalf of the Class) is warranted, and that the District Court likewise should approve three payments of $5,000 each – to be taken from the $2,000,000 Class recovery – to compensate the named plaintiffs for their service to the Class, and that the parties wish to avoid further motion practice in the District Court relating to final approval of the settlement and will request that the District Court grant final approval upon consideration of the applicable law and facts, as set forth in this Stipulation and Agreed Order.

WHEREAS, LCPI and the SIPA Trustee consent, pursuant to and in accordance with the conditions and agreements set forth herein, to a limited modification of the automatic stays extant pursuant to 11 U.S.C. § 362 (the "Automatic Stays") solely to allow the District Court to (i) determine whether to grant final approval of the settlement awarding up to $3,500,000 to the Class (including Class Counsel) pursuant the settlement, and (ii) enter final judgment with respect to the Class's claims against Lehman.

WHEREAS, notwithstanding any of the foregoing, the Automatic Stays shall continue to bar any act to enforce the judgment against LBI and/or LCPI;

WHEREAS, the undersigned counsel for the Class has represented to LCPI and the SIPA Trustee that she has the authority to execute this Stipulation and Agreed Order on behalf of the Class;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and between the undersigned parties, subject to the approval of the Bankruptcy Court, that:

1.      Upon entry of this Stipulation and Agreed Order, the Automatic Stays currently in effect as to LBI and LCPI shall be modified solely to allow the District Court to (i) determine whether to grant final approval of the settlement awarding up to $3,500,000 to the Class (including Class Counsel) pursuant the settlement, and (ii) enter final judgment with respect to the Class's claims against Lehman.

2.      Notwithstanding any of the foregoing, the Automatic Stays shall continue to bar any act to enforce the judgment against LBI and/or LCPI.

3.      The modification of the Automatic Stays shall take effect immediately upon entry of this Stipulation and Agreed Order and shall not be subject to the 10-day stay provided under Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.

4.      Upon the District Court's entry of an order or orders granting final approval of the settlement, granting any award for reimbursement of costs and expenses to Class Counsel, and entering final judgment, the Class (including Class Counsel) shall have a pre-petition general unsecured claim comprised of the total amount set forth in the District Court's order(s), up to an aggregate amount not to exceed $3,500,000.00 (the "Claim").  Upon entry of final judgment, Class Counsel will so inform the undersigned counsel for LCPI and the SIPA Trustee, and such notice shall be deemed to constitute the filing of the Claim in the Lehman bankruptcy and liquidation proceedings.  If filed on or before the applicable deadlines

14

established in the above-captioned bankruptcy and liquidation proceedings involving Lehman, the Claim will be deemed timely filed, without prejudice to whatever rights Lehman may assert under the bankruptcy laws (or any other laws) to challenge the Claim, and the Class need not submit a separate proof of claim.  Nothing in this Stipulation and Agreed Order shall preclude Class Counsel from filing a proof of claim on behalf of the Class (and, if appropriate, a proof of claim solely on behalf of Class Counsel) prior to the District Court's entry of an order or orders granting final approval of the settlement, granting any award for reimbursement of costs and expenses to Class Counsel, and entering final judgment, which claims shall promptly be amended by Class Counsel upon issuance of any such order or orders by the District Court, and Lehman's rights to contest any such proof of claim are preserved.

5.    Neither this Stipulation and Agreed Order nor any terms contained herein shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the parties hereto, other than as may be necessary: (a) to obtain approval of or to enforce this Stipulation and Agreed Order; (b) to seek damages or injunctive relief in connection therewith; or (c) to prove that the Automatic Stays have been temporarily modified to allow *Austin v. Chisick* to proceed in the District Court on the terms and conditions set forth herein.

6.    The Bankruptcy Court shall retain jurisdiction (and the *Austin v. Chisick* Class consents to such retention of jurisdiction) to resolve any disputes or controversies arising from or related to this Stipulation and Agreed Order.  Any motion or application brought before the Bankruptcy Court to resolve a dispute arising from or related to the Stipulation and Agreed Order shall be brought on proper notice and in accordance with relevant Federal Rules of Bankruptcy Procedure, the local rules of the United States Bankruptcy Court for the Southern

District of New York, and any orders of the Bankruptcy Court.

   7.  The Stay Relief Motion is withdrawn with prejudice.

   8.  This Stipulation and Agreed Order is subject to the approval of the Bankruptcy Court, and the terms and provisions of the agreement contained herein shall be void and of no further force and effect if such approval is not granted.

   9.  Each of the undersigned counsel represents that he or she is authorized to execute this Stipulation and Agreed Order on behalf of his or her respective client(s).

   10.  This Stipulation and Agreed Order may be executed in multiple counterparts, any of which may be transmitted by facsimile, and each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

   11.  This Stipulation and Agreed Order shall not be modified, altered, amended or vacated without written consent of all parties hereto. Any such modification, alteration, amendment or vacation, in whole or in part, shall be subject to the approval of the Bankruptcy Court.

   IT IS HEREBY FURTHER STIPULATED AND AGREED by and between the undersigned parties that, subject to the Bankruptcy Court's granting of a modification of the Automatic Stays for the limited purpose set forth herein, Class Counsel will submit this Stipulation and Agreed Order to the District Court in support of final approval of the settlement to enter an order and final judgment providing:

   (a)  The Class and Lehman have submitted to the jurisdiction of the District Court, and the District Court has subject matter jurisdiction to approve the settlement;

   (b)  The Notice issued to Class members pursuant to the Settlement Agreement satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process;

(c)    The terms of the settlement are the product of good faith negotiations between the Class and Lehman, and the settlement is fair, reasonable and adequate under Rule 23.  The District Court therefore directs that the settlement be consummated pursuant to its terms;

(d)    Each Class member is bound by the terms of the settlement, including the release of claims set forth in Paragraph 4 of the Settlement Agreement, regardless of whether any such Class member ever seeks or obtains by any means, including, without limitation, by submitting a proof of claim, any amounts to be distributed in accordance with the terms of the settlement;

(e)    The *Austin v. Chisick* action is dismissed with prejudice as to Lehman;

(f)    In accordance with the settlement terms, plaintiffs and their counsel are not entitled to attorneys' fees.  However, the District Court awards $1,500,000 pursuant to the settlement as reimbursement for Class Counsel's costs and expenses incurred on behalf of the Class;

(g)    The District Court approves the Class's request that each of the three couples who served as named plaintiffs in the litigation – Michael and Barbara Austin, Walter and Harriet Berringer, and George and Josephine Jerolemon – is entitled to receive $5,000 from the Class recovery in addition to the award to which they are otherwise entitled as Class members;

(h)    The Bankruptcy Court shall have jurisdiction to enforce the Settlement Agreement in connection with the Bankruptcy Court's administration of the above-captioned bankruptcy and liquidation proceedings involving Lehman;

(i)    No just reason for delay exists, and the judgment of dismissal of the *Austin*

17

*v. Chisick* action as to Lehman shall be final and appealable;

(j)     The releases set forth in Paragraph 4 of the Settlement Agreement are incorporated in the District Court's order and final judgment.  The order and final judgment forever releases and discharges Lehman and any of its past or present directors, officers, employees, partners, members, principals, agents, servants, attorneys, accountants, auditors, advisors, associates, underwriters, trustees, consultants, investment bankers, investment advisors, insurers, co-insurers, reinsurers and excess insurers, predecessors, successors, parents, subsidiaries, affiliates, divisions, assigns, and related or affiliated entities, and the successors, assigns, representatives, heirs, executors, and administrators of each of them, from the released claims as set forth in the Settlement Agreement; and

(k)     Individual Class members are barred, enjoined and prohibited from instituting, prosecuting, or filing any claim, including by way of a proof of claim, as a class member or otherwise, in any further action or proceeding, in any jurisdiction, against the released persons asserting any claims that have been released pursuant to this settlement.  This provision shall have no effect on the Class's ability to file a proof of claim seeking payment of the amount allowed under the settlement in the pending bankruptcy and liquidation proceedings.

AGREED AS SET FORTH BELOW:

THE CERTIFIED CLASS IN *AUSTIN V. CHISICK*

By:  /s/ Elizabeth J. Cabraser
Elizabeth J. Cabraser (admitted *pro hac vice*)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Tel.: (415) 956-1000

Steven E. Fineman (SF 8481)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel.: (212) 355-9500

*Counsel for the Certified Class in Austin v. Chisick*

LEHMAN COMMERCIAL PAPER, INC.

By:  /s/ Shai Y. Waisman
Harvey R. Miller
Shai Y. Waisman
WEIL GOTSHAL & MANGES, LLP
767 Fifth Avenue
New York, NY  10153
Tel.: (212) 310-8000

*Counsel for Lehman Commercial Paper, Inc.*

JAMES W. GIDDENS, TRUSTEE FOR THE SIPA LIQUIDATION OF LEHMAN
BROTHERS INC.

By:  /s/ Jeffrey S. Margolin
James B. Kobak, Jr.
David W. Wiltenburg
Sarah L. Cave
Jeffrey S. Margolin
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY  10004
Tel.: (212) 837-6000

*Counsel for James W. Giddens,*
*Trustee for the SIPA Liquidation of Lehman Brothers Inc.*

SO ORDERED:

Dated:  January 28, 2009

*/s/ James M. Peck*
UNITED STATES BANKRUPTCY JUDGE