# **SETTLEMENT AGREEMENT**

THIS SETTLEMENT AGREEMENT ("Agreement") is made and entered into as of August 15, 2007, by and among Lehman Brothers Inc. ("LBI") and Lehman Commercial Paper, Inc. ("LCPI") (collectively "Lehman" or "Defendants"), on the one hand, and Michael Austin, Barbara Austin, Walter Berringer, Harriet Berringer, and George Jerolemon, individually and on behalf of the Class, as defined below, (together with the Class, "Plaintiffs") on the other hand, by and through their respective authorized counsel of record.

## RECITALS

1. On or about August 10, 2001, a class action complaint was filed in the adversary proceeding captioned <u>Aiello v. Lehman Commercial Paper Inc.</u>, Case No. 8:01-ap-01463-JB, in the United States Bankruptcy Court for the Central District of California.

2. On or about October 16, 2001, the plaintiffs in the <u>Aiello</u> action moved to withdraw the reference of the <u>Aiello</u> action from the Bankruptcy Court. By order dated November 5, 2001, the United States District Court for the Central District of California ("Court") granted the motion and the action was subsequently re-captioned <u>Austin v. Chisick</u>, Case No. SA-CV-01-971 DOC.

3. On August 22, 2002, Lead Plaintiffs filed their Second Amended Complaint ("SAC") asserting claims against Lehman for: (i) equitable subordination pursuant to 11 U.S.C. § 510(c); (ii) aiding and abetting FAMCO's alleged fraudulent scheme; and (iii) unfair competition in violation of California Business & Professions Code § 17200, *et seq*. ("UCL"). Lead Plaintiffs sought compensatory and punitive damages, equitable and injunctive relief (including equitable subordination), and costs and attorneys' fees.

4. By order dated November 25, 2002, the Court certified the Certified Class (defined in Paragraph 1.3), designated Plaintiffs as representatives for the Certified Class, and appointed the Scruggs Law Firm as Lead Counsel for the Certified Class.

5. By order dated February 7, 2003, the Court granted summary judgment as to the Certified Class' claim under the UCL

and the Certified Class' aiding and abetting claim covering the period from January 1, 1997 to December 30, 1998.

6. Plaintiffs' aiding and abetting claim was tried to a jury from February 14, 2003 to May 12, 2003. Plaintiffs' equitable subordination claim was tried concurrently to the Court.

7. By order dated May 12, 2003 and entered on June 16, 2003, the Court granted Lehman summary judgment as to Plaintiffs' claim for punitive damages.

8. On June 16, 2003, the jury returned a verdict awarding Plaintiffs $50,913,928 and allocating 10% of fault to Lehman.

9. On July 30, 200, in In re First Alliance Mortgage Co., 298 B.R. 652 (C.D. Cal. 2003), the Court issued its findings of fact and conclusions of law denying Plaintiffs' equitable subordination claim.

10. On November 19, 2003, the Court entered judgment, ordering that "The members of the Class who acquired mortgage loans from First Alliance from December 30, 1998 through March 23, 2000, shall recover the sum of $5,091,392.80 from Defendants on their claim for aiding and abetting fraud. [] The Class shall recover nothing on its other claims."

11. On December 8, 2006, in *In re First Alliance Mortgage Company*, 471 F.3d 977 (9th Cir. 2006), the Ninth Circuit Court of Appeals issued its decision in the Parties' appeals, affirming in part and vacating in part the judgment in this action and remanding for a determination of damages under the correct "out-of-pocket" measure of damages.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed between and among the Parties as follows.

## SETTLEMENT

1.  **DEFINITIONS**: The following terms, which are in addition to other terms defined in the body of this Agreement, shall have the following meanings when used in this Agreement:

    1.1  "Action" means the class action entitled <u>Michael and Barbara Austin, et al. v. Brian Chisick, et al.</u>, Case No. SA-CV-01-971 DOC, pending in the United States District Court for the Central District of California.

    1.2  "Class" means and refers to all persons who acquired mortgage loans from First Alliance from December 30, 1998 through March 31, 2000, which were used as collateral for First Alliance's warehouse credit line with Lehman Commercial Paper, Inc. or were securitized in transactions underwritten by Lehman Brothers, Inc. Excluded from the Class are those persons who timely and properly opted out of the Certified Class.

    1.3  "Certified Class" means and refers to the class certified by the Court pursuant to its order dated November 25, 2002: "all persons who acquired mortgage loans from First Alliance from May 1, 1996 through March 31, 2000, which were used as collateral for First Alliance's warehouse credit line with Lehman Commercial Paper, Inc. or were securitized in transactions underwritten by Lehman Brothers, Inc."

    1.4  "Class Member" means a Person who falls within the definition of the Class as set forth in Paragraph 1.2.

    1.5  "Class Period" means the period between December 30, 1998, and March 31, 2000, inclusive.

    1.6  "Court" means the United States District Court for the Central District of California or such other court to which the Action may hereafter be transferred or reassigned.

    1.7  "Effective Date" means the date this Settlement becomes effective as between Lehman and Plaintiffs in accordance with the provisions of Paragraph 3.7.

1.8 "FAMCO" or "First Alliance" means First Alliance Mortgage Company and its Related Persons.

1.9 "Final" means, with respect to any court order, including but not limited to the Judgment, that either (a) the time to appeal therefrom has expired (*i.e.*, 60 days after entry of the Judgment and no appeal has been taken), or (b) an appeal therefrom has been taken or other challenge thereto has been made, and that all such appeals or challenges have been finally disposed of in a manner that affirms the Judgment in its entirety and the time for further appeal or challenge, including petition for a writ of certiorari, has expired.

1.10 "Judgment" means the Order and Final Judgment to be entered by the Court pursuant to Paragraph 3.5.

1.11 "Lead Plaintiffs" means Michael Austin, Barbara Austin, Walter Berringer, Harriet Berringer, and George Jerolemon, collectively.

1.12 "Parties" means, collectively, Lehman and Plaintiffs.

1.13 "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, agents or assigns.

1.14 "Plaintiff" and/or "Plaintiffs" means Michael and Barbara Austin, Walter and Harriet Berringer, and George Jerolemon, individually and as representatives of the Class, and includes all Class Members.

1.15 "Plaintiffs' Counsel" means those law firms and their attorneys that represent any Plaintiff in this Action, including Plaintiffs' Lead Counsel.

1.16 "Plaintiffs' Lead Counsel" means The Scruggs Law Firm.

1.17 "Preliminary Approval Order" means the order entered by the Court pursuant to the motion set forth in Paragraph 3.2.

1.18 "Related Person" means any Person's past or present directors, officers, employees, partners, members, principals, agents, servants, attorneys, accountants, auditors, advisors, associates, underwriters, trustees, consultants, investment bankers, investment advisors, insurers, co-insurers, reinsurers and excess insurers, predecessors, successors, parents, subsidiaries, divisions, assigns, and related or affiliated entities, and the successors, assigns, representatives, heirs, executors, and administrators of each of them.

1.19 "Released Claims" means any and all claims, causes of action, demands, rights, actions, suits, liabilities, and requests for equitable, legal and administrative relief of any kind or nature whatsoever ("Claims") that have been or could have been asserted in any forum by any Plaintiff against any of the Released Persons, arising from or relating to: (i) any of the allegations, transactions, facts, events, matters, occurrences, acts, representations or omissions involved, set forth, alleged or referred to in this Action or that could have been alleged based upon the facts alleged in this Action, including without limitation any and all Claims that were or could have been asserted against Lehman under federal, state, local, statutory or common law, including but not limited to, unfair competition statutes and common law principles, unjust enrichment principles, or any other common law, statutory or equitable theory; and (ii) the purchase or other acquisition of any FAMCO mortgage loan during the Class Period, and any other matters released by Plaintiffs and Plaintiffs' Lead Counsel as set forth in Paragraph 4 of this Agreement.

1.20 "Released Persons" means Lehman and any of their Related Persons.

1.21 "Settlement" means the settlement of this Action and related claims effectuated by this Agreement between the Parties.

1.22 "Settlement Funds" means the amounts to be paid by Lehman pursuant to Paragraph 2.1.

1.23 "Settlement Administrator" means an independent administrator selected by Plaintiffs' Lead Counsel and appointed by the Court to administer the Settlement Funds.

## 2. SETTLEMENT CONSIDERATION

2.1  **Payment By Lehman.**  In full and complete settlement of all of the Released Claims against all of the Released Persons, Lehman shall:

(a)  within twenty (20) business days after the Judgment complying with the provisions of Paragraph 3.5 becomes Final, wire transfer the sum of $2,000,000 (Two Million Dollars) (the "Settlement Amount") to Plaintiffs' Lead Counsel or the Settlement Administrator, as directed by Plaintiffs' Lead Counsel or the Court; and

(b)  within twenty (20) business days after the Costs Order as set forth in Paragraph 2.6 becomes Final, wire transfer the sum awarded by the Court pursuant to the Costs Order (the "Costs Amount") to Plaintiffs' Lead Counsel or the Settlement Administrator, as directed by Plaintiffs' Lead Counsel or the Court.  In no event shall the Costs Amount exceed $1,500,000 (One Million Five Hundred Thousand Dollars).

2.2  **Lehman's Sole Financial Obligation.**  The payments referenced in Paragraph 2.1 set forth Lehman's sole financial obligation to Plaintiffs and Plaintiffs' Counsel under this Agreement and under no circumstances shall Lehman have any obligation to make any other or greater payment to Plaintiffs and Plaintiffs' Counsel for any purpose pursuant to this Agreement.

2.3  **Judgment of Dismissal.**  In consideration of the mutual covenants contained herein, including Lehman's payment of the amounts set forth in Paragraph 2.1, Plaintiffs agree to the entry of a judgment of dismissal in this Action, with prejudice as to Lehman, in accordance with Paragraph 3.5 below.

2.4  **No Liability Relating To Allocation Or Distribution Of Settlement Funds.**  Lehman and the Released Persons shall have no responsibility for, and no liability whatsoever with respect to, the allocation and/or distribution of the Settlement Funds between or among Plaintiffs, Plaintiffs' Counsel and/or any other person or entity that may assert a claim thereto, or the payment or non-payment of any amounts from the Settlement Funds to any of them.  Lehman takes no position with respect to such matters, including whether any

incentive awards can or should be awarded to Lead Plaintiffs or the amount of any such incentive awards. Under no circumstances may Lehman and the Released Persons be subjected to any Claim based upon the conduct of the Settlement Administrator or the allocation and/or distribution of any amounts pursuant to the Settlement.

2.5  Attorneys' Fees. Plaintiffs and Plaintiffs' Counsel expressly waive any and all rights to any attorneys' fees from Lehman in this Action.

2.6  Costs and Expenses.

(a)  Plaintiffs and/or Plaintiffs' Lead Counsel may submit an application to the Court for costs and expenses. Any order of the Court awarding costs and expenses to Plaintiffs and/or Plaintiffs' Counsel shall not exceed $1,500,000 (One Million Five Hundred Thousand Dollars) (the "Costs Order").

(b)  Consideration of any application for costs and expenses by the Court shall be separate from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Agreement.

(c)  Any order by the Court on any application by Plaintiffs or Plaintiffs' counsel for costs and expenses, or any appeal from such an order, shall not affect or delay the finality of the Judgment approving the Settlement of this Action.

3.  SETTLEMENT APPROVAL PROCEDURES

3.1  Best Efforts. The Parties agree to recommend approval of this Agreement to the Court, and to undertake their best efforts, including all steps and efforts contemplated by this Agreement and any other steps and efforts that may be reasonably necessary or appropriate, by order of the Court, or otherwise, to carry out the terms of this Agreement, including joint cooperation to have the Judgment entered and all required notices given in such a manner as to ensure that the Judgment becomes Final at the earliest possible time. Any dispute regarding forms of notices and other documents necessary to implement the Settlement contained in the Agreement, if not timely resolved among the Parties, shall be referred to the Court.

3.2    **Preliminary Approval.** On or before August 31, 2007, Plaintiffs shall submit a motion, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for entry of an order in a form to be mutually agreed upon by Lehman and Plaintiffs (the "Preliminary Approval Order"):

(a)    granting preliminary approval of the Settlement;

(b)    directing the form, manner, and timing of providing notice of the Settlement (including but not limited to the Release of Claims in Paragraph 4 hereof) to the Class in a manner that complies with the requirements of due process and federal law ("Notice");

(c)    specifying procedures for Class Members to follow in objecting to or commenting upon the Settlement, and the deadline for such comments or objections;

(d)    setting a Final Approval Hearing after Notice is given to consider whether the Settlement should be approved and whether the Judgment should be entered; and

(e)    staying all proceedings in the Action as against Lehman and prohibiting Class Members from instituting or prosecuting any further actions against Lehman asserting claims that are Released Claims under this Agreement.

3.3    **Class Notice.** Notice of the Settlement (including but not limited to the Release of Claims in Paragraph 4 hereof) shall be provided to the Class in the form and manner and at the time(s) directed by the Court in the Preliminary Approval Order to be entered pursuant to Paragraph 3.2 above. The cost of providing Notice shall be paid by Plaintiffs ("Notice Expenses").

3.4    **Objection Procedures.**

(a)    Any Class Member may appear at the Final Approval Hearing and show cause why the Court should not approve this Settlement and dismiss the Action with prejudice as to Lehman, and may appear at the hearing to support or oppose Plaintiffs' Lead Counsel's application for expenses and costs provided, however, that no Class Member shall be heard unless his, her or its objection or opposition is made in writing, signed by each individual member of

the Class so objecting, and is filed, together with any papers or briefs in support of such objections, with the Court on or before the deadline to be fixed by the Court. All such written objections and papers shall be copied to Plaintiffs' Lead Counsel and counsel for Lehman, by first-class mail, postage prepaid on or by the deadline to be fixed by the Court.

(b) The objection shall include: (i) the complete name and residence or business address of the individual Class Member so objecting (giving the address of any lawyer who represents the Class Member is not sufficient); (ii) a statement, signed under penalty of perjury by the objecting Class Member, that the member obtained a FAMCO mortgage loan during the Class Period; and (iii) each ground for comment or objection and any supporting papers the Class Member desires the Court to consider. These provisions shall be included in the form of order to be provided to the Court pursuant to Paragraph 3.2 above.

3.5  Final Approval/Order and Final Judgment. If, after the Final Approval Hearing, the Court finally approves the Settlement, Plaintiffs shall seek entry of an order and judgment in a form to be mutually agreed upon by the parties ("Order and Final Judgment"):

(a) determining that the Parties have submitted to the jurisdiction of the Court and that the Court has subject matter jurisdiction to approve the Agreement;

(b) finding that the Notice given pursuant to this Agreement satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process;

(c) approving finally the Settlement and its terms as being in good faith and a fair, reasonable and adequate settlement as to Plaintiffs and the Class, and directing the Settlement's consummation pursuant to its terms;

(d) finding that each Class Member is bound by the terms of the Settlement including the Release of Claims set forth in Paragraph 4 hereof, regardless of whether any such Class Member ever seeks or obtains by any means, including, without limitation, by submitting a proof of claim, any amounts from the Settlement Funds;

(e) dismissing the Action with prejudice as to Lehman;

(f) finding that Plaintiffs and Plaintiffs' Counsel are not entitled to attorneys' fees or costs and expenses, except as allowed in the Costs Order;

(g) providing that the Court shall retain jurisdiction to enforce this Agreement as between Lehman and Plaintiffs until performance in full of its terms, including the administration and distribution of the Settlement Funds;

(h) determining that there is no just reason for delay and ordering that the Judgment of dismissal of the Action shall be final and appealable;

(i) incorporating the releases set forth below (in Paragraph 4 of this Agreement) and forever releasing and discharging the Released Persons from the Released Claims; and

(j) barring, enjoining and prohibiting any Class Member from instituting or prosecuting, as a class member or otherwise, any further action or proceeding, in any jurisdiction, against the Released Persons asserting any Released Claims.

3.6  Effect of Court Disapproval. If the Court for any reason determines not to approve the Settlement and enter the Judgment in substantially the form agreed upon by the Parties pursuant to Paragraph 3.5, or conditions its approval on any modification of this Agreement that is not mutually acceptable to the Parties, or if the Court's approval is reversed or set aside on appeal, then this Agreement shall terminate and become null and void, except as otherwise provided in this Agreement.

3.7  Effective Date. The effective date of the Settlement shall be the date on which the last of each of the following conditions precedent occur are satisfied:

(a) the Court shall have entered a Preliminary Approval Order substantially in accordance with Paragraph 3.2 of this Agreement and the Class shall have been provided with Notice and an opportunity to object in accordance with such Notice;

(b) the Court shall have entered the Judgment in accordance with Paragraph 3.5 of this Agreement, which Judgment shall have become Final;

(c) the time for Lehman to exercise its right of termination under Paragraph 5.2 below has expired or Lehman has given written notice to the other Parties that it will not exercise such right; and

(d) the payments required by Paragraph 2.1 of this Agreement have been made.

3.8  **Lehman Has No Administration Responsibilities.** Neither Lehman nor the Released Persons shall have any responsibility for, interest in, or liability whatsoever with respect to the providing of any notice, the investment or distribution of the Settlement Funds, any plan of distribution, the determination, administration, or calculation of claims, the payment or withholding of any taxes, or any losses incurred in connection therewith.

4.  **RELEASES AND COVENANTS**

4.1  **Releases.**  Upon the Effective Date, Plaintiffs and each and every Class Member for themselves, their attorneys, spouses, executors, representatives, heirs, successors, and assigns, in consideration of the relief set forth herein, the sufficiency of which consideration is expressly acknowledged, fully and finally release and forever discharge the Released Persons from all Released Claims, whether or not such Class Member executes and delivers any proof of claim or release or otherwise shares in the Settlement Funds.

4.2  **Release of Attorneys' Fees Claims.**  Plaintiffs and Plaintiffs' Counsel in this Action hereby release all claims for attorneys' fees against the Released Persons.

4.3  **Third Party Beneficiaries.**  No person or entity other than the Released Persons shall be entitled to the benefits of, or entitled to enforce, the releases provided for in this Agreement.

4.4  **Section 1542 Waiver.**  To the fullest extent permitted by law, Plaintiffs, on behalf of themselves and each and every Class Member, expressly waive the benefits of any statutory provision or

common law rule that provides, in sum or substance, that a release does not extend to claims which the releasor does not know or suspect to exist in its favor at the time of executing the release, which if known by it, would have materially affected its settlement with the other party. In particular, but without limitation, Plaintiffs, on behalf of themselves and each and every Class Member, understand the provisions of California Civil Code Section 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs, on behalf of themselves and each and every Class Member, with the advice of counsel, hereby agree that (i) the provisions of California Civil Code Section 1542 are hereby knowingly and voluntarily waived and relinquished, and (ii) the provisions of all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction, to the extent that they are found to be applicable herein, also are hereby knowingly and voluntarily waived and relinquished. Notwithstanding the foregoing waiver of California Civil Code Section 1542, the Parties acknowledge that the releases set forth in this Agreement are specific to the matters set forth in the releases, although they include unknown claims, and are not intended to create general releases as to all claims, or potential claims, between the releasing and Released Persons.

4.5   Covenant Not to Sue.   Upon the Effective Date, each Class Member covenants and agrees to not seek to establish liability, or institute, maintain, collect, proceed, or otherwise assert any claims, demands, actions, or causes of action of any nature under federal or state law, on behalf of itself or any other person, entity or class, against any of the Released Persons, in whole or in part, for any of the Released Claims. The Parties agree that this covenant may be pled as a full and complete defense to any action, suit or other proceeding that may be instituted, prosecuted or attempted with respect to any of the Released Claims.

5.  TERMINATION

    5.1  Events of Termination. Lehman shall have the right and option to terminate this Agreement in the event that any of the following events (each an "Event of Termination") shall have occurred:

    (a)  The Court does not approve all material aspects of the Settlement and does not enter the Judgment in the form required by Paragraph 3.5; or

    (b)  The Judgment is modified before or after entry by the Court, or there is a material change to the terms of the Settlement not agreed to by Lehman; or

    (c)  The Judgment is withdrawn, rescinded, reversed, vacated or modified by the Court or on appeal.

    5.2  Exercise of Right of Termination.

    (a)  Following an Event of Termination, Lehman may terminate the Settlement by providing a written notice of termination ("Notice of Termination") to Plaintiffs' Lead Counsel within 15 calendar days following Lehman's receipt of notice of such Event of Termination.

    (b)  Notice of Termination will be deemed to have been timely provided to Plaintiffs' Lead Counsel upon any of the following actions: (i) service of the Notice of Termination upon Plaintiffs' Lead Counsel delivered personally or (ii) deposit by Lehman of the Notice of Termination with an overnight courier or (iii) transmission of the Notice of Termination to Plaintiffs' Lead Counsel by facsimile or via electronic mail, followed by certified mail.

    5.3  Effect of Termination. Unless otherwise ordered by the Court, in the event that the Effective Date does not occur or this Agreement should terminate, or be cancelled, or otherwise fail to become effective for any reason, including, without limitation, in the event that the Settlement is not approved by the Court or the Judgment is reversed or vacated following any appeal taken therefrom, or Lehman exercises its right to terminate this Agreement pursuant to Paragraph 5.2 above, then:

(a) the Parties shall be restored to their respective positions in this Action as of the date the Agreement was entered into, with all of their respective claims and defenses preserved as they existed on that date;

(b) the terms of this Agreement, with the exception of Paragraphs 6.1 and 6.3 (which shall continue in full force and effect) shall be null and void and shall have no further force or effect with respect to the Parties, and neither the existence nor the terms of this Agreement (nor the negotiations preceding this Agreement nor any acts performed pursuant to, or in furtherance of, this Agreement) shall be used or offered in evidence in the Action or in any other action or proceeding for any purpose (other than to enforce the terms remaining in effect); and

(c) any judgment or order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

6.  **GENERAL PROVISIONS**

6.1  **No Admission**.  It is expressly understood and agreed that this Agreement does not, in any way, embody, reflect, or imply any wrongdoing on the part of any of the Released Persons, and the Parties may not represent or claim that it does in any public statement and may not use it for that purpose in any subsequent legal proceeding or otherwise.  This Agreement reflects compromises of matters that are disputed – including whether the Class was damaged and, if so, the amount of any damages – and neither this Agreement nor any actions or proceedings undertaken in accordance with the terms of this Agreement shall be construed as, or deemed to be evidence of, or an admission or concession of, any wrongdoing by any of the Released Persons or of the validity of any of the Released Claims.  Neither this Agreement, nor any of its provisions, nor any statement made, document filed or action undertaken in connection with the Settlement, shall be filed, offered, received in evidence or otherwise used for any purpose in any action or other proceeding, except in connection with the applications for approval or applications for enforcement of this Agreement and all proceedings incident thereto.

6.2 <u>No Penalty or Fine</u>. The Parties agree and acknowledge that nothing paid in respect of this Agreement constitutes or shall in any way be deemed a payment of a penalty or a fine of any kind.

6.3 <u>No Prejudice to Parties</u>.

(a) In the event that the Settlement does not become Final in accordance with its terms, the Parties expressly reserve all of their rights and preserve all applicable defenses.

(b) If the Settlement does not become Final in accordance with its terms, the Action shall revert to its procedural and substantive status prior to the date of execution of this Agreement and shall proceed as if this Agreement, and all other related orders and papers, had not been executed.

(c) The provisions of this Paragraph 6.3 shall survive and continue to apply to each Party, even if the Court does not approve the Settlement, or if the Court's approval of the Settlement is set aside, or if Lehman terminates the Agreement pursuant to the provisions of Paragraph 5 of this Agreement.

6.4 <u>Binding Effect</u>. The terms of this Agreement shall be binding on, and inure to the benefit of, the Parties and their respective successors and assigns. The Parties expressly disclaim any intention to create rights under this Agreement that may be enforced by any other person under any circumstances whatsoever, except as provided in this Agreement.

6.5 <u>Entire Agreement</u>. This Agreement contains the entire, complete and integrated statement of each and every term and provision agreed to by the Parties, and is not subject to any conditions not provided for in this Agreement. There are no additional promises, understandings or terms of the Settlement other than those contained herein. This Agreement supersedes and renders of no effect all other oral or written communications concerning the subject matter hereof. Each Party represents and warrants to the others that, in entering into this Agreement, it has not relied upon any representations or promises not contained in this Agreement.

6.6    Modification and Waiver.  After the Court's entry of the Preliminary Approval Order in accordance with Paragraph 3.2, the terms and provisions of this Agreement may not be changed, waived, modified, or varied in any manner whatsoever unless in a writing duly signed by the Parties and approved by the Court.  Any failure by any Party to insist upon the strict performance by any other Party of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, and that Party, notwithstanding that failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Agreement to be performed by the other Party.

6.7    Governing Law.  This Agreement, including, but not limited to, the releases contained herein, shall be governed by and construed in accordance with Federal Law, including Rule 23 of the Federal Rules of Civil Procedure.  To the extent not covered by Federal Law, this Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed in the State of California, and the rights and obligations of the Parties shall be construed and enforced in accordance with, and governed by, the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

6.8    No Party is the Drafter.  This Agreement shall be deemed to have been mutually prepared by the Parties and shall not be construed against any of them solely by reason of authorship.

6.9    Authority.  Each person signing this Agreement hereby represents and warrants that he or she is authorized to enter into this Agreement on behalf of that Party.  Plaintiffs' Lead Counsel, on behalf of the Class, are expressly authorized by the Lead Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to this Agreement to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to this Agreement on behalf of the Class which they deem appropriate.

6.10 <u>Execution in Counterparts</u>.  The signatories to this Agreement may execute this Agreement in counterparts, and the execution of counterparts shall have the same effect as if all counsel had signed the same instrument.  Facsimile signatures shall be considered as valid signatures as of the date of this Agreement.

6.11 <u>Jurisdiction</u>.  The Court shall have exclusive jurisdiction over all provisions and terms of the Settlement, including the administration of the Settlement and the Settlement Funds and the acts to be undertaken pursuant to this Agreement and any and all disputes of any kind relating to or arising out of this Agreement.

6.12 <u>Enforcement</u>.  Once effective, this Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims.  The Parties agree that for any such proceeding, the Court or any court of competent jurisdiction may enter an injunction restraining prosecution of such proceeding.

6.13 <u>Notice</u>.  Any and all notices, requests, consents, directives, instructions or communications by any Party intended for any other Party shall be in writing and shall, unless expressly provided otherwise herein, be delivered personally, or sent by Federal Express, or facsimile transmission (followed by U.S. Mail, first-class postage prepaid), and shall be addressed as follows:

<u>If to the Class</u>:

    Richard F. Scruggs
    Sidney A. Backstrom
    D. Zachary Scruggs
    SCRUGGS LAW FIRM
    120A Courthouse Square
    P.O. Box 1136
    Oxford, MS  38655
    Tel:  (662) 281-1212
    Fax:  (662) 281-1312

If to Defendants:

Helen L. Duncan
Joseph H. Park
FULBRIGHT & JAWORSKI LLP
555 S. Flower St., 41st Fl.
Los Angeles, California 90071
Tel: (213) 892-9200
Fax: (213) 892-9494

Any of the Parties may, from time to time, change the address to which such notices, requests, consents, directives or communications are to be delivered, by giving the other Parties prior written notice of the changed address, in the manner herein above.

IN WITNESS WHEREOF, the Parties, by and through their authorized counsel of record, have agreed to this Agreement.

FULBRIGHT & JAWORSKI L.L.P.          THE SCRUGGS LAW FIRM
*Attorneys for Defendants Lehman*    *Lead Counsel for Plaintiffs and the*
*Brothers Inc. and Lehman*           *Class*
*Commercial Paper, Inc.*

By: _____           By: _____
Name: Helen L. Duncan                Name: Richard F. Scruggs
Date: August _____, 2007             Date: August  28 , 2007
                                          September

If to Defendants:

Helen L. Duncan
Joseph H. Park
FULBRIGHT & JAWORSKI LLP
555 S. Flower St., 41st Fl.
Los Angeles, California 90071
Tel:  (213) 892-9200
Fax: (213) 892-9494

Any of the Parties may, from time to time, change the address to which such notices, requests, consents, directives or communications are to be delivered, by giving the other Parties prior written notice of the changed address, in the manner herein above.

IN WITNESS WHEREOF, the Parties, by and through their authorized counsel of record, have agreed to this Agreement.

| FULBRIGHT & JAWORSKI L.L.P. | THE SCRUGGS LAW FIRM |
|---|---|
| *Attorneys for Defendants Lehman Brothers Inc. and Lehman Commercial Paper, Inc.* | *Lead Counsel for Plaintiffs and the Class* |
| By: /s/ HL Duncan | By: _____ |
| Name:  Helen L. Duncan | Name:  Richard F. Scruggs |
| Date: August 15, 2007 | Date: August ____, 2007 |