Hearing Date and Time: February 11, 2009 at 10:00 a.m (Prevailing Eastern Time)
Objection Date and Time: February 6, 2009 at 4:00 p.m (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                                   :
**In re**                                                          :   **Chapter 11 Case No.**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                       :   **08-13555 (JMP)**
                                                                   :
                          **Debtors.**                             :   **(Jointly Administered)**
                                                                   :
-------------------------------------------------------------------x

# NOTICE OF DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 364 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO GRANT FIRST PRIORITY LIENS IN CASH COLLATERAL POSTED IN CONNECTION WITH THE HEDGING TRANSACTIONS THE DEBTORS ENTER INTO THROUGH CERTAIN FUTURES AND PRIME BROKERAGE ACCOUNTS

   PLEASE TAKE NOTICE that a hearing on the annexed motion, dated as of January 28, 2009 (the "Motion"), of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors"), pursuant to sections 105 and 364 of title 11 of the United States Code for authorization to grant first priority liens in collateral posted in connection with the hedging transactions the Debtors' will enter into through certain futures and prime brokerage accounts, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **February 11, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

   PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing

system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Lori R. Fife, Esq. and Robert J. Lemons, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be so filed and received no later than **February 6, 2009 at 4:00 p.m. (prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: January 28, 2009
     New York, New York

    /s/ Lori R. Fife
    Lori R. Fife
    Robert J. Lemons

    WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007

    Attorneys for Debtors
    and Debtors in Possession

Hearing Date and Time: February 11, 2009 at 10:00 a.m (Prevailing Eastern Time)
Objection Date and Time:  February 6, 2009 at 4:00 p.m (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re                                                   :    Chapter 11 Case No.
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,            :    08-13555 (JMP)
                                                        :
                        Debtors.                        :    (Jointly Administered)
                                                        :
------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO**
**SECTIONS 105 AND 364 OF THE BANKRUPTCY CODE**
**AUTHORIZING THE DEBTORS TO GRANT FIRST PRIORITY**
**LIENS IN CASH COLLATERAL POSTED IN CONNECTION**
**WITH THE HEDGING TRANSACTIONS THE DEBTORS ENTER INTO**
**THROUGH CERTAIN FUTURES AND PRIME BROKERAGE ACCOUNTS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

       Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), respectfully represent:

**Background**

       1.    Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate (the "SIPA Trustee"). On January 19, 2009, the U.S. Trustee appointed an examiner (the "Examiner") and on January 20, 2009, the Court approved the U.S. Trustee's appointment of the Examiner.

### Jurisdiction

4. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Lehman's Business

5. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide. Its headquarters in New York and regional headquarters in London and Tokyo are complemented by a network of offices in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

6.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Relief Requested

7.      The Debtors are seeking authorization, pursuant to sections 105 and 364(c)(2) of the Bankruptcy Code, to grant first priority liens to certain broker dealers (the "Broker Dealers") in cash, securities, and other collateral that will be posted in connection with Institutional Futures Account Agreements, Prime Brokerage Account Agreements, and other related agreements (together, the "Agreements") that the Debtors may enter into with such Broker Dealers. These Agreements will enable the Debtors to engage in a variety of hedging transactions aimed to reduce the risk associated with market fluctuations that could cause the value in certain prepetition derivative contracts to deteriorate.

## Prepetition Derivative Contracts

8.      As of the Commencement Date, the Debtors were party to more than 900,000 prepetition derivative contracts (the "Derivative Contracts"). The values and the contractual obligations of the Debtors and their counterparties to these Derivative Contracts are keyed to various assets or indices of asset values. In certain instances, the commencement of the Debtors' chapter 11 cases constituted events of default under the Derivative Contracts and certain counterparties have purportedly terminated the Derivative Contracts on such basis. In other instances the counterparties have not asserted this right presumably because termination of

the Derivative Contract would result in a net payment to the Debtors.  The latter contracts are "in the money" and constitute significant assets of the Debtors' estates.

9. With respect to the "in the money" contracts, the Debtors run the risk that movements in the financial markets could change the net amounts owing and destroy the value in these Derivative Contracts that would otherwise be available to the Debtors' estates and stakeholders in these chapter 11 cases if they were immediately liquidated.  To avoid this result and preserve the bargained for value, the Debtors have taken certain actions aimed to preserve the value in these Derivative Contracts.

10. First, the Court authorized the Debtors to, among other things, implement procedures for the assumption and assignment of some or all of these "in the money" Derivative Contracts to third parties in exchange for consideration that will provide realizable value to the estates.[1]  Second, the Court authorized the Debtors to assume and assign certain derivative contracts but with the consent of the applicable counterparty and with respect to certain counterparties in accordance with the terms of the applicable Derivatives Contract.[2]  In each case, the Debtors' strategy is to capture the value of the "in the money" Derivative Contracts by assuming and assigning them in exchange for consideration that will increase the value of the Debtors' estates.

11. During the Debtors' review of these various "in the money" Derivative Contracts and prior to their assumption and assignment, the Debtors continue to run the risk that movements in the financial markets could change the net amounts owing and destroy the value

---

[1] Order, dated December 16, 2008, authorizing the Debtors to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts [Docket 2257].

[2] Order, dated January 29, 2009, authorizing the consensual assumption and assignment of prepetition derivative contracts [Docket No. 2667].

available to the Debtors' estates and stakeholders in these chapter 11 cases, thus providing a windfall to counterparties at the expense of the Debtors and their estates.

12. To guard against this risk and further preserve the values in the Derivative Contracts, the Debtors in the ordinary course of their business would enter into certain hedges. To implement this strategy during these chapter 11 cases, the Debtors plan to enter into the Agreements with the Broker Dealers to open futures accounts and prime brokerage accounts (the "Accounts"). Through these Accounts, the Debtors will enter into a diverse range of trading or hedging transactions including but not limited to over the counter transactions (the "Hedging Transactions") that will serve as a hedge against any potential future loss in value under the applicable Derivative Contract.

13. The Debtors' entry into the Hedging Transactions will provide them with a hedge against their short or long trading positions under the Derivatives Contracts but require the posting of cash, securities, or other collateral (the "Collateral") that is equal to a percentage of the value of the Hedging Transaction. The Broker Dealer counterparties to these Hedging Transactions will extend credit to the Debtors by making the full value of the Hedging Transactions available to the Debtors while only requiring the posting of Collateral that is less than such transactions' full value. In each case, the Collateral requirements will be determined by the Broker Dealer and will be driven by industry standards that take into consideration the type of transaction and the credit risk associated with the Debtors as a counterparty. The Debtors will grant the Broker Dealers a first priority lien in the Collateral to secure the Debtors' performance obligations under the Agreements.

14. The Accounts and the Hedging Transactions are not being utilized as an investment vehicles but only as a means to continue the hedging practices the Debtors engaged

in prior to the Commencement Date and in each case relate to transactions that the Debtors entered into prior to the Commencement Date.  Further, the Debtors will not enter into any Agreement and open an Account with a Broker Dealer unless such dealer agrees that the Collateral in the Accounts cannot and will not be used to set-off any other prepetition or postpetition claims that that such Broker Dealer (or its affiliates) may have against the Debtors.

### Basis for Relief Requested

15.     Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the court may authorize the debtor to incur debt secured by a lien on property of the estate that is not otherwise subject to a lien.  11 U.S.C. § 364(c)(2).

16.     After the Debtors open the Accounts and enter into the Hedging Transactions, the Debtors propose to grant the various Broker Dealers a perfected first priority lien in such Collateral pursuant to section 364(c)(2) of the Bankruptcy Code.

17.     The Debtors cannot engage in the necessary hedging transactions without granting first priority liens on cash collateral because the Broker Dealers will not enter into and will not accept the risk associated with the Hedging Transactions on an unsecured basis. Furthermore, the exchanges will require the Broker Dealer that execute these Hedging Transactions for the Debtors to post an acceptable amount of Collateral.  The Collateral is not subject to any existing liens and the Debtors believe the terms of the Agreements, which are standard in the industry, to be fair and reasonable.

18.     Provided that a debtor's business judgment does not run afoul of the provisions of and policies underlying the Bankruptcy Code, courts grant a debtor considerable

deference in exercising its sound business judgment. See, e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1089 (4th Cir. 1986); In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest."). See also In re Funding Sys. Asset Mgmt. Corp., 72 B.R. 87, 88 (Bankr. W.D. Pa. 1987); In re Simasko Prod. Co., 47 B.R. 444, 449 (Bankr. D. Colo. 1985); In re Curlew Valley Assocs., 14 B.R. 506, 513-14 (Bankr. D. Utah 1981).

19. Here, the Debtors have determined that the credit provided by the Hedging Transactions is only available on a secured basis. Pursuant to section 364(c)(2) of the Bankruptcy Code, the Debtors submit that entering into the Hedging Transactions is in the best interests of the Debtors, their estates, and the stakeholders in these cases because the hedging practices discussed above permit the Debtors to reduce the risk associated with market fluctuations that could deteriorate the value currently embedded in the Derivative Contracts.

## Notice

20. No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on September 22, 2008 governing case management and administrative procedures for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested

notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

21.  No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  January 28, 2009
      New York, New York

                              /s/ Lori R. Fife
                              Lori R. Fife
                              Robert J. Lemons

                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York 10153
                              Telephone: (212) 310-8000
                              Facsimile: (212) 310-8007

                              Attorneys for Debtors
                              and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                    :

| | |
|---|---|
| In re | : Chapter 11 Case No. |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : 08-13555 (JMP) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |
| | : |

------------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105 AND 364 OF THE
BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO GRANT
FIRST PRIORITY LIENS IN CASH COLLATERAL POSTED IN CONNECTION
WITH THE HEDGING TRANSACTIONS THE DEBTORS ENTER INTO
THROUGH CERTAIN FUTURES AND PRIME BROKERAGE ACCOUNTS**

Upon the motion, dated January 28, 2009 (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105 and 364 of the Bankruptcy Code, for authorization to grant first priority liens to broker dealers (the "Broker Dealers") in cash, securities, and other collateral (the "Collateral") that is posted in connection with hedging transactions (the "Hedging Transactions") the Debtors will enter into through certain futures and prime brokerage accounts that the Debtors will open pursuant to the terms of those certain Institutional Futures Account Agreements, Prime Brokerage Account Agreements, and other related agreements (together, the "Agreements"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the order entered September 22, 2008 governing case management and administrative procedures [Docket No. 285] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Creditors' Committee (the "Creditors' Committee"); (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

   ORDERED that the Motion is granted; and it is further

   ORDERED that the Debtors, subject to the terms of the applicable Agreements and Hedging Transactions, are hereby authorized to post Collateral to those futures and prime brokerage accounts (together, the "Accounts") to be established with the various Broker Dealers under the terms and conditions set forth in the Agreements; and it is further

   ORDERED that the Debtors shall not post Collateral that exceeds industry standards as adjusted for a debtor in possession; and it is further

ORDERED that the Debtors are authorized to supplement or remove Collateral from the Accounts, as required by the applicable Agreement, Hedging Transaction, or the related agreement to the Hedging Transaction; and it is further

ORDERED that the Debtors are authorized to grant the Broker Dealers first priority liens in the Collateral; and it is further

ORDERED that the Debtors are hereby authorized to execute and deliver all instruments and documents, and take such other actions, as may be necessary or appropriate to implement and effectuate the Agreements, in the manner set forth herein, including, but not limited to the delivery of the Collateral and granting of first priority liens on the Collateral; and it is further

ORDERED that entry of this Order is without prejudice to the rights of the Debtors, including, but not limited to, the right to seek further, other, or different relief regarding the Derivative Contracts; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order and/or the terms of any assumption and assignment consummated in the manner set forth herein.

Dated: February ___, 2009
      New York, New York

                                          UNITED STATES BANKRUPTCY JUDGE