WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
**In re**                                                                              :    **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :    **08-13555 (JMP)**
:
Debtors.                                               :    **(Jointly Administered)**
:
:
---------------------------------------------------------------x

**DEBTORS' SUPPLEMENTAL BRIEF IN SUPPORT OF OBJECTION
TO MOTION OF DNB NOR BANK ASA FOR (I) RELIEF FROM THE
AUTOMATIC STAY TO EFFECT SETOFF OR, IN THE ALTERNATIVE, (II) AN
ORDER REQUIRING THE DEBTORS TO PROVIDE ADEQUATE PROTECTION**

**Preliminary Statement**

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this supplemental brief in support of their objection, dated November 3, 2008 [Docket No. 1334 (as amended by Docket No. 1342)] and the supplemental objection, dated December 2, 2008 [Docket No. 1988], to the motion of DnB Nor Bank ASA ("DnB NOR"), filed September 30, 2008 [Docket No. 465] (the "Motion"), for relief from the automatic stay to effect setoff or, in the alternative, an order requiring LBHI to provide adequate protection in LBHI's chapter 11 case.

NY2:\1945692\07\15PB007!.DOC\58399.0003

On September 15, 2008, a pre-chapter 11 account that LBHI maintained with DnB NOR (the "'268 Account") had a balance of 106,178,587.79 Norwegian Kroner ("NOK"). Pursuant to the Motion, DnB NOR seeks to setoff that entire amount against prepetition claims it asserts against LBHI. It is undisputed that 99,113,236.36 NOK of the total amount on deposit in the '268 Account was deposited prior to the commencement of LBHI's chapter 11 case. Accordingly, a stipulation and agreement among LBHI, the Official Creditors' Committee (the "Committee"), and DnB NOR (collectively, the "Parties") was approved by the Court on January 22, 2009, [Docket No. 2605] (the "Stipulation and Order") that modified the automatic stay for the limited purpose of permitting DnB NOR to setoff that 99,113,236.36 NOR against its pre-chapter 11 claims.

The Debtors and the Committee, however, dispute DnB NOR's contention that it is also entitled to setoff its prepetition claims against the 7,065,351.56 NOK and any other funds that have accrued or credited to LBHI's '268 Account since the date and time of LBHI's chapter 11 petition.

There is no dispute that section 553(a) of title 11 of the United States Code (the "Bankruptcy Code") prohibits a creditor from setting off its prepetition claims against a deposit that occurred after the commencement of a debtor's case. Pursuant to the Stipulation and Order, the Parties stipulated to the evidentiary record, in this proceeding, which demonstrates beyond peradventure that the 7,065,351.56 NOK was not credited to LBHI's '268 Account until after the commencement of its case. Accordingly, the Motion is not supported by the undisputed facts and evidence and must, therefore, be denied.

**Statement Of Facts**

Pursuant to the Stipulation and Order, the Parties agreed that the facts set forth therein are undisputed, and that those facts, and the exhibits annexed to the Stipulation and Order and admitted in evidence and, along with the statements made at the status conferences on November 5, 2008 and November 20, 2008 and the hearing on the Motion held on December 3, 2008, constitute the entire record regarding this dispute (collectively, the "Record"). Stipulation and Order at ¶¶ 9-11. All facts that constitute the Record are incorporated herein by reference and are summarized below.

1.  Terms and Conditions of the '268 Account

On March 1, 2008, LBHI borrowed $25,000,000 from DnB NOR pursuant to a three year revolving credit facility (the "Credit Facility"). Stipulation and Order at ¶ 1 and Exhibit A. Prior to the commencement of LBHI's chapter 11 case, LBHI established a cash deposit account with DnB NOR, the '268 Account, denominated in Norwegian Kroner. Stipulation and Order at ¶ 2 and Exhibit B.

The terms, conditions, and procedures regarding the transfer or payment of cash to and from the '268 Account are governed by the cash account terms and conditions established by DnB NOR (the "Terms and Conditions"). Stipulation and Order at Exhibit B. The Terms and Conditions provide that transfer or payment instructions will be effected and credited to a beneficiary's account on a same day basis if transfer or payment instructions are received prior to the applicable cut-off time. Stipulation and Order at Exhibit B. The Terms and Conditions provide that the cut-off deadline for transfer or payment instructions is 3:00 p.m. (Central European Time) ("CET"). DnB NOR's Terms and Conditions provide that the funds directed by a transfer or payment instruction received after the cut-off deadline will be made available to the beneficiary when those funds are credited to its account on the next business day. Stipulation

and Order at Exhibit B. A party that executes transfer or payment instructions may amend or cancel its transfer or payment instructions provided that the direction is received prior to 10:00 a.m. (CET). Stipulation and Order at Exhibit B. Thus, the Terms and Conditions restrict DnB NOR from consummating any transfer or payment instruction prior to the expiration of such cancellation period.

2.   The Transfer Instructions

Lehman Brothers Commercial Corporation ("LBCC") executed an instruction that directed DnB NOR to transfer 6,856,351.56 NOK from LBCC's account that LBCC maintained at DnB NOR (the "LBCC Account") to LBHI's '268 Account (the "6.8M NOK Transfer Instruction"). Stipulation and Order at ¶ 3 and Exhibit C. The 6.8M NOK Transfer Instruction reflects that the LBCC Account would not be debited, and LBHI's '268 Account would not be credited, until September 15, 2008. Stipulation and Order at ¶ 3 and Exhibit C.

The 6.8M NOK Transfer Instruction was received by DnB NOR on September 12, 2008 at 6:03 p.m. (CET)[1], approximately three hours after the cut-off time. Stipulation and Order at ¶ 3 and Exhibit C. Because the 6.8M NOK Transfer Instruction was received after the cut-off deadline, the 6,856,351.56 NOK could not be credited to LBHI's '268 Account and thus could not have been made available to LBHI any earlier than the next business day, September 15, 2008 at 10:00 a.m. (CET). Stipulation and Order at Exhibits B and C.

LBCC also executed an instruction that directed DnB NOR to transfer 200,000 NOK (the 200,000 NOK together with the 6,856,351.56 NOK, the "Disputed Amount" or "7,056,356.56 NOK") from the LBCC Account to LBHI's '268 Account (the "200,000 NOK

---

[1] The time stamps on the Transfer Instructions are as of Greenwich Mean Time ("GMT"). However, for convenience, all times referenced herein with respect to the Transfer Instructions have been changed to reflect the local time in Norway, which is one hour ahead of GMT.

Transfer Instruction" and together with the 6.8M NOK Transfer Instruction, the "Transfer Instructions"). Stipulation and Order at ¶ 4 and Exhibit D. The 200,000 NOK Transfer Instruction reflects that the LBCC Account was not to be debited and that LBHI's '268 Account was not to be credited until September 15, 2008. Stipulation and Order at ¶ 4 and Exhibit D.

The 200,000 NOK Transfer Instruction was received by DnB NOR on September 12, 2008 at 6:06 p.m. (CET),[2] approximately three hours after the cut-off time. Stipulation and Order at ¶ 4 and Exhibit D. As with the 6.8M NOK Transfer Instruction, because the 200,000 NOK Transfer Instruction was received after the cut-off deadline, it too could not be credited to LBHI's '268 Account, and thus could not have been made available to LBHI any earlier than the next business day, September 15, 2008 at 10:00 a.m. CET. Stipulation and Order at Exhibits B and D.

3. The Commencement of LBHI's Chapter 11 Case

On September 15, 2008 at 1:45 a.m. (Eastern Daylight Time) ("EDT"), LBHI commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Commencement Date"). Stipulation and Order ¶ 5. There is a six hour difference between the local time in Norway and New York. Thus, at the time LBHI commenced its chapter 11 case it was 7:45 a.m. (CET) in Norway.

4. The Transaction Log

DnB NOR prepared and produced a transaction log (the "Transaction Log") that sets forth the date and time when the amounts directed by transfer or payments instructions were credited and made available to LBHI's '268 Account. Stipulation and Order at Exhibit E. In accordance with the Terms and Conditions of LBHI's '268 Account, the Disputed Amount was

---

[2] See footnote 1 above.

not credited to, and thus not available to, LBHI until 12:54 p.m. (CET), which equates to 6:54 a.m. EDT, approximately five hours <u>after</u> the commencement of LBHI's chapter 11 case. Stipulation and Order ¶ 7 and Exhibit E.

## I.

### The Undisputed Facts Demonstrate That The Disputed Amount Is Not Eligible For Setoff

The Bankruptcy Code does not provide for an independent right of setoff but rather incorporates the applicable right under non-bankruptcy law. *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 138-39 (2d Cir. 1998). The Bankruptcy Code, however, limits setoff rights to debts between a debtor and its creditor that (i) are mutual and (ii) arose prepetition. *Bennett Funding*, 146 F.3d at 139. The treatment of setoff rights in bankruptcy is addressed in section 553 of the Bankruptcy Code. Section 553(a) of the Bankruptcy Code provides, in relevant part, that:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset <u>a mutual debt</u> owing by such creditor to the debtor that <u>arose before the commencement of the case</u> under this title against a claim of such creditor against the debtor that <u>arose before the commencement of the case</u>. . . .

11 U.S.C § 553(a) (emphasis supplied).

The deposit of cash into a bank account creates a debtor-creditor relationship between the bank (as debtor) and the holder of the account (as creditor), at which time the depositor "parts with title to the funds in exchange for a debt owed to him by the bank." *Bennett Funding*, 146 F.3d at 139; *Pioneer Commercial Funding Corp. v. Apple Bank for Savings* (*In re Pioneer Commercial Funding Corp.*), 140 B.R. 951, 956 (Bankr. S.D.N.Y. 1992).

Section 553(a) preserves a creditor's right to setoff, but only for a "mutual debt owing by such creditor to the debtor that arose before the commencement of the case." 11

U.S.C. § 553(a). Thus, the filing of a petition marks the time at which mutuality ceases; any funds thereafter deposited are considered property of the bankruptcy estate and not eligible for setoff against debts owed to the creditor that arose prior to the petition date. *See, e.g., In re Orr*, 234 B.R. 249, 254 (Bankr. N.D.N.Y. 1999) (noting that "it is clear that the right of setoff cannot exist in postpetition deposits."); *In re Keather*, 208 B.R. 406, 415 (Bankr. S.D. Ohio 1997) (stating that "it is clear that the right of setoff cannot exist in postpetition deposits" and denying bank's motion to apply amounts deposited in bank account postpetition against a prepetition claim); *In re Springfield Casket Co., Inc.,* 21 B.R. 223, 228 (Bankr. S.D. Ohio 1982) ("In the context of bankruptcy, postpetition debts may not provide the basis for setoff because mutuality ceases upon the filing of the bankruptcy estate.").

Notably, one court aptly held, a creditor cannot setoff against funds "unless the funds to be set off are in existence in a location where the creditor may effect setoff." *In re Cloverleaf Farmer's Co-Operative*, 114 B.R. 1010, 1018 (Bankr. D.S.D. 1990). Here, the Disputed Amount was not "in existence in a location where" DnB NOR could effect setoff against its claims under the Credit Agreement because the Disputed Amount was not credited to LBHI's '268 Account prior to the commencement of LBHI's chapter 11 case. Immediately prior to 1:45 a.m. (EDT), on September 15, 2008, the hour and date of LBHI's filing of its chapter 11 petition, the Disputed Amount was deposited in and credited to the LBCC Account. At that time, DnB NOR owed a debt to LBCC in an amount equal to the Disputed Amount. Thus, DnB NOR's setoff rights with respect to the Disputed Amount were limited to any claims against LBCC, not LBHI. In addition, DnB NOR's setoff rights with respect to the Disputed Amount against any claims it might have against LBCC were waived upon the transfer from the LBCC Account to LBHI's '268 Account. *See*, *Orr*, 234 B.R. at 254 (holding that when a bank

voluntarily releases prepetition funds after the commencement of a debtor's case it waives the right to setoff against such funds).

As the undisputed facts demonstrate, DnB NOR was not entitled to setoff against its claims under the Credit Agreement against the Disputed Amount until such amount was credited to and made available to LBHI.  However, the Disputed Amount was not credited to LBHI's '268 Account and made available to LBHI until approximately five hours <u>after</u> the commencement of LBHI's chapter 11 case.  The deposit of the Disputed Amount after the commencement of LBHI's chapter 11 case "may not provide the basis for setoff because mutuality ceases upon the filing of the bankruptcy estate," *Springfield Casket Co.,* 21 B.R. at 228, and the claim that arose from such deposit is a postpetition claim.  *Keather*, 208 B.R. at 415.  Thus, DnB NOR's attempt to enforce its setoff rights against the Disputed Amount fails because there is no mutuality and it cannot setoff prepetition claims against postpetition claims.

Moreover, the execution of the Transfer Instructions on September 12, 2008, the first step in the process of transferring the funds to LBHI, does alter the status of the 7,056,356.56 NOK from a postpetition to prepetition deposit.  As this Court held, a debt arises between two parties "when all transactions necessary for liability have occurred, regardless of whether the claim was contingent when the petition was filed."  *In re BOUSA INC.*, 2006 WL 2864964, *3 (Bankr. S.D.N.Y. Sept. 29, 2006).  In *BOUSA*, the debtor filed claims against a federal agency in the Court of International Trade alleging that the agency was liable for improper custom practices.  *Id.*  The debtor argued that this claim should be characterized as postpetition because the judgment fixing and liquidating the claim did not occur until after the commencement of its case.  *Id.*  This Court, however, disagreed holding that all acts giving rise to liability arose prior to the petition date and as such rendered the claim prepetition.  *Id.*

Here, however, the Terms and Conditions of the '268 Account demonstrate that all transactions had not occurred for liability to attach to DnB NOR with respect to the Disputed Amount prior to the commencement of LBHI's chapter 11 case. The Terms and Conditions provided LBCC with an unconditional and unilateral right to amend or cancel the Transfer Instructions at any time prior 10:00 a.m. (CET) on September 15, 2008, which is approximately three hours after the commencement of LBHI's chapter 11 case. Accordingly, as of the Commencement Date, LBHI did not have access to or control of the Disputed Amount, and did not obtain such access or control, and DnB NOR did not have liability to LBHI with respect to such funds until after the commencement of LBHI's chapter 11 case. Base on the foregoing, the requisite mutuality for setoff is lacking, and the Motion must, therefore, be denied.

**II.**

**Funds Transfers Pursuant To U.C.C. Article 4A
Demonstrate As Of The Commencement Of LBHI's Chapter 11 Case,
<u>The Disputed Amount Was Not Property of LBHI And Not Eligible For Setoff</u>**

As discussed above, the Record demonstrates that the deposit of the Disputed Amount and its credit to LBHI's '268 Account occurred after the commencement of LBHI's chapter 11 case, and as such it is not eligible for setoff against the prepetition claims of DnB NOR under the Credit Agreement.

While it is unlikely that European payment instructions, such as the Transfer Instructions, are governed by Article 4A of Uniform Commercial Code (the "<u>U.C.C.</u>"), the U.C.C. is instructive as it suggests the irrefutable conclusion that the Disputed Amount is not eligible for setoff by DnB NOR notwithstanding the execution of the Transfer Instructions on September 12, 2008.

The Transfer Instructions were executed through the Society for Worldwide Interbank Financial Telecommunication ("SWIFT") system. The Official Uniform Comment to section 4A-105(a)(5) of the Uniform Commercial Code ("U.C.C.") recognizes SWIFT as a "funds-transfer system" under Article 4A of the U.C.C. U.C.C. § 4A-105, Official Comment 3.

The U.C.C.'s definition of a payment order ("Payment Order") is substantially similar to the Transfer Instructions. The U.C.C. defines a Payment Order as,

> an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary: (i) the instruction does not state a condition to payment to the beneficiary other than time of payment, (ii) the receiving bank is to be reimbursed by debiting an account of, or otherwise receiving payment form, the sender, and (iii) the instruction is transmitted by the sender directly to the receiving bank or to an agent, funds transfer system, or communication system for transmittal to the receiving bank.

U.C.C. § 4A-103(a)(1). When making a determination whether an instruction is a Payment Order, the court must look to the conditions set forth in the instruction. *Grabowski v. Bank of Boston*, 997 F. Supp. 111, 121 (D. Mass. 1997). If the instruction does not contain any limitations other than the time of payment, then the instruction is a Payment Order. *Id.*

Here, the only limitation set forth by the Transfer Instructions relate to the timing of payment. The Transfer Instructions clearly state that the debit of the LBCC Account and the credit to LBHI's '268 Account was not to occur until September 15, 2008. Accordingly, if the Transfer Instructions had originated within a jurisdiction subject to the U.C.C. the Transfer Instructions would be recognized as Payment Orders.

The U.C.C. defines the sequence of events commencing with an originator's Payment Order through the transfer of funds from one party to another as a funds transfer ("Funds Transfer"). Article 4A defines Funds Transfer as,

> the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order. A funds transfer <u>is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order</u>.

U.C.C. § 4A-104(a) (emphasis supplied). A Funds Transfer includes a Payment Order to transfer funds from one account to a separate account located at the same bank. U.C.C. § 4A-104(a), Official Uniform Comments 1 and 6; *Fitts v. AmSouth Bank*, 917 So. 2d 818, 822 (Ala. 2005).

In *Grabowski*, the court outlined the events that occur during the course of an ordinary Funds Transfer as follows:

> A funds transfer involves a series of events that begins when a "sender" or the sender's agent gives an instruction to pay a beneficiary to a "receiving bank." The receiving bank then transmits the instruction to the beneficiary's bank. The beneficiary bank credits the beneficiary's account, and the receiving bank is reimbursed by debiting the sender's account or otherwise receiving payment from the sender.

*Grabowski*, 977 F. Supp. at 121 (internal citations omitted). The "sender" is the originator of the Payment Order; the "beneficiary" is the person or entity to be paid by the beneficiary's bank; and the "beneficiary's bank" is the bank identified in the Payment Order to which the account of the beneficiary is to be credited. U.C.C. § 4A-103. The receiving bank and the beneficiary bank can be the same bank. U.C.C. § 4A-104, Official Uniform Comment 1, Case #1.

Consummation of a Funds Transfer occurs upon the beneficiary bank's acceptance of the Payment Order, which occurs when the beneficiary bank makes the <u>payment</u> to

the beneficiary or notifies the beneficiary of receipt of the order that the account has been credited ("Acceptance"). *United States v. BCCI Holdings (Luxemborg), S.A.*, 980 F. Supp. 21, 27 (D.D.C. 1997). Under Article 4A of the U.C.C., Acceptance of a Payment Order causes title of the funds to transfer to the beneficiary. *Id.* Section 4A-405 provides that a beneficiary bank's payment ("Payment") to a beneficiary occurs to the extent "(i) the beneficiary is notified of the right to withdraw the credit, (ii) the bank lawfully applies the credit to a debt of the beneficiary, or (iii) funds with respect to the order are otherwise made available to the beneficiary by the bank." U.C.C. § 4A-405(a); *First Security Bank of New Mexico v. Pan American Bank, et al.*, 215 F.3d 1147, 1155-56 (10th Cir. 2000).

In *First Security*, the lower court held that the Payment of the transfer instructions to the beneficiary did not occur when the account was credited but rather when notice was provided to the beneficiary. *Id.* at 1155. The Court of Appeals for the Tenth Circuit reversed and held that the Payment occurred under the "otherwise available" prong of section 4A-405(a)(iii) when the account was credited and the funds were made available to the beneficiary. *Id.* at 1159; *see also*, *Aleo Int'l, Ltd. v. Citibank, N.A.*, 612 N.Y.S.2d 540, 541 (N.Y. Sup. Ct. 1994) (dismissing a sender's claim against Citibank for not terminating a Payment Order since Citibank could not terminate the order after its Acceptance and the crediting of the beneficiary's account).

DnB NOR's Terms and Conditions for LBHI's '268 Account are clearly analogous to and consistent with the rules of Article 4A. Under both, it is self-evident that the Disputed Amount is ineligible for setoff by DnB NOR.

The Terms and Conditions provide that LBCC had an unconditional and unilateral right to amend or cancel the Transfer Instructions at any time prior to 10:00 a.m. (CET) on

September 15, 2008. Under the U.C.C. and DnB NOR's policies, DnB NOR was prohibited from Accepting the Transfer Instructions because the Payment to LBHI's '268 Account could not have occurred prior to 10:00 a.m. (CET). Without Acceptance of the Transfer Instructions by DnB NOR, the legal interest in the Disputed Amount was not conveyed from LBCC to LBHI prior to the Commencement Date. *BCCI Holdings*, 980 F. Supp. at 27.

This conclusion is also supported by the court's holding in *First Security*. There, the court held that the Payment to the beneficiary occurred when the beneficiary's account was credited with the funds and such funds were made available to the beneficiary. Here, there is no evidence in the Record that shows the Disputed Amount was credited and made available to LBHI prior the commencement of its chapter 11 case. On the contrary, the Transaction Log demonstrates that the Disputed Amount was credited to the '268 Account at 12:54 p.m. (CET) and not made available to LBHI until such time. Thus, DnB NOR's setoff rights with respect to the Disputed Amount are not changed by the fact that the Transfer Instructions originated on September 12, 2008.

## Conclusion

As the court in *Cloverleaf* held, a creditor cannot setoff against funds unless they are "in existence in a location where the creditor may set off." *Cloverleaf*, 114 B.R. at 1018. Here, the Transaction Log, which was prepared by DnB NOR, reflects that the Disputed Amount was not credited to LBHI's '268 Account until after LBHI commenced its chapter 11 case. Thus, DnB NOR's right to setoff against the Disputed Amount did not arise until after the commencement of LBHI's chapter 11 and section 553(a) of the Bankruptcy Code prohibits DnB NOR from asserting such right against a prepetition claim because it did not arise until after the commencement of LBHI's chapter 11 case.

The existence of the pre-chapter 11 Transfer Instructions do not change that result. DnB NOR's policies, as evidenced by the Terms and Conditions and the analogous provisions of Article 4A of the U.C.C., prohibited DnB NOR's Acceptance of the Transfer Instructions prior to 10:00 a.m. (CET), which was approximately three hours after the commencement of LBHI's chapter 11 case. Consistent therewith, the Transaction Log reflects that Acceptance did not actually occur until LBHI's '268 Account was credited with the Disputed Amount, which occurred at 12:54 p.m. (CET), five hours after the commencement of the LBHI's chapter 11 case. The Motion should, therefore, be denied.

Dated: February 2, 2009
      New York, New York

                                      /s/ Richard P. Krasnow
                                      Richard P. Krasnow
                                      WEIL, GOTSHAL & MANGES LLP
                                      767 Fifth Avenue
                                      New York, New York 10153
                                      Telephone: (212) 310-8000
                                      Facsimile: (212) 310-8007

                                      Attorneys for Debtors
                                      and Debtors in Possession