**WHITE & CASE**

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787

Tel  + 1 212 819 8200
Fax  + 1 212 354 8113
www.whitecase.com

Direct Dial  +1 212 819 8394     cshore@ny.whitecase.com

February 2, 2009

BY HAND

The Hon. James M. Peck
United States Bankruptcy Judge
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, New York  10004-1408

Re:   In re Lehman Brothers Holdings, Inc. ("LBHI"), et al., Case No. 08-13555 (JMP)

Dear Judge Peck:

We write on behalf of DnB NOR Bank ASA ("DnB NOR") to submit this supplemental letter brief pursuant to paragraph 14 of the Stipulation, Agreement and Order (A) Resolving in Part the Motion of DnB NOR Bank ASA for Entry of (I) an Order Pursuant to 11 U.S.C. § 362(d) and Fed. R. Bankr. P. 4001 Granting Relief from the Automatic Stay to Effect Setoff or, in the Alternative, (II) an Order Pursuant to 11 U.S.C. §§ 361 and 506(a) Requiring the Debtors to Provide Adequate Protection and (B) Fixing a Briefing Scheduled [Docket No. 2605], so ordered by the Court on January 22, 2009 (the "Order").[1]  As and for its supplemental brief, and in further support of the Motion of DnB NOR Bank ASA for Entry of (I) an Order Pursuant to 11 U.S.C. § 362(d) and Fed. R. Bankr. P. 4001 Granting Relief from the Automatic Stay to Effect Setoff or, in the Alternative, (II) an Order Pursuant to 11 U.S.C. §§ 361 and 506(a) Requiring the Debtors to Provide Adequate Protection [Docket No. 465], dated September 30, 2008 (the "Motion"), DnB NOR respectfully submits as follows:

The issue raised in this letter is a narrow one.  The parties have stipulated that DnB NOR currently has on deposit 7,056,351.56 NOK (the "Deposit") in an account in the name of LBHI. (Order at ¶ 7.)  DnB NOR also has a prepetition claim against LBHI that exceeds the value of the Deposit.  (Order at ¶ 1.)  By the Motion, DnB Nor has requested relief from the automatic stay to effect a setoff of the Deposit against its remaining prepetition claim.[2]  The Debtors and the Committee have objected on the basis that the Deposit is not a prepetition "debt" of DnB NOR

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Order.
[2] Pursuant to the Order, DnB NOR has effected a setoff of the Undisputed Amount referenced in the Order at paragraphs E and 12, resulting in a prepetition deficiency claim of US$10,341,552.33 (the "Deficiency Claim").

ABU DHABI   ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUCHAREST   BUDAPEST   DRESDEN   DÜSSELDORF
FRANKFURT   HAMBURG   HELSINKI   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW
MUNICH   NEW YORK   PALO ALTO   PARIS   PRAGUE   RIYADH   SÃO PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON, DC

NEWYORK 7014147 (2K)

The Hon. James M. Peck

February 2, 2009

that can properly be offset against the Deficiency Claim. Because the Deposit was, in fact, a prepetition debt for the purposes of section 553 of the Bankruptcy Code, the objections should be overruled and that portion of the Motion requesting setoff of the Deposit should be granted.

<u>As of LBHI's Filing, DnB NOR Owed a Contingent Debt</u>

Subject to the automatic stay, the Bankruptcy Code's restrictions on the use of estate property and enumerated exceptions, the commencement of a bankruptcy case "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a). In addressing section 553(a), this Court observed in <u>In re BOUSA Inc.</u> that "the requirements for a setoff are generally recognized to include the following: (1) the amount owed by the debtor must be a prepetition debt; (2) the debtor's claim against the creditor must also be prepetition; and (3) the debtor's claim against the creditor and the debt owed the creditor must be mutual." Case No. 89-B-13380, 2006 WL 2864964, at *3 (Bankr. S.D.N.Y. Sept. 29, 2006) (Peck, J.) (citing <u>In re Ionosphere Clubs, Inc.</u>, 164 B.R. 839, 841 (Bankr. S.D.N.Y. 1994)).

"Debt" is, of course, a defined term in the Bankruptcy Code, meaning "liability on a claim," where "claim" in turn includes "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, <u>contingent</u>, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5), (12) (emphasis added). As the Supreme Court has held, the Bankruptcy Code's notions of "claim" and "debt" are simply viewed alternately from the perspective of the obligee and that of the obligor. See <u>Pa. Dep't of Pub. Welfare v. Davenport</u>, 495 U.S. 552, 558 (1990) ("This definition [of 'debt'] reveals [Congress's] intent that the meanings of 'debt' and 'claim' be coextensive."). Further, notions of claim are the "broadest possible" and contemplate "all legal obligations" of the party to which they refer. <u>Id.</u> (quoting H.R. Rep. No. 95-595, at 309 (1978)). Given its use of the coextensive and expansive nature of "debt" and "claim," Congress has made clear that a creditor may offset its prepetition claim against a "debt" that was contingent as of the petition date.[3]

The central question, then, is what is a "contingent debt" for setoff purposes? In describing that concept, this Court has stated that "[f]or purposes of setoff, a debt arises when all transactions necessary for liability have occurred, regardless of whether the claim was contingent when the petition was filed." <u>BOUSA</u>, 2006 WL 2866964, at *3 (citing <u>United States v. Gerth</u>, 991 F.2d 1428, 1433 (8th Cir. 1993).

---

[3] Indeed, where the applicability of a Bankruptcy Code provision turns on a debt's (or claim's) not being contingent, the provision is explicit. See 11 U.S.C. § 502(e)(1)(B) (requiring that contingent claims for reimbursement or contribution be disallowed). Moreover, where Congress intended a provision to refer to a concept other than a debt, it used a different term. See, e.g., 11 U.S.C. § 365(o) (referring to a debtor's "<u>commitment</u>... to a Federal depository institutions regulatory agency to maintain the capital of an insured depository institution" (emphasis added); 11 U.S.C. § 507(a) (same); 11 U.S.C. § 524(g)(5) (defining for purposes of asbestos bankruptcies the term "<u>demand</u>" to refer to "a demand for payment, present or future, that," among other things, "was not a claim during the proceedings leading to the confirmation of a plan of reorganization.").

2

The Hon. James M. Peck

February 2, 2009

**WHITE & CASE**

Here, all "transactions" necessary to create a debt to LBHI occurred prior to the Commencement Date. On September 12, 2008, LBCC issued the Transfer Instructions, directing 7,056,351.56 NOK to be transferred to the account of LBHI. Nothing in the Cash Account Terms and Conditions for the '268 Account prohibited DnB NOR at that time from crediting those funds to LBHI and allowing LBHI to draw on them.[4] The only event that could affect LBHI's right to the funds would be if LBCC sent a notice to reverse the transfers by noon on September 15, 2008 (which happened to be the Commencement Date). In the absence of such a reversal, however, the transfer was complete subject only to the effectuation of a book transfer shifting the debt from LBCC to LBHI. No funds were to change hands, and at all times DnB NOR had title to the funds that are now represented by the Deposit. In sum, from the time the Transfer Instructions were issued, DnB NOR had a contingent debt to LBHI that would only not mature if LBCC sent a request to reverse the transfer. These matters were specifically contemplated by the parties, inasmuch as the Terms and Conditions of the '268 Account sets out cut-off times for various types of payments and transfers into that account and even obligates DnB NOR to use its best efforts to effect transfer messages received after the cut-off. (Order, at exh. B.)

Furthermore, in the absence of a reversal of the Transfer Instructions by LBCC, DnB NOR would be deemed to have accepted the Transfer Instructions as of the opening of business on September 16, 2008, which was its next funds-transfer business day following the payment date of September 15, 2008 specified in the Transfer Instructions. Cf. U.C.C. § 4A-209(b)(3) (concerning acceptance of payment order as a result of beneficiary's bank's inaction). In that event, DnB NOR would have been obliged to notify LBHI of the payment and to pay the Deposit to LBHI on demand. See U.C.C. § 4A-404(a), (b) (concerning beneficiary's bank's liability to beneficiary). It would also have been liable for interest on the Deposit and, under appropriate circumstances, consequential damages flowing from its failure to pay. See id.

In reference to BOUSA, then, the only "transaction" necessary to create a mature debt was the Transfer Instructions, sent prepetition, and the passage of time.

The Seventh Circuit's decision in In re United Air Lines, Inc. is particularly instructive here. 438 F.3d 720 (7th Cir. 2006). In that case, the court was presented with the issue of when title to funds held in trust passes to a beneficiary. In United, the parties entered into a Trust Agreement under which U.S. Bank, as trustee, agreed to reimburse United for costs "upon receipt" of a written request. United disputed the right of U.S. Bank to setoff certain obligations for costs incurred, but not reimbursed, prior to filing its bankruptcy petition, contending that the debts lacked mutuality. The Seventh Circuit concluded, however, that U.S. Bank bound itself to pay, subject to request, when it entered into the Trust Agreement, and therefore, the debt was a prepetition debt available for setoff under section 553.

---

[4] Had DnB NOR credited the Deposit prior to the payment date of September 15 specified in the Transfer Instructions, and had LBHI withdrawn the Deposits prior to a reversal of the Transfer Instructions by LBCC, DnB NOR's only recourse would have been to LBHI to the extent allowed under the law of mistake and restitution. Cf. U.C.C. § 4A-209(d) (concerning payment orders executed before payment date). The discussion of the Uniform Commercial Code in this note and in the text below are presented for illustrative purposes in response to the Court's request for the treatment of nonbankruptcy authorities. (Tr. Hr'g Dec. 3, 2008, at 54:12-13.)

The Hon. James M. Peck

**WHITE & CASE**

February 2, 2009

As was the case in <u>United Air Lines</u>, the Terms and Conditions bound DnB NOR upon the receipt of a request, including the Transfer Instructions at issue here. While the debt could clearly have matured properly and been paid prior to the Commencement Date (if DnB NOR had booked the transfer at the time of the Transfer Instructions as it was permitted to do), the Transfer Instructions created a contingent debt on DnB NOR's part, which has now matured.

In connection with prior proceedings, the Debtors and the Committee have relied on a series of cases that prohibit a bank from setting off prepetition claims against amounts that debtors deposit in their bank accounts postpetition. *Cf.* Supp'l Obj. at ¶ 13. Reliance on that principle, however, only begs the real question, whether the funds that were the subject of the Transfer Instructions <u>were</u> postpetition deposits. In none of these cases was the court presented with the question of whether a deposit was a prepetition or post-petition debt. Further, these cases bring to the fore a key fact here. In the deposit cases, Courts tends to focus on one "transaction"—the transfer of title to the deposited funds. Generally, Courts find that title transfer has to take place prepetition for a deposit to be a prepetition debt. For example, the courts state that check deposits "only place liability for the indebtedness on the bank when such deposits are actually paid to the bank (for example, by the payor-drawee bank if the 'creditor-debtor' bank is only a depository bank)." See <u>In re Springfield Casket Co.</u>, 21 B.R. 223, 228 (Bankr. S.D. Ohio 1982) (emphasis added); <u>In re Kleather</u>, 208 B.R. 406, 415 (Bankr. S.D. Ohio 1997) (following <u>Springfield Casket</u>). Similarly, the court in <u>In re Orr</u> observed that

> upon depositing monies into the Accounts, a debtor-creditor relationship was created between SEFCU and the Debtor whereby SEFCU promised to pay the Debtor upon demand. The monies became property of SEFCU and the Debtor became entitled to a contract claim against SEFCU for the amount on deposit.

234 B.R. 249, 254 (Bankr. N.D.N.Y. 1999). Here, unlike a situation involving intermediary banks, title to the funds on deposit remained with DnB NOR at all times. All that need to change was the name of the obligee in the bank's books, and we respectfully submit that the need for a book entry and the passage of time is exactly type of contingency that the phrase "contingent debt" is intended to cover.

4

The Hon. James M. Peck

February 2, 2009

**WHITE & CASE**

* * *

For all of the foregoing reasons, DnB NOR respectfully request that the Court grant DnB NOR's Motion with respect to the Disputed Amount and grant such other relief as the Court deems just and proper. With respect to the remainder of DnB NOR's claim, the foregoing is without prejudice to DnB NOR's right to assert that it is entitled to, and DnB NOR hereby reserves its right to assert that is entitled to: (i) set off additional amounts, including without limitation fees, interest and charges, with respect to its prepetition claims; (ii) adequate protection in respect of the Undisputed Amount or the Disputed Amount; and (iii) the Deficiency Claim.

We are available at the Court's pleasure for any concerns regarding the foregoing.

Respectfully,

*[signature]*

J. Christopher Shore

JCS:pjn

cc:   Richard P. Krasnow, Esq. (via email to richard.krasnow@weil.com)
      John W. Lucas, Esq. (via email to john.lucas@weil.com)
      Dennis F. Dunne, Esq. (via email to ddune@milbank.com)
      Evan R. Fleck, Esq. (via email to efleck@milbank.com)