Hearing Date and Time: February 25, 2009 at 10:00 a.m (Prevailing Eastern Time)
Objection Date and Time: February 20, 2009 at 4:00 p.m (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                              :

In re                              :      Chapter 11 Case No.

LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :      08-13555 (JMP)

                 Debtors.        :      (Jointly Administered)

                                              :

                                              :
------------------------------------------------------------------x

## NOTICE OF DEBTORS' MOTION FOR AN ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING AND APPROVING A STIPULATION OF SETTLEMENT BETWEEN PAMI STATLER ARMS LLC AND FIRST MIDWEST PROPERTIES, LLC

PLEASE TAKE NOTICE that a hearing on the annexed motion of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases (together, the "Debtors") for an order authorizing and approving the terms of a settlement

between PAMI Statler Arms LLC and First Midwest Properties, LLC (the "Motion"), all as more

fully described in the Motion, will be held before the Honorable James M. Peck, United States

Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on

**February 25, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn: Jacqueline Marcus, Esq. and John W. Lucas, Esq., attorneys for the Debtors; (iii)

the Office of the United States Trustee for the Southern District of New York (the "U.S.

Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-

Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy

Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New

York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck,

Esq., attorneys for the official committee of unsecured creditors appointed in these cases; (v)

Kohrman Jackson & Krantz PLL, One Cleveland Center – 20th Floor, 1375 E. Ninth Street,

Cleveland, Ohio 44144, Attn: Jon J. Pinney, Esq. and Gregory P. Amend, Esq., attorneys for

First Midwest Properties, LLC; and (vi) any person or entity with a particularized interest in the

Motion, so as to be received no later than **February 20, 2009 at 4:00 p.m. (prevailing Eastern

Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in the relief being granted or denied upon the objecting party's failure to appear at the hearing.

Dated: February 4, 2009
New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                   :

**In re**                                   :       **Chapter 11 Case No.**

                                        :

**LEHMAN BROTHERS HOLDINGS INC., et al.,**  :      **08-13555 (JMP)**

                                        :

                      **Debtors.**         :       **(Jointly Administered)**

                                        :

                                        :
---------------------------------------------------------------x

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO**
**RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**AUTHORIZING AND APPROVING A STIPULATION OF SETTLEMENT**
**BETWEEN PAMI STATLER ARMS LLC AND FIRST MIDWEST PROPERTIES, LLC**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

            Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, including PAMI Statler Arms LLC ("PAMI Statler"), as debtors and

debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates,

"Lehman"), respectfully represent as follows:

**Background**

          1.      Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"). One of the Debtors' subsidiaries, PAMI Statler, commenced its chapter 11

case on September 23, 2008. The Debtors' chapter 11 cases have been consolidated for

procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to

operate their businesses and manage their properties as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

2.        On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").

3.        On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI"). A trustee appointed under SIPA is administering LBI's estate.

4.        On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

### Jurisdiction

5.        This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Lehman's Business

6.        Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States. For more than 150 years, Lehman has been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

7.    Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Relief Requested

8.    By this Motion, the Debtors seek entry of an order, pursuant to Bankruptcy Rule 9019, authorizing and approving the Stipulation of Settlement, dated January 26, 2009 (the "Agreement"), between PAMI Statler and First Midwest Properties, LLC ("First Midwest") and together with PAMI Statler, the "Parties"), a copy of which is attached hereto as Exhibit A. Pursuant to the Agreement, the Parties have agreed to settle all disputes outstanding between them, including those that are subject of the State Court Action (defined below).

## PAMI Statler's Relationship To First Midwest

9.    PAMI Statler and First Midwest entered into (i) that certain purchase and sale agreement dated effective as of August 17, 2007 (the "Initial Agreement"); and (ii) that certain amendment to the Initial Agreement dated as of September 12, 2007 (the "First Amendment" together with the Initial Agreement, the "Sale Agreement") with respect to the Statler Arms Apartment Building located at 1127 Euclid Avenue, Cleveland, OH (the "Property") owned and operated by PAMI Statler.

10.    Pursuant to the Initial Agreement, First Midwest agreed to purchase, and PAMI Statler agreed to sell, the Property for a purchase price of $22,100,000 on October 1, 2007. Pursuant to the Initial Agreement, First Midwest delivered a deposit (the "Initial Deposit") in the amount of $200,000. A portion of the Initial Deposit, in the sum of $50,000 (the "Earned Deposit"), was earned and deemed non-refundable. The Sale Agreement provided that upon

closing, the Initial Deposit would be applied against the final purchase price of the Property. At the time the Initial Agreement was executed, First Midwest delivered the Initial Deposit to Commonwealth Land Title Insurance Company (the "Escrow Agent"), to be held pursuant to the escrow terms and conditions set forth in Schedule C to the Initial Agreement.

11.    The First Amendment provided, *inter alia*, for delivery of a second deposit in the amount of $131,500 (the "Second Deposit" and together with the Initial Deposit, the "Deposit") and an extension of the closing date to October 12, 2007. The Earned Deposit, in the amount of $50,000, was released to PAMI Statler pursuant to the Initial Agreement. Accordingly, the Deposit (in the initial aggregate amount of $331,500) has been reduced by $50,000 and the Escrow Agent is currently holding $281,500 pursuant to a stipulation between PAMI Statler and First Midwest.

12.    A series of disputes arose between First Midwest and PAMI Statler beginning on or around October 12, 2007. In particular, PAMI Statler asserted that First Midwest breached the Sale Agreement by failing to close on the sale of the Property and demanded delivery of the Deposit as liquidated damages pursuant to the Sale Agreement. First Midwest, in response, objected to the delivery of the Deposit to PAMI Statler. As a result, on December 3, 2007, PAMI Statler commenced an action entitled *PAMI Statler Arms LLC v. First Midwest Properties LLC*, Case No. CV 08 654258 (the "State Court Action"), pending before the Court of Common Pleas, Cuyahoga County, State of Ohio (the "State Court"), seeking among other things that the State Court declare that PAMI Statler is entitled to the Deposit as liquidated damages resulting from First Midwest's failure to close the Sale Agreement. First Midwest has asserted various defenses and counterclaims to PAMI Statler's claim that First Midwest breached the Agreement and, therefore, is not entitled to the Deposit.

13.    On or about August 1, 2008, PAMI Statler filed a motion for summary judgment in the State Court Action.  On September 23, 2008, while the State Court Action was pending, PAMI Statler commenced its chapter 11 case.

### The Agreement

14.    Through arms-length negotiations, First Midwest and PAMI Statler have agreed to settle all disputes outstanding between them, including those that are the subject of the State Court Action.  The salient terms of the Agreement are summarized below.

- Upon delivery by either Party to the Escrow Agent of a copy of (i) the Agreement and (ii) the Settlement Order (as defined below) approving the Agreement, the Escrow Agent shall deliver to First Midwest the sum of $60,000 (the "First Midwest Payment") and to PAMI Statler the balance of the Deposit being held by the Escrow Agent ($221,500 plus interest earned thereon, if any) (the "PAMI Statler Payment" and together with First Midwest Payment, the "Settlement Payments").

- Any and all claims arising in or related to the State Court Action are waived.

- The Agreement shall be of no force or effect against PAMI Statler unless and until an order is entered by the Bankruptcy Court authorizing the PAMI Statler to perform the Agreement in accordance with its terms without the need for further order from the Bankruptcy Court or notice to any other party in interest in the Bankruptcy Case (the "Settlement Order").

- Promptly following entry of the Settlement Order by the Bankruptcy Court, the State Court Action and all claims and counterclaims asserted therein shall be dismissed with prejudice and without costs.

### The Controlling Legal Standard

15.    Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a).  In granting a motion pursuant to Rule 9019(a), a court must find that the proposed settlement is fair and equitable and is in the best interests of the estate.  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424

(1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

16.    The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). It is the responsibility of a court to examine a settlement and determine whether it "falls below the lowest point in the range of reasonableness." *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

17.    While a court must "evaluate ... all ... factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation. *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991). "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact . . . . The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

18.    The court may give weight to the informed judgment of the debtor that a compromise is fair and equitable. *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness.... If the Trustee chooses one of two reasonable

choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

### The Agreement is Fair and Equitable and
### Falls Well Within the Range of Reasonableness and Should Be Approved

19.    In light of the foregoing, the Agreement is fair and equitable. First and foremost, the total amount of litigation costs, attorneys fees, and time involved in litigating the State Court Action to judgment could likely exceed the First Midwest Payment of $60,000. Second, the counterclaims alleged by First Midwest in the State Court Action add complexity, delay, and uncertainty to the recovery for PAMI Statler if it were to continue the State Court Action to judgment. In addition, most of the PAMI Statler's key witnesses are located outside Ohio and are not subject to the subpoena power of the State Court, which reduces PAMI Statler's ability to provide factual support for its claims and defenses creating further expense and complications. Lastly, the Agreement does not impose any additional costs upon PAMI Statler since the Deposit amounts at issue are already being held in escrow. In fact, the Agreement provides that PAMI Statler shall receive at least $221,500 in cash. If PAMI Statler were to continue litigating the State Court Action, there is a risk that it could lose the lawsuit or receive less of a recovery then it will under the Agreement. Even if PAMI Statler were to succeed, the cost of litigating in Ohio could easily consume the additional recovery that would otherwise be available to it under the Agreement. Accordingly, the terms of the Agreement provide immediate resolution among the Parties and fall well above the lowest point in the range of reasonableness, and approval of the Agreement is in the best interests of PAMI Statler's estate.

### Notice

20.    No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered

on September 22, 2008 governing case management and administrative procedures for these

cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Committee; (iii) the

Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States

Attorney for the Southern District of New York; (vi) First Midwest; and (vii) all parties who

have requested notice in these chapter 11 cases.  The Debtors submit that no other or further

notice need be provided.

   21.  No previous motion for the relief sought herein has been made to this or

any other court.

   WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  February 4, 2009
   New York, New York


      /s/ Jacqueline Marcus    
      Jacqueline Marcus

      WEIL, GOTSHAL & MANGES LLP
      767 Fifth Avenue
      New York, New York 10153
      Telephone: (212) 310-8000
      Facsimile: (212) 310-8007

      Attorneys for Debtors
      and Debtors in Possession

## EXHIBIT A

**(Agreement)**

## STIPULATION OF SETTLEMENT

This Stipulation Of Settlement ("Agreement") is made and entered into effective as of September 23, 2008 by and between PAMI Statler Arms LLC ("Plaintiff") and First Midwest Properties, LLC ("Defendant").

## RECITALS

A.    Plaintiff and Defendant entered into (i) that certain purchase and sale agreement dated effective as of August 17, 2007 (the "Initial Agreement"); and (ii) that certain amendment to the Initial Agreement dated as of September 12, 2007 (the "First Amendment" together with the Initial Agreement, the "Sale Agreement") with respect to the Statler Arms Apartment Building located at 1127 Euclid Avenue, Cleveland, OH (the "Property").

B.    Pursuant to the Initial Agreement, Defendant agreed to buy, and Plaintiff agreed to sell, the Property for a purchase price of $22,100,000.00. Pursuant to the Initial Agreement, the Defendant made a deposit (the "Initial Deposit") in the amount of $200,000.00. Of the Initial Deposit, the sum of $50,000.00 (the "Earned Deposit") was earned and deemed non-refundable and at risk (meaning that even if the buyer terminated the Initial Agreement prior to the expiration of its right to do so within the time period provided for due diligence, the buyer was not entitled to a refund of the Earned Deposit). In the event that the closing occurred, the Initial Deposit would be applied against the final purchase price of the Property. The remainder of the Initial Deposit was delivered to Commonwealth Land Title Insurance Company, a New York corporation, having a place of business at 630 Third Avenue, 12th Floor, New York, NY 10017 (the "Escrow Agent"), to be held pursuant to the escrow terms and conditions set forth in Schedule C to the Initial Agreement.

C.      The First Amendment provided, *inter alia*, for delivery of a second deposit of

$131,500.00 (the "Second Deposit" and together with the Initial Deposit, the "Deposit") and

extension of the closing date to October 12, 2007. The Escrow Agent is holding the Deposit in

the aggregate amount of $281,500.00 pursuant to a stipulation between Plaintiff and Defendant.

The balance of the Deposit (the Earned Deposit, in the amount of $50,000) has been released to

Plaintiff pursuant to the Initial Agreement.

D.      The sale of the Property did not close. Plaintiff has asserted that Defendant

breached the Sale Agreement by failing to close on the sale of the Property. Defendant has

asserted various defenses and counterclaims to Plaintiff's claim that Defendant breached the

Agreement by failing to close.

E.      A series of disputes have arisen between Defendant and Plaintiff since October

12, 2007. Certain of the disputes (including claims by Plaintiff and counterclaims by Defendant)

were being litigated in the action entitled PAMI Statler Arms LLC v. First Midwest Properties

LLC, Case No. CV 08 654258 (the "Pending Action"), pending before the Court of Common

Pleas, Cuyahoga County, State of Ohio (the "State Court"). On or about August 1, 2008,

Plaintiff filed a motion for summary judgment. Negotiations have ensued since then.

F.      On September 23, 2008, while the State Court Action was pending, Plaintiff

commenced a voluntary case under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New

York (the "Bankruptcy Court"), Case No. 08-13664 (JMP) (the "Bankruptcy Case"). The

Bankruptcy Case is being jointly administered under Case No. 08-13555 (JMP).

G.      Because this document is a settlement agreement, Defendant and Plaintiff have

agreed not to set forth at any length the nature of the disputes, but rather both agree that those

2

and all other present and past disputes are being settled pursuant to this Agreement. Through

negotiations, Defendant and Plaintiff (each a "Party" and, collectively, the "Parties") have agreed

to settle all disputes outstanding between them, including those that are the subject of the

Pending Action.

   **NOW, THEREFORE**, in consideration of the premises, and the undertakings herein

including the payment and performance by the Defendant and Plaintiff of the obligations set

forth in this Agreement, and for other good and valuable consideration, the parties hereto

covenant and agree as follows:

   1.     Upon delivery to the Escrow Agent by either party of (i) a copy of this Agreement

and (ii) the Settlement Order (as defined below) approving the Agreement, the Escrow Agent

shall deliver to Defendant's assignee, Kohrman Jackson & Krantz PLL ("KJK"), the sum of

$60,000.00, made payable to KJK and sent to KJK at the address listed in paragraph 6 herein (the

"Defendant Payment") and the balance of the Deposit being held by the Escrow Agent

($221,500.00 plus interest earned thereon, if any), to Plaintiff (the "Plaintiff Payment"; together

with Defendant Payment, the "Settlement Payments") each in accordance with instructions as

each Party shall provide the Escrow Agent. Delivery by the Escrow Agent of the Settlement

Payments shall release and discharge the Escrow Agent from all claims and liabilities with

respect to the Sale Agreement and the Pending Action.

   2.     Release of Claims. Other than the obligations of the Parties set forth herein, the

Parties hereby absolutely and unconditionally forever waive, release, discharge, relinquish and

give up any and all claims, causes of action, suits, obligations and covenants they may have or

hold against the other Party or its respective agents, servants, employees, attorneys, shareholders,

members, directors, officers, affiliates, successors or assigns that may have arisen as of the date

3

hereof, whether in law, in equity, or otherwise, which the Parties ever had, now have, or that they

may have in the future, whether known or unknown, knowable or unknowable, suspected or

unsuspected, and including without limiting the generality of the foregoing, all claims and

counterclaims that were, or could have been, asserted in the Pending Action.

3.      Independent Investigations; Representations as to Authority. Except as set forth

below, each Party has entered into this Agreement based upon its own independent investigation,

and makes no warranty or representation to any other Party, nor does it rely upon any

representation of any other Party with respect to the subject matter of this Agreement, other than

the following sentence. Each Party represents that it has full power and authority to enter into

and perform this Agreement in accordance with its terms, but as to the Plaintiff, effectiveness of

the Agreement against the Plaintiff is subject to Bankruptcy Court approval. No Party is, and no

Party shall be deemed or found to be, a fiduciary to any other Party.

4.      Bankruptcy Court Approval. Promptly after execution and delivery of this

Agreement, Plaintiff will promptly file with the Bankruptcy Court a motion (the "Settlement

Motion") for entry of an order (the "Settlement Order") authorizing the Plaintiff to perform this

Agreement in accordance with its terms without the need for further order from the Bankruptcy

Court or notice to any other party in interest in the Bankruptcy Case. The Parties shall cooperate

reasonably to procure prompt entry of the Settlement Order. In filing the Settlement Motion, the

Parties shall stipulate to the facts set forth in the lettered paragraphs of the Recitals of this

Agreement. This Agreement shall be of no force or effect against Plaintiff unless and until the

Settlement Order is entered by the Bankruptcy Court.

5.      Dismissal of Pending Action; Retention of Jurisdiction by State Court. Promptly

following the execution of this Agreement by all Parties and approval of it by the Bankruptcy

Court, the Pending Action and all claims and counterclaims asserted therein shall be dismissed with prejudice and without costs.

      6.    <u>Notices</u>.  Any notice, report, demand, request or other instrument or communication authorized, required or desired to be given under this Agreement by or to any Party shall be in writing and shall be deemed given if addressed to the party intended to receive the same, at the address of such party set forth below, (i) when delivered at such address by hand or by overnight delivery service, or (ii) three (3) days after the same is deposited in the United States mail as first class certified mail, return receipt requested, postage paid, whether or not the same actually shall have been received by such Party:

Plaintiff:

PAMI Statler Arms LLC
c/o Midland Loan Services, Inc.
Special Servicing Group
2201 N. Collins, # 185
Arlington, TX 76011
Attn: Cecilia Bolen
Phone: 817-804-5902
Fax: 817-633-3144
Email: cecilia.bolen@midlandls.com

With a copy to:

Herrick, Feinstein LLP
One Gateway Center
Newark, NJ 07102
Attn: Gary F. Eisenberg, Esq.
Phone: (973) 274-2055
Fax: (973) 274-6424
Email geisenberg@herrick.com

and a copy to:

Miller, Canfield, Paddock and Stone, PLC
2969 Annwood Street
Cincinnati, OH 45206
Attn: Paul E. Perry (0023326)
Phone: (614) 203-7800
Fax: (248) 879-2001
Email: perry@millercanfield.com

5

Defendant:                    First Midwest Properties, Ltd.
                              3535 Severn Road
                              Cleveland Heights, OH 44118
                              Attn:  Eli Mann
                              Phone:  216-932-7400
                              Fax:  216-932-1699
                              E-Mail: emann@fmpllc.net

with a copy to:               Kohrman Jackson & Krantz PLL
                              One Cleveland Center - 20th Floor
                              1375 E. Ninth Street
                              Cleveland, Ohio 44144
                              Attn: Jon J. Pinney, Esq.
                              Attn: Gregory P. Amend, Esq.
                              Phone: (216) 696-8700
                              Fax: (216) 621-6536
                              Email: jjp@kjk.com
                              Email: gpa@kjk.com

Any Party may change the address to which any such notice, report, demand, request or other instrument or communication to such Party is to be delivered or mailed, by giving written notice of such change to the other parties, but no such notice of change shall be effective unless and until received by such other parties. No such notice, report, demand, request or other instrument or communication given hereunder shall be invalidated or rendered ineffective due to any failure to give, or delay in giving, a copy of such notice, report, demand, request or other instrument or communication to any party to whom such copy is to be given as provided above.

7.    Calculation of Time.  Whenever in this Agreement a period of time is stated as a number of days, it shall be construed to mean calendar days; *provided, however*, that when any period of time so stated would end on a Saturday, Sunday, legal holiday, then such period shall be deemed to end on the next day following which is not a Saturday, Sunday, or legal holiday. Time is of the essence of this Agreement.

8.   Further Assurances.  Each Party hereby covenants and agrees (in the case of the Plaintiff, subject to Bankruptcy Court approval) to take any and all additional actions and execute, file, record and/or deliver to the other Party such further agreements, documents and instruments as may be necessary or as the other Party may at any time or times reasonably request to effect the provisions and intent of this Agreement.

9.   Construction.  Unless the context of this Agreement clearly requires otherwise, references to the plural include the singular, the singular includes the plural, the part includes the whole, "including" is not limiting, and "or" has the inclusive meaning represented by the phrase "and/or." The words "hereof," "herein," "hereby," "hereunder," and similar terms in this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement. Section references are to this Agreement unless otherwise specified. Capitalized terms not defined herein shall have the meanings as provided in the License Agreement.

10.   Complete Agreement, Modifications in Writing.  This Agreement is intended by the Parties as a final expression of their agreement and is intended as a complete statement of the terms and conditions of their agreement.  No amendment, modification, supplement, termination, consent, or waiver of or to any provision of this Agreement nor any consent to any, departure therefrom shall in any event be effective unless the same shall be in writing and signed by or on behalf of each of the Parties.  Any waiver of any provision of this Agreement, or any consent to any departure from the terms of any provisions of this Agreement, shall be effective only in the specific instance and for the specific purpose for which given.

11.   Waivers; Failure or Delay.  No failure or delay on the part of any Party in the exercise of any, power, right, remedy, or privilege under this Agreement shall impair such power, right, remedy, or privilege or shall operate as a waiver thereof; nor shall any single or

partial exercise of any such power, right, or privilege preclude any other or further exercise of any other power, right, or privilege. The waiver of any such right, power, remedy, or privilege with respect to particular facts and circumstances shall not be deemed to be a waiver with respect to other facts and circumstances.

12.    Headings. Section headings used in this Agreement are for convenience of reference only and shall not constitute a part of this Agreement for any purpose or affect the construction of this Agreement.

13.    Execution in Counterparts; Facsimile Delivery; Reproduction. This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which counterparts, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Agreement. Delivery of a copy of an executed counterpart by facsimile shall constitute sufficient delivery of an executed original counterpart. This Agreement shall become effective upon the execution and delivery of a counterpart hereof by each of the parties hereto and approval by the Bankruptcy Court. This Agreement may be reproduced by any photographics, photostatic, microfilm, micro-card, miniature photographic, facsimile or other similar process and the original thereof may be destroyed. The Parties agree that any such reproduction shall, to the extent permitted by law, be as admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not the reproduction was made in the regular course of business) and that any enlargement, facsimile or further reproduction shall likewise be admissible in evidence.

14.    Severability.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision

8

of this Agreement shall be illegal, invalid, prohibited, or unenforceable under applicable law, such provision shall be ineffective only to the extent of such illegality, invalidity, prohibition or unenforceability, without invalidating or impairing the remaining provisions hereof.

15.    Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

16.    Governing Law.  This Agreement shall be construed in accordance with the laws of the State of Ohio that are applicable to contracts formed in and to performed entirely within such state without giving effect to any conflict of laws rules or principles recognized by the courts thereof that would cause the laws of another jurisdiction to apply.

IN WITNESS WHEREOF, the Parties have entered into this Agreement as of the date first set forth above, intending to be legally bound hereby.

Executed this January 16, 2009.

**FIRST MIDWEST PROPERTIES LLC**          **PAMI STATLER ARMS LLC**

By: _Eli Mann_____          By:_____
Name: ELI MANN                              Name:_____ Jeffrey Fitts
Its:    Authorized Signatory                  Its:    Authorized Signatory

9

**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                              :
In re                                         :        **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :        **08-13555 (JMP)**
                                              :
           **Debtors.**                       :        **(Jointly Administered)**
                                              :
                                              :
-----------------------------------------------------------------x

## ORDER PURSUANT TO RULE 9019 OF
## THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
## AUTHORIZING AND APPROVING A STIPULATION OF SETTLEMENT
## BETWEEN PAMI STATLER ARMS LLC AND FIRST MIDWEST PROPERTIES, LLC

Upon the motion, dated February 4, 2009 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-

debtor affiliates, "Lehman"), for an order, pursuant to Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving a stipulation of

settlement (the "Agreement"), which is annexed hereto as Exhibit A, between PAMI Statler

Arms LLC ("PAMI Statler") and First Midwest Properties, LLC ("First Midwest"), all as more

fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the

relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of

Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of

New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided, and it appearing that no other or further notice need be

provided; and the Court having reviewed the Motion; and approval of the Agreement being within the sound discretion of the Court; and the relief requested in the Motion and the Agreement being fair and equitable, in the best interests of the PAMI Statler's estate, and above the lowest point in the range of reasonableness; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, the Agreement is approved; and it is further

ORDERED that PAMI Statler is authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the Agreement and perform any and all obligations contemplated therein.

Dated: February ___, 2009
     New York, New York

                                                _____
                                                UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

**(Agreement)**

## STIPULATION OF SETTLEMENT

This Stipulation Of Settlement ("Agreement") is made and entered into effective as of September 23, 2008 by and between PAMI Statler Arms LLC ("Plaintiff") and First Midwest Properties, LLC ("Defendant").

## RECITALS

A.     Plaintiff and Defendant entered into (i) that certain purchase and sale agreement dated effective as of August 17, 2007 (the "Initial Agreement"); and (ii) that certain amendment to the Initial Agreement dated as of September 12, 2007 (the "First Amendment" together with the Initial Agreement, the "Sale Agreement") with respect to the Statler Arms Apartment Building located at 1127 Euclid Avenue, Cleveland, OH (the "Property").

B.     Pursuant to the Initial Agreement, Defendant agreed to buy, and Plaintiff agreed to sell, the Property for a purchase price of $22,100,000.00.  Pursuant to the Initial Agreement, the Defendant made a deposit (the "Initial Deposit") in the amount of $200,000.00.  Of the Initial Deposit, the sum of $50,000.00 (the "Earned Deposit") was earned and deemed non-refundable and at risk (meaning that even if the buyer terminated the Initial Agreement prior to the expiration of its right to do so within the time period provided for due diligence, the buyer was not entitled to a refund of the Earned Deposit).  In the event that the closing occurred, the Initial Deposit would be applied against the final purchase price of the Property.  The remainder of the Initial Deposit was delivered to Commonwealth Land Title Insurance Company, a New York corporation, having a place of business at 630 Third Avenue, 12th Floor, New York, NY 10017 (the "Escrow Agent"), to be held pursuant to the escrow terms and conditions set forth in Schedule C to the Initial Agreement.

C.      The First Amendment provided, *inter alia*, for delivery of a second deposit of

$131,500.00 (the "Second Deposit" and together with the Initial Deposit, the "Deposit") and

extension of the closing date to October 12, 2007. The Escrow Agent is holding the Deposit in

the aggregate amount of $281,500.00 pursuant to a stipulation between Plaintiff and Defendant.

The balance of the Deposit (the Earned Deposit, in the amount of $50,000) has been released to

Plaintiff pursuant to the Initial Agreement.

D.      The sale of the Property did not close. Plaintiff has asserted that Defendant

breached the Sale Agreement by failing to close on the sale of the Property. Defendant has

asserted various defenses and counterclaims to Plaintiff's claim that Defendant breached the

Agreement by failing to close.

E.      A series of disputes have arisen between Defendant and Plaintiff since October

12, 2007. Certain of the disputes (including claims by Plaintiff and counterclaims by Defendant)

were being litigated in the action entitled PAMI Statler Arms LLC v. First Midwest Properties

LLC, Case No. CV 08 654258 (the "Pending Action"), pending before the Court of Common

Pleas, Cuyahoga County, State of Ohio (the "State Court"). On or about August 1, 2008,

Plaintiff filed a motion for summary judgment. Negotiations have ensued since then.

F.      On September 23, 2008, while the State Court Action was pending, Plaintiff

commenced a voluntary case under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New

York (the "Bankruptcy Court"), Case No. 08-13664 (JMP) (the "Bankruptcy Case"). The

Bankruptcy Case is being jointly administered under Case No. 08-13555 (JMP).

G.      Because this document is a settlement agreement, Defendant and Plaintiff have

agreed not to set forth at any length the nature of the disputes, but rather both agree that those

2

and all other present and past disputes are being settled pursuant to this Agreement. Through negotiations, Defendant and Plaintiff (each a "Party" and, collectively, the "Parties") have agreed to settle all disputes outstanding between them, including those that are the subject of the Pending Action.

NOW, **THEREFORE**, in consideration of the premises, and the undertakings herein including the payment and performance by the Defendant and Plaintiff of the obligations set forth in this Agreement, and for other good and valuable consideration, the parties hereto covenant and agree as follows:

1.      Upon delivery to the Escrow Agent by either party of (i) a copy of this Agreement and (ii) the Settlement Order (as defined below) approving the Agreement, the Escrow Agent shall deliver to Defendant's assignee, Kohrman Jackson & Krantz PLL ("KJK"), the sum of $60,000.00, made payable to KJK and sent to KJK at the address listed in paragraph 6 herein (the "Defendant Payment") and the balance of the Deposit being held by the Escrow Agent ($221,500.00 plus interest earned thereon, if any), to Plaintiff (the "Plaintiff Payment"; together with Defendant Payment, the "Settlement Payments") each in accordance with instructions as each Party shall provide the Escrow Agent. Delivery by the Escrow Agent of the Settlement Payments shall release and discharge the Escrow Agent from all claims and liabilities with respect to the Sale Agreement and the Pending Action.

2.      Release of Claims. Other than the obligations of the Parties set forth herein, the Parties hereby absolutely and unconditionally forever waive, release, discharge, relinquish and give up any and all claims, causes of action, suits, obligations and covenants they may have or hold against the other Party or its respective agents, servants, employees, attorneys, shareholders, members, directors, officers, affiliates, successors or assigns that may have arisen as of the date

3

hereof, whether in law, in equity, or otherwise, which the Parties ever had, now have, or that they may have in the future, whether known or unknown, knowable or unknowable, suspected or unsuspected, and including without limiting the generality of the foregoing, all claims and counterclaims that were, or could have been, asserted in the Pending Action.

3.    <u>Independent Investigations; Representations as to Authority</u>. Except as set forth below, each Party has entered into this Agreement based upon its own independent investigation, and makes no warranty or representation to any other Party, nor does it rely upon any representation of any other Party with respect to the subject matter of this Agreement, other than the following sentence. Each Party represents that it has full power and authority to enter into and perform this Agreement in accordance with its terms, but as to the Plaintiff, effectiveness of the Agreement against the Plaintiff is subject to Bankruptcy Court approval. No Party is, and no Party shall be deemed or found to be, a fiduciary to any other Party.

4.    <u>Bankruptcy Court Approval</u>. Promptly after execution and delivery of this Agreement, Plaintiff will promptly file with the Bankruptcy Court a motion (the "Settlement Motion") for entry of an order (the "Settlement Order") authorizing the Plaintiff to perform this Agreement in accordance with its terms without the need for further order from the Bankruptcy Court or notice to any other party in interest in the Bankruptcy Case. The Parties shall cooperate reasonably to procure prompt entry of the Settlement Order. In filing the Settlement Motion, the Parties shall stipulate to the facts set forth in the lettered paragraphs of the Recitals of this Agreement. This Agreement shall be of no force or effect against Plaintiff unless and until the Settlement Order is entered by the Bankruptcy Court.

5.    <u>Dismissal of Pending Action; Retention of Jurisdiction by State Court</u>. Promptly following the execution of this Agreement by all Parties and approval of it by the Bankruptcy

4

Court, the Pending Action and all claims and counterclaims asserted therein shall be dismissed with prejudice and without costs.

     6.   Notices.  Any notice, report, demand, request or other instrument or communication authorized, required or desired to be given under this Agreement by or to any Party shall be in writing and shall be deemed given if addressed to the party intended to receive the same, at the address of such party set forth below, (i) when delivered at such address by hand or by overnight delivery service, or (ii) three (3) days after the same is deposited in the United States mail as first class certified mail, return receipt requested, postage paid, whether or not the same actually shall have been received by such Party:

Plaintiff:

     PAMI Statler Arms LLC
     c/o Midland Loan Services, Inc.
     Special Servicing Group
     2201 N. Collins, # 185
     Arlington, TX  76011
     Attn:  Cecilia Bolen
     Phone:  817-804-5902
     Fax:  817-633-3144
     Email: cecilia.bolen@midlandls.com

With a copy to:

     Herrick, Feinstein LLP
     One Gateway Center
     Newark, NJ 07102
     Attn: Gary F. Eisenberg, Esq.
     Phone: (973) 274-2055
     Fax: (973) 274-6424
     Email geisenberg@herrick.com

and a copy to:

     Miller, Canfield, Paddock and Stone, PLC
     2969 Annwood Street
     Cincinnati, OH 45206
     Attn: Paul E. Perry (0023326)
     Phone: (614) 203-7800
     Fax: (248) 879-2001
     Email: perry@millercanfield.com

Defendant:                First Midwest Properties, Ltd.
                          3535 Severn Road
                          Cleveland Heights, OH 44118
                          Attn:  Eli Mann
                          Phone:  216-932-7400
                          Fax: 216-932-1699
                          E-Mail: emann@fmpllc.net

with a copy to:           Kohrman Jackson & Krantz PLL
                          One Cleveland Center - 20th Floor
                          1375 E. Ninth Street
                          Cleveland, Ohio 44144
                          Attn: Jon J. Pinney, Esq.
                          Attn: Gregory P. Amend, Esq.
                          Phone: (216) 696-8700
                          Fax: (216) 621-6536
                          Email: jjp@kjk.com
                          Email: gpa@kjk.com

Any Party may change the address to which any such notice, report, demand, request or

other instrument or communication to such Party is to be delivered or mailed, by giving written

notice of such change to the other parties, but no such notice of change shall be effective unless

and until received by such other parties.  No such notice, report, demand, request or other

instrument or communication given hereunder shall be invalidated or rendered ineffective due to

any failure to give, or delay in giving, a copy of such notice, report, demand, request or other

instrument or communication to any party to whom such copy is to be given as provided above.

7.    Calculation of Time.  Whenever in this Agreement a period of time is stated as a

number of days, it shall be construed to mean calendar days; *provided, however,* that when any

period of time so stated would end on a Saturday, Sunday, legal holiday, then such period shall

be deemed to end on the next day following which is not a Saturday, Sunday, or legal holiday.

Time is of the essence of this Agreement.

6

8.    Further Assurances. Each Party hereby covenants and agrees (in the case of the Plaintiff, subject to Bankruptcy Court approval) to take any and all additional actions and execute, file, record and/or deliver to the other Party such further agreements, documents and instruments as may be necessary or as the other Party may at any time or times reasonably request to effect the provisions and intent of this Agreement.

9.    Construction. Unless the context of this Agreement clearly requires otherwise, references to the plural include the singular, the singular includes the plural, the part includes the whole, "including" is not limiting, and "or" has the inclusive meaning represented by the phrase "and/or." The words "hereof," "herein," "hereby," "hereunder," and similar terms in this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement. Section references are to this Agreement unless otherwise specified. Capitalized terms not defined herein shall have the meanings as provided in the License Agreement.

10.    Complete Agreement, Modifications in Writing. This Agreement is intended by the Parties as a final expression of their agreement and is intended as a complete statement of the terms and conditions of their agreement. No amendment, modification, supplement, termination, consent, or waiver of or to any provision of this Agreement nor any consent to any, departure therefrom shall in any event be effective unless the same shall be in writing and signed by or on behalf of each of the Parties. Any waiver of any provision of this Agreement, or any consent to any departure from the terms of any provisions of this Agreement, shall be effective only in the specific instance and for the specific purpose for which given.

11.    Waivers; Failure or Delay. No failure or delay on the part of any Party in the exercise of any, power, right, remedy, or privilege under this Agreement shall impair such power, right, remedy, or privilege or shall operate as a waiver thereof; nor shall any single or

7

partial exercise of any such power, right, or privilege preclude any other or further exercise of any other power, right, or privilege. The waiver of any such right, power, remedy, or privilege with respect to particular facts and circumstances shall not be deemed to be a waiver with respect to other facts and circumstances.

12.    Headings. Section headings used in this Agreement are for convenience of reference only and shall not constitute a part of this Agreement for any purpose or affect the construction of this Agreement.

13.    Execution in Counterparts; Facsimile Delivery; Reproduction. This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which counterparts, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Agreement. Delivery of a copy of an executed counterpart by facsimile shall constitute sufficient delivery of an executed original counterpart. This Agreement shall become effective upon the execution and delivery of a counterpart hereof by each of the parties hereto and approval by the Bankruptcy Court. This Agreement may be reproduced by any photographics, photostatic, microfilm, micro-card, miniature photographic, facsimile or other similar process and the original thereof may be destroyed. The Parties agree that any such reproduction shall, to the extent permitted by law, be as admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not the reproduction was made in the regular course of business) and that any enlargement, facsimile or further reproduction shall likewise be admissible in evidence.

14.    Severability. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision

of this Agreement shall be illegal, invalid, prohibited, or unenforceable under applicable law, such provision shall be ineffective only to the extent of such illegality, invalidity, prohibition or unenforceability, without invalidating or impairing the remaining provisions hereof.

15.     Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

16.     Governing Law.  This Agreement shall be construed in accordance with the laws of the State of Ohio that are applicable to contracts formed in and to performed entirely within such state without giving effect to any conflict of laws rules or principles recognized by the courts thereof that would cause the laws of another jurisdiction to apply.

IN WITNESS WHEREOF, the Parties have entered into this Agreement as of the date first set forth above, intending to be legally bound hereby.

Executed this January 26, 2009.

**FIRST MIDWEST PROPERTIES LLC**          **PAMI STATLER ARMS LLC**

By: _Eli Mann_                            By: _____
Name:  ELI MANN                           Name: _____ Jeffrey Fitts
Its:    Authorized Signatory              Its:    Authorized Signatory

9