Garfield Windross
15 Woodcliff Ct.
Oakland, Ca 94605
510-633-1436
1/26/2009

Cc: Steven M. Caroulis
Lehman Brothers Bank FSB
25510 Commercentre Dr Ste 150
Lake Forest, CA 92630
Phone 949-614-4879
Fax: 949-614-4652

Attn: Brian Shoichi Masumoto, Esq.
The Office of the United States Trustee
33 Whitehall Street
21st Floor
New York, NY 10004
Phone: (212) 510-0500
Fax: (212) 668-2255

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDING INC, et al.., | Case No. 08-13555 |
| | (Jointly Administered) |

**RESPONSE OF GARFIELD K. WINDROSS TO THE REPLY OF LEHMAN BROTHERS BANK, FSB TO THE OBJECTION OF GARFIELD WINDROSS (DOCKET #1772, 2382).**

## BACKGROUND

I, Garfield K. Windross filed an objection to two "default demand" letters from Lehman Brothers Bank, FSB docket # 1772, and 2382. In response Lehman Brothers Bank, FSB replied to my objection in a letter dated January 11th, 2009.

In this reply Lehman Brothers Bank, FSB provided a copy of said promissory note referred to in my objection (docket #: 1772).

## RESPONSE

The promissory note included in the reply applies to an agreement between Garfield K. Windross and GreenPoint Mortgage Funding, Inc. a New York Corporation. The promissory note does not list Lehman Brothers Holding Inc. or any of it's subsidiaries. No proof has being provided of a transfer of my note from GreenPoint Mortgage Funding, Inc. to Lehman Brothers Holding Inc., or any of it's subsidiaries. No proof has being provided that Lehman Brothers Bank, FSB should be servicing this loan. In good faith I continue to pay a monthly mortgage.

I also continue to object to any and all default letter based on my previous objections. Lehman Brothers Bank FSB continue to send conflicting information in my monthly statement and default demand letters. On January 2, 2009 a payment was made to Lehman Brothers through my WAMU on-line payment account. WAMU states the payment takes two days to get to Lehman Brothers. My most recent statement from Lehman Brothers credited the payment on January 12, 2009 and assessed a late fee. I contend that this is fraudulent, and Lehman Brothers still needs to provide a proper crediting of all my payments, payments applied to interest and escrow.

A copy of the promissory note, monthly statement, and demand default letter from Lehman Brothers Bank, FSB is provided for the record.

Dated: January 26, 2009

Sincerely,

*[signature]*

Garfield K. Windross

# LEHMAN BROTHERS

## *Delinquent Payment Statement*

**Small Business Finance**

servicing@lehman.com
Mailing Address: 25510 Commercentre Dr, Suite 150
Lake Forest, CA 92630
Toll Free Customer Service Number: (800) 370-6357

Bill For: 02/01/2009
Payment Amount: $4,144.05
Statement Date: 01/16/2009
Loan Number: **0091898387**

Interest Rate: 7.375
**Payment Past Due: 12/01/2008**
**Past Due: $8,288.10**
Unpaid Late Charges: $2,049.00
Other Charges: $0.00
OverPayments: $0.00
Escrow: $5,691.26
**Total Due: $20,172.41**

Garfield Windross
15 Woodcliff Court
Oakland, CA. 94605

**Include an additional $207.20 late fee if not paid before the 11th**

**Payment Activity**    Customer Service : 800-370-6357

| Date | Description | Principal | Interest | Escrow | Late Charge | Fees/Other | Total |
|---|---|---|---|---|---|---|---|
| 01/12/2009 | Payment | 512.92 | 3,631.13 | 637.25 | 218.70 | 0.00 | 5,000.00 |
| 12/29/2008 | Payment | 500.50 | 2,243.55 | 1,755.95 | 0.00 | 0.00 | 4,500.00 |

Principal Balance on    01/16/2009    591,835.72

- - - - - - - - - - - - - - - - - - - - - - - - [ Detach ] - - - - - - - - - - - - - - - - - - - - - - - -

**Payment Coupon**

## Lehman Brothers SBF

Servicing
File 056699
Los Angeles, CA 90074-6699

Garfield Windross

Bill For: 02/01/2009
Payment Amount: $4,144.05
Statement Date: 01/16/2009
Loan Number: **0091898387**

Interest Rate: 7.375
**Payment Past Due: 12/01/2008**
**Past Due: $8,288.10**
Unpaid Late Charges: $2,049.00
Other Charges: $0.00
OverPayments: $0.00
Escrow: $5,691.26
**Total Due: $20,172.41**

**Include an additional $207.20 late fee if not paid before the 11th**

Amount Enclosed: _____




Please write loan number on check and include this coupon with remittance.

# LEHMAN BROTHERS

January 13, 2009

## DEFAULT DEMAND

Garfield K. Windross  
15 Woodcliff Court  
Oakland, CA. 94605

**CERTIFIED MAIL**  
**7007 0220 0001 8339 9858**  
First Class Mail

| | |
|---|---|
| Name: | Garfield Windross |
| Number: | 91898387 |
| Property: | 8453- 8455 South Van Ness Avenue Inglewood, CA 90305 |

Dear MR. GARFIELD K WINDROSS,

The promissory note dated May 15, 2007 in the original amount of $600,000.00 is in Default due to non-payment of monthly installments of $4,781.30, including principal and interest, which became due on 12/1/2008 and on the first day of each subsequent month.

Because of this uncured breach in the terms and conditions of said Note, we do hereby declare the entire balance of indebtedness to be due and owing.

| | |
|---|---:|
| Principal | $ 591,835.72 |
| Estimate Interest* from 10/31/2008 to 1/23/2009 | $ 9,943.82 |
| Prepayment Penalty | $ 23,673.43 |
| Late Charges ( subject to increase after the 10th of each month ) | $ 2,049.00 |
| Misc Charges | $ - |
| Other - Escrow Advance Balance | $ 9,321.01 |
| **TOTAL** | **$ 636,822.98** |
| * Accrued Interest / Day: | $ 121.04 |

Demand is hereby made upon you under terms of said Note for payment of the entire balance due. If payment of this demand is not made on or before 1/23/2009, we shall take legal and other actions deemed necessary or appropriate to protect our interest, i.e., foreclose and liquidation of collateral.

To cure this default, a payment of $ 15,391.11 must be received on or before 1/23/2009  
**CERTIFIED FUNDS ONLY! No partial payments will be accepted.**

Please call the undersigned at (949) 860-0276 with your questions or comments.

Regards,

Peggy G. Henson  
Special Assets Specialist




LEHMAN BROTHERS BANK, FSB
25520 Commercentre Drive, Ste. 150
Lake Forest, CA 92630
TEL (800)370-6357 FAX (949)614-4652

# LEHMAN BROTHERS

January 11, 2009

Garfield Wndross
15 Woodcliff Court
Oakland, CA. 94605

      Loan #   0091898387 / Garfield Windross
      Collateral Address:  8453-8455 South Van Ness Avenue
                       Inglewood, CA. 90305

Dear Mr. Windross,

Lehman Brothers has received copies of your letters addressed to The Office of the United States Trustee dated November 17, 2000 and December 11, 2008. This letter is in response and is provided to address the issues named in those two documents.

First, it seems that you have a misunderstanding of the bankruptcy filing by Lehman Brothers Holding, Inc.  Lehman Brothers Bank, FSB is a wholly owned subsidiary of Lehman Brothers. However, it is also a federally charted Savings Bank with its own board of directors.  Lehman Brothers Small Business Finance group is a division of Lehman Brothers Bank, FSB.  Lehman Brothers Bank FSB did not file for bankruptcy protection, and it remains a going concern.  The day-to-day operations of Lehman Brothers Bank FSB are not subject to the Office of the United States Trustee.

Your loan number 0091898387 with the collateral property address named above is held and serviced by Lehman Brothers Bank FSB.

In your letters, you stated your concerns that I would like to address herein.  However, I am unsure about your concerns regarding the Promissory Note of your loan. I have attached a copy of the Note; please contact me so that I can address your specific questions.

Payment statements are issued on a monthly basis and mailed to the address you provided to the bank for mailings.  Should this address be incorrect, it is your responsibility to contact our office upon change of address.  The monthly statement provides a list of each payment received in the prior month and a breakdown of how each payment was applied to the loan.  Should you have any questions regarding these statements or you should not receive your monthly statement you should contact our office.  Payment histories are provided upon request.

Lehman provides payment options for your convenience.  One option is to walk-in your payment at Bank of America.  Should you choose to use this convenient option, it is your responsibility to provide us a copy of your deposit receipt confirming your deposit into the Lehman Brothers Global California account.  This can be done via facsimile or by U.S. Mail.  Using the receipt, we track the remittance for payment posting.  Should this document not be provided, posting of payments could be delayed.

  Finally, the Default Demand is self explanatory.  It explains clearly the delinquency of the loan, and the amount needed to cure or bring the account current.  Should you have any questions



LEHMAN BROTHERS BANK, FSB
25510 COMMERCENTRE DRIVE #150
LAKE FOREST, CA 9230

TEL 949*614-4879  FAX 646*346-8278


EQUAL HOUSING LENDER

January 11, 2009
Page 2

upon receiving this notice please contact Ms. Peggy Henson as she is the Special Assets Officer handling your account. Ms. Henson can provide you with an overview of the accounting and explain the policy regarding this notice.

Should you have any questions regarding the content of this letter or any other concern of your loan agreement, feel free to contact us.

Sincerely,

Steven M. Caroulis
Vice President, Special Assets
Steven.Caroulis@Lehman.com

Promissory Note
Adjustable Rate 6 Month LIBOR Index

U.S. $600,000.00                                                           Date: May 15, 2007
City SANTA MONICA, State California

FOR VALUE RECEIVED, the undersigned Garfield K. Windross,        ("Borrower") jointly and severally (if more than one) promise(s) to pay to the order of GreenPoint Mortgage Funding, Inc. a New York Corporation the principal sum of U.S. $600,000.00, with interest on the unpaid principal balance as set forth in Section 3 below.

1. **Defined Terms.** As used in this Note, (i) the term "**Lender**" means the holder of this Note, and (ii) the term "**Indebtedness**" means the principal of, interest on, or any other amounts due at any time under, this Note, the Security Instrument or any other Loan Document, including prepayment premiums, late charges, default interest, and advances to protect the security of the Security Instrument under Section 12 of the Security Instrument. "**Event of Default**" and other capitalized terms used but not defined in this Note shall have the meanings given to such terms in the Security Instrument.

2. **Address for Payment:** All payments due under this Note shall be payable at P.O. Box 79363, City of Industry, CA 91716-9363, or such other place as may be designated by written notice to Borrower from or on behalf of Lender.

3. **Payment of Principal and Interest.** Payments shall be made in immediately available funds as follows:

   (a) **General.** Monthly payments will be applied to interest before principal. Any remaining principal and interest shall be due and payable on June 1, 2037 or on any earlier date on which the unpaid principal balance of this Note becomes due and payable, by acceleration or otherwise (the "**Maturity Date**"). At any time an Event of Default shall have occurred and be continuing and/or after maturity of the Loan, including maturity upon acceleration, the unpaid principal balance, all accrued and unpaid interest and all other amounts payable under the Note shall bear interest at the "**Default Rate**" set forth in Section 8 of this Note. The unpaid principal balance shall continue to bear interest after the Maturity Date at the Default Rate set forth in this Note until and including the date on which it is paid in full. Interest under this Note shall be computed on the basis of a 360-day year consisting of twelve 30-day months except that interest payable pursuant to paragraph 3(c)(i) below shall be calculated on a factor based on the actual number of days elapsed divided by 365.

   (b) **Interest Rate.** Interest will accrue on the outstanding principal balance of this Note as follows:

      (i) **Initial Interest Rate:** The initial interest rate charged on the unpaid principal of this Note shall be 7.375% per annum effective as of the date of disbursement to and excluding June 1, 2012. Thereafter, the interest rate the Borrower will pay may change in accordance with this Section 3(b).

      (ii) **Interest Rate Changes.** The interest rate the Borrower will pay may change on June 1, 2012 (the "**First Interest Change Date**") and on that day of the month every 6 month(s) thereafter. Each date on which the interest rate could change is called an "**Interest Change Date**". Before each Interest Change Date, the Lender will calculate the Borrower's new interest rate by adding 3.000% to the Current Index. The Lender will then round up the result of this addition to the nearest whole one-eighth (1/8) of one (1) percentage point. Subject to the limits stated in Section 3(b)(iv) below, this rounded amount will be the new interest rate until the next Interest Change Date.

CERTIFIED TO BE A TRUE
AND CORRECT COPY OF ORIGINAL
BY _____
GB ESCROW 600CA (12/2006)
0091898387

ARM Note 6 Mo LIBOR - California                    Page 1 of 6
GreenPoint Mortgage Funding, Inc.

(iii) **The Index.** Beginning with the First Interest Change Date, the interest rate will be calculated based on an index. The "Index" will be the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published by the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index". If the Index is no longer available, the Lender will choose a comparable alternate Index. The selection of an alternate Index shall be made in the Lender's discretion. Lender will give Borrower notice of such selection

(iv) **Limits on Interest Rate Changes.** On the First Interest Change Date, Borrower's interest rate shall not be increased or decreased by more than 5.000% over the initial interest rate specified in Section 3(b)(i) above. On subsequent Interest Change Dates (after the First Interest Change Date), Borrower's interest shall not be increased or decreased on any single Interest Change Date by more than 1.000% over the interest rate previously in effect. In addition to the preceding limitations, throughout the term of this Note, the Borrower's interest rate will never be greater than 13.375% per annum nor less than 3.000% per annum.

(c) **Payments.** Payments of principal and interest on the outstanding balance of this Note will be paid as follows:

(i) **Interim Interest.** Unless disbursement of principal is made by Lender to Borrower on the first day of the month, interest at the initial interest rate, for the period beginning on the date of the disbursement and ending on and including the last day of the month in which such disbursement is made shall be payable upon the initial funding of the loan evidenced by this Note.

(ii) **Monthly Payments.** Monthly payments of principal and interest shall be due and payable commencing on July 1, 2007, and on the same day of every calendar month thereafter through and including June 1, 2037.

(iii) **Amount of Initial Monthly Payments.** The initial monthly payment of principal and interest will be in the amount of U.S. $4,144.05. This amount may change. The amount of the initial monthly payment of principal and interest is the amount that would be sufficient to repay the face amount of this Note in full on the Maturity Date in substantially equal monthly payments.

(iv) **Change in Monthly Payments:** The monthly payments shall change each time the interest rate changes pursuant to Section 3(b) of this Note. Changes in monthly payments will reflect changes in the unpaid principal of the loan and in the interest rate. Lender will determine the amount of the new monthly payment in an amount that would be sufficient to repay the unpaid principal that is expected to be owed at the Interest Change Date in full on the Maturity Date at the new interest rate in substantially equal monthly payments.

(v) **Effective Date of Changes.** The new interest rate will become effective on each Interest Change Date. Borrower will pay the new monthly payment beginning on the first monthly payment due date after the Interest Change Date until the amount of monthly payment changes again.

(vi) **Final Payment.** All remaining Indebtedness including all principal and interest shall be due and payable by the Borrower on the Maturity Date.

(d) **Notice of Changes.** The Lender will deliver or mail a notice of any changes in the Borrower's interest rate and the amount of the new monthly payment promptly upon the calculation of such changes.

(e) **Failure to Make Adjustments:** If for any reason Lender fails to make an adjustment to the interest rate or the monthly payment amount as described in this Note, regardless of any notice requirement, Lender may, upon discovery of such failure, then make such adjustment as if it had been made on time. Borrower further agrees to pay upon demand any additional monies which Borrower may owe as a result of any such adjustment. Borrower agrees not to hold Lender responsible for any damages that may result from Lender's failure to make the adjustment and to allow Lender, at its option, to apply any excess monies which Borrower may have paid to partial prepayment of the unpaid principal balance of this Note.

(f) **Payment Receipt.** Any regularly scheduled monthly installment of principal and interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due.

4. **Application of Payments.** If at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, Lender may apply the amount received to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion. Borrower agrees that neither Lender's acceptance of a payment from Borrower in an amount that is less than all amounts then due and payable nor Lender's application of such payment shall constitute or be deemed to constitute a waiver of the unpaid amounts or an accord and satisfaction.

CERTIFIED TO BE A TRUE AND CORRECT COPY OF ORIGINAL
BY _____
GB ESCROW, INC.

ARM Note 6 Mo LIBOR - California   Page 2 of 6   CA (12/2006)
GreenPoint Mortgage Funding, Inc.                0091898387

5. **Security.** The Indebtedness is secured, among other things, by that certain deed of trust, mortgage or security deed dated as of the date of this Note and executed by Borrower in favor of Lender (the "Security Instrument"), and reference is made to the Security Instrument for other rights of Lender as to collateral for the Indebtedness.

6. **Acceleration.** If an Event of Default has occurred and is continuing, the entire unpaid principal balance, any accrued interest, any prepayment premium payable under Section 10, if any, and all other amounts payable under this Note and any other Loan Document, shall at once become due and payable, at the option of Lender, without any prior notice to Borrower. Lender may exercise this option to accelerate regardless of any prior forbearance.

7. **Late Charge.**

(a) If any monthly installment of interest or principal and interest or other amount payable under this Note or under the Security Instrument or any other Loan Document is not received in full by Lender within 10 days after the installment or other amount is due, counting from and including the date such installment or other amount is due (unless applicable law requires a longer period of time before a late charge may be imposed, in which event such longer period shall be substituted), Borrower shall pay to Lender, immediately and without demand by Lender, a late charge equal to 5.000% of such installment or other amount due (unless applicable law requires a lesser amount be charged, in which event such lesser amount shall be substituted).

(b) Borrower acknowledges that its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the loan evidenced by this Note (the "Loan") and that it is extremely difficult and impractical to determine those additional expenses. Borrower agrees that the late charge payable pursuant to this Section represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional expenses Lender will incur by reason of such late payment. The late charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate pursuant to Section 8.

8. **Default Rate.** So long as (a) any monthly installment under this Note remains past due for thirty (30) days or more or (b) any other Event of Default has occurred and is continuing, interest under this Note shall accrue on the unpaid principal balance from the earlier of the due date of the first unpaid monthly installment or the occurrence of such other Event of Default, as applicable, at a rate (the "Default Rate") equal to the lesser of five (5) percentage points above the rate stated in Section 3 of this Note or the maximum interest rate which may be collected from Borrower under applicable law. If the unpaid principal balance and all accrued interest are not paid in full on the Maturity Date, the unpaid principal balance and all accrued interest shall bear interest from the Maturity Date at the Default Rate. Borrower acknowledges that (a) its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan, (b) during the time that any monthly installment under this Note is delinquent for thirty (30) days or more, Lender will incur additional costs and expenses arising from its loss of the use of the money due and from the adverse impact on Lender's ability to meet its other obligations and to take advantage of other investment opportunities; and (c) it is extremely difficult and impractical to determine those additional costs and expenses. Borrower also acknowledges that, during the time that any monthly installment under this Note is delinquent for thirty (30) days or more or any other Event of Default has occurred and is continuing, Lender's risk of nonpayment of this Note will be materially increased and Lender is entitled to be compensated for such increased risk. Borrower agrees that the increase in the rate of interest payable under this Note to the Default Rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional costs and expenses Lender will incur by reason of the Borrower's delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan. During any period that the Default Rate is in effect the additional interest accruing over and above the rate stated in Section 3 of this Note shall be immediately due and payable in addition to the regularly scheduled principal and interest payments.

9. **Full Recourse Liability.**

(a) Borrower shall have full recourse liability under this Note, the Security Instrument and any and all other Loan Documents for the repayment of the Indebtedness and for the performance of any and all other obligations of Borrower under the Loan Documents.

(b) Lender may exercise its rights against Borrower personally without regard to whether Lender has exercised any right against the Mortgaged Property or any other security, or pursued any rights against any guarantor, or pursued any other rights available to lender under this Note, the Security Instrument, any other Loan Document or applicable law. To the fullest extent permitted by applicable law, in any action to enforce Borrower's personal liability under this Section 9, Borrower waives any right to set off the value of the Mortgaged Property against such personal liability.

CERTIFIED TO BE A TRUE
AND CORRECT COPY OF ORIGINAL
BY _____

10. **Voluntary and Involuntary Prepayments.**

(a) Any receipt by Lender of principal due under this Note prior to the Maturity Date, other than principal required to be paid in monthly installments pursuant to Section 3, constitutes a prepayment of principal under this Note. Without limiting the foregoing, any application by Lender, prior to the Maturity Date, of any proceeds of collateral or other security to the repayment of any portion of the unpaid principal balance of this Note constitutes a prepayment under this Note. A prepayment premium shall be payable in connection with any prepayment made under this Note as provided herein:

(i) Borrower may voluntarily prepay all of the unpaid principal balance of this Note on a Business Day designated as the date for such prepayment in a Notice from Borrower to Lender given at least 30 days prior to the date of such prepayment. Such prepayment shall be made by paying (A) the amount of principal being paid, (B) all accrued interest, (C) all other sums due Lender at the time of such prepayment, and (D) the prepayment premium calculated pursuant to the Prepayment Fee Allonge. For purposes of this Note, a "Business Day" means any day other than a Saturday, Sunday or any other day on which Lender is not open for business. For all purposes including the accrual of interest, but not excluding the determination of the prepayment date under the Prepayment Fee Allonge, any prepayment received by Lender on any day other than the last calendar day of the month shall be deemed to have been received on the last calendar day of such month.

(ii) Borrower may voluntarily prepay less than all of the unpaid principal balance of this Note (a "Partial Prepayment") at any time. Upon delivery of the Partial Prepayment, a prepayment premium calculated pursuant to the Prepayment Fee Allonge, based on the amount being prepaid, shall be due and payable to Lender upon demand.

(iii) Upon Lender's exercise of any right of acceleration under this Note, Borrower shall pay to Lender, in addition to the entire unpaid principal balance of this Note outstanding at the time of the acceleration, (A) all accrued interest, (B) and all other sums due Lender, and (C) the prepayment premium calculated pursuant to the Prepayment Fee Allonge, to the extent such prepayment premium does not exceed the maximum rate permitted by applicable law.

(iv) Any application by Lender of any proceeds of collateral or other security to the repayment of any portion of the unpaid principal balance of this Note prior to the Maturity Date and in the absence of acceleration shall be deemed to be a partial prepayment by Borrower, requiring the payment to Lender by Borrower of a prepayment premium. The amount of any such partial prepayment shall be computed so as to provide to Lender a prepayment premium computed pursuant to the Prepayment Fee Allonge of this Note without Borrower having to pay out-of-pocket any additional amounts.

(b) Notwithstanding the provisions of this Section 10(a), no prepayment premium shall be payable with respect to (A) any prepayment made after the expiration of the Prepayment Premium Period (as defined in the Prepayment Fee Allonge), or (B) any prepayment occurring as a result of the application of any insurance proceeds or condemnation award under the Security Instrument, or (C) a Partial Prepayment in an amount that, when aggregated with other prepayments made during the preceding twelve (12) months, is not greater than ten percent (10%) of the original principal balance of this Note.

(c) Any permitted or required prepayment of less than the unpaid principal balance of this Note shall not extend or postpone the due date of any subsequent monthly installments or change the amount of such installments, unless Lender agrees otherwise in writing.

(d) Borrower recognizes that any prepayment of any of the unpaid principal balance of this Note, whether voluntary or involuntary or resulting from a default by Borrower, will result in Lender's incurring loss, including reinvestment loss, additional expense and frustration or impairment of Lender's ability to meet its commitments to third parties. Borrower agrees to pay to Lender upon demand damages for the detriment caused by any prepayment, and agrees that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore acknowledges and agrees that the formula for calculating prepayment premiums set forth in the Prepayment Fee Allonge represents a reasonable estimate of the damages Lender will incur because of a prepayment.

(e) Borrower further acknowledges that the prepayment premium provisions of this Note are a material part of the consideration for the Loan, and acknowledges that the terms of this Note are in other respects more favorable to Borrower as a result of Borrower's voluntary agreement to the prepayment premium provisions.

11. **Costs and Expenses.** To the fullest extent allowed by applicable law, Borrower shall pay all expenses and costs, including fees and out-of-pocket expenses of attorneys (including Lender's in-house attorneys) and expert witnesses and costs of investigation, incurred by Lender as a result of any default under this Note or in connection with efforts to collect any amount due under this Note, or to enforce the provisions of any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding) or judicial or non-judicial foreclosure proceeding.

ARM Note 6 Mo LIBOR - California　　　　Page 4 of 6
GreenPoint Mortgage Funding, Inc.

CERTIFIED TO BE A TRUE AND CORRECT COPY OF ORIGINAL
BY _____

ESCROW INC.

12. **Forbearance.** Any forbearance by Lender in exercising any right or remedy under this Note, the Security Instrument, or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of that or any other right or remedy. The acceptance by Lender of any payment after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments or to exercise any right or remedy with respect to any failure to make prompt payment. Enforcement by Lender of any security for Borrower's obligations under this Note shall not constitute an election by Lender of remedies so as to preclude the exercise of any other right or remedy available to Lender.

13. **Waivers.** Presentment, demand, notice of dishonor, protest, notice of acceleration, notice of intent to demand or accelerate payment or maturity, presentment for payment, notice of nonpayment, grace, and diligence in collecting the Indebtedness are waived by Borrower and all endorsers and guarantors of this Note and all other third party obligors.

14. **Loan Charges.** Neither this Note nor any of the other Loan Documents shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower in connection with the Loan is interpreted so that any interest or other charge provided for in any Loan Document, whether considered separately or together with other charges provided for in any other Loan Document, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate that violation. The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of this Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the Indebtedness that constitute interest, shall be deemed to be allocated and spread ratably over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Note.

15. **Purpose of Indebtedness.** Borrower represents that Borrower is incurring the Indebtedness solely for the purpose of carrying on a business or commercial enterprise, and not for personal, family, household, or agricultural purposes.

16. **Counting of Days.** Except where otherwise specifically provided, any reference in this Note to a period of "days" means calendar days, not Business Days.

17. **Governing Law.** This Note shall be governed by the laws of the jurisdiction in which the Land is located.

18. **Captions.** The captions of the paragraphs of this Note are for convenience only and shall be disregarded in construing this Note.

19. **Notices.** All Notices, demands and other communications required or permitted to be given by Lender to Borrower pursuant to this Note shall be given in accordance with Section 31 of the Security Instrument.

20. **Consent to Jurisdiction and Venue.** Borrower agrees that any controversy arising under or in relation to this Note shall be litigated exclusively in the jurisdiction in which the Land is located (the "Property Jurisdiction"). The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have exclusive jurisdiction over all controversies which shall arise under or in relation to this Note. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

21. **Counterparts.** This Note may be executed in any number of counterparts each of which shall be deemed an original, but all such counterparts together shall constitute but one Note.

22. **WAIVER OF TRIAL BY JURY.** TO THE EXTENT PERMITTED BY LAW, BORROWER AND LENDER EACH (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS NOTE OR THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER AND BORROWER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

23. **Time.** Time is of the essence for all provisions of this Note.

24. If Lender accepts a guaranty of only a part of the Indebtedness, Borrower hereby waives its right under California Civil Code Section 2822(a) to designate the portion of the Indebtedness which shall be satisfied by the guarantor's partial payment.

ARM Note 6 Mo LIBOR - California        Page 5 of 6
GreenPoint Mortgage Funding, Inc.

# PREPAYMENT FEE ALLONGE

This Prepayment Fee Allonge ("Allonge") is made this 15th day of May, 2007, and is incorporated into and intended to form a part of the note dated the same date as this Allonge (Note) and also amends and supplements the mortgage, deed of trust, security deed, or security instrument (the "Security Instrument") dated the same date as this Allonge and the Note. To the extent that the provisions of this Allonge are inconsistent with the provisions of the Note and/or the Security Instrument, the provisions of this Allonge shall prevail over and will supercede any inconsistent provisions of the Note and/or the Security Instrument.

Section 10 of Note entitled **Voluntary and Involuntary Prepayments** is amended by adding the following paragraph as the last paragraph of such section:

(f) Any prepayment premium payable under this Section 10 shall be computed as follows:

(i) If the prepayment is made between the date of this Note and the date that is 5 years after the date of this Note, (the "Prepayment Premium Period") the prepayment premium shall be as follows:

(A) If prepayment is made during the first year of the Prepayment Premium Period, the prepayment premium shall be five percent (5%) of the principal amount being prepaid;

(B) If prepayment is made during the second year of the Prepayment Premium Period, the prepayment premium shall be four percent (4%) of the principal amount being prepaid;

(C) If prepayment is made during the third, fourth or fifth year of the Prepayment Premium Period, the prepayment premium shall be three percent (3%) of the principal amount being prepaid;

(ii) If the prepayment is made after the expiration of the Prepayment Premium Period, there shall be no prepayment premium due.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

BORROWER(S):

_____ (Seal)     _____ (Seal)
Garfield K. Windross

_____ (Seal)     _____ (Seal)

_____ (Seal)     _____ (Seal)

CERTIFIED TO BE A TRUE AND CORRECT COPY OF ORIGINAL
BY _____
GB ESCROW, INC.

IN WITNESS WHEREOF, and in consideration of the Lender's agreement to lend Borrower the principal amount set forth above, Borrower has signed and delivered this Note under seal or has caused this Note to be signed and delivered under seal by its duly authorized representative.

BORROWER(S):

_____ (Seal)    _____ (Seal)
Gaffield K. Windross

_____ (Seal)    _____ (Seal)

_____ (Seal)    _____ (Seal)

_____ (Seal)    _____ (Seal)

CERTIFIED TO BE A TRUE AND CORRECT COPY OF ORIGINAL
BY _____
GB ESCROW, INC.

ARM Note 6 Mo LIBOR - California                    Page 6 of 6                    H0560CA (12/2006)
GreenPoint Mortgage Funding, Inc.                                                  0091898387