DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: 212.259.8000
Facsimile: 212.259.6333
Martin J. Bienenstock, Esq.
Irena Goldstein, Esq.

Attorneys for The Walt Disney Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                    :

**In re**                             :          **Chapter 11 Case No.**

**LEHMAN BROTHERS HOLDINGS INC.,**  :         **08-13555 (JMP)**
*et al.*
      **Debtors.**              :         **(Jointly Administered)**
                                    :
---------------------------------------------------------- x

**OBJECTION OF THE WALT DISNEY COMPANY TO DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 364 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO GRANT FIRST PRIORITY LIENS IN CASH COLLATERAL POSTED IN CONNECTION WITH THE HEDGING TRANSACTIONS THE DEBTORS ENTER INTO THROUGH CERTAIN FUTURES AND PRIME <u>BROKERAGE ACCOUNTS</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        1.        The Walt Disney Company ("<u>TWDC</u>") submits this objection (the "<u>Objection</u>") to the motion (the "<u>Motion</u>") of Lehman Brothers Holdings, Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-captioned chapter 11 cases (together, the "<u>Debtors</u>") for an order, pursuant to sections 105 and 364 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), authorizing the Debtors to grant first priority liens in cash collateral posted in connection with the hedging transactions (the "<u>Future Hedging Transactions</u>") the Debtors enter into through certain futures and prime brokerage accounts and respectfully represents:

## BACKGROUND

2.      LBHI and Lehman Brothers Commercial Corp. ("LBCC") filed for relief under chapter 11 of the Bankruptcy Code on or about September 15 and October 5, 2008, respectively.  Certain other direct and indirect subsidiaries of LBHI (the "Subsidiaries") also commenced chapter 11 cases in that interval.  Pursuant to court approval, the Debtors' cases are jointly administered under the above-captioned case number, but no order has directed or approved substantive consolidation.

3.      TWDC is a creditor of LBHI and LBCC as a result of certain foreign exchange transactions between TWDC and LBCC, guaranteed by LBHI, entered into prior to each entity's bankruptcy filing.  As of today, TWDC is owed approximately $92 million from LBCC which was guaranteed by LBHI.  As of LBHI's petition date, TWDC's guaranty claim was approximately $107 million.

4.      The Debtors seek an order authorizing them to enter into Future Hedging Transactions with certain unnamed broker dealers to hedge against short and long term risks associated with the Debtors' estates' derivative contracts, pursuant to which the Debtors are required to post "cash, securities, or other collateral" (the "Collateral")[1] to secure their currently unidentified obligations under such future transactions.

---

[1] While the Motion's title refers only to "cash collateral," the Collateral includes securities and "other collateral." (Motion ¶ 13)

2

**OBJECTIONS**

5. <u>The Relief Requested is Unbounded, Open Ended, and Undefined</u>. The Debtors announce they "will enter into a diverse range of trading or hedging transactions including but not limited to over the counter transactions (the "Hedging Transactions") that will serve as a hedge against any potential future loss in value under the applicable Derivative Contract." Motion at ¶ 12. That the Future Hedging Transactions involve the incurrence of credit, is admitted by the Debtors when they explain: "The Broker Dealer counterparties to these Hedging Transactions will extend credit to the Debtors by making the full value of the Hedging Transactions available to the Debtors while only requiring the posting of Collateral that is less than such transactions' full value. In each case, the Collateral requirements will be determined by the Broker Dealer and will be driven by industry standards that take into consideration the type of transaction and the credit risk associated with the Debtors as a counterparty…." Motion at ¶ 13.

6. <u>The Motion Fails to State a Claim for Relief under Bankruptcy Code Section 364(c)</u> because it does not disclose material facts, including:

    a. The total amount of liability the Debtors may incur, or any relevant measure of exposure, such as "Value-at-Risk (Var);"

    b. Minimum credit criteria for the broker-dealer counterparties for the Future Hedging Transactions;

    c. The types of derivative contracts – *i.e.*, interest rate, commodity, currency, credit, equity – that the Debtors intend to enter into;

    d. The risks to the effectiveness of the hedges – that is, the risk that losses on the Future Hedging Transactions may not be fully or directly offset by further gains on the Debtors' existing contracts;

    e. The terms parameters to be satisfied before a transaction can be considered a hedge as opposed to a bet;

3

  f.  Whether the Future Hedging Transactions can be terminated when and if the Debtors' counterparties terminate existing derivative contracts;

  g.  Who will decide on and negotiate Future Hedging Transactions; and

  h.  What disclosure and accountability will creditors obtain.

  7. <u>The Motion Ignores and Violates Bankruptcy Rule 4001(c)</u>.  The Debtors concede in paragraphs 16 and 19 of their Motion that they are invoking and requesting relief under Bankruptcy Code section 364(c)(2)(encumbering property not otherwise subject to a lien to secure credit).  But, nowhere in their Motion do the Debtors mention the applicability of 4001(c)(1) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") which in pertinent part provides:

> (c) **Obtaining Credit.**
>
> **(1) Motion; Service.**
>
> (A) Motion. A motion for authority to obtain credit shall be made in accordance with Rule 9014 and shall be accompanied by a copy of the credit agreement and a proposed form of order.
>
> (B) Contents. The motion shall consist of or (if the motion is more than five pages in length) begin with a concise statement of the relief requested, not to exceed five pages, that lists or summarizes, and sets out the location within the relevant documents of, all material provisions of the proposed credit agreement and form of order, including interest rate, maturity, events of default, liens, borrowing limits, and borrowing conditions. If the proposed credit agreement or form of order includes any of the provisions listed below, the concise statement shall also: briefly list or summarize each one; identify its specific location in the proposed agreement and form of order; and identify any such provision that is proposed to remain in effect if interim approval is granted, but final relief is denied, as provided under Rule 4001(c)(2). In addition, the motion shall describe the nature and extent of each provision listed below:
>
> (i) a grant of priority or a lien on property of the estate under § 364(c) or (d);

4

In short, the Debtors violate Bankruptcy Rule 4001(c)(1) by not providing actual credit agreements and not even describing important terms, such as interest rates, maturities, events of default, borrowing limits, and borrowing conditions.

8. Additionally, the Debtors fail to provide any authority for violating Bankruptcy Rule 4001(c). The Debtors include Bankruptcy Code section 105 in the title of their Motion, suggesting they are aware of the issues; but, section 105(a) provides the court may issue any order "to carry out the provisions of this title," – not to override the Bankruptcy Rules and to deprive creditors of their fundamental rights to meaningful notice and to know how estate assets are being used.

9. <u>The Debtors Ignore and Fail to Provide for Interdebtor Issues</u>. Notwithstanding that, among other things, the order dated January 16, 2009 directing the appointment of an examiner highlights the importance of protecting rights of creditors of the Subsidiaries, the Motion overlooks all interdebtor issues implicated by the relief it requests, and thereby further causes the Motion to fail to state a claim. Specifically, the Motion fails to address such issues as:

   a. The identities of the Debtors' estates holding derivative contracts and the value of each estate's derivatives proposed to be hedged;

   b. Will each Subsidiary pay for its hedges, or will LBHI pay a portion of the hedges because it has guaranteed each hedge?

   c. Does each Subsidiary have adequate cash and other collateral to secure its own hedges or will such Subsidiary obtain it from another Debtor, and if so, on what terms?

   d. Will each Subsidiary be solely liable for its hedge contracts or will additional Debtors be responsible?

   e. If a Subsidiary is solvent, will LBHI pay for its hedges? If not, why not?

10. In short, the Debtors' wholesale request for authority to hedge and to pledge Collateral on terms to be determined in the future, on the ground that the Debtors want to reduce risk, both fails to state a claim and violates the Bankruptcy Code and Bankruptcy Rules. Moreover, the failure to acknowledge and address interdebtor issues wrongly contributes to a *de facto* substantive consolidation without notice, hearing, or court approval.

11. <u>Creditors' Oversight</u>. As the Court is well aware, we are in a serious economic downturn marked by unprecedented uncertainty. The Debtors' creditors need an effective way to monitor what will ultimately be their assets. While TWDC sympathizes with the Debtors' desire to have the flexibility to "lock in" gains in their open "in-the-money" derivative positions in certain circumstances, any system providing for the Debtors to enter into Future Hedging Transactions and to pledge estates property, should require prior statutory creditors' committee approval of:

a. The fact that each transaction is indeed an effective hedge of a legacy in-the-money positions and does not expose the estates to meaningful incremental risks;

b. All Future Hedging Transactions, both in the aggregate and individually, in excess of certain agreed set amounts;

c. Collateral Postings under the Future Hedging Transactions exceeding certain agreed set amounts so that the committee can guard against eroding situations and poorly-conceived or ineffective hedges;

d. Reviews of prior derivatives to determine, among other things, whether the counterparty of the legacy "in-the-money" derivative is of sufficient creditworthiness to support the probable collection of the receivable warranting the use of the estates' valuable collateral.

12. Finally, the Debtors should be required to file with the Court, on a periodic basis, a statement setting forth the aggregate value of each Debtor's derivatives, segmented broadly by tenor and asset class (*i.e.,* rates, equities, commodities, credit, currencies), the notional amount of the transactions, the single-day VaR (or some other generally accepted

6

risk measure) and the value of the Collateral posted in connection with the Future Hedging Transactions.

## **CONCLUSION**

WHEREFORE TWDC requests that this Court (a) deny the Motion for failure to provide adequate notice and to state a claim, and (b) grant TWDC such other and further relief as is equitable and just.

| | |
|---|---|
| Dated: New York, NY<br>February 6, 2009 | DEWEY & LEBOEUF LLP<br><br>/s/ Martin J. Bienenstock<br>Martin J. Bienenstock, Esq.<br>Irena Goldstein, Esq.<br>1301 Avenue of the Americas<br>New York, New York 10019<br>Telephone: 212.259.8000<br>Facsimile: 212.259.6333 |