wherein 25 Broad absolutely conveyed to the Lender all the rents interest and profits arising from the Mortgaged Premises. A true copy of the Project ALR is annexed hereto as **Exhibit M** and the terms and conditions of the Project ALR are incorporated into this Complaint as if fully set forth herein at length.

81.    The Project ALR was duly recorded on March 20, 2007 in the Office of the City Register of the City of New York in New York County as Instrument No. (CRFN) 2007000147279.

82.    All applicable recording taxes and fees were duly paid at the time of recording the Project ALR.

83.    Lender is the owner and holder of the Project Mortgage, Project Note, Project Loan Agreement, Project ALR, and all other instruments and documents evidencing or relating to the Project Loan (collectively referred to herein as the "**Project Loan Documents**"), the terms of which are hereby incorporated into this Complaint as if fully set forth herein.

84.    Pursuant to the Senior ALR, the Building ALR and the Project ALR (collectively, the "**ALRs**"), the Lender granted 25 Broad a limited revocable license to collect and receive the rents so long as no Event of Default occurred as defined therein and in the Mortgages (as defined below). See e.g. Exhibit D at §§2.1 and 3.1.

85.    By reason of the defaults set forth herein constituting Events of Default under the Senior ALR, the Building ALR and the Project ALR, 25 Broad's license, privilege and ability to collect the rents issues and profits from the Mortgaged Premises was automatically revoked upon the occurrence of such Events of Default. See e.g. Exhibit D at §3.1.

### *The Combined Loan Transaction*

86.    Simultaneous with the execution and delivery of the Senior Loan Documents, the Building Loan Documents and the Project Loan Documents and in order to further induce the Lender to make the Senior Loan, the Project Loan and the Building Loan, 25 Broad, as borrower, Swig Equities, LLC, as manager, and Lender, as lender, entered into that certain Cash Management Agreement (the "**CMA**") dated as of March 9, 2007, wherein the parties established a lockbox in favor of the Lender for the deposit and possession of all the rents, interest and profits arising from the Mortgaged Premises.  A true copy of the CMA is annexed hereto as **Exhibit N** and the terms and conditions of the CMA are incorporated into this Complaint as if fully set forth herein at length.

87.    Simultaneous with the execution and delivery of the Senior Loan Documents, the Building Loan Documents, the Project Loan Documents and the CMA, Swig executed and delivered to the Lender a Guaranty of Recourse Obligations (the "**Recourse Guaranty**") wherein Swig unconditionally, absolutely and irrevocably guaranteed 25 Broad's obligations and liabilities to the Lender for out-of-pocket loss, damage, cost, expense, liability, claim or other obligations incurred by the Lender arising out of or in connection with numerous recourse events, including but not limited to, fraud, intentional misrepresentation, or willful misconduct by 25 Broad, misappropriation by 25 Broad of rents received with respect to the Mortgaged Premises during an Event of Default under the Loan Documents, intentional physical waste of the Mortgaged Premises and misappropriation of any deposits collected with respect to the Mortgaged Premises.  A true copy of the Recourse Guaranty is attached hereto as **Exhibit O** and the terms and conditions of the Recourse Guaranty are incorporated into this Complaint as if fully set forth herein at length.

88.    Simultaneous with the execution and delivery of the Senior Loan Documents, the Building Loan Documents, the Project Loan Documents, the CMA and the Recourse Guaranty, Swig executed and delivered to the Lender a Guaranty of Completion (the "**Completion Guaranty**") wherein Swig unconditionally, absolutely and irrevocably guaranteed 25 Broad's obligations to complete construction of the Construction Project as and when provided in the Loan Agreements, to pay all costs of completing the Construction Project, to keep the Mortgaged Premises free of all liens arising or incurred in connection with the Construction Project, to pay all claims relating to the foregoing before they become delinquent, and to complete all Require Repairs (as defined in the Building Loan Agreement).  A true copy of the Completion Guaranty is attached hereto as **Exhibit P** and the terms and conditions of the Completion Guaranty are incorporated into this Complaint as if fully set forth herein at length.

89.    Simultaneous with the execution and delivery of the Senior Loan Documents, the Building Loan Documents, the Project Loan Documents, the CMA, the Recourse Guaranty, and the Completion Guaranty, 25 Broad executed and delivered to the Lender various additional documents in favor of Lender and to further induce the Lender to enter into the loan transactions set forth herein, including but not limited to: (i) an Environmental Indemnity Agreement from 25 Broad to the Lender, (ii) an Assignment of Contracts, Licenses and Permits from 25 Broad to the Lender, (iii) a Collateral Assignment of Interest Rate Cap Agreement from 25 Broad to the Lender, (iv) an Assignment and Assumption of Sales Agency Agreement (Mortgage Loan) from 25 Broad to the Lender and consented to by Swig Equities, LLC, as the agent, and (v) an Assignment of Management Agreement and Subordination of Management Fees among 25 Broad, the Lender and Swig Equities, LLC, as the manager (all of the foregoing are collectively hereinafter referred to as the "**Additional Agreements**").

90.     The Lender is the owner and holder of the Senior Loan Documents, the Building

Loan Documents, Project Loan Documents, the CMA, the Recourse Guaranty, the Completion

Guaranty and the Additional Agreements, and all other instruments and documents evidencing or

relating to the Senior Loan, the Building Loan and/or Project Loan (collectively referred to

herein as the "**Loan Documents**"), the terms of which are hereby incorporated into this

Complaint as if fully set forth herein.  The Senior Note, the Building Note and the Project Note

are collectively referred to herein as the "**Notes**."  The Senior Mortgage, the Building Mortgage

and the Project Mortgage are collectively referred to herein as the "**Mortgages**."  The Senior

Loan Agreement, the Building Loan Agreement and the Project Loan Agreement are collectively

referred to herein as the "**Loan Agreements**."  The Recourse Guaranty and the Completion

Guaranty are collectively referred to herein as the "**Guaranties**.

91.     As a result of the continuing Events of Default under the Loan Documents by 25

Broad and Swig and the failure by 25 Broad and Swig to timely cure such Events of Default, the

Lender has been damaged and is entitled to foreclose on the Mortgaged Premises and exercise all

of the Lender's rights and remedies under the Loan Documents.

### *The Terms Of The Loan Documents*

92.     Pursuant to the terms of the Notes and the Loan Agreements, 25 Broad agreed to

pay monthly installments of interest that accrued on the outstanding principal balance of the

Loans commencing April 9, 2007 and on the ninth day of each month thereafter until the

Maturity Date (as defined in the Loan Agreements) or upon an Event of Default, whichever

occurred sooner, at which time all principal and accrued interest would become due.

93.     Interest, moreover, was to accrue at a variable rate equal to the one month LIBOR

Rate (as such LIBOR Rate was displayed as page 3750 on the Dow Jones Telerate Service) plus

{40271323:2}                                                    26

3.95% (three hundred ninety five basis points) per annum, computed daily on the basis of a 360 day year on all unpaid amounts calculated for actual days elapsed based upon a 360 day year (the "**Regular Interest Rate**").

94.     All payments under the Loan Documents were due and payable without setoff, recoupment, reduction, counterclaim or any other diminution in payment.

95.     Pursuant to the Mortgages and the ALRs, 25 Broad absolutely and unconditionally assigned to Lender all of 25 Broad's right, title and interest in and to all current and future Leases and Rents (as defined in the Mortgages). The Mortgages and ALRs further provide that the Lender agreed to grant 25 Broad a revocable license to collect, receive, retain, use and enjoy the Rents terminable upon a default by 25 Broad under the Loan Documents.

96.     In addition, upon default the Mortgages grant to Lender the right to enter into or upon the Mortgaged Premises either personally or by its agents, nominees or attorneys to, among other things, complete construction on the Mortgaged Premises in such manner and form as Lender deems advisable. See e.g. Exhibit C at §7.1(h).

97.     25 Broad agreed and covenanted to the Lender that it would not commit or permit any waste of the Mortgaged Premises or do or permit to be done thereon anything that could reasonably be expected to, in any way, materially impair the value of the Mortgaged Premises or the security of the Mortgages.

98.     25 Broad further agreed to pay when due all bills and costs for labor, materials, and specifically fabricated materials incurred in connection with the Mortgaged Premises and not permit to exist any lien or security interest to be recorded against the Mortgaged Premises except for Permitted Encumbrances (as defined in the Loan Agreements).

99.     The Loan Documents provide that 25 Broad's failure to make payment of the amount of principal or interest due under the Loans, including payment due upon the Maturity Date, on or before the date when same becomes due is an Event of Default.

100.    Pursuant to the Loan Documents, 25 Broad also agreed to pay all Taxes and Other Charges (as such terms are defined in the Loan Agreements) levied, assessed or imposed against the Mortgaged Premises as same become due and that its failure to do so would constitute an Event of Default.

101.    The Loan Documents further provide, and 25 Broad agreed, that should an Event of Default occur, the rate of interest due under the Loans shall be increased to the default rate equal to the lesser of the maximum rate permitted by applicable law or five percent 5% above the Regular Interest Rate (the "**Default Rate**").

102.    The Loan Documents also provide that if any payment of principal or interest or any other sums due thereunder (other than the payment in full due on the Maturity Date) is not paid by 25 Broad, then 25 Broad would pay to Lender upon demand an amount equal to the lesser of five percent (5%) of such unpaid sum or the maximum amount permitted by applicable law in order to defray the expense incurred by Lender in handling and processing such delinquent payment and to compensate Lender for the loss of the use of such delinquent payment.  The Loan Documents further provide that all late charges shall be secured by the mortgage liens and other Loan Documents to the extent permitted by applicable law.  See Exhibit A at ¶2.2.6.

103.    The Mortgages further provide that upon the happening of an Event of Default, among other rights and remedies that the Lender may exercise any and all of the rights provided

in the Loan Agreements or other Loan Documents as it deems necessary, including but not limited to:

  (a)    Declaring the entire unpaid Debt (as defined in the Mortgages) to be immediately due and payable;

  (b)    Instituting proceedings, judicial or otherwise, for the complete foreclosure of its mortgage liens;

  (c)    Institute actions, suits or proceedings in equity for the specific performance of any covenant, condition or agreement contained in the Loan Documents;

  (d)    Apply for the appointment of a receiver, trustee, liquidator or conservator of the Mortgaged Premises without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of 25 Broad or Swig;

  (e)    Terminate any and all licenses granted to 25 Broad to collect upon the Rents derived from the Mortgaged Premises; and

  (f)    Exercise any and all rights afforded to a secured party under the Uniform Commercial Code.

104.    Pursuant to the Loan Documents, 25 Broad agreed to pay all of the Lender's reasonable out-of-pocket costs and expenses (including reasonable attorneys' fees and disbursements) incurred by the Lender in connection with, among other things, Lender's enforcing any obligations of or collecting any payments due from Borrower under the Loan Documents or with respect to the Mortgaged Premises. See e.g. Exhibit A at ¶10.13.

105.    The Loan Documents further provide that 25 Broad shall be in default if, inter alia, it fails to pay any installment of principal or interest when due or fails to pay real estate taxes assessed to the Mortgaged Premises. See e.g. Exhibit A at ¶8.1(a)(i) and (ii).

106.    Under the terms of the Loan Documents 25 Broad assigned and conveyed to Lender all rents, issues, and profits of the Mortgaged Premises as further security for the payments due under the Notes and Mortgages and in any action for foreclosure of the Mortgages

after default any and all licenses given by Lender to 25 Broad to collect the Rents shall terminate and the Lender shall be entitled to the appointment of a receiver.  <u>See e.g.</u> Exhibit C at §1.2 and §7.1(g) and (h).

107.    25 Broad further agreed that in the event of a foreclosure sale, the Mortgaged Premises may be sold in one parcel.  <u>See e.g.</u> Exhibit C at §7.1(b) and (d).

108.    The terms of the Loan Documents further provide, that 25 Broad and Swig waive the rights of presentment, demand for payment, notice of dishonor, notice of intention to accelerate, notice of acceleration, protest and notice of protest and non-payment and all other notices of any kind.  <u>See e.g.</u> Exhibit B at Article 7.

### *Borrower's Defaults Under the Loan Documents*

109.    25 Broad defaulted under the terms of the Loan Documents by, <u>inter alia</u>, failing to pay all interest and other charges due under the Notes on February 8, 2008, when same became due without defense, counterclaim, reduction, recoupment or offset of any nature whatsoever, and continuing thereafter unabated.

110.    25 Broad further defaulted under the terms of the Loan Documents by failing to all real estate taxes relating to the Mortgaged Premises when due.

111.    25 Broad's failure to repay all amounts due and owing under the Loans constitutes an Event of Default under the Loan Documents and its failure to pay real property taxes when due constitutes an Event of Default under the Loan Documents.

112.    25 Broad has also caused an Event of Default to occur under the Loan Documents by permitting the filing of numerous mechanic's liens against the Mortgaged Premises by the defendant Contractors.   Upon information and belief, the mechanic's liens filed by the

Contractors were filed due to 25 Broad's and Swig's failure to pay for the cost of certain labor, materials and work performed at the Mortgaged Premises.

113.    25 Broad has also defaulted under the terms of the Loan Documents by, <u>inter alia</u>, failing to complete the Construction Project in accordance with the requirements of the Loan Documents, failing to bond or remove all mechanics liens and failing to complete the Construction Project within the approved budget.

114.    By letter dated January 7, 2009, Lender provided written notice of the defaults to 25 Broad, demanding payment of the entire amount of indebtedness and notifying 25 Broad of the Lender's election to increase the interest rate to the Default Rate (the "**Default Letter**") and to exercise its rights and remedies under the Loan Documents including the commencement of this proceeding.  A true copy of the Default Letter is annexed hereto as **Exhibit Q** and the terms and conditions of the Default Letter are incorporated into this Complaint as if fully set forth herein at length.

115.    The Lender hereby confirms the termination of any and all licenses granted to 25 Broad to collect upon the Rents (if any) derived from the Mortgaged Premises.

## AS AND FOR A FIRST CAUSE OF ACTION

116.    Lender hereby repeats and realleges all of the preceding allegations set forth in paragraphs "1" through "115", inclusive, above, to the same extent as if fully set forth at length herein.

117.    25 Broad has defaulted under the terms of the Project Loan Documents and failed to make the required payments when due under the Loan Documents as promised and failed to pay real estate taxes when due.  Moreover, 25 Broad has failed to complete the Construction Project in accordance with the terms of the Loan Documents and has permitted numerous liens

and encumbrances to exist at and attach to the Mortgaged Premises. For these reasons and others, defendants 25 Broad and Swig are in default under the Project Loan Documents, giving Lender the right to foreclose on the Mortgaged Premises and sue for recovery of any sums due to it.

118.    The Lender has elected and hereby confirms its election to declare immediately due and owing the entire unpaid principal, interest, default interest, late fees, attorneys' fees and other charges due under the Project Loan Documents.

119.    25 Broad and Guarantor have each failed to remit the amounts referred to in the Lender's Default Letter, or any part thereof and have not disputed the Default Letter.

120.    As of January 14, 2009, the following amounts (exclusive of costs and fees, including, but not limited to, attorney's fees, exit fees, and breakage fees) are now due and owing to the Lender under the Project Loan Documents and third priority mortgage, no part of which has been paid although duly demanded:

1.    $26,478,678.00 representing the principal balance;

2.    Accrued Interest in the amount of $1,792,942.81;

3.    Default Interest in the amount of $1,302,713.42;

4.    Late Charges in the amount of $83,781.56

121.    In addition to the amounts listing in paragraph "120" above, Lender is entitled to any other charges, indebtedness and interest that may have accrued, or accruing following the Lender's Default Letters, plus any protective advance and the costs of this collection, including reasonable attorney's fees and disbursements, and the costs, disbursements and allowances to which the Lender is entitled under any and all statutes applicable to this action.

122.    Per diem interest continues to accrue on the Project Loan at the Default Rate.

123.    Upon information and belief, all of the Defendants' interests in the Mortgaged Premises, if any, are subject and subordinate to the lien of the Project Mortgage.

124.    No other action or proceeding has been commenced or maintained or is now pending at law or otherwise for the foreclosure of the Mortgages or for recovery of the indebtedness evidenced and secured by the Loan Documents, or any part thereof.

125.    The Lender requests that if this action proceeds to judgment of foreclosure and sale, the Mortgaged Premises be sold, subject to the following:

    a.    Any state of facts that an inspection of the Mortgaged Premises would disclose.

    b.    The state of facts that accurate survey of the Mortgaged Premises might disclose.

    c.    The liens, if any, of real estate taxes, and assessments, water, sewer, and vault charges, with interest and penalties, including lien and certificate sales for delinquent items, unless paid from the proceeds of the foreclosure sale.

    d.    Covenants, reservations, restrictions, easements, and public utility agreements of record, if any.

    e.    Building and zoning ordinances of the municipalities in which the Mortgaged Premises are located and possible violations of same.

    f.    All rights of tenants or persons in possession of the Mortgaged Premises other than tenants and occupants, if any, named as Defendants in this action.

    g.    Terms and conditions of any other documents of record.

    h.    Prior liens of record, if any.

126.    If Lender possesses any other liens against the Mortgaged Premises either by way of judgment, junior mortgage, or otherwise, Lender requests that it be permitted to elect prior to judgment that only such other liens shall not be merged in Lender's cause of action set forth in this Complaint, but that Lender shall be permitted to enforce said other liens and/or seek

determination of priority thereof in any independent actions or proceedings including, without limitation, any surplus money proceedings.

127.    Lender reserves the right: (1) to sue for judgment against 25 Broad for any exception to the exculpatory provisions contained in the Loan Agreements; (2) to sue for judgment against Swig on the Recourse Guaranty and Completion Guaranty for any deficiency or unpaid obligations of 25 Broad guaranteed by Swig; (3) to recover any misappropriated funds received from the Mortgaged Premises or for any acts of waste, conversion or malfeasance and (4) to make such protective advances as may be necessary for the protection and preservation of the Lender's collateral, and requests that such other rights and liens shall not be merged in Lender's cause of action set forth in this Complaint, but that Lender shall be permitted to enforce said other rights and liens in any independent actions or proceedings, or pursuant to any relevant provision of the UCC or applicable law.

128.    Lender shall not be deemed to have waived any default not specified herein, nor to have waived, altered, released, or changed any election hereinbefore made by reason of any payment made after default and acceleration of the loans by Lender, or by reason of any cure or remedy, or attempted cure or remedy, of any or all of the defaults or events of defaults named herein, and any such election shall continue and remain effective.

129.    To protect the security and the liens of the Mortgages and their priority and the rights of a purchaser at the foreclosure sale, it may be necessary for the Lender to pay taxes, assessments, common charges and assessments, liens, contractors to complete or continue construction activities at the Mortgaged Premises, water and sewer charges, plus interest and penalties thereon, that were or may become encumbrances, liens or other charges upon the Mortgaged Premises (including purchase and/or redemption of liens and certificates sold at tax

sales), taxes and other charges that must be paid as a prerequisite to recording the referee's deed in foreclosure, premiums of insurance policies and other charges, costs of inspection, service, repairs and maintenance incurred for protection of the security, and Lender hereby demands that all monies that heretofore have been and which may hereafter be, expended, shall be added to the amount evidenced and secured by the Project Mortgage with interest thereon from the time of such payment at the default rate, as set forth in the Project Mortgage and that the same be paid to the Lender from the proceeds of the foreclosure sale herein.

130.    No prior action has been commenced for the relief sought herein.

## AS AND FOR A SECOND CAUSE OF ACTION

131.    Lender hereby repeats and realleges all of the preceding allegations set forth in paragraphs "1" through "130", inclusive, above, to the same extent as if fully set forth at length herein.

132.    25 Broad has defaulted under the terms of the Building Loan Documents and failed to make the required payments when due under the Loan Documents as promised and failed to pay real estate taxes when due.   Moreover, 25 Broad has failed to complete the Construction Project in accordance with the terms of the Loan Documents and has permitted numerous liens and encumbrances to exist at and attach to the Mortgaged Premises.  For these reasons and others, defendants 25 Broad and Swig are in default under the Building Loan Documents, giving Lender the right to foreclose on the Mortgaged Premises and sue for recovery of any sums due to it.

133.    The Lender has elected and hereby confirms its election to declare immediately due and owing the entire unpaid principal, interest, default interest, late fees, attorneys fees and other charges due under the Building Loan Documents.

134.    25 Broad and Guarantor have each failed to remit the amounts referred to in the Lender's Default Letters, or any part thereof and have not disputed the contents of the Default Letters.

135.    As of January 14, 2009, the following amounts (exclusive of costs and fees, including, but not limited to, attorney's fees, exit fees, and breakage fees) are now due and owing to the Lender under the Building Loan Documents and second priority mortgage, no part of which has been paid although duly demanded:

1.    $15,482,967.35 representing the principal balance;

2.    Accrued Interest in the amount of $1,000,434.92;

3.    Default Interest in the amount of $749,651.03;

4.    Late Charges in the amount of $46,591.95

136.    In addition to the amounts listing in paragraph "135" above, Lender is entitled to any other charges, indebtedness and interest that may have accrued, or accruing following the Lender's Default Letters, plus any protective advance and the costs of this collection, including reasonable attorney's fees and disbursements, and the costs, disbursements and allowances to which the Lender is entitled under any and all statutes applicable to this action.

137.    Per diem interest continues to accrue on the Building Loan at the Default Rate.

138.    Upon information and belief, all of the Defendants' interests in the Mortgaged Premises, if any, are subject and subordinate to the lien of the Building Mortgage.

139.    No other action or proceeding has been commenced or maintained or is now pending at law or otherwise for the foreclosure of the Mortgages or for recovery of the indebtedness evidenced and secured by the Loan Documents, or any part thereof.

140.    The Lender requests that if this action proceeds to judgment of foreclosure and sale, the Mortgaged Premises be sold, subject to the following:

a.    Any state of facts that an inspection of the Mortgaged Premises would disclose.

b.    The state of facts that accurate survey of the Mortgaged Premises might disclose.

c.    The liens, if any, of real estate taxes, and assessments, water, sewer, and vault charges, with interest and penalties, including lien and certificate sales for delinquent items, unless paid from the proceeds of the foreclosure sale.

d.    Covenants, reservations, restrictions, easements, and public utility agreements of record, if any.

e.    Building and zoning ordinances of the municipalities in which the Mortgaged Premises are located and possible violations of same.

f.    All rights of tenants or persons in possession of the Mortgaged Premises other than tenants and occupants, if any, named as Defendants in this action.

g.    Terms and conditions of any other documents of record.

h.    Prior liens of record, if any.

141.    If Lender possesses any other liens against the Mortgaged Premises either by way of judgment, junior mortgage, or otherwise, Lender requests that it be permitted to elect prior to judgment that only such other liens shall not be merged in Lender's cause of action set forth in this Complaint, but that Lender shall be permitted to enforce said other liens and/or seek determination of priority thereof in any independent actions or proceedings including, without limitation, any surplus money proceedings.

142.    Lender reserves the right: (1) to sue for judgment against 25 Broad for any exception to the exculpatory provisions contained in the Loan Agreements; (2) to sue for judgment against Swig on the Recourse Guaranty and Completion Guaranty for any deficiency or unpaid Guaranteed Obligation of 25 Broad; (3) to recover any misappropriated funds received from the Mortgaged Premises or for any acts of waste, conversion or malfeasance and (4) to

make such protective advances as may be necessary for the protection and preservation of the Lender's collateral, and requests that such other rights and liens shall not be merged in Lender's cause of action set forth in this Complaint, but that Lender shall be permitted to enforce said other rights and liens in any independent actions or proceedings, or pursuant to any relevant provision of the UCC or applicable law.

143.   Lender shall not be deemed to have waived any default not specified herein, nor to have waived, altered, released, or changed any election hereinbefore made by reason of any payment made after default and acceleration of the loan by Lender, or by reason of any cure or remedy, or attempted cure or remedy, of any or all of the defaults or events of defaults named herein, and any such election shall continue and remain effective.

144.   To protect the security and the liens of the Mortgages and their priority and the rights of a purchaser at the foreclosure sale, it may be necessary for the Lender to pay taxes, assessments, common charges and assessments, liens, contractors to complete or continue construction activities at the Mortgaged Premises, water and sewer charges, plus interest and penalties thereon, that were or may become encumbrances, liens or other charges upon the Mortgaged Premises (including purchase and/or redemption of liens and certificates sold at tax sales), taxes and other charges that must be paid as a prerequisite to recording the referee's deed in foreclosure, premiums of insurance policies and other charges, costs of inspection, service, repairs and maintenance incurred for protection of the security, and Lender hereby demands that all monies that heretofore have been and which may hereafter be, expended, shall be added to the amount evidenced and secured by the Building Mortgage with interest thereon from the time of such payment at the default rate, as set forth in the Building Mortgage and that the same be paid to the Lender from the proceeds of the foreclosure sale herein.

145.    No prior action has been commenced for the relief sought herein.

## AS AND FOR A THIRD CAUSE OF ACTION

146.    Lender hereby repeats and realleges all of the preceding allegations set forth in paragraphs "1" through "145", inclusive, above, to the same extent as if fully set forth at length herein.

147.    25 Broad has defaulted under the terms of the Senior Loan Documents and failed to make the required payments when due under the Loan Documents as promised.  Moreover, 25 Broad has failed to complete the Construction Project in accordance with the terms of the Loan Documents and has permitted numerous liens and encumbrances to exist at and attach to the Mortgaged Premises.  For these reasons and others, defendants 25 Broad and Swig are in default under the Senior Loan Documents, giving Lender the right to foreclose on the Mortgaged Premises and sue for recovery of any sums due to it.

148.    The Lender has elected and hereby confirms its election to declare immediately due and owing the entire unpaid principal, interest, default interest, late fees, attorneys fees and other charges due under the Senior Loan Documents.

149.    25 Broad and Guarantor have each failed to remit the amounts referred to in the Lender's Default Letters, or any part thereof and have not disputed the contents of the Default Letters.

150.    As of December 29, 2008, the following amounts (exclusive of costs and fees, including, but not limited to, attorney's fees, exit fees, and breakage fees) are now due and owing to the Lender under the Senior Loan Documents and the first priority mortgage, no part of which has been paid although duly demanded:

    1.    $231,677,693.00 representing the principal balance;
    2.    Accrued Interest in the amount of $15,687,522.50;

3.    Default Interest in the amount of $11,398,214.08;

4.    Late Charges in the amount of $733,054.69

151.    In addition to the amounts listing in paragraph "150" above, Lender is entitled to any other charges, indebtedness and interest that may have accrued, or accruing following the Lender's Default Letters, plus any protective advance and the costs of this collection, including reasonable attorney's fees and disbursements, and the costs, disbursements and allowances to which the Lender is entitled under any and all statutes applicable to this action.

152.    Per diem interest continues to accrue on the Senior Loan at the Default Rate.

153.    Upon information and belief, all of the Defendants' interests in the Mortgaged Premises, if any, are subject and subordinate to the lien of the Senior Mortgage.

154.    No other action or proceeding has been commenced or maintained or is now pending at law or otherwise for the foreclosure of the Mortgages or for recovery of the indebtedness evidenced and secured by the Loan Documents, or any part thereof.

155.    The Lender requests that if this action proceeds to judgment of foreclosure and sale, the Mortgaged Premises be sold, subject to the following:

a.    Any state of facts that an inspection of the Mortgaged Premises would disclose.

b.    The state of facts that accurate survey of the Mortgaged Premises might disclose.

c.    The liens, if any, of real estate taxes, and assessments, water, sewer, and vault charges, with interest and penalties, including lien and certificate sales for delinquent items, unless paid from the proceeds of the foreclosure sale.

d.    Covenants, reservations, restrictions, easements, and public utility agreements of record, if any.

e.    Building and zoning ordinances of the municipalities in which the Mortgaged Premises are located and possible violations of same.

    f.       All rights of tenants or persons in possession of the Mortgaged Premises other than tenants and occupants, if any, named as Defendants in this action.

    g.      Terms and conditions of any other documents of record.

    h.      Prior liens of record, if any.

156.    If Lender possesses any other liens against the Mortgaged Premises either by way of judgment, junior mortgage, or otherwise, Lender requests that it be permitted to elect prior to judgment that only such other liens shall not be merged in Lender's cause of action set forth in this complaint, but that Lender shall be permitted to enforce said other liens and/or seek determination of priority thereof in any independent actions or proceedings including, without limitation, any surplus money proceedings.

157.    Lender reserves the right: (1) to sue for judgment against 25 Broad for any exception to the exculpatory provisions contained in the Loan Agreements; (2) to sue for judgment against Swig on the Recourse Guaranty and Completion Guaranty for any deficiency or unpaid Guaranteed Obligation of 25 Broad; (3) to recover any misappropriated funds received from the Mortgaged Premises or for any acts of waste, conversion or malfeasance and (4) to make such protective advances as may be necessary for the protection and preservation of the Lender's collateral, and requests that such other rights and liens shall not be merged in Lender's cause of action set forth in this Complaint, but that Lender shall be permitted to enforce said other rights and liens in any independent actions or proceedings, or pursuant to any relevant provision of the UCC or applicable law.

158.    Lender shall not be deemed to have waived any default not specified herein, nor to have waived, altered, released, or changed any election hereinbefore made by reason of any payment made after default and acceleration of the loan by Lender, or by reason of any cure or

remedy, or attempted cure or remedy, of any or all of the defaults or events of defaults named herein, and any such election shall continue and remain effective.

159.   To protect the security and the liens of the Mortgages and its priority and the rights of a purchaser at the foreclosure sale, it may be necessary for the Lender to pay taxes, assessments, common charges and assessments, liens, contractors to complete or continue construction activities at the Mortgaged Premises, water and sewer charges, plus interest and penalties thereon, that were or may become encumbrances, liens or other charges upon the Mortgaged Premises (including purchase and/or redemption of liens and certificates sold at tax sales), taxes and other charges that must be paid as a prerequisite to recording the referee's deed in foreclosure, premiums of insurance policies and other charges, costs of inspection, service, repairs and maintenance incurred for protection of the security, and Lender hereby demands that all monies that heretofore have been and which may hereafter be, expended, shall be added to the amount evidenced and secured by the Senior Mortgage with interest thereon from the time of such payment at the default rate, as set forth in the Senior Mortgage and that the same be paid to the Lender from the proceeds of the foreclosure sale herein.

160.   No prior action has been commenced for the relief sought herein.

## AS AND FOR A FOURTH CAUSE OF ACTION

161.   Lender hereby repeats and realleges all of the preceding allegations set forth in paragraphs "1" through "160", inclusive, above, to the same extent as if fully set forth at length herein.

162.   Pursuant to the Notes, Mortgages, Recourse Guaranty, Completion Guaranty and other Loan Documents, Swig should be adjudged liable to Lender for any deficiency that may be due Lender on account of the Loan Documents together with any and all sums to which Lender

may be entitled as set forth in the preceding paragraphs and after, (a) the Mortgaged Premises

has been sold as described above, and (b) the proceeds thereof to which Lender is entitled have

been paid to Lender.

163.    Swig has defaulted under said obligations by failing to cure any default by 25

Broad and failing to complete the Construction Project as promised.

164.    By reason of the foregoing, Lender has been damaged.

## AS AND FOR A FIFTH CAUSE OF ACTION

165.    Lender hereby repeats and realleges all of the preceding allegations set forth in

paragraphs "1" through "164", inclusive, above, to the same extent as if fully set forth at length

herein.

166.    Pursuant to the Notes, Mortgages, Recourse Guaranty, Completion Guaranty and

other Loan Documents, defendant 25 Broad agreed to pay, and Swig guaranteed payment of,

Lender's attorneys' fees, costs and disbursements in any action to foreclose said Mortgages and

agreed that same would constitute a lien against the said Mortgaged Premises.

167.    Swig has defaulted under said obligations by failing to cure any default by 25

Broad and failing to complete the Construction Project as promised.

168.    By reason of the foregoing, Lender has been damaged.

## AS AND FOR A SIXTH CAUSE OF ACTION

169.    Lender hereby repeats and realleges all of the preceding allegations set forth in

paragraphs "1" through "168", inclusive, above, to the same extent as if fully set forth at length

herein.

170.    Due to the aforementioned defaults and the failure by 25 Broad and Swig to cure

same, Lender has the contractual right to have a receiver, special agent or fiduciary appointed to

assure adequate security, preservation, management, construction, completion and operation of this facility pending its ultimate sale as a result of this foreclosure action or to simply take possession thereof and employ all remedies under the Loan Documents to complete the work which 25 Broad and Swig were unable or unwilling to finish as assignee of 25 Broad, the Contractors or their respective agent's rights under all existing contracts.

171.    Section 7.1(g) of each Mortgage entitles Lender to the appointment of a receiver or similar fiduciary upon the occurrence of an Event of Default without regard to the solvency of 25 Broad or value of the collateral.  Lender may also gain possession in and to the Mortgaged Premises without necessity of a Court Order.  These rights are cumulative and not exclusive.

172.    As described above, numerous Events of Default have occurred including but not limited to the failure of 25 Broad and Swig to make payment of all sums when due to the Lender and the failure by 25 Broad and Swig to satisfy liens and judgments against the Mortgaged Premises.

173.    By reason of the foregoing Events of Default identified herein and the malfeasance of 25 Broad and Swig, a receiver is both necessary and proper in addition to the other rights, remedies and the other action which may be undertaken by the Lender pursuant to 25 Broad's assignment of construction contracts to the Lender and appointment of the Lender to act as its attorney in fact.

### AS AND FOR A SEVENTH CAUSE OF ACTION

174.    Lender hereby repeats and realleges all of the preceding allegations set forth in paragraphs "1" through "173", inclusive, above, to the same extent as if fully set forth at length herein.

175.    Upon information and belief, Swig and 25 Broad enjoy a mutual relationship of trust and confidence with each other and represented to the Lender that they would be working in concert to complete the Construction Project in accordance with the plans, specifications and terms and conditions contained in the Loan Documents.

176.    Any contract, agreement or arrangement between and among Swig (either directly or through entities owned and controlled by Swig) and 25 Broad is subordinate, subject, and inferior to the Mortgages.

177.    25 Broad and Swig negligently, wantonly, or intentionally failed to perform agreed upon work to complete the Construction Project and discharge their duties in connection therewith, including those owed to the Lender.

178.    25 Broad and Swig also permitted numerous mechanic's liens to be filed against the Mortgaged Premises in violation of the Loan Documents in the aggregate amount in excess of **$7,725,187.88**, which sum remains unpaid, unbonded and act as a lien against the Lender's collateral (see **Schedule B**).

179.    By reason of the foregoing, Lender has been damaged.

### AS AND FOR A EIGHTH CAUSE OF ACTION

180.    Lender hereby repeats and realleges all of the preceding allegations set forth in paragraphs "1" through "179", inclusive, above, to the same extent as if fully set forth at length herein.

181.    25 Broad and Swig have jointly and severally damaged the Lender's collateral and engaged in numerous acts of waste and malfeasance causing the diminution thereof and are therefore liable for money damages for their acts and omissions which have harmed the security of the Lender's Mortgages.

182. Upon information and belief, 25 Broad and Swig benefited from the Loans and used proceeds therefrom in a manner inconsistent with and in violation of the Loan Documents.

183. As a result thereof, 25 Broad and Swig are liable to Plaintiff for the monies disbursed under the Loan Documents, interest thereon, and for payment of all funds diverted by each of them and for any waste committed by any of them for work stoppage, unnecessary expenses, physical damage, neglect or otherwise.

**WHEREFORE**, the Lender demands judgment against defendants as follows:

a. That the defendants, and each of them, and all persons claiming under defendants, or any of them, subsequent to the commencement of this action and the filing of a notice of pendency thereof, be barred and foreclosed of and from all estate, right, title, interest, claim, lien and equity of redemption of, in and to the Mortgaged Premises and each and every part and parcel thereof;

b. That the Mortgaged Premises may be decreed to be sold according to law, subject to the matters set forth in this Complaint;

c. That 25 Broad's personal property at the Mortgaged Premises, if any, may be sold as separate units if such separate sale brings a higher price and that separate units at the Mortgaged Premises may be sold as units for the same reason;

d. That the monies arising from the sale thereof be brought into this Court;

e. That Lender be paid from the proceeds of such sale the amounts due on the Loan Documents as hereinbefore set forth, with default interest at the rate set forth in the Notes to the date of such payment, together with the costs, allowances and disbursements of this action, the expenses of sale, Lender's attorneys' fees, other charges as provided for in the Loan Documents, and any sums incurred, or to be incurred by Lender pursuant to any term or provision of the Loan Documents or to protect the security or lien of the Mortgages or their priority (including purchase and/or redemption of liens and certificates sold at tax sales) or to comply with the requirements for recording the referee's deed in foreclosure, with interest at the rate or default rate, as the case may be, set forth in the Loan Documents upon said sums from the dates of the respective payments and advances thereof, so far as the amount of such monies properly applicable thereto will pay the same;

f. That the Court decree a consolidation of the Project Mortgage with the Building Mortgage lien and the Senior Mortgage Lien so that the Mortgaged Premises may be sold in one sale to satisfy both the amounts due and owing under the Project

Loan Documents as well as the amounts due and owing under the Building Loan Documents and the Senior Loan Documents or, alternatively, that the Court order that the Lender may proceed with the foreclosure sale of the Project Mortgage before the Building Mortgage and Senior Mortgage and then immediately thereafter proceed with a sale of the Building Mortgage before the Senior Mortgage and then immediately thereafter proceed with a sale of the Senior Mortgage;

g.    That in the event that Lender possesses any other liens against said Mortgaged Premises either by way of judgment, junior mortgage, protective advance, or otherwise, such other liens shall not be merged in Lender's causes of action set forth in the Complaint, but that Lender shall be permitted to enforce said other liens and/or seek determination of priority thereof in any independent action or proceeding including, without limitation, any surplus money proceedings;

h.    That Lender's other liens that further secure the indebtedness evidenced by the Loan Documents shall not be merged in Lender's cause of action set forth in this Complaint, but that Lender shall be permitted to enforce said other liens in any independent actions or proceedings, or pursuant to the provisions of the UCC should it elect to do so;

i.    That defendants 25 Broad and Swig be adjudged liable to jointly and severally pay the whole residue and deficiency, if any, of the debt due under the Loan Documents (including any protective advances or payments made by Lender) remaining unsatisfied after foreclosure sale of the Mortgaged Premises and the application of the proceeds pursuant to the directions contained in such judgment;

j.    That a receiver or other agent be appointed to receive and collect the rents and profits of the Mortgaged Premises and take such action as is necessary to preserve the collateral during the pendency of this action with the usual powers or that Lender have possession thereof;

k.    That the entry of judgment in this action be filed in the New York County Clerk's Office by certified copy;

l.    That advertisement of the Notice of Sale be made in New York County;

m.    That the purchaser or purchasers at said sale be let into possession on production or delivery of referee's deed or deeds;

n.    That if it is adjudged that 25 Broad and Swig damaged the Lender's collateral causing the diminution in value thereof, that 25 Broad and Swig pay to the Lender damages in an amount to be determined;

{40271323:2}

47

o.     Declaring that the mechanic's liens filed against the Mortgaged Premises are junior and subordinate to the Lender's Mortgage liens and that nothing is due or owed from the sale proceeds because no lien fund exists;

p.     That defendants 25 Broad and Swig be ordered to account, and be adjudged liable for, all rent, issues or profits received after the Default Letter of January 7, 2009 at the Default Rate of interest;

q.     Declaring that the Lender may act as the assignee of 25 Broad and attorney in fact to enforce all rights and remedies pursuant to the construction contracts executed by and between 25 Broad and its contractors and subcontractors including the Contractors;

r.     Declaring that the Lender may take possession of the Mortgaged Premises and act as attorney in fact for 25 Broad, adding the costs of completion and improvements to the amount due under the Loan Documents together with interest accruing thereon at the Default Rate;

s.     Declaring that the Lender may specifically enforce each and every contract, right and agreement assigned to it by the defendants;

t.     Declaring that the Lender is the third party beneficiary of all contracts, agreements, and arrangements by and between 25 Broad and third party vendors;

u.     That defendants 25 Broad and Swig be adjudged liable to jointly and severally pay the all damages incurred by the Lender as a result of 25 Broad and Swig's default of their obligations guaranteed by Swig pursuant to the Recourse Guaranty and the Completion Guaranty;

v.     That the Lender may have such other and further relief as may be just and equitable.

WINDELS MARX LANE & MITTENDORF, LLP

Dated:  New York, New York
         January 21, 2009

By: _____
    Mark A. Slama
    A Member of the Firm
    156 West 56th Street
    New York, New York 10019
    (212) 237-1000

    Attorneys for Plaintiff
    Lehman Brothers Holdings Inc.

## VERIFICATION

STATE OF NEW YORK      )

                           : ss.:

COUNTY OF NEW YORK   )

    _Jeffery Fitts_    , being duly sworn, deposes and says that s/he is the _Authorized Signatory_ of Lehman Brothers Holdings Inc., the plaintiff herein, that s/he has read the foregoing Verified Complaint and knows the contents thereof, that the same is true to her/his knowledge, except as to those matters alleged upon information and belief therein, and as to those matters s/he believes them to be true.

Name: _Jeffrey Fitts_

Sworn to before me this
21st day of January 2009

_Deanna Emilio_
Notary Public

DEANNA EMILIO
Notary Public, State of New York
No. 01EM6171082
Qualified in Richmond County
Term Expires July 23, 2011

{40271323;2}

## SCHEDULE 1

### (Prior Mortgages Consolidated into the Senior Mortgage)

A.    Mortgage in the original principal amount of $7,000,000 made by 25 Broad Street Realty Corp. to Home Savings Bank, FSB dated 5/30/96 and recorded 6/19/96 in Reel 2335, Page 1879.

Mortgage Tax Paid: $192,500

1.    Said mortgage A was assigned by Home Savings Bank, FSB to The Union Labor Life Insurance Company by Assignment of Mortgage dated 8/14/96 and recorded 8/20/96 in Reel 2358 Page 1548.

B.    Mortgage in the original principal amount of $3,865,400 made by Broad Street LLC to The Union Labor Life Insurance Company dated 8/14/96 and recorded 8/20/96 in Reel 2358 Page 1555.

Mortgage Tax Paid: $106,298.50

1.    Said mortgages A and B were consolidated to form a single lien of $10,865,400 by Project Loan Mortgage Consolidation, Extension, Security Agreement and Financing Statement made by and between Broad Street LLC and The Union Labor Life Insurance Company dated 8/14/96 and recorded 8/20/96 in Reel 2358 Page 1563.

2.    Said mortgages A and B, as consolidated, were assigned by The Union Labor Life Insurance Company to Credit Suisse First Boston Mortgage Capital LLC by Assignment of Mortgage dated 12/23/97 and recorded 6/19/98 in Reel 2594 Page 1455.

C.    Building Loan Mortgage, Security Agreement and Financing Statement in the original principal amount of $42,134,600 made by Broad Street LLC to The Union Labor Life Insurance Company dated 8/14/96 and recorded 8/20/96 in Reel 2358 Page 1510.

1.    Said mortgage C was assigned by The Union Labor Life Insurance Company to Credit Suisse First Boston Mortgage Capital LLC by Assignment of Mortgage dated 12/23/97 and recorded 6/19/98 in Reel 2594 Page 1462.

D.    Replacement Mortgage (A) in the original principal amount of $6,000,000 made by 21 West LLC to Chase Federal Bank, FSB dated 7/12/96 and recorded 9/6/96 in Reel 2366 Page 47.

Mortgage Tax Paid: $ None

1.    Said mortgage D was assigned by Nationsbank, NA (South), successor by merger to Chase Federal Bank, FSB to 21 West Mortgage Investment, Inc, (formerly

Crescent Heights of Connecticut) by Assignment of Mortgage dated 5/29/97 and recorded 7/15/97 in Reel 2475 Page 2346.

2.    Spreader Agreement made by 21 West LLC and Broad Street LLC to 21 West Mortgage Investment, Inc. dated 5/20/97 and recorded 7/24/97 in Reel 2479 Page 352.

[Note: Spreads the lien of Mortgage D to include premises described in Schedule A.]

3.    Release Part of Mortgage made by 21 West Mortgage Investment, Inc. to 21 West LLC and Broad Street LLC dated 5/20/97 and recorded 7/24/97 in Reel 2479 Page 360.

[Note: Releases Block 15 Lot 22 from the lien of Mortgage D.]

4.    Said mortgage D was assigned by 21 West Mortgage Investment, Inc., (successor by merger to Crescent Heights of Connecticut Corp.) to Credit Suisse First Boston Mortgage Capital LLC by Assignment of Mortgage dated 12/23/97 and recorded 6/19/98 in Reel 2594 Page 1445.

E.    Replacement Mortgage (B) in the original principal amount of $9,000,000 made by 21 West LLC to Chase Federal Bank, FSB dated 7/12/96 and recorded 9/6/96 in Reel 2366 Page 82.

Mortgage Tax Paid: $ None

1.    Said mortgage E was assigned by Chase Federal Bank, FSB to Crescent Heights of Connecticut Corp. by Assignment of Mortgage dated 7/11/96 and recorded 9/6/96 in Reel 2366 Page 81.

2.    Spreader Agreement made between 21 West LLC and Broad Street LLC to 21 West Mortgage Investment, Inc. dated 5/20/97 and recorded 7/24/97 in Reel 2479 Page 366.

[Note: Spread the lien of Mortgage E to include premises described in Schedule A.]

3.    Release of Mortgage made by 21 West Mortgage Investment, Inc. (successor by merger to Crescent Heights of Connecticut Corp.) to 21 West LLC and Broad Street LLC, dated 5/20/97 and recorded 7/24/97 in Reel 2475 Page 2354.

[Note: Release Block 15 Lot 22 from the lien of Mortgage E.]

4.    Said mortgage E was assigned by 21 West Mortgage Investment, Inc. (successor by merger to Crescent Heights of Connecticut Corp.) to Credit Suisse First Boston Mortgage Capital LLC by Assignment of Mortgage dated 12/23/97 and recorded 6/19/98 in Reel 2594 Page 1450.

F.    Mortgage in the original principal amount of $7,000,000 made by Broad Street LLC to Credit Suisse First Boston Mortgage Capital LLC dated 12/23/97 and recorded 6/19/98 in Reel 2594 Page 1469.

Mortgage Tax Paid: $192,500

1.    Said mortgages A, B, C, D, E and F were consolidated to form a single lien of $75,000,000 by Agreement of Spreader, Consolidation and Modification of Mortgage, Assignment of Leases and Rents and Security Agreement made by and between Broad Street LLC and Credit Suisse First Boston Mortgage Capital LLC dated 12/23/97 and recorded 6/19/98 in Reel 2594 Page 1478.

2.    Said mortgages A, B, C, D, E, and F, as consolidated, were modified by Mortgage Modification Agreement made between Broad Street LLC and Credit Suisse First Boston Mortgage Capital LLC dated 10/11/99 and recorded 7/9/03 in Reel 3043 Page 2354.

3.    Said mortgages A, B, C, D, E and F, as consolidated, was assigned by Credit Suisse First Boston Mortgage Capital, LLC to The Chase Manhattan Bank, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp, Commercial Mortgage Pass-Through Certificates, Series 1999-C1 by Assignment of Mortgage dated 11/21/03 and recorded 2/27/04 as CRFN 2004000119006.

4.    Said mortgages A, B, C, D, E and F, as consolidated, were assigned by JPMorgan Chase Bank National Association (f/k/a The Chase Manhattan Bank, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp, Commercial Mortgage Pass-Through Certificates, Series 1999-Cl) to Lehman Brothers Holdings Inc. dated 8/15/05 and recorded 9/30/05 as CRFN 2005000549563.

G.    Mortgage in the original principal amount of $161,627,157.82 made by 25 Broad, LLC to Lehman Brothers Holdings Inc. dated 8/23/05 and recorded 9/30/05 as CRFN 2005000549564.

Mortgage Tax Paid: $4,525,561.60

1.    Said mortgages A through G were consolidated to form a single lien of $231,677,693 by a Consolidation and Extension Agreement made between 25 Broad, LLC and Lehman Brothers Holdings Inc. dated 8/23/05 and recorded 9/30/05 as CRFN 2005000549566.

2.    Said mortgages A through G, as consolidated, were amended and restated by an Amended and Restated Mortgage (Senior Loan) Agreement made between 25 Broad, LLC and Lehman Brothers Holdings Inc., dated 8/23/05 and recorded 9/30/05 as CRFN 2005000549565.

Assignment of Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement (Senior Loan) by Lehman Brothers Holdings Inc. to LaSalle Bank National Association, as Trustee for the Lehman Brothers Floating Rate Commercial Mortgage Trust 2006-CCL C2, Commercial Mortgage Pass-Through Certificates, Series 2006.CCL C2 ("LaSalle"), dated 3/9/07, and recorded 3/20/07 as CRFN 2007000147265.

Assignment of Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement (Senior Loan) by LaSalle to Lehman Brothers Holdings Inc., dated 3/9/07, and recorded 3/20/07 as CRFN 2007000147271.

## SCHEDULE A

### (Legal Description of Property)

### (25 BROAD STREET, NEW YORK, NEW YORK, BLOCK: 25, LOT: 19)

ALL that certain plot, piece or parcel of land situate lying and being in the Borough of New York, County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a corner formed by the intersection of the southerly side of Exchange Place with the easterly side of Broad Street;

THENCE easterly and along the southerly side of Exchange Place, 236 feet 3 inches;

THENCE southerly and along the line making an angle of 90 degrees 3 minutes 30 seconds with the southerly side of Exchange Place, said angle being turned from the west toward the south, 102 feet 4 inches;

THENCE westerly parallel with Exchange Place, 73 feet 6 inches;

THENCE southerly and along a line making an angle of 54 degrees 7 minutes 30 seconds with the last mentioned course, said angle being turned from the east toward the south, 115 feet 4-5/8 inches;

THENCE westerly and along a line making an angle of 88 degrees 29 minutes with the last mentioned course, said angle being turned from the north toward the west, 48 feet 2-1/2 inches;

THENCE northerly and along a line making an angle of 89 degrees 38 minutes 45 seconds with the last mentioned course, said angle being turned from the east toward the north, 108 feet 3-3/4 inches;

THENCE northerly and along a line making an angle of 169 degrees 41 minutes 45 seconds with the last mentioned course, said angle being turned from the south toward the east, 30 feet 3-3/4 inches;

THENCE westerly and along a line making an angle of 90 degrees 10 minutes 30 seconds with the last mentioned course, said angle being turned from the south toward the west, 6 feet 7-1/2 inches;

THENCE northerly and along a line making an angle of 75 degrees 12 minutes with the last mentioned course, said angle being turned from the east toward the north, 29 feet 6-1/4 inches;

THENCE westerly and along a line making an angle of 83 degrees 16 minutes 30 seconds with the last mentioned course, said angle being turned from south toward the west, 102 feet 9-1/2 inches to the easterly side of Broad Street;

THENCE northerly along said easterly side of Broad Street, 106 feet 8 inches to the point or place of BEGINNING.

Together with an easement in perpetuity, appurtenant to said premises in and through the alleyway, 10 feet wide and 10 feet high, leading from Beaver Street through the adjacent premises No. 51 Beaver Street, and in and through the open space in the rear thereof, as a means

of ingress and egress to and from the building on the premises hereinabove described, said alleyway to be forever left open to the height of 10 feet, each easement being for the benefit of the entire premises above described and the building and improvements thereon erected, and any building which may hereafter be erected thereon, as such easement is set forth and described in an Easement Agreement by and between The Board Exchange Company and The *Prudential* Insurance Company of America, dated August 15, 1940, and recorded in the New York County Register's Office on August 15, 1940, in Liber 4072 of Conveyances at Page 411, together with the benefits of all other covenants and agreements mentioned and provided in the said agreements and subject to the limitations contained therein.

**For information only:** Said premises are known as 25-33 Broad Street a/k/a 44-60 Exchange Place, New York, New York, and designated as Section 1 Block 25 Lot 19 as shown on the Tax Map of the City of New York, County of New York.

## SCHEDULE B

| Lien Claimant | Date Filed | Amount |
|---|---|---|
| Marjam Supply Co., Inc. | 8/25/2008 | $50,064.77 |
| Sterling Group | 8/26/2008 | $63,928.40 |
| Alpha Interiors Inc. | 8/29/2008 | $56,896.80 |
| Sterling Group | 9/17/2008 | $4,667.60 |
| Sterling Group | 9/17/2008 | $4,667.60 |
| Nova Development Group, Inc. | 9/19/2008 | $764,100.00 |
| Hoffman Architects, Inc. | 9/23/2008 | $7,032.02 |
| Pinnacle Contractors of NY, Inc. | 10/16/2008 | $772,776.22 |
| Pinnacle Contractors of NY, Inc. | 10/16/2008 | $368,987.17 |
| Shehadi Commercial Carpet & Flooring | 10/23/2008 | $40,600.00 |
| Shehadi Commercial Carpet & Flooring | 10/23/2008 | $143,946.54 |
| Profile Builders Inc. | 10/28/2008 | $102,270.00 |
| European Contracting Group LLC | 10/28/2008 | $468,273.86 |
| Seasons Industrial Contracting Corp. | 10/28/2008 | $1,489,990.50 |
| Scout Mechanical, LLC | 10/31/2008 | $111,196.22 |
| L & E Tile Inc. | 10/31/2008 | $97,980.00 |
| Olympia Plumbing & Heating Corp. | 11/5/2008 | $487,877.88 |
| Site Safety LLC | 11/5/2008 | $26,875.00 |
| Environmental Consulting & Management Services, Inc. | 11/5/2008 | $92,188.00 |
| P.C. Richard & Son Long Island Corp. | 11/6/2008 | $323,325.97 |
| Commercial Flooring Specialist, Ltd. a/k/a Commercial Flooring Specialists, Ltd. | 11/6/2008 | $55,757.90 |
| JD Scaffold Inc. | 11/7/2008 | $426,550.46 |
| Infinity Painting Co. Inc. | 11/10/2008 | $13,457.00 |
| Silk Air Corporation | 11/12/2008 | $10,056.75 |
| JD Scaffold Inc. | 11/17/2008 | $426,550.46 |
| Almar Sheetmetal Inc. | 11/10/2008 | $14,140.00 |
| Amendola Marble & Stone Center, Inc. | 11/25/2008 | $1,117,591.76 |
| Tradesource Inc. | 11/25/2008 | $7,589.00 |
| Mele Contracting Management Inc. | 12/1/2008 | $112,000.00 |
| Fine Construction Specialties LLC | 12/8/2008 | $63,850.00 |

**Total as of January 14, 2009:**          **$7,725,187.88**   Total