terms and conditions of the Second Amendment are incorporated into this Complaint as if fully set forth herein at length The First Loan Documents, Second Loan Documents and Second Amended Loan Agreement are collectively referred to herein as the "**Loan Documents**".

*The Terms of the Loan Documents*

38.    Pursuant to the terms of the Loan Documents and, specifically the Second Amended Loan Agreement, 45 Broad agreed that on each monthly Payment Date (as defined in the Loan Agreement), the Debt Service Payment Amount (as defined in the Loan Agreement) then due shall be added to the outstanding principal balance of the Loans and itself bear interest at the Regular Interest Rate (as defined in the Loan Agreement) until the Maturity Date of the Loans and that the foregoing would constitute "Accrued Interest" under the Loans.

39.    Pursuant to the Second Amended Loan Agreement, 45 Broad agreed to pay to Lender on the Maturity Date the then outstanding principal balance of the Loan together with all accrued and unpaid interest, including but not limited to the Accrued Interest, plus all other amounts due under the Loan Documents.

40.    Interest, moreover, was to accrue at a variable rate equal to the one month LIBOR Rate (as such LIBOR Rate was displayed as page 3750 on the Dow Jones Telerate Service) plus 4.50% (four and one-half percent) per annum, computed daily on the basis of a 360 day year on all unpaid amounts calculated for actual days elapsed based upon a 360 day year (the "**Regular Interest Rate**").

41.    All payments under the Loan Documents were due and payable without setoff, recoupment, reduction, counterclaim or any other diminution in payment.

42.    Pursuant to the First Mortgage and the Second Mortgage (collectively, the "**Mortgages**"), 45 Broad absolutely and unconditionally assigned to Lender all of 45 Broad's

{40272116:2}

right, title and interest in and to all current and future Leases and Rents (as defined in the Mortgages). The Mortgages further provide that the Lender agreed to grant 45 Broad a revocable license to collect, receive, retain, use and enjoy the Rents terminable upon demand by the Lender.

43.    In addition, upon default the Mortgages grant to Lender the right to enter into or upon the Mortgaged Premises either personally or by its agents, nominees or attorneys to, among other things, complete construction on the Mortgaged Premises in such manner and form as Lender deems advisable. See Exhibit C at §7.1(h).

44.    45 Broad agreed and covenanted to the Lender that it would maintain the Mortgaged Premises in the condition that existed at the time the First Loan was made and that it would not commit or permit any waste of the Mortgaged Property or do or permit to be done thereon anything that could reasonably be expected to, in any way, materially impair the value of the Mortgaged Premises or the security of the Mortgages.

45.    45 Broad further agreed to pay when due all bills and costs for labor, materials, and specifically fabricated materials incurred in connection with the Mortgaged Premises and not permit to exist any lien or security interest to be recorded against the Mortgaged Premises except for Permitted Encumbrances (as defined in the Loan Agreement).

46.    The Loan Documents provide that 45 Broad's failure to make payment of the amount of principal or interest due under the Loans, including payment due upon the Maturity Date, on or before the date when same becomes due is an Event of Default.

47.    Pursuant to the Loan Documents, 45 Broad also agreed to pay all Taxes and Other Charges (as such terms are defined in the Loan Agreement) levied, assessed or imposed against

{40272116:2}

the Mortgaged Premises as same become due and that its failure to do so would constitute an Event of Default.

48.    The Loan Documents further provide, and 45 Broad agreed, that should an Event of Default occur, the rate of interest due under the Loans shall be increased to the default rate equal to the lesser of the maximum rate permitted by applicable law or five percent 5% above the Regular Interest Rate (the "**Default Rate**").

49.    The Loan Documents also provide that if any payment of principal or interest or any other sums due thereunder  (other than the payment in full due on the Maturity Date) is not paid by 45 Broad, then 45 Broad would pay to Lender upon demand an amount equal to the lesser of five percent (5%) of such unpaid sum or the maximum amount permitted by applicable law in order to defray the expense incurred by Lender in handling and processing such delinquent payment and to compensate Lender for the loss of the use of such delinquent payment.  The Loan Documents further provide that all late charges shall be secured by the mortgage liens and other Loan Documents to the extent permitted by applicable law.  See Exhibit A at ¶2.3.6.

50.    The Mortgages further provide that upon the happening of an Event of Default, among other rights and remedies that the Lender may exercise any and all of the rights provided in the Loan Agreement or other Loan Documents as it deems necessary, including but not limited to:

> (a)    Declaring the entire unpaid Debt (as defined in the Mortgages) to be immediately due and payable;

> (b)    Instituting proceedings, judicial or otherwise, for the complete foreclosure of its mortgage liens;

13

{40272116:2}

(c)    Institute actions, suits or proceedings in equity for the specific performance of any covenant, condition or agreement contained in the Loan Documents;

(d)    Apply for the appointment of a receiver, trustee, liquidator or conservator of the Mortgaged Premises without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of 45 Broad or Swig;

(e)    Terminate any and all licenses granted to 45 Broad to collect upon the Rents derived from the Mortgaged Premises; and

(f)    Exercise any and all rights afforded to a secured party under the Uniform Commercial Code.

51.    Pursuant to the Loan Documents, 45 Broad agreed to pay all of the Lender's reasonable out-of-pocket costs and expenses (including reasonable attorneys' fees and disbursements) incurred by the Lender in connection with, among other things, Lender's enforcing any obligations of or collecting any payments due from Borrower under the Loan Documents or with respect to the Mortgaged Premises. See e.g., Exhibit A at ¶10.13.

52.    The Loan Documents further provide that 45 Broad shall be in default if, inter alia, it fails to pay any installment of principal or interest when due or fails to pay real estate taxes assessed to the Mortgaged Premises. See Exhibit A at §8.1(a) (i) and (ii).

53.    Under the terms of the Loan Documents 45 Broad assigned and conveyed to Lender all rents, issues, and profits of the Mortgaged Premises as further security for the payments due under the Notes and Mortgages and in any action for foreclosure of the Mortgages after default any and all licenses given by Lender to 45 Broad to collect the Rents shall terminate and the Lender shall be entitled to the appointment of a receiver. See Exhibit C at §1.2 and §7.1(g), (h).

54.    45 Broad further agreed that in the event of a foreclosure sale, the Mortgaged Premises may be sold in one parcel. See Exhibit C at §7.1(b) and (d).

{40272116:2}

55.    The terms of the Loan Documents further provide, that 45 Broad and Swig waive the rights of presentment, demand for payment, notice of dishonor, notice of intention to accelerate, notice of acceleration, protest and notice of protest and non-payment and all other notices of any kind. See Exhibit B at Article 7.

***Borrower's Defaults Under the Loan Documents***

56.    45 Broad has defaulted under the terms of the Loan Documents by, inter alia, failing to pay all unpaid principal and interest on the Notes on the stated maturity date of February 28, 2008, when same became due without defense, counterclaim, reduction, recoupment or offset of any nature whatsoever, and continuing thereafter unabated.

57.    45 Broad's failure to repay all amounts due and owing under the Loans and its failure to pay real property taxes when due constitutes an Event of Default under the Loan Documents.

58.    45 Broad has also caused an Event of Default to occur under the Loan Documents by permitting the filing of a mechanic's lien against the Mortgaged Premises by defendant Gilsanz.  Upon information and belief, the mechanic's lien was filed due to 45 Broad's and Swig's failure to pay for the cost of certain labor, materials and worked performed at the Mortgaged Premises.

59.    By letters dated April 23, 2008, September 12, 2008 and January 7, 2009, Lender provided written notice of the defaults to 45 Broad, demanding payment of the entire amount of indebtedness and notifying 45 Broad of the Lender's election to increase the interest rate to the Default Rate (the "**Default Letters**") and to exercise its rights and remedies under the Loan Documents including the commencement of this proceeding.  True copies of the Default Letters

{40272116:2}

are annexed hereto as **Exhibit L** and the terms and conditions of the Default Letters are incorporated into this Complaint as if fully set forth herein at length.

60.     The Lender hereby confirms the termination of any and all licenses granted to 45 Broad to collect upon the Rents (if any) derived from the Mortgaged Premises.

## AS AND FOR A FIRST CAUSE OF ACTION

61.     Lender hereby repeats and realleges all of the preceding allegations set forth in paragraphs "1" through "60", inclusive, above, to the same extent as if fully set forth at length herein.

62.     45 Broad has defaulted under the terms of the Second Loan Documents and failed to repay the indebtedness when due upon maturity as promised and failed to pay real estate taxes when due. Moreover, 45 Broad has permitted at least one lien and encumbrance to exist at and attach to the Mortgaged Premises. For these reasons and others, defendants 45 Broad and Swig are in default under the Second Loan Documents, giving Lender the right to foreclose on the Mortgaged Premises and sue for recovery of any sums due to it.

63.     The Lender has elected and hereby confirms its election to declare immediately due and owing the entire unpaid principal, interest, default interest, late fees, attorneys' fees and other charges due under the Second Loan Documents.

64.     45 Broad and Guarantor have each failed to remit the amounts referred to in the Lender's Default Letters, or any part thereof and have not disputed the Default Letters.

65.     As of December 29, 2008, the following amounts (exclusive of costs and fees, including attorney's fees) are now due and owing to the Lender under the Second Loan Documents, no part of which has been paid although duly demanded:

1.     $11,467,283.00 representing the principal balance;

{40272116:2}

2.    Capitalized interest in the amount of $1,878,626.45;

3.    Uncapitalized Interest from 12/1/08-12/29/08 in the amount of $61,226.21;

4.    Default interest from 2/29/08-12/29/08 in the amount of $564,585.94

66.    In addition to the amounts listing in paragraph "65" above, Lender is entitled to any other charges, indebtedness and interest that may have accrued, or accruing following the Lender's Default Letters, plus any protective advance and the costs of this collection, including reasonable attorney's fees and disbursements, and the costs, disbursements and allowances to which the Lender is entitled under any and all statutes applicable to this action.

67.    Per diem interest continues to accrue on the Second Loan at the Default Rate.

68.    Upon information and belief, all of the Defendants' interests in the Mortgaged Premises, if any, are subject and subordinate to the lien of the Second Mortgage.

69.    No other action or proceeding has been commenced or maintained or is now pending at law or otherwise for the foreclosure of the Mortgages or for recovery of the indebtedness evidenced and secured by the Loan Documents, or any part thereof.

70.    The Lender requests that if this action proceeds to judgment of foreclosure and sale, the Mortgaged Premises be sold, subject to the following:

a.    Any state of facts that an inspection of the Mortgaged Premises would disclose.

b.    The state of facts that accurate survey of the Mortgaged Premises might disclose.

c.    The liens, if any, of real estate taxes, and assessments, water, sewer, and vault charges, with interest and penalties, including lien and certificate sales for delinquent items, unless paid from the proceeds of the foreclosure sale.

d.    Covenants, reservations, restrictions, easements, and public utility agreements of record, if any.

17

{40272116:2}

e.    Building and zoning ordinances of the municipalities in which the Mortgaged Premises are located and possible violations of same.

f.    All rights of tenants or persons in possession of the Mortgaged Premises other than tenants and occupants, if any, named as Defendants in this action.

g.    Terms and conditions of any other documents of record.

h.    Prior liens of record, if any.

71.    If Lender possesses any other liens against the Mortgaged Premises either by way of judgment, junior mortgage, or otherwise, Lender requests that it be permitted to elect prior to judgment that only such other liens shall not be merged in Lender's cause of action set forth in this Complaint, but that Lender shall be permitted to enforce said other liens and/or seek determination of priority thereof in any independent actions or proceedings including, without limitation, any surplus money proceedings.

72.    Lender reserves the right: (1) to sue for judgment against 45 Broad for any exception to the exculpatory provisions contained in the Loan Agreement; (2) to sue for judgment against Swig on the Guaranty and Additional Guaranty for any deficiency or unpaid Guaranteed Obligation of 45 Broad; (3) to recover any misappropriated funds received from the Mortgaged Premises or for any acts of waste, conversion or malfeasance and (4) to make such protective advances as may be necessary for the protection and preservation of the Lender's collateral, and requests that such other rights and liens shall not be merged in Lender's cause of action set forth in this Complaint, but that Lender shall be permitted to enforce said other rights and liens in any independent actions or proceedings, or pursuant to any relevant provision of the UCC or applicable law.

73.    Lender shall not be deemed to have waived any default not specified herein, nor to have waived, altered, released, or changed any election hereinbefore made by reason of any

{40272116:2}

payment made after default and acceleration of the Loan by Lender, or by reason of any cure or remedy, or attempted cure or remedy, of any or all of the defaults or events of defaults named herein, and any such election shall continue and remain effective.

74.    To protect the security and the liens of the Mortgages and its priority and the rights of a purchaser at the foreclosure sale, it may be necessary for the Lender to pay taxes, assessments, common charges and assessments, liens, contractors to complete or continue construction activities at the Mortgaged Premises, water and sewer charges, plus interest and penalties thereon, that were or may become encumbrances, liens or other charges upon the Mortgaged Premises (including purchase and/or redemption of liens and certificates sold at tax sales), taxes and other charges that must be paid as a prerequisite to recording the referee's deed in foreclosure, premiums of insurance policies and other charges, costs of inspection, service, repairs and maintenance incurred for protection of the security, and Lender hereby demands that all monies that heretofore have been and which may hereafter be, expended, shall be added to the amount evidenced and secured by the Second Mortgage with interest thereon from the time of such payment at the default rate, as set forth in the Second Mortgage and that the same be paid to the Lender from the proceeds of the foreclosure sale herein.

75.    No prior action has been commenced for the relief sought herein.

## AS AND FOR A SECOND CAUSE OF ACTION

76.    Lender hereby repeats and realleges all of the preceding allegations set forth in paragraphs "1" through "75", inclusive, above, to the same extent as if fully set forth at length herein.

77.    45 Broad has defaulted under the terms of the First Loan Documents and failed to repay the indebtedness when due upon maturity as promised and failed to pay real estate taxes when due.  Moreover, 45 Broad has permitted at least one lien and encumbrance to exist at and

{40272116:2}

attached to the Mortgaged Premises. For these reasons and others, defendants 45 Broad and Swig are in default under the First Loan Documents, giving Lender the right to foreclose on the Mortgaged Premises and sue for recovery of any sums due to it.

78.    The Lender has elected and hereby confirms its election to declare immediately due and owing the entire unpaid principal, interest, default interest, late fees, attorneys' fees and other charges due under the First Loan Documents.

79.    45 Broad and Guarantor have each failed to remit the amounts referred to in the Lender's Default Letters, or any part thereof and have not disputed the contents of the Default Letters.

80.    As of December 29, 2008, the following amounts (exclusive of costs and fees, including attorney's fees) are now due and owing to the Lender under the First Loan Documents, no part of which has been paid although duly demanded:

1.    $37,705,710.51 representing the principal balance;
2.    Capitalized interest in the amount of $8,243,004.39
3.    Uncapitalized interest from 12/1/08-12/29/08 in the amount of $210,796.11; and
4.    Default interest from 2/29/08-12/29/08 in the amount of $1,943,816.48.

81.    In addition to the amounts listing in paragraph "80" above, Lender is entitled to any other charges, indebtedness and interest that may have accrued, or accruing following the Lender's Default Letters, plus any protective advance and the costs of this collection, including reasonable attorney's fees and disbursements, and the costs, disbursements and allowances to which the Lender is entitled under any and all statutes applicable to this action.

82.    Per diem interest continues to accrue on the First Loan at the Default Rate.

83.    Upon information and belief, all of the Defendants' interests in the Mortgaged Premises, if any, are subject and subordinate to the lien of the First Mortgage.

{40272116:2}

84.    No other action or proceeding has been commenced or maintained or is now pending at law or otherwise for the foreclosure of the Mortgages or for recovery of the indebtedness evidenced and secured by the Loan Documents, or any part thereof.

85.    The Lender requests that if this action proceeds to judgment of foreclosure and sale, the Mortgaged Premises be sold, subject to the following:

    a.    Any state of facts that an inspection of the Mortgaged Premises would disclose.

    b.    The state of facts that accurate survey of the Mortgaged Premises might disclose.

    c.    The liens, if any, of real estate taxes, and assessments, water, sewer, and vault charges, with interest and penalties, including lien and certificate sales for delinquent items, unless paid from the proceeds of the foreclosure sale.

    d.    Covenants, reservations, restrictions, easements, and public utility agreements of record, if any.

    e.    Building and zoning ordinances of the municipalities in which the Mortgaged Premises are located and possible violations of same.

    f.    All rights of tenants or persons in possession of the Mortgaged Premises other than tenants and occupants, if any, named as Defendants in this action.

    g.    Terms and conditions of any other documents of record.

    h.    Prior liens of record, if any.

86.    If Lender possesses any other liens against the Mortgaged Premises either by way of judgment, junior mortgage, or otherwise, Lender requests that it be permitted to elect prior to judgment that only such other liens shall not be merged in Lender's cause of action set forth in this Complaint, but that Lender shall be permitted to enforce said other liens and/or seek determination of priority thereof in any independent actions or proceedings including, without limitation, any surplus money proceedings.

{40272116:2}

87.    Lender reserves the right: (1) to sue for judgment against 45 Broad for any exception to the exculpatory provisions contained in the Loan Agreement; (2) to sue for judgment against Swig on the Guaranty and Additional Guaranty for any deficiency or unpaid Guaranteed Obligation of 45 Broad; (3) to recover any misappropriated funds received from the Mortgaged Premises or for any acts of waste, conversion or malfeasance and (4) to make such protective advances as may be necessary for the protection and preservation of the Lender's collateral, and requests that such other rights and liens shall not be merged in Lender's cause of action set forth in this Complaint, but that Lender shall be permitted to enforce said other rights and liens in any independent actions or proceedings, or pursuant to any relevant provision of the UCC or applicable law.

88.    Lender shall not be deemed to have waived any default not specified herein, nor to have waived, altered, released, or changed any election hereinbefore made by reason of any payment made after default and acceleration of the Loan by Lender, or by reason of any cure or remedy, or attempted cure or remedy, of any or all of the defaults or events of defaults named herein, and any such election shall continue and remain effective.

89.    To protect the security and the liens of the Mortgages and its priority and the rights of a purchaser at the foreclosure sale, it may be necessary for the Lender to pay taxes, assessments, common charges and assessments, liens, contractors to complete or continue construction activities at the Mortgaged Premises, water and sewer charges, plus interest and penalties thereon, that were or may become encumbrances, liens or other charges upon the Mortgaged Premises (including purchase and/or redemption of liens and certificates sold at tax sales), taxes and other charges that must be paid as a prerequisite to recording the referee's deed in foreclosure, premiums of insurance policies and other charges, costs of inspection, service,

{40272116:2}

repairs and maintenance incurred for protection of the security, and Lender hereby demands that all monies that heretofore have been and which may hereafter be, expended, shall be added to the amount evidenced and secured by the First Mortgage with interest thereon from the time of such payment at the default rate, as set forth in the First Mortgage and that the same be paid to the Lender from the proceeds of the foreclosure sale herein.

90.    No prior action has been commenced for the relief sought herein.

## AS AND FOR A THIRD CAUSE OF ACTION

91.    Lender hereby repeats and realleges all of the preceding allegations set forth in paragraphs "1" through "90", inclusive, above, to the same extent as if fully set forth at length herein.

92.    Pursuant to the Notes, Mortgages, Guaranty, Additional Guaranty and other Loan Documents, Swig should be adjudged liable to Lender for any deficiency that may be due Lender on account of the Loan Documents together with any and all sums to which Lender may be entitled as set forth in the preceding paragraphs and after, (a) the Mortgaged Premises has been sold as described above, and (b) the proceeds thereof to which Lender is entitled have been paid to Lender.

93.    Swig has defaulted under said obligations by failing to cure any default by 45 Broad and failing to complete the project as promised.

94.    By reason of the foregoing, Lender has been damaged.

## AS AND FOR A FOURTH CAUSE OF ACTION

95.    Lender hereby repeats and realleges all of the preceding allegations set forth in paragraphs "1" through "94", inclusive, above, to the same extent as if fully set forth at length herein.

{40272116:2}

96.     Pursuant to the Notes, Mortgages, Guaranty, Additional Guaranty and other Loan Documents, defendant 45 Broad agreed to pay, and Swig guaranteed payment of, Lender's attorneys' fees, costs and disbursements in any action to foreclose said Mortgage and agreed that same would constitute a lien against the said Mortgaged Premises.

97.     Swig has defaulted under said obligations by failing to cure any default by 45 Broad and failing to complete the project as promised.

98.     By reason of the foregoing, Lender has been damaged.

## AS AND FOR A FIFTH CAUSE OF ACTION

99.     Lender hereby repeats and realleges all of the preceding allegations set forth in paragraphs "1" through "98", inclusive, above, to the same extent as if fully set forth at length herein.

100.    Due to the aforementioned defaults and the failure by 45 Broad and Swig to cure same, Lender has the contractual right to have a receiver and special agent appointed to assure adequate security, preservation, management, construction, completion and operation of this facility pending its ultimate sale as a result of this foreclosure action or to simply take possession thereof and employ all remedies under the Loan Documents to complete the work which 45 Broad and Swig were unable or unwilling to finish as assignee of 45 Broad, Gilsanz, or their agent's rights under all existing contracts.

101.    Section 7.1(g) of each Mortgage entitles Lender to the appointment of a receiver upon the occurrence of an Event of Default without regard to the solvency of 45 Broad or value of the collateral.  Lender may also gain possession in and to the Mortgaged Premises without necessity of a Court Order.  These rights are cumulative and not exclusive.

24

102.    As described above, numerous Events of Default have occurred including but not limited to the failure of 45 Broad and Swig to make payment of all sums when due to the Lender, the failure by 45 Broad and Swig to satisfy liens and judgments against the Mortgaged Premises..

103.    By reason of the foregoing Events of Default identified herein and the malfeasance of 45 Broad and Swig, a receiver is both necessary and proper in addition to the other rights, remedies and the other action which may be undertaken by the Lender pursuant to 45 Broad's assignment of construction contracts to the Lender and appointment of the Lender to act as its attorney in fact.

**WHEREFORE**, the Lender demands judgment against defendants as follows:

a.    That the defendants, and each of them, and all persons claiming under defendants, or any of them, subsequent to the commencement of this action and the filing of a notice of pendency thereof, be barred and foreclosed of and from all estate, right, title, interest, claim, lien and equity of redemption of, in and to the Mortgaged Premises and each and every part and parcel thereof;

b.    That the Mortgaged Premises may be decreed to be sold according to law, subject to the matters set forth in this Complaint;

c.    That 45 Broad's personal property at the Mortgaged Premises, if any, may be sold as separate units if such separate sale brings a higher price and that separate units at the Mortgaged Premises may be sold as units for the same reason;

d.    That the monies arising from the sale thereof be brought into this Court;

e.    That Lender be paid from the proceeds of such sale the amounts due on the Loan Documents as hereinbefore set forth, with default interest at the rate set forth in the Notes to the date of such payment, together with the costs, allowances and disbursements of this action, the expenses of sale, Lender's attorneys' fees, other charges as provided for in the Loan Documents, and any sums incurred, or to be incurred by Lender pursuant to any term or provision of the Loan Documents or to protect the security or lien of the Mortgages or their priority (including purchase and/or redemption of liens and certificates sold at tax sales) or to comply with the requirements for recording the referee's deed in foreclosure, with interest at the rate or default rate, as the case may be, set forth in the Loan Documents upon said sums from the dates of the respective payments and advances thereof, so far as the amount of such monies properly applicable thereto will pay the same;

{40272116:2}

f.      That the Court decree a consolidation of the Second Mortgage with the First
Mortgage lien so that the Mortgaged Premises may be sold in one sale to satisfy
both the amounts due and owing under the First Loan Documents as well as the
amounts due and owing under the Second Loan Documents or, alternatively, that
the Court order that the Lender may proceed with the foreclosure sale of the
Second Mortgage before the First Mortgage and then immediately thereafter
proceed with a sale of the First Mortgage;

g.      That in the event that Lender possesses any other liens against said Mortgaged
Premises either by way of judgment, junior mortgage, protective advance, or
otherwise, such other liens shall not be merged in Lender's causes of action set
forth in the Complaint, but that Lender shall be permitted to enforce said other
liens and/or seek determination of priority thereof in any independent action or
proceeding including, without limitation, any surplus money proceedings;

h.      That Lender's other liens that further secure the indebtedness evidenced by the
Loan Documents shall not be merged in Lender's cause of action set forth in this
Complaint, but that Lender shall be permitted to enforce said other liens in any
independent actions or proceedings, or pursuant to the provisions of the UCC
should it elect to do so;

i.      That defendants 45 Broad and Swig be adjudged liable to jointly and severally
pay the whole residue and deficiency, if any, of the debt due under the Loan
Documents (including any protective advances or payments made by Lender)
remaining unsatisfied after foreclosure sale of the Mortgaged Premises and the
application of the proceeds pursuant to the directions contained in such judgment;

j.      That a receiver or other agent be appointed to receive and collect the rents and
profits of the Mortgaged Premises and take such action as is necessary to preserve
the collateral during the pendency of this action with the usual powers or that
Lender have possession thereof;

k.      That the entry of judgment in this action be filed in the New York County Clerk's
Office by certified copy;

l.      That advertisement of the Notice of Sale be made in New York County;

m.      That the purchaser or purchasers at said sale be let into possession on production
or delivery of referee's deed or deeds;

n.      That if it is adjudged that 45 Broad and Swig damaged the Lender's collateral
causing the diminution in value thereof, that 45 Broad and Swig pay to the Lender
damages in an amount to be determined;

{40272116:2}

o.   Declaring that the mechanic's liens filed against the Mortgaged Premises are junior and subordinate to the Lender's Mortgage liens and that nothing is due or owed from the sale proceeds because no lien fund exists;

p.   That defendants 45 Broad and Swig be ordered to account, and be adjudged liable for, all rent, issues or profits received after the Default Letter of January 7, 2009 at the Default Rate of interest;

q.   Declaring that the Lender may act as the assignee of 45 Broad and attorney in fact to enforce all rights and remedies pursuant to the construction contracts executed by and between 45 Broad and its contractors and subcontractors including Gilsanz;

r.   Declaring that the Lender may take possession of the Mortgaged Premises and act as attorney in fact for 45 Broad, adding the costs of completion and improvements to the amount due under the Loan Documents together with interest accruing thereon at the Default Rate;

s.   Declaring that the Lender may specifically enforce each and every contract, right and agreement assigned to it by the defendants;

t.   Declaring that the Lender is the third party beneficiary of all contracts, agreements, and arrangements by and between 45 Broad and third party vendors;

u.   That the Lender may have such other and further relief as may be just and equitable.

WINDELS MARX LANE & MITTENDORF, LLP

Dated:   New York, New York
         January ___, 2009

By: _____
    Mark A. Slama
    A Member of the Firm
    156 West 56th Street
    New York, New York 10019
    (212) 237-1000

    Attorneys for Plaintiff
    Lehman Brothers Holdings Inc.

{40272116:2}

## VERIFICATION

STATE OF NEW YORK          )
                          : ss.:
COUNTY OF NEW YORK    )

_Jeffrey Fitts_____, being duly sworn, deposes and says that s/he is the
_Authorized Signatory_____ of Lehman Brothers Holdings, Inc., the plaintiff herein, that s/he
has read the foregoing Verified Complaint and knows the contents thereof, that the same is true
to her/his knowledge, except as to those matters alleged upon information and belief therein, and
as to those matters s/he believes them to be true.

Name: _____
                    Jeffrey Fitts

Sworn to before me this
21st day of January 2009

Notary Public

DEANNA EMILIO
Notary Public, State of New York
No. 01EM6171082
Qualified in Richmond County
Term Expires July 23, 2011

{40272116:2}

## SCHEDULE A

### (Legal Description of Property)

### (45 BROAD STREET, NEW YORK, NEW YORK, BLOCK: 25, LOT: 7)

ALL that certain plot, piece or parcel of land situate lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of Broad Street distant 130 feet 9 ¾ inches northerly from the corner formed by the intersection of the said easterly side of Broad Street with the northerly side of Beaver Street;

RUNNING THENCE Easterly along a line which forms an angle on its northerly side with said easterly side of Broad Street of 82 degrees 30 minutes 10 seconds and along the northerly face of northerly walls of buildings adjoining on the south and along southerly face of the southerly wall of the brick building on the premises hereby described, 146 feet and 2 ¼ inches to the westerly face of the westerly wall of the building on the premises adjoining on the east;

THENCE northerly along said westerly face of said westerly wall, 60 feet 3 ¾ inches to the southerly face of the southerly wall of the one-story brick building on the rear of the premises adjoining on the north;

THENCE westerly along a line which forms an angle on its southerly side with the easterly side of Broad Street of 96 degrees 2 minutes 20 second, 128 feet 1 ½ inches to said easterly side of Broad Street;

THENCE southerly along said easterly side of Broad Street, 63 feet 5 ¼ inches to the point or place of BEGINNING.

BEING KNOWN as 43-47 Broad Street, New York, New York and designated as Block 25, Lot 7 on the Tax Map of the City of New York, County of New York.

Together with the benefits of a covenant not to build upon and an easement for light and air and unobstructed view over premises (except for the air space occupied by the Owner Building) herein described below and as described in Zoning Lot and Development Agreement between Walwilhal Associates and 45 Broad, LLC dated February 26, 2007 recorded in the New York County Register's Office.

BEGINNING at a point on the easterly side of Broad Street, distant 106 feet 8 inches southerly from the southeasterly corner of Broad Street and Exchange Place, which point is opposite the northerly face of the northerly wall of the northerly building on the premises herein described;

THENCE southerly along the easterly side of Broad Street, 46 feet 1-1/2 inches to an angle in the easterly side of Broad Street;

THENCE southerly still along the easterly side of Broad Street, 60 feet 7 inches to a point on the easterly side of Broad Street, distant 194 feet 3 inches northerly from the corner formed by the intersection of the easterly side of Broad Street and the northerly side of Beaver Street, which point is opposite the southerly face of the southerly wall of the southerly building on the premises herein described.

THENCE easterly along the said southerly face of said wall, 128 feet 1-1/2 inches to the westerly face of the westerly wall of the building adjoining on the east;

THENCE northerly along said westerly face of said last mentioned wall and on a line which makes an interior angle with the last mentioned course of 79 degrees 28 minutes 0 seconds, 31 feet 2 inches to the northerly face of the northerly wall of the southerly building on the premises herein described;

THENCE northerly on a line which makes an interior angle with the last mentioned course of 190 degrees 7 minutes 50 seconds, 16 feet 11-1/4 inches;

THENCE northerly along a line which makes an interior angle with the last mentioned course of 178 degrees 39 minutes, 13 feet 4-1/2 inches to the northerly face of the independent wall of the rear building on premises known as 39 Broad Street;

THENCE westerly along the same and on a line which makes an interior angle with the last mentioned course, 91 degrees 42 minutes 0 seconds, 6 feet 2-1/2 inches to the easterly face of the easterly wall of the rear building on the premises known as 35 Broad Street;

THENCE northerly along the same and on a line which makes an exterior angle with the last mentioned course of 75 degrees 12 minutes 0 seconds, 29 feet 6-1/4 inches to the northerly side of the northerly wall of the said building;

THENCE westerly along the same and along the northerly face of the northerly wall of the front building on the premises known as 35 Broad Street and on a line which makes an interior angle with the last mentioned course of 83 degrees 16 minutes 30 seconds, 102 feet 9-1/2 inches to the point or place of BEGINNING.

**For information only**: Said premises are known as 35-41 Broad Street, New York, NY, and designated as Block 25 Lot 10 as shown on the Tax Map of the City of New York, County of New York.

## SCHEDULE B

| Lien Claimant | Amount | Date Filed |
|---|---|---|
| Gilsanz Murray Steficek LLP | $382,059.18 | 11/3/08 |