UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | Case No. 08-13555 (JMP) |
| | (Jointly Administered) |
| Debtors. | |

-----------------------------------------------------------x

**DECLARATION OF JOSEPH E. TEICHMAN IN SUPPORT OF
MOTION OF 1407 BROADWAY REAL ESTATE LLC AND
PGRS 1407 BWAY LLC FOR AN ORDER
(I) COMPELLING LEHMAN BROTHERS HOLDINGS INC. TO
COMPLY WITH ITS LENDING OBLIGATIONS OR ALTERNATIVELY, (II)
GRANTING 1407 BROADWAY REAL ESTATE LLC AND PGRS 1407 BWAY LLC
<u>RELIEF FROM THE AUTOMATIC STAY</u>**

Joseph A. Teichman, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1. I am Executive Vice President and General Counsel of The Lightstone Group, an affiliate of both 1407 Broadway Real Estate LLC ("<u>1407 Broadway</u>"), the borrower under the Loan with Lehman Brothers Holdings Inc. ("<u>Lehman</u>") and PGRS 1407 BWAY LLC ("<u>PGRS 1407</u>" and together with 1407 Broadway, the "Movants"). I am the individual at Lightstone with responsibility for overseeing 1407 Broadway's Loan and its relationship with its lender. I submit this declaration in support of the Motion[1] of the Movants pursuant to sections 105, 362(d) and 365(c) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") for entry of an order compelling Lehman to comply with its obligations to lend under the Loan Agreement, or alternatively, granting the Movants relief from the automatic stay to take appropriate steps to terminate the Loan Agreement and related agreements, seek a replacement lender and otherwise

---

[1] Unless defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

73563.2

pursue their remedies against Lehman. I have reviewed the Motion and attest to the following facts upon personal knowledge or, where indicated, upon information and belief formed after reasonable investigation.

2. In September of 2008, after learning of the Lehman bankruptcy filing, I directed transactional counsel to Lightstone, 1407 Broadway and PGRS 1407 to contact counsel to Lehman to ask what procedures we needed to use going forward to obtain necessary funding. Our counsel notified me and Victoria Cory of Prime Group that he had in fact made such an inquiry and been told that draws should be made in the same manner as in the past.

3. On October 7, 2008, Victoria Cory prepared and sent a request for funding to Trimont, the servicing agent for Lehman to whom she had historically sent such requests. I contacted Charles Manna, the managing director of Lehman who had always been our contact person on the Loan, on the day that the request was sent and was told that Lehman would be honoring draw requests. Mr. Manna and I spoke several times during the month of October, and he repeatedly assured me that funding would not be an issue, stating that "approval would come in a week or two".

4. I checked in with Mr. Manna via e-mail on October 27th and then again on November 3rd and was again told that Lehman was trying to make the funding happen. We had some subsequent conversations in November and then early December, and he indicated that the funding had business approval and he was trying to move it forward.

5. As recently as late December and early January of 2009, Mr. Manna continued to assure me that Lehman intended to fund, but confessed that he did not know when that would happen.

73563.2

6. On January 19, 2009, two of my colleagues and I had a conference call with Mr. Manna, to reiterate our concern about Lehman's failure to fund the October 7th draw, and to notify him of 1407 Broadway's need for additional funds of $1,110,893.37, as of that date. Mr. Manna told us that Lehman considered the 1407 Broadway property a good project, and that Lehman intended to fund both the October draw and the new draw, and stated that he was "optimistic" that both draws would be funded on or shortly after January 30th.

7. Victoria Cory then prepared and sent a thirteenth request for funding to Trimont, the servicing agent for Lehman, reducing to writing 1407 Broadway's request of January 19th. The amount requested, consistent with the January 19th conversation with Mr. Manna, was $1,110,893.37, bringing the total amount sought to $2,019,201.29.

8. I heard nothing from Lehman after January 19th, and no disbursement was made on January 30th. I therefore had another conversation with Charlie Manna on that date, and he again assured me of Lehman's desire and intention to fund. There was another telephone conversation with Mr. Manna on February 4th, during which I am advised he assured two of my colleagues, who had been on the January 30th call with me, that he hoped to be able to fund in approximately two weeks time. He also noted that he was aware that we had heard that before.

9. At no time during any of my communications with Lehman was it suggested that 1407 Broadway was in default under the Loan, or that there was anything 1407 Broadway was required to do and had not done to be entitled to the funding. To the best of my knowledge, information and belief, after reasonable inquiry, 1407 Broadway has been in compliance with the Loan at all times during this process. Moreover, the Loan Agreement requires that copies of all notices to 1407 Broadway be sent "c/o" The Lightstone Group, and

73563.2

any notices or correspondence about this Loan received at the offices of the Lightstone Group would be directed to my attention. I have never received any notice of default with respect to the Loan or any notice that the revised 2008 or proposed 2009 budget has been rejected by Lehman.

Executed on:   February 6, 2009

                                                   */s/ Joseph E. Teichman*
                                                    Joseph E. Teichman

73563.2