DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone:  212.259.8000
Facsimile:  212.259.6333
Martin J. Bienenstock, Esq.
Irena Goldstein, Esq.

Attorneys for Elliott Associates, L.P.,
Elliott International L.P., The Liverpool Limited Partnership
Springfield Associates LLC and Kensington
International Limited

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                                                         :
In re                                                    :    Chapter 11 Case No.
                                                         :
LEHMAN BROTHERS HOLDINGS INC.,                           :    08-13555 (JMP)
*et al.*                                                 :
            Debtors.                                     :    (Jointly Administered)
                                                         :
-------------------------------------------------------- x

**OBJECTION OF ELLIOTT ASSOCIATES, L.P.,
ELLIOTT INTERNATIONAL, L.P., THE LIVERPOOL LIMITED PARTNERSHIP,
SPRINGFIELD ASSOCIATES LLC AND KENSINGTON INTERNATIONAL LIMITED
TO DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 364 OF THE
BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO GRANT FIRST
PRIORITY LIENS IN CASH COLLATERAL POSTED IN CONNECTION WITH THE
HEDGING TRANSACTIONS THE DEBTORS ENTER INTO THROUGH CERTAIN
<u>FUTURES AND PRIME BROKERAGE ACCOUNTS</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        1.     Elliott Associates, L.P., Elliott International, L.P., The Liverpool Limited

Partnership, Springfield Associates LLC and Kensington International Limited (collectively,

"<u>Elliott</u>") submit this objection (the "<u>Objection</u>") to the motion (the "<u>Motion</u>") of Lehman

Brothers Holdings, Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-captioned chapter 11

NY3 3020987.4 900000 632732 2/7/2009 10:15am

cases (together, the "Debtors") for an order, pursuant to sections 105 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtors to grant first priority liens in cash collateral posted in connection with the hedging transactions (the "Future Hedging Transactions") the Debtors enter into through certain futures and prime brokerage accounts and respectfully represent:

## BACKGROUND

2. Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its direct and indirect subsidiaries, including Lehman Brothers Commodity Services ("LBCS"), Lehman Commercial Paper Inc. ("LCPI") and Lehman Brothers Special Financing ("LBSF"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Pursuant to court approval, the Debtors' cases are jointly administered under the above-captioned case number, but no order has directed or approved substantive consolidation.

3. Elliott is a substantial creditor of LBHI, LBCS, LCPI and LBSF as a result of holding public debt of LBHI, open trade positions with LCPI, and being party to derivative contracts with LBCS and LBSF.

4. The Debtors seek an order authorizing them to enter into Future Hedging Transactions with certain unnamed broker dealers to hedge against short and long term risks associated with the Debtors' estates' derivative contracts, pursuant to which the Debtors are required to post "cash, securities, or other collateral" (the "Collateral")[1] to secure their currently unidentified obligations under such future transactions.

---

[1] While the Motion's title refers only to "cash collateral," the Collateral includes securities and "other collateral." (Motion ¶ 13)

**OBJECTIONS**

5. <u>The Relief Requested is Unbounded, Open Ended, and Undefined</u>. The Debtors announce they "will enter into a diverse range of trading or hedging transactions including but not limited to over the counter transactions (the "Hedging Transactions") that will serve as a hedge against any potential future loss in value under the applicable Derivative Contract." Motion at ¶ 12. That the Future Hedging Transactions involve the incurrence of credit, is admitted by the Debtors when they explain: "The Broker Dealer counterparties to these Hedging Transactions will extend credit to the Debtors by making the full value of the Hedging Transactions available to the Debtors while only requiring the posting of Collateral that is less than such transactions' full value. In each case, the Collateral requirements will be determined by the Broker Dealer and will be driven by industry standards that take into consideration the type of transaction and the credit risk associated with the Debtors as a counterparty…." Motion at ¶ 13.

6. <u>The Motion Fails to State a Claim for Relief under Bankruptcy Code Section 364(c)</u> because it does not disclose material facts, including:[2]

    a. The total amount of liability the Debtors may incur, or any relevant measure of exposure, such as "value-at-risk (VaR);"

    b. Anticipated initial margin posting requirements;

    c. The Debtors' best estimate of the current value of the "in-the-money" derivatives they will attempt to hedge or the related notional amount of exposure;

    d. Minimum credit criteria for the broker-dealer counterparties for the Future Hedging Transactions;

---

[2] Detailed disclosure of specific existing or proposed positions transactions is clearly commercially sensitive. Nevertheless, the Debtors, through the Motion, are seeking extraordinarily broad authority to enter into what we can only assume to be billions of dollars of Future Hedging Transactions, and put at risk hundreds of millions (if not more than a billion) dollars of the Debtors' valuable assets. The lack of any meaningful related disclosure – even in the generalities – runs directly contrary to creditor rights, the stated goals of providing enhanced transparency in these cases and does not allow creditors to analyze the Debtors' request in any economic context.

3

  e.  The types of Future Hedging Transactions – *i.e.,* interest rate, commodity, currency, credit, equity – that Debtors intend to enter into;

  f.  The risks to the effectiveness of the hedges – that is, the risk that losses on the Future Hedging Transactions may not be fully or directly offset by further gains on the Debtors' existing contracts;

  g.  The business rationale for attempting to hedge the legacy derivatives exposures, or whether, in the alternative, some of the positions themselves currently provide an effective hedge for exposure elsewhere in the Debtors' asset portfolio;

  h.  The terms parameters to be satisfied before a transaction can be considered a hedge as opposed to a new, speculative trade;

  i.  Whether the Future Hedging Transactions can be terminated or novated when and if the Debtors' counterparties terminate existing derivative contracts;

  j.  Who will decide on and negotiate Future Hedging Transactions; and

  k.  What disclosure and accountability will creditors obtain.[3]

  7.  <u>The Motion Ignores and Violates Bankruptcy Rule 4001(c)</u>. The Debtors concede in paragraphs 16 and 19 of their Motion that they are invoking and requesting relief under Bankruptcy Code section 364(c)(2)(encumbering property not otherwise subject to a lien to secure credit). But, nowhere in their Motion do the Debtors mention the applicability of

---

[3] If the Debtors are not currently in a position to track, on a real-time basis, the economics of their current derivatives exposure, including sensitivities to movements in interest rates, credit spreads and currencies, gross economic exposure prior to collateral posting, the correlation (if any) of its remaining receivable with the remaining derivatives liability VaR of the derivative receivables or the liability, and breakdown of exposures by asset classes, Elliott recommends that the Debtors withdraw their request until such time as those capabilities are fully restored and the Debtors have risk management protocols in place to effectively monitor the new exposure they intend to take on.

4

08-13555-mg    Doc 2759    Filed 02/07/09    Entered 02/07/09 13:21:36    Main Document
Pg 5 of 7

Rule 4001(c)(1) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), which in pertinent part provides:

> (c) **Obtaining Credit.**
>
> **(1) Motion; Service.**
>
> (A) Motion. A motion for authority to obtain credit shall be made in accordance with Rule 9014 and shall be accompanied by a copy of the credit agreement and a proposed form of order.
>
> (B) Contents. The motion shall consist of or (if the motion is more than five pages in length) begin with a concise statement of the relief requested, not to exceed five pages, that lists or summarizes, and sets out the location within the relevant documents of, all material provisions of the proposed credit agreement and form of order, including interest rate, maturity, events of default, liens, borrowing limits, and borrowing conditions. If the proposed credit agreement or form of order includes any of the provisions listed below, the concise statement shall also: briefly list or summarize each one; identify its specific location in the proposed agreement and form of order; and identify any such provision that is proposed to remain in effect if interim approval is granted, but final relief is denied, as provided under Rule 4001(c)(2). In addition, the motion shall describe the nature and extent of each provision listed below:
>
> (i) a grant of priority or a lien on property of the estate under § 364(c) or (d);

In short, the Debtors effectively ignore Bankruptcy Rule 4001(c)(1) by not providing actual credit agreements and not even describing important terms, such as interest rates, maturities, events of default, borrowing limits, and borrowing conditions.

5

NY3 3020987.4 900000 632732 2/7/2009 10:15am

8.     Additionally, the Debtors fail to provide any authority for violating Bankruptcy Rule 4001(c).  The Debtors include Bankruptcy Code section 105 in the title of their Motion, suggesting they are aware of the issue; but, section 105(a) provides the court may issue any order "to carry out the provisions of this title," – not to override the Bankruptcy Rules and to deprive creditors of their fundamental rights to meaningful notice and to know how estate assets are being used.

9.     In short, the Debtors' wholesale request for authority to hedge and to pledge Collateral on terms to be determined in the future, on the ground that the Debtors want to reduce risk, both fails to state a claim and violates the Bankruptcy Code and Bankruptcy Rules.

10.    <u>Creditors' Oversight</u>.  While Elliott sympathizes with the Debtors' desire to have the flexibility to "lock in" gains in their open "in-the-money" derivative positions in certain circumstances, it believes that any system providing for the Debtors to enter into Future Hedging Transactions and to pledge estate property, should require prior statutory creditors' committee approval of:

a.  The fact that each Future Hedging Transaction is indeed an effective hedge of a legacy in-the-money position and does not expose the estates to meaningful incremental risks;

b.  All Future Hedging Transactions, in the aggregate, having the effect of increasing the Debtors' gross notional derivatives exposure by $1 billion, and every incremental $500 million of derivatives exposure thereafter;

c.  All Future Hedging Transactions, in the aggregate, having the effect of increasing the Debtors' single day VaR, calculated in a manner consistent with the Debtors' past practice or general industry standards, satisfactory to the committee and its professionals, by $5 million and at a 95% confidence level, and thereafter hedges which taken together would have the effect of increasing single day VaR by increments of $2.5 million.

d.  Collateral postings under the Future Hedging Transactions exceeding $100 million and every $50 million thereafter, so that the committee can guard against eroding situations and poorly-conceived or ineffective hedges;

6

  e. Review of prior hedges to determine, among other things, whether the counterparty of the legacy "in-the-money" hedge is of sufficient creditworthiness to support the probable collection of the receivable, warranting the use of the estates' valuable collateral.

  11. Finally, the Debtors should be required to file with the Court, on a periodic basis, a statement setting forth the aggregate value of the Debtor's derivatives positions, segmented broadly by tenor and asset class, the notional amount of the transactions, the single-day VaR (or some other generally accepted risk measure) by asset class (*i.e.,* rates, equities commodities, credit, currencies), and the value of the Collateral posted in connection with the Future Hedging Transactions.

## **CONCLUSION**

  WHEREFORE Elliott requests that this Court (a) deny the Motion for failure to provide adequate notice and to state a claim, and (b) grant Elliott such other and further relief as is equitable and just.

Dated: New York, NY  
   February 6, 2009

DEWEY & LEBOEUF LLP

/s/ Martin J. Bienenstock  
Martin J. Bienenstock, Esq.  
Irena Goldstein, Esq.  
1301 Avenue of the Americas  
New York, New York 10019  
Telephone: 212.259.8000  
Facsimile: 212.259.6333

Attorneys for Elliott Associates, L.P.,  
Elliott International, L.P.,  
The Liverpool Limited Partnership,  
Springfield Associates LLC and Kensington International Limited

7