Hearing Date: February 11, 2009 at 10:00 a.m.

Dennis F. Dunne
Dennis C. O'Donnell
Evan R. Fleck
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
                                                :
In re:                                          :    Chapter 11 Case
                                                :
LEHMAN BROTHERS HOLDINGS INC., et al.,          :    No. 08-13555 (JMP)
                                                :
            Debtors.                            :    (Jointly Administered)
                                                :
------------------------------------------------------------------- x

**STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN
RESPONSE TO DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 364
OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO GRANT
FIRST PRIORITY LIENS IN CASH COLLATERAL POSTED IN CONNECTION
WITH THE HEDGING TRANSACTIONS THE DEBTORS ENTER INTO
THROUGH CERTAIN FUTURES AND PRIME BROKERAGE ACCOUNTS**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in possession (collectively, the "Debtors"), hereby submits this statement (the "Statement") in response to the Debtors' Motion Pursuant to Sections 105 and 364 of the Bankruptcy Code Authorizing the Debtors to Grant First Priority Liens In Cash Collateral Posted In Connection With the Hedging Transactions the Debtors Enter Into Through Certain Futures and Prime Brokerage Accounts, dated January 28, 2009 (Docket No. 2682, the "Hedging Motion"), and respectfully represents as follows:

## BACKGROUND

1.  Commencing on September 15, 2008 (the "Petition Date"), and periodically thereafter, the Debtors filed with this Court voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"). On September 17, 2008, the Office of the United States Trustee appointed the Committee. On January 16, 2009, the Court entered an order directing the appointment of an examiner.

2.  As of the Petition Date, the Debtors were party to nearly one million third-party derivatives contracts (collectively, the "Derivatives Contracts"), the values of which are linked to various fluctuating asset values and indices of asset values (the "Underlyings"). As a result of the current values and positions of the Underlyings, many of the Derivatives Contracts that have not been terminated are currently "in the money" and constitute significant assets of the Debtors' estates. The Committee and its professionals have dedicated significant time and resources to understanding and analyzing the derivatives book and developing and implementing strategies for monetizing the value that exists therein.

3.  On December 16, 2008, the Court entered an order establishing procedures for the settlement or assumption and assignment of the Derivatives Contracts (Docket No. 2257, the "Procedures Order"). Pursuant to a compromise reached between the Debtors and the Committee that resolved the Committee's objection to the motion seeking entry of the Procedures Order, the Debtors and the Committee are developing a protocol that will memorialize (i) the active role the Committee will play in the disposition of this important and complicated asset, (ii) public reporting with respect to the progress being made to wind-down the derivatives book. In the interim, the Procedures Order provides that the Debtors may not

2

consummate a transaction pursuant to the Assumption and Assignment Procedures or Termination and Settlement Procedures unless either (i) the Committee (including through its advisors) consents to such transaction or (ii) the Court authorizes consummation of the transaction over the Committee's objection (and the Committee shall not object to any efforts by the Debtors to seek an expedited hearing by the Court of a request for such authorization).[1] Since entry of the Procedures Order, the Committee and its advisors have spent considerable time working with the Debtors to review and analyze transactions under the Procedures Order that will inure to the benefit of the unsecured creditors of these estates.

4. To hedge the risks associated with changes in the values and positions of the Underlyings prior to the settlement or assumption and assignment of "in the money" Derivatives Contracts, the Debtors plan to enter into certain hedging transactions (the "Hedging Transactions") with respect to such Derivatives Contracts. By the Hedging Motion, the Debtors seek the Court's approval to grant first priority liens on unencumbered cash, securities, and other collateral (the "Collateral") to certain broker-dealers in connection with the Hedging Transactions. If the Hedging Motion is approved, the Debtors will be authorized to enter into the Hedging Transactions, and related futures and prime brokerage account agreements (the "Account Agreements"), without need to obtain further Court approval.

## STATEMENT

**The Hedging Motion Does Not Reflect An Appropriate Level Of Committee Oversight**

5. The Committee agrees with the central premise on which the Hedging Motion is based: the Derivatives Contracts are subject to market and credit risk that can, to a

---

[1] A similar procedure is incorporated in the Court's Order Approving Consensual Assumption and Assignment of Prepetition Derivative Contracts, which was entered on January 28, 2009 [Docket No. 2667].

3

certain extent, be hedged. Notwithstanding the Committee's support for the development and implementation of a hedging strategy and program, the proposed order submitted with the Hedging Motion does not contemplate any Committee or Court oversight with respect to the Hedging Transactions or Account Agreements, including the granting of liens in the Collateral. In particular, and in contrast to the Procedures Order, the proposed order fails to include any requirement that the Debtors obtain the Committee's consent before entering into Hedging Transactions and Account Agreements or even a mechanism by which the Debtors provide information and notice to the Committee with respect thereto.

6. Notwithstanding the potential benefits that may flow from the relief requested in the Hedging Motion, the Debtors should not be authorized to make unilateral decisions with respect to the use of estate property that undermine reasonable creditor expectations of transparency and Committee involvement and oversight, particularly given the risks associated with mis-hedging, which could fail to protect the value of the "in the money" Derivatives Contracts or inefficiently deploy estate assets. On the contrary, the Committee and its professionals should work in tandem with the Debtors to develop, implement and monitor the hedging program.

7. As the Court has recognized, the active participation of official creditors' committees is vital to the effective administration of chapter 11 cases. See, e.g., In re Refco, Inc., 336 B.R. 187, 195 (Bankr. S.D.N.Y. 2006) ("'An official committee of creditors plays a pivotal role in the bankruptcy process. The function of an official creditors committee is to aid, assist and monitor the debtor to ensure that the unsecured creditors' views are heard and their interests promoted and protected.'") (quoting Pan Am Corp. v. Delta Air Lines, Inc., 175 B.R. 438, 514 (S.D.N.Y. 1994)); Northwest Airlines Corp. v. Ass'n of Flight Attendants (In re

<u>Northwest Airlines Corp.)</u>, 349 B.R. 338, 369 (Bankr. S.D.N.Y. 2006) (noting that a debtor in possession cannot operate its business as it did prepetition, "unfettered and without restraint.") (citation omitted).

        8.      Where, as here, the Debtors are working towards a managed liquidation of their affairs, the role of the Committee -- as representative of the true parties in interest -- is of even greater importance. <u>In re After Six, Inc.</u>, 154 B.R. 876, 882 (E.D. Pa. 1993) (when Chapter 11 goal is liquidation, rather than rehabilitation, greater deference to the viewpoints of the creditors' committee is justified); <u>In re Walnut Equipment Leasing Co., Inc.</u>, No. 00-0864, 2003 WL 21262710, at *1 n.5 (Bankr. E.D. Pa. May 28, 2003) (where "the reorganization had taken the form of a liquidation of assets in Chapter 11 for the benefit of creditors . . . the creditors as represented by the Committee were the real party in interest in the Chapter 11 liquidation proceeding [and] the Debtors deferred to the Committee's decisions with respect to maximizing value from estate assets"); <u>In re S.N.A. Nut Co.</u>, 186 B.R. 98, 105 (Bankr. N.D. Ill. 1995) ("In a liquidating Chapter 11, more deference is shown to the unsecureds' viewpoint than in a reorganization case 'because the principle [sic] underlying rationale for the "business judgment rule", <u>i.e.</u>, that a DIP is entitled to some free reign in fulfilling its perceived mission of aiding the economy . . . is lacking in such circumstances.'") (citation omitted) (alterations in original).

        9.      Although the facts and circumstances of the two cases are distinguishable in many respects, the Court authorized the Enron debtors to enter into similar post-petition hedging and other risk management transactions with respect to their open trading contracts. Unlike the Hedging Motion, the <u>Enron</u> motion acknowledged that: "The Debtors will not enter into Risk Management Transactions that fall outside the parameters agreed to, from time to time, with the Creditors' Committee, without seeking a further order of this Court." <u>In re Enron Corp.</u>,

5

No. 01-16034, *Motion of Debtors and Debtors in Possession For an Order Authorizing the Debtors to Enter Into Risk Management Transactions For Limited Purposes of Protecting Existing Open Trading Contracts* [Docket No. 3433], ¶ 13 (Bankr. S.D.N.Y. April 30, 2002).[2] Given the significant value at risk under the Hedging Motion (in light of the considerable value embedded within the "in the money" Derivatives Contracts), the Committee should have at least as much of a role in the hedging process as was granted to the official committee of unsecured creditors in the Enron cases.

11. 10. In addition to providing for the Committee to take an active role in the development, implementation and monitoring of the hedging program, to the extent practicable, the Committee believes that the Debtors should arrange for periodic public reporting of their hedging program and collateral posting activities.

**Proposed Resolution Of The Committee's Concerns**

11. In light of (a) the risks and costs associated with hedging activities, and (b) the fact that the Debtors do not intend to seek the Court's approval prior to entering into Hedging Transactions or Account Agreements, it is manifest that the Committee and its advisors must play an active role in the development, implementation and monitoring of the hedging program. Such role is consistent with the Committee's role with respect to the derivatives book generally. Accordingly, subsequent to the filing of the Hedging Motion, the Committee contacted the Debtors to attempt to reach an agreement with respect to modifications to the proposed order to reflect a proper role for the Committee regarding the Debtors' hedging activities.  While the

---

[2] In addition, the Enron motion provided that the costs associated with such risk management transactions "will be paid by the chapter 11 estate that owns the Open Trading Contract, whose value is being preserved by the Risk Management Transaction." Id. The Committee anticipates that the cost of the Hedging Transactions will be borne by the estate benefiting from such transactions or will be treated pursuant to the final cash management order, which was entered by the Court on November 6, 2008 [Docket No. 1416].

6

Committee and the Debtors have not yet reached final agreement on the terms thereof, the Committee would support entry of a modified proposed order that requires the Debtors and the Committee to engage in good faith negotiations to agree on a protocol (the "Protocol") for the Committee's oversight of the Debtors' hedging program, including the Debtors' entry into the Hedging Transactions and Account Agreements.  Prior to implementation of the Protocol, the Committee shall have consent rights with respect to all Hedging Transactions that the Debtors seek to consummate without seeking approval of the Court.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court condition approval of the Hedging Motion on the inclusion of an oversight role for the Committee that is consistent with the proposal described herein, and grant the Committee such other relief as is just.

Dated:   New York, New York
         February 10, 2009

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By: /s/ Dennis F. Dunne
Dennis F. Dunne
Dennis C. O'Donnell
Evan R. Fleck
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000

Counsel for Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al.