GIBSON, DUNN & CRUTCHER LLP
Michael A. Rosenthal (*pro hac vice* pending)
Rachel F. Castelino (RC-8356)
200 Park Avenue
New York, NY  10166
Tel. (212) 351-4000
Fax (212) 351-4035

*Attorneys for PricewaterhouseCoopers AG, Zurich,
as Bankruptcy Liquidator of
Lehman Brothers Finance AG, in Liquidation,
a/k/a Lehman Brothers Finance SA, in Liquidation*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> LEHMAN BROTHERS FINANCE AG, IN LIQUIDATION, a/k/a LEHMAN BROTHERS FINANCE SA, IN LIQUIDATION, <br><br> Debtor in a Foreign Proceeding. | Chapter 15 <br><br> Case No. 09-B-_____ |
| In re: <br><br> LEHMAN BROTHERS HOLDINGS INC., *et al.*, <br><br> Debtors. | Chapter 11 Case No. <br><br> Case No. 08-13555 (JMP) <br><br> (Jointly Administered) |

**JOINT DECLARATION OF PASCAL PORTMANN AND CHRISTIANA SUHR
BRUNNER, AS REPRESENTATIVES OF PRICEWATERHOUSECOOPERS AG,
ZURICH, AS BANKRUPTCY LIQUIDATOR OF LEHMAN BROTHERS FINANCE AG,
IN LIQUIDATION, a/k/a LEHMAN BROTHERS FINANCE SA, IN LIQUIDATION,
<u>IN SUPPORT OF CHAPTER 15 PETITION AND MOTION TO DISMISS</u>**

Pascal Portmann and Christiana Suhr Brunner, pursuant to 28 U.S.C. § 1746,

hereby declare under penalty of perjury as follows:

1. We, Pascal Portmann and Christiana Suhr Brunner, as representatives of PricewaterhouseCoopers AG, Zurich ("PwC"), in its capacity as duly authorized Bankruptcy Liquidator and putative foreign representative of Lehman Brothers Finance AG, in Liquidation, also known as Lehman Brothers Finance SA, in Liquidation, a Swiss corporation ("LBF"), hereby submit this declaration in support of PwC's (i) petition under chapter 15 of the Bankruptcy Code (the "Chapter 15 Petition") for recognition of the currently ongoing bankruptcy proceeding in Switzerland with respect to LBF (the "Swiss Bankruptcy") as a foreign main proceeding and for relief under section 1521 of the Bankruptcy Code (the "Chapter 15 Petition"), and (ii) motion pursuant to section 305 of the Bankruptcy Code for an order dismissing chapter 11 case (the "Motion to Dismiss"), both filed contemporaneously herewith.

2. On September 30, PwC was appointed as Observer of LBF pursuant to an order issued by the Swiss Federal Banking Commission ("SFBC") (today, the Swiss Financial Market Supervisory Authority ("FINMA")) (the SFBC and the FINMA, as applicable, referred to hereinafter as the "Swiss Commission"). On October 29, 2008, PwC was appointed as Liquidator of LBF pursuant to a further order of the Swiss Commission commencing the liquidation of LBF under Swiss law. On December 19, 2008, effective as from December 22, 2008, by further order of the Swiss Commission converting the liquidation regarding LBF to a bankruptcy proceeding (the "Swiss Bankruptcy"), PwC was appointed as the Bankruptcy Liquidator of LBF.

3. We have been assigned to lead PwC's engagement regarding LBF and remain primarily responsible for such engagement. We have been duly authorized to make this declaration on PwC's behalf in its capacity as the Bankruptcy Liquidator of LBF.

4. Matters stated in this declaration that are statements of fact that are within our personal knowledge are true. Matters stated in this declaration that are statements of facts that are not within our personal knowledge are derived from documents and/or information supplied to us and are true to the best of our knowledge, information and belief.

A. **Lehman Brothers Finance AG, a/k/a Lehman Brothers Finance SA**

5. Articles of Association for LBF were filed in Switzerland on January 13, 1997 (being the date of entry in the commercial register of the Canton of Zurich upon its transfer of domicile). LBF's Articles of Association provide that it is a Swiss corporation known as **both** Lehman Brothers Finance AG **and** Lehman Brothers Finance SA. The dual names arise from the requirement in Switzerland, a country in which both French and German are official languages, to designate LBF's corporate status both in the German nomenclature (*Aktiengesellschaft* (AG)) and the French nomenclature (*Société anonyme* (SA)).

6. LBF is a wholly owned subsidiary of Lehman Brothers Holdings, Inc. ("Holdings"). Since January 22, 2001, the principal purpose of LBF has been to provide financial and financial intermediary services, including structuring, issuing and entering into derivative transactions, and any other related activities. Prior to the commencement of the Swiss Bankruptcy, LBF's primary business was to engage in foreign (i.e., non-U.S.) derivative transactions.

7. LBF maintains its registered office in Zurich, Switzerland. LBF's books and records are maintained at its headquarters, which are located at Talstrasse 82, 8001 Zurich, Switzerland (the "Headquarters"). Prior to the appointment of PwC, LBF managed its affairs from its Headquarters, where its primary assets were booked and operations were undertaken.

Likewise, LBF's derivatives contracts were reviewed and approved from the Headquarters. LBF has no offices or employees in the United States.

8. While LBF has business relationships with several U.S.-based Lehman Brothers entities and a number of other U.S. counterparties, the bulk of LBF's debtor-creditor relationships involve entities that are not based in the United States, including Lehman Brothers International (Europe). For example, as of December 1, 2008, LBF had 55 U.S. counterparties with open positions, as compared to 612 non-U.S. counterparties with open positions. Historically, LBF's business has been interconnected with the business of other Lehman Brothers entities, and LBF has been partially dependent upon services provided by other Lehman Brothers group companies based in the United States and the United Kingdom.

**B.      The Swiss Proceedings**

9. By order of September 30, 2008, the SFBC assumed regulatory authority over LBF, as a financial intermediary. Effective January 1, 2009, the SFBC and other regulatory bodies were merged into the Swiss Financial Market Supervisory Authority ("FINMA"), which now regulates LBF and is responsible for supervising the Swiss Bankruptcy pursuant to the same rules and authorities previously administered by the SFBC.

10. On September 30, 2008, the Swiss Commission issued an order (the "September 30 Order") appointing PwC as the Observer of LBF and directing PwC to investigate LBF's finances and other affairs. The September 30 Order prohibited LBF's board of directors and officers from causing LBF to take any legal actions without PwC's approval, and tasked PwC to protect LBF's creditors and marshal its assets.

11. On October 17, 2008, PwC issued a report to the Swiss Commission pursuant to the September 30 Order recommending the liquidation of LBF. On October 29, 2008, the Swiss

4

Commission issued an order (the "October 29 Order") appointing PwC as Liquidator of LBF with sole authority to act on LBF's behalf, and prohibiting LBF's board of directors and officers from taking any legal actions on the company's behalf. The October 29 Order also commenced the liquidation, i.e. the orderly winding up, of LBF pursuant to (i) article 23 quinquies of the Swiss Federal Act on Banks and Savings Banks; (ii) article 36a of the Swiss Federal Act on Stock Exchanges and Securities Dealers; and (iii) article 739, *et seq.*, of the Swiss Federal Code of Obligations, with PwC serving as Liquidator. The October 29 Order required a specific entry in the commercial register of the Canton of Zurich (the "Commercial Register"), and publication of a notice in the Swiss Official Gazette of Commerce (the "Official Gazette"), disclosing that LBF's directors and officers were no longer empowered to act on behalf of LBF, and that only PwC was so authorized. In addition, the October 29 Order provided that the liquidation proceeding could be converted to a bankruptcy proceeding upon a finding that there was no possibility of restructuring LBF.

12. The Commercial Register is operated, on the cantonal level, by cantonal state authorities and supervised by the Swiss Federal Authority for the Swiss Commercial Register. Its purpose is to record and make publicly available important data regarding commercial entities, including but not limited to the legal form of the entity, the company capital, the members of the board, the auditor of the company, and whether the company is a going concern or in liquidation. The Official Gazette is a business portal operated by the State Secretariat for Economic Affairs ("SECO"). It is the official means of publication of the Swiss Confederation and is published five times a week and contains the most recent official information and announcements required by law. Pursuant to the respective ordinance, the electronic version has legal effect. The Commercial Register and the Official Gazette provide creditors and other

5

parties in interest with critical information, including, to some extent, financial condition, about Swiss companies, such as LBF. The significance of the Commercial Register and the Official Gazette is that entries therein are deemed to be universally known.

13.  In its capacity as Liquidator, PwC, having engaged in an initial investigation of LBF's affairs, determined in late November 2008 that LBF was very likely to be insolvent and that a restructuring was unlikely. PwC informed the Swiss Commission of these findings and on December 2, 2008 requested that the liquidation proceeding be converted to a bankruptcy proceeding. On December 19, 2008, effective as from December 22, 2008, the Swiss Commission issued an order (the "December 19 Order") commencing a so-called "*Bankenkonkurs*," or bank/securities dealer bankruptcy proceeding (the Swiss Bankruptcy, as defined above) for LBF pursuant to Swiss law, specifically (i) article 33, *et seq*., of the Swiss Federal Act on Banks and Savings Banks; (ii) the Swiss Commission's Ordinance on Bankruptcy of Banks and Securities Dealers; (iii) article 36a of the Swiss Federal Act on Stock Exchanges and Securities Dealers; and (iv) the Swiss Federal Debt Enforcement and Bankruptcy Act (the "Swiss Governing Laws"),[1] and appointing PwC as LBF's Bankruptcy Liquidator.

14.  The December 19 Order required an additional entry in the Commercial Register (the "Commercial Register Entry") disclosing that the Swiss Bankruptcy was commenced and that PwC was appointed as the Bankruptcy Liquidator of LBF. Pursuant to the December 19 Order, notice of the Swiss Bankruptcy was also provided by publication on FINMA's website[2]

---

[1]  The Swiss Commission has held that LBF is subject to the Swiss laws governing the bankruptcy and liquidation of banks and securities dealers, which incorporate by reference the general provisions of the Swiss insolvency law.

[2]  *See* http://www.finma.ch/e/sanktionen/insolvenzen/pages/details.aspx?orgid=5.

6

on January 7, 2009 and in the Official Gazette on January 14. 2009.[3] The Notices are attached hereto as Exhibit A.

15. The Swiss Commission issued a certificate (the "Certificate") stating that the Swiss Bankruptcy has commenced, and that PwC has been appointed as the Bankruptcy Liquidator of LBF. The Certificate is attached hereto as Exhibit B.[4]

16. As further evidence of the Swiss Bankruptcy and the appointment of PwC as Bankruptcy Liquidator, a copy of the original German language version of the Commercial Register Entry is attached hereto as Exhibit C, and an English translation thereof is attached hereto as Exhibit D.

**C.    Swiss Governing Laws**

**Applicable Law**

17. The bankruptcy of a Swiss entity such as LBF is governed by the Swiss Governing Laws. In its September 30 Order, the Swiss Commission held that the Swiss Governing Laws apply to LBF.

**Process to Commence Bankruptcy**

18. The Swiss Commission may commence a Swiss bankruptcy proceeding against a financial intermediary having its domicile in Switzerland upon a finding by the Swiss Commission that there is no possibility of the restructuring of that intermediary. Based on the recommendation of PwC, as Liquidator of LBF, the Swiss Commission made such a finding and

---

[3] *See* https://www.shab.ch/DOWNLOADPART/N4652076/N2009.04820964.pdf

[4] While relevant portions of the September 30 Order, the October 29 Order and the December 19 Order have been summarized accurately herein, as a result of Swiss secrecy laws, these Orders are not publicly available and, accordingly, have not been filed with the Court. Evidence of the appointment of PwC and of the respective state of proceedings is demonstrated by the Certificate and the Commercial Register Entry.

7

commenced a Swiss bankruptcy proceeding against LBF pursuant to the Swiss Governing Laws (*Bankenkurs/Effektenhändlerkonkurs*, i.e. the Swiss Bankruptcy, as defined above).

19. Upon the commencement of such a Swiss bankruptcy proceeding regarding a bank or securities dealer, the Swiss Commission appoints a bankruptcy liquidator for the bankrupt company. In connection with the commencement of the Swiss Bankruptcy, the Swiss Commission appointed PwC as Bankruptcy Liquidator for LBF.

**Duties of the Bankruptcy Liquidator**

20. Pursuant to the October 29 Order, PwC as Liquidator took over most functions, and in particular, all operational functions, of LBF's board of directors. On December 22, 2008, which was the effective date of the December 19 Order, PwC became the Bankruptcy Liquidator of LBF. Thus, since October 29, 2008, by authority of the Swiss Commission, PwC has operated LBF to a large extent independently of prior management, and has been and remains obligated to protect the interests of LBF's creditors and equity holders. PwC is tasked with investigating LBF's affairs, preserving assets for the benefit of creditors and equity holders, and collecting receivables and liquidating the assets of LBF for the benefit of all creditors and equity holders. Among other things, the Swiss Commission may order protective measures for LBF pursuant to article 26, *et seq.*, of the Swiss Federal Act on Banks and Savings Banks. Although PwC's authority as Bankruptcy Liquidator is expressly provided for by Swiss law and the December 19 Order, only the Swiss Commission (and in certain instances, Swiss courts)[5] are empowered to issue any necessary orders in connection with the Swiss Bankruptcy.[6] The Bankruptcy

---

[5] *See, e.g.* the discussion in paragraphs 23, 27 and 32.

[6] As described above, the Bankruptcy Liquidator is not a court and cannot issue orders in connection with the Swiss Bankruptcy.

8

Liquidator remains subject to supervision by the Swiss Commission with respect to all actions to be taken in the course of the Swiss Bankruptcy.

21. By virtue of its appointment by the Swiss Commission, PwC, as Bankruptcy Liquidator for LBF, is responsible for, among other things:

   a. Notifying creditors identified in LBF's books and records of the Swiss Bankruptcy by special notice or by publication in the Official Gazette, and requesting that creditors file their claims not later than the set claims date;

   b. Notifying unknown obligees, and requesting that they file their claims, by publication in the Swiss Official Gazette of Commerce by the set claims date;

   c. Preparation of a schedule of claims based upon LBF's books and records and the claims filed by creditors and decision on the admission or the repudiation of such claims;

   d. Measures to secure the assets of LBF, notify debtors of LBF and holders of property of LBF to discharge such debts and return such assets to LBF, respectively, and preparing a respective inventory;

   e. Convening a meeting of creditors (if considered appropriate);

   f. Liquidation of assets;

   g. Representing LBF in all legal transactions connected with the Swiss Bankruptcy, including lawsuits, settlements and arbitrations;

   h. Management of LBF to the extent necessary in the Swiss Bankruptcy;

   i. Coordination with foreign authorities to the extent foreign proceedings are relevant for the Swiss Bankruptcy; and

   j. Preparation of the distribution list.

22. In order to fulfill its duties under Swiss law, PwC needs relief under chapter 15 to assist it in conducting an investigation and collection of LBF's U.S. assets. PwC also believes that the Swiss Bankruptcy can be completed most efficiently if PwC is entrusted with the

administration, realization and distribution of any such U.S. assets in accordance with the Swiss Bankruptcy.

**Judicial Supervision Over Swiss Bankruptcy Proceeding**

23.     Under the Swiss Governing Laws, most disputes regarding the Swiss Bankruptcy are resolved by the Swiss Commission, which supervises the bankruptcy liquidator, as mentioned above. Only disputes relating to matters such as the admission of claims of a creditor or the segregation of assets claimed to be owned by the creditor are to be filed with the competent Swiss bankruptcy courts at the place of the bankruptcy proceedings. In the case of LBF, these disputes would be filed with the Swiss bankruptcy courts in Zurich, Switzerland, and would be dealt with in the course of the Swiss Bankruptcy.

**Jurisdiction Over All Assets Wherever Located**

24.     A basic principle of the Swiss Governing Laws is that the bankruptcy liquidator is empowered to preserve, collect and liquidate all assets of the bankrupt company, wherever those assets may be located (so-called "principle of universality" of bankruptcy proceedings; art. 3 of the Swiss Commission's Ordinance on Bankruptcy of Banks and Securities Dealers). The general purpose of the Swiss Bankruptcy is (i) to protect the interests of all of LBF's creditors world-wide and in compliance with the principle of equal treatment which is fundamental to the Swiss Governing Laws and (ii) to prevent impairment of LBF's assets. Therefore, the Swiss Bankruptcy encompasses all the assets LBF owns worldwide, irrespective of whether they are located in Switzerland or abroad. Similarly, all creditors of LBF are entitled to file their claims in the Swiss Bankruptcy in the same way and, as a general rule, with the same privileges (principle of equal treatment; art. 3 para. 2 of the Swiss Commission's Ordinance on Bankruptcy of Banks and Securities Dealers).

25. PwC, in connection with its duties as Bankruptcy Liquidator, and with the assistance of this Court, wishes to engage in an investigation of LBF's U.S. assets and affairs, and, subject to the limitations of chapter 15, to be entrusted with administration and realization of such U.S. assets and distribution of their proceeds in a fair and equal manner to all of LBF's creditors, whether located in the United States or abroad.

**Effects of the Swiss Bankruptcy and Claims Process**

26. Immediately upon the opening of the Swiss Bankruptcy over LBF, LBF was no longer entitled to dispose of its assets. The Swiss Commission expressly stated in its December 19 Order that the Swiss Bankruptcy became effective as of December 22, 2009. The commencement of the Swiss Bankruptcy also has specific effects on LBF's assets and creditors worldwide. Among other things, property of LBF that is held by other parties must be turned over to PwC, and all debts owed to LBF must be discharged by payment into PwC's custody. Additionally, the Swiss Commission has established that all claims against LBF must be filed in the Swiss Bankruptcy by February 27, 2009 (the "Claims Date").[7] This bar date also applies for returning property of LBF as well as for discharging debts owed to LBF. Notice of the Claims Date was published on the Swiss Commission's website on January 7, 2009 and in the Official Gazette on January 14, 2009, and the Notices are attached hereto as Exhibit A. In addition, known creditors of LBF were notified of the Claims Date by letters transmitted by PwC, as Bankruptcy Liquidator. Finally, notice of the Claims Date has been posted on the website that

---

[7] Under Swiss law, claims properly filed with PwC on or before the Claims Date of February 27, 2009 shall be deemed timely filed for all purposes and shall not be charged any surplus expenses. (See also, paragraph 28 of this Joint Declaration for implication of late claim filing, including imposition of surplus expense). Moreover, claims that were filed during LBF's liquidation under the October 29 Order, prior to the commencement of the Swiss Bankruptcy, will be honored, if ascertained and admitted, and accounted for in the Swiss Bankruptcy.

11

PwC maintains specifically to provide current information regarding the Swiss Bankruptcy.[8]  For more on the notices provided to creditors, please see paragraphs 33 to 35 of this Joint Declaration.

27.  The Swiss Governing Laws, similar to the applicable provisions under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, contain provisions related to the filing and allowance of claims.  For the purpose of the schedule of claims, the claims which are inscribed in the books of account are deemed to have been registered. For claims which are not inscribed in the books of account, claims against LBF must be filed by the Claims Date.  Those creditors that are not reflected in LBF's books and records are deemed to have been given notice through the publication in the Official Gazette.[9]  The creditors can consult the schedule of claims to the extent that it is necessary for the protection of their creditor rights; in doing so, professional secrecy is to be preserved as far as possible.  If the creditor agrees with the information in the schedule of claims, there is no need to file a proof of claim.  If a creditor disagrees with the amount of the claim or its claim was not admitted to the schedule of claims, and wishes to contest the schedule of claims, it must timely file an action against the bankrupt estate before the competent Swiss bankruptcy courts at the place of the Swiss bankruptcy proceeding.  In the case of LBF, this would be with the Swiss bankruptcy courts in Zurich, Switzerland.

28.  Importantly, the Claims Date does not establish an absolute bar to claims against LBF. Rather, any creditor can file its claim against LBF until immediately prior to the

---

[8]  *See* http://www.pwc.ch/en/microsites/lehman_brothers_finance.html

[9]  As mentioned previously, PwC supplemented this published notice for unknown creditors with, among other things, notice posted on PwC's website for the LBF matter.  In addition, known creditors of LBF received a specific written notice from PwC.

termination of the Swiss Bankruptcy proceeding, which is the second to last step before deletion of LBF from the Commercial Register. The only effect of filing a claim after the Claims Date is that the creditor is required to bear any surplus expenses caused by the late filing. Indeed, the publicly announced deadline to file claims is organizational in nature, and is intended to ensure that any and all creditors are duly considered.

**Distribution of Assets and Equal Treatment of Creditors**

29.     The Swiss Governing Laws have priority and equality of distribution provisions, similar to those contained in the Bankruptcy Code. The bankruptcy liquidator of the bankrupt company liquidates the assets of the bankrupt company and, after all of the assets of the bankrupt company are liquidated and claims against the bankrupt company are determined, the proceeds of these assets are distributed to creditors of the bankrupt company according to a priority scheme.

30.     Under the Swiss Governing Laws, the priority scheme provides that the assets of the bankrupt company are distributed in three stages. First, the creditors of the bankruptcy estate (such as, *inter alia*, the obligations the bankruptcy estate incurred during insolvency proceedings, all costs for opening and conducting the banking insolvency proceedings) are paid and the secured creditors receive the proceeds from the realization of their collateral. Second, the first class claims, which consist of the claims of employees and pension funds, will be paid. Last, all remaining claims are satisfied to the extent possible, with payments amounting to an equitable distribution of the remaining assets of the LBF.

31.     As mentioned above, the Swiss Governing Laws provide that creditors with similarly situated claims receive the same treatment and do not favor or provide special treatment for creditors based in Switzerland.

32.  The Swiss Governing Laws are also similar to the U.S. law in that they allow for the avoidance of preferential or fraudulent transfers. In this regard, the bankruptcy liquidator evaluates whether any of the transactions between the bankrupt company and a creditor have been entered into or arose in such circumstance as to render it liable to be avoided or set aside as a transaction involving an undervaluation or a preference or as a transaction defrauding creditors or by virtue of analogous concepts under the law of the jurisdiction in which either of the parties is incorporated (including in particular the *actiones paulianae* pursuant to the Swiss Federal Debt Enforcement and Bankruptcy Act). The avoidance action is to be filed with the court at the respondent's place of domicile.  If the respondent is not domiciled in Switzerland, the action may be filed with the court at the place of bankruptcy.  PwC is evaluating whether any avoidable transactions of this type have occurred and believes that the Swiss Governing Laws will enable recovery of any property improperly transferred in connection with any such transactions, for the benefit of LBF's creditors.

**Disclosure to Creditors**

33.  As described above, notice of a Swiss bankruptcy is published in the Commercial Register and the Official Gazette, and is also documented on the website of the Swiss Commission.  As discussed above, all of the requisite notices were given with respect to LBF.

34.  In addition, in the case of LBF, known creditors of LBF also received a written notice from PwC, as Bankruptcy Liquidator, describing that the Swiss Commission converted the liquidation proceeding regarding LBF to the Swiss Bankruptcy proceeding, that PwC was appointed as Bankruptcy Liquidator and that claims (including valuations) should be filed by February 27, 2009, unless already filed under the former liquidation proceeding.  Such notice was sent in the week of January 26 to 30, 2009.

35.     In addition to these notices, creditors of the bankrupt company are kept advised of the progress of the liquidation of the company through a variety of other sources. Creditors of the bankrupt company are informed of developments and steps in the Swiss Bankruptcy that are important for them to preserve their rights vis-à-vis LBF, be it by individual letter or by publication in the Official Gazette, the Commercial Register and/or on the website of the Swiss Commission. In particular, the creditors can consult the schedule of claims to the extent that it is necessary for the protection of their rights as creditors. In addition to these publications on certain developments and steps, the Swiss Federal Banking Act stipulates that the Swiss Commission shall inform the creditors at least once per year on the status of the Swiss Bankruptcy in general.

**D.          The U.S. Chapter 11 Case**

36.     We are informed and believe that on October 3, 2008, the Chief Restructuring Officer of Holdings authorized Weil, Gotshal & Manges LLP ("WGM") to file a chapter 11 petition in the Bankruptcy Court on LBF's behalf (the "Chapter 11 Case"), under the name Lehman Brothers Finance SA.[10] Neither LBF's board of directors nor PwC, which pursuant to the earlier September 30 Order had been appointed Observer of LBF, with the right to approve such filing, approved the filing of the Chapter 11 Case.

37.     Given LBF's limited connections to the U.S., and the existence of the Swiss Bankruptcy, PwC believes that a chapter 15 case is the most efficient and appropriate vehicle to administer any assets LBF may have in the United States. In order to effect the chapter 15 case, PwC respectfully requests this Court to dismiss the Chapter 11 Case upon recognition of the

---

[10] The Chapter 11 Case is pending in this Court as Case No. 08-13887 (JMP).

15

Swiss Bankruptcy as a foreign main proceeding and of PwC as the foreign representative of LBF. Accordingly, PwC has filed contemporaneously herewith its Motion Pursuant to Section 305 of the Bankruptcy Code for an Order Dismissing Chapter 11 Case (the "Motion to Dismiss").

38. To date, the following adversary proceedings have been filed in the Chapter 11 Case: (i) Rye Select Broad Market XL Portfolio Limited v. Lehman Brothers Special Financing, Inc., *et al*, Adversary Proceeding No. 08-01624 (JMP) ("Rye I"); (ii) Rye Select Broad Market XL Portfolio Limited v. Lehman Brothers Special Financing, Inc., *et al*, Adversary Proceeding No. 08-01625 (JMP) ("Rye II"); and (iii) Kelly v. Lehman Brothers OTC Derivatives, Inc., *et al*, Adversary Proceeding No. 08-01621 (JMP) (the "Kelly Adversary"). All three adversary proceedings were filed on or about October 15, 2008, but PwC was not served with any of the complaints commencing such proceedings. The Rye I and Rye II proceedings have been voluntarily dismissed by the plaintiffs therein, effective December 19, 2008. The deadline to answer or otherwise respond to the complaint in the Kelly Adversary has been extended by consent of all parties to each complaint, while a settlement agreement is being negotiated and documented. In the Motion to Dismiss, PwC requests that, to the extent the Kelly Adversary remains pending upon dismissal of the Chapter 11 Case, the Kelly Adversary be transferred to this chapter 15 case.

16

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Zurich, Switzerland
February 10, 2009

      /s/ Pascal Portmann
Pascal Portmann, Partner
Certified Accountant

      /s/ Christiana Suhr Brunner
Christiana Suhr Brunner, Partner
Attorney-at-law

*In Their Capacities as Representatives of PricewaterhouseCoopers AG, Zurich, as Bankruptcy Liquidator of Lehman Brothers Finance AG, in Liquidation, a/k/a Lehman Brothers Finance SA, in Liquidation, and Not in Their Personal Capacities*

Sworn to this 10th day of February, 2009 before the undersigned who is duly authorized to witness and attest to the execution of documents of this nature in Switzerland.

[SEE ATTACHED]
Notary Public in and for Switzerland. My commission expires _____.

LBF -- PWC decl -- chapter 15 petition.doc

17

## Official Certification

Seen for authentication of the reverse side signatures, affixed in our presence by

Mr. **Louis Pascal PORTMANN**, Swiss citizen of Escholzmatt/LU, in Wallisellen, Switzerland, identified by identity card,

Ms. **Christiana Clara Hermine SUHR BRUNNER**, Swiss citizen of Luzern/LU, in Walchwil, Switzerland,
identified by passport,

who are entered in the Register of Commerce of the Kanton of Zürich as persons with the right to sign jointly by two for the

**PricewaterhouseCoopers AG**, corporation with registered head office in Zürich.

The inspection of the commercial register has taken place directly before the official certification by internet inquiry.

This legalization refers only to the authentication of the signature and not to the contents or validity of the document.

Zürich, 10 February 2009
BK no. 20674-83/ms
Fee CHF 50.00

NOTARIAT ZÜRICH (ALTSTADT)

B. Peter, Notariatssekretär mbA
mit Beglaubigungsbefugnis