## **<u>Exhibit C</u>**

**Engagement Letter**

DUFF & PHELPS, LLC ▪ 300 HEADQUARTERS PLAZA ▪ EAST TOWER, 12TH FLOOR ▪ MORRISTOWN, NJ 07960 ▪ TEL 973-775-8300 ▪ FAX 973-775-8304

**DUFF&PHELPS**

ALLEN M. PFEIFFER
*Managing Director*
TEL 973-775-8260
FAX 973-792-8956
allen.pfeiffer@duffandphelps.com

February 6, 2009

Anton R. Valukas, Esq.
Examiner to Lehman Brothers Holdings, Inc.
c/o Jenner & Block
330 N. Wabash Avenue
Chicago, IL  60611-7603

**Subject:**   **Letter of Engagement for Duff & Phelps, LLC**
**Dispute Consulting & Forensic Advisory Services**
**Financial Advisor to the Examiner for Lehman Brothers Holdings, Inc.,** *et al.*

Dear Mr. Valukas:

This Letter of Engagement confirms that, subject to approval of the Bankruptcy Court, we, Duff & Phelps, LLC ("D&P" or "we"), have been retained as of February 6, 2009, as a financial advisor to assist you in connection with your responsibilities as Examiner in the jointly administered bankruptcy cases of Lehman Brothers Holdings, Inc., *et al.* (such debtors, collectively, "Lehman"). Specifically, D&P has been retained to perform certain services described below in "Scope of Services."

**Scope of Services**

We understand that we are being retained to provide certain consulting services, including various financial analyses, for the above-referenced matter. D&P appreciates the opportunity to assist you in your responsibilities as Examiner for Lehman. We anticipate that our scope of services will be to advise and assist you as requested in your investigation of the following items:

- Whether Lehman Brothers Commercial Corporation ("LBCC") or any other entity that currently is a Lehman Brothers Holdings Inc. ("LBHI") chapter 11 debtor subsidiary or affiliate ("LBHI Affiliate(s)") has any administrative claims against LBHI resulting from LBHI's cash sweeps of cash balances, if any, from September 15, 2008, the commencement date of LBHI's chapter 11 case, through the date that such applicable LBHI affiliate commenced its chapter 11 case.

- All voluntary and involuntary transfers to, and transactions with, affiliates, insiders and creditors of LBCC or its affiliates, in respect of foreign exchange transactions and other assets that were in the possession or control of LBHI Affiliates at any time commencing on September 15, 2008 through the day that each LBHI Affiliate commenced its chapter 11 case.

Anton R. Valukas, Esq.
February 6, 2009
Page 2

- Whether any LBHI Affiliate has colorable claims against LBHI for potentially insider preferences arising under the Bankruptcy Code or state law.

- Whether any LBHI Affiliate has colorable claims against LBHI or any other entities for potentially voidable transfers or incurrences of debt, under the Bankruptcy Code or otherwise applicable law.

- Whether there are colorable claims for breach of fiduciary duties and/or aiding or abetting any such breaches against the officers and directors of LBCC and/or other Debtors arising in connection with the financial condition of the Lehman enterprise prior to the commencement of the LBHI chapter 11 case on September 15, 2008.

- Whether assets of any LBHI Affiliates (other than Lehman Brothers, Inc.) were transferred to Barclays Capital Inc. as a result of the sale to Barclays Capital Inc. that was approved by order of the Bankruptcy Court entered September 20, 2008, and whether consequences to any LBHI Affiliate as a result of the consummation of the transaction created colorable causes of action that inure to the benefit of the creditors of such LBHI subsidiary or affiliate.

- The inter-company accounts and transfers among LBHI and its direct and indirect subsidiaries, including but not limited to: LBI, LBIE, Lehman Brothers Special Finance ("LBSF") and LBCC, during the 30-day period preceding the commencement of the chapter 11 cases by each debtor on September 15, 2008 or thereafter or such longer period as the Examiner deems relevant to the Investigation.

- The transactions and transfers, including but not limited to the pledging or granting of collateral security interest among the debtors and the pre-chapter 11 lenders and/or financial participants including but not limited to, JPMorgan Chase, Citigroup, Inc., Bank of America, the Federal Reserve Bank of New York and others.

- The transfer of the capital stock of certain subsidiaries of LBI on or about September 19, 2008 to Lehman ALI Inc.

- The events that occurred from September 4, 2008 through September 15, 2008 or prior thereto that may have resulted in commencement of the LBHI chapter 11 case.

- Such investigation as may be specified in sections 1106(a)(3) and (4) of the Bankruptcy Code.

As used in this letter, the term "Services" shall include without limitation the above-described work. Please note that D&P is not rendering any legal advice in this matter, and all legal advice being provided to you shall be the sole responsibility of Jenner & Block.

The scope of the Services includes investigating, collecting and analyzing information, including but not limited to accounting records and other financial information, as well as performing various financial and accounting analyses, as needed and directed by you. However, our engagement does not include an audit in accordance with generally accepted auditing standards of existing business records.

The Services are subject to change as agreed by D&P and you. Any proposed change(s) to the Services shall be set forth in a letter or email communication. Upon written acknowledgement by the receiving

Anton R. Valukas, Esq.
February 6, 2009
Page 3

party, the proposed change(s), as thereby agreed, shall be deemed effective and made part of this Letter of Engagement.

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) or any report or deliverable contemplated by this communication, whether draft or final, is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**Confidentiality and Privilege**

Our work is intended for the use and benefit of you as Examiner for Lehman and your counsel and should not be used by any other party for any other purpose.

All information or documents (i) prepared or provided by D&P to you or your counsel, or (ii) prepared or provided by you or your counsel to D&P, in the course of this engagement constitute confidential communications protected from disclosure to third parties by the attorney-client privilege and constitute confidential work product protected from disclosure to third parties by the attorney work-product doctrine.

All documents, including but not limited to written reports, memoranda, financial analyses and summaries, that we prepare in connection with this engagement will be maintained in accordance with our retention procedures and shall be prominently labeled "Attorney Work Product; Privileged & Confidential."

**Staffing and Relevant Experience**

The Services will be performed under the overall supervision of Allen Pfeiffer, a Managing Director in our Morristown office. We will forward to you under separate cover a contact list of certain key D&P professionals who will assist in the performance of the engagement. Our team will include professionals with the skills and backgrounds appropriate for the services to be rendered.

**Fees and Expenses**

We will bill on a time and expense basis, with our fees determined by the hours actually expended by each assigned professional. We recognize the need to maximize cost efficiency, and therefore, we endeavor to utilize staff at the level commensurate to the particular task while maintaining our standard of high quality work product.

Our standard hourly billing rates, as well as the hourly billing rates for this engagement, which reflects a 10% discount to standard rates, are as follows:

Anton R. Valukas, Esq.
February 6, 2009
Page 4

| Level | Hourly Rate Standard | 10% Discount |
|---|---|---|
| Managing Director | $ 805 - $920 | $725 - $828 |
| Director | $ 720 - $865 | $648 - $779 |
| Vice President | $ 580 - $695 | $522 - $626 |
| Senior Associate | $ 435 - $525 | $392 - $473 |
| Analyst | $ 305 - $365 | $275 - $329 |
| Research Analyst | $195 - $195 | $176 - $176 |
| Administrative Staff | $120 - $120 | $108 - $108 |

If additional D&P professionals located outside the United States are required for us to perform the Services, the hourly rates for such non-U.S. D&P professionals will be the standard hourly rates in effect, less a 10% discount.

Our standard hourly rates will be adjusted effective March 1, 2009, and may periodically be adjusted thereafter. We will advise you promptly if a rate adjustment is being made by D&P. The rates being charged for this engagement will always be our standard hourly rates then in effect, less a 10% discount.

Our necessary and reasonable expenses will be billed in addition to our fees, including reimbursement for the reasonable fees and expenses of our outside counsel. We will discuss with you the impact on fees and expenses of any proposed changes to the Services.

We do not warrant or predict results in this matter, and our fees are not contingent upon any outcome arising out of the provision of the Services.

All of D&P's fees and expenses will be subject to Bankruptcy Court approval. As soon as practicable following the execution of this Agreement, you will, or will cause your counsel to, seek approval by the Bankruptcy Court of the engagement and compensation and reimbursement of expenses agreement described herein in accordance with section 327 of the Bankruptcy Code and other applicable law. You will, or will cause your counsel to, work with D&P to promptly file any and all necessary applications regarding the payment of fees and expenses due pursuant to this Agreement with the Bankruptcy Court.

**Terms and Conditions**

The attached Terms and Conditions set forth the rights and responsibilities of the parties with respect to the Services. By signing this Letter of Engagement, it is acknowledged that you understand and agree to the Terms and Conditions.

Anton R. Valukas, Esq.
February 6, 2009
Page 5

\* \* \* \* \*

D&P is committed to providing superior service to its clients. If you have any questions or require further information, please call me at 973-775-8260. If the scope and terms of this Letter of Engagement are acceptable, please acknowledge your acceptance by signing and returning a copy of this letter to me at Duff & Phelps, LLC, 300 Headquarters Plaza, East Tower, 12th Floor, Morristown, NJ 07960.

Yours sincerely,

*[signature]*

Allen M. Pfeiffer
Managing Director


**Confirmation of Letter of Engagement**

I declare that I have read, understand and, subject to the approval of the Bankruptcy Court, accept the Letter of Engagement, and Terms and Conditions attached thereto, dated February 6, 2009.

_____          Date: February 6, 2009
Signed:    Anton R. Valukas, Esq.
Title:     Examiner for Lehman Brothers Holdings Inc., *et al*

**Attachment to Anton R. Valukas Letter of Engagement dated February 6, 2009**

**Terms and Conditions**

The following are the terms and conditions (the "Terms and Conditions") on which we will provide the Services set forth in the attached Letter of Engagement. Together, the Terms and Conditions and the Letter of Engagement are referred to as the "Contract," which forms the entire agreement between D&P and you relating to the Services.

**General**

1. Any variation to this Contract, notwithstanding any variation to the Services specified in the Letter of Engagement, shall be set forth in a separate letter of engagement executed by both parties which will be made part of this Contract.

**Work Product and Property Rights**

2. There may be differences between draft and final work product. You acknowledge that reliance placed on drafts, whether oral or written, must be limited as they may be subject to revision, and other factors may render such drafts substantially different from any final work product issued.

3. Any advice given or work product issued by us is provided solely for your use and benefit in preparing and presenting to the Bankruptcy Court the Examiner's Report and only in connection with the Services.

4. You understand and agree that the final work product resulting from this engagement shall remain your property, except that we shall be entitled to retain one copy of such documents in order to maintain a professional record of our involvement.

5. To the extent that D&P utilizes any of its property (including, but not limited to, any hardware or software) in connection with this engagement, such property shall remain the property of D&P, and you shall not acquire any right or interest in such property. We shall have ownership (including, but not limited to, copyright ownership) and all rights to use and disclose our ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof, in conducting our business.

**Preservation of Confidential Information**

6. D&P recognizes that, pursuant to Section 5 of the Order Directing Appointment of an Examiner Pursuant to Section 1104(c)(2) of the Bankruptcy Code entered by the Bankruptcy Court on January 16, 2009, the Bankruptcy Court has ordered as follows: "Until the Examiner has filed his or her report, neither the Examiner nor the Examiner's representatives or agents shall make any public disclosures concerning the performance of the Investigation or the Examiner's duties except that the Examiner, in the exercise of his or her discretion and in compliance with this order may file public reports as to completed phases of the Investigation or the progress of the Investigation." In accordance with that Order, D&P will treat all information received in connection with the Investigation as confidential, except (x) as provided in sections 7, 8 and 9 hereof, (y) as otherwise provided by further Order of the Bankruptcy Court, or (z) pursuant to your express instructions or the express instructions of your counsel.

7. Section 6 will not apply to any information which (a) is or becomes generally available to the public other than as a result of a breach of an obligation by the receiving party; (b) is acquired from a third party who owes no obligation of confidence with respect to the information; or (c) is or has been independently developed by the recipient.

8. Notwithstanding the foregoing, D&P will be entitled to disclose Confidential information (a) to D&P's insurers or legal advisors, and (b) to a third party to the extent required by any court of competent jurisdiction, or by a governmental, administrative or regulatory authority, or where there is a legal right, duty or requirement to disclose, provided that, where reasonably practicable, and without breaching any legal or regulatory requirement, not less than two (2) business days notice in writing is first given to you.

9. Further, D&P agrees to notify you upon receipt of an administrative request for information, subpoena or other legal process pertaining to the Services performed hereunder or the results thereof, and shall resist such information request, subpoena or other legal process if you so direct.

**Termination**

10. Either party may terminate this Contract in the event that the other party has breached any material provision thereof and such breach has not been cured within ten (10) business days after receipt of written notice from the then non-breaching party.

11. Upon termination of this Contract for any reason and subject to any applicable order of the Bankruptcy Court, each party shall, upon written request from the other, return to the other all property and documentation of the other in its possession, except that we shall be entitled to retain one copy of such documents in order to maintain a professional record of our involvement.

12. If this Contract is terminated in accordance with paragraph 10, all of the Terms and Conditions set forth herein shall survive such termination.

**Limitation on Liability; Indemnification; Other Terms and Provisions**

13. Except in the event of our gross negligence, willful misconduct or fraud, in no event shall we be liable to you (or any person claiming through you), under any legal theory, for any amount in excess of the total professional fees paid by you to us under this Contract or any addendum to which the claim relates. In no event shall we be liable to you under this Letter of Engagement under any legal theory or for any consequential, indirect, lost profit or similar damages relating to or arising from the Services provided under this Contract.

14. D&P and its affiliates, and their respective past, present and future directors, officers, shareholders, employees, agents and controlling persons, shall be indemnified and held harmless by Lehman to the fullest extent of the law, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to this Contract, any actions taken or omitted to be taken by an indemnified party in connection with D&P's provision of services to the Examiner, or any transaction or proposed transaction contemplated thereby. In addition, indemnified parties shall be reimbursed for any legal or other expenses reasonably incurred by them in respect thereof at the time such expenses are incurred; provided, however, Lehman shall have no liability under the foregoing indemnity and reimbursement agreement for any loss, claim, damage or liability which is finally judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of any indemnified party.

15. You accept and acknowledge that we have not made any warranties or guarantees, whether express or implied, with respect to the Services or any outcome that may be obtained as a result of the provision of the Services.

16. Except for the payment obligations of Lehman, neither of us will be liable to the other for any delay or failure to fulfill obligations caused by circumstances outside our reasonable control.

17. We reserve the right to use your name and a description of the nature of the Services in general marketing materials.

18. This Contract shall be governed by and interpreted in accordance with the laws of the State of New York.