UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

LEHMAN BROTHERS HOLDINGS, INC.,

                Debtor.

Chapter 11
Case No. 08-13555 (JMP)

-----------------------------------------------------------------x
In re:

LEHMAN BROTHERS, INC.,

                Debtor.

Case No. 08-01420 (JMP) (SIPA)

-----------------------------------------------------------------x
MAXIMILIAN CORETH,

                Plaintiff,

V.

BARCLAYS CAPITAL INC.,

                Defendant

**ADVERSARY COMPLAINT**

ADV. PRO. 09-_____ (JMP)

-----------------------------------------------------------------x

      Plaintiff, MAXIMILIAN CORETH, by his attorneys, Eaton & Van Winkle LLP, as and for his Complaint against BARCLAYS CAPITAL INC. (hereinafter "Barclays"), alleges on knowledge as to his own acts and otherwise upon information and belief as follows:

## NATURE OF THE ACTION

    1.    In April 2008, plaintiff Coreth was induced by Lehman Brothers, Inc. (hereinafter, "LBI") to leave his position as a highly successful Managing Director of Morgan Stanley in order to become a Managing Director of LBI.

2. LBI thereupon, on April 17, 2008, entered into an employment agreement with plaintiff Coreth which provided, <u>inter alia</u>, that in the event plaintiff Coreth's employment was terminated without cause before February of 2009, plaintiff Coreth would receive, by way of severance, payments in the total amount of $19.6 million.

3. As set forth below, that severance obligation to plaintiff Coreth was included in approximately $2.5 billion of severance exposure to LBI employees that Barclays expressly assumed in the sale of LBI's business to Barclays. However, Barclays has repudiated its obligation to pay such monies to plaintiff Coreth, thereby contributing, upon information and belief, to a recently reported gain to Barclays of 2.26 billion Pounds Sterling (approximately $3.4 Billion) from Barclays purchase of LBI's business. Plaintiff Coreth has a contingent claim against the LBI estate, which will be eliminated if Barclays meets its severance obligation to plaintiff Coreth.

4. Plaintiff Coreth's employment was transferred from LBI to Barclays pursuant to that certain Purchase Agreement, dated as of September 16, 2008 (the "Purchase Agreement") between Debtor LBI and Barclays, which was approved by the Bankruptcy Court on September 19, 2008.

5. Barclays thereafter confirmed that it was offering plaintiff Coreth such employment pursuant to the transaction approved by the Bankruptcy Court, and plaintiff Coreth accepted Barclays' offer of such employment. However, on or about October 14, 2008, Barclays apparently reversed its decision and terminated plaintiff Coreth's employment without cause.

6. Plaintiff Coreth brings this action to recover from Barclays those severance payments in the amount set forth in plaintiff Coreth's written agreement with LBI as in effect immediately prior to the closing of the Purchase Agreement ($19.6 million), together with plaintiff Coreth's attorney's fees, and his costs and disbursements in this action.

7. As set forth more fully below, Barclays expressly agreed in the Purchase Agreement with Debtor LBI to assume the obligation to make such severance payments to plaintiff Coreth if Barclays employed him and terminated such employment before December 31, 2008. Barclays further joined with LBI and with the Debtors in the Chapter 11 proceedings of Lehman Brothers Holdings Inc. ("LBHI"), *et al.* in obtaining orders from the Bankruptcy Court that (a) approved the sale of LBI's North American broker/dealer business to Barclays, (b) expressly recognized Barclays' assumption of liabilities under the Purchase Agreement, (c) provided that such sale and the Purchase Agreement would inure to the benefit, inter alia, of LBI's creditors and its estate, and (d) retained jurisdiction in the Bankruptcy Court with respect to such orders approving the sale transaction and their implementation.

8. Plaintiff Coreth's employment was duly transferred from LBI to Barclays in accordance with the Purchase Agreement and the aforementioned Bankruptcy Court orders. Barclays confirmed its obligation to plaintiff Coreth by explicitly offering him employment with Barclays on or about September 22, 2008, which employment plaintiff Coreth thereafter accepted. Subsequent thereto, on or about October 14, 2008 (well before December 31, 2008), Barclays terminated plaintiff Coreth's employment without cause. However, rather than pay plaintiff Coreth severance in the amount set forth in

3

his agreement with LBI ($19.6 million), Barclays offered plaintiff Coreth only approximately one tenth of that amount ($1,960,000), demanding that, in order to receive such payment, plaintiff Coreth would have to sign a waiver and general release, relinquishing his clear right and entitlement to the remaining severance payments due to plaintiff Coreth from Barclays.

9.   Plaintiff Coreth (a) refused Barclays' unwarranted demand, (b) has filed a contingent claim in LBI's SIPA proceeding in the amount of $19.6 million (stating that the LBI estate is only liable to plaintiff Coreth in respect of such claim if and to the extent that Barclays fails to meet its obligation to pay plaintiff Coreth the full $19.6 million severance liability that Barclays assumed under the Purchase Agreement), and (c) now commences this proceeding against Barclays in accordance with the Purchase Agreement and the referenced orders of the Bankruptcy Court.

10.   Barclays recently announced earnings of 2.6 billion Pounds Sterling (approximately $3.9 Billion) in the six months ending December 31, 2008, which earnings were reportedly enlarged by a $2.26 billion pound (approximately $3.4 billion) gain from Barclays' acquisition of LBI's business. Upon information and belief, that reported gain includes the $19.6 million in severance payments due from Barlcays to plaintiff Coreth (as to which Barclays has offered plaintiff Coreth only approximately 1/10 of the amount owed).

## JURISDICTION AND VENUE

11.   This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334 and 1367.

12. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O), and also a "related" matter pursuant to 28 U.S.C. §152(b)(3).

13. Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

## THE PARTIES

14. Plaintiff Coreth is a resident of the State of New York who commenced employment with LBI as a Managing Director in the Spring of 2008, pursuant to an agreement dated April 2, 2008 (revised April 17, 2008), a copy of which is annexed hereto as Exhibit A (the "Employment and Severance Agreement").

15. Defendant, Barclays, is a Corporation organized and existing under the laws of the State of Connecticut. As set forth below, plaintiff Coreth's employment at LBI was transferred to Barclays in accordance with the Purchase Agreement and orders of the Bankruptcy Court.

16. LBHI is a Delaware Corporation that maintained and operated its corporate headquarters in New York, New York. On or about September 15, 2008, LBHI and related entities (collectively, with LBHI, the "LBHI Debtors") filed a voluntary petition in the Bankruptcy Court for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code.

17. LBI is a Delaware Corporation that maintained and operated its corporate headquarters in New York, New York, and is a subsidiary of LBHI. On or about September 19, 2008, the Securities Investor Protection Corporation commenced the LBI SIPA Proceeding for the liquidation of LBI's assets in the United States District Court for

the Southern District of New York, and such SIPA proceeding was removed to the United States Bankruptcy Court.

## THE FACTS

18. Plaintiff Coreth's Employment and Severance Agreement with LBI provided that plaintiff Coreth would receive two guaranteed payments of $9.8 million each, for a total of $19.6 million (collectively, the "Severance Amount) in the event that plaintiff Coreth's employment with LBI were to end for any reason other than a voluntary resignation or a termination for "Cause" before February of 2009 (Exhibit A).

19. Plaintiff Coreth was induced, inter alia, by the promise of the Severance Payment to leave his position as a highly successful Managing Director of Morgan Stanley and to commence his employment with LBI in or about the spring of 2008.

20. Within days after the filing of the LBHI Chapter 11 Bankruptcy Case on September 15, 2008, the LBHI Debtors, LBI and Barclays entered into the Purchase Agreement, dated as of September 16, 2008, for the sale of LBI's operations to Barclays, and presented that agreement to the Bankruptcy Court for approval. A copy of the Purchase Agreement, together with the amendments thereto, is annexed hereto as Exhibit B.

21. Pursuant to the Purchase Agreement, Barclays expressly agreed, inter alia:

(a) that Barclays would continue to employ or offer employment to "Transferred Employees," which came to include plaintiff Coreth (Exhibit B, Section 9.1(a));

(b) that if plaintiff Coreth's employment were terminated by Barclays before December 31, 2008 without cause by reason of a "reduction in force" or a "job elimination," then, "[w]ithout limiting any additional rights" that plaintiff Coreth might have, Barclays would provide plaintiff Coreth with "severance payments and benefits at levels that [would be] no less favorable than such levels as [plaintiff Coreth] would have been entitled to receive pursuant to the provisions of [LBI's] severance plans <u>or agreements covering</u> [plaintiff Coreth] as in effect immediately prior to" such closing (Exhibit B, Section 9.1(b), <u>emphasis supplied</u>) -- <u>to wit</u>, the $19.6 million Severance Amount provided for under plaintiff Coreth's agreement with LBI) ; and

(c) that pursuant to Section 2.3 of the Purchase Agreement, Barclays would "assume, effective as of the Closing, and...timely perform and discharge in accordance with [their] terms...(c) all Liabilities assumed under <u>Article IX</u>" (including the above-referenced obligation to pay plaintiff Coreth the $19.6 million Severance Amount upon the termination of plaintiff Coreth's employment without cause).

22.    In seeking approval from the Bankruptcy Court of the Purchase Agreement and the sale to Barclays, the proponents of the sale represented to the Court that (a) the LBI employees who would be transferred to Barclays were parties-in-interest as to whom Barclays was assuming a severance exposure estimated to be up to approximately $2.5 billion (which monies the Bankruptcy Court was urged to view as a portion of the notional value of the sale transaction), (b) a central purpose of the sale transaction was to continue LBI's business for the benefit of such employees, among others, (c) Barclays (and not the Debtors) would be liable to pay the referenced severance obligations to LBI employees, such as plaintiff Coreth, who accepted

7

employment with Barclays and were terminated before December 31, 2008, and (d) in this manner, the Debtors' estates would avoid paying claims to employees whose employment would otherwise have been terminated in a liquidation of LBI.

23. By order dated September 19, 2008 in the LBHI Chapter 11 Case, a copy of which is annexed hereto as Exhibit C (the "Sale Order"), the Court approved the Purchase Agreement and the sale to Barclays. In that order, the Court, inter alia, (a) recognized Barclays' assumption of liabilities under the Purchase Agreement (see Exhibit C, ¶ S, pg. 9), (b) provided that such sale and the Purchase Agreement would inure to the benefit, inter alia, of the Debtors' creditors and estates (ibid ¶16, pg. 18), and (c) retained jurisdiction in the Bankruptcy Court with respect to the Sale Order and its implementation (ibid ¶20, pg. 19).

24. By further order dated September 19, 2008 in the LBI SIPA Proceeding, a copy of which is annexed hereto as Exhibit D, the Court made the Sale Order and the Purchase Agreement equally applicable to the parties in interest in the SIPA Proceeding.

CLAIM FOR RELIEF
(Breach of Contract)

25  Plaintiff Coreth repeats and realleges each of the allegations in paragraphs 1 through 24 hereof as if fully set forth herein.

26. Plaintiff Coreth's employment was duly transferred from LBI to Barclays in accordance with the Purchase Agreement, the aforementioned Bankruptcy Court orders, and an offer of employment from Barclays to plaintiff Coreth dated September 22, 2008, a copy of which is annexed hereto as Exhibit E. However, by letter to plaintiff

8

Coreth, dated October 14, 2008, a copy of which is annexed hereto as Exhibit F, Barclays repudiated its severance obligations to plaintiff Coreth.

27.     Specifically, Barclays announced its intention to terminate plaintiff Coreth's employment, but to pay him severance in the amount of $1,960,000 (Exhibit F, ¶3), which was only approximately one tenth of the $19.6 million Severance Amount set forth in Plaintiff's Employment Agreement with LBI, and thus approximately one tenth of the severance obligation that Barclays had expressly assumed with respect to plaintiff Coreth in accordance with the Purchase Agreement and the orders of the Court.

28.     Barclays' breaches of its contractual obligations to plaintiff Coreth were wanton and willful as shown, inter alia, by the fact that Barclays demanded that, in order for plaintiff Coreth to receive this lesser sum, he would have to sign a waiver and general release, relinquishing his right and entitlement to any other monies from Barclays (necessarily including the remaining severance that Barclays was obligated to pay to plaintiff Coreth in the amount of approximately $17.7 million). (See Exhibit F, ¶¶ 3 and 10). By reason of this unwarranted demand for such a release, Barclays forced plaintiff Coreth to bring this proceeding not only to obtain the monies owed to him by Barclays but to preserve his right to such monies.

29.     By reason of such breaches of contract by Barclays, plaintiff Coreth has sustained actual damages in an amount believed to be not less than $19.6 million, together with plaintiff Coreth's attorney's fees, and his costs and disbursements in this action, all of which are recoverable either as actual damages or as punitive damages.

30. As aforesaid, plaintiff Coreth has filed a proof of claim in the SIPA proceeding which includes a contingent claim in the amount of $19.6 million (a copy of which is annexed hereto as Exhibit G). The LBI estate is liable to plaintiff Coreth in respect of that contingent claim only if and to the extent that Barclays fails to meet its obligation to pay plaintiff Coreth the full $19.6 million severance liability that Barclays assumed under the Purchase Agreement.

**WHEREFORE,** plaintiff Coreth demands judgment against Barclays:

(a) awarding to plaintiff Coreth damages in an amount to be determined at trial but believed to be not less than $19.6 million;

(b) awarding to plaintiff Coreth his attorney's fees, and his costs and disbursements in this action, either as actual damages or as punitive damages; and

(c) granting to plaintiff Coreth such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 12, 2009

**EATON & VAN WINKLE LLP**

By: /s/ Robert K. Gross
    Robert K. Gross
    George P. Birnbaum
3 Park Avenue
New York, New York 10016
Telephone: (212) 779-9910
Facsimile: (212) 779-9928

*Attorneys for Plaintiff, Maximilian Coreth*