Hearing Date: February 17, 2009 at 10:00 a.m.

Dennis F. Dunne
Dennis C. O'Donnell
Evan R. Fleck
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : | 08-13555 (JMP) |
| Debtors. | : | (Jointly Administered) |

**STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
IN SUPPORT OF (I) LBHI'S MOTION, PURSUANT TO SECTIONS 105(a)
AND 363 OF THE BANKRUPTCY CODE, FOR AUTHORIZATION TO
FUND A CAPITAL CONTRIBUTION TO WOODLANDS COMMERCIAL BANK;
AND (II) LBHI'S MOTION, PURSUANT TO SECTIONS 105(A) AND 363 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 9019 AND 6004, FOR
AUTHORIZATION TO INCREASE THE CAPITAL LEVEL OF LEHMAN
BROTHERS BANK, FSB THROUGH (I) THE SETTLEMENT OF PENDING
DISPUTES AND (II) DIRECT CAPITAL CONTRIBUTION OF UP TO $15 MILLION**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated chapter 11 debtors, as debtors in possession (collectively, the "Debtors"), hereby files this statement (the "Statement") in support of (i) LBHI's Motion, Pursuant to Sections 105(a) and 363 of the Bankruptcy Code, For Authorization to Fund a Capital Contribution to Woodlands Commercial Bank (the "Woodlands Capital Motion") [Docket No. 2742]; and (ii) LBHI's Motion, Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 9019 and 6004, for

Authorization to Increase the Capital Level of Lehman Brothers Bank, FSB Through (i) the Settlement of Pending Disputes and (ii) a Direct Capital Contribution of Up to $15 Million, dated February 11, 2009 (the "FSB Capital Motion") [Docket No. 2800]. In support of the Woodlands and FSB Capital Motions, the Committee respectfully states as follows:

## BACKGROUND

**A.    Woodlands Commercial Bank**

1. Woodlands Commercial Bank ("Woodlands"), formerly known as Lehman Brothers Commercial Bank, is a Utah chartered industrial bank with operations in Salt Lake City, Utah. It is a wholly-owned indirect subsidiary of LBHI, but is independently controlled by an external board of trustees. Woodlands is subject to the regulatory authority of the Federal Deposit Insurance Corporation (the "FDIC") and the Department of Financial Institutions of the State of Utah (together with the FDIC, the "Regulators").

2. The Regulators require Woodlands to maintain a total risk-based capital ratio (as determined under applicable regulations, the "Capital Ratio") of at least 8% (an "Adequate Level"). As of September 30, 2008, Woodlands was considered more than adequately capitalized, with a Capital Ratio of 10.81%. However, due a failure by Lehman Brothers Inc. to deliver certain municipal securities purchased by Woodlands for $534 million (the "Municipal Bonds") and declining values of Woodland's commercial loan assets in the current economic climate under fair market accounting principles, Woodlands's Capital Ratio currently is, according to Woodlands' most recent call report, 5.4%.

3. On January 30, 2009, the FDIC presented Woodlands with a cease and desist order (the "C&D Order") requiring, among other things, that, by February 20, 2009, Woodlands obtain a capital infusion sufficient to raise its Capital Ratio to an Adequate Level and

2

adopt a plan (the "Woodlands Capital Plan") for maintaining such Adequate Level.  Woodlands and LBHI believe that a failure by Woodlands to obtain such capital infusions and adopt such a plan by February 20, 2009 will result in the FDIC seizing and liquidating Woodlands.

4. The Woodlands Capital Motion seeks authority to fund capital contributions to Woodlands of that amount necessary to raise Woodland's Capital Ratio to an Adequate Level (but limited to $272 million) (the "Woodlands Capital Contributions") in order to assure the Regulators that Woodlands will be able to maintain such level, and thereby prevent appointment of a receiver for the bank.  The Woodlands Capital Contributions would consist of an initial contribution, which shall not exceed $200 million, and a commitment to fund up to $72 million in additional contributions as required by Woodlands to maintain an Adequate Level.

5. In exchange for the Woodlands Capital Contributions, LBHI would receive a right of first recovery (the "Municipal Bonds Participation") from any amounts recouped in connection with the Municipal Bonds, up to the amount of the Woodlands Capital Contributions.  In addition, Woodlands and LBHI would work together to eliminate Woodlands's participation in unfunded loan commitments of other LBHI subsidiaries and the Woodlands's other unfunded loan commitments.

**B.    Lehman Brothers Bank, FSB**

6. Lehman Brothers Bank, FSB ("FSB," and together with Woodlands, the "Banks") operates as the centerpiece of the Debtors' multi-asset loan origination, purchasing and servicing business.  Primarily through Aurora Loan Services, LLC ("Aurora"), FSB's wholly owned subsidiary, FSB conducts the ninth largest residential mortgage loan servicing operation in the U.S., servicing over $116 billion in outstanding principal amount of mortgage loans.

3

7. Prior to the commencement of these chapter 11 cases on September 15, 2008 (the "Commencement Date"), it was the long-standing practice between Aurora and LBHI for Aurora to pay a monthly fee (the "Excess Servicing Fee") to LBHI as compensation for appointment of Aurora as servicer of certain loans. In addition, Aurora services certain residential mortgage loans pursuant to servicing rights that LBHI purchased from a third party, Residential Funding Company, LLC (the "RFC Servicing Rights"). Since the Commencement Date, payment of the Excess Servicing Fees have become the subject of a dispute between Aurora and LBHI and Aurora has discontinued payment for the Excess Servicing Fees. Aurora currently holds approximately $73 million, based on Aurora's calculation of the Excess Servicing Fees for the months of August through December 2008, and will hold additional amounts with respect to January and February 2009, which are expected to total approximately $28 million. The RFC Servicing Rights have a value of approximately $89 million.

8. FSB is a federally chartered thrift institution subject to the regulatory authority of the Office of Thrift Supervision (the "OTS") and its deposits are insured by the FDIC. Like Woodlands, FSB is required to maintain sufficient capital levels to satisfy the risk-based capital requirements in order to continue normal operations. If FSB is not adequately capitalized, the OTS and FDIC may take further actions to restrict or control FSB's activities, including to appoint the FDIC as a receiver and to seize and liquidate FSB's assets.

9. On December 31, 2008, LBHI's equity in FSB was reported at approximately $467 million which is approximately $180 million below the level considered "adequately capitalized," under applicable regulatory requirements.

10. On February 4, 2009, the OTS issued a Prompt Corrective Action directive (the "PCA Directive"), requiring FSB to submit a capital restoration plan (the "FSB

4

Capital Plan") demonstrating how FSB will achieve adequate capital levels required under the applicable regulations by February 28, 2009

11. LBHI seeks to increase FSB's capital through (i) entry into a settlement agreement with FSB and Aurora (the "FSB Settlement"), pursuant to which LBHI will convey to Aurora ownership of the RFC Servicing Rights and the Excess Servicing Fees; and (ii) allowing a cash capital contribution to FSB of up to $15 million (the "FSB Capital Contribution," and together with the Woodlands Capital Contributions, the "Capital Contributions"). The FSB Settlement would allow LBHI to immediately realize the value at issue in its disputed claims with Aurora, by reinvesting that value into FSB for the benefit of LBHI's creditors because the contribution of approximately $189 million would allow FSB to remain adequately capitalized.

## STATEMENT

12. The Committee concurs in LBHI's view that it is imperative that the relief requested in the Woodlands and the FSB Capital Motions be granted. Having spent several months working with LBHI and its advisors to evaluate the condition of both institutions, the Committee and its advisors have concluded that, while nothing is guaranteed in the current economic climate, it is more likely than not that making the Capital Contributions and consummating the FSB Settlement will preserve substantial value for the LBHI estate.

13. The Committee's advisors played a significant role in the process that led to the filing of the Woodlands and FSB Capital Motions. They had access to Banks' records and personnel, analyzed and suggested ways to optimize their assets and liabilities, and worked closely with the Banks' advisors to evaluate all available options. They also participated in meetings and calls with regulators, commented on the C&D Order and other relevant correspondence, and have been assured that they will have an ongoing role in the continuing negotiations regarding the Woodlands and FSB Capital Plans. Based upon all the foregoing, the

5

Committee has come to believe that (i) there may be substantial value in the Banks; and (ii) the preservation of such value is in the best interests of the LBHI estate and its creditors.

14. By all accounts, Woodlands is potentially a valuable asset of LBHI. As of September 30, 2008, the reported value of LBHI's equity interest in the bank was $1 billion. While this value has been depressed by the loss of the Municipal Bonds and other factors, the Committee believes that the going concern value of Woodlands may be significantly higher than reflected in its balance sheet under current economic conditions, and that LBHI's failure to fund the Woodlands Capital Contributions would put this value at risk. The Committee is also guardedly optimistic that the Municipal Bond Participation will ultimately bring back into the LBHI estate some portion of the Woodlands Capital Contributions.

15. The Committee also believes that failure to bring FSB's capital level into regulatory compliance risks the value of FSB. As of December 31, 2008, LBHI had equity in FSB in the amount of $467 million, and FSB had a significant going concern value as a result of its central role in LBHI's loan origination, purchasing and servicing businesses. Failure to comply with the PCA Directive could result in the seizure of FSB by the OTS and the liquidation of its assets at "fire sale" prices. Additionally, failure to adequately capitalize FSB could result in the arguable accrual of substantial claims against FSB in favor of the OTS and seizure of Woodlands pursuant to statutory cross-liability provisions.[1] Thus, the Committee agrees with LBHI that the FSB Settlement Agreement appears to be a small price to pay for the benefit of preserving the value of both FSB and Woodlands.

16. Under ideal circumstances, the Committee would have preferred that an investment of this magnitude have been accompanied by concessions of a kind not permitted by

---

[1] The Committee expressly reserves any and all defenses to such claims, and nothing in this Statement should be construed as a recognition of their validity.

6

the regulatory overlay and more concrete assurances of ultimate success and benefit to the LBHI estate.  In the absence of such concessions and assurances, the Woodlands and FSB Motions have presented the Committee with the difficult question of whether the LBHI estate should inject substantial additional funds into a situation fraught with economic uncertainty and regulatory complexity.  In the diligent exercise of its fiduciary duties to all creditors, the Committee has concluded that, on balance, the consequences of doing nothing are more dire than those of making the Capital Contributions and entering into the FSB Settlement.  This Court should do the same.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Committee respectfully requests that the Court grant (i) the relief requested in the Woodlands Capital Motion; (ii) the relief requested in the FSB Capital Motion; and (iii) such other relief as is just and proper.

Dated:  New York, New York
        February 16, 2009

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By: /s/ Dennis F. Dunne
    Dennis F. Dunne
    Dennis C. O'Donnell
    Evan R. Fleck

    1 Chase Manhattan Plaza
    New York, New York 10005
    Telephone:  (212) 530-5000

    Counsel for Official Committee of Unsecured
    Creditors of Lehman Brothers Holdings Inc., et al.