**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
                                                                        :
In re                                                                   :  Chapter 11
                                                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,                                  :  Case No. 08-13555 (JMP)
                                                                        :
                              Debtors.                                  :  (Jointly Administered)
------------------------------------------------------------------------x

**ORDER APPROVING THE PRELIMINARY**
**WORK PLAN OF ANTON R. VALUKAS, EXAMINER**

Upon the submission of a proposed Preliminary Work Plan (the "Work Plan") by Anton R. Valukas, the examiner (the "Examiner") appointed for Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, pursuant to paragraphs 11 and 12 of the Order Directing Appointment of an Examiner Pursuant to Section 1104(c)(2) of the Bankruptcy Code [Docket #2569] (the "Examiner Order"); the Court having reviewed the Work Plan, the accompanying correspondence from the Examiner's counsel, and all other statements and documents submitted and presented in connection therewith; the Court having heard and considered the parties' statements with respect to any disagreements regarding the Work Plan; the Court being satisfied based on the statements made by the Examiner and other parties on the record on February 11, 2009 that (i) the Work Plan sets forth a reasonable basis for the Examiner to start his investigation, (ii) the Examiner will exercise appropriate discretion regarding what information may be shared with interested parties but that the Examiner is not required to share information with parties who are the subject of the investigation, (iii) the parties should proceed in the spirit of cooperation, (iv) the Work Plan is a work in process that may be modified in the future as appropriate on proper application but it is necessary now to commence the examination process, and (v) that adequate notice of the Work Plan has been provided to parties in interest

pursuant to the Examiner Order; the Court finding that no other or further notice of the Work Plan need be provided; and all objections to the Work Plan being overruled, and after due deliberation and sufficient cause appearing therefor; it is hereby

ORDERED that the Work Plan is approved in the form attached hereto as <u>Exhibit A</u>.

Dated: February 17, 2009
      New York, New York

                                       */s/ James M. Peck*_____
                                       UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

**PRELIMINARY WORK PLAN OF ANTON R. VALUKAS, EXAMINER**

JENNER & BLOCK LLP

919 Third Avenue, 37th Floor

New York, New York 10022-3908

Telephone: (212) 891-1600

Facsimile: (212) 891-1699

Patrick J. Trostle

330 North Wabash Avenue

Chicago, Illinois 60611-7603

Telephone: (312) 222-9350

Facsimile: (312) 527-0484

Robert L. Byman (Admitted *Pro Hac Vice*)

Daniel R. Murray (Admitted *Pro Hac Vice*)

Proposed Attorneys for the Examiner

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : | Case No. 08-13555 (JMP) |
| Debtors. | : | (Jointly Administered) |

**PRELIMINARY WORK PLAN OF**
**ANTON R. VALUKAS, EXAMINER**

Anton R. Valukas, the court-appointed Examiner, by his proposed undersigned counsel, hereby submits his preliminary work plan in accordance with the requirements set forth in the Court's Order Directing Appointment of an Examiner Pursuant to Section 1104(c)(2) of the Bankruptcy Code, entered January 16, 2009 (the "Examiner Order").

## Introduction

1.  On January 16, 2009, the Court entered the Examiner Order directing the U.S. Trustee (the "U.S. Trustee") to appoint an examiner (the "Examiner") in the above-captioned Chapter 11 cases as soon as practicable. Examiner Order at ¶ 1 [Docket # 2569].

2.  The Examiner Order directs the Examiner to investigate:

    a.  Whether Lehman Brothers Commercial Corporation ("LBCC") or any other entity that currently is a Lehman Brothers Holdings, Inc. ("LBHI") chapter 11 debtor subsidiary or affiliate ("LBHI Affiliate(s)") has any administrative claims against LBHI resulting from LBHI's cash sweeps of cash balances, if any, from September 15, 2008, the commencement date of LBHI's chapter 11 case, through the date that such applicable LBHI affiliate commenced its chapter 11 case.

    b.  All voluntary and involuntary transfers to, and transactions with, affiliates, insiders and creditors of LBCC or its affiliates, in respect of foreign exchange transactions and other assets that were in the possession or control of LBHI Affiliates at any time commencing on September 15, 2008 through the day that each LBHI Affiliate commenced its chapter 11 case.

    c.  Whether any LBHI Affiliate has colorable claims against LBHI for potentially insider preferences arising under the Bankruptcy Code or state law.

    d.  Whether any LBHI Affiliate has colorable claims against LBHI or any other entities for potentially voidable transfers or incurrences of debt, under the Bankruptcy Code or otherwise applicable law.

    e.  Whether there are colorable claims for breach of fiduciary duties and/or aiding or abetting any such breaches against the officers and directors of LBCC and/or other Debtors arising in connection with the financial condition of the

2

     Lehman enterprise prior to the commencement of the LBHI chapter 11 case on September 15, 2008.

  f. Whether assets of any LBHI Affiliates (other than Lehman Brothers, Inc.) were transferred to Barclays Capital Inc. as a result of the sale to Barclays Capital Inc. that was approved by order of the Bankruptcy Court entered September 20, 2008, and whether consequences to any LBHI Affiliate as a result of the consummation of the transaction created colorable causes of action that inure to the benefit of the creditors of such LBHI subsidiary or affiliate.

  g. The inter-company accounts and transfers among LBHI and its direct and indirect subsidiaries, including but not limited to: LBI, LBIE, Lehman Brothers Special Finance ("LBSF") and LBCC, during the 30-day period preceding the commencement of the chapter 11 cases by each debtor on September 15, 2008 or thereafter or such longer period as the Examiner deems relevant to the Investigation.

  h. The transactions and transfers, including but not limited to the pledging or granting of collateral security interest among the debtors and the prechapter 11 lenders and/or financial participants including but not limited to, JPMorgan Chase, Citigroup, Inc., Bank of America, the Federal Reserve Bank of New York and others.

  i. The transfer of the capital stock of certain subsidiaries of LBI on or about September 19, 2008 to Lehman ALI Inc.

  j. The events that occurred from September 4, 2008 through September 15, 2008 or prior thereto that may have resulted in commencement of the LBHI chapter 11 case.

Examiner Order at ¶ 2. The Examiner Order also directs the Examiner to "perform the duties specified in sections 1106(a)(3) and (4) of the Bankruptcy Code, except to the extent the Court orders otherwise" (collectively, the "Investigation"). Id. at ¶ 3.

3

3.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as Examiner in the Chapter 11 Cases, subject to Court approval, and filed her Notice of such appointment. [Docket # 2570].

4.      On January 20, 2009, the U.S. Trustee filed her application for an Order of this Court approving the appointment of Anton R. Valukas as Examiner in the Chapter 11 cases. [Docket # 2571].

5.      On January 20, 2009, this Court entered an order approving the appointment by the U.S. Trustee of Anton R. Valukas as Examiner in the Chapter 11 Cases. [Docket # 2583].

6.      This preliminary work plan generally follows the format and level of detail of the plan submitted by the Examiner in *In re SemCrude, L.P., et al.*, Case Number 08-11525 (BLS) in the United States Bankruptcy Court for the District of Delaware. The Examiner notes that other Examiner's work plans, such as the one filed by the Examiner in *In re Refco, Inc. et al.*, Case Number 05-60006 (RDD) in the United States Bankruptcy Court for the Southern District of New York, were filed under seal. Given that this work plan is to be public and shared with all parties in interest, the Examiner believes that this plan contains a sufficient level of detail to inform the Court and the parties without interfering with the overriding goal of an independent investigation.

**The Examiner's Activities To Date**

7.      Since his appointment, the Examiner and his proposed counsel have worked diligently to assemble and review publicly available materials that might be relevant to the scope of investigation.  Pursuant to ¶ 11 of the Examiner Order, the Examiner and his proposed counsel have met and conferred with each of the parties as directed by the Court to attempt to reach consensus on a work plan and to coordinate to avoid duplication of effort.

8.      On January 26, 2009, the Examiner met in a group meeting with representatives of Lehman Brothers Holdings Inc., and the other debtors in possession in these chapter 11 cases (collectively, the "Debtors"), the Unsecured Creditors Committee (the "UCC"), Barclays, the Lead Plaintiffs, the New York State Comptroller, Bank of America, The Walt Disney Company, and Harbinger Funds.  Also in attendance were representatives of the U.S. Trustee, the SIPA Trustee, and the U.S. Attorney for the Southern District of New York.  At that meeting, the Examiner solicited views and comments from the interested parties that would be of assistance in the formulation of a work plan that would avoid duplication of effort.  The Examiner further explained that it was his intention to meet one-on-one with each of the interested parties to further explore those issues and to begin dialogue to aid in the successful performance of the Examiner's work.  The Examiner explained that the one-on-one meetings were not designed for secrecy but for efficiency, and that the Examiner would consider anything

said in individual meetings regarding the formulation of a work plan to be subject to disclosure to all interested parties.

9. Following the group meeting, the Examiner conducted one-on-one meetings with representatives of the Debtors, the UCC, Barclays, the Lead Plaintiffs, the New York State Comptroller, Bank of America, The Walt Disney Company, and the Harbinger Funds. The Examiner also held a telephonic meeting with counsel for the Joint Administrators. The purpose of this series of meetings was to solicit each party's views on the Examiner's work plan, to explore how to achieve the maximum degree of cooperation among the parties to streamline the Examiner's work, to provide for sharing with the Examiner of materials assembled by each party so as to avoid duplication and to make the Examiner's work more efficient, and to gather whatever viewpoints and concerns any party wanted to express.

10. The Examiner also had one-on-one meetings with representatives of the U.S. Trustee, the SIPA Trustee and SIPC, and the U.S. Attorney for the Southern District of New York. The Examiner had telephone conferences with representatives of the U.S. Attorneys for the Eastern District of New York and the District of New Jersey. The Examiner had a telephone conference with representatives of the Securities & Exchange Commission. The purpose of these meetings was to coordinate the Examiner's work so as not to duplicate or impede the work of any of these agencies or the SIPA Trustee.

11. In order to develop an efficient work plan, the Examiner reached out and has spoken to the Examiners in other complex matters, Josh Hochberg (Refco) and Richard Thornburgh (WorldCom).

12. The Examiner has worked out the parameters of a protocol with the SIPA Trustee so that the integrity of each investigation can be maintained with as little duplication of effort as possible. The Examiner and the SIPA Trustee are exploring mechanisms for sharing documents and data. The Examiner and the SIPA Trustee will have regular conference calls to discuss their respective progress and plans and to coordinate their activities. To the greatest extent possible, each of the Examiner and the SIPA Trustee will give the other advance notice before any witness interview or deposition so that issues such as joint attendance and lead questioners may be addressed. When forensic or other projects involving the use of outside consultants are planned or conducted, the Examiner and SIPA Trustee will consider whether that work could be done by one rather than both of their outside professionals to avoid duplication.

13. The Examiner has worked out the parameters of a protocol with the U.S. Attorney for the Southern District of New York and expects and intends to reach similar understandings with other U.S. Attorneys and the SEC.

14. The Examiner has entered into proposed Stipulations with the Debtors and the UCC so that he will have access to documents and other materials germane to

the Investigation. A series of meetings have been scheduled and are on-going for the Examiner to access the information he will need to complete his report. The Examiner contemplates entering into similar stipulations with other parties to obtain access to their accumulated documents and materials.

15. On January 30, 2009, in order to facilitate the Examiner's ability to timely and efficiently complete a comprehensive investigation and fulfill his fiduciary and statutory duties, the Examiner filed a motion (the "2004 Motion") with the Bankruptcy Court. The 2004 Motion is similar to the one filed and granted with respect to the SIPA Trustee, and requests that this Court grant the Examiner the omnibus authority to issue subpoenas, including document requests, upon witnesses. The Examiner has advised the parties in interest that, if the Court approves that motion, the Examiner intends as a matter of course to give notice, by a filing on the docket of these cases, of any Rule 2004 subpoenas he issues; however, the Examiner reserves the right to file his declarations of subpoenas under seal in the event that he determines that disclosure of a particular subpoena might compromise the Investigation.

16. The Examiner contemplates maintaining a depository to collect documents, transcripts, and other materials, access to which will be limited to the Examiner and the SIPA Trustee during the ongoing investigation. The Examiner presumes that there will come a time when that depository can and should be made

available to all interested parties, subject to redactions for applicable privileges and confidences.

## The Examiner's Proposed Work Plan Going Forward

17. One of the Examiner's first priorities will be to get an understanding of the volume and extent of documents he will need to review to complete the Investigation. The Examiner understands that the Debtors have not yet been able to file various schedules because of issues arising with respect to document access and the ability to effect a mid month closing of the Debtor's financial records. The Examiner's initial understanding is that a large portion of the data and documents that existed at the time of filing of this action on September 15, 2008 were transferred to Barclays as part of the sale of certain assets approved by the Court on September 19, 2008. The Examiner understands that a Transition Services Agreement dated as of September 22, 2008 ("TSA") between LBHI and Barclays establishes a framework for providing Debtors with access to Debtors' information that was transferred in the sale. The Examiner will work with the Debtors and Barclays to obtain access to Debtors' information. The Examiner understands that, as of September 15, 2008, the quantity of data includes billions of emails, which may or may not be in searchable format, as much as two petabytes of other electronic data (if a usual rule of thumb is that a gigabyte of data represents approximately 100,000 printed pages, two petabytes is approximately 200 billion pages), and hundreds of thousands of boxes of hard copy documents. The

9

Examiner intends to assist in whatever way he can to resolve document collection, retrieval, indexing and organization efforts since, obviously, the Examiner cannot render a comprehensive report without meaningful access to material documents.

18. Based upon the preliminary discussions, interviews and meetings conducted to date and the information currently available to the Examiner, the Examiner's preliminary work plan for the Investigation includes, but is not limited to, the following:

### A. Information Gathering and Verification

19. Requesting, gathering, reviewing and analyzing data and information relevant to the subject matter of the Investigation from various parties, including, but not limited to, (1) current and/or former personnel of the Debtors, their affiliates, auditors, professionals, lenders, investors, and counterparties to certain financial transactions with the Debtors; (2) other interested parties, including but not limited to current and former personnel of Barclays, Bank of America, The Walt Disney Corporation, the Harbinger Funds, and others; (3) third parties, including but not limited to the Debtors' clearing banks and entities, the Federal Reserve Bank of New York and the U.S. Department of Treasury.

### B. Interviews and Depositions of Witnesses

20. At this juncture, the Examiner anticipates that interviews with 100 or more witnesses will be conducted. The Examiner will generally seek to conduct voluntary

interviews of witnesses with respect to the issues subject to the Investigation. But in order to facilitate the Examiner's ability to timely and efficiently complete a comprehensive Investigation and fulfill his fiduciary and statutory duties, the Examiner has filed the 2004 Motion to obtain authority to quickly issue subpoenas in those instances where witnesses decline to voluntarily cooperate with the Examiner's requests or condition their cooperation on the issuance of a subpoena.

21.    As noted above, the Examiner intends to coordinate with the SIPA Trustee, SIPC, and the Government in all cases, and with the Debtors, the UCC and other interested parties in those cases where it makes sense to do so and will not compromise the independence and integrity of the Examiner's investigation, such as where the Examiner determines to interview a witness who is subject to a Rule 2004 subpoena obtained by another party. The Examiner recognizes the need for and will seek coordination of efforts to avoid duplication, to minimize the cost to the Debtors' estates, and to comply with the provisions of the Examiner Order.

**C.    Maintaining Open Lines of Communication**

22.    During the course of the Investigation, the Examiner will continue to maintain open lines of communication with the U.S. Trustee, the SIPA Trustee, the Government, the Debtors, and other interested parties.

23.    The Examiner, through his counsel, shall provide such periodic reports as the Court directs.

24. Some of the interested parties raised the possibility of interim reports. The Examiner does not yet know whether some of the issues assigned by the Court for investigation may lend themselves to early resolution, but the Examiner will consider making interim reports to the extent that it appears possible and efficient to do so.

**D.     Monitoring of Bankruptcy Cases and Any Government Investigations**

25. The Examiner's counsel will continue to monitor and review pertinent filings with the Bankruptcy Court regarding or involving any issues related to the Investigation.

26. The Examiner's professionals will also continue to monitor any investigation of the Debtors undertaken by any Governmental Agencies.

**E.     Retention of Professionals**

27. In accordance with the provisions of the Examiner Order, the Examiner has determined that it is necessary and appropriate to employ and retain, subject to approval of this Court, certain professionals in order to fully discharge his fiduciary and statutory duties. *See* Examiner Order at ¶ 6.

28. The Examiner has already moved for authorization to retain as counsel the firm of Jenner & Block for the reasons set out in that motion [Docket # 2627].

29. The Examiner has determined that he cannot adequately conduct his Investigation without an independent financial advisor. After interviewing a number of candidates, the Examiner has decided upon the retention of Duff & Phelps as his

independent financial advisor. Duff & Phelps is an international firm with substantial experience and expertise in the areas with which the Examiner will need independent assistance, such as forensic accounting, valuation, and cash management. The Examiner intends to expeditiously submit an application for authority to retain Duff & Phelps to the Court for approval.

### F.    Preparation of Examiner's Report

30.    The scope of the Examiner's investigation is quite broad, the issues are both subtle and complex, and the potential witnesses include persons of such significant public stature that interviewing them may present unusual challenges. Despite that, if there were no issues with respect to immediate access to documents and financial data, the Examiner believes that a realistic time frame for the preparation of a Final Report is 9 months. But because, as explained in paragraph 17 above, there are significant document issues, the Examiner may need to advise the Court of the need for an expanded schedule.

### G.    Estimated Fees and Expenses

31.    The Examiner has not yet had sufficient time to assess the full scope of the efforts he will need to undertake and any attempt to budget at this time is at best an educated guess. For example, while the Examiner is in the process of entering into stipulations in order to receive or access documents, data and work product from the Debtors, the UCC and other parties, he does not yet know how complete or how

13

organized those materials will be and what additional efforts will have to be undertaken. The Examiner does not yet know whether and to what extent he will obtain cooperation on document production and access to persons he presently contemplates to be material witnesses. All of these issues, and others, could significantly reduce or increase the Examiner's current estimates, which are based upon the Examiner's assumptions about the materials he is likely to receive from the parties and his expectations of cooperation and future events. The Examiner will promptly advise the Court and the parties as the Investigation unfolds if reality significantly varies from these preliminary estimates, but the Examiner currently estimates that the total fees for the Examiner and his counsel, Jenner & Block, will aggregate approximately $ 23 million, assuming that a final Report can be completed in approximately 9 months from today's date. As described in paragraph 29 above, the Examiner has decided upon the retention of Duff & Phelps as his financial advisor. But that selection was made only days ago, and the proposed advisor has similar difficulties estimating its budget at this nascent stage.

32.    In accordance with the terms of the Examiner Order, the fees and expenses of the professional persons retained by the Examiner are subject to the filing of applications therefor and allowance by the Bankruptcy Court after notice and a hearing.

**H.      Reservation of Rights**

33.     The Examiner's preliminary work plan is based upon currently available information and presumes the full and complete cooperation of the Debtors, the UCC and other parties in interest in accordance with the Examiner Order. See Examiner Order at ¶ 4. Given the early stage of the investigation and the volume of the data in this matter, it will take significant time to assemble, review and analyze the documents. As the process unfolds, the Examiner's work plan may need to be amended to fulfill the Court's direction to deliver a comprehensive report. The Examiner reserves his right to modify the work plan accordingly and will promptly notify the Court if modifications are necessary.

| | |
|---|---|
| Dated: February 6, 2009<br>New York, New York | Respectfully submitted,<br>Anton R. Valukas, Examiner<br><br>By: _____<br><br>JENNER & BLOCK LLP<br>919 Third Avenue, 37th Floor<br>New York, New York 10022-3908<br>Telephone: (212) 891-1600<br>Facsimile: (212) 891-1699<br>Patrick J. Trostle<br><br>330 North Wabash Avenue<br>Chicago, Illinois 60611-7603<br>Telephone: (312) 222-9350<br>Facsimile: (312) 527-0484<br>Robert L. Byman (Admitted *Pro Hac Vice*)<br>Daniel R. Murray (Admitted *Pro Hac Vice*)<br><br>Proposed Attorneys for the Examiner |