# Andreas Lohr – andreas.lohr@t-online.de
## Maybachstr. 28 - 74343 Sachsenheim / Germany  - Tel. +49 172 1840185

Sachsenheim, Feb 9, 2009

Acting Clerk of the Brankruptcy Court
Attn Mr. Vito Genna
S.D.N.Y.
One Bowling Green
New York
New York 10004  USA

**Lehman Bros. Holding Inc., 08-BK-13555 (Bankr. S.D.N.Y.)**
**Proof of Claim #00157 of Oct. 10, 2008**

Dear Vito Genna,

I got a message from Helge Naber LL.M. Attorney of Law that I have

a) To address my claim to Lehman Bros. Inc. – which I do with this letter
   according to the claim #00157 which I did send to you in October

b) To proof my claim I have attached my order to Kreissparkasse Frankfurt
   of Jan 5, 2007 for 30.000 € (39.000 USD) order value of A0LJV6 which is
   a Star Bond Alpha Certificate that I send in as a copy attached as well.
   My payment (translated from the document) would be
   " If on each Feb 10 of a year the achieved value of the DJ Euro Stock Select
   Dividend 30 Index is more or the same as the value of the DAX Index in relation
   to the value of first day of the certificate – there will be an automatic pay back of
   110% on Feb 11, 2008 or of 120% on Feb 10, 2009 or of 130% on Feb 10, 2010.
   If the certificate has not been paid back until the last day of Feb 10, 2010
   140% will be paid back on Feb 10, 2011."

c) To ask for preferred compensation.
   For this reason I have added correspondence saying that I have no other income than
   this certificate and I depend on the payments as I am a handicapped and retired person.

If you need further evidence for any payments please let me know,

Regards,

Andreas Lohr



FEB I 7 2009

# HELGE NABER LL.M.

**ATTORNEY OF LAW**
SUPREME COURT OF MONTANA
**RECHTSANWALT**
LANDGERICHT BREMEN

300 CENTRAL AVENUE SUITE 320
GREAT FALLS MONTANA 59401
USA

| | |
|---|---|
| TELEPHONE | +1 406/452-3100 |
| FACSIMILE | +1 406/452-6599 |

Naber P:C:, 300 Central Avenue Suite 320, USA-Great Falls, MT 59401

December 12 2008

Herrn Andreas Lohr
Maybachstrasse 28
74343 Sachsenheim
GERMANY

**Insolvenzverfahren LEHMAN BROTHERS HOLDING INC., 08-BK-13555 (Bankr. S.D.N.Y.)
Ihr *Proof of Claim* #00157 vom 10. Oktober 2008**

Sehr geehrter Herr Lohr,

bei turnusgemäßer Durchsicht der Gerichtsakte 08-BK-13555 des Insolvenzgerichts Südliches New York ist mir Ihre Anspruchsanmeldung aufgefallen, insbesondere dass

- sich Ihr Anspruch gegen eine nicht als Insolvenzschuldnerin benannte Partei richtet,
- keine haftungsbegründenden Tatsachen dargestellt sind, aus denen sich eine Masseverbindlichkeit schlüssig ergibt, und
- Sie für Ihren Anspruch bevorzugte Befriedigung nach 11 U.S.C. §507(a) verlangen, ohne die Bevozugungsberechtigung schlüssig zu präzisieren.

Ich erlaube mir daher zu empfehlen, dass Sie diese Punkte in einem ergänzenden Antrag zur Anmeldung berichtigen, da sonst die Ablehnung Ihrer Forderung als Masseverbindlichkeit zu besorgen ist.

Die aktuellen Sachstandsmeldungen in den derzeitigen Verfahren gebe ich Ihnen zur geneigten Kenntnisnahme bei. Falls Sie weitere Fragen haben, stehe ich gern zur Verfügung.

Mit freundlichen Grüßen

Helge Naber
Rechtsanwalt
Attorney at Law

Finanzamt Bietigheim-Bissingen

IdNr. Ehemann 91 536 242 700
IdNr. Ehefrau 90 763 951 845
Steuernummer  55266/18250
(Bitte bei Rückfragen angeben)

74321 Bietigheim-Bissingen        3.11.2008
Kronenbergstr. 13

Telefon (07142) 590-305
Telefax (07142) 590-199
Bearbeiter FRAU MÜNST

Finanzamt, 74319 Bietigheim-Bissingen

**Bescheid**

für   2006   über

Einkommensteuer,

Zinsen zur Einkommensteuer

und Solidaritätszuschlag

HERRN UND FRAU
ANDREAS UND
SUSANNE LOHR
MAYBACHSTR. 28
74343 SACHSENHEIM

**Festsetzung**
Der Bescheid ist nach § 175 Abs. 1 Satz 1 Nr. 1 AO geändert.
Er ist nach § 165 Abs. 1 Satz 2 AO teilweise vorläufig.

| | Einkommen-steuer € | Zinsen zur Einkommen-steuer € | Solida-ritäts-zuschlag € | Insgesamt € |
|---|---|---|---|---|
| Festgesetzt werden ab | 0,00 | -371,00 | 0,00 | |
| Steuerabzug vom Lohn | 6.827,00 | | 366,20 | |
| Kapitalertragsteuer | 68,00 | | 6,54 | |
| Zinsabschlag | 236,00 | | | |
| Verbleibende Beträge | -7.131,00 | -371,00 | -372,74 | -7.874,74 |
| Abrechnung (Stichtag: 20.10.08) | | | | |
| Abzurechnen sind | -7.131,00 | -371,00 | -372,74 | |
| Bereits getilgt | -7.063,00 | -369,00 | -369,03 | |
| Unterschiedsbetrag | -68,00 | -2,00 | -3,71 | |
| Ausgleich durch Verrechnung | 0,00 | 0,00 | 0,00 | |
| Restguthaben | 68,00 | 2,00 | 3,71 | 73,71 |

Das Guthaben von insgesamt 73,71 Euro wird erstattet auf das Konto Nr. 31598 bei KREISSPARKASSE (BLZ 654 500 70).

Vorauszahlungen

Es sind keine Vorauszahlungen zu entrichten.

Besteuerungsgrundlagen zur Steuerfestsetzung 2006

Berechnung des zu versteuernden Einkommens

| | Ehemann € | Ehefrau € | Insgesamt € |
|---|---|---|---|

xxxxxx Fortsetzung siehe Seite   2 xxxxxx

Konten der Finanzkasse
| Institut | : | Dt.Bundesbank Fil.Stuttgart |
|---|---|---|
| Kontonummer | : | 60401501 |
| Bankleitzahl | : | 600 000 00 |

Telefon der Finanzkasse: (07142) 590-251
Kreissparkasse
Ludwigsburg
7010000
604 500 50

Weitere Informationen finden Sie am Ende dieses Ausdrucks.

```
IdNr. Ehemann 91 536 242 700    IdNr. Ehefrau 90 763 951 845
Steuernummer  55266/18250                                              Seite    2

Übertrag:

Einkünfte aus Gewerbebetrieb                    €            €
  laut gesonderter Feststellung  . . . . . . . .  -866
  aus Beteiligungen . . . . . . . . . . . . . . .   355  . . . . . .   484
  . . . . . . . . . . . . . . . . . . . . . . . . -1.329                      €
  . . . . . . . . . . . . . . . . . . . . . . . .  -109
  . . . . . . . . . . . . . . . . . . . . . . . .   421
  Einkünfte . . . . . . . . . . . . . . . . . . .   124
  . . . . . . . . . . . . . . . . . . . . . . . . -1.404  . . . . . .  484

Einkünfte aus nichtselbständiger Arbeit
  Bruttoarbeitslohn
  ab  . . . . . . . . . . . . . . . . . . . . .  111.899 . . . . .  21.352
      Werbungskosten
      Wege zwischen Wohnung und Arbeitsstätte
      Wege mit dem eigenen PKW
      12 Tage x 95 km x 0,30 €       342,00    342
                    Entfernungspauschale       342
      Fahrtkosten mit PKW bei Behinderung . . . . . .
      12 Tage x 95 km x 0,60 €       684,00    684
         zu berücksichtigen sind . . . . . . . .     684
      Wege mit dem eigenen PKW (Ehefrau)
      160 Tage x 19 km x 0,30 €      912,00    912
                    Entfernungspauschale       912
      Aufwendungen für Arbeitsmittel . . . . . . . .          912
      Aufwendungen für ein häusliches Arbeitszimmer  9.237 . . . . .  337
      übrige Werbungskosten . . . . . . . . . . .    1.013
      Summe der Werbungskosten . . . . . . . . .    68.878 . . . . . 14.650
  Einkünfte . . . . . . . . . . . . . . . . . . .   79.812 . . . . . 15.899
                                                    32.087 . . . . .  5.453

Einkünfte aus Kapitalvermögen
  Einnahmen . . . . . . . . . . . . .
  ab Werbungskostenpauschbetrag . . . . . . . . .    3.162 . . . . .  552
     Sparerfreibetrag . . . . . . . . . . . . . .       87 . . . . .   15
  Einkünfte . . . . . . . . . . . . . . . . . . .    2.203 . . . . .  537
                                                       872 . . . . .    0


Gesamtbetrag der Einkünfte . . . . . . . . . . .   31.555 . . . . .  5.937 . . . .  37.492

ab Sonderausgaben
   Beiträge und Spenden nach § 10 b EStG . . . . . . . .        100
Summe der unbeschränkt abzugsfähigen Sonderausgaben . . . . . . . . .             100
ab beschränkt abziehbare Sonderausgaben
   Summe der Altersvorsorgeaufwendungen . . . . . . . . .
   davon 62 % . . . . . . . . . . . . . . . . .   16.515
   abzüglich Arbeitgeberanteil zur Rentenversicherung . . . 10.240
   verbleiben . . . . . . . . . . . . . . . .     6.257
                                                  1.983 . .  1.983

   übrige Vorsorgeaufwendungen . . . . . . . . . . . . .    11.150
   davon abzugsfähig . . . . . . . . . . . . .
   Summe der abzugsfähigen Vorsorgeaufwendungen . . . . . . . .  3.000
ab außergewöhnliche Belastung . . . . . . . . . . . . . .   4.983 . . . . .  4.983
   Aufwendungen nach § 33 EStG . . . . . . . .   18.799
   zumutbare Belastung
   (3 % von          37.492) . . . . . . . . . .  1.124
   abziehbar nach § 33 EStG . . . . . . . . . .  17.675 . . . . . 17.675
   Hausgehilfin/Haushaltshilfe/Heimunterbringung . . . . . .       624
   Behinderten-Pauschbetrag/-beträge . . . . . . . . . . .         1.230
Einkommen / zu versteuerndes Einkommen . . . . . . . . . . .       12.880


Berechnung der Einkommensteuer
zu versteuern nach dem Splittingtarif . . . . . . . . . .   12.880 . . . . .   0
tarifliche Einkommensteuer . . . . . . . . . . . . . . . . . . . . . . . .     0

festzusetzende Einkommensteuer . . . . . . . . . . . . . . . . . . . . . .     0
```

¤¤¤¤¤ Fortsetzung siehe Seite   3 ¤¤¤¤¤

**Deutsche Rentenversicherung Bund**

## Mitteilung über die Anpassung der Leistung aus der gesetzlichen Rentenversicherung

**Verständigen Sie bitte Ihre Niederlassung Renten Service, wenn die Angaben in der Anschrift oder zum Berechtigten geändert oder ergänzt werden müssen.**

Deutsche Post AG • NL Renten Service • 70143 Stuttgart



169015 / 1371

110562147

Andreas Lohr
Maybachstr. 28
74343 Sachsenheim

Berechtigter    Andreas Lohr
Geburtsdatum  01.06.1966
Betreff            Rentenanpassung zum 01.07.2007
**Rente wegen voller Erwerbsminderung**

Sehr geehrte Dame, sehr geehrter Herr,
Sie beziehen von der Deutschen Rentenversicherung Bund eine Leistung aus der gesetz-
lichen Rentenversicherung.
Nach der Rentenwertbestimmungsverordnung 2007 beträgt der neue aktuelle Rentenwert
für die Zeit ab 01.07.2007 26,27 EUR und der neue aktuelle Rentenwert (Ost) 23,09 EUR.
Die Neubestimmung des aktuellen Rentenwerts/aktuellen Rentenwerts (Ost) führt zu ei-
ner Erhöhung des Rentenbetrages. Die Deutsche Rentenversicherung Bund ersetzt da-
her die zuletzt erteilten Bescheid über die Höhe des Rentenbetrages für die Zeit ab
01.07.2007 durch diesen Bescheid.
Ferner ändert sich die Höhe des Zuschusses zur Krankenversicherung, weil die Erhö-
hung des Rentenbetrages sowie ein anderer Beitragssatz zu berücksichtigen sind. Die
Deutsche Rentenversicherung Bund ersetzt daher auch den zuletzt erteilten Bescheid
über die Höhe des Zuschusses zur Krankenversicherung für die Zeit ab 01.07.2007 durch
diesen Bescheid.
Die neue Höhe des Rentenbetrages, die neue Höhe des Zuschusses zur Krankenversiche-
rung und die Berechnung des auszuzahlenden Betrages sind nachfolgend dargestellt:

**Ausweis für Rentnerinnen und Rent**
(nur gültig in Verbindung mit einem amtlichen Lichtbil
Pensioner's card        (only valid in conjunction with an c
                              document bearing a photo)
Carte de retraite       (valable uniquement avec présen
                              document d'identité avec photo)

970 63010666L011 11

für Andreas Lohr
geb. 01.06.1966
gültig ab 01.07.2007
ausgestellt im Namen der
Deutsche Rentenversicherung Bund
von Deutsche Post AG, NL Renten Service Stuttgart

✂ ✂ ✂ Dieser Ausweis kann herausgetrennt werden.  ✂

Hausadresse            Telefon
Wiener Str. 43          0 18 03 12 45 78
70469 Stuttgart
Telefax                    Kontoverbindung
(07 11) 3 65 33 4 99   Konto-Nr. 504 069 77
                              BLZ 504 000 00 Bundesban
                              www.rentenservice.com

Bitte bei allen Zuschriften ange

970 63010666L011 11





Grad der Behinderung (GdB) :   90

Abweichend hiervon kann mit diesem Au

Az: 07 253 252

Der Ausweis ist amtlicher Nachweis für die Eigenschaft
genen weiteren gesundheitlichen Merkmale und die Zug
von Rechten und Nachteilsausgleichen, die schwerbehin
Vorschriften zustehen.
Änderungen in den für die Eintragungen maßgebenden
Aufforderung ist der Ausweis, deren Eigentum der ausstelle
Die mißbräuchliche Verwendung ist strafbar.

 **BUNDESKANZLERAMT**

Berlin, den **16. Januar 2009**
Telefon  030 18 / 400 - 0

<u>012 - K 409 650/08/0001</u>
(Bei Antwort bitte angeben)

Herrn
Andreas Lohr
Maybachstraße 28
74343 Sachsenheim

Sehr geehrter Herr Lohr,

Bundeskanzlerin Dr. Angela Merkel hat mich gebeten, Ihnen für Ihr Schreiben vom 13. Dezember 2008 zu danken und zu antworten.

Bei den von Ihnen erworbenen Zertifikaten handelt es sich um Schuldverschreibungen von Lehman Brothers. Schuldverschreibungen zeichnen sich dadurch aus, dass das investierte Kapital in der Regel nicht abgesichert ist. Bei Insolvenz des Emittenten kann dies auch zum Totalverlust des eingesetzten Kapitals führen. Anders als bei Bankeinlagen sind Zertifikate nicht durch eine Einlagensicherung bzw. durch eine Entschädigungseinrichtung geschützt. Der Anleger trägt folglich gesamtumfänglich das Bonitätsrisiko des Emittenten.

Um den Anlegern das Risiko eines Totalausfalls ihres Kapitals vor Augen zu führen, sind die Wertpapierdienstleistungsunternehmen nach dem Wertpapierhandelsgesetz verpflichtet, die Anleger über die Risiken ihres finanziellen Engagements und damit auch über das Emittentenrisiko bei Zertifikaten aufzuklären. Sollten Anleger im Beratungsgespräch über die Risiken der Zertifikate nicht ordnungsgemäß unterrichtet worden sein, stellt sich die Frage, inwieweit dem Anleger Schadensersatzansprüche aus einer möglichen Aufklärungspflichtverletzung bzw. aus Beratungsverschulden zustehen. Eine rechtsverbindliche Entscheidung hierüber kann ausschließlich durch die ordentlichen Gerichte bzw. durch ein Schiedsgericht getroffen werden.

Bei weitergehenden Fragen darf ich Sie bitten, sich an das fachlich zuständige Bundesministerium der Finanzen, 11016 Berlin, zu wenden.

Mit freundlichen Grüßen

Armin Heppner

Haus-/Lieferanschrift
Willy-Brandt-Straße 1, 10557 Berlin

Briefanschrift
11012 Berlin

Telex
302 360 bkb

Telefax
030 18 / 400 - 23 57



**Bundesministerium
der Finanzen**

POSTANSCHRIFT   Bundesministerium der Finanzen, 11016 Berlin

Herrn
Andreas Lohr
Maybachstrasse 28
74343 Sachsenheim

| | |
|---|---|
| HAUSANSCHRIFT | Wilhelmstraße 97, 10117 Berlin |
| BEARBEITET VON | Margot Knolle |
| REFERAT/PROJEKT | VII B 6 |
| TEL | +49 (0) 30 18 682- 2230 (oder 682-0) |
| FAX | +49 (0) 30 18 682- 4049 |
| E-MAIL | poststelle@bmf.bund.de |
| TELEX | 886645 |
| DATUM | 20. Januar 2009 |

BEZUG   Ihr Schreiben vom 25. November 2008

GZ   **VII B 6 - WK 5709/06/10001-02**

DOK   **2009/0037787**

(bei Antwort bitte GZ und DOK angeben)

Sehr geehrter Herr Lohr,

vielen Dank für Ihr o. g. an Herrn MD Dr. Wenzel gerichtetes Schreiben. Zugleich nehme ich
Bezug auf Ihr an das Referat Bürgerangelegenheiten gerichtetes Schreiben.

Die Bundesanstalt für Finanzdienstleistungsaufsicht (BaFin) hat mir inzwischen mitgeteilt,
dass sie der von Ihnen geschilderten Angelegenheit nachgegangen ist, insbesondere hinsicht-
lich der von Ihnen erbetenen Stellungnahme der Frankfurter Sparkasse.

Die BaFin hat zugesagt, Ihnen in Kürze zu antworten.

Mit freundlichen Grüßen

Im Auftrag
Knolle



Beglaubigt

*8007 3360 12*   **1822 direkt.**

schneller geht's per Fax: 069/94170-7220

## Zeichnungsauftrag für: **Alpha-Expresszertifikat**

8007 3360 0812 A2

**Kundendaten:**

Name Auftraggeber:    Andreas Lohr

Depotnummer:    men

Kundennummer:    5810984 A

Telefon-Nr. Auftraggeber:    07147 - 13992   0172 - 1840186

Ein-/ Umbuchen auf
Depot Comdirect
7262322
IBAN DE84 2004 1111 0726
2322 00
BLZ
200 411 11

**Daten des Auftrages:**

Wertpapier-Name:    Alpha Expresszertifikat 01/2007

WKN:    A0LJV6

Stücke:    30    St (mind. 5 Stück)

Gegenwert:    30.000,–    € (mind. 5.000 €)

**KEIN AGIO**

zu Lasten Konto:    1253 686 473

Andreas R. Lohr
Dipl. Betriebswirt (BA)
Maybachstrasse 28
74343 Sachsenheim
Deutschland / Germany
Tel. +49 7147 13992
Fax +49 7147 13195
andreas.lohr@t-online.de

Ort/Datum: Sachsenheim, 05.01.07   Unterschrift

---

Datum:_____   Uhrzeit:_____

Interne Vermerke der WP-Gruppe

Datum: 5.1.07   Uhrzeit: 15:07   Bearbeiter:_____

7109
Berater: Marco Rosinus
OE-Nr.: 7230227
Schlüssel: 102

7230249
7109
7109
C4 41

ANLAGE 1



Frankfurter Sparkasse 1822

Der neue STAR BOND
Das Alpha-
Expresszertifikat 01/2007

Zeichnungsfrist
11.12.06–12.1.07*

## Die Idee

Der DJ EURO STOXX Select Dividend® 30
Index beinhaltet die 30 dividendenstärksten
Titel Europa's¹. Da sich die Kurse ertrag-
reicher Unternehmen in der Regel besser
entwickeln als Kurse durchschnittlicher
Unternehmen, ist davon auszugehen,
dass der DJ EURO STOXX Select Dividend®
30 Index im Normalfall eine höhere
Wertentwicklung aufweist als der DAX®
Index (siehe auch Grafik Seite 5). Mit dem
Alpha-Expresszertifikat 01/2007 können Sie
von dieser Idee profitieren. Dabei ist die
tatsächliche Indexentwicklung unerheblich
für die Höhe Ihres Ertrags. Allein maßgeb-
lich ist die relativ bessere Wertentwicklung
des DJ EURO STOXX Select Dividend®
30 Index gegenüber dem DAX® Index im
Vergleich zum Anfänglichen Bewertungstag
("Outperformance").

¹ Für den DJ EURO STOXX Select Dividend® 30 Index
werden aus dem DJ EURO STOXX 600 Index, der
die größten Aktien aus 17 europäischen Ländern
umfasst, jährlich 30 Werte ausgewählt. Anhaltspunkt
ist eine hohe Dividendenrendite.

2

## Ihr Ertrag²

**Vorzeitige Rückzahlung**
Wenn am jeweiligen Beobachtungstag die
Wertentwicklung des DJ EURO STOXX Select
Dividend® 30 Index größer oder gleich
der Wertentwicklung des DAX® Index im
Vergleich zum Anfänglichen Bewertungstag
ist, so erfolgt automatisch die Rückzahlung
des Zertifikats zur vorzeitigen Fälligkeit in
Höhe der tatsächlichen Outperformance,
wobei jeweils der nachfolgend aufgeführte
Mindestbetrag zurückgezahlt wird.
Automatische Rückzahlung zur
**1. vorzeitigen Fälligkeit:**
mind. 110% des Nominalbetrags
Automatische Rückzahlung zur
**2. vorzeitigen Fälligkeit:**
mind. 120% des Nominalbetrags
Automatische Rückzahlung zur
**3. vorzeitigen Fälligkeit:**
mind. 130% des Nominalbetrags

**Rückzahlung bei Endfälligkeit**
Die Rückzahlung bei Endfälligkeit ist abhän-
gig von der relativen Wertentwicklung des
DJ EURO STOXX Select Dividend® 30 Index
gegenüber dem DAX® Index im Vergleich

3

zum Anfänglichen Bewertungstag.
Falls zum Abschließenden Bewertungstag
die Wertentwicklung des Dow Jones
EURO STOXX Select Dividend® 30 Index
größer oder gleich der Wertentwicklung
des DAX® Index im Vergleich zum Anfäng-
lichen Bewertungstag ist, so erfolgt die
Rückzahlung zum Nominalbetrag zuzüglich
der tatsächlichen Outperformance des
DJ EURO STOXX Select Dividend® 30 Index
gegenüber dem DAX® Index, aber mindes-
tens zu 140% des Nominalbetrags.
Weist die Wertentwicklung des DJ EURO
STOXX Select Dividend® 30 Index gegen-
über des DAX® Index zum Abschließen-
den Bewertungstag einen negativen Wert
(„Underperformance") von bis zu - 40% auf,
so erfolgt die Rückzahlung zu 100% des
Nominalbetrags.

Ansonsten erfolgt die Rückzahlung zu
100% des Nominalbetrags abzüglich der
Underperformance des DJ EURO STOXX
Select Dividend® 30 Index gegenüber dem
DAX® Index. In diesem Fall erleidet der
Anleger somit einen teilweisen oder voll-
ständigen Kapitalverlust in Abhängigkeit

der Underperformance des DJ EURO STOXX
Select Dividend® 30 Index gegenüber dem
DAX® Index.

**Historische Entwicklung des DJ EURO
STOXX Select Dividend® 30 Index gegen-
über dem DAX® Index²**



— DJ STOXX Select Dividend® 30 Index
--- DAX® Index

² Eventuelle Gutschriften werden nicht berücksichtigt. Die
Rückzahlung am Ende der Laufzeit hängt von der
Bonität der Emittentin bzw. Garantin ab.
³ Historische Daten lassen keine Rückschlüsse auf die
zukünftige Entwicklung der Indizes zu.

## Die Grafik

| Anfänglicher Bewertungstag: 15.01.2007 | Festlegung der Ausgangswerte des DJ EURO STOXX Select Dividend® 30 Index und des DAX® Index | | Kaufpreis: 1.000,– EUR |
|---|---|---|---|
| Beobachtungstag 1: 11.02.2008 | Wertentwicklung des DJ EURO STOXX Select Dividend® 30 Index ist größer/gleich der Wertentwicklung des DAX® Index? | ja → | Vorzeitige Rückzahlung pro Zertifikat: Nominalbetrag zuzüglich der Outperformance des DJ EURO STOXX Select Dividend® 30 Index gegenüber dem DAX® Index, jedoch mindestens 1.100,– EUR |
| | | nein ↓ | |
| Beobachtungstag 2: 10.02.2009 | Wertentwicklung des DJ EURO STOXX Select Dividend® 30 Index ist größer/gleich der Wertentwicklung des DAX® Index? | ja → | Vorzeitige Rückzahlung pro Zertifikat: Nominalbetrag zuzüglich der Outperformance des DJ EURO STOXX Select Dividend® 30 Index gegenüber dem DAX® Index, jedoch mindestens 1.200,– EUR |
| | | nein ↓ | |
| Beobachtungstag 3: 10.02.2010 | Wertentwicklung des DJ EURO STOXX Select Dividend® 30 Index ist größer/gleich der Wertentwicklung des DAX® Index? | ja → | Vorzeitige Rückzahlung pro Zertifikat: Nominalbetrag zuzüglich der Outperformance des DJ EURO STOXX Select Dividend® 30 Index gegenüber dem DAX® Index, jedoch mindestens 1.300,– EUR |
| | | nein ↓ | |
| | Outperformance des DJ EURO STOXX Select Dividend® 30 Index gegenüber dem DAX® Index ist größer oder gleich 0% | ja → | Endfällige Rückzahlung pro Zertifikat: Nominalbetrag zuzüglich der Outperformance des DJ EURO STOXX Select Dividend® 30 Index gegenüber dem DAX® Index, jedoch mindestens 1.400,– EUR |
| Abschließender Bewertungstag: 10.02.2011 | Underperformance des DJ EURO STOXX Select Dividend® 30 Index gegenüber dem DAX® Index ist zwischen 0% (ausschließlich) und -40% (einschließlich) | ja → | Endfällige Rückzahlung pro Zertifikat: 1.000,– EUR |
| | Underperformance des DJ EURO STOXX Select Dividend® 30 Index gegenüber dem DAX® Index ist kleiner als -40% | ja → | Endfällige Rückzahlung pro Zertifikat: Nominalbetrag abzüglich der Underperformance des DJ EURO STOXX Select Dividend® 30 Index gegenüber dem DAX® Index |

— Vorzeitige Rückzahlung
--- Endfällige Rückzahlung

5

## Ihre Vorteile auf einen Blick

- Das Zertifikat gewährt die Chance auf eine weit überdurchschnittliche jährliche Rendite.

- Hohe Renditechancen auch in fallenden Märkten, egal wie stark die Märkte fallen.

- Innovative Investmentmöglichkeit in die Outperformance des DJ EURO STOXX Select Dividend® 30 Index gegenüber dem DAX® Index.

- Chancen auf kurze Kapitalbindung. Eine vorzeitige Rückzahlung ist bereits nach 13 Monaten möglich.

- Kostengünstig: Kein Ausgabeaufschlag.

- Der Verkauf zum tagesaktuellen Kurs ist jederzeit möglich.

9

## Die Rahmendaten

| | |
|---|---|
| Emittent | Lehman Brothers Treasury Co. B.V. |
| Garantiegeber | Lehman Brothers Holdings Inc. A1A+/Aa (Moody's/S&P/Fitch) |
| ISIN/WKN | DE000A0LJVSZ/A0LJV6 |
| Stückelung/ Mindeststückelung | 1 Zertifikat zum Nominalbetrag von 1.000,- Euro (Stückzenit) |
| Verkaufskurs | 1.000,- Euro |
| Laufzeit | 17.01.2007 (Valuta) bis 17.02.2011 (max.) |
| Basiswerte | DJ EURO STOXX Select Dividend® 30 Preisindex DAX® Performance Index |
| Emissionstag | 17.01.2007 |
| Anfänglicher Bewertungstag* | 15.01.2007 |
| Beobachtungs- tage* | Schlusskurse 31.02.2008, 10.02.2009, 10.02.2010 |
| Abschließender Bewertungstag* | 10.02.2011 |

* Der Anfängliche Bewertungstag, der Abschließende Bewertungstag sowie die Beobachtungstage unterliegen den Verschiebungsregelungen gemäß den Zertifikatsbedingungen.

8

| | |
|---|---|
| Automatische vorzeitige Rückzahlung | Wenn zum entsprechenden Beobachtungstag die Wertentwicklung des DJ EURO STOXX Select Dividend® 30 Index größer oder gleich der Wertentwicklung des DAX® Index im Vergleich zum Anfänglichen Bewertungstag ist, so erfolgt automatisch die Rückzahlung zur vorzeitigen Fälligkeit in Höhe des folgenden Betrags:<br>Am 18.2.2008 Nominalbetrag zuzüglich der Outperformance, mindestens jedoch 1.100,- EUR<br>Am 17.2.2009: Nominalbetrag zuzüglich der Outperformance, mindestens jedoch 1.200,- EUR<br>Am 17.2.2010: Nominalbetrag zuzüglich der Outperformance, mindestens jedoch 1.300,- EUR |
| Rückzahlung bei Endfälligkeit* | Die Rückzahlung bei Endfälligkeit ist von der relativen Wertentwicklung (Outperformance/Underperformance) des DJ EURO STOXX Select Dividend® 30 Index gegenüber dem DAX® Index abhängig. |

Falls zum Abschließenden Bewertungstag die Wertentwicklung des DJ EURO STOXX Select Dividend® 30 Index größer oder gleich der Wertentwicklung des DAX® Index im Vergleich zum Anfänglichen Bewertungstag ist und keine vorzeitige Rückzahlung stattfand, so erfolgt die Rückzahlung bei Endfälligkeit zum Nominalbetrag zuzüglich der tatsächlichen Outperformance, mindestens jedoch zu 140%.

Falls zum Abschließenden Bewertungstag die Underperformance des DJ EURO STOXX Select Dividend® 30 Index gegenüber dem DAX® Index zwischen 0% und +40% liegt und keine vorzeitige Rückzahlung stattfand, so erfolgt die Endfällige Rückzahlung zu 100% des Nominalbetrags.

5 Ewige Gebühren werden nicht berücksichtigt. Die Rückzahlung am Ende der Laufzeit hängt von der Bonität der Emittentin bzw. Garantin ab. Unter bestimmten Umständen (u.a. aus steuerlichen Gründen) kann es zu einer sonstigen vorzeitigen Rückzahlung durch die Emittentin kommen. Der vorzeitige Rückzahlungsbetrag kann in solchen Fällen auch unterhalb des Nominalbetrags liegen.

11

10





# Rechtliche Aspekte und Risikoinformationen

Lehman Brothers (ITZ Bezugsrecht LZH) ist eine der führenden globalen Investmentbanken. Weltweit dienen den Handel/Aktivitäten in den Bereichen Vertrieb und Handel festverzinslicher Wertpapiere, Verkauf und Handel von Aktien, Anlageforschung sowie Investment-Banking-Beratung bei M&A, LBOs und DCM unterstützt Lehman Brothers auch eine globale Netze von Kunden und Anlegern in aller Welt. Investmentbanking, Finanzinstitute aller Art, alle Arten von Anlagen und öffentlichen Institutionen mit einer engmaschigen Präsenz bei der Errichtung ihrer Ziele in den globalen Kapitalmärkten. 1850 in den USA von Emanuel, Henry und Mayer Lehman gegründet, ist seit 1972 in Deutschland etabliert, gehört Lehman Brothers zu den führenden Investmentbanken auch im deutschen Markt.

Für weitere Informationen besuchen Sie unsere Website unter
www.lehman.com

## Weitere Informationen

Es besteht kein Kapitalschutz. Der Anleger sollte sich der Tatsache bewusst sein, dass der zugrunde liegende Betrag steigen oder fallen kann. Die Wertentwicklung der zugrunde liegenden Indizes ist der Vergangenheit lässt keine Rückschlüsse auf eine zukünftige Wertentwicklung zu. Der Wert des Zertifikats umfasst das Zinsen, sondern besteht nur ein Vertrag über Kursänderungen. Der Erwerb des Zertifikats ist mit Kosten/Gebühren verbunden.

Dieses Dokument ist ausschließlich zur Verteilung in der Bundesrepublik Deutschland vorbehalten und dient ausschließlich Informations- und nicht kein Kaufempfehlung dar. Vor dem Erwerb sollte sich der Anleger informieren und ggf. sachkundig beraten lassen. Der Erwerb der Wertpapiere sollte ausschließlich auf Grundlage des von der Bundesanstalt für Finanzdienstleistungsaufsicht (BaFin) gebilligten Prospekts (nebst des von der jeweiligen weiligen Bedingungen), erhältlich bei der Lehman Brothers International (Europe), Zweigniederlassung Frankfurt am Main, Rathenauplatz 1, 60313 Frankfurt am Main, und bei Lehman Brothers bereithält.

Die Zertifikate dürfen ohne Registrierung des U.S. Securities Act of 1933 nicht in den USA oder an einen US-Bürger verkauft werden.

Lehman Brothers und/oder ein verbundenes Unternehmen können in Bezug auf das Zertifikat als Market Maker auftreten. Eigenhandel betreiben sowie Hedging-Transaktionen vornehmen und Interesse an Aktien und/oder Verkaufspositionen und/oder Zertifikat halten. Dies kann den Kurswert, die Liquidität oder den Wert des Zertifikats beeinträchtigen und wertverzichtlich Interesse der Anleger liegen.

Lehman Brothers und/oder ein verbundenes Unternehmen erhalten oder Informationen können Änderungen unterliegen, ohne dass ein Hinweis erfolgt. Lehman Brothers ist nicht weder als Berater noch als Treuhänder für Käufer des Zertifikats, wenn Lehman Brothers nicht deren dürfen und diese vorweisbare Verantwortung hinsichtlich der Bewertung des Erwerbs Verwendbarkeit oder Risiken des Zertifikats sollten zur Kenntnis nehmen, dass Vertriebsgesellschaften anderweitig oder Vertreter Lehman Brothers und nicht weder als Vertreter von Lehman Brothers sind und nicht berechtigt sind für Lehman Brothers oder in dessen Namen Verpflichtungen einzugehen oder Zusicherungen abzugeben. Lehman Brothers oder eine sonstige Gesellschaft der Lehman Brothers Gruppe Verpflichtungen einzugehen oder Zusicherungen abzugeben oder so beziehen oder eine ausdrückliche oder stillschweigende Gewährleistung oder Zusicherung gegeben oder als möglich oder öffentlich vor der Form des Kaufoptionsblattes oder anderer Marketingunterlagen oder vergleichbarer Materialien. Bezüglich der Zertifikat werden nicht vergleichbarer Materialien. Bezüglich der Vertriebsgesellschaft anwertem, mit der im Kaufwerbeblatt beschriebenen Vertriebsgesellschaft, kann konzern über ihnen als Kunden. Lehman Brothers hat für die vertragliche subtile Vertriebsgesellschaft und Kunden verantwortlich.

Weitere Informationen können bei der Vertriebsgesellschaft angefordert werden.

| | |
|---|---|
| | Falls zum Bewertungstag die Underperformance kleiner als –49% ist und keine vorzeitige Rückzahlung stattfand, so erfolgt die Endfällige Rückzahlung zu 100% des Nominalbetrags abzüglich der tatsächlichen Underperformance des DJ EURO STOXX Select Dividend® 30 Index gegenüber dem DAX® Index. |
| Zeichnungsfrist | Voraussichtlich 11.12.2008 bis 12.01.2009 |
| Bezugsberag | Die Einbeziehung in den Freiverkehr an der Frankfurter Wertpapierbörse ist vorgesehen. |
| Internet | www.lehman.com/structuredinvestments |
| Verkaufs-beschreibung | UK und USA, US-Bürger Beim Vertrieb der Wertpapiere sind die jeweiligen Verkaufsbeschränkungen zu beachten. |





Stand 15. November 2006

17

16

 **Frankfurter Sparkasse**

*1822*

Vorstand

Frau Anette Wolf
Herrn Frank Russo
Referat WA 32
Bundesanstalt für
Finanzdienstleistungsaufsicht (BaFin)
Postfach 50 01 54
60391 Frankfurt

23. Dezember 2008

**GZ: WA 32 - QB 4101 - 10 - 101252 - 2008/16**
**Eingabe von Herrn Andreas Lohr**

Sehr geehrte Frau Wolf,
sehr geehrter Herr Russo,
sehr geehrte Damen und Herren,

zu Ihren beiden Schreiben vom 8. und 15. Dezember 2008 mit der Beschwerde von Herrn Andreas Lohr sowohl in Ihrem Hause als auch beim Bundesministerium der Finanzen haben wir die Dokumentation geprüft und nehmen wie folgt Stellung:

Herr Andreas Lohr war von Juli 2006 bis April 2008 Kunde bei der 1822direkt und hat sechsstellige Beträge auf einem Tagesgeldkonto vorgehalten. Im Dezember 2006 wurde ihm nach seinen Aussagen von einem Mitarbeiter der telefonischen Anlageberatung der 1822direkt das Alpha-Expresszertifikat 01/2007 (DE000A0lJV62) angeboten. Der genannte Kundenberater, Herr Rosinus, kann sich an dieses Gespräch nicht mehr erinnern. Aufgrund der unpräzisen Datumsangabe Dezember 2006 können wir leider auch den Gesprächsmitschnitt durch die 1822direkt nicht finden.

Aus unseren Unterlagen geht hervor, dass Herrn Lohr am 5. Januar 2007 der Flyer für das Alpha-Expresszertifikat per E-Mail übersandt wurde. Den beiliegenden Zeichnungsauftrag hat er daraufhin eigenständig und von ihm unterschrieben am gleichen Tag an die 1822direkt zurückgesandt. Teil der Order war die Weisung, das Alpha-Expresszertifikat gleich nach dem Kauf auf sein Depot bei der comdirect (7262322) zu übertragen.

Da das für die Zeichnung notwendige Wertpapierdepot für diese Transaktion erst eröffnet wurde, wurde am gleichen Tag gegen 13.30 Uhr telefonisch durch Herrn Oldenburger die notwendige Risikoaufklärung bei Herrn Lohr vorgenommen. Ein Telefonmitschnitt dieses Gesprächs liegt uns in elektronisch gespeicherter Form vor. Auf Basis dieses Telefonmitschnitts beantworten wir die Fragen der BaFin:



# Frankfurter Sparkasse

*1822*

Seite 2 von 5
23. Dezember 2008

**Wie haben Sie sichergestellt, dass der Kunde die Funktionsweise der getätigten Anlage verstanden hat? Ist ein Hinweis auf das Emittentenrisiko erfolgt?**

Dem Kunden lag der Produktflyer für das Alpha-Expresszertifikat vor, auf dessen Basis Herr Lohr eigenständig einen Zeichnungsauftrag erteilt hat. Zu Ihrer Information haben wir einen Ausdruck des Flyers als Anlage 1 beigelegt. Im Flyer wird die Funktionsweise des Alpha-Expresszertifikats sowohl textlich als auch graphisch dargestellt. Der Flyer geht auch auf die Möglichkeit einer vorzeitigen Rückzahlung sowie die verschiedenen Optionen bei endfälliger Rückzahlung ein. Auf das Emittentenrisiko wird auf sowohl auf Seite 5 als auch Seite 11 des Flyers eingegangen. Auf Seite 14 wird auf den fehlenden Kapitalschutz hingewiesen, ebenso erfolgt ein Hinweis, wo der Prospekt zum Produkt kostenlos bezogen werden kann.

Im telefonischen Risikoaufklärungsgespräch hat Herr Lohr bestätigt, dass ihm bewusst ist, dass eine Zahlung von Erträgen erst am Ende der Laufzeit erfolgen kann, wenn der DJ EURO STOXX Select Dividend besser liegt als der DAX. Nachfragen zur Funktionsweise des Zertifikats stellt Herr Lohr nicht.

Im Rahmen der Risikoaufklärung hat Herr Lohr jeweils bestätigt, dass er sich bewusst ist, dass

- die Ertragschancen des Zertifikats oberhalb des aktuellen Zinsniveaus liegen,
- der Kapitalzuwachs aus dem Aktienmarkt herausgewonnen wird,
- er ein Kursrisiko trägt, weshalb der Kurs unter- und oberhalb des Ausgabekurses schwanken kann.

Unter dem Stichwort Bonitätsrisiko wird auch das Emittentenrisiko von Lehman Brother explizit angesprochen. Auf die Ausführung unseres Mitarbeiters „Sie haben hier ein Bonitätsrisiko selbstverständlich" antwortet Herr Lohr hierauf am Telefon wörtlich: „ja, ja, bei Lehman Brothers (lacht), da muss ich aber lachen (lacht weiter)" und ergänzt dann „da geht vorher eher das Land pleite, bevor die (kurze Pause) das kann passieren".

Unser Mitarbeiter reagiert auf die Aussagen von Herrn Lohr mit den Worten „Sie kennen sich aus, aber ich muss das leider so nennen" und „Ihnen muss man nichts mehr erklären". Er erwähnt dann noch einmal das Kapitalrisiko, wenn die Gesellschaft nicht mehr da ist. Auf diesen Hinweis reagiert Herr Lohr mit einem erneuten bestätigenden „ja, ja" bzw. „klar, klar" und lacht erneut. Sowohl Berater als auch Herr Lohr stimmen in ihrer Einschätzung überein, dass das Emittentenrisiko eher theoretischer Natur ist.

Herr Lohr bringt abschließend noch sein Vertrauen in die Sparkasse zum Ausdruck, indem er sagt „Sparkasse, da habe ich keine Bedenken".


**Frankfurter Sparkasse**

*1822*

Seite 3 von 5
23. Dezember 2008

Aus Sicht der Frankfurter Sparkasse sind Herrn Lohr die Risiken der Anlage, insbesondere auch das Emittentenrisiko deutlich gemacht worden. Es gibt keinerlei Hinweise, dass Herrn Lohr nicht bewusst war, welche Anlage er erworben hat. Dies gilt insbesondere auch vor dem Hintergrund, dass Herr Lohr über umfangreiche Erfahrungen im Wertpapierbereich verfügt.

In diesem Zusammenhang möchten wir darauf hinweisen, dass der Flyer des Alpha-Expresszertifikats Gegenstand eines Urteils des Landgerichts Frankfurt am Main vom 28. November 2008 (Az. 2-19 O 62/08) war. Das Gericht kommt zu dem Ergebnis, dass die Kläger in ausreichender Form über das Totalverlustrisiko der Anlage informiert wurden und verweist auf die Seiten 5 und 11 des Flyers. Das Urteil haben wir als Anlage 2 beigelegt.

**Wie ist die Risikobereitschaft? Wie sind die Kenntnisse und Erfahrungen? Welche Anlageziele wurden vorgetragen?**

Herr Lohr hat im telefonischen Risikoaufklärungsgespräch folgende Angaben über seine Anlageziele, praktischen Erfahrungen und Kenntnisse getätigt:

- Mittelfristiger Anlagezeitraum
- Anlagezweck ist Vermögensaufbau
- Innerhalb der sechs Risikostufen, deren Kenntnis Herr Lohr auf Nachfrage durch Schweigen bestätigt, stuft er sich in Risikoklasse 3 ein, was auch der Risikoeinstufung des Alpha-Expresszertifikats entspricht.
- Herr Lohr verfügt über Kenntnisse und praktische Erfahrungen beim Kauf von Wertpapieren und Aktien. Er weist darauf hin, dass er seit dem Crash keine Aktieneinzeltitel mehr kauft. Der jährliche Umfang seiner aktuellen Wertpapiergeschäfte liegt bei über 25.000 Euro. Optionsscheine oder geschlossene Immobilienfonds besitzt er nicht.
- Neben der Verbindung zur 1822direkt besitzt Herr Lohr Wertpapierdepots bei comdirect (hierhin wurde das Alpha-Expresszertifikat nach dem Kauf sofort übertragen) sowie beim S broker.
- Das Geld- und Wertpapiervermögen liegt oberhalb von 125.000 Euro, genauso die sonstigen Vermögenswerte. Das verfügbare Nettoeinkommen p.a. liegt bei über 30.000 Euro.
- Herr Lohr kauft Wertpapiere nicht auf Kreditbasis.

Aufgrund der obigen Aussagen von Herrn Lohr und dem aufgeklärten Eindruck, den er im Telefongespräch hinterlässt, ist die Frankfurter Sparkasse der Auffassung, dass Herr Lohr über die notwendigen Kenntnisse und Erfahrungen für den Kauf des Alpha-Expresszertifikats verfügt und die 1822direkt die notwendigen Schritte unternommen hat, um ihn auf die mit der Investition verbundenen Chancen und Risiken hinzuweisen.



**Frankfurter Sparkasse**

*1822*

Seite 4 von 5
23. Dezember 2008

**Welche Unterlagen wurden Herrn Lohr ausgehändigt? Hat er den Verkaufsprospekt erhalten oder wurde ihm dieser zumindestens angeboten?**

Herrn Lohr wurde am 5. Januar 2007 der Flyer für das Alpha-Expresszertifikat per E-Mail übersandt. Den beiliegenden Zeichnungsauftrag hat er daraufhin eigenständig und von ihm unterschrieben am gleichen Tag an die 1822direkt zurückgesandt. Teil der Order war die Weisung, das Alpha-Express-Zertifikat gleich nach dem Kauf auf sein Depot bei der comdirect (7262322) zu übertragen.

Nach dem gleichen Muster hat Herr Lohr am 23. Februar 2007 einen Flyer über das 8% DAX Reverse Protect miniMAX-Zertifikat der LandesBank Berlin (DE000LBB1Y32 / LBB 1Y3) erhalten, am 27. Februar 2007 gezeichnet und das Zertifikat nach Kauf sofort wieder zu einer anderen Bank übertragen.

**Ist ein Hinweis auf Provisionszahlungen erfolgt?**

Herrn Lohr sind mit Aufnahme der Vertragsbeziehungen zur 1822direkt durch die Eröffnung eines Kontos (1253686473) am 4. Juli 2006 die „Allgemeinen Geschäftsbedingungen und Sonderbedingungen" übersandt worden, in denen unter der Überschrift „Informationen über Kosten und Sicherheitsleistungen" auf Provisionen und andere geldwerte Vorteile im Rahmen eines Wertpapiergeschäfts hingewiesen wird. Mit der Depoteröffnung am 5. Januar 2007 hat er die Basisinformationen für Wertpapiergeschäfte erhalten, in diesen ist ein ähnlicher Hinweis enthalten. Im Flyer finden sich auf den Seiten 14 und 15 Hinweise darauf, dass der Erwerb mit Kosten und Gebühren verbunden ist bzw. das die Vertriebsgesellschaft eine Vertriebsgebühr erhält. Ein Hinweis über Provisionszahlungen im vorliegenden Mitschnitt des Telefongesprächs vom 5. Januar 2007 erfolgte nicht.

**Hat Herr Lohr mittlerweile eine Antwort auf sein Schreiben vom 17.10.08 erhalten?**

Herr Lohr hat für die beiden Käufe von Zertifikaten bei der 1822direkt jeweils ein Depot eröffnet. Da er die Wertpapiere anschließend zu einer anderen Bank übertragen hat, wurden diese Depots im März 2007 bzw. April 2008 wieder geschlossen. Sein Tagesgeldkonto 1253686473 hat er am 3. April 2008 bei uns geschlossen, das Guthaben wurde gemäß Kundenweisung auf ein Konto bei der Kreissparkasse Bieberach überwiesen.

Da somit keine Kundenverbindung mehr mit Herrn Lohr bestand, als der Lehman Brothers Konzern in die Insolvenz ging, lagen auch keine aktuellen Kontaktdaten mehr vor, weshalb Herr Lohr die beiden Kundeninformationsschreiben der Frankfurter Sparkasse zum damals aktuellen Stand

# Frankfurter Sparkasse

*1822*

sowie zum Angebot, die Kundenforderung beim Insolvenzverwalter über eine international renommierte Anwaltskanzlei anzumelden, nicht erhalten hat. Zu Ihrer Information legen wir die beiden Schreiben als Anlage 3 und 4 bei.

Auf sein Schreiben vom 29. September 2008 hat Herr Lohr am 20. Oktober 2008 eine Eingangsbestätigung der 1822direkt erhalten, verbunden mit der Bitte um etwas Geduld, da die Klärung des Vorgangs noch etwas Zeit in Anspruch nehmen wird.

Am 13. Oktober 2008 hat sich Herr Lohr per E-Mail an die Ombudsfrau der Frankfurter Sparkasse, Frau Ursula Fokken-Müller, gewandt. Am 27. Oktober 2008 hat die Ombudsfrau den Eingang der E-Mail bestätigt und eine Klärung des Sachverhalts zugesagt. Sie hat ebenfalls um etwas Geduld gebeten und auch die Bitte geäußert von Nachfragen abzusehen, da wir uns melden würden.

Die Frankfurter Sparkasse ist davon überzeugt, dass ihre Kunden im Rahmen der anleger- und anlagegerechten Beratung auf die bestehenden Chancen und Risiken hingewiesen worden sind. Sollten Kunden – wie Herr Lohr - dennoch Beratungsfehler geltend machen, so wird jeder einzelne Fall geprüft werden. Wenn Beratungsfehler gemacht worden sind, wird die Frankfurter Sparkasse selbstverständlich zu ihrer Verantwortung gegenüber dem Kunden stehen. In einigen Härtefällen prüft sie einen finanziellen Ausgleich. Die Details eines Angebots an unsere Kunden stehen jedoch noch nicht fest. Aktuell werden alle Fälle geprüft. Wenn eine größere Zahl von Fällen geprüft wurde und uns stabile Kriterien vorliegen, wird die Frankfurter Sparkasse auf ihre Kunden zugehen und sie über das Ergebnis der Prüfung informieren. Auch der Fall von Herrn Lohr wird aktuell geprüft.

Im Fall von Herrn Lohr würden wir von diesem Verfahren eine Ausnahme machen und ihm auf Basis des beigelegten Briefs (Anlage 5) bereits vor unseren anderen Kunden das Ergebnis unserer Prüfung mitteilen. Die Frankfurter Sparkasse ist auf Basis der uns vorliegenden Unterlagen, insbesondere des Telefonmitschnitts der Risikoaufklärung von Herrn Lohr, der Auffassung, dass Herr Lohr anleger- und anlagegerecht beraten worden ist, weshalb wir keine Verpflichtung zum Schadensersatz sehen. Da das Durchschnittsguthaben von Herrn Lohr im Januar 2007 alleine bei der 1822direkt bei rund 206.000 Euro lag, sehen wir auch keinen sozialen Härtefall.

Diesem Brief fügen wir gemäß Ihrer Vorgabe eine doppelte Ausfertigung zur Weitergabe an den Beschwerdeführer bei.

Mit freundlichen Grüßen

Herbert Pfennig

Dr. Georg Stocker

**Bundesanstalt für
Finanzdienstleistungsaufsicht**



# BaFin

BaFin | Postfach 50 01 54 | 60391 Frankfurt

Herrn
Andreas Lohr
Maybachstr. 28
74343 Sachsenheim

22.01.2009
GZ: WA 32 - QB 4101 - 10 - 101252 - 2008/16 (Bitte stets angeben)
Ihre Beschwerde gegen die Frankfurter Sparkasse

Ihr Schreiben vom 25.11.2008

Anlagen: Stellungnahme der Frankfurter Sparkasse vom 23.12.2008
nebst Anlagen

Sehr geehrter Herr Lohr,

ich komme nochmals auf Ihre obige Beschwerde, deren Eingang ich mit
Schreiben vom 08.12.2008 bestätigte, zurück. Ich möchte Ihre
Beschwerde nunmehr abschließend beantworten. Lassen Sie mich zuvor
noch kurz die Aufgabenstellung der Bundesanstalt für
Finanzdienstleistungsaufsicht (BaFin) Sektor Wertpapieraufsicht/Asset-
Management darstellen:

Mir obliegt die Aufsicht über Wertpapierdienstleistungsunternehmen,
also auch über Kreditinstitute wie die Frankfurter Sparkasse, soweit sie
Wertpapierdienstleistungen allein oder zusammen mit
Wertpapiernebendienstleistungen erbringen. Meine Befugnisse
beschränken sich jedoch auf die im Gesetz über den Wertpapierhandel
(WpHG) vorgesehene Aufgabe, Missständen entgegenzuwirken, welche
die ordnungsgemäße Durchführung des Wertpapierhandels
beeinträchtigen oder erhebliche Nachteile für den Wertpapiermarkt
bewirken können. Gemäß § 4 Abs. 4 des
Finanzdienstleistungsaufsichtsgesetzes (FinDAG) nehme ich diese
Aufgaben ausschließlich im öffentlichen Interesse wahr. Zur
Wahrnehmung der Interessen einzelner Kunden gegenüber Wertpapier-
dienstleistungsunternehmen oder zu streitschlichtenden Maßnahmen
zugunsten der Kunden bin ich nicht ermächtigt. Es ist mir auch
verwehrt, Gutachten zu erstellen oder Stellungnahmen abzugeben, um
in einem eventuellen Zivilprozess die eine oder andere Seite zu
unterstützen. Sofern Sie der Auffassung sind, Sie hätten einen
Schadensersatzanspruch gegen die Frankfurter Sparkasse bzw.

**Wertpapieraufsicht | Asset-
Management**

Hausanschrift:
Bundesanstalt für
Finanzdienstleistungsaufsicht
Lurgiallee 12
60439 Frankfurt | Germany

Kontakt:
Herr Frank Russo
Referat WA 32
Fon +49 (0)2 28 41 08-4367
Fax +49 (0)2 28 41 08-123
Frank.Russo@bafin.de
www.bafin.de

Zentrale:
Fon +49 (0)2 28 41 08-0
Fax +49 (0)2 28 41 08-123

Dienstsitze:
53117 Bonn
Graurheindorfer Str. 108
Georg-von-Boeselager-Str. 25
Friedrich-Wöhler-Str. 2
Friedrich-Wöhler-Str. 69

60439 Frankfurt
Lurgiallee 12

**Bundesanstalt für
Finanzdienstleistungsaufsicht**



**BaFin**

Seite 2 | 5

1822direkt, darf ich Sie bei der Geltendmachung eines etwaigen
Anspruchs aufgrund meiner Aufgabenstellung nicht unterstützen.
Schadensersatzansprüche beurteilen sich nicht nach dem Aufsichtsrecht,
sondern nach dem Zivilrecht. Ich bin lediglich dazu befugt, eine
Beschwerde unter aufsichtsrechtlichen Gesichtspunkten zu prüfen. Es
bleibt Ihnen allerdings unbenommen, etwaige zivilrechtliche
Schadensersatzansprüche zivilgerichtlich zu verfolgen.

Anleger, die der Ansicht sind, ein Wertpapierdienstleistungsunternehmen
sei bei der Erbringung von Wertpapierdienstleistungen seinen im WpHG
begründeten Pflichten nicht nachgekommen, können sich dennoch an
mich wenden. Im Rahmen meiner Aufgabenstellung ist es mir möglich,
mich aufgrund einer vorliegenden Kundenbeschwerde an das
Wertpapierdienstleistungsunternehmen zu wenden und um eine
Stellungnahme zu dem konkreten Vorgang zu bitten. Dies habe ich für
Sie getan. Die Stellungnahme nebst Anlagen übersende ich Ihnen mit
der Bitte um Kenntnisnahme.

Beschwerden von Kunden stellen für mich eine wichtige Erkenntnisquelle
für die Erfüllung meiner im Gesetz über den Wertpapierhandel
geregelten Aufgaben dar. Ich überprüfe die den Beschwerden zugrunde
liegenden Sachverhalte auf Verstöße gegen das Aufsichtsrecht und
ergreife ggf. Maßnahmen, sofern ich Verstöße gegen das Aufsichtsrecht
festgestellt habe. Über etwaige Feststellungen sowie eventuelle
aufsichtsrechtliche Maßnahmen erteile ich den Beschwerdeführen jedoch
keine Auskünfte. Einer solchen Auskunftserteilung steht meine in § 8
WpHG normierte Verschwiegenheitspflicht entgegen.

Nach der Darstellung meiner Aufgabenstellung und meiner
Handlungsmöglichkeiten möchte ich auf die von Ihnen erhobenen
Vorwürfe gegenüber der 1822direkt bzw. Frankfurter Sparkasse näher
eingehen.

Soweit Sie vorbringen, Sie hätten von der Frankfurter Sparkasse bislang
noch keine Stellungnahme zu Ihrem Schreiben vom 17.10.2008
erhalten, ist auszuführen, dass die Frankfurter Sparkasse hierzu
nunmehr Stellung genommen hat. Nach Prüfung des von Ihnen
vorgetragenen Sachverhalts vertritt die Frankfurter Sparkasse die
Auffassung, Sie seien im Zuge des Kaufs des Alpha-Express-Zertifikats
der Lehman Bros. Treasury Co. B.V. (WKN A0LJV6) im Januar 2007
anleger- und anlagegerecht beraten worden. Sie sehe daher keine
Schadensersatzverpflichtung gegenüber Ihnen. Darüber hinaus trägt die
Frankfurter Sparkasse vor, dass kein „sozialer Härtefall" vorliege. Wenn
ein so genannter Härtefall vorgelegen hätte, hätte sie einen finanziellen

**Bundesanstalt für
Finanzdienstleistungsaufsicht**



**BaFin**

Seite 3 | 5

Ausgleich überprüft. Die Details eines solchen Ausgleichsangebots ständen allerdings noch nicht fest.

Aufgrund meiner zuvor beschriebenen Aufgabenstellung bin ich nicht befugt, die Entscheidung der Frankfurter Sparkasse zu Ihren Gunsten zu ändern. Es bleibt Ihnen allerdings unbenommen, einen etwaigen Schadensersatzanspruch gegenüber der Frankfurter Sparkasse bzw. 1822direkt zivilgerichtlich zu verfolgen.

Soweit Sie vorbringen, nach der Insolvenz des Lehman-Konzerns keine Informationen erhalten zu haben, trägt die Frankfurter Sparkasse vor, Sie hätten zum Zeitpunkt der Insolvenz keine Geschäftsverbindung mit der Frankfurter Sparkasse gehabt, so dass ihr die aktuellen Kontaktdaten nicht vorgelegen hätten. Daher hätten Sie keine Information über den aktuellen Stand sowie zum Angebot, Kundenforderungen gegen die Emittentin im Insolvenzverfahren über eine Anwaltskanzlei geltend zu machen, erhalten.

Hierzu ist auszuführen, dass die Frankfurter Sparkasse für das hier in Rede stehende Zertifikat aufsichtsrechtlich nicht dazu verpflichtet ist, Sie über die Insolvenz der Emittentin zu unterrichten und Ihnen ein Angebot zur Unterstützung bei der Geltendmachung von Forderungen im Insolvenzverfahren zu machen. Eine aufsichtsrechtliche Rechtsgrundlage ist hierfür nicht ersichtlich. Sofern sich eine entsprechende Verpflichtung aus nicht-aufsichtsrechtlichen Gründen ergeben sollte, kann ich dies nicht beurteilen.

Soweit Sie vortragen, andere Banken würden Entschädigungsangebote gegenüber geschädigten Anlegern machen, ist auszuführen, dass ich aufgrund meiner Aufgabenstellung nicht die Möglichkeit habe, auf Banken einzuwirken, damit diese geschädigten Anlegern ein Entschädigungsangebot unterbreiten.

Soweit Sie vortragen, Ihnen sei eine „ungeeignete Altersvorsorge" verkauft worden, ist auszuführen, dass ein Wertpapierdienstleistungsunternehmen seinerzeit, als das Zertifikat verkauft wurde, nach § 31 Abs. 2 WpHG in der vor dem 01.11.2007 geltenden Fassung verpflichtet war, von seinen Kunden Angaben über ihre Erfahrungen oder Kenntnisse in Geschäften, die Gegenstand von Wertpapierdienstleistungen oder Wertpapiernebendienstleistungen sein sollen, über ihre mit den Geschäften verfolgten Ziele und über ihre finanziellen Verhältnisse zu verlangen und seinen Kunden alle zweckdienlichen Informationen mitzuteilen, soweit dies zur Wahrung der Interessen der Kunden und im Hinblick auf die Art und den Umfang der beabsichtigten Geschäfte erforderlich war. Diese Pflichten wurden in der



Seite 4 | 5

seinerzeit geltenden Richtlinie gemäß § 35 Abs. 6 WpHG a.F.
(Wohlverhaltensrichtlinie) zur Konkretisierung der §§ 31, 32 WpHG a.F.
konkretisiert. Die Wohlverhaltensrichtlinie beinhaltete u. a. in Teil B,
Ziffer 2.2.1 die Verpflichtung eines
Wertpapierdienstleistungsunternehmens, Kunden über die
Bonitätsrisiken eines Zertifikats aufzuklären. Zertifikate sind nämlich
Inhaberschuldverschreibungen. Zudem war es einem
Wertpapierdienstleistungsunternehmen nach § 32 Abs. 1 Nr. 1 WpHG
a.F. verboten, Kunden den Ankauf oder Verkauf von Finanzinstrumenten
zu empfehlen, wenn und soweit die Empfehlung nicht mit den
Interessen des Kunden übereinstimmte. Ob die Frankfurter Sparkasse,
der das Handeln der 1822direkt gemäß § 2 a Abs. 2 S. 2 WpHG
aufsichtsrechtlich zugerechnet wird, diesen vorgenannten
Verpflichtungen nachgekommen ist, darf ich Ihnen aufgrund meiner in §
8 WpHG normierten Verschwiegenheitspflicht nicht mitteilen.

Soweit Sie vortragen, Ihnen sei zu Unrecht kein Prospekt ausgehändigt
worden, ist auszuführen, dass aufsichtsrechtlich keine Verpflichtung
eines Wertpapierdienstleistungsunternehmen zur Aushändigung bzw.
zum unaufgeforderten Anbieten eines Verkaufsprospekts in Bezug auf
ein Zertifikat als Wertpapier besteht. Das Investmentgesetz, das Regeln
zum unaufgeforderten Anbieten und der Aushändigung von
Verkaufsprospekten in §§ 121 ff. Investmentgesetz regelt, findet bei
Zertifikaten keine Anwendung, da Zertifikate keine Anteile an
Sondervermögen sind. Vielmehr handelt es sich bei Zertifikaten um
Inhaberschuldverschreibungen. Im Wertpapierhandelsgesetz ist eine
Verpflichtung zur Aushändigung oder zum unaufgeforderten Anbieten
eines Verkaufsprospektes im Sinne des Wertpapierprospektgesetzes
nicht geregelt. Nichtsdestotrotz war die Frankfurter Sparkasse dazu
verpflichtet, ihren Aufklärungspflichten nach dem WpHG
nachzukommen.

Soweit Sie vorbringen, die Mitarbeiter der 1822direkt verfügten über
keine Sachkenntnisse, kann ich diesen Vorwurf nicht bestätigen.

Soweit Sie vortragen, Sie seien nicht über verdeckte Rückvergütungen
aufgeklärt worden, ist auszuführen, dass auf den Seiten 14 und 15 des
Produktflyers angegeben ist, dass der Erwerb des Zertifikats mit Kosten
und Gebühren verbunden ist. Ebenso wurde darauf hingewiesen, dass
die Vertriebsgesellschaft, d.h. die Frankfurter Sparkasse und die
1822direkt, das Zertifikat zu einem reduzierten Ausgabepreis oder zum
Ausgabepreis erwirbt oder dass sie eine Vertriebsgebühr erhält, die von
dem Kunden zusätzlich zu weiteren Verkaufsprovisionen und –kosten
getragen werden muss. Dieser Hinweis ist den seinerzeit geltenden
aufsichtsrechtlichen Anforderungen gerecht geworden, vgl. Teil B, Ziffer

**Bundesanstalt für
Finanzdienstleistungsaufsicht**



Seite 5 | 5

1.2 der seinerzeit geltenden Wohlverhaltensrichtlinie. Vereinbarte
nämlich ein Wertpapierdienstleistungsunternehmen mit anderen
eingeschalteten Unternehmen die teilweise Rückzahlung von dem
Kunden als Aufwendungsersatz in Rechnung gestellten fremden Kosten
an sich ("Kick-Back-Vereinbarungen"), so hat das
Wertpapierdienstleistungsunternehmen den Kunden gemäß Teil B Ziffer
1.2 der Wohlverhaltensrichtlinie hierüber aufzuklären. Diese Aufklärung
konnte wie hier in allgemeiner Form geschehen. Erst auf Nachfrage
waren diese fremden Kosten zu erläutern. Ob der Hinweis auf dem
Produktflyer zivilrechtlichen Anforderungen genügt, kann ich nicht
beurteilen.

Soweit Sie vorbringen, Sie seien nicht eindeutig darauf hingewiesen
worden, dass die Lehman Bros. Treasury Co. B.V. Emittentin und die
Lehman Bros. Holdings Inc. Garantiegeberin seien, ist auszuführen, dass
Ihrem Vortrag die Angaben auf Seite 8 des Produktflyers
entgegenstehen, da dort die vorbezeichnete Emittentin und die
vorbezeichnete Garantiegeberin genannt werden.

Mit freundlichen Grüßen

Im Auftrag

(Russo)