Hearing Date and Time: March 11, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: March 6, 2009 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                            :      Chapter 11 Case No.
                                                 :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,         :      08-13555 (JMP)
                                                 :
                           Debtors.              :      (Jointly Administered)
                                                 :
                                                 :
------------------------------------------------------------x

### NOTICE OF HEARING REGARDING DEBTORS' APPLICATION PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF HURON CONSULTING GROUP AS TAX SERVICES PROVIDERS *NUNC PRO TUNC* TO JANUARY 23, 2009

PLEASE TAKE NOTICE that a hearing on the annexed application (the "Application") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors"), pursuant to sections 327(a) and 328(a) of the Bankruptcy Code approving the retention and employment of Huron Consulting Group ("Huron") tax services provider in connection with these chapter 11 cases, *nunc pro tunc* to January 23, 2009, all as more fully described in the Application, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York,

New York 10004 (the "Bankruptcy Court") on **March 11, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Application shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to the chambers of the Honorable James M. Peck), and shall be served upon: (i) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., attorneys for the Debtors; (ii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto,Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; and (iii) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; so as to be filed and received by no later than **March 6, 2009 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Application is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: February 23, 2009
      New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow, Esq.
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for the Debtor
And Debtor in Possession

3

Hearing Date and Time: March 11, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: March 6, 2009 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
:
In re                                                  :    Chapter 11 Case No.
                                                       :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,               :    08-13555 (JMP)
                                                       :
                        Debtors.                       :    (Jointly Administered)
                                                       :
                                                       :
-------------------------------------------------------x

### DEBTORS' APPLICATION PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF HURON CONSULTING GROUP AS TAX SERVICES PROVIDERS *NUNC PRO TUNC* TO JANUARY 23, 2009

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this Application and respectfully represent:

### BACKGROUND

1.    Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

4. On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

## JURISDICTION

5. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## LEHMAN'S BUSINESS

6. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

7. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is

2

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## RELIEF REQUESTED

8.  By this Application, the Debtors seek entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code approving the retention and employment of Huron Consulting Group ("Huron") as tax services providers in connection with their chapter 11 cases, *nunc pro tunc* to January 23, 2009. Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors request that the Court approve the retention of Huron to perform certain tax services (collectively, the "Services") all as more fully described in the Declaration of Robert J. Pawlak, a managing director of Huron, sworn to February 23, 2008, annexed hereto as Exhibit 1 (the "Pawlak Declaration") and in accordance with the terms and conditions set forth in the agreements between the Debtors and Huron, including without limitations, the provisions described in the engagement letter, dated as of December 17, 2008 (the "Engagement Letter"), a copy of which is attached as Exhibit A to the Pawlak Declaration, as modified by Paragraph 21 of the Pawlak Declaration.

9.  The services to be provided under the Engagement Letter include, but are not limited to, the preparation of Form 5471, 8865, and 8858 tax returns, as described on Attachment A to the Engagement Agreement at the blended rate described below. In addition, to the extent the Debtors require additional tax or other services beyond those listed on Attachment A to the Engagement Letter, Huron will provide such services at the rates described below.

10. The Debtors request that Huron's retention be made effective *nunc pro tunc* to January 23, 2009 to allow Huron to be compensated for work performed on behalf of the

3

Debtors on or after January 23, 2009, which is the date that the Engagement Letter was executed, but prior to the submission of this Application. Huron has been actively engaged in providing the Services since January 23, 2009, because, as noted in the Pawlak Declaration, Huron expects the Services to require approximately 25,000 person hours and, with respect to some of the Services, all of the work must be completed before September 15, 2009. Based on this relatively brief interval, the volume of work to be completed, and the extraordinary circumstances of these chapter 11 cases, retroactive approval is warranted, particularly since the services Huron has provided are of value to the estates and all parties in interest. *See In re Hasset, Ltd.*, 283 B.R. 376, 379 (Bankr. E.D.N.Y. 2002) (approving *nun pro tunc* retention application after recognizing that "*nunc pro tunc* applications are disfavored in this Circuit, *see In re Hazen Agricultural Products Service, Inc.*, 109 B.R. 602 (Bankr. W.D.N.Y. 1990), but have been permitted when the attorney performs services of 'value' to the estate"); *see also In re Jarvis*, 53 F.3d 416 (1st Cir. 1995) (finding that a bankruptcy court may grant *post facto* application if employment meets statutory requirements and delay results from extraordinary circumstances); *In re Arkansas Co., Inc.*, 798 F.2d. 645 (3d Cir. 1986) (opining that bankruptcy courts have discretion in extraordinary circumstances to retroactively approve a professional's employment); *In re Triangle Chems. Inc.*, 697 F.2d 1280 (5th Cir. 1983) (holding that a bankruptcy court has discretion, as a court of equity, to consider whether such approval of employment should be granted *nunc pro tunc*).

## BASIS FOR RELIEF

11. The Debtors seek approval to retain Huron pursuant to section 327(a) of the Bankruptcy Code. Section 327(a) provides, in relevant part, that the Debtors "with the court's approval, may employ ... professional persons, that do not hold or represent an interest

4

adverse to the estate, and that are disinterested persons, to represent or assist" the Debtor in fulfilling its duties under the Bankruptcy Code.

## THE RETENTION OF HURON

12. Huron is a respected and experienced consulting services firm, well recognized in the fields of tax and bankruptcy and is frequently engaged by companies that have chapter 11 cases pending in United States bankruptcy courts. The Debtors believe that Huron possesses extensive tax expertise useful in these cases, and that Huron is well-qualified to advise the Debtors. Furthermore, the Debtors selected Huron because of their expertise in providing tax services to debtors and creditors in chapter 11 and other distressed situations. *See e.g., In re The 1031 Tax Group, LLC*, Case No. 07-11448 (MG) (Bankr. S.D.N.Y. July 3, 2007) [Doc. No. 334]; *In re Delta Air Lines, Inc., et al.*, Case No. 05-17923 (ASA) (Bankr. S.D.N.Y. Jan. 23, 2007) [Doc. No. 4234]; *In re Northwest Airlines Corporation, et al.*, Case No. 05-17930 (ALG) (Bankr. S.D.N.Y. Oct. 27, 2005) [Doc. No. 822]; *In re The Delaco Company*, Case No. 04-10899 (CB) (Bankr. S.D.N.Y. Mar. 3, 2004) [Doc. No. 48]; *In re Global Crossing Ltd., et al.*, Case No. 02-40187 (REG) (Bankr. S.D.N.Y. July 15, 2002) [Doc. No. 1446].

13. Furthermore, Huron has indicated a desire and willingness to act in these chapter 11 cases and render the necessary professional services as tax services providers for the Debtors, on the terms set forth in the Engagement Letter and described herein, and to subject itself to the jurisdiction of the Court.

14. Therefore, the Debtors submit that the retention of Huron on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of their estates, creditors, and all other parties in interest, and should be granted in all respects.

## HURON'S DISINTERESTEDNESS

15.  To the best of the Debtors' knowledge, information and belief, neither Huron nor any professional employee of Huron has any connection with, or any interest adverse to, the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants, except as may be set forth in the Pawlak Declaration.

16.  Huron has informed the Debtors that as of January 23, 2008, Huron was not owed any money by the Debtors in respect of services provided by Huron both prior to and following the Commencement Date.

17.  Based upon the Pawlak Declaration, the Debtors submit that Huron is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code. The Debtors have been informed that Huron will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, Huron will supplement its disclosure to the Court.

## PROFESSIONAL COMPENSATION

18.  Pursuant to section 328(a) of the Bankruptcy Code, the Debtors may retain Huron on reasonable terms and conditions. Section 328 of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327... on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

19.  As recognized by numerous courts, Congress' intent in section 328(a) was to enable debtors to retain professionals pursuant to specific fee arrangements to be determined

6

at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a); *see also Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862-3 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").

20. Accordingly, section 328 permits the compensation of professionals, including tax service providers, on terms that reflect the nature of their services and market conditions. In the previous weeks, the Debtors negotiated the terms of the Engagement Letter, which reflect commercially reasonable compensation and employment agreements. Thus, the Debtors request approval of the Engagement Letter, including the fee and expense structure (the "Fee Structure") and the reimbursement provisions described therein, pursuant to section 328(a) of the Bankruptcy Code.

21. Pursuant to the terms and conditions of the Engagement Letters, Huron intends to charge the Debtors a single blended rate of $145 per hour for the services listed on Attachment A to the Engagement letter.

22. To the extent the Debtors require additional tax services beyond those listed on Attachment A to the Engagement Letter, Huron will provide those services at the following hourly rates:

7

| Title | Hourly Rate |
|---|---|
| Tax Managing Director | $350 |
| Tax Senior Director | $250 |
| Tax Manager | $185 |
| Tax Associate | $125 |

23. To the extent the Debtors require additional services beyond the tax return preparation contemplated in the Engagement Agreement, and outside the scope of Huron's tax services, Huron and the Debtors will agree in writing on the scope of such services and the following hourly rates will apply:

| Title | Hourly Rate |
|---|---|
| Managing Director | $325 - $730 |
| Director | $225 - $620 |
| Manager | $185 - $575 |
| Associate | $185 - $345 |
| Analyst | $125 - $245 |

24. Huron's hourly rates are revised periodically in the ordinary course of its business. The Debtors understand that Huron will advise the Debtors of their new rates if a rate change occurs during the course of Huron's engagement.

25. In addition to the hourly rates set forth above, the Debtors shall reimburse Huron for any direct expenses incurred in connection with Huron's retention in these chapter 11 cases and the performance of the Services set forth in the Engagement Letter. Huron's direct

8

expenses shall include, but not be limited to, reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations and other expenses (including any fees or reasonable expenses of Huron's legal counsel, but not any such legal fees or expenses related to Huron's efforts to be retained or to Huron's fee applications in these chapter 11 cases) specifically related to this engagement.

26.  The compensation arragements provided for in the Engagement Letter are consistent with and typical of arrangements entered into by Huron and other tax firms with respect to rendering comparable services for clients similar to the Debtors, both in and outside of bankruptcy.

27.  Considering the Services that Huron will provide, and the market prices for Huron's services, the Debtors submit that the Fee Structure (including reasonable reimbursements) is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code and fulfills the requirements of Rule 2014-1 of the Local Rules.

28.  Except as set forth in the Pawlak Declaration, Huron has not shared or agreed to share any of its compensation in connection with this matter with any other person, as permitted by section 504 of the Bankruptcy Code.

## FEE APPLICATIONS

29.  Huron will file interim and final fee applications for allowance of its compensation and expenses, with respect to the Services, and Huron will seek compensation and reimbursement of expenses, as specified in the Engagement Letter, with the payment of such fees and expenses to be approved in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, local rules and orders of the Court, guidelines established by the U.S. Trustee, and such other procedures as may be fixed by order of this Court, including but not limited to the Court's Amended Order Pursuant to Sections

105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals, dated November 19, 2008 [Docket No. 1604]. However, the services contemplated by the Engagement Letter include procedures that are repetitive and that require substantial blocks of uninterrupted time. Accordingly, the Debtor's request that Huron be allowed to maintain its detailed time records to the nearest quarter hour instead of the nearest tenth of an hour.

## **OTHER TERMS OF THE ENGAGEMENT LETTER AS MODIFIED BY THE DECLARATION**

30. The Engagement Letter, has been modified pursuant to paragraph 26 of the Pawlak Declaration, as follows:

a. The provision in the Engagement Agreement's General Business Terms relating to arbitration in the event a dispute arises between the Debtors and Huron is hereby revised to provide that the arbitration provision shall apply only to the extent that the United States Bankruptcy Court, or the United States District Court if the reference is withdrawn, does not retain jurisdiction over a controversy or claim.

b. All requests of Huron for payment of indemnity pursuant to the Engagement Agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall Huron be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

c. In no event shall Huron be indemnified if the Debtors or a representative of the estates asserts a claim for, and a court determines by final order that such claim arose out of, Huron's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

d. In the event that Huron seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Agreement, the invoices and supporting time records from such attorneys shall be included in Huron's own monthly fee statement and shall be subject to the same payment procedures applicable to professionals in these cases.

10

e.     The Engagement Agreement's General Business Terms shall apply solely to claims of Huron and the Debtors against each other, and shall not apply if the Debtors or a representative of the estates asserts a claim for, and a court determines by final order that such claim arose out of, Huron's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct. Additionally, the phrase "for the portion of the engagement giving rise to liability" is deleted from this paragraph.

f.     To the extent this Order is inconsistent with the Engagement Agreement, this Order shall govern.

## NOTICE

31.     No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Application in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (v) Huron; and (vii) all parties who have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

11

32. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just.

Dated: February 23, 2008
New York, New York

_____
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession