Hearing Date: February 26, 2009, 2:00 p.m., prevailing Eastern Time

| | |
|---|---|
| DEWEY & LeBOEUF LLP<br>1301 Avenue of the Americas<br>New York, NY 10019<br>Telephone: (212) 259-8000<br>Facsimile: (212) 259-6333<br>Martin J. Bienenstock, Esq.<br>Irena M. Goldstein, Esq.<br>Donna L. Gordon, Esq. | FLASTER/GREENBERG PC<br>1628 John F. Kennedy Blvd.<br>Philadelphia, PA 19103<br>Telephone: (215) 279-9393<br>Facsimile: (215) 279-9394<br>Eugene J. Chikowski, Esq.<br>Greg T. Kupniewski, Esq. |

Co-Attorneys for American Express Travel Related Services Company

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
In re                                                        :
                                                             :   Chapter 11 Case No.
LEHMAN BROTHERS HOLDINGS INC.,                               :
*et al.*                                                     :   08-13555 (JMP)
      **Debtors.**                :
                                                             :   (Jointly Administered)
                                                             :
------------------------------------------------------------ x
BARCLAYS CAPITAL INC.,                                       :
                                                             :
    Movant for Rule 60(b) Relief,              :
      v.                              :
                                                             :   **REDACTED VERSION**
AMERICAN EXPRESS TRAVEL                                      :
RELATED SERVICES COMPANY,                                    :
                                                             :
    Respondent.                                 :
------------------------------------------------------------ x
AMERICAN EXPRESS TRAVEL                                      :
RELATED SERVICES COMPANY,                                    :
                                                             :
    Movant for Rule 37 Relief,                  :
      v.                              :
                                                             :
BARCLAYS CAPITAL INC.,                                       :
                                                             :
    Respondent.                                 :
------------------------------------------------------------ x

**AMEX'S RESPONSE TO BARCLAYS CAPITAL INC.'S MEMORANDUM OF LAW IN
OPPOSITION TO AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY
INC.'S APPLICATION TO COMPEL DISCLOSURE OF A PRIVILEGED
COMMUNICATION BETWEEN BARCLAYS' OUTSIDE AND IN-HOUSE COUNSEL**

NYC 687304.1

Hearing Date: February 26, 2009, 2:00 p.m., prevailing Eastern Time

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 3

I.  BARCLAYS HAS EXPRESSLY WAIVED THE ATTORNEY-CLIENT
    PRIVILEGE AND THE ATTORNEY WORK PRODUCT PROTECTION
    WITH RESPECT TO MR. WHITE'S OCTOBER 1, 2008 COMMUNICATION
    WITH MS. GRANFIELD .............................................................................................. 3

    A.  Barclays Expressly Waived the Attorney-Client Privilege
        Regarding Its Communications With Outside Counsel
        About the Alleged Mistake .............................................................................. 5

    B.  Barclays Has Not Demonstrated That the White-Granfield
        Communication Constitutes Work Product Or That Work
        Product Protection Has Not Been Waived ...................................................... 8

    C.  Barclays Implicitly Waived Any Protections from
        Discovery by Placing the Purportedly Privileged Communication
        "At Issue" ....................................................................................................... 12

II. BARCLAYS'S ASSERTIONS OF PRIVILEGE ARE IMPROPER SINCE SOME
    OF THE INFORMATION AMEX SEEKS IS FACTUAL IN NATURE, AND THUS
    NOT PROTECTED FROM DISCOVERY AT ALL .................................................... 15

CONCLUSION AND REQUEST FOR RELIEF .................................................................. 16

Hearing Date: February 26, 2009, 2:00 p.m., prevailing Eastern Time

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

Allen v. West Point-Pepperell Inc.,
    848 F. Supp. 423 (S.D.N.Y. 1994) ...............................................................................15

Bausch & Lomb Inc. v. Alcon Labs., Inc.,
    173 F.R.D. 367 (W.D.N.Y. 1995)..............................................................................6, 7

Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.,
    215 F.R.D. 466 (S.D.N.Y. 2003) ....................................................................................4

In re Kidder Peabody Secs. Litig.,
    168 F.R.D. 459 (S.D.N.Y. 1996) ..................................................................................14

Kingsway Fin. Svcs., Inc. v. Pricewaterhouse-Coopers LLP,
    No. 03 Civ. 5560 (RMB)(HBP), 2008 WL 5423316 (S.D.N.Y. Dec. 31, 2008)...............13

Mohawk Indus., Inc. v. Interface, Inc.,
    No. 4:07-CV-0212-HLM, 2008 U.S. Dist. LEXIS 104317
    (N.D. Ga. Sept. 29, 2008) ...............................................................................................5

Pritchard v. County of Erie,
    546 F.3d 222 (2d Cir. 2008)....................................................................................13, 15

SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC,
    No. 01 Civ. 9291 (JSM), 2002 U.S. Dist. LEXIS 11949 (S.D.N.Y. July 3, 2002).............8

United States ex rel. Mayman v. Martin Marietta Corp.,
    886 F. Supp. 1243 (D. Md. 1995) ..................................................................................5

United States v. Jackson,
    969 F. Supp. 881 (S.D.N.Y. 1997) .................................................................................6

Upjohn Co. v. United States,
    449 U.S. 383 (1981)......................................................................................................15

**Other Authorities**

Paul F. Rothstein and Susan W. Crump, Federal Testimonial Privileges (2d ed. 2008) ...............12

Hearing Date: February 26, 2009, 2:00 p.m., prevailing Eastern Time

## PRELIMINARY STATEMENT

1.  On AmEx's Motion to Compel, Barclays[1] bears the burden of demonstrating that the attorney-client privilege and attorney work product protections apply and were not waived with respect to (1) the October 1, 2008 conversation between Jason White, in-house counsel at Barclays, and Lindsee Granfield of Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb"), outside counsel for Barclays and (2) Barclays-AmEx004901-902. Barclays has not satisfied its burden.

2.  Rather than submit fresh affidavits into evidence to support its assertions, Barclays tries to convince the Court, through conclusory statements, that Mr. White's declaration does not mean what it actually says. Barclays argues that Mr. White did not divulge the substance of his communication with Ms. Granfield, despite the fact that he created a clear link between his conversation with Ms. Granfield and his understanding that the AmEx Contracts were, in Barclays's view, mistakenly included on and were to be removed from the Non-IT Closing Date Contracts List. Barclays further contends that the sole purpose of Mr. White's declaration was to refute the statements made by Eugene Chikowski, outside counsel for AmEx. If that were true, however, Mr. White's declaration, which was drafted and vetted by counsel for Barclays, need not have even referred to his "understanding" and could have omitted paragraph three entirely.

3.  Barclays also attempts to avoid a finding of waiver by contending that the basis of Mr. White's "understanding" is, in any event, not his (purportedly) protected communication with Ms. Granfield, but a communication with a Barclays employee. This argument is also unavailing, for several reasons. Chief among them is the fact that ███████████

---

[1] Unless indicated otherwise, all capitalized terms used herein have the same definition as in AmEx's Motion to Compel the Disclosure of Allegedly Privileged Communications and Documents.

1

███████████████████████████████████████████████████████████

███████████████████████████

4. Nor can Barclays establish that the White-Granfield communication was made in anticipation of litigation. Barclays submitted no affidavit testimony as to when anyone had the subjective belief that litigation was likely. Instead, Barclays mischaracterizes the facts and asserts that the mistake here was always the listing of the AmEx Contracts. Barclays then argues that Ms. Granfield's supposed communication of this information to AmEx on September 23, 2008 created a contentious situation that made litigation likely. However, in seeking to establish the date upon which it reasonably anticipated litigation, Barclays relies upon the same "facts" set forth in its Rule 60(b) Motion (e.g., that Barclays notified AmEx on September 23, 2008 that the posting of the AmEx Contracts on the Non-IT Closing Date Contracts List was a mistake). In doing so, Barclays ignores the Court's previous finding that the evidence Barclays presented was insufficient to establish those facts. Indeed, the Court ordered discovery precisely because it was not satisfied that Barclays had sufficiently established its version of the facts. Thus, Barclays's contention that this Court should now accept the same facts (supported by the same evidence) to pinpoint the date upon which it reasonably anciticpated litigation is absurd. Just as the Court rejected Barclays's version of these facts then, it should do so now.

5. Indeed, Barclays's version of events is starkly contradicted by (1) Mr. Chikowski's declaration ███████████████ that AmEx was not informed until October 1, 2008 that the posting of the AmEx Contracts was a mistake; (2) contemporaneous email communications between Ms. Granfield and Mr. Chikowski, confirming that there was an issue only with respect to the cure amount for the AmEx Contracts and that Barclays was not intending to "raise hackles at AmEx"; (3) the unredacted version of Barclays-AmEx004901-902, ████

2

Hearing Date: February 26, 2009, 2:00 p.m., prevailing Eastern Time

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ (4) the fact that employees at AmEx and Barclays were, as late as September 29, 2008, amicably resolving the issue regarding the cure amount; and (5) Cleary Gottlieb's continued representation of Barclays after September 23, 2008.

6. While Barclays baldly asserts that it did not rely on Mr. White's "understanding" of the White-Granfield communication, and thus did not put it at issue, Barclays concedes that Mr. White's declaration put "at issue" how he characterized the alleged mistake in his October 1, 2008 communication with Mr. Chikowski. Barclays overlooks the fact that the very nature of the alleged mistake – was it a genuine, ministerial mistake or a business-motivated "change of mind" – is critical to this dispute and the entire point of discovery here.

7. Further, the very cases relied upon by Barclays demonstrate that Barclays improperly blocked discovery into the facts Mr. White learned from counsel. Barclays cannot shield these facts from discovery simply because it would like to do so.

8. Barclays's attempt to stave off the consequences of its express and implied waivers of protection lack any merit, and should be rejected for these and the following reasons.[2]

## ARGUMENT

### I. BARCLAYS HAS EXPRESSLY WAIVED THE ATTORNEY-CLIENT PRIVILEGE AND THE ATTORNEY WORK PRODUCT PROTECTION WITH RESPECT TO MR. WHITE'S OCTOBER 1, 2008 COMMUNICATION WITH MS. GRANFIELD

9. While Barclays's Opposition sets forth numerous principles of black letter law regarding the attorney-client privilege and the attorney work product doctrine, see, e.g., Opp'n at

---

[2] Importantly, the relief AmEx seeks is circumscribed and limited to focused discovery regarding the purported mistake that is the subject of Barclays's Rule 60(b) Motion. AmEx is not seeking to go to the heart of all privileged communications between Cleary Gottlieb and Barclays.

3

NYC 687304.1

Hearing Date: February 26, 2009, 2:00 p.m., prevailing Eastern Time

8, Barclays never discusses the fact that it – not AmEx – bears the burden of demonstrating that the protections apply and have not been waived. See AmEx's Mot. to Compel at ¶ 16 ("AmEx Mot.").

10. In attempting to overcome its burden, Barclays relies upon the same declarations it submitted in support of its Rule 60(b) Motion to establish the same set of facts it previously sought to establish in that Motion – e.g., that on September 23, 2008, Barclays communicated to AmEx that the posting of the AmEx Contracts was a mistake. Barclays's approach inappropriately disregards the fact that this Court already found that very evidence insufficient to support Barclays's characterization of the facts for the purposes of its Rule 60(b) Motion. See Decl. of Roy Taub in Further Support of AmEx's Motion to Compel the Disclosure of Allegedly Privileged Communications and Documents ¶ 2, Ex. A at 96:1-7 (Feb. 24, 2009) ("Taub Decl.") ("But as to the question or whether or not there has been a failure to make a prima facie case, I find that there has simply been a failure to provide a sufficient evidentiary record which may allow Barclays to establish its case."). Indeed, this is the very reason the Court ordered discovery and an evidentiary hearing in this matter.

11. For Barclays now to contend that AmEx's Motion should be denied based on the same evidence this Court previously deemed insufficient is incredible, as the same evidence that was insufficient for Barclays's Rule 60(b) Motion cannot now suddenly be sufficient as the basis for Barclays's Opposition to AmEx's Motion. While Barclays does set forth some newly minted arguments, the bulk of these assertions are not based on competent evidence such as sworn affidavits or deposition testimony. Barclays cannot meet its burden with mere conclusory or ipse dixit assertions in unsworn motion papers authored by attorneys. See Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc., 215 F.R.D. 466, 472 (S.D.N.Y. 2003); see also id. at 475 ("In order

to demonstrate . . . a subjective belief [that litigation was likely], a party asserting work product protection will generally submit affidavits or similar evidence establishing that it held such a belief.").

### A. Barclays Expressly Waived the Attorney-Client Privilege Regarding Its Communications With Outside Counsel About the Alleged Mistake

12. Barclays argues that Mr. White's declaration statement did not effect an express waiver because it "did not divulge the substance of the privileged communication between Ms. Granfield and Mr. White." Opp'n at 11. This argument ignores the actual language in Mr. White's declaration. See AmEx Mot. at ¶¶ 17-22. Mr. White did not, as Barclays contends, "merely reference[ ]" that he spoke with outside counsel. Opp'n at 11. Mr. White created a clear link between his conversation with Ms. Granfield and his understanding by stating:

> I spoke with Lindsee Granfield, outside counsel representing Barclays. After that conversation, I understood that an [AmEx] contract . . . had been erroneously listed. . . . I further understood that the Contract was being removed from the revised Schedule.

Taub Decl. ¶ 3, Ex. B at ¶ 3. By revealing his "understanding" after speaking with counsel, Mr. White disclosed the substance of what he discussed with counsel the same as if he had stated, "Ms. Granfield and I discussed that the AmEx Contracts had been erroneously posted." See AmEx Mot. at ¶¶ 17-22;[3] see also United States ex rel. Mayman v. Martin Marietta Corp., 886 F. Supp. 1243, 1247, 1250 (D. Md. 1995) (finding that reference to understanding being "based on the 'contemporaneous' advice of in-house counsel" was sufficient to waive privilege because "[a] summary, paraphrase or clear reference to the substance of a communication can waive confidentiality of that communication.").

---

[3] Curiously, although Barclays quotes Mohawk Industries, Inc. v. Interface, Inc., No. 4:07-CV-0212, 2008 U.S. Dist. LEXIS 104317 (N.D. Ga. Sept. 29, 2008), a case relied upon by AmEx, for a separate point that is not in dispute, (see Opp'n at 11 & 12), it does not address the decision's holding on express waiver.

5

NYC 687304.1

Hearing Date: February 26, 2009, 2:00 p.m., prevailing Eastern Time

13.     Barclays's assertion that Mr. White's reference to the communication with Ms. Granfield was simply to state that Mr. White spoke with outside counsel also cannot be accepted. If that were the case, that is all that Mr. White would have had to have stated (i.e., "On October 1, 2008, I spoke with Barclays's outside counsel, Lindsee Granfield."). Mr. White, however, did more than that. Mr. White disclosed the substance of his October 1, 2008 communication with Ms. Granfield – that is that the AmEx Contracts had been erroneously posted on the Non-IT Closing Date Contracts List and should be removed – and in so doing, he plainly waived the attorney-client privilege as to that communication.  See AmEx Mot. at ¶¶ 18-21, 22 n.4. Barclays's post hoc and self-serving reading of Mr. White's declaration – ████████ ████████████████████████████████████████ – has the effect of rendering null and void two of the three sentences of paragraph three. Barclays cannot satisfy its burden of demonstrating lack of waiver by selectively reading out the portions of Mr. White's declaration that create the waiver.

14.     Nor can Barclays fairly rely upon the cases it cites to support its argument that Mr. White's testimony about his "understanding" did not effect an express waiver. While the court in United States v. Jackson, 969 F. Supp. 881, 883-84 (S.D.N.Y. 1997), found that the defendant's disclosure of his query to counsel about whether "what [he and his codefendants] were doing was legal" did not waive the attorney-client privilege, it also held that his statement divulging the advice he received from counsel "reveals the substance of specific advice the attorney gave Medina. As such, it effects a waiver . . . ." Barclays also cites Bausch & Lomb Inc. v. Alcon Laboratories, Inc., 173 F.R.D. 367, 384-85 (W.D.N.Y. 1995), but unsurprisingly the court there found that a non-attorney deponent's testimony about his own beliefs did not engender a waiver of the attorney-client privilege, presumably because there was no connection

6

NYC 687304.1

between that testimony and any advice of counsel. The Bausch & Lomb court did, however, find that the statement of plaintiff's in-house counsel about how plaintiff had not filed for a patent application based on the advice of its counsel expressly waived the attorney-client privilege. Id. at 383. Mr. White's testimony about his "understanding" had the same effect here.

15. Barclays also cannot avoid the consequences of its express waiver by contending that the "understanding" about which Mr. White testified in his declaration was based not on the communication with Ms. Granfield, but on a different conversation later that day between Mr. White and another Barclays employee, Simone Bunger-Pentney. See Opp'n at 4 n.2. First, Mr. White's declaration makes no reference to any communications with Ms. Bunger-Pentney. See AmEx Mot. at ¶ 23; Taub Decl. ¶ 3, Ex. B. Second, this position is belied by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ If Mr. White's understanding of the situation was truly based on his conversation with Ms. Bunger-Pentney, it is hard to fathom why this fact would have been omitted from his declaration. See AmEx Mot. at ¶ 23.[4]

---

[4] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

NYC 687304.1

Hearing Date: February 26, 2009, 2:00 p.m., prevailing Eastern Time

### B. Barclays Has Not Demonstrated That the White-Granfield Communication Constitutes Work Product Or That Work Product Protection Has Not Been Waived

16. As noted above, Barclays must, as an initial matter, show that the White-Granfield communication constitutes work product. See ¶ 9, supra; see also AmEx Mot. at ¶¶ 26-30. Barclays has not met its burden as it has not demonstrated that the White-Granfield communication was undertaken in anticipation of litigation. As detailed in AmEx's Motion to Compel, (see AmEx Mot. at ¶¶ 26-27), it is not reasonable to believe that litigation was likely at the moment the alleged mistake was identified or even uncovered; only upon deciding to remove the AmEx Contracts from the Non-IT Closing Dates Contracts List and gauging AmEx's reaction could Barclays have reason to believe that there was a threat of an adversary proceeding between it and AmEx. See SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC, No. 01 Civ. 9291 (JSM), 2002 U.S. Dist. LEXIS 11949, *6-7 (S.D.N.Y. July 3, 2002) (ruling that material "is prepared 'in anticipation of litigation' if there is a threat of an adversary proceeding, the document was prepared because of the threat, and the document was created after that threat became real.").

17. Further, Barclays glosses over the fact that the question of whether it reasonably anticipated litigation is very much dependant upon its understanding of the contours of the purported mistake. For example, a discrepancy in the posted cure amount next to a particular contract would likely not lead a party to anticipate litigation, while a wholesale change in position with respect to a particular contract (e.g., a decision to remove the contract from the list entirely) might. Thus, the facts surrounding Barclays's understanding of the mistake at various points in time impacts the assessment of whether Barclays reasonably anticipated litigation with respect to the AmEx Contracts. While Barclays has inappropriately blocked much discovery into these issues, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▬

■

18.  Indeed, as set out in Mr. Chikowski's declaration ▬ and in the Granfield-Chikowski email correspondence, the only issue with the AmEx Contracts prior to October 1, 2008 was with respect to the posted cure amount. See Taub Decl. ¶ 7, Ex. F at ¶¶ 12-22 (attesting that in numerous communications with Ms. Granfield and in-house counsel at Barclays, including Mr. White, the only issue communicated was with respect to the cure amount, and not the posting of the AmEx Contracts). For example, Ms. Granfield informed Mr. Chikowski on September 29, 2008:

> Gene: I am sorry to bother you…As I told you then [September 23, 2008], listing the Amex contract with the cure amount of $18million was a mistake. Therefore, Barclays cannot accept a cure form notice from Amex that trys [sic] <u>to accept the amount that I told you prior to such attempted acceptance was a mistake</u>. The business folks have got to talk and try to reach an agreed upon resolution. My understanding is that there has already been some contract. This [is] not meant to raise hackles at Amex, <u>but the clients need to seek to resolve the issue</u>.

Taub Decl. ¶ 7, Ex. F at Ex. F (emphases added).

19. 

9



20.

21.     Further, Barclays's assertion that six days <u>before</u> sending her September 29, 2008 e-mail, Ms. Granfield had concluded and informed Mr. Chikowski that the mistake was that the AmEx Contracts were included on the Non-IT Closing Date Contracts List is simply not supported by the facts.  If Ms. Granfield's September 23, 2008 communication with Mr. Chikowski was as Barclays alleges, then why do the contemporaneous documents reflect that Mr. Chikowski did not understand six days later, on September 29, 2008, what the mistake was? See Taub Decl. ¶ 7, Ex. F at Ex. F.  Query also why Ms. Granfield stated on September 29, 2008 that the "business folks have got to talk" and "the clients need to seek to resolve the issue."

---

5



10

NYC 687304.1

What issue with respect to the cure amount was there to resolve if Barclays had already decided that no cure amount was due?

22. The evidence to date indicates that long after September 23, 2008, the date Barclays asserts that the matter became "contentious," (see Opp'n at 3), the parties were amicably discussing how any issues could be resolved. In a September 29, 2008 e-mail sent to Mr. Chikowski, Ms. Granfield stated, "Also, as you noted to me, if something cannot be worked out, then another firm will be dealing with this for Barclays (not Cleary Gottlieb)." Taub Decl. ¶ 7, Ex. F at Ex. F (emphasis added). Similarly, an email exchange among Bryan Alter, in-house counsel at Barclays, Anjli Pero, in-house counsel at AmEx, and Ms. Bunger-Pentney on September 29, 2008 indicates that Barclays was not contemplating litigation as of that date. See Taub Decl. ¶ 9, Ex. H (Alter wrote: "[I] have escalated this to the appropriate people on the business side. I am sure that they will be in contact with their counterparts at Amex.")

23. Barclays also argues that another indication that the October 1, 2008 White-Granfield communication was made in anticipation of litigation is that Cleary Gottlieb had concluded by that date that "the matter had become contentious and, as a result, the Cleary Gottlieb firm could no longer represent Barclays due to its simultaneous representation of American Express on another matter." Opp'n at 10.[6] This argument, however, is simply an ipse dixit conflation of the analysis of when a law firm's conflict of interest commences with the

---

[6] Once again, it must be stressed that Barclays failed to offer any cognizable evidence of any subjective belief that litigation was likely, such as in the form of an affidavit. This evidentiary lacuna is especially troubling considering that the assertions about any subjective belief of likely litigation are about the beliefs of the attorneys at Cleary Gottlieb, who are no longer representing Barclays in this dispute. Indeed, the declaration Ms. Granfield submitted on the Rule 60(b) Motion offers no support for Barclay's description of Ms. Granfield's purported beliefs. See generally Taub Decl. ¶ 10, Ex. I.

11

NYC 687304.1

entirely separate analysis of when one can reasonably anticipate litigation.[7]

24. Moreover, even assuming, arguendo, that the work product doctrine does apply to the White-Granfield communication, it still would not preclude the disclosure of the factual information about the alleged mistake conveyed therein. That information would have been gathered before the communication – that is, <u>prepared before</u> litigation could have been or was reasonably anticipated – and therefore cannot be protected attorney work product. A document prepared before litigation was anticipated cannot become attorney work product, regardless of whether it is ultimately used by an attorney in connection with litigation. <u>See</u> Paul F. Rothstein and Susan W. Crump, <u>Federal Testimonial Privileges</u> § 11:3 & n.5 (2d ed. 2008) ("Not every piece of paper a lawyer touches constitutes work product.").

25. Finally, if the White-Granfield communication is protected attorney work product, for the reasons discussed at ¶¶ 12-15, <u>supra</u>, it should be disclosed because Barclays has waived all applicable protections.

### C. Barclays Implicitly Waived Any Protections from Discovery by Placing the Purportedly Privileged Communication "At Issue"

26. Not only did Barclays expressly waive the attorney-client privilege and the attorney work product protection with respect to Mr. White's October 1, 2008 communication with Ms. Granfield as a result of disclosing it to advance its claim of mistake, Barclays also effected an implicit "at issue" waiver of both protections as to the subject matter of that communication, namely the alleged mistake and its removal from the Non-IT Closing Date

---

[7] Barclays's argument is inconsistent with its assertion that "[t]he matter became contentious when American Express took the position that it accepted the assignment of the contracts, even after being notified that the listing of the contracts was due to an error." Opp'n at 3. According to Barclays, AmEx was so notified by Cleary Gottlieb on September 23, 2009. Is Barclays suggesting that Cleary Gottlieb continued to represent Barclays on this matter while in the throes of a conflict of interest for over one week?

12

Contracts List.

27.     Barclays's only argument to stave off an "at issue" waiver is to assert that "Barclays is not relying on the privileged October 1 Communication to establish that the American Express contracts were listed by mistake." Opp'n at 13.[8] That Barclays now asserts that it is not relying on the communication to advance its claim of mistake is completely irrelevant as a matter of law. See Kingsway Fin. Svcs., Inc. v. Pricewaterhouse-Coopers LLP, No. 03 Civ. 5560 (RMB)(HBP), 2008 WL 5423316, *11 (S.D.N.Y. Dec. 31, 2008) ("[A] party does not have to expressly state that it relied on any advice from his attorney" for "at issue" waiver to apply).[9] Indeed, the situation here is exactly what the court in Kingsway – a decision cited by Barclays in its Opposition – explained would constitute an "at issue" waiver: "[e]ven if Kingsway merely offered evidence that it concluded that restatement of ACHI's financials was necessary after consulting with [counsel], it would be offering circumstantial evidence that [counsel] opined that restatement was necessary and such evidence would put Kingsway's communications with [counsel] in issue." Id. at *12.

28.     Notwithstanding its protestations to the contrary, Barclays did rely on Mr. White's declaration testimony about his "understanding," which was based on his communication with Ms. Granfield, to advance its claim of mistake.[10] Barclays states that Mr.

---

[8] Notably, Barclays does not dispute in its Opposition that the three other factors of the "at issue" waiver analysis as set out in Pritchard v. County of Erie, 546 F.3d 222 (2d Cir. 2008), are satisfied here.

[9] It is no surprise that Barclays now claims it is not relying on Paragraph 3 of Mr. White's declaration. In order to avoid an express waiver, Barclays now resorts to a reading of the declaration that, nonsensically, renders the bulk of paragraph three gratuitous. See discussion at ¶¶ 12-15, supra.

[10] The purported principal purpose for the submission of Mr. White's declaration has become a moving target as Barclays tries to show that it did not rely on Mr. White's declaration to advance its claims. First,

13

NYC 687304.1

White's declaration put at issue on its Rule 60(b) Motion "the substance of his conversation with Mr. Chikowski." Opp'n at 13. Barclays overlooks the fact that the dispute about that conversation goes directly to the heart of the alleged mistake and when it was communicated to AmEx – was it a genuine ministerial mistake, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or was it a business-motivated determination to "go in another direction," as Mr. Chikowski contends Mr. White told him. See Taub Decl. ▮▮▮▮▮▮▮▮▮▮ id. at ¶ 7, Ex. F at ¶ 22. Indeed, Barclays relied upon Mr. White's "understanding" of the alleged mistake, as communicated by Ms. Granfield, in its Rule 60(b) Motion papers to "dispute" AmEx's characterization of the nature of the alleged mistake, namely that Barclays simply "changed its mind" for business reasons. See Rule 60(b) Reply Brief at 11 n.3. As a result, Barclays's reliance upon Mr. White's understanding cannot seriously be disputed.

29.     It is well-settled that Barclays cannot rely on a privileged communication to advance its claim and yet at the same time prevent AmEx from responding to and investigating the truth of the privileged communication. Fundamental fairness requires that AmEx be able to obtain discovery about Mr. White's communication with Ms. Granfield concerning the alleged mistake as well as about all other protected information on the subject of the alleged mistake. See In re Kidder Peabody Secs. Litig., 168 F.R.D. 459, 469 (S.D.N.Y. 1996) ("[I]f the privilege holder puts [protected] communications in issue by virtue of his claims or defenses in the case, then a broader, so-called 'subject matter' waiver should be recognized.").

30.     Barclays also contends that it is relying upon others – "business persons" – to establish its claim of mistake, and thus it is not relying on Mr. White's declaration. But even

---

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Barclays's Opposition now claims that "Mr. White's declaration was submitted solely to present Mr. White's recollection of a conversation he had with Mr. Chikowski on October 1, 2008 . . . ." Opp'n at 13. Despite Barclays's claims otherwise, it relied on Mr. White's declaration to prove the fact of a mistake.

14

NYC 687304.1

Hearing Date: February 26, 2009, 2:00 p.m., prevailing Eastern Time

Barclays does not suggest that Mr. White's declaration needs to be relied upon as the sole means of advancing Barclays's claim of mistake. There is simply no support for such a restricted view of Pritchard's requirement of reliance.[11]

## II. BARCLAYS'S ASSERTIONS OF PRIVILEGE ARE IMPROPER SINCE SOME OF THE INFORMATION AMEX SEEKS IS FACTUAL IN NATURE, AND THUS NOT PROTECTED FROM DISCOVERY AT ALL

31.  Separate from the discovery that must be compelled because Barclays expressly waived privilege and wielded it as both a sword and a shield, Barclays should also be compelled to disclose information that is factual in nature, and thus is not protected from discovery at all.

32.  Barclays attempts to downplay the impermissible effect its stonewalling of factual information has had by stating that it permitted Mr. White to answer "questions seeking to elicit facts concerning any involvement he had in this dispute prior to October 1, 2008," that is, prior to his communication with Ms. Granfield. Opp'n at 6. ███████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

33.  There is no basis for Barclays's position to block disclosure of facts Mr. White learned from counsel at any time. See, e.g., Upjohn Co. v. United States, 449 U.S. 383, 395 (1981); AmEx Mot. at ¶¶ 38-41. Indeed, one of the decisions cited by Barclays explains the

---

[11] Barclays identifies Leslie Bernauer and Patrick Coster as two people they are relying on instead of Mr. White. ███████████████████████████████████
As for Mr. Coster, who has not yet been deposed, the portion of his declaration that Barclays relies upon offers only a conclusory, unspecified assertion that "the American Express Contract was mistakenly designated as a non-IT Closing Date Contracts [sic] that was being assumed by Barclays." Id. at ¶ 13, Ex. L at ¶ 5. In connection with Barclays's Rule 60(b) Motion, the Court already found both declarations insufficient to establish mistake. See id. at ¶ 2, Ex. A at 96:1-7.

15

types of questions that counsel for Barclays should have permitted Mr. White to answer. In <u>Allen v. West Point-Pepperell Inc.</u>, the court ruled that

> [s]imply put, plaintiffs and Mr. Krumme [their counsel] must disclose to defendants all facts of which they were aware at all times relevant to this action, whether or not those facts were communicated by plaintiffs to Krumme and whether or not those facts were learned by plaintiffs from Krumme. For example, plaintiffs must answer the following questions, drawn from the areas of inquiry identified in Defendants' Memorandum of Law at 6: When did you first learn facts that led you to believe that you were fraudulently induced to sign your release? <u>What were those facts?</u> When did you first learn of Krumme's suit? What specific information did you learn? When did you first learn of the Krumme summary judgment motion? When did you first learn the results of Krumme's motion and West Point's cross motion?

848 F. Supp. 423, 428 (S.D.N.Y. 1994) (emphasis added).

34.  As the <u>Allen</u> court explained, these questions are permissible because they "all probe plaintiffs' awareness of facts at certain times. A party's knowledge of facts, from whatever source, is not privileged." <u>Id.</u> (internal quotation omitted). Counsel for Barclays's directions to not answer were improper and Mr. White should be ordered to answer these and similar questions.

## **CONCLUSION AND REQUEST FOR RELIEF**

35.   For the reasons set forth above, AmEx respectfully reiterates its requests that this Court enter an Order compelling Barclays to (1) disclose communications, including documents, no longer protected by the attorney-client privilege or the attorney work product doctrine; (2) disclose communications, including documents, concerning the alleged mistake that contain factual and therefore unprotected information; (3) produce in unredacted form the document

16

NYC 687304.1

bearing bates number Barclays-AmEx004901-902; and (4) granting such other relief as the Court deems appropriate and just.

Dated: February 24, 2009
      New York, New York

                **DEWEY & LEBOEUF LLP**

                By: /s/ Irena M. Goldstein
                    Martin J. Bienenstock
                    Irena M. Goldstein
                    Donna L. Gordon

                1301 Avenue of the Americas
                New York, New York 10019
                Tel. 212-259-8000
                Fax 212-259-6333

                **FLASTER/GREENBERG P.C.**
                Eugene J. Chikowski, Esquire
                Greg T. Kupniewski, Esquire

                1628 John F. Kennedy Blvd.
                Philadelphia, Pennsylvania 19103
                Tel. 215-279-9393
                Fax 215-279-9394

                *Co-Attorneys for American Express Travel Related Services Company*

NYC 687304.1