WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                    :
**In re**                                                           :      **Chapter 11 Case No.**
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC., *et al.*,**    :      **08-13555 (JMP)**
                                                                    :
                                    **Debtors.**                    :      **(Jointly Administered)**
                                                                    :
                                                                    :
-------------------------------------------------------------------x

**NOTICE OF DEBTORS' MOTION, PURSUANT TO SECTION 362 OF
THE BANKRUPTCY CODE, FOR AN ORDER MODIFYING THE
AUTOMATIC STAY TO ALLOW ADVANCEMENT UNDER DIRECTORS
AND OFFICERS AND FIDUCIARY LIABILITY INSURANCE POLICIES**

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases (together, the "Debtors") for relief from the automatic stay, to the extent applicable, to

permit the Debtors' third party insurers to make payment of covered defense costs, advancement

of covered defense costs, or both incurred by the Debtors' current and former officers, directors,

employees, fiduciaries and/or administrators of LBHI's sponsored ERISA employee benefit

plans that have been named as defendants in various legal proceedings, all as more fully

described in the Motion, will be held before the Honorable James M. Peck, United States

Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on

**March 25, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn:  Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and

Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee

for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New

York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian

Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley

& McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F.

Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee

of unsecured creditors appointed in these cases; and (v) any person or entity with a particularized

interest in the Motion, so as to be so filed and received by no later than **March 20, 2009 at 4:00**

**p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: February 26, 2009
       New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :    08-13555 (JMP)
                                          :
                      Debtors.            :    (Jointly Administered)
                                          :
                                          :
------------------------------------------------------------x
```

**DEBTORS' MOTION, PURSUANT TO SECTION 362 OF**
**THE BANKRUPTCY CODE, FOR AN ORDER MODIFYING THE**
**AUTOMATIC STAY TO ALLOW ADVANCEMENT UNDER DIRECTORS**
**AND OFFICERS AND FIDUCIARY LIABILITY INSURANCE POLICIES**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully represent:

**Preliminary Statement**

1.    As detailed more fully below, the purpose of this Motion is to remove any impediments to the ability of the Debtors' third party insurers to immediately commence payment of the outstanding and ongoing defense costs and fees that current or former directors

and officers of the Debtors' as well as certain employees, fiduciaries, and administrators of LBHI's sponsored employee benefit plans under the Employee Retirement Income Security Act of 1974 ("ERISA") have incurred and are incurring as defendants in ongoing federal securities lawsuits, regulatory and other investigations, and an ERISA class action litigation.  The Debtors' various primary insurers have expressed a willingness to pay previously incurred defense costs and fees and advance defense costs and fees to such insured individuals consistent with the terms of the relevant insurance policies, but only upon the entry of an order that provides that if the automatic stay provided for in section 362(a) of the Bankruptcy Code is applicable to such payments, the automatic stay is modified to allow such payments to be made.

2.    Confirming the insurers' ability to pay such defense costs and fees is in the best interests of the Debtors' estate and creditors because, *inter alia*, it will avoid the possible collateral estoppel effect on the Debtors that could result if the individuals' inability to defend themselves were to give rise to judgments and findings that impacted direct claims against the Debtors.  Additionally, if the requested relief is granted, it would relieve the Debtors' estates of the potentially significant burden of claims that may otherwise be asserted by the individual insureds in the absence of such relief.  Furthermore, the interests of the Debtors' estates, if any, in the proceeds of the applicable insurance policies is expressly subordinate to the interest of the individual insureds.  Specifically, the applicable insurance policies provide that the Debtors' have a right to the insurance proceeds only after the insured individuals are fully reimbursed for any "Loss," including defense costs.  Thus, granting the relief requested by this Motion is unlikely to have any adverse effect on the Debtors' estates and creditors.

## Background

3.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

5.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

6.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

## Jurisdiction

7.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

8.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman has been

a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

9.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Relief Requested

10.      The Debtors seek the entry of an order granting relief from the automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent that it applies, to allow payments and/or advancements by various primary insurers of defense costs that are, or will become, owing to the Individual Defendants (as defined below) under the Policies (as defined below).  The Debtors further request that the Court waive the requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested relief be effective immediately.  To be clear, the Debtors are not requesting a determination of any insurer's obligation to pay any particular expense or claim of the Individual Defendants.  Rather, the Debtors seek only the entry of an order modifying the automatic stay, to the extent applicable, to allow the insurers to fulfill their obligations, whatever they may be, to pay claims and expenses of the Individual Defendants under the terms of the Policies, including amounts incurred both pre and post-petition.

## The Debtors' Liability Insurance Policies

11.      Certain former and current directors, officers, and employees of the Debtors as well as additional fiduciaries and administrators (collectively, the "Individual Defendants") of LBHI's sponsored ERISA employee benefit plans are defendants in one or more of multiple civil actions brought on behalf of purported classes and individuals, and/or a

consolidated ERISA class action complaint, as well as within the scope of certain criminal, regulatory or other investigations (collectively, the "Legal Proceedings") described below. Neither LBHI or any of the other Debtors is named as a defendant in any of the Legal Proceedings.

12.     Both prior to and after the collapse of the Lehman enterprise in September 2008, various securities actions were commenced against certain officers and directors in both federal and state court. Many of these actions assert, among other claims, violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and sections 11, 12 and 15 of the Securities Exchange Act of 1933 (the "Securities Act"), and arise from various alleged wrongful actions of certain Individual Defendants in connection with securities issued by LBHI. Most of these actions have been consolidated at least for pre-trial purposes before the Honorable Lewis Kaplan in the United States District Court for the Southern District of New York. Other such actions have not yet been consolidated and/or await action from the Judicial Panel on Multi-District Litigation. A second set of actions similarly alleging violations of sections 11, 12, and 15 of the Securities Act arise from alleged wrongful actions of certain of the Individual Defendants in connection with the plaintiffs' purchase of mortgage-backed securities. These actions have been consolidated and are also before Judge Kaplan. A third action relates to the purchase of auction-rate securities, and alleges violations of section 12(a)(2) of the Securities Act and various state laws, and similarly arises from various wrongful actions of certain of the Individual Defendants. This action is pending in the United States District Court for the Northern District of California.

13.     Additionally, both the United States Department of Justice (by and through the United States Attorneys Offices for the Southern and Eastern Districts of New York,

and for the District of New Jersey) as well as the United States Securities and Exchange

Commission and the New Jersey Bureau of Securities, have commenced formal grand jury and

regulatory investigations concerning the circumstances surrounding the collapse of the Lehman

enterprise and have issued various document requests and subpoenas to both the Debtors and

various Individual Defendants.

14.    Lastly, beginning on June 20, 2008, several ERISA class action lawsuits

were commenced in the United States District Court for the Southern District of New York

asserting claims of breach of fiduciary duties under ERISA against certain former directors and

officers as well as additional employees, fiduciaries and administrators of LBHI's sponsored

employee benefit plans (the "Individual ERISA Defendants").  These actions have been

consolidated with an amended complaint filed on October 27, 2008.

15.    In connection with the Legal Proceedings, the Individual Defendants have

incurred and will continue to incur defense costs and fees.  Prior to the Commencement Date, in

the ordinary course of business and pursuant to the terms of their by-laws, the Debtors

indemnified and covered their officers and directors for defense costs incurred in legal

proceedings.  Subsequent to the Commencement Date, however, the Debtors have been unable to

continue to advance defense costs to the Individual Defendants.  The Debtors' third party

insurers have expressed a willingness to immediately commence payment of the outstanding and

ongoing fees and expenses to and for the benefit of the Individual Defendants, but only upon

obtaining satisfactory assurances that doing so will not be in contravention of the automatic stay.

While the Debtors do not believe that the payment of the proceeds of the Policies in satisfaction

of such defense costs implicates property of the estate or the automatic stay, to satisfy the

insurers demands, by this Motion the Debtors are seeking such relief.  By making this Motion,

however, neither the Debtors, the Individual Defendants nor the insurers are waiving any of their respective rights under the Policies.

A.    Directors and Officers Liability Insurance Policy

16.    Pursuant to their advancement and indemnification obligations expressed in their by-laws and certificate of incorporation, the Debtors purchased primary directors and officers ("D&O") liability insurance policies (the "D&O Policy"), which provides coverage for the Individual Defendants in connection with the civil actions and investigations.

17.    For Claims[1] made against the Individual Defendants during the period from May 16, 2007 to May 16, 2008, the Debtors purchased a primary D&O Policy from XL Specialty Insurance Company ("XL") (the "Primary 2007-2008 D&O Policy").[2]  During this period, the Debtors also purchased excess D&O insurance from a variety of other carriers.  The Primary 2007-2008 D&O Policy, subject to its terms, conditions, limitations and exclusions, provides $20 million of D&O coverage to the Individual Defendants under the policy for Loss (i.e., defense costs, expenses, settlements, and judgments) for Claims made during the Policy Period arising from Wrongful Acts they allegedly committed in their capacity as directors, officers or employees of LBHI and its subsidiaries.  Coverage under Side A provision of the Primary 2007-2008 D&O Policy is immediately available to Insured Persons, which includes certain of the Debtors' present and former officers, directors, and employees for any Losses associated with Claims made under the Policy that is not otherwise advanced or indemnified by the Debtors by reason of their financial insolvency.[3]

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the respective Policy.

[2] A copy of the Primary 2007-2008 D&O Policy is annexed hereto as Exhibit "A."

[3] Additionally, for Claims made against the Individual Defendants during the period from May 16, 2008 to May 16, 2009 the Debtors purchased a primary D&O policy from XL (the "Primary 2008-2009 D&O

18.    Furthermore, endorsement 22 of the 2007-2008 Primary D&O policy contains a "Priority of Payments" provision, which provides that when competing claims for coverage under both Insuring Agreement (A) for non-indemnifiable loss, as described above, and Insuring Agreement (B) are made under the Primary 2007-2008 D&O policy, "the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under Insuring Agreement (A)… ."  Thus, the Primary 2007-2008 D&O policy, by virtue of Insuring Agreement A and the Priority of Payments endorsement, provides for the immediate payment of the Individual Defendants' defense costs and expenses ahead of any payment that may be made to the Debtors.

B.    <u>Fiduciary Liability Insurance Policy</u>

19.    Additionally, the Debtors purchased various primary and excess fiduciary liability insurance policies (together, with the D&O Policy, the "<u>Policies</u>"), which provides coverage for the Individual ERISA Defendants that have been named as defendants in the ERISA class action lawsuit.

20.    For claims made against the Individual ERISA Defendants during the period from May 16, 2008 to May 16, 2009, LBHI purchased a primary Employee Benefit Plan Fiduciary Liability Insurance Policy from Illinois National Insurance Company, a wholly owed

---

Policy").  A copy of the Primary 2008-2009 D&O Policy is annexed hereto as Exhibit "B."  During the 2008-2009 Policy Period, the Debtors also purchased excess D&O insurance from a variety of other carriers.  The Primary 2008-2009 D&O Policy, subject to its terms, conditions, limitations and exclusions, provides $20 million of D&O coverage to the Individual Defendants under the policy for Loss (i.e., defense costs, expenses, settlements, and judgments) for Claims made during the Policy Period arising from Wrongful Acts they allegedly committed in their capacity as directors, officers or employees of LBHI and its subsidiaries.  Coverage under Side A provision of the Primary 2008-2009 D&O Policy is immediately available to Insured Persons, which includes certain of the Debtors' present and former officers, directors, and employees for Loss associated with Claims made under the Policy that is not otherwise advanced or indemnified by the Debtors by reason of their financial insolvency.  To date, XL has acknowledged coverage for the Securities Actions claims under the Primary 2007-2008 D&O Policy, but not the Primary 2008-2009 D&O policy.  The Debtors, the Individual Securities Action Defendants and XL have all mutually reserved their rights with respect to the Primary 2008-2009 D&O Policy.

subsidiary of the American International Group, Inc. (hereinafter, the "Primary Fiduciary

Liability Policy").[4]  The Primary Fiduciary Liability Policy, subject to its terms, conditions,

limitations and exclusions, provides $15 million of insurance coverage, including coverage for

defense costs and fees and associated expenses, incurred in defending Claims made during the

Policy Period.  During this same period, LBHI purchased certain excess follow form Fiduciary

Liability Policies from other carriers.  This coverage is immediately provided to Natural Period

Insureds, which includes certain of the Debtors' present and former officers, directors,

fiduciaries and administrators if Defense Costs are not reimbursed by LBHI by reason of

Financial Insolvency.  *See* Primary Fiduciary Liability Policy at Endorsement 21, attached at

Exhibit C (providing for advancement of Defense costs by reason of the Financial Insolvency of

the Sponsor Organization).

> 21.    Further, clause 20 of the Primary Fiduciary Liability Policy, entitled

"Order of Payments," provides,

> > In the event of Loss arising from a covered claim for which payment is due under
> > the provisions of this policy, then the Insurer shall in all events:
> >
> > > (a)  first, pay Loss for which coverage is provided under this policy a
> > > Natural Person Insured and any covered Plan under this policy;
> > > (b)  then, only after payment of Loss has been made pursuant to Clause
> > > 20(a) above, with respect to whatever remaining amount of the Limit of
> > > Liability is available after such payment, shall payment for the Sponsor
> > > Organization be made for such other Loss for which coverage is provided
> > > under this policy.

*See* Primary Fiduciary Liability Policy, Endorsement 4.  Thus, LBHI, as the Sponsor

Organization, and the Debtors are only entitled to coverage under the Primary Fiduciary Liability

Policy after coverage has been provided to the Individual Defendants.

---

[4] A copy of the Primary Fiduciary Liability Policy is attached at Exhibit "C."

22.     As a result of the order of payment provision in clause 20, the interest of the Debtors, if any, in the proceeds of the Primary Fiduciary Liability Policy is contractually subordinated to the interests of the Individual ERISA Defendants in those proceeds and may never mature.

## Cause Exists to Grant the Relief Requested

A.     The Proceeds Are Not Property of the Estate

23.     Section 362(a)(3) of the Bankruptcy Code provides for an automatic stay of any action seeking to obtain possession or exercise control over property of the bankruptcy estate.  It is well settled that insurance policies are property of the estate and covered by the automatic stay provisions of the Bankruptcy Code.  *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir 1988).  However, courts have distinguished between ownership of a *policy* and ownership of the *proceeds* of a policy.  While courts have not been uniform in their analysis, where a policy provides for payment only to a third party – such as payments to officers and directors under an executive insurance policy – or where the debtor has a right of coverage or indemnification, but such right is hypothetical or speculative, courts have held that the proceeds of such policy are not property of the bankruptcy estate.  *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 53 (S.D.N.Y. 2003) (holding that insurance proceeds were not property of the estate where it had not been suggested that debtors had made any payment for which they may be entitled to indemnification under policy or that any such payments were then contemplated); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 510 (Bankr. D. Del. 2004) (holding that proceeds of D&O insurance policy were not property of the estate where debtor's indemnification right under the policy was speculative and direct coverage of debtor under policy was hypothetical); *In re La. World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987)

(holding that proceeds of a D&O policy belonged only to the officers and directors and, therefore, were not property of the estate); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 809 (Bankr. D. Del. 2007) (when proceeds of a policy are payable to the directors and officers and not the estate, the proceeds are not property of the estate); *See In re First Cent. Fin. Corp.*, 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) (holding that circumstances that may give rise to entity coverage were highly remote and therefore proceeds were not property of estate).

24.    In determining whether proceeds are property of the estate, courts review the "language and scope of the policy at issue." *Allied Digital*, 306 B.R. at 509. *See also In re CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002); *In re Jones*, 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995) (respective rights of debtors and non-debtors to insurance proceeds "must be ascertained by reference to the parties' contractual rights pursuant to the interpretation of the pertinent contractual provisions under applicable state law").

25.    Here, all of the Policies contain an unambiguous priority of payments endorsement that expressly subordinates the rights of the Debtors to proceeds payable under the Policies to the rights of the Individual Defendants. The priority of payment endorsements are enforceable contractual provisions and should be upheld for the benefit of the Individual Defendants as intended. *See In re Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. Apr. 11, 2002) [Docket No. 3278] (holding that priority of payment provision was an enforceable contractual right).[5] In addition, because none of the Debtors are named defendants in the Legal Proceedings, and have only been requested to produce certain documents in connection with the government or other investigations, the likelihood that the Debtors may require coverage under the Policies is remote. As the court explained in *In re Laminate Kingdom LLC*:

---

[5] A complete copy of the Court's bench ruling in *Enron* is attached hereto at Exhibit "D."

> [T]he Court believes the depletion of proceeds to pay the [c]osts of [d]efense [i]ncurred by the officers and directors] does not diminish the protection afforded the estate's assets under the terms of the Policy.  The Policy's "Priority of Payments Endorsement" specifically requires that the proceeds be used *first* to pay non-indemnifiable loss for which coverage is provided under Coverage A of this Policy, which coverage includes the [officer's and director's costs of defense].  Then, only after such payments are made, and only if proceeds remain after payment of such [c]osts of [d]efense, will the Trustee or the estate be paid any proceeds.  Thus, under the language of the Policy itself, the estate has only a contingent, residual interest in the Policy's proceeds; and, payment of the proceeds in accordance with the "Priority of Payments Endorsement" does not diminish the protection the Policy affords the estate, as such protection is only available after the [c]osts of [d]efense are paid.

No. 07-10279-BKC-AJC, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008).

26.    Consistent with the purpose of such policies, the Debtors purchased the Policies primarily to provide insurance coverage to its officers and directors, including the Individual Defendants.  *See In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999) ("In essence and at its core, a D&O Policy remains a safeguard of officer and director interests and not a vehicle for corporate protection.").  The Debtors' speculative right to any residual proceeds, which are subject to an express contractual subordination provision, should not alter the conclusion that the proceeds should not constitute property of the Debtors' estates.

B.    Cause Exists to Modify the Automatic Stay, to the Extent
      That it Applies, to Allow Payment of Defense Costs Under the Policies.

27.    Even if the proceeds from the Policies are determined to be property of the estate, "cause" exists under section 362(d)(1) of the Bankruptcy Code to modify the automatic stay to allow the payment of defense costs under the Policies.  It is not uncommon for courts to grant stay relief to allow payment of defense costs or settlement costs to directors and officers, especially when there is no evidence that direct coverage of the debtor will be necessary.  *See Allied Digital*, 306 B.R. at 513.

28.    Allowing the insurers to advance defense costs and fees to the Individual Defendants will, in fact, benefit the Debtors' estates.  The Legal Proceedings are highly complex. If the Individual Defendants are not adequately represented, it is foreseeable that a finding of wrongdoing or liability against the Individual Defendants may be used, or attempted to be used, to judicially prejudice or prosecute claims against the Debtors.  Granting the requested relief will also alleviate the Individual Defendants' concern that they will personally be liable for their own defense costs.

29.    Additionally, the Debtors believe that they have an obligation under their by-laws to advance the defense costs and fees incurred by the Individual Defendants.  In connection with the Legal Proceedings, the Individual Defendants have and will continue to incur significant defense costs, which, if unsatisfied, may potentially be asserted by some or all of the Individual Defendants against the Debtors' estates.  Moreover, to the extent the Individual Defendants suffer adverse judgments that are not paid from the proceeds of the Policies due to the enforcement of the automatic stay, the Individual Defendants may seek to assert indemnification claims against the estates for such amounts.  Consequently, coverage of the Individual Defendants under the Policies will reduce or eliminate the claims that the Individual Defendants could assert against the estates.

30.    Modifying the automatic stay will not harm the Debtors estates.  As explained above, the Debtors rights to the proceeds are contractually subordinated to the rights of the Individual Defendants pursuant to the priority of payments endorsements.  In addition, at this time, the need for coverage is speculative given that the Debtors are not named as defendants in the Legal Proceedings, have incurred minimal costs in connection with the documents

subpoenaed in the government investigations, and have not made advancements to the Individual

Defendants during the chapter 11 cases for their defense costs.

31.     Accordingly, the Debtors respectfully submit that there are no legal

impediments to the direct payment or advancement by the insurers under the Policies to the

Individual Defendants for their costs of defense.  Alternatively, if this Court finds that the

Debtors have some interest in the proceeds of the Policies, the Debtors submit that any such

interest is nominal and in any event cannot be determined until the Individual Defendants' losses

have been quantified and paid.  Advancing the Individual Defendants' defense costs pursuant to

the Policies is necessary to minimize those losses.  Accordingly, cause exists to modify the

automatic stay pursuant to section 362(d) of the Bankruptcy Code, to the extent it applies, to

allow the insurers to immediately commence payment of outstanding and ongoing defense costs

incurred by the Individual Defendants.

32.     Similar relief has been granted in this and other districts.  *See In re Enron

Corp.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. May 17, 2002) [Docket No. 3792]; *In re

Washington Mutual, Inc.*, Case No. 08-12229 (MFW) (Bankr. D. Del. Dec. 16, 2008) [Docket

No. 445].

### Notice

33.     No trustee has been appointed in these cases.  The Debtors have served

notice of this Motion in accordance with the procedures set forth in the amended order entered

on February 13, 2009 governing case management and administrative procedures for these cases

[Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii)

the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York; and (vi) all parties who have requested

notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be

provided.

        34.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

        WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  February 26, 2009
     New York, New York


            /s/ Richard P. Krasnow
            Richard P. Krasnow

            WEIL, GOTSHAL & MANGES LLP
            767 Fifth Avenue
            New York, New York 10153
            Telephone: (212) 310-8000
            Facsimile: (212) 310-8007

            Attorneys for Debtors
            and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                            :
In re                                       :    **Chapter 11 Case No.**
                                            :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :    **08-13555 (JMP)**
                                            :
                            **Debtors.**        :    **(Jointly Administered)**
                                            :
                                            :
------------------------------------------------------------------x

## ORDER GRANTING DEBTORS' MOTION, PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE, FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW ADVANCEMENT UNDER DIRECTORS AND OFFICERS AND FIDUCIARY LIABILITY INSURANCE POLICIES

Upon the motion, dated February 26, 2009 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-

debtor affiliates, "Lehman"), pursuant to section 362(d) of title 11 to the United States Code (the

"Bankruptcy Code") and Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for an order modifying the automatic stay, to the extent applicable, to

allow the Debtors' third party insurance companies to pay covered defense costs, advance

covered defense costs, or both incurred by the Debtors' present and former officers and directors

as well as certain employees, fiduciaries and administrators of LBHI's sponsored ERISA

employee benefit plans (the "Individual Defendants") that have been named as defendants in the

Legal Proceedings[1], all as more fully described in the Motion; and the Court having jurisdiction

to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.);

and consideration of the Motion and the relief requested therein being a core proceeding pursuant

to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409; and due and proper notice of the Motion having been provided in accordance with the

procedures set forth in the amended order entered February 13, 2009 governing case

management and administrative procedures [Docket No. 2837] to (i) the United States Trustee

for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured

Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v)

the United States Attorney for the Southern District of New York; and (vi) all parties who have

requested notice in these chapter 11 cases, and it appearing that no other or further notice need be

provided; and a hearing having been held to consider the relief requested in the Motion; and the

Court having found and determined that the relief sought in the Motion is in the best interests of

the Debtors, their estates and creditors, and all parties in interest and that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that pursuant to sections 105(a) and 362(d) of the Bankruptcy Code,

the automatic stay, to the extent applicable, is hereby modified to, and without further order of

this Court, allow payment of covered defense costs, advancement of covered defense costs, or

both from the Debtors' third party insurance companies to the Individual Defendants pursuant to

the terms of the Policies; and it is further

ORDERED the Debtors are authorized to execute all the documentation necessary

to allow the third party insurance companies to pay covered defense costs, advance covered

defense costs, or both incurred by the Individual Defendants in the Legal Proceedings; and it is

further

ORDERED that nothing in this Order shall modify or alter the rights and

obligations provided for under the terms and conditions of the Policies; and it is further

ORDERED that all parties to the Policies reserve all rights and defenses that they

would otherwise have; and it is further

ORDERED that the ten day stay provided by Bankruptcy Rule 4001(a)(3) is

waived; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.

Dated: March __, 2009
       New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE