# <u>EXHIBIT "C"</u>

## (PRIMARY FIDUCIARY LIABILITY POLICY)

### POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

# AIG AIG EXECUTIVE LIABILITY SM

Insurance provided by the following member of American International Group, Inc.

## Illinois National Insurance Company

A capital stock company

### Employee Benefit Plan Fiduciary Liability Insurance

---

**NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.   PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE:EXCEPT AS SET FORTH IN ITEM 3(b) OF THE DECLARATIONS, THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE.   AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**NOTICE: THE INSURER HAS THE DUTY TO DEFEND;HOWEVER, THE INSURED MAY ELECT TO ASSUME THE DUTY TO DEFEND.  IN ALL EVENTS, THE INSURER MUST ADVANCE DEFENSE COSTS PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.**

**NOTICE: TERMS APPEARING IN BOLD FACE TYPE HAVE SPECIAL MEANING. SEE CLAUSE 3 OF THE POLICY.**

POLICY NUMBER: *507-47-13*               REPLACEMENT OF POLICY NUMBER: *742-11-84*

## DECLARATIONS

| ITEMS | | |
|---|---|---|
| 1 | **NAMED SPONSOR:** *Lehman Brothers Holdings Inc.* | (herein **"Named Sponsor"**) |
| 1(a) | MAILING ADDRESS: *1271 Avenue of the Americas New York, NY 10020* | |
| 1(b) | **SUBSIDIARY** COVERAGE: | Any past, present or future **Subsidiary** of the **Named Sponsor** |
| 1(c) | **PLAN** COVERAGE: | Any past, present or future **Plan** |
| 2 | **POLICY PERIOD**:    From: *May 16, 2008*        To: *May 16, 2009*  12:01 A.M. standard time at the address stated in Item 1(a) of the Declarations. | |
| 3(a) | **POLICY AGGREGATE LIMIT OF LIABILITY** (herein **"Limit of Liability"**)  For all **Loss**, in the aggregate, under this policy including **Defense Costs** (other than **Defense Costs** (if any) set forth in Item 3(b) of the Declarations):  $15,000,000 | |

*173072*

**2-14051**

77893 (3/01)

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

| ITEMS (Continued) | |
|---|---|
| 3(b) | **ADDITIONAL LIMIT OF LIABILITY FOR DEFENSE COSTS** : *$0* |
| 3(c) | **SUBLIMIT OF LIABILITY FOR VOLUNTARY COMPLIANCE LOSS** <br><br> For all **Voluntary Compliance Loss**, in the aggregate, ☒ See endorsement *#6* <br> under this policy including **Defense Expenses** ☐ No Coverage <br><br> This Sublimit of Liability shall be part of and not in addition to the **Policy Aggregate Limit of Liability** set forth in Item 3(a) of the Declarations. |
| 4 | **RETENTION:** Not applicable to: (i) non-**Indemnifiable Loss** of a **Natural Person Insured** (ii) judgments and settlements (all Coverages); and (iii) **Voluntary Compliance Loss** |
| 4(a) | **Defense Costs:** *$250,000* <br> ☐ None |
| 5 | **CONTINUITY DATE:** *March 31, 1994* |
| 6 | **PREMIUM:** *$250,282* <br><br> *Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: $2,478 included in policy premium.* <br> *Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows: 85% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.* <br> *A copy of the TRIA disclosure sent with the original quote is attached hereto.* |
| 7 | **NAME AND ADDRESS OF INSURER** (herein "**Insurer**"): <br> *Illinois National Insurance Company* <br> *175 Water Street* <br> *New York, NY 10038* <br><br> This policy is issued only by the insurance company indicated in this Item 7. |

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (APPLICABLE TO CERTIFIED AND NON-CERTIFIED ACTS)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury–in concurrence with the Secretary of State, and the Attorney General of the United States–to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *Lehman Brothers Holdings Inc.*

Policy Number: 507-47-13
Policy Period Effective Date From: *May 16, 2008*   To: *May 16, 2009*

NOTICE - THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**2-14051**

**IN WITNESS WHEREOF**, the Insurer has caused this policy to be signed on the Declarations page by its President, a Secretary and a duly authorized representative of the Insurer.

_____
SECRETARY

_____
PRESIDENT

_____
AUTHORIZED REPRESENTATIVE

_____
COUNTERSIGNATURE & DATE

_____
COUNTERSIGNED AT

MARSH USA, INC.
1166 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-3712

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

173072
**2-14051**
77893 (3/01)

## NEW YORK REGULATION 121
## DECLARATIONS DISCLOSURE SUPPLEMENT

Solely for the purposes of this supplement, "Claims-made relationship" means that period of time between the effective date of the first claims made policy between us (the Insured) and you (the policy holder) and the cancellation or nonrenewal of the last consecutive claims-made policy between such parties, where there has been no gap in coverage, but does not include any period covered by tail coverage.

### Retroactive Date/Prior Acts Exclusion Date/"Nose" Coverage

Coverage for events that occurred prior to the beginning of the policy period is referred to in this supplement as "nose" coverage. If the policy has a retroactive date feature or an exclusion or other wording deleting coverage for events that occurred before a certain date (a prior acts exclusion), then nose coverage is limited (or non existent) and **THERE WILL BE NO COVERAGE FOR CLAIMS ARISING OUT OF SUCH EVENTS THAT OCCURRED PRIOR TO THAT DATE.**

### Extended Reporting Period/Discovery Period/"Tail" Coverage

The Extended Reporting Period, or Discovery Period as it may be called, will increase the time within which a claim may be eligible for the policy's coverage. This is referred to in this supplement as "tail" coverage. Tail coverage helps to prevent the situation of a claim going uncovered because of cancellation or nonrenewal of the policy or other termination of coverage. Tail coverage provides for a period of time after termination of coverage during which claims first made against you and reported to us in writing, events that occurred before the termination of coverage and otherwise covered by the policy, will be covered. Generally, this optional tail coverage can be purchased if coverage is terminated either by us or by you. If such optional tail coverage is not purchased, an automatic tail coverage goes into effect upon termination of coverage, however, this automatic tail coverage lasts for only 60 days, (90 days if the policyholder is a public entity as defined in section 107 (a)(51) of the New York Insurance Law). After the expiration of the tail coverage, you will have a gap in your insurance coverage, unless you have obtained appropriate coverage to fill the gap. **UPON TERMINATION OF COVERAGE IT IS VERY IMPORTANT THAT YOU CONSULT WITH YOUR INSURANCE AGENT, BROKER OR OTHER PROFESSIONAL INSURANCE ADVISER.**

The length of the optional tail offered in the policy is one (1) year generally, but, this option will not be available in some circumstances. It will not be available if coverage is terminated by us because of non-payment of premium or fraud and at the effective date of such termination of coverage a claims-made relationship has continued for less than one year.

### Future Premium Increases As Claims-Made Relationship Matures

During the first several years of being covered on a claims-made basis, claims-made rates are generally comparatively lower than rates on other types of policies generally known as occurrence policies, especially if there is no nose coverage initially, and you can expect substantial annual premium increases, independent of overall rate level increases, until the claims-made relationship reaches maturity.

### Length of Optional Tail and Premium Charged For it

The length of the optional tail offered in this policy and the premium charged for it is as follows (please see the policy form and endorsements for complete details):

THIS FILED COPY. THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAWS AND REGULATIONS.

**2-14051**

75029 (7/02)

| <u>Length Of Optional Tail</u> | <u>Premium Charge For Optional Tail</u> |
|---|---|
| One Year | *150* % |

**THIS DISCLOSURE SUPPLEMENT GENERALLY DISCUSSES CERTAIN IMPORTANT FEATURES OF THE POLICY. PLEASE READ THE ENTIRE POLICY CAREFULLY AND DISCUSS IT WITH YOUR INSURANCE AGENT OR BROKER OR OTHER PROFESSIONAL INSURANCE ADVISER. THE PROVISIONS OF THE POLICY FORM AND ENDORSEMENTS THERETO ARE CONTROLLING.**

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*2-14051*

75029 (7/02)

# AIG EXECUTIVE LIABILITY

Insurance provided by the following member of American International Group, Inc.

## Employee Benefit Plan Fiduciary Liability Insurance

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by application, including any attachments and any materials incorporated therein which form a part of this policy, the **Insurer** agrees as follows:

1. **INSURING AGREEMENTS**

   (a) Solely with respect to **Claims** first made against an **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this policy shall pay the **Loss** of each and every **Insured** arising from a **Claim** against an **Insured** for any actual or alleged **Wrongful Act** by any such **Insured** (or by any employee for whom such **Insured** is legally responsible).

   (b) Solely with respect to **CAP Penalties** and **Delinquent Filer Penalties** assessed against an **Insured**, and **Voluntary Fiduciary Correction Loss** incurred by an **Insured**, during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** during the **Policy Period** or the **Discovery Period** (if applicable) or within thirty (30) days after the end of the **Policy Period** or the **Discovery Period** (if applicable), and subject to the other terms, conditions and limitations of this policy, this policy shall:

      (i) pay the **CAP Penalties** and **Delinquent Filer Penalties**; and
      (ii) reimburse the **Voluntary Fiduciary Correction Loss**,

   of each and every **Insured**, collectively not to exceed the amount of the **Sublimit of Liability** set forth in Item 3(c) of the Declarations; provided that the **Insured** shall select a **Panel Counsel Firm** as provided in Clause 9 of the policy.

   The payment of any **Voluntary Compliance Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law, including in the event that a **Voluntary Compliance Loss** results in a **Claim**.

2. **DEFENSE AGREEMENT**

   (a) **INSURER'S DUTY TO DEFEND**

      Except as hereinafter stated, the **Insurer** shall have both the right and duty to defend any **Claim** against an **Insured** alleging a **Wrongful Act**, even if such **Claim** is groundless, false or fraudulent.

      The **Insured** shall have the right to effectively associate with the **Insurer** in the defense of any **Claim**, including, but not limited to, negotiating a settlement, subject to the provisions of this Clause 2. The **Insurer** shall not, however, be obligated to defend any **Claim** after either: (1) the **Limit of Liability** and any additional **Defense Costs** (if any) indicated in Item 3(b) of the Declarations have been exhausted; or (2) after the rejection of a settlement offer, pursuant to the terms of subparagraph (c) of this Clause 2.

   (b) **INSURED'S OPTION TO ASSUME DEFENSE**

      Notwithstanding the above, the **Insureds** shall have the right to assume the defense of any **Claim** made against them. This right shall be exercised in writing by the **Named Sponsor** on the behalf of all **Insureds** within sixty (60) days of the reporting of the **Claim** to the **Insurer** pursuant to Clause 8 of the policy. Upon receipt of such

THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

written request, the **Insurer** shall tender the defense of the **Claim** to the **Insureds**. Once the defense has been so tendered, the **Insurer** cannot re-assume the defense of the **Claim**. The **Insurer** shall have the right to effectively associate with the **Insureds** in the defense of any **Claim**, including but not limited to negotiating a settlement. Provided that the **Insurer** shall be permitted to effectively associate with the **Insureds** in the defense of any **Claim**, including but not limited to negotiating a settlement of any **Claim**, the **Insurer's** consent to settlements, stipulated judgments and **Defense Costs** shall not be unreasonably withheld.

(c)    **GENERAL PROVISIONS (applicable to both (a) and (b) above)**

The Insurer shall advance **Defense Costs** prior to the final disposition of a **Claim**, subject to the other provisions of this policy. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests, in the event and to the extent that the **Insureds** shall not be entitled under the terms and conditions of this policy to payment of such **Loss**.

The **Insured(s)** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to in writing by the **Insurer** shall be recoverable as **Loss** under the terms of this policy.

The **Insured(s)** shall give the **Insurer** full cooperation and such information as the **Insurer** may reasonably require. The **Insurer** may make any settlement of any **Claim** it deems expedient with respect to any **Insured**, subject to such **Insured's** written consent. If any **Insured** withholds consent to such settlement, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed the amount for which the **Insurer** could have settled such **Claim**, plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer**. Further, in the event the **Insurer** is defending the **Claim** pursuant to Clause 2(a) above, then the **Insurer** shall tender the **Claim** to the **Insureds** who shall thereafter at their own expense and on their own behalf negotiate and defend such **Claim** independently of the **Insurer**.

Selection of counsel to defend the **Claim** made against the **Insureds** shall be governed by Clause 9 of the policy (if applicable).

3.    **DEFINITIONS**

"**Administrator**" means an **Insured** with respect to any **Wrongful Act** described in subparagraph (2) of the Definition of **Wrongful Act**.

"**Benefits**" means any obligation under a **Plan** to a participant or beneficiary under a **Plan** which is a payment of money or property, or the grant of a privilege, right, option or perquisite.

"**Breach of Fiduciary Duty**" means a violation of the responsibilities, obligations or duties imposed upon **Insureds** by **ERISA**.

"**Cafeteria Plan**" means a plan as defined in Section 125 of the Internal Revenue Code of 1986, as amended or a plan from which the participants may choose among two or more benefits consisting of cash and qualified benefits.

"**CAP Penalties**" means fines, penalties, sanctions, voluntary correction fees, compliance fees or user fees assessed against or collected from an **Insured** by the Internal Revenue Service (IRS) pursuant to a written agreement to correct an inadvertent **Plan** defect under an Employee Plans Compliance Resolution System, provided that such agreement to

REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

77892 (3/01)                                             2

correct such **Plan** defect was entered into in writing by the **Insured** with the IRS during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this policy is a continuous renewal).

"**Claim**" means:

   (1)  a written demand for monetary, non–monetary or injunctive relief; or

   (2)  a civil, criminal or arbitration proceeding for monetary, non–monetary or injunctive relief which is commenced by:

      (i)  service of a complaint or similar pleading; or

      (ii)  return of an indictment, information or similar document (in the case of a criminal proceeding); or

      (iii)  receipt or filing of a notice of charges; or

   (3)  a formal agency or regulatory adjudicative proceeding to which an **Insured** is subject; or

   (4)  any fact–finding investigation by the U.S. Department of Labor, the Pension Benefit Guaranty Corporation, or similar governmental agency which is located outside of the United States.

"**Cleanup Costs**" means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

"**Consulting Fees**" means fees charged by a third party actuary, benefits consultant or accountant resulting solely from the correction of an actual or potential **Breach of Fiduciary Duty**, but excluding any fees, costs or expenses associated with: (i) a **Plan** audit; or (ii) identifying, finding or assessing such **Breach of Fiduciary Duty**.

"**Defense Costs**" means reasonable and necessary fees, costs and expenses consented to in writing by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured**, whether incurred under Clause 2(a), (b) or (c) of this policy, but excluding any compensation of **Natural Person Insureds** or employees of an **Insured**.

"**Defense Expenses**" means reasonable and necessary attorney's fees, costs or expenses consented to in writing by the **Insurer** resulting solely from the correction of an actual or potential **Breach of Fiduciary Duty**, but excluding any fees, costs and expenses associated with finding or assessing such **Breach of Fiduciary Duty** and any compensation of **Natural Person Insureds** or employees of an **Insured**.

"**Delinquent Filer Penalties**" means penalties assessed by the U.S. Department of Labor or the IRS under a Delinquent Filer Voluntary Compliance Program for inadvertent failure to file Form 5500, provided that the failure to file such Form 5500 occurred during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this policy is a continuous renewal).

"**Dependent Care Assistance Program**" means a dependent care assistance program as defined in Section 129 of the Internal Revenue Code of 1986, as amended.

"**Domestic Partner**" means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Named Sponsor** or any **Subsidiary**.

"**Employee Benefit Law**" means **ERISA** or any similar common or statutory law of the United States, Canada or any state or other jurisdiction anywhere in the world to which a **Plan** is subject. Except to the extent set forth in subparagraph (2) of the Definition of **Wrongful Act**, **Employee Benefit Law** shall not include any law concerning worker's compensation, unemployment insurance, Social Security, government-mandated disability benefits or similar law.

THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE
FILING REQUIREMENTS OF THE NEW YORK
STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

"**ERISA**" means the Employee Retirement Income Security Act of 1974 (including, but not limited to, amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, the Health Insurance Portability and Accountability Act of 1996, the Newborns' and Mothers Health Protection Act of 1996, the Mental Health Parity Act of 1996, and the Women's Health and Cancer Rights Act of 1998), and including any amendment or revision thereto.

"**ESOP**" means any employee stock ownership plan as defined in **ERISA**, or any other **Plan** under which investments are made primarily in securities of the **Sponsor Organization** or whose assets at any time within twelve months prior to the inception date of this policy were comprised of 20% or more of securities of the **Sponsor Organization**.

"**Fiduciary**" means a fiduciary as defined in an **Employee Benefit Law** (if applicable), with respect to a **Plan**, or a person or entity who exercises discretionary control as respects the management of a **Plan** or the disposition of its assets.

"**Foreign Jurisdiction**" means any jurisdiction, other than the United States or any of its territories or possessions.

"**Foreign Policy**" means the **Insurer's** or any other member company of American International Group, Inc.'s (AIG) standard fiduciary or pension trust liability policy (including all mandatory endorsements, if any) approved by AIG to be sold within a **Foreign Jurisdiction**, that provides coverage substantially similar to the coverage afforded under this policy. If more than one such policy exists, then **Foreign Policy** means the standard policy most recently registered in the local language of the **Foreign Jurisdiction**, or if no such policy has been registered, then the policy most recently registered in that **Foreign Jurisdiction**. The term **Foreign Policy** shall not include any directors and officers, partnership, managerial, comprehensive general liability, employment practices liability or professional liability coverage.

"**Fringe Benefit**" means any plan or benefit described in Section 132 of the Internal Revenue Code of 1986, as amended.

"**Indemnifiable Loss**" means **Loss** for which the **Sponsor Organization** has indemnified or is permitted or required to indemnify any natural person **Insured**.

"**Insured(s)**" means:

    (1)  any **Natural Person Insured**;
    (2)  any **Plan(s)**;
    (3)  the **Sponsor Organization**; and
    (4)  any other person or entity in his, her or its capacity as a **Fiduciary**, **Administrator** or trustee of a **Plan** and included in the Definition of **Insured** by specific written endorsement attached to this policy.

"**Loss**" means damages, judgments (including pre/post-judgment interest on a covered judgment), settlements and **Defense Costs**; however, **Loss** shall not include: (1) civil or criminal fines or penalties imposed by law, except (i) to the extent set forth in Item 3(c) of the Declarations page for **Voluntary Compliance Loss**, (ii) **UK Fines and Penalties**, (iii) the five percent or less civil penalty imposed upon an **Insured** under Section 502(i) of **ERISA**, and (iv) the 20 percent or less penalty imposed upon an **Insured** under Section 502(l) of **ERISA**, with respect to covered settlements or judgments; (2) the multiplied portion of multiplied damages; (3) taxes or tax penalties; (4) any amount for which an **Insured** is not financially liable or which is without legal recourse to the **Insured**; (5) **Benefits**, or that portion of any settlement or award in an amount equal to such **Benefits**, unless and to the extent that recovery of such **Benefits** is based upon a covered **Wrongful Act** and is payable as a personal obligation of a **Natural Person Insured**; or (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

... APPLICABLE RATES ARE EXEMPT FROM THE FILING ... THE NEW YORK STATE INSURANCE ... DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Where permitted by law, **Loss** shall include punitive or exemplary damages imposed upon any **Insured** (subject to the policy s other terms, conditions and exclusions, including but not limited to exclusions relating to profit, deliberate fraud or criminal acts and knowing or willful violation of any statute, rule or law, including but not limited to **Employee Benefit Law**).

**Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (1)–(6) above of this Definition, subject to the other terms, conditions and exclusions of this policy.

**Loss** shall include **Voluntary Compliance Loss**.

"**Management Control**" means: (1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; the general partners of a limited partnership; or the members of the management board of a limited liability company; or (2) having the right, pursuant to written contract or the by–laws, charter, operating agreement or similar documents of the **Named Sponsor**, to elect, appoint or designate a majority of the Board of Directors of a corporation, the management committee of a joint venture, the general partners of a limited partnership, or the management board of a limited liability company.

"**Natural Person Insured**" means any:

(1)  past, present or future natural person director, officer, governor, general partner, management committee member, member of the board of managers or employee of a **Sponsor Organization** or if applicable, of a **Plan**, and as to all of the above in his or her capacity as a **Fiduciary**, **Administrator** or trustee of a **Plan**; or

(2)  past, present or future natural person in a position equivalent to a position listed in subparagraph (1) of this Definition in the event that the **Sponsor Organization** is operating in a **Foreign Jurisdiction.**

"**Non-qualified Plan**" means any of the following plans for a select group of management or highly compensated directors, officers and/or employees: deferred compensation plan, supplemental executive retirement plan, top-hat plan, or excess benefit plan.
"**Pension Plan**" means a pension plan as defined in any **Employee Benefit Law**.

"**Plan**" means automatically, any qualified plan, fund, trust or program (including, but not limited to, any **Pension Plan**, **Welfare Plan**, **Cafeteria Plan**, **Dependent Care Assistance Program**, **Fringe Benefit**, and **VEBA**) or **Non-qualified Plan**, established anywhere in the world, which was, is or shall be sponsored solely by the **Sponsor Organization**, or sponsored jointly by the **Sponsor Organization** and a labor organization, solely for the benefit of the employees and/or the directors, officers, governors, management committee members, members of the board of managers or natural person general partners of the **Sponsor Organization**, subject to the following provisions:

(1)  if such **Plan** is a **Pension Plan(s)**, other than an **ESOP**, stock option plan or **Pension Plan** described in subparagraphs (5)(a) and 5(b) below, then the **Named Sponsor** shall provide written notice of such **Plan** to the **Insurer** prior to the inception date of this policy, unless such **Plan** was already covered under a policy issued by the **Insurer** of which this policy is a continuous renewal;

(2)  if such **Plan** was sold, spun–off or terminated prior to the inception date of this policy the **Named Sponsor** shall provide written notice of such sale, spin-off or termination to the **Insurer** prior to the inception date of this policy, unless such sale, spin–off or termination had already been reported to the **Insurer** under a policy issued by the **Insurer** of which this policy is a continuous renewal;

REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

   (3)  if such **Plan** is sold, spun-off or terminated during the **Policy Period**, the **Named Sponsor** shall provide written notice of such sale, spin-off or termination to the **Insurer** prior to the end of the **Policy Period**;

   (4)  if such **Plan** is an **ESOP** or stock option plan, the **Named Sponsor** shall provide written notice of such **Plan** to the **Insurer** unless such **Plan** was already covered under a policy issued by the **Insurer** of which this policy is a continuous renewal and such **Plan** is added to the Definition of **Plan** by specific written endorsement attached to this policy; or

   (5)  if such **Plan** is a **Pension Plan** (other than an **ESOP**, or stock option plan) and:

      (a)  is acquired during the **Policy Period** as a result of the **Sponsor Organization's** acquisition of a **Subsidiary** whose assets total more than 25% of the total consolidated assets of the **Sponsor Organization** as of the inception date of this policy; or

      (b)  is acquired during the **Policy Period** and such **Plan's** assets total more than 25% of the total consolidated assets of all covered **Pension Plans** as of the inception date of this policy,

then, this policy shall apply to such **Plan** (but solely with respect to a **Wrongful Act(s)** occurring after the date of such acquisition), but only upon the condition that within 90 days of its acquisition, the **Named Sponsor** shall have provided the **Insurer** with a completed application for such new **Plan** and agreed to any additional premium or amendment of the provisions of the policy required by the **Insurer** relating to such new **Plan**. The 90 day reporting condition shall not apply if such new **Plan** does not constitute one of the five largest **Pension Plans** of the **Sponsor Organization** and the failure to report such **Plan** within the 90 day reporting period was due to inadvertent omission by the **Named Sponsor** and upon discovery of such **Plan**, the **Named Sponsor** shall notify the **Insurer** as soon as practicable, provide any information required by the **Insurer** relating to such **Plan** and pay any premium required by the **Insurer** relating to such **Plan**.

The Definition of **Plan** shall also include: (i) the following government-mandated programs: unemployment insurance, Social Security, or disability benefits, but solely with respect to a **Wrongful Act** defined in subparagraph (2) of the Definition of **Wrongful Act** in this policy; (ii) any **Pension Plan** (other than an **ESOP** or stock option plan) considered or created by the **Sponsor Organization** during the **Policy Period**; or (iii) any other plan, fund or program, which is included in the Definition of **Plan** by specific written endorsement attached to this policy.

In no event, however, shall the Definition of **Plan** include any multiemployer plan as defined in **Employee Benefit Law**.

"**Policy Period**" means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy.

"**Pollutants**" include (but are not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed.

"**Sponsor Organization**" means the **Named Sponsor** designated in Item 1 of the Declarations and any **Subsidiary** thereof; and, in the event any bankruptcy proceeding shall be instituted by or against the **Named Sponsor** or any **Subsidiary** thereof, the resulting debtor in possession (or equivalent status outside the United States), if any.

"**Subsidiary**" means any past, present or future: (1) for-profit entity of which the **Named Sponsor** has **Management Control** either directly or indirectly through one or more other **Subsidiaries**; and (2) not-for-profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by the **Named** Sponsor. The term **Subsidiary** shall automatically apply to any new **Subsidiary** acquired or created during the **Policy Period**.

DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

A for-profit entity ceases to be a **Subsidiary** when the **Named Sponsor** no longer maintains **Management Control** of such **Subsidiary**. A not-for-profit entity ceases to be a **Subsidiary** when the **Named Sponsor** no longer exclusively sponsors such **Subsidiary**.

**"UK Fines and Penalties"** means civil fines and penalties assessed against an **Insured** by either the Pensions Ombudsman appointed by the Secretary of State for Social Services in the United Kingdom or by the Occupational Pensions Regulatory Authority in the United Kingdom or any successor body thereto, subject to the other terms, conditions and exclusions of the policy.

**"VEBA"** means a voluntary employees beneficiary association as defined in Section 501(c)(9) of the Internal Revenue Code of 1986, as amended and the regulations thereunder, the purpose of which is to provide for life, sickness, accident or other benefits and that is funded solely by the **Sponsor Organization**, and provides benefits for voluntary members who are employees or former employees of the **Sponsor Organization** and/or their beneficiaries.

**"Voluntary Compliance Loss"** means **CAP Penalties**, **Delinquent Filer Penalties** and **Voluntary Fiduciary Correction Loss**.

**"Voluntary Fiduciary Correction Loss"** means damages, **Defense Expenses** and **Consulting Fees** incurred in connection with the U.S. Department of Labor's ("DOL") Voluntary Fiduciary Correction Program as set forth in the Federal Register, resulting from an inadvertent **Breach of Fiduciary Duty** occurring during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this policy is a continuous renewal), provided that such compliance with the DOL'S Voluntary Fiduciary Correction Program results in the **Insured** obtaining a "No Action" letter from the DOL; however, **Voluntary Fiduciary Correction Loss** shall not include: (1) civil or criminal fines or penalties imposed by law; (2) punitive or exemplary damages; (3) the multiplied portion of multiplied damages; (4) taxes or tax penalties; (5) any amount for which an **Insured** is not financially liable or which is without legal recourse to the **Insured**; (6) **Benefits**, or that portion of damages equal to such **Benefits**; (7) matters of which the **Insured** had knowledge prior to the inception date of this policy or the first policy issued by the **Insurer** to the **Named Sponsor** of which this policy is a continuous renewal; or (8) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

**"Welfare Plan"** means a welfare plan as defined in **Employee Benefit Law**.

**"Wrongful Act"** means:

(1) as respects an **Insured**: a violation of any of the responsibilities, obligations or duties imposed upon **Fiduciaries** by **Employee Benefit Law** with respect to a **Plan**; or any matter claimed against an **Insured** solely by reason of his, her or its status as a **Fiduciary**, the **Plan** or the **Sponsor Organization**, but only with respect to a **Plan**; and

(2) as respects an **Administrator**, any act, error or omission solely in the performance of one or more of the following administrative duties or activities, but only with respect to a **Plan**:
   (i) counseling employees, participants and beneficiaries; or
   (ii) providing interpretations; or
   (iii) handling of records; or
   (iv) activities affecting enrollment, termination or cancellation of employees, participants and beneficiaries under the **Plan**,
   or any matter claimed against an **Insured** solely by reason of his, her or its status as an **Administrator**, the **Plan** or the **Sponsor Organization**, but only with respect to a **Plan**;

(3) as respects a **Natural Person Insured**, any matter claimed against him or her arising out of his or her service as a **Fiduciary** or **Administrator** of any

NOTICE
... THE ... REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

multiemployer plan as defined by **ERISA**, but only if such service is at the specific written request or direction of the **Sponsor Organization** and such multiemployer plan is added by specific written endorsement attached to this policy, identified as a multiemployer plan and any required premium is paid. In no event shall coverage under this policy extend to a **Claim** against a multiemployer plan itself, its contributing employer(s) or any other fiduciaries or administrators of such plan, other than a **Natural Person Insured**.

## 4.   WORLDWIDE EXTENSION

Where legally permissible, this policy shall apply to a **Claim** made against any **Insured** anywhere in the world.

With regard to a **Claim(s)** brought and maintained solely in a **Foreign Jurisdiction** against an **Insured** formed and operating in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claim(s)** those terms and conditions (and related provisions) of the **Foreign Policy** registered with the appropriate regulatory body in such **Foreign Jurisdiction** that are more favorable to such **Insured** than the terms and conditions of this policy. However, this paragraph shall apply only to Clauses 1, 3–5, 9–13, and 16–19 of this policy and the comparable provisions of the **Foreign Policy**. In addition, this paragraph shall not apply to the non-renewal or claims made and reported provisions of any policy.

All premiums, limits, retentions, **Loss** and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Sponsor**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

## 5.   EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against an **Insured(s)**:

(a)   arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an **Insured** was not legally entitled;

(b)   arising out of, based upon or attributable to the committing in fact of any criminal or deliberate fraudulent act, or any knowing or willful violation of any statute, rule or law, including, but not limited to **Employee Benefit Law**;

The **Wrongful Act** of any **Insured** shall not be imputed to any other **Insured** for the purpose of determining the applicability of the foregoing exclusions 5(a) and 5(b). ±

(c)   for discrimination in violation of any law, except that this exclusion shall not apply to discrimination in violation of **Employee Benefit Law**;

(d)   alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related **Wrongful Act** alleged or contained, in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e)   alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f)  for failure to fund a **Plan** in accordance with **Employee Benefit Law** or the **Plan** instrument, or the failure to collect contributions owed to the **Plan**; except that this exclusion shall not apply to **Defense Costs**;

(g)  alleging, arising out of, based upon or attributable to any act or omission in his, her or its capacity as a Fiduciary or Administrator of any plan, fund or program, other than a **Plan** as defined in this policy, or by reason of his, her or its status as a Fiduciary or Administrator of such other plan, fund or program;

(h)  for bodily injury, sickness, disease, or death or emotional distress of any person, or damage to or destruction of any tangible property, including the loss of use thereof; except that this exclusion shall not apply to **Defense Costs** incurred in the defense of a **Claim** for **Breach of Fiduciary Duty**;

(i)  alleging, arising out of, based upon or attributable to any **Wrongful Act** as respects the **Plan** taking place at any time when the **Sponsor Organization** did not sponsor such **Plan** or when the **Natural Person Insured** was not a **Fiduciary**, **Administrator**, trustee, director, officer, governor, management committee member, member of the board of managers, general partner or employee of the **Sponsor Organization** or if applicable, a **Plan**;

(j)  alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly: (1) the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or (2) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, however, that this exclusion shall not apply to non-**Indemnifiable Loss** arising from a **Claim** alleging damage to a **Plan**, other than non-**Indemnifiable Loss** constituting **Cleanup Costs**;

6.   **LIMIT OF LIABILITY   (FOR ALL LOSS – INCLUDING DEFENSE COSTS)**

The **Limit of Liability** stated in Item 3(a) of the Declarations is the limit of the **Insurer's** liability for all **Loss**, including **Defense Costs**, under this policy arising out of all **Claims** first made against the **Insured** during the **Policy Period** or the **Discovery Period** (if applicable). The **Limit of Liability** stated in Item 3(b) of the Declarations, if any, shall be an additional **Limit of Liability** for that part of **Loss** constituting **Defense Costs** incurred in connection with all **Claims** first made against the **Insured** during the **Policy Period** or the **Discovery Period** (if applicable). The **Limit of Liability** for **Defense Costs** stated in Item 3(b) shall be in addition to and not part of the **Limit of Liability** stated in Item 3(a) of the Declarations.   **Loss** constituting **Defense Costs** shall first reduce the additional **Limit of Liability** stated in Item 3(b). Should the **Limit of Liability** stated in Item 3(b) of the Declarations become exhausted, or should the **Limit of Liability** stated in Item 3(b) of the Declarations be stated as "none", then subsequent **Defense Costs** will reduce the **Limit of Liability** stated in Item 3(a).

The **Sublimit of Liability** set forth in Item 3(c) of the Declarations shall be part of and not in addition to the **Limit of Liability** set forth in Item 3(a).

The **Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Limit of Liability** for the **Policy Period**.  Further, any **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** (if applicable), which pursuant to Clause 8(b) or 8(c) is considered made during the **Policy Period** or **Discovery Period**, shall also be subject to the aggregate **Limit(s) of Liability** stated in Item 3 of the Declarations.

Defense Costs, whether incurred under Clause 2(a), (b) or (c) of this policy, are not payable by the Insurer in addition to the Limit of Liability; except that the separate limit, if any, listed in Item 3(b) of the Declarations shall be in addition to the aggregate Limit of Liability stated in Item 3(a) of the Declarations. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.

**7.    RETENTION CLAUSE**

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the Retention amount stated in Item 4 of the Declarations, such Retention amount to be borne by the **Insured** and shall remain uninsured, with regard to all **Defense Costs** other than: (1) non−**Indemnifiable Loss** of a **Natural Person Insured**; and (2) **Voluntary Compliance Loss**. A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

**8.    NOTICE/CLAIM REPORTING PROVISIONS**

**Notice hereunder shall be given in writing to the Insurer named in Item 7 of the Declarations at the address indicated in Item 7 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.**

(a)    The **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of a **Claim** made against an **Insured** as soon as practicable after the **Named Sponsor's** risk manager or general counsel (or if no such position exists, then such equivalent position) first becomes aware of the **Claim**, but in all events no later than either:

(1)    the end of the **Policy Period** or during the **Discovery Period** (if applicable); or

(2)    within thirty (30) days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an Insured within the final thirty (30) days of the **Policy Period** or the **Discovery Period** (if applicable).

(b)    If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause 8(a) above, then a **Claim** which is subsequently made against an **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in the **Claim** of which such notice has been given, shall be considered related to the first **Claim** and made at the time such notice was given.

(c)    If during the **Policy Period** or during the **Discovery Period** (if applicable) the **Sponsor Organization** or an **Insured(s)** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then a **Claim** which is subsequently made against such **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

**9.    PRE−AUTHORIZED DEFENSE ATTORNEYS**

This Clause 9 applies only to: (1) a **Claim** brought by any government entity; (2) a request for coverage for a **Voluntary Compliance Loss**; or (3) a **Claim** brought in the form of a class or representative action.

Affixed as Appendix A hereto and made a part of this policy is a list of Panel Counsel law firms ("**Panel Counsel Firm(s)**") from which a selection of legal counsel shall be made to conduct the defense of any **Claim** against an **Insured** to which this Clause 9 applies and pursuant to the terms set forth below:

THIS APPLICATION AND POLICY ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

In the event the **Insurer** is operating under a duty to defend pursuant to Clause 2(a) of this policy, then the **Insurer** shall select a **Panel Counsel Firm** to defend the **Insureds**. Upon the written request of the **Named Sponsor**, the **Insurer** may consent to a different **Panel Counsel Firm** selected by the **Named Sponsor** to defend the **Insureds**, which consent shall not be unreasonably withheld.

In the event the **Insureds** have assumed the defense of the **Claim** pursuant to Clause 2(b) of the policy, then the **Insureds** shall select a **Panel Counsel Firm** to defend the **Insured**. In addition, with the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld, the **Insured** may select a **Panel Counsel Firm** different from that selected by other **Insureds** if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The selection of a **Panel Counsel Firm** from the attached list to defend the **Claim** against the **Insureds** shall not be restricted to the jurisdiction in which the **Claim** is brought.

The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no change shall be made to the specific list attached to this policy during the **Policy Period** without the consent of the **Named Sponsor**. At the request of the **Named Sponsor**, the **Insurer** may in its discretion add one or more law firms to the attached list of **Panel Counsel Firms** for the purposes of defending the **Claim** made against the **Insureds**. The list of **Panel Counsel Firms** may also be amended to add, at the sole discretion of the **Insurer**, a non–**Panel Counsel Firm** for the purpose of acting as "local counsel" to assist an existing **Panel Counsel Firm**, which **Panel Counsel Firm** will act as "lead counsel" in conducting the defense of the **Claim**, for **Claims** brought in a jurisdiction in which the chosen **Panel Counsel Firm** does not maintain an office.

## 10.  DISCOVERY CLAUSE

Except as indicated below, if the **Named Sponsor** shall cancel or the **Named Sponsor** or the **Insurer** shall refuse to renew this policy, the **Named Sponsor** shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal ("**Discovery Period**"), upon payment of the respective "**Additional Premium Amount**" described below, in which to give to the **Insurer** written notice pursuant to Clauses 8(a) and 8(c) of the policy of: (i) **Claims** first made against an **Insured**; and (ii) circumstances of which the **Natural Person Insured** or an **Insured** shall become aware, in either case during said **Discovery Period** and solely with respect to a **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

The **Additional Premium Amount** for: (1) one year shall be no more than 75% of the **Full Annual Premium**; (2) two years shall be no more than 150% of the **Full Annual Premium**; and (3) three years shall be no more than 225% of the **Full Annual Premium**. As used herein, "**Full Annual Premium**" means the premium level in effect immediately prior to the end of the **Policy Period**.

Notwithstanding the first paragraph of Clause 6, if the **Named Sponsor** shall cancel or the **Insurer** or the **Named Sponsor** shall refuse to renew this policy, then the **Named Sponsor** shall also have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the end of the **Policy Period**) with an aggregate limit of liability applicable to **Claims** made against the **Insured** during such **Discovery Period** which is in addition to, and not part of, the applicable **Limit of Liability** set forth in Item 3 of the Declarations. The **Insurer** shall quote such a **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as it deems appropriate in its sole and absolute discretion.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

In the event of a **Transaction**, as defined in Clause 12(a), the **Named Sponsor** shall have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable and the additional premium charged shall be fully earned at inception. This Clause 10 shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this Clause 10 shall terminate unless written notice of election of a **Discovery Period,** together with any additional premium due, is received by the **Insurer** no later than thirty (30) days subsequent to the effective date of the cancellation, nonrenewal or **Transaction**.

## 11. CANCELLATION CLAUSE

This policy may be canceled by the **Named Sponsor** at any time only by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent. This policy may only be canceled by or on behalf of the **Insurer** in the event of non-payment of premium by the **Named Sponsor**. In the event of non-payment of premium by the **Named Sponsor**, the **Insurer** may cancel this policy by delivering to the **Named Sponsor** or by mailing to the **Named Sponsor**, by registered, certified, or other first class mail, at the **Named Sponsor**'s address as shown in Item 1 of the Declarations, written notice stating when, not less than 15 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect.

If this policy shall be canceled by the **Named Sponsor**, the **Insurer** shall retain the customary short rate proportion of the premium herein. If the period of limitation relating to the giving of notice as set forth in this Clause 11 is also set forth in any law controlling the construction thereof, then such period shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in the controlling law.

## 12. ORGANIZATIONAL CHANGES

(a) If during the **Policy Period**:

    (1) the **Named Sponsor** shall consolidate with, merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

    (2) any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Sponsor**;

(any of such events being a "Transaction"), then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Transaction**. This policy may not be canceled after the effective time of the **Transaction** and the entire premium for this policy shall be deemed earned as of such time. The **Named Sponsor** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in Clause 10 of this policy.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

77892 (3/01)

(b) *Other Organizational Changes:* In all events, coverage as is afforded under this policy with respect to a **Claim** made against any **Sponsor Organization** and/or any **Insured** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time such **Sponsor Organization** became a **Sponsor Organization** and such **Insured** became an **Insured**, and prior to the effective time that such **Sponsor Organization** ceases to be a **Sponsor Organization** or such **Insured** ceases to be an **Insured**.

With regard to any **Plan** that was sold, spun-off or terminated either prior to the inception date of this policy or during the **Policy Period**, this policy shall apply but solely with respect to a **Wrongful Act(s)** that occurred prior to the date of such sale or spin-off, or prior to the date that the **Sponsor Organization** or **Natural Person Insured** ceases to be a **Fiduciary** or **Administrator** of, a sold or spun-off **Plan**, or in the case of a terminated **Plan**, prior to the final date of asset distribution of such **Plan**, provided that notice of such sale, spin-off or termination is provided to the **Insurer** before the end of the **Policy Period**.

## 13. SUBROGATION AND WAIVER OF RECOURSE

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery thereof, and the **Insureds** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit in the name of the **Insureds**. In no event shall the **Insurer** exercise its rights of subrogation against an **Insured** under this policy unless such **Insured** has been convicted of a criminal act, or been determined to have in fact committed a deliberate fraudulent act or knowingly or willingly violated any statute, rule or law (including but not limited to **Employee Benefit Law**), or been determined to have in fact obtained any profit or advantage to which such **Insured** was not legally entitled.

In the event this policy has been purchased by an **Insured** other than a **Plan**, the **Insurer** shall have no right of recourse against an **Insured**. Notwithstanding the foregoing, the **Insurer** shall have a right of recourse against an **Insured** arising out of a **Claim** by an **Insured** against another **Insured** unless such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, assistance of or active participation by the **Insured** claimed against.

It is further provided that in the event of any recovery under this Clause 13, the **Limit of Liability** of this policy shall be restored to the extent of such recovery after subtracting any costs, expenses or reimbursements incurred by the **Insurer** in connection therewith.

## 14. OTHER INSURANCE

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the **Limit of Liability** provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

## 15. NOTICE AND AUTHORITY

It is agreed that the **Named Sponsor** shall act on behalf of its **Subsidiaries** and each and every **Insured** with respect to the giving of notice of **Claim**, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining of any right under Clause 2(b) or Clause 10 of this policy.

77892 (3/01)    13

## 16.  ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

## 17.  ACTION AGAINST INSURER

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insureds** after actual trial or by written agreement of the **Insureds**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.  No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against any **Insured** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by any **Insured** or his or her spouse or **Domestic Partner** or his, her or its legal representatives.  Bankruptcy or insolvency of any **Insured** or of his, her or its estate shall not relieve the **Insurer** of any of its obligations hereunder.

## 18.  SPOUSAL, DOMESTIC PARTNER AND LEGAL REPRESENTATIVE EXTENSION

If a **Claim** against a **Natural Person Insured** includes a **Claim** against: (i) the lawful spouse **or Domestic Partner** of such **Natural Person Insured**; or (ii) a property interest of such spouse or **Domestic Partner**, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Natural Person Insured**, this policy shall cover **Loss** arising from the **Claim** made against that spouse or **Domestic Partner** or the property of that spouse or **Domestic Partner** to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse or **Domestic Partner**.  This policy shall cover **Loss** arising from a **Claim** made against the estate, heirs, or legal representatives of any deceased **Natural Person Insured**, and the legal representatives of any **Natural Person Insured**, in the event of incompetency, insolvency or bankruptcy, who was a **Natural Person Insured** at the time the **Wrongful Act(s)** upon which the **Claim** is based was committed.

## 19.  HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

NOTICE:    THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

# APPENDIX A
## EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY
## PANEL COUNSEL LIST

### ARIZONA

**Snell & Wilmer, LLP**
*Thomas R. Hoecker (602)382-6361*
One Arizona Center, Phoenix, AZ 85004-2202 (602)382-6000
Class Action Approved

### CALIFORNIA

**DLA Piper Rudnick Gray Cary US, LLP**
*Charles L. Deem (619)699-2978*
4365 Executive Drive, Suite 1100, San Diego, CA 92121-2133 (619)699-2978
Class Action Approved

**Greenberg Traurig, LLP**
2450 Colorado Avenue, Suite 400, East, Santa Monica, CA 90404 (310)586-7700
Class Action Approved

**Jackson Lewis, LLP**
*Michael D. Jacobster (914)514-6132*
725 South Figueroa Street, Suite 2500, Los Angeles, CA 90017 (914)328-0404
Class Action Approved

*Michael D. Jacobster (914)514-6132*
199 Fremont Street, 10th Floor, San Francisco, CA 94105 (914)328-0404
Class Action Approved

**Pillsbury Winthrop Sha**
*Richard M. Segal (619)544-3203*
501 West Broadway, Suite 1100, San Diego, CA 92101 (619)544-3203

### DISTRICT OF COLUMBIA

**Arent Fox, PLLC**
*Carol Connor Cohen*
1050 Connecticut Avenue, NW, Washington, DC 20036-5339 (202)857-6000
Class Action Approved

**Arnold & Porter**
*Scott B. Schreiber (202)942-5672 / Andrew T. Karron (202)942-5335 / David P. Gersch (202)942-5125*
555 Twelfth Street, N.W., Washington, DC 20004-1206 (202)942-5000
Class Action Approved

**DLA Piper Rudnick Gray Cary US, LLP**
*Charles B. Wayne (202)861-3900*
1200 Nineteenth Street, NW, Washington, DC 20036-2412 (202)861-3900

**Gibson, Dunn & Crutcher, LLP**
*William J. Kilberg (202)955-8573 / Baruch A. Fellner (202)955-8591 / Peter H. Turza (202)955-8579*
1050 Connecticut Ave., N.W., Washington, DC 20036-5306 (202)955-8500
Class Action Approved

Revised (4/08)

Page 1

Please visit our website at www.briefbase.com to view additional firms that may have been added to the panel counsel list since this policy was issued.

2-14051

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE ... OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## APPENDIX A
### EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY
### PANEL COUNSEL LIST

**Groom Law Group Chartered**
*Christopher Rillo (202)861-5418*
1701 Pennsylvania Avenue, NW, Suite 1200, Washington, DC 20006 (202)857-0620
Class Action Approved

**Kilpatrick Stockton, LLP**
*Steven J. Sacher (202)508-5800*
607 14th Street, NW, Suite 900, Washington, DC 20005-2018 (202)508-5846
Class Action Approved

**O'Melveny & Myers, LLP**
*Robert N. Eccles (202)383-5363*
1625 Eye Street, NW, Washington, DC 20006 (202)383-5300
Class Action Approved

**Steptoe & Johnson, LLP**
*Paul J. Ondrasik, Jr. (202)429-8088 / Edward R. Mackiewicz (202)429-6412*
1330 Connecticut Ave., NW, Washington, DC 20036 (202)429-3000
Class Action Approved

### FLORIDA

**Greenberg Traurig, LLP**
*Joseph Z. Fleming (305)579-0500 / Steven B. Lapidus (305)579-0500*
1221 Brickell Avenue, Miami, FL 33131 (305)579-0500
Class Action Approved

### GEORGIA

**Alston & Bird, LLP**
*H. Douglas Hinson (404)881-7590*
One Atlantic Center, 1201 West Peachtree Street, Atlanta, GA 30309-3424 (404)881-7000
Class Action Approved

**Jackson Lewis, LLP**
*Michael D. Jacobster (914)514-6132*
1900 Marquis One Tower, NE, 245 Peachtree Center Ave., NE, Atlanta, GA 30303
(914)328-0404
Class Action Approved

**King & Spalding**
*David Tetrick, Jr. (404)572-3526*
1180 Peachtree Street, Atlanta, GA 30309 (404)572-4600
Class Action Approved

### ILLINOIS

**Baker & McKenzie**
*Michael A. Pollard (312)861-2786*
130 East Randolph Drive, Chicago, IL 60601 (312)861-8000
Class Action Approved

Revised (4/08)

Page 2

Please visit our website at www.briefbase.com to view additional firms that may have been added to the panel counsel list since this policy was issued.

2-14051

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
LAW. PURSUANT TO SUBSECTION (e)(1)(A) OF
SECTION 2305 OF THE INSURANCE LAW AND SECTION
16.0 OR 16.1 OF THE NEW YORK STATE INSURANCE
DEPARTMENT REGULATION 86, OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

## APPENDIX A
## EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY
## PANEL COUNSEL LIST

**DLA Piper Rudnick Gray Cary US, LLP**
*Ian S. Kopelman (312)368-2161*
203 North LaSalle Street, Suite 1900, Chicago, IL 60601-1293 (312)368-4000
Class Action Approved


**Greenberg Traurig, LLP**
77 West Wacker Drive, Suite 2500, Chicago, IL 60601 (312)456-8400


**Jackson Lewis, LLP**
*Michael D. Jacobster (914)514-6132*
320 West Ohio Street, Suite 500, Chicago, IL 60610 (914)328-0404
Class Action Approved


**Mayer, Brown Rowe & Maw**
*William A. Gordon / James D. Holzhauer (312)701-7078*
190 S. LaSalle St., Chicago, IL 60603-3441 (312)782-0600
Class Action Approved


**Seyfarth Shaw, LLP**
*Brian Cousin / Gerald Maatman (312)460-5965 / John T. Murray (404)888-1020 / Thomas J. Piskorski (312)269-8925*
131 S. Dearborn Street, Suite 2400, Chicago, IL 60603 (312)460-5000
Class Action Approved


**Vedder Price Kaufman & Kammholz**
*Charles B. Wolf (312)609-7888 / Thomas G. Hancuch (312)609-7824*
222 North LaSalle Street, Chicago, IL 60601 (312)609-7500
Class Action Approved


## LOUISIANA


**Proskauer Rose, LLP**
*Howard Shapiro (504)310-4085*
909 Poydras Street, Suite 1100, New Orleans, LA 70112-4017 (504)310-4085
Class Action Approved


## MAINE


**MMMB Group**
*Stephan G. Bachelder*
22 Free Street, Suite 201, PO Box 17594, Portland, ME 04112-8594 (207)761-8100
Class Action Approved


**Pierce Atwood**
*William J. Kayatta, Jr. (207)791-1238*
One Monument Square, Portland, ME 04101 (207)791-1100
Class Action Approved


Revised (4/08)

Page 3

Please visit our website at www.briefbase.com to view additional firms that may have been
added to the panel counsel list since this policy was issued.

**2-14051**

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, THE FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

## APPENDIX A
## EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY
## PANEL COUNSEL LIST

**MARYLAND**

**DLA Piper Rudnick Gray Cary US, LLP**
*Robert J. Mathias (410)580-4209 / Mark Muedeking (202)861-6258 / John R. Wellschlager (410)580-4281*
6225 Smith Avenue, Baltimore, MD 21209 (410)580-3000
Class Action Approved

**MASSACHUSETTS**

**Jackson Lewis, LLP**
*Michael D. Jacobster (914)514-6132*
75 Park Plaza, 4th Floor, Boston, MA 02116 (914)328-0404
Class Action Approved

**MICHIGAN**

**Miller, Canfield, Paddock and Stone, PLC**
*Charles S. Mishkind (Co-Chair of Group) (616)776-6307*
99 Monroe Avenue, NW, Suite 1200, Grand Rapids, MI 49503 (616)454-8656
Class Action Approved

**MINNESOTA**

**Dorsey & Whitney, LLP**
*Stephen P. Lucke (612)343-7947 / Timothy E. Branson (612)343-7920*
50 South Sixth Street, Suite 1500, Minneapolis, MN 55402-1498 (612)340-2600
Class Action Approved

**Faegre & Benson, LLP**
*Hubert V. Forcier (612)766-7417 / Paul W. Heiring (612)766-8316 / Steven L. Severson (612)766-7310*
2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402-3901
(612)766-7000
Class Action Approved

**NEW JERSEY**

**Dechert, LLP**
*Matthew V. DelDuca (609)620-3202*
Princeton Pike Corporate Center, P.O. Box 5218, Princeton, NJ 08543-5218 (609)620-3200
Class Action Approved

**Greenberg Traurig, LLP**
200 Park Avenue, P.O. Box 677, Florham Park, NJ 07932-0677 (973)360-7900
Class Action Approved

**NEW YORK**

**DLA Piper Rudnick Gray Cary US, LLP**
*David E. Nachman (212)835-6074*
1251 Avenue of the Americas, New York, NY 10020-1104 (212)835-6000
Class Action Approved

Revised (4/08)

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

Page 4

Please visit our website at **www.briefbase.com** to view additional firms that may have been
added to the panel counsel list since this policy was issued.

**2-14051**

## APPENDIX A
## EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY
## PANEL COUNSEL LIST

**Greenberg Traurig, LLP**
MetLife Building, 200 Park Avenue, New York, NY 10166 (212)801-9200
Class Action Approved


**Jackson Lewis, LLP**
*Michael D. Jacobster (914)514-6132*
59 Maiden Lane, 39th Floor, New York, NY 10038 (914)328-0404
Class Action Approved

*Michael D. Jacobster (914)514-6132*
One North Broadway, 15th Floor, White Plains, NY 10601 (914)328-0404
Class Action Approved

**Kramer Levin Naftalis & Frankel, LLP**
*Michael J. Dell (212)715-9129*
1177 Avenue of the Americas, New York, NY 10036 (212)715-9100
Class Action Approved

**Pillsbury Winthrop Shaw Pittman**
*Frederick A. Brodie (212)858-1628 / Susan P. Serota (212)858-1125 / John F. Easton (713)276-7624 /
Christine Nicolaides Kearns (202)663-8488 / Richard M. Segal (619)544-3203*
1540 Broadway, New York, NY 10036 (212)858-1000

**Proskauer Rose, LLP**
*Myron D. Rumeld (212)969-3021*
1585 Broadway, New York, NY 10036-8299 (212)969-3021
Class Action Approved


## NORTH CAROLINA

**Poyner & Spruill, LLP**
*Susanna K. Gibbons (919)783-2813*
3600 Glenwood Avenue, (27612), P.O. Box 10096, Raleigh, NC 27605-0096 (919)783-6400
Class Action Approved


## PENNSYLVANIA

**Dechert, LLP**
4000 Bell Atlantic Tower, 1717 Arch Street, Philadelphia, PA 19103-2793 (215)994-4000
Class Action Approved

**Jackson Lewis, LLP**
*Michael D. Jacobster (914)514-6132*
One PPG Place, 28th Floor, Pittsburgh, PA 15222 (914)328-0404
Class Action Approved


**Morgan, Lewis & Bockius, LLP**
*Brian T. Ortelere (215)963-5150*
1701 Market Street, Philadelphia, PA 19103-2921 (215)963-5000
Class Action Approved

Revised (4/08)

Please visit our website at www.briefbase.com to view additional firms that may have been
added to the panel counsel list since this policy was issued.

**2-14051**

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

## APPENDIX A
## EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY
## PANEL COUNSEL LIST

**Pepper Hamilton, LLP**
*Laurence Z. Shiekman (215)981-4347 / Kay Kyungsun Yu (215)981-4188 / Larry R. Wood, Jr.
(215)981-4103*
3000 Two Logan Square, Eighteenth and Arch Streets, Philadelphia, PA 19103-2799
(215)981-4000
Class Action Approved

## SOUTH CAROLINA

**Ogletree, Deakins, Nash, Smoak & Stewart, PC**
*Thomas M. Christina*
918 S. Pleasantbury Drive, Greenville, SC 29607-2424 (864)271-7410
Class Action Approved

## TEXAS

**Fulbright & Jaworski, LLP**
301 McKinney, Suite 5100, Houston, TX 77010 (713)651-5151
Class Action Approved

**Jackson Lewis, LLP**
*Michael D. Jacobster (914)514-6132*
3811 Turtle Creek Blvd., Suite 500, Dallas, TX 75219 (914)328-0404
Class Action Approved

## VIRGINIA

**Jackson Lewis, LLP**
*Michael D. Jacobster (914)514-6132*
8614 Westwood Center Drive, Suite 950, Vienna, VA 22182 (703)821-2189
Class Action Approved

## WASHINGTON

**Perkins Coie, LLP**
*Graham H. Fernald (206)359-8466*
1201 Third Avenue, Suite 4800, Seattle, WA 98101-3099 (206)359-8000
Class Action Approved

## WISCONSIN

**Reinhart, Boerner, Van Deuren, SC**
*Jeffrey R. Fuller (414)298-8115*
1000 North Water Street, Suite 2100, Milwaukee, WI 53202-3400 (414)298-1000
Class Action Approved

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

Revised (4/08)

Page 6

Please visit our website at www.briefbase.com to view additional firms that may have been
added to the panel counsel list since this policy was issued.

2-14051

ENDORSEMENT# *1*

This endorsement, effective *12:01 am    May 16, 2008*                 forms a part of
policy number   *507-47-13*
issued to *Lehman Brothers Holdings Inc.*

by      *Illinois National Insurance Company*

**NEW YORK AMENDATORY ENDORSEMENT**

Wherever used in this endorsement: 1) "Insurer" means the insurance company which
issued this policy; and 2) "Insured" means the Named Corporation, Named Organization,
Named Sponsor, Named Insured, Named Entity or Insured stated in the declarations page;

The policy is hereby amended as follows:

I.      The Cancellation and When We Do Not Renew provisions are deleted and replaced
by the following:

(a)    CANCELLATION BY THE INSURED

This policy may be cancelled by the Insured by surrender of this policy to the
Insurer or by giving written notice to the Insurer stating when thereafter such
cancellation shall be effective. The Policy Period terminates at the date and
hour specified in such notice, or at the date and time of surrender.

(b)    CANCELLATION, NONRENEWAL AND CONDITIONAL RENEWAL BY THE INSURER

(i)    If this policy has been in effect for sixty (60) or fewer days when
cancellation notice is mailed, and this policy is not a renewal of a policy
issued by the Insurer, then this policy may be cancelled by the Insurer
by mailing or delivering to the Insured, and to his authorized insurance
agent or broker, written notice stating when not less than twenty (20)
days thereafter (fifteen (15) days thereafter if cancellation is because of
one of the reasons for cancellation set forth in subsection (ii) below) the
cancellation shall be effective. Notice of cancellation issued by the
Insurer shall specify the grounds for cancellation.

(ii)   If this policy has been in effect for more than sixty (60) days when
notice of cancellation is mailed, or if this policy is a renewal of a policy
issued by the Insurer, then this policy may be cancelled by the Insurer
by mailing or delivering to the Insured, and to his authorized insurance
agent or broker, written notice stating when not less than fifteen (15)
days thereafter the cancellation shall be effective; however, such
cancellation must be based on one or more of the following:

(A)    nonpayment of premium, provided, however, that a notice of
cancellation on this ground shall inform the first Named Insured of
the amount due;

(B)    conviction of a crime arising out of acts increasing the hazard
insured against;

(C)    discovery of fraud or material misrepresentation in the obtaining of
the policy or in the presentation of a claim thereunder;

(D)    after issuance of the policy or after the last renewal date,
discovery of an act or omission or a violation of any policy
condition that substantially and materially increases the hazard
insured against, and which occurred subsequent to inception of the
current Policy Period;

THIS FORM HAS BEEN APPROVED FOR USE ..... ARE ON FILE ..... ARGUMENT ..... EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAWS AND REGULATIONS.

*2-14051*

69898 (9/06)

**END 001**
Page 1 of 4

### ENDORSEMENT# 1    (continued)

(E)   material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

(F)   required pursuant to a determination by the New York Superintendent of Insurance that continuation of the present premium volume of the Insurer would jeopardize the Insurer's solvency or be hazardous to the interests of Insureds of the Insurer, its creditors or the public;

(G)   a determination by the New York Superintendent of Insurance that the continuation of the policy would violate, or would place the Insurer in violation of, any provision of the New York Insurance Law;

(H)   revocation or suspension of an Insured's license to practice his profession; or

(I)   where the Insurer has reason to believe that there is a probable risk or danger that the Insured will destroy or permit the destruction of the insured property for the purpose of collecting the insurance proceeds, provided, however, that:

  (1)   a notice of cancellation on this ground shall inform the Insured in plain language that the Insured must act within ten days if review by the department of the ground for cancellation is desired pursuant to item (3) of this subparagraph (I);

  (2)   notice of cancellation on this ground shall be provided simultaneously by the Insurer to the department; and

  (3)   upon written request of the Insured made to the department within ten days from the Insured's receipt of notice of cancellation on this ground, the department shall undertake a review of the ground for cancellation to determine whether or not the Insurer has satisfied the criteria for cancellation specified in this subparagraph; if after such review the department finds no sufficient cause for cancellation on this ground, the notice of cancellation on this ground shall be deemed null and void.

Notice of cancellation by the Insurer shall specify the grounds for cancellation.

(iii)

(A)   The Insurer shall mail to the Insured, and to his authorized insurance agent or broker, written notice indicating the Insurer's intention:

  (1)   not to renew this policy;
  (2)   to condition its renewal upon change of limits, change in type of coverage, reduction of coverage, increased deductible or addition of exclusions or upon increased premiums in excess of ten percent; (exclusive of any premium increase generated as a result of increased exposure units or as a result of experience rating, loss rating, or audit);

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*2-14051*

69898 (9/06)

**ENDORSEMENT# *1*** (continued)

(3)    that the policy will not be renewed or will not be renewed upon the same terms, conditions or rates; such alternative renewal notice must be mailed or delivered on a timely basis and advise the Insured that a second notice shall be mailed at a later date indicating the Insurer's intention as specified in subparagraph (1) or (2) of this paragraph (A) and that coverage shall continue on the same terms, conditions and rates as expiring, until the later of the expiration date or sixty (60) days after the second notice is mailed or delivered; such alternative renewal notice also shall advise the insured of the availability of loss information and, upon written request, the request, the insurer shall furnish such loss information within ten (10) days to the insured.

(B)    A nonrenewal notice as specified in subparagraph (1), a conditional renewal notice as specified in subparagraph (2), and the second notice described in subparagraph (3) of paragraph (A) of this subsection (iii) shall contain the specific reason or reasons for nonrenewal or conditional renewal, and set forth the amount of any premium increase and nature of any other proposed changes.

(C)    The notice required by paragraph (A) of this subsection (iii) shall be mailed at least sixty (60) but not more than one hundred twenty (120) days in advance of the end of the Policy Period.

(D)

(1)    If the Insurer employs an alternative renewal notice as authorized by subparagraph (3) of paragraph (A) of this subsection (iii), the Insurer shall provide coverage on the same terms, conditions, and rates as the expiring policy, until the later of the expiration date or sixty (60) days after the mailing of the second notice described in such subparagraph.

(2)    Prior to the expiration date of the policy, in the event that an incomplete or late conditional renewal notice or a late nonrenewal notice is provided by the Insurer, the Policy Period shall be extended, at the same terms and conditions as the expiring policy, except that the annual aggregate limit of the expiring policy shall be increased in proportion to the policy extension, and at the lower of the current rates or the prior period's rates, until sixty (60) days after such notice is mailed, unless the Insured elects to cancel sooner.

(3)    In the event that a late conditional renewal notice or a late nonrenewal notice is provided by the insurer on or after the expiration date of the policy, coverage shall remain in effect on the same terms and conditions of the expiring policy for another required policy period, and at the lower of the current rates or the prior period's rates unless the insured during the additional required policy period has replaced the coverage or elects to cancel, in which event such cancellation shall be on a pro rata premium basis.

(iv)    Nothing herein shall be construed to limit the grounds for which the Insurer may lawfully rescind this policy or decline to pay a claim under this policy.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**END-001**

*2-14051*

69898 (9/06)

Page 3 of 4

## ENDORSEMENT# *1*    (continued)

(v)    Notice required herein to be mailed to the Insured shall be mailed to the Insured at the address shown in Item 1 of the Declarations.

Notice required herein to be mailed by the Insurer shall be sent by registered, certified or other first class mail. Delivery of written notice shall be equivalent to mailing.

Proof of mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period shall terminate at the effective date and hour of cancellation or nonrenewal specified in such notice.

(vi)    If this policy shall be cancelled by the Insured, the Insurer shall retain the customary short rate proportion of the premium hereon.

If this policy shall be cancelled by the Insurer, the Insurer shall retain the pro rata proportion of the premium hereon.

Payment or tender of any unearned premium by the Insurer shall not be a condition of cancellation, but such payment shall be made as soon as practicable.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**2-14051**

69898 (9/06)

**END 001**

Page 4 of 4

ENDORSEMENT# *2*

This endorsement, effective *12:01 am    May 16, 2008*                forms a part of
policy number  *507-47-13*
issued to *Lehman Brothers Holdings Inc.*


by    *Illinois National Insurance Company*

## NEW YORK AMENDATORY ENDORSEMENT – DISCOVERY CLAUSE

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy; and 2) "you", "your", or "Insured", means the Named Corporation, Named Organization, Named Sponsor, Named Insured, First Named Insured, Insured's Representative, Insured or equivalent term stated in Item 1 of the Declarations Page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy. 4) "Discovery Period" or "Extended Reporting Period" means both the Automatic Discovery Period and the Optional Discovery Period described in this endorsement.

In consideration of the premium charged, it is hereby understood and agreed that the policy is hereby amended as follows:

I.

The policy Clause labeled "DISCOVERY PERIOD," or "EXTENDED REPORTING PERIOD," to the extent applicable, is amended as follows:

Solely in regard to this endorsement the following definitions shall apply:

1)   "Termination of Coverage" means: (1) cancellation or non-renewal of this policy by the Insurer or the Insured; or (2) decrease in the limit of liability, reduction of coverage, increased deductible or self-insured retention, new exclusion, or any other change in coverage less favorable to the Insureds.

2)   "Public Entity" means a Public Entity as defined in section 107(a)(51) of the New York Insurance Law.

Upon Termination of Coverage afforded by this policy, and only to the extent coverage is terminated, the Insured shall have the right to an Automatic Discovery Period or an Optional Discovery Period as follows:

1)   AUTOMATIC DISCOVERY PERIOD

There shall be a period of sixty (60) days (ninety (90) days if the Insured is a Public Entity) following the effective date of such Termination of Coverage (herein referred to as the Automatic Discovery Period) in which to give written notice to the Insurer of a Claims first made against the Insureds during said sixty (60) (or ninety (90) day) period for any Wrongful Act occurring prior to such Termination of Coverage and otherwise covered by this policy. The Automatic Discovery Period shall be void ab initio if the Optional Discovery Period becomes effective.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*2-14051*

75030 (7/02)

END 002

### ENDORSEMENT# *2*    (continued)

2)    OPTIONAL DISCOVERY PERIOD

The Insured shall have the right, upon payment of the required additional premium, less any return premium owed because of Termination of Coverage, plus any premium for the Policy Period which is owed and not yet paid, to a period of one year following the effective date of Termination of Coverage (herein referred to as the Optional Discovery Period) in which to give written notice to the Insurer of Claims first made against the Insured during said one year period for any Wrongful Act occurring prior to such Termination of Coverage and otherwise covered by this policy.

The right to an Optional Discovery Period shall terminate, however, unless written notice of such election together with payment of the required additional premium due, less any return premium owed because of cancellation of this policy, plus any premium for the Policy Period which is owed and not yet paid, is received by the Insurer not later than the later of: (1) sixty (60) days after the effective date of Termination of Coverage; or (2) thirty (30) days after the Insurer has mailed or delivered to the Insured a written advice of the amount of the required additional premium, if the Insurer is obligated to give such written advice.

The required additional premium for the one year Optional Discovery Period shall be the lesser of the amount stated in the policy or *150* % of the "Full Annual Premium". Full Annual Premium means the premium level in effect immediately prior to the end of the Policy Period.

Not later than thirty (30) days after the effective date of Termination of Coverage, the Insurer shall mail or deliver to the Insured a written advice of the amount of the required additional premium; however, if this policy is canceled by the Insurer due to non-payment of premium or fraud on the part of any Insureds, the Insurer shall not be required to provide such a premium quotation unless requested by the Insured.

If coverage is terminated by the Insurer because of non-payment of premium or fraud, and at the effective date of such Termination of Coverage the Insurer has provided this insurance to the Company and the Insureds on a claims-made basis without interruption for less than one year, there shall be no right to elect and purchase an Optional Discovery Period. For purposes of this paragraph, Discovery Period coverage shall not be considered as time when the Insurer was providing this coverage.

Any Other Insured(s) shall have the right to purchase the Optional Discovery Period to the extent of Termination of Coverage as respects only himself, if: (i) the Insured has been placed in liquidation or bankruptcy or permanently ceases operations; and (ii) the Insured or designated trustee does not purchase the Optional Discovery Period; and (iii) within one hundred twenty (120) days of the Termination of Coverage the Insurer has received from such Other Insured a written request for such Optional Discovery Period coverage. If such Other Insured does not pay the required additional premium when due, then such Optional Discovery Period shall be void ab initio.

NOTICE:   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**2-14051**

75030 (7/02)

**END 002**

ENDORSEMENT# *2*    (continued)

3)    OTHER PROVISIONS

The additional premium for the Discovery Period or Optional Discovery Period shall be fully earned at the inception of the Discovery Period or Optional Discovery Period. The Discovery Period or Optional Discovery Period is not cancelable except for non-payment of premium. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

## II.

The following provisions are hereby added to the policy:

*    **NOTICE TO AGENT**: Notice given by or on behalf of the Insured, or written notice by or on behalf of the injured party or any other claimant, to any licensed agent of the Insurer in the state of New York, with particulars sufficient to identify the Insured, shall be deemed notice to the Insurer.

*    **INSOLVENCY/BANKRUPTCY OF INSURED**: The insolvency or bankruptcy of the Insured shall not relieve the Insurer of its obligations under this Policy as long as all Policy requirements are met by Insured, its trustee or receiver in bankruptcy. Should a judgement be rendered against an insolvent or bankrupt Insured, the Insurer shall be liable for the amount of such judgement not to exceed the applicable limit of liability under this Policy.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

AUTHORIZED REPRESENTATIVE

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*2-14051*

75030 (7/02)

**END 002**
Page 3 of 3

### ENDORSEMENT# *3*

This endorsement, effective *12:01 am    May 16, 2008*                    forms a part of
policy number   *507-47-13*
issued to *Lehman Brothers Holdings Inc.*

by     *Illinois National Insurance Company*

### NEW YORK CLAIMS–MADE AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy; and 2) "you", "your", or "Insured", means the Named Corporation, Named Organization, Named Sponsor, Named Insured, First Named Insured, Insured's Representative, Insured or equivalent term stated in Item 1 of the Declarations Page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

In consideration of the premium charged, it is hereby understood and agreed that except as otherwise indicated, a Claim will be deemed "first made" for the purposes of this policy when the Insurer receives written notice of the Claim or suit from the Insured, an Other Insured(s) or a third party. A Claim will be also deemed "reported" to the Insurer on the date notice that it is so received. Claims reported to the Insurer alleging the same or related Wrongful Acts shall be considered reported to the Insurer at the time and during the policy period when the first such Claim was reported.

Accordingly, except as indicated below and subject to the policy's other terms and conditions, this policy shall provide coverage for Claims for which notice is first received by the Insurer during the Policy Period (or the Discovery Period, if applicable) even if such Claim was filed against, sent to or delivered to, or received by the Insured or an Other Insured(s) prior to the inception date of this policy. This policy shall not provide coverage for Claims for which notice is first received by the Insurer prior to the inception date of the policy or subsequent to the expiration date of the policy (or the Discovery Period, if applicable.)

Notwithstanding the above, in the event a Claim is filed against, sent or delivered to, or received by the Insured or an Other Insured(s) prior to the inception date of this policy but notice of which is not received by the Insurer until after the inception date of this policy (and prior to the expiration date of the policy or the Discovery Period, if applicable), coverage under this policy shall only apply (subject to the policy's other terms and conditions) only as follows:

(a)    If at the time the Claim was filed against, sent or delivered to, or received by the Insured or an Other Insured(s), there was in existence at that time a valid and collectible management liability policy, providing substantially similar coverage as is provided by this policy, issued to the Insured by the Insurer (or by any other member company of American International Group, Inc.) of which this policy is a renewal (hereinafter referred to as the "Former Policy"), then

(b)    Coverage shall be afforded under this policy in an amount not greater than the amount of coverage which would have been provided for the Claim under the Former Policy if notice of the Claim had been received by the Insurer during the policy period of such Former Policy. The foregoing sentence may result in (but not be limited to): (1) reducing the limit of liability available for such a

*2-14051*

75027 (03/00)

THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAWS AND REGULATIONS.

**END 003**

**ENDORSEMENT#** *3*    (continued)

Claim to the available limit of liability applicable to the Former Policy; (2) increasing the applicable retention amount to that retention amount applicable to the Former Policy; or (3) reducing or eliminating coverage due to exclusions or other restrictions appearing in the Former Policy but eliminated, in part or in whole, in this policy. No coverage shall be afforded under this endorsement if there was not in existence a Former Policy at the time the Claim was filed against, sent or delivered to, or received by the Insured or an Other Insured(s).

Nothing in this endorsement shall be construed to provide coverage for Claims notice of which is not received by the Insurer during the Policy Period of this policy (or the Discovery Period, if applicable). Further, the Insured or the Other Insured(s)s shall, as a condition precedent to the obligations of the Insurer under this endorsement, give written notice to the Insurer as soon as practicable after receiving a Claim or becoming aware that a Claim has been filed against or sent or delivered to the Insured or an Other Insured(s).

Nothing in this endorsement shall be construed to limit the rights of the Insurer under the clause in the policy entitled, DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (or any other clause bearing a similar title and addressing the same issues), as respects the defense and settlement of a Claim.

Nothing in this endorsement shall be construed to provide coverage for a Claim under the Former Policy, nor shall this endorsement ever result in providing coverage under this policy for Loss for which coverage is in fact provided (or would be provided but for the exhaustion of the limit of liability) under the Former Policy.

The Insurer's limit of liability for Claims as described in this endorsement shall be part of and not in addition to the Limit of Liability stated on the Declarations page of this policy for all Claims under this policy and nothing in this endorsement shall be construed to increase the Insurer's limit of liability as therein stated.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

AUTHORIZED REPRESENTATIVE

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAWS AND REGULATIONS.

*2-14051*

75027 (03/00)

END 003

## ENDORSEMENT# 4

This endorsement, effective *12:01 am*    *May 16, 2008*    forms a part of
policy number *507-47-13*
issued to *Lehman Brothers Holdings Inc.*

by    *Illinois National Insurance Company*

### 3/01 EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY AMENDATORY

In consideration of the premium charged, it is hereby understood and agreed that the
policy (and any endorsement amending the policy) is hereby amended as follows:

Clause 3. DEFINITIONS

1.  The definition of **"Employee Benefit Law"** is deleted in its entirety and
    replaced with the following:

    **"Employee Benefit Law"** means:

    (1)  **ERISA** or any similar common or statutory law of the United States,
         Canada or any state or other jurisdiction anywhere in the world to which
         a **Plan** is subject.

    (2)  Solely with respect to paragraph (2) of the definition of **Wrongful Act**,
         **Employee Benefit Law** shall also include Part 164 of the regulations
         under the Health Insurance Portability and Accountability Act of 1996
         (hereinafter **"HIPAA Privacy Regulations"**), unemployment insurance,
         Social Security, government-mandated disability benefits or similar law.

    (3)  In no event shall **Employee Benefit Law**, other than as set forth in
         paragraph (2) of this definition of **Employee Benefit Law**, include any law
         concerning worker's compensation, unemployment insurance, Social
         Security, government-mandated disability benefits or similar law.

2.  The definition of **"ERISA"** is deleted in its entirety and replaced with the
    following:

    **"ERISA"** means the Employee Retirement Income Security Act of 1974
    (including, but not limited to, amendments relating to the Consolidated
    Omnibus Budget Reconciliation Act of 1985, Health Insurance Portability and
    Accountability Act of 1996 as it relates to Sections 102(b) and 104(b)(1) of
    **ERISA**, the Newborns' and Mothers' Health Protection Act of 1996, the Mental
    Health Parity Act of 1996, and the Women's Health and Cancer Rights Act of
    1998), and including any amendment or revision thereto.

3.  The definition of **"ESOP"** is deleted in its entirety and replaced with the
    following:

    **"ESOP"** means any employee stock ownership plan as defined in **ERISA**, or any
    other **Plan** under which investments are made primarily in securities of or
    issued by (i) the **Sponsor Organization**, (ii) the parent of the **Sponsor
    Organization**, (iii) any acquired **Subsidiary**, or (iv) any parent of any acquired
    **Subsidiary**, or whose assets at any time within twelve months prior to the
    inception date of this policy were comprised of 10% or more of securities of
    the **Sponsor Organization**, the parent of the **Sponsor Organization**, any
    acquired **Subsidiary**, or any parent of any acquired **Subsidiary**.

*END 004*

DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAWS AND REGULATIONS.

**ENDORSEMENT# 4**    (continued)

4.    The definition of "**Plan**" is amended by deleting paragraphs (2) and (4) in their entirety and replacing *them* with the following:

(2)    if such **Plan** was sold, spun–off or terminated prior to the inception date of this policy the **Named Sponsor** shall provide written notice of such sale, spin–off or termination to the **Insurer** prior to the inception date of this policy and pay any required premium relating to such **Plan**, unless such sale, spin–off or termination had already been reported to the **Insurer** under a policy issued by the **Insurer** of which this policy is a continuous renewal;

(4)    if such **Plan** is an **ESOP** or stock option plan, the **Named Sponsor** shall provide written notice of such **Plan** to the **Insurer** and such **Plan** is added to the Definition of **Plan** by specific written endorsement attached to this policy; or

5.    The definition of "**Wrongful Act**" is deleted in its entirety and replaced with the following:

(1)    as respects an **Insured**: a violation of any of the responsibilities, obligations or duties imposed upon **Fiduciaries** by **Employee Benefit Law** with respect to a **Plan**; or any matter claimed against an **Insured** solely by reason of his, her or its status as a **Fiduciary**, but only with respect to a **Plan**; and

(2)    as respects an **Administrator**, any act, error or omission solely in the performance of one or more of the following administrative duties or activities, but only with respect to a **Plan**:
    (i)    counseling employees, participants and beneficiaries; or
    (ii)    providing interpretations; or
    (iii)    handling of records; or
    (iv)    activities effecting enrollment, termination or cancellation of employees, participants and beneficiaries under the **Plan**,
or any matter claimed against an **Insured** solely by reason of his, her or its status as an **Administrator**, but only with respect to a **Plan**;

(3)    as respects a **Natural Person Insured**, any matter claimed against him or her arising out of his or her service as a **Fiduciary** or **Administrator** of any multiemployer plan as defined by **ERISA**, but only if such service is at the specific written request or direction of the **Sponsor Organization** and such multiemployer plan is added by specific written endorsement attached to this policy, identified as a multiemployer plan and any required premium is paid. In no event shall coverage under this policy extend to a **Claim** against a multiemployer plan itself, its contributing employer(s) or any other fiduciaries or administrators of such plan, other than a **Natural Person Insured**.

Clause 12. ORGANIZATIONAL CHANGES is amended by deleting paragraph (b) in its entirety and replacing it with the following:

(b)    *Other Organizational Changes*: In all events, coverage as is afforded under this policy with respect to a **Claim** made against any **Sponsor Organization** and/or any **Insured** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time such **Sponsor Organization** became a **Sponsor Organization** and such **Insured** became an **Insured**, and

*END 004*

APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**ENDORSEMENT# *4*** (continued)

prior to the effective time that such **Sponsor Organization** ceases to be a **Sponsor Organization** or such **Insured** ceases to be an **Insured**.

With regard to any **Plan** that was sold, spun-off or terminated either prior to the inception date of this policy or during the **Policy Period,** this policy shall apply but solely with respect to a **Wrongful Act(s)** that occurred prior to the date of such sale or spin-off, or prior to the date that the **Sponsor Organization** or **Natural Person Insured** ceases to be a **Fiduciary** or **Administrator** of, a sold or spun-off **Plan**, or in the case of a terminated **Plan**, prior to the final date of asset distribution of such **Plan**, provided that in the event of a sale, spin-off or termination prior to the inception of this **Policy Period**, notice of such sale, spin-off or termination is provided to the Insurer *prior to the inception of this* **Policy Period** and any required premium is paid, or, in the event of a sale, spin-off termination during the Policy Period, notice of such sale, spin-off or termination is provided to the **Insurer** before the end of the **Policy Period**.

The following clause shall be added to the policy:

**20.   ORDER OF PAYMENTS**

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this policy, then the **Insurer** shall in all events:

(a)     first, pay **Loss** for which coverage is provided under this policy for any **Natural Person Insured** and any covered **Plan** under this policy; and

(b)     then, only after payment of **Loss** has been made pursuant to Clause 20(a) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, shall payment for the **Sponsor Organization** be made for such other **Loss** for which coverage is provided under this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAWS AND REGULATIONS.

**END 004**

Page 3 of 3

**ENDORSEMENT# 5**

This endorsement, effective *12:01 am   May 16, 2008*   forms a part of
policy number *507-47-13*
issued to *Lehman Brothers Holdings Inc.*

by   *Illinois National Insurance Company*

### Panel Counsel – Employee Benefit Plan Fiduciary Liability Amended

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.   Appendix A of the policy entitled "EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY
PANEL COUNSEL LIST" is hereby amended for purposes of this policy to include the
following law firm (the " **Listed Firm** ") in its respective jurisdiction listed below:

*LAW FIRM*                                              *JURISDICTION*

Simpson Thacher & Bartlett, LLP                New York

2.   With respect to the defense of any  Employee Benefit Plan Fiduciary Liability Claims
by the above Listed  Firm, it is agreed  that to the  extent that services are  billed at
rates that exceed the **Maximum Rates**, the excess over such  Maximum Rates shall
not be covered under this policy as Defense Costs or otherwise as Loss.   "
**Maximum Rate**" means:

   **$600.00** per hour for partners;
   **$450.00** per hour for Associates (blended); and
   **$160.00** per hour for paralegals.

3.   It is understood  and agreed  that the hourly  rates charged  by the **Listed  Firms** set
forth in Clause 1 at the inception of a **Claim** shall apply for the life  of such **Claim** as
long as  such **Claim**  is in  any way  covered  under this policy.   Such rates will be
applied to: (i) all  covered **Defense Costs**; and  (ii) **Defense Costs** applied  against an
applicable Retention.

4.   The **Insureds** agree to require the **Listed Firm** to follow the Insurer's Litigation
Guidelines. Copies of the **Litigation Guidelines** will be provided to (i)  any **Insured**
upon request and (ii) a **Listed Firm** once a **Claim** that such firm has been retained to
handle is submitted to the **Insurer**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

**END 5**

2-14051

## ENDORSEMENT# *6*

This endorsement, effective *12:01 am    May 16, 2008*                forms a part of
policy number    *507-47-13*
issued to *Lehman Brothers Holdings Inc.*

by    *Illinois National Insurance Company*

### SUBLIMIT OF LIABILITY FOR VOLUNTARY COMPLIANCE LOSS

In consideration of the premium charged, it is hereby understood and agreed that the
**Sublimit of Liability** for all **Voluntary Compliance Loss** in the aggregate, including
**Defense Expenses,** is *$200,000*                .

This **Sublimit of Liability** shall be part of and not in addition to the **Policy Aggregate
Limit of Liability** set forth in Item 3(a) of the Declarations and in no way shall serve to
increase such **Policy Aggregate Limit of Liability**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

END 006

**2-14051**
78642 (8/01)

ENDORSEMENT # 7

This endorsement, effective *12:01 am    May 16, 2008*    forms a part of policy number *507-47-13*
issued to    *Lehman Brothers Holdings Inc.*

by    *Illinois National Insurance Company*

### AMEND ITEM 4, RETENTION

In consideration of the premium charged herein, it is understood and agreed that the policy is amended as follows:

1.    Item 4 of the Declarations is deleted in its entirety and replaced by the following:

The Retention is not applicable to (i) non- **Indemnifiable Loss** of a **Natural Person Insured**; (ii) judgments and settlements (all Coverages); and (iii) Voluntary Compliance Loss. The Retention is applicable to Defense Costs.

4(a)  **RETENTION: Defense Costs:**                           **$250,000**

4(b)  **RETENTION: Sponsor Organization, Plan,**
         or **Natural Person Insured**
         for **Indemnifiable Loss:**            **$2,500,000**

For all **Loss** in connection with any **Claim** made against any **Insured** that is a derivative or representative class action, arising out of, based upon, attributable to or in any way related to any registered investment company whose investment adviser or sub-adviser is the Sponsor Organization.

4(c)  **RETENTION: Sponsor Organization, Plan,**
         or **Natural Person Insured**
         for **Indemnifiable Loss:**            **$10,000,000**

For all **Loss** in connection with any **Claim** made against any **Insured** that is a derivative or representative class action, arising out of, based upon, attributable to or in any way related to any securities issued by the **Sponsor Organization** or any affiliate thereof;

2.    Clause 7, Retention Clause, is deleted in its entirety and replaced with the following:

### 7. RETENTION CLAUSE

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the Retention amount stated in Item 4(a), 4(b), or 4(c) of the Declarations, such Retention amount to be borne by the Insured and shall remain uninsured, with regard to all Defense Costs under Item 4(a) and with regard to all Loss under Items 4(b) Item 4(c); except no retention shall apply as respects (i) a non-Indemnifiable Loss of a Natural Person Insured and (ii) a Voluntary Compliance Loss.

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

2-14051

END 7

This endorsement, effective  *12:01 am      May 16, 2008*                forms a part of
policy number  *507-47-13*
issued to    *Lehman Brothers Holdings Inc.*

by      *Illinois National Insurance Company*


      A single Retention  amount shall  apply to Loss  arising from  all Claims  alleging
the same Wrongful Act or related Wrongful Acts.

      It is understood and agreed that if different retentions apply to different parts of
any Loss, the  applicable Retentions  will be applied  separately to  each part of
such Loss, and  the sum of  such Retention(s) will not exceed the  largest
applicable Retention(s) set forth in Item 4 of the Declarations.

3.     It is understood and agreed that this endorsement shall only apply as a limitation  on
coverage otherwise provided by this policy and shall not in any way be construed as
an intent to expand coverage under this policy.


All other terms, conditions and exclusions remain unchanged.

NOTICE:    THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

2-14051

END 7

This endorsement, effective  *12:01 am    May 16, 2008*    forms a part of
policy number  *507-47-13*
issued to  *Lehman Brothers Holdings Inc.*

by  *Illinois National Insurance Company*

## AMEND DEFENSE AGREEMENT CLAUSE

In consideration of the premium charged, it is hereby understood and agreed that Clause  **2.
DEFENSE AGREEMENT**, (c) **GENERAL PROVISIONS** (applicable to both (a) and (b) above) ,
is hereby deleted in its entirety and replaced with the following:

(c)    **GENERAL PROVISIONS (applicable to both (a) and (b) above)**

The Insurer shall  advance Defense  Costs prior  to the  final disposition  of a
Claim,  subject  to  the  other  provisions  of this policy.    Such  advance
payments by  the Insurer  shall be repaid to the Insurer by the Insureds,
severally according  to  their  respective interests,  in the  event and  to  the
extent that the Insureds shall not be  entitled under the terms and conditions
of this policy to payment of such Loss.

The Insureds  shall  not  admit  or assume any  liability,  enter  into any
settlement agreement, stipulate to any judgment, or incur any Defense Costs
without  the  prior  written consent  of  the Insurer.  Only those settlements,
stipulated judgments and  Defense Costs which have been  consented to by
the Insurer shall be  recoverable as Loss  under the terms of  this policy. The
Insurer's consent  shall  not  be  unreasonably withheld,  provided that the
Insurer  shall  be  entitled  to  effectively  associate  in the  defense,  the
prosecution and  the negotiation of any settlement of any Claim  that involves
or appears reasonably likely to involve the Insurer.

The **Insureds** shall give  the **Insurer** full  cooperation and such  information as
the **Insurer** may reasonably require.  The **Insurer** may make any settlement of
any **Claim** it  deems expedient with  respect to any  **Insured**, subject to such
**Insured's** written consent.    If any  **Insured**  withholds consent to such
settlement, the **Insurer's** liability  for all **Loss** on  account of such **Claim**  shall
not exceed: (1)  the amount  for which the  **Insurer**  could have  settled such
**Claim** plus **Defense Costs** incurred as of the  date such settlement was
proposed in  writing by the  **Insurer** (herein, the  " **Settlement Opportunity
Amount**"), plus (2) 70% of covered  **Loss**  in excess of such  **Settlement
Opportunity Amount**, it being a condition of this insurance that the remaining
30% of such **Loss**  excess of  the **Settlement Opportunity Amount**  shall be
carried by the **Insureds** at their own risk and be uninsured.

NOTICE:    THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

**END 8**

This endorsement, effective  *12:01 am*      *May 16, 2008*                forms a part of
policy number  *507-47-13*
issued to   *Lehman Brothers Holdings Inc.*

by      *Illinois National Insurance Company*

 

 

    Selection of counsel to defend the  Claim made against the Insureds shall  be
governed by Clause 9 of the policy (if applicable).

 

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE:   THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

**END 8**

2-14051

### ENDORSEMENT# *9*

This endorsement, effective *12:01 am    May 16, 2008*                    forms a part of
policy number    *507-47-13*
issued to *Lehman Brothers Holdings Inc.*

by    *Illinois National Insurance Company*

### PUNITIVE, EXEMPLARY OR MULTIPLE DAMAGES
### LAW MOST FAVORABLE

In consideration of the premium charged, it is hereby understood and agreed that the
second paragraph of the Definition of "**Loss**" is deleted in its entirety and replaced with
the following:

> **Loss** shall include punitive, exemplary or multiple damages imposed upon any
> **Insured** (subject to the policy's other terms, conditions and exclusions, including but
> not limited to exclusions relating to profit, deliberate fraud or criminal acts and
> knowing or willful violation of any statute, rule or law, including but not limited to
> **Employee Benefit Law**).

> It is further understood and agreed that the enforceability of this endorsement shall
> be governed by such applicable law which most favors coverage for punitive
> damages.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

2-14051

END 009
of 1

ENDORSEMENT # 10

This endorsement, effective *12:01 am   May 16, 2008*          forms a part of
policy number   *507-47-13*
issued to   *Lehman Brothers Holdings Inc.*

by   *Illinois National Insurance Company*

## AMEND DEFINITION OF PLAN: ADDITIONAL LISTED PLANS

In consideration of the premium charged, it is hereby understood and agreed that the
Definition of "**Plan**" shall also include the following listed **Plan(s)**, subject to the
corresponding Continuity Date:

| PLAN(S) | CONTINUITY DATE |
| --- | --- |
| Lehman Brothers Savings Plan | March 31, 1994 |
| Lehman Brothers Holdings Inc. 1994 Employee Stock Purchase Plan | March 31, 1994 |
| Lehman Brothers Holdings Inc. Employee Incentive Plan | March 31, 1994 |
| Lehman Brothers Holdings Inc. Management Ownership (1994 and 1996) | March 31, 1994 |
| Lehman Brothers Holdings Inc. 2005 Stock Incentive Plan | March 31, 1994 |
| Lehman Brothers Holdings Inc. 1994 Management Replacement Plan | March 31, 1994 |
| Neuberger Berman Inc. Long Term Incentive Plan | October 31, 2003 |
| 1999 Neuberger Berman Inc. Directors Stock Incentive Plan | October 31, 2003 |
| Capital Crossing Bank 401(k) Plan | February 15, 2007 |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE:   THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

2-14051

END 10

This endorsement, effective *12:01 am    May 16, 2008*    forms a part of
policy number  *507-47-13*
issued to  *Lehman Brothers Holdings Inc.*

by   *Illinois National Insurance Company*

**AMEND DEFINITION OF PLAN: AUTOMATIC PLAN COVERAGE**

In consideration of the premium charged, it is understood and  agreed that paragraph (5) of the Definition of Plan is amended such that the term "25%" is deleted wherever it appears and is replaced by the term "15%."

All other terms and conditions remain the same.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

*END 11*

*2-14051*

ENDORSEMENT # 12

This endorsement, effective *12:01 am    May 16, 2008*    forms a part of
policy number  *507-47-13*
issued to  *Lehman Brothers Holdings Inc.*

by    *Illinois National Insurance Company*

### AMEND DEFINITION OF PLAN: PREVIOUSLY SCHEDULED PLANS

In consideration of the premium  charged, it is understood  and agreed that new  paragraph
(6) is added to the definition of Plan:

(6)    if the **Named Sponsor** has provided written  notice of an  **ESOP** or stock
option plan and the **Insurer** has added the **Plan** by endorsement to a policy of
which this policy is a continuous renewal,  whether or not such **Plan** is listed
on an endorsement attached to this policy;

All other terms and conditions remain the same.

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

END 12

AUTHORIZED REPRESENTATIVE

ENDORSEMENT# 13

This endorsement, effective *12:01 am    May 16, 2008*                forms a part of
policy number  *507-47-13*
issued to   *Lehman Brothers Holdings Inc.*

by    *Illinois National Insurance Company*

## AMEND DEFINITION OF PLAN: ACTS PRIOR TO ACQUISITION

In consideration of the premium charged, it is  understood and agreed that as respects  any
**Plan**, such coverage as is afforded  by this policy shall apply to the  plans of acquired
**Subsidiaries** even for  acts committed  prior to  the time such  **Subsidiaries** became
**Subsidiaries** of the **Named Sponsor**, provided that such  **Subsidiaries** were acquired  before
the inception date of  this policy and reported  to the **Insurer**  prior to the inception  date of
this policy.


All other terms and conditions remain the same.

NOTICE:   THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT.   HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

2-14051

AUTHORIZED REPRESENTATIVE

**END 13**

ENDORSEMENT # 14

This endorsement, effective *12:01 am    May 16, 2008*    forms a part of
policy number    *507-47-13*
issued to    *Lehman Brothers Holdings Inc.*

by    *Illinois National Insurance Company*

### AMEND DEFINITION OF NATURAL PERSON: MR. CHARLES WOOD

In consideration of the premium charged, it is understood and agreed that the term Natural Person Insured shall also mean Mr. Charles Wood.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

2-14051

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

END 14

AUTHORIZED REPRESENTATIVE

ENDORSEMENT# 15

This endorsement, effective *12:01 am    May 16, 2008*    forms a part of
policy number  *507-47-13*
issued to    *Lehman Brothers Holdings Inc.*

by    *Illinois National Insurance Company*

### AMEND CLAUSE 3, HIPAA EXTENSION

In consideration of the premium charged, it is hereby understood and agreed that Clause 3, DEFINITIONS, " **Loss**" is amended by adding the following to the end thereof:

> " **Loss** shall also mean the failure to comply with the privacy provisions of the Health Insurance Portability and Accountability Act of 1996 and any rules or regulations promulgated thereunder (" **HIPAA**").

Solely for the purpose of this endorsement, " **Loss**" shall also include civil money penalties imposed upon an **Insured** for violation of the privacy provisions of **HIPAA** (" **HIPAA Penalties**"). The maximum limit of the **Insurer's** liability for all **HIPAA** Penalties in the aggregate shall be $75,000 (" **HIPAA Sublimit of Liability**"). The **HIPAA Sublimit of Liability** shall be part of and not in addition to the Policy Aggregate Limit of Liability set forth in Item 3(a) of the Declarations and shall in no way serve to increase such Policy Aggregate Limit of Liability.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

END 15

2-14051

## ENDORSEMENT# *16*

This endorsement, effective *12:01 am    May 16, 2008*                    forms a part of
policy number    *507-47-13*
issued to *Lehman Brothers Holdings Inc.*

by      *Illinois National Insurance Company*

### FINAL ADJUDICATION WORDING

In consideration of the premium charged, it is hereby understood and agreed that in
Clause 5. **EXCLUSIONS**, paragraphs (a) and (b) are deleted in their entirety and replaced
with the following:

  (a)    arising out of, based upon or attributable to the gaining of any profit or
         advantage if any final adjudication establishes the **Insured(s)** was not legally
         entitled to such profit or advantage;

  (b)    arising out of, based upon or attributable to the committing of any criminal or
         deliberate fraudulent act, or knowing or willful violation of any statute, rule or
         law, including, but not limited to **Employee Benefit Law** if any final
         adjudication establishes such criminal or deliberate fraudulent act, or knowing
         or willful violation of any statute, rule or law, including but not limited to
         **Employee Benefit Law**;

[The **Wrongful Act** of any **Insured** shall not be imputed to any other **Insured** for the
purpose of determining the applicability of the foregoing exclusions 5(a) and 5(b). ]

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, THE FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

©American International Group, Inc. All rights reserved

**2-14051**
94543 (5/07)

**END 016**
Page 1 of 1

This endorsement, effective  *12:01 am    May 16, 2008*                  forms a part of
policy number  *507-47-13*
issued to  *Lehman Brothers Holdings Inc.*

by      *Illinois National Insurance Company*

## AMEND EXCLUSION D

In consideration of the premium charged, it is hereby understood and agreed that in Clause
**5. EXCLUSIONS**, paragraph (d)  are hereby deleted  in their entirety  and replaced with  the
following:

> (d)    alleging, arising out of, based upon  or attributable to the facts alleged,  or to
> the same or  related **Wrongful Act** alleged or contained,  in any  claim which
> has been reported, or in any  circumstances of which notice has  been given,
> under any policy of which this policy is a renewal or replacement;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

2-14051

END 17

ENDORSEMENT # 18

This endorsement, effective *12:01 am    May 16, 2008*                forms a part of
policy number   *507-47-13*
issued to   *Lehman Brothers Holdings Inc.*

by     *Illinois National Insurance Company*

### AMEND CLAUSE 7, RETENTION CLAUSE

In consideration of the premium charged, it is understood and agreed that solely as
respects Loss arising from a Claim made against Townsend Analytics, Ltd., Clause 7,
Retention Clause, is amended such that the Retention Amount may be satisfied by the
proceeds of insurance policy 103901275 (which is issued by St. Paul Travelers).

All other terms, conditions and exclusions remain unchanged.

2-14051

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

**END 18**

ENDORSEMENT# 19

This endorsement, effective  *12:01 am    May 16, 2008*                forms a part of
policy number  *507-47-13*
issued to  *Lehman Brothers Holdings Inc.*

by    *Illinois National Insurance Company*

### NON-INDEMNIFIABLE LOSS COVERAGE: NON RESCINDABLE

In consideration of the premium charged, it is understood and agreed that solely with respect to any non- **Indemnifiable Loss** of any **Natural Person Insured**, under no circumstances shall the coverage provided by this Policy be deemed void, whether by rescission or otherwise, but such coverage will be subject to all other terms, conditions and exclusions of the Policy.

As used here, "Non-Indemnifiable Loss" means any Loss for which the Sponsor Organization or Plan has neither indemnified nor is permitted or required to indemnify any Natural Person Insured pursuant to law or contract or the charter, by-laws, operating agreement or similar documents of the Sponsor Organization or Plan.

All other terms, conditions and exclusions remain unchanged.

2-14051

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

END 19

This endorsement, effective *12:01 am    May 16, 2008*    forms a part of
policy number    *507-47-13*
issued to    *Lehman Brothers Holdings Inc.*

by    *Illinois National Insurance Company*

### STATE AMENDATORY INCONSISTENT

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.    In the event that there is an inconsistency between any: (a) state amendatory attached to this policy, or any other wording attached to this policy to comply with applicable law; and (b) any other term, condition or limitation of this policy; then, to the extent permitted by law, subject to the limitations below, the Insurer will resolve the inconsistency by applying the terms, conditions or limitations that are more favorable to the policyholder.

2.    This endorsement shall not apply to the extent that: (a) any state amendatory or other wording expressly limits coverage in order to comply with applicable law, or (b) any such amendatory or other compliance wording amends language applicable to premium. In such events, the state amendatory or other compliance wording will govern over any other term, condition or limitation of the policy.

3.    "Policyholder" means the first Named Entity, Named Organization, Named Corporation, Named Sponsor, Named Insured or other policyholder designated in Item 1 of the Declarations of this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

2-14051

**END 20**

This endorsement, effective *12:01 am    May 16, 2008*    forms a part of
policy number  *507-47-13*
issued to  *Lehman Brothers Holdings Inc.*

by   *Illinois National Insurance Company*

### ADVANCEMENT OF DEFENSE COSTS ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1.    Clause **7. RETENTION CLAUSE** is amended to include the following paragraph at the end of such Clause:

> It is further understood and agreed that in the event a **Sponsor Organization** refuses to pay an applicable Retention due to **Financial Insolvency**, then the **Insurer** shall commence advancing **Defense Costs** within the Retention and pursuant to the other terms, conditions and exclusions of this policy, provided that the **Insurer** shall be entitled to recover the amount of **Defense Costs** advanced within the Retention from the **Sponsor Organization** pursuant to Clause 13. **SUBROGATION AND WAIVER OF RECOURSE, as amended herein**.

2.    Clause **13. SUBROGATION AND WAIVER OF RECOURSE** is amended to include the following paragraphs at the end of such Clause:

> In the event that the **Insurer** shall for any reason pay **Indemnifiable Loss** on behalf of an **Natural Person Insured**, the **Insurer** shall have the contractual right hereunder to recover from the **Sponsor Organization** the amount of such **Loss** equal to the amount of the Retention not satisfied by the **Sponsor Organization** and shall be subrogated to the rights of the **Natural Person Insured** hereunder.

> The **Insurer** shall have a direct contractual right under the policy to recover **Loss** paid under the policy from each and every **Insured**, severally and according to their respective interests, in the event and to the extent that such I nsureds shall not be entitled under this policy to payment of such **Loss**.

3.    Solely for purposes of the coverage provided by this endorsement, the following definition shall apply:

> " **Financial Insolvency**" means the: (i) appointment by any state or federal official, agency or court of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or

NOTICE:  THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.
END 21

**ENDORSEMENT# 21 (Continued)**

This endorsement, effective *12:01 am*   *May 16, 2008*   forms a part of
policy number  *507-47-13*
issued to  *Lehman Brothers Holdings Inc.*

by  *Illinois National Insurance Company*

liquidate a **Sponsor Organization**; or (ii) the **Sponsor Organization** becoming a
debtor-in-possession pursuant to  the United  States bankruptcy law,  and as
to both (i) or (ii), the equivalent status outside the United States of America.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

2-14051

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

**END 21**

**ENDORSEMENT# 22**

This endorsement, effective *12:01 am    May 16, 2008*    forms a part of
policy number *507-47-13*
issued to *Lehman Brothers Holdings Inc.*

by    *Illinois National Insurance Company*

### DISCOVERY PERIOD FOR RETIRED TRUSTEES

In consideration of the premium charged, it is hereby understood and agreed that in the event this policy is neither renewed nor replaced with similar coverage, Retired Trustees shall hereby automatically be entitled to a discovery period of twelve (12) years at no additional premium.

Solely for the purposes of the coverage provided by this endorsement "Retired Trustee" means a Natural Person Insured who, at the time of retirement is domiciled in the United Kingdom and who, before expiration of the Policy Period, retires as a trustee of a Plan, unless such person is disqualified by the Pensions Regulator or any successor body and otherwise would be entitled to cover as a trustee under this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE:    THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

**END 22**

AUTHORIZED REPRESENTATIVE

2-14051

This endorsement, effective *12:01 am    May 16, 2008*          forms a part of
policy number  *507-47-13*
issued to  *Lehman Brothers Holdings Inc.*

by  *Illinois National Insurance Company*

## AMEND CLAUSE 10, DISCOVERY CLAUSE

In consideration of the premium charged, it is hereby understood and agreed that the policy (and any endorsement amending Clause 10. DISCOVERY CLAUSE) is hereby amended to the extent necessary for the policy to provide the following:

1.    Clause 10. DISCOVERY CLAUSE, is deleted in its entirety and replaced with the following:

### 10.    DISCOVERY CLAUSE

Except as indicated below, if the **Named Sponsor** shall cancel or the **Named Sponsor** or the **Insurer** shall refuse to renew this policy, the **Named Sponsor** shall have the right to a period of one, two or three years following the effective date of such nonrenewal ("**Discovery Period**"), upon payment of the respective "**Additional Premium Amount**" described below, in which to give to the **Insurer** written notice pursuant to Clauses 8(a) and 8(c) of the policy of: (i) **Claims** first made against an **Insured**; and (ii) circumstances of which the **Natural Person Insured** or an **Insured** shall become aware, in either case during said **Discovery Period** and solely with respect to a **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

The **Additional Premium Amount** for: (1) one year shall be 100% of the **Full Annual Premium;** (2) two years shall be 175% of the **Full Annual Premium;** and (3) three years shall be 225% of the **Full Annual Premium.** As used herein, " **Full Annual Premium**" means the premium level in effect immediately prior to the end of the policy period.

In the event of a **Transaction**, as defined in Clause 12(a), the **Named Sponsor** shall have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable and the additional premium charged shall be fully earned at inception.

NOTICE:   THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

END 23

This endorsement, effective *12:01 am     May 16, 2008*                forms a part of
policy number    *507-47-13*
issued to    *Lehman Brothers Holdings Inc.*

by    *Illinois National Insurance Company*


The rights contained in this Clause 10 shall terminate unless written notice of
election of a **Discovery Period**, together with any additional premium due, is
received by the **Insurer** no later than thirty (30) days subsequent to the effective
date of the nonrenewal or **Transaction.**


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

2-14051

AUTHORIZED REPRESENTATIVE

*END 23*

## ENDORSEMENT# 24

This endorsement, effective *12:01 am    May 16, 2008*                forms a part of
policy number    *507-47-13*
issued to *Lehman Brothers Holdings Inc.*

by    *Illinois National Insurance Company*

### SUBROGATION PROVISION AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the first
paragraph of Clause 13. **SUBROGATION** is deleted in its entirety and replaced with the
following:

### 13.    SUBROGATION

In the event of any payment under this policy, the **Insurer** shall be subrogated
to the extent of such payment to all the **Insureds'** rights of recovery thereof,
and the **Insureds** shall execute all papers required and shall do everything that
may be necessary to secure such rights, including the execution of such
documents necessary to enable the **Insurer** effectively to bring suit in the
name of the **Insureds**. In no event shall the **Insurer** exercise its rights of
subrogation against an **Insured** under this policy unless such **Insured** has
been convicted of a criminal act, or if any final adjudication establishes that
the **Insured** committed a deliberate fraudulent act or knowingly or willingly
violated any statute, rule or law (including but not limited to **Employee
Benefit Law**), or if any final adjudication establishes that the **Insured** obtained
any profit or advantage to which such **Insured** was not legally entitled.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

©American International Group, Inc.  All rights reserved
**END 024**

**2-14051**

97311 (2/08)

**ENDORSEMENT# 25**

This endorsement, effective *12:01 am    May 16, 2008*                forms a part of
policy number   *507-47-13*
issued to *Lehman Brothers Holdings Inc.*

by     *Illinois National Insurance Company*

**INVESTMENT LOSS COVERAGE ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that, subject
to all other terms, conditions and limitations of the Policy, Clause 3. DEFINITIONS is
amended by deleting the first paragraph of the definition of "**Loss**" in its entirety and
replacing it with the following:

"**Loss**" means damages, judgments (including pre/post–judgment interest on a
covered judgment), settlements and Defense Costs; however, **Loss** shall not include:
(1) civil or criminal fines or penalties imposed by law, except (i) to the extent set
forth in item 3(c) of the Declarations page for **Voluntary Compliance Loss**, (ii) **UK
Fines and Penalties**, (iii) the five per cent or less civil penalty imposed upon an
**Insured** under Section 502(i) of **ERISA**, and (iv) the 20 per cent or less penalty
imposed upon an **Insured** under Section 502(l) of **ERISA**, with respect to covered
settlements or judgments; (2) the multiplied portion of multiplied damages; (3) taxes
or tax penalties; (4) any amount for which an Insured is not financially liable or
which is without legal recourse to an the Insured; (5) **Benefits**, or that portion of
any settlement or award in an amount equal to such **Benefits**, unless and to the
extent that recovery of such **Benefits** is based upon a covered **Wrongful Act** and is
payable as a personal obligation of a **Natural Person Insured**; provided however,
that **Loss** shall include a monetary award in, or fund for settling, a **Claim** against
any **Insured** to the extent it alleges a loss to a **Plan** and/or loss in the actual
accounts of participants in a **Plan** by reason of a change in value of the investments
held by that **Plan**, including, but not limited to, the securities of the **Sponsor
Organization**, regardless of whether the amounts sought in such **Claim** have been
characterized by plaintiffs as "benefits" or held by a court to be "benefits"; or (6)
matters which may be deemed uninsurable under the law pursuant to which this
policy shall be construed.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.
©American International Group, Inc. All rights reserved

**2-14051**

95311 (8/07)

**END 025**
Page 1 of 1

ENDORSEMENT# *26*

This endorsement, effective *12:01 am    May 16, 2008*                    forms a part of
policy number    *507-47-13*
issued to *Lehman Brothers Holdings Inc.*

by    *Illinois National Insurance Company*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COVERAGE TERRITORY ENDORSEMENT**

Payment of loss under this policy shall only be made in full compliance with all United
States of America economic or trade sanction laws or regulations, including, but not
limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury
Department's Office of Foreign Assets Control ("OFAC").

AUTHORIZED REPRESENTATIVE

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAWS AND REGULATIONS.

END 026

**2-14051**

89644 (7/05)                    Page 1 of 1

## ENDORSEMENT# 27

This endorsement, effective *12:01 am   May 16, 2008*                    forms a part of
policy number   *507-47-13*
issued to *Lehman Brothers Holdings Inc.*


by   *Illinois National Insurance Company*

### FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 77893 | 03/01 | PTLO301 DEC |
| 81285 | 01/03 | TRIA DEC DISCLOSURE FORM |
| 75029 | 07/02 | NEW YORK REG. 121 DEC. DISCLOSURE |
| 77892 | 03/01 | PTLO301 GUTS |
|  | 04/08 | EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY PANEL COUNSEL |
| 69898 | 09/06 | NEW YORK AMENDATORY - CANCELLATION/NONRENEWAL |
| 75030 | 07/02 | NEW YORK DISCOVERY ENDORSEMENT |
| 75027 | 03/00 | NEW YORK CLAIMS MADE AMENDATORY |
|  |  | 3/01 EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY AMENDATORY |
| MNSCPT |  | Panel Counsel - Employee Benefit Plan Fiduciary Liability Amended |
| 78642 | 08/01 | SUBLIMIT OF LIABILITY FOR VOLUNTARY COMPLIANCE LOSS |
| MNSCPT |  | AMEND ITEM 4, RETENTION |
| MNSCPT |  | AMEND DEFENSE AGREEMENT CLAUSE |
|  |  | PUNITIVE, EXEMPLARY OR MULTIPLE DAMAGES - LAW MOST FAVORABLE |
| MNSCPT |  | AMEND DEFINITION OF PLAN: ADDITIONAL LISTED PLANS |
| MNSCPT |  | AMEND DEFINITION OF PLAN: AUTOMATIC PLAN COVERAGE |
| MNSCPT |  | AMEND DEFINITION OF PLAN: PREVIOUSLY SCHEDULED PLANS |
| MNSCPT |  | AMEND DEFINITION OF PLAN: ACTS PRIOR TO ACQUISITION |
| MNSCPT |  | AMEND DEFINITION OF NATURAL PERSON: MR. CHARLES WOOD |
| MNSCPT |  | AMEND CLAUSE 3, HIPAA EXTENSION |
| 94543 | 05/07 | FINAL ADJUDICATION WORDING |
| MNSCPT |  | AMEND EXCLUSION D |
| MNSCPT |  | AMEND CLAUSE 7, RETENTION CLAUSE |

NOTICE: THESE FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

**2-14051**

**END 027**

78859 (10/01)

**ENDORSEMENT# 27**

This endorsement, effective *12:01 am    May 16, 2008*                    forms a part of
policy number    *507-47-13*
issued to *Lehman Brothers Holdings Inc.*

by    *Illinois National Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | NON-INDEMNIFIABLE LOSS COVERAGE: NON RESCINDABLE |
| MNSCPT | | STATE AMENDATORY INCONSISTENT |
| MNSCPT | | ADVANCEMENT OF DEFENSE COSTS ENDORSEMENT |
| MNSCPT | | DISCOVERY PERIOD FOR RETIRED TRUSTEES |
| MNSCPT | | AMEND CLAUSE 10, DISCOVERY CLAUSE |
| 97311 | 02/08 | SUBROGATION PROVISION AMENDATORY ENDORSEMENT |
| 95311 | 08/07 | INVESTMENT LOSS COVERAGE ENDORSEMENT |
| 89644 | 07/05 | COVERAGE TERRITORY ENDORSEMENT (OFAC) |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |
| 75031 | 07/02 | NEW YORK REG. 121 APPLICATION DISCLOSURE |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

**2-14051**

78859 (10/01)

END 027

Page 2 of 2

## NEW YORK REGULATION 121
## APPLICATION DISCLOSURE SUPPLEMENT

Solely for the purposes of this supplement, "Claims-made relationship" means that period of time between the effective date of the first claims made policy between us (the Insured) and you (the policy holder) and the cancellation or nonrenewal of the last consecutive claims-made policy between such parties, where there has been no gap in coverage, but does not include any period covered by tail coverage.

### Retroactive Date/Prior Acts Exclusion Date/"Nose" Coverage

Coverage for events that occurred prior to the beginning of the policy period is referred to in this supplement as "nose" coverage. If the policy has a retroactive date feature or an exclusion or other wording deleting coverage for events that occurred before a certain date (a prior acts exclusion), then nose coverage is limited (or non existent) and **THERE WILL BE NO COVERAGE FOR CLAIMS ARISING OUT OF SUCH EVENTS THAT OCCURRED PRIOR TO THAT DATE.**

### Extended Reporting Period/Discovery Period/"Tail" Coverage

The Extended Reporting Period, or Discovery Period as it may be called, will increase the time within which a claim may be eligible for the policy's coverage. This is referred to in this supplement as "tail" coverage. Tail coverage helps to prevent the situation of a claim going uncovered because of cancellation or nonrenewal of the policy or other termination of coverage. Tail coverage provides for a period of time after termination of coverage during which claims first made against you and reported to us in writing, events that occurred before the termination of coverage and otherwise covered by the policy, will be covered. Generally, this optional tail coverage can be purchased if coverage is terminated either by us or by you. If such optional tail coverage is not purchased, an automatic tail coverage goes into effect upon termination of coverage, however, this automatic tail coverage lasts for only 60 days, (90 days if the policyholder is a public entity as defined in section 107(a)(51) of the New York Insurance Law). After the expiration of the tail coverage, you will have a gap in your insurance coverage, unless you have obtained appropriate coverage to fill the gap. **UPON TERMINATION OF COVERAGE IT IS VERY IMPORTANT THAT YOU CONSULT WITH YOUR INSURANCE AGENT, BROKER OR OTHER PROFESSIONAL INSURANCE ADVISER.**

The length of the optional tail offered in the policy is one (1) year generally, but, this option will not be available in some circumstances. It will not be available if coverage is terminated by us because of non-payment of premium or fraud and at the effective date of such termination of coverage a claims-made relationship has continued for less than one year.

### Future Premium Increases As Claims-Made Relationship Matures

During the first several years of being covered on a claims-made basis, claims-made rates are generally comparatively lower than rates on other types of policies generally known as occurrence policies, especially if there is no nose coverage initially, and you can expect substantial annual premium increases, independent of overall rate level increases, until the claims-made relationship reaches maturity.

### Length of Optional Tail and Premium Charged For it

The length of the optional tail offered in this policy and the premium charged for it is as follows (please see the policy form and endorsements for complete details):

APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAWS AND REGULATIONS.

*2-14051*

75031 (7/02)

| Length Of Optional Tail | Premium Charge For Optional Tail |
|---|---|
| One Year | *150* % |

**THIS DISCLOSURE SUPPLEMENT GENERALLY DISCUSSES CERTAIN IMPORTANT FEATURES OF THE POLICY. PLEASE READ THE ENTIRE POLICY CAREFULLY AND DISCUSS IT WITH YOUR INSURANCE AGENT OR BROKER OR OTHER PROFESSIONAL INSURANCE ADVISER. THE PROVISIONS OF THE POLICY FORM AND ENDORSEMENTS THERETO ARE CONTROLLING.**

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*2-14051*

75031 (7/02)