**Hearing Date and Time: March 25, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  March 12, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                            :
In re                                       :    Chapter 11 Case No.
                                            :
LEHMAN BROTHERS HOLDINGS INC., et al.,      :    08-13555 (JMP)
                                            :
                        Debtors.            :    (Jointly Administered)
                                            :
                                            :
------------------------------------------------------------------x
```

## NOTICE OF DEBTORS' MOTION FOR
## ENTRY OF AN ORDER PURSUANT TO SECTIONS 105 AND
## 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF
## BANKRUPTCY PROCEDURE 9019 AUTHORIZING LEHMAN COMMERCIAL
## PAPER INC. TO SETTLE DISPUTE WITH THE METROPOLITAN LIFE INSURANCE
## COMPANY

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman

Brothers Holdings Inc., Lehman Commercial Paper Inc. ("LCPI") and their affiliated debtors in

the above-referenced chapter 11 cases (together, the "Debtors") for entry of an order, pursuant to

sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule

9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving LCPI's

settlement of certain disputes with The Metropolitan Life Insurance Company ("MetLife"), as

more fully described in the Motion, will be held before the Honorable James M. Peck, United

States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs

House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy

Court"), on **March 25, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn:  Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United

States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street,

21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg,

Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis; Esq., (iv) Milbank,

Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:

Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official

committee of unsecured creditors appointed in these cases; (v) Bingham McCutchen LLP, 399

Park Avenue, New York, New York 10022, Attn:  Steven Wilamowsky, Esq., attorneys for

MetLife; and (vi) any person or entity with a particularized interest in the Motion, so as to be so

filed and received by no later than **March 12, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the

"Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: March 2, 2009
　　　New York, New York

　　　　　　　　　　　　　/s/ Jacqueline Marcus
　　　　　　　　　　　　　Jacqueline Marcus

　　　　　　　　　　　　　WEIL, GOTSHAL & MANGES LLP
　　　　　　　　　　　　　767 Fifth Avenue
　　　　　　　　　　　　　New York, New York 10153
　　　　　　　　　　　　　Telephone: (212) 310-8000
　　　　　　　　　　　　　Facsimile: (212) 310-8007

　　　　　　　　　　　　　Attorneys for Debtors
　　　　　　　　　　　　　and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                              :
**In re**                                     :     **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :     **08-13555 (JMP)**
                                              :
                              **Debtors.**    :     **(Jointly Administered)**
                                              :
                                              :
----------------------------------------------------------------x

## DEBTORS' MOTION FOR ENTRY
## OF AN ORDER PURSUANT TO SECTIONS 105 AND
## 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF
## BANKRUPTCY PROCEDURE 9019 AUTHORIZING LEHMAN COMMERCIAL
## PAPER INC. TO SETTLE DISPUTE WITH THE METROPOLITAN LIFE
## INSURANCE COMPANY

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI"), Lehman Commercial Paper,

Inc. ("LCPI"), and their affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (together, the "Debtors" and, collectively with their

non-debtor affiliates, "Lehman"), file this Motion and respectfully represent:

## **Background**

1.        Commencing on September 15, 2008 and periodically thereafter (as applicable, the "<u>Commencement Date</u>"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.        On September 17, 2008, the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "<u>Creditors' Committee</u>").

3.        On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("<u>SIPA</u>") with respect to Lehman Brothers Inc. ("<u>LBI</u>").  A trustee appointed under SIPA is administering LBI's estate.

4.        On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "<u>Examiner</u>") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

**Jurisdiction**

5.      This Court has subject matter jurisdiction to consider and

determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to

28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409.

**Lehman's Business**

6.      Prior to the events leading up to these chapter 11 cases, Lehman

was the fourth largest investment bank in the United States.  For more than 150 years,

Lehman had been a leader in the global financial markets by serving the financial needs

of corporations, governmental units, institutional clients and individuals worldwide.

7.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases

is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local

Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions

and Applications, filed on September 15, 2008 [Docket No. 2].

**Relief Requested**

8.      By this Motion, the Debtors seek entry of an order, pursuant to

sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, authorizing

LCPI to settle its disputes with The Metropolitan Life Insurance Company and its

subsidiaries and affiliates (collectively, "MetLife") by amending the Transaction

Documents (as defined below) relating to two securitization trusts, from which MetLife

purchased notes that are secured by collateral including loans or participations in loans

sold to such trusts by LCPI and other parties.

## LCPI's Relationship with MetLife and the Trusts

A.  The VFT 2007 Trust

9.      Variable Funding Trust 2007-1, a Delaware statutory trust ("VFT 2007") entered into a Note Purchase Agreement, dated as of November 30, 2007 (as amended, the "2007 Note Purchase Agreement") with MetLife, pursuant to which VFT 2007 issued to MetLife certain notes (as amended, the "2007 Notes"), and MetLife agreed to provide a variable rate senior secured revolving credit facility to VFT 2007 in an aggregate principal amount of up to $500 million.  LBHI guaranteed the repayment of the 2007 Notes pursuant to a Guarantee, dated as of November 30, 2007 (the "2007 Guarantee").

10.      LCPI sold and assigned certain mortgage loans (the "Mortgage Loans") to VFT 2007, and such Mortgage Loans, in turn, are pledged as collateral for the 2007 Notes.  Under the terms of the 2007 Note Purchase Agreement, the value of the Mortgage Loans must exceed the outstanding principal amount of the 2007 Notes, as further provided therein.  Lehman Brothers Special Financing Inc. ("LBSF") entered into multiple swap agreements with VFT 2007 with respect to certain payments on the 2007 Notes.  LCPI is the legal and beneficial owner of certificates issued by VFT 2007 that confer upon LCPI the right to receive any residual interest in VFT 2007 after the 2007 Notes are paid in full.

11.      As the lender of record on the Mortgage Loans, LCPI, or a servicer designated by LCPI, receives all principal and interest payments on the Mortgage Loans and is obligated to transfer such payments to VFT 2007.  Since the Commencement Date,

LCPI has failed to transfer or direct the transfer of some of the payments it has received

from the borrowers under the Mortgage Loans to VFT 2007.

12.    As a result of the commencement of LBHI's chapter 11 case, an

"Event of Default" occurred under the 2007 Note Purchase Agreement, allegedly

entitling MetLife to exercise certain remedies in respect of the 2007 Notes.  As a result of

the occurrence of such Event of Default, pursuant to the Collateral Trust Agreement,

dated as of November 30, 2007 (the "2007 Collateral Agreement"), between VFT 2007

and The Bank of New York Trust Company, N.A. ("Bank of New York"), MetLife is

also allegedly entitled to exercise remedies with respect to the collateral securing the

2007 Notes, including the sale of the Mortgage Loans.  On or after October 14, 2008,

MetLife exercised its right to instruct Bank of New York to contact the borrowers under

the Mortgage Loans and direct them to make certain payments directly to Capmark

Finance Inc. ("Capmark"), as agent for VFT 2007.  Capmark has since transferred certain

payments it has received from the borrowers under the Mortgage Loans to VFT 2007.  At

the same time, LCPI continues to hold certain collections with respect to the Mortgage

Loans that are required to be transmitted by it to VFT 2007.   MetLife has asserted that

the exercise of remedies against VFT 2007 is not subject to the automatic stay because

VFT 2007 is not a debtor in a case under the Bankruptcy Code.

B.  The VFT 2008 Trust.

13.    Variable Funding Trust 2008-1, a Delaware statutory trust ("VFT

2008" and, together with VFT 2007, the "Trusts") entered into a Note Purchase

Agreement, dated as of May 9, 2008 (the "2008 Note Purchase Agreement" and, together

with the 2007 Note Purchase Agreement, the "Note Purchase Agreements") with

MetLife, pursuant to which VFT 2008 issued to MetLife certain notes (the "2008 Notes" and, together with the 2007 Notes, the "Notes"), and MetLife agreed to provide a variable rate senior secured revolving credit facility to VFT 2008 in an aggregate principal amount of up to $500 million. LBHI guaranteed the repayment of the 2008 Notes pursuant to a Guarantee, dated as of May 9, 2008 (the "2008 Guarantee" and, together with the 2007 Guarantee, the "Guarantees").

14.     LCPI sold and assigned participations (the "Participations" and, together with the Mortgage Loans and the other collateral securing the 2007 Notes and/or the 2008 Notes from time to time, the "Collateral") in certain specific corporate loans (the "Corporate Loans") to VFT 2008. The Participations are, in turn, pledged as collateral for the 2008 Notes. Under the terms of the 2008 Note Purchase Agreement, the value of the Participations must at all times exceed the outstanding principal amount of the 2008 Notes, as further provided therein. LBSF entered into multiple swap agreements with VFT 2008 with respect to certain payments on the 2008 Notes. LCPI is the legal and beneficial owner of the certificates issued by VFT 2008 that confer on LCPI the right to receive any residual interest in VFT 2008 after the 2008 Notes are paid in full.

15.     Pursuant to the Master Participation Agreement, dated as of May 9, 2008 between VFT 2008 and LCPI (the "Master Participation Agreement"), LCPI agreed that, upon receipt of any payments with respect to the Corporate Loans, it would promptly transfer such amounts to VFT 2008. Since the Commencement Date, LCPI has failed to transfer some of the payments it has received from the borrowers under the Corporate Loans to VFT 2008.

16.     The commencement of LBHI's chapter 11 case constituted an "Event of Default" under the 2008 Note Purchase Agreement, allegedly entitling MetLife to exercise certain remedies in respect of the 2008 Notes.  As a result of the occurrence of such Event of Default, pursuant to the Collateral Trust Agreement, dated as of May 9, 2008 (the "2008 Collateral Agreement" and, together with the 2007 Collateral Agreement, the "Collateral Agreements"), between VFT 2008 and Bank of New York, MetLife is also allegedly entitled to exercise remedies with respect to the collateral securing the 2008 Notes, including the sale of the Participations.  MetLife has asserted that the exercise of remedies against VFT 2008 is not subject to the automatic stay because VFT 2008 is not a debtor in a case under the Bankruptcy Code.

17.     Provisions in the Note Purchase Agreements, the Collateral Agreements, and the respective related transaction agreements (collectively, the "Transaction Documents") provide that the 2007 Notes and the 2008 Notes are cross-collateralized.

### The Settlement

18.     As discussed, MetLife has asserted that it is entitled, directly or indirectly, to exercise remedies with respect to the Collateral.  Given the current market conditions for loans, if the Mortgage Loans or the Participations were sold at this time, such sales would, in LCPI's view, likely result in such Collateral being sold at a significant discount to its par value and/or its intrinsic value.  Despite the fact that the Notes were required to be substantially over-collateralized, due to current market conditions MetLife faces uncertain prospects for obtaining payment in full under the Notes, without recourse to the Guarantees, if all of the Collateral were sold immediately.

As a result, it would be unlikely that LCPI's estate would realize any value from its ownership of interests in the Trusts.  In addition, MetLife would be likely to have claims against LBHI under the Guarantees and against LBSF in respect of the swap agreements.

19.    In light of the consequences of an immediate sale of the Collateral, the Debtors determined that the best means of maximizing the value of the Collateral was to enter into negotiations with MetLife.  Such negotiations with MetLife have resulted in a compromise and settlement (the "Settlement") that will be memorialized in revisions to the Transaction Documents (collectively, the "Amendment"), substantially consistent with the term sheet attached hereto as Exhibit A (the "Term Sheet").  Because VFT 2007 and VFT 2008 are cross-collateralized, the Settlement is joint with respect to VFT 2007 and VFT 2008 and represents the concurrent resolution of issues with respect to both Trusts.

20.    The salient terms of the Term Sheet are set forth below:[1]

- The Term Sheet sets forth the terms by which LCPI and MetLife may liquidate the Collateral underlying each of the Trusts.  LCPI will agree to work to effectuate the assignment of the Collateral to third parties, as more particularly specified in the Term Sheet.

- The term of VFT 2008 is extended to June 30, 2010.  The term of VFT 2007 is extended to December 31, 2009, with the possibility of a further extension if certain conditions are satisfied.  The extended terms may enable LCPI to benefit from a recovery in Collateral value.

- With respect to VFT 2008, MetLife's position is improved through the delivery of assignments to Bank of New York to be held in escrow.  MetLife will only be able to exercise remedies with respect to such assignments if LCPI defaults under

---

[1] This summary (the "Summary") of the Term Sheet is qualified in its entirety by the terms and conditions of the Term Sheet.  The Summary contained in this Motion is intended to be used for information purposes only and shall not in any way affect the meaning or interpretation of the Term Sheet.

the amended Transaction Documents.  LCPI will also work to terminate all unfunded revolver commitments underlying VFT 2008.

- The Term Sheet further specifies the terms related to payments, proceeds, and fees, including the interest rates for the Notes.  The Notes will bear interest at higher rates, as particularized in the Term Sheet.  All collections held by LCPI in respect of the Collateral since the Commencement Date, net of the fees and expenses of MetLife and the Collateral Trustee that are payable pursuant to the Collateral Agreements, will be paid by LCPI to the Trusts to be used for the contemporaneous payment or prepayment of the Notes, as further specified under the Term Sheet.  Any deficiency at maturity or acceleration of the notes issued by either of the Trusts will be added to the balance of the other Trust's secured note obligations.  Any excess Collateral (including cash) after payment of either Trust's notes is to be held as Collateral for the other Trust's notes until all notes are paid in full, provided that in the case of cash (or subsequent sales of such Collateral yielding cash), such amounts shall be contemporaneously used to prepay notes.  Furthermore, prior to the payment of principal on the 2007 Notes, VFT 2007 will pay to VFT 2008 the principal proceeds received on Participations from VFT 2008 that were allocated to VFT 2007 to make interest payments on the 2007 Notes on December 31, 2008.

- Pursuant to the Term Sheet, the parties will waive certain rights, remedies and defaults with respect to both of the Trusts.  MetLife will waive any prepayment penalties on the Notes.  The parties will waive all pre-existing defaults and events of default under the Note Purchase Agreements upon the execution and delivery of the documentation evidencing the Amendment, and acceleration of the Notes will be rescinded at such time.  The Amendment will also include modification of the events of default specified in the Transaction Documents, including the elimination of bankruptcy defaults, defaults caused by defaults in respect of swap agreements, and any other events of default inconsistent with the Term Sheet.

- If an event of default under either of the Trusts or any of the Transaction Documents occurs after the effective date, neither LBHI, LBSF nor any other Debtor will allege that the automatic stay applies with respect to MetLife's pursuit of its remedies under such Trust.  All guaranty claims against LBHI and LBSF in respect of the Transaction Documents will remain and constitute prepetition obligations of the respective Debtor's estate.

### The Settlement Meets the Legal Standard
### Established Under Rule 9019 and Is in the Bests Interests of LBHI's Estate

21.    The Debtors submit that the proposed Settlement is in the Debtors'

best interests and should be approved under Rule 9019 of the Bankruptcy Rules.

Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor-in-possession]

and after notice and a hearing, the court may approve a compromise or settlement." Fed.
R. Bankr. P. 9019(a).  This rule empowers bankruptcy courts to approve settlements "if
they are in the best interests of the estate."  Vaughn v. Drexel Burnham Lambert Group,
Inc. (In re Drexel Burnham Lambert Group, Inc.) 134 B.R. 499, 505 (Bankr. S.D.N.Y.
1991); see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.
Anderson, 390 U.S. 414, 424 (1968); Fisher v. Pereira (In re 47-49 Charles St., Inc.), 209
B.R. 618, 620 (S.D.N.Y. 1997); In re Ionosphere Clubs, Inc., 156 B.R. 414, 426
(S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994).  A decision to accept or reject a
compromise or settlement is within the sound discretion of the Court.  Drexel Burnham
Lambert Group, 134 B.R. at 505; see also 9 Collier on Bankruptcy ¶ 9019.02 (15th ed.
rev. 2001).  The settlement need not result in the best possible outcome for the debtor, but
must not "fall beneath the lowest point in the range of reasonableness."  Drexel Burnham
Lambert Group, 134 B.R. at 505.  See also Cosoff v. Rodman (In re W.T. Grant Co.), 699
F.2d 599, 608 (2d Cir. 1983); In re Spielfogel, 211 B.R. 133, 144 (Bankr. E.D.N.Y.
1997).  Indeed, courts have long considered compromises to be "a normal part of the
process of reorganization."  TMT Trailer Ferry, 390 U.S. at 424 (quoting Case v. Los
Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939).

22.     The decision to approve a particular compromise lies within the
sound discretion of the bankruptcy court.  Nellis v. Shugrue, 165 B.R. 115, 123
(S.D.N.Y. 1994).  Additionally, a court may exercise its discretion "in light of the general
public policy favoring settlements."  In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46
(Bankr. S.D.N.Y. 1998).  However, the analysis must focus on the question of whether a

particular compromise is "fair and equitable, and in the best interest of the estate." In re Best Products, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).

23.     While a court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," Anderson, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, W.T. Grant Co., 699 F.2d at 608, or conduct a full independent investigation. Drexel Burnham Lambert Group, 134 B.R. at 496. "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact…. The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." Nellis, 165 B.R. at 123 (internal citations omitted).

24.     The court may give weight to the "informed judgments of the … debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." Drexel Burnham Lambert Group, 134 B.R. at 505 (internal citations omitted); see also In re Purofied Down Prods. Corp., 150 B.R. 519, 522 (S.D.N.Y. 1993); accord In re Ashford Hotels Ltd., 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness…. If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

25.     Significantly, there is no requirement that "the value of the compromise … be dollar-for-dollar the equivalent of the claim." Ionosphere Clubs, Inc., 156 B.R. at 427. Instead, "there is no reason, at least in theory, why a satisfactory

settlement could not amount to a hundredth or even a thousandth part of a single percent

of the potential recovery." Id. at 427-28 (quoting City of Detroit v. Grinnell Corp., 495

F.2d 448 (2nd Cir. 1974).

26.     The Debtors have determined that the Settlement provides the best

framework for maximizing the value of the Collateral in the Trusts, in light of MetLife's

rights under the Transaction Documents.  In the current environment, the value of the

Collateral is depressed, and the Settlement provides LCPI with time.  As a result, LCPI

may benefit from the recovery and/or stabilization of the financial markets.

27.     Under the Settlement LCPI is receiving the opportunity to liquidate

in an orderly fashion the Collateral it has transferred to the Trusts.  The potential benefit

substantially outweighs what LCPI is giving up in connection therewith – revised interest

rates under the Notes and the release of certain claims.  An orderly liquidation of the

Collateral over a period of more than one year will maximize the value of the assets in

LCPI's estate.  Accordingly, in order to preserve value for the benefit of their estates, the

Debtors request that the Court approve the Settlement.

**The Settlement is an Appropriate Exercise of LCPI's Business Judgment**

28.     Ample authority exists for approval of the proposed Settlement.

Section 363 of the Bankruptcy Code provides, in relevant part, "[t]he trustee, after notice

and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate." 11 U.S.C. § 363(b)(1).  Although, as structured, the Collateral,

which is owned by the Trusts, may not constitute property of the estates, the Debtors are

seeking approval of the Settlement under section 363 of the Bankruptcy Code because

their beneficial interests in the Trusts do constitute property of the Debtors' estates.

29.    While section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale, disposition or other use of a debtor's assets, courts in the Second Circuit and others, in applying this section, have required that it be based upon the sound business judgment of the debtor.  See In re Chateaugay Corp., 973 F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (same).

30.    For the reasons set forth above, approval of the Settlement is in the best interests of the Debtors' estates.  The Amendment and the Settlement are necessary for the orderly liquidation of the Collateral and, together, enable LCPI to maximize its interest in the Trusts.  Furthermore, in light of LBHI's guarantee of repayment of the Notes and LBSF's exposure under the swap agreements, the Settlement will benefit the Debtors' estates by potentially reducing any claims MetLife may have against LBHI or LBSF.  As such, entry into the Settlement and the associated Amendment are in the best interests of the Debtors, their estates, their creditors, and other parties in interest and should be approved.

### The Amendment of the Transaction Documents

31.    Immediately after entry of an order approving this Motion, counsel for the Debtors, MetLife and any other parties to the Transaction Documents will negotiate the Amendment, which will incorporate the terms of the Settlement reflected in the Term Sheet.

32.    In light of the complexity of the Transaction Documents, the Debtors and MetLife contemplate that issues may arise that are not addressed in the Term Sheet.  In order to provide assurance to MetLife and all parties in interest that the Amendment is consistent with the Term Sheet, this Motion and the proposed order granting the Motion, the Debtors propose the following procedure (the "Amendment Procedure"):

a)  The Debtors shall file the final form of the Amendment with the Court and provide notice to all parties in interest.

b)  Parties in interest shall have 10 days within which to file an objection to the Amendment.

c)  If no objections are timely filed, then the Amendment shall be deemed substantially consistent with the Term Sheet and the Settlement described herein.

d)  If an objection is timely filed, then a hearing will be held and the Court will determine whether the Amendment is substantially consistent with the Term Sheet and should be approved.

### Notice

33.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel to MetLife; (vii) Bank of New York; and (viii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

34.    No previous request for the relief sought herein has been made by

the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the

relief requested herein and such other and further relief as it deems just and proper.

Dated: March 2, 2009
       New York, New York


/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## Exhibit A

Term Sheet

**VFT 2007-1 and VFT 2008-1**
**Basic Restructuring Term Sheet**

**VFT 2008-1**

 * On or before the filing of a motion supporting these restructuring terms, all cash held (net of fees and expenses of MetLife and Collateral Trustee payable pursuant to the Collateral Trust Agreement) to be swept to VFT 2008-1 to be used for the contemporaneous prepayment of the Notes issued by VFT 2008-1 (the "2008 Notes"), except for amounts of previously-received revolving loan payments that are agreed to be available for future revolving loan advances (which held amounts, as of December 31, 2008, are equal to $4,127,200.88 (the "Revolver Paydown Amount")).

 * LCPI will direct $20,000,000 of its Intergen NV open trades, at a price of 85.00, and $485,288.46 of Dresser Inc. first lien term loan at a price of 96.00, when settled, to VFT 2008-1 for application to the 2008 Notes.

 * Maturity of June 30, 2010.

 * Interest accrual and payment:

|  | Current Pay | PIK | Total Coupon |
|---|---|---|---|
| Contract rate | L+250 | L+200 | L+450 |

Payable quarterly on each scheduled interest payment date as set forth in existing contracts.
Interest accrues for January 2009 at L+250; thereafter at contract rate.
Accumulated PIK to be paid at maturity on June 30, 2010

 * Irrevocably instruct administrative or paying agents to direct all payments of P&I and fees (including, without limitation, all prepayments and prepayment premiums, and all waiver, amendment, and commitment fees) to Collateral Trustee.

 * Portfolio Management:  On a periodic basis, both parties will review term loans for possible sale:

> - If both parties agree that a loan shall be sold then a sale will be executed within 45 days (at a prevailing market rate) with closing to occur in normal course.

> - If both parties do not agree then the determination shall be made as follows:

>> - If the outlook by both rating agencies (Moodys and S&P) is negative, then a sale shall be executed within 45 days (at a prevailing market rate) with closing to occur in normal course;

>> - If the outlook by one agency shows negative and the other is positive or stable, then a three party discussion will ensue. The three parties, MetLife, Lehman and Houlihan will discuss and vote on a course of action with 2 out of 3 deciding the outcome. If the outcome is "sell," then a sale will be executed as noted above. If the outcome is a "hold," then all parties agree to revisit the decision on a frequent basis.

- All loan sales are subject to any applicable contractual restrictions, subject to section 365 of the Bankruptcy Code and any other provisions of applicable law.

 * Cash flow from Collateral liquidations and other funds received to be used, after payment of fees and expenses of MetLife and the Collateral Trustee pursuant to the Collateral Trust Agreement, for prepayment of 2008 Notes as follows:

> Term loans:
> 100% of sale proceeds used to reduce outstanding note balance.
> 100% of principal paydowns and any amendment/waiver fees with respect to Collateral used to reduce outstanding 2008 Note balance.
> Interest received from Collateral used to fund interest payments on 2008 Notes.
>
> Revolving loans:
> Maximum aggregate balance frozen at sum of aggregate balance of revolving loans as of 12/31/08 plus the Revolver Paydown Amount (the "Maximum Revolver Balance").  No further fundings above the Maximum Revolver Balance.  Permanent principal reductions of underlying collateral used to pay down note balance.
>
> Incremental pay downs and contractual fee payments remain in trust to fund potential future draws back to the Maximum Revolver Balance.  For the avoidance of doubt, VFT 2008-1 shall have no obligation to fund aggregate revolving loan obligations beyond the Maximum Revolver Balance.  Any reduction in, or termination of, a revolving loan commitment shall result in the release of any cash reserved for funding such loan to be used for the simultaneous prepayment of the 2008 Notes.

 * Best efforts to deliver to MetLife copies of all reports, documents, instruments, instructions, notices, certificates and all other communications from loan obligors and administrative agents prior to closing and on an ongoing basis (such requirement to exclude materials prepared internally by Lehman).

 * Additional issues relating to underlying Collateral:

> Term Loans:
> Assignments must be executed and delivered to the Collateral Trustee in escrow at the Closing, on LSTA-based forms to the extent applicable.  Assignment shall be subject to any applicable contractual restrictions, subject to section 365 of the Bankruptcy Code and any other provisions of applicable law.  Escrow, by its terms, shall provide that such assignments shall be released and be effective upon the direction of MetLife following the occurrence of an Event of Default and three business days' prior written notice to LCPI and the Creditors' Committee, without any further consent of LCPI or any other party.
>
> Revolvers:
> LCPI continues to work on terminating all unfunded revolver commitments; for the avoidance of doubt, VFT-2008 funding obligations no greater than any reductions after December 31, 2008 in the outstanding balance of such loan by non-permanent paydown/reduction.
>
> Revolvers & Term Loans:
> LCPI retains the right to negotiate with underlying borrowers on non-material amendment requests.

All material amendment/waiver requests must be approved by both LCPI and MetLife.

LCPI to have right of first refusal on asset sales.

Sales of loans where the borrower is in bankruptcy or has an unremedied payment default  to be subject to the sale process identified above under the heading "Portfolio Management."

For each calendar month after December 31, 2008, LCPI shall use its best commercial efforts to provide a monthly reconciliation as soon as possible after the end of such calendar month but in any event within 30 days.

**VFT 2007-1**

 * Upon or before filing of motion supporting these restructuring terms, all cash held (net of fees and expenses of MetLife and Collateral Trustee payable pursuant to the Collateral Trust Agreement) to be swept to VFT 2007 to be used for the contemporaneous payment/prepayment of the 2007 Notes, including $1,711,602.38 received in respect of the Innkeepers loan in or around October 2008, but excluding the additional $5,759,677.15 received in respect of the Innkeepers loan prior to September 15, 2008, which funds will be retained by LCPI and will be delivered to VFT 2007-1 for the prepayment of the 2007 Notes upon the sale of the Innkeepers loans (and such amount shall in any event be paid to VFT 2007-1 no later than the maturity of the 2007 Notes and/or the 2008 Notes, whichever is sooner).

 * 2007 Notes to bear interest at LIBOR + 350bps beginning January 1, 2009 through September 30, 2009; LIBOR + 450 from October 1, 2009 through December 31, 2009; LIBOR + 700 thereafter.

 * Principal and other amounts paid on the underlying real estate loans, and other amounts received by VFT 2007, shall be used for interest payments and paydowns of the 2007 Notes.

 * Irrevocably instruct servicing agents to direct all payments of P&I and fees (including, without limitation, prepayments, casualty and condemnation proceeds and sale proceeds, and all waiver, amendment, and commitment fees) to Collateral Trustee.  A shortfall in payments as of any quarterly payment date, unless made up by Lehman, shall constitute a default.

 * Portfolio Management:

  - A mortgage note and related rights constituting collateral securing the 2007 Notes may be sold at the option of LCPI at a price of at least 90% of the par value of such mortgage note, if at the closing of such sale the 2008 Notes are secured by commercial loans constituting collateral that have an agreed market value equal to at least 100% of the outstanding amount of the 2008 Notes and all proceeds from the sale of such mortgage note are delivered directly to the Trust and are used to prepay the 2007 Notes (or, to the extent that the 2007 Notes are no longer outstanding, to prepay the 2008 Notes); and

  - A mortgage note and related rights constituting collateral securing the 2007 Notes may be sold at the option of LCPI at a price of at least 100% of the par value of such mortgage note irrespective of the value of the collateral securing the 2008 Notes so long as all proceeds from the sale of such mortgage note are delivered directly to the Trust and used to prepay the 2007 Notes (or, to the extent that the 2007 Notes are no longer outstanding, to prepay the 2008 Notes).

   - Notwithstanding the foregoing and for the avoidance of doubt, the amount in U.S. Dollars that must be paid to the Trust with respect to a proposed sale of a mortgage note constituting UK Collateral shall be equal to the sale price

(expressed as a percentage of par) multiplied by the par value of such mortgage note (in British pounds) multiplied by its US Dollar equivalent at the original funding rate (i.e., 1.0 British pound to 2.0625 USD).
- LCPI may contribute its own (non trust-related) funds if needed to supplement a purchase price so that it meets the above criteria.
- LCPI may purchase a mortgage note for its own account, subject to the foregoing restrictions; provided that if LCPI subsequently sells such a mortgage note, or borrows against such mortgage note, in either case in an amount more than the sale price received by the trusts from LCPI in such sale, then any excess amounts shall be immediately remitted to the trusts as a prepayment of the Notes.
- LCPI will notify the Trust and MetLife of its intention to market any collateral and provide a copy of any proposed terms of sale to MetLife.

* Cash flow from Collateral liquidations, prepayments, and other funds received to be used, after payment of fees and expenses of MetLife payable pursuant to the Collateral Trust Agreement, for prepayment of the 2007 Notes.

* Copies of all reports, documents, instruments, instructions, notices, insurance policies, certificates and all other communications from mortgage obligors or others must be delivered promptly to MetLife prior to closing and on an ongoing basis, including reports of asset and market value of the 2007 Collateral that are obtained by Lehman (such requirement to exclude materials prepared internally by Lehman).

* Maturity date of December 31, 2009; provided however, if Lehman shall have delivered on or before December 15, 2009, a current appraisal from a mutually-acceptable nationally-recognized firm of appraisers for each mortgage note constituting VFT 2007-1 Collateral, which in each case substantiates both (a) an aggregate loan-to-value ratio with respect to all mortgage notes of no greater than 0.70 (determined as a fraction, the numerator of which is the aggregate outstanding balance of the 2007 Notes, and the denominator of which is the appraisal value of all mortgage notes constituting VFT 2007-1 Collateral plus any cash Collateral), and (b) an individual loan-to-value ratio with respect to each mortgage note of no greater than 0.80 (determined as a fraction, the numerator of which is the outstanding balance of the 2007 Notes attributable to such mortgage note, and the denominator of which is the appraisal value of such mortgage note), then the maturity date of the 2007 Notes shall be extended to June 30, 2010, provided however, if either of the provisions of clause (a) or (b) above are not satisfied, LCPI may contribute cash as Collateral to VFT 2007-1 and in so doing, in the case of the loan-to-value ratios of the underlying loans, may specify that such cash shall be deemed to reduce the numerator for individual loans and in amounts specified by LCPI for the purposes of calculating such loan-to-value ratio.

* LCPI retains the right to negotiate with underlying borrowers on non-material amendment requests; all material amendment/waiver requests must be approved by the Trust/MetLife

* All assignments/notarizations, including those necessary or desirable to make assignments recordable, to be executed and delivered contemporaneously with agreement of the above terms.

## Applicable to both VFT 2007 and VFT 2008:

* MetLife will waive any prepayment penalties on the Notes.

* No withdrawals of collateral/cash by Lehman.

* Treatment of swaps and currency issues to be discussed and resolved.

\* VFT 2007 and VFT 2008 are cross-defaulted, and the proposal with respect to VFT 2007 and VFT 2008 is joint not separate and represents the concurrent resolution of issues with both trusts.

\* All pre-existing Defaults and Events of Default under VFT 2007-1 and VFT 2008-1 Note Purchase Agreements to be waived at execution and delivery of documentation evidencing the restructuring, and acceleration of Notes to be rescinded at such time.  Documentation of restructuring terms to be evidenced primarily by amendments to existing documentation.  Amendments will include modification of Events of Default to eliminate loan to value covenant, bankruptcy defaults, defaults caused by defaults in respect of the swap agreements, and any other Events of Default inconsistent with the terms hereof.  Documentation shall include reasonable representations, warranties and covenants from Lehman and the Trusts effective on and as of the effective date of the restructuring.

\* From the date of filing of the motion supporting these restructuring terms until the earlier of the effective date of the restructuring and May 31, 2009, Default Interest shall only apply in the event that a payment Default arises after the date hereof and shall only apply to the amount of any such payment Default; thereafter Default Interest shall accrue in accordance with the Note Purchase Agreements and shall only apply to the amount of any payment that is not paid when due (whether by schedule, at maturity or upon acceleration).

\* Prior to the payment of principal on the 2007 Notes, VFT 2007  will pay to VFT 2008 $1,323,621.01, which represents the principal proceeds received on VFT 2008 Collateral that were allocated to VFT 2007 to make interest payments on the 2007 Notes on December 31, 2008.

\* Any deficiency at maturity/acceleration of one VFT to be added to balance of other VFT's secured note obligations.  Any excess Collateral (including cash) after payment of either VFT's notes to be held as Collateral for the other VFT's notes until all notes are paid in full, provided that in the case of cash (or subsequent sales of such Collateral yielding cash), such amounts shall be contemporaneously used to prepay the notes.

\* All guaranty claims against Lehman entities remain.

\* Agreement subject to customary documentation satisfactory to MetLife and LCPI; parties agree to work quickly and diligently to complete negotiations, documentation and closing.

\* Lehman to use commercially reasonable efforts to gain bankruptcy court and committee approvals.  All required or desirable consents and approvals (including those of bankruptcy court and committee) must be received from all required parties prior to closing.

\* If an Event of Default under either VFT 2007-1 or VFT 2008-1 occurs, Lehman will not allege that the automatic stay applies with respect to the pursuit by MetLife of its remedies under such facilities, and the order approving the settlement/restructuring shall explicitly provide that the exercise of any such remedies shall not constitute a violation of the automatic stay in any of the debtors' cases.

\* Fees and expenses of MetLife counsel and advisors to be paid from Collateral proceeds as directed by MetLife.

\* For the avoidance of doubt, violation of representations, covenants or other terms of restructuring documentation is a default.

\* The parties will use commercially reasonable efforts to conclude documentation as soon as practicable.  While the motion in support of this term sheet, and the subsequent documentation process, is in progress, and until the earlier of the effectiveness of such documentation and May

31, 2009, each of LCPI and MetLife agrees that it will abide by the terms of the term sheet (including, without limitation, with respect to the payment terms hereof), and MetLife agrees that it will not take any action to exercise remedies in respect of any pre-existing Defaults or Events of Default.

 * Notwithstanding anything to the contrary contained herein, if (a) approval of this term sheet or the documentation hereof is denied by the bankruptcy court or the unsecured creditors' committee, or (b) this term sheet is not approved by the bankruptcy court and the unsecured creditors' committee by May 31, 2009, then in either case all parties will be returned to the status quo ante concurrently with such denial or such date, as the case may be, Met Life will have no further obligation to forbear, and all parties will have the right to assert all rights, remedies and defenses (including without limitation, Lehman's right to assert that the stay applies).

 * Nothing in this term sheet or the amendments effecting the same shall be deemed to create an administrative claim against the debtors.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                            :

In re                              :      **Chapter 11 Case No.**

                              :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :      **08-13555 (JMP)**

                              :

                 **Debtors.**        :      **(Jointly Administered)**

                              :

                              :
----------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AUTHORIZING LEHMAN COMMERCIAL PAPER INC. TO SETTLE DISPUTE WITH THE METROPOLITAN LIFE INSURANCE COMPANY

Upon the motion, dated March 2, 2009 (the "<u>Motion</u>"),[1] of Lehman

Brothers Holdings Inc. ("<u>LBHI</u>"), Lehman Commercial Paper, Inc. ("<u>LCPI</u>") and their

affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-

possession (collectively, the "<u>Debtors</u>" and, together with their non-debtor affiliates,

"<u>Lehman</u>"), pursuant to sections 105 and 363 of title 11 of the United States Code (the

"<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>") for authorization and approval of the Settlement substantially

consistent with the term sheet (the "<u>Term Sheet</u>") annexed hereto as <u>Exhibit A</u>; and the

Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion

and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Motion having been provided in accordance with the

procedures set forth in the amended order entered February 13, 2009 governing case

management and administrative procedures [Docket No. 2837] to (i) the United States

Trustee for the Southern District of New York; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv)

the Internal Revenue Service; (v) the United States Attorney for the Southern District of

New York; (vi) counsel to MetLife; (vii) Bank of New York; and (viii) all parties who

have requested notice in these chapter 11 cases, and it appearing that no other or further

notice need be provided; and the Court having found and determined that the relief

sought in the Motion is in the best interests of the Debtors, their estates and creditors, and

all parties in interest and that the legal and factual bases set forth in the Motion establish

just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to sections 105 and  363(b) of the Bankruptcy

Code and Bankruptcy Rule 9019, the Term Sheet is approved, and the Debtors are

authorized enter into the Settlement and to consummate all of the transactions

contemplated thereby, including but not limited to, the amendment of the Transaction

Documents on terms substantially consistent with the Term Sheet; and it is further

ORDERED that the Debtors are authorized to execute and deliver such assignments, conveyances, and other documents, and instruments of transfer and to take such other actions as may be reasonably necessary to consummate the Settlement; and it is further

ORDERED that if an "Event of Default" under either of the Trusts or any of the Transaction Documents occurs after the effective date of the Amendment, the pursuit by MetLife of its remedies in respect of such Trust or Trusts or such Transaction Documents shall not constitute a violation of the automatic stay in any of the Debtors' cases; and it is further

ORDERED that the Debtors shall file the final form of the Amendment with the Court and provide notice to all parties in interest in accordance with the Amendment Procedure set forth in the Motion; and it is further

ORDERED that all parties in interest shall have ten (10) days within which to file an objection to the Amendment; and it is further

ORDERED that if no objections are timely filed, then the Amendment shall be deemed substantially consistent with the Term Sheet and the Settlement described in the Motion and approved hereby; if an objection is timely filed, then a hearing will be held and the Court will determine whether the Amendment is substantially consistent with the Term Sheet and should be approved; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine

all matters arising from or related to the implementation and/or interpretation of this

Order.

Dated: March __, 2009
New York, New York

_____

UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

Term Sheet

**VFT 2007-1 and VFT 2008-1**
**Basic Restructuring Term Sheet**

**VFT 2008-1**

 * On or before the filing of a motion supporting these restructuring terms, all cash held (net of fees and expenses of MetLife and Collateral Trustee payable pursuant to the Collateral Trust Agreement) to be swept to VFT 2008-1 to be used for the contemporaneous prepayment of the Notes issued by VFT 2008-1 (the "2008 Notes"), except for amounts of previously-received revolving loan payments that are agreed to be available for future revolving loan advances (which held amounts, as of December 31, 2008, are equal to $4,127,200.88 (the "Revolver Paydown Amount")).

 * LCPI will direct $20,000,000 of its Intergen NV open trades, at a price of 85.00, and $485,288.46 of Dresser Inc. first lien term loan at a price of 96.00, when settled, to VFT 2008-1 for application to the 2008 Notes.

 * Maturity of June 30, 2010.

 * Interest accrual and payment:

|  | Current Pay | PIK | Total Coupon |
|---|---|---|---|
| Contract rate | L+250 | L+200 | L+450 |

Payable quarterly on each scheduled interest payment date as set forth in existing contracts.
Interest accrues for January 2009 at L+250; thereafter at contract rate.
Accumulated PIK to be paid at maturity on June 30, 2010

 * Irrevocably instruct administrative or paying agents to direct all payments of P&I and fees (including, without limitation, all prepayments and prepayment premiums, and all waiver, amendment, and commitment fees) to Collateral Trustee.

 * Portfolio Management:  On a periodic basis, both parties will review term loans for possible sale:

   - If both parties agree that a loan shall be sold then a sale will be executed within 45 days (at a prevailing market rate) with closing to occur in normal course.

   - If both parties do not agree then the determination shall be made as follows:

      - If the outlook by both rating agencies (Moodys and S&P) is negative, then a sale shall be executed within 45 days (at a prevailing market rate) with closing to occur in normal course;

      - If the outlook by one agency shows negative and the other is positive or stable, then a three party discussion will ensue. The three parties, MetLife, Lehman and Houlihan will discuss and vote on a course of action with 2 out of 3 deciding the outcome. If the outcome is "sell," then a sale will be executed as noted above. If the outcome is a "hold," then all parties agree to revisit the decision on a frequent basis.

- All loan sales are subject to any applicable contractual restrictions, subject to section 365 of the Bankruptcy Code and any other provisions of applicable law.

 * Cash flow from Collateral liquidations and other funds received to be used, after payment of fees and expenses of MetLife and the Collateral Trustee pursuant to the Collateral Trust Agreement, for prepayment of 2008 Notes as follows:

> Term loans:
> 100% of sale proceeds used to reduce outstanding note balance.
> 100% of principal paydowns and any amendment/waiver fees with respect to Collateral used to reduce outstanding 2008 Note balance.
> Interest received from Collateral used to fund interest payments on 2008 Notes.

> Revolving loans:
> Maximum aggregate balance frozen at sum of aggregate balance of revolving loans as of 12/31/08 plus the Revolver Paydown Amount (the "Maximum Revolver Balance"). No further fundings above the Maximum Revolver Balance. Permanent principal reductions of underlying collateral used to pay down note balance.

> Incremental pay downs and contractual fee payments remain in trust to fund potential future draws back to the Maximum Revolver Balance. For the avoidance of doubt, VFT 2008-1 shall have no obligation to fund aggregate revolving loan obligations beyond the Maximum Revolver Balance. Any reduction in, or termination of, a revolving loan commitment shall result in the release of any cash reserved for funding such loan to be used for the simultaneous prepayment of the 2008 Notes.

 * Best efforts to deliver to MetLife copies of all reports, documents, instruments, instructions, notices, certificates and all other communications from loan obligors and administrative agents prior to closing and on an ongoing basis (such requirement to exclude materials prepared internally by Lehman).

 * Additional issues relating to underlying Collateral:

> Term Loans:
> Assignments must be executed and delivered to the Collateral Trustee in escrow at the Closing, on LSTA-based forms to the extent applicable. Assignment shall be subject to any applicable contractual restrictions, subject to section 365 of the Bankruptcy Code and any other provisions of applicable law. Escrow, by its terms, shall provide that such assignments shall be released and be effective upon the direction of MetLife following the occurrence of an Event of Default and three business days' prior written notice to LCPI and the Creditors' Committee, without any further consent of LCPI or any other party.

> Revolvers:
> LCPI continues to work on terminating all unfunded revolver commitments; for the avoidance of doubt, VFT-2008 funding obligations no greater than any reductions after December 31, 2008 in the outstanding balance of such loan by non-permanent paydown/reduction.

> Revolvers & Term Loans:
> LCPI retains the right to negotiate with underlying borrowers on non-material amendment requests.

All material amendment/waiver requests must be approved by both LCPI and MetLife.

LCPI to have right of first refusal on asset sales.

Sales of loans where the borrower is in bankruptcy or has an unremedied payment default  to be subject to the sale process identified above under the heading "Portfolio Management."

For each calendar month after December 31, 2008, LCPI shall use its best commercial efforts to provide a monthly reconciliation as soon as possible after the end of such calendar month but in any event within 30 days.

**VFT 2007-1**

 * Upon or before filing of motion supporting these restructuring terms, all cash held (net of fees and expenses of MetLife and Collateral Trustee payable pursuant to the Collateral Trust Agreement) to be swept to VFT 2007 to be used for the contemporaneous payment/prepayment of the 2007 Notes, including $1,711,602.38 received in respect of the Innkeepers loan in or around October 2008, but excluding the additional $5,759,677.15 received in respect of the Innkeepers loan prior to September 15, 2008, which funds will be retained by LCPI and will be delivered to VFT 2007-1 for the prepayment of the 2007 Notes upon the sale of the Innkeepers loans (and such amount shall in any event be paid to VFT 2007-1 no later than the maturity of the 2007 Notes and/or the 2008 Notes, whichever is sooner).

 * 2007 Notes to bear interest at LIBOR + 350bps beginning January 1, 2009 through September 30, 2009; LIBOR + 450 from October 1, 2009 through December 31, 2009; LIBOR + 700 thereafter.

 * Principal and other amounts paid on the underlying real estate loans, and other amounts received by VFT 2007, shall be used for interest payments and paydowns of the 2007 Notes.

 * Irrevocably instruct servicing agents to direct all payments of P&I and fees (including, without limitation, prepayments, casualty and condemnation proceeds and sale proceeds, and all waiver, amendment, and commitment fees) to Collateral Trustee.  A shortfall in payments as of any quarterly payment date, unless made up by Lehman, shall constitute a default.

 * Portfolio Management:

   - A mortgage note and related rights constituting collateral securing the 2007 Notes may be sold at the option of LCPI at a price of at least 90% of the par value of such mortgage note, if at the closing of such sale the 2008 Notes are secured by commercial loans constituting collateral that have an agreed market value equal to at least 100% of the outstanding amount of the 2008 Notes and all proceeds from the sale of such mortgage note are delivered directly to the Trust and are used to prepay the 2007 Notes (or, to the extent that the 2007 Notes are no longer outstanding, to prepay the 2008 Notes); and

   - A mortgage note and related rights constituting collateral securing the 2007 Notes may be sold at the option of LCPI at a price of at least 100% of the par value of such mortgage note irrespective of the value of the collateral securing the 2008 Notes so long as all proceeds from the sale of such mortgage note are delivered directly to the Trust and used to prepay the 2007 Notes (or, to the extent that the 2007 Notes are no longer outstanding, to prepay the 2008 Notes).

     - Notwithstanding the foregoing and for the avoidance of doubt, the amount in U.S. Dollars that must be paid to the Trust with respect to a proposed sale of a mortgage note constituting UK Collateral shall be equal to the sale price

(expressed as a percentage of par) multiplied by the par value of such mortgage note (in British pounds) multiplied by its US Dollar equivalent at the original funding rate (i.e., 1.0 British pound to 2.0625 USD).
- LCPI may contribute its own (non trust-related) funds if needed to supplement a purchase price so that it meets the above criteria.
- LCPI may purchase a mortgage note for its own account, subject to the foregoing restrictions; provided that if LCPI subsequently sells such a mortgage note, or borrows against such mortgage note, in either case in an amount more than the sale price received by the trusts from LCPI in such sale, then any excess amounts shall be immediately remitted to the trusts as a prepayment of the Notes.
- LCPI will notify the Trust and MetLife of its intention to market any collateral and provide a copy of any proposed terms of sale to MetLife.

 * Cash flow from Collateral liquidations, prepayments, and other funds received to be used, after payment of fees and expenses of MetLife payable pursuant to the Collateral Trust Agreement, for prepayment of the 2007 Notes.

 * Copies of all reports, documents, instruments, instructions, notices, insurance policies, certificates and all other communications from mortgage obligors or others must be delivered promptly to MetLife prior to closing and on an ongoing basis, including reports of asset and market value of the 2007 Collateral that are obtained by Lehman (such requirement to exclude materials prepared internally by Lehman).

 * Maturity date of December 31, 2009; provided however, if Lehman shall have delivered on or before December 15, 2009, a current appraisal from a mutually-acceptable nationally-recognized firm of appraisers for each mortgage note constituting VFT 2007-1 Collateral, which in each case substantiates both (a) an aggregate loan-to-value ratio with respect to all mortgage notes of no greater than 0.70 (determined as a fraction, the numerator of which is the aggregate outstanding balance of the 2007 Notes, and the denominator of which is the appraisal value of all mortgage notes constituting VFT 2007-1 Collateral plus any cash Collateral), and (b) an individual loan-to-value ratio with respect to each mortgage note of no greater than 0.80 (determined as a fraction, the numerator of which is the outstanding balance of the 2007 Notes attributable to such mortgage note, and the denominator of which is the appraisal value of such mortgage note), then the maturity date of the 2007 Notes shall be extended to June 30, 2010, provided however, if either of the provisions of clause (a) or (b) above are not satisfied, LCPI may contribute cash as Collateral to VFT 2007-1 and in so doing, in the case of the loan-to-value ratios of the underlying loans, may specify that such cash shall be deemed to reduce the numerator for individual loans and in amounts specified by LCPI for the purposes of calculating such loan-to-value ratio.

 * LCPI retains the right to negotiate with underlying borrowers on non-material amendment requests; all material amendment/waiver requests must be approved by the Trust/MetLife

 * All assignments/notarizations, including those necessary or desirable to make assignments recordable, to be executed and delivered contemporaneously with agreement of the above terms.

### Applicable to both VFT 2007 and VFT 2008:

 * MetLife will waive any prepayment penalties on the Notes.

 * No withdrawals of collateral/cash by Lehman.

 * Treatment of swaps and currency issues to be discussed and resolved.

 * VFT 2007 and VFT 2008 are cross-defaulted, and the proposal with respect to VFT 2007 and VFT 2008 is joint not separate and represents the concurrent resolution of issues with both trusts.

 * All pre-existing Defaults and Events of Default under VFT 2007-1 and VFT 2008-1 Note Purchase Agreements to be waived at execution and delivery of documentation evidencing the restructuring, and acceleration of Notes to be rescinded at such time.  Documentation of restructuring terms to be evidenced primarily by amendments to existing documentation.  Amendments will include modification of Events of Default to eliminate loan to value covenant, bankruptcy defaults, defaults caused by defaults in respect of the swap agreements, and any other Events of Default inconsistent with the terms hereof.  Documentation shall include reasonable representations, warranties and covenants from Lehman and the Trusts effective on and as of the effective date of the restructuring.

* From the date of filing of the motion supporting these restructuring terms until the earlier of the effective date of the restructuring and May 31, 2009, Default Interest shall only apply in the event that a payment Default arises after the date hereof and shall only apply to the amount of any such payment Default; thereafter Default Interest shall accrue in accordance with the Note Purchase Agreements and shall only apply to the amount of any payment that is not paid when due (whether by schedule, at maturity or upon acceleration).

* Prior to the payment of principal on the 2007 Notes, VFT 2007  will pay to VFT 2008 $1,323,621.01, which represents the principal proceeds received on VFT 2008 Collateral that were allocated to VFT 2007 to make interest payments on the 2007 Notes on December 31, 2008.

 * Any deficiency at maturity/acceleration of one VFT to be added to balance of other VFT's secured note obligations.  Any excess Collateral (including cash) after payment of either VFT's notes to be held as Collateral for the other VFT's notes until all notes are paid in full, provided that in the case of cash (or subsequent sales of such Collateral yielding cash), such amounts shall be contemporaneously used to prepay the notes.

 * All guaranty claims against Lehman entities remain.

 * Agreement subject to customary documentation satisfactory to MetLife and LCPI; parties agree to work quickly and diligently to complete negotiations, documentation and closing.

 * Lehman to use commercially reasonable efforts to gain bankruptcy court and committee approvals.  All required or desirable consents and approvals (including those of bankruptcy court and committee) must be received from all required parties prior to closing.

 * If an Event of Default under either VFT 2007-1 or VFT 2008-1 occurs, Lehman will not allege that the automatic stay applies with respect to the pursuit by MetLife of its remedies under such facilities, and the order approving the settlement/restructuring shall explicitly provide that the exercise of any such remedies shall not constitute a violation of the automatic stay in any of the debtors' cases.

 * Fees and expenses of MetLife counsel and advisors to be paid from Collateral proceeds as directed by MetLife.

 * For the avoidance of doubt, violation of representations, covenants or other terms of restructuring documentation is a default.

 * The parties will use commercially reasonable efforts to conclude documentation as soon as practicable.  While the motion in support of this term sheet, and the subsequent documentation process, is in progress, and until the earlier of the effectiveness of such documentation and May

31, 2009, each of LCPI and MetLife agrees that it will abide by the terms of the term sheet (including, without limitation, with respect to the payment terms hereof), and MetLife agrees that it will not take any action to exercise remedies in respect of any pre-existing Defaults or Events of Default.

 * Notwithstanding anything to the contrary contained herein, if (a) approval of this term sheet or the documentation hereof is denied by the bankruptcy court or the unsecured creditors' committee, or (b) this term sheet is not approved by the bankruptcy court and the unsecured creditors' committee by May 31, 2009, then in either case all parties will be returned to the status quo ante concurrently with such denial or such date, as the case may be, Met Life will have no further obligation to forbear, and all parties will have the right to assert all rights, remedies and defenses (including without limitation, Lehman's right to assert that the stay applies).

 * Nothing in this term sheet or the amendments effecting the same shall be deemed to create an administrative claim against the debtors.