DEWEY & LEBOEUF LLP                       Hearing Date: March 11, 2009 at 10:00 a.m.
1301 Avenue of the Americas
New York, New York 10019
Telephone: 212.259.8000
Facsimile: 212.259.6333
Martin J. Bienenstock, Esq.
Irena Goldstein, Esq.

Attorneys for Elliott Associates, L.P.,
Elliott International L.P., The Liverpool Limited Partnership
Springfield Associates LLC and Kensington
International Limited

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                                :

**In re**                                           :         **Chapter 11 Case No.**
                                                                :
**LEHMAN BROTHERS HOLDINGS INC.,** :         **08-13555 (JMP)**
*et al.*                                                        :
         **Debtors.**                                  :         **(Jointly Administered)**
                                                                :
---------------------------------------------------------- x

**SUPPLEMENT TO OBJECTION OF ELLIOTT ASSOCIATES, L.P.,
ELLIOTT INTERNATIONAL, L.P., THE LIVERPOOL LIMITED PARTNERSHIP,
SPRINGFIELD ASSOCIATES LLC AND KENSINGTON INTERNATIONAL LIMITED
TO DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 364 OF THE
BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO GRANT FIRST
PRIORITY LIENS IN CASH COLLATERAL POSTED IN CONNECTION WITH THE
HEDGING TRANSACTIONS THE DEBTORS ENTER INTO THROUGH CERTAIN
<u>FUTURES AND PRIME BROKERAGE ACCOUNTS</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

               1.         Elliott Associates, L.P., Elliott International, L.P., The Liverpool Limited

Partnership, Springfield Associates LLC and Kensington International Limited (collectively,

"<u>Elliott</u>") hereby supplement their objection to the motion (the "<u>Hedging Motion</u>") of Lehman

Brothers Holding Inc. ("<u>LBHI</u>") and its affiliated debtors (collectively with LBHI, the

"Debtors") requesting entry of an order, pursuant to sections 105 and 364 of title 11 of the United States Code (the "Bankruptcy Code") authorizing the Debtors to grant first priority liens in cash collateral posted in connection with the hedging transactions the Debtors enter into through certain futures and prime brokerage accounts and respectfully represent:

## BACKGROUND

2.  Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its direct and indirect subsidiaries, including Lehman Brothers Commodity Services ("LBCS"), Lehman Commercial Paper Inc. ("LCPI") and Lehman Brothers Special Financing ("LBSF"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Pursuant to court approval, the Debtors' cases are jointly administered under the above-captioned case number, but no order has directed or approved substantive consolidation.

3.  On September 17, 2008, the Office of the United States Trustee appointed a committee of unsecured claim holders in these cases (the "Committee").

4.  Elliott holds public debt of LBHI, open trade positions with LCPI, is party to derivative contracts with LBCS and LBSF, and as a result, is a substantial creditor of such Debtors.

5.  On January 28, 2009, the Debtors filed their Hedging Motion [Dkt. No. 2682] because they were "run[ning] the risk that movements in the financial markets could change the net amounts owing [under various "in the money" derivative contracts] and destroy the value available to the debtors' estates and stakeholders in these chapter 11 cases." Hedging Motion, ¶11. To offset this risk, the Debtors sought authority to "enter into a diverse range of trading or hedging transactions . . . that will serve as a hedge against any potential future loss in value under the applicable Derivative Contract." Hedging Motion, ¶12.

2

6. In their Hedging Motion, the Debtors sought complete authority to pledge property of the estate for secured credit in unlimited amounts in any manner they saw fit without the involvement or oversight of the Committee and without complying with Rule 4001(c) of the Bankruptcy Rules of Procedure (the "Bankruptcy Rules"). In this regard, the Debtors have failed to disclose: (a) the current value of the derivatives to be preserved, (b) the value of each Debtor's assets to be put at risk by being pledged to hedge derivative contracts, and (c) the types of Hedging Transactions and documents the Debtors will enter into for each Debtor.[1]

7. Elliott filed an objection to the Hedging Motion (the "Objection") [Dkt No. 2745] because, while it "sympathizes with the Debtors' desire to have the flexibility to lock in gains in their open in-the-money derivative positions in certain circumstances" it firmly believes that the Committee needs to be involved in the process to ensure that the Debtors' stakeholders' interests are protected. Elliott Objection ¶10.

## REQUESTED RELIEF

8. Despite the urgency cited by the Debtors in their Hedging Motion, they subsequently adjourned the hearing on such Motion because, upon information and belief, the Debtors and the Committee could not agree on what, if any, oversight responsibilities the Committee would have over the Hedging Transactions. In other words, while the Debtors admitted in the Hedging Motion that they need to enter into Hedging Transactions to avoid risk and to preserve the value of their derivatives contracts, they have risked that very value rather than allow the Committee to have an effective ability to monitor and approve/disapprove Hedging Transactions.

---

[1] The Debtors' failure and refusal to provide this basic information about their proposed transactions speaks for itself in respect of the Debtors' views of creditors' rights in these cases.

9. In the meantime, there is a complete lack of information available to the Debtors' stakeholders concerning the value of the derivative contracts, how that value relates to the overall value of the Debtors' estates and the types of Hedging Transactions proposed by the Debtors.

10. Creditors are left to make educated guesses about how much of the estates' property has been put at risk, or perhaps permanently lost, on account of the Debtors' delay in obtaining Court permission to enter into Hedging Transactions in an effort to avoid Committee oversight.[2] For example, as set forth in the chart annexed hereto as Exhibit A, the value of any interest rate swap agreements to which the Debtors are party may have been seriously affected by the benchmark 10-year swap rate rising from 2.5% at year-end to 3.01% on February 11 (the date that the Hedging Motion was originally scheduled to be heard) to 3.33% as of the close of February 2009.

11. While only the Debtors know the extent to which the interest rate increases described above may have impacted creditors' recoveries, given the extraordinary volatility of the markets in which the Debtors were historically active, it is likely that the derivative contracts subject to the Hedging Motion, which had a mark-to-market value of $9.4 billion as of September 12, 2008 (*see* excerpt from Alvarez & Marsal January 14, 2009 "The State of the Estate," annexed hereto as Exhibit B) have been subjected to weekly value swings of

---

[2] Although we have little recent disclosure from the Debtors concerning their derivatives portfolio, we can draw inferences from the Debtors' pre-bankruptcy disclosure and the public disclosure of other companies. For example, in the 10-K for the year ending December 31, 2008 and September 2008 10-Q (portions of which are attached hereto as Exhibits C and D, respectively), Citigroup Inc., which like the Debtors was a major dealer in interest rate, credit default and currency swaps, disclosed that the market value of its interest rate swap payables and receivables (before consideration of cash collateral posted), relative to notional exposure, increased by almost three-fold between September 30 and December 31, 2008. Such a market movement is completely without precedent and was driven by the historic collapse of interest rates that occurred in the fourth quarter. This movement almost certainly benefitted the Debtors in the fourth quarter when they were virtually powerless to manage their derivative positions. Unfortunately for the Debtors and their creditors, since December 2008 (and even in the past three weeks) rates have sharply reversed course putting much of this value at risk.

4

several hundred millions of dollars, if not well in excess of $1 billion, since the beginning of 2009, to the extent they remain unhedged.

12. Elliott requested in its Objection that the Debtors provide information essential for the Court and the Debtors' stakeholders to determine the reasonableness of the Debtors' request. The Debtors have informally responded to only certain of Elliott's questions, and have provided no assurance that they will disclose pertinent financial information sufficient to allow parties to make informed decisions about the Debtors' strategy with respect to the Hedging Transactions.

13. Instead, the Debtors adjourned the Hedging Motion, have continued to stonewall Elliott and presumably other parties, all the while, according to the Debtors own Motion, risking losses and diminishing creditors' hopes for a recovery.

14. Accordingly, if the Debtors adjourn the Hedging Motion again or refuse to cooperate with the Committee, Elliott will file an emergency motion requesting this Court grant the Committee the authority to direct the Debtors to enter into Hedging Transactions and the responsibility of overseeing such Transactions. If the Debtors determine to go forward with an appropriate protocol with the Committee, the Debtors should prioritize hedging positions in those products (such as rates and commodities) which are not directly correlated with the "cash" credit positions elsewhere in the estate (such as corporate loans, bonds and commercial real estate).

15. Regardless, creditors are entitled to know what the Debtors are risking in their efforts to avoid (a) the requirements of Bankruptcy Code section 364 and Bankruptcy Rule 4001 and (b) Committee oversight.[3]

---

[3] Indeed, the Debtors' elevation of a turf war with the Committee over the protection of their estates puts the Debtors at risk of gross mismanagement under Bankruptcy Code section 1104(a)(1).

NY3 3022609.2 900000 632732 3/4/2009 05:01pm

## **CONCLUSION**

WHEREFORE Elliott requests that this Court (a) condition the granting of the Hedging Motion on the Debtors providing the disclosures described above and granting the Committee oversight of the Hedging Transactions, and (b) grant Elliott such other and further relief as is equitable and just.

Dated: New York, NY
      March 4, 2009

DEWEY & LEBOEUF LLP

/s/ Irena Goldstein
Martin J. Bienenstock, Esq.
Irena Goldstein, Esq.
1301 Avenue of the Americas
New York, New York 10019
Telephone: 212.259.8000
Facsimile: 212.259.6333

Attorneys for Elliott Associates, L.P.,
Elliott International, L.P.,
The Liverpool Limited Partnership,
Springfield Associates LLC and Kensington International Limited

6