Hearing Date: March 11, 2009 at 10:00 a.m.
Objection Deadline: March 6, 2009 at 4:00 p.m.

James M. Wilton (*pro hac vice pending*)
James A. Wright III (JW 3007)
Aleksandar Zivanovic (*pro hac vice pending*)
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000: Telephone
(617) 951-7050: Facsimile

*Attorneys for Millennium International, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 15 |
| LEHMAN BROTHERS FINANCE AG, IN LIQUIDATION, a/k/a LEHMAN BROTHERS FINANCE SA, IN LIQUIDATION, | Case No. 09-10583 (JMP) |
| Debtor in a Foreign Proceeding. | |
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**OBJECTION TO MOTION TO DISMISS CHAPTER 11**
**CASE UPON RECOGNITION OF FOREIGN MAIN PROCEEDING**

Millennium International, Ltd. ("Millennium"), a creditor of Lehman Brothers Finance AG (a/k/a Lehman Brothers Finance SA) ("LBF"), by and through its undersigned counsel, submits its objection to the Motion Pursuant to Section 305 of the Bankruptcy Code for an Order Dismissing Chapter 11 Case Upon Recognition of Foreign Main Proceeding Under Chapter 15 (the "Motion") filed by PricewaterhouseCoopers AG, Zurich, as Bankruptcy Liquidator of LBF ("PwC"), and respectfully represents as follows:

11637309_14.DOC

**PRELIMINARY STATEMENT**

1.     This Court should deny PwC's Motion to dismiss LBF's chapter 11 case because, for the reasons set forth in detail in Millennium's Objection to Chapter 15 Petition for Recognition of Foreign Main Proceeding and Requested Relief, LBF's ongoing insolvency proceeding in Switzerland (the "Swiss Proceeding") is not entitled to recognition as a foreign main proceeding pursuant to section 1517(b) of Title 11, United States Code (the "Bankruptcy Code").  PwC has not requested dismissal of LBF's chapter 11 case in the event that the Swiss Proceeding is not recognized by this Court as a foreign main proceeding: "PwC recognizes that, as a foreign representative, it is entitled to seek dismissal of the Chapter 11 Case under sections 305(a)(2) and 305(b) only if the Court determines to grant the Chapter 15 Petition." See Motion at 11, n.8.

2.     Furthermore, even in the event of recognition of the Swiss Proceeding as either a foreign main proceeding or as a foreign non-main proceeding, dismissal of the chapter 11 case would not be warranted because the purposes of chapter 15 of this title would not be best served by such dismissal or suspension. See 11 U.S.C. § 305(a)(2), (b).  Contrary to PwC's assertions, continuing this case will promote the fair and efficient administration of LBF's liquidation and help maximize value for creditors by generating significant cost savings.  Specifically, it will be far more efficient and cost effective to continue LBF's chapter 11 case so that this Court can, among other things, address claims objections and disputes over the interpretation of LBF's English language contracts in English (rather than subjecting creditors to the Swiss Proceeding conducted in German), administer LBF's substantial assets in the United States, provide a convenient forum for LBF's many creditors located in the United States, expertly handle the many claims that will arise under New York law under LBF's New York law governed ISDA

contracts, efficiently handle intercompany claims, and coordinate settlements among common creditors of different Lehman Brothers entities with cases pending before this Court, including to administer a coordinated claims resolution process for both LBF and for Lehman Brothers Holdings, Inc. ("LBHI"), LBF's parent and guarantor of its obligations under hundreds, if not thousands, of derivatives contracts.

3. Dismissal of LBF's chapter 11 case in deference to the Swiss Proceeding would, by contrast, balkanize the bankruptcy cases of various Lehman affiliates, require Lehman affiliates in cases administered in the United States to file and litigate intercompany claims in German language proceedings in Switzerland, and result in potential loss of valuable assets as a substantially later filing date for the Swiss Proceeding and defendant friendly preference and fraudulent transfer avoidance laws in Switzerland diminish the value of LBF's assets. Accordingly, the Motion should be denied.

## BACKGROUND

**A.    General Background**

4. Millennium, an investment fund incorporated under the laws of the Cayman Islands, has a principal office located in New York City at 666 Fifth Avenue, New York, New York 10103.

5. Millennium is a party to a transaction with LBF (the "ISDA Contract"), as evidenced by the Share Option Confirmation Transaction dated December 21, 2007, with LBF's Netherlands Antilles Branch (the "ISDA Confirmation") and related documents.[1] The ISDA Contract is drafted in English under an ISDA Master Agreement, is governed by New York law,

---

[1] A copy of the ISDA Confirmation is attached as Exhibit A to the Objection to Chapter 15 Petition for recognition of Foreign Main Proceeding and Requested Relief ("Petition Objection") that is being filed contemporaneously herewith.

and provides that both Millennium and LBF consent to jurisdiction in New York for the resolution of any disputes related to the contract. In both the negotiation and administration of the ISDA Contract, Millennium conducted business exclusively in English with employees of Lehman Brothers located in New York, with the exception of one due diligence meeting that included a Lehman Brothers employee based in London.

6. Millennium had no contact with any Lehman Brothers employees based in Switzerland until after the filing of the LBHI chapter 11 case on September 15, 2008. In connection with the filing of the LBHI chapter 11 case, Millennium obtained the name of Markus Bormann, an LBF employee based in Switzerland, in response to inquiries about the status of the ISDA Contract. Mr. Bormann, although holding the title of Lehman Brothers Legal and Compliance Director, responded to Millennium that "we have no files regarding the millennium [sic] deal" and indicated that the documents for the Millennium ISDA Contract were located in New York.[2]

7. The ISDA Contract refers to LBF as "Lehman Brothers Finance, S.A., Netherlands Antilles Branch c/o Lehman Brothers, Inc. Fund Derivatives US Trading." ISDA Confirmation at 1. The ISDA Contract provides that payments to Seller are to be made by wire transfer to an LBF account with "Citibank N.A. 111 Wall Street, New York, NY." Id. at 16. The notice provisions of the ISDA Contract specify that notices are to be sent to "Lehman Brothers Finance, S.A., Netherlands Antilles Branch, De Ruyterkade 62, Curaco, Netherlands Antilles", with a copy by email to "Fundderivativesny@lehman.com" and to the attention of "Documentation Manager" at "Talstrasse 82, P.O. Box 2828, CH-8021 Zurich, Switzerland." Id. at 1.

---

[2] The email response from Markus Bormann is attached as Exhibit B to the Petition Objection that is being filed contemporaneously herewith.

11637309_14.DOC                           -4-

8. On October 3, 2008, LBF filed a petition for relief under chapter 11 of the Bankruptcy Code in this Court.

9. On February 10, 2009, PwC filed its petition seeking recognition of the Swiss Proceeding as a "foreign main proceeding" pursuant to chapter 15 of the Bankruptcy Code (the "Petition"). On the same date, PwC filed the Motion and a declaration in support of the Motion and Petition (the "Joint Declaration"). PwC asserts that, on October 29, 2008, it was appointed as Liquidator in the Swiss Proceeding pursuant to an order issued by the Swiss Federal Banking Commission ("SFBC"). Joint Declaration at ¶ 2.

10. Although PwC asserts that neither LBF's Board of Directors nor PwC approved the chapter 11 filing, PwC does not request dismissal of LBF's chapter 11 case on the basis that the filing was not authorized. See Motion at 11 and 12. Rather PwC requests dismissal of LBF's chapter 11 case only if its Petition for recognition of the Swiss Proceeding as a foreign main proceeding is granted: "PwC recognizes that, as a foreign representative, it is entitled to seek dismissal of the Chapter 11 Case under sections 305(a)(2) and 305(b) only if the Court determines to grant the Chapter 15 Petition." Id. at 11 n.8.

11. Since the commencement of LBF's chapter 11 case, and in reliance on the jurisdiction of this Court to resolve issues related to LBF's contracts, Millennium has engaged counsel in the United States in connection with the ISDA Contract. As contemplated under the venue and jurisdictional provisions of the ISDA Contract, on the date hereof, Millennium filed an adversary proceeding in this Court against LBF relating to certain prepetition transactions between Millennium, LBF, and certain third parties. Millennium has also filed an Objection to Chapter 15 Petition for Recognition of Foreign Main Proceeding and Requested Relief ("Petition Objection"), arguing that the Swiss Proceeding cannot be recognized as a foreign main

proceeding because PwC has failed to meet its burden of proof that LBF's center of main interests is Switzerland.

B.  **LBF's Connections with the United States and Switzerland**

12.  LBF is a wholly-owned subsidiary of LBHI. Joint Declaration at ¶ 5. Prior to its insolvency, PwC asserts that LBF maintained a registered office in Zurich, Switzerland, and kept certain unspecified books and records at this location. Id. at ¶ 7. Millennium's ISDA Contract refers to LBF "c/o Lehman Brothers, Inc. Fund Derivatives US Trading" and lists as a primary notice address an LBF office in the Netherlands Antilles. ISDA Confirmation at 1. LBF's Zurich, Switzerland, office is listed as a secondary address for notices and as the location of LBF's "Documentation Manager". Id. at 17.

13.  LBF was engaged in derivatives transactions with U.S. and foreign counterparties. Joint Declaration at ¶ 6. PwC asserts that "persons who managed the affairs of LBF" were located in Zurich, Switzerland, but fails to disclose the identity, number, or job descriptions of these individuals. Id. at ¶ 7.

14.  As Millennium dealt exclusively with New York and London based employees of Lehman Brothers with regard to the negotiation and administration of the ISDA Contract, Millennium contests that LBF's affairs were managed in Switzerland and asserts that any actions in Switzerland were ministerial, consisting of recording transactions and managing documents originated and negotiated by other Lehman affiliates. That LBF's affairs were managed from New York is not seriously disputed by PwC; PwC states that all of LBF's transactions "were reviewed and approved from its Zurich headquarters," but does not describe the substance of this review and approval process or assert that substantive negotiations or business decisions were conducted from Switzerland. Petition at ¶ 48. PwC also concedes that LBF's business was

entwined with multiple other Lehman entities and was "partially dependent upon services provided by other Lehman Brothers group companies based in the United States and the United Kingdom."  Id. at ¶ 8.

15.     Based on admissions by PwC, as of December 1, 2008, there were at least 55 United States counterparties of LBF with open positions.  Joint Declaration at ¶ 8.  PwC does not disclose how it determined whether a counterparty is located in the United States or elsewhere.  For example, Millennium is incorporated under the laws of the Cayman Islands but conducts its business operations in the United States.  PwC does not clarify whether its total of United States counterparties includes organizations like Millennium that are based in the United States but incorporated in foreign jurisdictions.  Except for the United States, PwC does not specify the number of counterparties in any other single country, including Switzerland.  PwC does not assert that even a single counterparty or creditor of LBF is located in Switzerland.

16.     Millennium is informed and believes that LBHI has guaranteed most if not all of LBF's derivatives transactions and is a substantial creditor of LBF and that other affiliates of LBHI, such as Lehman Brothers Special Finance, that have filed chapter 11 cases in the United States may also be creditors of LBF.

17.     PwC concedes that LBF has assets in the United States and seeks recognition of the Swiss Proceeding to protect these assets.  Petition at ¶ 53.  Although PwC states that it "has already done an in-depth investigation into LBF's assets and liabilities,"  PwC is vague concerning the location of the assets, stating that it "believes" the "majority" of LBF's assets "are outside the US, primarily in Switzerland."  Id. at ¶ 48.  PwC is also requesting authority, however, to seek discovery regarding LBF's assets in the United States, the status of which PwC describes as "currently uncertain."  Id. at ¶ 53.

18.  On information and belief, all or a substantial portion of the agreements governing LBF's derivative transactions are under ISDA Master Agreements written in English, governed by United States or English law, that include provisions consenting to jurisdiction either in New York or England.  Millennium is informed and believes that derivatives transactions under ISDA Master Agreements typically make applicable United States or English law.  Further, the standard form ISDA Master Agreement contains a forum selection clause that contemplates the selection of either New York or England as the appropriate dispute forum.

19.  On information and belief, lawsuits and claims disputes in the Swiss Proceeding would be conducted in German and would require translation of English language documents, travel to Switzerland, and the use of translators for English speaking witnesses.

**C.    Swiss Proceeding**

20.  The Swiss Proceeding, which commenced on October 29, 2008, was converted, effective as of December 22, 2008, into a bankruptcy liquidation and PwC was appointed as the bankruptcy liquidator.  Joint Declaration at ¶ 2.

21.  A bar date of February 27, 2009 was established for filing claims in the Swiss Proceeding (the "Swiss Bar Date").  Id. at ¶ 26.  Notice of the Swiss Bar Date was provided by letter to certain creditors and through the publication of notices in the Swiss Official Gazette of Commerce ("Official Gazette") and on websites maintained by PwC and the SFBC.  Id.  Notices published in the Gazette are deemed universally known.  Id. at ¶12.  These notices were published in German.  Id. at ¶12.  Claims filed after the Swiss Bar Date are not disallowed, but the late-filing creditor is required to bear costs relating to the late filing.  Joint Declaration at ¶ 28.

22. In the event of a dispute in the Swiss Proceeding as to the admission of a claim by a creditor, or the segregation of assets claimed to be owned by the creditor, a foreign creditor is obliged to seek relief by filing an action in the Swiss bankruptcy courts in Zurich, Switzerland. Id. at ¶ 27. To proceed in the Swiss Proceeding, a creditor must retain Swiss counsel, translate any relevant documents into German, and obtain translations with respect to testimony of English speaking witnesses.

**D.    Legal Background**

23. Bankruptcy Code section 305 provides that the Court may dismiss a case upon the motion of a foreign representative if a petition for recognition of a foreign proceeding pursuant to chapter 15 has been granted and "the purposes of chapter 15 of this title would be best served by such dismissal or suspension." 11 U.S.C. § 305(a)(2), (b).

24. Bankruptcy Code section 1501 lists a number of objectives, or purposes, for chapter 15:

> 1) "[C]ooperation between courts of the United States" and foreign courts involved in "cross-border insolvency cases";
>
> 2) [G]reater legal certainty for trade and investment;
>
> 3) [F]air and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>
> 4) [P]rotection and maximization of the value of the debtor's assets; and
>
> 5) [F]acilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a).

# ARGUMENT

A. **The Motion Must Be Denied Because the Swiss Proceeding is Not Entitled to Recognition as a Foreign Main Proceeding**

25. This Court should deny PwC's Motion to dismiss LBF's chapter 11 case because, for the reasons set forth in detail in Millennium's Petition Objection, the Swiss Proceeding is not entitled to recognition as a foreign main proceeding pursuant to section 1517(b) of the Bankruptcy Code. PwC has not requested dismissal of LBF's chapter 11 case in the event that the Swiss Proceeding is not recognized by this Court as a foreign main proceeding.

B. **The Motion Must be Denied Because Dismissal of the Chapter 11 Case Would be Inefficient and Would Fail to Protect Creditors and the Value of LBF's Assets**

26. PwC concludes that dismissal of this case is appropriate in light of the third and fourth objectives set forth in Bankruptcy Code § 1501(a) – fair and efficient administration of cross-border insolvencies and the maximization of assets.[3] See Motion at ¶ 24. However, PwC provides no arguments or evidence to support this conclusion other than statements that re-hash PwC's arguments in the Petition against the status of the United States as LBF's center of main interests. To that end, PwC asserts only that (a) "[m]ost of LBF's creditors and assets are located outside the United States," (b) LBF "has no employees or offices in the United States," and (c) LBF's "books and records" are in Switzerland.

27. As discussed in detail in Millennium's objection to the Petition, based on the available evidence LBF has more connections to the United States than any other jurisdiction, including Switzerland, and the United States is therefore LBF's center of main interests.

---

[3] In both the Motion and Petition, PwC details the commencement of the Swiss Proceeding and this chapter 11 case, focusing in particular on the facts concerning the authorization of the filing of the petition initiating this case. Although PwC goes to great effort to describe these facts, PwC has not alleged that the commencement of this case was improper in any respect and is not seeking a dismissal on that basis.

11637309_14.DOC                                          -10-

However, even if the United States were not the center of main interests for LBF (which it is), it would still be more efficient and cost effective to continue LBF's chapter 11 proceeding rather than dismissing it.

28. The costs and inefficiencies involved for PwC, an international firm, having to participate in a chapter 11 case in this jurisdiction pale in comparison to the collective costs and inefficiencies involved in requiring that LBF creditors located in the United States and other countries outside of Switzerland must participate in the Swiss Proceeding. As discussed in detail in the Petition Objection, the available evidence and PwC's own admissions establish that there are many LBF creditors in the United States, perhaps more than in any other single jurisdiction. By contrast, PwC has presented no evidence that there are any LBF creditors in Switzerland. To participate in the Swiss Proceeding, LBF's creditors will be forced to retain Swiss counsel and actively participate in the Swiss Proceeding from afar. The cost to all the United States creditors of participating in the Swiss Proceeding is far greater than the cost for PwC to participate in this case. Indeed, Millennium suspects the cost to PwC would be minimal, as PwC's affiliates have offices throughout the United States. And, by bringing the Petition and Motion, PwC has already demonstrated that it is more than capable of appearing before this Court.

29. Further, due to LBF's derivatives business, many of the disputes and relevant agreements for LBF's insolvency proceedings will involve interpretation of ISDA Master Agreements (and related confirmations) written in English and governed by the laws of the United States (or England). Continuing LBF's chapter 11 case provides an appropriate and efficient forum for interpreting these documents and resolving the legal issues they will raise. Handling contract disputes in the Swiss Proceeding, on the other hand, would involve substantial extra expense in translating the relevant documents into German, transporting English speaking

witnesses to Switzerland, hiring interpreters, and providing the Swiss courts with expert witnesses regarding the applicable law.

30. Continuing LBF's chapter 11 case also provides a convenient forum for this Court to administer LBF's assets in the United States, including valuable derivatives contracts with counterparties that are located in the United States. Indeed, PwC has, by its actions, acknowledged that this Court is the best forum for dealing with these assets, as PwC in filing the Petition is seeking authority to investigate and administer these assets in this Court. See Petition at ¶ 53-54.

31. LBF's substantial interrelationships with other Lehman Brothers entities with chapter 11 cases in before this Court also militate against dismissal of the LBF chapter 11 case. LBHI is a guarantor of hundreds, if not thousands, of LBF's derivatives contracts. As a result, efficiency is promoted by a unified claims resolution process for LBHI and LBF. Dismissal of the LBF chapter 11 case would require LBF's creditors to file and prosecute the same claims in two different jurisdictions under different sets of rules, using different attorneys, in different languages. Creditor settlements involving both LBF and another Lehman entity with a chapter 11 case pending in this court would become difficult to resolve, requiring simultaneous approval orders from courts in Switzerland and the United States. In addition, LBHI itself would incur potential expense of litigation in Switzerland over allowance of subrogation claims in respect of its guarantees and other intercompany claims. Other Lehman entities with intercompany claims against LBF would incur similar expense and problems. It will be much more efficient and cost effective to have this Court address these intercompany issues, both for LBF and for the other Lehman Brothers entities in chapter 11.

32. Additionally, because the LBF chapter 11 case has been pending since October, certain creditors may have relied on the pendency of this case in taking actions to protect their interests. No bar date has been set in this case or any of the other Lehman Brothers chapter 11 cases, but as noted above the bar date for filing claims in the Swiss Proceeding has already passed. While PwC asserts the Swiss bar date does not prevent the late-filing of claims, the Joint Declaration makes clear that late claims are prejudiced by having to pay expenses relating to the claims. Further, PwC has been the representative for the Swiss Proceeding since October, but is only now seeking to dismiss LBF's chapter 11 case. Given the circumstances, it would be unfair to penalize the creditors who relied on LBF's chapter 11 case and the lack of a bar date therein by now dismissing this case.

33. Finally, dismissal of the LBF chapter 11 case will result in potential loss of valuable causes of action that LBF has under the Bankruptcy Code due both to the substantially later filing date of the Swiss Proceeding as well as more defendant friendly provisions of the Swiss equivalent of U.S. fraudulent transfer and preference avoidance law.[4] For these reasons, dismissal of the LBF chapter 11 case will result in substantial detriment to creditors and the LBF estate.

---

[4] For example, Millennium is informed and believes that Swiss law applicable to avoidance of preferences does not permit avoidance of cash transfers for matured debts and creates a defense to avoidance if the beneficiary of a transfer did not know and did not have reason to be aware of the debtor's insolvency. Millennium is further informed and believes that recovery of fraudulent transfers under Swiss law requires proof of the states of mind of both the transferor and the transferee that can create evidentiary problems not present under U.S. law.

WHEREFORE, Millennium respectfully requests that this Court deny the Motion and grant such other and further relief as this Court deems just and proper.

| | |
|---|---|
| Dated: New York, New York<br>March 6, 2009 | ROPES & GRAY LLP<br><br>By: */s/ James A. Wright III*<br>James M. Wilton (*pro hac vice pending*)<br>James A. Wright III (JW 3007)<br>Aleksandar Zivanovic (*pro hac vice pending*)<br>  ROPES & GRAY LLP<br>  One International Place<br>  Boston, Massachusetts 02110-2624<br>  (617) 951-7000: Telephone<br>  (617) 951-7050: Facsimile |