James M. Wilton (pro hac vice pending)
Peter L. Welsh (pro hac vice pending)
James A. Wright III (JW 3007)
Michael J. Howe (pro hac vice pending)
ROPES & GRAY, LLP
One International Place
Boston, MA  02110-2624
Phone: (617) 951-7000
Facsimile: (617) 951-7050

*Attorneys for Millennium International, Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | : | Case No. 08-13555 (JMP) |
| | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |

___

| | | |
|---|---|---|
| | : | |
| MILLENNIUM INTERNATIONAL, LTD. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adversary No. 09-_____ |
| | : | |
| LEHMAN BROTHERS FINANCE, SA and | : | |
| KBC INVESTMENTS CAYMAN ISLANDS V LIMITED | : | |
| KBC INVESTMENTS LIMITED and | : | |
| KBC FINANCIAL PRODUCTS USA, INC. and | : | |
| KBC FINANCIAL PRODUCTS UK LIMITED and | : | |
| SOMERS DUBLIN LTD. A/C KBC PLEDGED | : | |
| TO LEHMAN BROTHERS FINANCE SA | : | |
| | : | |
| Defendants. | : | |

___

**ADVERSARY COMPLAINT FOR DECLARATORY
JUDGMENT AND EQUITABLE RELIEF**

1.  Millennium International, Ltd. ("Millennium" or the "Fund"), by its undersigned

attorneys, for its complaint against Lehman Brothers Finance, S.A. ("LBF" or "Lehman"),

Somers Dublin Ltd. A/C KBC pledged to Lehman Brothers SA ("Somers" or the "Subscribing Party") KBC Investments Cayman Islands V Limited, KBC Investments Limited, KBC Financial Products USA, Inc., and KBC Financial Products UK Limited (collectively "KBC"), hereby alleges as follows:

## PRELIMINARY STATEMENT

2.    Millennium, an investment fund, brings this adversary proceeding to recover investment equity belonging to the Fund. In December of 2007, Millennium entered into an financial arrangement (the "Investment") with LBF designed to provide the equivalent of a three-times leveraged return on an investment of $37,500,000 of the Fund's money. LBF's role in the Investment was to provide the necessary leverage – $75,000,000 worth – in exchange for interest on the loan.

3.    The Investment was effected through the use of a derivative contract structured as a "call option" under an ISDA Master Agreement (the "ISDA Contract") and a subscription for shares in the Fund. In exchange for LBF's obligations under the ISDA Contract and the payment by LBF of $75,000,000 in cash, Millennium issued LBF $112,500,000 worth of shares in the Fund (the "Investment Shares" or the "Shares"). Thus, of the $112,500,000 total Investment, $75,000,000 was invested by LBF and $37,500,000 was invested by Millennium. Upon termination of the ISDA Contract, LBF became obligated to pay Millennium the current value of the $112,500,000 Investment in the Fund minus a "Strike Price" (representing the $75,000,000 of leverage contributed by LBF plus interest on the loan). This payment would result in Millennium's recovery of its $37,500,000 equity contribution, plus any return (or minus any loss) on the Investment as a whole (Millennium's "Equity").

4.  The Investment Shares were issued to LBF in two installments: The first represented the leverage provided by LBF ($75,000,000). The second represented Millennium's initial equity contribution ($37,500,000). The Investment Shares served both to hedge LBF's exposure under the ISDA Contract, and because Millennium was the issuer of the Shares, as credit support for LBF's obligations under the ISDA Contract.

5.  As contemplated by the parties, when the Investment ended, Millennium would recover the amount owed to it under the ISDA Contract from the redemption proceeds of the Investment Shares issued to LBF. This amount due to Millennium – its Equity – would represent its $37,500,000 initial contribution plus any return (or minus any loss) on the full Investment amount. For its part, LBF would be returned the $75,000,000 it contributed as leverage, plus an interest payment (calculated in dollars at a rate equal to LIBOR-BBA).

6.  In the Spring of 2008, in an effort to raise financing, LBF entered into an arrangement with a third party, KBC, whereby it sought to transfer ownership of the Investment Shares to KBC (through KBC's nominee, Somers). In order to effect such a transfer, LBF was required to obtain Millennium's consent, which Millennium could decline to give in its sole and absolute discretion. In late May of 2008, LBF attempted to secure Millennium's consent for this transfer, but Millennium's consent was not obtained and the Investment Shares were not transferred at this time.

7.  In September of 2008 – and prior to the filing for bankruptcy protection by LBF's parent, Lehman Brother's Holdings, Inc. ("LBHI") – Millennium attempted to unwind the Investment and secure the return of its Equity. At this time, LBF informed Millennium that, according to its books, the Investment Shares had already been transferred to KBC – despite the fact that Millennium had never approved any transfer to KBC – and that KBC's cooperation

-3-

would therefore be necessary to unwind the Investment. Furthermore, LBF informed Millennium at that time that KBC would only cooperate in unwinding the Investment if Millennium first assented to and formally authorized the title transfer of the Shares to KBC. LBF promised that if the Fund authorized the transfer, LBF and KBC would immediately unwind the Investment and return Millennium's Equity. In reliance on these promises, Millennium approved the transfer of the Shares to KBC on September 11, 2008 by updating the Fund's register of members – thereby making the transfer effective – and shortly thereafter circulated the documents necessary to unwind the Investment.

8. On September 15, 2008, before the necessary documents had been signed, LBHI filed for bankruptcy protection, and both LBF and KBC refused to take any further steps to unwind the Investment and return Millennium's Equity. LBF itself filed for Chapter 11 bankruptcy protection on October 3, 2008. KBC (through its nominee, Somers) now seeks to redeem all of the Investment Shares, *including the portion representing Millennium's Equity*.

9. Millennium approved the transfer of the Investment Shares to KBC on September 11, 2008 – something it had no obligation to do – for the sole purpose of effecting an immediate wind-up of the Investment and the return of its Equity. As consideration for Millennium's approval of the transfer, LBF and KBC agreed to allow Millennium to recoup its Equity from the proceeds of the subsequent sale or redemption of the Investment Shares. KBC was never entitled to the full value of the Investment Shares, only the portion representing LBF's leverage contribution. KBC's retention of the full Investment proceeds was never contemplated by the parties, would leave Millennium with nothing in the transfer, would deprive Millennium of its Equity in the Investment, and would result in the unjust enrichment of KBC at Millennium's expense.

10. Millennium therefore respectfully requests that this court enforce the understanding between the parties and prevent such an unjust outcome by declaring that Millennium is entitled to recover its Equity from the proceeds of the redemption of the Investment Shares.

## JURISDICTION AND VENUE

11. This is a civil proceeding arising in a case under the United States Bankruptcy Code, 11 U.S.C. §101 *et seq.* (the "Code"), within the meaning of 28 U.S.C. § 1334. It is properly brought as an adversary proceeding pursuant to Bankruptcy Rule 7001.

12. This Court has jurisdiction of this adversary proceeding under 28 U.S.C. §§157 and 1334.

13. This is a core proceeding as it relates to the Debtor, and a related-to proceeding as it relates to KBC and Somers, pursuant to 28 U.S.C. §§157(b)(2) and 157 (b)(3).

14. Venue of this adversary proceeding is proper in this District under 28 U.S.C. §1409(a).

## THE PARTIES

15. Plaintiff Millennium International, Ltd. ("Millennium") is a Cayman Islands Exempted Company with its registered office on Grand Cayman, Cayman Islands.

16. Defendant and Debtor Lehman Brothers Finance, S.A. ("LBF") is a Swiss *societe anonyme* and a wholly owned subsidiary of LBHI.

17. "Somers Dublin Ltd. a/c KBC pledged to Lehman Brothers Finance SA" ("Somers" or the "Subscribing Party") is the name officially listed as the "Subscriber" for all of the Investment Shares. Somers Dublin Ltd. is a private company limited by shares and organized under the laws of Ireland. Upon information and belief, it is affiliated with HSBC

Institutional Trust Services (Ireland) Ltd. ("HSBC").  Upon information and belief, the Subscribing Party is a custodial account at HSBC opened on behalf of KBC and intended to hold securities pledged to LBF.

18. KBC Investments Cayman Islands V Limited ("KBC Cayman") is a private company with its registered office in Georgetown, Cayman Islands.  Upon information and belief, KBC Cayman participated in opening the custodial account at HSBC (Somers) which eventually became the title holder of the Shares.

19. KBC Investments Limited ("KBCI") is a private company with its registered office in London, England.  Upon information and belief, KBCI has an ownership interest in the Investment Shares and has pledged the Shares to LBF pursuant to a contract between KBCI, LBF, and other parties.

20. KBC Financial Products USA, Inc. ("KBCFP USA") is a Delaware Corporation headquartered in New York, New York.  Representatives of KBCFP USA participated in telephone discussions with representatives of Millennium in New York concerning unwinding the Investment in or around September 2008.

21. KBC Financial Products UK Limited ("KBCFP UK") is private company with its registered office in London, England.  KBC FP is the parent company of the entities listed in paragraph 18-20.  Representatives of KBC FP have made inquiries regarding the Investment Shares (including requesting performance statements) to Millennium in New York on behalf of Somers.

22. All of the KBC entities listed in paragraphs 18-21 (collectively "KBC") are subsidiaries of KBC Group NV, a Belgian limited liability company.  Upon information and belief, these four KBC entities share employees and function as an integrated group.

# FACTUAL BACKGROUND

### *The Structure of the Investment*

23. Millennium is a private investment fund managed by Millennium International Management LP, an investment adviser based in New York, New York. As a part of a deferred compensation program for certain executives, Millennium has, over the years, entered into agreements with various counterparties for the purposes of making structured investments in the Fund. LBF was one such counterparty.

24. In late 2007, Millennium and LBF negotiated a structured investment arrangement – the Investment – whereby LBF would provide $75,000,000 of leverage to Millennium, in addition to $37,500,000 provided by Millennium, to facilitate an investment of $112,500,000 in the Fund.

25. The Investment was structured through the use of a confirmation to an ISDA Master Agreement and a corresponding issuance of shares in the Fund. The ISDA Contract, styled a "call option," was executed by Millennium and LBF and had an effective date of January 2, 2008. In exchange for LBF's obligations under the ISDA Contract and $75,000,000 in cash from LBF, Millennium issued $112,500,000 worth of shares in the Fund – the Investment Shares – to LBF. Thus, of the $112,500,000 Investment, two thirds ($75,000,000) consisted of LBF's leverage contribution and one third ($37,500,000) consisted of Millennium's initial equity.

26. Upon termination of the ISDA Contract, LBF would be obligated to pay Millennium the current total value of the Investment (initially worth $112,500,000) minus the ISDA Contract's Strike Price. The Strike Price was initially set at $75,000,000 and accreted over time; the accretion represented interest earned by LBF on the $75,000,000 in leverage it was providing to facilitate the Investment. Thus, upon termination of the ISDA Contract, LBF would

owe Millennium an amount equal to its initial $37,500,000 contribution plus any return (or minus any loss) on the Investment as a whole, less financing costs.

27.     The Investment Shares were issued to LBF in two installments.  Initially, LBF completed a subscription agreement for $75,000,000 worth of shares in the Fund on December 27, 2007 (the "Subscription Agreement").  On page eight of the Subscription Agreement, in response to the question "Are you providing leverage for another party on whose behalf this investment is made?" LBF checked the "yes" box.  On January 2, 2008, LBF wired $75,000,000 to Millennium and was issued $75,000,000 worth of shares in the Fund, representing the amount of leverage LBF had provided.  This portion of the Investment Shares served both to hedge LBF's exposure under the ISDA Contract and to provide credit support for LBF's obligations under the ISDA Contract.  Under the ISDA Contract, the Subscription Agreement is listed as a "Credit Support Document."

28.     The next day, January 3, 2008, Millennium issued the second installment of the Shares to LBF, an additional $37,500,000 worth of shares representing Millennium's initial equity contribution in the Investment.  In total, the Investment Shares consisted of 112,500 Class Z shares in Millennium, worth an initial value of $112,500,000.  Class Z shares are a class of shares that are issued to counterparties in structured investments such as this one.

29.     Upon termination of the ISDA Contract, LBF would be obligated to pay Millennium its Equity in the Investment, an amount equal to Millennium's $37,500,000 initial contribution plus any return (or minus any loss) on the Investment Shares.  As contemplated by the parties, LBF would satisfy this obligation by redeeming the Investment Shares, at which time Millennium would retain a portion of the redemption proceeds equal to its Equity in the Investment – i.e., the amount LBF owed Millennium under the ISDA Contract – and return to

LBF the remainder, an amount representing the $75,000,000 LBF provided as leverage, plus interest (represented by the accreting component of the Strike Price).

30. As structured, the Investment Shares – which at all times remained invested in the Fund – served as credit support for LBF's obligations under the ISDA Contract. Had LBF defaulted on its obligations under the ISDA Contract, Millennium would have been entitled, under the terms of the ISDA Contract, to set off LBF's obligations under the ISDA Contract against LBF's claims on the redemption of the Investment Shares.

### *LBF Proposes Change in Title of Investment Shares*

31. In May of 2008, LBF requested that title to the Investment Shares be transferred from LBF to a third party – KBC. Specifically, LBF requested that Millennium authorize a simultaneous redemption and reissue of the Investment Shares whereby the new Subscribing Party for the Investment Shares would become "Somers Dublin Ltd. a/c KBC pledged to Lehman Brothers Finance SA," a custodial account maintained at HSBC for KBC. Upon information and belief, LBF's request to transfer title to the Shares to KBC was made as a part of a financing transaction between LBF and KBC.

32. In a May 20, 2008 email requesting the change in title, LBF's representative for the Investment, Mark Quaglia, explained to representatives of Millennium that despite the proposed change in the name of the Subscribing Party, "*[t]he ultimate beneficial holder of the shares will remain unchanged*." (emphasis added). Because LBF was to remain the ultimate beneficial holder of the shares, Quaglia asked that Millennium not impose a new lock-up period or redemption fee.

33. Under the terms of Millennium's Articles of Association and the Subscription Agreement, shares in Millennium cannot be transferred without Millennium's consent. Under

the terms of the Subscription Agreement, LBF could not "resell, reoffer or transfer any Shares or any interest therein, except with the prior written consent of the Fund," and such consent "may be withheld in the sole discretion" of the Fund. The Subscription Agreement also makes clear that "a transfer may only be effected on the books of the Fund" and that, in deciding whether to approve a transfer, the Fund may request any "documents, representations or undertakings as [the Fund] deems appropriate, in its sole discretion."

34. Accordingly, in response to LBF's request, Millennium requested that LBF and KBC submit certain documentation relating to the proposed transfer of title, including a redemption request, a new subscription agreement, and documents reflecting the assignment and pledging of the Investment Shares between LBF and KBC.

35. While Millennium received a new subscription agreement in the name of Somers, neither LBF nor KBC provided Millennium with adequate documentation regarding the assignment and pledging of the Investment Shares between KBC and LBF. Despite several attempts by Millennium representatives to obtain the necessary documentation, LBF and KBC never provided the necessary documents. As a result, Millennium did not authorize, and its administrator did not process, any redemption, new subscription, or transfer relating to the Investment Shares. No money was tendered by or distributed to either LBF or KBC, and the Investment Shares remained registered to LBF. No transfer or simultaneous redemption/subscription occurred at this time.

*Millennium Seeks to Unwind the Investment in September*

36. In early September of 2008, Millennium resolved to unwind the Investment with LBF and transfer its Equity to a new counterparty. When Millennium approached LBF about unwinding the Investment, LBF informed Millennium that, according to its books, title to the

Investment Shares belonged to KBC, not LBF, and that therefore KBC's cooperation would be necessary to unwind the Investment. Because LBF needed Millennium's consent to transfer the shares to KBC, however, no transfer had actually occurred. Furthermore, under both the Subscription Agreement and the Fund's Articles of Association, the Fund had no obligation to recognize any equitable interest in the Shares that KBC might have claimed by virtue of its transaction with LBF.

37. In a September 9, 2008 email, Brian Tierney of Millennium suggested to Mark Quaglia of LBF that, given the circumstances, the simplest way to unwind the Investment would be for LBF to abandon its attempt to transfer the shares to KBC and transfer them instead directly to the new counterparty.

38. In a reply email the following morning, September 10, 2008, Quaglia rejected the idea of abandoning the transfer to KBC. Referring to the failure of KBC to provide the necessary documentation regarding the pledge of shares between KBC and LBF, Quaglia instead suggested that "since we're redeeming the shares and now scrapping the need for the pledge . . . we should act as if there was never a pledge involved." He continued: "Thus, your admin/inv relations group should issue the contract note to KBC (no need for them to consent to a pledge by KBC) and then we'll submit the redemption notice and wind [sic] the trade." In other words, LBF told Millennium that if it authorized the transfer of the Investment Shares to KBC – and waived its demands for certain documentation regarding the pledge between LBF and KBC – LBF and KBC would then immediately unwind the Investment and return Millennium's Equity.

39. Millennium's consideration for authorizing this transfer of the Investment Shares was the return of its Equity. But for the promised return of its Equity, Millennium would never have authorized the transfer of the Investment Shares.

40. In reliance on this agreement between all the parties and in an effort to secure the return of its Equity as expeditiously as possible, Millennium instructed its administrator on September 11, 2008 to waive Millennium's standard documentation requirements and process a transfer of the Investment Shares from LBF to KBC's nominee, Somers (the "Transfer"). On that same day, at approximately 11:00 a.m., Millennium's administrator issued a transfer contract note officially documenting the Transfer. When asked by a representative of Millennium whether the change in title had been processed as a "transfer/switch or a redemption/subscription," Millennium's administrator confirmed that it was "processed as a transfer since there was no change in beneficial ownership and fees did not crystallize."

41. Somers accordingly took title to the Investment Shares exactly as they had been issued to LBF. They remained Class Z shares. No new lock-up period was imposed. No redemption fees were assessed. No money changed hands. And LBF's acknowledgment in its original Subscription Agreement that it was investing in the Shares on behalf of another party (Millennium) remained operative.

42. As the Transfer was being processed, LBF and Millennium both worked to finalize the transactional documents necessary to complete the unwinding of the Investment. LBF drafted a termination agreement for the ISDA Contract, and Millennium worked with the new counterparty to draft assignment and asset transfer agreements whereby KBC (through Somers) would assign all of the Investment Shares to the new counterparty in exchange for a payment by the new counterparty of $77,201,258.07, the value of the accreted Strike Price of the ISDA Contract as of September 11, 2008.

43. Drafting and negotiation of the agreements that required Somer's signature were completed on Friday, September 12, 2008, and LBF attempted to obtain the necessary signatures

from Somers that afternoon. The necessary representatives at Somers were not available on Friday afternoon and Millennium and LBF agreed to follow up first thing Monday morning.

### *Lehman Brothers Files Chapter 11, Thereby Preventing Completion of the Unwind*

44. In the early morning hours on Monday, September 15, 2008, LBF's parent company, LBHI announced its plans to file for protection under Chapter 11 of the United States Bankruptcy Code. A Chapter 11 petition was filed when the courts opened that morning.

45. The following day, September 16, 2008, Brian Tierney of Millennium spoke with New York-based representatives of KBC by telephone. These representatives informed Tierney that they would like to be able to assist Millennium in completing the unwinding of the Investment but could not do so without permission from LBF. In an email to Millennium later that day, Mark Quaglia of LBF informed Millennium that he had been told not to "trade or give instructions on our trades" and "as a result we can't instruct KBC to sell *your* shares nor can we release the security interest over the shares as they have pledged them to us" (emphasis added). LBF itself filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code on October 3, 2008.

46. Millennium agreed, on September 11, 2008, to approve the transfer of the Investment Shares to KBC – something it was under no obligation to do – solely for the purpose of immediately unwinding the Investment and securing the return of its Equity. KBC understood that this was the sole purpose of the Transfer. Had the unwinding of the Investment been completed as planned on September 15, 2008, KBC would have received approximately $77 million in exchange for its assignment of all the Investment Shares to the new counterparty.

47. Despite KBC's understanding of the terms of the Investment and the conditions upon which Millennium agreed to the Transfer, KBC is now seeking to redeem all of the

-13-

Investment Shares. Specifically, on October 15, 2008, KBC (via Somers) submitted a redemption request for all of the Investment Shares, *including the shares that represent Millennium's Equity in the Investment*. If KBC were permitted to redeem all of the Investment Shares – currently worth over $100 million – KBC would receive a windfall in excess of $30,000,000. KBC would be receiving an amount representing not only the leverage originally provided by LBF, but also Millennium's Equity. Such an outcome was never contemplated by the parties, including KBC, and would be grossly inequitable.

48. Under no circumstances is KBC entitled to redeem the portion of the Investment Shares representing Millennium's Equity.

### *LBF's Retention of Ownership Interest in the Investment Shares*

49. The Transfer was eventually authorized by Millennium with the understanding, based on representations from LBF, that LBF remained the beneficial owner of the Investment Shares. At the moment, the Investment Shares are officially registered to a Subscribing Party by the name of "Somers Dublin Ltd. a/c KBC pledged to Lehman Brothers Finance SA." As the name of the Subscribing Party confirms, LBF continues to retain at least a security interest in the Investment Shares. Mark Quaglia of LBF confirmed the existence of this security interest in his September 16, 2008 email to Millennium in which he wrote that LBF could not "release the security interest over the shares as [KBC] have pledged them to us."

50. On December 22, 2008, Millennium officially terminated the ISDA Contract, thereby obligating LBF – which had previously filed for bankruptcy – to pay Millennium $31,489,394. To the extent of LBF's retained interest in the Investment Shares or right to reclaim the shares, Millennium has a right – under both the United States Bankruptcy Code and New York law – to setoff a portion of the redemption proceeds of the Shares in satisfaction of

the amount owed to Millennium by LBF. For this wholly independent reason, KBC must not be allowed to redeem the Investment Shares until the nature and extent of LBF's continued ownership interest in the Investment Shares can be determined.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

51. Millennium repeats and re-alleges paragraphs 1 through 50 as if fully set forth herein.

52. At all times, Millennium had complete discretion to approve or deny the transfer of shares in the Fund and to approve or deny any new subscriptions to the Fund. Accordingly, Millennium was under no obligation to consent to the transfer of the Investment Shares from LBF to KBC.

53. Millennium had a significant interest in who received title to the Investment Shares in light of the fact that a portion of the Investment Shares represents Millennium's Equity in the Investment and in light of the fact that the Shares served as credit support for LBF's obligations under the ISDA Contract.

54. The Transfer of title to the Shares (worth well over $100 million at the time) was of significant value to KBC and LBF.

55. In consideration for Millennium's approval of the transfer of the Shares, LBF and KBC promised to immediately unwind the Investment and return Millennium's Equity by allowing Millennium to recoup the amount owed to it by LBF under the ISDA Contract from the proceeds of the subsequent sale or redemption of the Shares.

56. This exchange of promises created an oral contract among the parties.

57. Millennium performed its obligations under the oral contract by authorizing the transfer of the Shares from LBF to KBC.

58. KBC now seeks to redeem the full value of the Shares, in breach of its obligations under the oral contract.

59. This breach is material and willful on KBC's part and would substantially defeat the purpose of the oral contract.

## SECOND CAUSE OF ACTION
### (Failure of Consideration)

60. Millennium repeats and re-alleges paragraphs 1 through 50 as if fully set forth herein.

61. In consideration for Millennium's authorization of the Transfer, LBF and KBC were supposed to immediately unwind the Investment and return Millennium's Equity.

62. The Investment has not been unwound and Millennium's Equity has not been returned.

63. There has therefore been a failure of consideration for the Transfer, and Millennium should be excused from honoring the Transfer and subsequent redemption request by KBC. The Transfer of the Shares should be rescinded and the parties restored to the status quo ante.

## THIRD CAUSE OF ACTION
### (Want of Consideration)

64. Millennium repeats and re-alleges paragraphs 1 through 50 as if fully set forth herein.

65. Millennium authorized the Transfer of the Investment Shares from LBF to KBC, something it was under no obligation to do and which was of significant value to LBF and KBC.

66. Millennium has received nothing of value in consideration for authorizing the Transfer.

67. In light of the complete want of consideration for the Transfer, equity demands that the Transfer be rescinded or a constructive trust with respect to the Shares be imposed.

### FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

68. Millennium repeats and re-alleges paragraphs 1 through 50 as if fully set forth herein.

69. A portion of the Investment Shares represents Millennium's Equity in the Investment, and at no time was it contemplated by any of the parties that KBC would be entitled to redeem that portion of the Investment Shares.

70. If KBC were to retain the full proceeds of the redemption of the Investment Shares, including the portion representing Millennium's Equity, KBC would be unjustly enriched at the expense of Millennium. It would be against equity and good conscience to allow KBC to redeem the full proceeds of the Shares.

### FIFTH CAUSE OF ACTION
### (Promissory Estoppel)

71. Millennium repeats and re-alleges paragraphs 1 through 50 as if fully set forth herein.

72. LBF and KBC promised that if Millennium approved the transfer of the Shares from LBF to KBC, the Investment would be immediately unwound and Millennium's Equity would be returned.

73. Millennium relied on these promises when it approved the Transfer.

74. This reliance was reasonable under the circumstances.

75.     If KBC is permitted to redeem the portion of the Investment Shares representing Millennium's Equity, Millennium will be injured. KBC should therefore be estopped from seeking to retain the redemption proceeds from the portion of the Shares representing Millennium's Equity.

## SIXTH CAUSE OF ACTION
### (Declaratory Judgment: Right of Set Off Against Debtor)

76.     Millennium repeats and re-alleges paragraphs 1 through 50 as if fully set forth herein.

77.     LBF currently owes Millennium $31,489,394 under the terms of the ISDA Contract.

78.     LBF retained an ownership interest in the Investment Shares subsequent to the Transfer.

79.     To the extent of LBF's continued ownership interest in or right to reclaim title to the Investment Shares, Millennium is entitled to set off mutual obligations between Millennium and LBF by using the Shares to satisfy LBF's obligations under the ISDA Contract.

80.     Millennium therefore seeks a declaration by the Court that it need not honor KBC's pending redemption request until, at the very least, the nature and extent of LBF's continuing ownership interest in the Shares can be determined.

## PRAYER FOR RELIEF

WHEREFORE, Millennium respectfully requests that the Court enter judgment:

a)     Finding that KBC has breached or intends to breach its agreement to unwind the Investment and return Millennium's Equity.

08-13555-mg    Doc 3010    Filed 03/06/09    Entered 03/06/09 15:45:59    Main Document
Pg 19 of 19

b) Ordering specific performance of KBC's obligations under the oral contract by permitting Millennium to recover its Equity from the proceeds of KBC's pending request for redemption of the Investment Shares.

c) Ordering that KBC be estopped from redeeming the portion of the Investment Shares representing Millennium's Equity and thereby unjustly enriching itself at Millennium's expense.

d) Ordering that KBC not be allowed to redeem the Investment Shares pending a determination by the Court of the nature and extent of LBF's continued ownership interest in the Shares.

e) Imposing a constructive trust against Somers with respect to the portion of the Investment Shares representing Millennium's Equity.

f) Ordering rescission of the Transfer.

g) Awarding damages to Millennium in the amount of $31,489,394, plus interest, attorneys fees, and costs.

h) Granting plaintiff such other and further relief as the Court may deem proper.

Dated:  March 6, 2009
New York, New York

ROPES & GRAY LLP

By: */s/ James A. Wright III*
James M. Wilton
Peter L. Welsh
James A. Wright III (JW 3007)
Michael J. Howe
One International Place
Boston, MA  02110-2624
Phone: (617) 951-7000
Facsimile: (617) 951-7050

*Attorneys for Millennium International, Ltd.*