Original

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: LEHMAN BROTHERS HOLDINGS, ETC ET AL

DEBTORS CASE # 08-13555

AFFIDAVIT OF WILLIAM KUNTZ, III

STATE OF MASSACHUSETTS )
                       ) ss
COUNTY OF NANTUCKET    )

HAVING BEEN DULY CAUTIONED AND SWORN, AFFIANT, WILIAM KUNTZ, III DOTH MAKE THE FOLLOWING OATH TO WIT:

1. THAT THE COURT HAVING DENIED AFFIANTS MOTION TO MOVE TOWARD A CERTAIN ESCROW FUND / PROCEEDS BELIEVED TO BE HELD BY THIS DEBTOR, WHICH WAS CREATED IN THE FIRST GRAND UNION BANKRUPTCY CASE BEFORE JUDGE WALSH IN WILMINTON DELAWARE ABOUT 14 YEARS AGO.

2. THAT AFFIANT TOOK AN APPEAL TO DISTRICT COURT.

3. THAT THE COURT CONDUCTED A CONFERENCE IN THE 3RD WEEK OF FEB, 2009 AT THE UNITED STATES DISTRICT COURTHOUSE IN MANHATTAN.

4. THAT RICHARD KRASANOW APPEARED FOR THE DEBTOR IN SUBSTITUTION FOR COUNSEL DESIGNATED ON THE DOCKET.

5. BEFORE THE CONFERENCE COMMENCED AND IN THE SPIRIT OF ON-GOING SHARING OF INFORMATION, AFFIANT PROVIDED THE DEBTOR'S COUNSEL WITH THE FOLLOWING:

a) LETTER OPINION FROM WILLIAM MARTIN, UNITED STATES DISTRICT JUDGE DISTRICT OF NEW JERSEY DATED JUNE 5, 2005.

RE: <u>GRAND UNION-VS-AMERICE</u>

THE OPINION CLEARLY LISTS THE FIRM OF WEIL, GOTSHAL AS COUNSEL TO THE DEBTOR GRAND UNION.

' the other-Weil Gotshal-being known for the strength of it's bankruptcy practice." <ex 1>

b) THE FIRST FEW PAGES OF 3 AGREEMENTS INVOLVING THIS DEBTOR AND GRAND UNION WITH WEIL GOTSHAL LISTED IN EACH
    COMMITMENT LETTER FOR $300,000,000 <ex 2, page 2>
    REVOLVING CREDIT AGREEMENT $172,022,020 <ex 3, page 2>
    CREDIT AND GUARANTEE    $60,000,000    <ex 4, page 2>

ACCORDINGLY AFFIANT SUBMITS WEIL GOTSHAL CANNOT CONTINUE WITH THE PRETENSE THAT IT'S KNOWS NOTHING ABOUT THE GRAND UNION AND THE WAYWARD ESCROW FUND.

6. AT THE CONFERENCE, AFTER THE COURT FIXED THE DATE FOR APPELLANTS BRIEF, MR.KRASNOW LEPT TO HIS FEET AND IN A TYPICAL BRILLIANT ILLUSTRATION OF HIS SKILLS POINTED OUT TO THE COURT THAT THERE WAS AN LONG UNRESOLVED MOTION IN BANKRUPTCY COURT AND THUS THE DISTRICT COURT DID NOT HAVE JURISDICTION.

THE COURT CONCURED AND DISMISSED THE APPEAL WITHOUT PREJUDICE.

7. INSOFAR AS COUNSEL FOR THE DEBTOR MORE OR LESS DIRECTS THE ███████, THIS IS AN INTERESTING DEVELOPMENT AND AFFIANT WOULD RESPECTFULLY SUMIT THAT THE COURT CONSIDER REVIEWING THIS ***DENOVO IN TOTO*** ON THE LAST PRESENTLY AVAILABLE DATE ON MR. MILLER'S RECENT OMNIBUS EARING DATE WHICH IS September 16, 2009 at 10:00 a.m. (Prevailing Eastern Time)

8. AFFIANT CONTINUES TO MOVE FORWARD WITH DEVELOPMENT OF USEFULL INFORMATION AS TO THE ORIGINAL PROSPECTUS AND INDENTURE OF THE GRAND UNION CAPITAL CORP NOTES. < ex 5 and 6>

IT IS AFFIANT'S PRESENT UNDERSTANDING THAT THE NOTES ARE ACCURING INTEREST @ 15% SINCE THE SUMMER OF 1989 AND IT IS AN INTERESTING QUESTION AS TO THE POST PETITION TREATMENT OF THESE SUM'S AS THEY ACRUE.

FURTHER AFFIANT SAYETH NAUGHT.

_____
WILLIAM KUNTZ, III

SWORN TO BEFORE ME A NOTARY PUBLIC ON
THIS 5th OF March, 2009

(seal)

_____
NOTARY

# U.S. District Court
## United States District Court for the Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:08-cv-11273-JSR

In Re: Lehman Brothers Holding Inc.  
Assigned to: Judge Jed S. Rakoff  
Case in other court: USBC-SDNY, 08-B-13555 (JMP)  
Cause: 28:0158 Notice of Appeal re Bankruptcy Matter (BA

Date Filed: 12/29/2008  
Jury Demand: None  
Nature of Suit: 422 Bankruptcy Appeal (801)  
Jurisdiction: Federal Question

**In Re**

**Lehman Brothers Holding Inc.**

**Debtor**

**Lehman Brothers Holding Inc.**

**Appellant**

**William Kuntz, III**    represented by    **William Kuntz, III**  
P.O. Box 1801  
Nantucket, MA 02554  
PRO SE

V.

**Appellee**

**Lehman Brothers Holding Inc.**    represented by    **Shai Yehuda Waisman**  
Weil, Gotshal & Manges LLP (NYC)  
767 Fifth Avenue  
New York, NY 10153  
(212)-735-4566  
Fax: (212)-735-4643  
Email: shai.waisman@weil.com  
*LEAD ATTORNEY*  
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/29/2008 | 1 | NOTICE OF APPEAL FROM THE BANKRUPTCY COURT TO THE S.D.N.Y. from the Order of Judge James M. Peck dated October 16, 2008. Bankruptcy Court Case Numbers: 08-B-13555 (JMP). Certified copies of file received.Document filed by William Kuntz, III. Appellant Brief due by 1/16/2009.(bkar) (Entered: 12/29/2008) |
| 12/29/2008 | 2 | DESIGNATION OF BANKRUPTCY RECORD ON APPEAL re: 1 Bankruptcy Appeal,. Document filed by Appellant William Kuntz, III. (bkar) (Entered: |

|   |   |   |
|---|---|---|
|   |   | 12/29/2008) |
| 12/29/2008 | 3 | COUNTER DESIGNATION OF BANKRUPTCY RECORD ON APPEAL Document filed by Appellee Lehman Brothers Holding Inc. (bkar) (Entered: 12/29/2008) |
| 12/29/2008 |   | Magistrate Judge Frank Maas is so designated. (bkar) (Entered: 12/29/2008) |
| 01/05/2009 |   | Mailed letter to the United States Bankruptcy Court - Southern District of New York as notification of filing of Bankruptcy Notice of Appeal (Case Number: 08-B-13555 (JMP).) with the U.S.D.C. - S.D.N.Y. and the assignment of S.D.N.Y. Case Number: 08-cv-11273 (JSR). (laq) (Entered: 01/05/2009) |
| 01/05/2009 |   | Mailed notice to the attorney(s) of record. (laq) (Entered: 01/05/2009) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 02/04/2009 10:10:00 | | |
| PACER Login: us5070 | Client Code: | |
| Description: Docket Report | Search Criteria: | 1:08-cv-11273-JSR |
| Billable Pages: 1 | Cost: | 0.08 |

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
JUDGE

June 10, 2005

**LETTER OPINION**

**VIA REGULAR MAIL**

Ravin, Greenberg & Marks, P.A.
Sheryll S. Tahiri, Esq.
101 Eisenhower Pkwy.
Roseland, NJ 07068

*(Attorneys for The Grand Union Company)*

Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman, P.C.
Thomas G. Aljian, Jr., Esq.
The Legal Center
One Riverfront Plaza
Newark, NJ 07102

*(Attorney for Americe, Inc.)*

  Re: **The Grand Union Co. v. Americe, Inc.**
     **Docket No.: 04-5669 (WJM)**

Dear Counsel:

This matter comes before the Court on The Grand Union Company's ("Grand Union") motion pursuant to Federal Rules of Civil Procedure 59 and 60 and Local Civil Rule 7.1(g) for reconsideration of the Court's April 18, 2005 Order dismissing Grand Union's bankruptcy appeal for want of prosecution. For the reasons set forth below, the motion is **DENIED**.

**BACKGROUND**

Bankruptcy Judge Novalyn L. Winfield entered an Order on August 6, 2004 that, among other things, denied bankruptcy debtor Grand Union's motion for summary judgment and granted Americe, Inc. ("America") leave to file an administrative claim request. Six days later, on August 12, 2004, Grand Union, through counsel Ravin Greenberg P.C. ("Ravin Greenberg") and Weil, Gotshal & Manges LLP ("Weil Gotshal"), filed a notice of appeal and shortly thereafter (on August 23, 2004) filed a designation of items to be included in the record and statement of issues to be presented on appeal pursuant to Bankruptcy Rule 8006. The bankruptcy court transmitted these filings to this Court on November 17, 2004. Although Grand Union was

required by rule to submit appellate briefs to this Court within fifteen days of its appeal having been docketed, Fed. R. Bankr. P. 8009(a)(1), the notation of this transmission on the docket indicates that Grand Union was given until December 27, 2004. Despite this generous briefing schedule, Grand Union never filed any appellate brief. This Court exercised its discretion and dismissed Grand Union's appeal by Order dated April 18, 2005 for want of prosecution.

Counsel for Grand Union—specifically, Ravin Greenberg, not Weil Gotshal—now asks the Court to reconsider this dismissal on the ground that Grand Union's failure to submit any appellate brief was attributable to counsel's "mistake and excusable neglect." (*See* Memorandum of Law in Support of Motion for Reconsideration [*hereinafter* "App. Br."].) Specifically, counsel for Grand Union points out that the attorney who was primarily in charge of handling Grand Union's appeal, Allan Harris ("Mr. Harris") of Ravin Greenberg, left the firm December 31, 2004 and that "[i]t was only after [Mr. Harris] left, much past the deadline set forth in Rule 8009, that [Howard S. Greenberg ("Mr. Greenberg"), also of Ravin Greenberg] became aware that a brief had not been filed." (*See* Cert. of Howard S. Greenberg ¶ 10.) Because the December 27, 2004 deadline ran several days before Mr. Harris left Ravin Greenberg, counsel for Grand Union also notes that "[d]uring the time of filing of the appeal, several complications made it difficult for [Ravin Greenberg] to file a brief on Appellant's behalf, and to proceed with the appeal." (*Id.* ¶ 8.)

## ANALYSIS

Although dismissal of bankruptcy appeals for want of prosecution is discretionary, courts must at least consider less severe sanctions for a litigant's failure to prosecute its case. *See Jewelcor, Inc. v. Asia Commercial Co., Ltd.*, 11 F.3d 394, 397 (3d Cir. 1993). Counsel for Grand Union argues, therefore, that this Court, rather than dismissing Grand Union's appeal for want of prosecution, should have resorted to the less severe sanction of either issuing an Order to Show Cause setting forth an expedited briefing schedule or, instead, simply issuing another briefing schedule. (*See* App. Br. at 4.) The Court fails to see how giving appellant additional time to submit an appellate brief *which at the time of dismissal was already almost four months late* is an effective "sanction." Indeed, that would be no sanction at all.

The Court can discern no other effective sanction for failure to submit an appellate brief. As this Court has already explained, the bankruptcy rules require appellant to file a brief with this Court within fifteen days of an appeal having been docketed. Fed. R. Bankr. P. 8009(a)(1). The purpose of the briefing schedule in Bankruptcy Rule 8009 is to provide for the expeditious resolution of bankruptcy proceedings. *See Jewelcor*, 11 F.3d at 397. It is clear that the purpose of the rule would be completely thwarted were the Court to allow Grand Union to delay indefinitely the filing of its appellate brief, without which the Court cannot even begin to review the merits of its appeal.

Grand Union's failure to prosecute its appeal is the result of its own neglect. Indeed, Ravin Greenberg acknowledges as much. (*See* App. Br. at 4.) Unable to dispute that it had notice of the December 27, 2004 deadline, Ravin Greenberg offers only the vague excuse that "several complications made it difficult for [Ravin Greenberg] to file a brief on Appellant's

behalf." This neglect is all the more inexplicable considering that Grand Union appears to have been represented in bankruptcy proceedings not by one but in fact by two different law firms, the other—Weil Gotshal—being known for the strength of its bankruptcy practice. (*See* Notice of Appeal dated Aug. 12, 2004).

Finally, there is evidence suggesting that Grand Union's failure to prosecute its appeal simply reflects its history of proceeding in a dilatory manner. That is, during the bankruptcy court's October 4, 2004 telephone conference with counsel for Americe and with Ravin Greenberg regarding, among other things, the instant appeal, Judge Winfield stated: "I actually find this issue of appeal a little bit frustrating. [Grand Union] has had an astonishing disinclination to try this case. It's been difficult to get this to final conclusions. . . . I'm tired of fooling around. . . . . [I] implore both parties to act with all due speed to get [Grand Union's appeal] before the district court and adjudicated . . . . This is an old adversary and it shouldn't hang around." (Transcript of October 4, 2004 Telephone Status Conference before Honorable Novalyn L. Winfield at 8:6–11, 10:22–24, 11:4–5.) In response to Judge Winfield's request that Grand Union diligently prosecute its appeal, Mr. Greenberg, who now asks the Court to excuse Grand Union's failure to file any appellate brief because the Ravin Greenberg attorney primarily handling Grand Union's bankruptcy case left the firm four days *after* the December 27, 2004, stated: "We're trying to, Your Honor." (*Id.* at 11:3.) Grand Union nevertheless failed to prosecute its appeal despite Mr. Greenberg's representation to Judge Winfield that it would do so with all due speed.

## CONCLUSION

For the foregoing reasons, Grand Union's motion for reconsideration of the Court's April 18, 2005 Order dismissing Grand Union's bankruptcy appeal for want of prosecution is **DENIED**.

An appropriate Order accompanies this Letter Opinion.

                                        s/William J. Martini

                                        **William J. Martini, U.S.D.J.**

cc:    The Honorable Ronald J. Hedges, U.S.M.J.

Parties:        Grand Union
Sectors:        Retail
Law Firms:      Simpson Thacher & Bartlett
Governing Law:  New York
EXHIBIT 10.39
CONFIDENTIAL

SBC WARBURG DILLON LEHMAN BROTHERS INC. READ INC.

SWISS BANK CORPORATION LEHMAN COMMERCIAL
PAPER INC.


THE Grand Union COMPANY
$300,000,000 SENIOR SECURED CREDIT FACILITY

Commitment Letter

April 23, 1998

The Grand Union Company 201 Willowbrook Boulevard Wayne, New Jersey 07470

Attention: Mr. Jeffrey P. Freimark

Ladies and Gentlemen:

You have advised (a) Swiss Bank Corporation ("SBC") and SBC Warburg Dillon Read Inc. ("SBCWDR") and (b) Lehman Commercial Paper Inc. ("LCPI") and Lehman Brothers Inc. ("LBI") that The Grand Union Company, a Delaware corporation (the "Company"), intends to (i) solicit consents to a prepackaged plan of reorganization pursuant to Section 3(a)(9) of the Securities Act of 1933, as amended, and immediately thereafter file a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for either the Southern District of New York or the District of Delaware or the District of New Jersey (the "Bankruptcy Court") and (ii) in connection therewith, upon consummation (the "Reorganization") of the Borrower's prepackaged plan of reorganization (the "Plan"), which shall be in form and substance reasonably satisfactory to SBCWDR, SBC, LBI and LCPI, refinance the Company's existing $250,000,000 senior secured credit facility, as such facility may be rolled up into a post-petition financing pursuant to Section 364 of the Bankruptcy Code. In that connection, you have requested that SBCWDR and LBI agree to structure, arrange and syndicate senior secured credit facilities in an aggregate amount of up to $300,000,000 (the "Financing"), and

that SBC and LCPI commit to provide the entire principal amount of the Financing Facilities. It is proposed that the Financing be provided in two tranches, comprising (i) a 5-year term loan tranche in an aggregate amount of up to $230 million (the "Term Facility") and (ii) a 5-year revolving credit facility in an aggregate amount of up to $70 million (the "Revolving Facility", and together with the Term Facility, the "Facility"). SBCWDR, SBC, LBI and LCPI hereby acknowledge that the Agreement in Principle entered into March 30, 1998 (the "Agreement in Principle") by and between the Company and the Unofficial Steering Committee (the "Steering Committee") for certain holders of the Company's 12% Senior Notes due 2004, to the extent it pertains to the Plan, is acceptable.

SBCWDR and LBI are pleased to advise you that they are willing to act as exclusive advisors and arrangers for the Facility. Furthermore, SBC and LCPI are pleased to advise you of their several but not joint commitment (the "Commitment") to provide up to an aggregate of $300 million of the Facility ($150 million of which shall be provided by SBC and $150 million of which shall be provided by LCPI) upon the terms and subject to the conditions set forth or referred to in this commitment letter and in the Term Sheet attached hereto as Exhibit A (the "Term Sheet", and such commitment letter with the Term Sheet, the "Commitment Letter").

It is agreed that (i) SBCWDR and LBI will act as the sole and exclusive advisors and arrangers, (ii) SBC will act as the sole and exclusive syndication agent and (iii) LCPI will act as the sole and exclusive administrative agent, for the Facility, and each will, in such capacities, perform the duties and exercise the authority customarily performed and exercised by it in such roles. You agree that no other agents, co-agents or arrangers will be appointed, no other titles will be awarded and no compensation (other than that expressly contemplated by the Term Sheet, this Commitment Letter and the Fee Letter referred to below) will be paid in connection with the Facility unless you and we shall so agree.

We intend to syndicate the Facility to a group of financial institutions (together with SBC and LCPI, the "Lenders") acceptable to SBC, LCPI and the Company (such approval of the Company not to be unreasonably withheld). SBC and LCPI intend to commence syndication efforts promptly upon the execution of this Commitment Letter, and you agree actively to assist SBC and LCPI in completing a syndication reasonably satisfactory to them. Such assistance shall include (a) your using commercially reasonable efforts to ensure that the syndication efforts benefit materially from your existing lending relationships, (b) direct contact between senior management and advisors of the Company and the proposed Lenders, (c) assistance in the preparation of a Confidential Information Memorandum and other marketing materials to be used in connection with the syndication and (d) the hosting, with SBC and LCPI, of

2

one or more meetings of prospective Lenders. You also agree that, at your expense, you will work with SBCWDR, SBC, LBI and LCPI to procure a rating for the Facility by Moody's Investors Service, Inc. and Standard & Poor's Ratings Group.

SBCWDR and LBI will manage all aspects of the syndication, including decisions as to the selection of institutions to be approached and when they will be approached, when their commitments will be accepted, which institutions will participate, the allocations of the commitments among the Lenders and the amount and distribution of fees among the Lenders. To assist SBCWDR and LBI in their syndication efforts, you agree promptly to prepare and



Parties:       **Grand Union**
Sectors:       Retail
Law Firms:     Simpson Thacher & Bartlett, Weil, Gotshal & Manges
Governing Law: New York
EXHIBIT 10.40

$172,022,020

REVOLVING CREDIT AGREEMENT

among

THE GRAND UNION COMPANY, a Debtor-in-Possession,

as Borrower,

The Several Lenders
from Time to Time Parties Hereto,

SBC WARBURG DILLON READ INC.,
as Co-Advisor and Co-Arranger

SWISS BANK CORPORATION,
as Syndication Agent

LEHMAN BROTHERS INC.,
as Co-Advisor and Co-Arranger

and

LEHMAN COMMERCIAL PAPER INC.,
as Administrative Agent

Dated as of June 24, 1998

================================================================

TABLE OF CONTENTS
-----------------
Page
---- SECTION 1. DEFINITIONS................................................................................ 3
1.1 Defined Terms........................................................................................ 3
1.2 Other Definitional Provisions................................................................. 20

SECTION 2. AMOUNT AND TERMS OF REVOLVING CREDIT COMMITMENTS................................................................. 21
2.1 Revolving Credit Commitments.............................................................. 21
2.2 Procedure for Revolving Credit Borrowing.............................................. 21
2.3 Swing Line Commitment....................................................................... 22
2.4 Procedure for Swing Line Borrowing; Refunding of Swing Line Loans...... 22
2.5 Repayment of Loans; Evidence of Debt................................................... 24
2.6 Revolving Credit Commitment Fees, etc................................................. 25
2.7 Termination or Reduction of Revolving Credit Commitments.................. 25
2.8 Optional Prepayments........................................................................... 25
2.9 Mandatory Prepayments and Revolving Credit Commitment Reductions.. 25
2.10 Conversion and Continuation Options................................................... 26
2.11 Minimum Amounts and Maximum Number of Eurodollar Tranches........ 26
2.12 Interest Rates and Payment Dates......................................................... 27
2.13 Computation of Interest and Fees......................................................... 27
2.14 Inability to Determine Interest Rate...................................................... 28
2.15 Pro Rata Treatment and Payments........................................................ 28
2.16 Requirements of Law........................................................................... 29
2.17 Taxes.................................................................................................. 31
2.18 Indemnity............................................................................................ 33
2.19 Illegality.............................................................................................. 33
2.20 Change of Lending Office..................................................................... 33

SECTION 3. LETTERS OF CREDIT........................................................................ 34
3.1 L/C Commitment.................................................................................. 34
3.2 Procedure for Issuance of Letter of Credit.............................................. 34
3.3 Fees and Other Charges........................................................................ 35
3.4 L/C Participations................................................................................. 35



Parties: **Grand Union**
Sectors: Retail
Law Firms: Simpson Thacher & Bartlett, Weil, Gotshal & Manges
Governing Law: New York
60,000,000

REVOLVING CREDIT AND GUARANTEE AGREEMENT

among

THE GRAND UNION COMPANY, a Debtor-in-Possession,

as Borrower,

The Subsidiaries of the Borrower Parties Hereto,

The Several Lenders
from Time to Time Parties Hereto,

LEHMAN BROTHERS INC.,
as Advisor and Arranger

and

LEHMAN COMMERCIAL PAPER INC.,
as Administrative Agent

Dated as of October 3, 2000

===============================================================

TABLE OF CONTENTS

Page

SECTION 1. DEFINITIONS ............................................................. -2-
1.1 Defined Terms ..................................................................... -2-
1.2 Other Definitional Provisions .................................................. -16-

SECTION 2. AMOUNT AND TERMS OF REVOLVING CREDIT COMMITMENTS ............ -17-
2.1 Revolving Credit Commitments ................................................ -17-
2.2 Procedure for Revolving Credit Borrowing ................................. -17-
2.3 Repayment of Loans; Evidence of Debt ..................................... -18-
2.4 Revolving Credit Commitment Fees, etc. .................................... -18-
2.5 Termination or Reduction of Revolving Credit Commitments ........... -19-
2.6 Optional Prepayments ........................................................... -19-
2.7 Mandatory Prepayments and Revolving Credit Commitment Reductions ... -19-
2.8 Interest Rates and Payment Dates ............................................ -20-
2.9 Computation of Interest and Fees ............................................ -20-
2.10 Pro Rata Treatment and Payments .......................................... -20-
2.11 Taxes ............................................................................... -21-
2.12 Change of Lending Office ..................................................... -23-

SECTION 3. LETTERS OF CREDIT ................................................... -24-
3.1 L/C Commitment .................................................................. -24-
3.2 Procedure for Issuance of Letter of Credit ................................. -24-
3.3 Fees and Other Charges ........................................................ -25-
3.4 L/C Participations ................................................................ -25-
3.5 Reimbursement Obligation of the Borrower ............................... -26-
3.6 Obligations Absolute ............................................................. -26-
3.7 Letter of Credit Payments ...................................................... -27-
3.8 Applications ....................................................................... -27-

SECTION 4. PRIORITY AND LIENS .................................................. -27-
4.1 Priority and Liens ................................................................ -27-
4.2 Security Interest in L/C Cash Collateral Account ......................... -28-
4.3 Payment of Obligations ......................................................... -29-
4.4 No Discharge; Survival of Claims ............................................. -29-

SECTION 5. REPRESENTATIONS AND WARRANTIES ............................. -29-



**FDIC**

**Federal Deposit Insurance Corporation**
Division of Supervision and Consumer Protection
2345 Grand Boulevard, Suite 100
Kansas City, MO 64108

Consumer Response Center
1-800-378-9581
Fax number 703-812-1020

December 8, 2008
Ref. No.: SCC2008N-000178-0

Mr. William Kuntz, III
PO Box 1801
Nantucket, Massachusetts 02554

Dear Mr. Kuntz, III:

Thank you for contacting the Federal Deposit Insurance Corporation (FDIC).

The FDIC's mission is to ensure the stability of and public confidence in the nation's financial system. To achieve this goal, the FDIC has insured deposits and promoted safe and sound banking practices since 1933. The FDIC's Division of Supervision and Consumer Protection (DSC) is responsible for enforcing federal consumer protection laws and regulations at various state-chartered banks. This office is a part of DSC. Non state-chartered banks and other financial institutions are regulated by other agencies.

Unfortunately, we are unable to determine the exact nature of your inquiry. If you will provide this office with more specific information on the kind of assistance you are requesting, we will be able to assist you or refer you to the regulatory agency that can provide assistance.

We hope this information is helpful.

Sincerely,

/Howard J. Herman
Consumer Affairs Specialist

Enclosure





# STATE OF UTAH

Jon M. Huntsman, Jr.
*Governor*
Gary R. Herbert
*Lieutenant Governor*

**DEPARTMENT OF FINANCIAL INSTITUTIONS**

G. Edward Leary
*Commissioner*
Michael L. Jones
*Chief Examiner*
R. Paul Allred
*Deputy Commissioner*

December 16, 2008

William Kuntz, III
INDIA St PO Box 1801
Nantucket Island, MA 02554-1801

Dear Mr. Kuntz:

The Department of Financial Institutions has no knowledge or papers regarding the sale of Grand Union Capital Corp as described in your letter. Also, in your letter was a request for copies of the pending applications filed by Goldman Sachs Bank USA. Utah law allows the public portion of applications to be reviewed at the Department's office. Therefore, your request for copies to be mailed to you is denied. You are invited to visit our office and review the applications in person or you could send a personal representative to review them. Another suggestion is to request the applications from the FDIC, The Federal Reserve Bank of New York, or The New York State Banking Department.

If you have any questions, please contact me at (801) 538-8841.

Sincerely,

Darryle P. Rude
Supervisor of Industrial Banks

Mailing Address • P.O. Box 146800 • Salt Lake City, Utah 84114-