**Hearing Date and Time: April 8, 2009 at 10:00 a.m (Prevailing Eastern Time)**
**Objection Date and Time:  March 23, 2009 at 4:00 p.m (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                            :
In re                                                       :        **Chapter 11 Case No.**
                                                            :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :        **08-13555 (JMP)**
                                                            :
                              **Debtors.**                  :        **(Jointly Administered)**
                                                            :
                                                            :
-----------------------------------------------------------------x

## NOTICE OF DEBTORS' MOTION FOR AN ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING AND APPROVING SETTLEMENT AMONG LEHMAN COMMERCIAL PAPER INC. AND SIXTH GEAR, ET AL.

PLEASE TAKE NOTICE that a hearing on the annexed motion of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtor, Lehman Commercial Paper Inc.

("LCPI," and together with LBHI, the "Debtors") for entry of an order authorizing and approving

the terms of a settlement among LCPI, LB I Group, Inc., Sixth Gear Funding Trust, Sixth Gear

Solutions Corp., Sixth Gear Inc. (collectively "Sixth Gear") and Warburg Pincus Private Equity

IX, L.P. (the "Motion"), all as more fully described in the Motion, will be held before the

Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy

Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York,

New York 10004 (the "Bankruptcy Court"), on **April 8, 2009 at 10:00 a.m. (Prevailing Eastern**

**Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn: Jacqueline Marcus, attorneys for the Debtors; (iii) the Office of the United States

Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st

Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Paul Schwartzberg, Brian

Masumoto, Linda Riffkin, and Tracy Hope Davis; (iv) Milbank, Tweed, Hadley & McCloy LLP,

1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis

O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured

creditors appointed in these cases; (v) Proskauer Rose LLP, 1585 Broadway, New York, New

York, 10036, Attn: Jeffrey W. Levitan, attorneys for Sixth Gear; (vi) Willkie Farr & Gallagher

LLP, 787 Seventh Avenue, New York, New York 10019, Attn: Jeffrey S. Hochman and Terence

McLaughlin, attorneys for Warburg Pincus Private Equity IX, L.P. and (vii) any person or entity

with a particularized interest in the Motion, so as to be received no later than **March 23, 2009 at

4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: March 10, 2009
New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
|  |  |
| :--- | :--- |
| In re | : Chapter 11 Case No. |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : 08-13555 (JMP) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |
| | : |

-----------------------------------------------------------------x

## DEBTORS' MOTION FOR AN ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING AND APPROVING SETTLEMENT AMONG LEHMAN COMMERCIAL PAPER INC. AND SIXTH GEAR, ET AL.

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Commercial Paper Inc. ("LCPI"), as debtor and debtor in possession

(together with Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

reference chapter 11 cases, the "Debtors"), respectfully represent:

### Background

1.     Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

4.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

### Jurisdiction

5.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Lehman's Business

6.      Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman had been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

7.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

### Relief Requested

8.    By this Motion, the Debtors seek entry of an order pursuant to Bankruptcy

Rule 9019 authorizing LCPI to compromise and settle a dispute with Sixth Gear Funding Trust,

Sixth Gear Solutions Corp. and Sixth Gear Inc. (collectively "Sixth Gear").  The terms of the

settlement are reflected in that certain settlement agreement, dated March 6, 2009, among LCPI,

LB Group I Inc. ("LB I"), a non-debtor indirect subsidiary of LBHI, Sixth Gear and Warburg

Pincus Private Equity IX, L.P. ("Warburg Pincus," and collectively, the "Parties"), a copy of

which is attached hereto as Exhibit A (the "Settlement Agreement").

### Preliminary Statement

9.    LCPI, Sixth Gear Funding Trust and Sixth Gear Solutions Corp. were

parties to that certain Amended and Restated Master Repurchase Agreement dated as of May 9,

2008 (the "MRPA"), pursuant to which LCPI, as Administrative Agent[1] and Committed

Purchaser, committed to purchase, upon the satisfaction of certain conditions precedent and on

other terms as set forth in the MRPA, receivables (the "Receivables") of up to $750,000,000.

10.    LB I, Warburg Pincus, and Sixth Gear Inc. (among others) are parties to

(a) a certain Subscription Agreement dated as of April 2, 2007 (the "Subscription Agreement"),

(b) a certain Stockholders Agreement dated as of April 12, 2007 (the "Stockholders

Agreement"), and (c) a certain Registration Rights Agreement, dated as of April 12, 2007 (the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the MRPA.

"Registration Rights Agreement"), pursuant to which LB I and Warburg Pincus hold 29.347%

and 68.476%, respectively, of the preferred equity interests in Sixth Gear Inc.

11.    Prior to September 2008, LCPI advanced approximately $26,200,000 to

Sixth Gear in exchange for a pledge of Receivables bearing a face amount, as of March 2, 2009,

of approximately $24,800,000.  On October 27, 2008, Sixth Gear filed a Motion to Set Prompt

Date for Assumption or Rejection of the Debtor's Amended and Restated Master Repurchase

Agreement with Sixth Gear (the "Motion") [Docket No. 1221], in which Sixth Gear contended,

*inter alia*, that as a result of LCPI's failure to honor Sixth Gear's pre- and post-petition requests

to purchase Receivables under the MRPA, Sixth Gear suffered considerable damages

necessitating the wind down of Sixth Gear.

12.    On November 17, 2008, LCPI filed a response to the Motion (the

"Response") [Docket No. 1553] declaring its intention to reject the MRPA and contending, *inter*

*alia*, that Sixth Gear had taken certain actions in respect of the Receivables and the collections in

respect thereof (the "Collections") that violated the MRPA and the automatic stay extant under

Section 362 of the Bankruptcy Code.

13.    On November 21, 2008, the Bankruptcy Court entered an order

confirming LCPI's rejection of the MRPA, permitting Sixth Gear to file a proof of claim against

LCPI for damages resulting from the LCPI's rejection of the MRPA, and reserving the parties'

rights to assert the claims, counterclaims and defenses relating to the parties' obligations under

MRPA, as set forth in their respective pleadings, and to commence any proceeding with respect

thereto (the "Dispute").

14.    After substantial negotiations between the parties to consensually resolve

the Dispute and to eliminate the uncertainty and costs of prolonged discovery and litigation, the

parties have agreed that it is in their mutual best interests to amicably resolve the Dispute and

related claims by entering into the proposed Settlement Agreement.

## **The Settlement Agreement**

15.    The salient terms of the Settlement Agreement are summarized below.[2]

- Collections received after the date of the Settlement Agreement on Receivables outstanding as of the date of the Settlement Agreement ("Outstanding Receivables") shall be divided between LCPI and Sixth Gear on a 50/50 basis and shall be distributed monthly, in accordance with the times set forth in the MRPA.  LB I has agreed that it will not receive any distribution as a preferred shareholder from Sixth Gear's 50% share.

- Sixth Gear shall ensure the direction of the Collections into the controlled accounts designated under the MRPA and shall no longer permit the Collections to be deposited in separate accounts under Sixth Gear's control.

- LCPI shall manage all aspects related to the servicing of the Outstanding Receivables, subject, in certain instances, to the consent of Sixth Gear Inc.

- The parties acknowledge that Sixth Gear Solutions Corp. is the legal owner of the auto finance loans underlying the Receivables.

- All cash and assets of Sixth Gear, other than Outstanding Receivables and Collections received after the date of the Settlement Agreement, shall be first utilized to pay the liabilities of Sixth Gear, and then shall be apportioned as according to the preferred equity ownership in Sixth Gear Inc. and distributed to such preferred holders.

- Sixth Gear has agreed to pay all reasonable fees, costs and expenses (including costs of counsel) of LCPI and LB I related to transactions involving Sixth Gear; provided that Sixth Gear will not be required to pay fees, costs and expenses in excess of $75,000 incurred in connection with (i) the documentation,

---

[2] This summary of the Settlement Agreement is qualified in its entirety by the terms and provisions of the Settlement Agreement.  To the extent there are any inconsistencies between the description of the Settlement Agreement contained herein and the terms and conditions of the Settlement Agreement, the terms of the Settlement Agreement shall control.

negotiation and efforts to procure approval from the Court of the
Settlement Agreement or (ii) the termination of the MRPA.

- Sixth Gear and Warburg Pincus have agreed to waive and release
any claims against LCPI and LB I arising from or relating to the
MRPA or any swap agreements relating to Sixth Gear with any
affiliate of LCPI or LB I or otherwise connected to the creation,
operations, wind down or liquidation of Sixth Gear, including,
without limitation, any alleged failure to fund any amounts under
the MRPA and any claims for rejection damages with respect to
the rejection of the MRPA.

- LCPI and LB I have agreed to waive and release any claims
against Sixth Gear and Warburg Pincus arising from or relating to
the MRPA or otherwise in any way connected to the creation,
operations, wind down or liquidation of Sixth Gear.

- Sixth Gear has agreed to indemnify LB I from any damages, losses
or expenses related to any litigation relating to the Settlement
Agreement, the Stockholders Agreement, the Subscription
Agreement, the Registration Rights Agreement or any related
document.

### <u>The Controlling Legal Standard</u>

16.    Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor in

possession] and after notice and a hearing, the court may approve a compromise or settlement."

FED. R. BANKR. P. 9019(a).  In granting a motion pursuant to Rule 9019(a), a court must find that

the proposed settlement is fair and equitable and is in the best interests of the estate.  *Protective*

*Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424

(1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In*

*re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

17.    The decision to approve a particular settlement lies within the sound

discretion of the bankruptcy court.  *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  It is

the responsibility of a court to examine a settlement and determine whether it "falls below the

lowest point in the range of reasonableness."  *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d

599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

Additionally, a court may exercise its discretion "in light of the general public policy favoring

settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

18.    While a court must "evaluate … all … factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court

need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699

F.2d at 608, or conduct a full independent investigation. *In re Drexel Burnham Lambert Group,

Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991). "[T]he bankruptcy judge does not have to

decide the numerous questions of law and fact…. The court need only canvass the settlement to

determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123

(internal citations omitted).

19.    The court may give weight to the informed judgment of the debtor that a

compromise is fair and equitable. *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522

(S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998)

("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but

only that I test his choice for reasonableness…. If the Trustee chooses one of two reasonable

choices, I must approve that choice, even if, all things being equal, I would have selected the

other.").

### The Settlement Agreement Should Be Approved Because
### It is Fair and Equitable and Falls Well Within the Range of Reasonableness

20.    The Settlement Agreement is fair, reasonable, and in the best interests of

the Debtors' estates and their creditors.

21.    From LCPI's perspective, the Settlement Agreement provides the

following benefits:

- The Settlement Agreement eliminates the LCPI estate's exposure for Sixth Gear's alleged $50 million claim arising from rejection of the MRPA. *See* Settlement Agreement, at ¶¶ 3 and 7.

- The Settlement Agreement provides that LCPI will be entitled to 50% of the Collections in respect of the Outstanding Receivables in the aggregate principal amount of approximately $28,300,000, subject to deductions for custodial and servicing fees. *See* Settlement Agreement, at ¶ 4.

- LCPI is entitled to share in Collections, even if those collections were in respect of receivables that were not financed with the proceeds of advances made by LCPI under the MRPA. *See* Settlement Agreement, at ¶ 4.

- LCPI will not be obligated to make any further advances to Sixth Gear under the MRPA. *See* Settlement Agreement, at ¶ 3.

- The Settlement Agreement extinguishes Sixth Gear's claim that it is entitled to look to LCPI's interest in the Outstanding Receivables and the Collections as a source against which to set off Sixth Gear's rejection damage claims. *See* Settlement Agreement, at ¶ 7.

- LCPI's right to control the servicing of the Outstanding Receivables is enhanced. *See* Settlement Agreement, at ¶ 6.

- The Settlement Agreement provides for resolution of the Dispute without the costs and expenses that would accompany a protracted litigation. The savings to the Debtors from the efficient resolution of the Dispute are further enhanced by the fact that Sixth Gear has agreed to pay for up to $75,000 of the costs and expenses incurred by LCPI in connection with the documentation, negotiation and Court approval of the Settlement Agreement. *See* Settlement Agreement, at ¶¶ 2, 7 and 9.

- LCPI is granted a release of any claims relating to the MRPA or the creation, operation or wind-down of Sixth Gear. *See* Settlement Agreement, at ¶ 7

22.     Although LB I is a non-debtor, the benefits to be realized by LB I from the Settlement Agreement will inure to the benefit of LBHI and its estate, because LB I is an indirect subsidiary of LBHI. From LB I's perspective, the Settlement Agreement offer the following advantages:

- LB I and Warburg Pincus have agreed that the wind-down of Sixth Gear Inc. is necessary and that they shall take all reasonable and necessary steps

to permit the prompt and orderly wind-down of Sixth Gear Inc., thereby preserving the possibility that LB I may receive a distribution in respect of its equity interest in Sixth Gear. *See* Settlement Agreement, at ¶ 1.

- LB I is relieved of any further obligation to fund any amounts to Sixth Gear, whether through capital calls or otherwise. *See* Settlement Agreement, at ¶ 1.

- LB I is granted a release of any claims relating to the creation, operation or wind-down of Sixth Gear. *See* Settlement Agreement, at ¶ 7.

- LB I is granted an indemnity by Sixth Gear for any litigation arising out of LB I's investment in Sixth Gear. *See* Settlement Agreement, at ¶ 10.

23.    For all the foregoing reasons, the terms of the Settlement Agreement fall well above the lowest point in the range of reasonableness, and approval of the Settlement Agreement is in the best interests of the Debtors' estates.

## Notice

24.    No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys for Sixth Gear; (vii) the attorneys for Warburg Pincus, and (viii) all parties who have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

25.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  March 10, 2009
        New York, New York


                                    /s/ Jacqueline Marcus
                                    Jacqueline Marcus

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession

# EXHIBIT A

**Settlement Agreement**

**EXECUTION COPY**

# SETTLEMENT AGREEMENT

This settlement agreement ("Agreement") is entered into on this 6th day of March, 2009,
among Lehman Commercial Paper, Inc. ("LCPI") as debtor and debtor in possession (the
"Debtor"), LB I Group Inc. ("LB I"), Sixth Gear Funding Trust, Sixth Gear Solutions
Corp. and Sixth Gear Inc. (together, "Sixth Gear") and Warburg Pincus Private Equity
IX, L.P. ("Warburg Pincus").

# RECITALS

A.    On October 5, 2008, LCPI commenced a voluntary case under chapter 11
of title 11 of the United States Code (the "Bankruptcy Code") in the United States
Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

B.    LCPI, Sixth Gear Funding Trust, and Sixth Gear Solutions Corp. are
parties to that Amended and Restated Master Repurchase Agreement dated as of May 9,
2008 (the "MRPA"), pursuant to which LCPI, as Administrative Agent and Committed
Purchaser, committed to purchase, upon the satisfaction of certain conditions precedent
and on other terms as set forth in the MRPA, receivables of up to $750,000,000.  Fiserv
Automotive Solutions Inc. ("Fiserv") is Custodian of the receivables attributable to the
auto finance loans made possible by the MRPA (the "Receivables").  Capitalized terms
not otherwise defined herein have the meanings assigned to them in the MRPA.

C.    LB I, Warburg Pincus, and Sixth Gear Inc. (among others) are parties to:
(a) that Subscription Agreement dated as of April 2, 2007 (the "Subscription
Agreement"); (b) that Stockholders Agreement dated as of April 12, 2007 (the

"Stockholders Agreement") and (c) that Registration Rights Agreement, dated as of April 12, 2007 (the "Registration Rights Agreement").

D.      Non-debtor LB I holds a 29.347% preferred equity interest in Sixth Gear Inc., Warburg Pincus holds a 68.476% preferred equity interest in Sixth Gear Inc., Norman Buchan holds a 1.173% preferred equity interest in Sixth Gear Inc., and Michael Barrington holds a 1.005% preferred equity interest in Sixth Gear Inc.

E.      Pursuant to the MRPA, LCPI advanced an aggregate of $26,286,974.11 to Sixth Gear in exchange for a pledge of Receivables bearing a face amount, as of March 2, 2009, of $24,850,024.05.  In addition, Sixth Gear funded Receivables through contributions of equity from its shareholders in the amount of $3,555,572.55  as of March 2, 2009.  The Receivables outstanding as of the date hereof, whether funded through LCPI or equity contributions, are referred to herein as the "Outstanding Receivables".

F.      Sixth Gear has alleged that, beginning on September 15, 2008 and on three occasions thereafter, LCPI failed to make funds available to Sixth Gear to purchase additional Receivables under the MRPA, equaling $3,572,258.06 in the aggregate.

G.      Following LCPI's failure to fund, but prior to LCPI's filing of its petition for relief under the Bankruptcy Code, Sixth Gear caused the Receivables that had been pledged to LCPI to be re-designated as owned by Sixth Gear and caused the cash representing collected funds that had been deposited into the MRPA's designated collection account to be moved into an account(s) under Sixth Gear's control; Sixth Gear continues to hold in separate accounts (the "Separate Accounts") all collected funds (the "Collections") (after allowing for Custodial and Servicing Fees and certain other excess income) in respect of the Outstanding Receivables.

- 2 -

H.    On October 27, 2008, Sixth Gear filed a Motion to Set Prompt Date for Assumption or Rejection of the Debtor's Amended and Restated Master Repurchase Agreement with Sixth Gear (the "Motion," Docket No. 1221), in which Sixth Gear contended, *inter alia*, that as a result of LCPI's failure to purchase the requested amount of Receivables, Sixth Gear suffered considerable damages necessitating the wind down of Sixth Gear.

I.    On November 17, 2008, LCPI responded to the Motion by announcing its intention to reject the MRPA and contending, *inter alia*, that Sixth Gear's actions with respect to the Collections violated the MRPA and violated the automatic stay provided for under Section 362 of the Bankruptcy Code.

J.    On November 21, 2008, the Bankruptcy Court entered an order confirming LCPI's rejection of the MRPA, permitting Sixth Gear to file a proof of claim against LCPI, and reserving the parties' rights, defenses, and obligations under the MRPA.

K.    In an effort to consensually resolve the claims of Sixth Gear and LCPI, and of LB I and Warburg Pincus as shareholders of Sixth Gear Inc., and to avoid protracted and uncertain litigation, the parties have agreed it is in their best interests to enter into this Agreement upon the terms and conditions herein.

**NOW, THEREFORE, UPON THE FOREGOING RECITALS, WHICH ARE INCORPORATED AS THOUGH FULLY SET FORTH HEREIN, IT IS HEREBY AGREED, BY AND BETWEEN LCPI AND LB I, ON THE ONE HAND, AND SIXTH GEAR AND WARBURG PINCUS, ON THE OTHER HAND:**

- 3 -

1.      WIND DOWN OF SIXTH GEAR. Warburg Pincus and LB I, as majority

preferred shareholders of Sixth Gear Inc., agree it is necessary to wind down Sixth Gear

Inc. and its subsidiaries as promptly as possible, and agree to take all reasonable and

necessary steps to permit Sixth Gear Inc. and its subsidiaries to wind down as promptly

as possible.  LB I agrees that, to the extent its consent shall be required in the future in

connection with the wind down of Sixth Gear Inc. and its subsidiaries, it shall provide

such consent, and execute such further documentation as is reasonably required, in its

capacity as a preferred shareholder of Sixth Gear Inc., to effectuate and consummate such

wind down.  For the avoidance of doubt, and without waiver by any party of any

argument whether such approval is required or has previously been provided by LB I, the

agreement reflected in this paragraph 1 is intended to memorialize the approval, effective

as of November 3, 2008, by LB I, in its capacity as a preferred shareholder of Sixth Gear

Inc., of the winding down of Sixth Gear Inc. and its subsidiaries, assuming such approval

is required by section 2(e)(ii) of the Stockholders Agreement.

2.      DISTRIBUTION OF CASH ON HAND.  All cash and other assets of

Sixth Gear exclusive of the Outstanding Receivables and all the Collections on the

Outstanding Receivables received after the date hereof which are to be distributed in

accordance with paragraph 4 below (as so excluded, the "Cash on Hand"), shall be first

utilized to pay the obligations of Sixth Gear related to tax, administrative or such other

liabilities as determined by Sixth Gear Inc.'s Board of Directors with the consent of LB I,

not to be unreasonably withheld (as so determined, the "Obligations"); provided,

however, that the foregoing consent of LB I shall only be required for the payment of any

single Obligation in excess of $25,000 or of any one or more Obligation(s) to any single

- 4 -

person or entity (or affiliated entities) which, when aggregated with all other payments

(whether made since the date hereof or reasonably expected to occur) to such person or

entity, would exceed $25,000.  Any excess Cash on Hand after reserve or payment of the

Obligations shall be apportioned as according to the preferred equity ownership in Sixth

Gear Inc. (*i.e.*, as described in Recital D, above) and shall be distributed to such preferred

holders to such accounts as may be designated by such preferred shareholders from time

to time.  For the avoidance of doubt, such Cash on Hand available for distribution to

Sixth Gear Inc.'s shareholders after payment of the Obligations shall include all cash or

other assets on Sixth Gear Inc.'s balance sheet (excluding the Outstanding Receivables

and the Collections on the Outstanding Receivables received after the date hereof, as

discussed in paragraph 4 below), all cash in the Separate Accounts (including all

Collections on the Outstanding Receivables through the date hereof) and any cash being

held in escrow or separate accounts.  Nothing in this paragraph 2 is intended to or shall

prohibit Sixth Gear, in its sole discretion, from making interim distributions to Sixth

Gear's shareholders prior to the resolution of all of the Obligations.

3.     TERMINATION OF MRPA.  By order of the Bankruptcy Court entered

on November 21, 2008, the MRPA has been rejected.  LCPI shall have no obligation to

make any further advances pursuant to the MRPA and Sixth Gear shall have no liability

or obligation to repay any amounts attributable to the MRPA.  Sixth Gear hereby waives

any damages claim arising from rejection of the MRPA.

4.     DISTRIBUTION OF COLLECTIONS.  In settlement of any disputes

under the MRPA, Sixth Gear and LCPI agree that Collections received after the date

hereof (after payment of Custodial Fees, Servicing Fees, and other expenses for which

- 5 -

the Custodian or any other servicer are to be reimbursed pursuant to the Custodial

Agreement and the applicable servicing agreement, respectively, unless otherwise

determined by LCPI with the consent of Sixth Gear Inc.) on the Outstanding Receivables

shall be divided 50% to LCPI (the "LCPI Share") and 50% to Sixth Gear (the "Sixth Gear

Share"), provided, however, that LB I hereby irrevocably waives any interest as a

preferred shareholder in the Sixth Gear Share, which shall be reallocated pro-rata among

Sixth Gear Inc.'s remaining preferred shareholders (according to their preferred share

holdings in Sixth Gear Inc., calculated without inclusion of LB I's preferred shares);

provided, further, that each of Sixth Gear Inc. and Warburg Pincus hereby irrevocably

waive any interest which any of them may have in the LCPI Share, including any portion

of the Outstanding Receivables which have been funded through equity contributions and

agrees that no portion of the LCPI Share shall be subject to any re-assessment or claw-

back for any reason unless expressly provided for under the MRPA.  Amounts collected

in respect of the Outstanding Receivables after the date hereof shall be collected pursuant

to paragraph 6 hereof and thereafter shall be divided in accordance with this paragraph 4.

The LCPI Share and the Sixth Gear Share shall be distributed monthly, in accordance

with the times set forth in the MRPA, to such accounts as LCPI and Sixth Gear Inc. may

designate from time to time.

     5.     BOARD REPRESENTATION.  LB I hereby confirms that its

representatives on Sixth Gear Inc.'s Board of Directors resigned in September 2008 and

acknowledges that it has at no time since those resignations sought representation on

Sixth Gear Inc.'s Board of Directors nor participated in any board action. Each party

hereto hereby agrees that LB I shall remain entitled to representation on Sixth Gear Inc.'s

Board of Directors as provided in the Subscription Agreement and the Stockholders

Agreement.

      6.      SERVICING OF RECEIVABLES.  Upon entry of the Final Order (as

defined in paragraph 16 hereof), Sixth Gear shall ensure the direction of the Collections

into the controlled accounts designated under the MRPA and shall no longer permit the

Collections to be deposited in the Separate Accounts.  If LCPI shall request, Sixth Gear

shall open new collection and lockbox accounts as determined by LCPI, on terms

(including control agreements) and with such financial institutions as are satisfactory to

LCPI.  Fiserv shall remain as sub-servicer of the Outstanding Receivables at least until

June 30, 2009, with Michael Boyle employed in the oversight of such servicing during

such time.  Any reasonable and documented expenses and servicing fees due to Fiserv

and Michael Boyle (or their respective replacements) shall be paid pursuant to the terms

of the MRPA unless otherwise determined by LCPI with the consent of Sixth Gear Inc.

(not to be unreasonably withheld).  Prior to June 30, 2009, Sixth Gear Inc. shall secure a

continuing servicing process reasonably satisfactory to LCPI for the Outstanding

Receivables, which may include continuing the outstanding servicing relationship with

Fiserv and Mr. Boyle, transferring the servicing rights to Aurora Loan Servicing, or

transferring the servicing rights and/or the Outstanding Receivables to another third

party, at the discretion of LCPI, with the consent of Sixth Gear Inc. (not to be

unreasonably withheld).  From and after the date hereof, LCPI shall manage all aspects

relating to the servicing of the Outstanding Receivables with (unless otherwise specified

herein) the consent of Sixth Gear Inc., which consent shall not be unreasonably withheld.

For the avoidance of doubt, any direction from LCPI relating to the disbursement of

- 7 -

funds in accordance with this Agreement shall not be deemed to relate to the servicing of

Outstanding Receivables and thus will not require the consent of Sixth Gear.  Control

agreements, servicing agreements and the like in furtherance of this paragraph 6 may be

entered into with respect to the Outstanding Receivables as reasonably determined by

LCPI.

       7.     RELEASE AND WAIVER IN FAVOR OF LEHMAN.  Except as to the

performance of the obligations set forth in this Agreement, each of Sixth Gear Inc., Sixth

Gear Funding Trust, Sixth Gear Solutions Corp., Warburg Pincus, for itself, and its

successors and assigns (collectively, the "Sixth Gear Releasing Parties"), hereby

expressly waive and release, unconditionally and irrevocably, any claims, counterclaims,

defenses, rights of setoff, debt, liens, losses, demands, damages, costs and causes of

action of whatever nature, whether asserted or unasserted, known or unknown,

unsecured, secured, priority, administrative or otherwise, that the Sixth Gear Releasing

Parties have (to and including the date of this Agreement) against LCPI and LB I and/or

any of their respective present and former directors, officers, employees, members,

partners, agents, representatives, affiliates, parents, subsidiaries, shareholders,

predecessors and successors in their respective capacity as such (the "Lehman Released

Parties"), arising from or relating to the MRPA or any swap agreements relating to Sixth

Gear with any Lehman Released Party or otherwise in any way connected to the creation,

operations, wind down or liquidation of Sixth Gear, including, without limitation, any

alleged failure to fund any amounts under the MRPA and any claims for rejection

damages with respect to the rejection of the MRPA; provided, however, that the

foregoing release shall not waive, diminish or in any way prejudice any rights of Sixth

- 8 -

Gear with respect to any customer claims under the Securities Investor Protection Act filed by Sixth Gear against Lehman Brothers Inc. (the "Permitted Claims").  Solely to the extent of the release set forth in this Section 7, each of the Lehman Released Parties shall be a third party beneficiary of this Agreement.  Each party hereto agrees that neither LCPI nor LB I shall have any further obligation to fund any amounts to Sixth Gear, whether in connection with this Agreement, the wind down of Sixth Gear or otherwise.

8.    RELEASE AND WAIVER BY LEHMAN.  Except as to the performance of the obligations set forth in this Agreement, each of LCPI and LB I, for itself, its affiliated debtors and debtors in possession, and its successors and assigns (collectively, the "Lehman Releasing Parties"), hereby expressly waive and release, unconditionally and irrevocably, any claims, counterclaims, defenses, rights of setoff, debts, liens, losses, demands, damages, costs and causes of action of whatever nature, whether asserted or unasserted, known or unknown, unsecured, secured, priority, administrative or otherwise, that the Lehman Releasing Parties have (to and including the date of this Agreement) against Sixth Gear Inc., Sixth Gear Funding Trust, Sixth Gear Solutions Corp. and Warburg Pincus and/or any of their respective present and former directors, officers, employees, members, partners, agents, representatives, affiliates, parents, subsidiaries, shareholders, predecessors and successors in their respective capacity as such (the "Sixth Gear Released Parties"), arising from or relating to the MRPA or otherwise in any way connected to the creation, operations, wind down or liquidation of Sixth Gear; it being understood that neither LCPI nor LB I will object to any Permitted Claims.  Solely to the extent of the release set forth in this Section 8, each of the Sixth Gear Released Parties shall be a third party beneficiary of this Agreement.

- 9 -

9.        COSTS AND EXPENSES.  Sixth Gear agrees to pay all reasonable fees, costs and expenses (including costs of counsel) of LCPI and LB I, whether in connection with this Agreement, the termination of the MRPA, the wind down of Sixth Gear, any disputes or claims arising from any transactions with Sixth Gear or otherwise; provided, however, that Sixth Gear shall not be required to pay such fees, costs and expenses in excess of $75,000 on behalf of LCPI and LB I in connection with (i) the documentation, negotiation and efforts to procure approval from the Bankruptcy Court of this Agreement or (ii) the termination of the MRPA.

10.       INDEMNITIES.  Sixth Gear agrees to indemnify and hold harmless LB I and each of the directors, officers, employees, agents, trustees, representatives, attorneys, consultants and advisors of or to LB I (each such person being an "Indemnitee") from and against any and all claims, damages, liabilities, obligations, losses, penalties, actions, judgments, suits, costs, disbursements and expenses, joint or several, of any kind or nature that may be imposed on, incurred by or asserted against any such Indemnitee in connection with or arising out of any investigation, litigation or proceeding (each, a "Proceeding"), whether or not such Proceeding is brought by any such Indemnitee or any of its directors, security holders or creditors or any such Indemnitee, director, security holder or creditor is a party thereto, whether direct, indirect, or consequential and whether based on any federal, state or local law or other statutory regulation, securities or commercial law or regulation, or under common law or in equity, or on contract, tort or otherwise, in any manner relating to or arising out of this Agreement, the Stockholders Agreement, the Subscription Agreement, the Registration Rights Agreement or any other related document, or any act, event or transaction related or attendant to any thereof;

- 10 -

provided, however, that (i) Sixth Gear shall not be liable for the payment of any portion of such claims, damages, liabilities, obligations, losses, penalties, actions, judgments, suits, costs, disbursements and expenses that are found by a final and nonappealable decision of a court of competent jurisdiction to have resulted from any Indemnitee's gross negligence or willful misconduct and (ii) Sixth Gear shall not indemnify the fees, costs and expenses otherwise covered by the proviso of paragraph 9 hereof. Promptly after receipt by an Indemnitee of notice of the commencement of any Proceeding as to which the Indemnitee may be entitled to indemnification pursuant to this paragraph 10, such Indemnitee shall, if a claim for indemnification is to be made hereunder, notify Sixth Gear in writing of the commencement of the Proceeding; provided, however, that the failure of any Indemnitee to so notify will not relieve Sixth Gear of any obligation or liability that it may have to any Indemnitee hereunder or otherwise, except to the extent it has been materially prejudiced by such failure. Each Indemnitee shall keep Sixth Gear reasonably informed of the progress of any Proceeding as to which such Indemnitee intends to seek indemnification pursuant to this paragraph 10 and shall defend any such Proceeding in good faith. Sixth Gear shall not be liable for any settlement by an Indemnitee of any Proceeding effected without Sixth Gear's consent (which consent shall not be unreasonably withheld).

11.    OWNERSHIP OF THE LOANS.  The parties hereto acknowledge that Sixth Gear Solutions Corp. is the legal owner of the auto finance loans underlying the Receivables, subject to the terms of this Agreement and that all Collections (whether by payment, repossession or otherwise) received on account of such loans, or through the enforcement thereof, shall be distributed as provided herein.  Notwithstanding such legal

- 11 -

ownership of the loans, LCPI shall remain entitled to all such reports, transaction

statements and access to information with respect to the loans as provided under the

MRPA, the Custodial Agreement and any applicable servicing agreement and shall be

entitled to administer the Receivables as further set forth in paragraph 6.

MISCELLANEOUS.

12.     Nothing contained herein is intended or should be construed as an

admission as to the validity of any claim of or against any party, or as a waiver of the

rights of any party to dispute any claim except as expressly waived herein.

13.     Each party hereto represents that it is duly authorized to execute this

Agreement.

14.     Each party hereto agrees to take all actions, provide all consents, and

execute all documents as are reasonably necessary to effectuate this Agreement and/or

the wind down of Sixth Gear.  For the avoidance of doubt. by executing this agreement,

Warburg Pincus and LB I, in their capacities as shareholders of Sixth Gear Inc., consent

to Sixth Gear Inc.'s entry into the Settlement Agreement and to the actions taken in

furtherance of the Settlement Agreement, including without limitation for purposes of

Delaware General Corporation Law Section 271, to the extent applicable.

15.     This Agreement may be executed in multiple counterparts, each of which

shall be deemed an original but all of which together shall constitute one and the same

instrument.

16.     This Agreement shall become effective only upon entry of a final order,

no longer subject to any appeal, of the Bankruptcy Court approving the Agreement (a

"Final Order").  LCPI covenants that it will seek in good faith to promptly procure the

- 12 -

Final Order.  LCPI and Sixth Gear acknowledge their common interest in procuring the

Final Order and, subject to and consistent with that common interest, LCPI agrees to

provide Sixth Gear with an advance copy of any motion seeking approval of this

Agreement prior to its submission to the Bankruptcy Court and further agrees not to file

any such motion unless its contents shall be reasonably satisfactory to Sixth Gear.  LCPI

further covenants that it will oppose in good faith, any objection made to any motion

seeking approval of this Agreement and that it will provide notice to the other parties

hereto of any such objection sufficiently in advance of the response deadline to permit the

other parties hereto to seek to be heard by the Bankruptcy Court in connection with such

objection.

17.    Except to the extent otherwise set forth in paragraphs 7 and 8, nothing

expressed or referred to in this Agreement is intended to or shall be construed to give any

person or entity other than the signatories hereto any legal or equitable right or claim

under or with respect to this Agreement or any provision of this Agreement.

18.    Any consent requested from any party pursuant to this Agreement shall be

deemed given by such party if such party does not object to such action within ten

business days following receipt of notice of such request, delivered in accordance with

paragraph 22 hereof.  Upon the liquidation or dissolution of Sixth Gear, Sixth Gear may

assign its consent rights under this Agreement to a successor, or if not so assigned, no

further consent of Sixth Gear shall be required under the terms of this Agreement.

19.    In the event of any dispute between the parties as to their respective rights

and obligations under the terms of this Agreement, the parties agree to negotiate in good

faith in an effort to resolve such dispute.  If the parties are unable in good faith to resolve

- 13 -

any such dispute, the parties agree to submit the dispute to arbitration in New York, New York, such arbitration to be administered by the American Arbitration Association ("AAA") under its commercial arbitration rules.  The arbitration shall be arbitrated by a single arbitrator, mutually selected by the parties, with the AAA to appoint the arbitrator in the event that the parties are unable to agree on the selection within thirty (30) days following the initiation of the arbitration.  Judgment on any award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

20.     This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed entirely within such State.

21.     Any waiver, alteration, amendment or modification of this Agreement shall be valid only if made in writing and signed by the parties to this Agreement that are affected by such waiver, alteration, amendment or modification.

22.     All communications under this Agreement shall be in writing and shall be delivered by hand or facsimile or mailed by overnight courier or by registered or certified mail, postage prepaid, to the appropriate party at the address or facsimile number listed below (or at such other address or facsimile number as party may have been furnished to the other parties in writing).  Any notice so addressed shall be deemed to be given: if delivered by hand or facsimile, on the date of such delivery, if a business day and delivered during regular business hours, otherwise the first business day thereafter; if mailed by courier, on the first business day following the date of such mailing; and if mailed by registered or certified mail, on the third business day after the date of such mailing:

- 14 -

**If to LCPI or LB I**:

    c/o Lehman Brothers Holdings Inc.
    1271 Avenue of the Americas
    New York, New York 10020
    Fax: 646 758 3071
    Attn: Eric Salzman

    with a copy to (which shall not constitute notice):

      Weil, Gotshal & Manges LLP
      767 Fifth Avenue
      New York, N.Y. 10153
      Fax:  212-310-8007
      Attn:  Jacqueline Marcus

**If to Sixth Gear or to Warburg Pincus**:

    c/o Warburg Pincus Private Equity IX, L.P.
    466 Lexington Avenue
    New York, New York 10017
    Fax: 212 716-5199
    Attn: Dan Zilberman

    with a copy to (which shall not constitute notice):

      Willkie Farr & Gallagher LLP
      787 Seventh Avenue
      New York, N.Y. 10019-6099
      Fax:  212-728-9592
      Attn:  Jeffrey S. Hochman
          Terence McLaughlin

- 15 -

IN WITNESS WHEREOF, this Settlement Agreement has been executed by the parties thereto as of the date first written above.

**LEHMAN COMMERCIAL PAPER, INC.**

By: _____
Name: Jack D. McCarthy
Title: Senior Vice President

**LB I GROUP INC.**

By: _____
Name: Jack D. McCarthy
Title: Senior Vice President

**SIXTH GEAR FUNDING TRUST**

By: _____
Name:
Title:

**SIXTH GEAR SOLUTIONS CORP.**

By: _____
Name:
Title:

**SIXTH GEAR INC.**

By: _____
Name:
Title:

- 16 -

IN WITNESS WHEREOF, this Settlement Agreement has been executed by the parties thereto as of the date first written above.

LEHMAN COMMERCIAL PAPER, INC.

By: _____
Name:
Title:

LB I GROUP INC.

By: _____
Name:
Title:

SIXTH GEAR FUNDING TRUST

By: _____
Name: Christopher J Kearns
Title: CRo

SIXTH GEAR SOLUTIONS CORP.

By: _____
Name: Christopher J Kearns
Title: CRO

SIXTH GEAR INC.

By: _____
Name: Christopher J. Kearns
Title: CRO

- 16 -

WARBURG PINCUS PRIVATE EQUITY IX,
L.P.

By: Warburg, Pincus IX LLC, its General
Partner

    By: Warburg, Pincus Partners LLC, its
    Managing Member

        By: Warburg, Pincus & Co., its
        Managing Member

By: _____
    Name: Dan Zilberman
    Title: Principal

ERROR! UNKNOWN DOCUMENT PROPERTY NAME.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                      :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |
| | : | |

------------------------------------------------------------------x

## ORDER PURSUANT TO RULE 9019 OF
## THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
## AUTHORIZING AND APPROVING A SETTLEMENT AMONG
## LEHMAN COMMERCIAL PAPER INC. AND SIXTH GEAR, ET AL.

Upon the motion, dated March 10, 2009 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtor, Lehman Commercial Paper Inc. ("LCPI"), as

debtors and debtors-in-possession (together, the "Debtors"), for an order, pursuant to Rule 9019

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and

approving a compromise and settlement on the terms set forth in a Settlement Agreement, dated

March 6, 2009 among LCPI, LB I Group, Inc., Sixth Gear Funding Trust, Sixth Gear Solutions

Corp., Sixth Gear Inc. and Warburg Pincus Private Equity IX, L.P. (the "Settlement

Agreement"), a copy of which is annexed hereto as Exhibit A, all as more fully set forth in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to

Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July

19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having

been provided, and it appearing that no other or further notice need be provided; and the Court

having reviewed the Motion; and approval of the Settlement Agreement being within the sound

discretion of the Court; and the relief requested in the Motion and the Settlement Agreement

being fair and equitable, in the best interests of the Debtors' estates, and above the lowest point

in the range of reasonableness; and after due deliberation and sufficient cause appearing therefor,

it is

   ORDERED that the Motion is granted; and it is further

   ORDERED that, pursuant to Bankruptcy Rule 9019, the Settlement Agreement is

approved; and it is further

   ORDERED that the Debtors are authorized to execute, deliver, implement and

fully perform any and all obligations, instruments, documents and papers and to take any and all

actions reasonably necessary or appropriate to consummate the Settlement Agreement and

perform any and all obligations contemplated therein; and it is further

   ORDERED that the Bankruptcy Court retains jurisdiction to enforce the

Settlement Agreement and any disputes arising thereunder.

Dated:  March __, 2009
  New York, New York


       _____
       UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

**Settlement Agreement**

**EXECUTION COPY**

# SETTLEMENT AGREEMENT

This settlement agreement ("Agreement") is entered into on this 6th day of March, 2009, among Lehman Commercial Paper, Inc. ("LCPI") as debtor and debtor in possession (the "Debtor"), LB I Group Inc. ("LB I"), Sixth Gear Funding Trust, Sixth Gear Solutions Corp. and Sixth Gear Inc. (together, "Sixth Gear") and Warburg Pincus Private Equity IX, L.P. ("Warburg Pincus").

# RECITALS

A.      On October 5, 2008, LCPI commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

B.      LCPI, Sixth Gear Funding Trust, and Sixth Gear Solutions Corp. are parties to that Amended and Restated Master Repurchase Agreement dated as of May 9, 2008 (the "MRPA"), pursuant to which LCPI, as Administrative Agent and Committed Purchaser, committed to purchase, upon the satisfaction of certain conditions precedent and on other terms as set forth in the MRPA, receivables of up to $750,000,000.  Fiserv Automotive Solutions Inc. ("Fiserv") is Custodian of the receivables attributable to the auto finance loans made possible by the MRPA (the "Receivables").  Capitalized terms not otherwise defined herein have the meanings assigned to them in the MRPA.

C.      LB I, Warburg Pincus, and Sixth Gear Inc. (among others) are parties to: (a) that Subscription Agreement dated as of April 2, 2007 (the "Subscription Agreement"); (b) that Stockholders Agreement dated as of April 12, 2007 (the

"Stockholders Agreement") and (c) that Registration Rights Agreement, dated as of April 12, 2007 (the "Registration Rights Agreement").

D.    Non-debtor LB I holds a 29.347% preferred equity interest in Sixth Gear Inc., Warburg Pincus holds a 68.476% preferred equity interest in Sixth Gear Inc., Norman Buchan holds a 1.173% preferred equity interest in Sixth Gear Inc., and Michael Barrington holds a 1.005% preferred equity interest in Sixth Gear Inc.

E.    Pursuant to the MRPA, LCPI advanced an aggregate of $26,286,974.11 to Sixth Gear in exchange for a pledge of Receivables bearing a face amount, as of March 2, 2009, of $24,850,024.05.  In addition, Sixth Gear funded Receivables through contributions of equity from its shareholders in the amount of $3,555,572.55 as of March 2, 2009.  The Receivables outstanding as of the date hereof, whether funded through LCPI or equity contributions, are referred to herein as the "Outstanding Receivables".

F.    Sixth Gear has alleged that, beginning on September 15, 2008 and on three occasions thereafter, LCPI failed to make funds available to Sixth Gear to purchase additional Receivables under the MRPA, equaling $3,572,258.06 in the aggregate.

G.    Following LCPI's failure to fund, but prior to LCPI's filing of its petition for relief under the Bankruptcy Code, Sixth Gear caused the Receivables that had been pledged to LCPI to be re-designated as owned by Sixth Gear and caused the cash representing collected funds that had been deposited into the MRPA's designated collection account to be moved into an account(s) under Sixth Gear's control; Sixth Gear continues to hold in separate accounts (the "Separate Accounts") all collected funds (the "Collections") (after allowing for Custodial and Servicing Fees and certain other excess income) in respect of the Outstanding Receivables.

- 2 -

H.    On October 27, 2008, Sixth Gear filed a Motion to Set Prompt Date for Assumption or Rejection of the Debtor's Amended and Restated Master Repurchase Agreement with Sixth Gear (the "Motion," Docket No. 1221), in which Sixth Gear contended, *inter alia*, that as a result of LCPI's failure to purchase the requested amount of Receivables, Sixth Gear suffered considerable damages necessitating the wind down of Sixth Gear.

I.    On November 17, 2008, LCPI responded to the Motion by announcing its intention to reject the MRPA and contending, *inter alia*, that Sixth Gear's actions with respect to the Collections violated the MRPA and violated the automatic stay provided for under Section 362 of the Bankruptcy Code.

J.    On November 21, 2008, the Bankruptcy Court entered an order confirming LCPI's rejection of the MRPA, permitting Sixth Gear to file a proof of claim against LCPI, and reserving the parties' rights, defenses, and obligations under the MRPA.

K.    In an effort to consensually resolve the claims of Sixth Gear and LCPI, and of LB I and Warburg Pincus as shareholders of Sixth Gear Inc., and to avoid protracted and uncertain litigation, the parties have agreed it is in their best interests to enter into this Agreement upon the terms and conditions herein.

**NOW, THEREFORE, UPON THE FOREGOING RECITALS, WHICH ARE INCORPORATED AS THOUGH FULLY SET FORTH HEREIN, IT IS HEREBY AGREED, BY AND BETWEEN LCPI AND LB I, ON THE ONE HAND, AND SIXTH GEAR AND WARBURG PINCUS, ON THE OTHER HAND:**

- 3 -

1.      WIND DOWN OF SIXTH GEAR. Warburg Pincus and LB I, as majority preferred shareholders of Sixth Gear Inc., agree it is necessary to wind down Sixth Gear Inc. and its subsidiaries as promptly as possible, and agree to take all reasonable and necessary steps to permit Sixth Gear Inc. and its subsidiaries to wind down as promptly as possible.  LB I agrees that, to the extent its consent shall be required in the future in connection with the wind down of Sixth Gear Inc. and its subsidiaries, it shall provide such consent, and execute such further documentation as is reasonably required, in its capacity as a preferred shareholder of Sixth Gear Inc., to effectuate and consummate such wind down.  For the avoidance of doubt, and without waiver by any party of any argument whether such approval is required or has previously been provided by LB I, the agreement reflected in this paragraph 1 is intended to memorialize the approval, effective as of November 3, 2008, by LB I, in its capacity as a preferred shareholder of Sixth Gear Inc., of the winding down of Sixth Gear Inc. and its subsidiaries, assuming such approval is required by section 2(e)(ii) of the Stockholders Agreement.

2.      DISTRIBUTION OF CASH ON HAND.  All cash and other assets of Sixth Gear exclusive of the Outstanding Receivables and all the Collections on the Outstanding Receivables received after the date hereof which are to be distributed in accordance with paragraph 4 below (as so excluded, the "Cash on Hand"), shall be first utilized to pay the obligations of Sixth Gear related to tax, administrative or such other liabilities as determined by Sixth Gear Inc.'s Board of Directors with the consent of LB I, not to be unreasonably withheld (as so determined, the "Obligations"); provided, however, that the foregoing consent of LB I shall only be required for the payment of any single Obligation in excess of $25,000 or of any one or more Obligation(s) to any single

- 4 -

person or entity (or affiliated entities) which, when aggregated with all other payments

(whether made since the date hereof or reasonably expected to occur) to such person or

entity, would exceed $25,000.  Any excess Cash on Hand after reserve or payment of the

Obligations shall be apportioned as according to the preferred equity ownership in Sixth

Gear Inc. (*i.e.*, as described in Recital D, above) and shall be distributed to such preferred

holders to such accounts as may be designated by such preferred shareholders from time

to time.  For the avoidance of doubt, such Cash on Hand available for distribution to

Sixth Gear Inc.'s shareholders after payment of the Obligations shall include all cash or

other assets on Sixth Gear Inc.'s balance sheet (excluding the Outstanding Receivables

and the Collections on the Outstanding Receivables received after the date hereof, as

discussed in paragraph 4 below), all cash in the Separate Accounts (including all

Collections on the Outstanding Receivables through the date hereof) and any cash being

held in escrow or separate accounts.  Nothing in this paragraph 2 is intended to or shall

prohibit Sixth Gear, in its sole discretion, from making interim distributions to Sixth

Gear's shareholders prior to the resolution of all of the Obligations.

     3.     TERMINATION OF MRPA.  By order of the Bankruptcy Court entered

on November 21, 2008, the MRPA has been rejected.  LCPI shall have no obligation to

make any further advances pursuant to the MRPA and Sixth Gear shall have no liability

or obligation to repay any amounts attributable to the MRPA.  Sixth Gear hereby waives

any damages claim arising from rejection of the MRPA.

     4.     DISTRIBUTION OF COLLECTIONS.  In settlement of any disputes

under the MRPA, Sixth Gear and LCPI agree that Collections received after the date

hereof (after payment of Custodial Fees, Servicing Fees, and other expenses for which

- 5 -

the Custodian or any other servicer are to be reimbursed pursuant to the Custodial

Agreement and the applicable servicing agreement, respectively, unless otherwise

determined by LCPI with the consent of Sixth Gear Inc.) on the Outstanding Receivables

shall be divided 50% to LCPI (the "LCPI Share") and 50% to Sixth Gear (the "Sixth Gear

Share"), provided, however, that LB I hereby irrevocably waives any interest as a

preferred shareholder in the Sixth Gear Share, which shall be reallocated pro-rata among

Sixth Gear Inc.'s remaining preferred shareholders (according to their preferred share

holdings in Sixth Gear Inc., calculated without inclusion of LB I's preferred shares);

provided, further, that each of Sixth Gear Inc. and Warburg Pincus hereby irrevocably

waive any interest which any of them may have in the LCPI Share, including any portion

of the Outstanding Receivables which have been funded through equity contributions and

agrees that no portion of the LCPI Share shall be subject to any re-assessment or claw-

back for any reason unless expressly provided for under the MRPA.  Amounts collected

in respect of the Outstanding Receivables after the date hereof shall be collected pursuant

to paragraph 6 hereof and thereafter shall be divided in accordance with this paragraph 4.

The LCPI Share and the Sixth Gear Share shall be distributed monthly, in accordance

with the times set forth in the MRPA, to such accounts as LCPI and Sixth Gear Inc. may

designate from time to time.

     5.     BOARD REPRESENTATION.  LB I hereby confirms that its

representatives on Sixth Gear Inc.'s Board of Directors resigned in September 2008 and

acknowledges that it has at no time since those resignations sought representation on

Sixth Gear Inc.'s Board of Directors nor participated in any board action. Each party

hereto hereby agrees that LB I shall remain entitled to representation on Sixth Gear Inc.'s

- 6 -

Board of Directors as provided in the Subscription Agreement and the Stockholders

Agreement.

6.    SERVICING OF RECEIVABLES.  Upon entry of the Final Order (as

defined in paragraph 16 hereof), Sixth Gear shall ensure the direction of the Collections

into the controlled accounts designated under the MRPA and shall no longer permit the

Collections to be deposited in the Separate Accounts.  If LCPI shall request, Sixth Gear

shall open new collection and lockbox accounts as determined by LCPI, on terms

(including control agreements) and with such financial institutions as are satisfactory to

LCPI.  Fiserv shall remain as sub-servicer of the Outstanding Receivables at least until

June 30, 2009, with Michael Boyle employed in the oversight of such servicing during

such time.  Any reasonable and documented expenses and servicing fees due to Fiserv

and Michael Boyle (or their respective replacements) shall be paid pursuant to the terms

of the MRPA unless otherwise determined by LCPI with the consent of Sixth Gear Inc.

(not to be unreasonably withheld).  Prior to June 30, 2009, Sixth Gear Inc. shall secure a

continuing servicing process reasonably satisfactory to LCPI for the Outstanding

Receivables, which may include continuing the outstanding servicing relationship with

Fiserv and Mr. Boyle, transferring the servicing rights to Aurora Loan Servicing, or

transferring the servicing rights and/or the Outstanding Receivables to another third

party, at the discretion of LCPI, with the consent of Sixth Gear Inc. (not to be

unreasonably withheld).  From and after the date hereof, LCPI shall manage all aspects

relating to the servicing of the Outstanding Receivables with (unless otherwise specified

herein) the consent of Sixth Gear Inc., which consent shall not be unreasonably withheld.

For the avoidance of doubt, any direction from LCPI relating to the disbursement of

- 7 -

funds in accordance with this Agreement shall not be deemed to relate to the servicing of

Outstanding Receivables and thus will not require the consent of Sixth Gear.  Control

agreements, servicing agreements and the like in furtherance of this paragraph 6 may be

entered into with respect to the Outstanding Receivables as reasonably determined by

LCPI.

       7.     RELEASE AND WAIVER IN FAVOR OF LEHMAN.  Except as to the

performance of the obligations set forth in this Agreement, each of Sixth Gear Inc., Sixth

Gear Funding Trust, Sixth Gear Solutions Corp., Warburg Pincus, for itself, and its

successors and assigns (collectively, the "Sixth Gear Releasing Parties"), hereby

expressly waive and release, unconditionally and irrevocably, any claims, counterclaims,

defenses, rights of setoff, debt, liens, losses, demands, damages, costs and causes of

action of whatever nature, whether asserted or unasserted, known or unknown,

unsecured, secured, priority, administrative or otherwise, that the Sixth Gear Releasing

Parties have (to and including the date of this Agreement) against LCPI and LB I and/or

any of their respective present and former directors, officers, employees, members,

partners, agents, representatives, affiliates, parents, subsidiaries, shareholders,

predecessors and successors in their respective capacity as such (the "Lehman Released

Parties"), arising from or relating to the MRPA or any swap agreements relating to Sixth

Gear with any Lehman Released Party or otherwise in any way connected to the creation,

operations, wind down or liquidation of Sixth Gear, including, without limitation, any

alleged failure to fund any amounts under the MRPA and any claims for rejection

damages with respect to the rejection of the MRPA; provided, however, that the

foregoing release shall not waive, diminish or in any way prejudice any rights of Sixth

- 8 -

Gear with respect to any customer claims under the Securities Investor Protection Act filed by Sixth Gear against Lehman Brothers Inc. (the "Permitted Claims"). Solely to the extent of the release set forth in this Section 7, each of the Lehman Released Parties shall be a third party beneficiary of this Agreement. Each party hereto agrees that neither LCPI nor LB I shall have any further obligation to fund any amounts to Sixth Gear, whether in connection with this Agreement, the wind down of Sixth Gear or otherwise.

8.      RELEASE AND WAIVER BY LEHMAN.  Except as to the performance of the obligations set forth in this Agreement, each of LCPI and LB I, for itself, its affiliated debtors and debtors in possession, and its successors and assigns (collectively, the "Lehman Releasing Parties"), hereby expressly waive and release, unconditionally and irrevocably, any claims, counterclaims, defenses, rights of setoff, debts, liens, losses, demands, damages, costs and causes of action of whatever nature, whether asserted or unasserted, known or unknown, unsecured, secured, priority, administrative or otherwise, that the Lehman Releasing Parties have (to and including the date of this Agreement) against Sixth Gear Inc., Sixth Gear Funding Trust, Sixth Gear Solutions Corp. and Warburg Pincus and/or any of their respective present and former directors, officers, employees, members, partners, agents, representatives, affiliates, parents, subsidiaries, shareholders, predecessors and successors in their respective capacity as such (the "Sixth Gear Released Parties"), arising from or relating to the MRPA or otherwise in any way connected to the creation, operations, wind down or liquidation of Sixth Gear; it being understood that neither LCPI nor LB I will object to any Permitted Claims. Solely to the extent of the release set forth in this Section 8, each of the Sixth Gear Released Parties shall be a third party beneficiary of this Agreement.

- 9 -

9.      COSTS AND EXPENSES.  Sixth Gear agrees to pay all reasonable fees, costs and expenses (including costs of counsel) of LCPI and LB I, whether in connection with this Agreement, the termination of the MRPA, the wind down of Sixth Gear, any disputes or claims arising from any transactions with Sixth Gear or otherwise; provided, however, that Sixth Gear shall not be required to pay such fees, costs and expenses in excess of $75,000 on behalf of LCPI and LB I in connection with (i) the documentation, negotiation and efforts to procure approval from the Bankruptcy Court of this Agreement or (ii) the termination of the MRPA.

10.      INDEMNITIES.  Sixth Gear agrees to indemnify and hold harmless LB I and each of the directors, officers, employees, agents, trustees, representatives, attorneys, consultants and advisors of or to LB I (each such person being an "Indemnitee") from and against any and all claims, damages, liabilities, obligations, losses, penalties, actions, judgments, suits, costs, disbursements and expenses, joint or several, of any kind or nature that may be imposed on, incurred by or asserted against any such Indemnitee in connection with or arising out of any investigation, litigation or proceeding (each, a "Proceeding"), whether or not such Proceeding is brought by any such Indemnitee or any of its directors, security holders or creditors or any such Indemnitee, director, security holder or creditor is a party thereto, whether direct, indirect, or consequential and whether based on any federal, state or local law or other statutory regulation, securities or commercial law or regulation, or under common law or in equity, or on contract, tort or otherwise, in any manner relating to or arising out of this Agreement, the Stockholders Agreement, the Subscription Agreement, the Registration Rights Agreement or any other related document, or any act, event or transaction related or attendant to any thereof;

- 10 -

provided, however, that (i) Sixth Gear shall not be liable for the payment of any portion of such claims, damages, liabilities, obligations, losses, penalties, actions, judgments, suits, costs, disbursements and expenses that are found by a final and nonappealable decision of a court of competent jurisdiction to have resulted from any Indemnitee's gross negligence or willful misconduct and (ii) Sixth Gear shall not indemnify the fees, costs and expenses otherwise covered by the proviso of paragraph 9 hereof.  Promptly after receipt by an Indemnitee of notice of the commencement of any Proceeding as to which the Indemnitee may be entitled to indemnification pursuant to this paragraph 10, such Indemnitee shall, if a claim for indemnification is to be made hereunder, notify Sixth Gear in writing of the commencement of the Proceeding; provided, however, that the failure of any Indemnitee to so notify will not relieve Sixth Gear of any obligation or liability that it may have to any Indemnitee hereunder or otherwise, except to the extent it has been materially prejudiced by such failure.  Each Indemnitee shall keep Sixth Gear reasonably informed of the progress of any Proceeding as to which such Indemnitee intends to seek indemnification pursuant to this paragraph 10 and shall defend any such Proceeding in good faith. Sixth Gear shall not be liable for any settlement by an Indemnitee of any Proceeding effected without Sixth Gear's consent (which consent shall not be unreasonably withheld).

11.    OWNERSHIP OF THE LOANS.  The parties hereto acknowledge that Sixth Gear Solutions Corp. is the legal owner of the auto finance loans underlying the Receivables, subject to the terms of this Agreement and that all Collections (whether by payment, repossession or otherwise) received on account of such loans, or through the enforcement thereof, shall be distributed as provided herein.  Notwithstanding such legal

- 11 -

ownership of the loans, LCPI shall remain entitled to all such reports, transaction statements and access to information with respect to the loans as provided under the MRPA, the Custodial Agreement and any applicable servicing agreement and shall be entitled to administer the Receivables as further set forth in paragraph 6.

MISCELLANEOUS.

12.    Nothing contained herein is intended or should be construed as an admission as to the validity of any claim of or against any party, or as a waiver of the rights of any party to dispute any claim except as expressly waived herein.

13.    Each party hereto represents that it is duly authorized to execute this Agreement.

14.    Each party hereto agrees to take all actions, provide all consents, and execute all documents as are reasonably necessary to effectuate this Agreement and/or the wind down of Sixth Gear.  For the avoidance of doubt. by executing this agreement, Warburg Pincus and LB I, in their capacities as shareholders of Sixth Gear Inc., consent to Sixth Gear Inc.'s entry into the Settlement Agreement and to the actions taken in furtherance of the Settlement Agreement, including without limitation for purposes of Delaware General Corporation Law Section 271, to the extent applicable.

15.    This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

16.    This Agreement shall become effective only upon entry of a final order, no longer subject to any appeal, of the Bankruptcy Court approving the Agreement (a "Final Order").  LCPI covenants that it will seek in good faith to promptly procure the

- 12 -

Final Order.  LCPI and Sixth Gear acknowledge their common interest in procuring the

Final Order and, subject to and consistent with that common interest, LCPI agrees to

provide Sixth Gear with an advance copy of any motion seeking approval of this

Agreement prior to its submission to the Bankruptcy Court and further agrees not to file

any such motion unless its contents shall be reasonably satisfactory to Sixth Gear.  LCPI

further covenants that it will oppose in good faith, any objection made to any motion

seeking approval of this Agreement and that it will provide notice to the other parties

hereto of any such objection sufficiently in advance of the response deadline to permit the

other parties hereto to seek to be heard by the Bankruptcy Court in connection with such

objection.

17.    Except to the extent otherwise set forth in paragraphs 7 and 8, nothing

expressed or referred to in this Agreement is intended to or shall be construed to give any

person or entity other than the signatories hereto any legal or equitable right or claim

under or with respect to this Agreement or any provision of this Agreement.

18.    Any consent requested from any party pursuant to this Agreement shall be

deemed given by such party if such party does not object to such action within ten

business days following receipt of notice of such request, delivered in accordance with

paragraph 22 hereof.  Upon the liquidation or dissolution of Sixth Gear, Sixth Gear may

assign its consent rights under this Agreement to a successor, or if not so assigned, no

further consent of Sixth Gear shall be required under the terms of this Agreement.

19.    In the event of any dispute between the parties as to their respective rights

and obligations under the terms of this Agreement, the parties agree to negotiate in good

faith in an effort to resolve such dispute.  If the parties are unable in good faith to resolve

- 13 -

any such dispute, the parties agree to submit the dispute to arbitration in New York, New York, such arbitration to be administered by the American Arbitration Association ("AAA") under its commercial arbitration rules.  The arbitration shall be arbitrated by a single arbitrator, mutually selected by the parties, with the AAA to appoint the arbitrator in the event that the parties are unable to agree on the selection within thirty (30) days following the initiation of the arbitration.  Judgment on any award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

20.     This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed entirely within such State.

21.     Any waiver, alteration, amendment or modification of this Agreement shall be valid only if made in writing and signed by the parties to this Agreement that are affected by such waiver, alteration, amendment or modification.

22.     All communications under this Agreement shall be in writing and shall be delivered by hand or facsimile or mailed by overnight courier or by registered or certified mail, postage prepaid, to the appropriate party at the address or facsimile number listed below (or at such other address or facsimile number as party may have been furnished to the other parties in writing).  Any notice so addressed shall be deemed to be given: if delivered by hand or facsimile, on the date of such delivery, if a business day and delivered during regular business hours, otherwise the first business day thereafter; if mailed by courier, on the first business day following the date of such mailing; and if mailed by registered or certified mail, on the third business day after the date of such mailing:

- 14 -

**If to LCPI or LB I**:

    c/o Lehman Brothers Holdings Inc.
    1271 Avenue of the Americas
    New York, New York 10020
    Fax: 646 758 3071
    Attn: Eric Salzman

with a copy to (which shall not constitute notice):

    Weil, Gotshal & Manges LLP
    767 Fifth Avenue
    New York, N.Y. 10153
    Fax: 212-310-8007
    Attn: Jacqueline Marcus

**If to Sixth Gear or to Warburg Pincus**:

    c/o Warburg Pincus Private Equity IX, L.P.
    466 Lexington Avenue
    New York, New York 10017
    Fax: 212 716-5199
    Attn: Dan Zilberman

with a copy to (which shall not constitute notice):

    Willkie Farr & Gallagher LLP
    787 Seventh Avenue
    New York, N.Y. 10019-6099
    Fax: 212-728-9592
    Attn: Jeffrey S. Hochman
          Terence McLaughlin

- 15 -

IN WITNESS WHEREOF, this Settlement Agreement has been executed by the parties thereto as of the date first written above.

**LEHMAN COMMERCIAL PAPER, INC.**

By: _____
Name: Jack D. McCarthy
Title: Senior Vice President

**LB I GROUP INC.**

By: _____
Name: Jack D. McCarthy
Title: Senior Vice President

**SIXTH GEAR FUNDING TRUST**

By: _____
Name:
Title:

**SIXTH GEAR SOLUTIONS CORP.**

By: _____
Name:
Title:

**SIXTH GEAR INC.**

By: _____
Name:
Title:

- 16 -

IN WITNESS WHEREOF, this Settlement Agreement has been executed by the parties thereto as of the date first written above.

LEHMAN COMMERCIAL PAPER, INC.

By: _____
Name:
Title:

LB I GROUP INC.

By: _____
Name:
Title:

SIXTH GEAR FUNDING TRUST

By: _____
Name: Christopher J Kearns
Title: CRO

SIXTH GEAR SOLUTIONS CORP.

By: _____
Name: Christopher J Kearns
Title: CRO

SIXTH GEAR INC.

By: _____
Name: Christopher J. Kearns
Title: CRO

- 16 -

WARBURG PINCUS PRIVATE EQUITY IX,
L.P.

By:  Warburg, Pincus IX LLC, its General
     Partner

    By:  Warburg, Pincus Partners LLC, its
        Managing Member

        By:  Warburg, Pincus & Co., its
            Managing Member

By: _____
     Name: Dan Zilberman
     Title: Principal

- 17 -

ERROR! UNKNOWN DOCUMENT PROPERTY NAME.