Presentment Date and Time: March 20, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Objection Deadline: March 20, 2009 at 11:30 a.m. (Prevailing Eastern Time)
Hearing Date and Time (Only if Objection Filed): March 25, 2009 at 10:00 a.m. (Prevailing Eastern Time)

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                   :
**In re**                                                          :        **Chapter 11 Case No.**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                       :        **08-13555 (JMP)**
                                                                   :
                    **Debtors.**                                   :        **(Jointly Administered)**
                                                                   :
                                                                   :
-------------------------------------------------------------------x

NOTICE OF PRESENTMENT OF MOTION AND PROPOSED
AMENDED RETENTION ORDER PURSUANT TO SECTIONS 327(A) AND 328(A)
OF THE BANKRUPTCY CODE AND RULE 2014(A) OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE TO AMEND THE ORIGINAL RETENTION
ORDER OF MCKEE NELSON LLP TO INCLUDE THE SUPPLEMENTAL
MATTERS, EFFECTIVE *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

   **PLEASE TAKE NOTICE** that the annexed motion (the "Motion") of Lehman
Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11
cases (collectively, the "Debtors"), requesting entry of an order (the "Amended Retention
Order"), pursuant to sections 327(e) and 328(a) of the Bankruptcy Code, Rule 2014(a) of the
Bankruptcy Rules, and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of
New York, amending the Original Retention Order[1] of McKee Nelson LLP ("McKee") for the
limited purpose of expanding the scope of McKee's retention to include the Supplemental
Matters, effective *nunc pro tunc* to the Commencement Date, all as more fully described in the
Motion, will be presented to the Honorable James M. Peck, United States Bankruptcy Judge, for
approval and signature on **March 20, 2009 at 12:00 p.m. noon (Prevailing Eastern Time)**.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

**PLEASE TAKE FURTHER NOTICE** that unless a written objection to the Motion and proposed Amended Retention Order, with proof of service, is served and filed with the Clerk of the Court and a courtesy copy is delivered to the Bankruptcy Judge's chambers and the undersigned so as to be received by **March 20, 2009 at 11:30 a.m. (Prevailing Eastern Time)**, there will not be a hearing and the Amended Retention Order may be signed.

**PLEASE TAKE FURTHER NOTICE** that if a written objection is timely served and filed, a hearing (the "Hearing") will be held to consider the Motion and the Amended Retention Order on **March 25, 2009 at 10:00 a.m. (Prevailing Eastern Time)** before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  March 10, 2009
     New York, New York

                     /s/ Richard P. Krasnow
                     Richard P. Krasnow
                     WEIL, GOTSHAL & MANGES LLP
                     767 Fifth Avenue
                     New York, New York 10153
                     Telephone: (212) 310-8000
                     Facsimile: (212) 310-8007
                     Attorneys for Debtors
                     and Debtors in Possession

Presentment Date and Time: March 20, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Objection Deadline: March 20, 2009 at 11:30 a.m. (Prevailing Eastern Time)
Hearing Date and Time (Only if Objection Filed): March 25, 2009 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :        08-13555 (JMP)
                                          :
                        Debtors.          :        (Jointly Administered)
                                          :
                                          :
------------------------------------------------------------------x
```

**MOTION OF THE DEBTORS PURSUANT TO
SECTIONS 327(e) AND 328(a) OF THE BANKRUPTCY CODE
AND RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE FOR AUTHORIZATION TO AMEND THE ORDER
APPROVING RETENTION OF MCKEE NELSON LLP, AS SPECIAL
COUNSEL TO THE DEBTORS, *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this Motion to amend this Court's order approving the retention of McKee Nelson LLP ("McKee") as special tax counsel to the Debtors (the "Original Retention Order"), to include services related to certain limited non-tax matters, as described more fully herein (the "Supplemental Matters"), and respectfully represent:

**Background**

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

4.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

**Jurisdiction**

5.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Lehman's Business**

6.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman has been

a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

7.    Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Relief Requested

8.    By this Motion, the Debtors request entry of an order (the "Amended Retention Order"), pursuant to sections 327(e) and 328(a) of the Bankruptcy Code, Rule 2014(a) of the Bankruptcy Rules, and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), amending the Original Retention Order for the limited purpose of expanding the scope of McKee's retention to include the Supplemental Matters, effective *nunc pro tunc* to the Commencement Date.  The proposed Amended Retention Order retains and incorporates the terms of the Original Retention Order except as expressly described herein.

9.    Since 2001, McKee has performed various legal services for the Debtors. Among other things, since 2005, the Debtors have relied on McKee to represent them in tax controversy matters involving a wide range of complex tax issues (the "Tax Matters").  The Tax Matters are significant in scope and cost, and the Debtors' retention of McKee to perform services related to the Tax Matters is the subject of the Original Retention Order.  In addition, over the past several years, the Debtors have relied on McKee to perform various other legal services in connection with various securitizations and capital markets transactions, which are

also complex and highly specialized.  As of the date hereof, much of the work performed by

McKee since the Commencement Date in connection with the securitizations and capital markets

transactions has been limited in scope and cost.  It is these matters that constitute the

Supplemental Matters and which are the subject of the proposed Amended Retention Order.

### Original Retention

10.      On October 14, 2008, the Debtors filed their Application for Authorization

to Employ, *nunc pro tunc* to the Commencement Date, McKee Nelson LLP as special tax

counsel to the Debtors, and the Declaration of Rajiv Madan in support of that application  (the

"Madan Declaration" and, collectively, the "Original McKee Application") [Docket No. 916].  A

copy of the Original McKee Application is attached hereto as Exhibit A.  Except as expressly

stated herein, the Original McKee Application is equally applicable to this Motion and is

incorporated herein.

11.      On November 5, 2008, the Court entered the Original Retention Order,

approving the Original McKee Application [Docket No. 1387].  A copy of the Original Retention

Order is attached hereto as Exhibit B.  Since the Commencement Date, McKee has been

performing tax services for the Debtors pursuant to the terms of the Original Retention Order and

has been paid $1,115,212.40  and $51,106.32 for fees and expenses, respectively, pursuant to the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and orders of this Court.  On or about

March 15, 2009, McKee will file its First Interim Fee Application seeking Court approval of

such fees and expenses.

### Proposed Amended Retention Order

12.      The Debtors seek to expand McKee's retention to include, *inter alia*, the

following Supplemental Matters:  (i) drafting and sending out compliance certifications required

under certain securitization documents; (ii) drafting and signing compliance opinions required under certain securitization documents; (iii) tracking and filing UCC continuation statements; (iv) renewing service of process agents; (v) engaging in discussions with trustees regarding deal documentation issues including waterfalls, derivative issues, filing requirements and other securitization legal matters; (vi) researching and reviewing aspects of previous deals in connection with current corporate or litigation matters (clauses (i)-(v), collectively, the "Maintenance Matters"); (vii) engaging in financing and/or securitization transactions or other dispositions undertaken by the Debtors' estates on behalf the Debtor or its affiliates; and (viii) any other securitization or capital markets matters requested by the Debtors related to the foregoing.

13.     McKee has provided legal services to the Debtors in connection with the Supplemental Matters since 2001.  Much of the ongoing work related to the Maintenance Matters includes updating and attending to open issues related to services performed by McKee prior to the Commencement Date, without which the Debtor's interests would be adversely effected.  McKee has diligently provided these services in good faith at the request of the Debtors both before and after the Commencement Date.

14.     The Debtors believe that the work to be performed in connection with the Maintenance Matters is akin to services performed by typical ordinary course professionals, and that such work will generally not exceed the $150,000 monthly cap set forth in the ordinary course professionals order entered by this Court.  However, given that the Debtors have already retained McKee in connection with the Tax Matters, the Debtors believe that McKee cannot be retained as an ordinary course professional, and that its retention for the Supplemental Matters must be addressed as set forth herein.

15.     As of the date hereof, McKee has accrued fees and expenses of approximately $145,000 in connection with the Maintenance Matters, and the Debtors expect that McKee will continue to accrue approximately $50,000 to $60,000 in additional fees and expenses per month related thereto.  If the Debtors request McKee's services in connection with any additional Supplemental Matters (*i.e.*, new financing or securitization transactions), such fees and expenses could increase.  The Debtors also anticipate that McKee will continue to accrue fees and expenses for the Tax Matters, which may range as high as $500,000 to $1,000,000 per month.

## Basis for Relief

16.     The Debtors' knowledge, information, and belief regarding the matters set forth in this Motion are based on and made in reliance upon the Madan Declaration and the Declaration of Jeffrey Johnson (the "Johnson Declaration"), a copy of which is attached hereto as Exhibit C.  The Johnson Declaration is intended to supplement, rather than replace, the Madan Declaration.  As noted herein, the Johnson Declaration incorporates the Madan Declaration in its entirety.

17.     The basis for the relief requested is also more fully set forth in the Original McKee Application.

## McKee Holds No Adverse Interest and its Retention is in the Best Interests of the Estate

18.     To the best of the Debtors' knowledge, McKee does not represent or hold any interest adverse to the Debtors or their estates with respect to the Supplemental Matters, except as may be set forth in the Johnson Declaration.  The Debtors have been informed that McKee will conduct an ongoing review of its files to ensure that no disqualifying circumstances

arise and, if any new relevant facts or relationships are discovered, McKee will supplement its disclosure to the Court. *See* Johnson Declaration at ¶ 15.

19.    Based on the foregoing and the disclosures set forth in the Johnson Declaration, McKee does not hold or represent an interest adverse to the Debtors' estates that would impair McKee's ability to perform the Supplemental Matters for the Debtors, objectively and in accordance with section 327(e) of the Bankruptcy Code.

20.    To the best of the Debtors' knowledge, neither McKee nor any partner, associate, or counsel thereof has any connection with, or any interest adverse to, the Debtors, their creditors, the United States Trustee or any of its employees, or any other party in interest or their respective attorneys and accountants, with respect to the Supplemental Matters. *See* Johnson Declaration at ¶ 13.

21.    The Debtors seek to retain McKee for the Supplemental Matters because: (a) McKee has extensive knowledge and experience in securitization and capital markets matters and is therefore well qualified to act on behalf of the Debtors with respect to such matters; (b) prior to the Commencement Date, McKee actively represented the Debtors and their affiliates with regard to various matters related to the Supplemental Matters; and (c) the Debtors believe that the continuation of such representation is in the best interest of the estates.

22.    In addition, as a result of its pre-petition representation of the Debtors, McKee's attorneys are familiar with the Debtors' business and transactions, including the relevant factual and legal issues, and are in the best position to provide the Debtors with the ongoing attention these matters require. *See* Johnson Declaration at ¶ 9. The Debtors believe that, given McKee's experience and familiarity with the Debtors, it would be imprudent and inefficient to lose the knowledge base and experience of McKee with respect to these ongoing matters during

these chapter 11 cases.  Given the specialized nature of the work performed and McKee's long-standing engagement by the Debtors, if the Debtors were required to retain counsel other than McKee in connection with the Supplemental Matters, the Debtors, the estates, and all parties in interest would be unduly burdened by the time and expense necessary for such counsel to become familiar with the intricacies of the Debtors' businesses.

23.    McKee has stated its desire and willingness to represent the Debtors in the Supplemental Matters and to render the necessary professional services with respect thereto. Based on the foregoing, the Debtors submit that the relief requested is necessary and appropriate, is in the best interests of the estates and creditors, and should be granted in all respects.  A form of the proposed Amended Retention Order is annexed hereto as <u>Exhibit D</u>.

24.    The Debtors request that McKee's retention for the Supplemental Matters be made effective *nunc pro tunc* to the Commencement Date to allow McKee to be compensated for work performed on behalf of the Debtors on or after the Commencement Date, but prior to the submission of this Motion.  McKee performed work with respect to the Supplemental Matters after the Commencement Date at the direction of the Debtors and in good faith.  Such services have been and will continue to be of value to the Debtors' estates and all parties in interest.[2]  *See* Johnson Declaration at ¶ 11.

---

[2]    Although *nunc pro tunc* applications are generally disfavored in this Circuit, courts have granted such applications when, among other things, an attorney performs services of "value" to the estate.  *See In re Hasset, Ltd.* , 283 B. R.  376, 379 (Bankr.  E. D. N. Y.  2002) (approving *nunc pro tunc* retention application); *see also In re Arkansas Co.  Inc.*, 798 F. 2d.  645 (3d Cir.  1986) (opining that bankruptcy courts have discretion in extraordinary circumstances to retroactively approve a professional's employment); *In re Triangle Chems.  Inc.* , 697 F. 2d 1280 (5th Cir.  1983) (holding that a bankruptcy court has discretion, as a court of equity, to consider whether such approval of employment should be granted *nunc pro tunc*).

## Professional Compensation

25.     The Debtors understand that McKee hereinafter intends to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and orders of this Court for all services performed and expenses incurred after the Commencement Date in connection with the Supplemental Matters.

26.     To the extent that any affiliates of the Debtors subsequently commence a chapter 11 case, which are jointly administered with these cases, the Debtors request that the relief herein apply to such affiliates and their respective chapter 11 estates.  McKee agrees to file such additional disclosure as necessary pursuant to sections 327(e) and 328(a) of the Bankruptcy Code.  *See* Johnson Declaration at ¶ 15.

## Notice

27.     No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditor's Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

28.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: March 10, 2009
New York, New York

By: /s/ Richard P. Krasnow
Richard P. Krasnow
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**EXHIBIT A**
**(Original McKee Nelson LLP Application)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtor
And Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------X
|  |  |  |
|---|---|---|
| In re: | : | **Chapter 11 Case No.** |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS INC., et al.** | : | **08-13555 (JMP)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |
|  | : |  |

---------------------------------------------------------------------------X

**APPLICATION OF THE DEBTOR AND DEBTOR IN POSSESSION**
**LEHMAN BROTHERS HOLDINGS, INC. PURSUANT TO SECTIONS 327(e) AND**
**328(a) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO EMPLOY,**
***NUNC PRO TUNC,* McKEE NELSON LLP AS SPECIAL TAX COUNSEL**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

        The application of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated

debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates,

"Lehman"), to employ McKee Nelson LLP as special tax counsel, represents:

<u>**Background**</u>

        1.    Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.    On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

### Jurisdiction

4.    This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Lehman's Business

5.    Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients, and individuals worldwide.  Its headquarters in New York and regional headquarters in London and Tokyo are complemented by a network of offices in North America, Europe, the Middle East, Latin America, and the Asia Pacific region.

6.    Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to these chapter 11 filings is contained in the Affidavit

2

of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

### Relief Requested

7.    The statutory predicate for the relief sought herein is 11 U.S.C. § 327(e) and § 328(a).  By this Application, the Debtors seek entry of an order, pursuant to section 327(e) of the Bankruptcy Code, authorizing the employment and retention of McKee Nelson LLP ("McKee" or the "Firm") as special tax counsel to continue to perform certain necessary legal services pertaining to the Debtors' tax controversy matters and related investigations, effective as of the Commencement Date.

### Basis for Relief

8.    The Debtors' knowledge, information, and belief regarding the matters set forth in this Application are based on, and made in reliance upon, the Declaration of Rajiv Madan (the "Madan Declaration"), which is attached hereto as Exhibit A.

9.    The retention of McKee under the terms described herein is appropriate under Bankruptcy Code sections 327(e), 328(a), and 1107(b).  Section 327(e) provides for the appointment of special counsel for a specific purpose where the proposed counsel does not possess any interest materially adverse to the debtor with regard to the matter(s) that will be handled by counsel.  Section 327(e) provides:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

10.     Moreover, section 1107(b) provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).  Simply put, section 327(e) of the Bankruptcy Code authorizes the retention of counsel who previously represented a debtor prepetition provided that:  (a) the appointment is in the best interest of the debtor's estate; (b) counsel does not hold an interest adverse to the estate with respect to the matter for which counsel is to be employed; and (c) the specified special purpose for which counsel is being retained does not rise to the level of conducting the bankruptcy case for the debtor in possession.  *See In re DeVlieg, Inc.*, 174 B.R. 497 (N.D. Ill. 1994); *see also In re AroChem Corp.*, 176 F.3d 610, 622 (2d Cir. 1999) (noting that "where the interest of the special counsel and the interest of the estate are identical <u>with respect to the matter for which special counsel is retained</u>, there is no conflict and the representation can stand") (emphasis in original).

### McKee Holds No Adverse Interest and its <br> <u>Retention is in the Best Interests of the Estate</u>

11.     To the best of the Debtors' knowledge, McKee does not represent or hold any interest adverse to the Debtors or their estates with respect to the matters as to which McKee is to be employed, except as may be set forth in the Madan Declaration.  *See In re AroChem Corp.*, 176 F.3d at 622 (emphasizing that, under section 327(e) of the Bankruptcy Code, potential conflicts must be evaluated only with respect to the scope of the proposed retention). The Debtors have been informed that McKee will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise and, if any new relevant facts or relationships are discovered, McKee will supplement its disclosure to the Court.  *See* Madan Declaration at ¶ 1.

4

12.    Based on the foregoing and the disclosures set forth in the Madan Declaration, McKee does not hold or represent an interest adverse to the Debtors' estates that would impair McKee's ability to perform professional services for the Debtors, objectively and in accordance with section 327(e) of the Bankruptcy Code, regarding the matters on which McKee is proposed to be engaged.  *See* Madan Declaration at ¶¶ 7-13.

13.    To the best of the Debtors' knowledge, neither McKee nor any partner, associate, or counsel thereof has any connection with, or any interest adverse to, the Debtors, their creditors, the United States Trustee or any of its employees, or any other party in interest or their respective attorneys and accountants, with respect to the matters for which McKee is to be employed.  *See* Madan Declaration at ¶ 8.

14.    The Debtors also seek to retain McKee because: (a) McKee is well qualified to act as special tax counsel; (b) prior to the Commencement Date, McKee actively represented the Debtors and their affiliates with regard to various matters, including tax controversy matters; and (c) the Debtors believe that continuation of such representation is in the best interest of the estates.  With offices in New York and Washington, D.C., McKee is a nationally recognized law firm of approximately 200 attorneys serving the complex legal needs of market-leading institutions, including several major financial institutions, in five focused areas: Tax Controversy, Tax Advisory Services, Capital Markets, White Collar/Enforcement and General Litigation.  *See* Madan Declaration at ¶ 2.  The Debtors have selected McKee as special tax counsel because of McKee's extensive knowledge and experience in tax controversy matters. With one of the largest tax groups of any law firm in the United States, McKee specializes in handling significant tax controversy matters for Fortune 500 companies at all levels of tax

controversy, including IRS audits, IRS appeals, trial and appellate litigation.    *See* Madan

Declaration at ¶ 3.

15.    Since 2005, McKee has represented the Debtors and their affiliates in tax

controversy matters involving a range of complex tax issues, a voluminous factual record

(hundreds of thousands of pages of documents), and tax years that span eleven years (1997 –

2007).  These tax controversy matters will continue during the administration of these chapter 11

cases.

16.    As a result of its prepetition representation, McKee's attorneys are

familiar with the Debtors' complex tax controversy matters, including the relevant factual and

legal issues, and are in the best position to assist the Debtors in handling the matters before the

IRS and in litigation.    *See* Madan Declaration at ¶¶ 4-6.  The Debtors believe that, given

McKee's experience and familiarity with the Debtors' tax issues, it would be imprudent and

inefficient to lose the knowledge base and experience of McKee with respect to these ongoing

matters during these chapter 11 cases.  Given the specialized nature of the work performed and

McKee's long-standing engagement on the Debtors' and their affiliates' tax controversy matters,

if the Debtors were required to retain counsel other than McKee in connection with the matters

on which McKee is to be employed as provided herein, the Debtors, the estates, and all parties in

interest would be unduly burdened by the time and expense necessary for such counsel to

become familiar with the intricacies of the Debtors' tax issues and business operations.

17.    McKee has stated its desire and willingness to represent the Debtors in

these matters and to render the necessary professional services as special tax counsel to the

Debtors.  Based on the foregoing, the Debtors submit that the relief requested is necessary and

appropriate, is in the best interests of the estates and creditors, and should be granted in all respects. A form of proposed order is annexed hereto as Exhibit B.

### Professional Compensation

18.     The Debtors understand that McKee hereinafter intends to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the local rules of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Local Rules"), and orders of this Court for all services performed and expenses incurred after the Commencement Date. Given the magnitude of the tax matters and the significant amount of work that must be done, it is anticipated that fees and expenses may range as high as between $500,000.00 and $1,000,000.00 per month for some period of time. *See* Madan Declaration at ¶ 6.

19.     In the one year prior to the commencement of this case, McKee received from Lehman Brothers, Inc. ("LBI"), an affiliate of the Debtors, $21,817,895.25 for services rendered to LBHI and its affiliates in five practice areas (Tax Controversy, Tax Advisory Services, Capital Markets, White Collar, and General Litigation) and related expenses. During the 90 days prior to the initiation of LBI's SIPA proceeding, McKee received payments from LBI in the aggregate amount of $9,713,088.27. McKee is owed an additional estimated amount of $2.1 million for work performed for the Debtors and certain of their affiliates prior to the Commencement Date. *See* Madan Declaration at ¶ 13.

20.     The Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and further orders of the Court, propose to compensate McKee at the Firm's regular hourly rates for legal and non-legal personnel, and to

reimburse McKee for all reasonable and necessary expenses pursuant to the provisions of sections 330 and 331 of the Bankruptcy Code. The current hourly billing rates for McKee professionals range from $620 to $995 for partners, $395 to $645 for associates and counsel, and $215 to $305 for paralegals. These rates are subject to periodic adjustment for normal rate increases and promotions. In lieu of separate charges for expenses for such items as photocopying, messenger and delivery or other courier service, computerized research charges, long distance telephone and telecopy charges, and secretarial overtime, McKee charges clients an amount equal to two percent of the firm's fees. McKee bills separately, however, for travel expenses, court filing fees, and similar third-party charges. *See* Madan Declaration at ¶ 15. The Debtors submit that such rates and charges are reasonable.

21.     To the extent that any affiliates of the Debtors subsequently commence a chapter 11 case, which are jointly administered with these cases, the Debtors request that the relief herein apply to such affiliates and their respective chapter 11 estates. McKee agrees to file such additional disclosure as necessary pursuant to sections 327(e) and 328(a) of the Bankruptcy Code. *See* Madan Declaration at ¶ 1.

## *Nunc Pro Tunc*

22.     McKee has continued to perform work on the Debtors' tax controversy matters in good faith after the Commencement Date to properly advance and protect the interests of the Debtors. McKee performed this work at the direction of the Debtors. Accordingly, it is appropriate that McKee be retained *nunc pro tunc*. *See* Madan Declaration at ¶¶ 4-6.

## Notice

23.     No trustee or examiner has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the

order entered on September 22, 2008 governing case management and administrative procedures for these cases [Docket No. 285] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the attorneys for the Debtors' postpetition lenders; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New York; and (vii) all parties who have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

24.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: October 14, 2008
        New York, New York

Lehman Brothers Holdings, Inc.
(for itself and on behalf of its affiliated
Debtors and Debtors in Possession)


By: _/s/ *David Coles*_____
      David J. Coles

Title: Chief Financial Officer

## Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS, INC., et al.** | : | **Case No. 08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF RAJIV MADAN, ESQ. IN SUPPORT OF
APPLICATION OF THE DEBTORS PURSUANT TO SECTIONS 327(e)
AND 328(a) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO
EMPLOY, *NUNC PRO TUNC*, McKEE NELSON LLP AS SPECIAL TAX COUNSEL**

RAJIV MADAN, being duly sworn, deposes and says:

1.          I am an attorney and member of the firm McKee Nelson LLP ("McKee"
or the "Firm"), proposed special tax counsel for Lehman Brothers Holdings Inc. ("LBHI") and
its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors"), and am
duly authorized to make this declaration on the firm's behalf.  McKee maintains its offices at
1919 M Street N.W., Suite 200, Washington, District of Columbia 20036 and One Battery Plaza,
34th Floor, New York, New York 10004.  I submit this Declaration in support of the Debtors'
Application pursuant to § 327(e) and § 328(a) of title 11 of the United States Code (the
"Bankruptcy Code") for Authorization to Employ, *Nunc Pro Tunc*, McKee Nelson LLP as
Special Tax Counsel (the "Application") and to comply with § 329 and § 504 of the Bankruptcy
Code and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the
"Bankruptcy Rules").  Except as otherwise indicated, I have personal knowledge of the matters

set forth herein, and, if called as a witness, would testify competently thereto.[1]  I will supplement this declaration if additional relevant information becomes available concerning any relationship between the creditors or interest holders of the Debtors and McKee.

### McKee's Prepetition Relationship with the Debtors and the Nature of Retention

2.      With offices in New York and Washington, D.C., McKee is a nationally recognized law firm of approximately 200 attorneys serving the complex legal needs of market-leading financial institutions and other major institutions in other market sectors in five focused areas: Tax Controversy, Tax Advisory Services, Capital Markets, White Collar/Enforcement, and General Litigation.  McKee has served as counsel to LBHI and its affiliates in all of its practice areas.

3.      With one of the largest tax groups of any law firm in the United States, McKee specializes in handling significant tax controversy matters for Fortune 500 companies before the United States government.  Our tax lawyers have expertise in a range of areas within tax, including international tax, partnership tax, corporate tax, transfer pricing, administrative dispute resolution, and litigation.  Many of the partners in the firm's tax group are former senior officials from the Department of Treasury or former tax litigators from the Department of Justice and the Internal Revenue Service ("IRS").  I am a former tax litigator from the IRS's New York office.  The firm represents a range of major domestic and foreign institutions, including several financial institutions, at all levels of tax controversy, including IRS audits, IRS appeals, trial and appellate litigation.  The firm's tax litigators have appeared before the U.S. Tax Court, U.S. Court of Federal Claims, Bankruptcy Court, and numerous U.S. District Courts and U.S. Courts of Appeals.

---

[1]      Certain of the disclosures herein relate to matters within the knowledge of other attorneys at McKee and are based on information provided by them.

2

4.      LBHI is a consolidated taxpayer and therefore files one combined tax return for itself and all of its affiliates.  Since March 2005, McKee has represented LBHI and its affiliates in a range of tax controversy matters (through an engagement with Lehman Brothers, Inc. ("<u>LBI</u>"), an affiliate of the Debtors).   These tax controversy matters will continue in bankruptcy.  Given that these tax controversy matters involve ongoing IRS audits and potential litigation, we are constrained in the level of detail we can provide in these papers regarding these matters.   Nevertheless, the ongoing tax controversy matters involve: more than twenty different transactions, a range of complex tax issues, a voluminous factual record (hundreds of thousands of pages of documents), and tax years that span eleven years (1997 – 2007).   The amount at stake in these matters could be in excess of $2 billion (inclusive of the Debtors' refund claims).

5.      With respect to the current IRS audits of the Debtors and their affiliates, the IRS has assigned more than 25 IRS officials to work on these audits, including IRS revenue agents, subject matter specialists, and IRS counsel.  In addition, the IRS is coordinating several of the issues with its National Office.  Since 2005, McKee has been involved in all aspects of the Debtors' and their affiliates' tax controversy defense, including managing the substantial document discovery sought by the IRS, making formal presentations to the IRS, defending depositions, responding to interrogatories, drafting Protests (legal memoranda), setting forth factual and legal rebuttals to the IRS positions, and negotiating with the IRS.

6.      More specifically, McKee represents the Debtors and their affiliates with respect to four distinct tax controversy matters:

a.      The first matter involves a claim for refund of over $500 million where the Debtors will be seeking from the IRS a refund of taxes, penalties and interest paid for the 1997-2000 tax years (the "<u>1997-2000 Refund Claim</u>").  The Debtors' refund claim relates to

three significant issues and four subsidiary issues.  The Debtors may need to litigate all three of the significant issues in order to recover from the United States the taxes, penalties and interest paid.    With respect to all seven issues, McKee served as counsel throughout the IRS administrative process.  Many of the issues implicated in the Debtors' claim for refund carry over into future years.  Consequently, the Debtors have a significantly larger potential exposure (than the approximately $500 million already paid) with respect to the 1997-2000 Refund Claim.

        b.      In the second matter, McKee has assisted Lehman's Tax Department in managing a significant IRS audit of the 2001-2005 tax years (the "2001-2005 Audit").  The IRS has been conducting this audit for approximately twenty-one months and is scrutinizing numerous issues.  While it is difficult to provide an estimate of potential exposure given that the audit is not yet complete, based on feedback from the IRS, we expect the IRS to make adjustments resulting in a substantial tax deficiency and implicating a dozen or more transactions.  Once the audit is complete, the Debtors may have the opportunity to settle some of the issues.  It is possible that the Debtors will need to litigate one or more of the contested issues arising from the 2001-2005 Audit against the United States.

        c.      The IRS has two other ongoing audits with respect to the Debtors and their affiliates, involving specific aspects of their business (the "Transaction Audits").  These other audits are in the final stages of discovery.  While the Transaction Audits involve a narrower group of transactions, they have required and may continue to require a substantial allocation of resources in order to defend the Debtors' position.

        d.      After the Commencement Date, the IRS opened an audit of the Debtors' 2006-2007 tax returns (the "2006-2007 Audit").  We anticipate that the IRS will carefully scrutinize a variety of transactions, some of which, but not all, are carryover

transactions from the 2001-2005 Audit.  As with the 2001-2005 Audit, the Debtors may have the opportunity to settle some of the issues; however, there is a possibility that some issues will need to be litigated.

          e.      In a letter dated October 2, 2008, the IRS informed Lehman that, due to the 180-day period for a governmental unit to file a proof of claim under section 502(b)(9) of the Bankruptcy Code, the IRS plans a significant increase in its examination efforts across all of Lehman's IRS audits.  Accordingly, we expect a concentrated effort over the next several months, including requests for documents, interrogatories, and potentially, IRS interviews of former employees.

          f.      The Debtors can anticipate that the tax controversy matters will take more than one year to resolve.  Given the range of tax controversy issues facing the Debtors and the depth and breadth of the IRS's audits, the Debtors can expect needing to allocate significant resources both to obtain their refund for the tax issues in the 1997-2000 period and to defend their positions with respect to the four ongoing audits.  Given the magnitude of the tax matters and the significant amount of work that must be done, it is anticipated that fees and expenses may range between $500,000.00 and $1,000,000.00 per month for some period of time.

### McKee's Relationship with Other Parties-in-Interest

          7.      McKee maintains a database containing the names of current and former clients and certain other parties related to such clients.  I caused McKee to review and analyze the conflict database as necessary in connection with this application.

          8.      Based upon this research, and to the best of my knowledge, information, and belief, neither I nor any attorney of McKee represents any entity (or its attorneys or accountants) in this chapter 11 case or in matters directly related to this chapter 11 case other

5

than the Debtors.  To the best of my knowledge, neither McKee nor any attorney at the firm

holds or represents any interest adverse to the estate with respect to the tax matters on which

McKee is to be retained.

9.       As part of its comprehensive legal practice, McKee's partners, associates,

and counsel have represented in the past and may currently represent certain of the Debtors'

creditors, equity security holders and other parties in interest (including subsidiaries and other

related entities).  These representations may include, among other things, advising with respect

to transactions in which the Debtors and/or their affiliates participated.   However, such

representations are not directly related to this Chapter 11 case.  McKee's partners, associates,

and counsel may in the future represent certain of the Debtors' creditors, equity security holders,

and other parties-in-interest (including subsidiaries and other related entities), but will not

undertake a representation directly related to these chapter 11 cases.

10.       To be retained as special counsel pursuant to section 327(e), McKee is not

required to meet the "disinterested" standard that would be necessary for retention pursuant to

section 327(a).   Nevertheless, I have compared the list of the Debtors' 30 largest unsecured

creditors against the list of current McKee clients.  Citibank N.A., The Bank of New York

Mellon Corp., Mizuho Corporate Bank Ltd., Svenksa Handelsbanken, KBC Bank, and ANZ

Banking Group Ltd. are current McKee clients.  Each of these accounted for less than 1% of

McKee's revenue since January 1, 2008.

11.       I am not related, and, to the best of my knowledge, no other McKee

attorney is related, to any United States Bankruptcy or District Judge for the Southern District of

New York or to the United States Trustee in this chapter 11 case.

12.       In the one year prior to the commencement of this case, McKee received

from LBI $21,817,895.25 for services rendered to the Debtors and their affiliates in five practice areas (Tax Controversy, Tax Advisory Services, Capital Markets, White Collar, and General Litigation) and related expenses. During the 90 days prior to the initiation of LBI's SIPA proceeding, McKee received payments from LBI in the aggregate amount of $9,713,088.27.

13.    There remains an outstanding balance of approximately $2 million due to McKee for time accrued through the Commencement Date for prepetition work performed on behalf of the Debtors and their affiliates.

**Professional Services Compensation**

14.    McKee does not hold or represent an interest adverse to the Debtors' estates in the matters upon which McKee is to be employed. McKee is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code with respect to these matters.

15.    During the course of this case, McKee will invoice the Debtors no less frequently than monthly for services rendered and charges and disbursements incurred. For professional services, McKee's fees are based on its guideline hourly rates, which are periodically adjusted. Presently, McKee's hourly rate structure ranges from $620 to $995 for partners, $395 to $645 for associates and counsel, and $215 to $305 for paralegals. In lieu of separate charges for expenses for such items as photocopying, messenger and delivery or other courier service, computerized research charges, long distance telephone and telecopy charges and secretarial overtime, McKee charges clients an amount equal to two percent of the firm's fees. McKee bills separately, however, for travel expenses, court filing fees and similar third-party charges.

16.    Consistent with the firm's policy with respect to its other clients, McKee

will continue to charge the Debtors for all services, charges and disbursements provided and/or incurred by third parties in the rendition of services.  These services, charges and disbursements include, among other things, costs for travel, business meals, messengers, couriers, expert consulting services, information technology services and witness fees and other fees related to trials and hearings.

17.    McKee has agreed to accept as compensation such sums as may be allowed by the Court on the basis of the professional time spent, the rate charged for such services, the necessity of such services to the administration of the estate, the reasonableness of the time within which the services were performed in relation to the results achieved and the complexity, importance and nature of the problems, issues or tasks addressed.  McKee intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in connection with its engagement in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Orders of this Court.  McKee will seek compensation for the hourly rates set forth above, subject to periodic increases in the normal course of the firm's business, often due to the increased experience of a particular professional.   McKee will seek compensation for the services of each attorney and paraprofessional acting on behalf of the Debtors at the then-current rate charged for such services, as set forth above.

18.    No promises have been received by McKee, or any attorney of the firm, as to payment or compensation for this case other than in accordance with the provisions of the Bankruptcy Code.  McKee has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under § 504(b)(1) of the Bankruptcy Code.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration was executed on October 8, 2008.

*/s/ Rajiv Madan*
Rajiv Madan, Esq.
Partner
McKee Nelson LLP

**EXHIBIT B**
**(Original McKee Nelson LLP Retention Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
                                                          :
In re:                                                    :            **Chapter 11 Case No.**
                                                          :
**LEHMAN BROTHERS HOLDINGS INC., et al.** :            **08-13555 (JMP)**
                                                          :
                **Debtors.**                              :            **(Jointly Administered)**
                                                          :
-------------------------------------------------------------------------X

## ORDER GRANTING APPLICATION OF
### THE DEBTORS PURSUANT TO § 327(e) AND § 328(a) OF THE
### BANKRUPTCY CODE FOR AUTHORIZATION TO EMPLOY, *NUNC PRO TUNC*,
### McKEE NELSON LLP AS SPECIAL TAX COUNSEL

Upon consideration of the Application of Lehman Brothers Holdings Inc. ("LBHI") and

its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors"), pursuant

to § 327(e) and § 328(a) of the Bankruptcy Code for Authorization to Employ, *Nunc Pro Tunc*,

McKee Nelson LLP as Special Tax Counsel (the "Application"); and upon the declaration of

Rajiv Madan, Esq. (the "Madan Declaration"), which is annexed to the Application; and the

Court being satisfied, based on the representations made in the Application and the Madan

Declaration, that McKee Nelson LLP ("McKee" or the "Firm") represents no interest adverse to

the Debtors or the Debtors' estates with respect to the matters upon which it is to be engaged,

under section 327 of the Bankruptcy Code as modified by section 1107(b); and the Court being

satisfied, based on the representations made in the Application and the Madan Declaration, that

the employment of McKee is necessary and would be in the best interests of the Debtors and

their estates; and it appearing that the Court has jurisdiction to consider the Application; and it

appearing that due notice of the Application has been given and no further notice need be given;

and upon the proceedings before the Court; and good and sufficient cause appearing: and after

due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is approved; and it is further

ORDERED that, pursuant to sections 327(e) and 328(a) of the Bankruptcy Code, the Debtors are authorized to employ and retain McKee as special tax counsel to the Debtors, effective as of the Commencement Date, for the matters identified in the Application in accordance with McKee's normal rates in effect from time to time and its disbursement policies; and it is further

ORDERED that McKee shall be compensated in accordance with the substantive standards set forth in section 328(a) of the Bankruptcy Code and shall file applications in compliance with the Bankruptcy Code, applicable Federal Rules of Bankruptcy Procedure, local rules of the Court and such other procedures as may be fixed by order of this Court, including but not limited to the Court's Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals; and it is further

ORDERED that, notwithstanding anything in this Order to the contrary, the United States Trustee shall have the right to object to McKee's interim and final fee applications (including expense reimbursements) on grounds that such applications do not meet the reasonableness standard provided for in section 330 of the Bankruptcy Code.

Dated:  New York, New York
        November 5, 2008

                        _s/ James M. Peck_____
                        HONORABLE JAMES M. PECK,
                        UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT C**
**(Declaration of Jeffrey Johnson)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                        :

In re                          :         **Chapter 11 Case No.**

                         :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :         **08-13555 (JMP)**

                         :

            **Debtors.**       :         **(Jointly Administered)**

                         :

                         :

---------------------------------------------------------------x

### DECLARATION OF JEFFREY JOHNSON, ESQ. IN SUPPORT OF MOTION OF THE DEBTORS PURSUANT TO SECTIONS 327(e) AND 328(a) OF THE BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO AMEND THE ORDER APPROVING RETENTION OF MCKEE NELSON LLP, AS SPECIAL COUNSEL TO THE DEBTORS, *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

Jeffrey Johnson, being duly sworn, deposes and says:

1.      I am an attorney and member of the firm McKee Nelson LLP ("McKee" or the "Firm"), special counsel for Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors"), and am duly authorized to make this declaration on the Firm's behalf. McKee maintains its offices at 1919 M Street N.W., Suite 200, Washington, District of Columbia 20036 and One Battery Plaza, 34th Floor, New York, New York 10004.

2.      I submit this Declaration in support of the Debtors' Motion pursuant to § 327(e) and § 328(a) of title 11 of the United States Code (the "Bankruptcy Code") for Authorization to Amend the Order Approving Retention of McKee Nelson LLP, as Special Counsel to the Debtors, *Nunc Pro Tunc* to the Commencement Date (the "Motion") and to comply with § 329 and § 504 of the Bankruptcy Code and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Except as otherwise indicated, I have personal

281890v.3

knowledge of the matters set forth herein, and, if called as a witness, would testify competently thereto.[1] I will supplement this declaration if additional relevant information becomes available concerning any relationship between the creditors or interest holders of the Debtors and McKee.

## Original Retention

3.      On October 14, 2008, the Debtors filed their Application for Authorization to Employ, *nunc pro tunc* to the Commencement Date, McKee Nelson LLP as special tax counsel to the Debtors, and the Declaration of Rajiv Madan in support of that application (the "Madan Declaration" and, collectively, the "Original McKee Application").

4.      On November 5, 2008, the Court entered an order approving the Original McKee Application (the "Original Retention Order"). Copies of the Original McKee Application and the Original Retention Order are annexed to the Motion.

5.      Since the Commencement Date (as defined in the Motion), McKee has been performing tax services for the Debtors pursuant to the terms of the Original Retention Order and has been paid $1,115,212.40 and $51,106.32 for fees and expenses, respectively, pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and orders of the Court.

6.      This Declaration supplements the Madan Declaration and, except as expressly provided herein, incorporates the Madan Declaration in its entirety.

## Proposed Amended Retention Order

7.      By the Motion, the Debtors are seeking to expand the scope of McKee's retention to include, in addition to the Tax Matters, certain limited non-tax matters (the "Supplemental Matters"). The purpose of this Declaration is to address the requirements of the Bankruptcy

---

[1]    Certain of the disclosures herein relate to matters within the knowledge of other attorneys at McKee and are based on information provided by them.

2

Code and the Bankruptcy Rules with respect to McKee's retention for such Supplemental Matters.

8.    As set forth in the Motion, the Supplemental Matters include, *inter alia*:  (i) drafting and sending out compliance certifications required under certain securitization documents; (ii) drafting and signing compliance opinions required under certain securitization documents; (iii) tracking and filing UCC continuation statements; (iv) renewing service of process agents; (v) engaging in discussions with trustees regarding deal documentation issues including waterfalls, derivative issues, filing requirements and other securitization legal matters; (vi) researching and reviewing aspects of previous deals in connection with current corporate or litigation matters (clauses (i)-(v), collectively, the "Maintenance Matters"); (vii) engaging in financing and/or securitization transactions or other dispositions undertaken by the Debtors' estates on behalf the Debtor or its affiliates; and (viii) any other securitization or capital markets matters requested by the Debtors related to the foregoing.

### McKee's Pre-Petition Relationship with the Debtors

9.    With offices in New York and Washington, D.C., McKee is a nationally recognized law firm that serves the complex legal needs of market-leading financial institutions and other major institutions in other market sectors in five focused areas: Tax Controversy, Tax Advisory Services, Capital Markets, White Collar/Enforcement, and General Litigation.  McKee has served as counsel to the Debtors in all of its practice areas.  As a result of the Firm's pre-petition representation of the Debtors, McKee's attorneys are familiar with the Debtors' business and transactions, including the relevant factual and legal issues.

10.    The Firm has an industry leading corporate/finance group that handles a wide range of novel and complex financings ranging from structured finance and securitization to financial and derivative product transactions.  The group also represents financial institutions and

other commercial lenders in complex secured and unsecured financings, including acquisition, senior syndicated, mezzanine, asset-based, recapitalizations and restructurings. The partners in the group, myself included, have advised clients from financial institutions, finance companies, government agencies, government sponsored entities, and investment banking firms on numerous transactions, including, *inter alia*, asset-backed securities issuances, re-securitization of financial assets, net interest margin transactions, and debt and equity offerings.

11.    Prior to the Debtors' chapter 11 filing, the Firm's corporate/finance group performed services for the Debtors with respect to the Supplemental Matters. At the Debtors' request, the Firm has continued to perform such services since the Commencement Date.

### McKee's Relationships with Other Parties-in-Interest

12.    McKee maintains a database containing the names of current and former clients and certain other parties related to such clients (the "Conflict Database"). As set forth in the Madan Declaration, the Firm reviewed and analyzed the Conflict Database as necessary in connection with the Firm's original retention application (the "Original Search").

13.    I have updated the Original Search and have conducted a new search including entities involved in the Supplemental Matters. Based upon this research, and to the best of my knowledge, information, and belief, neither I nor any attorney of McKee represents any entity (or its attorneys or accountants) in this chapter 11 case or in matters directly related to this chapter 11 case other than the Debtors. To the best of my knowledge, neither McKee nor any partner, associate, or counsel thereof has any connection with, or any interest adverse to, the Debtors, their creditors, the United States Trustee or any of its employees, or any other party in interest or their respective attorneys and accountants, with respect to the Supplemental Matters for which McKee is to be retained.

14.    The Debtors have provided McKee with an updated list of parties in interest in the Debtors' chapter 11 cases (the "Updated List"), which we are in the process of reviewing and analyzing based on the Conflict Database. To the extent required, the Firm will file a supplemental declaration which sets forth McKee's connections to the parties in interest on the Updated List.

15.    In addition, the Firm will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise and, if any new relevant facts or relationships are discovered, the Firm will supplement its disclosure to the Court. Furthermore, to the extent that any affiliates of the Debtors subsequently commence a chapter 11 case that is jointly administered with these cases, the Firm will make all disclosures necessary with regard to the Supplemental Matters.

### Professional Services Compensation

16.    McKee intends to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and orders of this Court for all services performed and expenses incurred after the Commencement Date in connection with the Supplemental Matters.

17.    Since the Commencement Date, McKee has accrued fees and expenses of approximately $125,000 in connection with the Maintenance Matters, and the Firm expects that fees will continue to accrue at the rate of approximately $50,000 to $60,000 per month with regard thereto. McKee expects that fees and expenses will accrue at a higher rate if the Firm is asked to undertake Supplemental Matters other than the Maintenance Matters. Furthermore, the Firm expects that it will continue to accrue fees and expenses for the Tax Matters, which may range as high as $500,000 to $1,000,000 per month.

5

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration was executed on March 10, 2009.

Jeffrey Johnson, Esq.
Partner
McKee Nelson LLP

**EXHIBIT D**
**(Proposed Amended McKee Nelson LLP Retention Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                           :
In re                                      :        Chapter 11 Case No.
                                           :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :        08-13555 (JMP)
                                           :
                      Debtors.             :        (Jointly Administered)
                                           :
                                           :
------------------------------------------------------------------x

ORDER GRANTING MOTION OF THE DEBTORS PURSUANT
TO SECTIONS 327(e) AND 328(a) OF THE BANKRUPTCY CODE
AND RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE FOR AUTHORIZATION TO AMEND THE ORDER
APPROVING RETENTION OF MCKEE NELSON LLP, AS SPECIAL
COUNSEL TO THE DEBTORS, *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

Upon consideration of the Motion of Lehman Brothers Holdings Inc. and its affiliated

debtors in the above-referenced chapter 11 cases (together, the "Debtors"), dated March 10,

2009, pursuant to Sections 327(e) and 328(a) of the United States Code (the "Bankruptcy Code")

and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the ("Bankruptcy Rules") for

Authorization to Amend the Order Approving Retention of McKee Nelson LLP ("McKee"), as

Special Counsel to the Debtors, *Nunc Pro Tunc* to the Commencement Date (the "Motion"); and

upon consideration of the Court's prior order dated November 5, 2008, approving the retention of

McKee as special tax counsel to the Debtors (the "Original Retention Order"), which is annexed

to the Motion; and upon the declaration of Jeffrey Johnson, Esq. (the "Johnson Declaration"),

which is annexed to the Motion; and the Court being satisfied, based on the representations made

in the Motion and the Johnson Declaration, that the employment of McKee for certain limited

non-tax matters, as more fully set forth in the Motion (the "Supplemental Matters"), in addition

to the matters described in the Original Retention Order, is necessary and would be in the best

interests of the Debtors and their estates; and the Court being satisfied, based on the representations made in the Motion and the Johnson Declaration, that McKee represents no interest adverse to the Debtors or the Debtors' estates with respect to the Supplemental Matters, under section 327 of the Bankruptcy Code as modified by section 1107(b); and it appearing that the Court has jurisdiction to consider the Motion; and it appearing that due notice of the Motion has been given and no further notice need be given; and upon the proceedings before the Court; and good and sufficient cause appearing: and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is approved; and it is further

ORDERED that, except as expressly provided herein, the terms of McKee's retention by the Debtors for the Tax Matters (as defined in the Motion), as approved under the Original Retention Order, shall remain unchanged and such Order shall remain in full force and effect; and it is further

ORDERED that, pursuant to sections 327(e) and 328(a) of the Bankruptcy Code, the Debtors are authorized to employ and retain McKee as special counsel to the Debtors, for, in addition to the Tax Matters, the Supplemental Matters identified in the Motion in accordance with McKee's normal rates in effect from time to time and its disbursement policies; and it is further

ORDERED that McKee shall be compensated for both the Tax Matters and the

Supplemental Matters in accordance with the substantive standards set forth in section 328(a) of

the Bankruptcy Code and shall file applications in compliance with the Bankruptcy Code,

applicable Bankruptcy Rules, local rules of the Court and such other procedures as may be fixed

by order of this Court.


Dated: March __, 2009
        New York, New York


_____
THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE