UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                            :
In re                                       :    Chapter 11 Case No.
                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :    08-13555 (JMP)
                                            :
                    Debtors.                :    (Jointly Administered)
                                            :
                                            :
------------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105 AND 364 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO GRANT FIRST PRIORITY LIENS IN CASH COLLATERAL POSTED IN CONNECTION WITH THE HEDGING TRANSACTIONS THE DEBTORS ENTER INTO THROUGH CERTAIN FUTURES AND PRIME BROKERAGE ACCOUNTS

Upon the motion, dated January 28, 2009 (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105 and 364 of the Bankruptcy Code, for authorization to grant first priority liens to broker dealers (the "Broker Dealers") in cash, securities, and other collateral (the "Collateral") that is posted in connection with hedging transactions that will include but is not limited to over the counter transactions (collectively, the "Hedging Transactions") the Debtors will enter into certain futures and prime brokerage accounts that the Debtors will open pursuant to the terms of those certain Institutional Futures Account Agreements, Prime Brokerage Account Agreements, and other related agreements (together, the "Agreements"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Creditors' Committee (the "Creditors' Committee"); (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

    ORDERED that the Motion is granted as modified herein; and it is further

    ORDERED that any unresolved objections are overruled; and it is further

    ORDERED that the Debtors, subject to the terms of the applicable Agreements and Hedging Transactions, are hereby authorized to post Collateral in connection with those futures, prime brokerage, and over the counter transaction related accounts (together, the "Accounts") to be established with the various Broker Dealers under the terms and conditions set forth in the Agreements; and it is further

ORDERED that the Debtor counterparty to a Hedging Transaction will use only its own assets to post Collateral and shall not be liable for the obligations of the Hedging Transactions of its affiliate Debtors; and it is further

ORDERED that the Debtors shall not post Collateral that exceeds industry standards as adjusted for a debtor in possession; and it is further

ORDERED that the Debtors are authorized to supplement or remove Collateral from the Accounts, as required by the applicable Agreement, Hedging Transaction, or the related agreement to the Hedging Transaction; and it is further

ORDERED that the Debtors are authorized to grant the Broker Dealers first priority liens in the Collateral; and it is further

ORDERED that the Debtors shall not include as Collateral available for use by the Debtors in any Hedging Transaction any property in which any entity claims an ownership interest raised in any objection to the Motion, including, in the case of objectors Newport Global Opportunities Fund LP, Newport Global Credit Fund (Master) L.P., PEP Credit Investor L.P., and Providence TMT Special Situations Fund L.P. (the "Objecting Funds"), the securities listed on the schedule attached to the October 24, 2008 email from the Objecting Funds' counsel to Debtors' counsel and in the case of objector Bank of China, the Bond identified in its objection; and it is further

ORDERED that the Debtors are hereby authorized to execute and deliver all instruments and documents, and take such other actions, as may be necessary or appropriate to implement and effectuate the Agreements, in the manner set forth herein, including, but not limited to the delivery of the Collateral and granting of first priority liens on the Collateral; and it is further

ORDERED that the Debtors' entry into Hedging Transactions shall be subject to the following (the "Hedging Protocol"):

- All proposed Hedging Transactions will be reviewed by an approval committee (the "Hedging Transactions Committee") established by the Debtors. The financial advisors to the Creditors' Committee (the "Advisors") will receive notice of, and may attend, all meetings of the Hedging Transactions Committee (each a "Hedging Transactions Meeting")[2] and will have access to the personnel of the Debtors involved with the proposed Hedging Transactions;

- "Open Derivative Position" means, in reference to the Hedging Protocol, an unterminated individual derivative contract or unterminated multiple derivative contracts with one or more counterparties the proposed hedge or hedges for which will be substantially similar and transacted at the same time;

- With respect to all proposed Hedging Transactions, the Debtors will provide (i) e-mail notification to the Advisors of any Hedging Transactions Meeting regarding the approval of a Hedging Transaction not later than one (1) Business Day[3] prior to such meeting, which e-mail must contain the material terms of the proposed Hedging Transaction and (ii) an information package (the "Information Package") as soon as practicable but not less than three (3) Business Days prior to the Hedging Transaction Meeting that will consist of (a) applicable legal documentation for the Open Derivative Position, (b) valuation statements, (c) valuation inputs and assumptions used by the Hedging Transactions Committee that relate to and were used to determine the Mid-Market Value of the Open Derivative Position and adjustments thereto, and (d) appropriate and customary risk measurement information calculated using standard market conventions;

- Informal discussions among the Debtors and the Advisors relative to hedging Group A Positions (as defined below) will commence no later than five (5) Business Days prior to the relevant Hedging Transaction Meeting;

---

[2] For the avoidance of doubt, the Hedging Transactions Committee and Hedging Transactions Meetings will consist of the same members and the same meetings regarding the assumption, assignment, and termination of derivative contracts pursuant to the order dated December 16, 2008 [Docket No. 2257], authorizing the Debtors to establish procedures for the settlement or the assumption and assignment of prepetition derivative contracts.

[3] A "Business Day" means any calendar day other than (i) a Saturday, Sunday or "legal holiday" as defined in Federal Rule of Bankruptcy Procedure 9006(a), or (ii) a day on which banks in New York are permitted to be closed.

- The Debtors may enter into a proposed Hedging Transaction for which the receivable of the Open Derivative Position has a mid-market value in favor of the applicable Debtor ("Mid-Market Value") greater than $25,000,000 (a "Group A Position") only if (i) the Creditors' Committee, a subcommittee, or other designee thereof consents one (1) Business Day before the Hedging Transaction is scheduled to be executed or two (2) Business Days after a Hedging Transactions Meeting during which such Hedging Transaction was approved or (ii) upon Court approval;

- The Debtors may enter into a proposed Hedging Transaction for which the Open Derivative Position is $25,000,000 or less only (i) if (a) the Advisors receive e-mail notification of the Hedging Transaction, which will include the material terms of the approved Hedging Transaction, (b) at least one (1) member of the Advisors attended the portion of the Hedging Transactions Meeting during which the proposed Hedging Transaction was discussed and approved, and (c) the financial advisors to the Creditors' Committee do not object within six (6) business hours, herein defined as the hours between 9:00 a.m. and 5:00 p.m. (Prevailing Eastern Time) on Business Days, of and after receipt of e-mail notification of the Hedging Transactions Committee's approval of such Hedging Transaction or (ii) upon Court approval;

- After the approval of a proposed Hedging Transaction, any further maintenance of such hedge by the Debtors will not require further approval by the Creditors' Committee or any designated subcommittee thereof or other designee; *provided*, *however*, if a Debtor's original strategy is changed or determined to be inappropriate with respect to a particular Hedging Transaction, the Advisors may commence a review of such Hedging Transaction at the Hedging Transaction Meeting occurring on the next Business Day;

- The Debtors will provide updates regarding (i) the number of Hedging Transactions that have been executed, (ii) the value of the collateral posted in connection with such Hedging Transactions, and (iii) an estimate of the mark to market value of the receivables from the corresponding open trades at least once every three (3) months either during (a) the Debtors' periodic case conferences to the Court, (b) presentations made to the Creditors' Committee that are made public, or (c) other presentations made available to all parties in interest; and

- The Debtors and the Creditors' Committee reserve all rights and remedies with respect to the Hedging Protocol and may seek to amend the Hedging Protocol upon Court approval.

ORDERED that entry of this Order is without prejudice to the rights of the Debtors, including, but not limited to, the right to seek further, other, or different relief regarding the Derivative Contracts; and it is further

ORDERED that the Debtors shall have thirty (30) days from the entry of this Order to (i) establish a separate bank account in the name of LBHI titled as the "Barclays First Lien Account" and (ii) deposit $10.5 million in the Barclays First Lien Account. The first priority liens granted to Barclays Bank PLC and Barclays Capital Inc. (together, "Barclays") pursuant to (a) paragraph 10 of the Interim Order (I) Authorizing Debtor To Obtain Postpetition Financing Pursuant To Sections 363 And 364 Of The Bankruptcy Code, (II) Granting Liens And Superpriority Claims To Postpetition Lenders Pursuant To Section 364 Of The Bankruptcy Code, And (III) Scheduling Final Hearing, dated September 17, 2008 [Docket No. 89] (the "DIP Order") in the Collateral (as defined in the DIP Order) and (b) paragraph 21 of the Order Authorizing And Approving Debtor's Sale Of Purchased Assets And Assumption And Assignment Of Executory Contracts And Unexpired Leases In Connection With Sale of Lehman Brothers' Investment Management Division, dated December 22, 2008 [Docket No. 2350] (the "IMD Sale Order"), shall be contemporaneously extinguished upon the deposit of $10.5 million into the Barclays First Lien Account and replaced by first priority liens against the Barclays First Lien Account in the same priority and to the same extent as granted to Barclays under the DIP Order and IMD Sale Order in the Collateral (as defined in the DIP Order) and under the IMD Sale Order in (x) the proceeds of the sale of the Purchased Assets (as defined in the IMD Sale Order) and (y) all deposit accounts and securities accounts of LBHI (as defined in the IMD Sale Order); and it is further

ORDERED that the Debtors and Barclays agree that the Debtors shall not use the $10.5 million deposited in the Barclays First Lien Account unless (i) the Debtors obtain Court authorization upon notice and hearing or (ii) the Debtors and Barclays consensually resolve any and all of Barclays' claims under the Senior Secured Superpriority Debtor In Possession Credit Agreement dated as of September 17, 2008 (the "DIP Agreement") and the DIP Order. The Debtors, the Creditors' Committee, and Barclays each reserve their rights with respect to the existence and amount of unpaid Postpetition Obligations (as defined in the DIP Order), and none of Barclays' other rights and remedies under the Postpetition Financing Documents (as defined in the DIP Order) or any other claims that Barclays, on the one hand, and the Debtors, on the other hand, may have against each other shall be affected in any way by this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order and/or the terms of any assumption and assignment consummated in the manner set forth herein.

Dated: March 11, 2009
      New York, New York

                              */s/ James M. Peck*
                              UNITED STATES BANKRUPTCY JUDGE