WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Alfredo R. Perez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                                  :
**In re**                                                         :  **Chapter 11 Case No.**
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                      :  **08-13555 (JMP)**
                                                                  :
                          Debtors.                                :  (Jointly Administered)
                                                                  :
                                                                  :
------------------------------------------------------------------x

**LBHI'S MOTION, PURSUANT TO SECTIONS 105(A)
AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULE 6004, FOR AUTHORIZATION TO ENTER INTO MASTER
REPURCHASE AGREEMENT WITH LEHMAN BROTHERS BANK**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

    Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors and debtors in possession (together, the

"Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this Motion

and respectfully represent:

**Preliminary Statement**

    1.  As this Court is aware, LBHI's indirect wholly owned non-debtor

subsidiary, Lehman Brothers Bank, FSB ("LBB" or the "Bank"), is a valuable asset of

LBHI's estate.  This Motion represents another effort by LBHI to preserve the opportunity to realize the value of its equity interest in the Bank, which was recently reported at approximately $467 million.  LBHI seeks authorization to enter into a master repurchase agreement with LBB to provide the Bank the temporary liquidity that it currently needs in the ordinary course of business to protect its loan servicing business.  Specifically, in connection with LBB's mortgage loan servicing business, the Bank's wholly owned subsidiary, Aurora Loan Services LLC ("Aurora"), requires temporary access to cash of up to $325 million in order to assure its ability to satisfy monthly advance obligations arising in connection with the servicing of mortgage loans.  If Aurora should fail to satisfy these advance obligations, it could risk termination as servicer of the loans (and loss of the related fee stream).  Not only would Aurora's business be seriously disrupted and the economic value of the Bank's franchise be diminished, but the Bank would also run the risk that its regulators may significantly limit its activities.

2.     To assist LBB with its current funding needs, LBHI has decided to enter into a master repurchase agreement with the Bank that will provide the Bank with the temporary liquidity that it needs to allow Aurora to continue to operate in the normal manner its mortgage loan servicing business.  The master repurchase agreement represents an arm's-length transaction, is on market terms, and protects LBHI's cash investment through LBHI's custody of and interest in a portfolio of mortgage loans that will be purchased by LBHI (and repurchased within a few days by LBB).  LBHI believes that the terms of the master repurchase agreement are at least fully consistent with the minimum terms that the Debtors are required to make commercially reasonable efforts to

achieve for inter-company transfers of cash to their non-Debtor affiliates under the existing cash management order.

**Background**

3. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

5. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

6. On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

### Jurisdiction

7. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Lehman's Business

8. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

9. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

### Relief Requested

10. By this Motion, LBHI seeks authorization, but not direction, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code and Bankruptcy Rule 6004, to enter into a master repurchase agreement with the Bank (the "Repurchase Agreement") under which LBHI will purchase from the Bank a portfolio of residential mortgage loans for up to an aggregate amount of $325 million in exchange for the Bank's agreement to repurchase those loans on a date certain and for the purchase price paid by

LBHI plus an applicable spread.[1] LBHI expects that the cash that will be made available to the Bank under the Repurchase Agreement will enable Aurora to satisfy its advance obligations, a significant portion of which will begin to become due on March 16, 2009. Given the exigency of the circumstances and to avoid irreparable harm to its estate, LBHI further requests that the Court waive the requirements of Bankruptcy Rule 6004(g) and direct that the order granting the relief requested herein be effective immediately. As set forth more fully below, LBHI's decision to enter into the Repurchase Agreement represents a reasonable exercise of its business judgment and should be approved.

## The Master Repurchase Agreement

<u>Lehman Brothers Bank</u>

11. On February 17, 2009, this Court granted *LBHI's Motion, Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 9019 and 6004, for Authorization to Increase the Capital Level of Lehman Brothers Bank, FSB Through (I) the Settlement of Pending Disputes and (II) a Direct Capital Contribution of up to $15 Million* [Docket No. 2800] (the "<u>Capital Restoration Motion</u>"). *See In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Feb. 17, 2009) [Docket No. 2847] (Order Approving Capital Restoration Motion).[2]

12. As explained in the Capital Restoration Motion, the Bank is subject to the regulatory authority of the Office of Thrift Supervision (the "<u>OTS</u>") and its

---

[1] The Repurchase Agreement remains subject to regulatory approval by the Office of Thrift Supervision.

[2] The Capital Restoration Motion and the record of the February 17, 2009 hearing on such motion, including the testimony and presentation made by LBHI's Chief Restructuring Officer, Mr. Bryan Marsal, are incorporated by reference herein.

deposits are insured by the Federal Deposit Insurance Corporation (the "<u>FDIC</u>" and together with the OTS, the "<u>Regulators</u>").  The OTS and FDIC regulations impose strict restrictions on the Bank's operations.  The Regulators routinely monitor the Bank's capital and business, such as the performance of Aurora – one of the Bank's most significant operations.  If the Bank is not "adequately capitalized," or if there is a material risk to the Bank's capital or operations, such as, for example, a serious disruption to Aurora's business, the Regulators may take actions to restrict or control LBB's activities.

13.    Due to the serious risk that the Regulators could seize the Bank based upon the Bank's capital levels reported in its December 31, 2008 Thrift Financial Report ("<u>TFR</u>"), LBHI sought and obtained authority through the Capital Restoration Motion to take certain actions that would cause the Bank to increase its capital levels and comply with the applicable regulations.  LBHI's actions were intended to preserve the value of its equity interest in the Bank (as well as the value of Woodlands Commercial Bank, which was also at risk of seizure pursuant to a statutory cross-liability provision).  As explained in greater detail in the Capital Restoration Motion, the Bank is a valuable asset of LBHI's estate.  Less than six months ago, the value of LBHI's equity interest in the Bank was reported at approximately $1 billion with total assets of approximately $7.2 billion and total liabilities of approximately $6.2 billion.  *See* September 30, 2008 TFR, Schedule SC.  On that same date, the Bank was considered "well capitalized" with a total risk based capital ratio of 10.57% in full compliance of its capital regulations.  Notwithstanding the decline of the Bank's capital levels reflected on the Bank's December 31, 2008 TFR, the value of LBHI's equity interest was still reported at approximately $467 million.

Aurora's Advance Obligations

14. LBB has operated as a centerpiece of Lehman's multi-asset loan origination, purchasing and servicing business. The Bank's loan business involved issuing residential and commercial mortgage, small business, large corporate, and consumer loans. Primarily through Aurora, the Bank conducts the ninth largest residential mortgage loan servicing operation in the U.S., servicing over $116 billion in outstanding principal amount of residential mortgage loans for over 490,000 borrowers across the country.

15. In connection with its mortgage servicing business, Aurora is a party to various mortgage servicing agreements (the "Mortgage Servicing Agreements"), pursuant to which Aurora has agreed under certain conditions to advance to the mortgagees (the "Counterparties") monthly payments of principal and interest due on residential mortgages that Aurora services for the benefit of the Counterparties (the "Advance Obligations"). Aurora's advances are secured by a priority lien on the underlying properties that are mortgaged. When required, the advances are made on a monthly basis, typically in the middle of the month, even if monthly payments have not been received by such time. This places heavy cash needs on Aurora during the middle part of each month extending until the monthly mortgage payments are received. Generally, absent a default on the underlying mortgage, Aurora recovers the advanced payments on or about the end of the month when the borrowers' monthly payments become overdue. Thus, Aurora's current cash needs are short term because Aurora is expected to be, and generally is, reimbursed at the end of each month for all or most of its advance.

16. Due to the recent collapse of the financial markets, LBB lacks the ability to access the funding sources it would normally rely upon to finance Aurora. If Aurora is not be able to satisfy its monthly Advance Obligations, which will begin to peak on or about March 16, 2009, Aurora's Counterparties may, under certain circumstances, declare Aurora to be in default under the Mortgage Servicing Agreements. If that happens, the Counterparties could take precipitous actions that would threaten the value of Aurora's business and the Bank's enterprise as a whole and the Bank's Regulators may also take regulatory action out of concern that the Bank may no longer be able to rely on Aurora's business.

The Master Repurchase Agreement

17. To avoid such an outcome, LBHI has determined to enter into the Repurchase Agreement with the Bank that will provide the Bank the temporary liquidity that is needed to assure that Aurora will be able to satisfy its Advance Obligations. As explained below, not only does the Repurchase Agreement preserve the opportunity for LBHI to realize the value of its equity interest in the Bank, but it also represents a reasonable short term investment of LBHI's existing cash.

18. The Repurchase Agreement, a draft of which is annexed hereto as Exhibit "A," includes the following salient terms:[3]

- <u>The Transactions</u>. From time to time, LBHI and LBB agree that, upon LBB satisfying certain conditions, LBB may sell to

---

[3] This summary of the Repurchase Agreement is provided solely for purposes of brevity. To the extent there is an inconsistency between the language of this Motion and the Repurchase Agreement, the terms of the Repurchase Agreement (as finalized) shall control.

LBHI certain Eligible Mortgage Loans[4] (the "<u>Transactions</u>") in exchange for an amount paid by LBHI, with a simultaneous agreement by LBB to re-purchase from LBHI such Eligible Mortgage Loans at a date certain for the purchase price paid by LBHI plus an incremental amount as described below; unless a longer period is agreed to by LBHI, the repurchase is expected to occur within three to four business days, although LBB has the option to renew so long as it continues to satisfy the conditions precdent;

- <u>Valuation of Eligible Mortgage Loans</u>. Before any Transaction is entered into, the Bank must identify to LBHI a portfolio of Eligible Mortgage Loans to be subject to a Transaction; the Purchase Price to be paid by LBHI for a Transaction will be a percentage, generally ranging from 50% - 60%, of the value of the Purchased Loan determined based on the most recent valuation by a third party valuation firm as may be further adjusted by LBHI in its discretion;

- <u>Term</u>. Upon satisfying applicable conditions, LBB is entitled to enter into Transactions during a period of 180 days following the execution of the Repurchase Agreement and no Repurchase Date shall be later than such 180th day unless otherwise agreed to by the parties; thus, LBB is able to enter into a series of Transactions over this period and is expected to do so on a monthly basis starting in March to satisfy Aurora's cash flow needs;

- <u>Repurchase Price</u>. Upon a repurchase by LBB of the particular Purchased Mortgage Loan, LBHI shall receive the Purchase Price that it paid for the Purchased Mortgage Loan plus an amount equivalent to the interest that would accrue at a per annum rate equal to the LIBOR rate plus 6% on a 360-day year basis for the actual number of days during the period commencing on the Purchase Date and ending on the Repurchase Date;

- <u>Maximum Purchase Price</u>. At no time may the aggregate outstanding Purchase Price for all Purchased Mortgage Loans by LBHI exceed $325,000,000;

---

[4] Capitalized terms not defined herein shall have the meanings ascribed to them in the Repurchase Agreement.

- Security Interest. In the event the Transactions are deemed to be loans, LBB pledges to LBHI, as security for the performance of LBB's obligations, a fully perfected first priority security interest in the Purchased Mortgaged Loans, all servicing rights related to the Purchased Mortgage Loans and other related assets; prior to any purchase, the original mortgage notes for an Eligible Mortgage Loan must be delivered to a third party custodian for LBHI's benefit;

- Margin Account Maintenance. LBHI shall determine the Market Value of the Purchased Mortgage Loans at intervals determined in its discretion. If at any time, the aggregate Asset Value of all Purchased Mortgage Loans is less than 100% of the aggregate outstanding Purchase Price, i.e., if the aggregate value of LBHI's collateral falls below the aggregate Purchase Price of the loans purchased by LBHI, LBHI may require LBB to transfer cash or additional Eligible Mortgage Loans in its sole discretion to restore the aggregate Asset Value to or above 100% of the aggregate outstanding Purchase Price;

- Remedies. If an Event of Default occurs, LBHI may exercise certain rights and remedies immediately without notice to LBB, including obtaining physical possession of all files related to the Purchased Mortgage Loans and liquidating the Purchased Mortgage Loans;

- Indemnification. LBB agrees to indemnify LBHI and its affiliates and their respective direct and indirect partners, shareholders, members, officers, directors, employees, agents and advisors for any Costs incurred relating to or arising out of this Agreement, any other Facility Document or any transaction contemplated by the Agreement.

**Sound Business Reasons Support LBHI's
Decision to Enter Into the Master Repurchase Agreement**

19.   LBHI seeks authorization, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to enter into the Repurchase Agreement to preserve the value of the Bank for the benefit of LBHI's creditors.

20.   Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, "the trustee, after notice and a hearing, may use, sell, or lease, other than in the

NY2:\1975993\06\16C_P06!.DOC\58399.0003              10

ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). When considering a transaction outside the ordinary course of business, courts in the Second Circuit, and others, require that such transaction be based upon the sound business judgment of the debtor. *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper* (*In Re Schipper*), 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc.* (*In re Cont'l Airlines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986).

21. It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

22. There are ample business justifications to support LBHI's entry into the Repurchase Agreement. First and foremost, by entering into the Repurchase Agreement and providing LBB with the temporary liquidity needed for Aurora to satisfy

its Advance Obligations, LBHI continues to preserve the opportunity to realize the value of its equity interest in the Bank.  Unless sufficient cash is immediately made available to the Bank, Aurora will be at risk of defaulting on its Advance Obligations.  Such defaults could result in actions by Aurora's Counterparties that would threaten the value of LBB's enterprise and may also cause the Bank's Regulators to take actions that could jeopardize the value of LBHI's equity interest in the Bank.

23.     In addition, LBHI's entry into the Repurchase Agreement, under the reasonable terms and conditions set forth therein, is a reasonable exercise of LBHI's business judgment.  LBHI's investment will be secured by (i) LBHI's custody and ownership of the underlying loans against which LBHI could exercise remedies in the event of LBB's default, and (ii) a security interest in those loans in the event the transaction is deemed to be a loan and not a purchase.  LBHI is also receiving interest at a market rate for the investment of its cash.  The short term of the Repurchase Agreement reduces risks that may be associated with the transaction.  In addition, Aurora is expected to recover the funds that it advances on its servicing rights in a relatively short time, and these recoupments can then be used to repurchase the loans from LBHI.  Lastly, to the extent that LBB defaults on the Repurchase Agreement, LBHI would be permitted to immediately exercise its remedies and minimize its losses.[5]

24.     LBHI further submits that the terms and conditions of the Repurchase Agreement provide its estate with greater security than that required for a

---

[5] In exercising its business judgment, LBHI has considered the potential limitations that may be placed on its remedies under the Repurchase Agreement in the event that the Bank's assets are seized by the Regulators and a receiver is appointed.  Even in that instance, LBHI believes that the exercise of its remedies would not be prohibited or otherwise stayed by applicable law.  *See* 12 U.S.C. § 1821(e)(8)(A).

transfer of cash to a non-debtor subsidiary by the existing cash management order. On November 6, 2008, this Court approved the Debtors' cash management order authorizing the Debtors to transfer cash to non-Debtor subsidiaries, provided that the Debtors exercise commercially reasonable efforts to obtain a note accruing at a market rate of interest and a valid perfected junior lien in exchange for the transfer of cash. If the Debtors are unable to obtain a note and junior lien or in the event the transfer exceeds certain minimum amounts, the Debtors must seek the approval of the Creditors' Committee prior to making the transfer. *See In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Nov. 6, 2008) [Docket No. 1416] (Cash Management Order).[6] Under the terms of the Repurchase Agreement, LBHI will receive both custody and ownership of the loans as well as an enforceable right to liquidate the Purchased Mortgage Loans in the event LBB does not satisfy its obligation to repurchase all of the Purchased Mortgage Loans within the applicable period.

25. For these reasons, LBHI's entry into the Repurchase Agreement is in the best interests of its estate and creditors and represents a reasonable exercise of its business judgment. As such, the relief requested in this Motion should be granted.

## Notice

26. No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii)

---

[6] LBHI believes that the cash management order authorizes its entry into the Repurchase Agreement with the Bank without further Court approval, but has brought this Motion out of an abundance of caution.

the attorneys for the Creditor's Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

27.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  March 12, 2009
      New York, New York

/s/ Alfredo R. Perez
Alfredo R. Perez

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                                  :
In re                                                             :    Chapter 11 Case No.
                                                                  :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :    08-13555 (JMP)
                                                                  :
           Debtors.                                          :    (Jointly Administered)
                                                                  :
                                                                  :
------------------------------------------------------------------x

**ORDER GRANTING LBHI'S MOTION, PURSUANT TO
SECTIONS 105(A) AND 363 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULE 6004, FOR AUTHORIZATION TO ENTER INTO
MASTER REPURCHASE AGREEMENT WITH LEHMAN BROTHERS BANK**

Upon the motion, dated March 12, 2009 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for authorization to enter into a master repurchase agreement (the "Repurchase Agreement") with its indirect wholly owned non-debtor subsidiary, Lehman Brothers Bank, FSB, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing

case management and administrative procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of LBHI, its estate and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

    ORDERED that the Motion is granted; and it is further

    ORDERED that, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, LBHI is authorized, but not required, to enter into the Repurchase Agreement; and it is further

    ORDERED that the requirements of Bankruptcy Rule 6004(g) are waived and this Order shall be effective immediately upon its entry; and it is further

    ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: March __, 2009
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE