**Hearing Date: March 25, 2009 at 10 a.m. (Prevailing Eastern Time)**
**Objection Deadline: March 20, 2009 at 12:00 p.m. (Prevailing Eastern Time)**

RICHARDS KIBBE & ORBE LLP
One World Financial Center
New York, NY 10281
Telephone: (212) 530-1800
Facsimile: (212) 530-1801
Michael Friedman
Neil Binder

Attorneys for DK Acquisition Partners L.P.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                                          : Chapter 11
                                                               :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                       : Case No. 08-13555 (JMP)
                                                               :
                              Debtors.                         : Jointly Administered
---------------------------------------------------------------x

# OBJECTION TO DEBTORS' MOTION FOR ENFORCEMENT OF THE DECEMBER 23, 2008 ORDER APPROVING THE ASSUMPTION OF OPEN TRADE CONFIRMATIONS PURSUANT TO THE SETTLEMENT AGREEMENT

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

DK Acquisition Partners L.P. ("DK"), by its undersigned attorneys, hereby files this objection to Lehman Brothers Holdings, Inc.'s ("LBHI") and its affiliated debtor Lehman Commercial Paper Inc.'s ("LCPI") (collectively the "Debtors") Motion For Enforcement of the December 23, 2008 Order Approving the Assumption of Open Trade Confirmations Pursuant to the Settlement Agreement ("Motion"). In support of this Objection, DK respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      By their Motion, the Debtors seek an order compelling DK to comply with the terms

of that certain Settlement Agreement between DK and LCPI dated December 18, 2008 (the "Settlement") approved by Court Order on December 23, 2008 (the "Order"). DK, in fact, has fully complied with each and every term and provision of the Settlement and Order.

2.  The Settlement required DK to withdraw its Objection to Debtors' Motion to assume and reject certain pre-petition "LSTA Par/Near Par Trade Confirmations"[1] with DK for the purchase and sale of commercial loans (the "Trade Confirmations") with prejudice, DK has withdrawn its objections and has acknowledged the validity of each of the assumed Trade Confirmations. In other words, DK has fully kept its end of the bargain and is in full compliance with the terms of the Settlement and the Order. Having settled their dispute over the Trade Confirmations, DK and Debtors are now parties to these Trade Confirmations, each of which, pursuant to the terms of the Settlement Agreement, must be settled in accordance with the LSTA Standard Terms and Conditions for Par/Near Par Confirmations or LSTA Standard Terms and Conditions for Distressed Confirmations, as applicable (the "LSTA Standard Terms").

3.  The parties have agreed on commercially reasonable terms of closing on three of the four assumed trades and those three trades closed on December 24, 2008, within one day of the entry of the Order, even though the trade prices greatly exceeded the then current market price of such loans. One trade, however, remains open because the parties have not reached agreement on a manner of closing consistent with the LSTA Standard Terms.

4.  Despite this fact, Debtors are now attempting to improperly use the Settlement and

---

[1] LSTA refers to The Loan Syndications & Trading Association, Inc., a not-for-profit trade organization whose members include participants in the market for corporate loans and other similar private debt, which periodically promulgates certain standard forms to be used in the secondary bank loan market, including trade confirmations, purchase and sale agreements and assignment and acceptance agreements.

2

Order to coerce DK into closing the one remaining open Trade Confirmation relating to a certain revolving loan made to Tronox Worldwide, LLC (the "Tronox Confirmation") on terms unilaterally determined by the Debtors—such terms being wholly inconsistent with LSTA Standard Terms.

5. Mischaracterized as a motion to "enforce" the terms of the Settlement, the relief sought by the Debtors is in reality wholly unrelated to the Settlement and nothing more than a commercial dispute over the reasonableness of the terms of closing on the sale. The Debtors seek to have this Court determine whether DK is required to close on the purchase of the loan under the Tronox Confirmation notwithstanding the previously undisclosed fact that LCPI had defaulted on its obligations under the Tronox Credit Agreement prior to entering into the Settlement with DK.[2] This default rendered the underlying loan LCPI proposed to transfer to DK defective and subject to certain risks including subordination to loans held by non-defaulting lenders, decreased transferability and impairment of the loan's value. The critical fact of default was not known to DK at the time of the Settlement as it was disclosed only *after* DK's entry into the Settlement, and shortly before the loan was to close on January 6, 2009, the closing date requested by LCPI due to an agent "hold" on all assignments until after the new year. (Exhibit B, Dec. 24, 2008 email from Markowitz to Donovan).

6. DK has repeatedly informed LCPI that it is ready and willing to close on the Tronox Confirmation on LSTA Standard Terms, and, as discussed below, has provided LCPI with a resolution to settle the trade. DK's request for reasonable terms of closing to effectuate that trade can in no way be viewed as a violation of the Settlement or any order of this Court.

---

[2] Incredulously, the Debtors failed to disclose the default to DK throughout the entire trade settlement process and only disclosed it to DK on the day prior to the scheduled closing via a "pricing memo" showing a lower than anticipated "funded" portion of the loan. If not for the vigilance of DK's back office staff who discovered the mismatch in pricing the Debtors would have never disclosed their default leaving DK with a tainted loan.

3

7.   To the extent that Debtors believe that the terms of the closing proposed by DK are unreasonable or a violation of the Tronox Confirmation, the Debtors should commence an appropriate action alleging that DK has breached the terms of the Tronox Confirmation pursuant to which each of the parties would have the ability to conduct discovery and present their case as to whether DK's conduct amounts to a breach of contract. The Debtors do not, however, have a basis for arguing that DK has failed to comply with the Order of this Court. Accordingly, the relief sought in the Motion should be denied.

## BACKGROUND

8.   Commencing on September 15, 2008 and periodically thereafter, Debtors, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. LCPI filed its voluntary chapter 11 petition on October 5, 2008. Prior to the commencement of its bankruptcy case, LCPI had entered into the Trade Confirmations with DK for the purchase and sale of commercial loans. These Trade Confirmations set out the salient economic terms of the transaction and were subject to the parties' entry into transfer documentation, *i.e.*, assignment agreements for "par" trades. The Trade Confirmations incorporated the LSTA Standard Terms, including the requirement that LCPI execute and deliver "reasonably acceptable" instruments of transfer. (Exhibit A at ¶ 10).

9.   On November 14, 2008, LCPI moved for an Order approving its assumption of four of the Trade Confirmations, and the rejection of one. DK objected. Prior to the Court's decision on the merits of DK's Objection, DK and LCPI entered into the Settlement and DK agreed to withdraw its Objection to LCPI's assumption and rejection of the Trade Confirmations. The parties also agreed that the assumed Trade Confirmations would settle in accordance with LSTA Standard Terms. In accordance with the Settlement and Order, DK withdrew its Objection with prejudice and agreed to settle the assumed trades pursuant to LSTA Standard Terms.

4

10.     After entering into the Settlement, DK and LCPI executed the required transfer documentation necessary to close three of the assumed confirmations (two for purchases of loans at prices significantly higher than what was then the current market price of such loans). DK at that time was ready, willing and able to close on the Tronox Confirmation as well. However, shortly before closing on January 6, 2009 (the closing date requested by LCPI due to the agent "hold" on all assignments from December 25 through the end of the year, *see* Exhibit B), and *after* the Settlement had been entered, DK discovered that the loan LCPI proposed transferring to DK was one owned by LCPI at the time it had defaulted on its obligation to fund the Tronox loan. As such, LCPI was a "defaulting lender" under the Tronox Credit Agreement creating a material defect in the underlying Tronox loan, subjecting DK, as the purchaser, to potential future liability or subordination of its loan to loans held by non-defaulting lenders. Moreover, because any future sale of such loan by DK would require DK to disclose this defect in the "chain of title," such defect would likely to affect the value of the loan. DK, therefore, could not simply close on the Tronox Confirmation to the extent LCPI insisted on transferring this tainted loan. Since DK learned of LCPI's default, the parties have been negotiating reasonable terms under which DK could close the trade.

11.     The post-Settlement process of consummating the Tronox Confirmation has involved negotiation and discussion of what closing terms are "reasonably acceptable" to DK given the information discovered through DK's diligence about LCPI's default after the Settlement was entered into by the parties. The parties spent considerable time discussing potential resolutions. Although at first DK requested an indemnification to resolve the issue of future liability, upon further consideration of the risks faced due to the tainted loan, DK informed LCPI that it could close the trade only upon receipt of transfer documentation demonstrating that the assigned loan is not subject to defaulting lender risks or containing any other defects that could result in such loan being

treated differently than any other loan held by the other lenders. In response to this proffered resolution, Debtors filed the current Motion requesting that this Court require DK to close the trade on terms DK finds to be unreasonable and unacceptable, in contravention to the LSTA Standard Terms.

12. Therefore, this Court should deny Debtors' Motion because (1) DK has not breached the Settlement or Order, and (2) the parties are in a dispute as to the terms under which DK is required to close the Tronox Confirmation, which is an ordinary commercial dispute that, if not resolved by the parties, should be the subject of a separate adversary proceeding.

## ARGUMENT

### I. DK Has Fully Complied With the Terms of The Settlement As Approved By The Order

13. Significantly, the current dispute between the parties does not relate to the Settlement. Rather, it involves *what* the LSTA Standard Terms require with respect to the Tronox Confirmation—*i.e.*, whether LSTA Standard Terms require DK to purchase the defaulted loan LCPI proposes to sell to DK given the defects inherent in the assigned loan arising from that pre-Settlement default. Debtors have clearly confused the *assumption* of the Tronox Confirmation, which is the subject of the Settlement, with the trade settlement terms and what constitutes reasonably acceptable instruments of transfer, which the Settlement does not address.

14. The Settlement terms are clear. LCPI and DK agreed that DK would withdraw its objections to LCPI's assumption of the Trade Confirmations, including the Tronox Confirmation. DK has done so in full compliance with the Settlement. The Settlement also stated that the parties would agree to settle the assumed trades in accordance with LSTA Standard Terms. DK agrees with

6

this as well.

15.   LCPI's attempt to expand the terms of the Settlement is improper. A settlement, like any other contract, settles only those differences that the parties clearly intended to settle. *Valley Disposal v. Central Vt. Solid Waste Management Dist.*, 71 F.3d 1053, 1058 (2d Cir. 1995) (in any case involving a settlement, "it is the intent of the parties which governs"); *Janus Films, Inc. v. Miller* 801 F.2d 578, 582 (2d Cir. 1986) (noting that a court may only award forms of relief agreed to by parties in settlement). DK may only be bound by its agreement and cannot be coerced, as Debtors are attempting to do, to close on unreasonable terms or insufficient transfer documentation. *Janus Films, Inc.,* 801 F.2d at 582. Debtors have no greater rights than they would have in a non-bankruptcy trade settlement. *See, e.g., In re Butchman*, 4 B.R. 379, 381, (Bankr. S.D.N.Y. 1980) (noting that the Bankruptcy Code does not provide a debtor with rights that it would not otherwise be entitled to under applicable law). If, outside of the context of this bankruptcy, the Debtors and DK were parties to a trade confirmation acknowledged by both sides to be binding, the issue of what constitutes reasonable terms of closing would be an issue to be negotiated between the parties and, if there were no agreement, the potential subject of a civil action. The posture here is no different: the parties, by their settlement, acknowledge that they are parties to a binding trade confirmation. The Debtors may not convert this agreement into some greater right to close on terms that are not agreed upon by both parties.

16.   In fact, these terms of settlement of the trade proposed by LCPI could not have been contemplated at either the time the trade was entered into, or when the Settlement was reached, because LCPI did not disclose its default under the Tronox Credit Agreement until *after* the Settlement and Order were entered. Once DK discovered the default, DK continued to see if it could protect itself from the risks arising from such defect and proposed reasonable, necessary terms for

7

closing the Tronox Confirmation. Nothing in the Court's Order or the Settlement requires DK to do otherwise.[3]

17. DK, in full compliance with the Order, has withdrawn its objection to the assumption of the Tronox Confirmation. The parties also agreed to settle the trade in accordance with LSTA Standard Terms. DK's assertion of reasonable terms in accordance with LSTA Standard Terms is not a failure to comply with the Order of this Court. Accordingly, the Court should deny LCPI's Motion.

II. **Debtors' Motion To Enforce A Settlement Is Not The Proper Means By Which To Bring Its Claim For Breach Of Contract.**

18. To the extent the Debtors assert that the terms of closing proposed by DK are not in accordance with LSTA Standard Terms or is a breach of the Tronox Confirmation, the appropriate means for Debtors to assert such a claim is to initiate a civil action or, if appropriate, an adversary proceeding.

19. Once assumed via the Settlement, the Tronox Confirmation became a binding agreement granting to Debtors the same rights and remedies that they would have with respect to any binding contract. The Tronox Confirmation represents an agreement by the parties to close the trade pursuant to LSTA Standard Terms. The current dispute is nothing more than a commercial dispute between the parties as to how to resolve the closing terms for the trade in light of LCPI's default. The fact that the Tronox Confirmation was assumed in a bankruptcy proceeding does not affect or change the parties' rights and remedies during the trade settlement

---

[3] Debtors' suggestion that DK's "real reason" for not yet closing on the Tronox trade is the debt's current discounted trading is baseless. Motion at 8. Indeed, within one day after the entry of the Order, DK settled three of the Trade Confirmations assumed by the Debtors; two in which DK's purchase of loans were at prices significantly higher than what was then the current market price of such loans. Those trades were closed on LSTA Standard Terms in accordance with the confirmations.

8

process. *In re Butchman*, 4 B.R. at 381. It also does not absolve Debtors from dealing honestly and in good faith with its counter-parties.

20. To the extent LCPI believes that the terms proposed by DK are not LSTA Standard Terms or are commercially unreasonable, LCPI's remedy is to commence an action in which each party will have an opportunity to take discovery and present evidence as to whether DK's failure to close the trade on the terms offered by LCPI amounted to a breach of contract.

21. Such action should be brought in state court. First, a claim by LCPI for breach of the Tronox Confirmation is not a core proceeding because it does not invoke substantive rights provided by title 11 and is not central to the Bankruptcy Court's function in administering the estate of the Debtors. *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship.*, No. 04-708 (GEL), 2004 U.S. Dist. LEXIS 8168, at *5 (S.D.N.Y. May 6, 2004). Second, although this Court may consider a state law breach of contract claim as a "related" claim under 28 U.S.C. § 1334(b) if it bears some relation to the bankruptcy case, in this case abstention would be appropriate. 28 U.S.C. § 1334(c)(1) (Bankruptcy Court may abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law"); *Id.* (noting that discretionary abstention is appropriate in cases tangential to the core proceeding and involving issues of state law such as breach of contract claims). Moreover, absent the parties' consent, a bankruptcy judge may not enter a final judgment on "related-to" claims, but rather must submit proposed findings of fact and conclusions of law to a district court judge, who then must review such findings and conclusions *de novo*. *Kerusa Co. LLC.*, 2004 U.S. Dist. LEXIS 8168, at *6; 28 U.S.C. § 157(c)(1). Any claim for breach of contract brought by Debtors would require discovery and an evidentiary hearing to determine whether the terms proposed by DK are in fact a breach of the Tronox Confirmation. DK submits that such a claim would be appropriately

9

heard by a state court to avoid distracting this Court from the orderly administration of these bankruptcy proceedings.

### III. In Any Event, DK Has Offered Reasonably Acceptable Terms Upon Which to Close the Tronox Confirmation

22. Upon discovering LCPI's default under the Tronox Credit Agreement, DK determined that this default subjected it to real and substantial risks. First, it is possible that one or more parties may take the position that because the loan was at one time held by a defaulting lender, the loan should be equitably subordinated to the loans held by non-defaulting lenders. Second, although the subject loans are typically freely transferable, the existence of a defaulting lender in the chain of title of the Tronox loan could affect DK's ability to later sell the loan. Finally, even if DK were able to sell the loan, the defects resulting from the default are likely to significantly impair the value of the loan. DK is entitled to receive a loan that would be treated the same as any other loan that was not subject to such a defect. Therefore, DK offered a reasonable resolution—the provision by LCPI of an assigned loan that does not have a defaulting lender in the chain of title—which would permit the trade to close, and LSTA Standard Term transfer documentation to be executed.[4]

23. DK has made it clear to LCPI that it is ready and willing to close the trade and that it will move forward as soon as LCPI is prepared to assign a loan without defects in the chain of title. These terms of transfer proposed by DK are reasonable and would protect DK and future purchasers from the risks discussed above. Yet, instead of working with DK to reach reasonable terms and conditions for the transfer of the assigned loan, Debtors are attempting to use this Court, under the

---

[4] Debtors' assertion that DK's legitimate concerns are "imagined" and are "excuses" is not borne out by Debtors' conduct. Indeed, if the value of the tainted loan Debtors are attempting to sell to DK is unaffected by LCPI's default, Debtors should be able to sell it at today's market price and replace it, as DK has requested, with a "non-tainted" loan purchased at that same market price. Debtors have not done so. One can assume that they have not done so for the reason that Debtors are aware that the tainted loan, in fact, does not have a value equal to that of a loan without such a defect in its chain of title.

10

pretext of enforcing its Order, to coerce DK into closing the Tronox Confirmation on unreasonable terms. This is an inappropriate use of the Order and, accordingly, for this further reason Debtors' Motion should be denied.

## CONCLUSION

For all the reasons set forth above, DK respectfully requests that this Court deny Debtors' Motion.

Dated: New York, NY
       March 20, 2009

>   /s/ Michael Friedman
>   Michael Friedman
>   Neil Binder
>
>   RICHARDS KIBBE & ORBE LLP
>   One World Financial Center
>   New York, New York 10281
>   Telephone: (212) 530-1800
>   Facsimile: (212) 530-1801
>
>   *Attorneys for DK Acquisition Partners L.P.*