Michael J. Kelly (MK-0915)
Nikhil Singhvi (NS-7607)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York  10019
(212) 728-8000

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |
|---|---|
| **In re** | ) Chapter 11 |
|  | ) |
| **LEHMAN BROTHERS HOLDINGS INC., et al.** | ) Case No. 08-13555 (JMP) |
|  | ) |
| **Debtors.** | ) (Jointly Administered) |
|  | ) |

_____

**DECLARATION OF ALAN WORDEN IN SUPPORT OF MOTION OF WWK HAWAII-WAIKAPUNA, LLC, WWK HAWAII-MOAULA, LLC, WWK HAWAII-HONU'APO, LLC, WWK HAWAII-LITTLE HONU'APO, LLC, WWK HAWAII-HOUSE PARCEL, LLC, WWK HAWAII-HOUSE PARCEL 2, LLC, AND WWK HAWAII-NAALEHU PARCEL 1, LLC FOR ORDER (I) SETTING PROMPT DATE FOR ASSUMPTION OR REJECTION OF PROJECT LOAN; (II) UPON REJECTION, GRANTING RELIEF FROM THE AUTOMATIC STAY; AND (III) GRANTING RELATED RELIEF**

I, Alan Worden, hereby declare pursuant to Section 1746 of Title 28 of the United States Code as follows:

1.  I am over 18 years of age and, if called as a witness, I could and would testify to the matters set forth herein based on my personal knowledge.

2.  I am submitting this declaration in support of the Motion of WWK Hawaii-Waikapuna, LLC, WWK Hawaii-Moaula, LLC, WWK Hawaii-Honu'apo, LLC, WWK Hawaii-Little Honu'apo, LLC, WWK Hawaii-House Parcel, LLC, WWK Hawaii-House Parcel 2, LLC, and WWK Hawaii-Naalehu Parcel 1, LLC (collectively, the "Hawaii Borrowers") For Order (I) Setting Prompt Date For Assumption Or Rejection Of

4798352.2

Project Loan; (II) Upon Rejection, Granting Relief From The Automatic Stay; And (III) Granting Related Relief (the "Motion").

3. I am the managing member of Windwalker Hawaii LLC, which is the managing member of WWK Hawaii Holdings LLC. WWK Hawaii Holdings LLC owns all the interests in the Hawaii Borrowers. The Hawaii Borrowers are parties to a Project Loan (defined below) with Lehman Brothers Holdings Inc. ("Lehman") that is the subject of the Motion. I am authorized by the above entities and the Hawaii Borrowers to submit this declaration on their behalf.

### The Moa'ula, Honu'apo, And Waikapuna Project

4. In 2006, the Hawaii Borrowers acquired approximately 5,700 acres of undeveloped land on the Big Island of Hawaii. The land is separated into three large parcels: Moa'ula (approximately 2,050) acres, Honu'apo (approximately 1,643 acres) and Waikapuna (approximately 2,015 acres).

5. The purpose of the acquisition is to develop the land by converting it into large agricultural estates for sale as second home residential properties to wealthy buyers (the "Project"). The conversion involves the design and installation of basic infrastructure and amenities such as roads, water lines, and electricity. The conversion also involves obtaining development entitlements, regulatory permits, and development plan approvals and related permits which would allow an average density of one residence per 20 acres.

6. The land acquisition and conversion for the Project was anticipated to take three to five years. To date, the Project has retained 16 contractors and professionals separate from its own workforce, who in turn have employed approximately 70

employees to work on the Project.  When the construction phase of the Project begins, it is anticipated that the Project will retain an additional 13 local contractors employing an additional 98 employees.

7. All permit applications for the Moa'ula portion of the Project have been in process since September 2008.  Thus, the Moa'ula portion of the Project already supports 35 families of coffee farmers (148 workers in total) who are highly dependent on the economic success of the Project to provide much needed resources in the form of coffee processing equipment and co-operative marketing and management services.  With Lehman's knowledge and agreement, the Hawaii Borrowers extended commitments to the coffee farmers to provide various agricultural resources as a means of advancing the project and, in particular, in order to secure critical entitlements, permits, variances and land plan approvals from the County of Hawaii.

8. The Project already supports seven cattle ranches and it is estimated that the Project, once complete, will support approximately 60 new coffee farms.

**Financing Of The Project**

9. Lehman is the sole mortgage lender in connection with the Project.  Certain of the Hawaii Borrowers and Lehman are parties to a loan agreement dated as of August 14, 2006 (the "Loan Agreement"), as well as various other associated notes, mortgages and ancillary documents (collectively with the "Loan Agreement," the "Project Loan").[1]  Pursuant to the Project Loan, Lehman financed the land acquisition and committed to fund future development costs associated with the Project consistent with applicable budgets and plans.  A copy of the Loan Agreement is attached as <u>Exhibit A</u>.

---

[1] The documents comprising the Project Loan are listed in Schedule A to the Motion.

- 3 -

10. Pursuant to the Project Loan, Lehman committed to lend up to $105 million for the Project. Of that amount, the Hawaii Borrowers to date have borrowed approximately $43 million.

11. The Project Loan is the sole source of debt financing for the Project. The Project Loan provides 85% of the Project's operating expenses. In particular, the Project has yearly operating expenses of $1,539,500, for its U.S. mainland and Hawaiian employees' salaries and benefits, office expenses, travel costs, and other operating expenses. $1,308,000 of those yearly operating expenses are to be funded by the Project Loan, on a $109,000 per month basis.

12. The Loan Agreement at Section 11 prohibits the Hawaii Borrowers from incurring additional indebtedness, subject to certain exceptions.

**Lehman's Failure To Fund And Intention To Reject The Project Loan**

13. Beginning in September 2008, Lehman failed to fund requisitions under the Project Loan.

14. In particular, the borrowers' "Requisition #23" was submitted on September 11, 2008 and September 16, 2008. Lehman failed to fund $335,575 of the $586,744 requisitioned amount.

15. Requisition 24 was submitted on October 20, 2008. Lehman failed to fund $348,067 of the $594,507 requisitioned amount.

16. Requisition 25 was submitted on December 17, 2008. Lehman failed to fund $375,002 of the $637,659 requisitioned amount.

17. Requisition 26 was submitted on February 13, 2009. Lehman failed to fund $323,473 of the $748,171 requisitioned amount.

- 4 -

18. The only portions of Requisitions 23-26 that Lehman "funded" were those designated to pay interest on the Project Loan itself. The cash requested by the Project pursuant to the above-listed requisitions were intended for critical needs such as employees' salaries and overhead, contractors' fees for land use permits and applications, site surveys, and design activities.

19. All of the above-referenced requisitions are consistent in character and amount with the Project Loan, and the Hawaii Borrowers have not breached the Project Loan in any manner. Lehman has not contended otherwise.

20. Approximately two weeks ago, I spoke with a representative of Lehman who informed me of Lehman's intention to reject the Project Loan. Subsequently, the Hawaii Borrowers' outside counsel contacted Lehman's bankruptcy counsel who reported that Lehman would likely reject the Project Loan.

### Consequences Of Lehman's Failure To Fund

21. Lehman's failure to fund under the Project Loan has dire consequences for the Project. At present, the Project is at a virtual standstill.

22. Without Project Loan funding for the Project's operating expenses, the Project risks losing its own employees, many of whom have been working on the Project since the outset and have invaluable experience.

23. Furthermore, as set forth in an October 2008 letter to Lehman's counsel, the Project's local Hawaiian contractors working on predevelopment and design activities have gone unpaid due to a lack of funding. In particular, the Project owes at least $335,000 for past services rendered. This includes, among others, the Project's local attorneys and engineers, whose coordination with local regulators is essential for the

4798352.2

permitting processes but may be compromised due to the Project's inability to pay them. Moreover, unpaid contractors may quit the Project and/or file mechanics' liens, damaging all parties' interests.

24. In the tight-knit communities in Hawaii where the Project is attempting to develop its 5,700 acres, the failure to pay for past services, the interruption of local vendors' businesses, and the economic hardship placed on these important small businesses, including the coffee farms and cattle ranches, may create significant local-area ill-will which will damage the Project going forward. As local regulators become aware that local contractors are going unpaid, those regulators are likely to be less responsive to the Project's pending permits and applications. As discussed above, the Project is entirely dependent on numerous local permits and applications to realize the full value of the acquired land.

25. The prospect of damage arising from the permitting process is particularly acute because of a forthcoming 2010 Community Development Plan ("CDP") in the county of Hawaii (where the Project is located). Before Lehman's failure to fund under the Project Loan, the Project was on track to submit its permit and plan approval applications to the county for the Moa'ula, Honu'apo and Waikapuna parcels by the end of 2008. With Lehman's failure to fund past payables and future work, however, all efforts to submit permit and plan approvals for Honu'apo and Waikapuna applications stopped completely, and the Project's ability to call on vendors to assist in responding to officials' questions regarding the September 2008 Moa'ula submittal has been severely hampered. It is conceivable that the CDP review could impose severe land use restrictions, density limitations, and/or financial extractions that would render the

Project's original development plans unfeasible.  The potential new restrictions and extractions resulting from the CDP would likely have been avoided if the Project had submitted permits according to its original timetable.

26. The Project is further harmed by Lehman's inaction because at present the Hawaii Borrowers cannot remedy the lack of financing by finding another lender to resume the predevelopment activities.  As previously noted, under the terms of the Project Loan, the Hawaii Borrowers may not take on additional indebtedness.

27. Recognizing that the chances of Lehman assuming the Project Loan are low, the Hawaii Borrowers request prompt action to at least confirm Lehman's rejection of the Project Loan.  This would allow the Hawaii Borrowers to attempt to find another lender for the Project, even though they anticipate that finding replacement lending in the present market environment will be difficult and that any available financing will likely be on terms significantly more expensive to the Hawaii Borrowers than the Project Loan.

28. In addition, if the Hawaii Borrowers were permitted to pursue equitable claims in the Hawaii courts to subordinate Lehman's interests to a potential new lender, that would materially increase the Hawaii Borrowers' prospects of finding viable replacement financing.

4798352.2

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 20, 2009.

/s/ Alan Worden

Alan Worden

- 8 -