UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In Re
Lehman Brothers Holdings, Inc.

                           Debtor

08-13555(JMP)

--------------------------------------------------------X

In Re
BNC Mortgage LLC

                           Debtor

08-13555(JMP)

**AFFIRMATION IN OPPOSITION TO**
**MOTION TO LIFT STAY**

--------------------------------------------------------X

ANDREW S. KOWLOWITZ, ESQ., aware of the penalties of perjury, hereby affirms the

following:

1.      I am associated with the law firm of FURMAN KORNFELD & BRENNAN LLP,

attorneys for the defendant, Daniel Chan, Esq. ("Attorney Chan"), in a related matter and I am

therefore fully familiar with the facts and circumstances stated herein based upon my review of

the file maintained by my Firm.

2.      Attorney Chan is one of the  multiple named defendants in an action currently

pending in Kings County Supreme Court bearing index number 41418/07 under caption

"Howard W. Tomlinson v. Cherry Ann Degannes, David Dodson, Encore Capital Services, Inc.,

Jeffery Lacy, Avenue Mortgages, Inc., BNC Mortgage, Inc. and Daniel Chan, Esq." ("State

Court Action.")

3.      This Affirmation in Opposition submitted in response to Howard W. Tomlinson's

("Tomlinson") motion seeking an Order lifting the automatic stay on the State Court action by

virtue of Section 362(a) of the Bankruptcy Code due to the efiling of a voluntary petition seeking

bankruptcy protection under Chapter 11 of the Bankruptcy Code by BNC Mortgage, LLC, a subsidiary of Lehman Brothers.

4.    According to Tomlinson's Second Amended Verified Complaint dated October 1, 2008 ("Plaintiff's Complaint") prior to November 7, 2006, Tomlinson was the sole owner of a two family house located at 694 Crown Street, Brooklyn, New York 11213 ("the Premises"). See Exh. A.

5.    Sometime in October 2006, Tomlinson allegedly met with David Dodson ("Dodson") of Encore Capital Services, Inc, ("Encore") seeking to refinance his then-existing mortgage. See Exh. A ¶11.

6.    According to the Tomlinson's Complaint, Dodson apparently held himself out as a *bona fide* New York mortgage broker. See Exh. A ¶¶ 12-14.

7.    Dodson allegedly told Tomlinson that he was unable to refinance his home due to his poor credit rating and referred him to Jeffery Lacy ("Lacy") of Avenue Mortgage Inc. ("Avenue Mortgage"). See Exh. A ¶17.

8.    Lacy allegedly advised Tomlinson that his credit rating was "poor" and that Avenue Mortgage could not assist with refinancing, but recommended that he sell the property to a "straw-man" buyer (Defendant Cherry Ann Degannes) who could obtain a new mortgage and enter into a one-year lease and buy-back agreement with Tomlinson. See Exh. A ¶¶19-21.

9.    The Closing at issue in this matter was held on November 7, 2006. Attorney Chan appeared at the closing as the counsel for BNC Mortgage, Inc. (now known as "BNC Mortgage, LLC" and referred to hereinafter as "BNC") and followed BNC's closing instructions. Both Tomlinson, the seller, and Cherry-Ann Degannes ("Degannes"), the purchaser of the premises attended the closing without counsel, and both executed an Acknowledgment which

stated "We have been advised that Daniel Chan, Esq., is acting as the attorney for the Lender in connection with this transaction and does not represent either the Seller or the Purchaser." See Exh. B. [emphasis added]

10.    According to the Tomlinson's Complaint, during the closing, Tomlinson executed a lease with purchase option.  See Exh. A ¶¶28-29.

11.    On or about October 2, 2007, "A Notice of Default and a Right to Cure" was allegedly served on Degannes due to her alleged failure to make her mortgage loan payments on the premises. See Exh. A ¶30.

12.    On November 8, 2007, Tomlinson commenced the State Court action, but did not name Attorney Chan as a party. See Exh. C.

13.    After the Court denied its motion to dismiss, BNC interposed an Answer and a Third-Party Complaint naming Attorney Chan as the Third-Party Defendant.  See Exh. D. Attorney Chan appeared and interposed an Answer. See Exh. E.

14.    Thereafter, Tomlinson served a Second Amended Complaint naming Attorney Chan (with whom he has no attorney-client relationship) as a co-defendant. See Exh. F.

15.    Pursuant to a Preliminary Conference Order, the deposition of Tomlinson was held on December 22, 2008.  Shortly following Tomlinson's deposition and several days before BNC's scheduled deposition BNC filed the instant bankruptcy petition.

## TOMLINSON'S MOTION TO LIFT AUTOMATIC STAY MUST BE DENIED IN ITS ENTIRETY

16.    Section 362 of the Bankruptcy Code provides that a bankruptcy petition "operates as a stay, applicable to all entities," of the commencement or continuation of judicial proceedings against the debtor. See Memorandum of Law in Opposition to Motion to Lift Automatic Stay of Pending Action in the Supreme Court of the State of New York, Kings County ("Memo of

Law") Point I. Through the "automatic stay" found in <u>section 362(a) of the Bankruptcy Code</u>,
Congress has provided essential protections to debtors and creditors by centralizing all disputes.
<u>See</u> Memo of Law Point I. Subsection (d) of section 362, provides as follows, however:

> (d) On request of a party in interest and after notice and a
> hearing, the court shall grant relief from the stay provided
> under subsection (a) of this section, such as by
> terminating, annulling, modifying, or conditioning such
> stay-
> (1) for cause, including the lack of adequate protection of
> an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under
> subsection (a) of this section...
> (3) with respect to a stay of an act against single asset real
> estate under subsection (a)....

Because the instant application by Tomlinson concerns a stay of a judicial proceeding,
only <u>Section 362(d)(1)</u> is applicable.

17.    The burden of proof on a motion to lift or modify the automatic stay is a shifting
one and requires an initial showing of cause by the movant. <u>See</u> Memo of Law Point I.

18.    If the movant fails to make an initial showing of cause, however, the court should
deny relief without requiring any showing from the debtor that it is entitled to continued
protection. *Id.*

19.    The Bankruptcy Courts have recognized twelve factors to consider in determining
whether the automatic stay should be lifted to permit litigation to continue to completion in

another tribunal. These are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. See Memo of Law Point I.

19.    Although these factors provide guidance, as one might anticipate from the unstructured nature of the issue, existing case law indicates that the "decision of whether to lift the stay [is committed] to the discretion of the bankruptcy judge." See Memo of Law Point I.

20.    In the matter at hand, Tomlinson has not established cause and is not entitled to a lift of the stay.

21.    Although the movant does not have to establish that every one of the above referenced factors liens in his favor, the movant does have to establish cause, which the movant has not done in the instant matter.

22.    In the case at hand, if the stay is lifted and matter proceeds to a final resolution in the Supreme Court matter, only partial relief would be afforded to the parties therein.

23.   Attorney Chan served as the bank attorney on behalf of BNC and followed BNC's closing instructions in settling the underlying transaction.

24.   In the event liability is assessed against the defendants, Attorney Chan may be entitled to indemnification against BNC.

25.   The instant proceeding will affect Chan's ability to assert any potential claim for indemnification against BNC and will affect BNC's ability to satisfy any potential judgment. Accordingly, complete relief cannot be afforded to all parties if this matter is litigated in two different forums.

26.   Moreover, Attorney Chan's ability to assert counterclaims and recover damages is directly tied to the instant bankruptcy matter.

27.   As such, the mandatory abstention pursuant to 28 U.S.C. §1334(c)(2) does not apply because the Supreme Court lawsuit and the claims and potential cross-claims in this matter are directly related to the bankruptcy matter. Moreover, in the interest of judicial economy, the stay on the State Court action should not be lifted as the relief provided in that action will only allow for partial relief.

28.   Contrary to Tomlinson's assertion that the State Court action is well progressed, Tomlinson has served his Second Verified Complaint less than six (6) months ago, and discovery in this action has barely progressed. See Exh. D.

29.   To date Tomlinson is the only party to be deposed in this matter. As such, the parties are nowhere near to being "trial ready" in the State Court action, and the parties will not be harmed by a stay in the State Court action. As such, temporary staying this matter would not result in prejudice to Tomlinson or any of the defendants in the State Court action.

WHEREFORE, for the reasons states above ,Attorney Chan respectfully requests this

Court deny Tomlinson's motion to lift the stay in the Supreme Court matter, and grant Attorney

Chan such other and further relief as this Court deems just and proper.


Dated: New York, New York
       March 13, 2009


ANDREW S. KOWLOWITZ, ESQ.

SUPREME COURT OF THE STATE OF NEW YORK
<u>COUNTY OF KINGS</u>                                            X

Howard W. Tomlinson

                        **Plaintiff,**

          v.

Cherry Ann Degannes, David Dodson, Encore
Capital Services, Inc., Jeffery Lacy,
Avenue Mortgage, Inc., BNC Mortgage Inc. and
Daniel Chan, Esq.

                    **Defendant(s)**            X

**SECOND AMENDED
VERIFIED
COMPLAINT
Index No. 41418/07**

BNC Mortgage, Inc.

                 **Third-Party Plaintiff**

         v.

Daniel Chan, Esq.

                **Third-Party Defendant**

                                      **X**

      Plaintiff, Howard W. Tomlinson, by his Attorneys, Cone &
Kilbourn, for his Second Amended Verified Complaint, alleges:

    (1)    That at all material times Plaintiff, Howard W. Tomlinson, is a
            resident of Kings County, New York with an address at 694
            Crown Street, Brooklyn, New York 11213.
    (2)    That at all material times Defendant, Cherry Ann Degannes, is
            a resident of Nassau County, New York with an address at 9
            Lombardi Place, Amityville, New York 11701.

(3)     That upon information and belief at all material times
        Defendant, David Dodson, is the owner/manager/operator of
        Defendant Encore Capital Services, Inc. with an address
        located at 100 Garden City Plaza, Garden City, New York
        11530.

(4)     That at all material times Defendant, Encore Capital Services
        Inc. is an entity duly organized and operating pursuant to law
        with a principal place of business located at 100 Garden City
        Plaza, Garden City, New York 11530.

(5)     That upon information and belief at all material times
        Defendant, Jeffery Lacy, is the owner/manager/operator of
        Defendant, Avenue Mortgage, with an address located at 57
        Manorhaven Blvd., Port Washington, New York 11050.

(6)     That at all material times Defendant, Avenue Mortgage, is an
        entity duly organized under law with a principal place of
        business located at 57 Manorhaven Blvd., Port Washington,
        New York 11050.

(7)     That at all material times Defendant, BNC Mortgage Inc.,
        is/was an entity organized under law with an office located at
        510 Broad Hollow Rd. #101, Malville, New York 11747 and
        with agents, Lehman Brothers Bancorp located at Bldg. 1000
        West St., Wilmington De. 19801 and Aurora Loan Services, a
        Lehman Bros. Company located at 10350 Park Meadows Dr.
        Littleton, Co. 80124.

(8)     That at all material times Defendant, Daniel Chan, Esq. is an
        attorney duly admitted to practice with an office located at
        104 W. Main St. Patchogue, N.Y. and counsel, Furman
        Kornfeld & Brennan LLP located at 545 5th Ave., 4th Floor New
        York, N.Y.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST ALL OF THE DEFENDANTS

(9)     That, prior to November 7, 2006 Plaintiff, Howard W.
        Tomlinson ("Tomlinson"), was the sole owner of a two family
        house located at 694 Crown St. Brooklyn, New York 11213.

(10)    That in October and November, 2006, Tomlinson was
        desirous of refinancing the then existing mortgage on the
        Crown St. residence.

(11)    That, in October, 2006, Tomlinson met with Defendant, David
        Dodson ("Dodson"), of Defendant, Encore Capital Services Inc.
        ("Encore"), to seek refinancing. During this meeting
        Tomlinson stressed the urgency of refinancing since he was
        behind on his mortgage payments.

(12)    That at all material times Dodson represented to Tomlinson

that he and his company, Encore, were in the business of acting as *bona fide* mortgage brokers in New York.

(13) That the representations alleged in paragraph "(12)" herein led Tomlinson to believe that Dodson and Encore were licensed real estate brokers.

(14) Upon information and belief, at all material times, Dodson was not licensed to operate as a mortgage broker in New York.

(15) Upon information and belief, at all material times, Encore was not licensed to operate as a mortgage broker in New York.

(16) That, in reliance upon the false representations set forth in paragraph "(12)" herein, Tomlinson asked Dodson and his company, Encore, to obtain refinancing for the Crown St. residence.

(17) That, in late October or early November, 2006, Dodson told Tomlinson that his credit rating was so "poor" that neither he, Dodson nor Encore could obtain the sought refinancing.

(18) Dodson then introduced Tomlinson to Defendant, Jeffery Lacy ("Lacy"), who represented to Tomlinson that he, Lacy, was the owner/operator of Defendant, Avenue Mortgage ("Avenue"). Lacy represented that both he and Avenue were licensed to operate as mortgage brokers in New York.

(19) Lacy told Tomlinson that he was aware of the urgency of the need for refinancing and that Tomlinson's credit rating was allegedly "poor". Lacy then, in the presence of Dodson, proposed that the Crown St. residence be "sold" to a "temporary" buyer/ holder who could obtain refinancing and who would enter into a 1 year lease and buy back agreement with Tomlinson during which time Tomlinson could "improve" his credit rating and thus buy back the residence.

(20) Both Lacy and Dodson represented to Tomlinson that he had no alternative but to accept the scheme set forth in paragraph "(19)" herein to avoid foreclosure under the then existing mortgage.

(21) At this same meeting with Lacy and Dodson on November 6, 2006, Tomlinson was introduced,for the first time, to Defendant, Cherry Ann Degannes ("Degannes"), who was described as the person willing to buy, hold and lease, with a purchase option in favor of Tomlinson, the Crown St. residence as described in paragraph "(19)" herein.

(22) As the result of the various false and untrue representations made in paragraphs "(12)", "(17)", "(18)" and "(19)", Tomlinson decided to accept the scheme and, on November 7, 2006 entered into a "sale", "lease" and "buy back" agreement with Degannes.

(23) That Dodson, Lacy and Degannes told Tomlinson that he had no need for legal counsel for the "sale", "lease" and "buy back" agreement and that they and/or Defendant, counsel, Daniel Chan ("Chan"), for the refinancing bank, BNC Mortgage Inc. ("BNC") would attend to all the necessary paperwork including the "sale/ lease/ purchase" agreement that should have had nothing to do with Defendant, BNC.

(24) That, upon information and belief, BNC has been accused of fraud in connection with its work in arranging for and providing mortgage loans and, as a consequence, may now no longer be in business.

(25) That, upon information and belief, Degannes was paid approximately $93,000 for her participation in the scheme although Tomlinson had been advised that Degannes would only receive $25,000. These funds were given to her at the "closing" by Chan which took place on November 8, 2006 and were funds obtained from Tomlinson without his knowledge or consent that they were to be paid to Degannes for her participation in the purchase, lease and buy back scheme. It is not yet known whether Degannes shared any of these funds with any of the other Defendants.

(26) That, on the same day, November 6, 2006, a "closing" was held on Long Island, New York where Tomlinson, Degannes, Dodson, Lacy and Chan were present.

(27) That, at the aforementioned "closing", various documents which were previously drawn up by Chan were presented to Tomlinson, Degannes and Chan for signature. These documents included, among others, a hand written work sheet, a schedule of settlement charges, a HUD uniform settlement statement, a deed, mortgage documents and a lease with purchase option.

(28) That the "sale" agreement listed a sales price of $660,000 despite the fact that the Crown St. premises, on November 6, had a greater market value. All of the Defendants, including, but not limited to BNC through its authorized agent, Chan, acted and expressed themselves in such a way that Tomlinson believed and relied on their actions and representations that the "closing" was being conducted in an entirely legal and *bona fide* manner. That such actions and representations were deliberately and intentionally made knowing they were false at the time they were made by Degannes, Dodson and Lacy and Chan in the furtherance of the business of Encore, Avenue, Degannes and BNC in order to induce Tomlinson to part with the Crown St. residence and his money.

(29) That Tomlinson relied upon the false statements, actions and representations, as previously alleged herein, so made by the Defendants and believed them to be true and as a result was induced to enter into the contract of sale and lease with purchase option as set forth herein and therefore lost both money and ownership of the Crown St. residence.

(30) That on October 2, 2007 a "NOTICE OF DEFAULT AND RIGHT TO CURE" was allegedly sent to Degannes regarding her alleged failure to make payments on her existing mortgage on the Crown St. property. This notice, a copy of which was sent to Degannes at the Crown St. address, indicated that Degannes' monthly payments of $5,782.83 had not been made for the months of August and September, 2007 and that there existed a "TOTAL DEFAULT" of $17,568.95. The default letter was sent to Degannes by Chase Home Finance LLC ("Chase") acting as the receiving agent for BNC. Additionally, the letter threatened an acceleration of the entire mortgage balance. Tomlinson advised Lacy of this letter.

(31) That, eight months of "rent" had been deducted in advance at the "closing" at an excessive monthly amount.

(32) That Tomlinson was assessed, among other "charges", $13,990 as a "brokerage" fee by Avenue and/or Encore, "title" charges to "TERRA" or "TBRRA" of $33,144, "legal" fees to "Nglen & Associates" of $2,000 and other sundry charges including alleged work done by either Mel Harris, Esq. or Mel and Harris, Esqs. totaling $9,061.29 and a payment of $9,975 to one, Eliss Harrison for alleged services unknown. Degannes was paid, according to the "closing" work sheet $93,000 and an "attorney fee" of $1,250 to "DC", presumably Defendant, Chan. All of these assessments were set forth on a handwritten "closing sheet" prepared by Chan who issued all the checks at the "closing".

(33) That despite the fact that Tomlinson was to be paid $192,000 at the closing, he was only paid $32,000.

(34) That Tomlinson's father later complained to Dodson of the non payment of at least $200,000 to his son and was told that as the result of "mistakes" made at the closing, another check for $11,000 would be sent. The check was ultimately received and was issued from Chan's IOLA account.

(35) That the "Lease with Purchase Option" entered into with Degannes included rental charges of $6,000 per month by Tomlinson, far in excess of what was reasonable, that eight month's rent was deducted, in advance, at the closing and the

"lease" contained no provision regarding any buy back price or any method to determine the buy back price.

(36) That all of the various actions and representations as set forth in paragraphs "(12)", "(17)", "(18)", "(19)", "(20)", "(28)" and ("32)" were false and known by the Defendants to be false when made and were made with the intent to defraud Tomlinson of his Crown St. property.

(37) That the property delivered to Degannes had, at the time, a fair market value of at least $800,000 and, in addition Tomlinson paid and was defrauded of eight months "rent" totaling $48,000 and "closing" charges, including "child support" and GMAC Insurance and $9,000 to "Traders Discount Center LLC. despite the fact Tomlinson has no child and no GMAC insurance and does not know Traders Discount Center, as best as can currently be assessed, of at least $ 218,196.42 made up of the following:

| | |
|---|---|
| BNC (escrow interest) | $ 364.14 |
| "DC" (attorney fee) | $1,250.00 |
| Avenue (broker fee) | $13,990.00 |
| Michelle Paulette (deed preparation) | $ 200.00 |
| DC Appraisals | $ 550.00 |
| "TERRA" "B's title" | $17,324.00 |
| "TERRA" "S's title" | $17,820.00 |
| Karen Mainella (title closer pickup) | $500.00 |
| *Fremont Investment & Loan | $379,119.28 |
| *Wilshire Credit Corp. | $29,106.61 |
| NYC Dept. of Tax & Finance | $795.37 |
| NYC Water Board | $4,921.62 |
| Roger Frances (survey) | $4,000.00 |
| Mary Ann Degannes (certified check) | $93,000.00 |
| "Nglen & Assoc." ("legal fees" certified check) | $2,000.00 |
| Mel & Harris, Esq. ( certified check) | $9,061.29 |
| Eliss Harrison | $9,025.00 |
| Eliss Harrison | $9,975.00 |
| GMAC Insurance | $2,800.00 |
| Child support | $1,600.00 |
| Christopher Hall (three checks) total | $20,000.00 |
| Traders Discount Center LLC | $9,000.00 |

- denotes payoffs of existing mortages.

**WHEREFORE**, Plaintiff, Tomlinson, demands judgment against all Defendants, joint and several, in the amount of $406,196.42, as best as said amount can now be determined, together with legal fees for this action, interest from November 7, 2006,

costs and disbursements and for such other and further relief that this Court may deem just and proper.

### ALTERNATIVELY, AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

(38)  Plaintiff repeats and realleges each and every allegation contained in paragraphs "(1)" through "(37)" as if fully set forth herein.

(39)  That the false and untrue actions and representations, which were unknown to Tomlinson to be false and untrue when they were made and were relied on by Tomlinson, were made by the Defendants and their agents in a careless and negligent manner.

(40)  Because of the carelessness and negligence of the Defendants, their agents and/or employees as alleged in paragraph "(39)" herein, and without any contributory negligence on the part of Plaintiff, Tomlinson, Tomlinson was damaged, as best as can now be determined, in the amount of $406,196.42.

*WHEREFORE*, Plaintiff, Tomlinson, demands judgment against all Defendants, joint and several, in the amount of $406,196.42, as best as that amount can now be determined, together with legal fees, interest from November 7, 2006, costs and disbursements and for such other and further relief that this Court deems just and proper.

### ALTERNATIVELY, AS AND FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

(41)  Plaintiff repeats and realleges each and every allegation Contained in paragraphs "(1)" through "(37)" as if fully set forth herein.

(42)  That the false and untrue actions and representations, which were unknown to Tomlinson to be false and untrue when they were made and relied upon by him, were made by the Defendants and their agents in a grossly negligent manner.

(43)  Because of the gross negligence of the Defendants, their Agents and/or their employees as alleged herein, and without contributory negligence on the part of the Plaintiff, Tomlinson, Tomlinson was damaged, as best as can now be determined, in the amount of $406,196.42.

*WHEREFORE,* Plaintiff, Tomlinson, demands judgment against all
   Defendants, joint and several, in the amount of $406,196.42,
   as best as now can be determined, together with the legal fees
   of this action and interest from November 7, 2006, costs and
   disbursements, and for such other and further relief that this
   Court may deem just and proper.

### AS AND FOR A FOURTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS

(44)   Plaintiff repeats and realleges each and every allegation
       contained in paragraphs "(1)" through "(37)" and paragraphs
       "(42)" and "(43)" as if fully set forth herein.
(45)   That due to the fraudulent and/or grossly negligent acts and
       omissions and Defendants their obvious dealings with the
       public and Chan's position as counsel representing BNC
       cloaked with authority to act on BNC's behalf, Plaintiff is
       entitled to and asks for exemplary and/or punitive damages
       as determined by this Court.

*WHEREFORE,* Plaintiff, Tomlinson, demands exemplary and
   punitive be given Plaintiff against all the Defendants, jointly
   and severally, as this Court deems just and proper.

### AS AND FOR A FIFTH CAUSE OF ACTION
### AGAINST DEFENDANT, DEGANNES

(46)   Plaintiff repeates and realleges each and every allegation
       Contained in paragraphs "(1)" through "(37)" and paragraphs
       "(42)" and "(43)" as if fully set forth herein.
(47)   That Degannes fully and knowingly participated in the fraud
       perpetrated on Tomlinson which caused said Tomlinson at
       least $406,196.42 in damages and the ownership of the
       Crown St. residence.
(48)   That, as a consequence of the fraud as set forth herein and
       Degannes participation in the same, Tomlinson was
       wrongfully and fraudulently induced into entering into the
       "sale" and "purchase option" of November 6, 2006.
(49)   That the sale and purchase option should be rescinded and
       cancelled in the interests of justice since it has no valid
       consideration and was entered into by reason of untrue and
       fraudulent misrepresentations made by and on Degannes'
       behalf to induce Tomlinson to enter into the sale and purchase

agreement of November 6, 2006 and which were relied on by Tomlinson who believed them to be true.

*WHEREFORE*, Plaintiff, Tomlinson, asks that the sale and purchase option agreement of November 6, 2006 be rescinded and/or cancelled, for legal fees, costs and disbursements and such other and further relief that this Court deems just and proper.

Dated: October 1, 2008

Cone & Kilbourn

By: _____
John E. Cone Jr.
Attorneys for Plaintiff
83 S. Bedford Rd.
Mount Kisco, N.Y. 10549
Tel.: 914 481 6249

To:
Sills Cummis & Gross
Attorneys for BNC
One Rockefeller Plaza
New York, N.Y. 10112

Hofheimer, Gartlir & Gross
Attorneys for BNC
530 5th Ave.
New York, N.Y. 10036

Lipsky, Bresky & Lowe LLP
Attorneys for Avenue
585 Stewart Ave. Ste. 440
Garden City, N.Y. 11530

Furman, Kornfeld & Brennan
Attorneys for Chan
545 5th Ave. 4th Fl.
New York, N.Y. 10017

Anthony T. Ballato, Esq.
Attorney for Degannes
5476 Merrick Rd.
Massapequa, N.Y. 11758

\*_

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS** _____ **X**

**Howard W. Tomlinson**

                              **Plaintiff,**                    **VERIFICATION**

            **v.**
                                                               **Index No. 41418/07**

**Cherry Ann Degannes, David Dodson, Encore**
**Capital Services, Inc., Jeffery Lacy,**
**Avenue Mortgage, Inc., BNC Mortgage Inc. and**
**Chase Home Finance LLC**

_____ **Defendant(s)** _____ **X**

BNC MORTGAGE, INC.

                        Third-Party Plaintiff

            v.

DANIEL CHAN, ESQ.

                        Third-Party Defendant

_____ **X**

Howard W. Tomlinson, being duly sworn, deposes and says:

1. I am the Plaintiff herein and as such, am fully familiar with the facts and
   circumstances of this matter.
2. I have read the attached Plaintiff's Verified Second Amended Complaint and
   know the contents thereof.
3. That the Second Amended Complaint is true to my own knowledge and belief
   except as to matters stated to be alleged on information and belief, and as to those
   matters I believe them to be true.

HOWARD W. TOMLINSON

Sworn to before me this 1st day
of October, 2008

Notary Public

**Maureen B. Guido**
**Notary Public, State of New York**
No. 01GU6006221
Qualified in Putnam County
Commission Expires 4/27/2010

Re:    Howard Tomlinson (the "Seller") to Cherry-Ann Degannes (the "Purchaser")
       BNC Mortgage, Inc. (the "Lender") Loan to Cherry-Ann Degannes
       694 Crown Street
       Brooklyn, NY

Date:  October 7, 2006

The undersigned parties hereby acknowledge and agree to the following:

We have been advised that Daniel Chan, Esq., is acting as the attorney for the Lender in
connection with this transaction and does not represent either the Seller or Purchaser.

We have chosen to appear pro se at the closing of title. We have asked Mr. Chan to
explain the documents we have been asked to execute at the closing with the
understanding that he is Lender's counsel.


_____                    _____
Howard Tomlinson, Seller                    Cherry-Ann Degannes, Purchaser

001

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS _____X

Howard W. Tomlinson

                Plaintiff,

       v.

AMENDED
VERIFIED
COMPLAINT
Index No. 41418/07

Cherry Ann Degannes, David Dodson, Encore
Capital Services, Inc., Jeffery Lacy,
Avenue Mortgage, Inc., BNC Mortgage Inc. and
Chase Home Finance LLC

               Defendant(s) _____X

Plaintiff, Howard W. Tomlinson, by his Attorneys, Cone &
Kilbourn, for his Verified Complaint, alleges:

(1)    That at all material times Plaintiff, Howard W. Tomlinson, is a
resident of Kings County, New York with an address at 694
Crown Street, Brooklyn, New York 11213.

(2)    That at all material times Defendant, Cherry Ann Degannes, is
a resident of Nassau County, New York with an address at 9
Lombardi Place, Amittyville, New York 11701.

(3)    That upon information and belief at all material times
Defendant, David Dodson, is the owner/manager/operator of
Defendant Encore Capital Services, Inc. with an address
located at 100 Garden City Plaza, Garden City, New York
11530.

(4)    That at all material times Defendant, Encore Capital Services
Inc. is an entity duly organized and operating pursuant to law
with a principal place of business located at 100 Garden City
Plaza, Garden City, New York 11530.

(5)    That upon information and belief at all material times
Defendant, Jeffery Lacy, is the owner/manager/operator of
Defendant, Avenue Mortgage, with an address located at 57
Manorhaven Blvd., Port Washington, New York 11050.

(6)    That at all material times Defendant, Avenue Mortgage, is an entity duly organized under law with a principal place of business located at 57 Manorhaven Blvd., Port Washington, New York 11050.

(7)    That at all material times Defendant, BNC Mortgage Inc., is/was an entity organized under law with an office located at 510 Broad Hollow Rd. #101, Malville, New York 11747 and with agents, Lehman Brothers Bancorp located at Bldg. 1000 West St., Wilmington De. 19801 and Aurora Loan Services, a Lehman Bros. Company located at 10350 Park Meadows Dr. Littleton, Co. 80124.

(8)    That at all material times Defendant, Chase Home Finance LLC, is an entity organized under law with a principal place of business located at P.O. Box 78116 Phoenix, Arizona and an office located at 3820 Nostrand Ave. Brooklyn, New York 11235.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST ALL OF THE DEFENDANTS

(9)    That, prior to November 7, 2006 Plaintiff, Howard W. Tomlinson ("Tomlinson"), was the sole owner of a two family house located at 694 Crown St. Brooklyn, New York 11213.

(10)    That in October and November, 2006, Tomlinson was desirous of refinancing the then existing mortgage on the Crown St. residence.

(11)    That, in October, 2006, Tomlinson met with Defendant, David Dodson ("Dodson"), of Defendant, Encore Capital Services Inc. ("Encore"), to seek refinancing. During this meeting Tomlinson stressed the urgency of refinancing since he was behind on his mortgage payments.

(12)    That at all material times Dodson represented to Tomlinson that he and his company, Encore, were in the business of acting as *bona fide* mortgage brokers in New York.

(13)    That the representations alleged in paragraph "(11)" herein led Tomlinson to believe that Dodson and Encore were licensed real estate brokers.

(14)    Upon information and belief, at all material times, Dodson was not licensed to operate as a mortgage broker in New York.

(15)    Upon information and belief, at all material times, Encore was not licensed to operate as a mortgage broker in New York.

(16)    That, in reliance upon the false representations set forth in para-Graph "(11)" herein, Tomlinson asked Dodson and his

company, Encore, to obtain refinancing for the Crown St. residence.

(17) That, in late October or early November, 2006, Dodson told Tomlinson that his credit rating was so "poor" that neither he, Dodson nor Encore could obtain the sought refinancing.

(18) Dodson then introduced Tomlinson to Defendant, Jeffery Lacy ("Lacy"), who represented to Tomlinson that he, Lacy, was the owner/operator of Defendant, Avenue Mortgage ("Avenue"). Lacy represented that both he and Avenue were licensed to operate as mortgage brokers in New York.

(19) Lacy told Tomlinson that he was aware of the urgency of the need for refinancing and that Tomlinson's credit rating was allegedly "poor". Lacy then, in the presence of Dodson, proposed that the Crown St. residence be "sold" to a "temporary" buyer/holder who could obtain refinancing and who would enter into a 1 year lease and buy back agreement with Tomlinson during which time Tomlinson could "improve" his credit rating and thus buy back the residence.

(20) Both Lacy and Dodson represented to Tomlinson that he had no alternative but to accept the scheme set forth in paragraph "(18)" herein to avoid foreclosure under the then existing mortgage.

(21) At this same meeting with Lacy and Dodson, Tomlinson was introduced to Defendant, Cherry Ann Degannes ("Degannes"), who was described as the person willing to buy, hold and lease, with a purchase option in favor of Tomlinson, the Crown St. residence as described in paragraph "(18)" herein.

(22) As the result of the various false and untrue representations made in paragraphs "(11)", "(16)", "(17)", "(18)" and "(19)", Tomlinson decided to accept the scheme and, on November 7, 2006 entered into a "sale", "lease" and "buy back" agreement with Degannes.

(23) That Dodson, Lacy and Degannes told Tomlinson that he had no need for legal counsel for the "sale", "lease" and "buy back" agreement and that they and/or counsel, Daniel Chan, for the refinancing bank, BNC Mortgage Inc. ("BNC") would attend to all the necessary paperwork.

(24) That, upon information and belief, BNC has been accused of fraud in connection with its work in arranging for and providing mortgage loans and, as a consequence, may now no longer be in business.

(25) That, upon information and belief, Degannes was paid approximately $93,000 for her participation in the scheme. These funds were given to her at the "closing" which took

place on November 8, 2006 and were funds obtained from
Tomlinson without his knowledge or consent that they were
to be paid to Degannes for her participation in the purchase,
lease and buy back scheme. It is not yet known whether
Degannes shared any of these funds with any of the other
Defendants.

(26) That, on November 7, 2006 a "closing" was held on Long
Island, New York where Tomlinson, Degannes, Dodson, Lacy
and Chan were present.

(27) That, at the aforementioned "closing" various documents
were drawn up and they and others were presented to
Tomlinson, Degannes and Chan for signature. These
documents included, among others, a hand written work
sheet, a schedule of settlement charges, a HUD uniform
settlement statement, a deed, mortgage documents and a
lease with purchase option.

(28) That the "sale" agreement listed a sales price of $660,000
despite the fact that the Crown St. premises, on November 6,
premises and money. That such representations were
deliberately and intentionally made knowing they were false
at the time they were made by Degannes, Dodson and Lacy, in
the furtherance of the business of Encore, Avenue and BNC in
order to induce Tomlinson to part with the Crown St.
residence and his money.

(29) That Tomlinson relied upon the false statements and
representations, as alleged herein, so made by the Defendants
and believed them to be true and as a result was induced to
enter into the contract of sale and lease with purchase option
as set forth herein and therefore lost both money and
ownership of the Crown St. residence.

(30) That on October 2, 2007 a "NOTICE OF DEFAULT AND RIGHT
TO CURE" was allegedly sent to Degannes regarding her
alleged failure to make payments on her existing mortgage on
the Crown St. property. This notice, a copy of which was sent
to Degannes at the Crown St. address, indicated that
Degannes' monthly payments of $5,782.83 had not been
made for the months of August and September, 2007 and that
there existed a "TOTAL DEFAULT" of $17,568.95. The default
letter was sent to Degannes by Defendant, Chase Home
Finance LLC ("Chase"). Additionally, the letter threatened an
acceleration of the entire mortgage balance. Tomlinson
advised Lacy of this letter.

(31) That, by reason of the "NOTICE" set forth in paragraph "(35)"
herein, Chase must now be the holder of the Degannes

mortgage and is therefore a necessary party to this action.

(32) That, while eight months of "rent" had been deducted in advance at the "closing", Tomlinson, due to the excessive 2006, had a fair market value in considerable excess of that amount.

(33) That Tomlinson was assessed, among other charges, $13,990 as a "brokerage" fee by Avenue and/or Encore, "title" charges to "TERRA" or "TBRRA" of $33,144, "legal" fees to "Nglen & Associates" of $2,000 and other sundry charges including alleged work done by either Mel Harris, Esq. or Mel and Harris, Esqs. totaling $9,061.29 and a payment of $9,975 to one, Eliss Harrison for alleged services unknown. Deganees was paid, according to the "closing" work sheet $93,000.

(34) That despite the fact that Tomlinson was to be paid $192,000 at the closing, he was only paid $32,000.

(35) That Tomlinson's father later complained to Dodson of the non payment to his son and was told that as the result of "mistakes" made at the closing, another check for $11,000 would be sent.

(36) That the "Lease with Purchase Option" entered into with Degannes included rental charges of $6,000 per month by Tomlinson, far in excess of what was reasonable, that eight month's rent was deducted, in advance, at the closing and the "lease" contained no provision regarding any buy back price or any method to determine the buy back price.

(37) That all of the various representations as set forth in para- "(11)", "(16)", "(17)", "(18)", "(19)"and "(20)" were false and known by the Defendants to be false when made and were made with the intent to defraud Tomlinson of his Crown St. amount of the "rent", has not paid any "rent' since July, 2007 to Degannes.

(38) That the property delivered to Degannes had, at the time, a fair market value of at least $800,000 and, in addition Tomlinson paid and was defrauded of eight months "rent" totaling $48,000 and "closing" charges, as best as can currently be assessed, of at least $ 218,196.42 made up of the following:

BNC (escrow interest)...........................................$ 364.14
"DC" (attorney fee)...........................................$1,250.00
Avenue (broker fee).........................................$13,990.00
Michelle Paulette (deed preparation)....................$ 200.00
DC Appraisals.....................................................$ 550.00
"TERRA" "B's title".........................................$17,324.00
"TERRA" "S's title"........................................$17,820.00

```
Karen Mainella (title closer pickup).........................$500.00
*Fremont Investment & Loan...........................$379,119.28
*Wilshire Credit Corp.........................................$29,106.61
NYC Dept. of Tax & Finance...............................$795.37
NYC Water Board...............................................$4,921.62
Roger Frances (survey).......................................$4,000.00
Mary Ann Degannes (certified check)..................$93,000.00
"Nglen & Assoc." ("legal fees" certified check)......$2,000.00
Mel & Harris, Esq. ( certified check)....................$9,061.29
Eliss Harrison....................................................$9,025.00
Eliss Harrison....................................................$9,975.00
GMAC Insurance................................................$2,800.00
Child support.....................................................$1,600.00
Christopher Hall (three checks) total...................$20,000.00
Traiers Discount Center LLC.................................$9,000.00
```
• denotes payoffs of existing mortages.

*WHEREFORE*, Plaintiff, Tomlinson, demands judgment against all
Defendants, joint and several, in the amount of **$406,196.42**,
as best as said amount can now be determined, together with
legal fees, interest from November 7, 2006, costs and disbur-
sements and for such other and further relief that this Court
deems just and proper.

## ALTERNATIVELY, AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

(39) Plaintiff repeats and realleges each and every allegation
contained in paragraphs "(1)" through "(38)" as if fully set
forth herein.

(40) That the false and untrue representations, which were
unknown to Tomlinson when they were made, were made by
the Defendants and their agents in a careless and negligent
manner.

(41) Because of the carelessness and negligence of the
Defendants, their agents and/or employees as alleged in
paragraph "(40)" herein, and without any carelessness or
contributory negligence on the part of Plaintiff, Tomlinson,
Tomlinson was damaged, as best as can now be determined,
in the amount of $406,196.42.

*WHEREFORE*, Plaintiff, Tomlinson, demands judgment against all
Defendants, joint and several, in the amount of **$406,196.42**,
as best as that amount can now be determined, together with

legal fees, interest from November 7, 2006, costs and disbur-
sements and for such other and further relief that this Court
deems just and proper.

## ALTERNATIVELY, AS AND FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

(42) Plaintiff repeats and realleges each and every allegation
Contained in paragraphs "(1)' through "(38)" as if fully set
forth herein.

(43) That the false and untrue representations, which were
unknown to Tomlinson to be false and untrue when they were
made, were made by the Defendants and their agents in a
grossly negligent manner.

(44) Because of the gross negligence of the Defendants, their
Agents and/or their employees as alleged in paragraph "(43)"
herein, and without any carelessness or contributory
negligence on the part of the Plaintiff, Tomlinson, Tomlinson
was damaged, as best as can now be determined, in the
amount of $406,196.42.

*WHEREFORE*, Plaintiff, Tomlinson, demands judgment against all
Defendants, joint and several, in the amount of $406,196.42,
as best as now can be determined, together with legal fees,
interest from November 7, 2006, costs and disbursements and
for such other and further relief that this Court may deem just
and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

(45) Plaintiff repeats and realleges each and every allegation
contained in paragraphs "(1)" through "(38)" and paragraphs
"(43)" and "(44)" as if fully set forth herein.

(46) That due to the fraudulent and/or grossly negligent acts and
omissions and Defendants obvious dealings with the public,
Plaintiff is entitled to exemplary and/or punitive damages.

*WHEREFORE*, Plaintiff, Tomlinson, demands exemplary and
punitive be given Plaintiff against all the Defendants, jointly
and severally, as this Court deems just and proper.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANT, DEGANNES

(47)  Plaintiff repeats and realleges each and every allegation
Contained in paragraphs "(1)" through "(38)" and paragraphs
"(43)" and "(44)" as if fully set forth herein.

(48)  That Degannes fully and knowingly participated in the fraud
perpetrated on Tomlinson which caused said Tomlinson at
least $406,196.42 in damages and the ownership of the
Crown St. residence.

(49)  That, as a consequence of the fraud as set forth herein and
Degannes participation in the same, Tomlinson was
wrongfully and fraudulently induced into entering into the
"sale" and "purchase option" of November 6, 2006.

(50)  That the sale and purchase option should be rescinded and
cancelled in the interests of justice since it has no valid
consideration and was entered into by reason of untrue and
fraudulent misrepresentations made by and on Degannes'
behalf to induce Tomlinson to enter into the sale and purchase
agreement of November 6, 2006 and which were relied on by
Tomlinson who believed them to be true.

   *WHEREFORE*, Plaintiff, Tomlinson, asks that the sale and
   purchase option agreement of November 6, 2006 be
   rescinded and/or condemned for legal fees, costs and
   disbursements and such other and further relief that this
   Court deems just and proper.

**Dated:** October 26, 2007

                              Cone & Kilbourn

                              By: _____
                                 John E. Cone Jr.
                                 Attorneys for Plaintiff
                                 80 S. Bedford Rd.
                                 Mount Kisco, N.Y. 10549
                              Tel.: 914 481 6249
                              Fax: 914 461 3228

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS                                              X

Howard W. Tomlinson

                        Plaintiff,                    VERIFICATION
            v.                                        Index: 41418/07

Cherry Ann Degannes, David Dodson, Encore
Capital Services, Inc., Jeffery Lacy,
Avenue Mortgage, BNC Mortgage Inc. and
Chase Home Finance LLC


_____Defendant(s)_____X


HOWARD W. TOMLINSON, being duly sworn, deposes and says:

1. That he is the Plaintiff herein and has read the foregoing
   Amended Verified Complaint and knows the contents thereof.

2. That the same is true to his own knowledge and belief except
   matters therein stated to be alleged on information and belief,
   and to those matter he believes them to be true.


                                        HOWARD W. TOMLINSON


Sworn to before me this 5th day
of Decembe, 2007


Notary Public


        ANTOINETTE M. SARPORI
   Notary Public, State of New York
            No. 4326898
      Qualified in Westch......
   Commission Expires Ma..... 2010

200712140

200712140

ALBANY, NY 12231-0001

CORPROATION SERVICE COMPANY
80 STATE ST
ALBANY, NY 12207-2543



41 State Street
Albany, NY 12231

Receipt # 200712140246

COMPLETE THIS SECTION ON DELIVERY

A. Signature: ( ☐ Addressee or ☐ Agent)
X
B. Received By: (Please Print Clearly)

C. Date of Delivery

D. Addressee's Address Different from Item 1? (Yes/No)

Secondary Address (Suite, Apt, Floor)    (Please Print Clearly)

Delivery Address

City                                    State    Zip + 4 Code

7111 5445 5583 1601 9641

RETURN RECEIPT REQUESTED

Article Addressed To:

BNC MORTGAGE, INC.
CORPORATION SERVICE COMPANY
80 STATE ST
ALBANY, NY 12207-2543



FROM: BNC MORTGAGE, INC., A DELAWARE CORPORATION
    510 BROAD HOLLOW RD.
    MELVILLE, NY 11747
    ATTN: FUNDING DEPT.
    PHONE #: (631) 420-5101
    FAX #:  (631) 753-2388

TO: DANIEL CHAN      TO: FIRST AMERICAN TITLE
    104 W MAIN ST
    PATCHOGUE, NY 11772

ATTN:           ATTN:

RE: BORROWERS CHERRY-ANN DEGANNES

Property Address: 694 CROWN ST
BROOKLYN, NY 11213

Document Date:  11/07/2006

Closing Date:    11/07/2006

Doc's Expiration Date: 11/10/2006

Loan No.:  MEL014500

Application No.: MEL014500

Title Order No.:  TA 9952 K 06

Escrow No.:

## GENERAL CLOSING INSTRUCTIONS

Do not close or fund this loan unless ALL conditions in these closing instructions and any supplemental closing instructions have been satisfied. The total consideration in this transaction except for your loan proceeds and approved secondary financing must pass to you in the form of cash. All proceeds must be disbursed upon closing unless you have received specific written authorization to the contrary from us. Do not close or fund this loan if you have knowledge of a concurrent or subsequent transaction which would transfer the subject property.

You must follow these instructions exactly. These closing instructions can only be modified with our advance written approval. You shall be deemed to have accepted and to be bound by these closing instructions if you fail to notify us in writing to the contrary within 48 hours of your receipt hereof or if you disburse any funds to or for the account of the Borrower(s).

All documents with the exception of those to be recorded (Security Instrument, Riders, Corporation Assignment(s), Grant Deed, Quit Claim, Power of Attorney, etc.) must be returned to our office within 24 hours of the signing. Please return certified copies of those documents that are to be recorded. Failure to comply with these instructions may delay funding.

EXECUTION OF DOCUMENTS:

1. Each Borrower must sign all documents exactly as his or her name appears on the blank line provided for his or her signature. All signatures must be witnessed if required or customary. All signature acknowledgments must be executed by a person authorized to take acknowledgments in the state of closing.

2. Any correction to loan documents must be approved in writing by us in advance of closing. No white-out is permitted. Approved deletion should be made by marking a single line through the language being deleted. All additions and deletions must be initialled by all borrowers.

3. Specific Powers of Attorney must be provided to and approved by us in advance. If approved, the Specific Power of Attorney must be recorded in the same county in which the Security Instrument is recorded and a certified copy provided to us. The Attorney- in-Fact must sign as follows: Borrower's Name by Attorney-in- Fact's Name as his/her Attorney-in- Fact (example: Jane Smith by John Smith her Attorney-in-Fact). General Powers of Attorney are not acceptable.

CHANGES TO FEES & CHARGES:

1. Do not make any changes to any fees paid to any party or add any additional fees or charges without the express written approval of BNC MORTGAGE, INC.

RESCISSION:

1. If the transaction is subject to rescission, provide each Borrower and each person having any ownership interest in the security property with two (2) copies of the completed Notice of Right to Cancel. The Notice of Right to Cancel must be properly completed (including all dates) and each borrower and person given a Notice of Right to Cancel must execute an acknowledgment of receipt. The rescission period must take into account the federally prescribed rescission period and any state prescribed rescission period. Your failure to properly complete and provide the Notices of Right to Cancel to each person entitled to receive them will delay this closing.

2. No Borrower or other person having an ownership interest in the Security Property may modify or waive his or her right to rescind without our prior written consent.

3. If any Borrower or other person having an ownership interest in the security property indicates that he or she wishes to cancel this transaction, contact us immediately for further instructions.

SURVEYS:

1. A valid survey dated within 90 days of closing is required in areas where surveys are customary.

2. The survey must contain all relevant and customary information and certifications and the legal description, lot size and street must agree with the property appraisal and closing documents.

HAZARD INSURANCE:

1. The Borrower(s) must provide satisfactory evidence of hazard insurance coverage and flood insurance coverage if the property is located in a Special Flood Hazard Area as designated by the Federal Emergency Management Agency.

2. Dwelling coverage must be equal to the lesser of the loan amount or the full replacement value of the property improvements, and must extend for either a term of at least one (1) year after the closing date for purchase transactions or three (3) months after the first payment date for refinance transactions.

3. Loss payee/mortgagee clause to read: CHASE HOME FINANCE LLC, ITS SUCCESSORS AND/OR ASSIGNS, ATIMA

P.O. BOX 81507, ATLANTA, GA 30366

Loan Number: MEL014500
ACKNOWLEDGED AND AGREED:

_____   11/7/06   _____   11/7/06
Settlement Agent   Date   Title Officer   Date

GENERAL CLOSING INSTRUCTIONS          MEL014500

FROM: BNC MORTGAGE, INC., A DELAWARE CORPORATION
    510 BROAD HOLLOW ROAD #101
    MELVILLE, NY 11747
    ATTN: FUNDING DEPT.
    PHONE #: (631) 420-5101
    FAX #:  (631) 755-2388

| | |
|---|---|
| Document Date: | 11/07/2006 |
| Closing Date: | 11/07/2006 |

TO: DANIEL CHAN      TO: FIRST AMERICAN TITLE
   104 W MAIN ST
   PATCHOGUE, NY 11772

| | |
|---|---|
| Doc's Expiration Date: | 11/10/2006 |
| Loan No.: | MEL014500 |

ATTN:          ATTN:

Application No.: MEL014500

RE: CHERRY-ANN DEGANNES

Title Order No.: TA 9952 K 06

Escrow No.:

Property Address: 694 CROWN ST
BROOKLYN, NY 11213

## SPECIFIC CLOSING INSTRUCTIONS

### LOAN DOCUMENTS

We enclose the following documents necessary to complete the above referenced loan transaction:

| | | | | | |
|---|---|---|---|---|---|
| (X) Note | ( ) Condominium Rider | ( ) Rescission |
| (X) Deed of Mortgage | ( ) Second Home Rider | (X) Adj. Rate Rider |
| (X) Truth In Lending Disclosure | (X) Regulation Z | (X) Important Application Information |
| (X) Payment Letter | (X) Prepay Waiver Rider | (VMP Form 128) |
| (X) Hazard Requirements | ( ) Assignment of Deed | (X) Customer Identification Form |
| (X) 1 - 4 Family Rider | (X) Good Faith Est. | |

Deliver one (1) copy of all loan documents to the Borrower(s); deliver one (1) copy of the Federal Truth-In-Lending Disclosure Statement to each Borrower and each person having any ownership interest in the security property. (Refer to General Closing Instructions for distribution of the Notices of Right to Cancel.)

### LOAN TERMS:

| | | | |
|---|---|---|---|
| Loan Amount: | $660,000.00 | Monthly P&I: $ | 5,511.37 |
| Sales Price: | 660,000.00 | First Payment Date: | 12/01/2006 |
| Term (Months): | 600 | Last Payment Date: | 11/01/2036 |
| Interest Rate: | 9.950 | Adjustable Rate Loan: | ( X ) Yes  (  ) No |

Secondary Financing in the amount of: $      has been approved.

### CONDITIONS:

Prior to funding/closing, you will be notified in writing of any outstanding conditions. All conditions must be satisfied prior to disbursement of the loan proceeds.

**WE ARE TO BE AT NO EXPENSE IN THIS TRANSACTION.**

Do not make any changes to any fees paid to any party or add any additional fees or charges without the express written approval of BNC Mortgage, Inc.

### TITLE INSURANCE REQUIREMENTS:

Lender's ALTA Title Policy is to be issued as follows:

Mortgagee Clause must show: BNC Mortgage, Inc., its successors and/or assigns.

1. This loan must record in first lien position prior to the Doc's Expiration Date noted above.

2. Vesting to read: CHERRY-ANN DEGANNES

3. ALTA Title Policy must be free from liens, encumbrances, easements, encroachments and other title matters except **(i)** the lien of our loan in the amount described herein referencing the recording information of the Security Instrument; (ii) general, specific, state, county, city, school or other taxes and assessments not yet due or payable; (iii) other items as permitted by us in writing; and (iv) the following items as shown on the preliminary title report, commitment, binder or equivalent dated:   05/01/2006
Issue said form of Policy with items:

4. Title Policy must contain the following endorsements (or their equivalents):

   (X)    CLTA 100/ALTA 9 - "Off Record "/Comprehensive
   (X)    ALTA 8.1 - Environmental Protection
   (X)    CLTA 116 - Address/ Location
   (X)    CLTA 111.5/ALTA 6 - Variable Rate Mortgage
   ( )    ALTA 4 - Condominium
   ( )    ALTA 5 - Planned Unit Development
         ALTA 7 - is required if the property is a Manufactured Housing
   ( )    Other:
If the CC&R's contain a re-entry and/or reversionary clause, we will require a CLTA 100. 12 endorsement.

5. Survey exceptions are not acceptable.

6. Provide original and one copy of the ALTA Title Policy to Quality Assurance, P.O. Box 16426, IRVINE, CA 92623-6426.

7. Forward water or stock certificate showing lender as first Pledgee, where applicable.

ESTIMATE OF FEES AND COSTS:

| ITEM | AMOUNT | POC | PAID TO |
|---|---|---|---|
| ORIGINATION FEE | $ 899.00 | To | LENDER |
| Broker Fee | $ 13,200.00 | To | BROKER |
| Processing Fee | $ 495.00 | To | BROKER |
| APPLICATION FEE | $ 295.00 | To | BROKER |
| Appraisal Fee | $ 550.00 | To | DERON MACKINNEY |
| Tax Service Fee | $ 69.00 | To | TRANSAMERICA REAL ESTATE TAX |
| FLOOD CERTIFICATION | $ 17.00 | To | FIRST AMERICAN FLOOD DATA |
| NY Mortgage Tax | $ -1,650.00 | To | NEW YORK STATE |

Note: Flood Certification fee paid by lender. Tax Certification Fee paid by lender.

Subtotal of Estimated Fees and Costs:   $13,875.00

PER DIEM INTEREST:
From: 11/07/2006        To: 11/01/2006
        (Anticipated Closing Date)

-6    days at    182.42    per day.    Subtotal of Per Diem Interest -    $ -1,094.52

IMPOUNDS/ESCROWS:
Impounds/escrow funds will be deducted from the amount wired.

| | | | | |
|---|---|---|---|---|
| Hazard Insurance | 1 month(s) at $208.50 | per month = | $208.50 | |
| | month(s) at $ | per month = | $ | |
| | month(s) at $ | per month = | $ | |
| CITY TAXES | 2 month(s) at $265.12 | per month = | $530.24 | |
| | month(s) at $ | per month = | $ | |

Aggregate Escrow Adjustment: $ -265.08

Subtotal of Impounds/Escrow:        $473.66
Mortgage Broker Fee Paid by Lender:    $
LENDER FEES AND COSTS:            $ -665.00
TOTAL WIRE AMOUNT:            $661,285.86

HUD-1 SETTLEMENT STATEMENT:
The final HUD-1 Settlement Statement must be completed at settlement and must accurately reflect all receipts and disbursements indicated in these closing instructions and any amended closing instructions subsequent hereto. If any changes to fees occur these documents may need to be re-drawn and re-signed. Send the certified final HUD-1 Settlement Statement to us at the following address within 24 hours of settlement: Quality Assurance, P.O. Box 16426, Irvine, CA 92623-6426; or fax to (866) 471-6067

ADDITIONAL INFORMATION:
Borrowers must sign and date these closing instructions.

If for any reason this loan does not close within 24 hours of your receipt of funds, immediately return all documents to us and wire all funds to:

☐ Lehman Brothers, FSB, ABA 231170136, B N C Mortgage Clearing Acct. 124700002610

The wire of all funds should not be later than 12:00 noon, New York time, on the business day after the scheduled closing. Deutsche Bank is the intended third party beneficiary of this agreement.

All documents with the exception of those to be recorded (Security Instrument, Riders, Corporation Assignment(s), Grant Deed, Quit Claim, Power of Attorney, etc.) must be returned to our office within 24 hours of the signing. Please return certified copies of those documents that are to be recorded.

_____
Settlement Agent

SPECIFIC CLOSING INSTRUCTIONS

MEL014500

**PAYOFF REQUIREMENTS:**

It is a condition to the funding of this loan that the debts listed on the CONDITIONAL LOAN APPROVAL be paid.
Indicate payoffs on the HUD-1 Settlement Statement or provide other satisfactory evidence of payoff.

DEBTS OR LIENS REQUIRED TO BE PAID THROUGH ESCROW                          *Estimated Payoff Amount:

TOTAL                                                                                                        $0.00

*All liens of record must be paid in accordance with mortgagee's Pay off Demand Statement.
If you have any questions regarding any of these instructions, please contact the Funding Department at (949) 260-6000.

BORROWER ACKNOWLEDGMENT: I/We have read and acknowledged receipt of these closing instructions.

| | | | |
|---|---|---|---|
| Borrower /CHERRY-ANN DEGANNES | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

ACKNOWLEDGED AND AGREED:

| | | | |
|---|---|---|---|
| Settlement Agent | Date | Title Officer | Date |

SPECIFIC CLOSING INSTRUCTIONS                    Page 3 of 3

MEL014500

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: IAS PART 38

---------------------------------------------------------- X

HOWARD W. TOMLINSON,                          :        Index No. 41418/07

        Plaintiff,                            :        Justice Martin M. Solomon

    -against-                                 :

CHERRY ANN DEGANNES, DAVID DODSON,            :        **THIRD-PARTY SUMMONS**
ENCORE CAPITAL SERVICES, INC., JEFFERY
LACY, AVENUE MORTGAGE, INC., BNC              :
MORTGAGE INC., and CHASE FINANCE LLC,         :

        Defendants.                           X

---------------------------------------------------------- :        Third-Party Index No.
BNC MORTGAGE, INC.,                           :        75770/08
                                                       Date Purchased: 9/5/08
        Third-Party Plaintiff,               :

    -against-                                 :

DANIEL CHAN, ESQ.,                            :

        Third-Party Defendant.                :

---------------------------------------------------------- X

TO THE ABOVE NAMED THIRD-PARTY DEFENDANT:

        You are hereby summoned and required to serve upon the third-party plaintiff's attorney

an answer to the annexed Third Party Complaint of the third-party plaintiff, which is herewith

served upon you together with all prior pleadings in the action, within twenty days after the

service thereof, exclusive of the day of service, or within thirty days after service is complete if

service is made by any method other than personal delivery to you within the State of New York.

In case of your failure to answer, judgment will be taken against you by default for the relief

demanded in the Third-Party Complaint.

Dated:   September 1, 2008
         New York, New York

SILLS CUMMIS & GROSS P.C.

Jeffrey J. Greenbaum, Esq.

One Rockefeller Plaza
New York, New York 10020
(212) 643-7000

Attorneys for Defendants/Third Party
Plaintiff BNC Mortgage, Inc.

TO:   Daniel Chan, Esq.
      104 W. Main St.
      Patchogue, New York 11772

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------------x
HOWARD W. TOMLINSON,                          :        Index No. 41418/07
                                              :
                          Plaintiff,          :   **VERIFIED ANSWER,**
            v.                                :   **AFFIRMATIVE DEFENSES,**
                                              :   **CROSS-CLAIMS,**
CHERRY ANN DEGANNES, DAVID DODSON,            :   **COUNTERCLAIMS AND**
ENCORE CAPITAL SERVICES, INC., JEFFERY        :   **THIRD-PARTY COMPLAINT**
LACY, AVENUE MORTGAGE, INC., BNC              :   **OF DEFENDANT BNC**
MORTGAGE INC., and CHASE FINANCE LLC,         :   **MORTGAGE, INC.**
                                              :
                          Defendants.         :
-----------------------------------------------------------------------x
BNC MORTGAGE, INC.,                           :
                                              :
                          Third-Party Plaintiff, :   Third-Party Index No. 75770/08
            v.                                :
                                              :
DANIEL CHAN, ESQ.,                            :
                                              :
                          Third-Party Defendant. :
-----------------------------------------------------------------------x

Defendant BNC Mortgage, Inc. ("BNC"), by and through its attorneys, Sills Cummis &

Gross P.C. and Hofheimer Gartlir & Gross, LLP, and as and for its verified answer to the

verified amended complaint of plaintiff Howard W. Tomlinson ("Plaintiff" or "Tomlinson") in

the above-captioned matter, hereby:

      1.      Denies knowledge or information sufficient to form a belief as to the

allegations set forth in paragraphs 1, 2, 3, 4, 5, 6, and 8.

      2.      Denies the allegations set forth in paragraph 7, except admits that BNC had

offices located at 510 Melville Road, in Melville, New York.

### AS AND FOR A FIRST CAUSE OF ACTION
### AGAINST ALL OF THE DEFENDANTS

      3.      Denies knowledge or information sufficient to form a belief as to the

allegations set forth in paragraphs 9 through 22.

4.      Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 23, except to deny that Daniel Chan was "counsel" for BNC.

5.      Denies the allegations set forth in paragraph 24.

6.      Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraphs 25 through 27.

7.      Lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 28, except deny the allegations as to BNC contained therein.

8.      Lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 29.

9.      Lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 30, except to admit that the Degannes loan is in default.

10.     Denies the allegations set forth in paragraph 31.

11.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 32-38.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST ALL OF THE DEFENDANTS

12.     Repeats the foregoing allegations as if fully set forth herein, and denies the allegations set forth in paragraphs 40 through 41.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST ALL OF THE DEFENDANTS

13.     Repeats the foregoing allegations as if fully set forth herein, and denies the allegations set forth in paragraphs 42 through 44.

2

## AS AND FOR A FOURTH CAUSE OF ACTION
## AGAINST ALL OF THE DEFENDANTS

14.      Repeats the foregoing allegations as if fully set forth herein, and denies the allegations set forth in paragraph 46.

## AS AND FOR A FIFTH CAUSE OF ACTION
## AGAINST DEFENDANT DEGANNES

15.      Repeats the foregoing allegations as if fully set forth herein.

16.      Denies knowledge or information sufficient to form a belief as to the allegations in paragraph 48.

17.      Denies the allegations paragraphs 49 and 50.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim on which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of laches, waiver, and estoppel.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by reason of his misconduct and/or unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate his alleged damages.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because BNC holds a valid, perfected, and enforceable security interest in the property.

3

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because BNC can establish its entitlement to an equitable mortgage for the full amount of the proceeds of the loan at issue, including sums paid to discharge prior mortgages, liens, and other obligations of Tomlinson.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff lacks standing to assert any claims against BNC.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because he waived the right to claim damages by his acts and omissions.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because he failed to exercise ordinary care.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because he ratified the alleged wrongful conduct for which he now seeks recovery.

### ELEVENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks punitive or exemplary damages against BNC, his claims are barred, in whole or in part, by the procedural and substantive due process clauses of the United States Constitution and/or the Constitution of the State of New York.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because any harm he suffered is the result of his own contributory negligence.

4

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable provisions of the Uniform Commercial Code.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of Quantum Meruit.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of unjust enrichment.

## SIXTEENTH AFFIRMATIVE DEFENSE

BNC acted at all times in good faith and within reasonable commercial standards.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Any injuries sustained by Plaintiff were the result of conduct by others over whom BNC has no control.

## EIGHTEENTH AFFIRMATIVE DEFENSE

BNC was not the proximate cause of any damage or injury sustained by Plaintiff.

## NINETEENTH AFFIRMATIVE DEFENSE

BNC is not guilty of negligence, or of violating any known duty to Plaintiff.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the Doctrine of Election of Remedies.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff has failed to plead claims of fraud with the required particularity.

## RESERVATION OF RIGHTS

BNC expressly reserves the right to amend and/or supplement its answer and affirmative defenses as needed as discovery proceeds.

5

## BNC'S COUNTERCLAIMS, CROSS-CLAIMS, and THIRD-PARTY COMPLAINT

Defendant-Cross-Claimant/Counterclaimant/Third-party Plaintiff BNC Mortgage, Inc. ("BNC") by its attorneys, Sills Cummis & Gross P.C. and Hofheimer Gartlir & Gross, LLP, as its cross-claims against the other defendants, counterclaims against Plaintiff Howard Tomlinson ("Tomlinson"), and third-party complaint against Third-party Defendant Daniel Chan, Esq., hereby alleges as follows:

1.      This proceeding is an action arising from a fraudulent "foreclosure rescue" scheme, in which a number of participants conspired, as part of a scheme to take money from BNC under false pretenses by making fraudulent statements and submitting fraudulent documents, in order to fraudulently obtain a mortgage loan in connection with the sale of Tomlinson's property to Defendant Cherry Ann Degannes.

2.      Upon information and belief, on or around October 18, 2006, Degannes entered into a contract with Tomlinson to purchase real estate located at 694 Crown Street, Brooklyn, New York 11213 ("the Property") for the price of $660,000.

3.      Between approximately September of 2006 and early November of 2006, defendants David Dodson, Encore Capital Services, Inc. ("Encore") Jeffrey Lacy, and Avenue Mortgage ("Avenue"), acting in the capacity of mortgage brokers, submitted a loan application or applications ("the Application") to BNC on behalf of Degannes.

4.      The Application contained false and incomplete information and fraudulent representations as to material facts. In the course of BNC's approval process, Dodson, Encore, Lacy, and Avenue caused the fraudulent and incomplete information and representations to be submitted to BNC.

6

5.     Third-party defendant Chan, holding himself out as an eligible attorney, represented to BNC that he would act as the closing attorney in connection with the Tomlinson/Degannes transaction, and specifically in connection with a purchase money mortgage obtained by Degannes from BNC. In his capacity as the closing attorney, Chan received settlement and closing instructions from BNC, which Chan was to follow in closing the loan.

## PURSUANT TO CPLR § 3011 DEFENDANT BNC MORTGAGE INC. DEMANDS ANSWERS TO ITS CROSS-CLAIMS.

### FIRST CROSS-CLAIM

### FIRST COUNTERCLAIM

#### Fraud and Conspiracy to Commit Fraud

**(Against Defendants David Dodson, Encore Capital Services, Inc., Jeffrey Lacy, Avenue Mortgage, and Cherry Ann Degannes and Plaintiff Tomlinson)**

6.     BNC repeats and realleges the allegations of the foregoing Cross-Claim and Counterclaim Paragraphs 1 through 5 as if fully set forth herein.

7.     Between approximately September of 2006 and early November of 2006, defendants David Dodson, Encore Capital Services, Inc. ("Encore") Jeffrey Lacy, and Avenue Mortgage ("Avenue"), acting in the capacity of mortgage brokers, submitted a loan application or applications ("the Application") to BNC on behalf of Degannes.

8.     Degannes, through and in collaboration with Dodson and Lacy, knowingly made false representations on the Application with respect to material facts, including, but not limited to, her income and her intent to occupy the property and to use it as her primary residence.

7

9.     The Application, which contained information known by the defendants to be false, was submitted for a fraudulent transaction that, unbeknownst to BNC, was part and in furtherance of a "foreclosure rescue" scheme, in which Tomlinson, Degannes, Dodson, Lacy, Encore, and Avenue were participants. The Application sought a mortgage loan in the amount of $660,000.

10.    The Application submitted to BNC by Dodson, Encore, Lacy, and Avenue, acting in the capacity of mortgage brokers for Degannes, included fraudulent and incomplete information about the purchase transaction that failed to explain the true nature of the foreclosure rescue scheme.

11.    During the underwriting portion of the loan application process, Degannes, Dodson, Encore, Lacy, and Avenue submitted, and caused to be submitted, fraudulent and incomplete information regarding the Tomlinson/Degannes transaction that failed to include the following information, upon information and belief: (a) that Tomlinson would remain in possession of the property, and rent it back from Degannes; (b) that Degannes was a straw buyer who did not desire to permanently purchase Tomlinson's property or reside at the property; (c) that various parties who were part of the foreclosure rescue scheme, including Degannes, Dodson, Encore, Lacy, and Avenue, would receive a significant part of the loan proceeds, with a small portion going to Tomlinson.

12.    Dodson, Encore, Lacy, and Avenue, along with third-party defendant Daniel Chan, submitted a fraudulent "draft" HUD-1 form to BNC that failed to show the intended disbursements to the participants in the foreclosure rescue scheme, including Degannes, Dodson, Encore, Lacy, and Avenue.

8

13.    Upon information and belief, Defendants Degannes, Dodson, Encore, Lacy, Avenue, and Plaintiff Tomlinson arranged for the unauthorized disbursement, by third-party defendant Chan, of funds from the loan proceeds to the participants in the foreclosure rescue scheme, including Degannes, Dodson, Encore, Lacy, and Avenue.

14.    Defendants Degannes, Dodson, Encore, Lacy, Avenue, and Plaintiff Tomlinson have committed fraud against BNC in connection with the purchase of the Property.

15.    Defendants Degannes, Dodson, Encore, Lacy, Avenue, and Plaintiff Tomlinson intentionally made material misrepresentations concerning the real estate transaction and closing as referenced above.

16.    Defendants Degannes, Dodson, Encore, Lacy, Avenue, and Plaintiff Tomlinson knew or should have known of the falsity of their statements.

17.    Defendants Degannes, Dodson, Encore, Lacy, Avenue, and Plaintiff Tomlinson intended to deceive BNC through their material misrepresentations.

18.    BNC expended substantial sums of money in reasonable reliance upon the defendants' material misrepresentations to its detriment.

19.    As a result of the defendants' material misrepresentations, BNC has suffered, and will suffer, damages including but not limited to the loss on the Tomlinson/Degannes transaction from the difference in the mortgages loan amount and the potential sale price of the home, the cost and expense of defending itself against this action, which has resulted from the foreclosure rescue scheme, and the cost and expense of its efforts to recover all funds loaned on the transaction.

9

**WHEREFORE**, BNC demands judgment against Defendants Degannes, Dodson, Encore, Lacy, Avenue, and Plaintiff Tomlinson, jointly and severally, for the following relief:

a. Compensatory and consequential damages in an amount to be determined;

b. Punitive damages in an amount to be determined;

c. Prejudgment interest;

d. Attorney's fees and costs; and

e. Such other and further relief as the Court deems just and proper.

## SECOND CROSS-CLAIM

### Negligence

### (As to Defendants Encore and Avenue)

20.    BNC repeats and realleges the allegations of the foregoing Cross-Claim and Counterclaim Paragraphs 1 through 19 as if fully set forth herein.

21.    Defendants Encore and Avenue, in submitting the Degannes loan application and supporting financial, employment, and transaction documents and information to BNC, knew or should have known that BNC would rely on their representations, made within the scope of their representatives' (Dodson's and Lacy's) employment, in approving the loans and disbursing the mortgage loan proceeds.

22.    Encore and Avenue, in employing Dodson and Lacy, knew or should have known that BNC would rely on the representations of Dodson and Lacy (and Encore and Avenue's other representatives) made within the scope of their employment with Encore and Avenue, in approving the loans and disbursing the mortgage loan proceeds.

10

23.    Encore and Avenue, through their employees, negligently or intentionally breached their duty to BNC Mortgage by providing misleading and false information concerning the loan application and the Tomlinson/Degannes transaction to BNC.

24.    Encore and Avenue negligently or intentionally breached their duty to BNC by failing to properly supervise their employees and by allowing their employees to provide, and because their employees did provide, misleading and false information concerning the loan application and the transaction to BNC.

25.    BNC has been forseeably damaged by Encore and Avenue, and the negligent or intentional breaches, by Encore and Avenue, of their duty to BNC.

**WHEREFORE**, BNC demands judgment against Defendants Encore and Avenue, jointly and severally, for the following relief:

a.    Compensatory and consequential damages in an amount to be determined;

b.    Punitive damages in an amount to be determined;

c.    Prejudgment interest;

d.    Attorney's fees and costs; and

e.    Such other and further relief as the Court deems just and proper.

### THIRD CROSS-CLAIM

**Breach of Contract**

**(As to Defendant Avenue)**

26.    BNC repeats and realleges the allegations of the foregoing Cross-Claim and Counterclaim Paragraphs 1 through 25 as if fully set forth herein.

11

27.    On or around January 3, 2005, Avenue Mortgage executed a Broker Agreement ("Broker Agreement") with BNC Mortgage.

28.    Pursuant to the Broker Agreement, Avenue agreed to certain representations and warranties to BNC regarding the loan applications that Avenue would submit to BNC.

29.    Pursuant to Paragraph 3.4 of the Broker Agreement ("Control of Documents; Disclosure and Validity of Information"), Avenue warranted that "[it] has and shall make prompt, timely, full, accurate, and truthful disclosure to Lender of all facts, information, and documentation which Mortgage Broker may know, suspect, or have notice of, which could affect or has affected the validity, collectibility, collateral value, security, or enforceability of any Application Package submitted by Mortgage Broker for consideration by Lender," and that "[a]ll information on applications prepared by Mortgage Broker for submission to Lender with regard to Application Packages, including all written attachments thereto, is and shall be true, correct, currently valid, and genuine."

30.    Under Paragraph 3.7, Avenue represented and warranted that: "[t]here is no agreement between Mortgage Broker and any other person or entity for the payment of any referral fee, rebate, bonus, kickback or other payment and no payment of such referral fee, rebate, bonus, kickback or other payment has been or will be made."

31.    Avenue, through its employees, upon information and belief breached these provisions of the Broker Agreement by, among other things, as described in the foregoing Paragraphs – causing to be submitted, fraudulent and incomplete information regarding the Tomlinson/Degannes transaction in the loan application package and during the origination

12

process for such transaction and participating in the disbursement of loan proceeds to other

defendants in violation of BNC's closing instructions.

32. BNC has been damaged by Defendant Avenue's breaches of the Broker Agreement.

**WHEREFORE**, BNC demands judgment against Defendant Avenue for the following

relief:

a.  Compensatory and consequential damages in an amount to be determined;

b.  Punitive damages in an amount to be determined;

c.  Prejudgment interest;

d.  Attorney's fees and costs; and

e.  Such other and further relief as the Court deems just and proper.

### FOURTH CROSS-CLAIM

### SECOND COUNTERCLAIM

#### Conversion

**(As to Defendants Degannes, Dodson, Encore, Lacy, Avenue, and Plaintiff Tomlinson)**

33.    BNC repeats and realleges the allegations of the foregoing Cross-Claim and

Counterclaim Paragraphs 1 through 32 as if fully set forth herein.

34.    Defendants Degannes, Dodson, Encore, Lacy, Avenue, and Plaintiff Tomlinson, by

engaging in the acts described above, have willfully deprived BNC of its property or have aided

or assisted others in doing so, and have wrongfully converted its funds into real property and

personalty which they have no right to retain.

35.    As a result of such actions, BNC has suffered damages for which Defendants Degannes,

Dodson, Encore, Lacy, Avenue, and Plaintiff Tomlinson are jointly and severally liable.

13

WHEREFORE, BNC demands judgment against Defendants Degannes, Dodson, Encore, Lacy, Avenue, and Plaintiff Tomlinson, jointly and severally, for the following relief:

a.  Compensatory and consequential damages in an amount to be determined;

b.  Punitive damages in an amount to be determined;

c.  Prejudgment interest;

d.  Attorney's fees and costs; and

e.  Such other and further relief as the Court deems just and proper.

## CROSS-CLAIMS FOR INDEMNIFICATION AND/OR CONTRIBUTION AGAINST DEFENDANTS DEGANNES, DODSON, ENCORE, LACY, AND AVENUE

While BNC denies any wrongdoing or liability with respect to the allegations and claims of the Complaint, and denies that Plaintiff Tomlinson is entitled to the relief sought therein, if Tomlinson recovers in this action, it will have been brought about solely by virtue of the primary, intentional and active recklessness, carelessness, negligence, wrongdoing, misrepresentation, fraud, and/or breach of contract by Defendants Degannes, Dodson, Encore, Lacy, and Avenue. As such, if BNC is found liable to Plaintiff Tomlinson, or if Tomlinson otherwise recovers against BNC in this action, then BNC demands that Defendants Degannes, Dodson, Encore, Lacy, and Avenue, as the parties solely responsible for any such loss or damages suffered by BNC, indemnify BNC for the full amount of any judgment entered against BNC. Furthermore, if BNC is found liable to Tomlinson, or if Tomlinson otherwise recovers against BNC in this action, then BNC claims its right to contribution from Degannes, Dodson, Encore, Lacy, and Avenue in accordance to the respective degrees of liability of Degannes, Dodson, Encore, Lacy, and Avenue as ascertained or determined at trial.

WHEREFORE, BNC demands (i) indemnification from Defendants Degannes, Dodson, Encore, Lacy, and Avenue for all relief and/or sums for which BNC may be adjudged liable in

14

the Action, and/or (ii) contribution against Degannes, Dodson, Encore, Lacy, and Avenue, together with costs and attorneys' fees in the full amount provided by law.

## THIRD PARTY COMPLAINT

Third-party Plaintiff BNC Mortgage, Inc. ("BNC") by its attorneys, Sills Cummis & Gross P.C. and Hofheimer Gartlir & Gross, LLP, as its third-Party complaint against Third-party Defendant Daniel Chan, Esq., hereby allege as follows:

## FIRST CAUSE OF ACTION

### Professional Negligence

36.     BNC repeats and realleges the allegations contained in the foregoing Cross-Claim and Counterclaim Paragraphs 1 through 35 of the foregoing section.

37.     Chan represented to BNC that he would act as the closing attorney in connection with the closing of title to the Property.

38.     BNC sent settlement and closing instructions to Chan, which Chan was duty-bound to follow in closing the loan.

39.     Chan submitted a fraudulent "draft" HUD-1 form to BNC that failed to show intended disbursements to the participants in the foreclosure rescue scheme (described in Paragraphs 1-34, above), including Degannes, Dodson, Avenue and Lacy.

40.     On November 7, 2006, BNC wired $660,000, to Chan's attorney trust account, to accomplish the purchase of the Property, in accordance with the contract for sale previously provided to BNC.

41.     However, upon information and belief, Chan failed to disburse the loan proceeds in accordance with BNC's closing instructions and instead made undisclosed disbursements to the

15

participants in the foreclosure rescue scheme, including defendants Degannes, Dodson, Avenue, and Lacy.

42.    Chan failed to immediately record the deed in favor of Degannes or the mortgage in favor of BNC with the Kings County Clerks Office, as required by BNC's instructions.

43.    In carrying out the function of a closing attorney, Chan failed to follow BNC's settlement closing instructions and represented to BNC that a closing had occurred in accordance with the final HUD-1 submitted to BNC.

44.    Chan, as the closing attorney for the Tomlinson/Degannes transaction, knew or should have known that BNC would rely on his representations, made in his professional capacity, in approving the loans and disbursing the mortgage loan proceeds.

45.    Chan negligently or intentionally breached his duty to BNC by providing BNC with misleading and false information concerning the Tomlinson/Degannes transaction, by permitting the loan proceeds to be disbursed for improper purposes and contrary to the instructions of BNC, and by otherwise not following BNC's instructions.

46.    Chan knew or should have known that BNC would rely on his representations, made in his professional capacity, in determining if the mortgage loan proceeds had been disbursed in accordance with BNC's instructions.

47.    BNC has been damaged by Chan's negligent or intentional breaches of his duty to BNC.

    **WHEREFORE**, BNC demands judgment against Third-party Defendant Chan for the following relief:

16

a. Compensatory and consequential damages in an amount to be determined;

b. Punitive damages in an amount to be determined;

c. Prejudgment interest;

d. Attorney's fees and costs; and

e. Such other and further relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION

### Breach of Fiduciary Duty

48.    BNC repeats and realleges the allegations set forth in the foregoing Cross-Claim and Counterclaim Paragraphs 1 through 47 as if fully set forth herein.

49.    Chan, as the closing attorney, had a fiduciary duty to BNC to disburse the loan proceeds only for proper purposes, and in accordance with BNC Mortgage's instructions.

50.    Chan negligently or intentionally breached his duty to BNC by providing misleading and false information concerning the Tomlinson/Degannes transaction to BNC, by permitting the loan proceeds to be disbursed for improper purposes and contrary to the instructions of BNC, and by otherwise not following BNC's instructions.

51.    Chan, as the attorney at the closing who signed certain closing documents, had a fiduciary duty to BNC to disburse the loan proceeds only for proper purposes, and in accordance with BNC's instructions.

52.    BNC has been damaged by Chan's negligent or intentional breaches of his duty to BNC.

**WHEREFORE**, BNC demands judgment against Third-party Defendant Chan for the following relief:

a. Compensatory and consequential damages in an amount to be determined;

17

b.  Punitive damages in an amount to be determined;

c.  Prejudgment interest;

d.  Attorney's fees and costs; and

e.  Such other and further relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION

### Conversion

53.    BNC repeats and realleges the allegations set forth in the foregoing Cross-Claim and Counterclaim Paragraphs 1 through 52 as if fully set forth herein.

54.    Chan, along with Defendants Degannes, Dodson, Encore, Lacy, Avenue, and Plaintiff Tomlinson, by engaging in the acts described above, has willfully deprived BNC of its property or has aided or assisted others in doing so, and has wrongfully converted funds into real property and personalty which he has no right to retain.

55.    As a result of such actions, BNC has suffered damages for which Chan is jointly or severally liable.

56.    Upon information and belief, Chan retained for his own payment certain of the funds wired into his trust account, which should have been disbursed and otherwise utilized solely in the purchase of the Property.

**WHEREFORE,** BNC demands judgment against Third-party Defendant Chan for the following relief:

a.  Compensatory and consequential damages in an amount to be determined;

b.  Punitive damages in an amount to be determined;

c.  Prejudgment interest;

18

d. Attorney's fees and costs; and

e. Such other and further relief as the Court deems just and proper.

Dated: August 26, 2008
      New York, New York

                    SILLS CUMMIS & GROSS P.C.
                    One Rockefeller Plaza
                    New York, New York 10112
                    (212) 643-7000
                    Attorneys for Defendant BNC Mortgage, Inc.

By: _____
                    JEFFREY J. GREENBAUM
                    MARC D. YOUNGELSON

                    DAVID BIRCH, ESQ.
                    HOFHEIMER GARTLIR & GROSS LLP
                    530 Fifth Avenue
                    New York, New York 10013
                    (212) 818-9000
                    Attorneys for Defendant BNC Mortgage, Inc.

19

## VERIFICATION

STATE OF CALIFORNIA )

                   :ss:

COUNTY OF ORANGE)

       **LINDA DeNICOLA,** being duly sworn, deposes and says:

1. I am a Senior Vice President, Quality Control of BNC Mortgage, Inc., a defendant, cross-claimant, counterclaimant, and third-party plaintiff in the within action. I have read the foregoing Verified Answer and the same is true to the best of my knowledge, information, and belief based upon my review of the loan file related to the underlying transaction and the documents contained therein.

                                    _____

                                      LINDA DeNICOLA

Sworn to before me this
   Day of August, 2008

_____

Notary Public

1509431 v1

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _ORANGE_ _____ } ss.

On _9-22-08_ , before me, _A. FERRAR_ _____
　　　　Date　　　　　　　　　　　Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Linda DeNicola_ _____
　　　　　　　　　　　　　　　　　　Name(s) of Signer(s)

☑ personally known to me

☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

A. FERRAR
Commission # 1639923
Notary Public - California
Orange County
My Comm. Expires Jan 21, 2010

Place Notary Seal Above

WITNESS my hand and official seal.

Signature _A. Ferrar_
　　　　　　　Signature of Notary Public

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Item No. 5907    Reorder: Call Toll-Free 1-800-876-6827

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------x

HOWARD W. TOMLINSON,                                    Index# 41418/07

                    Plaintiff,

-against-                                               **VERIFIED ANSWER**
                                                        **TO SECOND AMENDED**
                                                        **VERIFIED COMPLAINT**
CHERRY ANN DEGANNES, DAVID DODSON,
ENCORE CAPITAL SERVICES, INC., JEFFERY
LACY, AVENUE MORTGAGE, INC., BNC
MORTGAGE INC., and DANIEL CHAN, ESQ.,

                    Defendants.
-----------------------------------------------------------------x
BNC MORTGAGE, INC.,

                    Third-Party Plaintiff,

-against-

DANIEL CHAN, ESQ.,

                    Third-Party Defendant.
-----------------------------------------------------------------x

        Defendant, DANIEL CHAN, ESQ., (hereinafter "Defendant"), by his attorneys, Furman

Kornfeld & Brennan LLP, hereby responds to Plaintiff's Second Amended Verified Complaint

(hereinafter the "Verified Complaint") as follows:

### AS AND FOR DEFENDANT'S ANSWER TO THE VERIFIED COMPLAINT

        1.      Denies knowledge or information sufficient upon which to form a belief as to the

truth of the allegations contained in paragraphs numbered "1", "2", "3", "4", "5", "6", and "7".

        2.      Admits the allegations set forth in paragraph "8" of the Plaintiff's Verified

Complaint.

## AS AND FOR DEFENDANT'S ANSWER TO THE FIRST CAUSE OF ACTION

3.     Defendant repeats, reiterates and realleges each and every response as previously set forth to paragraphs numbered "1" through "8", inclusive, with the same force and effect as if fully set forth at length.

4.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "9".

5.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "10".

6.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "11".

7.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "12".

8.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "13".

9.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "14".

10.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "15".

11.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "16".

12.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "17".

13.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "18".

14.     Denies knowledge or information sufficient upon which to form a belief as to the

truth of the allegations contained in paragraph numbered "19".

15.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "20".

16.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "21".

17.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "22".

18.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "23".

19.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "24".

20.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "25".

21.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "26".

22.     Deny, in the form alleged, each and every allegation contained in the paragraph designated as "27" of the Verified Complaint, except admit that Defendant served as the Bank Attorney on behalf of BNC Mortgage, Inc., at the Closing held on November 7, 2006, and prepared and executed certain documents in connection therewith.

23.     Deny, each and every allegation contained in the paragraph designated as "28" of the Verified Complaint.

24.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "29".

25.     Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "30".

{00002619;1 }

26.    Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "31".

27.    Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "32".

28.    Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "33".

29.    Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "34".

30.    Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "35".

31.    Denies each and every allegation contained in the paragraph numbered "36".

32.    Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "37".

## AS AND FOR DEFENDANT'S ANSWER TO THE SECOND CAUSE OF ACTION

33.    Defendant repeats, reiterates and realleges each and every response as previously set forth to paragraphs numbered "1" through "37", inclusive, with the same force and effect as if fully set forth at length.

34.    Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "38".

35.    Denies each and every allegation contained in the paragraph numbered "39".

36.    Denies each and every allegation contained in the paragraph numbered "40".

## AS AND FOR DEFENDANT'S ANSWER TO THE THIRD CAUSE OF ACTION

37.    Defendant repeats, reiterates and realleges each and every response as previously set forth to paragraphs numbered "1" through "35", inclusive, with the same force and effect as if fully set forth at length.

{00002619;1 }

38.    Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "41".

39.    Denies each and every allegation contained in the paragraph numbered "42".

40.    Denies each and every allegation contained in the paragraph numbered "43".

## AS AND FOR DEFENDANT'S ANSWER TO THE FOURTH CAUSE OF ACTION

41.    Defendant repeats, reiterates and realleges each and every response as previously set forth to paragraphs numbered "1" through "43", inclusive, with the same force and effect as if fully set forth at length.

42.    Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "44".

43.    Denies each and every allegation contained in the paragraph numbered "45".

## AS AND FOR DEFENDANT'S ANSWER TO THE FIFTH CAUSE OF ACTION

44.    Defendant repeats, reiterates and realleges each and every response as previously set forth to paragraphs numbered "1" through "45", inclusive, with the same force and effect as if fully set forth at length.

45.    Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "46".

46.    Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "47".

47.    Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "48".

48.    Denies knowledge or information sufficient upon which to form a belief as to the truth of the allegations contained in paragraph numbered "49".

## AS AND FOR DEFENDANT'S FIRST AFFIRMATIVE DEFENSE

49.    Plaintiff's Verified Complaint fails to state a cause of action against the Defendant for which relief can be granted and should be dismissed.

## AS AND FOR DEFENDANT'S SECOND AFFIRMATIVE DEFENSE

50.    No privity or attorney client relationship existed between Plaintiff and Defendant. As such, Plaintiff's claims fail to state a cause of action upon which relief may be granted and should be dismissed.

## AS AND FOR DEFENDANT'S THIRD AFFIRMATIVE DEFENSE

51.    Defendant exercised due care and diligence in all matters alleged in the Plaintiff's Verified Complaint.

## AS AND FOR DEFENDANT'S FOURTH AFFIRMATIVE DEFENSE

52.    Any damages sustained by the Plaintiff were not caused by any acts or omissions on the part of the Defendant, but were solely caused by the negligence and carelessness of the Plaintiff and that such conduct requires diminution of any award, verdict or judgment that Plaintiff may recover against the Defendant.

## AS AND FOR DEFENDANT'S FIFTH AFFIRMATIVE DEFENSE

53.    If any damages were sustained by the Plaintiff as alleged in the Plaintiff's Verified Complaint, which damages are expressly denied, all such damages have been caused and brought about in whole or in material part by the affirmative wrongdoing, negligence, want of care, assumption of risk, breach of contract, and other culpable conduct and/or comparative negligence of persons other than Defendant, without similar acts of Defendant contributing

thereto, and as a consequence thereof the Plaintiff's damages should be reduced by the proportion third persons other than Defendant's culpable conduct which caused the alleged damages.

## AS AND FOR DEFENDANT'S SIXTH AFFIRMATIVE DEFENSE

54.     Plaintiff failed to mitigate his alleged damages.

## AS AND FOR DEFENDANT'S SEVENTH AFFIRMATIVE DEFENSE

55.     Defendant's actions were ratified by the Plaintiff.

## AS AND FOR DEFENDANT'S EIGHTH AFFIRMATIVE DEFENSE

56.     In the event the Plaintiff recovers a verdict or judgment against Defendant, said verdict or judgment should be reduced pursuant to CPLR §4545 (c) by those amounts which have been or will, with reasonable certainty, replace or indemnify Plaintiff in whole or in part for any past or future claimed economic loss, from any collateral source, as would have occurred in the underlying action.

## AS AND FOR DEFENDANT'S NINTH AFFIRMATIVE DEFENSE

57.     Plaintiff's Verified Complaint must be dismissed as Plaintiff cannot prove that "but for" Defendant's actions, Plaintiff would not have sustained real and ascertainable damages.

## AS AND FOR DEFENDANT'S TENTH AFFIRMATIVE DEFENSE

58.     Defendant's alleged negligent acts/omissions were not the proximate cause of the Plaintiff's alleged damages.

{00002619;1 }

## AS AND FOR DEFENDANT'S ELEVENTH AFFIRMATIVE DEFENSE

59.    Plaintiff cannot prove that it would have prevailed in any of the underlying actions related to the alleged breach of the underlying leasehold interest at issue.

## AS AND FOR DEFENDANT'S TWELFTH AFFIRMATIVE DEFENSE

60.    Plaintiff's claims are barred by the doctrine(s) of waiver, estoppel, laches, and/or unclean hands.

## AS AND FOR DEFENDANT'S THIRTEENTH AFFIRMATIVE DEFENSE

61.    Plaintiff has failed to join all necessary parties to this action.

## AS AND FOR THE DEFENDANT'S FOURTEENTH AFFIRMATIVE DEFENSE

62.    Documentary evidence contradicts the factual allegations pled in the Plaintiff's Verified Complaint.

## AS AND FOR THE DEFENDANT'S FIFTEENTH AFFIRMATIVE DEFENSE

63.    The Plaintiff's claims are barred by the applicable statute of limitations.

## AS AND FOR THE DEFENDANT'S SIXTEENTH AFFIRMATIVE DEFENSE

64.    Plaintiff's Verified Complaint fails to establish that the Defendant's conduct fell below the applicable standard of care.

## AS AND FOR THE DEFENDANT'S SEVENTEENTH AFFIRMATIVE DEFENSE

65.    The Plaintiff's alleged damages were caused, in whole or in part, by the acts or omissions of the Plaintiff.

**WHEREFORE,** the Answering Defendant, DANIEL CHAN, ESQ., respectfully requests that this Court enter judgment as follows:

{00002619;1 }

1.    Dismissing Plaintiff's Verified Complaint;

2.    Granting to Defendant the costs, expenses, and disbursements resulting from this

litigation, including attorneys' fees; and

3.    Awarding such other and further relief as this Court deems just, necessary, and

proper.

Dated: New York, New York
       November 25, 2008


                                 FURMAN KORNFELD & BRENNAN LLP

                                 By:_____
                                     A. Michael Furman, Esq.
                                     Attorneys for Defendant/Third-Party
                                     Defendant
                                     Daniel Chan
                                     545 Fifth Avenue, Suite 401
                                     New York, NY 10017
                                     (212) 867-4100
                                     (212) 867-4118
                                     FKB File No.: 302.011


TO:    SILLS CUMMIS & GROSS
       Attorney for Defendant/Third-Party Plaintiff
       BNC Mortgage, Inc.,
       One Rockefeller Plaza
       New York, New York 10112

       LIPSKY, BRESKY & LOWE LLP
       Attorneys for Defendant
       Avenue Mortgage, Inc.,
       585 Stewart Avenue, Suite 440
       Garden City, New York 11530

       ANTHONY T. BELLATO, ESQ.
       Attorney for Defendant
       Cherry Ann Degannes
       5476 Merrick Road
       Massapequa, New York 11758


{00002619;1 }

HOFHEIMER, GARTLIR & GROSS
Attorney for Defendant/Third-Party Plaintiff
BNC Mortgage, Inc.,
530 Fifth Avenue
New York, NY 10036

DAVID DODSON
Defendant Pro Se
100 Garden City Plaza
Garden City, NY 11530

ENCORE CAPITAL SERVICES, INC.,
Defendant Pro Se
100 Garden City Plaza
Garden City, NY 11530

JEFFERY LACY
Defendant Pro Se
57 Manorhaven Boulevard
Port Washington, NY 11050

CONE & KILBOURN
Attorneys for Plaintiff
83 S. Bedford Road
Mount Kisco, New York 10549

{00002619;1 }

## ATTORNEY VERIFICATION

STATE OF NEW YORK      )
                                 )

COUNTY OF NEW YORK      )

    A. MICHAEL FURMAN, being duly sworn, states that he is associated with the firm of FURMAN KORNFELD & BRENNAN LLP, attorneys for the Defendant Daniel Chan, Esq., in this action and that the foregoing Answer is true to his knowledge, except as to those matters therein stated upon information and belief, and as to those matters he believes them to be true, that the grounds of his belief as to all matters not stated upon his knowledge are correspondences and other writings furnished by the Defendant and other documents maintained in the office of his attorneys; and that the reason why this verification is not made by the Defendant is that the Defendant resides in a county other than the county where his attorneys have their office.

Dated: New York, New York
       November 25, 2008

_____

A. MICHAEL FURMAN

Sworn to before me this
____ day of November 2008

_____
NOTARY PUBLIC

JENNIFER MACASAET
Notary Public, State of New York
No. 01MA6185823
Qualified in Richmond County
Commission Expires April 21, 2012

{00002619;1 }