# Exhibit "B – Part 2"

<table>
<tr><td>

**DISTRICT COURT, DOUGLAS COUNTY,**
**STATE OF COLORADO**
4000 Justice Way, Suite 2009
Castle Rock, Colorado 80109
(303)663-7200

**Plaintiff:**    MIDCOUNTRY BANK

v.

**Defendant:**    AURORA LOAN SERVICES LLC, a
Colorado limited liability company.

</td><td>

☐ COURT USE ONLY ☐

</td></tr>
<tr><td>

**Attorneys for Plaintiff MidCountry Bank:**
Scott T. Rodgers, #19943
Tamara A. Hoffbuhr, #29391
Kieran A. Lasater, #38751
Fairfield & Woods, P.C.
Wells Fargo Center, Suite 2400
1700 Lincoln Street
Denver, Colorado  80203
Tel:  303-830-2400
Fax:  303-830-1033
Email:  srodgers@fwlaw.com; thoffbuhr@fwlaw.com;
klasater@fwlaw.com

</td><td>

Case No.: 2009cv369


Division: 1

</td></tr>
</table>

## FIRST AMENDED VERIFIED COMPLAINT FOR REPLEVIN AND OTHER RELIEF

Plaintiff MidCountry Bank, by and through its attorneys, Fairfield and Woods, P.C., for

its First Amended Complaint For Replevin and Other Relief against Defendant Aurora Loan

Services LLC states:

### THE PARTIES

1.    Plaintiff MidCountry Bank is a federal savings bank ("MidCountry") with a

principal place of business located at 14525 Highway 7, Suite 335, Minnetonka, Minnesota

55345.

2.     Defendant Aurora Loan Services LLC ("Aurora") is a Colorado limited liability company corporation, with a principal place of business and corporate headquarters located at 10350 Park Meadows Drive, Littleton, Colorado.

### JURISDICTION AND VENUE

3.     The Court has personal jurisdiction over the Defendant as it is a Colorado limited liability company.

4.     Venue is proper in this Court pursuant to Colorado Rule of Civil Procedure 98(c), as Aurora's principal place of business and corporate headquarters are located in Douglas County, Colorado.

### GENERAL ALLEGATIONS

5.     MidCountry is in the business of, *inter alia*, originating home mortgage loans.

6.     Aurora is in the business of, *inter alia*, servicing home mortgage loans.

7.     In a three-party contract dated July 30, 2007, MidCountry, as owner of approximately 53 mortgage loans, Aurora, as servicer of the loans, and Lehman Capital, a division of Lehman Brothers Holdings Inc., as servicing rights owner, entered into a contract whereby Aurora would service the mortgage loans on behalf of MidCountry (the "Contract"). A true and exact copy of the Contract is attached hereto as Exhibit A.

8.     Under the Contract, Aurora was to hold the mortgage documents in trust for and on behalf of MidCountry, and to act in a fiduciary capacity for MidCountry by, *inter alia*, servicing the loans on a day-to-day basis, exercising judgment on behalf of MidCountry, as well as by accepting payments from the mortgagors and remitting such payments to MidCountry, minus a service fee.

2

9.    The Contract provided a standard of care to be exercised in the servicing of the loans, as well as certain representations and warranties made by Aurora to MidCountry.

10.    The Contract contained a choice of law provision which provided that New York law is to govern the rights, remedies and obligations of the parties.

11.    After entering into the Contract, Aurora breached the Contract.

12.    Aurora has failed to properly take such actions as necessary to service, maintain and administer the loans subject to an insurance policy for primary mortgage guaranty insurance ("LPMI Loans") in accordance with the insurance policy ("LPMI Policy") and to perform and enforce the rights of the insured under such LPMI Policy.

13.    Aurora has failed to properly manage, conserve and protect defaulted loans and REO Property.

14.    By letter dated September 3, 2008, MidCountry notified Aurora of significant and material issues with respect to Aurora's servicing of delinquent loans. Aurora was notified that its monthly reports provided to MidCountry did not contain sufficient information for MidCountry to determine the status of the delinquent loans and to properly account for the delinquent loans. Aurora has failed to observe and perform the covenants and agreements contained within the Contract.

15.    Section 9.01(ii) of the Contract provides that MidCountry may terminate Aurora for cause in the event of Aurora's failure to duly "observe or perform in any material respect any other of the covenants or agreements on the part of [Aurora] set forth in this [Contract] which continues unremedied for a period of thirty (30) days . . . ."

3

16.     Aurora breached Section 9.01 (ii) of the Contract, by, among other things, failing
to observe the practices of prudent mortgage lending institutions which service mortgage loans
of the same type in the respective jurisdictions at issue (as required by Section 2.01, referencing
"Accepted Servicing Practices," as defined in Article I of the Contract), with respect to not less
than the Adams Loan (Servicer Loan No. 45697588) and the Cisneros Loan (Servicer Loan No.
40402422). Aurora breached the above-referenced Contract provisions, as well as Section 3.08
(relating to LPMI Claims), by failing to timely object to the insurer's denial of mortgage
insurance coverage for both the Adams and Cisneros Loans, where the grounds for such denial
were baseless and/or in doubt, as well as by failing to timely inform MidCountry of such denial
of coverage until after the expiration of the insurer's objection/appeal deadline.

17.     Aurora additionally breached Section 9.01(ii), as well as Section 3.01(c) of the
Contract, with respect to the Lindo Loan (Servicer Loan No. 40552739), by, among other things,
failing to notify MidCountry or to secure its pre-approval of the short sale at a significantly
discounted price, which failure constitutes a violation of Section 3.10 (requiring notice/pre-
approval), as well as a violation of the practices of prudent mortgage lending institutions which
service mortgage loans of the same type in the respective jurisdictions at issue.

18.     During the course of its servicing and administration of the loans at issue, Aurora
failed to confer with, and to keep informed, MidCountry in numerous aspects of such servicing
and administration, which constitutes an additional breach of its duties under the Contract.
Despite being advised of its repeated failure to communicate with MidCountry in a timely and
meaningful manner regarding delinquent loans and to seek required pre-approvals, Aurora failed
to take appropriate remedial action.

4

19.     By email dated January 12, 2009, MidCountry notified Aurora that it was terminating the Contract, effective as of February 1, 2009.   On January 14, 2009, Aurora acknowledged receipt of the termination notice.   After this written request from MidCountry, Aurora failed to prepare, execute and deliver to the successor entity designated by MidCountry the appropriate documents and instruments to effectuate the termination.

20.     Aurora did not object to its termination, and agreed to "make every effort to cooperate fully."

### FIRST CLAIM FOR RELIEF
(Breach of Contract)

21.     MidCountry incorporates by reference Paragraphs 1 through 20, as though set forth at length herein.

22.     MidCountry and Aurora entered into the Contract.

23.     MidCountry performed its obligations under the Contract.

24.     Aurora breached the Contract.

25.     As a result of Aurora's breach of the Contract, MidCountry has suffered damages in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF
(Beach of Fiduciary Duty)

26.     MidCountry incorporates by reference Paragraphs 1 through 25, as though set forth at length herein.

27.     Under the Contract, Aurora acted as a fiduciary for MidCountry.

28.     While acting as a fiduciary, Aurora engaged in misconduct.

29.     Aurora's misconduct directly caused damages to MidCounty, in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
(Accounting)

30.     MidCountry incorporates by reference Paragraphs 1 through 29, as though set forth at length herein.

31.     A fiduciary relationship existed between MidCountry and Aurora.

32.     As the owner of the loans, MidCountry had an interest in the loans.

33.     In attempting to fulfill the Contract, Aurora breached its fiduciary duties to MidCountry by engaging in misconduct.

34.     Both the Contract and equity require that Aurora be compelled to make an accounting to MidCountry of all transactions affecting the loans serviced by Aurora under the Contract.

### FOURTH CLAIM FOR RELIEF
(Replevin)

35.     MidCountry incorporates by reference Paragraphs 1 through 34, as though set forth at length herein.

36.     MidCountry is the owner of the mortgage loans as identified in the Contract (the "Mortgage Loans") and is entitled to possession of the Mortgage Loans.

37.     Pursuant to the remedies set forth in the Contract, upon default of the Contract, MidCountry is entitled to immediate possession of the Mortgage Loans.

6

38.    Despite the demand that the Defendant assemble the Mortgage Loans and relinquish possession of the Mortgage Loans to MidCountry, the Defendant has wrongfully retained possession of the Mortgage Loans.

39.    Upon information and belief, the Mortgage Loans are located at 10350 Park Meadows Drive, Littleton, Colorado, which is the principal place of business of the Defendant. The reasonable value of the Mortgage Loans is unknown, but is believed to be $16,000,000.

40.    The Mortgage Loans have not been taken for tax assessment of fine pursuant to a statue; or seized under an execution against the property of MidCountry; or if so seized, that it is by statute exempt from seizure.

WHEREFORE, Plaintiff MidCountry Bank respectfully requests that the Court enter a judgment against Aurora and award it the following relief:

      i.      Order an accounting;

      ii.     Find Aurora liable to MidCountry;

      iii.    Award the Plaintiff its actual and consequential damages;

      iv.    Order Aurora to disgorge all ill-gotten gains;

      v.     Upon its fourth claim for relief for possession of the Mortgage Loans described above, for an order under C.R.C.P 104 requiring Defendant to take all steps necessary to assemble, make available and preserve and protect the Mortgage Loans from damage, destruction, or waste and for injunctive relief against the Defendant not to move, sell, or dispose of the Mortgage Loans, other than to deliver the Mortgage Loans to the possession of MidCountry.

      vi.    Award MidCountry its costs and attorney's fees; and

7

From: 0517659747    Page: 9/9    Date: 3/9/2009 8:57:04 AM

    vii.    Award MidCountry such other and further relief as the Court deems just and proper.

Dated this ⁹ day of March, 2009.

FAIRFIELD AND WOODS, P.C.

By: */s/ Scott T. Rodgers*
    Scott T. Rodgers
    Tamara A. Hoffbuhr
    Kieran A. Lasater

ATTORNEYS FOR PLAINTIFF

ADDRESS OF PLAINTIFF:
MidCountry Bank
14525 Highway 7, Suite 335,
Minnetonka, Minnesota 55345

## VERIFICATION

I, Gregory A. Krenz of MidCountry Bank, being first duly sworn upon my oath, do hereby verify that MidCountry Bank is the Plaintiff in the above-captioned action, that I have read and have personal knowledge of the statements contained in this **FIRST AMENDED VERIFIED COMPLAINT FOR REPLEVIN AND OTHER RELIEF**, all of which are true and correct to the best of my knowledge, information and belief.

The foregoing was acknowledged to before me this 9ᵗʰ day of March, 2009 by

WITNESS my hand and official seal.

Notary Public

My commission expires: 1-31-10

GINA WINTERS
Notary Public
Minnesota
My Commission Expires January 31, 2010

8