John L. Scott, Esq.
David M. Grimes, Esq.
**REED SMITH LLP**
599 Lexington Avenue
New York, NY 10022
Tel: 212-521-5400
Fax: 212-521-5450

*Counsel to Yarpa Investmenti S.G.R. S.p.A. – RP3 Fund*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                              :
In re                                         :    Chapter 11
                                              :
LEHMAN BROTHERS HOLDINGS INC., *et al*.,      :    Case No. 08-13555 (JMP)
                                              :    (Jointly Administered)
                              Debtors.        :
                                              :    Refers to Dkt. Nos. 1541 & 2258
------------------------------------------------------------x

**MOTION OF YARPA INVESTMENTI S.G.R. S.p.A. – RP3 FUND**
**FOR RELIEF CONCERNING DEBTORS'**
**ASSUMPTION OF CERTAIN OPEN TRADE CONFIRMATIONS**

Yarpa Investmenti S.G.R. S.p.A. – RP3 Fund ("Yarpa") hereby moves under Federal Rule of Civil Procedure 60(b), made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for certain limited relief from this Court's Order Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade Confirmations, dated December 16, 2008 (D.I. 2258) (the "Order").

**PRELIMINARY STATEMENT**

1.    This motion concerns a certain purported LMA Trade Confirmation dated March 12, 2008, entered into between Yarpa, as buyer, and Lehman Commercial Paper Inc. ("Debtor"), as seller (the "Yarpa Trade"). On November 6, 2008 and November 14, 2008, Debtor allegedly sent Yarpa notice of a December 3, 2008 hearing (the "Hearing") on Debtor's Motion for an

Order Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade Confirmations (D.I. 1541) ("Debtor's Motion"). It was not until after the Order was issued, however, that Yarpa first learned that the Yarpa Trade had been included among the contracts assumed by the Debtor pursuant to the Order because all of the Debtor's notices were inadvertently marked as spam by one of Yarpa's receptionists charged with reviewing this generic email address. As a result, Yarpa, which is located in Genoa, Italy and whose employees are not native English speakers, did not receive notice of the Hearing and did not learn of the Order until January 2009. Moreover, according to the Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures (D.I. 285) (the "Case Management Order"), dated September 22, 2008, Yarpa and other Standard Parties[1] are to be served by U.S. mail, hand delivery or facsimile. Therefore, Debtor's service to Yarpa via email was improper under the Court's Case Management Order.

2. Accordingly, the standard for finding excusable neglect has been satisfied here and Yarpa is entitled to relief from the Order because, inter alia: (i) the notices were inadvertently marked as spam and were not delivered to anyone at Yarpa; (ii) Yarpa was not represented by U.S. counsel at the time in connection with these proceedings, and therefore there was no independent party tasked with separately monitoring the docket of filings in this proceeding; (iii) Yarpa is a foreign entity and the relevant employees are not fluent in English (the language in which the notices were sent); (iv) the notices were sent to Yarpa via email in direct violation of this Court's Case Management Order; (v) Yarpa has valid objections to the

---

[1] The Case Management Order defines 'Standard Parties' as "any person or entity with a particularized interest in the subject matter of a certain [d]ocument." See Case Management Order at 4.

Debtor's Motion, including the fact that the Yarpa Trade was terminated pre-petition; and (vi) the Debtor will not be prejudiced if this motion is granted. Therefore, Yarpa requests that the Order be vacated solely with respect to the Yarpa Trade and that Yarpa be afforded an opportunity to object to Debtor's Motion.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this motion under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## FACTS AND PROCEDURAL HISTORY

4. On July 21, 2008, nearly two months prior to the commencement of Debtor's bankruptcy case, Yarpa informed Emeka Ilomechina of the Debtor's UK Branch, that due to Debtor's failure to adhere to the terms of the Yarpa Trade, Yarpa was terminating the Yarpa Trade which would be deemed *ab initio* as having never been entered into, and therefore, ineffective between Yarpa and Debtor (the "Termination Letter," a copy of which is attached hereto as Exhibit "A").

5. Following delivery of the Termination Letter, many months passed before Yarpa heard from Debtor regarding the Yarpa Trade. Indeed, by the Debtor's inaction, Yarpa reasonably believed that the Debtor agreed that the Yarpa Trade had been terminated for the reasons set forth in the Termination Letter.[2] It was not until September 2, 2008, that the Debtor

---

[2] In connection with filing this motion, Yarpa has confirmed that on or about November 6, 2008, it received at its generic email address a letter from Debtor via email which notified Yarpa of Debtor's intention to file a motion with the Bankruptcy Court to assume the Yarpa Trade ("November 6th Email"), and this did not constitute proper notice under the Case Management Order. However, no Yarpa employee had knowledge of this document or any of the Notices until January 2009. See Accompanying Affidavit of Roberto Santia (the "Santia Aff.") at ¶ 11.

- 3 -

responded to the Termination Letter, but only by way of a letter sent from the Debtor to Yarpa's investment advisor, RP3 Prosperity S.p.A. ("RP3"), and not to Yarpa.

6.      Notably, all of the notices (the "Notices") regarding the Hearing on Debtor's Motion and the Order were sent to Yarpa via email to a generic email address (specifically, info@yarpa.it) at Yarpa's offices in Genoa, Italy.  Due to the generic nature of these emails, which were not addressed to any Yarpa employee, they were inadvertently marked as spam by Camilla Giacchero, one of the receptionists charged with reviewing the email address inbox.  See Accompanying Affidavit of Camilla Giacchero (the "Giacchero Aff.") at ¶ 7.  During the same time period, at its generic email address Yarpa received thousands of emails, many of which were spam.  Id. at ¶ 5.  Moreover, Camilla Giacchero was not fluent in English (the language in which the Notices were sent).  Id. at ¶ 2.  As a result of such warning, the emails were inadvertently perceived to be spam, and were not delivered to or received by anyone at Yarpa.  Id. at ¶ 7; see also Santia Aff. at ¶ 15.

7.      It was not until January 2009 that Yarpa first learned of either the Hearing or the Order.  See Santia Aff. at ¶ 11.  Upon learning that the Debtor allegedly had assumed the Yarpa Trade, Yarpa notified counsel for the Debtor by letter dated January 26, 2008 (the "January 26th Letter," a copy of which is attached hereto as Exhibit "B") that the Yarpa Trade was "mistakenly included among the Assumed Trades whilst, on the contrary, such trade has never been completed between [Yarpa] and [the Debtor], as conditions to such completion were not met due to the inactivity of both [the Debtor] and the Facility Agent …."[3]

---

[3] Yarpa first learned that Debtor had assumed the Yarpa Trade on or about December 15, 2008 ("December 15th Emails").  See Santia Aff. at ¶¶ 8-9.  The December 15th Emails consisted of six emails received by Yarpa from Debtor's counsel on the same day with six different attachments.  Due to the sheer number of emails received from Debtor's counsel on the same day, the receptionists at Yarpa determined that it was necessary to bring the December 15th Emails to the attention of Yarpa's management.  See Giacchero Aff. at ¶ 6.

8. It was in response to the January 26th Letter that Debtor's counsel sent an email, dated January 29, 2009 ("Counsel's Email," a copy of which is attached hereto as Exhibit "C"), asserting that as per the Order, the Yarpa Trade had been assumed. Counsel's Email was also the first time that Yarpa learned of the emails sent by the Debtor on November 6, 2008 and November 14, 2008 to Yarpa's generic email address with no designated recipient.

9. Upon learning about the emails from Debtor's counsel over two months after they were sent, Yarpa tasked its information technology department to determine why these emails were not delivered. See Santia Aff. at ¶ 12. Yarpa not only discovered that these emails were sent to a generic email address and were not addressed to any employee at Yarpa, but also that due to their suspicious nature they were inadvertently deemed to be spam by the one of the receptionists charged with monitoring this email address and immediately deleted. Id. Thereafter, Yarpa retained the undersigned counsel in February 2009 to seek relief from the Order.

10. Also, on September 22, 2008, this Court issued the Case Management Order which, among other things, set forth the proper procedures to be followed by the Debtor with respect to notice. The Case Management Order provides, in pertinent part, that the "Debtors and the Committee shall serve the Standard Parties by U.S. mail, hand delivery, or, with the exception of the chambers of the Judge assigned to preside over these cases, facsimile . . ." See Case Management Order (D.I. 285) at 5. The Case Management Order defines 'Standard Parties' as "any person or entity with a particularized interest in the subject matter of a certain Document." Id. at 4. It is undisputed that Yarpa falls into the definition of "Standard Parties" and the Motion is a "Document" in which Yarpa has a "particularized interest."

11. The Affidavit of Service of Herb Baer of Epic Bankruptcy Solutions, LLC (D.I.

1627) (the "Affidavit of Service"), dated November 20, 2008, indicates that the Motion was served on Yarpa at its generic email address, specifically info@yarpa.it.

12.     Now, Yarpa brings this motion to vacate the Order solely with respect to the Yarpa Trade so that Yarpa has an opportunity to assert its objection to Debtor's Motion.

**ARGUMENT**

13.     Rule 60(b) of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases by Rule 9024 of the Bankruptcy Rules, gives bankruptcy courts the discretion to "relieve a party or its legal representative from a final judgment, order, or proceeding" in cases of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b). The "excusable neglect" standard has been liberally construed by courts to include, where appropriate, even the mistake of a party. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 388 (1993) (explaining that the term "excusable neglect," as used in Rule 9006(b) of the Bankruptcy Rules pertaining to relief that may be granted for late filings, includes "where appropriate, . . . mistake, or carelessness," and "intervening circumstances beyond the party's control."); Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 250 (2d Cir. 1997) (applying Pioneer's interpretation of "excusable neglect" to Rule 60(b)). A court has the discretion to grant this relief when justified by the circumstances. Pioneer Inv. Servs., 507 U.S. at 395 (stating that a court in considering whether the conduct at issue qualifies as "excusable neglect" must consider "all relevant circumstances"); Compania Transatlantica Espanola, S.A. v. Hartford Accident & Indemnity Co., 950 F.2d 105, 107 (2d Cir. 1991) (granting relief under Rule 60(b) for a stipulation and order that terminated an appeal when the parties only intended that the stipulation would postpone the appeal).

14.     In considering the criteria which must be satisfied to grant a Rule 60(b)(1) motion in this Circuit, it is well settled that those criteria are: "(1) whether the default was willful; (2)

whether the defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non defaulting party if relief is granted." State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada, et al., 246 F. Supp. 2d 231, 235 (S.D.N.Y. 2002) (citing Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 59 (2d Cir. 1996)); American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57 (2d Cir. 1997) (granting relief under Rule 60(b) for a default judgment due to the absence of bad faith, the presentation of a meritorious defense and the lack of prejudice to the other party affected by the vacatur of the default judgment). Additional factors considered in determining whether relief pursuant to Rule 60 is appropriate include a party's inability to speak English and its residence outside the United States. See DeBonavena v. Conforte, 88 F.R.D. 710, 712 (D. Nev. 1981) (decided in favor of movant under Rule 60(b)(6)).

15. Federal courts have granted Rule 60(b) motions on the basis of excusable neglect under facts similar to those before the Court. See, e.g., Harris v. United States, No. 07-cv-01481-MSK-MJW, 2008 WL 413881, at *1 (D. Col. Feb. 13, 2008) (granting motion for relief from order pursuant to Rule 60(b)'s excusable neglect standard where plaintiff failed to respond to an Order to Show Cause because the motion was blocked by counsel's anti-spam email filter).

16. Similarly, under Rule 60(b), bankruptcy courts have granted motions to vacate orders approving the assumption of contracts pursuant to Section 365 of the Code where the party promptly notifies the counterparty of the error and the counterparty has not been prejudiced by the order. For example, in In re UAL Corp., 411 F.3d 818 (7th Cir. 2005), upon the filing of its Chapter 11 case, United Airlines moved to assume its aircraft leases. With respect to three leases between United Airlines and U.S. Bank, United Airlines was advised by its employees that it owed no money under those leases and that the leases should be assumed. However, in

fact, United Airlines owed several million dollars on those leases. United Airlines moved for approval to assume the three U.S. Bank leases, which the court granted.

17.  After the U.S. Bank leases were assumed, U.S. Bank made a demand for payment of amounts outstanding under the leases, and United Airlines promptly moved the bankruptcy court to vacate the order assuming those contracts. The bankruptcy court granted the requested relief under Rule 60(b)(1) finding that the excusable neglect standard had been satisfied. Notably, the Seventh Circuit affirmed this ruling and reasoned that "[w]hen an innocent mistake can be rectified without harm to anyone (loss of windfall is not the kind of harm that a court should endeavor to avert), it should be." Id. at 823-24.

18.  The applicable standard is easily satisfied here. First, Yarpa's default was not willful as it did not have actual knowledge of the Notices until after the Hearing had occurred and the Order had been entered due to an innocent mistake by a non-English speaking receptionist. See Giacchero Aff. at ¶ 2. As soon as Yarpa discovered that the Yarpa Trade purportedly had been assumed, it notified Debtor of its position and retained the undersigned law firm to file this motion. Id. Moreover, as set forth in the Termination Letter and January 26th Letter, and as will be established if the Court grants this motion, Yarpa has valid objections to the Debtor's assumption of the Yarpa Trade. See Exhibits "A" and "B." Finally, as the Seventh Circuit found in In re UAL Corp, the Debtor will not be harmed if the Court grants this motion and allows Yarpa to object to the Debtor's Motion. In re UAL Corp., 411 F.3d at 823-24.

19.  Additionally, the Case Management Order specifically provides that Debtor must serve "Standard Parties," specifically those who have a particularized interest in the subject matter of a document like the instant Motion, by U.S. mail, hand delivery or facsimile. The Affidavit of Service indicates that the only method by which Debtor served the Motion on Yarpa

was via email to its generic email address, specifically info@yarpa.it. The fact that the Notices were served via email was in direct contravention of the Case Management Order. Accordingly, Yarpa should be given an opportunity to be heard regarding its objections to the Motion.

20. Yarpa has incorporated its memorandum of law into this motion and respectfully requests that this Court waive the requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that a separate memorandum of law be filed in support of this motion.

## REQUEST FOR RELIEF

WHEREFORE, for the reasons set forth herein, Yarpa respectfully requests that this Court: (a) grant its motion for relief under Federal Rule of Civil Procedure 60(b); (b) vacate the Order solely with respect to the Yarpa Trade; and (c) grant such other and further relief as this Court may deem just and proper.

Dated: New York, New York

April 3, 2009

Respectfully submitted,

REED SMITH LLP

By: /s/ John L. Scott_____
John L. Scott
David M. Grimes
599 Lexington Avenue
New York, New York 10022
Tel: 212-521-5400
Fax: 212-521-5450