David M. Grimes, Esq.
John L. Scott, Esq.
**REED SMITH LLP**
599 Lexington Avenue
New York, NY 10022
Tel: 212-521-5400
Fax: 212-521-5450

*Counsel to Yarpa Investmenti S.G.R. S.p.A. – RP3 Fund*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                 :
In re                                                            :    Chapter 11
                                                                 :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :    Case No. 08-13555 (JMP)
                                                                 :    (Jointly Administered)
                                         Debtors.   :
                                                                 :    Refers to Dkt. Nos. 1541 & 2258
-----------------------------------------------------------------x

### AFFIDAVIT OF ROBERTO SANTIA' IN SUPPORT OF MOTION OF YARPA INVESTMENTI S.G.R. S.p.A. – RP3 FUND FOR RELIEF CONCERNING DEBTORS' ASSUMPTION OF CERTAIN OPEN TRADE CONFIRMATIONS

ROBERTO SANTIA' being duly sworn, deposes and says:

1.    I currently serve as employee of Yarpa Investmenti S.G.R. S.p.A. – RP3 Fund ("Yarpa") and submit this Affidavit In Support of Motion of Yarpa for Relief Concerning Debtors' Assumption of Certain Open Trade Confirmations ("Yarpa's Motion").

2.    On a daily basis my responsibilities include serving as the liaison between Yarpa and the investment advisor (RP3 Prosperity S.p.A. ("RP3")) and the internal analysis of Yarpa's investments.

3.    Yarpa is located in Genoa, Italy and the majority of its employees are not native English speakers.

4. Yarpa's Motion concerns a certain LMA Trade Confirmation dated March 12, 2008, entered into between Yarpa, as buyer, and Lehman Commercial Paper Inc. ("Debtor"), as seller (the "Yarpa Trade").

5. Due to Debtor's failure to adhere to the terms of the Yarpa Trade, by letter dated July 21, 2008, by letter signed by Mr Mauro Rebutto (as legal representative of Yarpa), Yarpa informed Emeka Ilomechina of the Debtor's UK Branch that it was terminating the Yarpa Trade which would be deemed *ab initio* as having never been entered into, and therefore, ineffective between Yarpa and Debtor (the "Termination Letter," a copy of which is attached to Yarpa's Motion as Exhibit "A").

6. Following delivery of the Termination Letter, many months passed before Yarpa heard from Debtor regarding the Yarpa Trade. Indeed, by the Debtor's inaction, I and others at Yarpa reasonably believed that the Debtor agreed that the Yarpa Trade had been terminated for the reasons set forth in the Termination Letter.

7. It was not until September 2, 2008 that the Debtor responded to the Termination Letter, but only by way of a letter sent from the Debtor to RP3 (and not to Yarpa).

8. To the best of my knowledge, the next communication Yarpa received from the Debtor (through Epic Systems Bankruptcy Solutions) was a series of six emails received on or about December 15, 2008 (the "December 15th Emails"). This was the first time I learned that Debtor was attempting to assume the Yarpa Trade. The December 15th Emails were sent to Yarpa's generic email address (specifically, info@yarpa.it.). It is my understanding from one of the receptionists charged with reviewing emails sent to Yarpa's generic email address that she brought the December 15th Emails to my attention because Yarpa received six emails from the

Debtor (through Epic Systems Bankruptcy Solutions) on the same day, with the same subject heading and with an attachment split into six different parts. Due to the sheer number of emails received from the Debtor (through Epic Systems Bankruptcy Solutions) on December 15, 2008, one of the receptionists charged with monitoring Yarpa's generic email address determined that it was necessary to forward these emails to me.

9. When I first received the December 15th Emails, I immediately understood the possible implication of the emails and, accordingly, contacted RP3 in order to discuss together the steps to be taken and how to promptly clarify the position with the Debtor.

10. Upon learning that the Debtor was attempting to assume the Yarpa Trade, Yarpa notified counsel for the Debtor by letter dated January 26, 2008 (the "January 26th Letter," a copy of which is attached to Yarpa's Motion as Exhibit "B") that the Yarpa Trade was "mistakenly included among the Assumed Trades whilst, on the contrary, such trade has never been completed between [Yarpa] and [the Debtor], as conditions to such completion were not met due to the inactivity of both [the Debtor] and the Facility Agent ...."

11. In response to Yarpa's January 26th Letter, on January 29, 2009, Yarpa received an email from Debtor's counsel. This is when I first learned of Debtor's purported email notices sent on November 6, 2008 and November 14, 2008 (the "Notices"), allegedly sent to inform Yarpa of a December 3, 2008 hearing (the "Hearing") on Debtor's Motion for an Order Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade Confirmations (D.I. 1541) ("Debtor's Motion"). I had no knowledge of the Notices prior to the Hearing or entry of any corresponding order. In fact, it was not until January 2009 that I first learned that an order had been entered with respect to the Yarpa Trade (the "Order").

12. Upon learning about the emails from Debtor's counsel over two months after they were sent, in early February 2009, I asked Yarpa's information technology department to determine why the email Notices were not delivered.

13. I subsequently learned that <u>all</u> of the Notices regarding the Hearing on Debtor's Motion and the resulting Order were sent to Yarpa via email to a generic email address (specifically, info@yarpa.it) and the November 14th notice was sent by an unknown service agent hired by Debtor. Therefore, after my discussions with Mrs Camilla Giacchero, it is my understanding that the Notices were not delivered to me and were inadvertently deleted.

14. Yarpa's generic email account (specifically, info@yarpa.it) is monitored by five receptionists, with each receptionist having responsibility over different aspects of the business. Thus, each receptionist will scan emails to determine whether they pertain to their line of business. Depending upon the subject of the email, all relevant emails are forwarded by the receptionists, without any analysis of the email's content, to the relevant manager or employee at Yarpa. Camilla Giacchero is the receptionist charged with forwarding emails to me. Any emails that are irrelevant to Yarpa's business are deemed to be spam and deleted.

15. Since the Notices were sent to Yarpa's generic email address, without referencing any Yarpa manager or employee, Camilla Giacchero inadvertently deemed the Notices as being spam. Therefore, the Notices were deleted and not delivered to any Yarpa manager or employee.

16. In connection with filing this motion, Yarpa has also confirmed that on or about November 6, 2008, its generic email address received a letter from Debtor that notified Yarpa of Debtor's intention to file a motion with the Bankruptcy Court to assume the Yarpa Trade

("November 6th Email"). Again, neither I nor any other Yarpa employee with decision-making authority had knowledge of the November 6th Email or any of the Notices until January 2009.

17. It was in response to the January 26th Letter that Debtor's counsel sent the above-referenced January 29, 2009 email ("Counsel's Email," a copy of which is attached to Yarpa's Motion as Exhibit "C"), asserting that as per the Order, the Yarpa Trade had been assumed. Again, it should be noted that it was upon receiving Counsel's Email that Yarpa first learned of the emails sent by the Debtor on November 6, 2008 and November 14, 2008 to Yarpa's generic email address with no designated recipient.

18. Thereafter, Yarpa retained Reed Smith LLP as counsel in February 2009 to seek relief from the Order. Prior to hiring Reed Smith LLP, Yarpa did not have U.S. counsel in connection with these proceedings.

_____
Roberto Santia'

| | |
|---|---|
| I, the undersigned Paola Casali, Notary public in Milan, enrolled with the *Collegio Notarile* of Milan, | Io sottoscritta Dott.ssa Paola Casali, Notaio in Milano, iscritta presso il Collegio Notarile di Milano, |
| hereby certify | attesto |
| that the declaring Mr: | che il dichiarante Signor: |

| | |
|---|---|
| - **ROBERTO SANTIA'**, born in Ivrea (Torino – Italy) on 6th october 1982 residing in Maglione (Torino - Italy), Borgo D'Alè, 14, Whose personal identity I, the Notary, am certain, being aware of the criminal responsibility in which she may incur in the event of false declarations, rendered and executed before me the above mentioned declaration drafted in English, language that I understand.<br><br>This deed has been drafted in two languages, Italian and English, and both texts conform to one other.<br><br>Milan, 3rd (third) April 2009 (two thousand and nine). | - **ROBERTO SANTIA'**, nato Ivrea (Torino - Italia) il 6 ottobre 1982, residente in Maglione (Torino - Italia), Borgo D'Alè, 14, della cui identità personale io Notaio sono certo, consapevole della responsabilità penale cui può andare incontro in caso di dichiarazioni mendaci, ha reso e sottoscritto in mia presenza la suestesa dichiarazione redatta in lingua inglese, lingua a me nota.<br><br>Il presente atto è steso in duplice lingua, italiana e inglese, e i due testi sono tra loro conformi.<br><br>Milano, 3 (tre) aprile 2009 (duemilanove). |




- 6 -