1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS INC.,


        Debtor.


- - - - - - - - - - - - - - - - - - - -x


            U.S. Bankruptcy Court

            One Bowling Green

            New York, New York


            March 31, 2009

            10:07 a.m.


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

2

1   MOTION Filed by the Debtor for Authorization to Invest Capital

2   and to Perform Certain Related Actions To Support the Capital

3   Level of Lehman Brothers Bank

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Transcribed By:   Esther Accardi

25

```
                                                              3
 1    A P P E A R A N C E S :
 2    WEIL GOTSHAL & MANGES, LLP
 3          Attorneys for Debtor
 4          767 Fifth Avenue
 5          New York, New York 10153
 6
 7    BY:   ALFREDO R. PEREZ, ESQ.
 8
 9
10    MILBANK TWEED HADLEY & MCCLOY, LLP
11          Attorneys for Creditors' Committee
12          One Chase Manhattan Plaza
13          New York, New York 10005
14
15    BY:   DENNIS O. O'DONNELL, ESQ.
16
17
18
19
20
21
22
23
24
25
```

4

P R O C E E D I N G S

THE COURT: Lehman Brothers.

MR. PEREZ: Good morning, Your Honor. Alfredo Perez.

Your Honor, we took your admonition last time and we tried to get as much time on this as we could. Unfortunately, we weren't quite as successful in getting full notice.

I do believe that we are at the very end of our need to intervene with the banks. We'll probably be here at least one time more. I'm not promising it, but that's our present intention to be here one time more.

As the Court is aware, the situation with the banks literally changes on a daily basis, depending on payments, the market, and things like that. And there's a call report that is calculated, it's not due today but it's calculated as of today and we need to, basically, establish what our capital is as of today.

When we filed the motion -- and, of course, Your Honor, the whole goal has been to try to get these banks up so that they're in the well-capitalized range, that we don't have the issues that we've been having. And the bank and LBHI, Mr. Lambert, have been quite successful. We've reduced the unfunded commitments from approximately eleven and a half billion to about five billion. Each billion of funded commitment that gets reduced as about eighty million dollars capital to the bank. So that's very significant and that's

1  part of our motion today, we want to basically do away with
2  about another billion-three of commitments.
3            In addition, Your Honor, after the Court's ruling,
4  which I believe was on the 13th, a draw request was made on --
5  I think it was that Monday or Monday night.  It was funded on
6  Tuesday.  There were two draw requests which were subsequently
7  repaid.  So under the REPO there's nothing outstanding, but it
8  was used as indicated here, unfortunately, but it was used.  So
9  it was not for naught.
10           Your Honor, since the time that we filed the motion,
11 I'm actually happy to report that we're not flirting with the
12 eight percent, we're flirting with the ten percent, which would
13 allow us possibly the opportunity to really significantly
14 reduce our funding costs.  It's not a given, but we made the
15 determination that we really needed to go forward to see if we
16 would not have to depend on the REPO but actually access the
17 market.  We don't know yet, obviously this is all subject to
18 the OTS approval.  We just want to make sure that when we put
19 in our report as of today, that we're in the well capitalized
20 range.
21           So the relief, Your Honor, really consists of about
22 four different things.  One is doing away with the loan
23 commitments, which we're going to do regardless.  Second is
24 compromising the claim with respect to about six or seven
25 million dollars of servicing revenues that are in dispute as

1  between Aurora and LBHI.  Third, is a cash contribution I
2  believe up to about fifteen million dollars.  And the fourth is
3  the contribution of servicing rights.  Obviously, we're going
4  to be working with the committee to determine the
5  appropriate -- the actual appropriate funding.  We're asking
6  for authority to be allowed to do all of those four things.  It
7  may be that we don't have to do all of those four things.  But
8  it's just a situation where we're really not in a position, as
9  of -- you know, 10:15 on the 31st, to be able to tell you
10 exactly what it is that we want.
11         We think this is a very prudent exercise of our
12 business judgment.  And I am hopeful, and I don't say this -- I
13 say this very cautiously because I don't want to come back here
14 eating my words, but I do think that we've started to turn the
15 corner here.  And from the situation that Mr. Marsal presented
16 a month and a half ago.
17         THE COURT:  I understand you're looking for
18 flexibility.
19         MR. PEREZ:  Yes.
20         THE COURT:  And I'm prepared to give it to you unless
21 there's an objection from the committee concerning the laundry
22 list of options that you've outlined.
23         MR. PEREZ:  Mr. Lambert is here.  I have a proffer --
24 basically, I've gone through his proffer, that's what he would
25 be prepared to proffer.

7

1	THE COURT: Well, I'll take the proffer but I want to
2	hear from the committee.
3	MR. O'DONNELL: Your Honor, Dennis O'Donnell, Milbank
4	Tweed Hadley & McCloy on behalf of the committee.
5	Your Honor, the committee does not object to the
6	relief requested in this motion. We, like the debtors, realize
7	that this is a process that has proceeded painfully to some
8	extent, and slowly. But we think is moving in the right
9	direction. Based on everything we know at the moment, we're
10	equally optimistic that the relief requested under this motion
11	and other developments with respect to the banks, we are headed
12	in the right direction.
13	THE COURT: And one of the things that the committee
14	knows that I don't know is the release fee associated with the
15	commitments. And I take it you're satisfied as to that?
16	MR. O'DONNELL: Yes, Your Honor, we're satisfied that
17	the level of that fee is more than appropriate given the relief
18	provided to the debtors as a result.
19	THE COURT: That's fine. I've noted there is a
20	footnote that volunteers to advise the Court as to the amount
21	of that, and I'm going to take Mr. Perez up on that offer. I'm
22	not conditioning the entry of an order or relief on knowing it.
23	But at the close of today's hearing, and we have one other
24	matter on this morning's calendar, I'm going to propose that we
25	have a very brief chambers conference, simply for purposes of

8

1   alerting me to what we're talking about.  I'm uncomfortable
2   entering the order without knowing all the relevant facts.  And
3   I'm assuming that there's no problem in sharing that with me.
4           MR. PEREZ:  Absolutely not, Your Honor.
5           MR. O'DONNELL:  Thank you, Your Honor.
6           THE COURT:  Okay.  You want to proceed with the
7   proffer?
8           MR. PEREZ:  Yes, Your Honor.  I would call Mr. Doug
9   Lambert, Your Honor.  Mr. Lambert has testified and I would
10  incorporate his testimony from the prior hearing.
11          If called to testify, he would indicate that at the
12  time we filed the motion, approximately eight days ago, the
13  bank had expected to be below the eight percent capital
14  adequacy level, and therefore required a capital investment in
15  order to support its activities.  And nevertheless, the goal of
16  the proposed action and the reduction in the loan
17  commitments -- in terminating the loan commitments, has always
18  been to reduce the capital requirements so that the banks would
19  otherwise achieve the well capitalized status, which is the ten
20  percent status, Your Honor.
21          Since the filing of the motion, the bank has
22  continued to prepare the March 31st thrift financial report,
23  which I call the call report.  And now believes that, although,
24  just barely it may be able to achieve that capital requirement
25  without significant additional capital as of this day with the

1  taking the actions that have been contemplating.
2           That this date remains an important date for the
3  long-term goal of the bank, as explained in the motion.  And
4  that subject to the creditors' committee consent, they be
5  authorized in addition to reduction of the loan commitment, to
6  put in additional capital in order to achieve the ten percent
7  risk based capital ratio level, which may allow the bank to
8  access other forums of credit support to allow it to maintain
9  it's long-term business objectives.
10          Mr. Lambert would testify that in connection with the
11 specifics of the transaction that LBHI has identified a
12 portfolio of mortgage servicing rights approximately --
13 encompassing approximately 115,000 loans that have a principal
14 balance of twenty-six billion dollars.  That there was an
15 independent appraisal done on February 28.  And that those
16 mortgaging servicing rights were appraised at 140 million
17 dollars.  And that depending on the need for capital, pursuant
18 to one or more assignment agreements, LBHI would transfer
19 ownership of those mortgage servicing rights to the bank as a
20 capital contribution, to the extent that it determines that
21 those are needed.
22          That with respect to the settlement agreement with
23 Aurora, that there is a dispute with Aurora with respect to the
24 March 2009 excess servicing fees, which total approximately six
25 to seven million dollars.  And that similar to the transaction

1  that was done previously that it will, in essence, forego those
2  fees thereby increasing the capital by that amount.  This is
3  similar to the capital restoration motion that was consummated
4  on February 27, 2009.
5       Similarly, Mr. Lambert would testify, that the
6  reduction in the 1.37 billion of unfunded commitments will
7  result in significantly increase in the capital level by that
8  reduction.
9       And that, lastly, to the extent necessary, LBHI would
10 contribute up to fifteen million dollars of cash if they -- if
11 it's needed to maintain that well capitalized status.
12      With respect to the business judgment, Your Honor,
13 Mr. Lambert would testify that the decision to invest in the
14 banks is done in an effort to preserve the opportunity for the
15 debtors to realize the value of this bank as opposed to the
16 value of the sister bank, Woodlands Bank in Utah, or what's
17 referred to as the Utah Bank.  And that based on the advice of,
18 both financial professionals and business professionals, that
19 they believe that this is in the best interests, and that the
20 costs associated with the capital infusion in the settlement
21 and the contribution outweigh the potential negative effect of
22 not doing this.
23      Additionally, Mr. Lambert would testify, that
24 beginning in February LBHI has continued to support the banks
25 including by the first contribution, which consisted of

11

1  approximately 200 million dollars in value, of which six or
2  seven million was cash and the other one was mortgage servicing
3  rights.
4         In addition, on March 13 he would testify that the
5  Court authorized a temporary liquidity REPO facility which has
6  been used twice, and has subsequently been repaid.
7         As it relates to the settlement agreement and the
8  factors involving settlement and 9019, Mr. Lambert would
9  testify that he believes that the settlement, that there is a
10 dispute as to the excess servicing fees, and that the
11 settlement is fair and reasonable and the best interest to the
12 estate in addition to helping the capital position of the bank.
13        Additionally, Mr. Lambert would testify that there's
14 been constant communication with the creditors' committee and
15 that they've been informed of our intended actions throughout
16 this case.
17        And we would request that you would enter the order.
18        THE COURT:  All right.  Is there anyone who wishes to
19 cross examine Mr. Lambert with respect to the proffer as to his
20 testimony?
21        There's no request for cross examination, I accept
22 the proffer.
23        MR. PEREZ:  Thank you, Your Honor.
24        THE COURT:  I have one question, however, of counsel.
25 Which is whether or not any of the measures being proposed

1  today have been cleared in advance with the Office of
2  Supervision?  And whether or not the debtor's in a position to
3  make any representations as to the likelihood of getting
4  whatever approvals are necessary from OTS?
5              MR. PEREZ:  Your Honor, my experience in this case is
6  that the OTS usually grants us the relief requested after the
7  Court rules, unfortunately.  We certainly have had extensive
8  discussions with them.  We do have a plan with them.  They know
9  that we're in Court today seeking this, they understand that.
10  Whether we have actual approval --
11              UNIDENTIFIED SPEAKER:  It's not committed but it's
12  like we did.
13              MR. PEREZ:  I think we expect to get approval but we
14  don't have a letter that actually authorizes it today.  To
15  date, Your Honor, we've been fortunate that everything that
16  we've requested has been approved.
17              THE COURT:  Fine.  Does anyone have any comment with
18  respect to the requested relief?  Hearing none, I'm prepared to
19  approve it.  And we'll enter an order today.
20              MR. PEREZ:  Your Honor, there is, because of the fact
21  that the facts changed a little bit since the time that we
22  filed the motion, we did make some changes to the order to
23  allow us to make the capital contribution basically at our
24  discretion with the creditors' committee consent, to be able to
25  get to the well capitalized level.

13

1    I have a form of redline if the Court --
2    THE COURT: That's fine. Do you also have a disk
3  that reflects the changes?
4    MR. PEREZ: I do, Your Honor. I do. But I didn't
5  want to give it to the Court without --
6    THE COURT: You may approach and hand that up. And
7  if you can just stick around to the end of the calendar so that
8  we can have a brief chambers conference to fill in the blanks
9  on the fee aspect of this.
10    MR. PEREZ: Yes, Your Honor.
11    THE COURT: Okay. Thank you very much.
12    (Proceedings concluded at 10:22 a.m.)

```
                                                              14
 1
 2                         I N D E X
 3
 4                        R U L I N G S
 5                                              PAGE  LINE
 6   Motion for Authorization to Invest Capital  12    19
 7   and to Perform Certain Related Actions To
 8   Support the Capital Level of Lehman Brothers
 9   Bank Approved
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                                    15

 1
 2                      C E R T I F I C A T I O N
 3
 4     I, Esther Accardi, certify that the foregoing transcript is a
 5     true and accurate record of the proceedings.
 6
 7     _____
 8     ESTHER ACCARDI
 9
10     Veritext LLC
11     200 Old Country Road
12     Suite 580
13     Mineola, New York 11501
14
15     Date: April 3, 2009
16
17
18
19
20
21
22
23
24
25
```