**Hearing Date: May 13, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: To Be Determined**

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Patrick J. Trostle
Heather D. McArn

330 North Wabash Avenue
Chicago, Illinois 60611-7603
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Attorneys for the Examiner

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x
| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., <u>et al.</u>, | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-----------------------------------------------------------------------x


**FIRST INTERIM FEE APPLICATION OF THE EXAMINER AND**
**JENNER & BLOCK LLP FOR ALLOWANCE OF COMPENSATION**
<u>**FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**</u>

SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE GUIDELINES
FOR REVIEWING APPLICATIONS FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330

| | |
|---|---|
| Name of Applicant: | Anton R. Valukas (the "Examiner") and Jenner & Block LLP |
| Period for which Compensation and Reimbursement is Sought: | January 19, 2009 to January 31, 2009 |
| Authorized to Provide Professional Services to: | Anton R. Valukas, Examiner |
| Date of Notice of Appointment: | January 19, 2009 |
| Date of Retention (Jenner & Block): | February 11, 2009, *nunc pro tunc* January 19, 2009 |

| | | |
|---|---|---|
| Amount of Compensation and Expense Reimbursement Sought As Actual, Reasonable and Necessary: | Fees Requested: | $613,650.37[1] |
| | Expenses Requested: | $13,514.99 |
| Prior Amounts Requested: | Fees Previously Requested: | $0.00 |
| | Fees Previously Awarded: | $0.00 |
| | Expenses Previously Requested: | $0.00 |
| | Expenses Previously Awarded: | $0.00 |

---

[1] This reflects a 10% reduction in standard hourly rates to which the Examiner and Jenner & Block have agreed because of the significant public interest associated with the Examiner's duties and responsibilities. This total also reflects the Examiner's and Jenner & Block's voluntary reduction of half their non-working travel time, as well as other time that they have voluntarily written off or not billed.

Summary of Time Recorded in Connection With Rendering
Services to the Examiner for January 19, 2009 - January 31, 2009

ATTORNEYS

| Position | Name | Admitted to Practice | Rate[2] | Time | Amount |
|---|---|---|---|---|---|
| Partner | Anton R. Valukas | 1968 | 925 | 80.7 | $74,647.50 |
| Partner | Ronald L. Marmer | 1977 | 900 | 31.2 | $28,080.00 |
| Partner | Thomas C. Newkirk | 1966 | 850 | 7.8 | $6,630.00 |
| Partner | Daniel R. Murray | 1970 | 800 | 87.0 | $69,600.00 |
| Partner | Robert L. Byman | 1970 | 800 | 141.5 | $113,200.00 |
| Partner | Stephen Ascher | 1991 | 750 | 10.4 | $7,800.00 |
| Partner | Catherine Steege | 1982 | 725 | 6.0 | $4,350.00 |
| Partner | Marc B. Hankin | 1992 | 725 | 45.2 | $32,770.00 |
| Partner | Patrick J. Trostle | 1992 | 725 | 82.2 | $59,595.00 |
| Partner | Alex Lipman | 1991 | 700 | 4.8 | $3,360.00 |
| Partner | Jerome L. Epstein | 1986 | 700 | 17.0 | $11,900.00 |
| Partner | Vincent E. Lazar | 1990 | 700 | 49.3 | 34,510.00 |
| Partner | Tobias L. Knapp | 1997 | 675 | 12.4 | $8,370.00 |
| Partner | James T. Malysiak | 1973 | 625 | 4.3 | $2,687.50 |
| Partner | David C. Layden | 1993 | 575 | 22.5 | $12,937.50 |
| Partner | Matt D. Basil | 1997 | 575 | 33.1 | $19,032.50 |
| **Partner Total** | | | | **635.4** | **$489,470.00** |
| Of Counsel | Heather D. McArn | 1992 | 550 | 94.3 | $51,865.00 |
| Of Counsel | Brent E. Kidwell | 1993 | 525 | 2.0 | $1,050.00 |
| **Of Counsel Total** | | | | **96.3** | **$52,915.00** |
| Associate | Melissa M. Hinds | 2003 | 495 | 3.7 | $1,831.50 |
| Associate | Andrew J. Olejnik | 2004 | 475 | 89.9 | $42,702.50 |
| Associate | Andrew S. Nicoll | 2004 | 475 | 8.5 | $4,037.50 |
| Associate | Anjan Choudhury | 2004 | 475 | 15.8 | $7,505.00 |
| Associate | Matthew Devine | 2004 | 475 | 65.5 | $31,112.50 |
| Associate | Melissa T. Fogerty | 2005 | 435 | 0.8 | $348.00 |
| Associate | Cori F. Brown | 2005 | 400 | 2.8 | $1,120.00 |
| Associate | Marc E. Harrison | 2006 | 400 | 4.5 | $1,800.00 |
| Associate | Tarsha Phillibert | 2006 | 400 | 7.9 | $3,160.00 |
| Associate | Angela M. Allen | 2008 | 325 | 27.8 | $9,035.00 |
| Associate | Christopher Meservy | 2008 | 325 | 25.0 | $8,125.00 |
| Associate | Jacob P. Zipfel | 2008 | 325 | 5.8 | $1,885.00 |
| **Associate Total** | | | | **258.0** | **$112,662.00** |

---

[2] These rates do not reflect the 10% reduction in standard hourly rates.  The 10% reduction is applied to the Total Attorney Time amount.

| Position | Name | Admitted to Practice | Rate[2] | Time | Amount |
|---|---|---|---|---|---|
| **Total Attorney Time** | | | | **989.7** | **$655,047.00** |
| **Less 10% Reduction** | | | | | **($65,504.70)** |
| **Total Attorney Time at Reduced Rate** | | | | | **$589,542.30** |
| **Blended Hourly Rate for Attorneys** | | | | | **$595.68** |

PARAPROFESSIONALS

| Position | Name | Rate[3] | Time | Amount |
|---|---|---|---|---|
| Paralegal | Michael H. Matlock | 270 | 41.0 | $11,070.00 |
| Paralegal | Shawn K. McGee | 270 | 28.0 | $7,560.00 |
| Paralegal | Christopher R. Ward | 255 | 22.1 | $5,635.50 |
| Paralegal | Daniel K. Morgan | 230 | 5.1 | $1,173.00 |
| Project Assistant | Marc A. Patterson | 170 | 2.9 | $493.00 |
| Project Assistant | Panagiota Ramos | 170 | 14.3 | $2,431.00 |
| Project Assistant | Emily A. Flores | 160 | 9.8 | $1,568.00 |
| **Total Paraprofessional Time** | | | **123.2** | **$29,930.50** |
| **Less 10% Reduction** | | | | **($2,993.05)** |
| **Total Paraprofessional Time at Reduced Rate** | | | | **$26,937.45** |

| | |
|---|---|
| Total Amount for Services Rendered (Attorneys and Paraprofessionals) | **$684,977.50** |
| Less 10% Reduction | **($68,497.75)** |
| Total Amount for Services Rendered, including 10% Reduction (Attorneys and Paraprofessionals) | **$616,479.75** |
| Less 50% Non-Working Travel Time | **($2,829.38)** |
| Total Amount of Fees Requested for Services Rendered (January 19, 2009 - January 31, 2009) | **$613,650.37** |

---

[3] These rates do not reflect the 10% reduction in standard hourly rates. The 10% reduction is applied to the Total Paraprofessional Time amount.

**Hearing Date: May 13, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: To Be Determined**

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Patrick J. Trostle
Heather D. McArn

330 North Wabash Avenue
Chicago, Illinois 60611-7603
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Attorneys for the Examiner

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
|  | : |  |
| In re | : | Chapter 11 |
|  | : |  |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : | Case No. 08-13555 (JMP) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------------------------x

### FIRST INTERIM FEE APPLICATION OF THE EXAMINER AND JENNER & BLOCK LLP FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES

**TO THE HONORABLE JAMES M PECK**
**UNITED STATES BANKRUPTCY JUDGE**

Anton R. Valukas, the Examiner (the "Examiner") appointed for Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors") in the above-

captioned bankruptcy cases, and Jenner & Block LLP ("Jenner & Block"), counsel to the

Examiner, by this first interim fee application (the "First Interim Application") pursuant to

sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code") and Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seek (i) interim allowance and payment of reasonable compensation for actual and necessary professional services performed by the Examiner and Jenner & Block in the aggregate amount of $613,650.37 for the period from January 19, 2009 through and including January 31, 2009 (the "Compensation Period");[4] and (ii) reimbursement of actual, reasonable and necessary expenses in the aggregate amount of $13,514.99 incurred during the Compensation Period.

To aid this Court in analyzing the First Interim Application, the Examiner and Jenner & Block have divided it into four parts. Part I provides a brief background of the Debtors' cases and the Examiner's appointment. Part II provides an overview of the First Interim Application. Part III provides a description of the work performed by the Examiner and Jenner & Block during the Compensation Period, by category, as well as how the Examiner and Jenner & Block calculated this compensation request. Finally, Part IV explains why this compensation request should be allowed.

## I. Background

1.      Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its direct and indirect subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules. The Debtors are

---

[4] The Examiner and Jenner & Block file this First Interim Application for the stub period January 19 - 31, 2009, in order to comply with paragraph (j) of the Court's second amended interim compensation order, entered on March 13, 2009 [Docket No. 3102], which states: "Each professional shall file its first Interim Fee Application on or before April 10, 2009 and the first Interim Fee Application shall cover the Interim Fee Period from the Commencement Date through and including January 31, 2009."

authorized to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2.     On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.     On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPA Trustee") is administering LBI's estate.

4.     On January 16, 2009, the Court entered an order (the "Examiner Order") directing the appointment of an examiner, pursuant to 11 U.S.C. § 1104(c)(2), to investigate, *inter alia*, various transfers and transactions by the Debtors and their affiliates, claims that certain Debtors may have against LBHI, and the events that immediately preceded the commencement of the LBHI chapter 11 case (collectively, the "Investigation").  Examiner Order at ¶ 2 [Docket No. 2569].  The Examiner Order also directs the examiner to "perform the duties specified in sections 1106(a)(3) and (4) of the Bankruptcy Code, except to the extent the Court orders otherwise."  Id. at ¶ 3.

5.     On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the chapter 11 cases, subject to Court approval, and filed her notice of such appointment. [Docket No. 2570].  On January 20, 2009, the U.S. Trustee filed her application for an Order of this Court approving the appointment of Anton R. Valukas as examiner in the chapter 11 cases. [Docket No. 2571].  On January 20, 2009, this Court entered an order approving the appointment by the U.S. Trustee of Anton R. Valukas as Examiner in the chapter 11 cases. [Docket No. 2583].  On January 23, 2009, the Examiner filed his Application to Employ Jenner

& Block LLP as Counsel to the Examiner.  [Docket No. 2627].  On February 11, 2009, this

Court entered the Order Authorizing the Examiner to Retain and Employ Jenner & Block LLP

as his Counsel *nunc pro tunc* as of January 19, 2009.  [Docket No. 2803].

6.     A plan of reorganization and disclosure statement have not yet been filed in these

cases.  On January 15, 2009, the Court entered an order extending the Debtors' exclusivity

period to file a chapter 11 plan through July 13, 2009, and the period during which the Debtors

may solicit acceptances thereof through September 16, 2009.  [Docket No. 2549].

## II.  First Interim Application

7.     The Examiner and Jenner & Block have prepared this First Interim Application in

accordance with the Administrative Order Re: Guidelines for Fees and Disbursements for

Professionals in Southern District of New York Bankruptcy Cases dated June 20, 1991 (the

"Original SDNY Guidelines"), the Administrative Order Re: Amended Guidelines for Fees and

Disbursements for Professionals in Southern District of New York Bankruptcy Cases dated

April 19, 1995 (the "Amended SDNY Guidelines," and collectively the "Local Guidelines"),

and the United States Trustee Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed Under 11 U.S.C. § 330 promulgated by the United States

Department of Justice dated January 30, 1996 (the "UST Guidelines" and collectively with the

Local Guidelines and UST Guidelines, the "Guidelines").  Pursuant to the Amended SDNY

Guidelines, a certification regarding compliance with such guidelines is attached hereto as

Exhibit A.

8.     The Examiner and Jenner & Block seek interim allowance herein of reasonable

compensation for actual and necessary professional services rendered by and to the Examiner

during the Compensation Period, in the aggregate amount of $613,650.37 and for

4

reimbursement of actual, reasonable and necessary expenses incurred during the Compensation Period in connection with the rendition of such services in the aggregate amount of $13,514.99.

9.    The fees sought by this First Interim Application reflect an aggregate of 1,112.9 hours of attorney and paraprofessional time spent and recorded in performing services by and for the Examiner during the Compensation Period.  This aggregate amount does not include time that might be construed as duplicative or otherwise not beneficial to the Examiner's Investigation, nor does it include time that the Examiner and Jenner & Block spent prior to the appointment of the Examiner and the effective date of Jenner & Block's retention, which time was spent preparing for the engagement by, *inter alia*, researching and analyzing information regarding the proposed scope of the Examiner's Investigation.  This time has already been eliminated by the Examiner and Jenner & Block (a total reduction of over $50,000.00).  Of the aggregate time expended during the Compensation Period, 635.4 recorded hours were expended by partners, 96.3 recorded hours were expended by of counsel attorneys to the firm, 258.0 recorded hours were expended by associates, and 123.2 recorded hours were expended by paraprofessionals.  During the Compensation Period, the Examiner's and Jenner & Block's hourly billing rates for attorneys working on these matters ranged from $325.00 to $925.00 per hour before applying the agreed upon 10% rate reduction.  Allowance of compensation in the amount requested would result in a blended hourly billing rate for attorneys of approximately $595.68.

10.    Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.

11.     Pursuant to the Guidelines, annexed hereto as <u>Exhibit B</u> is a schedule setting forth all Jenner & Block professionals and paraprofessionals who have performed services for the Examiner during the Compensation Period for which the Examiner and Jenner & Block are seeking reimbursement, the position in which each such individual is employed by Jenner & Block, the hourly billing rate charged for services performed by such individual, the aggregate number of hours expended in this matter and fees billed therefore, and as to attorneys, the year in which each professional was first licensed to practice law.

12.     Pursuant to the UST Guidelines, annexed hereto as <u>Exhibit C</u> is a summary by project matter of the fees generated by the services performed during the Compensation Period and, for each separate project matter, a list of each person providing services on the project, a statement of the number of hours spent and the amount of compensation requested for each person on the project.

13.     Annexed hereto as <u>Exhibit D</u> is a schedule specifying the categories of expenses for which the Examiner and Jenner & Block are seeking reimbursement and the total amount for each such expense category; <u>Exhibit E</u> contains a detailed list of all expenses for which the Examiner and Jenner & Block seek reimbursement.  This schedule has been adjusted for and does not reflect certain expenses incurred by the Examiner and Jenner & Block for which it will not be seeking reimbursement.

14.     The Examiner and Jenner & Block maintain detailed records of the time spent by all attorneys and paraprofessionals and the expenses incurred by, and in connection with the representation of, the Examiner.  Copies of the detailed time records are annexed hereto as <u>Exhibit F</u>.

15.   The fees charged by the Examiner and Jenner & Block in these cases reflect an agreed upon 10% reduction from standard hourly rates because of the significant public interest associated with the Examiner's duties and responsibilities.  The fees are otherwise billed in accordance with Jenner & Block's general existing billing rates and procedures in effect during the Compensation Period.  The rates the Examiner and Jenner & Block charge for the services rendered by its professionals and paraprofessionals to the Examiner are the rates charged by the Examiner and the firm for professional and paraprofessional services rendered in comparable matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in a competitive national legal market in cases other than cases under title 11.

16.   All of the services for which interim compensation is sought were rendered by or to the Examiner solely in furtherance of his duties and functions as Examiner and not on behalf of any individual creditor or other person.

17.   The Examiner and Jenner & Block have not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

18.   The Examiner and Jenner & Block have not shared, nor agreed to share (a) any compensation they have received or may receive with another party or person, other than with the members, counsel and associates of the firm, or (b) any compensation another person or party has received or may receive.  No promises have been received by the Examiner or Jenner & Block as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

19.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this First Interim Application, the Examiner and Jenner & Block reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

### III.    Summary of Professional Compensation and Reimbursement of Expenses Requested

20.    During the Compensation Period, the Examiner and Jenner & Block performed a wide variety of tasks on the Examiner's behalf in connection with the Investigation.

21.    Since his appointment, the Examiner and Jenner & Block have worked diligently to assemble and review publicly available materials that might be relevant to the Investigation. Pursuant to paragraph 11 of the Examiner Order, the Examiner and Jenner & Block have met and conferred with each of the parties as directed by the Court to attempt to reach consensus on a work plan and to coordinate to avoid duplication of effort.

22.    On January 26, 2009, the Examiner and his counsel met in a group meeting with representatives of LBHI, the Creditors' Committee, Barclays, the Lead Plaintiffs, the New York State Comptroller, Bank of America, The Walt Disney Company, and Harbinger Funds. Also in attendance were representatives of the U.S. Trustee, the SIPA Trustee, and the U.S. Attorney for the Southern District of New York.  At that meeting, the Examiner solicited views and comments from the interested parties that would be of assistance in the formulation of a work plan that would avoid duplication of effort.  The Examiner further explained that it was his intention to meet one-on-one with each of the interested parties to further explore those issues and to begin a dialogue to aid in the successful performance of the Examiner's work. The Examiner explained that the one-on-one meetings were not designed for secrecy but for

efficiency, and that the Examiner would consider anything said in individual meetings regarding the formulation of a work plan to be subject to disclosure to all interested parties.

23.    Following the group meeting, the Examiner conducted one-on-one meetings with representatives of the Debtors, the Creditors' Committee, Barclays, the Lead Plaintiffs, the New York State Comptroller, Bank of America, The Walt Disney Company, and the Harbinger Funds.  The Examiner also held a telephonic meeting with counsel for the Joint Administrators. The purpose of this series of meetings was to solicit each party's views on the Examiner's work plan, to explore how to achieve the maximum degree of cooperation among the parties to streamline the Examiner's work, to provide for sharing with the Examiner of materials assembled by each party so as to avoid duplication and to make the Examiner's work more efficient, and to gather whatever viewpoints and concerns any party wanted to express.

24.    The Examiner also had one-on-one meetings with representatives of the U.S. Trustee, the SIPA Trustee and SIPC, and the U.S. Attorney for the Southern District of New York.  The Examiner had telephone conferences with representatives of the U.S. Attorneys for the Eastern District of New York and the District of New Jersey.  The Examiner had a telephone conference with representatives of the Securities & Exchange Commission.  The purpose of these meetings was to coordinate the Examiner's work so as not to duplicate or impede the work of any of these agencies or the SIPA Trustee.

25.    To aid in the development of an efficient work plan, the Examiner contacted and spoke with the examiners in other complex matters, including Josh Hochberg, the examiner in the Refco case, and Richard Thornburgh, the examiner in the WorldCom case.

26.    During the Compensation Period, the Examiner entered into stipulations with the Debtors and the Creditors' Committee so that he would have access to documents and other

materials germane to the Investigation.  The Examiner and Jenner & Block also scheduled a series of ongoing meetings for the Examiner to access the information he will need to complete his report.  The Examiner continues to work with other parties to enter into similar stipulations to obtain access to their accumulated documents and materials.

27.    On January 30, 2009, in order to facilitate the Examiner's ability to complete a comprehensive investigation in a timely and efficient manner and to fulfill his fiduciary and statutory duties, the Examiner filed a motion (the "2004 Motion") with the Bankruptcy Court. The 2004 Motion was similar to the one filed and granted with respect to the SIPA Trustee and requested that this Court grant the Examiner the omnibus authority to issue subpoenas, including document requests, upon witnesses.  The Court granted the 2004 Motion on February 11, 2009.  [Docket No. 2804].

28.    During the Compensation Period, the Examiner and his counsel also began to establish and maintain a depository to collect documents, transcripts, and other materials.

29.    As noted above, Exhibit C is a summary by project matters of the fees generated during the Compensation Period.  The following are descriptions of the project matters and their necessity and benefit to the estate.  The descriptions include a statement of the aggregate number of hours spent and fees charged for each matter after applying the 10% reduction.  The persons providing services on each project matter are listed on Exhibit C.

A.    Case Administration

30.    This matter relates to work performed in preparing declarations in support of the U.S. Trustee's appointment of the Examiner and Jenner & Block's retention as counsel to the Examiner, including communications with the U.S. Trustee.  This category also includes time spent establishing, maintaining, and updating an internal website to serve as a depository of

10

documents and information, including calendar and contact information, for all attorneys and

paraprofessionals working on the case.

31.     During the Compensation Period, Jenner & Block expended 118.5 hours, at an

aggregate charge of $40,744.35, on matters relating to case administration.

        B.     <u>Examiner</u>

32.     This matter includes all the Examiner's time entries in performing his duties

under the Examiner Order and Bankruptcy Code during the Compensation Period, including

communications with various parties in interest to arrange for cooperation and avoid

duplication of effort, reviewing court transcripts and documents regarding background for the

Investigation, preparing a work plan and budget for the Investigation, and considering financial

advisors to assist him in the Investigation.[5]

33.     During the Compensation Period, the Examiner expended 80.7 hours, at an

aggregate charge of $62,604.00, on matters relating to performing his duties as Examiner and

conducting the Investigation.

        C.     <u>Court Hearings</u>

34.     This matter includes all time spent by Jenner & Block attorneys in attending court

hearings regarding matters related to the Investigation.

35.     During the Compensation Period, Jenner & Block expended 2.4 hours, at an

aggregate charge of $1,633.50, attending Court hearings.

---

[5] The Examiner's non-working travel time is not included in this matter, but is billed under "Non-Working Travel Time" so that the 50% reduction could be applied to such time.

D.     Governance and Fiduciary Duty Issues

36.    The Examiner Order requires the Examiner to investigate, *inter alia*:

- Whether there are colorable claims for breach of fiduciary duties and/or aiding or abetting any such breaches against the officers and directors of LBCC and/or other Debtors arising in connection with the financial distress of the Lehman enterprise prior to the commencement of the LBHI chapter 11 case on September 15, 2008; and

- The events that occurred from September 4, 2008 through September 15, 2008 that may have resulted in commencement of the LBHI chapter 11 case.

Examiner Order, ¶ 2 (fifth and tenth bullets).  The Examiner Order also requires the Examiner to "perform the duties specified in sections 1106(a)(3) and (4) of the Bankruptcy Code, except to the extent the Court orders otherwise."  Examiner Order, ¶ 3.

37.    During the Compensation Period, attorneys who have been assigned to these elements of the Investigation have conferred to develop a work plan for investigating whether there are colorable claims for breaches of fiduciary duties and the events leading up to the commencement of the LBHI chapter 11 case, have reviewed and analyzed extensive background documents and materials regarding these issues, and have identified potential witnesses with information regarding these elements of the Investigation.

38.    Jenner & Block expended 45.9 hours, at an aggregate charge of $30,395.25, on investigating LBHI's actions with respect to the governance and fiduciary duty elements of the Investigation.

E.     Intercompany Transfers

39.    The Examiner Order requires the Examiner to investigate, *inter alia*:

- Whether LBCC or any other entity that currently is an LBHI chapter 11 debtor subsidiary or affiliate ("LBHI Affiliate(s)") has any administrative claims against LBHI resulting from LBHI's cash sweeps of cash balances, if any, from September 15, 2008, the commencement date of LBHI's chapter 11 case, through the date that such applicable LBHI affiliate commenced its chapter 11 case;

12

- All voluntary and involuntary transfers to, and transactions with, affiliates, insiders and creditors of LBCC or its affiliates, in respect of foreign exchange transactions and other assets that were in the possession or control of LBHI Affiliates at any time commencing on September 15, 2008 the day that each LBHI Affiliate commenced its chapter 11 case;

- Whether any LBHI Affiliate has colorable claims against LBHI for potentially insider preferences arising under the Bankruptcy Code or state law;

- Whether any LBHI Affiliate has colorable claims against LBHI or any other entities for potentially voidable transfers or incurrences of debt, under the Bankruptcy Code or otherwise applicable law;

- The inter-company accounts and transfers among LBHI and its direct and indirect subsidiaries, including but not limited to:  LBI, LBIE, Lehman Brothers Special Finance and LBCC, during the 30-day period preceding the commencement of the chapter 11 cases by each debtor on September 15, 2008 or thereafter or such longer period as the Examiner deems relevant to the Investigation; and

- The transfer of the capital stock of certain subsidiaries of LBI on or about September 19, 2008 to Lehman ALI Inc.

Examiner Order, ¶ 2 (first, second, third, fourth, seventh, and ninth bullets).

40.    During the Compensation Period, attorneys who have been assigned to these elements of the Investigation have conferred to develop a work plan, reviewed and analyzed extensive background documents regarding intercompany transfers and the Debtors' cash management system, begun to research relevant standards regarding the avoidability of certain transfers, and identified potential witnesses with information regarding these elements of the Investigation.

41.    Jenner & Block expended 22.6 hours, at an aggregate charge of $13,313.25, on matters relating to the investigation of intercompany transfers.

F.    Barclays Transactions

42.    The Examiner Order requires the Examiner to investigate, *inter alia*:

- Whether assets of any LBHI Affiliates (other than Lehman Brothers, Inc.) were transferred to Barclays Capital Inc. as a result of the sale to Barclays Capital Inc. that was approved by order of the Bankruptcy Court entered September 20, 2008, and

whether consequences to any LBHI Affiliate as a result of the consummation of the transaction created colorable causes of action that inure to the benefit of the creditors of such LBHI subsidiary or affiliate.

Examiner Order, ¶ 2 (sixth bullet).

43.     During the Compensation Period, attorneys who have been assigned to this element of the Investigation have conferred to develop a work plan, reviewed and analyzed extensive background documents regarding the Barclays sale, and identified potential witnesses with information regarding this element of the Investigation.

44.     Jenner & Block expended 41.8 hours, at an aggregate charge of $22,023.45 on investigations of the Barclays transactions.

### G.     Bank and Other Third-Party Transactions

45.     The Examiner Order requires the Examiner to investigate, *inter alia*:

- Whether any LBHI Affiliate has colorable claims against LBHI or any other entities for potentially voidable transfers or incurrences of debt, under the Bankruptcy Code or otherwise applicable law; and

- The transactions and transfers, including but not limited to the pledging or granting of collateral security interest among the debtors and the prechapter 11 lenders and/or financial participants including but not limited to, JPMorgan Chase, Citigroup, Inc., Bank of America, the Federal Reserve Bank of New York and others.

Examiner Order, ¶ 2 (fourth and eighth bullets).

46.     During the Compensation Period, attorneys who have been assigned to these elements of the Investigation have conferred to develop a work plan, reviewed and analyzed extensive background documents regarding bank and third party transactions, and identified potential witnesses with information regarding these elements of the Investigation.

47.     Jenner & Block spent 49.5 hours, at an aggregate charge of $31,530.00 on investigations of other third-party transactions.

H.     General Bankruptcy Matters and Research

48.     This matter relates to general bankruptcy matters and research in support of the Examiner's Investigation. Tasks in this matter include reviewing and analyzing the LBHI bankruptcy docket for pleadings and documents relevant to the Investigation, researching the Examiner's attorney-client and work product privileges, preparing the Examiner's 2004 Motion, and analyzing other major examiner cases for applicable precedent.

49.     During the Compensation Period, Jenner & Block expended 255.1 hours, at an aggregate charge of $106,728.75, on such matters.

I.     Communications and Meetings with Parties in Interest

50.     In the Examiner Order, the Court directed the Debtors, the Debtors' affiliates and subsidiaries, the Creditors' Committee, the SIPA Trustee, and their respective representatives "to cooperate with the Examiner in conjunction with the performance of any of the Examiner's duties and the Investigation" and "to coordinate with the Examiner to avoid unnecessary interference with, or duplication of, the Investigation." Examiner Order, ¶ 4. The Court also ordered the Examiner to "cooperate fully with any governmental agencies" and to "follow a protocol to be established with the governmental agencies for the sharing of information…." Examiner Order, ¶ 8.

51.     As set forth above, the Examiner and Jenner & Block engaged in a series of meetings with various parties in interest to coordinate the Investigation, avoid duplication of effort, and develop a work plan to present to the Court. Time entries in this matter cover communications, meetings, and preparations for meetings with parties in interest. A more detailed account of the parties with whom the Examiner and Jenner & Block met during the Compensation Period is set forth in paragraphs 22-25 above.

52.    During the Compensation Period, Jenner & Block expended 199.8 hours, at an aggregate charge of $123,894.00 on matters described in this category.

>    J.    Non-Working Travel Time

53.    This matter includes time entries related to non-working travel time spent by the Examiner and Jenner & Block attorneys to participate in meet and confer sessions with various parties in interest as directed by the Court in the Examiner Order.

54.    During the Compensation Period, the Examiner and Jenner & Block expended 7.0 hours, at an aggregate charge of $5,658.75 for non-working traveling time.  The Examiner and Jenner & Block are seeking compensation only for one-half of their travel time, or $2,829.38. The Examiner and Jenner & Block are voluntarily reducing their bill for the balance.

>    K.    Document Management and Review

55.    A critical piece of the Examiner's Investigation relates to the collection and processing of a vast volume of documents and information that is in the possession of various parties in interest.  Time entries in this matter relate to the management and review of these documents and information, including understanding, assessing, and accessing the available data systems at Alvarez & Marsal and the Debtors (among others), entering into stipulations with various parties regarding the use of data and documents, technically processing documents for review by attorneys, and analyzing the most efficient manner to focus the Examiner's Investigation on relevant data and documents.

56.    During the Compensation Period, Jenner & Block expended 22.8 hours, at an aggregate charge of $13,396.50, with respect to document and data management and review.

>    L.    Billing and Fee Applications

57.    This matter relates to the preparation of monthly fee statements and fee applications.  During the Compensation Period, attorneys worked to develop billing and fee

protocols to accurately capture the nature of the work performed by the Examiner and Jenner & Block during the course of the Investigation and to ensure that such time was recorded in compliance with the Guidelines.

58.    During the Compensation Period, Jenner & Block expended 14.6 hours, at an aggregate charge of $8,140.50, on billing and fee application matters.

M.    Consultation with Financial Advisors

59.    In order to carry out his duties and responsibilities under the Bankruptcy Code and the Examiner Order in a thorough, yet expedient and efficient manner, the Examiner determined that he would need the assistance of a financial advisor who had extensive experience and expertise in complex accounting and bankruptcy investigations.  Accordingly, during the Compensation Period the Examiner conducted a careful review and vetting process of potential candidates to serve as his financial advisor.

60.    During the Compensation Period, Jenner & Block expended 101.3 hours, at an aggregate charge of $64,542.15, on matters relating to the selection of and consultation with a financial advisor.

N.    Witness Interviews

61.    Time entries in this matter relate to preparing for and conducting witness interviews, to the extent that such entries are not associated with a single investigatory subject matter.

62.    During the Compensation Period, Jenner & Block expended 2.2 hours, at an aggregate charge of $1,590.75, on matters relating to witness interviews.

O.    Investigation Planning and Coordination

63.    In appointing the Examiner, the Court expressed a strong interest in ensuring that the Investigation avoids replication of efforts and duplication of services.  To the extent that

17

Jenner & Block communicates and meets with external parties to achieve this goal, such time is tracked in the matter for communications and meetings with parties in interest. However, due to the breadth of the Investigation, the number of parties and entities involved, the volume of documents and data to be reviewed and analyzed, and the short time frame in which the Examiner has committed to completing the Investigation so as to avoid unnecessary delays in the administration of the chapter 11 cases, the Examiner and Jenner & Block routinely communicate and coordinate internally regarding the scope of the Investigation, documents and data to request, witnesses to interview, and research to be conducted which is relevant to multiple investigatory subject matters. Accordingly, time entries for such planning and coordination to avoid the duplication of work and to conduct an expedient yet thorough investigation are included in this matter, as is time associated with the development and drafting of a consolidated work plan for the Investigation.

64.    During the Compensation Period, Jenner & Block expended 154.2 hours, at an aggregate charge of $93,437.55, on matters relating to investigation planning and coordination.

### IV.  The Requested Compensation Should Be Allowed

65.    The foregoing professional services performed by the Examiner and Jenner & Block were necessary and appropriate to the Examiner's administration of his duties in the above-referenced chapter 11 cases and were in the best interests of the Examiner, the Debtors' estates, and other parties in interest. Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved. Jenner & Block has taken significant efforts to ensure that the professional services were performed with expedience, in an efficient manner, and without duplication of effort.

66.    In preparing this First Interim Application, the Examiner and Jenner & Block calculated the amount of time spent by each attorney and paraprofessional in performing actual

and necessary legal services for the Examiner and the Investigation. That data came directly from computerized records that are kept for each Jenner & Block client. Individual time entries are maintained on written daily logs, personal computer hard drives or input directly into the firm's central client accounting and billing system. All time entries and expenses are uploaded into the billing system, which then produces draft client billing memoranda and invoices. Jenner & Block attorneys have reviewed and edited the draft invoices and billing memoranda for errors prior to their submission.

67.    The rates used in this First Interim Application are the customary and usual rates which the Examiner and Jenner & Block charge clients on matters of this type, subject to the 10% reduction in standard hourly rates to which the Examiner and Jenner & Block have agreed because of the significant public interest associated with the Examiner's duties and responsibilities. In addition, the disbursements for which the Examiner and Jenner & Block seek reimbursement are the customary and usual expenses for which the Examiner and Jenner & Block seek reimbursement from their clients. Jenner & Block charges 9 cents per page for duplicating. Jenner & Block does not charge its clients for facsimiles, domestic and long distance telephone (other than while traveling), and certain overtime expenses, and takes those expenses into account in its overhead. Jenner & Block does not include charges for postage, messenger services, duplicating and computerized legal research in its overhead because it is fairer to clients who use less of these services to have these expenses billed separately. According to its outside auditors these charges fairly approximate the firm's actual costs and do not result in undue revenue for the firm. The firm's hourly rates used for this First Interim Application do not compensate the firm for such expenses.

68.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. 11 U.S.C. § 331.  Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to an Examiner, trustee under Chapter 11, or professional person, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including
>
> > (A)    the time spent on such services;
> >
> > (B)    the rates charged for such services;
> >
> > (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> >
> > (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> >
> > (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> >
> > (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

69.    In the instant case, the Examiner and Jenner & Block respectfully submit that the services for which they seek compensation in this First Interim Application were, at the time rendered, believed to be necessary for and beneficial to the Examiner and the Investigation.

20

The Examiner and Jenner & Block further submit that the compensation requested herein is reasonable in light of the nature, extent, and value of such services provided by and to the Examiner.  The Examiner has been given the opportunity to review this application and has approved the requested amount.

70.    The services rendered by the Examiner and Jenner & Block were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved.  Accordingly, approval of the interim compensation sought herein for the Compensation Period is warranted.

71.    This First Interim Application includes citations to the applicable authorities and does not raise any novel issues of law.  The Examiner and Jenner & Block reserve the right to file a brief in reply to any objection to this First Interim Application.

72.    To the extent applicable, the Examiner and Jenner & Block further requests that the Court waive for cause shown any Guideline requirement not met by this First Interim Application.

73.    No previous motion for the relief sought herein has been made to this or any other court.

## **CONCLUSION**

WHEREFORE the Examiner and Jenner & Block respectfully request: (i) allowance and payment of compensation for professional services rendered during the Compensation Period in the amount of $613,650.37; and (ii) reimbursement for actual and necessary expenses the Examiner and Jenner & Block incurred during the Compensation Period in the amount of $13,514.99; and (iii) that the Court grant the Examiner and Jenner & Block such other and further relief as is just.

Dated: April 10, 2009
New York, New York

Respectfully submitted,


By: /s/ Patrick J. Trostle
    Patrick J. Trostle

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Patrick J. Trostle
Heather D. McArn

330 North Wabash Avenue
Chicago, Illinois 60611-7603
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Attorneys for the Examiner