**CURTIS, MALLET-PREVOST,**
**COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
Facsimile (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd

*Conflicts Counsel for the Debtors*
*and Debtors In Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                          :    Chapter 11
In re:                                    :
                                          :    Case No. 08-13555 (JMP)
LEHMAN BROTHERS HOLDINGS INC., et al.,    :
                                          :
            Debtors.                      :
                                          :
-------------------------------------------------------------------x
```

### FIRST INTERIM APPLICATION OF CURTIS, MALLET-PREVOST, COLT & MOSLE LLP, AS CONFLICTS COUNSEL, FOR THE DEBTORS AND DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD SEPTEMBER 26, 2008 THROUGH JANUARY 31, 2009

| | |
|---|---|
| NAME OF APPLICANT: | CURTIS, MALLET-PREVOST, COLT & MOSLE LLP |
| AUTHORIZED TO PROVIDE PROFESSIONAL SERVICES TO: | DEBTORS AND DEBTORS IN POSSESSION |
| DATE OF RETENTION: | NOVEMBER 21, 2008 *NUNC PRO TUNC* TO SEPTEMBER 26, 2008 |
| PERIOD FOR WHICH COMPENSATION AND REIMBURSEMENT IS SOUGHT: | SEPTEMBER 26, 2008, THROUGH JANUARY 31, 2009 |
| AMOUNT OF COMPENSATION REQUESTED: | $4,611,589.50 |
| AMOUNT OF EXPENSE REIMBURSEMENT REQUESTED: | $151,402.02 |

| | |
|---|---|
| TOTAL COMPENSATION AND EXPENSE REIMBURSEMENT REQUESTED: | $4,762,991.52 |
| TOTAL COMPENSATION AND EXPENSES PREVIOUSLY REQUESTED AND AWARDED: | NONE |

5826815

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Telephone:  (212) 696-6000
Facsimile  (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd

*Conflicts Counsel for the Debtors*
 *and Debtors In Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
                                  :      **Chapter 11**

**In re:**                            :

                                  :      **Case No. 08-13555 (JMP)**

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :

                                  :

         **Debtors.**                :

                                  :
-----------------------------------------------------------------------x

**FIRST INTERIM APPLICATION OF CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP, AS CONFLICTS COUNSEL, FOR THE DEBTORS AND
DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT
OF ACTUAL AND NECESSARY EXPENSES INCURRED
FOR THE PERIOD SEPTEMBER 26, 2008 THROUGH JANUARY 31, 2009**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

        Curtis, Mallet-Prevost, Colt & Mosle LLP ("CMP"), as conflicts counsel for

Lehman Brothers Holdings Inc., and its direct and indirect subsidiaries, as debtors and debtors in

possession (collectively, the "Debtors"), respectfully submits this application (the "Application")

for allowance of first interim compensation for professional services rendered for the period

September 26, 2008 through and including January 31, 2009 (the "Compensation Period"), and

for reimbursement of its actual and necessary expenses incurred in connection with such

services.  In support of this Application, CMP respectfully represents as follows:

## SUMMARY OF PROFESSIONAL COMPENSATION AND
## REIMBURSEMENT OF EXPENSES REQUESTED

1.       This Application has been prepared in accordance with the Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New York

Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"), the United

States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines"), and

the Second Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code

Establishing Procedures for Interim Compensation and Reimbursement of Expenses of

Professionals (the "Administrative Order," collectively with the Local Guidelines and UST

Guidelines, the "Guidelines").  Pursuant to the Local Guidelines, a certification regarding

compliance with the same is attached hereto as "**Exhibit A**."[1]

2.       CMP attorneys and paraprofessionals expended a total of 8,985.80 hours

representing the Debtors during the Compensation Period for which the firm requests

compensation.  CMP seeks allowance of interim compensation for services rendered to the

Debtors in the amount of $4,611,589.50, representing 100% of fees incurred during the

Compensation Period, and for reimbursement of $151,401.02, representing 100% of the actual

and necessary expenses incurred during the Compensation Period.

3.       During the Compensation Period, other than pursuant to the

Administrative Order, CMP has received no payment and no promises of payment from any

source for services rendered or to be rendered in any capacity whatsoever in connection with the

matters covered in this Application.  There is no agreement or understanding between CMP and

---

[1]       As to contested matters, existing litigation, or possible additional litigation to be brought by, or against, the
Debtors, adversary proceedings, and other actions or threatened actions, this Fee Application shall not constitute or
be construed as an admission of any fact or any issue of liability, nor shall it constitute a stipulation, or a waiver, but
rather as statements made without prejudice to the Debtors' rights and interests in these chapter 11 cases.

5590178

any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these cases.

4.      In accordance with the Administrative Order, CMP has received payments totaling $3,840,680.22[2] for the Compensation Period, which consists of $3,689,271.60, representing 80% of the fees incurred from September 26, 2008 through January 31, 2009, and $151,401.02, representing 100% of the expenses incurred during such period.

5.      The fees charged by CMP in these cases are billed in accordance with its existing billing rates and procedures in effect during the Compensation Period.  The rates CMP charges for the services rendered by its professionals and paraprofessionals in these chapter 11 cases are the same rates CMP charges for professional and paraprofessional services rendered in non-bankruptcy-related matters.[3]  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.

6.      Pursuant to the UST Guidelines, annexed hereto as "**Exhibit B**" is a schedule setting forth all CMP professionals and paraprofessionals who have performed services in these chapter 11 cases during the Compensation Period, the capacity in which each such individual is employed by CMP, the hourly billing rate charged by CMP for services performed by such individual, the aggregate number of hours expended in these proceedings and fees billed therefor, and the year in which each professional was first licensed to practice law.

---

[2] On the October 2008 Billing Statement, total fees incurred for that month for one paraprofessional appeared incorrectly as $21,403.50.  This resulted in an overcharge of $7.60, which was included in the Debtors' payment for that month.  All amounts included herein, with the exception of the amount footnoted here and the total unpaid fees footnoted below, are true and correct, and do not include the overcharge in their calculation.

[3] In instances where professionals spent less than one hour working on the Debtors' cases during a month, CMP has written off the time as a courtesy to the Debtors.

5590178

7.      Annexed hereto as "**Exhibit C**" is a schedule specifying the categories of expenses for which CMP is seeking reimbursement, and the total amount for each such expense category.

8.      Pursuant to Section II.D of the UST Guidelines, annexed hereto as "**Exhibit D**" is a summary of CMP's time records billed during the Compensation Period by project categories.

9.      CMP maintains computerized records of the time spent by all CMP attorneys and paraprofessionals in connection with the prosecution of the Debtors' chapter 11 cases.  Subject to redaction for the attorney-client privilege where necessary to protect the Debtors' estates, copies of these computerized records have been furnished to the Court, the attorneys for the official committee of unsecured creditors (the "Creditors' Committee"), and the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), in the format specified by the UST Guidelines.

10.      To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Application, CMP reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

11.      CMP has provided the Debtors, the U.S. Trustee, lead counsel to the Debtors, and the Creditors' Committee with monthly fee statements for professional services rendered and expenses incurred on behalf of the Debtors, along with detailed reports of time entries and expenses.  Pursuant to such statements, and in accordance with the Second Amended Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals approved by this Court [Dkt. No. 3102], CMP has requested that the Debtors pay CMP 80% of its fees for professional services and 100% of the expenses.  By this

-4-

Application, CMP requests the release of the 20% "holdback" of fees for professional services rendered during the Compensation Period.[4]

## BACKGROUND

12.    Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), the Debtors and certain of its direct and indirect subsidiaries commenced with this Court voluntary cases for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code"). The Debtors are continuing to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13.    On September 17, 2008, pursuant to section 1102 of the Bankruptcy Code, the U.S. Trustee appointed the Creditors' Committee.

14.    On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPA Trustee") is administering LBI's estate.

## RETENTION OF CMP

15.    CMP was retained by the Debtors as of September 26, 2008 to serve as conflicts counsel for the Debtors. Among other matters, CMP is responsible for handling all bankruptcy-, corporate- and litigation-related matters where lead counsel for the Debtors, Weil, Gotshal & Manges LLP ("WGM"), or other counsel for the Debtors has an actual or perceived conflict of interest, and to perform discrete duties as assigned by WGM and other Debtors' counsel that could be handled more efficiently by CMP.

---

[4]  The requested release of the holdback for the Compensation Period will not affect the holdback for any subsequent periods.

5590178

16.     Pursuant to the Order of the Court, dated November 21, 2008, the Debtors were authorized to retain CMP as their conflicts counsel to render legal services in the prosecution of their chapter 11 cases.

17.     Since its retention, CMP has coordinated its efforts with WGM so that their work is complementary and not duplicative.

18.     WGM and CMP have experience working as debtors' general bankruptcy counsel and conflicts counsel, respectively, for large bankruptcy cases pending before this Court. *See In re Silicon Graphics, Inc., et al.*, Case No. 06-10977 (ALG) (Bankr. S.D.N.Y. 2006) and *In re Parmalat Finanziaria S.p.A., et al.,* Case No. 04-14268 (RDD) (Bankr. S.D.N.Y. 2004).  As a result of these experiences and the continued efforts of WGM and CMP, the assignment of tasks is being maintained efficiently and with a clear delineation of duties.  In addition, CMP is presently acting as conflicts counsel in *In re Charter Communications, Inc., et al.*, Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. 2009), *In re Star Tribune Holdings Corporation*, Case No. 09-10244 (RDD) (Bankr. S.D.N.Y. 2009) and *In re Bally Total Fitness of Greater New York, Inc.*, Case No. 08-14818 (BRL) (Bankr. S.D.N.Y. 2008).

19.     The work encompassed by this Application for which CMP seeks compensation was performed efficiently and at the lowest cost to the estates.  All of the work summarized in this Application was performed in a manner to ensure minimal duplication of services in an effort to keep the administration expenses to a minimum.

5590178

## SUMMARY OF SERVICES RENDERED BY
## CMP DURING THE COMPENSATION PERIOD

20.     During the Compensation Period, CMP performed substantial services for the Debtors.  These services were necessary to effectively administer the chapter 11 cases.

21.     As set forth above, the services provided by CMP are set forth in CMP's detailed time records.  Copies of the detailed time records have been presented to:  (i) the Court; (ii) the Debtors; (iii) lead bankruptcy counsel for the Debtors; (iv) counsel for the Creditors' Committee; and (v) the U.S. Trustee.

22.     In accordance with the Guidelines and CMP's internal billing procedures, CMP has established separate matter numbers and matter names for distinct project categories in these chapter 11 cases.  Listed below is a summary, by matter name, of services provided by CMP during the Compensation Period:

23.     **Case Administration**.  A total of 494.90 hours of services was performed and CMP is seeking allowance of $190,581 in fees.  This matter covers a variety of different services undertaken by CMP attorneys and paraprofessionals in the general administration of the Debtors' chapter 11 cases.  Given the scale and complexity of the matters on which CMP advises the Debtors, CMP attorneys and paraprofessionals spent time on case administration in order to keep informed with respect to the matters on which CMP is representing the Debtors, as well as communicate with the conflict-related parties and other stakeholders of the Debtors with respect to ongoing matters in the Debtors' cases.  To the extent possible, CMP attorneys and paraprofessionals billed administrative matters under the appropriate matter, and the amount of time billed to case administration was necessary to CMP's smooth and effective administration of the matters assigned to it in these chapter 11 cases.  Services rendered by CMP in connection with this matter included the monitoring of the case docket for pleadings with potential conflict

-7-

implications, reviewing and maintaining a case docket of significant pleadings filed with the

Court and keeping a calendar of critical dates in these chapter 11 cases.

24.    **General Corporate Issues.**  A total of 43.70 hours of services was

performed and CMP is seeking allowance of $19,907 in fees.  This matter corresponds to general

issues handled by CMP's Corporate department, especially advising the Debtors with regard to

Riopelle Broadway L.P. ("Riopelle").

25.    Riopelle was formed by Lehman in association with Caisse de dépôt et

placement du Québec ("Caisse") and its wholly owned subsidiary CDP Investissements (together

with Caisse, the "Quebec Partners") to acquire approximately $750 million principal amount of

certain funded (approximately $550 million) and unfunded (approximately $200 million) term

loans of Energy Future Holdings Company (formerly TXU Corp.).  To finance the purchase and

funding of the underlying loans, Riopelle issued a Senior Variable Funding Note due 2012 in a

principal amount of up to $517 million to Lehman Commercial Paper Inc. ("LCPI"), and a Junior

Profit-Participating Note due 2012 to the Quebec Partners, with LCPI holding a nominal (0.1%)

junior ownership percentage, and with US Bank National Association ("U.S. Bank") serving as

indenture trustee, and LBI as market agent, for the structure.  CMP advised the Debtors

regarding the parties' rights and obligations under the transaction documents, and related

strategies.

26.    **CMP Retention, Fee Applications and Monthly Fee Statements**.  A

total of 589.40 hours of services was performed and CMP is seeking allowance of $227,816 in

fees.  At the beginning of these chapter 11 cases, CMP professionals prepared a retention

application, reviewed potential conflicts based on the list of interested parties in order to fully

and accurately disclose relationships that CMP has with parties in interest in Lehman's chapter

11 cases, and engaged in discussions with the U.S. Trustee to fully vet any potential issues

regarding CMP's retention.  In addition, CMP prepared and served its Monthly Fee Statements all in accordance with the Guidelines.  Tasks included reviewing all expenses, timekeeper entries, and Fee Statement schedules and tables for accuracy and compliance with the Guidelines.  It should be noted that it is anticipated that these fees and expenses will be substantially lower in future compensation periods.

27.    **Swap Transactions/Terminations/Analysis**.  A total of 602.60 hours of services was performed and CMP is seeking allowance of $270,849 in fees.  This matter covers a multitude of services related to the analysis and resolution of the complex financial instruments affected by the Debtors' cases, including the review and analysis of ISDA agreements and synthetic CDO structures.  Additionally, CMP assisted WGM in preparing pleadings related to the assumption and assignment of certain derivatives contracts on matters that CMP was handling.

28.    **U.S. Bank Matters.**  A total of 827.60 hours of services was performed and CMP is seeking allowance of $453,268.50 in fees.  In the early stages of the Debtors' cases, CMP reviewed and analyzed a series of 15 structured CDO transactions concerning both Lehman Brothers Special Financing Inc. ("LBSF") and U.S. Bank, as indenture trustee.  The issuers in such transactions sold tranches of notes and also, in each case, a credit default swap to LBSF, which swap positions, collectively, appear to be in the money to LBSF.  The issuers are identified as follows:  (1) Exum Ridge CBO 2006-1, Ltd.; (2) Exum Ridge CBO 2006-2, Ltd.; (3) Exum Ridge CBO 2006-4, Ltd.; (4) Exum Ridge CBO 2006-5, Ltd.; (5) Exum Ridge CBO 2007-1, Ltd.; (6) Exum Ridge CBO 2007-2, Ltd.; (7) SGS HY Credit Fund I (Exum Ridge CBO 2006-3), Ltd.; (8) Aviv LCDO 2006-1, Ltd.; (9) Aviv LCDO 2006-2, Ltd.; (10) Airlie LCDO I (AVIV LCDO 2006-3), Ltd.; (11) Airlie LCDO II (Pebble Creek 2007-1), Ltd.; (12) Pebble

-9-

Creek LCDO 2006-1, Ltd.; (13) Pebble Creek LCDO 2007-3, Ltd.; (14) White Marlin CDO

2007-1, Ltd.; and (15) Airlie CDO I, Ltd.[5]

29.      In addition to the aforementioned 15 transactions, there is a 16th

transaction from the same series, Pebble Creek LCDO 2007-2, Ltd., for which the indenture

trustee is Citibank.  This swap was purportedly terminated on September 19, 2008 and, sometime

thereafter, Citibank redeemed the collateral, consisting of shares in Lehman Brothers ABS

Enhanced LIBOR Fund.  CMP has performed a variety of tasks in an effort to discern how

Citibank's termination of the swap and the liquidation of the collateral violated the terms of the

indenture.  CMP has also performed tasks related to a $68 million deficiency with respect to

LBSF's termination payment under the credit default swap, a deficiency described in a valuation

statement voluntarily provided by Citibank.  In addition, CMP has sent letters to Citibank's

counsel detailing LBSF's position that the liquidation and distribution violated the provisions of

the indenture and the swap.

30.      **JPMorgan Chase Matters.**  A total of 3,094.10 hours of services was

performed and CMP is seeking allowance of $1,608,081.50 in fees.  During the Compensation

Period, CMP worked on matters related to the various relationships between JPMorgan Chase

("JPMC") and the Debtors, including the analysis of pledges that Lehman provided which

collateralize the JPMC entities' claims.  To this end, CMP conducted interviews with a number

of the Debtors' current and former employees; reviewed documents provided by JPMC; and

drafted a detailed memorandum addressing the Debtors' relationship with JPMC and related

matters and coordinated its efforts regarding this matter with other parties in interest, including

the Creditors' Committee.

---

[5] In late November, all matters concerning these 15 transactions were reassumed by WGM, with CMP continuing to
act in an advisory and complementary role.

31.    **CIFG Matters.**  A total of 249.40 hours of services was performed and CMP is seeking an allowance of $139,903 in fees.  CMP attended to matters related to certain credit default swap transactions between LBSF and affiliates of bond insurer CIFG Guaranty ("CIFG"), including analysis of CIFG-initiated swap terminations to determine the validity of such terminations, and analysis of a CIFG restructuring and swap commutation transaction.

32.    **Syncora Matters.**  A total of 441.70 hours of services was performed and CMP is seeking an allowance of $238,302.50 in fees.  This matter designation covers all tasks related to a proposed restructuring of bond insurer Syncora Holdings, Ltd. ("Syncora") and a related credit default swap commutation transaction, including working with common counsel to Syncora credit default swap counterparties with respect to the restructuring and commutation transaction, and conducting diligence concerning the credit default swap transactions between LBSF and Syncora affiliates.

33.    **Fenway Matters.**  A total of 29.00 hours of services was performed and CMP is seeking an allowance of $15,231.50 in fees.  CMP performed a preliminary analysis of the legal documentation constituting the Fenway structured finance transaction, including the securities issued by the issuer Fenway Capital LLC.

34.    **Racers Matters.**  A total of 337.30 hours of services was performed and CMP is seeking an allowance of $188,562.50 in fees.  CMP performed an analysis of the legal documentation constituting the Restructured Asset Securities with Enhanced Returns ("RACERS") Series 2007 structured finance transaction, including a review of the securities issued by the RACERS Series 2007-MM Trust.  CMP also advised the Debtors on issues relating to real estate interests included in the collateral pool held by the RACERS Series 2007-A Trust.

35.    **Sasco Matters.**  A total of 50.80 hours of services was performed and CMP is seeking an allowance of $19,780.50 in fees.  CMP performed preliminary analysis of the

-11-

legal documentation constituting the SASCO II structured finance transaction, including the

securities issued by the issuer SASCO 2008-C2, LLC.

36.    **Pyxis Matters**.  A total of 947.90 hours of services was performed and

CMP is seeking an allowance of $539,591 in fees.  For this project category, CMP provided

services related to three CDO transactions:  (1) PYXIS ABS CDO 2007-1 LTD ("Pyxis"); (2)

MKP VELA CBO Ltd. and MKP VELA CBO LLC ("MKP Vela"); and (3) LIBRA CDO

Limited and LIBRA CDO LLC ("Libra").

37.    In the Pyxis transaction, LBSF is a credit default swap counterparty and

Bank of America, N.A., as successor to LaSalle Bank, is indenture trustee.  On October 6, 2008,

the indenture trustee, after having previously declared (i) an event of default, (ii) an acceleration

of maturity of the notes, and (iii) an early termination date, distributed approximately $386

million from a certain "Reserve Account" to the noteholders, to pay down the principal of the

senior funded classes, and cancelled the remaining unfunded commitment of the Class A-1

noteholder, the Canadian Imperial Bank of Commerce ("CIBC").  CMP has researched, drafted

and sent position letters to counsel for the indenture trustee, and for CIBC, setting forth LBSF's

position that any liquidation of investments or distribution of proceeds is in violation of the

automatic stay and demanding that the indenture trustee immediately cease and desist from

taking any further actions under the indenture, including, but not limited to, distributing any

proceeds of liquidated collateral.

38.    In the MKP Vela transaction, LBSF is a credit default swap counterparty

and Bank of America, N.A., is the indenture trustee and, in the Libra transaction, LBSF is a

credit default swap counterparty and The Bank of New York Mellon Trust Company, N.A., is

the indenture trustee.  In both transactions CMP negotiated standstill agreements with the

trustees in which the trustees provided written assurances they would not further liquidate the

issuers' investments or distribute proceeds thereof.  After these standstills were negotiated,

WGM was engaged by the Debtors to coordinate the MKP Vela and Libra matters and CMP is

now acting in an advisory and complementary role.

39.    **Pine, Spruce and Verano Matters.**  A total of 61.20 hours of services

was performed and CMP is seeking an allowance of $28,397 in fees.  CMP performed

preliminary analysis of the legal documentation constituting the Pine, Spruce and Verano

structured finance transactions, including securities issued by issuers Pine CCS, Ltd., Spruce

CCS, Ltd. and Verano CCS, Ltd.

40.    **CEAGO Matters.**  A total of 279.70 hours of services was performed and

CMP is seeking an allowance of $149,929.50 in fees.  CMP performed a variety of tasks related

to CEAGO ABS CDO 2007-1, Ltd., in which LBSF is a counterparty to a credit default swap

and a total return swap with the CDO, and for which Bank of America, N.A., as successor to

LaSalle Bank, is indenture trustee.  An event of default allegedly occurred under the indenture,

but the credit default swap and total return swap have not been terminated, and the maturity of

the notes has not been accelerated.  The tasks performed by CMP included advising LBSF with

respect to certain segregated collateral held by the CDO to which LBSF is entitled, and analyzing

LBSF's rights in the event of a liquidation.

41.    **Rule 2004 Bankruptcy Discovery.**  A total of 38.00 hours of services was

performed and CMP is seeking an allowance of $25,346 in fees.  CMP reviewed responses and

objections to motions to conduct discovery pursuant to Rule 2004 of the Federal Rules of

Bankruptcy Procedure.  Additionally, CMP worked collaboratively with counsel to the

Creditors' Committee to resolve issues related to their motion for 2004 discovery of JPMC.

42.    **Bankruptcy Litigation.**  A total of 590.40 hours of services was

performed and CMP is seeking an allowance of $332,829 in fees.  During the Compensation

Period, CMP has provided services in primarily two bankruptcy litigation matters:  one related to the Transition Services Agreement dated as of September 22, 2008 (the "TSA"), between the Debtors and Barclays PLC, and the other related to disputes involving GE Corporate Financial Services, Inc. ("GECFS").  With respect to the TSA, CMP advised the Debtors concerning their rights under the TSA.  With respect to GECFS, CMP advised the Debtors in disputes under loan and loan participation agreements between the Debtors and Fusion Funding Limited ("Fusion") and Fusion Funding Luxembourg S.A.R.L. ("Fusion Luxembourg" and, together with Fusion, the "Fusion Entities"), special-purpose vehicles whose purchases were financed almost exclusively from a secured credit facility provided by General Electric Capital Corporation, with GECFS acting as the loan servicer for the Fusion Entities.  CMP has coordinated its efforts with respect to GECFS with counsel to the Creditors' Committee.

43.    **Non-Bankruptcy Litigation.**  A total of 224.90 hours of services was performed and CMP is seeking an allowance of $122,536.50 in fees at the outset of the Debtors' chapter 11 cases.  Early in the chapter 11 cases, CMP attended state court hearings on an emergency basis and filed Notices of Bankruptcy Filing in response to the numerous lawsuits brought for the purpose of attaching one or more bank accounts of Lehman entities or otherwise enjoining various Lehman entities from disposing of deposit accounts.  CMP also coordinated with WGM with respect to the filing for bankruptcy protection of entities other than Lehman Brothers Holdings Inc. that were the subject of significant litigation.

44.    **Hearings and Court Matters.**  A total of 83.20 hours of services was performed and CMP is seeking an allowance of $50,677.50 in fees.  This matter encompasses all hearings and court appearances other than those specific to any of the aforementioned project categories (*i.e.*, omnibus hearings and state court hearings, including those hearings early in the Debtors' chapter 11 cases that were held on an emergency basis).

-14-

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

45.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation.  *See* 11 U.S.C. § 331.  The awarding of interim compensation should be based on the circumstances of the particular case.  *In re Nana Daly's Pub., Ltd.*, 67 B.R. 782, 787 (Bankr. E.D.N.Y. 1986).

46.     Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  The Court has broad discretion in determining whether to allow compensation and determining the amount of compensation.  *In re Nine Assocs., Inc.*, 76 B.R. 943, 944 (Bankr. S.D.N.Y. 1987).

47.     Section 330 of the Bankruptcy Code also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

> (E)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

48.     Courts within the Second Circuit have employed the "lodestar approach" for calculating judicial awards of compensation to attorneys.  The lodestar approach was articulated by the Second Circuit in *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983).  The lodestar method of determining reasonable compensation involves multiplying the hours spent on a case, based on attorney time records, by a reasonable hourly rate of compensation for each attorney based on prevailing market rates for private law firms performing services for non-governmental clients.  *In re McLean Industries, Inc.*, 88 B.R. 36, 39 (Bankr. S.D.N.Y. 1988).  Once calculated, this lodestar figure may be adjusted upward or downward to take into account the facts of the particular case.  *In re Baldwin United Corp.*, 79 B.R. 321, 347 (Bankr. S.D. Ohio 1987).  Factors regarding the difficulty, complexity and contingent nature of the case may thereafter be employed to arrive at a reasonable and just compensation in excess of the lodestar figure.  *In re Stable Mews Assocs.*, 49 B.R. 395, 398 (Bankr. S.D.N.Y. 1985); *In re Chriss*, 38 B.R. 655, 657 (Bankr. S.D.N.Y. 1984).

49.     In the instant case, CMP respectfully submits that the services for which it seeks compensation in this Application meet or exceed the standards set forth in section 330 of the Bankruptcy Code and applied by bankruptcy courts in this Circuit to determine the reasonableness of professional fees sought from a debtor's estate.  CMP also respectfully submits that the services provided to the Debtors during the Compensation Period were necessary and beneficial to the Debtors' efforts to maximize the value of their estates.  The professional services that CMP rendered were focused on pursuing an efficient reorganization and/or liquidation of the Debtors' businesses that maximizes the value of the estates and recovery to

-16-

creditors.  Except as otherwise set forth herein, CMP's rates charged to the Debtors are identical

to the rates charged by CMP for comparable services in a non-chapter 11 context.  Such services

were not only necessary to benefit the Debtors' estates, but also to enhance potential recovery to

creditors.  Accordingly, CMP further submits that the compensation requested herein is

reasonable and warranted in light of the nature, extent and value of such services to the Debtors,

their estates and all parties in interest.

### FEES AND ACTUAL AND NECESSARY DISBURSEMENTS OF CMP

50.    CMP devoted 8,985.80 hours of actual recorded time during the

Compensation Period resulting in time charges of $4,611,589.50.  $922,310.30[6] remains unpaid

as of the date of this Application.

51.    Throughout the Compensation Period, CMP sought to assign projects in

this case to partners, associates and paraprofessionals who could most efficiently and

expeditiously handle the tasks at hand.  CMP respectfully submits that the legal services

reflected in this Application are fair and reasonable and are commensurate with the quality of

services provided herein.

52.    In addition to the fees sought for legal services, CMP has incurred

$151,401.02 in out-of-pocket expenses and disbursements during the Compensation Period

directly attributable to the representation of the Debtors.

53.    No part of the compensation to be received pursuant to this Application

will be shared with any other person or firm, and no other agreements, either express or implied,

to share any compensation received as attorneys for the Debtors has been, or will be, made by

CMP.

---

[6] This amount reflects the 20% holdback from October 2008, November 2008, December 2008 and January 2009.
CMP has deducted $7.60 from this amount to rectify an earlier overcharge, bringing the total amount owed to
$922,310.30.

5590178

## <u>NOTICE</u>

54.      A copy of this Application has been presented to:  (i) the Debtors; (ii) lead bankruptcy counsel for the Debtors; (iii) counsel for the Creditors' Committee; and (iv) the U.S. Trustee.

5590178

## CONCLUSION

**WHEREFORE**, CMP respectfully requests that this Application be granted and that it be awarded an allowance of $4,611,589.50 for legal services rendered to the Debtors during the Compensation Period, and $151,401.02 for reimbursement of expenses, and that the Debtors be allowed to pay such amounts to the extent not previously paid, together with such other and further relief be granted as may be just and proper.

Dated:    April 10, 2009
New York, New York

Respectfully submitted,

**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**

By: /s/ *Steven J. Reisman*
Steven J. Reisman
L. P. Harrison 3rd
101 Park Avenue
New York, NY  10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559

*Conflicts Counsel for the Debtors and
Debtors in Possession*

-19-

**EXHIBIT A**

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Telephone:  212) 696-6000
Facsimile  (212) 697-1559
Steven J. Reisman
L. P. Harrison 3rd

*Conflicts Counsel for the Debtors*
 *and Debtors In Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
|  |  |
|---|---|
| In re: | : |
|  | : |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : |
|  | : |
|        **Debtors.** | : |
|  | : |

**Chapter 11**

**Case No. 08-13555 (JMP)**

-----------------------------------------------------------------------x

**CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF FIRST INTERIM APPLICATION OF CURTIS, MALLET-PREVOST, COLT & MOSLE LLP FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**

       I, L. P. Harrison 3rd, hereby certify that:

       1.      I am a partner with the applicant firm, Curtis, Mallet-Prevost, Colt &

Mosle LLP ("CMP"), with primary responsibility for the chapter 11 cases of Lehman Brothers

Holdings Inc., and its direct and indirect subsidiaries, as debtors and debtors in possession

(collectively, the "Debtors"), in respect of compliance with the Amended Guidelines for Fees

and Disbursements for Professionals in Southern District of New York Bankruptcy Cases

adopted by the Court on April 19, 1995 (the "Local Guidelines"), the United States Trustee

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines"), and the Second

Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code Establishing

Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the

"Administrative Order," collectively with the Local Guidelines and UST Guidelines, the

"Guidelines").

      2.      This certification is made in respect of CMP's application, dated April 10,

2009 (the "Application"), for interim compensation and reimbursement of expenses for the

period commencing September 26, 2008, through and including January 31, 2009 (the

"Compensation Period") in accordance with the Guidelines.

      3.      In respect of section B.1 of the Local Guidelines, I certify that:

- I have read the Application;

- to the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines and the UST Guidelines;

- the fees and disbursements sought are billed at rates in accordance with practices customarily employed by CMP and generally accepted by CMP's clients; and

- in providing a reimbursable service, CMP does not make a profit on that service, whether the service is performed by CMP in house or through a third party.

      4.      In respect of section B.2 of the Local Guidelines, I certify that CMP has

complied with these provisions requiring it to provide the Debtors, counsel for the statutory

committee of unsecured creditors appointed in these cases (the "Creditors' Committee") and the

United States Trustee for the Southern District of New York (the "U.S. Trustee") with, on a

monthly basis, a statement of CMP's fees and disbursements accrued during the previous month.

5.       In respect of section B.3 of the Local Guidelines, I certify that the Debtors,

counsel for the Creditors' Committee, lead bankruptcy counsel for the Debtors, and the U.S.

Trustee are each being provided with a copy of the Application.


Dated:    New York, New York
          April 10, 2009


                                                    /s/ *L. P. Harrison 3rd*
                                                    L. P. Harrison 3rd

**EXHIBIT B**

**SUMMARY OF FIRST INTERIM FEE APPLICATION OF CURTIS, MALLET-PREVOST, COLT & MOSLE LLP FOR SERVICES RENDERED FOR THE PERIOD SEPTEMBER 26, 2008 TO JANUARY 31, 2009[1]**

| NAME OF PROFESSIONAL | DEPARTMENT AND YEAR ADMITTED[2] | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| | | | | |
| **PARTNERS** | | | | |
| T. Barry Kingham | L – 1969 | $785 | 14.10 | $11,068.50 |
| Eliot Lauer | L – 1975 | $785 | 1.70 | $1,334.50 |
| Joseph D. Pizzurro | L – 1977 | $785 | 86.10 | $67,588.50 |
| Steven J. Reisman | RIG – 1991 | $785 | 210.30 | $165,085.50 |
| Marie-Thérèse Allen | C – 1983 | $730 | 73.60 | $53,728.00 |
| David Bayrock | C – 1995 | $730 | 396.50 | $289,445.00 |
| Eduardo A. Cukier | T – 1990 | $730 | 13.40 | $9,782.00 |
| L. P. Harrison 3rd | RIG – 1984 | $730 | 935.90 | $683,207.00 |
| Michael J. Moscato | L – 1982 | $730 | 327.80 | $239,294.00 |
| Turner P. Smith | L – 1980 | $730 | 316.50 | $231,045.00 |
| Jeffrey I. Zuckerman | L - 1973 | $730 | 1.20 | $876.00 |
| Nancy E. Delaney | L - 1989 | $675 | 224.90 | $151,807.50 |
| Martin L. Forman | RE - 1986 | $675 | 38.90 | $26,257.50 |
| Daniel R. Lenihan | C - 1982 | $675[3] | 254.40 | $176,384.00 |
| Andrew H. Seiden | C - 1993 | $675 | 328.40 | $221,670.00 |
| **TOTAL PARTNERS** | | | **3,223.70** | **$2,328,573.00** |
| | | | | |
| **COUNSEL** | | | | |
| Myles K. Bartley | L - 1999 | $595 | 254.20 | $151,248.50 |
| Jerrold Bregman | RIG - 2003 | $595 | 418.70 | $249,127.00 |
| Kuang-Chu Chiang | T - 2001 | $595 | 2.60 | $1,547.00 |
| Susan F. Pollack | C - 1967 | $595 | 203.30 | $120,963.50 |
| **TOTAL COUNSEL** | | | **878.80** | **$522,886.00** |
| | | | | |
| **ASSOCIATES** | | | | |
| James V. Drew | RIG - 2002 | $575 | 2.90 | $1,667.50 |
| Timothy McCabe | L - 2002 | $575 | 90.80 | $52,210.00 |
| Susana M. Namnum | C - 1996 | $575 | 609.10 | $350,232.50 |
| Loytavian Harrell | C - 2007 | $495 | 17.80 | $8,811.00 |
| Kenneth S. Horowitz | RE - 1993 | $495 | 7.20 | $3,564.00 |
| Peter J. Behmke | L - 2005 | $455 | 235.10 | $106,970.50 |
| Benjamin Lowin | C - 2006 | $455 | 164.80 | $74,984.00 |
| Joseph F. Clyne | L - 1984 | $415 | 12.10 | $5,021.50 |
| Priya Swaminathan | L - 2007 | $415 | 307.70 | $127,695.50 |
| John Balzano | L - 2006 | $375 | 149.90 | $56,212.50 |
| Mark Bernstein | RIG - 2000 | $375 | 412.10 | $154,537.50 |

[1] In instances where professionals spent less than one hour working on the Debtors' cases during a month, CMP has written off the time as a courtesy to the Debtors.
[2] C – Corporate; L – Litigation; RE – Real Estate; RIG – Restructuring and Insolvency Group; T – Tax; *- Not yet admitted to the Bar.
[3] Daniel R. Lenihan's hourly rate was reduced from $730 to $675 on November 1, 2008.

| NAME OF PROFESSIONAL | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Cindi M. Eilbott | RIG - 2007 | $375 | 381.00 | $142,875.00 |
| Katherine M. Smith | L - 2007 | $375 | 67.20 | $25,200.00 |
| Julie W. Arkush | L - 2008 | $335 | 92.60 | $31,021.00 |
| Stefanie K. Beyer | RIG - 2008 | $335 | 39.50 | $13,232.50 |
| Christina Manthei | RIG - 2008 | $335 | 200.00 | $67,000.00 |
| Stefano de Stefano | C - 2008 | $335 | 394.30 | $132,090.50 |
| Brian C. Tong | L - 2008 | $335 | 68.60 | $22,981.00 |
| Steven Gibbs | L - * | $290 | 12.50 | $3,625.00 |
| Sarah Hale | L - * | $290 | 29.70 | $8,455.00 |
| Chelsea McLean | L - * | $290 | 41.50 | $12,007.00 |
| Jorge Lembeye | C - * | $290 | 21.30 | $6,177.00 |
| Shafiq Perry | C - * | $290 | 425.20 | $123,308.00 |
| Maria Stookey | C - * | $290 | 44.00 | $12,760.00 |
| Christina Tretter-Herriger | C - * | $290 | 4.20 | $1,200.00 |
| Jeanine Turrell | C - * | $290 | 94.10 | $27,289.00 |
| Brian White | L - * | $290 | 75.40 | $21,866.00 |
| **TOTAL ASSOCIATES** | | | **4,000.60** | **$1,592,993.50** |
| | | | | |
| **CLERKS/PARAPROFESSIONALS** | | | | |
| Neal Goodman | L | $250 | 19.50 | $4,875.00 |
| Joseph Riley | L | $195 | 5.00 | $975.00 |
| Oleg Bitman | RIG | $190 | 24.30 | $4,617.00 |
| Samuel Coe | RIG | $190 | 120.80 | $22,952.00 |
| Jed Cohen | RIG | $190 | 189.00 | $35,910.00 |
| Ramon Miyar | RIG | $190 | 390.40 | $74,176.00 |
| Laura Raposo | RIG | $190 | 29.40 | $5,586.00 |
| Julio Velazquez | L | $190 | 24.80 | $4,712.00 |
| Corinne Brenner | L | $180 | 2.60 | $468.00 |
| Jude Barucha | RIG | $170 | 1.20 | $204.00 |
| Roman Vengerovskiy | C | $170 | 34.30 | $5,831.00 |
| Michael Malavarca | L | $165 | 26.20 | $4,323.00 |
| Christopher Rohoman | L | $165 | 15.20 | $2,508.00 |
| **TOTAL CLERKS/PARAPROFESSIONALS** | | | **882.70** | **$167,137.00** |

| TOTALS | | | |
|---|---|---|---|
| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
| Partners | $722 | 3,223.70 | $2,328,573.00 |
| Counsel | $595 | 878.80 | $522,886.00 |
| Associates | $398 | 4,000.60 | $1,592,993.50 |
| Clerks/Paraprofessionals | $189 | 882.70 | $167,137.00 |
| **TOTAL FEES INCURRED** | | **8,985.80** | **$4,611,589.50** |
| | | | |
| **TOTAL FEES REQUESTED** | | **8,985.80** | **$4,611,589.50** |

5590178

## EXHIBIT C

## EXPENSE SUMMARY FOR CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
## FOR THE FIRST INTERIM COMPENSATION PERIOD FROM
## SEPTEMBER 26, 2008 THROUGH JANUARY 31, 2009[1]

| DESCRIPTION | AMOUNT |
|---|---|
| Corporate Search Fees | $ 37.93 |
| Courier | 1,984.53 |
| Deposition Reporting/Transcripts | 220.50 |
| Duplicating | 20,189.50 |
| Filing Fees | 49.00 |
| Lexis/Westlaw | 87,582.87 |
| Litigation Printing | 878.00 |
| Long Distance Telephone | 246.45 |
| Meals Expense | 1,622.60 |
| Overtime | 330.04 |
| Pacer – ECF | 716.00 |
| Postage | 57.34 |
| Process Service | 27.09 |
| Telefax Expense | 19.68 |
| Telephone Audio Conference | 1,967.01 |
| Transportation Expense | 6,972.31 |
| Word Processing | 28,500.17 |
| **TOTAL:** | **$ 151,401.02** |

---

[1] All disbursements have been billed in accordance with the Guidelines.

**EXHIBIT D**

**COMPENSATION BY WORK TASK CODE FOR SERVICES RENDERED BY
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP FOR THE FIRST INTERIM
FEE PERIOD SEPTEMBER 26, 2008 THROUGH JANUARY 31, 2009**

| WORK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| Matter No. 100 | Case Administration | 494.90 | $   190,581.00 |
| Matter No. 200 | General Corporate Matters | 43.70 | 19,907.00 |
| Matter No. 300 | CMP Retention/Billing/Fee Application | 589.40 | 227,816.00 |
| Matter No. 400 | Swap Transactions/Terminations/Analysis/ | 602.60 | 270,849.00 |
| Matter No. 410 | U.S. Bank Matters | 827.60 | 453,268.50 |
| Matter No. 420 | JPMorgan Chase Matters | 3,094.10 | 1,608,081.50 |
| Matter No. 430 | CIFG Matters | 249.40 | 139,903.00 |
| Matter No. 440 | Syncora Matters | 441.70 | 238,302.50 |
| Matter No. 450 | Fenway Matters | 29.00 | 15,231.50 |
| Matter No. 460 | Racers Matters | 337.30 | 188,562.50 |
| Matter No. 470 | Sasco Matters | 50.80 | 19,780.50 |
| Matter No. 480 | Pyxis Matters | 947.90 | 539,591.00 |
| Matter No. 490 | Pine, Spruce and Verano Matters | 61.20 | 28,397.00 |
| Matter No. 510 | CEAGO Matters | 279.70 | 149,929.50 |
| Matter No. 600 | Rule 2004 Bankruptcy Discovery | 38.00 | 25,346.00 |
| Matter No. 700 | Bankruptcy Litigation | 590.40 | 322,829.00 |
| Matter No. 800 | Non-Bankruptcy Litigation | 224.90 | 122,536.50 |
| Matter No. 1200 | Hearings and Court Matters | 83.20 | 50,677.50 |
| **TOTAL** | | **8,985.80** | **$4,611,589.50** |