**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                                    :
                                    :
           In re:                   :     Chapter 11
                                    :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :     Case No. 08-13555 (JMP)
                                    :
           Debtors.                 :     (Jointly Administered)
                                    :
                                    :
---------------------------------------------------------x

### FIRST INTERIM APPLICATION OF FTI CONSULTING, INC FOR ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED IN THE CASE FOR THE PERIOD SEPTEMBER 17, 2008 THROUGH JANUARY 31, 2009

Name of Applicant:                     FTI Consulting, Inc.

Authorized to Provide
Professional Services to:              THE OFFICIAL COMMITTEE OF
                                       UNSECURED CREDITORS OF LEHMAN
                                       BROTHERS HOLDINGS, INC., et al.

Date of Retention:                     September 17, 2008

Period for which compensation
and reimbursement is sought:           September 17, 2008 to January 31, 2009

Amount requested in this fee app
     Compensation requested:           $5,261,715.61
     Expense reimbursement requested:  $148,515.81

Amount previously requested
     Compensation requested:           $0.00
     Expense reimbursement requested:  $0.00

This is an (a):  _X_ Interim ____Final Application

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
                                  :
                                  :

In re:                          :          Chapter 11
                                  :

LEHMAN BROTHERS HOLDINGS INC., et al.,  :          Case No. 08-13555 (JMP)
                                  :

Debtors.                :          (Jointly Administered)
                                  :

-----------------------------------------------------------x

**FIRST INTERIM APPLICATION OF FTI CONSULTING, INC FOR
ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF
EXPENSES FOR SERVICES RENDERED IN THE CASE FOR THE PERIOD
SEPTEMBER 17, 2008 THROUGH JANUARY 31, 2009**

        FTI Consulting, Inc. ("FTI" or "Applicant"), as financial advisors to the Official

Committee of Unsecured Creditors (the "Committee") of Lehman Brothers Holdings Inc.

("LBHI"), the debtors and debtors-in-possession in the above-captioned chapter 11 cases

(collectively, the "Debtors" or the "Company") and, together with their non-debtor affiliates,

("Lehman"), hereby submits its First application pursuant to 11 U.S.C. §§330 and 331 for an

interim allowance of compensation for services rendered and for reimbursement of expenses

incurred in these cases.

## INTRODUCTION

        1.      By this application, FTI seeks a First interim allowance of compensation

for professional services rendered as financial advisors to the Committee for the period

September 17, 2008 through and including January 31, 2009 (the "First Interim Period") in the

amount of $5,261,715.61, representing 11,787.8 hours in professional services, and actual and

necessary expenses of $148,515.81, which were incurred by FTI during the First Interim Period. In support of this application, the Applicant represents as follows:

2.      This application is submitted pursuant to the terms of the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Committee Members dated November 5, 2008 (the "Administrative Fee Order"). Pursuant to the Administrative Fee Order, FTI is seeking the interim award and the full payment, without any holdback of fees, of $5,261,715.61 in fees and $148,515.81 for reimbursement of its expenses relating to services rendered on behalf of the Committee during the First Interim Period.

## BACKGROUND

3.      On September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to 1107(a) and 1108 of the Bankruptcy Code.

4.      On September 17, 2008, the United States Trustee for the Southern District of New York appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

5.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

6.      By an Order dated November 21, 2008, the United States Bankruptcy Court for the Southern District of New York authorized and approved the Committee's retention of FTI *nunc pro tunc* to September 17, 2008. FTI also filed its First Supplemental Affidavit of Michael Eisenband in Support of Application for an Order for Retention of FTI Consulting, Inc. as Financial Advisors for the Official Committee of Unsecured Creditors on January 23, 2009 and its Second Supplemental Affidavit on April 6, 2009.

7.      Included in the $5,261,715.61 fee amount is $1,052,343.12 that represents the 20% professional fee holdback referenced in the Administrative Order for the period of September 17, 2008 through January 31, 2009. FTI seeks interim allowance and payment of the fees and expenses in total, including the 20% holdback on professional fees.

## SUMMARY OF SERVICES RENDERED

8.      The Debtors' chapter 11 cases have presented numerous complex issues that had to be addressed in order to preserve and maximize value for unsecured creditors.  The Retention Order authorizes FTI to render essential financial advisory services to the Official Committee of Unsecured Creditors, which included, but were not limited to the following services during the First Interim Period:

**PCD 3 Assessment and Monetization of Remaining Assets**

During this fee period, FTI met on a regular basis with the Debtors to discuss the management of certain exposures in the loan portfolio and develop a strategy to maximize value. FTI also worked with the Debtors to establish ongoing reporting procedures, and to assess and analyze systems and accounting capabilities. Further, FTI focused on the non-trading portfolio, the

Debtors' efforts in managing problem credits, and the ongoing cash collection and application efforts.

## PCD 4 Review, Assessment and Valuation of Real Estate

The Lehman Brothers real estate portfolio includes positions in hundreds of properties and development projects, including both residential and commercial properties, which span the world with assets in the Americas, Asia and Europe. The portfolio, which has invested capital in the tens of billions, has many significant and complex projects, some of which have more than a billion invested in them individually. The investment positions that the Debtor maintains in these projects are extremely varied and include all levels throughout the projects capital structure. FTI met on a regular basis with the Debtor's financial advisor, Alvarez & Marsal ("A&M"), and legacy Lehman real estate employees retained by the Estate to gain both an in-depth understanding of the portfolio and to deal with current pressing real estate issues. Many of these issues pertained to various motions filed in the case that required positions to be taken by the Creditor Committee and many pertained to certain funding requirements. During this period, the Debtor performed a re-underwriting of all of the positions included in the Commercial America Portfolio. This process was performed to help the estate determine the strategic action to be taken on each of these properties and how best to protect and maximize value. The process also included estimation of the funding requirements on a go forward basis as well as estimation of future recoveries. FTI also began to perform a detailed review of the significant properties in the portfolio to assess the reasonableness and accuracy of the Debtors' analysis. FTI and its real estate specialists met with various Lehman Asset Managers to review their assumptions in regard to all aspects of the properties including projected cash flows, future funding requirements, and

potential recoveries. FTI has presented its findings to the Creditors' Committee's Real Estate
Sub-Committee.

## PCD 8 Forensic Accounting Projects

FTI participated in numerous meetings with A&M to review the status of forensic investigation
activities. The forensic investigations included intercompany transactions and analysis of the
claims by and against financial institutions related to the granting/freezing of collateral
immediately prior to the bankruptcy filing. FTI participated in meetings with A&M and the
Lehman cash and collateral management group to understand the collateral management process.
FTI also reviewed documents produced in connection with the various 2004 Discovery requests
and participated in meetings with counsel and A&M regarding the documents produced and next
steps.

## PCD 10 Analyze Worldwide Corporate Structure and Debt Structure

FTI spent time analyzing Lehman's complex corporate and debt structure on a consolidated and
entity-by-entity basis, including intercompany balances, and guarantee obligations. FTI worked
with A&M and Committee professionals, to review and analyze public information regarding the
debt issued by both the Debtor and Non-Debtor entities.

## PCD 11 Analyze Foreign Administration and Insolvency Proceedings

Following the Chapter 11 filings in the U.S., funds continued to flow into the bank accounts of
non-Debtor affiliates outside the U.S. FTI reviewed the documentation and approval process for
release of these funds. FTI also held multiple meetings with A&M to monitor the management
of the European proceedings. Other time spent in this task code included the review of the data

preservation process undertaken by the Non-Debtor entities to ensure that appropriate

contingency plans are in place in the event of a loss of data or access to the core systems.

## PCD 12 Analysis/Monitoring of Cash Flow and Liquidity

FTI reviewed the Company's cash position and cash flow projections while providing comments

and guidance to management prior to finalization of weekly reports produced by the Debtors.

This included developing an understanding of what cash was available at both the Debtor and

Non Debtor entities and what cash was segregated and unavailable for use by the Company. FTI

attended regular meetings with A&M to discuss the actual weekly cash flow results and prepared

reports to the Committee with details of the Debtors' current cash position. FTI also reviewed

and analyzed the three- month cash flow forecast, identifying risk and opportunities for the

Committee. These services aided the Committee in obtaining a complete understanding of the

Company's complex cash flows, financial performance, key business drivers, and areas that

needed to be evaluated further (e.g., potential capital calls) in order to ensure that sufficient

liquidity was maintained.

## PCD 13 Analyze Employee Compensation

FTI provided support to the Debtors by assisting in the development and review of the employee

retention and recruiting plan. Specifically, FTI reviewed each updated version of the employee

retention and recruiting plan to analyze employee headcount and related compensation (base,

bonus, and severance pay). Time in this category included discussions with the Debtors with

regards to headcount, compensation, the determination of bonus performance goals, pensions,

VEBA issues, and other employee benefits. FTI issued regular reports to update the Committee

on the current state of the retention and recruiting plan, the determination of employee

compensation structure, the determination of bonus performance goals, the 2008 bonuses payout, and the status of employees who have been given extensions to their original offers.

## PCD 14 Analysis of News/Press

Lehman operated internationally. Aside from the Debtors Chapter 11 proceedings, there are over 70 international insolvency proceedings related to current and former LBHI entities, resulting from the US Chapter 11 filing, possibly with more proceedings to come. It was essential that the Committee's financial advisors be aware of all events and press throughout the world. Accordingly, FTI reviewed and summarized news articles from numerous sources which were distributed to all team members for their review. The review of this information enabled the Committee to be up to date on the activities for all Lehman entities, both Debtors and non-Debtors.

## PCD 19 Operational Wind-down Other

FTI played a significant role in identifying and negotiating the services required under the Transition Services Agreement ("TSA"). This entailed a series of interviews with both the LBHI and Barclay's employees to determine necessary services, and validation with the A&M asset class leads. In addition, FTI helped benchmark the cost of such services in preparation for the pending TSA invoice(s) and supported negotiations over pricing and allocation methodologies. Further, FTI began leading the effort to migrate off the non-IT portion of the TSA services, participated in the IT migration planning, and coordinated the migration of services from Barclays to the Venture Capital portfolio ahead of their separation from the estate. FTI also assisted in the preparation of documents related to TSA compliance issues. Time in this task

code includes participation in weekly TSA task force meetings to monitor the progress of

negotiations with Barclays and advise on course(s) of action

## PCD 20 IT Systems and Data Preservation

FTI assisted A&M with identifying, acquiring, and analyzing data held within the LBHI

systems. Tasks included, but not were not limited to, application and database preservation for

IBM and Sybase systems; reviewing and cataloging contents of LBHI legacy databases;

acquiring and analyzing all data owned and accessed by custodians; and the aggregation,

normalization and analysis of data associated with collateral investigations. Progress made

included building approximately a dozen parsing and search tools, managing and analyzing over

400,000 backup tapes (including reconciling this data to 20 million text files). FTI is currently

building an application to tie back numerous individual files to their corresponding owner, share

drive, server, filer and ultimately, backup tape. Time in this code also included the migration of

over 10 Terabytes of data which encompasses over 100 applications and 70 databases.

## PCD 22 Assess Proposed Resolution of Derivatives

FTI attended daily pipeline meetings and periodic credit adjudication meetings with the

Lehman/A&M derivatives teams. The meetings provided updates on the cash collection progress

and included discussions regarding issues and obstacles encountered during the collection

process. The credit adjudication meetings discussed specific proposed settlements recommended

by the derivatives team. FTI worked with the applicable transactors in advance of the credit

adjudication to provide strategic guidance in negotiations with counterparties and have

independently assessed the values and appropriate settlement amounts for select transactions. To

the extent that legal issues arose regarding cash collections, or negotiated settlements, FTI

worked with Committee counsel to provide relevant data and information. FTI also worked with the derivatives team to assess the derivative systems, the accounting for settlements, and to develop approval protocols for settlement of transactions and hedging arrangements.

## PCD 25 Analysis of Bankruptcy Filings and Court Documents

FTI assisted Committee Counsel with the review and analysis of facts related to various motions that have been filed. In performing these analyses, FTI met with the appropriate Debtor personnel, discussed the costs and benefits of the relief being sought, and reviewed the underlying data and supporting facts. FTI's involvement with reviewing these motions provided assurance to parties-in-interest as to the propriety of the relief being sought. Analysis included the review of filings related to over 6,000 executory contracts that were assigned to Barclays to ensure there were no duplicate claims filed against the estate. Time was also spent reviewing the Debtors' process regarding the rejection of executory contracts in order to reduce costs and maximize return for creditors.

Additionally, FTI worked closely with the Debtors to review and analyze the Monthly Operating Report required to be filed with the Bankruptcy Court. As part of this process, analysis was performed on significant variances from prior month's data, when available, and proposed footnotes and disclosures were reviewed.

## PCD 26 Planning, Supervision and Review

FTI established project teams to facilitate engagement management. Time expended in this category includes developing and coordinating work plans and meetings to update FTI team members on current case issues. These hours were limited and valuable to the overall project

planning of this engagement and ensured services were provided in the most cost efficient and effective manner.

## PCD 31 Preparation and Participation in Conference Calls/Meetings
## with Debtor

Services rendered in this code include participating in numerous meetings and conference calls with the Debtors and their advisors. The meetings were necessary to discuss current case status and strategy, motions filed, financial reporting, cash flow and liquidity, assets sales, wind down and compensation issues, as well as various other case issues and to coordinate information requests. FTI updated the Committee on issues raised and proposed resolutions.

## PCD 32 Preparation and Participation in Conference Calls/Meetings
## With Creditors Committee

FTI's role included coordinating and fulfilling numerous requests from the Unsecured Creditors Committee (the "UCC") for financial and operational data pertaining to the Debtors.  FTI worked with Committee Counsel in the preparation and presentation of extensive materials for scheduled twice weekly calls with both the UCC and with the Committee co-chairs regarding updates on derivative positions, real estate positions, cash positions, TSA status, capital calls, monthly operating reports, intercompany balances and other key issues. FTI also attended three in person meetings with the Debtor and the UCC on October 8, 2008, November 13, 2008, and January 15, 2009.

## PCD 36 Preparation of Fee Expense Application

FTI expended necessary resources to ensure the timely filing of monthly fee statements in accordance with the Administrative Order Pursuant to 11 U.S.C. Sections 105(a) and 331 Establishing Procedures For Interim Compensation and Reimbursement of Expenses of

Professionals dated November 5, 2008. Time in this category includes preparing the Monthly Fee

Statements for the fee periods of October 2008 through January 2009.


## ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

9.      All of the services for which interim compensation is sought herein were

rendered for and on behalf of the Committee, and not on behalf of any other entity.  FTI

respectfully submits that the professional services rendered were necessary, appropriate and have

contributed to the effective administration of the Debtors' chapter 11 cases and maximization of

value.  It is respectfully submitted that the services rendered to the Committee were performed

efficiently, effectively and economically.

10.     With respect to the level of compensation, §330 of the Code provides, in

pertinent part, that the Court may award a professional reasonable compensation for necessary

services rendered by such professional based upon consideration of all of the relevant factors,

including time spent, rates charged, necessity or benefit of services rendered, reasonableness of

time spent and cost of comparable services other than in a bankruptcy case. *See* 11 U.S.C.

§330(a).

11.     During the First Interim Period, FTI professionals expended an aggregate

of 11,787.8 hours in rendering services on behalf of the Committee for a total fee of

$5,261,715.61. FTI submits that its fee is reasonable for the work performed in these cases and

the results obtained.

12.     FTI incurred out-of-pocket expenses of $148,515.81 in connection with

the rendition of the professional services described above during this First Interim Period. The

12

actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Committee in these Chapter 11 cases. All air travel to and from the Debtors' location was necessary and billed at actual coach airfare. Additionally, FTI voluntarily limited meal charges to $40 per meal and reduced all travel fees by 50% during the First Interim Application Period.

## **APPLICATION**

13.     This Application is made by FTI in accordance with the Guidelines adopted by the Executive Office for the United States Trustees and the Administrative Order. Pursuant to this application, FTI has attached the following exhibits:

A.     Exhibit A -- Retention Order dated November 21, 2008 authorizing the employment and retention of FTI Consulting, Inc. effective as of September 17, 2008 to provide professional services as Financial Advisors to the Official Committee of Unsecured Creditors.

B.     Exhibit B -- Summary of billings and collections for each of the months covered in the First Interim Period;

C.     Exhibit C -- Summary of time by task code;

D.     Exhibit D -- Summary of out of pocket expenses incurred during the First Interim Period;

E.     Exhibit E[1] --  Detail of time by task codes, including detailed time entry by professional with description of task performed;

F.     Exhibit F[1] -- Summary of out of pocket expenses incurred during the First Interim Period.

G.     Exhibit G – Certification Under Guidelines for Fees and Disbursements for Professionals in Respect of First Application of FTI Consulting, Inc.

---

[1] Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; (iii) counsel for the Unsecured Creditors Committee; (iv) counsel for the Debtors; and (v) the Debtors.

## CONCLUSION

14.     No agreement or understanding exists between FTI and any other person

for the sharing of any compensation to be received for professional services rendered or to be

rendered in connection with these cases.

15.     No prior application has been made to this or any other Court for the relief

requested herein for the First Interim Period.

**WHEREFORE,** FTI respectfully requests that this Court enter an order:

    a.  approving the allowance of $5,261,715.61 for compensation for
services rendered during the First Interim Period, and
reimbursement of $148,515.81 for out of pocket expenses,

    b.  directing the payment of such fees by the Debtors, and

    c.  granting such other and further relief as this Court may deem just
and proper.

Dated: New York, New York
       April 10, 2009

               FTI Consulting, Inc.
               Financial Advisors to the Official Committee
               Of Unsecured Creditors

               By: /s/ Samuel Star

               Samuel Star
               Senior Managing Director
               Three Times Square
               New York, NY  10036
               (212) 841-9368

# EXHIBIT

## "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                        :    Chapter 11
                                              :
LEHMAN BROTHERS HOLDINGS INC., et al., :    08-13555 (JMP)
                                              :
                          Debtors.            :    (Jointly Administered)
-------------------------------------------------------------x

### FINAL ORDER UNDER 11 U.S.C. §§ 328(a) AND 1103, FED. R. BANKR. P. 2014, AND S.D.N.Y. LBR 2014-1 AUTHORIZING EMPLOYMENT AND RETENTION OF FTI CONSULTING INC., AS FINANCIAL ADVISOR TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC., ET AL., EFFECTIVE AS OF SEPTEMBER 17, 2008

Upon the application, dated October 21, 2008 (the "Application"), of the

Official Committee of Unsecured Creditors (the "Creditors' Committee"), appointed in the

above-captioned jointly administered chapter 11 cases of Lehman Brothers Holdings Inc., and

its affiliated debtors and debtors in possession (collectively, the "Debtors") for an order

authorizing the Creditors' Committee to retain and employ FTI Consulting Inc. ("FTI"),

effective as of September 17, 2008, as financial advisor for the Creditors' Committee in the

above-captioned cases, pursuant to sections 328(a) and 1103(a) of title 11 of the United States

Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and rule 2014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2014-1 of the Local

Bankruptcy Rules for the District of New York (the "Local Rules"); and the Court having

considered the Affidavit of Michael Eisenband, sworn to October 21, 2008 (the "Eisenband

Affidavit"), in connection with the Application; and the Court being satisfied based on the

representations in the Application and the Eisenband Affidavit, that FTI does not represent any

other entity having an adverse interest in connection with the case within the meaning of

section 1103(b) of the Bankruptcy Code and is "disinterested" as defined in section 101(14) of

the Bankruptcy Code; and the Court having jurisdiction to consider the Application and the

relief requested therein pursuant to 28 U.S.C. § 1334 and the Standing Order of Referral of

Cases to Bankruptcy Judges of the United States District Court for the Southern District of

New York (Ward, Acting C.J.), dated July 10, 1984; and consideration of the Application and

the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue

being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the time for

objections to the Application having expired on October 31, 2008, except for the United States

Trustee and the Debtors, whose respective time to object was extended on consent until

November 13, 2008; and, with no objections having been timely filed by any party; and the

Court having entered an Interim Order (the "Interim Order") dated November 5, 2008 (Docket

No. 1405), approving the Application on an interim basis without objection; and no objection

having been timely made or filed by either the Debtors, the United States Trustee, or any other

party; and due and proper notice of the Application, the Interim Order, and the hearing to

consider entry of a final order approving the Application having been provided as approved in

the Interim Order; and it appearing that no other or further notice need be provided; and the

Court having reviewed the Application; and the Court having determined that the legal and

factual bases set forth in the Application establish just cause for the relief granted herein; and

upon all of the proceedings had before the Court, and after due deliberation and sufficient

cause appearing therefor, it is hereby

ORDERED that the Application is granted to the extent provided herein; and it

is further

ORDERED, that all compensation and reimbursement of expenses to be paid to

FTI, shall be subject to prior approval of this Court in accordance with the requirements under

2

§§ 330 and 331 of the Bankruptcy Code and the order of this Court which establishes

procedures for monthly compensation and reimbursement of expenses; and it is further

ORDERED, that without limiting the rights of the United States Trustee to

object to FTI's interim or final fee applications and without limiting the requirement that all

compensation and reimbursement of expenses to be paid to FTI shall be subject to prior

approval of this Court, in each instance as set forth in this Order, the Completion Fee (as

defined in the Application), to the extent approved by the Court, shall be an expense of the

administration of the above-captioned chapter 11 cases, payable, following conversion of such

cases to a case under Chapter 7 of Title 11 of the United States Code, in the same order of

priority as other allowed chapter 11 administrative expenses; and it is further

ORDERED, that all requests of FTI for payment of indemnity pursuant to the

Engagement shall be made by means of an application (interim or final as the case may be) and

shall be subject to review by the Court to ensure that payment of such indemnity conforms to

the terms of the Engagement and is reasonable based upon the circumstances of the litigation

or settlement in respect of which indemnity is sought, provided, however, that in no event shall

FTI be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if

any), gross negligence or willful misconduct; and it is further

ORDERED, that in no event shall FTI be indemnified if the Debtor or a

representative of the estate, asserts a claim for, and a court determines by final order that such

claim arose out of, FTI's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross

negligence, or willful misconduct; and it is further

ORDERED that in the event FTI seeks reimbursement for attorneys' fees

pursuant to the terms of the Engagement, the invoices and supporting time records from such

3

attorneys shall be included in FTI's own application and such invoices and time records shall

be subject to the United States Trustee's guidelines for compensation and reimbursement of

expenses and the approval of the Bankruptcy Court under the standards of sections 330 and

331 of the Bankruptcy Code; and it is further

ORDERED that to the extent this Order is inconsistent with the Engagement or

the Application, this Order shall govern; and it is further

ORDERED that this court shall retain jurisdiction to hear and determine all

matters arising from the implementation of this Order.

Dated: New York, New York
       November 21, 2008

s/ James M. Peck
UNITED STATES BANKRUPTCY JUDGE

4

# EXHIBIT

## "B"

**EXHIBIT B**
**LEHMAN BROTHERS HOLDING, INC., CASE NO. 08 - 13555**
**SUMMARY OF FEES & EXPENSES BY MONTH**
*FOR THE PERIOD SEPTEMBER 17, 2008 TO JANUARY 31, 2009*

| | September 17, 2008 - October 31, 2008 | November 1, 2008 - November 30, 2008 | December 1, 2008 - December 31, 2008 | January 1, 2009 - January 31, 2009 | Total |
|---|---|---|---|---|---|
| **FEES** | | | | | |
| Incurred | $ 1,752,222.61 | $ 1,156,717.97 | $ 1,002,308.40 | $ 1,398,096.38 | $ 5,309,345.36 |
| Travel Reduction (50%) | (11,358.75) | (10,185.50) | (9,939.25) | (16,146.25) | (47,629.75) |
| Billed | $ 1,740,863.86 | $ 1,146,532.47 | $ 992,369.15 | $ 1,381,950.13 | $ 5,261,715.61 |
| Paid | (1,392,691.09) | (917,225.98) | (793,895.32) | (1,105,560.10) | (4,209,372.49) |
| Unpaid | $ 348,172.77 | $ 229,306.49 | $ 198,473.83 | $ 276,390.03 | $ 1,052,343.12 |
| **EXPENSES** | | | | | |
| Incurred & Billed | $ 22,663.93 | $ 31,033.25 | $ 41,631.35 | $ 53,187.28 | $ 148,515.81 |
| Paid | (22,663.93) | (31,033.25) | (41,631.35) | (53,187.28) | (148,515.81) |
| Unpaid | $ - | $ - | $ - | $ - | $ - |
| **TOTAL** | | | | | |
| Incurred | $ 1,774,886.54 | $ 1,187,751.22 | $ 1,043,939.75 | $ 1,451,283.66 | $ 5,457,861.17 |
| Travel Reduction | (11,358.75) | (10,185.50) | (9,939.25) | (16,146.25) | (47,629.75) |
| Billed | $ 1,763,527.79 | $ 1,177,565.72 | $ 1,034,000.50 | $ 1,435,137.41 | $ 5,410,231.42 |
| Paid | (1,415,355.02) | (948,259.23) | (835,526.67) | (1,158,747.38) | (4,357,888.30) |
| Unpaid | $ 348,172.77 | $ 229,306.49 | $ 198,473.83 | $ 276,390.03 | $ 1,052,343.12 |

# EXHIBIT

## "C"

EXHIBIT C
LEHMAN BROTHERS HOLDING, INC., CASE NO. 08 - 13555
SUMMARY OF HOURS AND FEES BY PROJECT CATEGORY BY MONTH
*FOR THE PERIOD SEPTEMBER 17, 2008 TO JANUARY 31, 2009*

| Category | Category Description | Sept. 17, 2008 - Oct. 31, 2008 | | November 1 - 30, 2008 | | December 1 - 31, 2008 | | Jan. 1, 2009 - Jan. 31, 2009 | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Hours | Fees | Hours | Fees | Hours | Fees | Hours | Fees | Hours | Fees |
| 1 | Review Business Unit Sales | - | $ - | 3.9 | $ 2,212.50 | - | $ - | - | $ - | 3.9 | $ 2,212.50 |
| 2 | Analyze Financing Matters | 21.1 | $ 10,715.75 | - | $ - | - | $ - | - | $ - | 21.1 | $ 10,715.75 |
| 3 | Assessment and Monetization of Remaining Assets | 65.4 | $ 41,761.50 | 34.0 | $ 22,188.00 | 34.6 | $ 22,685.00 | 44.3 | $ 33,096.50 | 178.3 | $ 119,731.00 |
| 4 | Review, Assessment and Valuation of Real Estate | 438.6 | $ 141,146.00 | 468.2 | $ 175,704.00 | 783.4 | $ 261,041.50 | 741.5 | $ 287,916.50 | 2,431.7 | $ 865,808.00 |
| 5 | Review, Assessment and Valuation of Other Assets | - | $ - | 2.3 | $ 1,559.00 | - | $ - | - | $ - | 2.3 | $ 1,559.00 |
| 6 | Identification of Other Sources of Recovery | 3.5 | $ 2,360.00 | 3.0 | $ 1,860.00 | - | $ - | - | $ - | 6.5 | $ 4,220.00 |
| 8 | Forensic Accounting Projects | 166.6 | $ 87,408.50 | 115.2 | $ 60,445.50 | 15.5 | $ 9,208.00 | 19.8 | $ 13,411.50 | 317.1 | $ 170,473.50 |
| 9 | Bailout Legislation | 20.4 | $ 12,496.00 | 1.7 | $ 943.50 | 1.2 | $ 768.00 | - | $ - | 23.3 | $ 14,207.50 |
| 10 | Analyze Worldwide Corporate Structure and Debt Structure | 168.2 | $ 71,848.47 | 115.8 | $ 55,443.50 | 27.9 | $ 13,430.50 | 137.9 | $ 76,237.50 | 449.8 | $ 216,959.97 |
| 11 | Analyze Foreign Administration and Insolvency Proceedings | 99.5 | $ 70,299.14 | 46.4 | $ 33,390.12 | 26.5 | $ 15,273.40 | 35.5 | $ 16,882.74 | 207.9 | $ 135,845.40 |
| 12 | Analysis/Monitoring of Cash Flow/Liquidity | 315.7 | $ 155,190.25 | 172.1 | $ 80,165.00 | 146.2 | $ 74,408.00 | 207.0 | $ 118,149.51 | 841.0 | $ 427,912.77 |
| 13 | Analyze Employee Compensation | 211.4 | $ 118,759.50 | 33.4 | $ 17,333.00 | 75.8 | $ 39,492.50 | 8.7 | $ 5,959.50 | 329.3 | $ 181,544.50 |
| 14 | Analysis of News/Press | 162.0 | $ 75,691.42 | 50.4 | $ 21,153.00 | 34.1 | $ 14,923.00 | 42.6 | $ 21,820.50 | 289.1 | $ 133,587.92 |
| 16 | Review and Development of Plan of Reorganization | - | $ - | 26.3 | $ 10,668.50 | 25.4 | $ 13,722.00 | 9.6 | $ 7,185.00 | 61.3 | $ 31,575.50 |
| 19 | Operational Wind-down Other | 363.4 | $ 209,402.00 | 255.5 | $ 141,420.50 | 224.5 | $ 122,723.50 | 240.5 | $ 153,952.50 | 1,083.3 | $ 627,498.50 |
| 20 | IT System and Data Preservation | 421.1 | $ 173,184.75 | 812.3 | $ 270,667.44 | 814.3 | $ 240,714.00 | 920.4 | $ 307,845.50 | 2,968.1 | $ 992,211.69 |
| 21 | Claims Assessment, Analysis and Adjudication | - | $ - | 1.3 | $ 601.50 | 1.1 | $ 588.50 | 5.3 | $ 3,987.50 | 7.7 | $ 5,177.50 |
| 22 | Assess Proposed Resolution of Derivatives | 98.9 | $ 59,838.50 | 44.6 | $ 27,901.00 | 50.5 | $ 31,477.50 | 228.4 | $ 120,499.00 | 422.4 | $ 239,716.00 |
| 23 | Review and Assessment of Tax Issues | 3.5 | $ 1,896.66 | 1.2 | $ 853.00 | 0.8 | $ 569.50 | 2.8 | $ 2,310.00 | 8.3 | $ 5,629.16 |
| 24 | Prep and Review Information Requests | 11.9 | $ 5,185.00 | 0.3 | $ 199.50 | - | $ - | - | $ - | 12.2 | $ 5,384.50 |
| 25 | Analysis of Bankruptcy Filings and Court Documents | 102.2 | $ 49,840.20 | 69.5 | $ 31,149.00 | 54.9 | $ 25,416.50 | 41.6 | $ 25,446.50 | 268.2 | $ 131,852.20 |
| 26 | Planning, Supervision and Review | 131.6 | $ 77,003.87 | 50.1 | $ 26,840.50 | 26.3 | $ 15,404.50 | 28.9 | $ 18,999.50 | 236.9 | $ 138,248.37 |
| 27 | Monitor Flow and Dissemination of Information | 4.5 | $ 1,829.50 | - | $ - | - | $ - | - | $ - | 4.5 | $ 1,829.50 |
| 28 | Preparation for Attendance at Court | 4.3 | $ 2,558.50 | 2.5 | $ 1,787.50 | - | $ - | - | $ - | 6.8 | $ 4,346.00 |
| 30 | Government Investigation Status | 4.5 | $ 2,988.50 | - | $ - | - | $ - | - | $ - | 4.5 | $ 2,988.50 |
| 31 | Preparation and Participation in Conference Calls with Debtor | 151.9 | $ 92,195.38 | 42.3 | $ 24,285.40 | 32.0 | $ 15,230.00 | 61.5 | $ 35,586.55 | 287.7 | $ 167,297.34 |
| 32 | Preparation and Participation in Conference Calls with Creditors Committee | 267.0 | $ 173,987.08 | 126.1 | $ 79,479.50 | 53.5 | $ 32,477.50 | 76.4 | $ 52,792.00 | 523.0 | $ 338,736.08 |
| 34 | Meetings with Other Parties | 43.5 | $ 25,365.14 | 8.4 | $ 5,791.00 | 3.0 | $ 2,145.00 | 45.5 | $ 28,639.07 | 100.4 | $ 61,940.22 |
| 35 | Firm Retention and Relationships Check | 140.0 | $ 66,553.50 | 0.5 | $ 357.50 | 4.3 | $ 1,784.50 | 6.4 | $ 3,949.00 | 151.2 | $ 72,644.50 |
| 36 | Preparation of Fee and Expense Application | - | $ - | 91.4 | $ 42,148.00 | 88.9 | $ 28,947.00 | 93.5 | $ 31,137.50 | 273.8 | $ 102,232.50 |
| 37 | Non-Working Travel Time | 43.8 | $ 22,717.50 | 53.4 | $ 20,371.00 | 68.5 | $ 19,878.50 | 100.5 | $ 32,292.50 | 266.2 | $ 95,259.50 |
| | Sub Total | 3,464.4 | $ 1,752,222.61 | 2,633.1 | $ 1,156,717.97 | 2,591.6 | $ 1,002,308.40 | 3,098.6 | $ 1,398,096.38 | 11,787.7 | $ 5,309,345.36 |
| | Less Travel Reduction (50% of travel fees) | | (11,358.75) | | (10,185.50) | | (9,939.25) | | (16,146.25) | | (47,629.75) |
| | Grand Total | 3,464.4 | $ 1,740,863.86 | 2,633.1 | $ 1,146,532.47 | 2,591.6 | $ 992,369.15 | 3,098.6 | $ 1,381,950.13 | 11,787.7 | $ 5,261,715.61 |

# EXHIBIT

# "D"

**EXHIBIT D**

**LEHMAN BROTHERS HOLDINGS, INC., CASE NO. 08-13555**

**SUMMARY OF EXPENSES BY CATEGORY BY MONTH**

*FOR THE PERIOD SEPTEMBER 17, 2008 THROUGH JANUARY 31, 2009*

| Expense Category | September 17, 2008 – October 31, 2008 | November 1, 2008 – November 30, 2008 | December 1, 2008 – December 31, 2008 | January 1, 2009 – January 31, 2009 | Total |
|---|---|---|---|---|---|
| Airfare [1] | $            - | $   6,102.99 | $   3,069.00 | $   6,580.60 | $   15,752.59 |
| Lodging | 11,476.20 | 17,746.47 | 28,507.10 | 32,686.05 | 90,415.82 |
| Meals [2] | 1,312.46 | 2,687.52 | 3,190.66 | 4,189.18 | 11,379.82 |
| Transportation | 9,330.41 | 4,116.61 | 6,209.47 | 8,638.43 | 28,294.92 |
| Other | 544.86 | 379.66 | 655.12 | 1,093.02 | 2,672.66 |
| **Total Out-of-Pocket Expenses** | $ 22,663.93 | $ 31,033.25 | $ 41,631.35 | $ 53,187.28 | $ 148,515.81 |

Notes:

[1] All airplane travel is charged at the cost of coach airfare. To the extent that staff travel to locations other than their home destination for the weekend, travel expenses are limited to the lesser cost associated with the alternative destination or their home city.

[2] Meals have been limited to $40 per person per meal. FTI is not seeking reimbursement for lunches in this matter.

# EXHIBIT

## "E"

Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; (iii) counsel for the Unsecured Creditors Committee; (iv) counsel for the Debtors; and (v) the Debtors.

# EXHIBIT

## "F"

Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; (iii) counsel for the Unsecured Creditors Committee; (iv) counsel for the Debtors; and (v) the Debtors.

# EXHIBIT

# "G"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

In re:                                          :            Chapter 11 Case No.

                                                :
LEHMAN BROTHERS HOLDINGS INC., et al.,          :            08-13555 (JMP)

                                                :
                          Debtors.              :            (Jointly Administered)

                                                :
------------------------------------------------------------ x

### CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF FIRST APPLICATION OF FTI CONSULTING, INC. FINANCIAL ADVISOR TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES DURING PERIOD FROM SEPTEMBER 17, 2008 THROUGH AND INCLUDING JANUARY 31, 2009

Pursuant to the Guidelines for Fees and Disbursements for Professionals in

Southern District of New York Bankruptcy Cases adopted by the Court on June 24, 1991 and

amended April 21, 1995 (together, the "Local Guidelines"), and the United States Trustee

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "U.S. Trustee Guidelines" and,

together with the Local Guidelines, the "Guidelines"), the undersigned, a senior managing

director of FTI Consulting, Inc. ("FTI"), financial advisors to the Official Committee of

Unsecured Creditors (the "Committee") of Lehman Brothers Holdings Inc. and its affiliated

debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby certifies

with respect to FTI's first application for allowance of compensation for services rendered and

for reimbursement of expenses, dated April 10, 2009 (the "Application"), for the period of

September 17, 2008 through and including January 31, 2009 (the "First Interim Period") as

follows:

        1.    I am the professional designated by FTI in respect of compliance with the

Guidelines.

        2.    I make this certification in support of the Application, for interim

compensation and reimbursement of expenses for the First Interim Period, in accordance with the

Local Guidelines.

        3.    In respect of section B.1 of the Local Guidelines, I certify that:

            a.    I have read the Application.

            b.    To the best of my knowledge, information and belief formed after
reasonable inquiry, the fees and disbursements sought fall within
the Guidelines.

            c.    Except to the extent that fees or disbursements are prohibited by
the Guidelines, the fees and disbursements sought are billed at
rates in accordance with practices customarily employed by FTI
and generally accepted by FTI's clients.

            d.    In providing a reimbursable service, FTI does not make a profit on
that service, whether the service is performed by FTI in-house or
through a third party.

        4.    In respect of section B.2 of the Local Guidelines, I certify that FTI has

provided statements of FTI's fees and disbursements previously accrued, by filing and serving

monthly statements in accordance with the Administrative Fee Order (as defined in the

Application).

        5.    In respect of section B.3 of the Local Guidelines, I certify that copies of

the Application are being provided to (a) the Court, (b) the Debtors, (c) counsel for the Debtors,

(d) counsel for the Committee and (e) the Office of the United States Trustee.

Dated:        New York, New York
              April 10, 2009

                              By:    /s/  Samuel Star
                                     Samuel Star