**Hearing Date:  May 13, 2009 (Prevailing Eastern Time)**
**Objection Deadline:  TBD (Prevailing Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 Case No. |
| **LEHMAN BROTHERS HOLDINGS INC., et al.,** | **08-13555 (JMP)** |
| **Debtors.** | **(Jointly Administered)** |

**COVER SHEET FOR THE FIRST INTERIM APPLICATION OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC., INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM SEPTEMBER 17, 2008 THROUGH JANUARY 31, 2009**

**NAME OF APPLICANT:**          Houlihan Lokey Howard & Zukin Capital, Inc.

**TIME PERIOD:**          September 17, 2008 through January 31, 2009

**DATE OF FINAL RETENTION:**          December 17, 2008 (*nunc pro tunc* to September 17, 2008)

**ROLE IN THE CASE:**          Investment Banker to the Official Committee of Unsecured Creditors

**CURRENT APPLICATION:**

Fees Incurred (Including 20% Holdback):          $2,233,333.33

Expenses Incurred:          $159,070.80

**PRIOR APPLICATIONS:**

Fees Previously Requested:          N/A
Fees Previously Awarded:          N/A
Expenses Previously Requested:          N/A
Expenses Previously Awarded:          N/A

Hearing Date:  May 13, 2009 (Prevailing Eastern Time)
Objection Deadline:  TBD (Prevailing Eastern Time)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 Case No. |
| **LEHMAN BROTHERS HOLDINGS INC., et al.,** | **08-13555 (JMP)** |
| **Debtors.** | **(Jointly Administered)** |

**FIRST INTERIM APPLICATION OF HOULIHAN LOKEY
HOWARD & ZUKIN CAPITAL, INC., INVESTMENT BANKER TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF
COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED
FROM SEPTEMBER 17, 2008 THROUGH JANUARY 31, 2009**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey"), as investment banker to the Official Committee of Unsecured Creditors (the "Committee") of Lehman Brothers Holdings, Inc., ("LBHI") et al., the debtors and debtors-in-possession in the above captioned chapter 11 cases (collectively, the "Debtors"), and together with their non-debtor affiliates ("Lehman"), hereby submits this first application (the "Application"), pursuant to sections 328, 330 and 331 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June 24, 1991 and amended April 21, 1995 (together, the "Local Guidelines"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, effective January 30, 1996 (the "U.S. Trustee

Guidelines"), and the Second Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation And Reimbursement Of Expenses of Professionals, dated March 13, 2009 (the "Interim Compensation Order"), for the allowance of interim compensation for professional services rendered from September 17, 2008 through and including January 31, 2009 (the "First Interim Compensation Period"), and for reimbursement of expenses incurred in connection with such services, and in support thereof respectfully represents as follows:

## BACKGROUND

1.      <u>Bankruptcy Filing</u>.  On September 15, 2008 (the "Petition Date"), and periodically thereafter, the Debtors commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases").  The Chapter 11 Cases have been consolidated for procedural purposes and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

2.      <u>Creditors' Committee.</u>  On September 17, 2008, the United States Trustee appointed the Committee in the Chapter 11 Cases.

3.      <u>SIPA Trustee</u>.   On September 19, 2008, a proceeding ("SIPA Proceeding") was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"), a wholly owned subsidiary of LBHI and a registered broker dealer.  James W. Giddens, Esq. is the trustee appointed under SIPA (the "SIPA Trustee") and is administering LBI's estate.

4.      <u>Examiner</u>.  The United States Bankruptcy Court for the Southern District of New York approved the appointment of Anton R. Valukas as examiner (the "Examiner") in

2

the Chapter 11 Cases in the Order Approving the Appointment of Examiner dated January 20, 2009.

5.    <u>Jurisdiction</u>.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of the Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are sections 328, 330 and 331 of the Bankruptcy Code.

**RETENTION OF HOULIHAN LOKEY
AND SUMMARY OF PROFESSIONAL COMPENSATION
<u>AND REIMBURSEMENT OF EXPENSES REQUESTED</u>**

6.    On December 17, 2008, pursuant to the Final Order Under 11 U.S.C. §§ 328(a) and 1103 And Fed. R. Bankr. P. 2014 And S.D.N.Y. LBR 2014-1 Authorizing The Retention And Employment Of Houlihan, Lokey, Howard, & Zukin Capital, Inc., As Investment Banker For The Official Committee Of Unsecured Creditors Effective As Of September 17, 2008 (the "Retention Order"), the Court authorized Houlihan Lokey's retention as an investment banker for the Committee in these cases.  The Retention Order authorized Houlihan Lokey to receive compensation pursuant to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Guidelines, the U.S. Trustee Guidelines, and the local rules and orders of this Court.

7.    Houlihan Lokey prepared this application in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines"), and the Second Amended Order Establishing Procedures for Interim

3

Compensation and Reimbursement of Expenses of Professionals dated March 13, 2009, (Docket No. 3102) (the "Interim Compensation Order", and collectively with the Local Guidelines and UST Guidelines, the "Guidelines"). Pursuant to the Local Guidelines, a certification regarding compliance with the Guidelines is attached hereto as Exhibit "A".

8.    Houlihan Lokey seeks allowance of the interim compensation for professional services rendered to the Committee in the aggregate amount of $2,233,333.33, of which $446,666.66 remains unpaid, and for reimbursement of expenses incurred in connection with the rendition of such services in the aggregate amount of $159,070.80[1] during the First Interim Compensation Period.

(a)    In accordance with the Interim Compensation Order, Houlihan Lokey submitted monthly fee statements to the Debtors seeking interim compensation and reimbursement of expenses. During the First Interim Compensation Period, Houlihan Lokey submitted the following fee statements:

(i)    On November 21, 2008, pursuant to the Interim Compensation Order, Houlihan served its first fee statement for the period from September 17, 2008 through and including October 31, 2008 (the "First Fee Statement"). The First Fee Statement sought (i) an allowance of $733,333.33 as compensation for services rendered and (ii) the reimbursement of $54,179.27 in expenses. As of the date hereof, Houlihan Lokey has received a total of $640,845.94, which represents payment for (i) 80% of Houlihan Lokey's fees and (ii) 100% of the expenses incurred.

(ii)    On December 17, 2008, pursuant to the Interim Compensation Order, Houlihan served its second fee statement for the period from November 1, 2008 through and including November 30, 2008 (the "Second Fee

---

[1] Houlihan Lokey has included all actual and necessary expenses processed by its accounting department for the First Interim Compensation Period. However, some vendors do not send regular invoices. As a result, it is possible that some expenses for this First Interim Compensation Period will be processed in subsequent periods. Accordingly, Houlihan Lokey reserves the right to seek reimbursement of additional expenses that may have been incurred during the First Interim Compensation Period, but which have not been accounted for in Houlihan Lokey's billing system as of the close of the First Interim Compensation Period.

Statement"). The Second Fee Statement sought (i) an allowance of $500,000.00 as compensation for services rendered and (ii) the reimbursement of $29,298.96 in expenses. As of the date hereof, Houlihan Lokey has received a total of $429,298.96, which represents payment for (i) 80% of Houlihan Lokey's fees and (ii) 100% of the expenses incurred.

(iii)    On January 27, 2009, pursuant to the Interim Compensation Order, Houlihan served its third fee statement for the period from December 1, 2008 through and including December 31, 2008 (the "Third Fee Statement"). The Third Fee Statement sought (i) an allowance of $500,000.00 as compensation for services rendered and (ii) the reimbursement of $67,544.54 in expenses. As of the date hereof, Houlihan Lokey has received a total of $467,544.54, which represents payment for (i) 80% of Houlihan Lokey's fees and (ii) 100% of the expenses incurred.

(iv)    On February 20, 2009, pursuant to the Interim Compensation Order, Houlihan served its fourth fee statement for the period from January 1, 2009 through and including January 31, 2008 (the "Fourth Fee Statement"). The Fourth Fee Statement sought (i) an allowance of $500,000.00 as compensation for services rendered and (ii) the reimbursement of $8,048.03 in expenses. As of the date hereof, Houlihan Lokey has received a total of $408,048.03, which represents payment for (i) 80% of Houlihan Lokey's fees and (ii) 100% of the expenses incurred.

9.    Pursuant to Bankruptcy Rule 2016(a), there is no agreement or understanding between Houlihan Lokey and any other person for the sharing of compensation to be received for services rendered in these cases.

10.    Houlihan Lokey respectfully submits that (a) the services provided by Houlihan Lokey were necessary for, and beneficial to, the Committee, (b) Houlihan Lokey has satisfied the requirements of Sections 328(a) of the Bankruptcy Code as set forth in this Court's Order dated December 17, 2008 (Docket No. 2279) authorizing the retention and employment of Houlihan Lokey by the Committee *nunc pro tunc* to September 17, 2008 (the "Retention

5

Order"), and (c) the requested compensation is appropriate based on the complexity, importance and nature of the services provided.

11.     Pursuant to the UST Guidelines and the Retention Order, Houlihan Lokey has maintained a schedule setting forth all Houlihan Lokey professionals who have performed services in these chapter 11 cases during the First Interim Compensation Period, the capacities in which each such individual is employed by Houlihan Lokey and the aggregate number of hours expended by U.S. restructuring professionals in this matter, which totaled 1,273.5 hours for the period from December 17, 2008 through and including January 31, 2009, pursuant to the Retention Order.

12.     Houlihan Lokey does not maintain, in the normal course of providing financial advisory and investment banking services to its clients, detailed written time records, and does not bill its clients based on the number of hours expended by its professionals. However, Houlihan Lokey has maintained written records in hour increments of the time expended by its U.S. restructuring professionals in the rendition of professional services to the Committee in the First Interim Compensation Period in accordance with the terms of the Guidelines.  Such time records were made in connection with the rendition of services by the person rendering such services.  Non-U.S. restructuring professionals and all non-restructuring professionals have maintained weekly task summaries during the First Interim Compensation Period.  A schedule setting forth the number of hours expended by each of the U.S. restructuring professionals and the weekly tasks of the other professionals who rendered services to the Committee during the First Interim Compensation Period is annexed hereto as Exhibit "B".[2]

---

[2] Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; (iii) the Debtors; and (iv) counsel for the Debtors.

13.     Annexed hereto as Exhibit "C" is a schedule specifying the categories of expenses for which Houlihan Lokey is seeking reimbursement and the total amount for each such expense category.

14.     Houlihan Lokey has not received any payments from the Debtors other than those sought by this Application and those set forth in Houlihan Lokey's retention application.

## SUMMARY OF SERVICES RENDERED

15.     Houlihan Lokey has been retained as investment banker to the Committee in respect of all of the Debtors in these unprecedented and complex cases because of Houlihan Lokey's extensive knowledge and reputation in financial restructuring, its familiarity with the issues involved in these cases and the Committee's belief that Houlihan Lokey possesses the requisite resources and is well qualified to represent the Committee in these cases. During the First Interim Compensation Period, Houlihan Lokey rendered a broad range of professional services to the Committee in various areas, addressing critical issues faced by the Committee during these Chapter 11 cases. The services that Houlihan Lokey has been required to perform and has performed have been substantial and necessary in the Chapter 11 Cases. Houlihan Lokey has worked extensively with other professionals retained by the Committee, the Debtors, and the Debtors professionals (including but not limited to Alvarez & Marsal ("A&M") as advisor, Lazard Freres & Co. LLC ("Lazard") as investment banker, and Weil Gothsal & Manges LLC ("Weil") as counsel), while at the same time Houlihan Lokey has attempted to perform its services with the minimum amount of duplication with the Committee's other advisors.

16.     The following summarizes the significant professional services rendered by Houlihan Lokey during the First Interim Compensation Period.

7

**Business Due Diligence & Analysis**

17.    Houlihan Lokey has conducted business due diligence and analysis on the following key areas in the Chapter 11 Cases, among others:

    (a)    Investment Banking Division ("IBD") Sale Transaction

    (b)    LBI/SIPA/Examiner

    (c)    Investment Management Division ("IMD") Spin-Out Transaction

    (d)    Private Equity

    (e)    Real Estate

    (f)    Loan Book

    (g)    Derivatives

    (h)    International Operations and Other Foreign Assets

    (i)    Lehman Banks (Bankhaus, LBCB, LBB, et al.)

    (j)    Capital Structure/Cash Reports/Monthly Operating Report

18.    Houlihan Lokey's primary role has been to advise and represent the Committee in connection with the Debtors' far flung, varied and complicated assets and operations.  To do so, it is necessary for Houlihan to investigate and analyze the activities and assets of the Debtors and to report significant events and decisions to the Committee and its various subcommittees. In order to complete thorough due diligence processes and enable the Committee to be fully informed, Houlihan Lokey attended numerous in-person meetings and participated in conference calls with the Debtors and the Debtors' professionals across the areas listed above and met with governmental regulators when necessary. These meetings allowed Houlihan Lokey to become more familiar with the relevant issues concerning the Debtors and their assets and monitor and participate in the processes of the Debtors and the Debtors' professionals, including sale processes (e.g. IBD, IMD, private equity platforms, loan trading

8

book transactions and derivative settlements). Houlihan Lokey, along with the Committee's other professionals (including, but not limited to, FTI Consulting, Inc. ("FTI") as financial advisor and Milbank, Tweed, Hadley & McCloy, LLP ("Milbank") as counsel), developed Committee and subcommittee protocols with the Debtors and the Debtors' professionals in terms of dollar thresholds for funding and transaction approvals, which varied by asset class. In conjunction with keeping the Committee informed, Houlihan Lokey prepared materials for distribution for multiple weekly Committee and Committee co-chair calls, for regularly scheduled private equity, real estate, derivatives, loan book, and international subcommittee calls, and for monthly in-person Committee meetings. Houlihan Lokey researched underlying issues, compiled and analyzed data provided by the Debtors and the Debtors' professionals and synthesized this information for the Committee and subcommittees. Based on all of the meetings, data analysis, and Houlihan Lokey's experience, Houlihan Lokey, along with the Committee's other advisors, began developing a preliminary overall plan strategy for the cases as well as specific strategies for each of the asset classes.

IBD Sale Transaction

19.     During the First Interim Compensation Period, Houlihan Lokey actively participated in the IBD sale process. Houlihan Lokey attended the sale hearing pertaining to the sale to Barclays Capital, Inc. ("Barclays") on September 19, 2008. After the hearing, Houlihan Lokey was involved in discussions regarding the transaction with the Debtors and Debtors' professionals, reviewed proposed terms and reported progress and notable events to the Committee during numerous conference calls. To facilitate negotiations, Houlihan Lokey reviewed a significant amount of information regarding assets to be transferred to the buyer in the Barclays transaction, including loans and equity holdings. Houlihan Lokey was also integral

9

in identifying issues arising out of the transition services agreement with Barclays, specifically that critical information residing on systems and knowledgeable people purchased by Barclays were not made available to the Debtor and the Debtors' professionals. The reconciliation process of assets sold to Barclays and assets retained by LBI is an on-going work stream. Houlihan Lokey has worked cooperatively with the Committee's other professionals to identify reconciliation issues and potential resolutions.  Additionally Houlihan Lokey along with the Committee's other professionals have continued to monitor the effectuation of the settlement between the SIPA Trustee, Barclays, LBI and the Depository Trust & Clearing Corporation (the "DTCC") (the "Barclays Settlement") and the investigation of the events and actions leading up to the asset transfer and the Barclays Settlement.  Furthermore, Houlihan Lokey provided key analytics used in the Committee's response to the Barclays Settlement motions.

LBI/SIPA/Examiner

20.     Since the SIPA Trustee's retention on September 19, 2008, the Debtors' and Committee's professionals have had limited visibility into the LBI proceeding. Based on available information and one meeting with the SIPA Trustee, Houlihan Lokey has coordinated with the Committee's other professionals to provide an update to the Committee regarding, among other topics, the transfer of assets from LBI to Lehman ALI Inc., the reconciliation of the Barclays/LBI transaction, the remaining assets and the cash position of the LBI estate, the preliminary claims received by the LBI estate, the restitution of customer account balances at LBI, and the estimated timing of the LBI wind-down/liquidation.

21.     Furthermore, Houlihan Lokey reviewed the proposed Barclays Settlement and the supporting documents, to ascertain whether the calculation of the "make whole" payment utilized and the valuation methodology employed by the SIPA Trustee in calculating the

settlement payment was reasonable.  Houlihan Lokey valued the underlying positions associated with the "make whole" payment utilizing internal securities pricing resources.  This analysis was a key component of the Committee's response to the motion filed by the SIPA Trustee regarding the settlement agreement.

22.    On January 26, 2009, Houlihan Lokey attended a meeting with Milbank, FTI, Quinn Emanuel Urquhart Oliver & Hedges, LLP, as special counsel to the Committee ("Quinn"), and the Examiner to understand the Examiner's role and scope of his assignment in an effort to avoid duplication of efforts.  All parties agreed to coordinate to avoid duplication of efforts.  Houlihan Lokey has participated on multiple calls since the initial meeting referenced above to assist in providing information and relevant perspective to the Examiner's professionals to allow them to ramp-up more quickly.

IMD Spin-Out

23.    During the First Interim Compensation Period, Houlihan Lokey was deeply involved with the IMD sale process and resulting spin-out transaction. Houlihan Lokey attended countless meetings and aided the Debtors in the negotiations with Bain Capital and Hellman & Friedman, the stalking horse bidders. Houlihan Lokey reviewed the data room associated with the sale process, participated in management presentations and analyzed the stalking horse bid. A list of other potential bidders was additionally compiled by Houlihan Lokey to ensure that the highest value was received for IMD.  Houlihan Lokey also analyzed other potential bidders as part of the stalking horse court hearing in December 2008.

24.    Specifically in connection with the stalking horse proposal, Houlihan Lokey reviewed, commented on and objected to the proposed transaction terms and conditions, including, but not limited to, the size of the termination fee, expense reimbursement and certain

purchase price adjustments. These objections ultimately resulted in more favorable terms from the Debtors' perspective.

25.    The stalking horse proposal contemplated price adjustments based on the movement of the Standard & Poor's 500 (the "S&P"), which, in addition to other purchase price adjustments, could have resulted not only in a low value for the business but also provided walk-away rights for the stalking horse bidders. Houlihan Lokey monitored the adjustments to the potential value to the Debtors based on these purchase price adjustments on a near daily basis. When it became evident that the stalking horse proposal may not be the value-maximizing solution and/or that the walk-away rights hypothetically might be triggered, Houlihan Lokey advocated that a management led spin-out scenario be actively pursued. Houlihan Lokey worked with Milbank, Lazard, and Weil to formulate the most appropriate structure for a management led spin-out scenario. Once the spin-out scenario was structured, Houlihan Lokey summarized the pros and cons of each alternative, which led to the Committee's approval of the spin-out transaction.

Private Equity

26.    During the First Interim Compensation Period, Houlihan Lokey devoted substantial time to the private equity work stream. Houlihan Lokey's activities included analyzing and re-"marking" underlying investments in the venture capital and merchant banking funds, evaluating potential dispositions and funding requests of assets and investment platforms, and helping Lehman and their professionals proactively manage and reduce the outstanding unfunded commitments held by Lehman. To provide the Committee with the most up-to-date view on the underlying portfolio assets of the venture capital and merchant banking funds, Houlihan Lokey analyzed trading and transaction comparables when available from Lehman and

otherwise applied industry trends to approximate an updated value. These re-"marks" enabled Houlihan Lokey and the Committee to better evaluate the bids received during the sale processes of these platforms.  Furthermore, Houlihan Lokey aided A&M in evaluating the bids in terms of price, deal structure, and the probability of a successful sale. In each of the investment platforms, Houlihan Lokey evaluated the option to retain or sell Lehman's interest in the secondary market, which included analyzing the secondary market pricing trends over the last few years.

27.     Houlihan Lokey also monitored the real estate private equity platform sale process that has continued past the First Interim Compensation Period.  Among other things, Houlihan Lokey's role included analysis and review of underlying asset values and certain interim funding decisions.

28.     Outside of the private equity funds, Lehman has a significant number of principal investments and investments in third party hedge and private equity funds.  Houlihan Lokey has been actively involved in Lehman's decision to provide on-going funding to some of these investments.  Additionally, Lehman sold a few energy assets and some of their hedge fund positions. Houlihan Lokey's energy industry group reviewed the due diligence materials and completed a valuation of the energy assets in order to evaluate the bids.  In terms of the hedge fund positions, Houlihan Lokey provided integral support in negotiations and provided the Committee with pertinent information to approve these transactions.

Real Estate

29.     During the First Interim Compensation Period, the Debtors and the Debtors' professionals primarily focused on the US commercial real estate asset portfolio as this area contained the most readily available information at the individual asset level.  Additionally, the US residential assets and the Asian and European assets were reviewed at a high level, as

further information and analysis was provided post the First Interim Compensation Period. Houlihan Lokey attended the weekly real estate meeting with the Debtors, the Debtors' professionals and FTI.  In these meetings, the group discussed weekly fundings, key issues, the process for evaluating property disposition and long term funding decisions, and third-party motions against the Debtors and their related action plans.  Houlihan Lokey also analyzed the September 30, 2008, asset inventory and pre-petition asset summaries provided by the Debtors' professionals.

30.     While there were several individual assets that were shopped pre-petition and were subsequently sold post-petition, a main focus was on several investments that required significant funding during the First Interim Compensation Period.  Houlihan Lokey reviewed deal memos and the underlying cash flows and, along with FTI, presented summaries and recommendations to the real estate subcommittee for its approval for the Debtors to fund these assets.

31.     During the discussions on the US commercial real estate portfolio as a whole, Houlihan Lokey developed, along with FTI and the Debtors and the Debtors' advisors, the protocol for "bucketing" the US commercial assets into disposition strategies to facilitate the conversations regarding funding and overall portfolio strategy.  The Debtors completed their re-underwriting process to provide "marks" as of December 31, 2008, and the bucketing process at the end of January 2009, so Houlihan Lokey began a review of the updated asset descriptions and for the calendar year ending December 31, 2008, and through projected exit.  The majority of analysis and reconciliation of the December 31, 2008, marks by Houlihan Lokey occurred after the First Interim Compensation Period.

Loan Book

32.     During the First Interim Compensation Period, Houlihan Lokey addressed time-sensitive issues arising from the loan book assets due to the open loan trades, among other things. Houlihan Lokey, in conjunction with the Debtors and the Debtors' professionals, focused its attention first on organizing, classifying, rating, marking, and understanding the funded and unfunded loan assets comprising the loan book.  Houlihan Lokey reviewed and analyzed these ratings and the "marked" positions on the funded loan book assets as prepared by the Debtors and the Debtors' professionals.  Houlihan Lokey and the Debtors' professionals additionally assembled a watch list to track higher risk loans.  Houlihan Lokey reviewed and discussed, with the loan book subcommittee and the Committee, the Debtors' strategy to hold loan assets with positive ratings where the market does not currently provide an attractive exit.

33.     Houlihan Lokey and the Debtors' professionals additionally created strategies to address open trades and unfunded commitments.  For the portfolio of open trades, Houlihan Lokey utilized internal loan valuation resources to produce economic analysis to optimize recovery potential by counterparty and mitigate risk by borrower exposure.  Houlihan Lokey was intimately involved in each step of the negotiation process, frequently sitting in on resolution conversations, reviewing final settlements, and elevating issues to the subcommittee. Most counterparty negotiations reached resolution without litigation.   However, some counterparties have objected to trade assumptions, and Houlihan Lokey worked with the Debtors' professionals and Milbank to analyze and resolve such conflicts.

34.     In parallel with the process for open trades, Houlihan Lokey advised on negotiations to eliminate unfunded commitments.  Finally, Houlihan Lokey's economic analyses have assisted the Debtors in evaluating pledged loan assets that reside in special purpose vehicles

("SPV") where the estate may hold an equity interest. Post-petition, significant effort has been undertaken to determine where unsold SPV notes reside as they may have been transferred to Barclays and/or seized by JPMorgan.

Derivatives

35.    During the First Interim Compensation Period, Houlihan Lokey participated in developing a strategy to create an infrastructure with the capacity to handle the large volume of positions given that key systems and personnel were not available to the estate. The Debtors' professionals, with consultation and review from Houlihan Lokey's derivatives experts, have assembled a team through the retention of former Lehman employees and the hiring of new employees and other third party specialists. Houlihan Lokey participated in key negotiations to secure access to Barclays' resources necessary to conduct the analysis that ultimately supports the settlement of derivatives contracts.

36.    Houlihan Lokey participates in daily valuation and settlement discussions along with FTI.  A protocol was established with the Debtors' professionals whereby every settlement is evaluated by either Houlihan Lokey or FTI and is presented to the derivatives subcommittee or the Committee for approval, as appropriate. Houlihan Lokey has been involved in isolating top receivables and producing analyses, including calculation of settlement values, which support counterparty negotiations.

International Operations and Other Foreign Assets

37.    Houlihan Lokey primarily focused on coordination with A&M on foreign proceedings and several of the foreign sales that occurred. Regarding the Lehman Brothers International (Europe) ("LBIE") proceedings, Houlihan Lokey participates in periodic calls with

A&M to discuss overall coordination between LBHI and LBIE, progress on derivative settlements, client restitution, intercompany accounts and parent guarantees.

38.     For the Asian proceedings, Houlihan Lokey met with A&M and KPMG LLP ("KPMG"), the provisional liquidators (appointed as liquidators in February 2009) for eight Hong Kong entities and certain of the Singaporean entities to discuss the operations, assets and the overall strategy to liquidate and/or sell the assets and settle intercompany accounts. A large focus has been developing a strategy in order to maximize the value of the Japanese assets given the material amounts of intercompany receivables owed to the Hong Kong and Singapore entities by Lehman's Japanese entities.  To that end, Houlihan Lokey met and held telephonic meetings with KPMG and A&M to discuss the Japanese proceedings, real estate assets, and the sale process.

39.     The Debtors have sold a number of foreign businesses, including the Indian business processing outsourcing operations, its French investment banking operations, its Russian broker dealer, and its Turkish subsidiary. For the Indian business processing outsourcing operations, Houlihan Lokey summarized the sale process and the selected bid for the Committee's approval. For Banque Lehman Brothers ("BLB"), Lehman's French investment banking operations, Houlihan Lokey provided the Committee with the background and status of the situation and a description of the proposed transaction. For the Russian broker dealer, Houlihan Lokey analyzed the three possible scenarios of status quo, liquidation, and sale, including reviewing the subsidiary's balance sheet and conducting a simple liquidation analysis. For the Turkish subsidiary, Houlihan Lokey provided the Committee with an overview presentation of the subsidiary's composition, an update on the sales process and current bids, and a recommendation on the sale and structure of the proposed deal.

Lehman Banks

40.    For the US banks, Lehman Brothers Commercial Bank and Lehman Brothers Bank, Houlihan Lokey was integral in evaluating the liquidity situation and the banks' short term viability for the Committee. Houlihan Lokey presented an overview, a preliminary capital structure analysis and regular updates to the Committee. The Debtors contemplated a sale of these banks and hired Lazard to run the sale process. Houlihan Lokey monitored this process, reviewed the extensive data rooms, reviewed management presentations, conducted many analyses and provided an additional buyers list. During and after the sale process, Houlihan Lokey monitored each bank's capital ratio and financial health on a weekly basis. Houlihan Lokey was also instrumental in dealing with the governmental regulators from the Office of Thrift Supervision (the "OTS") and the Federal Deposit Insurance Corporation (the "FDIC") on behalf of the Estate and the banks. Houlihan Lokey had discussions and met with these regulators, along with Milbank, A&M and Weil, to discuss the capital position and related capital ratios of both banks. In January 2009, it became evident that capital infusions would be necessary to maintain "adequate" capital levels in both banks. Houlihan Lokey analyzed the proposed infusions and recommended to the Committee that it not object to the related motions.

41.    For Lehman Brothers Bankhaus AG ("Bankhaus"), Houlihan Lokey provided the Committee with an overview presentation and situation update. In the months of September through November 2008, Houlihan Lokey's US and German offices worked with A&M to analyze the financial statements of Bankhaus to determine the stability of the bank as well as to determine how the German regulators were going to deal with the situation.

<u>Liquidity/Capital Structure/Monthly Operating Reports</u>

42.     During the First Interim Compensation Period, Houlihan Lokey participated in the weekly cash management meetings with FTI and A&M.   While funding decisions were made at the asset level and with the specific subcommittees, Houlihan Lokey facilitated many of these decisions through providing situation summaries and leading subcommittee discussions. Additionally, Houlihan Lokey helped A&M and FTI identify the cash distributions and receipts pertaining to each of the major asset work streams. Houlihan Lokey also reviewed and commented on the monthly operating report and the 13-week cash flow forecast provided by the Debtors and their advisors.  Houlihan Lokey participated in meetings with the Committee's other professionals, the Debtors and their professionals to discuss the reconciliation of the outstanding debt securities of LBHI and its subsidiaries.

**Plan Development**

43.     During the First Interim Compensation Period, Houlihan Lokey coordinated with the Committee's other professionals to begin formulating a preliminary list of issues associated with developing the Debtors' plan of reorganization. These issues include developing a value maximizing strategy for the estate as a whole, not just for individual asset classes and determining whether substantive consolidation is an available option. Houlihan Lokey also drafted an initial asset strategy document in January 2009.

**Committee and Advisor Interaction**

44.     With two Committee and two co-chair calls per week through the majority of the First Interim Compensation Period, Houlihan Lokey drafted multiple presentations with analyses and summaries of the work streams described above in order to keep the Committee well-informed and apprised of situations. Houlihan Lokey coordinated with the other advisors on

these calls, which required calls with the other advisors as well as internal Houlihan Lokey calls and meetings. In addition to the semi-weekly calls, subcommittees were formed specifically for private equity, real estate, loan book, derivatives, and international matters.

**Case Administration**

45.    Houlihan Lokey spent significant time developing its retention application and supplemental affidavits and preparing the monthly reimbursement statements. While Houlihan Lokey does not generally keep time records, Houlihan Lokey's retention order stipulated, after the order date of December 17, 2008, all US restructuring personnel keep hourly time and task records, which required time to create the appropriate template, for each US restructuring employee to fill out each month and to compile this information monthly. For all other Houlihan Lokey employees associated with this case, weekly task summaries are required on an individual basis, after the order date of December 17, 2008.

* * *

46.    The professional services performed by Houlihan Lokey were necessary and appropriate to the administration of the Chapter 11 Cases and were in the best interests of the Committee and other parties in interest.  Compensation for the services described above is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved.

## ACTUAL AND NECESSARY DISBURSEMENTS OF HOULIHAN LOKEY

47.    Houlihan Lokey has disbursed $159,070.80 as expenses incurred in providing professional services during the First Interim Compensation Period.  It is Houlihan Lokey's policy to charge its clients for all actual and necessary expenses incurred in connection with the engagement.  The expenses charged to clients include, among other things, telephone and telecopier charges, regular mail and express mail charges, special or hand delivery charges,

document processing, photocopying charges, travel expenses, expenses for "working meals," and computerized research. In accordance with the applicable factors enumerated in the Bankruptcy Code, it is respectfully submitted that the amount requested by Houlihan Lokey is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.

48.     In addition, because the location of the Debtors' businesses in relation to Houlihan Lokey's offices, long distance telephone calls were often required. In some instances, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services. These disbursements are not included in Houlihan Lokey's overhead. Houlihan Lokey has made every effort to minimize its disbursements in these cases.   The actual expenses incurred in providing professional services were absolutely necessary, reasonable, and justified under the circumstances to serve the needs of the Committee.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

49.     Houlihan Lokey respectfully submits that the services for which it seeks compensation in the Application were necessary for, and beneficial to, the Committee and that Houlihan Lokey has satisfied the requirements of sections 328(a), 330(a), and 331 of the Bankruptcy Code as set forth in the Retention Order. Houlihan Lokey's requested compensation is appropriate based on the complexity, importance and nature of the services provided, and is consistent with the customary compensation charged by comparable professionals both in and out of the bankruptcy context. Houlihan Lokey therefore respectfully requests that the Court grant the relief requested in this Application.

## NO DUPLICATION OF SERVICE

50.     Houlihan Lokey has developed a cooperative working relationship on behalf of the Committee with Milbank as the Committee's counsel and the Committee's financial advisor, FTI.  Because each firm has been aware of the others' role and services to the Committee, Houlihan Lokey believes that no unnecessary duplication of services has occurred.

## NO PRIOR REQUEST

51.     No previous motion for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, Houlihan Lokey respectfully requests the Court enter an order conforming to the amounts set forth in Fee Schedule A(1) attached hereto as Exhibit "D" (a) allowing Houlihan Lokey (i) an interim allowance of compensation for professional services rendered during the First Interim Compensation Period in the amount of $2,233,333.33, of which $446,666.66 is unpaid, and reimbursement for actual and necessary expenses Houlihan Lokey incurred during the First Interim Compensation Period in the amount of $159,070.80, for a total award of $2,392,404.13; (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice of Houlihan Lokey's right to seek additional compensation for expenses incurred during the First Interim Compensation Period which were not processed at the time of this Application; and (iii) such other and further relief as is just and proper, and (b) authorizing and directing the Debtors to pay Houlihan Lokey $446,666.66, the difference between (i) the $2,392,404.13 and (ii) $1,945,737.47, which is the total amount the Debtors have previously paid Houlihan Lokey pursuant to the Interim Compensation Order for services rendered and expenses incurred.

Dated: New York, New York
April 10, 2009

HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.
Investment Banker to the Official Committee of Unsecured Creditors

By: _____
P. Eric Siegert
Managing Director

245 Park Avenue, 20th Floor
New York, New York 10167
Telephone:    (212) 497-4100
Facsimile:    (212) 661-1070

23

**EXHIBIT A**

**SIEGERT CERTIFICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11 Case No.** |
| **LEHMAN BROTHERS HOLDINGS INC., <u>et al.</u>,** | **08-13555 (JMP)** |
| **Debtors.** | **(Jointly Administered)** |

**CERTIFICATION UNDER GUIDELINES FOR FEES AND
DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF
FIRST APPLICATION OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.,
<u>FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES</u>**

I, P. Eric Siegert, hereby certify that:

1.     I am a senior managing director with the applicant firm, Houlihan Lokey Howard & Zukin Capital, Inc., ("Houlihan Lokey"), as investment banker for the Official Committee of Unsecured Creditors (the "Committee") for the jointly administered chapter 11 cases of Lehman Brothers Holdings Inc., <u>et. al.</u> (together, the "Debtors"), in respect of compliance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted January 30, 1996 (the "UST Guidelines") and the Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals (Docket No. 3102) (the "Interim Compensation Order," and collectively with the Amended Local Guidelines and UST Guidelines, the "Guidelines").

2.     This certification is made in respect of Houlihan Lokey's application, dated April 10, 2009, (the "Application"), for interim compensation and reimbursement of expenses for the period commencing September 17, 2008, through and including January 31, 2009, (the "First Interim Compensation Period") in accordance with the Guidelines.

3.     In respect of section B.1 of the Local Guidelines, I certify that:

(a)     I have read the application;

(b)     To the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines;

(c)     The Application respectfully requests that this Court enter an Order awarding Houlihan Lokey $2,233,333.33 as compensation for services rendered during the First Interim Compensation Period and $159,070.80 as reimbursement of reasonable actual and necessary expenses incurred in connection with such services;

(d)     The fees and disbursement requested in the Application are billed in accordance with practices customarily employed by Houlihan Lokey and generally accepted by Houlihan Lokey's clients; and

(e)     In providing a reimbursable service, Houlihan Lokey does not make a profit on that service, whether the service is performed by Houlihan Lokey in-house or through a third party.

4.     In respect of section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Houlihan Lokey has provided, on a monthly basis, statements of Houlihan Lokey's fees and disbursements accrued during the previous month, in accordance with the Interim Compensation Order (as defined in the Application), to the Debtors, the Debtors' counsel, the Committee's counsel, and the Office of the United States Trustee for the Southern District of New York.

5.    In respect of section B.3 of the Local Guidelines, I certify that the Debtors,

the Debtors' counsel, the United States Trustee for the Southern District of New York and the

Committee are each being provided a copy of the Application.

Dated: New York, New York
     April 10, 2009        Respectfully submitted,


HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.
Investment Banker to the Official Committee of Unsecured
Creditors

By: _____
    P. Eric Siegert
    Senior Managing Director

245 Park Avenue, 20th Floor
New York, New York  10167
Telephone:    (212) 497-4100
Facsimile:    (212) 661-1070

**EXHIBIT B**

Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; (iii) the Debtors; and (iv) counsel for the Debtors.

**EXHIBIT C**

Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; (iii) the Debtors; and (iv) counsel for the Debtors.

**EXHIBIT D**

SCHEDULE A(1)

CASE NO.:  08-13555 (JMP) (Jointly Administered)

CASE NAME:  IN RE LEHMAN BROTHERS HOLDINGS INC., et al.

| FIRST INTERIM FEE PERIOD<br>SEPTEMBER 17, 2008 – JANUARY 31, 2009 | | | | | | | |
|---|---|---|---|---|---|---|---|
| APPLICANT | DATE/DOCKET NO. OF APPLICATION | FEES REQUESTED | FEES ALLOWED (INCLUDING FEES HELD BACK) | FEES HELD BACK | FEES PAYABLE BY DEBTOR | EXPENSES REQUESTED | EXPENSES ALLOWED |
| Houlihan Lokey Howard & Zukin Capital, Inc. | 4/10/09<br>Docket No. [X] | $2,233,333.33 | $2,233,333.33 | $446,666.66 | $446,666.66 | $159,070.80 | $159,070.80 |

1

**FEE SCHEDULE A(1)**                                           SO ORDERED: _____