Hearing Date/Time:   May 13, 2009
Objections Due: TBD

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official*
*Committee Of Unsecured Creditors of*
*Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
In re:                                                    :    Chapter 11 Case
                                                          :
LEHMAN BROTHERS HOLDINGS INC., et       :    No. 08-13555 (JMP)
al.                                                       :
                                                          :    Jointly Administered
                                    Debtors.         :
-------------------------------------------------------- x

## SUMMARY SHEET

| | |
|---|---|
| **Name and Role of Applicant** | Quinn Emanuel Urquhart Oliver & Hedges, LLP |
| **Authorized to Provide professional services to:** | The Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al. |
| **Date of Retention** | October 21, 2008, (*Nunc pro tunc* to September 15, 2008) |
| **Compensation Period** | September 15, 2008 through January 31, 2009 |
| **Fees Incurred for Counsel** | $2,129,413.50 |
| **Expenses Incurred** | $41,113.30 |
| **Prior Interim Applications Filed** | This is the First Interim Fee Application Filed by Quinn Emanuel Oliver & Hedges, LLP |
| **Blended Hourly Rate for Fees Incurred during Compensation Period** | $552.17 |
| **Blended Hourly Rate for Fees Incurred during Compensation Period (Attorneys Only)** | $601.66 |

**Schedule 1**

**Hours, Rate and Fees for Services Rendered during the First Interim Fee Period[1].**

| Attorneys/ Paraprofessionals | Title | Year of Bar Admission | Current Hourly Rate | Hours | Total Fee Charged |
|---|---|---|---|---|---|
| Marc A. Becker | Partner | 1988 | 950.00 | 57.80 | $54,910.00 |
| Richard East | Partner | 1997 | 950.00 | 22.90 | $21,755.00 |
| Faith Gay | Partner | 1987 | 950.00 | 166.90 | $158,555.00 |
| Stephen R. Neuwirth | Partner | 1988 | 950.00 | 2.40 | $2,280.00 |
| Harry A. Olivar, Jr. | Partner | 1989 | 950.00 | 2.10 | $1,995.00 |
| Sue Prevezer QC | Partner | 1983 | 950.00 | 23.80 | $22,610.00 |
| Kathleen Sullivan | Partner | 1982 | 950.00 | 24.50 | $23,275.00 |
| Richard I. Werder, Jr. | Partner | 2003 (NY) | 950.00 | 3.80 | $3,610.00 |
| Susheel Kirpalani | Partner | 1995 | 820.00 | 192.10 | $157,522.00 |
| Sandy Weisburst | Partner | 2001 | 775.00 | 38.00 | $29,450.00 |
| Erica Taggart | Partner | 2001 | 660.00 | 166.10 | $109,626.00 |
| James C. Tecce | Counsel (Partner 01/09) | 1995 | 650.00 | 548.10 | $356,265.00 |
| Adam M. Abensohn | Counsel | 1995 | 650.00 | 101.70 | $66,105.00 |
| Daniel Holzman | Counsel | 1998 | 650.00 | 4.30 | $2,795.00 |
| Eric M. Kay | Counsel | 1995 | 650.00 | 227.10 | $147,615.00 |
| Scott C. Shelley | Counsel | 1993 | 650.00 | 117.90 | $76,635.00 |
| Manisha M. Sheth | Counsel | 1999 | 650.00 | 122.70 | $79,755.00 |
| Matthew Bunting | Associate | 2001 | 485.00 | 8.50 | $4,122.50 |
| Joseph G. Minas | Associate | 2003 | 445.00 | 11.20 | $4,984.00 |
| Lucy Pert | Associate | 2003 | 430.00 | 12.00 | $5,160.00 |
| Audrius P. Zakarauskas | Associate | 2003 | 430.00 | 11.00 | $4,730.00 |
| William Adams | Associate | 2004 | 410.00 | 26.70 | $10,947.00 |
| Robert K. Dakis | Associate | 2004 | 410.00 | 473.90 | $194,299.00 |
| Laura E. Robbins | Associate | 2004 | 410.00 | 6.90 | $2,829.00 |
| Danielle Brown | Associate | 2005 | 410.00 | 138.00 | $56,580.00 |
| Deborah Shin | Associate | 2005 | 400.00 | 179.70 | $71,880.00 |
| Toji Calabro | Associate | 2006 | 400.00 | 74.60 | $29,840.00 |
| Harrison L. Denman | Associate | 2006 | 400.00 | 40.30 | $16,120.00 |
| Tyler G. Whitmer | Associate | 2006 | 390.00 | 171.10 | $66,729.00 |
| Marc A. Palladino | Associate | 2007 | 390.00 | 69.30 | $27,027.00 |
| Lance Yang | Associate | 2008 | 370.00 | 312.80 | $99,566.00 |

---

[1]     The titles and hourly rates list above are reflective of the current status, and may have changed during the interim period.

| Attorneys/ Paraprofessionals | Title | Year of Bar Admission | Current Hourly Rate | Hours | Total Fee Charged |
|---|---|---|---|---|---|
| Christopher Clark | Attorney | 2007 (NJ) | 320.00 | 414.10 | $130,965.00 |
| Zena Mount-Namson | Law Clerk | N/A | 295.00 | 28.70 | $8,466.50 |
| Robert Glunt | Law Clerk | N/A | 295.00 | 22.00 | $6,490.00 |
| Silena Paik | Law Clerk | N/A | 295.00 | 11.80 | $3,481.00 |
| Katherine A. Silva | Law Clerk | N/A | 295.00 | 218.10 | $64,339.50 |
| Martine LaCroix | Paralegal | N/A | 250.00 | 6.40 | $1,600.00 |
| Sonal Pandya | Paralegal | N/A | 250.00 | 18.00 | $4,500.00 |
| **TOTAL** | | | | 4,077.30 | $2,129,413.50 |

**Schedule 2**

**Hours and Fees for the First Interim Compensation Period As Rendered By Category**

| Code | Matter | Hours | Fees |
|---|---|---|---|
| LEH01 | Case Management/Calendar Maintenance | 231.50 | $75,789.00 |
| LEH02 | Cash Collateral and DIP Financing | 4.50 | $2,412.50 |
| LEH03 | Claims Analysis/Objections | 250.90 | $134,488.00 |
| LEH04 | Committee Administration | 7.80 | $2,496.00 |
| LEH05 | Court Hearings | 80.10 | $48,750.00 |
| LEH06 | Creditor Communication | 1.70 | $1,360.00 |
| LEH07 | Creditors' Committee Meetings | 169.20 | $110,469.00 |
| LEH08 | Executory Contracts & Unexpired Leases | 70.60 | $36,722.00 |
| LEH09 | Lender and Counterparty Claims | 638.10 | $327,754.00 |
| LEH10 | Liens and Set-Off | 72.70 | $28,370.00 |
| LEH11 | Litigation/Potential Litigation | 1,747.70 | $960,290.00 |
| LEH12 | Non-Working Travel | 14.30 | $9,266.00 |
| LEH13 | Other Conflict Roles | 51.30 | $37,012.00 |
| LEH14 | Other Professional Fee Applications | 0.00 | $0.00 |
| LEH15 | Pre-petition Transactions | 0.00 | $0.00 |
| LEH16 | Quinn Emanuel Fee Applications | 107.40 | $37,317.00 |
| LEH17 | Retention of Professionals | 176.90 | $72,632.00 |
| LEH18 | Rule 2004 Investigations | 420.20 | $219,007.00 |
| LEH19 | Stay Relief Matter | 5.00 | $1,996.00 |
| LEH20 | United Kingdom & European Matters | 27.40 | $23,283.00 |
|  | TOTAL | 4,077.30 | $2,129,413.50 |

## Schedule 3

## Summary Of Expenses

| DESCRIPTION | TOTAL |
|---|---|
| Outside Photocopy | $60.58 |
| Westlaw | $25,981.98 |
| Photocopying | $4,775.40 |
| Printing | $3,960.52 |
| Color Printing | $130.38 |
| Express Mail | $489.78 |
| Local Travel | $160.06 |
| Messenger | $420.00 |
| Postage | $475.95 |
| PACER | $2,020.24 |
| Taxi | $239.46 |
| Telecopier | $25.44 |
| Telephone | $611.11 |
| Meals | $322.40 |
| Record Production | $45.00 |
| Media Create/Dup | $1,395.00 |
| Total | $41,113.30 |

**Hearing Date/Time:   May 13, 2009**
**Objections Due: TBD**

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official*
*Committee Of Unsecured Creditors of*
*Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
In re:                                              :    Chapter 11 Case
                                                    :
LEHMAN BROTHERS HOLDINGS INC., et    :    No. 08-13555 (JMP)
al.                                                 :
                                                    :    Jointly Administered
                                  Debtors.          :
------------------------------------------------------------ x

**FIRST INTERIM APPLICATION OF QUINN EMANUEL URQUHART OLIVER & HEDGES,
LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR PROFESSIONAL SERVICES
RENDERED AND EXPENSES INCURRED DURING THE PERIOD
<u>SEPTEMBER 15, 2008 THROUGH JANUARY 31, 2009</u>**

Quinn Emanuel Urquhart Oliver & Hedges, LLP ("<u>Quinn Emanuel</u>"), Special Counsel to

the Official Committee of Unsecured Creditors of Lehman Brothers Holding Inc., <u>et al.</u> (the

"<u>Committee</u>"), by this application (the "<u>Application</u>"), respectfully moves this Court, pursuant to

sections 330 and 331 of title 11 of the United States Code, §§ 101-1532 (the "<u>Bankruptcy Code</u>"), and

Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the Amended

Administrative Order, pursuant to sections 105(a) and 331 of the Bankruptcy Code establishing

procedures for interim compensation and reimbursement of expenses of professionals, dated November

19, 2008, (as amended, the "<u>Compensation Order</u>"), for allowance of interim compensation for

professional services rendered in the amount of $2,129,413.50 and reimbursement of actual, reasonable

and necessary out-of-pocket expenses incurred in the amount of $41,113.30, during the period beginning September 15, 2008 through and including January 31, 2008 (the "Fee Period"), and, in support thereof, respectfully represents as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction to hear and determine the Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code. Pursuant to the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June 24, 1991 and amended April 21, 1995 (the "Local Guidelines"), a certification regarding compliance with the Local Guidelines is attached hereto as Exhibit A.

## II.    GENERAL BACKGROUND

2.    On September 15, 2008, and periodically thereafter (the "Petition Date"), Lehman Brothers Holdings Inc. ("LBHI"), and certain of its subsidiaries and affiliated entities (collectively the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively the "Chapter 11 Cases").  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are operating their business and managing their properties as debtors in possession.

3.    On September 17, 2008, the Untied States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

4.    On January 16, 2009, the Court entered an Order directing the appointment of an Examiner pursuant to 11 U.S.C. §§ 1104(c)(1) and (c)(2) to investigate, *inter alia*, various transfers and transactions involving the Debtors and their affiliates as well as the events immediately preceding the commencement of the Chapter 11 Cases.

2

### III.    RETENTION OF QUINN EMANUEL

5.    On October 21, 2008, the Committee filed its Application Under 11 U.S.C. §§ 328 and 1103 and Fed. R. Bankr. P. 2014 and 5002, for Order Authorizing Retention and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special Counsel, Nunc Pro Tunc to September 17, 2008 (the "Retention Application").

6.    On November 21, 2008, this Court entered the Final Order Authorizing Retention and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special Counsel to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc. et al., Nunc Pro Tunc to September 17, 2008 (the "Retention Order").  A true and correct copy of the Retention Order is attached hereto as Exhibit B.

7.    As set forth in the Retention Application, the Committee retained Quinn Emanuel to:

- assist the Committee on matters involving entities as to which the Committee's primary counsel Milbank, Tweed, Hadley & McCloy LLP ("Milbank") has an actual or potential conflict of interest;

- assist the Committee's investigation of the acts, conduct, assets, liabilities, intercompany relationships and claims and financial condition of the Debtors and their non-debtor subsidiaries, the existence of estate causes of action and the operation of their businesses to the extent that Milbank is conflicted from conducting those investigations; and

- perform such other legal services as requested by the Committee to the extent not duplicative of Milbank's services.

8.    To that end, Quinn Emanuel has served as special counsel to the Committee and has rendered legal services for the benefit of the Committee in respect of all matters relating to the Debtors' bankruptcy cases where Milbank has a conflict and where the Committee has otherwise directed Quinn Emanuel to advise the Committee.

9.      On October 11, 2008, the Debtors filed a Motion Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) for Authorization to Establish Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals (the "Compensation Motion").  The Compensation Motion was granted pursuant to the Compensation Order.

10.     The Compensation Order established a procedure for, inter alia, the payment of interim fees and expenses to professionals employed by the Committee on a monthly basis.  Quinn Emanuel, on a monthly basis, has been preparing and serving monthly fee statements in accordance with the Compensation Order.[1]  A copy of the Compensation Order is attached as Exhibit C.

### IV.    MONTHLY FEE STATEMENTS AND QUARTERLY APPLICATIONS

11.     For the period from September 15, 2008 through and including January 31, 2009, Quinn Emanuel submitted four monthly fee statements (the "Monthly Fee Statements").  Through the Monthly Fee Statements, Quinn Emanuel has requested interim fee compensation in the amount of $1,703,530.80 (representing 80% of the fees billed by Quinn Emanuel from September 15, 2008 through January 31, 2009) and expenses incurred in the total amount of $41,113.30 (100% of the expenses billed by Quinn Emanuel from September 15, 2008 through January 31, 2009).

12.     This Application is Quinn Emanuel's first quarterly fee application and seeks payment of interim compensation and reimbursement of expenses for services rendered to the Committee in amounts that have been invoiced to the Debtors for the period from September 15, 2008 through January 31, 2009.

---

[1]    Pursuant to the Compensation Order, if no timely objections are filed to Quinn Emanuel's monthly fee statements, Quinn Emanuel is paid 80% of its fees and 100% of its expenses.

13.     This Application requests that the Court (a) approve interim fees in the total amount of $2,129,413.50 (including the 20% of such fees "held back"), and reasonable out-of-pocket expenses in the amount of $41,113.30 incurred by Quinn Emanuel for services rendered in the Chapter 11 Cases during the Fee Period and (b) award and order to be paid to Quinn Emanuel the balance of any such fees, costs and expenses that remain unpaid, after deducting interim payments already received by Quinn Emanuel pursuant to the Compensation Order.

14.     The fees and expenses requested are reasonable, and all amounts requested were for actual and necessary services rendered on behalf of the Committee.

15.     Quinn Emanuel has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.  No promises have been received by Quinn Emanuel or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## V.    SUMMARY OF PROFESSIONAL SERVICES RENDERED

16.     Pursuant to the guidelines promulgated by the United States Trustee, Quinn Emanuel classified all services performed for which compensation is sought into separate categories. Quinn Emanuel attempted to place the services performed in the category that best relates to the services provided.  However, because certain services may relate to one or more categories, services pertaining to one category may be included in another category.  Schedule 1, attached hereto, lists each timekeeper, his or her respective billing rate, professional information, and the total number of hours expended on this case.  Schedule 2, attached hereto, summarizes the professional and paraprofessional time expended by project category.  Timekeeping entries and Quinn Emanuel invoices provide detailed descriptions of all services rendered by each of these categories.  Exhibit D, attached hereto, contains time entry records

5

broken down in tenths of an hour by project category, based on the U.S. Trustee Guidelines, setting forth

a detailed description of services performed by each attorney and paraprofessional on behalf of the

Committee.[2]

17.    The following summary is intended only to highlight key services rendered by

Quinn Emanuel in certain project billing categories where Quinn Emanuel has expended a considerable

number of hours on behalf of the Committee, and is not meant to be a detailed description of all of the

work performed.

**A.    Case Management/Calendar Maintenance  (Hours: 231.50, Fees: $75,789.00)**

18.    Time billed under this category relates to a variety of tasks that were necessary to

ensure competent representation of the Committee, including:

- •    Daily monitoring of dockets in the Chapter 11 Cases, SIPA proceeding and certain of the adversary proceedings;

- •    Distributing copies of relevant documents filed to the appropriate team attorneys, and

- •    Creating and updating reports tracking the status of various matters in the cases and certain of the adversary proceedings.

**B.    Claims Analysis/Objections  (Hours: 250.90, Fees: $134,488.00)**

19.    Since the inception of the Chapter 11 Cases, Quinn Emanuel attorneys and the

Committee's retained professionals continually engaged in the task of reviewing and analyzing a wide

variety of claims asserted against the Debtors' estates.

20.    SMBC Motion.  On October 15, 2008, Sumitomo Mitsui Banking Corporation

("SMBC") filed a motion ("SMBC Motion") seeking relief from the automatic stay to recover certain

collateral it maintained was pledged in connection with its credit agreement with certain Lehman

---

[2]    Due to the volume of the time records and the detailed expense descriptions at issue, these materials
are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the
United States Trustee; and (iii) counsel for the Debtors.

entities.  After reviewing the SMBC Motion and its effect on the estates, Quinn Emmanuel attorneys coordinated with the Debtors regarding a joint (and non-duplicative) response to the SMBC Motion.  On October 31, 2008, Quinn Emanuel, on behalf of the Committee, filed an objection to the SMBC Motion. In support of its objection, (and the Debtors' objection), Quinn Emanuel attorneys prepared for and attended a deposition of an SMBC principal.  On November 20, 2008, Quinn Emmanuel prepared for and appeared on behalf of the Committee at the hearing on the SMBC Motion and the Committee's objection.

   21. <u>Barclays-JPMC Settlement.</u>  On December 5, 2008, the SIPA Trustee filed a motion (the "<u>Barclays-JPMC Motion</u>") to approve a settlement between LBI, Barclays Capital Inc. ("<u>Barclays</u>"), and JP Morgan Chase N.A. ("<u>JPMC</u>"), resolving a dispute over certain funds and cash that Barclays alleges JPMC failed to remit to Barclays following Barclays' purchase of the Debtors' U.S. and Canadian broker-dealer businesses and certain other assets (the "<u>Sale Transaction</u>").  Quinn Emanuel attorneys reviewed and analyzed the Barclays-JPMC Motion to ascertain its effect on the estates and specifically the Committee's investigation into critical aspects of the Sale Transaction and its attempts to arrive at a final reconciliation.  Quinn Emanuel also prepared a detailed, but limited, objection to the Barclays-JPMC Motion setting forth extensive facts (through a substantiating declaration) concerning the Sale Transaction (the "<u>Committee Objection</u>").  Quinn Emanuel, on behalf of the Committee, interposed the Committee Objection to the extent that the Barclays-JPMC Motion made definitive findings regarding the Sale Transaction that bound the Committee or its investigation. Quinn Emmanuel also prepared for and appeared on behalf of the Committee at the hearing on the Barclays-JPMC Motion and the Committee Objection on December 22, 2008.

22.     During the December 22, 2008 hearing on the Barclays-JPMC Motion and the Committee Objection, the Court suggested that parties should cooperate with respect to the Committee's investigation and providing information in connection therewith.  Following the Court's suggestion, Quinn Emanuel attorneys began negotiating consensual discovery with counsel to Barclays.

23.     <u>Barclays-DTC Settlement.</u>  On January 22, 2008, the SIPA Trustee filed a motion (the "<u>Barclays-DTC Motion</u>") to approve a settlement between LBI, Barclays, and the Depository Trust & Clearing Corporation (together with its affiliates, the "<u>DTC</u>") resolving a dispute over securities that were intended to be transferred by the DTC to Barclays as part of the Sale Transaction (but were, in fact, not transferred to Barclays).  Quinn Emanuel attorneys analyzed the Barclays-DTC Motion to determine its affect on the Committee's investigation into the Sale Transaction and the estates generally.  Quinn Emanuel attorneys also spent time reviewing the relief requested in the Barclays-DTC Motion with counsel to the SIPA Trustee and the Debtors to ascertain its benefits and ensure it did not have any negative implications for the Committee or the estates.  Following these discussions, Quinn Emanuel prepared and filed, on the Committee behalf, a limited objection to the Barclays-DTC Motion, which was resolved on the record at the hearing on the Barclays-DTC Motion on February 11, 2009.

**C.     <u>Court Hearings  (Hours: 80.10, Fees: $48,750.00)</u>**

24.     Throughout the Chapter 11 Cases, Quinn Emanuel attorneys, on behalf of the Committee, have prepared for and attended twice-monthly omnibus hearings when matters with respect to which Quinn Emanuel attorneys were representing the Committee were scheduled for presentment. To prepare for these hearings, Quinn Emanuel attorneys often expended considerable time reviewing and analyzing documents, including correspondence and pleadings, and conducting independent legal and factual research.  In addition, Quinn Emanuel attorneys were called upon to present oral argument

not only with respect to the Committee's pleadings, but also with respect to various forms of relief sought by the Debtors or other interested parties.

D.    **Creditors' Committee Meetings  (Hours: 169.20, Fees: $110,469.00)**

25.    Numerous issues arose during the First Interim Compensation Period requiring meetings of the Committee ("Committee Meetings").  Committee Meetings generally occur weekly, either via teleconference or in person.  The meetings generally address the significant issues in the cases at that time, e.g., the Debtors' pending motions, asset sales, settlements, the status of various investigations, the status of litigations, Committee operational issues and various other matters related to the Debtors' cases.  Quinn Emanuel attorneys were often called upon to present the results of its legal and factual research to the Committee.  Due to the enormity of the cases and the complexity of issues, considerable time is often spent preparing for the Committee Meetings.

E.    **Executory Contracts and Unexpired Leases  (Hours: 70.60, Fees: $36,722.00)**

26.    Throughout the Chapter 11 Cases (and especially in connection with the Sale Transaction), the Debtors were presented with significant issues concerning the assumption or rejection of a wide range of executory contracts.  They also received various demands by creditors that contracts be assumed or rejected.  Quinn Emanuel attorneys and the Committee's financial advisors often assumed an active role in reviewing these requests, and working with the Debtors to resolve (or, where appropriate oppose) them.

27.    Motion to Compel Assumption.  On October 17, 2008, 18 different funds filed a motion (the "LSTA Motion") to compel the Debtors to assume or reject certain loan sale contracts governed by Loan Syndicate Trading Association master agreements (the "LSTA Agreements").  Quinn Emanuel attorneys reviewed and analyzed the LSTA Motion to ascertain its affect on the estates and the Committee's constituents.  Quinn Emmanuel attorneys also spent time negotiating with the Debtors and

movants over a consensual resolution of the LSTA Motion that protected the interests of the Debtors'

estates under the contracts and the interests of the estates' unsecured creditors.  On October 31, 2008,

the Debtors filed a stipulation resolving the LSTA Motion that, among other things, incorporated several

comments from the Committee designed to ensure value would be maximized in connection with the

disposition of the LSTA Agreements.

28.    Barclays Rule 60(b) Motions.  On October 14, 2008, Barclays filed two motions

(the "Rule 60(b) Motions") asking the Court relieve Barclays from the assumption and assignment to

Barclays of (a) 179 contracts with various counterparties and (b) certain travel services contracts with

American Express Travel Related Services Company, Inc. (together the "Closing Contracts") that

Barclays allegedly wrongfully placed on a list of agreements assumed in connection with the Sale

Transaction.  On November 21, 2008, after a careful and detailed review, Quinn Emanuel filed, on

behalf of the Committee, a limited objection to the Rule 60(b) Motions, arguing that while the

Committee took no position about the ultimate disposition of the Closing Date Contracts (i.e., whether

they should be assumed or not), the Debtors' bankruptcy estates should not have to bear any costs

associated with these agreements solely because of a third party's actions (beyond the Debtors' control).

On December 16, 2008, Quinn Emmanuel prepared for and appeared on behalf of the Committee at the

hearing on the Rule 60(b) Motions and the Committee's limited objection.

**F.    Lender And Counterparty Claims  (Hours: 638.10, Fees: $327,754.00)**

29.    Investigation of Lenders and Counterparties.  From the outset of the Chapter 11

Cases, the Debtors have faced myriad issues relating to the interaction between the Debtors and their

lenders and counterparties under different financial arrangements.  Quinn Emanuel devoted and directed

an enormous amount of resources into the review and analysis of these relationships.  Time billed in this

category relates primarily to Quinn Emanuel's intensive legal and factual research regarding claims that

10

the Debtors' lenders and counterparties have asserted against the Debtors, as well as potential estate claims that the Debtors may assert against these lenders and counterparties.  As part of that investigation, Quinn Emanuel attorneys reviewed a wide range of agreements and conducted extensive factual and legal research.  These investigations remain ongoing.

30.    <u>Clearance Agreement Motions.</u>  On September 16, 2008, the Debtors filed a motion (the "<u>JPMC Motion</u>") seeking an order confirming the status of claims asserted by JPMC under a guaranty LBHI purportedly executed in favor of JPMC on September 9, 2008.  On September 18, 2008, the Debtors filed a similar motion (the "<u>Citibank Motion</u>" and, together with the JPMC Motion, the "<u>Clearing Advance Motions</u>") seeking an order confirming the status of the claims asserted by Citibank, N.A. ("<u>Citibank</u>") under a guaranty LBHI purportedly executed in favor of Citibank on September 9, 2008.  Quinn Emanuel attorneys analyzed the Clearing Advance Motions and conducted an independent legal and factual investigation of certain of the Debtors' complex prime brokerage relationships.  Quinn Emanuel attorneys also negotiated with attorneys for the Debtor, JPMC and Citibank to ensure that the relief requested in the Clearing Advance Motions did not negatively affect the estates.

31.    <u>SIPA Issues.</u>  During the Fee Period, Quinn Emanuel attorneys dedicated time to reviewing certain activity in the SIPA case that may affect the Debtors' cases and certain initiatives involving the Committee.  These include, without limitation, settlements negotiated and consummated by the SIPA Trustee involving significant financial institutions that, themselves, have extensive relationships with the Debtors' estates.

**G.    Liens and Set-Off (Hours 72.70, Fees: 28,370.00)**

32.    A critical issue in these cases is the purported exercise of setoff rights by the Debtors' lenders and counterparties.  Given the importance of this issue, Quinn Emanuel attorneys spent considerable time performing legal research regarding the right of setoff generally as well as the

interplay between the right to setoff and the statutory safe harbors for certain financial contracts.  These efforts are designed to ensure all proposed setoffs are carefully scrutinized, and any and all challenges to setoffs are asserted.

        **H.**       **Litigation/Potential Litigation  (Hours: 1,747.70, Fees: $960,290.00)**

        33.     Time billed to this category generally relates to litigation that Quinn Emanuel, as special counsel to the Committee, may pursue against certain entities in furtherance of the Committee's obligations as a fiduciary for the Debtors' unsecured creditors.

        34.     <u>BofA Litigation.</u>  On November 26, 2008, Bank of America ("<u>BofA</u>") commenced an adversary proceeding seeking a declaratory judgment ratifying a post-petition offset of approximately $509 million dollars deposited by Lehman Brothers Special Financing Inc. and LBHI in various BofA accounts against amounts allegedly owed to it under certain derivatives contracts.  On January 2, 2009, the Debtors answered BofA's complaint and filed a counter-suit against BofA seeking (a) damages of $501.8 million from BofA and its Cayman Islands affiliates; (b) a declaratory judgment that BofA is legally obligated to return the overdraft deposit account funds to LBHI; (c) the imposition of a constructive trust respecting the overdraft deposit account funds; (d) a ruling that BofA and BofA Cayman violated the automatic stay; and (e) an order that BofA turnover and remit to the Debtors $501.8 million.

        35.     Quinn Emanuel attorneys reviewed and analyzed the relief requested in the BofA action and, given the size and significance of the claims at issue, <u>e.g.</u>, setoff and safe harbor issues, pursued, on the Committee's behalf, intervention in the proceeding.  On January 21, 2009, as a result of Quinn Emanuel's negotiations with the Debtors and BofA, the Committee filed a stipulation memorializing the parties' agreement permitting the Committee to intervene in the BofA Action.  The Committee continues to participate in the BofA Action.

36.    <u>Investigation of Certain Key Parties and Transactions.</u>    These cases commenced under exigent circumstances starting on September 15, 2008.  In the weeks building up to that date, the Debtors were involved in myriad negotiations and transactions concerning possible sales of their assets, financial assistance and other rescue options.  Since the bankruptcy filings, the estates have been parties to other significant transactions, <u>e.g.</u>, the Sale Transaction.  Quinn Emanuel has been tasked with examining, on the Committee's behalf, certain of these events and transactions.  Thus, Quinn Emanuel attorneys devoted and directed an enormous amount of resources into the review and analysis of the Debtors' relationships with these parties and the facts and circumstances surrounding transactions in which they were involved.  Time billed in this category relates primarily to Quinn Emanuel's legal and factual research regarding potential estate claims as well as grounds to object and seek to disallow claims against the Debtors' estates.  Quinn Emanuel attorneys have prepared and presented to the Committee numerous detailed research memoranda reviewing these investigations.  The investigations remain ongoing.

37.    <u>Barclays Sale Investigation.</u>    Quinn Emanuel devoted significant time during this Fee Period to the Committee's investigation of the Sale Transaction.  Quinn Emanuel attorneys, together with the Committee's financial advisors, are working to ensure that the consideration received by the estate and the assets transferred to Barclays were consistent with the explanations of the Sale Transaction provided to the Court and the Committee.  In furtherance of this investigation, Quinn Emanuel attorneys have spent time negotiating with Barclays over the production of documents regarding the Sale Transaction.  That investigation (which includes a review of documents Barclays produced to the Committee) remains ongoing.

38.    <u>Common Interest Agreement.</u>  During the Fee Period, Quinn Emanuel attorneys spent time negotiating with the Debtors and the Examiner an appropriate form of common interest agreement.  Such agreements have been entered into between the Committee and the Debtors, and between the Committee and the Examiner.

### I.    Other Conflict Roles (Hours: 51.30, Fees $37,012.00)

39.    Time billed to this category relates to Quinn Emanuel's role as conflict counsel to the Committee on certain discrete issues, including interaction with the Examiner and his counsel concerning the Committee's investigations of the Debtors' lenders and counterparties and ways to avoid duplication between the Examiner's and the Committee's efforts.

### J.    Quinn Emanuel Fee Applications (Hours: 107.40, Fees: $37,317.00)

40.    Pursuant to the Bankruptcy Code, Local Rules, and the Compensation Order, Quinn Emanuel prepared and served four monthly Fee Statements (the "<u>Fee Statements</u>") for approval and allowance of compensation for actual, reasonable and necessary professional services rendered, and reimbursement of expenses for actual reasonable and necessary expenses incurred during the Fee Period. Each Fee Statement contained extensive records of the work performed by Quinn Emanuel.

### K.    Retention of Professionals (Hours: 176.90, Fees: $72,632.00)

41.    Time billed to this category relates to the drafting and filing of Quinn Emanuel's retention application as well as any subsequent review of documents or information necessary to ensure appropriate and effective disclosure in connection with Quinn Emanuel's continued retention.

### L.    Rule 2004 Investigations  (Hours: 420.20, Fees: $219,007.00)

42.    In connection with certain of the Committee's investigations of certain events that transpired prior to the commencement of the Chapter 11 Cases, certain post-petition transactions (<u>e.g.</u>, the Sale Transaction), and the relationships between the Debtors and their lenders and counterparties,

14

Quinn Emanuel attorneys attempted to obtain consensual discovery from various parties.  When those efforts failed, attorneys from Quinn Emanuel prepared and, when necessary, filed various motions pursuant to Bankruptcy Rule 2004.

43.    <u>JPMC 2004 Motion.</u>  Quinn Emanuel attorneys spent considerable time researching and drafting a motion (the "<u>JPMC Motion</u>") seeking leave under Bankruptcy Rule 2004 to conduct discovery against JPMC.  The JPMC Motion sought, generally, documents regarding (i) the numerous contractual relationships between JPMC and the Debtors, (ii) JPMC's claims against the Debtors, and (iii) certain events leading to the filing of the Chapter 11 Cases.  On October 2, 2008, Quinn Emanuel, on behalf of the Committee, filed the JPMC Motion.

44.    Both the Debtors and JPMC responded to the JPMC Motion.  Quinn Emanuel attorneys then engaged in extensive negotiations with counsel to JPMC seeking a consensual resolution of the JPMC Motion and their objection.  On November 5, 2008, Quinn Emanuel filed a Stipulation And Consent Order (I) Governing Interim Production of Documents and (II) Adjourning Remainder of Motion of Official Committee of Unsecured Creditors of Lehman Brothers Holdings**,** Inc**.,** et al**.** For Leave to Conduct Discovery of JPMorgan Chase Bank**,** N.A. Pursuant to 11 U.S.C. §§ 105(A) and 1103(C) And Federal Rule Of Bankruptcy Procedure Rule 2004 (the "<u>2004 Stipulation</u>"), which provided JPMC would immediately begin producing a subset of the documents requested in the JPMC Motion and deferred the balance of documents to a later date.

45.    Following execution of the 2004 Stipulation, Quinn Emanuel attorneys dedicated time to negotiating appropriate confidentiality agreements between JPMC and the Committee governing the handling of documents produced by JPMC pursuant to the 2004 Stipulation.  Quinn Emanuel attorneys also spent time reviewing the documents produced.

## VI.   ALLOWANCE OF COMPENSATION

46.    The factors to be considered in awarding attorneys fees as enumerated in In re

First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been adopted by most

courts, including the Bankruptcy Court for the Southern District of New York.  See, e.g., In re Drexel

Burnham Lambert Group, Inc., 133 B.R. 13, 22 n.5 (Bankr. S.D.N.Y. 1991).  Indeed, a majority of the

First Colonial factors are now codified in section 330(a)(3).  See, e.g., 3 L. King, et al., Collier on

Bankruptcy at ¶ 330.04[3][c] (15th ed. rev 2008).

47.    Section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent part, that the

Court may award to a professional person, "reasonable compensation for actual, necessary services

rendered." Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded, the
> court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or
> beneficial at the time which the service was rendered toward the completion
> of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time
> commensurate with the complexity, importance, and nature of the problem,
> issue, or task addressed; and
>
> (E) whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in cases other than
> cases under this title. 11 U.S.C. § 330(a)(3)(A).

48.    The congressional policy expressed above provides for adequate compensation in

order to continue to attract qualified and competent professionals to bankruptcy cases. In re Busy Beaver

Bldg. Ctrs., Inc., 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to provide sufficient

16

economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.")

(citation and internal quotation marks omitted); In re Drexel Burnham Lambert Group, Inc., 133 B.R.

13, 18 (Bankr. S.D.N.Y. 1991) ("Congress' objective on requiring that the market, not the Court,

establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal

specialists."). Quinn Emanuel respectfully submits that the consideration of these factors should result

in this Court's allowance of the full compensation sought.

### A.    The Time and Labor Required

49.    The professional services rendered by Quinn Emanuel have required the

continuous expenditure of substantial time and effort, under time pressures which sometimes required

the performance of services late into the evening and, on a number of occasions, over weekends and

holidays. The services rendered required a high degree of professional competence and expertise in

order to be administered with skill and dispatch. During the Compensation Period, approximately

4,077.30 recorded hours were expended by Quinn Emanuel's partners, associates, and legal assistants in

providing the requested professional services. Quinn Emanuel's hourly billing rates, as set out in

Schedule 1, are computed at the rates Quinn Emanuel regularly charges its hourly clients.

### B.    The Necessity of The Services and Benefit to the Estate

50.    These Chapter 11 Cases are generally regarded as among the most complex and

active bankruptcy cases ever filed. Indeed, many of the complex issues regarding the Debtors' financial

contracts are issues of first impression, with far reaching ramifications. As detailed above, the services

Quinn Emanuel provided to the Committee were necessary to preserve and enhance the value of the

Debtors' estates and conferred substantial benefit to the Debtors' unsecured creditors. Quinn Emanuel's

services have furthered and will continue to further the Committee's obligations as fiduciary for the

Debtors' unsecured creditors and will continue to maximize estate value.

17

C.      **The Novelty and Difficulty of Issues Presented in the Cases**

51.      Novel and complex issues have arisen in the course of the Chapter 11 Cases, and it can be anticipated that other such issues will be encountered. In these cases, as in many others in which the firm is involved, Quinn Emanuel's effective advocacy and creative approach to problem solving have helped clarify and resolve difficult issues and will continue to prove beneficial.

D.      **The Experience, Reputation and Ability of the Attorneys**

52.      Quinn Emanuel has extensive experience in the areas of insolvency, workouts and corporate reorganizations.  Quinn Emanuel's services on behalf of the Committee have been rendered in a highly efficient manner by attorneys who have achieved a high degree of expertise in these areas.  The skill and competency of the Quinn Emanuel attorneys who have represented the Committee have ensured that these cases have been administered in the most efficient and expeditious manner.

## VII.   DISBURSEMENTS

53.      Quinn Emanuel has incurred a total of $41,113.30 in expenses in connection with representing the Committee during the First Interim Compensation Period.  Quinn Emanuel records all expenses incurred in connection with the performance of professional services.  A summary of these expenses and detailed descriptions of these expenses, is annexed hereto as Exhibit E.

54.      In connection with the reimbursement of expenses, Quinn Emanuel's policy is to charge its clients in all areas of practice for expenses, other than fixed and routine overhead expenses, incurred in connection with representing its clients.  The expenses charged to Quinn Emanuel's clients include, among other things, telephone and telecopy toll and other charges, mail and express mail charges, special or hand delivery charges, photocopying charges, out-of-town travel expenses, local transportation expenses, expenses for working meals, computerized research and transcription costs.

18

55.     Quinn Emanuel charges the Committee for these expenses at rates consistent with those charged to Quinn Emanuel's other bankruptcy clients, which rates are equal to or less than the rates charged by Quinn Emanuel to its non-bankruptcy clients. Quinn Emanuel seeks reimbursement from the Debtors at the following rates for the following expenses: (a) ten cents ($0.10) per page for photocopying; (b) no charge for incoming facsimiles; and (c) toll charges only for outgoing facsimiles. In accordance with section 330 of the Bankruptcy Code, the Local Guidelines and with the U.S. Trustee Guidelines, Quinn Emanuel seeks reimbursement only for the actual cost of such expenses to Quinn Emanuel.

56.     In providing or obtaining from third parties services which are reimbursable by clients, Quinn Emanuel does not include in such reimbursable amount any costs of investment, equipment or capital outlay.

57.     Quinn Emanuel regularly charges its non-bankruptcy clients for ordinary business hourly fees and expenses for secretarial, library, word processing and other staff services because such items are not included in the firm's overhead for the purpose of setting the billing rates.  However, Quinn Emanuel is not requesting reimbursement of such expenses in this Application and will not seek reimbursement from the Debtors of such expenses in future applications. Nevertheless, Quinn Emanuel reserves its rights with respect to such expenses until such time as an order is entered regarding its final fee application.

58.     Attorneys at Quinn Emanuel have not incurred expenses for luxury accommodations or deluxe meals. The Application does not seek reimbursement of air travel expenses in excess of coach fares. Throughout the First Interim Compensation Period, Quinn Emanuel has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## VIII.  <u>NOTICE</u>

59.     Notice of this Application, as set forth in the Interim Compensation Order, has been given to (a) the Debtors, (b) counsel for the Debtors, (c) the Office of the United States Trustee, and (d) Counsel for the Official Committee of Unsecured Creditors.

## IX.    **CONCLUSION**

WHEREFORE, Quinn Emanuel respectfully requests the Court to enter an order, conforming to the amounts set forth in Fee Schedule A (1) attached hereto as Exhibit F (a) allowing Quinn Emanuel (i) interim compensation for professional services rendered as counsel for the Committee during the First Interim Compensation Period in the amount of $2,129,413.50 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $41,113.30, for a total award of $2,170,423.04; (b) authorizing and directing the Debtors to pay to Quinn Emanuel any and all such amounts less any amounts already received for services rendered and expenses incurred during the First Interim Compensation Period; and (c) granting such further relief as is just.

Dated:  April 10, 2009
      New York, New York

                        **QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP**

                        By:  /s/ James C. Tecce
                             James C. Tecce

                        Susheel Kirpalani
                        James C. Tecce
                        Robert K. Dakis

                        51 Madison Avenue
                        New York, New York 10010
                        Telephone No.:  (212) 849-7000
                        Facsimile No.:  (212) 849-7100

                        *Special Counsel to Official Committee Of
Unsecured Creditors Of Lehman Brothers
Holdings Inc., et al.*