Paul Batista, Esq.  
PAUL BATISTA, P.C.  
Broadway – Suite 1900  
New York 10004  
Telephone: (212) 980-0070  
Facsimile: (212) 344-7677  
E-mail: Batista007@aol.com

Hearing Date and Time:  
May 17, 2009 at 10:00 a.m.  
Objection Deadline: New York,  
May 6, 2009 at 4:00 p.m.

*Attorney for Unclaimed Property Recovery Service, Inc.*

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
-----------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.*, | Case No. 08-13555 (JMP) |
| Debtors. | Jointly Administered |

-----------------------------------------------------------------x

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Case No. 08-01420 (JMP) SIPA |
| v. | |
| LEHMAN BROTHERS, INC. | SIPA Liquidation Proceeding |
| Defendant. | |

-----------------------------------------------------------------x

### MOTION OF UNCLAIMED PROPERTY RECOVERY SERVICE, INC. FOR ORDERS (A) COMPELLING PAYMENT OF UNCLAIMED FUNDS BY THE NEW YORK STATE COMPTROLLER, (B) LIFTING THE AUTOMATIC STAY OR, ALTERNATIVELY, PROVIDING RELIEF FROM THE AUTOMATIC STAY, (C) ALLOWING PAYMENT FOR SERVICES PROVIDED POSTPETITION AND (D) OTHER RELATED RELIEF

TO THE HONORABLE JAMES M. PECK,  
UNITED STATES BANKRUPTCY JUDGE:

Unclaimed Property Recovery Service, Inc. ("UPRS"), by its counsel, Paul Batista, P.C., hereby files this motion ("Motion") (i) for a determination that the automatic stay does not apply to

the actions sought to be taken by UPRS or (ii) in the alternative, for relief from the automatic stay pursuant to Section 362(d) of title 11 of the United States Code ("Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). UPRS states as follows in support thereof:

## I. PRELIMINARY STATEMENT

UPRS is in the business of finding unclaimed funds and notifying the owners. UPRS has longstanding and ongoing agreements with Lehman Brothers Inc. ("LBI") to identify and recover unclaimed funds belonging to LBI. During the past thirteen years, UPRS has recovered millions of dollars in unclaimed funds for LBI.

Pursuant to four LBI Agreements ("Agreements") and authorizations, UPRS is currently in the process of recovering a significant claim of approximately $5 million in unclaimed funds ("Claim") held by the New York State Office of Unclaimed Funds ("NYS OUF") on behalf of LBI.

The Director of the NYS OUF has requested an order from the Bankruptcy Court to pay LBI the approximately $5 million in unclaimed funds outstanding. The impact of the Director's position has been to thwart UPRS's ability to recover approximately $5 million in unclaimed funds for LBI and receive a 10% fee, approximately $500,000, to which UPRS is entitled under the Agreements. UPRS is filing this Motion for a determination that the automatic stay does not apply to the actions sought to be taken by UPRS, or, in the alternative, for relief from the automatic stay pursuant to Section 362(d) of the Bankruptcy Code.

## II. JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28

2

U.S.C. § 157(b)(2). The statutory predicate for the relief sought herein is Section 362(d) of the Bankruptcy Code, as complemented by Bankruptcy Rule 4001 and Section 503(b)(1) of the Bankruptcy Code.

### III. BANKRUPTCY FILINGS

2. On September 15, 2008 Lehman Brothers Holdings Inc. ("LBHI") filed its petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subsequent chapter 11 petitions were filed by related entities (together with LBHI, the "Debtors"). By order dated October 16, 2008, the Debtors' cases are jointly administered.

3. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA"), with respect to Lehman Brothers Inc. ("LBI"), and James W. Giddens was appointed as Trustee under SIPA (the "SIPC Trustee") to administer LBI's estate.

### IV. FACTUAL BACKGROUND

4. Pursuant to four LBI Agreements and LBI authorizations, UPRS is currently in the process of recovering a significant Claim of approximately $5 million in unclaimed funds held by the NYS OUF on behalf of LBI. The New York State Comptroller ("NYS Comptroller") is the State's custodian of $9 billion in unclaimed funds and oversees the effort to return this property to owners. Copies of the LBI Agreements are attached as **Exhibit A** to the Bernard Gelb Declaration ("Gelb Declaration"). Copies of the LBI authorizations are attached as **Exhibits B** and **C** to the Gelb Declaration.

5. On June 7, 2007, July 2, 2007 and August 1, 2007, UPRS sent Bill Wallace, LBI Vice President, a billing statement for $500,000, for services billed pursuant to the Agreements,

3

for services as of June 7, 2007. Copies of the three billing statements are attached as **Exhibit D** to the Gelb Declaration.

6. UPRS has spent many years and thousands of dollars to develop proprietary software, databases and research to identify and recover unclaimed funds that are outstanding for LBI. Gelb Declaration, ¶ 8.

7. The approximately $5 million in unclaimed funds outstanding that UPRS has claimed are due LBI, not LBHI. The four Agreements and authorizations are between LBI and UPRS. LBHI is not a party to the four Agreements and authorizations. Gelb Declaration, ¶ 7.

8. The Director of the NYS OUF has requested an order from the Bankruptcy Court to pay LBI the approximately $5 million in unclaimed funds outstanding. Gelb Declaration, ¶ 21.

9. On or about February 24, 2009, Lawrence Schantz, Director, NYS OUF, sent UPRS a letter, that read in part: "[A]bsent a further order of the Bankruptcy Court . . . we will not transfer any property of Lehman Brothers, Inc., including replacement checks." A copy of Lawrence Schantz's letter dated February 24, 2009 is attached as **Exhibit K** to the Gelb Declaration.

10. The impact of the Director's position has been to thwart UPRS's ability to recover approximately $5 million in unclaimed funds for LBI and receive a 10% fee, approximately $500,000, to which UPRS is entitled. Gelb Declaration, ¶ 22.

11. UPRS, acting in good faith, continues to provide services under the four Agreements and authorizations subsequent to the LBHI Petition Date. Gelb Declaration, ¶ 24.

12. After UPRS is paid the 10% fee, approximately $500,000 and the $500,000 outstanding balance due UPRS, LBI will recover approximately $4 million. Gelb Declaration, ¶ 25.

4

## V. RELIEF REQUESTED

13.     UPRS respectfully requests entry of the annexed proposed order modifying the automatic stay in effect in LHBI's bankruptcy case and LBI's proceeding under SIPA pursuant to Bankruptcy Code Section 362(d), to permit UPRS to recover from the NYS Comptroller NYS OUF approximately $5 million unclaimed funds due LBI.

14.     UPRS also requests allowance and payment of a postpetition administrative expense claim pursuant to 11 U.S.C. § 503(b) for the amount of its 10% fee due, approximately $500,000, and allowance and payment to recoup the $500,000 outstanding balance due UPRS from the unclaimed funds recovered.

15.     UPRS also respectfully requests that this Court direct that relief from the automatic stay be effective immediately upon entry of an order granting this Motion and that the 10-day stay, provided under Rule 4001(a)(3), of orders granting motion for relief from the automatic stay shall not apply.

## VI. BASIS FOR RELIEF

### A. The Automatic Stay Does Not Apply

16.     Pursuant to Section 362 of the Bankruptcy Code, the filing of a petition operates as a stay, applicable to all entities of –

> (1) the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;

5

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess or recover a claim against the debtor that arose before commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a corporate debtor's tax liability for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

17. Section 362(a)(1) does not apply to UPRS's exercise of its actions. UPRS is not proposing to commence or continue any action against LBHI.

18. Section 362(a)(2) does not apply to UPRS's exercise of its actions as no judgment has been obtained.

19. Section 362(a)(3) does not apply to UPRS's exercise of its actions because it is not attempting to obtain possession of or control over property of the estate.

20. Section 362(a)(4) does not apply to UPRS's exercise of its actions because UPRS is not trying to create, perfect, or enforce any lien against property of the estate.

21. Section 362(a)(5) does not apply to UPRS's exercise of its actions because it is not an act to create, perfect, or enforce against property of LBHI any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.

22. Section 362(a)(6) does not apply to UPRS's exercise of its actions because it does not have a claim against LBHI.

23. Section 362(a)(7) does not apply to UPRS's exercise of its actions because it is not seeking to setoff of any debt owing to LBHI that arose before the commencement of the case under this title or any claim against LBHI.

24. Section 362(a)(8) does not apply to UPRS's exercise of its actions because there is no proceeding before a tax court or involving tax liability.

25. In performing its actions, UPRS is not violating the automatic stay. None of UPRS's actions is against LBHI or its property in any form.

26. The automatic stay "provide[s] debtors with temporary respite from their creditors so that they may have an opportunity to develop and implement plans of reorganization to satisfy their creditors and resuscitate their businesses[]," In re 160 Bleeker St. Assocs., 156 B.R. 405, 411 (S.D.N.Y. 1993).

27. Extending the automatic stay beyond the language of § 362 in this way would be particularly unfair in this case because UPRS, a non-creditor of the Debtor, *i.e.*, a party which does not hold a "claim" against the Debtor, is seeking to recover unclaimed funds that are not property of the estate for use in the Debtors' reorganization. In re Prudential Lines, Inc., 114 B.R. 27, 29 (Bankr. S.D.N.Y. 1989). The imposition of the automatic stay in this situation would serve no purpose except to create unnecessary delay.

28. Therefore, UPRS seeks a determination that the automatic stay does not apply to the actions sought to be taken by UPRS because it is not exercising any right against property of LBHI.

### B. Alternatively, The Stay Should Be Lifted Pursuant to 11 U.S.C. § 362(d)(2)

29. If the Court determines that the automatic stay does in fact apply, in the alternative, UPRS requests relief from the automatic stay.

30. Section 362(d) of the Bankruptcy Code states that a Court may grant relief from the automatic stay as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay – (2)

7

>         with respect to a stay of an act against property under subsection (a) of this
>         section if –
>             (A) the debtor does not have an equity in such property; and
>             (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

31.     The approximately $5 million in unclaimed funds outstanding that UPRS has claimed are due LBI and they are an asset of LBI. The unclaimed funds outstanding are not due LBHI and for that reason they are not an asset of LBHI. Accordingly, LBHI does not have a security interest or ownership interest in this property and LBHI does not have any equity in the property.

32.     UPRS easily satisfies its burden of demonstrating LBHI's lack of equity in the property. Simply because the bankruptcy parent owns the stock of the subsidiary does not make the subsidiary's assets property of the estate. In re Mego International, Inc. 30 B.R. 479, 481 (S.D. N.Y. 1983); In re Beck Industries, 479 F.2d 410, 415 (2d Cir.), cert. denied, 414 U.S. 858 (1973) (ownership of the non-debtor subsidiary's stock is not the equivalent of ownership of the subsidiary's property or assets). A "parent company does not hold the assets of a subsidiary." In re Insilco Technologies, Inc., 351 B.R. 313, 321 (Bankr. D. Del. 2006). See also In re Murchison, 54 B.R. 721, 728 (Bankr. N.D. Tex. 1985) (title to corporate property is held by a corporation, and not by the shareholder.). A parent company which is the sole shareholder of a subsidiary has no direct interest in the assets and liabilities of that subsidiary because "[i]t is an axiom of corporate law that '[t]he corporation is an entity, distinct form its stockholders even if the subsidiary's stock is wholly owned by one person or corporation.'" In re Insilco Technologies, Inc., 351 B.R. at 321 (quoting Buechner v. Farbenfabriken Bayer Aktiengesellschaft, 154 A.2d 684, 686-87 (Del. Ch. 1959)). "As a general rule, property of the

8

[bankruptcy] estate includes the debtor's stock in a subsidiary but not the assets of the subsidiary." In re Guyana Development Corp., 168 B.R. 192 (Bankr. S.D. Tex. 1994).

33. Additionally, LBHI has the burden of establishing that the property is necessary for an "effective reorganization" of its estate. See 11 U.S.C. § 362(g)(2) (the party opposing a motion for relief from stay has the burden of proof with respect to all issues except on the issue of the debtor's equity in property). Indeed, as the Second Circuit has noted,

> [t]o demonstrate "necessity," [the debtor] had to show that "the property is essential for an effective reorganization that is in prospect" and that there is a "reasonable possibility of a successful reorganization within a reasonable time.

Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.), 101 F.3d 882, 886 (2d Cir. 1996) (citing United Sav. Ass'n of Texas v Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 376 (1988)); see also One Times Square Associates Limited Partnership v. Banque Nationale de Paris (In re One Times Square Associates Limited Partnership), 165 B.R. 773, 775 (S.D.N.Y. 1994).

34. UPRS is entitled to an order lifting the automatic stay because LBHI does not have any equity in the property and consequently it is not required for an effective reorganization.

35. In addition, the amount is relatively small given the magnitude of the Debtors' chapter 11 cases and their overall cash resources. For this reason, UPRS respectfully submits that LBHI cannot satisfy its burden of demonstrating that property is necessary to its reorganization. Accordingly, UPRS is entitled to relief from the automatic stay under section 362(d)(2) of the Bankruptcy Code.

### C. Alternatively, the Stay Should Be Lifted Pursuant to 11 U.S.C. § 362(d)(1) for Cause

34. Section 362(d) of the Bankruptcy Code states that a Court may grant relief from the automatic stay as follows:

9

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay – (1) for cause.

11 U.S.C. § 362(d)(1).

35.     The Second Circuit has set forth a number of factors that should be considered in a determination to lift the automatic stay for cause, including the impact of the stay on the parties and the balance of harms. In re Sonnax Industries, Inc., 907 F.2d 1280, 1286 (quoting In re Curtis, 40 B.R. 795 (Bankr. D. Utah 1984)).

36.     The determination of whether cause exists to lift the automatic stay is committed to the sound discretion of the Bankruptcy Court. Id.

37.     The movant has the initial burden of showing cause. Id. Once the moving party satisfies its initial burden, any party opposing stay relief has the ultimate burden of disproving the existence of cause. 11 U.S.C. § 362(g)(2).

38.     Whether cause exists for relief from the automatic stay must be determined on a case-by-case basis, taking into account the totality of the circumstances. In re Bogdanovich, 292 F.3d 104, 110 (2nd Cir. 2002); In re Enron Corp., 306 B.R. 465, 476 (Bankr. S.D.N.Y. 2004). Generally, affirmative harm to the movant from the continuance of the automatic stay constitutes grounds for relief from the stay. In re Boodrow, 192 B.R. 57, 60 (Bankr. S.D.N.Y. 1995), aff'd sub nom Capital Communications Federal Credit Union v. Boodrow, 197 B.R. 409 (N.D.N.Y. 1996), aff'd, 126 F.3d 43 (2nd Cir. 1997), cert. denied, 522 U.S. 1117 (1998). The Court should also assess the impact of the stay to all parties and balance the harms among them. Bogdanovich, 292 F.3d at 110. Neither LBHI nor LBI can show any harm. After UPRS is paid the 10% fee, approximately $500,000 and the $500,000 outstanding balance due UPRS, LBI will recover approximately $4 million.

10

39.     Here the balance of the harms clearly weighs in favor of UPRS.

40.     As set forth above, UPRS has longstanding and ongoing agreements with LBI to identify and recover unclaimed funds belonging to LBI. Pursuant to four LBI Agreements and LBI authorizations, UPRS is currently in the process of recovering a significant claim of approximately $5 million in unclaimed funds held by the NYS OUF on behalf of LBI. UPRS has spent many years and thousands of dollars to develop proprietary software, databases and research to identify and recover unclaimed funds that are outstanding for LBI. UPRS, in demonstrating and acting in good faith, continues to provide services under the Agreements subsequent to the LBHI Petition Date.

41.     The Director of the NYS OUF has requested an order from the Bankruptcy Court to pay LBI the approximately $5 million in unclaimed funds outstanding. The impact of the Director's position has been to thwart UPRS's ability to (1) recover approximately $5 million in unclaimed funds for LBI and (2) to receive a 10% fee, approximately $500,000, to which UPRS is entitled. Congress cannot have intended that a non-debtor would be able to appropriate all of the benefits of the automatic stay without itself filing a bankruptcy petition. If the Court finds itself constrained to find that the stay does apply, the circumstances described above easily constitute "cause" to modify the stay under § 362(d)(1).

### D. Request For Allowance And Payment Of Services Provided Postpetition

42.     Pursuant to the Agreements and authorizations, UPRS is currently in the process of recovering approximately $5 million in unclaimed funds held by the NYS OUF on behalf of LBI. UPRS hereby moves for allowance and payment of postpetition administrative expense claim pursuant to Section 503(b)(1)(A) of the Bankruptcy Code for UPRS's 10% fee, approximately $500,000, for the recovery of the unclaimed funds held by the NYS OUF on behalf of LBI. UPRS

08-13555-mg    Doc 3345    Filed 04/13/09    Entered 04/13/09 15:48:24    Main Document
Pg 12 of 15

continues to provide services pursuant to the Agreements that are "actual, necessary costs and expenses of preserving [LBI's] . . . estate." 11 U.S.C. § 503(b)(1)(A).

43.  Courts have allowed payment for postpetition performance rendered on a contract. In re ICS Cybernetics, Inc. 111 B.R. 32, 37 (Bankr. N.D.N.Y. 1989). Equally important, numerous other service companies are being paid for postpetition performance rendered.

44.  The Court should allow UPRS to recoup its 10% fee, approximately $500,000, and the $500,000 outstanding due UPRS, from the unclaimed funds recovered. After UPRS is paid the 10% fee of approximately $500,000 and the $500,000 outstanding balance due UPRS, LBI will recover approximately $4 million.

45.  Although the Bankruptcy Code does not mention or define the term "recoupment," recoupment is an equitable doctrine that has long been applied in the bankruptcy context. In re Adelphia Communications Corp., 2006 WL 1559437 , *4 (S.D.N.Y. June 7, 2006); Mercy Hospital of Watertown v. New York State Dept. of Social Services, 171 B.R. 490, 494 (N.D.N.Y. 1999); In re Holford, 896 F.2d 176, 179 (5th Cir. 1990); In re Monongahela Rye Liquors, Inc. 141 F.2d 864, 869 (3d Cir. 1994); In re Centergas, Inc., 172 B.R. 844, 848 (Bankr. N.D. Tex. 1994). For recoupment to apply, the claims must arise out of "the same transaction or set of transactions." Malinowski v. New York State Dept. of Labor (In re Malinowski), 156 F.3d 131, 133 (2d Cir. 1998). The doctrine of recoupment is flexible and has been applied in many situations. See, e.g., In re Heafitz, 85 B.R. 274, 279-80 (Bankr. S.D.N.Y. 1988); In re 105 East Second Street Associates, 207 B.R. 64, 69 (Bankr. S.D.N.Y. 1997); In re Yonkers Hamilton Sanitarium, Inc., 22 B.R. 427, 432-33 (Bankr. S.D.N.Y. 1982), aff'd, 34 B.R. 385 (S.D.N.Y. 1983); In re Clowards, Inc., 42 B.R. 627 (Bankr. D. Idaho 1984).

12

46.  This is precisely the type of situation for which the equitable doctrine of recoupment was meant to apply. There is one set of transactions here – recovery of unclaimed funds – and UPRS should be allowed to recoup its 10% fee and the balance outstanding from the proceeds of the unclaimed funds recovery.

47.  UPRS respectfully requests entry of the annexed proposed order modifying the automatic stay in effect in LHBI's bankruptcy case and LBI's proceeding under SIPA pursuant to Bankruptcy Code Section 362(d), to permit UPRS to recover from the NYS OUF approximately $5 million unclaimed funds due LBI.

48.  UPRS also requests allowance and payment of a postpetition administrative expense claim pursuant to 11 U.S.C. § 503(b) for the amount of its 10% fee due, approximately $500,000 and allowance and payment to recoup $500,000 outstanding balance due UPRS from the unclaimed funds recovered.

49.  UPRS also respectfully requests that this Court direct that relief from the automatic stay be effective immediately upon entry of an order granting this Motion and that the 10-day stay, provided under Rule 4001(a)(3), of orders granting motion for relief from the automatic stay shall not apply.

## VII. NOTICE

50.  UPRS is serving this Motion by ECF upon all parties that have filed papers in the Debtors' cases by ECF. UPRS is also causing this Motion to be served upon LHBI, LBI, bankruptcy counsel for LBHI, counsel for the Trustee, counsel for Barclays, counsel for the Official Committee of Unsecured Creditors and the Office of the United States Trustee.

51.  No previous application for the requested relief has been made to this or any other Court.

## VIII. WAIVER OF MEMORANDUM OF LAW

52.     This Motion sets forth the applicable authority upon which it relies herein and does not raise any novel issues of law. Accordingly, UPRS respectfully requests that the Court waive the requirement contained in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that a separate memorandum of law be submitted in support of the Motion.

## IX. RESERVATION OF RIGHTS

53.     UPRS expressly reserves all rights and actions under the LBI Agreements, LBI authorizations and applicable law, including (i) the right to seek payment on an administrative expense priority basis for services rendered postpetition and (ii) the right to file a proof of claim for amounts owed to UPRS for services rendered prior to the commencement of LBHI's petition and LBI's SIPA proceeding.

## X. CONCLUSION

In conclusion, the actions UPRS requests the authority herein to take and the relief sought are not subject to the automatic stay and, alternatively, even if they are subject to the automatic stay, relief from the stay is warranted pursuant to sections 362(d)(1) and/or 362(d)(2) of the Bankruptcy Code.

WHEREFORE, UPRS respectfully requests that the Court enter an order (i) compelling payment of all unclaimed funds outstanding in the name of LBI, its predecessors and its subsidiaries held by the NYS Comptroller NYS OUF, approximately $5 million; (ii) declaring that the automatic stay does not apply to the actions sought to be taken by UPRS, or, alternatively, providing relief from the automatic stay; (iii) allowing payment of services provided postpetition of approximately $500,000; and (iv) other related relief, including allowance and payment of the

$500,000; outstanding balance due UPRS.

Dated: New York, New York
April 13, 2009

          **PAUL BATISTA, P.C.**
          *Attorney for Unclaimed Property Recovery Service, Inc.*

          /s/ Paul A. Batista
          Paul Batista (PB8717)
          26 Broadway – Suite 1900
          New York, New York 10004
          Telephone: (212) 980-0070
          Facsimile: (212) 344-7677
          E-mail: Batista007@aol.com