WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------x
                                            :
In re                                       :   Chapter 11 Case No.
                                            :
LEHMAN BROTHERS HOLDINGS INC., et al.,      :   08-13555 (JMP)
                                            :
                        Debtors.            :   (Jointly Administered)
                                            :
                                            :
------------------------------------------------------------x
```

**DEBTORS' OBJECTION TO
MOTION OF WWK HAWAII-WAIKAPUNA, LLC, WWK HAWAII-MOAULA,
LLC, WWK HAWAII-HONU'APO, LLC, WWK HAWAII-LITTLE HONU'APO,
LLC, WWK HAWAII-HOUSE PARCEL, LLC, WWK HAWAII-HOUSE
PARCEL 2, LLC, AND WWK HAWAII-NAALEHU PARCEL 1, LLC FOR
ORDER (I) SETTING PROMPT DATE FOR ASSUMPTION OR REJECTION OF
PROJECT LOAN; (II) UPON REJECTION, GRANTING RELIEF FROM THE
AUTOMATIC STAY; AND (III) GRANTING RELATED RELIEF**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors and debtors in possession (together, the

"Debtors" and, collectively with their non-debtor affiliates, "Lehman"), respectively

submit this objection (this "Objection") in opposition to the Motion of WWK Hawaii-

Waikapuna, LLC, WWK Hawaii-Moaula, LLC, WWK Hawaii-Honu'apo, LLC, WWK Hawaii-Little Honu'apo, LLC, WWK Hawaii-House Parcel, LLC, WWK Hawaii-House Parcel 2, LLC, and WWK Hawaii-Naalehu Parcel 1, LLC (the "Movants") for Order (I) Setting Prompt Date for Assumption or Rejection of Project Loan; (II) Upon Rejection, Granting Relief from the Automatic Stay; and (III) Granting Related Relief, dated March 20, 2009 (the "Motion") [Docket No. 3182]:

**Preliminary Statement**

1. Only seven months into the largest and most complex chapter 11 cases in history, the Movants are attempting to force LBHI to make an early decision to assume or reject one of hundreds of their loan agreements. Specifically, the Motion relates to that certain Loan Agreement, dated as of August 14, 2006, among LBHI, as lender and WWK Hawaii-Waikapuna, LLC, WWK Hawaii-Moaula, LLC, WWK Hawaii-Honu'apo, LLC, WWK Hawaii-Little Honu'apo, LLC, WWK Hawaii-Church, LLC (collectively, the "Borrowers"), as borrowers (the "Loan Agreement"). The Movants' request fails as a matter of fact and law. The controlling case law could not be clearer: a debtor is entitled to defer its decision to assume or reject an executory contract until plan confirmation; provided, however, that upon a showing of compelling circumstances and significant prejudice to a contract counterparty, the time to assume or reject may be shortened. The Movants have presented no compelling circumstances or significant prejudice that should result in LBHI being compelled to immediately assume or reject the Loan Agreement.

2. The additional relief requested by the Movants is equally objectionable and, in fact, without any basis in law. As collateral for the Loan

Agreement, LBHI has valid and perfected first lien deeds of trust and security interests in certain properties owned by the Borrowers (the "Liens"), including 5,700 acres of land on the Big Island of Hawaii (the "Project"). Without any statutory or decisional authority whatsoever, the Movants seek relief from the automatic stay extant under section 362 of title 11 of the United States Code (the "Bankruptcy Code") to authorize the Movants to obtain alternative financing upon terms that would prime and therefore subordinate LBHI's Liens. Firstly, given that LBHI cannot be compelled to make a premature decision regarding assumption or rejection of the Loan Agreement, it is inappropriate to address the Movants' request for stay relief, which may or may not be relevant after LBHI has had sufficient opportunity to review the Loan Agreement and reach a decision to assume or reject within the context of LBHI's overall business. Most importantly, however, the Movants are not debtors in a chapter 11 case, and there is no judicial process to non-consensually subordinate the rights of LBHI's interests.

3.  Moreover, the Movants have failed to demonstrate the requisite cause for relief from the automatic stay. The Movants point to no irreparable harm or injury that will occur if the stay is not modified. Conversely, the lifting of the automatic stay for these borrowers under this one loan will inevitably lead to borrowers under other loan agreements seeking to lift the stay. Responding to stay relief motions in this Court and defending against cases in other courts, would further distract the Debtors from their efforts to administer their cases for the benefit of all creditors. Certainly the automatic stay is meant to protect the Debtor in precisely this situation. The balance of harms and interference with the Debtors' bankruptcy case that will result from lifting the automatic stay demonstrate that the stay should remain in place.

**Background**

4. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

7. On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

8. On August 14, 2006, LBHI and certain of the Borrowers entered into the Loan Agreement, pursuant to which LBHI agreed to provide up to $105 million to fund the development of approximately 5,700 acres of land on the Big Island of

Hawaii.  Up to approximately $62 million of future funding obligations remain under the Loan Agreement.  The Loan Agreement is secured by LBHI's Liens on the property of the Borrowers, including the Project.

**The Movants Have Not Demonstrated Cause to Compel
LBHI to Immediately Assume or Reject the Loan Agreement**

9.    The Movants have presented no valid reason why LBHI should be compelled to immediately assume or reject the Loan Agreement.  In support of the Motion, the Movants assert they will suffer "several specific harms" if LBHI does not assume or reject the Loan Agreement.  Motion, ¶ 28.  Specifically, the Movants assert that "the Project risks losing its own employees," that contractors "may quit" and that it is "conceivable" that the forthcoming 2010 Community Development Plan in the county of Hawaii could impose restrictions on the Project.  Id.  These speculations do not establish cause sufficient to force LBHI to make a hasty decision as to whether to assume or reject the Loan Agreement.

10.    Pursuant to section 365(d)(2) of the Bankruptcy Code, a chapter 11 debtor has until confirmation of a plan to decide whether to assume or reject an executory contract.  As Judge Gonzalez has aptly stated: "[i]t has been observed that it is the clear policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of a bankruptcy petition, continuing until the confirmation of a plan, in which to assume or reject an executory contract." In re Enron Corp., 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002).

11.    A movant must establish a compelling reason to shorten the debtor's time for assumption or rejection.  Theatre Holding Corp. v. Mauro, 681 F.2d

102, 105 (2d Cir. 1983); South St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 761 (2d Cir. 1996) (factors include: the nature of interests at stake, the balance of harm to the litigants, the good to be achieved, the safeguards afforded the litigants, the complexity of the case, and the number of contracts the debtor must evaluate); Enron, 279 B.R. at 703 (using same factors). See also In re Republic Tech. Int'l, LLC, 267 B.R. 548, 554 (Bankr. N.D. Ohio 2001) (holding that in a complex case the movant faces "a very high burden of proof to justify requiring the [d]ebtors to consider its leases outside of a comprehensive business plan").

12. The law in the Second Circuit is clear that, despite the flexibility provided to the Court by section 365(d)(2), a debtor is nonetheless entitled to a "reasonable" amount of time to decide whether to assume or reject an executory contract. Theatre Holding, 681 F.2d at 105 ("the trustee or debtor in reorganization is allowed a reasonable time to decide whether to assume or reject"). An absolute or fixed timeframe for reasonableness has not been established. In re Taber Farm Assocs., 115 B.R. 455, 457 (Bankr. S.D.N.Y. 1990) ("There is no fixed time limit under the Bankruptcy Code as to what constitutes a reasonable time within which a debtor must either assume or reject an executory contract"). Instead, reasonableness is left to the bankruptcy court's discretion to be determined on a case-by-case basis. Theatre Holding, 681 F.2d at 105 ("What constitutes a reasonable time is left to the bankruptcy court's discretion in the light of the circumstances in each case").

13. It is too early to compel LBHI to assume or reject the Loan Agreement. While much has happened in the mere seven months these cases have been pending, these remain the largest and most complex chapter 11 cases in history. LBHI

simply has not been afforded the reasonable time necessary to stabilize its estates, review and analyze all of its assets and begin to formulate its plan, as required by applicable case law. The Debtors have over $613 billion of debt and over 100,000 creditors. The size and complexity of these cases is evident from the fact that there have been over 3,000 docket entries in the first six months since the petitions were filed – an average of more than 15 each day, including Saturdays, Sundays and holidays. This Court has witnessed the countless matters that require the attention of the Debtors' management on a daily basis. The Movants have failed to provide a sufficient basis for compelling LBHI to assume or reject the Loan Agreement at this stage of its chapter 11 case.

14. Moreover, these factors have to be weighed against the Movants' request. The parade of horribles identified by the Movants is comprised of mere speculation. None of the circumstances identified by the Movants has actually occurred; indeed, they may never occur. The Movants do not cite to a single fact that gives rise to cause to compel the Debtors to make an early decision.

15. LBHI is currently in the process of analyzing the economic merits of the Loan Agreement in the context of the scores of other executory contracts to which it is party. The Loan Agreement, however, is merely one of over a million complex agreements entered into by the Debtors, each of which has its own set of unique facts and circumstances. That the Movants allege they face the "prospect" of harm projected to occur at some indeterminable date in the future, if at all, does not justify compelling LBHI to immediately assume or reject the Loan Agreement. See Motion, ¶ 28. By contrast, allowing the Movants to compel immediate assumption or rejection will set a troubling precedent by potentially resulting in a flood of other counterparties

overwhelming the Debtors with motions to compel assumption or rejection of their contracts and thereby placing the Debtors in an untenable position of either expending huge sums of cash to assume these numerous contracts or face the loss of financially advantageous contracts by rejection. Indeed, even in situations where the non-debtor counterparty is currently being prejudiced, courts have not forced immediate rejection or assumption. See, e.g., Hiser v. Blue Cross of Greater Phila. (In re St. Mary Hospital), 89 B.R. 503, 513 (Bankr. E.D. Pa. 1988) (denying motion to compel debtor's assumption or rejection despite debtor's failure to make payments to non-debtor counterparty pursuant to contract).

16. In In re Dana Corp. this Court declined to "shorten the time that Congress intended the Debtors to have to make [its] crucial decisions" regarding the assumption or rejection of its executory contracts. 350 B.R. 144, 149 (Bankr. S.D.N.Y. 2006) The Court based its ruling on the fact that the debtors were involved in a "large and complex" Chapter 11 reorganization, purchased goods and services from approximately 5,000 different suppliers, and, like the Motion of the Movants, the motion was filed only six months after the bankruptcy cases commenced. Id. at 148.

17. Absent the Movants demonstrating compelling circumstances and significant prejudice, the period during which LBHI is entitled to a reasonable amount of time to decide whether to assume or reject an executory contract should not be reduced. This results from the courts' recognition that premature rejection of a contract can harm the estate by causing the loss of an important contractual relationship for the entire enterprise. On the other hand, premature assumption and the concomitant curing of defaults may result in the payment of prepetition unsecured claims (to the exclusion of

other unsecured claims).

18. Given the size and complexity of these cases, coupled with the fact that these cases are only seven months old and have been extremely active, it is premature to compel LBHI to assume or reject the Loan Agreement. In light of this, as well as the fact that the Movants are not currently being unduly prejudiced in any manner, there is no factual or legal justification to compel LBHI to assume or reject the Loan Agreement at this time.

### The Movants' Request to Lift the Automatic Stay Must be Denied; The Relief the Movants Seek Goes Beyond Lifting the Automatic Stay

19. The Movants additionally request that the Court grant relief from the automatic stay extant under section 362 of the Bankruptcy Code to authorize the Movants to seek equitable relief in state court, to among other things, obtain alternative financing that would grant an alternative lender a lien senior to LBHI's Liens. The Movants also request the additional broad relief of authorization to "promptly pursue all of their rights and remedies" against LBHI, with the sole exception of a money damages claim. Motion, ¶ 32. In effect, the Movants want to force a non-consensual modification of the Loan Agreement. As discussed above, LBHI's assumption or rejection of the Loan Agreement is premature. It is inappropriate to address relief that may or may not be relevant after LBHI has had sufficient opportunity to review the Loan Agreement and reach a decision to assume or reject within the context of LBHI's overall business. Notwithstanding the untimeliness of the Movants' request for stay relief to prime LBHI's Liens, conspicuously absent from the Motion is citation to any legal authority supporting such relief. This is not surprising because there is simply no precedent to sustain this

request. Moreover, the Movants have failed to demonstrate cause for relief from the automatic stay.

20. Section 362(a)(1) of the Bankruptcy Code provides, in relevant part, that a bankruptcy petition

> operates as a stay, applicable to all entities, of … the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [the Bankruptcy Code], or to recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code].

11 U.S.C. § 362(a)(1).

21. The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." Mid-Atlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot., 474 U.S. 494, 503 (1986). It provides a debtor with a "'breathing spell' from the collection process." See, e.g., Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc., 157 F.3d 169, 172 (2d Cir. 1998). "The principal purpose of the automatic stay of acts against property of the estate … is to preserve that property for distribution or use in reorganization of the debtor." Official Creditors' Comm. of Unsecured Creditors v. PSS S.S. Co., Inc. (In re Prudential Lines, Inc.), 114 B.R. 27, 29 (Bankr. S.D.N.Y. 1989). The automatic stay "is necessary to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization." Fidelity Mortgage Inv. v. Camelia Builders, Inc., 550 F.2d 47, 53 (2d Cir. 1976). Indeed, "[t]he automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy

court for a single organized proceeding." In re AP Indus., 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990). Acts precluded by the automatic stay include postpetition termination of a prepetition executory contract (termination provisions contained therein notwithstanding). See, e.g., In re 48th Street Steakhouse, Inc., 835 F.3d 427 (2d Cir. 1987). Accord In re Computer Communications, Inc., 824 F.2d 725, 728 (9th Cir. 1987).

22. Section 362(d) of the Bankruptcy Code provides that a party may be entitled to relief from the automatic stay only under certain circumstances. 11 U.S.C. § 362(d); In re Éclair Bakery Ltd., 255 B.R. 121, 132 (Bankr. S.D.N.Y. 2000). Specifically, the pertinent portion of section 362(d) provides:

> (d) On a grant of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d).

23. The party seeking to lift or modify the automatic stay bears the initial burden to show cause why the stay should be lifted. Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1285 (2d Cir. 1990) ("If the movant fails to make an initial showing of cause … the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection"). As demonstrated below, the Movants have not carried their burden of establishing "cause" under section 362(d)(1) for any stay relief, let alone the potentially expansive stay relief it requests.

24. Although the term "cause" is not defined in the Bankruptcy Code, the Court in the seminal Second Circuit case, In re Sonnax Industries, Inc. set forth twelve factors that may constitute "cause" for the purposes of determining whether the automatic stay should be lifted:

(1) whether relief would result in a partial or complete resolution of the issues;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether Movants' success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

Sonnax, 907 F.2d at 1286.

25. Not all of these factors are relevant to every instance in which relief from the stay is sought. Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999). A court need not assign equal weight to each factor. In re Keene Corporation, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994). It is well established that the party seeking to lift or modify the automatic stay bears the initial burden to show cause why the stay should be lifted. Sonnax, 907 F.2d at 1285. "Conclusory statements that a continuance of the stay will cause irreparable harm or that injury will occur if relief is

denied are insufficient to establish cause. In re Texaco Inc., 81 B.R. 820, 829 (Bankr. S.D.N.Y. 1988) (citing In re Penn Dixie, 6 B.R. 832 (Bankr. S.D.N.Y. 1980)). "If the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection". Sonnax, 907 F.2d at 1285. A review of the factors that are relevant to this case clearly demonstrates that the automatic stay should remain in place.

### A. Lifting the Stay to Allow the Movants to Seek Relief In Another Forum Will Interfere With LBHI's Bankruptcy Case

26. The Sonnax factor most salient to the instant case is the second factor, whether lifting the stay to allow the Movants to exercise remedies would interfere with the Debtors' bankruptcy cases. Indeed, "[e]ven slight interference with the administration [of a chapter 11 case] may be enough to preclude relief in the absence of a commensurate benefit." In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984). Lifting the stay to allow the Movants to pursue "all of their rights and remedies" and modify the Agreement clearly portends an objective of subordinating LBHI's rights to its Liens and otherwise modifying the agreement to the Debtors' disadvantage. Success on the part of the Movants will reduce the value of the Debtors' estates.

27. At a minimum, mounting a defense against the Movants' efforts in state court will be at great cost in time and money to the estates. The Debtors' cases, the largest chapter 11 cases in history, are only seven months old and involve issues that require the full attention of the employees and professionals rendering services on the Debtors' behalf. Permitting the Movants' to proceed in state court would encourage LBHI's other claimants, who may argue they are similarly situated, to seek permission

from this Court to commence state or federal court litigations. Responding to stay relief motions in this Court, and defending against cases in other courts, would further distract the Debtors from their efforts to administer their cases for the benefit of all creditors. Courts have regularly denied requests to lift the automatic stay in such instances. See, e.g., Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.), 40 B.R. 219, 223-25 (S.D.N.Y. 1984) (affirming bankruptcy court finding that lifting the automatic stay would divert Debtors' and Debtors' employees' attention away from the chapter 11 case and affirming bankruptcy court's denial of motion for relief from the automatic stay). This interference with the administration of these cases weighs strongly against lifting the automatic stay.

### B. The Interests of Judicial Economy Weigh Against Stay Relief

28. The Movants seek stay relief to liquidate their alleged claims for damages, as well as to pursue any of their rights and remedies against LBHI. Any such claims are disputed, unliquidated, prepetition claims and will be more efficiently dealt with as part of the Court's claims resolution process. The Movants will have the opportunity to file a proof of claim in LBHI's case and will be given similar treatment to all other similarly situated unsecured claimants. The amount of time and resources necessary to litigate any state court action from its present procedural stage to a final outcome would interfere with LBHI's case, and would not bring the Movants significantly closer to the liquidation of their alleged claims against LBHI. To divert management attention from the chapter 11 cases at this time would serve neither judicial economy nor the purposes of section 362 of the Bankruptcy Code.

29. While the Movants argue that the Hawaiian state courts are better

positioned than this Court to apply the issues surrounding the Loan Agreement, without any clear articulation by the Movants as to the judicial process by which it intends to obtain additional credit and prime LBHI's Liens or what type of other remedies it plans to pursue, too much uncertainty exists as to whether such issues will result in only a waste of the Hawaiian court's judicial resources, or if the issues would need to be litigated before the bankruptcy court. As a result, by lifting the stay the Court may simply be enabling the parties to waste time and money on state court litigation with no ascertainable purpose. Accordingly, application of the tenth <u>Sonnax</u> Factor weighs against granting the relief sought by the Movants.

### C. The Impact of the Stay on the Parties and The Balance of Harms Weigh Against Stay Relief

30. While the Movants make speculative allegations of harm that <u>may</u> befall them, they make no mention of the twelfth <u>Sonnax</u> factor, the balance of harms vis-à-vis LBHI upon the granting of relief from of the automatic stay. <u>See</u>, <u>e.g.</u>, Motion, ¶¶ 22-29. Indeed, the automatic stay should not be lifted because the balance of the harms clearly tips in favor of LBHI.

31. The Movants assert that "the Project risks losing its own employees," that contractors "may quit" and that it is "conceivable" that the forthcoming 2010 Community Development Plan in the county of Hawaii could impose restrictions on the Project. Motion, ¶ 28. These alleged "harms" described by the Movants are only projected harms that may or may not occur. In response to the mere potential for harm, the Movants seek relief with unspecified bounds, aiming to pursue "all of their rights and remedies" against LBHI. Motion, ¶ 32. This Court has rejected such broad requests for

relief in these cases by denying the Motion of the SCC Entities for Relief from the automatic stay. In re Lehman Brothers Holdings, Inc. Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. November 21, 2008) [Docket No. 1647]. By contrast, lifting the automatic stay to allow the Movants to exercise remedies would immediately harm LBHI and deprive LBHI of one of the primary intended benefits of Chapter 11, a breathing spell to permit a debtor to maximize the value of its properties by making rational choices regarding their disposition.

32. In sum, the Movants rely almost entirely on grounds for cause that are merely allegations that fail to meet the Sonnax factors that they cite. Mere assertions of irreparable harm or that injury may occur are insufficient to establish cause. In re Texaco Inc., 81 B.R. at 829. Consequently, the requested stay relief is not appropriate and should not be granted.

### D. The Balance of the Sonnax Factors Weigh Against Stay Relief

33. Applying the other Sonnax factors similarly supports the conclusion that stay relief is unwarranted, for example, (i) whether the other proceeding involves a debtor as a fiduciary; (ii) whether the Debtors' insurer has assumed full responsibility for defending; (iii) whether the action primarily involves third parties; (iv) whether the litigation in the other forum will prejudice the interest of other creditors; and (v) whether the parties are ready for trial. Each of these factors unambiguously weighs in favor of the Debtors. Beyond the Movants' requests to prime LBHI's Liens, the Movants do not specify the exact rights and remedies under which it will seek equitable relief. Still, under any such proceeding the Debtors are unlikely to be involved as a fiduciary. The current situation also does not indicate that an insurer will take over

litigation on behalf of LBHI, and, therefore, the estate certainly will be affected by being forced to waste valuable resources on a state court litigation that will ultimately be a general unsecured claim. Further, unlike in more frequent circumstances where stay relief is sought to proceed against a third party, here the stay relief sought would directly affect the Debtors and their estates. Additionally, by subordinating LBHI's Liens and reducing the value of the estate, any litigation in another forum will also clearly prejudice the interests of other creditors in this case. Lastly, as no litigation has even commenced the parties are far from ready for trial.

34. There are at least three other Sonnax factors that are not relevant here at all: (i) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action, (ii) whether the judgment claim sought in the other action is subject to equitable subordination, and (iii) whether the Movants' success in any litigation would result in an avoidable judicial lien. In sum, the Movants rely almost entirely on grounds for cause that are merely allegations that fail to meet the Sonnax factors. Consequently, the requested stay relief is not appropriate and should not be granted.

### The Movants Cannot Subordinate LBHI's Liens

35. To the extent the Court finds that cause exists to modify the automatic stay, something that, as noted above, LBHI disputes, the Movants' request for authorization to seek the subordination of LBHI's Liens in the state courts of Hawaii similarly lacks factual or legal foundation. The Movants glaringly fail to cite or discuss any cause of action, statute, rule, precedent or procedure by which a movant can non-consensually prime the liens of a defaulting lender and allow a new lender a senior lien.

This is because the bankruptcy process is the only route by which a borrower can obtain such relief.[1] As the Movants are not debtors in a chapter 11 case, there simply is no process by which the relative rights and liens of the Movants' lenders can be non-consensually subordinated in favor of new lenders, and the Movants fail to cite any such process.

36. For all of the foregoing reasons and authorities, as well as those to be advanced at oral argument, the Debtors respectfully request that the Court deny the Motion.

---

[1] Section 364 allows a debtor-in-possession to obtain additional credit and incur superpriority debt with a lien senior to any existing lien on property but does not apply here because the Movants are not debtors-in possession.

WHEREFORE the Debtors respectfully request that the Court deny the relief requested and grant the Debtors such other and further relief as is just.

Dated: April 17, 2009
      New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession