**LATHAM & WATKINS LLP**
Michael J. Riela (MR-7829)
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: michael.riela@lw.com

Counsel for Aurora Loan Services LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:                                                         :
                                                               :
LEHMAN BROTHERS HOLDINGS, INC., *et al.*    :    Chapter 11
                                                               :
                                                               :    Case No. 08-13555 (JMP)
                        Debtors.                      :
                                                               :    (Jointly Administered)
---------------------------------------------------------------x

**RESPONSE OF AURORA LOAN SERVICES LLC TO MIDCOUNTRY
BANK'S MOTION FOR ENTRY OF AN ORDER (I) GRANTING RELIEF
FROM THE AUTOMATIC STAY, (II) WAIVING THE 10-DAY STAY
UNDER FED R. BANKR. P. 4000(a)(3), AND (III) GRANTING RELATED RELIEF,
AND CROSS-MOTION FOR MANDATORY OR DISCRETIONARY ABSTENTION**

Aurora Loan Services LLC ("Aurora"), by and through its counsel, hereby files this

Response to the *Motion For Entry of an Order (I) Granting Relief From the Automatic Stay, (II)*

*Waiving the 10-Day Stay Under Fed R. Bankr. P. 4000(A)(3), and (III) Granting Related Relief*

(the "Motion"), filed by MidCountry Bank ("MidCountry"). In support of this Response, Aurora

respectfully states as follows:

**BACKGROUND**

1. The Motion arises out of a lawsuit that MidCountry commenced against Aurora in

the District Court for Douglas County, in the State of Colorado (the "Colorado State Court"),

asserting causes of action for breach of contract, breach of fiduciary duty, accounting and

NY\1522301.1

replevin.  *See* Motion Ex. B pt. 2.  At issue in the Colorado State Court litigation is the interpretation of that certain Servicing Agreement, dated as of July 30, 2007 (the "Agreement"), among MidCountry as "Owner," Aurora as "Servicer," and Lehman Capital (a division of debtor Lehman Brothers Holdings Inc.) ("LBHI") as "Servicing Rights Owner."

2. The Agreement defines the relative rights and obligations of each of the three parties relating to the ownership and servicing of slightly more than 50 mortgage loans. MidCountry owns the mortgage loans in question (having purchased them from LBHI on a "servicing retained" basis, meaning that LBHI retained the right to designate the mortgage loan servicer).  Aurora is the servicer of those loans.  LBHI owns the mortgage servicing rights, which means that LBHI has the right to determine the party that services the mortgage loans and has the right to receive a monthly fee under the Agreement.  Upon the termination of Aurora's responsibilities and duties under the Agreement (whether "for cause" or "without cause," MidCountry may appoint a successor servicer, (*with the consent of LBHI*, such consent not to be unreasonably withheld).  *See* Agreement § 10.01.

3. MidCountry asserts that Aurora breached its obligations under the Agreement, and consequently purported to terminate Aurora as the servicer "for cause," by letter dated February 6, 2009.  Weeks later, MidCountry commenced the lawsuit that is now pending in the Colorado State Court, seeking damages, an accounting, and immediate possession of the mortgage loans.  On March 27, 2009, Aurora moved to dismiss the lawsuit on the grounds that MidCountry has failed to join an indispensable party – LBHI – and that LBHI is not susceptible to joinder as a result of these chapter 11 cases.  A copy of Aurora's motion to dismiss is annexed hereto as Exhibit A.  MidCountry's response to the motion to dismiss is annexed hereto as Exhibit B.

2

NY\1522301.1

4. On April 1, 2009, MidCountry filed the instant Motion in this Court. MidCountry requests *not only* relief from the automatic stay to permit MidCountry to join LBHI as a party in the Colorado State Court litigation, but *also* requests the following relief that inappropriately goes far beyond the relief sought in a "typical" lift-stay motion:

- Entry of an order allowing the termination of the Agreement as to LBHI *nunc pro tunc* to the date that MidCountry issued a notice of termination.

- A determination that LBHI is "deemed" to have given its consent to MidCountry's preferred successor servicer.

- A determination that section 362 of the Bankruptcy Code does not prevent recovery by MidCountry of its loan files from Aurora.

## RESPONSE

5. Aurora understands that LBHI will object to the Motion, including MidCountry's request to join LBHI as a party in the Colorado State Court litigation and its request to obtain possession of documents in which LBHI's estate has an interest. Aurora will not address those requests by MidCountry, except to note that MidCountry has utterly failed in its Motion to even cite *In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2d Cir. 1990), let alone justify its requested relief under the factors cited therein.[1] *See id.* at 1285 ("If the movant fails to make an initial showing of cause … the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.").

---

[1] The *Sonnax* factors are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *See id.* at 1286. None of the *Sonnax* factors are analyzed in the Motion.

3

NY\1522301.1

6. Aurora does respond to the other relief sought in the Motion, as it goes well beyond the relief that is typically requested in a lift-stay motion. Indeed, MidCountry at least appears to be requesting that this Court actually rule on the merits of the lawsuit that is presently before the Colorado State Court. For example, for this Court to enter an order allowing the termination of the Agreement as to LBHI *nunc pro tunc* to February 2009 (when MidCountry sent the letter to Aurora purporting to terminate the Agreement "for cause"), it would have to determine that Aurora breached the Agreement and that MidCountry consequently is entitled terminate the Agreement "for cause." MidCountry also seeks a determination that LBHI is "deemed" to have given its consent to the transfer of servicing of the mortgage loans to another party (which appears to be a request that LBHI forfeit its servicing rights and the stream of payments to which it is entitled thereunder). Moreover, while its pleading is no model of clarity, MidCountry also appears to be asking this Court to enter an order directing Aurora to deliver the mortgage loan files to MidCountry or its designee. To do each of these things, this Court would have to make a determination that MidCountry has a valid legal basis under the Agreement for that relief.

7. Even if this Court were to have subject matter jurisdiction over the dispute between MidCountry and Aurora on the theory that it is "related to" LBHI's chapter 11 proceedings, *see* 28 U.S.C. § 1334(b), MidCountry cannot request the recovery of money or property from Aurora or LBHI (or a declaratory judgment that it is entitled to that money or property) through a simple motion. Rather, such relief may be obtained only through an

adversary proceeding, which MidCountry did not bother to commence. *See* Federal Rule of Bankruptcy Procedure 7001(1), (9).[2]

8. Moreover, MidCountry has failed to produce a scintilla of evidence to this Court that it is entitled to terminate the Agreement for cause or that LBHI should forfeit its mortgage servicing rights. Thus, this Court is in no position to grant the broad relief MidCountry seeks in the Motion.

9. Even if MidCountry had sought its requested relief in a procedurally proper way (which it did not) and had produced evidence in support of its allegations (which it did not), MidCountry's causes of action in the Colorado State Court would constitute a non-core proceeding. *See* 28 U.S.C. § 157(b).[3] A non-core proceeding (like this one) does not invoke a substantive right created by the Bankruptcy Code and could exist outside of bankruptcy. Causes of action that do not involve substantive rights provided under the Bankruptcy Code or proceedings that could arise only in the context of a bankruptcy proceeding, but involve only state law breach of contract claims, are not core in nature. *See, e.g.*, *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1102 (2d Cir. 1993) (holding that a breach of contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, was non-core); *Beard v. Braunstein*, 914 F.2d 434, 444 (3d Cir. 1990).[4] Here, the breach of pre-petition contract action and the replevin action are being

---

[2] Federal Rule of Bankruptcy Procedure 7001(1) provides that (subject to certain exceptions not applicable here), a proceeding to recover money or property is an adversary proceeding. Federal Rule of Bankruptcy Procedure 7001(9) provides that a proceeding to obtain a declaratory judgment relating to the foregoing is also an adversary proceeding.

[3] 28 U.S.C. § 157(b) provides a non-exclusive list of 15 "core" proceedings, none of which include breach of contract or replevin actions involving non-debtors.

[4] This is true even if these causes of action arguably fall within the two "catch-all" provisions of section 157(b)(2)(A) ("matters concerning the administration of the estate") or section 157(b)(2)(O) ("other proceedings

5

brought by one non-debtor against another non-debtor, making it even clearer that the actions are non-core. *See, e.g.*, *Hickox v. Leeward Isles Resorts, Ltd.*, 224 B.R. 533, 537 (S.D.N.Y. 1998) (stating that "a legal dispute between non-debtors over promissory notes is not a 'core' proceeding.").

10. Because the causes of action that MidCountry asserted against Aurora in the Colorado State Court would constitute a non-core proceeding in this Court, this Court would only be permitted to submit proposed findings of fact and conclusions of law to the District Court, and any final order or judgment would have to be entered by the District Court after considering this Court's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected. *See* 28 U.S.C. § 157(c)(1). This would be a waste of this Court's and the District Court's time and resources, particularly given that this litigation is already pending in the Colorado State Court.

## **CROSS-MOTION FOR ABSTENTION**

11. Aurora also moves this Court for mandatory abstention (if a federal court would not have diversity jurisdiction over litigation between MidCountry and Aurora) or discretionary abstention from ruling any of the causes of action that have been asserted in the lawsuit presently before the Colorado State Court.

12. 28 U.S.C. § 1334(c)(2) governs mandatory abstention and provides:

"Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

---

affecting the liquidation of the assets of the estate"). *See, e.g.*, *In re Castlerock Properties,* 781 F.2d 159, 162 (9th Cir. 1986).

6

NY\1522301.1

Thus, mandatory abstention applies when: (1) a timely motion is made; (2) the claim or cause of action is based upon state law; (3) the claim or cause of action is "related to" a bankruptcy case, but did not "arise in" or "arise under" the bankruptcy case; (4) the action could not have been commenced in federal court absent section 1334 jurisdiction; (5) the action is commenced in state forum of appropriate jurisdiction; and (6) the action can be timely adjudicated in state court. *See, e.g.*, *In re Dow Corning Corp.*, 86 F.3d 482, 497 (6th Cir. 1996); *In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 323 F. Supp. 2d 861, 873 (S.D. Ohio 2004).

13. As noted above, the causes of action that MidCountry asserted against Aurora are non-core matters, and importantly, there is litigation on these very issues pending in the Colorado State Court. The only element of mandatory abstention that may be absent is (4),[5] as it is not readily clear whether a federal court would have diversity jurisdiction over litigation between MidCountry and Aurora.

14. However, regardless of whether the fourth element of mandatory abstention is not present, this Court may and should exercise its discretion to abstain pursuant to 28 U.S.C. § 1334(c)(1). That statute governs discretionary abstention and provides:

> "Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

15. 28 U.S.C. § 1334(c)(1) is the statutory codification of the judicial abstention doctrine. *See, e.g.*, *Coker v. Pan American World Air., Inc.* (*In re Pan American Corp.*), 950 F.2d 839, 846 (2d Cir. 1991). In determining whether discretionary abstention is proper, courts have identified at least six factors for consideration: (a) convenience of the federal forum; (b)

---

[5] MidCountry asserts in its complaint against Aurora (*see* Motion, Ex. B pt. 2) that it is a federal savings bank with a principal place of business in Minnesota, while Aurora's principal place of business is in Colorado.

7

avoidance of piecemeal litigation; (c) the order in which the courts obtained jurisdiction; (d) whether either court has assumed jurisdiction over property; (e) the source of law for decision; and (f) whether the state court can adequately protect the rights of the party seeking federal jurisdiction. *See, e.g.*, *Eastern Air Lines, Inc. v. International Ass'n of Machinists Aerospace Workers* (*In re Ionosphere Clubs, Inc.*), 108 B.R. 951, 954 (Bankr. S.D.N.Y. 1989) (citing *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 602-03 (2d Cir. 1988)).

16.  Courts also have noted that the failure of one factor in the mandatory abstention test indicates that discretionary abstention should be given "serious consideration." *See, e.g.*, *In re Luis Elec. Contracting Corp.*, 165 B.R. 358, 366 (Bankr. E.D.N.Y. 1992), citing *Marcus Dairy, Inc. v. Belford* (*In re Naugatuck Dairy Ice Cream, Co.*), 106 B.R. 24, 29 n. 5 (Bankr. D. Conn. 1989); s*ee also First Nat. Bank of Westminster v. Rarick* (*In re Rarick*), 132 B.R. 47, 52 (D. Colo. 1991); *Wolser v. Joshua Slocum, Ltd.* (*In re Joshua Slocum, Ltd.*), 109 B.R. 101, 107 (E.D. Pa. 1989) (where all but one of the elements of mandatory abstention are satisfied, "bankruptcy courts should have careful consideration whether it would be appropriate to exercise their discretion to abstain under § 1334(c)(1).").

17.  Here, discretionary discretion is appropriate for a number of reasons. <u>First</u>, adjudication of non-core matters in the bankruptcy court would require proceedings before two tribunals (before this Court, and then later before the District Court after this Court submits proposed findings of fact and conclusions of law). This is the very type of "piecemeal" and "inconvenient" litigation that the doctrine of discretionary abstention is intended to avoid. <u>Second</u>, proceedings have already been commenced in the Colorado State Court (the court of MidCountry's own choosing). Certainly, MidCountry cannot seriously assert that the tribunal it chose does not adequately protect its rights. Here, it appears that MidCountry is simply "forum

shopping" in two courts, hoping that one of them will provide it the relief it seeks. This is improper. Third, the dispute involves a purported breach of a contract that was entered into prior to LBHI's bankruptcy filing, which is a quintessential non-core, state law issue.

18. Finally, this is a case in which at most one element of mandatory abstention would not apply. For the foregoing reasons, if mandatory abstention does not apply, then this Court should use its discretion to abstain from considering MidCountry's extremely broad request for relief.

**WHEREFORE,** Aurora respectfully requests that this Court (a) deny the Motion, (b) abstain from hearing any proceeding relating to the merits of the causes of action that have been asserted in the lawsuit presently before the Colorado State Court, and (c) grant it such other relief as is just and proper.

Dated: April 20, 2009
　　　　New York, New York

　　　　　　　　　　　　　　　　　　**LATHAM & WATKINS LLP**

　　　　　　　　　　　　　　　　　　By: /s/ Michael J. Riela
　　　　　　　　　　　　　　　　　　　　Michael J. Riela (MR-7829)
　　　　　　　　　　　　　　　　　　　　885 Third Avenue, Suite 1000
　　　　　　　　　　　　　　　　　　　　New York, New York 10022
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 906-1200

　　　　　　　　　　　　　　　　　　Counsel for Aurora Loan Services LLC

9

NY\1522301.1

# EXHIBIT A

## AURORA'S MOTION TO DISMISS COLORADO STATE COURT LAWSUIT

NY\1522301.1

# EXHIBIT B

## MIDCOUNTRY'S RESPONSE TO AURORA'S
## MOTION TO DISMISS COLORADO STATE COURT LAWSUIT

NY\1522301.1