# EXHIBIT A

EXECUTION

MORTGAGE LOAN PURCHASE AND WARRANTIES AGREEMENT

between

LEHMAN CAPITAL, A DIVISION OF LEHMAN BROTHERS HOLDINGS INC.,

SELLER

and

MIDCOUNTRY BANK,

PURCHASER

CONVENTIONAL ADJUSTABLE RATE
RESIDENTIAL MORTGAGE LOANS

Group No. 2007-1

Dated as of July 30, 2007

# TABLE OF CONTENTS

Page

SECTION 1.   DEFINITIONS..................................................................1

SECTION 2.   CONVEYANCE FROM SELLER TO PURCHASER. ..........................................4

SECTION 3.   PURCHASE PRICE. ...............................................................5

SECTION 4.   SERVICING OF THE MORTGAGE LOANS. ...........................................6

SECTION 5.   REPRESENTATIONS AND WARRANTIES OF SELLER................................6

SECTION 6.   REPRESENTATIONS AND WARRANTIES OF PURCHASER.......................6

SECTION 7.   REMEDIES FOR BREACH OF REPRESENTATIONS AND WARRANTIES; ADDITIONAL REPURCHASE OBLIGATIONS. ...................7

SECTION 8.   CLOSING. ........................................................................8

SECTION 9.   CLOSING DOCUMENTS. ...........................................................8

SECTION 10. COSTS. ............................................................................8

SECTION 11. PROTECTION OF CONFIDENTIAL INFORMATION. ...................................8

SECTION 12. NOTICES...........................................................................9

SECTION 13. SEVERABILITY CLAUSE. .........................................................9

SECTION 14. COUNTERPARTS. .................................................................10

SECTION 15. PLACE OF DELIVERY AND GOVERNING LAW. ...................................10

SECTION 16. FURTHER AGREEMENTS. ........................................................10

SECTION 17. INTENTION OF THE PARTIES. ....................................................10

SECTION 18. SUCCESSORS AND ASSIGNS; ASSIGNMENT OF PURCHASE AGREEMENT AND PURCHASE PRICE AND TERMS LETTER. ..................10

SECTION 19. WAIVERS; OTHER AGREEMENTS. ...............................................11

SECTION 20. NO PERSONAL SOLICITATION. ...................................................11

SECTION 21. EXHIBITS AND SCHEDULES......................................................11

SECTION 22. GENERAL INTERPRETIVE PRINCIPLES. ..........................................11

SECTION 23. REPRODUCTION OF DOCUMENTS.................................................................12

SECTION 24. DOCUMENTS MUTUALLY DRAFTED.........................................................12

## EXHIBITS AND SCHEDULES

SCHEDULE 1        REPRESENTATIONS AND WARRANTIES OF SELLER
SCHEDULE 2        REPRESENTATIONS AND WARRANTIES REGARDING
                  INDIVIDUAL MORTGAGE LOANS

EXHIBIT A         MORTGAGE LOAN SCHEDULE
EXHIBIT B         LPMI MORTGAGE LOAN SCHEDULE
EXHIBIT C         FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT

# MORTGAGE LOAN PURCHASE AND WARRANTIES AGREEMENT

This is a Mortgage Loan Purchase and Warranties Agreement (the "Agreement"), dated as of July 30, 2007, by and between Lehman Capital, A Division of Lehman Brothers Holdings Inc. (the "Seller") and MidCountry Bank (the "Purchaser").

WHEREAS, the Seller desires to sell to the Purchaser, and the Purchaser desires to purchase from the Seller, certain conventional adjustable rate residential first lien mortgage loans (the "Mortgage Loans") on a servicing retained basis as described herein, and which shall be delivered as whole loans; and

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a first lien on a residential dwelling located in the jurisdiction indicated on the Mortgage Loan Schedule;

WHEREAS, the Purchaser and the Seller wish to prescribe the manner of the conveyance and control of the Mortgage Loans.

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and the Seller agree as follows:

## SECTION 1.  DEFINITIONS.

The following terms are defined as follows (except as otherwise agreed in writing by the parties):

Adjusted Purchase Price:   The price, if any, to which the Purchase Price is adjusted, as calculated in the related Purchase Price and Terms Letter.

Agreement: This Mortgage Loan Purchase and Warranties Agreement and all amendments hereof and supplements hereto.

ALTA: The American Land Title Association or any successor thereto.

Appraised Value: The value set forth in an appraisal made in connection with the origination of the related Mortgage Loan as the value of the Mortgaged Property.

Assignment of Mortgage: An assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect the sale of the Mortgage to the Purchaser.

Closing Date: July 30, 2007.

Condemnation Proceeds: All awards or settlements in respect of a Mortgaged Property, whether permanent or temporary, partial or entire, by exercise of the power of eminent

domain or condemnation, to the extent not required to be released to a Mortgagor in accordance with the terms of the related Mortgage Loan Documents.

Custodial Agreement: One or more Custodial Agreements that govern the custody of the Mortgage Loan Documents.

Custodian: Shall have the meaning assigned thereto in Section 2(c) hereof.

Cut-off Date: July 1, 2007.

Deleted Mortgage Loan: A Mortgage Loan which is repurchased by the Seller in accordance with the terms of this Agreement.

Due Date: The day of the month on which the Monthly Payment is due on a Mortgage Loan, exclusive of any days of grace. With respect to the Mortgage Loans for which payment from the Mortgagor is due on a day other than the first day of the month, such Mortgage Loans will be treated as if the Monthly Payment is due on the first day of the month following the actual Due Date.

Fannie Mae: Fannie Mae, or any successor thereto.

FDIC: The Federal Deposit Insurance Corporation, or any successor thereto.

Freddie Mac: Freddie Mac, or any successor thereto.

Insurance Proceeds: With respect to each Mortgage Loan, proceeds of insurance policies insuring the Mortgage Loan or the related Mortgaged Property.

Liquidation Proceeds: Cash received in connection with the liquidation of a defaulted Mortgage Loan, whether through the sale or assignment of such Mortgage Loan, trustee's sale, foreclosure sale or otherwise, or the sale of the related Mortgaged Property if the Mortgaged Property is acquired in satisfaction of the Mortgage Loan.

LPMI Loan: A Mortgage Loan covered by an LPMI Policy, as set forth in the LPMI Mortgage Loan Schedule attached hereto as Exhibit B.

LPMI Fees:  With respect to each LPMI Loan, the portion of the Mortgage Interest Rate which, during such period prior to the required cancellation of the LPMI Policy, shall be used to pay the premium due on the related LPMI Policy.

LPMI Policy: A policy of primary mortgage guaranty insurance pursuant to which the related premium is to be paid from payments of interest made by the Mortgagor.

Monthly Payment: The scheduled monthly payment of principal, as set forth in the related Mortgage Note or a related modification agreement, and interest on a Mortgage Loan.

Mortgage: The mortgage, deed of trust or other instrument securing a Mortgage Note, which creates a first lien on an unsubordinated estate in fee simple in real property securing the Mortgage Note.

Mortgage Interest Rate: The annual rate of interest borne on a Mortgage Note.

Mortgage Loan: An individual Mortgage Loan which is the subject of this Agreement, each Mortgage Loan originally sold and subject to this Agreement being identified on the Mortgage Loan Schedule, which Mortgage Loan includes without limitation the Mortgage Loan Documents, the Monthly Payments, Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds, REO Disposition Proceeds, and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan.

Mortgage Loan Documents: The original Mortgage, the Mortgage Note bearing all intervening endorsements endorsed in blank, the original Assignment of Mortgage, and evidence of title.

Mortgage Loan Remittance Rate:  With respect to each Mortgage Loan, the annual rate of interest remitted to the Purchaser, which shall be equal to the Mortgage Interest Rate minus the Servicing Fee Rate minus any LPMI Fees.

Mortgage Loan Schedule: The schedule of Mortgage Loans attached as Exhibit A hereto.

Mortgage Note: The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage.

Mortgaged Property: The real property securing repayment of the debt evidenced by a Mortgage Note.

Mortgagor: The obligor on a Mortgage Note.

Person: Any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, unincorporated organization, government or any agency or political subdivision thereof.

PMI Policy: A policy of primary mortgage guaranty insurance issued by a Qualified Insurer, as required by this Agreement with respect to certain Mortgage Loans.

Purchase Price: The price paid on the Closing Date by the Purchaser to the Seller in exchange for the Mortgage Loans as calculated in Section 3(a) of this Agreement.

Purchase Price and Terms Letter: That certain letter agreement dated as of June 26, 2007 by and between the Seller and the Purchaser, setting forth the general terms and conditions of the transaction consummated herein and identifying the Mortgage Loans to be purchased hereunder.

**Purchaser**: MidCountry Bank, or its successor in interest or assigns or any successor to the Purchaser under this Agreement as herein provided.

**Qualified Insurer**: A mortgage guaranty insurance company duly authorized and licensed where required by law to transact mortgage guaranty insurance business and approved as an insurer by Fannie Mae or Freddie Mac.

**REO Disposition Proceeds**: All amounts received with respect to a disposition of real estate owned property.

**Repurchase Price**: With respect to any Mortgage Loan, a price equal to (a) the percentage of par as stated in the Purchase Price and Terms Letter multiplied by the Stated Principal Balance of the Mortgage Loan plus (b) interest on such Stated Principal Balance at the Mortgage Loan Remittance Rate from the date on which interest has last been paid and distributed to the Purchaser to the date of repurchase in respect of such repurchased Mortgage Loan.

**Seller**: Lehman Capital, A Division of Lehman Brothers Holdings Inc. or its successor in interest or assigns or any successor to the Seller under this Agreement as herein provided.

**Servicer**: Aurora Loan Services LLC or its successors in interest or assigns.

**Servicing Agreement**: That certain Servicing Agreement by and among the Seller, the Servicer and the Purchaser, dated as of even date herewith.

**Servicing Fee Rate**: The servicing fee rate set forth in the Servicing Agreement.

**Stated Principal Balance**: As to each Mortgage Loan, as of any date of determination, (i) the unpaid principal balance of the Mortgage Loan at the Cut-off Date after giving effect to payments of principal due on or before such date, whether or not received, minus (ii) all amounts previously distributed to the Purchaser with respect to the related Mortgage Loan prior to such date representing payments or recoveries of principal or advances in lieu thereof.

## SECTION 2.  CONVEYANCE FROM SELLER TO PURCHASER.

(a) Conveyance of Mortgage Loans

The Seller, on the Closing Date, does hereby sell, transfer, assign, set over and convey to the Purchaser, without recourse, but subject to the terms of this Agreement and the Servicing Agreement, all rights, title and interest of the Seller in and to the Mortgage Loans and related mortgage files and the documents contained therein for each Mortgage Loan.

The Purchaser, on the Closing Date, does hereby assume for the benefit of the Seller all of the rights, title, interest, and obligations of the Seller arising from and after the Closing Date in and to the Mortgage Loans and related mortgage files and all the documents contained therein.

(b) <u>Books and Records</u>.

From and after the sale of the Mortgage Loans to the Purchaser, all rights arising out of the Mortgage Loans including but not limited to all funds received on or in connection with the Mortgage Loans, shall be received and held by the Seller or the Servicer, as the case may be, for the benefit of the Purchaser as owner of the Mortgage Loans pursuant to the terms of the Servicing Agreement.

The sale of each Mortgage Loan shall be reflected on the Seller's balance sheet and other financial statements as a sale of assets by the Seller.

(c) <u>Delivery of Mortgage Loan Documents</u>.

Except as previously disclosed by the Seller to the Purchaser, the Mortgage Loan Documents are being held in custody on behalf of the Seller by one or more independent third party document custodians (the "<u>Custodian</u>"). Prior to the Closing Date, the Seller shall instruct the Custodian to deliver the Mortgage Loan Documents with respect to the Mortgage Loans to the Purchaser or the Purchaser's designee under a mutually acceptable form of bailee agreement in order to accommodate the Purchaser's review of the Mortgage Loan Documents. The Seller will cause the Custodial Agreements to be terminated with respect to the Mortgage Loans and shall pay any outstanding custodial fees with respect to such Mortgage Loans and indemnify and hold harmless the Purchaser from any liability, damages or losses related to the termination of such Custodial Agreements.

## SECTION 3.  PURCHASE PRICE.

(a) The Purchase Price shall be the percentage of par as stated in the Purchase Price and Terms Letter, multiplied by the aggregate Stated Principal Balance of the Mortgage Loans listed on the Mortgage Loan Schedule as of the Cut-off Date, plus accrued but unpaid interest on such Mortgage Loans at the Mortgage Loan Remittance Rate, from the Cut-off Date through the day prior to the Closing Date, inclusive.

(b) The Purchase Price or Adjusted Purchase Price, as applicable, shall be paid by the Purchaser on the Closing Date by wire transfer of immediately available federal funds.

(c) The Purchaser shall be entitled to (i) all principal due after the Cut-off Date, and (ii) all payments of interest due after the Cut-off Date on the Mortgage Loans at the Mortgage Loan Remittance Rate.

(d) If, subsequent to the Closing Date, the principal amount on which the Purchase Price or Adjusted Purchase Price, as applicable, with respect to a Mortgage Loan was based is found to be in error, or if, for any other reason, the Purchase Price or Adjusted Purchase Price, as applicable, or such other amounts are found to be in error, within ten (10) business days of the receipt of information sufficient to provide notice that payment is due, the party benefiting from the error shall pay an amount sufficient to correct and reconcile the Purchase Price or Adjusted Purchase Price, as applicable.

## SECTION 4.  SERVICING OF THE MORTGAGE LOANS.

The Mortgage Loans shall be sold by the Seller to the Purchaser on a servicing retained basis.  The Mortgage Loans shall be serviced by the Servicer in accordance with the terms of the Servicing Agreement.  The Servicer shall be entitled to servicing fees calculated as provided therein.

## SECTION 5.  REPRESENTATIONS AND WARRANTIES OF SELLER.

The Seller hereby makes the representations and warranties set forth on Schedule 1 attached hereto to the Purchaser as of the Closing Date.  As to each Mortgage Loan, the Seller hereby makes the representations and warranties set forth on Schedule 2 attached hereto to the Purchaser as of the Closing Date.

## SECTION 6.  REPRESENTATIONS AND WARRANTIES OF PURCHASER.

The Purchaser hereby makes the following representations and warranties set to the Seller as of the Closing Date:

(a) Due Organization and Authority.  The Purchaser is a federally chartered savings bank duly organized, validly existing and in good standing under the laws of the United States of America and has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing to do business in each jurisdiction in which the conduct of its business or the ownership of its assets so requires.  The Purchaser has the full corporate power and authority to execute and deliver this Agreement and to perform in accordance herewith; the execution, delivery and performance of this Agreement by the Purchaser and the consummation of the transactions contemplated hereby have been duly and validly authorized; this Agreement evidences the valid, binding and enforceable obligation of the Purchaser; and all requisite corporate action has been taken by the Purchaser to make this Agreement valid and binding upon the Purchaser in accordance with its terms;

(b) No Conflicts.  Neither the execution and delivery of this Agreement, the acquisition of the Mortgage Loans by the Purchaser or the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of the Purchaser's charter or by-laws;

(c) No Litigation Pending.  There is no action, suit, proceeding or investigation pending or, to the best of the Purchaser's knowledge, threatened against the Purchaser which, either in any one instance or in the aggregate, would draw into question the validity of this Agreement or of any action taken or to be taken in connection with the obligations of the Purchaser contemplated herein; and

(d) No Consent Required.  No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Purchaser of or compliance by the Purchaser with this Agreement, or the consummation of

-6-

the transactions contemplated by this Agreement, or if required, such approval has been obtained prior to the Closing Date.

## SECTION 7.  REMEDIES FOR BREACH OF REPRESENTATIONS AND WARRANTIES; ADDITIONAL REPURCHASE OBLIGATIONS.

(a) It is understood and agreed that the representations and warranties set forth in Section 5 shall survive the sale of the Mortgage Loans to the Purchaser and the delivery of the Mortgage Loan Documents to the Purchaser and shall inure to the benefit of the Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or failure to examine any Mortgage Loan Document. Upon discovery by either the Seller or the Purchaser of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of a Mortgage Loan or the interest of the Purchaser in such Mortgage Loan (a "Breach"), the party discovering such Breach shall give prompt written notice to the other.

Within sixty (60) days of the earlier of either discovery by or notice to the Seller of any Breach of a representation or warranty, the Seller shall use its commercially reasonable efforts to cure such Breach in all material respects and, if such Breach cannot be cured or the Seller fails to cure, the Seller shall, at the Purchaser's option, repurchase the applicable Mortgage Loan at the Repurchase Price.

At the time of repurchase, the Purchaser and the Seller shall arrange for the reassignment of the Deleted Mortgage Loan to the Seller and the delivery to the Seller of any documents held by the Purchaser or its designee relating to the Deleted Mortgage Loan.  In the event of a repurchase, the Seller and the Purchaser shall, simultaneously with such reassignment, give written notice to the Servicer of the Mortgage Loans that such repurchase has taken place.

In addition to such purchase obligation, the Seller shall indemnify the Purchaser and hold it harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a Breach.

It is understood and agreed that the obligations of the Seller set forth in this Section to cure or repurchase a defective Mortgage Loan and to indemnify the Purchaser as set forth in the preceding paragraph constitute the sole remedies of the Purchaser respecting a Breach.

(b) It is understood and agreed that the representations and warranties set forth in Section 6 shall survive the Closing Date and shall inure to the benefit of the Seller.

Purchaser shall indemnify the Seller and hold it harmless against any and all losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of the Purchaser's representations and warranties contained in Section 6 of this Agreement.

## SECTION 8.  CLOSING.

The closing for the purchase and sale of the Mortgage Loans shall take place on the Closing Date, by facsimile, electronic mail or in such other manner as the parties shall agree.

The closing shall be subject to each of the following conditions:

(a) the Purchaser shall have received, or the Purchaser's attorneys shall have received in escrow, all Closing Documents as specified in Section 9 of this Agreement, in such forms as are mutually agreed upon, duly executed by all signatories other than the Purchaser as required pursuant to the respective terms thereof;

(b) the Seller shall have delivered and released to the Purchaser's bailee, all Mortgage Loan Documents;

(c) all other terms and conditions of this Agreement shall have been complied with; and

(d) the Purchaser shall have paid to the Seller on the Closing Date the Purchase Price or Adjusted Purchase Price, as applicable, by wire transfer of immediately available funds to the account designated by the Seller.

## SECTION 9.  CLOSING DOCUMENTS.

The Closing Documents to be delivered on the Closing Date shall consist of fully executed originals of the following documents:

(a) this Agreement;

(b) the Servicing Agreement;

(c) the Mortgage Loan Schedule; and

(d) the Purchase Price and Terms Letter.

## SECTION 10.    COSTS.

The Seller shall pay any commissions due its salesmen and the legal fees and expenses of its attorneys.  The costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans, including the initial set of recording fees, fees for title policy endorsements and continuations shall be paid by the Seller.  Each of the Seller and the Purchaser shall pay all costs due their respective brokers, if any.

## SECTION 11.    PROTECTION OF CONFIDENTIAL INFORMATION.

The parties hereto shall keep confidential and shall not divulge to any party, without the other party's prior written consent, the Purchase Price or Adjusted Purchase Price paid by the Purchaser for the Mortgage Loans, except to the extent that it is appropriate for the

applicable party to do so in working with legal counsel, auditors, taxing authorities or other governmental agencies.

## SECTION 12.        NOTICES.

All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at the address shown below.

    (i)    if to the Purchaser:

MidCountry Bank
14525 Highway 7
Woodhill Plaza
Suite 335
Minnetonka, MN  55345
Attention: David Turk

    (ii)    if to Seller:

Lehman Capital, A Division of Lehman Brothers Holdings Inc.
745 Seventh Avenue
13th Floor
New York, New York 10019
Attention:  Contract Finance

Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

## SECTION 13.        SEVERABILITY CLAUSE.

Any part, provision, representation or warranty of this Agreement that is prohibited or that is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any part, provision, representation or warranty of this Agreement that is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereto waive any provision of law that prohibits or renders void or unenforceable any provision hereof. If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good-faith, to develop a structure, the economic effect of which is as close as possible to the economic effect of this Agreement, without regard to such invalidity.

SECTION 14.    COUNTERPARTS.

This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

SECTION 15.    PLACE OF DELIVERY AND GOVERNING LAW.

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

SECTION 16.    FURTHER AGREEMENTS.

The Purchaser and the Seller each agree to execute and deliver to the other such additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this Agreement.

SECTION 17.    INTENTION OF THE PARTIES.

It is the intention of the parties that the Purchaser is purchasing, and the Seller is selling, 100% ownership interest in the Mortgage Loans and not a debt instrument of the Seller or another security. Accordingly, the parties hereto each intend to treat the transaction for Federal income tax purposes as a sale by the Seller, and a purchase by the Purchaser, of the Mortgage Loans. Moreover, the arrangement under which the Mortgage Loans are held shall be consistent with classification of such arrangement as a grantor trust in the event it is not found to represent direct ownership of the Mortgage Loans. Prior to the Closing Date, the Purchaser shall have the right to review the Mortgage Loans and the related Mortgage Loan Documents to determine the characteristics of the Mortgage Loans which shall affect the Federal income tax consequences of owning the Mortgage Loans and the Seller shall cooperate with all reasonable requests made by the Purchaser in the course of such review.

SECTION 18.    SUCCESSORS AND ASSIGNS; ASSIGNMENT OF PURCHASE AGREEMENT AND PURCHASE PRICE AND TERMS LETTER.

This Agreement shall bind and inure to the benefit of and be enforceable by the Seller and the Purchaser and the respective successors and assigns of the Seller and the Purchaser. This Agreement shall not be assigned, pledged or hypothecated by Seller to a third party without the prior written consent of the Purchaser.

No transfer of a Mortgage Loan may be made unless such transfer is in compliance with the terms hereof. For the purposes of this Agreement, the Seller shall be under no obligation to deal with any Person with respect to this agreement or the Mortgage Loans unless the books and records show such Person as the owner of the Mortgage Loan. The

-10-

Purchaser may, subject to the terms of this Agreement, sell and transfer one or more of the Mortgage Loans, provided, however, that the transferee will not be deemed to be a Purchaser hereunder binding upon the Seller unless such transferee shall agree in writing to be bound by the terms of this Agreement and an original counterpart of the instrument of transfer and an assignment and assumption of this Agreement in the form of Exhibit C hereto executed by the transferee shall have been delivered to the Seller. The Purchaser shall also advise the Seller of the transfer. Upon receipt of notice of the transfer, the Seller shall mark its books and records to reflect the ownership of the Mortgage Loans of such assignee, and shall release the previous Purchaser from its obligations hereunder with respect to the Mortgage Loans sold or transferred.

The Purchase Price and Terms Letter shall not be assigned, pledged or hypothecated by the Purchaser or the Seller.

## SECTION 19.    WAIVERS; OTHER AGREEMENTS.

No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

## SECTION 20.    NO PERSONAL SOLICITATION.

From and after the Closing Date, each of the Purchaser and the Seller hereby agree that it will not take any action or permit or cause any action to be taken by any of its agents or affiliates, or by any independent contractors on its behalf, to personally, by telephone or mail, solicit the borrower or obligor under any Mortgage Loan for the purpose of refinancing a Mortgage Loan, without the prior written consent of the other party hereto. Notwithstanding the foregoing, it is understood and agreed that promotions for (a) optional insurance products or (b) promotions undertaken by either party hereto or any affiliate of either party hereto which are directed to the general public at large, including, without limitation, mass mailing based on commercially acquired mailing lists, newspaper, radio and television advertisements shall not constitute solicitation under this Section. In addition, it is understood and agreed that upon: (i) the receipt of a verification of mortgage; (ii) a request for demand for payoff, (iii) a Mortgagor initiated written or verbal communication indicating a desire to prepay the related Mortgage Loan, or (iv) a Mortgagor initiated written or verbal communication initiating a title search, contact from the Seller shall not constitute solicitation under this Section.

## SECTION 21.    EXHIBITS AND SCHEDULES.

The exhibits and schedules to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

## SECTION 22.    GENERAL INTERPRETIVE PRINCIPLES.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

-11-

(a) the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b) accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c) references herein to "Articles", "Sections", "Subsections", "Paragraphs", and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(d) a reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e) the words "herein", "hereof", "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(f) the term "include" or "including" shall mean without limitation by reason of enumeration.

## SECTION 23.    REPRODUCTION OF DOCUMENTS.

This Agreement and all documents relating thereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

## SECTION 24.    DOCUMENTS MUTUALLY DRAFTED.

The Seller and the Purchaser agree that this Agreement and each other document prepared in connection with the transactions set forth herein have been mutually drafted and negotiated by each party, and consequently such documents shall not be construed against either party as the drafter thereof.

[Signature Page Immediately Follows]

IN WITNESS WHEREOF, the Seller and the Purchaser have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

LEHMAN CAPITAL, A DIVISION OF
LEHMAN BROTHERS HOLDINGS INC.
  (Seller)

By: _____
    Name:  Jack E. Desens
    Title:    Authorized Signatory

MIDCOUNTRY BANK
  (Purchaser)

By: _____
    Name:
    Title:

## SCHEDULE 1

## REPRESENTATIONS AND WARRANTIES OF SELLER

(a) <u>Due Organization and Authority</u>. The Seller is a corporation duly organized, validly existing and in good standing under the laws of the state of Delaware and has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in each state where a Mortgaged Property is located if the laws of such state require licensing or qualification in order to conduct business of the type conducted by the Seller, and in any event the Seller is in compliance with the laws of any such state to the extent necessary to ensure the enforceability of the related Mortgage Loan in accordance with the terms of this Agreement; the Seller has the full corporate power and authority to execute and deliver this Agreement and to perform in accordance herewith; the execution, delivery and performance of this Agreement (including all instruments of transfer to be delivered pursuant to this Agreement) by the Seller and the consummation of the transactions contemplated hereby have been duly and validly authorized; this Agreement evidences the valid, binding and enforceable obligation of the Seller; and all requisite corporate action has been taken by the Seller to make this Agreement valid and binding upon the Seller in accordance with its terms;

(b) <u>Ordinary Course of Business</u>. The consummation of the transactions contemplated by this Agreement are in the ordinary course of business of the Seller;

(c) <u>No Conflicts</u>. Neither the execution and delivery of this Agreement, the acquisition of the Mortgage Loans by the Seller, the sale of the Mortgage Loans to the Purchaser or the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of the Seller's charter or by-laws;

(d) <u>No Litigation Pending</u>. There is no action, suit, proceeding or investigation pending or, to the best of the Seller's knowledge, threatened against the Seller which, either in any one instance or in the aggregate, would draw into question the validity of this Agreement or of any action taken or to be taken in connection with the obligations of the Seller contemplated herein;

(e) <u>No Consent Required</u>. No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Seller of or compliance by the Seller with this Agreement, or the consummation of the transactions contemplated by this Agreement, or if required, such approval has been obtained prior to the Closing Date; and

(f) <u>Sale Treatment</u>. The Seller intends to treat the disposition of the Mortgage Loans pursuant to this Agreement as a sale for accounting and tax purposes.

SCHEDULE 2

REPRESENTATIONS AND WARRANTIES REGARDING
INDIVIDUAL MORTGAGE LOANS

(a) <u>Mortgage Loans as Described</u>. The information set forth in the Mortgage Loan Schedule is true and correct in all material respects;

(b) <u>No Outstanding Charges</u>. There are no defaults in complying with the terms of the Mortgage, and all taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed but is not yet due and payable. The Seller has not advanced funds, or induced, solicited or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required under the Mortgage Loan, except for interest accruing from the date of the Mortgage Note or date of disbursement of the Mortgage Loan proceeds, whichever is later, to the day which precedes by one month the Due Date of the first installment of principal and interest;

(c) <u>Original Terms Unmodified</u>. The terms of the Mortgage Note and Mortgage have not been impaired, waived, altered or modified in any respect, except by a written instrument which has been recorded, if necessary to protect the interests of the Purchaser and which has been delivered to the Custodian, unless otherwise previously disclosed by the Seller to the Purchaser. The substance of any such waiver, alteration or modification has been approved by the issuer of any related PMI Policy and the title insurer, to the extent required by the policy, and its terms are reflected on the Mortgage Loan Schedule. No Mortgagor has been released, in whole or in part, except in connection with an assumption agreement approved by the issuer of any related PMI Policy and the title insurer, to the extent required by the policy, and which assumption agreement is, unless otherwise previously disclosed by the Seller to the Purchaser, part of the Mortgage Loan Documents delivered to the Custodian and the terms of which are reflected in the Mortgage Loan Schedule;

(d) <u>No Defenses</u>. The Mortgage Loan is not subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto, and no Mortgagor was a debtor in any state or federal bankruptcy or insolvency proceeding at the time the Mortgage Loan was originated or, to the best of the Seller's knowledge, as of the Closing Date;

(e) <u>Hazard Insurance</u>. Pursuant to the terms of the Mortgage, all buildings or other improvements upon the Mortgaged Property are insured by a generally acceptable insurer against loss by fire, hazards of extended coverage and such other hazards as are customary in the area where the Mortgaged Property is located. If upon origination of the Mortgage Loan, the

Mortgaged Property was in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has been made available) a flood insurance policy meeting the requirement of the current guidelines of the Federal Flood Insurance Administration is in effect.  All individual insurance policies contain a standard mortgagee clause naming the Seller and its successors and assigns as mortgagee, and all premiums thereon have been paid.  The Mortgage obligates the Mortgagor thereunder to maintain the hazard insurance policy at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at such Mortgagor's cost and expense, and to seek reimbursement therefor from the Mortgagor.  Where required by state law or regulation, the Mortgagor has been given an opportunity to choose the carrier of the required hazard insurance, provided the policy is not a "master" or "blanket" hazard insurance policy covering the common facilities of a planned unit development.  The hazard insurance policy is the valid and binding obligation of the insurer and is in full force and effect.  The Seller has not engaged in, and has no knowledge of the Mortgagor's or the Servicer's having engaged in any act or omission which would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either, including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other Person or entity, and no such unlawful items have been received, retained or realized by the Seller;

(f) <u>Compliance with Applicable Laws</u>. Any and all requirements of any federal, state or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity or disclosure laws applicable to the Mortgage Loan have been complied with;

(g) <u>No Delinquency</u>.  As of the Closing Date, no Mortgage Loan is more than 30 days past due with respect to its scheduled Monthly Payment.

(h) <u>No Satisfaction of Mortgage</u>. The Mortgage has not been satisfied, canceled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such release, cancellation, subordination or rescission. The Seller has not waived the performance by the Mortgagor of any action, if the Mortgagor's failure to perform such action would cause the Mortgage Loan to be in default, nor has the Seller waived any default resulting from any action or inaction by the Mortgagor;

(i) <u>Location and Type of Mortgaged Property</u>. The Mortgaged Property is a fee simple property and consists of a parcel of real property with a detached single family residence erected thereon, or a two- to four-family dwelling, or an individual condominium unit in a low-rise condominium project, an individual unit in a planned unit development or a townhouse. To the best of the Seller's knowledge, no portion of the Mortgaged Property is used for commercial purposes;

(j) <u>Valid First Lien</u>. The Mortgage is a valid, subsisting enforceable and perfected first lien on the Mortgaged Property, including all buildings on the Mortgaged Property and all installations and mechanical, electrical, plumbing, heating and air conditioning systems

located in or annexed to such buildings, and all additions, alterations and replacements made at any time with respect to the foregoing. The lien of the Mortgage is subject only to:

(1) the lien of current real property taxes and assessments not yet due and payable;

(2) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording acceptable to mortgage lending institutions generally and specifically referred to in the lender's title insurance policy delivered to the originator of the Mortgage Loan and (i) referred to or to otherwise considered in the appraisal made for the originator of the Mortgage Loan or (ii) which do not adversely affect the appraised value of the Mortgaged Property set forth in such appraisal; and

(3) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property.

Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Mortgage Loan establishes and creates a valid, subsisting and enforceable first lien and first priority security interest on the property described therein and the Seller has full right to sell and assign the same to the Purchaser. The Mortgaged Property was not, as of the date of origination of the Mortgage Loan, subject to a mortgage, deed of trust, deed to secure debt or other security instrument creating a lien subordinate to the lien of the Mortgage;

(k) <u>Validity of Mortgage Loan Documents</u>. The Mortgage Note and the Mortgage are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms. All parties to the Mortgage Note and the Mortgage and any other related agreement had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage and any other related agreement, and the Mortgage Note and the Mortgage and any other related agreement have been duly and properly executed by such parties. To the best of the Seller's knowledge after reasonable diligence, the documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading;

(l) <u>Full Disbursement of Proceeds</u>. The Mortgage Loan has been closed and the proceeds of the Mortgage Loan have been fully disbursed and there is no requirement for future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvement and as to disbursements of any escrow funds therefor have been complied with. All costs, fees and expenses incurred in making or closing the Mortgage Loan and the recording of the Mortgage were paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Mortgage Note or Mortgage;

(m) <u>Ownership</u>. The Seller is the sole owner and holder of the Mortgage Loan. The Mortgage Loan is not assigned or pledged, and the Seller has good and marketable title

thereto, and has full right to transfer and sell the Mortgage Loan therein to the Purchaser free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and has full right and authority subject to no interest or participation of, or agreement with, any other party, to sell and assign each Mortgage Loan pursuant to this Agreement;

(n) _Title Insurance_. The Mortgage Loan is covered by either (i) an attorney's opinion of title and abstract of title the form and substance of which is acceptable to mortgage lending institutions making mortgage loans in the area where the Mortgaged Property is located, or (ii) an ALTA lender's title insurance policy or other generally acceptable form of policy of insurance acceptable to Fannie Mae or Freddie Mac, issued by a title insurer acceptable to Fannie Mae or Freddie Mac and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the Seller, its successors and assigns, as to the first priority lien of the Mortgage in the original principal amount of the Mortgage Loan. Where required by state law or regulation, the Mortgagor has been given the opportunity to choose the carrier of the required mortgage title insurance. Additionally, such lender's title insurance policy affirmatively insures ingress and egress, and against encroachments by or upon the Mortgaged Property or any interest therein. The Seller is the sole insured of such lender's title insurance policy, and such lender's title insurance policy is in full force and effect and will be in force and effect upon the consummation of the transactions contemplated by this Agreement. No claims have been made under such lender's title insurance policy, and no prior holder of the Mortgage, including the Seller, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained, or realized by any attorney, firm or other Person or entity, and no such unlawful items have been received, retained or realized by the Seller;

(o) _No Defaults_. With the exception of any past due Mortgage Loans that are less than 30 days past due with respect to their scheduled Monthly Payment, there is no default, breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and neither the Seller nor its predecessors have waived any default, breach, violation or event of acceleration;

(p) _Location of Improvements; No Encroachments_. All improvements which were considered in determining the Appraised Value of the Mortgaged Property lay wholly within the boundaries and building restriction lines of the Mortgaged Property and no improvements on adjoining properties encroach upon the Mortgaged Property. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation;

(q) _Customary Provisions_. The Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including, (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure. Upon default by a Mortgagor on a Mortgage Loan and foreclosure on, or trustee's sale of, the Mortgaged Property pursuant to the proper procedures, the holder of the Mortgage Loan will be able to deliver good and merchantable title to the Mortgaged Property. There is no homestead or other exemption available to the Mortgagor

which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage;

(r) Occupancy of the Mortgaged Property. To the best of the Seller's knowledge, the Mortgaged Property is (i) lawfully occupied under applicable law and (ii) all inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy and fire underwriting certificates, have been made or obtained from the appropriate authorities;

(s) No Additional Collateral. The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage and the security interest of any applicable security agreement or chattel mortgage referred to in the "Valid First Lien" representation above;

(t) Deeds of Trust. In the event the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by the Purchaser to the trustee under the deed of trust, except as caused by actions or omissions taken by the Purchaser or in connection with a trustee's sale after default by the Mortgagor;

(u) Transfer of Mortgage Loans. The Assignment of Mortgage is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located;

(v) Consolidation of Future Advances. Any future advances made prior to the Cut-off Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term. The lien of the Mortgage securing the consolidated principal amount is expressly insured as having first lien priority by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other title evidence acceptable to Fannie Mae and Freddie Mac. The consolidated principal amount does not exceed the original principal amount of the Mortgage Loan;

(w) Mortgaged Property Undamaged. There is no proceeding pending or to the best of Seller's knowledge, threatened, for the total or partial condemnation of the Mortgaged Property. To the best of Seller's knowledge, the Mortgaged Property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty so as to affect adversely the value of the Mortgaged Property as security for the Mortgage Loan or the use for which the premises were intended; and

(x) Application of Funds. All payments received by the Servicer with respect to any Mortgage Loan have been remitted and properly accounted for as required. All funds received by the Servicer in connection with the satisfaction of Mortgage Loans, including but not limited to foreclosure proceeds and insurance proceeds from hazard losses, have been deposited in the appropriate principal and interest account or taxes and insurance included among the related escrow accounts; and all such funds have been applied to reduce the principal balance of

the Mortgage Loans in question, or for reimbursement of repairs to the Mortgaged Property in question, or as otherwise required; or are and will be in one of the related escrow accounts on the Closing Date.

EXHIBIT A

MORTGAGE LOAN SCHEDULE

EXHIBIT B

LPMI MORTGAGE LOAN SCHEDULE

EXHIBIT C

FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT

ASSIGNMENT AND ASSUMPTION AGREEMENT, dated _____ __, 200__, between _____, a [STATE] [ENTITY] ("Assignor") and _____, a [STATE] [ENTITY] ("Assignee"):

For and in consideration of the sum of TEN DOLLARS ($10.00) and other valuable consideration the receipt and sufficiency of which hereby are acknowledged, and of the mutual covenants herein contained, the parties hereto hereby agree as follows:

1.      The Assignor hereby grants, transfers and assigns to Assignee, as Purchaser, all of the right, title and interest of Assignor under that certain Mortgage Loan Purchase and Warranties Agreement, Conventional Residential Adjustable Rate Mortgage Loans (the "Purchase Agreement") dated as of July 30, 2007, by and between Lehman Capital, A Division of Lehman Brothers Holdings Inc. (the "Seller") and MidCountry Bank (the "Purchaser").

2.      The Assignor warrants and represents to, and covenants with, the Assignee that:

a.      The Assignor is the lawful owner of the Mortgage Loans with the full right to transfer the Mortgage Loans free from any and all claims and encumbrances whatsoever;

b.      The Assignor has not received notice of, and has no knowledge of, any offsets, counterclaims or other defenses available to the Seller with respect to the Purchase Agreement or the Mortgage Loans;

c.      The Assignor has not waived or agreed to any waiver under, or agreed to any amendment or other modification of, the Purchase Agreement, including without limitation, the transfer of the servicing obligations under the Purchase Agreement. The Assignor has no knowledge of, and has not received notice of, any waivers under or amendments or other modifications of, or assignments of rights or obligations under, the Purchase Agreement; and

d.      Neither the Assignor nor anyone acting on its behalf has offered, transferred, pledged, sold or otherwise disposed of the Mortgage Loans, any interest in the Mortgage Loans or any other similar security to, or solicited any offer to buy or accept a transfer, pledge or other disposition of the Mortgage Loans, any interest in the Mortgage Loans or any other similar security from, or otherwise approached or negotiated with respect to the Mortgage Loans, any interest in the Mortgage Loans or any other similar security with, any person in any manner, or made any general solicitation by means of general advertising or in any other manner, or taken any other action which would constitute a distribution of the Mortgage Loans under the Securities Act of 1933 (the "33 Act") or which would render the disposition of the Mortgage Loans a violation of Section 5 of the 33 Act or require registration pursuant thereto.

3.      The Assignee warrants and represents to, and covenants with, the Assignor and the Seller pursuant to the Agreements that:

C-1

a.      The Assignee agrees to be bound, as Purchaser, by all of the terms, covenants and conditions of the Purchase Agreement, the Mortgage Loans, and from and after the date hereof, the Assignee assumes for the benefit of each of the Seller and the Assignor all of the Assignor's obligations as Purchaser thereunder;

b.      The Assignee understands that the Mortgage Loans have not been registered under the 33 Act or the securities laws of any state;

c.      The purchase price being paid by the Assignee for the Mortgage Loans is in excess of $250,000 and will be paid by cash remittance of the full purchase price within 60 days of the sale;

d.      The Assignee is acquiring the Mortgage Loans for investment for its own account only and not for any other person;

e.      The Assignee considers itself a substantial, sophisticated institutional investor having such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of investment in the Mortgage Loans;

f.      The Assignee has been furnished with all information regarding the Mortgage Loans that it has requested from the Assignor or the Seller;

g.      Neither the Assignee nor anyone acting on its behalf has offered, transferred, pledged, sold or otherwise disposed of the Mortgage Loans, any interest in the Mortgage Loans or any other similar security to, or solicited any offer to buy or accept a transfer, pledge or other disposition of the Mortgage Loans, any interest in the Mortgage Loans or any other similar security from, or otherwise approached or negotiated with respect to the Mortgage Loans, any interest in the Mortgage Loans or any other similar security with, any person in any manner which would constitute a distribution of the Mortgage Loans under the '33 Act or which would render the disposition of the Mortgage Loans a violation of Section 5 of the '33 Act or require registration pursuant thereto, nor will it act, nor has it authorized or will it authorize any person to act, in such manner with respect to the Mortgage Loans; and

h.      Either: (1) the Assignee is not an employee benefit plan ("Plan") within the meaning of section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or a plan (also "Plan") within the meaning of section 4975(e)(1) of the Internal Revenue Code of 1986 ("Code"), and the Assignee is not directly or indirectly purchasing the Mortgage Loans on behalf of, investment manager of, as named fiduciary of, as Trustee of, or with assets of, a Plan; or (2) the Assignee's purchase of the Mortgage Loans will not result in a prohibited transaction under section 406 of ERISA or section 4975 of the Code.

IN WITNESS WHEREOF, the parties have caused this Assignment and Assumption Agreement to be executed by their duly authorized officers as of the date first above written.

_____                    _____
Assignor                                            Assignee

By:_____                    By:_____

Its:_____                    Its:_____