States of America and has all licenses necessary to carry on its business as now being conducted; the Owner has the full corporate power and authority to execute and deliver this Agreement and to perform in accordance herewith; the execution, delivery and performance of this Agreement by the Owner and the consummation of the transactions contemplated hereby have been duly and validly authorized, subject to the effect of bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or affecting creditors' rights and to the application of equitable principles in any proceeding, whether at law or in equity; this Agreement evidences the valid, binding and enforceable obligation of the Owner; and all requisite corporate action has been taken by the Owner to make this Agreement valid and binding upon the Owner in accordance with its terms;

(b)    _Ordinary Course of Business_.    The consummation of the transactions contemplated by this Agreement are in the ordinary course of business of the Owner;

(c)    _No Conflicts_.    Neither the execution and delivery of this Agreement, the conveyance of the servicing responsibilities to the Servicer or the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of the Owner's charter or by-laws or any legal restriction or any agreement or instrument to which the Owner is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment or decree to which the Owner or its property is subject, or impair the value of the servicing contract consummated hereby;

(d)    _No Litigation Pending_.    There is no action, suit, proceeding or investigation pending or, to the best of the Owner's knowledge, threatened against the Owner which, either in any one instance or in the aggregate, which would draw into question the validity of this Agreement or of any action taken or to be taken in connection with the obligations of the Owner contemplated herein, or which would be likely to impair materially the ability of the Owner to perform under the terms of this Agreement;

(e)    _No Consent Required_.    No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Owner of or compliance by the Owner with this Agreement, or if required, such approval has been obtained prior to the date hereof;

(f)    _Ownership_.    As of the Closing Date, the Owner is the sole owner and holder of the Mortgage Loans. With respect to each Mortgage Loan subject to this Agreement, the servicing responsibilities contracted for have not been assigned or pledged, and, the Owner has good and marketable interest therein, and has full right to transfer the servicing responsibilities to the Servicer free and clear of any encumbrance, equity, interest, lien, pledge, charge, claim or security interest, and has full right and authority subject to no interest, or agreement with, any other party, (other than any notice required by law, regulation or otherwise, to be delivered to the Mortgagors) to assign the servicing responsibilities pursuant to this Agreement; and

-26-

(g)    No Commissions to Third Parties.  The Owner has not dealt with any broker or agent or anyone else who might be entitled to a fee or commission in connection with this transaction other than the Servicer.

Section 6.04.    Remedies for Breach of Representations and Warranties of the Owner.

It is understood and agreed that the representations and warranties set forth in Section 6.03 shall survive the engagement of the Servicer to perform the servicing responsibilities and the delivery of the Servicing Files to the Servicer and shall inure to the benefit of the Servicer. Upon discovery by either the Servicer or the Owner of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of the servicing contract established herein or the interest of the Servicer, the party discovering such breach shall give prompt written notice to the other.

Within sixty (60) days of the earlier of either discovery by or notice to the Owner of any breach of a representation or warranty set forth in Section 6.03 which materially and adversely affects the value of the servicing contract, the Owner shall use its Best Efforts promptly to cure such breach in all material respects.

The Owner shall indemnify the Servicer and hold it harmless against any Costs resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, (i) a breach of the Owner representations and warranties contained in Section 6.03 of this Agreement; (ii) the failure of the Owner to cause any event to occur which requires its Best Efforts under this Agreement; (iii) the failure of the Owner to perform its duties in compliance with the terms of this Agreement or (iv) any failure by the Custodian or the Owner to timely deliver original mortgage loan documents to the Servicer upon the Servicer's request. It is understood and agreed that the obligation of the Owner to indemnify the Servicer pursuant to this Section 6.04 constitutes the sole remedy of the Servicer respecting a breach of the foregoing representations and warranties.

Any cause of action against the Owner relating to or arising out of the breach of any representations and warranties made in Section 6.03 shall accrue upon (i) discovery of such breach by the Owner or notice thereof by the Servicer to the Owner, (ii) failure by the Owner to cure such breach within the applicable cure period, and (iii) demand upon the Owner by the Servicer for compliance with this Agreement.

## ARTICLE VII.

## INDEMNIFICATION BY THE SERVICER

Section 7.01.    Additional Indemnification by the Servicer; Third Party Claims

The Servicer shall indemnify the Owner and hold it harmless against any and all Costs that the Owner may sustain resulting from (i) the failure of the Servicer to perform its duties and service the Mortgage Loans in compliance with the terms of this Agreement or (ii) the

-27-

failure of the Servicer to cause any event to occur which requires its Best Efforts under this Agreement. The Servicer shall immediately notify the Owner if a claim is made by a third party with respect to this Agreement or the Mortgage Loans, shall assume (with the prior written consent of the Owner) the defense of any such claim and pay all expenses in connection therewith, including counsel fees, promptly pay, discharge and satisfy any judgment or decree which may be entered against it or the Owner in respect of such claim and follow any written instructions received from the Owner in connection with such claim. The Owner promptly shall reimburse the Servicer for all amounts advanced by it pursuant to the preceding sentence except when the claim is in any way related to the Servicer's indemnification pursuant to Section 6.02, or the failure of the Servicer to service and administer the Mortgage Loans in compliance with the terms of this Agreement. In the event a dispute arises between the Servicer and the Owner with respect to any of the rights and obligations of the parties pursuant to this Agreement, and such dispute is adjudicated in a court of law, by an arbitration panel or any other judicial process, then the losing party shall indemnify and reimburse the winning party for all attorney's fees and other costs and expenses related to the adjudication of said dispute.

## ARTICLE VIII.

### THE SERVICER

Section 8.01.  Merger or Consolidation of the Servicer.

The Servicer shall keep in full effect its existence, rights and franchises as a limited liability company, and shall obtain and preserve its qualification to do business as a foreign entity in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Agreement or any of the Mortgage Loans and to perform its duties under this Agreement.

Any Person into which the Servicer may be merged or consolidated, or any limited liability company or corporation resulting from any merger, conversion or consolidation to which the Servicer shall be a party, or any Person succeeding to the business of the Servicer, shall be the successor of the Servicer hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding, provided, however, that the successor or surviving Person shall be an institution (i) having a net worth of not less than $1,500,000, and (ii) which is a Fannie Mae or a Freddie Mac-approved servicer in good standing.

Section 8.02.  Limitation on Liability of the Servicer and Others.

Neither the Servicer nor any of the directors, officers, employees or agents of the Servicer shall be under any liability to the Owner for any action taken or for refraining from the taking of any action in good faith pursuant to this Agreement, or for errors in judgment; provided, however, that this provision shall not protect the Servicer or any such person against any breach of warranties or representations made herein. The Servicer and any director, officer, employee or agent of the Servicer may rely in good faith on any document of any kind prima facie properly executed and submitted by any Person respecting any matters arising hereunder.

-28-

The Servicer shall not be under any obligation to appear in, prosecute or defend any legal action which is not incidental to its duties to service the Mortgage Loans in accordance with this Agreement and which in its opinion may involve it in any expense or liability, provided, however, that the Servicer may, with the consent of the Owner, undertake any such action which it may deem necessary or desirable in respect of this Agreement and the rights and duties of the parties hereto. In such event, the Servicer shall be entitled to reimbursement from the Owner for the reasonable legal expenses and costs of such action.

Section 8.03.    Limitation on Resignation and Assignment by the Servicer.

The Owner has entered into this Agreement with the Servicer and subsequent transferees of the Owner will purchase the Mortgage Loans in reliance upon the independent status of the Servicer, and the representations as to the adequacy of its servicing facilities, plant, personnel, records and procedures, its integrity, reputation and financial standing, and the continuance thereof. Therefore, the Servicer shall not assign this Agreement or the servicing responsibilities hereunder or delegate its rights or duties hereunder or any portion hereof without the prior written consent of the Owner, which consent shall not be unreasonably withheld. Notwithstanding anything set forth herein, the Servicer may employ vendors and subservicers to carry out its obligations under this Agreement, provided, that the use by the Servicer of any such vendors or subservicer shall not release the Servicer from any of its obligations hereunder and the Servicer shall remain responsible hereunder for all acts and omissions of such vendors and subservicers as fully as if such acts and omissions were those of the Servicer. Except as set forth in this Agreement, the Servicer shall pay all fees and expenses of its third party vendors or subservicers from its own funds.

The Servicer shall not resign from the obligations and duties hereby imposed on it except by mutual consent of the Servicer and the Owner or upon the determination that its duties hereunder are no longer permissible under applicable law and such incapacity cannot be cured by the Servicer. Any such determination permitting the resignation of the Servicer shall be evidenced by an Opinion of Counsel to such effect delivered to the Owner which Opinion of Counsel shall be in form and substance acceptable to the Owner. No such resignation shall become effective until a successor shall have assumed the Servicer's responsibilities and obligations hereunder in the manner provided in Section 10.01.

## ARTICLE IX.

## TERMINATION

Section 9.01.    Termination for Cause.

This Agreement shall be terminable at the sole option of the Owner if any of the following events of default exist on the part of the Servicer:

(i)    any failure by the Servicer to remit to the Owner any payment required to be made under Section 4.01 or other payment required to be made under the terms of this Agreement which continues unremedied for a period of three (3) Business Days after the date

-29-

upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Owner; or

(ii)    failure by the Servicer duly to observe or perform in any material respect any other of the covenants or agreements on the part of the Servicer set forth in this Agreement which continues unremedied for a period of thirty (30) days; or

(iii)    failure by the Servicer to maintain its license to do business or service residential mortgage loans in any jurisdiction where the Mortgaged Properties are located; or

(iv)    a decree or order of a court or agency or supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, including bankruptcy, marshaling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against the Servicer and such decree or order shall have remained in force undischarged or unstayed for a period of sixty (60) days; or

(v)    the Servicer shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshaling of assets and liabilities or similar proceedings of or relating to the Servicer or of or relating to all or substantially all of its property; or

(vi)    the Servicer shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency, bankruptcy or reorganization statute, make an assignment for the benefit of its creditors, voluntarily suspend payment of its obligations or cease its normal business operations for three Business Days; or

(vii)    the Servicer ceases to meet the qualifications of a Fannie Mae and Freddie Mac seller/servicer; or

(viii)    the Servicer fails to maintain a minimum net worth of $1,500,000.

In each and every such case, so long as an event of default shall not have been remedied, in addition to whatever rights the Owner may have at law or equity to damages, including injunctive relief and specific performance, the Owner, by notice in writing to the Servicer, may terminate all the rights and obligations of the Servicer under this Agreement and in and to the servicing contract established hereby and the proceeds thereof.

Upon receipt by the Servicer of such written notice, all authority and power of the Servicer under this Agreement, whether with respect to the Mortgage Loans or otherwise, shall pass to and be vested in a successor servicer appointed by the Owner pursuant to Section 10.01 hereof. Upon written request from the Owner, the Servicer shall prepare, execute and deliver to the successor entity designated by the Owner any and all documents and other instruments, place in such successor's possession all Servicing Files, and do or cause to be done all other acts or things necessary or appropriate to effect the purposes of such notice of termination, including but

-30-

not limited to the transfer and endorsement or assignment of the Mortgage Loans and related documents, at the Servicer's sole expense. The Servicer shall cooperate with the Owner and such successor in effecting the termination of the Servicer's responsibilities and rights hereunder, including without limitation, the transfer to such successor for administration by it of all cash amounts which shall at the time be credited by the Servicer to the Custodial Account or Escrow Account or thereafter received with respect to the Mortgage Loans.

By a written notice, the Owner may waive any default by the Servicer in the performance of its obligations hereunder and its consequences. Upon any waiver of a past default, such default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been remedied for every purpose of this Agreement. No such waiver shall extend to any subsequent or other default or impair any right consequent thereon except to the extent expressly so waived.

With respect to any termination pursuant to this Section 9.01, the Owner shall reimburse the Servicer on the related transfer date for all previously unreimbursed Servicing Fees, Servicing Advances and Monthly Advances made by Servicer under this Agreement and other reasonable expenses of the Servicer, including those fees, advances and expenses incurred by the Servicer but not yet billed as of the related transfer date.

Section 9.02.   Termination Without Cause.

This Agreement shall terminate upon: (i) the later of (a) the distribution of the final payment or liquidation proceeds on the last Mortgage Loan to the Owner (or advances by the Servicer for the same), and (b) the disposition of all REO Property acquired upon foreclosure of the last Mortgage Loan and the remittance of all funds due hereunder, or (ii) mutual consent of the Servicer and the Owner in writing or (iii) upon sixty days notice from the Owner. Any such notice of termination shall be in writing and delivered to the Servicer by registered mail to the address set forth at the beginning of this Agreement. The Owner and the Servicer shall comply with the termination procedures set forth in Sections 9.01, 9.02 and 10.01 hereof. In the event that Servicer is terminated as servicer pursuant Subsection 9.02(b)(iii) above, the Owner shall pay a termination fee to the Servicing Rights Owner equal to six (6) times the applicable Servicing Fee Rate of the unpaid principal balance of the Mortgage Loans then being serviced pursuant to this Agreement as of the Determination Date immediately prior to the date that the notice of termination was received by the Servicing Rights Owner.

Notwithstanding and in addition to the foregoing, the Servicing Rights Owner shall have the right to terminate the Servicer's rights and obligations as servicer under this Agreement on sixty (60) days notice and upon appointment of a successor servicer reasonably acceptable to the Owner. With respect to a termination pursuant to the previous sentence the Servicer shall not be entitled to a termination fee.

With respect to any termination pursuant to this Section 9.02, the Owner shall reimburse the Servicer on the related transfer date for all previously unreimbursed Servicing Fees, Servicing Advances and Monthly Advances made by Servicer under this Agreement and

-31-

other reasonable expenses of the Servicer, including those fees, advances and expenses incurred by the Servicer but not yet billed as of the related transfer date.

Notwithstanding and in addition to the foregoing, in the event a Mortgage Loan is repurchased by the original owner, such Mortgage Loan shall thereafter be excluded from this Agreement.

## ARTICLE X.

## MISCELLANEOUS PROVISIONS

Section 10.01. Successor to the Servicer.

Simultaneously with the termination of the Servicer's responsibilities and duties under this Agreement pursuant to Sections 6.02, 8.03, 9.01 or 9.02, the Owner shall appoint a successor servicer (with the consent of the Servicing Rights Owner, which consent may not be unreasonably withheld) which shall succeed to all rights and assume all of the responsibilities, duties and liabilities of the Servicer under this Agreement simultaneously with the termination of the Servicer's responsibilities, duties and liabilities under this Agreement. In connection with such appointment and assumption, the Owner may make such arrangements for the compensation of such successor out of payments on Mortgage Loans as it and such successor shall agree, provided, however, that no such compensation shall be in excess of that permitted the Servicer under this Agreement without the consent of the Owner. In the event that the Servicer's duties, responsibilities and liabilities under this Agreement should be terminated pursuant to the aforementioned sections, the Servicer shall discharge such duties and responsibilities during the period from the date it acquires knowledge of such termination until the effective date thereof with the same degree of diligence and prudence which it is obligated to exercise under this Agreement, and shall take no action whatsoever that might impair or prejudice the rights or financial condition of its successor. The resignation or removal of the Servicer pursuant to the aforementioned sections shall not become effective until a successor shall be appointed pursuant to this Section 10.01 and shall in no event relieve the Servicer or the Owner of the representations and warranties made pursuant to Sections 6.01 and 6.03, respectively. and the remedies available to the Owner and the Servicer under Sections 6.02 and 6.04, respectively, it being understood and agreed that the provisions of such Sections 6.01, 6.02, 6.03 and 6.04 shall be applicable to the Servicer and the Owner, as applicable, notwithstanding any such resignation or termination of the Servicer, or the termination of this Agreement.

Within a reasonable period of time, but in no event longer than thirty (30) days of the appointment of a successor entity by the Owner, the Servicer shall prepare, execute and deliver to the successor entity any and all documents and other instruments, place in such successor's possession all Servicing Files, and do or cause to be done all other acts or things necessary or appropriate to effect the purposes of such notice of termination, including but not limited to the transfer and endorsement of the Mortgage Notes and related documents, and the preparation and recordation of Assignments of Mortgage, at the discretion of the Owner and, at the Owner's sole expense, unless otherwise specified in this Agreement. The Servicer shall cooperate with the Owner and such successor in effecting the termination of the Servicer's

-32-

responsibilities and rights hereunder and the transfer of servicing responsibilities to the successor servicer, including without limitation, the transfer to such successor for administration by it of all cash amounts which shall at the time be credited by the Servicer to the Custodial Account or Escrow Account or thereafter received with respect to the Mortgage Loans.

Any successor appointed as provided herein shall execute, acknowledge and deliver to the Servicer and to the Owner an instrument accepting such appointment, whereupon such successor shall become fully vested with all the rights, powers, duties, responsibilities, obligations and liabilities of the Servicer, with like effect as if originally named as a party to this Agreement. Any termination or resignation of the Servicer or termination of this Agreement pursuant to Sections 6.02, 8.03, 9.01 or 9.02 shall not affect any claims that the Owner may have against the Servicer arising out of the Servicer's actions or failure to act prior to any such termination or resignation.

The Servicer shall deliver promptly to the successor servicer the funds in the Custodial Account and Escrow Account and all Mortgage Loan documents and related documents and statements held by it hereunder and the Servicer shall account for all funds and shall execute and deliver such instruments and do such other things as may reasonably be required to more fully and definitively vest in the successor all such rights, powers, duties, responsibilities, obligations and liabilities of the Servicer. At the time that Servicer delivers the Mortgage Loan documents, Servicing Files, records and funds in the Custodial Account and Escrow Account to the successor servicer, the Servicer will be entitled to reimbursement of all unreimbursed Servicing Advances made by the Servicer with respect to the Mortgage Loans including those fees, advances and expenses incurred by the Servicer but not yet billed as of the related transfer date.

Upon a successor's acceptance of appointment as such, the Servicer shall notify by mail the Owner of such appointment in accordance with the procedures set forth in Section 10.05.

Notwithstanding anything to the contrary set forth herein, the Servicer shall not be prohibited from retaining copies of Mortgage Loan documents, Servicing Files and other records related to the Mortgage Loans as the Servicer reasonably deems necessary.

Section 10.02. Closing.

At the Owner's option, the closing for the engagement of the Servicer as herein provided shall be either: by facsimile or electronic mail, or conducted in person, at such place as the parties shall agree.

The closing shall be subject to each of the following conditions:

(a)    all of the representations and warranties of the Servicer and the Owner under this Agreement shall be true and correct as of the Closing Date and no event shall have occurred which, with notice or the passage of time, would constitute a default under this Agreement;

-33-

(b)    the Owner and Servicer each shall have received, or the Owner's attorneys shall have received in escrow, all closing documents as specified in Section 10.03 hereof, in such forms as are agreed upon and acceptable to the Servicer and the Owner, duly executed by all signatories as required pursuant to the respective terms thereof; and

(c)    all other terms and conditions of this Agreement shall have been complied with.

Section 10.03. Closing Documents.

The closing documents shall consist of fully executed originals of the following documents:

(a)    this Agreement;

(b)    a Custodial Account Certification in the form of Exhibit C hereto; and

(c)    an Escrow Account Certification in the form of Exhibit D hereto;

Section 10.04. Costs.

The Owner shall pay any commissions due its salesmen and the legal fees and expenses of its attorneys.

Section 10.05. Notices.

All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if sent by facsimile or mailed by overnight courier, addressed as follows (or such other address as may hereafter be furnished to the other party by like notice):

(i)    if to the Owner:

MidCountry Bank
14525 Highway 7, Woodhill Plaza
Suite 335
Attention: Mr. David Turk
Telephone No.: (952)-400-2821
Telecopier No.:(952)-697-2076

(ii)    if to the Servicer:

Aurora Loan Services LLC
10350 Park Meadows Drive
Littleton, CO 80124
Attention: James L. Greene (MidCountry Bank, 2007-1)
Telephone: (720) 945-4849

-34-

Facsimile: (720) 945-5735

with a copy to:

Aurora Loan Services LLC
2617 College Drive
Scottsbluff, Nebraska 69363
Attention: Manager, Loan Administration (MidCountry Bank, 2007-1)
Telephone: (308) 220-2000
Facsimile: (308) 632-4287

(iii)    if to the Servicing Rights Owner:

Lehman Capital, A Division of Lehman Brothers Holdings Inc.
745 Seventh Avenue
13th Floor
New York, New York
Attention: Manager, Contract Finance
Telephone: (212) 526-7527
Facsimile: (212) 526-0323

Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee. Notwithstanding anything in this Agreement to the contrary, the Servicer shall not be obligated to provide notices pursuant to this Agreement to any party whose address is not provided in this Section until thirty (30) days after the Servicer has received notice of the appointment of such party (including the name, address, telephone number and facsimile number of such party).

Section 10.06. Severability Clause.

Any part, provision, representation or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any part, provision, representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof. If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good-faith, to develop a structure the economic effect of which is as close as possible to the economic effect of this Agreement without regard to such invalidity.

Section 10.07. No Personal Solicitation.

The Servicer hereby agrees that it will not take any action or permit or cause any action to be taken by any of its agents or affiliates, or by any independent contractors on the Servicer's behalf, to personally, by telephone or mail, solicit the borrower or obligor under any Mortgage Loan (on a targeted basis) for any purposes of prepayment, refinancing or modification of the related Mortgage Loan, provided, however, that this limitation shall not prohibit the Servicer from soliciting such Mortgagor for purposes of prepayment, refinance or modification of any loan owned or serviced by the Servicer other than a Mortgage Loan. Notwithstanding the foregoing, it is understood and agreed that, among other marketing activities, promotions and solicitations (including, without limitation, those for purposes of prepayment, refinance or modification) undertaken by the Servicer which are directed to the general public at large or which are directed generally to a segment of the then existing customers of the Servicer or any of its affiliates (including, without limitation, the mailing of promotional materials to the Servicer's or its affiliates' deposit customers by inserting such materials into customer account statements, mass mailings based on commercially acquired mailing lists and newspaper, radio and television advertisements and solicitations made on the basis of information acquired by the Servicer or its affiliates that indicates that a borrower may be planning to refinance) shall not constitute solicitation under this section.

Section 10.08. Counterparts.

This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

Section 10.09. Governing Law.

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 10.10. Further Agreements.

The Owner and the Servicer each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this Agreement.

Section 10.11. Successors and Assigns; Assignment of Servicing Agreement.

This Agreement shall bind and inure to the benefit of and be enforceable by the Servicer and the Owner and the respective successors and assigns of the Servicer and the Owner; provided that, the Owner may not assign its rights hereunder to more than two (2) Persons and each such Person must execute and deliver an Assignment and Assumption Agreement in the

-36-

form of Exhibit B hereto. This Agreement shall not be assigned, pledged or hypothecated by the Servicer to a third party without the prior written consent of the Owner, which consent shall be given at the sole discretion of the Owner.

Notwithstanding any limitations on the assignment of this Agreement, the Servicing Rights Owner may assign the Servicing Rights on written notice to the Owner.

Section 10.12. Waivers.

No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

Section 10.13. Exhibits.

The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

Section 10.14. General Interpretive Principles.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a)    the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b)    accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c)    references herein to "Articles", "Sections", "Subsections", "Paragraphs", and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(d)    a reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e)    the words "herein", "hereof", "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(f)    the term "include" or "including" shall mean by reason of enumeration.

Section 10.15. Reproduction of Documents.

This Agreement and all documents relating thereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other

-37-

information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

### Section 10.16. Reconstitution

The Servicer hereby agrees and acknowledges that the Owner may securitize or otherwise transfer some or all of the Mortgage Loans (each, a "Transfer"), and the Servicer shall consent thereto; provided that the Servicer shall not consent to more than two (2) Transfers and shall be reimbursed by the Owner for all reasonable cost and expenses, including without limitation attorney's fees, incurred by the Servicer in connection with any Transfer. Each Transfer may entail the Owner assigning its rights under this Agreement to a securitization trust or other entity, and may require the Servicer to enter into a reconstituted servicing agreement (a "Reconstitution Agreement") acceptable to the Servicer, with terms and provisions which are no more onerous to the Servicer than those set forth herein. All Mortgage Loans subject to any Transfer will continue to be subject to the terms of this Agreement, as modified by the related Reconstitution Agreement. The Owner, in its sole discretion, may appoint a master servicer (a "Master Servicer") in connection with any Transfer. The Servicer hereby agrees to remit to and report to the Master Servicer, if so directed pursuant to a Reconstitution Agreement. If a Master Servicer has been appointed, the Master Servicer shall become the designee of the Owner under the Reconstitution Agreement and may enforce the Servicer's representations, covenants and warranties set forth in this Agreement.

### Section 10.17. Confidentiality

The Servicer shall keep confidential and shall not divulge to any party, without the Owner's prior written consent, the price paid by the Owner for the Mortgage Loans, except to the extent that it is reasonable and necessary for the Servicer to do so in working with legal counsel, auditors, taxing authorities or other governmental agencies.

### Section 10.18. Safeguarding Customer Information

The Owner and the Servicer agree they (i) shall comply with all applicable laws and regulations regarding the privacy or security of Customer Information, (ii) shall not collect, create, use, store, access, disclose or otherwise handle Customer Information in any manner inconsistent with any applicable laws or regulations regarding the privacy or security of Customer Information, (iii) shall not disclose Customer Information to any-affiliated or non-affiliated third party except to third party vendors engaged by the Servicer to prepare billing statements or to enforce or preserve its rights, as otherwise permitted or required by applicable law (or by regulatory authorities having jurisdiction in the premises) or, in the case of the Servicer, at the specific written direction of the Owner, (iv) shall maintain appropriate administrative, technical and physical safeguards to protect the security, confidentiality and

integrity of customer information, including security measures designed to meet the objectives of the Interagency Guidelines Establishing Information Security Standards, published in final form on December 28, 2004, 69 Fed. Reg. 77610, as amended from time to time. The restrictions set forth herein shall survive the termination of this Agreement.

[SIGNATURES APPEAR ON NEXT PAGE]

IN WITNESS WHEREOF, the Servicer, the Servicing Rights Owner and the Owner have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

MIDCOUNTRY BANK

(Owner)

By:_____
Name:_____
Title:_____

AURORA LOAN SERVICES LLC

(Servicer)

By:_____
Name: James L. Greene.
Title: Assistant Vice President

LEHMAN CAPITAL, A DIVISION OF
LEHMAN BROTHERS HOLDINGS INC.

(Servicing Rights Owner)

By:_____
Name: Jack E. Desens
Title: Authorized Signatory

-40-

**EXHIBIT A-1-1**

**MORTGAGE LOAN SCHEDULE**

A-1-1

**EXHIBIT A-2-1**

**MORTGAGE LOAN SCHEDULE**

A-2-1

# EXHIBIT B

## FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT

ASSIGNMENT AND ASSUMPTION, dated _____ __, 200__, between MidCountry Bank, having an office at _____ ("Assignor") and _____, having an office at _____ ("Assignee"):

For and in consideration of the sum of TEN DOLLARS ($10.00) and other valuable consideration the receipt and sufficiency of which hereby are acknowledged, and of the mutual covenants herein contained, the parties hereto hereby agree as follows:

1.    The Assignor hereby grants, transfers and assigns to Assignee all of the right, title and interest of Assignor, as owner, in, to and under that certain Servicing Agreement, Residential Mortgage Loans, Group No. 2007-1 (the "Servicing Agreement"), dated as of July 30, 2007, by and between the Assignor, Lehman Capital, A Division of Lehman Brothers Holdings Inc., as servicing rights owner and Aurora Loan Services LLC (the "Servicer").

2.    The Assignor warrants and represents to, and covenants with, the Assignee that:

a.    The Assignor is the lawful owner of the Mortgage Loans with the full right to transfer the Mortgage Loans free from any and all claims and encumbrances whatsoever;

b.    The Assignor has not received notice of, and has no knowledge of, any offsets, counterclaims or other defenses available to the Servicer with respect to the Servicing Agreement;

c.    The Assignor has not waived or agreed to any waiver under, or agreed to any amendment or other modification of, the Servicing Agreement, including without limitation the transfer of the servicing obligations under the Servicing Agreement; and

d.    Neither the Assignor nor anyone acting on its behalf has offered, transferred, pledged, sold or otherwise disposed of the Mortgage Loans or the Servicing Agreement, any interest in the Mortgage Loans, the Servicing Agreement or any other similar security to, or solicited any offer to buy or accept a transfer, pledge or other disposition of the Mortgage Loans, any interest in the Mortgage Loans, the Servicing Agreement or any other similar security from, or otherwise approached or negotiated with respect to the Mortgage Loans, the Servicing Agreement, any interest in the Mortgage Loans or any other similar security with, any person in any manner, or made any general solicitation by means of general advertising or in any other manner, or taken any other action which would constitute a distribution of the Mortgage Loans under the Securities Act of 1933 (the "33 Act") or which would render the disposition of the Mortgage Loans a violation of Section 5 of the 33 Act or require registration pursuant thereto.

3.    The Assignee warrants and represents to, and covenants with, the Assignor and the Servicer that:

a.    The Assignee agrees to be bound, as "Owner", by all of the terms, covenants and conditions of the Servicing Agreement, and from and after the date hereof, the Assignee assumes for the benefit of each of the Servicer and the Assignor all of the Assignor's obligations as "Owner" thereunder;

b.    The Assignee understands that the Mortgage Loans have not been registered under the 33 Act or the securities laws of any state;

c.    The purchase price being paid by the Assignee for the Mortgage Loans are in excess of $250,000 and will be paid by cash remittance of the full purchase price within 60 days of the sale;

d.    The Assignee is acquiring the Mortgage Loans for investment for its own account only and not for any other person. In this connection, neither the Assignee nor any Person authorized to act therefor has offered the Mortgage Loans by means of any general advertising or general solicitation within the meaning of Rule 502(c) of U.S. Securities and Exchange Commission Regulation D, promulgated under the 33 Act;

e.    The Assignee considers itself a substantial, sophisticated institutional investor having such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of investment in the Mortgage Loans;

f.    The Assignee has been furnished with all information regarding the Mortgage Loans, the Servicing Agreement that it has requested from the Assignor or the Servicer;

g.    Neither the Assignee nor anyone acting on its behalf has offered, transferred, pledged, sold or otherwise disposed of the Mortgage Loans, any interest in the Mortgage Loans or any other similar security to, or solicited any offer to buy or accept a transfer, pledge or other disposition of the Mortgage Loans, any interest in the Mortgage Loans or any other similar security from, or otherwise approached or negotiated with respect to the Mortgage Loans, any interest in the Mortgage Loans or any other similar security with, any person in any manner which would constitute a distribution of the Mortgage Loans under the 33 Act or which would render the disposition of the Mortgage Loans a violation of Section 5 of the 33 Act or require registration pursuant thereto, nor will it act, nor has it authorized or will it authorize any person to act, in such manner with respect to the Mortgage Loans; and

h.    Either: (1) the Assignee is not an employee benefit plan ("Plan") within the meaning of section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or a plan (also "Plan") within the meaning of section 4975(e)(1) of the Internal Revenue Code of 1986 ("Code"), and the Assignee is not directly or indirectly purchasing the Mortgage Loans on behalf of, investment manager of, as named fiduciary of, as

B-2

Trustee of, or with assets of, a Plan; or (2) the Assignee's purchase of the Mortgage Loans will not result in a prohibited transaction under section 406 of ERISA or section 4975 of the Code.

(i)    The Assignee's address for purposes of all notices and correspondence related to the Mortgage Loans and the Servicing Agreement is:

_____
_____

E-mail address:_____

Attention:_____

The Custodian's address for purposes of all notices and correspondence related to the Mortgage Loans is:

_____
_____

E-mail address:_____

Attention:_____

The Assignee's address for purposes of all remittance reports is:

_____
_____

E-mail address:_____

Attention:_____

The Assignee's address for purposes of all REO Property reports is:

_____
_____

E-mail address:_____

Attention:_____

The Assignee's address for purposes of all foreclosure and chargeoff consent requests is:

_____
_____

B-3

E-mail address:_____

Attention:_____

The Assignee's wire transfer instructions for purposes of all remittances and payments related to the Mortgage Loans and the Servicing Agreement are:

_____
_____
_____

[SIGNATURES COMMENCE ON FOLLOWING PAGE]

B-4

IN WITNESS WHEREOF, the parties have caused this Assignment and Assumption to be executed by their duly authorized officers as of the date first above written.

| | |
|---|---|
| Assignor | Assignee |
| By:_____ | By:_____ |
| Its:_____ | Its:_____ |

B-5

## EXHIBIT C

## CUSTODIAL ACCOUNT CERTIFICATION

_____, 200\_

Aurora Loan Services LLC hereby certifies that it has established the account described below as a Custodial Account pursuant to Section 3.03 of the Servicing Agreement, dated as of July 30, 2007, Residential Mortgage Loans, Group No. 2007-1.

Title of Account:    Aurora Loan Services LLC in trust for MidCountry Bank, Residential Mortgage Loans, Group No. 2007-1.

Account Number: _____

Address of office or branch of the firm at which Account is maintained:

_____

_____

_____

AURORA LOAN SERVICES LLC

By:_____
Name: James L. Greene
Title:  Assistant Vice President

C-1

## EXHIBIT D

### ESCROW ACCOUNT CERTIFICATION

_____, 200_

Aurora Loan Services LLC hereby certifies that it has established the account described below as an Escrow Account pursuant to Section 3.05 of the Servicing Agreement, dated as of July 30, 2007, Residential Mortgage Loans, Group No. 2007-1.

Title of Account:    Aurora Loan Services LLC in trust for MidCountry Bank, Residential Mortgage Loans, Group No. 2007-1, and various Mortgagors.

Account Number: _____

Address of office or branch of the firm at which Account is maintained:

_____

_____

_____

AURORA LOAN SERVICES LLC

By: _____
Name: James L. Greene
Title:  Assistant Vice President

D-1

EXHIBIT E

MORTGAGE LOAN DOCUMENT RELEASE FORM

_____
[Date]

LaSalle Bank National Association
[Address]
Attention: [_____]

In connection with the administration of the mortgages held by you as Custodian under a certain Servicing Agreement dated as of July 30, 2007, between MidCountry Bank as Owner, Aurora Loan Services LLC as Servicer and Lehman Capital, A Division of Lehman Brothers Holdings Inc. as Servicing Rights Owner (the "Servicing Agreement"), the undersigned Servicer hereby requests a release of the Mortgage File held by you as Custodian with respect to the following described Mortgage Loan for the reason indicated below.

Mortgagor's Name:

Address:

Loan No.:

Reason for requesting file:

_____    Mortgage Loan paid in full. (The Servicer hereby certifies that all amounts received in connection with the loan have been or will be credited to the Custodial Account pursuant to the Servicing Agreement.)

_____    The Mortgage Loan is being foreclosed.

_____    Mortgage Loan substituted. (The Servicer hereby certifies that a Qualifying Substitute Mortgage Loan has been assigned and delivered to you along with the related Mortgage File pursuant to the Servicing Agreement or Mortgage Loan Purchase and Warranties Agreement.)

_____    Mortgage Loan repurchased. (The Servicer hereby certifies that the Purchase Price has been credited as required pursuant to the Servicing Agreement or Mortgage Loan Purchase and Warranties Agreement.)

_____    Other. (Describe)

_____    California Mortgage Loan expected to be paid in full.

E-1

The undersigned acknowledges that the above Mortgage File will be held by the undersigned in accordance with the provisions of the Servicing Agreement and will be returned to you within ten (10) days of our receipt of the Mortgage File, except if the Mortgage Loan has been paid in full, or repurchased or substituted for a Qualifying Substitute Mortgage Loan (in which case the Mortgage File will be retained by us permanently) and except if the Mortgage Loan is being foreclosed or is a California Mortgage Loan specified above (in which case the Mortgage File will be returned when no longer required by us for such purpose).

Capitalized terms used herein shall have the meanings ascribed to them in the Servicing Agreement.

AURORA LOAN SERVICES LLC

By: _____

    Name:
    Title: Servicing Officer

B-2

## EXHIBIT F

### S50Y PRIVATE POOL DETAIL REPORT DATA FIELD ELEMENTS

Loan Number
Investor Number
Category
Investor Loan Number
Interest Rate
Due Date
Beginning Principal Balance
Remittance
ARM
Beginning Scheduled Principal Balance
Scheduled Principal
Servicing Fee Rate*
NET Interest Rate
P&I constant
Net Scheduled Interest
Ending Principal Balance
Principal Collected
Interest Collected
Servicing Fee Collected
Buydown

* For purposes of clarification, for each Mortgage Loan, the Servicing Fee Rate field contains a single entry equal to the sum of the Servicing Fee Rate plus the applicable LPMI Fee, if any

P-1

IN WITNESS WHEREOF, the Servicer, the Servicing Rights Owner and the Owner have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

MIDCOUNTRY BANK

(Owner)

By: _____
Name: DAVID P. TURK
Title: CHIEF FINANCIAL OFFICER


AURORA LOAN SERVICES LLC

(Servicer)

By: _____
Name: James L. Greene
Title: Assistant Vice President


LEHMAN CAPITAL, A DIVISION OF
LEHMAN BROTHERS HOLDINGS INC.

(Servicing Rights Owner)

By: _____
Name: Jack E. Deems
Title: Authorized Signatory

-40-

IN WITNESS WHEREOF, the parties have caused this Agreement to be signed by their respective officers thereunto duly authorized as of the date first above written.

SUBCONTRACT SWAP

[Owe]

By:
Name:
Title:

AURORA LOAN SERVICES LLC

[Seller]

By:
Name: Jerry L. Staton
Title: Assistant Vice President

COMMERCIAL DIVISION OF TRANSFER FUNDING PROGRAM

[Funding Rights Owner]

By:
Name: Mark E. Olson
Title: Authorized Signatory

-iii-