EXHIBIT C

| | |
|---|---|
| **DISTRICT COURT, DOUGLAS COUNTY, STATE OF COLORADO**<br>4000 Justice Way, Suite 2009<br>Castle Rock, Colorado 80109<br>(303)663-7200 | EFILED Document<br>CO Douglas County District Court 18th JD<br>Filing Date: Apr 14 2009 4:04PM MDT<br>Filing ID: 24668500<br>Review Clerk: Kathleen Cone |
| **Plaintiff:**    MIDCOUNTRY BANK,<br><br>v.<br><br>**Defendant**:    AURORA LOAN SERVICES LLC, a<br>Colorado limited liability company. | ▲ COURT USE ONLY ▲ |
| **Attorneys for Plaintiff MidCountry Bank:**<br>Scott T. Rodgers, #19943<br>Tamara A. Hoffbuhr, #29391<br>Kieran A. Lasater, #38751<br>Fairfield and Woods, P.C.<br>Wells Fargo Center, Suite 2400<br>1700 Lincoln Street<br>Denver, Colorado  80203<br>Tel:  303-830-2400<br>Fax: 303-830-1033<br>Email: srodgers@fwlaw.com; thoffbuhr@fwlaw.com;<br>klasater@fwlaw.com | Case No.: 2009cv369<br><br><br>Division: 1 |
| **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** | |

Plaintiff, MidCountry Bank ("MidCountry"), by and through its attorneys, Fairfield and

Woods, P.C., hereby submits its Response in Opposition to Defendant's Motion to Dismiss:[1]

## INTRODUCTION

Defendant moved to dismiss this action ("Motion") on the basis that Lehman Capital, a

Division of Lehman Holdings Inc. ("Lehman")—who is in bankruptcy—is alleged to be an

---

[1] Undersigned is mindful of the admonition against briefs in excess of ten pages under C.R.C.P. 121(c), Section 1-15(1); however, given the repercussions of the relief sought by Aurora, the vital nature of the claims at issue in this action, as well as the number of attendant analyses associated with C.R.C.P. 19, the Court's indulgence is respectfully requested.

indispensable party who cannot be made a party hereto, and in whose absence this action cannot proceed. *See generally* Motion. Defendant failed to carry its burden under Colorado Rule of Civil Procedure 19 ("Rule 19"), and this action may progress in Lehman's absence. Under Defendant's theory of Rule 19, anytime three or more parties enter into a contract, whenever one party has a claim against another party, he must also bring suit against each other party, even when he has no knowledge of claims against the non-breaching parties. Rule 19 does not so require. Moreover, the Contract was terminated in its entirety by its express terms upon Aurora's termination, and with it, Lehman's servicing rights.

To the extent Lehman feels it has some interest to protect in this suit against Aurora, it is free to move to intervene; whereas, if this action were dismissed, MidCountry would be left at the mercy of an at-will service provider who has already been terminated for cause and MidCountry will be left without a forum or redress.[2] The Motion should be dismissed.

## STANDARD OF REVIEW

"Whether a person or entity is indispensable turns on practical considerations particular to the facts of a case, including the nature of the party's claimed interest and the character of the claim for relief." *Bd. of County Comm'rs of County of San Miguel v. Roberts*, 159 P.3d 800, 807-08 (Colo. App. 2006) (citations omitted). Despite Aurora's argument to the contrary, there is no formulaic prescription to determine in every case who must be joined. *See Davis v. Maddox*, 457 P.2d 394, 348 (Colo. 1969) (citing *Niles-Bement-Pond Co. v. Iron Moulders' Union Local No. 68*, 254 U.S. 44 (1920)).

---

[2] As evidenced by Lehman's letter to the Court dated March 18, 2009, it is well aware of this action, and, heretofore, has not seen fit to move to intervene. Its silence is telling.

2

"Under [Rule] 19, [an] entity whose presence is necessary to assure complete relief or to protect a legally cognizable interest at stake in an action must be joined as a party thereto. *However, mere interest in the subject matter of the litigation, even though substantial, is not sufficient in itself to warrant a determination of indispensability*, although it may be sufficient to make those having such interest [a party] to be joined if feasible under [Rule] 19(a)." *Williamson v. Downs*, 829 P.2d 498, 500 (Colo. App. 1992) (emphasis added, citation omitted).

To carry its burden, Aurora was required to present evidence that Lehman actually claims an interest of sufficient magnitude in the subject of this action, which it has failed to do. *Id.* (providing burden and requirement of actual evidence to carry the burden). Citing the definition of servicing rights from the Servicing Agreement dated July 30, 2007 ("Contract"), Aurora claims Lehman receives a stream of income from the servicing of the loans; however, there is no evidence of that, and, in fact, it is unclear if Lehman receives anything from the servicing of the loans. Regardless, those facts cannot be determined at this procedural stage. Trial courts are given wide discretion in making determinations under Rule 19. *See Bd. of County Comm'rs of County of San Miguel*, 159 P.3d at 808.

## ARGUMENT

### I.   Lehman's Servicing Rights Do Not Survive The Contract's Termination.

At the time MidCountry terminated Aurora for cause on February 6, 2009, by its terms, the Contract itself was likewise terminated, including Lehman's servicing rights. For example, at Section 9.01, entitled Termination for Cause, the Contract provides "*[t]his Agreement shall be*

3

*terminable at the sole option of the Owner* if any of the following events of default exist on the part of [Aurora]: . . . ." Contract at § 9.01 (emphasis added).[3]

While certain obligations survive the termination of the Contract—including Aurora's obligation to cooperate with the transfer of the loan files and servicing obligations to the successor servicer (Contract at § 10.01), which it has willfully and wantonly breached—Lehman's servicing rights ownership *does not survive*. *See* Contract §§ 9.01, 9.02; *see also generally* Contract (the Contract sets forth certain surviving obligations and rights, but fails to provide a single word with regard to the continuation of the servicing rights). Accordingly, Aurora's assertion of Lehman's alleged ongoing interests in this action as the current servicing rights owner is illusory. Other than a potential termination fee if Aurora was terminated without cause, Lehman has no further rights under the Contract because the Contract itself has terminated, and, along with it, its servicing rights. *See* Contract at § 9.01; *see also id.* at § 9.02.

## II.    The Contract Sets Forth Each Party's Rights and Interests.

As Rule 19 requires, in order to determine who must be joined as a party, a clear understanding of the parties' relationship under the controlling document is necessary, as well as the actual relief sought. The controlling document is the Contract, which is a three-party contract between MidCountry, as the sole Owner of the loans and all related documents, Defendant as Servicer, and Lehman, as the Servicing Rights Owner.

---

[3] While MidCountry did not elect to terminate Aurora without cause, if it had, by its express terms, the Contract would also have terminated. At Section 9.02, entitled Termination without Cause, the Contract provides "*[t]his Agreement shall terminate* upon: . . . (iii) . . . sixty days notice from [MidCountry]. . . ." Contract at § 9.02 (emphasis added). That sixty-day period has expired.

4

A.    MidCountry Bank—Sole Owner

i.    Discretion to Terminate Aurora Without Regard to Lehman

MidCountry is the owner of the loans and all the mortgage loan documents associated therewith. Contract at § 2.01; *see also infra* note 8. Aurora concedes this ownership in its Motion. Motion at p. 1 ("Plaintiff . . . owns the loans in question."). However, in order to make Lehman appear at the center of this dispute, Aurora makes certain contradictory misstatements.

For example, Aurora's assertion that Lehman holds some ownership interest in the loans and the mortgage files is unsupportable. *See* Motion at Section C(1) ("In short, LBHI has . . . an ownership interest relative to the loan documents . . . ."). Under the Contract, the loans and all the documents in Aurora's possession were held only in a custodial capacity and solely at MidCountry's will as the *sole owner* thereof. *See, e.g.,* Contract at § 2.01; *see also infra* note 8.

By way of additional example, under the Contract, MidCountry is vested with the *sole* discretion to terminate Aurora for cause on the occurrence of various enumerated events. Contract at § 9.01. Despite unambiguously providing MidCountry with complete and unfettered unilateral discretion to terminate Aurora,[4] Defendant nonetheless asserts Lehman has some contractual right to approve or otherwise voice its opinion in MidCountry's decision to terminate Aurora. *See, e.g.,* Motion at Section C(2) ("In short, MidCountry seeks to rewrite the [Contract] in a manner that smoothes its road towards elimination of Aurora as the servicer, *without*

---

[4] Section 9.01 of the Contract provides, under a section entitled Termination for Cause, that "[t]his agreement shall be terminable *at [MidCountry's] sole option* . . . ." Contract § 9.01 (emphasis added); *see also* Contract at § 9.02 (providing discretionary termination by MidCountry without cause on 60 days notice).

*obtaining the requisite approval from [Lehman] . . . .*") (emphasis added). Defendant's assertion that Lehman has a chair at the table in MidCountry's decision to terminate Aurora is baseless.

Lehman's involvement in the termination for cause scenario is temporally removed and subsequent to MidCountry's initial discretionary decision to terminate Aurora for cause at its "sole option." *See* Contract § 9.01. At best, Lehman is only given the opportunity to *reasonably* object to the *identity* of the successor servicer, not to the initial termination of Aurora.[5] *Compare* Contract § 9.01 (Termination for Cause), *with* Contract § 10.01 (Successor to Servicer). The Defendant misses this critical distinction which eviscerates its argument that Lehman must be a party because the Contract provides that the Contract and Aurora are terminable at MidCountry's sole discretion. *Compare* Motion at Sections C(1)-(3), *with* Contract §§ 9.01, 9.02.

MidCountry is also vested with the contractual right to unilaterally terminate Aurora without cause by simply providing the parties with 60 days written notice. Contract at § 9.02. In the termination without cause scenario, Lehman's *only* involvement is to receive payment of a defined termination fee. *Id.* As these provisions make clear, MidCountry may terminate Aurora at its sole option and discretion without regard to Lehman or Aurora, at which time the Contract, and Lehman's servicing rights, terminate with it.

B.    Aurora—Former At-Will Servicer

The Contract provides Aurora is to service the loans on behalf of and for the benefit of MidCountry. *See, e.g.,* Contract at § 2.01. Under the Contract, Aurora, like Lehman, has absolutely no right to object or otherwise interfere with MidCountry's discretionary decision to

---

[5] Lehman's limited opportunity to reasonably object to the successor servicer is questionable given the fact that by its express terms, upon Aurora's termination, the Contract itself terminated.

terminate Aurora, whether it be with or without cause. *See generally* Contract at §§ 2.01; 9.01; 9.02; 10.01. Put simply, Aurora served as servicer at the will of MidCountry, and, upon its receipt of MidCountry's written termination for cause dated February 6, 2009, its contractual right to service the loans likewise terminated. *See, e.g., Federal Home Mortgage Corp. v. American Home Mortgage Corp.*, 2007 WL 2228619 (N.D. Tex., Aug. 3, 2007) (unreported decision) (under contract terms identical in material part to contract at issue here servicer's ability to service loans was terminated immediately upon its termination).[6]

To the extent Aurora believes that MidCountry did not have justification to terminate it for cause, its sole remedy is a claim for damages, if any. *In re LiTenda*, 246 B.R. at 192, 193. Aurora (and Lehman) does not have the right to refuse to accept Aurora's termination—whether with or without cause—which unlawful and unjustifiable action forced MidCountry to seek injunctive relief. *See, e.g., Federal Home Mortgage Corp., supra; see also* note 6; *see* Contract at §§ 2.01, 9.01, 9.02, 10.01; *see also generally* Contract.

Aurora does, however, have surviving contractual obligations to facilitate and cooperate in the transfer of servicing to its successor. Contract at § 10.01. Aurora has made clear, however, that it will not cooperate and so has further breached the Contract. *Id.* Now, in order

---

[6] *See also American Bankers Mortgage Corp. v. Federal Home Loan Mortgage Corp.*, 75 F.3d 1401, 1412 (9th Cir. 1996) (under similar contract, once terminated, servicer has no contractual right to service owner's loans); *In re LiTenda*, 246 B.R. 185, 192, 193 (Bankr. D. N.J. 2000) (under similar contract, once terminated, servicer's ability to service loans terminated immediately and sole remaining remedy is suit for damages, if any); *Martin v. First Federal Savings and Loan Ass'n of Andalusia*, 559 So.2d 1075 (Ala. 1990) (preliminary injunction forcing servicer to cease and desist from further servicing and to return property and funds upheld where servicer refused to recognize its termination and refused to return funds).

to prolong its unjustifiable refusal to relinquish MidCountry's property, Aurora asserts Lehman must be a party to this action. As discussed *infra*, this action may proceed without Lehman.

C.    Lehman—Former Servicing Rights Owner

As the Servicing Rights Owner, prior to the Contract's termination on February 6, 2009, (date Aurora terminated for cause), Lehman held the right to service the loans, which responsibility was given to Aurora under the Contract. Contract at Article I, p.8 (definition of Servicing Rights). Lehman was also entitled to all servicing fees received by Aurora for the servicing of the loans. *Id.* However, with respect to MidCountry's right to terminate Aurora and the Contract, Lehman had absolutely no rights regarding that unilateral and discretionary decision vested solely in MidCountry as the owner of the loans. Contract at §§ 2.02, 9.01, 9.02.

To the extent Lehman determines MidCountry breached the Contract by terminating Aurora with cause where no cause existed, Lehman cannot hamstring MidCountry or otherwise intermeddle with its discretionary decision to terminate Aurora, but, rather, is left with a potential termination fee. Contract at §§ 9.01, 9.02; *see generally* Contract. The foregoing description of the contracting parties' rights and relationship establishes that Lehman's relevance to this action is highly speculative and tenuous at best, and Rule 19 is not met.

**II.    Lehman Need Not Be Joined Under Rule 19(a).**

In addressing the question of whether Lehman is an indispensable party, Aurora relies on a case that predates the 1966 revision of Rule 19, which revision substantially changed the focus of the Rule to that of a pragmatic approach. Motion at pp. 2-3 (citing *Woodco v. Lindahl*, 152 Colo. 49 (1963)); *see also* Colo. Civil Rules Annotated (2005), Vol. 4 at pp. 324. Regardless, Aurora's analysis is flawed.

8

A.    Complete relief may be accorded without Lehman.

The initial determination under Rule 19 is whether a non-party should be joined. In determining that threshold issue, the Rule provides that Lehman should be joined if, in its absence, complete relief cannot be accorded among MidCountry and Aurora. C.R.C.P. 19(a)(1).

Despite Aurora's attempts to muddy the waters, MidCountry brought this action against *Aurora* as a result of *Aurora's* sundry breaches of its contractual obligations owing only to MidCountry. *See generally* First Amended Verified Complaint for Replevin and other Relief. Aurora's refusal to recognize its termination, its unlawful retention of MidCountry's property and unjustifiable insistence on the continued servicing of the loans necessitated the replevin and injunctive relief against *Aurora*. *Id.* Put simply, based upon the information presently known to MidCountry, it has claims against *Aurora*, not Lehman. To the extent Aurora has claims against MidCountry, this Court can freely adjudicate such claims, without impacting any claims Lehman may have. Aurora's conclusory assertions of Lehman's interests in the relief sought in this suit—without providing evidence of any kind—does not meet its burden. *See Williamson v. Downs*, 829 P.2d 498, 500 (Colo. App. 1992).

For its part, Lehman is, of course, free to move to intervene in this Action under Rule 24 to the extent it believes MidCountry has breached any obligation flowing to it under the Contract or otherwise asserts an interest. *See* C.R.C.P. 24(a) (intervention as of right where party claims interest in property or transaction at issue where as practical matter will be impaired or impeded unless interest adequately represented by existing parties).[7]

---

[7] The same is true to the extent Lehman believes Aurora's various breaches of the Contract have harmed Lehman, such as its loss of a termination fee based upon Aurora's malfeasance and/or

9

Setting aside Aurora's refusal to relinquish MidCountry's property or to recognize its termination, at its roots this is a breach of contract/fiduciary duty action which happens to involve a three-party contract. That fact is not remarkable, and, as discussed *infra*, the fact the Contract involves multiple parties is far from dispositive of the issue of Lehman's joinder. Further, as discussed *infra*, the foreign cases cited by Aurora for the proposition that a multi-party contract *per se* requires joinder of all parties are easily distinguishable. Additionally, a formulaic approach is improper. *See Davis v. Maddox*, 457 P.2d 394, 396 (Colo. 1969) (citing *Niles-Bement-Pond Co. v. Iron Moulders' Union, Local No. 68*, 254 U.S. 77 (1920)).

Regardless, even a substantial interest in the action is not sufficient in and of itself to require the dismissal of this action under Rule 19. *Williamson*, 829 P.2d at 500. This Court may fully adjudicate the claims between MidCountry and Aurora, which adjudication need not affect Lehman's alleged interest or any potential claims against MidCountry or Aurora.

B.    Lehman is free to protect its interests, if any.

Under Rule 19, even if complete relief may be accorded between MidCountry and Aurora—which it can be here—Lehman should be joined if it claims a sufficient interest relating to the action (assumed *arguendo* only and is specifically contested), and without its presence in the action, its ability to protect that interest is, as a practical matter, impaired or impeded. C.R.C.P. 19(a)(2)(A). First, Aurora has failed to come forward with evidence to support its contention that Lehman claims such a critical interest so that this action should be dismissed. *Williamson*, 829 P.2d at 500. Second, there is nothing of record that suggests that any such

nonfeasance giving rise to MidCountry's cause to terminate Aurora. *Compare* Contract § 9.01, *with* § 9.02; *see* C.R.C.P. 24(a) and (b).

interest rises to the requisite level, which, standing alone as it does here, must exceed even a substantial interest. *Id.* Finally, there is nothing in the relief sought by MidCountry that would impair or impede Lehman from either intervening here under Rule 24, or bringing a separate action against Aurora and/or MidCountry. *See, e.g.,* C.R.C.P. 24(a)-(b).

In this action, MidCountry seeks damages from Aurora for its beaches of contract and its fiduciary duties, as well as an accounting from Aurora. It is difficult to envision how any relief granted on the accounting or breach of fiduciary duty claims affect Lehman. The same is true of replevin because MidCountry is the exclusive owner of the loans and all documents associated therewith which are improperly being detained by Aurora. Contract at § 2.01.

With respect to the breach of contract claim, upon Aurora's termination, the Contract itself was terminated by its express terms—terms drafted and offered by Lehman. *See* Contract §§ 9.01, 9.02. MidCountry's unilateral and discretionary decision to terminate Aurora extinguished not only Aurora's ability to service the loans, it also terminated the Contract itself, and with it, Lehman's servicing rights ownership. Contract §§ 9.01, 9.02. Therefore, Lehman's former servicing rights are not a present right to be affected by this action. Lehman is a sophisticated business entity with actual knowledge of this action and is free to protect its interests herein, if any. *See* 22 A.L.R. Fed. 765, § 2(b) (discussing F.R.C.P. 19 and noting that any alleged prejudice to a non-party may be avoided by notifying the absent part of the action).

C.     Neither Aurora nor MidCountry will face multiple or inconsistent obligations.

If Aurora or MidCountry are at *substantial risk* of facing double, multiple or inconsistent obligations by reason of Lehman's claimed interests (which are presently unknown and the

subject of pure speculation and conjecture), Lehman should be joined. C.R.C.P. 19(a)(2)(B). There is no risk on these facts, much less a substantial risk, and Aurora cannot carry its burden.

Aurora's Motion does not address which of MidCountry's claims it objects to under Rule 19; however, it appears they address only the beach of contract claim. In addition to seeking injunctive relief, MidCountry has brought four counts. Each claim will be addressed herein.

1.    Replevin, Accounting and Breach of Fiduciary Duty

If MidCountry succeeds in its claim for replevin, Aurora will be required to return to MidCountry the loan documents and the accounts held in trust for MidCountry as the sole owner thereof and can so Aurora can face no double, multiple or inconsistent obligation to Lehman, who has no ownership interest in the loans, the documents, or the accounts. *See, e.g.,* Contract § 2.01.[8] On the other hand, if Aurora prevails and is not required to return the loans documents and accounts to MidCountry, MidCountry will not be saddled with multiple or inconsistent obligations to Lehman. Accordingly, the inquiry is not met with respect to the replevin claim.

If MidCountry succeeds on its claim for an accounting, Aurora will not be subject to double, multiple or inconsistent obligations to Lehman, who has no ownership interests. *Id.* To the extent Lehman believes it is entitled to an accounting from Aurora, it may intervene and so seek; however, by providing MidCountry with an accounting, Aurora is under no obligation to Lehman, much less a double, multiple or inconsistent obligation.

If MidCountry succeeds on its breach of fiduciary duty claim, Aurora will be liable to MidCountry for the damages caused thereby. Aurora will not be subject to double, multiple or

---

[8] "The ownership of each Mortgage Note, Mortgage, and the contents of the Servicing File shall be vested in the Owner [MidCountry] and the ownership of all records and documents . . . which come into the possession of [Aurora] shall immediately vest in the Owner [MidCountry] . . . ."

12

inconsistent obligations to Lehman vis-à-vis this relief. Aurora is a stand alone corporation with its own identity and is not a part of the Lehman bankruptcy. Any judgment against Aurora is against Aurora only. To the extent Lehman may have some claim against Aurora arising from some other contract to which MidCountry is not a party, which is highly speculative at best, that does not protect Aurora from its liabilities to MidCountry. Further, as a tort, the concept of indispensable party does not apply to breach of fiduciary duty. *See* 22 A.L.R. Fed 765, § 17 (collecting cases).

    2.    Breach of Contract

If MidCountry succeeds on its breach of contract claim, Aurora will be liable for the damages caused thereby. Aurora will not be subject to double, multiple or inconsistent obligations to Lehman vis-à-vis this relief. Again, Aurora is a stand alone corporation, is not a part of the Lehman bankruptcy, and any judgment against Aurora is against Aurora only. It is pure speculation whether Lehman may have some claim against Aurora arising from some other contract to which MidCountry is not a party.

Citing dated federal cases, Aurora argues that all parties to a multi-party contract must be named in a suit arising under a contract. Motion at § C(5). The assertion is untenable. The United States Supreme Court has long recognized that in a contract with multiple parties, each party to the contract need not be named as a party to an action and so is not an indispensable party. *See, e.g., Camp v. Gress*, 250 U.S. 308, 317 (1919) ("[T]his is an action on a joint contract, and one of the several joint contractors is not an indispensable party defendant in such a suit."). While it is true that for obvious reasons where a party seeks to *set aside* a contract or a lease entirely, all parties thereto must be joined; however, such is not at issue in this case. *See,*

13

*e.g., Jicarilla Apache Tribe v. Hodel*, 821 F.2d 537, 540 (10th Cir. 1987). Here, MidCountry seeks to *enforce* the Contract against one party, not to rescind the Contract in its entirety as though it never had legal effect *ab initio*.

Aurora relies on *Acton Co., Inc. of Massachusetts v. Bachman Foods, Inc.*, 668 F.2d 76 (1st Cir. 1982) for the proposition that where a subsidiary of a parent corporation is involved in a suit arising out of a contract where the parent is also a party, the suit must be dismissed in the parent's absence. *See* Motion at Section C(5). Beyond the fact that this Court's jurisdiction is, of course, not based upon diversity, *Acton*, *supra*, is distinguishable because the suit by the subsidiary there sought relief owed to the parent under the contract at issue. *Acton*, 668 F.2d at 77. Here, MidCountry seeks relief against Aurora—who is an indirect non-debtor subsidiary—based upon contractual obligations owed directly to MidCountry.

Further, and most critically, *Acton* is distinguishable because there a separate state action involving all the parties was already pending before a New York state court at the time the federal *Acton* case was filed, providing a convenient forum to resolve the entire dispute and to avoid inconsistent rulings. *Id.* at 78, 81. Here, if this action is dismissed, MidCountry will have no forum within which to proceed. Moreover, under the *Acton* contract, the parent corporation had guaranteed the subsidiary's performance. *Id.* In this action, Lehman did not guaranty Aurora's performance. The *Acton* court additionally noted that the non-party parent corporation and subsidiary's interests were directly aligned. *Id.* Here, the interests of Lehman and Aurora are in many respects opposed.[9]  In support of its holding that the case should be dismissed because the non-party should be joined but such joinder would destroy diversity jurisdiction, the

_____

[9] *See supra* note 7 and accompanying text.

14

court cited those cases that hold that in an action for *rescission*, all parties must be added. *Id.* at 81-82. As noted above, this action does not involve rescission. Accordingly, *Acton* is not in point and fails to provide persuasive guidance.

Aurora's reliance on *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518 (D. Conn. 1991) is likewise misplaced. In *Travelers, supra*, the court made the generic statement that "the precedent supports the proposition that a contracting party is the paradigm of an indispensable party." *Id.* at 527. However, the cases collected by the court for support are distinguishable as each is either a case where the non-party's interest were patent, involved a claim for rescission, or involved a suit for breach of contract where the defendant was not the signatory of the contract and the actual defendant could not be liable for the non-party's alleged breach. *See id.* at 527; *see also id.* at n.13 (collecting rescission cases).

*Travelers* itself is distinguishable because there a separate state action was pending during the federal *Travelers* case in which the litigants could seek redress and a complete resolution of the claims. *Id.* at 526. Here, no other forum is available to MidCountry if this action is dismissed. Further, in *Travelers*, the party and non-party were directly related parent and subsidiary with shared interests. *Id.* at 529. In this case, Aurora is an indirect non-debtor subsidiary with markedly divergent rights, duties and obligations under the Contract. *See* Contract at § 2.01, Article IV, § 9.01, § 9.02, § 10.01 (providing only two instances where Lehman is involved after the termination of Aurora, but setting forth numerous obligations of Aurora to service the loans and reflecting only Aurora made reps and warranties to MidCountry which Lehman did not); *see also supra* note 7. When examined critically, Aurora's case law does not provide persuasive support.

15

Aurora has failed to cite a Colorado case which holds that all parties to a contract must always be joined as indispensable parties, and one does not exist. *See generally* Motion. While a case directly on point was not found, it is telling that no Colorado court has so held. Guidance may be found, however, in *Seago v. Fellet*, 676 P.2d 1224, 1227 (Colo. App. 1983), wherein the Court of Appeals rejected a developer's argument on appeal that a group of homeowner plaintiffs' claim for breach of contract arising from the developer's failure to pave a road should be dismissed for failure to join an indispensable party where all the home owners/contracting parties in the development were not joined in the action. The court held it was able to accord relief on the contract claims between the parties without affecting the rights of the non-party home owners because, while each had an interest in whether the road was paved, it was possible to provide complete relief to those before the court without prejudicing the non-parties. *See id.* That same logic applies here.

Based upon the foregoing, Aurora has not carried its burden of establishing that Lehman should be joined in this action under Rule 19(a)(1) and (2). *Williamson v. Downs*, 829 P.2d 498, 500 (Colo. App. 1992). The action may proceed unfettered as between MidCountry and Aurora.

### III.    The Interests of Justice Require That the Action Proceed Under Rule 19(b).

Assuming *arguendo* the Court determines Lehman should be joined under Rule 19(a)(1) or (2), the analysis is not complete. Rule 19(b) provides that the Court must then determine first whether the non-party can be made a party, and, if not, whether the interests of justice demand that the action proceed without the absent party. C.R.C.P. 19(b).

16

A.    Lehman may still be made a party.

Aurora argues that Lehman is in bankruptcy and so cannot be served; however, the argument is myopic in that it fails to recognize the possibility of obtaining relief from stay to add Lehman, or for the Court to fashion relief so as to avoid prejudice. *See* C.R.C.P. 19(b).

Based upon Aurora's assertions at the initial hearing on replevin and injunctive relief on March 18, 2009, carried over until May 15, 2009, as a prophylactic measure, MidCountry has since filed a Motion for Relief From Stay in the Lehman bankruptcy case, seeking a determination that, *inter alia*, any rights that Lehman had in the Contract are not property of the estate under Section 541(d) of the Bankruptcy Code. Additionally, as further relief from stay, MidCountry has sought relief to, *inter alia*, bring claims against Lehman related to this Contract, if any are later determined to exist. The Motion for Relief From Stay will be heard in the Southern District of New York on April 22, 2009.

Until such time as the Lehman court rules against MidCountry on the request for relief from stay, Lehman may still be subject to service of process. Moreover, if the Court determines Lehman should be made a party, the case should not be dismissed, but rather, MidCountry should be given an opportunity to join Lehman. *See, e.g., Cruz-Cesario v. Don Carlos Mexican Foods*, 122 P.3d 1078, 1081 (Colo. App. 2005) (overturning trial court's dismissal of action upon finding of an indispensable non-party providing "if there has been a failure to join an indispensable party, the court should not dismiss the action, but rather should join that necessary party or allow the plaintiff an opportunity to do so."). Therefore, assuming *arguendo* Rule 19(a)(1) or (2) is met, Lehman may still be made a party, and so Rule 19(b) is not satisfied.

17

B.    Justice requires that the action continue.

Regardless, even if the Court determines that Lehman should but cannot be joined, the interests of justice demand that the action proceed. *See* C.R.C.P. 19(b). In determining whether justice requires that an action continue despite the absence of a party who should be but cannot be joined (assumed *arguendo* only, *see* discussion *supra*), the Court is to consider the following factors: (1) to what extent a judgment would be prejudicial to the absent party or those already parties; (2) the extent to which through protective provisions in the judgment, the shaping of relief or other measures, the prejudice to the absent party or the existing parties may be reduced or avoided; (3) whether a judgment in the person's absence would be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed. C.R.C.P. 19(b). As discussed *infra seriatim*, these factors demand that the action proceed.

i.    No Prejudice to Lehman, Aurora or MidCountry

If this matter were to proceed and a judgment eventually entered in favor of MidCountry against Aurora, or in favor of Aurora against MidCountry, Lehman would suffer absolutely no prejudice. To the extent Lehman has a cause of action against MidCountry or Aurora, that cause of action would remain unaffected. If Lehman has concern regarding the possible determination that Aurora was in fact terminated for cause, as opposed to without cause, Aurora has at least as much concern, and can adequately represent such concern in this action. Moreover, Lehman's remedy is intervention if it determines its rights or interests are in fact impacted by this action. Lehman's silence is noteworthy. For its part, Aurora does not claim that a judgment entered in this matter in Lehman's absence would prejudice Aurora. *See* Motion at Section C(5).

18

ii.    Any potential prejudice could be avoided

If some prejudice does in fact materialize during the prosecution of this action, it would be possible for the Court to fashion or otherwise craft any eventual relief so as to preserve Lehman's rights or otherwise avoid any prejudice.  For example, Lehman is on notice of this action and can protect its interests, in any, through intervention.  Further, if it decides not to intervene, Lehman can claim a termination fee at such time and in such forum as it sees fit, as a finding of cause to terminate Aurora in this action would not be binding on Lehman as a non-party indirect parent corporation with a distinct corporate identity.  Similarly, Lehman retains all other claims it may have against Aurora and MidCountry, including any claimed damage associated with its alleged ability to consent to a successor servicer, which, in any event, cannot be unreasonably withheld. *See* Contract at § 10.01.  As the foregoing examples demonstrate, the Court may act so as to avoid any potential prejudice to Lehman, Aurora or MidCountry, and, therefore, this factor also weighs in favor of allowing the action to proceed.

iii.    A judgment without Lehman would be adequate

With respect to MidCountry's claims against Aurora, a judgment would accord MidCountry complete relief because Lehman does not possess any of MidCountry's property and, because of its disengaged role in the servicing relationship, MidCountry is not presently aware of any claims against Lehman.  If Aurora were to bring counterclaims against MidCountry and prevail, Lehman's absence would have no conceivable affect on the adequacy of such a judgment.  Accordingly, this factor militates in favor of allowing the action to proceed.

19

iv.     If dismissed, MidCountry would have no adequate remedy

To dismiss this action would allow Aurora to continue to hold and manage MidCountry's property *against MidCountry's will without contractual authority*, including the receipt and management of tens of thousands of dollars of mortgage payments made to MidCountry by its borrowers on a monthly basis. That Aurora would have preferred not to have been terminated is understandable. What is beyond all comprehension or toleration is that it has refused to accept its termination and to return MidCountry's property—which decision is solely vested in MidCountry as the owner of the loans and all documents associated therewith—which necessitated the replevin and injunctive relief sought. Contract at §§ 2.01, 9.01, 9.02; 10.01.

If this action were dismissed, MidCountry will literally be held hostage against its will by Aurora and made to bear the continued mismanagement of its property by an *at-will service provider which has already been terminated for cause*. MidCountry would be left with absolutely no remedy and no forum within which to seek redress. *See* C.R.C.P. 19(b).

The alternative to allowing this action to proceed is the antithesis of justice and would rightly offend and shock the conscience of all reasonable persons. Nonetheless, that is precisely what Aurora asks this Court to countenance. In the true interests of justice, MidCountry respectfully prays that the Court decline Aurora's invitation and allow MidCountry to seek immediate redress in the form of replevin and injunctive relief, as well as to continue its action for breach of contract, breach of fiduciary duty and accounting. As the four factors detailed above make plain, even assuming *arguendo* that Lehman should be but cannot be joined, justice demands that the action proceed.

20

## CONCLUSION

Based upon the foregoing, MidCountry respectfully requests that the Court deny the Defendant's Motion to Dismiss.

Dated this 14th day of April, 2009.

FAIRFIELD AND WOODS. P.C.

s/ Kieran A. Lasater

Scott T. Rodgers
Tamara A. Hoffbuhr
Kieran A. Lasater

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 14th day of April, 2009, a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** was filed and served via LexisNexis to the following:

      Jamie G. Siler
      P. Christian Wolf
      Daniel R. Delaney
      Bloom Murr & Accomazzo, P.C.
      410 17th Street, Suite 2400
      Denver, CO 80202

*s/ Sharon Chiecuto*
Sharon Chiecuto

# EXHIBIT D

**From:** Greene, James L
**Sent:** Wednesday, January 14, 2009 4:05 PM
**To:** 'Fred Taylor'
**Cc:** Larry D. Flowers; Bob Hatcher; Marian Mackle; Dick Hills; David P. Turk; Bonnie Peterson; Greg Krenz; David Allison; Mitzi L. Stojsavljevic
**Subject:** RE: Termination of Servicing Agreement

As we discussed earlier, you are aware Aurora has been contacted by Dovenmuehle about the pending transfer of servicing but is unable to have any substantive conversation with them. Once the notice provisions detailed in the servicing agreement between MidCountry and Aurora are complied with we will make every effort to cooperate fully.


Jim Greene
(720) 945-4849
jagreene@alservices.com


**From:** Fred Taylor [mailto:Fred.Taylor@MidCountryBank.com]
**Sent:** Monday, January 12, 2009 9:44 AM
**To:** Greene, James L
**Cc:** Larry D. Flowers; Bob Hatcher; Marian Mackle; Dick Hills; David P. Turk; Bonnie Peterson; Greg Krenz; David Allison; Mitzi L. Stojsavljevic
**Subject:** Termination of Servicing Agreement

James L. Greene: This is to notify you that MidCountry Bank has decided to terminate its Servicing Agreement with Aurora Loan Services, effective February 1, 2009. We have arranged for Dovenmuehle Mortgage, Inc to assume the servicing responsibility for MidCountry Bank's(Owner) portfolio. Your full cooperation with this transfer is expected and demanded. Fred Taylor

- - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named. If you are not the intended recipient of this message, you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Aurora Loan Services. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice.

# EXHIBIT E



# FAIRFIELD AND WOODS P.C.
### ATTORNEYS AND COUNSELORS SINCE 1934

Wells Fargo Center, Suite 2400 · 1700 Lincoln St. · Denver, CO 80203-4524
Tel: 303-830-2400 · Fax: 303-830-1033 · www.fwlaw.com

Scott T. Rodgers
direct: 303-894-4464
email: srodgers@fwlaw.com

February 6, 2009

**VIA FACSIMILE, HAND DELIVERY and REGISTERED MAIL, RETURN RECEIPT
REQUESTED (with enclosures)**

Aurora Loan Services LLC
10350 Park Meadows Drive
Littleton, CO 80124
Attention: James L. Greene (MidCountry Bank, 2007-1)
Telephone: (702) 945-4849
Facsimile: (720) 945-5735

Lehman Capital, A Division of Lehman Brothers Holdings Inc.
745 Seventh Avenue
13th Floor
New York, New York 10019
Attention: Manager, Contract Finance
Telephone: (212) 526-7527
Facsimile: (212) 526-0323

**RE:    TERMINATION FOR CAUSE AND APPOINTMENT OF SUCCESSOR**

Dear Mr. Greene:

We represent MidCountry Bank ("MidCountry") in relation to that certain contract dated July 30,
2007 ("Contract"). This letter will serve to terminate Aurora Loan Services LLC ("Aurora") for
cause, as well as to appoint a successor servicer entity.

<u>Termination for Cause</u>

Pursuant to Section 9.01 of the Contract, a copy of which is attached hereto as **Attachment A**,
MidCountry terminates Aurora for cause based on the following grounds:

    A.    Section 9.01(ii) of the Contract provides that MidCountry may terminate Aurora
        for cause in the event of Aurora's failure to duly "observe or perform in any
        material respect any other of the covenants or agreements on the part of [Aurora]
        set forth in this [Contract] which continues unremedied for a period of thirty (30)
        days . . . ."

        Aurora breached this term of the agreement, by, among other things, failing to
        observe the practices of prudent mortgage lending institutions which service
        mortgage loans of the same type in the respective jurisdictions at issue (*see*
        Section 2.01, referencing "Accepted Servicing Practices," as defined in Article I



**EXHIBIT**

**B**



**FAIRFIELD** AND **WOODS** P.C.
ATTORNEYS AND COUNSELORS SINCE 1934

Aurora Loan Services LLC
Lehman Capital
February 6, 2009
RE: TERMINATION FOR CAUSE
AND APPOINTMENT OF SUCCESSOR

of the Contract) with respect to not less than the <u>Adams Loan</u> (Servicer Loan No. 45697588) and the <u>Cisneros Loan</u> (Servicer Loan No. 40402422). Aurora breached the above-reference Contract provisions, as well as Section 3.08 (relating to LPMI Claims), by failing to timely object to Triad's denial of mortgage insurance coverage for both the <u>Adams</u> and <u>Cisneros Loans</u>, where the grounds for such denial were baseless and/or in doubt, as well as by failing to timely inform MidCountry of such denial of coverage until after the expiration of the objection/appeal deadline. The aforementioned breaches have or will cause significant pecuniary damages to MidCountry, which breaches have remained unremedied for a period in excess of thirty (30) days.

B.    Aurora additionally breached Section 9.01(ii), as well as Section 3.01(c) of the Contract, with respect to the <u>Lindo Loan</u> (Servicer Loan No. 40552739), by, among other things, failing to notify MidCountry or to secure its pre-approval of the short sale at a significantly discounted price, which failure constitutes a violation of Section 3.10 (requiring notice/pre-approval), as well as a violation of the practices of prudent mortgage lending institutions which service mortgage loans of the same type in the respective jurisdictions at issue. *See* Sections 3.10; 2.01; *see also* Article I, defining "Accepted Servicing Practices"); *see also* Section 3.01(c) (regarding duty to exercise same care as though servicing or administering loans for Aurora's own account). This breach has or will caused significant pecuniary damage to MidCountry, which breach has remained unremedied for a period in excess of thirty (30) days.

C.    During the course of its servicing and administration of the loans at issue, Aurora has failed to confer with, and to keep informed, MidCountry in numerous aspects of such servicing and administration, which constitutes an additional breach of its duties under the Contract. MidCountry, through its former counsel and by letter dated September 3, 2008 (attached hereto as **Attachment B**), advised Aurora of its repeated failure to communicate with MidCountry in a timely and meaningful manner regarding delinquent loans and to seek required pre-approvals. MidCountry sought additional information for delinquent loans on an ongoing basis, which request has been ignored by Aurora.

Accordingly, based upon the foregoing, MidCountry terminates for cause all rights and obligations of Aurora under the Contract, except those obligations which survive such termination.

<u>Appointment of Successor Servicer</u>

Pursuant to Section 10.01, MidCountry hereby appoints as Aurora's successor:



FAIRFIELD AND WOODS P.C.
ATTORNEYS AND COUNSELORS SINCE 1934

Aurora Loan Services LLC<br>
Lehman Capital<br>
February 6, 2009<br>
RE: TERMINATION FOR CAUSE<br>
AND APPOINTMENT OF SUCCESSOR

Dovenmuehle Mortgage, Inc.
1 Corporate Drive, Suite 360
Lake Zurich, IL 60047

By this correspondence, and pursuant to Section 10.01 of the Contract, MidCountry requests that Lehman Capital, A Division of Lehman Brothers Holdings Inc., as Servicing Rights Owner, forthwith grant its consent to the appointment of Dovenmuehle Mortgage, Inc. ("Dovenmuehle") as successor servicer, which consent cannot be unreasonably withheld.

Aurora shall prepare, execute and deliver to Dovenmuehle, at the above-address, any and all documents and other instruments, place into Dovenmuehle's possession all Servicing Files, and do all other acts necessary or appropriate to effect the purpose of this termination, as detailed in Section 10.01. Such actions and transfers of Servicing Files, Mortgage Loan Documents and Mortgage Notes, etc., shall occur within a reasonable time, and not later than thirty (30) days following receipt hereof. Further, Aurora shall cooperate with MidCountry and Dovenmuehle so as to affect an efficient and timely transfer of servicing obligations, including the transfer of the Custodial and Escrow Accounts to Dovenmuehle. Additionally, Aurora will account to MidCountry for all funds associated in any way with the loans. *See* Section 10.01.

Contemporaneous herewith, Dovenmuehle will provide to Aurora and MidCountry an Acceptance of Appointment document, by hand delivery, facsimile and registered mail, return receipt requested.

Thank you for your prompt attention to this matter.

Very truly yours,

Scott T. Rodgers
FAIRFIELD AND WOODS, P.C.

cc:    Aurora Loan Services LLC
       2617 College Drive
       Scottsbluff, Nebraska 69363
       Attention: Manager, Loan Administration (MidCountry Bank, 2007-1)
       Telephone: (308) 220-2000
       Facsimile: (308) 632-4287

# EXHIBIT F



**Lowenstein
Sandler**

ATTORNEYS AT LAW

Gary M. Wingens
Member of the Firm

Tel  973 597 2558
Fax  973 597 2559

gwingens@lowenstein.com

### CONFIDENTIAL AND FOR SETTLEMENT PURPOSES ONLY
### PROTECTED BY NEW YORK CPLR §4547 - ALL RIGHTS RESERVED

February 13, 2009

#### VIA ELECTRONIC MAIL AND FEDERAL EXPRESS

Scott T. Rodgers, Esq.
Fairfield and Woods, P.C.
Wells Fargo Center, Suite 2400
1700 Lincoln Street
Denver, Colorado 80203-4524

**Re:    Servicing Agreement between MidCountry Bank, as Owner, Lehman Capital, a
Division of Lehman Brothers Holdings Inc., as Servicing Rights Owner, and Aurora,
as Servicer, dated as of July 30, 2007**

Dear Mr. Rodgers:

We represent Aurora Loan Services LLC ("Aurora") in connection with the Servicing
Agreement between MidCountry Bank ("MidCountry"), as Owner, Lehman Capital, a Division
of Lehman Brothers Holdings Inc., as Servicing Rights Owner, and Aurora, as Servicer, dated as
of July 30, 2007 (the "Agreement"). Capitalized terms not defined in this letter shall have the
meaning set forth in the Agreement. This letter is written in response to your letters dated
February 6, 2009 (the "Purported Termination Letter") and February 12, 2009 (the "Purported
Failure to Cooperate Letter")(collectively, the "Letters") to James L. Greene of Aurora.

Your Letters allege that Aurora has materially breached certain provisions of the Agreement and,
as a result, MidCountry has attempted to terminate the Agreement for cause and appoint a
successor servicer. We understand that simultaneous with the transmittal of your Purported
Termination Letter to Mr. Greene, MidCountry filed a complaint against Aurora in District
Court, Douglas County, Colorado, alleging substantially the same allegations of breach as are
contained in the Purported Termination Letter, and then served Aurora on the very same day.
The allegations of the Letters and the complaint are clearly a ruse to obtain a result that
MidCountry cannot obtain under the terms of the Agreement. Aurora intends to vigorously

Lowenstein Sandler PC                                                    www.lowenstein.com

Reply:  65 Livingston Avenue  Roseland, New Jersey 07068  Tel 973 597 2500  Fax 973 597 2400
        1251 Avenue of the Americas  New York, New York 10020  Tel 212 262 6700  Fax 212 262 7402

Scott T. Rodgers, Esq.                                          February 13, 2009

**CONFIDENTIAL AND FOR SETTLEMENT PURPOSES ONLY
PROTECTED BY NEW YORK CPLR §4547 - ALL RIGHTS RESERVED**

defend itself, and will be filing a responsive pleading to the complaint, at which time Aurora's responses to MidCountry's allegations will be more fully set forth.

On January 12, 2009, the e-mail sent by Fred Taylor of MidCountry to James L. Greene of Aurora (a copy of which is attached) seeks to unilaterally terminate the Agreement without cause under Section 9.02(iii). On January 12, 2009, a mere twenty-five (25) days before MidCountry sent the Purported Termination Letter and filed the complaint, there was no mention of any alleged breach of the Agreement by Aurora. Consistent with James L. Greene's January 14, 2009 return e-mail, in order to properly terminate the Agreement without cause under Section 9.02(iii), MidCountry must provide Aurora with sixty (60) days notice of the termination and must pay a termination fee to the Servicing Rights Owner. The January 12, 2009 e-mail did not constitute proper notice under Section 9.02(iii), nor was Aurora provided with the required sixty (60) day notice of termination. In addition, Aurora is not aware of any payment by MidCountry of the required termination fee to the Servicing Rights Owner. Given the fact that Aurora intends to zealously defend itself against MidCountry's lawsuit, and in an effort to quickly and amicably resolve the dispute between the parties in a cost effective manner, Aurora remains willing to discuss the possibility of a mutual consent to terminate the Agreement without cause under Section 9.02(ii). This offer to discuss the potential settlement of this matter is open to MidCountry for the next ten days and expires on February 23, 2009. This communication is confidential and for settlement purposes only protected by New York CPLR §4547. Aurora reserves all rights, claims and defenses in this matter.

Aurora vehemently denies that it has materially breached the Agreement in any respect. Aurora has serviced the Mortgage Loans in accordance with Accepted Servicing Practices and pursuant to the terms of the Agreement. Accordingly, Aurora rejects MidCountry's purported termination for cause, and asserts that the Agreement remains in full force and effect. Therefore, Aurora will not at this time commence the transfer of its servicing obligations to the proposed successor servicer, Dovenmuehle Mortgage, Inc., as demanded in your Letters.

In addition, even if Aurora was in default under the Agreement, which Aurora maintains it is not, Aurora is unable to effectuate any transfer of servicing obligations to a successor servicer unless and until MidCountry receives the consent of Lehman Capital, a Division of Lehman Brothers Holdings Inc., as Servicing Rights Owner, pursuant to Section 10.01 of the Agreement. If you are not already aware, Lehman Brothers Holdings Inc. is currently a debtor and debtor-in-possession in a proceeding for reorganization relief pursuant to Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York. Furthermore, in accordance with the provisions of Section 10.01 of the Agreement, and in response to the Purported Failure to Cooperate Letter, Aurora is entitled to a reasonable time period in which to transfer its servicing obligations to any successor servicer, which time period shall not be more than thirty (30) days from the valid appointment of the successor servicer by



Scott T. Rodgers, Esq.                                                    February 13, 2009

**CONFIDENTIAL AND FOR SETTLEMENT PURPOSES ONLY**
**PROTECTED BY NEW YORK CPLR §4547 - ALL RIGHTS RESERVED**

MidCountry.  As a result, given the fact that MidCountry's purported appointment of the successor servicer occurred on February 6, 2009, Aurora would have until March 8, 2009 to transfer its servicing obligations, if Aurora was in fact in breach of the Agreement, which it is not, and if such purported appointment was in accordance with the terms of the Agreement, which it is not.

MidCountry Bank and Dovenmuehle Mortgage, Inc. should cease and desist from further requests to transfer the servicing obligations to the proposed successor servicer at this time pending resolution of the dispute between MidCountry and Aurora.

Nonetheless, as indicated in the e-mail of January 14, 2009, Aurora remains willing to fully cooperate with a termination without cause in accordance with Sections 9.02(ii) and 9.02(iii) of the Agreement.  Please give us a call if you would like to discuss this matter further.  Aurora reserves all rights, claims and defenses in this matter.

Very truly yours,

Gary M. Wingens

GMW:hw

11767/165
02/13/09 10857347.6

cc:    James L. Greene
       Ronn Pisapia
       Jamie Siler, Esq., Bloom Murr & Accomazzo, P.C.
       Lehman Brothers Holdings Inc.



# EXHIBIT G

<table>
<tr><td colspan="2">

DISTRICT COURT, DOUGLAS COUNTY, COLORADO

Court Address:    4000 Justice Way
                  Castle Rock, CO  80109-7546

Plaintiffs: MIDCOUNTRY BANK

Defendants: AURORA LOAN SERVICES, LLC a
Colorado limited liability company

</td><td>

EFILED Document
CO Douglas County District Court 18th JD
Filing Date: Mar 20 2009  3:46PM MDT
Filing ID: 24318942
Review Clerk: N/A

Case Number: 09CV369

Ctrm.:  Div. 1

</td></tr>
<tr><td colspan="3" align="center">ORDER</td></tr>
</table>

THIS COURT, having reviewed the file, the pleadings and having taken testimony on Plaintiff's Request for Injunctive Relief and Replevin but not completing the hearing, the Court hereby issues the following Order:

On March 11, 2009 the Court issued a temporary restraining order in this matter and hearing was scheduled for March 18, 2009.  At the conclusion of the hearing the Court granted a request by the Defendant to modify the restraining order.   The order issued on March 11, 2009 is hereby modified to permit the Defendant to continue servicing the mortgage loans that are in question in this case. The Court notes that the restraining order of March 11, 2009 became effective on the posting of a bond by the Plaintiff. The Court, in the order of March 11, 2009 ordered that the Plaintiff post a $100,000 bond.  To the date of this order the Plaintiff has not posted the bond.  The order of March 11, 2009, as modified by this order, does not become effective until that bond is posted.

Notwithstanding the fact that the restraining order is not in effect due to the failure to post the bond, the Court did order, at the conclusion of the hearing on March

18, 2009, that the Defendant make available copies of the servicing files to the Plaintiff
within 15 days.  This order remains in effect.

Dated and signed this 20th day of March, 2009.


BY THE COURT:

ORIGINAL SIGNATURE ON FILE
PAUL A. KING
District Court Judge

## CERTIFICATE OF SERVICE

I hereby certify that a true, accurate and complete copy of said Order was electronically filed via LexisNexis this 20th day of March, 2009.

ORIGINAL SIGNATURE ON FILE
Char Hansen
Division Clerk, Div. 1