Hearing Date: April 22, 2009 at 10:00 a.m.

Dennis F. Dunne
Dennis C. O'Donnell
Evan R. Fleck
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
|   |   |
|---|---|
| In re: | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., et al., | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

------------------------------------------------------------------x

## OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION PURSUANT TO SECTIONS 105(A), 362 AND 365 OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO ASSUME CERTAIN AIRCRAFT LEASE AGREEMENTS AND TO CONSUMMATE CERTAIN RELATED TRANSACTIONS

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in possession (collectively, the "Debtors") hereby objects  (the "Objection") to the Debtors' motion [Docket No. 3218] (the "Motion"), pursuant to sections 105(a), 362, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), for an order (i) authorizing Debtors CES Aviation LLC, CES Aviation V LLC, and CES Aviation IX LLC (the "Aviation Subsidiaries") to (a) assume certain aircraft lease agreements (the "Agreements") among the Aviation Subsidiaries and Executive Fliteways, Inc. ("EFI"), (b) immediately terminate the Agreements following their

assumption, and (c) pay EFI a termination fee of $637,825 (the "Termination Fee")[1] and (ii) modifying the automatic stay to the extent necessary to allow EFI to use certain funds on deposit with EFI to offset EFI's claims against the Debtors resulting from the termination of the Agreements, and, in support of the Objection, represents as follows:

## PRELIMINARY STATEMENT

1. The Motion is an unwarranted attempt to elevate to administrative expense status the unsecured, rejection damages claim to which a prepetition vendor might otherwise be entitled. The Debtors wish to assume the Agreements, immediately terminate them, and pay the termination fee immediately, in full in cash. The Committee finds no basis in law for such a request.

2. The Committee does not have any reason to dispute the Debtors' representations that EFI provided valuable services to the estates, or that EFI's agreement not to assert an alleged right to a mechanics' or similar lien facilitated the sale of the Aircraft.[2] However, given that the Agreements have no further value to the Debtors' estates, they should be rejected. Upon such rejection, EFI may have a right to full payment for the services it rendered to the estates postpetition and, potentially, an unsecured claim in connection with the Debtors' rejection of the Agreements. Instead, the Debtors, who had apparently represented to EFI that any claim that might arise as a result of rejection of the Agreements would be satisfied on an administrative priority basis (including through a dollar-for-dollar offset of the Debtors' prepetition cash deposit against a prepetition rejection damages claim) in exchange for EFI's agreement to perform its contractual obligations and not to assert its liens, concocted a

---

[1] The Debtors propose to satisfy the Termination Fee through (i) application of certain operating deposits from the Aviation Subsidiaries and non-Debtor CES Aviation II LLC held by EFI aggregating $400,000 (the "Deposits"), and (ii) a cash payment of $237,825.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2

mechanism to render EFI immune to the effects of the Debtors' chapter 11 cases under the guise of a motion to assume executory contracts.

3.       The relief requested in the Motion simply does not fly. According to the Motion, the Debtors, in a coordinated set of actions, seek to assume and then instantly terminate the Agreements, thereby converting a rejection damages claim into an administrative expense claim against the estates. While the Committee recognizes that the amount of money at issue is not large in the context of these chapter 11 cases, the Committee cannot countenance the flouting of the requirements of section 365 and applicable case law solely for the purposes of allowing cash to be distributed to a favored creditor who is not otherwise entitled to it. Because there are no lawful grounds to grant the relief requested in the Motion, the Committee respectfully requests that the Motion be denied in its entirety.

## BACKGROUND

4.       Commencing on September 15, 2008 (the "Petition Date"), and periodically thereafter, the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Aviation Subsidiaries, wholly owned subsidiaries of LBHI that held title to the Aircraft, filed their chapter 11 petitions on October 5, 2008.

5.       Pursuant to the Agreements, the Aviation Subsidiaries leased the Aircraft to EFI so that EFI could use the Aircraft to conduct certain charter services. Under the Agreements, EFI assumed responsibility for, among other things, ferrying charter customers, supplying and training flight crews, and maintaining the Aircraft. The Aviation Subsidiaries were obligated to reimburse EFI for certain expenses incurred in operating the Aircraft. In addition, EFI allegedly had the benefit of valid, perfected liens on the Aircraft.

6. According to the Debtors, EFI played an important role in the pre- and postpetition marketing and sales of the Aircraft.[3] For example, EFI allegedly agreed to continue to perform under the Agreements postpetition and refrain from exercising any alleged possessory rights in the Aircraft or otherwise interfering with the Aircraft sales "based upon the Debtors' representations that EFI would be compensated." Motion, 3. According to the Debtors, such compensation included their agreement to eventually seek Court approval to assume and then terminate the Agreements, which otherwise expire on December 10, 2010, and pay the resultant termination fee to EFI in full.

7. Based on the "early termination" of the Agreements, the Debtors have agreed that the applicable Termination Fee will be $637,825.[4] By the Motion, the Debtors seek authority to assume and immediately terminate the Agreements, pay EFI the Termination Fee, and modify the automatic stay to the extent necessary to allow EFI to set off the Deposits against the Termination Fee.

---

[3] The Committee understands that the sale of each Aircraft has been approved by the Court and consummated by the relevant parties. On December 23, 2008, the Court entered amended orders authorizing the Debtors to sell two of their aircraft, the GIVSP and the Falcon 50, which resulted in a recovery to the Debtors' estates in the aggregate amount of $29,300,000 [Docket Nos. 2359, 2362], and on March 25, 2009, the Court entered an order authorizing the Debtors to sell the S-76C+ for the purchase price of $3,426,000 [Docket No. 3219] (collectively, the "Aircraft Sale Orders"). Pursuant to the Aircraft Sale Orders, it appears that the Court authorized the Debtors to pay EFI an aggregate amount of $187,029.51 for its flight support activity expenses. Neither the Aircraft Sale Orders nor the motions that gave rise thereto address the clandestine agreement between the Debtors and EFI that was the impetus for this Motion.

[4] According to the Motion, the Termination Fee is comprised of (i) early termination fees related to monthly management services; (ii) prorated hangar fees; and (iii) three months severance pay for employees laid off as a result of the termination of the Agreements. The Motion does not provide an itemization of the Termination Fee. Subject to Court approval, the Debtors have agreed to allow EFI to offset the Deposits against the Termination Fee.

4

**OBJECTION**

**A.     There Is No Justification For Assumption
        Of Agreements Under Section 365(a) Of Bankruptcy Code**

8.      Section 365(a) of the Bankruptcy Code permits a debtor in possession, with court approval, to assume or reject any executory contract or unexpired lease of the debtor. See 11 U.S.C. § 365(a) (the debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor"); COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.), 524 F.3d 373, 377, n2 (2d Cir. 2008) ("Together, §§ 365(a) (relating to executory contracts and unexpired leases) and 1107(a) (providing that a debtor-in-possession generally has the rights of a trustee in bankruptcy) of the Code generally permit a chapter 11 debtor-in-possession to assume or reject, subject to the court's approval, any executory contract or unexpired lease of the debtor.").

9.      Because assumption imposes on the debtor the obligation to cure all defaults and bind itself to continue to perform (or assign the agreement), which obligations become administrative expenses of the estate, the court must evaluate the decision under a "business judgment" standard and deny the application where the debtor has not made an appropriate showing of benefit to the estate. See Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.), 4 F.3d 1095, 1099 (2d Cir. 1993) ("[A] bankruptcy court reviewing a trustee's or debtor-in-possession's decision to assume or reject an executory contract should examine a contract and the surrounding circumstances and apply its best 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume it. . . . [T]he process of deciding a motion to assume is one of the bankruptcy court placing itself in the position of the

trustee or debtor-in-possession and determining whether assuming the contract would be a good business decision or a bad one.").[5]

10. The Debtors have failed to demonstrate the exercise of any business judgment in connection with the proposed assumption of the Agreements. To do so would be particularly difficult here given that, even by the Debtors' own admission, the Agreements offer no continuing value to the estates. To the contrary, assumption of the Agreements would only create obligations.

11. The Debtors' assertions that the business judgment standard has been met based on their course of conduct with EFI ring hollow. Specifically, the Debtors contend that the coordinated assumption and immediate termination of the Agreements is necessary to compensate EFI for continuing to perform under the Agreements and agreeing not to assert its liens or otherwise interfere with the sales of the Aircraft. According to the Debtors, such compensation would fulfill the Debtors' promise to EFI.[6] Aside from the fact that such representations are not binding against the estates without Court approval, the Debtors have not identified any precedent where assuming burdensome agreements evidenced sound business judgment. In the garden variety section 365 cases cited in the Motion, the debtors made a showing either that the agreements to be assumed had continuing value to the estates or that

---

[5] See also Enterprise Entergy Corp. v. United States (In re Columbia Gas Sys. Inc.), 50 F.3d 233, 238-39 (3d Cir. 1995) ("Because assumption acts as a renewed acceptance of the terms of the executory bargain, the Bankruptcy Code provides that the cost of performing the debtor's obligations is an administrative expense of the estate, which will be paid first out of the assets of the estate."); In re Crystal Apparel, Inc., 220 B.R. 816, 834 (Bankr. S.D.N.Y. 1998) (explaining that "[t]he court-approved assumption of an executory contract by a debtor in possession results in the contract being treated as if it had been made by the debtor in possession post-petition. Furthermore, all claims under the contract, including those for breach, are administration expenses. Because assumption of an executory contract elevates what was a pre-petition claim into an administration expense entitled to be paid in full, courts are rightly reluctant to approve assumptions by debtors in possession. The assumption of an executory contract early in a Chapter 11 case is particularly disfavored as it is difficult to predict the course of the reorganization will take.").

[6] See Motion, 7, ¶18 ("The Debtors hereby seek authority to assume the Agreements thereby fulfilling the Debtors' representations to EFI."), 9, ¶23 ("by assuming the Agreements, the Debtors are able to terminate the Agreements and pay to EFI the amounts due to it as a result of the early termination—amounts the Debtors promised to pay EFI in exchange for EFI's assistance in selling the Aircraft").

6

those to be rejected were burdensome to the estates, as appropriate. In addition, contrary to what seems to be implied by the Motion, the Debtors' chapter 11 filings did not relieve EFI, a contract counterparty, from its contractual obligations. See Mason v. Official Comm. of Unsecured Creditors (In re FBI Distribution Corp.), 330 F.3d 36, 43 (1st Cir. 2003) ("Although during the Chapter 11 proceeding a prepetition executory contract remains in effect and enforceable against the nondebtor party to the contract, the contract is unenforceable against the debtor in possession unless and until the contract is assumed."); In re McLean Industries, Inc., 96 B.R. 440, 448 (Bankr. S.D.N.Y. 1989) ("a debtor-in-possession should be able to enforce assumable executory contracts").

12. Based on the foregoing, there is no business justification to assume the Agreements. Rather, after cutting through the rhetoric, the circumstances suggest that immediate rejection of the Agreements is appropriate. Indeed, rejecting the Agreements would benefit the estates because it would allow the Debtors to free themselves of valueless and burdensome contracts and obviate the risk of an administrative expense against the estates from any postpetition breaches. See McLean Industries, 96 B.R. at 449 ("Assumption not only requires cure, but it subjects the estate to potential administrative liability for failure of future performance, thus priming the claims of general unsecured creditors. 11 U.S.C. 365(a).").

**B. EFI May Be Entitled To Rejection Damages And Administrative Claim To Extent Its Services Were Actual And Necessary To Preserve Estates**

13. Based on the facts set forth in the Motion, the Agreements should be rejected. Pursuant to sections 365(g) and 502(g) of the Bankruptcy Code, rejection of the Agreements will be considered a prepetition breach resulting in a prepetition unsecured claim for rejection damages. See 11 U.S.C. §§ 365(g)(1) ("the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease – if such contract or

7

lease has not been assumed . . . , immediately before the date of the filing of the petition"), 502(g) ("A claim arising from the rejection, under section 365 . . . of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed . . . or disallowed . . . the same as if such claim had arisen before the date of the filing of the petition."); Taunton Mun. Lighting Plant v. Enron Corp. (In re Enron Corp.), 354 B.R. 652, 655 (S.D.N.Y. 2006) ("It is clear that . . . Section 502(g) caused a rejection damage claim to be classified as a pre-bankruptcy claim, such that the other party to the contract has a claim equal to those of other creditors having unsecured claims against the debtor at the time the petition was filed." (internal quotations and modifications omitted)); In re Mid-American Waste Sys., Inc., 274 B.R. 111, 123 (Bankr. D. Del. 2001) ("A debtor's rejection of an executory contract under § 365(a) is deemed a prepetition breach.  As a result, the non-debtor party has a prepetition claim against the debtor that is deemed to have arisen immediately before the filing of the petition." (internal citation omitted)).

        14.      Notwithstanding the Debtors' representations to the contrary, EFI should receive no more favorable treatment as a result of the Debtors' termination of the Agreements than that provided for in sections 365(g) and 502(g) of the Bankruptcy Code.  EFI should receive priority treatment <u>only</u> to the extent it demonstrates that the services it provided to the Debtors after the Petition Date were actual and necessary to preserve the estates under section 503(b) of the Bankruptcy Code.  <u>See</u> 11 U.S.C. § 503(b); In re Drexel Burnham Lambert Group Inc., 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991) ("The burden of establishing entitlement to priority rests with the claimant and should only be granted under extraordinary circumstances, to wit, when the parties seeking priority have sustained their burden of demonstrating that their services are actual and necessary to preserve the estate.  A clear relationship between the expenditures made

and the benefit conferred on the estate must therefore be shown by the movant. . . . [A] claimant must demonstrate that the obligation in question (i) arose from a transaction with the debtor-in-possession and (ii) resulted in a direct benefit to the estate." (internal citations and quotations omitted)).  Given that the Motion seeks to elevate claims that would at best be prepetition general unsecured claims, the relief requested should be denied.

       **WHEREFORE**, the Committee respectfully requests that the Court (i) sustain the Objection; (ii) deny the Motion in its entirety; and (iii) grant the Committee such other relief as is just.

Dated:   New York, New York
           April 20, 2009

                              **MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

                              By /s/ Dennis F. Dunne
                                  Dennis F. Dunne
                                  Dennis C. O'Donnell
                                  Evan R. Fleck
                                  1 Chase Manhattan Plaza
                                  New York, New York 10005
                                  Telephone:  (212) 530-5000

                                  Counsel for Official Committee of Unsecured
                                  Creditors of Lehman Brothers Holdings Inc., <u>et al.</u>