**Hearing Date and Time: May 13, 2009 at 10:00 a.m (Prevailing Eastern Time)**
**Objection Date and Time: May 8, 2009 at 4:00 p.m (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                        :
In re                                   :     Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :     08-13555 (JMP)
                                        :
                       Debtors.         :     (Jointly Administered)
                                        :
-------------------------------------------------------------------x
```

### NOTICE OF DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING AND APPROVING (I) A SETTLEMENT AMONG LEHMAN BROTHERS HOLDINGS INC., GTH LLC, AND GT INVESTMENT COMPANY I, LLC AND (II) RELATED RELIEF

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc. ("LBHI" and together with its affiliated debtors, the "Debtors")

for entry of an order authorizing and approving (i) the terms of a settlement among LBHI, GTH

LLC, and GT Investment Company I, LLC and (ii) related relief, all as more fully described in

the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge,

at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601,

One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **May 13, 2009**

**at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn: Lori R. Fife, Esq., attorneys for the Debtors; (iii) the Office of the United States

Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New

York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq.,

Linda Riffkin, Esq., and Tracy Hope Davis; Esq., (iv) Milbank, Tweed, Hadley & McCloy LLP,

1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis

O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured

creditors appointed in these cases; (v) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New

York, New York 10019-6099, Attn: Marc Abrams, Esq., attorneys for GTH LLC; and (vi) any

person or entity with a particularized interest in the Motion, so as to be so filed and received by

no later than **May 8, 2008 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: April 22, 2009
      New York, New York

                          /s/ Lori R. Fife
                          Lori R. Fife

                          WEIL, GOTSHAL & MANGES LLP
                          767 Fifth Avenue
                          New York, New York 10153
                          Telephone: (212) 310-8000
                          Facsimile: (212) 310-8007

                          Attorneys for Debtors
                          and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                                          :
**In re**                                                 :    **Chapter 11 Case No.**
                                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :    **08-13555 (JMP)**
                                                          :
                              **Debtors.**                :    **(Jointly Administered)**
                                                          :
----------------------------------------------------------------x

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTION 105(a) OF THE**
**BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF**
**BANKRUPTCY PROCEDURE AUTHORIZING AND APPROVING (I) A**
**SETTLEMENT AMONG LEHMAN BROTHERS HOLDINGS INC.,**
**GTH LLC, AND GT INVESTMENT COMPANY I, LLC AND (II) RELATED RELIEF**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc., as debtor in possession ("LBHI", and together

with its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), files this Motion and respectfully

represents:

<u>**Background**</u>

        1.        Commencing on September 15, 2008, and periodically thereafter (as

applicable, the "Commencement Date"), the Debtors commenced with this Court voluntary cases

under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors'

chapter 11 cases have been consolidated for procedural purposes only and are being jointly

administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

2.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

4.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

## Jurisdiction

5.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GT Investment Company I, LLC and GTH LLC

6.      GT Investment Company I, LLC ("GTIC") is a wholly-owned, non-debtor

subsidiary of LBHI established to hold membership interests in GTH LLC ("GTH" and

collectively with GTIC and LBHI, the "Parties").  GTIC's only assets are its membership

interests in GTH and, to the best of the Debtors' knowledge, LBHI is its primary creditor.  GTIC

initially acquired a membership interest in GTH in October 2007 and subsequently increased its

interests pursuant to three additional investments.  GTIC has invested a total of approximately

$35 million and currently holds 3,429.71 Class A-1 Units (the "Transferred Units"), or 20% of

the equity of GTH (without taking into account any equity or profit interests held by employees

of GTH and assuming that the Notes (as defined below) are not converted).

7.       GTH, through its subsidiaries, is a subprime mortgage loan servicer with

three primary businesses: (i) it acts as a servicer of various types of subprime mortgage loans on

behalf of third parties and of assets within its own portfolio; (ii) it markets property and casualty

insurance on behalf of third party insurance carriers for the loans it services; and (iii) it owns

whole loans and legacy residual interest securities in securitizations backed primarily by

subprime mortgage loans.

8.       In October of 2008, GTH raised an additional $70 million in capital by

issuing five year convertible notes (collectively, the "Notes"). While GTIC was offered its

contractually agreed-upon preemptive rights under the Limited Liability Company Agreement of

GTH LLC, dated as of December 31, 2007 (the "LLC Agreement"), at that time, GTIC declined

to invest in the Notes based on concerns about GTH's long term viability.  The Notes contained a

"full ratchet anti-dilution" provision, which was punitive to existing members of GTH, such as

GTIC, that did not exercise their pro rata participation rights to acquire Notes.  GTIC claimed it

had a consent right under the LLC Agreement and, pursuant to such claimed right, GTIC notified

GTH that it did not consent to GTH's issuance of the Notes.  GTH disputes such claim.  GTIC

did not pursue litigation with respect to the issuance of the Notes and, instead, initiated

negotiations with GTH for, among other things, the acquisition by GTH of the Transferred Units.

9.       Green Tree Servicing LLC ("Green Tree"), an indirect subsidiary of GTH,

is party to two Flow Subservicing Agreements with Lehman.  The first agreement, dated as of

October 19, 2007, is between Green Tree and Lehman Capital, a division of LBHI (as amended,

the "First Servicing Agreement"), and the second agreement, dated as of October 29, 2007, is

between Green Tree and Lehman Brothers Bank, FSB (as amended, the "Second Servicing

Agreement," and, together with the First Servicing Agreement, the "Servicing Agreements").  By

order of this Court, dated February 11, 2009 [Docket No. 2810], the First Servicing Agreement

was assumed by LBHI.  All parties continue to perform under the Servicing Agreements.

**The Membership Interest Sale Transaction**

10.     Subsequent to the Commencement Date, the Debtors and their advisors

identified the following considerations in evaluating their options vis-à-vis GTIC's interest in

GTH:

- Viability of GTH's Business.  As a general matter, market conditions for loan servicers will be challenging in the near term and the residual values for whole loan investments and securitizations have fallen and will continue to be unstable.  Moreover, delinquency ratios have increased in GTH's portfolio and are expected to remain high in the near to medium term.  Compounding these issues, the asset classes that GTH primarily focused on, manufactured housing loans, home equity lines of credit, and recreational vehicle loans, typically contain lower credit qualities.

- Necessity of Additional Capital Contribution.  Based on a conservative estimate, GTH will require in excess of $100 million in additional capital in the near future to (i) replace expiring debt facilities, (ii) replace a line of credit to cover margin calls on interest rate swaps, and (iii) acquire master servicing rights to grow its business.  Given the full ratchet anti-dilution provision in the Notes, the Debtors would be forced to participate in the Notes and provide additional funding to avoid having GTIC's ownership interest in GTH significantly diluted.

Based primarily on these considerations, the Debtors determined to seek a buyer for the

Transferred Units.  The Transferred Units, however, are subject to certain transfer restrictions

contained in the LLC Agreement.  Seeking to avoid the delay and expense inherent in

challenging the transfer restrictions, the Debtors reached out to GTH to determine GTH's interest

in repurchasing the Transferred Units.

11.    Following extensive, arm's-length negotiations, the Parties entered into that certain purchase agreement (the "Purchase Agreement") dated as of April 13, 2009, a copy of which is attached hereto as Exhibit A.  Pursuant to the Purchase Agreement,[1] GTIC has agreed to (i) sell the Transferred Units free and clear of any liens, claims or encumbrances to GTH for $17 million; and (ii) withdraw as a member of GTH.  GTH, in turn, will purchase the Transferred Units from GTIC and will immediately cancel all such Transferred Units, extinguishing any interests and obligations that GTIC may have had in GTH.  As a result, all rights, powers, and privileges granted by the LLC Agreement to LBHI, as sole member of GTIC, will be terminated. (*See* Purchase Agreement Art. II).

12.    Section 3.1(c)(v) of the Purchase Agreement requires that GTIC and LBHI deliver a release (the "Release") to GTH in the form set forth in Exhibit B to the Purchase Agreement.  Pursuant to the Release, each of the Parties, on behalf of itself and certain related entities (each a "Releasing Party"), agrees to release each other Party and certain related entities (the "Releasees") from any and all Claims that the Releasing Party had, or may have, or may claim to have in the future, against each of the other Releasees by reason of any matter relating to (i) any Releasees' membership or ownership interest in GTH or any of its subsidiaries or matters arising under the LLC Agreement and other organizational documents (including any rights granted to LBHI, as sole member of GTIC, pursuant to the LLC Agreement); (ii) any act or omission taken by members of GTH and members of the board of directors of GTH, or (iii) rights, if any, to seek to challenge, overturn or avoid any transfer of assets or payments to or

---

[1] This summary of the Purchase Agreement is qualified in its entirety by the terms and provisions of the Purchase Agreement.  To the extent there are any inconsistencies between the description of the Purchase Agreement contained herein and the terms and conditions of the Purchase Agreement, the terms of the Purchase Agreement shall control. Capitalized terms that are used herein, but not defined, have the meanings ascribed to them in the Purchase Agreement.

obligations incurred by any of the Parties pursuant to the Purchase Agreement or to recharacterize the Purchase Agreement, whether based on adequacy of consideration or any other ground. (*See* Release ¶ 1).  Thus the Release contemplates that GTIC and LBHI will waive any claims that may have accrued to them pursuant to the issuance or the terms of the Notes. Notwithstanding the foregoing, the Release does not release any obligations of Lehman pursuant to the Servicing Agreements, and such obligations will continue to remain in full force and effect.

13.    The Purchase Agreement contains mutual indemnification between GTIC and GTH.  Any obligations for losses pursuant to such indemnification provisions are limited to, and shall not exceed, the purchase price.  (*See* Purchase Agreement Art. VII).

14.    Section 9.1 of the Purchase Agreement contains certain provisions regarding the non-solicitation of alternative transactions and further assurances.  Specifically, section 9.1(a) provides that GTIC and LBHI shall not directly or indirectly:

i.    solicit, participate or continue to participate in any discussion or negotiations with any person other than GTH regarding (1) the sale of the Transferred Units, (2) the sale of the equity of GTIC, (3) the merger, reorganization, amalgamation, sale of substantially all of the assets of, consolidation, business combination, recapitalization, dissolution, liquidation, or similar transaction involving GTIC, or (4) any other transaction involving GTIC or its assets that would impede, delay, impair or prevent, or be competitive with, the transactions contemplated by the Purchase Agreement (the "Alternative Transactions");

ii.    enter into or agree to enter into any agreement with respect to any Alternative Transaction; or

iii.    furnish to any person any information, or take any other action to facilitate any inquiries or the making of any proposal, with respect to any Alternative Transaction.

15.    Section 9.1(b) (the "Non-Interference Provision"), in turn, provides that each of the Parties shall execute and deliver all such further and additional instruments and agreements and shall take such further and additional actions, as may be reasonably requested by the other Parties in order to evidence or carry out the provisions of the Purchase Agreement or to consummate the transactions contemplated therein.  Each of the Parties agrees not to take any action that would, or that would reasonably be expected to, result in any of the conditions set forth in Article III of the Purchase Agreement not being satisfied or satisfaction of those conditions being materially delayed.  From April 13, 2009, and following the Closing, GTIC, LBHI, and its affiliates, successors and assigns agree not to take, directly or indirectly, any action in the Case or otherwise that would materially limit, impair, impede, or otherwise materially adversely impact GTH with respect to the transactions contemplated by the Purchase Agreement.  In the case of a breach of the Non-Interference Provision of the Purchase Agreement by LBHI, GTH's remedies are limited to equitable relief in the form of an injunction or specific performance.

16.    Finally, the Purchase Agreement requires, among other things, that, at or prior to the Closing, GTIC deliver to GTH (i) copies of the GTIC resolutions, duly adopted by LBHI, acting as the sole member of GTIC, authorizing the execution, delivery and performance of all actions called for by the Purchase Agreement and the consummation of all transactions contemplated therein; and (ii) a copy of the order approving this motion. (*See* Purchase Agreement Art. III).

## Relief Requested

17.    By this Motion, the Debtors seek authorization, to the extent necessary, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, to (i) enter into the Release and the Non-Interference Provision; and (ii) take all corporate actions necessary to comply with their other obligations under the Purchase Agreement.

### The Release Meets the Legal Standard Established Under Rule 9019 and Is in the Best Interests of the Estate

18.    Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a).  In granting a motion pursuant to Rule 9019(a), a court must find that the proposed settlement is fair and equitable and is in the best interests of the estate.  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

19.    The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court.  *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  It is the responsibility of a court to examine a settlement and determine whether it "falls below the lowest point in the range of reasonableness."  *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements."  *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

20.    While a court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699

F.2d at 608, or conduct a full independent investigation. *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991). "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact…. The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

21.    The Court may give weight to the informed judgment of the debtor that a compromise is fair and equitable. *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness…. If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

22.    In addition, section 105(a) of the Bankruptcy Code, in pertinent part, provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

23.    GTIC entered into the Purchase Agreement because it believes that the terms contained in the Purchase Agreement represent the most favorable return on its investment in GTH. While $17 million represents a significant discount on GTIC's equity investment in GTH, the Debtors and their advisors have thoroughly investigated disposition strategies for the Transferred Units and believe that this transaction represents current fair market value. This is true, in part, because the LLC Agreement contains certain transfer restrictions that inhibit GTIC's ability to market the Transferred Units to third parties.

24. The Release is fair, reasonable, and in the best interests of LBHI's estates and its creditors. From LBHI's perspective, the Release benefits its estate by eliminating the estate's exposure to GTH by terminating LBHI under the LLC Agreement. These obligations include LBHI's covenant to (i) own, directly or indirectly, 100% of the membership interests in GTIC; and (ii) cause GTIC to comply with its obligations under the LLC Agreement. (*See* LLC Agreement §12.13). Furthermore, while GTIC is a non-debtor, the benefits to be realized by GTIC from the Sale Agreement will inure to the benefit of LBHI and its estate, because GTIC is a direct subsidiary of LBHI and, to the best of the Debtors knowledge, LBHI is its primary creditor.

25. The only prospective claims GTIC and LBHI are aware that they will be giving up, pursuant to the Release, are claims related to the issuance of the Notes. Any resolution of that issue would likely entail litigation that would be costly, time consuming and, even if successful, damaging to the value of GTIC's interest in GTH. The Debtors believe that entry into the Release is fair and reasonable and well above the lowest point in the range of reasonableness.

26. As discussed above, pursuant to the Purchase Agreement, LBHI agreed to seek the consent, authorization and approval of this Court to (a) enter into the Release and the Non-Interference Provision; and (b) take certain corporate actions (the "Corporate Actions"), to facilitate the consummation of the Purchase Agreement. The Corporate Actions are necessary and appropriate and should be approved because they will enable GTIC to liquidate its investment in GTH on favorable terms and such terms will ultimately benefit LBHI, its estates, and creditors because the proceeds of the sale will ultimately flow up to LBHI as sole member of GTIC.

## Notice

27.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) all parties who have requested notice in these chapter 11 cases; and (vii) attorneys for GTH LLC.  No other or further notice need be provided.

28.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just.

Dated:  April 22, 2009
         New York, New York

/s/ Lori R. Fife
Lori R. Fife

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Exhibit A**

**( The Purchase Agreement)**

EXECUTION VERSION

# GTH LLC

## MEMBERSHIP INTEREST PURCHASE AGREEMENT

THIS MEMBERSHIP INTEREST PURCHASE AGREEMENT (this "Agreement") is entered into as of April 13, 2009, by and among GTH LLC, a Delaware limited liability company, (the "Company" or the "Purchaser"), GT Investment Company I, LLC, a Delaware limited liability company ("Seller") and solely for purposes of Sections 2.1(b), 3.1(c)(v), 6.1 and Article IX of this Agreement, Lehman Brothers Holdings Inc., a Delaware corporation and debtor in possession ("Lehman").

WHEREAS, Seller is a member of the Company and owns an aggregate of 3,429.71 Class A-1 Units (the "Transferred Units") in the Company; and

WHEREAS, Seller desires to sell the Transferred Units to the Company for immediate cancellation by the Company and thereby withdraw as a member of the Company.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises, covenants and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

## ARTICLE I
## DEFINITIONS

As used in this Agreement (including the introductory paragraph and the recitals to this Agreement), the terms set forth below shall have the following meanings:

"Affiliates" shall mean, with respect to any Person, any direct or indirect subsidiary of such Person, and any other Person that directly or indirectly controls, is controlled by, or is under common control with, such Person. As used in this definition, "control"(including, with correlative meanings, "controlled by" and "under common control with") shall mean possession, directly or indirectly of power to direct or cause the direction of management or policies (whether through ownership of securities or partnership or other ownership interests, by contract or otherwise).

"Agreement" has the meaning set forth in the preamble hereto and shall include the Exhibits hereto;

"Alternative Transaction" has the meaning set forth in Section 9.1(a);

"Bankruptcy Code" means title 11 of the United States Code;

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York or such other court having jurisdiction over the Case;

"Bankruptcy Court Approval" means an Order of the Bankruptcy Court authorizing and approving the execution, delivery and consummation of the transactions

4616470.25

contemplated by the Release and Section 9.1(b) of this Agreement and any required approval under state law or Seller's organizational documents by Lehman which Order shall be in form and substance reasonably satisfactory to Purchaser;

"Business Day" means a day other than a Saturday, Sunday or other day on which banks in the State of New York are required or authorized to close;

"Case" means the cases commenced by Lehman and certain of its Affiliates under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, which are being jointly administered under the case captions In re Lehman Brothers Holdings Inc., et. al., Case No. 08-13555 (JMP) (Bankr. S.D.N.Y.) (Jointly Administered);

"Certificate of Transfer" has the meaning set forth in Section 3.1(c)(iv);

"Closing" has the meaning set forth in Section 2.2;

"Closing Date" has the meaning set forth in Section 2.2;

"Code" means the United States Internal Revenue Code of 1986, as amended.

"Company" has the meaning set forth in the preamble hereto;

"Company Indemnitees" has the meaning set forth in Section 7.2(a);

"Final Order" means an Order which has not been vacated, reversed, modified, rescinded or stayed as of the Closing Date and as to which the time to file an appeal, a motion for rehearing or reconsideration or a petition for writ of certiorari has expired and no such appeal, motion or petition is pending.

"Governmental Entity" has the meaning set forth in Section 4.3;

"Law" has the meaning set forth in Section 4.3;

"Lehman" has the meaning set forth in the preamble hereto;

"Liens" has the meaning set forth in Section 2.1;

"LLC Agreement" has the meaning set forth in Section 2.1(b);

"Losses" has the meaning set forth in Section 7.2(a);

"Motion" has the meaning set forth in Section 6.1;

"Order" has the meaning set forth in Section 4.3;

"Person" shall mean any individual, corporation, association, partnership, limited liability company, joint venture, joint stock or other company, business trust, trust, organization, governmental authority or other entity of any kind;

2

"Purchase Price" has the meaning set forth in Section 2.1(a);

"Purchaser" has the meaning set forth in the preamble hereto;

"Purchaser Documents" means this Agreement and the Release;

"Release" has the meaning set forth in Section 3.1(c)(v);

"Seller" has the meaning set forth in the preamble hereto;

"Seller Documents" means this Agreement, the Release and the Certificate of Transfer;

"Seller Indemnitees" has the meaning set forth in Section 7.2(b);

"Survival Period" has the meaning set forth in Section 7.1;

"Termination Date" means the earlier of (i) the 6 month anniversary of the date hereof and (ii) the date on which the Order, if any, of the Bankruptcy Court denying the Motion becomes a Final Order;

"Transaction Documents" means the Seller Documents and the Purchaser Documents; and

"Transferred Units" has the meaning set forth in the recitals hereto.

## ARTICLE II
## SALE AND PURCHASE OF THE UNITS

2.1     Sale and Purchase of the Transferred Units.  On the Closing Date, Seller shall sell, assign, transfer, convey and deliver to the Company, and the Company shall purchase and accept from Seller, all right, title, and interest in and to the Transferred Units, free and clear of any lien, pledge, mortgage, security interest, claim, charge, option, right of first refusal, voting trust or agreement and any other encumbrance ("Liens").

(a)     Purchase Price and Payment.  The purchase price for the Transferred Units is $17,000,000 (the "Purchase Price").  The Company shall pay the Purchase Price to Seller on the Closing Date in immediately available funds, in accordance with the wire instructions previously provided by Seller to the Company.

(b)     Immediately after the Closing, the Transferred Units shall be cancelled, and Seller shall cease to be a member of the Company and shall have no powers, rights and privileges as a member under the Limited Liability Company Agreement of the Company, dated as of December 31, 2007, as amended (the "LLC Agreement").  At Closing, all rights, powers, and privileges granted to Lehman pursuant to the LLC Agreement and all obligations of Lehman thereof shall be terminated.

3

4616470.25

2.2    The Closing.  Subject to the terms and conditions set forth in this Agreement, the closing of the purchase and sale of the Transferred Units (the "Closing") shall take place at the offices of Weil, Gotshal & Manges LLP, counsel to Seller, located at 767 Fifth Avenue, New York, New York, as promptly as practicable (and in any event within two (2) Business Days) after the date of the satisfaction or waiver of the last of the conditions to Closing set forth in Article III of this Agreement (other than those conditions which, by their nature, are to be satisfied on the Closing Date, but subject to the satisfaction or waiver thereof), or at such other location and on such other date as the Seller and the Company may mutually agree in writing.  The date on which the Closing shall occur is sometimes referred to herein as the "Closing Date."

## ARTICLE III
## CONDITIONS TO CLOSING

3.1    Conditions to the Company's Obligations.

(a)    Representations and Warranties of Seller.  The representations and warranties made by Seller in Article IV of this Agreement shall be true and correct in all material respects when made and at the Closing, except that any such representation or warranty that is made as of a specified date shall only be required to be true and correct in all material respects as of that date, and the Company shall have received a certificate to that effect dated the Closing Date and signed by an officer of Seller.

(b)    Performance of the Obligations of Seller.  Each of Seller and Lehman shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Closing Date, and the Company shall have received a certificate to that effect dated the Closing Date and signed by an officer of Seller.

(c)    Closing Deliverables.  At or prior to the Closing, Seller shall have delivered to the Company:

(i)    copies of the resolutions of Seller duly adopted by Seller's member authorizing the execution, delivery and performance of this Agreement and the other Seller Documents, and the consummation of all transactions contemplated hereby and thereby;

(ii)    a copy of the Bankruptcy Court Approval which shall be a Final Order as of the Closing Date;

(iii)    resignation, effective as of the Closing Date, of Seller's designee to the Company's board of directors;

(iv)    a certificate of transfer, substantially in the form set forth as Exhibit A hereto, duly executed by Seller and sufficient to transfer to the Company all right, title and interest in and to the Transferred Units free and clear of all Liens (the "Certificate of Transfer"); and

4

4616470.25

(v)      a counterpart signature page to the mutual release by and between the Company, Seller and Lehman, substantially in the form set forth as <u>Exhibit B</u> hereto (the "<u>Release</u>"), duly executed by Seller and Lehman.

3.2      <u>Conditions to Seller's Obligations</u>.

(a)      <u>Representations and Warranties of the Company</u>.  The representations and warranties made by the Company in Article V of this Agreement shall be true and correct in all material respects when made and at the Closing, except that any such representation or warranty that is made as of a specified date shall only be required to be true and correct in all material respects as of that date, and Seller shall have received a certificate to that effect dated the Closing Date and signed by an officer of the Company.

(b)      <u>Performance of the Obligations of the Company</u>.  The Company shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Closing Date and Seller shall have received a certificate to that effect dated the Closing Date and signed by an officer of the Company.

(c)      <u>Closing Deliverables</u>.  At or prior to the Closing, the Company shall have delivered to Seller:

(i)      copies of the resolutions of the Company duly adopted by the Company's board of directors authorizing the execution, delivery and performance of this Agreement and the other Purchaser Documents, and the consummation of all transactions contemplated hereby and thereby;

(ii)      a written opinion of outside counsel to the Company dated as of the Closing Date and addressed to Seller substantially in the form set forth as <u>Exhibit C</u>;

(iii)      a written opinion of the general counsel of the Company, dated as of the Closing Date and addressed to Seller substantially in the form set forth as <u>Exhibit D</u>;

(iv)      a counterpart signature page to the Release, duly executed by the Company; and

(v)      the Purchase Price.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants to the Purchaser as follows:

4.1      <u>Organization</u>.  Seller is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware.  Seller is a wholly owned subsidiary of Lehman.

5

4616470.25

4.2    Authorization. Seller has all requisite power and authority to execute and deliver this Agreement and each other Seller Document, and to consummate the transactions contemplated hereby and thereby. The execution and delivery of this Agreement and the Seller Documents and the consummation of the transactions contemplated hereby and thereby have been duly authorized by all requisite limited liability company action on the part of Seller. This Agreement has been, and each of the Seller Documents will be at or prior to the Closing, duly and validly executed and delivered by Seller and (assuming the due authorization, execution and delivery by the other parties hereto and thereto) this Agreement constitutes, and each of the Seller Documents when so executed and delivered will constitute, a legal, valid and binding obligation of Seller, enforceable against it in accordance with their respective terms, except as enforceability may be limited by bankruptcy Laws, other similar Laws affecting creditors' rights and general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

4.3    No Conflicts. None of the execution and delivery by Seller of this Agreement or the Seller Documents, the consummation of the transactions contemplated hereby or thereby, or compliance by Seller with any of the provisions hereof or thereof, will conflict with, result in any violation of or default, result in any acceleration or loss of obligations or rights, or result in the payment of additional fees or penalties (with or without notice or lapse of time, or both) under, or give rise to a right of termination or cancellation under, any provision of (i) the certificate of formation or operating agreement of Seller, (ii) any material contract to which Seller is a party, (iii) any order, judgment, decree, writ or injunction ("Order") of any federal or state court or governmental agency, authority, body or any instrumentality or political subdivision thereof ("Governmental Entity") applicable to Seller or by which any of the properties or assets of Seller are bound or (iv) any domestic law, statute, rule, or regulation ("Law") applicable to Seller.

4.4    Consents and Approvals. No consent, waiver, approval, Order, permit or authorization of, or declaration or filing with, or notification to, any Governmental Entity or other Person is required on the part of Seller in connection with the execution and delivery of this Agreement or the Seller Documents or the compliance by Seller with any of the provisions hereof or thereof, or the consummation of the transactions contemplated hereby or thereby, other than those the failure of which to obtain or make would not have a material adverse effect on Seller's ability to consummate the transactions contemplated hereby. Other than as contemplated by Section 3.1(c)(ii), no consent, waiver, approval, Order, permit or authorization of, or declaration or filing with, or notification to the Bankruptcy Court is required in connection with the Case.

4.5    No Litigation. There are no legal proceedings pending or, to the knowledge of Seller, threatened, against Seller, any of its members or Lehman that would have a material adverse effect on Seller or on Seller's ability to consummate the transactions contemplated hereby or the transactions contemplated by the Seller Documents.

4.6    Title. Seller is the record and beneficial owner of the Transferred Units, which constitute all of the limited liability company interest Seller owns in the Company. Seller has good, valid and marketable title to the Transferred Units, free and clear of all Liens. The

6

4616470.25

Transferred Units are not and were not represented by any certificates issued by the Company or any other Person.

4.7    Purpose of Seller; Liability.  Seller was formed for the sole purpose of investing in the Company and except for the Transferred Units has no other assets or properties and otherwise does not conduct any other business.  Except for any liabilities of Seller to the member of Seller or controlled Affiliates of the member of Seller, Seller has no actual knowledge of liabilities of any nature (whether accrued, absolute or contingent, asserted or unasserted, liquidated or unliquidated, or otherwise).

4.8    Solvency.  Excluding any liabilities of Seller to the member of Seller and controlled Affiliates of the member of Seller, Seller is not, and after giving effect to the transactions contemplated by the Transaction Documents, Seller will not be "insolvent" within the meaning of section 101(32) of the Bankruptcy Code or any applicable state fraudulent conveyance or transfer law.

4.9    No Fraudulent Conveyance.  The Purchase Price constitutes a reasonably equivalent value and fair consideration for the Transferred Units.  No transfer of property is being made and no obligation is being incurred in connection with the transactions contemplated by this Agreement with the intent, purpose or desire on the part of Seller to hinder, delay or defraud either present or future creditors of Seller.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF THE COMPANY

The Company hereby represents and warrants to Seller as follows:

5.1    Organization.  The Company is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware.

5.2    Authorization.  The Company has all requisite limited liability company power and authority to execute and deliver this Agreement and each other Purchaser Document and to consummate the transactions contemplated hereby and thereby.  The execution and delivery of this Agreement and the Purchaser Documents and the consummation of the transactions contemplated hereby and thereby have been duly authorized by all requisite limited liability company action on the part of the Company.  This Agreement has been, and each of the Purchaser Documents will be at or prior to the Closing, duly and validly executed and delivered by the Company and (assuming the due authorization, execution and delivery by the other parties hereto and thereto) this Agreement constitutes, and each of the Purchaser Documents when so executed and delivered will constitute, a legal, valid and binding obligation of the Company, enforceable against it in accordance with its terms, except as enforceability may be limited by bankruptcy Laws, other similar Laws affecting creditors' rights and general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

5.3    No Conflicts.  None of the execution and delivery by the Company of this Agreement or the Purchaser Documents, the consummation of the transactions contemplated hereby or thereby, or compliance by the Company with any of the provisions hereof or thereof,

7

4616470.25

will conflict with, result in any violation of or default, result in any acceleration or loss of obligations or rights, or result in the payment of additional fees or penalties (with or without notice or lapse of time, or both) under, or give rise to a right of termination or cancellation under, any provision of (i) the certificate of formation or LLC Agreement, (ii) any material contract to which the Company is a party, (iii) any Order of any Governmental Entity applicable to the Company or by which any of the properties or assets of the Company are bound or (iv) any Law applicable to the Company.

    5.4    Consents and Approvals.  No consent, waiver, approval, Order, permit or authorization of, or declaration or filing with, or notification to, any Governmental Entity is required on the part of the Company in connection with the execution and delivery of this Agreement or the Purchaser Documents or the compliance by the Company with any of the provisions hereof or thereof, or the consummation of the transactions contemplated hereby or thereby except for such consents that have already been obtained.

    5.5    No Litigation.  There are no legal proceedings pending or, to the knowledge of the Company, threatened, against the Company that would have a material adverse effect on the Company or on the Company's ability to consummate the transactions contemplated hereby or the transactions contemplated by the Purchaser Documents.

    5.6    No Fraudulent Conveyance.  The Purchase Price constitutes a reasonably equivalent value and fair consideration for the Transferred Units.  Immediately after giving effect to the transactions contemplated by this Agreement, the Company shall have adequate capital to carry on its business.  No transfer of property is being made and no obligation is being incurred in connection with the transactions contemplated by this Agreement with the intent, purpose or desire on the part of the Company to hinder, delay or defraud either present or future creditors of the Company.

    5.7    Sufficient Funds to Close.  Purchaser has unencumbered cash on hand equivalent to the Purchase Price available to pay the Purchase Price and shall maintain such funds available during the pendency of this Agreement.

    5.8    Solvency.  Purchaser is not, and after giving effect to the transactions contemplated by the Transaction Documents, will not be "insolvent" within the meaning of section 101(32) of the Bankruptcy Code or any applicable state fraudulent conveyance or transfer law.

## ARTICLE VI
## COVENANTS

    6.1    Consents and Approvals.  Lehman shall, at its sole expense, and subject to the terms hereof, promptly prepare a motion in form and substance reasonably satisfactory to the Purchaser (the "Motion") to seek the consent, authorization and approval of the Bankruptcy Court to effect and consummate the transactions contemplated by the Release, Section 9.1(b) of this Agreement and any required approval under state law or Seller's organizational documents by Lehman.  Such Motion shall describe all of the transactions contemplated by the Transaction Documents.  Lehman shall file such Motion with the Bankruptcy Court within five (5) Business

8

46164760.25

Days of the date hereof and shall seek to have the Motion considered by the Bankruptcy Court at the next regularly-scheduled omnibus hearing for the Case at least 21 days after the filing of the Motion.

6.2    Seller Acknowledgement.  Seller hereby acknowledges that, until the termination of this Agreement pursuant to Section 8.1, Seller hereby waives its rights under Section 4.03 of the LLC Agreement (Right of First Offer) with respect to the Transferred Units or any instruments or agreements related thereto whether applicable to the transactions contemplated hereby and by the Transaction Documents or otherwise.

6.3    Allocation.  The Seller and the Company agree that (i) for purposes of Section 5.05(e) of the LLC Agreement (Other Allocation Rules) the transfer of the Transferred Units pursuant to this Agreement is a sale or other transaction that is outside of the ordinary course of business and (ii) the Company and the Tax Matters Partner (as defined in the LLC Agreement) will use the interim closing of the books method as of the Closing Date for purposes of allocating items of Company income, gain, loss, deduction and credit to Seller.

6.4    The Company will report the payment of the Purchase Price to Seller as a payment made in liquidation of the interest of a retiring partner under Section 736(b)(1) of the Code and will treat such payment as made in exchange for the interest of Seller in Company property (and not as a distributive share or guaranteed payment under Section 736(a) of the Code).

## ARTICLE VII
## INDEMNIFICATION

7.1    Survival of Representations and Warranties.  The representations and warranties of the parties under this Agreement shall survive the Closing for two (2) years except for the representations and warranties set forth in Sections 4.1, 4.2, 4.6, 5.1 and 5.2 which shall survive indefinitely (in each case, the "Survival Period").  Any claim for indemnification not made by either party with respect to a breach of representation or warranty on or prior to the applicable dates specified above will be irrevocably and unconditionally released and waived.

7.2    Indemnification.

(a)    From and after the Closing Date, but subject to Section 7.1 hereof, Seller shall indemnify and hold harmless the Company and any of its Affiliates, directors, officers, employees, members, agents, attorneys, representatives, successors and permitted assigns (collectively, the "Company Indemnitees") from and against any and all losses, liabilities, costs, damages, claims, actions, expenses (including attorneys' and accountants' fees and expenses) (collectively, "Losses") arising out of, based upon or resulting from, the failure of any of the representations and warranties made by Seller in this Agreement and in any Seller Documents to be true and correct in all respects when made and at the Closing, except that any such representation or warranty that is made as of a specified date shall only be required to be true and correct in all respects as of that date, unless such Losses result from such Company Indemnitee's fraud, negligence or willful misconduct.  From and after the Closing Date, Seller's aggregate

9

4616470.25

obligation for Losses indemnified under this Section 7.2(a) shall not exceed an aggregate amount equal to the Purchase Price.

(b)    From and after the Closing Date, but subject to Section 7.1 hereof, the Company shall indemnify and hold harmless Seller and any of its Affiliates, directors, officers, employees, members, agents, attorneys, representatives, successors and permitted assigns (collectively, the "Seller Indemnitees") from and against any and all Losses arising out of, based upon or resulting from, the failure of any of the representations and warranties made by the Company in this Agreement and in any Purchaser Documents to be true and correct in all respects when made and at the Closing, except that any such representation or warranty that is made as of a specified date shall only be required to be true and correct in all respects as of that date, unless such Losses results from such Seller Indemnitee's fraud, negligence or willful misconduct.  From and after the Closing Date, the Company's aggregate obligation for Losses indemnified under this Section 7.2(b) shall not exceed an aggregate amount equal to the Purchase Price.

(c)    Exclusive Remedy.  From and after the Closing Date, but subject to Section 7.1 hereof, except with respect to claims (a) for actual fraud or (b) seeking equitable relief under Section 9.6, each of the Company, on the one hand, and Seller, on the other hand, hereby acknowledges and agrees, on behalf of itself and the other Seller Indemnitees or Company Indemnitees, as the case may be, that its sole and exclusive remedy with respect to any and all claims relating to breach of the representations and warranties made by Seller or the Company, as the case may be, in this Agreement shall be pursuant to the indemnification provisions set forth in this Article VII.  In furtherance of the foregoing, each of the Company, on the one hand, and Seller, on the other hand, on behalf of itself and, respectively, the other Company Indemnitees or Seller Indemnitees, as the case may be, to the fullest extent permitted under applicable Law, hereby waives any and all rights, claims, remedies and causes of action it may have against the Company (in the case of the Seller and the other Seller Indemnitees) or Seller (in the case of the Company and the other Company Indemnitees), as the case may be, arising under or based upon any Law (including, without limitation, any such rights, claims, remedies or causes of action arising under or based upon common law or otherwise) or in equity relating to breach of the representations and warranties made by Seller or the Company, as the case may be, in this Agreement, other than (i) under Sections 7.1 and 7.2 hereof, (ii) in the case of actual fraud or (iii) such rights, claims, remedies or causes of action expressly provided for or expressly permitted under Section 9.6.

# ARTICLE VIII
# TERMINATION

8.1    Conditions of Termination.  Notwithstanding anything to the contrary contained herein, this Agreement may be terminated at any time before the Closing Date:

(a)    by written agreement of Seller and the Company;

(b)    by the Company if Seller has breached any representation, warranty, covenant or agreement contained in this Agreement, such that the conditions set forth in Section 3.1 hereof would not be satisfied as of any date following the date hereof; provided, however,

10

4616470.25

that the Company may not terminate this Agreement pursuant to this Section 8.1(b) unless and until any such breach has not been cured during fifteen (15) Business Days after written notice by the Company to Seller informing Seller of such breach, it being understood and agreed that no cure period shall be required for a breach which by its nature cannot be cured; provided further, that the Company may not terminate this Agreement pursuant to this Section 8.1(b) if it is then in material breach of the terms of this Agreement; provided further, that if the Termination Date occurs within such cure period, then the Termination Date shall automatically be extended by such number of days required to give Seller the benefit of the full fifteen (15) Business Days cure period.

(c)    by Seller if the Company has breached any representation, warranty, covenant or agreement contained in this Agreement, such that the conditions set forth in Section 3.2 hereof would not be satisfied as of any date following the date hereof; provided, however, that the Seller may not terminate this Agreement pursuant to this Section 8.1(c) unless and until any such breach has not been cured during fifteen (15) Business Days (except for breach of the Company's obligation to pay the Purchase Price on the Closing Date as set forth in Section 2.1(a) hereof for which the cure period shall be one (1) Business Day) after written notice by Seller to the Company informing the Company of such breach, it being understood and agreed that no cure period shall be required for a breach which by its nature cannot be cured; provided further, that Seller may not terminate this Agreement pursuant to this Section 8.1(c) if it is then in material breach of the terms of this Agreement; provided further, that if the Termination Date occurs within such cure period, then the Termination Date shall automatically be extended by such number of days required to give the Company the benefit of the full fifteen (15) Business Days or one (1) Business Day, as applicable, cure period.

(d)    by either party if (i) there shall be a final, non-appealable Order of a federal or state court in effect preventing consummation of the transactions contemplated hereby; or (ii) there shall be any final action taken, or any statute, rule, regulation or Order enacted, promulgated or issued or deemed applicable to the transactions contemplated hereby, by any Governmental Entity which would make consummation of the transactions contemplated hereby illegal; and

(e)    by either party if the Closing shall not have occurred on or before the Termination Date; provided, however, that the right to terminate this Agreement under this Section 8.1(e) shall not be available to (x) Seller to the extent that Seller's failure to fulfill any material obligation under this Agreement has been both willful and the primary cause of, or resulted in, the failure of the Closing to be consummated on or before such date or (y) the Company to the extent that the Company's failure to fulfill any material obligation under this Agreement has been both willful and the primary cause of, or resulted in, the failure of the Closing to be consummated on or before such date.

8.2    Effect of Termination.  In the event of the termination of this Agreement as provided in Section 8.1 hereof, this Agreement shall forthwith become void and there shall be no liability or obligation on the part of any party hereto or, to the extent applicable, their respective officers, directors, members or Affiliates provided that the terms set forth in this Section 8.2 and in Article IX hereof, except for Section 9.1, shall survive any such termination of this Agreement.

11

4616470 25

## ARTICLE IX
## GENERAL PROVISIONS

9.1    Non-Solicitation of Alternative Transactions; Further Assurances.

(a)    Each of Lehman and Seller shall not, and shall not authorize or direct any of their respective officers, directors or employees or any investment banker, attorney, accountant or other representative of Lehman or Seller, as applicable, to act on behalf of Lehman or Seller or their respective Affiliates, to, directly or indirectly, (i) solicit, participate or continue to participate in any discussions or negotiations with any Person other than the Company regarding (w) the sale of the Transferred Units, (x) the sale of equity of Seller, (y) the merger, reorganization, amalgamation, sale of all or substantially all of the assets of, consolidation, business combination, recapitalization, dissolution, liquidation, or similar transaction involving Seller or (z) any other transaction involving Seller or its assets that would impede, delay, impair or prevent, or be competitive with, the transactions contemplated hereby (each, an "Alternative Transaction"), (ii) enter into or agree to enter into any agreement with respect to any Alternative Transaction, or (iii) furnish to any Person any information, or take any other action to facilitate any inquiries or the making of any proposal, with respect to any Alternative Transaction.

(b)    Each party hereto shall execute and deliver all such further and additional instruments and agreements and shall take such further and additional actions, as may be reasonably requested by the other party in order to evidence or carry out the provisions of this Agreement or to consummate the transactions contemplated hereby. Each party hereto agrees not to take any action that would, or that would reasonably be expected to, result in any of the conditions set forth in Article III not being satisfied or satisfaction of those conditions being materially delayed. From the date hereof and following the Closing, Seller and Lehman (each on behalf of itself, its controlled Affiliates and its successors and assigns) agree not to take, directly or indirectly, any action in the Case or otherwise that would materially limit, impair, impede, avoid, interfere with or adversely alter the Company's rights or obligations under this Agreement or otherwise materially adversely impact the Company with respect to the transactions contemplated hereby and by the Transaction Documents.

9.2    Expenses. Except as otherwise expressly provided in this Agreement, each of the parties shall bear all of the expenses (including fees and disbursements of its counsel) incurred by or on behalf of it in connection with the preparation, negotiation, execution, delivery, and performance of this Agreement and the Transaction Documents and consummation of the transactions contemplated hereby and thereby.

9.3    Assignment. This Agreement may not be assigned, in whole or in part, by any party hereto without the prior written consent of the other party hereto.

9.4    Binding Effect. Except as otherwise expressly provided herein, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

9.5    No Third-Party Beneficiaries. Nothing express or implied in this Agreement is intended or shall be construed to confer upon or give any Person other than the

12

4616470.25

parties hereto and their respective successors and permitted assigns any right, benefit, or remedy under or by reason of this Agreement

9.6    Enforcement.    Each of Seller, Lehman and Purchaser agrees that irreparable damage would result to the other party and that such other party would not have any adequate remedy at law if any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached or threatened to be breached by Seller, Lehman or Purchaser. It is accordingly agreed that, if Seller, Lehman or Purchaser breaches its obligations under this Agreement, including without limitation its obligations to consummate the transactions contemplated by this Agreement, the other party shall be entitled to equitable relief, without the proof of actual damages, including in the form of an injunction or injunctions or orders for specific performance, in addition to all other remedies available to such party at law or in equity as a remedy for any such breach or threatened breach; provided however, each of Seller, Lehman and Purchaser agrees that if any party breaches its obligations under this Agreement prior to Closing, the other party's sole and exclusive remedy with respect to such breach shall be equitable relief in the form of an injunction or order for specific performance or other remedy sufficient to put such party in the same position it would have been had the other party not breached its obligations under this Agreement; provided further that if Lehman breaches its obligations under Section 9.1(b) of this Agreement, the Company's sole and exclusive remedy with respect to such breach shall be equitable relief in the form of an injunction or order for specific performance or other remedy sufficient to put the Company in the same position it would have been had Lehman not breached its obligations under Section 9.1(b). Each of Seller, Lehman and Purchaser agrees to (a) cooperate fully in any attempt by any other party in obtaining any such equitable remedy, (b) waive any requirement for the security or posting of any bond in connection with any such equitable remedy and (c) reimburse the prevailing party granted such equitable relief for reasonable out-of-pocket expenses, including the reasonable and documented fees and disbursements of counsel, in connection with any such equitable remedy. Each of Seller, Lehman and Purchaser further agrees that the only permitted objection that it may raise in response to any action for equitable relief is that it contests the existence of a breach or threatened breach of the provisions of this Agreement.

9.7    Notices.    All notices and other communications under this Agreement shall be in writing and shall be deemed given (i) when delivered personally by hand (with written confirmation of receipt), (ii) when sent by facsimile (with written confirmation of transmission) or (iii) one business day following the day sent by overnight courier (with written confirmation of receipt), in each case at the following addresses and facsimile numbers (or to such other address or facsimile number as a party may have specified by notice given to the other party pursuant to this provision):

If to the Company, to:

GTH LLC
345 St. Peter Street
1100 Landmark Towers
St. Paul, M.N. 55102-1639
Facsimile: (651) 293-5746
Attention: Brian F. Corey

13

4616470.25

With a copy (which shall not constitute notice) to:

    Willkie Farr & Gallagher LLP
    787 Seventh Avenue
    New York, N.Y. 10019-6099
    Facsimile: (212) 728-9632
    Attention: Rosalind Fahey Kruse

If to Seller or Lehman, to:

    GT Investment Company I, LLC
    c/o Lehman Brothers Holdings Inc.
    1271 Sixth Avenue, 38th Floor
    New York, N.Y. 10020
    Facsimile: (646) 758-1710
    Attention: Mark O'Sullivan and Chief Financial Officer

With a copy (which shall not constitute notice) to:

    Weil, Gotshal & Manges, LLP
    767 Fifth Avenue
    New York, N.Y. 10153
    Facsimile: (212) 310-8000
    Attention: Glenn West and Lori Fife

    9.8    <u>Severability</u>.  If any provision of this Agreement or the application of such provision to any Person or circumstance shall be held by a court of competent jurisdiction to be invalid, illegal, or unenforceable under the applicable Law of any jurisdiction, (i) the remainder of this Agreement or the application of such provision to other Persons or circumstances or in other jurisdictions shall not be affected thereby, and (ii) such invalid, illegal, or unenforceable provision shall not affect the validity or enforceability of any other provision of this Agreement.

    9.9    <u>Governing Law; Exclusive Jurisdiction; Waiver of Jury Trial</u>.  This Agreement shall be governed by and construed in all respects in accordance with the laws of the State of New York without regard to the conflicts of laws principles thereof.

    EACH OF THE PARTIES SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY FEDERAL OR STATE COURT LOCATED WITHIN THE BOROUGH OF MANHATTAN OF THE CITY, COUNTY AND STATE OF NEW YORK OVER ANY DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY, AND AGREES THAT ALL CLAIMS IN RESPECT OF SUCH DISPUTE OR ANY SUIT, ACTION OR PROCEEDING RELATED THERETO MAY BE HEARD AND DETERMINED IN SUCH COURTS, <u>PROVIDED, HOWEVER</u>, THAT DURING THE PENDENCY OF THE CASE AND UPON CLOSING OF THE CASE, TO THE EXTENT PERMITTED BY ORDER OF THE BANKRUPTCY COURT, THE BANKRUPTCY COURT SHALL HAVE AND RETAIN EXCLUSIVE JURISDICTION TO ENFORCE THE TERMS OF THIS AGREEMENT AND TO DECIDE ANY CLAIMS OR

4616470.25

DISPUTES WHICH MAY ARISE OR RESULT FROM, OR BE CONNECTED WITH, THIS AGREEMENT, ANY BREACH OR DEFAULT HEREUNDER, OR THE TRANSACTIONS CONTEMPLATED HEREBY.

THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT ON OR WITH RESPECT TO THIS AGREEMENT AND THE TRANSACTION DOCUMENTS, INCLUDING TO ENFORCE OR DEFEND ANY RIGHTS HEREUNDER AND THEREUNDER, AND AGREE THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

9.10    Counterparts.  This Agreement may be executed in multiple counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.

9.11    Entire Agreement; Amendment.  This Agreement (including the Exhibits attached hereto) constitutes the entire agreement of the parties hereto in respect of the subject matter hereof, and supersedes all prior agreements or understandings between the parties hereto in respect of the subject matter hereof. To the extent permitted by Law, this Agreement may be amended by a subsequent writing signed by each of the parties upon the proper approval thereof.

9.12    Limitation on Damages.  Notwithstanding anything to the contrary elsewhere in this Agreement, no party shall, in any event, be liable to any other person for any consequential, incidental, indirect, special or punitive damages of such other person, including loss of future revenue, income or profits, diminution of value or loss of business reputation or opportunity relating to the breach or alleged breach hereof.

* * * * *

*[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]*

15

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

GT INVESTMENT COMPANY I, LLC

By: _____
Name: _____
Title: _____

LEHMAN BROTHERS HOLDINGS INC.,
solely for the purposes of Sections 2.1(b),
3.1(c)(v), 6.1 and Article IX of this Agreement
only

By: _____
Name: _____
Title: _____

GTH LLC

By: _____
Name: _____
Title: _____

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

GT INVESTMENT COMPANY I, LLC

By: _____
Name: _____
Title: _____

LEHMAN BROTHERS HOLDINGS INC.,
solely for the purposes of Sections 2.1(b),
3.1(c)(v), 6.1 and Article IX of this Agreement
only

By: _____
Name: _____
Title: _____

GTH LLC

By: _____
Name: Keith Anderson
Title: President

## EXHIBIT A

### CERTIFICATE OF TRANSFER

THIS CERTIFICATE OF TRANSFER is made and delivered in connection with the Membership Interest Purchase Agreement, dated as of [•], 2009 (the "Agreement"), between GTH LLC, a Delaware limited liability company (the "Company"), and GT Investment Company I, LLC ("GTIC"). Capitalized terms used herein, unless otherwise defined herein, shall have the meaning ascribed to them in the Agreement. In exchange for the Purchase Price, GTIC hereby sells, conveys, assigns and transfers to the Company the Transferred Units for immediate cancellation.

IN WITNESS WHEREOF, this Certificate of Transfer is hereby executed as of this [•] day of [•].

GT INVESTMENT COMPANY I, LLC

By: _____
      Name:
      Title:

**EXHIBIT B**

**RELEASE**

This mutual release (this "**Release**"), dated as of [_____], is delivered by GTH LLC, a Delaware limited liability company (the "**Company**"), GT Investment Company I, LLC, a Delaware limited liability company ("**GTIC**") and Lehman Brothers Holdings, Inc., a Delaware Corporation ("**Lehman**" and, together with GTIC, the "**Lehman Parties**") pursuant to Sections 3.1(c)(v) and 3.2(c)(iv) of the Membership Interest Purchase Agreement, dated as of [_____], by and among the Company, GTIC and, solely for purposes of certain enumerated provisions of the Purchase Agreement (as defined herein), Lehman relating to the sale by GTIC and the purchase by the Company of GTIC's membership interest in the Company (the "**Purchase Agreement**"). Capitalized terms used herein but not otherwise defined have the meanings ascribed to them in the Purchase Agreement.

       1.     Release. The Company on the one hand and each of the Lehman Parties on the other, each on behalf of itself, its subsidiaries, successors and assigns (each, a "**Releasing Party**") hereby absolutely, irrevocably and unconditionally releases, acquits and discharges each other party hereto, its members, partners, affiliates, and its and their respective directors, representatives, attorneys, successors and assigns, and their successors and assigns, each in its capacity as such (collectively, the "**Releasees**"), with respect to and from any and all Claims (as defined below) that the Releasing Party had or may have or claim to have in the future against each or any of the Releasees by reason of any matter, cause or thing whatsoever relating in any manner whatsoever to (a) any Releasee's membership or ownership interests in the Company or any of its subsidiaries or matters arising under the Company's Limited Liability Company Agreement, dated as of December 31, 2007, as amended (the "**LLC Agreement**") and other organizational documents (including any rights granted to Lehman pursuant to the LLC Agreement), (b) any act or omission taken by the members of the Company and the members of the Board of Directors of the Company, or (c) rights, if any, to seek to challenge, overturn or avoid any transfer of assets or payments to or obligations incurred by any party pursuant to the Purchase Agreement or to recharacterize the Purchase Agreement, whether based on the adequacy of the consideration provided in respect thereof or on any other ground (the claims released under (a), (b) and (c), collectively, the "**Released Claims**"), and acknowledges and agrees that in the event any Claim is raised, or any Claim is threatened against the Releasees by a Releasing Party, any subsidiaries or their equity owners, partners or affiliates with respect to any cause, matter or thing which is the subject of the above, regardless of when any such Claim is raised, this Release may be raised as a complete bar to any such Claim, and the applicable Releasee may recover from the applicable Releasing Parties all costs incurred in connection with such Claim, including attorneys' fees.

       As used herein, "**Claims**" means any and all charges, claims, demands, liabilities, obligations, promises, agreements, controversies, challenges, complaints, damages, remedies, suits, rights, costs, losses, debts, and expenses (including attorneys' fees and costs) of any kind whatsoever, known or unknown, whether in law or equity and whether arising under federal,

state or local law, in each case arising from or relating to any acts, omissions or other conduct by any party that occurred on or prior to the Closing Date.

## GENERAL PROVISIONS

      2.     Assignment.  This Release shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

      3.     Notices.  All notices and other communications under this Release shall be in writing and shall be deemed given (i) when delivered personally by hand (with written confirmation of receipt), (ii) when sent by facsimile (with written confirmation of transmission) or (iii) one business day following the day sent by overnight courier (with written confirmation of receipt), in each case at the following addresses and facsimile numbers (or to such other address or facsimile number as a party may have specified by notice given to the other party pursuant to this provision):

If to the Company, to:

GTH LLC
345 St. Peter Street
1100 Landmark Towers
St. Paul, MN 55102-1639
Facsimile: (651) 293-5746
Attention: Brian F. Corey

With a copy (which shall not constitute notice) to:

Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, N.Y. 10019-6099
Facsimile:  (212) 728-8111
Attention:  Rosalind Fahey Kruse

If to the Lehman Parties, to:

GT Investment Company I, LLC
Lehman Brothers Holdings, Inc.
1271 Sixth Avenue, 38th Floor
New York, N.Y. 10019
Facsimile:  (646) 758-1710
Attention:  Mark O'Sullivan

With a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, N.Y. 10153

Facsimile: (212) 310-8000
Attention: Glenn West and Lori Fife

4.    Severability.  If any provision of this Release or the application of such provision to any person or circumstance shall be held by a court of competent jurisdiction to be invalid, illegal, or unenforceable under the applicable Law of any jurisdiction, (i) the remainder of this Release or the application of such provision to other persons or circumstances or in other jurisdictions shall not be affected thereby, and (ii) such invalid, illegal, or unenforceable provision shall not affect the validity or enforceability of any other provision of this Release.

5.    Governing Law; Exclusive Jurisdiction; Waiver of Jury Trial.  This Release shall be governed by and construed in all respects in accordance with the laws of the State of New York without regard to the conflicts of laws principles thereof.

EACH OF THE PARTIES SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY FEDERAL OR STATE COURT LOCATED WITHIN THE BOROUGH OF MANHATTAN OF THE CITY, COUNTY AND STATE OF NEW YORK OVER ANY DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY, AND AGREES THAT ALL CLAIMS IN RESPECT OF SUCH DISPUTE OR ANY SUIT, ACTION OR PROCEEDING RELATED THERETO MAY BE HEARD AND DETERMINED IN SUCH COURTS, PROVIDED, HOWEVER, THAT DURING THE PENDENCY OF THE CASE AND UPON CLOSING OF THE CASE, TO THE EXTENT PERMITTED BY ORDER OF THE BANKRUPTCY COURT, THE BANKRUPTCY COURT SHALL HAVE AND RETAIN EXCLUSIVE JURISDICTION TO ENFORCE THE TERMS OF THIS AGREEMENT AND TO DECIDE ANY CLAIMS OR DISPUTES WHICH MAY ARISE OR RESULT FROM, OR BE CONNECTED WITH, THIS AGREEMENT, ANY BREACH OR DEFAULT HEREUNDER, OR THE TRANSACTIONS CONTEMPLATED HEREBY.

THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT ON OR WITH RESPECT TO THIS AGREEMENT AND THE TRANSACTION DOCUMENTS, INCLUDING TO ENFORCE OR DEFEND ANY RIGHTS HEREUNDER AND THEREUNDER, AND AGREE THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

6.    Counterparts.  This Release may be executed in multiple counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.

7.    Entire Agreement; Amendment.  This Release constitutes the entire agreement of the parties hereto in respect of the subject matter hereof, and supersedes all prior agreements or understandings between the parties hereto in respect of the subject matter hereof. To the extent permitted by Law, this Agreement may be amended by a subsequent writing signed by each of the parties upon the proper approval thereof.

IN WITNESS WHEREOF, each of the undersigned has executed and delivered this Release as of the date first written above.

GT INVESTMENT COMPANY I, LLC

By: _____
Name: _____
Title: _____

LEHMAN BROTHERS HOLDINGS, INC.

By: _____
Name: _____
Title: _____

GTH LLC

By: _____
Name: _____
Title: _____

## EXHIBIT C

## OPINION OF WILLKIE FARR & GALLAGHER LLP

[DATE]


GT Investment Company I, LLC,
    as Seller under the Purchase Agreement (as defined below)
1271 Sixth Avenue, 38th Floor
New York, NY 10019


Ladies and Gentlemen:

We have acted as counsel to GTH LLC, a Delaware limited liability company (the "Company" or the "Purchaser") in connection with the Membership Interest Purchase Agreement, dated as of April 9, 2009 (the "Purchase Agreement"), by and between the Purchaser and GT Investment Company I, LLC, a Delaware limited liability company ("Seller").

This opinion is being delivered to you pursuant to Section 3.2(c)(ii) of the Purchase Agreement. Capitalized terms not otherwise defined in this opinion are used as defined in the Purchase Agreement.

In connection with this opinion, we have examined copies of:

1.    the Purchase Agreement;

2.    the Release;

3.    the certificate of formation of the Company and LLC Agreement (collectively, the "Constituent Documents");

4.    resolutions of the board of directors of the Company (the "Resolutions"); and

5.    certificate of the Secretary of State of the State of Delaware as to the existence and good standing of the Company (the "Good Standing Certificate").

In our examination, we have assumed:

(i)    the genuineness of all signatures of all parties;

(ii)    the authenticity of all company and corporate records, agreements, documents, instruments and certificates submitted to us as originals, the conformity to original documents and agreements of all documents and agreements submitted to us as conformed, certified or photostatic copies thereof and the authenticity of the originals of such conformed, certified or photostatic copies;

(iii)    the due authorization of all documents and agreements by all parties thereto other than by the Company and the execution and delivery of all documents and agreements by all parties other than by the Company;

4618456.10

(iv)    the legal right and power of all such parties other than the Company under all applicable laws and regulations to enter into, execute and deliver such agreements and documents;

(v)     that the Seller has the requisite power and authority to enter into the Purchase Agreement and the other Transaction Documents and to consummate the transactions contemplated thereby;

(vi)    the absence of any requirement of consent, approval or authorization by any Person or by any Governmental Authority with respect to the Seller; and

(vii)   that the Purchase Agreement and the other Transaction Documents are a legal, valid and binding obligation of the Seller, enforceable against the Seller in accordance with their respective terms.

As to questions of fact material to the opinions expressed herein, we have, when relevant facts were not independently established by us, relied upon representations of the Company and its respective officers made in or pursuant to the Purchase Agreement or any Transaction Document and of public officials.

As used herein, the term "Applicable Laws" means the Federal laws of the United States of America and the laws of the State of New York which, in our experience, are normally applicable to transactions of the type contemplated by the Purchase Agreement, the Release and the Delaware Limited Liability Company Act. The term "Governmental Approval" means any consent, approval, license, authorization or validation of, or filing, recording or registration with, any Governmental Authority pursuant to the Applicable Laws.

Based upon the foregoing and subject to the assumptions, limitations, qualifications and exceptions set forth below, we are of the opinion that:

1.    The Company is a limited liability company, validly existing and in good standing under the laws of the State of Delaware.

2.    The Company has the requisite limited liability company power and authority to execute and deliver the Purchase Agreement and the Release and to perform its obligations under the Purchase Agreement and the Release. The execution and delivery by the Company of the Purchase Agreement and the Release and the performance by it of its obligations under the Purchase Agreement and the Release have been duly authorized by all necessary limited liability company action on the part of the Company.

3.    Each of the Purchase Agreement and the Release has been duly executed and delivered on behalf of the Company. Each of the Purchase Agreement and the Release constitutes a legal, valid and binding obligation of the Company, enforceable against the Company in accordance with its terms.

4.    The execution, delivery and performance by the Company of the Purchase Agreement and the Release does not and will not (i) violate the Constituent Documents, (ii) violate any provision of the Applicable Laws binding on the Company or any Order thereunder of any Governmental Entity binding upon the Company of which we have knowledge or (iii) result in a breach of, give rise to a default under or to any right to require prepayment, repurchase, or redemption of any obligation or result in or require the creation or imposition of any Lien upon any of the properties or assets of the Company in each case under any contractual obligation identified on Schedule I hereto.

5.    The execution, delivery and performance by the Company of the Purchase Agreement and the Release does not and will not require any Governmental Approval.

46184456.10

The foregoing opinions are subject to the following assumptions, qualifications and exceptions:

A.  The opinions expressed in opinion paragraph 3 above are qualified (i) by the effects of applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium or similar laws relating to or affecting the enforcement of creditors' rights generally, (ii) insofar as the remedies of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and the discretion of the court before which any enforcement thereof may be brought and (iii) insofar as proceedings therefore may be limited by general principles of equity (regardless of whether such enforceability is considered in a proceeding at law or in equity), including principles of commercial reasonableness and an implied covenant of good faith and fair dealing. Such principles of equity are of general application, and in applying such principles, a court might decline to order Seller to specifically perform its obligations under the Purchase Agreement. Insofar as provisions provide for indemnification, the enforcement thereof may be limited by public policy considerations. Such opinions are further subject to the qualification that certain remedial provisions of the Purchase Agreement are or may be unenforceable in whole or in part under the laws of the State of New York.

B.  We express no opinion as to any provisions of the Purchase Agreement insofar as they relate to (i) the subject matter jurisdiction of the federal courts to adjudicate any controversy relating to the Purchase Agreement, (ii) the waiver of defenses and the waiver of inconvenient forum, (iii) the waiver of the right to a jury trial or (iv) rights of set-off.

C.  We express no opinion as to the enforceability under certain circumstances of provisions of the Purchase Agreement to the effect that terms may not be waived or modified except in writing may be limited under certain circumstances.

This opinion letter is limited to the matters stated herein and no opinion is implied or may be inferred beyond the matters expressly stated. This opinion letter may not be quoted, distributed or disclosed, except to your counsel, to participants or assignees or, to the extent necessary, to an applicable regulatory authority or pursuant to legal process, without our prior written consent.

This opinion letter speaks only as of the date hereof and is limited to present statutes, regulations and administrative and judicial interpretations. We undertake no responsibility to update or supplement this opinion letter after the date hereof.

No person or entity may rely or claim reliance upon this opinion letter other than you and your permitted successors and assigns.

Very truly yours,

SCHEDULE I

### Contractual Obligations

1. Revolving Line of Credit and Security Agreement, dated June 9, 2003, by and between Green Tree Servicing LLC, as Borrower, and U.S. Bank National Association, as Lender and Bank, as amended

2. Revolving Line of Credit and Security Agreement, dated as of June 9, 2003, by and between Green Tree Credit LLC, as Borrower, and U.S. Bank National Association, as Lender and Bank, as amended

3. Credit and Guaranty Agreement, dated as of January 3, 2007, by and among Green Tree Investment Holdings II and Green Tree Investment Holdings III, as Borrowers, certain Subsidiaries of Borrowers, as Guarantors, the Lenders from time to time parties thereto and Greenwich Capital Financial Products, Inc., as Sole Lead Arranger, Sole Book Runner, Syndication Agent, Administrative Agent, Collateral Agent and Documentation Agent, as amended

4. Fourth Amended and Restated Note Purchase Agreement, dated as of December 15, 2008, among Green Tree Advance Receivables Trust, as Issuer, The Royal Bank of Scotland PLC, as Purchaser, and The Royal Bank of Scotland PLC, as Agent

5. Fourth Amended and Restated Indenture, dated as of, December 15, 2008, by and between Green Tree Advance Receivables Trust, as Issuer, and Wells Fargo Bank, N.A, as Indenture Trustee

6. Second Amended and Restated Advance Receivables Backed Note, Series 2004-1, dated as of December 15, 2008, issued by Green Tree Advance Receivables Trust to Wells Fargo Bank, N.A., as Indenture Trustee

7. Receivables Purchase Agreement, dated as of June 3, 2005, between Green Tree Servicing LLC, as Seller, and Green Tree Advance Receivables LLC, as Buyer

## EXHIBIT D

## OPINION OF GENERAL COUNSEL OF THE COMPANY

[DATE]

GT Investment Company I, LLC,
    as Seller under the Purchase Agreement (as defined below)
1271 Sixth Avenue, 38th Floor
New York, NY 10019

Ladies and Gentlemen:

You have requested my opinion as in-house counsel to GTH LLC, a Delaware limited liability company (the "Company") to certain matters in connection with the Membership Interest Purchase Agreement (the "Purchase Agreement"), dated as of April 9, 2009, by and between the Company and GT Investment Company I, LLC (the "Seller").

In connection with this opinion, I have made such examinations of law and have examined such corporate documents and records of the Company and certificates of public officials and officers of the Company and such other documents, as I have deemed necessary or appropriate for the purposes of this opinion.  To the extent I have deemed necessary and proper, I have relied as to factual matters upon the representations and warranties of the Company contained in the Purchase Agreement, and the written consents of the Board of Directors of the Company approving the Purchase Agreement.  I have assumed the authenticity of all documents submitted to me as originals, the genuineness of all signatures, the legal capacity of natural persons and the conformity to the originals of all documents.

Based upon and subject to the foregoing, I am of the opinion that the execution delivery and performance by the Company of, and the consummation of the transactions contemplated by, the Purchase Agreement does not and will not (a) violate any provision of the Company's limited liability company agreement, (b) violate any applicable law, rule or regulation, (c) violate any order, writ, injunction or decree of any court or governmental authority or agency or any arbitral award applicable to the Company or (d) result in a breach of, constitute a default under, require any consent (other than any consents that have been obtained) under, or result in the acceleration or required prepayment of any indebtedness pursuant to the terms of, any agreement or instruments to which the Company is a party or by which it is bound or to which it is subject.

The opinion expressed herein, however, is subject to the following:  I am admitted to practice law in the State of Minnesota and do not purport to be an expert on, or to express any opinion concerning, any law of any other states or jurisdictions (other than the federal laws of the United States), except as provided below.  I am not admitted to practice law in the State of Delaware; however, I am generally familiar with the Limited Liability Company Law of the State of Delaware, as presently in effect and have made such inquiries as I consider necessary to render the opinions contained herein.  This opinion letter is being furnished to you solely for

4624715.7

your benefit and may not be relied upon by, nor may copies be delivered to, any other person or entity without my prior written consent. This opinion letter is limited to the matters stated herein and no opinion is implied or may be inferred beyond the matters expressly stated. This opinion letter speaks only to matters as of the date hereof, and I undertake no responsibility or obligation to update or supplement it after today.

Best Regards,


Brian F. Corey
Senior Vice President and
  General Counsel

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                      :

In re                                   :       **Chapter 11 Case No.**
                                   :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.***,**  :       **08-13555 (JMP)**
                                   :

                    **Debtors.**        :       **(Jointly Administered)**
                                   :
-------------------------------------------------------------------x

### ORDER GRANTING DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 (I) AUTHORIZING AND APPROVING A SETTLEMENT AMONG LEHMAN BROTHERS HOLDINGS INC., GTH LLC, AND GT INVESTMENT COMPANY I, LLC, AND (II) RELATED RELIEF

Upon the motion, dated April 22, 2009 (the "Motion")[1], of Lehman Brothers

Holdings Inc., as debtor in possession ("LBHI", and together with its affiliated debtors in the

above-referenced chapter 11 cases, the "Debtors"), pursuant to section 105(a) of title 11 of the

United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") for entry of an order authorizing LBHI to (i) enter into the

Release; and (ii) take all corporate actions necessary to comply with its obligations under the

Purchase Agreement; all as more fully described in the Motion; and the Court having jurisdiction

to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of

New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.);

and consideration of the Motion and the relief requested therein being a core proceeding pursuant

to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409; and due and proper notice of the Motion having been provided in accordance with the

procedures set forth in the amended order entered February 13, 2009 governing case

---

[1] Capitalized terms that are used but not defined in this Order have the meanings ascribed to them in the Motion.

management and administrative procedures [Docket No. 2837]; and the Court having found and

determined that the relief sought in the Motion is in the best interests of LBHI, its estate and

creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, LBHI's entry into the

Release is approved; and it is further

ORDERED that, pursuant to section 105(a) of the Bankruptcy Code, LBHI is (a)

authorized, but not directed, to enter into the Release and the Non-Interference Provision, and (b)

authorized and empowered to take all corporate action required by the Purchase Agreement; and

it is further

ORDERED that notice of the Motion as provided therein shall be deemed

good and sufficient notice of such Motion; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.

Dated: May ___, 2009
        New York, New York

_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE