Presentment Date and Time:  May 11, 2009 at 12:00 noon (Prevailing Eastern Time)
Objection Deadline:  May 11, 2009 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (Only if Objection Filed):  May 13, 2009 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                                  :
**In re**                                                         :        **Chapter 11 Case No.**
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                      :        **08-13555 (JMP)**
                                                                  :
                                        **Debtors.**              :        **(Jointly Administered)**
                                                                  :
                                                                  :
------------------------------------------------------------------x

### NOTICE OF PRESENTMENT OF STIPULATION, AGREEMENT AND ORDER, PURSUANT TO SECTIONS 362 AND 553 OF THE BANKRUPTCY CODE, MODIFYING THE AUTOMATIC STAY FOR THE LIMITED PURPOSE OF PERMITTING HSBC BANK PLC TO EFFECT SETOFF AND RESOLUTION OF CERTAIN BANKING ARRANGEMENTS BETWEEN LEHMAN BROTHERS HOLDINGS INC. AND HSBC BANK PLC

   **PLEASE TAKE NOTICE** that the undersigned will present the annexed Stipulation and Order (the "Stipulation, Agreement, and Order") between Lehman Brothers Holdings Inc. as debtor and debtor-in-possession, on the one hand, and HSBC Bank Plc, on the other, to the Honorable James M. Peck, United States Bankruptcy Judge, for signature on **May 11, 2009 at 12:00 noon (Prevailing Eastern Time).**

   **PLEASE TAKE FURTHER NOTICE** that unless a written objection to the proposed Stipulation, Agreement, and Order, with proof of service, is served and filed with the Clerk of the Court and a courtesy copy is delivered to the Bankruptcy Judge's chambers and the undersigned so as to be received by **May 11, 2009 at 11:00 a.m. (Prevailing Eastern Time)**, there will not be a hearing and the Stipulation, Agreement, and Order may be signed.

   **PLEASE TAKE FURTHER NOTICE** that only if a written objection is timely served and filed, a hearing (the "Hearing") will be held to consider the Stipulation, Agreement, and Order on **May 13, 2009 at 10:00 a.m. (Prevailing Eastern Time)** before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court,

Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  May 1, 2009
New York, New York

/s/ Lori R. Fife
Lori R. Fife

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                                    :

In re                                      :       **Chapter 11 Case No.**
                                                    :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :       **08-13555 (JMP)**
                                                    :

                       **Debtors.**          :       **(Jointly Administered)**
                                                      :

                                                    :
----------------------------------------------------------------x

**STIPULATION, AGREEMENT AND ORDER,**
**PURSUANT TO SECTIONS 362 AND 553 OF THE BANKRUPTCY**
**CODE, MODIFYING THE AUTOMATIC STAY FOR THE LIMITED**
**PURPOSE OF PERMITTING HSBC BANK PLC TO EFFECT SETOFF**
**AND RESOLUTION OF CERTAIN BANKING ARRANGEMENTS**
**BETWEEN LEHMAN BROTHERS HOLDINGS INC. AND HSBC BANK PLC**

        This stipulation, agreement and order (the "<u>Stipulation</u>") is made and entered into

on the date hereof, by and between HSBC Bank Plc ("<u>HSBC</u>") and Lehman Brothers Holdings

Inc. ("<u>LBHI</u>").

**RECITALS:**

        A.        Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "<u>Commencement Date</u>"), LBHI and certain of its subsidiaries (collectively, the

"<u>Debtors</u>") commenced with this Court voluntary cases under chapter 11 of title 11 of the United

States Code (the "<u>Bankruptcy Code</u>").  The Debtors' chapter 11 cases have been consolidated for

procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").  The Debtors are authorized to

operate their businesses and manage their properties as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

        B.        Prior to the Commencement Date, HSBC and LBHI entered into an

agreement, known as a "deed", dated September 9, 2008 (the "<u>Deed</u>"), which is annexed hereto

as <u>Exhibit A</u>.  The Deed provides that, under certain circumstances, funds held by HSBC in three accounts in the name of LBHI (the "<u>Collateral Accounts</u>") may be used to secure, among other things, "Debts" (as defined in the Deed), including potential overdrafts or debit balances, that LBHI, Lehman Brothers International (Europe) or Lehman Brothers Limited may owe to HSBC arising from the normal operation of their customer accounts listed on Schedule 2 of the Deed (the "<u>Customer Accounts</u>").

C.    The Collateral Accounts include:  (i) account number 67850204 (the "<u>Euro Collateral Account</u>"), (ii) account number 67850086 (the "<u>USD Collateral Account</u>") and (iii) account number 67850196 (the "<u>GBP Collateral Account</u>").  As of April 28, 2009, the balance in the Euro Collateral Account was €343,446,459.96 (the "<u>Collateral Funds</u>").  The USD Collateral Account and the GBP Collateral Account both have a zero balance.

D.    As of April 23, 2009, one of the Customer Accounts in the name of LBHI, account number 57401113 (the "<u>LBHI Customer Account</u>"), was overdrawn in the amount of £99,992,714.37 plus accrued interest in the amount of £69,347.60 (the "<u>LBHI Overdraft</u>").

E.    LBHI and HSBC agree that on October 31, 2008 Royal Bank of Scotland caused a misdirected payment in the approximate amount of £605,000.00 to be deposited in the LBHI Customer Account (the "<u>Mistaken Payment Claim</u>") and that, pursuant to section 553(a) of the Bankruptcy Code and subject to sections 362 and 363 of the Bankruptcy Code, HSBC is permitted to setoff, as described more fully in paragraphs F and 2 herein, the Mistaken Payment Claim, which shall be adjusted in accordance with the Final Determinations Process (defined below), and to remit the Mistaken Payment Claim to Royal Bank of Scotland.

F.    LBHI and HSBC agree that, pursuant to section 553(a) of the Bankruptcy Code, and subject to sections 362 and 363 of the Bankruptcy Code, HSBC is permitted to setoff

2

the amount it is owed on account of (i) the LBHI Overdraft, as adjusted in accordance with the

Final Determinations Process, plus accrued interest and all costs and expenses (including any

legal fees) incurred by HSBC in connection herewith (the "Overdraft Claim") and (ii) the

Mistaken Payment Claim (together with the Overdraft Claim, the "HSBC Claim") against the

Collateral Funds in full satisfaction of the HSBC Claim.

       G.     LBHI and HSBC agree to work in a commercially reasonable manner to

address issues surrounding HSBC's additional alleged setoff rights against the Debtors arising

from any and all other and further claims (beyond the HSBC Claim ) HSBC has asserted or may

assert at a future date (the "Additional HSBC Claim").

       H.     LBHI and HSBC agree that any delay occasioned by the ongoing

negotiations between LBHI and HSBC in furtherance of their attempts to address the Additional

HSBC Claim does not in any way limit or enhance (i) HSBC's right, if any, to continue its

administrative hold on the Collateral Accounts and (ii) LBHI's right, if any, to contest such

administrative hold or seek immediate turnover of the Collateral Funds.

       **NOW, THEREFORE**, subject to Court approval, in consideration of the mutual

covenants, promises and obligations set forth herein, and other good and valuable consideration,

the sufficiency of which is acknowledged, HSBC and LBHI hereby agree as follows:

**STIPULATION AND AGREEMENT:**

       1.     The Recitals set forth above form an integral part of this Stipulation and

are incorporated fully herein.

       2.     Upon entry of a final, effective order approving this Stipulation

(the "Effective Date"), the automatic stay pursuant to section 362(a) of the Bankruptcy Code

(the "Automatic Stay") shall be modified solely to the extent necessary to permit HSBC: (i) to

convert the monies in the Euro Collateral Account to British pounds in an amount equal to the

HSBC Claim; (ii) to setoff the HSBC Claim against the Collateral Funds, which when complete

shall provide for the full satisfaction of the HSBC Claim; and (iii) to close the LBHI Customer

Account.  Except as provided herein, the provisions of the Automatic Stay, including, without

limitation, those provisions prohibiting any act to collect, assess or recover a claim that arose

before the commencement of the Debtors' chapter 11 cases from the Debtors and/or assets or

property of the Debtors' estates (as defined in section 541 of the Bankruptcy Code) shall remain

in full force and effect.

        3.        Within five (5) business days after the Effective Date, HSBC shall provide

written notice (the "Notice") by e-mail and overnight delivery to Adrian Teng,

ateng@alvarezandmarsal.com, Alvarez and Marsal, 25 Bank Street (4th floor – mail drop 33),

London E14 5LE, UK and John W. Lucas, john.lucas@weil.com, 767 Fifth Avenue, New York,

New York, 10153, which shall include a final accounting of the amount of the HSBC Claim and

its various components (the "Final Determinations").  LBHI shall have three (3) business days

after receipt of the Notice to contest the amount of the Final Determinations, and such written

notice shall be sent by e-mail and overnight delivery to Martin Holcombe,

martin.j.holcombe@hsbc.com, HSBC Bank Plc,  8 Canada Square (Level 16), London E14 5HQ,

UK and Angela J. Somers, angela.somers@allenovery.com,  Allen & Overy LLP, 1221 Avenue

of the Americas, New York, NY 10020.  If LBHI contests the Final Determinations, HSBC shall

not setoff the HSBC Claim to the extent of such objection unless and until the parties agree or

such setoff is authorized by the Court.  If LBHI does not contest the Final Determination, such

amounts shall be deemed the final amounts due and owing by LBHI to HSBC relating to the

4

HSBC Claim (the procedures set forth in this paragraph 3 shall constitute the "Final Determinations Process").

4.      Upon the resolution of the Final Determinations Process, HSBC shall remit the amount of the Misdirected Payment Claim to Royal Bank of Scotland.

5.      Upon consummation of the setoffs contemplated herein, LBHI and HSBC hereby forever waive and release each other and their respective subsidiaries, affiliates, predecessors, and successors in interest, and all of their current, past, and future officers, directors, partners, principals, agents, insurers, servants, employees, representatives, attorneys, and advisors, acting in their capacities as such, from any and all claims, liabilities, causes of action, demands, and damages of whatever kind or nature and whether known or unknown arising prior to the Effective Date solely as they relate to the LBHI Customer Account and the HSBC Claim; *provided*, *however*, that nothing contained herein shall release or waive LBHI and HSBC from their respective obligations or respective rights set forth in this Stipulation; *provided*, *further* that this Stipulation shall not affect any other claims between LBHI and HSBC, including the Additional HSBC Claim, or limit or enhance any right that HSBC may have to impose an administrative freeze on the Collateral Accounts or LBHI's rights, if any, to contest such administrative hold or seek immediate turnover of the Collateral Funds, and that any and all rights, defenses, objections, and challenges that LBHI and HSBC may have in respect of the foregoing are expressly reserved.

6.      LBHI and HSBC shall work in a commercially reasonable manner to address the issues surrounding the Additional HSBC Claim, and in the interim, HSBC's right, if any, to impose an administrative hold on the Collateral Accounts will neither be limited nor enhanced by this Stipulation nor shall LBHI's right to contest such administrative hold or seek

5

the immediate turnover of the Collateral Funds be limited or enhanced by this Stipulation.  Until

such time as HSBC releases its administrative hold on the Collateral Accounts, monies in the

Collateral Accounts shall accrue interest at the prevailing commercial rates.

7.    Nothing contained herein shall prejudice or be deemed to prejudice any

other rights of LBHI and HSBC and any rights, claims, defenses, obligations and challenges any

party in interest may have with respect thereto.

8.    This Stipulation shall have no force or effect unless and until approved by

the Court.

9.    Each party hereto represents and warrants that as of the date of execution

of this Stipulation, the execution and delivery of this Stipulation has been duly authorized, that

all necessary approvals have been granted, save only for the approval of the Court, that any and

all necessary actions have been taken, and that the undersigned has full and complete authority to

enter into this Stipulation on behalf of its respective party and to bind such party.

10.    This Stipulation, and all of its terms and provisions, shall be binding upon

and inure to the benefit of the parties, and their respective successors, assigns, heirs, executors,

and administrators, including, without limitation, any chapter 11 or chapter 7 trustee appointed

for the Debtors.

11.    Each party hereto warrants, represents, and agrees that in executing this

Stipulation, it does so with the full knowledge of any and all rights that it may have with respect

to the controversies herein and it has received independent legal advice from its attorneys with

respect thereto.

12.    This Stipulation may be executed in counterparts, each of which shall

constitute an original, but all of which when taken together shall constitute one and the same

instrument.  An electronically transmitted facsimile of any signature shall be as binding as an original signature.

13.    No amendment, waiver of modification of any provision of this Stipulation shall be effective unless the same shall be in writing and signed by HSBC and LBHI.

14.    This Stipulation contains the entire agreement between the parties with respect to its subject matter, and expressly supersedes any and all prior agreements, written or oral.  Any prior or contemporaneous agreements, contracts, promises, representations and statements among the parties hereto or their representatives as to the subject matter hereof are merged into this Stipulation, and no oral statements, prior written drafts of this Stipulation, or other writing, correspondence or memoranda shall be used to construe or interpret any provision hereof or of any related document.

15.    This Stipulation shall be construed and governed under the laws of the State of New York.

16.       This Stipulation has been fully negotiated by the parties.  Each party

acknowledges and agrees that this Stipulation has been drafted jointly, and the rule that

ambiguities in an agreement or contract may be construed against the drafter shall not apply in

the construction or interpretation of this Stipulation.

Dated:  April 30, 2009
         New York, New York

                                            /s/ Angela Somers
                                            Angela Somers

                                            ALLEN & OVERY LLP
                                            1221 Avenue of the Americas
                                            New York, New York 10020
                                            Telephone:  (212) 610-6300
                                            Facsimile:  (212) 610-6399

                                            Attorneys for HSBC Bank Plc


Dated:  May 1, 2009
         New York, New York

                                            /s/ Lori R. Fife
                                            Lori R. Fife

                                            WEIL, GOTSHAL & MANGES LLP
                                            767 Fifth Avenue
                                            New York, New York 10153
                                            Telephone: (212) 310-8000
                                            Facsimile:  (212) 310-8007

                                            Attorneys for Debtors
                                            and Debtors in Possession


So Ordered this ___ day of May 2009 in New York


_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

**(Deed)**

THIS DEED is made on _09 September 2008_

BETWEEN

1.    LEHMAN BROTHERS HOLDINGS INC UK BRANCH OF 25 BANK STREET, LONDON E14 5LE WITH BRANCH NUMBER BR005486 ("you"); AND

2.    HSBC BANK PLC ("the Bank").

**Regarding:**

You, Lehman Brothers Holdings Inc UK branch of 25 Bank Street, London E14 5LE with Branch Number BR005486

Lehman Brothers International (Europe) of 25 Bank Street, London E14 5LE with Company Number 2538254; and

Lehman Brothers Limited of 25 Bank Street, London E14 5LE with Company Number 846922

(each a  **"Customer"**)

**Meaning of certain words and phrases**

1.    (a)    **"Account"** means the account(s) listed in Schedule 1, including any renewal, substitution or redesignation of the account(s);

(b)    **"Affiliate"** means, in relation to any person, a Subsidiary of that person or a Holding Company of that person or any other Subsidiary of that Holding Company.

(c)    **"Business Day"** means a day (other than a Saturday or Sunday) on which banks are open for general business in London;

(d)    **"Customer"** means each person named above and, if appropriate, the person(s) described in clause 2 below;

(e)    **"Deposit"** means all your present and future rights to, and interest in, all of the amounts from time to time credited to the Account less that which is, with the Bank's agreement, debited to the Account. This includes all interest and other benefits arising in connection with those amounts unless the Bank otherwise agrees in writing;

(f)    **"Debt"** means:

(1)    all money and liabilities whatever, whenever and however incurred, whether with or without your knowledge or consent and whether now or in the future due or becoming due from a Customer to the Bank in connection with:

(a)    any overdraft or debit balance from time to time arising on any account specified in Schedule 2 and any other account of a Customer which you and the Bank shall from time to time

- 1 -

agree in writing shall be secured by the terms of this Deed (each a "**Customer Account**");

(b)     any payment or other transaction that a Customer instructs the Bank to make on a Customer Account, and/or any amount or liability which the Bank is authorised or otherwise entitled to debit to a Customer Account; and/or

(c)     (to the extent not included within (a) and/or (b) above) the Customers' sterling clearing and settlement arrangements with the Bank including, without limitation, the Bank acting as settlement bank for a Customer in CREST (being the settlement system owned and operated by Euroclear United Kingdom and Ireland Limited);

(2)     any amount due under the indemnity in clause 16 below; and

(3)     the money agreed to be paid by you under clause 21 below.

The Debt does not include any money and liabilities arising under a regulated consumer credit agreement falling within Part V of the Consumer Credit Act 1974, unless agreed between a Customer and the Bank.

(g)     "**Holding Company**" means, in relation to a company or corporation, any other company or corporation in respect of which it is a Subsidiary.

(h)     "**Subsidiary**" means a subsidiary within the meaning of section 736 of the Companies Act 1985.

**The Customer**

2.     (a)     If there is more than one person named as the Customer, the Deposit will secure the Debt of them jointly and each of them individually and of all or any of them with any other person.

(b)     If the Customer comprises a partnership or trustees of a trust (and if described as trustees of a trust), the Customer includes all persons who from time to time are partners in that partnership or from time to time trustees of that trust, even though there may be:

(1)     any change in the constitution or name of that partnership or trust;

(2)     any amalgamation with any other person; or

(3)     any death, retirement or addition to any of the partners or trustees.

**The main subject matter of this Deed**

3.     You agree, as a separate liability, to pay to the Bank in full and on demand any amount of the Debt which has not been paid or discharged. The Bank will not enforce this claim except as provided in clause 4 below.

4.      The Bank may:

    (a)    set-off the Deposit (or any part of it), or transfer (including a transfer to a specific account in the Bank's name) the Deposit (or any part of it) in payment of the Debt (or any part of it, including any part which is a contingent liability), regardless of whether it is due for payment;

    (b)    combine any Account with any other Customer Account in debit ; and

    (c)    for the purposes of this Deed, value the Debt (or any part of it) which is a contingent liability as the Bank may determine exercising its commercial judgement in good faith,

provided that the Bank shall immediately thereafter notify you of the exercise by it of any of its rights under this clause and provided further that, for the avoidance of any doubt, the Bank may, pursuant to clauses 19 and 20 hereof, perform such currency conversions as it may require to effect any set-off or combination as contemplated above.

**Maintenance of the Deposit**

5.      (a) You agree that from the date of this Agreement that you will maintain a Deposit in the Account in an amount that shall not be less than the Bank in good faith estimates is required to cover the aggregate daylight exposure that the Bank has to the Customers under sub-paragraphs (a) to (c) of the definition of "Debt" from time to time. The Bank shall notify you promptly upon request of the amount of such exposure and the basis on which such exposure has been calculated.

(b)     You may withdraw amounts from the Deposit, subject to the Bank's prior agreement, provided that either (i) the amount remaining in the Deposit after such withdrawal satisfies the requirements of paragraph (a) above or (ii) such withdrawal is made in accordance with paragraph 6(a) below.

(c)     The Bank has no duty to account to you in respect of the Deposit (or any part of it) and you cannot withdraw, charge or transfer the Deposit (or any part of it) until it becomes available in accordance with paragraph (b) above or clause 6 below.

**Availability of the Deposit to you**

6.      (a)     The Deposit will become available to you (but if deposited for a fixed period, only subject to the terms of that fixed deposit) on the first date on which the Bank is satisfied that there is no outstanding Debt and the Bank is not obliged (actually or contingently) to do anything which would cause any Debt to arise at a later date.

    (b)     If the Deposit (or any part of it) becomes available to you under clause 6(a) above, the Bank may exercise any other rights which the Bank may have against the Deposit (or that part of it) which may include statutory and other legal rights of set-off, combination and transfer.

**Deposit held for a fixed period**

7.   Any agreement that the Deposit (or any part of it) is to be held on deposit for a fixed period:

    (a)    will only be effective for the purposes of calculating and paying interest;

    (b)    will not affect any of the Bank's rights under this Deed; and

    (c)    will not stop the Bank from taking action under this Deed during the fixed period.

8.   When exercising its rights under this Deed, the Bank can end any fixed deposit period and adjust any interest payable by the Bank accordingly.

9.   When a fixed deposit period ends, the Bank will, until the Deposit becomes available in accordance with clause 6 above, continue to hold that amount on the agreed terms or, if there is no agreement, on the terms that the Bank reasonably considers appropriate.

**Additional security and independence**

10.   The Bank may, at its discretion, whenever it wants, without your consent or notice to you, and without otherwise affecting its rights under this Deed:

    (a)    give any loan, credit, financial accommodation or other facility (the "**Facilities**") to a Customer (whether alone or with any other person) as may from time to time be agreed between the Bank and that Customer;

    (b)    extend, increase, review, determine or otherwise vary the Facilities;

    (c)    make any arrangement in respect of the Debt (or any part of it), or any security for it, with you (or if there is more than one of you, any of you), or a Customer (whether by way of giving time or other indulgence, variation, exchange, release, discharge, modification, refraining from perfection or enforcement or otherwise);

    (d)    do, or omit to do, anything which might otherwise discharge or reduce the Bank's rights under this Deed; and

    (e)    enter into arrangements with your Affiliates to secure the Debt (or any part of it) in ways other than those described in this Deed.

11.   The Bank's rights under this Deed will not be discharged or otherwise affected by:

    (a)    any invalidity or unenforceability of, or irregularity or defect in, any other security for the Debt (whether by way of mortgage, guarantee or otherwise) which the Bank may hold now, or at any time in the future; or

    (b)    any incapacity, loss of capacity, bankruptcy or liquidation of a Customer or you, or if there is more than one of you, any of you; or

    (c)    all or any of the Debt becoming irrecoverable from a Customer.

12.   If the Bank reasonably requires, it may decline to release you from your obligations under this Deed unless it is satisfied that any payment of the Debt will not be avoided whether as a preference or otherwise.  If any payment is so avoided, the Bank shall be entitled to recover under this Deed as if no such payment had been made.

13.   The Bank's rights in relation to any other security for the Debt (or any part of it) are not affected by the Bank's rights under this Deed, nor vice versa.  The Bank's rights under this Deed, and clause 4 above in particular, are in addition to, and independent of, any other security which the Bank may hold at any time for the Debt and any lien or other rights the Bank may have to set-off, combine or consolidate any of your accounts.  The Bank may enforce its rights under this Deed without first having recourse to any other security or taking steps or proceedings against a Customer.

14.   No prior security held by the Bank over the Deposit shall merge with the Bank's rights under this Deed.

15.   Unless the Debt has been paid or discharged in full:

   (a)   you will not benefit (by subrogation or otherwise) from any rights the Bank may have, or any security (whether by way of mortgage, guarantee or otherwise) the Bank may hold, for the Debt;

   (b)   without the Bank's written consent, you will not exercise or enforce (or seek to) any rights which you may have against a Customer, or any other person, which arise by reason of payment of the Debt;

   (c)   any money or asset which you receive by reason of the rights mentioned above will be held by you on trust to be applied as if the money or asset were received by the Bank under this Deed;

   (d)   you hold any security given to you (now or in the future) for entering into this Deed on trust for the Bank and will immediately deposit, transfer or assign it as the Bank reasonably requires; and

   (e)   you waive any right of set-off you may have now, or at any time in the future, in respect of the Debt.

16.   You agree, as a separate obligation, to indemnify the Bank within 5 Business Days of demand against all loss (other than consequential loss, or special or punitive damages) occasioned by, or arising from, any legal limitation, disability or want of capacity or authority of, or affecting, a Customer or any person acting or purporting to act on behalf of a Customer regarding the Debt.  The Bank will not enforce this indemnity except as provided in clause 4 of this Deed.

**Duration of this Deed**

17.   This Deed remains continuing security against you, and if there is more than one of you, each of you, and if you are an individual, your personal representative, until it is released by the Bank in writing.

**Interest**

18. Interest accruing on the Deposit (or any part of it) will be paid at prevailing commercial rates in its usual course of business and added to the Deposit unless the Bank otherwise agrees in writing.

**Currency conversion**

19. The Bank may convert any money received under this Deed from the currency in which it is received into any other currency if such currency is required to match the currency in which all or part of the Debt is denominated. Any conversion will be effected at the Bank's then prevailing spot selling rate of exchange in its usual course of business.

20. The Bank is entitled to deduct the costs, charges and expenses that it would normally incur in its usual course of business from any amount that it converts into another currency in respect of any conversion performed in accordance with clause 19 above.

**Costs and expenses**

21. (a) You must pay all costs, charges and expenses (including any relevant taxes and legal fees) incurred by the Bank (acting reasonably) in connection with or incidental to the execution, implementation or enforcement of this Deed, irrespective of whether the same may be recoverable from a Customer within 5 Business Days of written demand.

    (b) If you fail to pay any amount payable in accordance with paragraph (a) above interest shall accrue on the unpaid amount from the due date up until the date of actual payment at an annual rate of 3% above the Bank's base rate from time to time computed and compounded monthly and/or according to the Bank's then current practice and shall be payable on demand.

**Non-Assignment**

22. You may not assign, transfer or grant any rights in relation to, or purport to assign, transfer or grant any rights in relation to, any part of the Deposit, the Debt or any right or obligation under this Deed (other than to the Bank) unless the Bank otherwise agrees in writing. The Bank shall not assign, transfer or grant any rights in relation to, or purport to assign, transfer or grant any rights in relation to, any part of the Deposit, the Debt or any right or obligation under this Deed other than to its affiliates or unless you give your prior written consent (not to be unreasonably withheld or denied).

**Joint and individual responsibilities**

23. If there is more than one of you, your responsibilities under this Deed apply to each of you individually as well as jointly. If this Deed is unenforceable or otherwise ineffective against any one or more of you, none of the rest of you will be released from your responsibilities under this Deed.

**Severance and modification of clauses**

24. If any of the clauses (or part of a clause) of this Deed becomes invalid or unenforceable in any way under any law, the validity of the remaining clauses (or part of a clause) will not in any way be affected or impaired.

- 6 -

25.    If any invalid or unenforceable clause (or part of a clause) would not be invalid or unenforceable if its form or effect were modified in any way, it shall be deemed to have the modified form or effect so long as the Bank consents.

**Interpretation**

26.    (a)        In this Deed:

(i)        the headings are used for guidance only;

(ii)        a reference to a person includes a body corporate;

(iii)        a reference to you and/or a Customer includes a reference to your respective legal personal representatives, successors and transferees;

(iv)        references to the singular include the plural and vice versa; and

(v)        a reference to the Bank includes a reference to its successors and transferees.

(b)        Where the words "the Bank reasonably considers appropriate" or "the Bank reasonably requires" appear in any clause, you agree that it is reasonable for the Bank to consider something appropriate or require something if, in the Bank's reasonable opinion, it will or might assist in:

(i)        preservation of the Bank's rights under this Deed or the Deposit; or

(ii)        the Bank's ability to recover the Debt or any sums owed to the Bank under this Deed.

**Governing Law**

27.    This Deed is governed by and shall be construed in accordance with English law.

## SCHEDULE 1

**Account**

The following accounts specified below:

Sort code: 400515

Account numbers:

67850086  denominated in United States Dollars ("USD")

67850196 denominated in Pounds Sterling ("GBP")

67850204 denominated in Euros ("EUR")


In the name of Lehman Brothers Holdings Inc,

**SCHEDULE 2**

**Customer Accounts:**

| | | | | |
|---|---|---|---|---|
| **LEHMAN BROTHERS HOLDINGS INC** | | | | |
| 11302550 | 604-175588-001 | GBP | 57401113 | LEHMAN BROS HOLDINGS INC |
| **LEHMAN BROTHERS INTERNATIONAL (EUROPE)** | | | | |
| 10135723 | 604-212647-001 | GBP | 57439733 | LB INTL (EUROPE ) LDN - GBP CGO/CREST A/C |
| 10135723 | 604-212647-131 | EUR | 57439741 | LB INTL (EUROPE) LDN - EUR CREST A/C |
| 10135723 | 604-212647-130 | USD | 57439768 | LB INTL (EUROPE) LDN - USD CREST A/C |
| 10135723 | 604-212647-002 | GBP | 57439776 | LB INTL (EUROPE) LDN GBP CREST A/C |
| 10135723 | 604-212647-003 | GBP | 57452827 | LB INTL (EUR) LDN - PCS CHEQUE CLEARANCE A/C |
| 10135723 | 604-212647-004 | GBP | 57452835 | LB INTL (EUR) LDN - SEGREGATED CLIENT CASH A/C |
| 10135723 | 604-212647-134 | USD | 58058319 | LBPB USD CASH A/C |
| 10135723 | 604-212647-133 | EUR | 58058327 | LBPB EUR CASH A/C |
| 10135723 | 604-212647-005 | GBP | 58342145 | LBPB GBP CASH A/C |
| 10135723 | 604-212647-132 | USD | 58362064 | LB INTL USD CREST A/C |
| 10135723 | 604-212647-006 | GBP | 67027782 | LB INTL (EUR) LDN |
| **LEHMAN BROTHERS LIMITED** | | | | |
| 11330139 | 605-425933-506 | GBP | 35581795 | LEHMAN BROTHERS LIMITED |
| | 604-050088-371 | USD | 59418902 | LEHMAN BROTHERS LIMITED |
| | 604-050088-372 | EUR | 59418910 | LEHMAN BROTHERS LIMITED |
| 20527977 | 636-098931-131 | USD | 59652004 | LB 1 LTD |
| 20527977 | 636-098931-130 | EUR | 59652012 | LB 1 LTD |
| 20522223 | 636-098188-371 | USD | 59651794 | LB 2 LTD |
| 20522223 | 636-098188-130 | EUR | 59652020 | LB 2 LTD |

Executed as a Deed and Delivered by
Lehman Brothers Holdings Inc UK branch

Acting by:

Name: Thos G-Rees.

Name: Craig Guddcard

Authorised Signatories of
Lehman Brothers Holdings Inc UK branch

HSBC Bank plc

By:

CHRISTOPHER ALLAN BROUGHTON