## Exhibit "A"

**(Settlement Agreement)**

IN RE Lehman Brothers Holdings Inc. Retirement Plan, Pension Benefit Guaranty Corporation v. The Employee Benefit Plans Committee of Lehman Brothers Holdings, Inc., as Plan Administrator of the Lehman Brothers Holdings Inc. Retirement Plan, No. 08 CIV 10792 (SDNY)).

## SETTLEMENT AGREEMENT

This Settlement Agreement (the **"Agreement"**) is made this _____ day of May, 2009, by and among Lehman Brothers Holdings Inc. (**"LBHI"**), the Employee Benefit Plans Committee of LBHI (**"Committee"**), Neuberger Berman Holdings LLC (**"NBH"**) and Pension Benefit Guaranty Corporation (**"PBGC"** ) (LBHI, the Committee, NBH and PBGC each shall be referred to herein individually as a **"Party"** and collectively as the **"Parties"** ), and is subject to and shall be effective only upon a Final Judgment (as defined below) of the United States Bankruptcy Court for the Southern District of New York (**"Bankruptcy Court"**) approving this Agreement.

WHEREAS, PBGC has provided to the Committee a notice of determination that PBGC had determined under section 4042(a)(2) and (4) of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. § 1342(a)(2) and (4), that the Lehman Brothers Holdings Inc. Retirement Plan ("Plan") will be unable to pay benefits when due and that the possible long-run loss of the PBGC with respect to the Plan may reasonably be expected to increase unreasonably if the Plan is not terminated; and PBGC has further determined, under ERISA § 4042(c), 29 U.S.C. § 1342(c), that the Plan must be terminated in order to protect the interests of the participants and to avoid any unreasonable increase in the liability of the PBGC insurance fund;

WHEREAS, PBGC has filed an action (the **"Action"**) against the Committee in the United States District Court for the Southern District of New York (the **"District Court"**) under 29 U.S.C. § 1342(c) seeking termination of the Plan with a termination date of December 12, 2008 (the **"Termination Date"**), and the Committee has objected to the termination of the Plan;

WHEREAS, PBGC has asserted claims against LBHI and each member of its "controlled group" within the meaning of Section 4001(a)(14) of ERISA (including LBHI, the **"LBHI Controlled Group"**), jointly and severally, for: (i) unfunded benefit liabilities under sections 4001(a)(18) and 4062(a) and (b) of ERISA, contingent on termination of the Plan, and (ii) premiums and interest and penalties thereon, in an unliquidated amount, with respect to the Plan under Sections 4006 and 4007 of ERISA;

WHEREAS, LBHI, on behalf of itself and the LBHI Controlled Group, including NBH, and its direct or indirect subsidiaries, which are not debtors under the Bankruptcy Code, has reserved all rights, objections and challenges to such claims;

WHEREAS, the Committee is the plan administrator of the Plan and is named as fiduciary of the Plan and joins in this Agreement to consent thereto to the extent such consent is required; *provided, however*, that all Parties acknowledge that such fiduciary is not the sponsor of the Plan;

WHEREAS, commencing on September 15, 2008 and from time to time thereafter, LBHI and certain of its direct and indirect subsidiaries (collectively, the **"Debtors"**) commenced voluntary cases under chapter 11 of title 11 of the United States Code (the **"Bankruptcy Code"**) in the Bankruptcy Court, Case Number 08-13555 (JMP) (jointly administered) (the **"Chapter 11 Cases"**);

WHEREAS, NBH and PBGC have entered into an Adequate Protection Agreement (**"Adequate Protection Agreement"**) and Pledge Agreement, each dated March 23, 2009, to provide for certain obligations of the LBHI Controlled Group in the event of a termination of the Plan as of the Termination Date; and

WHEREAS, the Parties have reached a settlement and compromise with respect to the termination of and various other disputes regarding the Plan on the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the above recitals and for other good and valuable consideration, the receipt and adequacy of which are hereby mutually acknowledged, and intending to be legally bound hereby, the Parties do hereby agree as follows.

**1.** *Approval of the Bankruptcy Court.* The Parties will submit this Agreement for approval of the Bankruptcy Court. This Agreement is subject to and shall be conditioned upon and shall not become effective until the date of a "Final Judgment" (as defined below) of the Bankruptcy Court approving it. If there is a Final Judgment of the Bankruptcy Court denying approval of this Agreement, or if the Committee fails for any reason to sign the Trusteeship Agreement by the later of June 30, 2009, or the third day after a Final Judgment of the Bankruptcy Court approving this Agreement, PBGC may move to reactivate the Action. For purposes of this Agreement, **"Final Judgment"** means a judgment or order of a court of competent jurisdiction as to which the time to file an appeal, a motion for rehearing or reconsideration or a petition for writ of certiorari has expired and no such appeal, motion or petition is pending.

**2.** *Action.* The Action shall be stayed pending a Final Judgment approving this Agreement, but if such Final Judgment has not been received by July 31, 2009, or if there is a Final Judgment denying approval of this Agreement, PBGC may, in its sole discretion, move to reactivate the Action.

**3.** *Trusteeship Agreement.* If there is a Final Judgment of the Bankruptcy Court approving this Agreement, PBGC and the Committee, solely in its capacity as the plan administrator of the Plan, shall enter into, not later than three (3) days after the date of

such Final Judgment, a trusteeship agreement pursuant to which the Plan shall be
terminated, PBGC shall be appointed as the Plan's statutory trustee and December 12,
2008 shall be set as the date of termination of the Plan (**"Trusteeship Agreement"**).  The
Trusteeship Agreement shall be effective, pursuant to its terms, on the date PBGC and the
Committee have entered into such agreement (**"Effective Date"**).  The Trusteeship
Agreement shall be in a form attached hereto.

4.    *Settlement Amount.*    An aggregate payment to PBGC in cash totaling
$127,600,000 (**"Settlement Amount"**), plus interest as described below, is in full
settlement and release of all claims, demands and actions, whether known or unknown, of
PBGC against the LBHI Controlled Group arising from or relating to the Plan, including,
without limitation, all claims of PBGC against the LBHI Controlled Group for unfunded
benefit liabilities relating to the Plan pursuant to Section 4062(a) of ERISA, all claims of
PBGC against the LBHI Controlled Group for premiums pursuant to Section 4006(a)(7)
of ERISA by reason of the termination of the Plan, and all claims of PBGC relating to the
Plan against the LBHI Controlled Group in the Chapter 11 Cases and any other
reorganization, restructuring, administrative, insolvency proceeding, or similar
proceeding by or against any member of the LBHI Controlled Group; provided, however,
that claims for fiduciary breach against any non-debtor members of the LBHI Controlled
Group shall not be released.  PBGC shall be entitled to interest, in accordance with
Section 4062(b)(1)(A) of ERISA, from the Termination Date until the respective date(s)
of payment, on the unpaid balance from time to time of $115,200,000 of the Settlement
Amount.  Any payments of the Settlement Amount shall be applied first to the portion of
the Settlement Amount on which interest does not accrue, second to accrued interest and
finally to the portion of the Settlement Amount on which interest accrues.  The Parties
agree that the applicable annual interest rate, in accordance with section 4062(b)(1)(A) of
ERISA, will be determined in accordance with 26 U.S.C. § 6601(a) and, to date, are as
follows:  last calendar quarter of 2008 (6.0%), first calendar quarter of 2009 (5.0%) and
second calendar quarter of 2009 (4.0%).

5.    *Withdrawal of Claims.*    On the later of (i) the payment in full of the Settlement
Amount, plus accrued interest in accordance with this Agreement, and (ii) the Effective
Date of the Trusteeship Agreement, PBGC will 1) withdraw all filed claims in the
Chapter 11 Cases and agrees not to file any claims regarding the Plan in any of the
Chapter 11 Cases or, excepting any claim for fiduciary breach against non-debtor
members of the LBHI Controlled Group, in a case that may be commenced in the future
under the Bankruptcy Code or any other reorganization, restructuring, administrative,
insolvency proceeding, or similar proceeding by or against any member of the LBHI
Controlled Group; and 2) dismiss the Action with prejudice.

6.    *Escrow.*  *A*n escrow account has been established in accordance with the
Adequate Protection Agreement (**"Escrow"**), pursuant to an April 29 , 2009 Escrow
Agreement  between NBH, PBGC and Wells Fargo (the "Escrow Agreement"),
containing the Settlement Amount (the **"Escrow Deposit"**).

7.     *Payment.*     If there is a Final Judgment approving this Agreement, within three
(3) business days of the later of (i) the earlier of the Closing or June 30, 2009, and (ii) the
Effective Date (**"Settlement Amount Payment Date"**), NBH shall instruct, or LBHI
shall cause such other LBHI Controlled Group member with authority to instruct, the
Escrow Agent (as defined in the Escrow Agreement) to release to PBGC from the Escrow
an amount equal to the Settlement Amount, plus accrued interest in accordance with this
Agreement.  In the event the amount held in the Escrow is not sufficient to pay in full
such amount, LBHI shall pay or cause one or more members of the LBHI Controlled
Group to pay the unpaid balance of the Settlement Amount, plus accrued interest in
accordance with this Agreement.  The provisions of this paragraph do not apply if there is
a Final Judgment that this Agreement is not approved, and nothing in this Agreement
shall limit the rights of PBGC with respect to the Escrow and the amounts held
thereunder.

8.     *Additional Signatories to Escrow Agreement.*  LBHI shall cause any of its
subsidiaries that contributes cash to the Escrow to execute and deliver this Agreement
and the Escrow Agreement.

9.     *Liens.*  PBGC agrees that it will not file or seek to file, or perfect or seek to
perfect, any liens or encumbrances regarding the Plan on the assets of any member of the
LBHI Controlled Group as of the Termination Date upon termination of the Plan via a
Trusteeship Agreement, provided that the Escrow is in place. Upon receiving the
Settlement Amount, plus accrued interest in accordance with this Agreement, PBGC shall
promptly take all necessary action to release and, after such release, shall be deemed to
have fully, finally and forever released any liens or purported liens against LBHI and
each member of the LBHI Controlled Group as of the Termination Date.

10.    *Disputes.*

       10.1    No Litigation.  Except as otherwise provided herein or to enforce the
terms of this Agreement, each Party hereto agrees that it shall not commence or proceed
with any litigation regarding the Plan against any other Party or take any action
inconsistent with the terms of the Agreement.

       10.2    Jurisdiction Over Disputes.  All disputes arising between the PBGC, the
Committee and LBHI under this Agreement shall be subject to the jurisdiction of the
Bankruptcy Court, exercising jurisdiction over LBHI and certain of its affiliates in their
pending cases in the Chapter 11 Cases, provided, however, that all other disputes arising
between the Parties, including collection of liability under Title IV of ERISA or under the
Adequate Protection Agreement, Pledge and Escrow, shall be subject to the jurisdiction
of the District Court in the Action.

11.    Miscellaneous.

       11.1    Authority.  Subject to Bankruptcy Court approval in the Chapter 11 Cases,
LBHI and the Committee represents that each has the authority to enter into this

Agreement and to enter into the transactions contemplated thereby. NBH represents that it has the authority to enter into this Agreement and to enter into its transactions contemplated thereby.

11.2    Waiver. Except with respect to the requirement for court approval or judicial determination, each Party may waive in writing the benefit of the applicable other Party s compliance with any particular provision of this Agreement. No waiver by a Party with respect to any breach or default or of any right or remedy and no course of dealing or performance, will be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver is expressed in writing signed by the Party to be bound. Failure of a Party to exercise any right will not be deemed a waiver of such right or rights in the future.

11.3    Non-Severability. Each of the terms of this Agreement are a material and integral part hereof. Should any provision of this Agreement be held unenforceable or contrary to law, the entire Agreement shall be deemed null and void.

11.4    Notices. Any notice required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given upon the earlier of receipt or (i) three (3) Business Days after deposit in the United States mail, registered or certified mail, postage prepaid, return receipt requested, (ii) one (1) Business Day after deposit with Federal Express or similar overnight courier, or (iii) same day if delivered by hand, and addressed as provided in Exhibit A attached hereto or such other address as the applicable Party may, from time to time, specify in writing to the other.

11.5    Governing Law. Federal law shall govern the terms of this Agreement, and to the extent applicable and not inconsistent therewith, the law of the State of New York shall apply.

11.6    Entire Agreement. This Agreement, together with the Adequate Protection Agreement, Pledge and the Escrow, constitutes the entire agreement among the Parties, and any additional signatories hereto pursuant to Section 8 with respect to the subject matter hereof and supersedes any prior understandings, agreements or representations by or among the Parties, and such additional signatories, written or oral, to the extent they relate in any way to the subject matter hereof.

11.7    Succession and Assignment. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns. No Party hereto may assign or delegate either this Agreement or any of its rights, interests or obligations hereunder without the prior written approval of the other Parties. Any purported assignment or delegation in violation of this Section 11.7 shall be null and void.

11.8    Amendments. The Parties hereto may amend or modify this Agreement in a writing executed by each Party.

11.9    Counterparts.  This Agreement may be executed in one or more counterparts, each of which together or separately shall constitute an original and when taken together, shall be considered one and the same binding agreement.

11.10    Acceptance of Facsimile Signatures.  Delivery of an executed signature page of this Agreement by facsimile transmission shall be as effective as delivery of a manually executed counterpart hereof.

* * * * * *

(signature pages to follow)

IN WITNESS WHEREOF, the Parties have executed and delivered this Agreement as of May 4, 2009

LEHMAN BROTHERS HOLDINGS INC.

By: _____
Name:
Title:


THE EMPLOYEE BENEFIT PLANS
COMMITTEE OF LEHMAN BROTHERS
HOLDINGS INC.

By: _____
Name:
Title:


NEUBERGER BERMAN HOLDINGS LLC

By its Members:

**Lehman Brothers Holdings Inc.**

By: _____
Name:
Title:


**LIBRO Holdings I Inc.**

By: _____
Name:
Title:


PENSION BENEFIT GUARANTY
CORPORATION

By: _____
Name: Karen L. Morris
Title:    Deputy Chief Counsel

IN WITNESS WHEREOF, the Parties have executed and delivered this Agreement as of
May __, 2009

LEHMAN BROTHERS HOLDINGS INC.

By: _____
Name:    *William Fox*
Title:    *Executive V.P.*

THE EMPLOYEE BENEFIT PLANS
COMMITTEE OF LEHMAN BROTHERS
HOLDINGS INC.

By: _____
Name:
Title:

NEUBERGER BERMAN HOLDINGS LLC

By its Members:

**Lehman Brothers Holdings Inc.**

By: _____
Name:    *William Fox*
Title:    *Executive V.P.*

**LIBRO Holdings I Inc.**

By: _____
Name:    *William Fox*
Title:

PENSION BENEFIT GUARANTY
CORPORATION

By: _____
Name:
Title:

IN WITNESS WHEREOF, the Parties have executed and delivered this Agreement as of
May ___, 2009

LEHMAN BROTHERS HOLDINGS INC.

By: _____
Name:
Title:

THE EMPLOYEE BENEFIT PLANS
COMMITTEE OF LEHMAN BROTHERS
HOLDINGS INC.

By: _____
Name: WENDY M. UVINO
Title: CHAIRPERSON

NEUBERGER BERMAN HOLDINGS LLC

By its Members:

**Lehman Brothers Holdings Inc.**

By: _____
Name:
Title:

**LIBRO Holdings I Inc.**

By: _____
Name:
Title:

PENSION BENEFIT GUARANTY
CORPORATION

By: _____
Name:
Title:

## Exhibit "B"

**(Agreed Order)**

IN RE:

LEHMAN BROTHERS HOLDINGS, INC.

RETIREMENT PLAN

Civil Action No. 08 CIV 10792 (HB)

PENSION BENEFIT GUARANTY

CORPORATION,                                      **ORDER**

        Plaintiff,

v.

THE EMPLOYEE BENEFIT PLANS COMMITTEE
OF LEHMAN BROTHERS HOLDINGS, INC., as
administrator of the Lehman Brothers Holdings, Inc.
Retirement Plan

        Defendant.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

## Hon. Harold Baer, Jr., District Judge:

WHEREAS, the Pension Benefit Guaranty Corporation ("PBGC") has determined that the Lehman Brothers Holdings, Inc. Retirement Plan (the "Plan") will be unable to pay benefits when due and the possible long run loss to the PBGC may reasonably be expected to increase unreasonably if the Plan is not terminated pursuant to 29 U.S.C. § 1342(a); and

WHEREAS, in accordance with the determinations of the PBGC, it has filed an action under 29 U.S.C. § 1342(c) seeking termination of the Plan and has sought expedited treatment on the basis that the assets of the Plan sponsor and members of its controlled group are being dissipated through the chapter 11 cases of Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors and debtors in possession under the Bankruptcy Code; and

WHEREAS, the Court entered a Show Cause Order (the "Show Cause Order") providing for a hearing on December 30, 2008, to show cause why the Plan should not be terminated; and

WHEREAS, the Employee Benefit Plans Committee of Lehman Brothers Holdings, Inc. (the "Benefits Committee") LBHI has requested an extension of the Show Cause Order to pursue alternatives to the termination of the Plan by the PBGC and the Court expects that such efforts

1

WHEREAS, (i) the Official Committee of Unsecured Creditors of Lehman Brothers Holdings, Inc. and its affiliated debtors in possession (the "Creditors' Committee") joined in the Benefits Committee's opposition to the Show Cause Order; (ii) the PBGC filed a motion to strike the Committee's joinder (the "Motion to Strike"); and (iii) the Creditors Committee desires to file a motion to intervene in this action (the "Intervention Motion"); and

WHEREAS, PBGC, the Benefits Committee, LBHI and the Creditors' Committee are amenable to extend the date of the Show Cause Order and Motion to Strike hearing and set a hearing date for the Intervention Motion subject to the protections in favor of the PBGC set out below; **IT IS HEREBY ORDERED THAT:**

1.       A hearing on the Order To Show Cause, the Motion to Strike, the Intervention Motion and any motion for summary judgment is hereby adjourned to January 27, 2009, at 2:00 p.m. ("Adjourned Hearing Date"). While it may be that no further reception of evidence is required and the Court may fail to grant PBGC's motion only if PBGC is found to have acted in an arbitrary and capricious manner, the underlying theme of the Federal Rules of Civil Procedure is to resolve matters on their merits and therefore I will entertain an hour of testimony, if the parties feel it necessary, from each side, all to be accomplished on the Adjourned Hearing Date.

2.       LBHI shall cause each corporation, limited liability company or other entity which is a member of its controlled group (as determined pursuant to section 414(b) or (c) of the Internal Revenue Code of 1986, as amended ("IRC")) or would be a member of such controlled group but for the argument that it is not a "trade or business," as of December 12, 2008, other than Excluded Subsidiaries (as defined below) (including LBHI, the "Lehman Controlled Group"), not to consummate on or prior to February 3, 2009, which is the fifth business day after the Adjourned Hearing Date, or until further order of this Court, whichever is earlier ("Expiration Date"), the sale or other transfer of any equity interest in any member of the Lehman Controlled Group, including, but not limited to, each Acquired Subsidiary (as defined in the Unit Purchase Agreement dated December 1, 2008, between LBHI and NBSH Acquisition, LLC, a Delaware limited liability company ("Unit Purchase Agreement")) which would result in such member being excluded from LBHI's controlled group after such sale or transfer. For purposes of this paragraph, "Excluded Subsidiaries" means (i) any direct or indirect subsidiary of Lehman Brothers Inc., (ii) Banque Lehman Brothers S.A., Lehman Brothers Conseil SA,

2

receivership, administration or similar proceedings under non-United States laws and all subsidiaries thereof.

    3.    LBHI shall not merge or otherwise consolidate on or prior to the

Expiration Date, any member of the Lehman Controlled Group with any other member of the Lehman Controlled Group or other person which would result after such merger or consolidation in a reduction in the number of the members of LBHI's controlled group.

    4.    LBHI shall clarify, to PBGC's satisfaction, in any bankruptcy court order with respect to resulting in the sale of LBHI's investment management business pursuant to the Unit Purchase Agreement (as the same may be amended) that such order is not intended to affect in any manner the application or operation of the controlled group rules under section 414(b) or (c) of the IRC to any Acquired Subsidiary (as defined in the Unit Purchase Agreement). LBHI and the PBGC hereby acknowledge that such bankruptcy court order has been clarified and entered into to the PBGC's satisfaction.

    5.    The Acquired Subsidiaries and General Partner Entities (as defined below) shall not, and LBHI shall not cause any of the Acquired Subsidiaries or General Partner Entities to, commence a proceeding under the U.S. Bankruptcy Code or similar laws of any state on or prior to the Expiration Date. For purposes of this paragraph, "General Partner Entities" means the following entities:

> Lehman Brothers Private Funds Investment Company GP, LLC
> Lehman Brothers Secondary Opportunities Associates LP
> Lehman Brothers Secondary Opportunities Associates II LP
> LB I Group Inc. (US)
> Lehman Brothers Loan Opportunity Associates L.P. (US)
> Lehman Brothers Co-Investment Associates Cayman LP (Cayman)
> Lehman Brothers Co-Investment Associates LP (US)
> Lehman Brothers Cayman GP, Ltd. (Cayman)
> Crossroads Series XVII Master Holding Fund 1GP, LLC
> Crossroads Series XVII Master Holding Fund 2GP, LLC
> Crossroads Series XVII Master Holding Fund 3GP, LLC
> Crossroads Series XVII Master Holding Fund #GP, LLC
> Lehman Crossroads Capital Partners II GP, L.P.
> Lehman Brothers Emerging Manager GP, L.P.
> Lehman Brothers Private Fund Management, LP

    6.    The assets of any member of the Lehman Controlled Group as of

December 12, 2008 (other than any direct or indirect subsidiary of Lehman Brothers Inc. or any entity under insolvency, receivership, administration or similar proceedings under non-United

States laws and all subsidiaries thereof during the period beginning on
the date hereof and ending on the Expiration Date to another member of the Lehman Controlled
Group that is a debtor in a proceeding under the Bankruptcy Code or any insolvency,
receivership, administration or similar laws.

7.     This Order shall also be noticed in the bankruptcy court having
jurisdiction in LBHI's proceeding under the Bankruptcy Code with a motion to enter an order by
the Bankruptcy Court approving the relief provided for in this Order. If this Order is not entered
in that proceeding, PBGC shall have the right to request that the hearing on the Show Cause
Order be rescheduled to the earliest date on which the Court can schedule such hearing and
LBHI shall not oppose the scheduling of such hearing.

8.     In terms of further briefing, (i) the Creditors' Committee shall serve and
file the Intervention Motion and any response to the Motion to Strike on or before January 7,
2009; (ii) the Benefits Committee shall serve and file any surrreply to the PBGC's reply to the
Show Cause Order on or before January 7, 2009; (iii) the PBGC shall serve and file any
opposition to the Intervention Motion on or before January 15, 2009, at 11:00 a.m.; and (iv) the
Creditors' Committee shall serve any reply with respect to the Intervention Motion on or before
January 22, at 9:00 a.m. None of these papers shall be more than five (5) pages in length and
may, if preferred, be in letter form.

9.     In addition, the parties may submit motions for summary judgment no
later than January 13, 2009, any papers in opposition may be submitted no later than January 20,
2009, and any reply papers no later than January 26, 2009. Defendant shall file an answer to the
Complaint no later than January 12, 2009.

10.     Should any portion of this Order not be carried out for any reason, this
Court will enter upon PBGC's request a hearing date as soon as practicable with respect to the
Order to Show Cause.

11.     This Order is entered without prejudice to the claims or defenses of any
party.

**SO ORDERED.**
January ⸝ , 2008
New York, New York

U.S.D.J.

4

**<u>Exhibit "C"</u>**

**(Adequate Protection Agreement)**

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br><br>LEHMAN BROTHERS HOLDINGS, INC.<br><br>RETIREMENT PLAN<br><br><br>PENSION BENEFIT GUARANTY<br><br>CORPORATION,<br><br>          Plaintiff,<br><br>   v.<br><br>THE EMPLOYEE BENEFIT PLANS COMMITTEE<br>OF LEHMAN BROTHER HOLDINGS, INC., as<br>administrator of the Lehman Brothers Holdings, Inc.<br>Retirement Plan<br><br>        Defendant. | Civil Action No. 08 CIV 10792 (HB) |

## DECLARATION OF NICHOLAS J. PAPPAS IN SUPPORT OF JOINT MOTION FOR APPROVAL OF ADEQUATE PROTECTION AGREEMENT

**NICHOLAS J. PAPPAS**, being of full age, hereby declares:

1.      I am a member of Weil, Gotshal & Manges LLP, attorneys for Defendant, the Employee Benefit Plans Committee of Lehman Brothers Holdings, Inc. ("Defendant"). I respectfully submit this declaration in support of the parties' Joint Motion for Approval of the Adequate Protection Agreement.

2.      Attached hereto as Exhibit A is a true and correct copy of the Adequate Protection Agreement (along with its attachments), dated March 23, 2009.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on March 23, 2009.

_____

NICHOLAS J. PAPPAS

## ADEQUATE PROTECTION AGREEMENT

THIS ADEQUATE PROTECTION AGREEMENT ("**Agreement**"), is made this March 23, 2009, by and among Neuberger Berman Holdings LLC, a Delaware limited liability company ("**Neuberger**"), the Pension Benefit Guaranty Corporation ("**PBGC**")(Neuberger and the PBGC collectively, the "**Parties**" and individually, a "**Party**") and, solely for purposes of Section 2 below, The Employee Benefit Plans Committee of Lehman Brothers Holdings Inc. ("**Plan Administrator**").

## RECITALS:

A.      Lehman Brothers Holdings Inc. ("**LBHI**") sponsors the Lehman Brothers Holdings Inc. Retirement Plan ("**Lehman Pension Plan**"), which is a defined benefit pension plan subject to insurance coverage by the PBGC pursuant to Title IV of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**").

B.      PBGC commenced an action captioned Pension Benefit Guaranty Corporation v. The Employee Benefit Plans Committee Of Lehman Brothers Holdings, Inc., as plan administrator, Civil Action No. 08 CIV 10792 ("**District Court Proceeding**"), in the United States District Court for the Southern District of New York ("**District Court**"), seeking to terminate the Lehman Pension Plan with a termination date of December 12, 2008.

C.      LBHI and the other members of its controlled group (as determined pursuant to Section 4001(a)(14) of ERISA) as of December 12, 2008 (LBHI and such other members collectively, the "**Lehman Controlled Group**"), including Neuberger, are jointly and severally liable for any unfunded benefit liabilities under 29 U.S.C. § 1362 of the Lehman Pension Plan and certain other obligations in accordance with Title IV of ERISA if the Lehman Pension Plan were terminated as of such date.

D.      Neuberger and the PBGC desire to enter into arrangements to secure the payment of the amount of the unfunded benefit liabilities under 29 U.S.C. § 1362 of the Lehman Pension Plan, as calculated in accordance with the PBGC's actuarial assumptions in the event the Lehman Pension Plan is terminated by the PBGC with a termination date of December 12, 2008, pursuant to the District Court Proceeding or otherwise.

In consideration of the promises and agreements of the Parties and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.      Effective Date. This Agreement shall be effective on the date that the District Court has entered an order in the form attached hereto ("**Effective Date**").

2.      Plan Termination Date. The Parties and Plan Administrator agree that in the event the Lehman Pension Plan is terminated, whether by order in the District

Court Proceeding or by agreement by PBGC and the Plan Administrator, the appropriate termination date of the Lehman Pension Plan is December 12, 2008, and that any agreement terminating the Lehman Pension Plan signed by the PBGC and the Plan Administrator will set this termination date (any such agreement signed with such date, "Trusteeship Agreement"), and that the Parties shall represent that this is the appropriate termination date in the District Court Proceeding and shall not represent that any other termination date is appropriate; provided, however, that the Parties have not agreed in this Agreement that the Lehman Pension Plan shall be terminated and the Lehman Controlled Group reserves its right to object to a termination of the Lehman Pension Plan in the District Court Proceeding.

3.    Pledge Agreement.  The Parties, on the Effective Date, shall execute, enter into and deliver the Pledge Agreement (a copy of which is attached hereto as Exhibit A) with respect to the Collateral (as such term is defined in the Pledge Agreement), as well as the UCC Filing (as defined in the Pledge Agreement) required pursuant to the Pledge Agreement.

4.    Escrow Agreement.  On or before the date of the consummation of the transactions contemplated by the Unit Purchase Agreement, dated as of December 1, 2008, as amended from time to time, between LBHI and NBSH Acquisition, LLC (**"Closing Date"**), the Parties and Wells Fargo Bank, National Association (**"Wells Fargo"**) or, should Wells Fargo not accept appointment as the escrow agent, another institution acceptable to the Parties (**"Escrow Agent"**) shall execute, enter into and deliver the Escrow Agreement (a copy of which is attached hereto as Exhibit B) or, in the event Wells Fargo is not the Escrow Agent, a substantially similar agreement, and Neuberger shall deliver or shall cause one or more members of the Lehman Controlled Group to deliver to the Escrow Agent on the Closing Date cash in an amount equal to the Unfunded Benefit Liabilities (as defined below) and, contingent on the receipt of such amount by the Escrow Agent, the Pledge Agreement shall be terminated and cancelled on the Closing Date.  Notwithstanding the immediately preceding sentence, in the event that the Closing Date has not occurred by May 31, 2009, (i) the Parties shall execute, enter into and deliver the Escrow Agreement and Neuberger shall or shall cause one or more members of the Lehman Controlled Group to deliver to the Escrow Agent cash in an amount equal to the Unfunded Benefit Liabilities (as defined below) within two business days following the later of May 31, 2009, the effective date of a Trusteeship Agreement between the PBGC and the Plan Administrator terminating the Lehman Pension Plan or the date of a Final Judgment (as defined below) of the District Court providing for the termination of the Lehman Pension Plan with a termination date of December 12, 2008, and (ii) contingent on the receipt of such amount by the Escrow Agent, the Pledge Agreement shall be cancelled and terminated.  In the event one or more members of the Lehman Controlled Group other than Neuberger shall deliver the cash in the amount of the Unfunded Benefit Liabilities (as defined below) to the Escrow Agent, such members shall also execute and deliver the Escrow Agreement.

5.    Pension Shortfall.  During the term of this Agreement and subject to Section 6 hereof, the applicable amount of the obligations under this Agreement shall

be the amount of liability arising under Section 4062(a) of ERISA, by reason of a termination of the Lehman Pension Plan with a termination date of December 12, 2008, against the Lehman Controlled Group (**"Unfunded Benefit Liabilities"**) or, in the event of a settlement agreement in effect between LBHI and the PBGC, the aggregate amount of liabilities of the Lehman Controlled Group (including Neuberger) under such agreement (**"Settlement Obligations"**). The Parties acknowledge and agree that, solely for purposes of funding the escrow under the Escrow Agreement, the estimated amount of the Unfunded Benefit Liabilities as of the Effective Date is $150,000,000.00, and that this estimated amount shall be adjusted before and/or after the required deposit into the Escrow upon agreement by the Parties (which shall not be unreasonably withheld) based on corrections in the 2008 census data (including the elimination of unvested benefit liabilities of participants who left employment with the Lehman Controlled Group prior to December 12, 2008).

       6.     <u>Statutory Lien</u>. During the term of this Agreement so long as either the Pledge Agreement or Escrow Agreement is in effect (and, in the case of the Escrow Agreement, the Escrow Agent holds an amount at least equal to the Unfunded Benefit Liabilities), the PBGC shall forbear demanding payment of liability owed under 29 U.S.C. § 1362, so that a lien under Section 4068 of ERISA does not arise against the assets (excluding, as the case may be, its consensual lien in the Collateral under the Pledge Agreement or its rights respecting the Escrow Property (as defined in the Escrow Agreement) under this Agreement and the Escrow Agreement) of and agrees not to assert any claims against any member of the Lehman Controlled Group relating to the unfunded benefit liabilities of the Lehman Pension Plan under 29 U.S.C. § § 1362(b), 1368. This Agreement does not affect the rights and limitations of the PBGC or the Lehman Controlled Group as to any other liens or claims. Nothing in this paragraph shall affect the PBGC's rights under either the Pledge Agreement or the Escrow Agreement.

       7.     <u>Payment to the PBGC If There Is A Settlement Agreement</u>. In the event the Lehman Pension Plan is terminated with a termination date of December 12, 2008, and a settlement agreement pertaining thereto has been executed by LBHI and the PBGC and approved by a Final Judgment (as defined below) of the bankruptcy court exercising jurisdiction over the pending cases under chapter 11 of title 11 of the United States Code in which LBHI and certain of its affiliates are debtors (the **"Bankruptcy Court"**), Neuberger shall or shall cause a member of the Lehman Controlled Group to pay, from the Escrow Property or otherwise if the Escrow Property is insufficient, to the PBGC the Settlement Obligations of the Lehman Controlled Group; provided, however, if the amount of such Settlement Obligations remains uncertain, an initial amount equal to any portion of the Settlement Obligations not included in the Unfunded Benefit Liabilities, plus the greatest amount of the Unfunded Benefit Liabilities as to which the Parties are then in agreement is certain shall be paid to PBGC from the Escrow Property and any remaining balance of the Unfunded Benefit Liabilities shall be paid to the PBGC from the Escrow Property when the amount of the Unfunded Benefit Liabilities is mutually agreed by the Parties or is determined by a Final Judgment (as defined below) of a district court.

8.    Payment of Obligations If There Is No Settlement Agreement.  In
the event the Lehman Pension Plan is terminated with a termination date of December 12,
2008 by a Final Judgment (as defined below) of the District Court or by a Trusteeship
Agreement signed by the PBGC and the Plan Administrator, and a settlement agreement
pertaining thereto between LBHI and the PBGC is not approved by a Final Judgment (as
defined below) of the Bankruptcy Court, within three (3) business days after the later of
April 30, 2009 and the date of such Final Judgment of the District Court, Neuberger shall
or shall cause a member of the Lehman Controlled Group to pay, from the Escrow
Property or otherwise, if the Escrow Property is insufficient, to the PBGC an amount
equal to the Unfunded Benefit Liabilities owed by the Lehman Controlled Group;
provided, however, if the amount of the Unfunded Benefit Liabilities remains uncertain
or is in dispute, an initial amount shall be paid equal to the greatest amount that is not
reasonably in dispute between the Parties and the balance of the Unfunded Benefit
Liabilities shall be paid to the PBGC when the amount of the Unfunded Benefit
Liabilities is mutually agreed by the Parties or is determined by a Final Judgment (as
defined below) of a district court.

9.    For purposes of this Agreement, **"Final Judgment "** means a
judgment or order of a court of competent jurisdiction as to which the time to file an
appeal, a motion for rehearing or reconsideration or a petition for writ of certiorari has
expired and no such appeal, motion or petition is pending.

10.    Agreement Terminates if Lehman Pension Plan is Not Terminated.
This Agreement shall terminate and be cancelled in its entirety on the earliest to occur of:
(i) the date on which the District Court issues a Final Judgment  denying PBGC the relief
it sought in its complaint in the District Court Proceeding, or (ii) immediately upon the
PBGC's withdrawal of the District Court Proceeding, unless the Lehman Pension Plan
has been terminated with a termination date of December 12, 2008.  This Agreement may
be amended only by a written agreement (or exact counterpart thereof) executed and
delivered by all Parties hereto.

11.    If any dispute arises as to whether the Escrow Agent is obligated to
deliver Escrow Property or as to whom the Escrow Property is to be delivered or the
amount thereof, the Escrow Agent shall not act until receipt by the Escrow Agent of joint
instructions in writing, signed by the Parties directing the disposition of the Escrow
Property, or in the absence of such joint authorization, receipt of a certified copy of a
Final Judgment of a district court providing for the disposition of the Escrow Property.

12.    This Agreement shall inure to the benefit of, and be binding upon,
the Parties hereto and their respective successors and assigns.  Nothing in this
Agreement, express or implied, shall give to anyone, other than the Parties hereto and
their respective permitted successors and assigns, any benefit, or any legal or equitable
right, remedy or claim, under or in respect of this Agreement or the escrow contemplated
hereby.

13.    All notices and other communications hereunder shall be in writing
and shall be deemed to have been given when delivered by hand or upon receipt when
mailed by registered or certified mail (return receipt requested), postage prepaid, or sent
by facsimile to the Parties at the following addresses (or at such other address for a party
as shall be specified by like notice):

If to Neuberger, to:

>Lehman Brothers Holdings Inc.
>1271 Avenue of the Americas
>New York, NY 10022-4834
>Attention: Chief Restructuring Officer
>Fax No. (212) 759-5532

with a copy to:

>Weil, Gotshal & Manges LLP
>767 Fifth Avenue
>New York, NY 10153
>Attn: Michael K. Kam
>Fax No. (212) 310-8007

If to the PBGC, to:

>Pension Benefit Guaranty Corporation
>1200 K Street, N.W.
>Washington, D.C. 20005
>Attention: Sara B. Eagle, Esq.
>Fax No.: (202) 326-4112

If to the Plan Administrator, to:

>Lehman Brothers Holdings Inc.
>1271 Avenue of the Americas
>New York, NY 10022-4834
>Attention: Wendy Uvino
>Fax No. (646) 758-1415

14.    Except where superseded by applicable federal law, this
Agreement shall be governed by and construed and enforced in all respects in accordance
with the laws of the State of New York. All actions arising under or relating to this
Agreement shall be brought exclusively in and the Parties hereby submit to the
jurisdiction of the United States District Court for the Southern District of New York.
Service of process on any party hereto in any action arising out of or relating to this

Agreement shall be effective if mailed to such party as set forth in the immediately preceding paragraph.

15.     This Agreement may be executed in two or more separate counterparts, each of which shall be an original and all of which, together, shall constitute one agreement. All persons signing this Agreement on behalf of a Party or the Plan Administrator have the authority to bind the Party or Plan Administrator, as applicable, to the Agreement.

16.     All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine or neuter, singular or plural, as the identity of the parties hereto taken within context may require.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first written above.

**NEUBERGER BERMAN HOLDINGS LLC**

By its Members:

**Lehman Brothers Holdings Inc.**

By: _____
Name: *William Fox*
Title: *Senior Vice President*

**LIBRO Holdings I Inc.**

By: _____
Name: *William Fox*
Title: *Senior Vice President*

**PENSION BENEFIT GUARANTY CORPORATION**

By: _____

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first written above.

**NEUBERGER BERMAN HOLDINGS LLC**

By its Members:

**Lehman Brothers Holdings Inc.**

By: _____
      Name:
      Title:

**LIBRO Holdings I Inc.**

By: _____
      Name:
      Title:

**PENSION BENEFIT GUARANTY CORPORATION**

By: _____

THE EMPLOYEE BENEFIT PLANS
COMMITTEE OF LEHMAN BROTHERS
HOLDINGS INC., solely as **to Section 2 of
this Agreement.**

By:

# PLEDGE AGREEMENT

### dated as of March 23, 2009

among

## NEUBERGER BERMAN HOLDINGS LLC,
### as Grantor

and

## PENSION BENEFIT GUARANTY CORPORATION,
### as Secured Party

# TABLE OF CONTENTS

**Page**

SECTION 1.       DEFINITIONS ................................................................................ 1

1.1    General Definitions ................................................................. 1

1.2    Definitions; Interpretation .................................................... 2

SECTION 2.       GRANT OF SECURITY ................................................................ 3

2.1    Grant of Security ..................................................................... 3

SECTION 3.       SECURITY FOR OBLIGATIONS; GRANTOR REMAINS
LIABLE. ........................................................................................ 3

3.1    Security for Obligations ........................................................ 3

3.2    Continuing Liability Under Collateral ............................... 3

SECTION 4.       REPRESENTATIONS AND WARRANTIES AND
COVENANTS ............................................................................. 4

4.1    Generally .................................................................................. 4

4.2    Reserved ................................................................................... 6

4.3    Reserved ................................................................................... 6

4.4    Investment Related Property ............................................... 6

SECTION 5.       ACCESS; RIGHT OF INSPECTION AND FURTHER
ASSURANCES ........................................................................... 11

5.1    Further Assurances .............................................................. 11

SECTION 6.       SECURED PARTY APPOINTED ATTORNEY-IN-FACT ........... 12

6.1    Power of Attorney ............................................................... 12

6.2    No Duty on the Part of the Secured Party ..................... 13

SECTION 7.       REMEDIES .................................................................................. 13

7.1    Generally ................................................................................ 13

7.2    Application of Proceeds ..................................................... 15

7.3    Sales on Credit ..................................................................... 15

7.4    Investment Related Property ............................................. 15

7.5    Cash Proceeds ...................................................................... 15

7.6    Regulatory Compliance ...................................................... 16

SECTION 8.       FEES AND EXPENSES ............................................................. 16

SECTION 9.       CONTINUING SECURITY INTEREST ..................................... 17

i

## TABLE OF CONTENTS
### (continued)

Page

SECTION 10.    STANDARD OF CARE; SECURED PARTY MAY
PERFORM .......................................................................... 18

SECTION 11.    MISCELLANEOUS ........................................................ 18

SCHEDULE 4.1 —    GENERAL INFORMATION

SCHEDULE 4.4 —    PLEDGED LLC INTERESTS

This **PLEDGE AGREEMENT**, dated as of March 23, 2009 (this
"**Agreement**"), by **NEUBERGER BERMAN HOLDINGS LLC**, a  Delaware limited
liability company ("**Grantor**") in favor of **PENSION BENEFIT GUARANTY
CORPORATION** ("**PBGC**"), as the secured party (the "**Secured Party**").

## RECITALS:

**WHEREAS**, reference is made to that certain Adequate Protection
Agreement, dated as of the date hereof (as it may be amended, restated, supplemented or
otherwise modified from time to time, the "**Letter Agreement**"), between Grantor and
Secured Party;

**WHEREAS**, in consideration of the agreements as set forth in the Letter
Agreement, Grantor has agreed to secure its obligations to the PBGC as set forth herein;
and

**NOW, THEREFORE**, in consideration of the premises and the
agreements, provisions and covenants herein contained, Grantor and the Secured Party
agree as follows:

## SECTION 1.    DEFINITIONS.

1.1    **General Definitions**.  In this Agreement, the following terms shall have
the following meanings:

"**Agreement**" shall have the meaning set forth in the preamble hereto.

"**Collateral**" shall have the meaning assigned in Section 2.1.

"**District Court Proceeding**" shall mean the action filed in the United
States District Court for the Southern District of New York captioned Pension Benefit
Guaranty Corporation v. The Employee Benefit Plans Committee Of Lehman Brothers
Holdings, Inc., as plan administrator, Civil Action No. 08 CIV 10792.

"**Escrow Agreement**" means the escrow agreement among the Grantor,
Secured Party and Wells Fargo Bank, National Association, as escrow agent, as provided
in the Letter Agreement.

"**Event of Default**" shall mean the (i) the termination of the Lehman
Pension Plan with a termination date of December 12, 2008, and (ii) any of the following
events:

(a) Grantor shall fail to pay when due any amount owing under the
Letter Agreement;

(b) there is a Final Order entered by the Bankruptcy Court having
jurisdiction over the bankruptcy proceedings of LBHI approving a settlement agreement

between LBHI and the Secured Party and by such date the Escrow Agent has not received immediately available funds in the amount required under the Escrow Agreement;

(c) the Neuberger Sale has occurred and, on the closing date thereof, the Escrow Agent has not received immediately available funds in the amount required under the Escrow Agreement;

(d) the Neuberger Sale has not occurred by May 31, 2009 and, by such date, the Escrow Agent has not received immediately available funds in the amount required under the Letter Agreement and the Escrow Agreement;

(e) there is a breach of any term, condition or covenant of this Agreement or any other Security Document, other than a breach described in any other provision of this clause 1.1(ii), and such breach continues for five days after notice from the Secured Party;

(f) any representation, warranty, certification or statement made by Grantor in this Agreement or in any other Security Document shall prove to have been incorrect in any material respect when made;

(g) Grantor or any Pledged Entity shall commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or any substantial part of its property, or shall consent to any such relief or to the appointment of or taking possession by any such official in an involuntary case or other proceeding commenced against it, or shall make a general assignment for the benefit of creditors, or shall fail generally to pay its debts as they become due, or shall take any corporate action to authorize any of the foregoing;

(h) an involuntary case or other proceeding shall be commenced against Grantor or any Pledged Entity seeking liquidation, reorganization or other relief with respect to it or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or any substantial part of its property, and such involuntary case or other proceeding shall remain undismissed and unstayed for a period of 30 days; or an order for relief shall be entered against Grantor or any Pledged Entity under the federal bankruptcy laws as now or hereafter in effect;

**"FINRA"** shall mean the Financial Industry Regulatory Authority.

**"Grantor"** shall have the meaning set forth in the preamble hereto.

**"Investment Related Property"** shall mean all Pledged LLC Interests.

"**Letter Agreement**" shall have the meaning set forth in the preamble hereto.

"**LBHI**" shall mean Lehman Brothers Holdings Inc., a debtor and debtor-in-possession.

"**Lehman Pension Plan**" shall mean the Lehman Brothers Holdings Inc. Retirement Plan.

"**Lien**" shall mean any mortgage, deed of trust, pledge, hypothecation, assignment, charge, deposit arrangement, encumbrance, lien (statutory or other), security interest or preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever intended to assure payment of any indebtedness or the performance of any other obligation, including any conditional sale or other title retention agreement, the interest of a lessor under a capital lease and any financing lease having substantially the same economic effect as any of the foregoing, and the filing of any financing statement under the UCC or comparable law of any jurisdiction naming the owner of the asset to which such Lien relates as debtor.

"**Neuberger Sale**" shall mean the consummation of the transactions contemplated by the Unit Purchase Agreement, dated as of December 1, 2008, as amended from time to time, between LBHI and NBSH Acquisition, LLC.

"**Obligations**" shall mean the amount of liability arising under Section 4062(a) of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), by reason of a termination of the Lehman Pension Plan with a termination date of December 12, 2008, jointly and severally against LBHI and the other members of its controlled group (as defined in Section 4001(a)(14) of.ERISA) or, in the event of a settlement agreement in effect between LBHI and the PBGC respecting such a termination, the aggregate amount of payments required to be made thereunder by LBHI, other members of the Lehman Controlled Group (including Grantor) and/or any of them under such agreement.

"**PBGC**" shall have the meaning set forth in the preamble hereto.

"**Pledged Entities**" shall mean Neuberger Berman Management LLC, Neuberger Berman Asset Management, LLC and Neuberger Berman, LLC.

"**Pledged LLC Interests**" shall mean all of the limited liability company interests owned by Grantor in the Pledged Entities.

"**Proceeds**" shall mean (i) all "proceeds" as defined in Article 9 of the UCC, (ii) payments or distributions made with respect to any Investment Related Property and (iii) whatever is receivable or received when Collateral or proceeds are sold, exchanged, collected or otherwise disposed of, whether such disposition is voluntary or involuntary.

"**Regulatory Authority**" shall mean the government of the United States, Canada or any other nation, or of any political subdivision thereof, whether state, provincial or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity, including FINRA or any SRO, exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government (including any supra-national bodies such as the European Union or the European Central Bank).

"**Requirement of Law**" shall mean, collectively, all international, foreign, federal, state, provincial and local statutes, treaties, rules, guidelines, regulations, ordinances, codes and administrative or judicial precedents or authorities, including the interpretation or administration thereof by any Regulatory Authority charged with the enforcement, interpretation or administration thereof, and all applicable administrative orders, directed duties, requests, licenses, authorizations and permits of, and agreements with, any Regulatory Authority, in each case whether or not having the force of law.

"**Secured Obligations**" shall have the meaning assigned in Section 3.1.

"**Secured Party**" shall have the meaning set forth in the recitals hereto.

"**Securities Act**" shall mean the Securities Act of 1933, as amended.

"**Security Documents**" shall collectively mean this Agreement, the Letter Agreement, the Escrow Agreement, and any other agreements or documents related to any of the foregoing.

"**Self-Regulatory Organization**" has the meaning set forth in Section 3(a)(26) of the Securities Exchange Act of 1934.

"**UCC**" shall mean the Uniform Commercial Code as in effect from time to time in the State of Delaware or, when the context implies, the Uniform Commercial Code as in effect from time to time in any other applicable jurisdiction.

1.2    **Definitions; Interpretation.**  All capitalized terms used herein (including the preamble and recitals hereto) and not otherwise defined herein shall have the meanings ascribed thereto in the Letter Agreement or, if not defined therein, in the UCC. References to "Sections," "Exhibits" and "Schedules" shall be to Sections, Exhibits and Schedules, as the case may be, of this Agreement unless otherwise specifically provided. Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose or be given any substantive effect.  Any of the terms defined herein may, unless the context otherwise requires, be used in the singular or the plural, depending on the reference.  The use herein of the word "include" or "including", when following any general statement, term or matter, shall not be construed to limit such statement, term or matter to the specific items or matters set forth immediately following such word or to similar items or matters, whether or not nonlimiting language (such as "without limitation" or "but not limited to"