# Exhibit "D"

**(Order Approving Adequate Protection Agreement)**



UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

IN RE:

LEHMAN BROTHERS HOLDINGS, INC.

RETIREMENT PLAN

PENSION BENEFIT GUARANTY

CORPORATION,

        Plaintiff,

    v.

THE EMPLOYEE BENEFIT PLANS COMMITTEE
OF LEHMAN BROTHERS HOLDINGS, INC., as
administrator of the Lehman Brothers Holdings, Inc.
Retirement Plan

        Defendant.

Civil Action No. 08 CIV 10792 (HB)

## ORDER APPROVING ADEQUATE PROTECTION AGREEMENT

WHEREAS the Pension Benefit Guaranty Corporation ("PBGC") has determined
that the Lehman Brothers Holdings, Inc. Retirement Plan (the "Plan") will be unable to
pay benefits when due and the possible long run loss to the PBGC may reasonably be
expected to increase unreasonably if the Plan is not terminated pursuant to 29 U.S.C.
§ 1342(a); and

WHEREAS, in accordance with the determination of the PBGC, it has filed an
action under 29 U.S.C. § 1342(c) seeking termination of the Plan and has sought
expedited treatment on the basis that the assets of the Plan sponsor and members of its
controlled group are being dissipated through the chapter 11 cases of Lehman Brothers

Holdings, Inc. ("LBHI") and its affiliated debtors and debtors in possession under the
Bankruptcy Code; and

WHEREAS the Court entered a Show Cause Order (the "Show Cause Order")
providing for a hearing on December 30, 2008, to show cause why the Plan should not be
terminated; and

WHEREAS PBGC and the Employee Benefit Plans Committee of Lehman
Brothers Holdings, Inc., as administrator of the Plan (the "Plan Administrator") agreed to
adjourn that December 30, 2008 hearing from time to time and in connection with that
adjournment, the Court entered a January 5, 2009 Order putting into place certain
protections to protect PBGC from the sale or dissipation of assets in the bankruptcy
cases; and

WHEREAS the parties wish to further adjourn the hearing in order to allow LBHI
and any of its controlled group members, including but not limited to Neuberger Berman
Holdings, LLC ("Neuberger"), to pursue settlement discussions with PBGC; and

WHEREAS the Plan Administrator, along with LBHI and Neuberger, wishes to
change the form of protection provided to PBGC pending the adjourned hearing and
PBGC has agreed to such change in protection; and

WHEREAS the Court has reviewed and considered the Joint Motion for Approval
of the Adequate Protection Agreement dated March 23, 2009, and the terms and
conditions of the Adequate Protection Agreement dated March 23, 2009 (along with its
attachments, the "Adequate Protection Agreement").

On the basis of the foregoing findings and the submissions and proceedings
referenced above, NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED,
AND DECREED:

1.      The Court hereby incorporates by reference into this Order the
terms of the Adequate Protection Agreement, including the attachments.

2.      The Adequate Protection Agreement provides for the jurisdiction
by this Court over all signatories thereto (together with PBGC and the Committee
"Parties" or, individually, "Party"). The Court shall have exclusive jurisdiction and
authority to administer, interpret, and enforce the terms of the Adequate Protection
Agreement, and to consider, rule upon, and issue a final order with respect to suits,
whether judicial, administrative or otherwise, which may be instituted by any Person,
individually or derivatively, with respect to the Adequate Protection Agreement. Each
Party has irrevocably submitted to the exclusive jurisdiction and venue of this Court for
any suit, action, proceeding, case, controversy, or dispute relating to the Adequate
Protection Agreement and/or the negotiation, performance, or breach of the Adequate
Protection Agreement.

3.      The Adequate Protection Agreement, in whole or in part, whether
effective, terminated, or otherwise, or any of its provisions or any negotiations,
statements, or proceedings relating to it shall not be construed as, offered as, received as,
used as, or deemed to be evidence of any kind in any action or proceeding, except to
enforce the Adequate Protection Agreement or this Order by injunctive or other relief.
Without limiting the foregoing, neither the Adequate Protection Agreement nor any
related negotiations, statements, or proceedings shall be construed as, offered as, received
as, used as, or deemed to be evidence, or an admission or concession of liability, of
wrongdoing or breach of any duty on the part of any Party, or as a waiver by any
Defendant of any applicable defense.

4.      The Court's Order dated January 5, 2009 (Document No. 18), as modified
in this Court's Orders dated January 29, 2009 (Document No. 52) and March 16, 2009

(Document No. 54) (collectively, the "Stipulation And Order"), shall be deemed

superseded by this Order and shall be vacated and of no further force or effect upon the

execution and delivery of the Pledge Agreement by the parties.

     5.     This matter is hereby stayed until further order of the Court.

SO ORDERED THIS _____ DAY OF MARCH, 2009.

Hon. Harold Baer, Jr.
United States District Court
Judge

Endorsement:

(1)   While I have signed this agreement it in no way is to suggest that I have a position one way or another with respect thereto.

(2)   As to my jurisdiction it is not writ in stone and may be revisited by further order of the Court.

## Exhibit "E"

**(Trusteeship Agreement)**

## AGREEMENT FOR APPOINTMENT OF
## TRUSTEE AND TERMINATION OF PLAN

This is an AGREEMENT between the Pension Benefit Guaranty Corporation ("PBGC") and the Employee Benefit Plans Committee of Lehman Brothers Holdings Inc.

## RECITALS:

A.    PBGC is a United States government agency established by Title IV of the Employee Retirement Income Security Act of 1974, *as amended*, 29 U.S.C. §§1301-1461 ("ERISA").

B.    Lehman Brothers Holdings Inc. ("Company") is a corporation organized under the laws of Delaware, with its principal place of business located in New York, New York.

C.    Effective January 1, 1977, Shearson Lehman Brothers Holdings Inc. established the Shearson Lehman Brothers Holdings Inc. Retirement Plan ("Plan") to provide retirement benefits for certain of its employees.  The Plan was comprehensively amended and restated as of May 1, 1994, at which time the Plan became known as the Lehman Brothers Holdings Inc. Retirement Plan.

D.    The Plan is an employee pension benefit plan to which 29 U.S.C. § 1321(a) applies and is not exempt under 29 U.S.C. § 1321(b).  The Plan is therefore covered by Title IV of ERISA.

E.    The Employee Benefit Plans Committee of Lehman Brothers Holdings Inc. ("Committee") is the administrator of the Plan within the meaning of 29 U.S.C. §§ 1002(16) and 1301(a)(1).

F.    On December 12, 2008, PBGC caused a notice to be published advising Plan participants of PBGC's determination both to terminate the Plan and to have December 12, 2008, established as the Plan's termination date.

G.    On December 12, 2008, the Company was a contributing sponsor of the Plan within the meaning of 29 U.S.C. § 1301(a)(13).

H.    PBGC has issued to the Committee a Notice of Determination stating, inter alia, that it had determined that: 1) the Plan will be unable to pay benefits when due, pursuant to 29 U.S.C. § 1342(a)(2); 2) the possible long-run loss to PBGC with respect to the Plan may reasonably be expected to increase unreasonably if the Plan is not terminated, pursuant to 29 U.S.C. § 1342(a)(4); and 3) the Plan must be terminated in order to protect the interests of the participants and to avoid any unreasonable increase in the liability of the PBGC insurance fund, pursuant to 29 U.S.C. § 1342(c).

**NOW THEREFORE, the parties agree:**

1.    The Plan is terminated under 29 U.S.C. § 1342(c).

2.    The Plan termination date is December 12, 2008, under 29 U.S.C. § 1348.

3.    PBGC is appointed trustee of the Plan under 29 U.S.C. § 1342(c).

4.    The Committee and any other person having possession or control of any records, assets or other property of the Plan shall convey and deliver to PBGC any such records, assets or property in a timely manner.  PBGC reserves all its rights to pursue such records, assets, and other property by additional means, including but not limited to issuance of administrative subpoenas under 29 U.S.C. § 1303.

5.    PBGC will have, with respect to the Plan, all of the rights and powers of a trustee specified in ERISA or otherwise granted by law.

The persons signing this Agreement are authorized to do so.  The Agreement will take effect on the date the last person signs below.

**Employee Benefit Plans Committee of Lehman Brothers Holdings Inc., as Plan Administrator**

Dated: _____    By: _____
                          Wendy Uvino, Chairperson
                          Employee Benefit Plans Committee

**Pension Benefit Guaranty Corporation**

Dated: _____    By: _____
                          Auditor

Cc:    Michael K. Kam
       Weil, Gotshal & Manges LLP
       767 Fifth Avenue
       New York, NY    10153-0119
       (212) 310-8240

       Bryan Marsal, Chief Restructuring Officer
       c/o Lehman Brothers Holdings Inc.
       1271 Avenue of the Americas, 38th Floor
       New York, NY    10020

## Exhibit "F"

**(Escrow Agreement)**

ESCROW AGREEMENT

This Escrow Agreement dated this 29th day of April_____, 2009 (the "Escrow Agreement"), is entered into by and among Neuberger Berman Holdings LLC, a Delaware limited liability company ("Grantor" or "Neuberger"), Pension Benefit Guaranty Corporation ("PBGC" and together with the Grantor, the "Parties," and individually, a "Party"), and Wells Fargo Bank, National Association, as escrow agent ("Escrow Agent").

RECITALS

A.    The PBGC commenced an action captioned Pension Benefit Guaranty Corporation v. The Employee Benefit Plans Committee of Lehman Brothers Holdings Inc., Civil Action No. 08 CIV 10792 ("District Court Proceeding") in the District Court for the Southern District of New York ("District Court") seeking to terminate the Lehman Brothers Holdings Inc. Retirement Plan ("Lehman Pension Plan") with a termination date of December 12, 2008, pursuant to Section 4042 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). In the event of such termination, Lehman Brothers Holding Inc. ("LBHI") and each other member of its controlled group (as defined in Section 4001(a)(14) of ERISA) as of December 12, 2008 (all members of such controlled group, collectively, the "Lehman Controlled Group"), including Neuberger, would be jointly and severally liable to the PBGC for the amounts due under Section 4062(a) of ERISA by reason of such termination.

B.    Grantor, in substitution and cancellation of that certain Pledge Agreement dated March  , 2009 between Grantor, as grantor, and the PBGC, as the secured party (the "Cancellation"), agrees to place or to cause another member of the Lehman Controlled Group to place in escrow certain funds prior to or concurrent with such Cancellation, and the Escrow Agent agrees to hold and distribute such funds in accordance with the terms of this Escrow Agreement.

In consideration of the promises and agreements of the Parties and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties and the Escrow Agent agree as follows:

ARTICLE 1
ESCROW DEPOSIT

Section 1.1.    Receipt of Escrow Property.  Upon execution hereof and prior to or concurrent with the Cancellation, Grantor shall deliver or cause to be delivered to the Escrow Agent the estimated amount of the Unfunded Benefit Liabilities (as defined below) in cash (the "Escrow Property").  For purposes of this Escrow Agreement, "Unfunded Benefit Liabilities" shall be defined as that term is defined in that certain Adequate Protection Agreement, dated as of March 23, 2009 (as it may be amended, restated, supplemented or otherwise modified from time to time, the "**Letter Agreement**"), between Grantor and PBGC.  The Parties agree, solely for purposes of funding this Escrow Agreement, the estimated Unfunded Benefit Liabilities as of March 23, 2009, total $150,000,000.00, and that such estimated amount shall be the amount

delivered to the Escrow Agent pursuant to this Section 1.1; provided, however, such estimated amount shall be adjusted before or after the required delivery to the Escrow Agent hereunder, upon agreement by the Parties (which shall not be unreasonably withheld), based on corrections in the 2008 Plan census data (including the elimination of unvested benefit liabilities of participants who left employment with the Lehman Controlled Group prior to December 12, 2008).

Section 1.2.    Investments.

(a)    The Escrow Agent is authorized and directed to deposit, transfer, hold and invest the Escrow Property and any investment income thereon as set forth in Exhibit A hereto, or as set forth in any subsequent written instruction signed by the Parties. Any investment earnings and income on the Escrow Property shall not become part of the Escrow Property and shall be disbursed to Grantor, as directed in writing by Grantor.

(b)    The Escrow Agent is hereby authorized and directed to sell or redeem any such investments as it deems necessary to make any payments or distributions required under this Escrow Agreement. The Escrow Agent shall have no responsibility or liability for any loss which may result from any investment or sale of investment made pursuant to this Escrow Agreement. The Escrow Agent is hereby authorized, in making or disposing of any investment permitted by this Escrow Agreement, to deal with itself (in its individual capacity) or with any one or more of its affiliates, whether it or any such affiliate is acting as agent of the Escrow Agent or for any third person or dealing as principal for its own account. The Parties acknowledge that the Escrow Agent is not providing investment supervision, recommendations, or advice.

Section 1.3.    Disbursements.    The Escrow Agent shall disburse the Escrow Property in accordance with the joint written instructions of the Parties. The Escrow Agent shall disburse all interest and investment income on the Escrow Property in accordance with the written instructions of the Grantor.

Section 1.4.    Income Tax Allocation and Reporting.

(a)    The Parties agree that, for tax reporting purposes, all interest and other income from investment of the Escrow Property shall, as of the end of each calendar year and to the extent required by the Internal Revenue Service, be reported as having been earned by Grantor, whether or not such income was disbursed during such calendar year.

(b)    Prior to the date hereof, Grantor shall provide the Escrow Agent with certified tax identification numbers by furnishing appropriate forms W-9 or W-8 and such other forms and documents that the Escrow Agent may request. Grantor understands that if such tax reporting documentation is not provided and certified to the Escrow Agent, the Escrow Agent may be required by the Internal Revenue Code of 1986, as amended, and the Regulations promulgated thereunder, to withhold a portion of any interest or other income earned on the investment of the Escrow Property.

2

(c)     To the extent that the Escrow Agent becomes liable for the payment of any taxes in respect of income derived from the investment of the Escrow Property, the Escrow Agent shall satisfy such liability to the extent possible from the Escrow Property.  Grantor shall indemnify, defend and hold the Escrow Agent harmless from and against any tax, late payment, interest, penalty or other cost or expense that may be assessed against the Escrow Agent on or with respect to the Escrow Property and the investment thereof unless such tax, late payment, interest, penalty or other expense was directly caused by the gross negligence or willful misconduct of the Escrow Agent.  The indemnification provided by this Section 1.4(c) is in addition to the indemnification provided in Section 3.1 and shall survive the resignation or removal of the Escrow Agent and the termination of this Escrow Agreement.

Section 1.5.   Termination.  This Escrow Agreement shall terminate on the earliest to occur of: (i) the date on which the District Court issues a Final Judgment denying the PBGC the relief it sought in its complaint in the District Court Proceeding, (ii) immediately upon the PBGC's withdrawal of the District Court Proceeding, unless the Lehman Pension Plan has been terminated with a termination date of December 12, 2008, or (iii) the distribution by the Escrow Agent of all of the Escrow Property including any interest and investment earnings thereon, in accordance with Section 1.3, and this Escrow Agreement shall be of no further force and effect except that the provisions of Sections 1.4(c), 3.1 and 3.2 hereof shall survive termination.  for purposes of this Section, "Final Judgment" means a judgment or order of a court of competent jurisdiction as to which the time to file an appeal, a motion for rehearing or reconsideration or a petition for writ of certiorari has expired and no such appeal, motion or petition is pending.

## ARTICLE 2
## DUTIES OF THE ESCROW AGENT

Section 2.1.   Scope of Responsibility.  Notwithstanding any provision to the contrary, the Escrow Agent is obligated only to perform the duties specifically set forth in this Escrow Agreement, which shall be deemed purely ministerial in nature.  Under no circumstances will the Escrow Agent be deemed to be a fiduciary to any Party or any other person under this Escrow Agreement.  The Escrow Agent will not be responsible or liable for the failure of any Party to perform in accordance with this Escrow Agreement. The Escrow Agent shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document other than this Escrow Agreement, whether or not an original or a copy of such agreement has been provided to the Escrow Agent; and the Escrow Agent shall have no duty to know or inquire as to the performance or nonperformance of any provision of any such agreement, instrument, or document.   References in this Escrow Agreement to any other agreement, instrument, or document are for the convenience of the Parties, and the Escrow Agent has no duties or obligations with respect thereto.  This Escrow Agreement sets forth all matters pertinent to the escrow contemplated hereunder, and no additional obligations of the Escrow Agent shall be inferred or implied from the terms of this Escrow Agreement or any other agreement.

Section 2.2.   Attorneys and Agents.  The Escrow Agent shall be entitled to rely on and shall not be liable for any action taken or omitted to be taken by the Escrow Agent in accordance with the

advice of counsel or other professionals retained or consulted by the Escrow Agent. The Escrow Agent shall be reimbursed as set forth in Section 3.1 for any and all compensation (fees, expenses and other costs) paid and/or reimbursed to such counsel and/or professionals. The Escrow Agent may perform any and all of its duties through its agents, representatives, attorneys, custodians, and/or nominees.

Section 2.3.    Reliance.  The Escrow Agent shall not be liable for any action taken or not taken by it in accordance with the direction or consent of the Parties or their respective agents, representatives, successors, or assigns.  The Escrow Agent shall not be liable for acting or refraining from acting upon any notice, request, consent, direction, requisition, certificate, order, affidavit, letter, or other paper or document believed by it to be genuine and correct and to have been signed or sent by the proper person or persons, without further inquiry into the person's or persons' authority.  Concurrent with the execution of this Escrow Agreement, the Parties shall deliver to the Escrow Agent authorized signers' forms in the form of Exhibit B-1 and Exhibit B-2 to this Escrow Agreement.

Section 2.4.    Right Not Duty Undertaken.  The permissive rights of the Escrow Agent to do things enumerated in this Escrow Agreement shall not be construed as duties.

Section 2.5.    No Financial Obligation.  No provision of this Escrow Agreement shall require the Escrow Agent to risk or advance its own funds or otherwise incur any financial liability or potential financial liability in the performance of its duties or the exercise of its rights under this Escrow Agreement.

ARTICLE 3
PROVISIONS CONCERNING THE ESCROW AGENT

Section 3.1.    Indemnification.  Grantor shall indemnify, defend and hold harmless the Escrow Agent from and against any and all loss, liability, cost, damage and expense, including, without limitation, attorneys' fees and expenses or other professional fees and expenses which the Escrow Agent may suffer or incur by reason of any action, claim or proceeding brought against the Escrow Agent, arising out of or relating in any way to this Escrow Agreement or any transaction to which this Escrow Agreement relates, unless such loss, liability, cost, damage or expense shall have been finally adjudicated to have been directly caused by the willful misconduct or gross negligence of the Escrow Agent. The provisions of this Section 3.1 shall survive the resignation or removal of the Escrow Agent and the termination of this Escrow Agreement.

Section 3.2.    Limitation of Liability.  THE ESCROW AGENT SHALL NOT BE LIABLE, DIRECTLY OR INDIRECTLY, FOR ANY (I) DAMAGES, LOSSES OR EXPENSES ARISING OUT OF THE SERVICES PROVIDED HEREUNDER, OTHER THAN DAMAGES, LOSSES OR EXPENSES WHICH HAVE BEEN FINALLY ADJUDICATED TO HAVE DIRECTLY RESULTED FROM THE ESCROW AGENT'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, OR (II) SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES OR LOSSES OF ANY KIND WHATSOEVER (INCLUDING WITHOUT LIMITATION LOST PROFITS), EVEN IF THE ESCROW AGENT HAS BEEN ADVISED

4

OF THE POSSIBILITY OF SUCH LOSSES OR DAMAGES AND REGARDLESS OF THE FORM OF ACTION.

Section 3.3.    Resignation or Removal.    The Escrow Agent may resign by furnishing written notice of its resignation to the Parties, and the Parties may remove the Escrow Agent by furnishing to the Escrow Agent a joint written notice of its removal along with payment of all fees and expenses to which it is entitled through the date of termination.  Such resignation or removal, as the case may be, shall be effective thirty (30) days after the delivery of such notice or upon the earlier appointment of a successor, and the Escrow Agent's sole responsibility thereafter shall be to safely keep the Escrow Property and to deliver the same to a successor escrow agent as shall be appointed by the Parties, as evidenced by a joint written notice filed with the Escrow Agent or in accordance with a court order.  If the Parties have failed to appoint a successor escrow agent prior to the expiration of thirty (30) days following the delivery of such notice of resignation or removal, the Escrow Agent may petition any court of competent jurisdiction for the appointment of a successor escrow agent or for other appropriate relief, and any such resulting appointment shall be binding upon the Parties.

Section 3.4.    Compensation.    The Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached hereto as Exhibit C, which compensation shall be paid by the Grantor. The fee agreed upon for the services rendered hereunder is intended as full compensation for the Escrow Agent's services as contemplated by this Escrow Agreement; provided, however, that in the event that the conditions for the disbursement of funds under this Escrow Agreement are not fulfilled, or the Escrow Agent renders any service not contemplated in this Escrow Agreement, or there is any assignment of interest in the subject matter of this Escrow Agreement, or any material modification hereof, or if any material controversy arises hereunder, or the Escrow Agent is made a party to any litigation pertaining to this Escrow Agreement or the subject matter hereof, then the Escrow Agent shall be compensated by the Grantor for such extraordinary services and reimbursed for all costs and expenses, including reasonable attorneys' fees and expenses, occasioned by any such delay, controversy, litigation or event.  If any amount due to the Escrow Agent hereunder is not paid within thirty (30) days of the date due, the Escrow Agent in its sole discretion may charge interest on such amount up to the highest rate permitted by applicable law.   The Escrow Agent shall have, and is hereby granted, a prior lien upon the Escrow Property with respect to its unpaid fees, non-reimbursed expenses and unsatisfied indemnification rights, superior to the interests of any other persons or entities and is hereby granted the right to set off and deduct any unpaid fees, non-reimbursed expenses and unsatisfied indemnification rights from the Escrow Property, provided that the balance is restored by the Grantor immediately following any setoff or deduction.

Section 3.5.    Disagreements.  If any conflict, disagreement or dispute arises between, among, or involving any of the Parties concerning the meaning or validity of any provision hereunder or concerning any other matter relating to this Escrow Agreement, or the Escrow Agent is in doubt as to the action to be taken hereunder, the Escrow Agent is authorized to retain the Escrow Property until the Escrow Agent (i) receives a final non-appealable order of a court of competent jurisdiction directing delivery of the Escrow Property, (ii) receives a written agreement executed by each of the Parties involved in such disagreement or dispute directing delivery of the Escrow Property, in which event the Escrow Agent shall be authorized to disburse the Escrow Property

in accordance with such final court order or agreement, or (iii) files an interpleader action in any court of competent jurisdiction, and upon the filing thereof, the Escrow Agent shall be relieved of all liability as to the Escrow Property and shall be entitled to recover from Grantor attorneys' fees, expenses and other costs incurred in commencing and maintaining any such interpleader action. The Escrow Agent shall be entitled to act on any such agreement or court order without further question, inquiry, or consent.

Section 3.6.   <u>Merger or Consolidation</u>.  Any corporation or association into which the Escrow Agent may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer all or substantially all of its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which the Escrow Agent is a party, shall be and become the successor escrow agent under this Escrow Agreement and shall have and succeed to the rights, powers, duties, immunities and privileges as its predecessor, without the execution or filing of any instrument or paper or the performance of any further act.

Section 3.7.   <u>Attachment of Escrow Property; Compliance with Legal Orders</u>.  In the event that any Escrow Property shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the Escrow Property, the Escrow Agent is hereby expressly authorized, in its sole discretion, to respond as it deems appropriate or to comply with all writs, orders or decrees so entered or issued, or which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction. In the event that the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the Parties or to any other person, firm or corporation, should, by reason of such compliance notwithstanding, such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

## ARTICLE 4
## MISCELLANEOUS

Section 4.1.   <u>Successors and Assigns</u>.  This Escrow Agreement shall be binding on and inure to the benefit of the Parties and the Escrow Agent and their respective successors and permitted assigns. No other persons shall have any rights under this Escrow Agreement. No assignment of the interest of any of the Parties shall be binding unless and until written notice of such assignment shall be delivered to the other Party and the Escrow Agent and shall require the prior written consent of the other Party and the Escrow Agent (such consent not to be unreasonably withheld).

Section 4.2.   <u>Escheat</u>.  The Parties are aware that under applicable state law, property which is presumed abandoned may under certain circumstances escheat to the applicable state.  The Escrow Agent shall have no liability to the Parties, their respective heirs, legal representatives, successors and assigns, or any other party, should any or all of the Escrow Property escheat by operation of law.

Section 4.3.   <u>Notices</u>.  All notices, requests, demands, and other communications required

under this Escrow Agreement (a "Notice") shall be in writing, in English, and shall be deemed to have been duly given if delivered (i) personally, (ii) by facsimile transmission with written confirmation of receipt, (iii) by overnight delivery with a reputable national overnight delivery service, or (iv) by mail or by certified mail, return receipt requested, and postage prepaid. If any Notice is mailed to a Party, it shall be deemed given five business days after the date such notice is deposited in the United States mail. Any other Notice given shall be deemed given on the date received. If Notice is given to a party, it shall be given at the address for such party set forth below. It shall be the responsibility of the Parties to notify the Escrow Agent and the other Party in writing of any name or address changes.

If to Neuberger:

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
New York, NY 10022-4834
Attention: Chief Restructuring Officer
Phone: (212) 526-7000
Facsimile: (212) 759-5532


If to PBGC:

Pension Benefit Guaranty Corporation
1200 K Street, N.W.
Washington, D.C. 20005
Attention: Sara B. Eagle, Esq.
Telephone: (202) 326-4020
Facsimile: (202) 326-4112

If to the Escrow Agent:

Wells Fargo Bank, National Association
625 Marquette Ave., N9311-115
Minneapolis, MN 55479
Attention: Aaron Soper, Corporate, Municipal and Escrow Services
Telephone: (612) 667-5628
Facsimile: (612) 667-2140

Section 4.4.    Governing Law.  This Escrow Agreement shall be governed by and construed in all respects in accordance with the laws of the State of New York without regard to the conflicts of laws principles thereof. The Parties irrevocably agree that the federal or state courts located within the County of New York in the State of New York shall have exclusive jurisdiction to hear and determine any dispute arising out of or relating to this Escrow Agreement or any of the transactions contemplated hereby and each party hereby irrevocably submits to the exclusive jurisdiction of such court, agree to accept service of process by mail in connection with any such matter, hereby irrevocably waives, to the fullest extent permitted by applicable Law, any

objection or defense based on lack of personal jurisdiction, improper venue, forum non conveniens or similar objection or defense, and hereby consent to the granting of legal or equitable relief as deemed appropriate by such court.

Section 4.5.    <u>Entire Agreement</u>.  This Escrow Agreement sets forth the entire agreement and understanding of the Parties related to the Escrow Property.

Section 4.6.    <u>Amendment</u>.  This Escrow Agreement may be amended, modified, superseded, rescinded, or canceled only by a written instrument executed by the Parties and the Escrow Agent.

Section 4.7.    <u>Waivers</u>.  The failure of any Party at any time or times to require performance of any provision under this Escrow Agreement shall in no manner affect the right at a later time to enforce the same performance.  A waiver by any party to this Escrow Agreement of any such condition or breach of any term, covenant, representation, or warranty contained in this Escrow Agreement, in any one or more instances, shall neither be construed as a further or continuing waiver of any such condition or breach nor a waiver of any other condition or breach of any other term, covenant, representation, or warranty contained in this Escrow Agreement.

Section 4.8.    <u>Headings</u>.  Section headings of this Escrow Agreement have been inserted for convenience of reference only and shall in no way restrict or otherwise modify any of the terms or provisions of this Escrow Agreement.

Section 4.9.    <u>Counterparts</u>.  This Escrow Agreement may be executed in one or more counterparts, each of which when executed shall be deemed to be an original, and such counterparts shall together constitute one and the same instrument.

[The remainder of this page left intentionally blank.]

8

IN WITNESS WHEREOF, this Escrow Agreement has been duly executed as of the date first written above.

NEUBERGER BERMAN HOLDINGS LLC

By its Members:

**Lehman Brothers Holdings Inc.**

By: _____
Name: William Fox
Title: Executive Vice President

**LIBRO Holdings I Inc.**

By: _____
Name: William Fox
Title: Senior Vice President

PENSION BENEFIT GUARANTY CORPORATION

By: _____
Name:
Title:

WELLS FARGO BANK, NATIONAL ASSOCIATION, as Escrow Agent

By: _____
Name:
Title:

IN WITNESS WHEREOF, this Escrow Agreement has been duly executed as of the date first written above.

NEUBERGER BERMAN HOLDINGS LLC

By its Members:

**Lehman Brothers Holdings Inc.**

By: _____
Name: William Fox
Title: Executive Vice President

**LIBRO Holdings I Inc.**

By: _____
Name: William Fox
Title: Senior Vice President

PENSION BENEFIT GUARANTY CORPORATION

By: _____
Name: Karen L. Morris
Title: Deputy Chief Counsel

WELLS FARGO BANK, NATIONAL ASSOCIATION, as Escrow Agent

By: _____
Name:
Title:

IN WITNESS WHEREOF, this Escrow Agreement has been duly executed as of the date first written above.

NEUBERGER BERMAN HOLDINGS LLC

By its Members:

**Lehman Brothers Holdings Inc.**

By: _____
Name: William Fox
Title: Executive Vice President

**LIBRO Holdings I Inc.**

By: _____
Name: William Fox
Title: Senior Vice President

PENSION BENEFIT GUARANTY CORPORATION

By: _____
Name:
Title:

WELLS FARGO BANK, NATIONAL ASSOCIATION, as Escrow Agent

By: _____
Name: Aaron R. Soper
Title: Assistant Vice President

EXHIBIT A

**Agency and Custody Account Direction**
**For Cash Balances**
**Wells Fargo Money Market Deposit Accounts**

Direction to use the following Wells Fargo Money Market Deposit Accounts for Cash Balances for the escrow account or accounts (the "Account") established under the Escrow Agreement to which this Exhibit A is attached.

You are hereby directed to deposit, as indicated below, or as the Parties shall direct further in writing from time to time, all cash in the Account in the following money market deposit account of Wells Fargo Bank, National Association (Bank):

Wells Fargo Money Market Deposit Account (MMDA)

The Parties understand that amounts on deposit in the MMDA are insured, subject to the applicable rules and regulations of the Federal Deposit Insurance Corporation (FDIC), in the basic FDIC insurance amount of $100,000 per depositor, per insured bank. This includes principal and accrued interest up to a total of $100,000. *Note: On October 3, 2008, FDIC deposit insurance temporarily increased from $100,000 to $250,000 per depositor through December 31, 2009.*

The Parties acknowledge that they have full power to direct investments of the Account.

The Parties understand that they may change this direction at any time and that it shall continue in effect until revoked or modified by them by written notice to you.


_____
Authorized Representative
NEUBERGER BERMAN
HOLDINGS LLC

_____
Authorized Representative
PENSION BENEFIT GUARANTY
CORPORATION


_____
Date

_____
Date

EXHIBIT A

**Agency and Custody Account Direction**
**For Cash Balances**
**Wells Fargo Money Market Deposit Accounts**

Direction to use the following Wells Fargo Money Market Deposit Accounts for Cash Balances for the escrow account or accounts (the "Account") established under the Escrow Agreement to which this Exhibit A is attached.

You are hereby directed to deposit, as indicated below, or as the Parties shall direct further in writing from time to time, all cash in the Account in the following money market deposit account of Wells Fargo Bank, National Association (Bank):

Wells Fargo Money Market Deposit Account (MMDA)

The Parties understand that amounts on deposit in the MMDA are insured, subject to the applicable rules and regulations of the Federal Deposit Insurance Corporation (FDIC), in the basic FDIC insurance amount of $100,000 per depositor, per insured bank. This includes principal and accrued interest up to a total of $100,000. *Note: On October 3, 2008, FDIC deposit insurance temporarily increased from $100,000 to $250,000 per depositor through December 31, 2009.*

The Parties acknowledge that they have full power to direct investments of the Account.

The Parties understand that they may change this direction at any time and that it shall continue in effect until revoked or modified by them by written notice to you.


_____
Authorized Representative
NEUBERGER BERMAN
HOLDINGS LLC


_____
Date

Authorized Representative
PENSION BENEFIT GUARANTY
CORPORATION

April 27, 2009
Date

EXHIBIT B-1
CERTIFICATE AS TO AUTHORIZED SIGNATURES

The specimen signatures shown below are the specimen signatures of the individuals who have been designated as authorized representatives of Neuberger Berman Holdings LLC and are authorized to initiate and approve transactions of all types for the escrow account or accounts established under the Escrow Agreement to which this Exhibit B-1 is attached, on behalf of Neuberger Berman Holdings LLC.

| Name / Title | Specimen Signature |
|---|---|
| William Fox | |
| Name | Signature |
| | |
| Title | |
| John K. Suckow | |
| Name | Signature |
| | |
| Title | |
| Peter Chesten | |
| Name | Signature |
| | |
| Title | |
| Steven Cohn | |
| Name | Signature |
| | |
| Title | |

## EXHIBIT B-2
### CERTIFICATE AS TO AUTHORIZED SIGNATURES

The specimen signatures shown below are the specimen signatures of the individuals who have been designated as authorized representatives of the Pension Benefit Guaranty Corporation and are authorized to initiate and approve transactions of all types for the escrow account or accounts established under the Escrow Agreement to which this Exhibit B-2 is attached, on behalf of the Pension Benefit Guaranty Corporation.

Name / Title                             Specimen Signature

_Karen L Morris_
Name                                          Signature

_Deputy Chief Counsel_
Title

_Charles L. Finke_
Name                                          Signature

_Deputy Chief Counsel_
Title

_____                           _____
Name                                          Signature

_____
Title

_____                           _____
Name                                          Signature

_____
Title

EXHIBIT C
FEES OF ESCROW AGENT

**<u>Acceptance One Time Fee:</u>**                                                $2,500

The Acceptance Fee includes review of all related documents and accepting the appointment of Escrow Agent on behalf of Wells Fargo Bank, National Association. The fee also includes setting up the required account(s) and accounting records, document filing, and coordinating the receipt of funds/assets for deposit to the Escrow Account. The Acceptance Fee is due at the time of closing and covers the life of the Escrow.

***Wells Fargo's bid is based on the following assumptions:***

- Number of escrow accounts to be established:  One (1);
- Investment in the Wells Fargo Money Market Deposit Account

## Exhibit "G"

**(Side Letter Agreement)**

## Neuberger Berman Holdings LLC

April 28 , 2009

Pension Benefit Guaranty Corporation
1200 K Street, N.W.
Washington, D.C. 20005-4026

Re:    <u>Escrow Deposit Amount</u>

In the event that (i) Lehman Brothers Holdings Inc. and Pension Benefit Guaranty Corporation ("PBGC") enter into a settlement agreement regarding the Lehman Brothers Holdings Inc. Retirement Plan, subject to approval of the United States Bankruptcy Court for the Southern District of New York, and (ii) Neuberger Berman Holdings LLC ("NBH") deposits an aggregate amount of $127,600,000 into the escrow account ("Escrow") described in the Adequate Protection Agreement dated March 23, 2009, between NBH and PBGC, an amount equal to $12,400,000 held in the Escrow shall be released therefrom and returned to NBH or other depositor within three business days following a Final Judgment (as defined below) that the settlement agreement is not approved. The remaining $115,200,000 shall remain in the Escrow according to the terms of the Escrow Agreement and Adequate Protection Agreement, and no further adjustments will be made to that amount, except as provided in Section 1.2 of the Escrow Agreement. Further, NBH and PBGC shall each execute and deliver joint instructions to the escrow agent of the Escrow to effect the foregoing.

"Final Judgment" means a judgment or order of a court of competent jurisdiction as to which the time to file an appeal, a motion for rehearing or reconsideration or a petition for writ of certiorari has expired and no such appeal, motion or petition is pending.

(Signature page to follow)

Neuberger Berman Holdings LLC

Pension Benefit Guaranty Corporation
Page 2

Sincerely,

NEUBERGER BERMAN HOLDINGS
LLC

By its Members:

**Lehman Brothers Holdings Inc.**

By: _____
Name: William Fox
Title: Executive Vice President

**LIBRO Holdings 1 Inc.**

By: _____
Name: William Fox
Title: Senior Vice President

Agreed and Accepted
this __ of day of April, 2009:

PENSION BENEFIT GUARANTY CORPORATION

By:_____

Neuberger Berman Holdings LLC

Pension Benefit Guaranty Corporation
Page 2

Sincerely,

NEUBERGER BERMAN HOLDINGS
LLC

By its Members:

**Lehman Brothers Holdings Inc.**

By: _____
Name: William Fox
Title: Executive Vice President

**LIBRO Holdings I Inc.**

By: _____
Name: William Fox
Title: Senior Vice President

Agreed and Accepted
this 28 of day of April, 2009:

PENSION BENEFIT GUARANTY CORPORATION

By: _____
Karen L. Morris
Deputy Chief Counsel

SIGNATURE PAGE TO PBGC SIDE LETTER

**<u>Exhibit "H"</u>**

**(Personalized Notice)**

# LEHMAN BROTHERS

May 7, 2009

Re:         **NOTICE OF MOTION AND SETTLEMENT**
            **AGREEMENT REGARDING LEHMAN**
            **BROTHERS HOLDINGS INC. RETIREMENT PLAN**

Please be advised that Lehman Brothers Holdings Inc. ("Lehman"), the sponsor of
The Lehman Brothers Holdings Inc. Retirement Plan (the "Plan"), has recently reached a
settlement agreement (the "Settlement Agreement") with the Pension Benefit Guaranty
Corporation ("PBGC") regarding the Plan.

On December 12, 2008, the PBGC published notice and filed a complaint in the
United States District Court for the Southern District of New York seeking, among other things,
to terminate the Plan and have the PBGC appointed as statutory trustee of the Plan.

As a result of Lehman's bankruptcy filing and market risks associated with
continuation of the Plan, Lehman has concluded that entering into the Settlement Agreement
with the PBGC is the most prudent course for the Plan's participants and beneficiaries, as well as
Lehman, its subsidiaries, and their creditors.  The Settlement Agreement provides that a payment
of $127,600,000, plus interest thereon, will be made pursuant to the Settlement Agreement to the
PBGC in respect of its claims against Lehman and its affiliates with respect to the Plan.  The
Settlement Agreement also provides for the termination of the Plan and the appointment of the
PBGC as statutory trustee of the Plan. Under the Settlement Agreement, the Plan termination
date will be set at December 12, 2008, and all benefit accruals will cease as of that date.  The
PBGC will assume responsibility to pay pension benefits in accordance with Title IV of the
Employee Retirement Income Security Act of 1974, as amended ("ERISA").  The amount of
your pension benefits payable by the PBGC is subject to the limits set forth in ERISA.  Lehman
and the PBGC will cooperate to ensure uninterrupted payment of your guaranteed pension
benefits.

This notice informs you that on May 7, 2008, Lehman filed a motion (the
"Motion") seeking approval of the Settlement Agreement.  A hearing (the "Hearing") will be
held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States
Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green,
New York, New York 10004 **on June 3, 2009 at 10:00 a.m. (Prevailing Eastern Time)** to
consider approval of the Settlement Agreement.

**YOU DO NOT NEED TO DO ANYTHING TO CONTINUE TO RECEIVE
YOUR PENSION BENEFITS**.  If you choose to object to the Motion and the Settlement
Agreement, you must file a written objection, with proof of service, with the Clerk of the Court
and mail courtesy copies to: (i) the chambers of the Honorable James M. Peck, One Bowling
Green, New York, New York 10004, Courtroom 610 and (ii) Weil, Gotshal & Manges LLP, 767
Fifth Ave., New York, New York 10153, Attn: Richard P. Krasnow, Esq., so as to be received by
no later than **May 28, 2009 at 4:00 p.m. (Prevailing Eastern Time)**.

**If you do not object to the approval of the Motion and the Settlement
Agreement, you do <u>not</u> need to attend the Hearing**.  Your failure to respond will be deemed to
be a no-objection to the Motion and the Settlement Agreement.  <u>You may wish to consult legal
counsel to the extent you deem appropriate</u>.

If you would like to obtain complete copies of the Motion and/or the Settlement
Agreement and its related documents, please visit www.lehman-docket.com for free access to
such documents.  Hard copies of these documents can also be requested from the Lehman Legal
Hotline at lehmanteam@weil.com or 212-310-8040.  In addition, the PBGC provides
information regarding the payment of benefits upon termination of a benefit plan.  You can
access that information at http://www.pbgc.gov.