# **EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- x

| | | |
|---|---|---|
| *In re* | : | **Chapter 11** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| | : | **(Jointly Administered)** |
| Debtors. | : | |

---------------------------------------------------------------------- x

## DECLARATION OF FRANK JAKLITSCH

Pursuant to 28 U.S.C. §1746, Frank Jaklitsch declares as follows:

1.  I am an associate with the law firm Esbin & Alter, LLP, outside counsel to Basso Capital Management, L.P. ("Basso"). I represent Basso in connection with the settlement of bank debt transactions and am not bankruptcy counsel to Basso. I make this Declaration in support of Basso's Motion For Relief Concerning Certain Contracts That Debtor Moved to Reject, Then Sought To Assume Without Providing Sufficient Notice And An Opportunity To Object (the "Motion").

2.  On or about June 3, 2008, I received notification from Basso that three funds managed by Basso (Basso Credit Opportunities Holding Fund Ltd., Basso Fund Ltd., and Basso Multi-Strategy Holding Fund Ltd.) had agreed to purchase from Lehman Commercial Paper Inc. ("LCPI" or "Debtor") distressed commercial debt relating to Greektown Holdings L.L.C. and Greektown Holdings II, Inc. (the "Trade Confirmations"). (Copies of the three Trade Confirmations are annexed to the Declaration of Cristin Caufield as Exhibit 1).

3.  I represented Basso with regard to these Trade Confirmations. My representation put me in contact with Russell Chiappetta of Andrews Kurth LLP, an attorney who is outside

counsel to LCPI with regard to distressed debt trades.  I worked with Mr. Chiappetta on the Basso Trade Confirmations.  Furthermore, I represented other clients of the firm engaged in transactions with LCPI, including during the period from October 2008 through April 2009.

4.    In or around October, 2008, I learned that LCPI commenced a voluntary case under Chapter 11.  From approximately that time until April 2009, I did not receive any communications from Mr. Chiappetta regarding the Trade Confirmations (although I did communicate with Mr. Chiappetta and other LCPI representatives regarding other transactions between at least one other firm client and LCPI).

5.    In November 2008, I was advised by Basso that LCPI had determined to reject the Trade Confirmations.  I had also received a copy of LCPI's November 14, 2008 motion to that effect through a distressed debt market news alert that was sent to a market mailing list.  In reviewing my file I note that I also received several emails from Epiq Systems on December 14, 2008, as part of an informational blast.  Six of those emails pertained to a document referred to as "Notice of Filing of Revised Exhibits…"  The emails were received on a Sunday evening.  Nothing on the face of the emails suggested they contained information concerning Basso that constituted a material change or reversal from what had been stated in the November 14, 2008 motion, nor, based upon the information I received previously, did I anticipate such a change.  For these reasons, I did not forward the emails to Basso.

6.    In light of Basso's instructions to me and the content of the November 14, 2008 motion, I was surprised when I received an email from Mr. Chiappetta on April 14, 2009, some

five months later, referencing draft closing documents for the Trade Confirmations. (A copy of that chain of emails is annexed hereto as Exhibit 1.)

7. I responded to Mr. Chiappetta via email the same day, April 14, 2009, expressing my understanding that the Trade Confirmations had been rejected in November 2008. (Exhibit 1.) Mr. Chiappetta replied on April 16, 2009 that the Trade Confirmations had originally been rejected, but later assumed. (Exhibit 1.) This was the first time I was aware that LCPI sought to assume the Trade Confirmations. Mr. Chiappetta also forwarded to me an email sent by LCPI on November 21, 2008, to Cristin Caufield. At the end of the email, LCPI purported to reverse its determination to reject the Basso trades. (A copy of the forwarded email is annexed hereto as Exhibit 2). That same day, April 16, 2009, I informed Basso of LCPI's assertion that the Trade Confirmations were assumed and forwarded the November 21, 2008 email to them. To my knowledge, that was the first time Basso became aware that LCPI intended to assume the trades.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 7th day of May, 2009

                                            /s/ Frank Jaklitsch
                                            Frank Jaklitsch