Paul Batista, Esq.
PAUL BATISTA, P.C.
26 Broadway – Suite 1900
New York, New York 10004
Telephone: (212) 980-0070
Facsimile: (212) 344-7677
E-mail: Batista007@aol.com

*Attorneys Unclaimed Property Recovery Service, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------x

| | |
|---|---|
| **In re** | **Chapter 11** |
| **LEHMAN BROTHERS HOLDINGS, INC.,** *et al.*, | **Case No. 08-13555 (JMP)** |
| **Debtors.** | **Jointly Administered** |

------------------------------------------------------x

| | |
|---|---|
| **SECURITIES INVESTOR PROTECTION CORPORATION,** | |
| **Plaintiff-Applicant,** | **Case No. 08-01420 (JMP) SIPA** |
| v. | **SIPA Liquidation Proceeding** |
| **LEHMAN BROTHERS, INC.** | |
| **Defendant.** | |

------------------------------------------------------x

**OBJECTION OF UNCLAIMED PROPERTY RECOVERY SERVICE, INC.**
**TO THE SIPC TRUSTEE'S**
**PROPOSED REJECTION OF LBI – UPRS CONTRACTS**

Unclaimed Property Recovery Service, Inc. ("UPRS"), by its counsel, Paul Batista, P.C., hereby submits this objection (the "Objection") to the rejection of the contracts between UPRS and Lehman Brothers, Inc. ("LBI") by the Notice of Rejection of Executory Contracts, dated May 1, 2009 ("Rejection Notice"), issued by James W. Giddens ("Trustee"), the Trustee for the SIPA Liquidation of LBI, and respectfully represents and sets forth as follows:

## I. **PRELIMINARY STATEMENT**

1.  Pursuant to four LBI Agreements ("Agreements") and Authorizations ("Authorizations"), UPRS has identified and claimed approximately $5 million in unclaimed funds held by the New York State Office of Unclaimed Funds ("NYS OUF") on behalf of LBI. *See* the accompanying Declaration of Bernard Gelb ("Gelb Dec.") ¶ 3. The NYS OUF recognizes UPRS as LBI's authorized representative. *Id.* ¶ 4.

2.  The Director of the NYS OUF has agreed to pay $5 million in unclaimed funds due LBI. *See* Gelb Dec. ¶ 14. This is a result of efforts made solely on behalf of LBI under the Agreements. Substantial performance by both UPRS and LBI precludes rejection of the UPRS - LBI Agreements.

3.  As described in greater detail later in this Objection, a contract in which one party's post-petition obligation is the payment of money is not an executory contract. The only LBI performance that remains is the payment of $500,000 to UPRS from the unclaimed funds. Since the Agreements at issue require only the payment of money to UPRS for its services, the Agreements are not the type of contracts that can be rejected.

4.  As of September 15, 2008, the date of the commencement of the proceeding involving Lehman Brothers Holdings, Inc. ("LBHI"), LBI was indebted to UPRS in the amount of at least $1 million. *See* Gelb Dec. ¶19. Likewise, as of September 19, 2008, the date of the commencement of the SIPC Trustee proceeding, LBI was indebted to UPRS in the amount of at least $1 million. *Id.*

5.  The SIPC Trustee has an obligation to pay the fees due UPRS, since it was UPRS that identified and claimed $5 million in unclaimed funds held by the NYS OUF on behalf of LBI. UPRS is entitled to payment of a post-petition administrative expense claim pursuant to 11

2

U.S.C. § 503(b) for the amount of its fees. After UPRS is paid its earned fees, LBI will recover approximately $4 million.

6. Because the Director of the NYS OUF has agreed to pay the $5 million in outstanding unclaimed funds due LBI, the only purpose that would be accomplished by the SIPA Trustee's rejection of the LBI - UPRS Agreements is to pay the $500,000 due UPRS to another firm. *See* Gelb Dec. ¶16.

7. The Agreements are not executory contracts. The notice of proposed rejection should be withdrawn since (i) contracts substantially performed are not executory contracts under § 365 of the Bankruptcy Code and (ii) post-petition payment obligations are not executory contracts under § 365 of the Bankruptcy Code.

## II. BANKRUPTCY FILINGS

8. On September 15, 2008, LBHI filed its petition for relief under chapter 11 of title 11. Subsequent chapter 11 petitions were filed by related entities (together with LBHI, the "Debtors"). By order dated October 16, 2008, the Debtors' cases have been jointly administered.

9. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 with respect to LBI and James W. Giddens was appointed as Trustee to administer LBI's estate.

## III. FACTUAL BACKGROUND

10. UPRS is in the business of finding unclaimed funds and notifying owners of the existence of the funds. UPRS has longstanding and ongoing agreements with LBI to identify and recover unclaimed funds belonging to LBI. During the past thirteen years, UPRS has recovered millions of dollars in unclaimed funds for LBI. *See* Gelb Dec. ¶ 12.

3

11. UPRS has spent many years and thousands of dollars to develop proprietary software, databases and research to identify and recover unclaimed funds that are outstanding for LBI. *See* Gelb Dec. ¶ 2.

12. Pursuant to four LBI Agreements and Authorizations, UPRS identified and claimed $5 million in unclaimed funds held by the NYS OUF on behalf of LBI. *See* Gelb Dec. ¶ 4. The NYS OUF recognizes UPRS as LBI's authorized representative. *Id.*

13. Subsequent to the LBHI Petition Date, both LBI and UPRS have substantially performed according to the Agreements and Authorizations. *See* Gelb Dec. ¶ 13.

14. UPRS performed its services in good faith and in reliance upon the executed Agreements and Authorizations that LBI would compensate UPRS in the amount of 10% of the recovered unclaimed funds. In performing all of its obligations, UPRS expected to be compensated for its services. The value of services actually conferred by UPRS during post-petition period is $500,000.

15. On June 7, 2007, July 2, 2007 and August 1, 2007, UPRS sent Bill Wallace, LBI Vice President, a billing statement for $500,000 for services under the Agreements as of June 7, 2007 relating to previously recovered funds. *See* Gelb Dec. ¶ 8.

16. In the post-petition period, LBI on or about September 25, 2008, confirmed that "LBI will honor all Agreements with UPRS and UPRS will be paid its fee for all unclaimed funds claimed for LBI." *See* Gelb Dec. ¶ 11.

## IV. OBJECTION

17. On May 4, 2009, LBHI's and LBI's representatives informed UPRS that LBI would not perform under the four contracts and would not pay UPRS its $500,000 fee for claiming $5 million in unclaimed funds held by the NYS OUF on behalf of LBI. *See* Gelb Dec.

4

¶ 16. LBHI and the SIPC Trustee apparently want the NYS OUF to pay the $5 million outstanding due LBI to another firm (presumably Alvarez & Marsal), and the other firm will collect the $500,000 fee due UPRS. *Id.*

18.  UPRS identified and filed the $5 million claim with the NYS OUF. *See* Gelb Dec. ¶ 17. Once a claim has been filed, it is NYS OUF policy not to accept a new claim from another firm. *Id.*

19.  LBI is a non-debtor. The proposed rejection is an improper and impermissible attempt to apply bankruptcy protection to a non-debtor entity. Moreover, LBHI and the SIPC Trustee want another firm to collect the $500,000 fee that is due.

20.  Congress could not have intended that a non-debtor would be able to appropriate all of the benefits of bankruptcy law without itself filing a bankruptcy petition. 28 U.S.C. § 157(b) provides a non-exclusive list of 15 "core" proceedings, none of which include breach of contract or actions involving non-debtors. *See, e.g., Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095, 1102 (2d Cir. 1993) (holding that a breach of contract action by a debtor against a party to a pre-petition contract, which has filed no claim with the bankruptcy court, was non-core); *Beard v. Braunstein*, 914 F.2d 434, 444 (3d Cir. 1990).

21.  As the Supreme Court has observed, where the Bankruptcy Code's language is plain, "the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed2d 290, (1989), citing *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).

22.  Bankruptcy courts are courts of equity "empowered to invoke equitable principles to achieve fairness and justice in the reorganization process." *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994). The SIPC Trustee has an obligation to pay the $500,000 fee

5

due UPRS since it was UPRS that identified and claimed $5 million in unclaimed funds held by the NYS OUF on behalf of LBI.

## V. THE UPRS – LBI AGREEMENTS ARE NOT EXECUTORY CONTRACTS

### A. Contract Substantially Performed Is Not Executory

23. Pursuant to the Agreements and Authorizations, UPRS identified and claimed the at issue $5 million. Subsequent to the LBHI Petition Date, both LBI and UPRS have substantially performed according to the Agreements. Accordingly, the UPRS - LBI Agreements are not executory contracts under section 365 of the Bankruptcy Code. It is settled law that a contract substantially performed is not executory. *See In re Pacific Exp. Inc.*, 780 F.2d 1482, 1487-88 (9th Cir. 1986) (contract substantially performed is not executory); *In re Norwood Chevrolet Co.*, 143 B.R. 804 (Bankr. D.R.I. 1992) (substantial performance by both parties precludes rejection of contract); *In re Kmart Corp.*, 290 B.R. 614, 617 (N.D. Ill. 2003) ("Contract that has been fully performed by either side is not executory"); *American Network Leasing Corp.* v. *First Data Merchant Servs. Corp.*, 1997 WL 534827, at *9 (N.D. Ill. Aug.21, 1997) (agreement "not executory" because it was "fully performed by one side"); *In re Sundial Asphalt Co.*, 147 B.R. 72, 80 (E.D.N.Y. 1992) (contract for sale of land ceases to be executory when court issues decree of specific performance); *In re Columbia Gas Sys.*, 146 B.R. 106 (D. Del. 1992) (court approved settlement which required only "perfunctory acts utilizing preapproved terms and conditions" is not executory contract); *Heartline Farms* v. *Daly*, 128 B.R. 246, 250 (D. Neb. 1990) ("mere formality" remaining for performance "does not represent the kind of significant legal obligation that would render a contract executory"); *In re Fitch*, 174 B.R. 96, 102 (S.D. Ill. 1994) (contract for sale of real estate with installment payments was non-executory because seller's only remaining obligation, to deliver good title, was not material).

24. Courts have allowed payment of post-petition performance rendered on a contract. *See In re ICS Cybernetics, Inc.* 111 B.R. 32, 37 (Bankr. N.D.N.Y. 1989). Equally important, numerous other service companies are being paid for post-petition performance rendered, and about $100 million in attorneys' fees either are or are about to be paid this week. At this rate, at the conclusion of the bankruptcy, all funds are likely to be consumed by attorneys' fees.

### B. Post-petition Payment Obligations Are Not Executory Contracts

25. LBI's post-petition payment obligation to pay UPRS $500,000 is not an executory contract. Courts have consistently held that contracts that only require payment are not executory. *See In re Spectrum Information Technologies, Inc.*, 190 B.R. 741, 748 (Bankr. E.D.N.Y. 1996) ("[w]here the only performance that remains is the payment of money, the contract will not be found to be executory"); *In re Munple, Ltd.*, 868 F.2d 1129 (9th Cir. 1989) (real estate brokerage commission agreement not executory even though payment of fee was conditioned upon closing of sale); *In re Shada Truck Leasing, Inc.*, 31 B.R. 97 (Bankr. D. Neb. 1983) (contract is not executory when all that is left for debtor to do is pay); *In re U.S. Metalsource Corp.*, 163 B.R. 260, 269 (Bankr. W.D. Pa. 1993) (terminable-at-will employment contracts are not executory contracts because debtor's only legal obligation is to pay severance pay); *In re Wisconsin Barge Line*, 76 B.R. 695 (Bankr. E.D. Mo. 1987) (contracts under which debtors' only duty was to pay premiums were not "executory"); *In re Wang Laboratories, Inc.*, 154 B.R. 389 (Bankr. D. Mass. 1993) (agreement not executory where only remaining obligation was the payment of severance pay); In re THC Fin. Corp., 686 F.2d 799, 804 (9th Cir. 1982) (agreement not executory because the only obligation is the payment of money).

## VI. THE VALUE OF UPRS'S POST-PETITION SERVICES IS $500,000

26.  Now that UPRS has helped LBI to recover $5 million in unclaimed funds, LBHI and the SIPC Trustee do not want pay UPRS its earned fee of 10%. Instead of providing compensation for the services provided by UPRS to LBI, LBHI and the SIPC Trustee apparently want another firm to collect the $500,000 fee due UPRS.

27.  UPRS identified and filed the $5 million Claim with the NYS OUF. The Director of the NYS OUF has agreed to pay $5 million in unclaimed funds due LBI. The value of services actually conferred by UPRS during the post-petition period is $500,000. Courts have held that consideration is furnished to the estate where the debtor-in-possession induces post-petition performance. See *In re ICS Cybernetics, Inc.* 111 B.R. 32, 37 (Bankr. N.D.N.Y. 1989).

28.  The Bankruptcy Code does not confer upon a debtor in bankruptcy greater rights and powers under a contract than it had outside of bankruptcy. *In re Penn Traffic Co.*, 322 B.R. 63, 72 (Bankr. S.D.N.Y. 2003), *aff'd in part and rev'd in part on other grounds* ("It is well settled that the mere filing of a bankruptcy petition does not enhance a debtor's contract rights or diminish its obligations"); *In re Nemko, Inc.*, 143 B.R. 980, 987 (Bankr. E.D.N.Y. 1992) ("[A] contractual right is not affected by the filing of a Chapter 11 petition. The rights of a debtor to the property of the estate do not expand when the debtor files a petition in bankruptcy.")

29.  When a debtor-in-possession elects to receive benefits from the other party to a contract pending a decision to reject or assume the contract, the debtor-in-possession must pay for the reasonable value of those services. See *In re Travelot Co.*, 286 B.R. 462, 466 (Bankr. S.D. Ga. 2002) (quoting *N.L.R.B. v. Bildisco and Bildisco,* 465 U.S. 513, 531, 104 S. Ct. 1188, (1984)). That value, "depending on the circumstances of a particular contract, may be what is specified in the contract." *Bildisco,* 465 U.S. at 531, 104 S. Ct. at 1199; see also *Goldin v.*

*Putnam Lovell, Inc.*, 163 B.R. 899, 907-908 (Bankr. D. Mass. 1994) (non-debtor party to pre-petition contract was entitled to reasonable value of services actually conferred on debtor during post-petition, pre-assumption/rejection period).

30. In *In re StarNet, Inc.*, 355 F.3d 634 (7th Cir. 2004), the court recently stated

> [N]either § 365(a) nor anything else in bankruptcy law entitles debtors to more or different services, at lower prices, than their contracts provide. Section 365(a) gives debtors a right to walk away before the contract's end (with the creditor's entitlement converted to a claim for damages), not a right to obtain extra benefits without paying for them. In the main, and here, bankruptcy law follows non-bankruptcy entitlements.

*Id.* at 637 (citing *Bildisco*, 465 U.S. 513, 104 S. Ct. 1188); *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20, 120 S. Ct. 1951 (2000); *Butner v. United States*, 440 U.S. 48, 99 S. Ct. 914 (1979)).

31. UPRS's claim for payment should be given "administrative expense" priority under 11 U.S.C. Sec. 503(b)(1)(A). A claim is entitled to administrative priority if the consideration supporting the claimant's right to payment was both supplied and beneficial to the debtor-in-possession in the operation of the business. *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986) (citations omitted).

## VII. BREACH OF THE COVENANT OF GOOD FAITH

32. UPRS performed its services in good faith and in reliance upon the executed Agreements that LBI would compensate UPRS in the amount of 10% of the recovered unclaimed funds. UPRS fully performed in good faith all of its obligations under the terms of the Agreements. In performing all of its obligations, UPRS expected to be compensated $500,000 for its services.

33. Now that UPRS has helped LBI to recover $5 Million in Unclaimed Funds, LBHI and the SIPC Trustee do not want to pay UPRS its earned fee of 10%. Instead of providing

compensation for the service provided by UPRS to LBI, LBHI and the SIPC Trustee want another firm to collect the $500,000 fee due UPRS. This is a breach of the covenants of good faith and fair dealing.

34. In *India.com, Inc. v. Dalal*, 2009 U.S. App. LEXIS 8962 (2d Cir., April 28, 2009), the Second Circuit recently stressed:

> As a general matter, a covenant of good faith and fair dealing is implicit in all contracts. The covenant "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."

35. The Director of the NYS OUF has agreed to and will pay the approximately $5 million in unclaimed funds. Accordingly, the only purpose to be accomplished by rejection is to pay the $500,000 due UPRS to another firm. The bankruptcy court will not approve the rejection where the request is "manifestly unreasonable," there is "bad faith," and the debtor has committed a "gross abuse of business discretion". *See Crystalin, LLC v. Selma Props., Inc.*, 293 B.R. 455, 464 (Bankr. 8th Cir. 2003).

36. The $500,000 fee due UPRS should be paid to UPRS, not to another firm. UPRS identified and filed the $5 million Claim with the NYS OUF. The NYS OUF recognizes UPRS as LBI authorized representative. After UPRS is paid its fees, LBI will recover approximately $4 million.

## VIII. ALLOWANCE AND PAYMENT OF SERVICES PROVIDED POST-PETITION

37. Pursuant to the Agreements and Authorizations, UPRS is currently in the process of recovering approximately $5 million in unclaimed funds held by the NYS OUF on behalf of LBI. UPRS hereby moves for allowance and payment of a post-petition administrative expense claim pursuant to Section 503(b)(1)(A) of the Bankruptcy Code for UPRS' 10% fee (approximately $500,000) for the recovery of the unclaimed funds held by the NYS OUF on

behalf of LBI. UPRS provided services under the Agreements that are "actual, necessary costs and expenses of preserving [LBI's] . . . estate." 11 U.S.C. § 503(b)(1)(A).

38. Courts have allowed payment of post-petition performance rendered on a contract. *In re ICS Cybernetics, Inc.* 111 B.R. 32, 37 (Bankr. N.D.N.Y. 1989). Equally important, numerous other service companies are being paid for post-petition performance rendered.

39. The Court should allow UPRS to recoup its 10% fee (approximately $500,000) and the $500,000 outstanding due UPRS from the unclaimed funds recovered. After UPRS is paid its fees, LBI will recover approximately $4 million.

40. Although the Bankruptcy Code does not mention or define the term "recoupment," recoupment is an equitable doctrine that has long been applied in the bankrutpcy context. *In re Adelphia Communications Corp.*, 2006 WL 1559437, *4 (S.D.N.Y. June 7, 2006); *Mercy Hospital of Watertown v. New York State Dept. of Social Services*, 171 B.R. 490, 494 (N.D.N.Y. 1999); *In re Holford*, 896 F.2d 176, 179 (5th Cir. 1990); *In re Monongahela Rye Liquors, Inc.* 141 F.2d 864, 869 (3d Cir. 1994); *In re Centergas, Inc.*, 172 B.R. 844, 848 (Bankr. N.D. Tex. 1994). For recoupment to apply, the claims must arise out of "the same transaction or set of transactions." *Malinowski v. New York State Dept. of Labor (In re Malinowski)*, 156 F.3d 131, 133 (2d Cir. 1998). The doctrine of recoupment is flexible and has been applied in many situations. *See, e.g., In re Heafitz*, 85 B.R. 274, 279-80 (Bankr. S.D.N.Y. 1988); *In re 105 East Second Street Associates*, 207 B.R. 64, 69 (Bankr. S.D.N.Y. 1997); *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427, 432-33 (Bankr. S.D.N.Y. 1982), *aff'd,* 34 B.R. 385 (S.D.N.Y. 1983); *In re Clowards, Inc.*, 42 B.R. 627 (Bankr. D. Idaho 1984).

41. This is precisely the type of situation to which the equitable doctrine of recoupment was meant to apply. There is one set of transactions here – recovery of unclaimed funds – and UPRS should be allowed to recoup its 10% fee and the balance outstanding from the proceeds of the unclaimed funds recovery.

## IX. NOTICE

42. UPRS is serving this Motion by ECF upon all parties that have filed papers in the Debtors' cases by ECF. UPRS is also causing this Motion to be served upon LHBI, LBI, bankruptcy counsel for LBHI, counsel for the Trustee, counsel for Barclays, counsel for the Official Committee of Unsecured Creditors, counsel to the Securities Investors Protection Corporation and the Office of the United States Trustee.

## X. RESERVATION OF RIGHTS

43. UPRS expressly reserves all rights and actions under the LBI Agreements, LBI authorizations and applicable law, including (i) the right to seek payment on an administrative expense priority basis for services rendered post-petition and (ii) the right to file a proof of claim for amounts owed to UPRS for services rendered prior to the commencement of LBHI's petition and LBI's SIPA proceeding.

## XI. CONCLUSION

WHEREFORE, for all of the foregoing reasons, Unclaimed Property Recovery Service, Inc. respectfully objects to the proposed rejection of LBI – UPRS Agreements.

Dated: New York, New York
May 11, 2009

**PAUL BATISTA, P.C.**
*Attorney for Unclaimed Property Recovery Service, Inc.*

/s/ Paul Batista
Paul Batista, Esq.
26 Broadway – Suite 1900
New York, New York 10004
Telephone: (212) 980-0070
Facsimile: (212) 344-7677
E-mail: Batista007@aol.com