FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                             :

**In re**                              :        **Chapter 11**
                                             :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :    **Case No. 08-13555 (JMP)**
                                             :

                       **Debtors.**      :     **(Jointly Administered)**
                                             :

                                             :
-------------------------------------------------------------------x

### MEMORANDUM DECISION DENYING RELIEF FROM THE AUTOMATIC STAY TO EFFECTUATE SETOFF UNDER 11 U.S.C. § 553(a)

WEIL, GOTSHAL & MANGES LLP
Attorneys for Debtors and Debtors in Possession
767 Fifth Avenue
New York, New York 10153

      Richard P. Krasnow, Esq.

WHITE & CASE LLP
Attorneys for DnB NOR Bank ASA
1155 Avenue of the Americas
New York, New York 10036

      J. Christopher Shore, Esq.
      Gerard Uzzi, Esq.

MILBANK, TWEED, HADLEY &McCLOY LLP
Attorneys for Official Committee of Unsecured Creditors
1 Chase Manhattan Plaza
New York, New York 10005

      Dennis F. Dunne, Esq.

**JAMES M. PECK**
**UNITED STATES BANKRUPTCY JUDGE**

### *Introduction*

This case raises issues relating to the right to setoff at a time when funds often move from one bank account to another at the speed of light. Despite this ability to move funds instantly, the fact pattern presents the challenge of determining rights when there is a delay between the instruction and execution phases of a transfer between two bank accounts. Here, the transfer of the funds in dispute was pending over the weekend before Lehman Brothers Holdings, Inc. ("LBHI") filed for bankruptcy, and the transfer did not become final until after the filing. Despite well developed law on the subject of setoff, the parties, LBHI and DnB NOR Bank ASA ("DnB NOR" or the "Bank"), acknowledge that there is no controlling precedent directly on point. The facts are not disputed.

The setoff question before the Court arises out of an intrabank transfer of available funds initiated after the close of business on September 12, 2008, but not completed until the morning of September 15, 2008, just hours after the commencement of LBHI's bankruptcy case. The funds were on deposit at DnB NOR on the Friday before the Monday bankruptcy filing in an account maintained by Lehman Brothers Commercial Corporation ("LBCC").[1] LBCC issued two separate instructions late in the day on Friday to transfer certain funds to an account maintained by LBHI at the Bank. The instructions were given prepetition, but the funds were not credited to LBHI's account until Monday morning, after LBHI already had become a debtor-in-possession.

---

[1] LBCC, an affiliated debtor that is a wholly-owned subsidiary of LBHI, filed its bankruptcy petition on October 5, 2008. By order entered October 16, 2008, the LBCC case is being jointly administered with LBHI's chapter 11 case.

The transaction offers a glimpse of the global complexity of LBHI's prepetition operations and cash management procedures and illustrates the legal significance of accounting for funds within a bank's internal systems for managing data and account information. Answering the question of entitlement to setoff calls for a review of the contingencies impacting the transaction and consideration of whether the transfer in practical terms was substantially complete before commencement of the bankruptcy.

Timing has always mattered for setoff purposes, and the current situation is no exception. Electronic transfers between accounts within a bank most often occur instantaneously, but that did not happen here. Instead, the funds being transferred from one account to another were subject to internal procedures that imposed a holding period that delayed formal crediting of the funds to LBHI's account at what turned out to be a critical time.

As discussed below, the Court concludes that setoff involving internal transfers and accounting entries requires that mutuality be actual and free from doubt. This is particularly true in a global enterprise comprised of multiple affiliated entities. Receipt of the funds in the properly designated account is an essential requirement for mutuality and the exercise of setoff rights. The ability or discretion of DnB NOR before such receipt to push a button and execute a ministerial transfer between accounts is not and cannot be deemed the same as actually having moved the funds. The funds that were in transit when LBHI filed its chapter 11 case did not become property of LBHI and did not become available for setoff purposes until after the commencement of LBHI's case. Consequently, the prerequisites for exercise of the right of setoff are not met as to these funds that were deposited to the account of LBHI postpetition.

### *Background of the Dispute*

On September 30, 2008, DnB NOR filed a motion [ECF Doc. # 465] seeking relief from the automatic stay to permit it to setoff against amounts on deposit in a designated LBHI account at the Bank.  The funds on deposit in that account were denominated in Norwegian Kroner ("NOK") and totaled 106,178,587.92 NOK.  The motion also sought adequate protection.  LBHI, with the support of the Official Committee of Unsecured Creditors (the "Committee"), has opposed this relief.

Following status conferences and a hearing on the motion, DnB NOR, LBHI and the Committee entered into a Stipulation, Agreement and Order approved on January 22, 2009 [ECF Doc. # 2605], providing for consensual relief from the automatic stay to permit setoff in favor of DnB NOR as to a designated amount of funds held in the LBHI Account (defined below) that indisputably could be setoff against amounts owed by LBHI to DnB NOR.  The parties thereafter submitted briefs addressing the question of the right to setoff as to those funds that were in the process of being transferred into the LBHI Account at the time of the bankruptcy filing.

The parties have stipulated to the facts.  DnB NOR, as lender, and LBHI, as borrower, entered into a $25 million Revolving Credit Facility dated March 1, 2008 (the "Credit Facility").  LBHI also opened and maintained a general deposit account in its name at DnB NOR (the "LBHI Account").  As of the commencement of LBHI's bankruptcy case on September 15, 2008, DnB NOR had a claim against LBHI as borrower under the Credit Facility in an amount not less than the funds held in the LBHI Account.

Procedures relating to the transfer of funds into the LBHI Account are governed by certain terms and conditions established by DnB NOR (the "Terms and Conditions"). The Terms and Conditions provide that a transfer of funds to or from a Domestic Bank (i.e., a Norwegian banking institution) will be effected and credited to a beneficiary's account on a same day basis if instructions are received prior to 3:00 p.m. Central European Standard Time ("CEST").  Transfer instructions received after that cut-off time are not executed until the next business day.  The Terms and Conditions also allow a party initiating a transfer to amend or cancel the instructions prior to 10:00 a.m. CEST on the next business day.

After 6:00 p.m. CEST[2] on September 12, 2008, LBCC issued two transfer instructions, one relating to approximately 6.8 million NOK and a second relating to 200,000 NOK, directing DnB NOR to debit its account and to credit the LBHI Account in those amounts on September 15th (the "Transfer Instructions").  Because these instructions were not given until after 3:00 p.m., under the Terms and Conditions, LBCC had the right to change or withdraw the Transfer Instructions prior to 10:00 a.m. CEST on September 15th.  LBCC did not exercise this right, and the instructions remained outstanding throughout the waiting period without modification.  Notably, the funds at all relevant times were on deposit at DnB NOR and the transfers in question were to be evidenced by electronic bookkeeping entries to account for the movement of funds.  The transaction was completely routine and unremarkable.  Funds simply were being moved internally from the account of one Lehman-related entity to another.

---

[2] The time stamps on the Transfer Instructions are as of Greenwich Mean Time ("GMT").  For convenience and clarity, however, all times included in this background section with respect to the Transfer Instructions have been changed to reflect the local time in Norway, which is one hour ahead of GMT.

In accordance with LBCC's prior instructions, funds totaling 7,065,351.56 NOK were credited to the LBHI Account on September 15, 2008 at 12:54 p.m. CEST (or 6:54 a.m. in New York), approximately five hours after LBHI commenced its bankruptcy case. The processing of the separate transfers that led to this deposit originated during the prepetition period, but did not result in a credit of these funds to the LBHI Account until the postpetition period. This timing problem is the focus of the current dispute relating to the asserted right to setoff with respect to these funds. The key question is whether, for purposes of determining mutuality of obligations, the transfer should be deemed to have occurred as of the prepetition period when the Transfer Instructions were given or as of the postpetition moment in time when the funds were received and credited to the LBHI Account.

### *Discussion*

*11 U.S.C. § 553: Recognizing and Preserving the Right of Setoff*

Setoff originated in early Roman law and was later incorporated into the English legal system in 1705. *See* Sepinuck, *The Problems With Setoff: A Proposed Legislative Solution,* 30 Wm. & Mary L. Rev. 51, 51-52 (1988). Setoff became a recognized doctrine of United States bankruptcy law with the passage of the Act of 1800 and is preserved today in section 553 of the Bankruptcy Code. 5 COLLIER ON BANKRUPTCY P 553.LH (15th Ed. 2008). The central premise of the right of setoff is the adjustment of mutual obligations. "The right of setoff . . . allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A

pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf*, 116 U.S. 286, 289

(1995) (*quoting Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)).

The decision to allow setoff is within the sound discretion of the bankruptcy

court. *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 138 (2d Cir. 1998); *Bohack*

*Corp. v. Borden, Inc.*, 599 F.2d 1160, 1164 (2d Cir. 1979). Equity favors the right of

setoff as a means to avoid multiplicity of lawsuits, inconvenience, injustice and

inefficient use of judicial resources. *See In re Bennett Funding Group, Inc.*, 146 F.3d at

139. Accordingly, setoff ordinarily should be permitted "unless the court finds after due

reflection that allowance would not be consistent with the provisions and purposes of the

Bankruptcy Act as a whole." *Bohack Corp.*, 599 F.2d at 1165.

Although the Bankruptcy Code does not itself establish a right of setoff, section

553 of the Bankrupcty Code recognizes and preserves any right to setoff that exists under

applicable non-bankruptcy law, to the extent that the conditions of section 553 have been

satisfied. 11 U.S.C. §553; *Citizens Bank*, 116 U.S. at 289. The language of the

Bankruptcy Code is clear -- offset of mutual obligations involves a debt and claim, each

of which "arose before the commencement of the case under this title." 11 U.S.C.

§553(a). Thus, it is necessary to consider what rights of offset existed, if any, as to the

transferred funds before LBHI commenced its case.

As a threshold matter, the Court must first consider whether DnB NOR properly

could assert a setoff right under applicable non-bankruptcy law. "[A]ssuming no federal

common law right of setoff is concerned, [the applicable non-bankruptcy law is] 'the law

of the state where the relevant facts transpired.'" *In re Worldcom, Inc.*, 304 B.R. 611,

619 (Bankr. S.D.N.Y. 2004) (quoting *In re Westchester Structures*, 181 B.R.730, 740

(Bankr. S.D.N.Y. 1995)).  Under its terms, the Credit Facility is governed by English law.

In addition, the Terms and Conditions of the LBHI Account were documented in

England.  Accordingly, the laws of the United Kingdom are applicable to the underlying

transactions, and whatever right of setoff that otherwise exists with respect to claims

arising in favor of DnB NOR under the Credit Facility should be preserved in LBHI's

bankruptcy case, provided that the prerequisites of section 553 are met.  *See Citizens

Bank*, 116 U.S. at 289.

England's Insolvency Act of 1986 continues a venerable tradition that respects

and preserves the right of setoff by providing that "where before the commencement of

the bankruptcy there have been mutual credits, mutual debts or other mutual dealings

between the bankrupt and any creditor . . . , [a]n account shall be taken of what is due

from each party to the other in respect of the mutual dealings and the sums due from one

party shall be set off against the sums due from the other."  Insolvency Act, 1986 c. 45,

Part IX, c. IV, § 323 (Eng.).

Recognizing that applicable English law permits setoff under substantially the

same circumstances as those allowed under the Bankruptcy Code, the next inquiry is

whether the elements of setoff as prescribed by section 553 are met.  The prerequisites of

setoff include the following: "(1) the amount owed by the debtor must be a prepetition

debt; (2) the debtor's claim against the creditor must also be prepetition; and (3) the

debtor's claim against the creditor and the debt owed the creditor must be mutual."  *In re*

*BOUSA Inc.*, 2006 WL 2864964, *3 (Bankr. S.D.N.Y. 2006).  The amount owed by

LBHI under the Credit Facility quite obviously is a prepetition debt.  The challenge for

DnB NOR is to persuasively characterize the claim to funds in the LBHI Account as a prepetition claim.

DnB NOR has the burden to establish mutuality. *See In re Adelphia Commc'ns Corp.*, 2006 WL 1559437, *4 (S.D.N.Y. 2006) (finding that the movant has the burden of proving mutuality); *In re Manshul Constr. Corp.*, 2000 WL 1228866, *56 (S.D.N.Y. 2000) ("A creditor bears the burden of proving its right of setoff and must establish . . . [that] the debt and claim [are] mutual."). The difficulty here is that rights to cash deposited in the LBHI Account are contingent upon an intrabank transfer that was pending prepetition and completed postpetition.

The deposit of cash into a bank account creates a debtor-creditor relationship between the bank (as debtor) and the depositor (as creditor), at which time the depositor "parts with title to the funds in exchange for a debt owed to him by the bank." *In re Bennett Funding*, 146 F.3d at 139. Section 553 preserves the right of setoff for a mutual debt incurred by the creditor and the debtor. *Id*. In evaluating mutuality as an element of setoff, the Second Circuit has recognized that "the proper test of mutuality with respect to bank accounts is . . . an examination of the total circumstances of the establishment and maintenance of the account." *Id*. The Court of Appeals has also observed that "[t]he practices associated with banking transactions can be conclusive evidence of the legal effect of those transactions." *Delbrueck & Co. v. Mfrs. Hanover Trust Co.*, 609 F.2d 1047, 1051 (2d Cir. 1979).

The practices of DnB NOR with respect to the transfer of funds from one account to another are relevant to evaluating whether mutuality exists. The Terms and Conditions relating to the LBHI Account establish that any transfer instructions received subsequent

to the cut-off deadline of 3:00 p.m. CEST will be effected on the next business day.  The

Transfer Instructions, which contained a value date of September 15, 2008, were

received, respectively, on September 12, 2008 at 6:03 p.m. and 6:06 p.m. CEST, three

hours after the cut-off deadline prescribed by  the Terms and Conditions.  Consistent with

the Bank's stated practices, the transfer of funds, therefore, could be effected no earlier

than the next business day, September 15, 2008.  In addition, under the Terms and

Conditions, the party originating transfer or payment instructions for a transfer retains the

right to revoke or amend its instructions prior to 10:00 a.m. CEST.[3]

DnB NOR's contention that despite these limitations it nonetheless could have

completed the transfer prior to September 15, 2008 may be hypothetically possible, but is

not at all persuasive.  Such a transfer would be inconsistent with rights of LBCC to

change its directions to the Bank, as provided by the express language of the Terms and

Conditions.  Moreover, what could have been done in theory by DnB NOR to accelerate

execution of the transfer is irrelevant.  What matters is the actual conduct of the Bank

consistent with its own Terms and Conditions and ordinary course internal practices.  The

right to reverse or amend the Transfer Instructions made the transfer conditional as a

result of the built-in delay in execution.  Importantly, the transfer in fact was not

completed until after the expiration of the cancellation period, which occurred after LBHI

filed its bankruptcy petition.  Article 4 of the Uniform Commercial Code, while not

---

[3] There is an immaterial inconsistency in the positions of the parties as to the outside time limit for reversing the transfer.  For purposes of timing, the Court has treated 10:00 a.m. CEST as the deadline for reversing the transfer, but DnB NOR has stated in its papers that LBCC had the ability to reverse the Transfer Instructions until noon.  The timing, in fact, is irrelevant, as no change in the Transfer Instructions was ever issued by LBCC.  In addition to the timing discrepancy, there is a lack of clarity as to the precise means that were used in implementing the transaction.  The Court notes that papers filed by the Committee identify a financial intermediary known as SWIFT as the means for implementing the transfer from LBCC to LBHI.  In the end, the role played by this intermediary is of no importance to the conclusions reached in this decision.

applicable to transfers within a foreign institution such as DnB NOR, lends support to this determination that the transfer occurred postpetition. *See* U.C.C. § 4A-211 ("A canceled payment order cannot be accepted.  If an accepted payment order is canceled, the acceptance is nullified and no person has any right or obligation based on the acceptance.  Amendment of a payment order is deemed to be a cancellation of the original order . . . ."). The question remains, however, as to whether the Transfer Instructions themselves might be sufficient to give rise to a prepetition claim that may be subject to setoff.

This Court, in an earlier decision regarding setoff, has stated that "[f]or purposes of setoff, a debt arises when all transactions necessary for liability have occurred, regardless of whether the claim was contingent when the petition was filed." *In re BOUSA Inc.*, 2006 WL 2864964, at *3.  In *In re BOUSA*, the debtor argued lack of mutuality as a bar to offset of amounts payable by certain agencies of the federal government, contending that the judgment fixing and liquidating the claim in the Court of International Trade did not occur until years after the commencement of its bankruptcy case. *Id.*  This Court held that the postpetition litigation determined the amounts due, but the fixing of the claim did not impact mutuality, because all acts giving rise to liability arose before the petition date.  Accordingly, amounts payable to BOUSA by the government were subject to offset by prepetition amounts owed by BOUSA. *Id.* at *4. The issue here, therefore, is whether all transactions giving rise to liability arose before the time of filing of the bankruptcy petition.  The analysis requires a review of the contingencies applicable to the transfer of funds.

Under English law and the U.C.C., there appears to be no relevant distinction between interbank and intrabank transfers in determining whether a funds transfer is complete. *See Royal Products Ltd. v. Midland Bank*, [1981] 2 Lloyd's Rep. at 198 (summarizing the effect of an instruction given by plaintiff to transfer funds from its account in one bank to another of its accounts in a different bank, stating that it is "a banking operation, of a kind which is often carried out internally, . . . within the same bank or between two branches of the same bank and which, at least from the point of view of the customer, is no different in nature or quality when . . . it is carried out between different banks"); U.C.C. § 4A-104, cmt. 1 (applying the definition of a funds transfer to both interbank and intrabank transfers).

DnB NOR is unable to overcome a truth that is plainly inconvenient to its argument and that is impossible to explain away -- the intrabank transfer to the LBHI Account was not completed prepetition. That transfer involved more than the passage of time or a mere ministerial act and impacted different customers of the Bank with clearly distinct, separately numbered accounts. DnB NOR needed to take action and formally accept the Transfer Instructions as a necessary condition to complete the transfer. *See, e.g., Delbrueck & Co.,* 609 F.2d at 1051 (finding that, analogous to the "finality of checks once 'accepted,'" an electronic transfer, once accepted, was irrevocable); *Springfield Casket Co., Inc.*, 21 B.R. 223, 228 (Bankr. S.D. Ohio 1982) (stating that "[p]ostpetition setoff by a bank on the basis of the debtor's checking account . . . may only be accomplished to the extent that deposit in the account had been 'cleared' and paid to the bank as of the date of the petition."); *Momm v. Barclays Bank International Ltd.*, [1977] Q.B. 790, 803 (establishing that pursuant to English law, transfers of funds are complete

when instructions to credit the account are accepted "and computer processes for doing so are set in motion"); U.C.C. § 4A-104 ("A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order."). Acceptance of funds transfers requires that the funds be deposited to the beneficiary's bank and made available to the beneficiary.

DnB NOR asserts that all that was required to complete the transaction was "the need for a book entry and the passage of time." That book entry, however, was a critical condition to the effective transfer of the funds in question. Pending the completion of the transfer, the funds were not property of LBHI's estate and were not available for setoff purposes. Acceptance and completion of the funds transfer did not occur until after LBHI had filed for bankruptcy. Thus, in contrast to the circumstances presented in *In re BOUSA*, DnB NOR has not shown the requisite mutuality that is necessary to effectuate setoff under section 553 of the Bankruptcy Code.[4]

The Court's conclusion regarding mutuality is bolstered by precedent interpreting payment by check for purposes of sections 547 and 549 of the Bankruptcy Code. The relevant transfer occurs when the check is honored, not when it is delivered. *See Barnhill*, 503 U.S. at 400-01 (stating that "until the moment of honor the debtor [remained in] full control over the disposition of the account[,] . . . in particular because the debtor in this case retained the ability to stop payment on the check until the very last"); *In re Ottoman's, Inc.*, 2002 WL 1011326, at *1-2 (finding that under section 549,

---

[4] Moreover, DnB NOR's attempt to analogize the trust and payment agreements in *In re United Air Lines, Inc.* is unpersuasive. The agreements in *In re United Air Lines, Inc.* were not revocable by the debtor and provided no discretion to the bank, obligating the bank to pay the debtor once the debtor completed the work and submitted a reimbursement request. 438 F.3d 720, 730 (7th Cir. 2006). In contrast, because the Terms and Conditions established that the Transfer Instructions were revocable by LBCC, DnB NOR was not instructed to credit the LBHI Account until after the cancellation period had expired. Furthermore, the Seventh Circuit limited its holding to the specific facts of that case. *Id.*

reliance on the date of receipt, rather than the date of honor "would create a safe harbor, unintended by Congress, for checks delivered before the commencement of a bankruptcy case and honored after the petition date because the payment would not be recoverable as a preference or a post-petition transfer").

Whether by means of honoring checks or crediting the electronic transfer of funds, funds must be traceable to an identified account as a prepetition deposit before such funds can be available for setoff. *See In re Keather*, 208 B.R. 406, 415 (Bankr. S.D. Ohio 1997) (noting that "it is clear that the right of setoff cannot exist in postpetition deposits."); *In re Springfield Casket Co., Inc.*, 21 B.R. 223, 228 (Bankr. S.D. Ohio 1982) (stating that "[i]n the context of bankruptcy, postpetition debts may not provide the basis for setoff because mutuality ceases upon the filing of the bankruptcy estate."); *In re Cloverleaf Farmer's Co-Operative*, 114 B.R. 1010, 1018 (Bankr. D.S.D. 1990) (holding that a creditor cannot setoff against funds "unless the funds to be set off are in existence in a location where the creditor may effect setoff"). DnB NOR strains to characterize the contemplated transfer of funds as the equivalent of a completed transfer. That effort fails for the obvious reason that funds can only be in one account at a time, and at the time LBHI commenced its case, the funds were held in the account of LBCC.


*Cash Management Procedures Should Be Observed Strictly*

The transfer from one account to another also has consequences for creditors that are looking to the assets of a particular debtor. From the beginning of LBHI's bankruptcy case, parties in interest have been quite vocal in expressing concern as to the possible impact on recoveries of transfers made from the account of one Lehman-related

14

entity to another. The current record fails to provide any explanation concerning the reason that LBCC initiated the transfer of funds to LBHI, the consequence of the transfer (other than as it relates to the setoff question) or whether the transfer either satisfies or gives rise to an intercompany claim. The Court also does not know whether the transfer is an example of ordinary course prepetition cash management procedures or represents an isolated transaction. What is apparent, however, is that creditors (other than DnB NOR) having claims against LBCC and LBHI may be potentially harmed if DnB NOR is permitted to exercise setoff unless the Bank has the clear legal right to do so.

The Court is also concerned about the broader implications of DnB NOR's position regarding setoff. The Bank argues for what amounts to a virtual right of setoff arising out of the fact that the funds were located within the Bank's accounting system before the bankruptcy and all steps needed to cause the funds to be transferred were in place prepetition. The problem with that approach is that it overlooks the fact that the funds remained in the account of LBCC as of the filing of the LBHI bankruptcy petition.

Customers often move their cash liberally from account to account as part of a centralized cash management system. Such transfers are common practices for managing the financial affairs of large businesses throughout the world. Given that reality, it is appropriate that there should be a bright line test for determining which member of an affiliated group holds and has the right to disburse funds at the point when a cash payment is to be made or a transaction is ready to close. The system depends on cash being available in the right account when funds are needed. Similarly, mutuality requires that funds must be held in a specified borrower's account prior to commencement of that borrower's bankruptcy in order for a lender to be able to exercise the right of setoff.

Proper alignment of mutual obligations is required.  It is not good enough for funds deposited or otherwise floating elsewhere within the bank to be on the verge of being transferred to the right account.  There is an absurdity to the notion of funds being almost on deposit.  Funds need to be accounted for properly and can only be in one account at a time.

This proposition is supported by experience in the LBHI case.  The LBHI cash management system, as it functioned prepetition, was extraordinarily complex and involved the regular movement of vast sums among affiliated entities.  That system was disrupted and most intercompany transfers came to a halt when LBHI filed for bankruptcy.  Creditors of different entities have taken steps to preserve and protect their rights against LBHI and its affiliates and have paid special attention to the manner of accounting for funds transferred between these affiliates.  These creditors have been diligent in their efforts to segregate and account for the assets of each estate for the protection of separate creditor constituencies.  *See Cash Management Order* [ECF Doc. # 1416].  This concern for proper accounting treatment and for the preservation of intercompany claims within the context of the Cash Management Order recognizes that the transfer of funds between accounts may have a material impact on creditor recoveries.  Given this background, it is most important that setoff only be authorized under circumstances when it is clearly appropriate to do so.

### *Conclusion*

Global finance depends upon reasonable certainty and predictability, particularly in matters as basic as determining when funds are available to a bank's depositor.  The

funds in question were not credited to the LBHI Account until after LBHI commenced its

bankruptcy.  The electronic transfer of funds is a process, but the transfer only becomes

effective as of a particular instant.  In this case, that instant occurred after LBHI had

become a debtor-in-possession in this Court, and at the point in time when mutuality as to

the transferred funds could no longer be asserted credibly.  The parties are directed to

settle an order consistent with this decision.

      SO ORDERED.


Dated: New York, New York      _____*s/ James M. Peck*_____
      May 12, 2009            JAMES M. PECK
                  United States Bankruptcy Judge