**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| **LEHMAN BROTHERS HOLDINGS INC., *et al.*,** | : | **08-13555 (JMP)** |
| **Debtors.** | : | **(Jointly Administered)** |

**ORDER PURSUANT TO SECTIONS 105 AND 363 OF
THE BANKRUPTCY CODE AND FEDERAL RULE OF
BANKRUPTCY PROCEDURE 9019 AUTHORIZING
LEHMAN COMMERCIAL PAPER INC. TO SETTLE DISPUTE
WITH THE METROPOLITAN LIFE INSURANCE COMPANY**

Upon the motion, dated March 2, 2009 (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI"), Lehman Commercial Paper, Inc. ("LCPI") and their affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authorization and approval of the Settlement substantially consistent with a term sheet annexed to the Motion as Exhibit A (the "Initial Term Sheet"); and the Debtors and The Metropolitan Life Insurance Company ("MetLife") having made certain non-substantive changes to the Initial Term Sheet to deal with events that have transpired since the Motion was filed, which changes are reflected in the term

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

sheet annexed hereto as Exhibit A (the "Term Sheet"); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel to MetLife; (vii) Bank of New York; and (viii) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Term Sheet is approved, and the Debtors are

authorized enter into the Settlement and to consummate all of the transactions contemplated thereby, including but not limited to, the amendment of the Transaction Documents on terms substantially consistent with the Term Sheet; and it is further

ORDERED that the Debtors are authorized to execute and deliver such assignments, conveyances, and other documents, and instruments of transfer and to take such other actions as may be reasonably necessary to consummate the Settlement; and it is further

ORDERED that if an "Event of Default" under either of the Trusts or any of the Transaction Documents occurs after the effective date of the Amendment, the pursuit by MetLife of its remedies in respect of such Trust or Trusts or such Transaction Documents shall not constitute a violation of the automatic stay in any of the Debtors' cases, provided, however, that nothing contained herein shall otherwise affect the applicability of the automatic stay, to the extent MetLife asserts claims or pursues remedies (i) against LBHI arising from the Guarantees or (ii) against Lehman Brothers Special Financing Inc. arising from any swap agreements entered into with the Trusts; and it is further

ORDERED that the Debtors shall file the final form of the Amendment with the Court and provide notice to all parties in interest in accordance with the Amendment Procedure set forth in the Motion; and it is further

ORDERED that all parties in interest shall have ten (10) days within which to file an objection to the Amendment; and it is further

ORDERED that if no objections are timely filed, then the Amendment shall be deemed substantially consistent with the Term Sheet and the Settlement

described in the Motion and approved hereby; if an objection is timely filed, then a hearing will be held and the Court will determine whether the Amendment is substantially consistent with the Term Sheet and should be approved; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: New York, New York
May 13, 2009

*s/ James M. Peck*
UNITED STATES BANKRUPTCY JUDGE

# Exhibit A

Term Sheet

**VFT 2007-1 and VFT 2008-1**
**Basic Restructuring Term Sheet**

**VFT 2008-1**

* On or before the filing of a motion supporting these restructuring terms, all cash held (net of fees and expenses of MetLife and Collateral Trustee payable pursuant to the Collateral Trust Agreement) to be swept to VFT 2008-1 to be used for the contemporaneous prepayment of the Notes issued by VFT 2008-1 (the "2008 Notes"), except for amounts of previously-received revolving loan payments that are agreed to be available for future revolving loan advances (which held amounts, as of December 31, 2008, are equal to $4,127,200.88 (the "Revolver Paydown Amount")).

* LCPI will direct $20,000,000 of its Intergen NV open trades, at a price of 85.00, and $485,288.46 of Dresser Inc. first lien term loan at a price of 96.00, when settled, to VFT 2008-1 for application to the 2008 Notes.

* Maturity of June 30, 2010.

* Interest accrual and payment:

| | Current Pay | PIK | Total Coupon |
|---|---|---|---|
| Contract rate | L+250 | L+200 | L+450 |

Payable quarterly on each scheduled interest payment date as set forth in existing contracts.
Interest accrues for January 2009 at L+250; thereafter at contract rate.
Accumulated PIK to be paid at maturity on June 30, 2010

* Irrevocably instruct administrative or paying agents to direct all payments of P&I and fees (including, without limitation, all prepayments and prepayment premiums, and all waiver, amendment, and commitment fees) to Collateral Trustee.

* Portfolio Management: On a periodic basis, both parties will review term loans for possible sale:

    - If both parties agree that a loan shall be sold then a sale will be executed within 45 days (at a prevailing market rate) with closing to occur in normal course.

    - If both parties do not agree then the determination shall be made as follows:

        - If the outlook by both rating agencies (Moodys and S&P) is negative, then a sale shall be executed within 45 days (at a prevailing market rate) with closing to occur in normal course;

        - If the outlook by one agency shows negative and the other is positive or stable, then a three party discussion will ensue. The three parties, MetLife, Lehman and Houlihan will discuss and vote on a course of action with 2 out of 3 deciding the outcome. If the outcome is "sell," then a sale will be executed as noted above. If the outcome is a "hold," then all parties agree to revisit the decision on a frequent basis.

- All loan sales are subject to any applicable contractual restrictions, subject to section 365 of the Bankruptcy Code and any other provisions of applicable law.

* Cash flow from Collateral liquidations and other funds received to be used, after payment of fees and expenses of MetLife and the Collateral Trustee pursuant to the Collateral Trust Agreement, for prepayment of 2008 Notes as follows:

Term loans:
100% of sale proceeds used to reduce outstanding note balance.
100% of principal paydowns and any amendment/waiver fees with respect to Collateral used to reduce outstanding 2008 Note balance.
Interest received from Collateral used to fund interest payments on 2008 Notes.

Revolving loans:
Maximum aggregate balance frozen at sum of aggregate balance of revolving loans as of 12/31/08 plus the Revolver Paydown Amount (the "Maximum Revolver Balance"). No further fundings above the Maximum Revolver Balance. Permanent principal reductions of underlying collateral used to pay down note balance.

Incremental pay downs and contractual fee payments remain in trust to fund potential future draws back to the Maximum Revolver Balance. For the avoidance of doubt, VFT 2008-1 shall have no obligation to fund aggregate revolving loan obligations beyond the Maximum Revolver Balance. Any reduction in, or termination of, a revolving loan commitment shall result in the release of any cash reserved for funding such loan to be used for the simultaneous prepayment of the 2008 Notes.

* Best efforts to deliver to MetLife copies of all reports, documents, instruments, instructions, notices, certificates and all other communications from loan obligors and administrative agents prior to closing and on an ongoing basis (such requirement to exclude materials prepared internally by Lehman).

* Additional issues relating to underlying Collateral:

Term Loans:
Assignments must be executed and delivered to the Collateral Trustee in escrow at the Closing, on LSTA-based forms to the extent applicable. Assignment shall be subject to any applicable contractual restrictions, subject to section 365 of the Bankruptcy Code and any other provisions of applicable law. Escrow, by its terms, shall provide that such assignments shall be released and be effective upon the direction of MetLife following the occurrence of an Event of Default and three business days' prior written notice to LCPI and the Creditors' Committee, without any further consent of LCPI or any other party.

Revolvers:
LCPI continues to work on terminating all unfunded revolver commitments; for the avoidance of doubt, VFT-2008 funding obligations no greater than any reductions after December 31, 2008 in the outstanding balance of such loan by non-permanent paydown/reduction.

Revolvers & Term Loans:
LCPI retains the right to negotiate with underlying borrowers on non-material amendment requests.

All material amendment/waiver requests must be approved by both LCPI and MetLife.
LCPI to have right of first refusal on asset sales.
Sales of loans where the borrower is in bankruptcy or has an unremedied payment default to be subject to the sale process identified above under the heading "Portfolio Management."
For each calendar month after December 31, 2008, LCPI shall use its best commercial efforts to provide a monthly reconciliation as soon as possible after the end of such calendar month but in any event within 30 days.

**VFT 2007-1**

* Upon or before filing of motion supporting these restructuring terms, all cash held (net of fees and expenses of MetLife and Collateral Trustee payable pursuant to the Collateral Trust Agreement) to be swept to VFT 2007 to be used for the contemporaneous payment/prepayment of the 2007 Notes, including $1,711,602.38 received in respect of the Innkeepers loan in or around October 2008, but excluding the additional $5,759,677.15 received in respect of the Innkeepers loan prior to September 15, 2008, which funds will be retained by LCPI and will be delivered to VFT 2007-1 for the prepayment of the 2007 Notes upon the sale of the Innkeepers loans (and such amount shall in any event be paid to VFT 2007-1 no later than the maturity of the 2007 Notes and/or the 2008 Notes, whichever is sooner).

* 2007 Notes to bear interest at LIBOR + 350bps beginning January 1, 2009 through September 30, 2009; LIBOR + 450 from October 1, 2009 through December 31, 2009; LIBOR + 700 thereafter.

* Principal and other amounts paid on the underlying real estate loans, and other amounts received by VFT 2007, shall be used for interest payments and paydowns of the 2007 Notes.

* Irrevocably instruct servicing agents to direct all payments of P&I and fees (including, without limitation, prepayments, casualty and condemnation proceeds and sale proceeds, and all waiver, amendment, and commitment fees) to Collateral Trustee. A shortfall in payments as of any quarterly payment date, unless made up by Lehman, shall constitute a default.

* Portfolio Management:

- A mortgage note and related rights constituting collateral securing the 2007 Notes may be sold at the option of LCPI at a price of at least 90% of the par value of such mortgage note, if at the closing of such sale the 2008 Notes are secured by commercial loans constituting collateral that have an agreed market value equal to at least 100% of the outstanding amount of the 2008 Notes and all proceeds from the sale of such mortgage note are delivered directly to the Trust and are used to prepay the 2007 Notes (or, to the extent that the 2007 Notes are no longer outstanding, to prepay the 2008 Notes); and

- A mortgage note and related rights constituting collateral securing the 2007 Notes may be sold at the option of LCPI at a price of at least 100% of the par value of such mortgage note irrespective of the value of the collateral securing the 2008 Notes so long as all proceeds from the sale of such mortgage note are delivered directly to the Trust and used to prepay the 2007 Notes (or, to the extent that the 2007 Notes are no longer outstanding, to prepay the 2008 Notes).

    - Notwithstanding the foregoing and for the avoidance of doubt, the amount in U.S. Dollars that must be paid to the Trust with respect to a proposed sale of a mortgage note constituting UK Collateral shall be equal to the sale price

(expressed as a percentage of par) multiplied by the par value of such mortgage note (in British pounds) multiplied by its US Dollar equivalent at the original funding rate (i.e., 1.0 British pound to 2.0625 USD).

- LCPI may contribute its own (non trust-related) funds if needed to supplement a purchase price so that it meets the above criteria.
- LCPI may purchase a mortgage note for its own account, subject to the foregoing restrictions; provided that if LCPI subsequently sells such a mortgage note, or borrows against such mortgage note, in either case in an amount more than the sale price received by the trusts from LCPI in such sale, then any excess amounts shall be immediately remitted to the trusts as a prepayment of the Notes.
- LCPI will notify the Trust and MetLife of its intention to market any collateral and provide a copy of any proposed terms of sale to MetLife.

* Cash flow from Collateral liquidations, prepayments, and other funds received to be used, after payment of fees and expenses of MetLife payable pursuant to the Collateral Trust Agreement, for prepayment of the 2007 Notes.

* Copies of all reports, documents, instruments, instructions, notices, insurance policies, certificates and all other communications from mortgage obligors or others must be delivered promptly to MetLife prior to closing and on an ongoing basis, including reports of asset and market value of the 2007 Collateral that are obtained by Lehman (such requirement to exclude materials prepared internally by Lehman).

* Maturity date of December 31, 2009; provided however, if Lehman shall have delivered on or before December 15, 2009, a current appraisal from a mutually-acceptable nationally-recognized firm of appraisers for each mortgage note constituting VFT 2007-1 Collateral, which in each case substantiates both (a) an aggregate loan-to-value ratio with respect to all mortgage notes of no greater than 0.70 (determined as a fraction, the numerator of which is the aggregate outstanding balance of the 2007 Notes, and the denominator of which is the appraisal value of all mortgage notes constituting VFT 2007-1 Collateral plus any cash Collateral), and (b) an individual loan-to-value ratio with respect to each mortgage note of no greater than 0.80 (determined as a fraction, the numerator of which is the outstanding balance of the 2007 Notes attributable to such mortgage note, and the denominator of which is the appraisal value of such mortgage note), then the maturity date of the 2007 Notes shall be extended to June 30, 2010, provided however, if either of the provisions of clause (a) or (b) above are not satisfied, LCPI may contribute cash as Collateral to VFT 2007-1 and in so doing, in the case of the loan-to-value ratios of the underlying loans, may specify that such cash shall be deemed to reduce the numerator for individual loans and in amounts specified by LCPI for the purposes of calculating such loan-to-value ratio.

* LCPI retains the right to negotiate with underlying borrowers on non-material amendment requests; all material amendment/waiver requests must be approved by the Trust/MetLife

* All assignments/notarizations, including those necessary or desirable to make assignments recordable, to be executed and delivered contemporaneously with agreement of the above terms.

* It is a condition (the "LCMC Condition") to the obligation of MetLife to execute and deliver documentation and consummate the restructuring that all issues related to the Trust's rights in and to the mortgage loans sold by Lehman Commercial Mortgage Conduit Limited ("LCMC") to LCPI, pursuant to that certain Loan Sale Agreement, dated as of November 30, 2007, including the funds deriving therefrom (the "English Assigned Assets"), shall have been resolved such that LCMC has no rights to the English Assigned Assets. The determination of whether LCMC has any rights to the English Assigned Assets is subject to the approval of MetLife.

**Applicable to both VFT 2007 and VFT 2008:**

* MetLife will waive any prepayment penalties on the Notes.

* No withdrawals of collateral/cash by Lehman.

* Treatment of swaps and currency issues to be discussed and resolved.

* VFT 2007 and VFT 2008 are cross-defaulted, and the proposal with respect to VFT 2007 and VFT 2008 is joint not separate and represents the concurrent resolution of issues with both trusts.

* All pre-existing Defaults and Events of Default under VFT 2007-1 and VFT 2008-1 Note Purchase Agreements to be waived at execution and delivery of documentation evidencing the restructuring, and acceleration of Notes to be rescinded at such time. Documentation of restructuring terms to be evidenced primarily by amendments to existing documentation. Amendments will include modification of Events of Default to eliminate loan to value covenant, bankruptcy defaults, defaults caused by defaults in respect of the swap agreements, and any other Events of Default inconsistent with the terms hereof. Documentation shall include reasonable representations, warranties and covenants from Lehman and the Trusts effective on and as of the effective date of the restructuring.

* From the date of filing of the motion supporting these restructuring terms until the earlier of the effective date of the restructuring and May 31, 2009, Default Interest shall only apply in the event that a payment Default arises after the date hereof and shall only apply to the amount of any such payment Default; thereafter Default Interest shall accrue in accordance with the Note Purchase Agreements and shall only apply to the amount of any payment that is not paid when due (whether by schedule, at maturity or upon acceleration).

* Prior to the payment of principal on the 2007 Notes, VFT 2007 will pay to VFT 2008 $1,323,621.01, which represents the principal proceeds received on VFT 2008 Collateral that were allocated to VFT 2007 to make interest payments on the 2007 Notes on December 31, 2008.

* Any deficiency at maturity/acceleration of one VFT to be added to balance of other VFT's secured note obligations. Any excess Collateral (including cash) after payment of either VFT's notes to be held as Collateral for the other VFT's notes until all notes are paid in full, provided that in the case of cash (or subsequent sales of such Collateral yielding cash), such amounts shall be contemporaneously used to prepay the notes.

* All guaranty claims against Lehman entities remain.

* Agreement subject to customary documentation satisfactory to MetLife and LCPI; parties agree to work quickly and diligently to complete negotiations, documentation and closing.

* Lehman to use commercially reasonable efforts to gain bankruptcy court and committee approvals. All required or desirable consents and approvals (including those of bankruptcy court and committee) must be received from all required parties prior to closing.

* If an Event of Default under either VFT 2007-1 or VFT 2008-1 occurs, Lehman will not allege that the automatic stay applies with respect to the pursuit by MetLife of its remedies under such facilities, and the order approving the settlement/restructuring shall explicitly provide that the exercise of any such remedies shall not constitute a violation of the automatic stay in any of the debtors' cases, provided, however, that nothing contained herein shall otherwise affect the

applicability of the automatic stay, to the extent MetLife asserts claims or pursues remedies (i) against Lehman Brothers Holdings Inc. arising from that certain Guarantee, dated as of November 30, 2007, or that certain Guarantee, dated as of May 9, 2008, or (ii) against Lehman Brothers Special Financing Inc. arising from any swap agreements entered into with VFT 2007-1 or VFT 2008-1.

* Fees and expenses of MetLife counsel and advisors to be paid from Collateral proceeds as directed by MetLife.

* For the avoidance of doubt, violation of representations, covenants or other terms of restructuring documentation is a default.

* The parties will use commercially reasonable efforts to conclude documentation as soon as practicable. While the motion in support of this term sheet, and the subsequent documentation process, is in progress, and until the earlier of the effectiveness of such documentation and September 30, 2009, each of LCPI and MetLife agrees that it will abide by the terms of the term sheet (including, without limitation, with respect to the payment terms hereof), and MetLife agrees that it will not take any action to exercise remedies in respect of any pre-existing Defaults or Events of Default.

* Notwithstanding anything to the contrary contained herein, if (a) approval of this term sheet or the documentation hereof is denied by the bankruptcy court or the unsecured creditors' committee, or (b) this term sheet is not approved by the bankruptcy court and the unsecured creditors' committee by May 31, 2009, then in either case all parties will be returned to the status quo ante concurrently with such denial or such date, as the case may be, Met Life will have no further obligation to forbear, and all parties will have the right to assert all rights, remedies and defenses (including without limitation, Lehman's right to assert that the stay applies).

* If the parties have not executed the documentation and consummated the restructuring contemplated by this Term Sheet by September 30, 2009, then, unless otherwise mutually agreed upon by LCPI and MetLife, all parties will be returned to the status quo ante concurrently with such date, including without limitation as a result of the failure of the LCMC Condition to occur, Met Life will have no further obligation to forbear, and all parties will have the right to assert all rights, remedies and defenses (including without limitation, Lehman's right to assert that the stay applies).

* Nothing in this term sheet or the amendments effecting the same shall be deemed to create an administrative claim against the debtors.