HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
James B. Kobak, Jr.
Daniel S. Lubell
Jeffrey S. Margolin

Attorneys for James W. Giddens, Trustee for
the SIPA Liquidation of Lehman Brothers Inc.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman
Richard A. Morrison

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                                                :
In re                                                           :   **Chapter 11 Case No.**
                                                                :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :   **08-13555 (JMP)**
                                                                :
                        Debtors.                            :   **(Jointly Administered)**
                                                                :
                                                                :
----------------------------------------------------------------x
                                                                :
In re                                                           :   **Case No. 08-1420 (JMP) SIPA**
                                                                :
**LEHMAN BROTHERS, INC.,**                      :   **SIPA Liquidation Proceeding**
                                                                :
                        Debtor.                             :
                                                                :
----------------------------------------------------------------x

**STIPULATION AND ORDER BETWEEN LEHMAN BROTHERS HOLDINGS INC.,
JAMES W. GIDDENS AS TRUSTEE FOR LEHMAN BROTHERS INC., BARCLAYS
CAPITAL INC., AND BP 399 PARK AVENUE LLC WITH RESPECT TO LEASED
PREMISES AT 399 PARK AVENUE, NEW YORK, NEW YORK AND THE TRANSFER
OF FURNITURE, FIXTURES AND EQUIPMENT THEREIN AND RELATED
MATTERS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

This stipulation and agreed order (the "Stipulation") is entered into by and among

Lehman Brothers Holdings Inc. ("LBHI" and, together with its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession, the "Debtors"), James W.

Giddens, as trustee for the SIPA Proceeding of Lehman Brothers Inc. (the "SIPA Trustee"),

Barclays Capital Inc. ("Barclays") and BP 399 Park Avenue LLC ("Landlord," and together with

LBHI, the SIPA Trustee and Barclays, the "Parties").

## RECITALS

A.      On September 15, 2008 and periodically thereafter, LBHI and certain of

its subsidiaries commenced with this Court voluntary cases (the "Chapter 11 Cases") under

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Chapter 11 Cases

have been consolidated for procedural purposes only and are being jointly administered pursuant

to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The

Debtors are authorized to operate their businesses and manage their properties as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.      On September 16, 2008, certain of the Debtors, Lehman Brothers Inc.

("LBI"), and Barclays entered into an Asset Purchase Agreement (as amended and clarified from

time to time, the "Purchase Agreement").

C.      On September 19, 2008 (the "LBI Petition Date"), the Honorable Gerard

E. Lynch, Judge of the United States District Court for the Southern District of New York,

entered the Order Commencing Liquidation (the "LBI Liquidation Order") pursuant to the

provisions of the Securities Investor Protection Act ("SIPA") in the case captioned Securities

Investor Protection Corporation v. Lehman Brothers Inc., Case No. 08-CIV-8119 (GEL).

D.      The LBI Liquidation Order: (i) appointed the SIPA Trustee for the

liquidation of the business of LBI pursuant to section 78eee(b)(3) of SIPA; (ii) appointed counsel

to the SIPA Trustee pursuant to section 78eee(b)(3) of SIPA; and (iii) removed this case to this

Court pursuant to section 78eee(b)(4) of SIPA.

E.      On September 20, 2008, the Court entered an order approving the

Purchase Agreement and the various transactions contemplated therein in the Chapter 11 Cases

(Docket No. 258 of the Chapter 11 Cases)[1].  On September 20, 2008, the Court entered in the

SIPA Proceeding a concurrent Order Approving and Incorporating by Reference for the Purposes

of this Proceeding, an Order Authorizing the Sale of Purchased Assets and other Relief in the

Lehman Brothers Holdings Inc. Chapter 11 Proceedings (the "Sale Order," Docket No. 3 of the

SIPA Proceeding) thereby authorizing the SIPA Trustee to consummate the sale transaction on

behalf of LBI pursuant to the Purchase Agreement.

F.      LBI is the lessee under the unexpired lease of certain nonresidential real

property located on the 5th, 6th, 8th, 9th, 11th, 15th and 16th floors, the cafeteria on the concourse

level and the mailroom on the ground floor of the building located at 399 Park Avenue, New

York, New York (the "399 Leased Premises") under a lease dated October 1, 2001 between

Landlord, as successor in interest to Citibank, N.A., and LBI (as amended from time to time, the

"399 Lease").  The SIPA Trustee, as the administrator of LBI's estate, has the exclusive right to

either reject or assume the 399 Lease.  Barclays has rights under the Purchase Agreement to use

and occupy the Leased Premises as provided for therein.

G.      LBI is the sublessor under a certain sublease dated July 11, 2008 (the

"Brigade Sublease"), between LBI and Brigade Capital Management, LLC ("Brigade") for the

---

[1] Unless otherwise noted, all docket item references herein refer to the SIPA Proceeding.

16th floor of the 399 Leased Premises (the "Sublet Premises").  The Brigade Sublease is subject

to that certain Consent to Sublease, dated August 27, 2008, by and among LBI, Landlord and

Brigade (the "Landlord Consent").

   H.  On December 26, 2008, the SIPA Trustee filed an Application for an

Order Pursuant to Section 365(d)(4) of the Bankruptcy Code Extending Time to Assume or

Reject Unexpired Leases of Nonresidential Real Property.  (Docket No. 481).  On January 14,

2009, the Bankruptcy Court entered an Order Pursuant to Section 365(d)(1) of the Bankruptcy

Code Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property to

April 17, 2009 (Docket No. 560).  On April 13,2009, the SIPA Trustee filed a Notice of

Presentment of Stipulation and Order Between the Trustee and BP 399 Park Avenue LLC

Extending the Time to Assume or Reject Lease of Nonresidential Real Property at 399 Park

Avenue.  (Docket No. 967).  On April 21, 2009, the Bankruptcy Court entered an Order Between

the Trustee and BP 399 Park Avenue LLC Extending the Time to Assume or Reject Lease of

Nonresidential Real Property at 399 Park Avenue to April 23, 2009 (Docket No. 1009).

   I.  Pursuant to the Purchase Agreement, LBI and LBHI, as Sellers, sold to

Barclays all of their right, title and interest, in and to Furniture and Equipment (as that term is

defined in the Purchase Agreement), including all such Furniture and Equipment that is located

in those portions of the 399 Leased Premises occupied by Barclays (such Furniture and

Equipment, together with all other furniture, fixtures, furnishings, equipment and leasehold

improvements owned by LBI, LBHI or Barclays located in the 399 Leased Premises as of the

date hereof, but excluding, for the purposes of this Stipulation, the Excluded FF&E (as defined

below), the "FF&E").  The "Excluded FF&E" shall mean (i) any equipment or furniture leased to

LBHI, Barclays or LBI by an unaffiliated party, (ii) any and all computer and computer-related

hardware, networks and peripherals, including, but not limited to, information and communication systems, computers, file servers, facsimile servers, scanners, color printers, laser printers and networks, and copiers and other reprographic equipment, telephones and telephone numbers, telecopy machines and other telecommunication equipment (other than cables and wires that are installed in the building) located in the 399 Leased Premises, and (iii) up to one hundred fifty (150) office chairs from the Furniture and Equipment sold to Barclays under the Purchase Agreement  (which, for the avoidance of doubt, will only include office chairs).

J.    Barclays wishes to continue to use and occupy portions of the 399 Leased Premises through and including April 30, 2009 to the same extent and for the same purposes as Barclays occupied and used such space immediately prior to the date hereof.  Barclays wishes to use and occupy the 6th floor, the 9th floor (other than the portion of the 9th floor being used and occupied by Trilantic Capital Management (formerly Lehman Merchant Banking)), the client dining rooms and associated kitchen on the 5th floor, the cafeteria on the Concourse Level and the mailroom (the "Barclays Premises") in the 399 Leased Premises from May 1, 2009 through and including June 22, 2009.

K.    LBI is, or has been, the lessee under those certain leases and the sub-lessor of the sublease of nonresidential real property identified on Schedule A to this Stipulation (collectively, the "LBI Leases" and individually, a "LBI Lease").  The various premises subject to the LBI Leases are referred to in this Stipulation as the "LBI Leased Premises."  Since the LBI Petition Date, the SIPA Trustee, as the administrator of LBI's estate, has had the exclusive right to either reject or assume and assign the LBI Leases.

L.    Pursuant to the terms of the Purchase Agreement, certain employees of Barclays are permitted to occupy and use certain portions of the 399 Leased Premises and the

LBI Leased Premises for the nine-month period after September 22, 2008, subject to the terms

and conditions of the Purchase Agreement.  In order to, among other things, provide for such use

of portions of the 399 Leased Premises and LBI Leased Premises by such Barclays employees as

well as certain LBHI employees and subsidiaries, (i) LBI has deferred exercising its right to

reject the 399 Lease and certain of the LBI Leases, and (ii) LBHI has paid all of the rent due and

owing under the 399 Lease and the LBI Leases during the period from the LBI Petition Date

through March 31, 2009.

        M.       Landlord has agreed to allow the SIPA Trustee to reject the 399 Lease as

of April 30, 2009, and to permit Barclays to continue to use and occupy the Barclays Premises

through and including June 22, 2009, subject to the terms and conditions contained herein.

        N.       In order to accomplish the rejection of the 399 Lease, and the occupancy

of the Barclays Premises through and including June 22, 2009, the Parties have negotiated this

Stipulation in good faith and at arms' length and desire that, subject to Bankruptcy Court

approval, it shall be binding on each of them.

## AGREEMENT

        IT IS THEREFORE STIPULATED, CONSENTED, AND AGREED, by and

among LBHI, the SIPA Trustee, Barclays and Landlord, subject to the terms and conditions set

forth herein, as follows:

        1.       Effective Date.  This Stipulation shall be binding on the Parties from the

date of its execution, but is expressly subject to and contingent upon its approval by the Court.  If

the Court does not approve this Stipulation, this Stipulation shall be null and void, provided,

however, that pending such Bankruptcy Court Approval, none of the parties shall take actions

inconsistent with the provisions of this Stipulation.

           2.     <u>Rejection of the Lease</u>.  The Landlord hereby consents to the extension of

the SIPA Trustee's time to assume or reject the 399 Lease under Section 365(d)(4) of the

Bankruptcy Code from April 24, 2009, to and including April 30, 2009.  This Stipulation hereby

constitutes "prior written consent of the lessor" under Section 365(d)(4)(B)(ii) of the Bankruptcy

Code and no further consent of the Landlord shall be required for such extension.  The 399 Lease

shall be rejected as of April 30, 2009.  Notwithstanding the rejection of the 399 Lease, pursuant

to section 365(d)(3) of the Bankruptcy Code, LBHI shall pay within ten (10) business days after

the date hereof the outstanding bills set forth on the attached <u>Schedule C</u> in an amount equal to

$132,907.73, less any amounts previously paid by LBHI to Landlord on account of such

outstanding bills which Landlord has not reflected as having been received on <u>Schedule C</u>,

representing payment in full for all obligations payable by LBI under the terms of the 399 Lease

that accrued from and after the LBI Petition Date and through April 15, 2009, and shall pay

timely, as and when billed, any and all other obligations payable by LBI under the terms of the

399 Lease for the period between April 16, 2009 and April 30, 2009 that have not yet been billed

by Landlord (collectively, the "<u>399 Pre-Rejection Obligations</u>"), subject to LBHI's or the SIPA

Trustee's right to dispute in good faith any such additional obligation.  LBHI's obligation to pay

399 Pre-Rejection Obligations shall not include any obligations (including, without limitation,

real property taxes) incurred or arising prior to the LBI Petition Date, regardless of when the bill

for payment may be received for such obligations.  Nothing in this Stipulation shall be

determinative of the validity of any 399 Pre-Rejection Obligations and all parties' rights are

expressly reserved with respect thereto.  After April 17, 2009, neither the SIPA Trustee nor

LBHI shall have any right to use or occupy any part of the 399 Leased Premises.  The Parties

agree that after April 30, 2009, Barclays shall not have access to or use of the Private Elevator as

defined in Section 15.02(c)(iii) of the 399 Lease or any other part of the 399 Leased Premises

other than the Barclays Premises and the common areas to the extent necessary for Barclays

employees and guests to access the Barclays Premises.  LBHI has, and will, maintain insurance

covering LBI as an insured and naming Landlord as an additional insured for the 399 Leased

Premises for its and LBI's benefit through April 30, 2009.

    3.  <u>LBI Pre-Rejection Obligations</u>.  LBHI shall pay timely, as and when

billed, any and all rent, charges, utilities, indemnity claims (to the extent such claims are covered

by insurance policies and to the extent of amounts paid by insurers on account thereof) and other

additional rent payable by LBI under the terms of each of the LBI Leases, including, without

limitation, any additional charges for common area maintenance, management fees, real estate

taxes, insurance, security, improvements, cure of mechanic's liens, alterations, repairs and other

actual out-of-pocket costs or obligations for or arising out of such use and occupancy

(collectively, the "<u>Carrying Costs</u>") to the extent payable by LBI under the applicable LBI Lease,

that may have accrued from and after the LBI Petition Date through the "LBI Termination Date"

with respect to each such LBI Lease as set forth on <u>Schedule A</u> to this Stipulation, but were not

billed by the respective landlord under each such LBI Lease or paid on or prior to the date hereof

(the "<u>LBI Pre-Rejection Obligations</u>"), regardless of when a bill is received therefor, subject to

LBHI's or the SIPA Trustee's right to dispute in good faith any such claim, charge or cost.  The

"LBI Termination Date" shall mean, with respect to each LBI Lease, the date as provided on

<u>Schedule A</u> attached hereto.  LBHI's obligation to pay LBI Pre-Rejection Obligations shall not

include any obligations (including, without limitation, real property taxes) incurred prior to the

LBI Petition Date or after the LBI Termination Date, regardless of when the bill for payment

may be received for such obligations.  Nothing in this Stipulation shall be determinative of the

validity of any LBI Pre-Rejection Obligations and all parties' rights are expressly reserved with

respect thereto.  LBHI acknowledges that in addition to its responsibility for the LBI Pre-

Rejection Obligations, LBHI maintained insurance naming LBI as an additional insured for each

LBI Leased Premises through the LBI Termination Date for each LBI Lease for its own and

LBI's benefit.  Barclays will be responsible to maintain the insurance required under the 399

Lease for the Holdover Period to the extent applicable to the Barclays Premises.

Notwithstanding anything to the contrary contained in this Stipulation, any breach by LBHI or

LBI of any of their obligations to each other with respect to an LBI Lease other than the 399

Lease shall not relieve the non-breaching party of any of its obligations under this Stipulation

with respect to the 399 Lease, the 399 Leased Premises or the Barclays Premises.

        4.     <u>Reservation of Landlord's § 502(b)(6) Claims</u>.  Landlord expressly

reserves, *inter alia*, any and all claims it may have against LBI arising out of the rejection of the

399 Lease and for unpaid obligations and defaults under the 399 Lease, that may have accrued or

arisen prior to the LBI Petition Date, and any prepetition indemnity claims of Landlord under the

399 Lease or the Landlord Consent, subject to section 502(b)(6) of the Bankruptcy Code (the

"<u>Rejection Claim</u>"); provided, however, that the SIPA Trustee reserves its right to object to

Landlord's Rejection Claim.  Notwithstanding the foregoing, Landlord hereby waives any

Rejection Claim it may have against LBHI, and LBHI shall have no obligation or liability to LBI

or the SIPA Trustee as a result of any Rejection Claim.

        5.     <u>Continued Use and Occupancy by Barclays</u>.  Landlord hereby permits

Barclays to use and occupy the Barclays Premises from May 1, 2009 through and including June

22, 2009 (or as may be earlier terminated by reason of a breach by the SIPA Trustee, LBHI or

Barclays of its obligations under this Stipulation, the "Holdover Term"), upon all the same terms

and conditions as provided in the 399 Lease, except as to rental amounts due thereunder, which

shall be payable solely as set forth herein, and any other modifications set forth herein.  In full

consideration therefor, (a) no later than three (3) business days after the date hereof, the SIPA

Trustee shall pay LBHI $1,670,336.13 and LBHI shall pay to Landlord 100% of the rent due and

owing for the month of April 2009 in the amount of $3,389,469.61, as such rent is set forth under

the terms of the Lease plus, within ten (10) business days after the date hereof, the 399 Pre-

Rejection Obligations billed through April 15, 2009 in the amount of $132,907.73 as provided in

Schedule C, less any amounts previously paid by LBHI to Landlord on account of such

outstanding 399 Pre-Rejection Obligations which Landlord has not reflected as having been

received on Schedule C, representing payment in full for all obligations payable by LBI under

the terms of the 399 Lease that accrued from and after the LBI Petition Date and through April

15, 2009 (without prejudice to Landlord's right to recover from LBHI, the 399 Pre-Rejection

Obligations that have not yet been billed for period between April 16, 2009 and April 30, 2009),

(b) within ten (10) business days after the date hereof, Barclays shall pay to Landlord $11,349.64

representing payment in full for freight elevator charges incurred by Barclays between the LBI

Petition Date and April 15, 2009, (c) on the first day of each calendar month during the Holdover

Term, beginning on May 1, 2009, the SIPA Trustee shall pay to Landlord rent in the amount set

forth in the "Monthly Total" column on Schedule B annexed hereto (the "Monthly Total"

amount set forth on Schedule B shall hereinafter be referred to as the "Monthly Holdover Rent"),

and (d) on the first day of each calendar month during the Holdover Term, beginning on May 1,

2009, Barclays and the SIPA Trustee shall each pay to Landlord $62,500.00 for use and

occupancy of the client dining rooms and associated kitchen located on the 5th floor of the 399

Leased Premises (the "Client Dining Fee").  From and after May 1, 2009, Barclays shall solely

be responsible to comply with all terms of the 399 Lease applicable to the use and occupancy of

the Barclays Premises (except that Barclays shall not be required to pay any rents, additional

rents, utilities, charges or expenses arising thereunder, which amounts are covered by the

Monthly Holdover Rent, except for charges for new or additional services specifically requested

by Barclays which the Landlord is not obligated to provide without additional charge under the

399 Lease or which have not been provided in the past), and the SIPA Trustee shall have no

further obligations or liability under the Lease whatsoever other than with respect to the Monthly

Holdover Rent, the SIPA Trustee's half of the Client Dining Fee and the Rejection Claim to the

extent allowed.  As an alternative remedy, and without prejudice, to the rights of Landlord below

in the event that Barclays does not vacate the Barclays Premises, in the condition required

hereunder, on or before June 22, 2009 (or earlier in the event of a termination under Paragraph 9

below), Landlord shall be entitled to payment from Barclays of an amount equal to 150% of the

Monthly Holdover Rent (the "Penalty Holdover Rent") solely to the extent the holdover is

attributable to Barclays.  If for any reason, the payment of rent due and owing for the month of

April 2009 as set forth in (a) above is not paid as required hereunder, Landlord retains all of its

rights under Section 365(d)(3) of the Bankruptcy Code. For the avoidance of doubt, with the

exception of payment of 100% of the rent due and owing for the month of April 2009 and the

399 Pre-Rejection Obligations, as described in Paragraph 2 and (a) above in this Paragraph 5,

LBHI shall have no obligation to LBI, Barclays or the Landlord for any other unpaid obligations

under the 399 Lease.  Further, for the avoidance of doubt, neither the 399 Lease nor any LBI Pre-

Rejection Obligations have been assigned to or assumed by Barclays.  From and after the date

11

hereof, including during the Holdover Term, Landlord may show all or any portion of the 399

Leased Premises to prospective tenants provided, however, that Landlord shall take

commercially reasonable efforts to avoid interfering with Barclays' operations.

      6.      <u>Transfer of FF&E Free and Clear</u>.  In consideration of Landlord's

agreement to permit Barclays to use and occupy the Barclays Premises until and including June

22, 2009 under the terms hereof, and for other good and valuable consideration, notwithstanding

anything in the Purchase Agreement to the contrary, each of the SIPA Trustee, LBHI and

Barclays hereby sells, assigns and transfers to Landlord all of its right, title and interest in and to:

(Y) effective on the expiration of the Holdover Term, all of the FF&E (excepting the FF&E

located in the Sublet Premises) located in the Barclays Premises on the date hereof, and (Z)

effective on May 1, 2009, all of the FF&E (excepting the FF&E located in the Sublet Premises)

in the remainder of the 399 Leased Premises on the date hereof.  (A) The SIPA Trustee

represents that, to the best of his knowledge, assuming LBHI and Barclays hold title to their

respective FF&E located in the 399 Leased Premises (other than the Sublet Premises), the SIPA

Trustee, LBHI, and Barclays individually and/or collectively hold title to the FF&E located in

the 399 Leased Premises (other than in the Sublet Premises).  (B) LBHI represents that, to the

best of its knowledge, assuming SIPA Trustee and Barclays hold title to their respective FF&E

located in the 399 Leased Premises (other than the Sublet Premises), the SIPA Trustee, LBHI,

and Barclays individually and/or collectively hold title to the FF&E located in the 399 Leased

Premises (other than in the Sublet Premises).  (C) Barclays represents that, to the best of its

knowledge, assuming the SIPA Trustee and LBHI hold title to their respective FF&E located in

the 399 Leased Premises (other than the Sublet Premises), the SIPA Trustee, LBHI, and Barclays

individually and/or collectively hold title to the FF&E located in the 399 Leased Premises (other

than in the Sublet Premises).  The Leased Premises and all FF&E (except the FF&E located in

the Sublet Premises) shall be surrendered to Landlord in substantially the same condition and

quantity as of the date hereof, ordinary wear and tear and damage or destruction by casualty

excepted.  To the extent that Barclays removes any of the office chairs that are part of the

Excluded FF&E (provided that in no event shall Barclays remove more than one hundred fifty

(150) office chairs), LBI shall deliver replacement office chairs of reasonably similar quality and

condition to the 399 Landlord within sixty (60) days after the expiration of the Holdover Term.

For the avoidance of doubt, in no event shall LBI be required to deliver new office chairs.  LBHI

shall cooperate with, and facilitate, LBI's purchase and delivery of any such replacement office

chairs, without cost or liability to LBHI.  Prior to May 1, 2009, Landlord may remove or relocate

FF&E in those portions of the 399 Leased Premises that are no longer used or occupied by LBHI

or Barclays.  Except as otherwise permitted herein, no FF&E shall be removed from the 399

Leased Premises from and after the date hereof.

7.    <u>Commencement of Tenant Improvement Work</u>.  (a)  Subject to Section

7(c) hereof, the SIPA Trustee, LBHI and Barclays consent to Landlord, at Landlord's cost,

commencing construction, repairs, restoration and other tenant improvements on the 15th floor of

the 399 Leased Premises and to remove partitions on the 5th or 9th floor in a manner that will not

disrupt Barclays' use of either floor (collectively, the "<u>Landlord Work</u>") prior to April 30, 2009.

(b) Landlord hereby agrees to indemnify and hold harmless the SIPA Trustee, LBHI and

Barclays from and against all liabilities, obligations, claims, demands, damages, penalties, causes

of action, out-of-pocket losses, and fines (including, without limitation, reasonable attorneys'

fees and disbursements enforcing this indemnity), imposed upon or incurred by or asserted

against LBI, the SIPA Trustee, Barclays or LBHI arising from the performance of the Landlord

Work other than to the extent caused by the gross negligence or intentional misconduct of the SIPA Trustee, LBHI or Barclays.  (c)  Notwithstanding anything contained herein to the contrary, Landlord shall provide Barclays at least five (5) business days prior written notice of any Landlord Work involving the removal of partitions on the 5th or 9th floors of the Barclays Premises.  If Barclays notifies Landlord within five (5) business days of Barclays' receipt of such notice that, based on Barclays' reasonable assessment of its business needs (including any reasonable compliance-related considerations), such Landlord Work will interfere with Barclays' operations in the Barclays Premises, then Landlord shall not conduct such Landlord Work until the earlier of (a) the expiration of the Holdover Term and (b) such time that Barclays notifies Landlord that the proposed Landlord Work will not interfere with Barclays' operations in the Barclays Premises.

8.      Subtenant.  SIPA Trustee acknowledges and agrees that under the Bankruptcy Code, the rejection of the 399 Lease constitutes a breach and default under the 399 Lease occurring immediately before the LBI Petition Date, and that on April 30, 2009, the SIPA Trustee surrendered possession of the 399 Leased Premises to Landlord and the 399 Lease was terminated subject to the agreement by Landlord to permit Barclays to use and occupy the Barclays Premises under the terms of this Stipulation.  Nothing in this Stipulation shall be deemed to modify the Brigade Sublease or the Landlord Consent.  LBI (by or through the SIPA Trustee) shall be entitled to all rents accruing under the Brigade Sublease through April 30, 2009.  Landlord (and not the SIPA Trustee) shall be entitled to payment and performance of all obligations of Brigade as the same may exist under the Brigade Sublease and Landlord Consent after April 30, 2009, and Brigade shall have no further obligations to LBI or the SIPA Trustee thereafter.  The original letter of credit from Brigade securing Brigade's performance of the

Brigade Sublease has been determined by the SIPA Trustee and LBHI to have been lost.  The

SIPA Trustee shall use commercially reasonable efforts (including, if requested by the issuing

bank, to agree to indemnify such issuer for the lost letter of credit) to cause a replacement letter

of credit to be issued and to have the name of the beneficiary under the replacement letter of

credit reflect the transfer of the Brigade letter of credit to Landlord.  In addition, if so requested

by Landlord prior to a transfer of the letter of credit, and only to the extent, if any, permitted by

and in accordance with the Brigade Sublease, LBI will draw down the letter of credit and

immediately transfer all of the proceeds to Landlord and none of such proceeds shall at any time

be deemed property of the LBI estate.  LBI (by or through the SIPA Trustee), and not Landlord,

shall be liable to Brigade (and any broker entitled to a commission or other compensation in

connection with the Brigade Sublease) for any claims arising out of the rejection and surrender

of the 399 Lease.   Nothing herein shall release or waive any claims Brigade may hold against

LBI or its estate or any other person in connection with the rejection and surrender of the 399

Lease (or that Brigade may hold against LBI or its estate or any other person unrelated to the 399

Lease).  Solely as between LBHI and LBI, LBHI shall have no liability to LBI or the SIPA

Trustee with respect to any damages, costs, expenses or other obligations relating to the Brigade

Sublease.  The SIPA Trustee shall not exercise his right to terminate the Brigade Sublease or

reject the Brigade Sublease under section 365 of the Bankruptcy Code prior to his rejection of

the 399 Lease.

        9.    <u>Administrative Expense Claim</u>.  Landlord shall have an administrative

expense priority claim against LBHI's chapter 11 estate for any allowed 399 Pre-Rejection

Obligations.  Nothing in this Stipulation shall be construed as a waiver of, or limitation on,

Landlord's claims against, and right to payment from, the SIPA Trustee for any unpaid Monthly

Holdover Rent and its share of the Client Dining Fee (and such claims shall have administrative

expense priority) and from Barclays for Penalty Holdover Rent and its share of the Client Dining

Fee to the extent expressly permitted under Section 5 hereof.

          10.    <u>Decommissioning</u>.  The SIPA Trustee, LBHI and Barclays shall have no

obligations with respect to decommissioning (including the removal of fixtures and other

leasehold improvements) any of the 399 Leased Premises, except that LBHI shall be required,

with respect to the 8th floor within the 399 Leased Premises, to the extent that such floor is not

currently occupied by Barclays employees, to remove all of its personal property not included in

FF&E pursuant to Paragraph 6 above and to leave the 8th Floor in broom clean condition by the

end of business on April 17, 2009, and Barclays shall be required to remove all of its personal

property not included in FF&E pursuant to Paragraph 6 above and to leave the Barclays Premises

in broom clean condition by the end of business on June 22, 2009, and except as set forth herein,

in the order and condition of the Barclays Premises as of the date hereof, subject to ordinary

wear and tear and damage or destruction by casualty (it being understood for the avoidance of

doubt that the term "broom clean" shall not include removal of any fixtures, leasehold

improvements or FF&E).   To the extent any personal property not included in FF&E is left in

the 399 Leased Premises (excepting the Barclays Premises) after April 30, 2009 or in the

Barclays Premises after June 22, 2009, all such property shall be deemed to have been

abandoned under section 554 of the Bankruptcy Code to be disposed of by Landlord in its sole

discretion.

          11.    <u>Default and Termination</u>. Subject to Barclays' cure right below, in the

event of a breach by the SIPA Trustee, LBHI or Barclays of any term or condition of this

Stipulation, Landlord shall be entitled to terminate its consent to Barclay's continued use and/or

occupancy of all or any part of the Barclays Premises, on three (3) business days prior written

notice to the SIPA Trustee, LBHI and Barclays (by email as permitted herein).  The automatic

stay under section 362 of the Bankruptcy Code is hereby modified to allow Landlord to

terminate its consent hereunder and, thereafter, seek and obtain appropriate relief from this Court

(or another court having proper jurisdiction) to evict and remove from the 399 Leased Premises

the SIPA Trustee and/or Barclays (without prejudice to the right of Landlord to be paid Penalty

Holdover Rent); provided, however, that each of the SIPA Trustee, Barclays, and LBHI reserves

its right to dispute any relief sought by Landlord from this Court or any other court.

Notwithstanding anything contained herein to the contrary, in the event of a breach by the SIPA

Trustee or LBHI of any term or condition of this Stipulation to be performed by the SIPA

Trustee or LBHI, Landlord shall notify LBHI, LBI and Barclays and Barclays shall be entitled

(in its sole discretion) to cure such default within 3 business days of Barclays' receipt of notice

of such default from Landlord (unless such default is not a monetary default and cannot

reasonably be cured within such time, in which case Barclays shall have such additional time as

it reasonably needs to cure such default, so long as Barclays proceeds with reasonable diligence).

       12.   <u>Information Sharing</u>.  LBHI and the SIPA Trustee may make reasonable

inquiries or requests for access to each other regarding the 399 Lease, the LBI Leases, the 399

Pre-Rejection Obligations and the LBI Pre-Rejection Obligations.  Responses to such inquiries

or requests will be provided as promptly as is reasonable under the circumstances.

       13.   <u>Rejection Costs</u>.  Neither Barclays nor LBHI shall have any liability

whatsoever to any entity for any damages or costs arising from or relating to the rejection of the

399 Lease (other than as expressly set forth in this Stipulation, and solely with regard to LBHI,

399 Pre-Rejection Obligations) or any of the LBI Leases (subject to the reservation of rights with

respect to the SF Lease (as defined below)).  All costs and expenses relating to the rejection of

the 399 Lease and each of the LBI Leases, including all costs associated with filing and

prosecuting motions or claim objections relating thereto, shall be borne solely by the SIPA

Trustee.  Notwithstanding anything herein to the contrary, all of the rights and defenses of each

of Barclays, LBHI, the SIPA Trustee, and HWA 555 Owners, LLC with respect to the lease

relating to the premises at 555 California Street, San Francisco, California (the "SF Lease") are

expressly reserved.  Solely as between LBHI and LBI, LBHI shall have no liability to LBI or the

SIPA Trustee with respect to any damages, costs, expenses or other obligations relating to the SF

Lease except for the LBI Pre-Rejection Obligations as specifically set forth in Paragraph 3

hereof.

   14. <u>Satisfaction of Purchase Agreement as to 399 Leased Premises</u>.  Barclays

hereby acknowledges that, pending full performance by the SIPA Trustee and LBHI of all of the

terms and conditions of this Stipulation, the SIPA Trustee and LBHI have fulfilled all of their

obligations under the Purchase Agreement solely with respect to the use and occupancy of the

399 Leased Premises for Barclays' continued operation of the Business; provided however, that

each of Barclays, LBHI and the SIPA Trustee reserve all rights and claims they may have against

one another with respect to any other matters under the Purchase Agreement or otherwise.

   15. <u>Intended Beneficiaries</u>.  This Stipulation shall be binding upon and inure

solely to the benefit of the Parties hereto and nothing herein, express or implied, is intended to or

shall confer upon any other entity any legal or equitable right, benefit or remedy of any nature

whatsoever under or by reason of this Stipulation.

16.     Cooperation.  The Parties shall take such actions as may be reasonably required to implement and effectuate both this Stipulation and the transactions contemplated herein.

17.     Choice of Law.  Except to the extent governed by the Bankruptcy Code, this Stipulation shall be governed, in all respects, by the laws of the State of New York, irrespective of its choice of law rules.

18.     Notices.  All notices to the Parties under this Stipulation shall be provided to each of their respective undersigned counsel to the email addresses indicated below.

19.     Complete Agreement.  This Stipulation (which, except as expressly modified herein, incorporates the terms of the Lease) shall constitute the entire agreement by and among the Parties hereto regarding the matters addressed herein.  No extrinsic or parol evidence may be used to vary any of the terms herein.  All representations, warranties, inducements, and/or statements of intention made by the Parties are embodied in this Stipulation, and no party hereto relied upon, shall be bound by, or shall be liable for any alleged representation, warranty, inducement, or statement of intention that is not expressly set forth in this Stipulation.

20.     Modifications.  No modification, amendment or waiver of any of the terms or provisions of this Stipulation shall bind any Party unless such modification, amendment or waiver is in writing, has been executed by a duly authorized representative of the Party against whom such modification, amendment or waiver is sought to be enforced, and, if material, has been approved by further order of the Court.

21.     Counterparts; Delivery.  This Stipulation may be executed in one or more counterparts, each of which, when so executed and delivered, shall be an original and all of

which together shall constitute one and the same instrument.  This agreement may be delivered

manually, by facsimile transmission or by email transmission.

22.    Drafting and Construction.  The Parties acknowledge that this Stipulation

is the joint work product of all of the Parties, and that, accordingly, in the event of ambiguities in

this Stipulation, no inferences shall be drawn against any Party on the basis of authorship of this

Agreement.

23.    No Admission of Liability.  Nothing in this Stipulation shall constitute, or

be considered as, an admission of liability or wrongdoing by any of the Parties, or any agreement

by any of the Parties as to the validity of any of the positions advanced by any of the other

Parties, including, without limitation as to any ownership of FF&E not located at the 399 Leased

Premises.  Except as expressly set forth herein, the Parties reserve all of their rights and defenses

with respect to any other claims each might have against the other.    For the avoidance of doubt,

and notwithstanding anything herein to the contrary, nothing in this Stipulation shall prejudice,

waive or otherwise affect any rights or defenses of Barclays, LBHI, the SIPA Trustee, or HWA

555 Owners, LLC concerning the SF Lease, including, without limitation, whether the SF Lease

has been assumed by the SIPA Trustee, all of which rights and defenses are expressly reserved.

Solely as between LBHI and LBI, LBHI shall have no liability to LBI or the SIPA Trustee with

respect to any damages, costs, expenses or obligations relating to the SF Lease except for the

LBI Pre-Rejection Obligations as specifically set forth in Paragraph 3 hereof.

24.    Captions.  The captions contained in this Stipulation are for convenience

only.  They are not a part of this Stipulation and do not in any way limit or amplify the terms and

provisions hereof.  The captions shall have no effect on the interpretation of this Stipulation.

25.    <u>Order Effective Immediately</u>.  Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Stipulation shall be immediately effective and enforceable upon its entry by the Court.  Promptly following execution, the SIPA Trustee will file this Stipulation with the Court, and the Parties shall use good faith efforts to obtain the Court's approval thereof.

26.    <u>Retention of Jurisdiction.</u>  This Court shall retain exclusive jurisdiction over any and all disputes arising out of or otherwise relating to this Stipulation and the enforcement of the parties' obligations hereunder, including, without limitation, over any motion of Landlord for allowance and payment of an administrative expense claim or a claim under section 365(d)(3) of the Bankruptcy Code or to compel the eviction and removal of Barclays from all or any part of the 399 Leased Premises in the event of a termination of Landlord's consent pursuant to Paragraph 9 of this Stipulation, or after expiration of the Holdover Term (in both cases, without prejudice to the right of Landlord to be paid Penalty Holdover Rent). Notwithstanding the fact that LBI is the lessee under the 399 Lease, Landlord shall have standing to pursue any claims or rights under this Stipulation in LBHI's chapter 11 case.

Dated as of April 23, 2009 (re-executed on May 12, 2009)
New York, New York


WEIL, GOTSHAL & MANGES LLP                CLEARY GOTTLIEB STEEN & HAMILTON LLP


By:  /s/Richard A. Morrison               By:  /s/ Lindsee P. Granfield
Shai Y. Waisman                           Lindsee P. Granfield
Richard A. Morrison                       Lisa M. Schweitzer
767 Fifth Avenue                          One Liberty Plaza
New York, New York 10153                  New York, NY 10006
Telephone: (212) 310-8000                 Telephone: (212) 225-2000
Facsimile: (212) 310-8007                 Facsimile:  (212) 225-3999
Email:  shai.waisman@weil.com             Email: lgranfield@cgsh.com
                                          lschweitzer@cgsh.com

Attorneys for Debtors
and Debtors in Possession                 Attorneys for Barclays Capital Inc.


HUGHES HUBBARD & REED LLP                 GOULSTON & STORRS


By:  /s/ Daniel S. Lubell                 By:  /s/ Douglas B. Rosner
James B. Kobak, Jr.                       Douglas B. Rosner
Daniel S. Lubell                          400 Atlantic Avenue
Jeffrey S. Margolin                       Boston, MA 02110
One Battery Park Plaza                    Telephone: (617) 482-1776
New York, New York 10004                  Facsimile:  (617) 574-4112
Telephone: (212) 837-6000                 Email:  drosner@goulstonstorrs.com
Facsimile: (212) 422-4726
Email: lubell@hugheshubbard.com           Attorneys for BP 399 Park Avenue LLC

Attorneys for James W. Giddens, Trustee for
the SIPA Liquidation of Lehman Brothers Inc.


IT IS SO ORDERED.

Dated: New York, New York
       May 13, 2009

                          s/ James M. Peck
                          United States Bankruptcy Judge

**Schedule A**

LBI Leases

| **The Property** | **Lease Terms** | **Lessor's Address** | **Sublessees (if any)** | **Termination Date ("LBI Termination Date")** |
|---|---|---|---|---|
| 141 West Jackson Boulevard Chicago, IL | Amendment to Equipment Lease between the Board of Trade of the City of Chicago, dated May 1, 2008. | Chicago Board of Trade 141 W. Jackson, Suite 104E Chicago, IL 60604 Attn: Mary Beth Rooney | | 04/29/09 |

| **The Property** | **Lease Terms** | **Lessor's Address** | **Sublessees (if any)** | **Termination Date ("LBI Termination Date")** |
|---|---|---|---|---|
| 10880 Wilshire Boulevard, Suite 2100 Los Angeles, CA | Office Lease Agreement with CA-10880 Wilshire Limited Partnership, dated as of May 2, 2008. | CA-10880 Wilshire Limited Partnership c/o Equity Office 10880 Wilshire Boulevard, Suite 1010 Los Angeles, CA 90024 Attn: Property Manager<br><br>Equity Office Two North Riverside Plaza Suite 2100 Chicago, IL 60606 Attn. Managing Counsel<br><br>Equity Office Properties Trust Two North Riverside Plaza Suite 2100 Chicago, IL 60606 Attn. Lease Administration | | 01/28/09 |
| 555 California Street San Francisco, CA | Lease between 555 California Street Partners and LBI, dated April 19, 1994 | The Shorenstein Co. 555 California Street, 49th Floor San Francisco, CA 94104 Attn: Douglas W. Shorenstein | | 04/17/09[2] |
| 3000 Sand Hill Road Menlo Park, CA | Lease between Sharon Land Company, LLC and LBI, dated April 4, 2008 | Ford Land Company, LLC 3000 Sand Hill Road Building 1, Suite 120 Menlo Park, CA 94025 Attn: Gary E. Wimmer | | 02/11/09 |

---

[2] This date is without prejudice to and shall not waive or otherwise affect any rights or defenses of Barclays, LBHI, the SIPA Trustee, or HWA 555 Owners, LLC concerning the SF Lease, including, without limitation, whether the SF Lease has been assumed or rejected by the SIPA Trustee, all of which rights and defenses are expressly reserved.

| The Property | Lease Terms | Lessor's Address | Sublessees (if any) | Termination Date ("LBI Termination Date") |
|---|---|---|---|---|
| 399 Park Avenue 4th Floor New York, NY | Sublease between Clearbridge Advisors, LLC (f/k/a CAM North America, LLC) and LBI dated April 17, 2007 | Clearbridge Advisors, LLC C/o Legg Mason Inc. 100 Light Street Baltimore, MD 21202 | | 11/30/08 |

**Schedule B**

Monthly Fixed Rent and Additional Rent for the Barclays Premises for May 2009 and June 2009

| Unit | Square Footage | Monthly Rental Rates | 2009 Operating | Additional Rent - AC | Additional Rent - Submetered Electric | Monthly Total | Total May - June |
|------|------|------|------|------|------|------|------|
| Mailroom | 1,714 | 11,048.16 | 523.10 | 1,043.32 | 431.72 | 13,046.29 | 26,092.58 |
| Cafeteria | 26,542 | 85,155.58 | 8,120.27 | 16,156.27 | 6,685.29 | 116,117.40 | 232,234.81 |
| 6th Floor | 94,413 | 645,155.50 | 28,882.59 | 57,469.73 | 23,780.36 | 755,288.18 | 1,510,576.36 |
| 9th Floor | 57,076 | 413,801.00 | 17,460.51 | 34,742.48 | 14,376.07 | 480,380.06 | 960,760.12 |
| | | | | | | $ 1,364,831.93 | $2,729,663.87 |

28

**Schedule C**

Unpaid 399 Pre-Rejection Obligations through April 15, 2009

| Invoice Date | G/L Date | Document Number | G/L Offset | Remark | Gross Amount | Open Amount |
|---|---|---|---|---|---|---|
| 11/2/2008 | 11/2/2008 | 1396822 | AIRC | 10/08 Air Conditioning | 159,501.46 | 7,975.97 |
| 10/17/2008 | 10/17/2008 | 1396340 | AROR | Mintz Levin Legal Fees | 3,765.45 | 3,765.45 |
| 12/30/2008 | 12/30/2008 | 1420675 | AROR | Mintz Levin Legal Fees | 1,005.45 | 1,005.45 |
| 11/7/2008 | 11/7/2008 | 1401698 | ELEC | 6/2-7/1/08 Sbmtrd. Electric | 2,459.42 | 2,459.42 |
| 11/7/2008 | 11/7/2008 | 1401698 | ELEC | 7/1-7/31/08 Sbmtrd. Electric | 1,857.61 | 1,857.61 |
| 11/7/2008 | 11/7/2008 | 1401698 | ELEC | 7/31-8/29/08 Sbmtrd. Electric | 7,063.76 | 7,063.76 |
| 3/24/2009 | 3/24/2009 | 1450791 | ELEC | 1/2-2/3/09 Sbmtrd. Electricity | 60,464.57 | 60,464.57 |
| 3/24/2009 | 3/24/2009 | 1450791 | ELEC | 1/2-2/3/09 Sbmtrd. Electricity | 847.78 | 847.78 |
| 10/20/2008 | 10/20/2008 | 1397187 | LINT | Late Interest | 8,594.82 | 8,594.82 |
| 11/17/2008 | 11/17/2008 | 1406125 | LINT | Late Interest | 3,039.44 | 3,039.44 |
| 12/24/2008 | 12/24/2008 | 1420652 | LINT | Late Interest | 1,631.78 | 1,631.78 |
| 1/16/2009 | 1/16/2009 | 1427012 | LINT | Late Interest | 1,052.82 | 1,052.82 |
| 2/18/2009 | 2/18/2009 | 1439275 | LINT | Late Interest | 697.86 | 697.86 |
| 3/19/2009 | 3/19/2009 | 1450560 | LINT | Late Interest | 1,010.89 | 1,010.89 |
| 10/15/2008 | 10/15/2008 | 1392687 | STEM | 7/1-8/1/08 Submetered Steam | 5,526.86 | 5,526.86 |
| 1/27/2009 | 1/27/2009 | 1427852 | STEM | 11/1/08-12/1/08 Submeter Steam | 2,856.07 | 2,856.07 |
| 3/24/2009 | 3/24/2009 | 1450805 | STEM | 12/1/08-1/1/09 Sbmtrd. Steam | 4,812.42 | 4,812.42 |
| 3/24/2009 | 3/24/2009 | 1450805 | STEM | 1/1/09-2/1/09 Sbmtrd. Steam | 4,945.66 | 4,945.66 |
| 3/26/2009 | 3/26/2009 | 1450885 | WACH | 2/3-3/5/09 Sbmtrd. Chilled H2O | 664.86 | 664.86 |
| 3/26/2009 | 3/26/2009 | 1450899 | WACH | 1/2-2/3/09 Sbmtrd. Chilled H2O | 656.53 | 656.53 |
| 11/2/2008 | 11/2/2008 | 1396822 | WACO | 10/08 Condenser Water | 106,334.30 | 5,317.31 |
| 12/18/2008 | 12/18/2008 | 1420105 | WASR | 10/30-12/1/08 Domestic Water | 974.35 | 974.35 |
| 12/18/2008 | 12/18/2008 | 1420105 | WASR | 10/30-12/1/08 Domestic Water | 176.53 | 176.53 |
| 3/26/2009 | 3/26/2009 | 1450906 | WASR | 2/3-3/5/09 Domestic Water | 1,315.46 | 1,315.46 |
| 3/26/2009 | 3/26/2009 | 1450906 | WASR | 2/3-3/5/09 Domestic Water | 57.79 | 57.79 |
| 3/26/2009 | 3/26/2009 | 1450913 | WASR | 1/5-2/3/09 Domestic Water | 970.58 | 970.58 |
| 3/26/2009 | 3/26/2009 | 1450913 | WASR | 1/5-2/3/09 Domestic Water | 136.32 | 136.32 |
| 1/1/2009 | 1/1/2009 | 1415827 | WOTR | W/O Extra Trash | 1,625.62 | 1,625.62 |
| 2/1/2009 | 2/1/2009 | 1423696 | WOTR | W/O Extra Trash | 1,625.62 | 1,625.62 |
| 3/1/2009 | 3/1/2009 | 1434004 | WOTR | W/O Extra Trash | 1,625.62 | 1,625.62 |
| 10/15/2008 | 10/15/2008 | 1393954 | WOUP | 10/01/08-Trash/Recycle Bi | 1,625.62 | 1,625.62 |
| 10/15/2008 | 10/15/2008 | 1394098 | WOUP | 09/26/08-Elevator/PLEASE | 675.3 | 675.3 |
| 10/15/2008 | 10/15/2008 | 1394136 | WOUP | 09/30/08-Elevator/Please | 675.29 | 675.29 |
| 10/15/2008 | 10/15/2008 | 1394193 | WOUP | 10/02/08-Other/DANIELLE H | 39.67 | 39.67 |
| 10/15/2008 | 10/15/2008 | 1394221 | WOUP | 10/03/08-Elevator/PLEASE | 1,266.17 | 1,266.17 |
| 10/15/2008 | 10/15/2008 | 1394231 | WOUP | 10/03/08-Elevator/PLEASE | 844.11 | 844.11 |
| 10/31/2008 | 10/31/2008 | 1399079 | WOUP | 10/15/08-Other/Lehman Caf | 618.75 | 618.75 |
| 11/17/2008 | 11/17/2008 | 1404871 | WOUP | 10/30-Elevator/PLEASE | 1,012.93 | 1,012.93* |
| 11/17/2008 | 11/17/2008 | 1404872 | WOUP | 10/30-Elevator/PLEASE | 1,350.58 | 1,350.58* |
| 11/17/2008 | 11/17/2008 | 1404873 | WOUP | 10/30-Elevator/PLEASE | 1,350.58 | 1,350.58* |
| 12/16/2008 | 12/16/2008 | 1418341 | WOUP | 11/12/08-Elevator/PLEASE | 501.57 | 501.57* |

| | | | | | |
|---|---|---|---|---|---|
| 12/16/2008 | 12/16/2008 | 1418342 WOUP | 11/12/08-Elevator/PLEASE | 438.87 | 438.87* |
| 12/16/2008 | 12/16/2008 | 1418343 WOUP | 11/12/08-Elevator/PLEASE | 955.14 | 955.14* |
| 12/16/2008 | 12/16/2008 | 1418470 WOUP | 11/21/08-Elevator/CAPITAL | 212.25 | 212.25 |
| 12/31/2008 | 12/31/2008 | 1421890 WOUP | 02/14/08-Elevator/Please | 156.74 | 156.74 |
| 12/31/2008 | 12/31/2008 | 1422093 WOUP | 12/02/08-Elevator/Please | 675.3 | 675.3* |
| 12/31/2008 | 12/31/2008 | 1422215 WOUP | 12/09/08-Elevator/Can you | 675.3 | 675.3* |
| 12/31/2008 | 12/31/2008 | 1422509 WOUP | 12/17/08-Other/Meters, Ha | 1,040.40 | 1,040.40 |
| 1/15/2009 | 1/15/2009 | 1425390 WOUP | 02/19/08-Security/For the | 2,430.31 | 2,430.31 |
| 1/15/2009 | 1/15/2009 | 1425392 WOUP | 03/10/08-Other/DONNA COOL | 39.67 | 39.67 |
| 1/15/2009 | 1/15/2009 | 1426138 WOUP | 01/14/09-Other/Profession | 1,404.39 | 1,404.39 |
| 1/30/2009 | 1/30/2009 | 1429015 WOUP | 01/12/09-Elevator/CAN YOU | 844.11 | 844.11* |
| 1/30/2009 | 1/30/2009 | 1429016 WOUP | 01/12/09-Elevator/CAN YOU | 844.11 | 844.11* |
| 1/30/2009 | 1/30/2009 | 1429017 WOUP | 01/12/09-Elevator/CAN YOU | 1,012.93 | 1,012.93* |
| 1/30/2009 | 1/30/2009 | 1429018 WOUP | 01/12/09-Elevator/CAN YOU | 844.11 | 844.11* |
| 1/30/2009 | 1/30/2009 | 1429020 WOUP | 01/12/09-Elevator/CAN YOU | 844.11 | 844.11* |
| 2/17/2009 | 2/17/2009 | 1436847 WOUP | 01/30/09-Other/NEED THREE | 106.25 | 106.25 |
| 2/17/2009 | 2/17/2009 | 1437155 WOUP | 02/04/09-Other/CAROL BAKE | 212.5 | 212.5 |
| 2/17/2009 | 2/17/2009 | 1437510 WOUP | 02/10/09-Elevator/PLEASE | 844.11 | 844.11 |
| 2/27/2009 | 2/27/2009 | 1441275 WOUP | 02/16/09-HVAC/OT/OTHVAC o | 626.96 | 626.96 |
| 2/27/2009 | 2/27/2009 | 1441276 WOUP | 02/16/09-HVAC/OT/OTHVAC o | 184.72 | 184.72 |
| 2/27/2009 | 2/27/2009 | 1441423 WOUP | 01/27/09-Elevator/Need Fr | 156.74 | 156.74 |
| 2/27/2009 | 2/27/2009 | 1441424 WOUP | 01/27/09-Elevator/Need Fr | 156.74 | 156.74 |
| 2/27/2009 | 2/27/2009 | 1441523 WOUP | 02/04/09-Other/CLIENT REQ | 38.92 | 38.92 |
| 2/27/2009 | 2/27/2009 | 1441620 WOUP | 02/09/09-Carpentry/EMILY | 106.25 | 106.25 |
| 2/27/2009 | 2/27/2009 | 1441660 WOUP | 02/11/09-Other/BOYD WILSO | 116.74 | 116.74 |
| 2/27/2009 | 2/27/2009 | 1441671 WOUP | 02/11/09-Elevator/Can you | 675.3 | 675.3 |
| 2/27/2009 | 2/27/2009 | 1441820 WOUP | 02/17/09-Carpentry/PLEASE | 38.92 | 38.92 |
| 2/27/2009 | 2/27/2009 | 1441839 WOUP | 02/18/09-Other/YVETTE SWA | 41.05 | 41.05 |
| 2/27/2009 | 2/27/2009 | 1441876 WOUP | 02/18/09-Other/Clean thre | 541.88 | 541.88 |
| 2/27/2009 | 2/27/2009 | 1441926 WOUP | 02/20/09-Other/EDRIS STRA | 41.05 | 41.05 |
| 2/27/2009 | 2/27/2009 | 1441927 WOUP | 02/20/09-Other/YVETTE SWA | 41.05 | 41.05 |
| 3/16/2009 | 3/16/2009 | 1446455 WOUP | 01/27/09-Elevator/Need Fr | 156.74 | 156.74 |
| 3/16/2009 | 3/16/2009 | 1446488 WOUP | 02/11/09-Plumbing/The fau | 8.13 | 8.13 |
| 3/16/2009 | 3/16/2009 | 1446489 WOUP | 02/11/09-Plumbing/The wat | 38.92 | 38.92 |
| 3/16/2009 | 3/16/2009 | 1446502 WOUP | 02/13/09-Plumbing/SINK NO | 116.74 | 116.74 |
| 3/16/2009 | 3/16/2009 | 1446505 WOUP | 02/13/09-Other/Remove wal | 1,524.02 | 1,524.02 |
| 3/16/2009 | 3/16/2009 | 1446557 WOUP | 02/23/09-Carpentry/PLEASE | 77.83 | 77.83 |
| 3/16/2009 | 3/16/2009 | 1446559 WOUP | 02/23/09-Other/A&L CESSPO | 1,219.22 | 1,219.22 |
| 3/16/2009 | 3/16/2009 | 1446595 WOUP | 02/24/09-Elevator/CAN YOU | 313.48 | 313.48 |
| 3/16/2009 | 3/16/2009 | 1446638 WOUP | 02/26/09-Other/CAN I PLEA | 106.25 | 106.25 |
| 3/16/2009 | 3/16/2009 | 1446647 WOUP | 02/26/09-Leak  Other/THE | 90.84 | 90.84 |
| 3/16/2009 | 3/16/2009 | 1446806 WOUP | 03/02/09-Leak  Other/GREA | 386.09 | 386.09 |
| 3/16/2009 | 3/16/2009 | 1446946 WOUP | 03/04/09-Leak  Other/I ha | 850.01 | 850.01 |
| 3/16/2009 | 3/16/2009 | 1446967 WOUP | 03/04/09-Other/MELISSA RY | 41.05 | 41.05 |
| 3/16/2009 | 3/16/2009 | 1447104 WOUP | 03/05/09-Other/ANA PENA | 41.05 | 41.05 |
| 3/16/2009 | 3/16/2009 | 1447515 WOUP | 02/09/09-HVAC/OT/OTHVAC o | -626.96 | -626.96 |
| 3/16/2009 | 3/16/2009 | 1447515 WOUP | 02/09/09-HVAC/OT/OTHVAC o | | |
| 3/16/2009 | 3/16/2009 | 1447517 WOUP | 02/09/09-HVAC/OT/OTHVAC o | -501.57 | -501.57 |

| | | | | | |
|---|---|---|---|---|---|
| 3/16/2009 | 3/16/2009 | 1447517 WOUP | 02/09/09-HVAC/OT/OTHVAC o | | |
| 3/16/2009 | 3/16/2009 | 1447519 WOUP | 02/09/09-HVAC/OT/OTHVAC o | -626.96 | -626.96 |
| 3/16/2009 | 3/16/2009 | 1447519 WOUP | 02/09/09-HVAC/OT/OTHVAC o | | |
| 3/16/2009 | 3/16/2009 | 1447521 WOUP | 02/09/09-HVAC/OT/OTHVAC o | -626.96 | -626.96 |
| 3/16/2009 | 3/16/2009 | 1447521 WOUP | 02/09/09-HVAC/OT/OTHVAC o | | |
| 3/31/2009 | 3/31/2009 | 1452395 WOUP | 03/23/09-HVAC/OT/OTHVAC o | 230.9 | 230.9 |
| 3/31/2009 | 3/31/2009 | 1452396 WOUP | 03/23/09-HVAC/OT/OTHVAC o | 230.9 | 230.9 |
| 3/31/2009 | 3/31/2009 | 1452397 WOUP | 03/23/09-HVAC/OT/OTHVAC o | 230.9 | 230.9 |
| 3/31/2009 | 3/31/2009 | 1452524 WOUP | 01/27/09-Elevator/Need Fr | 188.52 | 188.52 |
| 3/31/2009 | 3/31/2009 | 1452769 WOUP | 03/10/09-Other/JOHN OLSSO | 128.7 | 128.7 |
| 3/31/2009 | 3/31/2009 | 1452785 WOUP | 03/10/09-Other/PLEASE PRO | 128.7 | 128.7 |
| 3/31/2009 | 3/31/2009 | 1452806 WOUP | 03/11/09-Plumbing/Ladies | 26.46 | 26.46 |
| 3/31/2009 | 3/31/2009 | 1452830 WOUP | 03/12/09-Other/CAN YOU PL | 77.83 | 77.83 |
| 3/31/2009 | 3/31/2009 | 1452866 WOUP | 03/13/09-Other/LINDA GORM | 41.05 | 41.05 |
| 3/31/2009 | 3/31/2009 | 1452869 WOUP | 03/13/09-Other/LINDA GORM | 82.11 | 82.11 |
| 3/31/2009 | 3/31/2009 | 1452917 WOUP | 03/16/09-Leak Other/PLEA | 91.33 | 91.33 |
| 3/31/2009 | 3/31/2009 | 1452998 WOUP | 03/17/09-Cleaning/CLIENT | 41.05 | 41.05 |
| 3/31/2009 | 3/31/2009 | 1453009 WOUP | 03/17/09-Elevator/Please | 844.11 | 844.11 |
| 3/31/2009 | 3/31/2009 | 1453022 WOUP | 03/17/09-Lighting/Row of | 38.92 | 38.92 |
| 3/31/2009 | 3/31/2009 | 1453065 WOUP | 03/18/09-Other/EILEEN GOU | 41.05 | 41.05 |
| 3/31/2009 | 3/31/2009 | 1453085 WOUP | 03/18/09-Other/LINDA GORM | 123.16 | 123.16 |
| 3/31/2009 | 3/31/2009 | 1453092 WOUP | 03/19/09-Elevator/Please | 844.11 | 844.11 |
| 3/31/2009 | 3/31/2009 | 1453122 WOUP | 03/19/09-Trash/Recycle Bi | 41.05 | 41.05 |
| 3/31/2009 | 3/31/2009 | 1453145 WOUP | 03/20/09-Cleaning/Contact | 41.05 | 41.05 |
| 3/31/2009 | 3/31/2009 | 1453151 WOUP | 03/20/09-Trash/Recycle Bi | 41.05 | 41.05 |
| 3/31/2009 | 3/31/2009 | 1453154 WOUP | 03/20/09-Elevator/Hanover | 212.25 | 212.25 |
| 3/31/2009 | 3/31/2009 | 1453175 WOUP | 03/20/09-Leak Other/Engi | 925.41 | 925.41 |
| 3/31/2009 | 3/31/2009 | 1453216 WOUP | 03/23/09-Cleaning/Floor: | 41.05 | 41.05 |
| 3/31/2009 | 3/31/2009 | 1453220 WOUP | 03/23/09-Cleaning/Contact | 41.05 | 41.05 |
| 3/31/2009 | 3/31/2009 | 1453221 WOUP | 03/23/09-Trash/Recycle Bi | 41.05 | 41.05 |
| 3/31/2009 | 3/31/2009 | 1453228 WOUP | 03/23/09-Cleaning/Floor: | 41.05 | 41.05 |
| 3/31/2009 | 3/31/2009 | 1453229 WOUP | 03/23/09-Cleaning/Floor: | 82.11 | 82.11 |
| 3/31/2009 | 3/31/2009 | 1453238 WOUP | 03/24/09-Elevator/Hanover | 168.82 | 168.82 |
| 3/31/2009 | 3/31/2009 | 1453242 WOUP | 03/24/09-HVAC/OT/OTHVAC o | 550 | 550 |
| 3/31/2009 | 3/31/2009 | 1453245 WOUP | 03/24/09-HVAC/OT/OTHVAC o | 550 | 550 |
| 3/31/2009 | 3/31/2009 | 1453246 WOUP | 03/24/09-Leak Other/BLev | 772.17 | 772.17 |
| 3/31/2009 | 3/31/2009 | 1453255 WOUP | 03/24/09-Elevator/Hanover | 1,012.93 | 1,012.93 |
| 3/31/2009 | 3/31/2009 | 1453301 WOUP | 03/25/09-Cleaning/CLIENT | 41.05 | 41.05 |
| 3/31/2009 | 3/31/2009 | 1453313 WOUP | 03/25/09-Cleaning/CLIENT | 41.05 | 41.05 |
| 3/31/2009 | 3/31/2009 | 1453321 WOUP | 03/25/09-Cleaning/CLIENT | 41.05 | 41.05 |
| 3/31/2009 | 3/31/2009 | 1453322 WOUP | 03/25/09-Cleaning/Floor: | 41.05 | 41.05 |
| 3/31/2009 | 3/31/2009 | 1453325 WOUP | 03/25/09-Cleaning/CLIENT | 41.05 | 41.05 |
| 3/31/2009 | 3/31/2009 | 1453328 WOUP | 03/25/09-Elevator/Iron Mo | 675.3 | 675.3 |
| 3/31/2009 | 3/31/2009 | 1453334 WOUP | 03/26/09-Elevator/Hanover | 1,012.93 | 1,012.93 |
| 3/31/2009 | 3/31/2009 | 1453344 WOUP | 03/26/09-Cleaning/PLEASE | 82.11 | 82.11 |
| 3/31/2009 | 3/31/2009 | 1453345 WOUP | 03/26/09-Cleaning/CLIENT | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1456503 WOUP | 03/16/09-HVAC/OT/OTHVAC o | 635 | 635 |
| 4/15/2009 | 4/15/2009 | 1456504 WOUP | 03/16/09-HVAC/OT/OTHVAC o | 230.9 | 230.9 |

| | | | | | |
|---|---|---|---|---|---|
| 4/15/2009 | 4/15/2009 | 1456548 WOUP | 12/05/08-Other/ROE NIEBLI | 123.16 | 123.16 |
| 4/15/2009 | 4/15/2009 | 1456598 WOUP | 01/27/09-Elevator/Need Fr | 188.52 | 188.52 |
| 4/15/2009 | 4/15/2009 | 1456599 WOUP | 01/27/09-Elevator/Need Fr | 156.74 | 156.74 |
| 4/15/2009 | 4/15/2009 | 1456600 WOUP | 01/27/09-Elevator/Need Fr | 71.08 | 71.08 |
| 4/15/2009 | 4/15/2009 | 1456601 WOUP | 01/27/09-Elevator/Need Fr | 106.63 | 106.63 |
| 4/15/2009 | 4/15/2009 | 1456602 WOUP | 01/27/09-Elevator/Need Fr | 177.71 | 177.71 |
| 4/15/2009 | 4/15/2009 | 1456603 WOUP | 01/27/09-Elevator/Need Fr | 177.71 | 177.71 |
| 4/15/2009 | 4/15/2009 | 1456606 WOUP | 01/29/09-Other/PLEASE CHE | 581.16 | 581.16 |
| 4/15/2009 | 4/15/2009 | 1456612 WOUP | 02/06/09-Other/MELISSA RY | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1456635 WOUP | 02/23/09-Other/Please pro | 1,835.49 | 1,835.49 |
| 4/15/2009 | 4/15/2009 | 1456638 WOUP | 02/24/09-Leak Other/I HA | 86.83 | 86.83 |
| 4/15/2009 | 4/15/2009 | 1456639 WOUP | 02/24/09-Elevator/CAN YOU | 458.07 | 458.07 |
| 4/15/2009 | 4/15/2009 | 1456653 WOUP | 02/26/09-Other/CAN YOU PL | 148.65 | 148.65 |
| 4/15/2009 | 4/15/2009 | 1456656 WOUP | 02/27/09-Leak Other/PLEA | 116.74 | 116.74 |
| 4/15/2009 | 4/15/2009 | 1456666 WOUP | 02/27/09-Other/BOYD WILSO | 38.92 | 38.92 |
| 4/15/2009 | 4/15/2009 | 1456672 WOUP | 02/27/09-Leak Other/Grea | 75.4 | 75.4 |
| 4/15/2009 | 4/15/2009 | 1456673 WOUP | 02/27/09-Other/Please ope | 38.92 | 38.92 |
| 4/15/2009 | 4/15/2009 | 1456678 WOUP | 03/03/09-Other/BOYD WILSO | 38.92 | 38.92 |
| 4/15/2009 | 4/15/2009 | 1456682 WOUP | 03/03/09-Leak Other/GREA | 38.92 | 38.92 |
| 4/15/2009 | 4/15/2009 | 1456686 WOUP | 03/04/09-Other/JOHN OLSSO | 116.74 | 116.74 |
| 4/15/2009 | 4/15/2009 | 1456693 WOUP | 03/05/09-Other/Client Ana | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1456703 WOUP | 03/06/09-Elevator/CAN YOU | 844.11 | 844.11 |
| 4/15/2009 | 4/15/2009 | 1456704 WOUP | 03/06/09-Other/ANA PENA | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1456707 WOUP | 03/09/09-Restroom/Toilet | 77.83 | 77.83 |
| 4/15/2009 | 4/15/2009 | 1456728 WOUP | 03/11/09-Plumbing/Ladies | 77.83 | 77.83 |
| 4/15/2009 | 4/15/2009 | 1456742 WOUP | 03/13/09-Elevator/PLEASE | 849.01 | 849.01 |
| 4/15/2009 | 4/15/2009 | 1456784 WOUP | 03/18/09-Other/CAN YOU PL | 9.49 | 9.49 |
| 4/15/2009 | 4/15/2009 | 1456804 WOUP | 03/20/09-Elevator/Hanover | 675.3 | 675.3 |
| 4/15/2009 | 4/15/2009 | 1456805 WOUP | 03/20/09-Elevator/Hanover | 844.11 | 844.11 |
| 4/15/2009 | 4/15/2009 | 1456806 WOUP | 03/20/09-Elevator/Hanover | 928.01 | 928.01 |
| 4/15/2009 | 4/15/2009 | 1456807 WOUP | 03/20/09-Elevator/Hanover | 928.01 | 928.01 |
| 4/15/2009 | 4/15/2009 | 1456808 WOUP | 03/20/09-Elevator/Hanover | 928.01 | 928.01 |
| 4/15/2009 | 4/15/2009 | 1456836 WOUP | 03/25/09-Plumbing/TOLIET | 62.39 | 62.39 |
| 4/15/2009 | 4/15/2009 | 1456859 WOUP | 03/26/09-Cleaning/CLIENT | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1456861 WOUP | 03/26/09-Cleaning/CLIENT | 123.16 | 123.16 |
| 4/15/2009 | 4/15/2009 | 1456889 WOUP | 03/27/09-Cleaning/CLIENT | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1456901 WOUP | 03/30/09-Cleaning/Floor: | 205.26 | 205.26 |
| 4/15/2009 | 4/15/2009 | 1456903 WOUP | 03/30/09-Cleaning/Floor: | 82.11 | 82.11 |
| 4/15/2009 | 4/15/2009 | 1456916 WOUP | 03/30/09-Cleaning/CLIENT | 82.11 | 82.11 |
| 4/15/2009 | 4/15/2009 | 1456928 WOUP | 03/30/09-Cleaning/CLIENT | 82.11 | 82.11 |
| 4/15/2009 | 4/15/2009 | 1456929 WOUP | 03/30/09-Cleaning/CLIENT | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1456936 WOUP | 03/30/09-Cleaning/CLIENT | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1456945 WOUP | 03/31/09-Cleaning/CLIENT | 246.31 | 246.31 |
| 4/15/2009 | 4/15/2009 | 1456947 WOUP | 03/31/09-Cleaning/Floor: | 82.11 | 82.11 |
| 4/15/2009 | 4/15/2009 | 1456963 WOUP | 03/31/09-Cleaning/Floor: | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1456980 WOUP | 03/31/09-Cleaning/Floor: | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1456989 WOUP | 03/31/09-Cleaning/Floor: | 82.11 | 82.11 |
| 4/15/2009 | 4/15/2009 | 1456990 WOUP | 03/31/09-Cleaning/Floor: | 41.05 | 41.05 |

| | | | | | |
|---|---|---|---|---:|---:|
| 4/15/2009 | 4/15/2009 | 1456992 WOUP | 03/31/09-Elevator/Could y | 1,181.76 | 1,181.76 |
| 4/15/2009 | 4/15/2009 | 1456997 WOUP | 03/31/09-Cleaning/Floor: | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1456998 WOUP | 03/31/09-Cleaning/Floor: | 82.11 | 82.11 |
| 4/15/2009 | 4/15/2009 | 1457000 WOUP | 03/31/09-Cleaning/Floor: | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1457011 WOUP | 04/01/09-Cleaning/Floor: | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1457021 WOUP | 04/01/09-Cleaning/Floor: | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1457033 WOUP | 04/01/09-Elevator/Hanover | 294.21 | 294.21 |
| 4/15/2009 | 4/15/2009 | 1457034 WOUP | 04/01/09-Elevator/Hanover | 844.11 | 844.11 |
| 4/15/2009 | 4/15/2009 | 1457042 WOUP | 04/01/09-Cleaning/Floor: | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1457047 WOUP | 04/01/09-Cleaning/Floor: | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1457049 WOUP | 04/01/09-Cleaning/Floor: | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1457073 WOUP | 04/02/09-Cleaning/Floor: | 82.1 | 82.1 |
| 4/15/2009 | 4/15/2009 | 1457074 WOUP | 04/02/09-Cleaning/CLIENT | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1457075 WOUP | 04/02/09-Cleaning/CLIENT | 82.11 | 82.11 |
| 4/15/2009 | 4/15/2009 | 1457076 WOUP | 04/02/09-Cleaning/Floor: | 164.21 | 164.21 |
| 4/15/2009 | 4/15/2009 | 1457078 WOUP | 04/02/09-Cleaning/CLIENT | 82.1 | 82.1 |
| 4/15/2009 | 4/15/2009 | 1457079 WOUP | 04/02/09-Cleaning/Floor: | 82.11 | 82.11 |
| 4/15/2009 | 4/15/2009 | 1457081 WOUP | 04/02/09-Cleaning/CLIENT | 82.11 | 82.11 |
| 4/15/2009 | 4/15/2009 | 1457085 WOUP | 04/02/09-Cleaning/CLIENT | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1457090 WOUP | 04/02/09-Cleaning/client | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1457103 WOUP | 04/02/09-Cleaning/Floor: | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1457104 WOUP | 04/02/09-Cleaning/CLIENT | 246.31 | 246.31 |
| 4/15/2009 | 4/15/2009 | 1457107 WOUP | 04/02/09-Cleaning/PLEASE | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1457120 WOUP | 04/03/09-Cleaning/CLIENT | 164.21 | 164.21 |
| 4/15/2009 | 4/15/2009 | 1457127 WOUP | 04/03/09-Cleaning/CLIENT | 82.11 | 82.11 |
| 4/15/2009 | 4/15/2009 | 1457128 WOUP | 04/03/09-Cleaning/CLIENT | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1457157 WOUP | 04/06/09-Cleaning/CLIENT | 164.21 | 164.21 |
| 4/15/2009 | 4/15/2009 | 1457183 WOUP | 04/06/09-Cleaning/CLIENT | 205.26 | 205.26 |
| 4/15/2009 | 4/15/2009 | 1457198 WOUP | 04/07/09-Cleaning/CLIENT | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1457203 WOUP | 04/07/09-Cleaning/Floor: | 41.05 | 41.05 |
| 4/15/2009 | 4/15/2009 | 1457223 WOUP | 04/08/09-Elevator/Hanover | 928.01 | 928.01 |
| 4/15/2009 | 4/15/2009 | 1457225 WOUP | 04/08/09-Elevator/Hanover | 928.01 | 928.01 |
| 4/15/2009 | 4/15/2009 | 1457240 WOUP | 04/08/09-Cleaning/Please | 82.11 | 82.11 |
| 4/15/2009 | 4/15/2009 | 1457242 WOUP | 04/08/09-Cleaning/EMPTY A | 205.26 | 205.26 |

**Total Due:**                                                     193,278.37

**Total Less Amounts payable
by Barclays ($11,349.64) and
Credit for May and June Real
Estate Taxes ($49,021)**

                                                                   132,907.73

*Payable by Barclays Capital Inc.