Robert F. Elgidely, Esq. (RE-0512)
John H. Genovese, Esq.
Paul J. Battista, Esq.
David C. Cimo, Esq.
GENOVESE, JOBLOVE & BATTISTA, P.A.
Bank of America Tower at International Place
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
(305) 349-2300 (tel.)
(305) 349-2310 (fax)

Co-Counsel for Plaintiffs

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                              :        Chapter 11
                                                    :
LEHMAN BROTHERS HOLDINGS INC., et al.,              :        Case No. 08-13555-JMP
                                                    :
                        Debtors.                    :
---------------------------------------------------------------x

**MOTION FOR RELIEF FROM DERIVATIVE PROCEDURES ORDERS AND OBJECTION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND <u>ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS</u>**

TO:    THE HONORABLE JAMES M. PECK,
       UNITED STATES BANKRUPTCY JUDGE:

Plaintiffs KA KIN WONG, SIU LUI CHING, CHUN IP, JIN LIU, YIN YING LEUNG, LAI MEI CHAN, and SING HEUNG, (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby file their Motion For Relief From Derivative Procedures Orders And Objection To Debtors' Motion For An Order Pursuant To Sections 105 And 365 Of The Bankruptcy Code To Establish Procedures For The Settlement Or Assumption And Assignment Of Prepetition Derivative Contracts, pursuant to Fed. R. Bankr. P. 9024 and Local Bankruptcy Rule 9013-1, and respectfully state in support thereof as follows:

Procedural and Factual Background

1.     On September 15, 2008, Lehman Brothers Holdings Inc. (hereinafter "LBHI") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (hereinafter the "Bankruptcy Code") with the Clerk of this Court.

2.     On September 17, 2008, the Official Committee of Unsecured Creditors was appointed by the Office of the United States Trustee.

3.     On October 3, 2008, Lehman Brothers Special Financing Inc. (hereinafter "LBSF") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Clerk of this Court.

4.     On October 16, 2008, the bankruptcy proceedings of LBHI, LBSF, and other LBHI affiliates (hereinafter referred to collectively as the "Debtors") were consolidated for procedural purposes only and are being jointly administered by this Court.

5.     On or about January 20, 2009, the Court approved the appointment of an examiner in these bankruptcy proceedings.

6.     On March 12, 2009, Plaintiffs filed an Adversary Complaint (the "Adversary Complaint") on behalf of a class of approximately 33,000 persons who acquired Minibond series notes from a non-debtor issuer in the period June 16, 2003 to September 15, 2008 (the "Class").

7.     In the Adversary Complaint, Plaintiffs allege that (i) Plaintiffs and the Class are the ultimate beneficiaries of the collateral supporting their investments in the Minibonds (the "Minibond Collateral"), which has a face value of approximately $1.6 Billion; (ii) several non-debtor entities breached their contractual and fiduciary duties to Plaintiffs and the Class by, *inter alia*, failing to protect and preserve the Minibond Collateral, and by failing to distribute it to

Plaintiffs and the Class upon the occurrence of several material pre-petition events of default; and (iii) Plaintiffs and the Class are the rightful owners of the Minibond collateral.

8. The Minibond deal structure involved complex, high-risk credit derivative contracts, such as credit default swaps and synthetic collateralized debt obligations.

9. Plaintiffs and the Class seek a declaratory judgment, preliminary and permanent injunctive relief, the imposition of a resulting or constructive trust on the Minibond Collateral, and damages from the non-debtor Defendants for their breaches of duty.

10. On April 6, 2009 and April 7, 2009, undersigned entered his appearance on behalf of the Plaintiffs in the adversary proceeding and in this bankruptcy case, respectively.

11. Shortly after entering his appearance, the undersigned reviewed the docket for this bankruptcy case and was surprised to learn that the Debtors had filed a Motion For An Order Pursuant To Sections 105 And 365 Of The Bankruptcy Code To Establish Procedures For The Settlement Or Assumption And Assignment Of Prepetition Derivative Contracts on November 13, 2008 [D.E. 1498] (the "Derivative Procedures Motion") and that the Court had entered an Order granting the Motion on December 16, 2008 [D.E. 2257] as well as a Supplemental Order granting the Motion on January 15, 2009 [D.E. 2557] (hereinafter referred to collectively as the "Derivative Procedures Orders").[1]

12. The Derivative Procedures Orders give the Debtors broad authority to assume and assign as well as to terminate and settle derivative contracts and contain procedures for the exercise of such authority (hereinafter referred to collectively as the "Procedures").

13. By following the Procedures, the Debtors have the ability to nullify material provisions of the derivative contracts concerning events of default and termination rights in addition to giving the Debtors the right to deal with collateral supporting the derivative contracts.

---

[1] The Derivative Procedures Motion was the subject of 104 objections and 2 hearings.

14.    More specifically, the Procedures state that (i) they apply to "any affected third parties;" (ii) the Debtors have the right to cure defaults under the derivative contracts and to establish the cure amounts; (iii) counterparties' rights to declare a default under, or to terminate, the derivative contracts "are void and of no force and effect"; (iv) counterparties are forever barred, estopped, and permanently enjoined from asserting against the Debtor any default or termination right arising prior to or existing as of the assignment of the derivative contract; (v) the Debtors have the option of returning posted collateral as part of a cure amount or, if such collateral is no longer in their possession, paying an amount equal to the value of the collateral as of the business day prior to delivery of an assignment notice in full satisfaction of the posted collateral; (vi) the Debtor is permitted to make payments to an assignee in connection with an assignment of a derivative contract; and (vii) the Debtors have the right to liquidate or return collateral or margin in connection with the termination of a derivative contract.[2]

15.    Despite the facts that the Plaintiffs and the Class were the ultimate beneficiaries of the Minibond Collateral supporting the Minibond series notes derivative contracts at all relevant times and that the Debtors were seeking the right to effect, alter, or eliminate such collateral, the Plaintiffs did not receive notice or have an opportunity to be heard in connection with the Derivative Procedures Motion or the Derivative Procedures Orders.[3]

16.    Moreover, the Debtors may seek to adjudicate matters through the Derivative Procedures Orders which are properly the subject of the Adversary Complaint.

---

[2] Thirty Nine objections to the Derivative Procedures Motion were preserved in the Derivative Procedures Orders.
[3] The Affidavit of Service for the Derivative Procedures Motion is filed at Docket Entry 1639. The Limited Objection to the Derivative Procedures Motion filed by The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., and BNY Corporate Trustee Services Limited dated November 28, 2008 and accompanying Declaration [D.E. 1892] (hereinafter the "BNY Objection") questioned whether the lack of notice to the true parties in interest (*e.g.*, the ultimate beneficiaries of the collateral underlying the derivative contracts) violated their constitutional right to due process of law. Plaintiffs adopt, and incorporate by reference, the arguments set forth in the BNY Objection with regard to their contractual rights in the Minibond series notes derivative contracts and their beneficial interests in the Minibond Collateral.

4

17. As set forth in BNY's Limited Objection to the Derivative Procedures Motion, constitutionally-mandated notice of the assumption and assignment or termination and settlement of derivative contracts cannot timely or effectively be provided to the tens, and perhaps hundreds, of thousands of beneficiaries of the collateral supporting the derivative contracts scattered around the world because such notice would initially or simultaneously have to be provided to the trustees and/or the registered owner European clearing systems (*e.g.*, the Depository Trust Clearing Corporation, Euroclear System, or Clearstream Banking, S.A.) followed by notice to the first-tier participants, and followed by notice to the beneficiaries.

18. Not only have the Debtors failed to propose the provision of notice to such beneficiaries, the truncated time-frames set forth in the Derivative Procedures Motion and the Derivative Procedures Orders would be woefully insufficient in any event to apprise the beneficiaries of the planned action and give them an adequate opportunity to present their objections.

19. The constitutional necessity for such notice and the practical inability to provide it mandates that the Plaintiffs' and Class' beneficial interests in the Minibond Collateral, and contractual rights in the Minibond series notes derivative contracts, be excepted from the Derivative Procedures Orders.

20. Plaintiffs additionally object to the Debtors' ambiguous and blanket request in the Derivative Procedures Motion to unilaterally establish cure amounts under the derivative contracts and to nullify termination or default provisions in the derivative contracts. Plaintiffs submit that such requests would be contrary to Section 365(a) of the Bankruptcy Code and would improperly affect claims which have already accrued. At the very least, the Debtors' request should be made on a case-by-case basis and evaluated by reference to the facts and

5

circumstances of each case, with adequate notice and opportunity to be heard provided to Plaintiffs and the Class.

21.     Because the Plaintiffs lacked notice of the Derivative Procedures Motion and would be irreparably harmed by implementation of the Derivative Procedures Orders, Plaintiffs respectfully request this Court reconsider the Derivative Procedures Orders, and modify said Orders to exclude Plaintiffs' and the Class' beneficial interests in the Minibond Collateral and contractual rights under the Minibond series notes derivative contracts.

22.     The Debtors would not be prejudiced if the Plaintiffs and the Class are granted relief from the Derivative Procedures Orders because numerous creditors and property interests have already been excepted from the terms of such orders.

23.     Plaintiffs have had several discussions with the Debtors concerning their objections to the Derivative Procedures Motion, in an effort to achieve an informal resolution to the matter. As of this date, Plaintiffs and the Debtors have been unable to resolve the matter. Plaintiffs file the instant Motion to preserve their rights and those of the Class to seek such relief from the Court if necessary.

<u>Jurisdiction</u>

24.     This Court has subject matter jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested in this Motion are Rule 9024 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 9013-1.

Relief Requested

25. By this Motion, Plaintiffs and the Class seek entry of an order granting them relief from the Derivative Procedures Orders and excepting their beneficial interests in the Minibond Collateral and contractual rights under the Minibond series notes derivative contracts from the terms of the Derivative Procedures Orders.

Basis for the Relief Requested

I. GENERAL PRINCIPLES

Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") incorporates Rule 60(b) of the Federal Rules of Civil Procedure ("Rule 60(b)"). Rule 60(b) states as follows:

> "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (4) the judgment is void . . . or (6) any other reason that justifies relief."

Rule 60(b) should be broadly construed to do substantial justice. *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).

II. CASE LAW

Numerous bankruptcy courts in the Southern District of New York have granted relief from orders entered without notice to an interested party and which have negatively impacted the party's contractual rights or property interests.

In *In re 401 East 89th Street Owners, Inc.*, 223 B.R. 75 (Bankr. S.D.N.Y. 1998), Judge Brozman granted an equity holder relief from an order confirming a Chapter 11 debtor's plan of reorganization on the basis of excusable neglect and exceptional circumstances. At the time the

motion for relief was filed, the equity holder's shares in a cooperative corporation had been forfeited and its interest in proprietary leases for two apartments owned by the corporation were terminated pursuant to a plan provision requiring the payment of an assessment in order to retain such interests. *Id*. at 77. Although the equity holder received a copy of the disclosure statement and the plan of reorganization detailing the requirement for, and consequences of failing to pay, the assessment, the equity holder did not receive a copy of the notice of commencement of the bankruptcy case, the bar date notice, or a separate notice of the assessment. *Id*. Judge Brozman determined that the equity holder effectively did not have notice of the bankruptcy case because it failed to receive notices it was entitled to receive and was deprived of the ability to designate a proper address for service. *Id*. at 80. Moreover, Judge Brozman determined that the equity holder's failure to timely pay the assessment resulted from excusable neglect, that the equity holder's motion for relief was timely filed within three months of entry of the confirmation order, that exceptional circumstances existed, and that the debtor would not be prejudiced by granting the relief sought. *Id*. at 81 – 82. Accordingly, Judge Brozman granted the motion for relief from the confirmation order, ordered the equity holder to pay the assessment and ordered the reorganized debtor to reissue the shares and leases to the equity holder. Id. at 82.

Similarly, in *In re Enron Creditors' Recovery Corp.*, 2007 WL 2480531 (Bankr. S.D.N.Y. 2007), Judge Gonzalez granted a creditor's motion for reconsideration of an Order disallowing its claim and vacated such order. It was undisputed that the creditor did not receive notice of the debtors' objection to its proof of claim filed on May 11, 2004 or the order disallowing the proof of claim entered on July 22, 2004. *Id*. at * 2. The creditor learned of the disallowance of its claim in January 2007, learned of the objection and order in March 2007, and filed its motion for reconsideration on May 1, 2007. *Id*. In evaluating whether the creditor's

8

motion for reconsideration should be granted, Judge Gonzalez applied the three factor test of (1) whether the failure to respond was willful, (2) whether the movant had a legally supportable defense, and (3) the amount of prejudice that the non-movant would incur if the court granted the motion. *Id*. at * 4. *Citing American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996). At the same time, Judge Gonzalez noted that there is a strong preference that courts resolve disputes on their merits and that such preference is achieved by resolving any doubts in favor of the movant. (Citations omitted). *Id*. Applying the *American Alliance* factors, Judge Gonzalez concluded that the creditor's failure to respond was not willful because it never received notice of the objection, that the creditor had provided a legally supportable defense, and the prejudice to the debtors was minimal. *Id*. at * 5 – 6. With respect to the final *American Alliance* factor, Judge Gonzalez noted that the two year and nine month delay in filing the motion for reconsideration was attributable to the lack of notice and that the creditor's efforts to resolve the matter without court intervention after it obtained knowledge should not be counted against it. *Id*. at * 6. Accordingly, Judge Gonzalez granted the creditor's motion for reconsideration and vacated the order disallowing its claim. Id. at * 7.

Finally, in *Randbre Corp. v. Ladney (In re Randbre Corp.)*, 66 B.R. 482 (Bankr. S.D.N.Y. 1986), Judge Lifland granted a creditor's motion for relief from an order expunging his claim because the creditor did not receive notice of the motion seeking to expunge his claim. Judge Lifland analyzed the issue of whether relief should be granted under Rule 60(b)(4) because he viewed the issue of notice as implicating the creditor's constitutional right to due process of law. Id. at 485. Citing to *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), Judge Lifland stated "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the

9

circumstances, to apprise *interested parties* of the pendency of the action and afford them an opportunity to present their objections. . . ." Id. (Emphasis supplied). According to Judge Lifland, mere knowledge of the bankruptcy case is insufficient to dispense with the need for reasonable notice prior to the expungement of one's claim. Id. (Citations omitted). Finding that the creditor lacked notice of the motion seeking to expunge his claim (because it was sent to the incorrect address), Judge Lifland granted the creditor relief from the Order and set it aside. Id. at 488.

## Conclusion

As set forth hereinabove and in the Adversary Complaint, the Plaintiffs and the Class were the ultimate beneficiaries of the Minibond Collateral supporting the Minibond series notes derivative contracts at all relevant times. Despite the Plaintiffs' and Class' rights and interests, they did not receive notice or have an opportunity to be heard in connection with the Derivative Procedures Motion or the Derivative Procedures Orders. The Derivative Procedures Orders give the Debtors the ability to nullify material provisions of the derivative contracts concerning events of default and termination rights as well as the right to deal with collateral supporting the derivative contracts. Moreover, the Debtors would have the ability to adjudicate matters through the Derivative Procedures Orders which are properly the subject of the Adversary Complaint. The Plaintiffs and Class would therefore be irreparably harmed by the Debtors' exercise of the rights in the Derivative Procedures Orders. The prejudice to the Debtors in excepting the Plaintiffs' and Class' beneficial interests in the Minibond Collateral and contractual rights under the Minibond series notes derivative contracts from the Derivative Procedures Orders would be minimal whereas the prejudice to the Plaintiffs and Class in not excepting such interests from the Derivative Procedures Orders would be significant. The *American Alliance* factors and

exceptional circumstances support the relief sought by the Plaintiffs in this Motion. Accordingly, the Plaintiffs respectfully request this Court to enter an Order granting them relief from the Derivative Procedures Orders, excepting their beneficial interests in the Minibond Collateral and their contractual rights under the Minibond series notes derivative contracts from the Derivative Procedures Orders, and for such other and further relief as the Court may deem just and proper.

Dated: Miami, Florida
May 13, 2009

Respectfully submitted,

GENOVESE, JOBLOVE & BATTISTA, P.A.

By:/s/ Robert F. Elgidely
    Robert F. Elgidely, Esq. (RE-0512)
Bank of America Tower at International Place
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Telecopier: (305) 349-2310

COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
PATRICK J. COUGHLIN
DAVID C. WALTON
PATRICK W. DANIELS
NATHAN W. BEAR

By:/s/ Ray A. Mandlekar
    Ray A. Mandlekar, Esq.
    (*Admitted Pro Hac Vice*)
655 West Broadway, Suite 1900
San Diego, California 92101
Telephone: (619) 231-1058
Telecopier: (619) 231-7423

COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
ROBERT M. ROTHMAN
MARK T. MILLKEY
58 South Service Road, Suite 200
Melville, New York  1177
Telephone: (631) 367-7100
Telecopier: (631) 367-1173

COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
JASON C. DAVIS
100 Pine Street, Suite 2600
San Francisco, California  94111
Telephone: (415) 288-4545
Telecopier: (415) 288-4534

Attorneys for Plaintiffs

12