**Hearing Date and Time: June 3, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  May 28, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                          :
**In re**                                                 :     **Chapter 11 Case No.**
                                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,              :     **08-13555 (JMP)**
                                                          :
                                 **Debtors.**             :     **(Jointly Administered)**
                                                          :
                                                          :
                                                          :
------------------------------------------------------------------x

**NOTICE OF DEBTORS' MOTION**
**PURSUANT TO SECTIONS 105 AND 363 OF THE**
**BANKRUPTCY CODE AND FEDERAL RULE  OF BANKRUPTCY PROCEDURE**
**9019 FOR AUTHORIZATION AND APPROVAL OF LOAN PAY-OFF AGREEMENTS**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc. ("LBHI"), Lehman Commercial Paper Inc. ("LCPI") and their

affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors"), pursuant to

sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule

9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for approval of (i)

a loan pay-off agreement among 44th Street Partners I LLC, 44th Street Partners II LLC, et al.

(the "Loft 44 Borrower Parties"), LBHI, LCPI and Lehman Re Ltd. ("Lehman Re"), (ii) a loan

pay-off agreement among LeMadre Mezz LLC, et al. (the "LeMadre Senior Mezzanine

Borrower Parties"), LBHI, LCPI and Lehman Re, and (iii) a loan pay-off agreement among

M&B Mezz LLC, M&B Realty Development LLC, et al. (the "LeMadre Junior Mezzanine

Borrower Parties"), LBHI, LCPI and Lehman Re, each as more fully described in the Motion,

will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United

States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling

Green, New York, New York 10004 (the "Bankruptcy Court"), on **June 3, 2009 at 10:00 a.m.**

**(Prevailing Eastern Time)** (the "Hearing").

　　　　　PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn:  Shai Waisman, Esq., attorneys for the Debtors; (iii) the Office of the United States

Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st

Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq.,

Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis; Esq., (iv) Milbank, Tweed,

Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis

F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official

committee of unsecured creditors appointed in these cases; (v) Alice Belmonte, Esq., 15 West

39th Street, 8th Floor, New York, New York 10018, attorney for the Loft 44 Borrower Parties;

(vi) Patterson Belknap Webb & Tyler LLP, 1133 Avenue of the Americas, New York, NY

10036, Attn: Andrew L. Herz, Esq., attorneys for the LeMadre Senior Mezzanine Borrower

Parties and LeMadre Junior Mezzanine Borrower Parties, and (vii) Cadwalader, Wickersham &

Taft LLP, One World Financial Center, New York, New York 10281, Attn: Gerard Hefner, Esq.,

attorneys for Lehman Re, so as to be so filed and received by no later than **May 28, 2009 at 4:00**

**p.m. (prevailing Eastern Time)** (the "Objection Deadline").

        PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: May 14, 2009
New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                                  :
In re                                             :        Chapter 11 Case No.
                                                  :
LEHMAN BROTHERS HOLDINGS INC., et al.,            :        08-13555 (JMP)
                                                  :
                                       Debtors.   :        (Jointly Administered)
                                                  :
                                                  :
-----------------------------------------------------------------x
```

**DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 363 OF THE**
**BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE**
**9019 FOR AUTHORIZATION AND APPROVAL OF LOAN PAY-OFF AGREEMENTS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

　　　　　　Lehman Brothers Holdings Inc. ("LBHI"), Lehman Commercial Paper Inc.

("LCPI"), and their affiliated debtors in the above-referenced chapter 11 cases, as debtors and

debtors-in-possession (together, the "Debtors" and, collectively with their non-debtor affiliates,

"Lehman"), file this Motion and respectfully represent:

**Background**

　　　　　　1.　　　Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

4.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

## Jurisdiction

5.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

6.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

7.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

### Preliminary Statement

8.      Beginning in 2006, LBHI made loans in the aggregate amount of

$24,432,000 to certain borrowers to finance the construction and development of a project

located at 5 East 44th Street, New York (the "Loft 44 Project"), which loans consist of the Loft

44 Mortgage Loan and the Loft 44 Mezzanine Loan (each as defined below).  Beginning in 2006,

LBHI also made certain loans in the aggregate amount of $14,470,000 to finance the

construction and development of a project located at 127-133 Seventh Avenue, New York, New

York (the "LeMadre Project"), which loans consist of the LeMadre Senior Mezzanine Loan and

the LeMadre Junior Mezzanine Loan (each as defined below).  The borrower under each of these

loans has defaulted with respect to its repayment obligations under its respective loans.

Notwithstanding such defaults, the borrower under the Loft 44 Mezzanine Loan alleges that

LBHI has outstanding funding obligations under such loan.

9.      LCPI, LBHI and Lehman Re Ltd. ("Lehman Re" and together with LBHI

and LCPI, the "Lender Parties") are currently engaged in certain disputes regarding the Loft 44

Mortgage Loan, the LeMadre Senior Mezzanine Loan and the LeMadre Junior Mezzanine Loan

(the "Disputed Loans").  Pursuant to that certain Master Repurchase Agreement, dated as of July

9, 1999, by and between LCPI, Lehman Re and certain other parties (as amended, and

collectively with certain other documents and instruments executed and/or delivered in

connection therewith, the "Repo Documents"), LCPI and Lehman Re entered into certain

agreements with respect to certain loans and other assets (respectively, the "Assets") originated

by LBHI and/or its affiliates, including the Loft 44 Mortgage Loan and the LeMadre Junior

Mezzanine Loan.   The Lender Parties currently disagree over the ownership status of the Loft 44

Mortgage Loan and LeMadre Junior Mezzanine Loan due to certain ongoing disputes regarding

whether the transactions contemplated by the Repo Documents were ever properly

consummated.  Additionally, the Lender Parties also dispute whether the LeMadre Senior

Mezzanine Loan constitutes one of the Assets.  This is because, in connection with satisfying

certain document delivery obligations with respect to the LeMadre Junior Mezzanine Loan

pursuant to the Repo Documents, LCPI erroneously delivered certain documents relating to the

LeMadre Senior Mezzanine Loan to Lehman Re.  Due to this erroneous delivery, Lehman Re has

claimed that the LeMadre Senior Mezzanine Loan constitutes one of the Assets subject to the

Repo Documents and that Lehman Re consequently also has an ownership interest in the

LeMadre Senior Mezzanine Loan.

       10.     Due to the payment defaults under each of the above loans and the

borrowers' alleged inability to repay their indebtedness in full, and in order to resolve the

disputes among the Lender Parties regarding the Loft 44 Mortgage Loan, the LeMadre Senior

Mezzanine Loan and the LeMadre Junior Mezzanine Loan (collectively, the "Disputed Loans"),

the Debtors believe that it is in the best interest of their estates to enter into certain loan pay-off

agreements, which, in the aggregate, contain the following salient terms:

- The borrower under the Loft 44 Mortgage Loan will repay its indebtedness at a discount. Lehman Re will be entitled to the proceeds from such discounted pay-off.

- LBHI will release the borrower under the Loft 44 Mezzanine Loan from its payment obligations thereunder.  LBHI will be released from, among other things, any claims that the borrower under the Loft 44 Mezzanine Loan may have against LBHI related to any alleged obligations of LBHI to provide future funding.

- The borrower under the LeMadre Senior Mezzanine Loan will repay its indebtedness at a discount.  Lehman Re will return the documents related to the LeMadre Senior

Mezzanine Loan to LBHI, and LCPI will cause the delivery of the documents related to the LeMadre Junior Mezzanine Loan to Lehman Re.  Accordingly, LBHI will be entitled to the proceeds of the discounted payoff of the LeMadre Senior Mezzanine Loan, and Lehman Re will be entitled to the proceeds of the discounted payoff of the LeMadre Junior Mezzanine Loan.

### Relief Requested

11.    By this Motion, pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtors seek approval for LBHI and LCPI to settle their disputes and enter into discounted pay-offs (a) with respect to the Loft 44 Mortgage Loan and Loft 44 Mezzanine Loan by entering into a final agreement substantially in the form of the draft loan pay-off agreement attached hereto as Exhibit A (the "Loft 44 Loan Pay-Off Agreement"); (b) with respect the LeMadre Senior Mezzanine Loan by entering into a final agreement substantially similar to the draft loan pay-off agreement attached hereto as Exhibit B (the "LeMadre Senior Mezzanine Loan Pay-Off Agreement"); and (c) with respect to the LeMadre Junior Mezzanine Loan by entering into a final agreement substantially similar to the draft loan pay-off agreement attached hereto as Exhibit C (the "LeMadre Junior Mezzanine Loan Pay-Off Agreement;" and together with the LeMadre Senior Mezzanine Loan Pay-Off Agreement and the Loft 44 Loan Pay-Off Agreement, the "Loan Pay-Off Agreements").

### The Loft 44 Mortgage Loan

12.    On August 8, 2006, LBHI made a mortgage loan in the aggregate amount of up to $16,650,000 (the "Loft 44 Mortgage Loan") to 44th Street Partners I LLC ("Loft 44 Mortgage Borrower") in order to finance certain costs related to the acquisition, construction and development of the Loft 44 Project.  The Loft 44 Mortgage Loan is secured by, among other things, the Loft 44 Project (together with all collateral securing the Loft 44 Mortgage Loan, collectively, the "Loft 44 Mortgage Collateral").  In addition, certain of Loft 44 Mortgage

Borrower's obligations under the Loft 44 Mortgage Loan are guaranteed by Patrick Thompson

("Thompson") and Sammy Isamu Suzuki ("Suzuki") pursuant to various guaranty agreements.

13.     The Loft 44 Mortgage Loan matured on February 9, 2009.  As of

December 10, 2008, the Loft 44 Mortgage Borrower has failed to pay approximately

$16,563,049.49 of outstanding principal and interest, excluding fees.  Because of the Loft 44

Mortgage Borrower's failure to repay the Loft 44 Mortgage Loan upon maturity, such loan is

currently in default.  The Loft 44 Mortgage Borrower has advised the Debtors that it is unable to

repay its indebtedness in full to LBHI.  Given such alleged inability and the time and expense

that would be associated with attempting to compel repayment or foreclosing upon the Loft 44

Mortgage Collateral, the Debtors believe it is in the best interests of their estates to permit the

Loft 44 Mortgage Borrower to repay the Loft 44 Mortgage Loan with a discounted pay-off of

$10,000,000, plus payment of up to $600,000 upon the sale of certain units located at the Loft 44

Project, and, subject to certain caveats, to provide a covenant not to sue to Suzuki and Thompson

with respect to their guaranty obligations.

### The Loft 44 Mezzanine Loan

14.     On August 8, 2006, LBHI made a mezzanine construction loan, as

amended on May 29, 2008, in the aggregate amount of up to $7,782,000 (the "Loft 44

Mezzanine Loan;" and together with the Loft 44 Mortgage Loan, the "Loft 44 Loans") to 44th

Street Partners II LLC ("Loft 44 Mezzanine Borrower" and with the Loft 44 Mortgage Borrower,

the "Loft 44 Borrowers") in order to finance certain additional costs related to the construction

and development of the Loft 44 Project.  The Loft 44 Mezzanine Loan is secured by, among

other things, certain pledges in direct and indirect owners of the Loft 44 Project (together with all

collateral securing the Loft 44 Mezzanine Loan, collectively, the "Loft 44 Mezzanine

Collateral").  In addition, certain of Loft 44 Mezzanine Borrower's obligations under the Loft 44 Mezzanine Loan are guaranteed by Thompson.

15.    The Loft 44 Mezzanine Loan matured on February 9, 2009.  As of the date hereof, the Loft 44 Mezzanine Borrower has failed to pay approximately $3,615,257.82 of outstanding principal and interest, excluding fees.  Because of the Loft 44 Mortgage Borrower's failure to repay the Loft 44 Mortgage Loan upon maturity, such loan is currently in default. Notwithstanding this default, because the Loft 44 Mezzanine Loan was never fully funded by LBHI, the Mezzanine Borrower has alleged that LBHI did not satisfy its funding obligations under such loan and may continue to have additional funding obligations thereunder in an amount of up to $5,562,000 (the "Funding Obligations").  The Loft 44 Mezzanine Borrower has advised the Debtors that it is unable to repay its indebtedness in full to LBHI.  Due to such alleged inability, the time and expense that would be associated with attempting to compel repayment or foreclosing upon the Loft 44 Mezzanine Collateral, and the existence of potential claims of the Loft 44 Mezzanine Borrower regarding LBHI's alleged Funding Obligations, the Debtors believe it is in the bests interests of their estates to release the Loft 44 Mezzanine Borrower with respect to its outstanding payment obligations under the Loft 44 Mezzanine Loan and to provide a covenant not to sue to Thompson with respect to its guaranty obligations, in exchange for a release by the Loft 44 Mezzanine Borrower of, among other things, any claims against LBHI related to any Funding Obligations.

### The LeMadre Senior Mezzanine Loan

16.    On July 12, 2006, LBHI made a loan, as amended on August 15, 2007, to LeMadre Mezz LLC (the "Le Madre Senior Mezzanine Borrower") in the amount of up to $7,270,000 (the "LeMadre Senior Mezzanine Loan") in order to finance certain costs related to

the construction and development of the LeMadre Project.  The LeMadre Senior Mezzanine

Loan, is secured by, among other things, a pledge of certain membership interests in the owner

of the LeMadre Project (together with all collateral securing the LeMadre Senior Mezzanine

Loan, collectively, the "LeMadre Senior Mezzanine Collateral").  In addition, certain of

LeMadre Senior Mezzanine Borrower's obligations under the LeMadre Senior Mezzanine Loan

are guaranteed by Benjamin Shaoul ("Shaoul") and  Marc Ravner ("Ravner") pursuant to various

guaranty agreements.

　　　　　　　17.　　　The LeMadre Senior Mezzanine Borrower is currently in default under the

LeMadre Senior Mezzanine Loan for its failure to make an interest payment when due.  The

LeMadre Senior Mezzanine Borrower has also advised the Debtors that it is unable to repay its

outstanding indebtedness in full to LBHI, which, as of the date hereof, amounts to approximately

$7,932,355.85 in principal and interest, excluding fees.  Given such alleged inability and the time

and expense that would be associated with attempting to compel repayment or foreclosing upon

the LeMadre Senior Mezzanine Collateral, the Debtors believe it is in the best interests of their

estates to permit the LeMadre Senior Mezzanine Borrower to repay its loan with a discounted

pay-off of $7,370,000 and, subject to certain caveats, to provide a covenant not to sue to Shaoul

and Ravner with respect to their guaranty obligations.

### The LeMadre Junior Mezzanine Loan

　　　　　　　18.　　　On August 15, 2007, LBHI made a loan to M&B Mezz LLC ("LeMadre

Junior Mezzanine Borrower" and, together with LeMadre Senior Mezzanine Borrower and the

44 Loft Borrowers, the "Borrowers") in the amount of up to $7,200,000 (the "LeMadre Junior

Mezzanine Loan"; and together with the LeMadre Senior Mezzanine Loan, the "LeMadre

Loans"; and the LeMadre Loans, together with the Loft 44 Loans, the "Loans") in order to

finance certain additional costs related to the construction and development of the LeMadre Project.  The LeMadre Junior Mezzanine Loan, is secured by, among other things, certain pledges of certain membership interests in LeMadre Senior Mezzanine Borrower and a related entity (together with all collateral securing the LeMadre Junior Mezzanine Loan, collectively, the "LeMadre Junior Mezzanine Collateral"; and together with the LeMadre Senior Mezzanine Collateral, the "LeMadre Collateral").  In addition, certain of LeMadre Junior Mezzanine Borrower's obligations under the LeMadre Junior Mezzanine Loan are guaranteed by Shaoul and Ravner pursuant to various guaranty agreements.

19.    The LeMadre Junior Mezzanine Loan is cross-defaulted with the LeMadre Senior Mezzanine Loan and, therefore, due to the LeMadre Senior Mezzanine Borrower's default under the LeMadre Senior Mezzanine Loan, a default has also occurred under the LeMadre Junior Mezzanine Loan.  The LeMadre Junior Mezzanine Borrower has also advised the Debtors that it is unable to repay its indebtedness in full to LBHI, which, as of the date hereof, amounts to approximately $11,137,417.82 in principal and interest, excluding fees. Given such alleged inability and the time and expense that would be associated with attempting to compel repayment or foreclosing upon the LeMadre Junior Mezzanine Collateral, the Debtors believe it is in the best interests of their estates for the LeMadre Junior Mezzanine Borrower to repay its loan with a discounted pay-off of $1,000,000 and for Shaoul and Ravner to receive, subject to certain caveats, a covenant not to sue with respect to their guaranty obligations.

**The Dispute Among LBHI, LCPI and Lehman Re**

20.    The Lender Parties currently are engaged in disputes relating to the Repo Documents with respect to (i) the ownership status of the Loft 44 Mortgage Loan and LeMadre

Junior Mezzanine Loan and (ii) whether the LeMadre Senior Mezzanine Loan constitutes one of the Assets subject to the Repo Documents.

21.    Pursuant to the Repo Documents, LCPI and Lehman Re entered into certain agreements with respect to the ownership of the Assets, including the Loft 44 Mortgage Loan and the LeMadre Junior Mezzanine Loan.  Despite the foregoing, however, the Lender Parties currently disagree as to the ownership status of the Loft 44 Mortgage Loan and LeMadre Junior Mezzanine Loan due to certain ongoing disputes regarding whether the transactions contemplated under the Repo Documents were ever properly consummated.

22.    Additionally, the Lender Parties also dispute whether the LeMadre Senior Mezzanine Loan constitutes one of the Assets under the Repo Documents.  This is because, in connection with satisfying certain document delivery obligations with respect to the LeMadre Junior Mezzanine Loan pursuant to the Repo Documents, LCPI erroneously delivered certain documents relating to the LeMadre Senior Mezzanine Loan to Lehman Re.  Due to this erroneous delivery, Lehman Re has claimed that the LeMadre Senior Mezzanine Loan constitutes one of the Assets subject to the Repo Documents and that Lehman Re consequently also has an ownership interest in the LeMadre Senior Mezzanine Loan, which the Debtors dispute.

## The Loan Pay-Off Agreements

23.    In order to resolve the disputes among the Lender Parties and due to the alleged inability of the Borrowers to repay the Loans in full, the Lender Parties and the Borrowers wish to enter into finalized agreements substantially similar to the Loan Pay-Off Agreements (the "Compromise").  Given that the Borrowers have defaulted under the Loans and have advised the Debtors that they are unable to repay the Loans in full, the Debtors believe that

the Compromise will allow a reasonable recovery from the Loans, while avoiding the time and

expense of attempting to compel payment or foreclosing on the collateral securing the Loans.

Moreover, the Compromise will enable the Debtors to resolve their disputes with Lehman Re

regarding the Disputed Loans and avoid the time and expense of litigating the ownership status

of such loans.

24.     The salient terms of the Loan Pay-Off Agreements are as follows:[1]

| | |
|---|---|
| ***The Loft 44 Loan Pay-Off Agreement*** | The Lender Parties will accept in full repayment of the Loft 44 Mortgage Loan an amount equal to the sum of $10,000,000 as well as an additional payment in an aggregate amount of no less than $400,000 and no greater than $600,000 upon the sale of certain units located in the Loft 44 Project (the "<u>Loft 44 Pay-Off Amount</u>"). |
| | The entirety of the Loft 44 Pay-Off Amount shall be paid to Lehman Re.  No part of the Loft 44 Pay-Off Amount shall be available to repay the Loft 44 Mezzanine Loan. |
| | LBHI will release the Loft 44 Mezzanine Borrower from its repayment obligations under the Loft 44 Mezzanine Loan.  The Loft 44 Mezzanine Borrower will release LBHI from any claims relating to any alleged Funding Obligations. |
| ***The LeMadre Senior Mezzanine Loan Pay-Off Agreement*** | LCPI will cause the delivery of the documents related to the LeMadre Junior Mezzanine Loan to Lehman Re in exchange for the delivery by Lehman RE to LBHI of the documents related to the LeMadre Senior Mezzanine Loan. |
| | The Lender Parties shall agree to accept, in full repayment of the LeMadre Senior Mezzanine Loan an amount (the "<u>LeMadre Senior Mezzanine Pay-Off Amount</u>") equal to $7,370,000. |
| | The entirety of the LeMadre Senior Mezzanine Pay-Off Amount shall be paid to LBHI. |
| ***The LeMadre Junior Mezzanine Loan Pay-*** | LCPI will cause the delivery of the documents related to the LeMadre Junior Mezzanine Loan to Lehman Re in exchange for the |

---

[1] This summary of the Loan Pay-Off Agreements (this "<u>Summary</u>") is qualified in its entirety by the provisions of the Loan Pay-Off Agreements.  This Summary is intended to be used for information purposes only and shall not in any way affect the meaning or interpretation of the Loan Pay-Off Agreements.

*Off Agreement*                    delivery by Lehman Re to LBHI of the documents related to the
                                   LeMadre Senior Mezzanine Loan.

                                   The Lender Parties shall accept, in full repayment of the LeMadre
                                   Junior Mezzanine Loan, the amount of $1,000,000 (the "LeMadre
                                   Junior Mezzanine Pay-Off Amount").

                                   The entirety of the LeMadre Junior Mezzanine Pay-Off Amount shall
                                   be paid to Lehman Re.

### The Loan Pay-Off Agreements Meet the Legal Standard
### Established Under Rule 9019 and Are in the Bests Interests of LBHI's Estate

25.     The Debtors submit that the proposed Compromise is in the Debtors' best

interests and should be approved under Rule 9019 of the Bankruptcy Rules. As part of the

Compromise, the Debtors are releasing certain claims as part of a settlement that requires

approval under Bankruptcy Rule 9019. Bankruptcy Rule 9019 provides, in part, that "[o]n

motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a

compromise or settlement." Fed. R. Bankr. P. 9019(a). This rule empowers bankruptcy courts to

approve settlements "if they are in the best interests of the estate." Vaughn v. Drexel Burnham

Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.) 134 B.R. 499, 505 (Bankr.

S.D.N.Y. 1991); see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.

v. Anderson, 390 U.S. 414, 424 (1968); Fisher v. Pereira (In re 47-49 Charles St., Inc.), 209 B.R.

618, 620 (S.D.N.Y. 1997); In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993),

aff'd, 17 F.3d 600 (2d Cir. 1994). A decision to accept or reject a compromise or settlement is

within the sound discretion of the Court. Drexel Burnham Lambert Group, 134 B.R. at 505; see

also 9 Collier on Bankruptcy ¶ 9019.02 (15th ed. rev. 2001). The settlement need not result in

the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range

of reasonableness." Drexel Burnham Lambert Group, 134 B.R. at 505. See also Cosoff v.

Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983); In re Spielfogel, 211 B.R.

133, 144 (Bankr. E.D.N.Y. 1997).  Indeed, courts have long considered compromises to be "a

normal part of the process of reorganization."  TMT Trailer Ferry, 390 U.S. at 424 (quoting Case

v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939).

    26.    The decision to approve a particular compromise lies within the sound

discretion of the bankruptcy court.  Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994).

Additionally, a court may exercise its discretion "in light of the general public policy favoring

settlements."  In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

However, the analysis must focus on the question of whether a particular compromise is "fair

and equitable, and in the best interest of the estate."  In re Best Products, 165 B.R. 35, 50 (Bankr.

S.D.N.Y. 1994) (internal citations omitted).

    27.    While a court must "evaluate … all … factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," Anderson, 390 U.S. at 424-25, a court

need not conduct a "mini-trial" of the merits of the claims being settled, W.T. Grant Co., 699

F.2d at 608, or conduct a full independent investigation.  Drexel Burnham Lambert Group, 134

B.R. at 496.  "[T]he bankruptcy judge does not have to decide the numerous questions of law and

fact…. The court need only canvass the settlement to determine whether it is within the accepted

range of reasonableness."  Nellis, 165 B.R. at 123 (internal citations omitted).

    28.    The court may give weight to the "informed judgments of the … debtor-

in-possession and their counsel that a compromise is fair and equitable, and consider the

competency and experience of counsel who support the compromise."  Drexel Burnham Lambert

Group, 134 B.R. at 505 (internal citations omitted); see also In re Purofied Down Prods. Corp.,

150 B.R. 519, 522 (S.D.N.Y. 1993); accord In re Ashford Hotels Ltd., 226 B.R. 797, 802 (Bankr.

S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for

the Trustee's, but only that I test his choice for reasonableness…. If the Trustee chooses one of

two reasonable choices, I must approve that choice, even if, all things being equal, I would have

selected the other.").

29.     There is no requirement that "the value of the compromise … be dollar-

for-dollar the equivalent of the claim." Ionosphere Clubs, Inc., 156 B.R. at 427. Instead, "there

is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or

even a thousandth part of a single percent of the potential recovery." Id. at 427-28 (quoting City

of Detroit v. Grinnell Corp., 495 F.2d 448 (2nd Cir. 1974).

## A.      The Settlement with Lehman RE

30.     The Debtors have concluded that the Loan Pay-Off Agreements and

associated Compromise provide the best framework for settling their disputes with Lehman Re.

By entering into the Loan Pay-Off Agreements and settling the disputes with Lehman Re, the

Debtors are maximizing the value of their estates by obtaining an upfront pay-off in the amount

of $7,370,000 in respect of the LeMadre Senior Mezzanine Loan. Given that LBHI is not

currently in possession of the documents related to the LeMadre Senior Mezzanine Loan, the

Compromise allows the Debtors to avoid the time and expense of litigation against Lehman Re

to attempt to obtain possession of such documents. In addition, the compromise permits the

Debtors to resolve the ownership dispute regarding the Loft 44 Mortgage Loan and the LeMadre

Junior Mezzanine Loan without having to expend significant resources on litigation.

## B.      The Settlements with the Borrowers

31.     Similarly, the Debtors have also determined that the Loan Pay-Off

Agreements and associated Compromise provide the best framework for settling the existing

disputes among LBHI, LCPI and the various Borrowers under the Loans. The Compromise

eliminates the need for the Debtors to expend resources to attempt to compel repayment of the

Borrowers' indebtedness under the Loans or to foreclose on the collateral securing such loans.
Indeed, foreclosing on such collateral would be difficult, and given the current economic
environment and the current depressed value of the real estate market, the Debtors would be
unlikely to benefit from the intrinsic value of the collateral securing the various Loans even in
the event of foreclosure.  By entering into the Loan Pay-Off Agreements, however, LBHI is able
to obtain a reasonable recovery of the amounts currently outstanding under the LeMadre Senior
Mezzanine Loan by immediately receiving the $7,370,000 cash payment.  In addition, by
entering into the Compromise, LBHI and LCPI will also obtain releases from the various
Borrowers under the Loans, thereby eliminating any claims that such Borrowers may have
against LBHI and/or LCPI.  These releases are particularly significant with respect to the Loft 44
Mezzanine Loan given the fact that they discharge LBHI from any claim the Loft 44 Mezzanine
Borrower may have with respect to LBHI's alleged Funding Obligations.

        32.     In addition, while LBHI would not receive payment on account of the Loft
44 Mezzanine Loan under the terms of the Loft 44 Loan Pay-Off Agreement, because the Loft
44 Mezzanine Loan is junior to the Loft 44 Mortgage Loan in right of payment, the likelihood
that LBHI would be able to collect payment on account of the Loft 44 Mezzanine Loan if the
Compromise were not consummated would be remote given current market conditions and
depressed real estate values.  As a result, the benefit of the Compromise to the Debtors, their
estates and their creditors resulting from the Loft 44 Mezzanine Borrower's release of, among
other things, any claims against LBHI with respect to LBHI's alleged Funding Obligations
substantially outweighs LBHI's agreement to release the Loft 44 Mezzanine Borrower from its
repayment obligations.

33.     Accordingly, the Debtors request that the Court approve the Loan Pay-Off

Agreements and the associated Compromise so that the Debtors may preserve value for the

benefit of their estates and creditors.

**The Compromise is an Appropriate**
**Exercise of the Business Judgment of LBHI and LCPI**

34.     Ample authority exists for approval of the proposed Compromise.  Section

363 of the Bankruptcy Code provides, in relevant part, "[t]he trustee, after notice and a hearing,

may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11

U.S.C. § 363(b)(1).  While section 363 of the Bankruptcy Code does not set forth a standard for

determining when it is appropriate for a court to authorize the sale, disposition or other use of a

debtor's assets, courts in the Second Circuit and others, in applying this section, have required

that it be based upon the sound business judgment of the debtor.  See In re Chateaugay Corp.,

973 F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must

find from the evidence presented a good business reason to grant such application); Comm. of

Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983)

(same).

35.     For the reasons set forth above, approval of the Compromise is in the best

interests of the Debtors' estates.  By settling LBHI's and LCPI's existing disputes with Lehman

Re and the various Borrowers, the Compromise will enable LBHI to receive an upfront cash

payment of $7,370,000 and thereby allow LBHI to preserve the value of its collateral, value

which otherwise would be at risk of material deterioration given current market conditions.  By

operation of the releases contained in the Loan Pay-Off Agreements, the Compromise will

benefit the Debtors' estates by potentially reducing any claims that the various Borrowers may

have against LBHI and/or LCPI arising out of the various Loans.  Importantly, the Creditors'

Committee has been apprised of the foregoing transactions and Compromise and supports the

relief requested.  As such, entry into Loan Pay-Off Agreements and the associated Compromise

is in the best interests of the Debtors and their estates and creditors and, consequently, should be

approved.

**<u>Notice</u>**

36.    No trustee has been appointed in these chapter 11 cases.  The Debtors

have served notice of this Motion in accordance with the procedures set forth in the amended

order entered on February 13, 2009 governing case management and administrative procedures

for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service;

(v) the United States Attorney for the Southern District of New York; (vi) counsel to the Loft 44

Borrowers; (vii) counsel for the LeMadre Senior Mezzanine Borrower and LeMadre Junior

Mezzanine Borrower; (viii) counsel for Lehman Re; and (ix) all parties who have requested

notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be

provided.

37.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: May 14, 2009
       New York, New York


                            /s/ Shai Y. Waisman
                            Shai Y. Waisman

                            WEIL, GOTSHAL & MANGES LLP
                            767 Fifth Avenue
                            New York, New York 10153
                            Telephone: (212) 310-8000
                            Facsimile: (212) 310-8007

                            Attorneys for Debtors
                            and Debtors in Possession

## Exhibit A

Draft Loft 44 Loan Pay-Off Agreement

<u>LOAN PAY-OFF AGREEMENT</u>
<u>(44TH STREET)</u>

THIS LOAN PAY-OFF AGREEMENT ("**Agreement**") is made as of the [____] day of May, 2009 (the "**Effective Date**"), by and among 44th STREET PARTNERS I LLC, a Delaware limited liability company (in its capacity as the borrower under the Mortgage Loan (as hereinafter defined), the "**Mortgage Borrower**"; and in its capacity as the project owner whose interests were pledged to LBHI pursuant to the Project Owner Pledge (as hereinafter defined), the "**Project Owner**"), 44th STREET PARTNERS II LLC, a Delaware limited liability company ("**Mezzanine Borrower**"), PATRICK THOMPSON, an individual (in his capacity as a guarantor under the Mortgage Loan, the "**Thompson Mortgage Guarantor**" and in his capacity as a guarantor under the Mezzanine Loan (as hereinafter defined), the "**Mezzanine Guarantor**" and in his capacity as a pledgor under the Patrick Pledge (as hereinafter defined), the "**Patrick Pledgor**"), SAMMY ISAMU SUZUKI, an individual (in his capacity as a guarantor under the Mortgage Loan, the "**Suzuki Mortgage Guarantor**", SUZUKI GROUP LLC, a New York limited liability company, in its capacity as a pledgor under that certain Pledge and Security Agreement (Interests in Holdings) dated as of August 8, 2006, the "**Suzuki Group Pledgor**"; Thompson Mortgage Guarantor, Suzuki Mortgage Guarantor, the Suzuki Group Pledgor, and Mezzanine Guarantor are collectively referred to herein as "**Guarantors**"), 44TH STREET HOLDINGS LLC, a Delaware limited liability company ("**Holdings**") and TWP CAPITAL HOLDINGS I, LLC, a New York limited liability company ("**TWP**"; and together with Mezzanine Borrower, Patrick Pledgor, and Holdings, the "**Pledgors**"), LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**"), LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**"), and LEHMAN RE LTD., a Bermuda corporation ("**Lehman Re**"). Mortgage Borrower, Thompson Mortgage Guarantor, Suzuki Mortgage Guarantor and Suzuki Group Pledgor are hereinafter collectively referred to as the "**Mortgage Borrower Parties**". Mezzanine Borrower, Mezzanine Guarantor, Project Owner, Holdings, Suzuki Group Pledgor, Patrick Pledgor and TWP are hereinafter collectively referred to from time to time as the "**Mezzanine Borrower Parties**". Mortgage Borrower Parties and Mezzanine Borrower Parties are hereinafter collectively referred to as the "**Borrower Parties**". LBHI, LCPI and Lehman Re are hereinafter collectively referred to from time to time as "**Lender Parties**".

R E C I T A L S

A.    Subject to the terms and conditions of (i) that certain Master Credit Agreement, dated as of August 8, 2006, by and between Mortgage Borrower and LBHI, as amended by that certain First Amendment to Master Credit Agreement and Ratification of Environmental Indemnity and Guaranties, dated as of June 11, 2007, by and among, inter alia, Mortgage Borrower, LBHI, Thompson Mortgage Guarantor and Suzuki Mortgage Guarantor, and further amended pursuant to that certain Omnibus Amendment to Senior Loan Documents and Ratification of Environmental Indemnity and Guaranties, dated as of May 29, 2008, made by and among LBHI, Mortgage Borrower, and Thompson Mortgage Guarantor (the "**Mortgage Loan Omnibus Amendment**") (the "**Land Loan Agreement**"), and further amended by that certain Extension Agreement, dated as of August 19, 2008, by and among LBHI, Mortgage

Borrower, and Thompson Mortgage Guarantor (the "**Extension Agreement**"), (ii) that certain Building Loan Agreement, dated as of August 8, 2006, by and between Mortgage Borrower and LBHI, as amended by the Mortgage Loan Omnibus Amendment and the Extension Agreement (the "**Building Loan Agreement**") and (iii) that certain Project Loan Agreement, dated as of August 8, 2006, by and between Mortgage Borrower and LBHI, as amended by the Mortgage Loan Omnibus Amendment and the Extension Agreement (the "**Project Loan Agreement**"; the Land Loan Agreement, the Building Loan Agreement and the Project Loan Agreement are hereinafter collectively referred to from time to time as the "**Mortgage Loan Agreement**"), LBHI made mortgage loans to Mortgage Borrower in the aggregate amount of up to $16,650,000.00 (collectively, the "**Mortgage Loan**").

B.    The Mortgage Loan is evidenced by (i) that certain Amended, Restated and Consolidated Land Loan Promissory Note, dated August 8, 2006, in the original principal amount of up to $4,363,650.34, (ii) that certain Amended, Restated and Consolidated Building Loan Promissory Note, dated August 8, 2006, in the original principal amount of up to $10,345,866.01, and (iii) that certain Project Loan Promissory Note, dated August 8, 2006, in the original principal amount of up to $1,940,483.65, each given by Mortgage Borrower to LBHI and evidencing Advances (as defined in the Mortgage Loan Agreement) under the Mortgage Loan (collectively, the "**Mortgage Note**").

C.    The Mortgage Loan is secured by, among other things, (i) that certain Amended, Restated and Consolidated Land Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement, dated as of August 8, 2006, given by Mortgage Borrower to LBHI (the "**Land Loan Mortgage**") encumbering certain real property located in the City, County and State of New York as more particularly described on Exhibit A attached hereto and made a part hereof (the "**Premises**"), (ii) that certain Absolute Assignment of Leases and Rents, dated as of August 8, 2006, given by Mortgage Borrower to LBHI (the "**Assignment of Leases and Rents**", (iii) that certain Amended, Restated and Consolidated Building Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement, dated as of August 8, 2006 given by Mortgage Borrower to LBHI encumbering the Premises (the "**Building Loan Mortgage**"**),** (iv) that certain Project Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement, dated as of August 8, 2006 given by Mortgage Borrower to LBHI encumbering the Premises (the "**Project Loan Mortgage**"; the Land Loan Mortgage, the Building Loan Mortgage and the Project Loan Mortgage, together with all other documents securing the Mortgage Loan, collectively, the "**Security Instruments**").

D.    Certain of Mortgage Borrower's obligations under the Mortgage Loan are guaranteed by the Thompson Mortgage Guarantor and the Suzuki Mortgage Guarantor pursuant to (1) that certain Guaranty of Recourse Obligations, dated as of August 8, 2006, in favor of LBHI (the "**Recourse Guaranty**"), (2) that certain Guaranty of Payment and Completion, dated as of August 8, 2006, in favor of LBHI (the "**Payment and Completion Guaranty**") and (3) that certain Environmental and Hazardous Substances Indemnification Agreement, dated as of August 8, 2006, in favor of LBHI (the "**Environmental Indemnity**").

E.     The Mortgage Loan Agreement, the Mortgage Note, the Security Instruments, the Recourse Guaranty, the Payment and Completion Guaranty, the Environmental Indemnity and the other documents and instruments executed by Mortgage Borrower, the Thompson Mortgage Guarantor and/or the Suzuki Mortgage Guarantor evidencing, securing or otherwise relating to the Mortgage Loan are hereinafter collectively referred to as the "**Mortgage Loan Documents**."  A complete list of the Mortgage Loan Documents is set forth on <u>Exhibit B-1</u> attached hereto and incorporated herein by reference.

F.     Subject to the terms and conditions of that certain Mezzanine Construction Loan Agreement, dated August 8, 2006, by and between Mezzanine Borrower and LBHI (the "**Loan Agreement**"), as amended by that certain Omnibus Amendment to Mezzanine Loan Documents and Ratification of Environmental Indemnity and Guaranties, dated as of May 29, 2008 (the "**Omnibus Amendment**"), and further amended by that certain Extension Agreement, dated as of August 19, 2008 (the "**Mezz Extension Agreement**"; the Omnibus Amendment, together with the Loan Agreement and the Mezz Extension Agreement, collectively, the "**Mezzanine Loan Agreement**"), LBHI made a loan to Mezzanine Borrower in the amount of up to $7,782,000.00 (the "**Mezzanine Loan**").

G.     The Mezzanine Loan is evidenced by that certain Amended, Restated and Increased Secured Promissory Note dated as of May 29, 2008 in the original principal amount of $7,782,000.00 given by Mezzanine Borrower to LBHI and evidencing Advances (as defined in the Mezzanine Loan Agreement) under the Mezzanine Loan (the "**Mezzanine Note**").

H.     The Mezzanine Loan is secured by, among other things, (i) that certain Pledge and Security Agreement (Interests in Project Owner), dated as of August 8, 2006, given by Mezzanine Borrower to LBHI constituting a perfected pledge and assignment of Mezzanine Borrower's 100% membership interest in Project Owner, together with the Consent of Project Owner thereto and the Control Agreement thereto (the "**Project Owner Pledge**"); (ii) that certain Pledge and Security Agreement (Interests in Borrower), dated as of August 8, 2006, given by Holdings to LBHI constituting a perfected pledge and assignment of Holdings' 100% membership interest in Mezzanine Borrower, together with the Consent of Mezzanine Borrower thereto and the Control Agreement thereto (the "**Holdings Pledge**"); (iii) that certain Amended and Restated  Pledge and Security Agreement (Interests in Holdings), dated as of May 29, 2008, given by TWP to LBHI, constituting a perfected pledge and assignment of TWP's 100% membership interest in Holdings, together with the Consent of Holdings thereto and the Control Agreement thereto (the "**TWP Pledge**"); and (iv) that certain Pledge and Security Agreement (Interests in TWP Capital Holdings I, LLC), dated as of August 8, 2006, given by Patrick Pledgor to LBHI constituting a perfected pledge and assignment of Patrick Pledgor's 100% membership interest in TWP, together with the Consent of TWP thereto and the Control Agreement thereto (the "**Patrick Pledge**").  The Project Owner Pledge, the Holdings Pledge, the TWP Pledge and the Patrick Pledge are collectively hereinafter referred to as the "**Pledge Agreements**".

I.     Certain of Mezzanine Borrower's obligations under the Mezzanine Loan are guaranteed by Mezzanine Guarantor pursuant to (1) that certain Guaranty of Recourse Obligations, dated as of August 8, 2006, in favor of LBHI (the "**Mezz Recourse Guaranty**"), (2) that certain Guaranty of Payment and Completion, dated as of August 8, 2006, in favor of

LBHI (the "**Mezz Payment and Completion Guaranty**") and (3) that certain Environmental and Hazardous Substance Indemnification Agreement, dated as of August 8, 2006, in favor of LBHI (the "**Mezz Environmental Indemnity**"; and together with the Environmental Indemnity, the "**Environmental Indemnities**").

J.      The Mezzanine Loan Agreement, the Mezzanine Note, the Pledge Agreements, the Mezz Recourse Guaranty, the Mezz Payment and Completion Guaranty, the Mezz Environmental Indemnity, and the other documents and instruments executed by Mezzanine Borrower and/or the Mezzanine Guarantor evidencing, securing or otherwise relating to the Mezzanine Loan are hereinafter collectively referred to as the "**Mezzanine Loan Documents**."   A complete list of the Mezzanine Loan Documents is set forth on Exhibit B-2 attached hereto and incorporated herein by reference.

K.      Pursuant to the terms of that certain Master Repurchase Agreement dated as of July 9, 1999 (the "**Repurchase Agreement**"; and together with any and all documents executed and/or delivered in connection with the Repurchase Agreement, the "**Repo Documents**") by and among Lehman Re, LCPI and Lehman Brothers Inc., Lehman Re and LCPI entered into certain agreements with respect to certain loan and other assets originated by LBHI and/or certain affiliates of LBHI, including the Mortgage Loan.

L.      Lender Parties advise that they have had certain disputes regarding the ownership status of the Mortgage Loan and, subject to Paragraph 12(T) hereof, have resolved such disputes as evidenced by their agreements herein.

M.      Subject to obtaining approval by the U.S. Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") of this Agreement and the terms hereof, including Paragraph 12(T) hereof, Lender Parties have agreed to accept the Payoff Consideration as full repayment of the Mortgage Loan and LBHI and Mezzanine Borrower Parties have agreed to terminate the Mezzanine Loan, including any obligations of LBHI, if any, to provide additional funding thereunder, subject to the terms and provisions of this Agreement.

O.      Initially capitalized terms used but not defined herein shall have the meanings set forth in the Mortgage Loan Agreement and, if not defined therein, in the Mezzanine Loan Agreement.

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower Parties and Lender Parties hereby agree as follows:

1.      Repayment of Mortgage Loan and the Mezzanine Loan.

A.      Amount of Repayment.   LBHI and Mezzanine Borrower Parties hereby terminate the Mezzanine Loan and all of the Mezzanine Loan Documents, including any obligations of LBHI thereunder, if any, to provide additional funding, and Lender Parties shall accept, in full repayment of the Mortgage Loan (including principal, interest and all other amounts payable by Mortgage  Borrower under the Mortgage Loan Documents) the following

consideration (the "**Payoff Consideration**") payable as follows: (i) on the Closing Date (as hereinafter defined), the Borrower Parties shall pay to or at the direction of Lehman Re the sum of TEN MILLION AND 00/100 DOLLARS ($10,000,000.00) (the "**Payoff Amount**") and (ii) Mortgage Borrower shall pay to or at the direction of the Lehman Re the Additional Principal Payment (as defined in Exhibit C) in accordance with the provisions of Exhibit C attached hereto and incorporated herein by reference.  It is expressly understood and agreed that the obligation to pay the Additional Principal Interest Payment shall survive the Close of Escrow (as hereinafter defined).

B.    Manner of Payment.  The Payoff Amount shall be paid as follows:

i.    Borrower shall deposit the Payoff Amount and the Closing Costs (as hereinafter defined) with [_____] ("**Escrow Holder**") at least one (1) Business Day prior to the Closing Date by wire transfer or other immediately available funds.

ii.    All sums required to be delivered by Borrower Parties hereunder on or before the Closing Date shall be delivered by wire transfer or in other immediately available funds.

2.    Escrow.  This Agreement shall constitute both an agreement between the Lender Parties and the Borrower Parties and escrow instructions to Escrow Holder.  Lender Parties and Borrower Parties have established an escrow ("**Escrow**") with Escrow Holder by delivery to Escrow Holder of a fully-executed copy of this Agreement.  Any and all amounts delivered to the Escrow Holder by the Borrower Parties pursuant to the terms of this Agreement (collectively, the "**Escrowed Funds**") as well as all documents received by the Escrow Holder pursuant to this Agreement (collectively, "**Escrowed Documents**") shall be held by Escrow Holder in escrow in accordance with the provisions of Exhibit D attached hereto and incorporated herein by reference.  Escrow Holder has executed this Agreement for the sole and exclusive purpose of evidencing its agreement to the provisions of Paragraphs 2, 3, 4, and 5 and Exhibit D attached hereto.

A.    Mortgage Borrower represents and warrants that Borrower's tax identification number is [_____].  Mezzanine Borrower represents and warrants that Mezzanine Borrower's tax identification number is [_____].

B.    Close of Escrow.  Provided that all conditions precedent to the close of Escrow have been satisfied, Escrow Holder shall close the Escrow ("**Close of Escrow**") on the date which is 30 days after the date hereof (the "**Initially Scheduled Closing Date**") or such earlier date agreed upon by Lender Parties and Borrower Parties; provided, however, that Borrower Parties, on written notice to Lender Parties, shall have the one-time right given at any time on or before the Initially Scheduled Closing Date, to adjourn the Close of Escrow to a date (such adjourned date being referred to herein as the "**Rescheduled Closing Date**"), not later than 30 days from the Initially Scheduled Closing Date (such Initially Scheduled Closing Date or, if Borrower Parties elect to adjourn the Close of Escrow as hereinabove provided, the Rescheduled Closing Date is referred to as the "**Closing Date**").  If the Escrow is not closed on or before the Closing Date, or if any condition set forth in Paragraph 4A is not satisfied on or before the date set forth therein for the satisfaction of such condition, then Lender Parties shall have the right (in

addition to the Lender Parties' rights under the Mortgage Loan Documents and the Mezzanine Loan Documents), by written notice to Borrower Parties and Escrow Holder, to terminate this Agreement and the obligations of the parties hereunder but such termination shall not release the Borrower Parties from liability for any breach of this Agreement occurring prior to the termination of this Agreement.  Each of the Borrower Parties acknowledges and agrees that the agreement of Lender Parties to accept the Payoff Consideration contained in Paragraph 1 in full satisfaction of both the Mortgage Loan and the Mezzanine Loan shall be null and void if the Close of Escrow does not occur on or before the Closing Date.

C.    Closing Costs.  Borrower Parties shall pay for the following fees and expenses (the "**Closing Costs**"): (i) any and all escrow fees, filing and recording charges, documentary transfer,  recording taxes (if any), transfer taxes, and any other similar costs and expenses incurred in connection with the transactions contemplated by this Agreement; and (ii) Lender Parties' attorneys' fees of Cadwalader, Wickersham & Taft, LLP only incurred in connection with the preparation and negotiation of all documentation for, and the consummation of, the transactions contemplated by this Agreement.

3.    Deliveries to Escrow.  The Borrower Parties and Lender Parties shall deliver or cause to be delivered to Escrow Holder the following items at least one (1) Business Day prior to the Closing Date:

A.    By Borrower Parties.

(i)    Borrower Parties shall deliver or cause to be delivered the sum of (x) the Payoff Amount, (ii) the Closing Costs and (iii) all other amounts to be paid by Borrower Parties hereunder by wire transfer to the Escrow Holder but expressly excluding the Additional Principal Payment which shall be payable by Mortgage Borrower in accordance with the provisions of Exhibit C attached hereto and incorporated herein by reference.

(ii)    the Borrower Parties shall deliver to the Escrow Holder three (3) duly executed and acknowledged duplicate originals of each of the releases (each, a "**Release**") in the forms attached hereto as Exhibit E-1 and Exhibit E-2, as appropriate.

B.    By Lender Parties.  The Lender Parties shall deliver to Escrow Holder (i) one original loan payoff letter with respect to each of the Mortgage Loan and the Mezzanine Loan (collectively, the "**Loan Payoff Letter**") stating that upon the Close of Escrow and receipt by Lender Parties of the Payoff Amount and all other amounts to be paid by Borrower Parties hereunder, but subject to the terms and conditions of this Agreement, the lien of the Pledge Agreements will be automatically released and the Borrower Parties shall be authorized to file terminations of any and all UCC financing statements in favor of Lender Parties in connection with the Mezzanine Loan, (ii) the original Mezzanine Note with an instruction to Escrow Holder to mark such original Mezzanine Note "cancelled" upon the Close of Escrow, and (iii)  the original Mortgage Note with an instruction to Escrow Holder to mark such original Mortgage Note "cancelled" upon the Close of Escrow and termination of the Mortgage Loan Documents or, in the alternative, an executed allonge to the Mortgage Note, together with assignments of the Mortgage Loan Documents (without recourse and without representation or warranty of any kind

or nature), in form reasonably satisfactory to Lender Parties, in favor of Mortgage Borrower or Mortgage Borrower's nominee.

4.      Conditions to Close of Escrow.

A.      Conditions Precedent to Lender Parties' Obligations to Close Escrow. The obligation of Lender Parties to close Escrow shall be subject to the satisfaction of all of the following conditions precedent:

i.      Borrower Parties' Performance.  The Borrower Parties shall have performed, satisfied and complied with all covenants, agreements and conditions (including the timely delivery of funds and documents) required by this Agreement, the Mortgage Loan Documents and the Mezzanine Loan Documents to be performed or complied with by the Borrower Parties on or before the Closing Date, and the representations and warranties of the Borrower Parties set forth in Paragraph 8 shall be true and correct as of the Effective Date and as of the Closing Date as if made on and as of the Closing Date.

ii.      Simultaneous Payoff of the Mortgage Loan and Termination of the Mezzanine Loan.  Lehman Re shall have received payment of the Payoff Amount in full satisfaction of all amounts outstanding under the Mortgage Loan simultaneously with Mezzanine Borrower Parties and LBHI terminating the Mezzanine Loan, including any obligations for additional funding by LBHI, if any, thereunder.

iii.      Simultaneous or Prior Consummation of Certain Other Loan Payoff Agreements.  Lender Parties have previously consummated or are consummating simultaneously with the consummation of the transactions contemplated under this Agreement (i) the transactions contemplated under that certain Loan Payoff Agreement (M&B Senior Mezzanine Loan) by and among Lemadre Mezz LLC, Benjamin Schaoul, Marc Ravner and Lender Parties, and (ii) the transactions contemplated under that certain Loan Payoff Agreement (M&B Junior Mezzanine Loan) by and among M&B  Mezz LLC, M&B Realty Development LLC, Benjamin Schaoul, Marc Ravner and Lender Parties and Lender Parties have received payment in full of the Payoff Amount (as such term is defined in each of the agreements set forth in (i) and (ii) above) thereunder.

B.      Conditions Precedent to Borrower Parties' Obligation.  The obligation of the Borrower Parties to close Escrow shall be subject to Lender Parties performing, satisfying and complying with all covenants, agreements and conditions required by this Agreement to be performed or complied with by Lender Parties hereunder on or before the Closing Date.

5.        Close of Escrow.  At the Close of Escrow, Escrow Holder shall promptly undertake all of the following in the order set forth below:

A.        Funds.  Disburse the Escrowed Funds as follows:

i.        Wire funds in the amount of the Payoff Amount to one or more accounts directed in writing by Lehman Re and provided to Escrow Holder by Lehman Re prior to the Close of Escrow.

ii.        Wire the Closing Costs payable to or on behalf of Lender Parties in accordance with the joint written instructions of Lender Parties delivered to the Escrow Holder prior to the Close of Escrow.

iii.        Wire all other amounts deposited by Borrower Parties with Escrow Holder to pay the amounts owed by Borrower Parties hereunder at the Close of Escrow, which amounts shall be wired to one or more accounts directed in writing by Lehman Re and provided to Escrow Holder by Lehman Re prior to the Close of Escrow.

B.        Delivery of Documents to Lender Parties.  Deliver to each of the Lender Parties one fully executed original of each of the Releases.

C.        Delivery of Documents to Mortgage Borrower and Mezzanine Borrower .  Deliver to Mortgage Borrower and Mezzanine Borrower (1) the original Loan Payoff Letters, (2) the original Mortgage Note marked "cancelled", (3) the original Mezzanine Note marked "cancelled", and (4) an original Satisfaction of Mortgage and Assignment of Leases and Rents or, in the alternative, at the election of Borrower Parties under Section 3(B) above, documents assigning the Mortgage Loan to Borrower Parties' nominee.

6.    <u>Default Under the Mortgage Loan Documents</u>.  Each of the Mortgage Borrower Parties acknowledges that Mortgage Borrower is currently in default beyond the expiration of all applicable grace or cure periods therefor under the Mortgage Loan Documents, none of the Lender Parties has declared the existence of an Event of Default but rather each of the Lender Parties has reserved all of its rights and remedies with respect to the Mortgage Loan and the Mortgage Loan Documents.

7.    <u>Default Under the Mezzanine Loan Documents</u>.  Each of the Mezzanine Borrower Parties acknowledges that Mezzanine Borrower is currently in default beyond the expiration of all applicable grace or cure periods therefor under the Mezzanine Loan Documents, none of the Lender Parties has declared the existence of an Event of Default but rather each of the Lender Parties has reserved all of its rights and remedies with respect to the Mezzanine Loan and the Mezzanine Loan Documents.

8.    <u>Representations and Warranties</u>.  As a material inducement to Lender Parties' execution of this Agreement, the Borrower Parties hereby represent and warrant to Lender Parties as follows:

A.    <u>Consents</u>.  Borrower Parties have each obtained all consents and permissions related to the transactions herein contemplated and required under any covenant, agreement, encumbrance, law or regulation.

B.    <u>Due Authorization, Execution, and Organization</u>.  This Agreement and all agreements, instruments and documents herein provided to be executed by the Borrower Parties are and on the Closing Date will be duly authorized, executed and delivered by and are and will be binding upon the respective Borrower Parties thereto.  Mortgage Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and duly authorized and qualified to do all things required of it under this Agreement.  Mezzanine Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and duly authorized and qualified to do all things required of it under this Agreement.  Project Owner is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and duly authorized and qualified to do all things required of it under this Agreement.  Holdings is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and duly authorized and qualified to do all things required of it under this Agreement.  TWP is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and duly authorized and qualified to do all things required of it under this Agreement.  Each of the Borrower Parties has the capacity and authority to enter into this Agreement and consummate the transactions herein provided and nothing prohibits or restricts the right or ability of any of the Borrower Parties to close the transactions contemplated hereunder and carry out the terms hereof.

C.    <u>Value of Project</u>.  In the Borrower Parties' judgment, after subtracting the amount of the Mortgage Loan and the Mezzanine Loan, the fair market value of the Project is greater than the Payoff Consideration.

D.    <u>Solvency</u>.  Each of the Borrower Parties is solvent, and will not become insolvent by reason of their entry into this Agreement or the payment of the Payoff Consideration or the other sums required to be paid by Borrower Parties pursuant to this Agreement.

The provisions of this Paragraph 8 shall survive the Close of Escrow or the termination of this Agreement.

9.    <u>Release</u>.

A.    <u>Release</u>.  As further consideration for Lender Parties' execution of this Agreement, each of the Borrower Parties for itself and its respective affiliates, successors and assigns, as of the Effective Date and as of the Closing Date, hereby absolutely and irrevocably waives, releases, and forever discharges each of the Lender Parties and their respective partners, officers, creditors, shareholders, directors, agents, attorneys, servants, contractors, employees, parent and subsidiary corporations and predecessors-in-interest (collectively, the "**Released Parties**") from any and all claims, rights, demands, actions, suits, causes of actions, damages, counterclaims, defenses, losses, costs, obligations, liabilities and expenses of every kind or nature (collectively, "**Claims**"), known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen, arising out of or relating directly or indirectly to any circumstances or state of facts pertaining to the Mortgage Loan, the Mezzanine Loan, the Mortgage Loan Documents, the Mezzanine Loan Documents or the Project, including claims related to the actions of Lender Parties or their respective predecessors in administering the Mortgage Loan or the Mezzanine Loan or negotiating the Mortgage Loan Documents or the Mezzanine Loan Documents and claims of lender liability, fraud, duress, illegality, usury, waiver, bad faith, interference in the business of the Borrower Parties, or any nonperformance of any agreement or obligation related thereto, or any statements, representations, acts or omissions, intentional, willful, negligent or innocent, by any of the Released Parties in any way connected with, relating to or affecting, directly or indirectly, the Mortgage Loan, the Mezzanine Loan the Mortgage Loan Documents, the Mezzanine Loan Documents or the Project; <u>provided</u>, <u>however</u>, that the foregoing shall not constitute a release of any of Lender Parties' obligations under this Agreement.

B.    <u>Non-Reliance</u>.  Each of the Borrower Parties hereby acknowledges that it has not relied upon any representation of any kind made by Lender Parties in making the foregoing release.

C.    <u>No Transfer of Claims</u>.  Each of the Borrower Parties represents and warrants that it has not heretofore assigned, or transferred, or purported to assign or to transfer, to any person or entity, any Claims released hereunder or any portion thereof or interest therein, and each of the Borrower Parties agrees to indemnify, defend and hold the Released Parties harmless from and against any and all such Claims based on or arising out of any such assignment or transfer or purported assignment or transfer.

D.    <u>No Admission of Liability</u>.  It is understood and agreed that this Paragraph 9 shall not be deemed or construed as an admission by Lender Parties of liability of any nature whatsoever arising from or related to the subject of this Paragraph 9.

E.    <u>Advice of Counsel</u>.    Each of the Borrower Parties hereby agrees, represents and warrants that it has had advice of counsel of its own choosing in negotiations for and the preparation of this Agreement, including the foregoing release, that it has read the provisions of this Agreement, including the foregoing release, and that it is fully aware of its contents and legal effect.

F.    <u>Damages and Attorneys' Fees</u>.    Each of the Borrower Parties agrees that if it hereafter commences, joins in, or in any manner seeks, relief through any suit arising out of, based upon, or relating to any of the Claims or in any manner asserts against such Released Parties, or any of them, any of the Claims, then the undersigned will pay to such Released Parties, and each of them, in addition to any other damages caused to such Released Parties thereby, all attorneys' fees incurred by such Released Parties in defending or otherwise responding to said suit or claim.

G.    <u>Survival</u>.    The provisions of this Paragraph 9 shall survive the Close of Escrow or termination of this Agreement.

10.    <u>Default</u>.    Any breach by any of the Borrower Parties or any Guarantor of this Agreement that continues after the expiration of any applicable notice or grace period expressly provided for herein shall be an automatic Event of Default under both the Mortgage Loan Agreement and the Mezzanine Loan Agreement.

11.    <u>Relief from Stay</u>.

A.    <u>Agreement</u>.    As additional consideration for Lender Parties' execution of this Agreement, each of the Borrower Parties agrees that:  (i) in the event of a bankruptcy filing by or against it, it shall not reject this Agreement, nor contest any claim or assertion by Lender Parties that this Agreement is binding between the parties, and that valuable consideration has been received by both the Borrower Parties for same; (ii) Lender Parties shall receive immediate relief from the automatic stay provisions of the United States Bankruptcy Code following any bankruptcy petition which any of the Borrower Parties may file or which may be filed against any of the Borrower Parties and that it shall in no event contest a motion to lift the automatic stay filed by Lender Parties; and (iii) any contrary action taken by any of the Borrower Parties with respect to the matters set forth above shall be deemed to be in bad faith and are agreed to constitute violations of Federal Rules of Civil Procedure 11 and Bankruptcy Rule 9011.

B.    <u>Functional Equivalent of Chapter 11</u>.    Each of the Borrower Parties acknowledges that this Agreement is of considerable benefit to it, and represents the functional equivalent of a restructuring of their business under the United States Bankruptcy Code because, among other things, (i) Borrower Parties have received forbearances and financial accommodations from Lender Parties; and (ii) Borrower Parties were afforded by Lender Parties an opportunity to cause a sale or refinancing of the Project, all in lieu of a bankruptcy petition, which they elected not to file.  Borrower Parties have thus been provided with a full and fair opportunity to reestablish or reorganize their respective financial stake in the Project, and have elected not to seek a further restructuring of their respective businesses.  Each of the Borrower Parties understands that Lender Parties are entering into this Agreement in reliance on the

Borrower Parties' representation that they will not seek a further restructuring of their respective businesses.

12.    <u>Miscellaneous</u>.

A.    <u>Survival</u>.    All warranties, representations, covenants, obligations and agreements contained in this Agreement shall survive the Close of Escrow hereunder.    All warranties and representations shall be effective regardless of any investigation made or which could have been made.

B.    <u>Further Instruments</u>.    Each of the Borrower Parties shall, whenever and as often as it shall be requested to do so by Lender Parties, cause to be executed, acknowledged or delivered any and all such further instruments and documents as may be necessary or proper, in the reasonable opinion of Lender Parties, to carry out the intent and purpose of this Agreement.

C.    <u>Cumulative Remedies</u>.    No remedy conferred upon a party in this Agreement is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law, in equity or by statute (except as otherwise expressly herein provided).

D.    <u>No Waiver</u>.    No waiver by Lender Parties of any breach of this Agreement or of any warranty or representation hereunder by any of the Borrower Parties shall be deemed a waiver of any other breach by the Borrower Parties (whether preceding or succeeding and whether or not of the same or similar nature), and no acceptance of payment or performance by Lender Parties after any breach by the Borrower Parties shall be deemed to be a waiver of any breach of this Agreement or of any representation or warranty hereunder by the Borrower Parties, whether or not Lender Parties know of such breach at the time it accepts such payment or performance.    No failure or delay by Lender Parties to exercise any right it may have by reason of the default of any of the Borrower Parties shall operate as a waiver of default or modification of the Mortgage Loan, the Mezzanine Loan, the Mortgage Loan Documents, the Mezzanine Loan Documents or this Agreement or shall prevent the exercise of any right by Lender Parties.

E.    <u>Governing Law</u>.    THIS AGREEMENT WAS NEGOTIATED IN PART IN THE STATE OF NEW YORK, AND THE MORTGAGE LOAN AND THE MEZZANINE LOAN WERE MADE BY LENDER PARTIES FROM THE STATE OF NEW YORK, AND THE PROCEEDS OF THE MORTGAGE LOAN AND THE MEZZANINE LOAN WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE LENDER PARTIES AND THE BORROWER PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (EXCLUDING APPLICATION OF ANY PRINCIPLE OF CONFLICT OF LAWS WHICH WOULD DIRECT THE APPLICATION OF THE LAW OF ANY OTHER JURISDICTION) AND ANY APPLICABLE LAW OF THE UNITED STATES OF

AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW OR NOT PROHIBITED BY LAW, EACH OF THE BORROWER PARTIES HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT, AND THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO § 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

       F.    <u>Jurisdiction</u>.

       i.    <u>Suit by Borrower Parties</u>.  EACH OF THE BORROWER PARTIES HEREBY AGREES THAT ANY LEGAL SUIT, ACTION OR PROCEEDING BROUGHT BY THE BORROWER PARTIES OR ANY AFFILIATE THEREOF AGAINST LENDER PARTIES AND/OR ANY SERVICER OF THE MORTGAGE LOAN OR MEZZANINE LOAN  (OTHER THAN COMPULSORY COUNTERCLAIMS PERMITTED HEREUNDER IN CONNECTION WITH ANY ACTION, SUIT OR PROCEEDING COMMENCED BY LENDER PARTIES IN A JURISDICTION OUTSIDE OF NEW YORK) ARISING OUT OF OR RELATING TO THE MORTGAGE LOAN, THE MEZZANINE LOAN, THIS AGREEMENT OR ANY OF THE MORTGAGE LOAN DOCUMENTS OR MEZZANINE LOAN DOCUMENTS OR RELATING TO THE PROJECT SHALL ONLY BE INSTITUTED BY ANY BORROWER PARTY OR ANY AFFILIATE THEREOF IN COURTS OF THE STATE OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK OR THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK. BORROWER PARTIES EACH HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO BRING ANY LEGAL OR EQUITABLE SUIT, ACTION OR PROCEEDING AGAINST LENDER PARTIES AND/OR ANY SERVICER OF THE MORTGAGE LOAN OR MEZZANINE LOAN ARISING OUT OF OR RELATING TO THE MORTGAGE LOAN, THE MEZZANINE LOAN, THIS AGREEMENT OR ANY OF THE MORTGAGE LOAN DOCUMENTS OR MEZZANINE LOAN DOCUMENTS OR RELATING TO THE PROJECT IN ANY OTHER COURT OTHER THAN COURTS OF THE STATE OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK OR THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK.

       ii.    <u>Suit by Lender Parties</u>. WITH RESPECT TO ANY CLAIM OR ACTION ARISING HEREUNDER OR UNDER THE MORTGAGE LOAN DOCUMENTS OR THE MEZZANINE LOAN DOCUMENTS, BORROWER PARTIES EACH (1) IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK, (2) AGREES THAT ALL SUCH CLAIMS OR ACTIONS MAY BE HEARD AND DETERMINED IN SUCH COURTS OF THE STATE OF NEW YORK OR, TO THE EXTENT PERMITTED BY LAW, IN SUCH FEDERAL COURT AND (3) IRREVOCABLY WAIVES ANY (a) OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY

       -13-

MORTGAGE LOAN DOCUMENT OR ANY MEZZANINE LOAN DOCUMENT BROUGHT IN ANY SUCH COURT AND (b) ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THIS AGREEMENT WILL BE DEEMED TO PRECLUDE LENDER PARTIES FROM BRINGING AN ACTION OR PROCEEDING WITH RESPECT HERETO IN ANY OTHER JURISDICTION.

iii.    <u>Designation of Agent for Service of Process</u>. BORROWER PARTIES WILL EACH MAINTAIN AN AGENT FOR SERVICE OF PROCESS IN NEW YORK, NEW YORK WITH RESPECT TO THIS AGREEMENT. BORROWER PARTIES EACH DESIGNATE CORPORATION SERVICE COMPANY, WITH OFFICES ON THE DATE HEREOF AT 1131 AVENUE OF THE AMERICAS, SUITE 3100, NEW YORK, NY 10036-6710, TO RECEIVE FOR AND ON BEHALF OF THE BORROWER PARTIES SERVICE OF PROCESS IN NEW YORK, NEW YORK WITH RESPECT TO THIS AGREEMENT. BORROWER PARTIES SHALL PROVIDE TO LENDER PARTIES AT LEAST THIRTY (30) DAYS PRIOR WRITTEN NOTICE BEFORE CHANGING SUCH DESIGNATION. BORROWER PARTIES EACH FURTHER AGREE THAT THE FAILURE OF ITS AGENT FOR SERVICE OF PROCESS TO GIVE IT NOTICE OF ANY SERVICE OF PROCESS WILL NOT IMPAIR OR AFFECT THE VALIDITY OF SUCH SERVICE OR OF ANY JUDGMENT BASED THEREON. IN ADDITION, BORROWER PARTIES EACH IRREVOCABLY CONSENT TO SERVICE OF PROCESS BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO IT AT ITS ADDRESS GIVEN OR REFERRED TO IN THIS AGREEMENT.

G.    <u>Waiver of Right to Trial by Jury</u>. BORROWER PARTIES HEREBY EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY FOR ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS AGREEMENT, THE MORTGAGE LOAN DOCUMENTS OR THE MEZZANINE LOAN DOCUMENTS OR (2) IN ANY WAY RELATING TO THE PROJECT, THE MORTGAGE LOAN, THE MEZZANINE LOAN, THE MORTGAGE LOAN DOCUMENTS, THE MEZZANINE LOAN DOCUMENTS OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND BORROWER PARTIES HEREBY AGREE AND CONSENT THAT ANY OF THEM MAY FILE AN ORIGINAL COUNTERPART OF THIS AGREEMENT OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF ANY RIGHT THEY MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

H.    <u>No Third Party Beneficiaries</u>. Nothing in this Agreement, express or implied, is intended to confer any rights or remedies upon any person, other than the parties hereto and, subject to any restrictions on assignment herein contained, their respective successors and assigns.

I.    Amendments.  This Agreement may be amended by written agreement of amendment executed by all parties hereto, but not otherwise.

J.    Attorneys' Fees.  If any lawsuit is commenced to enforce any of the terms of this Agreement, the prevailing party will have the right to recover its actual attorneys' fees and costs of suit from the other party (including the value of the in-house counsel services). Without limitation on anything contained in the Mortgage Loan Documents and the Mezzanine Loan Documents, in the event that Lender Parties shall be a party to any legal proceeding instituted in connection with or arising out of the Mortgage Loan, the Mezzanine Loan or this Agreement, Borrower Parties agree to pay to Lender Parties all sums paid or incurred by Lender Parties as costs and expenses in the legal proceedings, together with actual and customary attorneys' fees.  This subparagraph J shall survive the Close of Escrow or termination of this Agreement.

K.    Effect on Mortgage Loan Documents and Mezzanine Loan Documents. Neither the provisions of, nor any performance under, this Agreement (including any payments by Borrower Parties under this Agreement) shall amend, modify, supplement, extend, delay, renew, terminate, waive, release or otherwise limit or prejudice Lender Parties' rights and remedies or Borrower Parties' obligations under the Mortgage Loan Documents or Mezzanine Loan Documents (including Lender Parties' right to receive full payment as well as late charges, delinquent interest and all other charges provided for in the Mortgage Loan Documents and Mezzanine Loan Documents).  Notwithstanding the foregoing, if and only if Lender Parties receive the full Payoff Amount and the Close of Escrow occurs, upon the Close of Escrow, the Mezzanine Loan and all of the Mezzanine Loan Documents shall automatically terminate and LBHI shall have no further obligations thereunder, including, without limitation, any additional funding obligations of LBHI, if any, thereunder, and Lender Parties shall be deemed to have agreed not to sue any of the Borrower Parties for any breach of any obligation under the Loan Documents; provided, however, that the foregoing covenant shall in no event extend to the continuing liabilities and obligations of any Borrower Party relating to, arising out of, or in connection with (i) the breach of any representation, warranty, indemnity, covenant or agreement set forth in this Agreement or in any document executed under or in connection with this Agreement, (ii) any indemnities in favor of Lender Parties under any Mortgage Loan Document or Mezzanine Loan Document, including without limitation, any indemnities in the Environmental Indemnities; and (iii) any obligations or liabilities under any Mortgage Loan Document or Mezzanine Loan Document which, pursuant to such documents, are expressly stated to survive the repayment of the Mortgage Loan and/or Mezzanine Loan; and, provided, further, that the covenant by Lender Parties pursuant to this subparagraph shall be void from its inception, and all liabilities and obligations of Borrower Parties under the Loan Documents shall continue in full force and effect as they existed immediately prior to the Effective Date, in the event:

i.    Any of the Borrower Parties shall take any act or make any claim of rescission of this Agreement or make any other claim which is inconsistent with this Agreement; or

ii.    A receiver, liquidator or trustee shall be appointed for any of the Borrower Parties or if any of the Borrower Parties shall be adjudicated a bankrupt or insolvent, or if

any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law ("Bankruptcy Petition"), shall be filed by or against, consented to, or acquiesced in by, any of the Borrower Parties, or if any proceeding for the dissolution or liquidation of any of the Borrower Parties shall be instituted ("Dissolution Proceeding"); provided, however, to the extent any Bankruptcy Petition or Dissolution Proceeding was involuntary and not consented to, acquiesced by, or filed by any of the Borrower Parties, then the covenant by Lender Parties pursuant to this subparagraph shall only become void if the same has not been dismissed within thirty (30) days of filing thereof. or

iii.    A court of competent jurisdiction determines that (or any claim is made by any Borrower Party or any third party in bankruptcy that) the receipt of any funds by any party hereunder constitutes a preference or a fraudulent conveyance, or otherwise sets aside or holds ineffective such receipt of funds.

L.    No Agreement on Value.  The parties hereto specifically acknowledge and agree that the Payoff Amount does not necessarily reflect the parties' views regarding the value of the Mortgage Loan, the collateral encumbered by the Mortgage Loan, the Mezzanine Loan or the membership interests encumbered by the Mezzanine Loan, and such amount shall not be used as evidence of value in any action or proceeding involving Lender Parties, on the one hand, and Borrower Parties, or any of them, on the other hand.

M.    Entire Agreement.  This Agreement contains the entire agreement between the parties respecting the matters herein set forth and supersedes all prior agreements between the parties hereto respecting such matters.

N.    Time of the Essence.  Time is of the essence of this Agreement.

O.    Severability.  If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

P.    <u>Notices</u>.  Any notice which a party is required or may desire to give the other shall be in writing and may be sent by personal delivery or by mail (either (1) by United States registered or certified mail, return receipt requested, postage prepaid, or (2) by Federal Express or similar generally recognized overnight carrier regularly providing proof of delivery), addressed as follows (subject to the right of a party to designate a different address for itself by notice similarly given):

To Mortgage Borrower:

44th Street Partners I LLC
[_____]
[_____]
Attention:  [_____]

With a copy to:

[_____]
[_____]
[_____]
Attention:  [_____]

To Mezzanine Borrower:

44th Street Partners II LLC
[_____]
[_____]
Attention:  [_____]

With a copy to:

[_____]
[_____]
[_____]
Attention:  [_____]

To Thompson Mortgage Guarantor, Mezzanine Guarantor or Patrick Pledgor:

44th Street Partners II LLC
[_____]
[_____]
Attention:  [_____]

With a copy to:

[_____]
[_____]
[_____]
Attention:  [_____]

To Suzuki  Mortgage Guarantor:

[_____]
[_____]
[_____]
Attention:  [_____]

With a copy to:

[_____]
[_____]
[_____]
Attention:  [_____]


To Holdings:

44th Street Partners II LLC
[_____]
[_____]
Attention:  [_____]

With a copy to:

[_____]
[_____]
[_____]
Attention:  [_____]

To TWP:

44th Street Partners II LLC
[_____]
[_____]
Attention:  [_____]

With a copy to:

[_____]
[_____]
[_____]
Attention:  [_____]


To Lender Parties:

LBHI

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 46th Floor
New York, NY  10020
Attention:  Joelle Halperin
MTS No.:  WE178

With copies to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Attention:  W. Michael Bond, Esq.
Telephone:  (212) 310-8035
Facsimile:  (212) 310-8007

TriMont Real Estate Advisors, Inc.
Monarch Tower
3424 Peachtree Road, N.E.
Suite 2200
Atlanta, GA  30326
Attention:  Karen Mishkin
Ref. No.:  1141304

LCPI

Lehman Commercial Paper Inc.
1271 Avenue of the Americas, 46th Floor
New York, NY  10020
Attention:  Joelle Halperin

With a copy to:

> Weil, Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, New York  10153
> Attention:  W. Michael Bond, Esq.
> Telephone:  (212) 310-8035
> Facsimile:  (212) 310-8007

Lehman Re

> Lehman Re Ltd.
> c/o D. Geoffrey Hunter
> Managing Director, Advisory
> PricewaterhouseCoopers Advisory Limited
> Dorchester House, 7 Church Street
> Hamilton HM 11 Bermuda

With copies to:

> Cadwalader, Wickersham & Taft LLP
> One World Financial Center
> New York, New York 10281
> Attention:  Gregory Petrick, Esq.

> KeyCorp Real Estate Capital Markets, Inc.
> 911 Main Street, Suite 1500
> Kansas City Missouri 64105
> Attention:  Bryan Nitcher

ESCROW HOLDER:

> [_____]
> [_____]
> [_____]
> Attention:  [_____]

Any notice so given by mail shall be deemed to have been given as of the date of delivery (whether accepted or refused) established by U.S. Post Office return receipt or the overnight carrier's proof of delivery, as the case may be.  Any such notice not so given shall be deemed given upon receipt of the same by the party to whom the same is to be given.

> Q.    Confidentiality.  Each of the Borrower Parties agrees that it shall each keep the terms of this Agreement strictly confidential and shall not disclose or permit its employees or agents to disclose the terms of this Agreement (except for reasonably necessary disclosures to its attorneys, accountants, investors, agents, lenders and representatives) and

except as may be required by law or in connection with litigation between such parties and the Lender Parties.

R.   Counterparts.  This Agreement may be executed in any number of counterparts so long as each signatory hereto executes at least one such counterpart.  Each such counterpart shall constitute one original, but all such counterparts taken together shall constitute one and the same instrument.

S.   Joint and Several Liability.  Each of the Borrower Parties shall each be primarily, jointly and severally liable for each of the obligations and liabilities of the Borrower Parties under this Agreement and any document executed under or in connection with this Agreement and Guarantors each hereby waive any guarantor or suretyship defenses that may otherwise apply with respect thereto.

T.   Notwithstanding the execution and delivery of this Agreement evidencing the resolution of the Lender Parties' disputes regarding the actual ownership status of the Mortgage Loan, each of the Lender Parties acknowledges that (i) the Lender Parties have had, and continue to have, certain disputes regarding the actual ownership status of certain loan and other assets originated by LBHI and/or certain affiliates of LBHI other than the Mortgage Loan (collectively, the "Remaining Assets"), (ii) nothing contained in this Agreement shall prejudice the claims that any of them may have against one another with respect to the Remaining Assets arising in connection with the Repo Documents, and (iii) nothing contained in this Agreement shall be deemed to create an admission, stipulation and/or implication on the part of any of the Lender Parties as to the actual ownership status of the Remaining Assets.  Each of the Lender Parties further agrees that no negotiations and communications which may arise or may have previously arisen concerning this Agreement or the transactions contemplated hereby shall be admissible as evidence on any issue that is or may be before any court or administrative body in order to establish proof of ownership of the Remaining Assets or to create or establish any admission of liability as to, or for any other evidentiary purpose with respect to, the ownership status of the Remaining Assets.  In addition, nothing contained in this Agreement shall be deemed to waive any of the rights any of the Lender Parties may have against one another with respect to the Remaining Assets pursuant to the Repo Documents, and each of the Lender Parties hereby reserves all of its respective rights and remedies under such Repo Documents with respect to the Remaining Assets.

13.   Bankruptcy Court Approval.  Notwithstanding anything to the contrary contained in this Agreement, each of the parties hereto agrees that the effectiveness of this Agreement and each of the terms and provisions set forth in this Agreement and any of the transactions contemplated in this Agreement shall be subject, in their entirety, to the Bankruptcy Court entering a final order approving this Agreement and the transactions contemplated hereby.

**[NO FURTHER TEXT – SIGNATURES ON NEXT PAGE]**

IN WITNESS WHEREOF, Borrower Parties and Lender Parties have executed this Agreement as of the day and year first above written.

LENDER PARTIES:

LEHMAN BROTHERS HOLDINGS INC.,
as Debtor and Debtor in Possession in its
chapter 11 case in the United States Bankruptcy
Court for the Southern District of New York,
Case No. 08-13555 (JPM)

By:_____
    Name:
    Title:

LEHMAN COMMERCIAL PAPER INC.,
as Debtor and Debtor in Possession in its
chapter 11 case in the United States Bankruptcy
Court for the Southern District of New York,
Case No. 08-13555 (JPM)

By:_____
    Name:
    Title:

LEHMAN RE LTD.,
a Bermuda corporation

By:    Its Joint Provisional Liquidators (without
       personal liability)


By:    _____
       Peter C.B. Mitchell
       Authorized Signatory


By:    _____
       D. Geoffrey Hunter
       Authorized Signatory


**SIGNATURES ON FOLLOWING PAGE**

MORTGAGE BORROWER AND PROJECT
OWNER:


44th STREET PARTNERS I LLC,
a Delaware limited liability company


By:_____
   Name:
   Title:


MEZZANINE BORROWER:


44th STREET PARTNERS II LLC,
a Delaware limited liability company


By:_____
   Name:
   Title:


THOMPSON MORTGAGE GUARANTOR,
MEZZANINE GUARANTOR AND PATRICK
PLEDGOR:


By:_____
   Name:  Patrick Thompson


**SIGNATURES ON FOLLOWING PAGE**

SUZUKI MORTGAGE GUARANTOR:


By: _____
    Name:  Sammy Isamu Suzuki


SUZUKI GROUP LLC,
a New York limited liability company


By: _____
    Name:
    Title:

HOLDINGS:

44TH STREET HOLDINGS LLC, a Delaware
    limited liability company


By: _____
    Name:
    Title:


TWP:


TWP CAPITAL HOLDINGS I, LLC, a New
    York limited liability company

By: _____

    Name:

    Title:


ACCEPTED AND AGREED TO AS OF THE
    EFFECTIVE DATE:


[___ESCROW AGENT_____]


By:_____

    Name:

    Title:

## EXHIBIT A

## LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City, County, and State of New York, bounded and described as follows:

BEGINNING at a point on the Northerly side of East 44th Street at or in front of the center of a party wall and distance 167 feet Easterly from the corner formed by the intersection of the Easterly side of 5th Avenue with the Northerly side of 44th Street;

THENCE Northerly parallel with 5th Avenue and part of the distance through said party wall, 100 feet 5 inches to the center line of the block between 44th and 45th Streets;

THENCE Easterly parallel with East 44th Street and along said center line of the block, 27 feet;

THENCE Southerly and again parallel with 5th Avenue and part of the way through another party wall, 100 feet 5 inches to the said Northerly side of East 44th Street;

THENCE Westerly along the said Northerly side of East 44th Street 27 feet to the point or place of BEGINNING.

## EXHIBIT B-1

## LIST OF MORTGAGE LOAN DOCUMENTS

1.  Master Credit Agreement, dated as of August 8, 2006, made by and among 44TH STREET PARTNERS I LLC, a Delaware limited liability company ("**Borrower**"), and LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**Lehman**"), individually and as lead arranger and administrative agent for itself and certain co-lenders (Lehman, in such capacity, "**Mortgage Agent**"), and subsequently modified pursuant to that certain First Amendment to Master Credit Agreement and Ratification of Environmental Indemnity and Guaranties, dated as of June 11, 2007, made by and among, inter alia, Borrower, Mortgage Agent, SAMMY ISAMU SUZUKI, an individual ("**Sammy Guarantor**"), and PATRICK THOMPSON, an individual ("**Patrick Guarantor**")

2.  Mortgage Note, dated March 20, 2003, in the stated principal amount of $3,800,000.00, made by 44TH STREET PARTNERS, LLC, a New York limited liability company ("**44th Street**"), to NORTH FORK BANK, a corporation organized under the Banking Law of the State of New York ("**North Fork**"), which promissory note was subsequently transferred to Lehman pursuant to that certain Allonge to Mortgage Note, dated July 25, 2006, made by North Fork to Lehman

3.  Mortgage Note, dated October 14, 2004, in the stated principal amount of $1,200,000.00, made by 44th Street to the order of BRT REALTY TRUST, a Massachusetts business trust ("**BRT**")

4.  Note Splitter, Mortgage Severance and Reaffirmation Agreement, dated August 8, 2006, made by and among Mortgage Agent and Borrower

5.  Modified and Severed Note A, dated August 8, 2006, in the stated principal amount of $812,772.43, made by Borrower to Mortgage Agent

6.  Amended, Restated and Consolidated Land Loan Promissory Note, dated August 8, 2006, in the stated principal amount of $4,363,650.34, made by Borrower to Mortgage Agent

7.  Mortgage, dated as of March 20, 2003, made by 44th Street to North Fork, recorded in the Office of the City Register of the City of New York (the "**Office**") on April 16, 2003, as City Register File Number 2003000091601, which mortgage was subsequently assigned to Lehman pursuant to that certain Assignment of Mortgage, dated as of July 28, 2006, made by North Fork to Lehman, recorded in the Office on August 18, 2006, as City Register File Number 2006000469652

8.  Mortgage, dated as of October 14, 2004, made by 44th Street to BRT, recorded in the Office on November 16, 2004, as City Register File Number 2004000710012, which

mortgage was subsequently assigned to Lehman pursuant to that certain Assignment of Mortgage, dated as of August 2, 2006, made by BRT to Lehman, recorded in the Office on August 18, 2006, as City Register File Number 2006000469806

9.  Severed Mortgage "A", dated as of August 8, 2006, made by Borrower to Mortgage Agent, recorded in the Office on August 18, 2006, as City Register File Number 2006000468902

10. Amended, Restated and Consolidated Land Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement, dated as of August 8, 2006, made by Borrower to Mortgage Agent, recorded in the Office on September 1, 2006, as City Register File Number 2006000499031

11. Absolute Assignment of Leases and Rents, dated as of August 8, 2006, made by Borrower to Mortgage Agent, recorded in the Office on November 15, 2006, as City Register File Number 2006000634307

12. UCC-1 Financing Statement, naming Borrower as debtor, and Lehman as secured party, recorded in the Office on August 17, 2006, as City Register File Number 2006000467059

13. UCC-1 Financing Statement, naming Borrower as debtor, and Lehman as secured party, filed with the Delaware Secretary of State on August 21, 2006, as Filing Number 63070018

14. Guaranty of Recourse Obligations, dated as of August 8, 2006, made by Sammy Guarantor and Patrick Guarantor, for the benefit of Mortgage Agent

15. Guaranty of Payment and Completion, dated as of August 8, 2006, made by Sammy Guarantor and Patrick Guarantor, for the benefit of Mortgage Agent

16. Environmental and Hazardous Substance Indemnification Agreement, dated as of August 8, 2009, made by Borrower, Sammy Guarantor, and Patrick Guarantor, in favor of Mortgage Agent

17. Lockbox, Pledge and Security Agreement, dated as of August 8, 2006, made by and among Mortgage Agent, TRIMONT REAL ESTATE ADVISORS, INC., a Georgia corporation ("**Trimont**"), and Borrower

18. Reserve and Security Agreement, dated as of August 8, 2006, made by and among Mortgage Agent, Trimont and Borrower

19. Collateral Assignment of Interest Rate Protection Agreement, dated as of August 8, 2006, made by Borrower in favor of Mortgage Agent, and acknowledged and agreed to by BEAR STEARNS FINANCIAL PRODUCTS INC.

20. Assignment of Agreements, Contracts, Warranties, Licenses, Plans and Permits, dated as of August 8, 2006, made by Borrower in favor of Mortgage Agent

21.     Consent to Assignment of Agreement and Estoppel and Recognition Agreement, dated as of August 8, 2006, made by PHILIP JOHNSON/ALAN RITCHIE ARCHITECTS, P.C., a New York professional corporation, in favor of Mortgage Agent

22.     Consent to Assignment of Agreement and Estoppel and Recognition Agreement, dated as of August 8, 2006, made by DE NARDIS ENGINEERING, LLC, a New York limited liability company, in favor of Mortgage Agent

23.     Consent to Assignment of Agreement and Estoppel and Recognition Agreement, dated as of August 8, 2006, made by SIDERIS ENGINEERS P.C., a New York professional corporation, in favor of Mortgage Agent

24.     Consent to Assignment of Agreement and Estoppel and Recognition Agreement, dated as of August 8, 2006, made by HUDSON MERIDIAN CONSTRUCTION GROUP, LLC, a New York limited liability company, in favor of Mortgage Agent

25.     Subordination Agreement, dated as of August 8, 2006, made by Mortgage Agent

26.     Escrow Instructions Letter, from Weil, Gotshal & Manges LLP, to First American Title Insurance Company of New York and Commonwealth Land Title Insurance Company

27.     Extension Agreement (Senior Loan), dated as of August 19, 2008, made by and among Mortgage Agent, Borrower, and Patrick Guarantor

28.     Escrow Agreement, dated as of August 19, 2008, made by and among Borrower, Lehman, and PRESTIGE TITLE AGENCY, INC.

## BUILDING LOAN DOCUMENTS

29.     Building Loan Agreement, dated as of August 8, 2006, made by and between Borrower and Mortgage Agent

30.     Mortgage Note, dated August 8, 2006, in the stated principal amount of $9,958,638.44, made by Borrower to Mortgage Agent

31.     Modified and Severed Note B, dated August 8, 2006, in the stated principal amount of $387,227.57, made by Borrower to Mortgage Agent

32.     Amended, Restated and Consolidated Building Loan Promissory Note, dated August 8, 2006, in the stated principal amount of $10,345,866.01, made by Borrower to Mortgage Agent

33.     Mortgage, dated as of August 8, 2006, made by Borrower to Mortgage Agent, recorded in the Office on August 21, 2006, as City Register File Number 2006000470380

34.     Severed Mortgage "B", dated as of August 8, 2006, made by Borrower to Mortgage Agent, recorded in the Office on August 18, 2006, as City Register File Number 2006000468903

EXHIBIT B-1 – PAGE 3

35. Amended, Restated and Consolidated Building Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement, dated as of August 8, 2006, made by Borrower to Mortgage Agent, recorded in the Office on August 21, 2006, as City Register File Number 2006000470381

36. UCC-1 Financing Statement, naming Borrower as debtor, and Mortgage Agent as secured party, filed in the Office on August 17, 2006, as City Register File Number 2006000467048

37. UCC-1 Financing Statement, naming Borrower as debtor, and Mortgage Agent as secured party, filed in the Office of the Secretary of State of the State of Delaware on August 21, 2006, as Filing Number 63070117

PROJECT LOAN DOCUMENTS

38. Project Loan Agreement, dated as of August 8, 2006, made by and between Borrower and Mortgage Agent

39. Project Loan Promissory Note, dated August 8, 2006, in the stated principal amount of $1,940,483.65, made by Borrower to Mortgage Agent

40. Project Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement, dated as of August 8, 2006, made by Borrower to Mortgage Agent, recorded in the Office on November 15, 2006, as City Register File Number 2006000634306

41. UCC-1 Financing Statement, naming Borrower as debtor, and Mortgage Agent as secured party, filed in the Office on August 17, 2006, as City Register File Number 2006000467051

42. UCC-1 Financing Statement, naming Borrower as debtor, and Mortgage Agent as secured party, filed in the Office of the Secretary of State of the State of Delaware on August 21, 2006, as Filing Number 63070182

OMNIBUS AMENDMENT

43. Omnibus Amendment to Senior Loan Documents and Ratification of Environmental Indemnity Agreement and Guaranties, dated as of May 29, 2008, made by and among Mortgage Agent, Borrower, and Patrick Guarantor

44. Lien Release Letter Agreement, dated May 29, 2008, from Lehman to Borrower, agreed to and accepted by Borrower

**EXHIBIT B-2**

**LIST OF MEZZANINE LOAN DOCUMENTS**

ORIGINATION DOCUMENTS

1. Mezzanine Construction Loan Agreement, dated as of August 8, 2006, made by and between 44TH STREET PARTNERS II LLC, a Delaware limited liability company ("**Mezzanine Borrower**"), and LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**Lehman**"), individually and as lead arranger and administrative agent for itself and certain co-lenders (Lehman, in such capacity, "**Mezzanine Agent**")

2. Secured Promissory Note, dated August 8, 2006, in the stated principal amount of $2,220,000.00, made by Mezzanine Borrower to the order of Mezzanine Agent

3. Pledge and Security Agreement (Interests in Project Owner), dated as of August 8, 2006, made by Mezzanine Borrower to and for the benefit of Mezzanine Agent

4. Control Agreement, dated as of August 8, 2006, made by and among 44TH STREET PARTNERS I LLC, a Delaware limited liability company ("**Project Owner**"), Mezzanine Agent, and Mezzanine Borrower

5. Consent of Project Owner, dated as of August 8, 2006, made by Project Owner to and for the benefit of Lehman

6. Irrevocable Proxy Agreement, dated as of August 8, 2006, made by and among Mezzanine Borrower, Project Owner, and Mezzanine Agent

7. UCC-1 Financing Statement, naming Mezzanine Borrower as debtor, and Lehman as secured party, filed with the Delaware Secretary of State on August 9, 2006, as Filing Number 62764033

8. Pledge and Security Agreement (Interests in Borrower), dated as of August 8, 2006, made by 44TH STREET HOLDINGS LLC, a Delaware limited liability company ("**Holdings**"), to and for the benefit of Mezzanine Agent

9. Control Agreement, dated as of August 8, 2006, made by and among Mezzanine Borrower, Mezzanine Agent, and Holdings

10. Consent of Borrower, dated as of August 8, 2006, made by Mezzanine Borrower to and for the benefit of Lehman

11. Irrevocable Proxy Agreement, dated as of August 8, 2006, made by and among Holdings, Mezzanine Borrower, and Mezzanine Agent

12.  UCC-1 Financing Statement, naming Holdings as debtor, and Lehman as secured party, filed with the Delaware Secretary of State on August 9, 2006, as Filing Number 62764116

13.  Pledge and Security Agreement (Interests in Holdings), dated as of August 8, 2006, made by TWP CAPITAL HOLDINGS I, LLC, a New York limited liability company ("**TWP**"), and SUZUKI GROUP LLC, a New York limited liability company ("**Suzuki**"), to and for the benefit of Mezzanine Agent

14.  Control Agreement, dated as of August 8, 2006, made by and among Holdings, Mezzanine Agent, TWP and Suzuki

15.  Consent of Holdings, dated as of August 8, 2006, made by Holdings to and for the benefit of Lehman

16.  Irrevocable Proxy Agreement, dated as of August 8, 2006, made by and among TWP, Suzuki, Holdings, and Mezzanine Agent

17.  UCC-1 Financing Statement, naming TWP as debtor, and Lehman as secured party, filed with the New York Secretary of State on August 9, 2006, as Filing Number 200608090653063

18.  UCC-1 Financing Statement, naming TWP as debtor, and Lehman as secured party, filed with the New York Secretary of State on August 9, 2006, as Filing Number 200608090653063

19.  UCC-1 Financing Statement, naming Suzuki as debtor, and Lehman as secured party, filed with the New York Secretary of State on August 9, 2006, as Filing Number 200608090653087

20.  Pledge and Security Agreement (Interests in TWP Capital Holdings I, LLC), dated as of August 8, 2006, made by PATRICK THOMPSON, an individual ("**Patrick**"), to and for the benefit of Mezzanine Agent

21.  Control Agreement, dated as of August 8, 2006, made by and among TWP, Mezzanine Agent, and  Patrick

22.  Consent of TWP Capital Holdings I, LLC, dated as of August 8, 2006, made by TWP to and for the benefit of Lehman

23.  Irrevocable Proxy Agreement, dated as of August 8, 2006, made by and among Patrick, TWP, and Mezzanine Agent

24.  UCC-1 Financing Statement, naming Patrick, as debtor, and Lehman as secured party, filed with the New York Secretary of State on August 9, 2006, as Filing Number 200608090653051

25. Pledge and Security Agreement (Interests in Suzuki Group LLC), dated as of August 8, 2006, made by SAMMY ISAMU SUZUKI, an individual ("**Sammy Guarantor**"), to and for the benefit of Mezzanine Agent

26. Control Agreement, dated as of August 8, 2006, made by and among Suzuki, Mezzanine Agent, and Sammy Guarantors

27. Consent of Suzuki Group LLC, dated as of August 8, 2006, made by Suzuki to and for the benefit of Lehman

28. Irrevocable Proxy Agreement, dated as of August 8, 2006, made by and among Sammy Guarantors, Suzuki, and Mezzanine Agent

29. UCC-1 Financing Statement, naming Sammy Guarantors as debtor, and Lehman as secured party, filed with the New York Secretary of State on August 9, 2006, as Filing Number 200608090653075

30. Environmental and Hazardous Substance Indemnification Agreement, dated as of August 8, 2006, made by Mezzanine Borrower, Sammy Guarantor and Patrick Guarantor in favor of Mezzanine Agent

31. Guaranty of Recourse Obligations, dated as of August 8, 2006, made by Sammy Guarantor and Patrick Guarantor for the benefit of Mezzanine Agent

32. Guaranty of Payment and Completion, dated as of August 8, 2006, made by Sammy Guarantor and Patrick Guarantor for the benefit of Mezzanine Agent

33. Assignment of Title Insurance Policy and Proceeds, dated as of August 8, 2006, made by Project Owner to and for the benefit of Mezzanine Agent

34. Collateral Assignment of Interest Rate Protection Agreement, dated as of August 8, 2006, made by Mezzanine Borrower in favor of Mezzanine Agent, and acknowledged and agreed to by BEAR STEARNS FINANCIAL PRODUCTS INC.

35. Architect's Consent and Agreement, dated as of August 8, 2006, made by PHILIP JOHNSON/ALAN RITCHIE ARCHITECTS, P.C., a New York professional corporation, agreed to and acknowledged by Lehman

36. Engineer's Consent and Agreement, dated as of August 8, 2006, made by DE NARDIS ENGINEERING, LLC, a New York limited liability company, agreed to and acknowledged by Lehman

37. Engineer's Consent and Agreement, dated as of August 8, 2006, made by SIDERIS ENGINEERS P.C., a New York professional corporation, agreed to and acknowledged by Lehman

38. Construction Manager's Consent and Agreement, dated as of August 8, 2006, made by HUDSON MERIDIAN CONSTRUCTION GROUP, LLC, a New York limited liability company, agreed to and acknowledged by Lehman

39. Escrow Instructions Letter, from Weil, Gotshal & Manges LLP, to First American Title Insurance Company of New York and Commonwealth Land Title Insurance Company

FIRST AMENDMENT DOCUMENTS

40. Omnibus Amendment to Mezzanine Loan Documents and Ratification of Environmental Indemnity and Guaranties, dated as of May 29, 2008, made by and among Lehman, Mezzanine Borrower, Project Owner, Patrick Guarantor, Holdings and TWP

41. General Release, dated as of May 29, 2008, made by Sammy Guarantor

42. Limited Release, dated as of May 29, 2008, made by Lehman

43. Amended, Restated and Increased Secured Promissory Note, dated May 29, 2008, in the stated principal amount of $7,782,000.00, made by Mezzanine Borrower to Lehman

44. Amended and Restated Pledge and Security Agreement (Interests in Holdings), dated as of May 29, 2008, made by TWP to Lehman

45. Amended and Restated Control Agreement, dated as of May 29, 2008, made by and among Holdings, Lehman, and TWP

46. Amended and Restated Consent of Holdings, dated as of May 29, 2008, made by Holdings to and for the benefit of Lehman

47. Amended and Restated Irrevocable Proxy Agreement, dated as of May 29, 2008, made by and among TWP, Holdings, and Lehman

48. UCC-3 Amendment Statement, filed with the New York Secretary of State as Filing Number 200806030395455

## EXHIBIT C

### ADDITIONAL PRINCIPAL PAYMENT PROVISIONS

(a)    Mortgage Borrower shall pay to Lehman Re, in the manner and at the time specified herein, additional principal in an amount equal to that set forth on Schedule A attached hereto and made a part hereof (the "**Additional Principal Payment**"), which Additional Principal Amount shall be adjusted upward or downward based upon payments received in connection with the sale of the last two (2) condominium units  (excluding the penthouse units) to be sold at the building or any casualty or condemnation thereof as set forth below.

(b)    Upon an arm's length sale or conveyance to a bona-fide third party purchaser of the last two (2) condominium units (excluding the penthouse units) to be sold at the building or any casualty or condemnation thereof, Mortgage Borrower shall pay to Lehman Re an Additional Principal Payment in an amount equal to the product of (x) $200.00 and (y) the square footage of each such unit based upon the square footage set forth on Schedule A to the Offering Plan for the Condominium on file in the office of the Attorney General of the State of New York, which amount shall payable to Lehman Re upon the closing of such sale or conveyance of each unit or concurrently with the receipt of casualty or condemnation proceeds by Mortgage Borrower and shall be credited against the outstanding Additional Principal Payment then due and payable to Lehman Re.  All amounts required to be delivered to Lehman Re hereunder in respect of the Additional Principal Payment shall be delivered by wire transfer to one or more accounts directed in writing by Lehman Re or in other immediately available funds pursuant to the written direction of Lehman Re.

(c)    The Additional Principal Payment shall be due and payable upon the earlier to occur of (i) the date of the arm's length sale or conveyance to a bona-fide third party purchaser of the last two (2) condominium units (excluding the penthouse units) to be sold at the building or any casualty or condemnation thereof, or (ii) the date which is thirty-six (36) month anniversary of the Closing of Escrow (as defined in the Loan Pay-Off Agreement to which this Exhibit C is attached).

(d)    Mortgage Borrower's obligation to make the Additional Principal Payment shall, at the sole cost and expense of Mortgage Borrower, be evidenced by a promissory note in favor of Lehman Re and secured by, among other things, (i) a second mortgage encumbering the Premises ((as defined in the Loan Pay-Off Agreement to which this Exhibit C is attached) to be recorded by Lehman Re at the sole cost and expense of Mortgage Borrower and (ii) a personal guaranty of payment by Mortgage Borrower in favor of Lehman Re, which note, second mortgage and personal guaranty shall be assignable by the Lehman Re in its sole and absolute discretion.

## Schedule A

During months one (1) through twelve (12) following the date hereof, the Additional Principal Payment shall be equal to an the amount of $510,000, less any amount credit from the sale of a condominium unit during such period.

During the months thirteen (13) through twenty-four (24) following the date hereof, the Additional Principal Payment shall be increased and equal to the amount of $520,000, less any amount credit from the sale of a condominium unit during such period.

During the months twenty-five (25) through thirty-six (36) following the date hereof, the Additional Principal Payment shall be increased and equal to the amount of $530,000, less any amount credit from the sale of a condominium unit during such period.

Upon the sale of the last condominium unit, the Additional Principal Payment shall be deemed paid in full provided that the total credited against the Additional Principal Payment shall equal an amount of not less than $400,000 in the aggregate and not more than $600,000 in the aggregate.  If at the end of the thirty-sixth month following the date hereof, (i) no condominium unit has been sold or (ii) only one condominium has been sold, the Additional Principal Payment shall be due and payable in full which shall be equal to the amount of $530,000, less any amount credit from the sale of a condominium unit, if any, or calculated in accordance with Exhibit C, to which this Schedule A is attached.

## EXHIBIT D

## ESCROW PROVISIONS

Escrow Holder agrees to hold the Escrowed Funds and the Escrowed Documents in Escrow pursuant to the terms and provisions below:

(a)     Escrow Holder shall have no duties or responsibilities other than those expressly set forth in the Agreement to which this Exhibit is attached.  Escrow Holder shall have no duty to enforce any obligation of any person to make any payment or delivery or to enforce any obligation of any person to perform any other act.  Escrow Holder shall be under no liability to the other parties hereto or to anyone else by reason of any failure on the part of any party hereto or any maker, guarantor, endorser or other signatory of any document or any other person to perform such person's obligations under any such document.  Except for amendments to the Agreement hereinafter referred to and except for joint instructions given to Escrow Holder by Lender Parties and Borrower Parties relating to the Escrowed Funds and the Escrowed Documents, Escrow Holder shall not be obligated to recognize any agreement between any or all of the persons referred to herein other than the Agreement, notwithstanding that references thereto may be made herein and whether or not it has knowledge thereof.

(b)     In its capacity as escrow agent, Escrow Holder shall not be responsible for the genuineness or validity of any security, instrument, document or item deposited with it and shall have no responsibility other than to faithfully follow the instructions contained herein, and it is fully protected in acting in accordance with any written instrument given to it hereunder by any of the parties hereto and believed by Escrow Holder to have been signed by the proper person.  Escrow Holder may assume that any person purporting to give any notice hereunder has been duly authorized to do so.  Escrow Holder is acting as a stakeholder only with respect to the Escrowed Funds and the Escrowed Documents.  In the event that for any reason there is any dispute or uncertainty concerning any action to be taken hereunder, Escrow Holder shall take no action until it shall have received instructions in writing concurred to by Lender Parties and Borrower Parties or until directed by a final order of judgment of a court of competent jurisdiction, whereupon Escrow Holder shall take such action in accordance with such instructions or such order.

(c)     It is understood and agreed that the duties of Escrow Holder are purely ministerial in nature.  Escrow Holder shall not be liable to the other parties hereto or to anyone else for any action taken or omitted by it, or any action suffered by it to be taken or omitted, in good faith and in the exercise of reasonable judgment, except for acts of willful misconduct or negligence.  Escrow Holder may rely conclusively and shall be protected in acting upon any order, notice, demand, certificate, opinion or advice of counsel (including counsel chosen by Escrow Holder), statement, instrument, report or other paper or document (not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and acceptability of any information therein contained) which is reasonably believed by Escrow Holder to be genuine and to be signed or presented by the proper person or persons.  Escrow Holder shall not be bound by any notice or demand, or any waiver, modification, termination or rescission of the Agreement or any of the terms hereof, unless evidenced by a final judgment or

decree of a court of competent jurisdiction in the State of New York or a Federal court in such State, or a writing delivered to Escrow Holder signed by the proper party or parties and, if the duties or rights of Escrow Holder are affected, unless it shall give its prior written consent thereto.

(d)    Escrow Holder shall have the right to assume in the absence of written notice to the contrary from the proper person or persons that a fact or an event by reason of which an action would or might be taken by Escrow Holder does not exist or has not occurred, without incurring liability to the other parties hereto or to anyone else for any action taken or omitted, or any action suffered by it to be taken or omitted, in good faith and in the exercise of reasonable judgment, in reliance upon such assumption.

(e)    Except in connection with Escrow Holder's willful misconduct or negligence, Escrow Holder shall be indemnified and held harmless jointly and severally by the other parties hereto from and against any and all expenses or loss suffered by Escrow Holder (in its capacity as escrow agent), including reasonable attorneys' fees, in connection with any action, suit or other proceeding involving any claim, which arises out of or relates to the Agreement, the services of Escrow Holder hereunder or the monies and documents held by it hereunder. Promptly after the receipt by Escrow Holder of notice of any demand or claim or the commencement of any action, suit or proceeding, Escrow Holder shall, if a claim in respect thereof is to be made against any of the other parties hereto, notify such other parties hereto in writing; but the failure by Escrow Holder to give such notice shall not relieve any party from any liability which such party may have to Escrow Holder hereunder.

(f)    From time to time on and after the date hereof, Lender Parties and Borrower Parties shall deliver or cause to be delivered to Escrow Holder such further documents and instruments and shall do and cause to be done such further acts as Escrow Holder shall reasonably request (it being understood that Escrow Holder shall have no obligation to make any such request) to carry out more effectively the provisions and purposes of this Agreement, to evidence compliance herewith or to assure itself that it is protected in acting hereunder.

(g)    If for any reason the Close of Escrow does not occur and either party makes a written demand upon Escrow Holder for payment or refund, as the case may be, of the Escrowed Funds, or any portion thereof, or delivery or return of the Escrowed Documents, Escrow Holder shall give written notice to the other party of such demand. If Escrow Holder does not receive a written objection from the other party to the proposed payment or refund of the Escrowed Funds, or portion thereof, or the delivery or return of the Escrowed Documents, as the case may be, within ten (10) Business Days after the giving of the notice described in the preceding sentence, Escrow Holder is hereby authorized to make such payment or refund, or delivery or return; provided, however, if for any reason Escrow Holder in good faith shall elect not to make such payment, Escrow Holder shall continue to hold such amount until otherwise directed by written instructions from the parties to this Agreement or a final judgment of a court of competent jurisdiction. Notwithstanding the foregoing, Escrow Holder shall have the right at any time to deposit the Escrowed Funds and the Escrowed Documents with the Clerk of the Supreme Court of New York County, New York. Escrow Holder shall give written notice of such deposit to Lender Parties and Borrower Parties. Upon such deposit, Escrow Holder shall be relieved and discharged of all further obligations and responsibilities hereunder.

(h)     Escrow Holder may resign at any time as escrow agent hereunder upon giving five (5) Business Days' prior written notice to that effect to each of Lender Parties and Borrower Parties.   Any successor escrow agent shall be a nationally recognized title insurance company or a nationally recognized law firm selected by Borrower Parties and reasonably accepted by Lender Parties.   In such case , Escrow Holder shall no longer serve as escrow agent and shall deliver, against receipt, to such successor escrow agent, the Escrowed Funds and Escrowed Documents held by Escrow Holder, to be held by such successor escrow agent pursuant to the terms and provisions of this Agreement.   If no such successor has been designated on or before such party ceases to be escrow agent hereunder, whether by resignation or otherwise, Escrow Holder's obligations as escrow agent shall continue until such successor is appointed; provided, however, its sole obligation thereafter shall be to safely keep all monies and documents then held by it and to deliver the same to the person, firm or corporation designated as its successor or until directed by a final order or judgment of a court of competent jurisdiction, whereupon Escrow Holder shall make disposition thereof in accordance with such order.   If no successor escrow agent is designated and qualified within five (5) Business Days after its resignation is effective, the Escrow Holder shall no longer be considered the escrow agent and Escrow Holder shall apply to the Clerk of the Supreme Court of New York County, New York, for the appointment of a successor escrow agent.

# EXHIBIT E-1

### Form of Mortgage Lender Release

This Release ("**Release**") is made and is effective as of this _____ day of _____, 2009 by 44TH STREET PARTNERS I LLC, a Delaware limited liability company ("**Borrower**") and PATRICK THOMPSON, an individual (in his capacity as a guarantor under the Mortgage Loan, the "**Thompson Mortgage Guarantor**"), SAMMY ISAMU SUZUKI, an individual (in his capacity as a guarantor under the Mortgage Loan, the "**Suzuki Mortgage Guarantor**"; Thompson Mortgage Guarantor and the Suzuki Mortgage Guarantor are collectively referred to herein as "**Guarantor**") in favor of LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**"), LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**") and LEHMAN RE LTD., a Bermuda corporation ("**Lehman Re**"). LBHI, LCPI and Lehman Re are sometimes hereinafter collectively referred as the "**Lender Parties**" and each a "**Lender Party**". The Borrower and the Guarantor are sometimes hereinafter collectively referred to as the "**Borrower Parties**" and each a "**Borrower Party**". This Release is delivered pursuant to that Loan Pay-Off Agreement (the "**Agreement**") dated May [__], 2009, among the Borrower Parties and the Lender Parties. Capitalized terms used herein and not otherwise defined herein have the meaning set forth in the Agreement or, if not, having the meaning set forth in the Mortgage Loan Agreement (as defined in the Agreement) (the "**Mortgage Loan Agreement**").

1.        Borrower and Guarantor for themselves and for and on behalf of each of their past, present and future direct or indirect related entities (whether or not such entities are wholly owned) and each of their past, present and future officers, directors, shareholders, members, partners, trustees, agents, employees, servants, shareholders and attorneys (as well as their predecessors, successors and assigns) (collectively, the "**Releasing Parties**"), for and in consideration of the execution and delivery of the Agreement, and for other good and valuable consideration paid to the undersigned, the receipt and sufficiency of which are hereby acknowledged does hereby forever absolutely and irrevocably release, waive, remise, acquit and discharge each of the Lender Parties and any and all of their divisions, subsidiaries, parents, affiliates and other direct or indirect related entities (whether or not such entities are wholly-owned) and each of their past, present and future directors, trustees, fiduciaries, administrators, officers, agents, employees, servants, shareholders and attorneys (as well as their predecessors, successors and assigns) (collectively, the "**Released Parties**") of and from all manner of actions, causes of action, claims, claims of usury, suits, bonds, bills, covenants, controversies, agreements, promises, trespasses, damages (whether general, special or punitive) judgments, executions, demands, indebtedness (either as principal obligor or as surety or other accommodation party), liabilities, obligations, costs, expenses, losses, attorneys' fees and expenses (whether or not litigation is commenced), liens and indemnities of every kind and nature whatsoever, whether fixed or contingent, known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen and whether based on contract, tort, statute or other legal or equitable theory of recovery (collectively, "**Claims**") which the Releasing Parties, or any of them, now have, ever had, or hereafter can, shall or may have, or may hereafter assert, or which may hereafter arise against one or more of the Released Parties for or by reason of any Claims arising or accruing at any time on or prior to the date hereof in connection with, arising

out of, or to arise or accrue hereafter in connection with, or in any way relating, directly or indirectly, to the following: (a) the Loan or any other indebtedness owed in connection therewith, (b) the Mortgage Loan Documents, (c) the Project, (d) any rents, security deposits or other income from any portion of the Project, (e) any matters pertaining to any of the discussions, communications, correspondence, negotiations or dealings among the Releasing Parties and the Released Parties relating to the Loan or the Project, (f) any violation of any environmental laws, rules or regulations, (g) the lender-borrower relationship evidenced by the Loan, (h) any previous pursuit of rights or remedies by the Released Parties against the Borrower or the Guarantor or any other Person, or (i) any matters arising out of or in any way relating to any of the foregoing (collectively, the "**Released Claims**"). Without limiting the generality of the foregoing, the Released Claims shall include, without limitation, any loss, liability, expense and/or detriment, of any kind or character, in any way arising out of, connected with, or resulting from the acts or omissions of the Lender Parties, or the Released Parties or any of them, including, without limitation, the contracting for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate, any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, any cause of action or defenses based on the negligence of any of the Lender Parties or any "lender liability" theories, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, and/or any other tort or statutory claim, or any claim for wrongfully taking any action in connection with the foregoing.

2.      Notwithstanding anything contained herein to the contrary, the Releasing Parties and the Released Parties agree that this Release is a unilateral release in full in favor of the Released Parties and that this Release is not a release in favor of the Releasing Parties.

3.      Without limiting the generality of the foregoing, the Releasing Parties expressly release any and all past, present and future Released Claims, which the Releasing Parties, or any of them, do not know of or suspect to exist in their favor, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect their decision to enter into this Release, and to this end they and each of them, to the extent permitted by law waive all rights under any statutory provision purporting to limit the scope or effect of a general release, whether due to lack of knowledge or otherwise.

4.      The Releasing Parties further expressly warrant and represent that neither the Released Claims nor any part of any interest in any claim, contention, demand, or cause of action relating to any Released Claim or any portion of any recovery or settlement has been sold, granted, transferred, assigned or encumbered. The Releasing Parties hereby agree to indemnify and to hold harmless the Released Parties against any claim, contention, demand, cause of action, obligation and liability of any nature, character or description whatsoever, including the payment of attorneys' fees and costs actually incurred, whether or not litigation is commenced, which may be based upon or which may arise out of or in connection with any such assignment or transfer.

5.      The Releasing Parties expressly warrant and represent that in executing and entering into this Release, the Releasing Parties are not relying upon and have not relied upon any representation, promise or statement made by anyone which is not recited, contained or

embodied in this Release or in the Agreement or any document or instrument delivered contemporaneously with the Agreement. The Releasing Parties understand and expressly assume the risk that any fact not recited, contained or embodied herein or in the Agreement, or any document or instrument delivered in connection with the Agreement may turn out hereafter to be other than, different from, or contrary to the facts now known to the Releasing Parties or believed by the Releasing Parties to be true. Nevertheless, the Releasing Parties intend by this Release, and with the advice of independently selected counsel, to release fully, finally and forever the Released Claims and agree that this Release shall be effective in all respects notwithstanding any such difference in facts, and shall not be subject to termination, modification or rescission by reason of any such difference in facts.

6.      The parties understand and agree that any Released Claims the Releasing Parties may have against any Released Party are in dispute, and that the Releasing Parties and the Released Parties are entering into this Release for the purpose of settling such disputes by compromise in order to avoid litigation and to buy peace. The Releasing Parties hereby agree not to bring, or assist in bringing, any Released Claims, and the Releasing Parties further agree that this Release is, will constitute, and may be pleaded as, a bar to any such Released Claims. Neither the execution nor delivery of this Release or any documents executed contemporaneously herewith by any Person nor the payment of any consideration by any Person incident to this Release is an admission of any wrongdoing whatsoever on the part of any Person. Each of the Releasing Parties for itself and for anyone claiming by, through or under it, hereby agrees to defend, protect, indemnify and hold harmless any and all of the Released Parties from and against all loss, cost, liability, damage and expense (including reasonable attorneys' fees and expenses) incurred by the Released Parties or any of them in connection with, arising out of or in any way relating to any breach by the Releasing Parties, or any of them, of the covenants and agreements set forth in this Release.

7.      This Release shall inure to the benefit of and be binding upon the Releasing Parties and the respective Released Parties and their respective successors and permitted assigns, provided that the Releasing Parties shall have no right to assign any of their rights or duties under this Release.

8.      This Release, the Agreement and the documents and instruments delivered pursuant to the Agreement constitute and are intended to constitute the entire agreement of the parties concerning the subject matter hereof. All prior discussions and negotiations with respect to the subject matter hereof are superseded by this Release, the Agreement (including those rights under the Agreement as specifically set forth in Paragraph 9(A) of the Agreement), and the documents and instruments delivered pursuant to the Agreement.

9.      If any provisions of this Release are determined by a court of competent jurisdiction to be invalid or unenforceable, in whole or in part, the remaining provisions, and any partially invalid or unenforceable provisions, to the extent valid and enforceable, shall nevertheless be binding and valid and enforceable.

10.     When necessary herein, all terms used in the singular shall apply to the plural, and vice versa, and all terms used in the masculine shall apply to the neuter and feminine genders, and vice versa.

11.     This Release shall be construed according to and governed by the laws of the State of New York without giving effect to principles of conflicts of law.

12.     This Release may be executed in any number of counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

| | |
|---|---|
| **BORROWER:**<br><br>**44TH STREET PARTNERS I LLC**,<br>a Delaware limited liability company<br><br><br>By:_____<br>        Name:_____<br>        Title:_____ | |
| **GUARANTOR:**<br><br><br>_____<br>**PATRICK THOMPSON** | |
| **GUARANTOR:**<br><br><br>_____<br>**SAMMY ISAMU SUZUKI** | |

## **EXHIBIT E-2**

### Form of Mezzanine Lender Release

This Release ("**Release**") is made and is effective as of this _____ day of _____ 2009 by (i) 44TH STREET PARTNERS II LLC, a Delaware limited liability company (the "**Borrower**"), (ii) 44TH STREET PARTNERS I LLC, a Delaware limited liability company (the "**Project Owner**"), (iii) PATRICK THOMPSON, an individual (in his capacity as guarantor and/or indemnitor under the Guaranty of Recourse Obligations, Payment and Completion Guaranty and Environmental Indemnity (each, as defined in the Mezzanine Loan Agreement, as defined below), the "**Guarantor**", and in his capacity as pledgor under that certain Pledge and Security Agreement (Interests in TWP Capital Holdings I, LLC), dated as of August 8, 2006, the "**Patrick Pledgor**"), (iv) 44th STREET HOLDINGS LLC, a Delaware limited liability company ("**Holdings Pledgor**"), (v) SUZUKI GROUP LLC, a New York limited liability company ("**Suzuki**") and (vi) TWP CAPITAL HOLDINGS I, LLC, a New York limited liability company ("**TWP Pledgor**"), in favor of LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**Lender**").  The Borrower, Project Owner, Guarantor, the Thompson Pledgor, the Holdings Pledgor, Suzuki, the TWP Pledgor are sometimes hereinafter collectively referred to as the "**Borrower Parties**" and each a "**Borrower Party**."  This Release is delivered pursuant to that Loan Pay-Off Agreement (the "**Agreement**") dated May [__], 2009, among the Borrower Parties and the Lender Parties.  Capitalized terms used herein and not otherwise defined herein have the meaning set forth in the Agreement or, if not, having the meaning set forth in that certain Mezzanine Loan Agreement (as defined in the Agreement) (the "**Mezzanine Loan Agreement**").

1.        Each of the Borrower Parties for itself and for and on behalf of each of their past, present and future direct or indirect related entities (whether or not such entities are wholly owned) and each of their past, present and future officers, directors, shareholders, members, partners, trustees, agents, employees, servants, shareholders and attorneys (as well as their predecessors, successors and assigns) (collectively, the "**Releasing Parties**") does hereby forever absolutely and irrevocably release, waive, remise, acquit and discharge each of the Lender and any and all of its divisions, subsidiaries, parents, affiliates and other direct or indirect related entities (whether or not such entities are wholly-owned) and each of their past, present and future directors, trustees, fiduciaries, administrators, officers, agents, employees, servants, shareholders and attorneys (as well as their predecessors, successors and assigns) (collectively, the "**Released Parties**") of and from all manner of actions, causes of action, claims, claims of usury, suits, bonds, bills, covenants, controversies, agreements, promises, trespasses, damages (whether general, special or punitive), judgments, executions, demands, indebtedness (either as principal obligor or as surety or other accommodation party), liabilities, obligations, costs, expenses, losses, attorneys' fees and expenses (whether or not litigation is commenced), liens and indemnities of every kind and nature whatsoever, whether fixed or contingent, known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen and whether based on contract, tort, statute or other legal or equitable theory of recovery (collectively, "**Claims**") which the Releasing Parties, or any of them, now have, ever had, or hereafter can, shall or may have, or may hereafter assert, or which may hereafter arise against one or more of

the Released Parties for or by reason of any Claims arising or accruing at any time on or prior to the date hereof in connection with, arising out of, or to arise or accrue hereafter in connection with, or in any way relating, directly or indirectly, to the following:  (a) the Mezzanine Loan or any other indebtedness owed in connection therewith, including, without limitation, any obligations to provide additional funding by LBHI, if any, thereunder, (b) the Mezzanine Loan Documents, (c) the Project, (d) the Collateral, (e) any rents, security deposits or other income from any portion of the Project, (f) any matters pertaining to any of the discussions, communications, correspondence, negotiations or dealings among the Releasing Parties and the Released Parties relating to the Mezzanine Loan, the Collateral or the Project, (g) any violation of any environmental laws, rules or regulations, (h) the lender-borrower relationship evidenced by the Mezzanine Loan, (i) any previous pursuit of rights or remedies by the Released Parties against the Borrower Parties or any other Person, or (i) any matters arising out of or in any way relating to any of the foregoing (collectively, the "**Released Claims**").  Without limiting the generality of the foregoing, the Released Claims shall include, without limitation, any loss, liability, expense and/or detriment, of any kind or character, in any way arising out of, connected with, or resulting from the acts or omissions of the Lender, or the Released Parties or any of them, including, without limitation, the contracting for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate, any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, any cause of action or defenses based on the negligence of Lender or any "lender liability" theories, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, and/or any other tort or statutory claim, or any claim for wrongfully taking any action in connection with the foregoing.

2.    Notwithstanding anything contained herein to the contrary, the Releasing Parties and the Released Parties agree that this Release is a unilateral release in full in favor of the Released Parties and that this Release is not a release in favor of the Releasing Parties.

3.    Without limiting the generality of the foregoing, the Releasing Parties expressly release any and all past, present and future Released Claims, which the Releasing Parties, or any of them, do not know of or suspect to exist in their favor, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect their decision to enter into this Release, and to this end they and each of them, to the extent permitted by law waive all rights under any statutory provision purporting to limit the scope or effect of a general release, whether due to lack of knowledge or otherwise.

4.    The Releasing Parties further expressly warrant and represent that neither the Released Claims nor any part of any interest in any claim, contention, demand, or cause of action relating to any Released Claim or any portion of any recovery or settlement has been sold, granted, transferred, assigned or encumbered.  The Releasing Parties hereby agree to indemnify and to hold harmless the Released Parties against any claim, contention, demand, cause of action, obligation and liability of any nature, character or description whatsoever, including the payment of attorneys' fees and costs actually incurred, whether or not litigation is commenced, which may be based upon or which may arise out of or in connection with any such assignment or transfer.

5.      The Releasing Parties expressly warrant and represent that in executing and entering into this Release, the Releasing Parties are not relying upon and have not relied upon any representation, promise or statement made by anyone which is not recited, contained or embodied in this Release.  The Releasing Parties understand and expressly assume the risk that any fact not recited, contained or embodied herein may turn out hereafter to be other than, different from, or contrary to the facts now known to the Releasing Parties or believed by the Releasing Parties to be true.  Nevertheless, the Releasing Parties intend by this Release, and with the advice of independently selected counsel, to release fully, finally and forever the Released Claims and agree that this Release shall be effective in all respects notwithstanding any such difference in facts, and shall not be subject to termination, modification or rescission by reason of any such difference in facts.

6.      The parties understand and agree that any Released Claims the Releasing Parties may have against any Released Party are in dispute, and that the Releasing Parties and the Released Parties are entering into this Release for the purpose of settling such disputes by compromise in order to avoid litigation and to buy peace.  The Releasing Parties hereby agree not to bring, or assist in bringing, any Released Claims, and the Releasing Parties further agree that this Release is, will constitute, and may be pleaded as, a bar to any such Released Claims. Neither the execution nor delivery of this Release or any documents executed contemporaneously herewith by any Person nor the payment of any consideration by any Person incident to this Release is an admission of any wrongdoing whatsoever on the part of any Person. Each of the Releasing Parties for itself and for anyone claiming by, through or under it, hereby agrees to defend, protect, indemnify and hold harmless any and all of the Released Parties from and against all loss, cost, liability, damage and expense (including reasonable attorneys' fees and expenses) incurred by the Released Parties or any of them in connection with, arising out of or in any way relating to any breach by the Releasing Parties, or any of them, of the covenants and agreements set forth in this Release.

7.      This Release shall inure to the benefit of and be binding upon the Releasing Parties and the respective Released Parties and their respective successors and permitted assigns, provided that the Releasing Parties shall have no right to assign any of their rights or duties under this Release.

8.      This Release, the Agreement and the documents and instruments delivered pursuant to the Agreement constitute and are intended to constitute the entire agreement of the parties concerning the subject matter hereof.  All prior discussions and negotiations with respect to the subject matter hereof are superseded by this Release, the Agreement (including those rights under the Agreement as specifically set forth in Paragraph 9(A) of the Agreement), and the documents and instruments delivered pursuant to the Agreement.

9.      If any provisions of this Release are determined by a court of competent jurisdiction to be invalid or unenforceable, in whole or in part, the remaining provisions, and any partially invalid or unenforceable provisions, to the extent valid and enforceable, shall nevertheless be binding and valid and enforceable.

10.     When necessary herein, all terms used in the singular shall apply to the plural, and vice versa, and all terms used in the masculine shall apply to the neuter and feminine genders, and vice versa.

11.     This Release shall be construed according to and governed by the laws of the State of New York without giving effect to principles of conflicts of law.

12.     This Release may be executed in any number of counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

**BORROWER:**

**44TH STREET PARTNERS II LLC**,
a Delaware limited liability company

By: _____
Name: _____
Title: _____

**GUARANTOR AND PATRICK PLEDGOR:**

_____
**PATRICK THOMPSON**

**TWP PLEDGOR:**

**TWP CAPITAL HOLDINGS I, LLC**, a New York limited liability company

By: _____
Name: _____
Title: _____

**PROJECT OWNER:**

**44TH STREET PARTNERS I LLC,** a Delaware limited liability company

By: _____
Name: _____
Title: _____

**HOLDINGS PLEDGOR:**

**44TH STREET HOLDINGS LLC,** a Delaware limited liability company

By: _____
Name: _____
Title: _____

**SUZUKI:**

**SUZUKI GROUP LLC,** a New York limited liability company

By: _____
Name: _____
Title: _____

EXHIBIT E-2– PAGE 4

## **Exhibit B**

Draft LeMadre Senior Mezzanine Loan Pay-Off Agreement

### LOAN PAYOFF AGREEMENT
#### (M&B SENIOR MEZZANINE LOAN)

THIS LOAN PAYOFF AGREEMENT ("Agreement") is made as of the _____ day of May, 2009 (the "**Effective Date**"), by and among LEMADRE MEZZ LLC, a Delaware limited liability company ("**Borrower**"), BENJAMIN SHAOUL, an individual ("**Shaoul**"), MARC RAVNER, an individual ("**Ravner**", and together with Shaoul, each a "**Guarantor**" and collectively, the "**Guarantors**"), and LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**"), LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**"), and LEHMAN RE LTD., a Bermuda corporation ("**Lehman Re**").  LBHI, LCPI and Lehman Re are hereinafter collectively referred to from time to time as "**Lender Parties**".

R E C I T A L S

A.    Subject to the terms and conditions of that certain Mezzanine Construction Loan Agreement dated July 12, 2006 as modified by Omnibus Modification and Ratification Agreement dated August 15, 2007, by and between Borrower and LBHI (as so modified, the "**Loan Agreement**"), LBHI made a loan to Borrower in the amount of up to $7,270,000 (the "**Loan**").  All capitalized terms used but not defined herein shall have the meaning assigned to such terms in the Loan Agreement.

B.    The Loan is evidenced by that certain Amended and Restated Secured Promissory Note (Senior Mezzanine Loan) dated as of August 15, 2007 in the principal amount of $7,270,000 given by Borrower to LBHI and evidencing the Advances under the Loan (the "**Note**").

C.    The Loan is secured by, among other things, that certain Pledge and Security Agreement (Interests in Project Owner) dated July 12, 2006 given by Borrower to LBHI constituting a perfected pledge and assignment of Borrower's 100% interest in Project Owner, together with the Consent of Project Owner thereto and the Control Agreement thereto (collectively, the "**Pledge Agreement**").

D.    Certain of Borrower's obligations under the Loan are guaranteed by Guarantors pursuant to (1) that certain Guaranty of Recourse Obligations (Senior Mezzanine Loan), dated as of July 12, 2006 (the "**Recourse Guaranty**"), (2) that certain Guaranty of Completion (Senior Mezzanine Loan), dated as of August 15, 2007 (the "**Completion Guaranty**") and (3) that certain Environmental and Hazardous Substance Indemnification Agreement (Senior Mezzanine Loan), dated as of July 12, 2006 (the "**Environmental Indemnity**").

E.    The Loan Agreement, the Note, the Pledge Agreement, the Recourse Guaranty, the Completion Guaranty, the Environmental Indemnity and the other documents and instruments executed by Borrower and/or the Guarantors evidencing, securing or otherwise relating to the Loan are hereinafter collectively referred to as the "**Loan Documents**."  A complete list of the Loan Documents is set forth on Exhibit A attached hereto and incorporated herein by reference.

F.    LBHI and LCPI are debtors under a pending bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") being jointly administered under Case No. 08-13555.

G.     LBHI made a loan to M&B Mezz LLC (the "**Junior Mezzanine Borrower**") in the amount of up to $7,200,000 (the "**Junior Mezzanine Loan**") pursuant to that certain Junior Mezzanine Construction Loan Agreement dated August 15, 2007. Simultaneously upon the execution of this Agreement, the Lender Parties, Junior Mezzanine Borrower, and Guarantors are entering into that certain Loan Payoff Agreement (M&B Junior Mezzanine Loan) providing for the payoff of the Junior Mezzanine Loan on the terms provided therein (the "**Junior Mezzanine Loan Payoff Agreement**").

H.     Lender Parties advise that pursuant to the terms of that certain Master Repurchase Agreement dated as of July 9, 1999 (the "**Repurchase Agreement**") by and among Lehman Re, LCPI and Lehman Brothers Inc., Lehman Re and LCPI entered into certain agreements with respect to certain loans and other assets originated by LBHI and/or certain affiliates of LBHI, including the Junior Mezzanine Loan.

I.     Lender Parties advise that they have had certain disputes regarding the actual ownership status of the Loan and/or the Junior Mezzanine Loan and, subject to Paragraph 12T hereof, have resolved such disputes as evidenced by their agreements herein and in the Junior Mezzanine Loan Payoff Agreement.

J.     Subject to obtaining Bankruptcy Court approval of this Agreement and the Junior Mezzanine Loan Payoff Agreement and subject to the terms hereof, including, without limitation, Paragraph 12T hereof, Lender Parties have agreed that LBHI is the owner and holder of the Loan and LBHI has agreed to accept the Payoff Amount (as hereinafter defined) as full repayment of the Loan.

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower, Guarantors and the Lender Parties hereby agree as follows:

1.     <u>Repayment of Loan</u>.

A.     <u>Amount of Repayment</u>. Borrower and Guarantors acknowledge that LBHI cannot agree to accept a discounted payoff of the Loan without obtaining Bankruptcy Court approval of same. LBHI agrees in good faith to seek Bankruptcy Court approval of a discounted payoff in an amount equal to the sum of (i) the entire outstanding principal balance of the Loan, and (ii) $100,000 on account of accrued and outstanding interest in full satisfaction of all accrued and unpaid interest and other charges under the Loan (except as expressly provided in Section 2(C) herein). LBHI agrees to prosecute such application for Bankruptcy Court approval in good faith and with due diligence and shall not abandon such application until approved or denied by the Bankruptcy Court. Notwithstanding, the foregoing, in the event such Bankruptcy Court approval has not been obtained as of the Closing Date, Borrower shall pay to LBHI an amount equal to the sum of the entire outstanding principal balance of the Loan and all then accrued and unpaid interest, the parties shall close hereunder and LBHI agrees that, to the extent LBHI thereafter obtains approval of the Bankruptcy Court to such discounted payment on account of accrued and outstanding interest, LBHI shall pay to Borrower the excess interest payments paid by Borrower hereunder. The amount required to be paid by Borrower to LBHI as provided above is referred to herein as the "**Payoff Amount**").

B.     <u>Manner of Payment</u>. The Payoff Amount shall be paid as follows:

1.     Borrower shall deposit the Payoff Amount and the Closing Costs (as hereinafter defined) with Commonwealth Land Title Insurance Company ("**Escrow Holder**"), having an address c/o New York Land Services, 630 Third Avenue, New York, New York 10017, Attn: Counsel at least one (1) Business Day prior to the Closing Date.

2.      All sums required to be delivered by Borrower hereunder on or before the Closing Date shall be delivered by wire transfer or in other immediately available funds.

2.      <u>Escrow</u>.  This Agreement shall constitute both an agreement between the Lender Parties and the Borrower Parties and formal joint escrow instructions to the Escrow Holder, which instructions shall be binding upon such parties and Escrow Holder.  LBHI and Borrower have established an escrow ("**<u>Escrow</u>**") with Escrow Holder by delivery to Escrow Holder of a fully-executed copy of this Agreement.  Any and all amounts delivered to the Escrow Holder by the Borrower pursuant to the terms of this Agreement (collectively, the "**<u>Escrowed Funds</u>**") as well as all documents received by the Escrow Holder pursuant to this Agreement (collectively, the "**<u>Escrowed Documents</u>**") shall be held by Escrow Holder in escrow in accordance with the provisions of <u>Exhibit B</u> attached hereto and incorporated herein by reference.  Escrow Holder has executed this Agreement for the sole and exclusive purpose of evidencing its agreement to the provisions of Paragraphs 2 through 5 hereof and <u>Exhibit B</u> attached hereto.

A.      <u>Tax Identification Numbers</u>. LBHI represents and warrants that LBHI's tax identification number is 13-3399371.  Borrower represents and warrants that Borrower's tax identification number is 20-4596330.

B.      <u>Close of Escrow</u>.  Provided that all conditions precedent to the close of Escrow have been satisfied, Escrow Holder shall close the Escrow ("**<u>Close of Escrow</u>**") on the date which is 30 days after the date hereof (the "**<u>Initially Scheduled Closing Date</u>**") or such earlier date agreed upon by LBHI and Borrower; provided, however, that Borrower, on written notice to the Lender Parties, shall have the one-time right given at any time on or before the Initially Scheduled Closing Date, to adjourn the Close of Escrow to a date (such adjourned date being referred to herein as the "**<u>Rescheduled Closing Date</u>**"), not later than the date which is 30 days from the Initially Scheduled Closing Date (such Initially Scheduled Closing Date or, if Borrower elects to adjourn the Close of Escrow as hereinabove provided, the Rescheduled Closing Date is referred to as the "**<u>Closing Date</u>**").  If the Escrow is not closed on or before the Closing Date, or if any condition set forth in Paragraph 4A is not satisfied on or before the date set forth therein for the satisfaction of such condition, then any Lender Party shall have the right (in addition to LBHI's rights under the Loan Documents), by written notice to Borrower, the other Lender Parties and Escrow Holder, to terminate this Agreement and the obligations of the parties hereunder, but such termination shall not release Borrower from liability for any breach of this Agreement occurring prior to the termination of this Agreement.  Borrower and each Guarantor acknowledge and agree that the agreement of LBHI to accept the Payoff Amount contained in Paragraph 1 in full satisfaction of the Loan shall be null and void if the Close of Escrow does not occur on or before the Closing Date.

C.      <u>Closing Costs</u>.  Borrower shall pay for the following fees and expenses (the "**<u>Closing Costs</u>**"): (i) any and all escrow fees, filing and recording charges, recording taxes (if any), and any other similar costs and expenses incurred in connection with the transactions contemplated by this Agreement, and (ii) Lender Parties' reasonable attorneys' fees of Paul, Hastings, Janofsky & Walker LLP only incurred in connection with the preparation and negotiation of all documentation for, and the consummation of, the transactions contemplated by this Agreement.

3.      <u>Deliveries To Escrow</u>.  Borrower and LBHI shall deliver or cause to be delivered to Escrow Holder to be held in escrow pending satisfaction of the conditions to closing provided herein, the following items at least one (1) Business Day prior to the Closing Date:

A.      <u>By Borrower</u>.

(i)       Borrower shall deliver or cause to be deposited with Escrow Holder the sum of (x) the Payoff Amount, (y) the Closing Costs, and (z) all other amounts to be paid by Borrower hereunder by wire transfer to Escrow Holder.

(ii)      Borrower shall deliver to Escrow Holder five (5) duly executed and acknowledged releases (each, a "**Release**") in the form attached hereto as <u>Exhibit C</u>.

B.       <u>By LBHI</u>.  LBHI shall deliver to Escrow Holder (i) one original loan payoff letter (the "**Loan Payoff Letter**") stating that upon the Close of Escrow and receipt by LBHI of the Payoff Amount and all other amounts to be paid by Borrower hereunder, but subject to the terms and conditions of this Agreement, the lien of the Pledge Agreement will be automatically released and Borrower shall be authorized to file terminations of any and all UCC financing statements in favor of LBHI in connection with the Loan, (ii) the original Note with an instruction to Escrow Holder to mark such original Note "cancelled" upon the Close of Escrow and (iii) five (5) duly executed and acknowledged releases executed by each of the Lender Parties in the form attached hereto as <u>Exhibit D</u>.

4.       <u>Conditions to Close of Escrow</u>.

A.       <u>Conditions Precedent to LBHI's Obligation to Close Escrow</u>.  The obligation of LBHI to close Escrow shall be subject to the satisfaction of all of the following conditions precedent:

1.       <u>Borrower's Performance</u>.   Subject to Paragraph 6 of this Agreement, no further Event of Default under the Loan Documents shall have occurred.

2.       <u>Simultaneous Payoff of the Senior Loan and the Junior Mezzanine Loan</u>.  The Senior Lender and the Junior Mezzanine Lender shall have simultaneously received payment in full satisfaction of all amounts outstanding under, respectively, the Senior Loan (or, if the Senior Lender is not simultaneously paid in full, the Senior Lender shall have consented to the receipt by LBHI and the Junior Mezzanine Lender of the payments contemplated by, respectively, this Agreement and the Junior Mezzanine Loan Payoff Agreement, which consent shall be pursuant to a written agreement in form and substance satisfactory to the Lender Parties) and the Junior Mezzanine Loan, in the case of Junior Mezzanine Lender, pursuant to the Junior Mezzanine Loan Payoff Agreement being entered into concurrently herewith.

B.       <u>Conditions Precedent to Borrower's Obligation to Close Escrow</u>.  The obligation of Borrower to close Escrow shall be subject to (1) Lender Parties performing, satisfying and complying with all covenants, agreements and conditions required by this Agreement to be performed or complied with by Lender Parties hereunder on or before the Closing Date, and (2) Lender Parties' performing, satisfying and complying with all covenants, agreements and conditions required by the Junior Mezzanine Loan Payoff Agreement to be performed or complied with by Lender Parties thereunder on or before the Closing Date.

5.       <u>Close of Escrow</u>.   At the Close of Escrow, Escrow Holder shall promptly undertake all of the following in the order set forth below:

A.       <u>Funds</u>.  Disburse the Escrowed Funds deposited with Escrow Holder by Borrower as follows:

1.    Wire funds in the amount of the Payoff Amount to one or more accounts directed in writing by LBHI and provided to Escrow Holder by LBHI prior to the Close of Escrow.

2.    Wire the Closing Costs in accordance with the written instruction of LBHI delivered to the Escrow Holder prior to the Close of Escrow.

3.    Wire all other amounts deposited by Borrower with Escrow Holder to pay the amounts owed by Borrower hereunder at the Close of Escrow, which amounts shall be wired to one or more accounts directed in writing by LBHI and provided to Escrow Holder by LBHI prior to the Close of Escrow.

B.    <u>Delivery of Documents to LBHI and the other Lender Parties</u>.  Deliver to each of the Lender Parties one fully executed original of the Release.

C.    <u>Delivery of Documents To Borrower</u>.  Deliver to Borrower (1) the original Loan Payoff Letter, (2) the original Note marked "cancelled" and (3) five (5) duly executed and acknowledged releases executed by each of the Lender Parties in the form attached hereto as <u>Exhibit D</u>.

6.    <u>Default under the Loan Documents</u>.  Provided that no Event of Default (which, for the avoidance of doubt includes an Event of Default contemplated by Paragraph 9 of this Agreement) under the Loan Documents (other than the failure of Borrower to make (i) full payment of all interest due on December 9, 2008 under the Note and (ii) all subsequent monthly payments due under the Note), which failures continue after the expiration of all applicable grace or cure periods therefor) has occurred, LBHI agrees not to exercise any remedies under the Loan Documents which LBHI may have resulting solely from such defaults during the period (the "<u>Forbearance Period</u>") from the Effective Date through and including the earlier of (x) the Closing Date and (y) the termination of this Agreement.  Nothing contained in the foregoing, however, shall limit or restrict LBHI from taking any action during the Forbearance Period that LBHI may take under the Loan Documents or at law or in equity necessary or appropriate in LBHI's discretion to preserve, protect or defend any of the collateral described in the Loan Documents including, without limitation (i) defending, intervening in or filing of any legal proceedings relating to any such collateral; (ii) the sending of any notices to any persons or entities concerning the existence of security interests or liens in favor of LBHI relating to such collateral; or (iii) otherwise preserving any of LBHI's rights, remedies or positions.

7.    <u>Representations and Warranties</u>.  As a material inducement to Lender Parties' execution of this Agreement, Borrower hereby represents and warrants to Lender Parties as follows:

A.    <u>Consents</u>.  Borrower has obtained all consents and permissions related to the transactions herein contemplated and required under any covenant, agreement, encumbrance, law or regulation.

B.    <u>Due Authorization, Execution, and Organization.</u>  This Agreement and all agreements, instruments and documents herein provided to be executed by Borrower and/or the Guarantors are and on the Closing Date will be duly authorized, executed and delivered by and are and will be binding upon Borrower.  Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and duly authorized and qualified to do all things required of it under this Agreement.  Borrower has the capacity and authority to enter into this Agreement and consummate the transactions herein provided and nothing prohibits or restricts the right or ability of Borrower to close the transactions contemplated hereunder and carry out the terms hereof.

C.    Value of Project.  In Borrower's judgment, after subtracting the amount of the Senior Loan, the fair market value of the Project is greater than the Payoff Amount.

D.    Solvency.  Borrower and each of the Guarantors is solvent, and will not become insolvent by reason of their entry into this Agreement or the payment of the Payoff Amount or the other sums required to be paid by Borrower pursuant to this Agreement.

The provisions of this Paragraph 7 shall survive the Close of Escrow or the termination of this Agreement.

8.    Release.

A.    Release.  As further consideration for Lender Parties' execution of this Agreement, each of Borrower and each of the Guarantors for itself and its respective affiliates, successors and assigns (collectively, the "**Borrower Parties**"), as of the Effective Date and as of the Closing Date, hereby absolutely and irrevocably waives, releases, and forever discharges each of the Lender Parties and their respective partners, officers, creditors, shareholders, directors, agents, attorneys, servants, contractors, employees, parent and subsidiary corporations and predecessors-in-interest (collectively, the "**Released Parties**") from any and all claims, rights, demands, actions, suits, causes of actions, damages, counterclaims, defenses, losses, costs, obligations, liabilities and expenses of every kind or nature (collectively, "**Claims**"), known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen, arising out of or relating directly or indirectly to any circumstances or state of facts pertaining to the Loan, the Loan Documents or the Project, including claims related to the actions of Lender Parties or their respective predecessors in administering the Loan or negotiating the Loan Documents and claims of lender liability, duress, illegality, usury, waiver, bad faith, interference in the business of the Borrower Parties, or any nonperformance of any agreement or obligation related thereto, or any statements, representations, acts or omissions, intentional, willful, negligent or innocent, by any of the Released Parties in any way connected with, relating to or affecting, directly or indirectly, the Loan, the Loan Documents, or the Project; provided, however, that the foregoing shall not constitute a release of any of any Lender Party's obligations under this Agreement or any claim against such Lender Party based on fraud committed by such Lender Party.

B.    Non-Reliance.  Each of the Borrower Parties hereby acknowledges that it has not relied upon any representation of any kind made by any of the Lender Parties in making the foregoing release.

C.    No Transfer of Claims.  Each of the Borrower Parties represents and warrants that it has not heretofore assigned, or transferred, or purported to assign or to transfer, to any person or entity, any Claims released hereunder or any portion thereof or interest therein, and each of the Borrower Parties agrees to indemnify, defend and hold the Released Parties harmless from and against any and all such Claims based on or arising out of any such assignment or transfer or purported assignment or transfer.

D.    No Admission of Liability.  It is understood and agreed that this Paragraph 8 shall not be deemed or construed as an admission by Lender Parties of liability of any nature whatsoever arising from or related to the subject of this Paragraph 8.

E.    Advice of Counsel.  Each of the Borrower Parties hereby agrees, represents and warrants that it has had advice of counsel of its own choosing in negotiations for and the preparation of this Agreement, including the foregoing release, that it has read the provisions of this Agreement, including the foregoing release, and that it is fully aware of its contents and legal effect.

F.      <u>Damages and Attorneys' Fees</u>.  Each of the Borrower Parties agrees that if it hereafter commences, joins in, or in any manner seeks, relief through any suit arising out of, based upon, or relating to any of the Claims or in any manner asserts against such Released Parties, or any of them, any of the Claims, then the undersigned will pay to such Released Parties, and each of them, in addition to any other damages caused to such Released Parties thereby, all reasonable attorneys' fees incurred by such Released Parties in defending or otherwise responding to said suit or claim.

G.      <u>Survival</u>.  The provisions of this Paragraph 8 shall survive the Close of Escrow or termination of this Agreement.

9.      <u>Default</u>.  Any breach by Borrower or any Guarantor of this Agreement that continues after the expiration of any applicable notice or grace period expressly provided herein shall be an automatic Event of Default under the Loan Agreement (with no further notice, cure or grace period).

10.     <u>Relief from Stay</u>.

A.      <u>Agreement</u>.  As additional consideration for the Lender Parties' execution of this Agreement, each of the Borrower Parties agrees that:  (i) in the event of a bankruptcy filing by or against it, it shall not reject this Agreement, nor contest any claim or assertion by any Lender Party that this Agreement is binding between the parties, and that valuable consideration has been received by Borrower for same; (ii) Lender Parties shall receive immediate relief from the automatic stay provisions of the United States Bankruptcy Code following any bankruptcy petition which any of the Borrower Parties may file or which may be filed against any of the Borrower Parties and that it shall in no event contest a motion to lift the automatic stay filed by Lender Parties; and (iii) any contrary action taken by any of the Borrower Parties with respect to the matters set forth above shall be deemed to be in bad faith and are agreed to constitute violations of Federal Rules of Civil Procedure 11 and Bankruptcy Rule 9011.

B.      <u>Functional Equivalent of Chapter 11</u>.  Each of the Borrower Parties acknowledges that this Agreement is of considerable benefit to it, and represents the functional equivalent of a restructuring of Borrower's business under the United States Bankruptcy Code because, among other things, (i) Borrower has received forbearances and financial accommodations from Lender Parties; and (ii) Borrower was afforded by Lender Parties an opportunity to cause a sale or refinancing of the Project, all in lieu of a bankruptcy petition, which Borrower elected not to file.  Borrower has thus been provided with a full and fair opportunity to reestablish or reorganize its financial stake in the Project, and has elected not to seek a further restructuring of its business.  Each of the Borrower Parties understands that Lender Parties are entering into this Agreement in reliance on Borrower's representation that it will not seek a further restructuring of its business.

11.     <u>Miscellaneous</u>.

A.      <u>Survival</u>.  All warranties, representations, covenants, obligations and agreements contained in this Agreement shall survive the Close of Escrow hereunder.  All warranties and representations shall be effective regardless of any investigation made or which could have been made.

B.      <u>Further Instruments</u>.  The parties shall cause to be executed, acknowledged or delivered such further instruments and documents as may be reasonably necessary to carry out the intent and purpose of this Agreement.

C.    Cumulative Remedies.    No remedy conferred upon a party in this Agreement is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law, in equity or by statute (except as otherwise expressly herein provided).

D.    No Waiver.    No waiver by Lender Parties of any breach of this Agreement or of any warranty or representation hereunder by Borrower shall be deemed a waiver of any other breach by Borrower (whether preceding or succeeding and whether or not of the same or similar nature), and no acceptance of payment or performance by Lender Parties after any breach by Borrower shall be deemed to be a waiver of any breach of this Agreement or of any representation or warranty hereunder by Borrower, whether or not Lender Parties know of such breach at the time it accepts such payment or performance.    No failure or delay by any Lender Party to exercise any right it may have by reason of the default of Borrower shall operate as a waiver of default or modification of the Loan, the Loan Documents or this Agreement or shall prevent the exercise of any right by any Lender Party.

E.    Governing Law.    THIS AGREEMENT WAS NEGOTIATED IN PART IN THE STATE OF NEW YORK, AND THE LOAN WAS MADE BY LBHI FROM THE STATE OF NEW YORK, AND THE PROCEEDS OF THE LOAN WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE LENDER PARTIES, BORROWER AND EACH GUARANTOR AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (EXCLUDING APPLICATION OF ANY PRINCIPLE OF CONFLICT OF LAWS WHICH WOULD DIRECT THE APPLICATION OF THE LAW OF ANY OTHER JURISDICTION) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW OR NOT PROHIBITED BY LAW, BORROWER AND EACH GUARANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT, AND THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO §5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

F.    Jurisdiction.

1.    SUIT BY BORROWER OR GUARANTORS.    BORROWER AND EACH GUARANTOR HEREBY AGREES THAT ANY LEGAL SUIT, ACTION OR PROCEEDING BROUGHT BY BORROWER AND/OR EITHER GUARANTOR OR ANY AFFILIATE THEREOF AGAINST ANY LENDER PARTY AND/OR SERVICER (OTHER THAN COMPULSORY COUNTERCLAIMS PERMITTED HEREUNDER IN CONNECTION WITH ANY ACTION, SUIT OR PROCEEDING COMMENCED BY ANY LENDER PARTY IN A JURISDICTION OUTSIDE OF NEW YORK) ARISING OUT OF OR RELATING TO THE LOAN, THIS AGREEMENT OR ANY OF THE LOAN DOCUMENTS OR RELATING TO THE PROJECT SHALL ONLY BE INSTITUTED BY BORROWER, GUARANTORS OR ANY AFFILIATE THEREOF IN COURTS OF THE STATE OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK OR THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK. BORROWER AND EACH GUARANTOR HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO BRING ANY LEGAL OR EQUITABLE SUIT, ACTION OR PROCEEDING AGAINST ANY LENDER PARTY AND/OR SERVICER

ARISING OUT OF OR RELATING TO THE LOAN, THIS AGREEMENT OR ANY OF THE LOAN DOCUMENTS OR RELATING TO THE PROJECT IN ANY OTHER COURT OTHER THAN COURTS OF THE STATE OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK OR THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK.

2.      SUIT BY ANY LENDER PARTY.  WITH RESPECT TO ANY CLAIM OR ACTION ARISING HEREUNDER OR UNDER THE LOAN DOCUMENTS, BORROWER AND GUARANTOR (1) IRREVOCABLY SUBMIT TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK, (2) AGREE THAT ALL SUCH CLAIMS OR ACTIONS MAY BE HEARD AND DETERMINED IN SUCH COURTS OF THE STATE OF NEW YORK OR, TO THE EXTENT PERMITTED BY LAW, IN SUCH FEDERAL COURT AND (3) IRREVOCABLY WAIVE ANY (a) OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY LOAN DOCUMENT BROUGHT IN ANY SUCH COURT AND (b) ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.  NOTHING IN THIS AGREEMENT WILL BE DEEMED TO PRECLUDE ANY LENDER PARTY FROM BRINGING AN ACTION OR PROCEEDING WITH RESPECT HERETO IN ANY OTHER JURISDICTION.

3.      DESIGNATION OF AGENT FOR SERVICE OF PROCESS. BORROWER AND EACH GUARANTOR WILL MAINTAIN AN AGENT FOR SERVICE OF PROCESS IN NEW YORK, NEW YORK WITH RESPECT TO THIS AGREEMENT.  BORROWER AND EACH GUARANTOR DESIGNATE CORPORATION SERVICE COMPANY, WITH OFFICES ON THE DATE HEREOF AT 1131 AVENUE OF THE AMERICAS, SUITE 3100, NEW YORK, NY 10036-6710, TO RECEIVE FOR AND ON BEHALF OF BORROWER OR SUCH GUARANTOR (AS THE CASE MAY BE) SERVICE OF PROCESS IN NEW YORK, NEW YORK WITH RESPECT TO THIS AGREEMENT.  BORROWER OR SUCH GUARANTOR, AS THE CASE MAY BE, SHALL PROVIDE TO LENDER PARTIES AT LEAST THIRTY (30) DAYS PRIOR WRITTEN NOTICE BEFORE CHANGING SUCH DESIGNATION.  BORROWER AND GUARANTOR FURTHER AGREE THAT THE FAILURE OF ITS AGENT FOR SERVICE OF PROCESS TO GIVE IT NOTICE OF ANY SERVICE OF PROCESS WILL NOT IMPAIR OR AFFECT THE VALIDITY OF SUCH SERVICE OR OF ANY JUDGMENT BASED THEREON.  IN ADDITION, BORROWER AND GUARANTOR IRREVOCABLY CONSENT TO SERVICE OF PROCESS BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO IT AT ITS ADDRESS GIVEN OR REFERRED TO IN THIS AGREEMENT.

G.      WAIVER OF RIGHT TO TRIAL BY JURY.  BORROWER, LENDER PARTIES AND EACH GUARANTOR HEREBY EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY FOR ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS AGREEMENT OR THE LOAN DOCUMENTS OR (2) IN ANY WAY RELATING TO THE PROJECT, THE LOAN, THE LOAN DOCUMENTS OR THE JUNIOR MEZZANINE LOAN DOCUMENTS OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND BORROWER, LENDER PARTIES AND EACH GUARANTOR HEREBY AGREE AND CONSENT THAT ANY OF THEM MAY FILE AN ORIGINAL COUNTERPART OF THIS AGREEMENT OR A COPY OF THIS

SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF ANY RIGHT THEY MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

H.    No Third Party Beneficiaries.    Nothing in this Agreement, express or implied, is intended to confer any rights or remedies upon any person, other than the parties hereto and, subject to any restrictions on assignment herein contained, their respective successors and assigns.

I.    Amendments.    This Agreement may be amended by written agreement of amendment executed by all parties hereto, but not otherwise.

J.    Attorneys' Fees.    If any lawsuit is commenced to enforce any of the terms of this Agreement, the prevailing party will have the right to recover its reasonable attorneys' fees and costs of suit from the other party.    Without limitation on anything contained in the Loan Documents, in the event that any Lender Party shall be a party to any legal proceeding instituted in connection with or arising out of the Loan or this Agreement, Borrower agrees to pay to such Lender Party all sums paid or incurred by such Lender Party as costs and expenses in the legal proceedings, together with reasonable attorneys' fees.    This subparagraph J shall survive the Close of Escrow or termination of this Agreement.

K.    Effect on Loan Documents.    Neither the provisions of, nor any performance under, this Agreement (including any payments by Borrower under this Agreement) shall amend, modify, supplement, extend, delay, renew, terminate, waive, release or otherwise limit or prejudice LBHI's rights and remedies or Borrower's or either Guarantor's obligations under the Loan Documents (including LBHI's right to receive full payment as well as late charges, delinquent interest and all other charges provided for in the Loan Documents).    Notwithstanding the foregoing, if and only if LBHI receives the full Payoff Amount and the Close of Escrow occurs, upon the Close of Escrow, the Loan Documents shall be terminated and none of the parties thereto shall have any further obligations thereunder (except for those obligations that are intended to survive repayment in full of the Loan) and LBHI shall be deemed to have agreed not to sue any of the Borrower Parties for any breach of any obligation under the Loan Documents; provided, however, that the foregoing covenant shall in no event extend to the continuing liabilities and obligations of any Borrower Party relating to, arising out of, or in connection with the breach of any representation, warranty, indemnity, covenant or agreement set forth in this Agreement, the Loan Documents or in any document executed under or in connection with this Agreement or the Loan Documents that are intended to survive the repayment in full of the Loan, or to any indemnities in favor of LBHI under any Loan Document that are intended to survive the repayment in full of the Loan; and, provided further, that the covenant by LBHI pursuant to this subparagraph shall be void from its inception, and all liabilities and obligations of Borrower Parties under the Loan Documents shall continue in full force and effect as they existed immediately prior to the Effective Date, in the event:

1.    Any of the Borrower Parties shall take any act or make any claim of rescission of this Agreement or make any other claim which is inconsistent with this Agreement; or

2.    A receiver, liquidator or trustee shall be appointed for Borrower and/or any Guarantor or if Borrower and/or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by Borrower and/or any Guarantor, or if ay proceeding for the dissolution or liquidation of Borrower and/or any Guarantor shall be instituted, provided, however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Borrower and/or any Guarantor, upon same not being discharged, stayed or dismissed within thirty (30) days.

L.      No Agreement on Value.  The parties hereto specifically acknowledge and agree that the Payoff Amount does not necessarily reflect the parties' views regarding the value of the Loan or the membership interests encumbered by the Loan, and such amount shall not be used as evidence of value in any action or proceeding involving Lender Parties, on the one hand, and Borrower or either Guarantor, or all of them, on the other hand.

M.      Entire Agreement.  This Agreement and the Junior Mezzanine Loan Payoff Agreement contain the entire agreement between the parties respecting the matters herein set forth and supersedes all prior agreements between the parties hereto respecting such matters.

N.      Time of the Essence.  Time is of the essence of this Agreement.

O.      Severability.  If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

P.      Notices.  Any notice which a party is required or may desire to give the other shall be in writing and may be sent by personal delivery or by mail (either (1) by United States registered or certified mail, return receipt requested, postage prepaid, or (2) by Federal Express or similar generally recognized overnight carrier regularly providing proof of delivery), addressed as follows (subject to the right of a party to designate a different address for itself by notice similarly given):

**To Borrower**:

c/o Magnum Management, LLC
270 Lafayette Street
New York, NY 10012
Attn:  Benjamin Shaoul

With a copy to:

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Attn:  Andrew L. Herz, Esq.

**To Ravner**:

c/o Magnum Management, LLC
270 Lafayette Street
New York, NY 10012
Attn:  Marc Ravner

With a copy to:

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

Attn:  Andrew L. Herz, Esq.

**To Shaoul**:

c/o Magnum Management, LLC
270 Lafayette Street
New York, NY 10012
Attn:  Benjamin Shaoul

With a copy to:

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Attn:  Andrew L. Herz, Esq.

**To Lender Parties**:

**LBHI**

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 46th Floor
New York, NY  10020
Attn:    Joelle Halperin
MTS No.:  WH6456

With copies to:

Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022
Attn:  Kenneth J. Friedman, Esq.

TriMont Real Estate Advisors, Inc.
Monarch Tower
3424 Peachtree Road, N.E.
Suite 2200
Atlanta, GA  30326
Attn:  Karen Mishkin
Ref. No.:  1141314


**LCPI**

Lehman Commercial Paper Inc.
1271 Avenue of the Americas, 46th Floor
New York, NY  10020
Attn:    Joelle Halperin
MTS No.:  WH6455


With copies to:

Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022
Attn:  Kenneth J. Friedman, Esq.

TriMont Real Estate Advisors, Inc.
Monarch Tower
3424 Peachtree Road, N.E.
Suite 2200
Atlanta, GA  30326
Attn:  Karen Mishkin
Ref. No.:  1141324


LEGAL_US_E # 83598698.7          **Lehman Re**          -13-

Lehman Re Ltd.
c/o D. Geoffrey Hunter

<u>With copies to</u>:

Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Attention:  Gregory Petrick, Esq.


KeyCorp Real Estate Capital Markets, Inc.
911 Main Street, Suite 1500
Kansas City, Missouri 64105
Attention:  Bryan Nitcher


**Escrow Holder**

Commonwealth Land Title Insurance Company
c/o New York Land Services
630 Third Avenue
New York, NY 10017
Attn.: David Wilcomes




Any notice so given by mail shall be deemed to have been given as of the date of delivery (whether accepted or refused) established by U.S. Post Office return receipt or the overnight carrier's proof of delivery, as the case may be.  Any such notice not so given shall be deemed given upon receipt of the same by the party to whom the same is to be given.

Q.    <u>Confidentiality</u>.  Each of Borrower and each Guarantor shall keep the terms of this Agreement strictly confidential and shall not disclose or permit its employees or agents to disclose the terms of this Agreement (except for reasonably necessary disclosures to its attorneys, accountants, investors, agents, lenders and representatives and to Senior Lender and Junior Mezzanine Lender) and except as may be required by law or in connection with litigation between such parties and the Lender Parties.

R.    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts so long as each signatory hereto executes at least one such counterpart.  Each such counterpart shall constitute one original, but all such counterparts taken together shall constitute one and the same instrument.

S.    <u>Joint and Several Liability</u>.  Borrower and each Guarantor shall each be primarily, jointly and severally liable for each of the obligations and liabilities of Borrower under this Agreement and any document executed under or in connection with this Agreement and each Guarantor hereby waives <u>any</u> guarantor or suretyship defenses that may otherwise apply with respect thereto.

T.     Ownership of Senior Mezzanine Loan and Junior Mezzanine Loan.

(a) LBHI and LCPI acknowledge that neither they nor any assignee have had any interest in, claim to or lien on the Junior Mezzanine Loan and the documents evidencing and securing same or the proceeds thereof and that Lehman Re has the sole and exclusive right to retain all proceeds of such loan without any claim or interest of such parties.  To the extent that any of LBHI, LCPI or any of their respective representatives or agents is in possession of any of the Junior Mezzanine Loan Documents, such party shall cause such documents to be delivered to or at the direction of Lehman Re concurrently with the execution and delivery of this Agreement and the Junior Mezzanine Loan Payoff Agreement.

(b)  Lehman Re and LCPI acknowledge that neither they nor any assignee have had any interest in, claim to or lien on the Senior Mezzanine Loan and the documents evidencing and securing same or the proceeds thereof and that LBHI has the sole and exclusive right to retain all proceeds of such loan without any claim or interest of such parties.  To the extent that Lehman Re, LCPI or any of their respective representatives or agents is in possession of any of the Senior Mezzanine Loan Documents, such party shall cause such documents to be delivered to or at the direction of LBHI concurrently with the execution and delivery of this Agreement and the Junior Mezzanine Loan Payoff Agreement.

(c)  Notwithstanding the execution and delivery of this Agreement evidencing the resolution of the Lender Parties' disputes regarding the actual ownership status of the Loan and/or the Junior Mezzanine Loan, each of the Lender Parties acknowledges that (i) the Lender Parties have had, and continue to have, certain disputes regarding the actual ownership status of certain loan and other assets originated by LBHI and/or certain affiliates of LBHI other than the Loan and the Junior Mezzanine Loan (collectively, the "Remaining Assets"), (ii) nothing contained in this Agreement shall prejudice the claims that any of them may have against one another with respect to the Remaining Assets arising in connection with the Repurchase Agreement or any documents executed and/or delivered in connection with the Repurchase Agreement (the Repurchase Agreement and such other documents are collectively, the "Repo Documents"), and (iii) nothing contained in this Agreement shall be deemed to create an admission, stipulation and/or implication on the part of any of the Lender Parties as to the actual ownership status of the Remaining Assets.  Each of the Lender Parties further agrees that no negotiations and communications which may arise or may have previously arisen concerning this Agreement or the transactions contemplated hereby shall be admissible as evidence on any issue that is or may be before any court or administrative body in order to establish proof of ownership of the Remaining Assets or to create or establish any admission of liability as to, or for any other evidentiary purpose with respect to, the ownership status of the Remaining Assets.  In addition, nothing contained in this Agreement shall be deemed to waive any of the rights any of the Lender Parties may have against one another with respect to the Remaining Assets pursuant to the Repo Documents, and each of the Lender Parties hereby reserves all of its respective rights and remedies under such Repo Documents with respect to the Remaining Assets.

U.     Bankruptcy Court Approval.  Notwithstanding anything to the contrary contained in this Agreement, each of the parties hereto agrees that the effectiveness of this Agreement and each of the terms and provisions set forth in this Agreement and any of the transactions contemplated in this Agreement shall be subject, in their entirety, to the Bankruptcy Court entering a final order approving (i) this Agreement and the transactions contemplated herein and (ii) the Junior Mezzanine Loan Payoff Agreement and the transactions contemplated therein.

[NO FURTHER TEXT – SIGNATURES ON NEXT PAGE]

IN WITNESS WHEREOF, Borrower, each Guarantor and Lender Parties have executed this Agreement as of the day and year first above written.

**LENDER PARTIES**:

**LEHMAN BROTHERS HOLDINGS INC.**,
a Delaware corporation as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:_____
Name:_____
Title:_____

**LEHMAN COMMERCIAL PAPER INC.**,
a New York corporation as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: _____
Title: _____

**LEHMAN RE LTD.**,
a Bermuda corporation

By: Its Joint Provisional Liquidator (without personal liability)

By: _____
Name: Peter C.B. Mitchell
Title: Authorized Signatory

By: _____
Name: D. Geoffrey Hunter
Title: Authorized Signatory

**<u>BORROWER</u>**:

**LEMADRE MEZZ LLC**,
a Delaware limited liability company

By: _____
        Name:  Marc Ravner
        Its:  Executive Manager

By: _____
        Name:  Benjamin Shaoul
        Its:  Executive Manager

**<u>GUARANTORS</u>**:


_____
**MARC RAVNER**


_____
**BENJAMIN SHAOUL**

ACCEPTED AND AGREED TO AS
OF THE EFFECTIVE DATE SOLELY WITH
RESPECT TO PARAGRAPHS 2 THROUGH 5
AND EXHIBIT B:


**COMMONWEALTH LAND TITLE INSURANCE COMPANY**

By:_____

Name:_____

Title:_____ _

## JOINDER

The undersigned have joined in the execution of the Loan Payoff Agreement (M&B Senior Mezzanine Loan)(the "**Agreement**") dated as of May __, 2009 among Lehman Brothers Holdings Inc., a Delaware corporation, Le Madre Mezz LLC, a Delaware limited liability company ("**Borrower**"), Benjamin Shaoul and Marc Ravner, Lehman Commercial Paper Inc., a New York corporation, and Lehman Re Ltd., a Bermuda corporation, to which this Joinder has been attached, and each hereby covenants, represents, warrants, acknowledges and agrees that the undersigned:

(a)     has read and reviewed the Agreement, and is familiar with the terms and provisions thereof;

(b)     consents to the Borrower's execution of the Agreement without reservation or qualification;

(c)     for purposes of (i) paragraph 11F of the Agreement, the undersigned designates Corporation Service Company, with offices on the date hereof at 1131 Avenue of the Americas, Suite 3100, New York, NY 10036-6710, to receive for and on behalf of the undersigned service of process in New York, New York with respect to the Agreement and (without limiting anything hereinabove provided) the undersigned otherwise agrees to be bound by the provisions of such paragraph as if it was specifically referenced therein and process may be delivered to the undersigned at the address for the undersigned set forth in the following clause (ii), and (ii) paragraph 11P of the Agreement, notices under the Agreement shall be delivered to the undersigned c/o Magnum Management, LLC, 270 Lafayette Street, New York, NY 10012, with a copy to Patterson Belknap Webb & Tyler LLP, 133 Avenue of the Americas, New York, NY 10036, Attention: Andrew L. Herz, Esq.

**[END OF TEXT.   SIGNATURES BEGIN ON NEXT PAGE]**

**IN WITNESS WHEREOF**, the undersigned has duly executed this Joinder the day and year first above written.

**LEMADRE DEVELOPMENT LLC,**
a Delaware limited liability company


By:_____
     Name:     Marc Ravner
     Title:      Executive Manager


By:_____
     Name:     Benjamin Shaoul
     Title:      Executive Manager


**M&B MEZZ LLC**,
a Delaware limited liability company


By:_____
     Name:     Marc Ravner
     Title:      Executive Manager


By:_____
     Name:     Benjamin Shaoul
     Title:      Executive Manager

**EXHIBIT A**

<u>LIST OF LOAN DOCUMENTS</u>

All documents dated July 12, 2006, unless otherwise noted.

1.   Mezzanine Construction Loan Agreement between Borrower and LBHI.

2.   Secured Promissory Note (Mezzanine Loan) in the principal sum of $3,900,000.00 made by Borrower in favor of LBHI.

3.   Pledge and Security Agreement (Interests in Project Owner) made by Borrower in favor of LBHI.

4.   UCC-1 Financing Statement filed at No. [62768034]with the Delaware SOS naming Borrower as debtor.

5.   Guaranty of Recourse Obligations (Mezzanine Loan) made by Guarantors in favor of LBHI.

6.   Environmental and Hazardous Substance Indemnification Agreement (Mezzanine Loan) made by Mezzanine Borrower and Guarantors in favor of LBHI.

7.   Mezzanine Reserve and Security Agreement between Borrower, LBHI and Servicer.

8.   Mezzanine Lockbox, Pledge and Security Agreement between Borrower, LBHI and Servicer.

9.   Certificate of Sources of Uses and Funds by Borrower in favor of  LBHI.

10.   Note Severance Agreement dated August 15, 2007, between Borrower and LBHI.

11.   Amended and Restated Secured Promissory Note in the principal amount of $7,270,000 dated August 15, 2007, by Borrower in favor of LBHI.

12.   Omnibus Modification and Ratification Agreement dated August 15, 2007, between Borrower, Guarantor and LBHI.

13.   Completion Guaranty (Senior Mezzanine Loan) dated August 15, 2007, by Guarantors in favor of LBHI.

14.   Collateral Assignment of Interest Rate Cap Agreement dated August 15, 2007, between Borrower and LBHI.

15.   Recognition Agreement (Architect – Issac & Stern) dated August 15, 2007.

16.   Recognition Agreement (Engineer – MGJ) dated August 15, 2007.

17.   Recognition Agreement (Engineer – Robert Silman Associates) dated August 15, 2007.

18.   Certificate of Sources and Uses dated August 15, 2007, by Borrower in favor of LBHI.

**EXHIBIT B**

<u>ESCROW PROVISIONS</u>

Escrow Holder agrees to hold the Escrowed Funds and the Escrowed Documents in Escrow pursuant to the terms and provisions below:

        (a)     The Escrowed Funds shall be held in a segregated Premium Commercial Money Market Deposit Account at JPMorgan Chase Bank, bearing interest at the interest rate determined by JPMorgan Chase Bank.  All taxes due with respect to any interest earned on the Escrowed Funds shall be the liability of the Borrower.  LBHI and Borrower understand and acknowledge that the account in which the Escrowed Funds will be held cannot be established until Escrow Holder receives an original executed Form W-9 from the Borrower.  LBHI and Borrower each also acknowledge that each is aware that the Federal Deposit Insurance Corporation (FDIC) coverage applies only to a cumulative maximum amount for each individual depositor at all depositor's accounts at the same or related institution.

        (b)     Escrow Holder shall not be liable or responsible for any failure, refusal or inability of the depository into which the Escrowed Funds are deposited to pay the Escrowed Funds at Escrow Holder's direction.  Escrow Holder shall not be responsible for any interest except for such interest as is actually received, nor shall Escrow Holder be responsible for the loss of any interest arising form the closing of any account or the sale of any certificate of deposit or other instrument prior to maturity.

        (c)     Escrow Holder shall have no duties or responsibilities other than those expressly set forth in the Agreement to which this Exhibit is attached.  Escrow Holder shall have no duty to enforce any obligation of any person to make any payment or delivery or to enforce any obligation of any person to perform any other act.  Escrow Holder shall be under no liability to the other parties hereto or to anyone else by reason of any failure on the part of any party hereto or any maker, guarantor, endorser or other signatory of any document or any other person to perform such person's obligations under any such document.  Except for amendments to the Agreement hereinafter referred to and except for joint instructions given to Escrow Holder by LBHI and Borrower relating to the Escrowed Funds and the Escrowed Documents, Escrow Holder shall not be obligated to recognize any agreement between any or all of the persons referred to herein, notwithstanding that references thereto may be made herein other than the Agreement and whether or not it has knowledge thereof.

        (d)     In its capacity as escrow agent, Escrow Holder shall not be responsible for the genuineness or validity of any security, instrument, document or item deposited with it and shall have no responsibility other than to faithfully follow the instructions contained herein, and it is fully protected in acting in accordance with any written instrument given to it hereunder by any of the parties hereto and believed by Escrow Holder to have been signed by the proper person, provided that if such written instrument is inconsistent with this Agreement, both LBHI and Borrower must have executed such written instrument.  Escrow Holder may assume that any person purporting to give any notice hereunder has been duly authorized to do so.  Escrow Holder is acting as a stakeholder only with respect to the Escrowed Funds and the Escrowed Documents.  In the event that for any reason there is any dispute or uncertainty concerning any action to be taken hereunder, Escrow Holder shall take no action until it shall have received instructions in writing concurred to by LBHI and Borrower or until directed by a final

D-1

order of judgment of a court of competent jurisdiction, whereupon Escrow Holder shall take such action in accordance with such instructions or such order.

(e)    It is understood and agreed that the duties of Escrow Holder are purely ministerial in nature. Escrow Holder shall not be liable for any loss, costs or damage which it may incur as a result of serving as escrow agent hereunder, except for any loss, costs or damage arising out of its willful misconduct or gross negligence. Escrow Holder shall not be liable to the other parties hereto or to anyone else for any action taken or omitted by it, or any action suffered by it to be taken or omitted, in good faith and in the exercise of reasonable judgment, except for acts of willful misconduct or gross negligence. Escrow Holder may rely conclusively and shall be protected in acting upon any order, notice, demand, certificate, opinion or advice of counsel (including counsel chosen by Escrow Holder), statement, instrument, report or other paper or document (not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and acceptability of any information therein contained) which is reasonably believed by Escrow Holder to be genuine and to be signed or presented by the proper person or persons. Escrow Holder shall not be bound by any notice or demand, or any waiver, modification, termination or rescission of the Agreement or any of the terms hereof, unless evidenced by a final judgment or decree of a court of competent jurisdiction in the State of New York or a Federal court in such State, or a writing delivered to Escrow Holder signed by the proper party or parties and, if the duties or rights of Escrow Holder are affected, unless it shall give its prior written consent thereto.

(f)    Escrow Holder shall have the right to assume in the absence of written notice to the contrary from the proper person or persons that a fact or an event by reason of which an action would or might be taken by Escrow Holder does not exist or has not occurred, without incurring liability to the other parties hereto or to anyone else for any action taken or omitted, or any action suffered by it to be taken or omitted, in good faith and in the exercise of reasonable judgment, in reliance upon such assumption.

(g)    Except in connection with Escrow Holder's willful misconduct or gross negligence, Escrow Holder shall be indemnified and held harmless jointly and severally by the Lender Parties and the Borrower Parties from and against any and all expenses or loss suffered by Escrow Holder (in its capacity as escrow agent), including reasonable attorneys' fees, in connection with any action, suit or other proceeding involving any claim, which arises out of or relates to the Agreement, the services of Escrow Holder hereunder or the monies and documents held by it hereunder. Promptly after the receipt by Escrow Holder of notice of any demand or claim or the commencement of any action, suit or proceeding, Escrow Holder shall, if a claim in respect thereof is to be made against any of the other parties hereto, notify such other parties hereto in writing; but the failure by Escrow Holder to give such notice shall not relieve any party from any liability which such party may have to Escrow Holder hereunder.

(h)    From time to time on and after the date hereof, Lender Parties and Borrower shall deliver or cause to be delivered to Escrow Holder such further documents and instruments and shall do and cause to be done such further acts as Escrow Holder shall reasonably request (it being understood that Escrow Holder shall have no obligation to make any such request) to carry out more effectively the provisions and purposes of this Agreement, to evidence compliance herewith or to assure itself that it is protected in acting hereunder.

(i)    If for any reason the Close of Escrow does not occur and either party makes a written demand upon Escrow Holder for payment or refund, as the case may be, of the Escrowed Funds or any portion thereof, or the delivery or return of the Escrowed Documents, Escrow Holder shall give written notice to the other party of such demand. If Escrow Holder does not receive a written objection from the other party to the proposed payment or refund of the Escrowed Funds, or portion

thereof, or the delivery or return of the Escrowed Documents, as the case may be, within ten (10) Business Days after the giving of the notice described in the preceding sentence, Escrow Holder is hereby authorized to make such payment or refund, delivery or return; provided, however, if for any reason Escrow Holder in good faith shall elect not to make such payment, Escrow Holder shall continue to hold such amount until otherwise directed by written instructions from the parties to this Agreement or a final judgment of a court of competent jurisdiction.  Notwithstanding the foregoing, Escrow Holder shall have the right at any time to deposit the Escrowed Funds and Escrowed Documents with the Clerk of the Supreme Court of New York County, New York.  Escrow Holder shall give written notice of such deposit to LBHI and Borrower.  Upon such deposit, Escrow Holder shall be relieved and discharged of all further obligations and responsibilities hereunder.

          (j)     Escrow Holder may resign at any time as escrow agent hereunder upon giving five (5) Business Days' prior written notice to that effect to each of the Lender Parties and Borrower.  Any successor escrow agent shall be a nationally recognized title insurance company or a nationally recognized law firm selected by Borrower and reasonably accepted by Lender Parties.  In such case, Escrow Holder shall no longer serve as escrow agent and shall deliver, against receipt, to such successor escrow agent, the Escrowed Funds and the Escrowed Documents held by Escrow Holder, to be held by such successor escrow agent pursuant to the terms and provisions of this Agreement.  If no such successor has been designated on or before such party ceases to be escrow agent hereunder, whether by resignation or otherwise, Escrow Holder's obligations as escrow agent shall continue until such successor is appointed; provided, however, its sole obligation thereafter shall be to safely keep all monies and documents then held by it and to deliver the same to the person, firm or corporation designated as its successor or until directed by a final order or judgment of a court of competent jurisdiction, whereupon Escrow Holder shall make disposition thereof in accordance with such order.  If no successor escrow agent is designated and qualified within five (5) Business Days after its resignation is effective, Escrow Holder shall no longer be considered the escrow agent and Escrow Holder shall apply to the Clerk of the Supreme Court of New York County, New York, for the appointment of a successor escrow agent.

          (k)     Escrow Holder shall receive $500.00 as compensation for the performance of its duties under this Agreement (including this Exhibit B).

**EXHIBIT C**

FORM OF RELEASE OF LENDER PARTIES

      This Release is made this __ day of _____, 2009, by and among LE MADRE MEZZ LLC, a Delaware limited liability company ("**Borrower**"), BENJAMIN SHAOUL, an individual ("**Shaoul**"), MARC RAVNER, an individual ("**Ravner**", and together with Shaoul, each a "**Guarantor**" and collectively, the "**Guarantors**") in favor of LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**"), LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**"), and LEHMAN RE LTD., a Bermuda corporation ("**Lehman Re**").  LBHI, LCPI and Lehman Re are hereinafter collectively referred to from time to time as "**Lender Parties**".

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

      1.  As further consideration for Lender Parties' execution and delivery of the Loan Payoff Agreement (M&B Senior Mezzanine Loan) dated as of May __, 2009 (the "**Loan Payoff Agreement**") and agreement to the transactions described therein, each of Borrower and each of the Guarantors for itself and its respective affiliates, successors and assigns (collectively, the "**Borrower Parties**"), as of the date hereof, hereby absolutely and irrevocably waives, releases, and forever discharges each of the Lender Parties and their respective partners, officers, creditors, shareholders, directors, agents, attorneys, servants, contractors, employees, parent and subsidiary corporations and predecessors-in-interest (collectively, the "**Released Parties**") from any and all claims, rights, demands, actions, suits, causes of actions, damages, counterclaims, defenses, losses, costs, obligations, liabilities and expenses of every kind or nature (collectively, "**Claims**"), known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen, arising out of or relating directly or indirectly to any circumstances or state of facts pertaining to the Loan, the Loan Documents or the Project, including claims related to the actions of any of the Lender Parties or their predecessors in administering the Loan or negotiating the Loan Documents and claims of lender liability, duress, illegality, usury, waiver, bad faith, interference in the business of the Borrower Parties, or any nonperformance of any agreement or obligation related thereto, or any statements, representations, acts or omissions, intentional, willful, negligent or innocent, by any of the Released Parties in any way connected with, relating to or affecting, directly or indirectly, the Loan, the Loan Documents, or the Project; provided, however, that the foregoing shall not constitute a release of any claim against any Lender Party based on fraud committed by such Lender Party.

      2.  Terms used and not otherwise defined in this Release shall have the meanings given to such terms in the Loan Payoff Agreement.

      3.  This Release may be executed in one or more counterparts each of which when taken together shall constitute but one and the same instrument.  This Release shall be governed by the laws of the State of New York.

      IN WITNESS WHEREOF, the undersigned have executed this Release as of the date first written above.

BORROWER:


LEMADRE MEZZ LLC,
    a Delaware limited liability company


By:_____
    Name:  Marc Ravner
    Title:  Executive Manager


By:_____
    Name:  Benjamin Shaoul
    Title:  Executive Manager

GUARANTORS:


By:_____
    Name:  Marc Ravner


By:_____
    Name:  Benjamin Shaoul

**EXHIBIT D**

FORM OF RELEASE OF BORROWER PARTIES

This Release is made this __ day of _____, 2009, by and among LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**"), LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**"), and LEHMAN RE LTD., a Bermuda corporation ("**Lehman Re**"; LBHI, LCPI and Lehman Re are hereinafter collectively referred to from time to time as "**Lender Parties**") in favor of LEMADRE MEZZ LLC, a Delaware limited liability company ("**Borrower**"), BENJAMIN SHAOUL, an individual ("**Shaoul**"), MARC RAVNER, an individual ("**Ravner**", and together with Shaoul, each a "**Guarantor**" and collectively, the "**Guarantors**"). Borrower and the Guarantors are hereinafter collectively referred to from time to time as "**Borrower Parties**".

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    As further consideration for execution and delivery by Borrower and Guarantors of the Loan Payoff Agreement (M&B Senior Mezzanine Loan) dated as of May __, 2009 (the "**Loan Payoff Agreement**") and agreement to the transactions described therein, each of the Lender Parties for itself and its respective affiliates, successors and assigns (collectively, the "**Lender Group**"), as of the date hereof, hereby absolutely and irrevocably waives, releases, and forever discharges each of the Borrower Parties and their respective partners, officers, creditors, shareholders, directors, agents, attorneys, servants, contractors, employees, parent and subsidiary corporations and predecessors-in-interest (collectively, the "**Released Parties**") from any and all claims, rights, demands, actions, suits, causes of actions, damages, counterclaims, defenses, losses, costs, obligations, liabilities and expenses of every kind or nature (collectively, "**Claims**"), known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen, arising out of or relating directly or indirectly to any circumstances or state of facts pertaining to the Loan, the Loan Documents or the Project, including claims related to the actions of any of the Borrower Parties or their predecessors in connection with the Loan or negotiating the Loan Documents, or any nonperformance of any agreement or obligation related thereto, or any statements, representations, acts or omissions, intentional, willful, negligent or innocent, by any of the Released Parties in any way connected with, relating to or affecting, directly or indirectly, the Loan, the Loan Documents, or the Project; provided, however, that the foregoing shall not constitute a release of any claim against any Borrower Party based on fraud committed by such Borrower Party nor shall it constitute a release of any claim against any Borrower Party arising out of any covenant or indemnity under any of the Loan Documents that is intended to survive repayment in full of the Loan.

2.    Terms used and not otherwise defined in this Release shall have the meanings given to such terms in the Loan Payoff Agreement.

3.    This Release may be executed in one or more counterparts each of which when taken together shall constitute but one and the same instrument. This Release shall be governed by the laws of the State of New York.

IN WITNESS WHEREOF, the undersigned have executed this Release as of the date first written above.

LENDER PARTIES:

**LEHMAN BROTHERS HOLDINGS INC.**,
a Delaware corporation as Debtor and Debtor in
Possession in its chapter 11 case in the United
States Bankruptcy Court for the Southern
District of New York, Case No. 08-13555 (JMP)


By:_____
    Name:
    Title:


**LEHMAN COMMERCIAL PAPER INC.**,
a New York corporation as Debtor and Debtor in
Possession in its chapter 11 case in the United
States Bankruptcy Court for the Southern
District of New York, Case No. 08-13555 (JMP)


By:_____
    Name:
    Title:


**LEHMAN RE LTD.**,
a Bermuda corporation

By:  Its Joint Provisional Liquidators (without
    personal liability)


By:_____
    Name: Peter C.B. Mitchell
    Title: Authorized Signatory


By:_____
    Name:  D. Geoffrey Hunter
    Title: Authorized Signatory

**<u>Exhibit C</u>**

Draft LeMadre Junior Mezzanine Loan Pay-Off Agreement

## LOAN PAYOFF AGREEMENT
### (M&B JUNIOR MEZZANINE LOAN)

THIS LOAN PAYOFF AGREEMENT ("Agreement") is made as of the _____ day of May, 2009 (the "**Effective Date**"), by and among M&B MEZZ LLC, a Delaware limited liability company ("**Borrower**"), M&B REALTY DEVELOPMENT LLC, a Delaware limited liability company ("**Principal Pledgor**"), BENJAMIN SHAOUL, an individual ("**Shaoul**"), MARC RAVNER, an individual ("**Ravner**", and together with Shaoul, each a "**Guarantor**" and collectively, the "**Guarantors**"), LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**"), LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**") and LEHMAN RE LTD., a Bermuda corporation ("**Lehman Re**").  LBHI, LCPI and Lehman Re are hereinafter collectively referred to from time to time as "**Lender Parties**".

R E C I T A L S

A.    Subject to the terms and conditions of that certain Junior Mezzanine Construction Loan Agreement (the "**Loan Agreement**"), dated August 15, 2007, by and between Borrower and LBHI, LBHI made a loan to Borrower in the amount of up to $7,200,000 (the "**Loan**").  All capitalized terms used but not defined herein shall have the meaning assigned to such terms in the Loan Agreement.

B.    The Loan is evidenced by that certain Consolidated Secured Promissory Note (Junior Mezzanine Loan) dated as of August 15, 2007 in the principal amount of $7,200,000 given by Borrower to LBHI and evidencing the Advances under the Loan (the "**Note**"), which Note further evidences Borrower's assumption of  the obligations of Senior Mezzanine Borrower under a certain Severed Note dated as of August 15, 2007 in the principal amount of $888,230.83 given by Senior Mezzanine Borrower (as hereinafter defined) to LBHI (the "**Severed Note**").

C.     The Loan is secured by, among other things, (1) that certain Pledge and Security Agreement (Interests in Senior Mezzanine Borrower) given by Borrower to LBHI constituting a perfected pledge and assignment of Borrower's 100% interest in Senior Mezzanine Borrower, together with the Consent of Senior Mezzanine Borrower thereto and the Control Agreement thereto (collectively, the "**Pledge and Security Agreement (Interests in Senior Mezzanine Borrower)**"), and (2) that certain Pledge and Security Agreement (Interests in Junior Mezzanine Borrower) given by Principal Pledgor to LBHI constituting a perfected pledge and assignment of 100% of all interests in Borrower, together with the Consent of Junior Mezzanine Borrower thereto and the Control Agreement thereto (collectively, the "**Pledge and Security Agreement (Interests in Borrower)**)" and together with the Pledge and Security Agreement (Interests in Senior Mezzanine Borrower), collectively, the "**Pledge Agreements**").

D.    Certain of Borrower's obligations under the Loan are guaranteed by Guarantors pursuant to (1) that certain Guaranty of Recourse Obligations (Junior Mezzanine Loan), dated as of August 15, 2007 (the "**Recourse Guaranty**"), (2) that certain Guaranty of Completion (Junior Mezzanine Loan), dated as of August 15, 2007 (the "**Completion Guaranty**") and (3) that certain Environmental and Hazardous Substance Indemnification Agreement (Junior Mezzanine Loan), dated as of August 15, 2007 (the "**Environmental Indemnity**").

E.    The Loan Agreement, the Note, the Severed Note, the Pledge Agreements, the Recourse Guaranty, the Completion Guaranty, the Environmental Indemnity and the other documents and instruments executed by Borrower and/or the Guarantors evidencing, securing or otherwise relating to the

Loan are hereinafter collectively referred to as the "**Loan Documents**."  A complete list of the Loan Documents is set forth on <u>Exhibit A</u> attached hereto and incorporated herein by reference.

F.    LBHI and LCPI are debtors under a pending bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") being jointly administered under Case No. 08-13555.

G.    LBHI made a loan to LeMadre Mezz LLC (the "**Senior Mezzanine Borrower**") in the amount of up to $7,270,000 (the "**Senior Mezzanine Loan**") pursuant to that certain Mezzanine Construction Loan Agreement dated July 12, 2006 as modified by Omnibus Modification and Ratification Agreement dated August 15, 2007.  Simultaneously upon the execution of this Agreement, the Lender Parties, Senior Mezzanine Borrower, and Guarantors are entering into that certain Loan Payoff Agreement (M&B Senior Mezzanine Loan) providing for the payoff of the Senior Mezzanine Loan on the terms provided therein (the "**Senior Mezzanine Loan Payoff Agreement**").

H.    Lender Parties advise that pursuant to the terms of that certain Master Repurchase Agreement dated as of July 9, 1999 (the "**Repurchase Agreement**") by and among Lehman Re, LCPI and Lehman Brothers Inc., Lehman Re and LCPI entered into certain agreements with respect to certain loans and other assets originated by LBHI and/or certain affiliates of LBHI, including the Loan.

I.    Lender Parties advise that they have had certain disputes regarding the actual ownership status of the Loan and/or the Senior Mezzanine Loan and, subject to Paragraph 12T hereof, have resolved such disputes as evidenced by their agreements herein and in the Senior Mezzanine Loan Payoff Agreement.

J.    Subject to obtaining Bankruptcy Court approval of this Agreement and the Senior Mezzanine Loan Payoff Agreement and subject to the terms hereof including, without limitation, Paragraph 12T hereof, Lender Parties have agreed that Lehman Re is the owner and holder of the Loan and Lehman Re has agreed to accept the Payoff Amount (as hereinafter defined) as full repayment of the Loan.

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower, Guarantors and the Lender Parties hereby agree as follows:

1.    <u>Repayment of Loan</u>.

A.    <u>Amount of Repayment</u>. Lehman Re shall accept, in full repayment of the Loan (including principal, interest and all other amounts payable by Borrower under the Loan Documents), the sum of ONE MILLION AND 00/100 DOLLARS ($1,000,000.00) (the "**Payoff Amount**") payable on the Closing Date (as hereinafter defined).  Borrower and Guarantors acknowledge that Lehman Re's agreement to accept a discounted payoff of the Loan as provided above is conditioned upon obtaining Bankruptcy Court approval of this Agreement and the Senior Mezzanine Loan Payoff Agreement.

B.    <u>Manner of Payment</u>.  The Payoff Amount shall be paid as follows:

1.    Borrower shall deposit the Payoff Amount and the Closing Costs (as hereinafter defined) with Commonwealth Land Title Insurance Company ("**Escrow Holder**"), having an address c/o New York Land Services, 630 Third Avenue, New York, New York 10017, Attn: Counsel at least one (1) Business Day prior to the Closing Date.

2.      All sums required to be delivered by Borrower hereunder on or before the Closing Date shall be delivered by wire transfer or in other immediately available funds.

2.      Escrow.  This Agreement shall constitute both an agreement between the Lender Parties and the Borrower Parties (as hereinafter defined) and formal joint escrow instructions to Escrow Holder, which instructions shall be binding upon such parties and Escrow Holder.  Lehman Re and Borrower have established an escrow ("**Escrow**") with Escrow Holder by delivery to Escrow Holder of a fully-executed copy of this Agreement.  Any and all amounts delivered to the Escrow Holder by the Borrower pursuant to the terms of this Agreement (collectively, the "**Escrowed Funds**") as well as all documents received by the Escrow Holder pursuant to this Agreement (collectively, the "**Escrowed Documents**") shall be held by Escrow Holder in escrow in accordance with the provisions of Exhibit B attached hereto and incorporated herein by reference.  Escrow Holder has executed this Agreement for the sole and exclusive purpose of evidencing its agreement to the provisions of Paragraphs 2 through 5 hereof and Exhibit B attached hereto.

A.      Tax Identification Numbers.  Lehman Re represents and warrants that Lehman Re's tax identification number is 98-0190817.  Borrower represents and warrants that Borrower's tax identification number is 20-4960067.

B.      Close of Escrow.  Provided that all conditions precedent to the close of Escrow have been satisfied, Escrow Holder shall close the Escrow ("**Close of Escrow**") on the date which is 30 days after the date hereof (the "**Initially Scheduled Closing Date**") or such earlier date agreed upon by Lehman Re and Borrower; provided, however, that Borrower, on written notice to the Lender Parties, shall have the one-time right given at any time on or before the Initially Scheduled Closing Date, to adjourn the Close of Escrow to a date (such adjourned date being referred to herein as the "**Rescheduled Closing Date**"), not later than the date which is 30 days from the Initially Scheduled Closing Date (such Initially Scheduled Closing Date or, if Borrower elects to adjourn the Close of Escrow as hereinabove provided, the Rescheduled Closing Date is referred to as the "**Closing Date**").  If the Escrow is not closed on or before the Closing Date, or if any condition set forth in Paragraph 4A is not satisfied on or before the date set forth therein for the satisfaction of such condition, then any Lender Party shall have the right (in addition to Lehman Re's rights under the Loan Documents), by written notice to Borrower, the other Lender Parties and Escrow Holder, to terminate this Agreement and the obligations of the parties hereunder, but such termination shall not release Borrower from liability for any breach of this Agreement occurring prior to the termination of this Agreement.  Borrower and each Guarantor acknowledge and agree that the agreement of Lehman Re to accept the Payoff Amount contained in Paragraph 1 in full satisfaction of the Loan shall be null and void if the Close of Escrow does not occur on or before the Closing Date.

C.      Closing Costs.  Borrower shall pay for the following fees and expenses (the "**Closing Costs**"): (i) any and all escrow fees, filing and recording charges, recording taxes (if any), and any other similar costs and expenses incurred in connection with the transactions contemplated by this Agreement, and (ii) Lender Parties' reasonable attorneys' fees of Paul, Hastings, Janofsky & Walker LLP only incurred in connection with the preparation and negotiation of all documentation for, and the consummation of, the transactions contemplated by this Agreement.

3.      Deliveries To Escrow.  Borrower and Lehman Re shall deliver or cause to be delivered to Escrow Holder to be held in escrow pending satisfaction of the conditions to closing provided herein, the following items at least one (1) Business Day prior to the Closing Date:

A.      By Borrower.

(i)        Borrower shall deliver or cause to be deposited with Escrow Holder the sum of (x)  the Payoff Amount, (y) the Closing Costs, and (z) all other amounts to be paid by Borrower hereunder by wire transfer to Escrow Holder.

(ii)       Borrower shall deliver to Escrow Holder five (5) duly executed and acknowledged releases (each, a "**Release**") in the form attached hereto as <u>Exhibit C</u>.

B.        <u>By Lehman Re</u>.  Lehman Re shall deliver to Escrow Holder (i) one original loan payoff letter (the "**Loan Payoff Letter**") stating that upon the Close of Escrow and receipt by Lehman Re of the Payoff Amount and all other amounts to be paid by Borrower hereunder, but subject to the terms and conditions of this Agreement, the liens of the Pledge Agreements will be automatically released and Borrower shall be authorized to file terminations of any and all UCC financing statements in favor of Lehman RE in connection with the Loan, (ii) the original Note with an instruction to Escrow Holder to mark such original Note "cancelled" upon the Close of Escrow, (iii) the original Severed Note with an instruction to Escrow Holder to mark such original Severed Note "cancelled" upon the Close of Escrow or a lost note affidavit in the form attached hereto as <u>Exhibit E</u> and (iv) five (5) duly executed and acknowledged releases executed by each of the Lender Parties in the form attached hereto as <u>Exhibit D</u>.

4.        <u>Conditions to Close of Escrow</u>.

A.        <u>Conditions Precedent to Lehman Re's Obligation to Close Escrow</u>.  The obligation of Lehman Re to close Escrow shall be subject to the satisfaction of all of the following conditions precedent:

1.        <u>Borrower's Performance</u>.    Subject to Paragraph 6 of this Agreement, no further Event of Default under the Loan Documents shall have occurred.

2.        <u>Simultaneous Payoff of the Senior Loan and the Senior Mezzanine Loan</u>.  The Senior Lender and the Senior Mezzanine Lender shall have simultaneously received payment in full satisfaction of all amounts outstanding under, respectively, the Senior Loan (or, if the Senior Lender is not simultaneously paid in full, the Senior Lender shall have consented to the receipt by Lehman Re and the Senior Mezzanine Lender of the payments contemplated by, respectively, this Agreement and the Senior Mezzanine Loan Payoff Agreement, which consent shall be pursuant to a written agreement in form and substance satisfactory to the Lender Parties) and the Senior Mezzanine Loan, in the case of Senior Mezzanine Lender, pursuant to the Senior Mezzanine Loan Payoff Agreement being entered into concurrently herewith.

B.        <u>Conditions Precedent to Borrower's Obligation to Close Escrow</u>.  The obligation of Borrower to close Escrow shall be subject to (1) Lender Parties performing, satisfying and complying with all covenants, agreements and conditions required by this Agreement to be performed or complied with by Lender Parties hereunder on or before the Closing Date and (2) Lender Parties' performing, satisfying and complying with all covenants, agreements and conditions required by the Senior Mezzanine Loan Payoff Agreement to be performed or complied with by Lender Parties thereunder on or before the Closing Date.

5.        <u>Close of Escrow</u>.  At the Close of Escrow, Escrow Holder shall promptly undertake all of the following in the order set forth below:

A.        <u>Funds</u>.  Disburse the Escrowed Funds deposited with Escrow Holder by Borrower as follows:

1.    Wire funds in the amount of the Payoff Amount to one or more accounts directed in writing by Lehman Re and provided to Escrow Holder by Lehman Re prior to the Close of Escrow.

2.    Wire the Closing Costs in accordance with the written instruction of Lehman Re delivered to the Escrow Holder prior to the Close of Escrow.

3.    Wire all other amounts deposited by Borrower with Escrow Holder to pay the amounts owed by Borrower hereunder at the Close of Escrow, which amounts shall be wired to one or more accounts directed in writing by Lehman Re and provided to Escrow Holder by Lehman Re prior to the Close of Escrow.

B.    <u>Delivery of Documents to Lehman Re and the other Lender Parties</u>. Deliver to each of the Lender Parties one fully executed original of the Release.

C.    <u>Delivery of Documents To Borrower</u>.   Deliver to Borrower (1) the original Loan Payoff Letter, (2) the original Note marked "cancelled", (3) the original Severed Note marked "cancelled" or a lost note affidavit in the form attached hereto as <u>Exhibit E</u> and (4) five (5) duly executed and acknowledged releases executed by each of the Lender Parties in the form attached hereto as <u>Exhibit D</u>.

6.    <u>Default under the Loan Documents</u>.   Provided that no Event of Default (which, for the avoidance of doubt includes an Event of Default contemplated by Paragraph 9 of this Agreement) under the Loan Documents (other than the failure of Senior Mezzanine Borrower to make (i) full payment of all interest due on December 9, 2008 under the Note (as defined in the Senior Mezzanine Loan Payoff Agreement) and (ii) all subsequent monthly payments due under the Note (as defined in the Senior Mezzanine Loan Payoff Agreement), which failures continue after the expiration of all applicable grace or cure periods therefor) has occurred, Lehman Re agrees not to exercise any remedies under the Loan Documents which Lehman Re may have resulting solely from such defaults during the period (the "<u>Forbearance Period</u>") from the Effective Date through and including the earlier of (x) the Closing Date and (y) the termination of this Agreement.  Nothing contained in the foregoing, however, shall limit or restrict Lehman Re from taking any action during the Forbearance Period that Lehman Re may take under the Loan Documents or at law or in equity necessary or appropriate in Lehman Re's discretion to preserve, protect or defend any of the collateral described in the Loan Documents including, without limitation (i) defending, intervening in or filing of any legal proceedings relating to any such collateral; (ii) the sending of any notices to any persons or entities concerning the existence of security interests or liens in favor of Lehman Re relating to such collateral; or (iii) otherwise preserving any of Lehman Re's rights, remedies or positions.

7.    <u>Representations and Warranties</u>.   As a material inducement to Lender Parties' execution of this Agreement, Borrower hereby represents and warrants to Lender Parties as follows:

A.    <u>Consents</u>.   Borrower has obtained all consents and permissions related to the transactions herein contemplated and required under any covenant, agreement, encumbrance, law or regulation.

B.    <u>Due Authorization, Execution, and Organization.</u>   This Agreement and all agreements, instruments and documents herein provided to be executed by Borrower and/or the Guarantors are and on the Closing Date will be duly authorized, executed and delivered by and are and will be binding upon Borrower.  Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and duly authorized and qualified to do all

things required of it under this Agreement.  Borrower has the capacity and authority to enter into this Agreement and consummate the transactions herein provided and nothing prohibits or restricts the right or ability of Borrower to close the transactions contemplated hereunder and carry out the terms hereof.

C.    Value of Project.  In Borrower's judgment, after subtracting the amount of the Senior Loan and the Senior Mezzanine Loan, the fair market value of the Project is greater than the Payoff Amount.

D.    Solvency.  Borrower and each of the Guarantors is solvent, and will not become insolvent by reason of their entry into this Agreement or the payment of the Payoff Amount or the other sums required to be paid by Borrower pursuant to this Agreement.

The provisions of this Paragraph 7 shall survive the Close of Escrow or the termination of this Agreement.

8.    Release.

A.    Release.  As further consideration for Lender Parties' execution of this Agreement, each of Borrower, Principal Pledgor and each of the Guarantors for itself and its respective affiliates, successors and assigns (collectively, the "**Borrower Parties**"), as of the Effective Date and as of the Closing Date, hereby absolutely and irrevocably waives, releases, and forever discharges each of the Lender Parties and their respective partners, officers, creditors, shareholders, directors, agents, attorneys, servants, contractors, employees, parent and subsidiary corporations and predecessors-in-interest (collectively, the "**Released Parties**") from any and all claims, rights, demands, actions, suits, causes of actions, damages, counterclaims, defenses, losses, costs, obligations, liabilities and expenses of every kind or nature (collectively, "**Claims**"), known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen, arising out of or relating directly or indirectly to any circumstances or state of facts pertaining to the Loan, the Loan Documents or the Project, including claims related to the actions of Lender Parties or their respective predecessors in administering the Loan or negotiating the Loan Documents and claims of lender liability, duress, illegality, usury, waiver, bad faith, interference in the business of the Borrower Parties, or any nonperformance of any agreement or obligation related thereto, or any statements, representations, acts or omissions, intentional, willful, negligent or innocent, by any of the Released Parties in any way connected with, relating to or affecting, directly or indirectly, the Loan, the Loan Documents, or the Project; provided, however, that the foregoing shall not constitute a release of any of any Lender Party's obligations under this Agreement or any claim against such Lender Party based on fraud committed by such Lender Party.

B.    Non-Reliance.  Each of the Borrower Parties hereby acknowledges that it has not relied upon any representation of any kind made by any of the Lender Parties in making the foregoing release.

C.    No Transfer of Claims.  Each of the Borrower Parties represents and warrants that it has not heretofore assigned, or transferred, or purported to assign or to transfer, to any person or entity, any Claims released hereunder or any portion thereof or interest therein, and each of the Borrower Parties agrees to indemnify, defend and hold the Released Parties harmless from and against any and all such Claims based on or arising out of any such assignment or transfer or purported assignment or transfer.

D.    No Admission of Liability.  It is understood and agreed that this Paragraph 8 shall not be deemed or construed as an admission by Lender Parties of liability of any nature whatsoever arising from or related to the subject of this Paragraph 8.

E.    Advice of Counsel.    Each of the Borrower Parties hereby agrees, represents and warrants that it has had advice of counsel of its own choosing in negotiations for and the preparation of this Agreement, including the foregoing release, that it has read the provisions of this Agreement, including the foregoing release, and that it is fully aware of its contents and legal effect.

F.    Damages and Attorneys' Fees.    Each of the Borrower Parties agrees that if it hereafter commences, joins in, or in any manner seeks, relief through any suit arising out of, based upon, or relating to any of the Claims or in any manner asserts against such Released Parties, or any of them, any of the Claims, then the undersigned will pay to such Released Parties, and each of them, in addition to any other damages caused to such Released Parties thereby, all attorneys' fees incurred by such Released Parties in defending or otherwise responding to said suit or claim.

G.    Survival.    The provisions of this Paragraph 8 shall survive the Close of Escrow or termination of this Agreement.

9.    Default.    Any breach by Borrower or any Guarantor of this Agreement that continues after the expiration of any applicable notice or grace period expressly provided herein shall be an automatic Event of Default under the Loan Agreement (with no further notice, cure or grace period).

10.    Relief from Stay.

A.    Agreement.    As additional consideration for Lender Parties' execution of this Agreement, each of the Borrower Parties agrees that:  (i) in the event of a bankruptcy filing by or against it, it shall not reject this Agreement, nor contest any claim or assertion by any Lender Party that this Agreement is binding between the parties, and that valuable consideration has been received by Borrower for same; (ii) Lender Parties shall receive immediate relief from the automatic stay provisions of the United States Bankruptcy Code following any bankruptcy petition which any of the Borrower Parties may file or which may be filed against any of the Borrower Parties and that it shall in no event contest a motion to lift the automatic stay filed by Lender Parties; and (iii) any contrary action taken by any of the Borrower Parties with respect to the matters set forth above shall be deemed to be in bad faith and are agreed to constitute violations of Federal Rules of Civil Procedure 11 and Bankruptcy Rule 9011.

B.    Functional Equivalent of Chapter 11.    Each of the Borrower Parties acknowledges that this Agreement is of considerable benefit to it, and represents the functional equivalent of a restructuring of Borrower's business under the United States Bankruptcy Code because, among other things, (i) Borrower has received forbearances and financial accommodations from Lender Parties; and (ii) Borrower was afforded by Lender Parties an opportunity to cause a sale or refinancing of the Project, all in lieu of a bankruptcy petition, which Borrower elected not to file.  Borrower has thus been provided with a full and fair opportunity to reestablish or reorganize its financial stake in the Project, and has elected not to seek a further restructuring of its business.  Each of the Borrower Parties understands that Lender Parties are entering into this Agreement in reliance on Borrower's representation that it will not seek a further restructuring of its business.

11.    Miscellaneous.

A.    Survival.    All warranties, representations, covenants, obligations and agreements contained in this Agreement shall survive the Close of Escrow hereunder.  All warranties and representations shall be effective regardless of any investigation made or which could have been made.

B.    <u>Further Instruments</u>.    The parties shall cause to be executed, acknowledged or delivered such further instruments and documents as may be reasonably necessary to carry out the intent and purpose of this Agreement.

C.    <u>Cumulative Remedies</u>.    No remedy conferred upon a party in this Agreement is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law, in  equity or by statute (except as otherwise expressly herein provided).

D.    <u>No Waiver</u>.    No waiver by Lender Parties of any breach of this Agreement or of any warranty or representation hereunder by Borrower shall be deemed a waiver of any other breach by Borrower (whether preceding or succeeding and whether or not of the same or similar nature), and no acceptance of payment or performance by Lender Parties after any breach by Borrower shall be deemed to be a waiver of any breach of this Agreement or of any representation or warranty hereunder by Borrower, whether or not Lender Parties know of such breach at the time it accepts such payment or performance.  No failure or delay by any Lender Party to exercise any right it may have by reason of the default of Borrower shall operate as a waiver of default or modification of the Loan, the Loan Documents or this Agreement or shall prevent the exercise of any right by any Lender Party.

E.    <u>Governing Law</u>.  THIS AGREEMENT WAS NEGOTIATED IN PART IN THE STATE OF NEW YORK, AND THE LOAN WAS MADE BY LBHI FROM THE STATE OF NEW YORK, AND THE PROCEEDS OF THE LOAN WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE LENDER PARTIES, BORROWER AND EACH GUARANTOR AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (EXCLUDING APPLICATION OF ANY PRINCIPLE OF CONFLICT OF LAWS WHICH WOULD DIRECT THE APPLICATION OF THE LAW OF ANY OTHER JURISDICTION) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW OR NOT PROHIBITED BY LAW, BORROWER AND EACH GUARANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT, AND THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO §5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

F.    <u>Jurisdiction</u>.

1.    <u>SUIT BY BORROWER OR GUARANTORS</u>.  BORROWER AND EACH GUARANTOR HEREBY AGREES THAT ANY LEGAL SUIT, ACTION OR PROCEEDING BROUGHT BY BORROWER AND/OR EITHER GUARANTOR OR ANY AFFILIATE THEREOF AGAINST ANY LENDER PARTY AND/OR SERVICER (OTHER THAN COMPULSORY COUNTERCLAIMS PERMITTED HEREUNDER IN CONNECTION WITH ANY ACTION, SUIT OR PROCEEDING COMMENCED BY ANY LENDER PARTY IN A JURISDICTION OUTSIDE OF NEW YORK) ARISING OUT OF OR RELATING TO THE LOAN, THIS AGREEMENT OR ANY OF THE LOAN DOCUMENTS OR RELATING TO THE PROJECT SHALL ONLY BE INSTITUTED BY BORROWER, GUARANTORS OR ANY AFFILIATE THEREOF IN COURTS OF THE STATE OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK OR THE UNITED STATES DISTRICT COURT

LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK. BORROWER AND EACH GUARANTOR HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO BRING ANY LEGAL OR EQUITABLE SUIT, ACTION OR PROCEEDING AGAINST ANY LENDER PARTY AND/OR SERVICER ARISING OUT OF OR RELATING TO THE LOAN, THIS AGREEMENT OR ANY OF THE LOAN DOCUMENTS OR RELATING TO THE PROJECT IN ANY OTHER COURT OTHER THAN COURTS OF THE STATE OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK OR THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK.

2.      SUIT BY ANY LENDER PARTY.  WITH RESPECT TO ANY CLAIM OR ACTION ARISING HEREUNDER OR UNDER THE LOAN DOCUMENTS, BORROWER AND GUARANTOR (1) IRREVOCABLY SUBMIT TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK, (2) AGREE THAT ALL SUCH CLAIMS OR ACTIONS MAY BE HEARD AND DETERMINED IN SUCH COURTS OF THE STATE OF NEW YORK OR, TO THE EXTENT PERMITTED BY LAW, IN SUCH FEDERAL COURT AND (3) IRREVOCABLY WAIVE ANY (a) OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY LOAN DOCUMENT BROUGHT IN ANY SUCH COURT AND (b) ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.  NOTHING IN THIS AGREEMENT WILL BE DEEMED TO PRECLUDE ANY LENDER PARTY FROM BRINGING AN ACTION OR PROCEEDING WITH RESPECT HERETO IN ANY OTHER JURISDICTION.

3.      DESIGNATION OF AGENT FOR SERVICE OF PROCESS. BORROWER AND EACH GUARANTOR WILL MAINTAIN AN AGENT FOR SERVICE OF PROCESS IN NEW YORK, NEW YORK WITH RESPECT TO THIS AGREEMENT.  BORROWER AND EACH GUARANTOR DESIGNATE CORPORATION SERVICE COMPANY, WITH OFFICES ON THE DATE HEREOF AT 1131 AVENUE OF THE AMERICAS, SUITE 3100, NEW YORK, NY 10036-6710, TO RECEIVE FOR AND ON BEHALF OF BORROWER OR SUCH GUARANTOR (AS THE CASE MAY BE) SERVICE OF PROCESS IN NEW YORK, NEW YORK WITH RESPECT TO THIS AGREEMENT.  BORROWER OR SUCH GUARANTOR, AS THE CASE MAY BE, SHALL PROVIDE TO LENDER PARTIES AT LEAST THIRTY (30) DAYS PRIOR WRITTEN NOTICE BEFORE CHANGING SUCH DESIGNATION.  BORROWER AND GUARANTOR FURTHER AGREE THAT THE FAILURE OF ITS AGENT FOR SERVICE OF PROCESS TO GIVE IT NOTICE OF ANY SERVICE OF PROCESS WILL NOT IMPAIR OR AFFECT THE VALIDITY OF SUCH SERVICE OR OF ANY JUDGMENT BASED THEREON.  IN ADDITION, BORROWER AND GUARANTOR IRREVOCABLY CONSENT TO SERVICE OF PROCESS BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO IT AT ITS ADDRESS GIVEN OR REFERRED TO IN THIS AGREEMENT.

G.      WAIVER OF RIGHT TO TRIAL BY JURY.  BORROWER, LENDER PARTIES AND EACH GUARANTOR HEREBY EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY FOR ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS AGREEMENT OR THE LOAN DOCUMENTS OR (2) IN ANY WAY RELATING TO THE PROJECT, THE LOAN, THE LOAN DOCUMENTS OR THE SENIOR MEZZANINE LOAN DOCUMENTS OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND,

ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND BORROWER, LENDER PARTIES AND EACH GUARANTOR HEREBY AGREE AND CONSENT THAT ANY OF THEM MAY FILE AN ORIGINAL COUNTERPART OF THIS AGREEMENT OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF ANY RIGHT THEY MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

        H.    <u>No Third Party Beneficiaries</u>.  Nothing in this Agreement, express or implied, is intended to confer any rights or remedies upon any person, other than the parties hereto and, subject to any restrictions on assignment herein contained, their respective successors and assigns.

        I.    <u>Amendments</u>.  This Agreement may be amended by written agreement of amendment executed by all parties hereto, but not otherwise.

        J.    <u>Attorneys' Fees</u>.  If any lawsuit is commenced to enforce any of the terms of this Agreement, the prevailing party will have the right to recover its reasonable attorneys' fees and costs of suit from the other party.  Without limitation on anything contained in the Loan Documents, in the event that any Lender Party shall be a party to any legal proceeding instituted in connection with or arising out of the Loan or this Agreement, Borrower agrees to pay to such Lender Party all sums paid or incurred by such Lender Party as costs and expenses in the legal proceedings, together with reasonable attorneys' fees.  This subparagraph J shall survive the Close of Escrow or termination of this Agreement.

        K.    <u>Effect on Loan Documents</u>.  Neither the provisions of, nor any performance under, this Agreement (including any payments by Borrower under this Agreement) shall amend, modify, supplement, extend, delay, renew, terminate, waive, release or otherwise limit or prejudice Lehman Re's rights and remedies or Borrower's or either Guarantor's obligations under the Loan Documents (including Lehman Re's right to receive full payment as well as late charges, delinquent interest and all other charges provided for in the Loan Documents).  Notwithstanding the foregoing, if and only if Lehman Re receives the full Payoff Amount and the Close of Escrow occurs, upon the Close of Escrow, the Loan Documents shall be terminated and none of the parties thereto shall have any further obligations thereunder (except for those obligations that are intended to survive repayment in full of the Loan) and Lehman Re shall be deemed to have agreed not to sue any of the Borrower Parties for any breach of any obligation under the Loan Documents; <u>provided</u>, <u>however</u>, that the foregoing covenant shall in no event extend to the continuing liabilities and obligations of any Borrower Party relating to, arising out of, or in connection with the breach of any representation, warranty, indemnity, covenant or agreement set forth in this Agreement, the Loan Documents or in any document executed under or in connection with this Agreement or the Loan Documents that are intended to survive the repayment in full of the Loan, or to any indemnities in favor of Lehman Re under any Loan Document that are intended to survive the repayment in full of the Loan; and, provided further, that the covenant by Lehman Re pursuant to this subparagraph shall be void from its inception, and all liabilities and obligations of Borrower Parties under the Loan Documents shall continue in full force and effect as they existed immediately prior to the Effective Date, in the event:

        1.    Any of the Borrower Parties shall take any act or make any claim of rescission of this Agreement or make any other claim which is inconsistent with this Agreement; or

        2.    A receiver, liquidator or trustee shall be appointed for Borrower and/or any Guarantor or if Borrower and/or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by Borrower and/or

any Guarantor, or if ay proceeding for the dissolution or liquidation of Borrower and/or any Guarantor shall be instituted, provided, however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Borrower and/or any Guarantor, upon same not being discharged, stayed or dismissed within thirty (30) days.

        L.    <u>No Agreement on Value</u>.  The parties hereto specifically acknowledge and agree that the Payoff Amount does not necessarily reflect the parties' views regarding the value of the Loan or the membership interests encumbered by the Loan, and such amount shall not be used as evidence of value in any action or proceeding involving Lender Parties, on the one hand, and Borrower or either Guarantor, or all of them, on the other hand.

        M.    <u>Entire Agreement</u>.  This Agreement and the Senior Mezzanine Loan Payoff Agreement contain the entire agreement between the parties respecting the matters herein set forth and supersedes all prior agreements between the parties hereto respecting such matters.

        N.    <u>Time of the Essence</u>.  Time is of the essence of this Agreement.

        O.    <u>Severability</u>.  If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

        P.    <u>Notices</u>.  Any notice which a party is required or may desire to give the other shall be in writing and may be sent by personal delivery or by mail (either (1) by United States registered or certified mail, return receipt requested, postage prepaid, or (2) by Federal Express or similar generally recognized overnight carrier regularly providing proof of delivery), addressed as follows (subject to the right of a party to designate a different address for itself by notice similarly given):

**<u>To Borrower</u>**:

c/o Magnum Management, LLC
270 Lafayette Street
New York, NY 10012
Attn:  Benjamin Shaoul

<u>With a copy to</u>:

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Attn:  Andrew L. Herz, Esq.

**<u>To Principal Pledgor</u>**:

c/o Magnum Management, LLC
270 Lafayette Street
New York, NY 10012
Attn:  Benjamin Shaoul

With a copy to:

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Attn:  Andrew L. Herz, Esq.

**To Ravner:**

c/o Magnum Management, LLC
270 Lafayette Street
New York, NY 10012
Attn:  Marc Ravner

With a copy to:

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Attn:  Andrew L. Herz, Esq.

**To Shaoul**:

c/o Magnum Management, LLC
270 Lafayette Street
New York, NY 10012
Attn:  Benjamin Shaoul

With a copy to:

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Attn:  Andrew L. Herz, Esq.


**To Lender Parties**:

**LBHI**

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 46th Floor
New York, NY  10020
Attn:    Joelle Halperin
MTS No.:  WH6456

With copies to:

Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022
Attn:  Kenneth J. Friedman, Esq.

TriMont Real Estate Advisors, Inc.
Monarch Tower
3424 Peachtree Road, N.E.
Suite 2200
Atlanta, GA  30326
Attn:  Karen Mishkin
Ref. No.:  1141314

**LCPI**

<u>With copies to</u>:

Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Attention:  Gregory Petrick, Esq.


KeyCorp Real Estate Capital Markets, Inc.
911 Main Street, Suite 1500
Kansas City, Missouri 64105
Attention:  Bryan Nitcher


**<u>To Escrow Holder</u>**:


Commonwealth Land Title Insurance Company
c/o New York Land Services
630 Third Avenue
New York, NY 10017
Attn: David Wilcomes



Any notice so given by mail shall be deemed to have been given as of the date of delivery (whether accepted or refused) established by U.S. Post Office return receipt or the overnight carrier's proof of delivery, as the case may be.  Any such notice not so given shall be deemed given upon receipt of the same by the party to whom the same is to be given.

Q.    <u>Confidentiality</u>.  Each of Borrower and each Guarantor shall keep the terms of this Agreement strictly confidential and shall not disclose or permit its employees or agents to disclose the terms of this Agreement (except for reasonably necessary disclosures to its attorneys, accountants, investors, agents, lenders and representatives and to Senior Lender and Senior Mezzanine Lender) and except as may be required by law or in connection with litigation between such parties and the Lender Parties.

R.    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts so long as each signatory hereto executes at least one such counterpart.  Each such counterpart shall constitute one original, but all such counterparts taken together shall constitute one and the same instrument.

S.    <u>Joint and Several Liability</u>.  Borrower and each Guarantor shall each be primarily, jointly and severally liable for each of the obligations and liabilities of Borrower under this Agreement and any document executed under or in connection with this Agreement and each Guarantor hereby waives any guarantor or suretyship defenses that may otherwise apply with respect thereto.

T.    <u>Ownership of Senior Mezzanine Loan and Junior Mezzanine Loan</u>.

(a) LBHI and LCPI acknowledge that neither they nor any assignee have had any interest in, claim to or lien on the Junior Mezzanine Loan and the documents evidencing and securing same or the proceeds thereof and that Lehman Re has the sole and exclusive right to retain all proceeds of such loan without any claim or interest of such parties.  To the extent that LBHI, LCPI or any of their respective representatives or agents is in possession of any of the Junior Mezzanine Loan Documents, such party shall cause such documents to be delivered to or at the direction of Lehman Re concurrently with the execution and delivery of this Agreement and the Senior Mezzanine Loan Payoff Agreement.

(b)  Lehman Re and LCPI acknowledge that neither they nor any assignee have had any interest in, claim to or lien on the Senior Mezzanine Loan and the documents evidencing and securing same or the proceeds thereof and that LBHI has the sole and exclusive right to retain all proceeds of such loan without any claim or interest of such parties.  To the extent that Lehman Re, LCPI or any of their respective representatives or agents is in possession of any of the Senior Mezzanine Loan Documents, such party shall cause such documents to be delivered to or at the direction of LBHI concurrently with the execution and delivery of this Agreement and the Senior Mezzanine Loan Payoff Agreement.

(c)  Notwithstanding the execution and delivery of this Agreement evidencing the resolution of the Lender Parties' disputes regarding the actual ownership status of the Loan and/or the Senior Mezzanine Loan, each of the Lender Parties acknowledges that (i) the Lender Parties have had, and continue to have, certain disputes regarding the actual ownership status of certain loan and other assets originated by LBHI and/or certain affiliates of LBHI other than the Loan and the Senior Mezzanine Loan (collectively, the "Remaining Assets"), (ii) nothing contained in this Agreement shall prejudice the claims that any of them may have against one another with respect to the Remaining Assets arising in connection with the Repurchase Agreement or any documents executed and/or delivered in connection with the Repurchase Agreement (the Repurchase Agreement and such other documents are collectively, the "Repo Documents"), and (iii) nothing contained in this Agreement shall be deemed to create an admission, stipulation and/or implication on the part of any of the Lender Parties as to the actual ownership status of the Remaining Assets.  Each of the Lender Parties further agrees that no negotiations and communications which may arise or may have previously arisen concerning this Agreement or the transactions contemplated hereby shall be admissible as evidence on any issue that is or may be before any court or administrative body in order to establish proof of ownership of the Remaining Assets or to create or establish any admission of liability as to, or for any other evidentiary purpose with respect to, the ownership status of the Remaining Assets.  In addition, nothing contained in this Agreement shall be deemed to waive any of the rights any of the Lender Parties may have against one another with respect to the Remaining Assets pursuant to the Repo Documents, and each of the Lender Parties hereby reserves all of its respective rights and remedies under such Repo Documents with respect to the Remaining Assets.

U.    Bankruptcy Court Approval.  Notwithstanding anything to the contrary contained in this Agreement, each of the parties hereto agrees that the effectiveness of this Agreement and each of the terms and provisions set forth in this Agreement and any of the transactions contemplated in this Agreement shall be subject, in their entirety, to the Bankruptcy Court entering a final order approving (i) this Agreement and the transactions contemplated herein and (ii) the Senior Mezzanine Loan Payoff Agreement and the transactions contemplated therein.

[NO FURTHER TEXT – SIGNATURES ON NEXT PAGE]

IN WITNESS WHEREOF, Borrower, each Guarantor and Lender Parties have executed this Agreement as of the day and year first above written.

**LENDER PARTIES**:

**LEHMAN BROTHERS HOLDINGS INC.,**
a Delaware corporation as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP**)**

By:_____
Name:_____
Title:_____

**LEHMAN COMMERCIAL PAPER INC.,**
a New York corporation as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:_____
Name:_____
Title:_____

**LEHMAN RE LTD.,**
a Bermuda corporation

By:  Its Joint Provisional Liquidators (without personal liability)

By:_____
Name: Peter C.B. Mitchell
Title: Authorized Signatory

By:_____
Name:  D. Geoffrey Hunter
Title: Authorized Signatory

**BORROWER**:

**M&B MEZZ LLC**,
a Delaware limited liability company

By: _____
       Name:  Marc Ravner
       Its:  Executive Manager

By: _____
       Name:  Benjamin Shaoul
       Its:  Executive Manager


**PRINCIPAL PLEDGOR**:

**M&B REALTY DEVELOPMENT LLC**,
a Delaware limited liability company

By: _____
       Name:  Marc Ravner
       Its:  Executive Manager

By: _____
       Name:  Benjamin Shaoul
       Its:  Executive Manager


**GUARANTORS**:


_____
**MARC RAVNER**


_____
**BENJAMIN SHAOUL**

ACCEPTED AND AGREED TO AS
OF THE EFFECTIVE DATE SOLELY WITH
RESPECT TO PARAGRAPHS 2 THROUGH 5
AND EXHIBIT B:


**COMMONWEALTH LAND TITLE INSURANCE COMPANY**


By:_____
Name:_____
Title:_____ _

## JOINDER

The undersigned have joined in the execution of the Loan Payoff Agreement (M&B Junior Mezzanine Loan) (the "**Agreement**") dated as of May __, 2009 among Lehman Brothers Holdings Inc., a Delaware corporation, Lehman Commercial Paper Inc., a New York corporation and Lehman Re Ltd., a Bermuda corporation, M&B Mezz LLC, a Delaware limited liability company ("**Borrower**"), M&B Realty Development LLC, a Delaware limited liability company, Benjamin Shaoul and Marc Ravner, to which this Joinder has been attached, and each hereby covenants, represents, warrants, acknowledges and agrees that the undersigned:

(a)    has read and reviewed the Agreement, and is familiar with the terms and provisions thereof;

(b)    consents to the Borrower's execution of the Agreement without reservation or qualification;

(c)    for purposes of (i) paragraph 11F of the Agreement, the undersigned designates Corporation Service Company, with offices on the date hereof at 1131 Avenue of the Americas, Suite 3100, New York, NY 10036-6710, to receive for and on behalf of the undersigned service of process in New York, New York with respect to the Agreement and (without limiting anything hereinabove provided) the undersigned otherwise agrees to be bound by the provisions of such paragraph as if it was specifically referenced therein and process may be delivered to the undersigned at the address for the undersigned set forth in the following clause (ii), and (ii) paragraph 11P of the Agreement, notices under the Agreement shall be delivered to the undersigned c/o Magnum Management, LLC, 270 Lafayette Street, New York, NY 10012, with a copy to Patterson Belknap Webb & Tyler LLP, 133 Avenue of the Americas, New York, NY 10036, Attention: Andrew L. Herz, Esq.

**[END OF TEXT.   SIGNATURES BEGIN ON NEXT PAGE]**

**IN WITNESS WHEREOF**, the undersigned has duly executed this Joinder the day and year first above written.

**LEMADRE DEVELOPMENT LLC,**
a Delaware limited liability company


By:_____
            Name:        Marc Ravner
            Title:         Executive Manager


By:_____
            Name:        Benjamin Shaoul
            Title:         Executive Manager


**LEMADRE MEZZ LLC**,

a Delaware limited liability company

By: _____
            Name:  Marc Ravner
            Title:   Executive Manager


By: _____
            Name:  Benjamin Shaoul
            Title:   Executive Manager



_

**EXHIBIT A**

LIST OF LOAN DOCUMENTS

1.      Junior Mezzanine Construction Loan Agreement dated as of August 15, 2007, by and between M&B Mezz LLC, a Delaware limited liability company, as borrower ("**Borrower**") and Lehman Brothers Holdings Inc., a Delaware corporation, as lender ("**LBHI**"), together with the Joinder and Consent thereto executed by Lemadre Mezz LLC, a Delaware limited liability company ("**Senior Mezzanine Borrower**"), M&B Realty Development LLC, a Delaware limited liability company ("**Principal Pledgor**"), Benjamin Shaoul, an individual ("**Shaoul**") and Marc Ravner, an individual ("**Ravner**" and together with Shaoul, collectively, the "**Guarantors**");

2.      Consolidated Secured Promissory Note dated as of August 15, 2007 in the principal amount of $7,200,000, given by Borrower to LBHI (which includes, by assumption contained therein, the provisions of the Severed Note dated August 15, 2007, given by Senior Mezzanine Borrower to LBHI);

3.      Pledge and Security Agreement (Interests in Senior Mezzanine Borrower) dated as of August 15, 2007, given by Borrower to LBHI constituting a perfected pledge and assignment of Borrower's 100% interest in Senior Mezzanine Borrower, and the Consent of Senior Mezzanine Borrower thereto and the Control Agreement thereto;

4.      Pledge and Security Agreement (Interests in Junior Mezzanine Borrower) dated as of August 15, 2007, given by Principal Pledgor to LBHI constituting a perfected pledge and assignment of 100% of all interests in Borrower and the Consent of Junior Mezzanine Borrower thereto and the Control Agreement thereto;

5.      Guaranty of Recourse Obligations (Junior Mezzanine Loan) dated as of August 15, 2007, given by the Guarantors in favor of LBHI;

6.      Guaranty of Completion (Junior Mezzanine Loan) dated as of August 15, 2007, given by the Guarantors in favor of LBHI;

7.      Environmental and Hazardous Substance Indemnification Agreement (Junior Mezzanine Loan) dated as of August 15, 2007, made by Borrower and the Guarantors in favor of LBHI;

8.      Junior Mezzanine Reserve and Security Agreement dated as of August 15, 2007, by and among Borrower, LBHI and TriMont Real Estate Advisors, Inc. ("**Servicer**")**;**

9.      Junior Mezzanine Lockbox, Pledge and Security Agreement dated as of August 15, 2007, by and among Borrower, LBHI and Servicer;

10.     UCC-1 Financing Statement (Initial Filing # 2007 3239075) filed on August 24, 2007 in the Office of the Secretary of State of the State of Delaware with Borrower, as debtor and LBHI, as secured party;

11.     UCC-1 Financing Statement (Initial Filing # 2007 3239240) filed on August 24, 2007 in the Office of the Secretary of State of the State of Delaware with Principal Pledgor, as debtor and LBHI, as secured party;

12.     Certificate of Sources and Uses of Funds dated as of August 15, 2007, made by Borrower for the benefit of LBHI;

13.     Borrower's Certification (Construction Contract, Engineer's Contract, Licenses and Permits) dated August 15, 2007 executed by Borrower to LBHI;

14.     Borrower's Certification (Representations and Warranties) dated August 15, 2007 executed by Borrower to LBHI; and

15.     Borrower's Certification (Financial Statements and Equity Contributions) dated August 15, 2007 executed by Borrower to LBHI.

**EXHIBIT B**

<u>ESCROW PROVISIONS</u>

Escrow Holder agrees to hold the Escrowed Funds and the Escrowed Documents in Escrow pursuant to the terms and provisions below:

        (a)     The Escrowed Funds shall be held in a segregated Premium Commercial Money Market Deposit Account at JPMorgan Chase Bank, bearing interest at the interest rate determined by JPMorgan Chase Bank.  All taxes due with respect to any interest earned on the Escrowed Funds shall be the liability of the Borrower.  Lehman Re and Borrower understand and acknowledge that the account in which the Escrowed Funds will be held cannot be established until Escrow Holder receives an original executed Form W-9 from the Borrower.  Lehman Re and Borrower each also acknowledge that each is aware that the Federal Deposit Insurance Corporation (FDIC) coverage applies only to a cumulative maximum amount for each individual depositor all of depositor's accounts at the same or related institution.

        (b)     Escrow Holder shall not be liable or responsible for any failure, refusal or inability of the depository into which the Escrowed Funds are deposited to pay the Escrowed Funds at Escrow Holder's direction.  Escrow Holder shall not be responsible for any interest except for such interest as is actually received, nor shall Escrow Holder be responsible for the loss of any interest arising form the closing of any account or the sale of any certificate of deposit or other instrument prior to maturity.

        (c)     Escrow Holder shall have no duties or responsibilities other than those expressly set forth in the Agreement to which this Exhibit is attached.  Escrow Holder shall have no duty to enforce any obligation of any person to make any payment or delivery or to enforce any obligation of any person to perform any other act.  Escrow Holder shall be under no liability to the other parties hereto or to anyone else by reason of any failure on the part of any party hereto or any maker, guarantor, endorser or other signatory of any document or any other person to perform such person's obligations under any such document.  Except for amendments to the Agreement hereinafter referred to and except for joint instructions given to Escrow Holder by Lehman Re and Borrower relating to the Escrowed Funds and the Escrowed Documents, Escrow Holder shall not be obligated to recognize any agreement between any or all of the persons referred to herein, notwithstanding that references thereto may be made herein other than the Agreement and whether or not it has knowledge thereof.

        (d)     In its capacity as escrow agent, Escrow Holder shall not be responsible for the genuineness or validity of any security, instrument, document or item deposited with it and shall have no responsibility other than to faithfully follow the instructions contained herein, and it is fully protected in acting in accordance with any written instrument given to it hereunder by any of the parties hereto and believed by Escrow Holder to have been signed by the proper person, provided that if such written instrument is inconsistent with this Agreement, both Lehman Re and Borrower must have executed such written instrument.  Escrow Holder may assume that any person purporting to give any notice hereunder has been duly authorized to do so.  Escrow Holder is acting as a stakeholder only with respect to the Escrowed Funds and the Escrowed Documents.  In the event that for any reason there is any dispute or uncertainty concerning any action to be taken hereunder, Escrow Holder shall take no action until it shall have received instructions in writing concurred to by Lehman Re and Borrower or until

D-1

directed by a final order of judgment of a court of competent jurisdiction, whereupon Escrow Holder shall take such action in accordance with such instructions or such order.

(e)    It is understood and agreed that the duties of Escrow Holder are purely ministerial in nature.  Escrow Holder shall not be liable for any loss, costs or damage which it may incur as a result of serving as escrow agent hereunder, except for any loss, costs or damage arising out of its willful misconduct or gross negligence.  Escrow Holder shall not be liable to the other parties hereto or to anyone else for any action taken or omitted by it, or any action suffered by it to be taken or omitted, in good faith and in the exercise of reasonable judgment, except for acts of willful misconduct or gross negligence.  Escrow Holder may rely conclusively and shall be protected in acting upon any order, notice, demand, certificate, opinion or advice of counsel (including counsel chosen by Escrow Holder), statement, instrument, report or other paper or document (not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and acceptability of any information therein contained) which is reasonably believed by Escrow Holder to be genuine and to be signed or presented by the proper person or persons.  Escrow Holder shall not be bound by any notice or demand, or any waiver, modification, termination or rescission of the Agreement or any of the terms hereof, unless evidenced by a final judgment or decree of a court of competent jurisdiction in the State of New York or a Federal court in such State, or a writing delivered to Escrow Holder signed by the proper party or parties and, if the duties or rights of Escrow Holder are affected, unless it shall give its prior written consent thereto.

(f)    Escrow Holder shall have the right to assume in the absence of written notice to the contrary from the proper person or persons that a fact or an event by reason of which an action would or might be taken by Escrow Holder does not exist or has not occurred, without incurring liability to the other parties hereto or to anyone else for any action taken or omitted, or any action suffered by it to be taken or omitted, in good faith and in the exercise of reasonable judgment, in reliance upon such assumption.

(g)    Except in connection with Escrow Holder's willful misconduct or gross negligence, Escrow Holder shall be indemnified and held harmless jointly and severally by the Lender Parties and the Borrower Parties from and against any and all expenses or loss suffered by Escrow Holder (in its capacity as escrow agent), including reasonable attorneys' fees, in connection with any action, suit or other proceeding involving any claim, which arises out of or relates to the Agreement, the services of Escrow Holder hereunder or the monies and documents held by it hereunder.  Promptly after the receipt by Escrow Holder of notice of any demand or claim or the commencement of any action, suit or proceeding, Escrow Holder shall, if a claim in respect thereof is to be made against any of the other parties hereto, notify such other parties hereto in writing; but the failure by Escrow Holder to give such notice shall not relieve any party from any liability which such party may have to Escrow Holder hereunder.

(h)    From time to time on and after the date hereof, Lender Parties and Borrower shall deliver or cause to be delivered to Escrow Holder such further documents and instruments and shall do and cause to be done such further acts as Escrow Holder shall reasonably request (it being understood that Escrow Holder shall have no obligation to make any such request) to carry out more effectively the provisions and purposes of this Agreement, to evidence compliance herewith or to assure itself that it is protected in acting hereunder.

(i)    If for any reason the Close of Escrow does not occur and either party makes a written demand upon Escrow Holder for payment or refund, as the case may be, of the Escrowed Funds or any portion thereof, or the delivery or return of the Escrowed Documents, Escrow Holder shall give written notice to the other party of such demand.  If Escrow Holder does not receive a written objection from the other party to the proposed payment or refund of the Escrowed Funds, or portion

thereof, or the delivery or return of the Escrowed Documents, as the case may be, within ten (10) Business Days after the giving of the notice described in the preceding sentence, Escrow Holder is hereby authorized to make such payment or refund, delivery or return; provided, however, if for any reason Escrow Holder in good faith shall elect not to make such payment, Escrow Holder shall continue to hold such amount until otherwise directed by written instructions from the parties to this Agreement or a final judgment of a court of competent jurisdiction.  Notwithstanding the foregoing, Escrow Holder shall have the right at any time to deposit the Escrowed Funds and Escrowed Documents with the Clerk of the Supreme Court of New York County, New York.  Escrow Holder shall give written notice of such deposit to Lehman Re and Borrower.  Upon such deposit, Escrow Holder shall be relieved and discharged of all further obligations and responsibilities hereunder.

(j)    Escrow Holder may resign at any time as escrow agent hereunder upon giving five (5) Business Days' prior written notice to that effect to each of the Lender Parties and Borrower.  Any successor escrow agent shall be a nationally recognized title insurance company or a nationally recognized law firm selected by Borrower and reasonably accepted by Lender Parties.  In such case, Escrow Holder shall no longer serve as escrow agent and shall deliver, against receipt, to such successor escrow agent, the Escrowed Funds and the Escrowed Documents held by Escrow Holder, to be held by such successor escrow agent pursuant to the terms and provisions of this Agreement.  If no such successor has been designated on or before such party ceases to be escrow agent hereunder, whether by resignation or otherwise, Escrow Holder's  obligations as escrow agent shall continue until such successor is appointed; provided, however, its sole obligation thereafter shall be to safely keep all monies and documents then held by it and to deliver the same to the person, firm or corporation designated as its successor or until directed by a final order or judgment of a court of competent jurisdiction, whereupon Escrow Holder shall make disposition thereof in accordance with such order.  If no successor escrow agent is designated and qualified within five (5) Business Days after its resignation is effective, Escrow Holder shall no longer be considered the escrow agent and Escrow Holder shall apply to the Clerk of the Supreme Court of New York County, New York, for the appointment of a successor escrow agent.

(k)    Escrow Holder shall receive $500.00 as compensation for the performance of its duties under this Agreement (including this Exhibit B).

**EXHIBIT C**

FORM OF RELEASE OF LENDER PARTIES


This Release is made this __ day of _____, 2009, by and among M&B MEZZ LLC, a Delaware limited liability company ("**Borrower**"), M&B REALTY DEVELOPMENT LLC, a Delaware limited liability company ("**Development**"), BENJAMIN SHAOUL, an individual ("**Shaoul**"), MARC RAVNER, an individual ("**Ravner**", and together with Shaoul, each a "**Guarantor**" and collectively, the "**Guarantors**") in favor of LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**"), LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**"), and LEHMAN RE LTD., a Bermuda corporation ("**Lehman Re**").  LBHI, LCPI and Lehman Re are hereinafter collectively referred to from time to time as "**Lender Parties**".

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  As further consideration for Lender Parties' execution and delivery of the Loan Payoff Agreement (M&B Junior Mezzanine Loan) dated as of May __, 2009 (the "**Loan Payoff Agreement**") and agreement to the transactions described therein, each of Borrower, Development and each of the Guarantors for itself and its respective affiliates, successors and assigns (collectively, the "**Borrower Parties**"), as of the date hereof, hereby absolutely and irrevocably waives, releases, and forever discharges each of the Lender Parties and their respective partners, officers, creditors, shareholders, directors, agents, attorneys, servants, contractors, employees, parent and subsidiary corporations and predecessors-in-interest (collectively, the "**Released Parties**") from any and all claims, rights, demands, actions, suits, causes of actions, damages, counterclaims, defenses, losses, costs, obligations, liabilities and expenses of every kind or nature (collectively, "**Claims**"), known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen, arising out of or relating directly or indirectly to any circumstances or state of facts pertaining to the Loan, the Loan Documents or the Project, including claims related to the actions of any of the Lender Parties or their predecessors in administering the Loan or negotiating the Loan Documents and claims of lender liability, duress, illegality, usury, waiver, bad faith, interference in the business of the Borrower Parties, or any nonperformance of any agreement or obligation related thereto, or any statements, representations, acts or omissions, intentional, willful, negligent or innocent, by any of the Released Parties in any way connected with, relating to or affecting, directly or indirectly, the Loan, the Loan Documents, or the Project; provided, however, that the foregoing shall not constitute a release of any claim against any Lender Party based on fraud committed by such Lender Party.

2.  Terms used and not otherwise defined in this Release shall have the meanings given to such terms in the Loan Payoff Agreement.

3.  This Release may be executed in one or more counterparts each of which when taken together shall constitute but one and the same instrument.  This Release shall be governed by the laws of the State of New York.

IN WITNESS WHEREOF, the undersigned have executed this Release as of the date first written above.

BORROWER:


M&B MEZZ LLC,
    a Delaware limited liability company


By:_____
    Name:  Marc Ravner
    Title:  Executive Manager


By:_____
    Name:  Benjamin Shaoul
    Title:  Executive Manager

DEVELOPMENT:


M&B REALTY DEVELOPMENT LLC,
    a Delaware limited liability company


By:_____
    Name:  Marc Ravner
    Title:  Executive Manager


By:_____
    Name:  Benjamin Shaoul
    Title:  Executive Manager


GUARANTORS:


By:_____
    Name:  Marc Ravner


By:_____
    Name:  Benjamin Shaoul

D-6

**EXHIBIT D**

FORM OF RELEASE OF BORROWER PARTIES


      This Release is made this __ day of _____, 2009, by and among LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**"), LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**"), and LEHMAN RE LTD., a Bermuda corporation ("**Lehman Re**"; LBHI, LCPI and Lehman Re are hereinafter collectively referred to from time to time as "**Lender Parties**") in favor of M&B MEZZ LLC, a Delaware limited liability company ("**Borrower**"), M&B REALTY DEVELOPMENT LLC, a Delaware limited liability company ("**Development**"), BENJAMIN SHAOUL, an individual ("**Shaoul**"), MARC RAVNER, an individual ("**Ravner**", and together with Shaoul, each a "**Guarantor**" and collectively, the "**Guarantors**").  Borrower, Development and the Guarantors are hereinafter collectively referred to from time to time as "**Borrower Parties**".

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

      1.  As further consideration for execution and delivery by Borrower, Development and Guarantors of the Loan Payoff Agreement (M&B Junior Mezzanine Loan) dated as of May __, 2009 (the "**Loan Payoff Agreement**") and agreement to the transactions described therein, each of the Lender Parties for itself and its respective affiliates, successors and assigns (collectively, the "**Lender Group**"), as of the date hereof, hereby absolutely and irrevocably waives, releases, and forever discharges each of the Borrower Parties and their respective partners, officers, creditors, shareholders, directors, agents, attorneys, servants, contractors, employees, parent and subsidiary corporations and predecessors-in-interest (collectively, the "**Released Parties**") from any and all claims, rights, demands, actions, suits, causes of actions, damages, counterclaims, defenses, losses, costs, obligations, liabilities and expenses of every kind or nature (collectively, "**Claims**"), known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen, arising out of or relating directly or indirectly to any circumstances or state of facts pertaining to the Loan, the Loan Documents or the Project, including claims related to the actions of any of the Borrower Parties or their predecessors in connection with the Loan or negotiating the Loan Documents, or any nonperformance of any agreement or obligation related thereto, or any statements, representations, acts or omissions, intentional, willful, negligent or innocent, by any of the Released Parties in any way connected with, relating to or affecting, directly or indirectly, the Loan, the Loan Documents, or the Project; provided, however, that the foregoing shall not constitute a release of any claim against any Borrower Party based on fraud committed by such Borrower Party nor shall it constitute a release of any claim against any Borrower Party arising out of any covenant or indemnity under any of the Loan Documents that is intended to survive repayment in full of the Loan.

      2.  Terms used and not otherwise defined in this Release shall have the meanings given to such terms in the Loan Payoff Agreement.

      3.  This Release may be executed in one or more counterparts each of which when taken together shall constitute but one and the same instrument.  This Release shall be governed by the laws of the State of New York.

      IN WITNESS WHEREOF, the undersigned have executed this Release as of the date first written above.

LENDER PARTIES:

**LEHMAN BROTHERS HOLDINGS INC.**,
a Delaware corporation as Debtor and Debtor in
Possession in its chapter 11 case in the United
States Bankruptcy Court for the Southern
District of New York, Case No. 08-13555 (JMP)

By:_____
     Name:
     Title:

**LEHMAN COMMERCIAL PAPER INC.**,
a New York corporation as Debtor and Debtor in
Possession in its chapter 11 case in the United
States Bankruptcy Court for the Southern
District of New York, Case No. 08-13555 (JMP)

By:_____
     Name:
     Title:

**LEHMAN RE LTD.**,
a Bermuda corporation

By:  Its Joint Provisional Liquidators (without
      personal liability)

By:_____
     Name: Peter C.B. Mitchell
     Title: Authorized Signatory

By:_____
     Name:  D. Geoffrey Hunter
     Title: Authorized Signatory

**EXHIBIT E**

FORM OF LOST NOTE AFFIDAVIT

**LOST NOTE AFFIDAVIT**

The undersigned, an _____ of Lehman Re Ltd., a Bermuda corporation ("Noteholder"), does hereby certify to M&B Mezz LLC ("Borrower") as follows:

1.  The Noteholder is the owner of that certain Severed Note dated as of August 15, 2007 in the principal amount of $888,230.83 given by Lemadre Mezz LLC to Lehman Brothers Holdings Inc. (the "Note").

2.  The Noteholder has conducted a diligent and exhaustive search of those books, records, files, archives and other known or likely repositories of its documents of which Noteholder is aware. Notwithstanding the foregoing, Noteholder has been unable to locate the original Note and believes that the original Note has been lost, stolen, misfiled, misplaced or destroyed.

3.  The Note was satisfied on _____ __, 2009.

4.  The Noteholder has not sold, assigned, pledged or transferred the Note, and no other person, firm, corporation or other entity has any right, title, interest or claim to the Note.

5.  The Noteholder agrees that, should the original Note ever be found by it, the Noteholder will promptly forward the original Note to the Borrower.

6.  The Noteholder agrees to reimburse the Borrower for the reasonable legal fees and expenses incurred by the Borrower in defending any claim that the statements contained in this Lost Note Affidavit are untrue.

_____

_____

Sworn to before me as of this
___day of _____, 2009.

_____

Notary Public