**Objection Date and Time: May 29, 2009 at 4:00 p.m. (Prevailing Eastern Time)**
**Hearing Date and Time: June 3, 2009 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------------x

### NOTICE OF MOTION OF THE DEBTORS FOR ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(b) AUTHORIZING THE ESTABLISHMENT OF PROCEDURES TO TERMINATE UNFUNDED COMMITMENTS AND RESTRUCTURE CORPORATE LOAN AGREEMENTS

            PLEASE TAKE NOTICE that a hearing on the annexed motion, dated as of May

14, 2009 (the "Motion"), of Lehman Brothers Holdings Inc. and Lehman Commercial Paper Inc.

("LCPI") and their affiliated debtors in the above-referenced chapter 11 cases (together, the

"Debtors"), pursuant to sections 105 and 363(b) of title 11 of the United States Code and Rule

9019 of the Federal Rules of Bankruptcy Procedure authorizing the establishment of procedures

to permit the Debtors to (i) terminate or assign their unfunded commitments with respect to

corporate loans and (ii) restructure the terms of corporate loans, all as more fully described in the

Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at

the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One

Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **June 3, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Jacqueline Marcus, Esq., attorney for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be so filed and received no later than **May 29, 2009 at 4:00 p.m. (prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: May 14, 2009
       New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Objection Date and Time: May 29, 2009 at 4:00 p.m. (Prevailing Eastern Time)**
**Hearing Date and Time: June 3, 2009 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                            :
In re                                       :        **Chapter 11 Case No.**
                                            :
**LEHMAN BROTHERS HOLDINGS INC., et al.,**   :        **08-13555 (JMP)**
                                            :
                        Debtors.            :        **(Jointly Administered)**
                                            :
                                            :
-------------------------------------------------------------------x

**MOTION OF THE DEBTORS PURSUANT TO SECTIONS 105(a) AND 363(b) OF**
**THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(b) AUTHORIZING**
**THE ESTABLISHMENT OF PROCEDURES TO TERMINATE UNFUNDED**
**COMMITMENTS AND RESTRUCTURE CORPORATE LOAN AGREEMENTS**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

> Lehman Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc.

("LCPI") and their affiliated debtors in the above-referenced chapter 11 cases, as debtors and

debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates,

"Lehman"), respectfully represent:

### Background

> 1.    Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy

Rules.  The Debtors are authorized to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

　　　　2.　　　　On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

　　　　3.　　　　On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

　　　　4.　　　　On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

**Jurisdiction**

　　　　5.　　　　This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Lehman's Business**

　　　　6.　　　　Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman has been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

　　　　7.　　　　Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

### The Debtors' Lending Business

8.	As of September 30, 2008, which was after LBHI's Commencement Date

but prior to LCPI's Commencement Date, the Debtors were among the nation's leading lenders

with $46.7 billion[1] of committed loans outstanding to borrowers for use in their general business

operations ("Corporate Loans"). The Debtors also had over $4.3 billion of Corporate Loans

participated to other financial institutions in which a Debtor or one of the Banks was the lender

of record.  The Corporate Loans held by the Debtors include both funded loans and unfunded or

partially funded loans which the Debtors were obligated to fund in the future.  Of the total

outstanding amount of Corporate Loans held by the Debtors as of the Commencement Date,

approximately $16 billion was funded and approximately $30.5 billion consisted of unfunded

commitments, many of which were commitments to backstop commercial paper and support

corporate ratings of borrowers where amounts were not intended to be drawn.

9.	The Debtors provided Corporate Loans to borrowers in all industries.

Such loans typically were unsecured loans to borrowers whose corporate debt had an investment-

grade rating and secured loans to borrowers whose corporate debt had a below investment-grade

rating.  In most cases, Corporate Loans were provided by the relevant Debtor as a member of a

lending syndicate.  In only a small percentage of the cases did the Debtors hold more than 25%

of the outstanding principal amount of any Corporate Loan (a "Control Position").

---

[1] Such figure excludes loans secured by real estate and private equity loans and advances, but including loans made by Lehman Brothers Commercial Bank, Lehman Brothers Bank and Lehman Brothers Bankhaus AG ("Bankhaus") (collectively, the "Banks") and certain securitizations.

10.     With respect to most Corporate Loans the applicable Debtor was an initial lender under the relevant loan agreement; however, in other situations the Debtor purchased the relevant loan position in the secondary loan market. In most cases a Debtor was the lender of record with respect to the Corporate Loans, although in some cases the relevant Debtor merely owned a participation interest in the loans. Frequently, where a Debtor was a lender of record, it may have sold a participation in all of a portion of such loans to either an affiliate, a securitization issuer, or to an unrelated third party.

11.     Since the Commencement Date, the Debtors have been engaged in the following activities with respect to Corporate Loans:

(a)     managing their cash management system on their own behalf and for any loan participants in accordance with court stipulations and other agreements;

(b)     taking actions as lender, agent and loan participant in accordance with the underlying loan documentation for over 700 Corporate Loans;

(c)     transferring various agency roles to other financial institutions;

(d)     elevating Corporate Loans with respect to which the Debtors sold a participation to third parties, after consultation with the Creditors' Committee;

(e)     negotiating agreements for the termination of over $12 billion of Unfunded Commitments of the Debtors and the Banks;

(f)     consummating over 600 open purchases or sales of Corporate Loans (or interests therein) and negotiating settlements with parties objecting to such purchases and sales;

(g)     collecting from over 700 borrowers, interest, principal and fees owed to the Debtors, the Banks, securitization issuers, other special purpose vehicles and the hundreds of

financial and investment parties that participated in Corporate Loans in which a Debtor is the

lender of record;

(h)              performing market agency activities for noteholders, securitization issuers

and other special purpose vehicles; and

(i)              performing all credit management and review processes on all borrowers

owing amounts to the Debtors' estates, and where appropriate, (i) funding certain advances in

accordance with the underlying loan agreements and (ii) amending certain financial and other

non-monetary covenants and terms of the applicable loan agreement.

   12. In evaluating the appropriate course of action in all these areas, the

Debtors have had numerous discussions with, and provided regular reporting to, the advisors to

the Creditors' Committee and have been mindful that the Bankruptcy Code requires that they

obtain court approval of any transactions outside the ordinary course of business as well as

compromises and settlement of claims.  Thus, for example, the Debtors have sought approval of

the termination of LCPI's unfunded commitments with General Electric[2] and of the settlement

between LCPI and Bankhaus pursuant to which LCPI and Bankhaus agreed to share equally the

proceeds from the sale of a loan to LBT Varlik Yonetim Anonim Sirketi ("LBT"), an indirect,

non-Debtor subsidiary of LBHI incorporated in the Republic of Turkey, in which both parties

claimed beneficial ownership.[3]

---

[2] The termination of the General Electric commitment was approved by this Court in the Order Granting Debtors'
Motion, Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 9019 and 6004, for
Authorization to Invest Capital and to Perform Certain Related Actions to Support the Capital Level of Lehman
Brothers Bank, [Docket No. 3243] entered on March 31, 2009.

[3] The LBT settlement was approved by this Court in the Order Authorizing (I) The Settlement of Certain Rights
Under Loan Agreements, (II) The Sale of Certain Rights Under Loan Agreements, and (III) Related Relief, [Docket
No. 2911] entered on February 24, 2009.

## Relief Requested

13. By this Motion, the Debtors seek authority under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 to establish procedures by which they may (i) enter into agreements with borrowers to terminate Unfunded Commitments (as defined below) or assign such Unfunded Commitments to third parties, and (ii) restructure the terms of certain Corporate Loans, in each case pursuant to the procedures set forth herein.

## Unfunded Commitments

14.    In many cases, the relevant agreements related to Corporate Loans provide that the applicable Debtor has the obligation to lend additional amounts (subject to a maximum commitment and the condition that the borrower is in compliance with certain covenants) upon request by the borrower as future advances or in connection with revolving credit facilities (the "Unfunded Commitments").  In connection with the  relevant agreements, the borrowers are commonly required to pay the applicable Debtor various fees, including in most cases a commitment fee and/or an unused line fee (collectively, "Fees").  The Fees are required to be paid in addition to any interest payments payable by the borrower in respect of borrowed amounts.  Since the Commencement Date, the Debtors have, in some cases, made further loan advances in accordance with the underlying loan documents, while in other cases the Debtors have determined, in their business judgment, that making future advances was not in their best interests.  Even though the borrowers are stayed from enforcing certain rights against the Debtors pursuant to section 362(a) of the Bankruptcy Code, several borrowers and agent banks have failed to remit the required Fees.

15.    Since the Commencement Date, in order to minimize claims against their estates, the Debtors have been attempting to negotiate consensual terminations of Unfunded

Commitments.  In addition, the Debtors have been negotiating for the assignment of Unfunded

Commitments to third parties because a third party's assumption of the Unfunded Commitment

would relieve the Debtor from liability to the borrower as a result of the Debtor's failure to fund

a draw request, as well as potential damage claims associated with a failure to fund.

16.     It is in the best interest of the Debtors for the parties to enter into

agreements that relieve the applicable Debtor, whether through termination or assignment, of its

obligation to fund Unfunded Commitments, even when certain funded portions of Corporate

Loans remain outstanding and amounts thereunder are owed to the Debtors.

17.     The Debtors, exclusive of the Banks, have already terminated Unfunded

Commitments in the aggregate amount of $3.6 billion.  In connection with such terminations, the

Debtors have in certain situations waived nominal Fees, but have not made any payments other

than those previously approved by the Court.[4]  The Debtors intend to continue to negotiate the

best possible terms for each termination and assignment.  Whether, or to what extent, the Debtors

agree to enter into transactions to terminate or assign Unfunded Commitments, will depend on a

number of factors including, for example, the amount of the Debtors' Unfunded Commitment,

the Debtors' evaluation of the borrower's wherewithal to repay such advances, and the economic

terms of the applicable loan.  Finally, with respect to each settlement, the Debtors will require

confirmation that any amounts owed by the applicable borrower in respect of term loans or the

funded portion of any revolvers shall be paid without setoff or recoupment.  In addition, the

Debtors will require the applicable borrower to provide a release from any claim that such

borrower has or may have with respect to any draw requests that were made before or after the

Commencement Date.  The Debtors anticipate that, in some circumstances, achieving the best

---

[4] Certain of the Banks have paid minimal fees in connection with the termination of Unfunded Commitments.

possible terms may involve the Debtors waiving or returning Fees (nominal or otherwise) and/or

making other payments to borrowers or third-party assignees of Corporate Loans.

18.     As a result of the large number of Corporate Loans with Unfunded

Commitments held by the Debtors, rather than seek Court approval for each transaction, it will

be far more efficient and cost effective if the Debtors are authorized to enter into agreements to

terminate or assign Unfunded Commitments on the following terms and conditions:

> a.     The Debtors may (i) enter into termination agreements with borrowers of Corporate Loans to terminate Unfunded Commitments and (ii) assign Corporate Loans with Unfunded Commitments to a third party who assumes the Unfunded Commitment.

> b.     In the each case, the Debtors will either (i) provide notice of such transaction to the Creditors' Committee in accordance with the approval process previously followed by the Debtors and the financial advisors to the Creditors' Committee (the "Committee Approval Process") or (ii) file a motion with the Court requesting approval of the terms of the settlement under Bankruptcy Rule 9019 and/or, if appropriate, section 363(b) of the Bankruptcy Code.

### Restructuring of Loan Agreements

19.     The Debtors hold a Control Position in only a small percentage of the

Corporate Loans.  When the Debtors hold a Control Position they have the ability to control or

influence whether amendments to the loan agreements (or related documents) may be effected.

Each loan agreement sets forth the necessary borrower, lender and administrative agent consent

required for any amendment thereto.   Prior to the Commencement Date, in the ordinary course

of the Debtor's business, the Debtors would entertain such requests from borrowers for loan

amendments or modified terms for repayment arising from in-court or out-of-court restructurings

("Restructuring Requests").

20.     The Corporate Loans are not performing as expected, in large measure,

due to the prevailing economic conditions.   As is ordinary course in the lending industry, the

Debtors, in their capacity as lenders, may determine in their reasonable business judgment that

circumstances warrant agreeing to Restructuring Requests, including requests to: adjust interest rates, change payment schedules, release or obtain collateral, adjust covenants and/or negotiate any of the terms and conditions of the loan agreement.  In addition, the Debtors, as they determine is appropriate in their business judgment, may agree to forebear from exercising rights under the loan agreements and vote on plans of reorganization of borrowers.  The amendments and actions set forth in this paragraph as well as any other actions taken by the Debtors in the ordinary course of their business are referred to herein as "Ordinary Course Actions".

22.     Although restructuring transactions of this type were undertaken by the Debtors in the ordinary course of their business prior to the Commencement Date, the fact that such restructurings might in some limited cases "release" certain rights of the Debtors raises an issue as to whether such Restructuring Requests require approval of the Court under Bankruptcy Rule 9019.  In order to permit the Debtors to act expeditiously with respect to Restructuring Requests, the Debtors submit that it is in best interests of the Debtors for the Court to authorize the Debtors to enter into to restructuring transactions in accordance with the procedures set forth herein.  Moreover, the flexibility requested herein is also in the interests of the Debtors' borrowers, and the credit markets in general, because it will limit the delays attendant to obtaining court approval for many of the dozens of restructurings in which the Debtors are or will be involved in the coming months.

23.     Since the Commencement Date, the Debtors have regularly agreed to Restructuring Requests from various borrowers or other parties to the relevant lending facilities. The Debtors recognize that if they have a Control Position in a particular Corporate Loan that, depending on the terms thereof, Court approval for such Restructuring Requests may be necessary.  To that end, in addition to Ordinary Course Actions, the Debtors request that they be

authorized to enter into restructuring transactions whereby the Debtors would receive an equity

interest in the borrower (or its affiliates) or other interest or consideration in exchange for the

forgiveness of certain indebtedness and release of such borrowers of certain obligations with

respect thereto, subject to the following terms and conditions:

> a.      Without further order of the Court, but with prior notice to the Creditors' Committee, the Debtors may enter into restructuring transactions with respect to Corporate Loans for which (i) the Debtors hold at least 25% of the outstanding principal amount of the portion of such Corporate Loans affected by such restructuring transaction and (ii) the outstanding principal amount due to the Debtors is less than $25 million.

> b.      Either (i) as approved in accordance with the Committee Approval Process, or (ii) with approval from the Court, the Debtors may enter into restructuring transactions with respect to Corporate Loans for which (x) the Debtors hold at least 25% of the outstanding principal amount of the portion of a Corporate Loan affected by such restructuring transaction and (y) the outstanding principal amount due to the Debtors is at least $25 million.

> c.      For the avoidance of doubt, neither the approval of the Creditors' Committee nor an order of the Court will be required in order for the Debtors to enter into restructuring transactions if the Debtors do not hold a Control Position.

### Basis for Relief

21.      Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor-in-

possession] and after notice and a hearing, the court may approve a compromise or settlement."

FED. R. BANKR. P. 9019(a).  This rule empowers bankruptcy courts to approve compromises "if

they are in the best interest of the estate."  *Vaughn v. Drexel Burnham Lambert Group, Inc. (In

re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414,

424 (1968); *Fisher v. Pereira (In re 47-49 Charles St., Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997);

*In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir.

1994).  Indeed, courts have long considered compromises to be "a normal part of the process of

reorganization." *TMT Trailer Ferry,* 390 U.S. at 424 (quoting *Case v. Los Angelas Lumber Prods. Co.*, 308 U.S. 106, 130 (1939).

22.     The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  The settlement need not result in the best possible outcome for the debtor, but must not fall beneath the lowest point in the range of reasonableness." *Drexel Burnham Lambert Group*, 134 B.R. at 505; see also *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).  Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  However, the analysis must focus on the question of whether a particular compromise is "fair and equitable, and in the best interest of the estate." *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).

23.     While a court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation.  *Drexel Burnham Lambert Group*, 134 B.R. at 496.  "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact….  The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

24.     The court may give weight to the "informed judgments of the … debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert*

*Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*,

150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr.

S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for

the Trustee's, but only that I test his choice for reasonableness.... If the Trustee chooses one of

two reasonable choices, I must approve that choice, even if, all things being equal, I would have

selected the other.").

   25. Significantly, there is no requirement that "the value of the compromise …

be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427.

Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to

a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-

28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974).

   26. This Court has the authority to grant the relief requested in this Motion

pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(b).

Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order that is

necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section

363(b)(1) of the Bankruptcy Code provides that the [debtor-in-possession] after notice and a

hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate" <u>See</u> 11 U.S.C. § 363(b)(1); <u>see</u> Fed. R. Bankr. P. 6004(f)(1) ("All sales not in the

ordinary course of business may be by private sale or by public auction."). The decision to use

or sell assets outside the ordinary course of business is based upon the sound business judgment

of the debtor. <u>See, e.g.</u>, <u>In re Chateaugay Corp.</u>, 973 F.2d 141 (2d Cir. 1992); <u>Comm. of Equity

Sec. Holders v. Lionel Corp. (In re Lionel Corp.)</u>, 772 F.2d 1063, 1071 (2d Cir. 1983); <u>In re

Adelphia Communications Corp.</u>, No. 02-41729 (REG) (Bankr. S.D.N.Y. July 31, 2002). <u>See</u>

also In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49

(2d Cir. 1993), quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985) ("the business

judgment rule 'is a presumption that in making a business decision the directors of a corporation

acted on an informed basis, in good faith and in the honest belief that the action was in the best

interests of the company,'" which has continued applicability in bankruptcy).

27.    The Debtors seek the establishment of procedures, which if complied with,

render certain future compromises and settlements pre-approved.  Other courts have granted

authority to settle various types of claims to debtors in possession in other large chapter 11 cases,

including *In re Footstar, Inc. et al.*, (Case No. 04-22350) (Bankr. S.D.N.Y.) (approving

procedures for the settlement of litigation claims and pre-petition leases and contracts); *In re*

*NRG Energy, Inc., et al.* (Case No. 03-13024) (Bankr. S.D.N.Y. 2003) (approval of procedures

for the settlement of terminated derivative contracts); *In re Mirant Corporation, et al.* (Case No.

03-46590) (Bankr. N.D. Tex. 2003) (approval of procedures for the settlement of terminated

derivative contracts); *In re Enron Corp., et al.* (Case No. 01-16034) (Bankr. S.D.N.Y. 2001)

(approval of procedures for estimation and settlement of unliquidated and contingent claims); *In*

*re Armstrong World Industries, Inc., et al.* (Case No. 00-4471) (Bankr. D. Del. 2000) (approving

procedures for the settlement of personal injury claims, employee litigation claims and tax claims

against the debtor).

28.    For the reasons discussed above, the Debtors have determined that the

termination or assignment of Unfunded Commitments represents their best method to relieve the

Debtors of liability with respect to Unfunded Commitments and to limit claims by borrowers

against the Debtors for potential damages resulting from the failure to make further advances.

Furthermore, resolution of Unfunded Commitments will enable borrowers to seek financing from

other sources.  To take full advantage of these opportunities and to minimize the administrative

costs attendant thereto, the Debtors require pre-authorization from the Court authorizing them to

terminate or assign Unfunded Commitments for amounts the Debtors determine in their

reasonable business judgment, subject to the procedures described herein.

29.    The Debtors have determined that in certain cases, restructuring the terms

of loan agreements may preserve the value of the Corporate Loans for the benefit of Debtors'

estates.  To take full advantage of these opportunities, the Debtors require pre-authorization from

the Court for procedures authorizing them to restructure the terms of the Corporate Loans in their

reasonable business judgment, subject to the procedures described herein.

30.    The proposed procedures for compromises and settlements as discussed in

this Motion are within the parameters set forth in Bankruptcy Rule 9019, are within the Court's

authority under sections 105(a) and 363(b) of the Bankruptcy Code, and are in the best interests

of the Debtors, their estates, their creditors, and all parties in interest.

## Notice

34.    The Debtors request that, pursuant to Bankruptcy Rule 2002(a)(3), the

Court find that cause exists to limit notice of any compromises, settlements, or use of property

entered consistent with the procedures outlined in this Motion.  Limiting notice will enable the

Debtors to promptly and efficiently enter into the compromises and settlements contemplated by

this Motion.

35.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

36.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order (i) establishing procedures to terminate unfunded commitments and to restructure corporate loan agreements (ii) granting the Debtors such other and further relief as is just.


DATED:        May 14, 2009
              New York, New York

                              /s/ Jacqueline Marcus
                              Jacqueline Marcus

                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York 10153
                              (212) 310-8000

                              Attorneys For Debtors And
                              Debtors In Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------x
                                      :
In re                                 :    Chapter 11 Case No.
                                      :
LEHMAN BROTHERS HOLDINGS INC., et al.,:    08-13555 (JMP)
                                      :
                Debtors.              :    (Jointly Administered)
                                      :
                                      :
------------------------------------------------------------------x
```

### ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(b) AUTHORIZING THE ESTABLISHMENT OF PROCEDURES TO TERMINATE UNFUNDED COMMITMENTS AND RESTRUCTURE CORPORATE LOAN AGREEMENTS

Upon the motion, dated May 14, 2009 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI") and their affiliated

debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession

(collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to

sections 105 and 363(b) of the Bankruptcy Code (the "Bankruptcy Code") and Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order

establishing procedures authorizing the Debtors to (i) terminate or assign their unfunded

commitments with respect to corporate loans and (ii) restructure the terms of corporate loans, all

as more fully described in the Motion; and the Court having jurisdiction to consider the Motion

and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing

Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the order entered February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors (the "Creditors' Committee"); (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that Debtors shall be, and they hereby are, authorized to terminate or assign Unfunded Commitments in accordance with the following procedures:

a.      The Debtors may (i) enter into termination agreements with borrowers of Corporate Loans to terminate Unfunded Commitments and (ii) assign Corporate Loans with Unfunded Commitments to a third party who assumes the Unfunded Commitment.

b.      In the each case, the Debtors will either (i) provide notice of such transaction to the Creditors' Committee in accordance with the approval process previously followed by the Debtors and the financial advisors to the Creditors' Committee (the "Committee Approval Process") or (ii) file a motion with the Court requesting approval of the terms of the settlement under Bankruptcy Rule 9019 and/or, if appropriate, section 363(b) of the Bankruptcy Code;

and it is further

ORDERED that, in addition to Ordinary Course Actions (as defined in the Motion), the Debtors are authorized to enter into agreements pursuant to which the Debtors would receive an equity interest in the borrower (or its affiliates) or other interest or consideration in exchange for the forgiveness of certain indebtedness and release of such borrowers of certain obligations with respect thereto, subject to the following terms and conditions:

a.      Without further order of the Court, but with prior notice to the Creditors' Committee, the Debtors may enter into restructuring transactions with respect to Corporate Loans for which (i) the Debtors hold at least 25% of the outstanding principal amount of the portion of such Corporate Loans affected by such restructuring transaction and (ii) the outstanding principal amount due to the Debtors is less than $25 million.

b.      Either (i) as approved in accordance with the Committee Approval Process, or (ii) with approval from the Court, the Debtors may enter into restructuring transactions with respect to Corporate Loans for which (x) the Debtors hold at least 25% of the outstanding principal amount of the portion of a Corporate Loan affected by such restructuring transaction and (y) the outstanding principal amount due to the Debtors is at least $25 million.

c.      For the avoidance of doubt, neither the approval of the Creditors' Committee nor an order of the Court will be required in order for the Debtors to enter into restructuring transactions if the Debtors do not hold a Control Position;

and it is further

ORDERED that the Debtors are authorized to take any Ordinary Course Actions with respect to Corporate Loans and to enter into agreements or take any other actions in connection therewith; and it is further

ORDERED that this Order shall not obligate or require Debtors terminate or assign any Unfunded Commitment, or restructure or amend any loan agreement, nor shall this Order preclude Debtors from settling or compromising any claim upon further application to the Court; and it is further

ORDERED that, the Debtors are authorized to execute such documents or other

instruments as may be necessary to effectuate any of the transactions contemplated hereby; and it

is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation and/or enforcement of this

Order.

Dated: June __, 2009
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE