WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Edward Soto
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br>Debtor. | Chapter 11 Case No.<br>08-13555 (JMP)<br>(Jointly Administered) |
| In re<br><br>LEHMAN COMMERCIAL PAPER INC.,<br>Debtor. | Chapter 11 Case No.<br>08-13900 (JMP) |
| STATE STREET BANK AND TRUST COMPANY,<br>Plaintiff,<br>v.<br>LEHMAN COMMERCIAL PAPER INC.,<br>Defendant. | Adv. Proc. No. 08-01743 |

**DEBTORS' MOTION PURSUANT TO RULE 9019 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE FOR APPROVAL OF AN EXCHANGE
<u>AGREEMENT WITH STATE STREET BANK AND TRUST COMPANY</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as debtor and debtor in possession, together with its affiliated debtors in the above-referenced chapter 11 cases (collectively, the "Debtors"), including Lehman Commercial Paper Inc. ("LCPI"), file this Motion and respectfully represent:

**Preliminary Statement**

1. This Motion seeks approval of an exchange agreement (the "Exchange Agreement") between the Debtors and State Street Bank and Trust Company ("State Street") concerning certain disputes arising from a May 1, 2007 Master Repurchase Agreement (the "Repurchase Agreement") between LCPI and State Street.

2. On November 19, 2008, State Street initiated an adversary proceeding (the "Adversary Proceeding") seeking, *inter alia*, a declaratory judgment regarding the ownership of certain assets governed by the Repurchase Agreement and the income generated from those assets. See Adversary Complaint filed in Ad. Proc. No. 08-01743 (the "Complaint") at ¶¶ 132-144. To resolve certain of the disputes raised in the Adversary Proceeding relating to the Repurchase Agreement, the Debtors and State Street seek the Court's approval of the Exchange Agreement, which provides for an exchange of certain assets between the parties.

3. As demonstrated below, the Exchange Agreement is reasonable and in the best interests of the Debtors, their estates, and creditors. The Exchange Agreement will allow the Debtors to acquire loan positions that either have inherent economic value to their estates or will enable the estates to protect a more senior position by consolidating ownership in the capitalization of certain assets. While the Exchange Agreement does not resolve all of the issues raised in the Adversary Proceeding, it resolves certain of the controversies therein. Accordingly, the Exchange Agreement should be approved.

**Background**

4. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries, including LCPI, commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

7. On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009, entered in Chapter 11 Case No. 08-13555 (JMP) [Docket No. 2583], the Court approved the U.S. Trustee's appointment of the Examiner.

**Jurisdiction**

8. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Lehman's Business**

9.  Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

10. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008, in Chapter 11 Case No. 08-13555 (JMP) [Docket No. 2].

**The Adversary Proceeding Concerning the Repurchase Agreement**

11. On May 1, 2007, LCPI, as seller, and State Street, acting as agent on behalf of certain principals, entered into the Repurchase Agreement. The Repurchase Agreement established an arrangement whereby LCPI could transfer certain assets to State Street at an agreed price with a simultaneous agreement by LCPI to repurchase the assets from State Street at a later date at an agreed repurchase price. See Compl. at Exhibit 1.

12. In September of 2008, certain disputes arising from the Repurchase Agreement surfaced between LCPI and State Street and on November 19, 2008, State Street initiated the Adversary Proceeding against LCPI with the filing of the Complaint.

13. In the Complaint, State Street alleges that LCPI and State Street entered into a single transaction under the Repurchase Agreement, memorialized in a July 2007 confirmation letter, whereby State Street purchased from LCPI a pool consisting of 37 commercial loans and attendant servicing rights (the "Purchased Assets") in exchange for $1 billion. See id. at ¶ 10. State Street alleges that LCPI failed to make certain payments due to

State Street under the Repurchase Agreement and on September 17, 2008, State Street declared that LCPI was in default under the Repurchase Agreement. See id. at ¶¶ 24-29. In addition, State Street alleges that LCPI was required, as of the date of the alleged default, to repurchase the Purchased Assets, but failed to do so, thereby irrevocably cutting off LCPI's rights with respect to the Purchased Assets. See id. at ¶¶ 31, 33.

14. State Street's Complaint asserts the following four claims for relief against LCPI: (i) declaratory judgment that, pursuant to the Repurchase Agreement, State Street owns all rights of the lender in connection with the Purchased Assets, see id. at ¶¶ 132-36; (ii) declaratory judgment that State Street owns all income generated by any of the Purchased Assets as of September 17, 2008 (the date of LCPI's alleged default under the Repurchase Agreement) and thereafter, see id. at ¶¶ 137-39; (iii) conversion, see id. at ¶¶ 142-47; and (iv) injunctive relief to enjoin LCPI from allegedly interfering with State Street's rights in the Purchased Assets and the income from the Purchased Assets, see id. at ¶¶ 148-151.

15. LCPI denies certain of State Street's allegations in the Adversary Complaint. Nevertheless, to avoid certain of the risks and associated costs of litigation of the Adversary Proceeding, the Debtors have entered into a number of Stipulations with State Street establishing their respective entitlement to 22 of the 37 Purchased Assets.[1] In the Motion, the Debtors continue this process by seeking to enter into the Exchange Agreement, which will

---

[1] See Stipulation and Order Partially Resolving Disputes Raised in Adversary Proceeding, entered by the Court January 28, 2009 [Docket No. 42-0]; Second Stipulation Partially Resolving Disputes Raised in Adversary Proceeding, entered by the Court February 24, 2009 [Docket No. 45]; Third Stipulation Partially Resolving Disputes Raised in Adversary Proceeding, entered by the Court March 12, 2009 [Docket No. 50] (the "Third Stipulation"); Fourth Stipulation Partially Resolving Disputes Raised in Adversary Proceeding, entered by the Court April 9, 2009 [Docket No. 57]; Fifth Stipulation Partially Resolving Disputes Raised in Adversary Proceeding, entered by the Court April 9, 2009 [Docket No. 58] (the "Fifth Stipulation"); Sixth Stipulation Partially Resolving Disputes Raised in Adversary Proceeding, entered by the Court May 15, 2009 [Docket No. 63]; Seventh Stipulation Partially Resolving Disputes Raised in Adversary Proceeding, entered by the Court May 15, 2009 [Docket No. 64] (the "Seventh Stipulation").

resolve certain additional disputes between State Street and LCPI in the Adversary Proceeding, as set forth in more detail below. The parties will continue to negotiate in good faith concerning the Purchased Assets that remain the subject of dispute in the Adversary Proceeding.

### The Exchange Agreement

16. The Debtors and State Street have agreed in principle to the terms of the Exchange Agreement, which provides for an exchange of certain loans. The relevant provisions of the Exchange Agreement are described in more detail below.[2]

17. The exchange set forth in the Exchange Agreement enables the Debtors to acquire certain loans in which State Street asserts rights pursuant to the Repurchase Agreement. The Debtors have determined that four of the loans included in the Purchased Assets represent positions that would be beneficial to the estates because they either (i) provide inherent economic value to the estates, or (ii) enable the Debtors' estates to protect a more senior position by consolidating ownership of various pieces of the capitalization affecting a given property. Under the terms of the Exchange Agreement, the Debtors will receive and State Street will relinquish interests in loans relating to the following properties:[3]

- Carillon: **$104,742,224 mezzanine loan.** The Carillon (Canyon Ranch Miami Beach) consists of 5.81 acres of oceanfront land located at 69th Street and Collins Avenue in North Miami Beach. The site is improved with 580 condominium units and contains a 62,000 square foot health spa/treatment and fitness facility, as well as two restaurants. Debtors already own a $139 million mortgage note ahead of this $104,742,224 mezzanine loan.

---

[2] Because the parties are still finalizing the terms of the Exchange Agreement, a copy has not been attached hereto. The parties shall file with the Court and serve on parties who receive service of this Motion, by no later than May 22, 2009, a copy of the Exchange Agreement, which shall contain terms that are substantially consistent with those contained in the summary herein.

[3] There may be slight discrepancies between the Debtors' and State Street's reported figures for certain of the assets referenced herein; however, these amounts will be verified by the time the Exchange Agreement is filed with the Court.

- 237 Park Avenue: **$220,723,825 loan.** 237 Park Avenue is a 21-story, 1,174,500 Class A high-rise building located between 45th and 46th streets just off Park Avenue in New York City. The Debtors already own the $225 million Senior Mezzanine loan ahead of this $220,723,825 loan.

- Archstone A (Project Easy Living A): **$1,998,821 mezzanine loan interest.** This interest is a component of one of eleven mezzanine loans associated with Archstone, one of the premier multifamily developers, owners and operators in the country, which controls a portfolio of 67,413 operating units in various desirable apartment communities. Debtors and their partners already hold all remaining interests in all mezzanine loans associated with this project.

- Archstone B (Project Easy Living B): **$5,699,913 mezzanine loan interest.** Another component of one of eleven mezzanine loans associated with Archstone, as set forth above.

18. In exchange, State Street will receive from the Debtors three loan positions that will enable State Street to consolidate its own position in the capitalization of the related assets. State Street will receive loan positions relating to the following properties:

- Storage Deluxe – 481 Grand: **$164,718 project loan.** Storage Deluxe is a 44,000-square-foot industrial building in Brooklyn, New York that was converted into a self-storage facility containing approximately 795 units. State Street already holds ownership rights in another loan relating to this property, which was also the subject of the Third Stipulation agreed to by the parties and entered by the Court.

- Storage Deluxe – Jamaica Avenue: **$289,252 project loan.** Storage Deluxe is a 64,515-square-foot industrial building in Queens, New York that was converted into a self-storage facility containing approximately 1,038 units. State Street already holds ownership rights in two loans relating to this property, which was also the subject of the Fifth Stipulation agreed to by the parties and entered by the Court.

- Seaport Center: **$6,429,841 mortgage.** Seaport Center is a 465,000-square-foot, 9-story Class A/B office building in the Seaport District area of downtown Boston. State Street holds ownership rights in another loan relating to this property, which is also the subject of the Seventh Stipulation agreed to by the parties and entered by the Court.

19. The Exchange Agreement also will provide that any funding the Debtors advance from May 1, 2009 until closing with respect to the loans that are the subject of the

Exchange Agreement will be credited to the Debtors at closing.  In addition, the Exchange Agreement will contain various representations, warranties, and covenants of each party.

20. The Debtors are sophisticated players in the global financial marketplace with significant experience in real estate valuation and underwriting.  The Debtors' reasoned judgments about the value of the assets exchanged under the Exchange Agreement are supported by prevailing marketplace values and by reasonable perceptions about the potential growth and risks associated with those assets.  Specifically, the Debtors' experienced personnel have considered the value of the assets exchanged under the Exchange Agreement as compared to comparable assets in the market and general market trends, and taken into account the advantages to the Debtors of holding a greater portion of the debt related to the underlying assets.  The Debtors, in reliance on their careful review and experience, have concluded that the costs to the Debtors are fair in relation to the benefits obtained by the Debtors under the terms of the proposed Exchange Agreement.

### Relief Requested

21. The Debtors request the entry of the proposed Order, pursuant to Bankruptcy Rule 9019, approving the Exchange Agreement and authorizing the Debtors to complete the acts contemplated thereby.  As set forth more fully below, the Debtors' decision to enter into the Exchange Agreement falls within the range of reasonableness and is in the best interests of the Debtors, their estates, and creditors.  As such, the relief requested in this Motion should be granted.

### The Controlling Legal Standard

22. Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  In granting a motion pursuant to Rule 9019(a), a court

must find that the proposed compromise is fair and equitable and is in the best interests of the estate.  See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); Fisher v. Pereira (In re 47-49 Charles St., Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997); In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994).

23. The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court.  See Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994). It is the responsibility of a court to examine a compromise and determine whether it "falls below the lowest point in the range of reasonableness."  Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983); In re Spielfogel, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements."  In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

24. Bankruptcy courts have applied the following factors in determining whether a settlement or compromise should be approved:  (i) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (ii) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; (iii) the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement; and (iv) the extent to which the settlement is truly the product of arm's-length bargaining and not the product of fraud or collusion.  See Anderson, 390 U.S. at 424 ("There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated."); In

re Ashford Hotels, Ltd., 226 B.R. 797, 804 (Bankr. S.D.N.Y. 1998); In re Best Prods. Co., 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994).

25. While a court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," Anderson, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983), or conduct a full independent investigation. In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991). "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact…. The court need only canvass the settlement to determine whether it is within the acceptable range of reasonableness." Nellis, 165 B.R. at 123 (internal citations omitted).

26. The court may give weight to the informed judgment of the debtor that a compromise is fair and equitable. In re Purofied Down Prods. Corp., 150 B.R. 519, 522 (S.D.N.Y. 1993); accord In re Ashford Hotels Ltd., 226 B.R. at 802 ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness…. If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

**The Exchange Agreement Should Be Approved Because It is Fair and Equitable and is in the Best Interests of the Debtors, their Estates, and Creditors**

27. The Exchange Agreement satisfies the standard for approval. Under the terms of the Exchange Agreement, the Debtors will receive loan positions from State Street that relate to four assets: (i) Carillon; (ii) 237 Park Avenue; (iii) Archstone A; and (iv) Archstone B. The Debtors already own an equity interest or some level of debt with respect to each of the four above assets and will be in a better position to realize value in the assets by acquiring State Street's interests therein. By enabling the Debtors to consolidate their ownership in the various

portions of the capitalization of these assets, the Exchange Agreement serves to protect the loan positions already held by the Debtors. Thus, the exchanges contemplated under the Exchange Agreement add value to the estates and are therefore in the best interests of the Debtors and their creditors. Specifically, the Exchange Agreement will benefit the Debtors in the following ways:

 a. The Debtors' acquisition of the $104,742,224 mezzanine loan associated with the Carillon project will enable the Debtors to implement their business plan for this asset without any interference from a third party mezzanine lender with conflicting interests. Moreover, the acquisition of the $104,742,224 mezzanine loan improves the Debtors' ability to recover under the construction loans held by LBHI and its indirect non-debtor subsidiary, LB Carillon Construction LLC, as set forth more fully in its Motion Pursuant to Sections 105(a) and 363(b)(1) of the Bankruptcy Code Authorizing Lehman Brothers Holdings Inc. To Enter Into Mortgage Purchase Agreement, filed May 14, 2009 in Chapter 11 Case No. 08-13555 (JMP) [Docket No. 3570].

 b. The Debtors' acquisition of the $220,723,825 loan associated with 237 Park Avenue will add value to the estates. The Debtors currently hold a $225 million Senior Mezzanine Loan, which is currently senior to State Street's rights under this $220,723,825 loan. To best preserve the value of this Senior Mezzanine Loan, the Debtors seek to consolidate ownership by acquiring the $220,723,825 loan.

 c. The Debtors' acquisition of State Street's $1,998,821 and $5,699,913 interests in the Archstone A & B (Easy Living A & B) mezzanine loan tranches will consolidate the Debtors' ownership of the mezzanine loans associated with this project. As a result, the Debtors will no longer need to make accommodations for State Street's small interest, thereby facilitating implementation of the overall business plan for the project.

 28. The Exchange Agreement resolves certain of the disputes between the parties with respect to 4 of the 37 Purchased Assets. See Compl. at ¶ 134.[4] While the claims raised in the Adversary Proceeding will not be resolved entirely by the Exchange Agreement, the exchange will resolve any disputes pertaining to these particular assets and will enable the Debtors to avoid protracted, distracting, and potentially costly litigation related to these disputes.

---

[4] The parties also have been able to successfully resolve certain other disputes raised in the Adversary Proceeding pursuant to various stipulations and orders. See infra at n.1.

Moreover, resolving State Street's claims against LCPI in the Adversary Proceeding through the Exchange Agreement as to these particular assets will enable the Debtors to avoid any further complexity, delay, and uncertainty related to the current projects associated with the above-referenced assets.

29.     In addition, although the Debtors believe LCPI has defenses in the Adversary Proceeding, the results of litigation are never guaranteed, and further, this litigation would be costly and require significant expenditures of both time and resources by the parties. Not only is there a risk that LCPI may be unsuccessful and lose its rights and ownership in these assets in the Adversary Proceeding – thereby weakening the Debtors' ability to realize value in the unchallenged portions of the loans they already own – but the Court could also award State Street some form of monetary relief that could adversely impact the Debtors' estates.  Thus, recoveries for creditors could be reduced if the Exchange Agreement is not approved and State Street succeeds in the Adversary Proceeding as to these assets.  In contrast, if the Court approves the Exchange Agreement, the Debtors would obtain the benefit of the withdrawal of certain of State Street's claims in the Adversary Proceeding related to the assets exchanged under the Exchange Agreement, as set forth above.

30.     The proposed exchange will allow the Debtors to achieve their objectives without sacrificing any assets that are critical to the estates' goals of maximizing value for creditors.  Apart from the significant litigation risks and costs that will be avoided, the Exchange Agreement should be approved for the additional reason that what Debtors are receiving in the exchange – portions of the capitalization of assets in which they have more senior positions – substantially outweighs what Debtors are giving in the exchange – portions of the capitalization of assets in which they do *not* hold any senior interests.

31.  Importantly, the Debtors have negotiated the Exchange Agreement at arm's-length to come to a fair resolution regarding LCPI's alleged default of the Repurchase Agreement. The Debtors believe the Exchange Agreement is reasonable, in the best interests of their estates and their creditors, and well above the lowest point in the range of reasonableness. Accordingly, the Exchange Agreement should be approved.

### Notice

32.  No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) attorneys for State Street Bank and Trust Company; and (vii) all parties who have requested notice in these chapter 11 cases.

33.  No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: May 15, 2009
      New York, New York

                           /s/ Shai Y. Waisman
                          Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>    Debtor. | Chapter 11 Case No.<br>08-13555 (JMP)<br>(Jointly Administered) |
| In re<br><br>LEHMAN COMMERCIAL PAPER INC.,<br><br>    Debtor. | Chapter 11 Case No.<br>08-13900 (JMP) |
| STATE STREET BANK AND TRUST COMPANY,<br><br>    Plaintiff,<br><br>        v.<br><br>LEHMAN COMMERCIAL PAPER INC.,<br><br>    Defendant. | Adv. Proc. No. 08-01743 |

**ORDER GRANTING DEBTORS' MOTION
PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE FOR APPROVAL OF AN EXCHANGE
AGREEMENT WITH STATE STREET BANK AND TRUST COMPANY**

Upon the motion, dated May 15, 2009 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI"), as debtor and debtor in possession (together with its affiliated debtors in the above-referenced chapter 11 cases, including Lehman Commercial Paper Inc. ("LCPI"), the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for approval of an exchange agreement (the "Exchange Agreement") with State Street Bank and Trust Company regarding certain disputes relating to a May 1, 2007 Master Repurchase

Agreement, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) attorneys for State Street Bank and Trust Company; (iv) attorneys for LH 1440, L.L.C.; and (v) all parties who have requested notice in these chapter 11 cases; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby,

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, the Debtors' execution of the Exchange Agreement is approved; and it is further

ORDERED that the Debtors are authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the Exchange Agreement and perform any and all obligations contemplated therein; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: June __, 2009
      New York, New York

                                                      _____
                                                     JAMES M. PECK
                                                     UNITED STATES BANKRUPTCY JUDGE