WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard A. Rothman, Esq.
Lori R. Fife, Esq.
David R. Fertig, Esq.
Robert J. Lemons, Esq.

*Attorneys for Debtor and Plaintiff LBSF*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC.,<br><br>                                              Debtor. | Chapter 11 Case<br>No. 08-13555 (JMP)<br><br>(Jointly Administered) |
| LEHMAN BROTHERS SPECIAL FINANCING INC.,<br><br>                                              Plaintiff,<br><br>v.<br><br>METROPOLITAN WEST ASSET MANAGEMENT, LLC,<br>and METROPOLITAN WEST LOW DURATION BOND<br>FUND,<br><br>                                              Defendants. | Adv. Proc. No. 09-_____ |

## ADVERSARY COMPLAINT

Plaintiff Lehman Brothers Special Financing Inc. ("LBSF"), as debtor in

possession, as and for its Adversary Complaint against Defendants Metropolitan West

Asset Management, LLC ("MetWest") and Metropolitan West Low Duration Bond

Fund (the "Low Duration Fund," and collectively with MetWest, the "Defendants"), hereby

alleges as follows:

## INTRODUCTION

1.      This action arises from Defendants' failure to pay more than $17 million admittedly owing to LBSF under a Swap Agreement, as defined and more fully described below, among LBSF, MetWest and the Low Duration Fund.

2.      Defendants repeatedly have acknowledged LBSF's entitlement to the payment of more than $38 million under the Swap Agreement, both orally and in writing. Defendants, however, paid to LBSF less than $22 million, and wrongfully have withheld payment of the remaining $17+ million on the basis of a purported but patently unlawful setoff against obligations allegedly owing to the Low Duration Fund by an entity *other than LBSF* under one or more *wholly separate and unrelated transactions*.

3.      More specifically, Defendants unlawfully have purported to setoff a substantial portion of the Low Duration Fund's *admitted* payment obligations to LBSF under the Swap Agreement against certain payment obligations allegedly owing to the Low Duration Fund by Lehman Brothers Holdings Inc. ("LBHI"), a debtor that happens to be the indirect parent of LBSF but which is *a wholly separate and legally distinct entity*, in connection with one or more transactions between LBHI and the Low Duration Fund relating to certain bonds that are totally unrelated to the Swap Agreement.

4.      Defendants' wrongful setoff is not permitted by, and in fact constitutes a clear breach of, the Swap Agreement. Moreover, Defendants' wrongful setoff is unequivocally prohibited by the Bankruptcy Code.

5.      In addition, Defendants' assertion and exercise of the wrongful setoff constituted, and continues to constitute, a knowing and willful violation of the automatic stay extant under 11 U.S.C. § 362(a).

6.    Accordingly, LBSF brings this action to obtain: (a) a declaration establishing the unlawfulness of Defendants' purported setoff and Defendants' obligation to immediately pay to LBSF the balance of the $38 million the Low Duration Fund admittedly owes to LBSF under the terms of the Swap Agreement; (b) a judgment finding the Low Duration Fund in breach of the Swap Agreement and awarding LBSF the full amount to which it is entitled thereunder; and (c) awarding sanctions against Defendants, and monetary and punitive damages to LBSF, on account of Defendants' knowing, willful and contemptuous violation of the automatic stay.

## JURISDICTION AND VENUE

7.    This is a civil proceeding arising in a case under the Bankruptcy Code, § 11 U.S.C. 101, *et seq.*, within the meaning of 28 U.S.C. § 1334. It is properly brought as an adversary proceeding pursuant to Bankruptcy Rule 7001.

8.    This Court has jurisdiction to entertain the claims asserted herein pursuant to 28 U.S.C. § 1334(b) (civil cases arising under title 11), 28 U.S.C. § 1331(e)(1) (district court's exclusive jurisdiction over property of the estate) and 28 U.S.C. § 157(b) (core proceedings arising under title 11).

9.    This is a core proceeding under 28 U.S.C. § 157(b).

10.    Venue is proper in this district under 28 U.S.C. § 1409 and pursuant to the terms of § 13(b)(ii) of that certain Master Agreement by and among LBSF, MetWest and the Low Duration Fund (as more fully described below).

11.    This Court has jurisdiction over MetWest and the Low Duration Fund pursuant to, <u>inter alia</u>, § 13(b)(i) of that certain Master Agreement by and among

LBSF, MetWest and the Low Duration Fund (as more fully described below) and Part 4(i) of the Schedule thereto (as more fully described below).

## PARTIES

12.    Commencing on September 15, 2008 and periodically thereafter (as applicable the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). LBSF commenced its chapter 11 case on October 3, 2008. LBSF's chapter 11 case has been consolidated with LBHI's chapter 11 case for procedural purposes only, and those cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). LBSF has its principal place of business located at 1271 Sixth Avenue, New York, New York 10020 and is authorized to operate its businesses and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13.    MetWest is a limited liability company organized and existing under the laws of the State of California with its principal place of business at 11766 Wilshire Boulevard, Suite 1580, Los Angeles, California 90025. At all times relevant hereto, MetWest operated as an investment management firm and/or as an investment adviser registered with the United States Securities and Exchange Commission under the Investment Advisers Act of 1940, managing both mutual funds (including the Low Duration Fund) and separate funds or accounts for institutional investors.

14.    The Low Duration Fund is a portfolio of The Metropolitan West Funds, an open-end management investment company organized as a Delaware Statutory Trust on December 9, 1996 and registered under the Investment Company Act of 1940.

Pursuant to an Investment Management Agreement dated as of May 19, 2003 (the "MetWest Trading Authorization"), MetWest is, and at all relevant times was, duly authorized to act as Investment Manager and Advisor to, as agent for, and to enter into and confirm transactions (including the Swap Agreement as defined below) on behalf of, the Low Duration Fund.

## FACTUAL ALLEGATIONS

**A.     The Swap Agreement And The Related Derivative Transactions Between LBSF, MetWest And The Low Duration Fund.**

15.     On or about June 25, 2004, MetWest, on behalf of and in its capacity as duly authorized investment manager and agent for the Low Duration Fund, entered into an ISDA Master Agreement, dated as of June 25, 2004, with LBSF (as amended by Amendment Agreement dated as of July 24, 2008, the "Master Agreement"). At or about the same time, MetWest, on behalf of and in its capacity as duly authorized investment manager and agent for the Low Duration Fund, also executed: (i) that certain Schedule to the Master Agreement, also dated as of June 25, 2004 (the "Schedule"); (ii) that certain Credit Support Annex to the Schedule, also dated as of June 25, 2004 (the "Credit Support Annex"); (iii) that certain Statement of Elections and Variables to the Credit Support Annex, also dated as of June 25, 2004 (the "E&V Statement"); and (iv) that certain Collateral Account Control Agreement, dated as of June 25, 2004, among the Fund, LBSF and The Bank of New York (the "Collateral Agreement" and, collectively with the Master Agreement, the Schedule, the Credit Support Annex and the E&V Statement, the "Swap Agreement"). A true and correct copy of the Swap Agreement is annexed hereto as **Exhibit A**.

16.    By its terms, the Swap Agreement governs various derivative transactions (*e.g.*, swaps, options, forwards, etc.) between LBSF and the Low Duration Fund (each a "Transaction"), each of which were memorialized by documents or other confirming evidence (each a "Confirmation") exchanged between LBSF and MetWest. See Exhibit A, Master Agreement at p. 1.

17.    By its terms, the Swap Agreement provides that MetWest has duly been granted, and possesses, "full discretionary power and authority to make investment decisions for, in the name of, and on behalf of [the Low Duration Fund], including without limitation the power and authority to enter into Transactions as the agent for [the Low Duration Fund] and to advise and direct [the Low Duration Fund] to enter into [Swap Agreement] and Transactions and to execute and deliver Confirmations in connection therewith." See Exhibit A, Schedule at §§ 5(q), 5(t).  In addition, the Swap Agreement provides that LBSF is "entitled to rely conclusively upon any request, instruction, certificate, opinion, or other document which [LBSF] reasonably believe[s] to be genuine furnished to [LBSF] by an employee or agent of [MetWest] in connection with th[e] [Swap Agreement] and the Transactions...." Id. at § 5(q).

18.    Between June 25, 2004 and September 16, 2008, LBSF and the Low Duration Fund entered a number of Transactions under the Swap Agreement, as evidenced by separate Confirmations exchanged by and between MetWest and LBSF. As of September 16, 2008, a number of those transactions remained open.

**B.      Commencement Of Debtors' Voluntary Chapter 11 Cases And MetWest's Early Termination Of All Outstanding Transactions Entered Into Under The Swap Agreement.**

19.      On September 15, 2008, and periodically thereafter, Lehman Brothers Holdings, Inc. ("LBHI") and certain of its subsidiaries and affiliates commenced in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

20.      LBSF commenced its voluntary case under chapter 11 of the Bankruptcy Code on October 3, 2008.

21.      Among the events that constitute an "Event of Default" under the Swap Agreement are the bankruptcies of LBSF and/or LBHI.  Indeed, LBHI specifically is designated in the Swap Agreement as a "Credit Support Provider" of LBSF, see Schedule, Part 4(g), and Section 5(a)(vii) of the Master Agreement expressly provides that an Event of Default exists with respect to a party to the Swap Agreement whenever, inter alia:

> [t]he party *[or] any Credit Support Provider of such party* …
> becomes insolvent or is unable to pay its debts or fails or admits in
> writing its inability generally to pay its debts as they become due[;]
> … institutes or has instituted against it a proceeding seeking a
> judgment of insolvency of bankruptcy or any other relief under any
> bankruptcy or insolvency law or any other similar law affecting
> creditors' rights[;] … [or] seeks or becomes subject to the
> appointment of an administrator, provisional liquidator,
> conservator, receiver, trustee, custodian, or other similar official
> for it or for all or substantially all its assets ….

See Exhibit A, Master Agreement, at § 5(a)(vii) (emphasis added).

22.      Pursuant to Section 6(a) of the Master Agreement, "[i]f at any time an Event of Default with respect to a party (the 'Defaulting Party') has occurred and is

7

then continuing, the other party (the 'Non-Defaulting Party') may, by … notice to the Defaulting Party …, designate … an Early Termination Date [an 'Early Termination Date'] in respect of all outstanding Transactions [the 'Terminated Transactions']." See Exhibit A, Master Agreement, at § 6(a).

     23.     Upon the occurrence or effective designation of an Early Termination Date, no further payments or deliveries required to be made under Section 2(a)(i) or Section 2(e) of the Master Agreement are required to made in respect of the Terminated Transactions. See Exhibit A, Master Agreement, at § 6(c)(ii). However, "an amount … payable in respect of an Early Termination Date [hereinafter the "Early Termination Payment"] shall be determined pursuant to Section 6(e) [of the Master Agreement]." Id.

     24.     In order to facilitate payment of any Early Termination Payment, the Master Agreement requires that, "[o]n or as soon as reasonably practicable following the occurrence of an Early Termination Date, each party [shall] make the calculations on its part, if any, contemplated by Section 6(e) and [shall] provide to the other party a statement (1) showing, in reasonable detail, such calculations (including all relevant quotations and specifying any amount payable under Section 6(e)) and (2) giving details of the relevant account to which any amount payable to it is to be paid." See Exhibit A, Master Agreement, at § 6(d)(i).

     25.     Pursuant to Section 6(d)(ii) of the Master Agreement, the Early Termination Payment is payable "on the day that notice of the amount payable is effective (in the case of an Early Termination Date which is designated or occurs as a result of an Event of Default)" or "on the day which is two Local Business Days after the

day on which notice of the amount payable is effective (in the case of an Early

Termination Date which is designated as a result of a Termination Event)." See Exhibit

A, Master Agreement, at § 6(d)(ii).

26.    Under the terms of the Master Agreement, any party entitled to

receive an Early Termination Payment also is entitled to receive interest thereon, at the

"Applicable Rate" and calculated on the basis of daily compounding, from (and

including) the relevant Early Termination Date to (but excluding) the date the Early

Termination Payment is actually paid (hereinafter "Accrued Interest").  See Exhibit A,

Master Agreement, at § 6(d)(ii).

27.    By letter dated September 16, 2008 and delivered to LBSF on or

about September 17, 2008 (hereinafter the "Notice Of Early Termination"), MetWest, on

behalf of the Low Duration Fund, asserted the occurrence of one or more events that

constitute an Event of Default under the Swap Agreement, including the bankruptcy of

(and/or filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code

by) LBHI, and notified LBSF of the Low Duration Fund's asserted right and decision to

terminate all outstanding Transactions pursuant to Section 6(a) of the Master Agreement.

A true and correct copy of the Notice Of Early Termination is annexed hereto as **Exhibit**

**B**.

28.    In addition, MetWest also asserted in the Notice of Early

Termination a right to designate an Early Termination Date under Sections 6(a) and/or

6(b)(iv) of the Master Agreement as a result of: (a) Events of Default allegedly existing

under Sections 5(a)(i), 5(a)(ii), 5(a)(iii), 5(a)(v) and 5(a)(vi) of the Master Agreement; (b)

Events of Default allegedly existing under Paragraphs 7(i), 7(ii) and 7(iii) of the Credit

Support Annex; and (c) one or more allegedly existing Termination Events, including an

Additional Termination Event pursuant to Section 5(b)(v) of the Master Agreement. <u>See</u>

<u>Exhibit B</u>.

29.    In its Notice of Early Termination, MetWest, on behalf of the Low

Duration Fund, purported to designate September 16, 2008 as an Early Termination Date

"with respect to all outstanding Transactions." <u>See</u> <u>Exhibit B</u>.

30.    Thereafter, on or about September 23, 2008, MetWest, ostensibly

in accordance with Section 6(d)(i) of the Master Agreement, caused to be delivered to

LBSF a letter dated September 19, 2008 (hereinafter the "<u>Calculation Statement</u>"),

pursuant to which MetWest, on behalf of the Low Duration Fund, purported to provide

the calculations and information required to be provided by the Low Duration Fund

pursuant to Section 6(d)(i) of the Master Agreement.  A true and correct copy of the

Calculation Statement is annexed hereto as **Exhibit C.**

31.    Subsequently, by letter dated September 19, 2008 and delivered to

LBSF on or about September 23, 2008 (hereinafter the "<u>Revised Calculation Statement</u>"),

and by separate letter dated September 19, 2008 and delivered to LBSF on or about

December 9, 2008 (the "<u>Second Revised Calculation Statement</u>"), MetWest, on behalf of

the Low Duration Fund, purported to provide "replacement" versions of the calculations

and information required to be provided by the Low Duration Fund under Section 6(d) of

the Master Agreement, revised as of September 22, 2008 and December 5, 2008,

respectively.  True and correct copies of the Revised Calculation Statement and the

Second Revised Calculation Statement are annexed hereto as **Exhibits D and E**,

respectively.

32.     In the Second Revised Calculation Statement, MetWest, on behalf of the Low Duration Fund, acknowledged that LBSF is entitled to an Early Termination Payment under Section 6(e) of the Master Agreement in the amount of thirty-eight million, six-hundred eighty-three thousand, nine-hundred forty-four U.S. dollars and fifty-two cents ($38,683,944.52).  See Exhibit E at Exh. B, Bates No. 1139, 1143.

**C.     Defendants' Wrongful Setoff And Their Continuing Failure And Refusal To Pay LBSF The Contractually Required Early Termination Payment.**

33.     By letters dated December 2, 2008 and December 17, 2008,  true and correct copies of which are annexed hereto as **Exhibit F** (the "Initial Demand Letter" and the "Second Demand Letter"), LBSF advised MetWest that it was not, at that time, able to verify the calculations set forth in the Calculation Statement, the Revised Calculation Statement, and the Second Revised Calculation Statement, or Defendants' assertion regarding the value of the Early Termination Payment as alleged therein. Nevertheless, LBSF provided MetWest with wire and other settlement instructions, and offered to accept – and demanded – immediate payment of the Early Termination Payment acknowledged in the Calculation Statement and Revised Calculation Statement, plus Accrued Interest thereon, subject to a reservation of LBSF's right to demand further payment from MetWest and the Low Duration Fund in the event LBSF subsequently determined that it was entitled to an even greater Early Termination Payment in accordance with Section 6(e) of the Master Agreement.  See Exhibit F.

34.     Notwithstanding LBSF's demand, and despite Defendants' own acknowledgement that LBSF was entitled to an Early Termination Payment in the amount acknowledged in the Calculation Statement, the Revised Calculation Statement,

and the Second Revised Calculation Statement, Defendants failed and refused to pay the

Early Termination Payment to LBSF on and after December 2, 2008.  Instead, in oral and

written communications with representatives of LBSF on and after December 2, 2008

MetWest, on behalf of the Low Duration Fund, asserted a right to setoff the Early

Termination Payment *admitted* by Defendants to be due and payable to LBSF against

certain amounts allegedly owed to the Low Duration Fund by one or more entities *other*

*than* LBSF in connection with transactions between *such other entities* and the Low

Duration Fund relating to certain bonds that were totally unrelated to the Swap

Agreement.

35.    As reflected in various spreadsheets provided by MetWest to

LBSF, a true and correct copy of the most recent of which is annexed hereto as **Exhibit**

**G**, MetWest, on behalf of the Low Duration Fund, asserted a right to setoff against the

Early Termination Payment the sum of seventeen million, three-hundred nine thousand

U.S. dollars ($17,309,000.00), which, according to MetWest, represents the principal

amounts allegedly outstanding on, or par value of, four separate corporate bonds issued

by LBHI to the Low Duration Fund having maturity dates of December 23, 2008, June

20, 2016, November 7, 2016, and February 16, 2017, respectively (collectively, the

"LBHI Bonds").  See Exhibit G at pp. 1, 5.

36.    In various oral and written communications with representatives of

MetWest, including by letter dated March 17, 2009, a true and correct copy of which is

annexed hereto as **Exhibit H** (the "Final Demand Letter"), LBSF advised MetWest, on

behalf of the Low Duration Fund, that the purported setoff described in Paragraph 41

hereinabove (hereafter the "Wrongful Setoff") is unlawful and in violation of both the

terms of the Swap Agreement and the Bankruptcy Code. See Exhibit H. Accordingly, LBSF reiterated its demand for immediate payment, in full, of the Early Termination Payment (as calculated by Defendants in the Second Revised Calculation Statement) and all Accrued Interest thereon in accordance with, and as provided for by, Section 6(d)(ii) of the Master Agreement. Id.

37.    Despite LBSF's unequivocal demand in the Final Demand Letter, MetWest, on behalf of the Low Duration Fund, persisted – and continues to persist – in its failure and refusal to pay to LBSF the full amount of the Early Termination Payment and all Accrued Interest thereon, calculated in accordance with the Master Agreement. Indeed, by letter dated April 2, 2009 a true and correct copy of which is annexed hereto as **Exhibit I**, MetWest, through its outside counsel and on behalf of the Low Duration Fund, advised LBSF that it would "initiate wire transactions beginning Wednesday, April 15, 2009, using the wire instructions specified in [the Final Demand Letter]," but that it would wire only the sum of twenty-one million, three-hundred seventy-four thousand, nine-hundred forty-four U.S. dollars and fifty-two cents ($21,374,944.52), an amount that represents the balance of the Early Termination Payment calculated by MetWest to be due and owing to LBSF *after giving effect to the Wrongful Setoff.* See Exhibit I, at p. 2 and Schedule A thereto.

38.    Subsequently, on April 15, 2009, as evidenced by a confirmatory e-mail dated as of that same date from MetWest's Vice President and Operations Manager, a true and correct copy of which is annexed hereto as **Exhibit J**, MetWest, on behalf of the Low Duration Fund, caused to be wired to LBSF the sum of twenty-one million, three-hundred seventy-four thousand, nine-hundred forty-four U.S. dollars and

fifty-two cents ($21,374,944.52) rather than the full amount of the Early Termination

Payment admittedly owing to LBSF (i.e., the sum of thirty-eight million, six-hundred

eighty-three thousand, nine-hundred forty-four U.S. dollars and fifty-two cents

($38,683,944.52)), thereby formally, unilaterally and unlawfully exercising the Wrongful

Setoff. Neither MetWest nor the Low Duration Fund has paid *any* portion of Accrued

Interest owing to LBSF under the clear terms of the Swap Agreement.

> **D.    The Wrongful Setoff Is Not Permitted By The Terms Of The Swap Agreement Or The Bankruptcy Code, And Is Unquestionably Unlawful.**

39.    Under the Swap Agreement, any Early Termination Payment is

"subject to any Set-off." See Exhibit A, Master Agreement, at §§ 6(e). As used in

Section 6(e) of the Master Agreement, however, the term "Set-off" refers only to any

"set-off, offset ... or similar right ... arising under this [Swap] Agreement, another

contract, applicable law or otherwise." See Exhibit A, Master Agreement, at §§ 6(e), 14

(parentheses omitted). Neither MetWest nor the Low Duration Fund has any setoff,

offset or similar right under the Swap Agreement, under applicable law or otherwise.

40.    There exists a lack of mutuality between (a) the Low Duration

Fund's obligation to pay the Early Termination Payment (and all accrued interest

thereon) to LBSF and (b) LBHI's alleged obligations to the Low Duration Fund in

connection with the LBHI Bonds. Accordingly, New York law, which governs the

parties' rights and obligations under the Swap Agreement, see Exhibit A, Master

Agreement, at § 13(a); id., Schedule, Part 4(h), does not provide MetWest or the Low

Duration Fund with *any right under applicable non-bankruptcy law* to setoff the Low

Duration Fund's obligation to pay LBSF the Early Termination Payment (plus all accrued

interest thereon) against LBHI's alleged payment obligations to the Low Duration Fund in relation to the LBHI Bonds.

41.     Likewise, the Swap Agreement does not provide MetWest or the Low Duration Fund with any *contractual* right to setoff the Low Duration Fund's obligation to pay LBSF the Early Termination Payment (plus all Accrued Interest thereon) against LBHI's alleged payment obligations to the Low Duration Fund in relation to the LBHI Bonds because the right of setoff provided for under the Swap Agreement is expressly limited to the right of the "Non-Defaulting Party" (i.e., the Low Duration Fund), and *its* affiliates, to setoff obligations owed *by the "Defaulting Party"* (i.e., LBSF); the Swap Agreement does not permit the Non-Defaulting Party to setoff its obligations to the Defaulting Party against obligations allegedly owed to it by *affiliates of* the Defaulting Party (e.g., LBHI). Indeed, pursuant to Part 5(i) of the Schedule, Section 6(f)(1) of the Master Agreement, which specifically addresses the parties' contractual rights of "Set-off" under the Swap Agreement, expressly provides, in relevant part:

> **Set-off**
>
> In addition to any rights of set-off a party may have as a matter of law or otherwise, upon the occurrence of an Event of Default or an Additional Termination Event and the designation of an Early Termination Date pursuant to Section 6 of the Agreement with respect to a party ("X") [i.e., LBSF], the other party ("Y") [i.e., the Low Duration Fund] will have the right (but not be obliged) without prior notice to X or any other person to set-off or apply any ***obligation of X*** owed to Y (and to any Affiliate of Y) (whether or not matured or contingent and whether or not arising under this Agreement, and regardless of the currency, place of payment or booking office of the obligation) against any obligation of Y (and of any Affiliate of Y) owed to X (whether or not matured or contingent and whether or not arising under this Agreement, and regardless of the currency, place of payment or booking office of the obligation.)

See Exhibit A, Schedule, at Part 5(i) (emphasis added).

42.    Furthermore, because the Swap Agreement does not provide MetWest or the Low Duration Fund with any *contractual* right to setoff the Low Duration Fund's obligation to pay the Early Termination Payment (plus all accrued interest thereon) against LBHI's alleged payment obligations in relation to the LBHI Bonds, the Wrongful Setoff cannot even arguably fall within the scope of the "safe harbor" provision embodied in section 560 of the Bankruptcy Code. See 11 U.S.C § 560. Accordingly, pursuant to sections 362(a)(3), 362(a)(6) and 362(a)(7) of the Bankruptcy Code, even if the Wrongful Setoff were permissible (which it is not), Defendants would have been required to obtain relief from the automatic stay extant under section 362 of the Bankruptcy Code (the "Automatic Stay") in order to exercise the Wrongful Setoff.

43.    Prior to exercising the Wrongful Setoff and retaining the Early Termination Payment admittedly due and payable to LBSF under Section 6(e) of the Master Agreement (or any portion thereof or of interest accrued thereon), neither MetWest nor the Low Duration Fund sought or obtained relief from the Automatic Stay.

44.    Moreover, relief from the Automatic Stay would not be appropriate inasmuch as the Wrongful Setoff would be prohibited by section 553 of the Bankruptcy Code since: (a) neither MetWest nor the Low Duration Fund has any right under the Swap Agreement or applicable non-bankruptcy law to exercise the Wrongful Setoff; and (b) even if such a right existed under applicable non-bankruptcy law or the Swap Agreement, the Wrongful Setoff would nevertheless be precluded by section 553's separate and independent requirement that any setoff against obligations owed to a debtor

16

involve "mutual debts" between the creditor who seeks to exercise the setoff and *the debtor*. See 11 U.S.C. § 553(a).

45.     Prior to exercising the Wrongful Setoff and/or retaining the Early Termination Payment admittedly due and payable to LBSF under Section 6(e) of the Master Agreement (or any portion thereof or of interest accrued thereon), MetWest and the Low Duration Fund had notice and actual knowledge of LBSF's chapter 11 case by virtue of, inter alia: (a) the public and widely-reported filings made by LBSF in the Bankruptcy Court on and after October 3, 2008; and (b) various oral and written communications between representatives of LBSF and MetWest, including the Initial Demand Letter, the Second Demand Letter, the Final Demand Letter and the settlement instructions provided to MetWest therewith.

46.     Defendants' exercise of the Wrongful Setoff and/or their retention of the Early Termination Payment admittedly due and payable to LBSF under Section 6(e) of the Master Agreement (or any portion thereof or of Accrued Interest thereon) thus constituted knowing and willful violations of, and continues to violate, both the terms of the Swap Agreement and the Automatic Stay.

## COUNT I

**(Declaratory Judgment That The Wrongful Setoff Is Not Permitted
Under The Terms Of The Swap Agreement Or The Bankruptcy Code,
And That The Low Duration Fund Is Legally Obligated Immediately To Pay To
LBSF, In Full, The Early Termination Payment And All Accrued Interest Thereon)**

47.     LBSF repeats and realleges each and every allegation set forth in paragraphs 1 through 46 as if fully set forth herein.

48.     As alleged hereinabove, Defendants admit that, but for the Wrongful Setoff, the Low Duration Fund owes LBSF an Early Termination Payment equal to thirty-eight million, six-hundred eighty-three thousand, nine-hundred forty-four U.S. dollars and fifty-two cents ($38,683,944.52).

49.     Pursuant to the express and unequivocal terms of Section 6(d)(ii) of the Master Agreement, LBSF also is entitled to Accrued Interest on the Early Termination Payment, at the Applicable Rate and calculated on the basis of daily compounding, from (and including) September 16, 2008 to (but excluding) the date the Early Termination Payment is actually paid.

50.     To date, MetWest, on behalf of the Low Duration Fund, has paid only a portion of the Early Termination Payment – to wit, the sum of twenty-one million, three-hundred seventy-four thousand, nine-hundred forty-four U.S. dollars and fifty-two cents ($21,374,944.52), representing the so-called "net" amount of the Early Termination Payment after giving effect to the Wrongful Setoff, which was remitted to LBSF, via wire transfer, on April 15, 2009.

51.     MetWest and the Low Duration Fund have failed and refused to pay the balance of the Early Termination Payment on the ostensible ground that the Low Duration Fund was, and is, entitled to exercise the Wrongful Setoff, which MetWest actually exercised on behalf of the Low Duration Fund on April 15, 2009.

52.     LBSF has denied and continues to deny the lawfulness and validity of the Wrongful Setoff and the ability of Defendants to exercise the Wrongful Setoff under the terms of the Swap Agreement and the Bankruptcy Code.

53.    By virtue of the foregoing, there now exists an actual, justiciable controversy between LBSF and Defendants relating to their respective legal rights, duties, and obligations under the Swap Agreement and the Bankruptcy Code, which controversy is now ripe for adjudication pursuant to 28 U.S.C. § 2201.

54.    As alleged hereinabove, the contractual right of setoff provided for in the Swap Agreement is limited to the right of the Low Duration Fund to setoff obligations owed by the Low Duration Fund (or its affiliates) to LBSF against obligations owed to the Low Duration Fund (or its affiliates) *by LBSF*.

55.    As alleged hereinabove, the Wrongful Setoff did not involve a purported setoff against obligations allegedly owed to the Low Duration Fund *by LBSF* but, instead, it involved a purported a setoff of obligations admittedly owed by the Low Duration Fund to LBSF against obligations allegedly owed to the Low Duration Fund *by LBHI*.

56.    Accordingly, the Wrongful Setoff is not permitted by, and constitutes a violation of, the Swap Agreement.

57.    Furthermore, section 553(a) of the Bankruptcy Code provides, in relevant part, that:

> [e]xcept as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

11 U.S.C. §553.

58.     By its terms, section 553 of the Bankruptcy Code does not create a right of setoff; it merely preserves any right of setoff that a creditor of a debtor may have under applicable non-bankruptcy law.

59.     Setoff is appropriate and permissible under section 553 of the Bankruptcy Code only when a creditor enjoys both an independent right of setoff under applicable non-bankruptcy law and satisfies the further Bankruptcy Code-imposed requirements and limitations set forth in section 553.

60.     By its terms, section 553 of the Bankruptcy Code expressly imposes the requirement that any debt sought to be setoff against a debt owed to a debtor be a "mutual debt" – i.e., a debt owing *by the debtor* to the creditor seeking to avail itself of the setoff on the other hand.  Indeed, section 553 expressly preserves only the "right of a creditor to offset a *mutual debt* owing by such creditor *to the debtor* … against a claim of such creditor *against the debtor*:" 11 U.S.C.  § 553(a) (emphasis added).

61.     Mutuality of obligations also is a prerequisite to the right of setoff under New York law, which is the applicable non-bankruptcy law governing the parties' rights and obligations under the Swap Agreement.  See Exhibit A, Master Agreement, at § 13(a); id., Schedule, Part 4(h).

62.     As alleged hereinabove, the Wrongful Setoff does not involve "mutual debts" because it involves an attempt by MetWest, on behalf of the Low Duration Fund, to setoff a debt admittedly owed by the Low Duration Fund *to LBSF* against an alleged claim of the Low Duration Fund *against LBHI*.

63.     Accordingly, the Wrongful Setoff is not permitted by, and constitutes a violation of, section 553 of the Bankruptcy Code.

64.    LBSF thus requests a judgment declaring the rights and obligations of the parties under the Swap Agreement and the Bankruptcy Code, including a declaration that: (a) the Wrongful Setoff is unlawful and not permitted under, and constitutes a violation of, the Swap Agreement; (b) the Wrongful Setoff is unlawful and not permitted under, and constitutes a violation of, the Bankruptcy Code; and (c) the Low Duration Fund is required immediately to pay to LBSF the sum of seventeen million, three-hundred nine thousand U.S. dollars ($17,309,000.00) so as to have paid the full amount of the Early Termination Payment admittedly owed by the Low Duration Fund to LBSF – i.e., the sum of thirty-eight million, six-hundred eighty-three thousand, nine-hundred forty-four U.S. dollars and fifty-two cents ($38,683,944.52) – plus all Accrued Interest thereon, calculated at the Applicable Rate and on the basis of daily compounding from (and including) September 16, 2008 to (but excluding) the date the Early Termination Payment and all Accrued Interest thereon is paid.

## COUNT II

**(Breach Of The Swap Agreement By The Low Duration Fund)**

65.    LBSF repeats and realleges each and every allegation set forth in paragraphs 1 through 46 as if fully set forth herein.

66.    As alleged hereinabove, the Swap Agreement requires the Low Duration Fund to pay to LBSF an Early Termination Payment plus all Accrued Interest thereon, as applicable, upon the designation of an Early Termination Date.

67.    Pursuant to the Notice Of Early Termination, MetWest, on behalf of the Low Duration Fund, designated September 16, 2008 as an Early Termination Date.

68.    As a result of the Notice Of Early Termination, and as acknowledged by Defendants in the Second Revised Calculation Statement, the Low Duration Fund became liable to LBSF for an Early Termination Payment in the amount of thirty-eight million, six-hundred eighty-three thousand, nine-hundred forty-four U.S. dollars and fifty-two cents ($38,683,944.52).

69.    Pursuant to Section 6(d)(ii) of the Master Agreement, said Early Termination Payment became due and owing to LBSF as of September 16, 2008.

70.    In addition, pursuant to Section 6(d)(ii) of the Master Agreement, LBSF is entitled to Accrued Interest on said Early Termination Payment, calculated at the Applicable Rate and on the basis of daily compounding from (and including) September 16, 2008 to (but excluding) the date the Early Termination Payment and all Accrued Interest thereon is paid in full.

71.    All conditions, if any, to payment of the Early Termination Payment and Accrued Interest have been satisfied, and LBSF has made several oral and written demands upon Defendants, including in the Initial Demand Letter, the Second Demand Letter, and the Final Demand Letter, for payment, in full, of the Early Termination Payment and of all Accrued Interest thereon.

72.    Despite LBSF's demands, MetWest, on behalf of the Low Duration Fund, has, to date, paid only a portion of the Early Termination Payment – to wit, the sum of twenty-one million, three-hundred seventy-four thousand, nine-hundred forty-four U.S. dollars and fifty-two cents ($21,374,944.52), representing the so-called "net" amount of the Early Termination Payment after giving effect to the Wrongful Setoff.

73.    Despite LBSF's demands, MetWest, on behalf of the Low Duration Fund has, to date, failed and refused to pay the balance of the Early Termination Payment on the ostensible ground that Defendants were, and are, entitled to exercise the Wrongful Setoff.

74.    As alleged hereinabove, the Wrongful Setoff is not permitted under, and actually violates, the terms of the Swap Agreement.

75.    By exercising the Wrongful Setoff and/or by retaining the Early Termination Payment admittedly due and payable to LBSF under Section 6(e) of the Master Agreement and Accrued Interest thereon (in whole or in part), the Low Duration Fund has breached the Swap Agreement.

76.    LBSF has been damaged as a direct and proximate result of the Low Duration Fund's material breaches of the Swap Agreement.

77.    Accordingly, and by reason of the foregoing, LBSF is entitled to an award of monetary damages in an amount to be determined at trial but, in all events, no less than the sum of seventeen million, three-hundred nine thousand U.S. dollars ($17,309,000.00) plus applicable Accrued Interest on the entire Early Termination payment (i.e., $38,683,944.52), calculated at the Applicable Rate and on the basis of daily compounding, from (and including) September 16, 2008 to (but excluding) the date on which the Early Termination Payment and all Accrued Interest thereon is paid.

## COUNT III

### (Contempt And Sanctions Against Defendants For Willfully Violating The Automatic Stay And Awarding Damages to LBSF)

78.    LBSF repeats and realleges each and every allegation set forth in paragraphs 1 through 46 as if fully set forth herein.

79.     Pursuant to section 362(a)(7) of the Bankruptcy Code, the filing of a voluntary case under chapter 11 of the Bankruptcy Code operates to stay "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor" absent an order of the Bankruptcy Court granting relief from the stay.

80.     Pursuant to section 362(a)(6) of the Bankruptcy Code, the filing of a voluntary case under chapter 11 of the Bankruptcy Code likewise operates to stay "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title" absent an order of the Bankruptcy Court granting relief from the stay.

81.     In addition, pursuant to section 362(a)(3) of the Bankruptcy Code, the filing of a voluntary case under chapter 11 of the Bankruptcy Code likewise operates to stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" absent an order of the Bankruptcy Court granting relief from the stay.

82.     As alleged hereinabove, LBSF commenced a voluntary case under chapter 11 of the Bankruptcy Code on October 3, 2008.

83.     As alleged hereinabove, MetWest, on behalf of the Low Duration Fund, asserted a right to exercise the Wrongful Setoff, and in fact exercised the Wrongful Setoff, subsequent to October 3, 2008.

84.     Prior to exercising the Wrongful Setoff, neither MetWest nor the Low Duration Fund sought, or received from the Bankruptcy Court, relief from the stay imposed by sections 362(a)(3), 362(a)(6) or 362(a)(7) of the Bankruptcy Code.

85.    Defendants' intentional exercise of the Wrongful Setoff constituted, and constitutes, the purported "setoff of [a] debt owing to [LBSF] that arose before the commencement of [LBSF's chapter 11 case] against [a purported] claim against [LBSF]."

86.    Defendants' intentional exercise of the Wrongful Setoff also constituted, and constitutes, an "act to collect, assess, or recover a claim against [LBSF] that arose before the commencement of [LBSF's chapter 11 case]."

87.    The Early Termination Payment and all Accrued Interest thereon constitutes property of LBSF's estate, and Defendants' intentional exercise of the Wrongful Setoff therefore also constituted, and constitutes, an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

88.    Defendants thus violated, and continue to violate, the automatic stay extant under sections 362(a)(3), 362(a)(3) and 362(a)(7) of the Bankruptcy Code by exercising the Wrongful Setoff.

89.    Moreover, Defendants' violation of the automatic stay was and is being done knowingly and willfully, and without any good faith basis, in that, inter alia: (a) Defendants had notice and actual knowledge of LBSF's chapter 11 case and of the existence of the automatic stay by virtue of, among other things, the public and widely-reported filings made by LBSF in the Bankruptcy Court on and after October 3, 2008, and various oral and written communications between representatives of LBSF and MetWest, including the Initial Demand Letter, the Second Demand Letter, the Final Demand Letter and the settlement instructions provided to MetWest therewith; (b) LBSF

advised Defendants, both orally and in writing (including in the Initial Demand Letter, the Second Demand Letter, and in the Final Demand Letter) of both the existence and application of the automatic stay, and of the unlawfulness of the Wrongful Setoff; and (c) the Wrongful Setoff is expressly and unequivocally prohibited both by the terms of the Swap Agreement (including Section 6(f)(i) of the Master Agreement) and by the provisions of the Bankruptcy Code (including by sections 362(a) and 553 thereof), and does not fall within any of the "safe harbor" provisions contained in the Bankruptcy Code (including section 362(b)(17) or section 560).

90.    Accordingly, LBSF is entitled to an order finding MetWest and the Low Duration Fund in contempt and awarding sanctions pursuant to section 105(a) of the Bankruptcy Code.

91.    As a direct and proximate result of Defendants' exercise of the Wrongful Setoff, LBSF has suffered, and continues to suffer, significant damages, including (but not limited to) loss of use of the Early Termination Payment and all Accrued Interest, and the opportunity cost associated therewith, and the incurrence of legal costs and fees (including attorneys' fees and expenses).

92.    Accordingly, pursuant to section 362(k)(1) of the Bankruptcy Code, LBSF is entitled to an award of monetary damages, in an amount to be determined at trial and including (but not limited to) LBSF's actual damages, costs, attorneys' fees and expenses, and an award of punitive damages, on account of Defendants' knowing and willful violation of the automatic stay.

## PRAYER FOR RELIEF

WHEREFORE, LBSF respectfully requests that judgment be entered as follows:

A.    On Count I, declaring that: (i) the Wrongful Setoff is unlawful and not permitted under, and constitutes a violation of, the Swap Agreement; (ii) the Wrongful Setoff is unlawful and not permitted under, and constitutes a violation of, the Bankruptcy Code; and (iii) the Low Duration Fund is required immediately to pay to LBSF no less than the sum of seventeen million, three-hundred nine thousand U.S. dollars ($17,309,000.00) plus Accrued Interest on the entire Early Termination Payment (i.e., on the sum of $38,683,944.52), calculated at the Applicable Rate and on the basis of daily compounding, from (and including) September 16, 2008 to (but excluding) the date on which the Early Termination Payment and all Accrued Interest thereon is paid;

B.    On Count II, awarding LBSF monetary damages in an amount to be determined at trial but, in all events, no less than the sum of seventeen million, three-hundred nine thousand U.S. dollars ($17,309,000.00) plus applicable Accrued Interest on the entire Early Termination Payment (i.e., the sum of $38,683,944.52), calculated at the Applicable Rate and on the basis of daily compounding, from (and including) September 16, 2008 to (but excluding) the date on which the Early Termination Payment and all Accrued Interest thereon is paid.;

C.    On Count III, finding Defendants in contempt for knowingly and willfully violating the Automatic Stay, and awarding sanctions and punitive damages against Defendants pursuant to sections 105(a) and 362(k)(1) of the Bankruptcy Code, as well as monetary damages and punitive damages to LBSF, pursuant to section 362(k)(1)

27

of the Bankruptcy Code, in an amount to be determined at trial but in all events including

all actual damages, costs, and attorneys' fees and expenses incurred by LBSF by reason

of Defendants' knowing and willful violation of the automatic stay; and

D.      For such other and further relief, including interest, costs and

attorneys' fees, as the Court deems just and proper.

Dated: New York, New York
       May 15, 2009

/s/ Robert J. Lemons
Richard A. Rothman, Esq. (RR 0507)
Lori R. Fife (LF 2839)
David R. Fertig, Esq. (DF 5068)
Robert J. Lemons, Esq. (RL 0404)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0019
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Debtor and Plaintiff LBSF*