# EXHIBIT A

## ASSETS

| | |
|---|---|
| Gov & Ag | $40.0 |
| Commercial Paper | 1.1 |
| Mortgages | 2.7 |
| Total Corp Debt | 4.9 |
| Corp Equity | 8.8 |
| Derivatives | 4.5 |
| Cash | 0.7 |
| **Total** | **$62.7** |
| Collateralized ST Agr | 10.0 |
| Receivables | 0.0 |
| Other Assets | 0.0 |
| Inv In Con Subs | 0.0 |
| Due From Subs | 0.0 |
| **Total** | **10.0** |
| **Adj. Total Assets** | **$72.65** |

## LIABILITIES

| | |
|---|---|
| ST Borrowings | $0.0 |
| Gov & Ag | 21.0 |
| Commercial Paper | 0.0 |
| Mortgages | 0.0 |
| Corp Debt | 2.1 |
| Corp Equities | 6.3 |
| Derivatives | 4.5 |
| **Total** | **$33.9** |
| Collateralized ST Fund | 34.5 |
| Payables | 0.0 |
| Deposits | 0.0 |
| Due To Subs | 0.0 |
| Sub Notes | 0.0 |
| **Total** | **34.5** |
| **Total** | **68.4** |
| Cure pmt | 2.25 |
| Comp | 2.0 |
| **Total** | **$72.65** |

9/16/08 – FZDAL

# EXHIBIT B

# LEHMAN BROTHERS HOLDINGS INC.

BRYAN MARSAL
CHIEF EXECUTIVE OFFICER

February 19, 2009

Rich Ricci
Jonathan Hughes
Barclays Capital Inc.
200 Park Avenue
New York, NY 10166

Dear Rich and Jonathan:

I am writing with respect two matters relating to the sale of Lehman Brothers's U.S. and Canadian investment banking and capital markets business to Barclays Capital as to which we need additional information as soon as possible. I'll outline them briefly below.

## I. **Bonus Accrual**

The contract provides, in essence, that Barclays Capital would be responsible for the payment of the accrued bonus amount as of August 31, 2008 for the U.S./Canadian investment banking/capital markets business, and the agreement referenced a balance sheet provided to Barclays Capital indicating that this amount was $2.0 billion. We have now had a chance to conduct a preliminary review of the accrual for bonuses as of August 31, 2008, and it appears that the consolidated global accrual on the books of LBHI as of that date was only $1.3 billion. Although we are continuing our review, it appears that only approximately 55% of the global accrual relates to employees transferred to Barclays Capital. Accordingly, it appears that the liability assumed by Barclays Capital may be closer to $0.7 billion than the $2.0 billion provided for in the transaction.

Given the scale of the discrepancy between what was referenced in the agreement and the actual accrual on the consolidated books of Holdings for the personnel assumed, reconciliation of this discrepancy is critical prior to the payment by Barclays Capital of any bonuses in excess of $0.7 billion. While Barclays Capital should be essentially indifferent from a financial point of view as to whether it pays this amount as bonus or a reduction in the purchase price for the business, this discrepancy is significant for the LBHI estate.

## II. **Cure Amounts**

The September 16th balance sheet initialed by the parties indicated that $2.25 billion was accrued for potential cure costs in relation to contracts to be assumed and assigned post closing. While uncertainties about this number plainly existed prior to closing, to date we understand that approximately only $0.2 billion has been spent on such cures and that the latest estimate of the amount to be ultimately paid is dramatically less than was expected.

Again, given the size of the discrepancy between the September 16th number and the actual projected cure liability, it's important to us that we reconcile and understand the differential.

The above two items are clearly material to the debtor estates and we welcome your assistance in ensuring that our understanding of the books and records of the various referenced estates, and of the sales contract, is correct. You may also have supporting documentation or analyses that explain these discrepancies. If that is not possible, however, we reserve our rights to seek judicial relief based on the material differences between the projected and actual liabilities for these categories of expenses.

We are available to meet at your earliest convenience and would hope that you are available to discuss both of these issues within the next several days.

Best regards,

Bryan Marsal

cc:     Viktor I. Lewkow (Cleary Gottlieb Steen & Hamilton LLP)
        David Leinwand (Cleary Gottlieb Steen & Hamilton LLP)
        Duane McLaughlin (Cleary Gottlieb Steen & Hamilton LLP)
        Mitchell S. Eitel (Sullivan & Cromwell LLP)
        Jay Clayton (Sullivan & Cromwell LLP)


# BARCLAYS CAPITAL

200 Park Avenue
New York, NY 10166
USA

Tel    +1 (212) 412 4000

February 23, 2009

**VIA FACSIMILE**
Bryan Marsal
Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
New York, NY  10020
Fax: (212) 526-2230

Dear Bryan:

I write in response to your February 19, 2009 letter addressed to Rich Ricci and me.

As we have been throughout the course of the transaction, we remain willing to discuss factual issues that may be helpful to you in administering the estate. We note, however, that a number of other parties, including the examiner and the Creditor's Committee, are also undertaking a review of the sale transaction, and we would therefore want our discussions with you to include the topic of how Barclays can avoid addressing queries relating to the APA and the sale on a piecemeal basis.

While we look forward to discussing these factual issues with you, we reject any suggestion that there is a basis for any adjustment to the APA, or additional payments from Barclays to Seller, or that Barclays' interests should otherwise be adversely affected in any way by any supposed "discrepancy" relating to the September 16 schedule. We view your reservation of a supposed right to seek judicial relief as reflecting a serious misunderstanding of the facts and the APA.

Finally, as a housekeeping matter, we note that your letter was directed to the Barclays notice parties set forth in Section 13.7 of the APA. Accordingly, in this response, we have copied the Seller notice parties, with the exception of Steven Berkenfeld, who is now employed by Barclays. We assume it is your intention that you will replace Mr. Berkenfeld as the Seller notice party, but would ask that Seller consider giving Barclays a formal notice so specifying.

Very truly yours,

Jonathan Hughes

cc (via fax):    Rich Ricci, Barclays Capital
Thomas Roberts, Michael Lubowitz and Harvey Miller,
    Weil Gotshal & Manges LLP (Fax: 212-310-8007)
John Finley and Andrew Keller,
    Simpson Thatcher & Bartlett LLP (Fax: 212-455-2502)

Barclays Capital Inc.

# EXHIBIT C

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017-6702
TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306

Direct Number: (212) 326-7838
rwgaffey@jonesday.com

JP636767
125426-600002

April 13, 2009

Lindsee P. Granfield, Esq.
Cleary, Gottlieb, Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006

Jonathan D. Schiller, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Ave., NW
Washington, DC 20015

     Re:    *In re Lehman Brothers Holding Inc., et al.*, Case No. 08-13555 (JMP)

Dear Ms. Granfield and Mr. Schiller:

We are Special Counsel to Lehman Brothers Holdings, Inc. (the "Estate") in the above-captioned chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors and debtors in possession.

We are working on obtaining clarity and understanding of the sale transaction among LBHI, Lehman Brothers Inc. ("LBI") and LB 745 LLC (collectively with LBHI and LBI, "Lehman"), on the one hand, and Barclays Capital Inc. ("Barclays"), on the other hand (the "Lehman-Barclays Transaction"), and to follow-up on requests made by the Estate to Barclays in its letter dated February 19, 2009 to Mr. Hughes. In this regard, the Estate asks that Barclays provide documents responsive to the requests in the attached Schedule A.

It is our hope that we can have expeditious production of the requested materials on a cooperative basis, rather than having to burden Judge Peck with motions. Please let us know by April 20, 2009 whether Barclays will agree to produce on that basis and, if so, when it will be in a position to supply the documents.

It is also likely that, after reviewing the documents, we will want to interview or take testimony from several former Lehman employees we understand are now employed by Barclays, including Steven Berkenfeld, Ian Lowitt, Gerald Donini, Eric Felder, Paul Parker, Ros Stephenson, Jeffrey Weiss, Larry Wieseneck, Steven Hash and Joseph Gatto. We may add others to this list as matters progress but, in the first instance, please let us know whether each of these people is still in the employ, or under contract with, Barclays.

JONES DAY

Lindsee P. Granfield, Esq.
Jonathan D. Schiller, Esq.
April 13, 2009
Page 2

We appreciate your consideration of this matter.

Very truly yours,

Robert W. Gaffey

Attachment

SCHEDULE A

The Estate makes the following requests for the production of documents:

REQUEST NO. 1

All documents concerning any discussions, meetings or communications between Barclays, any other potential acquirers, the Federal Reserve, SEC, Treasury Department or any other government entity concerning the financial difficulties or problems at Lehman during the three month period prior to LBHI's bankruptcy filing on September 15, 2008 through September 30, 2008.

REQUEST NO. 2

All documents concerning any discussions or negotiations between Barclays and Lehman (or their respective agents and counsel) regarding any proposed purchase, sale, merger, transfer or similar transaction in which some or all of the assets, liabilities or business of Lehman or any Lehman entity was to be sold, acquired, transferred or assumed to or by Barclays or any Barclays entity, including but not limited to any negotiations or discussions during the month preceding LBHI's bankruptcy filing on September 15, 2008 and through September 30, 2008.

REQUEST NO. 3

All documents concerning any due diligence performed by or on behalf of Barclays, any Barclays entity, or any of their agents in connection with the September 2008 Lehman-Barclays Transaction or any proposed or contemplated transaction described in Request No. 2 above, including any investigation, document review, employee interviews, research, discussion or analysis conducted by Barclays with respect to the assets, liabilities, valuation, projections, budgets or expected viability of Lehman or any Lehman entity.

REQUEST NO. 4

All documents concerning the negotiation, drafting, execution and implementation of the Lehman-Barclays Transaction documents, including (i) the Asset Purchase Agreement, dated September 16, 2009, including any amendments, schedules or annexes thereto and the one-page schedule, dated September 16, 2008, initialed by Steven Berkenfeld, and referenced in section 9.1(c) (collectively, the "Original APA"); (ii) the First Amendment to the Original APA, dated September 19, 2008 ("First Amendment"); (iii) the clarification letter, dated as of September 20, 2008 ("Clarification Letter"); (iv) the Transition Services Agreement, dated September 22, 2009 ("TSA"); and (v) any related contracts, agreements or arrangements.

REQUEST NO. 5

All documents concerning the schedule dated September 16, 2008 referenced in section 9.1(c) of the Original APA, including but not limited to all documents concerning

the data upon which that schedule was based, the manner in which it was prepared, all drafts of the schedule, all correspondence concerning the schedule, and all signed versions of the schedule.

REQUEST NO. 6

All documents concerning Assumed Liabilities (as defined in the Original APA), including documents reflecting the specific liabilities assumed by Barclays or extinguished in the Lehman-Barclays Transaction, the value attributed to such Assumed Liabilities as of the date of the Original APA, the value attributed to such Assumed Liabilities as of the date of the Clarification Letter and the value Barclays assigned to the Assumed Liabilities on or after the date the Lehman-Barclays Transaction closed.

REQUEST NO. 7

All documents concerning any press release or other public statements issued by Barclays, investor conference call held by Barclays (including that held on September 17, 2008), or other public filing or communication to investors issued by Barclays concerning: (i) the Lehman-Barclays Transaction, (ii) the amounts, types and value of assets and liabilities to be acquired or assumed by Barclays as a result of the Lehman-Barclays Transaction, or (iii) the profits or other benefits Barclays received or expects to receive as a result of the Lehman-Barclays Transaction.

REQUEST NO. 8

All documents concerning Barclays' payment, deferral, alteration, renegotiation, revision, or non-payment of bonuses (cash or otherwise), severance or other forms of compensation to former LBI or Lehman executives or other employees who obtained or sought to obtain employment at Barclays following the Lehman-Barclays Transaction, including (i) any agreements, contracts or other arrangements (actual or proposed) between Barclays and any former Lehman employees, and (ii) documents sufficient to show the recipients and amounts of bonuses or other forms of compensation actually paid or committed to be paid to each former LBI or Lehman executive or employee that transferred to or was employed by Barclays after the Lehman-Barclays transaction. This request includes, but is not limited to, bonuses and severance paid under section 9 of the Original APA.

REQUEST NO. 9

All documents concerning any negotiations, promises, assurances, enticements, commitments or discussions at any time prior to September 22, 2008 concerning bonuses, severance or other forms of compensation, or other things of value to be paid by Barclays to former LBI or Lehman executives or employees who obtained or sought to obtain employment at Barclays following the Lehman-Barclays Transaction or the bankruptcy filing of any Lehman entity.

REQUEST NO. 10

All documents reflecting communications during the period from September 1, 2008 to September 30, 2008 concerning (a) the Lehman-Barclays transaction or (b) employment by Barclays after the Lehman-Barclays transaction between Barclays and (1) Steven Berkenfeld, (2) Gerald Donini, (3) Eric Felder, (4) Joseph Gatto, (5) Steven Hash, (6) Ian Lowitt, (7) Herbert McDade, (8) Paul Parker, (9) Ros Stephenson, (10) Jeff Weiss, or (11) Larry Wieseneck.

REQUEST NO. 11

All documents concerning any employment agreements, compensation agreements, bonus agreements, severance agreements, consulting agreements or other agreements concerning compensation between Barclays and (1) Steven Berkenfeld, (2) Gerald Donini, (3) Eric Felder, (4) Joseph Gatto, (5) Steven Hash, (6) Ian Lowitt, (7) Herbert McDade, (8) Paul Parker, (9) Ros Stephenson, (10) Jeff Weiss, or (11) Larry Wieseneck.

REQUEST NO. 12

All documents concerning Barclays' accounting, valuation, expensing or accruing for any bonuses (cash or otherwise), severance or other forms of compensation that Barclays paid or is obligated or expects to pay to former LBI or Lehman executives or employees who obtained or sought to obtain employment at Barclays following the Lehman-Barclays Transaction or the bankruptcy filing of any Lehman entity.

REQUEST NO. 13

All documents concerning Barclays' payment, deferral, alteration, renegotiation, revision, or non-payment of cure amounts owed or claimed to be owed to third party vendors or other non-Lehman entities under any contracts originally entered into by Lehman entities and transferred to or assumed by Barclays pursuant to the Original APA, the First Amendment, the Clarification Letter or the TSA ("Contract Cure Amounts"). This request includes any agreements, contracts or other arrangements (actual or proposed) between Barclays and any third party vendors or non-Lehman entities concerning Contract Cure Amounts.

REQUEST NO. 14

All documents concerning Barclays' decision to categorize, designate or otherwise treat any contracts. commitments or agreements as "Closing Date Contracts" or "Designated Contracts" or "Rejected Contracts" (as defined under the Original APA or as referred to in the orders of the Bankruptcy Court). This request includes documents sufficient to identify the contracts and the third-party vendors and amounts in issue under them.

REQUEST NO. 15

All documents concerning Barclays' accounting, valuing, expensing and accruing for Contract Cure Amounts (actual or proposed), including documents sufficient to show the Contract Cure Amounts Barclays actually paid or is obligated or expects to pay to all third party vendors or other non-Lehman entities.

REQUEST NO. 16

All documents concerning "Purchased Assets" (as defined in the Original APA and Clarification Letter), including schedules reflecting the specific assets purchased or transferred to Barclays, the value attributed to such Purchased Assets as of the date of the Original APA, and the value attributed to such Purchased Assets as of the date of the Clarification Letter or thereafter.

REQUEST NO. 17

All documents concerning the negotiating, booking, executing, funding, pledging of collateral, or repurchasing of collateral in connection with any transaction between LBI and Barclays transacted on or after September 15, 2008 pursuant to any repurchase agreement ("Repo Transactions"). This request includes any agreements, correspondence, confirmations setting forth the terms of the Repo Transactions, blotters, spreadsheets, valuations, documents relating to settlement issues, or other related documents.

REQUEST NO. 18

All documents concerning the negotiation, drafting, execution and implementation of the Settlement Agreement dated December 5, 2008 (the "Settlement Agreement").

REQUEST NO. 19

All documents concerning any Lehman securities transferred to Barclays in connection with the Repo Transactions, the Lehman-Barclays Transaction, or the Settlement Agreement ("Transferred Securities") or any Lehman securities not transferred to Barclays despite the contemplation of their transfer pursuant to either the Repo Transactions, the Lehman-Barclays Transaction, or the Settlement Agreement ("Other Securities").

This request includes (i) any documents reflecting negotiations resulting in a Lehman security becoming part of the group of Transferred Securities or Other Securities; (ii) mark-to-market valuations on a security-by-security basis for the Transferred Securities or Other Securities for any relevant period of the time between September 15, 2008 and December 2008, (iii) bank account statements reflecting the Transferred Securities or Other Securities and any flow of funds related to either, (iv) any instructions or correspondence regarding the delivery of the Transferred Securities or Other Securities, including any documents concerning delivery failures with respect to

any of the Transferred Securities or Other Securities; and (v) any documents concerning the delivery of cash in lieu of any of the Transferred Securities or Other Securities.

REQUEST NO. 20

All documents provided to the Official Committee of Unsecured Creditors (the "Committee") appointed in *In re Lehman Brothers Holding Inc., et al.*, Case No. 08-13555 (JMP), pursuant to the Committee's letter requests dated December 26, 2008 and February 10, 2009, and any additional documents provided to the Committee in connection with any subsequent requests.

# EXHIBIT D

BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7TH FLOOR • NEW YORK, NY 10022 • PH. 212 446 2300 • FAX 212 446 2350

April 20, 2009

<u>BY HAND</u>

Robert W. Gaffey
Jones Day
222 East 41st Street
New York, NY 10017-6702

<u>*In re Lehman Brothers Holding Inc., et al.,* Case No. 08-13555 (JMP)</u>

Dear Mr. Gaffey:

    I am writing in response to your April 13, 2009 letter.

    Schedule 2 to the Declaration of Simon Powell submitted in support of the Debtors' application to retain Jones Day as Special Counsel, at page 8, represents that Barclays Capital Inc. ("Barclays") and certain of its affiliates are current clients of Jones Day. Your firm thus acknowledged that it has a conflict in being adverse to Barclays. *See* New York Rules of Professional Conduct (effective April 1, 2009) Rules 1.7 – 1.10. While disclosing that conflict, the retention application never suggested that Jones Day would become adverse to Barclays. The Order approving the retention of Jones Day as Special Counsel to the Estate never authorized Jones Day to undertake a representation adverse to Barclays. In fact, the Order contemplates that Jones Day would represent the Estate only in certain foreign proceedings and in unrelated litigation in California, not an investigation of the type your letter outlines. The investigation you propose to undertake is therefore barred by the conflict your firm disclosed and is outside the scope of the retention that the Court approved. In light of these circumstances, please advise us promptly as to how your firm intends to proceed.

    In addition to disregarding the disqualification of your firm, your letter ignores a number of significant factors bearing on the Debtors' proposed investigation.

    First, while your letter references a February 19, 2009 letter from Mr. Marsal to Mr. Hughes, it disregards the response that Mr. Hughes sent on February 23, 2009. In that response, Mr. Hughes stressed Barclays' view that the Debtors should coordinate their inquiries with the Examiner's investigation, as the Bankruptcy Court has directed, and not duplicate the Examiner's work. He offered to discuss with Mr. Marsal how

BOIES, SCHILLER & FLEXNER LLP

Robert W. Gaffey
April 20, 2009
Page 2


Barclays could avoid addressing inquiries concerning the court-approved sale on a
piecemeal basis. Mr. Hughes also offered to discuss with Mr. Marsal factual matters
relevant to administration of the Estate or other issues of concern to Mr. Marsal. Mr.
Marsal never responded to that offer. Accordingly, this current demand for extensive
discovery is an unnecessarily burdensome and confrontational approach in these
circumstances.

        Second, the Debtors' document demands address topics that the Examiner is
already investigating and, we expect, will continue to investigate. We question whether,
before sending these demands, the Debtors made any effort to coordinate with the
Examiner on these issues. A simultaneous and duplicative investigation by the Debtors
will interfere with our ability to respond to the Examiner in a timely and complete
manner.

        Please inform the Debtors that Barclays remains willing to discuss these matters
at a mutually convenient time.



                                              Very truly yours,



                                              Jonathan D. Schiller

# EXHIBIT E

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017-6702
TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306

Direct Number:  (212) 326-7838
rwgaffey@jonesday.com

JP636767

April 24, 2009

Jonathan D. Schiller
Boies, Schiller & Flexner LLP
575 Lexington Avenue, 7th floor
New York, NY  10022

      Re:   <u>In re Lehman Brothers Holding Inc., Case No. 08-13555 (JMP)</u>

Dear Mr. Schiller:

     I am writing in further response to your April 20, 2009 letter concerning our request that Barclays Capital Inc. provide us with certain documents concerning its acquisition of the assets of Lehman Brothers Holding Inc. ("LBHI") and related matters.

     First, you contend that Jones Day is disqualified from serving as Special Counsel to the Estate adverse to Barclays Capital Inc. based on an asserted conflict of interest.  The premise of your contention is incorrect.  Jones Day has never represented Barclays Capital Inc., a Connecticut corporation with its principal place of business in New York.  Rather, Jones Day previously represented the London-based investment banking division of Barclays Bank Plc in certain financings unrelated to the subject of our investigation on behalf of LBHI.  Those representations ended prior to our retention by LBHI as special counsel to investigate the transaction between and among LBHI, Lehman Brothers Inc., LB 745 LLC and Barclays Capital Inc.  Earlier this year, Jones Day sent letters confirming the conclusion of the relationship with Barclays Bank Plc.

     You refer to Mr. Powell's February 3, 2009 Declaration, which stated on a lengthy Schedule 2 referencing approximately 275 so-called "Interested Persons" that "Barclays Bank Plc" and "Barclays Capital, Inc." were current clients of Jones Day.  That declaration incorrectly reported "Barclays Capital, Inc." as a client and did not reflect that the work for Barclays Bank Plc had ended prior to the date of the signing of Mr. Powell's declaration.  As Mr. Powell explained in paragraph 8 of his Declaration, the Schedule to which you refer (Schedule 2) was designed only to list Interested Persons (as defined in the Declaration) that Jones Day either was then representing or had represented in the past two years.  To correct these errors, we expect to file with the bankruptcy court an updated Schedule 2 reflecting the former relationship with Barclays Bank Plc.

4177440v1

ATLANTA  •  BEIJING  •  BRUSSELS  •  CHICAGO  •  CLEVELAND  •  COLUMBUS  •  DALLAS  •  FRANKFURT  •  HONG KONG  •  HOUSTON
IRVINE  •  LONDON  •  LOS ANGELES  •  MADRID  •  MILAN  •  MOSCOW  •  MUNICH  •  NEW DELHI  •  NEW YORK  •  PARIS  •  PITTSBURGH
SAN DIEGO  •  SAN FRANCISCO  •  SHANGHAI  •  SILICON VALLEY  •  SINGAPORE  •  SYDNEY  •  TAIPEI  •  TOKYO  •  WASHINGTON

JONES DAY

Jonathan D. Schiller
April 24, 2009
Page 2

That amended schedule will also correct a typographical error relating to the reference to "Barclays Bank, S.A." Jones Day does not represent, and to the best of our knowledge never has represented, any entity named Barclays Bank, S.A. Rather, Schedule 2 should have stated that Jones Day represented Barclays Bank S.A.E., an entity organized under the laws of Spain. Specifically, Jones Day represented Barclays Bank S.A.E. on two local financings in Spain at the request of a Jones Day borrower-client and pursuant to an engagement letter defining the client as Barclays Bank S.A.E. Those representations had nothing to do with the subject of our investigation on behalf of LBHI. One of those financings has concluded and the other one has not proceeded since July 2008.

Accordingly, Jones Day has no conflict with respect to Barclays Capital Inc. and is not precluded from representing the Estate in this matter adverse to Barclays Capital Inc. The Estate will be filing an amended retention application, seeking the Court's authorization *nunc pro tunc* to retain Jones Day as Special Counsel to the Estate to undertake a representation that would include, among other things, an investigation of the above-described transaction involving Barclays Capital Inc.

As for the remainder of your letter, we have not, contrary to your assertion, ignored "significant factors bearing on the Debtors' investigation." In sending our request for documents, we were mindful of Mr. Hughes' February 23, 2009 response to Alvarez & Marsal's earlier requests. In that regard, we will attempt to coordinate our efforts with those of the Examiner as best we can, so as to avoid duplication and waste. Toward that end, we welcome the opportunity to discuss these discovery requests and our other investigative needs so we can obtain information the Debtor needs in the most efficient way possible. We do not seek to impose undue burdens on your client. Rather, we proffered these document requests in an attempt to compile in one letter discovery we expect we will need to examine the issues we, along with Alvarez & Marsal, have identified as potentially relevant to our investigation. We share your desire to streamline this process and our letter was sent in that spirit and in the hope of avoiding recourse to the Court.

Your assertion that our document requests will, in some way, "interfere with [y]our ability to respond to the Examiner in a timely and complete manner" is without basis. To the extent Barclays Capital Inc. is already producing documents to the Examiner that are also responsive to our requests, it should require little time and effort to forward to us an additional copy set (or to enable the Examiner to release copies to us, if you prefer that mechanism). As for our other requests (*i.e.*, those covering issues beyond the documents you are already producing to the Examiner), we have narrowly tailored our requests to a discrete set of transactions and topics covering a very short time period (for the most part, the month of September 2008 and, as for some requests, limited periods following consummation of the transactions in question). These focused requests are not unduly burdensome.

JONES DAY

Jonathan D. Schiller
April 24, 2009
Page 3

Please let us know when we can expect Barclays Capital Inc. to produce documents responsive to our document requests.  Otherwise, please advise us if Barclays Capital Inc. is unable or unwilling to comply with our requests, so we can promptly take this issue to the Court. We are, of course, available to discuss these issues with you at your convenience.

Very truly yours,

Robert W. Gaffey

# EXHIBIT F

## EXHIBIT F

The Estate makes the following requests for the production of documents:

1.      All documents concerning any discussions, meetings or communications between Barclays, any other potential acquirers, the Federal Reserve, SEC, Treasury Department or any other government entity concerning the financial difficulties or problems at Lehman during the three month period prior to LBHI's bankruptcy filing on September 15, 2008 through September 30, 2008.

2.      All documents concerning any discussions or negotiations between Barclays and Lehman (or their respective agents and counsel) regarding any proposed purchase, sale, merger, transfer or similar transaction in which some or all of the assets, liabilities or business of Lehman or any Lehman entity was to be sold, acquired, transferred or assumed to or by Barclays or any Barclays entity, including but not limited to any negotiations or discussions during the month preceding LBHI's bankruptcy filing on September 15, 2008 and through September 30, 2008.

3.      All documents concerning any due diligence performed by or on behalf of Barclays, any Barclays entity, or any of their agents in connection with the September 2008 Lehman-Barclays Transaction or any proposed or contemplated transaction described in Request No. 2 above, including any investigation, document review, employee interviews, research, discussion or analysis conducted by Barclays with respect to the assets, liabilities, valuation, projections, budgets or expected viability of Lehman or any Lehman entity.

4.      All documents concerning the negotiation, drafting, execution and implementation of the Lehman-Barclays Transaction documents, including (i) the Asset Purchase Agreement, dated September 16, 2009, including any amendments, schedules or annexes thereto and the one-page schedule, dated September 16, 2008, initialed by Steven Berkenfeld, and referenced in section 9.1(c) (collectively, the "Original APA"); (ii) the First Amendment to the Original APA, dated September 19, 2008 ("First Amendment"); (iii) the clarification letter, dated as of September 20, 2008 ("Clarification Letter"); (iv) the Transition Services Agreement, dated September 22, 2009 ("TSA"); and (v) any related contracts, agreements or arrangements.

5.      All documents concerning the schedule dated September 16, 2008 referenced in section 9.1(c) of the Original APA, including but not limited to all documents concerning the data upon which that schedule was based, the manner in which it was prepared, all drafts of the schedule, all correspondence concerning the schedule, and all signed versions of the schedule.

6.      All documents concerning Assumed Liabilities (as defined in the Original APA), including documents reflecting the specific liabilities assumed by Barclays or extinguished in the Lehman-Barclays Transaction, the value attributed to such Assumed Liabilities as of the date of the Original APA, the value attributed to such Assumed Liabilities as of the date of the Clarification Letter and the value Barclays assigned to the Assumed Liabilities on or after the date the Lehman-Barclays Transaction closed.

7.      All documents concerning any press release or other public statements issued by Barclays, investor conference call held by Barclays (including that held on September 17, 2008), or other public filing or communication to investors issued by Barclays concerning: (i) the

Lehman-Barclays Transaction, (ii) the amounts, types and value of assets and liabilities to be acquired or assumed by Barclays as a result of the Lehman-Barclays Transaction, or (iii) the profits or other benefits Barclays received or expects to receive as a result of the Lehman-Barclays Transaction.

8.      All documents concerning Barclays' payment, deferral, alteration, renegotiation, revision, or non-payment of bonuses (cash or otherwise), severance or other forms of compensation to former LBI or Lehman executives or other employees who obtained or sought to obtain employment at Barclays following the Lehman-Barclays Transaction, including (i) any agreements, contracts or other arrangements (actual or proposed) between Barclays and any former Lehman employees, and (ii) documents sufficient to show the recipients and amounts of bonuses or other forms of compensation actually paid or committed to be paid to each former LBI or Lehman executive or employee that transferred to or was employed by Barclays after the Lehman-Barclays transaction.  This request includes, but is not limited to, bonuses and severance paid under section 9 of the Original APA.

9.      All documents concerning any negotiations, promises, assurances, enticements, commitments or discussions at any time prior to September 22, 2008 concerning bonuses, severance or other forms of compensation, or other things of value to be paid by Barclays to former LBI or Lehman executives or employees who obtained or sought to obtain employment at Barclays following the Lehman-Barclays Transaction or the bankruptcy filing of any Lehman entity.

10.     All documents reflecting communications during the period from September 1, 2008 to September 30, 2008 concerning (a) the Lehman-Barclays transaction or (b) employment by Barclays after the Lehman-Barclays transaction between Barclays and (1) Steven Berkenfeld, (2) Gerald Donini, (3) Eric Felder, (4) Joseph Gatto, (5) Steven Hash, (6) Ian Lowitt, (7) Herbert McDade, (8) Paul Parker, (9) Ros Stephenson, (10) Jeff Weiss, (11) Larry Wieseneck, (12) Michael Gelband, (13) Thomas Humphrey, (14) Hyung Lee, (15) Hugh E. ("Skip") McGee, III, or (16) Ajay Nagpal.

11.     All documents concerning any employment agreements, compensation agreements, bonus agreements, severance agreements, consulting agreements or other agreements concerning compensation between Barclays and (1) Steven Berkenfeld, (2) Gerald Donini, (3) Eric Felder, (4) Joseph Gatto, (5) Steven Hash, (6) Ian Lowitt, (7) Herbert McDade, (8) Paul Parker, (9) Ros Stephenson, (10) Jeff Weiss, (11) Larry Wieseneck, (12) Michael Gelband, (13) Thomas Humphrey, (14) Hyung Lee, (15) Hugh E. ("Skip") McGee, III, or (16) Ajay Nagpal.

12.     All documents concerning Barclays' accounting, valuation, expensing or accruing for any bonuses (cash or otherwise), severance or other forms of compensation that Barclays paid or is obligated or expects to pay to former LBI or Lehman executives or employees who obtained or sought to obtain employment at Barclays following the Lehman-Barclays Transaction or the bankruptcy filing of any Lehman entity.

13.     All documents concerning Barclays' payment, deferral, alteration, renegotiation, revision, or non-payment of cure amounts owed or claimed to be owed to third party vendors or other non-Lehman entities under any contracts originally entered into by Lehman entities and transferred to

or assumed by Barclays pursuant to the Original APA, the First Amendment, the Clarification Letter or the TSA ("Contract Cure Amounts"). This request includes any agreements, contracts or other arrangements (actual or proposed) between Barclays and any third party vendors or non-Lehman entities concerning Contract Cure Amounts.

14.     All documents concerning Barclays' decision to categorize, designate or otherwise treat any contracts. commitments or agreements as "Closing Date Contracts" or "Designated Contracts" or "Rejected Contracts" (as defined under the Original APA or as referred to in the orders of the Bankruptcy Court). This request includes documents sufficient to identify the contracts and the third-party vendors and amounts in issue under them.

15.     All documents concerning Barclays' accounting, valuing, expensing and accruing for Contract Cure Amounts (actual or proposed), including documents sufficient to show the Contract Cure Amounts Barclays actually paid or is obligated or expects to pay to all third party vendors or other non-Lehman entities.

16.     All documents concerning "Purchased Assets" (as defined in the Original APA and Clarification Letter), including schedules reflecting the specific assets purchased or transferred to Barclays, the value attributed to such Purchased Assets as of the date of the Original APA, and the value attributed to such Purchased Assets as of the date of the Clarification Letter or thereafter.

17.     All documents concerning the negotiating, booking, executing, funding, pledging of collateral, or repurchasing of collateral in connection with any transaction between LBI and Barclays transacted on or after September 15, 2008 pursuant to any repurchase agreement ("Repo Transactions"). This request includes any agreements, correspondence, confirmations setting forth the terms of the Repo Transactions, blotters, spreadsheets, valuations, documents relating to settlement issues, or other related documents.

18.     All documents concerning the negotiation, drafting, execution and implementation of the Settlement Agreement dated December 5, 2008 (the "Settlement Agreement").

19.     All documents concerning any Lehman securities transferred to Barclays in connection with the Repo Transactions, the Lehman-Barclays Transaction, or the Settlement Agreement ("Transferred Securities") or any Lehman securities not transferred to Barclays despite the contemplation of their transfer pursuant to either the Repo Transactions, the Lehman-Barclays Transaction, or the Settlement Agreement ("Other Securities").

This request includes (i) any documents reflecting negotiations resulting in a Lehman security becoming part of the group of Transferred Securities or Other Securities; (ii) mark-to-market valuations on a security-by-security basis for the Transferred Securities or Other Securities for any relevant period of the time between September 15, 2008 and December 2008, (iii) bank account statements reflecting the Transferred Securities or Other Securities and any flow of funds related to either, (iv) any instructions or correspondence regarding the delivery of the Transferred Securities or Other Securities, including any documents concerning delivery failures with respect to any of the Transferred Securities or Other Securities; and (v) any

documents concerning the delivery of cash in lieu of any of the Transferred Securities or Other Securities.

20.     All documents provided to the Official Committee of Unsecured Creditors (the "Committee") appointed in *In re Lehman Brothers Holding Inc., et al.*, Case No. 08-13555 (JMP), pursuant to the Committee's letter requests dated December 26, 2008 and February 10, 2009, and any additional documents provided to the Committee in connection with any subsequent requests.

# EXHIBIT G

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                    :

| | |
|---|---|
| In re: | :     Chapter 11 |
| | : |
| LEHMAN BROTHERS HOLDINGS INC., *et al.,* | :     Case No. 08-13555 (JMP) |
| | : |
| Debtors. | :     (Jointly Administered) |
| | : |

------------------------------------------------------------x

## ORDER, PURSUANT TO FED. R. BANKR. P. 2004, AUTHORIZING DISCOVERY FROM BARCLAYS CAPITAL, INC.

This matter coming before the Court on the Motion of Debtor and Debtor In

Possession for an Order, Pursuant to Fed. R. Bankr. P. 2004, Authorizing Discovery From

Barclays Capital, Inc. (the "Motion"),[1] filed by Lehman Brothers Holdings Inc., as debtor and

debtor in possession in the above-captioned case (the "Debtor"); the Court having reviewed the

Motion and having considered the statements of counsel before the Court (the "Hearing"); and

the Court having found that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C.

§§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and (c) notice of

the Motion and the Hearing was sufficient under the circumstances; and the Court having

determined that the legal and factual bases set forth in the Motion and at the Hearing establish

just cause for the relief granted herein;

         IT IS HEREBY ORDERED THAT:

         1.      The Motion is GRANTED.

         2.      The Debtor may, in its discretion, and is authorized to, conduct written

discovery and depositions against Barclays concerning the Requested Information.

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

3.      Barclays is hereby ordered to produce documents and otherwise respond to the written discovery requests in Exhibit F to the Motion within 20 days of the date hereof.

4.      Barclays is hereby further ordered to produce witnesses to appear for oral depositions under oath on such date and time and at such location as may be designated in writing by the Debtor on not less than 14 days notice.

5.      The Debtor may issue discovery requests and subpoenas as may be necessary to accomplish the discovery authorized by this Order.

6.      Nothing contained herein shall prejudice the Debtor's rights under Bankruptcy Rule 2004 and other applicable law to seek further document production and written and oral examinations in connection with these chapter 11 cases.

7.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.


Dated: New York, New York
       _____, 2009



                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE