David M. Grimes, Esq.
John L. Scott, Esq.
Rizwan A. Qureshi, Esq.
**REED SMITH LLP**
599 Lexington Avenue
New York, NY 10022
Tel: 212-521-5400
Fax: 212-521-5450

*Counsel to Yarpa Investmenti S.G.R. S.p.A. – RP3 Fund*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
                                                                  :
In re                                                             :        Chapter 11
                                                                  :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :        Case No. 08-13555 (JMP)
                                                                  :        (Jointly Administered)
                                           Debtors.   :
                                                                  :        Refers to Dkt. No. 1541
-----------------------------------------------------------x

**OBJECTION OF YARPA INVESTMENTI S.G.R. S.p.A. – RP3 FUND
TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO
SECTION 365 OF THE BANKRUPTCY CODE APPROVING
THE ASSUMPTION OR REJECTION OF OPEN TRADE CONFIRMATIONS**

Yarpa Investmenti S.G.R. S.p.A. – RP3 Fund ("Yarpa") hereby objects to the Debtors' Motion for an Order Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade Confirmations, dated November 14, 2008 (the "Assumption Motion") (D.I. 1541), and respectfully states as follows:

**PRELIMINARY STATEMENT**

Pursuant to the Assumption Motion, the Debtor attempts to assume a certain purported Loan Market Association ("LMA") Trade Confirmation, dated March 12, 2008, entered into between Yarpa, as buyer, and Lehman Commercial Paper Inc. ("LCPI" or "Debtor"), as seller pursuant to which Yarpa proposed to purchase EURO 2,000,000.00 of mezzanine debt issued by Lavena Holding 4 GmbH and owned by LCPI (the "Yarpa Trade"). Despite Yarpa's persistent

efforts over four (4) months to satisfy the terms of the Trade Confirmation, Yarpa and LCPI were unable to obtain the necessary third party consent and finally were forced to terminate the Yarpa Trade. Accordingly, the Yarpa Trade cannot be assumed and the relief requested in the Assumption Motion with respect to the Yarpa Trade should be denied.

## BACKGROUND

I.  The Debtors' Bankruptcy

1.  On September 15, 2008, and periodically thereafter (collectively, the "Petition Date"), Lehman Brothers Holding Inc. and certain of its subsidiaries, including LCPI (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.  On or about November 14, 2008, the Debtors filed the Assumption Motion requesting an order, pursuant to Section 365 of the Bankruptcy Code, approving the assumption, rejection or modification of certain open trade confirmations (Docket No. 1541).

3.  On or about December 16, 2008, the Court entered an Order Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption Motion (the "Order") (D.I. 2258), including the assumption of the Yarpa Trade. On or about April 3, 2009, Yarpa, which first learned of the Assumption Motion and the Order after the Order had been entered, filed a motion (the "Yarpa Motion") (D.I. 3267) requesting that the Court vacate the Order solely with respect to the Yarpa Trade so that Yarpa would have an opportunity to assert its objections to the Assumption Motion.

4.  On May 8, 2009, the Debtor consented to the relief requested in the Yarpa Motion and agreed to give Yarpa until May 22, 2009 to file its objection to the Assumption Motion. See D.I. 3530.

5. On May 14, 2009, the Court issued an Order Granting the Motion of Yarpa Investmenti S.G.R. S.p.A.-RP3 Fund for Limited Relief from Order Approving the Assumption or Rejection of Open Trade Confirmations (D.I. 3568).

## II. The Yarpa Trade

6. On or about March 4, 2008, Yarpa, as buyer, and LCPI, as seller, entered into the Yarpa Trade. The Yarpa Trade was confirmed by a LMA Trade Confirmation dated March 12, 2008 (the "Confirmation," a copy of which is attached as Exhibit "A" to the accompanying Affidavit of Filippo Nishino ("Nishino Aff.")). The Confirmation contained a number of material terms, three of which are most relevant here.

7. First, the Confirmation explicitly stated that the Yarpa Trade was subject to the Standard Terms and Conditions for Par Trade Transactions of the LMA (the "Standard Terms," a copy of which is attached hereto as Exhibit "1").

8. Second, Section 3 of the Confirmation provided that the Settlement Date[1] was to be "[a]s soon as practicable" after the March 4, 2008 Trade Date.[2]

9. Third, Section 15 of the Confirmation provided that the Yarpa Trade was "subject to the granting of any third party consents required under the terms of the Credit Agreement, or otherwise by law." This section required that, among other things, Yarpa and LCPI obtain the express consent of Bayerische Hypo- Und Vereinsbank AG, the facility agent for the Yarpa Trade (the "Agent").

---

[1] The term "Settlement Date" has been defined to mean "[t]he date on which either cash (for a buyer) or a security (for a seller) must be in the hands of the broker in order to satisfy the conditions of a security transaction." David L. Scott, WALL STREET WORDS: AN A TO Z GUIDE TO INVESTMENT TERMS (Houghton Mifflin 2003).

[2] The Trade Date is the date on which a security trade occurs.

10. On or about April 8, 2008, approximately one month after the Trade Date, the Agent informed LCPI and Yarpa that because the Agent had not previously dealt with Yarpa, it required certain Know Your Customer ("KYC") documentation from Yarpa before it could consent to, and establish a Settlement Date for, the Yarpa Trade. See Nishino Aff. ¶ 5.

11. Accordingly, Yarpa sent the KYC documentation to the Agent on four separate occasions: April 11, 2008, April 16, 2008, April 24, 2008, and again on May 19, 2008. Id. ¶¶ 6-7.

12. Yarpa confirmed its submission of the KYC documentation to the Agent by email dated June 16, 2008. Notably, in reply to Yarpa's June 16th email to the Agent, LCPI stated that it also had forwarded Yarpa's KYC documentation to the Agent. Id. ¶ 10.

13. On or about June 25, 2008, nearly four (4) months after the Trade Date, Yarpa notified LCPI that the Yarpa Trade would terminate unless the trade settled and a Transfer Certificate was delivered to Yarpa, by no later than seven (7) Business Days after June 25, 2008 (the "Demand Letter," a copy of which is attached as Exhibit "B" to the Nishino Aff.). The seventh Business Day after June 25, 2008 was July 4, 2008.

14. On July 21, 2008, long after the July 4, 2008 deadline had passed, Yarpa notified LCPI that because Yarpa had not received a Transfer Certificate and the Yarpa Trade had not settled within the seven Business Day period, the Yarpa Trade had terminated (the "Termination Letter," a copy of which is attached as Exhibit "C" to the Nishino Aff.).

## ARGUMENT

15. Section 365 of the Bankruptcy Code, which governs a debtor's ability to assume executory contracts, provides in relevant part that "the trustee, subject to the court's approval, may assume or reject an executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). It is axiomatic, however, that "[o]nce the contract is no longer in existence, the right to

assume it is extinguished." In re Balco Equities Ltd., Inc., 312 B.R. 734, 750 (Bankr. S.D.N.Y. 2004).

16. Indeed, as one bankruptcy court recently found in a similar context: "The law could not be clearer that a contract or lease which expires by its own terms prepetition ... eliminates the possibility of assumption or assignment in the Debtor's bankruptcy case." In re Jim Palmer Equipment, Inc., No. 08-60892-11, 2008 WL 5869690, at *5 (Bankr. D. Mont. Nov. 25, 2008) (citations omitted); see also, Balco Equities, 312 B.R. at 750 ("A contract may not be assumed under § 365 if it has already expired according to its terms.") (citations omitted); In re Pyramid Operating Authority, Inc., 144 B.R. 795, 808 (Bankr. W.D. Tenn. 1992) ("It is well established that an agreement or contract that is validly terminated prepetition under applicable state law is not assumable under section 365(a).").

17. Here, the Yarpa Trade terminated prior to the Petition Date. Accordingly, the Debtor cannot assume the Yarpa Trade, and the relief requested in the Assumption Motion should be denied for the reasons set forth below.

18. First, Section 4.1 of the Standard Terms, which were expressly incorporated by reference into the Yarpa Trade, provides that "[a] transaction is subject to any conditions specified in the Agreed Terms."[3] It is undisputed that the Yarpa Trade was subject to, and conditioned upon obtaining, the Agent's consent. LCPI and Yarpa agreed to use "all reasonable endeavours" to ensure that this condition was satisfied "on or before the Settlement Date," id.

---

[3] "**Agreed Terms**" is defined in the Standard Terms to mean "the terms agreed between the Buyer and the Seller in relation to the transaction, as evidenced by the Confirmation." Standard Terms §1.2.

§4.1(b), which Yarpa satisfied by sending the KYC documentation to the Agent on four separate occasions. See Nishino Aff. ¶¶ 6-7.[4]

19. Notably, however, although both parties were required to employ "all reasonable endeavours," the Standard Terms placed the onus of obtaining the Agent's consent **on LCPI, and not on Yarpa**. Id. §4.1(c) ("The **Seller** [i.e., LCPI] shall use all reasonable endeavours to obtain any third party consents required in connection with the transaction.") (emphasis added). While it appears that LCPI may have attempted to obtain the Agent's consent by forwarding the KYC documentation to the Agent on at least two occasions, LCPI's efforts nevertheless were insufficient. In any event, the Agent's consent was never obtained despite Yarpa's and LCPI's efforts, and the Yarpa Trade, which was expressly conditioned upon obtaining such consent, ultimately terminated when such consent could not be obtained.

20. Second, Section 4.2 of the Standard Terms provides that if a condition remains unfulfilled on the proposed Settlement Date "the Settlement Date shall be postponed for such period or periods as the Seller and the Buyer agree ( the 'Postponement Period') . . ."

21. Although the Confirmation stated that the Settlement Date would be as soon as practicable, the parties at least implicitly agreed to postpone the Settlement Date until on or about June 25, 2008. However, in the Demand Letter, Yarpa notified LCPI that it would no longer agree to a Postponement Period and was requiring that the Yarpa Trade settle within seven Business Days from the date of its Demand Letter. See Nishino Aff. ¶ 15. In essence, by

---

[4] Moreover, according to Clause 21.2(a) of the Execution Version of the Facility Agreement, the minimum size to complete the Yarpa Trade is Euro 3 million, while Yarpa's bid was placed for Euro 2 million. This is yet another reason why the Yarpa Trade could not be properly executed.

its June 25th Demand Letter, Yarpa proposed a Settlement Date of no later than July 4, 2008 (i.e., seven Business Days after June 25, 2008) for closing the Yarpa Trade.[5]

22. Importantly, Section 4.2(b) of the Standard Terms instructs in relevant part:

> If: within 5 Business Days of the proposed Settlement Date no Postponement Period is agreed; or
>
> a Postponement Period is agreed within the time specified in paragraph (i) above but one or more condition specified in paragraph (a) of Condition 4.1(*Conditionality*) remains unfulfilled on the last day of the Postponement Period and no alternative means of settling the transaction has been agreed on or before the last day of the Postponement Period,
>
> **then the transaction shall be cancelled and neither party shall have any further liability to the other except** . . .

(Emphasis added).

23. This provision of the Standard Terms was triggered when, on June 25, 2008, Yarpa (i) informed LCPI that it no longer would agree to a Postponement Period and (ii) proposed a Settlement Date of "no later than 7 Business Days" after June 25, 2008 (i.e., July 4, 2008).

24. Notably, by July 11, 2008 (i.e., 5 Business Days after July 4, 2008) (i) the Transfer Certificate had not been delivered, (ii) the Agent had not yet consented to the Yarpa Trade, and (iii) the parties had not agreed on a Postponement Period for settling the transaction. Thus, pursuant to Section 4.2 of the Standard Terms, the Yarpa Trade terminated, and Yarpa had no liability to LCPI.

25. Indeed, in the Termination Letter, Yarpa informed LCPI that "as a consequence of the expiry of the 7-Business Date period referred to in our letter dated 25th June 2008 without any receipt by our company of the requested Transfer Certificate, we hereby formally notify you

---

[5] The term "Business Days" is defined in the Standard Terms to mean a day "on which banks are open for general business in each financial centre appropriate for the transaction." Here, because the appropriate financial centre was in the UK, July 4, 2008 was a Business Day.

of the termination of the LMA Trade Confirmation, which, therefore, will be deemed as being <u>ab initio</u> as never been entered into and, therefore, ineffective, between you and our company." <u>See</u> Nishino Aff., Ex. C.

26.  For the foregoing reasons, the Yarpa Trade may not be assumed by the Debtor because it terminated prior to the Petition Date.

## REQUEST FOR RELIEF

WHEREFORE, for the reasons set forth herein, Yarpa respectfully requests that this Court deny the relief requested in Debtor's Assumption Motion to the extent that it applies to the Yarpa Trade, and grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
       May 22, 2009

                                      Respectfully submitted,

                                      **REED SMITH LLP**

                          By: <u>/s/ John L. Scott</u>
                                John L. Scott
                                David M. Grimes
                                Rizwan A. Qureshi
                                599 Lexington Avenue
                                New York, New York 10022
                                Tel: 212-521-5400
                                Fax: 212-521-5450

                          *Counsel to Yarpa Investmenti S.G.R. S.p.A. – RP3 Fund*