**Hearing Date and Time: May 28, 2009 at 10:00 a.m.**

Dennis F. Dunne
Wilbur F. Foster, Jr.
Evan R. Fleck
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

David S. Cohen (*pro hac vice*)
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1850 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 835-7500

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
:
**In re**                                                           :    Chapter 11 Case No.
:
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :    08-13555 (JMP)
:
              Debtors.                                        :    (Jointly Administered)
:
:
-----------------------------------------------------------------x

**REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF LEHMAN BROTHERS HOLDINGS INC. ET AL. TO LIBRA
CDO LIMITED'S AND SOCIÉTÉ GÉNÉRALE, NEW YORK BRANCH'S
<u>OBJECTION TO MOTION FOR APPROVAL OF DEBTORS' LETTER AGREEMENT</u>**

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in possession (collectively, the "Debtors") files this reply (the "Reply") to Libra CDO Limited's and Société Générale, New York Branch's (together, the "Objectors") Objection to Motion for Approval of Debtors' Letter Agreement (the "Objection") and respectfully states as follows[1]:

## INTRODUCTION

The Creditors' Committee has reviewed and consented to the Debtors' entry into the Letter Agreement[2] with Deutsche Bank AG, London Branch (the "Assignee"). Before doing so, the Creditors' Committee undertook a thorough examination of the terms of the Letter Agreement, including the Break-Up Fee and the payment structure with respect to the Assignee, and concluded that entry into the Letter Agreement will provide maximum recovery to the Debtors' estates.

The Objectors oppose the Court's approval of the Letter Agreement based on: (1) speculation that the Debtors' creditors have not fully evaluated the Letter Agreement; and (2) an assumption that the Assignee will not exercise its contractual termination rights under the Letter Agreement. Both of these propositions are unfounded.

First, the Creditors' Committee, with the assistance of its own advisors, thoroughly evaluated the Letter Agreement. Specifically, the Creditors' Committee's advisors engaged in an extensive dialogue with the Debtors' advisors regarding the terms and conditions of the Letter Agreement. As a direct result of those discussions, the current version of the Letter Agreement reflects terms and conditions that are considerably more favorable to the estates.

---

[1] The Creditors' Committee adopts and incorporates herein by reference the facts and legal points contained in Debtors' Motion for Approval of the Letter Agreement.

[2] Terms used but not otherwise defined herein shall have the meaning set forth in the Debtors' Motion for Approval of the Letter Agreement.

2

Only after this thorough vetting and the modifications to the terms and conditions sought by the Creditors' Committee did the Creditors' Committee provide its consent. Accordingly, the Objectors' factual contentions are incorrect.

Second, the terms of the Letter Agreement specifically contemplate that the Assignee may terminate the Letter Agreement within forty-five (45) days of execution if it is not approved by the Court. The Objectors posit that the Assignee would never exercise this right or any other right of termination. This conclusion, however, is clear speculation and cannot be the basis for denying approval of the Letter Agreement.

## ARGUMENT

### I.   Approval of the Letter Agreement is Ripe as the Creditors' Committee Has Fully Evaluated This Transaction

The Creditors' Committee is the sole statutory body charged with safeguarding the interests of the Debtors' unsecured creditors. Pursuant to section 1103(c) of the Bankruptcy Code, the Creditors' Committee is empowered to, *inter alia*, (i) "consult with the trustee or the debtor in possession concerning the administration of the case"; and (ii) "investigate acts, conduct, assets, liabilities and financial condition of the debtor, the operation of the debtor's business and desirability of the continuation of such business, and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1103(c)(1), (2). In reviewing and analyzing the Letter Agreement, the Creditors' Committee fully satisfied its statutory charge.

Months before the Debtors entered into the Letter Agreement, the Debtors informed the Creditors' Committee that they wished to assign their interest in the Credit Default Swap Agreement to the Assignee. As the Debtors' negotiations with the Assignee progressed, the Debtors and the Creditors' Committee engaged in extensive discussions regarding the terms of the Letter Agreement. These discussions involved both the Creditors' Committee's counsel

3

and its financial advisors, and included issues concerning the Break-Up Fee and the terms of the Assignment. Indeed, the discussions with the Creditors' Committee's advisors resulted in achieving more favorable terms for the assignment. After undertaking such review and discussions, and based on its independent judgment, the Creditors' Committee determined that entry into the Letter Agreement would allow the Debtors to maximize the value of their interest in the Credit Default Swap Agreement for the benefit of all unsecured creditors.

The Objectors erroneously contend that entry into the Letter Agreement is premature because the Debtors' creditors should not bear the expense of performing an "appropriate evaluation of the proposed break-up fee in relation to the real value to the estate[.]" (Objection at 11.) As discussed above, the Creditors' Committee has already undertaken and completed this analysis. Accordingly, contrary to the Objectors' contentions, creditors of the Debtors have thoroughly vetted this transaction and thus a determination on the Letter Agreement is ripe.

## II. Contrary to the Objectors' Speculation, the Assignee May Exercise Its Contractual Rights and Terminate the Letter Agreement

The Objectors also contend that delaying a ruling on the Letter Agreement would not impose any hardship because the

> commercial expectations of LBSF and [the Assignee] must be that [the Assignee] would agree to extend the 90-day term of the Letter Agreement as necessary pending the ultimate outcome of the Adversary Proceedings. For the same reasons, [the Assignee] should not be expected to terminate the Letter Agreement merely because the break-up fee is not approved within 45 days.

(Objection at 9.) This, however, is nothing more than pure speculation that cannot forestall consideration of the Letter Agreement. See, e.g., Lawrence Arms Assocs. v. Shur (In re Shur), 225 B.R. 295, 297 n.4 (Bankr. E.D.N.Y. 1998) (refusing to consider Brahver's last objection because it "is speculative and unsupported"); In re Lloyd E. Mitchell, Inc., 373 B.R. 416, 427-28

4

(Bankr. D. Md. 2007) (rejecting objection to voting procedures motion asserting that it is inappropriate to allow personal injury claims temporarily in the amount of one dollar per claim for voting purposes on the ground that, *inter alia*, "it is mere speculation at this juncture that the allowance of these claims in a nominal amount for voting purposes will have any effect whatsoever, this objection to the Procedures Motion appears to lack merit, is at least premature, and is overruled").

The Letter Agreement specifically provides that the Assignee may terminate the Letter Agreement if it is not entered by the Court within forty-five (45) days of execution. (See Letter Agreement § 1.) Moreover, the Letter Agreement provides that "[i]f the Assignment is not consummated on or before the date that is ninety (90) calendar days following the date of this Letter Agreement . . . for any reason, this Letter Agreement shall terminate." (Id. § 7(a).) These terms were specifically negotiated between the Debtors and the Assignee. The Assignee has the right to enforce the contractual provisions as written, including terminating the Letter Agreement if these benchmarks are not met. See Greater E. Transp. LLC v. Waste Mgmt. of Conn., Inc., 211 F. Supp. 2d 499, 503-05 (S.D.N.Y. 2002) (allowing party to enforce unambiguous contract termination provision as written). The Objectors' argument that the Assignee may elect not to exercise its rights is nothing more than conjecture, which should not delay consideration of the Letter Agreement.[3]  See, e.g., In re Shur, 225 B.R. at 297 n.4; In re Lloyd E. Mitchell, 373 B.R. at 427-28.

---

[3] Moreover, by speculating that the Assignee will not terminate the assignment, the Objectors burden the estates with the risk that the Assignee may in fact terminate. Such termination would deprive both the Debtors and the Creditors' Committee of the certainty that the assignment provides, i.e., certainty that the Debtors' estates will obtain a recovery under the Credit Default Swap Agreement.

## **CONCLUSION**

WHEREFORE, for all the foregoing reasons, the Creditors' Committee respectfully requests that the Court grant the Motion for Approval of the Debtors' Letter Agreement and grant such other and further relief as is just.

Dated: New York, New York
       May 27, 2009

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By: /s/ Dennis F. Dunne
   Dennis F. Dunne
   Wilbur F. Foster, Jr.
   Evan R. Fleck

   1 Chase Manhattan Plaza
   New York, NY 10005
   Telephone: (212) 530-5000

   David S. Cohen (*pro hac vice*)

   1850 K Street, N.W.
   Washington, D.C. 20006
   Telephone: (202) 835-7500

Counsel for Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al.