WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard L. Levine
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
|  |  |
| --- | --- |
| | : |
| **In re** | :    **Chapter 11 Case No.** |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | :    **08-13555 (JMP)** |
| | : |
| **Debtors.** | :    **(Jointly Administered)** |
| | : |
| | : |

---------------------------------------------------------------x

### DEBTORS' OBJECTION TO MOTION OF BASSO CAPITAL MANAGEMENT, L.P. FOR RELIEF FROM THE ORDER APPROVING THE ASSUMPTION OR REJECTION OF OPEN TRADE CONFIRMATIONS

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, including Lehman Commercial Paper Inc. ("LCPI"), as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), respectfully submit this objection to the Motion of Basso Capital Management, L.P. Concerning Certain Contracts that the Debtor Moved to Reject, Then Sought to Assume Without Providing Sufficient Notice and Opportunity to Object, dated May 7, 2009 (the "Basso Motion") [Docket No. 3516].

### PRELIMINARY STATEMENT

1.     In the Basso Motion, Basso Capital Management, L.P. ("Basso") belatedly seeks relief from the Order Approving the Assumption or Rejection of Open Trade

Confirmations entered back on December 16, 2008 (the "Open Trades Order") [Docket No. 2258] under the doctrine of equitable estoppel and pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.  Basso seeks to excuse its own failure to read pleadings and straightforward email notices by mischaracterizing the Debtors' actions.   As evidenced by the treatment of other counterparties that acted in a timely and responsible fashion, had Basso exercised even the most minimal diligence, it would have had an opportunity to be heard before the Open Trades Order was entered.  Having failed to exercise such minimal diligence, Basso is not entitled to have the Open Trades Order vacated as to its trades with LCPI almost six months after the fact so that it can file an objection to a motion filed last November.

## PROCEDURAL BACKGROUND

2.        Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries, including LCPI, commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3.        The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.        Prior to the Commencement Date, the Debtors were active in the secondary loan market.  In this capacity, the Debtors purchased and sold both par and distressed commercial loans.  The Debtors' pre-petition trades were reflected in various oral and written confirmations (the "Trade Confirmations").  As of the Commencement Date, the Debtors had entered into, but had not yet consummated and settled, over 800 Trade Confirmations (the "Open Trade Confirmations").

5.        Among these Open Trade Confirmations were three confirmations dated June 3, 2008, by which Basso agreed to purchase from LCPI certain distressed commercial debt of Greektown Holdings LLC and Greektown Holdings II, Inc. at a price of 95% of par (the "Basso Open Trade Confirmations").  For each of these trades, LCPI's primary business contact at Basso was Cristin Caufield, a Senior Associate and Equity Trade Specialist.  Ms. Caufield's name and contact information appears on the top of each of the Basso Open Trade Confirmations.  See copies of the Basso Open Trade Confirmations, which are attached as Exhibit A.

6.        Pursuant to the Stipulation and Agreed Order Resolving Motion to Compel (the "Stipulation") [Docket No. 1300], the Debtors agreed to notify each counterparty of an Open Trade Confirmation of the Debtors' intention to assume or reject each Open Trade Confirmation by November 7, 2008.

7.        The Stipulation further stated that that "No Open Trade Confirmations shall be assumed or rejected without an order of the Court approving same after notice as required by section 365 of the Bankruptcy Code and the Bankruptcy Rules."  See Stipulation at ¶ 2.

## LCPI'S ASSUMPTION OF THE
## BASSO OPEN TRADE CONFIRMATIONS

8.        In the exercise of its business judgment, LCPI initially decided to reject the Basso Open Trade Confirmations.  Accordingly, on November 7, 2008, LCPI sent an email notification to Cristin Caufield with the subject line "Lehman Trade Reject Notification" (the "November 7 Email"), informing Basso that "LCPI has made the determination to reject the [Basso Open Trade Confirmations] in accordance with its rights under section 365 of the Bankruptcy Code."  For a Timeline of Material Events, see Exhibit B.

9.          Consistent with the terms of the Stipulation, on November 14, 2008,

the Debtors filed a motion seeking approval of the proposed assumption or rejection of over 800

Open Trade Confirmations (the "Open Trades Motion") [Docket No. 1541], attaching exhibits

that listed which Open Trade Confirmations the Debtors would seek Court approval to assume or

reject (the "Original Exhibits").  In particular, Exhibit B to the Open Trades Motion identified all

of the Open Trade Confirmations that the Debtors then intended to reject, including the Basso

Open Trade Confirmations.  The Open Trades Motion notified all counterparties, including

Basso, that they had until November 28, 2008, to file an objection or response to the Open

Trades Motion.

10.          After filing the Open Trades Motion, consistent with their fiduciary

duty to maximize the value of their assets, the Debtors continued to analyze their initial

determinations to reject or assume the many Open Trade Confirmations.  As a result of this

analytical process, the Debtors changed their position with respect to the Basso Open Trade

Confirmations.

11.          Accordingly, on November 21, 2008 -- only one week after the filing

of the Open Trades Motion and one week before the November 28 objection deadline -- the

Debtors sent another email notification to Cristin Caufield of Basso, with a subject line reading

"Greektown trade with Lehman t/d 6/3/08 (Basso)" (the "November 21 Email"), a copy of which

is annexed hereto as Exhibit C.  The November 21 Email, in just six straightforward paragraphs,

notified Basso that LCPI had reviewed its initial decision to reject the Basso Open Trade

Confirmations and had now decided to seek the Court's approval to assume, rather than reject,

the Basso Open Trade Confirmations.  Specifically, the November 21 Email stated:

> Consistent with Debtor's fiduciary obligation to maximize the value of its estate
> for the benefit of all creditors, Debtor has continued to review all of the "Open

Trades" (as defined in the Motion) and the proposed treatment thereof.

Please take notice that, as a result of its review, Debtor has made the determination to assume the Trade Confirmation in accordance with its rights under section 365 of the Bankruptcy Code. Such determination has been made on the basis that Counterparty will not assert any right of recoupment or setoff that it may have under a master netting agreement or otherwise with respect to its obligations under the Trade Confirmation and that, upon settlement of the Trade Confirmation, Counterparty shall pay Debtor in cash or other immediately available funds the purchase price set forth in the Trade Confirmation in full, without setoff, recoupment or counterclaims of any kind whatsoever.

On or before the Hearing Date, Debtor intends to amend the exhibits to the Motion accordingly.

See Exhibit C.

12.         Notably, Basso does not contend that it did not receive the November 21 Email. Rather, in the declaration of Ms. Caufield submitted by Basso in support of the Basso Motion, Ms. Caufield admits that she gave the November 21 Email a "quick review" but did not forward it to anyone. See Caufield Aff. ¶ 7 [Docket 3516 Ex. A].

13.         On December 14, 2008, the Debtors filed their Notice of Filing of Revised Exhibits and Revised Proposed Order Relating to the Debtors' Motion for an Order Pursuant to Section 365 of the Bankruptcy Code Approving the Assumption or Rejection of Open Trade Confirmations ("Notice of Revised Exhibits and Proposed Order") [Docket No. 2206], which reflected the corrections and modifications to the exhibits (the "Revised Exhibits"), and provided a revised version of the proposed order. These exhibits included a blacklined version (the "Blackline") illustrating how the Revised Exhibits to the Open Trades Motion differed from the Original Exhibits -- including that the Basso Open Trade Confirmations were now proposed to be assumed rather than rejected. Copies of the Revised Exhibits are annexed hereto as Exhibit D.

14.      Epiq Systems, which serves as the noticing agent in the Debtors' restructuring proceedings, sent several emails to Cristin Caufield of Basso, serving Basso with the Notice of Revised Exhibits and Proposed Order, the revised proposed order, and the Revised Exhibits that were filed with the Court.  These emails also included the blackline illustrating how the Revised Exhibits to the Open Trades Motion differed from the Original Exhibits.  The blacklined version clearly indicated that the Basso Open Trade Confirmations, which originally had been designated as "Rejected," were now marked "Assumed."  See Assumed – Blacklined Version [Docket 2206 Ex. A Part 2] at 4; Rejected – Blacklined Version [Docket 2206 Ex. B] at 9.  Ms. Caufield says that she did not "extensively review" these exhibits or forward them to anyone else.  See Caufield Aff. ¶ 9.

15.      Epiq Systems served an identical set of notice emails to Frank Jaklitsch of Esbin & Alter LLP, Basso's outside counsel.  See Exhibit E and Affidavit of Service [Docket 2379].  In the declaration of Mr. Jaklitsch submitted by Basso in support of its motion, Mr. Jaklitsch acknowledges that he received these emails and that he found the emails in his file and that they pertained to "Revised Exhibits" filed by the Debtors.  See Jaklitsch Aff. ¶ 5.  Mr. Jaklitsch claims that nothing on the face of the emails indicated that the Debtors had reversed their decision to assume the Basso Open Trade Confirmations -- even though they were labeled "Revised Exhibits" and it was in the exhibits that the Debtors indicated what they sought to assume and what they sought to reject.  Mr. Jaklitsch says he did not forward the Revised Exhibits to Basso.  Id.

16.      On December 16, 2008, twenty five days after LCPI sent the November 21 Email, the Court held a hearing regarding the Debtors' Open Trades Motion (the "December 16 Hearing").  Basso did not make an appearance nor did it communicate with the

6

Debtors about the Basso Open Trade Confirmations prior to the hearing.  At the December 16

Hearing, the Court granted the Debtors' Open Trades Motion and entered the Open Trades

Order.  [Docket No. 2258].

17.    Subsequent to entry of the Open Trades Order, the Debtors dutifully

proceeded with the time-intensive business of closing the assumed open trade confirmations.

With hundreds of trades to close, the Debtors have averaged a rather impressive pace of

approximately twenty four closings per week.  The Debtors have tried to give priority to the

extent possible to counterparties who voiced a desire to close sooner rather than later.  As of May

22, 2009, the Debtors had closed approximately 77% of all assumed pre-petition trades; the

Debtors are working diligently to close the remainder as quickly as possible.  See Declaration of

Amy Lee at ¶ 2.

18.    The Debtors' counsel contacted Basso's counsel about closing the

Basso Open Trade Confirmation on April 14, 2009.  It was only subsequent thereto that the

Debtors learned for the first time that Basso had any issue with closing the trades --

notwithstanding the November 21 Email notice to Basso and the December service on Basso and

its counsel of the Revised Exhibits.

19.    The Basso Motion was filed on May 7, 2009 -- five-and-a-half months

after Ms. Caufield received the November 21 Email stating that LCPI would seek to assume the

Basso Open Trade Confirmations and approximately five months after both Ms. Caufield and

Basso's outside counsel received the Revised Exhibits reflecting LCPI's intention to assume the

Basso Open Trade Confirmations.

7

## ARGUMENT

**A.    Basso Cannot Satisfy the Elements of Equitable Estoppel.**

20.        Basso first argues that LCPI should be equitably estopped from assuming the Basso Open Trade Confirmations because Basso purportedly relied on the November 7 Email to its detriment.  This contention is unsupported by both the relevant facts and the controlling case law.

21.        To prevail on a claim of equitable estoppel, the movant must demonstrate that it "(1) lacked knowledge of the true facts, (2) reasonably relied on debtor's misleading conduct, and (3) suffered prejudice as a result of [its] reliance."  In re Texaco Inc., 254 B.R. 536, 561 (S.D.N.Y. 2000) (citation omitted).

22.        Relief on equitable estoppel grounds is unavailable here because Basso cannot demonstrate that it lacked knowledge of the true facts, that it reasonably relied on the Debtors' conduct to its detriment or that the Debtors' conduct was misleading.

*(1)    Basso Had Knowledge of the Material Facts*

23.        As the United States Supreme Court has recognized, the lack of "knowledge of the true facts" element of equitable estoppel requires that the movant show not only that it lacked the relevant knowledge, but also that it would have been unable to obtain the relevant knowledge through the exercise of reasonable diligence:

> The truth concerning these material facts must be unknown to the other party claiming the benefit of the estoppel, not only at the time of the conduct which amounts to a representation or concealment, but also at the time when that conduct is acted upon by him. If, at the time when he acted, such party had knowledge of the truth, *or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means,* he cannot claim to have been misled by relying upon the representation or concealment.

Heckler v. Cmty. Health Servs. of Crawford County, 467 U.S. 51, 59 n.10 (1984) (quoting 3 J.

Pomeroy, Equity Jurisprudence § 805 at 192) (emphasis added).  See also In re WorldCom, Inc.,

364 B.R. 538, 548 (Bankr. S.D.N.Y. 2007) (quoting Heckler, 467 U.S. at 59 n.10).

24.      It is uncontroverted that the November 21 Email notified Basso that

LCPI intended to assume the Basso Open Trade Confirmations.  Additionally, both Basso and its

outside counsel received the Revised Exhibits, which clearly indicated that those trades, formerly

designated "Rejected," were now proposed to be "Assumed."  Whether Basso and its counsel

read and understood, read but misunderstood, or ignored this information does not alter the

indisputable fact that they had possession of these material facts.  Under such circumstances,

where a party has been notified of the relevant facts, this actual, or at least constructive,

knowledge precludes the application of equitable estoppel.  In re Andover Togs, Inc., 231 B.R.

521, 530-31 (Bankr. S.D.N.Y. 1999).

25.      Even if the Court somehow were to find that Basso did not have actual

knowledge, reasonable diligence under Heckler requires Basso to read the one-page, six

paragraph November 21 Email, and requires Basso and its outside counsel to review the Revised

Exhibits for the term "Basso."  Surely, had they taken any of these rudimentary steps, Basso

would have been on actual notice of the facts, and could have filed an objection seven days later

by the November 28 objection deadline.  While Basso offers many excuses for why it only gave

the November 21 Email a "quick review" and, along with its counsel, ignored the Revised

Exhibits, nowhere in its Motion does Basso claim, much less demonstrate, that it acted with

reasonable diligence to acquire the knowledge that it, in fact, held in its hands.  The requirements

of equitable estoppel demand more than this.

### (2)    Basso's Purported Reliance on the November 7 Email and the Original Exhibits Was Not Reasonable

26.        The doctrine of equitable estoppel further requires that the movant demonstrate that its reliance on its adversary's allegedly misleading conduct was reasonable. Basso cannot satisfy this element either.

27.        First, the Debtors' conduct was not misleading.   The Debtors informed Basso that LCPI intended to assume the Basso Open Trade Confirmations in their November 7 Email and in the Original Exhibits.  That was accurate at the time.  Subsequently, after continued analysis as to how to maximize the value of the estates for the benefit of all creditors, the Debtors changed their position and promptly informed Basso of that in the November 21 Email.  Basso's unilateral failure to read or appreciate the November 21 Email and the Revised Exhibits does not render the Debtors' conduct misleading.

28.        Second, as the Supreme Court has observed, "the party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change his position for the worse, and that reliance *must have been reasonable* in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading."  Heckler, 467 U.S. at 59 (internal quotations and citations omitted; emphasis added).  Failure to meet this prong is fatal to the protections of equitable estoppel.  See Falcone v. Pierce, 864 F.2d 226, 230-32 (1st Cir. 1988) (rejecting appellant's equitable estoppel argument solely because it failed to satisfy the element of reasonable reliance); see also In re Chateaugay Corp., 156 B.R. 391, 403 n.16 (S.D.N.Y. 1993) (noting that there could be no reasonable reliance by a debtor where it had means to ascertain the actual facts).

29.        Applying this standard, courts have found that a party cannot choose to rely on one statement, for purposes of estoppel, while ignoring a conflicting statement.  For

example, in <u>Daraghi v. Hymas</u>, No. 05-Civ-8500BSJ, 2007 WL 2274861, *7 (S.D.N.Y. Feb. 9, 2007), a defendant submitted an internally inconsistent interrogatory response, upon which plaintiffs claimed they relied to their detriment.  The court rejected this argument on the basis that plaintiffs' reliance was unreasonable, finding that plaintiffs "should have asked [defendant] for clarification before relying on the statement."  <u>Daraghi</u>, 2007 WL 2274861 at *7.  Likewise, upon receipt of either the November 21 Email or the Revised Exhibits that plainly contradicted the November 7 Email, Basso was put on notice that the Debtors intended to assume the Basso Open Trade Confirmations.  At a minimum, Basso should have sought clarification from the Debtors.

30.     In a similar vein, courts have held that reliance cannot be reasonable where the movant ignores the subsequent disclosure of contradictory facts.  <u>In re WorldCom, Inc.</u>, 364 B.R. at 548-49.  The decision in <u>WorldCom</u> is particularly instructive.  There, movant Whittaker had participated in the board of directors' deferred compensation plan, by which her compensation was placed in a trust owned by MCI.  In 2001, she contacted Putnam Fiduciary Trust Company ("<u>Putnam</u>") to inquire about the account's status.  Whittaker subsequently received an email from Putnam (the "<u>Putnam Email</u>"), stating that the account "is viewed as simply an account with Putnam.  What this means is that the funds in the current account are available to you whenever you choose to take them."  <u>Id.</u> at 541.  After MCI, which had merged with WorldCom, filed for bankruptcy, the trust was frozen on the basis that it was an asset of the debtors' estate.  In claiming an ownership interest in the corpus of the trust, Whittaker argued that the debtors should be equitably estopped from denying that she is the owner of the trust assets based on the Putnam Email.  <u>Id.</u> at 546.

31.      The court rejected Whittaker's arguments, in part, on the ground that any purported reliance by her on the Putnam Email was unreasonable.  Even assuming that reliance on the Putnam Email was initially reasonable, the court found that "a number of subsequent events rendered such reliance unreasonable."  Id. at 548.  For example, Whittaker received at least one quarterly statement that stated that the funds in the trust belonged to MCI.  Both the fact that this disclosure was boilerplate and that Whittaker testified that she had not read the language was unavailing.  Instead, the court found that "Whittaker's failure to read the statement does not excuse her purported reliance on the Putnam Email.  Rather, it again demonstrates that Whittaker could have determined the truth of the matter through reasonable diligence and that her reliance was negligent, not reasonable."  Id. at 549.

32.      A similar set of facts present themselves here.  As in WorldCom, Basso was in possession of information that would allow it to determine the truth of the matter through the exercise of reasonable diligence.  Basso's failure to give the November 21 Email anything more than a "quick review" and the failure of Basso and its counsel to check for the listing of the Basso Open Trade Confirmations in the Revised Exhibits does not excuse Basso's reliance on earlier contradictory notices for purposes of equitable estoppel.  To put it simply, in the discharge of their duties as stewards of the estates, the Debtors changed their mind.  Basso was given plenty of notice of that change.  Basso cannot now be relieved of its own carelessness by claiming equitable estoppel based on its having buried its head in the sand.

33.      LCPI's change in position with respect to the Basso Open Trade Confirmations was not unique.  Indeed, the actions taken by M&G Investment Management Limited and certain affiliated entities ("M&G") are illustrative of the reasonable diligence that Basso could have -- and should have -- exercised upon receipt of the notice that the Debtors had

changed their position.  Like Basso, M&G had initially been informed that the Debtors would

reject their trades, but was later notified that the Debtors intended to assume the trades due to a

revised assessment.  Specifically, on November 4, 2008, the Debtors notified M&G that they

intended to reject the M&G Open Trade Confirmations.  On November 25, 2008, however, the

Debtors sent M&G an email substantially similar to the November 21 Email, advising M&G that

the Debtors would now seek to assume the M&G Trades based on their revised business

assessment.  In light of this email, M&G prepared an objection that it filed on December 11,

2008, just five days before the December 16 Hearing.  Though the objection was untimely, the

Court heard from M&G's counsel at the December 16 Hearing and agreed to consider the issues

raised in M&G's objection "partly because of the changed circumstances" in the Debtors'

position.  A copy of the relevant pages of the December 16 Hearing Transcript is attached at

Exhibit F, see p. 126 to 130.

           34.       Similarly, the actions of Avenue Investments, L.P. ("Avenue") also

illustrate the reasonable diligence that Basso could have and should have exercised after

receiving the November 21 Email and the Revised Exhibits.  Avenue had an Open Trade

Confirmation with LCPI  (the "Avenue Open Trade") that the Debtors initially notified Avenue

that LCPI intended to reject.  On December 15, 2008, however, the Debtors sent Avenue an

email indicating that LCPI would seek to assume the Avenue Open Trade at the December 16

Hearing the following day.  On December 16, 2008, the Court entered the Open Trades Order

with respect to the Avenue Open Trade because of lack of objection from Avenue.  When

Avenue learned that the Open Trades Order included the Avenue Open Trade, Avenue's counsel

immediately contacted the Debtors.  In light of the change in position and the short notice

provided to Avenue, the Debtors agreed to vacate the Open Trades Order as to Avenue and to

give Avenue until January 2, 2009, to file an objection to the Open Trades Motion.  The Debtors

submitted these terms in a proposed order at a hearing on December 22, 2008, which was entered

by the Court on December 23, 2008.  [Docket No. 2258].

35.    The M&G and Avenue examples show that if Basso had exercised the

same -- or even some -- reasonable diligence when it received the November 21 Email and the

Revised Exhibits, it would have been given a reasonable opportunity to be heard.  Basso could

have filed an objection, attended the December 16 Hearing to request an adjournment, contacted

the Debtors to request additional time to file its objection, or sought relief promptly after the

Open Trades Order was entered.  Basso, however, either for strategic reasons or out of pure

carelessness, did nothing.[1]

36.    Furthermore, Basso's purported reliance on only the November 7

Email -- to the exclusion of all other notices, motions, and Court orders (see Basso Motion, at

¶¶ 24, 37-39) -- was not reasonable.  Indeed, it is also irreconcilable with this Court's orders.

The Stipulation, upon which Basso places so much emphasis, expressly provides:  "No Open

Trade Confirmations shall be assumed or rejected without an order of the Court approving same

after notice as required by section 365 of the Bankruptcy Code and the Bankruptcy Rules."  See

Stipulation at ¶ 2.  As such, only an order by the Court would constitute a binding determination

that an Open Trade had been assumed or rejected.  Thus, it is unreasonable for Basso to just stop

paying attention because the Debtors filed a motion.

---

[1] Despite Basso's suggestion to the contrary, the motion for reconsideration of BLT 39 LLC ("BLT") is
not based on similar facts.  See Basso Motion ¶ 65.  While the Debtors did reverse their position on
whether to assume or reject an open trade with BLT, BLT has not denied reading an email sent on
November 25, 2008 notifying it of the Debtors' reversal in position.  Rather, BLT admits that it made a
conscious decision not to object to the Debtors' Open Trades Motion.  See Docket No. 2206 at ¶ 8.

### *(3)*    *The Decision in Texaco Is Inapposite Here*

37.         The Basso Motion relies extensively on In re Texaco, 254 B.R. 536

(S.D.N.Y. 2000).  In that case, the court considered whether a "blizzard" of documents sent by

the debtor to counterparties of certain oil and gas leases sufficiently notified the counterparties

that the debtor reserved its right to argue that the oil and gas leases could not be assumed by the

debtor despite the debtor's motion to assume those very same leases.  Id. at 560-62.  Every

motion paper submitted by Texaco with the court and served on the counterparties "proclaimed

in bold print and repeatedly in text Texaco's intent and request to assume all oil and gas

agreements."  Id. at 561.  In all this "blizzard" of papers, only one ambiguous paragraph and an

ambiguous footnote reserved the rights of Texaco to seek a result other than the assumption of

the leases or suggested that Texaco might do so.  Id. at 562.  The court concluded that such

notices were "palpably insufficient" under the Due Process Clause to deprive the counterparties

of valuable property rights.  Id.

38.         Given the blatant factual distinctions between Texaco and the present

case, Basso is at pains to liken the two.  Seeking to wedge the present facts into the framework of

Texaco, Basso attempts to paint the November 21 Email as an ambiguous notice that hid its true

import.  See Basso Motion ¶ 53.  The facts, however, will not bear this out.  Unlike the

ambiguous paragraph and footnote tucked into the "blizzard" of documents in Texaco, the

November 21 Email is a one-page document devoid of any ambiguity.  It merely states in plain

language that the Debtors had previously informed Basso of LCPI's intent to reject the Basso

Open Trade Confirmations but that LCPI had now decided to seek to assume those trades.  The

language of this simple notice allows for no contradictory interpretations, its meaning and

purpose are not buried, and Basso has not asserted that this language could be interpreted

differently.  That Basso would rest its equitable estoppel arguments almost exclusively on a case as factually distinct as Texaco only highlights that those arguments lack a legal foundation.

39.       Moreover, any suggestion that the November 21 Email was inadequate notice that LCPI would seek to assume the Basso Open Trade Confirmations is plainly inconsistent with Basso's own arguments.  Basso cannot, in one breath, claim that the November 7 Email was adequate notice of LCPI's intended rejection of the Basso Open Trade Confirmations while, in the next breath, assert that an equally straightforward email to the same person on the same subject was inadequate notice of LCPI's intended assumption of those trades.

40.       Finally, Basso ignores a key distinction between the facts in Texaco and those of the instant case.   In Texaco, the debtor sought an order that certain oil and gas leases were legally incapable of being assumed -- in order to avoid the costs of environmental clean up -- nearly *ten years after* the confirmation of the debtor's plan of reorganization, and despite the fact that the debtor had been operating and deriving billions of dollars of revenue under those very same leases that it now claimed to have rejected.  Id. at 555-58.  Indeed, the Court recognized:

> [W]hether an executory contract or unexpired least is assumed under Section 365 or not, and whether or not a particular contract or lease is technically assumable under Section 365 does not matter in the context of this controversy.  In either event*, if the debtor continues to operate under and derive all of the economic benefits of the contract or lease then the debtor retains all of its obligations and burdens and the contract or lease passes through the bankruptcy unaffected by it, just the same as if the contract or lease had been assumed under Section 365.*

Id. at 558 (emphasis added).

41.       Here, LCPI is not seeking to avoid its obligations after years of deriving benefits from the Basso Open Trade Confirmations.  Furthermore, the Debtors notified Basso that LCPI had reversed position only seven days after the filing of the Open Trades

Motion, and almost one month before the Court entered the Open Trades Order.   Unlike the

counterparties in <u>Texaco</u>, Basso did not rely on the Debtors' decade-long or misleading conduct.[2]

**B.    <u>Basso's Careless Conduct Does Not Qualify as Excusable Neglect.</u>**

       42.       Basso also contends that its carelessness is excusable under Rule 60(b)

of the Federal Rules of Civil Procedure, which provides that "the court may relieve a party or its

legal representative from a final judgment, order or proceeding" for certain specific reasons,

including "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b).  As

demonstrated below, Basso does not qualify for relief due to excusable neglect or any other

grounds under Rule 60(b) and the standards of the Second Circuit.

       43.       The United States Supreme Court has articulated four factors to be

considered in determining excusable neglect: "[1] the danger of prejudice to the [non-movant],

[2] the length of the delay and its potential impact on the judicial proceedings, [3] the reason for

the delay, including whether it was within the reasonable control of the movant, and [4] whether

the movant acted in good faith." <u>Pioneer Inv. Servs.v. Brunswick Assocs.</u>, 507 U.S. 380, 395

(1993).

       44.       Here, as demonstrated below, none of the factors support Basso.  That

is unusual.  Indeed, the Second Circuit places primary emphasis on the third factor because

---

[2] Likewise, <u>In re Ionosphere Clubs, Inc.</u>, 85 F.3d 992 (2d Cir. 1996), and <u>In re Momentum Manufacturing Corp.</u>, 25 F.3d 1132 (2d Cir. 1994), also relied upon by Basso, are factually and legally distinguishable. <u>In re Ionosphere</u> involved the debtors' attempt to escape certain obligations under contracts that they had assumed by Court order, and whose benefits they had enjoyed.  The Court stated, "[O]nce a party accepts the proceeds and benefits of a contract, that party is estopped from renouncing the burdens of the contract places on him."  85 F.3d at 999-1000.  The debtor in <u>Momentum</u> sought to amend schedules calling for the assumption of certain severance pay obligations, after the debtor's plan of reorganization had been confirmed, in part, based on the votes of several employees who voted in favor of the plan of reorganization.  Had the debtor originally sought to reject those obligations, the plan would not have been confirmed.  <u>In re Momentum</u>, 25 F.3d at 1137.  In the instant case, LCPI has not sought to reverse its position after the Court entered the Open Trades Order.  Rather, LCPI altered its position three weeks prior to the entry of the Open Trades Order, giving Basso sufficient notice and opportunity to assert an objection.

"[t]ypically, the length of the delay, the danger of prejudice, and the movant's good faith usually weighs in favor of the party seeking the extension.  Consequently, the Second Circuit, as well as other Circuits, focus on the third factor -- the reason for the delay -- as the predominant factor." In re Musicland Holding Corp., 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006); see, also Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 363 (2d Cir. 2003), cert. denied, 540 U.S. 1105 (2004).  As a result, courts within the Second Circuit have declined to find excusable neglect even if only the third factor favors the non-movant.  See In re Musicland Holding Corp., 356 B.R. at 607-09; Seinfeld v. WorldCom, Inc., No. 06-Civ-13274, 2007 WL 987867, *3-4 (S.D.N.Y. Apr. 4, 2007).

45.        Basso's failure to timely (i) file an objection to the Debtors' Open Trades Motion;  (ii) seek an extension of the deadline to file such an objection; or (iii) seek relief from the Open Trades Order was the direct result of the failure of Basso and its counsel to review with reasonable care an email notification, a court filing, and the Open Trades Order.  As such, Basso is not entitled in May 2009 to relief from the Open Trades Order entered in December 2008.  Courts consistently have refused to extend deadlines where a party has submitted an untimely filing owing to its own inattention or lack of oversight.  Silivanch, 333 F.3d at 368-69; Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 251 (2d Cir. 1997); In re Dana Corp., No. 06-10354, 2008 WL 2885901 (Bankr. S.D.N.Y. July 23, 2008); In re D'Amico, No. 93-1429, 1993 WL 293293 (E.D. La. July 26, 1993); In re Diamond Mortgage Corp. of Illinois, 105 B.R. 876, 882-83 (N.D. Ill. 1989).  For example, in Seinfeld v. WorldCom, Inc., a party's counsel failed to file a timely appeal because he had failed to read the email notifications he had received.  Seinfeld v. WorldCom, Inc., No. 06-Civ-13274, 2007 WL 987867, *3 (S.D.N.Y. Apr. 4, 2007).  Appellant's attempt to characterize this oversight as excusable were unsuccessful:

"While [appellant] characterizes the failure of his counsel to read these emails -- which his counsel admits were received on the day they were sent -- as an inadvertence, such conduct rises to the level of neglect and does not merit excuse." Id. at *4.

46.      Likewise, the Court should decline to condone Basso's careless conduct by allowing Basso to assert an objection now.  The inattentiveness at issue here -- the failure of Basso and its outside counsel to even read emails they received regarding these proceedings -- is consistent with the conduct in these other cases in which motions for relief were denied.

47.      It should be emphasized that Basso does not challenge receiving the November 21 Email or the Revised Exhibits.  Instead, Basso claims that they were ambiguous and that neither it -- nor its counsel -- had any reason or obligation to read them.  "Whether a writing is ambiguous is a question of law to be determined from the entire document.  To be ambiguous, a writing must be susceptible to more than one reasonable interpretation." In re Keene Corp., 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995) (citation omitted).  Nothing in the November 21 Email allows for any interpretation but its one simple message:  the Debtors had previously informed Basso of LCPI's intent to reject the Basso Open Trade Confirmations, but LCPI has now decided to seek to assume those trades.  Likewise, the Revised Exhibits indicated that the Debtors intended to assume the Basso Open Trade Confirmations.  See Assumed – Blacklined Version [Docket 2206 Ex. A Part 2] at 4; Rejected – Blacklined Version [Docket 2206 Ex. B] at 9.  Despite Basso's repeated -- and unexplained -- assertions that the November 21 Email and the Revised Exhibits are ambiguous, Basso has not argued that they could be interpreted to mean anything different by anyone who actually reads them.[3]

---

[3] As such, Basso's reliance on In re O'Brien Environmental, 188 F.3d 116 (3d Cir. 1999), is misplaced. In that case, the Third Circuit found that the movant could be excused for failing to consider three

48.    With little else to rest on, Basso also makes much of the subject line of the November 21 Email, claiming that it was innocuous and ambiguous.  This Court has rejected such arguments in the past.  In re Keene Corp., 188 B.R. at 910-911 (rejecting argument that the caption of a Bar Date Notice rendered it ambiguous).  When the language in the body of a notice is unambiguous, as it is in the November 21 Email, parties have not been permitted to excuse themselves from an untimely filing under the third factor in Pioneer due to the language in the caption.  Id.

49.    Consideration of the remaining Pioneer factors does not alter this conclusion, though such consideration is not required by the Second Circuit.  See In re Musicland Holding Corp., 356 B.R. at 607-09 (declining to find excusable neglect solely because the reason for the delay was within the control of the movant); Seinfeld, 2007 WL 987867, *3-4 (same).  As for the first factor, the danger of prejudice to the Debtors, the Debtors' estates would be prejudiced if the Open Trades Order were vacated.  If Basso had timely asserted an objection to the assumption of the trades and prevailed, the Debtors could have sold the debt on the open market before the further decline in the market value.  Since they failed to do so, the Debtors were precluded from maximizing the value of their Greektown holdings.  As for the second factor, the length of delay does not favor Basso.  The Basso Motion was filed five-and-a-half months after Ms. Caufield received the November 21 Email stating that the Debtors would seek to assume the Basso Open Trade Confirmations, and approximately five months after both Ms. Caufield and Basso's outside counsel received the Revised Exhibits indicating that the Debtors

---

paragraphs that "were buried in the middle of a twelve page document."  These facts are clearly distinguishable from the facts in the present case.  Here, the November 21 Email consisted of only one page and concerned only one subject: that LCPI now intends to seek the assumption of the Basso Open Trade Confirmations, which LCPI had previously indicated it intended to reject.  Similarly, all Basso had to look for was its own trades in the Revised Exhibits and they were plainly designated "assumed."

intended to assume those trades.  Courts have found such delays unreasonable under the <u>Pioneer</u>

analysis.  <u>Hefta v. Official Comm. of Unsecured Creditors (In re Am. Classic Voyages Co.)</u>, 405

F.3d 127 (3d Cir. 2005) (four month delay unreasonable).  As to the second prong of the second

factor, the potential impact on the judicial proceedings, permitting Basso to file an objection to

the December 16 Open Trades Order at this late date would be unfair to the many counterparties

who acted with reasonable diligence in filing their objections, and would potentially open a

floodgate for other late objectors to seek the same relief.  <u>See</u> <u>In re Dana Corp.</u>, 2008 WL

2885901, *6.[4]

**C.**      <u>**The Basso Open Trades Cannot be Rejected Without an Order of this Court.**</u>

50.      Basso unreasonably assumed that the Basso Open Trades

Confirmations have been rejected by the Debtors.  Section 365(a) of the Bankruptcy Code

provides that the assumption and rejection of executory contracts is subject to "court approval,"

and courts have routinely recognized an executory contract can only be assumed or rejected by

court order.  <u>See</u> <u>In re Dalen</u>, 259 B.R. 586, 602 (W.D. Mich. 2001).

51.      Furthermore, the Stipulation specifically states, "No Open Trade

Confirmations shall be assumed or rejected without an order of the Court approving same after

notice as required by section 365 of the Bankruptcy Code and the Bankruptcy Rules."  <u>See</u>

Stipulation at ¶ 2.  Thus, whether or not the Court grants Basso relief from the Open Trades

Order, it is indisputable that this Court has never entered an order approving the *rejection* of the

Basso Open Trade Confirmations.  Consequently, Basso was not at liberty to treat the Basso

Open Trades as rejected based purely on the Debtors' filing of the Open Trades Motion.

---

[4] With respect to the fourth factor, ignoring a one page, six paragraph email and service of the Revised
Exhibits and the terms of the Open Trades Order, hardly constitutes a showing by Basso that it acted in
good faith.

## CONCLUSION

52.       As demonstrated above, Basso is not entitled to have the Open Trades Order vacated with respect to the Basso Open Trade Confirmations under either the doctrine of equitable estoppel or Rule 60(b).  Basso seeks to excuse its own failure to read pleadings and notices by characterizing the Debtors' actions as misleading.  As demonstrated above, the Debtors adequately notified Basso of LCPI's decision to assume the Basso Open Trade Confirmations.  That Basso and its counsel decided to ignore these notifications, and ultimately, the Open Trades Order, is of no legal import to the Debtors.  Moreover, Basso's reliance on the November 7 Email -- to the exclusion of all other notifications, filings and Orders -- was not reasonable or justified.   Further, Basso's actions are not excusable under Rule 60(b) where its own carelessness was the cause of Basso's failure to assert a timely objection.  A minimal degree of diligence, as undertaken by other counterparties such as M&G and Avenue, would have permitted Basso to be heard.  In addition to all of the foregoing, it is undisputed that this Court has not entered an order approving the rejection of the Basso Open Trade Confirmations.  Consequently, even if the Open Trades Order had not been entered as to the Basso Open Trade Confirmations, Basso was required to exercise reasonable diligence to determine whether the trades had been effectively rejected.

WHEREFORE, the Debtors respectfully request that the Court enter an order

denying the Basso Motion in its entirety and granting the Debtors such other and further relief as

may be just.

Dated: May 28, 2009
       New York, New York

                                WEIL, GOTSHAL & MANGES LLP

                                By:  /s/ Jacqueline Marcus
                                     Richard L. Levine
                                     Jacqueline Marcus
                                     767 Fifth Avenue
                                     New York, New York 10153
                                     Telephone: (212) 310-8000
                                     Facsimile: (212) 310-8007

                                     Attorneys for Debtors and
                                     Debtors in Possession