# EXHIBIT F

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555 (JMP)

       08-01420 (JMP)(SIPA)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS, INC., et al.

     Debtors.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS INC.,

     Debtor.

- - - - - - - - - - - - - - - - - - - -x

       United States Bankruptcy Court

       One Bowling Green

       New York, New York

       December 16, 2008

       10:05 AM

B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

116

1   the 1st of the year would be sufficient.  I would also think

2   that a hearing date sometime in the month of February would be

3   appropriate.  And my suggestion is that, after you have

4   conferred about the necessary discovery to be taken, that you

5   reduce that to a writing, which I can so order, and that

6   writing include a hearing date that you will get from my

7   chambers.

8         Anything more on this one?  I think not.

9         MR. FELDBERG:  Thank you.

10        MS. MARCUS:  Jacqueline Marcus, Your Honor, for

11  Lehman Brothers Holdings and Lehman Brothers Commercial Paper.

12  And now we turn to number 16 on the agenda.  Your Honor, by

13  motion dated November 14th, the debtors sought authorization to

14  assume or reject over 800 open trades for the sale or purchase

15  of par or distressed debt under Section 365 of the Bankruptcy

16  Code.  As we set forth in the motion, these contracts are

17  executory contracts.  No cure is required, and the debtors can

18  provide adequate assurance of future performance.

19        Twenty-seven objections to the motion were timely

20  filed, and because one objection covered many parties, we

21  believe that there a total of approximately thirty-five

22  objecting parties.

23        Since the adjournment of the initial hearing on this

24  matter, which was scheduled for December 3rd, the debtors have

25  resolved many of the objections, have agreements in principle

1    with many of the other objectors and have agreed to adjourn the

2    hearing with respect to the remaining group, some to December

3    22nd and the rest to the January 14th omnibus hearing date.

4    And perhaps the best way to go through it, Your Honor, is to

5    use what I call my scorecard in terms of where we are with

6    which parties.

7              THE COURT:  Okay.

8              MS. MARCUS:  We have settled the disputes with eleven

9    parties:  GoldenTree, Barclays Bank, York Capital, THL Credit

10   Partners, BlackRock Financial Management, Pentwater Capital

11   Management, CFIP, D.L. Babson, Aberdeen, USAA and Bank of Nova

12   Scotia.  Of those eleven parties, however, we have not -- you

13   know, we kind of ran out of time.  There were three of them as

14   to which we don't have signed letter agreements, and,

15   therefore, they will go into the category that will be

16   adjourned to December 22nd.  But we do believe we have an

17   agreement with them.  With respect to THL Credit Partners, we

18   have a stipulation and agreed order terminating the open trade

19   confirmation as to them, which I'll hand up when we're done.

20             The group to be adjourned to December 22nd is a total

21   of sixteen:  the three that I referred to earlier and, in

22   addition, AIB International, Putnam Investments, Deutsche Bank,

23   the Tennenbaum entities, Evergreen and Wachovia, and all of the

24   clients of Richards Kibbe & Orbe, P. Schoenfeld, Bank of

25   America, Field Point, Morgan Stanley, Millennium Management,

118

1    Longacre Capital Partners, DK Acquisition and the Royal Bank of

2    Scotland.  Let me just check; make sure I didn't miss anybody.

3    More.  Oh, I'm sorry.  The group that's being adjourned to

4    January 14th is H/2 Credit Partners, Goldman Sachs, KKR, Lloyds

5    TSB, Citigroup, Whippoorwill, JPMorgan, AXA, Blue Mountain, Fir

6    Tree and R3.

7            THE COURT:  Is there any significance to the fact

8    that some of these matters are being adjourned longer than

9    others, or is it just a matter of convenience so that you have

10   more time to negotiate with parties that may require more time?

11           MS. MARCUS:  Two things, Your Honor.  One is that

12   December 22nd is virtually tomorrow as far I'm concerned, and

13   when we --

14           THE COURT:  It is virtually tomorrow.

15           MS. MARCUS:  -- when we adjourned on December 3rd, we

16   totally underestimated how much time this would all take.  So

17   we really prefer the January 14th date.  There were certain

18   parties that preferred not to wait that long.  There are others

19   where -- were there, including several of the Richards Kibbe

20   clients.  We just don't have a writing.  So we're hoping -- I

21   hope that December 22nd may not actually be an argument or an

22   evidentiary hearing but may be a further update in terms of

23   where we are with perhaps eight or ten more resolutions and

24   then pushing the whole thing to January 14th.

25           With respect to Tennenbaum, we actually were anxious

119

 1    to proceed with them today.  But, due to weather conditions, it

 2    was difficult for Mr. Kieselstein (ph.) to get here, so we

 3    agreed to give him a short adjournment.

 4              THE COURT:  Okay.

 5              MS. MARCUS:  That leaves, Your Honor, and hopefully

 6    everybody in the courtroom will agree, three objections that we

 7    haven't addressed, and those are the three parties that filed

 8    late, and I mean very late, objections.  Those are M&G, Halbis

 9    and Pyrrhuloxia.  And their objections were filed --

10    Pyrrhuloxia's on December 10th, M&G's on December 11th and

11    Halbis on December 12th.  The debtors request, Your Honor, that

12    you overrule those objections.  We understand that -- the

13    objection deadline on the motion was November 28th.  It was the

14    Friday after Thanksgiving, I believe, and obviously we were

15    prepared to be reasonable in terms of people who might have

16    been a day or two late.  But what the debtor did in terms of

17    figuring out how to resolve these issues was take the whole

18    universe of objections and really do an analysis of what fell

19    into which category.  And the fact that parties have filed

20    objections within the last few days, in our view, is

21    inexcusable, and those objections should be overruled.

22              We would like Your Honor to hand up an order today

23    which grants the relief requested as to the hundreds and

24    hundreds of trades where no objection was filed and as to

25    everybody with whom we have reached an agreement.  The debtors

120

 1   are very eager to start closing these trades.  We believe that

 2   it would be in the best interest of the distressed trading loan

 3   industry as well for us to get started doing that.

 4           THE COURT:  I think that's fine, and I -- I'm

 5   prepared to enter an order dealing with either those who never

 6   said a word or those who said lots of words and reached

 7   agreements.  I think we should, however, hear from counsel to

 8   the extent there is anyone here on behalf of each of the three

 9   objectors who are late but who may have excuses.  And just in

10   looking at the three objections, and I brought them along

11   because I didn't want to fumble through my big binders to get

12   them, so I separately broke out the three objections that are

13   up for discussion now, one seems to involve pure joinder.

14   That's -- and I can't pronounce this name well.  It's P-Y-R-R-

15   H-U-L-O-X-I-A.  Pyrrhuloxia, perhaps?

16           MS. MARCUS:  I don't know, but that's how I pronounce

17   it.

18           THE COURT:  That's just joinder.  The objection of

19   M&G argues about a change of position of the debtor where

20   assumption went to rejection and there was an expense

21   undertaken by them in reliance, they allege, on that earlier

22   position, which may put this one in a different category.  And

23   the Halbis Distressed Opportunity Master Funds objection

24   includes a number of issues, but one is that it's not an

25   assignment, but a participation of the transaction with

121

1    Quebecor's lenders has not yet been effected.  I don't know if

2    that's true; that's just what I remember reading.

3           MS. MARCUS:  It's correct, Your Honor, that it is a

4    participation, but we don't believe that that's an obstacle to

5    our assumption.

6           THE COURT:  Okay.  My question, then, before we get

7    to each of the objectors, is whether there is, with the

8    exception of Pyrrhuloxia, which is pure joinder, something

9    about the Halbis or M&G positions that distinguished them from

10   the others and that might put them in a category that, even

11   though they're late, it would be worth addressing separately.

12          MS. MARCUS:  Well, Your Honor, I agree with you that

13   M&G is slightly different because there was a change of

14   position.  I'm relying on what I read in their objection, that

15   they were notified on November 25th.  I believe that's probably

16   correct.  And I wouldn't have held them to a November 28th

17   deadline on that basis, but --

18          THE COURT:  Especially with Thanksgiving in between.

19          MS. MARCUS:  Right.  Some people work on

20   Thanksgiving, but -- but having said that, a lot of time has

21   passed since then, and December 11th, without, as far as I

22   know, a phone call, a communication, any word that there was an

23   issue here, is really not a fair position to put the debtors

24   in.  So we would argue that they are likewise late.

25          Halbis -- you know, again, they could have raised the

122

1    issue.  They made a phone call on December 2nd.  On December

2    2nd -- December 3rd, excuse me, on December 3rd we said go

3    ahead and file your objection, we're reserving our rights to

4    argue it's late.  But, again, if they had done that December

5    4th, 5th, 6th, then we might have been able to engage in a

6    conversation with them.  But filing it on December 12th was --

7    it was just impossible, and, again, it's prejudicial to the

8    debtors.

9        THE COURT:  Okay.  I think I should hear from counsel

10   for these objectors, and they can go in any order they choose.

11       MR. POTTER:  Your Honor, I'm on the phone.  Patrick

12   Potter for Pyrrhuloxia.  I'm happy to go in any order.

13       THE COURT:  Well, since you're on the phone and

14   you've introduced yourself to all of us, why don't you go

15   first?

16       MR. POTTER:  Thank you, Your Honor.  Very briefly,

17   the -- in terms of the -- in terms of an excuse, the -- it's

18   just about a situation where the pleading staff in the lawyers'

19   office were -- they spent a period of time and then caught our

20   attention and then we responded to it.  It was first brought to

21   counsel's intention on the 4th of December, and we responded to

22   it promptly internally with the client and made a

23   recommendation last week, and an objection was filed on the

24   10th.  If you can even put this in a little bit of context, it

25   was -- the objection was twelve days late.  In speaking with

123

1    the client in terms of, you know, did the client receive the

2    motion in a timely fashion, my understanding, candidly, is that

3    the client did receive the motion in a timely fashion and that

4    they had some internal difficulties determining how they were

5    wanting to analyze and handle the motion.  That was the

6    delay -- explanation for the delay in bringing it to counsel's

7    attention.

8         But I will say this, Judge, which is that when you

9    look at the substance of the position, there's a fifteen

10   million dollar fling, if the position that we are adopting and

11   joining in is correct.  That's a substantial economic impact on

12   my client.  And while I hear the conclusory assertion of

13   prejudiced is better, I don't know what the grounds or basis is

14   for the debtor to assert that it has been prejudiced by a

15   twelve-day delay in filing an objection as to a cure amount.

16        So I think, when Your Honor looks at the equities and

17   balances the potential harm to my client of upward to fifteen

18   million dollars, and based upon a late filed objection to a

19   cure amount to the debtor, which I haven't heard articulated

20   yet the economic or other harm that will fall on the debtor if

21   the Court agrees to ultimately hear the objection, then it

22   seems to me there is a substantial imbalance of equities if the

23   Court refuses to hear our objection.  So we would ask that the

24   Court overrule the position of the debtor, allow us to go

25   forward with the objection.

124

1    THE COURT:  What does the debtor have to say?

2    MS. MARCUS:  I'm taking a breath before I respond.

3    THE COURT:  That's fine.  Everybody should take a

4    nice deep breath right now and relax.

5    MS. MARCUS:  The debtors' position, Your Honor, is

6    that if this was such an important issue for Pyrrhuloxia, then

7    they should have been careful to contact the debtor -- contact

8    counsel for the debtor and initiate the discussions shortly

9    after that motion was filed.

10    THE COURT:  Let me make a comment which is not

11    limited to this objection.  It's a case management issue, and

12    it addresses not only the points raised here but the way a case

13    of this size tends to work.  And this is purely from the

14    Court's perspective, and it's a comment which I make to

15    everyone who's involved who's listening.  I recognize that

16    there's an enormous amount of work that goes on that I don't

17    see until it's proofed and final and filed.  And there's a

18    tremendous amount of effort that goes into every pleading that

19    I read.  Yet, it takes me a very long time just to do that,

20    just to do the reading.  So I recognize that there's a

21    tremendous amount of legal effort associated with every one of

22    these contested matters.  And in the case of the open trades,

23    which is the one we're dealing with now, there are so many

24    objections with a multiplicity of particular issues to that

25    trade that the work associated with it is probably even

125

1    greater.

2         That having been said, from the perspective of pure

3    judicial administration, even in cases much smaller than this,

4    case management deadlines must have meaning, and they must have

5    meaning because otherwise there is no order ever.  Otherwise,

6    last-minute papers are being filed routinely on the eve of

7    every hearing.  It's happening already, and it's happening

8    through the debtors' own filings.  I'm not, in any respect,

9    critical of that, but there are notices of revised forms of

10   order and reply briefs and letter briefs that are filed by

11   other parties.  And there was even yesterday a second motion

12   filed, not on for today, on open trade, which largely deals

13   with an issue which is not presently before me, which is the

14   setoff question, although it deals with other issues as well.

15        My point is that there must be order or there will be

16   what amounts to an unmanageable process.  And so, as to the

17   Pyrrhuloxia, LP late objection, which simply adopts the

18   positions of other objectors, I'm not going to consider it.

19   It's too late, not just for itself but as an emblem of what's

20   wrong with any case in which, except for the good cause shown,

21   pleading deadlines will be strictly applied.  That's true for

22   everyone, unless there is a really good reason to deviate.  The

23   limited joinder of Pyrrhuloxia is overruled because it's

24   untimely.

25        MS. MARCUS:  Thank you, Your Honor.

126

1          THE COURT:  Now let's go on to the next.

2          MR. POTTER:  Your Honor, may I be excused from the

3     hearing?

4          THE COURT:  Oh, yes, unless you're interested in

5     hearing what happens to the next one.

6          MS. TAPINEKIS:  Good afternoon, Your Honor.  Sara

7     Tapinekis, from Clifford Chance, for M&G Investment Management

8     Limited, "M&G".  With respect to the timeliness of M&G's

9     objection, Your Honor, M&G's a UK entity that received an e-

10    mail late in the evening of November 25th that, contrary to the

11    debtors' prior e-mail on November 4th and contrary to the

12    debtors' motion to reject the trades with the four funds

13    managed by M&G, the debtors had changed their mind and now

14    intended to assume these trades.  As a result, this UK entity

15    had to have a certain amount of time to get this e-mail to the

16    appropriate person, to reach out to the four funds, to find

17    counsel in another country and to review their objection and

18    prepare their objection with that counsel, which was done as

19    soon as possible.  Moreover, as of the date that the M&G

20    entities' objection was filed, the debtors had still not

21    amended their motion seeking to assume the trades.  At that

22    point, the motion still sought to reject the trades.

23          Moreover, Your Honor, when you're talking about

24    prejudice to each side as a result of the late filing,

25    something that should be considered is the fact that the

127

1  debtors have already agreed to adjourn many of the disputed

2  trade confirmations that are before the Court.  And I don't --

3  in that regard, I think that if you're balancing the harm

4  between M&G with respect to their late notice and the debtors,

5  I think it would be fair to adjourn this hearing with respect

6  to M&G as well.

7          THE COURT:  Why did it take so long to file the

8  papers?

9          MS. TAPINEKIS:  As I said, M&G is an investment

10  manager for four funds.  When they received the e-mail, they --

11  I can't testify as to exactly what they did, and I don't

12  know --

13          THE COURT:  They made a mistake?

14          MS. TAPINEKIS:  I'm sorry?

15          THE COURT:  Did they make a mistake?

16          MS. TAPINEKIS:  Did M&G make a mistake?

17          THE COURT:  Yes.

18          MS. TAPINEKIS:  No.  M&G --

19          THE COURT:  Did anybody make a mistake?

20          MS. TAPINEKIS:  I think the debtors made a mistake,

21  but I don't think that M&G made a mistake in trying to get this

22  filed as soon as possible.  No one --

23          THE COURT:  One of the things I don't understand

24  about this one, this argues -- your objection argues about a

25  change in position --

128

1          MS. TAPINEKIS:  Yes.

2          THE COURT:  -- and about various undertakings that

3    your client entered into to hedge out or cover the trades

4    elsewhere, correct?

5          MS. TAPINEKIS:  That's correct, Your Honor.

6          THE COURT:  You first got notice of the assumption

7    motion earlier.  Was there any thought, as far as you know, on

8    the part of your client, to take a position with respect to the

9    original assumption?

10         MS. TAPINEKIS:  To take a position with respect to

11   objecting to the --

12         THE COURT:  Yes.

13         MS. TAPINEKIS:  I'm sorry, Your Honor.  The original

14   notice was that the trades would be rejected.

15         THE COURT:  Oh, I'm sorry.  It's the other way

16   around, then.

17         MS. TAPINEKIS:  Yes.

18         THE COURT:  It was originally supposed to be rejected

19   and now it's being assumed?

20         MS. TAPINEKIS:  That's correct.

21         THE COURT:  I had it backwards.  I apologize.

22         MS. TAPINEKIS:  No problem.

23         THE COURT:  So, when it was being rejected, you had

24   no -- your client had no interest in taking a position, is that

25   right?

129

1          MS. TAPINEKIS:  As far as I know, they weren't my

2     client at the time.

3          THE COURT:  Okay.  I understand your argument, even

4     though I had it backwards.

5          MS. TAPINEKIS:  Thank you, Your Honor.

6          MS. MARCUS:  If I may respond briefly, Your Honor,

7     under the Bankruptcy Code, as we all know, an assumption or

8     rejection requires an order of the Court.  So, despite what we

9     had included in our motion, we didn't have an effective

10    assumption or rejection; we don't yet until we have an order of

11    the Court approving what we've decided to do.

12          The second point I'd like to make is the role of the

13    creditors' committee in this analysis.  And we've -- I think we

14    have done actually very well at keeping them abreast of what we

15    were doing, and they've been on board with us most of the way.

16    But when we first filed the motion, they basically engaged in a

17    process of reviewing the debtors' business decisions on a lot

18    of these trades.  And I believe that the M&G trade, like some

19    others, was in the group where the creditors' committee and its

20    professionals had weighed in and disagreed with the debtors'

21    business judgment and persuaded us that there was a better

22    approach, and that's why we made the change.

23          THE COURT:  Okay.  Let me tell you what I'm concerned

24    about on this one, which I think puts it in a -- it may have

25    company in terms of others that are -- that involved an

1   original decision to reject that became an assumption or an

2   original decision to assume that became a rejection.  But

3   partly because of the changed circumstances and the fact that

4   this was originally a rejection that might have led a party to

5   say okay, they're rejecting it, not much I can do about that,

6   and that when it became an assumption I think some of the

7   notice issues that we're talking about become harder to draw

8   with sharp lines because of this changed circumstance.  So,

9   notwithstanding what I said about the last one, I think this

10  one's different.  And I'm inclined to allow this one to go to

11  another hearing date, unless the debtor can show manifest

12  prejudice if it's adjourned.

13          MS. MARCUS:  Your Honor, I think Mr. Walsh will

14  confirm that we're prepared to adjourn this one to January

15  14th.

16          THE COURT:  Fine.

17          MS. MARCUS:  All right.

18          THE COURT:  That leaves Halbis.

19          MS. LEVY:  Good morning, Your Honor --

20          THE COURT:  Good afternoon --

21          MS. LEVY:  -- Carol -- good afternoon already.

22          THE COURT:  -- actually.

23          MS. LEVY:  Look at that.  Carol Weiner Levy, from

24  Bingham McCutchen, for Halbis Distressed Opportunities Master

25  Fund.  Counsel -- debtors' counsel is correct as far as our,

131

1    Halbis', communications directly with debtors' counsel.  We

2    spoke to them on the 3rd, I believe it is, to find out what had

3    happened at the hearing and to find out the protocol for

4    closing a trade that was meant to be a participation.  However,

5    Halbis, and me personally, were in contact with Lehman

6    personnel prior to that date to try to find out what Lehman was

7    going to do in order to close a participation.  Surely, they

8    must have had a protocol for closing trades that were not

9    assignments but were participations where a Chapter 11 debtor

10   was then going to have continuing obligations under a

11   participation agreement as opposed to simply getting out of a

12   trade, whether it's by rejection or assumption, closing the

13   trade and moving on.

14        Jessica Markowitz, at Lehman, was contacted on a

15   couple of occasions.  She then told us to speak to -- or e-mail

16   Tina Chen at Lehman, who was e-mailed.  And each time the issue

17   was raised this is a participation, this is different, what

18   kind of protocol are you going to establish, and each time the

19   answer was we're looking at it, we're looking at it, we'll let

20   you know.

21        Quite frankly, Your Honor, I would like to not have

22   filed an objection.  I think that this probably is something

23   that should have been and could have been dealt with as an

24   administrative matter directly with Lehman because I do think

25   this is an unusual circumstance.  I don't think there is any

132

1    trade -- there may be, in fact, only one trade out there that

2    is also participation.  And so, hoping that this could get

3    resolved the way -- in a business sense, or at least without

4    having to deal with an objection, it wasn't until the 12th that

5    we filed an objection.

6            But, again, the debtor was put on notice on several

7    occasions that this was a problem they had to deal with and

8    assured us that things were going to be dealt with or looked

9    at.  And so, therefore, that's why an objection was not made.

10   Even if the objection is not heard today, Your Honor, Halbis

11   believes that Lehman cannot possibly close on a participation

12   in a way that the LSTA sets forth risks in a participation

13   agreement, and so that even if this trade is assumed and

14   somewhere down the road gets documented, or at least some kind

15   of a negotiation is entered into in order to document the

16   participation agreement, there will be a point where Halbis

17   cannot possibly be protected by having a Chapter 11 debtor on

18   the other side of a participation agreement.

19           THE COURT:  Let me ask you this, Ms. Weiner Levy.

20           MS. LEVY:  Um-hum.

21           THE COURT:  Assuming that I overrule your objection

22   as untimely and not on the merits and life goes on in the

23   financial world and there is an effort to close this trade, is

24   your client in any way prejudiced in terms of filing a motion

25   or raising an issue as to the suitability of your counterparty

133

1    if your objection is overruled not on the merits?

2          MS. LEVY:  Other than for the fact that there has

3    been considerable time, obviously, in putting together the

4    objection and showing up to a rather lengthy hearing.

5          THE COURT:  That was your client's choice.

6          MS. LEVY:  Right.  That's true.

7          THE COURT:  Or maybe it was your choice.  It was

8    somebody's choice.  It wasn't an obligation.

9          MS. LEVY:  That's -- that is true.  I think that it

10   is likely that Halbis would probably be filing a motion to

11   terminate the trade based on the fact that satisfactory

12   documentation cannot be -- could not be negotiated.  And so --

13         THE COURT:  Fine.

14         MS. LEVY:  -- we will be back here at some other

15   point.

16         THE COURT:  Fine.  I'll see you some other time,

17   then, because your objection is being overruled as untimely --

18         MS. LEVY:  Thank you, Your Honor.

19         THE COURT:  -- without prejudice to your filing

20   appropriate documentation in terms of a motion or dealing with

21   this privately without a motion, if that's a way to solve it.

22         MS. LEVY:  We would like to.  Thank you, Your Honor.

23         THE COURT:  Thank you.

24         MS. MARCUS:  Your Honor, just as to a couple of

25   housekeeping matters, because this was a moving target in terms

134

1  of the parties who signed letters or didn't sign letters, the

2  copy of the order we have with us in court today is not quite

3  correct.  So what we'd like to do, with the Court's permission,

4  is submit an order later this afternoon for your signature.

5        THE COURT:  Absolutely.

6        MS. MARCUS:  And, secondly, I've been asked to

7  clarify.  I misspoke about one of the parties.  Evergreen and

8  Wachovia, I think I said, would be adjourned to December 22nd,

9  and they want to be on the January 14th list.

10       THE COURT:  Okay.

11       MS. MARCUS:  So we'll do that.  Thank you, Your

12 Honor.

13       THE COURT:  Thank you.  Are we doing derivatives now?

14       MS. MARCUS:  Yes.

15       MR. LEMONS:  Good morning -- or, I guess, afternoon,

16 Your Honor.  It's Robert Lemons again on behalf of the debtors,

17 for agenda item number 17, which is the debtors' motion for an

18 order pursuant to Sections 105 and 365 of the Bankruptcy Code

19 to establish procedures for the settlement or assumption -- I'm

20 sorry, for the settlement or assumption and assignment or pre-

21 petition derivative contracts.  Your Honor, we're here because

22 the debtors have approximately 900,000 transactions under

23 derivative contracts, of which, as of today, approximately 900

24 -- I'm sorry, 930,000, of which today approximately 900,000

25 have reportedly been terminated and approximately 30,000 remain