531935 09/09/1998 04:39P B1087 P862 M ALSDORF
1 of 25 R 0.00 D 0.00 GARFIELD COUNTY CO

Jean Alberico, Clerk and Recorder of Garfield County certifies this to be a
full, true and correct copy of the original recorded document in my custody.
Date: 5/28/09   By: Jean m Alberico County Clerk

**SEAL**
GARFIELD COUNTY
COLORADO

9-8-98

STATE OF COLORADO      )
                       )ss
County of Garfield     )

At a regular meeting of the Board of County Commissioners for Garfield County, Colorado, held in the Commissioners' Meeting Room, Garfield County Courthouse, in Glenwood Springs on Monday and Tuesday , the 20th and 21st days of July A.D. 19 98 , there were present:

Marian Smith _____, Commissioner Chairman
Larry McCown _____, Commissioner
John Martin _____, Commissioner
Don Deford _____, County Attorney
Mildred Alsdorf _____, Clerk of the Board
Edward Green _____, County Administrator

when the following proceedings, among others were had and done, to-wit:

RESOLUTION NO. _98-80_

A RESOLUTION CONCERNED WITH THE APPROVAL OF A PLANNED UNIT DEVELOPMENT (PUD) APPLICATION FOR THE **ROSE RANCH PUD**.

WHEREAS, the Board of County Commissioners of Garfield County, Colorado, has received application from the *Roaring Fork Investments L. L. C.* for a *PUD* to allow for approval of a Planned Unit Development; and

WHEREAS, Garfield County Planning Commission held a public hearing on Wednesday the 27th of May, 1998 and continued said hearing to Monday the 1st of June, 1998, upon the question of whether the above described *PUD* should be granted or denied, at which hearing the public and interested persons were given the opportunity to express their opinions concerning the approval of said *PUD*; and

WHEREAS, the Board held a public hearing on Monday, the 20th day of July, 1998 and continued said hearing to Tuesday the 21st day of July, 1998, upon the question of whether the above described *PUD* should be granted or denied, at which hearing the public and interested persons were given the opportunity to express their opinions regarding the issuance of said *PUD*; and

EXHIBIT

A

531935 09/09/1998 04:39P B1087 P863 M ALSDORF
2 of 25 R 0.00 D 0.00 GARFIELD COUNTY CO

WHEREAS, the Board on the basis of substantial competent evidence produced at the aforementioned hearing, has made the following determination of fact as listed below.

1.    That proper publication and public notice was provided as required by law for the hearing before the Board of County Commissioners.

2.    That the hearing before the Board of County Commissioners was extensive and complete, that all pertinent facts, matters and issues were submitted and that all interested parties were heard at that hearing.

3.    That the application is in compliance with the Garfield County Zoning Resolution of 1978, as amended.

4.    For the above stated and other reasons, the proposed use, upon compliance with all conditions of approval, will be in the best interest of the health, safety, morals, convenience, order, prosperity and welfare of the citizens of Garfield County.

and; WHEREAS the Board has made the following determination of findings as listed below.

1.    The Applicant's application was filed with the Planning Department of Garfield County on 3 March 1998, and referred to the Planning Commission on 6 April 1998.

2.    The Garfield County Planning Commission reviewed the Application and recommended approval of the Application under certain conditions on 1 June 1998.

3.    The Board of County Commissioners established a date for public hearing on the Application for the PUD and the vesting of the development rights per §24-68-103, C.R.S., as amended, which commenced on 20 July 1998 at 2:30 p.m. and was thereafter properly continued to 21 July 1998 at 8:00 o'clock a.m.

4.    Pursuant to evidence produced at the public hearing on this Application, the Board finds:

a.    that the property owners adjacent to the property that is the subject of this Application received notification of the date, time, and location of the above-referenced public hearing by certified mail, sent at least fifteen (15) days prior to the commencement of the hearing;

b.    that notification of the public hearing was published in a newspaper of general circulation at least thirty (30) days prior to the commencement of the hearing;

c.    that the substance of the mailed and published notification substantially informed interested parties of the subject matter and the location of the requested modification to the existing zoning;

531935 09/09/1998 04:39P B1087 P864 M ALSDORF
3 of 25 R 0.00 D 0.00 GARFIELD COUNTY CO

    d.   that the Board of County Commissioners has jurisdiction to conduct the public hearing on the Application and render a decision thereon; and

    e.   that the requested PUD does not affect in a substantially adverse manner either the enjoyment of land abutting upon or across a street from the PUD, or the public interest, and is not granted solely to confer a special benefit upon any person.

5.    The hearing before the Board of County Commissioners was extensive and complete; all pertinent facts, matters, and issues were submitted; and all interested parties were heard at the hearing.

6.    The PUD, as conditioned herein and in accordance with §4.04 of the Garfield County Zoning Resolution of 1978, as amended, and §24-67-105(1), C.R.S., as amended, will be in general conformity with the Garfield County Comprehensive Plan.

7.    Pursuant to §4.07.01 of the Garfield County Zoning Resolution of 1978, as amended, the Board of County Commissioners herein find that, subject to strict compliance with the conditions set forth herein, the PUD will meet the standards and requirements of §4.00, et seq. of that Zoning Resolution.

8.    The overall density of the development, under the terms and the conditions set forth herein and pursuant to the provisions of §4.07.06 of the Garfield County Zoning Resolution of 1978, as amended, will be no greater than an average density of 0.54 dwelling units per acre.

9.    Subject to the conditions set forth below, all uses by right, conditional uses, minimum lot areas, minimum lot coverage, minimum set-backs, maximum height of buildings, and all other use and occupancy restrictions applicable to this PUD are hereby approved by the Board of County Commissioners as set forth in the zone text attached hereto and incorporated herein as Exhibit A.

10.    The PUD, subject to the conditions set forth herein, will be designed with the consideration of the natural environment of the site and the surrounding area, and will not unreasonably destroy or displace wildlife, natural vegetation, or unique features of the site.

11.    Subject to the provisions of §4.08.06 of the Garfield County Zoning Resolution of 1978, as amended, the Board of County Commissioners find that no portion of the PUD conditionally approved herein may be occupied until appropriate final plats have been approved by this Board.

09 ... ered 05/28/09 18:40:22    Exhibit A to
District ... arfield County Treasurer    Pg 4 of 25
531935 09/09/1998 04:39P B1087 P865 M ALSDORF
4 of 25 R 0.00 D 0.00 GARFIELD COUNTY CO

NOW, THEREFORE, BE IT RESOLVED by the Board of County Commissioners of Garfield County, Colorado, that the **Rose Ranch PUD** is hereby approved subject to compliance with all of the following specific conditions:

A.   All representations made by the Applicant at the Public Hearing and in the Application shall be considered conditions of approval, unless specified otherwise by the Board including, but not limited to, the following items listed below.

1.   The applicant shall make three (3) locations on the north end of the West Bank Golf Course available for public access for fishing while working with the Division of Wildlife on siting these locations. At the time of preliminary plan submission, the applicant shall propose the three (3) locations.

2.   The applicant shall restore the building located on the property which is believed to have been built in the 1800's, and shall relocate this building within the site. At the time of preliminary plan submission, the applicant shall propose a method for restoration of the structure.

3.   The permit applicant shall donate $750.00 per housing unit to the Roaring Fork Transit Agency at the time of building permit. The total contribution shall amount to $219,000.00 and shall be used for the construction of the park and ride facility located at the CMC intersection. The applicant shall propose a method of enforcement as part of the preliminary plan submittal.

4.   The applicant shall present the mitigation techniques to be used to control the debris flow channel to the Board of County Commissioners at the preliminary plan submission.

5.   The applicant shall straighten out the curved road along County Road 109 between Hardwick Bridge and West Bank subdivision. The applicant shall fund the cost of the improvement with the amount credited toward the the road impact fee applied to this project. The applicant shall submit a design which illustrates the curve straightening within the preliminary plan submittal.

6.   The golf course operations shall have an affordable play component for Garfield County residents and a discounted green fee. The applicant shall propose a method of establishing the operations as part of the preliminary plan submittal.

7.   The applicant, or subsequent golf course owner, shall maintain and clean the concrete structures protecting the golf path with each debris flow event. Such language shall be written into the Homeowners Association. The applicant will propose a method of enforcement as part of the preliminary plan submittal.

531935 09/09/1998 04:39P B1087 P866 M ALSDORF
5 of 25 R 0.00 D 0.00 GARFIELD  COUNTY CO

8.    The applicant shall restrict the construction of basements to those sites where the consulting geotechnical engineers determine basements will be safe to locate.

9.    The applicant shall provide the Colorado State Geologist with acceptable designs to control the debris flow on the site and shall obtain the State Geologist's approval at the time of preliminary plan submission.

10.   The applicant shall commit to no commercial activities outside of those associated with the golf course and the day care facility proposed.

11.   The applicant shall submit the preliminary plan at one time and not in phases.

12.   The applicant shall provide a lawful source of water at the submission of the preliminary plan to ensure that adequate EQRs are committed to this project.

13.   The applicant shall provide a final plat form of the structure of security for waste water at submission of the preliminary plan to ensure the physical construction of the plant.

14.   The applicant shall be allowed to design a total maximum square footage of 25,000 for all of the commercial buildings on the site.

15.   The applicant shall install a vegetative screen to block the effects of increased traffic through the development of a screening plan for the Richard Weinberg property as a part of the preliminary plan submittal.

B.    All representations made by the Applicant in relationship to the wildlife plan including the following items listed below.

1.    The applicant shall create a mitigation plan which describes conformance with the Division of Wildlife's conditions, as part of the preliminary plan submittal, including the following:

a.    place within the protective covenants, as a condition of approval, the placement of educational signs at the primary overlook regarding golden eagle nesting, and the closure of the ridge south of the eagle's nest from 15 March through 1 July with fines imposed on those found in violation;

b.    place within the protective covenants the closure of the upper golf course and ridge to human activity, excluding maintenance, from 1 December through 31 March with a gate and a sign and fines imposed for any violation thereof;

08-13555-mg    Doc 6-1    Filed 05/28/09    Entered 05/28/09 18:40:22    Exhibit A to
Declaration ... ... county Treasurer    Pg 6 of 25
531935 09/09/1998 04:39P B1087 P867 M ALSDORF
6 of 25 R 0.00 D 0.00 GARFIELD COUNTY CO

c.      install habitat improvement measures on the upper bench west of CR 109, undertake the development of a site plan with the DOW, and provide for the maintenance and the protection from disturbance of the native vegetation outside of the golf course;

d.      forbid the construction of the water tank and the line west of CR 109 from 15 March through 1 July due to golden eagle nesting activities;

e.      create a vegetative screen plan approved by the DOW, and plant vegetation along the east boundary of proposed Lots 108 through 118, 70 through 80, and 76 through 77;

f.      forbid the removal of trees along the river and the wetland areas except for exotic and invading species;

g.      create an educational brochure for distribution to all homeowners on how to live with wildlife;

h.      provide a 50-foot setback from the wetlands to the home-site;

i.      maintain the 110 foot buffer between Rose Ranch and Teller Springs in native vegetation, and install vegetative screening along all of those lot boundaries;

j.      provide a public fishing easement along the West Bank property downstream from the bridge;

k.      forbid the construction of the primary overlook from 15 March through 1 July;

l.      plant vegetative screening along the east boundary of proposed Lots 108 through 118 to screen homesites and backyard activity from the rookery;

m.      place vegetative screening before any construction activity;

n.      forbid the construction of homes from 15 February through 31 May on proposed Lots 94 through 96 and 108 through 118;

o.      forbid human activity in the riparian and wetlands areas below proposed Lots 94 through 118 and across from the rookery from 15 February through 15 July by the use of fencing and signage as well as fines imposed for any violation thereof;

     p.     install an artificial nesting platform on the east side of the river by the rookery; and

     q.     prohibit the construction of second story decks and/or balconies facing the rookery for proposed Lots 108 through 118 unless a screening plan subject to approval by the Division of Wildlife is submitted.

C.     All representations made by the Applicant concerning the Carbondale & Rural Fire Protection District including the following items listed below.

     1.     Information to be submitted with the preliminary plan including the following:

          a.     ensure that water supplies from the Rose Ranch development are made available for future extension to these areas for fire protection purposes. Stub and size the lines appropriately so that they are available for future tap-ins for fire flow;

          b.     require a minimum flow of 1,500 gallons per minute (gpm);

          c.     provide impact fees adopted by the Carbondale & Rural Fire Protection District which are due prior to recording of a final plat;

          d.     complete plans in accordance with the Uniform Fire Code (UFC) Appendix III-A: Fire Requirements for Buildings; and

          e.     locate fire hydrants in accordance with the UFC Appendix III-B: Fire Hydrant Locations and Spacing.

D.     All items indicated in the staff report including the following items listed below.

     1.     The applicant shall submit a preliminary plan that adheres to all recommendations contained within the reports of their consulting geotechnical engineers including, but not limited to, the following:

          a.     establish a minimum setback from sinkholes of twenty (20') feet; and

          b.     protect against erosion through revegetation and rock rip-rap. Furthermore, grading shall not be proposed or conducted on slopes greater than thirty (30%) percent.

2. Locate ponds in the area of least geologic impact and line the ponds with an industrial grade liner in accordance with the geotechnical recommendations with the exception of those ponds which are existing. The applicant shall submit designs of ponds in areas of least geological impact at preliminary plan submission.

3. Rebuild the road or provide the finances to do such should irrigated golf course holes 11 and 12 immediately above County Road 109 result in a continuation of road damage. The preliminary plan shall provide the method by which the owners of the golf course will secure performance of this obligation.

4. For any property ultimately approved at final plat, the developer and his consultants shall indemnify the county from any claims by a homeowner, or third party, associated with the following:

   a. homes which will be subject to breaks in their foundations due to collapsible underlying geology and highly permeable soils and the effects of irrigating the golf course holes and the lawns;

   b. liners which may break when a pond is at it's full water capacity if differential settlement of several inches occurs beneath them;

   c. severe hydrocompactive soil properties which are problematic for roadways and slab on grade pavements;

   d. potential ground subsidence in the majority of the alluvial fans where development is proposed resulting in ground subsidence, sinkholes, ground fissuring, and piping soil dissolution; and

   e. potential ground settlement and subsidence in the residential areas surrounding the proposed ponds within the alluvial fan areas due to severe wetting of these hydrocompactive soils by the ponds.

5. At the time of preliminary plan submittal, the developer shall provide the method by which indemnification will be financially secured.

6. Provide plat notes regarding the need for specialized engineered foundations on areas composed of hydrocompactive soils at the time of preliminary plan submittal.

7. Provide detailed plans on the mitigation of the collapsible soils for all building foundations, road construction, and utility construction proposed at the time of preliminary plan submittal.

8.  Provide detailed plans on the proposed foundation stabilization designs of the proposed ponds at the time of preliminary plan submittal.

9.  Make use of native vegetation which requires less water consumption by requiring the planting of native grasses on all fairways and lawns on the site. The plan shall abide by the recommendations of the consultant's golf course management report at the time of preliminary plan submittal.

10. Ensure that an adequate physical, potable water supply will be available to all units at the time of the preliminary plan submittal.

11. Secure a firm commitment of adequate sewage treatment, as well as an agreed method of financial security, from the Roaring Fork Water and Sanitation District through committed number of taps for the project to be guaranteed at preliminary plan.

12. Provide cash in-lieu-of the calculated dedicated land, to be paid at the time of final plat approval, to compensate for the increase in school children generated from this proposed development. The cash amount shall be set at the time of final plat.

13. Establish a minimum setback for buildings lots at one hundred feet (100') from the river bank at the time of the preliminary plan submittal.

14. Establish a Wildlife/Vegetative easement/buffer along the river corridor on the preliminary plans for staff review.

15. Ensure that the trail is a continuous link; and construct the trail along CR 109 to Glenwood Spring's Rivertrails specifications at the time of the preliminary plan submittal.

16. Develop a program for monitoring surface water quality; and restrict the use of pesticides and fertilizers at the time of the preliminary plan submittal.

17. Create a six (6) acre conservation easement along the riverfront of the project to protect the Great Blue Heron rookery upon submission of the preliminary plan.

18. Eliminate the potential for river contamination through runoff from the golf course and support water quality monitoring efforts and monitoring of the riparian health as a part of the preliminary plan submittal.

19. Provide a preliminary plan for ten percent (10%) of the total housing units proposed as attainable housing units to be located on the project site. The applicant shall work with the Carbondale Affordable Housing Corporation, the Garfield County Housing Authority, the Housing for Tomorrow Commission, and the Glenwood Board of

Realtors.  The housing shall be created to accommodate individuals who earn within 80% of the median income in this valley with no more than 1/3 rd of their income spent on total housing costs.

20.    Provide plans and a construction schedule at the time of preliminary plan submission regarding the following:

a.    construct a controlled intersection upon approval of the first final plat unless the Colorado Department of Transportation (CDOT) requires a grade separated intersection.  In which case, the applicant shall contribute its fair share of the total cost to construct a grade separated access at the intersection of SR 82 with CR 154;

b.    install signalization in addition to accel/decel lanes to upgrade Highway 82 to Level C at the time of approval of the first final plat and consistent with approval from CDOT;

c.    obtain a clarification from CDOT regarding the Access Permit which reserves the right to stop left-hand turns onto Highway 82 to indicate the circumstances under which this could happen; and

d.    utilize the existing CMC turnoff intersection for left-hand turns to serve this project.  Unless a signalized intersection is approved by CDOT at this location, left-hand turns shall be eliminated for safety reasons.

21.    Provide payment of the applicable road impact fee at the time of final plat approval.

22.    Construct improvements to CR 109 between Hardwick Bridge and the first entrance to the subdivision at first final plat.  Provide the plan designs at the time of preliminary plan submission.  The applicant shall fund the cost of the improvement with the amount credited toward the road impact fee applied to this project.

23.    The applicant will be allowed to use a maximum building height of up to thirty-five (35') feet based, upon the application of preliminary plans, which will be evaluated for potential impacts resulting from an increase in building height on the site specific locations.

24.    Save and repair Building #8 at the time of the first final plat.  Evaluate the potential to save and repair the cold storage cellar as a part of this proposed PUD at the time of preliminary plan submittal.

25.    Ensure that the cart path proposed within the drainage channel of the canyon will not increase the rate of runoff and debris flow and that mitigation structures are installed to manage these factors at the time of preliminary plan submission.

08-13555-mg   Doc 2686-1   Filed 05/28/09   Entered 05/28/09 18:40:22   Exhibit A to
Affidavit of Garfield County Treasurer   Pg 11 of 25

531935 09/09/1998 04:39P B1087 P872 M ALSDORF
11 of 25 R 0.00 D 0.00 GARFIELD COUNTY CO

26. Provide a design of the canyon golf cart path which, from a geotechnical and debris flow model within the canyon area, will be safe for pedestrians and for homesites located down gradient at the time of preliminary plan submission.

27. Require xeroscape landscaping measures for all proposed homes located on the unirrigated alluvial fan and collapsible soils within the development as part of the covenants at the time of preliminary plan submission.

28. Identify a plan for a tract of land reserved for community gardens at a size sufficient for each unit to manage a plot for home use at the submission of a preliminary plan.

E.   All recommendations of conditions of compliance as contained within the letter from Wright Water Engineers dated 21 May 1998 as itemized below.

1. Submit a preliminary plan that buries the storage tank, shown west of County Road 109 on the south end of the property along an existing access road, to minimize visual impacts. Conduct a geotechnical analysis of the site.

2. Provide fire flow requirements from 1,500 to 2,000 gpm for two hours (18,000 to 240,000 gallons) and increase the storage tank requirements accordingly at the time of preliminary plan submission. Tank overflow shall be piped across County Road 109 to a suitable location to avoid erosion and wetting of hydrocompactive soils.

3. Obtain the final court decree or a state approved substitute water supply plan before approval of the preliminary plan.

4. Provide a preliminary geotechnical plan which addresses the minor debris flows on the alluvial fans in areas not historically irrigated. Also, provide preliminary plans which consider the effect of water on the soils and the subsurface conditions. Provide additional geotechnical analysis of the smaller depression areas until more detailed site specific studies are conducted.

5. Submit an Individual 404 Permit, including an alternatives analysis at the time of preliminary plan submission if such permit is needed for any work proposed for this project.

6. Provide a copy of a formal agreement, at the submission of the preliminary plan, between the development and other ditch users (i.e., Westbank) on how the ditch will be operated and maintained in the future.

7.     Provide a preliminary plan design which removes the use of the Robertson Ditch to collect some of the storm water uphill of the ditch on the drainage plan on Sheets 2 and 3 of the Sketch Drawings. The preliminary plan shall show a design with a buffer zone maintained along the Robertson Ditch and with surface water runoff directed away from the ditch itself.

8.     Provide a design at preliminary plan for stream bank restoration of the Northeast Dry Park Drainage Ditch for debris flow mitigation. This restoration shall be evaluated in conjunction with the debris flow mitigation analysis.

9.     Reevaluate the debris flow mitigation plan, prior to submission of the preliminary plan, since it differs slightly from recommendations in the October 29, 1997 report by Hepworth-Pawlak.

10.     Provide a preliminary plan design to address the crossing of the Northeast Dry Park Drainage and Robertson Ditch intersection as to its adequacy and/or improvement since it appears to have been reworked several times in the past.

11.     Provide a preliminary plan which uses a minimum culvert size of 18 inches in diameter and which shall be constructed with head walls and end sections. The drainage report recommends the use of culverts sized to accommodate 25-year storm and, in some cases, the 100-year storm.

12.     Use types of BMPs with consideration of the geotechnical issues discussed herein upon submission of the preliminary plan. The drainage report recommends the use of rapid sand filters and other infiltrating BMPs to treat surface water runoff from parking lots.

13.     Reevaluate the precipitation depths used in the drainage report, upon submission of the preliminary plan, which appear to be low when compared to the NOAA Atlas II, Volume III for Colorado which indicates that the 25-year, 24-hour storm has a 2.2-inch depth and the 100-year, 24-hour storm a 2.7-inch depth (versus a 2.0" and 2.4").

14.     Provide a preliminary plan design which shows adequate setback buffers, for all development on the plan, from rivers, wetlands, and ditches (potable water supply).

15.     Identify the method of maintenance of all drainage structures, including the debris flow structure, with an appropriate enforcement mechanism at the submission of the preliminary plan.

16.     Develop a snow storage plan, including any area that will be used for storage of snow that has been plowed and removed, to be submitted at the time of preliminary plan.

531935 09/09/1998 04:39P B1087 P874 M ALSDORF
13 of 25 R 0.00 D 0.00 GARFIELD COUNTY CO

17. Provide an extensive erosion control preliminary plan, not only for construction, but also under developed conditions, and on the section of the golf course located on the western portion of the site which is on very steep terrain.

18. Provide appropriate signage, at the time of the preliminary plan submission, to warn of the danger at the Northeast Dry Park Drainage which is subject to flash flooding.

19. Adjust Golf course Hole 10 fairway, which is currently laid out over the Northeast Dry Park Drainage, at the time of the preliminary plan submission.

20. Include a drainage plan, in the preliminary plan submittal, for the proposed reconfiguring of nine holes into seven holes at the Westbank Golf Course addition. It appears that wetland areas are impacted by the proposal.

21. The applicant will submit evidence of abiding by the following Best Management Practices within the preliminary plan:

    a. use the Best Management Practice (BMP) listed in the drainage report including the use of settling ponds or wetland ponds for water quality of on-site storm water. Pond design shall consider the impacts on soils and on slope stability;

    b. extend BMP practices to individual lawns and parks, especially those areas that are in close proximity to water courses. The project submittal discusses several BMP practices that shall be used for the golf course which includes minimizing watering, optimizing fertilizer usage, use of sand filters and grass swales for the golf course;

    c. develop a water quality sampling and monitoring plan to identify existing water quality for surface and for groundwater resources and to monitor any changes during to construction and after development. The submittal proposes to improve water quality through the use of the noted BMPs; and

    d. develop a maintenance plan for all BMPs.

22. The applicant shall include the following design recommendations in the preliminary plan golf course design:

    a. direct runoff away from sensitive areas such as streams, shallow groundwater, wetlands, etc. into areas where ponding and infiltration can occur;

    b. include buffers for Robertson Ditch and the Northeast Dry Park Drainage where they transverse the golf course;

531935 09/09/1998 04:39P B1087 P875 M ALSDORF
14 of 25 R 0.00 D 0.00 GARFIELD COUNTY CO

c.      select seed mixtures for turf and for native grass that are compatible;

d.      preserve and reuse existing topsoil;

e.      consider under drains at tees and at greens for storage and for passive treatment of contaminated leachate to protect groundwater;

f.      provide adequate setback buffers for all development from streams, rivers, lakes, and wetlands;

g.      strictly limit the use of pesticides and fertilizers, and use appropriate types for site conditioning on a management unit basis;

h.      develop an Integrated Pest Management Plan, including use of Biological Treatments (i.e., use of pest resistant turf grass, establishing populations of natural enemies, maintaining balance turf grass ecosystems, and use of mechanical seeding, etc.);

i.      develop source controls, spill prevention, and spillway emergency plans for storage and for handling of pesticides, fertilizers, and fuel; and

j.      develop record keeping systems.

Final irrigation issues must be addressed for the golf course including effects on subsurface soils and stability and water source for the upper (western) golf course.

F.      All items recommended by the Planning Commission and listed by the Board of County Commissioners at the public hearing as itemized below.

1.      Provide covenants that will minimize outdoor lighting and will forbid outdoor lighting from shining off of the property, but rather ensure that outdoor lighting will shine down and in towards the structure, at the time of preliminary plan submission.

2.      Provide covenants, at the time of preliminary plan submittal, that will institute a limit of two (2) wood burning fireplaces in the clubhouse. All other structures and residences on the Rose Ranch development are prohibited from having wood burning fireplaces or stoves.

3.      The developer shall compensate the County for retention of an independent geotechnical engineer to review and to monitor all of the mitigation measures that were proposed in the applicant's submission for both the preliminary plan and the final plat.

Dated this __9th__ day of __September__ ; A.D. 19__98__.

ATTEST:

GARFIELD COUNTY BOARD OF
COMMISSIONERS,    GARFIELD
COUNTY, COLORADO

_Mildred Alsdorf_
Clerk of the Board

_Marian I. Smith_
Chairman

Upon motion duly made and seconded the foregoing Resolution was adopted by the following vote:

COMMISSIONER CHAIRMAN MARIAN I. SMITH _____, Aye
COMMISSIONER LARRY L. MCCOWN _____, Aye
COMMISSIONER JOHN F. MARTIN _____, Nay

STATE OF COLORADO    )
                     )ss
County of Garfield   )

I, _____, County Clerk and ex-officio Clerk of the Board of County Commissioners in and for the County and State aforesaid do hereby certify that the annexed and foregoing Resolution is truly copied from the Records of the Proceeding of the Board of County Commissioners for said Garfield County, now in my office.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said County, at Glenwood Springs, this _____ day of _____, A.D. 19_____.

County Clerk and ex-officio Clerk of the Board of County Commissioners

_____

531935 09/09/1998 04:39P B1087 P876 M ALSDORF
15 of 25 R 0.00 D 0.00 GARFIELD COUNTY CO

08-13555-mg   Doc 3686-1   Filed 05/28/09   Entered 05/28/09 18:40:22   Exhibit A to
Objection of Garfield County Treasurer   Pg 16 of 25

pages i to x

# Land Use Summary

## SKETCH PLAN

| 1. RESIDENTIAL | UNITS | ACRES | % OF TOTAL |
|---|---|---|---|
| River Res. 1 | 21 | — | — |
| River Res. 2 | 17 | — | — |
| 20,000 Sq.Ft. (Min.) | 27 | — | — |
| 15,000 Sq.Ft. (Min.) | 70 | — | — |
| 9,000 Sq.Ft. (Min.) | 36 | — | — |
| Duplex Lots | 74 | — | — |
| Club Homes | 47 | — | — |
| *SUBTOTAL:* | 292 | *105.55* | *19.8%* |

| 2. ROADS | ACRES | % OF TOTAL |
|---|---|---|
| *SUBTOTAL:* | *26.27* | *4.9%* |

| 3. OPEN SPACE | ACRES | % OF TOTAL |
|---|---|---|
| Connunity Park/Gardens | 2.76 | 0.7% |
| Golf Course | 223.2 | 55.6% |
| Community Open Space | 175.72 | 43.7% |
| *SUBTOTAL:* | *401.66* | *75.3%* |

| *TOTAL ACREAGE* | *533.5* | *100.0%* |
|---|---|---|

| *GROSS DENSITY* | *0.54 DU/AC* |
|---|---|



531935 09/09/1998 04:39P B1087 P877 M ALSDORF
16 of 25 R 0.00 D 0.00 GARFIELD  COUNTY CO

531935 09/09/1998 04:39P B1087 P878 M ALSDORF
17 of 25 R 0.00 D 0.00 GARFIELD COUNTY CO

## A.    Applicability

To carry out the purposes and provisions of the Garfield County Zoning Regulations, as amended, the Rose Ranch Planned Unit Development (PUD) Zone District is divided into the following zone district classifications:

- River Residential 1 Zone District
  (PA's 3 & 8)

- River Residential 2 Zone District
  (PA 9)

- 20,000 Square Foot (Minimum) Residential Zone District
  (PA's 2, 4 & 15)

- 15,000 Square Foot (Minimum) Residential Zone District
  (PA's 1, 5, 10, 12, 13, 16, 17 & 18)

- 9,000 Square Foot (Minimum) Residential Zone District
  (PA's 6, 7, 11, 14 & 21)

- Duplex Residential Zone District
  (PA 19)

- Club Homes Residential Zone District
  (PA 20)

- Common Open Space Zone District
  - Golf Course
  - Community Park
  - Common Open Space (General)

The PUD plan identifies twenty-one (21) distinct Planning Areas (PA's) in which residential development may occur. Totaling 113.91 acres, the residential development will be confined to approximately 21.4% of the site. The remainder of the site is designated for roadways (4.9%) and Common Open Space (73.7%). Within the Common Open Space Zone District, the Golf Course comprises 41.8%, the Community Park comprises 0.4% and the Common Open Space (General) comprises 31.5% of the total PUD Common Open Space acreage. The land use summary on the PUD and within this document delineates the overall land use and density proposed for the Rose Ranch PUD by Planning Area.

42% area

ii

531935 09/09/1998 04:39P B1087 P879 M ALSDORF
18 of 25 R 0.00 D 0.00 GARFIELD COUNTY CO

## (D) Zoning Districts

### 1. River Residential 1 Zone District

| | |
|---|---|
| Intent: | Individual lot ownership with single family detached residential structures |
| Permitted Uses: | Single-family residential units; non-habitable accessory buildings and structures; home offices; sales/marketing center; public and private roads; Private Open Space Easements; open space; utility and drainage easements |
| Minimum lot size: | 0.70 acres |
| Maximum building height: | 35' |
| Minimum lot width: | 175', except for lots which are narrower due to added depth |
| Minimum lot depth: | 175', except for lots which are more shallow due to available depth between road and wetland/boundary 30' form ordinary high water mark |

Minimum primary building setbacks:

| | |
|---|---|
| Front | 40' for lots that are a minimum of 200' deep; 30' for lots less than 200' deep |
| Rear | 50' for lots that are a minimum of 200' deep; 25' for lots less than 200' deep |
| Side | 30' for lots 200' minimum width; 25' for lots less than 200' in width |

| | |
|---|---|
| Parking: | A minimum of 4 off street parking spaces must be provided for each primary residential structure; this requirement may be satisfied by the garage and/or driveway. |
| Other: | Building envelopes shall be established that are generally more restrictive than those established by standard setbacks. These may be the result of natural constraints on a lot. All building envelopes shall be finalized at time of subdivision. |

### 2. River Residential 2 Zone District

| | |
|---|---|
| Intent: | Individual lot ownership with single family detached |

RECEIVED
APR 0 2 1998
GARFIELD COUNTY

08-1... ...386-1... ...ed 05/28/09 18:40:22   Exhibit A to
531935 09/09/1998 ...er   Pg 19 of 25
19 of 25 R 0.00 D 0.00 GARFIELD COUNTY CO

residential structures

| | |
|---|---|
| Permitted Uses: | Single-family residential units; non-habitable accessory buildings and structures; home offices; sales/marketing center; public and private roads; Private Open Space Easements; open space; utility and drainage easements |
| Minimum lot size: | 0.50 acres |
| Maximum building height: | 35' |
| Minimum lot width: | 100' |
| Minimum lot depth: | 175', except for lots which are more shallow due to available depth between road and wetland/boundary 30' from ordinary high water mark |

Minimum primary building setbacks:

| | |
|---|---|
| Front | 35' for lots that are a minimum of 175' deep; 25' for lots less than 175' in depth |
| Rear | 50' for lots 175' minimum depth; 25' for lots less than 175' deep |
| Side | 30' for lots 150' minimum width; 20' for lots less than 150' in width |

| | |
|---|---|
| Parking: | A minimum of 4 off street parking spaces must be provided for each primary residential structure; this requirement may be satisfied by the garage and/or driveway. |
| Other: | Building envelopes shall be established that are generally more restrictive than those established by standard setbacks. These may be the result of natural constraints on a lot. All building envelopes shall be finalized at time of subdivision. |

### 3.)  20,000 Square Foot Residential Zone District

| | |
|---|---|
| Intent: | Individual lot ownership with single family detached residential structures |
| Permitted Uses: | Single-family residential units; non-habitable accessory buildings and structures; home offices; sales/marketing center; public and private roads; open space; and utility and drainage easements |

iv

RECEIVED
·APR 0 2 1998
GARFIELD COUNTY

Minimum lot size:              20,000 square feet

Maximum building height:   35'

Minimum lot width:            80', measured at front building line

Minimum lot depth:            150'

Minimum primary building setbacks:

| | |
|---|---|
| Front | 30' |
| Rear | 20' |
| Side | 10' or ½ height of principal building, whichever is greater |
| Side/corner | 20' |

Parking:        A minimum of 4 off street parking spaces must be provided for each primary residential structure; this requirement may be satisfied by the garage and/or driveway.

Other:          Building envelopes may be established that are more restrictive than those established by standard setbacks.  These may be the result of natural constraints on a lot.  All building envelopes shall be finalized at time of subdivision.

## 4.     15,000 Square Foot Zone District

Intent:            Individual lot ownership with single family detached residential structures

Permitted Uses:        Single-family residential units; non-habitable accessory buildings and structures; home offices; sales/marketing center; public and private roads; open space; and utility and drainage easements

Minimum lot size:              15,000 square feet

Minimum lot width:            80', measured at front building line

Minimum lot depth:            120'

Maximum building height:   35'

RECEIVED
APR 0 2 1998
GARFIELD COUNTY

v

Minimum primary building setbacks:

| | |
|---|---|
| Front | 30' |
| Rear | 20' |
| Side | 10' or ½ height of principal building, whichever is greater |
| Side/corner | 20' |

Parking:    A minimum of 4 off street parking spaces must be provided for each primary structure; this requirement may be satisfied by the garage and/or driveway.

Other:    Building envelopes may be established that are more restrictive than those established by standard setbacks. These may be the result of natural constraints on a lot. All building envelopes shall be finalized at time of subdivision.

## 5. 9,000 Square Foot Residential Zone District

Intent:    Individual lot ownership with single family detached residential structures

Permitted Uses:    Single-family residential units; non-habitable accessory buildings and structures; home office; sales/marketing center; public and private roads; open space; and utility and drainage easements

Minimum lot size:    9,000 square feet

Minimum lot width:    75', measured at front building line

Minimum lot depth:    90'

Maximum building height:    35'

Minimum primary building setbacks:

| | |
|---|---|
| Front | 25' |
| Rear | 20' |
| Side | 10' |
| Side/corner | 15' |

Parking:    A minimum of 4 off street parking spaces must be provided for each primary structure; this requirement may be satisfied by the garage and/or driveway.

RECEIVED
APR 0 2 1998
GARFIELD COUNTY

Other:                          Building envelopes may be established that are more restrictive
                                than those established by standard setbacks. These may be the
                                result of natural constraints on a lot. All building envelopes shall
                                be finalized at time of subdivision.

## 6. Duplex Residential Zone District

Intent:                         Individual lot and unit ownership with two-family attached
                                residential structures

Permitted Uses:                 Single-family residential units; two-family residential units;
                                non-habitable accessory buildings and structures; home
                                office; sales/marketing center; time-share or fractional
                                ownership units; public and private roads; open space; and
                                utility and drainage easements

Minimum lot size:
     Duplex                     8,000 square feet (2 units/double lot)
     Single Family
        Detached                8,000

Minimum (double) lot width:         75', measured at front building line

Minimum lot depth:              90'

Maximum building height:        35'

Minimum setbacks:

        Front                   20'
        Rear                    15'
        Side/non-adjoining      10'
        Side/corner             15'

Parking:                        A minimum of 4 off street parking spaces must be provided
                                for each primary structure; this requirement may be
                                satisfied by the garage and/or driveway.

Other:                          Building envelopes may be established that are more
                                restrictive than those established by standard setbacks.
                                These may be the result of natural constraints on a lot. All
                                building envelopes shall be finalized at time of subdivision.

RECEIVED
APR 0 2 1998
GARFIELD COUNTY



531935 09/09/1998 04:39P B1087 P884 M ALSDORF
23 of 25 R 0.00 D 0.00 GARFIELD COUNTY CO

**⑦.    Club Homes Residential Zone District**

| | |
|---|---|
| Intent: | Individual lot and unit ownership with single family attached or detached residential structures |
| Permitted Uses: | Single-family residential units; non-habitable accessory buildings and structures; home offices; sales/marketing center; time-share or fractional ownership units; public and private roads; open space; trails; and utility and drainage easements; community gardens |
| Minimum lot size: | 5,000 square feet for detached units; no minimum lots size for attached units -- common ownership of open areas within this zone district is permitted |
| Maximum Gross Density: | 6 dwelling units/acre |
| Minimum Gross Density: | 4.5 dwelling units/acre |
| Maximum building height: | 35' |
| Minimum lot width: | 45' for detached units; no minimum lot width for attached units |
| Minimum lot depth: | 80' for detached units; no minimum lot depth for attached units |

Minimum primary building setbacks:

| | |
|---|---|
| Front | 15' from street or driveway |
| Rear | 15' |
| Side | 0' with 15' minimum between primary structures, excluding attached units |
| Side/corner | 15' |

| | |
|---|---|
| Parking: | A minimum of 4 off street parking spaces must be provided for each primary residential detached structure or 2 off street parking spaces for attached residential structures; this requirement may be satisfied by the garage and/or driveway. |

**⑧.    Common Open Space Zone District**

| | |
|---|---|
| Intent: | To provide a hierarchy of privately owned open space, both developed and undeveloped. |

RECEIVED
APR 02 1998
GARFIELD COUNTY

531935 09/09/1998 04:39P B1087 P885 M ALSDORF
24 of 25 R 0.00 D 0.00 GARFIELD COUNTY CO

**a.)    Golf Course**

Intent:                                    To provide an opportunity for recreational golf.

Permitted Uses:                            Recreational golf course; golf clubhouse facilities
                                           including but not limited to pro shop, restaurant,
                                           lounge; driving range; golf related activities; golf
                                           shelters; community greenhouse; golf course
                                           maintenance and accessory facilities; community
                                           facilities; homeowners' association facilities;
                                           utilities; utilities access

Maximum structure height:                  35', restricted to golf course clubhouse; other
                                           structures limited to maximum height of 25'

Maximum structure height (utilities):      35', restricted to water storage tank;
                                           other structures limited to maximum
                                           height of 25'

Minimum building setbacks:

     To County Road 109              25'
     To any adjacent residential use 25'

Other:                                     Golf course acreage will be finalized during
                                           platting; golf course may be parcelized / platted for
                                           ownership purposes

**b.)    Community Park**

Intent:                                    To provide an opportunity for active recreational
                                           activities for residents of Rose Ranch.

Permitted Uses:                            Active recreation including but not limited to
                                           tennis; swimming pool; volleyball; daycare
                                           facilities; homeowners' association facilities; tot lot;
                                           horseshoes; trails; open space; picnic facilities;
                                           utilities

Maximum structure height:    25'

Other:                                     Ownership and maintenance will be under the
                                           control of the HOA

RECEIVED
APR 02 1998
GARFIELD COUNTY

 **c.**  **Common Open Space (General)**

Intent:

To provide open areas for recreation, visual relief, buffering and wildlife habitat

Permitted Uses:

Useable open space; limited open space; community gardens; community greenhouse; parking; trails; pedestrian linkages; golf cart paths; ponds; overlooks; drainage and utility easements; utilities; utilities access

Maximum structure height (utilities):

35', restricted to water storage tank; other structures limited to maximum height of 25'

Other:

It is anticipated that one community water system storage facility will be built in the upper valley, west of County Road 109. This facility will be non-detectable from County Road 109 and accessible by means of a maintenance access path.

x



RECEIVED
APR 02 1998
GARFIELD COUNTY