Reception#: 760386
12/22/2008 02:31:21 PM Jean Alberico
1 of 18 Rec Fee:$0.00 Doc Fee:0.00 GARFIELD COUNTY CO

### DECLARATION OF DEED RESTRICTION AND AGREEMENT CONCERNING THE SALE, OCCUPANCY AND RESALE OF PROPERTY DESCRIBED AS LOTS 297 THROUGH 316, IRONBRIDGE PLANNED UNIT DEVELOPMENT, PAHTE II, GARFIELD COUNTY, COLORADO

THIS DECLARATION OF DEED RESTRICTION AND AGREEMENT CONCERNING THE SALE, OCCUPANCY AND RESALE OF PROPERTY described as Lot 297 through 316, Ironbridge Planned Unit Development, Phase II, Garfield County, Colorado ("Agreement") is made and entered into this 19th day of December, 2008, by LB Rose Ranch, LLC, a Delaware limited liability company (the "Declarant"), for the benefit of the parties and enforceable by the Garfield County Housing Authority ("GCHA"), a duly constituted housing authority established pursuant to Colorado law, its successor or agent, and the Board of County Commissioners of Garfield County, Colorado (the "Governmental Entity").

### RECITALS AND DEFINITIONS

A. Declarant is the owner of and is in the process of developing and either platting or condominiumizing a residential community known as Ironbridge Planned Unit Development ("Ironbridge"), Garfield County, Colorado; and

B. Declarant desires to set aside 20 Units within Ironbridge, for the purpose of providing affordable housing for persons employed or residing full time in Garfield County, Colorado (the "County"), which Units are identified as Lot 297 through 316, Ironbridge Planned Unit Development, Phase II, according to the Final Plat therefore recorded in the records of the Clerk and Recorder for Garfield County, Colorado on July 19, 2006 as Reception No. 70240. For purposes of this Declaration and Agreement, such real property and all dwellings, appurtenances, improvements and fixtures associated therewith shall be referred to herein individually as a Unit or collectively as Units or Property; and

C. After completion of construction, each Unit, together with fixtures, equipment and appurtenances thereto, shall be conveyed to "Qualified Buyers" as defined below; and

D. The Garfield County Affordable Housing Guidelines adopted by the Governmental Entity as part of the Garfield County Zoning Code and Subdivision Regulations shall constitute the Affordable Housing Guidelines ("Guidelines") referred to throughout this document; and

E. GCHA is a duly constituted Housing Authority established pursuant to Colorado law, and the Governmental Entity is a statutory county established pursuant to Colorado law, both of which have rights to enforce this Agreement as set forth herein; and

F. The term "Qualified Buyers," as used herein, are natural persons meeting the income, residency and all other qualifications contained in the Governmental Entity's

1

Q:\R\Rose Ranch\DEVELOPMENT\9-24-08 Deed Re



Reception#: 760386
12/22/2008 02:31:21 PM Jean Alberico
2 of 18 Rec Fee:$0.00 Doc Fee:0.00 GARFIELD COUNTY CO

Guidelines, as amended, who must represent and agree pursuant to this Agreement to occupy the Unit as their sole place of residence, not engage in any business activity within the Unit other than that permitted in that zone district or by applicable ordinance, and not sell or otherwise transfer the Unit for use in a trade or business; and

G.  The term "Owner," as used herein shall mean the person(s), other than a Non-Qualified Transferee as defined in **Section 4**, who acquires an ownership interest in a Unit in compliance with the terms and provisions of this Agreement, it being understood that such person(s) shall be deemed an "Owner" hereunder only during the period of his, her or their ownership interest in the Unit and shall be obligated hereunder for the full and complete performance and observance of all covenants, conditions and restrictions contained herein during such period.

NOW, THEREFORE, for value received, the receipt and sufficiency of which is hereby acknowledged, Declarant hereby declares, covenants, and agrees as follows:

## SECTION 1
## DECLARATION

1.1 For the purposes set forth herein, Declarant, for itself and its successors and assigns, hereby declares that the Property, and each Unit within the Property, shall be owned, held, transferred, conveyed, sold, leased, rented, hypothecated, encumbered, used, occupied, improved, altered and enjoyed subject to the covenants, conditions, restrictions, privileges, rights and other provisions herein set forth, for the duration hereof, and all of which shall run with the land and be binding upon all Owners, occupants and other persons, including Non-Qualified Transferees, having or acquiring any right, title or interest in or to the Property or any Unit thereof, and their respective heirs, personal representatives, successors and assigns and shall be binding upon and inure to the benefit of the Governmental Entity, and their respective successors and assigns. All persons who purchase Units shall be Qualified Buyers, as such term is defined in this Declaration.

1.2 Declarant hereby restricts the acquisition or transfer of the Units to Qualified Buyers, as that term is defined in this Agreement, who fall within the qualifications established and adopted by the Governmental Entity from time to time in its Guidelines. In addition, Declarant agrees that this Agreement shall constitute a resale agreement setting forth the maximum resale price for which the Units may be sold ("Maximum Resale Price"), the amount of appreciation, and the terms and provisions controlling the resale of the Units. Declarant restricts the Property and Units against use and occupancy inconsistent with the terms of this Agreement.

1.3 By the acceptance of any deed conveying any Unit subject hereto, the grantee of such deed shall accept all of the terms, conditions, limitations, restrictions and uses contained in this Agreement. In addition, prior to the delivery of a deed conveying any Unit to a grantee, such grantee shall execute a Memorandum of Acceptance in the form attached hereto as **Exhibit A**, evidencing grantee's acknowledgment and agreement to the terms, conditions, limitations, restrictions, and uses contained in this Agreement.

2

Reception#: 760386
12/22/2008 02:31:21 PM Jean Alberico
3 of 18 Rec Fee:$0.00 Doc Fee:0.00 GARFIELD COUNTY CO

1.4 Notwithstanding any provision of this Agreement to the contrary, it is expressly agreed and acknowledged that the terms, conditions, and restrictions of the Agreement with respect to the use and occupancy of any Unit thereof shall not apply to Declarant during its ownership thereof following the issuance of a Certificate of Occupancy for the Unit, provided, however, that the Declarant shall make no transfer of any Unit except to a Qualified Buyer as defined in this Agreement.

## SECTION 2
## USE AND OCCUPANCY OF PROPERTY; OWNER RESIDENCY REQUIRED

2.1 Except as otherwise provided herein, the use and occupancy of any Unit shall henceforth be limited exclusively to housing for natural persons who meet the definition of Qualified Buyer(s) and their families.

2.2 An Owner, in connection with the purchase and ownership of a Unit, must: (a) occupy the Unit within this Property as his, her or their sole and exclusive place of residence during the time that such Unit is owned; (b) not engage in any business activity on or in such Unit, other than as permitted in that zone district and any Declaration of Protective Covenants affecting the Unit or Units; and (c) satisfy the residency and employment requirements of the Guidelines; and (d) sell, convey, or otherwise transfer such Unit only in accordance with this Agreement and the Guidelines.

2.3 In the event an Owner ceases to utilize a Unit as his sole and exclusive place of residence, the Unit shall be offered for sale pursuant to the provisions of **subsection 3.1** of this Agreement. The Owner shall be deemed to have ceased utilizing the Unit as his sole and exclusive place of residence by becoming a resident elsewhere or by residing in the Unit for fewer than nine (9) months per calendar year without the express written approval of the Governmental Entity or the GCHA. Where the provisions of this **subsection 2.3** apply, the Governmental Entity or GCHA may require the Owner to rent the Unit in accordance with the provisions of **Section 5**.

2.4 If an Owner of a Unit must leave the area as defined in the Guidelines for a limited period of time, and desires to rent the Unit during such absence, a leave of absence may be granted by the Governmental Entity or GCHA in accordance with the Guidelines.

## SECTION 3
## SALE OF UNIT; MAXIMUM RESALE PRICE

3.1 In the event that an Owner desires to sell his Unit, the Owner shall consult with the Governmental Entity or the GCHA to review the requirements of this Agreement, including the method for determining the Maximum Resale Price. Following approval of the Maximum Resale Price by the Governmental Entity or the GCHA, the Owner shall list such unit for sale with the Garfield County Housing Authority, or as otherwise provided in Guidelines or Guidelines then in effect, for a sales price not exceeding the Maximum Resale Price and in accordance with the procedures set forth in those

Reception#: 760386
12/22/2008 02:31:21 PM Jean Alberico
4 of 18 Rec Fee:$0.00 Doc Fee:0.00 GARFIELD COUNTY CO

Guidelines. The Governmental Entity or the GCHA shall charge a fee for its services in connection with resale in accordance with the fee schedule set forth in the Guidelines then in effect. In order to be able to offer the Unit for sale at the Maximum Resale Price, the Unit must be reasonably clean, all fixtures must be in working condition and any damage to the Unit beyond normal wear and tear must be repaired. If these conditions are not satisfied, the Governmental Entity or GCHA may require that the owner agree to escrow at closing a reasonable amount to achieve compliance with these requirements or reduce the Maximum Resale price accordingly.

3.2 In no event shall a Unit be sold for an amount in excess of the Maximum Resale Price as determined in accordance with this paragraph. The Maximum Resale Price shall equal the purchase price for the Unit paid by the Owner selling the Unit divided by the Consumer Price Index, All Items, Denver/Boulder, Urban Wage Earners and Clerical Workers (Revised), published by the U.S. Department of Labor, Bureau of Labor Statistics ("Consumer Price Index"), published at the time of Owner's purchase as stated on the settlement sheet, multiplied by the Consumer Price Index current at the date of intent to sell, plus the cost of Permitted Capital Improvements as defined on **Exhibit B** attached hereto and incorporated herein by this reference (and as limited in paragraph 3.3 hereof). In no event shall the multiplier be less than one (1). For the purposes of this subsection, "date of intent to sell" shall be the date of execution of a listing contract, or if a listing contract is not used, the date shall be the date when the Unit is first offered for sale. In no event shall the Maximum Resale Price be more than the Owner's purchase price, plus an increase of three percent (3%) of such price per year from the date of purchase to the date of Owner's notice of intent to sell, plus Permitted Capital Improvements.

NOTHING HEREIN SHALL BE CONSTRUED TO CONSTITUTE A REPRESENTATION OR GUARANTEE BY THE DECLARANT, THE GCHA OR THE GOVERNMENTAL ENTITY THAT UPON RESALE THE OWNER SHALL OBTAIN THE MAXIMUM RESALE PRICE.

3.3 In order to qualify as Permitted Capital Improvements, the Owner must furnish to the Governmental Entity or the GCHA the following information with respect to the improvements which the Owner seeks to include in the calculation of Maximum Resale Price:

    a. Original or duplicate receipts to verify the actual costs expended by the Owner for the Permitted Capital Improvements; and

    b. Owner's affidavit verifying that the receipts tendered are valid and correct; and

    c. True and correct copies of any building permit or certificate of occupancy required to be issued by the Garfield County or such other governmental entity as jurisdiction requires, with respect to the Permitted Capital Improvements.

3.4 For the purpose of determining the Maximum Resale Price in accordance with this

Reception#: 760386
12/22/2008 02:31:21 PM Jean Alberico
5 of 18 Rec Fee:$0.00 Doc Fee:0.00 GARFIELD COUNTY CO

Section, the Owner may also add to the amounts specified in **subsections 3.2**, the cost of any permanent improvements constructed or installed as a result of any requirement imposed by any governmental agency, provided that written certification is provided to the governmental agency or the GCHA of both the applicable requirement and the information required by **subsection 3.3**.

3.5 In calculating the costs under **subsection 3.2** and **3.3** only the Owner's actual out-of pocket costs and expenses shall be eligible for inclusion. Such amount shall not include an amount attributable to Owner's "sweat equity" or to any appreciation in the value of the improvements.

3.6 An Owner shall not permit any prospective buyer to assume any or all of the Owner's customary closing costs nor accept any other consideration which would cause an increase in the purchase price above the bid price so as to induce the Owner to sell to such prospective buyer.

3.7 Prior to Owner entering into a sales contract for the sale of his Unit to a prospective buyer, such potential buyer shall be qualified by the Governmental Entity or the GCHA pursuant to the requirements of the Guidelines then in effect. Documented proof of qualification shall be provided by the potential buyer, as requested by GCHA, prior to purchase. An Owner shall neither enter into a sales contract for the sale of his Unit with any person other than a Qualified Buyer nor any contract which provides for a sales price greater than the Maximum Resale Price established in accordance with this Section. The Owner must accept a Maximum Resale Price offer, and offers in excess of the Maximum Resale Price shall be rejected. Prior to closing, all sales contracts for the sale of a Unit subject to this Agreement shall be submitted to the Governmental Entity or the GCHA for its review and approval of the contract for consistency with this Agreement.

## SECTION 4
## NON-QUALIFIED TRANSFEREE

4.1 In the event that title to a Unit vests in individuals or entities who are not Qualified Buyers as that term is defined herein, (hereinafter referred to as "Non-Qualified Transferee(s)"), and such individuals are not approved as Qualified Buyers within thirty (30) days after obtaining title to the Unit, in the manner described in this Section, the Unit shall immediately be listed for sale or advertised for sale by the Non-Qualified Transferee(s) in the same manner as provided for Owners in **subsection 3.1** above; provided such action does not otherwise conflict with applicable law. The highest bid by a Qualified Buyer, for not less than ninety-five percent (95%) of the Maximum Resale Price or the appraised market value, whichever is less, which satisfies all obligations under any existing first lien deed of trust or mortgage, shall be accepted. If all such bids are below the lesser of ninety-five percent (95%) of the Maximum Resale Price or the appraised market value, the Unit shall continue to be listed for sale or advertised for sale by the Non-Qualified Transferee(s) until a bid in accordance with this subsection is made, which bid must be accepted. The cost of any appraisal shall be paid by the Non-Qualified Transferee(s). In the event the Non-Qualified Transferee(s) elect to sell the Unit without

Reception#: 760386
12/22/2008 02:31:21 PM Jean Alberico
6 of 18 Rec Fee:$0.00 Doc Fee:0.00 GARFIELD COUNTY CO

the assistance of a real estate broker or agent, such Non-Qualified Transferee(s) shall advertise the subject Unit for sale in a manner approved by Governmental Entity or the GCHA and shall use due diligence and make all reasonable efforts to accomplish the sale of the Unit. In the event the Governmental Entity or the GCHA finds and determines that such Non-Qualified Transferee(s) have failed to exercise such due diligence, the Governmental Entity or the GCHA may require the Non-Qualified Transferee(s) to execute a standard listing contract on forms approved by the Colorado Real Estate Commission, or its successor, with a licensed real estate broker or agent.

a. Non-Qualified Transferee(s) shall join in any sale, conveyance or transfer of the Unit to Qualified Buyer(s) and shall execute any and all documents necessary to effect such conveyance.

b. Non-Qualified Transferee(s) shall not: (1) occupy the Unit; (2) rent all or any part of the Unit, except in strict compliance with **Section 5** hereof; (3) engage in any other business activity on or in the Unit; (4) sell, convey or otherwise transfer the Unit except in accordance with this Agreement and the Community Housing Guidelines; or (5) sell or otherwise transfer the Unit for use in a trade or business.

c. Where the provisions of this **subsection 4.1** apply, the Governmental Entity or the GCHA may require the Non-Qualified Transferee(s) to rent the Unit in the same manner as provided for Owners in **Section 5**, below.

d. Until sale to a Qualified Buyer is effected, Non-Qualified Transferee(s) shall comply with all obligations of Owners set forth in this Agreement.

## SECTION 5
## RENTAL OF UNIT

5.1 An Owner may not, except with prior written approval of the Governmental Entity or the GCHA, and subject to the Governmental Entity or the GCHA's conditions of approval, rent the Unit. Prior to occupancy, any tenant must be approved by the Governmental Entity or the GCHA in accordance with the income, occupancy and all other qualifications established by in the Guidelines. The Governmental Entity or the GCHA shall not approve any rental if such rental is being made by Owner to utilize the Unit as an income producing asset, except as provided below, and shall not approve a lease with a rental term in excess of twelve (12) months. A signed copy of the lease must be provided to the Governmental Entity or the GCHA prior to occupancy by any tenant. The rental amount under any such lease approved by the Governmental Entity or the GCHA shall be "Owner's cost." "Owner's cost" as used herein, includes the monthly expenses for the cost of principal and interest payments, taxes, property insurance, homeowner's assessments, utilities remaining in Owner's name, plus an additional twenty dollars ($20) per month and a reasonable (refundable) security deposit and damage deposit as per the Guidelines. The requirements of this subsection shall not preclude the Owner from sharing occupancy of a Unit with non-owners on a rental basis provided Owner continues to meet the obligations contained in this Agreement, including

Reception#: 760386
12/22/2008 02:31:21 PM  Jean Alberico
7 of 18 Rec Fee:$0.00 Doc Fee:0.00 GARFIELD COUNTY CO

**Section 2.**

5.2 NOTHING HEREIN SHALL BE CONSTRUED TO REQUIRE THE GOVERNMENTAL ENTITY OR THE GCHA TO PROTECT OR INDEMNIFY THE OWNER AGAINST ANY LOSSES ATTRIBUTABLE TO THE RENTAL, INCLUDING (NOT BY WAY OF LIMITATION) NON-PAYMENT OF RENT OR DAMAGE TO THE PREMISES; NOR TO REQUIRE THE GOVERNMENTAL ENTITY OR THE GCHA TO OBTAIN A QUALIFIED TENANT FOR THE OWNER IN THE EVENT THAT NONE IS FOUND BY THE OWNER.

## SECTION 6
## BREACH OF AGREEMENT; OPPORTUNITY TO CURE

6.1 In the event that the Governmental Entity or the GCHA has reasonable cause to believe the Owner is violating the provisions of this Agreement, the Governmental Entity or the GCHA, by its authorized representative, may inspect a Unit between the hours of 8:00 a.m. and 5:00 p.m., Monday through Friday, after providing the Owner with no less than 24 hours written notice.

6.2 In the event a violation of this Agreement is discovered, the Governmental Entity or the GCHA may send a notice of violation to the Owner detailing the nature of the violation and allowing the Owner fifteen (15) days to cure. Said notice shall state that the Owner may request a hearing before the GCHA within fifteen (15) days to determine the merits of the allegations. If no hearing is requested and the violation is not cured within the fifteen (15) day period, the Owner shall be considered in violation of this Agreement. If a hearing is held before the GCHA it shall be conducted in accordance with the hearing procedures set out in **Section 7**, below, and the decision of the GCHA based on the record of such hearing shall be final for the purpose of determining if a violation has occurred.

6.3 The failure of the Governmental Entity or the GCHA to insist upon the strict and prompt performance of any of the terms, conditions and restrictions of this Agreement shall not constitute or be construed as a waiver or relinquishment of the Governmental Entity's or the GCHA's right or rights thereafter to enforce any term, condition or restriction and the same shall continue in full force and effect.

## SECTION 7
## GRIEVANCE PROCEDURES

7.1 A grievance is any dispute that a tenant or Owner may have with the Governmental Entity or the GCHA with respect to action or failure to act in accordance with the individual tenant's or Owner's rights, duties, welfare, or status. A grievance may be presented to the GCHA Board of Commissioners (hereinafter referred to as Board) under the procedures set forth in guidelines adopted in the Garfield County Zoning Resolution of 1978, as amended, section 4.14.11.

Reception#: 760386
12/22/2008 02:31:21 PM Jean Alberico
8 of 18 Rec Fee:$0.00 Doc Fee:0.00 GARFIELD COUNTY CO

## SECTION 8
## REMEDIES

8.1 This Agreement shall constitute covenants running with the Property, described hereinabove as a burden thereon, for the benefit of, and shall be specifically enforceable by the Governmental Entity, the GCHA, and their respective successors and assigns, as applicable, by any appropriate legal action against any non-complying Owners and/or occupants.

8.2 In the event the parties resort to litigation with respect to any or all provisions of this Agreement, the prevailing party shall be entitled to recover damages and costs, including reasonable attorney's fees.

8.3 With the exception of a Public Trustee's or Sheriff's sale in a foreclosure proceeding for the benefit of a first lien mortgage holder; in the event of any sale, transfer or conveyance of the Property or any Unit thereof, each and every conveyance of the Property or Unit, for all purposes, shall be deemed to include and incorporate by this reference the covenants, conditions, limitations, and restrictions herein contained, even without reference therein to this Agreement.

8.4 In the event that the Owner or occupant fails to cure any breach, the Governmental Entity or the GCHA may resort to any and all available legal action, including, but not limited to requiring sale of the Unit by Owner as specified in **Section 3**. The costs of such sale shall be taxed against the proceeds of the sale with the balance being paid to the Owner.

8.5 In the event of a breach of any of the terms or conditions contained herein by the Owner, his heirs, successors or assigns, the Owner's purchase price of the Unit as referred to in **Section 3** of this Agreement shall, upon the date of such breach as determined by the Governmental Entity or the GCHA, automatically cease to increase as set out in **Section 3** of this Agreement, and shall remain fixed until the date of cure of said breach.

## SECTION 9
## DEFAULT IN LOAN PAYMENTS; FORECLOSURE

9.1 The Owner may only finance its initial purchase of the Unit with a loan from an Institutional Lender which is secured by a First Deed of Trust. For the purpose of this limitation and as the terms are used in this Agreement, an "Institutional Lender" means any bank, savings and loan association, or any other institutional lender which is licensed to engage in the business of providing purchase money mortgage financing for residential real estate; and a "First Deed of Trust" means a deed of trust or mortgage which is recorded senior to any other deed of trust or lien against the unit to secure a loan used to purchase the Unit. The Owner may only refinance a loan secured by a First Deed of Trust so long as the total amount of such refinancing does not exceed 95% of the Maximum

Reception#: 760386
12/22/2008 02:31:21 PM  Jean Alberico
9 of 18 Rec Fee:$0.00 Doc Fee:0.00 GARFIELD COUNTY CO

Resale Price in effect at the time of such refinancing and only if the lender is an Institutional Lender.

9.2 The Governmental Entity or the GCHA is authorized to negotiate, execute and record such consents or agreements as it may deem necessary which have the effect of subordinating this Agreement to the terms of a First Deed of Trust in order to facilitate favorable financing for the benefit of a qualified buyer of the Unit.

9.3 It shall be a breach of this Agreement for an Owner to default in payment or other obligations due or to be performed under a promissory note secured by any deed of trust or mortgage encumbering a Unit, including the First Deed of Trust, or to breach any of Owner's duties or obligations under said deed or deeds of trust. It shall also be a breach of this Agreement for the Owner to default in the payment of real property taxes or obligations to the Homeowners Association for general or special assessments, if applicable. The Owner must notify the Governmental Entity or the GCHA, in writing, of any such default and provide a copy of any notification received from a lender, or its assigns or loan servicer, of past due payments or default in payment or other obligations due or to be performed under a promissory note secured by a deed of trust, as described herein, or of any breach of any of Owner's duties or obligations under said deed of trust, within five (5) calendar days of Owner's notification from lender, or its assigns or within five (5) calendar days of Owner's notification from any other creditor specified herein, or any default, past due payment or breach.

9.4 Upon notification of a default as provided in **subsection 9.3**, above, the Governmental Entity or the GCHA may offer loan counseling or distressed loan services to the Owner, if any of these services are available, and the Governmental Entity or the GCHA is entitled to require the Owner to sell the Unit in order to avoid the commencement of foreclosure proceedings. If the Governmental Entity or the GCHA requires sale of the Unit, Owner shall, immediately upon request, execute a standard Listing Contract with GCHA on forms approved by the Colorado Real Estate Commission providing for a ninety (90) day listing period. GCHA shall promptly advertise the property for sale by competitive bid to Qualified Buyers. In the event of a listing of the Unit pursuant to this subsection, the Governmental Entity or the GCHA are entitled to require the Owner to accept a qualified bid for the Maximum Resale Price or, if none are received, to accept a qualified bid for an amount less than the Maximum Resale Price which is sufficient to satisfy the Owner's financial obligations pursuant to the promissory note or notes secured by the First Deed of Trust and any junior deeds of trust. The Listing contract shall obligate the Owner to pay the standard listing fee and normal closing costs and expenses that would be the obligation of the Owner in the event of a sale pursuant to **Section 3** of this Agreement.

9.5 Upon receipt of notice as provided in **subsection 9.3**, above, and with the agreement of the Owner, the Governmental Entity or the GCHA shall have the right, but not the obligation, to cure the default or any portion thereof. In such event, the Owner shall be personally liable to the Governmental Entity or the GCHA for any payments made by the Governmental Entity or the GCHA on the Owner's behalf together with interest thereon

Reception#: 760386
12/22/2008 02:31:21 PM  Jean Alberico
10 of 18 Rec Fee:$0.00 Doc Fee:0.00  GARFIELD COUNTY CO

at the rates specified in the obligation then in default, plus 1%, together with all actual expenses of the Governmental Entity or the GCHA incurred in curing the default, including reasonable attorney's fees. The Owner shall be required by the Governmental Entity or the GCHA to execute a promissory note to be secured by a junior deed of trust encumbering the Unit in favor of the Governmental Entity or the GCHA for the amounts expended by the Governmental Entity or the GCHA as specified herein, including future advances made for such purposes. The Governmental Entity or the GCHA shall not be limited by the provisions in **subsection 9.1**. The Owner may pay the promissory note at any time prior to the sale of the Unit. Otherwise, Owner's indebtedness to the Governmental Entity or the GCHA shall be satisfied from the Owner's proceeds at the closing upon sale of the Unit.

9.6 The Governmental Entity or the GCHA shall be a "person who appears to have an interest in the property......" as described in CRS 38-38-103(1)(a)(II)(E) and, thus, shall be entitled to receive the combined notice required by and described in CRS 38-38-103(1)(a). And, as a "contract vendee" pursuant to CRS 38-38-104(1)(d), the Governmental Entity or the GCHA shall be entitled to cure any default which is the basis for a foreclosure action in accordance with CRS 38-38-104 et seq. Upon filing with the Public Trustee of Garfield County of a Notice of Election and Demand for Sale ("NED") pursuant to CRS 38-38-101(4) by the holder of the First Deed of Trust, the Governmental Entity or the GCHA shall have the right and option, but not the obligation, to purchase the Unit from the Owner for 95% of the Maximum Resale Price on the date of the NED, less the amount of any debt secured by the Unit (including interest, late fees, penalties, costs and other fees and reimbursement due to lender) to be assumed by the Governmental Entity or the GCHA. The GCHA may assign the foregoing option to the Governmental Entity. The party electing to exercise the option shall be referred to herein as the "Purchaser." The Purchaser shall give written notice thereof to the Owner within thirty (30) days following the filing of the NED. In the event that the option is exercised, the closing on the purchase of the Unit shall occur no less than seventy-five (75) days nor more than ninety (90) days after the date of the NED. At closing, Owner shall execute and deliver a Special Warranty Deed conveying the Unit free and clear of all monetary liens and encumbrances, except those to be assumed by the Purchaser, and shall execute normal and customary closing documents. The proceeds of the sale shall be applied first to cure the default by paying off the indebtedness secured by the Unit which is the subject of the pending foreclosure action, then to Owner's closing costs, and the balance, if any, shall be disbursed to Owner. If the Owner cures the default prior to closing resulting in withdrawal of the NED and cancellation of the foreclosure sale, the option of the Governmental Entity or the GCHA shall terminate. Such termination shall not, however, operate to extinguish the option of the Governmental Entity or GCHA to purchase the Unit in the event that any subsequent NED is filed.

9.7 The provisions of this Agreement may be subordinate only to the lien of a First Deed of Trust to secure a loan to purchase the Unit made by an Institutional Lender. This Agreement shall not impair the rights of such Institutional Lender, or such lender's assignee or successor in interest, to exercise its remedies under the First Deed of Trust in the event of default by Owner; these remedies include the right to foreclose or exercise a

Reception#: 760386
12/22/2008 02:31:21 PM Jean Alberico
11 of 18 Rec Fee:$0.00 Doc Fee:0.00 GARFIELD COUNTY CO

power of sale or to accept a deed or assignment in lieu of foreclosure. In the event of foreclosure by a holder of a First Deed of Trust, and upon the issuance of a Public Trustee's or Sheriff's Deed, these Covenants shall automatically terminate. This Agreement shall be senior to any other lien or encumbrance recorded in the Office of the Clerk of Recorded of Garfield County, Colorado, after the date on which this Agreement is recorded in said Office. Any purchaser acquiring any rights in a Unit by virtue of foreclosure of a lien other than a First Deed of Trust, as defined herein, shall be deemed a Non-Qualified Transferee subject to the provisions of **subsection 4.1** of this Agreement. In the event of a foreclosure of a lien other than a First Deed of Trust, as defined herein, nothing herein shall be construed to create a release or waiver of the covenants, conditions, limitations and restrictions contained in this Agreement.

## SECTION 10
## GENERAL PROVISIONS

10.1 Notices. Any notice, consent or approval which is required to be given hereunder shall be given by mailing the same, certified mail, return receipt requested, properly addressed and with postage fully prepaid, to any address provided herein or to any subsequent mailing address of the party as long as prior written notice of the change of address has been given to the other parties to this Agreement. Said notices, consents and approvals shall be sent to the parties hereto at the following addresses unless otherwise notified in writing:

| | |
|---|---|
| To Declarant: | LB Rose Ranch LLC<br>Attention: J. Thomas Schmidt<br>430 Ironbridge Drive<br>Glenwood Springs, CO 81601 |
| To GCHA: | Garfield County Housing Authority<br>2128 Railroad Avenue<br>Rifle, CO 81650 |
| To Governmental Entity: | Garfield County Commissioners<br>109 8th Street, Suite 213<br>Glenwood Springs, CO 81601 |
| To Owner: | [To be set forth in a subsequent recorded Memorandum of Acceptance for each individual Unit] |

10.2 Severability. Whenever possible, each provision of this Agreement and any other related document shall be interpreted in such a manner as to be valid under applicable law, but if any provisions of any of the foregoing shall be invalid or prohibited under said applicable law, such provisions shall be ineffective to the extent of such invalidity or prohibition without invalidating the remaining provisions of this Agreement or other

11

Q:\R\Rose Ranch\DEVELOPMENT\9-24-08 Deed Restiction.doc

Reception#: 760386
12/22/2008 02:31:21 PM Jean Alberico
12 of 18 Rec Fee:$0.00 Doc Fee:0.00 GARFIELD COUNTY CO

related document.

10.3 Choice of Law. This Agreement and each and every related document are to be governed and construed in accordance with the laws of the State of Colorado.

10.4 Successors. Except as otherwise provided herein, the provisions and covenants contained herein shall inure to and be binding upon the heirs, successors and assigns of the parties.

10.5 Section Headings. Paragraph or section headings within this Agreement are inserted solely for convenience of reference, and are not intended to, and shall not govern, limit or aid in the construction of any terms or provisions contained herein.

10.6 Perpetuities Savings Clause. If any of the terms, covenants, conditions, restrictions, uses, limitations, obligations or options set forth in this Agreement shall be unlawful or void for violation of: (a) the rule against perpetuities or some analogous statutory provision, (b) the rule restricting restraints on alienation, or (c) any other statutory or common law rules imposing like or similar time limits, then such provision shall continue only for the period of the lives of the current duly elected and seated governing board of the Governmental Entity, their now living descendants, if any, and the survivor of them, plus twenty-one (21) years.

10.7 Waiver. No claim of waiver, consent or acquiescence with respect to any provision of this Agreement shall be valid against any party hereto except on the basis of a written instrument executed by the parties to this Agreement. However, the party for whose benefit a condition is inserted herein shall have the unilateral right to waive such condition.

10.8 Gender and Number. Whenever the context so requires herein, the neuter gender shall include any or all genders and vice versa and the use of the singular shall include the plural and vice versa.

10.9 Personal Liability. Owner agrees that he or she shall be personally liable for any of the transactions contemplated herein.

10.10 Further Action. The parties to this Agreement, including any Owner, agree to execute such further documents and take such further actions as may be reasonably required to carry out the provisions and intent of this Agreement or any agreement or document relating hereto or entered into in connection herewith.

10.11 Modifications. The parties to this Agreement agree that any modifications of this Agreement shall be effective only when made by writings signed by the parties, approved by the Governmental Entity, and recorded with the Clerk and Recorder of Garfield County, Colorado. Notwithstanding the foregoing, the Governmental Entity or the GCHA reserves the right to amend this Agreement unilaterally when deemed necessary to effectuate the purpose and intent of this Agreement, when such unilateral action does not

Reception#: 750386
12/22/2008 02:31:21 PM  Jean Alberico
13 of 18 Rec Fee:$0.00 Doc Fee:0.00 GARFIELD COUNTY CO

materially impair an Owner or lender's rights under this Agreement, and when such amendment has been approved by the Governmental Entity.

10.12 Delegation. The Governmental Entity and the GCHA may delegate their authority hereunder to another organization qualified to manage and enforce the rights and obligations of either the Governmental Entity or the GCHA pursuant to this Agreement. In the absence of mutual agreement between the Governmental Entity or the GCHA over rights and obligations in this Agreement, either entity may assign their rights and obligations to the other respectively.

Reception#: 760386
12/22/2008 02:31:21 PM  Jean Alberico
14 of 18 Rec Fee:$0.00 Doc Fee:0.00 GARFIELD COUNTY CO

IN WITNESS WHEREOF, the parties hereto have executed this instrument on the day and year first above written.

DECLARANT:
LB Rose Ranch LLC, a Delaware limited liability company, ~~its managing member~~

By: PAMI LLC

By: _____
~~It's Authorized Signatory~~
Name: Gerald Petrofiorte
Title: AUTHORIZED SIGNATORY

STATE OF ~~COLORADO~~ New York )
                                ) ss.
COUNTY OF ~~GARFIELD~~ New York )

The above and foregoing document was acknowledged before me this day of 20th October, 2008, by Gerald Petrofiorte, as authorized signatory for PAMI LLC, a Delaware limited liability company, managing member of LB Rose Ranch LLC a Delaware limited liability company.

Witness my hand and official seal.

_____
Notary Public

My commission expires:
My address is:

DEANNA EMILIO
Notary Public, State of New York
No. 01EM6171082
Qualified in Richmond County
Term Expires July 23, 2011

Reception#: 760386
12/22/2008 02:31:21 PM  Jean Alberico
15 of 18 Rec Fee:$0.00 Doc Fee:0.00 GARFIELD COUNTY CO

ACCEPTANCE BY THE GARFIELD COUNTY BOARD OF COMMISSIONERS.
AND THE GARFIELD COUNTY HOUSING AUTHORITY.

The foregoing Declaration of Deed Restriction and Agreement Concerning the Sale, Occupancy and Resale of Property described as Ironbridge Planned Unit Development, Phase II, Lots 297 through 316, and its terms are hereby adopted and declared by the Garfield County Board of Commissioners and the Garfield County Housing Authority.

GARFIELD COUNTY BOARD OF COMMISSIONERS

By: _____
Title: _John Martin_
       _Chairman_

Attest:

_Marian L. Clayton, Deputy_

GARFIELD COUNTY HOUSING AUTHORITY

By: _Geneva O Powell_
Title: _Executive Director_

STATE OF COLORADO )
                  ) ss.
COUNTY OF GARFIELD )

The above and foregoing document was acknowledged before me this 13th day of November, 2008, by GENEVA D. POWELL.

Witness my hand and official seal.

_Dale B. Ciborowski_
Notary Public

My commission expires: 5/12/2012
My address is: 141 E. 12th St.
                Rifle, Co. 81650

15

Q:\R\Rose Ranch\DEVELOPMENT\9-24-08 Deed Restiction.doc

Reception#: 760386
12/22/2008 02:31:21 PM Jean Alberico
16 of 18 Rec Fee:$0.00 Doc Fee:0.00 GARFIELD COUNTY CO

## EXHIBIT A

## MEMORANDUM OF ACCEPTANCE OF DECLARATION OF DEED RESTRICTION AND AGREEMENT CONCERNING THE SALE, OCCUPANCY AND RESALE OF PROPERTY

### RECITALS:

_____, (hereinafter referred to as "Owner"), has simultaneous with execution of the Memorandum purchased a residential dwelling unit with the address _____, also know as Lot Number ___, according to the Final Plat ___ of Ironbridge Planned Unit Development, Phase II, as recorded as Reception Number 702420 in the Office of the Clerk and Recorder of Garfield County, Colorado.

As a condition of the sale transaction, the Buyer acknowledges and agrees to the terms, conditions and restrictions found in that certain instrument entitled Declaration of Deed Restriction and Agreement Concerning the Sale, Occupancy and Resale of Property, recorded on _____ as Reception Number _____ in the Office of the Clerk and Recorder of _____ County, Colorado (hereinafter the "Declaration and Agreement").

NOW, THEREFORE, as required by the Declaration and Agreement and in consideration of the covenants and agreements contained therein and contained herein, the Owner agrees and acknowledges as follows:

1. Owner hereby acknowledges the existence of and accepts the Declaration and Agreement, in its entirety, including all exhibits, as the same is defined herein, with the following changes and/or additions:

   That the closing of Buyer's acquisition of the Property occurred on

   _____.

   The purchase price that Buyer is paying for the Property is $_____.

   In particular, Owner acknowledges and agrees that the _____ and the Garfield County Housing Authority shall be entitled to exercise the rights and options set forth in **Section 9** of the Declaration and Agreement in the event of a default as described therein.

2. The address of Owner for the purpose of **Section 10.1** of the Declaration and Agreement is as follows:

16

Q:\R\Rose Ranch\DEVELOPMENT\9-24-08 Deed Restiction.doc

Reception#: 760386
12/22/2008 02:31:21 PM Jean Alberico
17 of 18 Rec Fee:$0.00 Doc Fee:0.00 GARFIELD COUNTY CO

3. This Memorandum shall be recorded in the Office of the Clerk and Recorder of Garfield County, Colorado.

IN WITNESS WHEREOF, the undersigned Owner(s) has/have executed this Memorandum of Acceptance on the date set forth opposite his/her signature.

_____                    _____
Owner                                              Date


_____                    _____
Owner                                              Date


STATE OF COLORADO   )
                    ) ss.
COUNTY OF GARFIELD  )

The above and foregoing document was acknowledged before me this _____ day of _____, 200__ by _____ and _____.

Witness my hand and official seal.

                                        _____
                                        Notary Public

My commission expires:

My address is:

Reception#: 760386
12/22/2008 02:31:21 PM Jean Alberico
18 of 18 Rec Fee:$0.00 Doc Fee:0.00 GARFIELD COUNTY CO

# EXHIBIT B
## PERMITTED CAPITAL IMPROVEMENTS

1. The "Permitted Capital Improvements" as used in the Agreement shall only include the following:

    a. Improvements or fixtures erected, installed or attached as permanent, functional, non-decorative improvements to real property, excluding repair, replacements and/or maintenance improvements;
    b. Improvements for energy and water conservation;
    c. Improvements for the benefit of seniors and/or handicapped persons;
    d. Improvements for health and safety protection devices;
    e. Improvements to add and/or finish permanent/fixed storage space;
    f. Improvements to finish unfinished space;
    g. Garages;
    h. The cost of adding decks and any extension thereto;
    i. Landscaping;
    j. Repairs or replacements related to structural, major mechanical or roofing deficiencies after any applicable warranty period is expired.

2. Permanent Capital Improvements as used in this Agreement shall **NOT** include the following:

    a. Upgrades/replacements of appliances, plumbing and mechanical fixtures, carpets and other similar items included as part of the original construction of the unit;
    b. Improvements required to repair, replace and maintain existing fixtures, appliances, plumbing and mechanical fixtures, painting, carpeting and other similar items;
    c. Upgrades or addition of decorative items, including lights, window coverings, floor coverings and other similar items.
    d. Jacuzzis, spas, saunas, steam showers and other similar items.

3. All Permitted Capital Improvement items and costs shall be approved by the GCHA prior to being added to the Maximum Resale Price as defined herein.