Hearing Date and Time: June 24, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: June 16, 2009 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Richard W. Slack
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                                                 :
In re                                                            :   Chapter 11 Case No.
                                                                 :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                         :   08-13555 (JMP)
                                                                 :
                    Debtors.                                     :   (Jointly Administered)
                                                                 :
                                                                 :
-----------------------------------------------------------------x

**NOTICE OF DEBTORS' MOTION, PURSUANT TO SECTIONS**
**105(a), 362 AND 365 OF THE BANKRUPTCY CODE, TO COMPEL**
**PERFORMANCE OF METAVANTE CORPORATION'S OBLIGATIONS UNDER**
**AN EXECUTORY CONTRACT AND TO ENFORCE THE AUTOMATIC STAY**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Special Financing Inc., as debtor and debtor in possession (together, with

Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11

cases, the "Debtors"), to compel performance of Metavante Corporation's obligations under an

executory contract and to enforce the automatic stay, all as more fully described in the Motion,

will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United

States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling

Green, New York, New York 10004 (the "Bankruptcy Court"), on **June 24, 2009 at 10:00 a.m.**

**(Prevailing Eastern Time)** (the "Hearing").

1

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Lori R. Fife, Esq., Richard W. Slack, Esq., and Robert J. Lemons, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) Metavante Corporation, 4900 West Brown Deer Road, Milwaukee, WI 53223, Attn: Norrie Daroga, Chief Administrative Officer, with a copy to Whyte Hirschboeck Dudek S.C., 555 E. Wells St., Suite 1900, Milwaukee, WI 53202-3819, Attn: Bruce G. Arnold, Esq. and Daryl L. Diesing, Esq., so as to be so filed and received by no later than **June 16, 2009 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: May 29, 2009
      New York, New York

/s/ Richard W. Slack
Lori R. Fife
Richard W. Slack
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Hearing Date and Time: June 24, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: June 16, 2009 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Richard W. Slack
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
In re                                                          :    Chapter 11 Case No.
                                                               :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                   :    08-13555 (JMP)
                                                               :
                          Debtors.                             :    (Jointly Administered)
---------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 362 AND 365
OF THE BANKRUPTCY CODE TO COMPEL PERFORMANCE OF
METAVANTE CORPORATION'S OBLIGATIONS UNDER AN EXECUTORY
CONTRACT AND TO ENFORCE THE AUTOMATIC STAY**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Special Financing Inc. ("LBSF"), as debtor and debtor in possession (together with Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), files this motion and respectfully states:

**PRELIMINARY STATEMENT**

1.      This motion presents a straightforward application of section 365 of title 11 of the United States Code (the "Bankruptcy Code"). Metavante Corporation ("Metavante") is a party to the Agreement, as defined below, which is an executory contract with LBSF. Even

1

though LBSF has not yet determined whether to assume or reject the Agreement, Metavante has improperly refused to perform its obligations under the Agreement. Under well-settled authority, Metavante must perform its obligations under the Agreement and this Court should compel Metavante's performance.

2. As explained in more detail below, the Agreement at issue is an interest rate swap transaction entered into by Metavante and LBSF in 2007. Generally, under the Agreement, LBSF agreed to make quarterly payments (*i.e.*, every three months) based on a floating interest rate on a notional amount of $600 million and Metavante agreed to make payments on the same dates based on a fixed interest rate on the same notional amount. Under the Agreement, the only actual payment that must be made is the net payment by the net obligor.

3. Due to declining interest rates, the value of LBSF's position has increased significantly. Currently, Metavante owes LBSF approximately $6,640,138 representing net payments for the November 2008 and the February and May 2009 payment dates. Yet it has refused to make such payments to LBSF. Metavante also owes LBSF default interest on such unpaid amounts.

4. In direct contravention of the specific provisions of the Bankruptcy Code, Metavante improperly is attempting to take advantage of the Debtors' chapter 11 cases and avoid its obligations to make its payments to LBSF. The purported rationale for this failure to make payments is that the commencement of chapter 11 cases by LBSF and LBHI constituted "Events of Default" under the Agreement. The failure to make payments under the Agreement, however, ignores section 365(e)(1) of the Bankruptcy Code, which expressly prevents parties from modifying the rights of a debtor under an executory contract "at any time after the

2

commencement of the case solely because of a provision in such contract . . . that is conditioned on . . . the commencement of a case under this title . . . ."

5.  Moreover, while LBSF is determining whether to assume or reject the Agreement, the unilateral cessation of required payments is prohibited and constitutes a violation of the automatic stay. By refusing to pay LBSF amounts owed under the Agreement, Metavante has effectively usurped LBSF's well-recognized right to assume or reject an executory contract. The Court, therefore, should order Metavante to comply with its contractual obligations and make the required payments under the Agreement.

## BACKGROUND

6.  Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.  Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

8.  Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

3

Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

9. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

## JURISDICTION

10. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## RELIEF REQUESTED

11. Pursuant to sections 105(a), 362 and 365 of the Bankruptcy Code, LBSF requests that the Court compel Metavante to perform its obligations under the Agreement.

### A. *The Interest Rate Swap Agreement*

12. LBSF and Metavante entered into a standard 1992 ISDA Master Agreement dated as of November 20, 2007 (the 1992 ISDA Master Agreement and schedule thereto are collectively referred to as the "Master Agreement"). The Master Agreement provides the basic terms of the parties' contractual relationship and contemplates being supplemented by trade confirmations that provide the economic terms of the specific transactions agreed to by the parties. Under the Master Agreement, Metavante and LBSF entered into an interest rate swap transaction (the "Transaction"), the terms of which were documented pursuant to a trade confirmation dated December 4, 2007 (the "Confirmation") (the Master Agreement and Confirmation are collectively referred to as the "Agreement").[1]

---

[1] The Agreement is attached hereto as Exhibit 1.

4

13. Pursuant to the Agreement, LBSF has an obligation to pay the floating three-month USD-LIBOR-BBA ("Three Month LIBOR") interest rate on a notional amount of USD600,000,000, which notional amount declines over time, starting in May 2010, as provided in Appendix A to the Confirmation (the "Notional Amount"), and Metavante has the obligation to pay a fixed rate of interest (3.865%) on the Notional Amount. *See* Confirmation at 2. Until February 1, 2012, payments are required to be made on a net basis by the party owing the larger amount on the first business day of each of February, May, August, and November for amounts accrued on the Notional Amount during the prior three months. *See id.* LBHI acts as a credit support provider for payment obligations of LBSF under the Agreement. *See* Exhibit A of schedule to Master Agreement.

14. An "Event of Default" is defined in Section 5(a) of the Agreement to include the bankruptcy of any party or credit support provider. Section 6(a) of the Agreement provides that if an Event of Default with respect to a party (the "Defaulting Party") has occurred and is continuing, the other party (the "Non-Defaulting Party") may designate an Early Termination Date for the Agreement.

15. Section 6(c) of the Agreement provides that if a Non-Defaulting Party designates an Early Termination Date under Section 6(a), then the Agreement, including all Transactions thereunder, will terminate on that date even if the Event of Default is later cured.

16. Section 6(e) of the Agreement provides that if an Early Termination Date occurs, the parties will make a final payment pursuant to the payment measure and method selected by the parties in the schedule to the Agreement.

17. In sum, if there is an Event of Default then the Non-Defaulting Party has the right to terminate the Agreement. Upon termination, a final payment is calculated and paid

5

in order to put the parties into the same economic position (as determined at the time of the termination) as if the termination had not occurred. Under the terms of the Agreement, Metavante would owe a substantial payment to LBSF – reflecting the value of the Agreement to LBSF – if Metavante terminates the Agreement.

18. Although Metavante has taken the position here that there has been an Event of Default based on the bankruptcies of LBSF and LBHI and has therefore refused to perform, it has not attempted to terminate the Agreement. Instead, Metavante has simply refused to perform its ongoing obligations under the Agreement.

19. Under any circumstance — termination or continuation of the Agreement — Metavante owes substantial amounts to LBSF. But rather than performing under the Agreement, as required by law, or at least attempting to terminate the Agreement pursuant to the Safe Harbor Provisions (as defined below), Metavante seeks to use the Debtors' chapter 11 cases to deprive LBSF's estate and creditors of value by trying to escape its continuing obligations to LBSF.

B.    *Metavante Wrongfully Has Withheld Payments from LBSF*

20. From May 1, 2008 through August 1, 2008, the parties performed their payment obligations under the Agreement. Because the Three Month LIBOR interest rate was below 3.865% for the calculation period relating to the November 3, 2008 payment date, Metavante owed LBSF a net payment of $1,667,513.00. Metavante refused to make this payment. Likewise, Metavante owed LBSF a net payment of $1,019,958.34 for the calculation period relating to the February 2, 2009 payment date and again refused to make the payment. Further, Metavante owed LBSF a net payment of $3,952,666.67 for the calculation period relating to the May 1, 2009 payment date. Metavante also refused to make this payment. In total, Metavante currently owes LBSF $6,640,138.01 plus default interest.

21. Section 2(e) of the Agreement provides that "a party that defaults in the performance of any payment obligation will . . . be required to pay interest (before as well as after judgment) on the overdue amount to the other party on demand . . . for the period from (and including) the original due date for payment to (but excluding) the date of actual payment, at the Default Rate" (as that term is defined in the Agreement). To date, the default interest on the unpaid amounts specified above totals approximately $359,215.37. Thus, in addition to the payments that Metavante has refused to make, Metavante also owes LBSF default interest that continues to accrue.

22. LBSF has performed its obligations under the Agreement. Metavante has refused to make the required payments solely because of the bankruptcy filings of LBHI and LBSF.

## BASIS FOR RELIEF REQUESTED

### A. *The Agreement Is an Executory Contract that Can Be Enforced By LBSF*

23. The Agreement is an executory contract because material performance — *i.e.,* payment obligations — remains due by both LBSF and Metavante. *See, e.g., Shoppers World Cmty. Ctr. v. Bradlees Stores, Inc.* (*In re Bradlees Stores Inc.*), Case No. 01-CV-3934 (SAS), 2001 U.S. Dist. LEXIS 14755, at *19-20 (S.D.N.Y. Sept. 20, 2001); *In re Teligent, Inc.*, 268 B.R. 723, 730 (Bankr. S.D.N.Y. 2001) (citing Vern Countryman, *Executory Contracts in Bankruptcy: Part 1*, 57 Minn. L. Rev. 439, 460 (1973)). Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *In re Lavigne*, 114 F.3d 379, 386 (2d Cir. 1997). "[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate

7

and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993).

24. A counterparty to an executory contract must perform its obligations under the contract while the debtor determines whether to assume or reject such agreement. The United States Supreme Court has held that an unassumed executory contract is not enforceable against a debtor. *See Bildisco*, 465 U.S. at 531. On the other hand, an unassumed executory contract, while not enforceable *against* the debtor, is still enforceable by the debtor against the counterparty. *See e.g., McLean Indus., Inc. v. Medical Laboratory Automation, Inc. (In re McLean Indus., Inc.)*, 96 B.R. 440, 449 (Bankr. S.D.N.Y. 1989) ( "a debtor-in-possession's ability to continue to perform and to compel performance with respect to an assumable executory contract is usually the life blood of its reorganization."); *Public Ser. Co. of New Hampshire v. New Hampshire Electric Cooperative, Inc. (In re Public Ser. Co. of New Hampshire)*, 884 F.2d 11, 14 (1st Cir. 1989) ("Ordinarily, the debtor need not commit itself to assumption or rejection of such a contract until a reorganization plan is confirmed. In the meantime, the executory contract remains in effect and creditors are bound to honor it.") (citation omitted); *In re PublicData-Link Systems Inc. v. Whitcomb & Keller Mortgage Co. (In re Whitcomb & Keller Mortgage Co.)*, 715 F.2d 375, 378-79 (7th Cir. 1983) (affirming bankruptcy court's entry of a restraining order that prohibited non-debtor counterparty from ceasing to provide essential services to the debtor pending debtor's determination to assume or reject agreement and notwithstanding debtor's pre-petition arrearage).

25. Indeed, even if LBSF was in default under the Agreement, which it is not, Metavante is compelled to perform. Regardless, the contract remains enforceable against the counterparty to the contract. *See, e.g., U.S. v. Dewey Freight Sys. Inc.*, 31 F.3d 620, 625 (8th

Cir. 1994) (holding that an unassumed executory contract is not enforceable against the debtor, notwithstanding debtor's default thereunder); *In re Monarch Capital Corp.*, 163 B.R. 899, 906 (Bankr. D. Mass. 1994) (same); *see also In re Feyline Presents, Inc.*, 81 B.R. 623, 626-27 (Bankr. D. Colo. 1988) (holding that non-debtor could not unilaterally enforce contractual right prior to debtor's decision to assume or reject, notwithstanding counterparty's contention that debtor was unable to perform obligations under the contract).

26. Accordingly, regardless of any defaults by LBSF, Metavante must continue to perform all of its obligations under the Agreement until LBSF assumes or rejects the Agreement.

**B.    *Metavante Cannot Use the Bankruptcies of LBSF and LBHI as a Reason Not to Perform***

27. The only Events of Default that have occurred upon which Metavante relies are: (i) LBHI, as the credit support provider, commenced its chapter 11 case on September 15, 2008, and (ii) LBSF commenced its chapter 11 case on October 5, 2008. On November 1, 2008, Metavante refused to pay LBSF based solely on the commencement of these chapter 11 cases. Pursuant to section 365(e)(1) of the Bankruptcy Code, because sections 2(a)(iii) and 5(a)(vii) of the Agreement modify the contractual rights of LBSF based upon the commencement of bankruptcy cases, they are void and unenforceable against LBSF.

28. *Ipso facto* clauses are provisions in executory contracts and unexpired leases that automatically terminate the contract, modify a contractual right, or permit the other contracting party to terminate the contract or modify a contractual right in the event of a bankruptcy. *See In re Enron Corp.*, 306 B.R. 465, 472 (Bankr. S.D.N.Y. 2004). *Ipso facto* clauses are void and unenforceable pursuant to section 365(e)(1) of the Bankruptcy Code because the automatic termination or modification of a debtor's contractual rights deters

9

rehabilitation and causes a forfeiture of assets. *See Summit Inv. and Dev. Corp. v. LeRoux (In re LeRoux)*, 69 F.3d 608, 610 (1st Cir. 1995). Most courts have interpreted section 365(e)(1) broadly to "abrogate[] the power of *ipso facto* clauses," such that "[n]o default may occur pursuant to an *ipso facto* clause and no reliance may be placed upon an alleged default where the only cause for default is the debtor's commencement of a bankruptcy case." *In re Texaco Inc.*, 73 B.R. 960, 965 (Bankr. S.D.N.Y. 1987) (holding that counterparty could not accelerate notes because such right was only triggered upon a bankruptcy default clause, which was void pursuant to section 365(e)(1)); s*ee also In re Ernie Haire Ford, Inc.*, 403 B.R. 750, 759 (Bankr. M.D. Fla. 2009) (holding that counterparty's enforcement of right to terminate contract at will was unenforceable under section 365(e)(1) where the sole basis for termination was the debtor's bankruptcy filing).

29.     The alleged defaults relied upon by Metavante are not enforceable against the Debtors. Section 2(a)(iii) of the Agreement states that as a condition precedent to performance, no "Event of Default" has occurred and is continuing. The only "Events of Default" Metavante is relying upon to avoid its performance obligations under the Agreement are LBHI's and LBSF's chapter 11 filings. However, application of section 2(a)(iii) to a default based on the filing of cases under chapter 11 is void as an *ipso facto* clause.

30.     Furthermore, the "safe harbor" provisions of the Bankruptcy Code (the "Safe Harbor Provisions")[2] do not excuse Metavante's failure to perform under the Agreement. Generally, the Safe Harbor Provisions permit qualifying non-debtor counterparties to derivative contracts to exercise certain limited contractual rights triggered by a chapter 11 filing or financial

---

[2]   These provisions are contained in sections 362(b)(6), (7) and (17); 546(e), (f) and (g); 555; 556; 560; and 561 of the Bankruptcy Code.

10

condition. But the Safe Harbor Provisions only carve out a narrow exception to the general rule that *ipso facto* clauses are void. Specifically, the Safe Harbor Provisions are available to counterparties only to the extent that they seek to liquidate, terminate, or accelerate their contracts with the Debtors, or offset or net out their positions. *See, e.g.*, 11 U.S.C. § 560. All other uses of *ipso facto* provisions remain unenforceable under the Bankruptcy Code. *See generally* 11 U.S.C. 365(e)(1); *In re Enron Corp.*, 306 B.R. 465, 472-74 (Bankr. S.D.N.Y. 2004) (recognizing, under similar circumstances, limited scope of carve out of safe harbor provisions from general rule prohibiting *ipso facto* clauses).

31.     Here, Metavante has attempted neither to terminate, liquidate or accelerate the Agreement nor to offset or net out its position. Indeed, if the Agreement had been terminated, Metavante would owe LBSF a substantial amount of money. Instead, Metavante is *withholding* performance under the Agreement, which is not permitted under the plain terms of the Safe Harbor Provisions. Neither section 2(a)(iii) of the Agreement, an unenforceable *ipso facto* clause, nor the Safe Harbor Provisions which do not apply, permit this type of behavior at the expense of the Debtors' estates. Metavante should be compelled to perform under the Agreement.

C.     *The Court Has the Authority to Compel Metavante's Performance and Enforce the Automatic Stay*

32.     This Court has the authority to compel Metavante to continue to perform its obligations under its executory contract with LBSF. For example, in *In re Ernie Haire Ford*, a court recently granted a debtor's motion to compel performance when the debtor's counterparties had improperly terminated their contracts based on the commencement of the debtor's bankruptcy case. 403 B.R. at 760. The court reasoned that the contracts were still in

11

effect and "[w]hile these agreements are in full force and effect, the parties are bound by their terms and must continue to operate under the agreements in good faith." *Id*. at 761.

33. LBSF's right to receive payments under the Agreement is property of the estate. *See, e.g., In re Enron Corp.*, 300 B.R. 201, 212 (Bankr. S.D.N.Y. 2003) ("Courts have consistently held that contract rights are property of the estate, and that therefore those rights are protected by the automatic stay.") (citations and internal quotations omitted); *In re Baltimore Marine Indus.*, 476 F.3d 238, 240 (4th Cir. 2007) ("Amounts owed to the debtor under existing contracts are included within the estate."); *In re Ernie Haire Ford*, 403 B.R. at 760 ("[Debtor's] rights under these executory contracts are property of the bankruptcy estate, and, therefore, exercising a terminable-at-will provision is not permitted without relief from stay.").

34. Metavante's attempts to exercise control over such property of the estate by failing to make payments under the Agreement violates the automatic stay. See *In re Broadstripe, LLC*, 402 B.R. 646, 657 (Bankr. D. Del. 2009) ("By refusing to perform its obligations under the Member Agreement, NCTC is interfering with Broadstripe's property rights under the Member Agreement and acting in violation of the automatic stay.").[3]

## NOTICE

35. No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

---

[3] LBSF reserves the right to seek at a later date sanctions for Metavante's knowing violation of the automatic stay.

States Attorney for the Southern District of New York; and (vi) Metavante. The Debtors submit that no other or further notice need be provided.

36. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: May 29, 2009
New York, New York

/s/ Richard W. Slack
Lori R. Fife
Richard W. Slack
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor and
Debtor In Possession

13

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
                                                                                                    :

In re                                                                                :      Chapter 11 Case No.

LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :      08-13555 (JMP)

                      Debtors.                   :      (Jointly Administered)
---------------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105(a), 362 AND 365
OF THE BANKRUPTCY CODE TO COMPEL PERFORMANCE OF
<u>CONTRACT AND TO ENFORCE THE AUTOMATIC STAY</u>**

Upon the motion, dated May 29, 2009 (the "<u>Motion</u>"), of Lehman Brothers Special Financing Inc. (the "<u>Debtor</u>"), as debtor in possession (collectively with Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, the "<u>Debtors</u>" and, together with their non-debtor affiliates, "<u>Lehman</u>"), pursuant to sections 105(a), 362, and 365 of the Bankruptcy Code to Compel Performance of Metavante Corporation's Obligations Under an Executory Contract and to Enforce the Automatic Stay (the "<u>Motion</u>"), all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties and to Metavante Corporation; and it appearing that no other or further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, its creditors and all parties

1

in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pending assumption or rejection of the Agreement (as defined in the Motion) by LBSF, Metavante Corporation shall perform its obligations to make payments to LBSF under the Agreement, without regard to any alleged defaults by LBSF under the Agreement, including but not limited to promptly making all payments that were, without regard to any alleged defaults by LBSF under the Agreement, owed to LBSF on November 1, 2008, February 1, 2009, and May 1, 2009, to pay default interest on such payment obligations, and to make all other payments to LBSF under the Agreement.

Dated: [_____], 2009
       New York, New York

                                                        _____
                                                        UNITED STATES BANKRUPTCY JUDGE