Duncan E. Barber, #16768
Steven T. Mulligan, #19901
4582 S. Ulster St. Pkwy., Suite 1650
Denver, CO 80237
Phone: 720-488-0220
Fax: 720-488-7711

ATTORNEYS FOR IRONBRIDGE MOUNTAIN COTTAGES, LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x
                                                          :
In re                                                     :   Chapter 11
                                                          :
LEHMAN BROTHERS HOLDINGS, INC., *et al.*                  :   Case No. 08-13555 (JMP)
                                                          :
                    Debtor.                               :   Jointly Administered
                                                          :
----------------------------------------------------------x

**OBJECTION TO**
**DEBTORS' MOTION PURSUANT TO SECTIONS 105, 363 AND**
**554(a) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO**
**ESTABLISH PROCEDURES TO SELL OR ABANDON *DE MINIMIS* ASSETS**

Ironbridge Homes, LLC, a Colorado limited liability company ("Ironbridge Homes"), Ironbridge Mountain Cottages, LLC, a Colorado limited liability company, ("Mountain Cottages") and Ironbridge Aspen Collection, LLC, a Colorado limited liability company (Aspen Collection"), (collectively, the "Ironbridge Entities"), by its[1] counsel, Bieging Shapiro & Burrus LLP, hereby objects to Debtors' Motion Pursuant to Sections 105, 363 and 554(a) of the Bankruptcy Code for Authorization to Establish Procedures to Sell or Abandon *De Minimis* Assets (the "Motion"), filed by Lehman Brothers Holdings, Inc. ("LBHI").

In support hereof, the Ironbridge Entities state the following:

---

[1] The undersigned counsel is in the process of being retained by The Ironbridge Property Owners Association ("IPOA"), the HOA at the Ironbridge project located in Colorado. In fact, IPOA has similar concerns regarding the Motion as set forth in this Objection.

00095612

## INTRODUCTION

If the Press is to be believed, LBHI's bankruptcy is the "largest" bankruptcy case ever filed in the United States. However, this is misleading because there are nineteen separate and distinct debtors included in LBHI's bankruptcy case and there has been no substantive consolidation of these jointly-administered Debtors. In fact, there are nineteen bankruptcies which range in size and none of which would merit the dubious pride of being the largest. Further, while $2.0 million might be *de minimis* relative to the combined total asset base of all nineteen debtors, it may not be *de minimis* with respect to the sale of a particular asset owned by a particular debtor. Thus, in part because the Debtors' Bankruptcy Cases have not been substantively consolidated, the Motion and relief sought are deficient and must be denied. Further, the Motion must be denied because of from numerous substantive deficiencies.

## PROCEDURAL HISTORY

1. One of the Debtors in these jointly-administered cases is LB Rose Ranch, LLC ("LBRR"), which filed for bankruptcy protection on February 9, 2009, Case No. 09-10560-jmp. The Ironbridge Entities are creditors only of LBRR and not creditors of LBHI or any of the other LBHI entities whose bankruptcy proceedings are being jointly administered.[2]

2. On May 14, 2009, Debtors filed the Motion, seeking entry of an Order allowing Debtors to (i) sell assets that provide consideration (whether cash or some other form of consideration) to the "Debtors" of less that $2.0 million without further Court approval (the "*De Minimis* Sales"), and (ii) to abandon assets assumed by the Debtors or a Debtor to be of inconsequential value. With respect to the *De Minimis* Sales, Debtors divide such sales into two

---

[2] To be clear, to date, the Ironbridge Entities are uncertain whether withdrawals from LBRR by its owner, PAMI, LLC, were proper corporate actions. To the extent any withdrawals were improper, the Ironbridge Entities hereby expressly reserve such claims.

categories: (i) sales that net cash to "Debtors" of between $500,000.00 and $2.0 million, and (ii) those that net cash to Debtors of less than $500,000.00.

## LBRR AND THE IRONBRIDGE ENTITIES

3.  LBRR is the owner and developer of a 553-acre residential real estate development located between Glenwood Springs and Aspen, Colorado, known as Ironbridge Golf Club and Community. Upon information and belief, LBRR's only business is the ownership and development of Ironbridge Golf Club and Community.[3]

4.  Under its current development plan, at build out, the Ironbridge project will consist of 292 homes, plus thirty (30) "affordable" homes that LBRR is committed to build by agreement with Garfield County, Colorado.

5.  Title to the underlying real estate resides in LBRR. Ironbridge Homes has an exclusive contractual right to acquire lots from LBRR (for immediate resale to third parties) and to build homes on those lots. To date, Ironbridge Homes has acquired and built homes on one-hundred and fifty (150) of these lots. The project is on-going. Ironbridge Homes has the on-going, exclusive contractual right to buy remaining lots in the Ironbridge development and to build homes there.

6.  LBRR is obligated to Garfield County to build the thirty affordable homes. LBRR entered into a contract with Mountain Cottages and Aspen Collection to build the affordables. Out of the thirty (30) affordables, twenty (20) have been completed. Of those twenty homes, ten (10) are pending sale to ten separate, identified purchasers at a price of $230,000.00 each. Mountain Cottages and/or Aspen Collection are owed over $400,000.00 by

---

[3] LBRR may be a single asset real estate case subjecting LBRR to the operation of 11 U.S.C. § 362(d)(3).

LBRR for their construction of those ten homes alone and have lien rights for a substantial portion of that amount. See Section 546(b) notices file in these cases.

7.  Mountain Cottages and/or Aspen Collection, as applicable, are in the process of completing ten additional "affordable" homes that are also expected to sell for at least $230,000.00 each. Upon completion, they will be entitled to approximately $900,000.00 for their construction of these remaining homes, with associated lien rights.

8.  Ironbridge Homes are contractually entitled to acquire remaining lots owned by LBRR in the Ironbridge development, sell such lots to third parties, build homes on those lots, and retain a portion of the resulting profit from the property sale and home construction. The expected price for each of the remaining lots is less than $100,000.00.

9.  Under the current plans, every lot in the Ironbridge development will sell for a purchase price of less than $500,000.00 and every affordable home will sell for less than $230,000.00. Under the Debtors' proposed procedures, creditors and other parties in interest in the LBRR case would receive no further notice or information relative to the assets of this Debtor.

10. Moreover, even assuming sales occur, creditors and other parties in interest in the LBRR case have no assurance of how the net sales proceeds will be held or whether such funds will be segregated for the LBRR estate.

**ARGUMENT**

11. While the Ironbridge Entities agree conceptually that efficient sales procedures should to be established that would apply to each of the Debtor entities independently of each other, the Motion fails procedurally and substantively and therefore, must be denied.

12. Procedurally, the Motion is deficient because Debtors' Bankruptcy Cases have not been substantively consolidated but are merely being jointly administered. As a result, each debtor is a separate and distinct entity with its own assets, liabilities and creditors. Through the Motion, Debtors ignore this fact and seek to impose sales procedures on the creditors of each Debtor as if such creditors were all creditors of LBHI, *i.e.*, without regard to the unique facts and circumstances of each separate debtor.

13. Further, as provided in Fed. R. Bankr. P. 6004(c), 7004 and 9014, the Motion, which in substance is a sale motion, must be served on those parties who have liens or other interests in the property to be sold. A review of the Certificate of Service, filed on May 18, 2009 [Dkt. No. 3591], shows that the Ironbridge Entities were not personally served with the Motion. Therefore, the Motion must be denied because the Ironbridge Entities have been denied due process.

14. Substantively, the Motion is deficient for several reasons. First, Debtors assert that assets of a value of $2.0 million or less are of *de minimis* value "as compared to the Debtors' total asset base." On first blush, this assertion seems reasonable when looking at the combined asset base of all nineteen Debtors. However, since Debtors' Bankruptcy Cases have not been substantively consolidated, a particular asset is owned by a particular Debtor and $2.0 million may not be *de minimis* if that asset is compared to the total asset base of the particular Debtor that owns such asset.

15. In its bankruptcy schedules, LBRR values the Ironbridge Golf Course and Golf Club at approximately $21 million; that valuation assumes that the golf course continues to operate and/or can be sold. LBRR values its residential land and improvements at approximately

$25 million; however, that valuation must include lots previously sold in that the remaining inventory is closer to approximately $5.0 million.

16. Second, on page 4 of the Motion, Debtors state that the proposed procedures apply only to the "sale of assets involving, in each case, the transfer of $2,000,000.00 or less in total consideration, as measured by the amount of cash and other consideration being received by the Debtors on account of the assets being sold." *See* Motion, p. 5, pg. 13. Thus, it appears that Debtors could sell assets that have a value greater than $2.0 million but because Debtors believe they will only net the sum of $2.0 million or less, Debtors do not have to seek further authority for the sale. At the very least, Debtors should clarify the parameters of this $2.0 million threshold.

17. Third, there is no indication that proceeds generated from sales of assets will be held exclusively by the particular Debtor that owned the asset. Debtors should be required to state maintain sales proceeds at the particular Debtor whose assets are being sold. In the LBRR case, this will ensure that proceeds from the sales of any assets owned by LBRR will be held for LBRR's bankruptcy estate thereby ensuring that LBRR's creditors receive the benefit of LBRR's assets in prior to distribution to LBRR's owner.

18. Fourth, although Debtors state that liens, claims, encumbrances and other interests will attach to the proceeds of any sale, there is no provision made for segregating those proceeds in a separate, escrow account. Rather, it appears that any proceeds could be comingled with the cash and proceeds of all Debtors thereby exposing creditors to the credit risk of the other Debtors. Debtors should be required to segregate proceeds from the sale of assets in an account or accounts in the name of a particular Debtor entity.

19.     Fifth, the proposed notice procedures are deficient.  With respect to sales that net Debtors over $500,000.00 to $2.0 million, the economic terms and conditions that Debtors are required to be set forth only include the purchase price to be paid.  Presumably, the assets of the various Debtors vary greatly and could require the employment of brokers or other parties to assist in the sale.  Thus, Debtor should be required to set forth any such requirements or whether third parties are involved specifically identifying any amounts that might be paid to such third parties, that is, any analysis of the net sales proceeds to the Debtor.

20.     Further, and more troubling, it appears that the Debtors will not be required to provide any notice for sales of any assets for an amount that is less than or equal to $500,000.00 and will not be required to report such sales in their monthly reports to the Court.  In LBRR's case, unless its assets are sold in bulk, most if not all sales will fall into this category.  Thus, creditors and other parties in interest in the LBRR case may never receive any notice of any sales of LBRR's assets.

21.     Sixth, the monthly reporting requirements are deficient.  Specifically, Debtors are required only to provide the "major economic terms and conditions" of the sale but as was apparent in the notice procedures, it is unclear what Debtors have to include.  Debtors should be required to more clearly state what will be included in the monthly reports.

22.     Further, for sales of any assets for an amount that is less than or equal to $500,000.00 (which would include most, if not all, of LBRR's individual assets), Debtors to not have to provide a report at all.  Thus, not only will creditors not be advised of potential sales before they occur, they will not be provided any information after such sales occur.  At the very least, Debtors should be required to include in the monthly report sales of any assets for an amount that is less than or equal to $500,000.00.

23. As regards the portion of the Motion requesting approval to establish procedures to abandon Debtors' property, Debtors should be required, in the notice of such abandonment, to set forth Debtors' efforts to sell or liquidate any such property. While there may be assets or property that cannot be sold for a benefit to the Debtors' estate, Debtors should nevertheless be required to make an effort to realize some positive revenue for the estates and advise creditors of those efforts.

## CONCLUSION

24. The Ironbridge Entities agree that some form of efficient sales procedures may aid in the orderly administration of the jointly administered cases. However, as proffered, the Motion cannot be granted for the reasons set forth herein.

WHEREFORE, the Ironbridge Entities request that the Court deny the Motion, and for such other and further relief as the Court deems proper.

DATED this 29th day of May, 2009.

                BIEGING SHAPIRO & BURRUS LLP

                By: /s/ Duncan E. Barber
                    Duncan E. Barber, #16768
                    Steven T. Mulligan, #199101
                    4582 South Ulster St. Parkway, Suite 1650
                    Denver, CO 80237
                    Telephone: (720) 488-0220
                    Fax: (720) 488-7711
                    E-mail dbarber@bsblawyers.com
                    E-mail: smulligan@bsblawyers.com

                    Attorneys for Ironbridge Homes, LLC, Ironbridge Mountain Cottages, LLC, and Ironbridge Aspen Collection, LLC

## CERTIFICATE OF MAILING

The undersigned hereby certifies that on May 29, 2009, a true and correct copy of the foregoing **OBJECTION TO DEBTORS' MOTION PURSUANT TO SECTIONS 105, 363 AND 554(a) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO ESTABLISH PROCEDURES TO SELL OR ABANDON *DE MINIMIS* ASSETS,** was placed in the United States mail, first-class, postage prepaid and addressed to the following:

| | |
|---|---|
| Andrew D. Velez-Rivera, Esq.<br>Paul Schwartzberg, Esq.<br>Brian Masumoto, Esq.<br>Linda Riffkin, Esq.<br>Tracy Hope Davis, Esq.<br>Office of the U. S. Trustee<br>33 Whitehall Street, 21st Floor<br>New York, NY 10004 | Robinson B. Lacy, Esq.<br>Hydee R. Feldstein, Esq.<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004 |
| Ian T. Lowitt, CFO<br>Lehman Brothers Holdings, Inc.<br>245 Seventh Avenue<br>New York, NY 10019 | Jeffrey S. Margolin, Esq.<br>Hughes Hubbard & Reed LLP<br>One Battery Park Plaza<br>New York, NY 10004 |
| Lehman Brothers Holdings, Inc.<br>c/o Prentice Hall Corporation System, Inc.<br>80 State Street<br>Albany, NY 12207 | Epiq Bankruptcy Solutions, LLC<br>Claims Agent<br>(f/k/a Bankruptcy Services LLC)<br>757 Third Avenue, 3rd Floor<br>New York, NY 10017 |
| Richard P. Krasnow, Esq.<br>Lori R. Fife, Esq.<br>Shai Y Waisman, Esq.<br>Weil Gotshal & Manages LLP<br>767 Fifth Avenue<br>New York, NY 10153 | Lindsee P. Grandfield, Esq.<br>Lisa Schweiger, Esq.<br>Cleary Gotlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, NY 10006 |
| Deborah Quinn, Esq.<br>Assistant Garfield County Attorney<br>108 8th Street, Suite 219<br>Glenwood Springs, CO 81601 | Milbank, Tweed, Hadley & McCloy LLP<br>Attn:    Dennis F. Dunne Esq.<br>            Evan Fleck, Esq.<br>1 Chase Manhattan Plaza<br>New York, NY 10005 |

/s/ Mary Anne Lenzi

00095612                                                                                         9