James B. Kobak, Jr.
David W. Wiltenburg
Jeffrey S. Margolin
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile:  (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> LEHMAN BROTHERS HOLDINGS INC., *et al.*, <br><br>        Debtors. | Chapter 11 <br><br> Case No. 08-13555 (JMP) <br><br> Jointly Administered |
| In re: <br><br> LEHMAN BROTHERS INC., <br><br>        Debtor. | Case No. 08-01420 (JMP) SIPA |

**TRUSTEE'S (I) OBJECTION TO UNCLAIMED PROPERTY RECOVERY SERVICE,
INC.'S MOTION TO COMPEL AND RELATED RELIEF AND (II) REPLY IN
<u>FURTHER SUPPORT OF REJECTION OF CONTRACTS</u>**

James W. Giddens (the "Trustee"), as Trustee for the Securities Investor

Protection Act ("SIPA") liquidation of Lehman Brothers Inc. ("Debtor" or "LBI"), by and

through his undersigned counsel, hereby submits this (i) Objection to Unclaimed Property

Recovery Service, Inc.'s ("UPRS") Motion (the "Motion," LBHI Docket Nos. 3345, 3346) for

orders compelling payment of unclaimed LBI funds purportedly held by the New York State

Comptroller Office of Unclaimed Funds (the "Comptroller") and related relief, and (ii) Reply in

60676443_1.DOC

support of the Trustee's Notice of Rejection of Contracts with UPRS (the "Notice of Rejection," Docket No. 1075) and respectfully represents as follows:

## PRELIMINARY STATEMENT

Movant UPRS appears to be uninformed or confused regarding numerous issues of law and fact, and seemingly fails to understand at least the following basic points, (i) that LBI, independently of LBHI, is a debtor entitled to the full protections of the automatic stay; (ii) that recovery of a claimed pre-petition debt of $500,000 (apparently based upon a transaction that occurred in 1996) must be pursued through the claims process rather than through motion practice; (iii) that claims under rejected contracts are pre-petition claims, not entitled to administrative priority; and (iv) that the doctrine of "recoupment" is not a general term for getting money in miscellaneous ways, but has a legal meaning that makes it irrelevant in this instance.

In any case, the relief sought is now moot. The Motion and the accompanying Declaration of Bernard Gelb in Support of the Motion base their claims on four old contracts, which are alleged to be "ongoing." (See Mot. at ¶ 40, Gelb Decl. at ¶ 3.) However, the Trustee, in his business judgment, has determined that these executory contracts are not beneficial or necessary to the LBI estate and has noticed them for rejection. Upon effectiveness of this rejection, there can be no further question that UPRS has at most a pre-petition claim under Bankruptcy Code Section 365(g)(1), which must be pursued through the claims process. As a result, the Motion should be denied as moot.

While omitting reference to Section 365(g), the Motion cites instead a wide-range of Code provisions and legal arguments for allowance and immediate payment of purported pre-petition and post-petition amounts. Each of these arguments lacks foundation in fact and/or law and, along with all other relief sought in the Motion, should be denied.

2

60676443_1.DOC

# BACKGROUND

**A.    The SIPA Liquidation.**

1.    On September 19, 2008 (the "Filing Date"), the Honorable Gerard E. Lynch, United States District Court for the Southern District of New York, entered the Order Commencing Liquidation (the "LBI Liquidation Order"), pursuant to the provisions of the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa et seq., in the case captioned *Securities Investor Protection Corporation v. Lehman Brothers Inc.*, Case No. 08-CIV-8119 (GEL).

2.    The LBI Liquidation Order, among other things, (i) appointed the Trustee for the liquidation of the business of the Debtor pursuant to § 78eee(b)(3) of SIPA; and (ii) removed this case to this Court pursuant to § 78eee(b)(4) of SIPA (the "SIPA Proceeding").

**B.    UPRS's Contracts and the Motion.**

3.    UPRS claims that LBI and UPRS entered into four contingent fee contracts (the "Contracts"), respectively dated May 28, 1996, September 18, 1997, March 23, 1998, and January 14, 1999, for the collection of unclaimed property held by third-parties payable to LBI. Identical in form, each of the Contracts provided, *inter alia*, that UPRS was authorized to recover "unclaimed money," effective until "the date of the recovery," and each successive Contract provides that it expresses the "entire agreement between the parties." (See Gelb Decl. at Ex. A.)

4.    On April 13, 2009, UPRS filed its Motion (i) compelling payment of all unclaimed funds outstanding in the name of LBI, its predecessors and its subsidiaries held by the

3

Comptroller, totaling a purported $5 million;[1] (ii) declaring that the automatic stay does not apply to the actions sought to be taken by UPRS, or, alternatively, providing relief from the automatic stay; (iii) allowing payment of services provided post-petition to the LBI estate of an alleged $500,000 amount; and (iv) seeking other related relief, including allowance and payment of a purported $500,000 pre-petition debt owed by LBI. (Mot. at 14-15.)

5. On May 1, 2009, the Trustee filed the Notice of Rejection, which specifically rejected the Contracts as of May 1, 2009. (Notice of Rejection at 4.)

6. On May 11, 2009, UPRS filed an objection to the Notice of Rejection (Docket No. 1092, LBHI Docket No. 3546) contending that the Contracts were not executory contracts subject to rejection by the Trustee despite UPRS's repeated contention that these are "ongoing agreements with LBI" and assertion that performance has continued post-petition (UPRS Objection at ¶ 10). UPRS also reiterated its claim for immediate allowance and payment of a $500,000 priority administrative claim (again providing no factual basis) and alleged that the Trustee's rejection of the Contracts constituted a breach of "covenants of good faith and fair dealing."

## ARGUMENT

### I. Rejection Of The Contracts Renders The Motion Moot.

7. Section 365(a) of the Bankruptcy Code authorizes the Trustee to assume or reject executory contracts. 11 U.S.C. § 365(a). In a liquidation proceeding, rejection is automatic unless the Trustee affirmatively assumes an executory contract. 11 U.S.C. § 365(d)(1). The Trustee may assume or reject an executory contract in accordance with his

---

1. This request is impossible to grant on its face for at least two reasons: (i) As the Comptroller is not a party to the Motion, no order "compelling" that public official to act may be entered; (ii) UPRS has not provided any basis for its claim that the Comptroller holds "$5 million" in unclaimed funds payable to LBI. Since the filing of the Motion, the Trustee's professionals have been in discussions with officials from the Comptroller's office to ascertain the extent of unclaimed funds held by the Comptroller on behalf of LBI.

4

60676443_1.DOC

business judgment if he determines that the proposed course of action will benefit the estate. Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1099 (2d Cir. 1993), cert. denied, 511 U.S. 1026 (1994); In re Minges, 602 F.2d 38, 43 (2d Cir. 1979); Westbury Real Estate Ventures, Inc. v. Bradlees Stores, Inc. (In re Bradlees Stores, Inc.), 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996) (In reviewing a decision to assume or reject an executory contract, the "court must examine the contract and circumstances and apply its best 'business judgment' to determine if the assumption or rejection would be beneficial or burdensome to the estate."); accord Sharon Steel Corp. v. Nat'l Gas Distrib Corp., 872 F.2d 36, 39-40 (3d Cir. 1989) (debtor's motion to reject executory contract is properly granted upon finding that rejection will benefit the estate).

8. After due consideration, the Trustee concluded that the matters delegated to UPRS were matters within the sphere of his professionals, and such unclaimed property held by third-parties could be collected for the benefit of the estate at far lower cost to the estate than provided for under the Contracts.[2] The Trustee, in the exercise of his considered business judgment, concluded that the Contracts, particularly the 10% collection fees on recovered property payable to UPRS, were detrimental and burdensome to the estate and that their rejection would be beneficial and in the best interests of the estate. As a result, the Trustee filed the Notice of Rejection.

9. UPRS contests the rejection on the grounds that the Contracts are not executory because the only remaining performance due under the Contracts is the payment of money to UPRS. However, UPRS's actions contradict this position and UPRS's cited authority are inapplicable to the Contracts.

---

2. Contrary to the assertions in UPRS's papers, the Trustee does not have any arrangement with LBHI, any of its professionals or any other party regarding the collection of unclaimed LBI property.

5

60676443_1.DOC

10. First, UPRS's clarification of the nature of executory contracts applies only where all parties have fully performed under the contract and the only remaining obligation, on both sides, is the payment of money. In re Helm, 335 B.R. 528, 535 (Bankr. S.D.N.Y. 2006) (Where agreement was not "fully performed," Court found that the debtor could reject the contract in his sound business judgment); In re Teligent, Inc., 268 B.R. 723, 732 (Bankr. S.D.N.Y. 2001). This does not apply here as UPRS continues to assert that its performance is "ongoing," which means that it has not fully performed, and even claims to be rendering performance on behalf of LBI through the Motion itself. As a result, the Contracts are executory, and subject to rejection by the Trustee in his business judgment.

11. Second, courts consistently hold that contingent fee contracts such as these Contracts are executory and subject to rejection. See e.g., In re Pacific Far East Line, Inc., 654 F.2d 664, 668 (9th Cir. 1981); In re Health Mgmt. Ltd. P'ship, 332 B.R. 360, 363 (Bankr. C.D. Ill. 2005 (contract for collection of past-due healthcare receivables is executory and subject to rejection); In re PDQ Copy Center, Inc., 27 B.R. 123, 125-6 (Bankr. S.D.N.Y. 1983). These cases establish that any LBI payment obligation coupled with UPRS's assertion of unperformed obligations described above are sufficient to support a finding that the Contracts are executory and therefore subject to rejection by the Trustee.

12. Upon the rejection of the Contracts, UPRS lacks standing to act as LBI's collection agent and pursue, through the Motion or otherwise, LBI unclaimed funds held by the Comptroller. It is a matter of settled law that UPRS, as a party to the rejected Contracts, may not continue to enforce the Contracts, and retains only the right to assert a pre-petition claim for breach of the Contracts under section 365(g) of the Code immediately prior to the Filing Date. In re Tacoma Boatbuilding Co., 129 B.R. 365, 368 (Bankr. S.D.N.Y. 1991); accord Lubrizol

6

Enter. v. Richmond Metal Finishers, 756 F.2d 1043, 1048 (4th Cir. 1985) (party to the rejected contract could not "seek to retain its contract rights"). As a result, the Motion is moot and should be denied.

## II.    UPRS's Request For Stay Relief Should Be Denied.

13.    UPRS makes an exhaustive argument that the automatic stay does not apply to this matter, but directs all of its arguments to the LBHI stay: "None of UPRS's actions is against LBHI or its property in any form." (See Mot. at 5-7.) This ignores the fact that LBI is itself a debtor in this SIPA proceeding, and its entitled to stay protection under both SIPA and the Bankruptcy Code. Especially pointless against this background are UPRS's protestations that the property in question is "an asset of LBI," and "not an asset of LBHI." (Id. at 8, ¶31). Plainly, to the extent UPRS, through the Motion, seeks to obtain possession of LBI property held by the Comptroller, such attempt is stayed pursuant to section 362(a)(3) of the Bankruptcy Code. 11 U.S.C. § 362(a)(3).

14.    UPRS seems to acknowledge that the automatic stay is effective with further arguments for stay relief, again directed at pointless lifting of the LBHI automatic stay: "LBHI does not have any equity in the property and consequently it is not required for an effective reorganization." (Id. at 7-9, ¶34.) In fact, UPRS has not demonstrated that "cause" exists to lift the automatic stay as to either debtor pursuant to section 362(d)(1). Moreover, stay relief pursuant to section 362(d)(2) as to LBI should be denied based on statements in the Motion itself which purports on its face to seek control over $5 million in LBI assets.

15.    Section 362(d)(1) of the Bankruptcy Code provides that a party is only entitled to relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). The Second Circuit has adopted twelve factors that may be considered in determining whether there is cause to lift the stay:

7

>  (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the stay on the parties and the balance of the harms.

Sonnax Indus. Inc. v. Tri Component Prods. Corp., 907 F.2d 1280, 1285 (2d Cir. 1990) ("If the movant fails to make an initial showing of cause…the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.").

      16.    UPRS does not provide any showing for cause under the Sonnax factors or even explain which factors are applicable, perhaps alluding to the twelfth factor when it asserts a right to receive contingent fees. (See Mot. ¶ 39.)  However, following rejection of the Contracts, any such right is a breach of contract claim relating back to the Filing Date and subject to the claims process.  UPRS's request for stay relief should thus be denied as an impermissible attempt to jump the line of the claims process, ahead of all other LBI customers and creditors.  Grayson v. WorldCom, Inc. (In re WorldCom, Inc.), No. 05 Civ. 5704 (RPP), 2006 U.S. Dist. LEXIS 55284, *27 (S.D.N.Y. Aug. 6, 2006) (stay relief denied as balance of harms or impact of the stay weighed in favor of the debtor where "a claims adjudication process that has been established and there is no support to disrupt the established process.").

### III. UPRS's Request For Immediate Payment Of Alleged Fees Should Be Denied.

17. UPRS seeks payment of an alleged pre-petition LBI unsecured claim from the alleged LBI unclaimed funds held by the Comptroller under the equitable theory of "recoupment." (Mot. at ¶¶ 44-46.). As an initial matter, it bears noting that this pre-petition claim appears to date from a claimed "mutual mistake" in 1996, and is almost certainly time-barred. Thus, Exhibit D to the Gelb Declaration includes invoices rendered pursuant to the 1996 Contract (which provided for a 15% contingent fee), apparently based upon a transaction that occurred prior to execution of the 1997 Contract (which reduced the fee to 10%). Under New York's 6-year statute of limitations applicable to contract claims, UPRS's claim based on a "mistake" that happened in 1996 would have become time-barred in 2002.

18. In any event, UPRS fails to recognize that the doctrine of recoupment is not a general name for getting money in some way, but "is a limited [doctrine] and should be narrowly construed." New York State Elec. & Gas Corp. v. McMahon (In re McMahon), 129 F.3d 93, 97 (2d Cir. 1997). In fact, recoupment refers to the situation where mutual debts arise out of a single transaction, and relieves parties of the unfair burden of paying with respect to the transaction when a corresponding debt remains owing by the other party. See Malinowski v. New York State Dep't of Labor (In re Malinowski), 156 F.3d 131, 133 (2d Cir. 1998) (holding that recoupment "should be limited in bankruptcy to cases in which 'both debts . . . arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations.'" (quoting In re Univ. Med. Ctr., 973 F.2d 1065, 1081 (3d Cir. 1992)); Global Cable, Inc. v. Adelphia Communs. Corp. (In re Adelphia Communs. Corp.), No. 02 Civ. 9770 (RCC), 2006 U.S. Dist. LEXIS 37112, *14-15 (S.D.N.Y.

9

June 6, 2006) ("The claims at issue arise not from one transaction but rather from two. Equitable recoupment is therefore inappropriate").

18. Finally, UPRS seeks allowance and payment of a $500,000 administrative claim for alleged services provided to the estate post-petition. As mentioned above, there appears to be no basis in fact for this claim. Section 503(b)(l)(A) of the Bankruptcy Code provides administrative expense priority for "the actual, necessary costs and expenses of preserving the estate [...] for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). Courts have noted that the inclusion of the words "actual" and "necessary" in section 503(b)(1)(A) of the Bankruptcy Code require that a debtor receive a "real" benefit from the transaction, not just a potential benefit. In re Drexel Burnham Lambert Group Inc., 134 B.R 482, 488 (Bankr. S.D.N.Y. 1991). As LBI has not received any benefit post-petition from actions taken by UPRS, any administrative expense claim is premature at best. In addition, as noted above, rejection of the Contracts results in a pre-petition claim under the Contracts arising prior to the Filing Date.

**(rest of page left intentionally blank)**

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests that the Court (i) deny the Motion; (ii) affirm the Trustee's Notice of Rejection; and (iii) grant the Trustee such further and other relief as is just and necessary.

Dated:     New York, New York
           May 29, 2009

HUGHES HUBBARD & REED LLP

By: /s/ David W. Wiltenburg
    James B. Kobak, Jr.
    David W. Wiltenburg
    Jeffrey S. Margolin
    One Battery Park Plaza
    New York, New York 10004
    Telephone:  (212) 837-6000
    Facsimile:  (212) 422-4726
    Email:  kobak@hugheshubbard.com

Attorneys for James W. Giddens, Trustee for the SIPA Liquidation of Lehman Brothers Inc.

60676443_1.DOC