WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Edward Soto
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br>　　　　　Debtor.<br>_____ | Chapter 11 Case No.<br>08-13555 (JMP)<br>(Jointly Administered) |
| In re<br><br>LEHMAN COMMERCIAL PAPER INC.,<br>　　　　　Debtor.<br>_____ | Chapter 11 Case No.<br>08-13900 (JMP) |
| STATE STREET BANK AND TRUST COMPANY,<br>　　　　　Plaintiff,<br>　　　v.<br>LEHMAN COMMERCIAL PAPER INC.,<br>　　　　　Defendant. | Adv. Proc. No. 08-01743 |

### NOTICE OF FILING OF EXCHANGE AGREEMENT

Lehman Brothers Holdings Inc. ("LBHI"), as debtor and debtor in possession,

together with its affiliated debtors in the above-referenced chapter 11 cases (collectively, the

"Debtors"), including Lehman Commercial Paper Inc. ("LCPI"), hereby file a copy of the

Exchange Agreement referenced in Debtors' Motion Pursuant to Rule 9019 of the Federal Rules

of Bankruptcy Procedure for Approval of an Exchange Agreement with State Street Bank and

Trust Company [Docket No. 3580].

Dated:  May 29, 2009
        New York, New York

      /s/ Shai Waisman
Shai Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**EXCHANGE AGREEMENT**

**By and Among**

**LEHMAN BROTHERS HOLDINGS INC.,**

**LEHMAN COMMERCIAL PAPER INC.**

**and**

**STATE STREET BANK AND TRUST COMPANY**

**dated as of**

**_____, 2009**

A/73033791.8

## **EXCHANGE AGREEMENT**

This EXCHANGE AGREEMENT (this **"Agreement"**), dated as of _____ __, 2009 (the **"Execution Date"**), by and among **LEHMAN BROTHERS HOLDINGS INC.,** a Delaware corporation (**"LBHI"**), **LEHMAN COMMERCIAL PAPER INC.,** a New York corporation (**"LCPI"**), and **STATE STREET BANK AND TRUST COMPANY**, a trust company organized under the laws of the Commonwealth of Massachusetts (**"State Street"**).

## **W I T N E S S E T H** :

WHEREAS, State Street and LCPI executed and delivered that certain Master Repurchase Agreement, dated as of May 1, 2007 (together with any amendments, supplements, or confirmations thereto, the "**Repo Agreement"**) pursuant to which State Street acquired, among other things, the four (4) loans identified on SCHEDULE A attached hereto and made a part hereof (each a **"Current State Street Loan"** and together the **"Current State Street Loans"**);

WHEREAS, LBHI is the owner and holder of the three (3) loans identified on SCHEDULE B attached hereto and made a part hereof (each a **"Current LBHI Loan"** and together the **"Current LBHI Loans"**);

WHEREAS, State Street has determined that it desires to exchange its Current State Street Loans for LHBI's Current LBHI Loans as more particularly described herein on the terms and subject to the conditions hereinafter set forth;

WHEREAS, LBHI has determined that it desires to exchange its Currrent LBHI Loans for State Street's Current State Street Loans as more particularly described herein on the terms and subject to the conditions hereinafter set forth;

WHEREAS, in connection with the exchange of the Current LBHI Loans and the Current State Street Loans, State Street has required and LCPI has agreed that LBHI and LCPI shall execute and deliver Assignment and Assumptions with respect to the loans known as 254 Park Avenue South  (the "**254 Park Loan**") and Cabo San Lucas (the "**Cabo Loan**");

NOW, THEREFORE, in consideration of the premises and of the respective covenants and agreements contained herein, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

# ARTICLE I

## DEFINITIONS

   1.1.  In this Agreement (including the recitals hereto) and in the Schedules and Exhibits hereto, except as expressly provided or as the context otherwise requires:

   **"Adversary Proceeding"** means that certain adversary proceeding commenced by State Street against LCPI in the United States Bankruptcy Court for the Southern District of New York, being *State Street Bank and Trust Company v. Lehman Commercial Paper Inc.,* Adv. Proc. No. 08-01743 (JMP).

   **"Affiliate"** means, with respect to any Person, any Person directly or indirectly controlling, controlled by or under direct or indirect common control with, such Person. A Person will be deemed to control another Person if such Person possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of such other Person, whether through the ownership of voting securities, partnership interests or other equity interests, by contract or otherwise.

   **"Agreement"** shall have the meaning assigned to such term in the first paragraph, and shall include all Schedules and Exhibits hereto.

   **"Assignment and Assumption"** shall mean with respect to (i) the Current LBHI Loans, an Assignment and Assumption in substantially the form of Exhibit A attached hereto, (ii) the Current State Street Loans, an Assignment and Assumption in substantially the form of Exhibit B attached hereto, (iii) the 254 Park Loan, an Assignment and Assumption in substantially the form of Exhibit C attached hereto and (iv) the Cabo Loan, an Assignment and Assumption in substantially the form of Exhibit D attached hereto.

   **"Bankruptcy Code"** means the United States Bankruptcy Code of 1978, as amended.

   **"Bankruptcy Court Approval"** shall mean the final and unappealable approval by the United States Bankruptcy Court under Case No. 08-13555 of the purchase and sale of the Loans pursuant to this Agreement in form and substance satisfactory to LBHI and State Street and which has not as of the Closing Date been vacated or stayed or amended without the consent of each party.

   **"Business Day"** means any day that is not a Saturday, Sunday or any other day on which banks in the State of New York or Commonwealth of Massachusetts are authorized or required by law to close.

   "**Closing**" shall have the meaning assigned to such term in Section 2.3 hereof.

   **"Closing Jamaica Credit"** means an amount equal to the sum of (a) $_____, or such lesser amount as may actually be advanced by LBHI with respect to a

requisition in the amount of $_____ previously submitted by the borrower in respect of the Current LBHI Loan known as the Storage Deluxe-Jamaica Avenue Project Loan plus (b) the aggregate amount of any additional advances made by LBHI, LCPI and their respective Affiliates from and after the Execution Date through the Closing Date, which advances have been approved in writing by State Street, in connection with such Storage Deluxe-Jamaica Avenue Project Loan.

"**Closing Date**" shall have the meaning assigned to such term in Section 2.3 hereof.

"**Closing Deliveries**" means the deliveries specified by Section 2.4 of this Agreement.

"**Closing Interest Proration**" shall have the meaning assigned to such term in Section 2.2(a) hereof.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Collateral Property**" shall mean (a) in the case of any Current LBHI Loan which is a mortgage loan, the real property, together with the improvements erected or to be erected thereon and related personal property which secures Current LBHI Loan and (b) in the case of any Current LBHI Loan which is a mezzanine loan, the pledge of equity interest in the borrower or other entity which secures such Current LBHI Loan.

"**Consent**" means any consent, approval, authorization, waiver, permit, grant, franchise, concession, agreement, license, order, registration, declaration, filing, or notice of, with or to any Person.

"**Escrow Accounts**" means those accounts established and maintained by LBHI or the Prior Servicer for the deposit and retention of all collections of taxes, assessments, ground rents, hazard and other insurance and comparable items on account of the Loans.

"**GAAP**" means United States generally accepted accounting principles.

"**Governmental Approval**" means any Consent of or with any Governmental Authority.

"**Governmental Authority**" means any nation or government (foreign or domestic), and any state or political subdivision thereof; any self-regulatory organization acting under color of authority granted under any Legal Requirement; and any court, tribunal, arbitrator, authority, agency, commission, official or other instrumentality of the United States or any other nation, or any foreign or domestic, state, county, city or other political subdivision thereof.

"**LBHI Knowledgeable Parties**" means, with respect to each of the Current LBHI Loans, those individuals set forth on SCHEDULE F attached hereto and made a part hereof.

"**Legal Requirements**" in respect of any Person means all (i) constitutions, treaties, statutes, laws, ordinances, codes, rules, regulations, standards, judgments, decrees, writs, rulings, injunctions, orders and other requirements of any Governmental Authority, (ii) Governmental Approvals and (iii) orders, decisions, injunctions, judgments, awards and decrees of or agreements with any Governmental Authority.

"**Lien**" means any encumbrance, charge, security interest, mortgage, restriction, pledge, hypothecation, voting trust agreement, option, right of first offer or refusal, proxy or lien, including but not limited to such Liens as may arise under any contracts.

"**Loans**" shall mean collectively, the Current State Street Loans and the Current LBHI Loans.

"**Loan Documents**" means all Notes, Mortgages, pledge agreements, loan agreements, credit agreements, security agreements, environmental indemnities, guaranties, and other documents and agreements evidencing or securing any of the Loans including, without limitation, those documents set forth on SCHEDULE C with respect to the Current State Street Loans and those documents set forth on SCHEDULE D with respect to the Current LBHI Loans. In the event any such document also secures or relates to one or more other loans which is not one of the Loans, such document shall be deemed a Loan Document, however, only such portion thereof securing or relating to the Loan shall be assigned hereunder by the Transferor.

"**Loan File**" means all records in the actual possession of LBHI or LCPI or in the possession of the Prior Servicer or any custodian, relating to the servicing, title, ownership or enforcement of the Current LBHI Loans, as well as all third party reports prepared with respect to the assets securing the Current LBHI Loans, such as environmental and engineering reports, but excluding any appraisals, valuations, analysis, work product, attorney work product and all other internally prepared documents, materials or information created by or on behalf of LBHI, LCPI or any of their Affiliates or any of their respective employees, agents, representatives or counsel with respect thereto.

"**Losses**" means any and all losses, liabilities, damages, fines, penalties, fees, amounts paid in settlement, Taxes, reasonable costs (including costs of investigation or enforcement), reasonable expenses and claims (including, without limitation, interest, reasonable fees and disbursements of counsel, witness fees and court costs).

"**Material Adverse Effect**" means (a) a material adverse effect on the business, operations, assets, liabilities, operating results or financial condition of the applicable party or any of its assets, or (b) a material adverse effect on the ability of such party to execute and deliver this Agreement or to perform its obligations hereunder.

"**Mortgage**" shall mean the mortgage, deed of trust or other security instrument creating a lien upon the real property described therein, and the improvements located on such real property, which secures a Loan.

08-13555-mg    Doc 3706    Filed 05/29/09    Entered 05/30/09 00:00:15    Main Document
Pg 8 of 41

"**Net Closing Payment**" shall have the meaning assigned to such term in Section 2.2(b) hereof.

"**Note**" shall mean the promissory note or similar instrument which evidences a Loan.

"**Person**" means and includes an individual, corporation, partnership (limited or general), joint venture, association, trust, limited liability company, any other unincorporated organization or entity, or any Governmental Authority.

"**Prior Servicer**" shall mean TriMont Real Estate Advisors, Inc., in its capacity as the servicer of the Current LBHI Loans.

"**Proceeds**" means any consideration received from the sale, exchange, license, lease or other disposition of any specified asset or property, any value received as a consequence of the possession thereof, and any payment received from any insurer or other person or entity as a result of the destruction, loss, theft, damage or other involuntary conversion of whatever nature thereof and shall include (a) all properties or other assets acquired through foreclosure or deed in lieu of foreclosure and (b) all "proceeds" as defined in the Uniform Commercial Code as in effect in the jurisdiction in which the specified asset or property is located.

"**Tax**" or "**Taxes**" means all taxes, charges, fees, levies, tariffs, charges, duties or other assessments, and all estimated payments thereof, including but not limited to income, excise, property, sales, use, value added, environmental, franchise, payroll, transfer, gross receipts, withholding, social security, and unemployment taxes, imposed by any foreign, federal, state, county or local government, or any subdivision or agency thereof, and any interest, penalty and expense relating to such taxes, charges, fees, levies or other assessments.

"**Transaction Assets**" shall mean collectively, the Loans, the 254 Park Loan and the Cabo Loan.

"**Transfer Taxes**" means all sales, use, transfer, real property transfer, reporting, recording, stock transfer and other similar Taxes arising out of or in connection with the transactions effected pursuant to this Agreement.

"**Transferee**" shall mean (a) with respect to the Current LBHI Loans, State Street and (b) with respect to the Current State Street Loans, LBHI.

"**Transferor**" shall mean (a) with respect to the Current LBHI Loans, LBHI and (b) with respect to the Current State Street Loans, State Street.


**ARTICLE II**

## EXCHANGE OF TRANSACTION ASSETS

2.1.  <u>Exchange</u>.

Upon and subject to the terms and conditions herein set forth, on the Closing Date, (i) State Street shall transfer, assign, convey and deliver to LBHI, and LBHI shall accept from State Street, all of State Street's right, title and interest in and to the Current State Street Loans free and clear of any Liens created by State Street or its Affiliates, (ii) LBHI shall transfer, assign, convey and deliver to State Street, and State Street shall accept from LBHI, the Current LBHI Loans free and clear of any Liens, and (iii) LCPI and LBHI shall execute and deliver an Assignment and Assumption to State Street with respect to both the 254 Park Loan and the Cabo Loan, together with, in each case, (A) all Loan Documents and Loan Files with respect to such Transaction Assets and in the case of the Current LBHI Loans, all right, title and interest in and to any other documents and instruments evidencing, securing, relating or otherwise executed in connection with such Current LBHI Loans and (B) all Proceeds of any of the Transaction Assets received after the date hereof. The sale and exchange of the Loans and the delivery of the Assignment and Assumptions with respect to the 254 Park Loan and the Cabo Loan shall be made without recourse and without representation or warranty other than as expressly provided (i) in Article III hereof or in the Assignment and Assumptions with respect to the Current LBHI Loans, (ii) in Article IV hereof with respect to the Current State Street Loans, and (iii) in the Assignment and Assumptions for the 254 Park Loan and the Cabo Loan and the Repo Agreement with respect to the 254 Park Loan and the Cabo Loan, respectively. Upon and subject to the terms and conditions herein set forth, on the Closing Date, State Street shall deliver to LHBI all original documents and records obtained by State Street or its Affiliates from LBHI, LCPI or the Prior Servicer with respect to the Current State Street Loans.

2.2.  <u>Payments</u>.

(a)     To the extent that interest on each of the Loans for the applicable interest period in which the Closing Date falls under the applicable Note is received prior to the Closing Date, such interest shall be prorated by LBHI and State Street at Closing (the **"Closing Interest Proration"**) and thereafter, to the extent that interest on each of the Loans for the applicable interest period in which the Closing Date falls under the applicable Note is received on or after the Closing Date, such interest shall be prorated promptly following receipt of payment, with the Transferor entitled to all interest actually received on the Loans with respect to the applicable interest period in which the Closing Date falls under the applicable Note up to but not including the Closing Date and the Transferee to receive the balance of such interest payment for the remainder of the applicable interest period, which obligation shall survive the Closing.

(b)     On the Closing Date, (i) LCPI and/or LBHI will pay to State Street an amount equal to the sum of any amounts required to be paid to State Street pursuant to the Assignment and Assumption for the 254 Park Loan and the Cabo Loan and (ii) State Street will pay to LBHI an amount equal to the Closing Jamaica Credit (such net amount, the **"Net Closing Payment"**), payable by wire transfer of immediately available funds to the account or accounts designated by State Street.

(c)    State Street will deliver, or cause to be delivered to LBHI an amount equal to the aggregate amount of all principal payments actually collected or otherwise received by State Street with respect to any of the Current State Street Loans in excess of the amounts set forth on SCHEDULE G, in immediately available funds by wire transfer to a bank account designated in writing by LBHI.

(d)    LBHI will deliver, or cause to be delivered to State Street an amount equal to the aggregate amount of all principal payments actually collected or otherwise received by LBHI, any of its Affiliates or Prior Servicer with respect to any of the Current LBHI Loans commencing on the Execution Date, in immediately available funds by wire transfer to a bank account designated in writing by State Street.

2.3.    <u>Closing</u>.  Subject to the conditions set forth in Articles VI and VII of this Agreement, the closing of the transfer of the Transaction Assets (the **"Closing"**) will take place on the second (2nd) Business Day following (a) receipt by LBHI and LCPI of the Bankruptcy Court Approval and (b) the expiration of the applicable appeal period with respect to such Bankruptcy Court Approval and provided that there is no pending appeal (the **"Closing Date"**), provided, however, that unless otherwise agreed in writing by State Street, the Closing Date shall be no earlier than July __, 2009.  Notwithstanding anything herein to the contrary, in the event that (i) the Bankruptcy Court Approval has not been obtained by July 10, 2009 or (ii) an appeal is filed with respect to the Bankruptcy Court Approval, which appeal is not dismissed by July 31, 2009, and without limiting LBHI's obligations under Section 5.7 below,  either State Street or LBHI shall have the right to terminate this Agreement upon delivery of written notice to the other parties hereto within thirty (30) days following such applicable date. Time is of the essence with respect to the dates set forth in this Section 2.3.

2.4.    <u>Deliveries at the Closing</u>.  At the Closing:

(a)    LBHI and/or LCPI, as applicable, will deliver, or cause to be delivered, to State Street the documents, instruments and other items required pursuant to Article VI hereof;

(b)    LBHI and/or LCPI, as applicable, will deliver, or cause to be delivered, to State Street, the Net Closing Payment, in immediately available funds by wire transfer to a bank account designated in writing by State Street, as adjusted by the net Closing Interest Proration; and

(c)    State Street shall deliver to LBHI and/or LCPI, as the case may be, the documents, instruments and other items required pursuant to Article VII hereof.

(d)    State Street shall transfer to LBHI the then-current balance of the escrow account held by State Street with respect to the Carillon Mezzanine Loan, which escrow account contains a balance of $_____ as of the Execution Date.

**ARTICLE III**

## REPRESENTATIONS AND
## WARRANTIES OF LBHI

LBHI hereby represents and warrants to State Street as follows with respect to the Current LBHI Loans (wherever the phrases "LBHI's knowledge", "to the best of LBHI's knowledge" or phrases of similar import are used in this Article III, such phrase shall mean the actual, and not imputed or constructive, knowledge of the LBHI Knowledgeable Parties and without any recourse or liability of any kind whatsoever to such individuals):

3.1.    <u>Organization; Power and Authority of LBHI</u>.   LBHI (a) is a corporation duly organized and validly existing under the laws of the jurisdiction of its organization and (b) has the corporate power and authority to own, lease and operate its property and to conduct its business as it is now being conducted.

3.2.    <u>Interests in the Current LBHI Loans</u>.  Immediately prior to, at and as of the Closing, LBHI will have good and valid title to each of the Current LBHI Loans and will be the sole owner and holder of the Current LBHI Loans and the related Loan Documents, free and clear of all Liens.   Immediately prior to, at and as of the Closing, LBHI's right to sell and assign the Current LBHI Loans to State Street will not be subject to any other party's right, title or interest or to an agreement with any other party that would be binding on State Street or the Current LBHI Loans.  Neither LBHI nor any interim holder of any Current LBHI Loan has accelerated, terminated, modified or canceled in writing any Loan Document relating to any Current LBHI Loan except as reflected on SCHEDULE D attached hereto and neither LBHI nor any such interim holder of any Current LBHI Loan has foreclosed or exercised any similar remedies upon any Collateral Property securing any Current LBHI Loan.

3.3.    <u>Authority, Approvals and Consents</u>.  Subject to receipt of the Bankruptcy Court Approval, LBHI has the power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby.  The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized and approved by LBHI, and no other corporate proceedings on the part of  LBHI are necessary to authorize and approve this Agreement and the transactions contemplated hereby.  This Agreement has been duly executed and delivered by LBHI and constitutes a valid and binding obligation of LBHI, enforceable against LBHI in accordance with its terms, except as enforceability may be limited by the principles governing the availability of equitable remedies.  The execution, delivery and performance of this Agreement by LBHI and the consummation by LBHI of the transactions contemplated hereby do not and will not:

(a)    contravene or otherwise violate any provisions of the Articles of Incorporation or By-Laws of LBHI;

(b)    conflict with, result in a breach of any provision of, constitute a default under, result in the modification, acceleration or cancellation of, or give rise to any right of termination in respect of, any contract, agreement, commitment, understanding or arrangement of any kind to which LBHI is a party or which, to LBHI's knowledge,  relates to the

Current LBHI Loans or by which, to LBHI's knowledge, any of the Current LBHI Loans are bound;

(c)    violate or conflict with any Legal Requirements applicable to the business conducted by LBHI except for such violations and conflicts as have not had and would not be reasonably expected to have a Material Adverse Effect with respect to LBHI; or

(d)    require any Governmental Approval or other Consent except for any such Governmental Approvals and Consents which have been obtained prior to Closing.

3.4.    <u>Legal Matters</u>.

(a)    To the best of LBHI's knowledge, LBHI has not received written notice of any claim, action, suit, litigation, investigation or proceeding pending or threatened against or in respect of any of the Current LBHI Loans which would affect the execution, delivery or enforceability of this Agreement.

(b)    To the best of LBHI's knowledge, LBHI has not received written notice of any non-compliance by LBHI with any Legal Requirements governing or affecting its ownership and use of the Current LBHI Loans.

3.5    <u>Loan Documents</u>.  Attached hereto as SCHEDULE D is a true, correct and complete list of all of the Loan Documents (as the same may have been amended,  restated, replaced, supplemented or otherwise modified in writing) as of the date hereof that contain and/or disclose any material obligations and/or liabilities of the borrower, any guarantor or indemnitor, or LBHI or any other lenders relating to the Current LBHI Loans and that LBHI has furnished to State Street true and correct copies thereof.  The terms of the Loan Documents for each Current LBHI Loan have not been waived in writing, modified or altered in writing, satisfied, cancelled, subordinated or rescinded in writing in any respect except as set forth on SCHEDULE D; the related Collateral Property has not been released from the lien or other encumbrance of, nor has the mortgagor or pledgor under such Current LBHI Loan been released from its obligations under, such Loan Documents, in whole or in any part, in a manner which materially interferes with the benefits of the security intended to be provided by any such Loan Documents or the use, enjoyment, value or marketability of such Collateral Property for the purposes specified in such Loan Documents.  There are no escrows, impounds, reserves or other cash collateral held in respect of any Current LBHI Loan.

3.6    <u>No Defaults</u>.  To LBHI's actual knowledge, there currently exists no default or event which, with the giving of notice or the lapse of time, or both, would constitute an event of default under the Loan Documents relating to the Current LBHI Loans that has not been disclosed in writing to State Street by LBHI.

3.7    <u>Loan and Escrow Balances</u>.  SCHEDULE E attached hereto accurately identifies (a) the outstanding principal balance and (b) the balance of any Escrow Accounts of each Current LBHI Loan as of the date hereof.  Except for the unfunded balance identified on SCHEDULE E attached hereto with respect to the Current LBHI Loan known as Storage Deluxe-

Jamaica Avenue Project Loan, each of the other Current LBHI Loans are fully funded as of the date hereof.

3.8    Claims by Borrowers and Co-Lenders.  LBHI has no actual knowledge of any claims by the borrower, any guarantor or any other obligor of any default or breach by LBHI under any of the Loan Documents relating to any of the Current LBHI Loans, it being acknowledged, however, that the borrower and the guarantors under the Storage Deluxe Jamaica Avenue Project Loan have, pursuant to a letter dated March 6, 2009 addressed to State Street, reserved their rights to assert all claims, counterclaims, causes of action, defenses, rights of set-off and other  actions of any kind against  LBHI  in its capacity as lender under such loan.  LBHI has no actual knowledge of any claim by any co-lender (other than State Street) of any default by LBHI under any of the Loan Documents relating to the Current LBHI Loans.

3.9    Truth-in-Lending.    LBHI  has complied with any applicable federal or state laws, regulations or other requirements on consumer credit, equal credit opportunity and truth-in-lending with respect to each such Current LBHI Loan.

3.10    Enforceability of Loan Documents.    To LBHI's knowledge, each of the Loan Documents evidencing or securing a Current LBHI Loan is the legal, valid and binding obligation of the mortgagor or other obligor(s) thereunder, enforceable in accordance with its respective terms, except as such enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium and similar laws affecting the enforcement of creditors' rights generally and by general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law.

3.11    No Claims.    To LBHI's actual knowledge, LBHI has not received written notice of any claim or right of rescission, setoff, counterclaim, claims of lender liability, or defense by the mortgagor or any other obligor(s) under any Current LBHI Loan or by any other Person obligated to perform under any Loan Documents for any such Current LBHI Loans.

**ARTICLE IV**

**REPRESENTATIONS AND WARRANTIES OF STATE STREET**

State Street hereby represents and warrants to LBHI as follows (wherever the phrases "State State's knowledge", "to the best of State Street's knowledge" or phrases of similar import are used in this Article IV, such phrase shall mean the actual, and not imputed or constructive, knowledge of Sophie Yang and without any recourse or liability of any kind whatsoever to such individual):

4.1.   Organization and Good Standing of State Street.  State Street (a) is a trust company duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and (b) has the corporate power and authority to own, lease and operate its property and to conduct its business as it is now being conducted.

4.2.   Authority, Approvals and Consents.  State Street has the corporate power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby. The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized and approved by all necessary action on the part of State Street and no other corporate proceedings on the part of State Street are necessary to authorize and approve this Agreement and the transactions contemplated hereby. This Agreement has been duly executed and delivered by State Street and constitutes a valid and binding obligation of State Street, enforceable against State Street in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, or similar laws affecting creditors' rights generally or by the principles governing the availability of equitable remedies.  The execution, delivery and performance of this Agreement by State Street and the consummation of the transactions contemplated hereby by State Street do not and will not:

(a)   contravene or otherwise violate any provisions of the Articles of Incorporation or By-Laws of State Street;

(b)   conflict with, result in a breach of any provision of, constitute a default under, result in the modification, acceleration or cancellation of, or give rise to any right of termination in respect of, any contract, agreement, commitment, understanding or arrangement of any kind to which State Street is a party or to which State Street is subject;

(c)   violate or conflict with any Legal Requirements applicable to State Street or any of its business or property except for such violations and conflicts as have not had and would not be reasonably expected to have a Material Adverse Effect with respect to State Street; or

(d)   require any Governmental Approval or other Consent on the part of State Street.

4.3.    <u>No Liens by State Street</u>.  During its period of ownership of the Current State Street Loans, State Street has not encumbered or otherwise subjected its interest in the Current State Street Loans to any Liens.

4.4    <u>Interests in the Current State Street Loans</u>.  Immediately prior to, at and as of the Closing, except for the assignment of the Current State Street Loans to LBHI contemplated hereunder, neither State Street nor any of its Affiliates has sold, assigned, transferred or conveyed any direct or indirect interest in any of the Current State Street Loans or entered into, or consented to, any agreement to do so.  State Street has not entered into any agreement that could impair State Street's right to sell and assign the Current State Street Loans to LBHI or could subject the Current State Street Loans to any rights, claims or interest of any other party.  Neither State Street nor any of its Affiliates has accelerated, terminated, modified in writing or canceled any Loan Document relating to any Current State Street Loan and State Street has not foreclosed or exercised any similar remedies upon any Collateral Property securing any Current State Street Loan.

4.5    <u>Legal Matters</u>.

(a)    To the best of State Street's knowledge, State Street has not received written notice of any claim, action, suit, litigation, investigation or proceeding pending or threatened against or in respect of any of the Current State Street Loans which would affect the execution, delivery or enforceability of this Agreement.

(b)    To the best of State Street's knowledge, State Street has not received written notice of any non-compliance by State Street with any Legal Requirements governing or affecting its ownership and use of the Current State Street Loans.

4.6    <u>Loan Documents</u>.  The terms of the Loan Documents for each Current State Street Loan have not been waived in writing, modified or altered in writing, satisfied, cancelled or subordinated by or with the consent of State Street or any of its Affiliates in any respect. Neither State Street nor any of its Affiliates has released in writing any of the related Collateral Property from the lien or other encumbrance of, nor has State Street or any of its Affiliates released in writing the mortgagor or pledgor under such Current State Street Loan from its obligations under, such Loan Documents, in whole or in any part, in a manner which materially interferes with the benefits of the security intended to be provided by any such Loan Documents or the use, enjoyment, value or marketability of such Collateral Property for the purposes specified in such Loan Documents.

4.7    <u>Notices of Default</u>.  Except as previously disclosed to LBHI in writing, State Street has not issued any notices of default with respect to any of the Current State Street Loans.

4.8    <u>Loan Payments</u>.  Except as set forth on SCHEDULE G attached hereto and made a part hereof, State Street has not received any payments of principal as of the Execution Date on any of the Current State Street Loans.

−12−

## ARTICLE V

## COVENANTS

5.1.    <u>Conduct of Business Prior to the Closing</u>.  From the date hereof to the earlier to occur of (a) the Closing or (b) termination of this Agreement, except as may be consented to in writing by the Transferee or as otherwise expressly provided for in this Agreement, neither the Transferor nor LCPI shall:

(i)    sell, assign, transfer or otherwise dispose of any Transaction Asset or any interest therein, whether in whole or in part;

(ii)    make any change in accounting methods, principles or practices relating to any Transaction Asset;

(iii)    amend, modify, terminate or subordinate any Loan Document;

(iv)    encumber any Transaction Asset;

(v)    waive, modify, alter, cancel, accept a discounted payoff of, or subordinate any Transaction Asset in any respect, or foreclose or otherwise proceed against the collateral for, accept a deed in lieu of foreclosure of, or compromise or settle any claims with respect to, any Transaction Asset, or rescind, and the related Collateral Property shall not be released from, the Lien or other encumbrance of, nor shall the mortgagor or pledgor be released from its obligations under, the related Mortgage or pledge agreement, in whole or in part, nor shall any instrument be executed by the Transferor that would effect any such waiver, modification, alteration, cancellation, discounted payoff, subordination, foreclosure, deed in lieu of foreclosure, compromise or settlement, rescission or release, except as required by law or by the related Loan Documents;

(vi)    refrain from taking any action which would cause any of the representations or warranties contained in Article III or IV, as applicable, to be untrue in any material respect; and

(vii)    refrain from agreeing to do any of the foregoing items (i) through (vi) of this Section 5.1.

5.2    <u>Closing Representations and Warranties</u>.  At the Closing, each of LBHI and State Street shall execute and deliver to the other a certificate reaffirming that each of such party's representations and warranties set forth in Article III or IV, as the case may be, are true and correct in all material respects as of the Closing Date (the **"Closing Certificate"**), which representations shall survive the Closing in accordance with Section 8.1 below.

5.3.    <u>Further Assurances</u>.    After the Closing, the Transferor will promptly execute, acknowledge and deliver any other assurances or documents reasonably requested by the Transferee from time to time to satisfy, or in connection with, the Transferor's obligations hereunder or to accomplish the purposes of this Agreement.    After the Closing the Transferor and the Transferee shall furnish to each other such information and assistance as may reasonably be requested in connection with the transactions consummated pursuant to this Agreement.

5.4    <u>Transfer Taxes</u>.  The Transferor shall pay or arrange for payment when due of any Transfer Taxes, if any, arising out of the transfer of Transaction Assets contemplated by this Agreement, whether imposed by law on the Transferor or the Transferee.

5.5.    <u>Estoppels</u>.  LBHI shall use commercially reasonable efforts to obtain, from each borrower under a Current LBHI Loan, an estoppel certificate substantially in the form set forth on EXHIBIT E attached hereto, which is satisfactory to State Street in all respects in its sole but reasonable discretion (the "**Loan Estoppels**").    LBHI shall use commercially reasonable efforts to obtain, from each agent and co-lender of any mortgage loan relating to the Current LBHI Loans, an estoppel certificate in form and substance satisfactory to State Street in all respects in its sole but reasonable discretion.  Notwithstanding anything to the contrary contained herein (i) in no event shall LBHI have any obligation to incur any cost (other than de minimus expenses), liability or other obligation in order to obtain any of the estoppel certificates set forth in this Section 5.5 and (ii) while LBHI shall have no liability for its failure to obtain any or all of the estoppel certificates set forth in this Section 5.5, in the event any of the Loan Estoppels are not obtained by LBHI, State Street shall have the right to terminate this Agreement pursuant to Article VI below.

5.6    <u>Notices of Material Events</u>.  Each party will give prompt notice to the other parties of any fact, to the knowledge of such party, that would, if it were true on the Closing Date, constitute a breach of such party's representations and warranties in this Agreement. Each party to this Agreement will give prompt written notice to the other parties of any material development affecting the ability of such party to consummate the transactions contemplated by this Agreement.  Except as provided in Section 8.4 hereof, no disclosure by any party to this Agreement pursuant to this Section shall be deemed to prevent or cure any misrepresentation, breach of warranty, or breach of covenant.

5.7    <u>Bankruptcy Court Approval</u>.  LBHI and LCPI shall promptly take all commercially reasonable actions and otherwise diligently pursue receipt of the Bankruptcy Court Approval by June 3, 2009.

5.8    <u>Third Party Reports</u>.    LBHI shall cause the Prior Servicer to deliver to State Street true and correct copies of all environmental reports, engineering reports, physical condition reports and surveys relating to each Current LBHI Loan in the possession or control of the Prior Servicer.

## ARTICLE VI

## CONDITIONS TO THE OBLIGATIONS OF STATE STREET

The obligations of State Street required to be performed by it at the Closing are subject to the satisfaction, at or prior to the Closing, of each of the following conditions, each of which following conditions may be waived by State Street in its sole and absolute discretion.

6.1.    <u>Representations and Warranties; Covenants</u>.  LBHI shall have delivered its Closing Certificate in accordance with Section 5.2 above and the covenants required by this Agreement to be performed by LBHI and/or LCPI at or prior to the Closing will have been duly performed in all material respects at or prior to the Closing.

6.2.    <u>Authorization and Consents</u>.  All corporate authorizations required on the part of LBHI in connection with the transactions contemplated by this Agreement will have been made or obtained.

6.3.    <u>Instruments of Transfer</u>.  LBHI shall have executed and delivered, or caused to be executed and delivered, to State Street in form and substance satisfactory to State Street in its sole but reasonable discretion, the following with respect to each Current LBHI Loan:

(a)    an original allonge endorsement to the Note evidencing each Current LBHI Loan;

(b)    the Loan Documents and Loan File with respect to each Current LBHI Loan (including, without limitation, the original note evidencing such Loan or, if such original note has been lost, a lost note affidavit and indemnity or equivalent documents);

(c)    an original Assignment of Mortgage in recordable form for each Current LBHI Loan secured by a mortgage and an original Assignment and Assumption for each Current LBHI Loan;

(d)    UCC assignments for each Current LBHI Loan, assigning to State Street LBHI's rights as secured party under all financing statements, if any, related to such Current LBHI Loan;

(e)    omnibus assignments or other instruments assigning to State Street all rights of LBHI with respect to each Current LBHI Loan (each in form reasonably acceptable to State Street and its counsel), together with all rights of LBHI, if any, arising out of or in connection with any other document, instrument, property, title policy, UCC-9 policy, collateral or the like delivered or assigned to LBHI in connection with each Current LBHI Loan and all rights of LBHI arising out of any pending claim or action for amounts due LBHI in connection with any of the Current LBHI Loans; and

(f)     if required by the applicable Loan Documents, a notice to each borrower of the transfer of the related Current LBHI Loan.

6.4     <u>Payments to State Street</u>.    LBHI and/or LCPI, as the case may be, shall have paid (a) the Net Closing Payment to State Street as adjusted by the Closing Interest Proration and (b)  payments, if any, required by Section 2.2(d) above, all in accordance with Section 2.2 above.

6.5     <u>Assumption of Current State Street Loans</u>.    LBHI shall have executed and delivered the Assignment and Assumption for each Current State Street Loan.

6.6      <u>254 Park Loan and Cabo Loan</u>.    LBHI and LCPI shall have executed and delivered the Assignment and Assumption for the 254 Park Loan and the Cabo Loan together with ancillary allonges, assignments and similar documents consistent, but taking into account the location of the Collateral Property on the Cabo Loan, with prior assignments and assumptions executed by and among LBHI, LCPI and State Street pursuant to the Repo Agreement.

6.7     <u>Approval of State Street Due Diligence</u>.    State Street shall have approved, in its sole and absolute discretion, title, environmental matters, the physical condition and all other matters relating to the Collateral Property and the Current LBHI Loans by no later than June 30, 2009 (such date, or any earlier date as may be agreed to in writing by State Street in its sole and absolute discretion, the "**Due Diligence Date**").  In the event that State Street determines in its sole and absolute discretion that any or all of the Current LBHI Loans are unsatisfactory to State Street, then State Street shall have the right to terminate this Agreement  by delivering notice to LBHI on or before 5:00 p.m. eastern time on the Due Diligence Date that it has elected to terminate this Agreement, whereupon this Agreement shall automatically terminate and be of no further force or effect.

6.8     <u>No Adverse Changes</u>.    State Street shall have determined, in its sole and absolute discretion, that as of the Closing Date (a) there has been no default under any Current LBHI  Loan or any material change to the environmental or  physical condition of, or state of title to, the Collateral Property securing the Current LBHI Loans, in any case, since the Due Diligence Date and (b) there exists no state of facts which, assuming the knowledge limitations contained in Article III hereof did not apply, would render any such representations and warranties of LBHI untrue in any material respect.

6.9     <u>Estoppels</u>.  State Street shall have received, a fully executed Loan Estoppel from each borrower under the Current LBHI Loans satisfactory to State Street in all respects in its sole and absolute discretion.  In the event that State Street has not received such estoppel certificates on or prior to the Due Diligence Date, then State Street shall have the right, as it sole and exclusive remedy for LBHI's failure to deliver the Loan Estoppels,   to terminate this Agreement by delivering notice to LBHI on or before 5:00 p.m. eastern time on the Due Diligence Date that it has elected to terminate this Agreement, whereupon this Agreement shall automatically terminate and be of no further force or effect.

6.10    <u>Jamaica Avenue Title</u>.    State Street shall have obtained    satisfactory evidence that in the case of all advances under clauses (a) and (b) of the definition of "Closing Jamaica Credit", LBHI has obtained a title endorsement to the Title Policy insuring the Storage Deluxe Jamaica Avenue Project Loan satisfactory to State Street (i) redating the policy to the date of such advance, (ii) increasing the amount of coverage by the amount of such advance and (iii) insuring the continuing priority of the mortgage subject only to those liens and encumbrances originally listed as exceptions in the Title Policy.  State Street acknowledges that it has approved the Title Policy and endorsements attached hereto as Exhibit F for the Storage Deluxe Jamaica Avenue Project Loan, provided, however, that such approval shall not limit or modify the obligations of LBHI set forth in the preceding sentence with respect to any advance not currently insured under such Title Policy.

## ARTICLE VII

## CONDITIONS TO THE OBLIGATIONS OF LBHI AND LCPI

The obligations of LBHI and LCPI to be performed by them at the Closing are subject to the satisfaction, at or prior to the Closing, of each of the following conditions, each of which following conditions may be waived by LBHI and/or LCPI in their sole and absolute discretion.

7.1.    <u>Representations and Warranties; Covenants</u>.    State Street shall have delivered its Closing Certificate in accordance with Section 5.2 above and the covenants required by this Agreement to be performed by State Street at or prior to the Closing will have been duly performed in all material respects at or prior to the Closing.

7.2.    <u>Authorization and Consents</u>.  All corporate authorizations required on the part of State Street in connection with the transactions contemplated by this Agreement will have been made or obtained.

7.3.    <u>Instruments of Transfer</u>. State Street shall have executed and delivered, or caused to be executed and delivered, to LBHI the Assignment and Assumption with respect to each Current State Street Loan.

7.4    <u>Assumption of Current LBHI Loans, 254 Park Loan and Cabo Loan</u>.  State Street shall have executed and delivered the Assignment and Assumption for each Current LBHI Loan, the 254 Park Loan and the Cabo Loan.

7.5    <u>Return of Files</u>.  State Street shall have delivered to LHBI all original documents and records obtained by State Street or its Affiliates from LBHI, LCPI or the Prior Servicer with respect to the Current State Street Loans.

7.6    <u>Excess Payments</u>.  State Street shall have paid to LBHI the payments, if any,  required by Section 2.2(c) above.

7.7.   Instruments of Transfer.  Each of the instruments of transfer to be executed and delivered to State Street in accordance with the provisions of Section 6.3 hereof shall be in form and substance satisfactory to LBHI in its sole but reasonable discretion, provided, however, the parties agree that the forms of such instruments shall, to the extent not attached as exhibits hereto, be reasonable and customary for transactions in the nature of the subject transaction.

7.8.   No Adverse Changes.  LBHI shall have determined, in its sole and absolute discretion, that as of the Closing Date (a) there has been no default under any Current State Street Loan or any material change to the environmental or  physical condition of, or state of title to, the Collateral Property securing the Current State Street Loans, in any case, since the Execution Date, and (b) there exists no state of facts which, assuming the knowledge limitations contained in Article IV hereof did not apply, would render any such representations and warranties of State Street untrue in any material respect.

## ARTICLE VIII

## SURVIVAL AND INDEMNIFICATION

8.1.   Survival of Representations and Warranties.   The representations and warranties of LBHI and State Street set forth in Sections 3.1, 3.2, 3.3, 3.4, 3.7, 4.1, 4.2 and 4.5 hereof shall survive for a period of two (2) years, and all other representations and warranties of LBHI and State Street set forth in Article III and Article IV hereof, respectively, shall survive the Closing for a period of one (1) year.  For purposes of the foregoing, so long as a written claim identifying with reasonable specificity the nature of the alleged breach is delivered to the alleged breaching party within the applicable timeframe set forth above, such claim shall be considered timely made and may be enforced subsequent to the expiration of the applicable survival period.

8.2.   LBHI Indemnification.

(a)     If the Closing occurs, LBHI hereby indemnifies State Street (which for purposes of this Section 8.2, shall include its officers, directors, advisors, attorneys and Affiliates)  against and in respect of any and all Losses that are paid, suffered or incurred by State Street as a result of the breach of any representation or warranty made by LBHI in Article III of this Agreement.

(b)     Any claim by State Street for indemnification under this Section 8.2 must be made in writing.

(c)     It is understood and agreed that the obligation of LBHI set forth in Section 8.2(a) to indemnify State Street constitutes the sole remedy of State Street under this Agreement if the Closing occurs with respect to a breach of any representation and warranty by LBHI under Article III of this Agreement.

8.3.   State Street Indemnification.

(a)     If the Closing occurs, State Street hereby indemnifies LBHI (which for purposes of this Section 8.3, shall include its officers, directors, advisors, attorneys and

Affiliates) against and in respect of any and all Losses that are paid, suffered or incurred by LBHI as a result of the breach of any representation or warranty made by State Street in Article IV of this Agreement.

(b)    Any claim by LBHI for indemnification under this Section 8.3 must be made in writing.

(c)    It is understood and agreed that the obligation of State Street set forth in Section 8.3(a) to indemnify LBHI constitutes the sole remedy of LBHI under this Agreement if the Closing occurs with respect to a breach of any representation and warranty by State Street under Article IV of this Agreement.

8.4.    <u>Limitation on Action for Breach of Representations and Warranties</u>. If the Closing occurs, the Transferee hereby expressly waives, relinquishes and releases any right or remedy available to it at law, in equity or under this Agreement to make a claim against the Transferor for damages that the Transferee may incur, or to rescind this Agreement, to the extent that a representation and warranty by Transferor (other than the representations or warranties set forth in Sections 3.1, 3.2, 3.3, 3.4, 3.7, 4.1, 4.2 and 4.5) is untrue, inaccurate or incorrect and to the extent that the Transferee had actual knowledge that such representation or warranty was untrue, inaccurate or incorrect as of the Execution Date. LBHI acknowledges and agrees that for purposes of this Section 8.4, the fact that any matter is disclosed in the servicing files shall not, in and of itself, be deemed evidence or proof that State Street has any actual knowledge of the contents of the servicing files in respect of the Current LBHI Loans.

8.5    <u>Indemnification for Breach of Intercreditor Agreements</u>. With respect to any Current State Street Loan that includes an intercreditor agreement or co-lending agreement which requires, as a condition to a transfer of the applicable Current State Street Loan, that the transferee remake certain representations and warranties under such intercreditor agreement or co-lending agreement, if the Closing occurs, LBHI hereby indemnifies and holds harmless State Street (which for purposes of this Section 8.5, shall include its officers, directors, advisors, attorneys and Affiliates) against and in respect of any and all any claims, losses, damages, reasonable costs and reasonable expenses (including, without limitation, reasonable fees and disbursements of counsel, witness fees and court costs) incurred by State Street as a result of LBHI's failure to (i) execute and deliver a certificate remaking such representations and warranties in favor of the applicable lenders under such intercreditor agreement or co-lending agreement if and to the extent required under the terms of such intercreditor or co-lending agreement (it being acknowledged, but without affecting LBHI's obligations under this Section 8.5, that LBHI has asserted that such certificate is not required), or (ii) deliver any other such documents, instruments or other evidence as may be required under such intercreditor agreement or co-lending agreement to establish that LBHI satisfies any requirements of being a "qualified transferee" or terms of similar import (it being acknowledged, but without affecting LBHI's obligations under this Section 8.5, that LBHI asserts that such requirement does not apply). The obligations under this Section 8.5 shall survive the Closing.

## ARTICLE IX

## MISCELLANEOUS

9.1.    Expenses.  Except as expressly otherwise provided in Sections 8.2 and 8.3 hereof, the fees and expenses incurred by each party hereto (including the fees of any lawyers, accountants, investment bankers or others engaged by such party) in connection with this Agreement and the transactions contemplated hereby, whether or not the transactions contemplated hereby are consummated, will be paid by such party.

9.2.    Headings.  The Section headings herein are for convenience of reference only, do not constitute part of this Agreement and will not be deemed to limit or otherwise affect any of the provisions hereof.  References to Sections, unless otherwise indicated, are references to Sections of this Agreement.

9.3.    Notices.  All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given:  (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next business day, (c) three (3) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) business day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt.   All communications shall be sent:

To LCPI or LBHI at:

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 46th Floor
New York, New York 10020
Attn:   Joelle Halperin
Telephone: (212) 526 -0127
Facsimile: (646) 834-0874

With a copy to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Attn:   W. Michael Bond, Esq.
Telephone: (212) 310-8035
Facsimile: (212) 310-8007

To State Street at:

State Street Bank and Trust Company
1 Lincoln Street, SFC9
Boston, MA 02111
Attention: Q. Sophie Yang, Senior Portfolio Manager
Telephone: (617) 664-2896

Facsimile:  (617) 664-3555

With copies to:

State Street Bank and Trust Company
2 Avenue de Lafayette
Boston, MA 02111
Attention: Tiziana E.A. Polizio, Senior Vice President/ Senior Managing Counsel
Telephone: (617) 664-6002
Facsimile:  (617)  664-9525

and

Bingham McCutchen LLP
2020 K Street, NW
Washington, D.C. 20006
Attn:   Kenneth Lore, Esq.
Telephone: (202) 373-6281
Facsimile: (202) 373-6438

or to such other address as may have been furnished by a party to each of the other parties by notice given in accordance with the requirements set forth above.

9.4.    Assignment.  This Agreement and all provisions hereof will be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns; *provided, however*, that neither this Agreement nor any right, interest, or obligation hereunder may  be assigned by any party hereto without the prior written consent of the other parties.

9.5.    Entire Agreement.  This Agreement shall be of no force or effect until executed and delivered by each of the parties hereto and then only upon receipt of Bankruptcy Court Approval.   Subject to Section 9.6 below, this Agreement and the other documents contemplated hereby (which documents are not a part of or incorporated by reference into this Agreement) embody the entire agreement and understanding of the parties with respect to the transactions contemplated hereby and supersedes all prior written or oral commitments, arrangements or understandings with respect thereto.

9.6.    Repo Agreement. This Agreement does not waive, alter, modify, or otherwise amend the Repo Agreement, or any of the other documents or instruments executed and/or delivered by State Street in connection with the Repo Agreement (collectively, with the Repo Agreement, the "**Repo Documents**").  The Repo Documents are and remain in full force and effect, unmodified, enforceable in accordance with their terms and shall remain in full force and effect unless and until amended or modified by a written agreement (and only to the extent provided therein) executed hereafter in accordance with the provisions of the Repo Documents. In addition, each of State Street and LCPI hereby otherwise reserves all of its respective rights, remedies, claims and defenses, available at law or in equity, and under, related to, or in connection with, the Repo Documents and the Adversary Proceeding.

9.7    Amendment; Waiver.

(a)    This Agreement may only be amended or modified in writing signed by the party against whom enforcement of any such amendment or modification is sought.

(b)    Any party hereto may, by an instrument in writing, waive compliance with any term or provision of this Agreement on the part of such other party hereto. The waiver by any party hereto of a breach of any term or provision of this Agreement will not be construed as a waiver of any subsequent breach.

9.8.    Counterparts.    This Agreement may be executed in two or more counterparts (including via facsimile or other electronic means), all of which will be considered one and the same agreement and each of which will be deemed an original.

9.9.    Governing Law.  This Agreement will be governed by the laws of the State of New York (regardless of the laws that might be applicable under principles of conflicts of law) as to all matters, including but not limited to matters of validity, construction, effect and performance.

9.10.    Severability.  If any one or more of the provisions of this Agreement is held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remaining provisions of this Agreement will not be affected thereby, and the parties hereto  will use their reasonable efforts to substitute one or more valid, legal and enforceable provisions which insofar as practicable implement the purposes and intent hereof.  To the extent permitted by applicable law, each party waives any provision of law which renders any provision of this Agreement invalid, illegal or unenforceable in any respect.

9.11.    Third Person Beneficiaries.  This Agreement is not intended to confer upon any other Person any rights or remedies hereunder, except as provided herein with respect to successors and, if approved by the other party pursuant to Section 9.4 above, such permitted assigns.

9.12.    No Strict Construction.  The parties hereto have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties hereto, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.

9.13.    Survival.  Subject to the limitations set forth in Section 8.1 above, the provisions of this Agreement shall survive the Closing.

9.14    Termination. In the event that this Agreement is terminated in accordance with its terms by LBHI or State Street, then neither this Agreement, nor any motion or other pleading filed in the Bankruptcy Case or the Adversary Proceeding with respect to the approval of this Agreement or the transactions contemplated hereby, shall have any res judicata or collateral

estoppel effect or be of any force or effect, and each of the parties' interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed.

9.15    Jurisdiction.

(1)    Commencing on September 15, 2008, the LBHI and certain of its affiliates filed voluntary petitions for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (Manhattan Division) (the "**Bankruptcy Court**") which are being jointly administered under Case No. 08-13555 (collectively, the "**Bankruptcy Case**"). The LBHI is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The parties hereto agree that no action relating to the interpretation and enforcement of this Agreement may be brought in a court that is not located within the State of New York. To the maximum extent permissible by law, the parties hereto expressly consent and submit to the exclusive jurisdiction of the Bankruptcy Court over such actions. Each of the parties hereto agrees that a final judgment in any such action, including all appeals, shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing in this Agreement shall affect any right that the LBHI, LCPI, State Street or any other party may otherwise have to bring any action or proceeding to enforce any Loan or any of the documents, instruments or agreements evidencing or securing any Loan or otherwise relating to any Loan against any obligor or its respective properties in the courts of any jurisdiction.

(2)    Each party to this Agreement hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (A) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or any document executed pursuant hereto in any court referred to in paragraph (1) of this subsection; and (B) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(3)    Each party to this Agreement irrevocably consents to service of process in the manner provided for notices in Section 9.3 hereof. Nothing in this Agreement will affect the right of any party to this Agreement to serve process in any other manner permitted by law.

9.16    **WAIVER OF JURY TRIAL. EACH OF THE PARTIES HERETO HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY OF THE DOCUMENTS, INSTRUMENTS OR AGREEMENTS EXECUTED IN CONNECTION HEREWITH, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR ANY OF THE DOCUMENTS, INSTRUMENTS OR AGREEMENTS EXECUTED IN CONNECTION HEREWITH OR IN ANY WAY RELATING TO THE EXCHANGE OF LOANS**

**CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT OR ANY OF THE DOCUMENTS, INSTRUMENTS OR AGREEMENTS EXECUTED IN CONNECTION HEREWITH AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT OR ANY OF THE DOCUMENTS, INSTRUMENTS OR AGREEMENTS EXECUTED IN CONNECTION HEREWITH WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES HERETO ARE HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER. THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.**

9.17    <u>Bankruptcy Court Approval</u>.  Notwithstanding anything to the contrary contained herein, the effectiveness of this Agreement and the transactions contemplated hereby shall be subject to the Bankruptcy Court Approval.

9.18    <u>Approvals by Parties</u>.  Unless otherwise provided herein to the contrary, any matter to be approved by any party hereto shall be subject to the approval of such party in its sole and absolute discretion.

9.19.    <u>Loan Files</u>.  Notwithstanding anything to the contrary contained in this Agreement, (i) for the purpose of ascertaining the existence of Loan Files (or portions thereof) in the actual possession of LBHI or LCPI, LBHI shall only be obligated to make commercially reasonable inquiry of those current employees of the commercial real estate group of LBHI that LBHI reasonably determines would be likely to possess such Loan Files or portions thereof, and (ii) on the Closing Date, LBHI and LCPI shall only be obligated to deliver to State Street those Loan Files in the actual possession of LBHI or LCPI which were found as the result of the commercially reasonable inquiry set forth in clause (i) above.  From time to time, upon written request of State Street (setting forth with reasonable specificity documents which would constitute Loan Files that State Street has reason to believe were not included in the delivery of Loan Files at Closing), LBHI shall again make such commercially reasonable inquiries set forth in clause (i) above, and shall promptly deliver to State Street any such requested additional Loan Files discovered by LBHI through such process.  Provided that LBHI uses commercially reasonable efforts to locate any requested additional Loan Files as provided in the preceding sentence and promptly delivers any such later discovered Loan Files to State Street as provided herein, LBHI shall have no obligation or liability for LBHI's failure to discover and deliver any such missing documents held by LBHI to State Street.  Nothing herein shall diminish LBHI's obligation to direct Prior Servicer from time to time to comply with all State Street requests for providing Loan Files or portions thereof in Prior Servicer's possession or which Prior Servicer has access to.  Notwithstanding anything to the contrary contained in this Agreement, while electronic mail correspondence shall be considered a writing for purposes of this Agreement, electronic mail correspondence shall not be considered a Loan File or be subject to search or delivery by LBHI as provided in this Section 9.19.

**[SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, the parties hereto have caused this Exchange Agreement to be duly executed as of the day and year first above written.

STATE STREET BANK AND TRUST COMPANY

By:_____
   Name:
   Title:

LEHMAN COMMERCIAL PAPER INC., a New York corporation, as debtor and debtor in possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:_____
   Name:
   Title:

LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation, as debtor and debtor in possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:_____
   Name:
   Title:

## LIST OF SCHEDULES AND EXHIBITS

Schedule A -  Current State Street Loans

Schedule B -  Current LBHI Loans

Schedule C -  List of Loan Documents for Current State Street Loans

Schedule D - List of Loan Documents for Current LBHI Loans

Schedule E -  Balances, Escrow Balances and Unfunded Amounts for Current LBHI Loans

Schedule F – LBHI Knowledgeable Parties

Schedule G – Payments on Current State Street Loans

Exhibit A -    Form of Assignment and Assumption for Current LBHI Loans

Exhibit B -    Form of Assignment and Assumption for Current State Street Loans

Exhibit C -    Form of Assignment and Assumption for 254 Park Loans

Exhibit D -    Form of Assignment and Assumption for Cabo Loan

Exhibit E -    Form of Loan Estoppel

Exhibit F -    Jamaica Avenue Title Policy

**SCHEDULE A**

**List of Current State Street Loans**

Loan:

1.      Carillon Mezzanine Loan

2.      237 Park Avenue Mezzanine Loan

3.      Project Easy Living Senior
        Mezzanine A Loan

4.       Project Easy Living Junior
        Mezzanine B Loan

**SCHEDULE B**

**List of Current LBHI Loans**

Loan:

1.      Storage Deluxe Jamaica Ave Project Loan

2.      Storage Deluxe 481 Grand Project Loan

3.      Seaport Center Senior B Loan

## SCHEDULE C

### List of Loan Documents for Current State Street Loans

**Carillon**

1. Amended and Restated Loan Agreement, dated as of October 5, 2007, among Carillon South Mezz LLC, Carillon North Mezz LLC, Carillon Miami Beach Holding LLC and Lehman Brothers Holdings, Inc. ("LBHI").

2. Amended and Restated Note Consolidation, Restatement and Extension Agreement, dated as of October 5, 2007, among Carillon South Mezz LLC, Carillon North Mezz LLC, Carillon Miami Beach Holding LLC and LBHI in the amount of $81,613,641.

3. First Modification to Amended and Restated Note Consolidation, Restatement and Extension Agreement, dated as of April 30, 2008, among Carillon South Mezz LLC, Carillon North Mezz LLC, Carillon Miami Beach Holding LLC and LBHI, increasing the loan amount to $103,746,224.

4. Second Modification to Amended and Restated Note Consolidation, Restatement and Extension Agreement, dated as of July 14, 2008, among Carillon South Mezz LLC, Carillon North Mezz LLC, Carillon Miami Beach Holding LLC and LBHI, further increasing the loan amount to $106,746,224.

5. General Modification, Reaffirmation and Ratification of Loan Documents, dated as of April 30, 2008, among Carillon South Mezz LLC, Carillon North Mezz LLC, Carillon Miami Beach Holding LLC and LBHI, and certain other parties thereto.

6. Second General Modification, Reaffirmation and Ratification of Loan Documents, dated as of July 14, 2008, among Carillon South Mezz LLC, Carillon North Mezz LLC, Carillon Miami Beach Holding LLC and LBHI, and certain other parties thereto.

7. Intercreditor Agreement, dated as of October 5, 2007, between LBHI, as Senior Lender, and LBHI, as Mezzanine Lender, re: Carillon South Residential Tower.

8. Intercreditor Agreement, dated as of October 5, 2007, between LBHI, as Senior Lender, and LBHI, as Mezzanine Lender, re: Carillon North Residential Tower.

9. First Amendment to Intercreditor Agreement (South Carillon), dated as of April 30, 2008, between LB Carillon Construction LLC, as Senior Lender, and LBHI, as Mezzanine Lender, re: Carillon South Residential Tower.

10. First Amendment to Intercreditor Agreement (North Carillon), dated as of April 30, 2008, between LB Carillon Construction LLC, as Senior Lender, and LBHI, as Mezzanine Lender, re: Carillon North Residential Tower.

**237 Park Ave.**

1. Amended and Restated Bridge Mezzanine Loan Agreement, dated as of July 10, 2007, between 237 Park Second Junior Mezz LLC and LBHI (individually and as administrative agent).

2. Promissory Note A (Bridge Mezzanine Loan), dated May 15, 2007, in the amount of $224,943,631.98 made by 237 Park Second Junior Mezz LLC in favor of LBHI.

3. Pledge and Security Agreement (Bridge Mezzanine Loan), dated as of May 15, 2007, made by 237 Park Second Junior Mezz LLC in favor of LBHI and Acknowledgement and Consent with respect thereto made by 237 Park Junior Mezz LLC.

4. Environmental Indemnity Agreement, dated as of May 15, 2007, made by 237 Park Second Junior Mezz LLC and Broadway Partners Parallel Fund B III,, L.P., Broadway Partners Parallel Fund P III, L.P. and Broadway Partners Real Estate Fund III, L.P. in favor of LBHI.

5. Guaranty of Recourse Obligations of Borrower (Bridge Mezzanine Loan), dated as of May 15, 2007, made by Broadway Partners Parallel Fund B III, L.P., Broadway Partners Parallel Fund P III, L.P. and Broadway Partners Real Estate Fund III, L.P. to LBHI.

6. Subordination of Management Agreement, dated as of May 15, 2007, made by 237 Park Second Junior Mezz LLC and 237 Park Avenue Owner, L.P. to LBHI and acknowledged and consented to by Broadway Real Estate Services, LLC.

7. Assignment of Title Insurance Proceeds (Bridge Mezzanine Loan), dated as of May 15, 2007, made by 237 Park Second Junior Mezz LLC and 237 Park Avenue Owner, L.P. to and for the benefit of LBHI.

8. Agreement, dated as of March 19, 2008, by and among 237 Park Second Junior Mezz LLC, 237 Park Third Junior Mezz LLC and LBHI.

9. Intercreditor Agreement, dated as of July 10, 2007, by and among LBHI, as the Senior Lender (as defined in the Intercreditor Agreement), LBHI, as the First Mezzanine Lender (as defined in the Intercreditor Agreement), LBHI, as the Second Mezzanine Lender (as defined in the Intercreditor Agreement), LBHI, as the lender under the Loan and the Third Mezzanine Lender (as defined in the Intercreditor Agreement) and LBHI, as the Fourth Mezzanine Lender (as defined in the Intercreditor Agreement).

**Project Easy Living - Mezzanine A**

1. Mezzanine A Loan Agreement, dated as of October 5, 2007, between Tishman Speyer Archstone-Smith Sierra Del Oro Mezzanine I, L.L.C., Tishman Speyer Archstone-Smith Cedar River Mezzanine I, L.L.C., Tishman Speyer Archstone-Smith DULLES Mezzanine I, L.L.C., Tishman Speyer Archstone-Smith Russett I Mezzanine I, L.L.C., Tishman Speyer Archstone-Smith Russett II Mezzanine I, L.L.C., and Tishman Speyer Archstone-Smith Sunset Mezzanine I, L.L.C. (collectively, "Easy Living A Borrower") and Lehman Brothers Holdings Inc., Bank of America, N.A. ("BofA") and Barclays Capital Real Estate Finance, Inc. ("Barclays", and together with LBHI and BofA, the "Easy Living Lenders").

2. Mezzanine A Promissory Note, dated October 5, 2007, in the amount of $5,150,000 made by Easy Living A Borrower in favor of the Easy Living Lenders.

3. Mezzanine A Pledge and Security Agreement, dated as of October 5, 2007, made by Easy Living A Borrower in favor of the Easy Living Lenders.

4. Acknowledgment and Consent, dated October 5, 2007, of Tishman Speyer Archstone-Smith Sierra Del Oro, L.L.C., Tishman Speyer Archstone-Smith Cedar River, L.L.C., ASN Dulles LLC, ASN Meadows at Russett I LLC, ASN Meadows at Russett II LLC, and ASN Sunset LLC (collectively, the "A Issuers").

5. Instruction to Register Pledge, dated October 5, 2007, to A Issuers from the Easy Living Lenders and Easy Living A Borrower.

6. Confirmation Statement and Instruction Agreement, dated October 5, 2007, from A Issuers and Easy Living A Borrower to the Easy Living Lenders.

7. Mezzanine A Guaranty of Recourse Obligations, dated as of October 5, 2007, made by Archstone-Smith Operating Trust, Tishman Speyer Archstone-Smith Multifamily Guarantor, L.P., Tishman Speyer Archstone-Smith Multifamily Parallel Guarantor, L.L.C., Tishman Speyer Archstone-Smith Multifamily Parallel Guarantor I, L.L.C., and Tishman Speyer Archstone-Smith Multifamily Parallel Guarantor II, L.L.C. in favor of the Easy Living Lenders.

8. Mezzanine A Environmental Indemnity Agreement, dated as of October 5, 2007, made by Easy Living A Borrower in favor of the Easy Living Lenders.

9. Mezzanine A Assignment of Interest Rate Hedging Agreement and Security Agreement, dated as of October 5, 2007, made by Easy Living A Borrower in favor of the Easy Living Lenders. *[MISSING COPY]*.

10. Mezzanine Co-Lender Agreement, dated as of October 5, 2007, among the Easy Living Lenders.

11. Intercreditor Agreement, dated as of October 5, 2007, among LBHI and Barclays, as senior lenders, the Easy Living Lenders, and LBHI, BofA and Barclays, as Mezzanine B lenders, and Lehman Commercial Paper Inc., as Administrative Agent.

12. Supplemental Intercreditor Agreement, dated as of October 5, 2007, among the Easy Living Lenders, LBHI, BofA and Barclays, as senior lenders, the Easy Living Lenders, and LBHI, BofA and Barclays, as Mezzanine B lenders.

## Project Easy Living - Mezzanine B

1. Mezzanine B Loan Agreement, dated as of October 5, 2007, between Tishman Speyer Archstone-Smith Sierra Del Oro Mezzanine II, L.L.C., Tishman Speyer Archstone-Smith Cedar River Mezzanine II, L.L.C., Tishman Speyer Archstone-Smith Dulles Mezzanine II, L.L.C., Tishman Speyer Archstone-Smith Russett I Mezzanine II, L.L.C., Tishman Speyer Archstone-Smith Russett II Mezzanine II, L.L.C., and Tishman Speyer Archstone-Smith Sunset Mezzanine II, L.L.C. (collectively, "Easy Living B Borrower") and Lehman Brothers Holdings Inc., Bank of America, N.A. and Barclays Capital Real Estate Finance, Inc.

2. Mezzanine B Promissory Note, dated October 5, 2007, in the amount of $14,685,933.13 made by Easy Living B Borrower in favor of the Easy Living Lenders.

3. Mezzanine B Pledge and Security Agreement, dated as of October 5, 2007, made by Easy Living B Borrower in favor of the Easy Living Lenders.

4. Acknowledgment and Consent, dated October 5, 2007, of Tishman Speyer Archstone-Smith Sierra Del Oro Mezzanine I, L.L.C., Tishman Speyer Archstone-Smith Cedar River Mezzanine I, L.L.C., Tishman Speyer Archstone-Smith Dulles Mezzanine I LLC, Tishman Speyer Archstone-Smith Meadows at Russett I LLC, Tishman Speyer Archstone-Smith Meadows at Russett II Mezzanine I LLC, and Tishman Speyer Archstone-Smith Sunset Mezzanine I LLC (collectively, the "B Issuers").

5. Instruction to Register Pledge, dated October 5, 2007, to B Issuers from the Easy Living Lenders and Easy Living B Borrower.

6. Confirmation Statement and Instruction Agreement, dated October 5, 2007, from B Issuers and Easy Living B Borrower to the Easy Living Lenders.

7. Mezzanine B Guaranty of Recourse Obligations, dated as of October 5, 2007, made by Archstone-Smith Operating Trust, Tishman Speyer Archstone-Smith Multifamily Guarantor, L.P., Tishman Speyer Archstone-Smith Multifamily Parallel Guarantor, L.L.C., Tishman Speyer Archstone-Smith Multifamily Parallel Guarantor I, L.L.C., and Tishman Speyer Archstone-Smith Multifamily Parallel Guarantor II, L.L.C. in favor of the Easy Living Lenders.

8. Mezzanine B Environmental Indemnity Agreement, dated as of October 5, 2007, made by Easy Living B Borrower in favor of the Easy Living Lenders.

9. Mezzanine B Assignment of Interest Rate Hedging Agreement and Security Agreement, dated as of October 5, 2007, made by Easy Living B Borrower in favor of the Easy Living Lenders.  *[MISSING COPY]*.

10. Mezzanine Co-Lender Agreement, dated as of October 5, 2007, among the Easy Living Lenders.

11. Intercreditor Agreement, dated as of October 5, 2007, among LBHI, BofA and Barclays, as senior lenders, the Lenders, and LBHI, BofA and Barclays, as Mezzanine A lenders, and Lehman Commercial Paper Inc., as Administrative Agent.

12.    Supplemental Intercreditor Agreement, dated as of October 5, 2007, among the Easy Living Lenders, LBHI, BofA and Barclays, as senior lenders, the Lenders, and LBHI, BofA and Barclays, as Mezzanine A lenders.

**SCHEDULE D**

**List of Loan Documents for Current LBHI Loans**

**STORAGE DELUXE-JAMAICA AVENUE PROJECT LOAN**

1.      Project Loan Agreement dated June 22, 2007 between 9826 Jamaica Ave LLC as borrower (the "Borrower") and Lehman Brothers Holdings Inc. as lender ("LBHI").

2.      Project Loan Note dated June 22, 2007 in the amount of $812,330 made by Borrower to LBHI.

3.      Project Loan Mortgage, Assignment of Leases and Rents and Security Agreement dated June 22, 2007 in the amount of $812,330 made by Borrower to LBHI recorded July 5, 2007 in the Office of the New York City Register as Document 2007000343734.

4.      Project Loan Guaranty of Recourse Obligations dated as of June 22, 2007 made by Steven J. Guttman, Evan M. Novenstein, Guttman Investments, LP and The Steven J. Guttman 2003 Investments Trust in favor of LBHI.

5.      Pledge and Security Agreement dated as of June 22, 2007 made by 9826 Jamaica Investors LLC ("Pledgor") to LBHI, as lender under the Project Loan, the Acquisition Loan described therein (the "Acquisition Loan") and the Building Loan described therein (the "Building Loan") and Acknowledgement and Consent with respect thereto dated June 22, 2007 made by Borrower acknowledged and consented to by Borrower.

6.      Consent, Subordination and Recognition Agreement (Management Agreement) dated as of June 27, 2007 by and among Borrower, LBHI, as lender under the Acquisition Loan, the Project Loan and the Building Loan, and Storage Deluxe Management Company LLC.

7.      Undated Assignment of Interest Limited Liability Company Interest Certificate executed by Pledgor in blank.

8.      Collateral Assignment of Interest Rate Protection Agreement dated as of June 21, 2007 made by Borrower in favor of LBHI, as lender under the Acquisition Loan, the Project Loan and the Building Loan, and acknowledged by SMBC Derivative Products Limited.

9.      Assignment of Construction Agreements, Plans and Property Agreements dated June 22, 2007 made by Borrower to LBHI, as lender under the Acquisition Loan, the Project Loan and the Building Loan.

10.      Policy of Title Insurance No. M-8902-029657, dated July 5, 2007, and issued by Stewart Title Insurance Company to LBHI.

11.      UCC Financing Statement naming Pledgor as debtor and LBHI as secured party filed with the New York Secretary State on April 1, 2008 as File Number 200804010233873.

12.   UCC Financing Statement naming Borrower as debtor and LBHI as secured party filed with the New York Secretary State on April 1, 2008 as File Number 200804010233835.

## STORAGE DELUXE-481 GRAND PROJECT LOAN

1.      Project Loan Agreement dated August 24, 2005 between 481 Grand LLC as borrower (the "Borrower") and Lehman Brothers Holdings Inc. as lender ("LBHI").

2.      Project Loan Note dated August 24, 2005 in the amount of $164,718 made by Borrower to LBHI.

3.      Project Loan Mortgage, Assignment of Leases and Rents and Security Agreement dated August 24, 2005 in the amount of $164,718 made by Borrower to LBHI recorded September 8, 2005 in the Office of the New York City Register as Document 2005000503182.

4.      Project Loan Guaranty of Recourse Obligations dated July 24, 2005 made by Steven J. Guttman, Evan M. Novenstein, Guttman Investments, LP and The Steven J. Guttman 2003 Investments Trust (collectively, the "Guarantors") in favor of LBHI.

5.      Environmental Indemnity Agreement dated as of August 24, 2005 made by the Guarantors and Borrower in favor of LBHI.

6.      Pledge and Security Agreement dated as of July 12, 2005 made by 481 Grand Investors LLC ("Pledgor") to LBHI, as the lender under the Project Loan, the Building Loan described therein (the "Building Loan") and the Acquisition Loan described therein (the "Acquisition Loan") and Acknowledgement and Consent with respect thereto dated July 12, 2005 made by Borrower.

7.      Consent, Subordination and Recognition Agreement (Management Agreement) dated as of July 12, 2005 by and among Borrower, LBHI, as the lender under the Building Loan, the Project Loan and the Acquisition Loan, and Storage Deluxe Management Company LLC.

8.      Undated Assignment of Interest Limited Liability Company Interest Certificate executed by 481 Grand Investors LLC in blank.

9.      Collateral Assignment of Interest Rate Protection Agreement dated as of July 12, 2005 made by Borrower in favor of LBHI, as the lender under the Building Loan, the Project Loan and the Acquisition Loan, and acknowledged by SMBC Derivative Products Limited.

10.      Assignment of Construction Agreements, Plans and Property Agreements dated July 12, 2005 made by Borrower to LBHI, as the lender under the Building Loan, the Project Loan and the Acquisition Loan.

11.      Assignment of Contacts, Licenses, Permits, Agreements, Warranties and Approvals dated as of July 12, 2005 made by Borrower to LBHI, as the lender under the Building Loan, the Project Loan and the Acquisition Loan.

12.     Letter Agreement dated September 20, 2005 between Borrower and LBHI, as the lender under the Building Loan, the Project Loan and the Acquisition Loan.

13.     Policy of Title Insurance No. B 3008-70823 C, dated August 24, 2005, and issued by First American Title Insurance Company of New York to LBHI.

14.     [Add Financing Statements]

## SCHEDULE E

### Outstanding Principal Balances, Escrow Balances
### and Unfunded Balances of LBHI Loans

| Loan | Balance | Escrow Balance | Unfunded |
|------|---------|----------------|----------|
| 1.  Storage Deluxe Jamaica Ave. Project | $393,009.00 | | $419,321.00 |
| 2.  Storage Deluxe 481 Grand Project | $164,718.00 | | $0 |
| 3.  Seaport Center Senior B Loan | $6,429,841.00 | | $0 |