WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Wasiman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                          :
**In re**                                 :    **Chapter 11 Case No.**
                                          :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,  :    **08-13555 (JMP)**
                                          :
                    **Debtors.**          :    **(Jointly Administered)**
                                          :
                                          :
----------------------------------------------------------------x

**OMNIBUS CERTIFICATE OF NO OBJECTION**
**PURSUANT TO 28 U.S.C. § 1746 REGARDING CERTAIN**
**MOTIONS OF DEBTORS  SCHEDULED FOR HEARING ON JUNE 3, 2009**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Pursuant to 28 U.S.C. § 1746, and in accordance with this Court's case

management procedures set forth in the Amended Order Pursuant to Section 105(a) of the

Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and

Case Management Procedures [Docket No. 2837] (the "Amended Case Management Order"),

the undersigned hereby certifies as follows:

        1.        Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in

the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors"), filed the following motions (collectively the "Motions") with this Court:

- Debtors' Motion Authorizing Lehman Brothers Holdings Inc. to Enter into Mortgage Loan Purchase Agreement (the "Loan Purchase Motion") **[Docket No. 3570]**

- Debtors' Motion for Authorization and Approval of Loan Pay-Off Agreements (the "Loan Pay-Off Motion") **[Docket No. 3571]**

- Motion of Debtors for Authorization to Pay Certain Prepetition Franchise Taxes (the "Franchise Tax Motion") **[Docket No. 3521]**

2.     In accordance with the Amended Case Management Order, May 28, 2009 at 4:00 p.m. (Prevailing Eastern Time) was established as the deadline for parties to object or file a response to the Loan Purchase Motion and the Loan Pay-Off Motion, and May 29, 2009 at 4:00 p.m. (Prevailing Eastern Time) was established as the deadline for parties to object or file a response to the Franchise Tax Motion (the "Objection Deadlines").  The Amended Case Management Order provides that pleadings may be granted without a hearing, provided that no objections have been filed prior to the Objection Deadline and the attorney for the entity who filed the pleading complies with the relevant procedural and notice requirements.

3.     The Objection Deadlines have now passed and, to the best of my knowledge, no objections or other responsive pleadings to the Motions have been filed with the Court on the dockets of the above-referenced cases in accordance with the procedures set forth in Amended Case Management Order, nor has any objection or other responsive pleading with respect to the Motions been served on Debtors' counsel.

4.       Accordingly, for the reasons set forth in the Motions, the Debtors respectfully request that the proposed Orders annexed hereto as Exhibit A, Exhibit B, and Exhibit C, and unmodified since the filing of the Motions, be entered in accordance with the procedures described in the Amended Case Management Order.

I declare that the foregoing is true and correct.

Dated:  June 1, 2009
           New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# EXHIBIT A

**(Proposed Order – Docket No. 3570)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                      :

In re                                      :      **Chapter 11 Case No.**
                                                      :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :      **08-13555 (JMP)**
                                                      :

                  **Debtors.**          :      **(Jointly Administered)**
                                                      :

                                                      :
-------------------------------------------------------------------x

**ORDER PURSUANT TO**
**SECTIONS 105(a) AND 363(b)(1) OF THE BANKRUPTCY**
**CODE AUTHORIZING LEHMAN BROTHERS HOLDINGS INC.**
**TO ENTER INTO MORTGAGE LOAN PURCHASE AGREEMENT**

Upon the motion, dated May 14, 2009 (the "Motion"),[1] of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors in possession (collectively, the "Debtors" and, together with their non-debtor

affiliates, "Lehman"), pursuant to sections 105 and 363 of title 11 of the United States Code (the

"Bankruptcy Code") for authorization for LBHI to enter into a final agreement substantially

similar to that certain Mortgage Loan Purchase Agreement by and between LBHI and Americor

Mortgage, Inc. ("Americor") annexed hereto as Exhibit A (the "Purchase Agreement"); and the

Court having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges

for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10,

1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being

a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided in accordance with the procedures set forth in the amended order entered February 13,

2009 governing case management and administrative procedures [Docket No. 2837] to (i) the

United States Trustee for the Southern District of New York; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the

Internal Revenue Service; (v) the United States Attorney for the Southern District of New York;

(vi) counsel to Americor; and (vii) all parties who have requested notice in these chapter 11

cases, and it appearing that no other or further notice need be provided; and the Court having

found and determined that the relief sought in the Motion is in the best interests of the Debtors,

their estates and creditors, and all parties in interest and that the legal and factual bases set forth

in the Motion establish just cause for the relief granted herein; and after due deliberation and

sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy

Code, the Purchase Agreement is approved, and LBHI is authorized (i) to enter into a final

agreement substantially similar to the Purchase Agreement and to consummate all of the

transactions contemplated thereby, including the purchase of the Residential Loans, and execute

and deliver such assignments, conveyances, and other documents, and instruments of transfer

and to take such other actions as may be reasonably necessary to consummate such transactions

and (ii) consent to any amendment, restatement, waiver, supplement or other modification of any

of the documents contemplated under the Purchase Agreement, it being understood that any

actions described in this paragraph taken by the Debtors or their affiliates may be taken without

the necessity of (x) any further court proceedings or approval or (y) any consent of any third

party, and shall be conclusive and binding in all respects on all parties in interest in these cases; and it is further

ORDERED, that, in the event the face amount of Residential Loans purchased by LBHI under the Purchase Agreement exceeds $200 million, the Debtors shall seek additional authority to purchase additional Residential Loans; and it is further

ORDERED that this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed pursuant to Bankruptcy Rule 6004; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: June __, 2009
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

**Purchase Agreement**

## MORTGAGE LOAN PURCHASE AGREEMENT

**THIS MORTGAGE LOAN PURCHASE AGREEMENT** (this "Agreement") is made this 30th day of April 2009 by and between Lehman Brothers Holdings Inc., a Delaware corporation, on behalf of itself and its applicable affiliates (collectively, "Buyer"), and Americor Mortgage, Inc. (d/b/a Vacation Finance and d/b/a Americor Financial Services), a Michigan corporation ("Seller").

## RECITALS:

This Agreement is intended to set forth the entire understanding between the parties whereby Buyer wishes to have the ability to make available residential condominium mortgage loans for condominium properties, in which Buyer has an interest as a lender, to individual obligors who desire to purchase a condominium unit (each an "Obligor" and, collectively, the "Obligors") (which loans, together with all documents evidencing, securing or in any way related to the origination and closing of such loans, are hereinafter referred to as the "Loans");

Buyer wishes to facilitate the availability of such Loans to such Obligors because of the lack of availability of traditional financing sources for such Obligors and Seller has experience in the making and originating of such Loans to condominium unit purchasers and is willing to originate such Loans in accordance with the terms and conditions contained herein based upon Buyer's obligation to purchase all such Loans originated by Seller subject to the terms and conditions contained herein below;

Each of the Loans shall be evidenced by promissory notes (each a "Note" and, collectively, the "Notes") and secured by mortgages or other security instruments (each a "Mortgage" and, collectively, the "Mortgages") covering individual residential condominium units located within the condominium project commonly known as "Canyon Ranch Living Miami Beach Condominiums" located in Miami Beach, Florida (the "Mortgaged Property").

Seller agrees to originate certain Loans for Buyer to purchase in accordance with the provisions of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises, covenants and undertakings hereinafter provided, Seller and Buyer agree as follows:

**LOAN SUBMISSION.** Seller shall submit to Buyer loan applications, credit information and other data ("Loan Packages") for Loans that Seller has determined, and represents to Buyer, satisfy: (i) the terms of this Agreement, and (ii) the sales criteria agreed to by the Buyer and Seller from time to time, including, without limitation, the Underwriting Score Card and the Product Matrix which are both a part of the Sales Criteria agreed to by the Buyer and the Seller from time to time (the Underwriting Score Card, the Product Matrix and the other underwriting criteria agreed to by Buyer and Seller from time

to time are hereinafter sometimes referred to collectively as the "Sales Criteria"). The initial Sales Criteria agreed to by Seller and Buyer are attached to this Agreement as Exhibit C and constitute the currently approved standards for underwriting potential borrowers and the types of loans that may be offered to such borrowers based upon the various factors set forth in such Sales Criteria. In the event of a discrepancy between the provisions of this Agreement and the Sales Criteria, the provisions of this Agreement shall control. Seller shall furnish to Buyer at Seller's sole expense such credit, financial, and other information concerning potential borrower that Buyer may require in determining for its own account whether or not such Obligor and the Loan Package to be offered is acceptable to Buyer in its sole and absolute discretion. Notwithstanding the foregoing, it is the intention of Seller that Loans will be made available to Obligors pursuant to this Agreement and that such Loans that meet the requirements set forth in this Agreement and the Sales Criteria will be made available to Buyer for purchase pursuant to the terms of this Agreement until such time as Buyer shall provide Seller thirty (30) days prior notice that Buyer will thereafter discontinue purchasing Loans from Seller pursuant to the terms of this Agreement.

**PURCHASE AND SALE OF LOANS.** Seller shall sell to Buyer, and Buyer shall purchase from Seller, all Loans which (i) have been originated by Seller, (ii) meet the requirements of this Agreement and the Sales Criteria, (iii) have been approved for purchase by Buyer in accordance with the terms of this Agreement, prior to the date sixty (60) days after the date that Buyer delivers notice to Seller that Buyer will discontinue purchasing Loans from Seller pursuant to the terms of this Agreement, and (iv) are closed, in accordance with the terms of this Agreement within thirty (30) days after the date the Buyer provides written notice to Seller that Buyer has so approved such Loan for purchase. Seller may offer to sell a Loan, or Loans, to Buyer from time to time by submitting to Buyer a loan list or spreadsheet of potential Loans in a format acceptable to Buyer that sets forth such Loan or Loans and their criteria as applied to the Sales Criteria. As agreed to herein, Buyer's approval of a Loan for purchase shall mean Buyer's approval of a Loan Package relating to a proposed Loan to be made by Seller to the corresponding Obligor, which approval means Buyer is, subject to the terms of this Agreement, obligated for a period of thirty (30) days after the date Buyer delivers written notice to Seller of such approval, to purchase the Loan made pursuant thereto at closing of the Loan transaction unless Buyer subsequently reasonably determines that such Loan does not satisfy the requirements set forth in this Agreement, the standards set forth in the Underwriting Score Card and/or does not otherwise conform to the Sales Criteria. Neither party shall be obligated to sell or purchase (as the case may be) any Loan, unless and until both Buyer and Seller have approved the sale of such Loan in accordance with the terms of this Agreement. The rights granted to Seller under this Agreement shall be non-exclusive. Buyer shall have the right, from time to time, in its sole and absolute discretion, to originate, or to purchase mortgage from any Buyer affiliate or any third party, loans secured by residential condominium units located within the condominium project commonly known as Canyon Ranch Living Miami Beach Condominiums; provided, however, that in the event that Loan Packages with respect to substantially similar proposed Loans are submitted to Buyer both from Seller and from such Buyer affiliate or third party originator, such Loan Packages shall be reviewed by Buyer for approval in the order that such complete Loan Packages are received by the Buyer.

**ORIGINATION OF LOANS**.  Seller shall use commercially reasonable efforts to originate Loans in accordance with the terms of this Agreement and the Sales Criteria from any potential Obligor who would be a purchaser of a condominium unit in the Mortgaged Property for so long as Buyer has not provided Seller thirty (30) days prior notice that it no longer intends to purchase such Loans.  All material documents executed and/or delivered in connection with the offering or solicitation of potential Loans or otherwise evidencing, governing, securing or otherwise executed and/or delivered in connection with any such Loans shall be in accordance with the Sales Criteria and shall be subject to the prior written approval of the Buyer except those documents prepared in accordance with FNMA or FHMLC Guidelines which are to be approved by Buyer in advance.  Seller shall deliver all such documentation to Buyer at least fifteen (15) days prior to its intended use of such documents, and unless Buyer shall otherwise object, the documents shall be deemed approved by Buyer after such fifteen day period so long as they meet the terms of this Agreement and the Sales Criteria and comply with applicable state and federal laws and regulations.

**THE SALES CRITERIA.**  Buyer and Seller agree to comply with all terms, procedures and provisions of the Sales Criteria.  The Sales Criteria, which consist of Underwriting Score Card, Product Matrix and the other underwriting criteria as determined by Buyer from time to time, set forth the criteria upon which Seller will offer Loans to potential Obligors and the primary criteria for loans that meet Buyer's requirements with respect to the purchase of each Loan by Buyer.

**CHANGES TO THE SALES CRITERIA.**  The Sales Criteria are subject to change from time to time as determined by Buyer; provided however, that until Seller shall have received written notice from Buyer of any such change to the Sales Criteria, the previous Sales Criteria shall remain operative and in full force and effect.

**PROCEDURAL MATTERS.**  Seller shall process and close each Loan in its own name.  Notwithstanding anything to the contrary contained herein, prior to the sale of each Loan, such Loan must be pre-qualified and approved for purchase by Buyer in writing, and closed and delivered in accordance with the terms hereof and the Sales Criteria. On the date Seller closes each Loan that has been approved by Buyer for purchase, Buyer shall purchase such Loan in accordance with the terms hereof at a purchase price equal to the sum of (i) the outstanding principal balance of such Loan, (ii) the accrued and unpaid interest on such Loan, and (iii) a premium (the "Premium") equal to the amount remaining, if any, after deducting (A) the Origination Fee (as hereinafter defined) paid with respect to such Loan, from (B) an amount equal to one percent (1%) of the outstanding principal amount of the Loan.  Seller agrees that it shall use all reasonable efforts to close each Loan that has been pre-qualified and approved by Buyer.  To the extent Buyer has agreed to purchase, and Seller has agreed to sell, any Loan in accordance with the terms hereof and the Sales Criteria, Buyer shall advance the purchase price for such Loan to Seller on the date of the closing of such Loan between Seller and the Obligor.  Upon the closing of a Loan, Seller shall immediately transfer such Loan to Buyer in accordance with the terms and conditions set forth herein.  The transfer of funds described in this Section shall be subject to the terms of a master escrow agreement to be entered into by and among Buyer, Seller and a third party title company in form and substance acceptable to each of the foregoing parties in

each of such party's sole and absolute discretion.  The third party title company shall be selected by the mutual agreement of Buyer and Seller in each party's sole and absolute discretion.

**UNDERWRITING OF LOANS.**  Seller and Buyer agree that Seller shall offer loans to potential Obligors only in accordance with the terms and conditions of this Agreement and the Sales Criteria and that potential Obligors shall be underwritten by Seller to ensure that they meet the requirements of this Agreement and the Sales Criteria, including, without limitation, the Underwriting Score Card that is a part of the Sales Criteria prior to submission of a proposed Loan to Buyer.  So long as Buyer has not notified Seller that it no longer intends to purchase Loans from Seller as provided for herein above, Buyer or its agent shall have an obligation to review, underwrite and approve or disapprove those Loans that Seller presents to Buyer and that Seller proposes to sell to Buyer pursuant to this Agreement to the extent that such Loans meet the Sales Criteria.  Notwithstanding the foregoing or anything to the contrary set forth in this Agreement, Buyer shall have no obligation to purchase any proposed Loan which, in its sole discretion, does not meet Buyer's requirements set forth in this Agreement, the standards set forth in the Underwriting Score Card and/or does not otherwise conform to the Sales Criteria.  In making its determination, Buyer expressly disclaims any conclusions Seller may draw as to the general quality or acceptability of any Loan.  Buyer shall notify Seller of Buyer's decision as to whether to purchase any Loan as presented to Buyer by Seller in accordance with the practices and procedures established by Seller and Buyer and/or as set forth in the Sales Criteria within ten (10) days of delivery of a complete Loan Package for such Loan from Seller to Buyer for approval.  Buyer retains sole and absolute discretion to refuse to purchase any Loan that does not comply with the terms and conditions of this Agreement, the Sales Criteria, Buyer's underwriting requirements or for any reason whatsoever (except any reason prohibited by law); provided however, that in the event that (i) the Seller proposes to sell to Buyer Loan(s) that meet the Buyer's underwriting requirements and conform to the terms of this Agreement and the Sales Criteria, (ii) such Loan(s) have been approved for purchase by Buyer in writing as provided in this <u>Section 7</u>, (iii) Seller has complied with each of the terms, covenants and conditions of this Agreement for the sale of such Loan(s), and (iv) Seller has tendered such Loan(s) for purchase by Buyer in strict accordance with the terms of this Agreement, but the Buyer fails to purchase such Loan(s) in accordance with the terms of this Agreement, Buyer shall indemnify and hold the Seller harmless from and against any claims, damages, losses (excluding lost profits, but providing for any lost Origination Fee) or reasonable costs and expenses arising out of the Buyer's failure to purchase such Loan(s) to the extent provided in this Agreement.  Without limiting the provisions of the preceding sentence, in the event that an action or proceeding is instituted by a third party with respect to any claim covered by the preceding sentence (a "<u>Covered Claim</u>"), Seller shall be entitled to employ attorneys selected by Seller with the approval of the Buyer, which approval shall not be unreasonably withheld or delayed, to appear and defend the action or proceeding at Buyer's sole expense, and to compromise or settle any such action or proceeding on such terms as Seller may reasonably deem appropriate; provided, however, that any such compromise or settlement shall not include any admission of liability or wrongdoing by Buyer without Buyer's prior written consent.

In the event the Seller does not wish to defend such Covered Claim pursuant to the preceding paragraph, the Seller shall promptly notify Buyer of such Covered Claim and Buyer must assume the defense of such Covered Claim with attorneys reasonably acceptable to Seller.  Buyer shall not be responsible for Seller's attorney fees incurred after the Buyer assumes the defense of such Covered Claim unless the Seller and Buyer have claims adverse to each other, in which case the prevailing party's legal fees will be paid by the losing party.  The failure of the Seller to notify the Buyer of such Covered Claim shall not relieve the Buyer of any liability that the Buyer may have with respect to such Covered Claim except to the extent the Buyer demonstrates that the defense of such Covered Claim is materially prejudiced by such failure.  The Seller shall have the right to reject any settlement proposed by the Buyer in connection with Buyer's defense of such Covered Claim; provided, however, that if such settlement is (i) within the financial means of the Buyer, (ii) without cost or liability to the Seller, (iii) includes a full general release of the Seller from any liability in form and content reasonably satisfactory to Seller, and (iv) does not otherwise materially and adversely affect the Seller, the Seller waives its right to reject such settlement offer.  In the event that the Buyer refuses or fails to undertake the defense of any such Covered Claim within ten (10) days after notice of such Covered Claim has been given to the Buyer by the Seller, or at any time the Buyer shall otherwise fail to diligently defend or purse settlement of such Covered Claim or if such Covered Claim could result in damages in excess of the amount that the Seller could reasonably expect to be recoverable from the Buyer, then the Seller shall have the right, but not the obligation, to undertake the defense, compromise or settlement of such Covered Claim with counsel of its own choosing at the sole cost and expense of the Buyer.

Upon determination of the amount of a Covered Claim, whether by agreement between the Buyer and the Seller, by an arbitration award, any other final adjudication or otherwise, the Buyer shall pay to the Seller the amount of such Covered Claim within thirty (30) days of the date such amount is determined.  Thereafter, the amount of such Covered Claim shall bear interest at a rate equal to ten percent (10%) per annum.

**RELEASE OF SERVICING.**  Each Loan shall be sold to Buyer on a "servicing released" basis, meaning that Seller shall release, transfer and assign to Buyer all right, title and interest in and to the Loan, including, without limitation, any right to provide mortgage servicing in connection therewith.

**REPRESENTATIONS AND WARRANTIES OF SELLER.**  Seller hereby makes the following representations and warranties to Buyer.  Such representations and warranties are deemed to be made both as of the date hereof, and as of each and every date Seller sells a Loan to Buyer (each such date, a "Settlement Date"), and Buyer shall be deemed to have relied on the following representations and warranties.

Seller Representations and Warranties.  Seller makes the following representations and warranties:

Organization.  Seller is duly organized, validly existing and in good standing under laws of its state of organization and the State of Florida, and has the power to own its assets and to transact the business in which it is presently engaged.

Seller is duly qualified and in good standing under the laws of each jurisdiction where its ownership or lease of property or the conduct of its business requires such qualification, including, without limitation, its state of organization and the State of Florida, and where the failure to be so qualified would have a material adverse affect on the business and assets of Seller, taken as a whole.  Seller has and shall continue to maintain in full force and effect all licenses, registrations and certifications in all appropriate jurisdictions to conduct all activities performed with respect to the making and selling of Loans.

Authority.  Seller has the power, authority and legal right to make, deliver and perform this Agreement and all of the transactions contemplated hereunder, and has taken all necessary action to authorize the execution, delivery and performance of this Agreement.  No consent of any other party and no consent, license, approval or authorization of, or registration with, any governmental authority, bureau or agency is required in connection with the execution, delivery, performance, validity or enforceability of this Agreement or the sale of the Loans or if required same has been obtained and remains in effect.

No Violation.  The execution, delivery and performance of this Agreement will not violate any provision of any existing laws or regulation, or any order or decree of any court, or Seller's organizational documents or of any mortgage, indenture, contract or other agreement to which Seller is a party or by which Seller and any of its property or assets may be bound.

Litigation.  No litigation or administrative proceedings of or before any court, tribunal or governmental body is presently pending, or, to the knowledge of Seller, threatened against Seller or any of its properties, which, if adversely determined, would have a material adverse effect on the business, assets, financial condition of Seller or Seller's ability to perform its obligations under this Agreement.

True and Correct.  Neither this Agreement nor any statement, report or other document furnished or to be furnished pursuant to this Agreement or in connection with the transactions contemplated hereby contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.

Validity.  This Agreement has been duly authorized and executed by Seller and is, or upon delivery will be, a legal, valid and binding obligation of Seller enforceable in accordance with its terms, subject only to applicable bankruptcy, reorganization, insolvency, moratorium or other similar laws affecting creditor rights generally.

Commissions to Third Parties.  Seller has not dealt with any broker or agent or other Person who might be entitled to a fee, commission or compensation in connection with the sale of Loans by Seller to Buyer other than the Buyer.

<u>No Common Ownership</u>.  Seller, any title company, any closing agent and any appraiser shall each be independent parties and shall have no common ownership, employees, management, directors or any other relationship or affiliation unless previously disclosed to and approved by Buyer in writing.  The Obligor(s) shall also be independent of Seller, any title company, any closing agent and any appraiser and shall not be affiliated with Seller, any title company, any closing agent or any appraiser in any way.

<u>Solvency</u>.  Seller is solvent, has not committed any act of bankruptcy and the execution and consummation of this Agreement will not render Seller insolvent. Upon payment by Buyer of the purchase price of the Loan, no creditor or stockholder of Seller or any other person will have any claim against Buyer on the Loan.  The consideration received by Seller upon the sale of the Loans will constitute fair consideration and reasonably equivalent value for the Loans.  The sale of the Loans is not undertaken with the intent to hinder, delay or defraud any of the Seller's creditors.

<u>Seller Loan Representations, Warranties and Covenants</u>.  Seller makes the following representations, warranties and covenants with respect to each Loan which shall be deemed reaffirmed at the closing of each Loan and simultaneous sale to the Buyer:

<u>Loan Meets Requirements</u>.  The Loan shall conform in all respects to all the applicable requirements contained in the Sales Criteria and this Agreement.  Upon purchase of a Loan by Buyer, which purchase shall take place at the settlement table of the Loan, such Loan will be fully funded and shall be fully amortizing with no negative amortization.

<u>Seller Has Full Right to Sell and Assign</u>.  Seller is the sole owner of record and holder of the Loan and has full right and authority to sell and assign it to Buyer. In addition, Seller's right to sell or assign is not subject to any other party's interest or to an agreement with any other party.

<u>Seller's Lien on Property</u>.  Upon funding of the Loan by Buyer at the settlement table, the Mortgage securing the Loan is a valid, subsisting and enforceable first priority lien on the Mortgaged Property, free and clear of all encumbrances and liens having priority over it, except for liens for real estate taxes and liens for special assessments that are not yet due and payable and has been properly filed, recorded or otherwise perfected in accordance with applicable law.  No instruments other than those delivered therewith are required under applicable law to evidence the indebtedness represented by the Loan or to perfect a security interest in the collateral for the Loan.  None of the Mortgage Property or any other collateral securing the Loan have been seized by a governmental agency.  The existence of a valid and enforceable title insurance policy insuring such position shall suffice for purposes of meeting the requirements of this subsection.

Documents are Valid and Enforceable.  The Note, Mortgage and any security agreements, chattel mortgages or equivalent documents relating to it have been properly signed, are valid and their terms may be enforced by Buyer, its successors and assigns, subject only to bankruptcy laws, Servicemembers' Civil Relief Act, laws relating to administering descendants' estates, and general principles of equity.  The Note and the Mortgage and every other agreement, if any, executed by the Obligor(s) in connection with the Loan are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms.  All parties to the Note, the Mortgage and each other such related agreement have legal capacity to enter into the Loan and to execute and deliver the Note, the Mortgage and each other related agreement, and the Note, the Mortgage and each other such related agreement have been duly and properly executed by the respective Obligor(s).  Seller had reviewed all of the documents constituting the Loan file and has made such inquires as it deems necessary to make and confirm the accuracy of the representations set forth therein.  All recording or other fees required to be paid in connection with the filing or recording of any document entered into in connection with the Loan have been paid in full by the Seller and/or the Obligor in accordance with the terms of the Loan.  Notwithstanding the foregoing, it is agreed that the use of FNMA and/or FHLMC approved form of loan documents shall be deemed to meet the requirements of this subsection so long as they meet the other requirements of this Agreement.

Mortgage Property Not Subject to Liens.  The Mortgaged Property is free and clear of all mechanics' liens, materialmen's liens or similar types of liens.  There are no rights outstanding that could result in any of such liens being imposed on the Mortgaged Property.

Title Insurance.  There is a mortgage title insurance policy on the Mortgaged Property.  The title insurance policy is on a current ALTA form (or other generally acceptable form) issued by an insurance company which, along with the policy itself, meets the requirements set forth in the Sales Criteria.  The title insurance insures Seller and its successors and assigns as holding a first priority lien on the Mortgaged Property.

No Modification or Subordination of Mortgage.  Seller has not done any of the following: (a) materially modified the Note or Mortgage; (b) satisfied or cancelled the Note or Mortgage in whole or in part; (c) subordinated the Mortgage in whole or in part; (d) released the Mortgaged Property in whole or in part from the Mortgage lien; or (e) signed any release, cancellation, modification or satisfaction of the Note or Mortgage.

Mortgage in Good Standing.  To the best of Seller's knowledge after due inquiry, there is no default, breach, violation, or event of default or acceleration existing under the Note or Mortgage, nor has there occurred any event that, with the passage of time or the giving of notice or both, could give rise to such default, breach, violation or event of default and/or acceleration.  Seller has not waived

any default, breach, violation or event of default or acceleration under the Note or Mortgage and all of the following that have become due and payable have been paid or an escrow of funds sufficient to pay them has been established: (a) taxes; (b) government assessments; (c) insurance premiums; (d) water, sewer and municipal charges; (e) leasehold payments; and (f) ground rents.  No collateral purporting to secure the Loan has been repossessed or disposed of or foreclosed against by Seller or any other person from the Obligor(s).

Advances.  Seller has not made, or knowingly received from others, any direct or indirect advance of funds in connection with the Loan on behalf of the Obligor, except as provided in the Sales Criteria.  This warranty does not cover payment of interest from the earlier of: (a) the date of the Note; or (b) the date on which the Mortgage proceeds were disbursed; or (c) the date one month before the first installment of principal and interest on the Note is due.

Property Intact.   To the best of Seller's knowledge after due inquiry, the Mortgaged Property is not damaged by waste, fire, earthquake or earth movement, wind, flood, tornado or other cause of loss.  There are no proceedings pending for the partial or total condemnation of the Mortgaged Property.

Improvements.  The  underlying property secured by the mortgage constitutes an individual, residential condominium unit and all appurtenant rights as permitted in the Sales Criteria and as reflected in the credit files and other materials submitted to Buyer.   The Seller will perform due diligence in accordance with FNMA/FHLMC Guidelines to confirm the underlying condominium unit is subject to a certificate of occupancy or similar use and occupancy certificate allowing the borrower to use and/or occupy the property.  To the best of Seller's knowledge after due inquiry, (i)  the Mortgaged Property is free of damage and waste including but not limited to hazardous materials and there is no proceeding pending for the total or partial condemnation thereof, (ii) any improvements that are included in the appraised value of the Mortgaged Property are totally within the property's boundaries and building restriction lines, (iii) no improvements on any adjoining property nor any other condominium unit encroaches on the Mortgaged Property, and (iv) any and all home improvement goods and services to be provided or performed under a Loan have been provided in workmanlike manner, and in accordance with applicable regulatory codes, and to the Obligor(s) satisfaction.

Note Not Usurious.  The Note is not usurious and either meets or is exempt from any usury laws or regulations.

Compliance with Consumer Protection Laws.  Seller, and any originator if not the Seller, has complied with all applicable federal and state laws, regulations and other requirements including, but not limited to, the Real Estate Settlement Procedures Act and Regulation X; the Federal Fair Housing Act; the National Flood Insurance Act; the Equal Credit Opportunity Act and Regulation B; the Truth in Lending Act and Regulation Z; the Fair Credit Reporting Act; the Fair

Debt Collection Practices Act; the Home Mortgage Disclosure Act and Regulation C; the Gramm-Leach-Bliley Act and Regulation P; and all Florida laws relating to mortgage brokerage and mortgage lending activities (including, without limitation, Fla. Stat. 494.001 et seq.).  Seller further warrants compliance with the terms of Buyer's "Fair Lending Policy Statement," attached as <u>Exhibit B</u> of this Agreement..

<u>Property is Insured</u>.  A casualty insurance replacement policy on the Mortgaged Property is in effect and meets the requirements set forth in the Sales Criteria. The policy is written by an insurance company which meets the requirements set forth in the Sales Criteria and provides fire and extended coverages for an amount at least equal to the amount required by the Sales Criteria.

<u>Loan Marketability</u>.  Seller knows of nothing involving the Loan, the Mortgaged Property, the Obligor or the Obligor's credit standing that can reasonably be expected to: (a) cause the Loan to be come delinquent; or (b) adversely affect the Loan's value.

<u>Default</u>.  To the best of Seller's knowledge after due inquiry, no default exists under the Loan.  The Loan is not in the possession of any attorney or collection agency for collection nor is it the subject of any actual or threatened bankruptcy proceeding or other litigation.

<u>Counterclaim</u>.  To the best of Seller's knowledge after due inquiry, the Obligor has not asserted any defense, set-off, right of rescission or counterclaim, either at law or in equity, in connection with the Loan.

<u>Genuineness of Signatures</u>.  All Loan documents are genuine and contain genuine signatures.  All Loan documents that Buyer requires to be original documents are original documents.  All certified copies of original documents are true copies and meet the applicable requirements and specifications of this Agreement, the Sales Criteria and any other requirements that Buyer has reasonably made of Seller.

<u>Full Disbursement of Proceeds</u>.  The Loan has been closed and, subject to table funding by the Buyer at the settlement table, the proceeds of the Loan have been fully disbursed and there is no requirement for future advances thereunder, and any and all requirements as to completion of any on-site improvement and as to any escrow funds therefore have been complied with other than any reserves set aside for punch list items.  All costs, fees and expenses incurred in making or closing the Loan and the recording of the Mortgage were paid, and the Obligor is not entitled to any refund of any amounts paid or due under the Note or Mortgage.

<u>Loan Fees</u>.  All costs, fees, expenses and charges payable directly or indirectly to Seller or any affiliate thereof in connection with the origination, making or closing of the Loan (collectively, the "<u>Loan Closing Fees</u>") have complied with the Sales Criteria and have been paid in full.  In any event, without the prior written consent of the Buyer in each instance, the Loan Closing Fees with respect

to any Loan do not exceed the sum of (i) an origination fee (the "Origination Fee") equal to one percent (1.0%) of the principal amount of the Loan, (ii) a documentation fee of $250, (iii) a loan underwriting fee of $350, and (iv) a processing fee of $372. Neither Buyer nor any Indemnified Party, as hereinafter defined, shall have any obligation for the payment of any Loan Closing Fees.

Appraisals. Upon the written request of the Buyer, Seller shall cause to be delivered to Buyer, at the Obligor's sole cost and expense, an appraisal of each Mortgaged Property signed prior to the approval of the applicable Mortgage application by a qualified appraiser, who (i) is licensed in the state where the Mortgaged Property is located (ii) is acceptable to Buyer, (iii) has, no interest, direct or indirect, in the Mortgaged Property or in any loan on the security thereof, and (iv) does not receive compensation that is affected by the approval or disapproval of the Loan. The appraisal shall be completed in compliance with the Uniform Standards of Profession Appraisal Practice, and all applicable federal and state laws and regulations, including FIRREA. There have been no arrangements or agreements between Seller and the appraiser identified in the Federal Register by the Flood Emergency Management Agency as having flood hazards. The Mortgaged Property is covered by flood insurance which shall be in an amount not less than the least of (a) the outstanding principal balance of the Loan, but not less than the minimum amount required to fully compensate for damage or loss in the event of partial loss, on a replacement cost basis, (b) the full insurable value of the Mortgaged Property, or (c) the maximum amount of insurance available under the National Flood Insurance Act of 1968, as amended.

Obligors are Real. To the best of Seller's knowledge after due inquiry, the Obligor(s) on the Loan are the true and only Obligors thereon, are the real parties in interest thereon and are not straw men, nominees or accommodation parties or representatives of any other person, group or organization as to all or any part of the credit extended thereunder.

Benefits to Seller. Neither Seller nor any stockholder, director, officer, partner, employee or agent of Seller has received any benefit, consideration or value, other than (a) the increased business to Seller and its affiliated entities represented by the Loan or (b) a prepaid finance charge disclosed to the Obligor(s) on the Loan or (c) insurance commissions from time to time heretofore paid from any Obligor(s) or anyone else in connection with the Loan or (d) the compensation to be paid to Seller by Buyer under this Agreement.

No Third Party Payments. No payments made on the Loan were made directly or indirectly by any of the Seller, the stockholders, officers, directors, partners, employees or agents of Seller or by an assignor of the Loan or merchant who referred the Obligor(s) under the Loan. Neither Seller nor any such person or entity has made any agreement or reached any understanding with any Obligor(s) for any variation of the interest rate, schedules of payment or other terms and conditions of the Loan. The Seller has not advanced funds, or induced, solicited or knowingly received any advance of funds from a party other than the owner of

the Mortgaged Property subject to the Mortgage or an Obligor on such Loan, directly or indirectly, for the payment of any amount required under such Loan. There is no obligation on the part of the Seller or any other party to make payments on account of the Loan which are in addition to those made by the Obligor(s).

Prior Payments Made.  All payments required under the terms of the Loan to be made on or prior to the Settlement Date have been made; the Loan was not or is not the subject of a first payment default under the Note.

Transfer of Mortgage Loans.  The assignment of mortgage with respect to each Loan is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located.  The transfer, assignment and conveyance of the Notes and the Mortgages by the Seller are not subject to the bulk transfer or similar statutory provisions in effect in any applicable jurisdiction.

Collateral Occupied.  To the best of Seller's knowledge after due inquiry, The collateral purporting to secure the Loan secures the Loan as of the date of transfer and is lawfully occupied as reflected in the credit files and other materials submitted to Buyer.

Mortgage Remedies.  The Mortgage contains customary and enforceable provisions, subject to applicable law, so as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby including, but not limited to, (a) by judicial or non-judicial foreclosure proceedings as may be authorized by law, and (b) the right, subject to any applicable federal restrictions, to call a default under the Mortgage and to accelerate the Mortgage indebtedness in the event the Mortgaged Property or a portion thereof is sold or transferred without the consent of the holder of the Mortgage.  All persons who have or will have an ownership, homestead or dower interest in the Mortgaged Property have signed the Mortgage relating to such property if said signature is permitted by law.

Servicemembers' Civil Relief Act.  The Obligor(s) has not notified the Seller, and the Seller has no actual knowledge of, any relief requested by or allowed to the Obligor(s) under the federal Servicemembers' Civil Relief Act (f/k/a Soldiers' and Sailors' Civil Relief Act of 1940).

No High Cost Loans.  None of the Loans are classified as (a) "high cost" loans under the Home Ownership and Equity Protection Act of 1994 or (b) so called "high cost", "threshold," "covered," or "predatory" loans under any other applicable state, federal or local law.

Authorization to Share Information.  All loan files relating to Loans purchased by Buyer shall contain the authorization to share information described in the Sales Criteria signed by the Obligor(s).  Seller also represents and warrants that it shall

not forward any application or credit information of any Obligor(s) who does not authorize the sharing of information.

No Tribal Law.  The governing laws with respect to the origination, servicing and foreclosure of any Loan are the applicable provision of the laws of the state in which the collateral is located, or the laws of the United States, and not any tribal law, and no tribal court has exclusive jurisdiction of the same.

Credit Report.  Each credit report obtained in connection with the origination of a Loan was obtained from a major credit reporting agency, and was less than sixty (60) days old at the time of the closing of the related Loan.

Obligor(s) Are Alive and Solvent.  To the best of the Seller's knowledge after due inquiry, at the time of settlement, none of the Obligor(s) on such Loan is deceased and the Loan is not subject to any pending foreclosure, bankruptcy, insolvency, or reorganization proceeding, survey dispute, quiet title or adverse possession claims.  The debt on the Loan has not been discharged in a previously pending bankruptcy action.

Sale Transaction.  Under generally accepted accounting principles the transfer of the Loans may be treated as a sale on the books and records of the Seller and the Seller has determined that the disposition of the Loans pursuant to this Agreement will be afforded sale treatment for tax and accounting purposes.

USA PATRIOT Act.  The Seller has complied with all applicable anti-money laundering laws and regulations, including without limitation the USA PATRIOT Act of 2001 (collectively, the "Anti-Money Laundering Laws") and maintains, and will maintain, sufficient information to identify the applicable Obligor for purposes of the Anti-Money Laundering Laws.  The documents, instruments and agreements executed in connection with each of the Loans contain all provisions necessary to require the Obligors to provide any information necessary to allow Buyer or any subsequent holder of the Loan or any interest therein to comply with the requirements of the Anti-Money Laundering Laws.

True Information.  To the best of Seller's knowledge after due inquiry, all information and documents contained in a Loan file are genuine and the information contained in such documents is true, accurate and complete and such documents do not omit to state a fact necessary to make the statements contained therein not misleading.

Sole Originator.  Seller warrants that it is the sole originator of all Loans submitted to Buyer by Seller pursuant to this Agreement.

Parties in Interest.  All parties which have had any interest in the Loan, whether as mortgagee, assignee, pledge, mortgage broker or otherwise, are (or, during the period in which they held and disposed of such interest, were) (1) in compliance with any and all applicable licensing requirements of the laws of the state wherein the Mortgage Property is located, and (2) organized under the laws of such state,

or (3) qualified to do business in such state, or (4) federal savings and loan associations or national banks having principal offices in such state, or (5) not doing business in such state.

No Fraud.  No error, omission, negligence, misrepresentation, fraud, identity theft, or similar occurrence has taken place on the part of the Seller.

These representations, warranties and covenants are made at and as of the time of origination, transfer, and conveyance of each Loan to Buyer, but Buyer's rights with respect to the breach of these representations, warranties and covenants shall continue after the purchase of the Loan by Buyer and after payment by Buyer of the purchase price for such Loan to Seller, and shall survive after any termination of this Agreement.  These representations, warranties and covenants are for the benefit of Buyer as well as the benefit of Buyer's successors and assigns.

**INTERIM SERVICING.**  All Loans sold by Seller under this Agreement shall be sold on a servicing-released basis.  Except as otherwise provided in this Agreement, as of the applicable Settlement Date, all rights, obligations, liabilities and responsibilities with respect to the servicing of such Loan shall pass to Buyer, and Seller shall be discharged from all liabilities arising from such servicing from and after the Settlement Date. Notwithstanding anything to the contrary contained in this Agreement, to the extent that the actual servicing of any Loan cannot be transferred from Seller to Buyer on the Settlement Date due to the requirements governing the timing of notice of transfer of servicing under RESPA, or other applicable laws, then Seller shall immediately transfer the closed Loan to a sub-servicer of Buyer's choice (the "Interim Servicer") pursuant to the terms and conditions of this Section.  Interim Servicer shall service such Mortgage Loan in compliance with reasonable and customary servicing practices and procedures of prudent loan servicers that service mortgage loans similar to the Loans, and in compliance with all applicable law, from and after the Settlement Date until the date on which the servicing of the Loan is transferred from the Interim Servicer to another servicer (the "Servicing Transfer Date"); however, the Servicing Transfer Date shall be no later than twenty-five (25) days past each related Settlement Date, unless otherwise agreed upon by the Buyer and the Seller.

During the interim servicing period, neither Seller nor Interim Servicer shall take any  action to compromise, renew, modify or alter the terms of a Loan or to commence any judicial or non-judicial action to collect a Loan without the prior written consent of Buyer.  Any payments or monies received or held by Seller or Interim Servicer from or on behalf of an Obligor after the Servicing Transfer Date shall be held in trust by Seller and/or Interim Servicer, as the case may be, for the benefit of Buyer.  Any payments or monies received by Seller or Interim Servicer from or on behalf of an Obligor after the Servicing Transfer Date shall be delivered to Buyer with forty-eight (48) hours of receipt thereof.

Each party shall be responsible for compliance with Section 6 of RESPA and Section 3500, 21 of Regulation X thereto, as amended, regarding transfer of servicing to the extent applicable to such party, including the obligation of Buyer to send a transferee notice and Seller to send a transferor notice when required.  For the purpose of complying with the information required by Section 6 of RESPA, Seller's address is 255 E. Brown Street, Suite 300,

Birmingham, MI 48009; its toll-free telephone number is [888.LOAN.466]; Buyer's address is Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, 46th Floor, New York, New York 10022 its toll-free telephone number is (866) 736-6614.  Each party is responsible for notifying the other in writing in the event of any change in the foregoing information.

No later than five (5) days after each Settlement Date, Seller shall send to all Obligors and grantors, via first class mail, postage prepaid, a letter, the text and format of which shall have been pre-approved by Buyer, which shall advise Obligor that their Loan has been sold to Buyer.  The letter shall contain such other information as Buyer may reasonably request.

Notwithstanding the foregoing, it is understood and agreed that Interim Servicing is not currently contemplated to occur pursuant to this Agreement.

**INDEMNIFICATION BY SELLER.**  Seller will indemnify and hold Buyer, each of Buyer's direct and indirect subsidiaries and affiliates, and the respective officers, directors, shareholders, partners, members, employees, agents, servants, counsel, representatives, affiliates, subsidiaries, participants, successors and assigns of any and all of the foregoing (collectively, the "Indemnified Parties")  harmless from and against any and all claims, losses, liabilities, obligations, penalties, actions, causes of action, claims of usury, suits, controversies,   damages (whether general, special or punitive), judgments, executions, claims and demands,   costs and expenses, including, without, limitation, attorneys' fees and expenses (whether or not litigation is commenced), liens and indemnities of every kind and nature whatsoever ("Claims") arising out of, under, in connection with, or related in any manner to: (i) any act or omission of Seller or any employee or agent of Seller, (ii) Seller's failure to perform any of its obligations hereunder, or (iii) the falsity, incorrectness or incompleteness of any representation or warranty made by Seller herein.  This indemnification shall include, but not be limited to, indemnification against Claims arising in connection with actions or proceedings instituted by or on behalf of (i) an Obligor with respect to any of the Loans, or (ii) any person prosecuting or defending any action or proceeding as a representative of or on behalf of a class or other interest group relating to the Loans, or (iii) any governmental instrumentality, body, or agency having jurisdiction under any applicable statute, rule, regulation, order or decree relating to the Loans.

Without limiting the provisions of the preceding paragraph, in the event that an action or proceeding is instituted by a third party with respect to a Claim, Buyer or the respective Indemnified Party shall be entitled to employ attorneys of its own selection to appear and defend the action or proceeding at Seller's sole expense, and to compromise or settle any such action or proceeding on such terms as Buyer or such Indemnified Party may reasonably deem appropriate; provided, however, that any such compromise or settlement shall not include any admission of liability or wrongdoing by Seller without Seller's prior written consent.

In the event the Buyer or the respective Indemnified Party does not wish to defend such Claim pursuant to the preceding paragraph, the Buyer or such Indemnified Party shall promptly notify Seller of such Claim and Seller must assume the defense of such Claim with attorneys reasonably acceptable to Buyer or such other Indemnified Party.  Seller shall not be responsible for such Indemnified Party's attorney fees incurred after the Seller assumes the

defense of such Claim unless the respective Indemnified Party and Seller have claims adverse to each other, in which case the prevailing party's legal fees will be paid by the losing party. The failure of the Indemnified Party to notify the Seller of such Claim shall not relieve the Seller of any liability that the Seller may have with respect to such Claim except to the extent the Seller demonstrates that the defense of such Claim is materially prejudiced by such failure. The respective Indemnified Party shall have the right to reject any settlement proposed by the Seller in connection with Seller's defense of such Claim; provided, however, that if such settlement is (i) within the financial means of the Seller, (ii) without cost or liability to the Buyer, (iii) includes a full general release of the Buyer and each of the Indemnified Parties from any liability in form and content reasonably satisfactory to Buyer, and (iv) does not otherwise materially and adversely affect the Buyer or any of the other Indemnified Parties, the Buyer waives its right to reject such settlement offer. In the event that the Seller refuses or fails to undertake the defense of any such Claim within ten (10) days after notice of such Claim has been given to the Seller by an Indemnified Party, or at any time the Seller shall otherwise fail to diligently defend or purse settlement of such Claim or if such Claim could result in damages in excess of the amount that the Indemnified Party could reasonably expect to be recoverable from the Seller, then the Buyer or any other Indemnified Party shall have the right, but not the obligation, to undertake the defense, compromise or settlement of such Claim with counsel of its own choosing at the sole cost and expense of the Seller.

Upon determination of the amount of a Claim, whether by agreement between the Seller and the applicable Indemnified Parties, by an arbitration award, any other final adjudication or otherwise, the Seller shall pay to each of the applicable Indemnified Parties the amount of such Claim within thirty (30) days of the date such amount is determined. Thereafter, the amount of such Claim shall bear interest at a rate equal to ten percent (10%) per annum.

**REPURCHASE OF LOANS.** Seller shall, within ten (10) business days, unless otherwise mutually agreed upon by Buyer and Seller but not to exceed an additional twenty (20) days, of Buyer's written request, repurchase from Buyer any Loan sold to Buyer if any warranty or representation made by Seller about the Loan is untrue and such impairs the value of the Loan(s), or if Seller has otherwise breached this Agreement in whole or in part with regard to any Loan(s) that impair the value of such Loan(s), or if Seller has failed to deliver any Loan document requested by Buyer or required by this Agreement or the Sales Criteria that impairs the value of such Loan(s). Notwithstanding the foregoing, Seller is not a guarantor of the Loans and is obligated to repurchase only upon the occurrence of the events set forth in the preceding sentence. In the event of such repurchase, Buyer shall tender to Seller all Loan documents required to be repurchased pursuant to this provision, and said documents, where appropriate, shall be endorsed to Seller without recourse to Buyer. Contemporaneous with such tender, Seller shall pay to Buyer in immediately available funds an amount equal to such Loan's then unpaid principal balance, plus accrued interest (the "Repurchase Price"). The Repurchase Price shall include (i) any reasonable costs and expenses incurred in connection with the transfer to the Seller of the servicing rights related to the repurchased Loan, plus (ii) the amount of any unreimbursed servicing advances made by the servicer of the repurchased Loan, plus (iii) any reasonable costs and damages, excluding lost profits, incurred by Buyer or any assignee of Buyer in connection with any violation of any representation or warranty of the repurchased Mortgage Loan by the Seller. It is understood and agreed by the parties that the repurchase obligations

hereunder are in addition to, and not in lieu of, all other remedies available in this Agreement or by law. Buyer shall have the right to set off of any amounts owed to Buyer hereunder or otherwise by Seller against any and all amounts owed to Seller by Buyer.

**TERMINATION.** This Agreement may be terminated in the manner provided hereinafter; however, all of Seller's representations, covenants and agreements contained in this Agreement shall survive any termination of the Agreement.

<u>Termination Without Cause</u>. This Agreement may be terminated without cause at any time by either party after sixty (60) days prior written notice to the other party. Termination under this <u>Section 13.01</u> shall not terminate Seller's agreement to sell and Buyer's agreement to purchase those Loans which, prior to the effective date of termination, Buyer and Seller have agreed to purchase and sell, respectively, provided such Loans: (i) continue to meet the requirements of this Agreement and the Sales Criteria; and (ii) are approved for purchase by Buyer either prior or subsequent to the effective date of termination..

<u>Termination for Cause</u>. This Agreement may be terminated immediately "for cause" upon the occurrence of any of the following: (i) if Seller or Buyer is in default under this Agreement, or (ii) if Seller becomes insolvent or bankrupt, or if a receiver is appointed for Seller, or if a petition for reorganization is filed by or against Seller. If Seller is in default under this Agreement, Buyer shall give Seller written notice of such default and provide Seller with a period of ten (10) days in which to cure such default. If Seller shall not have cured such default within ten (10) days from the date of Buyer's notification, then Buyer shall have the option to immediately terminate this Agreement upon notification to Seller. If Buyer is in default under this Agreement, Seller shall give Buyer written notice of such default and provide Buyer with a period of ten (10) days in which to cure such default. If Buyer shall not have cured such default within ten (10) days from the date of Seller's notification, then Seller shall have the option to immediately terminate this Agreement upon notification to Buyer. If Seller becomes insolvent or bankrupt, or if a receiver is appointed for Seller, or a petition for reorganization is filed by or against Seller, this Agreement shall automatically terminate. Termination under this <u>Section 13.02</u> shall release Buyer from any and all obligations to purchase Loans thereafter.

**RELATIONSHIP OF PARTIES.** Seller is an independent contractor, and this Agreement and any transactions entered into pursuant hereto shall not be deemed to create between Buyer and Seller a relationship of agency, legal representation, partnership, joint venture, debtor/creditor, or employment. No party shall be deemed to designate the other party as its agent, and Buyer and Seller agree that neither party is in any way authorized to make any contract, agreement, warranty or representation, or to create any obligation, express or implied, on behalf of the other. Neither party assumes any liability or incurs any obligations of the other by the execution of this Agreement. No part of the consideration to be paid for any Loan shall be considered a fee paid for the goodwill of Seller.

**CONFIDENTIALITY AND NONDISCLOSURE.** EXCEPT AS OTHERWISE REQUIRED BY LAW, SELLER, ITS EMPLOYEES AND AGENTS SHALL NOT DISCLOSE THE EXISTENCE OF THIS AGREEMENT OR THE FACT THAT SELLER IS ABLE TO OFFER BUYER'S LOAN PRODUCTS AND PRICES. SELLER AND BUYER SHALL KEEP ALL COMMUNICATIONS BETWEEN SELLER AND BUYER CONFIDENTIAL INCLUDING ALL "NONPUBLIC PERSONAL INFORMATION" (AS THAT TERM IS DEFINED IN TITLE V OF THE GRAMM-LEACH-BLILEY ACT (THE "ACT") AND UNDER APPLICABLE REGULATIONS ISSUED UNDER THE ACT) OF THE CUSTOMERS OR CONSUMERS OF BUYER AND WHICH IS FURNISHED BY OR THROUGH THE BUYER TO THE SELLER. Irreparable harm shall be presumed if the Seller or Buyer breaches this Section. In addition to any other remedies to which the Buyer or Seller may be entitled as a result of such a breach, the Buyer or Seller shall be entitled to seek injunctive relief immediately enjoining the Seller or Buyer, as applicable, from continuing its breach and without posting bond therefore.

Without limiting the foregoing, Seller acknowledges and agrees that it shall not, except as required by law, and it shall cause its directors, officers, employees, agents and advisors not to, without the prior written consent of Buyer (which consent shall be granted or withheld by Buyer in its sole and absolute discretion) disclose to any third party the existence of this Agreement, the terms hereof, or the involvement of Buyer and/or its affiliates in the transactions contemplated hereby. Without limiting the generality of the foregoing, Seller shall not, without the prior written consent of Buyer, refer to Buyer or its affiliates verbally or in writing or use the logo of Buyer or its affiliates in connection with engagement of any third party service providers, the origination of any Loan or the marketing of the Loans to prospective Obligors, including, without limitation, in any Loan documents, in any advertisements or other promotional or information materials regarding the Loans, in any press releases or other public announcements or media, or on any internet website.

**CONFIDENTIAL INFORMATION; PRIVACY.** Seller hereby acknowledges that Seller may have access to, or Buyer may provide to Seller information and/or documentation which Buyer regards as confidential or otherwise of a proprietary nature. Buyer hereby acknowledges that Buyer may have access to, or Seller may provide to Buyer information and/or documentation which Seller regards as confidential or otherwise of a proprietary nature.

Definition of Confidential Information. "Confidential Information" includes, but is not limited to, the following, whether now in existence or hereafter created:

all information, in whatever medium, and copies thereof, marked as "confidential" or with similar designation, or information which Seller or Buyer, as applicable, should, in the exercise of its reasonable business judgment, recognize to be confidential;

all information, including usage, concerning intellectual property or other property protected by rights embodied in copyrights, whether registered or

unregistered (including all derivative works), "know how," trade secrets, and any intellectual property rights of Buyer or Seller;

all business, financial or technical information of Buyer or Seller, and any of Buyer's or Seller's vendors, as the case may be;

any and all information about employees or consumer customers of Buyer of any nature whatsoever, and specifically including but not limited to employee or customer lists, employee or customer financial information, and the fact of the existence of a relationship, or potential relationship, between Buyer and its employees or customers, and any and all information about employees of Seller of any nature whatsoever, and specifically including but not limited to employee lists, employee financial information, and the fact of the existence of a relationship, or potential relationship, between Seller and its employees;

all financial information, in whatever medium, and copies thereof, with respect to the condominium project commonly know as Canyon Ranch Living Miami Beach Condominium located in Miami Beach, Florida, any Obligors or potential Obligors;

the names and contact information of any Obligors or potential Obligors provided to Seller or Buyer, as applicable, by, or at the direction of, Buyer or Seller, as applicable, or any affiliate thereof;

this Agreement and the Sales Criteria; and

any and all documents, instruments and agreements, and any and all data or other information, in connection with the sale of Loans by Seller and the purchase of the Loans by Buyer, in accordance with the terms hereof.

Seller and Buyer agree now and at all times in the future that all such Confidential Information shall be held in strict confidence and disclosed only to those employees or agents whose duties reasonably require access to such information provided, however, that such materials may be disclosed by Buyer to its employees, agents, representatives and counsel and to its subsidiaries and affiliates and their respective employees, agents, representatives and counsel. Seller and Buyer shall protect such Confidential Information using the same degree of care, but no less than a reasonable degree of care, to prevent unauthorized use, disclosure or duplication (except as required for backup systems) of such Confidential Information as Seller and Buyer each use to protect its own confidential information.

If Seller or Buyer is required by a court or governmental agency having proper jurisdiction to disclose any Confidential Information, Seller shall promptly provide to the Buyer notice of such request so that Buyer may seek an appropriate protection order, and if Buyer is required by a court or governmental agency having proper jurisdiction to disclose any Confidential Information, Buyer shall

promptly provide to the Seller notice of such request so that Seller may seek an appropriate protection order.

Seller and Buyer shall establish data security policies and procedures to ensure compliance with this section and that are designed to:

Ensure the security and confidentiality of customer(s)' information;

Protect against any anticipated threats or hazards to the security or integrity of such information;

Protect against the unauthorized access to, disclosure of, or uses of such information that could result in substantial harm or inconvenience to customer(s); and

Otherwise comply with the requirements of the Gramm-Leach-Bliley Act and the regulations promulgated thereunder, and any and all local or state privacy laws that are applicable to this Agreement and Seller's and Buyer's businesses.

In the event of any disclosure or loss of, or inability to account for, any of Buyer's Confidential Information, Seller will promptly notify Buyer. In the event of any disclosure or loss of, or inability to account for, any of Seller's Confidential Information, Buyer will promptly notify Seller.

Limited Use of Confidential Information and Survival of Obligations.

Seller and Buyer may use the Confidential Information only as necessary for Seller's or Buyer's performance hereunder and for no other use.  Seller's or Buyer's limited right to use the Confidential Information shall expire upon the expiration or termination of this Agreement for any reason, but its confidentiality obligations shall survive beyond such termination or expiration.

Upon expiration of Seller's limited right to use the Confidential Information, Seller shall return all physical embodiments thereof to Buyer or, with Buyer's permission, destroy the Confidential Information and provide Buyer written certification of its compliance with this Section. Upon expiration of Buyer's limited right to use the Confidential Information, Buyer shall return all physical embodiments thereof to Seller or, with Seller's permission, destroy the Confidential Information and provide Buyer written certification of its compliance with this Section

Disclosure to Third Parties.  If Seller or Buyer is allowed or required to disclose any Confidential Information to any third parties in the context of Seller's or Buyer's presentations or negotiations with third parties, then Seller or Buyer shall ensure that such third parties will have express obligations of confidentiality and non-disclosure, with regard to the Confidential Information, substantially similar to

Seller's or Buyer's obligations hereunder.  Liability for damages due to disclosure of the Confidential Information by any such third parties shall be with Seller or Buyer, as the case may be.

Remedies.  If Seller, its agents or employees, violate the obligations of confidentiality and non-disclosure set forth herein, the parties agree that irreparable injury may result to the Buyer or third parties entrusting Confidential Information to Buyer, that Buyer's remedy at law for damages may be inadequate, and that Buyer will be entitled to an injunction to restrain any continuing breach by Seller its agents or employees with no bond required, or if bond is required, only a nominal bond.  Notwithstanding any other provision of this Agreement purporting to limit Seller's liability, Buyer shall further be entitled to recover any other rights and remedies which it may have at law or in equity. If Buyer, its agents or employees, violate the obligations of confidentiality and non-disclosure set forth herein, the parties agree that irreparable injury may result to the Seller or third parties entrusting Confidential Information to Buyer, that Seller's remedy at law for damages may be inadequate, and that Seller will be entitled to an injunction to restrain any continuing breach by Buyer its agents or employees with no bond required, or if bond is required, only a nominal bond.  Notwithstanding any other provision of this Agreement purporting to limit Buyer's liability, Seller shall further be entitled to recover any other rights and remedies which it may have at law or in equity.

Notwithstanding the foregoing, all documents, forms, or other written materials created solely by Seller in order to carry out and perform its obligations under this Agreement shall be deemed the property of Seller and may not be used by Buyer in any other transactions without the express written consent of Seller, which may be withheld in its sole discretion; provided, however, that such materials may be disclosed and used by Buyer to its employees, agents, representatives and counsel and to its subsidiaries and affiliates and their respective employees, agents, representatives and counsel.

**NON-SOLICITATION.**  Seller hereby agrees that, with respect to each Loan purchased by Buyer in accordance with the terms hereof, neither Seller nor any affiliate of Seller shall take any action to directly or indirectly solicit the applicable Obligor(s) in order to effect the refinancing of such Loans previously purchased by Buyer for a period of twenty-four (24) months from the date upon which Buyer purchased the applicable Loan.

**PREPAYMENTS**.  In the event that any Loan is prepaid by the Obligor, the Seller shall have no obligation to pay any fees or percentages of the Premium initially paid by Buyer to Seller, and the Buyer shall have no right under this Agreement to collect any such fees or percentages from the Seller.

**POWER OF ATTORNEY.**  In order to enforce Buyer's rights under this Agreement, Seller shall, upon the request of Buyer or its assigns, perform or cause to be done and performed, every reasonable act and thing necessary or advisable to put Buyer or its assigns in position to enforce the payment of the Loans and to carry out the intent of this Agreement, including the execution of and, if necessary, the recordation of additional

documents including separate endorsements and assignments upon request of Buyer. In addition, Seller hereby irrevocable appoints any officer or employee of Buyer or its assigns its true and lawful attorney to do and perform every act necessary, requisite, proper, or advisable to be done to put Buyer or its assigns in position to enforce the payment of the Loans. At the Buyer's request, the Seller shall execute and deliver to the Buyer one or more separate Limited Powers of Attorney in the form set forth as <u>Exhibit A</u> attached hereto.

**NOTICES.** Any notice, request, consent, waiver or other communication required or permitted under or in connection with this Agreement will be deemed satisfactorily given if it is in writing and is delivered either personally to the addressee thereof, or by prepaid registered or certified U.S. mail (return receipt requested), or by a nationally recognized commercial courier service with next-day delivery charges prepaid, or by facsimile (voice or transmission confirmed), or by any other reasonable means of personal delivery to the party entitled thereto at its respective address set forth below. Any party to this Agreement may change its address or facsimile number for notice purposes by giving notice thereof to the other parties hereto in accordance with this Section, provided that such change shall not be effective until two calendar days after notice of such change. All such notices and other communications will be deemed given and effective (a) if by mail, then upon actual receipt or five calendar days after mailing as provided above (whichever is earlier), or (b) if by facsimile, then upon successful transmittal to such party's designated number, or (c) if by nationally recognized commercial courier service, then upon actual receipt or one business day after delivery to the courier service (whichever is earlier), or (d) if otherwise delivered, then upon actual receipt.

For the purposes of this Agreement, all notices shall be sent to the addresses set forth below:

If to the Seller:

> Vacation Finance/Americor Mortgage, Inc
> 255 East Brown Street
> Birmingham, MI 48009
> Attention:      Bob Waun, Managing Director
> Facsimile:      _____

with copies to:

> Carmel & Carmel PC
> 5301 Washington Avenue NW, Suite 570
> Washington DC 20015
> Attention:      Frank J. Carmel
> Facsimile:      (202) 237-1701

If to the Buyer:

> Lehman Brothers Holdings Inc.
> 1271 Avenue of the Americas
> New York, New York 10020

Attention:    Lonnie Rothbort
Facsimile:    (646) 758-3387

with copies to:

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
New York, New York 10020
Attention:    Joelle Halperin
Facsimile:    (646) 758-3387

and:

Weil, Gotshal & Manges LLP
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Attention:    Richard A. Morrison
Facsimile:    (305) 374-7159

**WAIVERS/CUMULATIVE RIGHTS.**  No course of dealing on the part of either party, its officers or employees, nor any failure or delay by either party with respect to exercising any right, power or privilege under this Agreement shall operate as a waiver thereof.  The parties hereto shall be entitled to all rights and remedies available under applicable law, as well as those available under this Agreement.  All such rights and remedies shall be cumulative and the exercise or partial exercise of any such right or remedy shall not preclude the exercise of any other right or remedy.

**ASSIGNMENT.**  Seller may not assign this Agreement without the prior written consent of Buyer.  A change in the ownership or control, merger or consolidation of Seller shall be considered an assignment for purposes of this Agreement.  Buyer may freely assign this Agreement, and this Agreement shall be binding upon and inure to the benefit of Buyer, its successors and assigns.

**SEVERABILITY.**  If for any reason a portion of this Agreement is found to be illegal or unlawful under applicable law, that portion of this Agreement will be deleted and remainder of this Agreement shall remain in effect.

**GOVERNING LAW.**  This Agreement shall be construed in accordance with and governed by the laws of the State of New York, without regard to any principles of conflicts of law.

**MODIFICATION.**  This Agreement may be modified only by an instrument in writing signed by both Seller and Buyer.

**ATTORNEY'S FEES.**  If Seller or Buyer should breach or fail to perform any provision of this Agreement, the defaulting party shall pay all costs and expenses, including

court costs and reasonable attorney's fees incurred by the other party in the enforcement of this Agreement.

**FIDELITY BOND.** Upon request, Seller will deliver to Buyer a true and correct copy of Seller's fidelity bond and Seller's errors and omissions policy, as currently in effect, the amounts and coverages of both of which will be acceptable to Buyer. Seller shall upon request furnish proof of such coverage at or before the first Settlement Date and, upon request, annually thereafter.

**FINANCIAL STATEMENTS.** Seller shall furnish to Buyer for as long as this Agreement is in effect (i) as soon as available, and in any event within ninety (90) days after the end of each fiscal year, certified financial statements consisting of a balance sheet as of the end of such fiscal year, together with related statements of income or loss and reinvested earnings and changes in financial position for such fiscal year, prepared by independent certified public accountants in accordance with generally accepted accounting principles, and (ii) if available, within ten (10) days after the end of each quarterly period interim internal financial. In addition, Seller shall provide Buyer, from time to time, upon reasonable request and thirty (30) days' notice, any other financial reports or statements reasonably required by Buyer.

**POST-SALE LOAN PAYMENTS AND INQUIRIES.** Seller agrees that it will remit to Buyer, within forty-eight (48) hours after receipt, any payment on a Loan including, without limitations, all payments of principal and interest, late charges, and bad check charges received from an Obligor on or after the Settlement Date for such Loan at the following address: 1271 Avenue of the Americas, 46th Floor, New York, New York 10022 such other address as Buyer may designate. Seller shall remit such payment via an overnight delivery service. Seller agrees to forward to Buyer promptly all inquiries, communications and remittances received by Seller with respect to any Loan purchased by Buyer, and to reimburse Buyer upon written demand for any and all losses Buyer may reasonably suffer as a result of Seller's failure to do so.

**TRANSFER OF SERVICING RIGHTS AND PMI.** Seller shall take any and all actions as may be requested by Buyer in order to consummate the transfer from Seller to Buyer of servicing rights for each Loan, including, without limitation, providing  notices to any private mortgage insurance companies.

**DELIVERY OF MORTGAGE DOCUMENT.** With respect to each Loan, the Seller shall cause by no later than ninety (90) days after the Settlement Date for such Loan, the original recorded Mortgage and title policy and, if applicable, the prior assignment of mortgage to be delivered to Buyer.

**LOCATION OF MORTGAGED PROPERTY.** The loans to be purchased pursuant to the terms of this Agreement shall be secured by real property located in the State of Florida.

**LENDER'S OBLIGATIONS.** Seller shall, upon reasonable notice from Buyer, provide Buyer with access to Seller's operations, records, and documentation to determine

Seller's compliance and monitoring with representations, warranties and covenants made by Seller herein and with the Sales Criteria. The parties shall agree on a mutually convenient date for each such audit within fifteen (15) days of Seller's receipt of an audit notice. The audit will be conducted within 45 days of receipt of audit notice. If the parties are unable to do so, then Buyer may, in its sole discretion, suspend the purchase of loans until the parties reach agreement on the audit date. Annually, Seller shall, within forty-five (45) days after receipt, furnish Buyer with a copy of its state broker license (or equivalent, if applicable) for each state in which business is or will be conducted with Buyer.

**SURVIVAL OF REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS.** All representations, warranties and indemnifications under this Agreement shall survive the termination of this Agreement and shall be deemed given and shall not be diminished by any or all underwriting or processing of information, data or documents or the omission to underwrite or process said information, data or document supplied to Buyer under this Agreement.

**CONSTRUCTION.** This Agreement shall not be construed more strictly against Buyer merely by virtue of the fact that the same has been prepared by Buyer or its counsel, it being recognized that Seller has had the opportunity to consult with counsel concerning same. Seller acknowledges and waives any claim contesting the existence and the adequacy of the consideration given by Buyer in entering into this Agreement.

**JURISDICTION.**

(1)     Commencing on September 15, 2008, the Buyer and certain of its affiliates filed voluntary petitions for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (Manhattan Division) (the "Bankruptcy Court") which are being jointly administered under Case No. 08-13555 (collectively, the "Bankruptcy Case"). The Buyer is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The parties hereto agree that no action relating to the interpretation and enforcement of this Agreement may be brought in a court that is not located within the State of New York. To the maximum extent permissible by law, the parties hereto expressly consent and submit to the exclusive jurisdiction of the Bankruptcy Court over such actions. Each of the parties hereto agrees that a final judgment in any such action shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing in this Agreement shall affect any right that the Buyer, Seller or any other party may otherwise have to bring any action or proceeding to enforce any Loan or any of the documents, instruments or agreements evidencing or securing any Loan or otherwise relating to any Loan against any Obligor or its respective properties in the courts of any jurisdiction.

(2)     Each party to this Agreement hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (A) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or any document executed pursuant hereto in any court referred to in

paragraph (1) of this subsection; and (B) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(3)    Each party to this Agreement irrevocably consents to service of process in the manner provided for notices in Section 20 hereof.  Nothing in this Agreement will affect the right of any party to this Agreement to serve process in any other manner permitted by law.

**WAIVER OF JURY TRIAL.  EACH OF THE PARTIES HERETO HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY OF THE DOCUMENTS, INSTRUMENTS OR AGREEMENTS EXECUTED IN CONNECTION  HEREWITH, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR ANY OF THE DOCUMENTS, INSTRUMENTS OR AGREEMENTS EXECUTED IN CONNECTION HEREWITH OR IN ANY WAY RELATING TO ORIGINATION, OFFERING, MAKING OR SALE OF LOANS (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT OR ANY OF THE DOCUMENTS, INSTRUMENTS OR AGREEMENTS EXECUTED IN CONNECTION HEREWITH AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT OR ANY OF THE DOCUMENTS, INSTRUMENTS OR AGREEMENTS EXECUTED IN CONNECTION HEREWITH WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE).  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  EACH OF THE PARTIES HERETO ARE HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.  THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.**

IN WITNESS WHEREOF, this Agreement has been executed as of the date set forth above.

SELLER:

VACATION FINANCE/AMERICOR MORTGAGE

By: _____

Name: _____

Title: _____


BUYER:

LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation, as debtor and debtor in possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York


By: _____

Name: _____

Title: _____

**EXHIBIT A**

**Limited Power of Attorney**

VACATION FINANCE/AMERICOR MORTGAGE ("SELLER"), a _____ whose address is _____ through the duly authorized representative whose signature appears below makes and appoints and by this Limited Power of Attorney does make, constitute and appoint Lehman Brothers Holdings Inc. (hereinafter referred to as "LBHI"), a Delaware corporation, whose address is 1271 Avenue of the Americas, 46th Floor, New York, New York 10022, the true and lawful attorney-in-fact for SELLER; and in SELLER's name and stead to execute, by the signature of any authorized LBHI employee or agent, any and all documents for the purpose of assigning and transferring to LBHI any and all mortgages, deeds of trust, security instruments, and the related notes, including, but not limited to the assignments of mortgages, deeds of trust, and security instruments; the note endorsements, affidavit and agreements, for any mortgage loan transaction closed and funded in SELLER's name or transferred and assigned to SELLER and committed to LBHI by SELLER under the Mortgage Loan Purchase Agreement between SELLER and LBHI giving and granting unto the said attorney-in-fact full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done, and to make, correct, amend, endorse, accept, or deliver all agreements and instruments; as fully, to all intents and purposes, as SELLER might or could do if present at the doing thereof through one of its authorized representatives, with full power of substitution and revocation. SELLER hereby ratifies and confirms all that the said attorney-in-fact shall lawfully do or cause to be done by virtue of this Limited Power of Attorney. SELLER may only revoke this Limited Power of Attorney in writing and only upon the expiration of one hundred eighty (180) days from the effective date of the termination of the Mortgage Loan Purchase Agreement in accordance with the terms thereof, and this Limited Power of Attorney shall be deemed to be a power coupled with an interest for such purpose.

IN TESTIMONY WHEREOF, I have hereto set my hand and seal this _____ day of April, 2009.

SELLER: _____
(Full legal name of SELLER entity and, if applicable, full name of any and all d/b/a entities)

BY: _____
(Signature of authorized officer of SELLER)

_____
(Printed name of authorized officer)

_____
(Title of authorized officer)

## ACKNOWLEDGMENT/CORPORATE

STATE OF _____        )

                                     ) ss

COUNTY OF _____        )

      On this _____ day of April, 2009, before me appeared _____, to me personally known, who, being by me duly sworn, did say that (s)he resides at _____, that (s)he is the _____ of _____, a _____, the **[corporation]** described in and which executed the foregoing instrument, and that (s)he signed his/her name thereto by order of the Board of Directors of such corporation.

      [Stamp]

      _____

      Notary Public

      My Commission Expires: _____

**This instrument was drafted by and after recording return to:**

Richard A. Morrison, Esq.

Weil, Gotshal & Manges LLP

1395 Brickell Avenue, Suite 1200

Miami, FL 33131

**EXHIBIT B**

**Lehman Brothers Holdings Inc. Fair Lending Policy Statement**

Lehman Brothers Holdings Inc. ("LBHI") is committed to lending fairness and fair lending practices.

The *Equal Credit Opportunity Act* and the *Fair Housing Act* expressly prohibit discrimination on the basis of race, color, religion, national origin, marital status, age (provided the applicant is of legal age to have the capacity to enter into a binding legal contract), sex, disability, familial status, receipt of public assistance, or the exercise in good faith of any right under the *Consumer Credit Protection Act* in any aspect of a loan transaction. The aforementioned are commonly known as prohibited bases.

State and federal laws governing unfair and deceptive trade practices prohibit banks from engaging in practices which misrepresent or omit information that causes customers to be mislead as to the true nature of a product or service, or which cause substantial injury to a consumer.

All credit products of LBHI shall be available to all applicants on a consistent and fair basis, provided the applicants meet our guidelines of safe and sound lending along with applicable credit policies and business focuses.

No applicant shall be discouraged on a prohibited basis from applying for loan products offered by LBHI.

LBHI shall comply with all fair lending laws and regulations including the *Equal Credit Opportunity Act,* the *Home Mortgage Disclosure Act*, the *Fair Housing Act*, and the *Community Reinvestment Act.*

LBHI, or any employee thereof, shall not discriminate against any credit request on the basis of race, color, religion, national origin, marital status, age (provided the applicant is of legal age to have the capacity to enter into a binding legal contract), sex, sexual orientation, disability, familial status, receipt of public assistance, or if the individual has exercised in good faith any right under the *Consumer Credit Protection Act*, or on any other prohibited basis.

LBHI shall comply with all laws and regulations prohibiting unfair and deceptive trade practices by adopting policies and procedures to ensure that information provided to customers and potential customers is complete and accurate; to clearly and accurately disclose all material product or service features; and to maintain complaint processes to ensure that any complaints alleging unfair or deceptive practices are researched and adequately addressed.

LBHI shall have such policies, underwriting standards, training, review, and compliance procedures as may be required to ensure compliance with both the technical requirements and spirit of this Fair Lending Policy Statement.

## EXHIBIT C

## Sales Criteria

**Primary Credit Criteria:**

All Loans shall satisfy the following criteria:

- Loans at maximum 70% loan-to-contract price (LTC)
- 680 minimum mid FICO score – seeking portfolio average of 700
- Debt-to-income ratio (DTI) can not exceed 40%, no allowance will be given for property rental income in DTI calculation
- Borrower must prove intent to use the property as primary or pay up to a 50-basis-point premium for non-primary resident status
- Document and sourced funds required for down payment plus 12 months PITI reserve
- 12 month PITI liquid reserves post closing
- Fannie Mae DU automated underwriting system must score "Accept" or higher (in addition to manual underwriting methods)
- Third party Purchase Contracts are not acceptable (no flipping)
- Borrower must be a US citizen or Permanent Resident Alien
- Foreign Nationals require 50% loan-to-value, additional conditions may apply
- Income verified with 4506T prior to closing
- No previous foreclosures or bankruptcy permitted in last 36 months

**Term and Rate Options**

- 30 year fixed rate
- 15 year fixed rate
- 10/1 ARM (10 yrs fixed rate, 1 yr ARM for term of 30 yrs)

**Suggest Rate**

Interest Rate shall be calculated off of the base conforming rate by adding premiums for condo, jumbo and non-residency status, as follows:



**EXHIBIT C**
**(continued)**

**Sales Criteria**

# <u>EXHIBIT B</u>

**(Proposed Order – Docket No. 3571)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
                                                        :
In re                                                   :        **Chapter 11 Case No.**
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,           :        **08-13555 (JMP)**
                                                        :
                        **Debtors.**                    :        **(Jointly Administered)**
                                                        :
                                                        :
--------------------------------------------------------------------x

## ORDER PURSUANT TO SECTIONS
### 105 AND 363 OF THE BANKRUPTCY CODE AND
### FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019
### AUTHORIZING AND APPROVING LOAN PAY-OFF AGREEMENTS

Upon the motion, dated May 14, 2009 (the "Motion"),[1] of Lehman Brothers

Holdings Inc. ("LBHI"), Lehman Commercial Paper, Inc. ("LCPI") and their affiliated debtors in

the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105 and

363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for approval of the compromise (the

"Compromise") among (a) 44th Street Partners I LLC, 44th Street Partners II LLC, Patrick

Thompson, Sammy Isamu Suzuki, 44th Street Holdings LLC, Suzuki Group LLC, TWP Capital

Holdings I LLC (collectively, the "Loft 44 Borrower Parties"), LBHI, LCPI and Lehman Re Ltd.

("Lehman Re") pursuant to an agreement substantially consistent with the draft Loft 44 Loan

Pay-Off Agreement annexed hereto as Exhibit A, (b) LeMadre Mezz LLC, Benjamin Shaoul,

and Marc Ravner (collectively, the "LeMadre Senior Mezzanine Borrower Parties"), LBHI,

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the
Motion.

LCPI and Lehman Re pursuant to an agreement substantially consistent with the draft LeMadre

Senior Mezzanine Loan Pay-Off Agreement annexed hereto as Exhibit B, and (c) M&B Mezz

LLC, Benjamin Shaoul, Marc Ravner and M&B Realty Development LLC (collectively, the

"LeMadre Junior Mezzanine Borrower Parties" and together with the LeMadre Senior

Mezzanine Borrower Parties, the "LeMadre Borrower Parties"), LBHI, LCPI and Lehman Re

pursuant to an agreement substantially consistent with the draft LeMadre Junior Mezzanine Loan

Pay-Off Agreement annexed hereto as Exhibit C (collectively, the "Loan Pay-Off Agreements"),

all as more particularly described in the Motion; and the Court having jurisdiction to consider the

Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the

Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York

Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the Motion having been provided in accordance with the

procedures set forth in the amended order entered February 13, 2009 governing case

management and administrative procedures [Docket No. 2837] to (i) the United States Trustee

for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured

Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v)

the United States Attorney for the Southern District of New York; (vi) counsel to the Loft 44

Borrower Parties; (vii) counsel to the LeMadre Borrower Parties; (viii) counsel to Lehman Re;

and (ix) all parties who have requested notice in these chapter 11 cases, and it appearing that no

other or further notice need be provided; and the Court having found and determined that the

relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and

all parties in interest and that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to sections 105 and 363(b) of the Bankruptcy Code and

Bankruptcy Rule 9019, LBHI and LCPI are duly authorized to (i) enter into the Compromise

pursuant to agreements substantially similar to the Loan Pay-Off Agreements and to consummate

all of the transactions contemplated thereby and (ii) execute and deliver such assignments,

conveyances, and other documents, and instruments of transfer and to take such other actions as

may be reasonably necessary to consummate the Compromise and (iii) consent to any

amendment, restatement, waiver, supplement or other modification of any of the documents

contemplated under the LoanPay-Off Agreements, it being understood that any actions described

in this paragraph taken by the Debtors or their affiliates may be taken without the necessity of (x)

any further court proceedings or approval or (y) any consent of any third party, and shall be

conclusive and binding in all respects on all parties in interest in these cases; and it is further

ORDERED that this Order shall be effective and enforceable immediately upon

entry and its provisions shall be self-executing and shall not be stayed pursuant to Bankruptcy

Rule 6004; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.

Dated: June __, 2009
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**
Draft Loft 44 Loan Pay-Off Agreement

## LOAN PAY-OFF AGREEMENT
## (44TH STREET)

THIS LOAN PAY-OFF AGREEMENT ("**Agreement**") is made as of the [____] day of May, 2009 (the "**Effective Date**"), by and among 44th STREET PARTNERS I LLC, a Delaware limited liability company (in its capacity as the borrower under the Mortgage Loan (as hereinafter defined), the "**Mortgage Borrower**"; and in its capacity as the project owner whose interests were pledged to LBHI pursuant to the Project Owner Pledge (as hereinafter defined), the "**Project Owner**"), 44th STREET PARTNERS II LLC, a Delaware limited liability company ("**Mezzanine Borrower**"), PATRICK THOMPSON, an individual (in his capacity as a guarantor under the Mortgage Loan, the "**Thompson Mortgage Guarantor**" and in his capacity as a guarantor under the Mezzanine Loan (as hereinafter defined), the "**Mezzanine Guarantor**" and in his capacity as a pledgor under the Patrick Pledge (as hereinafter defined), the "**Patrick Pledgor**"), SAMMY ISAMU SUZUKI, an individual (in his capacity as a guarantor under the Mortgage Loan, the "**Suzuki Mortgage Guarantor**", SUZUKI GROUP LLC, a New York limited liability company, in its capacity as a pledgor under that certain Pledge and Security Agreement (Interests in Holdings) dated as of August 8, 2006, the "**Suzuki Group Pledgor**"; Thompson Mortgage Guarantor, Suzuki Mortgage Guarantor, the Suzuki Group Pledgor, and Mezzanine Guarantor are collectively referred to herein as "**Guarantors**"), 44TH STREET HOLDINGS LLC, a Delaware limited liability company ("**Holdings**") and TWP CAPITAL HOLDINGS I, LLC, a New York limited liability company ("**TWP**"; and together with Mezzanine Borrower, Patrick Pledgor, and Holdings, the "**Pledgors**"), LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**"), LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**"), and LEHMAN RE LTD., a Bermuda corporation ("**Lehman Re**"). Mortgage Borrower, Thompson Mortgage Guarantor, Suzuki Mortgage Guarantor and Suzuki Group Pledgor are hereinafter collectively referred to as the '**Mortgage Borrower Parties**". Mezzanine Borrower, Mezzanine Guarantor, Project Owner, Holdings, Suzuki Group Pledgor, Patrick Pledgor and TWP are hereinafter collectively referred to from time to time as the "**Mezzanine Borrower Parties**". Mortgage Borrower Parties and Mezzanine Borrower Parties are hereinafter collectively referred to as the "**Borrower Parties**". LBHI, LCPI and Lehman Re are hereinafter collectively referred to from time to time as "**Lender Parties**".

## R E C I T A L S

A. Subject to the terms and conditions of (i) that certain Master Credit Agreement, dated as of August 8, 2006, by and between Mortgage Borrower and LBHI, as amended by that certain First Amendment to Master Credit Agreement and Ratification of Environmental Indemnity and Guaranties, dated as of June 11, 2007, by and among, inter alia, Mortgage Borrower, LBHI, Thompson Mortgage Guarantor and Suzuki Mortgage Guarantor, and further amended pursuant to that certain Omnibus Amendment to Senior Loan Documents and Ratification of Environmental Indemnity and Guaranties, dated as of May 29, 2008, made by and among LBHI, Mortgage Borrower, and Thompson Mortgage Guarantor (the "**Mortgage Loan Omnibus Amendment**") (the "**Land Loan Agreement**"), and further amended by that certain Extension Agreement, dated as of August 19, 2008, by and among LBHI, Mortgage

Borrower, and Thompson Mortgage Guarantor (the "**Extension Agreement**"), (ii) that certain Building Loan Agreement, dated as of August 8, 2006, by and between Mortgage Borrower and LBHI, as amended by the Mortgage Loan Omnibus Amendment and the Extension Agreement (the "**Building Loan Agreement**") and (iii) that certain Project Loan Agreement, dated as of August 8, 2006, by and between Mortgage Borrower and LBHI, as amended by the Mortgage Loan Omnibus Amendment and the Extension Agreement (the "**Project Loan Agreement**"; the Land Loan Agreement, the Building Loan Agreement and the Project Loan Agreement are hereinafter collectively referred to from time to time as the "**Mortgage Loan Agreement**"), LBHI made mortgage loans to Mortgage Borrower in the aggregate amount of up to $16,650,000.00 (collectively, the "**Mortgage Loan**").

B.      The Mortgage Loan is evidenced by (i) that certain Amended, Restated and Consolidated Land Loan Promissory Note, dated August 8, 2006, in the original principal amount of up to $4,363,650.34, (ii) that certain Amended, Restated and Consolidated Building Loan Promissory Note, dated August 8, 2006, in the original principal amount of up to $10,345,866.01, and (iii) that certain Project Loan Promissory Note, dated August 8, 2006, in the original principal amount of up to $1,940,483.65, each given by Mortgage Borrower to LBHI and evidencing Advances (as defined in the Mortgage Loan Agreement) under the Mortgage Loan (collectively, the "**Mortgage Note**").

C.      The Mortgage Loan is secured by, among other things, (i) that certain Amended, Restated and Consolidated Land Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement, dated as of August 8, 2006, given by Mortgage Borrower to LBHI (the "**Land Loan Mortgage**") encumbering certain real property located in the City, County and State of New York as more particularly described on Exhibit A attached hereto and made a part hereof (the "**Premises**"), (ii) that certain Absolute Assignment of Leases and Rents, dated as of August 8, 2006, given by Mortgage Borrower to LBHI (the "**Assignment of Leases and Rents**", (iii) that certain Amended, Restated and Consolidated Building Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement, dated as of August 8, 2006 given by Mortgage Borrower to LBHI encumbering the Premises (the "**Building Loan Mortgage**"**),** (iv) that certain Project Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement, dated as of August 8, 2006 given by Mortgage Borrower to LBHI encumbering the Premises (the "**Project Loan Mortgage**"; the Land Loan Mortgage, the Building Loan Mortgage and the Project Loan Mortgage, together with all other documents securing the Mortgage Loan, collectively, the "**Security Instruments**").

D.      Certain of Mortgage Borrower's obligations under the Mortgage Loan are guaranteed by the Thompson Mortgage Guarantor and the Suzuki Mortgage Guarantor pursuant to (1) that certain Guaranty of Recourse Obligations, dated as of August 8, 2006, in favor of LBHI (the "**Recourse Guaranty**"), (2) that certain Guaranty of Payment and Completion, dated as of August 8, 2006, in favor of LBHI (the "**Payment and Completion Guaranty**") and (3) that certain Environmental and Hazardous Substances Indemnification Agreement, dated as of August 8, 2006, in favor of LBHI (the "**Environmental Indemnity**").

E.       The Mortgage Loan Agreement, the Mortgage Note, the Security Instruments, the Recourse Guaranty, the Payment and Completion Guaranty, the Environmental Indemnity and the other documents and instruments executed by Mortgage Borrower, the Thompson Mortgage Guarantor and/or the Suzuki Mortgage Guarantor evidencing, securing or otherwise relating to the Mortgage Loan are hereinafter collectively referred to as the "**Mortgage Loan Documents**."  A complete list of the Mortgage Loan Documents is set forth on Exhibit B-1 attached hereto and incorporated herein by reference.

F.       Subject to the terms and conditions of that certain Mezzanine Construction Loan Agreement, dated August 8, 2006, by and between Mezzanine Borrower and LBHI (the "**Loan Agreement**"), as amended by that certain Omnibus Amendment to Mezzanine Loan Documents and Ratification of Environmental Indemnity and Guaranties, dated as of May 29, 2008 (the "**Omnibus Amendment**"), and further amended by that certain Extension Agreement, dated as of August 19, 2008 (the "**Mezz Extension Agreement**"; the Omnibus Amendment, together with the Loan Agreement and the Mezz Extension Agreement, collectively, the "**Mezzanine Loan Agreement**"), LBHI made a loan to Mezzanine Borrower in the amount of up to $7,782,000.00 (the "**Mezzanine Loan**").

G.       The Mezzanine Loan is evidenced by that certain Amended, Restated and Increased Secured Promissory Note dated as of May 29, 2008 in the original principal amount of $7,782,000.00 given by Mezzanine Borrower to LBHI and evidencing Advances (as defined in the Mezzanine Loan Agreement) under the Mezzanine Loan (the "**Mezzanine Note**").

H.       The Mezzanine Loan is secured by, among other things, (i) that certain Pledge and Security Agreement (Interests in Project Owner), dated as of August 8, 2006, given by Mezzanine Borrower to LBHI constituting a perfected pledge and assignment of Mezzanine Borrower's 100% membership interest in Project Owner, together with the Consent of Project Owner thereto and the Control Agreement thereto (the "**Project Owner Pledge**"); (ii) that certain Pledge and Security Agreement (Interests in Borrower), dated as of August 8, 2006, given by Holdings to LBHI constituting a perfected pledge and assignment of Holdings' 100% membership interest in Mezzanine Borrower, together with the Consent of Mezzanine Borrower thereto and the Control Agreement thereto (the "**Holdings Pledge**"); (iii) that certain Amended and Restated  Pledge and Security Agreement (Interests in Holdings), dated as of May 29, 2008, given by TWP to LBHI, constituting a perfected pledge and assignment of TWP's 100% membership interest in Holdings, together with the Consent of Holdings thereto and the Control Agreement thereto (the "**TWP Pledge**"); and (iv) that certain Pledge and Security Agreement (Interests in TWP Capital Holdings I, LLC), dated as of August 8, 2006, given by Patrick Pledgor to LBHI constituting a perfected pledge and assignment of Patrick Pledgor's 100% membership interest in TWP, together with the Consent of TWP thereto and the Control Agreement thereto (the "**Patrick Pledge**").  The Project Owner Pledge, the Holdings Pledge, the TWP Pledge and the Patrick Pledge are collectively hereinafter referred to as the "**Pledge Agreements**".

I.       Certain of Mezzanine Borrower's obligations under the Mezzanine Loan are guaranteed by Mezzanine Guarantor pursuant to (1) that certain Guaranty of Recourse Obligations, dated as of August 8, 2006, in favor of LBHI (the "**Mezz Recourse Guaranty**"), (2) that certain Guaranty of Payment and Completion, dated as of August 8, 2006, in favor of

LBHI (the "**Mezz Payment and Completion Guaranty**") and (3) that certain Environmental and Hazardous Substance Indemnification Agreement, dated as of August 8, 2006, in favor of LBHI (the "**Mezz Environmental Indemnity**"; and together with the Environmental Indemnity, the "**Environmental Indemnities**").

J.    The Mezzanine Loan Agreement, the Mezzanine Note, the Pledge Agreements, the Mezz Recourse Guaranty, the Mezz Payment and Completion Guaranty, the Mezz Environmental Indemnity, and the other documents and instruments executed by Mezzanine Borrower and/or the Mezzanine Guarantor evidencing, securing or otherwise relating to the Mezzanine Loan are hereinafter collectively referred to as the "**Mezzanine Loan Documents**." A complete list of the Mezzanine Loan Documents is set forth on Exhibit B-2 attached hereto and incorporated herein by reference.

K.    Pursuant to the terms of that certain Master Repurchase Agreement dated as of July 9, 1999 (the "**Repurchase Agreement**"; and together with any and all documents executed and/or delivered in connection with the Repurchase Agreement, the "**Repo Documents**") by and among Lehman Re, LCPI and Lehman Brothers Inc., Lehman Re and LCPI entered into certain agreements with respect to certain loan and other assets originated by LBHI and/or certain affiliates of LBHI, including the Mortgage Loan.

L.    Lender Parties advise that they have had certain disputes regarding the ownership status of the Mortgage Loan and, subject to Paragraph 12(T) hereof, have resolved such disputes as evidenced by their agreements herein.

M.    Subject to obtaining approval by the U.S. Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") of this Agreement and the terms hereof, including Paragraph 12(T) hereof, Lender Parties have agreed to accept the Payoff Consideration as full repayment of the Mortgage Loan and LBHI and Mezzanine Borrower Parties have agreed to terminate the Mezzanine Loan, including any obligations of LBHI, if any, to provide additional funding thereunder, subject to the terms and provisions of this Agreement.

O.    Initially capitalized terms used but not defined herein shall have the meanings set forth in the Mortgage Loan Agreement and, if not defined therein, in the Mezzanine Loan Agreement.

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower Parties and Lender Parties hereby agree as follows:

## **Repayment of Mortgage Loan and the Mezzanine Loan.**

***Amount of Repayment.** LBHI and Mezzanine Borrower Parties hereby terminate the Mezzanine Loan and all of the Mezzanine Loan Documents, including any obligations of LBHI thereunder, if any, to provide additional funding, and Lender Parties shall accept, in full repayment of the Mortgage Loan (including principal, interest and all other amounts payable by Mortgage Borrower under the Mortgage Loan Documents) the*

*following consideration (the "<u>Payoff Consideration</u>") payable as follows: (i) on the Closing Date (as hereinafter defined), the Borrower Parties shall pay to or at the direction of Lehman Re the sum of TEN MILLION AND 00/100 DOLLARS ($10,000,000.00) (the "<u>Payoff Amount</u>") and (ii) Mortgage Borrower shall pay to or at the direction of the Lehman Re the Additional Principal Payment (as defined in <u>Exhibit C</u>) in accordance with the provisions of <u>Exhibit C</u> attached hereto and incorporated herein by reference. It is expressly understood and agreed that the obligation to pay the Additional Principal Interest Payment shall survive the Close of Escrow (as hereinafter defined).*

<u>*Manner of Payment.*</u>  *The Payoff Amount shall be paid as follows:*

Borrower shall deposit the Payoff Amount and the Closing Costs (as hereinafter defined) with [_____] ("**Escrow Holder**") at least one (1) Business Day prior to the Closing Date by wire transfer or other immediately available funds.

All sums required to be delivered by Borrower Parties hereunder on or before the Closing Date shall be delivered by wire transfer or in other immediately available funds.

**<u>Escrow</u>.    This Agreement shall constitute both an agreement between the Lender Parties and the Borrower Parties and escrow instructions to Escrow Holder.  Lender Parties and Borrower Parties have established an escrow ("<u>Escrow</u>") with Escrow Holder by delivery to Escrow Holder of a fully-executed copy of this Agreement.  Any and all amounts delivered to the Escrow Holder by the Borrower Parties pursuant to the terms of this Agreement (collectively, the "<u>Escrowed Funds</u>") as well as all documents received by the Escrow Holder pursuant to this Agreement (collectively, "<u>Escrowed Documents</u>") shall be held by Escrow Holder in escrow in accordance with the provisions of <u>Exhibit D</u> attached hereto and incorporated herein by reference.  Escrow Holder has executed this Agreement for the sole and exclusive purpose of evidencing its agreement to the provisions of Paragraphs 2, 3, 4, and 5 and <u>Exhibit D</u> attached hereto.**

*Mortgage Borrower represents and warrants that Borrower's tax identification number is [_____].  Mezzanine Borrower represents and warrants that Mezzanine Borrower's tax identification number is [_____].*

<u>*Close of Escrow*</u>*.  Provided that all conditions precedent to the close of Escrow have been satisfied, Escrow Holder shall close the Escrow ("<u>Close of Escrow</u>") on the date which is 30 days after the date hereof (the "<u>Initially Scheduled Closing Date</u>") or such earlier date agreed upon by Lender Parties and Borrower Parties; <u>provided</u>, <u>however</u>, that Borrower Parties, on written notice to Lender Parties, shall have the one-time right given at any time on or before the Initially Scheduled Closing Date, to adjourn the Close of Escrow to a date (such adjourned date being referred to herein as the "<u>Rescheduled Closing Date</u>"), not later than 30 days from the Initially Scheduled Closing Date (such Initially Scheduled Closing Date or, if Borrower Parties elect to adjourn the Close of Escrow as hereinabove provided, the*

*Rescheduled Closing Date is referred to as the "Closing Date"). If the Escrow is not closed on or before the Closing Date, or if any condition set forth in Paragraph 4A is not satisfied on or before the date set forth therein for the satisfaction of such condition, then Lender Parties shall have the right (in addition to the Lender Parties' rights under the Mortgage Loan Documents and the Mezzanine Loan Documents), by written notice to Borrower Parties and Escrow Holder, to terminate this Agreement and the obligations of the parties hereunder but such termination shall not release the Borrower Parties from liability for any breach of this Agreement occurring prior to the termination of this Agreement. Each of the Borrower Parties acknowledges and agrees that the agreement of Lender Parties to accept the Payoff Consideration contained in Paragraph 1 in full satisfaction of both the Mortgage Loan and the Mezzanine Loan shall be null and void if the Close of Escrow does not occur on or before the Closing Date.*

*Closing Costs. Borrower Parties shall pay for the following fees and expenses (the "Closing Costs"): (i) any and all escrow fees, filing and recording charges, documentary transfer, recording taxes (if any), transfer taxes, and any other similar costs and expenses incurred in connection with the transactions contemplated by this Agreement; and (ii) Lender Parties' attorneys' fees of Cadwalader, Wickersham & Taft, LLP only incurred in connection with the preparation and negotiation of all documentation for, and the consummation of, the transactions contemplated by this Agreement.*

**Deliveries to Escrow. The Borrower Parties and Lender Parties shall deliver or cause to be delivered to Escrow Holder the following items at least one (1) Business Day prior to the Closing Date:**

*By Borrower Parties.*

**Borrower Parties shall deliver or cause to be delivered the sum of (x) the Payoff Amount, (ii) the Closing Costs and (iii) all other amounts to be paid by Borrower Parties hereunder by wire transfer to the Escrow Holder but expressly excluding the Additional Principal Payment which shall be payable by Mortgage Borrower in accordance with the provisions of Exhibit C attached hereto and incorporated herein by reference.**

**the Borrower Parties shall deliver to the Escrow Holder three (3) duly executed and acknowledged duplicate originals of each of the releases (each, a "Release") in the forms attached hereto as Exhibit E-1 and Exhibit E-2, as appropriate.**

*By Lender Parties. The Lender Parties shall deliver to Escrow Holder (i) one original loan payoff letter with respect to each of the Mortgage Loan and the Mezzanine Loan (collectively, the "Loan Payoff Letter") stating that upon the Close of Escrow and receipt by Lender Parties of the Payoff Amount and all other amounts to be paid by Borrower Parties hereunder, but subject to the terms and conditions of this Agreement, the lien of the Pledge Agreements will be automatically released and the Borrower Parties shall be authorized to file terminations of any and all UCC financing statements in favor of Lender Parties in*

*connection with the Mezzanine Loan, (ii) the original Mezzanine Note with an instruction to Escrow Holder to mark such original Mezzanine Note "cancelled" upon the Close of Escrow, and (iii) the original Mortgage Note with an instruction to Escrow Holder to mark such original Mortgage Note "cancelled" upon the Close of Escrow and termination of the Mortgage Loan Documents or, in the alternative, an executed allonge to the Mortgage Note, together with assignments of the Mortgage Loan Documents (without recourse and without representation or warranty of any kind or nature), in form reasonably satisfactory to Lender Parties, in favor of Mortgage Borrower or Mortgage Borrower's nominee.*

## Conditions to Close of Escrow.

*Conditions Precedent to Lender Parties' Obligations to Close Escrow. The obligation of Lender Parties to close Escrow shall be subject to the satisfaction of all of the following conditions precedent:*

Borrower Parties' Performance. The Borrower Parties shall have performed, satisfied and complied with all covenants, agreements and conditions (including the timely delivery of funds and documents) required by this Agreement, the Mortgage Loan Documents and the Mezzanine Loan Documents to be performed or complied with by the Borrower Parties on or before the Closing Date, and the representations and warranties of the Borrower Parties set forth in Paragraph 8 shall be true and correct as of the Effective Date and as of the Closing Date as if made on and as of the Closing Date.

Simultaneous Payoff of the Mortgage Loan and Termination of the Mezzanine Loan. Lehman Re shall have received payment of the Payoff Amount in full satisfaction of all amounts outstanding under the Mortgage Loan simultaneously with Mezzanine Borrower Parties and LBHI terminating the Mezzanine Loan, including any obligations for additional funding by LBHI, if any, thereunder.

Simultaneous or Prior Consummation of Certain Other Loan Payoff Agreements. Lender Parties have previously consummated or are consummating simultaneously with the consummation of the transactions contemplated under this Agreement (i) the transactions contemplated under that certain Loan Payoff Agreement (M&B Senior Mezzanine Loan) by and among Lemadre Mezz LLC, Benjamin Schaoul, Marc Ravner and Lender Parties, and (ii) the transactions contemplated under that certain Loan Payoff Agreement (M&B Junior Mezzanine Loan) by and among M&B Mezz LLC, M&B Realty Development LLC, Benjamin Schaoul, Marc Ravner and Lender Parties and Lender Parties have received payment in full of the Payoff Amount (as such term is defined in each of the agreements set forth in (i) and (ii) above) thereunder.

*Conditions Precedent to Borrower Parties' Obligation. The obligation of the Borrower Parties to close Escrow shall be subject to Lender Parties performing, satisfying and complying with all covenants, agreements and conditions required by this Agreement to be performed or complied with by Lender Parties hereunder on or before the Closing Date.*

**Close of Escrow**.  **At the Close of Escrow, Escrow Holder shall promptly undertake all of the following in the order set forth below:**

*Funds*.  *Disburse the Escrowed Funds as follows:*

Wire funds in the amount of the Payoff Amount to one or more accounts directed in writing by Lehman Re and provided to Escrow Holder by Lehman Re prior to the Close of Escrow.

Wire the Closing Costs payable to or on behalf of Lender Parties in accordance with the joint written instructions of Lender Parties delivered to the Escrow Holder prior to the Close of Escrow.

Wire all other amounts deposited by Borrower Parties with Escrow Holder to pay the amounts owed by Borrower Parties hereunder at the Close of Escrow, which amounts shall be wired to one or more accounts directed in writing by Lehman Re and provided to Escrow Holder by Lehman Re prior to the Close of Escrow.

*Delivery of Documents to Lender Parties*.  *Deliver to each of the Lender Parties one fully executed original of each of the Releases.*

*Delivery of Documents to Mortgage Borrower and Mezzanine Borrower*.  *Deliver to Mortgage Borrower and Mezzanine Borrower (1) the original Loan Payoff Letters, (2) the original Mortgage Note marked "cancelled", (3) the original Mezzanine Note marked "cancelled", and (4) an original Satisfaction of Mortgage and Assignment of Leases and Rents or, in the alternative, at the election of Borrower Parties under Section 3(B) above, documents assigning the Mortgage Loan to Borrower Parties' nominee.*

**Default Under the Mortgage Loan Documents**.    Each of the Mortgage Borrower Parties acknowledges that Mortgage Borrower is currently in default beyond the expiration of all applicable grace or cure periods therefor under the Mortgage Loan Documents, none of the Lender Parties has declared the existence of an Event of Default but rather each of the Lender Parties has reserved all of its rights and remedies with respect to the Mortgage Loan and the Mortgage Loan Documents.

**Default Under the Mezzanine Loan Documents**.    Each of the Mezzanine Borrower Parties acknowledges that Mezzanine Borrower is currently in default beyond the expiration of all applicable grace or cure periods therefor under the Mezzanine Loan Documents, none of the Lender Parties has declared the existence of an Event of Default but rather each of the Lender Parties has reserved all of its rights and remedies with respect to the Mezzanine Loan and the Mezzanine Loan Documents.

**Representations and Warranties**.    As a material inducement to Lender Parties' execution of this Agreement, the Borrower Parties hereby represent and warrant to Lender Parties as follows:

*Consents*.  *Borrower Parties have each obtained all consents and permissions related to the transactions herein contemplated and required under any covenant, agreement, encumbrance, law or regulation.*

*Due Authorization, Execution, and Organization*.  *This Agreement and all agreements, instruments and documents herein provided to be executed by the Borrower Parties are and on the Closing Date will be duly authorized, executed and delivered by and are and will be binding upon the respective Borrower Parties thereto.  Mortgage Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and duly authorized and qualified to do all things required of it under this Agreement.  Mezzanine Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and duly authorized and qualified to do all things required of it under this Agreement.  Project Owner is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and duly authorized and qualified to do all things required of it under this Agreement.  Holdings is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and duly authorized and qualified to do all things required of it under this Agreement.  TWP is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and duly authorized and qualified to do all things required of it under this Agreement.  Each of the Borrower Parties has the capacity and authority to enter into this Agreement and consummate the transactions herein provided and nothing prohibits or restricts the right or ability of any of*

*the Borrower Parties to close the transactions contemplated hereunder and carry out the terms hereof.*

*<u>Value of Project</u>.   In the Borrower Parties' judgment, after subtracting the amount of the Mortgage Loan and the Mezzanine Loan, the fair market value of the Project is greater than the Payoff Consideration.*

*<u>Solvency</u>.   Each of the Borrower Parties is solvent, and will not become insolvent by reason of their entry into this Agreement or the payment of the Payoff Consideration or the other sums required to be paid by Borrower Parties pursuant to this Agreement.*

The provisions of this Paragraph 8 shall survive the Close of Escrow or the termination of this Agreement.

## Release.

*<u>Release</u>.   As further consideration for Lender Parties' execution of this Agreement, each of the Borrower Parties for itself and its respective affiliates, successors and assigns, as of the Effective Date and as of the Closing Date, hereby absolutely and irrevocably waives, releases, and forever discharges each of the Lender Parties and their respective partners, officers, creditors, shareholders, directors, agents, attorneys, servants, contractors, employees, parent and subsidiary corporations and predecessors-in-interest (collectively, the "<u>Released Parties</u>") from any and all claims, rights, demands, actions, suits, causes of actions, damages, counterclaims, defenses, losses, costs, obligations, liabilities and expenses of every kind or nature (collectively, "<u>Claims</u>"), known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen, arising out of or relating directly or indirectly to any circumstances or state of facts pertaining to the Mortgage Loan, the Mezzanine Loan, the Mortgage Loan Documents, the Mezzanine Loan Documents or the Project, including claims related to the actions of Lender Parties or their respective predecessors in administering the Mortgage Loan or the Mezzanine Loan or negotiating the Mortgage Loan Documents or the Mezzanine Loan Documents and claims of lender liability, fraud, duress, illegality, usury, waiver, bad faith, interference in the business of the Borrower Parties, or any nonperformance of any agreement or obligation related thereto, or any statements, representations, acts or omissions, intentional, willful, negligent or innocent, by any of the Released Parties in any way connected with, relating to or affecting, directly or indirectly, the Mortgage Loan, the Mezzanine Loan the Mortgage Loan Documents, the Mezzanine Loan Documents or the Project; <u>provided</u>, <u>however</u>, that the foregoing shall not constitute a release of any of Lender Parties' obligations under this Agreement.*

*<u>Non-Reliance</u>.   Each of the Borrower Parties hereby acknowledges that it has not relied upon any representation of any kind made by Lender Parties in making the foregoing release.*

*<u>No Transfer of Claims</u>.   Each of the Borrower Parties represents and warrants that it has not heretofore assigned, or transferred, or purported to assign or to transfer, to any person or entity, any Claims released hereunder or any portion thereof or interest therein, and*

*each of the Borrower Parties agrees to indemnify, defend and hold the Released Parties harmless from and against any and all such Claims based on or arising out of any such assignment or transfer or purported assignment or transfer.*

      *<u>No Admission of Liability</u>.  It is understood and agreed that this Paragraph 9 shall not be deemed or construed as an admission by Lender Parties of liability of any nature whatsoever arising from or related to the subject of this Paragraph 9.*

      *<u>Advice of Counsel</u>.  Each of the Borrower Parties hereby agrees, represents and warrants that it has had advice of counsel of its own choosing in negotiations for and the preparation of this Agreement, including the foregoing release, that it has read the provisions of this Agreement, including the foregoing release, and that it is fully aware of its contents and legal effect.*

      *<u>Damages and Attorneys' Fees</u>.  Each of the Borrower Parties agrees that if it hereafter commences, joins in, or in any manner seeks, relief through any suit arising out of, based upon, or relating to any of the Claims or in any manner asserts against such Released Parties, or any of them, any of the Claims, then the undersigned will pay to such Released Parties, and each of them, in addition to any other damages caused to such Released Parties thereby, all attorneys' fees incurred by such Released Parties in defending or otherwise responding to said suit or claim.*

      *<u>Survival</u>.  The provisions of this Paragraph 9 shall survive the Close of Escrow or termination of this Agreement.*

## <u>Default</u>.  Any breach by any of the Borrower Parties or any Guarantor of this Agreement that continues after the expiration of any applicable notice or grace period expressly provided for herein shall be an automatic Event of Default under both the Mortgage Loan Agreement and the Mezzanine Loan Agreement.

### <u>Relief from Stay</u>.

      *<u>Agreement</u>.  As additional consideration for Lender Parties' execution of this Agreement, each of the Borrower Parties agrees that:  (i) in the event of a bankruptcy filing by or against it, it shall not reject this Agreement, nor contest any claim or assertion by Lender Parties that this Agreement is binding between the parties, and that valuable consideration has been received by both the Borrower Parties for same; (ii) Lender Parties shall receive immediate relief from the automatic stay provisions of the United States Bankruptcy Code following any bankruptcy petition which any of the Borrower Parties may file or which may be filed against any of the Borrower Parties and that it shall in no event contest a motion to lift the automatic stay filed by Lender Parties; and (iii) any contrary action taken by any of the Borrower Parties with respect to the matters set forth above shall be deemed to be in bad faith and are agreed to constitute violations of Federal Rules of Civil Procedure 11 and Bankruptcy Rule 9011.*

*Functional Equivalent of Chapter 11*.    Each of the Borrower Parties acknowledges that this Agreement is of considerable benefit to it, and represents the functional equivalent of a restructuring of their business under the United States Bankruptcy Code because, among other things, (i) Borrower Parties have received forbearances and financial accommodations from Lender Parties; and (ii) Borrower Parties were afforded by Lender Parties an opportunity to cause a sale or refinancing of the Project, all in lieu of a bankruptcy petition, which they elected not to file.  Borrower Parties have thus been provided with a full and fair opportunity to reestablish or reorganize their respective financial stake in the Project, and have elected not to seek a further restructuring of their respective businesses.  Each of the Borrower Parties understands that Lender Parties are entering into this Agreement in reliance on the Borrower Parties' representation that they will not seek a further restructuring of their respective businesses.

## Miscellaneous.

*Survival*.    All warranties, representations, covenants, obligations and agreements contained in this Agreement shall survive the Close of Escrow hereunder.  All warranties and representations shall be effective regardless of any investigation made or which could have been made.

*Further Instruments*.    Each of the Borrower Parties shall, whenever and as often as it shall be requested to do so by Lender Parties, cause to be executed, acknowledged or delivered any and all such further instruments and documents as may be necessary or proper, in the reasonable opinion of Lender Parties, to carry out the intent and purpose of this Agreement.

*Cumulative Remedies*.    No remedy conferred upon a party in this Agreement is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law, in equity or by statute (except as otherwise expressly herein provided).

*No Waiver*.    No waiver by Lender Parties of any breach of this Agreement or of any warranty or representation hereunder by any of the Borrower Parties shall be deemed a waiver of any other breach by the Borrower Parties (whether preceding or succeeding and whether or not of the same or similar nature), and no acceptance of payment or performance by Lender Parties after any breach by the Borrower Parties shall be deemed to be a waiver of any breach of this Agreement or of any representation or warranty hereunder by the Borrower Parties, whether or not Lender Parties know of such breach at the time it accepts such payment or performance.  No failure or delay by Lender Parties to exercise any right it may have by reason of the default of any of the Borrower Parties shall operate as a waiver of default or modification of the Mortgage Loan, the Mezzanine Loan, the Mortgage Loan Documents, the Mezzanine Loan Documents or this Agreement or shall prevent the exercise of any right by Lender Parties.

*Governing Law*.    THIS AGREEMENT WAS NEGOTIATED IN PART IN THE STATE OF NEW YORK, AND THE MORTGAGE LOAN AND THE MEZZANINE LOAN

*WERE MADE BY LENDER PARTIES FROM THE STATE OF NEW YORK, AND THE PROCEEDS OF THE MORTGAGE LOAN AND THE MEZZANINE LOAN WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE LENDER PARTIES AND THE BORROWER PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (EXCLUDING APPLICATION OF ANY PRINCIPLE OF CONFLICT OF LAWS WHICH WOULD DIRECT THE APPLICATION OF THE LAW OF ANY OTHER JURISDICTION) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW OR NOT PROHIBITED BY LAW, EACH OF THE BORROWER PARTIES HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT, AND THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO § 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.*

*Jurisdiction.*

Suit by Borrower Parties.  EACH OF THE BORROWER PARTIES HEREBY AGREES THAT ANY LEGAL SUIT, ACTION OR PROCEEDING BROUGHT BY THE BORROWER PARTIES OR ANY AFFILIATE THEREOF AGAINST LENDER PARTIES AND/OR ANY SERVICER OF THE MORTGAGE LOAN OR MEZZANINE LOAN  (OTHER THAN COMPULSORY COUNTERCLAIMS PERMITTED HEREUNDER IN CONNECTION WITH ANY ACTION, SUIT OR PROCEEDING COMMENCED BY LENDER PARTIES IN A JURISDICTION OUTSIDE OF NEW YORK) ARISING OUT OF OR RELATING TO THE MORTGAGE LOAN, THE MEZZANINE LOAN, THIS AGREEMENT OR ANY OF THE MORTGAGE LOAN DOCUMENTS OR MEZZANINE LOAN DOCUMENTS OR RELATING TO THE PROJECT SHALL ONLY BE INSTITUTED BY ANY BORROWER PARTY OR ANY AFFILIATE THEREOF IN COURTS OF THE STATE OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK OR THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK. BORROWER PARTIES EACH HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO BRING ANY LEGAL OR EQUITABLE SUIT, ACTION OR PROCEEDING AGAINST LENDER PARTIES AND/OR ANY SERVICER OF THE MORTGAGE LOAN OR MEZZANINE LOAN ARISING OUT OF OR RELATING TO THE MORTGAGE LOAN, THE MEZZANINE LOAN, THIS AGREEMENT OR ANY OF THE MORTGAGE LOAN DOCUMENTS OR MEZZANINE LOAN DOCUMENTS OR RELATING TO THE PROJECT IN ANY OTHER COURT OTHER THAN COURTS OF THE STATE OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK OR THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK.

Suit by Lender Parties.  WITH RESPECT TO ANY CLAIM OR ACTION ARISING HEREUNDER OR UNDER THE MORTGAGE LOAN DOCUMENTS OR THE MEZZANINE LOAN DOCUMENTS, BORROWER PARTIES EACH (1) IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK, (2) AGREES THAT ALL SUCH CLAIMS OR ACTIONS MAY BE HEARD AND DETERMINED IN SUCH COURTS OF THE STATE OF NEW YORK OR, TO THE EXTENT PERMITTED BY LAW, IN SUCH FEDERAL COURT AND (3) IRREVOCABLY WAIVES ANY (a) OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY MORTGAGE LOAN DOCUMENT OR ANY MEZZANINE LOAN DOCUMENT BROUGHT IN ANY SUCH COURT AND (b) ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.  NOTHING IN THIS AGREEMENT WILL BE DEEMED TO PRECLUDE LENDER PARTIES FROM BRINGING AN ACTION OR PROCEEDING WITH RESPECT HERETO IN ANY OTHER JURISDICTION.

Designation of Agent for Service of Process.  BORROWER PARTIES WILL EACH MAINTAIN AN AGENT FOR SERVICE OF PROCESS IN NEW YORK, NEW YORK WITH RESPECT TO THIS AGREEMENT.  BORROWER PARTIES EACH DESIGNATE CORPORATION SERVICE COMPANY, WITH OFFICES ON THE DATE HEREOF AT 1131 AVENUE OF THE AMERICAS, SUITE 3100, NEW YORK, NY 10036-6710, TO RECEIVE FOR AND ON BEHALF OF THE BORROWER PARTIES SERVICE OF PROCESS IN NEW YORK, NEW YORK WITH RESPECT TO THIS AGREEMENT.  BORROWER PARTIES SHALL PROVIDE TO LENDER PARTIES AT LEAST THIRTY (30) DAYS PRIOR WRITTEN NOTICE BEFORE CHANGING SUCH DESIGNATION.  BORROWER PARTIES EACH FURTHER AGREE THAT THE FAILURE OF ITS AGENT FOR SERVICE OF PROCESS TO GIVE IT NOTICE OF ANY SERVICE OF PROCESS WILL NOT IMPAIR OR AFFECT THE VALIDITY OF SUCH SERVICE OR OF ANY JUDGMENT BASED THEREON.   IN ADDITION, BORROWER PARTIES EACH IRREVOCABLY CONSENT TO SERVICE OF PROCESS BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO IT AT ITS ADDRESS GIVEN OR REFERRED TO IN THIS AGREEMENT.

***Waiver of Right to Trial by Jury.  BORROWER PARTIES HEREBY EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY FOR ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS AGREEMENT, THE MORTGAGE LOAN DOCUMENTS OR THE MEZZANINE LOAN DOCUMENTS OR (2) IN ANY WAY RELATING TO THE PROJECT, THE MORTGAGE LOAN, THE MEZZANINE LOAN, THE MORTGAGE LOAN DOCUMENTS, THE MEZZANINE LOAN DOCUMENTS OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER***

*SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND BORROWER PARTIES HEREBY AGREE AND CONSENT THAT ANY OF THEM MAY FILE AN ORIGINAL COUNTERPART OF THIS AGREEMENT OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF ANY RIGHT THEY MIGHT OTHERWISE HAVE TO TRIAL BY JURY.*

*<u>No Third Party Beneficiaries</u>.  Nothing in this Agreement, express or implied, is intended to confer any rights or remedies upon any person, other than the parties hereto and, subject to any restrictions on assignment herein contained, their respective successors and assigns.*

*<u>Amendments</u>.  This Agreement may be amended by written agreement of amendment executed by all parties hereto, but not otherwise.*

*<u>Attorneys' Fees</u>.  If any lawsuit is commenced to enforce any of the terms of this Agreement, the prevailing party will have the right to recover its actual attorneys' fees and costs of suit from the other party (including the value of the in-house counsel services). Without limitation on anything contained in the Mortgage Loan Documents and the Mezzanine Loan Documents, in the event that Lender Parties shall be a party to any legal proceeding instituted in connection with or arising out of the Mortgage Loan, the Mezzanine Loan or this Agreement, Borrower Parties agree to pay to Lender Parties all sums paid or incurred by Lender Parties as costs and expenses in the legal proceedings, together with actual and customary attorneys' fees.  This subparagraph J shall survive the Close of Escrow or termination of this Agreement.*

*<u>Effect on Mortgage Loan Documents and Mezzanine Loan Documents</u>. Neither the provisions of, nor any performance under, this Agreement (including any payments by Borrower Parties under this Agreement) shall amend, modify, supplement, extend, delay, renew, terminate, waive, release or otherwise limit or prejudice Lender Parties' rights and remedies or Borrower Parties' obligations under the Mortgage Loan Documents or Mezzanine Loan Documents (including Lender Parties' right to receive full payment as well as late charges, delinquent interest and all other charges provided for in the Mortgage Loan Documents and Mezzanine Loan Documents).  Notwithstanding the foregoing, if and only if Lender Parties receive the full Payoff Amount and the Close of Escrow occurs, upon the Close of Escrow, the Mezzanine Loan and all of the Mezzanine Loan Documents shall automatically terminate and LBHI shall have no further obligations thereunder, including, without limitation, any additional funding obligations of LBHI, if any, thereunder, and Lender Parties shall be deemed to have agreed not to sue any of the Borrower Parties for any breach of any obligation under the Loan Documents; <u>provided</u>, <u>however</u>, that the foregoing covenant shall in no event extend to the continuing liabilities and obligations of any Borrower Party relating to, arising out of, or in connection with (i) the breach of any representation, warranty, indemnity, covenant or agreement set forth in this Agreement or in any document executed under or in connection with this Agreement, (ii) any indemnities in favor of Lender Parties under any Mortgage Loan Document or Mezzanine Loan Document, including without limitation, any indemnities in the Environmental Indemnities; and (iii) any obligations or*

*liabilities under any Mortgage Loan Document or Mezzanine Loan Document which, pursuant to such documents, are expressly stated to survive the repayment of the Mortgage Loan and/or Mezzanine Loan; and, <u>provided</u>, <u>further</u>, that the covenant by Lender Parties pursuant to this subparagraph shall be void from its inception, and all liabilities and obligations of Borrower Parties under the Loan Documents shall continue in full force and effect as they existed immediately prior to the Effective Date, in the event:*

Any of the Borrower Parties shall take any act or make any claim of rescission of this Agreement or make any other claim which is inconsistent with this Agreement; or

A receiver, liquidator or trustee shall be appointed for any of the Borrower Parties or if any of the Borrower Parties shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law ("<u>Bankruptcy Petition</u>"), shall be filed by or against, consented to, or acquiesced in by, any of the Borrower Parties, or if any proceeding for the dissolution or liquidation of any of the Borrower Parties shall be instituted ("<u>Dissolution Proceeding</u>"); provided, however, to the extent any Bankruptcy Petition or Dissolution Proceeding was involuntary and not consented to, acquiesced by, or filed by any of the Borrower Parties, then the covenant by Lender Parties pursuant to this subparagraph shall only become void if the same has not been dismissed within thirty (30) days of filing thereof. or

A court of competent jurisdiction determines that (or any claim is made by any Borrower Party or any third party in bankruptcy that) the receipt of any funds by any party hereunder constitutes a preference or a fraudulent conveyance, or otherwise sets aside or holds ineffective such receipt of funds.

*<u>No Agreement on Value</u>.  The parties hereto specifically acknowledge and agree that the Payoff Amount does not necessarily reflect the parties' views regarding the value of the Mortgage Loan, the collateral encumbered by the Mortgage Loan, the Mezzanine Loan or the membership interests encumbered by the Mezzanine Loan, and such amount shall not be used as evidence of value in any action or proceeding involving Lender Parties, on the one hand, and Borrower Parties, or any of them, on the other hand.*

*<u>Entire Agreement</u>.  This Agreement contains the entire agreement between the parties respecting the matters herein set forth and supersedes all prior agreements between the parties hereto respecting such matters.*

*<u>Time of the Essence</u>.  Time is of the essence of this Agreement.*

*<u>Severability</u>.  If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.*

*__Notices__.  Any notice which a party is required or may desire to give the other shall be in writing and may be sent by personal delivery or by mail (either (1) by United States registered or certified mail, return receipt requested, postage prepaid, or (2) by Federal Express or similar generally recognized overnight carrier regularly providing proof of delivery), addressed as follows (subject to the right of a party to designate a different address for itself by notice similarly given):*

To Mortgage Borrower:

44th Street Partners I LLC
[_____]
[_____]
Attention:  [_____]

With a copy to:

[_____]
[_____]
[_____]
Attention:  [_____]

To Mezzanine Borrower:

44th Street Partners II LLC
[_____]
[_____]
Attention:  [_____]

With a copy to:

[_____]
[_____]
[_____]
Attention:  [_____]

To Thompson Mortgage Guarantor, Mezzanine Guarantor or Patrick Pledgor:

44th Street Partners II LLC
[_____]
[_____]
Attention:  [_____]

With a copy to:

[_____]
[_____]
[_____]
Attention:  [_____]

To Suzuki  Mortgage Guarantor:

[_____]
[_____]
[_____]
Attention:  [_____]

With a copy to:

[_____]
[_____]
[_____]
Attention:  [_____]


To Holdings:

44th Street Partners II LLC
[_____]
[_____]
Attention:  [_____]

With a copy to:

[_____]
[_____]
[_____]
Attention:  [_____]

To TWP:

44th Street Partners II LLC
[_____]
[_____]
Attention:  [_____]

With a copy to:

[_____]
[_____]
[_____]
Attention:  [_____]


To Lender Parties:

LBHI

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 46th Floor
New York, NY  10020
Attention:  Joelle Halperin
MTS No.:  WE178

With copies to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Attention:  W. Michael Bond, Esq.
Telephone:  (212) 310-8035
Facsimile:  (212) 310-8007

TriMont Real Estate Advisors, Inc.
Monarch Tower
3424 Peachtree Road, N.E.
Suite 2200
Atlanta, GA  30326
Attention:  Karen Mishkin
Ref. No.:  1141304

LCPI

Lehman Commercial Paper Inc.
1271 Avenue of the Americas, 46th Floor
New York, NY  10020
Attention:  Joelle Halperin

With a copy to:

>   Weil, Gotshal & Manges LLP
>   767 Fifth Avenue
>   New York, New York  10153
>   Attention:  W. Michael Bond, Esq.
>   Telephone:  (212) 310-8035
>   Facsimile:  (212) 310-8007

<u>Lehman Re</u>

>   Lehman Re Ltd.
>   c/o D. Geoffrey Hunter
>   Managing Director, Advisory
>   PricewaterhouseCoopers Advisory Limited
>   Dorchester House, 7 Church Street
>   Hamilton HM 11 Bermuda

With copies to:

>   Cadwalader, Wickersham & Taft LLP
>   One World Financial Center
>   New York, New York 10281
>   Attention:  Gregory Petrick, Esq.
>
>   KeyCorp Real Estate Capital Markets, Inc.
>   911 Main Street, Suite 1500
>   Kansas City Missouri 64105
>   Attention:  Bryan Nitcher

ESCROW HOLDER:

>   [_____]
>   [_____]
>   [_____]
>   Attention:  [_____]

Any notice so given by mail shall be deemed to have been given as of the date of delivery (whether accepted or refused) established by U.S. Post Office return receipt or the overnight carrier's proof of delivery, as the case may be.  Any such notice not so given shall be deemed given upon receipt of the same by the party to whom the same is to be given.

> ***<u>Confidentiality</u>.  Each of the Borrower Parties agrees that it shall each keep the terms of this Agreement strictly confidential and shall not disclose or permit its employees or agents to disclose the terms of this Agreement (except for reasonably necessary disclosures to its attorneys, accountants, investors, agents, lenders and representatives) and except as may be required by law or in connection with litigation between such parties and the Lender Parties.***

*Counterparts.*  **This Agreement may be executed in any number of counterparts so long as each signatory hereto executes at least one such counterpart.  Each such counterpart shall constitute one original, but all such counterparts taken together shall constitute one and the same instrument.**

*Joint and Several Liability.*  **Each of the Borrower Parties shall each be primarily, jointly and severally liable for each of the obligations and liabilities of the Borrower Parties under this Agreement and any document executed under or in connection with this Agreement and Guarantors each hereby waive *any* guarantor or suretyship defenses that may otherwise apply with respect thereto.**

T.    Notwithstanding the execution and delivery of this Agreement evidencing the resolution of the Lender Parties' disputes regarding the actual ownership status of the Mortgage Loan, each of the Lender Parties acknowledges that (i) the Lender Parties have had, and continue to have, certain disputes regarding the actual ownership status of certain loan and other assets originated by LBHI and/or certain affiliates of LBHI other than the Mortgage Loan (collectively, the "Remaining Assets"), (ii) nothing contained in this Agreement shall prejudice the claims that any of them may have against one another with respect to the Remaining Assets arising in connection with the Repo Documents, and (iii) nothing contained in this Agreement shall be deemed to create an admission, stipulation and/or implication on the part of any of the Lender Parties as to the actual ownership status of the Remaining Assets.  Each of the Lender Parties further agrees that no negotiations and communications which may arise or may have previously arisen concerning this Agreement or the transactions contemplated hereby shall be admissible as evidence on any issue that is or may be before any court or administrative body in order to establish proof of ownership of the Remaining Assets or to create or establish any admission of liability as to, or for any other evidentiary purpose with respect to, the ownership status of the Remaining Assets.  In addition, nothing contained in this Agreement shall be deemed to waive any of the rights any of the Lender Parties may have against one another with respect to the Remaining Assets pursuant to the Repo Documents, and each of the Lender Parties hereby reserves all of its respective rights and remedies under such Repo Documents with respect to the Remaining Assets.

**Bankruptcy Court Approval.  Notwithstanding anything to the contrary contained in this Agreement, each of the parties hereto agrees that the effectiveness of this Agreement and each of the terms and provisions set forth in this Agreement and any of the transactions contemplated in this Agreement shall be subject, in their entirety, to the Bankruptcy Court entering a final order approving this Agreement and the transactions contemplated hereby.**

*[NO FURTHER TEXT – SIGNATURES ON NEXT PAGE]*

IN WITNESS WHEREOF, Borrower Parties and Lender Parties have executed this Agreement as of the day and year first above written.

LENDER PARTIES:

LEHMAN BROTHERS HOLDINGS INC.,
as Debtor and Debtor in Possession in its
chapter 11 case in the United States Bankruptcy
Court for the Southern District of New York,
Case No. 08-13555 (JPM)


By:_____
    Name:
    Title:


LEHMAN COMMERCIAL PAPER INC.,
as Debtor and Debtor in Possession in its
chapter 11 case in the United States Bankruptcy
Court for the Southern District of New York,
Case No. 08-13555 (JPM)


By:_____
    Name:
    Title:

LEHMAN RE LTD.,
a Bermuda corporation

By:    Its Joint Provisional Liquidators (without
personal liability)


By:    _____
Peter C.B. Mitchell
Authorized Signatory


By:    _____
D. Geoffrey Hunter
Authorized Signatory


**SIGNATURES ON FOLLOWING PAGE**

MORTGAGE BORROWER AND PROJECT OWNER:


44th STREET PARTNERS I LLC,
a Delaware limited liability company


By:_____
   Name:
   Title:


MEZZANINE BORROWER:


44th STREET PARTNERS II LLC,
a Delaware limited liability company


By:_____
   Name:
   Title:


THOMPSON MORTGAGE GUARANTOR, MEZZANINE GUARANTOR AND PATRICK PLEDGOR:


By:_____
   Name:  Patrick Thompson


**SIGNATURES ON FOLLOWING PAGE**

SUZUKI MORTGAGE GUARANTOR:


By: _____
    Name:  Sammy Isamu Suzuki


SUZUKI GROUP LLC,
a New York limited liability company


By: _____
    Name:
    Title:

HOLDINGS:

44TH STREET HOLDINGS LLC, a Delaware
    limited liability company


By: _____
    Name:
    Title:


TWP:


TWP CAPITAL HOLDINGS I, LLC, a New
    York limited liability company

By: _____
    Name:
    Title:


ACCEPTED AND AGREED TO AS OF THE
    EFFECTIVE DATE:


[___ESCROW AGENT_____]


By:_____
    Name:
    Title:

## EXHIBIT A

## LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City, County, and State of New York, bounded and described as follows:

BEGINNING at a point on the Northerly side of East 44th Street at or in front of the center of a party wall and distance 167 feet Easterly from the corner formed by the intersection of the Easterly side of 5th Avenue with the Northerly side of 44th Street;

THENCE Northerly parallel with 5th Avenue and part of the distance through said party wall, 100 feet 5 inches to the center line of the block between 44th and 45th Streets;

THENCE Easterly parallel with East 44th Street and along said center line of the block, 27 feet;

THENCE Southerly and again parallel with 5th Avenue and part of the way through another party wall, 100 feet 5 inches to the said Northerly side of East 44th Street;

THENCE Westerly along the said Northerly side of East 44th Street 27 feet to the point or place of BEGINNING.

EXHIBIT A

**EXHIBIT B-1**

**LIST OF MORTGAGE LOAN DOCUMENTS**

1.  Master Credit Agreement, dated as of August 8, 2006, made by and among 44TH STREET PARTNERS I LLC, a Delaware limited liability company ("**Borrower**"), and LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**Lehman**"), individually and as lead arranger and administrative agent for itself and certain co-lenders (Lehman, in such capacity, "**Mortgage Agent**"), and subsequently modified pursuant to that certain First Amendment to Master Credit Agreement and Ratification of Environmental Indemnity and Guaranties, dated as of June 11, 2007, made by and among, inter alia, Borrower, Mortgage Agent, SAMMY ISAMU SUZUKI, an individual ("**Sammy Guarantor**"), and PATRICK THOMPSON, an individual ("**Patrick Guarantor**")

2.  Mortgage Note, dated March 20, 2003, in the stated principal amount of $3,800,000.00, made by 44TH STREET PARTNERS, LLC, a New York limited liability company ("**44th Street**"), to NORTH FORK BANK, a corporation organized under the Banking Law of the State of New York ("**North Fork**"), which promissory note was subsequently transferred to Lehman pursuant to that certain Allonge to Mortgage Note, dated July 25, 2006, made by North Fork to Lehman

3.  Mortgage Note, dated October 14, 2004, in the stated principal amount of $1,200,000.00, made by 44th Street to the order of BRT REALTY TRUST, a Massachusetts business trust ("**BRT**")

4.  Note Splitter, Mortgage Severance and Reaffirmation Agreement, dated August 8, 2006, made by and among Mortgage Agent and Borrower

5.  Modified and Severed Note A, dated August 8, 2006, in the stated principal amount of $812,772.43, made by Borrower to Mortgage Agent

6.  Amended, Restated and Consolidated Land Loan Promissory Note, dated August 8, 2006, in the stated principal amount of $4,363,650.34, made by Borrower to Mortgage Agent

7.  Mortgage, dated as of March 20, 2003, made by 44th Street to North Fork, recorded in the Office of the City Register of the City of New York (the "**Office**") on April 16, 2003, as City Register File Number 2003000091601, which mortgage was subsequently assigned to Lehman pursuant to that certain Assignment of Mortgage, dated as of July 28, 2006, made by North Fork to Lehman, recorded in the Office on August 18, 2006, as City Register File Number 2006000469652

8.  Mortgage, dated as of October 14, 2004, made by 44th Street to BRT, recorded in the Office on November 16, 2004, as City Register File Number 2004000710012, which

mortgage was subsequently assigned to Lehman pursuant to that certain Assignment of Mortgage, dated as of August 2, 2006, made by BRT to Lehman, recorded in the Office on August 18, 2006, as City Register File Number 2006000469806

9.   Severed Mortgage "A", dated as of August 8, 2006, made by Borrower to Mortgage Agent, recorded in the Office on August 18, 2006, as City Register File Number 2006000468902

10.  Amended, Restated and Consolidated Land Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement, dated as of August 8, 2006, made by Borrower to Mortgage Agent, recorded in the Office on September 1, 2006, as City Register File Number 2006000499031

11.  Absolute Assignment of Leases and Rents, dated as of August 8, 2006, made by Borrower to Mortgage Agent, recorded in the Office on November 15, 2006, as City Register File Number 2006000634307

12.  UCC-1 Financing Statement, naming Borrower as debtor, and Lehman as secured party, recorded in the Office on August 17, 2006, as City Register File Number 2006000467059

13.  UCC-1 Financing Statement, naming Borrower as debtor, and Lehman as secured party, filed with the Delaware Secretary of State on August 21, 2006, as Filing Number 63070018

14.  Guaranty of Recourse Obligations, dated as of August 8, 2006, made by Sammy Guarantor and Patrick Guarantor, for the benefit of Mortgage Agent

15.  Guaranty of Payment and Completion, dated as of August 8, 2006, made by Sammy Guarantor and Patrick Guarantor, for the benefit of Mortgage Agent

16.  Environmental and Hazardous Substance Indemnification Agreement, dated as of August 8, 2009, made by Borrower, Sammy Guarantor, and Patrick Guarantor, in favor of Mortgage Agent

17.  Lockbox, Pledge and Security Agreement, dated as of August 8, 2006, made by and among Mortgage Agent, TRIMONT REAL ESTATE ADVISORS, INC., a Georgia corporation ("**Trimont**"), and Borrower

18.  Reserve and Security Agreement, dated as of August 8, 2006, made by and among Mortgage Agent, Trimont and Borrower

19.  Collateral Assignment of Interest Rate Protection Agreement, dated as of August 8, 2006, made by Borrower in favor of Mortgage Agent, and acknowledged and agreed to by BEAR STEARNS FINANCIAL PRODUCTS INC.

20.  Assignment of Agreements, Contracts, Warranties, Licenses, Plans and Permits, dated as of August 8, 2006, made by Borrower in favor of Mortgage Agent

21.     Consent to Assignment of Agreement and Estoppel and Recognition Agreement, dated as of August 8, 2006, made by PHILIP JOHNSON/ALAN RITCHIE ARCHITECTS, P.C., a New York professional corporation, in favor of Mortgage Agent

22.     Consent to Assignment of Agreement and Estoppel and Recognition Agreement, dated as of August 8, 2006, made by DE NARDIS ENGINEERING, LLC, a New York limited liability company, in favor of Mortgage Agent

23.     Consent to Assignment of Agreement and Estoppel and Recognition Agreement, dated as of August 8, 2006, made by SIDERIS ENGINEERS P.C., a New York professional corporation, in favor of Mortgage Agent

24.     Consent to Assignment of Agreement and Estoppel and Recognition Agreement, dated as of August 8, 2006, made by HUDSON MERIDIAN CONSTRUCTION GROUP, LLC, a New York limited liability company, in favor of Mortgage Agent

25.     Subordination Agreement, dated as of August 8, 2006, made by Mortgage Agent

26.     Escrow Instructions Letter, from Weil, Gotshal & Manges LLP, to First American Title Insurance Company of New York and Commonwealth Land Title Insurance Company

27.     Extension Agreement (Senior Loan), dated as of August 19, 2008, made by and among Mortgage Agent, Borrower, and Patrick Guarantor

28.     Escrow Agreement, dated as of August 19, 2008, made by and among Borrower, Lehman, and PRESTIGE TITLE AGENCY, INC.

## BUILDING LOAN DOCUMENTS

29.     Building Loan Agreement, dated as of August 8, 2006, made by and between Borrower and Mortgage Agent

30.     Mortgage Note, dated August 8, 2006, in the stated principal amount of $9,958,638.44, made by Borrower to Mortgage Agent

31.     Modified and Severed Note B, dated August 8, 2006, in the stated principal amount of $387,227.57, made by Borrower to Mortgage Agent

32.     Amended, Restated and Consolidated Building Loan Promissory Note, dated August 8, 2006, in the stated principal amount of $10,345,866.01, made by Borrower to Mortgage Agent

33.     Mortgage, dated as of August 8, 2006, made by Borrower to Mortgage Agent, recorded in the Office on August 21, 2006, as City Register File Number 2006000470380

34.     Severed Mortgage "B", dated as of August 8, 2006, made by Borrower to Mortgage Agent, recorded in the Office on August 18, 2006, as City Register File Number 2006000468903

35. Amended, Restated and Consolidated Building Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement, dated as of August 8, 2006, made by Borrower to Mortgage Agent, recorded in the Office on August 21, 2006, as City Register File Number 2006000470381

36. UCC-1 Financing Statement, naming Borrower as debtor, and Mortgage Agent as secured party, filed in the Office on August 17, 2006, as City Register File Number 2006000467048

37. UCC-1 Financing Statement, naming Borrower as debtor, and Mortgage Agent as secured party, filed in the Office of the Secretary of State of the State of Delaware on August 21, 2006, as Filing Number 63070117

PROJECT LOAN DOCUMENTS

38. Project Loan Agreement, dated as of August 8, 2006, made by and between Borrower and Mortgage Agent

39. Project Loan Promissory Note, dated August 8, 2006, in the stated principal amount of $1,940,483.65, made by Borrower to Mortgage Agent

40. Project Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement, dated as of August 8, 2006, made by Borrower to Mortgage Agent, recorded in the Office on November 15, 2006, as City Register File Number 2006000634306

41. UCC-1 Financing Statement, naming Borrower as debtor, and Mortgage Agent as secured party, filed in the Office on August 17, 2006, as City Register File Number 2006000467051

42. UCC-1 Financing Statement, naming Borrower as debtor, and Mortgage Agent as secured party, filed in the Office of the Secretary of State of the State of Delaware on August 21, 2006, as Filing Number 63070182

OMNIBUS AMENDMENT

43. Omnibus Amendment to Senior Loan Documents and Ratification of Environmental Indemnity Agreement and Guaranties, dated as of May 29, 2008, made by and among Mortgage Agent, Borrower, and Patrick Guarantor

44. Lien Release Letter Agreement, dated May 29, 2008, from Lehman to Borrower, agreed to and accepted by Borrower

**EXHIBIT B-2**

**LIST OF MEZZANINE LOAN DOCUMENTS**

ORIGINATION DOCUMENTS

1. Mezzanine Construction Loan Agreement, dated as of August 8, 2006, made by and between 44TH STREET PARTNERS II LLC, a Delaware limited liability company ("**Mezzanine Borrower**"), and LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**Lehman**"), individually and as lead arranger and administrative agent for itself and certain co-lenders (Lehman, in such capacity, "**Mezzanine Agent**")

2. Secured Promissory Note, dated August 8, 2006, in the stated principal amount of $2,220,000.00, made by Mezzanine Borrower to the order of Mezzanine Agent

3. Pledge and Security Agreement (Interests in Project Owner), dated as of August 8, 2006, made by Mezzanine Borrower to and for the benefit of Mezzanine Agent

4. Control Agreement, dated as of August 8, 2006, made by and among 44TH STREET PARTNERS I LLC, a Delaware limited liability company ("**Project Owner**"), Mezzanine Agent, and Mezzanine Borrower

5. Consent of Project Owner, dated as of August 8, 2006, made by Project Owner to and for the benefit of Lehman

6. Irrevocable Proxy Agreement, dated as of August 8, 2006, made by and among Mezzanine Borrower, Project Owner, and Mezzanine Agent

7. UCC-1 Financing Statement, naming Mezzanine Borrower as debtor, and Lehman as secured party, filed with the Delaware Secretary of State on August 9, 2006, as Filing Number 62764033

8. Pledge and Security Agreement (Interests in Borrower), dated as of August 8, 2006, made by 44TH STREET HOLDINGS LLC, a Delaware limited liability company ("**Holdings**"), to and for the benefit of Mezzanine Agent

9. Control Agreement, dated as of August 8, 2006, made by and among Mezzanine Borrower, Mezzanine Agent, and Holdings

10. Consent of Borrower, dated as of August 8, 2006, made by Mezzanine Borrower to and for the benefit of Lehman

11. Irrevocable Proxy Agreement, dated as of August 8, 2006, made by and among Holdings, Mezzanine Borrower, and Mezzanine Agent

12. UCC-1 Financing Statement, naming Holdings as debtor, and Lehman as secured party, filed with the Delaware Secretary of State on August 9, 2006, as Filing Number 62764116

13. Pledge and Security Agreement (Interests in Holdings), dated as of August 8, 2006, made by TWP CAPITAL HOLDINGS I, LLC, a New York limited liability company ("**TWP**"), and SUZUKI GROUP LLC, a New York limited liability company ("**Suzuki**"), to and for the benefit of Mezzanine Agent

14. Control Agreement, dated as of August 8, 2006, made by and among Holdings, Mezzanine Agent, TWP and Suzuki

15. Consent of Holdings, dated as of August 8, 2006, made by Holdings to and for the benefit of Lehman

16. Irrevocable Proxy Agreement, dated as of August 8, 2006, made by and among TWP, Suzuki, Holdings, and Mezzanine Agent

17. UCC-1 Financing Statement, naming TWP as debtor, and Lehman as secured party, filed with the New York Secretary of State on August 9, 2006, as Filing Number 200608090653063

18. UCC-1 Financing Statement, naming TWP as debtor, and Lehman as secured party, filed with the New York Secretary of State on August 9, 2006, as Filing Number 200608090653063

19. UCC-1 Financing Statement, naming Suzuki as debtor, and Lehman as secured party, filed with the New York Secretary of State on August 9, 2006, as Filing Number 200608090653087

20. Pledge and Security Agreement (Interests in TWP Capital Holdings I, LLC), dated as of August 8, 2006, made by PATRICK THOMPSON, an individual ("**Patrick**"), to and for the benefit of Mezzanine Agent

21. Control Agreement, dated as of August 8, 2006, made by and among TWP, Mezzanine Agent, and  Patrick

22. Consent of TWP Capital Holdings I, LLC, dated as of August 8, 2006, made by TWP to and for the benefit of Lehman

23. Irrevocable Proxy Agreement, dated as of August 8, 2006, made by and among Patrick, TWP, and Mezzanine Agent

24. UCC-1 Financing Statement, naming Patrick, as debtor, and Lehman as secured party, filed with the New York Secretary of State on August 9, 2006, as Filing Number 200608090653051

25. Pledge and Security Agreement (Interests in Suzuki Group LLC), dated as of August 8, 2006, made by SAMMY ISAMU SUZUKI, an individual ("**Sammy Guarantor**"), to and for the benefit of Mezzanine Agent

26. Control Agreement, dated as of August 8, 2006, made by and among Suzuki, Mezzanine Agent, and Sammy Guarantors

27. Consent of Suzuki Group LLC, dated as of August 8, 2006, made by Suzuki to and for the benefit of Lehman

28. Irrevocable Proxy Agreement, dated as of August 8, 2006, made by and among Sammy Guarantors, Suzuki, and Mezzanine Agent

29. UCC-1 Financing Statement, naming Sammy Guarantors as debtor, and Lehman as secured party, filed with the New York Secretary of State on August 9, 2006, as Filing Number 200608090653075

30. Environmental and Hazardous Substance Indemnification Agreement, dated as of August 8, 2006, made by Mezzanine Borrower, Sammy Guarantor and Patrick Guarantor in favor of Mezzanine Agent

31. Guaranty of Recourse Obligations, dated as of August 8, 2006, made by Sammy Guarantor and Patrick Guarantor for the benefit of Mezzanine Agent

32. Guaranty of Payment and Completion, dated as of August 8, 2006, made by Sammy Guarantor and Patrick Guarantor for the benefit of Mezzanine Agent

33. Assignment of Title Insurance Policy and Proceeds, dated as of August 8, 2006, made by Project Owner to and for the benefit of Mezzanine Agent

34. Collateral Assignment of Interest Rate Protection Agreement, dated as of August 8, 2006, made by Mezzanine Borrower in favor of Mezzanine Agent, and acknowledged and agreed to by BEAR STEARNS FINANCIAL PRODUCTS INC.

35. Architect's Consent and Agreement, dated as of August 8, 2006, made by PHILIP JOHNSON/ALAN RITCHIE ARCHITECTS, P.C., a New York professional corporation, agreed to and acknowledged by Lehman

36. Engineer's Consent and Agreement, dated as of August 8, 2006, made by DE NARDIS ENGINEERING, LLC, a New York limited liability company, agreed to and acknowledged by Lehman

37. Engineer's Consent and Agreement, dated as of August 8, 2006, made by SIDERIS ENGINEERS P.C., a New York professional corporation, agreed to and acknowledged by Lehman

38.     Construction Manager's Consent and Agreement, dated as of August 8, 2006, made by HUDSON MERIDIAN CONSTRUCTION GROUP, LLC, a New York limited liability company, agreed to and acknowledged by Lehman

39.     Escrow Instructions Letter, from Weil, Gotshal & Manges LLP, to First American Title Insurance Company of New York and Commonwealth Land Title Insurance Company

FIRST AMENDMENT DOCUMENTS

40.     Omnibus Amendment to Mezzanine Loan Documents and Ratification of Environmental Indemnity and Guaranties, dated as of May 29, 2008, made by and among Lehman, Mezzanine Borrower, Project Owner, Patrick Guarantor, Holdings and TWP

41.     General Release, dated as of May 29, 2008, made by Sammy Guarantor

42.     Limited Release, dated as of May 29, 2008, made by Lehman

43.     Amended, Restated and Increased Secured Promissory Note, dated May 29, 2008, in the stated principal amount of $7,782,000.00, made by Mezzanine Borrower to Lehman

44.     Amended and Restated Pledge and Security Agreement (Interests in Holdings), dated as of May 29, 2008, made by TWP to Lehman

45.     Amended and Restated Control Agreement, dated as of May 29, 2008, made by and among Holdings, Lehman, and TWP

46.     Amended and Restated Consent of Holdings, dated as of May 29, 2008, made by Holdings to and for the benefit of Lehman

47.     Amended and Restated Irrevocable Proxy Agreement, dated as of May 29, 2008, made by and among TWP, Holdings, and Lehman

48.     UCC-3 Amendment Statement, filed with the New York Secretary of State as Filing Number 200806030395455

## EXHIBIT C

<u>ADDITIONAL PRINCIPAL PAYMENT PROVISIONS</u>

(a)    Mortgage Borrower shall pay to Lehman Re, in the manner and at the time specified herein, additional principal in an amount equal to that set forth on <u>Schedule A</u> attached hereto and made a part hereof (the "**Additional Principal Payment**"), which Additional Principal Amount shall be adjusted upward or downward based upon payments received in connection with the sale of the last two (2) condominium units  (excluding the penthouse units) to be sold at the building or any casualty or condemnation thereof as set forth below.

(b)    Upon an arm's length sale or conveyance to a bona-fide third party purchaser of the last two (2) condominium units (excluding the penthouse units) to be sold at the building or any casualty or condemnation thereof, Mortgage Borrower shall pay to Lehman Re an Additional Principal Payment in an amount equal to the product of (x) $200.00 and (y) the square footage of each such unit based upon the square footage set forth on Schedule A to the Offering Plan for the Condominium on file in the office of the Attorney General of the State of New York, which amount shall payable to Lehman Re upon the closing of such sale or conveyance of each unit or concurrently with the receipt of casualty or condemnation proceeds by Mortgage Borrower and shall be credited against the outstanding Additional Principal Payment then due and payable to Lehman Re.  All amounts required to be delivered to Lehman Re hereunder in respect of the Additional Principal Payment shall be delivered by wire transfer to one or more accounts directed in writing by Lehman Re or in other immediately available funds pursuant to the written direction of Lehman Re.

(c)    The Additional Principal Payment shall be due and payable upon the earlier to occur of  (i) the date of the arm's length sale or conveyance to a bona-fide third party purchaser of the last two (2) condominium units (excluding the penthouse units) to be sold at the building or any casualty or condemnation thereof, or (ii) the date which is thirty-six (36) month anniversary of the Closing of Escrow (as defined in the Loan Pay-Off Agreement to which this <u>Exhibit C</u> is attached).

(d)    Mortgage Borrower's obligation to make the Additional Principal Payment shall, at the sole cost and expense of Mortgage Borrower, be evidenced by a promissory note in favor of Lehman Re and secured by, among other things, (i) a second mortgage encumbering the Premises ((as defined in the Loan Pay-Off Agreement to which this <u>Exhibit C</u> is attached) to be recorded by Lehman Re at the sole cost and expense of Mortgage Borrower and (ii) a personal guaranty of payment by Mortgage Borrower in favor of Lehman Re, which note, second mortgage and personal guaranty shall be assignable by the Lehman Re in its sole and absolute discretion.

## Schedule A

During months one (1) through twelve (12) following the date hereof, the Additional Principal Payment shall be equal to an the amount of $510,000, less any amount credit from the sale of a condominium unit during such period.

During the months thirteen (13) through twenty-four (24) following the date hereof, the Additional Principal Payment shall be increased and equal to the amount of $520,000, less any amount credit from the sale of a condominium unit during such period.

During the months twenty-five (25) through thirty-six (36) following the date hereof, the Additional Principal Payment shall be increased and equal to the amount of $530,000, less any amount credit from the sale of a condominium unit during such period.

Upon the sale of the last condominium unit, the Additional Principal Payment shall be deemed paid in full provided that the total credited against the Additional Principal Payment shall equal an amount of not less than $400,000 in the aggregate and not more than $600,000 in the aggregate.  If at the end of the thirty-sixth month following the date hereof, (i) no condominium unit has been sold or (ii) only one condominium has been sold, the Additional Principal Payment shall be due and payable in full which shall be equal to the amount of $530,000, less any amount credit from the sale of a condominium unit, if any, or calculated in accordance with Exhibit C, to which this Schedule A is attached.

## EXHIBIT D

## ESCROW PROVISIONS

Escrow Holder agrees to hold the Escrowed Funds and the Escrowed Documents in Escrow pursuant to the terms and provisions below:

(a)    Escrow Holder shall have no duties or responsibilities other than those expressly set forth in the Agreement to which this Exhibit is attached.  Escrow Holder shall have no duty to enforce any obligation of any person to make any payment or delivery or to enforce any obligation of any person to perform any other act.  Escrow Holder shall be under no liability to the other parties hereto or to anyone else by reason of any failure on the part of any party hereto or any maker, guarantor, endorser or other signatory of any document or any other person to perform such person's obligations under any such document.  Except for amendments to the Agreement hereinafter referred to and except for joint instructions given to Escrow Holder by Lender Parties and Borrower Parties relating to the Escrowed Funds and the Escrowed Documents, Escrow Holder shall not be obligated to recognize any agreement between any or all of the persons referred to herein other than the Agreement, notwithstanding that references thereto may be made herein and whether or not it has knowledge thereof.

(b)    In its capacity as escrow agent, Escrow Holder shall not be responsible for the genuineness or validity of any security, instrument, document or item deposited with it and shall have no responsibility other than to faithfully follow the instructions contained herein, and it is fully protected in acting in accordance with any written instrument given to it hereunder by any of the parties hereto and believed by Escrow Holder to have been signed by the proper person.  Escrow Holder may assume that any person purporting to give any notice hereunder has been duly authorized to do so.  Escrow Holder is acting as a stakeholder only with respect to the Escrowed Funds and the Escrowed Documents.  In the event that for any reason there is any dispute or uncertainty concerning any action to be taken hereunder, Escrow Holder shall take no action until it shall have received instructions in writing concurred to by Lender Parties and Borrower Parties or until directed by a final order of judgment of a court of competent jurisdiction, whereupon Escrow Holder shall take such action in accordance with such instructions or such order.

(c)    It is understood and agreed that the duties of Escrow Holder are purely ministerial in nature.  Escrow Holder shall not be liable to the other parties hereto or to anyone else for any action taken or omitted by it, or any action suffered by it to be taken or omitted, in good faith and in the exercise of reasonable judgment, except for acts of willful misconduct or negligence.  Escrow Holder may rely conclusively and shall be protected in acting upon any order, notice, demand, certificate, opinion or advice of counsel (including counsel chosen by Escrow Holder), statement, instrument, report or other paper or document (not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and acceptability of any information therein contained) which is reasonably believed by Escrow Holder to be genuine and to be signed or presented by the proper person or persons.  Escrow Holder shall not be bound by any notice or demand, or any waiver, modification, termination or rescission of the Agreement or any of the terms hereof, unless evidenced by a final judgment or

decree of a court of competent jurisdiction in the State of New York or a Federal court in such State, or a writing delivered to Escrow Holder signed by the proper party or parties and, if the duties or rights of Escrow Holder are affected, unless it shall give its prior written consent thereto.

(d)    Escrow Holder shall have the right to assume in the absence of written notice to the contrary from the proper person or persons that a fact or an event by reason of which an action would or might be taken by Escrow Holder does not exist or has not occurred, without incurring liability to the other parties hereto or to anyone else for any action taken or omitted, or any action suffered by it to be taken or omitted, in good faith and in the exercise of reasonable judgment, in reliance upon such assumption.

(e)    Except in connection with Escrow Holder's willful misconduct or negligence, Escrow Holder shall be indemnified and held harmless jointly and severally by the other parties hereto from and against any and all expenses or loss suffered by Escrow Holder (in its capacity as escrow agent), including reasonable attorneys' fees, in connection with any action, suit or other proceeding involving any claim, which arises out of or relates to the Agreement, the services of Escrow Holder hereunder or the monies and documents held by it hereunder. Promptly after the receipt by Escrow Holder of notice of any demand or claim or the commencement of any action, suit or proceeding, Escrow Holder shall, if a claim in respect thereof is to be made against any of the other parties hereto, notify such other parties hereto in writing; but the failure by Escrow Holder to give such notice shall not relieve any party from any liability which such party may have to Escrow Holder hereunder.

(f)    From time to time on and after the date hereof, Lender Parties and Borrower Parties shall deliver or cause to be delivered to Escrow Holder such further documents and instruments and shall do and cause to be done such further acts as Escrow Holder shall reasonably request (it being understood that Escrow Holder shall have no obligation to make any such request) to carry out more effectively the provisions and purposes of this Agreement, to evidence compliance herewith or to assure itself that it is protected in acting hereunder.

(g)    If for any reason the Close of Escrow does not occur and either party makes a written demand upon Escrow Holder for payment or refund, as the case may be, of the Escrowed Funds, or any portion thereof, or delivery or return of the Escrowed Documents, Escrow Holder shall give written notice to the other party of such demand.  If Escrow Holder does not receive a written objection from the other party to the proposed payment or refund of the Escrowed Funds, or portion thereof, or the delivery or return of the Escrowed Documents, as the case may be, within ten (10) Business Days after the giving of the notice described in the preceding sentence, Escrow Holder is hereby authorized to make such payment or refund, or delivery or return; provided, however, if for any reason Escrow Holder in good faith shall elect not to make such payment, Escrow Holder shall continue to hold such amount until otherwise directed by written instructions from the parties to this Agreement or a final judgment of a court of competent jurisdiction.  Notwithstanding the foregoing, Escrow Holder shall have the right at any time to deposit the Escrowed Funds and the Escrowed Documents with the Clerk of the Supreme Court of New York County, New York.  Escrow Holder shall give written notice of such deposit to Lender Parties and Borrower Parties.  Upon such deposit, Escrow Holder shall be relieved and discharged of all further obligations and responsibilities hereunder.

        (h)       Escrow Holder may resign at any time as escrow agent hereunder upon giving five (5) Business Days' prior written notice to that effect to each of Lender Parties and Borrower Parties.    Any successor escrow agent shall be a nationally recognized title insurance company or a nationally recognized law firm selected by Borrower Parties and reasonably accepted by Lender Parties.   In such case , Escrow Holder shall no longer serve as escrow agent and shall deliver, against receipt, to such successor escrow agent, the Escrowed Funds and Escrowed Documents held by Escrow Holder, to be held by such successor escrow agent pursuant to the terms and provisions of this Agreement.   If no such successor has been designated on or before such party ceases to be escrow agent hereunder, whether by resignation or otherwise, Escrow Holder's obligations as escrow agent shall continue until such successor is appointed; provided, however, its sole obligation thereafter shall be to safely keep all monies and documents then held by it and to deliver the same to the person, firm or corporation designated as its successor or until directed by a final order or judgment of a court of competent jurisdiction, whereupon Escrow Holder shall make disposition thereof in accordance with such order.   If no successor escrow agent is designated and qualified within five (5) Business Days after its resignation is effective, the Escrow Holder shall no longer be considered the escrow agent and Escrow Holder shall apply to the Clerk of the Supreme Court of New York County, New York, for the appointment of a successor escrow agent.

**<u>EXHIBIT E-1</u>**

<u>Form of Mortgage Lender Release</u>

This Release ("**Release**") is made and is effective as of this _____ day of _____, 2009 by 44TH STREET PARTNERS I LLC, a Delaware limited liability company ("**Borrower**") and PATRICK THOMPSON, an individual (in his capacity as a guarantor under the Mortgage Loan, the "**Thompson Mortgage Guarantor**"), SAMMY ISAMU SUZUKI, an individual (in his capacity as a guarantor under the Mortgage Loan, the "**Suzuki Mortgage Guarantor**"; Thompson Mortgage Guarantor and the Suzuki Mortgage Guarantor are collectively referred to herein as "**Guarantor**") in favor of LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**"), LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**") and LEHMAN RE LTD., a Bermuda corporation ("**Lehman Re**"). LBHI, LCPI and Lehman Re are sometimes hereinafter collectively referred as the "**Lender Parties**" and each a "**Lender Party**". The Borrower and the Guarantor are sometimes hereinafter collectively referred to as the "**Borrower Parties**" and each a "**Borrower Party**". This Release is delivered pursuant to that Loan Pay-Off Agreement (the "**Agreement**") dated May [__], 2009, among the Borrower Parties and the Lender Parties. Capitalized terms used herein and not otherwise defined herein have the meaning set forth in the Agreement or, if not, having the meaning set forth in the Mortgage Loan Agreement (as defined in the Agreement) (the "**Mortgage Loan Agreement**").

1.    Borrower and Guarantor for themselves and for and on behalf of each of their past, present and future direct or indirect related entities (whether or not such entities are wholly owned) and each of their past, present and future officers, directors, shareholders, members, partners, trustees, agents, employees, servants, shareholders and attorneys (as well as their predecessors, successors and assigns) (collectively, the "**Releasing Parties**"), for and in consideration of the execution and delivery of the Agreement, and for other good and valuable consideration paid to the undersigned, the receipt and sufficiency of which are hereby acknowledged does hereby forever absolutely and irrevocably release, waive, remise, acquit and discharge each of the Lender Parties and any and all of their divisions, subsidiaries, parents, affiliates and other direct or indirect related entities (whether or not such entities are wholly-owned) and each of their past, present and future directors, trustees, fiduciaries, administrators, officers, agents, employees, servants, shareholders and attorneys (as well as their predecessors, successors and assigns) (collectively, the "**Released Parties**") of and from all manner of actions, causes of action, claims, claims of usury, suits, bonds, bills, covenants, controversies, agreements, promises, trespasses, damages (whether general, special or punitive), judgments, executions, demands, indebtedness (either as principal obligor or as surety or other accommodation party), liabilities, obligations, costs, expenses, losses, attorneys' fees and expenses (whether or not litigation is commenced), liens and indemnities of every kind and nature whatsoever, whether fixed or contingent, known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen and whether based on contract, tort, statute or other legal or equitable theory of recovery (collectively, "**Claims**") which the Releasing Parties, or any of them, now have, ever had, or hereafter can, shall or may have, or may hereafter assert, or which may hereafter arise against one or more of the Released Parties for or by reason of any

Claims arising or accruing at any time on or prior to the date hereof in connection with, arising out of, or to arise or accrue hereafter in connection with, or in any way relating, directly or indirectly, to the following:   (a) the Loan or any other indebtedness owed in connection therewith, (b) the Mortgage Loan Documents, (c) the Project, (d) any rents, security deposits or other income from any portion of the Project, (e) any matters pertaining to any of the discussions, communications, correspondence, negotiations or dealings among the Releasing Parties and the Released Parties relating to the Loan or the Project, (f) any violation of any environmental laws, rules or regulations, (g) the lender-borrower relationship evidenced by the Loan, (h) any previous pursuit of rights or remedies by the Released Parties against the Borrower or the Guarantor or any other Person, or (i) any matters arising out of or in any way relating to any of the foregoing (collectively, the "**Released Claims**").   Without limiting the generality of the foregoing, the Released Claims shall include, without limitation, any loss, liability, expense and/or detriment, of any kind or character, in any way arising out of, connected with, or resulting from the acts or omissions of the Lender Parties, or the Released Parties or any of them, including, without limitation, the contracting for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate, any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, any cause of action or defenses based on the negligence of any of the Lender Parties or any "lender liability" theories, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, and/or any other tort or statutory claim, or any claim for wrongfully taking any action in connection with the foregoing.

2.     Notwithstanding anything contained herein to the contrary, the Releasing Parties and the Released Parties agree that this Release is a unilateral release in full in favor of the Released Parties and that this Release is not a release in favor of the Releasing Parties.

3.     Without limiting the generality of the foregoing, the Releasing Parties expressly release any and all past, present and future Released Claims, which the Releasing Parties, or any of them, do not know of or suspect to exist in their favor, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect their decision to enter into this Release, and to this end they and each of them, to the extent permitted by law waive all rights under any statutory provision purporting to limit the scope or effect of a general release, whether due to lack of knowledge or otherwise.

4.     The Releasing Parties further expressly warrant and represent that neither the Released Claims nor any part of any interest in any claim, contention, demand, or cause of action relating to any Released Claim or any portion of any recovery or settlement has been sold, granted, transferred, assigned or encumbered.   The Releasing Parties hereby agree to indemnify and to hold harmless the Released Parties against any claim, contention, demand, cause of action, obligation and liability of any nature, character or description whatsoever, including the payment of attorneys' fees and costs actually incurred, whether or not litigation is commenced, which may be based upon or which may arise out of or in connection with any such assignment or transfer.

5.      The Releasing Parties expressly warrant and represent that in executing and entering into this Release, the Releasing Parties are not relying upon and have not relied upon any representation, promise or statement made by anyone which is not recited, contained or embodied in this Release or in the Agreement or any document or instrument delivered contemporaneously with the Agreement.  The Releasing Parties understand and expressly assume the risk that any fact not recited, contained or embodied herein or in the Agreement, or any document or instrument delivered in connection with the Agreement may turn out hereafter to be other than, different from, or contrary to the facts now known to the Releasing Parties or believed by the Releasing Parties to be true.  Nevertheless, the Releasing Parties intend by this Release, and with the advice of independently selected counsel, to release fully, finally and forever the Released Claims and agree that this Release shall be effective in all respects notwithstanding any such difference in facts, and shall not be subject to termination, modification or rescission by reason of any such difference in facts.

6.      The parties understand and agree that any Released Claims the Releasing Parties may have against any Released Party are in dispute, and that the Releasing Parties and the Released Parties are entering into this Release for the purpose of settling such disputes by compromise in order to avoid litigation and to buy peace.  The Releasing Parties hereby agree not to bring, or assist in bringing, any Released Claims, and the Releasing Parties further agree that this Release is, will constitute, and may be pleaded as, a bar to any such Released Claims.  Neither the execution nor delivery of this Release or any documents executed contemporaneously herewith by any Person nor the payment of any consideration by any Person incident to this Release is an admission of any wrongdoing whatsoever on the part of any Person.  Each of the Releasing Parties for itself and for anyone claiming by, through or under it, hereby agrees to defend, protect, indemnify and hold harmless any and all of the Released Parties from and against all loss, cost, liability, damage and expense (including reasonable attorneys' fees and expenses) incurred by the Released Parties or any of them in connection with, arising out of or in any way relating to any breach by the Releasing Parties, or any of them, of the covenants and agreements set forth in this Release.

7.      This Release shall inure to the benefit of and be binding upon the Releasing Parties and the respective Released Parties and their respective successors and permitted assigns, provided that the Releasing Parties shall have no right to assign any of their rights or duties under this Release.

8.      This Release, the Agreement and the documents and instruments delivered pursuant to the Agreement constitute and are intended to constitute the entire agreement of the parties concerning the subject matter hereof.  All prior discussions and negotiations with respect to the subject matter hereof are superseded by this Release, the Agreement (including those rights under the Agreement as specifically set forth in Paragraph 9(A) of the Agreement), and the documents and instruments delivered pursuant to the Agreement.

9.      If any provisions of this Release are determined by a court of competent jurisdiction to be invalid or unenforceable, in whole or in part, the remaining provisions, and any partially invalid or unenforceable provisions, to the extent valid and enforceable, shall nevertheless be binding and valid and enforceable.

10.     When necessary herein, all terms used in the singular shall apply to the plural, and vice versa, and all terms used in the masculine shall apply to the neuter and feminine genders, and vice versa.

11.     This Release shall be construed according to and governed by the laws of the State of New York without giving effect to principles of conflicts of law.

12.    This Release may be executed in any number of counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

| | |
|---|---|
| **BORROWER:**<br><br>**44TH STREET PARTNERS I LLC**,<br>a Delaware limited liability company<br><br><br>By:_____<br>      Name:_____<br>      Title:_____ | |
| **GUARANTOR:**<br><br><br>_____<br>**PATRICK THOMPSON** | |
| **GUARANTOR:**<br><br><br>_____<br>**SAMMY ISAMU SUZUKI** | |

**EXHIBIT E-2**

Form of Mezzanine Lender Release

This Release ("**Release**") is made and is effective as of this _____ day of _____ 2009 by (i) 44TH STREET PARTNERS II LLC, a Delaware limited liability company (the "**Borrower**"), (ii) 44TH STREET PARTNERS I LLC, a Delaware limited liability company (the "**Project Owner**"), (iii) PATRICK THOMPSON, an individual (in his capacity as guarantor and/or indemnitor under the Guaranty of Recourse Obligations, Payment and Completion Guaranty and Environmental Indemnity (each, as defined in the Mezzanine Loan Agreement, as defined below), the "**Guarantor**", and in his capacity as pledgor under that certain Pledge and Security Agreement (Interests in TWP Capital Holdings I, LLC), dated as of August 8, 2006, the "**Patrick Pledgor**"), (iv) 44th STREET HOLDINGS LLC, a Delaware limited liability company ("**Holdings Pledgor**"), (v) SUZUKI GROUP LLC, a New York limited liability company ("**Suzuki**") and (vi) TWP CAPITAL HOLDINGS I, LLC, a New York limited liability company ("**TWP Pledgor**"), in favor of LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**Lender**").   The Borrower, Project Owner, Guarantor, the Thompson Pledgor, the Holdings Pledgor, Suzuki, the TWP Pledgor are sometimes hereinafter collectively referred to as the "**Borrower Parties**" and each a "**Borrower Party**."  This Release is delivered pursuant to that Loan Pay-Off Agreement (the "**Agreement**") dated May [__], 2009, among the Borrower Parties and the Lender Parties.  Capitalized terms used herein and not otherwise defined herein have the meaning set forth in the Agreement or, if not, having the meaning set forth in that certain Mezzanine Loan Agreement (as defined in the Agreement) (the "**Mezzanine Loan Agreement**").

1.      Each of the Borrower Parties for itself and for and on behalf of each of their past, present and future direct or indirect related entities (whether or not such entities are wholly owned) and each of their past, present and future officers, directors, shareholders, members, partners, trustees, agents, employees, servants, shareholders and attorneys (as well as their predecessors, successors and assigns) (collectively, the "**Releasing Parties**") does hereby forever absolutely and irrevocably release, waive, remise, acquit and discharge each of the Lender and any and all of its divisions, subsidiaries, parents, affiliates and other direct or indirect related entities (whether or not such entities are wholly-owned) and each of their past, present and future directors, trustees, fiduciaries, administrators, officers, agents, employees, servants, shareholders and attorneys (as well as their predecessors, successors and assigns) (collectively, the "**Released Parties**") of and from all manner of actions, causes of action, claims, claims of usury, suits, bonds, bills, covenants, controversies, agreements, promises, trespasses, damages (whether general, special or punitive), judgments, executions, demands, indebtedness (either as principal obligor or as surety or other accommodation party), liabilities, obligations, costs, expenses, losses, attorneys' fees and expenses (whether or not litigation is commenced), liens and indemnities of every kind and nature whatsoever, whether fixed or contingent, known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen and whether based on contract, tort, statute or other legal or equitable theory of recovery (collectively, "**Claims**") which the Releasing Parties, or any of them, now have, ever had, or hereafter can, shall or may have, or may hereafter assert, or which may hereafter arise against one or more of

the Released Parties for or by reason of any Claims arising or accruing at any time on or prior to the date hereof in connection with, arising out of, or to arise or accrue hereafter in connection with, or in any way relating, directly or indirectly, to the following: (a) the Mezzanine Loan or any other indebtedness owed in connection therewith, including, without limitation, any obligations to provide additional funding by LBHI, if any, thereunder, (b) the Mezzanine Loan Documents, (c) the Project, (d) the Collateral, (e) any rents, security deposits or other income from any portion of the Project, (f) any matters pertaining to any of the discussions, communications, correspondence, negotiations or dealings among the Releasing Parties and the Released Parties relating to the Mezzanine Loan, the Collateral or the Project, (g) any violation of any environmental laws, rules or regulations, (h) the lender-borrower relationship evidenced by the Mezzanine Loan, (i) any previous pursuit of rights or remedies by the Released Parties against the Borrower Parties or any other Person, or (i) any matters arising out of or in any way relating to any of the foregoing (collectively, the "**Released Claims**").  Without limiting the generality of the foregoing, the Released Claims shall include, without limitation, any loss, liability, expense and/or detriment, of any kind or character, in any way arising out of, connected with, or resulting from the acts or omissions of the Lender, or the Released Parties or any of them, including, without limitation, the contracting for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate, any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, any cause of action or defenses based on the negligence of Lender or any "lender liability" theories, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, and/or any other tort or statutory claim, or any claim for wrongfully taking any action in connection with the foregoing.

2.    Notwithstanding anything contained herein to the contrary, the Releasing Parties and the Released Parties agree that this Release is a unilateral release in full in favor of the Released Parties and that this Release is not a release in favor of the Releasing Parties.

3.    Without limiting the generality of the foregoing, the Releasing Parties expressly release any and all past, present and future Released Claims, which the Releasing Parties, or any of them, do not know of or suspect to exist in their favor, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect their decision to enter into this Release, and to this end they and each of them, to the extent permitted by law waive all rights under any statutory provision purporting to limit the scope or effect of a general release, whether due to lack of knowledge or otherwise.

4.    The Releasing Parties further expressly warrant and represent that neither the Released Claims nor any part of any interest in any claim, contention, demand, or cause of action relating to any Released Claim or any portion of any recovery or settlement has been sold, granted, transferred, assigned or encumbered.  The Releasing Parties hereby agree to indemnify and to hold harmless the Released Parties against any claim, contention, demand, cause of action, obligation and liability of any nature, character or description whatsoever, including the payment of attorneys' fees and costs actually incurred, whether or not litigation is commenced, which may be based upon or which may arise out of or in connection with any such assignment or transfer.

5.      The Releasing Parties expressly warrant and represent that in executing and entering into this Release, the Releasing Parties are not relying upon and have not relied upon any representation, promise or statement made by anyone which is not recited, contained or embodied in this Release.  The Releasing Parties understand and expressly assume the risk that any fact not recited, contained or embodied herein may turn out hereafter to be other than, different from, or contrary to the facts now known to the Releasing Parties or believed by the Releasing Parties to be true.  Nevertheless, the Releasing Parties intend by this Release, and with the advice of independently selected counsel, to release fully, finally and forever the Released Claims and agree that this Release shall be effective in all respects notwithstanding any such difference in facts, and shall not be subject to termination, modification or rescission by reason of any such difference in facts.

6.      The parties understand and agree that any Released Claims the Releasing Parties may have against any Released Party are in dispute, and that the Releasing Parties and the Released Parties are entering into this Release for the purpose of settling such disputes by compromise in order to avoid litigation and to buy peace.  The Releasing Parties hereby agree not to bring, or assist in bringing, any Released Claims, and the Releasing Parties further agree that this Release is, will constitute, and may be pleaded as, a bar to any such Released Claims.  Neither the execution nor delivery of this Release or any documents executed contemporaneously herewith by any Person nor the payment of any consideration by any Person incident to this Release is an admission of any wrongdoing whatsoever on the part of any Person.  Each of the Releasing Parties for itself and for anyone claiming by, through or under it, hereby agrees to defend, protect, indemnify and hold harmless any and all of the Released Parties from and against all loss, cost, liability, damage and expense (including reasonable attorneys' fees and expenses) incurred by the Released Parties or any of them in connection with, arising out of or in any way relating to any breach by the Releasing Parties, or any of them, of the covenants and agreements set forth in this Release.

7.      This Release shall inure to the benefit of and be binding upon the Releasing Parties and the respective Released Parties and their respective successors and permitted assigns, provided that the Releasing Parties shall have no right to assign any of their rights or duties under this Release.

8.      This Release, the Agreement and the documents and instruments delivered pursuant to the Agreement constitute and are intended to constitute the entire agreement of the parties concerning the subject matter hereof.  All prior discussions and negotiations with respect to the subject matter hereof are superseded by this Release, the Agreement (including those rights under the Agreement as specifically set forth in Paragraph 9(A) of the Agreement), and the documents and instruments delivered pursuant to the Agreement.

9.      If any provisions of this Release are determined by a court of competent jurisdiction to be invalid or unenforceable, in whole or in part, the remaining provisions, and any partially invalid or unenforceable provisions, to the extent valid and enforceable, shall nevertheless be binding and valid and enforceable.

10.     When necessary herein, all terms used in the singular shall apply to the plural, and vice versa, and all terms used in the masculine shall apply to the neuter and feminine genders, and vice versa.

11.     This Release shall be construed according to and governed by the laws of the State of New York without giving effect to principles of conflicts of law.

12.     This Release may be executed in any number of counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

| BORROWER: | PROJECT OWNER: |
|---|---|
| **44TH STREET PARTNERS II LLC,** a Delaware limited liability company | **44TH STREET PARTNERS I LLC,** a Delaware limited liability company |
| By: _____ Name: _____ Title: _____ | By: _____ Name: _____ Title: _____ |
| **GUARANTOR AND PATRICK PLEDGOR:** _____ **PATRICK THOMPSON** | **HOLDINGS PLEDGOR:** **44TH STREET HOLDINGS LLC,** a Delaware limited liability company By: _____ Name: _____ Title: _____ |
| **TWP PLEDGOR:** **TWP CAPITAL HOLDINGS I, LLC,** a New York limited liability company By: _____ Name: _____ Title: _____ | **SUZUKI:** **SUZUKI GROUP LLC,** a New York limited liability company By: _____ Name: _____ Title: _____ |

**Exhibit B**

Draft LeMadre Senior Mezzanine Loan Pay-Off Agreement

## LOAN PAYOFF AGREEMENT
### (M&B SENIOR MEZZANINE LOAN)

THIS LOAN PAYOFF AGREEMENT ("Agreement") is made as of the _____ day of May, 2009 (the "**Effective Date**"), by and among LEMADRE MEZZ LLC, a Delaware limited liability company ("**Borrower**"), BENJAMIN SHAOUL, an individual ("**Shaoul**"), MARC RAVNER, an individual ("**Ravner**", and together with Shaoul, each a "**Guarantor**" and collectively, the "**Guarantors**"), and LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**"), LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**"), and LEHMAN RE LTD., a Bermuda corporation ("**Lehman Re**").  LBHI, LCPI and Lehman Re are hereinafter collectively referred to from time to time as "**Lender Parties**".

R E C I T A L S

A.    Subject to the terms and conditions of that certain Mezzanine Construction Loan Agreement dated July 12, 2006 as modified by Omnibus Modification and Ratification Agreement dated August 15, 2007, by and between Borrower and LBHI (as so modified, the "**Loan Agreement**"), LBHI made a loan to Borrower in the amount of up to $7,270,000 (the "**Loan**").  All capitalized terms used but not defined herein shall have the meaning assigned to such terms in the Loan Agreement.

B.    The Loan is evidenced by that certain Amended and Restated Secured Promissory Note (Senior Mezzanine Loan) dated as of August 15, 2007 in the principal amount of $7,270,000 given by Borrower to LBHI and evidencing the Advances under the Loan (the "**Note**").

C.    The Loan is secured by, among other things, that certain Pledge and Security Agreement (Interests in Project Owner) dated July 12, 2006 given by Borrower to LBHI constituting a perfected pledge and assignment of Borrower's 100% interest in Project Owner, together with the Consent of Project Owner thereto and the Control Agreement thereto (collectively, the "**Pledge Agreement**").

D.    Certain of Borrower's obligations under the Loan are guaranteed by Guarantors pursuant to (1) that certain Guaranty of Recourse Obligations (Senior Mezzanine Loan), dated as of July 12, 2006 (the "**Recourse Guaranty**"), (2) that certain Guaranty of Completion (Senior Mezzanine Loan), dated as of August 15, 2007 (the "**Completion Guaranty**") and (3) that certain Environmental and Hazardous Substance Indemnification Agreement (Senior Mezzanine Loan), dated as of July 12, 2006 (the "**Environmental Indemnity**").

E.    The Loan Agreement, the Note, the Pledge Agreement, the Recourse Guaranty, the Completion Guaranty, the Environmental Indemnity and the other documents and instruments executed by Borrower and/or the Guarantors evidencing, securing or otherwise relating to the Loan are hereinafter collectively referred to as the "**Loan Documents**."  A complete list of the Loan Documents is set forth on Exhibit A attached hereto and incorporated herein by reference.

F.    LBHI and LCPI are debtors under a pending bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") being jointly administered under Case No. 08-13555.

G.      LBHI made a loan to M&B Mezz LLC (the "**Junior Mezzanine Borrower**") in the amount of up to $7,200,000 (the "**Junior Mezzanine Loan**") pursuant to that certain Junior Mezzanine Construction Loan Agreement dated August 15, 2007.  Simultaneously upon the execution of this Agreement, the Lender Parties, Junior Mezzanine Borrower, and Guarantors are entering into that certain Loan Payoff Agreement (M&B Junior Mezzanine Loan) providing for the payoff of the Junior Mezzanine Loan on the terms provided therein (the "**Junior Mezzanine Loan Payoff Agreement**").

H.      Lender Parties advise that pursuant to the terms of that certain Master Repurchase Agreement dated as of July 9, 1999 (the "**Repurchase Agreement**") by and among Lehman Re, LCPI and Lehman Brothers Inc., Lehman Re and LCPI entered into certain agreements with respect to certain loans and other assets originated by LBHI and/or certain affiliates of LBHI, including the Junior Mezzanine Loan.

I.      Lender Parties advise that they have had certain disputes regarding the actual ownership status of the Loan and/or the Junior Mezzanine Loan and, subject to Paragraph 12T hereof, have resolved such disputes as evidenced by their agreements herein and in the Junior Mezzanine Loan Payoff Agreement.

J.      Subject to obtaining Bankruptcy Court approval of this Agreement and the Junior Mezzanine Loan Payoff Agreement and subject to the terms hereof, including, without limitation, Paragraph 12T hereof, Lender Parties have agreed that LBHI is the owner and holder of the Loan and LBHI has agreed to accept the Payoff Amount (as hereinafter defined) as full repayment of the Loan.

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower, Guarantors and the Lender Parties hereby agree as follows:

1.      Repayment of Loan.

A.      Amount of Repayment.  Borrower and Guarantors acknowledge that LBHI cannot agree to accept a discounted payoff of the Loan without obtaining Bankruptcy Court approval of same.  LBHI agrees in good faith to seek Bankruptcy Court approval of a discounted payoff in an amount equal to the sum of (i) the entire outstanding principal balance of the Loan, and (ii) $100,000 on account of accrued and outstanding interest in full satisfaction of all accrued and unpaid interest and other charges under the Loan (except as expressly provided in Section 2(C) herein).  LBHI agrees to prosecute such application for Bankruptcy Court approval in good faith and with due diligence and shall not abandon such application until approved or denied by the Bankruptcy Court.  Notwithstanding, the foregoing, in the event such Bankruptcy Court approval has not been obtained as of the Closing Date, Borrower shall pay to LBHI an amount equal to the sum of the entire outstanding principal balance of the Loan and all then accrued and unpaid interest, the parties shall close hereunder and LBHI agrees that, to the extent LBHI thereafter obtains approval of the Bankruptcy Court to such discounted payment on account of accrued and outstanding interest, LBHI shall pay to Borrower the excess interest payments paid by Borrower hereunder.  The amount required to be paid by Borrower to LBHI as provided above is referred to herein as the "**Payoff Amount**").

B.      Manner of Payment.  The Payoff Amount shall be paid as follows:

1.      Borrower shall deposit the Payoff Amount and the Closing Costs (as hereinafter defined) with Commonwealth Land Title Insurance Company ("**Escrow Holder**"), having an address c/o New York Land Services, 630 Third Avenue, New York, New York 10017, Attn: Counsel at least one (1) Business Day prior to the Closing Date.

2.      All sums required to be delivered by Borrower hereunder on or before the Closing Date shall be delivered by wire transfer or in other immediately available funds.

2.      Escrow.  This Agreement shall constitute both an agreement between the Lender Parties and the Borrower Parties and formal joint escrow instructions to the Escrow Holder, which instructions shall be binding upon such parties and Escrow Holder.  LBHI and Borrower have established an escrow ("**Escrow**") with Escrow Holder by delivery to Escrow Holder of a fully-executed copy of this Agreement.  Any and all amounts delivered to the Escrow Holder by the Borrower pursuant to the terms of this Agreement (collectively, the "**Escrowed Funds**") as well as all documents received by the Escrow Holder pursuant to this Agreement (collectively, the "**Escrowed Documents**") shall be held by Escrow Holder in escrow in accordance with the provisions of Exhibit B attached hereto and incorporated herein by reference.  Escrow Holder has executed this Agreement for the sole and exclusive purpose of evidencing its agreement to the provisions of Paragraphs 2 through 5 hereof and Exhibit B attached hereto.

A.      Tax Identification Numbers.  LBHI represents and warrants that LBHI's tax identification number is 13-3399371.  Borrower represents and warrants that Borrower's tax identification number is 20-4596330.

B.      Close of Escrow.  Provided that all conditions precedent to the close of Escrow have been satisfied, Escrow Holder shall close the Escrow ("**Close of Escrow**") on the date which is 30 days after the date hereof (the "**Initially Scheduled Closing Date**") or such earlier date agreed upon by LBHI and Borrower; provided, however, that Borrower, on written notice to the Lender Parties, shall have the one-time right given at any time on or before the Initially Scheduled Closing Date, to adjourn the Close of Escrow to a date (such adjourned date being referred to herein as the "**Rescheduled Closing Date**"), not later than the date which is 30 days from the Initially Scheduled Closing Date (such Initially Scheduled Closing Date or, if Borrower elects to adjourn the Close of Escrow as hereinabove provided, the Rescheduled Closing Date is referred to as the "**Closing Date**").  If the Escrow is not closed on or before the Closing Date, or if any condition set forth in Paragraph 4A is not satisfied on or before the date set forth therein for the satisfaction of such condition, then any Lender Party shall have the right (in addition to LBHI's rights under the Loan Documents), by written notice to Borrower, the other Lender Parties and Escrow Holder, to terminate this Agreement and the obligations of the parties hereunder, but such termination shall not release Borrower from liability for any breach of this Agreement occurring prior to the termination of this Agreement.  Borrower and each Guarantor acknowledge and agree that the agreement of LBHI to accept the Payoff Amount contained in Paragraph 1 in full satisfaction of the Loan shall be null and void if the Close of Escrow does not occur on or before the Closing Date.

C.      Closing Costs.  Borrower shall pay for the following fees and expenses (the "**Closing Costs**"): (i) any and all escrow fees, filing and recording charges, recording taxes (if any), and any other similar costs and expenses incurred in connection with the transactions contemplated by this Agreement, and (ii) Lender Parties' reasonable attorneys' fees of Paul, Hastings, Janofsky & Walker LLP only incurred in connection with the preparation and negotiation of all documentation for, and the consummation of, the transactions contemplated by this Agreement.

3.      Deliveries To Escrow.  Borrower and LBHI shall deliver or cause to be delivered to Escrow Holder to be held in escrow pending satisfaction of the conditions to closing provided herein, the following items at least one (1) Business Day prior to the Closing Date:

A.      By Borrower.

(i)    Borrower shall deliver or cause to be deposited with Escrow Holder the sum of (x) the Payoff Amount, (y) the Closing Costs, and (z) all other amounts to be paid by Borrower hereunder by wire transfer to Escrow Holder.

(ii)    Borrower shall deliver to Escrow Holder five (5) duly executed and acknowledged releases (each, a "**Release**") in the form attached hereto as <u>Exhibit C</u>.

B.    <u>By LBHI</u>.  LBHI shall deliver to Escrow Holder (i) one original loan payoff letter (the "**Loan Payoff Letter**") stating that upon the Close of Escrow and receipt by LBHI of the Payoff Amount and all other amounts to be paid by Borrower hereunder, but subject to the terms and conditions of this Agreement, the lien of the Pledge Agreement will be automatically released and Borrower shall be authorized to file terminations of any and all UCC financing statements in favor of LBHI in connection with the Loan, (ii) the original Note with an instruction to Escrow Holder to mark such original Note "cancelled" upon the Close of Escrow and (iii) five (5) duly executed and acknowledged releases executed by each of the Lender Parties in the form attached hereto as <u>Exhibit D</u>.

4.    <u>Conditions to Close of Escrow</u>.

A.    <u>Conditions Precedent to LBHI's Obligation to Close Escrow</u>.  The obligation of LBHI to close Escrow shall be subject to the satisfaction of all of the following conditions precedent:

1.    <u>Borrower's Performance</u>.  Subject to Paragraph 6 of this Agreement, no further Event of Default under the Loan Documents shall have occurred.

2.    <u>Simultaneous Payoff of the Senior Loan and the Junior Mezzanine Loan</u>.  The Senior Lender and the Junior Mezzanine Lender shall have simultaneously received payment in full satisfaction of all amounts outstanding under, respectively, the Senior Loan (or, if the Senior Lender is not simultaneously paid in full, the Senior Lender shall have consented to the receipt by LBHI and the Junior Mezzanine Lender of the payments contemplated by, respectively, this Agreement and the Junior Mezzanine Loan Payoff Agreement, which consent shall be pursuant to a written agreement in form and substance satisfactory to the Lender Parties) and the Junior Mezzanine Loan, in the case of Junior Mezzanine Lender, pursuant to the Junior Mezzanine Loan Payoff Agreement being entered into concurrently herewith.

B.    <u>Conditions Precedent to Borrower's Obligation to Close Escrow</u>.  The obligation of Borrower to close Escrow shall be subject to (1) Lender Parties performing, satisfying and complying with all covenants, agreements and conditions required by this Agreement to be performed or complied with by Lender Parties hereunder on or before the Closing Date, and (2) Lender Parties' performing, satisfying and complying with all covenants, agreements and conditions required by the Junior Mezzanine Loan Payoff Agreement to be performed or complied with by Lender Parties thereunder on or before the Closing Date.

5.    <u>Close of Escrow</u>.  At the Close of Escrow, Escrow Holder shall promptly undertake all of the following in the order set forth below:

A.    <u>Funds</u>.  Disburse the Escrowed Funds deposited with Escrow Holder by Borrower as follows:

1.      Wire funds in the amount of the Payoff Amount to one or more accounts directed in writing by LBHI and provided to Escrow Holder by LBHI prior to the Close of Escrow.

2.      Wire the Closing Costs in accordance with the written instruction of LBHI delivered to the Escrow Holder prior to the Close of Escrow.

3.      Wire all other amounts deposited by Borrower with Escrow Holder to pay the amounts owed by Borrower hereunder at the Close of Escrow, which amounts shall be wired to one or more accounts directed in writing by LBHI and provided to Escrow Holder by LBHI prior to the Close of Escrow.

B.      <u>Delivery of Documents to LBHI and the other Lender Parties</u>.  Deliver to each of the Lender Parties one fully executed original of the Release.

C.      <u>Delivery of Documents To Borrower</u>.  Deliver to Borrower (1) the original Loan Payoff Letter, (2) the original Note marked "cancelled" and (3) five (5) duly executed and acknowledged releases executed by each of the Lender Parties in the form attached hereto as <u>Exhibit D</u>.

6.      <u>Default under the Loan Documents</u>.  Provided that no Event of Default (which, for the avoidance of doubt includes an Event of Default contemplated by Paragraph 9 of this Agreement) under the Loan Documents (other than the failure of Borrower to make (i) full payment of all interest due on December 9, 2008 under the Note and (ii) all subsequent monthly payments due under the Note), which failures continue after the expiration of all applicable grace or cure periods therefor) has occurred, LBHI agrees not to exercise any remedies under the Loan Documents which LBHI may have resulting solely from such defaults during the period (the "<u>Forbearance Period</u>") from the Effective Date through and including the earlier of (x) the Closing Date and (y) the termination of this Agreement.  Nothing contained in the foregoing, however, shall limit or restrict LBHI from taking any action during the Forbearance Period that LBHI may take under the Loan Documents or at law or in equity necessary or appropriate in LBHI's discretion to preserve, protect or defend any of the collateral described in the Loan Documents including, without limitation (i) defending, intervening in or filing of any legal proceedings relating to any such collateral; (ii) the sending of any notices to any persons or entities concerning the existence of security interests or liens in favor of LBHI relating to such collateral; or (iii) otherwise preserving any of LBHI's rights, remedies or positions.

7.      <u>Representations and Warranties</u>.  As a material inducement to Lender Parties' execution of this Agreement, Borrower hereby represents and warrants to Lender Parties as follows:

A.      <u>Consents</u>.  Borrower has obtained all consents and permissions related to the transactions herein contemplated and required under any covenant, agreement, encumbrance, law or regulation.

B.      <u>Due Authorization, Execution, and Organization.</u>  This Agreement and all agreements, instruments and documents herein provided to be executed by Borrower and/or the Guarantors are and on the Closing Date will be duly authorized, executed and delivered by and are and will be binding upon Borrower.  Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and duly authorized and qualified to do all things required of it under this Agreement.  Borrower has the capacity and authority to enter into this Agreement and consummate the transactions herein provided and nothing prohibits or restricts the right or ability of Borrower to close the transactions contemplated hereunder and carry out the terms hereof.

C.    Value of Project.  In Borrower's judgment, after subtracting the amount of the Senior Loan, the fair market value of the Project is greater than the Payoff Amount.

D.    Solvency.  Borrower and each of the Guarantors is solvent, and will not become insolvent by reason of their entry into this Agreement or the payment of the Payoff Amount or the other sums required to be paid by Borrower pursuant to this Agreement.

The provisions of this Paragraph 7 shall survive the Close of Escrow or the termination of this Agreement.

8.    Release.

A.    Release.  As further consideration for Lender Parties' execution of this Agreement, each of Borrower and each of the Guarantors for itself and its respective affiliates, successors and assigns (collectively, the "**Borrower Parties**"), as of the Effective Date and as of the Closing Date, hereby absolutely and irrevocably waives, releases, and forever discharges each of the Lender Parties and their respective partners, officers, creditors, shareholders, directors, agents, attorneys, servants, contractors, employees, parent and subsidiary corporations and predecessors-in-interest (collectively, the "**Released Parties**") from any and all claims, rights, demands, actions, suits, causes of actions, damages, counterclaims, defenses, losses, costs, obligations, liabilities and expenses of every kind or nature (collectively, "**Claims**"), known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen, arising out of or relating directly or indirectly to any circumstances or state of facts pertaining to the Loan, the Loan Documents or the Project, including claims related to the actions of Lender Parties or their respective predecessors in administering the Loan or negotiating the Loan Documents and claims of lender liability, duress, illegality, usury, waiver, bad faith, interference in the business of the Borrower Parties, or any nonperformance of any agreement or obligation related thereto, or any statements, representations, acts or omissions, intentional, willful, negligent or innocent, by any of the Released Parties in any way connected with, relating to or affecting, directly or indirectly, the Loan, the Loan Documents, or the Project; provided, however, that the foregoing shall not constitute a release of any of any Lender Party's obligations under this Agreement or any claim against such Lender Party based on fraud committed by such Lender Party.

B.    Non-Reliance.  Each of the Borrower Parties hereby acknowledges that it has not relied upon any representation of any kind made by any of the Lender Parties in making the foregoing release.

C.    No Transfer of Claims.  Each of the Borrower Parties represents and warrants that it has not heretofore assigned, or transferred, or purported to assign or to transfer, to any person or entity, any Claims released hereunder or any portion thereof or interest therein, and each of the Borrower Parties agrees to indemnify, defend and hold the Released Parties harmless from and against any and all such Claims based on or arising out of any such assignment or transfer or purported assignment or transfer.

D.    No Admission of Liability.  It is understood and agreed that this Paragraph 8 shall not be deemed or construed as an admission by Lender Parties of liability of any nature whatsoever arising from or related to the subject of this Paragraph 8.

E.    Advice of Counsel.  Each of the Borrower Parties hereby agrees, represents and warrants that it has had advice of counsel of its own choosing in negotiations for and the preparation of this Agreement, including the foregoing release, that it has read the provisions of this Agreement, including the foregoing release, and that it is fully aware of its contents and legal effect.

F.    Damages and Attorneys' Fees.    Each of the Borrower Parties agrees that if it hereafter commences, joins in, or in any manner seeks, relief through any suit arising out of, based upon, or relating to any of the Claims or in any manner asserts against such Released Parties, or any of them, any of the Claims, then the undersigned will pay to such Released Parties, and each of them, in addition to any other damages caused to such Released Parties thereby, all reasonable attorneys' fees incurred by such Released Parties in defending or otherwise responding to said suit or claim.

G.    Survival.    The provisions of this Paragraph 8 shall survive the Close of Escrow or termination of this Agreement.

9.    Default.    Any breach by Borrower or any Guarantor of this Agreement that continues after the expiration of any applicable notice or grace period expressly provided herein shall be an automatic Event of Default under the Loan Agreement (with no further notice, cure or grace period).

10.    Relief from Stay.

A.    Agreement.    As additional consideration for the Lender Parties' execution of this Agreement, each of the Borrower Parties agrees that:  (i) in the event of a bankruptcy filing by or against it, it shall not reject this Agreement, nor contest any claim or assertion by any Lender Party that this Agreement is binding between the parties, and that valuable consideration has been received by Borrower for same; (ii) Lender Parties shall receive immediate relief from the automatic stay provisions of the United States Bankruptcy Code following any bankruptcy petition which any of the Borrower Parties may file or which may be filed against any of the Borrower Parties and that it shall in no event contest a motion to lift the automatic stay filed by Lender Parties; and (iii) any contrary action taken by any of the Borrower Parties with respect to the matters set forth above shall be deemed to be in bad faith and are agreed to constitute violations of Federal Rules of Civil Procedure 11 and Bankruptcy Rule 9011.

B.    Functional Equivalent of Chapter 11.    Each of the Borrower Parties acknowledges that this Agreement is of considerable benefit to it, and represents the functional equivalent of a restructuring of Borrower's business under the United States Bankruptcy Code because, among other things, (i) Borrower has received forbearances and financial accommodations from Lender Parties; and (ii) Borrower was afforded by Lender Parties an opportunity to cause a sale or refinancing of the Project, all in lieu of a bankruptcy petition, which Borrower elected not to file.  Borrower has thus been provided with a full and fair opportunity to reestablish or reorganize its financial stake in the Project, and has elected not to seek a further restructuring of its business.  Each of the Borrower Parties understands that Lender Parties are entering into this Agreement in reliance on Borrower's representation that it will not seek a further restructuring of its business.

11.    Miscellaneous.

A.    Survival.    All warranties, representations, covenants, obligations and agreements contained in this Agreement shall survive the Close of Escrow hereunder.  All warranties and representations shall be effective regardless of any investigation made or which could have been made.

B.    Further Instruments.    The parties shall cause to be executed, acknowledged or delivered such further instruments and documents as may be reasonably necessary to carry out the intent and purpose of this Agreement.

C.    Cumulative Remedies.    No remedy conferred upon a party in this Agreement is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law, in equity or by statute (except as otherwise expressly herein provided).

D.    No Waiver.    No waiver by Lender Parties of any breach of this Agreement or of any warranty or representation hereunder by Borrower shall be deemed a waiver of any other breach by Borrower (whether preceding or succeeding and whether or not of the same or similar nature), and no acceptance of payment or performance by Lender Parties after any breach by Borrower shall be deemed to be a waiver of any breach of this Agreement or of any representation or warranty hereunder by Borrower, whether or not Lender Parties know of such breach at the time it accepts such payment or performance.  No failure or delay by any Lender Party to exercise any right it may have by reason of the default of Borrower shall operate as a waiver of default or modification of the Loan, the Loan Documents or this Agreement or shall prevent the exercise of any right by any Lender Party.

E.    Governing Law.    THIS AGREEMENT WAS NEGOTIATED IN PART IN THE STATE OF NEW YORK, AND THE LOAN WAS MADE BY LBHI FROM THE STATE OF NEW YORK, AND THE PROCEEDS OF THE LOAN WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE LENDER PARTIES, BORROWER AND EACH GUARANTOR AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (EXCLUDING APPLICATION OF ANY PRINCIPLE OF CONFLICT OF LAWS WHICH WOULD DIRECT THE APPLICATION OF THE LAW OF ANY OTHER JURISDICTION) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW OR NOT PROHIBITED BY LAW, BORROWER AND EACH GUARANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT, AND THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO §5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

F.    Jurisdiction.

1.    SUIT BY BORROWER OR GUARANTORS.    BORROWER AND EACH GUARANTOR HEREBY AGREES THAT ANY LEGAL SUIT, ACTION OR PROCEEDING BROUGHT BY BORROWER AND/OR EITHER GUARANTOR OR ANY AFFILIATE THEREOF AGAINST ANY LENDER PARTY AND/OR SERVICER (OTHER THAN COMPULSORY COUNTERCLAIMS PERMITTED HEREUNDER IN CONNECTION WITH ANY ACTION, SUIT OR PROCEEDING COMMENCED BY ANY LENDER PARTY IN A JURISDICTION OUTSIDE OF NEW YORK) ARISING OUT OF OR RELATING TO THE LOAN, THIS AGREEMENT OR ANY OF THE LOAN DOCUMENTS OR RELATING TO THE PROJECT SHALL ONLY BE INSTITUTED BY BORROWER, GUARANTORS OR ANY AFFILIATE THEREOF IN COURTS OF THE STATE OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK OR THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK. BORROWER AND EACH GUARANTOR HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO BRING ANY LEGAL OR EQUITABLE SUIT, ACTION OR PROCEEDING AGAINST ANY LENDER PARTY AND/OR SERVICER

ARISING OUT OF OR RELATING TO THE LOAN, THIS AGREEMENT OR ANY OF THE LOAN DOCUMENTS OR RELATING TO THE PROJECT IN ANY OTHER COURT OTHER THAN COURTS OF THE STATE OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK OR THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK.

2.    SUIT BY ANY LENDER PARTY.  WITH RESPECT TO ANY CLAIM OR ACTION ARISING HEREUNDER OR UNDER THE LOAN DOCUMENTS, BORROWER AND GUARANTOR (1) IRREVOCABLY SUBMIT TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK, (2) AGREE THAT ALL SUCH CLAIMS OR ACTIONS MAY BE HEARD AND DETERMINED IN SUCH COURTS OF THE STATE OF NEW YORK OR, TO THE EXTENT PERMITTED BY LAW, IN SUCH FEDERAL COURT AND (3) IRREVOCABLY WAIVE ANY (a) OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY LOAN DOCUMENT BROUGHT IN ANY SUCH COURT AND (b) ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.  NOTHING IN THIS AGREEMENT WILL BE DEEMED TO PRECLUDE ANY LENDER PARTY FROM BRINGING AN ACTION OR PROCEEDING WITH RESPECT HERETO IN ANY OTHER JURISDICTION.

3.    DESIGNATION OF AGENT FOR SERVICE OF PROCESS. BORROWER AND EACH GUARANTOR WILL MAINTAIN AN AGENT FOR SERVICE OF PROCESS IN NEW YORK, NEW YORK WITH RESPECT TO THIS AGREEMENT.  BORROWER AND EACH GUARANTOR DESIGNATE CORPORATION SERVICE COMPANY, WITH OFFICES ON THE DATE HEREOF AT 1131 AVENUE OF THE AMERICAS, SUITE 3100, NEW YORK, NY 10036-6710, TO RECEIVE FOR AND ON BEHALF OF BORROWER OR SUCH GUARANTOR (AS THE CASE MAY BE) SERVICE OF PROCESS IN NEW YORK, NEW YORK WITH RESPECT TO THIS AGREEMENT.  BORROWER OR SUCH GUARANTOR, AS THE CASE MAY BE, SHALL PROVIDE TO LENDER PARTIES AT LEAST THIRTY (30) DAYS PRIOR WRITTEN NOTICE BEFORE CHANGING SUCH DESIGNATION.  BORROWER AND GUARANTOR FURTHER AGREE THAT THE FAILURE OF ITS AGENT FOR SERVICE OF PROCESS TO GIVE IT NOTICE OF ANY SERVICE OF PROCESS WILL NOT IMPAIR OR AFFECT THE VALIDITY OF SUCH SERVICE OR OF ANY JUDGMENT BASED THEREON.  IN ADDITION, BORROWER AND GUARANTOR IRREVOCABLY CONSENT TO SERVICE OF PROCESS BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO IT AT ITS ADDRESS GIVEN OR REFERRED TO IN THIS AGREEMENT.

G.    WAIVER OF RIGHT TO TRIAL BY JURY.  BORROWER, LENDER PARTIES AND EACH GUARANTOR HEREBY EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY FOR ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS AGREEMENT OR THE LOAN DOCUMENTS OR (2) IN ANY WAY RELATING TO THE PROJECT, THE LOAN, THE LOAN DOCUMENTS OR THE JUNIOR MEZZANINE LOAN DOCUMENTS OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND BORROWER, LENDER PARTIES AND EACH GUARANTOR HEREBY AGREE AND CONSENT THAT ANY OF THEM MAY FILE AN ORIGINAL COUNTERPART OF THIS AGREEMENT OR A COPY OF THIS

SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF ANY RIGHT THEY MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

        H.     No Third Party Beneficiaries.  Nothing in this Agreement, express or implied, is intended to confer any rights or remedies upon any person, other than the parties hereto and, subject to any restrictions on assignment herein contained, their respective successors and assigns.

        I.     Amendments.  This Agreement may be amended by written agreement of amendment executed by all parties hereto, but not otherwise.

        J.     Attorneys' Fees.  If any lawsuit is commenced to enforce any of the terms of this Agreement, the prevailing party will have the right to recover its reasonable attorneys' fees and costs of suit from the other party.  Without limitation on anything contained in the Loan Documents, in the event that any Lender Party shall be a party to any legal proceeding instituted in connection with or arising out of the Loan or this Agreement, Borrower agrees to pay to such Lender Party all sums paid or incurred by such Lender Party as costs and expenses in the legal proceedings, together with reasonable attorneys' fees.  This subparagraph J shall survive the Close of Escrow or termination of this Agreement.

        K.     Effect on Loan Documents.  Neither the provisions of, nor any performance under, this Agreement (including any payments by Borrower under this Agreement) shall amend, modify, supplement, extend, delay, renew, terminate, waive, release or otherwise limit or prejudice LBHI's rights and remedies or Borrower's or either Guarantor's obligations under the Loan Documents (including LBHI's right to receive full payment as well as late charges, delinquent interest and all other charges provided for in the Loan Documents).  Notwithstanding the foregoing, if and only if LBHI receives the full Payoff Amount and the Close of Escrow occurs, upon the Close of Escrow, the Loan Documents shall be terminated and none of the parties thereto shall have any further obligations thereunder (except for those obligations that are intended to survive repayment in full of the Loan) and LBHI shall be deemed to have agreed not to sue any of the Borrower Parties for any breach of any obligation under the Loan Documents; provided, however, that the foregoing covenant shall in no event extend to the continuing liabilities and obligations of any Borrower Party relating to, arising out of, or in connection with the breach of any representation, warranty, indemnity, covenant or agreement set forth in this Agreement, the Loan Documents or in any document executed under or in connection with this Agreement or the Loan Documents that are intended to survive the repayment in full of the Loan, or to any indemnities in favor of LBHI under any Loan Document that are intended to survive the repayment in full of the Loan; and, provided further, that the covenant by LBHI pursuant to this subparagraph shall be void from its inception, and all liabilities and obligations of Borrower Parties under the Loan Documents shall continue in full force and effect as they existed immediately prior to the Effective Date, in the event:

        1.     Any of the Borrower Parties shall take any act or make any claim of rescission of this Agreement or make any other claim which is inconsistent with this Agreement; or

        2.     A receiver, liquidator or trustee shall be appointed for Borrower and/or any Guarantor or if Borrower and/or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by Borrower and/or any Guarantor, or if ay proceeding for the dissolution or liquidation of Borrower and/or any Guarantor shall be instituted, provided, however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Borrower and/or any Guarantor, upon same not being discharged, stayed or dismissed within thirty (30) days.

L.    No Agreement on Value.  The parties hereto specifically acknowledge and agree that the Payoff Amount does not necessarily reflect the parties' views regarding the value of the Loan or the membership interests encumbered by the Loan, and such amount shall not be used as evidence of value in any action or proceeding involving Lender Parties, on the one hand, and Borrower or either Guarantor, or all of them, on the other hand.

M.    Entire Agreement.  This Agreement and the Junior Mezzanine Loan Payoff Agreement contain the entire agreement between the parties respecting the matters herein set forth and supersedes all prior agreements between the parties hereto respecting such matters.

N.    Time of the Essence.  Time is of the essence of this Agreement.

O.    Severability.  If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

P.    Notices.  Any notice which a party is required or may desire to give the other shall be in writing and may be sent by personal delivery or by mail (either (1) by United States registered or certified mail, return receipt requested, postage prepaid, or (2) by Federal Express or similar generally recognized overnight carrier regularly providing proof of delivery), addressed as follows (subject to the right of a party to designate a different address for itself by notice similarly given):

---

**To Borrower**:

c/o Magnum Management, LLC
270 Lafayette Street
New York, NY 10012
Attn:  Benjamin Shaoul

With a copy to:

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Attn:  Andrew L. Herz, Esq.

**To Ravner**:

c/o Magnum Management, LLC
270 Lafayette Street
New York, NY 10012
Attn:  Marc Ravner

With a copy to:

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

---

Attn:  Andrew L. Herz, Esq.

**To Shaoul**:

c/o Magnum Management, LLC
270 Lafayette Street
New York, NY 10012
Attn:  Benjamin Shaoul

With a copy to:

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Attn:  Andrew L. Herz, Esq.

**To Lender Parties**:

**LBHI**

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 46th Floor
New York, NY  10020
Attn:    Joelle Halperin
MTS No.:  WH6456

<u>With copies to</u>:

Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022
Attn:  Kenneth J. Friedman, Esq.

TriMont Real Estate Advisors, Inc.
Monarch Tower
3424 Peachtree Road, N.E.
Suite 2200
Atlanta, GA  30326
Attn:  Karen Mishkin
Ref. No.:  1141314

**LCPI**

Lehman Commercial Paper Inc.
1271 Avenue of the Americas, 46th Floor
New York, NY  10020
Attn:    Joelle Halperin
MTS No.:  WH6455

<u>With copies to</u>:

Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022
Attn:  Kenneth J. Friedman, Esq.

TriMont Real Estate Advisors, Inc.
Monarch Tower
3424 Peachtree Road, N.E.
Suite 2200
Atlanta, GA  30326
Attn:  Karen Mishkin
Ref. No.:  1141324

**Lehman Re**    -19-

Lehman Re Ltd.

> With copies to:
>
> Cadwalader, Wickersham & Taft LLP
> One World Financial Center
> New York, New York 10281
> Attention:  Gregory Petrick, Esq.
>
>
> KeyCorp Real Estate Capital Markets, Inc.
> 911 Main Street, Suite 1500
> Kansas City, Missouri 64105
> Attention:  Bryan Nitcher
>
>
> **Escrow Holder**
>
> Commonwealth Land Title Insurance Company
> c/o New York Land Services
> 630 Third Avenue
> New York, NY 10017
> Attn.: David Wilcomes

Any notice so given by mail shall be deemed to have been given as of the date of delivery (whether accepted or refused) established by U.S. Post Office return receipt or the overnight carrier's proof of delivery, as the case may be.  Any such notice not so given shall be deemed given upon receipt of the same by the party to whom the same is to be given.

Q.    Confidentiality.  Each of Borrower and each Guarantor shall keep the terms of this Agreement strictly confidential and shall not disclose or permit its employees or agents to disclose the terms of this Agreement (except for reasonably necessary disclosures to its attorneys, accountants, investors, agents, lenders and representatives and to Senior Lender and Junior Mezzanine Lender) and except as may be required by law or in connection with litigation between such parties and the Lender Parties.

R.    Counterparts.  This Agreement may be executed in any number of counterparts so long as each signatory hereto executes at least one such counterpart.  Each such counterpart shall constitute one original, but all such counterparts taken together shall constitute one and the same instrument.

S.    Joint and Several Liability.  Borrower and each Guarantor shall each be primarily, jointly and severally liable for each of the obligations and liabilities of Borrower under this Agreement and any document executed under or in connection with this Agreement and each Guarantor hereby waives any guarantor or suretyship defenses that may otherwise apply with respect thereto.

T.     Ownership of Senior Mezzanine Loan and Junior Mezzanine Loan.

(a) LBHI and LCPI acknowledge that neither they nor any assignee have had any interest in, claim to or lien on the Junior Mezzanine Loan and the documents evidencing and securing same or the proceeds thereof and that Lehman Re has the sole and exclusive right to retain all proceeds of such loan without any claim or interest of such parties.  To the extent that any of LBHI, LCPI or any of their respective representatives or agents is in possession of any of the Junior Mezzanine Loan Documents, such party shall cause such documents to be delivered to or at the direction of Lehman Re concurrently with the execution and delivery of this Agreement and the Junior Mezzanine Loan Payoff Agreement.

(b)  Lehman Re and LCPI acknowledge that neither they nor any assignee have had any interest in, claim to or lien on the Senior Mezzanine Loan and the documents evidencing and securing same or the proceeds thereof and that LBHI has the sole and exclusive right to retain all proceeds of such loan without any claim or interest of such parties.  To the extent that Lehman Re, LCPI or any of their respective representatives or agents is in possession of any of the Senior Mezzanine Loan Documents, such party shall cause such documents to be delivered to or at the direction of LBHI concurrently with the execution and delivery of this Agreement and the Junior Mezzanine Loan Payoff Agreement.

(c)  Notwithstanding the execution and delivery of this Agreement evidencing the resolution of the Lender Parties' disputes regarding the actual ownership status of the Loan and/or the Junior Mezzanine Loan, each of the Lender Parties acknowledges that (i) the Lender Parties have had, and continue to have, certain disputes regarding the actual ownership status of certain loan and other assets originated by LBHI and/or certain affiliates of LBHI other than the Loan and the Junior Mezzanine Loan (collectively, the "Remaining Assets"), (ii) nothing contained in this Agreement shall prejudice the claims that any of them may have against one another with respect to the Remaining Assets arising in connection with the Repurchase Agreement or any documents executed and/or delivered in connection with the Repurchase Agreement (the Repurchase Agreement and such other documents are collectively, the "Repo Documents"), and (iii) nothing contained in this Agreement shall be deemed to create an admission, stipulation and/or implication on the part of any of the Lender Parties as to the actual ownership status of the Remaining Assets.  Each of the Lender Parties further agrees that no negotiations and communications which may arise or may have previously arisen concerning this Agreement or the transactions contemplated hereby shall be admissible as evidence on any issue that is or may be before any court or administrative body in order to establish proof of ownership of the Remaining Assets or to create or establish any admission of liability as to, or for any other evidentiary purpose with respect to, the ownership status of the Remaining Assets.  In addition, nothing contained in this Agreement shall be deemed to waive any of the rights any of the Lender Parties may have against one another with respect to the Remaining Assets pursuant to the Repo Documents, and each of the Lender Parties hereby reserves all of its respective rights and remedies under such Repo Documents with respect to the Remaining Assets.

U.     Bankruptcy Court Approval.  Notwithstanding anything to the contrary contained in this Agreement, each of the parties hereto agrees that the effectiveness of this Agreement and each of the terms and provisions set forth in this Agreement and any of the transactions contemplated in this Agreement shall be subject, in their entirety, to the Bankruptcy Court entering a final order approving (i) this Agreement and the transactions contemplated herein and (ii) the Junior Mezzanine Loan Payoff Agreement and the transactions contemplated therein.

[NO FURTHER TEXT – SIGNATURES ON NEXT PAGE]

IN WITNESS WHEREOF, Borrower, each Guarantor and Lender Parties have executed this Agreement as of the day and year first above written.

**LENDER PARTIES**:

**LEHMAN BROTHERS HOLDINGS INC.,**
a Delaware corporation as Debtor and Debtor in
Possession in its chapter 11 case in the United
States Bankruptcy Court for the Southern District
of New York, Case No. 08-13555 (JMP)


By:_____
Name:_____
Title:_____


**LEHMAN COMMERCIAL PAPER INC.,**
a New York corporation as Debtor and Debtor in
Possession in its chapter 11 case in the United
States Bankruptcy Court for the Southern District
of New York, Case No. 08-13555 (JMP)


By: _____
Name: _____
Title: _____


**LEHMAN RE LTD.,**
a Bermuda corporation

By: Its Joint Provisional Liquidator (without personal liability)


By: _____
Name: Peter C.B. Mitchell
Title: Authorized Signatory


By: _____
Name: D. Geoffrey Hunter
Title: Authorized Signatory

**BORROWER**:

**LEMADRE MEZZ LLC**,
a Delaware limited liability company

By: _____
        Name:  Marc Ravner
        Its:  Executive Manager

By: _____
        Name:  Benjamin Shaoul
        Its:  Executive Manager

**GUARANTORS**:


_____
**MARC RAVNER**


_____
**BENJAMIN SHAOUL**

ACCEPTED AND AGREED TO AS
OF THE EFFECTIVE DATE SOLELY WITH
RESPECT TO PARAGRAPHS 2 THROUGH 5
AND EXHIBIT B:


**COMMONWEALTH LAND TITLE INSURANCE COMPANY**


By:_____

Name:_____

Title:_____ _

# JOINDER

The undersigned have joined in the execution of the Loan Payoff Agreement (M&B Senior Mezzanine Loan)(the "**Agreement**") dated as of May __, 2009 among Lehman Brothers Holdings Inc., a Delaware corporation, Le Madre Mezz LLC, a Delaware limited liability company ("**Borrower**"), Benjamin Shaoul and Marc Ravner, Lehman Commercial Paper Inc., a New York corporation, and Lehman Re Ltd., a Bermuda corporation, to which this Joinder has been attached, and each hereby covenants, represents, warrants, acknowledges and agrees that the undersigned:

(a)    has read and reviewed the Agreement, and is familiar with the terms and provisions thereof;

(b)    consents to the Borrower's execution of the Agreement without reservation or qualification;

(c)    for purposes of (i) paragraph 11F of the Agreement, the undersigned designates Corporation Service Company, with offices on the date hereof at 1131 Avenue of the Americas, Suite 3100, New York, NY 10036-6710, to receive for and on behalf of the undersigned service of process in New York, New York with respect to the Agreement and (without limiting anything hereinabove provided) the undersigned otherwise agrees to be bound by the provisions of such paragraph as if it was specifically referenced therein and process may be delivered to the undersigned at the address for the undersigned set forth in the following clause (ii), and (ii) paragraph 11P of the Agreement, notices under the Agreement shall be delivered to the undersigned c/o Magnum Management, LLC, 270 Lafayette Street, New York, NY 10012, with a copy to Patterson Belknap Webb & Tyler LLP, 133 Avenue of the Americas, New York, NY 10036, Attention: Andrew L. Herz, Esq.

**[END OF TEXT.  SIGNATURES BEGIN ON NEXT PAGE]**

**IN WITNESS WHEREOF**, the undersigned has duly executed this Joinder the day and year first above written.

**LEMADRE DEVELOPMENT LLC,**
a Delaware limited liability company


By:_____
      Name:     Marc Ravner
      Title:      Executive Manager


By:_____
      Name:     Benjamin Shaoul
      Title:      Executive Manager


**M&B MEZZ LLC**,
a Delaware limited liability company


By:_____
      Name:     Marc Ravner
      Title:      Executive Manager


By:_____
      Name:     Benjamin Shaoul
      Title:      Executive Manager

## EXHIBIT A

### LIST OF LOAN DOCUMENTS

All documents dated July 12, 2006, unless otherwise noted.

1. Mezzanine Construction Loan Agreement between Borrower and LBHI.

2. Secured Promissory Note (Mezzanine Loan) in the principal sum of $3,900,000.00 made by Borrower in favor of LBHI.

3. Pledge and Security Agreement (Interests in Project Owner) made by Borrower in favor of LBHI.

4. UCC-1 Financing Statement filed at No. [62768034]with the Delaware SOS naming Borrower as debtor.

5. Guaranty of Recourse Obligations (Mezzanine Loan) made by Guarantors in favor of LBHI.

6. Environmental and Hazardous Substance Indemnification Agreement (Mezzanine Loan) made by Mezzanine Borrower and Guarantors in favor of LBHI.

7. Mezzanine Reserve and Security Agreement between Borrower, LBHI and Servicer.

8. Mezzanine Lockbox, Pledge and Security Agreement between Borrower, LBHI and Servicer.

9. Certificate of Sources of Uses and Funds by Borrower in favor of  LBHI.

10. Note Severance Agreement dated August 15, 2007, between Borrower and LBHI.

11. Amended and Restated Secured Promissory Note in the principal amount of $7,270,000 dated August 15, 2007, by Borrower in favor of LBHI.

12. Omnibus Modification and Ratification Agreement dated August 15, 2007, between Borrower, Guarantor and LBHI.

13. Completion Guaranty (Senior Mezzanine Loan) dated August 15, 2007, by Guarantors in favor of LBHI.

14. Collateral Assignment of Interest Rate Cap Agreement dated August 15, 2007, between Borrower and LBHI.

15. Recognition Agreement (Architect – Issac & Stern) dated August 15, 2007.

16. Recognition Agreement (Engineer – MGJ) dated August 15, 2007.

17. Recognition Agreement (Engineer – Robert Silman Associates) dated August 15, 2007.

18. Certificate of Sources and Uses dated August 15, 2007, by Borrower in favor of LBHI.

**EXHIBIT B**

<u>ESCROW PROVISIONS</u>

Escrow Holder agrees to hold the Escrowed Funds and the Escrowed Documents in Escrow pursuant to the terms and provisions below:

(i)     The Escrowed Funds shall be held in a segregated Premium Commercial Money Market Deposit Account at JPMorgan Chase Bank, bearing interest at the interest rate determined by JPMorgan Chase Bank.  All taxes due with respect to any interest earned on the Escrowed Funds shall be the liability of the Borrower.  LBHI and Borrower understand and acknowledge that the account in which the Escrowed Funds will be held cannot be established until Escrow Holder receives an original executed Form W-9 from the Borrower.  LBHI and Borrower each also acknowledge that each is aware that the Federal Deposit Insurance Corporation (FDIC) coverage applies only to a cumulative maximum amount for each individual depositor all of depositor's accounts at the same or related institution.

(j)     Escrow Holder shall not be liable or responsible for any failure, refusal or inability of the depository into which the Escrowed Funds are deposited to pay the Escrowed Funds at Escrow Holder's direction.  Escrow Holder shall not be responsible for any interest except for such interest as is actually received, nor shall Escrow Holder be responsible for the loss of any interest arising form the closing of any account or the sale of any certificate of deposit or other instrument prior to maturity.

(k)     Escrow Holder shall have no duties or responsibilities other than those expressly set forth in the Agreement to which this Exhibit is attached.  Escrow Holder shall have no duty to enforce any obligation of any person to make any payment or delivery or to enforce any obligation of any person to perform any other act.  Escrow Holder shall be under no liability to the other parties hereto or to anyone else by reason of any failure on the part of any party hereto or any maker, guarantor, endorser or other signatory of any document or any other person to perform such person's obligations under any such document.  Except for amendments to the Agreement hereinafter referred to and except for joint instructions given to Escrow Holder by LBHI and Borrower relating to the Escrowed Funds and the Escrowed Documents, Escrow Holder shall not be obligated to recognize any agreement between any or all of the persons referred to herein, notwithstanding that references thereto may be made herein other than the Agreement and whether or not it has knowledge thereof.

(l)     In its capacity as escrow agent, Escrow Holder shall not be responsible for the genuineness or validity of any security, instrument, document or item deposited with it and shall have no responsibility other than to faithfully follow the instructions contained herein, and it is fully protected in acting in accordance with any written instrument given to it hereunder by any of the parties hereto and believed by Escrow Holder to have been signed by the proper person, provided that if such written instrument is inconsistent with this Agreement, both LBHI and Borrower must have executed such written instrument.  Escrow Holder may assume that any person purporting to give any notice hereunder has been duly authorized to do so.  Escrow Holder is acting as a stakeholder only with respect to the Escrowed Funds and the Escrowed Documents.  In the event that for any reason there is any dispute or uncertainty concerning any action to be taken hereunder, Escrow Holder shall take no action until it shall have received instructions in writing concurred to by LBHI and Borrower or until directed by a final order of judgment of a court of competent jurisdiction, whereupon Escrow Holder shall take such action in accordance with such instructions or such order.

(m)     It is understood and agreed that the duties of Escrow Holder are purely ministerial in nature.  Escrow Holder shall not be liable for any loss, costs or damage which it may incur

as a result of serving as escrow agent hereunder, except for any loss, costs or damage arising out of its willful misconduct or gross negligence. Escrow Holder shall not be liable to the other parties hereto or to anyone else for any action taken or omitted by it, or any action suffered by it to be taken or omitted, in good faith and in the exercise of reasonable judgment, except for acts of willful misconduct or gross negligence. Escrow Holder may rely conclusively and shall be protected in acting upon any order, notice, demand, certificate, opinion or advice of counsel (including counsel chosen by Escrow Holder), statement, instrument, report or other paper or document (not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and acceptability of any information therein contained) which is reasonably believed by Escrow Holder to be genuine and to be signed or presented by the proper person or persons. Escrow Holder shall not be bound by any notice or demand, or any waiver, modification, termination or rescission of the Agreement or any of the terms hereof, unless evidenced by a final judgment or decree of a court of competent jurisdiction in the State of New York or a Federal court in such State, or a writing delivered to Escrow Holder signed by the proper party or parties and, if the duties or rights of Escrow Holder are affected, unless it shall give its prior written consent thereto.

(n)       Escrow Holder shall have the right to assume in the absence of written notice to the contrary from the proper person or persons that a fact or an event by reason of which an action would or might be taken by Escrow Holder does not exist or has not occurred, without incurring liability to the other parties hereto or to anyone else for any action taken or omitted, or any action suffered by it to be taken or omitted, in good faith and in the exercise of reasonable judgment, in reliance upon such assumption.

(o)       Except in connection with Escrow Holder's willful misconduct or gross negligence, Escrow Holder shall be indemnified and held harmless jointly and severally by the Lender Parties and the Borrower Parties from and against any and all expenses or loss suffered by Escrow Holder (in its capacity as escrow agent), including reasonable attorneys' fees, in connection with any action, suit or other proceeding involving any claim, which arises out of or relates to the Agreement, the services of Escrow Holder hereunder or the monies and documents held by it hereunder. Promptly after the receipt by Escrow Holder of notice of any demand or claim or the commencement of any action, suit or proceeding, Escrow Holder shall, if a claim in respect thereof is to be made against any of the other parties hereto, notify such other parties hereto in writing; but the failure by Escrow Holder to give such notice shall not relieve any party from any liability which such party may have to Escrow Holder hereunder.

(p)       From time to time on and after the date hereof, Lender Parties and Borrower shall deliver or cause to be delivered to Escrow Holder such further documents and instruments and shall do and cause to be done such further acts as Escrow Holder shall reasonably request (it being understood that Escrow Holder shall have no obligation to make any such request) to carry out more effectively the provisions and purposes of this Agreement, to evidence compliance herewith or to assure itself that it is protected in acting hereunder.

(q)       If for any reason the Close of Escrow does not occur and either party makes a written demand upon Escrow Holder for payment or refund, as the case may be, of the Escrowed Funds or any portion thereof, or the delivery or return of the Escrowed Documents, Escrow Holder shall give written notice to the other party of such demand. If Escrow Holder does not receive a written objection from the other party to the proposed payment or refund of the Escrowed Funds, or portion thereof, or the delivery or return of the Escrowed Documents, as the case may be, within ten (10) Business Days after the giving of the notice described in the preceding sentence, Escrow Holder is hereby authorized to make such payment or refund, delivery or return; provided, however, if for any reason Escrow Holder in good faith shall elect not to make such payment, Escrow Holder shall continue to hold such amount until otherwise directed by written instructions from the parties to this Agreement or a final

judgment of a court of competent jurisdiction. Notwithstanding the foregoing, Escrow Holder shall have the right at any time to deposit the Escrowed Funds and Escrowed Documents with the Clerk of the Supreme Court of New York County, New York. Escrow Holder shall give written notice of such deposit to LBHI and Borrower. Upon such deposit, Escrow Holder shall be relieved and discharged of all further obligations and responsibilities hereunder.

(r)     Escrow Holder may resign at any time as escrow agent hereunder upon giving five (5) Business Days' prior written notice to that effect to each of the Lender Parties and Borrower. Any successor escrow agent shall be a nationally recognized title insurance company or a nationally recognized law firm selected by Borrower and reasonably accepted by Lender Parties. In such case, Escrow Holder shall no longer serve as escrow agent and shall deliver, against receipt, to such successor escrow agent, the Escrowed Funds and the Escrowed Documents held by Escrow Holder, to be held by such successor escrow agent pursuant to the terms and provisions of this Agreement. If no such successor has been designated on or before such party ceases to be escrow agent hereunder, whether by resignation or otherwise, Escrow Holder's obligations as escrow agent shall continue until such successor is appointed; provided, however, its sole obligation thereafter shall be to safely keep all monies and documents then held by it and to deliver the same to the person, firm or corporation designated as its successor or until directed by a final order or judgment of a court of competent jurisdiction, whereupon Escrow Holder shall make disposition thereof in accordance with such order. If no successor escrow agent is designated and qualified within five (5) Business Days after its resignation is effective, Escrow Holder shall no longer be considered the escrow agent and Escrow Holder shall apply to the Clerk of the Supreme Court of New York County, New York, for the appointment of a successor escrow agent.

(s)     Escrow Holder shall receive $500.00 as compensation for the performance of its duties under this Agreement (including this <u>Exhibit B</u>).

## EXHIBIT C
### FORM OF RELEASE OF LENDER PARTIES

This Release is made this __ day of _____, 2009, by and among LE MADRE MEZZ LLC, a Delaware limited liability company ("**Borrower**"), BENJAMIN SHAOUL, an individual ("**Shaoul**"), MARC RAVNER, an individual ("**Ravner**", and together with Shaoul, each a "**Guarantor**" and collectively, the "**Guarantors**") in favor of LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**"), LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**"), and LEHMAN RE LTD., a Bermuda corporation ("**Lehman Re**").  LBHI, LCPI and Lehman Re are hereinafter collectively referred to from time to time as "**Lender Parties**".

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  As further consideration for Lender Parties' execution and delivery of the Loan Payoff Agreement (M&B Senior Mezzanine Loan) dated as of May __, 2009 (the "**Loan Payoff Agreement**") and agreement to the transactions described therein, each of Borrower and each of the Guarantors for itself and its respective affiliates, successors and assigns (collectively, the "**Borrower Parties**"), as of the date hereof, hereby absolutely and irrevocably waives, releases, and forever discharges each of the Lender Parties and their respective partners, officers, creditors, shareholders, directors, agents, attorneys, servants, contractors, employees, parent and subsidiary corporations and predecessors-in-interest (collectively, the "**Released Parties**") from any and all claims, rights, demands, actions, suits, causes of actions, damages, counterclaims, defenses, losses, costs, obligations, liabilities and expenses of every kind or nature (collectively, "**Claims**"), known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen, arising out of or relating directly or indirectly to any circumstances or state of facts pertaining to the Loan, the Loan Documents or the Project, including claims related to the actions of any of the Lender Parties or their predecessors in administering the Loan or negotiating the Loan Documents and claims of lender liability, duress, illegality, usury, waiver, bad faith, interference in the business of the Borrower Parties, or any nonperformance of any agreement or obligation related thereto, or any statements, representations, acts or omissions, intentional, willful, negligent or innocent, by any of the Released Parties in any way connected with, relating to or affecting, directly or indirectly, the Loan, the Loan Documents, or the Project; provided, however, that the foregoing shall not constitute a release of any claim against any Lender Party based on fraud committed by such Lender Party.

2.  Terms used and not otherwise defined in this Release shall have the meanings given to such terms in the Loan Payoff Agreement.

3.  This Release may be executed in one or more counterparts each of which when taken together shall constitute but one and the same instrument.  This Release shall be governed by the laws of the State of New York.

IN WITNESS WHEREOF, the undersigned have executed this Release as of the date first written above.

BORROWER:


LEMADRE MEZZ LLC,
    a Delaware limited liability company


By:_____
    Name:  Marc Ravner
    Title:  Executive Manager


By:_____
    Name:  Benjamin Shaoul
    Title:  Executive Manager

GUARANTORS:


By:_____
    Name:  Marc Ravner


By:_____
    Name:  Benjamin Shaoul

**EXHIBIT D**

FORM OF RELEASE OF BORROWER PARTIES

This Release is made this __ day of _____, 2009, by and among LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**"), LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**"), and LEHMAN RE LTD., a Bermuda corporation ("**Lehman Re**"; LBHI, LCPI and Lehman Re are hereinafter collectively referred to from time to time as "**Lender Parties**") in favor of LEMADRE MEZZ LLC, a Delaware limited liability company ("**Borrower**"), BENJAMIN SHAOUL, an individual ("**Shaou**l"), MARC RAVNER, an individual ("**Ravner**", and together with Shaoul, each a "**Guarantor**" and collectively, the "**Guarantors**").  Borrower and the Guarantors are hereinafter collectively referred to from time to time as "**Borrower Parties**".

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    As further consideration for execution and delivery by Borrower and Guarantors of the Loan Payoff Agreement (M&B Senior Mezzanine Loan) dated as of May __, 2009 (the "**Loan Payoff Agreement**") and agreement to the transactions described therein, each of the Lender Parties for itself and its respective affiliates, successors and assigns (collectively, the "**Lender Group**"), as of the date hereof, hereby absolutely and irrevocably waives, releases, and forever discharges each of the Borrower Parties and their respective partners, officers, creditors, shareholders, directors, agents, attorneys, servants, contractors, employees, parent and subsidiary corporations and predecessors-in-interest (collectively, the "**Released Parties**") from any and all claims, rights, demands, actions, suits, causes of actions, damages, counterclaims, defenses, losses, costs, obligations, liabilities and expenses of every kind or nature (collectively, "**Claims**"), known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen, arising out of or relating directly or indirectly to any circumstances or state of facts pertaining to the Loan, the Loan Documents or the Project, including claims related to the actions of any of the Borrower Parties or their predecessors in connection with the Loan or negotiating the Loan Documents, or any nonperformance of any agreement or obligation related thereto, or any statements, representations, acts or omissions, intentional, willful, negligent or innocent, by any of the Released Parties in any way connected with, relating to or affecting, directly or indirectly, the Loan, the Loan Documents, or the Project; provided, however, that the foregoing shall not constitute a release of any claim against any Borrower Party based on fraud committed by such Borrower Party nor shall it constitute a release of any claim against any Borrower Party arising out of any covenant or indemnity under any of the Loan Documents that is intended to survive repayment in full of the Loan.

2.    Terms used and not otherwise defined in this Release shall have the meanings given to such terms in the Loan Payoff Agreement.

3.    This Release may be executed in one or more counterparts each of which when taken together shall constitute but one and the same instrument.  This Release shall be governed by the laws of the State of New York.

IN WITNESS WHEREOF, the undersigned have executed this Release as of the date first written above.

LENDER PARTIES:

**LEHMAN BROTHERS HOLDINGS INC.,**
a Delaware corporation as Debtor and Debtor in
Possession in its chapter 11 case in the United
States Bankruptcy Court for the Southern
District of New York, Case No. 08-13555 (JMP)


By:_____
    Name:
    Title:

**LEHMAN COMMERCIAL PAPER INC.,**
a New York corporation as Debtor and Debtor in
Possession in its chapter 11 case in the United
States Bankruptcy Court for the Southern
District of New York, Case No. 08-13555 (JMP)


By:_____
    Name:
    Title:

**LEHMAN RE LTD.,**
a Bermuda corporation

By:  Its Joint Provisional Liquidators (without
    personal liability)


By:_____
    Name: Peter C.B. Mitchell
    Title: Authorized Signatory


By:_____
    Name:  D. Geoffrey Hunter
    Title: Authorized Signatory

## **Exhibit C**

Draft LeMadre Junior Mezzanine Loan Pay-Off Agreement

# LOAN PAYOFF AGREEMENT
## (M&B JUNIOR MEZZANINE LOAN)

THIS LOAN PAYOFF AGREEMENT ("Agreement") is made as of the _____ day of May, 2009 (the "**Effective Date**"), by and among M&B MEZZ LLC, a Delaware limited liability company ("**Borrower**"), M&B REALTY DEVELOPMENT LLC, a Delaware limited liability company ("**Principal Pledgor**"), BENJAMIN SHAOUL, an individual ("**Shaoul**"), MARC RAVNER, an individual ("**Ravner**", and together with Shaoul, each a "**Guarantor**" and collectively, the "**Guarantors**"), LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**"), LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**") and LEHMAN RE LTD., a Bermuda corporation ("**Lehman Re**"). LBHI, LCPI and Lehman Re are hereinafter collectively referred to from time to time as "**Lender Parties**".

## R E C I T A L S

A.    Subject to the terms and conditions of that certain Junior Mezzanine Construction Loan Agreement (the "**Loan Agreement**"), dated August 15, 2007, by and between Borrower and LBHI, LBHI made a loan to Borrower in the amount of up to $7,200,000 (the "**Loan**"). All capitalized terms used but not defined herein shall have the meaning assigned to such terms in the Loan Agreement.

B.    The Loan is evidenced by that certain Consolidated Secured Promissory Note (Junior Mezzanine Loan) dated as of August 15, 2007 in the principal amount of $7,200,000 given by Borrower to LBHI and evidencing the Advances under the Loan (the "**Note**"), which Note further evidences Borrower's assumption of the obligations of Senior Mezzanine Borrower under a certain Severed Note dated as of August 15, 2007 in the principal amount of $888,230.83 given by Senior Mezzanine Borrower (as hereinafter defined) to LBHI (the "**Severed Note**").

C.    The Loan is secured by, among other things, (1) that certain Pledge and Security Agreement (Interests in Senior Mezzanine Borrower) given by Borrower to LBHI constituting a perfected pledge and assignment of Borrower's 100% interest in Senior Mezzanine Borrower, together with the Consent of Senior Mezzanine Borrower thereto and the Control Agreement thereto (collectively, the "**Pledge and Security Agreement (Interests in Senior Mezzanine Borrower)**"), and (2) that certain Pledge and Security Agreement (Interests in Junior Mezzanine Borrower) given by Principal Pledgor to LBHI constituting a perfected pledge and assignment of 100% of all interests in Borrower, together with the Consent of Junior Mezzanine Borrower thereto and the Control Agreement thereto (collectively, the "**Pledge and Security Agreement (Interests in Borrower)**" and together with the Pledge and Security Agreement (Interests in Senior Mezzanine Borrower), collectively, the "**Pledge Agreements**").

D.    Certain of Borrower's obligations under the Loan are guaranteed by Guarantors pursuant to (1) that certain Guaranty of Recourse Obligations (Junior Mezzanine Loan), dated as of August 15, 2007 (the "**Recourse Guaranty**"), (2) that certain Guaranty of Completion (Junior Mezzanine Loan), dated as of August 15, 2007 (the "**Completion Guaranty**") and (3) that certain Environmental and Hazardous Substance Indemnification Agreement (Junior Mezzanine Loan), dated as of August 15, 2007 (the "**Environmental Indemnity**").

E.    The Loan Agreement, the Note, the Severed Note, the Pledge Agreements, the Recourse Guaranty, the Completion Guaranty, the Environmental Indemnity and the other documents and instruments executed by Borrower and/or the Guarantors evidencing, securing or otherwise relating to the

Loan are hereinafter collectively referred to as the "**Loan Documents**."  A complete list of the Loan Documents is set forth on <u>Exhibit A</u> attached hereto and incorporated herein by reference.

F.    LBHI and LCPI are debtors under a pending bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") being jointly administered under Case No. 08-13555.

G.    LBHI made a loan to LeMadre Mezz LLC (the "**Senior Mezzanine Borrower**") in the amount of up to $7,270,000 (the "**Senior Mezzanine Loan**") pursuant to that certain Mezzanine Construction Loan Agreement dated July 12, 2006 as modified by Omnibus Modification and Ratification Agreement dated August 15, 2007.  Simultaneously upon the execution of this Agreement, the Lender Parties, Senior Mezzanine Borrower, and Guarantors are entering into that certain Loan Payoff Agreement (M&B Senior Mezzanine Loan) providing for the payoff of the Senior Mezzanine Loan on the terms provided therein (the "**Senior Mezzanine Loan Payoff Agreement**").

H.    Lender Parties advise that pursuant to the terms of that certain Master Repurchase Agreement dated as of July 9, 1999 (the "**Repurchase Agreement**") by and among Lehman Re, LCPI and Lehman Brothers Inc., Lehman Re and LCPI entered into certain agreements with respect to certain loans and other assets originated by LBHI and/or certain affiliates of LBHI, including the Loan.

I.    Lender Parties advise that they have had certain disputes regarding the actual ownership status of the Loan and/or the Senior Mezzanine Loan and, subject to Paragraph 12T hereof, have resolved such disputes as evidenced by their agreements herein and in the Senior Mezzanine Loan Payoff Agreement.

J.    Subject to obtaining Bankruptcy Court approval of this Agreement and the Senior Mezzanine Loan Payoff Agreement and subject to the terms hereof including, without limitation, Paragraph 12T hereof, Lender Parties have agreed that Lehman Re is the owner and holder of the Loan and Lehman Re has agreed to accept the Payoff Amount (as hereinafter defined) as full repayment of the Loan.

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower, Guarantors and the Lender Parties hereby agree as follows:

12.    <u>Repayment of Loan</u>.

A.    <u>Amount of Repayment</u>. Lehman Re shall accept, in full repayment of the Loan (including principal, interest and all other amounts payable by Borrower under the Loan Documents), the sum of ONE MILLION AND 00/100 DOLLARS ($1,000,000.00) (the "**Payoff Amount**") payable on the Closing Date (as hereinafter defined).  Borrower and Guarantors acknowledge that Lehman Re's agreement to accept a discounted payoff of the Loan as provided above is conditioned upon obtaining Bankruptcy Court approval of this Agreement and the Senior Mezzanine Loan Payoff Agreement.

B.    <u>Manner of Payment</u>.  The Payoff Amount shall be paid as follows:

1.    Borrower shall deposit the Payoff Amount and the Closing Costs (as hereinafter defined) with Commonwealth Land Title Insurance Company ("**Escrow Holder**"), having an address c/o New York Land Services, 630 Third Avenue, New York, New York 10017, Attn: Counsel at least one (1) Business Day prior to the Closing Date.

2.      All sums required to be delivered by Borrower hereunder on or before the Closing Date shall be delivered by wire transfer or in other immediately available funds.

13.      Escrow.  This Agreement shall constitute both an agreement between the Lender Parties and the Borrower Parties (as hereinafter defined) and formal joint escrow instructions to Escrow Holder, which instructions shall be binding upon such parties and Escrow Holder.  Lehman Re and Borrower have established an escrow ("**Escrow**") with Escrow Holder by delivery to Escrow Holder of a fully-executed copy of this Agreement.  Any and all amounts delivered to the Escrow Holder by the Borrower pursuant to the terms of this Agreement (collectively, the "**Escrowed Funds**") as well as all documents received by the Escrow Holder pursuant to this Agreement (collectively, the "**Escrowed Documents**") shall be held by Escrow Holder in escrow in accordance with the provisions of Exhibit B attached hereto and incorporated herein by reference.  Escrow Holder has executed this Agreement for the sole and exclusive purpose of evidencing its agreement to the provisions of Paragraphs 2 through 5 hereof and Exhibit B attached hereto.

A.      Tax Identification Numbers.  Lehman Re represents and warrants that Lehman Re's tax identification number is 98-0190817.  Borrower represents and warrants that Borrower's tax identification number is 20-4960067.

B.      Close of Escrow.  Provided that all conditions precedent to the close of Escrow have been satisfied, Escrow Holder shall close the Escrow ("**Close of Escrow**") on the date which is 30 days after the date hereof (the "**Initially Scheduled Closing Date**") or such earlier date agreed upon by Lehman Re and Borrower; provided, however, that Borrower, on written notice to the Lender Parties, shall have the one-time right given at any time on or before the Initially Scheduled Closing Date, to adjourn the Close of Escrow to a date (such adjourned date being referred to herein as the "**Rescheduled Closing Date**"), not later than the date which is 30 days from the Initially Scheduled Closing Date (such Initially Scheduled Closing Date or, if Borrower elects to adjourn the Close of Escrow as hereinabove provided, the Rescheduled Closing Date is referred to as the "**Closing Date**").  If the Escrow is not closed on or before the Closing Date, or if any condition set forth in Paragraph 4A is not satisfied on or before the date set forth therein for the satisfaction of such condition, then any Lender Party shall have the right (in addition to Lehman Re's rights under the Loan Documents), by written notice to Borrower, the other Lender Parties and Escrow Holder, to terminate this Agreement and the obligations of the parties hereunder, but such termination shall not release Borrower from liability for any breach of this Agreement occurring prior to the termination of this Agreement.  Borrower and each Guarantor acknowledge and agree that the agreement of Lehman Re to accept the Payoff Amount contained in Paragraph 1 in full satisfaction of the Loan shall be null and void if the Close of Escrow does not occur on or before the Closing Date.

C.      Closing Costs.  Borrower shall pay for the following fees and expenses (the "**Closing Costs**"): (i) any and all escrow fees, filing and recording charges, recording taxes (if any), and any other similar costs and expenses incurred in connection with the transactions contemplated by this Agreement, and (ii) Lender Parties' reasonable attorneys' fees of Paul, Hastings, Janofsky & Walker LLP only incurred in connection with the preparation and negotiation of all documentation for, and the consummation of, the transactions contemplated by this Agreement.

14.      Deliveries To Escrow.  Borrower and Lehman Re shall deliver or cause to be delivered to Escrow Holder to be held in escrow pending satisfaction of the conditions to closing provided herein, the following items at least one (1) Business Day prior to the Closing Date:

A.      By Borrower.

(i)    Borrower shall deliver or cause to be deposited with Escrow Holder the sum of (x)  the Payoff Amount, (y) the Closing Costs, and (z) all other amounts to be paid by Borrower hereunder by wire transfer to Escrow Holder.

(ii)    Borrower shall deliver to Escrow Holder five (5) duly executed and acknowledged releases (each, a "**Release**") in the form attached hereto as Exhibit C.

B.    By Lehman Re.  Lehman Re shall deliver to Escrow Holder (i) one original loan payoff letter (the "**Loan Payoff Letter**") stating that upon the Close of Escrow and receipt by Lehman Re of the Payoff Amount and all other amounts to be paid by Borrower hereunder, but subject to the terms and conditions of this Agreement, the liens of the Pledge Agreements will be automatically released and Borrower shall be authorized to file terminations of any and all UCC financing statements in favor of Lehman RE in connection with the Loan, (ii) the original Note with an instruction to Escrow Holder to mark such original Note "cancelled" upon the Close of Escrow, (iii) the original Severed Note with an instruction to Escrow Holder to mark such original Severed Note "cancelled" upon the Close of Escrow or a lost note affidavit in the form attached hereto as Exhibit E and (iv) five (5) duly executed and acknowledged releases executed by each of the Lender Parties in the form attached hereto as Exhibit D.

15.    Conditions to Close of Escrow.

A.    Conditions Precedent to Lehman Re's Obligation to Close Escrow.  The obligation of Lehman Re to close Escrow shall be subject to the satisfaction of all of the following conditions precedent:

1.    Borrower's Performance.   Subject to Paragraph 6 of this Agreement, no further Event of Default under the Loan Documents shall have occurred.

2.    Simultaneous Payoff of the Senior Loan and the Senior Mezzanine Loan.  The Senior Lender and the Senior Mezzanine Lender shall have simultaneously received payment in full satisfaction of all amounts outstanding under, respectively, the Senior Loan (or, if the Senior Lender is not simultaneously paid in full, the Senior Lender shall have consented to the receipt by Lehman Re and the Senior Mezzanine Lender of the payments contemplated by, respectively, this Agreement and the Senior Mezzanine Loan Payoff Agreement, which consent shall be pursuant to a written agreement in form and substance satisfactory to the Lender Parties) and the Senior Mezzanine Loan, in the case of Senior Mezzanine Lender, pursuant to the Senior Mezzanine Loan Payoff Agreement being entered into concurrently herewith.

B.    Conditions Precedent to Borrower's Obligation to Close Escrow.  The obligation of Borrower to close Escrow shall be subject to (1) Lender Parties performing, satisfying and complying with all covenants, agreements and conditions required by this Agreement to be performed or complied with by Lender Parties hereunder on or before the Closing Date and (2) Lender Parties' performing, satisfying and complying with all covenants, agreements and conditions required by the Senior Mezzanine Loan Payoff Agreement to be performed or complied with by Lender Parties thereunder on or before the Closing Date.

16.    Close of Escrow.  At the Close of Escrow, Escrow Holder shall promptly undertake all of the following in the order set forth below:

A.    Funds.  Disburse the Escrowed Funds deposited with Escrow Holder by Borrower as follows:

1.      Wire funds in the amount of the Payoff Amount to one or more accounts directed in writing by Lehman Re and provided to Escrow Holder by Lehman Re prior to the Close of Escrow.

2.      Wire the Closing Costs in accordance with the written instruction of Lehman Re delivered to the Escrow Holder prior to the Close of Escrow.

3.      Wire all other amounts deposited by Borrower with Escrow Holder to pay the amounts owed by Borrower hereunder at the Close of Escrow, which amounts shall be wired to one or more accounts directed in writing by Lehman Re and provided to Escrow Holder by Lehman Re prior to the Close of Escrow.

B.      <u>Delivery of Documents to Lehman Re and the other Lender Parties</u>. Deliver to each of the Lender Parties one fully executed original of the Release.

C.      <u>Delivery of Documents To Borrower</u>.   Deliver to Borrower (1) the original Loan Payoff Letter, (2) the original Note marked "cancelled", (3) the original Severed Note marked "cancelled" or a lost note affidavit in the form attached hereto as <u>Exhibit E</u> and (4) five (5) duly executed and acknowledged releases executed by each of the Lender Parties in the form attached hereto as <u>Exhibit D</u>.

17.      <u>Default under the Loan Documents</u>.  Provided that no Event of Default (which, for the avoidance of doubt includes an Event of Default contemplated by Paragraph 9 of this Agreement) under the Loan Documents (other than the failure of Senior Mezzanine Borrower to make (i) full payment of all interest due on December 9, 2008 under the Note (as defined in the Senior Mezzanine Loan Payoff Agreement) and (ii) all subsequent monthly payments due under the Note (as defined in the Senior Mezzanine Loan Payoff Agreement), which failures continue after the expiration of all applicable grace or cure periods therefor) has occurred, Lehman Re agrees not to exercise any remedies under the Loan Documents which Lehman Re may have resulting solely from such defaults during the period (the "<u>Forbearance Period</u>") from the Effective Date through and including the earlier of (x) the Closing Date and (y) the termination of this Agreement.  Nothing contained in the foregoing, however, shall limit or restrict Lehman Re from taking any action during the Forbearance Period that Lehman Re may take under the Loan Documents or at law or in equity necessary or appropriate in Lehman Re's discretion to preserve, protect or defend any of the collateral described in the Loan Documents including, without limitation (i) defending, intervening in or filing of any legal proceedings relating to any such collateral; (ii) the sending of any notices to any persons or entities concerning the existence of security interests or liens in favor of Lehman Re relating to such collateral; or (iii) otherwise preserving any of Lehman Re's rights, remedies or positions.

18.      <u>Representations and Warranties</u>.  As a material inducement to Lender Parties' execution of this Agreement, Borrower hereby represents and warrants to Lender Parties as follows:

A.      <u>Consents</u>.  Borrower has obtained all consents and permissions related to the transactions herein contemplated and required under any covenant, agreement, encumbrance, law or regulation.

B.      <u>Due Authorization, Execution, and Organization.</u>  This Agreement and all agreements, instruments and documents herein provided to be executed by Borrower and/or the Guarantors are and on the Closing Date will be duly authorized, executed and delivered by and are and will be binding upon Borrower.  Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and duly authorized and qualified to do all

things required of it under this Agreement. Borrower has the capacity and authority to enter into this Agreement and consummate the transactions herein provided and nothing prohibits or restricts the right or ability of Borrower to close the transactions contemplated hereunder and carry out the terms hereof.

        C.     Value of Project. In Borrower's judgment, after subtracting the amount of the Senior Loan and the Senior Mezzanine Loan, the fair market value of the Project is greater than the Payoff Amount.

        D.     Solvency. Borrower and each of the Guarantors is solvent, and will not become insolvent by reason of their entry into this Agreement or the payment of the Payoff Amount or the other sums required to be paid by Borrower pursuant to this Agreement.

     The provisions of this Paragraph 7 shall survive the Close of Escrow or the termination of this Agreement.

        19.    Release.

        A.     Release. As further consideration for Lender Parties' execution of this Agreement, each of Borrower, Principal Pledgor and each of the Guarantors for itself and its respective affiliates, successors and assigns (collectively, the "**Borrower Parties**"), as of the Effective Date and as of the Closing Date, hereby absolutely and irrevocably waives, releases, and forever discharges each of the Lender Parties and their respective partners, officers, creditors, shareholders, directors, agents, attorneys, servants, contractors, employees, parent and subsidiary corporations and predecessors-in-interest (collectively, the "**Released Parties**") from any and all claims, rights, demands, actions, suits, causes of actions, damages, counterclaims, defenses, losses, costs, obligations, liabilities and expenses of every kind or nature (collectively, "**Claims**"), known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen, arising out of or relating directly or indirectly to any circumstances or state of facts pertaining to the Loan, the Loan Documents or the Project, including claims related to the actions of Lender Parties or their respective predecessors in administering the Loan or negotiating the Loan Documents and claims of lender liability, duress, illegality, usury, waiver, bad faith, interference in the business of the Borrower Parties, or any nonperformance of any agreement or obligation related thereto, or any statements, representations, acts or omissions, intentional, willful, negligent or innocent, by any of the Released Parties in any way connected with, relating to or affecting, directly or indirectly, the Loan, the Loan Documents, or the Project; provided, however, that the foregoing shall not constitute a release of any of any Lender Party's obligations under this Agreement or any claim against such Lender Party based on fraud committed by such Lender Party.

        B.     Non-Reliance. Each of the Borrower Parties hereby acknowledges that it has not relied upon any representation of any kind made by any of the Lender Parties in making the foregoing release.

        C.     No Transfer of Claims. Each of the Borrower Parties represents and warrants that it has not heretofore assigned, or transferred, or purported to assign or to transfer, to any person or entity, any Claims released hereunder or any portion thereof or interest therein, and each of the Borrower Parties agrees to indemnify, defend and hold the Released Parties harmless from and against any and all such Claims based on or arising out of any such assignment or transfer or purported assignment or transfer.

        D.     No Admission of Liability. It is understood and agreed that this Paragraph 8 shall not be deemed or construed as an admission by Lender Parties of liability of any nature whatsoever arising from or related to the subject of this Paragraph 8.

E.      Advice of Counsel.   Each of the Borrower Parties hereby agrees, represents and warrants that it has had advice of counsel of its own choosing in negotiations for and the preparation of this Agreement, including the foregoing release, that it has read the provisions of this Agreement, including the foregoing release, and that it is fully aware of its contents and legal effect.

F.      Damages and Attorneys' Fees.   Each of the Borrower Parties agrees that if it hereafter commences, joins in, or in any manner seeks, relief through any suit arising out of, based upon, or relating to any of the Claims or in any manner asserts against such Released Parties, or any of them, any of the Claims, then the undersigned will pay to such Released Parties, and each of them, in addition to any other damages caused to such Released Parties thereby, all attorneys' fees incurred by such Released Parties in defending or otherwise responding to said suit or claim.

G.      Survival.   The provisions of this Paragraph 8 shall survive the Close of Escrow or termination of this Agreement.

20.     Default.   Any breach by Borrower or any Guarantor of this Agreement that continues after the expiration of any applicable notice or grace period expressly provided herein shall be an automatic Event of Default under the Loan Agreement (with no further notice, cure or grace period).

21.     Relief from Stay.

A.      Agreement.   As additional consideration for Lender Parties' execution of this Agreement, each of the Borrower Parties agrees that:  (i) in the event of a bankruptcy filing by or against it, it shall not reject this Agreement, nor contest any claim or assertion by any Lender Party that this Agreement is binding between the parties, and that valuable consideration has been received by Borrower for same; (ii) Lender Parties shall receive immediate relief from the automatic stay provisions of the United States Bankruptcy Code following any bankruptcy petition which any of the Borrower Parties may file or which may be filed against any of the Borrower Parties and that it shall in no event contest a motion to lift the automatic stay filed by Lender Parties; and (iii) any contrary action taken by any of the Borrower Parties with respect to the matters set forth above shall be deemed to be in bad faith and are agreed to constitute violations of Federal Rules of Civil Procedure 11 and Bankruptcy Rule 9011.

B.      Functional Equivalent of Chapter 11.   Each of the Borrower Parties acknowledges that this Agreement is of considerable benefit to it, and represents the functional equivalent of a restructuring of Borrower's business under the United States Bankruptcy Code because, among other things, (i) Borrower has received forbearances and financial accommodations from Lender Parties; and (ii) Borrower was afforded by Lender Parties an opportunity to cause a sale or refinancing of the Project, all in lieu of a bankruptcy petition, which Borrower elected not to file.  Borrower has thus been provided with a full and fair opportunity to reestablish or reorganize its financial stake in the Project, and has elected not to seek a further restructuring of its business.  Each of the Borrower Parties understands that Lender Parties are entering into this Agreement in reliance on Borrower's representation that it will not seek a further restructuring of its business.

22.     Miscellaneous.

A.      Survival.   All warranties, representations, covenants, obligations and agreements contained in this Agreement shall survive the Close of Escrow hereunder.  All warranties and representations shall be effective regardless of any investigation made or which could have been made.

B.    Further Instruments.    The parties shall cause to be executed, acknowledged or delivered such further instruments and documents as may be reasonably necessary to carry out the intent and purpose of this Agreement.

C.    Cumulative Remedies.    No remedy conferred upon a party in this Agreement is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law, in equity or by statute (except as otherwise expressly herein provided).

D.    No Waiver.    No waiver by Lender Parties of any breach of this Agreement or of any warranty or representation hereunder by Borrower shall be deemed a waiver of any other breach by Borrower (whether preceding or succeeding and whether or not of the same or similar nature), and no acceptance of payment or performance by Lender Parties after any breach by Borrower shall be deemed to be a waiver of any breach of this Agreement or of any representation or warranty hereunder by Borrower, whether or not Lender Parties know of such breach at the time it accepts such payment or performance.    No failure or delay by any Lender Party to exercise any right it may have by reason of the default of Borrower shall operate as a waiver of default or modification of the Loan, the Loan Documents or this Agreement or shall prevent the exercise of any right by any Lender Party.

E.    Governing Law.    THIS AGREEMENT WAS NEGOTIATED IN PART IN THE STATE OF NEW YORK, AND THE LOAN WAS MADE BY LBHI FROM THE STATE OF NEW YORK, AND THE PROCEEDS OF THE LOAN WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE LENDER PARTIES, BORROWER AND EACH GUARANTOR AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (EXCLUDING APPLICATION OF ANY PRINCIPLE OF CONFLICT OF LAWS WHICH WOULD DIRECT THE APPLICATION OF THE LAW OF ANY OTHER JURISDICTION) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW OR NOT PROHIBITED BY LAW, BORROWER AND EACH GUARANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT, AND THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO §5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

F.    Jurisdiction.

1.    SUIT BY BORROWER OR GUARANTORS.    BORROWER AND EACH GUARANTOR HEREBY AGREES THAT ANY LEGAL SUIT, ACTION OR PROCEEDING BROUGHT BY BORROWER AND/OR EITHER GUARANTOR OR ANY AFFILIATE THEREOF AGAINST ANY LENDER PARTY AND/OR SERVICER (OTHER THAN COMPULSORY COUNTERCLAIMS PERMITTED HEREUNDER IN CONNECTION WITH ANY ACTION, SUIT OR PROCEEDING COMMENCED BY ANY LENDER PARTY IN A JURISDICTION OUTSIDE OF NEW YORK) ARISING OUT OF OR RELATING TO THE LOAN, THIS AGREEMENT OR ANY OF THE LOAN DOCUMENTS OR RELATING TO THE PROJECT SHALL ONLY BE INSTITUTED BY BORROWER, GUARANTORS OR ANY AFFILIATE THEREOF IN COURTS OF THE STATE OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK OR THE UNITED STATES DISTRICT COURT

LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK. BORROWER AND EACH GUARANTOR HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO BRING ANY LEGAL OR EQUITABLE SUIT, ACTION OR PROCEEDING AGAINST ANY LENDER PARTY AND/OR SERVICER ARISING OUT OF OR RELATING TO THE LOAN, THIS AGREEMENT OR ANY OF THE LOAN DOCUMENTS OR RELATING TO THE PROJECT IN ANY OTHER COURT OTHER THAN COURTS OF THE STATE OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK OR THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK.

2.      SUIT BY ANY LENDER PARTY.  WITH RESPECT TO ANY CLAIM OR ACTION ARISING HEREUNDER OR UNDER THE LOAN DOCUMENTS, BORROWER AND GUARANTOR (1) IRREVOCABLY SUBMIT TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK, NEW YORK, (2) AGREE THAT ALL SUCH CLAIMS OR ACTIONS MAY BE HEARD AND DETERMINED IN SUCH COURTS OF THE STATE OF NEW YORK OR, TO THE EXTENT PERMITTED BY LAW, IN SUCH FEDERAL COURT AND (3) IRREVOCABLY WAIVE ANY (a) OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY LOAN DOCUMENT BROUGHT IN ANY SUCH COURT AND (b) ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.   NOTHING IN THIS AGREEMENT WILL BE DEEMED TO PRECLUDE ANY LENDER PARTY FROM BRINGING AN ACTION OR PROCEEDING WITH RESPECT HERETO IN ANY OTHER JURISDICTION.

3.      DESIGNATION OF AGENT FOR SERVICE OF PROCESS. BORROWER AND EACH GUARANTOR WILL MAINTAIN AN AGENT FOR SERVICE OF PROCESS IN NEW YORK, NEW YORK WITH RESPECT TO THIS AGREEMENT.   BORROWER AND EACH GUARANTOR DESIGNATE CORPORATION SERVICE COMPANY, WITH OFFICES ON THE DATE HEREOF AT 1131 AVENUE OF THE AMERICAS, SUITE 3100, NEW YORK, NY 10036-6710, TO RECEIVE FOR AND ON BEHALF OF BORROWER OR SUCH GUARANTOR (AS THE CASE MAY BE) SERVICE OF PROCESS IN NEW YORK, NEW YORK WITH RESPECT TO THIS AGREEMENT.  BORROWER OR SUCH GUARANTOR, AS THE CASE MAY BE, SHALL PROVIDE TO LENDER PARTIES AT LEAST THIRTY (30) DAYS PRIOR WRITTEN NOTICE BEFORE CHANGING SUCH DESIGNATION.   BORROWER AND GUARANTOR FURTHER AGREE THAT THE FAILURE OF ITS AGENT FOR SERVICE OF PROCESS TO GIVE IT NOTICE OF ANY SERVICE OF PROCESS WILL NOT IMPAIR OR AFFECT THE VALIDITY OF SUCH SERVICE OR OF ANY JUDGMENT BASED THEREON.   IN ADDITION, BORROWER AND GUARANTOR IRREVOCABLY CONSENT TO SERVICE OF PROCESS BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO IT AT ITS ADDRESS GIVEN OR REFERRED TO IN THIS AGREEMENT.

G.      WAIVER OF RIGHT TO TRIAL BY JURY.  BORROWER, LENDER PARTIES AND EACH GUARANTOR HEREBY EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY FOR ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS AGREEMENT OR THE LOAN DOCUMENTS OR (2) IN ANY WAY RELATING TO THE PROJECT, THE LOAN, THE LOAN DOCUMENTS OR THE SENIOR MEZZANINE LOAN DOCUMENTS OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND,

ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND BORROWER, LENDER PARTIES AND EACH GUARANTOR HEREBY AGREE AND CONSENT THAT ANY OF THEM MAY FILE AN ORIGINAL COUNTERPART OF THIS AGREEMENT OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF ANY RIGHT THEY MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

        H.    <u>No Third Party Beneficiaries</u>.  Nothing in this Agreement, express or implied, is intended to confer any rights or remedies upon any person, other than the parties hereto and, subject to any restrictions on assignment herein contained, their respective successors and assigns.

        I.    <u>Amendments</u>.  This Agreement may be amended by written agreement of amendment executed by all parties hereto, but not otherwise.

        J.    <u>Attorneys' Fees</u>.  If any lawsuit is commenced to enforce any of the terms of this Agreement, the prevailing party will have the right to recover its reasonable attorneys' fees and costs of suit from the other party.  Without limitation on anything contained in the Loan Documents, in the event that any Lender Party shall be a party to any legal proceeding instituted in connection with or arising out of the Loan or this Agreement, Borrower agrees to pay to such Lender Party all sums paid or incurred by such Lender Party as costs and expenses in the legal proceedings, together with reasonable attorneys' fees.  This subparagraph J shall survive the Close of Escrow or termination of this Agreement.

        K.    <u>Effect on Loan Documents</u>.  Neither the provisions of, nor any performance under, this Agreement (including any payments by Borrower under this Agreement) shall amend, modify, supplement, extend, delay, renew, terminate, waive, release or otherwise limit or prejudice Lehman Re's rights and remedies or Borrower's or either Guarantor's obligations under the Loan Documents (including Lehman Re's right to receive full payment as well as late charges, delinquent interest and all other charges provided for in the Loan Documents).  Notwithstanding the foregoing, if and only if Lehman Re receives the full Payoff Amount and the Close of Escrow occurs, upon the Close of Escrow, the Loan Documents shall be terminated and none of the parties thereto shall have any further obligations thereunder (except for those obligations that are intended to survive repayment in full of the Loan) and Lehman Re shall be deemed to have agreed not to sue any of the Borrower Parties for any breach of any obligation under the Loan Documents; <u>provided</u>, <u>however</u>, that the foregoing covenant shall in no event extend to the continuing liabilities and obligations of any Borrower Party relating to, arising out of, or in connection with the breach of any representation, warranty, indemnity, covenant or agreement set forth in this Agreement, the Loan Documents or in any document executed under or in connection with this Agreement or the Loan Documents that are intended to survive the repayment in full of the Loan, or to any indemnities in favor of Lehman Re under any Loan Document that are intended to survive the repayment in full of the Loan; and, provided further, that the covenant by Lehman Re pursuant to this subparagraph shall be void from its inception, and all liabilities and obligations of Borrower Parties under the Loan Documents shall continue in full force and effect as they existed immediately prior to the Effective Date, in the event:

        1.    Any of the Borrower Parties shall take any act or make any claim of rescission of this Agreement or make any other claim which is inconsistent with this Agreement; or

        2.    A receiver, liquidator or trustee shall be appointed for Borrower and/or any Guarantor or if Borrower and/or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by Borrower and/or

any Guarantor, or if ay proceeding for the dissolution or liquidation of Borrower and/or any Guarantor shall be instituted, provided, however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Borrower and/or any Guarantor, upon same not being discharged, stayed or dismissed within thirty (30) days.

        L.      No Agreement on Value.  The parties hereto specifically acknowledge and agree that the Payoff Amount does not necessarily reflect the parties' views regarding the value of the Loan or the membership interests encumbered by the Loan, and such amount shall not be used as evidence of value in any action or proceeding involving Lender Parties, on the one hand, and Borrower or either Guarantor, or all of them, on the other hand.

        M.      Entire Agreement.  This Agreement and the Senior Mezzanine Loan Payoff Agreement contain the entire agreement between the parties respecting the matters herein set forth and supersedes all prior agreements between the parties hereto respecting such matters.

        N.      Time of the Essence.  Time is of the essence of this Agreement.

        O.      Severability.  If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

        P.      Notices.  Any notice which a party is required or may desire to give the other shall be in writing and may be sent by personal delivery or by mail (either (1) by United States registered or certified mail, return receipt requested, postage prepaid, or (2) by Federal Express or similar generally recognized overnight carrier regularly providing proof of delivery), addressed as follows (subject to the right of a party to designate a different address for itself by notice similarly given):

**To Borrower**:

c/o Magnum Management, LLC
270 Lafayette Street
New York, NY 10012
Attn:  Benjamin Shaoul

With a copy to:

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Attn:  Andrew L. Herz, Esq.

**To Principal Pledgor**:

c/o Magnum Management, LLC
270 Lafayette Street
New York, NY 10012
Attn:  Benjamin Shaoul

With a copy to:

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Attn:  Andrew L. Herz, Esq.

**To Ravner:**

c/o Magnum Management, LLC
270 Lafayette Street
New York, NY 10012
Attn:  Marc Ravner

With a copy to:

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Attn:  Andrew L. Herz, Esq.

**To Shaoul**:

c/o Magnum Management, LLC
270 Lafayette Street
New York, NY 10012
Attn:  Benjamin Shaoul

With a copy to:

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Attn:  Andrew L. Herz, Esq.


**To Lender Parties**:

**LBHI**

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 46th Floor
New York, NY  10020
Attn:    Joelle Halperin
MTS No.:  WH6456

With copies to:

Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022
Attn:  Kenneth J. Friedman, Esq.

TriMont Real Estate Advisors, Inc.
Monarch Tower
3424 Peachtree Road, N.E.
Suite 2200
Atlanta, GA  30326
Attn:  Karen Mishkin
Ref. No.:  1141314

**LCPI**

With copies to:

Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Attention:  Gregory Petrick, Esq.


KeyCorp Real Estate Capital Markets, Inc.
911 Main Street, Suite 1500
Kansas City, Missouri 64105
Attention:  Bryan Nitcher


**To Escrow Holder**:


Commonwealth Land Title Insurance Company
c/o New York Land Services
630 Third Avenue
New York, NY 10017
Attn: David Wilcomes

Any notice so given by mail shall be deemed to have been given as of the date of delivery (whether accepted or refused) established by U.S. Post Office return receipt or the overnight carrier's proof of delivery, as the case may be.  Any such notice not so given shall be deemed given upon receipt of the same by the party to whom the same is to be given.

Q.    Confidentiality.  Each of Borrower and each Guarantor shall keep the terms of this Agreement strictly confidential and shall not disclose or permit its employees or agents to disclose the terms of this Agreement (except for reasonably necessary disclosures to its attorneys, accountants, investors, agents, lenders and representatives and to Senior Lender and Senior Mezzanine Lender) and except as may be required by law or in connection with litigation between such parties and the Lender Parties.

R.    Counterparts.  This Agreement may be executed in any number of counterparts so long as each signatory hereto executes at least one such counterpart.  Each such counterpart shall constitute one original, but all such counterparts taken together shall constitute one and the same instrument.

S.    Joint and Several Liability.  Borrower and each Guarantor shall each be primarily, jointly and severally liable for each of the obligations and liabilities of Borrower under this Agreement and any document executed under or in connection with this Agreement and each Guarantor hereby waives any guarantor or suretyship defenses that may otherwise apply with respect thereto.

T.    Ownership of Senior Mezzanine Loan and Junior Mezzanine Loan.

(a) LBHI and LCPI acknowledge that neither they nor any assignee have had any interest in, claim to or lien on the Junior Mezzanine Loan and the documents evidencing and securing same or the proceeds thereof and that Lehman Re has the sole and exclusive right to retain all proceeds of such loan without any claim or interest of such parties.  To the extent that LBHI, LCPI or any of their respective representatives or agents is in possession of any of the Junior Mezzanine Loan Documents, such party shall cause such documents to be delivered to or at the direction of Lehman Re concurrently with the execution and delivery of this Agreement and the Senior Mezzanine Loan Payoff Agreement.

(b)  Lehman Re and LCPI acknowledge that neither they nor any assignee have had any interest in, claim to or lien on the Senior Mezzanine Loan and the documents evidencing and securing same or the proceeds thereof and that LBHI has the sole and exclusive right to retain all proceeds of such loan without any claim or interest of such parties.  To the extent that Lehman Re, LCPI or any of their respective representatives or agents is in possession of any of the Senior Mezzanine Loan Documents, such party shall cause such documents to be delivered to or at the direction of LBHI concurrently with the execution and delivery of this Agreement and the Senior Mezzanine Loan Payoff Agreement.

(c)  Notwithstanding the execution and delivery of this Agreement evidencing the resolution of the Lender Parties' disputes regarding the actual ownership status of the Loan and/or the Senior Mezzanine Loan, each of the Lender Parties acknowledges that (i) the Lender Parties have had, and continue to have, certain disputes regarding the actual ownership status of certain loan and other assets originated by LBHI and/or certain affiliates of LBHI other than the Loan and the Senior Mezzanine Loan (collectively, the "Remaining Assets"), (ii) nothing contained in this Agreement shall prejudice the claims that any of them may have against one another with respect to the Remaining Assets arising in connection with the Repurchase Agreement or any documents executed and/or delivered in connection with the Repurchase Agreement (the Repurchase Agreement and such other documents are collectively, the "Repo Documents"), and (iii) nothing contained in this Agreement shall be deemed to create an admission, stipulation and/or implication on the part of any of the Lender Parties as to the actual ownership status of the Remaining Assets.  Each of the Lender Parties further agrees that no negotiations and communications which may arise or may have previously arisen concerning this Agreement or the transactions contemplated hereby shall be admissible as evidence on any issue that is or may be before any court or administrative body in order to establish proof of ownership of the Remaining Assets or to create or establish any admission of liability as to, or for any other evidentiary purpose with respect to, the ownership status of the Remaining Assets.  In addition, nothing contained in this Agreement shall be deemed to waive any of the rights any of the Lender Parties may have against one another with respect to the Remaining Assets pursuant to the Repo Documents, and each of the Lender Parties hereby reserves all of its respective rights and remedies under such Repo Documents with respect to the Remaining Assets.

U.    Bankruptcy Court Approval.  Notwithstanding anything to the contrary contained in this Agreement, each of the parties hereto agrees that the effectiveness of this Agreement and each of the terms and provisions set forth in this Agreement and any of the transactions contemplated in this Agreement shall be subject, in their entirety, to the Bankruptcy Court entering a final order approving (i) this Agreement and the transactions contemplated herein and (ii) the Senior Mezzanine Loan Payoff Agreement and the transactions contemplated therein.

[NO FURTHER TEXT – SIGNATURES ON NEXT PAGE]

IN WITNESS WHEREOF, Borrower, each Guarantor and Lender Parties have executed this Agreement as of the day and year first above written.

**LENDER PARTIES**:

**LEHMAN BROTHERS HOLDINGS INC.,**
a Delaware corporation as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:_____
Name:_____
Title:_____

**LEHMAN COMMERCIAL PAPER INC.,**
a New York corporation as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:_____
Name:_____
Title:_____

**LEHMAN RE LTD.,**
a Bermuda corporation

By:  Its Joint Provisional Liquidators (without personal liability)

By:_____
Name: Peter C.B. Mitchell
Title: Authorized Signatory

By:_____
Name:  D. Geoffrey Hunter
Title: Authorized Signatory

**<u>BORROWER</u>**:

**M&B MEZZ LLC**,
a Delaware limited liability company

By: _____
          Name:  Marc Ravner
          Its:  Executive Manager

By: _____
          Name:  Benjamin Shaoul
          Its:  Executive Manager

**<u>PRINCIPAL PLEDGOR</u>**:

**M&B REALTY DEVELOPMENT LLC**,
a Delaware limited liability company

By: _____
          Name:  Marc Ravner
          Its:  Executive Manager

By: _____
          Name:  Benjamin Shaoul
          Its:  Executive Manager

**<u>GUARANTORS</u>**:

_____
**MARC RAVNER**

_____
**BENJAMIN SHAOUL**

ACCEPTED AND AGREED TO AS
OF THE EFFECTIVE DATE SOLELY WITH
RESPECT TO PARAGRAPHS 2 THROUGH 5
AND EXHIBIT B:


**COMMONWEALTH LAND TITLE INSURANCE COMPANY**


By:_____

Name:_____

Title:_____ _

## JOINDER

The undersigned have joined in the execution of the Loan Payoff Agreement (M&B Junior Mezzanine Loan) (the "**Agreement**") dated as of May __, 2009 among Lehman Brothers Holdings Inc., a Delaware corporation, Lehman Commercial Paper Inc., a New York corporation and Lehman Re Ltd., a Bermuda corporation, M&B Mezz LLC, a Delaware limited liability company ("**Borrower**"), M&B Realty Development LLC, a Delaware limited liability company, Benjamin Shaoul and Marc Ravner, to which this Joinder has been attached, and each hereby covenants, represents, warrants, acknowledges and agrees that the undersigned:

(a)        has read and reviewed the Agreement, and is familiar with the terms and provisions thereof;

(b)        consents to the Borrower's execution of the Agreement without reservation or qualification;

(c)        for purposes of (i) paragraph 11F of the Agreement, the undersigned designates Corporation Service Company, with offices on the date hereof at 1131 Avenue of the Americas, Suite 3100, New York, NY 10036-6710, to receive for and on behalf of the undersigned service of process in New York, New York with respect to the Agreement and (without limiting anything hereinabove provided) the undersigned otherwise agrees to be bound by the provisions of such paragraph as if it was specifically referenced therein and process may be delivered to the undersigned at the address for the undersigned set forth in the following clause (ii), and (ii) paragraph 11P of the Agreement, notices under the Agreement shall be delivered to the undersigned c/o Magnum Management, LLC, 270 Lafayette Street, New York, NY 10012, with a copy to Patterson Belknap Webb & Tyler LLP, 133 Avenue of the Americas, New York, NY 10036, Attention: Andrew L. Herz, Esq.

## [END OF TEXT.  SIGNATURES BEGIN ON NEXT PAGE]

**IN WITNESS WHEREOF**, the undersigned has duly executed this Joinder the day and year first above written.

**LEMADRE DEVELOPMENT LLC,**
a Delaware limited liability company


By:_____
      Name:     Marc Ravner
      Title:      Executive Manager


By:_____
      Name:     Benjamin Shaoul
      Title:      Executive Manager


**LEMADRE MEZZ LLC**,

a Delaware limited liability company

By: _____
      Name:  Marc Ravner
      Title:   Executive Manager


By: _____
      Name:  Benjamin Shaoul
      Title:   Executive Manager


_

**EXHIBIT A**

<u>LIST OF LOAN DOCUMENTS</u>

1.      Junior Mezzanine Construction Loan Agreement dated as of August 15, 2007, by and between M&B Mezz LLC, a Delaware limited liability company, as borrower ("**Borrower**") and Lehman Brothers Holdings Inc., a Delaware corporation, as lender ("**LBHI**"), together with the Joinder and Consent thereto executed by Lemadre Mezz LLC, a Delaware limited liability company ("**Senior Mezzanine Borrower**"), M&B Realty Development LLC, a Delaware limited liability company ("**Principal Pledgor**"), Benjamin Shaoul, an individual ("**Shaoul**") and Marc Ravner, an individual ("**Ravner**" and together with Shaoul, collectively, the "**Guarantors**");

2.      Consolidated Secured Promissory Note dated as of August 15, 2007 in the principal amount of $7,200,000, given by Borrower to LBHI (which includes, by assumption contained therein, the provisions of the Severed Note dated August 15, 2007, given by Senior Mezzanine Borrower to LBHI);

3.      Pledge and Security Agreement (Interests in Senior Mezzanine Borrower) dated as of August 15, 2007, given by Borrower to LBHI constituting a perfected pledge and assignment of Borrower's 100% interest in Senior Mezzanine Borrower, and the Consent of Senior Mezzanine Borrower thereto and the Control Agreement thereto;

4.      Pledge and Security Agreement (Interests in Junior Mezzanine Borrower) dated as of August 15, 2007, given by Principal Pledgor to LBHI constituting a perfected pledge and assignment of 100% of all interests in Borrower and the Consent of Junior Mezzanine Borrower thereto and the Control Agreement thereto;

5.      Guaranty of Recourse Obligations (Junior Mezzanine Loan) dated as of August 15, 2007, given by the Guarantors in favor of LBHI;

6.      Guaranty of Completion (Junior Mezzanine Loan) dated as of August 15, 2007, given by the Guarantors in favor of LBHI;

7.      Environmental and Hazardous Substance Indemnification Agreement (Junior Mezzanine Loan) dated as of August 15, 2007, made by Borrower and the Guarantors in favor of LBHI;

8.      Junior Mezzanine Reserve and Security Agreement dated as of August 15, 2007, by and among Borrower, LBHI and TriMont Real Estate Advisors, Inc. ("**Servicer**")**;**

9.      Junior Mezzanine Lockbox, Pledge and Security Agreement dated as of August 15, 2007, by and among Borrower, LBHI and Servicer;

10.     UCC-1 Financing Statement (Initial Filing # 2007 3239075) filed on August 24, 2007 in the Office of the Secretary of State of the State of Delaware with Borrower, as debtor and LBHI, as secured party;

11.     UCC-1 Financing Statement (Initial Filing # 2007 3239240) filed on August 24, 2007 in the Office of the Secretary of State of the State of Delaware with Principal Pledgor, as debtor and LBHI, as secured party;

12.     Certificate of Sources and Uses of Funds dated as of August 15, 2007, made by Borrower for the benefit of LBHI;

13.     Borrower's Certification (Construction Contract, Engineer's Contract, Licenses and Permits) dated August 15, 2007 executed by Borrower to LBHI;

14.     Borrower's Certification (Representations and Warranties) dated August 15, 2007 executed by Borrower to LBHI; and

15.     Borrower's Certification (Financial Statements and Equity Contributions) dated August 15, 2007 executed by Borrower to LBHI.

## EXHIBIT B

### ESCROW PROVISIONS

Escrow Holder agrees to hold the Escrowed Funds and the Escrowed Documents in Escrow pursuant to the terms and provisions below:

(t)    The Escrowed Funds shall be held in a segregated Premium Commercial Money Market Deposit Account at JPMorgan Chase Bank, bearing interest at the interest rate determined by JPMorgan Chase Bank.  All taxes due with respect to any interest earned on the Escrowed Funds shall be the liability of the Borrower.  Lehman Re and Borrower understand and acknowledge that the account in which the Escrowed Funds will be held cannot be established until Escrow Holder receives an original executed Form W-9 from the Borrower. Lehman Re and Borrower each also acknowledge that each is aware that the Federal Deposit Insurance Corporation (FDIC) coverage applies only to a cumulative maximum amount for each individual depositor all of depositor's accounts at the same or related institution.

(u)    Escrow Holder shall not be liable or responsible for any failure, refusal or inability of the depository into which the Escrowed Funds are deposited to pay the Escrowed Funds at Escrow Holder's direction.  Escrow Holder shall not be responsible for any interest except for such interest as is actually received, nor shall Escrow Holder be responsible for the loss of any interest arising form the closing of any account or the sale of any certificate of deposit or other instrument prior to maturity.

(v)    Escrow Holder shall have no duties or responsibilities other than those expressly set forth in the Agreement to which this Exhibit is attached.  Escrow Holder shall have no duty to enforce any obligation of any person to make any payment or delivery or to enforce any obligation of any person to perform any other act.  Escrow Holder shall be under no liability to the other parties hereto or to anyone else by reason of any failure on the part of any party hereto or any maker, guarantor, endorser or other signatory of any document or any other person to perform such person's obligations under any such document.  Except for amendments to the Agreement hereinafter referred to and except for joint instructions given to Escrow Holder by Lehman Re and Borrower relating to the Escrowed Funds and the Escrowed Documents, Escrow Holder shall not be obligated to recognize any agreement between any or all of the persons referred to herein, notwithstanding that references thereto may be made herein other than the Agreement and whether or not it has knowledge thereof.

(w)    In its capacity as escrow agent, Escrow Holder shall not be responsible for the genuineness or validity of any security, instrument, document or item deposited with it and shall have no responsibility other than to faithfully follow the instructions contained herein, and it is fully protected in acting in accordance with any written instrument given to it hereunder by any of the parties hereto and believed by Escrow Holder to have been signed by the proper person, provided that if such written instrument is inconsistent with this Agreement, both Lehman Re and Borrower must have executed such written instrument.  Escrow Holder may assume that any person purporting to give any notice hereunder has been duly authorized to do so.  Escrow Holder is acting as a stakeholder only with respect to the Escrowed

Funds and the Escrowed Documents.  In the event that for any reason there is any dispute or uncertainty concerning any action to be taken hereunder, Escrow Holder shall take no action until it shall have received instructions in writing concurred to by Lehman Re and Borrower or until directed by a final order of judgment of a court of competent jurisdiction, whereupon Escrow Holder shall take such action in accordance with such instructions or such order.

(x)      It is understood and agreed that the duties of Escrow Holder are purely ministerial in nature.  Escrow Holder shall not be liable for any loss, costs or damage which it may incur as a result of serving as escrow agent hereunder, except for any loss, costs or damage arising out of its willful misconduct or gross negligence.  Escrow Holder shall not be liable to the other parties hereto or to anyone else for any action taken or omitted by it, or any action suffered by it to be taken or omitted, in good faith and in the exercise of reasonable judgment, except for acts of willful misconduct or gross negligence.  Escrow Holder may rely conclusively and shall be protected in acting upon any order, notice, demand, certificate, opinion or advice of counsel (including counsel chosen by Escrow Holder), statement, instrument, report or other paper or document (not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and acceptability of any information therein contained) which is reasonably believed by Escrow Holder to be genuine and to be signed or presented by the proper person or persons.  Escrow Holder shall not be bound by any notice or demand, or any waiver, modification, termination or rescission of the Agreement or any of the terms hereof, unless evidenced by a final judgment or decree of a court of competent jurisdiction in the State of New York or a Federal court in such State, or a writing delivered to Escrow Holder signed by the proper party or parties and, if the duties or rights of Escrow Holder are affected, unless it shall give its prior written consent thereto.

(y)      Escrow Holder shall have the right to assume in the absence of written notice to the contrary from the proper person or persons that a fact or an event by reason of which an action would or might be taken by Escrow Holder does not exist or has not occurred, without incurring liability to the other parties hereto or to anyone else for any action taken or omitted, or any action suffered by it to be taken or omitted, in good faith and in the exercise of reasonable judgment, in reliance upon such assumption.

(z)      Except in connection with Escrow Holder's willful misconduct or gross negligence, Escrow Holder shall be indemnified and held harmless jointly and severally by the Lender Parties and the Borrower Parties from and against any and all expenses or loss suffered by Escrow Holder (in its capacity as escrow agent), including reasonable attorneys' fees, in connection with any action, suit or other proceeding involving any claim, which arises out of or relates to the Agreement, the services of Escrow Holder hereunder or the monies and documents held by it hereunder.  Promptly after the receipt by Escrow Holder of notice of any demand or claim or the commencement of any action, suit or proceeding, Escrow Holder shall, if a claim in respect thereof is to be made against any of the other parties hereto, notify such other parties hereto in writing; but the failure by Escrow Holder to give such notice shall not relieve any party from any liability which such party may have to Escrow Holder hereunder.

(aa)      From time to time on and after the date hereof, Lender Parties and Borrower shall deliver or cause to be delivered to Escrow Holder such further documents and instruments and shall do and cause to be done such further acts as Escrow Holder shall reasonably request (it being understood that Escrow Holder shall have no obligation to make any such request) to carry out more effectively the provisions and purposes of this Agreement, to evidence compliance herewith or to assure itself that it is protected in acting hereunder.

(bb)    If for any reason the Close of Escrow does not occur and either party makes a written demand upon Escrow Holder for payment or refund, as the case may be, of the Escrowed Funds or any portion thereof, or the delivery or return of the Escrowed Documents, Escrow Holder shall give written notice to the other party of such demand.  If Escrow Holder does not receive a written objection from the other party to the proposed payment or refund of the Escrowed Funds, or portion thereof, or the delivery or return of the Escrowed Documents, as the case may be, within ten (10) Business Days after the giving of the notice described in the preceding sentence, Escrow Holder is hereby authorized to make such payment or refund, delivery or return; provided, however, if for any reason Escrow Holder in good faith shall elect not to make such payment, Escrow Holder shall continue to hold such amount until otherwise directed by written instructions from the parties to this Agreement or a final judgment of a court of competent jurisdiction.  Notwithstanding the foregoing, Escrow Holder shall have the right at any time to deposit the Escrowed Funds and Escrowed Documents with the Clerk of the Supreme Court of New York County, New York.  Escrow Holder shall give written notice of such deposit to Lehman Re and Borrower.  Upon such deposit, Escrow Holder shall be relieved and discharged of all further obligations and responsibilities hereunder.

(cc)    Escrow Holder may resign at any time as escrow agent hereunder upon giving five (5) Business Days' prior written notice to that effect to each of the Lender Parties and Borrower.  Any successor escrow agent shall be a nationally recognized title insurance company or a nationally recognized law firm selected by Borrower and reasonably accepted by Lender Parties.  In such case, Escrow Holder shall no longer serve as escrow agent and shall deliver, against receipt, to such successor escrow agent, the Escrowed Funds and the Escrowed Documents held by Escrow Holder, to be held by such successor escrow agent pursuant to the terms and provisions of this Agreement.  If no such successor has been designated on or before such party ceases to be escrow agent hereunder, whether by resignation or otherwise, Escrow Holder's  obligations as escrow agent shall continue until such successor is appointed; provided, however, its sole obligation thereafter shall be to safely keep all monies and documents then held by it and to deliver the same to the person, firm or corporation designated as its successor or until directed by a final order or judgment of a court of competent jurisdiction, whereupon Escrow Holder shall make disposition thereof in accordance with such order.  If no successor escrow agent is designated and qualified within five (5) Business Days after its resignation is effective, Escrow Holder shall no longer be considered the escrow agent and Escrow Holder shall apply to the Clerk of the Supreme Court of New York County, New York, for the appointment of a successor escrow agent.

(dd)    Escrow Holder shall receive $500.00 as compensation for the performance of its duties under this Agreement (including this Exhibit B).

**EXHIBIT C**

FORM OF RELEASE OF LENDER PARTIES

This Release is made this __ day of _____, 2009, by and among M&B MEZZ LLC, a Delaware limited liability company ("**Borrower**"), M&B REALTY DEVELOPMENT LLC, a Delaware limited liability company ("**Development**"), BENJAMIN SHAOUL, an individual ("**Shaou**l"), MARC RAVNER, an individual ("**Ravner**", and together with Shaoul, each a "**Guarantor**" and collectively, the "**Guarantors**") in favor of LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**"), LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**"), and LEHMAN RE LTD., a Bermuda corporation ("**Lehman Re**").  LBHI, LCPI and Lehman Re are hereinafter collectively referred to from time to time as "**Lender Parties**".

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  As further consideration for Lender Parties' execution and delivery of the Loan Payoff Agreement (M&B Junior Mezzanine Loan) dated as of May __, 2009 (the "**Loan Payoff Agreement**") and agreement to the transactions described therein, each of Borrower, Development and each of the Guarantors for itself and its respective affiliates, successors and assigns (collectively, the "**Borrower Parties**"), as of the date hereof, hereby absolutely and irrevocably waives, releases, and forever discharges each of the Lender Parties and their respective partners, officers, creditors, shareholders, directors, agents, attorneys, servants, contractors, employees, parent and subsidiary corporations and predecessors-in-interest (collectively, the "**Released Parties**") from any and all claims, rights, demands, actions, suits, causes of actions, damages, counterclaims, defenses, losses, costs, obligations, liabilities and expenses of every kind or nature (collectively, "**Claims**"), known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen, arising out of or relating directly or indirectly to any circumstances or state of facts pertaining to the Loan, the Loan Documents or the Project, including claims related to the actions of any of the Lender Parties or their predecessors in administering the Loan or negotiating the Loan Documents and claims of lender liability, duress, illegality, usury, waiver, bad faith, interference in the business of the Borrower Parties, or any nonperformance of any agreement or obligation related thereto, or any statements, representations, acts or omissions, intentional, willful, negligent or innocent, by any of the Released Parties in any way connected with, relating to or affecting, directly or indirectly, the Loan, the Loan Documents, or the Project; provided, however, that the foregoing shall not constitute a release of any claim against any Lender Party based on fraud committed by such Lender Party.

2.  Terms used and not otherwise defined in this Release shall have the meanings given to such terms in the Loan Payoff Agreement.

3.  This Release may be executed in one or more counterparts each of which when taken together shall constitute but one and the same instrument.  This Release shall be governed by the laws of the State of New York.

IN WITNESS WHEREOF, the undersigned have executed this Release as of the date first written above.

BORROWER:


M&B MEZZ LLC,
   a Delaware limited liability company



By:_____
   Name:  Marc Ravner
   Title:  Executive Manager



By:_____
   Name:  Benjamin Shaoul
   Title:  Executive Manager

DEVELOPMENT:

M&B REALTY DEVELOPMENT LLC,
    a Delaware limited liability company

By:_____
    Name:  Marc Ravner
    Title:  Executive Manager

By:_____
    Name:  Benjamin Shaoul
    Title:  Executive Manager

GUARANTORS:

By:_____
    Name:  Marc Ravner

By:_____
    Name:  Benjamin Shaoul

**EXHIBIT D**

FORM OF RELEASE OF BORROWER PARTIES

      This Release is made this __ day of _____, 2009, by and among LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**"), LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**"), and LEHMAN RE LTD., a Bermuda corporation ("**Lehman Re**"; LBHI, LCPI and Lehman Re are hereinafter collectively referred to from time to time as "**Lender Parties**") in favor of M&B MEZZ LLC, a Delaware limited liability company ("**Borrower**"), M&B REALTY DEVELOPMENT LLC, a Delaware limited liability company ("**Development**"), BENJAMIN SHAOUL, an individual ("**Shaoul**"), MARC RAVNER, an individual ("**Ravner**", and together with Shaoul, each a "**Guarantor**" and collectively, the "**Guarantors**").  Borrower, Development and the Guarantors are hereinafter collectively referred to from time to time as "**Borrower Parties**".

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

      1.    As further consideration for execution and delivery by Borrower, Development and Guarantors of the Loan Payoff Agreement (M&B Junior Mezzanine Loan) dated as of May __, 2009 (the "**Loan Payoff Agreement**") and agreement to the transactions described therein, each of the Lender Parties for itself and its respective affiliates, successors and assigns (collectively, the "**Lender Group**"), as of the date hereof, hereby absolutely and irrevocably waives, releases, and forever discharges each of the Borrower Parties and their respective partners, officers, creditors, shareholders, directors, agents, attorneys, servants, contractors, employees, parent and subsidiary corporations and predecessors-in-interest (collectively, the "**Released Parties**") from any and all claims, rights, demands, actions, suits, causes of actions, damages, counterclaims, defenses, losses, costs, obligations, liabilities and expenses of every kind or nature (collectively, "**Claims**"), known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen, arising out of or relating directly or indirectly to any circumstances or state of facts pertaining to the Loan, the Loan Documents or the Project, including claims related to the actions of any of the Borrower Parties or their predecessors in connection with the Loan or negotiating the Loan Documents, or any nonperformance of any agreement or obligation related thereto, or any statements, representations, acts or omissions, intentional, willful, negligent or innocent, by any of the Released Parties in any way connected with, relating to or affecting, directly or indirectly, the Loan, the Loan Documents, or the Project; provided, however, that the foregoing shall not constitute a release of any claim against any Borrower Party based on fraud committed by such Borrower Party nor shall it constitute a release of any claim against any Borrower Party arising out of any covenant or indemnity under any of the Loan Documents that is intended to survive repayment in full of the Loan.

      2.  Terms used and not otherwise defined in this Release shall have the meanings given to such terms in the Loan Payoff Agreement.

      3.  This Release may be executed in one or more counterparts each of which when taken together shall constitute but one and the same instrument.  This Release shall be governed by the laws of the State of New York.

IN WITNESS WHEREOF, the undersigned have executed this Release as of the date first written above.

LENDER PARTIES:

**LEHMAN BROTHERS HOLDINGS INC.**,
a Delaware corporation as Debtor and Debtor in
Possession in its chapter 11 case in the United
States Bankruptcy Court for the Southern
District of New York, Case No. 08-13555 (JMP)


By:_____

Name:

Title:


**LEHMAN COMMERCIAL PAPER INC.**,
a New York corporation as Debtor and Debtor in
Possession in its chapter 11 case in the United
States Bankruptcy Court for the Southern
District of New York, Case No. 08-13555 (JMP)


By:_____

Name:

Title:


**LEHMAN RE LTD.**,
a Bermuda corporation

By:  Its Joint Provisional Liquidators (without
personal liability)


By:_____

      Name: Peter C.B. Mitchell

      Title: Authorized Signatory


By:_____

      Name:  D. Geoffrey Hunter

      Title: Authorized Signatory

**EXHIBIT E**

FORM OF LOST NOTE AFFIDAVIT

**LOST NOTE AFFIDAVIT**

The undersigned, an _____ of Lehman Re Ltd., a Bermuda corporation ("Noteholder"), does hereby certify to M&B Mezz LLC ("Borrower") as follows:

1.  The Noteholder is the owner of that certain Severed Note dated as of August 15, 2007 in the principal amount of $888,230.83 given by Lemadre Mezz LLC to Lehman Brothers Holdings Inc. (the "Note").

2.  The Noteholder has conducted a diligent and exhaustive search of those books, records, files, archives and other known or likely repositories of its documents of which Noteholder is aware.  Notwithstanding the foregoing, Noteholder has been unable to locate the original Note and believes that the original Note has been lost, stolen, misfiled, misplaced or destroyed.

3.  The Note was satisfied on _____ __, 2009.

4.  The Noteholder has not sold, assigned, pledged or transferred the Note, and no other person, firm, corporation or other entity has any right, title, interest or claim to the Note.

5.  The Noteholder agrees that, should the original Note ever be found by it, the Noteholder will promptly forward the original Note to the Borrower.

6.  The Noteholder agrees to reimburse the Borrower for the reasonable legal fees and expenses incurred by the Borrower in defending any claim that the statements contained in this Lost Note Affidavit are untrue.

_____  -

Sworn to before me as of this
___day of _____, 2009.

_____
Notary Public

# **EXHIBIT C**

**(Proposed Order – Docket No. 3521)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                  :

In re                          :       Chapter 11 Case No.
                                    :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :      08-13555 (JMP)
                                    :

              Debtors.       :       (Jointly Administered)
                                    :

                                    :
------------------------------------------------------------------x

## ORDER, PURSUANT TO SECTIONS
## 105(A) AND 363(B) OF THE BANKRUPTCY CODE
## <u>AUTHORIZING PAYMENT OF PREPETITION FRANCHISE TAXES</u>

        Upon the motion dated May 8, 2009 (the "<u>Motion</u>") of Lehman Brothers Holdings

Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced Chapter 11 cases, as debtors and

debtors in possession (collectively, the "<u>Debtors</u>" and, together with their non-debtor affiliates,

"<u>Lehman</u>"), pursuant to sections 105(a) and 363(b) of chapter 11 of title 11 of the United States

Code (the "<u>Bankruptcy Code</u>"), for authorization to pay all prepetition franchise taxes and annual

report fees (collectively, the "<u>Franchise Taxes</u>") including the various state and local authorities

(the "<u>Taxing Authorities</u>") set forth on <u>Exhibit A</u> annexed hereto, all as more fully described in

the Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper

notice of the Motion having been provided in accordance with the procedures set forth in the

amended order entered February 13, 2009 governing case management and administrative

procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New

York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities

and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for

the Southern District of New York; and (vi) all parties who have requested notice in these

chapter 11 cases, and it appearing that no other or further notice need be provided; and the Court

having found and determined that the relief sought in the Motion is in the best interests of the

Debtors, their estates and creditors, and all parties in interest, and that the legal and factual bases

set forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized to pay all prepetition Franchise Taxes,

including any penalties and interest thereon, and all Franchise Taxes subsequently determined

upon audit to be owed for periods prior to the Commencement Date, to the applicable Taxing

Authorities, including any Franchise Taxes not set forth on Exhibit A that the Debtors determine

are valid, due, and payable; and it is further

ORDERED that nothing in this Order or the Motion waives or releases the

Debtors' right to contest the amount of or basis for any Franchise Taxes allegedly due to any

Taxing Authority; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.

Dated: June __, 2009
         New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

| DEBTOR NAME | STATE | TAX OR FEE | TAX OR FEE PERIOD | DUE DATE | AMOUNT DUE |
|---|---|---|---|---|---|
| Lehman Brothers Commercial Corporation | Illinois | Annual Report Fee | 2008 | 10/1/2008 | $100.00 |
| Lehman Brothers Holdings Inc. | Connecticut | Tax on Capital | 2007 | 10/1/2008 | $15,994.00 |
| Lehman Brothers Commercial Corporation | Indiana | Entity Report Fee | 2008 | 10/31/2008 | $9.00 |
| Lehman Brothers Holdings Inc. | South Dakota | Annual Report Fee | 2008 | 10/31/2008 | $30.00 |
| Lehman Brothers Holdings Inc. | Delaware | Third Quarter Estimated Tax | 2008 | 12/1/2008 | $34,510.00 |
| Lehman Brothers Holdings Inc. | Vermont | Annual Report Fee | 2008 | 2/15/2009 | $150.00 |
| Lehman Brothers Commercial Corporation | Delaware | Annual Franchise Tax | 2008 | 3/1/2009 | $100.00 |
| Lehman Brothers Commodity Services Inc. | Delaware | Annual Franchise Tax | 2008 | 3/1/2009 | $100.00 |
| Lehman Brothers Derivative Products Inc. | Delaware | Annual Franchise Tax | 2008 | 3/1/2009 | $100.00 |
| Lehman Brothers Financial Products Inc. | Delaware | Annual Franchise Tax | 2008 | 3/1/2009 | $100.00 |
| Lehman Brothers OTC Derivatives Inc. | Delaware | Annual Franchise Tax | 2008 | 3/1/2009 | $100.00 |
| Lehman Brothers Special Financing Inc. | Delaware | Annual Franchise Tax | 2008 | 3/1/2009 | $100.00 |
| Structured Asset Securities Corp. | Delaware | Annual Franchise Tax | 2008 | 3/1/2009 | $100.00 |
| Lehman Brothers Holdings Inc. | Connecticut | Tax on Capital | 2008 | 4/1/2009 | $16,000.00 |
| BNC Mortgage LLC | Delaware | Annual LLC/LP Tax | 2008 | 6/1/2009 | $250.00 |
| CES Aviation IX LLC | Delaware | Annual LLC/LP Tax | 2008 | 6/1/2009 | $250.00 |
| CES Aviation LLC | Delaware | Annual LLC/LP Tax | 2008 | 6/1/2009 | $250.00 |
| CES Aviation V LLC | Delaware | Annual LLC/LP Tax | 2008 | 6/1/2009 | $250.00 |
| LB 745 LLC | Delaware | Annual LLC/LP Tax | 2008 | 6/1/2009 | $250.00 |
| LB Rose Ranch LLC | Delaware | Annual LLC/LP Tax | 2008 | 6/1/2009 | $250.00 |
| PAMI Statler Arms LLC | Delaware | Annual LLC/LP Tax | 2008 | 6/1/2009 | $250.00 |
| **TOTAL:** | | | | | **$69,2430** |