**Hearing Date: June 3, 2009 at 10:00 a.m. (Prevailing Eastern Time)**

STROOCK & STROOCK & LAVAN LLP
Melvin A. Brosterman
Harold A. Olsen
Dina Kolker
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

Attorneys for Basso Capital Management, L.P.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------ x

| | | |
|---|---|---|
| *In re* | : | **Chapter 11** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **Case No. 08-13555 (JMP)** |
| | : | |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |

------------------------------------------------------------------------ x

**BASSO CAPITAL MANAGEMENT, L.P.'S REPLY MEMORANDUM**
**OF LAW IN FURTHER SUPPORT OF ITS MOTION TO PREVENT DEBTOR FROM**
**ASSUMING CERTAIN CONTRACTS THAT DEBTOR MOVED TO REJECT, THEN**
**SOUGHT TO ASSUME, WITHOUT PROVIDING SUFFICIENT NOTICE**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Basso Capital Management, L.P., investment manager for Basso Credit Opportunities

Holding Fund Ltd., Basso Fund Ltd., and Basso Multi-Strategy Holding Fund Ltd. (together,

"Basso"), by and through its counsel Stroock & Stroock & Lavan LLP, respectfully submits this

memorandum (the "Reply") in response to Debtor's Objection (the "Objection") to Basso's

motion for relief ("Basso's Motion") pursuant to Fed. R. Civ. P. 60(b), made applicable hereto

by Fed. R. Bankr. R. 9024, and Section 105(a) of the Bankruptcy Code.

## PRELIMINARY STATEMENT

1.      Debtor's objection boils down to one principal assertion: vacatur of the December

16, 2008 Order Approving the Assumption of Basso's Open Trade Confirmations [Dkt. No.

2258] (the "December 16 Order") would be inappropriate because Basso, not having "read or

appreciate[d]" a random email sent to a non-lawyer and the "corrections and modifications"

made to exhibits submitted in support of Debtor's motion to obtain the order, did not exercise the

reasonable diligence necessary to obtain equitable relief.  (Debtor Objection at ¶¶ 5, 10).  A plain

reading of the Bankruptcy Rules and an examination of Basso's conduct under the circumstances

turn Debtor's argument on its head and demonstrate not only that Basso *reasonably* failed to

recognize Debtor's emails as notice documents bearing on Basso's rights, but also that Basso had

no obligation to do so.

2.      The failure here was not Basso's, but the Debtor's.  Debtor glaringly failed to

make a motion to assume its contracts with Basso that conformed to Bankruptcy Rules 9013,

9004(b) and 6006.  Moreover, even assuming Debtor's email service of revised exhibits to its

earlier motion to reject Basso's contract conformed to these Rules, which it did not, service of

the supposed motion by email was improper under Bankruptcy Rule 9014(b).

3.      Thus, the issue before this Court is not whether Basso's failure to respond should

be excused, but whether Basso can be bound by an order of the court that was obtained by an

application which never qualified as a motion under all applicable Rules, nor was ever properly

served.

4.      Having moved to reject Basso's Open Trade Confirmations (the "Basso

Confirmations"), Debtor had no authority to change its mind and to seek to assume those

confirmations without filing a new, formal motion to obtain relief from the Agreed Stipulation

and Order (the "Stipulation and Order") [Dkt. No. 1400] and to convert its rejection into an

assumption into a rejection. The Bankruptcy Rules explicitly provide, and courts have held, that

assumption of an executory contract requires a formal motion. Fed. R. Bankr. P. 6006(a).

Failure to properly file such a motion in accordance with the applicable rules constitutes

insufficient notice to the non-moving party. In re Lew Cleaners Corp., 86 B.R. 331, 333-334

(Bankr. E.D.N.Y. 1988).

5.    When Debtor signed the Stipulation and Order, it agreed to notify Basso of its

intent to either assume or reject the Basso Confirmations by a date certain: November 7, 2008.

(Stipulation and Order at ¶1). The Debtor also consented to file a motion seeking court approval

of its decision by November 16, 2008. (Id. at ¶2). The purpose of the Stipulation and Order – to

create certainty in the mind of the counterparties - would be grossly undermined if this Court

allowed Debtor to assume the Basso Confirmations in contravention of these court-ordered

deadlines and the Bankruptcy Rules.

6.    Basso reasonably, but detrimentally, relied on Debtor's actions, conducting itself

in a manner consistent with all the knowledge that could be reasonably attributed to it. Thus,

Basso is entitled to equitable relief that would estop Debtor from assuming the Basso

Confirmations.

7.    Despite Debtor's assertion to the contrary, Basso does not ask this Court for

permission to turn back the clock and file an objection to Debtor's motion in order to gain an

opportunity to be heard. Rather, Basso requests compensation for the harm inflicted upon it due

to the passage of time. (See Basso's Motion at ¶¶8, 31, 68). Debtor's blatant disregard for the

Bankruptcy Rules and the explicit deadlines set by the Court deprived Basso of its ability to

mitigate its losses from the time it was deemed Debtor's intention to reject on November 7, 2008

until the time some five months later when Debtor sought to close the trades, at which point

Basso first became aware that Debtor intended to assume the Basso Confirmations.  (See

Caufield Decl. at ¶11; Jaklitsch Decl. at ¶¶6-7).  If Debtor is allowed to assume the Basso

Confirmations, Basso stands to lose approximately $750,000 due to the drastic price decline of

the debt at issue (not including other losses and costs attendant to this Debtor-created delay).

(See Caufield Decl. at ¶12).  For this reason, Basso asks this Court to find that the Debtor

rejected the Basso Confirmations and to approve such rejection.

## ARGUMENT

**I.    Debtor Cannot Suddenly Decide to Assume the Basso Confirmations It Previously Moved to Reject Without Obtaining Relief From the Stipulation and Order and Filing a New, Formal Motion Fully Compliant With the Notice Requirements Set Out in the Bankruptcy Rules.**

8.    When Debtor filed the Stipulation and Order, it agreed to notify the counterparties

of its intention to assume, assume and assign or reject their open trade confirmations by

November 7, 2008, and to move to seek its desired relief by November 16, 2008.  (Stipulation

and Order at ¶¶1-2).  Debtor attempted to comply with this agreement by notifying Basso of its

decision to reject the Basso Confirmations by the November 7 deadline and filing the November

14 Motion consistent with that expressed intention.  (See Caufield Decl. at ¶¶4-5, Exhibit 2).

The Stipulation and Order didn't contemplate or authorize subsequent changes, and Debtor never

sought relief from that so-ordered Stipulation and Order to permit such a change.  Nonetheless,

Debtor now asks the Court to uphold an order which disregards these deadlines and grants

Debtor the opposite form of the relief it sought in its November 14 Motion – assumption instead

of rejection – merely because it sent Basso a few random and poorly-labeled emails.  Neither the

law nor the Stipulation and Order allow the Debtor to effectuate a change of heart on these terms.

4

9.     However, Debtor failed to properly serve the November 14 Motion in accordance with the Federal Rules of Bankruptcy Procedure.  A proceeding to assume or reject an executory contract is a contested matter governed by Bankruptcy Rule 9014.  Fed. R. Bankr. P. 6006(a). Bankruptcy Rule 9014(b), in turn, specifies that a motion in a contested matter "shall be served in the manner provided for service of a summons and complaint by Rule 7004."  Fed. R. Bankr. P. 9014(b).  The Debtor's Affidavit of Service [Dkt. No. 1627] regarding the November 14 Motion indicates that Basso and its outside debt trading counsel were served only by email. Email is not one of the permissible methods of service under Bankruptcy Rule 7004, and accordingly, service of the November 14 Motion was defective.  Fed. R. Bankr. P. 7004.

10.     The Notice of Revised Exhibits [Dkt. No. 2206] (the "Notice of Revised Exhibits") was likewise served only by email on Basso and its counsel, and would suffer the same deficiency even if it rose to the level of a proper motion to assume (which it emphatically does not).  The Debtor may not rely on its Case Management Order to rectify this problem— Basso, as a party "with a particularized interest in the subject matter" of the November 14 Motion, was a "Standard Party" under the Case Management Order who did not specifically request email service, and therefore on whom service of all Documents (as defined therein) was required to be made by U.S. mail, hand delivery or facsimile.  See Case Management Order [Dkt. No.  285] at 5.

11.     Thus, the Debtor violated both the Federal Rules of Bankruptcy Procedure and its own case management order in its service of the November 14 Motion, and these violations are not cured by its subsequent, procedurally improper attempt to completely reverse course in the relief it was seeking.

12.     The Bankruptcy Rules clearly spell out the basic criteria a valid motion must satisfy.  Bankruptcy Rule 9013 first requires that motions not made during a hearing must be in writing and "shall state with particularity the grounds therefor … [and] the relief or order sought."  Fed. R. Bankr. P. 9013.  Bankruptcy Rule 9004(b) then establishes specific rules for captions, requiring that "[e]ach paper filed shall contain a caption setting forth the name of the court, the title of the case, the bankruptcy docket number, and a brief designation of the character of the paper."  Fed. R. Bankr. P. 9004(b).  A debtor cannot fundamentally alter the nature of the relief it seeks without withdrawing its prior motion and filing a new motion that complies with these formal requirements and properly notifies the non-moving party.  This is particularly true when the debtor's change of heart demands assumption of an executory contract in the context of an omnibus motion concerning roughly 800 such contracts.

13.     While Debtor, in the Stipulation and Order, reserved the right to request from the Court an extension of the November 7 notification deadline "for good cause shown," it did not reserve the right to change its mind once notification was delivered.  (Stipulation and Order at ¶4). If Debtor intended to assume a contract after notification of rejection, Debtor would have needed to (1) obtain relief from the Stipulation and Order and (2) make a formal motion for assumption.

14.     Under Bankruptcy Rule 6006(a), "a proceeding to assume, reject, or assign an executory contract or unexpired lease, other than as part of a plan, is governed by Rule 9014," which provides that "relief shall be requested by motion, and reasonable notice and opportunity for a hearing shall be afforded the party against whom relief is sought."  Fed. R. Bankr. P. 6006(a), 9014.  While many jurisdictions once held that assumption of an executory contract could be established by conduct under the former Bankruptcy Act of 1898, it is now well-settled,

in New York and elsewhere, that conduct alone is insufficient to constitute contractual

assumption.  In re Kings Terrace Nursing Home and Health Related Facility, 1995 WL 65531,

*9 (Bankr. S.D.N.Y. 1995), aff'd, 184 B.R. 200 (S.D.N.Y. 1995).  New York courts have

particularly addressed the formal motion requirement in cases concerning the assumption of

unexpired leases, which receive the same treatment as executory contracts under Rule 6006(a).

In re Burger Boys, Inc., 94 F.3d 755 (2d Cir. 1996) (vacating a district court order to the extent it

allowed the debtor to assume the lease without making a formal motion).  See also In re Lew

Cleaners Corp., 86 B.R. 333 (Bankr. E.D.N.Y. 1988) ("[a]n overwhelming majority of courts

have held that … the only method of declaring an intention to assume a lease is by timely filing a

formal motion.").  They have also emphasized that the purpose of Bankruptcy Rule 6006(a) is to

protect parties from the delay and uncertainty surrounding assumption, and to avoid an

abundance of litigation requiring courts to interpret informal conduct and conversations between

the parties.  Id.

15.     The 2007 amendments to Bankruptcy Rule 6006 (the "Amendments") stress that

providing notice to the non-moving party becomes particularly important in the context of

omnibus motions involving multiple contracts.  According to Bankruptcy Rule 6006(f), omnibus

motions may be used to reject, assume or assign and assume "multiple executory contracts or

unexpired leases that are not between the same parties" so long as such motions:

> (1) state in a conspicuous place that parties receiving the omnibus motion should
> locate their names and their contracts or leases listed in the motion;
> (2) list parties alphabetically and identify the corresponding contract or lease;
> (3) specify the terms, including the curing of defaults, for each requested
> assumption or assignment;
> (4) specify the terms including the identity of each assignee and the adequate
> assurance of future performance by each assignee, for each requested assignment;

(5) be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

(6) be limited to no more than 100 executory contracts or unexpired leases.

Fed. R. Bankr. P. 6006(f).  The corresponding Advisory Committee Notes explain that "[t]hese requirements are intended to ensure that the non-debtor parties to the contracts and leases receive effective notice of the motion."  Fed. R. Bankr. P. 6006(f) advisory committee's note (2007).  It is clear from the Amendments and the Advisory Committee Note that while parties can utilize omnibus motions for convenience, these motions inherently present a greater risk that the non-moving party will not receive proper notice. Accordingly, it is even more important that such motions comply with the formalities of Bankruptcy Rule 9013.

16.       Bankruptcy Rule 6006, as amended, recognizes that while notice is always a particular concern when omnibus motions are involved, it is critical when assumption, rather than rejection, is sought.  Thus, Bankruptcy Rule 6006(e) requires specific conditions to be met before the debtor may even seek to assume contracts by omnibus motion.  These conditions are:

(1) all executory contracts or unexpired leases to be assumed or assigned are between the same parties or are to be assigned to the same assignee; (2) the trustee seeks to assume, but not assign to more than one assignee, unexpired leases of real property; or (3) the court otherwise authorizes the motion to be filed."

Fed. R. Bankr. P. 6006(e).  Notably, Rule 6006(e)(3) highlights the special notice concerns relating to contract assumption and requires court approval to proceed on an omnibus basis.[1]

---

[1] Bankruptcy Rule 6006(g), another of the 2007 Amendments, is also instructive.  According to that provision, "[t]he finality of any order respecting an executory contract or unexpired lease included in an omnibus motion shall be determined as though such contract or lease had been the subject of a separate motion."  Fed. R. Bankr. P. 6006(g). If each individual contract included in an omnibus motion must be treated as though it were the subject of an individual motion for purposes of finality, it makes sense that an omnibus motion must comply with the formal notice requirements as to each of the counterparties it affects.  Rule 6006(g) bolsters the notion that omnibus motions are not immune from the requirements applied to ordinary motions, and must afford non-moving parties the same, if not a more stringent, degree of notice.

17.    Permitting Debtor's eleventh-hour reversal to stand would not only vitiate the Stipulation and Order setting out deadlines for both notification and the filing of a motion for approval, but would also sanction Debtor's use of email to essentially withdraw the November 14 Motion and file a new motion.  This result is untenable given the formal motion requirements discussed above and the stringent notice criteria set forth in the Amendments to Bankruptcy Rule 6006.  Debtor's revised exhibits did not merely correct a spelling error or an insignificant number on a spreadsheet, but rather completely altered the nature of the relief sought.  Thus, despite the Debtor's efforts to characterize its revised exhibits as mere "corrections and modifications" and its insistence that Basso had a duty to "read and appreciate" the November 21 email, Debtor cannot escape the fact that by changing its mind, it assumed the same burden to make a proper motion on proper notice that is imposed on every movant.

18.    Even Debtor would be hard-pressed to argue that the November 21 email and email service of the revised exhibits satisfy the formal requirements imposed by Bankruptcy Rule 9013.  Neither of these communications sets forth the grounds upon which assumption of the Basso Confirmations is sought.  Moreover, these communications fail to fulfill all of the six requirements listed under Bankruptcy Rule 6006(f) and, in any event, were not properly served. Notably, the emailed Notice of Revised Exhibits accompanying the modified exhibits fails to conspicuously notify counterparties to search the exhibits for their names and contracts.  (See Caufield Decl. at ¶¶ 8-9, Exhibit 4; Jaklitsch Decl. at ¶5).

19.    Debtor goes to great pains to berate Basso associate Cristin Caufield (who is not, as Debtor's Objections states, a "Senior Associate and Equity Trade Specialist") for giving the November 21 email a "quick review" and failing to open all of the attachments to the multiple generic emails (sent via Epiq Systems) purporting to amend the exhibits to its original motion.

9

(Debtor's Objection at ¶¶ 3, 24-25). Although attorney Frank Jaklitsch is not Basso's

bankruptcy counsel, Debtor also points to the fact that Jaklitsch received the email blast

containing the revised exhibits and did not forward the emails to Basso. (Id. at ¶¶15, 25).

Debtor's arguments hold little water because neither Caufield nor Jaklitsch had an obligation to

read these random emails with a magnifying glass, as neither could be said to constitute notice of

a motion. On the contrary, Debtor, as the movant, had a duty to properly and formally notify

Basso of its complete reversal of its position and to withdraw its prior motion and file and serve a

new one in keeping with the rules.

20.     The fact that Caufield and Jaklitsch did not scrutinize and dissect the random

emails they received, which provided no indication of their importance, does not absolve Debtor

of its obligation as the movant to comply with the requirements for filing a proper motion and

giving notice to non-movants. Moreover, the fact that Jaklitsch, an attorney, did not recognize

the emails as notice documents emphasizes that the format and content of the emails was not

sufficiently in keeping with their intended purpose and that Debtor did not even come close to

satisfying its burden to comply with the motion rules. (Jaklitsch Decl. at ¶5). The events that

transpired here speak to the very reason why we have motion requirements: the recipient of a

random email that does not clearly indicate its legal significance might not recognize the

intended consequence of the communication.

21.     Debtor attempts to explain away its failure to give Basso proper notice by

referencing the hundreds of trades it must close and congratulating itself for dealing with those

trades at an "impressive pace." (Debtor's Objection at ¶17). Debtor's compliance with explicit

statutes and rules is not excused merely because the debtor has a lot on its plate.

**II.     The Stipulation and Order Required Debtor to Make a Final Decision to Either Assume or Reject the Open Trade Confirmations and to Move For the Relief Sought in Accordance with Firmly Established Deadlines.**

22.     Debtor points out that the assumption and rejection of executory contracts is subject to court approval under Section 365(a) of the Bankruptcy Code.  (Id. at ¶50).  It argues that because this Court "never entered an order approving the *rejection* of the Basso Open Trades," "Basso was not at liberty to treat the Basso Open Trades as rejected."  (Id. at ¶ 51).  Debtor's contention demonstrates that Debtor, to use its own words, failed to "read or appreciate" Basso's point.  (Id. at ¶10).  Basso agrees that Debtor's November 14 Motion to reject the Basso Confirmations was never final because the Court never signed off on an order approving the motion.  But Debtor's November 7 notification and November 14 Motion to reject the Basso Confirmations constituted a final expression of Debtor's intentions with regard to the relief sought and were binding under the terms of the Stipulation and Order.  After the November 7 notification deadline passed, Debtor could not change its mind and choose to assume the Basso Confirmations unless it (1) obtained relief from the Stipulation and Order and (2) filed a formal motion with the Court.  To hold otherwise would be to undermine the very purpose of the Stipulation and Order – to establish a date certain that counterparties could rely upon.

23.     Debtor agreed, in the so-ordered Stipulation and Order, that the date by which notification to Basso and other counterparties would be given could only be extended with leave of Court "for good cause shown."  (Stipulation and Order at ¶4).  When the Debtor made its last minute application to the Court for the exact opposite relief it promised Basso it would seek, utilizing a format not in keeping with the requirements of a formal motion, it directly contravened the provisions of the Stipulation and Order.  Since the opposite conclusion would render this Court's order null and void, this Court should preclude Debtor from assuming the

11

Basso Confirmations and validate Basso's reliance on the November 7 notice and Debtor's

corresponding motion to reject by approving Debtor's rejection of the Basso Confirmations.

**III.     Basso Reasonably Relied Upon Debtor's November 7, 2008 Notice to Its Detriment
and Was Unlawfully Prejudiced By Debtor's Eleventh Hour Reversal.**

24.     Since Basso substantially relied on Debtor's statements and actions and will be

significantly prejudiced if Debtor is permitted to assume the Basso Confirmations at this late

date, this Court should declare that Debtor be estopped from assuming the confirmations. When

Debtor filed a motion to approve its rejection of Basso's Confirmations and discharged its

obligation to notify Basso of its decision, Basso decided not to object to the rejection. (Caufield

Decl. at ¶6). Relying on the fact that Debtor was rejecting the trades pursuant to the Stipulation

and Order, Basso took no action to prepare for or mitigate the potential loss that would result if

the trades were to be assumed. (Id.) The current market for the asset Debtor wishes Basso to

purchase has dropped substantially, and Basso will suffer a large loss if the trade is ordered to

proceed. Having acted reasonably at all stages of its reliance, Basso should benefit from

equitable relief.

25.     Debtor argues that Basso could have discovered that Debtor was seeking to

assume the Basso Confirmations "through the exercise of reasonable diligence," asserting that if

the Basso associate and Basso's outside debt trading counsel (not retained with regard to the

bankruptcy) had scrutinized their emails, they would have unearthed Basso's intention to assume

the trades. (Debtor's Objection at ¶25). Debtor further asserts that it was unreasonable for Basso

to rely on the court-ordered notification it received on November 7 and Debtor's motion to reject

the Basso Confirmations in light of the November 21 email and the series of email attachments

comprising the Notice of Revised Exhibits. (Id. at ¶¶29, 32, 36).

12

26.     Debtor's arguments fail to acknowledge the context of the situation as it was shaped by Debtor's actions and inactions.  If Debtor had obtained relief from the Stipulation and Order and filed and properly served a new motion changing the nature of the relief it sought, Debtor would have had to send a conspicuous notice in keeping with the requirements of Bankruptcy Rule 6006(f).  Such a notice would have stated, in a prominent place, that parties to the motion should search the communication for a listing of their names and contracts.  Fed. R. Bankr. P. 6006(f).  Properly believing that Debtor made a final decision with regard to the Basso Confirmations, which would not change absent modification of the Stipulation and Order, the operations associate at Basso who received Debtor's casual email had no obligation to determine that the email, which began with three paragraphs discussing Debtor's rejection of the Basso trades, would require scrutiny.

27.     Debtor's Objection states that Debtor's November 7 email and the original exhibits attached to the November 14 Motion "intended to assume the Basso Trade Confirmations," when, in fact, these documents sought to reject those trades.  (Debtor's Objection at ¶27).  Debtor sent so many informal emails in an attempt to affect Basso's legal rights that not even Debtor's own counsel can keep all of Debtor's communications straight. When Debtor did eventually file a so-called Notice of Revised Exhibits, it was weeks after the objection deadline, on a Sunday night just prior to the hearing, and still did not meet the technical requirements of a motion to assume.

28.     It is no wonder that the Basso recipients of the Debtor's emails were unable to ascertain their intended significance, as Debtor refuses to acknowledge that the November 21 email and the purported Notice of Revised Exhibits did more than merely "correct and modify" its original motion.  (Id. at ¶13).  Debtor tries to downplay the impact of these emails, however,

in doing so, Debtor never explains how or why Basso's email recipients had an obligation to understand and interpret these so-called "corrections" as formal notice that Debtor was seeking to change the nature of the relief it sought.

29.    Debtor's attempts to distinguish In re Texaco, 254 B.R. 536 (S.D.N.Y. 2000) are unavailing. Despite the vast similarities between the actions of the respective debtors, Debtor focuses on the fact that the debtor in Texaco sent a "blizzard" of notices proclaiming its intent to assume the leases at issue while the Debtor here sought to effectuate notice in a one-page email (the November 21 email). (Id. at ¶38-39). The difference in the magnitude of notice each debtor provided does not defeat the analogy. Just as it was reasonable for the lessors to rely on the Texaco debtors repeated declarations of intent to assume the lease, memorialized in a motion seeking an order to approve such an assumption, it was reasonable for the Basso email recipients to rely on Debtor's motion to approve its rejection of the Basso Confirmations. (Id.).

30.    The one significant difference between the Debtor here and the Texaco debtor – that the Texaco debtor actually reserved its rights to contend that certain of its leases were not subject to assumption, albeit in a short paragraph buried in a barrage of papers - actually works in Basso's favor. Texaco, 254 B.R. at 546. If the Texaco court could grant the lessors equitable relief against the debtor on the grounds that lessors could not have reasonably been expected to discover the debtor's hidden reservation of rights, then estoppel is appropriate in this situation, where Debtor made no similar reservation of rights and Basso reasonably relied on court-ordered notifications and motion filings to its detriment.

31.    Debtor's Objection cites several cases in support of the notions that "a party cannot choose to rely on one statement, for purposes of estoppel, while ignoring a conflicting statement" and that "reliance cannot be reasonable where the movant ignores the subsequent

14

disclosure of contradictory facts." (Debtor's Objection at ¶¶29, 30). However, these legal

principles have no applicability here, as Basso was neither comparing two conflicting statements

nor relying on Debtor's rejection of its trades in the face of contradictory facts. The crux of the

issue is that Basso received defective notice of Debtor's intent to assume its trades, and could not

have reasonably been expected to know from the contents of a few random emails that Debtor

had made any statements conflicting with Basso's understanding that Debtor was seeking court

approval to reject the contracts. Basso, unlike the plaintiff in Daraghi v. Hymas, 2007 WL

2274861 (S.D.N.Y. 2007), one of the cases Debtor relies upon, had no reason to seek

clarification of the emails sent, as it was faced not with internally inconsistent statements, but

rather Debtor's court-directed, unequivocal statements of intention to reject the Basso

Confirmations. Since Basso reasonably relied on these statements to its detriment, this Court

should estop Debtor from assuming the Basso Confirmations.

## REQUEST FOR RELIEF

WHEREFORE, for the reasons set forth herein, Basso respectfully requests that this

Court overrule Debtor's Objection and enter an order granting Basso's motion for relief.

Dated: June 2, 2009
       New York, New York

STROOCK & STROOCK & LAVAN, LLP

/s/ Melvin A. Brosterman
Melvin A. Brosterman
Harold A. Olsen
Dina Kolker
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

Attorneys for Basso Capital Management, L.P.

15