Paul Batista, Esq.
PAUL BATISTA, P.C.
26 Broadway – Suite 1900
New York, New York 10004
Telephone: (212) 980-0070
Facsimile: (212) 344-7677
E-mail: Batista007@aol.com

*Attorney for Unclaimed Property Recovery Service, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

**In re**

**LEHMAN BROTHERS HOLDINGS, INC.,** *et al.,*

**Debtors.**

-----------------------------------------------------------------X

**SECURITIES INVESTOR PROTECTION**
**CORPORATION,**

          **Plaintiff-Appellant,**

       **v.**

**LEHMAN BROTHERS, INC.,**

          **Defendant.**

-----------------------------------------------------------------X

**Chapter 11**

**Case No. 08-13555 (JMP)**

**Jointly Administered**

**Case No. 08-01420 (JMP) SIPA**

**SIPA Liquidation Proceeding.**

**REPLY IN FURTHER SUPPORT OF THE MOTION**
**OF UNCLAIMED PROPERTY RECOVERY SERVICE, INC.**
**FOR ORDERS (A) COMPELLING PAYMENT OF UNCLAIMED FUNDS**
**BY THE NEW YORK STATE COMPTROLLER, (B) LIFTING THE**
**AUTOMATIC STAY OR, ALTERNATIVELY, RELIEF FROM THE**
**AUTOMATIC STAY, (C) ALLOWING PAYMENT FOR SERVICES PROVIDED**
**POSTPETITION AND (D) OTHER RELATED RELIEF**

TO THE HONORABLE JAMES M.PECK,
UNITED STATES BANKRUPTCY JUDGE:

Unclaimed Property Recovery Service, Inc. ("UPRS"), by its counsel, Paul

Batista, P.C., respectfully submits this Reply in response to the Objection dated May 29,

2009 (the "Trustee Objection") of James W. Giddens, as Trustee in the Securities Investor Protection Act ("SIPA") liquidation of Lehman Brothers Inc. ("LBI") and the Objection dated May 29, 2009 (the "LBHI Objection") of Lehman Brothers Holdings Inc. ("LBHI"), and in further support of UPRS's motion dated April 13, 2009.

## I. PRELIMINARY STATEMENT

1.      On May 1, 2009, the SIPA Trustee filed a proposed rejection of the contracts between LBI and UPRS.  On May 11, 2009, UPRS filed an objection to the Trustee's proposed rejection of the contracts between LBI and UPRS.  In its objection, UPRS stated that (i) UPRS fully performed in good faith all of its obligations under the terms of the contracts, (ii) the relevant agreements are not executory contracts since contracts substantially performed are not executory contracts under § 365 of the Bankruptcy Code, and (iii) post-petition payment obligations are not executory contracts under §365.

2.      There are fundamental facts in this case that the objectors do not, because they cannot, squarely confront.  *First*, pursuant to four LBI Agreements ("Agreements") and authorizations ("Authorizations"), UPRS has identified and claimed approximately $5 million in unclaimed funds held by the New York State Office of Unclaimed Funds ("NYS OUF") on behalf of LBI.[1]  *Second*, the NYS OUF has long recognized, and continues to recognize, that UPRS is LBI's authorized representative.  *Third*, the NYS OUF has agreed to "the expeditious return of more than $6,000,000 of unclaimed

---

[1] Both the Trustee Objection and the LBHI Objection disclose that the actual amount that UPRS identified and claimed on behalf of LBI is now approximately $6 million.

funds...to LBI and other Lehman entities" (*see* LBHI Obj. at ¶ 7) based on the claim that

UPRS filed with NYS OUF. The objectors neither refute nor deny any of these facts.

3.      Moreover, NYS OUF sent a letter to UPRS dated April 17, 2009 stating

that "We are pleased to advise you that this office has approved your claim." This letter

confirms that (i) the NYS OUF has agreed to pay the objectors $6,000,000 in unclaimed

funds (*see* LBHI Obj. at ¶ 7) pursuant to the claim filed by UPRS, (ii) the payment of

$6,000,000 by NYS OUF is the direct result of UPRS's efforts under the Agreements,

and (iii) the recovery of $6,000,000 concludes UPRS's obligations as being fully

performed in good faith under the terms of the Agreements and the Authorizations.

4.      Since UPRS has no unperformed obligation remaining, the only LBI

performance that remains is the payment of UPRS's 10% fee of approximately $500,000

to $600,000.    The Trustee misinterprets UPRS's statement that the UPRS-LBI

Agreements are "ongoing" to mean that UPRS has continuing performance obligations.

*See* Trustee Obj. at ¶ 10. In point of fact, the usage of "ongoing" in UPRS's statement

simply indicated that the Agreements are still in effect; in other words, "ongoing" does

not relate to the continuing performance of the Agreements.

5.      On May 4, 2009 – several weeks after UPRS's motion was served – LBHI's

representatives informed UPRS that LBI would not perform under the four contracts and

would not pay UPRS its fee for identifying and claiming the funds. Apparently LBHI

and the SIPA Trustee want the NYS OUF to pay the $5 to $6 million to another firm and

the other firm will collect the $500,000 fee due UPRS.

6.      Until UPRS filed its motion on April 13, 2009, LBHI and the SPIC Trustee
had no specific knowledge that the $5 to $6 million in unclaimed funds were outstanding
and were claimed by UPRS for LBI.  This fact is confirmed by the Trustee: "Since the
filing of the [UPRS] Motion, the Trustee's professionals have been in discussions with
officials from the Comptroller's office to ascertain the extent of unclaimed funds held by
the Comptroller on behalf of LBI." *See* Trustee Obj. at ¶4, fn. 1.

7.      LBHI and the Trustee contacted the NYS OUF regarding their intent to
recover the unclaimed funds on their own.  However, once a claim has been filed, it is
NYS OUF policy not to accept a new claim from another firm.  The NYS OUF has long
recognized UPRS as LBI's authorized representative.  Consequently, when NYS OUF
pays the LBI unclaimed funds outstanding, NYS OUF will be paying the claim that
UPRS had filed with the NYS OUF. *See* Gelb Dec. at ¶ 17.

8.      UPRS performed its services in reliance upon the executed Agreements and
Authorizations that LBI would compensate UPRS in the amount of 10% of the recovered
unclaimed funds. In performing all of its obligations, UPRS expected to be compensated
for its services.

9.      A contract in which one party's post-petition obligation is the payment of
money is not an executory contract. The only LBI performance that remains is the
payment of $500,000 to $600,000 to UPRS from the unclaimed funds. Since the
Agreements at issue require only the payment of money to UPRS for its services, the
Agreements are not the type of contracts that can be rejected.

4

10.    Because the Director of the NYS OUF has agreed to pay the $5 to $6 million in outstanding unclaimed funds (*see* LBHI Obj. at ¶ 7), it appears that the only business purpose of the objectors' failure to honor the Agreements and Authorizations is to have another firm to collect the fees due UPRS for the claim filed by UPRS.

## II. THE UPRS-LBI AGREEMENTS ARE NOT EXECUTORY CONTRACTS

### A.    UPRS Has Fully Performed Under The Agreements

11.    UPRS performed its services in good faith and in reliance upon the executed Agreements that LBI would compensate UPRS in the amount of 10% of the recovered unclaimed property.  UPRS fully performed in good faith all of its obligations under the terms of the Agreements.  In performing all of its obligations, UPRS expected to be compensated for its services.

12.    On April 17, 2009, the NYS OUF sent a letter to UPRS stating , "We are pleased to advise you that this office has approved your claim." This confirms that (i) the NYS OUF has agreed to pay the objectors $6,000,000 in unclaimed funds (*see* LBHI Obj. at ¶ 7) pursuant to the UPRS claim, (ii) the payment of $6,000,000 by NYS OUF is the direct result of UPRS's efforts under the Agreements, and (iii) the recovery of $6,000,000 confirms that UPRS fully performed in good faith all of its obligations.

13.    Also included in Trustee Objection is the argument that UPRS's Agreements are subject to cancellation because they are contingency agreements. *See* Trustee Obj. at ¶ 11.  This argument lacks merit since the NYS OUF has agreed to pay the objectors $6,000,000 in unclaimed funds, *see* LBHI Obj. at ¶ 7. The act of recovering the $6,000,000 resolves the contingency, if in fact there was ever one.   Once a

5

contingency has been resolved, then a claim can be paid. *See In re Worldcom Inc. Sec. Litig.*, 293 B.R. 308, 323 (S.D.N.Y. 2003); *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 56 (Bankr. D.Del. 2001); *Joseph F. Sanson Inv. Co. v. 268 Ltd. (In re 268 Ltd.)*, 789 F.2d 674,678 (9th Cir. 1986) ("The Bankruptcy Code's broad definition of 'claim' … includes any right to payment, whether or not that right is contingent and unliquidated"); *In re Qmect, Inc.*, 368 B.R. 882, 884 (Bankr. N.D. Calif. 2007).

14.    On May 4, 2009, LBHI's representatives informed UPRS that LBI would not perform under the four contracts and would not pay UPRS its fee for claiming the funds held on behalf of LBI. It is likely that LBHI and the Trustee want the NYS OUF to pay the funds to another firm, presumably Alvarez & Marsal, which would then wrongfully collect the $500,000 to $600,000 fee due UPRS. Courts in the Second Circuit have held that a judge reviewing an application to reject a contract must find from the evidence presented a good business reason to grant the application. *See In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992); *In re Comm. Of Equity Sec. Holders v. Lionel Corp*, 722 F.2d 1063, 1071 (2d Cir. 1983). Refusing to pay UPRS after it fully performed its services and recovered $6,000,000 in unclaimed funds (*see* LBHI Obj. at ¶ 7) is not a good business decision and thus does not warrant the Court's granting the application for canceling UPRS's four Agreements. This is especially true in light of the fact that the objectors apparently intend to pay another party the fees due UPRS.

B.    **Contracts Substantially Performed Are Not Executory**

15.    Pursuant to the Agreements and Authorizations, UPRS identified and claimed millions of dollars held by the NYS OUF. UPRS has fully performed its services

and recovered $6,000,000 in unclaimed funds (*see* LBHI Obj. at ¶ 7). Subsequent to the LBHI petition date, both LBI and UPRS have substantially performed according to the Agreements. Accordingly, the UPRS-LBI Agreements are not executory contracts under §365 of the Bankruptcy Code.

16.     It is settled law that a contract substantially performed is not executory. *See In re Pacific Exp. Inc.*, 780 F.2d 1482, 1487-88 (9th Cir. 1986) (contract substantially performed is not executory); *In re Norwood Chevrolet Co., 143* B.R. 804 (Bankr. D.R.I. 1992) (substantial performance by both parties precludes rejection of contract); *In re Kmart Corp.*, 290 B.R. 614, 617 (N.D. 111. 2003) (a contract "that has been fully performed by either side is not executory"); *American Network Leasing Corp. v. First Data Merchant Servs. Corp.*, 1997 WL 534827, at *9 (N.D. Ill. Aug.21, 1997) (agreement "not executory" because it was "fully performed by one side"); *In re Sundial Asphalt Co., 147* B.R. 72, 80 (E.D.N.Y. 1992) (contract for sale of land ceases to be executory when court issues decree of specific performance); *In re Columbia Gas Sys.*, 146 B.R. 106 (D. Del. 1992) (court approved settlement which required only "perfunctory acts utilizing preapproved terms and conditions" is not executory contract); *Heartline Farms v. Daly,* 128 B.R. 246, 250 (D. Neb. 1990) ("mere formality" remaining for performance "does not represent the kind of significant legal obligation that would render a contract executory"); *In re Fitch,* 174 B.R. 96, 102 (S.D. Ill. 1994) (contract for sale of real estate with installment payments was nonexecutory because seller's only remaining obligation, to deliver good title, was not material).

17.     Courts have allowed payment of post-petition performance rendered on a

contract. *See In re ICS Cybernetics, Inc.* 111 B.R. 32, 37 (Bankr. N.D.N.Y. 1989).

Equally important, numerous other service companies are being paid for post-petition

performance, and about $100 million in attorneys' fees either have been paid or are now

sought. The objectors appear to have no issue with paying $100 million in attorneys'

fees, but the objectors have an issue with paying UPRS for its services performed.

## C.   Post-Petition Payment Obligations Are Not Executory Contracts

18.    LBI's post-petition payment obligation to pay UPRS is not an executory

contract. Courts have consistently held that contracts that only require payment are not

executory. *See In re Spectrum Information Technologies, Inc., 190* B.R. 741, 748 (Bankr.

E.D.N.Y. 1996) ("[W]here the only performance that remains is the payment of money,

the contract will not be found to be executory"); *In re Munple, Ltd.,* 868 F.2d 1129 (9th

Cir. *1989)* (real estate brokerage commission agreement not executory even though

payment of fee was conditioned upon closing of sale); *In re Shada Truck Leasing, Inc.,*

31 B.R. 97 (Banks. *D. Neb.* 1983) (contract is not executory when all that is left for

debtor to do is pay); *In re U.S Metalsource Corp., 163* B.R. 260, 269 (Bankr. W.D. Pa.

1993) (terminable-at-will employment contracts are not executory contracts because

debtor's only legal obligation is to pay severance *pay); In re Wisconsin Barge Line, 76*

*B.R.* 695 (Bankr. E.D. Mo. 1987) (contracts under which debtors' only duty was to pay

premiums were not "executory"); *In re Wang Laboratories, Inc.,* 154 B.R. 389 (Bankr. D.

Mass. 1993) (agreement not executory where only remaining obligation was the payment

of severance pay); *In re THC Fin. Corp.,* 686 F.2d 799, 804 (9th Cir. 1982) (agreement

not executory because the only obligation is the payment of money).

8

## III. THE VALUE OF UPRS'S POST-PETITION SERVICES IS $500,000 TO $600,000

19.    The value of services actually rendered by UPRS during the post-petition
period is $500,000 to $600,000. Courts have held that consideration is furnished to the
estate where the debtor-in-possession induces post-petition performance. *See In re ICS
Cybernetics, Inc. 111 B.R. 32, 37* (Bankr. N.D.N.Y. 1989).

20.    The Bankruptcy Code does not confer upon a debtor in bankruptcy greater
rights and powers under a contract than it had outside of bankruptcy. *In re Penn Traffic
Co.,* 322 B.R. 63, 72 (Bankr. S.D.N.Y. 2003) ("It is well settled that the mere filing of a
bankruptcy petition does not enhance a debtor's contract rights or diminish its
obligations"); *In re Nemko, Inc., 143* B.R. 980, 987 (Bankr. E.D.N.Y. 1992) ("[A]
contractual right is not affected by the filing of a Chapter 11 petition. The rights of a
debtor to the property of the estate do not expand when the debtor files a petition in
bankruptcy.")

21.    On October 27, 2008, NYS OUF sent a letter to UPRS, with a copy to the
SIPA Trustee. On February 24, 2009, NYS OUF sent another letter to UPRS, again with
a copy to the Trustee. The Trustee was made aware that UPRS was the authorized
representative to claim unclaimed funds for LBI. On May 1, 2009, the Trustee filed the
proposed rejection of LBI-UPRS contracts, fully six (6) months after the October 2008
letter was sent to the Trustee. In this context, the SIPA Trustee accepted UPRS' post-
petition performance.   A debtor cannot accept the benefits of a contract without
committing to assume or reject it. *See Theater Holding Corp. v. Mauro,* 681 F.2d 102,

105 (2d. Cir. 1982); *In re Wallace,* 122 B.R. 222, 234-35 (Bankr. D. N.J. 1990) (giving debtors fifteen days to assume or reject).

22.    When a debtor-in-possession elects to receive benefits from the other party to a contract pending a decision to reject or assume the contract, the debtor-in-possession must pay for the reasonable value of those services. *See In re Travelot Co., 286* B.R. 462, 466 (Bankr. S.D. Ga. 2002). That value, "depending on the circumstances of a particular contract, may be what is specified in the contract." *Bildisco,* 465 U.S. at 531, 104 S. Ct. at 1199. *Goldin v. Putnam Lovell, Inc.,* 163 B.R. 899, 907-908 (Bankr. D. Mass. 1994) (non-debtor party to prepetition contract was entitled to reasonable value of services actually conferred on debtor during post-petition, pre-assumption/rejection period).

23.    UPRS's claim for payment should be given "administrative expense" priority under 11 U.S.C. §503(b)(1)(A). A claim is entitled to administrative priority if the consideration supporting the claimant's right to payment was both supplied and beneficial to the debtor-in-possession in the operation of the business. *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc., 789* F.2d 98, 101 (2d Cir. 1986).

24.    Bankruptcy courts are courts of equity "empowered to invoke equitable principles to achieve fairness and justice in the reorganization process." *See In re Momentum Mfg. Corp.,* 25 F.3d 1132, 1136 (2d Cir. 1994). The Trustee has an obligation to pay the fee to which UPRS is entitled since it was UPRS that identified and claimed the funds on behalf of LBI.

## IV. <u>BREACH OF THE COVENANT OF GOOD FAITH</u>

25.    UPRS performed its services in good faith and in reliance upon the executed Agreements that LBI would compensate UPRS in the amount of 10% of the recovered unclaimed funds.  In performing all of its obligations, UPRS expected to be compensated for its services.

26.    Now that UPRS has enabled LBI to recover approximately $5 to $6 million, LBHI and the SIPA Trustee do not want to pay UPRS its earned fee of 10%. Instead of providing compensation for the services provided by UPRS to LBI, LBHI and the SIPA Trustee want another firm to collect the fee due UPRS. This is a breach of the covenants of good faith and fair dealing.

27.    In *India.com, Inc. v. Dalal,* 2009 U.S. App. LEXIS 8962 (2d Cir. 2009), the Second Circuit recently stressed:

> As a general matter, a covenant of good faith and fair dealing is implicit in
> all contracts. The covenant "embraces a pledge that neither party shall do
> anything which will have the effect of destroying or injuring the right of the
> other party to receive the fruits of the contract."

28.    The only business purpose of the objectors' failure to honor the Agreements and Authorizations is to have another firm to collect the fees due UPRS. The Bankruptcy Court will not approve the rejection where the request is "manifestly unreasonable," there is "bad faith," and the debtor has committed a "gross abuse of business discretion." *See Crystalin, LLC v. Selma Props., Inc., 293* B.R. 455, 464 (Bankr. 8th Cir. 2003).

11

## V. ALLOWANCE AND PAYMENT OF SERVICES PROVIDED POST-PETITION

29.     Since UPRS provided services under the Agreements that are "actual, necessary costs and expenses of preserving [LBI's] ... estate," 11 U.S.C. § 503(b)(1)(A), the Court should award it a post-petition administrative expense claim.

30.     LBHI argues incorrectly that NYS OUF is voluntarily cooperating with LBI and LBHI with respect to the return of more than $6,000,000 in unclaimed funds. (*See* LBHI Obj. at ¶ 9) Under the Agreements and Authorizations, UPRS identified and claimed the $6,000,000 in unclaimed funds outstanding. NYS OUF is "cooperating," *i.e.*, providing the unclaimed funds to LBI and LBHI, because of UPRS's efforts.  Moreover, LBHI argues that payment to UPRS is not required because LBI has the ability to recover unclaimed funds on its own, without the assistance from UPRS. *Id.* ¶ 9.  This argument is weak considering that UPRS has been recovering unclaimed funds on behalf of LBI since 1996.

## VI. RELIEF FROM THE AUTOMATIC STAY SHOULD BE GRANTED

31.     In order to trigger the automatic stay, there must be an act against either the debtor or against property of the debtor or of the estate. Although the scope of the automatic stay is broad, the clear language of §362(a) stays actions only against a "debtor." *Association Of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3rd Cir. 1982). As a consequence, "it is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others  with a similar legal or factual nexus to the . . . debtor." *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196-97 (6th Cir. 1983);

*see also United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491-93 (9th Cir. 1993) (holding that stay does not preclude government from pursuing deficiency judgment against nondebtor cosignors of promissory note); *Croyden Associates v. Alleco, Inc.*, 969 F.2d 675, 677 (8th Cir. 1992) (refusing to extend stay to claims against solvent codefendants): *Harry and Jeanette Weinberg Foundation, Inc. v. Croyden Associates*, 507 U.S. 908 (1993); *Credit Alliance Corp. v. Williams*, 851 F.2d 119, 121-22 (4th Cir. 1988) (enforcing a default judgment entered against a nondebtor guarantor of a note during the pendency of the corporate obligor's bankruptcy).

32.     Although the Bankruptcy Code gives a Bankruptcy Court exclusive jurisdiction over "the debtor and his property, wherever located," a Bankruptcy Court does not have jurisdiction over suits concerning property that is not part of the debtor's estate. *See Matter of Stanndco Developers, Inc.*, 534 F.2d 1050, 1052-53 (2nd Cir. 1976); *In re Shirley Duke Associates*, 611 F.2d 15, 18 (2nd Cir. 1979). In addition, it is settled that the debtor's ownership of all the outstanding stock of a non-filing subsidiary corporation does not make the subsidiary part of the debtor's estate. *In re Unishops, Inc.*, 494 F.2d 689 (2nd Cir. 1974) (the Bankruptcy Court cannot expand its jurisdiction over a debtor's subsidiary absent a showing that the subsidiary is a mere sham rather than a viable entity.) *See also In re Beck Industries, Inc.*, 479 F.2d 410, 415 (2nd Cir. 1973); *Trustees of Beck Industries, Inc. v. Feldman*, 414 U.S. 858 (1973).

33.     Here, LBI is not the debtor and the approximately $6 million in funds that UPRS has claimed are due LBI and they are an asset of LBI.   The unclaimed funds outstanding are not due LBHI, and, for that reason, they are not an asset of LBHI.

Accordingly, LBHI does not have a security interest or ownership interest in this property.

34.    Relief from the stay is also warranted under §362(d)(2) of the Bankruptcy Code because (i) the estate has no equity in the unclaimed funds and (ii) the unclaimed funds are not essential for the Debtor's reorganization, a fact which the Debtor has not denied.    Accordingly, UPRS's request for relief from the automatic stay should be granted.

## VII. NOTICE

35.    UPRS is serving this Reply by ECF upon all parties that have filed papers in the Debtors' cases by ECF. UPRS is also causing this Reply to be served upon LHBI, LBI, bankruptcy counsel for LBHI, counsel for the Trustee, counsel for Barclays, counsel for the Official Committee of Unsecured Creditors and the Office of the United States Trustee.

## VIII. CONCLUSION

In conclusion, the actions UPRS requests the authority herein to take and the relief sought are not subject to the automatic stay and, alternatively, even if they are subject to the automatic stay, relief from the stay is warranted pursuant to §§362(d)(1) and/or 362(d)(2) of the Bankruptcy Code.

WHEREFORE, UPRS respectfully requests that the Court enter an order (i) compelling payment of all unclaimed funds outstanding in the name of LBI, its predecessors and its subsidiaries held by the NYS Comptroller NYS OUF; (ii) declaring that the automatic stay does not apply to the actions sought to be taken by UPRS, or, alternatively, providing relief from the automatic stay; (iii) allowing payment of services provided postpetition of approximately $500,000 to $600,000; and (iv) other related relief, including allowance and payment of the $500,000 outstanding balance due UPRS.

Dated:　New York, New York
　　　　June 1, 2009

**PAUL BATISTA, P.C.**
*Attorney for Unclaimed Property Recovery Service, Inc.*

　　　　　　/s/ Paul Batista
Paul Batista (PB8717)
26 Broadway – Suite 1900
New York, New York 10004
Telephone: (212) 980-0070
Facsimile: (212) 344-7677
E-mail: Batista007@aol.com

Paul Batista, Esq.
PAUL BATISTA, P.C.
26 Broadway – Suite 1900
New York, New York 10004
Telephone: (212) 980-0070
Facsimile: (212) 344-7677
E-mail: Batista007@aol.com

*Attorney for Unclaimed Property Recovery Service, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

**In re**                                                          **Chapter 11**

**LEHMAN BROTHERS HOLDINGS, INC.,** *et al.,*    **Case No. 08-13555 (JMP)**

                                                                   **Jointly Administered**
**Debtors.**

-------------------------------------------------------------------x

**SECURITIES INVESTOR PROTECTION**
**CORPORATION,**

           **Plaintiff-Appellant,**                    **Case No. 08-01420 (JMP) SIPA**

     **v.**                                            **SIPA Liquidation Proceeding.**

**LEHMAN BROTHERS, INC.,**

           **Defendant.**

-------------------------------------------------------------------x

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I caused a true and correct copy of the Objection,

the Reply Declaration and the Reply of Unclaimed Property Recovery Service, Inc. to be

served by email and/or by first class Mail, postage prepaid, as follows:


          See Attached Service List

Dated: New York, New York
      June 1, 2009

**PAUL BATISTA, P.C.**
*Attorney for Unclaimed Property Recovery Service, Inc.*

        /s/ Paul Batista
Paul A. Batista (PB 8717)
26 Broadway – Suite 1900
New York, New York 10004
Telephone: (212) 980-0070
Facsimile: (212) 344-7677
E-mail: Batista007@aol.com

**PARTIES SERVICE LIST – First Class Mail**

| | |
|---|---|
| Attorneys for Debtors<br>Weil Gotshal & Manges LLP<br>Harvey R. Miller<br>Jacqueline Marcus<br>Shai Waisman<br>Richard Krasnow<br>767 Fifth Ave.<br>New York, NY 10153<br>Email: harvey.miller@weil.com<br>Email: jacqueline.marcus@weil.com<br><br>Email: shai.waisman@weil.com | Honorable James M. Peck ("Chambers")<br>Courtroom 601<br>One Bowling Green<br>New York, New York 10004 |
| U.S. Trustee<br>U.S. Trustee<br>Andy Velez-Rivera<br>Paul Schwartzberg,<br>Brian Masumoto<br>Linda Riffkin<br>Tracy Hope Davis<br>33 Whitehall Street, 21st Floor<br><br>New York, NY 10004 | Milbank, Tweed, Hadley &<br>McCloy LLP,<br>Dennis F. Dunne<br>Dennis O'Donnell<br>Evan Fleck<br>1 Chase Manhattan Plaza<br>New York, New York 10005 |
| Attorneys for Unsecured Creditors<br>Committee<br>Quinn Emanuel Urquhart Oliver & Hedges<br>James Tecce<br>Susheel Kirpalani<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>212-849-7000<br>Fax : 212 849-7100<br>Email: jamestecce@quinnemanuel.com<br><br>Email: susheelkirpalani@quinnemanuel.com | Attorneys for DIP Lenders<br>Cleary Gotliebb LLP<br>Lindsee P. Granfield<br>**Lisa M. Schweitzer**<br>One Liberty Plaza<br>New York, NY 10006<br>(212) 225-2000<br>(212) 225-3999 (fax)<br>lschweitzer@cgsh.com<br>maofiling@cgsh.com |
| Attorneys for the SIPC Trustee<br>Hughes Hubbard & Reed LLP<br>Jeffrey S. Margolin<br>One Battery Park Plaza<br>New York, NY 10004<br>(212) 837-6375<br>Fax : (212) 422-4726<br>Email: margolin@hugheshubbard.com | |