Paul Batista, Esq.
PAUL BATISTA, P.C.
26 Broadway – Suite 1900
New York, New York 10004
Telephone: (212) 980-0070
Facsimile: (212) 344-7677
E-mail: Batista007@aol.com

*Attorney for Unclaimed Property Recovery Service, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | |
|---|---|
| In re | **Chapter 11** |
| **LEHMAN BROTHERS HOLDINGS, INC.,** *et al.,* | **Case No. 08-13555 (JMP)** |
| Debtors. | **Jointly Administered** |

-------------------------------------------------------------x

| | |
|---|---|
| **SECURITIES INVESTOR PROTECTION CORPORATION,** | |
| Plaintiff-Appellant, | **Case No. 08-01420 (JMP) SIPA** |
| v. | **SIPA Liquidation Proceeding.** |
| **LEHMAN BROTHERS, INC.,** | |
| Defendant. | |

-------------------------------------------------------------x

**OBJECTION OF UNCLAIMED PROPERTY RECOVERY SERVICE, INC.**
**TO THE SIPC TRUSTEE'S**
**PROPOSED REJECTION OF LBI – UPRS CONTRACTS**

Unclaimed Property Recovery Service, Inc. ("UPRS"), by its counsel, Paul Batista, P.C., hereby submits this objection (the "Objection") to the rejection of the contracts between UPRS and Lehman Brothers, Inc. ("LBI") by the Notice of Rejection of Executory Contracts, dated May 1, 2009 ("Rejection Notice"), issued by James W.

Giddens, the Trustee for the SIPA Liquidation of LBI ("Trustee"), and respectfully represents and sets forth as follows:

## I. PRELIMINARY STATEMENT

1. Pursuant to four Agreements ("Agreements") between it and LBI and related authorizations ("Authorizations"), UPRS identified and claimed approximately $5 million in unclaimed funds held by the New York State Office of Unclaimed Funds ("NYS OUF") on behalf of LBI. The NYS OUF has long recognized UPRS as LBI's authorized representative.[1]

2. UPRS fully performed in good faith all of its obligations under the terms of the Agreements. After September 15, 2008 – the date of the commencement of these bankruptcy proceedings by Lehman Brothers Holdings Inc. ("LBHI") – both LBI and UPRS substantially performed according to the Agreements and Authorizations.

3. The Director of the NYS OUF has agreed to pay $5 to $6 million in unclaimed funds due LBI.

4. The only LBI performance that remains is the payment of $500,000 to $600,000 to UPRS from the unclaimed funds recovered.

5. As of September 15, 2008, the date of the commencement of the LBHI proceeding, and September 19, 2008, the date of the commencement of the SIPC Trustee proceedings, LBI was indebted to UPRS in at least the amount of $1 million on account and unpaid fees.

---

[1] According to papers dated Friday, May 29, 2009, and filed by Hughes Hubbard & Reed LLP and Weil, Gotshal & Manges LLP, the amount identified by UPRS and claimed by it on behalf of LBI is $6

2

6. As described more fully in the balance of this Objection, the SIPC Trustee has an obligation to pay the fees due UPRS, since it was UPRS that identified and claimed $5 million (now approximately $6 million) in unclaimed funds held by the NYS OUF on behalf of LBI. UPRS is entitled to payment of a post-petition administrative expense claim pursuant to 11 U.S.C. § 503(b) for the amount of its 10% fee, and allowance to recoup the $500,000 to $600,000 outstanding balance due UPRS from the unclaimed funds recovered. After UPRS is paid the 10% fee of $500,000 to $600,000 and the $500,000 outstanding balance due UPRS, LBI will recover approximately $4 to $5 million.

7. Because the Director of the NYS OUF has agreed to pay the $5 million in outstanding unclaimed funds due LBI, the only apparent purpose to be accomplished by the Trustee's rejection of the LBI-UPRS Agreements is to pay the $500,000 to $600,000 due UPRS to another firm.

8. The UPRS–LBI Agreements are not executory contracts. The notice of proposed rejection of executory contracts, dated May 1, 2009, issued by the Trustee, should be withdrawn since (i) contracts substantially performed are not executory contracts under §365 of the Bankruptcy Code and (ii) post-petition payment obligations are not executory contracts under section 365 of the Bankruptcy Code.

---

million, not $5 million.

## II. BANKRUPTCY FILINGS

9.      On September 15, 2008, LBHI filed its petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

10.     On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to LBI.

## III. FACTUAL BACKGROUND

11.     UPRS is in the business of finding unclaimed funds and notifying its owners. *See* the Declaration of Bernard Gelb dated April 13, 2009 ("Gelb Dec.") at ¶2. UPRS has longstanding and ongoing agreements with LBI to identify and recover unclaimed funds belonging to LBI. During the past thirteen years, UPRS has recovered millions of dollars in unclaimed funds for LBI. *See* Gelb Dec. ¶3.

12.     UPRS has spent many years and thousands of dollars to develop proprietary software, databases and research to identify and recover unclaimed funds that are outstanding for LBI.

13.     Pursuant to four LBI Agreements and Authorizations, UPRS identified and claimed $5 million in unclaimed funds held by the NYS OUF on behalf of LBI. The NYS OUF has long recognized UPRS as LBI authorized representative.

14.     In the time since the LBHI petition date, both LBI and UPRS have substantially performed according to the Agreements and Authorizations. The Director of the NYS OUF has agreed to pay UPRS the $5 to $6 million in unclaimed funds.

15.     UPRS performed its services in good faith and in reliance upon the executed Agreements and Authorizations that LBI would compensate UPRS in the

4

amount of 10% of the recovered funds. In performing all of its obligations, UPRS expected to be compensated for its services. The value of services actually conferred by UPRS during the post-petition period ranges from $500,000 to $600,000.

16. On June 7, 2007, July 2, 2007 and August 1, 2007, UPRS sent Bill Wallace, LBI Vice President, a billing statement for $500,000, for services as of June 7, 2007. *See* Gelb Dec., Exhibit D. LBI never objected to this billing statement.

17. On or about September 25, 2008 – in other words, during the post-petition period – LBI confirmed that "LBI will honor all Agreements with UPRS and UPRS will be paid its fee for all unclaimed funds claimed for LBI." *See* Gelb Dec. ¶13.

## IV. OBJECTION

18. On May 4, 2009, representatives of LBHI informed UPRS that LBI would not perform under the four contracts and would not pay UPRS its fee. Instead, LBHI and the Trustee apparently want the NYS OUF to pay the $5 to $6 million outstanding due LBI to another firm (presumably Alvarez & Marsal), and the other firm will collect the $500,000 to $600,000 fee to which UPRS is entitled.

19. It was UPRS which identified and filed the claim with the NYS OUF. The NYS OUF long ago recognized UPRS as LBI's authorized representative. Once a claim has been filed, it is NYS OUF policy not to accept a new claim from another firm.

20. Until UPRS filed its Motion on April 13, 2009, LBHI and the Trustee had no knowledge that the $5 million unclaimed funds were outstanding and were claimed by UPRS for LBI.

5

21. LBI is a non-debtor. LBHI and the SIPC Trustee should not be allowed to cherry-pick contracts of LBI, dismember the assets of LBI, and leave third-parties to deal with the remaining valueless enterprise. This is an improper and impermissible attempt to apply bankruptcy protection to a non-debtor entity. Equally disturbing, LBHI and the SIPC Trustee want another firm to collect the $500,000 to $600,000 fee that is due.

22. 28 U.S.C. § 157(b) provides a non-exclusive list of 15 "core" proceedings, none of which include breach of contract or actions involving non-debtors. *See, e.g., Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095, 1102 (2d Cir. 1993) (holding that a breach of contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, was non-core); *Beard v. Braunstein*, 914 F.2d 434, 444 (3d Cir. 1990).

23. Bankruptcy courts are courts of equity "empowered to invoke equitable principles to achieve fairness and justice in the reorganization process." *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994). The Trustee has an obligation to pay the fee due UPRS since it was UPRS that identified and claimed millions in unclaimed funds held by the NYS OUF on behalf of LBI.

## V. THE UPRS – LBI AGREEMENTS ARE NOT EXECUTORY CONTRACTS
### A. Contract Substantially Performed Is Not Executory

24. Pursuant to four LBI Agreements and authorizations (*see* Gelb. Dec., Exhibit A), UPRS identified and claimed the unclaimed funds. After the LBHI petition date, both LBI and UPRS substantially performed according to the Agreements. Accordingly, the UPRS-LBI Agreements are not executory contracts under §365 of the Bankruptcy Code.

6

A contract substantially performed is not executory. *See In re Pacific Exp. Inc.*, 780 F.2d 1482, 1487-88 (9th Cir. 1986) (contract substantially performed is not executory); *In re Norwood Chevrolet Co.*, 143 B.R. 804 (Bankr. D.R.I. 1992) (substantial performance by both parties precludes rejection of contract); *In re Kmart Corp.*, 290 B.R. 614, 617 (N.D. Ill. 2003) (a contract "that has been fully performed by either side is not executory"); *American Network Leasing Corp. v. First Data Merchant Servs. Corp.*, 1997 WL 534827, at *9 (N.D. Ill. Aug.21, 1997) (agreement "not executory" because it was "fully performed by one side"). *In re Sundial Asphalt Co.*, 147 B.R. 72, 80 (E.D.N.Y. 1992) (contract for sale of land ceases to be executory when court issues decree of specific performance); *In re Columbia Gas Sys.*, 146 B.R. 106 (D. Del. 1992) (court approved settlement which required only "perfunctory acts utilizing preapproved terms and conditions" is not executory contract); *Heartline Farms v. Daly*, 128 B.R. 246, 250 (D. Neb. 1990) ("mere formality" remaining for performance "does not represent the kind of significant legal obligation that would render a contract executory"); *In re Fitch*, 174 B.R. 96, 102 (S.D. Ill. 1994) (contract for sale of real estate with installment payments was non-executory because seller's only remaining obligation, to deliver good title, was not material).

25. UPRS fully performed in good faith all of its obligations under the terms of the Agreement. Substantial performance by both UPRS - LBI precludes rejection of the UPRS-LBI contracts. *See In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 239 (3d Cir. 1995) ("[U]nless both parties have unperformed obligations that would constitute a material breach if not performed, the contract is not executory under § 365.").

26. Courts have allowed payment for post-petition performance rendered on a contract. *See In re ICS Cybernetics, Inc.* 111 B.R. 32, 37 (Bankr. N.D.N.Y. 1989). Indeed, numerous other service companies are being paid for post-petition performance rendered, and about $100 million in attorneys' fees have already been paid or are being sought.

## B. Post-Petition Payment Obligation Are Not Executory Contracts

27. Courts have consistently held that contracts that only require payment are not executory. *See In re Spectrum Information Technologies, Inc.*, 190 B.R. 741, 748 (Bankr. E.D.N.Y. 1996) (when "the only performance that remains is the payment of money, the contract will not be found to be executory"); *In re Munple, Ltd.*, 868 F.2d 1129 (9th Cir. 1989) (real estate brokerage commission agreement not executory even though payment of fee was conditioned upon closing of sale); *In re Shada Truck Leasing, Inc.*, 31 B.R. 97 (Bankr. D. Neb. 1983) (contract is not executory when all that is left for debtor to do is pay); *In re U.S. Metalsource Corp.*, 163 B.R. 260, 269 (Bankr. W.D. Pa. 1993) (terminable-at-will employment contracts are not executory contracts because debtor's only legal obligation is to pay severance pay); *In re Wisconsin Barge Line*, 76 B.R. 695 (Bankr. E.D. Mo. 1987) (contracts under which debtors' only duty was to pay premiums were not "executory"); *In re Wang Laboratories, Inc.*, 154 B.R. 389 (Bankr. D. Mass. 1993) (agreement not executory where only remaining obligation was the payment of severance pay); *In re THC Fin. Corp.*, 686 F.2d 799, 804 (9th Cir. 1982) (agreement not executory because the only obligation is the payment of money).

28.     Since the Director of the NYS OUF has agreed to pay the approximately $5 to $6 million in unclaimed funds, the only LBI performance that remains is the payment of $500,000 to $600,000 fee to UPRS from the funds recovered. Since a contract in which one party's post-petition obligation is the payment of money is not executory, the UPRS-LBI contracts are therefore not susceptible to rejection.

## VI. THE VALUE OF UPRS'S POST-PETITION SERVICES IS $500,000 TO $600,000

29.     Subsequent to the LBHI petition date, both LBI and UPRS substantially performed according to the Agreements, and, as indicated, the Director of the NYS OUF has agreed to pay UPRS the $5 to $6 million in unclaimed funds. The value of services actually conferred by UPRS during post-petition period is $500,000 to $600,000.

30.     On May 4, 2009, LBHI's representative informed UPRS that LBI would not perform under the four contracts and would not pay UPRS its fee for claiming the $5 to $6 million in unclaimed funds.

31.     Until UPRS filed its Motion on April 13, 2009, LBHI, the Trustee and their representatives had no knowledge that the $5 million unclaimed funds were outstanding and were claimed by UPRS for LBI.

32.     Courts have held that consideration is furnished to the estate where the debtor-in-possession induces post-petition performance or where performance on a contract not rejected by the debtor-in-possession is rendered to the estate. *See In re ICS Cybernetics, Inc.* 111 B.R. 32, 37 (Bankr. N.D.N.Y. 1989).

33. The Bankruptcy Courts have held as such because of the principle that the Bankruptcy Code does not confer upon a debtor in bankruptcy greater rights and powers under a contract than it had outside of bankruptcy. *In re Penn Traffic Co.* (322 B.R. 63, 72 (Bankr. S.D.N.Y. 2003) ("It is well settled that the mere filing of a bankruptcy petition does not enhance a debtor's contract rights or diminish its obligations."); *In re Nemko, Inc.*, 143 B.R. 980, 987 (Bankr. E.D.N.Y. 1992) ("[A] contractual right is not affected by the filing of a Chapter 11 petition. The rights of a debtor to the property of the estate do not expand when the debtor files a petition in bankruptcy")

34. The value of services actually conferred by UPRS during the post-petition period is $500,000 to $600,000. When debtor-in-possession elects to receive benefits from the other party to a contract pending a decision to reject or assume the contract, the debtor-in-possession must pay for the reasonable value of those services. *See In re Travelot Co.*, 286 B.R. 462, 466 (Bankr. S.D. Ga. 2002) (quoting *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531, 104 S. Ct. 1188 (1984)). That value, "depending on the circumstances of a particular contract, may be what is specified in the contract." *Bildisco*, 465 U.S. at 531, 104 S. Ct. at 1199. *See also Goldin v. Putnam Lovell, Inc.*, 163 B.R. 899, 907-908 (Bankr. D. Mass. 1994) (non-debtor party to pre-petition contract was entitled to reasonable value of services actually conferred on debtor during post-petition, pre-assumption/rejection period).

35. In *In re StarNet, Inc.*, 355 F.3d 634 (7th Cir. 2004), the Seventh Circuit recently stated:

> [N]either § 365(a) nor anything else in bankruptcy law entitles debtors to more or different services, at lower prices, than their contracts provide. Section 365(a) gives debtors a right to walk away before the contract's end

> (with the creditor's entitlement converted to a claim for damages), not a right to obtain extra benefits without paying for them. In the main, and here, bankruptcy law follows non bankruptcy entitlements.

*Id.* at 637 (citing *Bildisco*, 465 U.S. 513, 104 S. Ct. 1188). *See also Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20, 120 S. Ct. 1951 (2000); *Butner v. United States*, 440 U.S. 48, 99 S. Ct. 914 (1979).

36. Likewise, the Tenth Circuit in *Country World Casinos, Inc. v. Tommyknocker Casino Corp.*, 181 F.3d 1146 (10th Cir. 1999), upheld "the principle that 'a party to a contract cannot claim its benefits where he is the first to violate its terms.'" *Id.* at 1150 (quoting *Western Plains Serv. Corp. v. Ponderosa Dev. Corp.*, 769 F.2d 654, 657 (10th Cir. 1985)); *Frank Felix Assocs. v. Austin Drugs*, 111 F.3d 284, 289 (2d Cir. 1997) (under New York law, a breach of a contract is "the extent to which the injured party will be deprived of the benefit which he reasonably expected"); *Hirschfeld v. I.C. Securities, Inc.*, 132 A.D.2d 332, 336 (N.Y. App. Div. 1st Dep't. 1987) ("When a breach of an executory contract occurs, the proper measure of damages is the loss of the entire profit as provided in the contract").

37. UPRS's claim for payment should be given "administrative expense" priority under 11 U.S.C. Sec. 503(b)(1)(A). A claim is entitled to administrative priority if the consideration supporting the claimant's right to payment was both supplied and beneficial to the debtor-in-possession in the operation of the business. *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986).

38. After UPRS is paid the 10% fee (approximately $500,000 sto $600,000) and the $500,000 outstanding balance due UPRS, LBI will recover approximately $4 to $5 million.

## VII. BREACH OF THE COVENANT OF GOOD FAITH

39. Subsequent to the LBHI petition date, both LBI and UPRS have substantially performed according to the Agreements.

40. UPRS performed its services in good faith and in reliance upon the executed Agreements that LBI would compensate UPRS in the amount of 10% of the recovered funds. UPRS fully performed in good faith all of its obligations under the terms of the Agreement. In performing all of its obligations, UPRS expected to be compensated for its services.

41. In *India.com, Inc. v. Dalal*, 2009 U.S. App. LEXIS 8962 (2d Cir., April 28, 2009), the Second Circuit stressed:

> As a general matter, a covenant of good faith and fair dealing is implicit in all contracts. The covenant "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." [*Id.*; internal quotation marks omitted.]

42. LBHI and the Trustee have breached the covenant of good faith and fair dealing and this warrants recovery of UPRS's fee. *See In Nuvest, S.A. v. Gulf & Western Indus., Inc.*, 649 F.2d 943, 949 (2d Cir. 1981) ("[A] [defendant's] bad faith warranted recovery on a finder's fee contract"); *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 52 (2d Cir. 1996).

12

08-13555-mg   Doc 3734   Filed 06/02/09   Entered 06/02/09 12:00:12   Main Document
Pg 13 of 18

43. The bad faith is demonstrated by the fact that the only objective that would be accomplished by rejection is to pay the $500,000 to $600,000 due UPRS to another firm. The Bankruptcy Court should not approve the rejection where the request is "manifestly unreasonable," there is "bad faith," and the debtor has committed a "gross abuse of business discretion". *See Crystalin, LLC v. Selma Props., Inc.*, 293 B.R. 455, 464 (Bankr. 8th Cir. 2003).

## VIII. ALLOWANCE AND PAYMENT OF SERVICES PROVIDED POST-PETITION

44. Pursuant to the Agreements and Authorizations, UPRS is currently in the process of recovering approximately $5 to $6 million in unclaimed funds held by the NYS OUF on behalf of LBI. UPRS should be allowed the payment of post-petition administrative expense claim pursuant to Section 503(b)(1)(A) of the Bankruptcy Code for UPRS' 10% fee for the recovery of the unclaimed funds. UPRS provided services under the Agreements that are "actual, necessary costs and expenses of preserving [LBI's] . . . estate." 11 U.S.C. § 503(b)(1)(A).

45. The Court should allow UPRS to recoup its 10% fee, as well as the $500,000 outstanding due UPRS, from the unclaimed funds recovered. Although the Bankruptcy Code does not mention or define the term "recoupment," recoupment is an equitable doctrine that has long been applied in the bankruptcy context. *In re Adelphia Communications Corp.*, 2006 WL 1559437, *4 (S.D.N.Y. June 7, 2006); *Mercy Hospital of Watertown v. New York State Dept. of Social Services*, 171 B.R. 490, 494 (N.D.N.Y. 1999); *In re Holford*, 896 F.2d 176, 179 (5th Cir. 1990); *In re Monongahela Rye Liquors, Inc.* 141 F.2d 864, 869 (3d Cir. 1994); *In re Centergas, Inc.*, 172 B.R. 844, 848 (Bankr.

N.D. Tex. 1994). For recoupment to apply, the claims must arise out of "the same transaction or set of transactions." *Malinowski v. New York State Dept. of Labor (In re Malinowski)*, 156 F.3d 131, 133 (2d Cir. 1998). The doctrine of recoupment is flexible and has been applied in many situations. *See, e.g., In re Heafitz*, 85 B.R. 274, 279-80 (Bankr. S.D.N.Y. 1988); *In re 105 East Second Street Associates*, 207 B.R. 64, 69 (Bankr. S.D.N.Y. 1997); *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427, 432-33 (Bankr. S.D.N.Y. 1982), aff'd, 34 B.R. 385 (S.D.N.Y. 1983); *In re Clowards, Inc.*, 42 B.R. 627 (Bankr. D. Idaho 1984).

46. This is precisely the type of situation to which the equitable doctrine of recoupment was meant to apply. There is one set of transactions here – recovery of unclaimed funds – and UPRS should be allowed to recoup its fee and the balance outstanding from the proceeds of the unclaimed funds recovery.

### IX. NOTICE

47. UPRS is serving this Objection by ECF upon all parties that have filed papers in the Debtors' cases by ECF. UPRS is also causing this Objection to be served upon LHBI, LBI, bankruptcy counsel for LBHI, counsel for the Trustee, counsel for Barclays, counsel for the Official Committee of Unsecured Creditors, counsel to the Securities Investors Protection Corporation and the Office of the United States Trustee.

### X. RESERVATION OF RIGHTS

48. UPRS expressly reserves all rights and actions under the LBI Agreements, LBI authorizations and applicable law, including (i) the right to seek payment on an administrative expense priority basis for services rendered post-petition and (ii) the right

14

to file a proof of claim for amounts owed to UPRS for services rendered prior to the commencement of LBHI's petition and LBI's SIPA proceeding.

## XI. CONCLUSION

For all of the foregoing reasons, Unclaimed Property Recovery Service, Inc. respectfully objects to the proposed rejection of the LBI-UPRS Agreements.

Dated:  New York, New York
   June 1, 2009

**PAUL BATISTA, P.C.**
*Attorney for Unclaimed Property Recovery Service, Inc.*

   /s/ Paul A. Batista
Paul Batista (PB8717)
26 Broadway – Suite 1900
New York, New York 10004
Telephone: (212) 980-0070
Facsimile: (212) 344-7677
E-mail: Batista007@aol.com

Paul Batista, Esq.
PAUL BATISTA, P.C.
26 Broadway – Suite 1900
New York, New York 10004
Telephone: (212) 980-0070
Facsimile: (212) 344-7677
E-mail: Batista007@aol.com

*Attorney for Unclaimed Property Recovery Service, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------x

| | |
|---|---|
| In re | **Chapter 11** |
| **LEHMAN BROTHERS HOLDINGS, INC.,** *et al.,* | **Case No. 08-13555 (JMP)** |
| Debtors. | **Jointly Administered** |

------------------------------------------------------x

| | |
|---|---|
| **SECURITIES INVESTOR PROTECTION CORPORATION,** | |
| Plaintiff-Appellant, | **Case No. 08-01420 (JMP) SIPA** |
| v. | **SIPA Liquidation Proceeding.** |
| **LEHMAN BROTHERS, INC.,** | |
| Defendant. | |

------------------------------------------------------x

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that I caused a true and correct copy of the Objection, the Reply Declaration and the Reply of Unclaimed Property Recovery Service, Inc. to be served by email and/or by first class Mail, postage prepaid, as follows:

    See Attached Service List

Dated: New York, New York
      June 1, 2009

                          **PAUL BATISTA, P.C.**
                          *Attorney for Unclaimed Property Recovery Service, Inc.*

                                  /s/ Paul Batista
                          Paul A. Batista (PB 8717)
                          26 Broadway – Suite 1900
                          New York, New York 10004
                          Telephone: (212) 980-0070
                          Facsimile: (212) 344-7677
                          E-mail: Batista007@aol.com

**PARTIES SERVICE LIST – First Class Mail**

| | |
|---|---|
| Attorneys for Debtors<br>Weil Gotshal & Manges LLP<br>Harvey R. Miller<br>Jacqueline Marcus<br>Shai Waisman<br>Richard Krasnow<br>767 Fifth Ave.<br>New York, NY 10153<br>Email: harvey.miller@weil.com<br>Email: jacqueline.marcus@weil.com<br>Email: shai.waisman@weil.com | Honorable James M. Peck ("Chambers")<br>Courtroom 601<br>One Bowling Green<br>New York, New York 10004 |
| U.S. Trustee<br>U.S. Trustee<br>Andy Velez-Rivera<br>Paul Schwartzberg,<br>Brian Masumoto<br>Linda Riffkin<br>Tracy Hope Davis<br>33 Whitehall Street, 21st Floor<br>New York, NY 10004 | Milbank, Tweed, Hadley &<br>McCloy LLP,<br>Dennis F. Dunne<br>Dennis O'Donnell<br>Evan Fleck<br>1 Chase Manhattan Plaza<br>New York, New York 10005 |
| Attorneys for Unsecured Creditors Committee<br>Quinn Emanuel Urquhart Oliver & Hedges<br>James Tecce<br>Susheel Kirpalani<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>212-849-7000<br>Fax : 212 849-7100<br>Email: jamestecce@quinnemanuel.com<br>Email: susheelkirpalani@quinnemanuel.com | Attorneys for DIP Lenders<br>Cleary Gotliebb LLP<br>Lindsee P. Granfield<br>**Lisa M. Schweitzer**<br>One Liberty Plaza<br>New York, NY 10006<br>(212) 225-2000<br>(212) 225-3999 (fax)<br>lschweitzer@cgsh.com<br>maofiling@cgsh.com |
| Attorneys for the SIPC Trustee<br>Hughes Hubbard & Reed LLP<br>Jeffrey S. Margolin<br>One Battery Park Plaza<br>New York, NY 10004<br>(212) 837-6375<br>Fax : (212) 422-4726<br>Email: margolin@hugheshubbard.com | |