**Presentment Date and Time: June 10, 2009 at 12:00 noon (Prevailing Eastern Time)**
**Objection Date and Time: June 9, 2009 at 11:30 a.m. (Prevailing Eastern Time)**

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 696-6000
Facsimile: (212) 697-1559
Steven J. Reisman
L.P. Harrison 3rd
James V. Drew

*Conflicts Counsel for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                                          :     Chapter 11 Case No.
                                                               :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                   :     08-13555 (JMP)
                                                               :
                                    Debtors.                   :     (Jointly Administered)
---------------------------------------------------------------x

**NOTICE OF PRESENTMENT OF DEBTORS' MOTION FOR AN
ORDER PURSUANT TO SECTIONS 105(a) AND 365 OF THE
BANKRUPTCY CODE AUTHORIZING ASSUMPTION OF
CERTAIN SWAP AGREEMENTS AND SUBSEQUENT
ASSIGNMENT PURSUANT TO DERIVATIVE PROCEDURES ORDERS**

   PLEASE TAKE NOTICE that upon the annexed motion, dated as of June 2, 2009 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors"), pursuant to sections 105(a) and 365 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), and Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for authorization to (i) assume certain credit default swap agreements by and between Lehman Brothers Special Financing Inc. ("LBSF") and trusts (each a "CDS Trust") which are affiliates of Syncora Guarantee Inc. ("Syncora Guarantee"), following the assignment of insurance policies insuring such agreements by Syncora Guarantee to its newly-formed subsidiary and (ii) subsequently assign such agreements and certain related agreements and insurance policies to third parties pursuant to the terms of this Court's Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts, dated December 16, 2008 [Docket No 2257], this Court's Order Approving Consensual Assumption and Assignment of Prepetition Derivative Contracts, dated January 28, 2009 [Docket No. 2667], or such other order of the Bankruptcy Court which may be applicable (collectively, the "Derivatives Procedures Orders"), the Debtors will present the proposed order attached to the Motion as "Exhibit A" to the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

5880500

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), for signature on **June 10, 2009 at 12:00 noon (Prevailing Eastern Time)** (the "Presentment Date").

    PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, New York 10178, Attn: Steven J. Reisman, Esq., L.P. Harrison 3rd, Esq. and James V. Drew, Esq., conflicts counsel for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; (v) Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois 60603, Attn: Mark I. Greenberg, Esq., attorneys for Syncora Guarantee and its affiliates, including the CDS Trusts; and (vi) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **June 9, 2009 at 11:30 p.m. (prevailing Eastern Time)**.

[*Remainder of page intentionally left blank.*]

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

Dated: June 2, 2009
       New York, New York

**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**

By:   */s/ L.P. Harrison 3rd*
      Steven J. Reisman
      L.P. Harrison 3rd
      James V. Drew
101 Park Avenue
New York, New York 10178
Telephone: (212) 696-6000
Facsimile: (212) 697-1559

*Conflicts Counsel for Debtors
and Debtors in Possession*

5880500

**Presentment Date and Time: June 10, 2009 at 12:00 noon (Prevailing Eastern Time)**
**Objection Date and Time: June 9, 2009 at 11:30 a.m. (Prevailing Eastern Time)**

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 696-6000
Facsimile: (212) 697-1559
Steven J. Reisman
L.P. Harrison 3rd
James V. Drew

*Conflicts Counsel for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                              :    Chapter 11 Case No.
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,       :    **08-13555 (JMP)**
                                                   :
                        Debtors.                   :    (Jointly Administered)
---------------------------------------------------------------x

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS**
**105(a) AND 365 OF THE BANKRUPTCY CODE AUTHORIZING**
**ASSUMPTION OF CERTAIN SWAP AGREEMENTS AND SUBSEQUENT**
**ASSIGNMENT PURSUANT TO DERIVATIVE PROCEDURES ORDERS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), respectfully represent:

**Preliminary Statement**

        1.     By this Motion, the Debtors seek authority for Lehman Brothers Special Financing Inc. ("LBSF") to assume certain credit default swap agreements and authorize subsequent assignment of those credit default swap agreements and certain related agreements and insurance policies pursuant to this Court's existing procedural orders, as applicable, all in connection with a

5880500

restructuring of LBSF's counterparties and their affiliates (the "Syncora Group"). This Court's existing procedural orders would authorize the Debtors to consummate the assumption and assignment without the necessity of this Motion, but for the fact that (i) the Debtors, for the reasons explained below, have a business need to first assume and then assign the agreements at a later date in a "two-step" process, and (ii) certain of the agreements to be assigned are post-petition credit default swap agreements entered into by LBSF as "back-up" credit support for LBSF (at no cost to LBSF) in connection with the Syncora Group's restructuring. Arguably this Court's existing procedural orders do not authorize a "two-step" process of assumption and subsequent assignment or the assignment of postpetition agreements, and thus the Debtors in an abundance of caution seek the instant relief.

**Background**

2.　Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.　On September 17, 2008, the Office of the United States Trustee for the Southern District of New York (the "Office of the United States Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

4. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

5. On January 19, 2009, the Office of the United States Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner"). By order dated January 20, 2009 [Docket No. 2583], the Court approved the Office of the United States Trustee's appointment of the Examiner.

**Jurisdiction**

6. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Lehman's Business**

7. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

8. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Relief Requested**

9. By this Motion, pursuant to sections 105(a) and 365 of the Bankruptcy Code and Bankruptcy Rules 6006 and 9014, the Debtors seek authorization to (i) assume certain

3

prepetition credit default swap agreements ("CDS") by and between certain special purpose trusts (each a "CDS Trust") which are affiliates of Syncora Guarantee Inc. ("Syncora Guarantee") and LBSF, following the assignment of the insurance policies insuring such agreements by Syncora Guarantee to Syncora Capital Assurance Inc., a newly formed New York financial guaranty insurance company which is a wholly-owned subsidiary of Syncora Guarantee ("DropDownCo") and (ii) subsequently assign at a later date those CDS and related insurance policies to third parties pursuant to the terms of this Court's Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts, dated December 16, 2008 [Docket No 2257], this Court's Order Approving Consensual Assumption and Assignment of Prepetition Derivative Contracts, dated January 28, 2009 [Docket No. 2667], or such other order of this Court which may be applicable (collectively, the "Derivatives Procedures Orders").

### The Agreements

10. LBSF is currently party to certain prepetition CDS with certain CDS Trusts, which are special purpose trusts organized and controlled by Syncora Guarantee, a New York insurance company. Syncora Guarantee is a wholly-owned subsidiary of Syncora Holdings Ltd. (the "Syncora Holdings"), a company organized under the laws of Bermuda. LBSF was the purchaser of default protection under each of these CDS. Each CDS Trust entered into an insurance and indemnity agreement with Syncora Guarantee, pursuant to which Syncora Guarantee issued a financial guaranty insurance policy (each an "FG Policy") to LBSF insuring the CDS Trust's payments under its CDS with LBSF.

11. Syncora Guarantee has recently reported a capital deficit and may, therefore, become subject to proceedings by the New York Insurance Department (the "NYID"). In order to

5880500

avoid the necessity for rehabilitation proceedings, a restructuring plan for Syncora Guarantee has been developed which is designed, among other things, to (i) remediate Syncora Guarantee's policyholders' surplus deficit and restore its minimum surplus to policyholders as required by the NYID, (ii) create DropDownCo, (iii) permit Syncora Guarantee to capitalize DropDownCo with an agreed level of capital considered sufficient to meet its future obligations, and (iv) transfer to DropDownCo Syncora Guaranty's FG Policies and reinsurance cessions covering public finance, selected global infrastructure, power and utility and other bonds and CDS.

12. These restructuring transactions are to be consummated pursuant to (i) a Master Transaction Agreement, dated as of April 26, 2009 (the "<u>2009 MTA</u>"), by and among Syncora Holdings, Syncora Guarantee, DropDownCo, the CDS Trusts, and certain financial institutions which are counterparties to CDS with the CDS Trusts, including LBSF (collectively the "<u>Bank Counterparties</u>") and (ii) a related tender offer by BCP Voyager Master Funds SPC, Ltd, acting on behalf of and for the account of Distressed Opportunities Master Segregated Portfolio for the acquisition of certain residential mortgage-backed securities insured directly or indirectly pursuant to FG Policies (including the rights with respect to such FG Policies). The 2009 MTA provides that the Bank Counterparties, including LBSF, will settle certain CDS and the related FG Policies in exchange for the transfer of certain consideration (the "<u>Settlement Proceeds</u>") to the Bank Counterparties, including LBSF. The Settlement Proceeds consist of (i) approximately $1.2 billion in cash consideration, (ii) $625 million in surplus notes issued by Syncora Guarantee and (iii) approximately 40% of the outstanding common shares of Syncora Holdings.

13. Closing of the 2009 MTA is predicated on the satisfaction of certain closing conditions, which include the receipt of NYID approval and the granting of the instant relief sought pursuant to this Motion.

14. In order to receive LBSF's portion of the Settlement Proceeds (consisting of cash, a percentage share of the surplus notes issued by Syncora Guarantee and common shares of Syncora Holdings in exchange for the novation of certain of the CDS to Syncora CDS Corp.), and to preserve the value of LBSF's other CDS with the CDS Trusts for the benefit of the Debtors' estates, the Debtors desire that LBSF participate in and facilitate Syncora Guarantee's restructuring transactions contemplated by the 2009 MTA.

15. Specifically, with respect to LBSF, these transactions include the following elements:

(i) settlement of certain of the CDS between LBSF and the CDS Trusts and effective commutation of the related FG Policies issued by Syncora Guarantee, resulting in LBSF's receipt of its share of the Settlement Proceeds, including a cash payment from Syncora Guarantee to LBSF;[1]

(ii) consent to the assignment of the FG Policies insuring certain other of the CDS (the "Remaining Agreements") from Syncora Guarantee to DropDownCo;

(iii) conforming amendments to the Remaining Agreements reflecting the assignment of the related FG Policies;

(iv) the assumption of the Remaining Agreements by LBSF effective upon and conditioned upon the closing of the 2009 MTA; and

(v) the creation of conditional CDS with each of the CDS Trusts (each a "Back-Up CDS"), each Back-Up CDS insured by an FG Policy issued by Syncora Guarantee (each a "Back-Up FG Policy" and together with the related Back-Up CDS, a "Back-Up Transaction"), which Back-Up Transactions provide certain recourse to Syncora Guarantee for payment in the event LBSF elects to terminate a Remaining

---

[1] This element of the contemplated transactions, and the remainder of the 2009 MTA as it concerns LBSF for which the Debtors do not seek relief pursuant to this Motion, is authorized pursuant to the termination and settlement provisions set forth in this Court's Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts, dated December 16, 2008 [Docket No 2257]. The amount of the Settlement Proceeds being distributed to LBSF is confidential, but has been disclosed to counsel for the Creditors' Committee.

5880500

Agreement based upon DropDownCo's default on its obligations to LBSF under such Remaining Agreement.[2]

16. In the Debtors' business judgment, it is effectively impracticable for LBSF to assign the Remaining Agreements and the Back-Up CDS at the time of LBSF's assumption of the Remaining Agreements, for reasons including that the Remaining Agreements cannot be effectively marketed for sale to third parties until the 2009 MTA is completed, and the price that third parties would be willing to pay for a Remaining Agreement and related Back-Up CDS would likely not reflect, in the Debtors' business judgment, the true value of such Remaining Agreement and related Back-Up CDS. As noted above, if the Remaining Agreements were contemplated to be assumed and assigned contemporaneously, this Court's Derivatives Procedures Orders would provide procedures by which the assumption and assignment of the Remaining Agreements could be effectuated, without the necessity of the relief sought in this Motion. However, because the Derivatives Procedures Orders do not authorize (i) a "two-step" process of assumption and subsequent assignment or (ii) the assignment of postpetition agreements such as the Back-Up CDS,[3] the Debtors in an abundance of caution seek the instant relief.

**Assuming the Remaining Agreements
is an Appropriate Exercise of the Debtors' Business Judgment**

17. Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." Courts apply the "business judgment" standard in determining

---

[2] LBSF will only be required to make the payments required by the Remaining Agreements. No additional payment will be required by LBSF due to entering into the Back-Up CDS or the issuance of the related Back-Up FG Policies.

[3] The Back-Up CDS and related Back-Up FG Policies are linked to the Remaining Agreements and related FG Policies and must be assigned, if at all, along with the Remaining Agreements and FG Policies. The Back-Up CDS provide certain protection in the event of the termination of the Remaining Agreements following transfer of the FG Policies to DropDown Co., with Syncora Guaranty insuring the payment of such alternative protection.

7

whether an executory contract or unexpired lease should be assumed. *Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures)*, 4 F.3d 1095, 1099 (2d Cir. 1993); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially"); *In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006) ("The decision to assume or reject an executory contract is within the sound business judgment of the debtor-in-possession. . . ."). A court should approve the assumption of a contract under section 365(a) of the Bankruptcy Code if it finds that a debtor has exercised its sound business judgment in determining that assumption of an agreement is in the best interests of its estate. *See, e.g.*, *In re Child World, Inc.*, 142 B.R. 87, 89-90 (Bankr. S.D.N.Y. 1992).

18.     The Debtors' have determined in their sound business judgment that assumption of the Remaining Agreements by LBSF is in the best interests of their estates and creditors. By the relief sought herein, the Debtors seek to preserve the value of the Remaining Agreements through entering into transactions to facilitate the substitution of a more stable and secure insurer as obligor under the FG Policies insuring the Remaining Agreements and retain the flexibility to assign the Remaining Agreements and related agreements and policies at a later date to maximize value.

19.     The sound business reasons in favor of assuming the Remaining Agreements are bolstered by the minimal costs associated with the relief sought in the Motion. LBSF and the CDS Trusts that are the counterparties with respect to the Remaining Agreements have agreed that existing monetary defaults under the Remaining Agreements consist only of unpaid premiums,

which LBSF has agreed to pay upon closing of the 2009 MTA and approval of this Motion.  This cure amount will total approximately $2.44 million, assuming that the closing of the 2009 MTA occurs on or about June 15, 2009, the currently contemplated closing deadline.  Going forward either LBSF or its assignees will be contractually bound to pay timely premium payments, on a quarterly basis.  The premium payments required under the Remaining Agreements total approximately $800,000 per quarter and $25.90 million in the aggregate during the period from the expected closing of the 2009 MTA through the expiration of the Remaining Agreements.

20.    Given (i) the relatively small amount of cure costs associated with assumption and future costs under the Remaining Agreements, compared to the substantial closing payment to LBSF in cash as part of the Settlement Proceeds and, in the Debtors' business judgment, the substantial value of the Remaining Agreements, (ii) the benefits of Syncora Guarantee's restructuring in terms of current payment and reduction of the counterparty risk to LBSF under the Remaining Agreements, and (iii) the fact that Syncora Guarantee insists upon assumption of the Remaining Agreements as a prerequisite to payment of LBSF's portion of the Settlement Proceeds in settlement of certain CDS and inclusion of the Remaining Agreements in Syncora Guarantee's restructuring, the Debtors submit that assuming the Remaining Agreements will provide substantial present value and preserve substantial value under the Remaining Agreements and that assumption plainly represents a reasonable exercise of the Debtors' business judgment, and, therefore, should be approved.

21.    The Debtors have been advised that the Creditors' Committee supports the 2009 MTA and the relief requested pursuant to this Motion.

**Notice**

22. No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the Office of the United States Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the attorneys for Syncora Guarantee and its affiliates, including the CDS Trusts; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New York; and (vii) all parties who have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

23. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: June 2, 2009
    New York, New York

        **CURTIS, MALLET-PREVOST,**
        **COLT & MOSLE LLP**

        By:   */s/ L.P. Harrison 3rd*
             Steven J. Reisman
             L.P. Harrison 3rd
             James V. Drew
        101 Park Avenue
        New York, New York 10178
        Telephone: (212) 696-6000
        Facsimile: (212) 697-1559

        *Conflicts Counsel for Debtors*
        *and Debtors in Possession*

# **Exhibit "A"**

5880500

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re                                                              :        Chapter 11 Case No.
                                                                   :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :        08-13555 (JMP)
                                                                   :
                        Debtors.                           :        (Jointly Administered)
----------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105(a) AND 365 OF THE
BANKRUPTCY CODE AUTHORIZING ASSUMPTION OF
CERTAIN SWAP AGREEMENTS AND SUBSEQUENT
ASSIGNMENT PURSUANT TO DERIVATIVE PROCEDURES ORDERS**

Upon the motion, dated June 2, 2009 (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105(a) and 365 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), and Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for authorization to (i) assume certain credit default swap agreements (the "Remaining Agreements") by and between Lehman Brothers Special Financing Inc. ("LBSF") and CDS Trusts and (ii) subsequently assign at a later date the Remaining Agreements and related swap agreements and insurance policies to third parties pursuant to the terms of this Court's Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts, dated December 16, 2008 [Docket No 2257], this Court's Order Approving Consensual Assumption and Assignment of Prepetition Derivative Contracts, dated January 28, 2009 [Docket No. 2667], or such other order of this Court which may be applicable (the "Derivatives Procedures Orders"), all as more fully described in the Motion; and the Court

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

5880500

having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the order entered February 13, 2009 governing case management and administrative procedures [Docket No. 2837]; and a reasonable opportunity to object or be heard regarding the Motion having been afforded to all such parties; and it appearing that no other or further notice need be provided; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby:

ORDERED that the Motion is granted; and it is further

ORDERED that LBSF is authorized, but not directed, pursuant to section 365(a) of the Bankruptcy Code, to assume the Remaining Agreements, subject only to closing of the 2009 MTA, and thereafter to continue to perform under and comply with the terms of the Remaining Agreements; and it is further

ORDERED that LBSF is authorized, but not directed, upon closing of the 2009 MTA and assumption of the Remaining Agreements, to pay to Syncora Guarantee the amount of any unpaid premiums under the Remaining Agreements (expected to be approximately $2.44 million if the closing occurs on or about June 15, 2009), which payment shall be deemed to satisfy any obligations to cure existing defaults under the Remaining Agreements in accordance with section 365(b) of the Bankruptcy Code; and it is further

ORDERED that as of the date the Remaining Agreements are assumed and the payment in the foregoing paragraph is made, any other existing defaults under any of the Remaining Agreements, any guarantee of any of the Remaining Agreements or under any of the FG Policies, including, without limitation, as a result of the commencement and/or continuation of the Debtors' bankruptcy cases or the insolvency or financial condition of LBSF or any of the other Debtors, shall be deemed waived by Syncora Guarantee and its affiliates for all purposes, including, without limitation, for purposes of assumption and/or assignment of the Remaining Agreements, the FG Policies, the Back-Up CDS and the Back-Up FG Policies; and it is further

ORDERED that the rejection, if any, pursuant to section 365(a) of the Bankruptcy Code of any guarantee of any of the Remaining Agreements, the unenforceability of such guarantee obligations against the Debtors, or the failure of LBHI to enter into a guarantee of any of the Back-Up CDS, shall not be deemed a default under the Remaining Agreements or the Back-Up CDS; and it is further

ORDERED that any subsequent assignment of the Remaining Agreements, the FG Policies, the Back-Up CDS and the Back-Up FG Policies shall be made in accordance with the Derivatives Procedures Orders; and it is further

ORDERED that except as specified in the Third, Fourth and Fifth Ordered paragraphs above, all parties reserve the right to object to assignment of the Remaining Agreements, the FG Policies, the Back-Up CDS and the Back-Up FG Policies on any basis permitted under the Derivatives Procedures Orders, including subsequent defaults (other than defaults related to commencement and/or continuation of the Debtors' bankruptcy cases or the insolvency or financial condition of LBSF or any of the other Debtors or rejection or unenforceability of guarantee obligations as described above), and any failure to provide

5880500

adequate assurance of future performance, which objections shall be resolved pursuant to the

Derivatives Procedures Orders; and it is further

        ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

        ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.

Dated: June \_\_, 2009
      New York, New York

                                       _____
                                       UNITED STATES BANKRUPTCY JUDGE