**BERKMAN, HENOCH, PETERSON & PEDDY, P.C.**
Attorneys for Laurel Cove Development, LLC
100 Garden City Plaza
Garden City, New York 11530
(516) 222-6200
Ronald M. Terenzi (RMT 6416)
Bruce D. Mael (BDM 8038)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

LEHMAN BROTHERS HOLDINGS, INC., et al.,

        Debtors
------------------------------------------------------------X

Return Date: 6/24/09 at 10:00 a.m.
Objection Deadline: 6/19/09 at 5:00 p.m.

Chapter 11

Case No. 08-13555 (JMP)
(Jointly Administered)

## NOTICE OF HEARING ON MOTION FOR AN ORDER: (i) DIRECTING DEBTOR TO ASSUME OR REJECT AN EXECUTORY CONTRACT; AND (ii) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE,** that upon the annexed Motion dated June  , 2009 ("Motion") of Laurel Cove Development, LLC ("LCD"), by its counsel Berkman, Henoch, Peterson & Peddy, LCD will move before the Honorable James M. Peck, United States Bankruptcy Judge, in his courtroom at the United States Bankruptcy Court, One Bowling Green, New York, New York 10004, on the 24th day of June, 2009, or as soon thereafter as counsel may be heard, for an order: (i) pursuant to 11 U.S.C. §§105(d)(2) and 365(d)(2), directing Lehman Brothers Holdings, Inc. (the "Debtor") to either assume or reject forthwith a certain executory contract between the Debtor and LCD, as more fully described in the Motion; and (ii) granting such other and further relief as is just and proper.

**PLEASE TAKE FURTHER NOTICE**, that responses, if any, to the relief requested herein must (a) be made in writing and state with particularity the grounds for the objection; (b) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of the United States Bankruptcy Court for the Southern District of New York ("Local Rules"); (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended); (i) electronically by registered users of the Bankruptcy Court's case filing system, or (ii) on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format) by all other parties in interest; (d) be submitted in hard copy form to the chambers of the Honorable James M. Peck, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004; and (e) be served upon (i) the undersigned counsel, (ii) Counsel to the Debtors, Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Lori Fife, Shai Y. Waisman, Richard P. Krasnow, and Jacqueline Marcus, Esqs.; (iii) Counsel to the Official Committee of Unsecured Creditors, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.; and (iv) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andrew Velez-Rivera, Esq., so as to be received no later than 5:00 p.m. on June 19, 2009 (the "Response Deadline").

**PLEASE TAKE FURTHER NOTICE**, that only those responses made in writing and timely filed and received by the Response Deadline will be considered by the Bankruptcy Court at the hearing and that if no responses to the Application are timely filed and served in accordance with

the procedures set forth herein, the Bankruptcy Court may enter an order granting the Application without further notice.

Dated: Garden City, New York
       June 3, 2009

                                      **BERKMAN, HENOCH, PETERSON & PEDDY, P.C.**
                                      Attorneys for Laurel Cove Development, LLC

By:    s/Ronald M. Terenzi
        Ronald M. Terenzi (RMT 6416)
        Bruce D. Mael (BDM 8038)
        100 Garden City Plaza
        Garden City, New York 11530
        (516) 222-6200

**BERKMAN, HENOCH, PETERSON & PEDDY, P.C.**
Attorneys for Laurel Cove Development, LLC
100 Garden City Plaza
Garden City, New York 11530
(516) 222-6200
Ronald M. Terenzi (RMT 6416)
Bruce D. Mael (BDM 8038)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                                    Chapter 11

LEHMAN BROTHERS HOLDINGS, INC., et al.,      Case No. 08-13555 (JMP)
                                                                          (Jointly Administered)
                    Debtors
------------------------------------------------------------X

## MOTION OF LAUREL COVE DEVELOPMENT, LLC FOR AN ORDER: (i) DIRECTING DEBTOR TO ASSUME OR REJECT AN EXECUTORY CONTRACT; AND (ii) GRANTING RELATED RELIEF

TO:  THE HONORABLE JAMES M. PECK
     UNITED STATES BANKRUPTCY JUDGE:

Laurel Cove Development, LLC ("LCD"), by its attorneys Berkman, Henoch, Peterson & Peddy, P.C., hereby moves this Court for an Order: (i) pursuant to 11 U.S.C. §§105(d)(2) and 365(d)(2), directing Lehman Brothers Holdings, Inc. (the "Debtor") to either assume or reject forthwith a certain executory contract between the Debtor and LCD, as more fully described below; and (ii) granting such other and further relief as may be just and proper. In furtherance thereof, LCD respectfully sets forth and alleges as follows:

## BACKGROUND

1. On or about May 15, 2007, LCD and the Debtor entered into a certain Construction Loan Agreement ("Loan Agreement") whereby the Debtor agreed to provide LCD with funding in an amount up to, but not to exceed, $121,500,000.00 for the construction of a project consisting of single family residential subdivision consisting of 820 residential units, an 18-hole golf course and associated clubhouse, a swimming pool/spa facility, a tennis/coffee shop, and a sales center in College Grove, Williamson County, Tennessee (the "Project"). A copy of the Loan Agreement is annexed hereto as Exhibit "A".

2. The Loan Agreement provides, among other things, that the Debtor shall provide the funding by way of periodic advances. An initial advance of $34,280,308.09 was to be made upon the closing of the Loan Agreement, with subsequent advances to be made upon written request by LCD, which LCD could make not more than once per month and which had to be in a minimum amount of $100,000.00. The funds were to be used only for Project costs as set forth in the Project Budget, annexed as Exhibit "G" to the Loan Agreement.

3. In addition, the Loan Agreement provides for the granting to the Debtor of a security interest in the Project and its assets as set forth therein. *Loan Agreement,* Article II.

4. The Debtor made the initial advance upon the closing of the Loan Agreement and, subsequent thereto, made an additional 15 advances through July 2008.

5. On September 15, 2008 (the "Filing Date"), the Debtor and LB 745 LLC filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. By order dated September 17, 2008, this Court directed the joint administration of the cases. Upon information and belief, the Debtor is operating its business and managing its assets as a debtor-in-possession pursuant to 11 U.S.C.

§§1107 and 1108.

6. On September 17, 2008, the United States Trustee for the Southern District of New York appointed an official committee of unsecured creditors pursuant to 11 U.S.C. §1102.

7. The principal balance due under the Loan Agreement as of the Filing Date was approximately $86,543,730.00. At that time LCD was in full compliance with all of its obligations under the Loan Agreement.

8. In both September and October 2008, LCD submitted requests for advances in accordance with the terms of the Loan Agreement. Debtor, however, failed to provide funding for those requests, in violation of the Loan Agreement. In fact, the Debtor has failed to fund any advances to LCD since the Filing Date, even though the Debtor was still to provide approximately $34 million in advances at that time. Phase 1A of the project, so that Final Plot approval could be obtained by November 2009, was to be completed and was on schedule to do so. However with the funds to complete the project having ben withheld by Debtor in violation of the Loan Agreement, work on the project has ceased and the condition of the project is rapidly deteriorating.

9. As a direct result of the Debtor's failure to advance funds in accordance with the Loan Agreement, work on the Project has been brought to a complete halt due to LCD's inability to pay its contractors, vendors and related professionals, whom are currently owed approximately $12 million and some of whom have had liens placed on the Project. Furthermore, the cessation of work on the Project has resulted in the loss and/or withdrawal of commitments to purchase lots, as well as deposits for golf club memberships, at a cost to LCD of tens of millions of dollars which may not ever be recovered, unless work on the Project can be quickly re-commenced which, in turn, requires additional financing.

3

10. In addition LCD has not been able to keep current on real estate taxes, is incurring municipal violations based on its failure to be able to maintain the project, and the work previously done is rapidly deteriorating based on the inability to fund completion and/or maintenance of the partially completed construction.

11. In order to mitigate its damages, LCD has been searching for and, in fact, has found a potential alternative lender to provide LCD with the necessary funds to complete the Project. The new lender has advised LCD, however, that it requires the Debtor to agree to subordinate its lien to that of the new lender as a condition to making the loan. LCD has advised the Debtor of same and has made proposals in that regard. Neither the Debtor nor its representatives have responded.

## ARGUMENT

12. Section 365(d)(2) of the Bankruptcy Code provides as follows:

> In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified time whether to assume or reject such contract or lease.

13. Furthermore, pursuant to Section 105(d)(2), courts have authority to enter an order compelling a debtor to assume or reject executory contracts by a date certain.

14. While the general rule is that a debtor is afforded a reasonable time within which to decide whether to assume or reject an executory contract, what constitutes reasonable time is left to the Bankruptcy Court's discretion, to be determined on a case-by-case basis in light of the broad purposes of the Bankruptcy Code. *Theater Holding Corp. v. Mauro*, 681 F.2d 102 (2d Cir. 1982); *In re Teligent, Inc.*, 268 B.R. 723 (Bankr. S.D.N.Y. 2001). As demonstrated herein, it is clear that

4

the balance of interests and harm militate toward compelling the Debtor to promptly assume or reject the Loan Agreement.

15. There can be no question that the Loan Agreement is an executory contract, as there are substantial unperformed obligations on both sides. *See In re Penn Traffic Co.*, 524 F.3d 373 (2d Cir. 2008); *In re Teligent, Inc.*, 268 B.R. 723 (Bankr. S.D.N.Y. 2001). Thus, the Loan Agreement is capable of being assumed or rejected.

16. As noted above, LCD has suffered and continues to suffer serious financial harm as a result of the Debtor's failure to advance funds in accordance with the Loan Agreement or to enable LCD to obtain funding from an alternate source by agreeing to subordinate its lien. The damage to LCD described above has reached a point where the Project is on the verge of complete failure and LCD will be left with nothing except tens of millions of dollars of debt.

17. Consequently, it is imperative that the Debtor forthwith elect to either assume the Loan Agreement, in which case it will be required to cure its breach of contract thereunder by providing LCD with the funds it has thus far failed to advance, or reject the Loan Agreement, agree to subordinate its lien on the project to a new lender so that LCD can finally obtain the remainder of the financing it so desperately needs to complete the Project, and LCD will have a claim for damages incurred by the breach of the Loan Agreement. By proceeding in that fashion, LCD will be in a position to complete the Project and repay its obligations to the Debtor, and the Debtor will not be exposed to a potentially massive rejection damages claim should the Project fail completely.

## CONCLUSION

18. For all of the reasons set forth above, LCD respectfully submits that the Debtor should

be compelled to either assume or reject the Loan Agreement forthwith.

19. Since no novel or complex issues of law are raised by the instant Application, it is respectfully submitted that the requirement of a memorandum of law pursuant to SDNY LBR 9013-1(b) be dispensed with.

20. No prior application for the relief sought herein has been made to this or any other court.

WHEREFORE, LCD respectfully requests that this Court enter an order granting the instant Application in all respects, plus granting such other and further relief as may be just and proper.

Dated: Garden City, New York
June 3, 2009

BERKMAN, HENOCH, PETERSON
& PEDDY, P.C.
Attorneys for Laurel Cove Development, LLC

BY: /s/Ronald M. Terenzi
Ronald M. Terenzi (RMT 6416)
Bruce D. Mael (BDM 8038)
100 Garden City Plaza
Garden City, New York 11530
(516) 222-6200

O:\BHPP Department Data\Bankruptcy Department Data\Bruce Mael\laurel - lehman.wpd