**Hearing Date and Time:  June 24, 2009 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  June 19, 2009 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                               :
In re                                          :  Chapter 11 Case No.
                                               :
LEHMAN BROTHERS HOLDINGS INC., et al.,         :  08-13555 (JMP)
                                               :
                    Debtors.                   :  (Jointly Administered)
                                               :
                                               :
-----------------------------------------------------------------x
```

**NOTICE OF DEBTORS' MOTION FOR AN
ORDER PURSUANT TO SECTIONS 105(a) AND 363(b)(1)
OF THE BANKRUPTCY CODE AUTHORIZING LEHMAN
BROTHERS HOLDINGS INC. TO PAY OFF PROMISSORY
NOTE FOR THE BENEFIT OF LB CARILLON CONSTRUCTION LLC**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases (together, the "Debtors") for authorization, pursuant to sections 105(a) and

363(b)(1) of title 11 of the United States Code (the "Bankruptcy Code") to pay off that certain

Promissory Note, dated as of April 30, 2008, by and between LB Carillon Construction LLC and

Fortress Credit Corp., will be held before the Honorable James M. Peck, United States

Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on

**June 24, 2009 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Shai Waisman, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis; Esq. and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases, so as to be so filed and received by no later than **June 19, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Objection Deadline</u>").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: June 3, 2009
      New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

...
...

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | : | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | |

------------------------------------------------------------------x

**DEBTORS' MOTION FOR AN ORDER
PURSUANT TO SECTIONS 105(a) AND 363(b)(1)
OF THE BANKRUPTCY CODE AUTHORIZING LEHMAN
BROTHERS HOLDINGS INC. TO PAY OFF PROMISSORY
NOTE FOR THE BENEFIT OF LB CARILLON CONSTRUCTION LLC**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully represent:

**Background**

1. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

4. On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

## Jurisdiction

5. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

6. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

7.     Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Preliminary Statement**

8.     Beginning in 2006, LBHI and LB Carillon Construction LLC ("LB Carillon"), an indirect non-debtor subsidiary of LBHI, loaned in excess of $418 million to certain borrowers to finance the construction of a residential condominium project commonly known as Canyon Ranch Living Miami Beach Condominiums, located in Miami Beach, Florida ("Canyon Ranch Miami"). These loans consist of two Construction Loans (as defined below), which are secured by, among other things, first lien mortgages on the southern and northern parcels of Canyon Ranch Miami. In order to fund a portion of the amounts LB Carillon committed to provide under the Construction Loans, LB Carillon borrowed $238,850,000 from Fortress Credit Corp. ("Fortress") under that certain Promissory Note dated as of April 30, 2008 (the "Fortress Loan"). The Fortress Loan accrues interest at the London Interbank Offered Rate ("LIBOR") plus 6%. As security for the Fortress Loan, LB Carillon pledged to Fortress its interests in and to the Construction Loans and all other documents, agreements and collateral relating to the Construction Loans (the "Fortress Collateral").

9.     LB Carillon intended to repay the amounts it owes under the Fortress Loan with the amounts repaid by the borrowers under the Construction Loans. However, due to difficulties in the south Florida residential real estate market, the borrowers under the Construction Loans have failed to timely meet their payment obligations. Consequently, LB

Carillon is unable to pay Fortress the amounts due under the Fortress Loan. The Fortress Loan had an initial maturity date of April 30, 2009, but Fortress has extended the loan's maturity date to June 30, 2009. In exchange for granting such extension, on June 1, 2009, LBHI paid Fortress approximately $10 million of outstanding amounts owed under the Fortress Loan for the benefit of LB Carillon. Upon maturity, additional amounts of no greater than $142 million will become due and owing under the Fortress Loan.[1]

10. As part of a larger business plan with respect to Canyon Ranch Miami, the Debtors have determined it is in the best interest of their estates to pay Fortress the amounts due under the Fortress Loan for the benefit of LB Carillon (the "Loan Pay-Off").[2] Pursuant to the cash management order entered by the Court in these cases [Docket No. 1416] (the "Cash Management Order"), the Debtors may transfer cash for the benefit of a non-debtor affiliate, so long as the Debtor uses commercially reasonable efforts to obtain from such affiliate a note accruing interest at a market rate and a valid perfected lien junior to any existing liens of such affiliate (a "Secured Market Rate Note"). In accordance with the Cash Management Order,

**I.** _____

[1] The exact calculation of the amounts to be due under the Fortress Loan upon maturity are still being finalized by Fortress and the Debtors. The debtors believe the Loan Pay-Off will be no greater than $142 million.

[2] As further described in the Debtors' motion, dated May 14, 2009 [Docket No. 3570], the Debtors' have developed a mortgage financing program (the "Mortgage Program") with Americor Mortgage Inc. to facilitate the sale of condominium units at the Canyon Ranch Miami and thereby increase the likelihood that proceeds from the sale of such units will be available for the repayment of the Construction Loans. As further described in the Debtors' motion, dated May 15, 2009 [Docket No. 3580]. Additionally, the Debtors have entered into an exchange agreement (the "Exchange Agreement") with State Street Bank and Trust Company ("State Street"). Pursuant to the Exchange Agreement, the Debtors will receive and State Street will relinquish State Street's interests in a $104,742,224 mezzanine loan relating the Canyon Ranch Miami. The Debtors plan to subsequently restructure the loans relating to the Canyon Ranch Miami, including the Construction Loans.

LBHI make the Loan Pay-Off, and, in exchange, LB Carillon will provide LBHI with a Secured Market Rate Note. The Debtors believe that the Construction Loans continue to have value, and consequently, the Debtors and their estates will ultimately realize a recovery on the amounts lent under Construction Loans. The Loan Pay-Off will protect LB Carillon's interest in the Construction Loans by preventing Fortress's foreclosure of the Fortress Collateral. Additionally, as a result of the Loan Pay-Off, it will no longer be necessary for LB Carillon to use the amounts repaid by the borrowers under the Construction Loans to repay the Fortress Loan, which accrues interest at the considerable rate of LIBOR plus 6%.

11.     The Debtors believe the Loan Pay-Off involves the use of property of the estate in the ordinary course of business and is in accordance with the Cash Management Order. As a result, the Loan Pay-Off does not require the approval of this Court. Nonetheless, under the provisions of the Cash Management Order that condition the transfer of cash in excess of $25 million on obtaining the consent of the Creditors' Committee, the Creditors' Committee has asked that this Motion be filed to obtain the Court's approval of the Loan Pay-Off. It is worth noting that the Debtors have been advised that the Creditors' Committee does not object to the Loan Pay-Off.

**Relief Requested**

12.     The Loan Pay-Off is in accordance with the Cash Management Order and involves the use of property of the estate in the ordinary course of business and, thus, does not require approval of the Court pursuant to section 363(b)(1) of the Bankruptcy Code. At the behest of the Creditor's Committee and out of an abundance of caution, the Debtors are seeking approval of the Court under section 363(b)(1) of the Bankruptcy Code to use property of LBHI's estate in connection with the Loan Pay-Off.

**The Loans**

13. On September 8, 2006, LB Carillon, as successor-in-interest of LBHI, and Carillon South Joint Venture L.L.C. (the "South Borrower") entered into that certain Restructured Construction Loan Agreement (as amended, modified and supplemented, the "South Loan Agreement") relating to a loan by LBHI to the South Borrower in the maximum principal amount of $219,186,000 (the "South Loan") to finance the construction of the southern parcel of Canyon Ranch Miami. The South Loan is secured by, among other things, a first lien mortgage on the southern parcel of Canyon Ranch Miami pursuant to that certain Notice of Future Advance and Restated Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing, dated as of September 7, 2006 and executed by the South Borrower.

14. On September 8, 2006, LB Carillon, as successor-in-interest of LBHI, and North Carillon L.L.C. (the "North Borrower") entered into that certain Restructured Construction Loan Agreement (as amended, modified and supplemented, the "North Loan Agreement") relating to a loan by LBHI to the North Borrower in the maximum principal amount of $199,505,000 (the "North Loan" and together with the South Loan, the "Construction Loans") to finance the construction of the northern parcel of Canyon Ranch Miami. The North Loan is secured in part by a first lien mortgage on the northern parcel of Canyon Ranch Miami pursuant to that certain Notice of Future Advance and Restated Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing, dated as of September 7, 2006 and executed by the North Borrower.

15. In order to fund a portion of the amounts LB Carillon committed to provide under the Construction Loans, LB Carillon borrowed $238,850,000 from Fortress under

the Fortress Loan.  As security for the Fortress Loan, LB Carillon pledged its interest in the Fortress Collateral, including its interest in the Construction Loans, pursuant to that certain Pledge and Security Agreement by LB Carillon in favor of Fortress, dated as of April 30, 2008.

16.     LB Carillon intended to repay the amounts it owes under the Fortress Loan with the amounts repaid by the borrowers under the Construction Loans.  However, due to difficulties in the south Florida residential real estate market, the borrowers under the Construction Loans have failed to timely meet their payment obligations.  Consequently, LB Carillon is unable to pay Fortress the amounts due under the Fortress Loan.  The Fortress Loan had an initial maturity date of April 30, 2009, but Fortress has extended the loan's maturity date to June 30, 2009.  In exchange for granting such extension, on June 1, 2009, LBHI paid Fortress approximately $10 million of outstanding amounts owed under the Fortress Loan for the benefit of LB Carillon.  Upon maturity, additional amounts of no greater than $[152 million] will become due and owing under the Fortress Loan.

17.     In accordance with the Cash Management Order, LBHI will make the Loan Pay-Off for the benefit of LB Carillon in exchange for a Secured Market Rate Note.

**The Loan Pay-Off is An
Appropriate Exercise of LBHI's Business Judgment**

18.     As discussed above, the Loan Pay-Off is in accordance with the Cash Management Order, pursuant to which the Debtors may transfer cash for the benefit of a non-debtor affiliate, so long as a Debtor makes commercially reasonable efforts to obtain from such affiliate a Secured Market Rate Note.  LBHI will obtain a Secured Market Rate Note from LB Carillon in exchange for the Loan Pay-Off.  Moreover, the Loan Pay-Off involves the use of property of the estate in the ordinary course of business.  Specifically, prior to the

Commencement Date, LBHI regularly made similar loan pay-offs on behalf of affiliates who were unable to repay their indebtedness. Nevertheless, the Creditors' Committee has asked that this Motion be filed to obtain the Court's approval of the Loan Pay-Off. At the request of the Creditor's Committee and out of an abundance of caution, the Debtors are seeking approval of the Court under section 363(b)(1) of the Bankruptcy Code to use property of LBHI's estate in connection with the Loan Pay-Off.

19. Ample authority exists for approval of the Loan Pay-Off. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). While section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale, disposition or other use of a debtor's assets, courts in the Second Circuit and others, in applying this section, have required that it be based upon the sound business judgment of the debtor. See In re Chateaugay Corp., 973 F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (same).

20. The Debtors have determined, in the sound exercise of their business judgment, that the Loan Pay-Off is in the best interests of their estates and creditors. The Loan Pay-Off allows LBHI to prevent Fortress from foreclosing on the valuable collateral that LB Carillon, LBHI's indirect subsidiary, pledged to Fortress to secure the Fortress Loan. Such collateral consists of the Construction Loans, under which LB Carillon and LBHI loaned over $418 million to the North Borrower and the South Borrower. The Loan Pay-Off will protect LB

Carillon's interest in the Construction Loans by preventing Fortress's foreclosure of the Fortress Collateral. Additionally, as a result of the Loan Pay-Off, it will no longer be necessary for LB Carillon to use the amounts repaid by the borrowers under the Construction Loans to repay the Fortress Loan, which accrues interest at the considerable rate of LIBOR plus 6%.

21. The Debtors believe that the Loan Pay-Off is fair and reasonable under the circumstances. In addition to protecting the valuable collateral pledged by LB Carillon and providing LB Carillon with immediate income, in return for entering into the Loan Pay-Off LBHI will receive a Secured Market Rate Note. Upon repayment of the Construction Loans by the North Borrower and the South Borrower and given that it will no longer be necessary to use the amounts repaid by such borrowers under the Construction Loans to repay the Fortress Loan, the Debtors expect that LB Carillon will be in a position to pay-off the Secured Market Rate Note and, thus, reimburse LBHI for the Loan Pay-Off.

22. On the other hand, absent the Loan Pay-Off, Fortress will likely foreclose on the collateral securing the Fortress Loan and thereby deprive the Debtors and their estates of valuable assets in which the Debtors and their subsidiaries have invested hundreds of millions of dollars. Thus, the benefit yielded by the Loan Pay-Off to the Debtors' estates and creditors far outweighs any burden to the Debtors' estates arising from LBHI's payment of no greater than $142 million, a sum that is mandatory for a subsidiary of LBHI to pay. The Debtors have thoroughly discussed and vetted the Loan Pay-Off with the Creditors' Committee and its advisors. The Debtors have been advised that the Creditors' Committee does not object to the Loan Pay-Off.

23. Accordingly, in light of the undeniable benefits of the relief requested herein to the Debtors and their reorganization, the Debtors clearly have exercised sound business

judgment, and approval of the Loan Pay-Off is in the best interests of the Debtors' estates and their creditors.

## Notice

24.     No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York and (vi) all parties who have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

25.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: June 3, 2009
      New York, New York

           /s/ Shai Y. Waisman
           Shai Y. Waisman

           WEIL, GOTSHAL & MANGES LLP
           767 Fifth Avenue
           New York, New York 10153
           Telephone: (212) 310-8000
           Facsimile: (212) 310-8007

           Attorneys for Debtors
           and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                                 :
In re                                                            :   Chapter 11 Case No.
                                                                 :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :   08-13555 (JMP)
                                                                 :
                    Debtors.                                :   (Jointly Administered)
                                                                 :
                                                                 :
-----------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105(a) AND 363(b)(1)
OF THE BANKRUPTCY CODE AUTHORIZING LEHMAN
BROTHERS HOLDINGS INC. TO PAY OFF PROMISSORY
NOTE FOR THE BENEFIT OF LB CARILLON CONSTRUCTION LLC**

Upon the motion, dated June 3, 2009 (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") for authorization to pay off that certain Promissory Note (the "Fortress Promissory Note"), dated as of April 30, 2008, by and between LB Carillon Construction LLC and Fortress Credit Corp. (the "Loan Pay-Off"); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

I. _____

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered February 13, 2009 governing case management and administrative procedures [Docket No. 2837] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, the Loan Pay-Off is approved, and LBHI is authorized (i) to consummate all of the transactions contemplated thereby, including the payment to Fortress of all amounts due and owing under the Fortress Promissory Note, and execute and deliver such documents and instruments of transfer and to take such other actions as may be reasonably necessary to consummate such transactions; and it is further

ORDERED that this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed pursuant to Bankruptcy Rule 6004; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: June __, 2009
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE