KLESTADT & WINTERS, LLP
Tracy L. Klestadt
John E. Jureller, Jr.
292 Madison Avenue, 17th Floor
New York, New York 10017-6314
Telephone No. (212) 972-3000

Attorneys for Plaintiffs

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDING INC., *et al.*, | Case No. 08-13555 (JMP) |
| | (Jointly Administered) |
| Debtor | |

---------------------------------------------------------x

EUROPEAN CREDIT MANAGEMENT
LIMITED, RELATIVE EUROPEAN
VALUE S.A., EUROPEAN CREDIT
(LUXEMBOURG) S.A., LEVERAGED
LOANS EUPORE plc, and TERM LOANS
EUROPE plc,

                        Plaintiffs,                    Adv. Pro. No. _____

          -against-

LEHMAN COMMERCIAL PAPER INC.,

                        Defendant.

---------------------------------------------------------x

## ADVERSARY COMPLAINT
## AGAINST LEHMAN COMMERCIAL PAPER INC.

      Plaintiffs, European Credit Management Limited ("ECM"), Relative European Value

S.A. ("REV"), European Credit (Luxembourg) S.A. ("ECL"), Leveraged Loans Europe plc

("LLE") and Term Loans Europe plc ("TLE", and collectively with ECM, REV, ECL and LLE

as "Plaintiffs"), by their counsel, as and for their complaint against defendant Lehman

Commercial Paper Inc. ("LCPI" or the "Defendant"), allege as follows:

## PARTIES

1.      ECM is an asset management company specializing in European fixed income and managing highly diversified portfolios on behalf of institutional investors worldwide, with its principal place of business located at 34 Grosvenor Street, London, England.

2.      Each of the other Plaintiffs is an institutional investor with certain portfolios managed by ECM.

3.      Defendant LCPI is a corporation organized and incorporated under the laws of Delaware and is registered to do business in the State of New York and has its principal business address at 745 Seventh Avenue, New York, NY 10019.

4.      LCPI is a subsidiary of Lehman Brothers Holding Inc. ("LBHI"), a debtor and debtor in possession.

5.      On October 3, 2008, LCPI filed a petition in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), seeking relief under chapter 11 of the United States Bankruptcy Code, and since that date has operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## PRELIMINARY STATEMENT

6.      This action is commenced by Plaintiffs with respect to the Debtors' failure to elevate the Plaintiff's respective funded participations and sub-participations to Lender positions with respect to certain loan syndications administered, syndicated or traded by and through LCPI.  By this action, the Plaintiffs seek an order of this Court (i) compelling Defendant's specific performance due under those certain Credit Agreements; (ii) entering a declaratory judgment that Plaintiffs' funded participations and sub-participations are effective,

that they are the owners of the Credit Agreement Interests (defined later herein), and that such

Credit Agreement Interests are not property of LCPI's bankruptcy estate; (iii) compelling similar

treatment to Plaintiffs with respect to LCPI's similarly situated trading counterparties relative to

elevation of their interests; (iv) determining that Plaintiffs' rights to elevate under the Loan

Market Association ("LMA") Agreements and Terms and Conditions fall within the Safe Harbor

Provisions of the Bankruptcy Code and are not subject to the automatic stay, (v) compelling

LCPI to turn over, or take such actions necessary to turn over, the Credit Agreements Interests of

Plaintiffs; (vi) enjoining LCPI from selling, converting, altering or transferring certain property

of the Plaintiffs; and (vii) compelling LCPI to provide an accounting to Plaintiffs.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this adversary proceeding pursuant to 28

U.S.C. §§ 1334 and 157.

8.    This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b).

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## FACTUAL B ACKGROUND

10.    In the ordinary course of its business, LCPI engaged in administering,

syndicating and trading commercial loans, and acted as lender, syndication agent and/or

administrative agent on commercial loans.

11.    On information and belief, in or about 2005, LCPI began syndicating large

loans by selling certain participations and/or certain participations in these participations, or sub-

participations, in the syndicated loans to third parties, such as Plaintiffs. On information and

belief, LCPI was party to more than 500 participations and sub-participations.

12.    The general theory behind such participations and/or sub-participations

was that LCPI was unable or unwilling to fund the entire amount of the loan or loan

participation, and would thus syndicate the loan or a portion thereof to numerous third parties

which were interested in funding a smaller portion of the total loan or participation. By

syndicating the loan or loan participation to third party participants, LCPI was able to shift the

risk of default and future funding obligations to such third parties but retain fees earned by

consummating the transaction. It was, by all estimations, a profitable enterprise for LCPI.

13.    In or about November 2005, Plaintiff TLE entered into a LMA Funded

Participation Agreement (an "LMA Agreement") with LCPI with a participation commitment of

€4,916,666.67 related to a credit agreement wherein Project Silver and certain of its subsidiaries,

[also known as or now known as SEAT Pagine Gialle S.p.A. ("SEAT")], were the borrowers (the

"2005 TLE  SEAT Agreement").  A copy of the 2005 TLE SEAT Agreement is annexed hereto

as Exhibit "A".

14.    In or about November 2005, Plaintiff LLE entered into a similar LMA

Agreement with LCPI with a participation commitment of €1,475,000.00 related to a credit

agreement wherein SEAT were the borrowers (the "2005 LLE SEAT Agreement").  A copy of

the 2005 LLE SEAT Agreement is annexed hereto as Exhibit "B".

15.    In or about April 2006, Plaintiff LLE entered into a similar LMA

Agreement with LCPI with a participation commitment of €2,500,000.00 in Facility B and

€2,500,000.00 in Facility C related to a credit agreement wherein AVR Acquisitions B.V. was

the borrower (the "2006 LLE AVR Agreement"). A copy of the 2006 LLE AVR Agreement is

annexed hereto as Exhibit "C".

16.    In or about January 2008, Plaintiff ECL entered into an LMA Agreement

with LCPI with a participation commitment of €4,000,000.00 related to a credit agreement

wherein Merlin Entertainments Group Luxembourg 3 S.à.R.L. ("Merlin") was the borrower (the "2008 ECL Merlin Agreement"). A copy of the 2008 ECL Merlin Agreement is annexed hereto as Exhibit "D".

17.    In or about January 2008, Plaintiff REV entered into an LMA Agreement with LCPI with a participation commitment of €2,661,012.36 related to a credit agreement wherein Merlin was the borrower (the "2008 REV Merlin Agreement"). A copy of the 2008 REV Merlin Agreement is annexed hereto as Exhibit "E".

18.    In or about October 2007, Plaintiff LLE entered into an LMA Agreement with LCPI with a participation commitment of €402,827.92 in Facility B and €1,597,172.08 in Facility C related to a credit agreement wherein Wind Telecommunicaziono SPS was the borrower (the "2007 LLE Wind Agreement" and collectively with the other specified LMA Agreements, the "LMA Agreements"). A copy of the 2007 LLE Wind Agreement is annexed hereto as Exhibit "F".

19.    On information and belief, in furtherance of these LMA Agreements, the borrower or obligor provided certain collateral as security for their respective obligations, and on information and belief, LCPI has or may have possession of such collateral, and/or a perfected security interest in such collateral, which it holds on behalf of the respective lending syndicate participants and sub-participants.

20.    Each of the LMA Agreements is subject to the Terms and Conditions for Funded Participations of the Loan Market Associations as in effect on the Trade Date (the "Terms and Conditions"). A copy of the Terms and Conditions is annexed hereto as Exhibit "G".

21.    On information and belief, the Terms and Conditions were structured, in part, to permit the Plaintiffs to receive favorable tax treatments in the various European

jurisdictions where the Plaintiffs would be liable for taxes.  As a result, the Terms and

Conditions provided that, initially, (i) the Plaintiffs would not have a proprietary interest in the

benefits of the underlying loan in which the respective Plaintiffs were participating (the "Credit

Agreements", and the interests under the Credit Agreements, the "Credit Agreements Interests")

or in any monies received by the Defendant under or in relation to the Credit Agreements, and

(ii) "[t]he relationship between the [Defendant] and the [Plaintiffs] is that of debtor and creditor

with the right of the [Plaintiffs] to receive monies from the [Defendant] restricted to the extent of

an amount equal to the relevant portion of any monies received by the [Defendant] from any

Obligor [under the Credit Agreement]."  *See* Exhibit "G", Section 6, 1.1.

        22.      However, the Terms and Conditions also provided for the unilateral and

automatic elevation ("Elevation") of such funded participation or sub-participation to a Lender

position under the underlying Credit Agreement upon request or notice of either party to the

LMA Agreement.

        23. Section 17 of the Terms and Conditions states in pertinent part:

> [U]pon the request of either Party, each Party hereto shall use
> commercially reasonable efforts to, as soon as reasonably
> practicable, cause the [Plaintiffs] to become a Lender under the
> Credit [Agreement] with respect to the Loans (an "Elevation") and
> take such action (including the execution and delivery of a transfer
> certificate or assignment and acceptance agreement, as applicable)
> as shall be mutually agreeable in connection therewith and in
> accordance with the terms of this [LMA Agreement]. . . . Elevation
> is to occur free from any rights of set-off in favor of any Obligor or
> any other party, or any lien, security interest or other encumbrance,
> any purchase or option agreement or arrangement, or any
> agreement to create or effect any of the same.

*See* Exhibit "G", Section 17.

        24.      Hence, the Terms and Conditions provide a mechanism for the Plaintiffs,

as participants or sub-participants, to unilaterally elect to be elevated to acquire or hold an

ownership of the Credit Agreements Interest, which did not, under any circumstances, require

that the Plaintiffs provide any additional consideration to LCPI or require consent from LCPI,

other than that provided in connection with the initial agreements.

25.    On September 15, 2008, LBHI filed a petition seeking relief under chapter

11 of the United States Bankruptcy Code.  That same day, Plaintiffs sent LCPI notice that each

of the respective Plaintiffs had elected to elevate their funded participations or sub-participations

to a Lender under the LMA Agreements pursuant to the Terms and Conditions (collectively as

"Elevation Notices").  Copies of the respective Elevation Notices are annexed hereto collectively

as Exhibit "H".

26.    At the time of the Elevation Notices, LCPI was not a debtor or debtor in

possession, and in fact circulated a notice, dated September 22, 2008, to all trading

counterparties, in light of the bankruptcy filings of its parent company and affiliates, that "LCPI

continues to operate its business and is authorized to perform its obligations in accordance with

the terms of the various agreements to which it is a party…[i]n that regard, we are continuing to

close open loan trades as expeditiously as possible…[f]or instance, in the past week LCPI closed

approximately 60 trades."

27.    On information and belief, upon receipt of the Elevation Notices, LCPI

was required to take such actions necessary to formalize and document the Elevation of each of

the Plaintiffs positions to a Lender under the respective Credit Agreements.

28.    LCPI acknowledged receipt of the Elevation Notices provided by

Plaintiffs, and did not dispute the obligations thereunder.  In fact, LCPI indicated, on numerous

occasions, that it would process the Elevation of the Plaintiffs to Lenders.

29.    As further evidence of the automatic right to Elevation, LCPI did in fact

execute the initial Termination and Transfer Agreement relative to the Elevation of TLE's

funded participation under the 2005 TLE SEAT Agreement; however, the Termination and

Transfer Agreement had to be restructured thereafter and the revised Termination and Transfer

Agreement was never signed by LCPI thereafter.

30.    In furtherance of such election for Elevation, the Plaintiffs agreed to

provide the relevant transfer certificates and/or assignments and acceptance agreements as

applicable, and pay all applicable transfer fees in connection with such Elevations.  As such,

there were no additional costs to LCPI or its estate with respect to such automatic Elevation.

31.    On information and belief, as a result of the ensuing confusion, both

internally at Lehman Brothers and in the market, resulting from the bankruptcy filing by LBHI

and its affiliates, including Lehman Brothers International (Europe) ("LBIE"), LCPI was delayed

in providing the required transfer certificates and/or assignments and acceptance agreements as

required under the Terms and Conditions, as representatives of LCPI were unsure of their

respective authorizations in light of the bankruptcy cases and appointment of the liquidator for

LBIE in England.

32.    Nonetheless, at all relevant times, LCPI continued to acknowledge

Plaintiffs' Elevation Notices, continued to represent that LCPI was continuing business in the

ordinary course of business, and continued to represent that the formal executions necessary for

the Elevations were just a matter of time.

33.    As set forth above, LCPI provided notice to its trading counterparties that

it was operating its business as usual.  In fact, in its subsequent first day Motion Pursuant to

Sections 105(a), 363(b) and 541(d) of the Bankruptcy Code and Bankruptcy Rule  6004 for

Authority to (A) Continue to Utilize its Agency Bank Account, (B) Terminate Agency

Relationships, and (C) Elevate Loan Participations ("Elevation Procedures Motion"), dated October 5, 2008, LCPI acknowledges that "beginning on the commencement of LBHI's chapter 11 case, LCPI began elevating participants to lender positions, or its sub-participants to its participant positions." *See* Elevation Procedures Motion, ¶14 [Docket No. 3 under Case No. 08-13900 (JMP)].

34.    LCPI has acknowledged and confirmed that it elevated similarly situated LMA Agreement participants and sub-participants upon its own notice or notice of its trading counterparties.

35.    It is apparent that LCPI failed to use commercially reasonable efforts to execute the certificates and/or assignments and acceptance agreements with respect to the Plaintiffs' Elevation Notices.

36.    On October 3, 2008, LCPI filed a petition in the Bankruptcy Court, seeking relief under chapter 11 of the United States Bankruptcy Code.

37.    Despite its bankruptcy filing, LCPI continued to represent to Plaintiffs for several months that the Elevation Notices would be duly processed by LCPI.  However, after the Plaintiffs made multiple attempts to have LCPI execute the certificates and/or assignments and acceptance agreements, LCPI apparently changed gears and determined in or about February 2009 that it would not elevate Plaintiffs to Lender positions under the LMA Agreements.  The apparent theory was that Plaintiffs would allegedly be only unsecured creditors of LCPI's bankruptcy estate if not elevated, thus permitting LCPI to collect all funds from the borrower and maintain all collateral, without necessitating that it meets its obligations under the LMA Agreements and depriving Plaintiffs of their contractual rights.  Once elevated, the Plaintiffs would have equitable ownership and rights to such payments and collateral.

38.     As a result of LCPI's failure to execute the necessary documentation to formalize the automatic and unilateral pre-petition elevation of Plaintiffs' interests, Plaintiffs are unable to exercise their respective rights as Lenders under the Credit Agreements, including the right to receive contractual payments of principal and interest and right to exercise interest in collateral.

39.     As a result of LCPI's failure to execute the necessary documentation to formalize the automatic and unilateral pre-petition elevation of Plaintiffs' interests, despite LCPI's acknowledged and preferential elevation of other trading counterparties' participation and sub-participation interests, Plaintiffs are being treated differently to those parties similarly situated, all to Plaintiffs' detriment.

## COUNT I
### (SPECIFIC PERFORMANCE)

40.     Plaintiffs hereby repeat, reiterate and re-allege paragraphs 1 through 39 of the Complaint, all inclusive, as if more fully set forth herein at length.

41.     On September 15, 2008, Plaintiffs duly exercised their respective unilateral contractual options to elevate their funded participations and sub-participations to Lender positions.

42.     LCPI duly acknowledged receipt of the Elevation Notices from Plaintiffs, and continued to represent that the documents formalizing the Elevation would be executed by LCPI.

43.     LCPI duly acknowledged that it has elevated the funded participation and sub-participation interests of other trading counterparties who were similarly situated, both pre-petition and post-petition.

44.     LCPI's failure to execute the transfer certificates and/or assignments and

acceptance agreements relative to the Plaintiffs' funded participations and/or sub-participations constitutes a material breach of the LMA Agreements.

45.    As a result of LCPI's breach, the Plaintiffs are unable to fully exercise their rights and privileges as Lenders under the Credit Agreements and as equitable and/or legal owners of the Credit Agreements Interests.

46.    The rights and privileges as a Lender under the Credit Agreements and the Credit Agreements Interests are not fungible and monetary damages could not fully compensate Plaintiffs for the loss resulting from LCPI's breach of the LMA Agreements.

47.    Based upon the foregoing, it is respectfully requested that the Court enter judgment in favor of the Plaintiffs, compelling LCPI to specifically perform its obligations under the LMA Agreements and execute the necessary transfer certificates and/or assignments and acceptance agreements to elevate Plaintiffs to Lender positions under the Credit Agreements and with respect to the Credit Agreement Interests.

## COUNT II
### (DECLARATORY JUDGMENT)

48.    Plaintiffs hereby repeat, reiterate and re-allege paragraphs 1 through 47 of the Complaint, all inclusive, as if more fully set forth herein at length.

49.    In accordance with the Terms and Conditions, the Plaintiffs had an unconditioned right to elevate their respective funded participation and/or sub-participation positions to that of a Lender under the Credit Agreements.

50.    The Plaintiffs' right to elevate was automatic and unilateral, and did not, under any circumstances, require that the Plaintiffs provide any consideration to LCPI or acquire consent from LCPI.

51.    Therefore, once the Plaintiffs had elected to elevate their respective

funded participation and sub-participation interests and provided the Elevation Notices to LCPI

of such election, the Plaintiffs effectively became a Lender under such Credit Agreements and

acquired equitable and/or legal ownership of the Credit Agreements Interests.

52.    Although the Terms and Conditions provide that, prior to an election to

Elevate, "[n]othing in the Funded Participation constitutes the Grantor as agent, fiduciary or

trustee for the Participant," once an election to elevate was made, the nature of the relationship

between LCPI and the Plaintiffs changed dramatically.

53.    After the Plaintiffs' election to elevate, LCPI was effectively no longer a

Lender under the respective Credit Agreements and held, at most, only bare legal title in the

Credit Agreements Interests.

54.    After the Plaintiffs' election to elevate, LCPI held the Credit Agreements

Interests solely as an agent and in trust, constructive or actual, for the benefit of the Plaintiffs.

55.    LCPI even recognized its position as a trustee holding bare legal title in

situations such as the present in its Elevation Procedures Motion, as follows:

> 16. With the exception of the portion of any borrower payments attributable to
> LCPI in its capacity as lender under a particular credit facility, the funds on
> deposit in the Agency Account do not belong to LCPI and, therefore, do not
> constitute property of LCPI's estate. Rather such funds represent payment by
> borrowers held by LCPI as agent on behalf of the syndicates or funds advanced by
> the syndicate members to LCPI for re-advance to the relevant borrowers.
>
> 17. Alternatively, the Agency Account might represent property "in which the
> debtor holds, as of the commencement of the case, only legal title and not an
> equitable interest" as contemplated by section 541(d) of the Bankruptcy Code. As
> such, the Agency Account would be property of LCPI's estate only to the extent
> of LCPI's legal title to the account. The equitable interest belongs to third party
> borrowers or lenders and LCPI submits that it is both necessary and appropriate
> that LCPI be authorized to transfer such funds to the entities having the equitable
> interest therein.

56.    LCPI's admissions in the LCPI Motion demonstrate that once the

Plaintiffs acquired equitable ownership of the Credit Agreements Interests, as a result of its election to elevate, LCPI held at most bare legal title to the Credit Agreements Interests, and therefore the Plaintiffs' equitable ownership of the Credit Agreements Interests is not property of the LCPI bankruptcy estate.

57.      It is respectfully submitted that the Court should enter a declaratory judgment ordering that the Plaintiffs' elections to elevate their respective funded participations and sub-participations to Lender positions are effective retroactively to September 15, 2008, or such other date as this Court deems appropriate, compelling LCPI to execute the necessary transfer certificates and/or assignments and acceptance agreements, and ordering that Plaintiffs' respective Credit Agreement Interests are not property of the LCPI bankruptcy estate.

**COUNT III**
**(COMPEL SIMILAR TREATMENT TO OTHER SIMILARLY
SITUATED LCPI TRADING COUTNERPARTIES OR ALTERNATIVELY
UNWIND THE PREFERENTIAL ELEVATION OF SIMILARLY
SITUATED TRADING COUNTERPARTIES OF LCPI)**

58.      Plaintiffs hereby repeat, reiterate and re-allege paragraphs 1 through 57 of the Complaint, all inclusive, as if more fully set forth herein at length.

59.      On September 15, 2008, Plaintiffs duly exercised their respective unilateral options to elevate their funded participations and sub-participations to Lender positions.

60.      LCPI duly acknowledged receipt of the Elevation Notices from Plaintiffs, and continued to represent that the elevation documents would be executed by LCPI.

61.      As set forth, *inter alia*, in its Elevation Procedures Motion, LCPI duly acknowledged that it has elevated the funded participation and sub-participation of other trading counterparties who were similarly situated, both pre-petition and post-petition.

62.     As a result of LCPI's actions, Plaintiffs have been treated differently from other LCPI trading counterparties with respect to the Elevation of their funded participations and sub-participations, thus granting preferential status to such other similarly situated LCPI trading counterparties, all to the detriment of the Plaintiffs.

63.     It is respectfully requested that the Court enter an order compelling LCPI to elevate their respective their funded participations and sub-participations in the same manner as similarly situated LCPI trading counterparties, both pre-petition and post-petition.

64.     Alternatively, it is respectfully requested that the Court enter an order compelling LCPI to unwind the preferential elevation of similarly situated LCPI trading counterparties, both pre-petition and post-petition.

## COUNT IV
### (SAFE HARBOR PROVISIONS)

65.     Plaintiffs hereby repeat, reiterate and re-allege paragraphs 1 through 64 of the Complaint, all inclusive, as if more fully set forth herein at length.

66.     On information and belief, the LMA Agreements, as incorporated into the Terms and Conditions, are securities contracts as defined under Section 741 of the Bankruptcy Court.

67.     Pursuant to Sections 362(b)(6), 546(e), (f) and/or (g), 555 and/or 559 of the Bankruptcy Code (the "Safe Harbor Provisions"), Plaintiffs are entitled to exercise their contractual rights under the LMA Agreements and Terms and Conditions notwithstanding the bankruptcy filing by LCPI and are not subject to the Automatic Stay under Section 362 of the Bankruptcy Code.

68.     The Terms and Conditions provide for the unilateral and automatic Elevation of Plaintiffs' funded participation or sub-participation to Lender positions upon request

14

or notice of either party to the LMA Agreement.

69.    On September 15, 2008, Plaintiffs duly exercised their respective unilateral contractual options to elevate their funded participations and sub-participations under the LMA Agreements to Lender positions.

70.    Based upon the foregoing,  it is respectfully submitted that the Court should enter an order (A) declaring (i) Plaintiffs' rights and interests under the LMA Agreements and their Elevation Notices fall within the Safe Harbor Provisions of the Bankruptcy Code and (ii) are not subject to the automatic stay, and (B) compelling LCPI (i) to perform its obligations under the LMA Agreements as a result of the Elevation Notices, and (ii) to execute the necessary transfer certificates and/or assignments and acceptance agreements to elevate Plaintiffs to Lender positions under the Credit Agreements and with respect to the Credit Agreement Interests.

## COUNT V
### (ACTION TO RECOVER A CHATTEL)

71.    Plaintiffs hereby repeat, reiterate and re-allege paragraphs 1 through 70 of the Complaint, all inclusive, as if more fully set forth herein at length.

72.    As a result of Plaintiffs' Elevation Notices, the Credit Agreements Interests are property rights and interests owned by the Plaintiffs, which LCPI has failed to transfer to Plaintiffs and which are being held without right by LCPI.

73.    By its actions or inactions, LCPI has, or has attempted to, exercise control and dominion over the Plaintiffs' entitlements to the respective Credit Agreements Interests, to the exclusion of the Plaintiffs' rights, and have prevented the Plaintiffs from possessing the Credit Agreements Interests and exercising rights thereunder.

74.    It is respectfully requested that the Court enter an order compelling LCPI to turn over, or take such actions necessary to turn over, the Credit Agreements Interests to the

Plaintiffs pursuant to the Terms and Conditions and the respective LMA Agreements.

### COUNT VI
### (ENJOINING SALE OR TRANSFER OF
### CREDIT AGREEMENTS INTERESTS)

75.     Plaintiffs hereby repeat, reiterate and re-allege paragraphs 1 through 74 of the Complaint, all inclusive, as if more fully set forth herein at length.

76.     Based upon the Terms and Conditions and the respective LMA Agreements, the Plaintiffs are the rightful owners of the Credit Agreement Interests, and are entitled to all rights and interests thereunder.

77.     Pursuant to the Elevation Procedures Motion, LCPI desires to eliminate its involvement in prepetition loan syndications and/or sell its positions or participations in such loan syndications.

78.     LCPI's actions, or potential actions, to sell, transfer or eliminate its positions or participations in such loan syndications prior to executing the transfer certificates and/or assignments and acceptance agreements as to Plaintiffs' funded participations or sub-participations will cause immediate harm to Plaintiffs, without an adequate means of recourse.

79.     The balancing of the harms weighs in favor of the Plaintiffs in this matter.

80.     It is respectfully requested that the Court enter an order enjoining LCPI LCPI from selling, eliminating or otherwise transferring the Credit Agreements Interests, or in any way acting to limit the Plaintiffs' rights and benefits flowing from the Credit Agreements Interests as a Lender under the Credit Agreements.

### COUNT VII
### (ACCOUNTING)

81.     Plaintiffs hereby repeat, reiterate and re-allege paragraphs 1 through 80 of the Complaint, all inclusive, as if more fully set forth herein at length.

82.    Based upon the Terms and Conditions and the respective LMA Agreements, the Plaintiffs are the rightful owners of the Credit Agreement Interests, and are entitled to all rights and interests thereunder.

83.    Pursuant to the terms of the LMA Agreements and Credit Agreements, the borrowers thereunder are obligated to make certain payments to LCPI in its position as Lender or Administrative Agent.

84.    As a result of its bankruptcy filing, LCPI has filed to make payment to Plaintiffs under the LMA Agreements and Credit Agreements, despite collection of such required payments by the borrowers thereunder.

85.    Further, as a result of LCPI's actions and the Elevation Procedures Motion, there is a question as to whether LCPI has sold, eliminated or transferred any of its Credit Agreement Interests without notice to Plaintiffs thereof.

86.    It is respectfully requested that the Court enter an order compelling LCPI to provide an accounting under each of the applicable Credit Agreements and LMA Agreements set forth and described more fully herein above.

87.    It is further respectfully requested that the Court enter an order enjoining LCPI from transferring or using in any manner any of the funds it has received from borrowers under the applicable Credit Agreements and LMA Agreements until such time as a determination has been made with respect to the rights to such funds as asserted herein.

**WHEREFORE**, the Plaintiffs hereby request that the Court enter an order in

favor of Plaintiffs as against the Defendant with respect to each cause of action set forth herein,

together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
      June 3, 2009

                KLESTADT & WINTERS, LLP
                Attorneys for the Plaintiffs

                By:      /s/John E. Jureller, Jr.
                        Tracy L. Klestadt
                        John E. Jureller, Jr.
                        292 Madison Avenue, 17th Floor
                        New York, NY 10017
                        Telephone No. (212) 972-3000