# LOAN MARKET ASSOCIATION TERMS AND CONDITIONS FOR FUNDED PARTICIPATIONS (PAR)

1. **APPLICABILITY AND INTERPRETATION**

1.1 **Applicability**

These Terms and Conditions apply to a funded participation (par) in respect of which:

(a) they are expressly incorporated; and

(b) the Trade Date occurs on or after 2 January 2003 and before the date on which they are superseded by revised terms and conditions for funded participations (par).

1.2 **Interpretation**

In these Terms and Conditions words and expressions shall (unless otherwise expressly defined in these Terms and Conditions) have the meaning given to them in the Funded Participation or the Agreed Terms and:

"**Binding Amendment**" means:

(a) any amendment or waiver of any term of any Credit Document or any refinancing of the indebtedness of any Borrower under any Credit Document in each case made in accordance with the terms of the relevant Credit Document; and

(b) any rescheduling, restructuring or reorganisation of the indebtedness of any Borrower made pursuant to any insolvency legislation or other legislation affecting creditors rights generally, in each case in any applicable jurisdiction;

"**Borrower**" means any person identified as such in the Funded Participation and any other person entitled to the benefit of any credit under the Credit Documentation;

"**Business Day**" means a day (other than a Saturday or Sunday) on which banks are open for general business in any financial centre appropriate for the transaction described in the Funded Participation;

"**Commitment**" means, in relation to any Participated Tranche, the aggregate of the Grantor's drawn and undrawn commitment from time to time under that Participated Tranche;

"**Contractual Margin**" means, in respect of any period and any Loan, the rate of interest applicable to such Loan during such period less the interest rate funding basis rate applicable to such Loan during such period;

"**Contractual Rate**" means, in respect of any period and any Loan, the rate of interest applicable to such Loan during such period (without taking account of any additional rate of interest imposed by reason of any default);

"**Guarantor**" means any person who has given a guarantee, indemnity, security interest or other assurance against loss to the Grantor (or any person acting on the Grantor's

behalf) in respect of any obligations of any Borrower to the Grantor in relation to any Participated Tranche or Loan;

"**Interest**" means, unless the context otherwise requires, all interest received by or accruing to the Grantor in respect of any Loan;

"**Loan**" means the principal amount of any borrowing made or to be made by any Borrower from the Grantor under a Participated Tranche (including interest compounded thereunder and treated as principal) or the principal amount outstanding of that borrowing;

"**Obligor**" means any Borrower or Guarantor;

"**Participant's Proportion**" means, in relation to any Participated Tranche, the proportion borne by the relevant Participation Commitment to the relevant Commitment;

"**Participated Tranche**" means any Tranche in respect of which the Participant is granted a participation under the Funded Participation, as set out in the Schedule;

"**Participation**" means the participation in the funding of the Loans accepted by the Participant under the Funded Participation;

"**Participation Commitment**" means, in relation to any Participated Tranche, the amount specified as such in the Schedule less an amount equal to the Participant's Proportion of any amount of the Commitment under that Participated Tranche cancelled or reduced under the Credit Agreement;

"**Participation Rate**" means, in respect of any period and any Loan, the sum of (a) the relevant interest rate funding basis rate applicable to such Loan and such period and (b) the Traded Margin;

"**Party**" means a party to the Funded Participation;

"**Receiving Account**" means the account of a Party designated as its Receiving Account as specified in the Schedule;

"**Settlement Amount**" means the amount to be paid by the Participant to the Grantor on the Settlement Date as specified in the Settlement Letter adjusted, if applicable, in accordance with the Agreed Terms;

"**Settlement Date**" means the date specified as such in the Schedule;

"**Settlement Letter**" means the letter agreement between the Parties relating to the Funded Participation and containing, among other things, details of the Settlement Amount and Traded Margin(s);

"**Traded Interest Proportion**" means, in respect of any period and any Loan, the proportion borne by the Participation Rate to the Contractual Rate applicable to such Loan and such period;

"**Traded Margin**" means the rate specified as such in the Settlement Letter (or, if none the Contractual Margin;

"**Traded Margin Proportion**" means, in respect of any period and any Participated Tranche, the proportion borne by the Traded Margin to the Contractual Margin applicable to such Tranche and such period; and

"**Tranche**" means any Tranche or facility granted to the Borrowers under the Credit Agreement.

1.3 **Construction**

(a) In the Funded Participation and these Terms and Conditions unless the contrary intention appears, a reference to:

   (i) a Clause is a reference to a clause of these Terms and Conditions;

   (ii) the Schedule is a reference to the schedule to the Funded Participation; and

   (iii) a "**Party**" or any other person includes its successors in title, permitted assigns and permitted transferees.

(b) Headings are for ease of reference only.

(c) References to any document shall be references to the same as amended, varied, supplemented, replaced and restated in any manner from time to time.

1.4 **Agreed Terms prevail**

If there is any inconsistency between these Terms and Conditions and the Agreed Terms, the Agreed Terms shall prevail.

1.5 **Third Party Rights**

A person who is not a Party has no rights under the Contracts (Rights of Third Parties) Act 1999 to enforce or to enjoy the benefit of any term of the Funded Participation.

2. **PARTICIPANT'S PAYMENT OBLIGATIONS**

1.1 **Settlement Amount**

The Participant shall pay to the Grantor on the Settlement Date, the Settlement Amount to enable the Grantor to fund all, or as the case may be, part of the Loans.

1.2 **Sums due under Credit Documentation**

If at any time on or after the Settlement Date a sum falls due from the Grantor under the Credit Documentation and the sum is, in the Grantor's reasonable opinion, attributable in whole or in part to any Loan or Participated Tranche, then the Participant shall pay to the Grantor an amount equal to the relevant Participant's Proportion of such sum.

1.3 **Payment of sums due**

The Participant shall make each payment required under Clause 1.2 (*Sums due under Credit Documentation*) in the currency and funds and in the place and time at which the Grantor is required to make the payment under the Credit Documentation.

3.  **PAYMENTS**

1.1 **Receipts**

The Grantor is entitled to receive, recover and retain all principal, interest and other money payable under the Credit Documentation in relation to each Participated Tranche.

1.2 **Payments**

Subject to compliance by the Participant with its payment obligations under the Funded Participation, on and after the Settlement Date the Grantor shall, upon applying any amount received by it in respect of any Loan or Commitment (whether by way of actual receipt, the exercise of any right of set-off or otherwise), pay to the Participant without material delay:

(a) if that amount is applied in respect of the principal of a Loan, an amount equal to the relevant Participant's Proportion of the amount so applied by the Grantor;

(a) if that amount is applied in satisfaction of Interest accruing on a Loan (or default interest accruing on a Loan, on any Interest or on any other amount in respect of which the Participant has made a payment under Clause 2 (*Participant's Payment Obligations*)) in respect of any period from and including the Settlement Date (whether or not that period commenced on or before the Settlement Date) or after the Settlement Date, an amount equal to the relevant Participant's Proportion of the Traded Interest Proportion of the amount so applied by the Grantor; and

(c) if that amount is applied in respect of any commission, fees or any other amount relating to any Loan or any Commitment in respect of any period either from and including the Settlement Date (whether or not that period commenced before or after the Settlement Date or after the Settlement Date) (except any underwriting, arrangement or other non-recurring fees), an amount equal to the relevant Participant's Proportion of the Traded Margin Proportion of the amount so applied by the Grantor.

1.3 **Non-attributable sums**

If any sum which is received or recovered under the Credit Documentation is not attributable to any particular amount due under the Credit Documentation, that sum will be applied (after payment of any expenses incurred in its collection) by the Grantor towards such obligations of the relevant Obligor as it may determine.

1.4 **No reinvestment**

Subject to compliance by the Participant with its payment obligations under the Funded Participation, on and after the Settlement Date the Grantor is not entitled to reinvest any amount received by it in respect of any Loan or Commitment, except for investments in cash or cash equivalents (where interest earned on such investments is passed to the Participant) during the short settlement period, if any, from the collection date of such amounts to the date of required remittance to the Participant.

4.   **PAYMENTS ADMINISTRATION**

1.1   **Place**

All payments or deposits by either Party to, or with, the other under the Funded Participation shall be made to the Receiving Account of that other Party. Each Party may designate a different account as its Receiving Account for payment by giving the other not less than five Business Days notice before the due date for payment.

1.2   **Funds and currency**

(a)   Subject to paragraph (b) below, payments under the Funded Participation shall be made in the currency in which the amount is denominated for value on the due date at such times and in such funds as are customary at the time for settlement of transactions in that currency in the place of payment.

(b)   Where the Grantor's obligation to make a payment under the Funded Participation arises from receipt or recovery of an amount pursuant to the Credit Documentation, the Grantor shall make the payment in the currency and funds in which those monies were received or recovered and, if that currency is not the currency of the country where the designated Receiving Account of the Participant is located, it shall be made to the account of the Participant in the principal financial centre of the country of that currency specified by the Participant.

1.3   **Set-off and counterclaim**

Subject to Clause 10 (*Set-Off*), all payments by a Party shall be made without set-off or counterclaim.

1.4   **Withholding**

(a)   All payments by the Grantor under the Funded Participation shall be made net of any deduction or withholding required to be made from such payments by any law, regulation or practice. If any such deduction or withholding is made, the Participant shall bear the risk of such deduction or withholding and shall be deemed to have received the amount that it would have received if such deduction or withholding had not been made.

(b)   All payments by the Participant under the Funded Participation shall be made free and clear of any deduction or withholding unless such deduction or withholding is required to be made by any law, regulation or practice. If any such deduction or withholding is made or is required to be made the Participant shall increase the amount to be paid to the Grantor to ensure that the Grantor receives and retains a sum equal to the sum which it would have received and so retained had no such deduction or withholding been made or required to be made.

(b)   The Grantor and the Participant shall use their reasonable endeavours to avoid any obligation to make any deduction or withholding as is referred to in paragraphs (a) and (b) of this Clause 1.1.

1.5   **Failure to remit**

(a)   The Grantor shall not be:

(i) responsible for any loss or liability arising out of its failure, or the failure of its relevant branch, owing to causes outside its control (such as, but not limited to, the imposition of foreign exchange restrictions) to remit to the Participant any amount due to it under the Funded Participation; or

(j) except as otherwise provided in paragraph (b) below or in Clause 1.6 (*Default Interest*), liable to remit to the Participant any amount greater than the relevant Participant's Proportion of any amount it receives from any Obligor in respect of any Participated Tranche or Loan.

(c) If the Grantor fails to make a payment to the Participant on its due date for the reasons set out in sub-paragraph (i) of paragraph (a) above, interest shall accrue (both before and after judgment) on the overdue amount from the due date up to the date of actual payment from day to day at the rate (as determined by the Participant) which is being offered by leading banks in the relevant interbank market for overnight deposits in the currency of and for an amount equal to the overdue amount. Interest accruing under this Clause 1.5 shall be payable by the Grantor at the end of each day and, for the purposes of this Clause 1.5, shall constitute part of the overdue amount to the extent it is not paid.

1.6 **Default interest**

If either party (the "**payer**") fails to pay any amount payable by it under the Funded Participation to the other party (the "**payee**") on its due date interest shall accrue (both before and after judgment) on the overdue amount from the due date up to the date of actual payment from day to day at a rate which is 2% per annum over the rate (as determined by the payee) which is being offered by leading banks in the relevant interbank market for overnight deposits in the currency of and for an amount equal to the overdue amount. Interest accruing under this Clause 1.6 shall be payable by the payer at the end of each day and, for the purposes of this Clause 1.6, shall constitute part of the overdue amount to the extent it is not so paid.

1.7 **Participation Commitment**

Subject to compliance by the Participant with its obligations under the Funded Participation, on and after the Settlement Date the Grantor shall not:

(a) sell, transfer or otherwise dispose of; or

(b) create any mortgage, charge, pledge, lien or other security interest in respect of,

the relevant Participation Commitment other than in favour of the Participant.

5. **INFORMATION**

(a) To the extent that it is lawfully able to do so without breaching any duty of confidentiality or other obligation owed to any person, the Grantor shall promptly provide the Participant with copies of all communications and documents it receives under the Credit Documentation.

(b)     Paragraph (a) of this Clause 5 shall not apply if the Participant gives notice to the Grantor that it does not wish to receive copies of all communications and documents received by the Grantor under the Credit Documentation.

(c)     Any notice given by the Participant under paragraph (b) above may be revoked by the Participant at any time. If such notice is revoked, the provisions of paragraph (a) above will apply from the date on which the Grantor receives notice of the revocation.

## 6. STATUS OF PARTICIPATION

### 1.1 Status of Participation

(a)     The Grantor does not transfer or assign any rights or obligations under the Credit Documentation and the Participant will have no proprietary interest in the benefit of the Credit Documentation or in any monies received by the Grantor under or in relation to the Credit Documentation.

(b)     The relationship between the Grantor and the Participant is that of debtor and creditor with the right of the Participant to receive monies from the Grantor restricted to the extent of an amount equal to the relevant portion of any monies received by the Grantor from any Obligor.

(c)     The Participant shall not be subrogated to or substituted in respect of the Grantor's claims by virtue of any payment under the Funded Participation and the Participant shall have no direct contractual relationship with or rights against any Obligor.

(d)     Nothing in the Funded Participation constitutes the Grantor as agent, fiduciary or trustee for the Participant.

(e)     Nothing in the Funded Participation shall place the Grantor under an obligation to enquire as to the occurrence or otherwise of an event of default under the Credit Documentation.

(f)     Nothing in the Funded Participation shall place the Grantor under an obligation to exercise any rights of set-off it may have against any Obligor.

(g)     The Grantor's obligations under the Funded Participation shall be subject to its obligations under the Credit Documentation.

### 1.2 Credit Documentation

(a)     Subject to paragraph (b) below the Grantor may, without responsibility to the Participant:

(i)     exercise or refrain from exercising any or all of its rights, powers and discretions arising under or in connection with the Credit Documentation;

(ii)     agree to any variation or waiver of the terms of the Credit Documentation; and

(iii) perform any other acts under the Credit Documentation as it in its discretion sees fit.

(b) Where the Funded Participation relates to all of the Grantor's commitment and outstandings under the Credit Agreement, the Grantor shall not, without the prior written consent of the Participant, take such action as would result in:

(i) any variation to the date for payment of, or any variation to an amount or a change in the currency of, any Loan or Participated Tranche;

(ii) a reduction of any amount in respect of Interest or any commission or fees of a recurring nature relating to any Loan or Commitment payable by any Borrower;

(iii) the release of any security, guarantee or collateral relating to any Loan or Participated Tranche; or

(iv) any amendment to or waiver of any provision of the Credit Documentation where such amendment or waiver requires the consent of all providers of credit under the Credit Documentation.

7. **CONFIRMATION OF RECEIPTS**

(a) Where the obligation of the Grantor to make a payment to the Participant under the Funded Participation arises as a result of its having received an amount, the Grantor is not obliged to make that payment until the Grantor has established that it has actually received the appropriate amount.

(b) If the Grantor makes a payment to the Participant and it proves to be the case that the Grantor had not actually received all or part of the amount on which that payment was conditional, the Participant shall forthwith on demand of the Grantor refund the amount paid to the Participant or the relevant portion of that amount together with interest on that amount from the date of payment to the date of refund, calculated at a rate reasonably determined by the Grantor to reflect its costs of funds.

8. **REFUNDS**

(a) If the Grantor applies any amount in or towards satisfaction of an Obligor's obligations under the Credit Documentation and the Grantor is, as a result of the application or any payment to the Grantor giving rise to the application, obliged by any law, rule or regulation to make any payment to any person, then the Participant shall, upon demand by the Grantor, repay to the Grantor a corresponding portion of any amount paid to the Participant as a result of the application.

(b) If under any pro rata sharing, loss-sharing or similar clause in the Credit Documentation, the Grantor is obliged:

(i) to pay a sum to other lenders or their agent under the Credit Documentation; or

  (ii) to acquire an interest in any sum owing to any other lender under the Credit Documentation; or

  (iii) otherwise to share any receipts or recoveries by the Grantor under the Credit Documentation,

then the Grantor shall be deemed for the purposes of the Funded Participation not to have received any sum from an Obligor to the extent of that payment, interest acquired or sharing. Any interest acquired shall be deemed to be part of the relevant Loan, if applicable.

9. **BINDING AMENDMENTS**

1.1 **Risk**

The Participant will bear the risk of any Binding Amendment in relation to the Participation.

1.2 **Blocked payments**

 (a) Subject to paragraph (b) below, the Grantor shall not be obliged to make any payment to the Participant under the Funded Participation in respect of:

  (i) any sum which is paid into a blocked account or is paid in non-transferable or non-convertible currency until that impediment is removed;

  (ii) any sum which is required to be used for a specific purpose pursuant to a Binding Amendment; or

  (i) any financial or other instrument issued to the Grantor, (including any instrument issued pursuant to Clause 1.3 (*Other instruments*)) in either case in satisfaction or purported satisfaction of any obligation of an Obligor to make any payment with respect to any Participated Tranche or Loan (which payment, if made to the Grantor in the manner provided for in the Credit Documentation, would have given rise to a liability on the part of the Grantor to make a corresponding payment to the Participant under the Funded Participation) unless and until such instrument is disposed of, redeemed or otherwise realised for cash and where the proceeds of realisation are not themselves subject to this paragraph (a).

 (b) The Grantor will endeavour (at the expense of the Participant) to give the Participant the equivalent pro rata benefit of any sum (including, without limitation, any amounts received in cash) or instrument referred to in paragraph (a) above (by way of assignment or otherwise) to the extent that the Grantor is able to do so and to the extent that the same is, in the Grantor's reasonable opinion, attributable to the Participant's Participation in relation to any Participated Tranche or Loan.

1.3 **Other instruments**

The Grantor may, in connection with any Binding Amendment, apply for or accept any note, debenture or other instrument whether debt, equity or otherwise issued or proposed

to be issued by an Obligor or any other person in respect of any Participated Tranche or Loan or any part thereof, or any Interest, commission or fees payable in respect of any Participated Tranche or Loan or any part thereof.

1.4 **Agreements**

(d) Subject to paragraph (b) below and to the provisions of Clause 1.2 (*Credit Documentation*), the Grantor may participate in any agreement in connection with a Binding Amendment and which relates to any principal of, Interest on or fees in respect of, any Participated Tranche or Loan.

(b) The Grantor shall give to the Participant the benefit of any agreement referred to in paragraph (a) above on the same terms (with any necessary amendments to reflect the nature of that agreement) as the Funded Participation to the extent that payments received and applied by the Grantor under the agreement are in the Grantor's reasonable opinion attributable to the Participant's Participation in relation to any Participated Tranche or Loan.

1.5 **New money**

(a) If, in connection with any Binding Amendment, the Grantor agrees to increase its exposure (whether by way of additional advances or otherwise), the Grantor shall not be obliged to account to the Participant under the Funded Participation until that increased exposure has been paid and satisfied unless:

(i) the Participant participates in the increased exposure on the terms of the Funded Participation; or

(ii) the terms on which the Grantor so agrees to increase its exposure provide otherwise; or

(iii) any sums received by the Grantor following the increased exposure are, in the Grantor's reasonable opinion, attributable to any Loan or Participated Tranche.

(b) Notwithstanding any other provision of these Terms and Conditions the Participant shall have no obligation to participate in any increased exposure whether in connection with any Binding Amendment or otherwise.

10. **SET-OFF**

Either Party may (but is not obliged to) set off any amount due and payable by the other Party under the Funded Participation against any such amounts due and payable by it to the other Party under the Funded Participation. The Party exercising its rights under this provision may effect such currency exchanges as it considers necessary to implement the set off.

11. **EXPENSES AND INDEMNITY**

(e) For the purposes of this Clause 11 (*Expenses and Indemnity*):

"**Participants Overall Proportion**" means the proportion borne by the aggregate of the Participation Commitments in respect of all Participated

Tranches to the aggregate of the Grantor's drawn and undrawn commitment from time to time under the Credit Agreement; and

"**Relevant Costs and Expenses**" means costs or expenses which the Grantor incurs in connection with the Credit Documentation (other than any costs or expenses in connection with the preparation and negotiation of the Credit Documentation and other than the Grantor's normal administrative costs and expenses prior to the occurrence of an event of default under the Credit Documentation) which are not recovered from the relevant Obligor on demand.

(b) Subject to paragraph (c) below, the Participant shall forthwith on demand pay to the Grantor an amount equal to the Participant's Overall Proportion of all Relevant Costs and Expenses.

(c) The Grantor shall pay to the Participant the Participant's Overall Proportion of any amounts subsequently recovered by the Grantor in respect of any Relevant Costs and Expenses.

(d) The Grantor shall, as soon as practicable after a request by the Participant, provide to the Participant reasonably detailed information regarding any Relevant Costs and Expenses incurred by the Grantor.

(e) Each Party (the "**Indemnifying Party**") shall, forthwith on demand, indemnify the other Party against any loss or liability (other than any loss or liability resulting from the gross negligence or wilful misconduct of the other Party) which the other Party incurs as a consequence of any breach by the Indemnifying Party of its obligations under this Funded Participation.

12. **ASSIGNMENT AND TRANSFER**

1.1 **Assignment and Transfer**
Subject to this Clause 12:

(a) each Party may assign its rights; and

(b) the Participant may transfer by novation its rights and obligations,

under this Funded Participation to a third party.

1.2 **Conditions of assignment or transfer**
(a) The consent of the other Party is required for an assignment or transfer.

(b) The consent of the Grantor to a proposed assignment or transfer by the Participant must not be unreasonably withheld or delayed. The Participant acknowledges that, in determining whether to grant or refuse consent to a proposed transfer of rights and obligations, a relevant factor may be the creditworthiness of the proposed Transferee.

1.3 **Procedure for transfer**
(a) The Participant may transfer its rights and obligations under the Funded Participation to a third party (a "**Transferee**") by delivery to the Grantor of a

transfer certificate ("**Transfer Certificate**") in the form set out in the Annex to this Funded Participation duly completed and signed by the Participant and the Transferee.

(b) With effect from the date of receipt of the Transfer Certificate by the Grantor, or, if later, the date specified in the Transfer Certificate:-

(i) the Grantor and the Participant shall be released from further obligations towards one another under the Funded Participation and their respective rights against one another shall be cancelled (being the "**Discharged Rights and Obligations**");

(ii) the Grantor and the Transferee shall assume obligations towards one another and acquire rights against one another which differ from the Discharged Rights and Obligations only insofar as the Grantor and the Transferee have assumed and/or acquired the same in place of the Grantor and the Participant; and

(iii) the Transferee shall become a party to the Funded Participation as the "**Participant**".

1.4 **Limitation of responsibility of Participant**
Nothing in any Transaction Document obliges the Participant to:

(f) accept a re-transfer from the Transferee of any of the rights and obligations assigned or transferred under this Clause 12 (*Assignment and Transfer*); or

(b) support any losses directly or indirectly incurred by the Transferee by reason of the non-performance by any Obligor of its obligations under the Credit Documents or otherwise.

13. **TERMINATION**

(a) If the Participant breaches any of its material obligations under the Funded Participation, the Grantor shall have the right to cancel the Funded Participation by paying to the Participant an amount equal to the relevant Participant's Proportion of each Loan to the extent then funded by the Participant.

(b) Once a payment has been made in accordance with paragraph (a) above, all rights and obligations of each Party under the Funded Participation (other than accrued claims and liabilities including, without limitation, any rights of the Participant in respect of accrued Interest, commission and fees) shall be cancelled and shall have no further force or effect.

14. **NOTICES**

1.1 **Communications in writing**
Any communications to be made under or in connection with the Funded Participation shall be made in writing and, unless otherwise stated, may be made by fax, letter or telex.

1.2 **Addresses**

The address, fax number and telex number (and the department or officer, if any for whose attention the communication is to be made) of each Party for any communication or document to be made under or in connection with the Funded Participation is that set out in the Schedule or any substitute address, fax number, telex number or department or office as the Party may notify to the other by not less than five Business Days notice.

1.3 **Delivery**

(a) Any communication or document made or delivered by one person to another in connection with the Funded Participation will only be effective:

(i) if by fax, when received in legible form; or

(ii) if by letter, when delivered personally or on actual receipt;

(iii) if by telex, when despatched, but only if, at the time of transmission, the correct answerback appears at the start and at the end of the sender's copy of the notice,

and, if a particular department or officer is specified as part of its address details provided under Clause 1.1 (*Addresses*), if addressed to that department or officer.

(g) A notice given in accordance with this Clause 14 (*Notices*) which is received on a non-Business Day or after business hours in the place of receipt will only be deemed to be given on the next Business Day in that place.

1.4 **Electronic communication**

(a) Subject to paragraph (b) below, any communication to be made between the Parties under or in connection with the Funded Participation may be made by electronic mail or other electronic means unless and until either Party notifies the other to the contrary.

(b) Each Party shall notify the other of:

(i) their electronic mail address and/or any other information required to enable the sending and receipt of information by that means: and

(ii) any change to their address or any other such information supplied by them.

(c) Any electronic communication made between the Parties will be effective only when actually received in readable form.

15. **CONFIDENTIALITY**

The Participant undertakes to keep confidential all information it receives from the Grantor under the Funded Participation or otherwise to the extent required by the Credit Documentation.

16. **GOVERNING LAW AND JURISDICTION**

1.1 **Governing Law**

The Funded Participation is governed by English Law.

1.2 **Jurisdiction**

The parties submit to the non-exclusive jurisdiction of the English courts.

1.3 **Service of Process**

Each Party irrevocably appoints the person described as process agent (if any) specified in the Agreed Terms to receive on its behalf service of any action, suit or proceedings in connection with the Funded Participation. If any person appointed as process agent ceases to act for any reason the appointing Party shall notify the other Party and shall promptly appoint another person incorporated within England and Wales to act as its process agent.

17. **Elevation.**

(a)    Subject to the terms and provisions of the Credit Documentation, upon the request of either Party, each Party hereto shall use commercially reasonable efforts to, as soon as reasonably practicable, cause the Participant to become a Lender under the Credit Documentation with respect to the Loans (an "Elevation") and take such action (including the execution and delivery of a transfer certificate or assignment and acceptance agreement, as applicable) as shall be mutually agreeable in connection therewith and in accordance with the terms and conditions of the Credit Documentation and consistent with the terms of this Funded Participation. The Grantor and the Participant shall each pay one-half of any transfer fees payable in connection with such Elevation.

(b)    On the date of any Elevation, the Grantor shall represent to the Participant that, immediately prior to the occurrence of the Elevation, it owns beneficially all the Purchased Assets in respect of which the Elevation is to occur free from any rights of set-off in favor of any Obligor or any other party, or any lien, security interest or other encumbrance, any purchase or option agreement or arrangement, or any agreement to create or effect any of the same.

## ANNEX

## FORM OF TRANSFER CERTIFICATE

To:       [       ] the Grantor

From:    [The Participant] (the "**Participant**") and [The Transferee] (the "**Transferee**")

Dated:

**Funded Participation Agreement**
**dated [       ] (the "Funded Participation")**

1.  We refer to the Funded Participation. This is a Transfer Certificate. Terms defined in the Funded Participation have the same meaning in this Transfer Certificate unless given a different meaning in this Transfer Certificate.

1.  We refer to Clause 1.3 (*Procedure for transfer*):

    (a)  The Participant and the Transferee agree to the Participant transferring to the Transferee by novation all of the Participant's rights and obligations under the Funded Participation in accordance with Clause 1.3 (*Procedure for transfer*).

    (b)  The proposed Transfer Date is [   ].

2.  The Transferee expressly acknowledges the limitations on the Participant's obligations set out in Clause 1.4 (*Limitation of responsibility of Participant*).

4.  This Transfer Certificate may be executed in any number of counterparts and this has the same effect as if the signatures on the counterparts were on a single copy of this Transfer Certificate.

5.  This Transfer Certificate is governed by English law.

## THE SCHEDULE

### Rights and obligations to be transferred

*[insert relevant details]*
*[Address, fax number, e-mail address if applicable and attention details for notices and receiving account details for payments.]*

[Participant]                                              [Transferee]

By:                                                            By: