Hearing Date: June 24, 2009 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: June 21, 2009

LEVENE, NEALE, BENDER, RANKIN & BRILL, L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
David L. Neale (DN 1948)

Attorneys for Lessor and Sublessor,
Kalaimoku-Kuhio Development Corp.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                                :
In re                                           :    Chapter 11 Case No.
                                                :
LEHMAN BROTHERS HOLDINGS INC., *et al*    :    08-13555 (JMP)
                                                :
                    Debtors.                    :    (Jointly Administered)
                                                :
                                                :
----------------------------------------------------------------x

### MOTION FOR AN ORDER (A) COMPELLING PAYMENT OF POST-PETITION RENT AND CHARGES; (B) GRANTING RELIEF FROM THE AUTOMATIC STAY; AND (C) COMPELLING ASSUMPTION OR REJECTION OF LEASES

Pursuant to sections 362(d), 363(e), 365(d)(2) and 365(d)(3) of Title 11 of United States Code (the "Bankruptcy Code") and Rules 4001(a) and 6006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Kalaimoku-Kuhio Development Corp. (the "Landlord") hereby moves for entry of an order: (1) compelling payment of post-petition rent and charges immediately upon the entry of an order granting this Motion, (2) prospectively vacating the automatic stay, effective on the 3rd business day following default under the Leases (as defined herein), to exercise all of its rights and remedies under: (a) the "Amended

and Restated Ground Lease" (the "Ground Lease"), pursuant to which LB 2080 Kalakaua Owners LLC, a debtor and debtor in possession in the above-captioned, jointly-administrated bankruptcy cases (the "Debtor") is the lessee, and (b) the "Amended and Restated Sublease" (the "Ground Sublease," and with the Ground Lease, collectively referred to herein as the "Leases") pursuant to which the Debtor is the sublessee, and under all applicable laws, in the event the Debtor does not timely perform its post-petition obligations under the Leases, and (3) compelling assumption or rejection of the Leases.

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## PRELIMINARY STATEMENT

2. Pursuant to the Leases, the Debtor occupies a 4-story retail shopping center known as King Kalakaua Plaza (the "Shopping Center") located in Honolulu, Hawaii. Prior to its bankruptcy filing, most of the tenants vacated the shopping center. The only remaining tenant is Niketown, which announced in March 2009 that it would close in May 2009. To Landlord's knowledge, Niketown has not yet closed, but Landlord has not been notified by the Debtor that the closing will not occur imminently. In spite of its obligations under section 365(d)(3) of the Bankruptcy Code, the Debtor has failed to pay rent and charges under the Leases arising from and after its April 23, 2009 filing date, in the approximate sum of $612,000. Accordingly, Landlord seeks entry of order (1) compelling the Debtor to pay immediately upon the entry of an order granting this Motion, all accrued, but unpaid, post-petition rent and charges arising under the Leases, and to timely perform all other and future

post-petition obligations under the Leases, pending its decision to assume or reject the Leases, all as required by section 365(d)(3) of the Bankruptcy Code, (2) prospectively vacating the automatic stay, effective on the 3rd business day following default under the Leases, to permit the Landlord to exercise all of its rights and remedies under the Leases and applicable laws in the event the Debtor does not immediately pay all accrued, but unpaid post-petition rent and charges due, or otherwise timely perform all other and future post-petition obligations under the Leases, and (3) compelling immediate assumption or rejection of the Leases.

## BACKGROUND

3. On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings, Inc. ("LBI") and various affiliated entities filed voluntary petitions under Chapter 11 of the Bankruptcy Code and have thereafter continued to operate their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

4. Specifically, on April 23, 2009, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code and has thereafter continued to operate its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

5. On May 13, 2009, this Court entered an order directing the joint administration of the Debtor's bankruptcy case with LBI's and various related entities' bankruptcy cases.

6. On May 29, 2009, the Debtor filed its Schedules of Assets and Liabilities ("Schedules"), and Statement of Financial Affairs ("SOFA") with the Court. The Schedules identify total unsecured claims of approximately $31,512,590.40. However, this total includes two claims allegedly owed to an insider, PAMI, LLC, in the amounts of $26,144,444 and $4,775,657, for a total of $30,920,101. Excluding these alleged insider claims, the total non-insider unsecured claims are approximately $592,479.40, of which the sum of $398,411.39 is

admitted to be owing to the Landlord. Thus, based on the information contained in the Debtor's Schedules, Landlord's scheduled claim is the largest unsecured claim in the case, representing approximately 67% of the total non-insider unsecured claims.

## THE LEASES AND UNPAID POST-PETITION OBLIGATIONS

7.  Landlord and King Kalakaua Owners ("KKO") are parties to the Leases. KKO was the original developer of the shopping center situated at the Premises and had obtained construction financing from LBI, which loans were secured by the shopping center and the Leases. As a result of default by KKO, LBI conducted a foreclosure of its interests in the shopping center and the Leases through the Debtor - a special purpose entity created by LBI for the purpose of assigning to the Debtor its rights and interests in the shopping center and Leases and conducting the foreclosure. As a result of the foreclosure, the Debtor became owner of KKO's interest and rights in and to the shopping center and Leases. By letter dated November 9, 2006, the Debtor confirmed the foreclosure which resulted in the Debtor obtaining KKO's interests under the Leases.

8.  According to the Schedules, the shopping center consists of 77,483 sq. ft. of Class A space. However, the shopping center is currently empty as all prior tenants have vacated, and there has been no indication by the Debtor to the Landlord that replacement tenants have been located. The Schedules further reveal that, as of its bankruptcy filing date, the Debtor had approximately $63,000 in its bank accounts, and accounts receivable totaling approximately $80,000, mostly from past or current tenants, such as Nike and Banana Republic.

9.  The Ground Lease is dated July 1, 2003. The Ground Lease is a 50 year lease with an expiration date of March 31, 2046, with two successive options to extend the term for

4

period of 10 years. On April 1, 2009, the 14th lease year commenced. Under the Ground Lease, the base rent for 11th through 30th lease years is $2,466,962.90 per year, subject to certain adjustments on the 16th, 21st and 26th lease years based on the rent charged to space tenants. In addition, the Debtor is required to pay percentage rents equal to 33 and 1/3% of the "Net Available Cash" for the lease year, which is defined as meaning the amount by which "Available Cash" exceeds $500,000. "Available Cash" is further defined in the Leases. The base rent is payable in advance, on or before the first day of each calendar month. A copy of the relevant portions of the Ground Lease is attached hereto as **Exhibit "A."**[1] In addition to base and percentage rents, the Debtor (as lessee) is responsible for the payment of real property taxes and other liabilities, all as set forth in the Ground Lease.

10. The Ground Sublease is dated July 1, 2003, and has the same term as the Ground Lease. Like the Ground Lease, on April 1, 2009, the 14th lease year commenced. Under the Ground Sublease, the base rent is $309,024 per year for the 11th through 15th lease years, $370,828.80 per year for 16th through 20th lease years, $444,994.56 per year for 21st through 25th lease years, and $533,993.52 per year for 26th through 30th lease years. In addition, the Debtor is required to pay percentage rents equal to 7% of the "Net Available Cash" for the lease year, which is defined as meaning the amount by which "Available Cash" exceeds $2,175,000. "Available Cash" is further defined in the Ground Sublease. The base rent is payable in advance, on or before the first day of each calendar month. A copy of the relevant portions of the Ground Sublease is attached hereto as **Exhibit "B."** In addition to base and percentage rents, the Debtor (as sublessee) is responsible for the payment of real property taxes and other liabilities, all as set forth in the Ground Sublease.

---

[1] Complete copies of the Leases are available upon reasonable request, and the Landlord will bring complete copies of the Leases to the hearing on the Motion.

11. Pre-petition, the Debtor defaulted under the Leases by failing to pay rent, charges and other obligations due under the Leases, such as real property taxes due in February 2009 and the rent due for April 2009. On February 27, 2009, the Landlord sent to the Debtor a Notice of Non-Payment, and on April 9, 2009, the Landlord sent to the Debtor a Notice of Termination.[2] The Landlord's pre-petition claim is approximately $400,000.

12. Post-petition, with extremely limited cash flowing from the single tenant remaining at the shopping center, and barely any money in its bank accounts, the Debtor has failed to pay the rent and other charges due under the Leases as detailed in **Exhibit "C"** attached hereto (collectively, the "Post-Petition Rent"), including rent and charges for the post-petition period of April 2009, May 2009 and June 2009. As previously noted, the single remaining tenant at the shopping center has publicly announced the imminent closure of its store at the shopping center.

13. The nonpayment of Post-Petition Rent has resulted in economic hardship and difficulties for the Landlord, which must continue to service its independent loan obligations to its lender and assume the responsibility for paying the real property tax relative to the Premises. In addition, as the lessee and sublessor on the Ground Sublease, the Landlord must continue to pay rent to a third party ground lessor.

14. Shortly after the filing of the Debtor's case, counsel for the Landlord sent to counsel for the Debtor a letter, as well as leaving numerous voice mails and sending numerous electronic mails regarding the Debtor's failure to pay post-petition rent when due. Counsel for the Debtor responded once by telephone to indicate that he would follow up with his client.

---

[2] Under Section 6.08 of the Leases, there is a 15 day notice of termination provision. The notice was given on April 9, 2009, and the Debtor filed its case on April 23, 2009.

6

After such communication, no further information has been provided despite requests for status, thus necessitating the filing of this Motion.

## ARGUMENT

### A. *The Debtor Is Required To Immediately Pay Post-Petition Rent Due To The Landlord*

15. The Bankruptcy Code specifically protects non-residential real property landlords from forced servitude. The relevant portion of section 365(d)(3) of the Bankruptcy Code provides:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3). A debtor's obligation to perform under a non-residential real property lease is unequivocal and mandatory, not permissive. *See* In re New Almacs, Inc., 196 B.R. 244, 248 (Bankr. N.D.N.Y. 1996). Put simply, a landlord is not required to perform post-petition services absent current payment for such services as required by 11 U.S.C. § 365(d)(3). In re Warehouse Club, Inc., 184 B.R. 316, 317 (Bank. N.D. Ill. 1995).

16. The primary goal of 11 U.S.C. § 365(d)(3) is to protect landlords, and prevent them from becoming involuntary post-petition lenders to a debtor's estate. In re Handy Andy Home Imp. Centers, Inc., 196 B.R. 87, 95 (Bankr. N.D. Ill. 1996). The legislative history of 11 U.S.C. § 365(d)(3) likewise demonstrates that its purpose is to ensure that landlords receive immediate payment for lease obligations, and prevent the injustice of landlords being forced to provide uncompensated services to debtors. *See* In re Montgomery Ward Holding Corp., 268 F.3d 205, 211 (3rd Cir. 2001). The same legislative history also demonstrates that § 365(d)(3) is intended "to relieve the burden placed on nonresidential real property lessors during the

7

period between a tenant's bankruptcy petition and assumption or rejection of a lease." *See* Omni Partners L.P. v. Pudgies Dev. Of NY, Inc. (In re Pudgie's Dev. Of NY, Inc.), 239 B.R. 688, 692 (S.D.N.Y. 1999), quoting 130 Cong. Rec. S8894-95 (daily ed. June 29, 1994) (statements of Sen. Hatch). In short, Congress and the courts have determined that a landlord should receive the benefit of its bargain to compensate a landlord for being compelled by the Bankruptcy Code to continue providing a debtor with critical service. In re Travel 2000, Inc., 264 B.R. 444, 448 (Bankr. W.D. Mich. 2001).

17. This heightened priority exists due to the fact that the Debtor's obligations under § 365(d)(3) are independent of, and not subject to, the requirements for the allowance of administrative expenses pursuant to § 503. *See* In re Rare Coin Galleries of America, Inc., 72 B.R. 415, 416 (Bankr. D. Mass 1987); *see also* In re Dry Dock & Repair Corp., 62 B.R. 879, 882-83 (Bankr. E.D.N.Y. 1986). Courts have upheld the requirement of immediate payment and the landlord's right to retain such payments even when faced with an estate's later insolvency. *See* In re Pudgie's Dev. Of NY, Inc., 223 B.R. 421, 426 (Bankr. S.D.N.Y. 1998) (rent paid to landlord not subject to recapture even if estate is later administratively insolvent); *see also* In re Brennick, 178 B.R. 305 (Bankr. D. Mass 1995); In re Telesphere Communications, Inc., 148 B.R. 525, 529 (Bankr. N.D. Ill. 1992).

18. Here, the Debtor has failed to pay the Post-Petition Rent as described in Paragraph 12 above and **Exhibit "C"** attached hereto. Therefore, the Landlord requests that the Court compel the Debtor to pay, immediately upon the entry of an order approving this Motion, the Post-Petition Rent in the amount of at least $612,108.19 and to timely perform all of its other and future obligations under the Leases pending assumption or rejection of the Leases.

**B.     *Pursuant To 11 U.S.C. § 362(d), Granting The Landlord Relief From The Automatic Stay Is Warranted***

19.     Under section 362(d), the Court may lift the automatic stay:

> (1)     for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2)     with respect to a stay of an act against property under subsection (1), if (A) the debtors does not have an equity in such property; and (B) such property is not necessary to an effective reorganization; ...

11 U.S.C. § 362(d); *see also* In re Pudgie's Dev. Of NY, Inc., 239 B.R. 688, 696 (S.D.N.Y. 1999) (stay relief is available remedy to landlord where debtor-tenant fails to comply with 11 U.S.C. § 365(d)(3)).

20.     Here, ample "cause" exists to lift the automatic stay under section 362(d)(1) in the event the Post-Petition Rent is not immediately paid, or future rent and charges due under the Leases are not timely paid. "Cause" exists under 11 U.S.C. § 362(d)(1) to prospectively vacate the automatic stay to permit a landlord to exercise its rights and remedies under the lease where a debtor has failed to pay post-petition rent together with lack of evidence to show ongoing compliance with lease terms. *See* In re Pudgies Dev. NY, 239 B.R. at 696 (stay relief available remedy to landlord where debtor-tenant fails to comply with § 365(d)(3)); *see also* In re Rocchio, 125 B.R. 345, 347 (Bankr. R.I. 1991).

21.     Section 363(e) of the Bankruptcy Code states:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold or leased, by the trustee, the court, with or without hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

22.  A landlord is entitled to adequate protection of its rights to be kept current on post-petition rent under Bankruptcy Code section 363(e). In re Ernst Home Center, Inc., 209 B.R. 955, 965 (Bankr. W.D. Wash. 1997); In re MS Freight Distribution, Inc., 172 B.R. 976-80 (Bankr. W.D. Wash. 1994); In re RB Furniture, Inc., 141 B.R. 706, 713-714 (Bankr. C.D. Cal, 1992) (requiring rent to be held in a segregated account "to assure that funds are available to pay administrative rent for Debtor's use of the Property if it rejects the Lease.").

23.  Absent immediate payment of the Post-Petition Rent and timely performance of all other and future obligations under the Leases, the Landlord lacks any adequate protection of the accruing post-petition rent, charges and obligations under the Leases. The Debtor is in default of at least three months of rent and charges due under the Leases, totaling more than $1 million. The Post-Petition Rent alone is approximately $612,108.19. The Debtor's failure to comply with the provisions of section 365(d)(3) of the Bankruptcy Code to "timely perform" all of the obligations arising post-petition under the Leases constitutes lack of adequate protection that the Landlord will receive all accrued, but unpaid Post-Petition Rent and performance of all other and future post-petition obligations under the Leases on a timely basis. See In re 1345 Main Partners, Ltd., 215 B.R. 536, 543 (Bankr. S.D. Ohio 1997) (finding that relief from the automatic stay was appropriate "if the Debtor attempts to occupy the premises without timely making the required rental payments").

24.  In addition, lifting of the automatic stay under section 362(d)(2) is also appropriate and warranted under the circumstances. First, the Debtor has no equity in the Leases because the rent received by the Debtor from the space tenants (which is zero) is less than what the Debtor is obligated to pay under the Leases. Second, the Leases are also not necessary to an effective reorganization. See, e.g.., In re de Kleinman, 156 B.R. 131 (Bankr.

10

S.D.N.Y. 1993) (lifting automatic stay where Court found that debtor did not have equity interest in property and such property was not necessary to an effective reorganization because, among other reasons, any sublease of the property was not likely to generate income in excess of the debtor's rental obligations to landlord).

25.     The Debtor currently has one space tenant in the shopping center, which will be closing imminently, and there are no indications of any prospects for replacement space tenants in the near future. The Debtor has demonstrated that it cannot perform under the Leases. Given, among other things, the very little, if any, cash flow from the shopping center, and the significant cure obligations under the Leases, it does not seem likely that any buyer would be interested in an assignment of the Leases. As a result, the Landlord submits that the Leases are not necessary for an effective reorganization of the Debtor.

### C.     *The Debtor Should Be Compelled To Immediately Assume Or Reject The Leases*

26.     Pursuant to section 365(e)(4), the Leases are deemed rejected and the Debtor must immediately surrender the Premises if the Debtor does not assume or reject the Leases by the earlier of (i) date that is 120 days after the date of the order for relief, or (ii) the date of the entry of an order confirming a plan. 11 U.S.C. § 365(d)(4). Here, the Court should direct the Debtor to assume or reject the Leases immediately.

27.     The Leases are in the nature of a ground lease and ground sublease, and, therefore, the sole sources of income and revenue to the Landlord. As a result, the Landlord has suffered, and continues to suffer, great harm and prejudice by the non-payment of rent due and payable under the Leases. The Landlord, which has debt service obligations with respect to the Premises to its lender and ground lease payment obligations to its third party ground lessor with respect to the portion of the Premises that is subject to the Ground Sublease. As a

result, the Landlord is experiencing great difficulty in meeting such obligations. There is also no indication that the Debtor has located new space tenants for the shopping center; thus, the harm and prejudice to the Landlord, as well as the administrative indebtedness of the Debtor's estate, increase every day. The balance of hurt, therefore, weighs heavily in support of requiring the Debtor to immediately assume or reject the Leases. Accordingly, the circumstances require that the Court compel the Debtor to immediately assume or reject the Leases.

28. At a minimum, and in addition to the prospective relief from the automatic stay, the Landlord requests that, in the event Post-Petition Rent is not paid immediately upon entry of an order approving this Motion, or in the event other and future post-petition obligations arising under the Leases are not timely performed, the Court grant prospective rejection of the Leases, with the rejection to be deemed effective on the 3rd business day following the occurrence of default under the Leases.

## NOTICE

29. The Landlord has served notice of this Motion in accordance with the procedures set forth in the order entered on February 13, 2009 governing case management and administrative procedures for these cases [Docket No. 2837]. The Landlord submits that notice is proper and no other or further notice need be provided.

30. No previous request for the relief sought herein has been made to this or any other Court.

## CONCLUSION

31. For these reasons, the Landlord requests entry of an order (1) compelling the Debtor to pay immediately upon the entry of an order granting this Motion, all accrued, but

12

unpaid, post-petition rent and charges arising under the Leases, and to timely perform all other and future post-petition obligations under the Leases, pending its decision to assume or reject the Leases, all as required by section 365(d)(3) of the Bankruptcy Code, (2) prospectively vacating the automatic stay, effective on the 3rd business day following default under the Leases, to permit Landlord to exercise all of its rights and remedies under the Leases and applicable laws in the event the Debtor does not immediately pay all accrued, but unpaid post-petition rent and charges due, or otherwise timely perform all other and future post-petition obligations under the Leases, and (3) compelling immediate assumption or rejection of the Leases.

WHEREFORE, for the reasons set forth herein, Landlord requests that the Court grant the relief requested herein and grant such other and further relief as the Court may deem just and proper.

DATED: June 4, 2009

LEVENE, NEALE, BENDER, RANKIN
& BRILL L.L.P.

By: /s/ David L. Neale
DAVID L. NEALE
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

Attorneys for Lessor and Sublessor,
Kalaimoku-Kuhio Development Corp.