**EXHIBIT A**

# AMENDED AND RESTATED GROUND LEASE

By and between

**KALAIMOKU-KUHIO DEVELOPMENT CORP.,**

as Landlord,

and

**KING KALAKAUA OWNERS,**

as Tenant

42697\34683v8

## AMENDED AND RESTATED GROUND LEASE

THIS AMENDED AND RESTATED GROUND LEASE dated as of July 1, 2003 (this "lease") is made by KALAIMOKU-KUHIO DEVELOPMENT CORP., a Hawaii corporation (the "Landlord"), and KING KALAKAUA OWNERS, a Hawaii general partnership (the "Tenant").

### Background:

A. On October 6, 1995, Consolidated Amusement Company, Limited (now known as Landlord) and K. Young Kalakaua Partners, a Hawaii general partnership (now known as King Kalakaua Owners, a Hawaii general partnership) entered into that certain Ground Lease and Sublease ("Original Lease/Sublease") for a lease of the demised premises (as hereinafter defined) and a sublease of land adjacent to the demised premises ("OH Land"). A Short Form Ground Lease and Sublease dated as of April 15, 1996 was recorded on July 16, 1996 in the Office of the Assistant Registrar of Land Court of the State of Hawaii ("Office") as Land Court Document No. 2323307 and noted on Transfer Certificate of Title Nos. 492,843 and 509,502. The following documents ("Original Lease/Sublease Related Documents") amend or otherwise affect the Original Lease/Sublease: (1) Unrecorded First Amendment to Ground Lease and Sublease dated as of February 8, 1996; (2) Second Amendment to Ground Lease and Sublease dated as of November 12, 1997 and recorded on December 30, 1997 in the Office as Land Court Document No. 2429684 and noted on Transfer Certificate of Title Nos. 492,843 and 509,502; (3) Memorandum of Agreements related to Ground Lease and Sublease dated April 27, 2001 and recorded on May 9, 2001 in the Office as Land Court Document No. 2703704 and noted on Transfer Certificate of Title No. 492,843 (which Memorandum includes a Consent and Agreement dated as of January 23, 1997 and a Consent and Agreement dated as of March 23, 1998); (4) Unrecorded Confirmation of Lease Agreement for Premises at King Kalakaua Plaza dated July 12, 2001 (which states positions of Tenant that are disputed by Landlord); and (5) Unrecorded letter dated September 4, 2001 (indicating a new address for Rent payments).

B. In addition, on February 8, 1996, 2080 Corporation, a Hawaii corporation (predecessor in interest to Oceanfront Hawaii, Inc., a Hawaii corporation (together with its successors-in-interest and assigns, collectively, "OH")) and Landlord entered into that certain Ground Lease ("Original Master Lease"), for a lease of the OH Land. A Short Form of Ground Lease dated May 23, 1996 was recorded on July 16, 1996 in the Office as Land Court Document No. 2323306 and noted on Transfer Certificate of Title No. 509,502. The following documents ("Original Master Lease Related Documents") amend or otherwise affect the Original Master Lease: (1) First Amendment to Ground Lease and Joinder dated as of November 12, 1997 and recorded on December 30, 1997 in the Office as Land Court Document No. 2429683; (2) Unrecorded letter dated December 11, 1998 (providing written notice that the original Landlord transferred its interest to the current Landlord); (3) Memorandum of Agreements related to Ground Lease and Sublease dated April 27, 2001 and recorded on May 9, 2001 in the Office as Land Court Document No. 2703704 (which Memorandum includes a Consent and Agreement dated as of January 23, 1997 and a Consent and Agreement dated as of March 23, 1998); (4) Agreement and Acknowledgement of Lease Modification dated as of July 19, 2001 and recorded on August 24, 2001 in the Office as Land Court Document No. 2732068; (5) Ground Lessor Estoppel and Agreement dated as of July 10, 2001 and recorded on August

24, 2001 in the Office as Land Court Document No. 2732067; and (6) Unrecorded Estoppel Certificate dated as of December 23, 1998 executed by Landlord.

C. 2080 Corporation transferred its interest in the land demised under the Original Master Lease to Oceanfront Hawaii, Inc., pursuant to that certain Limited Warranty Deed dated February 20, 1998, recorded in the Office on May 5, 1998 as Land Court Document No. 2454657, resulting in the issuance of Transfer Certificate of Title No. 509,502. Consolidated Amusement Company, Limited conveyed its interest in the land demised under the Original Lease/Sublease and assigned its interest in the Original Lease/Sublease to Kalaimoku-Kuhio Development Corp. pursuant to that certain Warranty Deed dated January 12, 1996 recorded in the Office as Land Court Document No. 2284479 (resulting in the issuance of Transfer Certificate of Title No. 469,060). K. Young Kalakaua Partners changed its name to King Kalakaua Owners, as set forth by Land Court Order No. 126436, dated December 19, 1996.

D. The Original Master Lease and Original Lease/Sublease jointly provide for the development and operation of a retail commercial project (the "Commercial Center") on the demised premises and the OH Land in accordance with Land Use Ordinance Section 4.40-21. In order to more clearly delineate the respective rights and obligations of Landlord, Tenant and OH and their respective mortgagees with respect to the demised premises, the parties desire to enter into this lease to amend and restate the Original Lease/Sublease to clarify their respective interests in the demised premises and to supersede the Original Lease/Sublease Related Documents.. In addition, OH and Landlord will simultaneously enter into an amended and restated ground lease for the OH Land (as the same may be amended, extended, renewed, replaced, substituted or supplemented or entered into from time to time, collectively, the "OH Lease"), and Landlord and Tenant will simultaneously enter into an amended and restated sublease for the OH Land (as the same may be amended, extended, renewed, replaced, substituted or supplemented or entered into from time to time, collectively, the "Sublease") and supersede the Original Lease/Sublease Related Documents.

E. Therefore the Sublessor and Subtenant hereby amend and restate the Original Lease/Sublease in so far as it relates to the land described in Exhibit A-1, as a lease separate from the Sublease, and this Amended and Restated Ground Lease continues the Original Lease/Sublease and supersedes the Original Lease/Sublease Related Documents with respect to the demised premises. Any act or omission of the Subtenant with respect to the demised premises that occurred under the Original Lease/Sublease shall be treated under this Amended and Restated Sublease as though this Amended and Restated Sublease had been entered into on the date of the Original Lease/Sublease. The other parties to the Original Lease/Sublease Related Documents join in this Amended and Restated Sublease to consent to it and to agree that it supersedes the Original Lease/Sublease Related Documents.

Terms of Lease:

1. Demise.

1.01 Demised Premises. Landlord, in consideration of the rent hereinafter reserved and of the covenants herein contained and on the part of Tenant to be observed and performed and upon and subject to the terms and conditions hereinafter set forth, does hereby

demise and lease unto Tenant and Tenant does hereby lease from Landlord the real property described on Exhibit A-1 attached hereto and made a part hereof ("demised premises").

TO HAVE AND TO HOLD THE SAME, together with all buildings, improvements, tenements, rights, easements, privileges and appurtenances thereon or thereunto belonging or appertaining, or held and enjoyed therewith, unto Tenant, for the term hereinafter set forth.

SUBJECT, HOWEVER, to the encumbrances described in Exhibit A-2.

2. Term. Subject to the terms and conditions hereof, Tenant shall have and hold the demised premises for the following term:

2.01 Preliminary Term: a preliminary term (herein called the "Preliminary Term") commencing on October 6, 1995 (herein called the "Preliminary Term Commencement Date") and ending on March 11, 1996 (the "Interim Term Commencement Date");

2.02 Interim Term: an interim term (herein called the "Interim Term") commencing on the Interim Term Commencement Date and ending at midnight on the day immediately preceding the first day of the month following the month in which the Interim Term Commencement Date shall have occurred (provided that if the Interim Term Commencement Date is the first day of a month, notwithstanding any other provisions of this Section 2.02, there shall be no Interim Term and the Primary Term shall commence on, and the Primary Term Commencement Date shall be deemed to be, the Interim Term Commencement Date); and

2.03 Primary Term: a primary term of fifty years (herein called the "Primary Term") commencing on April 1, 1996 (herein called the "Primary Term Commencement Date") and ending (unless such term is extended or sooner terminated as hereinafter provided) at midnight on the day immediately preceding the fiftieth anniversary of the Primary Term Commencement Date.

As used herein, the term "lease year" shall mean each twelve-month period commencing on the Primary Term Commencement Date and expiring at midnight on the day before each anniversary of such date. The first lease year shall include the partial "stub" month of the Interim Term. The Preliminary Term, Interim Term, and Primary Term are collectively referred to herein as the "term."

3. Rent.

3.01 Basic Rent. Tenant hereby covenants and agrees to pay to Landlord during the term hereof, over and above all other charges herein set forth, basic rent for the demised premises as set forth below (the "Basic Rent"). Unless otherwise provided in this lease, such monthly Basic Rent shall be payable in advance, on or before the first day of each calendar month.

(a) Basic Rent for First Through Fifth Lease Years:

(i) Preliminary Term: During the Preliminary Term, the Basic Rent shall be $360,000.00 per year (or $30,000 per month).

42697\34683v8                                    3

(ii) <u>First Lease Year</u>: For the first lease year (which shall include the "stub" month of the Interim Term), Basic Rent shall be $500,000.00 per year (or $41,666.67 per month); <u>provided</u>, however, that if the Commercial Center reaches twenty percent (20%) occupancy by "Space Tenants" (defined in Section 3.01(b), below) operating in the normal course of their respective businesses during the first lease year, the Basic Rent shall be increased to the amount specified below for the second lease year. Basic rent during the Interim Term shall be prorated based upon the ratio of the actual number of days in the Interim Term divided by the number of days in such month and shall be paid on the Interim Term Commencement Date;

(iii) <u>Second Through Fifth Lease Years</u>: For the second through fifth lease years, Basic Rent shall be $1,150,000.00 per year (or $95,833.34 per month).

(iv) <u>Sixth Through Tenth Lease Years</u>: For the sixth through tenth lease years, Basic Rent shall be $1,700,000 per year (or $141,666.67 per month).

(b) <u>Basic Rent for Eleventh Through Thirtieth Lease Years</u>:

On the commencement date of the eleventh lease year as well as the sixteenth, twenty-first, and twenty-sixth lease years (each such date hereafter called the "Rent Adjustment Date") the monthly Basic Rent shall be determined as follows: (i) the monthly Basic Rent paid during the immediately preceding lease year shall be multiplied by the greater of (x) twenty percent (20%) or (y) the net aggregate percentage increase in the basic or minimum rent charged to "Space Tenants" (defined below) by Tenant during the immediately preceding five-year period, and (ii) the product so derived under clause (i) shall be added to the amount of the monthly Basic Rent paid during the immediately preceding lease year. The Basic Rent so determined shall continue until the next date on which the Basic Rent is subject to adjustment under this lease. If for any reason the Basic Rent adjustment is not made prior to the Rent Adjustment Date, then pending the determination thereof Tenant shall continue to pay the same rent as was payable during the immediately preceding lease year, and upon the determination thereof, Tenant shall promptly pay the amount of the deficiency. As used herein, the term "Space Tenants" shall mean all persons or entities with whom Tenant has agreed to lease, sublease, license, or enter into concessions or other use or "Occupancy Agreements" (defined in Section 5.20, below) with respect to all or portions of the demised premises.

(c) <u>Determination of Monthly Basic Rent for the Thirty-First through Seventieth Lease Years</u>:

(i) On the commencement date of the thirty-first and forty-first (and, if Tenant exercises its options to extend pursuant to Section 3.03, below, the fifty-first and sixty-first) lease years (each such date hereafter called the "FMV Rent Adjustment Date"), the then-existing monthly Basic Rent shall be readjusted for the five (5) lease years following each FMV Rent Adjustment Date (until the next rental adjustment pursuant to Section 3.01(c)(ii), below) to reflect the fair market rental value of the demised premises plus the increase in fair market rental value (if any) as accrues to the demised premises and the OH land when they are valued together, as of the FMV Rent Adjustment Date (the "adjusted rental value"), subject to the following limitations: if the monthly Basic Rent so adjusted would be less than 104% of the

monthly Basic Rent immediately preceding said adjustment, then the monthly Basic Rent shall instead be increased each year for the five (5) lease years following each such FMV Rent Adjustment Date by 4% per year over the monthly Basic Rent immediately preceding each such adjustment, rather than by the fair market rental value. If the monthly Basic Rent so adjusted would be greater than 104%, but less than 120%, of the monthly Basic Rent immediately preceding said adjustment, then the monthly Basic Rent for the first year following such FMV Rent Adjustment Date shall be based upon the adjusted rental value; the monthly Basic Rent so adjusted shall be increased on the first day of each of the following four (4) lease years by multiplying the then-existing monthly Basic Rent prior to each such adjustment by a fraction, the numerator of which shall be 20% minus the percentage increase in the adjusted rental value on the immediately preceding FMV Rent Adjustment Date, and the denominator of which shall be four (4), and adding such product to the then-existing monthly Basic Rent.

(ii) If Landlord and Tenant are unable to agree upon the adjusted rental value at least one hundred twenty (120) days prior to the FMV Rent Adjustment Date, such value shall be determined by appraisal as hereinafter provided. As used herein, "fair market rental value" shall be the lease rent for comparable commercial real property in the Waikiki area as of the FMV Rent Adjustment Date. In ascertaining the fair market rental value of the demised premises (as the demised premises is valued together with the OH Land or either is valued alone), the parties (or the appraisers, as the case may be) shall assume that the demised premises and the OH Land (i) are enhanced by street improvements, contributing benefits, betterments and other related economic influences and value factors as exist as of such determination, (ii) are vacant of all structures and improvements directly appertaining thereto constructed or placed thereon by Tenant, (iii) are to be leased for a term commensurate with the applicable rental adjustment period, and (iv) are to be utilized for the then-existing use.

(iii) If the parties agree upon a single appraiser, such appraiser shall determine such adjusted rental value, and his decision shall be final, conclusive and binding upon both parties for the particular rental period then under consideration, subject to the minimum limitations stated above, unless such decision shall be vacated, modified or corrected, all as provided in Chapter 658A of Hawaii Revised Statutes. The cost and expense of this appraiser shall be divided equally between Landlord and Tenant.

(iv) If the parties fail to agree upon a single appraiser within ten (10) business days of written notice from one party to the other, each party shall name an appraiser, and the two named appraisers shall select and appoint an impartial third appraiser within ten (10) days. Upon demand, the third appraiser so selected shall issue a certification verifying the existence of no conflicts with either of the parties. Each party shall present to such third appraiser its determination of adjusted rental value in writing, and such third appraiser shall select one of the determinations which it feels best approximates the adjusted rental value, and the decision shall be final, conclusive and binding upon both parties for the particular rental period then under consideration, subject to the minimum limitations stated above, unless such decision shall be vacated, modified or corrected, all as provided in Chapter 658A. Unless otherwise mutually agreed to by the parties, such adjusted rental value shall be determined within thirty (30) days after the appointment of the appraiser, without a formal hearing. The party whose determination is not selected shall pay for all appraisal costs.

(v) Any appraisers selected pursuant to this Section 3.01(c) shall be recognized real estate appraisers who are members of the American Institute of Real Estate Appraisers (MAI) or any similar appraisal organization and shall have all of the powers and duties prescribed by Chapter 658A, and judgment may be entered upon any such decision as therein provided. Subject to the above provisions and limitations, the process or method of appraisal shall be that receiving general acceptance among competent, experienced and recognized appraisers in the field of real estate valuation in the State of Hawaii.

(vi) If and whenever the fixing of such adjusted rental value of the demised land is under appraisal, pending the determination thereof Tenant shall pay 104% of the rent payable during the immediately preceding lease year. Upon the conclusion of such appraisal proceedings, Tenant shall promptly pay any deficiency, and, if it is necessary for the parties to utilize the third appraiser method and the Landlord's determination of adjusted rental value is selected, shall also pay interest on the amount of such deficiency computed from the date or dates when the amount of such deficiency would have been payable but for the pendency of the appraisal, with such interest being computed at the rate announced by Bank of America, N.A. as its prime or reference rate, plus 2%.

(vii) In addition to the rent adjustments described above, on the commencement date of the thirty-sixth and forty-sixth lease years (and, if Tenant exercises its options to extend, the fifty-sixth and sixty-sixth lease years), the monthly Basic Rent shall be increased in the manner described in Section 3.01(b), above, and the Basic Rent so determined shall be paid until the next date on which the Basic Rent is subject to adjustment or the expiration date of this lease (as the case may be).

3.02 Percentage Rent. In addition to the Basic Rent specified above, Tenant shall pay to Landlord, as percentage rent, annually during the term of this lease (including any extensions thereof), an amount equal to the thirty-three and one-third percent (33 and 1/3%) of "Net Available Cash" for the lease year. For purposes of this lease, the following definitions shall apply:

(a) "Net Available Cash" means the amount by which "Available Cash" exceeds Five Hundred Thousand Dollars ($500,000).

(b) "Available Cash" means the amount by which "Net Operating Income" exceeds the sum of "Leasehold Mortgage Interest," plus Basic Rent scheduled to be paid during the relevant period hereunder, plus basic rent scheduled to be paid during the relevant period by Subtenant under the Sublease, plus "Capital Expenditure Amortization."

(c) "Net Operating Income" is the amount by which "Operating Revenue" for any lease year exceeds "Operating Expenses" for that lease year.

(d) "Operating Revenue" means all income, credits, revenue and reimbursements received by Tenant during any lease year from any source in consideration for occupancy, parking privileges, or other uses of or in connection with the Commercial Center, and includes, without limitation, all minimum and Basic Rent, percentage rent, parking revenue, common area maintenance contributions, real estate tax contributions, and marketing

42697\34683v8                                          6

contributions, along with any and all payments from Space Tenants, parking licensees, or other licensees of the Commercial Center. Operating Revenue does not include security deposits held as security for any Space Tenants unless and until such security deposit is applied to repay a breach by any Space Tenant.

(e) "Operating Expenses" means all bona fide and actual ordinary and customary expenses paid by Tenant and the Subtenant under the Sublease with respect to the ownership, operation, occupancy, or use of the Commercial Center during each lease year, and includes without limitation, all expenses incurred with respect to repairs, replacements, installations, and alterations to the Commercial Center (except for any included as a "Capital Expenditure"), expenses incurred with respect to maintenance of the Commercial Center or licensing the use of all or part of the Commercial Center, common area maintenance expenses, real estate taxes and other impositions (including taxes paid upon the gross receipts of Tenant from the Commercial Center, such as but not limited to the general excise tax imposed by the State of Hawaii), insurance premiums and deductibles actually paid, marketing expenses, expenses incurred with respect to parking operations and any expenses paid in connection with negotiation, litigation, or arbitration concerning the business operations at the Commercial Center (including any judgments paid). Operating Expenses shall not include Leasehold Mortgage Interest, Capital Expenditures, Basic Rent, income, estate, gift and inheritance taxes, and refunds of security deposits. Generally accepted accounting principles consistently applied shall determine whether an item is part of Operating Expenses or a Capital Expenditure.

(f) "Leasehold Mortgage Interest" mean all interest actually paid by Tenant and Subtenant under the Sublease during a lease year on the initial principal amount of the "Project Loans." For purposes hereof, the initial principal amount shall be the amount of all "Project Costs" of the initial construction of the Commercial Center. For purposes of this section, "Project Costs" shall include all "soft" and "hard" costs for the initial construction of the Commercial Center and shall be deemed to be Forty Million Dollars ($40,000,000). As soon as possible but not later than the date the first Space Tenant opens for business at the Commercial Center, Tenant shall deliver to Landlord a breakdown showing in reasonable detail such total Project Costs for the Commercial Center, certified by the Tenant as true and correct. For purposes of this definition, "Project Loans" shall mean (i) loans (including capital and partnership contributions) made to Tenant by the partners of Tenant or their affiliates at a rate not to exceed 10% per annum, together with all modifications and refinancings thereof (if the rate of interest on any such loans exceeds 10% per annum, Leasehold Mortgage Interest shall only include that portion of interest paid on such loans up to 10% per annum), and (ii) loans from any other source secured by a mortgage on Tenant's leasehold estate under both this Lease and the Sublease, together with all modifications and refinancings thereof, but in no event shall the outstanding principal amount of all Project Loans exceed $40,000,000 (if the rate of interest on any such loans exceeds the ordinary and customary rate for loans on projects of the size and quality of the Commercial Center, then Leasehold Mortgage Interest shall include only that portion of interest which would be considered normal and customary for such loans). Additionally, if upon any modification or refinancing the amount of the Project Loans exceeds the amount of Project Costs, then for purposes of calculating Leasehold Mortgage Interest, the lowest interest rate then being charged on the Project Loans shall be deemed to be the rate at which Leasehold Mortgage Interest is calculated.

(g)  "Capital Expenditure" is a repair or replacement to the Commercial Center, an installation at the Commercial Center, or other work for the Commercial Center, that prolongs the life of an element of the Commercial Center for more than one (1) year, an improvement to the Commercial Center that materially increases its value, or a commission paid to a third party real estate broker or consultant for arms' length services actually rendered in connection with a leasing transaction regarding the Commercial Center. Capital Expenditures shall be amortized over ten (10) lease years; consequently, "Capital Expenditure Amortization" for any lease year as to any Capital Expenditure shall be one-tenth (1/10) of such Capital Expenditure. Capital Expenditure Amortization with respect to any lease year shall be calculated separately for each Capital Expenditure. Capital Expenditure Amortization for any lease year shall be the sum of the Capital Expenditure Amortization for each Capital Expenditure that will not have been fully amortized before that lease year.

The percentage rent shall be paid on or before the 120th day after the end of each lease year. During the term of this lease, Tenant shall deliver to Landlord a monthly project report which identifies in reasonable detail the Leasehold Mortgage Interest, Operating Revenue, Operating Expenses, and Capital Expenditures for each month. Together with Tenant's annual payment of percentage rent, Tenant shall deliver to Landlord an annual project report covering and reconciling these items during the immediately preceding calendar year, certified as true and correct by an appropriate officer or representative of Tenant.

Once per year, Landlord and its agents shall be entitled to inspect and audit, upon reasonable notice and at any reasonable time during Tenant's ordinary business hours, the books of account, all bookkeeping and other records of Tenant pertaining to the project revenue for a period of three (3) years prior to the date of such audit. If any inspection or audit discloses any error in Tenant's statement of project revenue to Landlord's detriment, Tenant shall immediately pay to Landlord any deficiency in additional percentage rent resulting from such error; and if such deficiency equals or exceeds three percent (3%) of the percentage rent paid for the period covered by such audit, Tenant shall pay the reasonable costs of Landlord's inspection or audit and the limitations on the number and time period of audits set forth above shall be rescinded. The above is without prejudice to any other remedies available to Landlord for Tenant's breach of its obligations hereunder. Landlord's acceptance of any percentage rent payments shall be without prejudice to Landlord's right to perform such inspection and audit and to receive payment of any deficiency amounts owed by Tenant.

3.03  Options to Extend Term of Lease. Tenant shall have the option to extend the term of this lease upon the same terms, covenants, and conditions as herein contained (except for the granting of any additional options) for two (2) additional consecutive periods of ten (10) years each from and after the expiration date hereof, by giving Landlord written notice of Tenant's election to exercise an option to extend at any time not earlier than two (2) years prior to the appropriate lease expiration dated and at least twelve (12) months prior to the lease expiration date; provided, Tenant is not in default under this Lease or the Sublease beyond any applicable notice and cure periods set forth in this lease or the Sublease in performing its obligations under this lease or the Sublease on the date the option is exercised and on the lease expiration date and, as to the second option, that the first option was timely exercised. Tenant's exercise of an option to extend shall not be effective unless Tenant shall concurrently exercise the corresponding option to extend under the Sublease.

42697\34683v8                                        8