**EXHIBIT B**

# AMENDED AND RESTATED SUBLEASE

By and Between

**KALAIMOKU-KUHIO DEVELOPMENT CORP.,**
as Sublessor

and

**KING KALAKAUA OWNERS,**
as Subtenant

42697\34681v7

## AMENDED AND RESTATED SUBLEASE

THIS AMENDED AND RESTATED SUBLEASE dated as of July 1, 2003 (this "sublease") is made by KALAIMOKU-KUHIO DEVELOPMENT CORP., a Hawaii corporation (the "Sublessor"), and KING KALAKAUA OWNERS, a Hawaii general partnership (the "Subtenant").

### Background:

A. On October 6, 1995, Consolidated Amusement Company, Limited (now known as Sublessor) and K. Young Kalakaua Partners, a Hawaii general partnership (now known as Subtenant) entered into that certain Ground Lease and Sublease ("Original Lease/Sublease") for a sublease of the Demised Land (as defined below) and a lease of the premises more particularly described therein, which includes the Demised Land as well as land adjacent to the Demised Land ("KKDC Land"). A Short Form Ground Lease and Sublease dated as of April 15, 1996 was recorded on July 16, 1996 in the Office of the Assistant Registrar of Land Court of the State of Hawaii ("Office") as Land Court Document No. 2323307 and noted on Transfer Certificate of Title Nos. 492,843 and 509,502. The following documents (the "Original Lease/Sublease Related Documents") amend or otherwise affect the Original Lease/Sublease: (1) Unrecorded First Amendment to Ground Lease and Sublease dated as of February 8, 1996; (2) Second Amendment to Ground Lease and Sublease dated as of November 12, 1997 and recorded on December 30, 1997 in the Office as Land Court Document No. 2429684 and noted on Transfer Certificate of Title Nos. 492,843 and 509,502; (3) Memorandum of Agreements related to Ground Lease and Sublease dated April 27, 2001 and recorded on May 9, 2001 in the Office as Land Court Document No. 2703704 and noted on Transfer Certificate of Title No. 492,843 (which Memorandum includes a Consent and Agreement dated as of January 23, 1997 and a Consent and Agreement dated as of March 23, 1998); (4) Unrecorded Confirmation of Lease Agreement for Premises at King Kalakaua Plaza dated July 12, 2001 (which states positions of Subtenant that are disputed by Tenant); and (5) Unrecorded letter dated September 4, 2001 (indicating a new address for Rent payments).

B. In addition, on February 8, 1996, 2080 Corporation, a Hawaii corporation (predecessor in interest to Oceanfront Hawaii, Inc., a Hawaii corporation (together with its successors in interest and assigns, collectively, "Landlord")) and Tenant entered into that certain Ground Lease ("Original Master Lease"), for a lease of the Demised Land. A Short Form of Ground Lease dated May 23, 1996 was recorded on July 16, 1996 in the Office as Land Court Document No. 2323306 and noted on Transfer Certificate of Title No. 509,502. The following documents (the "Original Master Lease Related Documents") amend or otherwise affect the Original Master Lease: (1) First Amendment to Ground Lease and Joinder dated as of November 12, 1997 and recorded on December 30, 1997 in the Office as Land Court Document No. 2429683; (2) Unrecorded letter dated December 11, 1998 (providing written notice that the original Landlord transferred its interest to the current Landlord); (3) Memorandum of Agreements related to Ground Lease and Sublease dated April 27, 2001 and recorded on May 9, 2001 in the Office as Land Court Document No. 2703704 (which Memorandum includes a Consent and Agreement dated as of January 23, 1997 and a Consent and Agreement dated as of March 23, 1998); (4) Agreement and Acknowledgement of Lease Modification dated as of July

19, 2001 and recorded on August 24, 2001 in the Office as Land Court Document No. 2732068; (5) Ground Lessor Estoppel and Agreement dated as of July 10, 2001 and recorded on August 24, 2001 in the Office as Land Court Document No. 2732067; and (6) Unrecorded Estoppel Certificate dated as of December 23, 1998 executed by Landlord.

C.  2080 Corporation transferred its interest in the Demised Land to Oceanfront Hawaii, Inc., pursuant to that certain Limited Warranty Deed dated February 20, 1998, recorded in the Office on May 5, 1998 as Land Court Document No. 2454657, resulting in the issuance of Transfer Certificate of Title No. 509,502. Consolidated Amusement Company, Limited conveyed its interest in the land demised under the Original Lease/Sublease and assigned its interest in the Original Lease/Sublease to Kalaimoku-Kuhio Development Corp. pursuant to that certain Warranty Deed dated January 12, 1996 recorded in the Office as Land Court Document No. 2284479 (resulting in the issuance of Transfer Certificate of Title No. 469,060). K. Young Kalakaua Partners changed its name to King Kalakaua Owners, as set forth by Land Court Order No. 126436, dated December 19, 1996.

D.  The Original Master Lease and Original Lease/Sublease jointly provide for the development and operation of a retail commercial project (the "Commercial Center") on the Demised Land and the KKDC Land in accordance with Land Use Ordinance Section 4.40-21. In order to more clearly delineate the respective rights and obligations of Landlord, Sublessor and Subtenant and their respective mortgagees with respect to the Demised Land, the parties desire to amend and restate the Original Lease/Sublease to clarify their respective interests in the Demised Land and to supersede the Original Lease/Sublease Related Documents. In addition, Landlord and Sublessor will simultaneously enter into an amended and restated ground lease for the Demised Land (together with any modifications, amendments, extensions, renewals, replacements, substitutions (including any new lease provided under the terms of the Master Lease upon termination of the Master Lease) or supplements entered into from time to time in accordance with the terms thereof, collectively, "Master Lease"). In addition, Sublessor and Subtenant will simultaneously enter into an amended and restated ground lease for the KKDC Land (as the same may be modified, amended, extended, renewed, replaced, substituted, (including any new lease provided under the terms of the KKDC Lease upon termination of the KKDC Lease) or supplements entered into from time to time in accordance with the terms thereof, collectively, the "KKDC Lease") and supersede the Original Lease/Sublease Related Documents.

E.  Therefore the Sublessor and Subtenant hereby amend and restate the Original Lease/Sublease in so far as it relates to the original Demised Land, as a lease separate from the Amended and Restated Ground Lease for the KKDC Land, and this Amended and Restated Sublease, supersedes the Original Lease/Sublease and the Original Lease/Sublease Related Documents with respect to the Demised Land. Any act or omission of the Subtenant with respect to the Demised Land that occurred under the Original Lease/Sublease shall be treated under this Amended and Restated Sublease as though this Amended and Restated Sublease had been entered into on the date of the Original Lease/Sublease. The other parties to the Original Lease/Sublease Related Documents join in this Amended and Restated Sublease to consent to it and to agree that it supersedes the Original Lease/Sublease Related Documents.

Terms of Sublease:

1.  Demise. Sublessor, in consideration of the rent hereinafter reserved and of the covenants herein contained and on the part of Subtenant to be observed and performed and upon and subject to the terms and conditions hereinafter set forth, does hereby demise and sublease unto Subtenant and Subtenant does hereby sublease from Sublessor the real property described on Exhibit A attached hereto and made a part hereof ("Demised Land").

TO HAVE AND TO HOLD THE SAME, together with all buildings, improvements, tenements, rights, easements, privileges and appurtenances thereon or thereunto belonging or appertaining, or held and enjoyed therewith, unto Subtenant, for the term hereinafter set forth.

SUBJECT, HOWEVER, to the encumbrances described in Exhibit A.

2.  Term. Subject to the terms and conditions hereof, Subtenant shall have and hold the Demised Land for the following term:

2.01 Preliminary Term: a preliminary term (herein called the "Preliminary Term") commencing October 6, 1995 (herein called the "Preliminary Term Commencement Date") and ending on March 11, 1996 (the "Interim Term Commencement Date");

2.02 Interim Term: an interim term (herein called the "Interim Term") commencing on the Interim Term Commencement Date and ending at midnight on the day immediately preceding the first day of the month following the month in which the Interim Term Commencement Date shall have occurred (provided that if the Interim Term Commencement Date is the first day of a month, notwithstanding any other provisions of this Section 2.02, there shall be no Interim Term and the Primary Term shall commence on, and the Primary Term Commencement Date shall be deemed to be, the Interim Term Commencement Date); and

2.03 Primary Term: a primary term of fifty years (herein called the "Primary Term") commencing on April 1, 1996 (herein called the "Primary Term Commencement Date") and ending (unless such term is extended or sooner terminated as hereinafter provided) at midnight on the day immediately preceding the fiftieth anniversary of the Primary Term Commencement Date.

As used herein, the term "sublease year" shall mean each twelve-month period commencing on the Primary Term Commencement Date and expiring at midnight on the day before each anniversary of such date. The first sublease year shall include the partial "stub" month of the Interim Term. The Preliminary Term, Interim Term and Primary Term are collectively referred to herein as the "term."

3.  Rent.

3.01 Basic Rent. Subtenant hereby covenants and agrees to pay to Sublessor during the term hereof, over and above all other charges herein set forth, basic rent for the Demised Land as set forth below. Unless otherwise provided in this sublease, such monthly basic rent shall be payable in advance on or before the first day of each calendar month. The monthly basic rent shall be as follows:

(a) _Preliminary Term_: During the Preliminary Term, the monthly basic rent shall be in the amount of $0.00. Subtenant shall reimburse to Sublessor, when due, all real property taxes and assessments as described in Section 5.03 below prorated as of October 1, 1995.

(b) _First Sublease Year_: For the first sublease year during the Primary Term (which shall include the stub month, if appropriate), a monthly basic rent in the amount of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) (or $300,000.00 per year).

(c) _Second through Fifth Sublease Years_: For the second sublease year through the fifth sublease year of the Primary Term, a monthly basic rent in the amount of EIGHTEEN THOUSAND FIVE HUNDRED DOLLARS ($18,500.00) (or $222,000.00 per year).

(d) _Sixth through Tenth Sublease Years_: For the sixth sublease year through the tenth sublease year of the Primary Term, a monthly basic rent in the amount of TWENTY-ONE THOUSAND FOUR HUNDRED SIXTY DOLLARS ($21,460.00) (or $257,520.00 per year).

(e) _Eleventh through Fifteenth Sublease Years_: For the eleventh sublease year through the fifteenth sublease year of the Primary Term, a monthly basic rent in the amount of TWENTY-FIVE THOUSAND SEVEN HUNDRED FIFTY-TWO DOLLARS ($25,752.00) (or $309,024.00 per year).

(f) _Sixteenth through Twentieth Sublease Years_: For the sixteenth sublease year through the twentieth sublease year of the Primary Term, a monthly basic rent in the amount of THIRTY THOUSAND NINE HUNDRED TWO AND 40/100 DOLLARS ($30,902.40) (or $370,828.80 per year).

(g) _Twenty-first through the Twenty-fifth Sublease Years_: For the twenty-first sublease year through the twentieth-five sublease year of the Primary Term, a monthly basic rent in the amount of THIRTY-SEVEN THOUSAND EIGHTY-TWO AND 88/100 DOLLARS ($37,082.88) (or $444,994.56 per year).

(h) _Twenty-sixth through the Thirtieth Sublease Years_: For the twenty-sixth sublease year through the thirtieth sublease year of the Primary Term, a monthly basic rent in the amount of FORTY-FOUR THOUSAND FOUR HUNDRED NINETY-NINE AND 46/100 DOLLARS ($44,499.46) (or $533,993.52 per year).

(i) _Thirty-first through the Fortieth Sublease Years_: For the thirty-first sublease year through the fortieth sublease year of the Primary Term, a monthly basic rent equal to the amount of monthly basic rent that is payable under the Master Lease during such period.

(j) _Forty-first through the Fiftieth Sublease Years_: For the forty-first sublease year through the fiftieth sublease year, a monthly basic rent equal to the amount of monthly basic rent that is payable under the Master Lease during such period.

(k) Sublessor and Subtenant acknowledge and agree that because all rent payable to Sublessor under this sublease is payable by Sublessor to Landlord under the Master Lease, the determination of fair market rental value for the purposes of establishing the monthly basic rent payable under the Master Lease during the periods of time respectively identified in Sections 3.01(i) and 3.01(j) of this sublease above shall be determined as provided in the Master Lease, and, provided no uncured event of default has occurred and is continuing hereunder or under the KKDC Lease, Subtenant shall be and hereby is authorized to negotiate directly with Landlord for the determination of such fair market rental value in Section 3.01(k) and (l) of the Master Lease, subject to the prior written consent of Sublessor (not to be unreasonably withheld) to the exercise by Subtenant of its right to engage in such direct negotiations with Landlord; provided however that Subtenant shall bear all reasonable costs and expenses incurred by Sublessor and Subtenant associated with such negotiation. Sublessor or Tenant, as the case may be, shall be deemed to have agreed to, and be bound by, the determination of fair market rental value by Sublessor and Landlord or Subtenant and Landlord for the purpose of establishing monthly basic rent payable by Sublessor under the Master Lease and Subtenant under this sublease in respect of such periods.

Until the fair market rental value is so determined, Subtenant shall pay monthly installments of basic rent to Sublessor in an amount equal to the monthly basic rent for the last sublease year next preceding the period in question and at the times and manner as then payable by Subtenant; and Subtenant shall within fifteen (15) days after such determination pay to Sublessor the amount of any increase in the monthly basic rent which shall have accrued since the expiration of the preceding rental period plus interest (such interest being computed at the rate announced by Bank of America, N.A. as its prime rate, plus 2%) until such increase in the monthly basic rent is paid in full. By the execution of this sublease, Sublessor and Subtenant shall be deemed to have conclusively agreed to the foregoing, and except as otherwise provided under Chapter 658A, HRS, neither Sublessor nor Subtenant shall have the right to vacate, modify or correct such determination.

(l) In addition to the rent adjustments described above, on the commencement date of the thirty-sixth and forty-sixth sublease years (and, if Subtenant exercises its options to extend, the fifty-sixth and sixty-sixth sublease years), the monthly basic rent shall be increased in the following manner:

(i) the monthly basic rent paid during the immediately preceding sublease year shall be multiplied by the greater of (x) twenty percent (20%) or (y) the net aggregate percentage increase in the basic or minimum rent charged to "Space Tenants" by Subtenant during the immediately preceding five-year period, and (ii) the product so derived under clause (i) shall be added to the amount of the monthly basic rent paid during the immediately preceding sublease year. As used herein, the term "Space Tenants" shall mean all persons or entities with whom Subtenant has agreed to lease, sublease, license or enter into concessions or other use or "Occupancy Agreements" (defined in Section 5.20, below) with respect to all or portions of the demised premises.

The monthly basic rent so determined shall be paid until the next date on which the basic rent is subject to adjustment or the expiration date of this sublease (as the case may be). If for any reason the basic rent adjustment is not made as described above, then pending the determination thereof Subtenant shall continue to pay the same basic rent as was payable during the immediately preceding sublease year, and within fifteen (15) days of the determination thereof, Subtenant shall pay the amount of the deficiency together with interest (such interest being

computed at the rate announced by Bank of America, N.A. as its prime rate, plus 2%) until such deficiency is paid in full.

   3.02 Percentage Rent. In addition to the basic rent specified above, Subtenant shall pay to Sublessor, as percentage rent, annually during the term of this sublease (including any extensions thereof), an amount equal to seven per cent (7%) of Subtenant's "Net Available Cash" for the sublease year. For purposes of this sublease, the following definitions shall apply:

   (a) "Net Available Cash" means the amount by which "Available Cash" exceeds Two Million One Hundred Seven-Five Thousand Dollars ($2,175,000).

   (b) "Available Cash" means the amount by which "Net Operating Income" exceeds the sum of "Subleasehold Mortgage Interest," plus the amount of basic rent scheduled to be paid during the relevant period by Subtenant under the KKDC Lease, plus the amount of basic rent scheduled to be paid during the relevant period hereunder, plus "Capital Expenditure Amortization."

   (c) "Net Operating Income" is the amount by which "Operating Revenue" for any sublease year exceeds "Operating Expenses" for that sublease year.

   (d) "Operating Revenue" means all income, credits, revenue and reimbursements received by Subtenant during any sublease year from any source in consideration for occupancy, parking privileges, or other uses of or in connection with the Commercial Center, and includes, without limitation, all minimum and basic rent, percentage rent, parking revenue, common area maintenance contributions, real estate tax contributions, and marketing contributions, along with any and all payments from Space Tenants (as defined in Section 5.11 below), parking licensees, or other licensees of the Commercial Center. Operating Revenue does not include security deposits held as security for any Space Tenants unless and until such security deposit is applied to repay a breach by any Space Tenant.

   (e) "Operating Expenses" means all bona fide and actual ordinary and customary expenses paid by Subtenant and the tenant under the KKDC Lease with respect to the ownership, operation, occupancy, or use of the Commercial Center during each sublease year, and includes without limitation, all expenses incurred with respect to repairs, replacements, installations, and alterations to the Commercial Center (except for any included as a "Capital Expenditure"), expenses incurred with respect to maintenance of the Commercial Center or licensing the use of all or part of the Commercial Center, common area maintenance expenses, real estate taxes and other impositions (including taxes paid upon the gross receipts of Subtenant from the Commercial Center, such as but not limited to the general excise tax imposed by the State of Hawaii), insurance premiums and deductibles actually paid, marketing expenses, expenses incurred with respect to parking operations and any expenses paid in connection with negotiation, litigation, or arbitration concerning the business operations at the Commercial Center (including any judgments paid). Operating Expenses shall not include Subleasehold Mortgage Interest, Capital Expenditures, basic rent under this sublease, income, estate, gift and inheritance taxes, and refunds of security deposits. Generally accepted accounting principles consistently applied shall determine whether an item is part of Operating Expenses or a Capital Expenditure.

(f) "Subleasehold Mortgage Interest" means all interest actually paid by Subtenant and the tenant under the KKDC Lease during a sublease year on the initial principal amount of the "Project Loans." For purposes hereof, the initial principal amount shall be the amount of all "Project Costs" of the initial construction of the Commercial Center. For purposes of this section, "Project Costs" shall include all "soft" and "hard" costs for the initial construction of the Commercial Center and shall be deemed to be Forty Million Dollars ($40,000,000). As soon as possible but not later than the date the first Space Tenant opens for business at the Commercial Center, Subtenant shall deliver to Sublessor a breakdown showing in reasonable detail such total Project Costs for the Commercial Center, certified by the Subtenant as true and correct.

(g) For purposes of this definition, "Project Loans" shall mean (i) loans (including capital and partnership contributions) made to Subtenant by the partners of Subtenant or their affiliates at a rate not to exceed 10% per annum, together with all modifications and refinancings thereof (if the rate of interest on any such loans exceeds 10% per annum, Subleasehold Mortgage Interest shall only include that portion of interest paid on such loans up to 10% per annum), and (ii) loans from any other source secured by a mortgage on the leasehold estate in both the KKDC Lease and this Sublease, together with all modifications and refinancings thereof, but in no event shall the outstanding principal amount of all Project Loans exceed $40,000,000 (if the rate of interest on any such loans exceeds the ordinary and customary rate for loans on projects of the size and quality of the Commercial Center, then Subleasehold Mortgage Interest shall include only that portion of interest which would be considered normal and customary for such loans). Additionally, if upon any modification or refinancing the amount of the Project Loans exceeds the amount of Project Costs, then for purposes of calculating Subleasehold Mortgage Interest, the lowest interest rate then being charged on the Project Loans shall be deemed to be the rate at which Subleasehold Mortgage Interest is calculated.

(h) "Capital Expenditure" is a repair or replacement to the Commercial Center, an installation at the Commercial Center, or other work for the Commercial Center, that prolongs the life of an element of the Commercial Center for more than one (1) year, an improvement to the Commercial Center that materially increases its value, or a commission paid to a third party real estate broker or consultant for arms' length services actually rendered in connection with a leasing transaction regarding the Commercial Center. Capital Expenditures shall be amortized over ten (10) sublease years; consequently, "Capital Expenditure Amortization" for any sublease year as to any Capital Expenditure shall be one-tenth (1/10) of such Capital Expenditure. Capital Expenditure Amortization with respect to any sublease year shall be calculated separately for each Capital Expenditure. Capital Expenditure Amortization for any sublease year shall be the sum of the Capital Expenditure Amortization for each Capital Expenditure that will not have been fully amortized before that sublease year.

The percentage rent shall be paid on or before the 120th day after the end of each sublease year. During the term of this sublease, Subtenant shall deliver to Sublessor a monthly project report which identifies in reasonable detail the Subleasehold Mortgage Interest, Operating Revenue, Operating Expenses, and Capital Expenditures for each month. Together with Subtenant's annual payment of percentage rent, Subtenant shall deliver to Sublessor an annual project report covering and reconciling these items during the immediately preceding

42697\34681v7                                7

calendar year, certified as true and correct by an appropriate officer or representative of Subtenant.

Once per year, Subtenant shall give to Sublessor or Landlord and their respective agents the right to inspect and audit, upon reasonable notice and at any reasonable time during Subtenant's ordinary business hours, the books of account, all bookkeeping and other records of Subtenant pertaining to the project revenue for a period of three (3) years prior to the date of such audit. If any inspection or audit discloses any error in Subtenant's statement of project revenue to Sublessor's detriment, Subtenant shall immediately pay to Sublessor any deficiency in additional percentage rent resulting from such error; and if such deficiency equals or exceeds three percent (3%) of the percentage rent paid for the period covered by such audit, Subtenant shall pay the reasonable costs of Sublessor's (or Landlord's) inspection or audit and the limitations on the number and time period of audits set forth above shall be rescinded. The above is without prejudice to any other remedies available to Sublessor for Subtenant's breach of its obligations hereunder. Sublessor's (or Landlord's under the Master Lease) acceptance of any percentage rent payments shall be without prejudice to Sublessor's or Landlord's right to perform such inspection and audit and to receive payment of any deficiency amounts owed by Subtenant.

### 3.03   Options to Extend Term of Sublease.

(a)   Subtenant shall have two successive options to extend the term of this sublease upon the same terms, covenants and conditions as herein contained (except for the granting of any additional options) for two (2) additional consecutive periods of ten (10) years each from and after the expiration date hereof, by giving Sublessor written notice of Subtenant's election to exercise its option to extend at any time not earlier than two (2) years prior to the appropriate sublease expiration date and not later than twelve (12) months prior to the appropriate sublease expiration date; provided that Subtenant shall not be in default beyond any applicable notice and cure periods set forth in this sublease or the KKDC Lease in performing its obligations under this sublease or the KKDC Lease on the date the option is exercised and on the sublease expiration date and, additionally as to the second option, that the first option shall have been timely exercised. Subtenant's exercise of an option to extend shall not be effective unless Subtenant shall concurrently exercise the corresponding option to extend under the KKDC Lease. If Subtenant fails to give such notice within the time period specified herein, Subtenant shall not be deemed to have waived the options to extend unless or until (a) Sublessor gives Subtenant written notice of the expiration of Subtenant's option not more than ninety (90) days nor less than (30) days prior to such expiration or (b) Sublessor gives Subtenant written notice of Subtenant's failure to exercise its option to extend and affords Subtenant a period of thirty (30) days after receipt of such notice to exercise the option to extend by giving Sublessor written notice of the exercise of Subtenant's option to extend. Except as set forth herein, Subtenant shall not have any option to extend the term of this sublease beyond the seventieth sublease year. If the first option shall be properly and timely exercised, then the monthly basic rent for the ten (10) year first option period shall be determined by written agreement of Sublessor and Subtenant or, if they fail to reach such agreement prior to such date which is ninety (90) days before the commencement of such period, the monthly basic rent for such period shall be the fair market rental value as determined in Sections 3.01(k) and (l) above; provided, however, that the monthly basic rent for such period shall not be less than the monthly basic rent for the last