BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-2300
Facsimile:  (212) 446-2350
Jonathan D. Schiller
Hamish P.M. Hume
Jack G. Stern

Attorneys for Barclays Capital Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

# Exhibit 5

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                :
In re                                           :    Chapter 11 Case No.
                                                :
LEHMAN BROTHERS HOLDINGS INC., *et al.*         :    08-13555 (JMP)
                                                :
        Debtors.                                :    (Jointly Administered)
                                                :
------------------------------------------------------------x

### ORDER UNDER 11 U.S.C. §§ 105(a), 363, AND 365 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 6006 AUTHORIZING AND APPROVING (A) THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF LIENS AND OTHER INTERESTS AND (B) ASSUMPTION AND ASSIGNMENT OF <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

Upon the motion, dated September 17, 2008 (the "<u>Motion</u>"),[1] of Lehman Brothers

Holdings, Inc. ("<u>LBHI</u>") and LB 745 LLC ("<u>LB 745</u>"), as debtors and debtors-in-possession

(collectively, the "<u>Debtors</u>" and, together with their non-debtor affiliates, "<u>Lehman</u>") for orders

pursuant to 11 U.S.C. §§ 105, 363, 364(c)(1) and 365 and Fed. R. Bankr. P. (the "<u>Bankruptcy</u>

<u>Rules</u>") 2002, 6004, 6006 and 9014 (A) scheduling a final sale hearing (the "<u>Sale Hearing</u>") with

respect to that certain Asset Purchase Agreement, dated September 16, 2008, among the Debtors,

Lehman Brothers Inc. ("<u>LBI</u>" and, collectively with the Debtors, the "<u>Seller</u>") and Barclays

Capital, Inc. (the "<u>Purchaser</u>"), collectively with that First Amendment Clarifying Asset

Purchase Agreement dated September 19, 2008 and that letter agreement clarifying and

supplementing the Asset Purchase Agreement dated September 20, 2008 (as same may be

subsequently modified or amended or clarified, the "<u>Purchase Agreement</u>"); (B) establishing

sales procedures; (C) approving a break-up fee; and (D) authorizing and approving the sale of

---

[1]    Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the
       Agreement.

certain of the Seller's assets (the "Purchased Assets") free and clear of all liens, claims, encumbrances and interests and the assumption and assignment of certain prepetition executory contracts and unexpired leases (the "Contracts") relating to the Purchased Assets to the Purchaser or the Successful Bidder(s); and upon the Court's consideration of the Motion and the record of the Sale Hearing held on September 19, 2008 with respect to the Motion, including the testimony and evidence admitted at the Hearing; and after due deliberation thereon, and sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

A.    **Jurisdiction and Venue**.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates**.    The statutory predicates for the relief sought in the Motion are Bankruptcy Code sections 105(a), 363, and 365, Bankruptcy Rules 2002, 6004, 6006 and 9008 and the applicable Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").

C.    **Notice**.    As evidenced by the affidavits of service filed with this Court and based upon the representations of counsel at the Sale Hearing and as approved under the Order (I) Approving the Break-Up Fee and Expense Reimbursement, (II) Certain Matters Relating to Competing Bids, If Any, (III) Approving the Form and Manner of Sale Notices and (IV) Setting the Sale Hearing Date in Connection with the Sale of Certain of the Sellers' Assets (the "Break-Up Fee and Competing Bids Order"): (i) in light of the exigent circumstances of these cases and the wasting nature of the Sellers' assets, due, proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing and the transactions set forth in the Purchase Agreement (the "Sale"),

2

including the assumption and assignment of the Contracts and Cure Amounts with respect

thereto, has been provided in accordance with Bankruptcy Code sections 105(a), 363 and 365,

Bankruptcy Rules 2002, 6004, 6006 and 9008 and the Local Rules; (ii) it appearing that no other

or further notice need be provided; (iii) such notice was and is good, sufficient and appropriate

under the circumstances of the Debtors' chapter 11 cases; (iv) good cause exists to shorten the

applicable notice periods in Bankruptcy Rules 2002, 6004, and 6006 and the applicable notice

periods in the Local Rules, and (iv) no other or further notice of the Motion, the Sale Hearing or

the Sale (including the assumption and assignment of the Contracts), is or shall be required.

      D.   **Irreparable Harm.**   The Debtors' estates will suffer immediate and

irreparable harm if the relief requested in the Motion is not granted on an expedited basis

consistent with the provisions set forth herein and the Purchase Agreement, particularly given the

wasting nature of the Purchased Assets.

      E.   **LBI.** LBI is the subject of a proceeding under the Securities Investors

Protection Act of 1970 ("SIPA") which was filed on September 19, 2008. The Purchase

Agreement provides for the sale of certain of LBI's assets to the Purchaser. The effectiveness of

this Order is conditioned upon the entry of an order in LBI's SIPA proceeding which, to the

extent applicable, has the same material terms as this Order and is otherwise in form and

substance reasonably satisfactory to the Purchaser. As part of that transfer, the Depository Trust

Clearing Corporation ("DTCC") informed the Purchaser and LBI on Wednesday, September 17,

2008, that the Purchaser would be required to assume the liabilities associated with the accounts

maintained by LBI at the DTCC and its subsidiaries -- The Depository Trust Company ("DTC"),

the National Securities Clearing Corporation ("NSCC"), and the Fixed Income Clearing

Corporation ("FICC") – in their entirety and irrespective of whether the assets or liabilities in a

particular account were the subject of the Purchase Agreement or were owned by LBI or an affiliate of LBI. The Purchaser agreed to do so upon the terms and conditions specified in the Purchase Agreement, as amended.

      F.    **Opportunity to Object**. A reasonable opportunity to object and to be heard with respect to the proposed Sale, the Motion and the relief requested therein has been given, in light of the exigent circumstances in these cases, to all interested persons and entities, including the following: (i) the Office of the United States Trustee, (ii) counsel for the Purchaser, (iii) counsel for the Official Committee of Unsecured Creditors (the "Committee"), (iv) the Company's thirty largest creditors, (iv) Rock-Forty-Ninth LLC, (v) all entities known to have asserted any lien, claim, interest or encumbrance in or upon the Purchased Assets, (vi) all non-Debtor parties to Contracts that will be assumed on the Closing Date (the "Closing Date Contracts"), (vii) the United States Attorney's office, (viii) the United States Department of Justice, the Securities and Exchange Commission, (ix) the Securities Investor Protection Corporation, (x) the Internal Revenue Service, (xi) all persons, if any, who have filed objections to the Sale Motion; and (xiii) all persons who have filed a notice of appearance in the chapter 11 cases.

      G.    **Corporate Authority**. The Debtors (i) have full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby and the Debtors' sale of the   Assets has been duly and validly authorized by all necessary corporate action, (ii) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Purchase Agreement, (iii) have taken all corporate action necessary to authorize and approve the Purchase Agreement and the consummation of the transactions contemplated thereby, and (iv) no consents or approvals, other than those expressly

provided for in the Purchase Agreement, are required for the Debtors to consummate such transactions.

H.    **Sale in Best Interests**.  Good and sufficient reasons for approval of the Purchase Agreement and the Sale have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

I.    **Business Justification**.  The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Sale other than in the ordinary course of business under Bankruptcy Code section 363(b) before, and outside of, a plan of reorganization in that, among other things, the immediate consummation of the Sale with the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates, particularly given the wasting nature of the Purchased Assets.  Entry of an order approving the Purchase Agreement and all the provisions thereof is a necessary condition precedent to the Purchaser's consummation of the transactions set forth in the Purchase Agreement.

J.    **Arm's-Length Sale**.  The Purchase Agreement was negotiated, proposed and entered into by the Sellers and the Purchaser without collusion, in good faith and from arm's-length bargaining positions.  The Purchaser is not an "insider" of the Debtors, as that term is defined in Bankruptcy Code section 101(31).  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under Bankruptcy Code section 363(n).  Specifically, the Purchaser has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.

K.    **Good Faith Purchaser**.  The Purchaser is a good faith Purchaser of the Purchased Assets within the meaning of Bankruptcy Code section 363(m) and is, therefore,

5

entitled to all of the protections afforded thereby. The Purchaser has proceeded in good faith in all respects in connection with this proceeding.

L.    **Highest and Best Offer.** The Purchase Agreement constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

M.    **Consideration.** The consideration constitutes reasonably equivalent value or fair consideration, as the case may be (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code), and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. The Purchase Agreement represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of these chapter 11 cases. No other person or entity or group of entities, other than the Purchaser, has offered to purchase the Purchased Assets for an amount that would give greater economic value to the Debtors' estates. Approval of the Motion and the Purchase Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their creditors and all other parties in interest.

N.    **Free and Clear.** Except to the extent that certain intellectual property rights may be owned by entities other than the Seller, the Debtors and LBI are the sole and lawful owners of the Purchased Assets. The transfer of the Purchased Assets to the Purchaser under the Purchase Agreement will be a legal, valid, and effective transfer of the Purchased Assets, and vests or will vest the Purchaser with all right, title, and interest of the Debtors to the

6

Purchased Assets free and clear of all Liens, claims (as defined in section 101(5) of the

Bankruptcy Code) (including, without limitation, successor liability claims), encumbrances,

obligations, liabilities, contractual commitments, rights of first refusal or interests of any kind or

nature whatsoever (collectively, the "Interests"), including, but not limited to, (i) those that

purport to give to any party a right or option to effect any forfeiture, modification or termination

of the Debtors' interests in the Purchased Assets, or any similar rights or (ii) those relating to

taxes arising under or out of, in connection with, or in any way relating to the operation of the

Debtors' business prior to the Closing Date.  For avoidance of doubt, all Interests shall attach to

the proceeds ultimately attributable to the property against or in which such Interests are

asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the

same order of priority, which such Interests now have against the Purchased Assets or their

proceeds, subject to any rights, claims and defenses the Debtors or their estates, as applicable,

may possess with respect thereto.  Further, the assumption and assignment of any Closing Date

Contracts is likewise free and clear of all Interests.  Notwithstanding the foregoing, as of the

Closing Date, all obligations to The Options Clearing Corporation ("OCC") with respect to

Purchased Assets that are within the possession or control of OCC shall have been assigned to

the Purchaser, and the Purchaser shall have assumed all of such obligations including, without

limitation, all obligations with respect to short option positions, futures contracts, and stock loan

or borrow positions that are transferred to the accounts of Purchaser at OCC as of the Closing

Date in accordance with the Purchase Agreement.  From and after the Closing Date, all

securities, cash, collateral and other property transferred to accounts of the Purchaser at OCC

shall be subject to all rights of OCC therein in accordance with the By-Laws and Rules of OCC

including, without limitation, the security interests and setoff rights of OCC with respect thereto.

7

O.    **Free and Clear Findings Needed by Purchaser.**  The Purchaser asserts that it would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates and their creditors, if the sale of the Purchased Assets (except to the extent that certain intellectual property rights may be owned by entities other than the Seller) to the Purchaser and the assumption and assignment of the Contracts to the Purchaser was not free and clear of all Interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Interests.

P.    **No Liability Findings Needed by Purchaser.**  Purchaser asserts that it will not consummate the transactions contemplated by the Purchase Agreement unless the Purchase Agreement specifically provides, and the Bankruptcy Court specifically orders, that none of Purchaser or its affiliates, members or shareholders or the Purchased Assets will have any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability.

Q.    **Satisfaction of 363(f) Standards.**  The Sellers may sell the Purchased Assets (except to the extent that certain intellectual property rights may be owned by entities other than the Seller) free and clear of any Interests of any kind or nature whatsoever because in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  The person or entity with any Interest in the Purchased Assets (except to the extent that certain intellectual property rights may be owned by entities other than the Seller): (i) has, subject to the terms and conditions of this Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money

8

satisfaction of such Interest; or (iii) otherwise falls within the provisions of section 363(f) of the

Bankruptcy Code. Those holders of Interests who did not object to the Motion are deemed,

subject to the terms of this Order, to have consented pursuant to Bankruptcy Code section

363(f)(2). All holders of Interests are adequately protected by having their Interests attach to the

proceeds ultimately attributable to the Purchased Assets (except to the extent that certain

intellectual property rights may be owned by entities other than the Seller) against or in which

such Interests are asserted, subject to the terms of such Interests, with the same validity, force

and effect, and in the same order of priority, which such Interests now have against the

Purchased Assets or their proceeds, subject to any rights, claims and defenses the Debtors or

their estates, as applicable, may possess with respect thereto.

      R.    **No Fraudulent Transfer**. The Purchase Agreement was not entered into

for the purpose of hindering, delaying or defrauding creditors of Seller under the Bankruptcy

Code and under the laws of the United States, any state, territory, possession, or the District of

Columbia. Neither Debtors nor Purchaser is entering into the transactions contemplated by the

Purchase Agreement fraudulently for the purpose of such statutory and common law fraudulent

conveyance and fraudulent transfer claims.

      S.    **No Successor Liability**. Except for the Assumed Liabilities, the transfer

of the Purchased Assets (except to the extent that certain intellectual property rights may be

owned by entities other than the Seller) to the Purchaser under the Purchase Agreement shall not

result in (i) the Purchaser having any liability or responsibility for any claim against the Debtors

or against an insider of the Debtors, or (ii) the Purchaser having any liability or responsibility to

the Debtors except as is expressly set forth in the Purchase Agreement. Without limiting the

effect or scope of the foregoing, to the fullest extent permitted by law, the transfer of the

Purchased Assets(except to the extent that certain intellectual property rights may be owned by entities other than the Seller) from the Debtors to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Purchased Assets) to any liability for claims (as that term is defined in section 101(5) of the Bankruptcy Code) against the Debtors or the Debtors' interests in such Purchased Assets by reason of such transfer under the laws of the United States or any state, territory or possession thereof applicable to such transactions, including, without limitation, any successor liability.

T.      **Cure/Adequate Assurance**.  The assumption and assignment of the Contracts pursuant to the terms of this Order is integral to the Purchase Agreement and is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  The Debtors have:  (i) to the extent necessary, cured or provided adequate assurance of cure, of any default existing prior to the date hereof with respect to the Closing Date Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(A) and 365(f)(2)(A), and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Closing Date Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B) and 365(f)(2)(A).  The Purchaser's promise to pay the Cure Amounts (as defined below) and to perform the obligations under the Closing Date Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).  Any objections to the assumption and assignment of any of the Closing Date Contracts to the Purchaser are hereby overruled.  Any objections to the Cure Amounts (as defined below) are resolved as set forth herein.  All counterparties to Closing Date Contracts shall have until

10

October 3, 2008 (the "Cure Amount Objection Deadline") to file an objection to the cure

amounts of their respective Closing Date Contracts (including as to the identity of such

contracts) identified on http: //chapter 11.epiqsystems.com/Lehman (the "Website") (the "Cure

Amounts"). To the extent that any counterparty does not object to its Cure Amount by the Cure

Amount Objection Deadline, such counterparty is deemed to have consented to such Cure

Amounts and the assignments of their respective Closing Date Contracts to the Purchaser. To

the extent any objections to Cure Amounts are timely filed, the Debtors, Purchaser and the

counterparty shall meet and confer in good faith to attempt resolve any such objection without

Court intervention. If the objecting party and the Purchaser determine that the objection cannot

be resolved without judicial intervention, then such dispute will be determined by the Court upon

written application by either party on 20 (twenty) days notice, with any response due to such an

application 15 (fifteen) days after such application is filed. The Purchaser shall pay any Cure

Amount as soon as reasonably practicable after (i) the date on which the contracting counterparty

consents in writing to the Cure Amount, (ii) the date on which the counterparty is deemed to

have consented, or (iii) the date on which the Court enters an order determining the Cure

Amount after the notice and hearing procedure set forth above. The procedures with respect to

assumption, assignment and cure of the Contracts that are the subject of the Purchaser's

designation rights (the "Designated Contracts") will be set forth in one or more separate orders

of the Court which will be entered at a later date or dates.

    U.    **Prompt Consummation**. The Sale must be approved and consummated

promptly in order to preserve the viability of the businesses subject to the sale as going concerns,

to maximize the value of the estates. Time is of the essence in consummating the Sale.

V.       **Personally Identifiable Information**.  The Sale may include the transfer of Personally Identifiable Information, as defined in Bankruptcy Code section 101(41A).  No Consumer Privacy Ombudsman need be appointed under Code section 363(b)(1) because Purchaser has agreed to adhere to any such privacy policies applicable to the Debtors.

NOW, THEREFORE, IT IS ORDERED THAT:

1.       **Motion is Granted**.   The Motion and the relief requested therein is GRANTED and APPROVED, as set forth herein.

2.       **Objections Overruled**.  Any objections to the entry of this Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

3.       **Approval**.  The Purchase Agreement and all of the terms and conditions thereto are hereby approved.  The Debtors are hereby authorized and directed to (1) execute the Purchase Agreement, along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Purchase Agreement, provided that such additional documents do not materially change its terms; (2) consummate the Sale in accordance with the terms and conditions of the Purchase Agreement and the other agreements contemplated thereby; and (3) take all other and further actions as may be reasonably necessary to implement the transactions contemplated by the Purchase Agreement.

4.       **Free and Clear**.  Except as expressly provided for in the Purchase Agreement or this Order, pursuant to Bankruptcy Code sections 105(a) and 363(f), the Debtors are authorized and directed to transfer the Purchased Assets (except to the extent that certain intellectual property rights may be owned by entities other than the Seller) to the Purchaser and,

12

as of the Closing Date, the Purchaser shall take title to and possession of the Purchased Assets

(except to the extent that certain intellectual property rights may be owned by entities other than

the Seller) free and clear of all Interests of any kind or nature whatsoever, including but not

limited to the Liens and Excluded Liabilities, with all such Interests to attach to the proceeds

ultimately attributable to the property against or in which such Interests are asserted, subject to

the terms of such Interests, with the same validity, force and effect, and in the same order of

priority, which such Interests now have against the Purchased Assets or their proceeds, subject to

any rights, claims and defenses the Debtors or their estates, as applicable, may possess with

respect thereto.

      5.    **Valid Transfer**.  As of the Closing Date, (a) the transactions

contemplated by the Purchase Agreement effect a legal, valid, enforceable and effective sale and

transfer of the Purchased Assets to Purchaser, and shall vest Purchaser with title to such

Purchased Assets (except to the extent that certain intellectual property rights may be owned by

entities other than the Seller) free and clear of all Interests and Excluded Liabilities and (b) the

Purchase Agreement and the transactions and instruments contemplated hereby shall be

specifically performable and enforceable against and binding upon, and not subject to rejection

or avoidance by, the Debtors or any successor chapter 11 or chapter 7 trustee appointed with

respect thereto.

      6.    **General Assignment**.  On the Closing Date, this Order shall be construed

and shall constitute for any and all purposes a full and complete general assignment, conveyance

and transfer of the Sellers' interests in the Purchased Assets.  Each and every federal, state, and

local governmental agency or department is hereby directed to accept any and all documents and

13

instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

       7.    **Injunction**. Except as expressly permitted by the Purchase Agreement or by this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Interests or Claims of any kind or nature whatsoever against or in the Debtors or the Debtors' interests in the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non contingent, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Debtors' businesses before the Closing Date or the transfer of the Debtors' interests in the Purchased Assets to the Purchaser, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing against the Purchaser, its property, its successors and assigns, its affiliates or the interests of the Debtors in such Purchased Assets, such persons' or entities' Interests or Claims. Following the Closing Date, no holder of an Interest in or Claim against the Debtors shall interfere with Purchaser's title to or use and enjoyment of the Debtors' interests in the Purchased Assets based on or related to such Interests or Claims, and all such Claims and Interests, if any, shall be, and hereby are transferred and attached to the Debtors' interests in the Sale proceeds as provided in this Sale Order in the order of their priority, with the same validity, force and effect which they have against such Purchased Assets as of the Closing Date, subject to any rights, claims and defenses that the Debtors' estates and Debtors, as applicable, may possess with respect thereto.

8.     **Release of Interests**.  This Order (a) shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the Purchased Assets (except to the extent that certain intellectual property rights may be owned by entities other than the Seller) prior to the Closing Date have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

9.     **Direction to Release Interests**.   On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist.

10.    **No Successor Liability**.  Neither Purchaser nor its affiliates, successors or assigns shall, as a result of the consummation of the transaction contemplated by the Purchase Agreement,: (a) be a successor to the Debtors or their estates; (b) have, de facto or otherwise, merged or consolidated with or into the Debtors or their estates; or (c) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors.  Except for the Assumed Liabilities, the transfer of the Purchased Assets to Purchaser under the Purchase Agreement shall not result in (i) Purchaser, its affiliates, members, or shareholders, or the Purchased Assets,

15

having any liability or responsibility for any claim against the Debtors or against an insider of the

Debtors, (ii) Purchaser, its affiliates, members, or shareholders, or the Purchased Assets, having

any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or

in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or

Excluded Liability, or (iii) Purchaser, its affiliates, members, or shareholders, or the Purchased

Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the

Purchase Agreement.

       11.    **Examples of No Successor Liability**.  Without limiting the effect or

scope of the foregoing, as a result of the closing of the transactions contemplated by the Purchase

Agreement, the Purchaser shall have no successor or vicarious liabilities of any kind or character,

including, but not limited to, any theory of antitrust, environmental, successor or transferee

liability, labor law, de facto merger or substantial continuity, whether known or unknown as of

the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or

contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the

Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of

any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to

the operation of the Purchased Assets prior to the Closing Date.

       12.    **Assumption and Assignment of Contracts**.  In accordance with

Bankruptcy Code sections 363, 365 and 105(a), and subject to the terms of the Purchase

Agreement and this Sale Order, the Sellers are hereby authorized to assume and assign the

Closing Date Contracts, including customer account agreements, to which they are a party to the

Purchaser.  All counterparties to Closing Date Contracts shall have until the Cure Amount

Objection Deadline to file an objection to the Cure Amounts (including as to the specific identity

16

of such contracts). To the extent that any counterparty does not object to its Cure Amount by the

Cure Amount Objection Deadline, such counterparty is deemed to have consented to such Cure

Amounts and the assignments of their respective Closing Date Contracts to the Purchaser. To

the extent any objections are timely filed, the Debtors, Purchaser and the counterparty shall meet

and confer in good faith to attempt resolve any such objection without Court intervention. If the

objecting party and the Purchaser determine that the objection cannot be resolved without

judicial intervention, then such dispute will be determined by the Court upon written application

by either party on 20 (twenty) days notice, with any response due to such an application 15

(fifteen) days after such application is filed. The Purchaser shall pay any Cure Amount as soon

as reasonably practicable after (i) the date on which the contracting counterparty consents in

writing to the Cure Amount, (ii) the date on which the counterparty is deemed to have consented,

or (iii) the date on which the Court enters an order determining the Cure Amount after the notice

and hearing procedure set forth above. The procedures with respect to assumption, assignment

and cure of the Designated Contracts will be set forth in one or more separate orders of the Court

which will be entered at a later date or dates.

      13.    **Bankruptcy Code Sections 365(b)(1) and 365(f)(2).** The requirements

of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code are hereby deemed satisfied with

respect to the Closing Date Contracts.

      14.    **Binding Effect of Order.** This Order shall be binding upon and shall

govern the acts of all entities, including without limitation all filing agents, filing officers, title

agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds,

administrative agencies, governmental departments, secretaries of state, federal, state and local

officials, and all other persons and entities who may be required by operation of law, the duties

17

of their office, or contract, to accept, file, register or otherwise record or release any documents

or instruments, or who may be required to report or insure any title or state of title in or to any of

the Purchased Assets.

   15. **Ipso Facto Clauses Ineffective**.  Upon the Debtors' assignment of the

Contracts to the Purchaser under the provisions of this Sale Order and any additional order

contemplated by the Purchase Agreement, no default shall exist under any Closing Date

Contract, and no counterparty to any Closing Date Contract shall be permitted to declare a

default by the Purchaser under such Closing Date Contract or otherwise take action against the

Purchaser as a result of any Debtors' financial condition, bankruptcy or failure to perform any of

its obligations under the relevant Closing Date Contract.

   16. **Binding on Successors**.  The terms and provisions of the Purchase

Agreement and this Order shall be binding in all respects upon the Debtors, their estates, all

creditors of (whether known or unknown) and holders of equity interests in either Debtor,

Purchaser and its respective affiliates, successors and assigns, and any third parties,

notwithstanding any subsequent appointment of any trustee of the Debtors under any chapter of

the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

This Order and the Purchase Agreement shall inure to the benefit of the Debtors, their estates,

their creditors, the Purchaser and the respective successors and assigns of each of the foregoing.

   17. **Bankruptcy Code Section 363(n)**.  The consideration provided by

Purchaser for the Purchased Assets under the Purchase Agreement is fair and reasonable and

may not be avoided under Bankruptcy Code section 363(n).

   18. **Good Faith**.  The transactions contemplated by the Purchase Agreement

are undertaken by Purchaser without collusion and in good faith, as that term is used in

18

Bankruptcy Code section 363(m) and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Closing Date Contracts) with Purchaser, unless such authorization is duly stayed pending such appeal prior to the Closing Date. Purchaser is a good faith Purchaser of the Purchased Assets, and is entitled to all of the benefits and protections afforded by Bankruptcy Code section 363(m).

19.    **Fair Consideration**. The consideration provided by the Purchaser to the Debtors and LBI pursuant to the Purchase Agreement for its purchase of the Debtors' interest in the Purchased Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia; provided that nothing in the foregoing shall waive or compromise any claim of a creditor, including a non -debtor affiliate to seek relief against any estate or any person other than the Purchaser, arising out of or related to flows of funds to and from the Debtors prior to entry of this Order.

20.    **Retention of Jurisdiction**. This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, all amendments thereto and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to Purchaser; (b) interpret, implement and enforce the provisions of this Order; (c) protect Purchaser against any Interests in or Claims against the Sellers or the Purchased Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (d)

enter any orders under section 363 and 365 of the Bankruptcy Code with respect to the Designated Contracts.

21.     **Retention of Rights By the Government**.  Nothing in this Order or in the Purchase Agreement (i) releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order; or (ii) should be construed to give Purchaser any more protection against any government unit than it is otherwise entitled to under 11 U.S.C. § 363(f). Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under law.

22.     **Surrender of Possession**.  All entities that are currently, or on the Closing Date may be, in possession of some or all of the Purchased Assets in which the Sellers hold an interest hereby are directed to surrender possession of the Purchased Assets either to (i) the Debtors or LBI  before the Closing Date, or (ii) to Purchaser on the Closing Date.

23.     **Fees and Expenses**.  Any amounts payable by the Debtors under the Purchase Agreement or any of the documents delivered by the Debtors in connection with the Purchase Agreement, including, but not limited to the Breakup Fee or Expense Reimbursement, shall be paid in the manner provided in the Purchase Agreement and the Break-Up Fee and Competing Bid Order, entered on September 17, 2008, without further order of this Court, shall be an allowed administrative claim in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, shall have the other protections provided in the Break-Up Fee and Competing Bid Order, and shall not be discharged, modified or otherwise affected by any reorganization plan for the Debtors, except by an express agreement with Purchaser, its successors, or assigns.

24.    **Sale Proceeds**.  Any and all valid and perfected Interests in Purchased Assets of the Debtors shall attach to any proceeds of such Purchased Assets immediately upon receipt of such proceeds by the Debtors (or any party acting on any Debtor's behalf) in the order of priority, and with the same validity, force and effect which they now have against such Purchased Assets, subject to any rights, claims and defenses the Debtors, their estates or any trustee for any Debtor, as applicable, may possess with respect thereto, and, in addition to any limitations on the use of such proceeds pursuant to any provision of this Order, except as required by this Order or the Purchase Agreement, no proceeds subject to an asserted Interest shall be used or disbursed by the Debtors without the express consent of the party or parties asserting an Interest therein or further order of the Court after notice (to all parties who have asserted an Interest in such proceeds) and a hearing, consistent with the requirements of the Bankruptcy Code.

25.    **Non-material Modifications**.  The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates and has been agreed to between the Committee, the Debtors and the Purchaser.

26.    **Subsequent Plan Provisions**.  Nothing contained in any chapter 11 plan confirmed in any Debtor's bankruptcy case or any order confirming any such plan or in any other order in these chapter 11 cases (including any order entered after any conversion of a chapter 11 case of any of the Debtors to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Purchase Agreement or this Order.

21

27.    **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety; provided, however, that this Order shall govern if there is any inconsistency between the Purchase Agreement (including all ancillary documents executed in connection therewith) and this Order.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

28.    **Further Notice to Lienholders**.  The Debtors, at the Debtors' expense, shall provide additional notice to any additional lienholders identified after the Debtors obtain additional lien searches (such searches shall be done in a manner to the reasonable satisfaction of the Purchaser).   If additional lienholders are identified after the Debtors' additional searches, then such additional lienholders identified will be sent notice of the relief granted in the Sale Motion and will be given 15 (fifteen) days after such notice to file an objection to the 11 U.S.C. § 363(f) relief provided herein.   If after such notice, any objections are filed, the Debtors and the Purchaser will have 15 (fifteen) days to respond to such objections and such objections will be set for hearing and determined by this Court.

29.    **No Stay of Order**.  Notwithstanding the provisions of Interim Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for ten (10) days after the entry hereof, but shall be effective and enforceable immediately upon entry.  Time is of the essence in closing the transactions referenced herein, and the Debtors and the Purchaser intend to close the Sale as soon as practicable.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

30.    **Allocation**. The consideration received by Seller pursuant to the Purchase

Agreement on account of the Lehman headquarters at 745 Seventh Avenue in New York City,

the Cranford New Jersey Data Center and the Piscataway New Jersey Data Center (collectively,

the "Real Estate Assets") shall become property of the LBHI estate. The rights of all parties in

interest in respect of the proper allocation of proceeds received by the Seller on account of the

Purchased Assets other than the Real Estate Assets are reserved, as among each Seller (and

without impairing or affecting in any way Purchaser's rights under the Purchase Agreement),

subject to the further order of the Court. The Debtors shall seek an order approving such

allocation, on notice to the SIPA Trustee and the Committee, in the event of any dispute

regarding such allocation.

31.    **Preservation of Certain Records**. Subject to further order of the Court,

the Seller and the Purchaser are hereby ordered to take appropriate measures to maintain and

preserve, until the consummation of any chapter 11 plan for the Debtors, the books and records

and any other documentation, including tapes or other audio or digital recordings and data in or

retrievable from computers or servers, relating to or reflecting the records held by it or its

Affiliates relating to the Business, including the accounts, property and trading records of the

customers of the Seller.  In addition, the Debtors and Committee shall promptly identify

reasonable procedures for preserving information in the Seller or Purchaser's possession related

to potential tax or financial audits of, government investigations of, or claims against Seller, as

well as any claims that the Debtors may have against third parties, and the Seller and Purchaser

shall maintain and reserve such information, subject to further order of the Court until the

consummation of any chapter 11 plan for the Debtors.

32.    Notwithstanding anything to the contrary set forth in this order, this order does not (i) alter the rights of parties to "forward contracts," "securities contracts," "repurchase agreements," "commodity contracts," "swap agreements," "master netting agreements" (each as defined in the Bankruptcy Code) from exercising their rights pursuant to the "financial contract safe harbor" provisions of the Bankruptcy Code, including without limitation those set forth in sections 555, 556, 559, 560, 561 and 562 or (ii) affect any right of JPMorgan under or with respect to any securities contract, commodities contract, forward contract, repurchase agreement, swap agreement or master netting agreement (each as defined in the Bankruptcy Code) to exercise any contractual right (as defined in the relevant section of the Bankruptcy Code) of a kind described in section 362(b)(6), (7), (17), or (27), 362(o), 555, 556, 559, 560 or 561 of the Bankruptcy Code.

33.    Nothing in this order or actions taken pursuant to this Order shall undermine any obligations of the Debtors or the SIPA Trustee to comply with the rules of the Chicago Mercantile Exchange.

Dated:  New York, New York
        September 19, 2008

                        *s/ James M. Peck*
                        HONORABLE JAMES M. PECK
                        UNITED STATES BANKRUPTCY JUDGE