BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
Jonathan D. Schiller
Hamish P.M. Hume
Jack G. Stern

Attorneys for Barclays Capital Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11 Case No.<br><br>08-13555 (JMP)<br><br>(Jointly Administered) |

# Exhibit 6

\*\*\*Excerpts\*\*\*

*HEARING TO CONSIDER ENTRY OF*
*SALE PROCEDURES ORDER*
HEARING DATE AND TIME: September 17, 2008 at 11:00 a.m. (Eastern Time)

*HEARING TO CONSIDER ENTRY OF*
*SALE ORDER*
HEARING DATE AND TIME: TBA
OBJECTION DEADLINE: TBA

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Richard P. Krasnow
Lori R. Fife
Shai Y. Waisman
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
:
**In re**                                                        :   **Chapter 11 Case No.**
                                                                 :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*                      :   **08-13555 (JMP)**
                                                                 :
Debtors.                                                         :   **(Jointly Administered)**
                                                                 :
---------------------------------------------------------------x

**DEBTORS' MOTION TO (A) SCHEDULE A SALE HEARING; (B) ESTABLISH
SALES PROCEDURES; (C) APPROVE A BREAK-UP FEE; AND (D) APPROVE
THE SALE OF THE PURCHASED ASSETS AND THE ASSUMPTION AND
ASSIGNMENT OF CONTRACTS RELATING TO THE PURCHASED ASSETS**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and LB 745 LLC ("LB 745"), as debtors and debtors in possession (collectively, the "Debtors" and, collectively with their nondebtor affiliates, "Lehman"), respectfully represent:

### Jurisdiction and Venue

4.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

5.      The Debtors are requesting, pursuant to sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6003, 6004, 6006, and 9006, (i) an order (the "Sale Hearing Order") substantially in the form attached hereto as Exhibit 1 (a) setting the time, date, and place of a hearing (the "Sale Hearing") to consider the sale of the Purchased Assets[1] and (b) approving the procedures for the conduct of the sale, (c) approving the Break-Up Fee (as defined below), and (ii) an order approving (a) a sale of the Purchased Assets pursuant to that Asset Purchase Agreement (the "Purchase Agreement"), among Barclays Capital Inc. ("Purchaser"), the Debtors, and LBI (collectively, the "Seller"), dated September 16, 2008, a copy of which is annexed hereto as Exhibit 2, free and clear of all liens, claims, encumbrances, and other interests, (b) the assumption and assignment of certain executory contracts and unexpired leases related to the Purchased Assets (collectively, the "Contracts"), pursuant to section 365 of the Bankruptcy Code, and (c) entry of an order substantially in the form attached hereto as Exhibit 3 approving the Purchase Agreement (the "Sale Order").

6.      The sale of the Purchased Assets, is critical to the stabilization of value. Each day that the Purchased Assets are subject to the vagaries and vicissitudes of the marketplace and the impact of bankruptcy diminishes the value of such assets. Time is of the essence. The Purchase Agreement represents a reasonable exercise of business judgment by the

---

[1]     Capitalized terms not defined in this Motion shall have the meaning ascribed to them in the Purchase Agreement.

Debtors. The sale is in the best interests of the Debtors, their employees and their economic stakeholders. The relief requested in this Motion should be granted.

### The Need for an Expeditious Sale

7.  As set forth in the First Day Affidavit, as a financial services firm, Lehman is materially affected by conditions in the global financial markets and by worldwide economic conditions. For most of 2008, Lehman operated in an extremely unfavorable global business environment. The events of the past week that drove down Lehman's credit standing were particularly harmful to the ability of Lehman to sustain its operations. The combination of low levels of liquidity and the requirement that financial companies de-leverage their balance sheets resulted in downward pressure on financial asset prices. These global and national economic conditions, in the aggregate, depressed both the valuations of Lehman's inventory positions as well as transactional volumes and market activity levels in which Lehman's capital markets and investment banking business segments operated. Ultimately, the instability in the financial and credit markets caused significant liquidity problems and credit downgrades for Lehman. These factors resulted in a chain reaction of adverse economic consequences that impeded its ability to maintain normal business operations. Attempts to pursue strategic alternatives were thwarted by its financial deterioration and lack of support from other entities.

8.  As a result, the Debtors commenced their chapter 11 cases to preserve and maximize the value, protect their public customers, limit turmoil in the financial markets and benefit Lehman's creditors and employees. The proposed sale will maximize the value of the Purchased Assets and avoid rapid erosion of their value.

9.  Pursuant to the Purchase Agreement, the Purchaser will pay approximately $1.7 billion in cash for the Purchased Assets plus assume other obligations and expenses. The Purchased Assets include designated assets relating to LBI's business which are owned by LBI

as well as certain assets which are owned by LBHI and related to the business of LBI. These include Lehman's worldwide headquarters which is owned by LB 745.

10. Upon consummation of the transaction, the Purchaser will assume ownership of substantially all operations of LBI, including assumption of Seller's liabilities under assumed contracts, and performance under Seller's obligations as to securities and other transactions. All remaining customer accounts will be transferred to the Purchaser. The Purchaser also will assume substantial liabilities relating to LBI's employees, estimated at approximately $2.5 billion. The sale will relieve LBHI of exposure based upon its guarantees of many of LBI's obligations.

11. LBI is a valuable, but highly sensitive, asset of LBHI. Its value is greatly dependent upon its ability to assure its clients and customers of its financial and operational integrity. In the circumstances of Lehman's instability, Lehman cannot instill that assurance in its clients and customers. Consequently, it is urgent to sell the Purchased Assets now or face material disruption of their value. Hence, the instant motion.

12. To effectuate the critical sale and provide the Purchaser with its required protections pursuant to section 363 of the Bankruptcy Code, the Purchase Agreement contemplates that, prior to the Sale Hearing, LBI will consent to the commencement of a case under the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. §§ 78aaa, *et seq*. In that proceeding, the Debtors will request that the SIPA Trustee consent to the sale and request the SIPA Court's approval thereof. The Securities Investor Protection Corporation ("SIPC") and the Securities and Exchange Commission (the "SEC"), as well as the Federal Reserve Bank, have been apprised of the sale and the need for immediate approval of the sale by the SIPA

B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Wieboldt Stores, Inc.*, 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale); *In re Condere Corp.*, 228 B.R. 615 (Bankr. S.D. Miss. 1998) (approving a private sale of a chapter 11 debtor's assets where the standards of section 363(b) were met).

24. The proposed sale will result in the highest and best recovery for the Debtors. In the pursuit of strategic alternatives, LBHI has attempted to sell the Purchased Assets together with other Lehman assets. Indeed, the financial community is well aware that the Purchased Assets were for sale. The only serious offeror is the Purchaser.

25. Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To sell property under section 363(b), the Debtors must demonstrate to the Court a "good business reason" for the proposed action. *See Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d. Cir 1997) ("A sale of a substantial part of a [c]hapter 11 estate other than in the ordinary course of business may be conducted if a good business reason exists to support it."); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (in considering a sale outside a plan of reorganization, a judge must not be shackled with unnecessarily rigid rules when exercising the broad administrative power granted him under the Bankruptcy Code, but must simply find "a good business reason" supporting the sale ); *In re Global Crossing, Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003). As this Court has stated, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of*

assets for value, in good faith and without notice of adverse claims." *See, e.g.. Licensing by Paolo*, 126 F.3d at 390. The Second Circuit has stated that:

> [g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made. A purchaser's good faith is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'

*Id.* (internal citations omitted).

39. The terms and conditions of the Purchase Agreement were negotiated by the Debtors and Purchaser at arm's length and in good faith. Each party was represented by sophisticated counsel. Accordingly, the Debtors request that the Court determine that the Purchaser has acted in good faith and is entitled to the protections of a good faith purchaser under section 363(m) of the Bankruptcy Code.

### Request for Relief Under Bankruptcy Rules 6003(b), 6004(g), and 6006(d)

40. Bankruptcy Rule 6003(b) permits a debtor to use, sell, lease, or otherwise incur an obligation regarding property of the estate during the first 20 days of a case only to the extent it is necessary to avoid immediate and irreparable harm. As set forth in greater detail above, it is necessary to sell the Purchased Assets during the first 20 days of these cases to avoid the immediate deterioration of value that will result without consummation of the proposed sale. Accordingly, Bankruptcy Rule 6003(b) has been satisfied.

41. Bankruptcy Rule 6004(h) provides an "order authorizing the use, sale, or lease of property is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). Bankruptcy Rule 6006(d) further provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6006(d). In light of the fragility of the Purchased Assets