BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-2300
Facsimile:  (212) 446-2350
Jonathan D. Schiller
Hamish P.M. Hume
Jack G. Stern

Attorneys for Barclays Capital Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

# Exhibit 9

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
In re:                                                        :
                                                              :
LEHMAN BROTHERS INC.,                                         :     Adversary Proceeding
                                                              :     No. 08-01420-JMP SIPA
                              Debtor.                         :
                                                              :
--------------------------------------------------------------x

### DECLARATION OF GERARD LAROCCA IN SUPPORT OF THE TRUSTEE'S MOTION FOR ENTRY OF AN ORDER APPROVING A SETTLEMENT AGREEMENT

Pursuant to 28 U.S.C. §1746, GERARD LAROCCA declares as follows:

1.      I am the Chief Administrative Officer of Barclays Capital Inc. ("Barclays"). I submit this declaration in support of the Trustee's motion for approval of a Settlement Agreement between the Trustee, JPMorgan Chase Bank, N.A. ("JPMorgan") and Barclays. Except where stated otherwise, I have personal knowledge of the facts set forth in this declaration.

2.      The Settlement Agreement compromises substantial claims among the settling parties arising out of funding and related transactions pursuant to agreements entered into during the week of September 15, 2008. In this declaration, I describe the events leading to the settlement.

3.      The week of September 15, 2008 was one of the most tumultuous weeks in our nation's financial history. On Monday, September 15, 2008, Lehman Brothers Holdings, Inc. ("LBHI") filed for bankruptcy. Early that week, as Barclays was negotiating the purchase of certain assets of the businesses of LBHI and Lehman Brothers Inc. ("LBI"), the Federal Reserve Bank of New York (the "Fed") requested that Barclays take the place of the Fed in providing funding to LBI.

4.    On Wednesday, September 17, 2008, Barclays agreed with the Fed to replace the Fed in funding LBI – that is, to "step into the shoes of the Fed."

5.    The agreement with the Fed was to be accomplished through a reverse repurchase transaction between Barclays and LBI (the "Replacement Transaction"). Under the Replacement Transaction, Barclays was to provide $45 billion in funding to LBI and in exchange was to become the owner of securities that, as of the evening of September 17, 2008, were pledged by LBI to the Fed (the "Fed Portfolio") in connection with the Fed's provision of funding to LBI.

6.    The transfers contemplated by the Replacement Transaction between LBI and Barclays were to take place on Thursday, September 18, 2008. Thus, as Barclays and LBI had agreed, Barclays transferred $45 billion to LBI at a JPMorgan account that afternoon and early evening. Also on that Thursday, JPMorgan received, in a transfer from the Fed to LBI, the securities comprising the Fed Portfolio that were to be acquired by Barclays pursuant to the Replacement Transaction. JPMorgan, at LBI's direction, then engaged in a process of transferring the Fed Portfolio securities to Barclays. Before all of the Fed Portfolio securities were delivered to Barclays as contemplated under the Replacement Transaction, however, the Fedwire and Depository Trust Company ("DTC") services necessary to complete the transfers closed late that evening. Accordingly, the Replacement Transaction could not be completed on September 18, 2008, as originally planned.

7.    Because the Replacement Transaction could not be completed as originally contemplated, Barclays and LBI discussed how to resolve and complete the Replacement Transaction in conversations shortly after midnight, i.e., during the early hours of Friday morning, September 19, 2008. To complete the Replacement Transaction, LBI and Barclays agreed that LBI would transfer back to Barclays $7 billion in cash (the "Subject Funds") from LBI.

2

8.       Pursuant to that agreement (and the instructions of LBI and Barclays pursuant to that agreement), in the early hours of Friday, September 19, 2008, JPMorgan transferred $7 billion in cash from LBI to Barclays at an account at JPMorgan, thus completing the Replacement Transaction.

9.       When the Fed, Barclays and LBI originally agreed to engage in the Replacement Transaction, the parties intended for all of the Fed Portfolio securities to be delivered to Barclays under the Replacement Transaction. As that had not happened as contemplated by the opening of business on Friday, September 19, 2008, LBI and Barclays discussed during the business day on September 19 and into the weekend of September 20, 2008, the transfer to Barclays of the portion of the Fed Portfolio securities that had not yet been delivered as originally contemplated. Despite those discussions, no agreement was reached between the parties regarding such additional transfer, and therefore no further transfer occurred before the closing of the Asset Purchase Agreement between Barclays and LBI (as amended, the "APA") early on the morning of Monday, September 22, 2008.

10.      Because the Replacement Transaction was structured as a reverse repurchase transaction, LBI was obligated under the Replacement Transaction to "repurchase" the Fed Portfolio securities from Barclays. As part of the APA, however, Barclays would be acquiring (without LBI having any repurchase obligations) the very securities that had been delivered under the Replacement Transaction. Thus, at the closing of the APA transaction on Monday, September 22, 2008, the Clarification Letter to the APA, dated as of September 20, 2008 (the "Clarification Letter"), simply terminated the repurchase part of the Replacement Transaction with respect to "all securities and other assets held by" Barclays "under the September 18, 2008 repurchase arrangement among" Barclays and LBI. This termination meant that all of the securities that were actually delivered on September 18, 2008, and that were by then held in a

3

Barclays account at the Bank of New York were "deemed to constitute part of the Purchased Assets" under the APA (and thus LBI would have no further obligation to "repurchase" those securities and Barclays would not be obligated to deliver such securities back to LBI).

11.    Because the Subject Funds had been returned to Barclays in order to complete the Replacement Transaction and no further transfer of the securities originally contemplated to be delivered to Barclays were made by LBI after Thursday, September 18, 2008, the termination of the Replacement Transaction pursuant to the Clarification Letter also meant that Barclays, naturally, retained its $7 billion in Subject Funds. At the time the Clarification Letter was finalized, Barclays believed its $7 billion—*i.e.*, the Subject Funds— was in its account at JPMorgan.

12.    On Tuesday, September 23, 2008, well after finalizing the Clarification Letter, Barclays learned for the first time that the Subject Funds were not in its account at JPMorgan.

13.    Because the Subject Funds were not in Barclays account, the transfer of the Subject Funds by JPMorgan left Barclays without the full consideration it had contracted for in the Replacement Transaction and under the APA transaction. Instead, Barclays had neither its $7 billion in Subject Funds nor the undelivered portion of the Fed Portfolio securities that were originally contemplated to have been delivered on September 18, 2008.

I declare under penalties of perjury that the foregoing is true and correct.

Executed in Wilmington, Delaware on:
December 5, 2008

GERARD LAROCCA

4