**HEARING DATE AND TIME: JUNE 24, 2009 AT 10:00 A.M.**
**OBJECTION DEADLINE: JUNE 5, 2009 AT 4:00 P.M.**

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Susheel Kirpalani
James C. Tecce
Eric M. Kay

*Special Counsel to Official*
*Committee Of Unsecured Creditors of*
*Lehman Brothers Holdings Inc., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
| | |
|---|---|
| In re: : | Chapter 11 Cases |
| : | Case No. 08-13555 (JMP) |
| **LEHMAN BROTHERS HOLDINGS INC., et al.,** : | (Jointly Administered) |
| : | |
| Debtors. : | |

------------------------------------------------------------------------x

**RESPONSE OF OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS OF LEHMAN BROTHERS HOLDINGS INC., ET AL. TO**
**DEBTOR'S MOTION FOR AN ORDER, PURSUANT TO FED. R. BANKR. P.**
**2004, AUTHORIZING DISCOVERY FROM BARCLAYS CAPITAL, INC.**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

       The Official Committee of Unsecured Creditors (the "Committee") of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors and debtors in possession (collectively

the "Debtors"), hereby files this response (the "Response") to the Motion (the "Rule 2004

Motion") (Docket No. 3596) for an Order Pursuant to Fed. R. Bankr. P. 2004, Authorizing

Discovery from Barclays Capital, Inc ("Barclays"), filed by LBHI in the above-captioned cases.

As set forth more fully below, while the Committee agrees with the arguments and assertions set

forth in (and indeed joins in) the Rule 2004 Motion, it writes separately to state:

- shortly after the Sale Transaction closed, the Committee initiated its own investigation (that continues to this day) into the facts and circumstances surrounding the Sale Transaction, pursuing, among other things, a final reconciliation of the assets transferred and liabilities assumed in the transaction;

- the Committee supports the Debtors' investigation -- the perspective of a transaction counterparty and estate fiduciary will prove beneficial. In order to ensure an efficient investigation and avoid duplication, the Committee intends to coordinate its efforts with those of the Debtors. Thus, the Committee submits the two investigations will be complementary to one another; and

- to the extent Barclays produces documents to the Debtors, the Committee should receive copies of those documents; moreover, to the extent depositions are authorized, the Committee's rights to attend those depositions and propound questions therein should be preserved.

In further support of its Response, the Committee respectfully represents as follows:

## II.    RELEVANT FACTUAL BACKGROUND

### A.    SALE TRANSACTION

1.    Immediately after the commencement of its chapter 11 case on September 15, 2008, LBHI proceeded with the sale of Lehman Brothers, Inc. ("LBI"), its primary broker-dealer subsidiary, to Barclays. In connection therewith, on or about September 15, 2008, the New York Federal Reserve Bank (the "New York Fed") extended a collateralized line of overnight financing to LBI in order to fund its operations pending the sale.[1] On September 16, 2008, the New York Fed advised Barclays that "Barclays needed to take out the New York Fed's exposure to LBI prior to the closing of its transaction."[2] Barclays thus agreed to assume the New York Fed's obligations to fund LBI, which entailed the New York Fed transferring (to Barclays) a wide array of LBI securities pledged to the New York Fed to collateralize that obligation (the "Fed Portfolio Securities").

---

[1]   Declaration Of Shari D. Leventhal In Support Of December Settlement Motion (as defined below) (the "Leventhal Decl.") at ¶ 6.  (See Docket No. 387 in Case No. 08-1420 (JMP)).

[2]   Leventhal Decl. at ¶ 7.

2

2.  By order dated September 20, 2008, the Court approved the sale to Barclays of certain assets of LBHI and certain of its subsidiaries, including LBI and LB745 LLC (collectively, the "Lehman Sellers"), used in connection with LBHI's U.S. and Canadian investment banking and capital markets business (the "Sale Transaction").  Given the perceived urgency of consummating the transaction rapidly to minimize purported market dislocations relating to the collapse of the Debtors and LBI, the Court approved the transaction within five business days of the commencement of LBHI's chapter 11 case.  The Sale Transaction closed on September 22, 2008.

3.  Notwithstanding the closing, the Sale Transaction's complexity and urgency have led to various unresolved issues and lingering disputes.  Indeed, various parties to the transaction and others since have reappeared before the Court to rectify purported "mistakes," and compromise disputes, including Barclays, JPMorgan Chase Bank, N.A. ("JPMC"), the Depository Trust Corporation (the "DTC"), the trustee appointed in LBI's Securities Investor Protection Act proceeding (the "SIPA Trustee") and the Federal Reserve Bank of New York (the "New York Fed"); specifically:

- the December Settlement Motion[3] resolved disputes concerning the DTC's failure to transfer to Barclays not less than $7 billion of Fed Portfolio Securities originally pledged to the New York Fed and JPMC's subsequent failure to transfer $7 billion in cash to Barclays in replacement of such securities (which JPMC instead retained and applied to reduce LBI's obligations to it);

---

[3]  Motion Under 11 U.S.C. §§ 105 And 365 And Fed. R. Bankr. P. 9019(a) For Entry Of An Order Approving Settlement Agreement, filed on December 5, 2008 (the "December Settlement Motion") (Docket No. 387 in Case No. 08-1420 (JMP)).

3

- the January Settlement Motion[4] resolved disputes concerning the failure by the DTC to transfer to Barclays securities in LBI customer accounts (instead proceeding to wind down LBI's DTC accounts and apply the securities to LBI obligations owing to the DTC); as a result of the DTC's actions, the SIPA Trustee agreed to provide Barclays with a "Make-Whole Payment" (as defined therein) that could total approximately $221 million, and the DTC received a release; and

- Barclays filed two motions[5] pursuant to Federal Rule of Civil Procedure 60(b) seeking reconsideration of the order approving the Sale Transaction, requesting, among other things, the removal of certain contracts (including those with American Express Financial Corporation) from the assumed contracts list.

B. **COMMITTEE'S INVESTIGATION**

4. Because the speed with which the Sale Transaction closed prevented the Committee from completing the appropriate diligence, shortly after the closing, the Committee began investigating the particulars of the transaction. In the course of that investigation, the Committee discovered discrepancies between the terms of the Sale Transaction as the Lehman Sellers and Barclays represented to the Committee and the recitation of those terms that has appeared in later-filed documents (e.g., the December and January Settlement Motions). Thus, when the SIPA Trustee, JPMC and Barclays presented the December Settlement Motion, the Committee filed its Limited Objection,[6] arguing, among other things, that the settlement's approval should be adjourned because it sought the Court's imprimatur of the settling parties' depiction of the facts and circumstances surrounding the Sale Transaction. Those findings did

---

[4] Motion Under Fed. R. Bankr. P. 9019(a) For Approval of Settlement and Compromise, filed on January 22, 2009 (the "January Settlement Motion") (Docket No. 586 in Case No. 08-1420 (JPM)).

[5] See Docket No. 809 (Motion Of Barclays Capital Inc. For Relief Concerning Certain Contracts Erroneously Posted With The "Closing Date Contracts"); Docket No. 959 (Motion Of Barclays Capital Inc. For Relief Concerning American Express Contract Erroneously Posted With Closing Date Contracts).

[6] Limited Objection Of Official Committee Of Unsecured Creditors Of Lehman Brothers Holdings Inc., Et Al. To SIPA Trustee's Motion Under 11 U.S.C. §§ 105 And 363 And Fed. R. Bankr. P. 9019(a) For Entry Of An Order Approving Settlement Agreement, dated December 19, 2008 (Docket No. 453 in Case No. 08-1420 (JMP)) (the "Limited Objection").

4

not comport with facts the Committee was gathering in connection with its attempts to reach a final reconciliation.

      5.      Specifically, through the weekend of September 20-21, 2008, the transaction appears to have undergone numerous material modifications -- resulting in significant changes to both the nature and amount of assets transferred to Barclays and the liabilities assumed by Barclays. Those discrepancies have provided a focal point for the Committee's investigation:

| ISSUE | DECEMBER SETTLEMENT MOTION DEPICTION | FACTS RECOUNTED TO COMMITTEE | ISSUES BEING INVESTIGATED BY COMMITTEE |
|---|---|---|---|
| **VALUE OF SECURITIES TRANSFERRED** | Fed Portfolio Securities totaling $49.7 billion were to be transferred to Barclays as collateral for funding LBI | The pre-mark valuation was $49.9 billion; the September 21 valuation had declined to between $44 and $45 billion; LBI would transfer an additional $1.9 billion of securities that previously had not been pledged[7] | Schedules of securities, marks (at various dates and steps in the transaction), and methods of marking; explanation of, inter alia, (a) $200 million difference between $49.7 billion and $49.9 billion figures; (b) change from $47.4 billion (Sale Hearing) to $49.9 billion; (c) alleged decline in valuation to between $44 and $45 billion; (d) amount of additional securities (if any) transferred to Barclays |
| **VALUE OF ASSUMED LIABILITIES** | Barclays assumed New York Fed liabilities totaling $45.0 billion | Barclays assumed New York Fed liabilities totaling $45.5 billion and an additional $4.25 of liabilities representing an unknown combination of additional advances and/or assumed liabilities[8] | Final reconciliation of liabilities assumed; explanation of (a) reduction in assumed liabilities of New York Fed by $500 million (i.e., $45.5 billion versus $45.0 billion); and (b) content and composition of additional liabilities assumed ($4.25 billion) |

---

[7]     Compare Leventhal Aff. ¶¶ 12-13, with, The Declaration Of Saul Burian In Support Of Limited Objection Of Official Committee Of Unsecured Creditors Of Lehman Brothers Holdings Inc., Et Al. To SIPA Trustee's Motion Under 11 U.S.C. §§ 105 And 363 And Fed. R. Bankr. P. 9019(a) For Entry Of An Order Approving Settlement Agreement (the "Burian Decl."), at ¶ 10. See Docket No. 493 in Case No. 08-1420 (JMP).

[8]     Compare Leventhal Aff. ¶¶ 7, 9, 11-12, with, Burian Decl. ¶ 10.

| ISSUE | DECEMBER SETTLEMENT MOTION DEPICTION | FACTS RECOUNTED TO COMMITTEE | TOPICS FOR INVESTIGATION |
|---|---|---|---|
| **RESIDENTIAL REAL ESTATE MORTGAGE SECURITIES** | At the Sale Hearing, the Debtors and the DTC advised that $6 billion in residential real estate mortgage securities would be transferred to Barclays -- but that $3 billion of those securities might be returned to LBI | Disposition of residential real estate mortgage securities is unclear; also unclear whether any such securities were liquidated by JPMC or transferred to Barclays[9] | Final reconciliation showing which (and what amount of) residential real estate mortgage securities were held as collateral for the DTC, what the obligations owing from LBI to DTC (if any) actually were, and whether such securities have been, or should have been returned to LBI or otherwise were foreclosed upon or taken by other creditors |

6. While the Court did not sustain the Committee's Limited Objection, it agreed the issues it raised presented "a very significant matter" that "does draw all of our attention back to what happened in September."[10] With respect to the Committee's desire for additional information, the Court explained: "I think it important that there be reasonably prompt resolution of outstanding questions that the Committee may have on the subject. I would hope that it's not necessary for the Committee to have to file 2004 requests in order to get the information that it seeks which seems to be reasonable and consistent with its mandate."[11]

7. Promptly following the hearing, the Committee began pursuing documents and information from Barclays on an informal basis. On December 26, 2008, the Committee sent a narrowly tailored document request to counsel for Barclays and counsel for the DTC requesting certain documents relevant to the final reconciliations of the Sale Transaction.[12] Through January and February 2009, representatives from Barclays, Barclays' counsel, Committee counsel and its financial advisors met to discuss discovery requests and the Committee's understanding (and believed discrepancies) concerning the Sale Transaction.

---

[9] Compare Tr., Hearing, Sept. 19, 2008 at 52:8-53:8, with, Burian Decl. ¶ 10.

[10] Tr., Hearing, Dec. 22, 2008 at 50:24-25. A copy of the relevant portion of the Transcript is attached hereto as Exhibit A.

[11] Id. at 50:25-51:6.

[12] The Committee sent a second informal document request in February 2009, after meeting with counsel for Barclays and certain Barclays representatives.

Between March and May 2009, (a) Barclays produced certain documents in response to the Committee's request and (b) the Committee received documents from, and met with the DTC and its counsel concerning the Sale Transaction.

### RESPONSE

8.      Nearly nine months after the Sale Transaction closed, a final reconciliation of the assets transferred and the liabilities assumed continues to elude estate fiduciaries, including the Committee. Significant questions remain concerning whether the estates received the full benefit of their bargain as described initially -- a conclusion corroborated by the numerous "settlement motions" that followed the closing. Given the discrepancies described in the Rule 2004 Motion[13] (which the Committee first alluded to in its Limited Objection to the December Settlement Motion) and the uncertainty that continues to surround the Sale Transaction, efforts should be focused on bringing about the transparency that is the hallmark of bankruptcy sale transactions.

9.      At this juncture of the chapter 11 cases, the Committee continues to remain best positioned to investigate the Sale Transaction for the benefit of all creditors. Nonetheless, given the complexity of the transaction, the alacrity with which it was consummated, and the amount of estate assets at issue, the Committee welcomes the involvement of a similarly-motivated estate fiduciary like the Debtors. This is especially true considering the perspective a transaction counterparty brings to bear. In this regard, the Committee joins in the Rule 2004 Motion.

10.     To ensure efficiency, the Committee respectfully requests that any Order of the Court granting the Rule 2004 Motion also provide that the Committee receive copies of all documents produced to LBHI and that representatives of the Committee be entitled to appear and

---

[13]    As the Debtor notes in the Rule 2004 Motion, "the Debtor has become aware of apparent material discrepancies relating to the liabilities Barclays was to assume and the benefits that LBHI (or related entities) was to receive under this and related transactions." See 2004 Motion at ¶ 2.

7

propound questions at any deposition noticed in accordance with such Order.  The Committee respectfully submits that coordination of its efforts with those of the Debtors will avoid duplication and minimize estate expense.[14]

## CONCLUSION

For the reasons set forth above, the Committee respectfully requests that the Court grant the Debtors' Rule 2004 Motion consistent with the Response, and grant such other and further relief as the Court deems appropriate and just.

Dated:  June 5, 2009
         New York, New York

> **QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP**
>
> By: /s/  James C. Tecce
>      Susheel Kirpalani
>      James Tecce
>      Eric Kay
>
> 51 Madison Avenue
> New York, NY 10010
> Telephone No.: (212)849-7000
> Facsimile No.: (212)849-7100
>
> *Special Counsel to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings, Inc., et al.*

---

[14] While Barclays may claim it is burdened by another estate fiduciary seeking to investigate and audit the Sale Transaction, we note that no less than three major law firms have represented or are currently representing Barclays in connection with the Sale Transaction and these chapter 11 cases.