UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11 Case No.<br>08-13555 (JMP)<br>(Jointly Administered)<br><br>**REDACTED VERSION** |

### ERNST & YOUNG LLP'S RESPONSES AND OBJECTIONS TO THE EXAMINER'S SUBPOENA FOR RULE 2004 EXAMINATION

Pursuant to Paragraph 6 of this Court's February 11, 2009 Order granting the Examiner's Motion Directing the Production of Documents and Authorizing the Examinations of the Debtors' Current and Former Officers, Directors and Employees, and Other Persons and Entities (Dkt. #2804 (directing parties to file with the Bankruptcy Court an objection or response to a subpoena)), Ernst & Young LLP ("EY"), by its undersigned counsel, hereby responds and objects to the Subpoena dated May 29, 2009, for Rule 2004 Examination (the "Subpoena") issued by Anton R. Valukas, the appointed examiner (the "Examiner") for Lehman Brothers Holdings Inc. and its affiliated debtors (collectively "LBHI").

### OVERVIEW

This Examiner does not have a rolling mandate, but rather has been authorized to investigate only certain specified matters, which relate almost exclusively to the months immediately preceding LBHI's September 15, 2008 bankruptcy filing. Despite these plainly defined limitations on the scope of the Examiner's investigation, the focus of the overwhelming majority of the approximately one million pages of documents he seeks in his Subpoena to EY is not the period of months leading up to the bankruptcy filing, but the period of months a year earlier – *ending on* November 30, 2007.

Because EY's good faith efforts to reach a reasonable compromise with the Examiner regarding the scope of the Subpoena have been unsuccessful to date, EY is constrained to submit these Objections.

### A. The Court Has Outlined A Narrow Scope For The Examiner's Investigation

After LBHI filed its voluntary petition for chapter 11 bankruptcy on September 15, 2008, eight different parties requested that the Bankruptcy Court appoint an examiner pursuant to 11 U.S.C. § 1104(c)(2). The parties requesting the appointment of an examiner argued that the scope of the Examiner's investigation should be narrowly focused on the months leading up to LBHI's bankruptcy filing. *See, e.g.*, 10/20/08 Motion of the Walt Disney Company (Dkt. #1143) (arguing that investigation should focus on certain acts of LBHI and Lehman Brothers Commercial Corp. occurring between March 16, 2008 and the post-petition period); 10/31/08 Joinder by Bank of America, N.A. (Dkt. #1302) (same); 1/8/09 Response and Joinder by LBHI (same); 1/9/09 Objection by Barclays (Dkt. #2469) (requesting substantive limitations on scope of investigation into matters relating Lehman Brothers Commercial Corp.).

In response to those submissions, the Bankruptcy Court entered an order on January 16, 2009 (the "Order") directing the United States Trustee to appoint an examiner for the purpose of conducting, as the parties had requested, a narrowly-tailored investigation of events primarily occurring between *September 4, 2008 through September 15, 2008*, as well as other specific events that occurred leading up to the bankruptcy and in the post-petition period. *See* 1/16/09 Order (Dkt. #2569). The limited scope of the Examiner's investigation is underscored by the time period afforded to the Examiner to submit his final report -- just nine months from the date on which he submitted his work plan. *See* 2/17/09 Order (Dkt. #2855). Pursuant to that schedule, the Examiner's report is due by November 6, 2009.

2

The Subpoena, however, calls for the production of hundreds of thousands of pages of documents that have no bearing on the specific 2008 events at issue – a wholesale demand for all documents comprising EY's audit of LBHI's *2007* fiscal year-end financial statements (the period ending November 30, 2007). Such documents are irrelevant to the areas of inquiry defined in the Order. Indeed, the Order, the relevant portion of which is contained in the Examiner's work plan, directs the Examiner to investigate only the following specifically-delineated matters:

- Whether Lehman Brothers Commercial Corp. ("LBCC") or any other entity that currently is an LBHI Chapter 11 debtor subsidiary or affiliate ("LBHI Affiliate(s)") has any administrative claims against LBHI resulting from LBHI's cash sweeps of cash balances, if any, from September 15, 2008, the commencement date of LBHI's chapter 11 case, through the date that such applicable LBHI Affiliate commenced its chapter 11 case.

- All voluntary and involuntary transfers to, and transactions with, affiliates, insiders, creditors of LBCC or its affiliates, in respect of foreign exchange transactions and other assets that were in the possession or control of LBHI Affiliates at any time commencing on September 15, 2008 through the day that each LBHI Affiliate commenced its chapter 11 case.

- Whether any LBHI Affiliate has colorable claims against LBHI for potentially insider preferences arising under the Bankruptcy Code or state law.

- Whether any LBHI Affiliate has colorable claims against LBHI or any other entities for potentially voidable transfers or incurrences of debt under the Bankruptcy Code or otherwise applicable law.

- Whether there are more colorable claims for breach of fiduciary duties and/or aiding or abetting any such breaches against the officers and directors of LBCC and/or other Debtors arising in connection with the financial condition of the Lehman enterprise prior to the commencement of the LBHI chapter 11 case on September 15, 2008.

- Whether assets of any LBHI Affiliates (other than Lehman Brothers, Inc.) were transferred to Barclays Capital Inc. as a result of the sale to Barclays Capital Inc. that was approved by order of the Bankruptcy Court entered September 20, 2008, and whether consequences to any LBHI Affiliate as a result of the consummation of the transaction created colorable causes of action that inure to the benefit of the creditors of such LBHI subsidiary or affiliate.

- The inter-company accounts and transfers among LBHI and its direct and indirect subsidiaries, including but not limited to: LBI, LBIE, Lehman Brothers Special Finance and LBCC, during the 30-day period preceding the commencement of the

3

chapter 11 cases by each debtor on September 15, 2008 or thereafter or such longer period as the Examiner deems relevant to the Investigation.

- The transactions and transfers, including but not limited to the pledging or granting of collateral security interest among the debtors and the pre-chapter 11 lenders and/or financial participants including but not limited to JPMorgan Chase, Citigroup, Inc., Bank of America, the Federal Reserve Bank of New York and others.

- The transfer of the capital stock of certain subsidiaries of LBI on or about September 19, 2008 to Lehman ALI Inc.

- The events that occurred from September 4, 2008 through September 15, 2008 or prior thereto that may have resulted in commencement of the LBHI chapter 11 case.

None of these areas for examination require the Examiner's wholesale review of EY's documents relating to an audit of financial statements for the year-ending November 30, 2007. Indeed, the Order makes no mention whatsoever of fiscal year 2007 or any events that occurred during that period. *See* 1/16/09 Order (Dkt. #2569). The events that transpired during fiscal year 2007 and the testing and procedures that were the subject of EY's audit of LBHI's 2007 financial statements have no bearing upon the events that took place in the period leading up to LBHI's bankruptcy filing on September 15, 2008, and fall well outside the scope of the Examiner's investigation. EY's 2007 documents are therefore not relevant to the Examiner's investigation, and he has no compelling need for them.

### B. The Examiner's Subpoena Goes Well Beyond The Scope Of His Investigation And Imposes An Undue Burden On EY

The Subpoena requests that EY produce the following: (1) all documents comprising EY's audit of LBHI's 2007 fiscal year-end financial statements; (2) all documents comprising EY's "quarterly or interim work for the 2008 fiscal year-end audit of LBHI"; (3) all documents relating to EY's methodology to "mark to market, value or verify marks or valuations for LBHI assets during 2007 and 2008"; and (4) all documents relating to the "marks to market, value or verification of marks or valuations for LBHI assets during 2007 and 2008." EY objects to the

4

Examiner's overbroad requests, some of which call for the production of documents that are irrelevant or already in his possession.

*2007 Documents*: As discussed above, the requests for materials from 2007 go far beyond the scope of the Examiner's investigation, which by design is specifically and narrowly focused on 2008 events. The production of these documents would subject EY to an unfettered and unfocused review of its 2007 workpapers that is not contemplated by the January 16th Order. The idea that the Examiner can root around in EY's 2007 workpapers with no basis is antithetical to the notion of a specifically-tailored investigation that is to be completed in a relatively short period of time. Moreover, the production of these documents indisputably would impose upon EY and the LBHI estate a tremendous burden of time and expense that the Examiner cannot justify. Indeed, EY's audit of the 2007 fiscal year-end financial statements of LBHI covers an entity with $691 billion in total assets at that time, and is comprised of dozens of boxes of hard copy workpapers and more than 500,000 pages of electronic workpapers.

*2008 Documents*: The Examiner's requests, even in the context of 2008 materials, are also impermissibly overbroad and unduly burdensome in that they call for EY to produce not only its workpapers, but also all emails, memoranda, notes and other documents relating to its 2008 interim and quarterly work. Instead of issuing such an incredibly broad demand, the Examiner must limit his requests for documents to those which he reasonably needs. *See In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 302 (S.D.N.Y. 2003) (modifying subpoena to exclude requests for which there is no concrete basis). In this case, the Examiner can justify a purported need – at most – for EY's interim and in-progress 2008 workpapers, which document EY's testing and procedures of LBHI's 2008 quarterly financial information and any testing and procedures that had commenced at the time of LBHI's bankruptcy filing on September 15, 2008,

5

of LBHI's fiscal 2008 year-end financial information. Indeed, even these 2008 documents arguably are irrelevant to most of the Examiner's specific areas of investigation, as EY's workpapers to that point likely would not include information relating to transactions and events that occurred in the weeks just prior to the bankruptcy. In light of this, there is no reason to go even further and require the production of internal EY correspondence and informal notes, which would be duplicative, irrelevant and burdensome. Moreover, reviewing and producing those materials for the hundreds of EY personnel staffed on the 2008 audit would be extremely time intensive and prohibitively expensive.

*Documents Related to Asset Valuation*: Further, the Examiner's requests for documents relating to asset valuations is patently overbroad in that it calls for the production of documents relating to the valuation of *all* LBHI assets, rather than specific categories of assets that the Examiner has a good faith basis for believing may be relevant to the areas he is charged with investigating. The Examiner at a minimum should be required to articulate which specific categories of assets, among this massive entity which had hundreds of billions of dollars in assets, he has a basis to believe were improperly valued – and at what point in time. In addition, these requests reflect a fundamental misunderstanding of EY's role as an independent auditor. As LBHI's independent auditor, EY's role was not to value LBHI's assets or mark them to market – that was LBHI's function. Rather, EY reviewed LBHI's valuation methodologies and performed certain tests and procedures on only a sampling of valuations. Thus, to the extent that the Examiner seeks information relating to asset valuations and marks, the Examiner should obtain those documents from LBHI, not EY.

In addition to being overbroad, the Examiner's requests are unreasonably duplicative because he already has obtained at least some of the EY documents requested by the Subpoena

6

from the Securities & Exchange Commission ("SEC"), to whom EY produced documents, marked as "FOIA Confidential Treatment Requested," in response to a subpoena. The Examiner did not notify EY that he was requesting EY documents directly from the SEC, but as soon as EY learned that he had obtained the documents, EY informed both the Examiner and the SEC of its concern that the documents were not receiving the confidential treatment that EY had requested. EY's concern is now underscored by the fact that the Examiner refuses to disclose to EY which EY documents he has already received from the SEC, thereby creating a scenario in which EY might be forced to undertake the burden and unnecessary cost of producing documents that the Examiner already has in his possession.

Although discussions between EY and the Examiner are ongoing, the Examiner also thus far has not agreed to an adequate confidentiality agreement with EY.

## C.  EY In Good Faith Has Offered To Produce Hundreds Of Thousands Of Pages Of Documents That Would Allow The Examiner To Fulfill His Mandate

Even though the Subpoena requests information beyond the scope of the Examiner's investigation under the Order, EY has engaged in good-faith discussions with the Examiner in an attempt to reach agreement as to what documents EY will produce so that the Examiner can satisfy the scope of his mandate. These discussions occurred both prior to the issuance of the Subpoena, in particular during an in-person meeting on May 12, 2009, and again after the issuance of the Subpoena via telephone on June 3, 2009, as well as and correspondence throughout the week of June 1, 2009.

*First*, although EY objects to the Subpoena because it requests the production of EY workpapers and other confidential documents and proprietary materials without offering adequate assurances that the Examiner will maintain and protect the confidentiality of them, EY has proposed that the parties enter a confidentiality agreement. The Examiner, however, has

resisted EY's good faith attempts to negotiate a confidentiality agreement and even suggested that he will not agree to enter into a stipulated confidentiality agreement so long as EY pursues its efforts to narrow the scope of the overbroad Subpoena. Further, the Examiner has indicated that he will not agree to a confidentiality agreement covering the documents he obtained from the SEC outside of required FOIA procedures, even though EY marked those documents "FOIA Confidential Treatment Requested" and was never informed of that they might be provided to the Examiner or any other party. Despite the Examiner's confounding and unreasonable position with respect to this issue, EY is hopeful that the parties will agree to a form confidentiality agreement that is satisfactory to both parties.

*Second*, EY has offered to produce its interim and in-progress workpapers for LBHI's fiscal year 2008. While even many of these 2008 workpapers are irrelevant to the Examiner's inquiry, and date back to as early as December 1, 2007, EY in good faith has offered to produce these workpapers, totaling approximately 10,000 pages of hard copy documents and 480,000 pages of electronic documents, in their entirety.

*Third,* notwithstanding its objection to the request for 2007 workpapers, EY has requested that the Examiner tailor his request to those workpapers from its audit of LBHI's fiscal 2007 year-end financial statements that potentially may relate to the scope of the Examiner's investigation as defined in the Order. In discussions with EY, the Examiner has stated that he wants to review the 2007 workpapers as part of his analysis of alleged breaches of fiduciary duty at LBHI relating to ███████████████████████████████████████████████████████████████████████████████████████████████████

8

On the first point █████████████████████████████████████████, EY has explained its willingness to produce 2007 workpapers related to █████████ ████████████████████████████████████. The Examiner has refused to do so. On the second point ███████████████████████████████████████ ████████████████████████████████████████████████████, EY has proposed that the Examiner defer his request for 2007 workpapers █████████ until he reviews the 2008 workpapers ████████████████████████████. ████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████[1]

Thus, despite EY's good faith efforts to reach a compromise, the Examiner has maintained the unreasonable position that EY must produce hundreds of thousands of pages of documents – the entirety of its hard copy and electronic workpapers from 2007 – even though the Examiner has made no showing of the relevance of these documents to issues within the authorized scope of his investigation. The Examiner's unwillingness to moderate his unreasonably broad and unduly burdensome requests has left EY with no choice but to submit these formal objections to the Subpoena.

---

[1] To the extent that the Examiner makes an argument that the 2007 workpapers relate to his investigation of potential claims for insider preferences, voidable transfers or incurrences of debt, EY is willing to produce specific portions of the 2007 workpapers that reasonably may relate to these areas of examination, subject to the entry of an appropriate confidentiality order, but objects to the notion that the Examiner needs the entirety of the 2007 workpapers to investigate these potential claims.

9

## GENERAL OBJECTIONS

1.      EY objects to the Subpoena to the extent that it is overbroad or calls for the production of information outside of the scope of examination as defined by the Order. Specifically, EY objects to the Subpoena in that it calls for the production of documents relating to non-debtor affiliates of LBHI, which the Order excludes from the Examiner's investigation.

2.      EY objects to the Subpoena to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other legally-cognizable privilege or immunity. EY hereby claims such privileges, immunities and protections to the extent implicated by the Subpoena. EY will exclude privileged and protected materials from any documents produced in response to the Subpoena. Nothing contained in EY's response or production of documents and information is intended to be, or in any way shall be deemed to be, a waiver of any such applicable privilege, immunity or protection. Any disclosure of such protected or privileged information is inadvertent and is not intended to waive those privileges, immunities or protections or any other ground for objection to discovery or use of any such document.

3.      EY objects to the Subpoena to the extent that it seeks the production of information or documents that EY deems to constitute or relate to a trade secret or other confidential research, development, or commercial information, or otherwise deems to be protected from disclosure under applicable laws. To the extent that EY produces non-privileged documents responsive to the Subpoena, if any, it will do so only after the execution of a stipulated and proposed protective order governing the production and exchange of confidential information.

4.      EY objects to the Subpoena to the extent that it purports to seek production of documents or information subject to any confidentiality obligation owed to non-parties.

10

5. EY objects to the Subpoena to the extent that it purports to require EY to produce documents not presently within EY's possession, custody, or control.

6. EY objects to the Subpoena to the extent that it is vague, ambiguous, overbroad, and unduly burdensome. EY further objects to the extent that the Subpoena is unreasonably cumulative and duplicative.

7. EY objects to the Subpoena to the extent that it calls for discovery that is neither expeditious nor cost effective.

8. EY objects to the Subpoena to the extent that it seeks documents already in LBHI's or the Examiner's possession, custody or control, or that are as readily available to the Examiner through other third parties as through EY.

9. EY objects to the Subpoena to the extent that it seeks any documents in the possession, custody or control of any Ernst & Young entity other than Ernst & Young LLP, the United States firm.

10. EY objects to the Subpoena to the extent that it seeks production of "all documents" under circumstances in which production of a subset of "all documents" would be sufficient to show the pertinent information.

11. EY objects to Instruction No. 1 of the Subpoena as overbroad and unduly burdensome. Furthermore, EY objects to the definition of "documents" contained in Instruction No. 1 as beyond the scope of the Examiner's work plan and not relevant to the subject matter of the Examiner's investigation to the extent that it seeks production of any correspondence or materials other than EY's audit workpapers prepared in connection with its audits of LBHI's financial statements and its reviews of LBHI's interim financial information. EY also objects to the definition of "entities" provided in Instruction No. 1 as beyond the scope of the Examiner's

11

work plan and not relevant to the subject matter of the Examiner's investigation to the extent that it seeks production of documents from any non-debtor affiliates of LBHI.

12. EY objects to the Subpoena to the extent that it calls for production of documents at the offices of Jenner & Block LLP. EY will make any production available for inspection at the offices of Latham & Watkins, LLP, 885 Third Avenue, New York, New York, 10022, or, upon payment of copying and shipping charges, will deliver the production to Jenner & Block LLP.

13. Any statement herein that EY will produce any non-privileged, responsive document does not mean, and shall not be construed to mean, that any such document exists or is within EY's possession, custody, or control.

14. EY reserves the right to amend or supplement these responses with additional documents that may become available or come to its attention in the future, and to rely upon such information or documents in any hearing, trial or other proceeding in this litigation.

15. All General Objections set forth herein and discussed in the Overview above are incorporated into each individual response set forth below and have the same force and effect as if fully set forth therein.

## SPECIFIC RESPONSES AND OBJECTIONS

### REQUEST NO. 1.

All documents comprising Ernst & Young's fiscal year-end 2007 audit of Lehman Brothers Holdings Inc. and any of its affiliates or subsidiaries ("LBHI").

### RESPONSE TO REQUEST NO. 1.

As explained in the Overview above, EY objects to Request No. 1 on the ground that it is overbroad and unduly burdensome. EY further objects to Request No. 1 on the ground that it requests information outside the scope of, and not relevant to, the subject matter of the Examiner's investigation as defined by the Order. Specifically, documents comprising EY's audit of Lehman's financial statements for the fiscal year-end 2007 are outside the scope of the investigation as defined by the Order. Moreover, EY objects to Request No. 1 on the ground that it requests information outside the scope of the Order to the extent that it seeks production of documents from non-debtor affiliates of LBHI.

### REQUEST NO. 2.

All documents comprising Ernst & Young's quarterly or interim work for the fiscal year-end 2008 audit of LBHI.

### RESPONSE TO REQUEST NO. 2.

As explained above in the Overview, EY objects to Request No. 2 on the ground that it is overbroad and unduly burdensome. EY further objects to Request No. 2 on the ground that it requests information outside the scope of the Order to the extent that it seeks production of documents from non-debtor affiliates of LBHI.

Subject to and without waiving its objections, EY agrees to produce its non-privileged interim and in-progress workpapers for fiscal year 2008, pending the execution of an appropriate confidentiality agreement.

13

**REQUEST NO. 3.**

All documents related to or comprising the methodology employed by Ernst & Young to mark to market, value or verify marks or valuations for LBHI assets during 2007 and 2008.

**RESPONSE TO REQUEST NO. 3.**

As explained above in the Overview, EY objects to Request No. 3 on the ground that it is overbroad and unduly burdensome. EY also objects to Request No. 3 on the ground that it is based on the false assumption that EY marked to market and/or valued LBHI's assets. EY did not mark to market or value assets for LBHI. EY further objects to Request No. 3 on the ground that it requests information outside the scope of, and not relevant to, the subject matter of the Examiner's investigation as defined by the Order. Specifically, documents comprising EY's audit of Lehman's financial statements for the fiscal year-end 2007 are outside the scope of the investigation as defined by the Order. Moreover, EY objects to Request No. 3 on the ground that it requests information outside the scope of the Order to the extent that it seeks production of documents from non-debtor affiliates of LBHI.

Subject to and without waiving its objections, EY agrees to produce its non-privileged interim and in-progress workpapers for fiscal year 2008, pending the execution of an appropriate confidentiality agreement.

**REQUEST NO. 4.**

All documents related to or comprising the marks to market, value or verification of marks or valuations for LBHI assets during 2007 and 2008.

**RESPONSE TO REQUEST NO. 4.**

As explained above in the Overview, EY objects to Request No. 4 on the ground that it is overbroad and unduly burdensome. EY also objects to Request No. 4 on the ground that it is based on the false assumption that EY marked to market and/or valued LBHI's assets. EY did

not mark to market or value assets for LBHI. EY further objects to Request No. 4 on the ground that it requests information outside the scope of, and not relevant to, the subject matter of the investigation as defined by the Order. Specifically, documents comprising EY's audit of Lehman's financial statements for the fiscal year-end 2007 are outside the scope of the investigation as defined by the Order. Moreover, EY objects to Request No. 4 on the ground that it requests information outside the scope of the Order to the extent that it seeks production of documents from non-debtor affiliates of LBHI.

Subject to and without waiving its objections, EY agrees to produce its non-privileged interim and in-progress workpapers for fiscal year 2008, pending the execution of an appropriate confidentiality agreement.

Dated: June 8, 2009
New York, New York

                LATHAM & WATKINS LLP,

                By: s/ Robert J. Rosenberg
                    Robert J. Rosenberg
                    Miles N. Ruthberg
                    Jamie L. Wine

                    885 Third Avenue
                    New York, NY 10022
                    Tel: (212) 906-1200
                    Fax: (212) 741-4864

                    *Attorneys for Ernst & Young LLP*