**Hearing Date: June 24, 2009 at 10 a.m. (Prevailing Eastern Time)**
**Objection Deadline: June 19, 2009 at 4 p.m. (Prevailing Eastern Time)**

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
Patrick J. Trostle

330 North Wabash Avenue
Chicago, Illinois 60611-7603
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
Robert L. Byman
(Admitted *Pro Hac Vice*)

*Attorneys for Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                          :
In re                                                     :          Chapter 11 Case No.
                                                          :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                  :          08-13555 (JMP)
                                                          :
                    Debtors.                              :          (Jointly Administered)
                                                          :
-------------------------------------------------------------------x

**EXAMINER'S RESPONSE**
**TO ERNST & YOUNG'S OBJECTIONS TO**
**THE EXAMINER'S RULE 2004 SUBPOENA**

Since his appointment as Examiner on January 20, 2009, Anton R. Valukas, Esq.

(the "Examiner") has conducted more than 50 interviews and has collected nearly a

million potentially relevant documents from multiple parties in interest, all by voluntary cooperation.  Ernst & Young ("E&Y") is the first party the Examiner has encountered with whom he has been unable to reach a mutually agreeable procedure for production, the first party for whom a subpoena has been necessary.

The Examiner is not an advocate for any position other than the neutral, unvarnished truth, so the rhetoric of advocates is neither appropriate nor necessary here. But E&Y's Responses and Objections to the Examiner's Subpoena for Rule 2004 Examination ("Objections") are not simply misplaced, they are largely disingenuous.  The Examiner respectfully requests that this Court overrule the Objections and order immediate compliance with the subpoena.

## INTRODUCTION

As LBHI's auditor, E&Y was responsible for review of LBHI's financial condition – a condition not sufficiently healthy to avoid the filing of this case.  It should come as no surprise that a review of LBHI's affairs would include a look at the review conducted by its auditors.[1]

---

[1]  Certainly, civil litigants have found E&Y's role relevant to claims involving LBHI; E&Y has been asked not merely to give discovery but to respond to allegations as a defendant. *See, e.g.,  San Mateo County Investment Pool v. Fuld, et al.* Case No. 08-481841 (Cal. Sup. Ct. 2009); *State of New Jersey v. Fuld, et al.*, Case No.  09-cv-01629 (AET) (D. N.J. 2009).  One must wonder whether E&Y's reluctance to give discovery here is an attempt to resist the bother of the instant discovery – or whether it is an attempt to shield information from civil litigants.

To discharge the duties this Court has assigned to the Examiner, one of the critical areas he must explore is whether LBHI fully disclosed material facts related to its financial condition to the public and to E&Y, including information on asset valuations, risk appetite limits and usage, internal controls, and solvency. The Examiner must explore what information LBHI provided to E&Y to support its valuations of assets for which no liquid public markets exist (level II and III assets such as mortgage-backed and auction-rate securities); he must explore Lehman's valuation methodology and marks to market; and he must review the testing, if any, E&Y did to verify or validate LBHI's valuations.

Because no 2008 audit was completed, the only base line is the 2007 audit, and the Examiner's inquiry must start there. Risk analysis and balance-sheet testing performed for the 2007 fiscal year-end audit will be far more substantive and detailed than any work that might have been performed on an interim basis in 2008. The Examiner's financial advisors have cautioned that they "cannot fully and properly advise the Examiner about the financial condition of LBHI in the weeks and months preceding LBHI's bankruptcy without carefully reviewing the FY07 year-end audit, and the quarterly or interim work papers for the fiscal year-end 2008 audit of LBHI." Balmer Declaration, ¶ 12 (Exhibit G).

In late March 2009, the Examiner requested that E&Y produce its 2007 and 2008 audit work papers; on April 13, 2009, the Examiner's counsel wrote to E&Y's counsel:

> Following up on our conversation last week and the voicemail I left you earlier today, we have discussed with Duff & Phelps ("D&P"), the Examiner's independent financial consultants, D&P's request for the production of historical audit work papers from Ernst & Young for the 2007 fiscal year end audit as well as all workpapers for interim work for 2008 fiscal year end. As I mentioned on my voicemail today, D&P has advised that these materials are relevant to its work in support of the Examiner's investigation. Obtaining the information is a priority for the Examiner.

> Please advise as soon as possible whether E&Y will voluntarily produce the requested information.[2]

E&Y responded that it did not understand the relevance of the 2007 work papers; a month passed without production or progress.  On May 12, the Examiner's counsel brought a representative from Duff & Phelps (the Examiner's financial advisor), and together they attempted to explain to E&Y's counsel why the 2007 and 2008 work papers are critical to understand the facts relating to the valuations of LBHI's assets and solvency.  E&Y's counsel responded that they would consult their client.  But after two weeks without any word, the Examiner's counsel wrote:

> It has been two weeks since we met.  Please understand that we have no desire to litigate with E&Y, but absent some affirmative word from you that E&Y will voluntarily provide the work papers Duff & Phelps needs to do its work for us, we see no choice but to continue the discussion in the context of a subpoena, which we intend to issue by the end of the week if we have not heard from you.[3]

---

[2]  4/13/09 Basil e-mail (Ex. A).

[3]  5/27/09 Byman e-mail (Ex. B).

E&Y responded on May 28, by reiterating its position that its 2007 work papers are

irrelevant.[4]  And while it offered to produce nothing, it asked the Examiner to agree to a

confidentiality agreement which, among other defects, would have required that the

Examiner never challenge any claim of confidentiality by E&Y for documents already

legitimately in the Examiner's possession.[5]

At impasse, and having wasted 6 weeks trying to achieve voluntary production,

the Examiner served his first subpoena in this matter.   (The subpoena is attached as

Exhibit 4 to Exhibit D (Byman Decl.))  Even so, the Examiner sought voluntary

cooperation:

> Jamie -- I regret that we have to take this course, but we will serve our
> subpoena later today; we can continue the dialogue in the context of your
> attempt to seek a protective order. Will you accept service of the subpoena
> or should we serve it directly upon E&Y?  Bob[6]

E&Y then filed the present Objections.  *First,* E&Y claims that the Examiner's subpoena

power only permits him to discover materials for the months immediately preceding

LBHI's September 15, 2009 bankruptcy.  *Second*, E&Y claims that the Examiner's requests

are unduly burdensome.  *Third*, E&Y argues that it has acted in good faith.

---

[4] 5/28/09 Wine e-mail and attachment (Ex. C).

[5] Byman Decl., ¶ 10 (Ex. D).

[6] 5/29/09 Byman e-mail (Ex. E).

We respectfully believe that E&Y has it wrong about the scope of relevancy. Whether LBHI's assets were properly valued and accounted for at the time of its Chapter 11 filing is critical to a number of the issues this Court has directed the Examiner to investigate. Without seeing the 2008 audit materials, the Examiner cannot properly inquire. And since 2007 was the last audited year for LBHI, there is no way to evaluate 2008 numbers without having that starting point. As to burden, E&Y had never articulated any burden until these Objections were filed. Even now, we are unclear what the burden is. Electronic documents can be transferred at virtually no cost. The hard copies alluded to may or may not require copying, but the copying cost, in the context of this matter, is not significant, particularly when considered against the importance of the materials. As to good faith, that is hardly the issue; but if the Examiner were not a neutral fact finder, we might be tempted to challenge that assertion with some vigor.

## DISCUSSION

**I.      Rule 2004 grants the Examiner broad subpoena power.**

Rule 2004(a) governs the scope of the Examiner's subpoena power. Rule 2004 subpoenas may relate to

> the acts, conduct, or property or to the liabilities and financial
> condition of the debtor, or to any matter which may affect the
> administration of the debtor's estate, or to the debtor's right to a
> discharge . . . the operation of any business and the desirability of its
> continuance, the source of any money or property acquired or to be
> acquired by the debtor for purposes of consummating a plan and the

consideration given or offered therefore, and any other matter relevant to the case or to the formulation of a plan.

Fed. R. Bankr. P. 2004.

The scope of a Rule 2004 subpoena has been described as "very broad[,]" Rule 2004 adv. comm. notes, and "unfettered[,]" *In re Bazemore*, 216 B.R. 1020, 1023 (Bankr. S.D. Ga. 1999). Rule 2004 permits a "larger [scope of examination] than permitted under the Federal Rules of Civil Procedure." *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985.)

Rule 2004 authority is construed particularly broadly for Examiners. *See In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) ("[t]he investigation of an examiner in bankruptcy, unlike civil discovery under Rule 26(c), is supposed to be a 'fishing expedition,' as exploratory and groping as appears proper to the Examiner[]") (citing *In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983).)[7]

## II.     The requested materials are within the Examiner's subpoena power.

---

[7]  E&Y does not even mention Rule 2004, nor does E&Y cite to any case where a Court enforced any limitation on an Examiner's subpoena authority. E&Y cites (p. 5) *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 302 (S.D.N.Y. 2003) for the proposition that the Examiner must limit requests to documents he "needs."  Putting aside the fact that the Examiner clearly "needs" the requested materials and that *Honeywell* involved neither an Examiner nor Rule 2004 (it involved the narrower standards of FRCP 26), *Honeywell* actually supports the Examiner's position, since that Court ordered production of the entire audit file and work papers. *Id.*, at 297-98, 300-01.

E&Y objects (p. 6) to the Examiner's requests on the ground that they are temporally outside the Examiner's subpoena power, seeking materials that pre-dated the "weeks just prior to the bankruptcy."

But E&Y's audit work papers from 2007 and 2008 materials are directly relevant to the Examiner's mandate to investigate (i) whether colorable claims for breach of fiduciary duties exist against the Debtors' officers and directors[8]   (ii) the causes of the LBHI bankruptcy[9], and (iii) the acts and financial condition of the Debtor, *see* 11 U.S.C. § 1106(a)(3).

The FY07 audit provides the baseline against which the Examiner must view E&Y's 2008 analysis of LBHI's financial statements and valuations, as well as LBHI's representations to its auditors during the critical downward spiral for LBHI through 2008.[10]   The FY07 year-end audit is critical to the fiduciary duty inquiry because the

---

[8] January 16, 2009 Order (Ex. F)

[9] *Id*.

[10] Balmer Decl., ¶ 10  (Ex. G).  The depth of information surely contained in the FY07 year-end audit would likely not be available in quarterly or interim work papers for 2008.  (*Id.*, ¶ 11.)  The risk analysis and valuation testing typically performed for a fiscal year-end audit is far more substantive and detailed than that performed at any other time.  (*Id.*)  Typically, auditors perform little work on inventory marks in their quarterly work papers, and conduct significantly more rigorous evaluations of the methodologies behind the marks for the year-end audit.  (*Id.*)   Also, auditors provide an opinion on the reasonableness of the financial statements as a whole (balance sheet, notes, representations, etc.) only at year-end.  (*Id.*)

Examiner must determine (i) whether LBHI made complete and accurate disclosures to its

auditors about valuations, risk appetite, internal controls, and solvency, among other

things; (ii) what information LBHI provided E&Y to support its valuations of LBHI assets,

e.g., mortgage-backed and auction rate securities, including Lehman's valuation

methodology and marks; (iii)  what testing (if any) E&Y did to verify (or adjust or refute)

such valuations; and (iv) whether LBHI officers and directors reasonably relied on their

auditors.[11]   E&Y asserts (p. 6) that it "performed certain tests and procedures on only a

sampling of valuations."   The Examiner must determine, as part of his fiduciary duty

inquiry, whether that sampling was or was not reasonable, and whether LBHI's directors

and officers reasonably or unreasonably relied on that level of E&Y sampling.

E&Y's contention that the Examiner is forbidden to take discovery of any materials

other than those from the few weeks prior to the bankruptcy (*e.g.,* p. 1) is sophistic

nonsense.  The Examiner Order - which E&Y cites (p. 2) as its basis for this supposed time

limit - actually stands for the opposite proposition.   The Examiner Order directs the

Examiner to investigate, *inter alia*, "[w]hether there are more colorable claims for breach of

fiduciary duties and/or aiding or abetting any such breaches against the officers and

directors of LBCC and/or other Debtors arising in connection with the financial condition

---

[11]   *See* Balmer Decl., ¶ 10 (Ex. G).  E&Y concedes (p. 5) that the "Examiner can justify a
purported need" for the 2008 materials on such subjects; but without the 2007 audit as a
base line, the 2008 materials will be largely meaningless.

of the Lehman enterprise *prior to* the commencement of the LBHI chapter 11 case on September 15, 2008."[12]   This mandate is open-ended; nothing bars – or excuses – the Examiner from looking for evidence of breaches of fiduciary duties in 2007 or before.[13]

E&Y claims that the November 6, 2009 proposed Report date shows that the Court intended the Examiner to focus only on a narrow band of 2008 materials.  In fact, the November 6 date was self-imposed by the Examiner, who proposed a timetable in anticipated reliance on the cooperation and good faith of third party discovery respondents.  Ironically, E&Y's recalcitrance may jeopardize that timetable.

## III.   The Examiner's discovery requests will not result in undue burden.

E&Y contends (p. 5) that the subpoena imposes an undue burden that would require E&Y to produce "one million pages" of materials, including production of dozens of boxes of work papers, and more than 500,000 pages of electronic workpapers.  Until it filed these Objections, E&Y had never articulated what its burden might be.[14]  But now

---

[12] January 16, 2009 Order (Ex. F, ¶ 2) (emphasis added).

[13] Even assuming, contrary to law and fact, that the Examiner Order contains time limits, E&Y hopelessly confuses the *subjects of the investigation* (set out in the Examiner Order and 11 U.S.C. §§ 1106(a)(3)-(4)) with the broader *scope of discovery* (set out in Rule 2004).  Take this example.  The Examiner Order requires the Examiner to investigate the transfer of capital stock of Lehman Brothers, Inc. stock on or about September 19, 2008 to Lehman ALI, Inc.  (Ex. F, ¶ 2.)  Under E&Y's view, the Examiner could obtain discovery related to this mandate, but only look at events that occurred on September 19.  That, of course, would be absurd.

[14] Byman Decl. (Ex. D, ¶ 13).

that we know, the so-called burden is, in the context of this case, laughable.  Electronic

documents can be transferred at virtually no cost.  The Examiner is willing to review that

electronic information first to see whether it is ever necessary to copy any hard copy files.

And even if the Examiner does request copies of the hard copy files, the copying costs are,

in the context of this matter, a rounding error.  There is no undue burden to E&Y.

E&Y dramatically and disingenuously overstates its burden by claiming (p. 5) that

the Examiner's Request No. 2 seeks "not only [E&Y's] workpapers, but also all emails,

memoranda, notes and other documents relating to its 2008 interim and quarterly work" -

causing E&Y to protest that it would have to search the email files of "hundreds" of

custodians.  But Request No. 2 calls for no such thing.  Rather, the request was narrowly

tailored to "[a]ll documents *comprising* Ernst & Young's quarterly or interim work for the

fiscal year-end 2008 audit of LBHI."[15]     The Examiner seeks - very simply - E&Y's work

papers for 2008, and not - as E&Y claims - all documents conceivably *related to* those work

papers.   The difference is vast – as is the disingenuous straw man that E&Y has erected to

make its imagined burden appear real.[16]

---

[15] Byman Decl., ¶ 8  (Ex. D, & Exhibit 4 attached thereto).

[16]  E&Y does not advise the Court that counsel conferred last week; the Examiner's counsel
assured E&Y's counsel that the Examiner does not seek, at least for now, anything other
than the work papers and valuation materials (to the extent that valuation materials are
not contained in the work papers).  Byman Decl., ¶ 11 (Ex. D).

**IV.     E&Y's faith, good or bad, is not the issue; but if it were, E&Y falls short.**

It is ironic if not galling that E&Y argues that it should be excused from complying

with the subpoena because it has acted in good faith.  It says something about good faith

that E&Y is the only party with whom the Examiner has been forced to use his subpoena

power and the only party with whom the Examiner has been unable to reach agreement

on a protective order.[17]    The documents that E&Y seeks so strenuously to protect relate to

its audits of an institution that no longer exists and whose officers-in-possession have

agreed to cooperate.  The Examiner has been unable to agree to a protective order with

E&Y because E&Y has insisted upon outrageous terms.[18]

Strangely – and disingenuously -- E&Y complains (p. 7) that the Examiner "refuses

to disclose" to E&Y what E&Y documents the Examiner has received from the SEC.  E&Y

fails to advise the Court that the Examiner advised E&Y that he declined to give that

---

[17] So far, the Examiner has protective orders in place with the Debtor (entered January 9, 2009); the Official Committee of Unsecured Creditors (entered on February 11, 2009); JP Morgan Chase (entered March 18, 2009); Federal Reserve Bank of New York (entered May 7, 2009); Barclays (orders entered May 18 & 19, 2009) and Citigroup (order entered on June 4, 2009).

[18] In a first draft, E&Y's proposed form would have had the Examiner waive any opportunity to contest E&Y's confidentiality designations.  Byman Decl., ¶ 10  (Ex. D & Ex. 5 attached thereto).  A second draft was less outrageous but still unacceptable, seeking a two tier classification for "highly confidential" documents that imposed severe restrictions on disclosure without any justification for such a procedure. 6/5/09 Byman email (Ex. H).

information for the simple reason that the SEC had asked him to have E&Y speak directly

to the SEC on that subject.[19]

It is the Examiner who has acted in good faith here; sadly, E&Y has not.  But faith is

not the issue.  Either the requested documents are properly requested or they are not.  The

Examiner's request is proper, even modest; E&Y's Objections should be overruled.

## CONCLUSION

The Examiner respectfully requests that this Court overrule Ernst & Young's

Objections and order production within five (5) business days.

Dated: June 10, 2009
New York, New York                          Respectfully submitted,


                                            By: /s/ Robert L. Byman
                                                Robert L. Byman
                                                (Admitted *Pro Hac Vice*)

                                            JENNER & BLOCK LLP
                                            919 Third Avenue, 37th Floor
                                            New York, New York 10022-3908
                                            Telephone:  (212) 891-1600
                                            Facsimile:  (212) 891-1699

                                            330 North Wabash Avenue
                                            Chicago, Illinois 60611-7603
                                            Telephone:  (312) 222-9350
                                            Facsimile:  (312) 527-0484

                                            Attorneys for the Examiner

---

[19] Byman Decl., ¶ 12 (Ex. D).