Objection Deadline: June 12, 2009 at 12:00 p.m. (Eastern)
Hearing Date and Time: June 17, 2009 at 2:00 p.m. (Eastern)

SUTHERLAND ASBILL & BRENNAN LLP
Mark D. Sherrill (*pro hac vice* pending)
1275 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 383-0100

*Counsel for US AgBank, FCB*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | § § § § | Case No. 08-13555 (JMP) |
| Debtors. | § § | |

**OBJECTION OF US AGBANK, FCB TO MOTION, PURSUANT TO SECTION 502(b)(9) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3003(c)(3), FOR ESTABLISHMENT OF THE DEADLINE FOR FILING PROOFS OF CLAIM, APPROVAL OF THE FORM AND MANNER OF NOTICE THEREOF AND APPROVAL OF THE PROOF OF CLAIM FORM**

US AgBank, FCB ("US AgBank") files this Objection (the "Objection") to the Motion of the Debtors, Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3), for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form (the "Motion"), and states as follows:

**Background**

1.   On December 5, 2008, US AgBank filed proof of claim number 1229 ("Claim 1229").  Claim 1229 asserts a general unsecured claim against Lehman Brothers Holdings Inc. ("LBHI" and collectively with its debtor-affiliates, the "Debtors") in the amount of $10,380,591.56.  Also on December 5, 2008, US AgBank filed proof of claim number 1230

8402514.3

("Claim 1230). Claim 1230 asserts a general unsecured claim against Lehman Brothers Special Financing Inc. ("LBSF") in the amount of $10,380,591.56.

2. Claim 1229 is predicated, at least in part, on a guarantee executed by LBHI. Claim 1230 is predicated, at least in part, on a derivatives contract between US AgBank and LBSF.

3. The Motion requests that the Court order all creditors to file a proof of claim that conforms substantially with the "Proof of Claim Form" that is included with the Motion. Among the unique aspects of the Proof of Claim Form are checkboxes (the "Checkboxes") to reflect whether a given claim is related to a "Derivative Contract" or a "Guarantee."

4. US AgBank asserted Claim 1229 and Claim 1230 (collectively, the "Claims") on the Official Form B-10 (the "Official Form"), as promulgated by the Administrative Office of the United States Courts. The Official Form contains no checkboxes pertaining to derivatives contracts or guarantees.

5. If a claimant checks the box for either "Derivative Contract" or "Guarantee" on the Proof of Claim Form, then the Motion seeks to impose additional requirements on the claimant, mandating the completion of a "Derivative Questionnaire" or a "Guarantee Questionnaire" (collectively, the "Questionnaires"). Although their name implies only questions, the Questionnaires demand submission of significant documentary evidence.

**Objection and Bases Therefor**

6. US AgBank objects to the Motion for two reasons. First, with regard to claims based on derivatives or guarantees, the Motion seeks to shift the burden of proof and the burden of production in a manner that is impermissible under the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and related case law. Second, the Motion imposes an undue

hardship on creditors that have already filed proofs of claim, by requiring such creditors to expend additional resources to file amended claims and meet additional procedural requirements.

    A.    **The Motion Impermissibly Seeks to Shift the Burdens of Proof and Production**

7.    Bankruptcy Rule 3001(f) states: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

8.    "The Bankruptcy Code establishes a burden-shifting framework for proving the amount and validity of a claim. The creditor's filing of a proof of claim constitutes prima facie evidence of the amount and validity of the claim. The burden then shifts to the debtor to object to the claim. The debtor must introduce evidence to rebut the claim's presumptive validity." *Stancill v. Harford Sands Inc. (In re Harford Sands Inc.)*, 372 F.3d 637, 640 (4th Cir. 2004). *See also RW Squared Med. Group v. HWY Squared, Inc. (In re HWY Squared, Inc.)*, 208 Fed. Appx. 581, 582-83 (9th Cir. 2006) (stating "[t]he objector must produce sufficient evidence tending to defeat the claim by probative force equal to that of the allegations in the proofs of claim themselves"); *McGee v. O'Connor (In re O'Connor)*, 153 F.3d 258, 260 (5th Cir. 1998); *Gill v. Indian Wells Estates, Inc. (In re Indian Wells Estates, Inc.)*, 96 F.3d 1451, 1996 WL 506484, *4 (9th Cir. Sept. 3, 1996) ("[t]he evidentiary burden of Bankruptcy Rule 3001(f) requires the objector to come forward with evidence contradicting the validity or amount of the claim"); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 646 (2d Cir. 1988); *Reilly v. Novak*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000) ("To overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim"); *Carey v. Ernst*, 333 B.R. 666, 672 (S.D.N.Y. 2005).

9.  Here, no party has objected to the Claims. Even if the Debtors had filed an objection to the Claims, the Bankruptcy Rules provide that the Claims constitute prima facie evidence as to their validity and the amount claimed. If such an objection existed, the burdens of proof and production would have now shifted to the Debtors to refute the presumptively valid Claims with "substantial evidence." *See Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.)*, 993 F.2d 915, 925 (1st Cir. 1993) (stating "[t]he interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by *substantial evidence*") (emphasis in original).

10. Despite the presumed validity of the Claims and the jurisprudence requiring the Debtors to advance substantial evidence to refute that presumption, the Motion seeks to impose significant additional evidentiary burdens on US AgBank and other claimants. The Bankruptcy Rules require only two pieces of evidence to be filed with a proof of claim: a copy of a writing on which a claim is based, and proof of the perfection of any relevant security interest. Fed. R. Bankr. P. 3001(c), (d).

11. In the Motion, however, the Debtors ask the Court to impose onerous additional requirements with respect to claims based on derivatives or guarantees. For example, the Derivatives Questionnaire requires such information as (a) copies of termination notices, including evidence supporting the delivery date, (b) valuation statements, including evidence supporting the delivery date of same, (c) details with respect to each trade supporting the valuation ("including trade id, electronic trade reference id, trade type, product, trade date, reference obligation or reference entity, credit events, factored and original contract notional amount, quantity/unit of measure, currency, price or strike price, buy/sell, call or put, cap or floor, location, effective date, maturity date, termination date, and value"), (d) trade valuation

and quotations, (e) unpaid amounts and interest accrued thereon, with supporting documentation, and (f) CUSIP/ISIN for collateral, valuation of collateral and support for those valuations.

12. The information required under the Questionnaires far exceeds the information that a counterparty under a terminated ISDA Master Agreement must furnish outside of bankruptcy. For example, nothing in an ISDA Master Agreement requires the exchange of the quotations relied upon in termination calculations, or the proof of delivery of termination notices or valuations.

13. The information required in the Questionnaires represents a wish list for the Debtors and their professionals. The Questionnaires will give the Debtors a considerable advantage in any ensuing litigation with claimants, because it will give the Debtors an immediate idea of the strengths and weaknesses of the claimants' claims, defenses and evidence.

14. Meanwhile – despite the fact that the evidentiary burden should be on them – surely no mechanism is forthcoming under which the Debtors would reciprocate in sharing their data and documents. The Questionnaires provide a unilateral information sharing mechanism that inures solely to the benefit of the Debtors, creating a strategic disadvantage for any claimants that subsequently become involved in litigation.

**B.    Requiring Additional Measures from Creditors that Have Previously Asserted Valid Proofs of Claim Violates Fundamental Notions of Fairness**

15. The filing of a proof of claim on the Official Form is a sufficient manner for the assertion of a claim. *See generally* 11 U.S.C. §§ 501, 502; Fed. R. Bankr. P. 3001(a). The Motion, however, seeks to impose requirements that would dictate otherwise. Under the proposed order included with the Motion, a claim in connection with either a derivatives contract or a guarantee that has been filed on the Official Form is nonetheless insufficient and must be amended because of the absence of the Checkboxes.

16. Such a process contravenes the structure created by the Bankruptcy Code and the Bankruptcy Rules. Section 502(a) of the Bankruptcy Code provides: "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a). Accordingly, the claims already filed in these cases are deemed allowed until the Debtors or some other party objects to them. *See Johns-Manville*, 843 F.2d at 646 (stating "[c]laims are 'allowed' in the amount filed unless they are objected to by a party in interest").

17. No party has objected to the Claims to date. Pursuant to section 502(a), the Claims are deemed allowed until such an objection is filed. The Motion's attempt to impose additional requirements on claims that are deemed allowed under section 502(a) violates not only the Bankruptcy Code, but also fundamental notions of justice and fairness.

## Conclusion

18. Traditionally, upon the filing of a proof of claim, a debtor has two simple options. It may object to the claim, in which case the burden of proof shifts to the debtor to overcome the presumed validity of the claim's validity and amount. Alternatively, it may choose not to object to the claim, in which case the claim will be deemed allowed under section 502(a).

19. US AgBank respectfully submits that the Debtors should be forced to adhere to this structure. US AgBank has properly filed its Claims. The Debtors should either object to the Claims and produce substantial evidence in support of their objection, or they should accept that the Claims will be deemed allowed. They should not be permitted to circumvent the statutory mechanism by shifting the burdens of proof and production back to the claimants.

20. US AgBank urges the Court to deny the Motion, at least with regard to its attempts to require (a) completion of the Questionnaires, which place significant and

impermissible burdens (both evidentiary and otherwise) upon the relevant claimants, and (b) the amendment of claims related to derivatives or guarantees by creditors that have already filed proofs of claim on other forms.

WHEREFORE, US AgBank respectfully requests that the Court (a) deny the Motion, and (b) grant US AgBank such further relief as the Court deems just.

Dated: June 11, 2009
       Washington, DC

SUTHERLAND ASBILL & BRENNAN LLP

By:   /s/ Mark D. Sherrill

Mark D. Sherrill (*pro hac vice* pending)
1275 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 383-0100
Fax:  (202) 637-3593

COUNSEL FOR US AGBANK, FCB