**Presentment Date and Time: June 12, 2009 at 4:00 p.m. (Prevailing Eastern Time)**
**Objection Date and Time: June 12, 2009 at 12:00 p.m. (Prevailing Eastern Time)**
**Hearing Date and Time: June 17, 2009 at 2:00 p.m. (Prevailing Eastern Time)**

Lindsee P. Granfield
Lisa M. Schweitzer
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for Barclays Capital Inc., Barclays Bank PLC and their affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Lehman Brothers Holdings Inc., et al. | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**OBJECTION TO MOTION OF THE DEBTORS, PURSUANT TO
SECTION 502(b)(9) OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULE 3003(c)(3), FOR ESTABLISHMENT OF THE DEADLINE FOR FILING
PROOFS OF CLAIM, APPROVAL OF THE FORM AND MANNER OF
NOTICE THEREOF AND APPROVAL OF THE PROOF OF CLAIM FORM**

Barclays Capital Inc., Barclays Bank PLC and their affiliates (collectively, "Barclays"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to the motion (the "Bar Date Motion") [D.I. 3654] of the above-captioned debtors and debtors in possession (the "Debtors") pursuant to section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3), for establishment of the deadline for filing proofs of claim, approval of the form and manner of notice thereof and approval of the proof of claim form. In support of its Objection, Barclays respectfully states as follows:[1]

---

[1]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Bar Date Motion.

**PRELIMINARY STATEMENT**

1. While Barclays has no objection to the establishment of a bar date for the submission of claims in these chapter 11 cases, the Debtors' Bar Date Motion seeks much more than that. If approved, it would require every creditor asserting claims based on Derivative Contracts and Guarantees of Derivative Contracts to provide massive amounts of information and supporting documentation in connection with the initial filing of their proofs of claim. This apparent strategy of "front-loading" the claims reconciliation process by imposing onerous discovery on claimants through a bar date order is not only improper under the Bankruptcy Rules, but also exposes claimants to the real risk of disallowance of their claims if they fail to produce every last piece of such information. Specifically, Barclays objects to the Debtors' Bar Date Motion on the following grounds:

2. First, the mass of information the Debtors seek to require contravenes both the letter and spirit of Bankruptcy Rule 3001, which accords *prima facie* validity to a proof of claim filed in accordance with the Bankruptcy Rules. The Bankruptcy Rules, as well as case law interpreting these Rules, do not impose at the initial stage of filing a proof of claim the obligation to provide the mountain of information the Debtors would require with respect to Derivative Contracts and Guarantees of Derivative Contracts. Rather, the filing of a claim is intended to be a simple exercise where the claimant identifies the nature and amount of the claim and provides a basic level of information in support thereof so that a debtor can begin the claims reconciliation process. If the debtor disputes the asserted claim or is unable to reconcile the claim with its own records, the debtor can informally request additional information and/or file an objection to the claim. Here, however, the Debtors' Bar Date Motion threatens to turn this simple exercise into a game of "gotcha", whereby otherwise valid claims could be disallowed on technical grounds,

such as the failure to produce the massive amount of information and documentation required in the proposed Derivative and Guarantee Questionnaire.

3. Second, through the proposed Derivative and Guarantee Questionnaires the Debtors seek to impose one-sided discovery in the form of interrogatories and document requests on claimants, again in violation of the Bankruptcy Rules. Such one-sided discovery concerning derivative contracts through the mechanism of a bar date order is, of course, unprecedented, even in the largest of chapter 11 cases, and is in any event improper under the Bankruptcy Rules. Discovery relating to such claims, if any, may only be had after the Debtors file an objection to the claim, thereby initiating a contested matter pursuant to Bankruptcy Rule 9014, or by objecting to the claim as part of an adversary proceeding. In either case, discovery would be conducted pursuant to the protections of the Federal Rules and such discovery would operate in both directions (that is, creditors could also request additional information from the debtor).

4. Third, the proposed Derivative and Guarantee Questionnaires would impose undue burdens on claimants by requiring them to catalogue and collect an enormous amount of information as part of their proofs of claim for Derivative Contracts or Guarantees thereof. The required information would include, *inter alia*, all individual confirmations between the claimant and the Debtors and the claimant's trade valuation methodology and data. This is an extraordinary burden on creditors such as Barclays, who was a party to over tens of thousands trades with the Debtors, especially given that such information is not required by the underlying derivatives documentation.

5. The Debtors have not articulated any justification for why they need this information as part of a claimant's proof of claim, other than that Derivative Contracts are

3

complex instruments. However, this rings hollow for a number of reasons. The vast majority of trades are standard derivatives trades which are highly unlikely to be disputed by the Debtors. To require an exorbitant amount of detail for *all* trades (regardless of their complexity and regardless of the fact that many may be easily reconciled) would place unnecessary burdens not only on claimants but also on the estates, which would have to store, process and review this mass of information. Instead, and consistent with the Bankruptcy Rules and the traditional claims reconciliation process, where a proof of claim does not contain sufficient information for the Debtors to evaluate the claim, the Debtors are free to request additional information.

6. Finally, imposing unnecessary and onerous obligations at the outset exposes claimants to the real risk that their claims will be disallowed on wholly technical grounds, such as a failure to provide all of the requested documentation and information in the questionnaires as part of the proof of claim. This Court should approve a bar date order that is consistent with the bar date orders in other large chapter 11 cases. While it may make sense for the Debtors to propose omnibus procedures to reconcile and object to claims based on Derivative Contracts and Guarantees once such claims are filed, the burdens that the Debtors are seeking to impose on this group of claimants at the initial filing stage are wholly inappropriate.

7. For these, as well as the additional reasons discussed below, Barclays submits that the Bar Date Motion should be denied to the extent provided herein.

## BACKGROUND

8. On September 15, 2008, and on various dates thereafter, Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

9. On September 19, 2008, Lehman Brothers Inc. ("LBI") was placed into a liquidation proceeding (the "LBI Proceeding") pursuant to the Securities Investor Protection Act of 1970 ("SIPA").  James W. Giddens (the "SIPC Trustee") was thereafter appointed to serve as the SIPA Trustee by order of the United States District Court of the Southern District of New York.  The case was referred to the Bankruptcy Court.

10. On May 26, 2009, the Debtors filed the Bar Date Motion seeking entry of an order (i) establishing August 24, 2009 (the "Bar Date") as the deadline for filing Proofs of Claim, (ii) approving the form and manner of notice of the Bar Date and (iii) approving a specialized proof of claim form substantially in the form attached to the Motion as Exhibits B, C, and D (such proof of claim form and related questionnaires, the "Proof of Claim Form").

11. Notably, the Bar Date Motion seeks approval of certain specialized procedures with respect to claims based on Derivative Contracts or Guarantees with the Debtors, which procedures would impose on each such claimant the additional burden of (i) completing electronically detailed questionnaires concerning the evidentiary bases for the asserted claims and (ii) uploading additional supporting documentation and evidentiary support.  Specifically, among the many items a claimant must provide pursuant to the Derivative Questionnaire are copies of *all* trade confirmations, evidence supporting delivery of the termination notice, evidence of any consent or other condition required to be satisfied in order to effect termination of the derivative contract, highly detailed trade level information, and specific information about the trade valuation methodology and quotations, and, depending on the methodology used, additional documentation, narrative descriptions of the methodology and/or external communications, as the case may be.  Moreover, claimants that assert a claim based on both a Derivative Contract and a Guarantee thereof – certainly not uncommon, given that LBHI

5

guaranteed many of the derivative trades of its subsidiaries – are required to submit *both* the Derivative Questionnaire and the Guarantee Questionnaire. None of these burdens are imposed on any claims other than those based on Derivative Contracts and Guarantees.

12.   Further, the Bar Date Motion, as well as the proposed Proof of Claim Form state that failure to complete the applicable questionnaire and upload all supporting documentation will result in disallowance of the claim.

## ARGUMENT

**I.   The Proposed Proof of Claim Form Impermissibly Reorders the Carefully Designed Allocation of Evidentiary Burdens Provided by Bankruptcy Rules 3001 to 3008**

13.   The Debtors' Bar Date Motion turns the allocation of evidentiary burdens under Rules 3001 to 3008 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") on its head. Under the Bankruptcy Rules, the evidentiary burdens are divided into three distinct stages. First, a claimant files a proof of claim that (i) is a written statement setting forth the creditor's claim, (ii) conforms substantially to Official Form 10, (iii) is executed by the creditor or its authorized agent, and (iv) attaches writings on which the claim is based. See Bankruptcy Rule 3001(a), (c). A proof of claim that satisfies these minimal requirements is *prima facia* evidence of the validity and amount of a claim. See Bankruptcy Rule 3001(f). The purpose of this Rule is to "expedite the claim's process by providing certain minimum evidentiary standards by which proofs of claim may be assessed. The Rule was never meant to require that a creditor provide incontrovertible proof of its claim." In re Samson, 392 B.R. 724, 730 (Bankr. N.D. Ohio 2008) (citation omitted) (holding that proof of claim that attached copy of blanket assignment of credit card accounts, but which did not specifically identify debtors' accounts, was sufficient to establish prima facie validity). See also, e.g., In re Heath, 331 B.R. 424, 435 (B.A.P. 9th Cir. 2005) ("The procedure for claims allowance or disallowance is

6

designed to be speedy and inexpensive . . . ."). Indeed, the purpose of a proof of claim at the outset is merely to "enabl[e] the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims." See, e.g., In re Hooker Invs., Inc., 937 F.2d 833, 840 (2d Cir. 1991). Consistent with these minimal evidentiary requirements, Official Form 10 provides that where the supporting documentation is voluminous, a summary thereof suffices. See Official Bankruptcy Form B10. Moreover, if no objection to a proof of claim is filed, such claim is deemed allowed. See 11 U.S.C. § 502(a).

14.     Courts routinely hold that a proof of claim need not attach the complete documentation as to every single transaction in order to be *prima facie* valid; a summary commonly suffices. See In re Heath, 331 B.R. 424 (holding that credit card issuer need not attach voluminous supporting documentation of every transaction for account to its proof of claim, but can comply with obligations under Bankruptcy Rule 3001 by attaching a summary); In re Pritchett, No. 06-40077-JJR-13, 2006 WL 3103161, at *2 n.3 (Bankr. N.D. Ala. Oct. 26, 2006) (unpublished opinion) ("It would be overly burdensome to require a credit card company, as a condition to obtaining prima facie validity for its proof of claim, to attach thereto a duplicate or copy of the memorialization for each transaction covered by the proof of claim; a summary . . . is sufficient."); In re Moreno, 341 B.R. 813, 818 (Bankr. S.D. Fla. 2006) ("account summaries may be attached and it is generally unnecessary to attach the original credit agreement or evidence of each credit card transaction"); In re Kemmer, 315 B.R. 706, 715 (Bankr. E.D. Tenn. 2004) ("requiring the creditor to attach voluminous documentation to a proof of claim would put an unduly onerous burden upon the creditor, as well as the debtor and the

Chapter 13 trustee, who would be required to sift through the produced documentation in assessing the claim's validity").

15.  At the second stage of the claims reconciliation process, a party seeking to object to a claim has the burden under Rule 3007(a) of producing "'evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.'" In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992)); see also In re Hemingway Transp., Inc., 993 F.2d 915, 925 (1st Cir. 1993) ("The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by *substantial evidence*.") (emphasis in original); In re Cluff, 313 B.R. 323, 337 (Bankr. D. Utah 2004) (requiring that objecting party "come forward with some legal reason or some factual evidence to defeat the claim").  Only if such evidence is introduced is the presumptive validity of a properly filed proof of claim rebutted.  A mere formal objection is not sufficient to defeat a proof of claim.  See, e.g., Lundell v. Anchor Constr. Specialists, Inc., 223 F.3d 1035, 1040-41 (9th Cir. 2000).

16.  Finally, at the third stage, and only if the objecting party successfully rebuts the validity of a proof of claim, the burden of proof shifts back onto the claimant (assuming that the claimant would bear the ultimate burden under applicable nonbankruptcy law).  See, e.g., In re Oneida, 400 B.R. at 389; see also Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000).

17.  Here, a requirement that proofs of claims based on Derivative Contracts or Guarantees must be supported by the mountain of information and documentation sought by the

8

Debtors would clearly violate this carefully calibrated allocation of evidentiary burdens and turn the entire claims reconciliation process on its head. As envisioned by the Bar Date Motion, the filing of the proof of claim would no longer be a simple exercise where the claimant provides a basic level of information to support the claim and place the onus on the Debtors to come forward with a basis for objecting to the claim sufficient to rebut a proof of claim's *prima facie* validity. Rather, the Debtors would require that claimants fully prove up the amount and validity of their claims at the outset, effectively collapsing the three-stage claims reconciliation process into one where the burden falls entirely on the claimants to an extent far beyond what even the third stage might require. Bankruptcy courts have rejected similar efforts to impose onerous evidentiary burdens on claimants as part of the first stage of the filing process. See In re Congoleum Corp., No. 03-51524, 2008 WL 314699, at *3 (Bankr. D.N.J. Feb. 4, 2008) (unpublished opinion) (rejecting bondholders' proposed "specialized" proof of claim because it demanded "production of an overwhelming amount of information" which "would be inequitable to the claimants to the extent not counterbalanced by the desire to streamline claims").

        18.    It is no answer for the Debtors to assert that they would be entitled to the information being sought as part of the Derivative and Guarantee Questionnaires in the event of an objection to a claim. Such an argument incorrectly assumes, with no basis, that all of the claims are somehow objectionable (despite the fact that the parties will likely agree on the vast majority of the claims). It also ignores that a debtor is entitled to such additional information only after it had satisfied *its* burden of coming forward with a basis for objecting to a claim sufficient to rebut a proof of claim's *prima facie* validity. See In re Oneida, 400 B.R. at 389. The Bar Date Motion not only improperly assumes the Debtors' right to voluminous information in the absence of any valid objection, but also appears to create technical bases for disallowing

9

claims, namely the purported failure of a claimant to fulfill the onerous requirements set out in the questionnaires. As discussed, those requirements are not consistent with the Bankruptcy Rules.

19.  Finally, the questionnaires would also effectively rewrite the terms of the underlying derivative contracts between creditors and the Debtors, none of which require the level of detail being sought here as part of the close-out process (as further discussed in Part II below). By rewriting the terms of the contracts, the Debtors are attempting to impose additional evidentiary burdens on the claimants beyond what would be otherwise required under applicable nonbankruptcy law. This directly contravenes the Supreme Court's directive that the Bankruptcy Code and the Bankruptcy Rules *do not* alter the burden of proof that would otherwise apply outside of bankruptcy. See Raleigh, 530 U.S. at 17 ("We hold that bankruptcy does not alter the burden imposed by the substantive law."). See also Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 451 ("[W]hen the Bankruptcy Code uses the word 'claim' -- which the Code itself defines as a 'right to payment,' 11 U.S.C. § 101(5)(A) -- it is usually referring to a right to payment recognized under state law."). The Debtors cannot impose higher evidentiary burdens on claimants than what would otherwise apply outside of bankruptcy.

20.  This Court should not approve a bar date order that directly contravenes the carefully calibrated allocation of evidentiary burdens in Rule 3001 to 3008.

## II. The Proposed Proof of Claim Form Impermissibly Imposes One-Sided and Front-Loaded Discovery on Claimants

21.  The proposed Proof of Claim Form, including the Derivative Contract and Guarantee Questionnaires, is also an improper attempt to obtain one-sided discovery from claimants, again in direct violation of the Bankruptcy Rules. The only proper mechanism to

obtain discovery from a claimant is to object to the claim thereby initiating a contested matter pursuant to Rule 9014, or by objecting to the claim as part of an adversary proceeding. See, e.g., In re Caldor, Inc. - NY, 217 B.R. 121, 128 (Bankr. S.D.N.Y. 1998) ("As a general rule, claims objections are contested matters, not adversary proceedings."); In re Metiom, Inc., 301 B.R. 634, 639 (Bankr. S.D.N.Y. 2003) (noting that while claims objections are generally contested matters, "[i]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it *becomes* an adversary proceeding") (emphasis in original). If the claims objection is included in an adversary proceeding, the discovery rules set forth in the Bankruptcy Rules of course apply. See, e.g., Bankruptcy Rule 7026. If the claim objection is treated as a contested matter, specified provisions of the Bankruptcy Rules "shall apply", including specifically the provisions regarding discovery under Rules 7026 and 7028-37, unless the court directs otherwise. See Bankruptcy Rule 9014; see also 10 Collier on Bankruptcy ¶ 9014.05 (15th ed. rev. 2009).

        22.     Here, however, the Debtors seek to convert a bar date order into a blanket authorization to conduct sweeping discovery with respect to a group of claims in direct contravention of these Rules. Specifically, the Derivative Questionnaire poses myriad interrogatories, requiring each claimant under a Derivative Contract to provide the following information in response, among many others:

- with respect to each trade, "trade id, electronic trade reference id, trade type, product, trade date, reference obligation or reference entity, credit events, factored and original contract notional amount, quantity/unit of measure, currency, price or strike price, buy/sell, call or put, cap or floor, location, effective date, maturity date, termination date, and value," all of which must be provided in excel format. Derivative Questionnaire at 2 (attached as Exhibit C to Bar Date Order).

- with respect to the Close-Out Amount Methodology, "a narrative description of the methodology used to determine the valuations of transactions, including how quotations, if any, were utilized and all other

11

inputs, assumptions, values and applicable parameters" and, "[i]f the methodology used involved any interpretation or deviation from the wording of the applicable documentation . . . a narrative description of the basis for such interpretation or deviation" Id. at 3.

- further, with respect to the Close-Out Amount Methodology, "documentation from market-makers or other persons concerning the transactions." Id.

- with respect to the Market Quotation Methodology, "the market-maker name, contact individual, when requests were made, the form of request that was made, in what manner the market-makers responded and the nature of any follow-up requests." Id. at 2.

- further with respect to Market Quotation Methodology, "a description of the methodology used to determine the valuation of transactions, including how quotations, if any, were utilized and all other inputs, assumptions, values and applicable parameters." Id. at 2-3.

- further, with respect to the Market Quotation Methodology, where claimant utilized a different methodology "a narrative description of why the Market Quotation method was not used." Id. at 2.

- with respect to Loss Methodology, "a narrative description of the methodology used to determine the valuations of transactions, including how quotations, if any, were utilized and all other inputs, assumptions, values and applicable parameters." Id. at 3.

- further, with respect to Loss Methodology, "[i]f the methodology used involved any interpretation or deviation from the wording of the applicable documentation, provide a narrative description of the basis for such interpretation or deviation." Id.

- with respect to Replacement Transactions, "documentation evidencing any transactions executed in order to replace any transactions, including specifying any cash (or other consideration) paid or received by or to any person to replace the transactions, the name of each entity that effectuated a replacement and when such transactions were effected." Id.[2]

- further, with respect to Replacement Transactions, "any external communications (including all transaction confirmations, other

---

[2] In addition, much of the information relating to replacement transactions could be subject to confidentiality limitations.

- documents, e-mails, or any other writings or information) evidencing or concerning the replacement transactions." Id.

- with respect to Collateral, "CUSIP/ISIN for collateral listed, the valuation of the collateral as well as support for such valuation (e.g. market quotes, emails, etc . . . )" and "bank wire advice, Fed Reference numbers and other statement supporting the original posting of cash collateral and any cash disbursements on the securities." Id. at 4.

Further, even were the Debtors entitled to effectively demand interrogatory responses characterized as proofs of claim (as these clearly are), these would violate Local Bankruptcy Rule 7033-1, which restricts interrogatories at the commencement of discovery to certain limited areas such as the names of witnesses, computation of damages, and existence of documents.[3] There is no basis to disregard these important limitations in the rules simply by using a different label for the requests for information.

23. In addition, the questionnaires propound multiple document requests, including the following:

- "all master agreements, schedules, netting arrangements, confirmations, credit support documentation, guarantees and other documents related to the transactions." Id. at 2.

- "the termination notice, including evidence supporting delivery date of the termination notice" and "evidence of any consent or other condition required to be satisfied in order to effect termination of the derivative contract." Id.

- "the valuation statement, including evidence supporting delivery date of the valuation statement" and "any collateral that has been posted in

---

[3] Local Bankruptcy Rule 7033-1(a) provides:

At the commencement of discovery, interrogatories will be restricted to those questions seeking names of witnesses with knowledge or information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location, and general description of relevant documents, including pertinent insurance agreements, and other physical evidence, and information of a similar nature, to the extent such information has not already been provided under Fed. R. Civ. P. 26(a)(1).

connection with this transaction and any claims of set-off against other transactions." Id.

24. Of course, some of this information will already be included in the standard close-out and calculation notices required by the underlying derivative documentation, such as, for example, Section 6(d) of the ISDA Master Agreement. However, Section 6(d) of the 2002 ISDA Master Agreement[4] merely requires a calculation statement

> (1) showing, in reasonable detail, such calculations (including any quotations, market data or information from internal sources used in making such calculations), (2) specifying (except where there are two Affected Parties) any Early Termination Amount payable and (3) giving details of the relevant account to which any amount payable to it is to be paid.

Section 6(d) of 2002 ISDA Master Agreement. The Debtors' proposed Derivative and Guarantee Questionnaires, however, would seek massive amounts of information beyond the Section 6(d) requirements through one-sided discovery from claimants. This should not be permitted absent compliance with the Federal Rules *after* the Debtors have filed a proper objection to a particular claim, thereby initiating a contested matter pursuant to Bankruptcy Rule 9014, or have objected to a claim in an adversary proceeding.

### III. The Proposed Proof of Claim Form and Proposed Filing Procedures Are Patently Unreasonable and Unduly Burdensome

25. As discussed above, the proposed Proof of Claim Form is a procedurally improper, unilaterally imposed, grossly overbroad and burdensome discovery device that could result in the perfunctory disallowance of masses of individual claims for the reason of non-compliance with the Debtors' proposed improper requirements. However, separate from and in addition to these objections, the proposed Proof of Claim Form is also patently unreasonable and

---

[4] Many of the close-out calculations for the derivative transactions at issue are governed by the language from Section 6(d) of the 2002 ISDA Master Agreement, which is illustrative of the language in earlier versions of the ISDA Master Agreement.

unduly burdensome on claimants as well as the estates. The Debtors seek to require information and supporting documentation that claimants may neither possess nor reasonably be able to obtain or assemble in the little more than two months being provided – especially given that such information is not required by the underlying derivatives documentation and given that claimants such as Barclays had tens of thousands of trades with the Debtors. The Debtors' proposed Proof of Claim Form thus threatens to make it *per se* impossible for many claimants to comply with the Bar Date Order proposed by the Debtors.

26.     For example, given that trade confirmations are frequently provided in electronic format – via ticker, Bloomberg or email – it would be extremely difficult to identify and assemble every single confirmation for each of the underlying trades. In addition, the effort of putting this information together for most of these trades would ultimately turn out to have been unnecessary in the vast majority of cases where the debtor already has its own copy of the confirmation. Similarly, it may be virtually impossible to provide all inputs, assumptions and parameters that went into the close-out calculation because the calculations themselves are highly sensitive proprietary technology.[5]

27.     Nor have the Debtors articulated a justification why information in excess of what would be provided as part of the customary close-out process would be necessary as part of *every* proof of claim. While it may be true that some Derivative Contracts are complex instruments, it is also true that many of the trades are "plain vanilla" and are highly unlikely to be disputed by the Debtors. To nevertheless require, without discrimination, that every claim based on a Derivative Contract – whether complex or not – be accompanied by a mountain of

---

[5] Many close-out calculations are made employing highly specialized models that trading desks use for modeling market prices as part of their proprietary trading. In addition, the proprietary trading technology is itself highly complex and potentially extraordinarily voluminous.

documents and information as part of a proof of claim places an undue burden not only on those claimants who are required to identify, collect and upload this mountain of information, but also on the Debtors' estates, which will have to store, process and review it (and if they won't review all of them, they should not demand their production indiscriminately, given the burden associated with such production). Nor would the Debtors be at an informational disadvantage if the proofs of claim "only" included the information customarily provided in the close-out process. If such information turned out to be insufficient to evaluate a particularly complex trade and/or dispute such trade, the Debtors can always request further information as part of the traditional claims reconciliation process.

28.     Further, the Debtors fail to offer any precedent for the detailed questionnaires they seek to propound on claimants asserting claims based on Derivative Contracts and Guarantees. Nor have we been able to find any precedent for these types of questionnaires in other large chapter 11 cases where derivatives contracts have figured prominently.[6] See, e.g., Bar Date Order, In re Enron Corp., et al., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Aug. 1, 2002);[7] Bar Date Order, In re Mirant Corp., et al., Case No. 03-46590 (DML) (Bankr. N.D. Tex. Aug. 21, 2003).

---

[6]     The information requested by the Debtors from claimants asserting claims based on Derivative Contracts is truly unprecedented. With the exception of a few asbestos and mass tort cases, we have been unable to locate any examples of claimants being required to submit highly detailed questionnaires as part of the claims process. Of course, asbestos cases and mass tort cases are distinguishable from the situation here in that those cases presented the prospect of hundreds of thousands of tort claimants making single claims for personal injuries where the debtor did not know about any prior relationship with such claimant. The burden, additionally, was on each claimant to fill out one questionnaire, not tens of thousands or more, which was balanced by the debtors' complete lack of information. In contrast, the claims at issue here involve standard commercial relationships between the claimant and the Debtors, and the Debtors should have the documentation (such as the underlying contracts) to support the vast majority of claims.

[7]     The proof of claim form approved by the court in In re Enron included a questionnaire only with respect to *employee* claims and that questionnaire only requested readily accessible, basic information. No questionnaire was required for derivative contracts.

29. As set forth above, these exceptionally onerous burdens expose claimants to the risk that their claims will be disallowed on wholly technical grounds, including the failure to provide all the requested documentation and information. Alternatively, by making the claims process so onerous, burdensome and expensive, the filing of legitimate, more modest-sized claims will be discouraged. Either way, requiring completion of the Derivative and the Guarantee Questionnaires as part of the proof of claim submission process is inappropriate.

## IV. The Proposed Proof of Claim Form and Proposed Filing Procedures Raises Other Concerns Which, if Not Addressed, Warrant Denial of the Bar Date Motion

30. Finally, in addition to the objections articulated above, the Bar Date Motion also poses a number of other concerns, which, if not addressed, also warrant denial of the Bar Date Motion:

- The Bar Date Motion defines the phrase Derivative Contracts vaguely as "derivative contracts, in which the contractual obligations and values are keyed to one or more underlying assets or indices of asset values and subject to movement in the financial markets." See Bar Date Motion ¶ 21. This definition is neither precise nor does it provide claimants with fair notice as to whether their claims with respect to particular types of financial instruments would be subject to the requirement to complete the detailed Derivative Questionnaire and/or Guaranty Questionnaire. Given that the Debtors propose a claim be disallowed for failure to complete a required questionnaire, the definition of Derivative Contract should be made more specific, including by listing the various types of arrangements the Debtors seek to subject to specialized claims procedures.

- The Debtors' proposed Bar Date Order would require claimants to upload voluminous amounts of information to a website established by their claims agent, Epiq Bankruptcy Solutions, LLC, as part of the completion of the Proof of Claim Form, separate and in addition to mailing the hard of the copies of the standard Form 10 and attachment. The prospect of thousands of claimants seeking to upload enormous amounts of documents at substantially the same time raises the specter of major technological problems, which could result in the failure to timely submit the Proof of Claim Form. If large amounts of information are required as part of the Proof of Claim Form, claimants should be permitted to send hard copies of such information in lieu of electronic filing.

- Claimants should not be required to complete the Derivative Questionnaire twice where both the underlying obligor and guarantor are debtors in these chapter 11 cases, as the Debtors will receive the information they want if the Derivative Questionnaire is filled out solely in respect of the underlying obligor.

- Barclays also objects to setting the bar date on August 24, 2009, i.e., at a time many key employees will be out of the office. There is no reason why the bar date could not be pushed back a few weeks or a month.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, Barclays respectfully requests that this Court (i) deny the Bar Date Motion, (ii) enter a bar date order substantially in the form

attached hereto as <u>Exhibit A</u> (clean) and <u>Exhibit B</u> (blackline),[8] and (iii) and grant such other and further relief as this Court may deem just or proper.

Dated: New York, New York
June 11, 2009

           Respectfully submitted,

           /s Lindsee P. Granfield
           Lindsee P. Granfield
           Lisa M. Schweitzer
           CLEARY GOTTLIEB STEEN & HAMILTON LLP
           One Liberty Plaza
           New York, New York 10006
           Telephone: (212) 225-2000
           Facsimile: (212) 225-3999

           *Attorneys for Barclays Capital Inc., Barclays Bank PLC and their affiliates*

---

[8] The proposed order has been changed to delete the references to the special Derivative and Guarantee Questionnaires. In addition, the proposed bar date notice has been conformed to this proposed order and the proof of claim form attached thereto is Official Form 10.