**Hearing Date and Time: June 17, 2009 at 2:00 p.m.**

Jeff J. Friedman
Merritt A. Pardini
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | | Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS, INC., et al., | : | (Jointly Administered) |
| | : | |
| Debtors. | | |

-----------------------------------------------------------x

**OBJECTION OF FEDERAL HOME LOAN BANK OF NEW YORK, INSTITUTIONAL BENCHMARKS SERIES (MASTER FEEDER) LIMITED ACTING SOLELY WITH RESPECT TO THE CENTAUR, TAKS AND AUGUSTUS GLOBAL RATES SERIES, CASAM ADI CD ARBITRAGE FUND LIMITED, ROYAL BANK OF CANADA, AND CAJA DE CASTILLA LA MANCHA VIDA Y PENSIONES S.A. DE SEGUROS Y REASEGUROS TO DEBTORS' MOTION PURSUANT TO SECTION 502(b)(9) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3003(c)(3) FOR ESTABLISHMENT OF THE DEADLINE FOR FILING PROOFS OF CLAIM, APPROVAL OF THE FORM AND MANNER OF NOTICE THEREOF AND <u>APPROVAL OF THE PROOF OF CLAIM FORM</u>**

Federal Home Loan Bank of New York, Institutional Benchmarks Series (Master Feeder)

Limited acting solely with respect to the Centaur, Taks and Augustus Global Rates Series,

CASAM ADI CD Arbitrage Fund Limited, Royal Bank of Canada and Caja de Castilla la

Mancha Vida Y Pensiones S.A. de Seguros Y Reaseguros (collectively, the "<u>Objecting Parties</u>"),

through their undersigned counsel, hereby object to the Debtors' Motion Pursuant to Section

502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) for Establishment of the

84379892_3

1

Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form (the "Motion")[1] and state as follows:

## Summary of the Objection

1. Rather than presenting to this Court a typical motion to establish a deadline for the filing of the proofs of claim (i.e., the date and location for filing claims, a standard form for creditors to use and approval of a publication notice), the Motion seeks to establish additional burdens and requirements that go well beyond what is required in a proof of claim by the Bankruptcy Rules and long-established precedent. The Debtors' proposals serve only to complicate the claims process, impose needless hurdles for creditors to stumble over with a risk of their claims being disallowed, and provide the Debtors with a unilateral right to full discovery in the guise of elaborate questionnaires when no contested matter yet exists entitling any party to discovery, let alone the one-sided discovery proposed here.

2. While it may be convenient for the Debtors to obtain this full discovery with respect to claims based on derivatives and have potentially available to them every single document related to a transaction, as well as documents such as Excel spreadsheets that the claimants (even those without Excel) would be compelled to create and information they would be compelled to gather (e.g., CUSIP numbers), neither the Bankruptcy Code, the Bankruptcy Rules nor the case law entitles the Debtors to this level of proof in connection with the filing of a proof of claim. It is unreasonable to impose this burden on claimants, under penalty of having their claims disallowed, when the Debtors' have not seen a basic proof of claim from the claimant to know if they find it objectionable and when the Debtors have not determined, with respect to a particular claim, whether they need to review even a minimal portion of the information and documents they seek. Indeed, one of the Objecting Parties has been engaged in a review with the Debtors

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2

84379892_3

with respect to the termination of their ISDA master agreement and has been working cooperatively to provide information requested – but that information to date has been a fraction of what that Objecting Party would be required to gather and file by the bar date if the Motion is granted. Moreover, the additional documents and information is suitably made available to the Debtors, but should not be required to be available to the public generally as would be the case if the Objecting Party was compelled to attach it to a proof of claim.

3. The Objecting Parties request that the relief granted be limited to a more typical bar date request and that the filing of supporting documentation – whether electronically or in paper form – should be limited to what is required to satisfy the traditional standards a proof of claim, including the right to supplement and amend the proof of claim in accordance with established precedents. Certain of the Objecting Parties likely will be able and willing to file supporting documents electronically depending on whether the Lehman website is relatively user-friendly, but their choice to file in paper form should not be fatal to their claims. Others, including one Objecting Party whose proof of claim was already filed in paper form with all of the appropriate supporting documentation, should not have to file any additional documents, electronically or otherwise.

**Background**

4. Each of the Objecting Parties is a creditor of one or more of the Debtors and has one or more claims based upon an ISDA Master Agreement, Derivative Contract, and/or Guarantees, or is the holder of one or more securities. Some of the Objecting Parties have already filed Proofs of Claim against one or more of the Debtors with adequate documentary support and would thus be adversely impacted by the relief requested in the Motion.

5. Rather than present a motion seeking to establish a deadline for filing claims and approving a publishable notice, the Debtors seek to impose additional requirements that go well beyond what is required by the Bankruptcy Rules, established precedent and the Official Forms.

3

84379892_3

For example, as detailed in paragraphs 21 and 22 of the Motion, holders of claims based upon Derivatives Contracts must not only complete the standard Proof of Claim Form and file it with Epiq, the Debtors' claims agent, but must also log on to the lehman-claims.com website and complete the detailed Derivatives Questionnaire. A different questionnaire must be completed on the Lehman website for those seeking claims based on guarantees (Motion at ¶ 23) and both questionnaires are required of creditors with claims based on Guarantees of Derivatives Contracts (Motion at ¶ 24). The Derivatives Questionnaire is highly detailed and reads like a discovery demand. While it seeks documents that might very well be discoverable if the claim was objected to, remained unresolved through negotiation and was litigated, many of the documents it seeks go well beyond what would be required to satisfy the requirements of an acceptable proof of claim. The proposed procedures outlined in the Motion also compel these claimants to complete the questionnaires and to electronically upload supporting documentation to the lehman-claims.com website rather than attaching that documentation in hard copy to a proof of claim. The proposed procedures further provide that claimants will be required to submit all documentation in support of their claim under penalty of claim disallowance.

## The Requirements Sought Are Onerous and Not Required by Law

6. The proposed procedures far exceed what is required by the Bankruptcy Code, the Bankruptcy Rules and the official proof of claim form and should not be mandated by the Court. Bankruptcy Rule 3001(f) states: "A proof of claim executed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). Bankruptcy Rules 3001(c) and (d) require only attachment of the underlying agreement giving rise to the claim and any security for claim, together with proof of perfection with respect to a secured claim. Fed. R. Bankr. P. 3001(c)(d). An official proof of claim form has been approved for this very purpose and that form and the accompanying Bankruptcy Rules are all claimants should have to comply with unless and until the Debtors or another party in interest

4

84379892_3

object to the Claim. There is no reason to mandate alterations to that process for the Debtors.

7. The additional requirements for completion of the Derivatives Questionnaire and the Guaranty Questionnaire go far beyond what the Bankruptcy Rules and official form require and, with respect to a majority of the information sought, would not be required by a terminating counterparty outside of bankruptcy. Further, the Derivatives Questionnaire is ambiguous in a number of its requests and is needlessly duplicative of the Guarantee Questionnaire where a claimant's derivatives contracts are guaranteed by another Debtor.

8. For example, Derivatives Questionnaire item 4.a. requires that the claimant scan and upload all "master agreements, schedules, netting arrangements, confirmations, credit support documentation, guarantees and other documents related to the transactions." For a number of the Objecting Parties (and almost assuredly other claimants) this is an enormous volume of documentation,[2] particularly insofar as it broadly calls for all "other documents related to the transactions" which could require the production of hundreds of emails and other correspondence, review for attorney-client or work product privileges and a corresponding production of privilege logs. Moreover, given the potential volume of documents and the existence of derivatives contracts that may span years, some of the requested documents may be missing or difficult to locate. They may be expensive to gather and ultimately, depending on the amount of the claim, the amounts to be distributed in respect of claims by the Debtors, and other factors going to whether the Debtors would even bother to interpose a formal objection to the claim, may be entirely unnecessary and never reviewed by the Debtors.

9. Certain of the Objecting Parties have hundreds of confirmations, emails and other correspondence that may be considered "related to the transactions" and which would never be

---

[2] For example, the Debtors were parties to derivatives contracts where adjustments were made to particular positions put in place under the contracts. Each such adjustment generated a confirmation. Thus, not only is it common for a derivatives contract to consist of dozens or even hundreds of actual or notional positions, each position may only be demonstrated or "proved" with numerous confirmations in the proper chronological order.

5

84379892_3

produced in connection with a proof of claim, nor would they be required to accomplish the essential purpose of a proof of claim – to put the Debtors and others on notice of the creditor's claim and its intent to seek to share in recoveries from the Debtors' assets.

10. Much of the information sought, even though not in and of itself burdensome, is likely information not to be in dispute. For example, item 4.b. of the Derivatives Questionnaire requires "evidence supporting delivery of the termination notice." As stated above, at least one of the Objecting Parties in negotiations with the Debtors is there because the Debtors received its termination notice and there has been no dispute whatsoever as to its timing. Item 4.c., relating to production and information relating to the valuation statement required under a terminated derivatives master agreement, requires evidence of "any collateral that has been posted in connection with this transaction . . ." It is not clear whether the information sought is about collateral posted by the Debtors or collateral posted by the Claimant, or both. In instances where there have been derivatives master agreement terminations by non-debtor counterparties, they invariably fall within the stay exceptions applicable to derivatives (swaps, in particular) and the collateral posted by the Debtors has been offset leaving an unsecured shortfall and, hence, the need for a proof claim. So there would be no reason to list collateral posted by the Debtors that no longer exists. If it is the claimant's collateral that is referred to and the claimant is making a claim for amounts owed to it by the Debtors and for the return of its collateral, then some listing of the collateral (which, in the absence of any other claims by the Debtors against the collateral would not even be property of their estates) may be appropriate as that will be a significant part of the claimant's claim.

11. Similarly, while not required at all to support the mere filing of a proof of claim, even outside of bankruptcy, if the counterparty asked for support as to individual trades as item 4.d. of the Derivatives Questionnaire does, a confirmation would typically suffice and it would be the counterparty's option to provide information on an Excel spreadsheet as sought in item

6

84379892_3

4.d. – not something the defaulting party could mandate. Much of the information sought in item 4.d. such as "trade id" and "electronic trade reference id," aside from being ambiguous, appears to be the kind of information sought when there are serious doubts as to the veracity of the data provided.

12. With respect to many of the issues that may ultimately arise in connection with the termination of a derivatives master agreement, the most likely to be the subject of dispute or, at least, additional inquiry, is the methodology used to value the claim, especially given the chaos in the markets immediately after the Debtors' chapter 11 cases were commenced. Again, this level of information should not be required merely to assert a proof of claim, but for this information to be sought as it is in item 4.e. of the Derivatives Questionnaire before the Debtor even questions a particular market quotation or loss methodology calculation is intrusive and burdensome. Outside of bankruptcy, often market quotations from different sources are labeled for proprietary reasons as quotes from Dealer A, Dealer B, etc. and it is obvious, given the defaulting party's expertise, that a quotation looks about right and there is no dispute. For the Debtors to question the veracity or genuineness of particular market quotations cited in a valuation statement (or the unavailability of reliable market quotations and, therefore, the use of the "loss" methodology in calculating the claim under the ISDA master agreement), the Debtors reasonably have the burden of having obtained their own, materially different market quotations (or demonstrating that the "loss" methodology should not have been used because reliable market quotations were available). Much of the information requested in item 4.e. is vague and a trap for the unwary, including requests for "all other input, assumptions, values and applicable parameters."

13. The Guarantee Questionnaire similarly goes beyond what is required for a proof of claim form by requiring, in addition to copies the specific agreement under which the claim arises, copies of all documentation upon which the claim is based. See Motion at Exhibit "D."

7

84379892_3

Although this is largely an inappropriate discovery request, for claimants whose derivatives contracts were guaranteed, this would seemingly require a second onerous filing detailing the information required by Derivatives Questionnaire (which, in item 4.a., asks for copies of all guarantees).

### The Objecting Parties Should Only Have to Comply With Existing Law

14. The Objecting Parties should merely have to comply with the proof of claim procedures that are established by the Bankruptcy Code, the Bankruptcy Rules and the official form. Courts have upheld informal proofs of claim with a tiny fraction of the information sought by the Debtors. See, e.g., In re Drexel Burnham Lambert Group, Inc., 129 B.R. 22, 26 (Bankr. S.D.N.Y. 1991) (informal proof of claim "must state an explicit demand showing: 1) the nature of the claim; 2) the amount of the claim against the estate; and 3) evidence of an intent to hold the debtor liable."). The fundamental requirement of a proof of claim is to put a debtor on notice by a certain date that a particular claimant has a claim against it and to provide general information about that claim. In re Hanscom Retail Foods, Inc., 96 B.R. 33, 36 (Bankr. E.D. Pa.1988) ("Since the purpose of a proof of claim is for the creditor to put the estate on notice of its demand against the estate and its intention to hold the estate liable [citation omitted], this purpose is met so long as the nature of the claim . . . is clearly and timely announced."); In re Guidry, 321 B.R. 712, 714 (Bankr. N.D. Ill., 2005) (stating that "a proof of claim is simply 'a written statement setting forth a creditor's claim,' conforming substantially to the appropriate Official Form."). See also, In re American Classic Voyages Co., 405 F.3d 127, 132 (3d Cir. 2005) ("In order to constitute an informal proof of claim, the alleged demand must be sufficient to put the debtor and/or the court on notice as to 'the existence, nature and amount of the claim (if ascertainable).'" citing In re Charter Co., 876 F.2d 861, 863 (11th Cir.1989); In re Anderson-Walker Indus., Inc., 798 F.2d 1285, 1288 (9th Cir. 1986) (allowing informal proof of claim where letter "unambiguously states the existence and amount of the debt, that the Debtor owed

8

this sum to [the creditor], and that it had not been paid.")

15. Even though the Debtors seek all of the documents and information with respect to a proof of claim with the initial filing, the law allows required voluminous information to be summarized and provides in Bankruptcy Rules 3001(c) and (d) the kind of documentation required to be attached to a proof of claim. To alter that practice now, under penalty of claim disallowance, is inappropriate and improperly tilts the playing field in the Debtors' favor. See In Re Cluff, 313 B.R. 323, 336-37 (Bankr. D. Utah 2004) (statement that claim lacks supporting documentation insufficient to defeat prima facie validity of claim). The Cluff Court found it sufficient that a claimant attached a summary of controlling documentation. Id.

16. In the event the Court overrules this objection and requires the documentation the Debtors' seek to be part of the proof of claim, the Objecting Parties object insofar as the Debtors propose to preclude documentation from being provided except in electronic format. From a technological standpoint, all of the backup documentation could be massive and, merely as an example, the undersigned firm's information technology system cannot handle the upload of an Adobe pdf document greater than 35 MB. Moreover, parties filing claims electronically in the Lehman Brothers Inc. case (being handled by the same outside claims agent) were given the opportunity to upload only a single pdf file if they chose to file their claim electronically. While that may be sufficient for some of the Objecting Parties, the proposed requirement that all supporting documentation be electronically uploaded can quickly overload these limitations or may be impossible where more than one file format is required (e.g., Adobe pdf and Excel). While the Objecting Parties can understand the Debtors' desire to have documentation, particularly voluminous documentation, in electronic form and have no particular desire to see the deforestation of North America, it nevertheless should be optional and not required under penalty of claim disallowance.

9

84379892_3

17. Finally, the Objecting Parties object to the proposed requirement that parties who have already properly filed a Proof of Claim with the claims agent must timely refile that claim to satisfy the online questionnaire and document uploading requirements. See Motion at ¶ 14(f). These parties, having already performed what is required by the Bankruptcy Rules, should not be required to suffer the additional expense and burden of complying with the Debtors' proposed additional hurdles.

18. To the extent not inconsistent herewith, the Objecting Parties also join in the objection filed by US AgBank FCB.

WHEREFORE, the Objecting Parties respectfully request that the Court deny the Motion and, if it fixes a bar date for the filing of proofs of claim, to mandate requirements no greater than those required by the Bankruptcy Code, the Bankruptcy Rules and the official proof of claim form, and that the Court grant such other and further relief as is just.

Dated: June 11, 2009

                                          **KATTEN MUCHIN ROSENMAN LLP**

                                          By: */s/ Jeff J. Friedman*
                                              A Member of the Firm
                                        Jeff J. Friedman
                                        Merritt Pardini
                                        575 Madison Avenue
                                        New York, New York 10022
                                        Telephone: (212) 940-8800
                                        Facsimile: (212) 940-8776

                                        Attorneys for Federal Home Loan Bank Of New York, Institutional Benchmarks Series (Master Feeder) Limited acting solely with respect to the Centaur, Taks and Augustus Global Rates Series, CASAM ADI CD Arbitrage Fund Limited, Royal Bank of Canada, and Caja de Castilla la Mancha Vida Y Pensiones S.A. de Seguros Y Reaseguros