Presentment Date and Time: June 12, 2009 at 4:00 p.m. (Prevailing Eastern Time)
Objection Date and Time: June 12, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Hearing Date and Time: June 17, 2009 at 2:00 p.m. (Prevailing Eastern Time)

STROOCK & STROOCK & LAVAN LLP
Claude G. Szyfer
Jeremy S. Rosof
Francis C. Healy
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Attorneys for Derivative Claimants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.* | : | **Case No. 08-13555 (JMP)** |
| | : | |
| **Debtor.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------- x

## OMNIBUS OBJECTION OF DERIVATIVE CLAIMANTS TO MOTION OF THE DEBTORS, PURSUANT TO SECTION 502(b)(9) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3003(c)(3), FOR ESTABLISHMENT OF THE DEADLINE FOR FILING PROOFS OF CLAIM, APPROVAL OF THE FORM AND MANNER OF NOTICE THEREOF AND APPROVAL OF THE PROOF OF CLAIM FORM

Claimants, certain creditors pursuant to Derivative Contracts and Guarantees of

Derivative Contracts ("Derivative Claimants"),[1] by their undersigned attorneys, hereby file this

objection (the "Objection") to the motion (the "Motion")[2] seeking entry of an order (i)

---

[1]    The Derivative Claimants consist of the following:  Basso Fund Ltd.; Basso Holdings Ltd.; Basso Multi-Strategy Holding Fund Ltd.; CEDAR DKR Holding Fund Ltd.; DKR IBEX Holding Fund Ltd.; DKR Soundshore Oasis Holding Fund Ltd.; DZ BANK AG Deutsche Zentral-Genossenschaftsbank, Frankfurt am Main; Hess Corporation; Hess Energy Power and Gas Company (UK) Limited; Hess Energy Trading Company, LLC; Magnetar Capital Master Fund, Ltd.; Magnetar Constellation Master Fund, Ltd.; Magnetar Constellation Fund II, Ltd.; Magnetar Constellation Master Fund III, Ltd.; Magnetar Structured Credit Fund, L.P.; Mitsui & Co. Energy Risk Management Ltd.; Mizuho Capital Markets Corp.; Mizuho Corporate Bank, Ltd., as Holder of Derivative Claims; Mizuho Alternative Investments LLC; Nordea Bank Finland Plc; Nordea Bank AB (Publ); Pulsar Re, Ltd.

[2]    Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Motion.

establishing a bar date by which proofs of claim based on pre-petition claims must be filed

against the Debtors, (ii) approving the proof of claim form and (iii) approving the proposed bar

date notice and related notice procedures.  In support of this Objection, Derivative Claimants

respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      Derivative Claimants, a disparate group of firms located in several nations, who

entered into a variety of derivative transactions or guarantee arrangements with one or more of

the Debtors, have joined together to submit this omnibus Objection, to what can only be

described as an overreaching Motion by the Debtors.  In other chapter 11 debtor cases with large

numbers of derivative claims, derivative claimants have filed proofs of claim conforming

substantially to Official Form 10, annexing the applicable Master Agreement, including any

applicable Schedule and/or Credit Support Annex, copy of the termination letter, statement of

amounts owing and a schedule of the parties' transactions.  In those cases, no further

documentation was required of the derivative claimants or deemed necessary for them to provide

notice of their claims.

2.      By the Motion's terms, however, the Debtors seek to have this Court approve an

unprecedented and burdensome proof of claim form that would require each holder of claims

based on Derivative Contracts or Guarantees to log on to a website, and complete an overly

broad Derivative Contracts Questionnaire and/or an equally overly broad Guarantee

Questionnaire (collectively, the "Questionnaires").  These Questionnaires, in turn, together with

the proof of claim form, require a creditor to upload nothing less than "all supporting

documentation" relating to the creditor's Derivative Contracts and Guarantees, as well as to

create and file a series of descriptive narratives—tantamount to answering contention

interrogatories—converting a straightforward process designed to afford notice of a claim to the

Debtors, into what amounts to a thinly-veiled campaign for massive, one-sided pre-complaint discovery, and potentially a fatal trap for the unwary.

3.      As proposed by the Debtors, any holder of a claim based on a Derivative Contract or Guarantee—no matter its diligence or good faith—who fails timely and completely to satisfy any of the three steps before the proposed bar date; i.e., completing and filing its proof of claim, completing the applicable Questionnaire, or uploading onto the Debtors' designated website "all" documentation in support of such claimant's claim, may see its claim automatically disallowed without further notice or opportunity to be heard by the Court.

4.      The danger to Derivative Claimants is compounded by the tightly compressed time frame for responding to the Debtors' embedded pre-complaint discovery requests:  even as the Debtors balloon the scope and function of the proposed proof of claim form beyond that of Official Form 10 as applied to holders of claims based on Derivative Contracts and Guarantees, Debtors maintain the same 60-day bar date period for such claimants to submit proofs of claim as the Debtors maintain for claimants with simpler types of claims against the Debtors' estates who will use a proof of claim form more closely based upon Official Form 10.

5.      A further problem arises from the fact that the Debtors' bar date order (the "Proposed Order") provides that "any claims asserted other than claims asserted by parties that are legally entitled and authorized to assert such claim, shall be disallowed."  The phrase "legally entitled," which is not used either in Bankruptcy Rule 3001 or in Official Form 10, is ambiguous. The signature block in Official Form 10 refers only to execution by "the creditor or other person authorized to file this claim."  Debtors' proposed language thus places yet another unwarranted hurdle in the path of a conscientious creditor.

6.      As set forth below, the Motion raises serious legal problems: the order, if granted, would unduly burden Derivative Claimants and is certainly not fair and reasonable, given the obligations imposed on Derivative Claimants to produce every document in any way supporting their claims at the very outset of the claims process, and given the time constraints imposed by the Proposed Order.  Accordingly, the Motion should be denied.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory predicates for the relief sought herein are Rules 3001, 3003(c)(3) and 3007 of the Federal Rules of Bankruptcy Procedure and sections 502(a) of title 11 of the United States Code (as amended, the "Bankruptcy Code").

## BACKGROUND

9.      On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings, Inc. ("LBHI") and certain of its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Thereafter, other affiliates of LBHI filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  (Hereinafter, LBHI and its debtor affiliates are collectively, the "Debtors."  The Debtors and their non-Debtor affiliates are collectively referred to as "Lehman").  The foregoing chapter 11 cases are jointly administered and procedurally consolidated.

10.      Prior to the Petition Date, the Debtors and their non-debtor affiliates were reportedly the fourth largest investment bank in the United States.

11.      Prior to the Petition Date, Derivative Claimants and one or more of the Debtors entered into ISDA Master Agreements or related or similar agreements (the "Master

-4-

Agreements"), pursuant to which the parties entered into thousands of transactions in furtherance of Derivative Contracts.[3]  The Debtors' filing for chapter 11 protection constituted an Event of Default under the Master Agreements and as a result of that default and other defaults, Derivative Claimants notified the applicable Debtors that they were terminating the Derivative Contracts to which they were counterparties and held claims against certain of the Debtors' estates.  As of the Petition Date, certain of the Debtors had issued Guarantees or credit support arrangements relating to contracts and financing transactions, Derivative Contracts and other payment or performance Guarantees.  See Motion ¶¶ 23, 24. Certain Derivative Claimants also hold claims against one or more of the Debtors based on such Guarantees.

12.     The Motion was filed on May 26, 2009.  By its terms, the Debtors seek to have this Court approve, among other matters, a proof of claim form that would require each holder of claims based on Derivative Contracts or Guarantees to log on to a website, and complete a detailed Derivative Contracts Questionnaire, a Guarantee Questionnaire, or both, as applicable, depending upon the basis of the claim, and upload "all documentation" in support of and relating to that creditor's Derivative Contracts and Guarantees.  The obligations to completely fill-in the Questionnaires and to electronically upload all documentation supporting a claimant's claims onto a designated website have been made integral to the proposed proof of claim (collectively, the "Proposed POC").

13.     As proposed by the Debtors, any holder of a claim based on a Derivative Contract or Guarantee who fails timely and completely to satisfy any of the three steps before the proposed bar date; i.e., completing and filing its proof of claim, completing the applicable

---

[3]     The proposed proof of claim form defines the term "Derivative Contract" to mean "[a] contract, in which the contractual obligations and values are keyed to one or more underlying assets or indices of asset values and subject to movements in the financial markets, and include, but are not limited to, credit default swaps, total return swaps, currency swaps, forward contracts, future contracts and commodity contracts."

Questionnaire, or uploading into the Debtors' designated website "all documentation" in support

of such claimant's claim, may see its claim automatically disallowed without further notice or

opportunity to be heard by the Court.

14.    Regardless of whether a claim is based upon a Derivative Contract, a Guarantee,

or another type of claim not subject to the Questionnaires, under the terms of the Debtors'

proposed bar date process, the Debtors seek to establish the same approximately 60-day period

for submission of the proof of claim.  Given the obligations under the Proposed POC, the short

time frame is onerous and impracticable, and spares not even the good faith filer, who

inadvertently omits to attach a single piece of paper or solitary electronic file.

## ARGUMENT

### WITH RESPECT TO DERIVATIVE CONTRACTS, THE PROPOSED ORDER ESTABLISHING THE BAR DATE PROCESS SHOULD BE DENIED

**The Bankruptcy Rules Require Only That**
**Proofs of Claim Provide Debtors With**
**Notice of a Claim Against the Estate**

15.    The requisites for a proof of claim in a bankruptcy case are set forth in

Bankruptcy Rule 3001, which provides that "[a] proof of claim is a written statement setting

forth a creditor's claim." Fed. R. Bankr. Pro. 3001(a).  "[T]he purpose of a proof of claim [is]

that all parties in the proceeding are made aware of all claims against the debtor . . . ." In re L.F.

Rothschild Holdings, Inc., 143 B.R. 335, 337 (S.D.N.Y. 1992) (citing In re PCH Associates, 949

F.2d 585, 605 (2d Cir. 1991)).  See In re Fernstrom Storage and Van Co., 938 F.2d 731, 734 (7th

Cir. 1991) ("'The purpose of the proof of claim is to alert the court, trustee, and other creditors,

as well as the debtor, to claims against the estate.'"); In re Hanlin Group, Inc., 185 B.R. 703, 707

(Bankr. D.N.J. 1995) ("The purpose of a proof of claim is to apprise the debtor and any other

interested creditors of the existence of claims and the claim holders' intention to hold the estate

liable for debts."); cf. In re Stamford Color Photo, Inc., 105 B.R. 204, 207 (Bankr. D. Conn. 1989) ("a document need not be styled a proof of claim or filed in the form of a claim if it fulfills the purposes for which the filing of a proof of claim is required, i.e., a demand which shows the nature and amount of the claim against the estate.").

16.     Bankruptcy Rule 3001(a) further provides that "[a] proof of claim shall conform substantially to the appropriate Official Form," which is Official Form 10.  Official Form 10 requires limited information to be filled in on the form, and also requires that "[w]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing" (Bankruptcy Rule 3001(c)), the following originals or duplicates upon which the claim is based should be attached: promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.  However, Form 10 also provides that "[i]f the documents are voluminous, attach a summary," as "[t]he purpose of [Bankruptcy Rule 3001(c)] is to afford the debtor sufficient information to determine intelligently whether to contest a filed claim."  In re Trails End Lodge, Inc., 51 B.R. 209, 210 (Bankr. D. Vt. 1985).

17.     In contrast to Official Form 10, the proposed proof of claim presented by Debtors requires holders of claims based on Derivative Contracts or Guarantees ("Derivative Contract and Guarantee Claimholders") not only to complete a proof of claim form, but also to complete electronically one or more Questionnaires and upload electronically the potentially voluminous "all supporting documentation" for their respective claims.  See Proposed proof of claim form at 1.  Indeed, by the Debtors' own admission, the amount of data submitted could be "massive." See Motion ¶ 21.  The ability to provide a summary of the supporting documentation, where such materials are voluminous, however, is foreclosed by the Debtors' Proposed Order and

Questionnaires.  Debtors in some of the larger bankruptcies of recent years—which involved a

multiplicity of derivative claims—have all found Official Form 10, subject to minor

modifications, adequate for their purposes.  See, e.g., In re Mirant Corp., Case No. 03-

46590(DML) (Bankr. N.D.Tex; Order entered August 21, 2003, Docket No. 494); In re Calpine

Corp., Case No. 05-60200(BRL) (Bankr. S.D.N.Y.; Order entered April 26, 2006, Docket No.

1348); In re SemCrude, L.P., Case No. 08-11525(BLS) (Bankr. D.Del.; Order dated January 8,

2009, Docket No. 2746).  The relatively modest modifications to Official Form 10 have typically

included some or all of the following changes:  (i) adding a list of each debtor, its case number

and any trade or former names, (ii) providing space on the form for the claimant to correct

claimant's name and address, (iii) adding categories to the "Basis of Claims" section of the proof

of claim form, (iv) adding additional instructions as to filling out the proof of claim and (v)

including on the face of the proof of claim form the amount and priority of each creditor's claim

as and to the extent reflected on that debtor's schedules.

18.    In In re Enron Corp., Case No. 01-16034(AJG) ("Enron"), another chapter 11

case involving a significant number of claims arising out of derivatives trading and other

financial transactions, the debtor sought and obtained court approval for a customized proof of

claim form for employee claims—but not for derivative claims.  Even in that case, however,

although an employee claimant was asked to utilize the customer claim form, the claimant could

use the prepared form or Official Form 10, without the threat of having its claims disallowed.

Moreover, in Enron, derivative claimants filed proofs of claim conforming substantially to

Official Form 10, and as support simply attached the Master Agreement with Schedules, copies

of termination letters, statements of amounts owing and a schedule of the parties' transactions, as

applicable.  There is no reason why the same supporting documents should not be adequate here.

19.     As more fully discussed below, the Proposed POC with the obligation to fill-in

one or both of the Questionnaires, as applicable, and the requirement to electronically upload "all

supporting documentation or your claim will be disallowed," appears to be without precedent,

and should not be approved.

**The Proposed POC and the Proposed Form
of Order Contain Provisions Contrary to Law**

20.     Unlike in the Proposed POC, in the ordinary course of a bankruptcy case, once

filed, a proof of claim sets in motion certain procedures, presumptions and burdens of proof.  A

proof of claim, if it is executed and filed in accordance with the Federal Rules of Bankruptcy

Procedure, constitutes prima facie evidence of the validity and amount of the claim, Fed. R.

Bankr. P. 3001(f), and is deemed allowed unless a party in interest objects under 11 U.S.C.

§ 502(a).  In re St. Johnsbury Trucking Co., Inc., 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997),

aff'd, 221 B.R. 692 (S.D.N.Y. 1998), aff'd, 173 F.3d 846 (2d Cir. 1999).

21.     Any party objecting to the claim has the burden of putting forth evidence

sufficient to negate the prima facie validity of the claim by refuting one or more of the facts in

the filed claim.  Id.  If the objecting party meets these evidentiary requirements, then the burden

of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of

persuasion to establish the validity and amount of the claim by a preponderance of the evidence.

In re Lamica Corp., 65 B.R. 849, 854 (Bankr. S.D.N.Y. 1986).  If, however, the claimant fails to

allege facts in the proof of claim that are sufficient to support the claim, e.g., by failing to attach

sufficient documentation to comply with Bankruptcy Rule 3001(c), the claim is not

automatically disallowed; rather it is merely deprived of any prima facie validity which it could

otherwise have obtained.  In re Lundberg, No. 02-34542(LMW), 2008 WL 4829846, at *2

(Bankr. D. Conn. Oct. 27, 2008).  In order to reduce the amount of, reclassify or disallow the

claim in its entirety, the debtor or other party must file with the court and serve on the claimant a written objection, along with notice of a hearing.  See Bankruptcy Rule 3007.  The claimant is thereby provided with an opportunity to respond to the objection, with additional supporting documentation, if necessary.

22.     In short, the Proposed Order stands the proof of claim process on its head requiring the submission of information normally provided after a formal objection has been lodged by the Debtors, and the contested proceeding relating to the claim has commenced.

23.     Moreover, Debtors' Proposed Order and claims form here would eviscerate the procedural framework by permitting the sweeping and automatic disallowance of claims, apparently in the event of any missing documentary backup, and without need for the Debtors to file an objection and reply to claimant's opposing arguments before the Court.  Under the Debtors' proposal, the Debtors apparently could become the sole arbiter of whether a claimant had provided all documentation necessary to support a claim and the Proposed Order provides for no mechanism or procedure to challenge the Debtors' unilateral determination that a claimant had not complied.

24.     The offending paragraph in the Proposed Order states:

> ORDERED that pursuant to Bankruptcy Rule 2003(c)(2), any holder of a claim against the Debtors who is required, but fails to file a proof of such claim in accordance with the Bar Date Order on or before the Bar Date, specifically, including, filling out the Derivative Questionnaire or the Guarantee Questionnaire and uploading required information to the website http://www.lehman-claims.com, specifying the applicable Debtor and other requirements set forth herein, shall be **forever barred, estopped and enjoined** from asserting such claim against the Debtors (or filing a Proof of Claim with respect thereto), **and the Debtors and their property shall be forever discharged** from any and all indebtedness or liability with respect to such claim . . . ."

<u>See</u> Proposed Order at 7-8 (emphasis added).  The Proposed POC form submitted for approval

by the Debtors similarly requires creditors asserting claims based on either a Derivative Contract

or Guarantee to "**COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD**

**ALL SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

(capitalization and bold text in original).[4]

26.     The Debtors would thus have this Court enter an order giving the Debtor the

apparent authority to take the position that if a single spreadsheet, e-mail or even instant message

were not produced as part of a claimant's proof of claim or a question on a Questionnaire were

not answered to the Debtors' satisfaction, then "any holder of a claim . . . who is required, but

fails to file a proof of such claim in accordance with the Bar Date Order . . . <u>specifically</u>,

including, filling out the Derivative Questionnaire or the Guarantee Questionnaire  . . . shall be

**forever barred, estopped and enjoined** from asserting such claim against the Debtors (or filing

a Proof of Claim with respect thereto), **and the Debtors and their property shall be forever**

**discharged** from any and all indebtedness or liability with respect to such claim . . . ." <u>See</u>

Proposed Order at 7-8 (emphasis added).  This Court cannot countenance an order that so clearly

contravenes applicable bankruptcy practice and rules.

26.     The cases make clear that Bankruptcy Rule 3001 does not require claimants to

provide every single document in support of a claim in order to establish the <u>prima</u> <u>facie</u> validity

of the claim, on penalty of the claim's disallowance.  For example, in <u>In re Stoecker</u>, 143 B.R.

879 (N.D. Ill. 1992), <u>aff'd in part, vacated in part</u>, 5 F.3d 1022 (7th Cir. 1993), the claimant filed

---

[4]    Although the phrase "all supporting documentation" is not defined, one interpretation, based on the Local Civil
Rules of the United States District Court for the Southern District of New York, could be that the phrase "all
supporting documentation" includes all "documents," defined in the Federal Rule of Civil Procedure 34(a) as:
"documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound
recordings, images, and other data or data compilations—stored in any medium from which information can be
obtained either directly, or, if necessary, after translation by the responding party into a reasonably usable form."

its proof of claim against the estate asserting a secured claim in the form of judgment liens on

various estate assets. Id. at 881. The proof of claim contained a description of the claimant's

liens in some detail, although it failed to list the specific property, which was the subject of the

liens. Id. More importantly, the claimant failed to attach to the proof of claim the underlying

documents evidencing the loan, the memoranda of judgment, and the executions perfecting the

judgment liens as required by Bankruptcy Rule 3001. Id. The district court held that the failure

to attach documents to the proof of claim did not require the bankruptcy court to disallow claims

on that basis. Id. at 883.

27. The district court reasoned that "the proper procedure for the bankruptcy court is

not to disallow the claim if the claimant fails to strictly adhere to the rule; it should merely refuse

to consider the proof of claim *prima facie* evidence of the claim's validity and should give the

claimant an opportunity to amend or prove its claim." Id. The district court explained that

> Rule 3001 merely aids the parties in ascertaining bona fide claims
> and accuracy of claims, as well as the merits, perfection or
> nonperfection of secured claims. The purpose of the rule is to
> allow a creditor who attaches documents to his proof of claim to
> then refrain from presenting any other evidence because the
> documents establish sufficient evidence to sustain the claim.

Id. (citation omitted). After reviewing the creditor and debtor's respective burdens, the court

noted that the proper procedure is to object: "[B]ecause a claim is deemed allowed unless

objected to by a party in interest, 11 U.S.C. § 502(a), a bankruptcy court 'will determine the

validity of a lien *only* when a party in interest seeks such a determination *and* allowance or

disallowance of the claim.'" Id. (emphasis in original). The district court also observed that by

sua sponte rejecting the creditor's claim, the bankruptcy court failed to provide the claimant the

opportunity to move to amend its proof of claim, thereby affording it an opportunity to prove its

secured claim. Id. at 884. The district court explained that amendments to proofs of claim "are

freely permitted in the absence of contrary equitable considerations or prejudice to the opposing

party." Id.

28.     On appeal to the Seventh Circuit, Judge Richard Posner, "dispos[ing] quickly" of

any notion that the proof of claim should have been disallowed, affirmed the judgment of the

district court:

> [W]e can dispose quickly of the trustee's contention that the
> bankruptcy judge was right to disallow the proof of claim, without
> leave to amend, because compliance with Rule 3001 is
> "mandatory." All that the rule says, so far as bears on this case, is
> that the filing of a proof of claim with the required documentation
> is prima facie evidence that the claim is valid. If the
> documentation is missing, the creditor cannot rest on the proof of
> claim. **It does not follow that he is forever barred from
> establishing the claim. Nothing in the principles or
> practicalities of bankruptcy or in the language of any rule or
> statute justifies so disproportionate a sanction for a harmless
> error. Forfeitures of valuable claims, and other heavy
> sanctions, should be reserved for consequential or easily
> concealed wrongs.** A creditor should therefore be allowed to
> amend his incomplete proof of claim (what is often called an
> "informal proof of claim") to comply with the requirements of
> Rule 3001, provided that other creditors are not harmed by the
> belated completion of the filing.

In re Stoecker, 5 F.3d at 1027-28 (emphasis added) (citations omitted). Judge Posner in In re

Stoecker thus teaches that the punitive "sanction" sought by Debtors here, to "forever" bar

claimants' claims due to lack of strict compliance with their proposed proof of claim, is

improper.

29.     Since In re Stoecker, many other courts have held that the failure to attach

documents required by Rule 3001 and Official Form 10 is not, standing alone, a basis for

disallowance of an unsecured claim.[5] Courts subscribing to the predominant "Exclusive View,"

---

[5]     See, e.g., In re Kirkland, 379 B.R. 341, 344 (10th Cir. BAP 2007); In re Joslin, 344 B.R. 146, 150 (Bankr. D.
Kan. 2006) (majority view is that "while failure to attach supporting documentation to a proof of claim may not
comply with Fed. R. Bankr. P. 3001(c) and deprive the claim of its presumptive validity under Fed R. Bankr. P.

e.g., <u>In re Kirkland</u>, 379 B.R. at 344; <u>In re Irons</u>, 343 B.R. 32, 41 (Bankr. N.D.N.Y. 2006) (citing

<u>In re Dove-Nation</u>, 318 B.R. 147, 152 (8th Cir. BAP 2004)), have held that § 502(b) of the

Bankruptcy Code provides the exclusive basis for disallowance of claims.[6]  By contrast, a

minority of courts subscribing to the "Nonexclusive View" find the failure to attach documents

to be a valid ground for a claim objection.  <u>Id.</u>  Once an objection is lodged, according to the

Nonexclusive View, if the creditor fails to remedy the defect or otherwise prove its claim at a

hearing, the claim must be disallowed.  <u>Id.</u>  Under either "View," the Proposed Order would be

improper, since nonconformity with Rule 3001(c) is not a basis for disallowance under the

Exclusive View; and even under the minority Nonexclusive View, the claim objection process

must still be followed, with the creditor given an opportunity to be heard.  The Proposed Order

abrogates this right.

   30.  Accordingly, the apparent automatic disallowance provisions in the Proposed

Order and POC must be deleted or modified so as to expressly preserve the right of Derivative

---

3001(f), it is not a statutory basis for disallowance of the claim."); <u>In re Moreno</u>, 341 B.R. 813, 817 (Bankr. S.D. Fla. 2006) ("this Court agrees with the vast majority of courts which have held that a creditor's mere failure to fully comply with the documentary requirements in Rule 301(c) does not provide a basis for objecting to, or disallowing, a claim."); <u>In re Habiballa</u>, 337 B.R. 911, 916 (Bankr. E.D. Wis. 2006) ("Recognizing that Bankruptcy Code § 502 provided that a claim shall be allowed unless the objector shows that one of the objections applies, and that Bankruptcy Rule 3001 is an evidentiary rule that cannot supersede the substantive provisions of the Code, this Court will require the Debtor to come forward with some evidence to contradict the claim summary, even in the absence of a creditor's compliance with an information request."); <u>In re Mazzoni</u>, 318 B.R. 576, 578 (Bankr. D. Kan. 2004) (failure to attach writing required by Bankruptcy Rule 3001(c) does not automatically invalidate the claim but does deprive it of <u>prima facie</u> validity under Bankruptcy Rule 3001(f)); <u>In re Jorczak</u>, 314 B.R. 474, 481 (Bankr. D. Conn. 2004) ("[i]f . . . claimant fails to allege facts in the proof of claim that are sufficient to support the claim, <u>e.g.</u>, by failing to attach sufficient documentation to comply with Fed. R. Bankr. P. 3001(c), the claim is not automatically disallowed; rather, it is merely deprived of any prima facie validity which it could otherwise have obtained."); <u>In re Cluff</u>, 313 B.R. 323, 331 (Bankr. D. Utah 2004) ("Bankruptcy Rule 3001(c) does not create an independent ground to disallow claims, (2) failure to comply with the documentation requirements in Bankruptcy Rule 3001(c) is an evidentiary defect that only deprives a claim of its prima facie validity; and (3) failure to comply with Bankruptcy Rule 3001(c) merely results in the claimant having the burden of proof if an objection to the claim is filed, but that objection must meet or surpass the evidence set forth in the claim.").

[6]  Section 502(b) recognizes an objection based on lack of supporting documentation, but only when the absence of documentation would render a claim unenforceable under non-bankruptcy law.  <u>In re Kirkland</u>, 379 B.R. at 344.

Contract and Guarantee Claimholders, who have acted in good faith to provide supporting

documentation for their claims, to supplement or amend their proofs of claim in the future.

**The Proposed Order, By Abrogating
the Objection Procedure of Bankruptcy
Rule 3007, Violates Due Process**

31.    As discussed <u>supra</u>, under the ordinary Bankruptcy Code regime, an objecting

party has the initial burden of controverting a proof of claim because the proof of claim is <u>prima

facie</u> valid.  Fed. R. Bankr. P. 3001(f).  The procedure for filing an objection to a claim in a

bankruptcy case is governed by Fed. R. Bankr. P. 3007.  <u>In re SRC Holding Corp.</u>, No. 02-

40284, 06-3962 DWFAJB, 02-40285, 02-40286, 2007 WL 1464385, at *2 (D. Minn. May 15,

2007); <u>In re Metz</u>, 165 B.R. 769, 771 n.4 (Bankr. E.D.N.Y. 1994).  Rule 3007(a) requires that an

objection be in writing and filed with the court.  Fed. R. Bankr. P. 3007(a).  An evidentiary

hearing on the objection is held on notice to the debtor, the trustee, and claimant.  <u>Id.</u>  A copy of

the objection with notice must be mailed to these persons at least thirty days before the hearing,

unless the court reduces such time.  <u>Id.</u>; Fed. R. Bankr. P. 9006(c).  Courts have held that due

process is satisfied if the objection and notice of hearing are mailed to the address stated on the

proof of claim.  <u>In re Hensley</u>, 356 B.R. 68, 77 (Bankr. D. Kan. 2006).

32.    The Proposed Order is violative of due process because on its face it permits the

disallowance of a creditor's claim based solely on the submission of a nonconforming proof of

claim, without any of the procedural safeguards inherent in Bankruptcy Rule 3007.  That is

improper.  As the Ninth Circuit held <u>In re Brawders</u>, 503 F.3d 856, 871 (9th Cir. 2007):

> If the process contemplated by the applicable rules is not followed,
> a creditor's rights can be affected only if the requirements of due
> process are otherwise met.  *See GMAC Mortgage Corp. v.
> Salisbury (In re Loloee),* 241 B.R. 655, 662 (9th Cir. BAP 1999)
> (the greater the deviation from the process set out in the rules, "the
> greater the quality and amount of notice needed in order to comply
> with due process").

-15-

As we have held in an analogous Chapter 11 case involving claim objections under Rule 3007:

Neither the statute nor the rules say, "oh, by the way, we [plan proponents] can also sandbag you by sneaking an objection into a reorganization plan and hoping you do not realize that we can use this device to circumvent the claim objection procedure mandated by the rules." That is not the law, and if it were the law, it would be a material disservice to public confidence in the integrity of the bankruptcy system.

. . . by holding that the essence of Rule 3007 must be complied with, we are holding that *considerations of due process mandate great caution and require that the creditor receive specific notice (not buried in a disclosure statement or plan provision) of at least the quality of specificity, and be afforded the same opportunity to litigate one-on-one, as would be provided with a straightforward claim objection under Rule 3007.* (emphasis in original).

33.     The Proposed Order and POC, however, provide Derivative Contract and Guarantee Claimholders none of the protections the Ninth Circuit held critical to the claim objection process mandated by the Bankruptcy Rules. As written, the Proposed Order and POC violate due process and the Motion to approve them must be denied.

**The Massive Amount of Information Required By The Proposed POC Is Prohibitively Burdensome And Is An Improper Attempt To Obtain Unilateral Pre-Complaint Discovery**

34.     While "[d]ebtors are entitled to adequate documentation regarding . . . claims, . . . creditors should not be burdened with providing unnecessary documentation." In re Sandifer, 318 B.R. 609, 611 (Bankr. M.D. Fla. 2004). Indeed, "[t]he procedure for claims allowance or disallowance is designed to be speedy and inexpensive and Section 502(a) deems claims allowed." In re Heath, 331 B.R. 424, 435 (9th Cir. BAP 2005). Yet, for claims based on Derivative Contracts, the Debtors ostensibly propound a full-blown document request normally found in a litigation. The Debtors admit as much in the Motion: "To substantiate such claims [under Derivative Contracts] counterparties are required to submit details of each of the

transactions entered into with the Debtors which could amount to **massive amounts of data** on printed pages." <u>See</u> Motion ¶ 21 (emphasis added).  The fact that Debtors seek to have Derivative Contract and Guarantee Claimholders upload electronically this admittedly massive amount of data to a website, fails to lessen the extraordinary burden it imposes, both in terms of manpower and cost.  Each Derivative Contract or Guarantee Claimant must still identify, obtain and then pull together the documentation and data required by the relevant Questionnaire and transform it into the format required.  Of course, the potential technological and logistical problems associated with counterparties uploading this mass of information raises additional nightmares.

35.      Some context is instructive to demonstrate the breadth of the information sought just in section 4.a. of the Derivative Questionnaire.  Section 4.a. requests not only copies of "all . . . confirmations . . . and other documents related to the transactions"—which in itself could involve thousands of confirmations for just one counterparty—but also, "[A]ll . . . other documents related to the transactions."  The "all . . . other documents related to the transactions" literally could be construed to include every writing, including such items as every e-mail communication, every facsimile, every instant message and, as transactions can be agreed upon orally, every transcript of every taped telephone conversation, for those claimants who have taped lines.  For every Master Agreement into which the parties enter, there could be hundreds, if not thousands, of separate derivative transactions, each of which will have separate confirmations, emails and/or other communications setting forth the transactions' terms.  Further, certain derivative transactions were entered into electronically through electronic swaps platforms, and, therefore, some claimants may not even possess confirmations of such transactions and will need to request that information from the electronic platforms.  In addition,

derivative counterparties often will have entered into a margin relationship with one or more of the Debtors, pursuant to which the parties may have exchanged agreements, as well as multiple communications daily concerning, among other things, the posting of additional collateral and/or the return of any surplus collateral. Further, the termination of derivative transactions as a result of the Debtors' default under the Master Agreement resulted in a multiplicity of additional documents and/or communications relating to the valuation of the terminated transactions. Such documents and communications would not normally be required to be produced to a debtor prior to discovery in a contested matter.

36.    While it is possible that some of the information requested by Debtors may, at some point, be provided by certain claimants to substantiate their respective claims, the production of such information at this early stage should not be a precondition to filing a valid proof of claim. The amount of attorney, paraprofessional, and claimant hours it would take for a claimant to identify every document and communication that relates to every transaction under each Master Agreement, would be prohibitive, if not impossible, especially in light of the exceedingly tight time frame provided for in the Proposed Order. It cannot be that every such document or communication rises to the level of constituting a "supporting document" essential to the Debtors' ability to determine whether to object to a claim. Indeed, if the Debtors elect not to object to certain claims, much of the information requested in the Questionnaires may **never** be necessary.[7] This may even be more likely where, in this case, the Debtors have already begun discussions with certain claimholders to reconcile the amounts owing between them and the Debtors.

---

[7]    The proposed procedures apparently presume that each claim is likely objectionable, adumbrating a potentially litigious claims process.

37.     The requests set forth in Sections 4.e. through 4.h. of the Derivatives Questionnaire are in the nature of pre-complaint discovery requests.  These requests are clearly improper as "the Rules do not contemplate . . . using the documentary requirements for proofs of claim as a method of discovery . . . ."  In re Burkett, 329 B.R. 820, 829 (Bankr. S.D. Ohio 2005). Given the added fact that Debtors are certainly not volunteering to provide similar levels of detailed information to each counterparty, these requests are particularly troubling.

38.     The requests set forth in the Guarantee Questionnaire are no less onerous and burdensome.  In addition to identifying the Debtor that is such Claimant's guarantor, and having to provide the relevant guarantee agreements and related information, section 3 of the Questionnaire requires Claimant "to provide all documentation evidencing your claim and supporting the calculation of the claim amount."  Compounding the problem is the fact that the Proposed Order requires that holders of claims against a Debtor based on a Guarantee of the obligations of another entity under a Derivative Contract must complete **both** the Derivative Contract **and** the Guarantee Questionnaire.  See Proposed Order at 7.

39.     Finally, the requirement in the Proposed Order that each proof of claim "must be written in the English language" (Proposed Order at 5) raises additional concerns and imposes burdens on those Derivative Contract and Guarantee Claimholders located in non-English speaking countries who may not conduct all of their business transactions in the English language.  While Derivative Claimants recognize that they are expected to complete proofs of claim that conform substantially to the Official Form in the English language, they contend that that expectation should not extend to every supporting document they submit, whether in the form of an e-mail, facsimile, instant message, or other written communication, or a taped telephone conversation, if any.  To require such documents and records to be translated into the

-19-

English language would be prohibitively expensive, burdensome and time-consuming. The Derivative Claimants maintain that the Motion should not be granted. However, should the Court approve an order requiring Derivative Contract and Guarantee Claimholders to provide some supporting documentation, Derivative Claimants request that such order provide that the supporting documents need not be translated into the English language.

**The Proposed Bar Date Process Provides
Insufficient Time To Enable Holders of
Derivative Contract and Guarantee Claims
To Satisfy The Proposed POC Requirements**

40.     The Motion seeks to establish August 24, 2009 as the bar date by which proofs of claim must be filed. On the assumption that the Court will grant and enter the Proposed Order, and the Debtors' claims and notice agent will be able to complete the mailing of the approved Bar Date notice and proof of claim form by June 24, 2009, the Debtors maintain that creditors should have at least sixty (60) days' notice of the Bar Date.[8]

41.     Bankruptcy Rule 2002(a)(7) requires that all creditors and other parties-in-interest receive at least 20 days' notice of a bar date. As the Court is aware, it is typical, however, in large and complex cases utilizing Official Form 10 or proof of claim forms substantially in the form of Official Form 10, to provide a substantially longer bar date period than the Bankruptcy Rules set out as a minimum. This is illustrated by the bar dates established in other chapter 11 cases which also involved significant numbers of derivative claims: In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y.) (Docket No. 5518) (court approved a bar date period of 62 days); In re Mirant Corporation, Case No. 03-46590 (DML) (Bankr. N.D. Tex.) (Docket No. 494) (court approved a bar date period of 111 days); and In re Calpine Corporation, Case No. 05-

---

[8]     Of course the actual time frame within which claimants have to prepare the proof of claim and, in the case of Derivative Contract and Guarantee Claimholders, assemble the requisite supporting documentation for submission, and timely return the hard copy of the proof of claim, is actually somewhat less given the time for travel through the United States and international postal systems.

60200 (BRL) (Bankr. S.D.N.Y.) (Docket No. 1348) (court approved a bar date period of at least 35 but not more than 96 days).[9]

42.    As reflected above, although the Debtors' proposed bar date process imposes substantially more onerous and time consuming burdens on Derivative Contract and Guarantee Claimholders than it does on holders of other types of claims against the Debtors' estates, the Debtors have not seen fit to provide Derivative Contract and Guarantee Claimholders with a substantially longer period of time within which to comply.  While it is questionable whether a 60-day bar date period is adequate for claimants other than Derivative Contract and Guarantee Claimholders given how large and complex the Debtors' business affairs were, there is absolutely no question that for Derivative Contract and Guarantee Claimholders the 60-day time frame is totally inadequate and does not provide even a fighting chance to timely meet the Proposed POC requirements.

43.    Should the Court approve an order that requires Derivative Contract and Guarantee Claimholders to satisfy the Proposed POC requirements, which we contend the Court should not, Derivative Claimants request that any such order enlarge the amount of time for compliance to not less than 120 days, especially since the process contemplated by the Debtors seeks to have claims automatically disallowed and forever barred if "all supporting documentation"—whatever that term is determined to actually mean—is not timely submitted.

44.    In addition, as the bar date approaches, it is likely, based purely on human nature, that many claimants will seek to fill-in the applicable Questionnaire and upload their supporting documentation onto the website during the last days leading up to the bar date.  Given the

---

[9]    In the recent case of In re SemCrude, L.P., Case No. 08-11525(BLS) (Bankr. D.Del.), the court approved a bar date period of 34 days for completing a proof of claim conforming substantially to Official Form 10.  No questionnaire was required.

volume of documents this will likely entail, a server "crash" could occur resulting in some

Derivative Contract and Guarantee Claimholders being unable to complete their intended timely

electronic submissions.  Substantially elongating the time period within which Derivative

Contract and Guarantee Claimholders have to electronically file what they need to will alleviate

at least some, and hopefully much, of the last-minute stress to the computer system.  Derivative

Claimants also submit that, should the Court approve an order that requires Derivative Contract

and Guarantee Claimholders to satisfy the Proposed POC requirements, that order should

provide for a mechanism whereby creditors will obtain an electronic receipt or confirmation

proving the timeliness of their completed submissions or, in a worst case scenario, where such

claimants tried, but failed to complete their submissions because of system driven problems,

proving their attempt to make timely submissions.

**The Phrase "Legally Entitled" is**
**Ambiguous and Should be Deleted**

45.     The Proposed Order provides that "any claims asserted, other than claims asserted

by parties that are legally entitled and authorized to assert such claim, shall be disallowed."  See

Proposed Order at 9.  The phrase "legally entitled" is not used either in Bankruptcy Rule 3001 or

in Official Form 10.  Bankruptcy Rule 3001(b), which governs who may execute a proof of

claim states that "[a] proof of claim shall be executed by the creditor or the creditor's authorized

agent, except as provided in Rules 3004 and 3005.  The signature block in Official Form 10

refers only to execution by "the creditor or other person authorized to file this claim."  The

phrase "legally entitled" is ambiguous and should be deleted from any order approving a bar date

for the Debtors and wherever else it is used in the bar date related materials.[10]

---

[10]     We understand from Debtors' counsel that since filing the Motion the Debtors may have determined to delete
the "legally entitled" text.

## CONCLUSION

46.    For all of the reasons set forth above, Derivative Claimants respectfully request

that this Court enter an order denying the Motion, and granting such other and further relief as

may be just and proper.

Dated: New York, New York
          June 12, 2009

                                        **STROOCK & STROOCK & LAVAN LLP**


                                        By: /s/ Claude G. Szyfer
                                                Claude G. Szyfer
                                                Jeremy S. Rosof
                                                Francis C. Healy
                                        180 Maiden Lane
                                        New York, New York 10038-4982
                                        Tel: (212) 806-5400
                                        Fax: (212) 806-6006

                                        *Attorneys for Derivative Claimants*