**BINGHAM McCUTCHEN LLP**
Jeffrey S. Sabin
Joshua Dorchak
399 Park Avenue
New York, NY 10022
(212) 705-7000

Attorneys for UBS AG
and Affiliates

Hearing Date:  June 17, 2009, 2:00 p.m.
Objection Deadline:  June 12, 2009, 12:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                                                :
In re                                                           :        Chapter 11
                                                                :
LEHMAN BROTHERS HOLDINGS INC., *et al.,*      :        Case No. 08-13555 (JMP)
                                                                :
                                      Debtors.        :        (Jointly Administered)
                                                                :
----------------------------------------------------------------x

### OBJECTION OF UBS AG TO MOTION OF THE DEBTORS, PURSUANT TO SECTION 502(b)(9) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3003(c)(3), FOR ESTABLISHMENT OF THE DEADLINE FOR FILING PROOFS OF CLAIM, APPROVAL OF THE FORM AND MANNER OF NOTICE THEREOF AND <u>APPROVAL OF THE PROOF OF CLAIM FORM</u>

UBS AG, on behalf of itself and its affiliates, including, without limitation, UBS

Securities Inc., UBS Limited and UBS Financial Services Inc. and certain of their respective

clients (collectively, the "<u>Claimants</u>"), by their attorneys, Bingham McCutchen LLP, submit this

objection to the Motion of the Debtors, Pursuant to Section 502(b)(9) of the Bankruptcy Code

and the Bankruptcy Rule 3003(c)(3), for Establishment of the Deadline for Filing Proofs of

Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim

Form, filed May 26, 2009 (the "<u>Motion</u>") [Dkt. No. 3654].  In support of this objection, the

Claimants state as follows:

A/73063731.1

## PRELIMINARY STATEMENT

1.      The Claimants are substantial creditors of several Debtors in these proceedings, including Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Special Financing Inc. ("LBSF"), and hold claims arising from, among other things, derivatives contracts ("Derivatives Claims") and guaranties ("Guaranty Claims").

2.      The Claimants do not object to the Bar Date or notice procedures proposed in the Motion.  The Claimants do object to certain mandatory procedures and restrictions proposed in the Motion in connection with the Proof of Claim Form -- especially, but not exclusively, with respect to Derivatives Claims and Guaranty Claims -- as being (i) beyond the applicable requirements of the Bankruptcy Code and Rules, as well as the contracts between the parties, (ii) unduly burdensome and in some cases impracticable, and (iii) unnecessary.

3.      The Motion should be denied to the extent that the procedures it proposes are improper in these ways.

## ARGUMENT

4.      It is well settled that the purpose of a proof of claim is to put the debtor on notice of the claim, not to prove up the claim in every detail.  Rather, a proper proof of claim is prima facie valid, subject to challenge when and if the debtor objects to the claim.  By the Motion, the Debtors seek to compel each claimant holding a Derivatives Claim or Guaranty Claim of any amount forever to forfeit such claim unless the claimant files a proof of claim that includes information far beyond what is contemplated in the Bankruptcy Code or Rules or what may have been contemplated by the parties in the underlying contracts.  It is unreasonable, unfair, and unnecessary to require claimants to incur the time and expense to comply with these proposed

requirements before the Debtors have even decided whether to object to the claim -- especially where the claimant's costs of compliance may exceed the anticipated recovery on the claim.

5.      To the extent the proposed procedures are impracticable, they must be corrected. To the extent the proposed procedures are redundant, they should be simplified. To the extent the proposed procedures are unclear, they must be clarified.

## I.      The Supplemental Procedures Contradict the Bankruptcy Code and Rules.

6.      The purpose of Rule 3001 is merely to "provid[e] objecting parties with sufficient information to evaluate the nature of the claim." *In re Today's Destiny, Inc.*, No. 05-90080, 2008 WL 5479109, at *5 (Bankr. S.D. Tex. Nov. 26, 2008). This purpose is accomplished by the Official Form, which "is a single page document requiring **little detail**." *Id.*, 2008 WL 5479109, at *3 (emphasis added); *see In re Andrews*, 394 B.R. 384, 388-89 (Bankr. E.D.N.C. 2008) (Official Form 10 "provides that limited information must be filed . . . including the basis for the claim, the date the debt is incurred, the secured or unsecured status of the claim, and the amount of the claim").

7.      Moreover, even in the case of contracts to be attached to a proof of claim by Rule 3001, "[s]upporting documents are not absolutely required. If the supporting documents are voluminous, the creditor can attach a summary of the documents." *Today's Destiny*, 2008 WL 5479109, at *3. A claimant need not submit an unduly burdensome volume of information. *See, e.g.*, *In re Armstrong*, 320 B.R. 97, 105 (Bankr. N.D. Tex. 2005) ("requiring each credit card creditor to submit hundreds of pages of supporting documentation with its proof of claim would be unduly burdensome . . . . Because of the voluminous nature of the supporting documentation involved with credit card agreements and the individual transaction records evidencing the debt, Official Form 10 allows for a summary to be attached to the claim").

8.    Rule 3001(f) provides that a proof of claim "executed and filed **in accordance with these rules** shall constitute **prima facie evidence of the validity** and amount of the claim" (emphasis added).  As long as a proof of claim "conforms substantially" to the Official Form, the claim enjoys the presumption of validity.  *See, e.g.*, *In re Bertelt*, 206 B.R. 587, 594 (Bankr. M.D. Fla. 1996).  By requesting that this Court subject Derivatives and Guaranty Claims to what is effectively summary disallowance if they do not provide more information than Rule 3001(a) requires, the Debtors effectively attempt to strike Rule 3001(f).

9.    Put another way, the Debtors seek to convert the claim filing process into a litigation, with one-sided interrogatories and document requests built in, where there is not yet a contested matter.  "However, the Rules do not contemplate trustees using the documentary requirements for proofs of claim as a method of discovery for adversary proceedings.  Instead, the Rules have structured a simplified claims allowance system 'without all the trappings of normal civil litigation' in order to make the process efficient." *In re Burkett,* 329 B.R. 820, 829 n.3 (Bankr. S.D. Ohio 2005) (quoting *In re Shank,* 315 B.R. 799, 814 (Bankr. N.D. Ga. 2004)).  The Debtors' proposal is improper and is also premature:  in many cases, it may be entirely unnecessary.  The Debtors -- which have a team, including experts, dedicated to derivatives issues -- presumably have at least an informed estimate of what they owe or are owed on the derivatives contracts that they entered into.  Where a given claimant's claim is consistent with the Debtors' records and calculations, it would be in the Debtors' and their creditors' best interests to allow such a claim, or at least to subject it to minimal review.  Where there is a material difference of opinion, the Debtors are free to object to the claim, with discovery to follow pursuant to the applicable Rules.

10.     There is no question that the Debtors' derivatives transactions are an important

aspect of these proceedings or that derivatives contracts can be complex.  But the Debtors cite no

authority for the theory that Rule 3001 does not apply to important or complex claims.  In fact,

the more significant the claim, the more this Court should ensure that "[t]he validity and legality

of claims generally is determined by applicable non-bankruptcy law" -- and not as a purported

matter of bankruptcy procedure.  *In re WorldCom, Inc.,* 382 B.R. 610, 620 (Bankr. S.D.N.Y.

2008) (citing *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,* 549 U.S. 443 (2007)).

11.     Moreover, even if Rule 3001 did require everything that the Debtors demand in

the Motion, the only penalty for noncompliance would be forfeiture of prima facie validity of the

claim.  *E.g., In re Plourde,* 397 B.R. 207, 218 (Bankr. D.N.H. 2008).  The penalty sought by the

Debtors, forfeiture of the entire claim, contradicts the Bankruptcy Code.  "Neither Rule 3001,

nor § 502 of the Bankruptcy Code, provides that a proof of claim that does not comply with the

provisions of Rule 3001 be disallowed due to such noncompliance."  *Plourde,* 397 B.R. at 218;

*see, e.g., In re Kirkland,* 379 B.R. 341, 343-44 (10th Cir. BAP 2007) (Section 502(b) "does not

list among the grounds for disallowance the proof of claim's failure to adhere to the requirements

of . . . Rule 3001.") (collecting cases).

12.     The Debtors' proposed procedures concerning Derivatives Contracts (and

Guaranty Claims based on Derivatives Contracts) as defined in the Motion (¶¶ 21-25) (the

"Supplemental Procedures") exceed the requirements of Rule 3001 and in any event are

inherently unduly burdensome with respect to the scope and degree of detail for documentation,

as follows:

    a.     Under paragraphs 4(a) and 4(d) of the Derivative Questionnaire, the collecting
       and providing of the confirmations and "individual trade level detail" that the
       Debtors demand would unduly burden large counterparties such as the Claimants,

which engaged in more than 15,000 underlying trades, especially since the confirmations should be in the Debtors' possession.

b.    Under paragraph 4(d) of the Derivative Questionnaire, the requirement that claimants produce the "individual trade level detail" in Excel format could unduly burden large counterparties with multiple legacy systems -- it is difficult to convert the data to a single unified format. This requirement may also unduly burden small counterparties that do not have the necessary software.

c.    Under paragraph 4(e) of the Derivative Questionnaire, the requirement that claimants provide a "narrative description of the methodology used to determine the valuation of transactions, including how quotations, if any, were utilized and all other inputs, assumptions, values and applicable parameters" under "Loss Methodology under ISDA Master Agreements," "Close-Out Amount Methodology under ISDA Master Agreements," "Other Methodology under ISDA Master Agreements" and "Non-ISDA Master Agreements," would unduly burden large dealers (which have multiple, independent systems) and small counterparties (which rely on third-party black box systems and will not be able to provide the detail).

d.    Under paragraph 4(g) of the Derivative Questionnaire, the requirement that claimants provide historical data on collateral postings back to the beginning of time is unreasonable and unnecessary on its face. The value of the collateral at the time of close-out is the only value that matters, and thus the only value that the claimants should be required to provide.[1]

13.    Furthermore, the Supplemental Procedures are inherently unduly burdensome and

unfair in light of certain claimants' circumstances, as follows:

a.    The Supplemental Procedures are not justified where the claim being asserted is not substantial. In this regard, the Claimants include brokers with retail customers who hold *de minimis* positions (e.g., $5,000) in securities guarantied by LBHI. A claimant should not be forced to abandon a claim because the mere filing of the proof of claim would cost more than the expected recovery. Likewise, the Debtors should not wish to incur greater administrative expenses in dealing with a claim than the likely value of distributions on such claim if allowed. Accordingly, at a minimum, the Court should order that the Supplemental Procedures are waived as to claims in less than a certain threshold amount -- $25,000 would appear to be reasonable.

b.    Some claimants -- again, including retail investors with Guaranty Claims based on securities issued by Lehman entities abroad -- may not have scanning or other IT capacity and indeed may not have access to the Internet or email access. These

---

[1]    Debtors' counsel has indicated that the Debtors may be willing to modify this requirement. The Claimants object on this point as a matter of caution, in the absence of a definitive resolution.

claimants cannot comply with the Supplemental Procedures.  Accordingly, at a minimum, the Court should order that claimants that certify their inability to comply with the Supplemental Procedures electronically may submit the required information in paper format.

c.      The requirement that claimants satisfy the Supplemental Procedures specifically by uploading the required documents to a website is particularly burdensome for the Claimants, which engaged in more than 15,000 trades.  The Claimants could provide exactly the same documents in electronic form at considerably less difficulty if they could provide the Debtors with a CD or DVD.  Accordingly, at a minimum, any Bar Date Order should clarify that claimants can submit the required documentation for Derivatives and Guaranty Claims on CD or DVD.[2]

d.      Confirms for certain trades, such as those confirmed via DTCC's Deriv/SERV or similar systems, exist only in electronic form, and cannot be converted to pdfs so as to be uploaded to the website, as the Debtors propose.  Similarly, claimants should not be required to provide trade level detail for transactions where confirmed trade data is held in a common repository, such as DTCC's Data Warehouse and similar systems, because all relevant trade level detail is available in the relevant data warehouse, to which the Debtors are believed to have access.

## II.      **The Supplemental Procedures Contradict the Underlying Contracts.**

14.      In addition to contradicting the Bankruptcy Code and Rules, the Supplemental Procedures contradict the contracts on which the claims are based.  Especially at the proof of claim stage, the Debtors should not be permitted to demand from claimants -- again, on penalty of forever forfeiting their claims -- support for the claims that the contracts do not require.

15.      The contracts underlying Derivative (and Derivative Guaranty) Claims are, generally speaking, the 1992 and 2002 versions of the ISDA Master Agreement (the "1992 ISDA" and the "2002 ISDA," respectively).  The 1992 ISDA requires the following as proof of damages, regardless of whether the "Market Quotation" or "Loss" method of damage calculation applies:

> On or as soon as reasonably practicable following the [termination of the contract], [a party] will make the calculations on its part, if any, contemplated by Section 6(e) and will provide to the other

---

[2]   Debtors' counsel has indicated that the Debtors might eventually consider alternative electronic formats.  The Claimants object on this point as a matter of caution, in the absence of a definitive resolution.

> party a statement ... showing in reasonable detail, such calculations (including relevant quotations and specifying any amount payable under Section 6(e)) . . . .

1992 ISDA § 6(d)(i).  The 2002 ISDA requires the following as proof of damages with regard to its "Close Out Amount" damages calculation:

> On or as soon as reasonably practicable following the [termination of the contract], [a party] will make the calculations on its part, if any, contemplated by Section 6(e) and will provide to the other party a statement ... showing in reasonable detail, such calculations (including any quotations, market data or information from internal sources used in making such calculations) specifying . . . any amount payable under Section 6(e) . . . .

2002 ISDA § 6(d)(i).  In each case, the calculations referenced in Section 6(e) are the simple arithmetical calculations performed by taking the termination value of the contract and adding in or subtracting unpaid amounts (plus accrued interest) due and owing.  1992 ISDA § 6(e); 2002 ISDA § 6(e).

16.    To the extent the Claimants have already provided the Debtors with the contractually required information, it is redundant to require them to provide it again.  Moreover, the Debtors have demanded much broader and more detailed information and documentation than the 1992 and 2002 ISDAs require, as follows:

a.    Under paragraph 4(d) of the Derivative Questionnaire, the Debtors demand "individual trade level detail."  Again, in the case of the Claimants, this extends to more than 15,000 trades.

b.    Under paragraph 4(e) of the Derivative Questionnaire, the Debtors demand market-maker name, date of request, follow-up data with respect to "Market Quotation Methodology."  This is not required by the contracts, which merely require the quotation itself to be given.

c.    Under paragraph 4(e) of the Derivative Questionnaire, the Debtors demand methodology information and inputs used in determining "Loss," and "Close-Out Amount," including a "narrative description of the methodology used to determine the valuations of transactions, including how quotations, if any, were used and all other inputs, assumptions, values and applicable parameters."  Such a description is not required by the contracts and, given the complexities of

derivatives valuation and derivative valuation systems, would be burdensome. Additionally, only in the case of "Close Out Amount" is there any requirement to provide quotations, market data or information from internal sources used in making such calculations.

d.   Under paragraph 4(e) of the Derivative Questionnaire, the Debtors demand "documentation from market makers and other person concerning the transactions." This ignores the express language of the "Loss" definition, which states that "[a] party may (**but need not**) determine its Loss by reference to quotations of relevant rates or prices from one or more leading dealers in the relevant markets." 1992 ISDA § 14, Definition of "Loss" (emphasis added).

e.   Under the "Loss Methodology," "Close-Out Amount Methodology," "Other Methodology" and Under "Non-ISDA Master Agreements" sections of paragraph 4(e) of the Derivative Questionnaire, the Debtors demand that the claimants make a determination that they interpreted or deviated from the contract. This is a complex question, on which reasonable minds could differ, and should be raised, if at all, in the context of a contested matter and submitted to the Court, whose province it is to determine whether a contract has been interpreted correctly.

f.   Paragraph 4(f) of the Derivative Questionnaire requires that claimants "specify any unpaid amounts and interest accrued thereon" and "provide supporting documentation of such unpaid amounts." None of this supporting documentation is required by either the 1992 or 2002 ISDA.

17.   The Claimants never agreed to provide this additional information, for good reason. Again, the trade-specific information would unduly burden both large dealers (which have multiple, independent systems) and may be impossible for small counterparties (which rely on third-party black box systems and will not be able to provide the detail). Moreover, the detailed valuation information sought by the Debtors is inherently disputable: treatises have been written on the subject of derivatives valuation and the proper use of data from underlying cash markets. That is why the 1992 and 2002 ISDAs do not require such information in detail, but rather, require only a good faith determination, which can be gauged by a counterparty without a microscopic examination of backup documentation.

18.   Likewise, the Debtors never bargained for any right to this additional information. Thus, the Debtors arguably have no right to this information at all. But in any event, the Debtors

should not be able to impose these extra-contractual demands on claimants at the threshold stage of the claims process. The Debtors are increasing the Claimants' collection costs beyond what the contract requires, even though the Claimants' recovery will be a mere portion of what the contract requires. That is not fair.

### III.    Information Provided Pursuant to the Supplemental Procedures Is Confidential.

19.    The Trade-Level Detail and Valuation Methodology demanded by the Debtors pursuant to the Supplemental Procedures includes the Claimants' confidential or proprietary information, as well as evidence of the Claimants' trading or investment strategies. Accordingly, any order requiring the Claimants to provide information pursuant to the Supplemental Procedures should direct that such information be held in confidence by the Debtors and not disclosed, absent a motion for disclosure duly made and granted by this Court.

### IV.    The Debtors Should Have the Discretion to Waive the Supplemental Procedures.

20.    The Claimants are engaged in extensive negotiations with the Debtors concerning their Derivatives and Guaranty Claims, and have provided (and will continue to provide) support for those claims. Because the Debtors are already in possession, or are in the process of obtaining, the kind of documentation that the Supplemental Procedures would require, including, without limitation, trade confirmations, the Claimants should not be forced to go back to their records and provide the documentation yet again, in a different form. Indeed, the Debtors may agree that compliance with the Supplemental Procedures is unnecessary in such circumstances. Accordingly, since the Debtors' proposed order allows for no exceptions to the Supplemental Procedures, any order approving the Motion should, at a minimum, include a provision giving the Debtors the discretion to waive compliance with the Supplemental Procedures for a given claimant or claim.

## V.    The Proposed Procedures Are Unduly Burdensome in Other Respects.

21.    The procedures proposed by the Debtors are unduly restrictive or burdensome as

to all claims and claimants in the following respects:

a.    The Debtors' demand that a proof of claim be nullified if it is not filed directly by the legal holder of the claim (Motion ¶ 19) is unduly burdensome and unnecessary. This demand ignores not only common practice, efficiency and convenience, such as when an indenture trustee files a claim on behalf of bondholders, but also a claimant's right to delegate the claim submission process to an authorized agent for any reason whatsoever. It is possible that where securityholders are obligated to file a claim (because their claims are guaranteed or are somehow considered derivatives, or for some other reason), the relevant indenture trustee is entitled, and may indeed be the only person permitted, to file the claim(s). Accordingly, any order on the claims procedures should expressly permit a proof of claim to be filed by the legal holder of the claim or by any person duly authorized to do so on its behalf.[3]

b.    Certain claimants, including certain customers of one of the Claimants, do not read English, especially legalese English, well enough to understand the proposed procedures. Lehman had worldwide operations, including selling debt instruments to persons worldwide. Accordingly, the Bar Date Notice and the Supplemental Procedures should be available at a minimum on the Internet in the major languages of Europe and Asia.

## VI.    The Proposed Procedures Are Unclear in Many Respects.

22.    The proposed procedures include several demands that are in need of clarification.

A claimant should not run the risk of facing disallowance solely because the claimant did not

understand precisely what information the Debtors intended to demand. At a minimum, any Bar

Date Order should clarify the following points:

a.    It is unclear whether the definition of "Derivatives Contract," which on its face is restricted to contractual obligations keyed to "underlying assets or indices of asset values," is meant to include other types of derivatives contracts -- e.g., weather derivatives or catastrophe swaps -- or that this definition is intended to exclude repurchase agreements or stock loan agreements. For clarity, the definition

---

[3]    Debtors' counsel has indicated that the Debtors may be willing to relax this restriction. The Claimants object on this point as a matter of caution, in the absence of a definitive resolution.

should be equated with the definition of "swap agreement" in section 101(53B) of the Bankruptcy Code.[4]

b.   It is unclear whether the definition of "Lehman Securities" is meant to include structured instruments -- e.g., Hong Kong minibonds, US retail structured notes -- that are securities but also, due to an embedded derivative, could be considered to fall under the definition of "Derivatives Contract." It should be clarified that holders of such instruments, even if not included on the Master Securities List, are not subject to the Supplemental Procedures as Derivatives Claims.

c.   It is unclear what degree of detail is sought under paragraph 4(d) of the Derivative Questionnaire. It should be clarified that a good faith submission of data will shield the claimant from disallowance for purported noncompliance with the Supplemental Procedures.

d.   It is unclear whether the "Market Quotation" requested in paragraph 4(e) of the Derivative Questionnaire is duplicative of the "Valuation Statement" requested in paragraph 4(c).

## MEMORANDUM OF LAW

23.   As there are no novel issues of law presented herein, the Claimants respectfully request that the requirement of a separately filed memorandum of law pursuant to Local Bankruptcy Rule 9013-1(b) be deemed satisfied by this objection.

---

[4]   Debtors' counsel has indicated that the Debtors may be willing to adopt the Bankruptcy Code definition for this purpose. The Claimants object on this point as a matter of caution, in the absence of a definitive resolution.

A/73063731.1                                    12

## CONCLUSION

24.    For the foregoing reasons, the Claimants respectfully request that the Court deny

the Motion to the extent the procedures proposed therein (i) would require claimants to submit

more than a proof of claim form with the essential contracts underlying the claim, (ii) are

otherwise unduly burdensome or impracticable, or (iii) are unclear.

Dated:    New York, New York
          June 12, 2009

**BINGHAM McCUTCHEN LLP**


By:    /s/ Joshua Dorchak
       Jeffrey S. Sabin
       jeffrey.sabin@bingham.com
       Joshua Dorchak
       joshua.dorchak@bingham.com
       399 Park Avenue
       New York, New York  10022
       Telephone No.:  (212) 705-7000
       Facsimile No.:  (212) 752-5378

       Attorneys for UBS AG and Affiliates