Objection Deadline: June 12, 2009 at 12:00 p.m. (Prevailing Eastern Time)
Hearing Date and Time: June 17, 2009 at 2:00 p.m. (Prevailing Eastern Time)

COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
212-841-1000
Michael B. Hopkins
Susan Power Johnston
Martin Beeler
Amanda Raboy

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                            :
                                                  :    Chapter 11
LEHMAN BROTHERS HOLDINGS INC., *et al.*           :
                                                  :    Case No. 08-13555 (JMP)
                                                  :
                                      Debtors.    :    (Jointly Administered)
                                                  :
------------------------------------------------------------x

**OBJECTION AND RESPONSE OF WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE, TO MOTION OF THE DEBTORS, PURSUANT TO SECTION 502(b)(9) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3003(c)(3), FOR ESTABLISHMENT OF THE DEADLINE FOR FILING PROOFS OF CLAIM, APPROVAL OF THE FORM AND MANNER OF NOTICE THEREOF AND <u>APPROVAL OF THE PROOF OF CLAIM FORM</u>**

TO:    THE HONORABLE JAMES M. PECK
       UNITED STATES BANKRUPTCY JUDGE

Wilmington Trust Company ("Wilmington Trust" or the "Indenture Trustee"), as successor indenture trustee under the Indenture, dated as of September 1, 1987 (as amended, supplemented, or modified, the "Senior Indenture"), between Lehman Brothers Holdings Inc. (f/k/a Shearson Lehman Brothers Holdings Inc.) ("LBHI") and Wilmington Trust (as successor trustee to Citibank, N.A.), by and through its undersigned counsel, submits this objection and response to the Motion of LBHI and the above-captioned debtors and debtors in possession (collectively, the "Debtors"), Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3), For Establishment of the Deadline For Filing Proofs of Claim,

Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form (the "Bar Date Motion") [Docket No. 3654].

## INTRODUCTION

1.  As successor Indenture Trustee under the Senior Indenture, Wilmington Trust is a fiduciary for the holders of the single largest unsecured claim against the Debtors' estates, which the Debtors have scheduled in an aggregate amount of approximately $50,000,000,000.[1] The Senior Indenture authorizes Wilmington Trust to file a proof of claim (the "Global Proof of Claim") on behalf of all of the holders (the "Holders") of securities issued under the Senior Indenture (the "Senior Notes"), which Wilmington Trust has informed the Holders that it will do.

2.  LBHI issued Senior Notes relating to approximately 800 CUSIP numbers. While the amounts due under some of the Senior Notes can be calculated by reference to the terms of the notes themselves, calculation of principal or interest due under hundreds of others requires reference to the performance of underlying securities, currencies or currency baskets, index funds, commodities, or similar assets or indices subject to the movement of financial markets (the "Calculation Notes"). Many of the Calculation Notes were issued under the Senior Indenture as part of LBHI's "medium-term" notes program, which was designed to permit LBHI to customize note terms to suit specific issuer or investor needs.

---

[1] Wilmington Trust takes no position regarding the accuracy of the scheduled amount of the claims under the Senior Indenture, and reserves all rights related thereto. According to information provided by Citibank, N.A., the predecessor trustee, when issued the senior notes had an aggregate face amount of approximately $48.7 billion. As explained below, however, this number does not represent the amount currently payable, because it does not include accrued pre-petition interest nor does it reflect the calculations required to determine the principal amounts owed under some of the notes whose principal requires calculation by reference to varied sources. In addition, the total claim under the Senior Indenture may include fees and expenses payable to Wilmington Trust, to the extent such fees and expenses are not otherwise paid.

2

3. Pursuant to certain calculation agency agreements, LBHI appointed agents to perform the calculations required under the Calculation Notes (the "Calculation Agents"). The Senior Indenture and the other documents governing the Senior Notes do not authorize or require Wilmington Trust to act as calculation agent, and Wilmington Trust does not possess the systems, models, or information necessary to perform the requisite calculations.

4. LBHI has refused to perform or to cause to be performed the necessary calculations. The Debtors have also refused to appoint successor Calculation Agents, nor have they authorized Wilmington Trust to retain and pay a mutually acceptable successor Calculation Agent. The Global Proof of Claim will therefore include undetermined amounts for more than half of the Senior Notes. The necessity of resolving such a large undetermined claim may materially delay the administration of these bankruptcy cases.

5. Because of its concern that the undetermined portion of the Global Proof of Claim may not comply in all respects with the requirements of the proposed bar order, Wilmington Trust files this response to reserve all rights with respect to the Global Proof of Claim.

6. In addition, Wilmington Trust objects to the Debtors' proposed bar date order and notice (the "Bar Date Order and Notice") because the provisions relating to derivatives contracts and securities are ambiguous and misleading and may cause confusion for Holders. The Court should condition approval of the Bar Date Order and Notice on clarification of these provisions.

**Wilmington Trust Succeeded to Citibank as Indenture Trustee**

7. Pursuant to Sections 610 and 611 of the Senior Indenture, Wilmington Trust succeeded to Citibank, N.A. ("Citibank" or the "Predecessor Trustee"), as Indenture Trustee under the Senior Indenture on May 14, 2008. Citibank has retained the roles of Paying

3

Agent, Securities Registrar, and Authenticating Agent under the Senior Indenture, and is the Calculation Agent under approximately 50 of the Calculation Notes requiring interest calculations.

**The Senior Notes**

8.  The Senior Indenture is an open-ended indenture that permitted the issuance of multiple series of securities. The terms and conditions of the Senior Notes are set forth in various documents in addition to the Senior Indenture. These documents include notes, prospectuses, prospectus supplements, product supplements, pricing supplements, underlying supplements, and term sheets (collectively, the "Related Documents" and together with the Senior Indenture, the "Senior Note Documents"). The Debtors have provided Wilmington Trust with several thousand Related Documents, comprising tens of thousands of pages of documents.[2]

9.  Approximately 240 of the issuances of the Senior Notes do not require any special expertise to calculate the amounts owed. Wilmington Trust is working with Citibank, as paying agent, to determine the interest amounts outstanding with respect to this subset of Senior Notes.

10. For approximately 350 of the Senior Note issuances, however, various forms of complex calculations, linked to the value of reference securities, currencies or currency baskets, index funds, commodities, or similar securities or finance-related reference points, must be performed to determine the total principal payment due at maturity.[3]

---

[2] Wilmington Trust's review of the Senior Note Documents is ongoing. Wilmington Trust does not currently have complete documentation for all of the Senior Notes; for approximately 50 CUSIP numbers Wilmington Trust lacks any documentation. Wilmington Trust continues to work with the Predecessor Trustee to obtain these documents.

[3] For example, under the Aussie Bull Notes, due June 27, 2012, the redemption amount is determined by the performance of the S&P/ASX 200 Index, Australian Dollar, High Grade Primary Aluminum and Grade A Copper. Moreover, some of the Calculation Notes are tied to a Lehman Brothers (continued...)

4

11. In addition, approximately 150 issues of the Senior Notes require a computation of the outstanding amount of prepetition interest pursuant to specified formulas. These interest calculations are significantly more complex than the typical quarterly interest calculations associated with corporate bonds.[4]

**The Calculation Agents**

12. The Senior Note Documents require that the calculations of the principal or interest amounts owed under the Calculation Notes be performed by a Calculation Agent.[5] Pursuant to Calculation Agency Agreements LBHI appointed several of its affiliates—most frequently Lehman Brothers Inc. ("LBI")—as Calculation Agents for all of the Calculation Notes requiring principal calculations and for most of the other Calculation Notes.[6] All of the LBHI-affiliated Calculation Agents are in bankruptcy or subject to insolvency proceedings, either in the US or abroad.

---

index that was composed, calculated and maintained by Lehman Brothers Inc. Wilmington Trust does not know whether that index is in the possession of the SIPA Trustee or Barclays PLC.

[4] For example, the interest rate for the Medium-Term Notes, Series G, due March 23, 2020, is determined by the spread between the 30-Year CMS Rate and the 10-Year CMS Rate. The formula to determine the interest rate is typically complex: Interest Rate = 20 x (30-Year CMS Rate - 10-Year CMS Rate), provided that the Interest Rate shall not be less than zero.

[5] For example, the Calculation Agency Agreement dated July 1, 1999 with respect to 10 Uncommon Values(R) Index BASES -- Basket Adjusting Structured Equity Securities Notes Due 2004 provides "The Company [LBHI] hereby appoints Lehman Brothers Inc. as Calculation Agent and Lehman Brothers Inc. hereby accepts such appointment as the Company's agent for the purpose of performing the services hereinafter described." These provisions are typical of all of the Calculation Agency Agreements that Wilmington Trust has reviewed.

[6] LBI, Lehman Brothers Special Financing Inc., Lehman Brothers Commodity Services Inc. and Lehman Brothers International Europe are all Calculation Agents under various Senior Note Documents. Twenty of the Calculation Notes provide that third parties such as AMEX, Interactive Data Corporation or Standard & Poor serve as "index calculation agents" in addition to the LBI serving as Calculation Agent with respect to the principal calculation required. Citibank, is the Calculation Agent for approximately 50 Notes that require only interest calculations.

5

13. If a Calculation Agent cannot perform its duties for insolvency-related reasons, the Senior Note Documents require LBHI to appoint a successor calculation agent. LBHI has refused to appoint any successor calculation agents.

14. The Calculation Agency Agreements also provide that the purchaser of substantially all of the assets of a Calculation Agent automatically succeeds to the Calculation Agent duties of such Calculation Agent. Barclays Capital Inc. ("Barclays") purchased certain assets of LBI pursuant to a sale under Section 363 of the Bankruptcy Code on September 20, 2008, but Barclays did not assume the Calculation Agency Agreements, and the trustee overseeing the liquidation of LBI (the "SIPA Trustee") subsequently terminated them.

15. Despite the appointment of Calculation Agents, however, LBHI itself remains contractually obligated to ensure that the calculations are performed when and as necessary. Many of the Senior Note Documents provide: "If the maturity of the notes is accelerated because of an event of default as described above, [LBHI] shall, or shall cause the calculation agent to, provide written notice to the trustee at its New York office, on which notice the trustee may conclusively rely, and to DTC of the cash amount due with respect to the notes as promptly as possible and in no event later than two business days after the date of acceleration." Although LBHI's obligation under this provision was triggered by its bankruptcy, it has failed to provide the requisite notice to Wilmington Trust.

**Wilmington Trust Cannot Perform the Calculations**

16. As noted above, the Calculations require reference to indices, stock, commodity, and currency prices, and other market-related data. The Indenture Trustee is not a party to the Calculation Agency Agreements, and Wilmington Trust does not have access to the necessary data, some of which is highly specialized.

6

17.   The Senior Indenture does not address the indenture trustee's recourse when LBHI and its affiliates refuse to perform the calculation agent duties and no replacement calculation agent has been appointed. It does, however, clearly provide that under no circumstances shall the indenture trustee be required to supply a calculation agent at its own expense: "[N]o provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers." Senior Indenture, § 601(c)(1).

18.   Moreover, Section 603(a)(v) of the Senior Indenture provides that the Indenture Trustee shall have no obligation to exercise any of its rights or powers under the Senior Indenture at the request or direction of the Holders "unless such Holders shall have offered to the Trustee reasonable security or indemnity against the costs, expenses and liabilities which might be incurred by it in compliance with such request or direction." Because there are more than 20,000 Holders under the Senior Indenture, and because the secondary market for the Senior Notes is extremely volatile, it would be impractical for Wilmington Trust to secure such requisite direction and indemnity.

**Wilmington Trust Has Tried to Resolve the Calculation Issues**

19.   Wilmington Trust has communicated with the Debtors on many occasions since the beginning of these bankruptcy cases to discuss the calculations required under the Senior Note Documents. The Debtors have replied that the Debtors will not perform the calculations, nor appoint a successor calculation agent. The Debtors have also refused to discuss a mutually agreeable protocol to address the Calculation Note claims, which they have informed Wilmington Trust they will be scheduling as contingent, unliquidated and disputed.

20.   The SIPA Trustee has also advised Wilmington Trust that the SIPA Trustee will not perform the calculations required under the Senior Note Documents on behalf of

7

LBI. Wilmington Trust has filed a claim against LBI for any damages, including costs incurred by Wilmington Trust or the Holders, arising from LBI's inability to perform the calculations. Wilmington Trust plans to file similar claims against other Debtors and Debtor affiliate entities appointed by LBHI as Calculation Agent.

**The Estate Will Suffer Increased Burden and Delay
As A Result of the Debtors' Refusal
To Perform Their Calculation Obligations**

21. Because the Debtors have refused to perform their calculation obligations, Wilmington Trust will be unable to determine the total amount of the claims due under the Senior Indenture, and the Global Proof of Claim will thus include a large undetermined amount.[7]

22. Unless this calculation issue is resolved promptly to enable Wilmington Trust to file a timely and completely determined Global Proof of Claim for its Holders, the administration of the estates will be delayed and additional burdens will be imposed on the estates.

23. Moreover, the Global Proof of Claim will not comply with the requirement imposed under the Bar Order and Notice that claims include itemized calculations of interest and principal. Wilmington Trust reserves all rights in the event that the Global Proof of Claim must be filed without all calculations completed.

**The Bar Date Order and Notice Contain Misleading and Confusing Directions**

24. Because certain provisions of the Proposed Bar Date Order and Notice are vague and misleading they may be confusing to Holders.

---

[7] The Debtors have indicated that the total allowed claims against the estate are likely to be in the range of $200 billion, which means that the aggregate claim under the Senior Indenture may represent as much as 25% of the total claims.

8

25.     **Definition of a Derivative Contract.**  The Debtors' proposed Bar Date Order requires holders of claims based on Derivative Contracts to complete and submit a Derivative Questionnaire and electronically upload supporting documentation to the Debtors' website.

26.     The Notice provides that "[a] "Derivative Contract" is a contract in which the contractual obligations and values are keyed to one or more underlying assets or indices of asset value and subject to movements in the financial markets.  Derivative contracts include, but are not limited to, credit default swaps, interest rate swaps, total return swaps, currency swaps, forward contracts, future contracts and commodity contracts."  *See* Notice at p. 4.  Although the Debtors have informed Wilmington Trust that the definition of Derivative Contracts is not intended to include the Calculation Notes, by its terms it would explicitly cover them.

27.     Wilmington Trust requests that the Court direct the Debtors to expressly exclude the Senior Notes from the definition of Derivatives Contracts in the Order and Notice by using language in the Order and the Notice along the following lines:

> (1) Order:  On page 6, following subsection (d) inserting the clause, "for the avoidance of doubt, "Derivative Contracts" shall not include any security issued pursuant to the Indenture dated as of September 1, 1987, as amended, supplemented or modified, between Lehman Brothers Holdings Inc. and Wilmington Trust Company, as Trustee (as successor trustee to Citibank, N.A.);"

> (2) Notice: On page 4, following the second sentence under the heading "Claims Based on Derivative Contracts," inserting the sentence, "For the avoidance of doubt, a "Derivative Contract" shall not include any security issued pursuant to the Indenture dated as of September 1, 1987, as amended, supplemented or modified, between Lehman Brothers Holdings Inc. and Wilmington Trust Company, as Trustee (as successor trustee to Citibank, N.A.)."

Copies of blacklines of the Bar Date Order and Notice, showing these proposed changes and those set out below, are attached as Exhibit A.

9

28. **The Master Securities List.** The provisions in the Bar Date Order and Notice describing the circumstances under which holders of securities do not need to file proofs of claim are also unclear and misleading. The Notice provides that "Holders of securities are NOT required to file a proof of claim on account of their ownership of any security listed on the Debtors' Master List of Securities." *See* Notice at p.3. Wilmington Trust has not yet seen the Master List of Securities but based on conversations with the Debtors it believes that most of the securities that will be listed are Senior Notes.

29. The proposed notice provisions do not inform securityholders *why* they are being directed not to file a proof of claim. If the purpose is to avoid duplicative claims because an indenture trustee will file a proof(s) of claim on behalf of the securityholders, the Bar Date Order and the Notice should be amended to make that clear.

30. Wilmington Trust proposed to the Debtors that language similar to that quoted below be included in the notice and the order:

> Order: On page 4, following the parenthetical in subsection (k) inserting the clause, "provided that such security was issued under an indenture pursuant to which an indenture trustee will file a global proof of claim on behalf of all holders of securities issued thereunder; (Wilmington Trust Company will file a global proof(s) of claim on behalf of all holders of securities for which it is identified as Indenture Trustee on the Master List of Securities);"

> Notice: On page 2, following the parenthetical in subsection (8), inserting the clause "provided that such security was issued under an indenture pursuant to which an indenture trustee will file a global proof of claim on behalf of all holders of securities issued thereunder; (Wilmington Trust Company will file a global proof(s) of claim on behalf of all holders of securities for which it is identified as Indenture Trustee on the Master List of Securities);"

> Notice: On page 3, following the first sentence, under the title "Special Note to the Holders of Lehman Securities," inserting the sentence, "Holders of securities are NOT required to file a proof of claim on account of their ownership of any security listed on the

10

>Debtors' Master List of Securities if such security was issued under an indenture pursuant to which an indenture trustee will file a global proof of claim on behalf of all holders of securities issued thereunder; (Wilmington Trust Company will file a global proof(s) of claim on behalf of all holders of securities for which it is identified as Indenture Trustee on the Master List of Securities)."

Copies of blacklines of the Bar Date Order and Notice, showing these proposed changes, are attached as Exhibit A.

31. Wilmington Trust also requested that the Master List of Securities identify the Senior Note CUSIP numbers under the heading "Senior Securities issued under the Indenture dated as of September 1, 1987, as amended, supplemented or modified, between Lehman Brothers Holdings Inc. and Wilmington Trust Company, as Trustee (as successor trustee to Citibank, N.A.)" and that Wilmington Trust Company be identified as the Indenture Trustee in the column titled "Agent/Trustee name," to facilitate holders' identification of the relevant securities.

32. Wilmington Trust requests that the Court condition approval of the Bar Date Order and the Notice on inclusion of the language provided above.

11

## CONCLUSION

For the reasons set forth above, the Court should (i) deny the Bar Date Motion, (ii) enter a bar date order and notice containing the clarifications set forth above and included on Exhibit A, and (iii) grant such other and further relief as this Court deems just and proper.

Dated:    New York, New York
          June 12, 2009

COVINGTON & BURLING LLP

By: /s/ Michael B. Hopkins
Michael B. Hopkins
Susan Power Johnston
Martin Beeler
Amanda Raboy
The New York Times Building
620 Eighth Avenue
New York, New York  10018
Telephone No. (212) 841-1000
Facsimile No.  (212) 841-1010

Attorneys for Wilmington Trust Company,
as Indenture Trustee