Hearing Date: June 17, 2009 at 2:00 p.m (ET)
Objection Deadline: June 12, 2009 at 12:00 p.m. (ET)

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
Gregory A. Horowitz
Amy Caton

Attorneys for The Bank of New York Mellon Trust
Company, N.A., as Indenture Trustee

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:  )
  )
LEHMAN BROTHERS HOLDINGS INC., et al.  ) Chapter 11
  )
  ) Case No. 08-13555
Debtors.  )
  ) (Jointly Administered)
  )

**LIMITED OBJECTION OF THE BANK OF NEW YORK MELLON TRUST
COMPANY, N.A. AS INDENTURE TRUSTEE, TO DEBTORS' MOTION PURSUANT
TO SECTION 502(b)(9) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE
3003(c)(3) FOR ESTABLISHMENT OF THE DEADLINE FOR FILING PROOFS OF
CLAIM, APPROVAL OF THE FORM AND MANNER OF NOTICE THEREOF AND
<u>APPROVAL OF THE PROOF OF CLAIM FORM.</u>**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

The Bank of New York Mellon Trust Company, N.A. (formerly known as The Bank of New York Trust Company, N.A.), as indenture trustee for the holders of the Main Street Bonds (as defined below) (the "<u>Trustee</u>"), by and through its undersigned counsel, hereby files this limited objection (the "<u>Limited Objection</u>")[1] to the Debtors' Motion Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) for Establishment of the

---

[1] The Debtors are Lehman Brothers Holdings, Inc. and its affiliated debtors and debtors in possession in the above referenced chapter 11 cases, as defined in the Bar Date Motion.

KL3 2722845.6

Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form [Docket No. 3654] (the "Bar Date Motion" or "Motion" and Exhibit 1 to the Bar Date Motion the "Proposed Bar Date Order" or "Order"). In support of this Limited Objection, the Trustee respectfully states as follows.

1. The Trustee indirectly holds claims of over $700 million against Lehman Brothers Commodity Services ("LBCS") and Lehman Brothers Holdings, Inc. ("LBHI") to repay public municipal revenue bonds (the "Main Street Bonds") that are now in default.[2]

2. The Main Street Bonds were issued to monetize LBCS's long-term contracts for the supply of natural gas to certain municipalities. As part of these transactions, LBCS entered into a Gas Purchase Agreement ("Gas Purchase Agreement") dated as of April 1, 2008, with Main Street Natural Gas, Inc. ("Main Street"), under which LBCS agreed to provide a thirty-year, daily gas supply to Main Street (and, effectively, end-user municipalities), in exchange for receiving a prepayment of nearly $700 million for such supply. The Gas Purchase Agreement provides that in the event that LBCS fails to deliver gas to Main Street or otherwise defaults under the Gas Purchase Agreement, LBCS is liable to Main Street (and the Trustee) for a termination fee in an amount sufficient to redeem the Main Street Bonds.

3. In certain events, including nonpayment, LBHI unconditionally guaranteed LBCS's required payments to Main Street (and the Trustee) under a separate guaranty agreement. As part of these same transactions, Main Street issued the Main Street Bonds. The

---

[2] The Trustee, as creditors of the LBCS and LBHI estates, may also have claims against other Debtors and the Debtors' affiliate Lehman Brothers, Inc. ("LBI"), due to the confusion and uncertainty surrounding the events of the Debtors' filing for chapter 11 protection and the asset sale to Barclays Capital, Inc. approved on September 20, 2008, among other events, on which the Examiner has yet to report any details. The Trustee has sought discovery on such events, which to date, has been denied. The Trustee has filed a proof of claim in the SIPA proceeding against LBI, but prior to further discovery, it cannot purport to know the full extent of its claims and against which Debtors it may properly assert a claim.

Main Street Bonds were to be repaid from revenues collected from the end-user municipalities following LBCS's delivery of gas.

4. The Main Street Bonds are payable from the "Trust Estate" (as defined in the Indenture), which primarily includes Main Street's claims against LBCS and LBHI for nonpayment under the Gas Purchase Agreement (the "<u>Main Street Claims</u>").

5. On September 18, 2008, LBCS ceased delivering gas under the Gas Purchase Agreement. On September 22, 2008, Main Street served LBCS with a default notice under Section 4.4 of the Gas Purchase Agreement for a Persistent Delivery Default (as defined in the Indenture); soon thereafter, LBCS delivered a notice of termination of Main Street's obligations under the Gas Purchase Agreement as of September 24, 2008. Upon such termination, the Main Street Bonds became subject to mandatory redemption by September 30, 2008, and, on October 1, 2008, the Trustee sent a notice of default under Sections 8.01(a) and 8.01(b) of the Indenture for the failure to redeem the Main Street Bonds.

6. Pursuant to the Section 13 of the Gas Purchase Agreement, LBCS consented to and acknowledged the pledge by Main Street to the Trustee of its rights under the Gas Purchase Agreement (and Guaranty). As stated by the President of Main Street, the Trustee is the "true party-in-interest under the Gas Purchase Agreement." (Corbin Decl. at ¶ 2) [Docket No. 1064].

7. The Trustee generally supports the Debtors' efforts to set a bar date for filing proofs of claim. This Limited Objection is interposed, however, to seek modification of the paragraph on page 9 of the Proposed Bar Date Order, which states that "any claims asserted, other than claims asserted by parties that are legally entitled and authorized to assert such claim, shall be disallowed." (Proposed Bar Date Order at 9.) The Bar Date Motion explains this provision by stating "the [Proposed] Bar Date Order will explicitly provide that third parties are

-3-

not permitted to assert claims on behalf of another party, and that claims asserted by persons other than those are [sic] entitled and authorized to assert such claim shall be disallowed." (Bar Date Motion at ¶ 19.) As currently worded, the Debtors' Proposed Bar Date Order could be read to disallow the Main Street Claims against LBCS and LBHI if they are filed by the Trustee.

8. The Trustee requests that the Proposed Bar Date Order be amended to specifically carve out the Main Street Claims from the paragraph in question, and expressly permit the Trustee to file proofs of claim against LBCS and LBHI on behalf of the beneficial holders of the Main Street Bonds.

9. This change to the Proposed Bar Date Order will prevent the expense of duplicative claims being filed (by Main Street and the Trustee) and reconciled by the Debtors, and could save the parties substantial legal fees and costs that would otherwise need to be incurred in potentially unnecessary foreclosure proceedings by the Trustee on the Main Street Claims.

WHEREFORE, the Trustee respectfully requests that the Court: (a) approve the Bar Date Motion with the Trustee's proposed modifications and (b) grant such other or further relief as is just and proper.

Dated: June 12, 2009

                                   KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                   By: __/s/ Amy Caton_____
                                        Amy Caton
                                        Gregory A. Horowitz
                                        1177 Avenue of the Americas
                                        New York, New York 10036
                                        (212) 715-9100

                                   Attorneys for The Bank of New York Mellon Trust
                                   Company, N.A., as Indenture Trustee

KL3 2722845.6