Objection Deadline: June 15, 2009 at 6:00 p.m. (Eastern time)*
Hearing Date and Time: June 17, 2009 at 2:00 p.m. (Eastern time)

CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375
Andrew P. Brozman (AB-2456)
Sara M. Tapinekis (ST-4382)

Attorneys for Calyon

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                             :
                                                                  :  Chapter 11
LEHMAN BROTHERS HOLDINGS, INC., *et al.*,                          :
                                                                  :  Case No. 08-13555 (JMP)
Debtors.                                                          :
                                                                  :  (Jointly Administered)
------------------------------------------------------------------x

**CALYON'S OBJECTION TO DEBTORS' MOTION PURSUANT TO
SECTION 502(b)(9) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE
3003(c)(3) FOR ESTABLISHMENT OF THE DEADLINE FOR FILING PROOFS
OF CLAIM, APPROVAL OF THE FORM AND MANNER OF NOTICE
THEREOF AND APPROVAL OF THE PROOF OF CLAIM FORM**

Calyon, by and through its undersigned counsel, respectfully submits this objection to the Debtors' Motion Pursuant To Section 502(b)(9) Of The Bankruptcy Code And Bankruptcy Rule 3003(c)(3) For Establishment Of The Deadline For Filing Proofs Of Claim, Approval Of The Form And Manner Of Notice Thereof And Approval Of The Proof Of Claim Form, dated May 26, 2009 (the "Bar Date Motion"). In support of its Objection, Calyon respectfully states as follows.

*Objection deadline extended by agreement of the Debtors.

**PRELIMINARY STATEMENT**

Calyon is a commercial and investment bank domiciled in France and conducting business in the United States, among other places, through a branch office.[1] Calyon is a creditor of various of the Debtors as well as affiliates of the Debtors that are in insolvency proceedings in other jurisdictions. Calyon has several economic relationships with the Debtors and their affiliates, including those arising out of in excess of 8,000 derivatives transactions. It is with respect to those derivative transactions affected by the Bar Date Motion that Calyon makes this Objection.

**BACKGROUND FACTS**

1. On September 15, 2008 and at various dates thereafter, Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliates, including but not limited to Lehman Brothers Commodity Services Inc. ("LBCS"), Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Commercial Finance SA ("LBF SA"),[2] Lehman Brothers Commercial Corp. ("LBCC" and together with LBF SA and all of the LBHI affiliated chapter 11 debtors, the "Debtors") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2. On September 15, 2008 Lehman Brothers International (Europe) ("LBIE") entered administration in the United Kingdom and PricewaterhouseCoopers was thereafter appointed joint administrator for LBIE.

3. On September 19, 2008 (the "Commencement Date"), a proceeding was

---

[1] Calyon was formed by the business combination of Crédit Lyonnais and Crédit Agricole Indosuez. Transactions with the Debtors (defined below) and their overseas affiliates could have originated with one or both of those predecessor entities.

[2] On March 12, 2009, the chapter 11 case of LBF SA was dismissed and an ancillary case under chapter 15 of the Bankruptcy Code was commenced by the foreign representative of LBF SA.

2

commenced against Lehman Brothers, Inc. ("LBI") by the Securities Investor Protection Corporation under the provisions of the Securities Investor Protection Act of 1970, as amended ("SIPA"), 15 U.S.C. §78aaa et seq., in the case captioned Securities Investor Protection Corp. v. Lehman Brothers Inc., Case No. 08-civ-8119 (GEL).

4. On the Commencement Date, an Order Commencing Liquidation was entered in the United States District Court for the Southern District of New York (the "LBI Liquidation Order"). The LBI Liquidation Order provided for, among other things, (i) the appointment of James W. Giddens as Trustee and (ii) the removal of the case to this Court.

### A. *The Derivatives Agreements*

5. Calyon holds claims against at least four of the Debtors plus several affiliates with insolvency proceedings pending outside the United States. The vast majority of these claims are derivatives-related and comprise over 8,000 individual derivatives transactions.

6. Specifically, Calyon is a party to several derivatives contracts with the Debtors, including (i) that certain 1992 ISDA Master Agreement including the Schedule and the Credit Support Annex thereto dated as of September 30 1997 between Calyon and LBCC (the "LBCC Derivatives Agreement") and the related guarantee by LBHI; (ii) that certain 1992 ISDA Master Agreement including the Schedule and Credit Support Annex thereto dated as of October 2, 2009 between Calyon and LBCS (the "LBCS Derivatives Agreement") and the related guarantee by LBHI dated October 12, 2006; (iii) that certain 1992 ISDA Master Agreement including the Schedule and Credit Support Annex thereto dated as of December 21, 2006 between Calyon and LBSF (the "LBSF Derivatives Agreement") and the related guarantee by LBHI dated December 27, 2006; and (iv) that certain 1992 ISDA Master Agreement including the Schedule and Credit Support Annex thereto dated as of 29 June 2000 between Calyon and LBF SA (the "LBF SA Derivatives Agreement") and the related guarantee by LBHI dated January 24, 2002.

3

7. In addition, Calyon is a party to that certain 1992 ISDA Master Agreement including the Schedule and the Credit Support Annex thereto dated as of 26 November 2003 between Calyon and LBI (the "LBI Derivatives Agreement") and that certain 1992 ISDA Master Agreement including the Schedule and the Credit Support Annex thereto dated as of 20 June 2000 between Calyon and LBIE (the "LBIE Derivatives Agreement" and together with the derivatives agreements listed above, the "Derivatives Agreements") and the related guarantee by LBHI dated October 17, 2001.

8. The transactions entered into under the Derivatives Agreements also are governed by individual confirmations of each transaction. Thus, there exist thousands of confirmations for the transactions entered into by the parties under the Derivatives Agreements.

9. Following an Event of Default,[3] Calyon delivered notices of an early termination date (each, a "Termination Notice") and thereby terminated all transactions outstanding under each of the Derivatives Agreements.

10. Subsequent to the delivery of the Termination Notices, Calyon delivered a statement of payment on early termination of the Derivatives Agreements (each, a "Calculation Statement") to each counterparty to the applicable Derivatives Agreement.[4]

11. Calyon delivered with each Calculation Statement an extensive recapitulation of each of the trades comprised by the respective Derivatives Agreements and confirmations. By way of example, the Calculation Statement for the LBSF Derivatives Agreement alone annexed a calculation reconciliation supported by 64 pages of Excel spreadsheets detailing over six thousand individual transactions. In connection with each such transaction, the LBSF

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Derivatives Agreements.

[4] Upon information and belief, each of the Debtors are in possession of the Derivatives Agreement to which such Debtor is a party and the related guarantee documentation, Termination Notice and Calculation Statement.

4

Calculation Statement identified the trade with, *inter alia,* the trade date and the trade reference numbers of both Calyon and LBSF.

12. Upon information and belief, the provision of a trade reference number would permit the relevant Lehman counterparty to reconcile each trade upon which the calculation by Calyon of the payment due from the Lehman counterparty in respect of the early termination date was performed in accordance with the applicable Derivative Agreement (the "Payment Amounts").

13. Calyon did not provide trade confirmations with the Calculation Statements because: (a) it is not initially obligated to do so to effect a binding agreement under the Derivatives Agreement; and (b) of the voluminous nature of such documentation which was thoroughly summarized in the Calculation Statements. Simply put, the extensive information already conveyed to the Lehman counterparties by means of the Calculation Statements meets or exceeds that required to afford either "reasonable detail" under the Derivatives Agreements or adequate notice under Bankruptcy Rule 3001.

14. On information and belief, LBSF, in fact, was able to, and did, reconcile the individual trades through the information already supplied (including the trade reference numbers of each of the transactions comprising the aggregate claim asserted in the LBSF Calculation Statement) underlying what will be Calyon's proof of claim in respect of the LBSF Derivatives Agreement.

15. Each of the Calculation Statements delivered by Calyon to the other Lehman counterparty Debtors contained substantially the same information and thereby afforded the relevant Debtor the means to identify and receive adequate notice of the predicates for the forthcoming Calyon proofs of claim.

## OBJECTIONS

***A.  Neither the Bankruptcy Code Nor the Federal Rules of Bankruptcy Procedure Requires a Proof of Claim to Specify Evidentiary Detail to the Extent Sought in the Bar Date Motion.***

16. The initial function of the filing of a proof of claim is to afford the debtor reasonable notice of the nature, priority and amount of claims held by a creditor. *See Liona Corp., Inc. v. PCH Assocs.* (*In re PCH Assocs.*), 949 F.2d 585, 605 (2d Cir. 1991) ("the basic policy behind section 501 and the notice of claim rules is to ensure that all those involved in the proceeding will be made aware of the claims against the debtor's estate and will have an opportunity to contest those claims.  Because a bankruptcy proceeding by its very nature requires collective action, section 501's primary objective is to keep everyone informed.").

17. The Bar Date Motion, however, seeks to transform the claims process into one in which a prospective claimant is required to prove its entitlement to allowance without ever requiring the Debtors to meet their burden of going forward with sufficient evidence to rebut the presumptive validity to which a claim is entitled under Rule 3001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). *See* Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules *shall constitute* prima facie evidence of the validity and the amount of the claim.") (emphasis added).

18. A proof of claim is no more than "a written statement setting forth a creditor's claim," which, if based upon a writing, annexes the writing to the statement.  Fed. R. Bankr. P. 3001(a), (c). Bankruptcy Rule 3001(a) goes on to state that a proof of claim shall "conform substantially to …. the Official Form."  Fed. R. Bankr. P. 3001(a).

19. Official Form 10 requires the claimant to state the basis for the claim as instructed by instruction number 2.  To satisfy that instruction, a claimant must "state the type of debt or how it was incurred."  The instruction specifically notes that the claimant *may be required to*

6

*provide additional disclosure if the trustee ... files an objection* to [the] claim. (emphasis added).[5]

20.     When written documents on which a claim is based are likely to be voluminous, a creditor can comply with Bankruptcy Rule 3001(c) and the Official Form by providing a summary. Indeed, a creditor is urged to do so. *See Heath v. American Express Travel Related Serv's Co., Inc. (In re Heath)*, 331 B.R. 424, 432 (B.A.P. 9th Cir. 2005); *In re Irons*, 343 B.R. 32, 40 (Bankr. N.D.N.Y. 2006) (providing that documents "should be provided in summary form when the records approach a voluminous level. The voluminous level shall be determined based upon the facts associated with the specific claim.").

21.     Moreover, even the failure to submit the level of documentation contemplated by Bankruptcy Rule 3001(c) does not serve as the basis for disallowance of the claim. *See In re Heath*, 331 B.R. at 426. ("A proof of claim that lacks the documentation required by Rule 3001(c) does not qualify for the evidentiary benefit of Rule 3001(f) - it is not prima facie evidence of the validity and amount of the claim - but that by itself is not a basis to disallow the claim.").

22.     The effect of the procedures sought by the Bar Date Motion, however, is to disallow by bar and discharge a claim otherwise compliant with the Bankruptcy Rules and Official Form on the ground that the claimant has not supplied *at the time of the filing of the proof of claim* the extraordinary amount of evidentiary detail the Debtors would wish to have.

23.     Not unlike Rule 8 of the Federal Rules of Civil Procedure which governs the requirements to make out a proper complaint, Bankruptcy Rule 3001 requires no more than a

---

[5] Of course, the burden of persuasion never shifts from the shoulders of the claimant or the plaintiff. The burden of going forward, however, is not an ultimate burden and, accordingly, is one that imposes requirements on both parties. *See In re O'Malley*, 252 B.R. 451, 456 (Bankr. N.D. Ill. 1999) ("While the burden of going forward shifts during the claims objection process, the ultimate burden of persuasion is always on the claimant to prove claimant entitlement.").

7

plain and concise statement of the basis for the claim such that the debtor is benefited by adequate notice. *See In re O'Malley,* 252 B.R. at 456 (stating that "[a] proof of claim is somewhat analogous to a complaint in a civil action" and "[u]nder federal 'notice' pleading requirements, pleadings need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"); *see also In re Heath*, 331 B.R. at 435 (stating that the purpose of Bankruptcy Rule 3001(f) is not, *inter alia,* to create an independent reason to disallow claims but to permit the proof of claim itself to act similar to a verified complaint and have an independent evidentiary effect").

24. The pleading of evidentiary detail is required neither in a complaint nor in a proof of claim as the burden of going forward does not shift back to the claimant unless and until a proper objection (or answer) is filed. Bankruptcy Code section 502(a) explicitly provides that a proof of claim filed under section 501 of the Bankruptcy Code is deemed allowed unless a party in interest objects. *See* 11 U.S.C. § 502(a). Section 502(b) of the Bankruptcy Code further provides that, with certain exceptions inapplicable here, if an objection to a claim is made, "the court, *after notice and a hearing*, shall determine the amount of such claim … and *shall allow* such claim in such amount, except to the extent that" the objecting party establishes one of the nine grounds under section 502(b). 11 U.S.C. § 502(b).

25. Yet, the proposed procedures purport to require an enormous amount of evidentiary detail lest the claim be barred even in advance of any determination by the Debtors that the claim properly should be contested.

26. As set forth above, in its Calculations Statements, Calyon has already provided the applicable Lehman counterparty with detailed information regarding individual transactions, including the trade date and trade reference numbers of the majority of the over 8,000

8

transactions forming the basis of Calyon's derivatives claims, and Calyon intends to submit such Calculation Statements with its proofs of claims, along with the Derivatives Agreements, the Termination Notices and the applicable guarantee documents.

27.    Neither the Bankruptcy Code nor the Bankruptcy Rules were intended to compel creditors such as Calyon to produce, by the claims bar date, voluminous documentation in the form of trade confirmations and the further information anticipated by the Bar Date Motion, particularly when the Calculation Statements already in the Debtors' possession provide individual trade information, including, to a large extent, that which is contained in the confirmations.

28.    Should the Debtors dispute Calyon's claim amounts or request confirmations of particular trades that the Debtors are unable to reconcile with their books and records based upon the information already in hand, the Debtors may informally request that Calyon provide additional information or, to the extent the Debtors dispute any transactions, file an objection to Calyon's claim in accordance with Bankruptcy Code section 502(b).  Calyon's claim should not be barred at the outset, however, simply because Calyon does not undertake at the time its proofs of claim are submitted the unnecessary and extraordinary burdens contemplated by the Bar Date Motion.

   ***B. Assuming Calyon is Required to Supply Such Detail, the Bar Date Motion Denies it Sufficient Time in Which to Do So and Thereby Deprives Calyon of Procedural Due Process.***

29.    The vast amount and extent of the detail the Bar Date Motion purports to require a derivatives creditor to provide to escape the bar and discharge of its claim prior to a successful objection cannot realistically be amassed and formatted to conform to the proposed procedures within a two month time period.  The Debtors should not be permitted to avoid their just debts through the device of requiring an unprecedented amount of data and documentation to be

9

compiled and submitted in far too little time. There is no prejudice to these estates sufficient to overcome the ultimate prejudice of claim disallowance to be suffered by bona fide claimants.

The Derivatives Agreements Require Submission of Only "Reasonable Detail"

30. Because under the standard 1992 ISDA Master Agreement the parties "intend that they are legally bound by the terms of each Transaction from the moment they agree to those terms (whether orally or otherwise)," a confirmation is merely additional evidence of the material terms to which they previously agreed. *See* 1992 ISDA Master Agreement at Section 9(e).[6] The actual contract, therefore, may be comprised of the ISDA Master Agreement and its Schedule, coupled with a verbal or electronic communication, with the confirmations being evidence of the agreement to which the parties intended to be bound.

31. Under Section 6(d)(i) of the Derivatives Agreements, after the occurrence of an Early Termination Date a statement specifying the calculation of the Payment Amount is required to be rendered. Calyon's Calculation Statements were duly delivered in compliance with Section 6(d)(i) and those statements specified information in "reasonable detail" underlying the calculation of the Payment Amounts due on the Payment Date. Thus, were Calyon to submit proofs of claim predicated upon the information already delivered to the Debtors, the Debtors would be in possession of exactly what the contracts require.

The Proposed Procedures Place an Unreasonable Burden on Calyon

32. Calyon recognizes that, if more information than it already has supplied is required to have its claims allowed over the objection of the Debtors, it will remain incumbent upon it to carry its burden of persuasion. Thus, if the Debtors manage to rebut the presumption

---

[6] A copy of the standard 1992 ISDA Master Agreement is annexed to the Declaration of Andrew Brozman dated June 12, 2009 (the "Brozman Declaration") as Exhibit A. The Brozman Declaration is submitted simultaneously with this Objection.

10

that, for example, Calyon's calculation methodology is both adequate and appropriate (a presumption to which Calyon is entitled under both the Derivatives Agreements[7] and Bankruptcy Rule 3001(f)), Calyon would need to produce evidence of probative value at a claims objection hearing or risk reduction or disallowance of its claims, as appropriate.[8]

33. But we simply are not at that stage and through the Bar Date Motion, the Debtors cannot impose burdens beyond the contractual and Bankruptcy Rule requirements relevant to the derivatives claims. To require Calyon to assemble and submit at this juncture the thousands of trade confirmations and multitude of information concerning its efforts to comply with the Market Quotation methodology seemingly would impose an insuperable obstacle to its ability to timely file a claim.

34. To have its claim barred simply because information at the level of evidentiary detail cannot be supplied within a relatively short two month window would deprive Calyon of the procedural due process which the notice pleading requirement of the Bankruptcy Code and Bankruptcy Rules envision.

**At Least With Respect to the LBSF Derivatives
Agreement, the Debtors Already Have Reconciled the Perimeter of
Individual Transactions Based Upon the LBSF Calculation Statement**

35. Calyon and the Debtors have been communicating with one another to assist in the reconciliation of Calyon's derivatives claims. Based upon the exchange of information between Calyon and the Debtors, the Debtors not only have admitted their receipt of "reasonable

---

[7] *See, e.g.,* Exhibit A to the Brozman Declaration at Section 6(d)(i): "In the absence of written confirmation from the source of a quotation obtained in determining a Market Quotation, the records of the party obtaining such quotation will be conclusive evidence of the existence and accuracy of such quotation."

[8] Calyon does *not* suggest it is in agreement that the information sought in Exhibits C or D to the Bar Date Motion (or the format in which such information is sought) is in any sense appropriately subject to production by Calyon even in the event of a claims objection process. Specifically, Calyon reserves all of its rights to object to the nature and manner of discovery in connection with any contested matter as to Calyon's derivatives or guarantee claims.

11

detail" or "notice pleading" but already have reconciled virtually the entirety of the individual transactions under the LBSF Derivatives Agreement.[9]

36.     In an e-mail from Donald E. Petrow of Lehman to Xavier Richard of Calyon dated May 21, 2009, the Debtors stated without equivocation:

> We have made substantial progress in the reconciliation of the Calyon - LBSF trade population, and I am pleased to report, *we have reconciled/matched virtually all of the trade data* with very few exceptions and additional information requests. For this we thank you for your assistance and, I must say, *the quality of your data*.[10]

37.     Based upon this very clear statement of the adequacy of Calyon's information in connection with the derivatives claims process, there is little room to argue that the Debtors are justified in imposing extraordinary burdens upon a claimant such as Calyon. To the extent it even is sensible to weigh the respective burdens, there is no reason to subject Calyon to the risk of claim preclusion when the Debtors are in no sense burdened by (and, indeed, are thankful for) the level and quality of the information afforded by Calyon, which information Calyon otherwise would submit as part of its proofs of claims under normative claims procedure orders.

***C.     The Derivatives Claims Procedures Are Incorporated Into the Procedures for the Filing of Guarantee Claims.  Accordingly, the Guarantee Claims Procedures Suffer the Same Objectionable Features.***

38.     Exhibit "D" to the Bar Date Motion specifying the information required to have a guarantee claim predicated upon a derivatives transaction escape bar and discharge essentially incorporates the requirements of the derivatives claim procedures by stating:

> 3. List the agreement(s) under which your claim arises against the Obligor [the Lehman Debtor derivatives counterparty] and provide all documentation evidencing your claim and supporting calculation of the claim amount (footnote omitted).

---

[9] The LBSF derivative transactions represent the overwhelming bulk of the trades under the Derivatives Agreements, amounting to in excess of 6,500 transactions.

[10] Excerpt from e-mail annexed as Exhibit B to the Brozman Declaration. (emphasis added).

12

39. If the procedures specified for derivatives-based claims are imposed through the "back door" of the guarantee claims procedures, the latter procedures will suffer from the same problematic requirements of the underlying derivatives procedures. The guarantee claims procedures based upon underlying derivatives claims must be limited to the filing of the guarantee documentation (the Credit Support Annex and/or other guarantee agreements) coupled with a reference to the related Derivatives Agreement.

### C. The Claims Process Does Not Ensure the Confidentiality of Proprietary Information, the Public Exposure of Which Will Cause Competitive Injury to Calyon

40. The valuation methodology formulae inherent in the calculation of Calyon's claims reveal proprietary business information, the disclosure of which could result in competitive injury to Calyon. Although Calyon has no objection to providing a general description of Calyon's valuation methodology to the Debtors and their advisors on a confidential basis, it must object to the Bar Date Motion to the extent it seeks disclosure of commercially sensitive information even before a determination by the Debtors that their valuations differ materially from those proffered by Calyon. Unless and until the Debtors present a material issue to which valuation methodology is potentially relevant, they have no entitlement to this proprietary information.

41. Given that there is as yet no context to determine whether the Debtors may have access to this information under any circumstances, that portion of the procedures embraced by the Bar Date Motion purporting to compel delivery of this proprietary information should be stricken. At such time, if ever, as an actual controversy arises by way of a claims objection predicated on a methodology dispute, the Debtors may seek to discover such information and Calyon may oppose their request in the context of well-defined contested matter discovery.

42. To the extent the Bar Date Motion would cause this information to be produced in advance of any demonstrable basis therefor, it should be denied.

### D. As the Proposed Electronic System Is As Yet Unavailable for Testing By Calyon, Calyon Necessarily Reserves its Rights to Assert Additional Objections Based Upon Currently Unknowable Technical Burdens.

43. The proposed on-line claims filing system for data respecting derivatives transactions and related guarantee claims is not at this juncture available to Calyon to permit it to determine its ability to comply with the procedures or to comply with them in a timely manner. As a result, Calyon reserves its right to further and different objections based upon technological issues as yet unforeseeable by Calyon.

### CONCLUSION

WHEREFORE, Calyon respectfully requests that this Court deny the Bar Date Motion to the extent that it would compel Calyon to submit as part of its proofs of claim unduly burdensome, voluminous, redundant and proprietary information in connection with its derivatives and related guarantee claims (and generally compel compliance with the questionnaires annexed as Exhibits C and D to the Bar Date Motion) and to grant such further and additional relief as appropriate.

Dated: New York, New York
June 12, 2009

Respectfully submitted,

_/s/ Andrew P. Brozman_
Andrew P. Brozman (AB-2456)
Sara M. Tapinekis (ST-4382)
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019
Tel: (212) 878-8000
Fax: (212) 878-8375

Attorneys for Calyon