Hearing Date: June 17, 2009 at 2:00 p.m.

Dennis F. Dunne
Dennis C. O'Donnell
Evan R. Fleck
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                            :
In re:                                      :     Chapter 11 Case No.
                                            :
LEHMAN BROTHERS HOLDINGS INC., et al.,      :     08-13555 (JMP)
                                            :
                 Debtors.                   :     (Jointly Administered)
                                            :
------------------------------------------------------------ x

**STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS IN SUPPORT OF DEBTORS' MOTION PURSUANT TO
SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE FOR
<u>APPROVAL OF CROSS-BORDER INSOLVENCY PROTOCOL</u>**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of

Lehman Brothers Holdings Inc. and its affiliated chapter 11 debtors in possession

(collectively, the "<u>Debtors</u>") hereby files this statement (the "<u>Statement</u>") in support of

the Debtors' motion, dated May 26, 2009 (the "<u>Motion</u>"), seeking entry of an order,

pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§

101-1532 (as amended, the "<u>Bankruptcy Code</u>"), approving, among other things, the

Cross-Border Insolvency Protocol For The Lehman Brothers Group of Companies (the

"Protocol") and the adoption of the Guidelines[1] [Docket No. 3647]. In support thereof, the Committee respectfully states as follows:

## STATEMENT

The Committee supports approval by this Court of the Protocol for all of the reasons enumerated by the Debtors in the Motion including, without limitation, (i) the intended harmonization of the myriad Proceedings involving the Debtors and Foreign Debtors, (ii) the coordination of claims administration, (iii) the implementation of a framework to encourage communication and information sharing among the Official Representatives, (iv) the accommodations granted to Official Representatives regarding jurisdictional impediments, and (v) the overall goal of cross-border cooperation to preserve and maximize the value of the global Lehman enterprise.

**Committee Must Be Granted Robust Role.** Recognizing the importance of coordination among stakeholders to the maximization of value, the Committee nonetheless conditions its support for the Motion on the continued involvement of the Committee and its professionals, with the Debtors' consent and assistance, in future dealings under the Protocol.[2] The inclusion of the Committee in the Debtors' interaction with Foreign Debtors and other Official Representatives under the Protocol is essential to ensuring the Committee's ability to fulfill its statutory mandate and fiduciary duties -- explicitly provided for under section 1103 of the Bankruptcy Code -- which run to the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Protocol.

[2] The Debtors and the Committee agreed upon a general set of principles and practices regarding the Committee's involvement with respect to the Protocol at a meeting among the Debtors' leadership team, the Committee's Co-Chairs, and the Committee's and Debtors' advisors on May 26, 2009. The Committee expects that these principles and practices will control future dealings under the Protocol, but reserves all of its rights to pursue other remedies in the event that this proves not to be the case.

ultimate parties in interest in these chapter 11 cases. Absent a clear focus by the Debtors on facilitating robust Committee participation, the Committee will inevitably be hamstrung in its ability to monitor the Debtors, participate in the liquidation process and ensure that the views of the Debtors' unsecured creditors are heard and their interests promoted and protected with respect to significant value drivers in these cases -- e.g., the reconciliation of claims by and against the Foreign Debtors' estates.

**LBIE and LBI Important to Protocol's Success.** The Committee also files this Statement to express concern with the regrettable decisions of the joint administrators of Lehman Brothers International (Europe) ("LBIE") and the LBI Trustee[3] in declining to become parties to the Protocol. Prior to the collapse of Lehman's global enterprise, both LBIE and LBI were significant entities in the Lehman corporate family and integral parts of those businesses.

LBIE's resistance to the protocol appears motivated by jurisdictional prerogatives and a negotiation strategy. The LBI Trustee's decision to thumb his nose at the painstaking efforts of the Debtors, the Official Representatives of the Foreign Debtors' estates and, indeed, this Court, to encourage the parties to develop a workable, coordinated process of international cooperation is astonishing, particularly given the enormity of the issues to be resolved by all parties in interest and the fact that the LBI case is being heard in *this* Court, by the same Judge and, generally, during the same hearings. Unfortunately, the LBI Trustee's refusal to participate in the Protocol is consistent with a pattern of behavior, the most recent example of which is the LBI

---

[3] As the Court is aware, James W. Giddens, as trustee (the "LBI Trustee") is administering the estate of Lehman Brothers Inc. ("LBI") under the Securities Investor Protection Act of 1970.

3

Trustee's determination that he need not subject himself to the fee review procedures ordered by the Court in the Debtors' cases.

Like the LBI Trustee, each Official Representative that negotiated and became a party to the Protocol has its own constituencies to serve, institutional prerogatives to protect and domestic legal responsibilities to navigate (including, in many cases, the prospect of personal liability for actions taken in appointed roles). Nonetheless, the Official Representatives uniformly recognize that the coordination of the Proceedings is of the utmost importance if the value of their respective estates is to be maximized. Therefore, they negotiated the Protocol in hopes that "agreements may be reached on more substantive issues, and years of protracted and expensive case administration and intercompany litigation may be avoided." (Motion at 5.) The LBI Trustee is apparently of a different view.

The importance of LBI to the success of the Protocol cannot be overstated. Like the Official Representatives, LBI would benefit from involvement in the Protocol including as a result of, among other things, participation in coordinated cross-border efforts to foster communication and data sharing, and streamline creditor and intercompany claims administration. The Committee firmly believes that the spirit of the Protocol requires participation by the Official Representatives of *all* Lehman entities that are currently subject to insolvency proceedings, including LBI. For these reasons, the Committee respectfully urges the LBI Trustee to become a signatory to the Protocol.

---

Securities Investor Protection Corporation v. Lehman Brothers Inc., Adv. Proc. No. 08-01420 (JMP).

4

## **RESERVATION OF RIGHTS**

Notwithstanding the Committee's enthusiastic support for the Motion and the establishment of the Protocol, the Committee reserves its rights with respect to certain provisions of the Protocol as set forth herein. While the Committee recognizes that "the Protocol is not a legally binding document; it is a statement of intentions and guidelines . . . . imposes no duties or obligations on anyone, and is not intended to be enforceable against any of the parties," (Motion at 7), out of an abundance of caution, the Committee wishes to highlight for the Court's attention two provisions that might be construed as determining substantive rights in a manner potentially not in the best interests of the Debtors' stakeholders.[4]

First, Section 8.3 of the Protocol addresses the treatment of Direct Claims against, and related Guarantees issued by, Debtors and Foreign Debtors and provides, among other things, that distributions either on Direct Claims or on the corresponding Guarantee shall not reduce amounts due under the corresponding obligation.[5] The Committee specifically reserves its rights regarding Section 8.3 such that nothing therein may be construed as a waiver or settlement of any objection that the Debtors, the Committee or any other party in interest may raise with respect to the assertion or adjudication of any Direct Claim or Guarantee (or any portion thereof) based on prior

---

[4] Although the Committee expressly reserves its rights herein regarding only these specified sections of the Protocol, it does not waive any rights it may otherwise have to object to or raise issues with the Court concerning the Protocol.

[5] Section 8.3 of the Protocol provides, in pertinent part, "if any claims against one or more Debtors (a 'Direct Claim') is subject to a guarantee issued by another Debtor (a 'Guarantee'), the Official Representatives shall seek to adjust distributions on the allowed Direct Claim and allowed Guarantee claim so that distributions on the Direct Claim and distributions on the Guarantee do not exceed in the aggregate the amount of the Direct Claim or the Guarantee, whichever is highest. Subject to the preceding sentence, distributions on a Direct Claim shall not reduce the amount of

5

distributions made on account of such Direct Claim or Guarantee from the estates of Foreign Debtors.

Finally, Section 9.4 of the Protocol addresses, among other things, the treatment of Intercompany Derivatives Contracts and Intercompany Derivative Claims.[6] The Committee reserves its rights with respect to this section insofar as it may be construed as overriding or altering the applicability of the Derivatives Protocol[7] contemplated by the Derivatives Procedures Order entered in these chapter 11 cases with respect to the resolution of any Intercompany Derivatives Claims.

---

any claim asserted under a corresponding Guarantee, and distributions under a Guarantee shall not reduce the amount of any corresponding Direct Claim."

[6] Section 9.4 of the Protocol provides, in pertinent part, "if two or more Debtors were counterparties to a derivative contract in which the contractual obligations are referenced to one or more underlying assets or indices of asset values and subject to movements in the financial markets (such as contracts for the purchase, sale or loan of securities; forward contracts; repurchase agreements; or swap agreements; and in some cases, multiple such agreements governed by a master agreement) (the 'Intercompany Derivative Contracts'), and if an Intercompany Derivative Contract has been rejected, terminated, liquidated, or accelerated by any of the Debtor counterparties thereto, any damages (the 'Intercompany Derivatives Claims') that arise shall be measured and fixed by the Procedures Committee, pursuant to a methodology to be agreed upon by the members of the Procedures Committee (the 'Derivatives Methodology')."

[7] On December 16, 2008, and subsequently on January 15, 2009, the Court entered as to non-objecting parties an order (the "Derivative Procedures Order"), pursuant to sections 105 and 365 of the Bankruptcy Code, establishing procedures for (i) the assumption and assignment of derivative contracts involving the Debtors (the "Derivative Contracts") and (ii) the settlement of terminated Derivative Contracts. The Derivative Procedures Order provides, among other things, that the Debtors and the Committee shall engage in negotiations to establish a protocol (the "Derivatives Protocol") for both the Committee's involvement and the parameters to be used by the Debtors in connection with the assumption and assignment, and settlement of, Derivative Contracts. The Derivatives Procedures Order further provides that the Debtors shall seek the Court's approval of the Derivatives Protocol. The Committee and Debtors are currently developing the Derivatives Protocol, which will be filed with the Court for approval.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Committee supports the relief requested in the Motion, but reserves its rights with respect to the Protocol as provided herein.

Dated:  New York, New York
June 12, 2009

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By:  /s/ Dennis F. Dunne
Dennis F. Dunne
Dennis C. O'Donnell
Evan R. Fleck
1 Chase Manhattan Plaza
New York, NY 10005
Telephone:  (212) 530-5000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.