**Hearing Date: June 17, 2009 at 2:00pm (Prevailing Eastern Time)**

James B. Kobak, Jr.
Christopher K. Kiplok
Sharad J. Khemani
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC., et al.<br><br>Debtors. | Chapter 11 Case No.<br><br>08-13555 (JMP)<br><br>(Jointly Administered) |

**TRUSTEE'S RESPONSE TO STATEMENTS OF LBHI'S OFFICIAL COMMITTEE OF
UNSECURED CREDITORS AND AD HOC GROUP IN SUPPORT OF DEBTORS'
MOTION PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY
CODE FOR APPROVAL OF CROSS-BORDER INSOLVENCY PROTOCOL**

James W. Giddens (the "Trustee"), as Trustee for the SIPA liquidation of Lehman Brothers Inc. ("LBI"), by and through his undersigned counsel, respectfully submits this response (the "Response") to the Statement of the Official Committee of Unsecured Creditors (the "Committee") of Lehman Brothers Holdings Inc. and its affiliated chapter 11 debtors in possession (collectively, the "Debtors" or "LBHI") (the "Committee's Statement" (Docket No. 3896)), and Statement of the Ad Hoc Group of Lehman Brothers Creditors (the "Group's Statement" (Docket No. 3914)) in support of the Debtors' motion, dated May 26, 2009, seeking entry of an order approving, among other things, the Cross-Border Insolvency Protocol for the Lehman Brothers Group of Companies (the "Protocol" (Docket No. 3647)).

## RESPONSE

1.      The Trustee responds to the Statements of the Committee and the Group out of necessity to correct the distortions of the actual communications between the Trustee and the Debtors, the public record of the Trustee's efforts to foster cross-border cooperation among Lehman entities worldwide, and the Trustee's position on whether to join LBHI's proposed Protocol.

2.      Contrary to the "robust" role the Committee and the Group purport to seek in facilitating communication and information sharing among the Official Representatives (*see* Committee's Statement at 2; Group's Statement ¶ 2), neither the Committee nor the Group made any attempt to communicate with the Trustee or his professional staff prior to filing pleadings with incorrect statements that a phone call or review of the public record would have clarified.

3.      Equally troubling is the Committee's and Group's apparent ignorance of the public record. Most recently, in the Trustee's Interim Report for the Period September 19, 2008 through May 29, 2009 (the "Interim Report"), filed in the SIPA proceeding on May 29, 2009 (LBI Docket No. 1151), the Trustee's position on the Protocol is clearly stated:

> The Trustee and his professional advisors have had discussions with representatives of several of the other members of the Lehman Brothers group regarding formulating a protocol to facilitate the efficient administration of the various bankruptcy and similar proceedings applicable to Lehman Brothers entities around the world. The Trustee has proposed and shared drafts of both bilateral agreements and multilateral agreements open to numerous Lehman Brothers entities. However, other than the agreement with LBIE regarding cooperation in processing of its claims, no agreement has been reached to date. The Trustee intends to continue efforts to develop an international protocol – thus, he is continuing to discuss both a bilateral protocol with LBIE and the status of LBHI's proposed international protocol, with respect to which he submitted extensive comments, with Alvarez & Marsal and counsel. On May 26, 2009, LBHI moved for approval from the Bankruptcy Court of its proposed protocol, and a hearing in connection with this motion is scheduled for June 17, 2009. <u>The Trustee is considering his position with respect to formally joining LBHI's proposal or participating informally with the signatories to the extent relevant to</u>

<u>the SIPA proceedings</u>. As noted, the Trustee has also continued to discuss a bilateral protocol and other formal or informal arrangements for cooperation and information sharing with LBIE. (¶ 99 (emphasis added).)

4.  The Interim Report further describes the wide-ranging effort the Trustee has made to gather information from Lehman Brothers entities around the world to determine whether insolvency proceedings have been commenced for entities in which LBI may have an interest, the requirements for making claims in such proceedings and the extent of claims that the Trustee and other Lehman Brothers group entities have against each other. (*Id.* ¶¶ 82-99.)

5.  The Statements of the Committee and the Group are not only inconsistent with these considerable efforts by the Trustee to foster international cooperation among the Lehman entities around the world – they ignore the Trustee's public statement that he has been considering whether to join the LBHI Protocol and has in no way declined (let alone "refused") to participate.

6.  The Trustee fully recognizes the importance of fostering cooperation among the Official Representatives and establishing a cross-border claims process. Indeed, the Trustee made his desire to work out a cross-border protocol known at the onset of this proceeding, when he stated at the October 16, 2008 hearing before this Court that he would be meeting with the U.K. administrator and had proposed, along with Debtors' counsel, that the parties "all work out a protocol of some of the models which have been adopted in other cross-border cases in the Southern District." (Oct. 16, 2008 Hearing Tr. at 76-78.)

7.  The Trustee has been at the forefront of this issue, as exemplified by his effort to enter a bilateral cross-border insolvency protocol with LBIE, a draft of which

3

was proposed to LBIE on February 3, 2009 – well before the Trustee was presented with LBHI's proposed Protocol. The Committee ignores these efforts despite its professionals' attendance at the February 11, 2009 hearing before this Court, at which the Trustee's counsel described the proposal to LBIE – and made clear that any bilateral agreement with LBIE would not preclude the Trustee from "also signing on to some kind of broader multilateral protocols if other parties will agree, or from taking [LBI's] protocol with them and then adopting it for other procedures." (Feb. 11, 2009 Hearing Tr. at 47-49.)

8. Notwithstanding the assertions made by the Committee and the Group, the Trustee has been and remains fully engaged with the Debtors on the Protocol. A brief phone call would have allowed the Committee or the Group to learn of the Trustee's communications with the Debtors and others in recent weeks, as described below.

9. Several weeks ago, the Trustee submitted comments to the Debtors on the Protocol following his statement that he would do so at a meeting with Alvarez & Marsal and counsel for the Debtors. The non-binding nature of the Protocol and the utility of having the Trustee participate in meetings among administrators to discuss cooperation – whether or not the Trustee were to sign the Protocol – was emphasized at that meeting.

10. The Trustee received no responses to his comments despite follow up requests until the motion precipitating the Committee's and Group's Statements was filed. At that point, the Trustee's counsel emailed the Debtors' counsel, expressing some surprise. Counsel explained in an email the Debtors' position that, having negotiated a document acceptable at last to a number of other Official Representatives, further changes might derail the possibility of an agreement being reached. Debtors' counsel

4

again emphasized the non-binding nature of the Protocol and invited the Trustee to participate in future meetings among the signatory administrators – whether or not he was a formal signatory.

11. At subsequent meetings on a variety of other subjects, the Trustee's counsel told the Debtors that the Protocol was still under consideration despite the rejection of the Trustee's comments, and that the Trustee would attend the meeting in London in connection with this effort, which was now scheduled for July 2009. Debtors' counsel asked if he could inform the other participants of the Trustee's likely participation, and was told that yes, he could. Debtors' counsel then promptly emailed the Trustee's counsel information about the conference and invited any comments he might have.

12. At virtually the same moment that the Committee's professionals were speaking with the Trustee's counsel about other matters – several hours before the Committee filed its Statement, and almost twenty-four hours before the Group filed its Statement – the Trustee was being asked by the undersigned for final approval of a letter to the Debtors indicating that the Trustee was disposed to execute the Protocol provided the Debtors would confirm the Trustee's understanding of two points. That letter, attached hereto as Exhibit 1, was emailed early on the evening of Friday, June 12, 2009. Debtors' counsel has now replied to the Trustee's letter and provided appropriate confirmation of the Trustee's understanding of the two points highlighted therein. Accordingly, the Trustee now expects that he will be able to join the Protocol before the time the Debtors' propose to make a submission to the Court.

13. Throughout this time the Trustee has also encouraged the LBIE Administrators to consider an international protocol to address LBIE / LBI issues. While the LBIE Administrators may still feel themselves unable to agree to a formal protocol, the parties have had productive discussions in person and by telephone about reaching agreements on treatment of customer claims as well as other matters, and together they have made considerable progress in reconciling several key aspects of the claims.

14. Notably, both the Committee and the Group endeavor to compel the Trustee to become a formal signatory to the Protocol while at the same time reserving their rights with respect to a number of provisions therein and, in the case of the Committee, going as far as to make clear that in addition to the rights expressly reserved, "it does not waive any rights it may otherwise have to object to or raise issues with the Court concerning the Protocol." (Committee's Statement at 5 n.4.) Such reservations belie any assertion by the Committee or the Group that the Trustee should have curtailed his consideration of whether to sign the Protocol or suspended his discussions with the Debtors in that connection.

15. Equally incorrect is the Committee's assertion that the Trustee has decided "he need not subject himself to the fee review procedures ordered by the Court in the Debtors' cases." (Committee's Statement at 3-4.) At the May 13, 2009 hearing attended by the Committee's professionals, the Court recognized SIPC's oversight role with respect to the retention of professionals and the payment of professional fees in a SIPA proceeding and asked SIPC (not the Trustee) to respond as to whether a fee committee established in a separate Chapter 11 case should also oversee fee matters in a SIPA liquidation. (May 13, 2009 Hearing Tr. at 28-30.)

6

16. SIPC, not the Trustee, has responded in great detail to this request, documenting, among other things, the painstaking care with which SIPC reviews every fee application in the SIPA proceeding, and underscoring SIPC's role as the potential source of funding for administrative expenses in a SIPA liquidation. (*See* LBI Docket No. 1162.) For that matter, the Court has previously reviewed and approved Hughes Hubbard & Reed LLP's and Norton Rose LLP's initial interim fee applications under the procedures established by court order for the SIPA proceeding in accordance with the SIPA statute, which include substantial discounts and write-offs. (*See* LBI Docket Nos. 953, 1112.)

17. Perhaps most disappointing is the fact that the Committee's incorrect statements were made despite being in regular contact with the Trustee's counsel. In fact, only hours before filing the Statement, Committee counsel spoke with the Trustee's counsel regarding the Trustee's UNCITRAL recognition proceeding in the United Kingdom (discussed at ¶ 88 of the Interim Report). That call resulted in the Trustee – voluntarily and as a courtesy to the Committee who otherwise would have expended resources in this connection – sharing his UK recognition pleadings with the Committee's professionals.

18. At no point on this or any other call, email, court appearance or other communication did the Committee express any concern (or interest, for that matter) regarding the Trustee's position on the Protocol – a lack of effort not shared by certain of the hundreds of LBI creditors and parties in interest (many of which are *pro se*) that contact the Trustee every day on a variety of issues directly relevant to their claims and interests.

Dated: New York, New York
June 15, 2009

                    HUGHES HUBBARD & REED LLP

                    By: /s/ James B. Kobak, Jr.
                        James B. Kobak, Jr.
                        Christopher K. Kiplok
                        Sharad J. Khemani
                    One Battery Park Plaza
                    New York, New York 10004
                    Telephone: (212) 837-6000
                    Facsimile: (212) 422-4726
                    Email: kobak@hugheshubbard.com

                    Attorneys for James W. Giddens, Trustee for the SIPA Liquidation of Lehman Brothers Inc.

# EXHIBIT 1

# Hughes Hubbard

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com

James B. Kobak Jr
Direct Dial: 212-837-6757
kobak@hugheshubbard.com

June 12, 2009

BY HAND & EMAIL: richard.krasnow@weil.com

Richard P. Krasnow, Esq.
Weil, Gotshal & Manges, LLP
767 Fifth Avenue, Room 2745
New York, New York 10153

  Re: Multilateral International Protocol

Dear Richard:

  I have reviewed the proposed Multilateral International Protocol (the "Multilateral Protocol") with the Trustee. As you know, there are some provisions, particularly in paragraphs 7 and 9, which have concerned us as not totally applicable to the somewhat unique features of a SIPA liquidation, and we were also disappointed that some of our proposed language could not be incorporated into the document. At the same time, we understand all too well the practicalities involved in dealing with insolvency administrators or trustees from many parts of the world.

  On balance, the Trustee is prepared to sign on to the Multilateral Protocol on or before the time you propose to submit it to the Bankruptcy Court provided you can confirm our understandings below:

  1. The Multilateral Protocol, including the paragraphs referred to above, does not establish and is not to be interpreted to create binding obligations, and there is no expectation or presumption that a signatory will necessarily agree to any agreements or arrangements agreed upon by other signatories, whether through a committee or otherwise. There have been many statements to this effect in open court and in correspondence and discussions, but we would appreciate confirmation that this continues to be your understanding as well.

  2. As you know, we have had and continue to have discussions with the Administrators for LBIE about a bilateral protocol or other agreements that would deal with satisfaction of customer claims and possibly inter-company claims or other matters in the LBI/LBIE proceedings. Our understanding is that nothing in the Multilateral Protocol would

preclude our reaching whatever agreements we deem appropriate with the LBIE or other administrators, even though it is possible that any such agreements may differ from the Multilateral Protocol or any arrangements among other administrators subsequently agreed to under that Protocol. Again, it would be helpful if, as the drafter and proponent of the Multilateral Protocol, you would confirm that understanding.

  We are still working out who in addition to the Trustee may attend the meetings in London, but we do intend to have an appropriate presence there.

Very truly yours,

James B. Kobak

cc: James W. Giddens, Esq. (Trustee)
   Kenneth J. Caputo, Esq. (Securities Investor Protection Corporation)

60691321_1.DOC