**OBJECTION DATE: June 15, 2009 at 4:00 p.m.**
**(Adjourned per Agreement with Debtors)**
**HEARING DATE: June 17, 2009 at 10:00 a.m.**

Lindsee P. Granfield
Lisa M. Schweitzer
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for Barclays Capital Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 Case No. |
| Lehman Brothers Holdings Inc., *et al.*, | 08-13555 (JMP) |
| Debtors. | Jointly Administered |

**LIMITED OBJECTION OF BARCLAYS CAPITAL INC. TO DEBTORS' MOTION FOR AUTHORIZATION TO ESTABLISH PROCEDURES TO SELL OR ABANDON *DE MINIMIS* ASSETS**

Barclays Capital Inc. ("Barclays"), by and through its undersigned counsel, hereby submits this objection (the "Limited Objection") to Debtors' Motion Pursuant to Sections 105, 363 and 554(a) of the Bankruptcy Code for Authorization To Establish Procedures to Sell or Abandon *De Minimis* Assets, dated May 14, 2009 (D.I. 3572) (the "Motion"). In support of its Limited Objection, Barclays Capital Inc. respectfully states as follows:

**BASIS FOR OBJECTION**

1. The Motion's proposed procedures for sale or abandonment of *de minimis* assets do not provide sufficient protection to Barclays to ensure that none of the assets sold to Barclays under the Asset Purchase Agreement are inadvertently purportedly sold or abandoned by the Debtors. Since the Closing of the Asset Purchase Agreement, the Debtors have in certain

instances asserted ownership interests in assets that were conveyed to Barclays. While the parties have and will continue efforts to reconcile any such issues, if granted in its present form, the Motion would permit the Debtors to sell or abandon assets without any notice to Barclays.[1] Particularly where the Motion gives little indication of the categories or types of assets for which the Debtors anticipate use of the proposed *de minimis* procedures, those procedures could leave Barclays without any meaningful opportunity to object or otherwise protect its rights, including, without limitation, intellectual property and related rights that were transferred to Barclays pursuant to the Asset Purchase Agreement and related agreements. The Debtors can address all this through minor modifications to their Proposed Order that would provide Barclays with notice of proposed asset sales or abandonment. A revised form of order reflecting such modifications is attached as Exhibit A. Unless these modifications to the Proposed Order are implemented, Barclays requests that the Court deny the Debtors' Motion.[2]

## BACKGROUND

2.  On September 15, 2008, LBHI commenced a voluntary case under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); LB 745 LLC ("LB 745") soon commenced its own voluntary case under Chapter 11 of the Bankruptcy Code. The cases of LBHI and LB 745 LLC (together with their affiliated debtors, the "Debtors") are jointly administered.

---

[1] Capitalized terms used herein that are not otherwise defined in this Limited Objection shall have the meanings ascribed to them in the Sale Order.

[2] Barclays has attempted to negotiate a compromise with the Debtors that would enable the Debtors to sell or abandon *de minimis* assets with little operational and legal burdens, while still protecting Barclays' rights, specifically with respect to intellectual property and related rights. Unfortunately, Barclays was unable to reach a compromise with the Debtors.

2

3. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors (the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code.

4. On September 16, 2008, LBHI, LB 745 LLC, Lehman Brothers Inc. ("LBI"), and Barclays entered into that certain Asset Purchase Agreement (the "Agreement"). The Agreement was amended and clarified by the parties through execution of the Clarification Letter (the Agreement, as amended and modified by the Clarification Letter, the "APA").

5. The APA provides for, *inter alia*, the sale of certain assets of LBI, LBHI and LB 745 (the "Seller") to Barclays.[3] Those "Purchased Assets" (as defined in the APA) include, *inter alia*, all of the assets of the Seller that were used primarily in the in connection with the "Business" assets that Barclays purchased, including the U.S. and Canadian investment banking and capital markets businesses, fixed income and equities cash trading, brokerage, dealing, trading and advisory businesses.[4] Among other things, the Purchased Assets include office furniture and equipment owned or used in the conduct of those Businesses.

6. On September 20, 2008, the Court entered an order[5] approving all of the terms and conditions of the APA. This Sale Order inter alia, authorized and directed transfer of title to the Purchased Assets to Barclays. See, e.g., Sale Order, ¶¶ N, 3-6.

---

[3] The summary description of certain terms of the APA provided herein is qualified in its entirety by the actual terms and conditions of the APA and certain related documentation between the parties. For an avoidance of doubt, in the event of any inconsistency, the terms of the APA and related documentation control.

[4] See, APA, § 1.1.

[5] See Order Under 11 U.S.C. §§ 105(a), 363, And 365 And Federal Rules of Bankruptcy Procedure 2002, 6004 And 6006 Authorizing And Approving (A) The Sale of Purchased Assets Free And Clear of Liens And Other Interests And (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, dated September 19, 2008 (D.I. 258), (the "Sale Order").

7.     Pursuant to the APA, LBHI and Barclays have also entered into that certain Transition Services Agreement dated as of September 22, 2008 (the "TSA").  The TSA requires, *inter alia,* that LBHI and its affiliates continue to provide to Barclays, on a transitional basis, certain services that LBHI and its affiliates provided in connection with the operation of the business assets that Barclays purchased pursuant to the APA.

### DEBTORS' DE MINIMIS ASSET MOTION

8.     On May 14, 2009, the Debtors filed the Motion, by which they requested authority to implement procedures to: (i) "minimize and, in some instances, eliminate the process for obtaining court approval with respect to the sale of [*de minimis* assets]" and (ii) abandon *de minimis* assets.  Motion, ¶¶ 10, 11.

9.     The Motion and proposed order submitted therewith (the "Proposed Order") would establish a notice procedure under which, for asset sales with a purchase price, or estimated purchase price (as the case may be), between $500,000 million and $2 million, the Debtors would provide ten days' notice of the proposed sale to the U.S. Trustee, the Creditors' Committee, and any known creditor having or asserting a lien on the assets subject to sale.  See Motion, ¶ 15.  Such notice would also be docketed with the Court.  Id.  In addition, under the Proposed Order, the Debtors would file with the Court a monthly report, on or before the 15th day of every calendar month, summarizing sales of assets consummated during the immediately preceding calendar month under these procedures (the "Monthly Reports").  Id., ¶ 22.

10.    By contrast, for asset sales with a purchase price of less than $500,000, the Trustee would provide no notice whatsoever.  Id., ¶ 14.  In addition, the assets sold pursuant to this provision would not be included in the Monthly Reports.  Id., ¶ 23.

11.    The Motion and the Proposed Order would also establish a notice procedure under which, for abandonments of any assets that Debtors consider "burdensome",

4

such as "worn office furniture and appliances," the Debtors would provide five days' notice of the proposed abandonment to the U.S. Trustee, the Creditors' Committee, and any known creditor having or asserting a lien on the assets subject to sale. Id., ¶¶ 25-27. The Debtors would also file with the Court an addendum to the Monthly Reports summarizing all abandonments by the Debtors during the immediately preceding calendar month. Id., ¶ 27.

### BARCLAYS MUST RECEIVE NOTICE AND AN OPPORTUNITY TO OBJECT TO THE DEBTORS' PROPOSED ASSET SALES OR ABANDONMENTS

12. The procedures set forth in the Debtors' Motion and Proposed Order provide Barclays insufficient protection to ensure that no Purchased Assets are inadvertently sold or abandoned by the Debtors as *de minimis* assets.

13. Since the Closing, LBHI has periodically raised issues as to ownership of certain assets that were conveyed to Barclays pursuant to the APA. Barclays and the Debtors have conferred (and will continue to confer) in efforts to resolve any such issues as they arise. In order to permit that process to effectively continue, however, Barclays should be given notice of which assets the Debtors would propose to sell or abandon. Although the Motion provides no information as to the types of assets the Debtors may contemplate selling without notice to Barclays, the Motion does mention office furniture and appliances as possible examples of assets that would be abandoned. Motion, ¶ 25. To the extent owned or used in the conduct of the Business, however, office furniture was conveyed to Barclays.[6] Further, with respect to intellectual property and related rights, Barclays is particularly concerned that the sale or abandonment of such *de minimis* assets without prior notice and opportunity to review will have a disproportionately adverse effect on Barclays, as intellectual property rights are critical to

---

[6] The foregoing is intended as an example only. Provided that Barclays receives advance notice of proposed asset sales or abandonments, it can appropriately review the assets at issue in detail to ensure they do not include any "Purchased Assets."

Barclays' operation of the Business, while the burden on the Debtors to give such prior notice is minimal.

15. In addition, Barclays may require services from LBHI pursuant to the TSA, which services may require LBHI to maintain ownership of related assets. Without prior notice of asset sales, Barclays will have no opportunity to evaluate whether the assets the Debtors contemplate selling or abandoning may be required in connection with TSA services.

15. Under the Debtors' Proposed Order, however, Barclays would receive no notice whatsoever of any asset sales or abandonments. The Debtors already propose to provide five (5) days' notice of certain asset sales to certain parties; providing similar notice to Barclays of all asset sales or abandonments cannot significantly impede the Debtors' efforts. Attached as Exhibit A (clean) and Exhibits B (blackline) is a revised form of order that would provide Barclays with advance notice and an opportunity to object to the Debtors' proposed asset sales or abandonments. Barclays requests that the Court condition its approval of the Motion on these modifications to the Proposed Order, lest Barclays be denied a meaningful opportunity to object to asset sales or abandonments that could prejudice its rights.

[*Remainder of page intentionally left blank.*]

## **REQUEST FOR RELIEF**

WHEREFORE, for the reasons set forth herein, Barclays respectfully requests that this Court: (a) deny the Debtors' Motion unless the Proposed Order is revised as set forth herein; and (b) grant such other and further relief as this Court may deem just or proper.

Dated: New York, New York
June 15, 2009

>Respectfully submitted,
>
>CLEARY GOTTLIEB STEEN & HAMILTON LLP
>
>By:  /s Lindsee P. Granfield
>
>Lindsee P. Granfield
>Lisa M. Schweitzer
>One Liberty Plaza
>New York, New York 10006
>(212) 225-2000
>
>*Attorneys for Barclays Capital Inc.*