UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11 Case No.<br>08-13555 (JMP)<br>(Jointly Administered) |

**ERNST & YOUNG LLP'S REPLY MEMORANDUM
IN SUPPORT OF ITS RESPONSES AND OBJECTIONS TO
THE EXAMINER'S SUBPOENA FOR RULE 2004 EXAMINATION**

Ernst & Young LLP ("EY") hereby submits this Reply Memorandum in support of its Responses and Objections to the Examiner's Subpoena (the "Objections"), and in response to the Examiner's Response to the Objections ("Examiner's Response").

**I.    INTRODUCTION**

Despite proclaiming that the Examiner is "not an advocate" and that the "rhetoric of advocates" is not appropriate, the Examiner's Response is filled with hyperbole and numerous misstatements of fact, and does little to clarify the outstanding issues that remain regarding the Subpoena. Stripped of the rhetoric, the basic facts are:

- The Examiner is seeking approximately one million pages of documents from EY, more than he apparently has obtained *in total* from all the other parties from whom he has received documents.

- Although rejected as trivial by the Examiner, the burden on EY of producing this volume of documents is very substantial.

- Subject to an acceptable form of confidentiality undertaking,[1] EY already has

---

[1] Although the Examiner belittles the proposed confidentiality undertaking, it is substantially similar to a form of agreement to which the Examiner already has agreed with other parties.

agreed to produce the entirety of its 2008 review and audit workpapers, which total approximately 500,000 pages.

- The other 500,000 pages – the entirety of EY's 2007 audit workpapers of LBHI and its subsidiaries – are of highly questionable relevance and have the potential vastly to expand the areas of the Examiner's inquiry far beyond this Court's January 16, 2009 order (the "Order").

EY's Objections are hardly extraordinary (let alone "disingenuous," "misplaced" or "galling"). Although the Examiner repeatedly cites to the fact that no other entity has objected to his requests, that in no way undermines or makes less legitimate EY's position, and perhaps is best explained by the sheer volume of documents the Examiner is seeking from EY.

## II.     ARGUMENT

### A.     The Scope of the Examiner's Subpoena Should Not Include the Entirety of EY's 2007 Workpapers

EY's 2007 audit concerned LBHI's financial statements for the period ended November 30, 2007 – well before the events of 2008 on which the Order focuses, more than nine months before the Lehman bankruptcy filing, and prior to a period of unprecedented financial meltdown of the entire economic system, which dramatically changed prior asset valuations. Nonetheless, the Examiner seeks the entirety of EY's 2007 workpapers.

EY of course recognizes the Examiner's right to investigate the issues specified in the Order. However, given the unprecedented events that occurred after November 30, 2007, the valuation of assets as of November 30, 2007 is not remotely instructive as to the question of "[w]hether LBHI's assets were properly valued and accounted for at the time of its Chapter 11 filing." (Examiner's Response at 6.)

2

Moreover, the Examiner's assertion that there is "no way" to evaluate LBHI's 2008 numbers without having EY's 2007 workpapers as a "starting point" is based on a misapprehension of the role of EY as an independent auditor. After all, the financial statements of LBHI – and in particular the valuations of its assets – was in the first instance the responsibility of LBHI and its management. At a minimum, the Examiner should first be required to review LBHI's documents before seeking documents from EY. Yet the Examiner offers no explanation for why he has chosen to burden EY with getting this "baseline" information instead of seeking LBHI's own 2007 valuation work.[2] (*Id.* at 8.)

The Examiner also asserts that "one of the critical areas he must explore is whether LBHI fully disclosed material facts related to its financial condition to the public and to [EY], including information on asset valuations, risk appetite limits and usage, internal controls, and solvency." (*Id.* at 3.) He similarly claims that because he is entitled to evaluate potential "breach of fiduciary duty" claims against officers and directors of the debtors, he needs to know what EY was told. (*Id.* at 8.) While we question whether any of these inquiries reasonably requires the production of *2007* audit records, EY has no objection to providing to the Examiner the information provided by LBHI to EY in connection with EY's 2007 audit.

The Examiner also claims it is within his mandate to investigate "the testing, if any, [EY] did to verify or validate LBHI's valuations," yet he points to nothing in the Order that

---

[2] The Examiner's Response erroneously asserts that "E&Y was responsible for review of LBHI's financial condition – a condition not sufficiently healthy to avoid the filing of this case." (Examiner's Response at 2.) Of course EY, as an independent auditor, was responsible only for auditing LBHI's historical financial statements, not for generally reviewing LBHI's financial condition, and EY's last audit was of the financial statements of LBHI as of November 30, 2007, well before the completely different set of facts and circumstances that existed in September 2008.

3

contemplates such a broad-based review of EY's work conducted on the financial statements of LBHI for the period almost ten months prior to the bankruptcy filing.[3] (*Id.* at 9.)

The Examiner, however, deflects considerations of relevance and instead relies on his assertion that a production of all 2007 workpapers allegedly imposes only a nominal burden on EY. The Examiner derides EY's objection as "laughable" (*id.* at 11), even though (1) he has received "nearly a million documents" from "multiple" other parties (*id.* at 1-2), yet is seeking more than one million pages of documents from EY alone; and (2) his suggested approach to confidentiality will require EY to perform a page-by-page confidentiality review of the hundreds of thousands of pages of 2007 workpapers that are not relevant to his requests.

### B. The Examiner Should Enter Into a Confidentiality Agreement with EY Similar to That Already Ordered by This Court

EY's request for confidential treatment of its documents is far from remarkable. What is striking is the Examiner's attempt to walk away from his own form confidentiality agreement that has been entered by this Court.

EY's workpapers are entitled to confidentiality protection because they contain proprietary information regarding EY's auditing methodology and procedures, which if disclosed to competitors would subject EY to a competitive disadvantage. *See Peat, Marwick, Mitchell & Co. v. Creditor's Comm. of Ne. Dairy Coop Fed'n, Inc.*, 65 B.R. 886, 887 (N.D.N.Y. 1986) ("Peat, Marwick has a valid claim for protection of [its] audit procedures from discovery by its competitor."). Moreover, EY owes a continuing duty of confidentiality to its client, LBHI. *See,*

---

[3] While the Examiner calls EY "disingenuous" for objecting to the extent his requests seek non-workpaper documents (such as emails and desk files), the Examiner refused to confirm, until his Response, that he is seeking workpapers only, despite being asked directly. (*See* 6/4/09 Email from J. Wine to R. Byman, and 6/5/09 Email from R. Byman to J. Wine, both attached as Ex. H to Examiner's Response.)

4

*e.g.*, AICPA Code of Professional Conduct ET § 301.01 ("A member in public practice should not disclose any confidential information without the specific consent of the client.").

EY proposed to the Examiner a draft confidentiality stipulation that, with a few modifications,[4] was based on the confidentiality agreement between the Examiner and JPMorgan Chase & Co. ("JPMorgan"), which has been ordered by this Court. The Examiner inexplicably rejected this draft. Notably, the Examiner does not take issue with the changes EY suggested, but instead complains that the draft order was "unacceptable" because of its two-tier classification system – an aspect of the JPMorgan confidentiality order already approved by this Court. (Examiner's Response at 12 n.18.)

Moreover, the Examiner has made it apparent that he is using the confidentiality issue as leverage to force EY to submit to his requests for production. He cautioned in an email to EY's counsel that the Examiner has stipulated to confidentiality agreements only "where a party has agreed to *fully produce* what we have requested" and that the Examiner is "not inclined to agree to the cumber of a confidentiality agreement with a party who has declined *full* cooperation." (6/5/09 Email from R. Byman to J Wine, attached as Ex. H to Examiner's Response) (emphasis added).)

---

[4] EY suggested that the parties: (a) broaden the definition of "confidential" documents to include those materials typically protected under Federal Rule of Civil Procedure 45 (c)(3)(B)(i) and Federal Rule of Bankruptcy Procedure 9016; (b) add certain protections regarding EY documents the Examiner receives from sources other than EY, and (c) include a claw back provision regarding inadvertently produced privileged material. (6/4/09 Email from J. Wine to R. Byman, attached as Ex. H to Examiner's Response.)

5

### III. CONCLUSION

For the foregoing reasons, EY respectfully requests that the Court sustain its Objections to the Examiner's Subpoena.

Dated: June 16, 2009
New York, New York

                Respectfully submitted,

                LATHAM & WATKINS LLP,

                By: s/ Robert J. Rosenberg
                    Robert J. Rosenberg
                    Miles N. Ruthberg
                    Jamie L. Wine

                    885 Third Avenue
                    New York, NY  10022
                    Tel:  (212) 906-1200
                    Fax:  (212) 741-4864

                *Attorneys for Ernst & Young LLP*