Paul Batista, Esq.
PAUL BATISTA, P.C.
New York, New York 10004
26 Broadway – Suite 1900
Telephone: (212) 980-0070
Facsimile: (212) 344-7677
E-mail: Batista007@aol.com

**Hearing Date and Time:**
**June 24, 2009 at 10:00 a.m.**

*Attorney for Unclaimed Property Recovery Service, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

| | |
|---|---|
| In re | **Chapter 11** |
| **LEHMAN BROTHERS HOLDINGS, INC.,** *et al.*, | **Case No. 08-13555 (JMP)** |
| Debtors. | **Jointly Administered** |

------------------------------------------------------------x

| | |
|---|---|
| **SECURITIES INVESTOR PROTECTION CORPORATION,** | |
| Plaintiff-Appellant, | **Case No. 08-01420 (JMP) SIPA** |
| v. | **SIPA Liquidation Proceeding.** |
| **LEHMAN BROTHERS, INC.,** | |
| Defendant. | |

------------------------------------------------------------x

**OBJECTION OF UNCLAIMED PROPERTY RECOVERY SERVICE, INC.
TO NOTICE OF SETTLEMENT OF PROPOSED ORDER DENYING MOTION
OF UNCLAIMED PROPERTY RECOVERY SERVICE, INC. WITH RESPECT
TO LEHMAN BROTHERS HOLDINGS INC., ITS AFFILIATED DEBTORS,
AND NON-DEBTOR AFFILIATES**

Unclaimed Property Recovery Service, Inc. ("UPRS"), by its counsel, Paul Batista, P.C., hereby files this Objection (the "Objection") to the document entitled "Notice of Settlement of Order Denying Motion of Unclaimed Property Recovery Service, Inc. With Respect to Lehman Brothers Holdings Inc. and Its Affiliated Debtors" dated June 9, 2009 and the proposed "Order Denying Motion of Unclaimed Property

Recovery Service, Inc. With Respect to Lehman Brothers Holdings Inc. and Its Affiliated Debtors" (the "Proposed Order") filed by Lehman Brothers Holdings Inc. ("LBHI").

UPRS objects to the Proposed Order because it is in direct violation of the Court's instructions and order during the hearing on June 3, 2009 (the "Hearing"). The Proposed Order in effect purports (i) to terminate UPRS's agreements without a factual hearing, (ii) to preclude UPRS's right to recover its 10% fee, (iii) to extend to the non-debtor affiliates in the SIPA Liquidation of Lehman Brothers Inc. ("LBI"), and (iv) to include the representation of James W. Giddens, the SIPA Trustee.

In effect, LBHI and LBI, through the Proposed Order, seek to change the outcome of the Hearing. In support of this Objection, UPRS respectfully states as follows:

## I. FACTUAL BACKGROUND

1. On April 13, 2009, UPRS filed a motion for an order (i) compelling payment of unclaimed funds by the New York State Comptroller, (ii) lifting the automatic stay, or alternatively, providing relief from the automatic stay, (iii) allowing payment for services provided during the post-petition period, and (iv) other related relief, including allowance and payment of the $500,000 outstanding balance due UPRS.

2. Until UPRS filed its motion on April 13, 2009, LBHI and the SIPC Trustee had no specific knowledge that the $5 to $6 million in unclaimed funds were outstanding and were claimed by UPRS for LBI. This fact is confirmed by the SIPA Trustee: "Since the filing of the [UPRS] Motion, the Trustee's professionals have been in discussions with officials from the Comptroller's office to ascertain the extent of unclaimed funds held by the Comptroller on behalf of LBI." *See* Trustee Obj. at ¶4, fn. 1.

2

3.   On May 1, 2009, the SIPA Trustee filed a proposed rejection of the contracts between LBI and UPRS. On May 11, 2009, UPRS filed an objection to the Trustee's proposed rejection of the contracts between LBI and UPRS. In its objection, UPRS stated that (i) UPRS fully performed in good faith all of its obligations under the terms of the contracts, (ii) the relevant agreements are not executory contracts since contracts substantially performed are not executory contracts under § 365 of the Bankruptcy Code, and (iii) post-petition payment obligations are not executory contracts under § 365.

4.   On May 4, 2009 – several weeks after UPRS's motion was served – LBHI's representatives informed UPRS that LBI would not perform under the four contracts and would not pay UPRS its fee for identifying and claiming the funds.

## II. OBJECTION

5.   On June 3, 2009, this Court conducted a hearing that included UPRS's objection to the Trustee's proposed rejection of the contracts between LBI and UPRS. In refusing to reject the UPRS Agreements, the Court stated:

> As to the dispute that exists as between UPRS and the trustee of LBI's estate, I'm concerned that I do not have sufficient detail in the record to confirm that we are dealing with an executory contract. … [T]here are papers that have been filed and sworn to by Mr. Gelb as a principal of UPRS that at least suggest that there may be a disputed issue of fact as to performance. To the extent there is such a disputed issue of fact as to whether or not the contract in question is executory, I'm going to hold this over to the next omnibus hearing date for purposes of conducting…an…evidentiary hearing limited to the question of whether or not the question is executory.
>
> \* \* \*
>
> With that I leave it to the parties to meet and confer, and we'll have a

3

further hearing only if necessary." [*See* annexed Exhibit 1, 6/3/09 Transcript at 135, 137.

6. UPRS objects to the Proposed Order since it is in direct violation of the Court's instructions and order during the hearing on June 3, 2009. The Court did not authorize LBHI to file a proposed order that purports (i) to terminate UPRS's agreements without a factual hearing, (ii) to cancel UPRS's right to recover its 10% fee, (iii) includes representation of the non-debtor affiliates in the SIPA Liquidation of LBI, and (iv) to include the SIPA Trustee.

7. Approximately seven to ten items in unclaimed funds are outstanding in the name of LBHI and the debtors' affiliated companies, totaling about $40,000. *See* the accompanying Declaration of Bernard Gelb. LBHI has a right to claim these specific items. The balance of the over $6 million in unclaimed funds outstanding that UPRS has claimed is due LBI and is not an asset or property of LBHI.

8. In the context of the immense LBHI bankruptcy, it appears that LBHI's attorneys are spending large sums of the estate's funds in order to claim approximately $40,000 in unclaimed funds while refusing to pay a $4,000 fee to UPRS. Accordingly, UPRS will waive any claim to a fee regarding the approximately seven-to-ten items in unclaimed funds that are outstanding in the name of LBHI and the debtors' affiliated companies, totaling about $40,000. However, LBHI should not be allowed to claim funds due LBI in an effort to deny UPRS its fee.

9. UPRS performed its services in reliance upon the executed Agreements and Authorizations that LBI would compensate UPRS in the amount of 10% of the recovered

unclaimed funds. In performing all of its obligations, UPRS expected to be compensated for its services.

10. UPRS has a right to payment recognized under the Bankruptcy Code, the Bankruptcy Rules and New York State law. Because LBHI and LBI benefited by UPRS's performance, LBHI and LBI cannot now retroactively rescind or avoid the Agreements. Rescission is not an available remedy after performance of an agreement under the Bankruptcy Code, the Bankruptcy Rules, and New York State law. As described more fully in the balance of this Objection, UPRS has the following valid claims against LBI and LBHI: (i) breach of contract, (ii) unjust enrichment, (iii) *quantum meruit*, and (iv) account stated (against LBI only).

### III. THE APPLICABLE LEGAL STANDARDS

#### A. The $6 Million in Unclaimed Funds Is Not the Property of LBHI

11. About seven to ten items in unclaimed funds are outstanding in the name of LBHI and the debtors' affiliated companies, totaling about $40,000. These items are as follows:

| Lehman Brothers Holdings, Inc. | | | |
|---|---|---|---|
| Name | NYS OUF Account | Reported by | Property |
| Lehman Brothers Holdings | 035785643/029471606 | Mortgage Guaranty Ins | Refunds/Other Amts Due Under Policy Term |
| Lehman Brothers Holdings | 022397014/016734359 | Bank Of New York | Cash Dividends |
| Lehman Brothers Comm | 031097906/025242093 | Lehman Brothers Inc | Cred Bal W/Trusts,Brokers,Invst Firms |
| Lehman Brothers Comm | 031097920/025242107 | Lehman Brothers Inc | Cred Bal W/Trusts,Brokers,Invst Firms |
| Lehman Brothers Comm | 031097907/025242094 | Lehman Brothers Inc | Cred Bal W/Trusts,Brokers,Invst Firms |
| LB 745 Lease Co LLC | 032789701/026866047 | NYS State Comptroller | NYS Uncashed Checks |
| Lehman Brothers Special Fin | 022709249/016964365 | Wells Fargo Bank N A | Cashier, Teller Checks |

12.     The balance of the over $6 million in unclaimed funds outstanding that UPRS has claimed are due LBI; the unclaimed funds at issue are not an asset of LBHI. Since the balance of the over $6 million in unclaimed funds outstanding is not due LBHI, LBHI does not have a security interest, ownership interest or equity stake in this property.

13.     Additionally, LBHI and LBI should be restricted from "splitting the pot" in an effort to deny UPRS its fee. The balance of the over $6 million in unclaimed funds is due the LBI estate and UPRS is due its 10% fee.

14.     UPRS easily satisfies its burden of demonstrating that LBHI has a minor equity in the property and can only claim about $40,000 in unclaimed funds. Simply because the bankruptcy parent owns the stock of the subsidiary does not make the subsidiary's assets property of the estate. *In re Mego International, Inc.* 30 B.R. 479, 481 (S.D. N.Y. 1983); *In re Beck Industries*, 479 F.2d 410, 415 (2d Cir.), *cert. denied*, 414 U.S. 858 (1973) (ownership of the non-debtor subsidiary's stock is not the equivalent of ownership of the subsidiary's property or assets). A "parent company does not hold the assets of a subsidiary." *In re Insilco Technologies, Inc.*, 351 B.R. 313, 321 (Bankr. D. Del. 2006). *See also In re Murchison*, 54 B.R. 721, 728 (Bankr. N.D. Tex. 1985) (title to corporate property is held by a corporation, and not by the shareholder.). A parent company which is the sole shareholder of a subsidiary has no direct interest in the assets and liabilities of that subsidiary because "[i]t is an axiom of corporate law that '[t]he corporation is an entity, distinct from its stockholders even if the subsidiary's stock is wholly owned by one person or corporation.'" *In re Insilco Technologies, Inc.*, 351 B.R. at 321 (*quoting Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684,

6

686-87 (Del. Ch. 1959)). "As a general rule, property of the [bankruptcy] estate includes the debtor's stock in a subsidiary but not the assets of the subsidiary." *In re Guyana Development Corp.*, 168 B.R. 192 (Bankr. S.D. Tex. 1994).

### B. UPRS Has a Valid Breach of Contract Claim

15. The NYS OUF has agreed to "the expeditious return of more than $6,000,000 of unclaimed funds...to LBI and other Lehman entities." Having accepted UPRS performance and used the information provided by UPRS in the UPRS Motion dated April 13, 2009 [docket 3345], LBHI and LBI cannot now claim that they do not have any obligation to pay UPRS.

16. Under New York Law, a viable claim for breach of contract need only allege (1) the existence of an agreement, (2) adequate performance of the contract, (3) breach of contract and (4) damages. *Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004); *Valjean Mfg. Inc. v. Michael Wediger*, Inc., No. 03 Civ. 6185, 2005 WL 356799, at *14 (S.D.N.Y. Feb. 14, 2005). In this proceeding, the UPRS Motion and the supporting documentation contain the essential elements of a breach of contract claim. The UPRS Motion combined with UPRS's performance establish the undisputed facts: (1) NYS OUF has agreed to "the expeditious return of more than $6,000,000 of unclaimed funds...to LBI and other Lehman entities" based on the claim that UPRS had identified and filed with NYS OUF and (2) the Agreements define UPRS's rate of compensation, i.e., 10% of the value of the recovered unclaimed funds, in this matter $500,000-$600,000.

17.   UPRS has a right to payment recognized under the Bankruptcy Code, the Bankruptcy Rules and New York State law. Because LBHI and LBI benefited by UPRS's performance, LBHI and LBI cannot now retroactively rescind or avoid the agreements. *See Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 2003 U.S. Dist. LEXIS 21122 at *18 (S.D.N.Y. Nov. 25, 2003) (rescission is not an available remedy after performance of an agreement). UPRS has substantially performed, so LBHI and LBI must pay UPRS its fee. *See Wechsler v. Hunt Health Systems, Ltd.*, 330 F. Supp. 2d 383, 421 (S.D.N.Y. 2004) (performance is not excused if the other party substantially performed).

18.   At this stage, there is no performance left for UPRS. NYS OUF has agreed to send a check directly to the representatives for the balance of unclaimed funds. Also, on May 4, 2009, LBHI's representatives informed UPRS that LBI would not perform under the four contracts and would not pay UPRS its fee for identifying and claiming $5 to $6 million in unclaimed funds held by the NYS OUF on behalf of LBI. *See F. Garofalo Elec. Co., Inc. v. New York University*, 300 A.D.2d 186, 188-89, 754 N.Y.S.2d 227 (1st Dept. 2002) (holding that if plaintiff "substantially performed" its contractual obligations, then it would be entitled to the payment due under the contract). LBHI and LBI have already received the substantial benefit of the performance. *CSC Recovery Corp. v. Daido Steel Co., Ltd.*, 2000 U.S. Dist. LEXIS 1155 at *6 (S.D.N.Y. Feb. 4, 2000). As stated in *Briefstein v. P. J. Rotondo Constr. Co.*, 8 A.D.2d 349, 187 NYS2d 866 (1st Dept.1959), "The policy which runs through the fabric of the law of contracts is

to bind a party to do what he agrees to do whether or not he intends to do what he agrees."

19. Santo Trombetta, Vice President of LBI, was the authorized agent for LBI to recover unclaimed funds. Mr. Trombetta signed the four Agreements on behalf of LBI. Mr. Trombetta told UPRS that LBI wanted to recover every dollar outstanding in unclaimed funds held by NYS OUF in the name of Lehman and its predecessor, successor, affiliated and subsidiary companies. Mr. Trombetta said that there were no restrictions as to the unclaimed funds that could be recovered, and that UPRS would be paid for all unclaimed funds recovered under the Agreements. "[A]n oral modification can be enforced when it has in fact been acted upon to completion or when there is partial performance of the oral modification sought to be enforced." *Berk v. Tradewell, Inc.*, No. 01 Civ. 9035, 2003 WL 21664679, at *8 (S.D.N.Y. Jul. 16, 2003).

20. UPRS performed for 13 years in accordance with the instructions of Mr. Trombetta and relied upon his representations on behalf of LBI. "Once a contract is formed, the parties may of course change their agreement by another agreement, by course of performance, or by conduct amounting to a waiver or estoppel." *CT Chemicals (U.S.A.) Inc., Respondent v. Vinmar Impex, Inc.*, 81 N.Y.2d 174, 179 (1993). *See also Simon & Son Upholstery, Inc. v. 601 West Associates, LLC*, 268 A.D.2d 359, 360, 702 N.Y.S.2d 256 (1st Dept 2000) ("[T]here are sufficient indicia that the reasonable expectations of both parties under the original lease were supplanted by subsequent actions"); *Recon Car Corp of N.Y. v. Chrysler Corp.*, 130 A.D.2d 725, 729, 515 N.Y.S.2d 829 (2nd Dept. 1987) ("[M]odifications of written contracts may be proved

9

circumstantially by the conduct of the parties"); *GE Capital Commer. Auto. Fin. v. Spartan Motors, Ltd.*, 246 A.D.2d 41, 52, 675 N.Y.S.2d 626 (2nd Dept. 1998) ("It is well established that a written contract may be modified by the parties' postagreement 'course of performance.'").

21.  In *Rose v. Spa Realty Associates*, 42 N.Y.2d 338, 343, 397 N.Y.S.2d 922, 926 (1977), the Court of Appeals confirmed these concepts and observed that:

> [W]hen [an] oral agreement to modify has in fact been acted upon to completion, the same need to protect the integrity of the written agreement from false claims of modification does not arise. In such case, not only may past oral discussions be relied upon to test the alleged modification, but the actions taken may demonstrate, objectively, the nature and extent of the modification. Moreover, apart from statute, a contract once made can be unmade, and a contractual prohibition against oral modification may itself be waived.

22.  The NYS OUF has agreed to "the expeditious return of more than $6,000,000 of unclaimed funds…to LBI and other Lehman entities." Under the circumstances, barring UPRS from any remedy would be manifestly unjust. "A legal wrong is clearly established by the facts pleaded. Where there is a wrong there should be a remedy." *Harrison v Schultz*, 240 App. Div. 13, 16-17 (1st Dept. 1934). Having already accepted UPRS's performance and used the information provided by UPRS, LBHI and LBI cannot now claim that they are entitled to walk away from the obligation to pay UPRS.

23.  UPRS has fully performed its services and recovered $6,000,000 in unclaimed funds (LBHI Obj. at ¶ 7) pursuant to the claim filed by UPRS. Courts have allowed payment of post-petition performance rendered on a contract. *See, e.g., In re ICS*

*Cybernetics, Inc.,* 111 B.R. 32, 37 (Bankr. N.D.N.Y. 1989). Significantly, numerous other service companies are being paid for post-petition performance rendered, and about $100 million in attorneys' fees are either being paid or are about to be paid. The Trustee, his counsel, and LBHI's attorneys appear to have no issue with paying $100 million in attorneys' fees, but they have an issue with paying $500,000-$600,000 to UPRS for its services performed in recovering assets for LBI. At this rate, at the conclusion of the bankruptcy, all funds are likely to be consumed by attorneys' fees.

### C.   UPRS Has a Valid Unjust Enrichment Claim

24.   The NYS OUF has agreed to "the expeditious return of more than $6,000,000 of unclaimed funds...to LBI and other Lehman entities." The "essence" of an unjust enrichment claim "is that one party has received money or a benefit at the expense of another." *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir. 2000). To state a claim for unjust enrichment, UPRS need only claim that LBHI and LBI were enriched at UPRS's expense and that the circumstances are such that equity and good conscience require that LBHI and LBI make restitution of $500,000-$600,000. *Mina Inv. Holdings Ltd. v. Lefkowitz,* 16 F. Supp. 2d 355, 361 (S.D.N.Y. 1998) (listing cases).

25.   Even if an express contract existed, it is well settled that UPRS is permitted to plead in the alternative. Under Fed. R. Civ. P. 8(e)(2), a party may set forth two or more statements of a claim alternately or hypothetically. *See also Aetna Cas. and Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 585 (2d Cir. 2005). UPRS may bring a *quantum meruit* or unjust enrichment claim on their own, without a breach of contract

11

claim. *See Aniero Concrete Co., Inc. v. N.Y.C. Constr. Auth.*, No. 94 Civ. 3506, 2000 WL 863208, at *1 (S.D.N.Y. June 27, 2000).

26.   It has always been the intent of UPRS and LBI that UPRS would recover every dollar outstanding in unclaimed funds held by NYS OUF in the name of "Lehman" and its predecessor, successor, affiliated and subsidiary companies. In construing the provisions of an agreement, a court may give consideration to the circumstances surrounding its execution and to the purpose of the parties in making the contract. "Evidence of the surrounding circumstances, including the preliminary negotiations and contemporaneous statements of the parties, may thus be considered in seeking the true shape of obligations undertaken, without doing violence to the parol evidence rule." *Hotel Credit Card Corp. v. American Express Co.*, 13 A.D.2d 189, 214 N.Y.S.2d 921,925 (1st Dept. 1961); *Harding v. Filancia*, 144 A.D.2d 538, 534 N.Y.S.2d 219 (2nd Dept. 1988); *Aron v. Gillman*, 309 NY 157, 128 N.E.2d 284, 288 (1955)..

27.   If, *arguendo*, no enforceable written contract existed between LBHI, but by UPRS's efforts and services which were fully performed in good faith, LBHI and LBI received a benefit (here, $6,000,000), the elements of the claim have been adequately stated. Therefore, UPRS has adequately stated an unjust enrichment claim. "It is against equity and good conscience to permit [LBHI and LBI] to retain what is sought to be recovered." *Clark v. Daby*, 2002 N.Y. App. Div. LEXIS 11598 (3rd Dept. 2002). The reasonable value of the services rendered is 10% of the amount recovered by LBHI and LBI as set forth in the Agreements, or $500,000-$600,000. LBHI and LBI have been

12

unjustly enriched and UPRS is entitled to compensation for the services it rendered in good faith.

### D. UPRS Has a Valid *Quantum Meruit* Claim

28. UPRS has claimed that the services that it rendered were uncompensated, and that the fair and reasonable value of the services is 10% of recovered unclaimed funds ($500,000 to $600,000 in this case). Courts allow recovery in *quantum meruit* "to assure a just and equitable result," *Bradkin v. Leverton*, 26 N.Y.2d 192, 196, 309 N.Y.S.2d 192, 195 (1970), and LBHI and LBI received a benefit from the UPRS's services under circumstances which, in justice, preclude LBHI and LBI from denying an obligation to pay for them, *id.* at 197, 309 N.Y.S.2d at 196.

### E. UPRS Has a Valid Account Stated Claim

29. On June 7, 2007, UPRS sent Bill Wallace, LBI Vice President, a billing statement for $500,000 for services billed as of June 7, 2007 pursuant to the Agreement. LBI neither paid the billing statement nor objected to the amount or validity of the billing statement. Thereafter, on July 2, 2007, UPRS sent LBI a second billing statement for $500,000. LBI neither paid the second billing statement nor objected to the amount or validity of the second billing statement. Thereafter, on August 1, 2007, UPRS sent LBI a third billing statement for $500,000. Once again, LBI neither paid the third billing statement nor objected to the amount or validity of the third billing statement. UPRS has a valid account stated claim.

30. It was incumbent on LBI in receipt of an account "to examine the statement and make all necessary objections" because an agreement to pay an indebtedness may be

implied if a party receiving a statement of account keeps it without objecting to it within a reasonable amount of time. *Kramer Levin Nessen Kamin & Frankel v. Aronoff*, 638 F. Supp. 714, 719 (S.D.N.Y. 1986). The Court of Appeals, in *Eames Vacuum Brake Co. v. Prosser*, 157 N.Y. 289 (1898), defined an account stated as "[i]f one party presents his account to the other and the latter makes no objection it may be inferred that he is satisfied with and assents to it as correct." *See also Shea & Gould v. Burr*, 194 A.D.2d 369, 598 N.Y.S.2d 261 (1st Dept. 1993) ("[T]he failure to object to the unitemized bill for a period of five months suffices to give rise to an account stated); *Sullivan v. REJ Corp.*, 255 A.D.2d 308, 679 N.Y.S.2d 343 (2nd Dept. 1998) (defendants' receipt and retention of the plaintiff's bills without objection within a reasonable period of time gave rise to an actionable account stated entitling the plaintiff to summary judgment.) Here, UPRS submitted its invoices to LBI for $500,000 based on UPRS's prior recovery of unclaimed funds. LBI neither paid the invoices nor objected to the invoice. UPRS has a valid account stated claim.

31. Interestingly, nowhere in LBHI's and LBI's moving papers do they "deny" that LBI received statements from UPRS indicating a balance due. LBI also does not deny that it never objected to any of the invoices it received from UPRS. Under these circumstances, the law is clear that "[t]he agreement between the parties to the correctness of the account items and balance may be implied by the retention of an account statement for an unreasonable period of time without objection." *Jim-Mar Corp. v. Aquatic Constr.*, 195 A.D.2d 868, 869, 600 N.Y.S.2d 790 (3rd Dept. 1993). UPRS has adequately demonstrated "that there was an account between the parties and that a

specified balance was found to be due." *Maines Paper & Food Serv. v Restaurant Mgt. by D.C. Corp.*, 229 A.D.2d 748, 750, 646 N.Y.S.2d 388, (3d Dept. 1996). *See also Barclay's Bank v. Smitty's Ranch*, 122 AD2d 323, 324, 504 N.Y.S.2d 295 (3rd Dept. 1986).

### F.    Good Faith and Fair Dealing Claim

32.    The NYS OUF has agreed to "the expeditious return of more than $6,000,000 of unclaimed funds ... to LBI and other Lehman entities" based on the claim that UPRS had identified and filed with NYS OUF. In every contract, there is an implied covenant of good faith and fair dealing which restrains each party from engaging in conduct that will deprive the other party of the benefits of the agreement. *See, e.g., Travellers International A. G. v. World Airlines, Inc.*, 722 F.Supp. 1087 (S.D.N.Y. 1989); *Leberman v. John Blair & Co.*, 880 F.2d 1555 (2nd Cir. 1989).

33.    LBHI and LBI want to void UPRS's rights to the benefit under the Agreements. Contract rights may not be exercised in bad faith so as to frustrate the other party's right to the benefit under the agreement. *See Dalton v Educational Testing Serv.*, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 663 N.E.2d 289 (1995); *1-10 Industry Assoc. v Trim Corp. of Am.*, 297 A.D.2d 630, 631-632, 747 N.Y.S.2d 29 (2002).

34.    Among the explicit terms of the Agreements is the payment to UPRS of the 10% fee due of $500,000-$600,000. Courts will apply an implied covenant where it proves necessary to fulfill the explicit terms of an agreement. All the parties are bound by implied covenants of good faith and fair dealing to use their best efforts to complete the transaction and pay UPRS the 10% fee due of $500,000-$600,000. *See Grad v.*

15

*Roberts,* 14 N.Y.2d 70, 248 N.Y.S2d 633, 636, 198 N.E.2d 26, 28 (1964); *Zilg v. Prentice Hall, Inc.*, 717 F.2d 671 (2d Cir. 1983).

## CONCLUSION

WHEREFORE, UPRS respectfully requests that the Court (i) reject the Proposed Order, and (ii) grant UPRS such further relief as the Court deems just.

Dated:    New York, New York
          June 16, 2009

>                    **PAUL BATISTA, P.C.**
>                    *Attorney for Unclaimed Property Recovery Service, Inc.*
>
>                    _____ /s/ Paul Batista
>                    Paul Batista, Esq.