# EXHIBIT 1

```
                                                                    1
 1
 2    UNITED STATES BANKRUPTCY COURT
 3    SOUTHERN DISTRICT OF NEW YORK
 4    Case Nos. 08-13555, 08-01420
 5    - - - - - - - - - - - - - - - - - - - -x
 6    In the Matter of:
 7    LEHMAN BROTHERS HOLDINGS INC., ET AL.,
 8                   Debtors.
 9    - - - - - - - - - - - - - - - - - - - -x
10    In the Matter of:
11    LEHMAN BROTHERS INC.,
12                   Debtor.
13    - - - - - - - - - - - - - - - - - - - -x
14
15            U.S. Bankruptcy Court
16            One Bowling Green
17            New York, New York
18
19            June 3, 2009
20            10:04 a.m.
21
22    B E F O R E:
23    HON. JAMES M. PECK
24    U.S. BANKRUPTCY JUDGE
25
```

134

1  estates who is interested in getting a fee.

2          Speaking for LBHI, every dollar that is collected from
3  the State of New York that represents abandoned property will
4  be paid in its gross amount to the estate without any payment
5  to any third party.

6          Your Honor, again, as it relates to LBHI, we would
7  request that the motion or motions be denied.

8          THE COURT: Understood. Thank you.

9          Anything more on this?

10         As to the last point made by counsel for LBHI, I
11 concur. There is no entitlement to relief as to LBHI. And to
12 the extent that relief is being sought by UPRS in the nature of
13 relief from the automatic stay to proceed to collect property
14 that belongs to LBHI, that request is denied both because there
15 appears to be no privity of contract between UPRS and LBHI and
16 because whatever property may reside within the possession of
17 the New York State Comptroller's Office, that property either
18 is property of LBI, LBHI or some other affiliate that may have
19 a proper claim to it in these cases which are not consolidated.

20         Given the uncertainty as to whose property it is, at
21 least in my mind the uncertainty, and given the strenuous
22 argument made by counsel for LBHI in the interest of protecting
23 whatever property interest LBHI may have, the automatic stay
24 clearly applies and is not being lifted now on the basis of
25 these assertions.

135

1    As to the dispute that exists as between UPRS and the
2    trustee of LBI's estate, I'm concerned that I do not have
3    sufficient detail in the record to confirm that we are dealing
4    with an executory contract. It certainly appears to be an
5    executory contract based upon what I have been told. And the
6    assertion by counsel for the claimant as to an entitlement
7    potentially to a post-petition administrative claim suggests
8    that there has been ongoing activity post-petition.
9    Nonetheless, there are papers that have been filed
10   and sworn to by Mr. Gelb as a principal of UPRS that at least
11   suggest that there may be a disputed issue of fact as to
12   performance. To the extent there is such a disputed issue of
13   fact as to whether or not the contract in question is
14   executory, I'm going to hold this over to the next omnibus
15   hearing date for purposes of conducting what I hope will be an
16   extremely abbreviated evidentiary hearing limited to the
17   question of whether or not the question is executory. Assuming
18   that I find that the contract is executory, it will be deemed
19   rejected. To the extent that it's not, the parties will be
20   stuck with that determination, unless some other Court says I'm
21   wrong. That hearing will take place on the next omnibus
22   hearing date.
23   My strong suggestion, however, to the parties is that
24   this is a fairly simple question to determine and that the
25   parties might spend their time productively conferring on basic

136

1  facts. Mr. Batista, if he recognizes that he has a loser, may
2  determine that it's not worth pressing the point. If he
3  believes he has a winner, I assume I'll see him again. But to
4  the extent that I determine that this is an executory contract
5  which is properly rejected on notice of the trustee, that does
6  not deprive Mr. Batista's client of an ability to participate
7  in the claims process by arguing whatever UPRS can properly
8  argue in terms of entitlement by reason of such rejection or by
9  reason of such post-petition performance if it can be
10 demonstrated.
11         In a sense, Mr. Batista's client sits neatly on the
12 horns of a dilemma. To the extent that there is post-petition
13 performance, it's pretty clear this is an executory contract,
14 but there also may be some claim to be asserted, whether or not
15 it's a good claim remains to be seen, as to possible
16 administrative treatment. To the extent that all performance
17 occurred pre-petition and there's really no post-petition
18 performance to be performed, we can have a hearing to determine
19 the proper characterization of the contract.
20         I would note, however, in passing, for whatever it may
21 be worth, that it is the unusual contract as to which there is
22 no performance of any sort due. And based upon the colloquy
23 that took place with counsel for UPRS, it seems to me that,
24 while it's unsworn colloquy, that there really does appear to
25 be some performance which ordinarily would be due in processing

137

1  these claims against the New York State Comptroller's Office.

2           With that I leave it to the parties to meet and

3  confer, and we'll have a further hearing only if necessary.

4           MR. KRASNOW:  Your Honor, may we submit an order that

5  denies the motion as it relates to LBHI --

6           THE COURT:  Yes.

7           MR. KRASNOW:  -- without prejudice to them?

8           THE COURT:  Absolutely.

9           MR. KRASNOW:  Thank you, Your Honor.

10          UNIDENTIFIED SPEAKER:  Thank you.

11          THE COURT:  Thank you.

12          MR. KOBAK:  Good afternoon, Your Honor.  James Kobak,

13 Hughes Hubbard, for the SIPA trustee.  If Your Honor pleases,

14 as you know, we filed a fairly extensive interim report on June

15 1st.  I don't really propose to make any presentation about

16 that report.  We like to think that it speaks for itself.  I do

17 have a couple of numbers that I can update because our bar date

18 for filing claims expired as of 12 o'clock Pacific Time, I

19 believe, on June 1st.  And I'm happy to entertain any questions

20 that Your Honor may have.

21          THE COURT:  I'll listen to your update.

22          MR. KOBAK:  Okay.  We actually received a number of

23 customer claims that surprised us at the last minute, so we

24 received about between 700 and 750, I believe, in the last two

25 days, or up to June 1st, which brings the total up to 11,911